**EXHIBIT 1**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  2**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 3**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  4**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  5**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  6**

THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

**EXHIBIT   7**

THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

**EXHIBIT  8**

THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

**EXHIBIT  9**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   10**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 11**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   12**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 13**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  14**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  15**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   16**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  17**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   18**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   19**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   20**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   21**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  22**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 23**

1 | THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, CA 90071-3144
3 | Telephone: (213) 687-5000
Facsimile: (213) 687-5600
4 | E-mail:      tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
7 | Telephone: (415) 984-6400
Facsimile: (415) 984-2698
8 | E-mail:      rkennedy@skadden.com

9 | Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 | (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11 |            UNITED STATES DISTRICT COURT

12 |           CENTRAL DISTRICT OF CALIFORNIA

13 |                   EASTERN DIVISION

|  |  |
|---|---|
| 14 CARTER BRYANT, an individual | ) CASE NO. CV 04-9049 SGL (RNBx) |
| 15 Plaintiff, | ) Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 16 v. | ) **MGA ENTERTAINMENT,** |
| 17 MATTEL, INC., a Delaware corporation | ) **INC.'S SUPPLEMENTAL RESPONSES TO MATTEL, INC.'S REVISED THIRD SET** |
| 18 Defendant. | ) **OF INTERROGATORIES** |
| 19 | ) Honorable Stephen G. Larson Courtroom 1 |
| 20 | ) |
| 21 Consolidated with MATTEL, INC. v. BRYANT and MGA | ) Discovery Cut-Off: March 3, 2008 |
| 22 ENTERTAINMENT, INC. v. MATTEL, INC. | ) |
| 23 | ) |

24 | **PROPOUNDING PARTY:**   MATTEL, INC. ("MATTEL")

25 | **RESPONDING PARTY:**   MGA ENTERTAINMENT, INC. ("MGA")

26 | **SET NUMBER:**   **REVISED THIRD**

27

28

EXHIBIT ___23___

PAGE ___449___

## PRELIMINARY STATEMENT

1.

2.  MGA hereby serves its objections to Mattel's Revised Third Set of
3.  Interrogatories. MGA is not yet in a position to serve its substantive responses to
4.  Mattel's Revised Third Set of Interrogatories, in part due to Mattel's failure to
5.  provide meaningful document, deposition and other discovery and also the transition
6.  of MGA's representation from prior counsel of record to Skadden, Arps. MGA
7.  intends to supplement its objections with substantive responses to the
8.  unobjectionable portions of the interrogatories contained in Mattel's Revised Third
9.  Set of Interrogatories as soon as it is in a position to do so and after it has concluded
10. meet and confer sessions with Mattel, including with respect to Mattel's outstanding
11. discovery obligations.

12.  The General Response set forth herein applies to all responses that
13. MGA is providing in response to these interrogatories (the "Interrogatories") or may
14. in the future provide in response to any discovery request in this action. The
15. Response is made without waiving, or intending to waive but, on the contrary,
16. expressly reserving: (a) the right to object, on the grounds of competency, privilege,
17. relevancy or materiality, or any other proper grounds, to the use of the Response, for
18. any purpose in whole or in part, in any subsequent step or proceeding in this action
19. or any other action; (b) the right to object on any and all grounds, at any time, to
20. other interrogatories or other discovery procedures; and (c) the right at any time to
21. revise, correct, add to, or clarify any of the responses propounded herein.

22.  The Response reflects only the present state of MGA's discovery
23. regarding the information that Mattel seeks. Discovery and other investigation or
24. research concerning this litigation are continuing. Mattel has produced almost no
25. documents to date and has produced no documents from its Zeus computer system,
26. and has not provided other discovery responses, including without limitation
27. supplemental responses to its March 7, 2005, responses to MGA's First Set of
28. Interrogatories (which responses were comprised almost entirely of objections). It is

1

EXHIBIT __23__

PAGE __450__

1  anticipated that further discovery, independent investigation, and legal research and

2  analysis will supply additional facts and meaning to the known facts, as well as

3  establish entirely new factual conclusions, all of which may lead MGA to discover

4  other information responsive to these Interrogatories.  MGA therefore reserves the

5  right to amend or supplement this Response at any time in light of future

6  investigation, research or analysis, and also expressly reserves the right to rely on, at

7  any time, including trial, subsequently discovered information omitted from this

8  Response as a result of mistake, error, oversight or inadvertence.  MGA does not

9  hereby admit, adopt or acquiesce in any factual or legal contention, assertion or

10  characterization contained in the Interrogatories or any particular request therein,

11  even where MGA has not otherwise objected to a particular interrogatory, or has

12  agreed to provide information responsive to a particular interrogatory.

13        No incidental or implied admissions are intended by this Response.

14  These responses should not be taken as an admission that MGA accepts or admits the

15  existence of any facts set forth or assumed by any instruction, definition or

16  interrogatory.

17  **GENERAL OBJECTIONS**

18        MGA responds to these Interrogatories subject to the following general

19  objections and limitations, each of which is incorporated into each and every

20  response as though fully set forth therein:

21        1.  MGA objects to these Interrogatories to the extent they seek

22  information that is not subject to disclosure under any applicable privilege, doctrine

23  or immunity, including without limitation the attorney-client privilege, the work

24  product doctrine, the right of privacy, and all other privileges recognized under the

25  constitutional, statutory or decisional law of the United States of America, the State

26  of California or any other applicable jurisdiction.

27        2.  MGA objects to these Interrogatories to the extent they seek

28  information not relevant to the claims or defenses of any party to this action and not

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT __23__

PAGE __4 51__

1   reasonably calculated to lead to the discovery of admissible evidence.

2       3.   MGA objects to these Interrogatories to the extent they seek

3   information which by reason of public filing or otherwise is already in Mattel's

4   possession or is readily accessible to Mattel.

5       4.   MGA objects to these Interrogatories to the extent they seek the

6   disclosure of information (1) not currently within its possession, custody or control;

7   (2) that MGA cannot locate after a reasonably diligent search; or (3) that refer to

8   persons, entities, or events not known to MGA.

9       5.   MGA objects to these Interrogatories to the extent they are

10  overbroad and unduly burdensome.

11      6.   MGA objects to the definitions and instructions to the extent

12  such definitions and instructions purport to enlarge, expand, or alter in any way the

13  plain meaning and scope of any specific term or specific interrogatories on the

14  ground that such enlargement, expansion, or alteration renders such a term or request

15  vague, ambiguous, unintelligible, overly broad, unduly burdensome or uncertain.

16      7.   MGA objects to the following definitions in these

17  Interrogatories:

18          (a)   MGA objects to the definition of the term "BRATZ"

19  (Definitions ¶ 9) as vague, ambiguous, overly broad and unduly burdensome, and

20  designed to mislead and confuse the trier of fact.  The definition includes "any

21  project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole

22  or in part and regardless of what such project, product or doll is or has been also,

23  previously or subsequently called) and any product, doll or DESIGN or any portion

24  thereof that is now or has ever been known as, or sold or marketed under, the name

25  or term 'Bratz' (whether in whole or in part and regardless of what such product, doll

26  or DESIGN or portion thereof is or has been also, previously or subsequently called)

27  or that is now or has ever been marketed as part of the 'Bratz' line, and each version

28  or iteration of such product, doll or DESIGN or any portion thereof," and it goes on.

3

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT  23

PAGE  453

1  By incorporating the definition of DESIGN, the overly broad definition of BRATZ
2  includes two-dimensional and three-dimensional representations, including "works,
3  designs, artwork, sketches, drawings, illustrations, representations, depictions,
4  blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,
5  rotocasts, reductions to practice, developments, inventions and/or improvements . . .
6  ." (Definitions, ¶ 8.) These convoluted and multi-part definitions combine to render
7  the interrogatories vague, ambiguous and overly broad, and to include within the
8  term BRATZ things that do not fairly represent the Bratz line of dolls, accessories
9  and related products that are the subject of this case. In responding to these
10 interrogatories, MGA will interpret the term BRATZ to mean the line of dolls
11 introduced by MGA to the market for sale in May or June of 2001 and subsequent
12 dolls, accessories and other products known as Bratz or associated by MGA with the
13 Bratz line of dolls;

14              (b)    MGA objects to the definition of the term "BRATZ
15 DOLL" (Definitions ¶ 12) as vague, ambiguous, overly broad and unduly
16 burdensome, and designed to mislead and confuse the trier of fact. The definition
17 includes any doll that "REFERS OR RELATES TO BRATZ." Mattel's definition of
18 the terms "BRATZ" and "REFERS OR RELATES" renders the definition of
19 "BRATZ DOLL" unintelligible because MGA cannot know, by way of example,
20 what dolls may "deal with, comment on, respond to, . . . or in any way pertain"
21 (Definition ¶ 20) to "BRATZ." In responding to these interrogatories, MGA will
22 interpret the term "BRATZ DOLL" to mean the line of dolls introduced by MGA to
23 the market for sale in May or June of 2001 and subsequent dolls known as Bratz;

24              (c)    MGA objects to the definition of the term "CREATED"
25 (Definitions ¶ 21) as vague, ambiguous, overly broad and unduly burdensome, and
26 designed to mislead and confuse the trier of fact. The definition strays far from the
27 English meaning of the term "created" by including concepts such as "improved,"
28 "altered," "conceived of" and "reduced to practice." Thus, by way of example, under

4

1  Mattel's definition of "CREATED," the jury could be misled into believing that a
2  person "CREATED" a particular thing when that person did not, but only slightly
3  altered or improved the thing.  In responding to these interrogatories, MGA will not
4  interpret the term "CREATED," but rather will respond using words contained
5  within the Mattel definition in their normal, accepted meaning;

6              (d)      MGA objects to the definition of the term "INVENTIONS
7  AGREEMENT" (Definitions ¶ 23) as vague, ambiguous, overly broad and unduly
8  burdensome, and designed to mislead and confuse the trier of fact.  The definition
9  includes "any other version of such January 4, 1999 agreement."  In responding to
10  these interrogatories, MGA will interpret the term "INVENTIONS AGREEMENT"
11  to refer to the document Bates numbered M0001596;

12             (e)      MGA objects to the definition of the term "BRATZ
13  INVENTION" (Definitions ¶ 10) as vague, ambiguous, overly broad and unduly
14  burdensome, and designed to mislead and confuse the trier of fact.  The definition
15  strays far from the English meaning of the term "invention" by including concepts
16  such as representation, idea, concept, work, process, procedure, plan, improvement,
17  design and development, none of which necessarily equate to an invention.  In
18  responding to these interrogatories, MGA will not interpret the term "BRATZ
19  INVENTION," but rather will respond using words contained within the Mattel
20  definition in their normal, accepted meaning.

21             (f)      MGA objects to the terms "IDENTIFY" or "IDENTITY"
22  (Definitions ¶ 28) as overbroad, unduly burdensome, vague, ambiguous, and
23  oppressive.  Mattel's definition of these terms inherently call for answers to multiple
24  discrete questions or subparts to questions.  For example, when those terms are used
25  to reference any BRATZ INVENTION, the use of those terms requests at least 10
26  different and distinct facts: (a) the Bates number of any document that "REFERS OR
27  RELATES TO the BRATZ INVENTION"; (b) the IDENTITY of the individual
28  author or creator of the BRATZ INVENTIONS; (c) the IDENTITY of each other

5

EXHIBIT  23

PAGE  454

1 | individual who contributed in any manner to the BRATZ INVENTION; (d) the form,
2 | material and medium of the BRATZ INVENTION; (e) the title or name of the
3 | BRATZ INVENTION; (f) the version, modification, revision or iteration number of
4 | the BRATZ INVENTION; (g) the current location of the original of the BRATZ
5 | INVENTION; (h) the first day on which the BRATZ INVENTION was created; (i)
6 | the last day on which the BRATZ INVENTION was CREATED; (j) whether the
7 | entire invention was CREATED during the period of time listed in the Interrogatory
8 | (and if not, which portions were created during, earlier, or later than the period of
9 | time listed in the Interrogatory.) Therefore, any interrogatory that includes or
10 | incorporates the terms "IDENTIFY" or "IDENTITY" are necessarily compound and
11 | should be posed as separate interrogatories.

12 |         (g)    MGA objects to the terms "any" and "REFER OR
13 | RELATE TO" on the grounds and to the extent that they are overbroad, unduly
14 | burdensome or are vague and ambiguous in the context of the interrogatories as
15 | written and as those interrogatories would be plainly understood absent Mattel's
16 | definitions.

17 |      8.    MGA objects to these interrogatories to the extent that they may
18 | unfairly seek to restrict the facts on which MGA may rely at trial. Discovery has not
19 | been completed and MGA is not yet necessarily in possession of all the facts and
20 | documents upon which MGA intends to rely. All of the responses submitted
21 | herewith are tendered to Mattel with the reservation that the responses are submitted
22 | without limiting the evidence on which MGA may rely to support the contentions
23 | and defenses that MGA may assert at the trial of this action and to rebut or impeach
24 | the contentions, assertions and evidence that Mattel may present. MGA reserves the
25 | right to supplement or amend these responses at a future date.

26 |      9.    MGA objects to each interrogatory to the extent that it seeks
27 | information that will be the subject of expert witness testimony and that is therefore
28 | premature.

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT 23

PAGE 453

1      10.    MGA objects to each interrogatory to the extent that it seeks the

2  disclosure of confidential, proprietary, or trade-secret information.

3      11.    MGA objects to each interrogatory to the extent that it calls for a

4  legal conclusion.

5      12.    MGA reserves the right to object on any ground at any time to

6  such other and supplemental discovery requests as Mattel may propound involving

7  or relating to the same subject matter of these interrogatories.

8      13.    The responses below shall not be construed as an admission as to

9  the relevance or admissibility of any statement or characterization contained in any

10  interrogatory.  MGA reserves all objections, including without limitation objections

11  as to competency, relevance, materiality, privilege, authenticity, or admissibility.

12      14.    Consistent with Rule 33(d) of the Federal Rules of Civil

13  Procedure, MGA objects to providing responses to interrogatories that can be

14  derived from documents that have or will be produced (when requested in

15  compliance with Rule 26) and where the burden to derive such information is

16  substantially the same for Mattel as it is for MGA.

17      15.    In responding to these Interrogatories, MGA has not and will not

18  comply with any instructions or definitions that seek to impose requirements in

19  addition to those imposed by the Federal Rules of Civil Procedure and any applicable

20  local rule.

21      16.    To the extent MGA responds to an interrogatory, it does so

22  without waiving or intending to waive but rather, on the contrary, preserving and

23  intending to preserve, its contention that anything Mr. Bryant did on weekends,

24  evenings, vacation and any other time outside ordinary business hours was not done

25  while he was working for Mattel.  MGA's response may not be taken as an admission

26  that the information it provides in its response in any way reflects or evidences work

27  performed by Mr. Bryant while he was working for Mattel or that MGA adopts or

28  agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's

7

EXHIBIT ___23___

PAGE_____456_____

1  interrogatory.

2          17.     MGA objects to each of Mattel's interrogatories because Mattel

3  has propounded more than 50 interrogatories, including discrete subparts.  Under

4  Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each

5  side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

6                    **SPECIFIC OBJECTIONS AND RESPONSES**

7          Without waiving or departing from its General Response and General

8  Objections, and specifically incorporating them in its response to each Interrogatory

9  below, MGA makes the following additional objections and responses to specific

10 Interrogatories:

11 **INTERROGATORY NO. 27:**

12          IDENTIFY each and every BRATZ INVENTION YOU contend was

13 CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ

14 INVENTION so identified state all facts that support YOUR contention that such

15 BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to

16 January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all

17 DOCUMENTS which REFER OR RELATE TO such facts.

18 **RESPONSE TO INTERROGATORY NO. 27:**

19          MGA incorporates by reference its General Response and General

20 Objections above, as though fully set forth herein and specifically incorporates

21 General Objection No. 7 (regarding the Definitions), including but not limited to its

22 objections to the definitions of the terms BRATZ INVENTION, CREATED,

23 IDENTIFY and REFER OR RELATES TO.  MGA further objects to this

24 interrogatory as compound because it contains discrete subparts that require separate,

25 distinct and multiple responses.  Specifically, MGA objects to the term IDENTIFY

26 as overbroad and unduly burdensome, as Mattel's definition of this term calls for

27 responses to multiple discrete subparts.  For example, Mattel's definition of the term

28 IDENTIFY in the context of this interrogatory would require MGA to provide a

                                        8
─────────────────────────────────────────────────────
MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT __23__

PAGE_____ 457

1  multitude of discrete responses for each BRATZ INVENTION, including:

2        (a)    the Bates number of any document that "REFERS OR RELATES

3  TO the BRATZ INVENTION;"

4        (b)    the IDENTITY of the individual author or creator of the BRATZ

5  INVENTION;

6        (c)    the IDENTITY of each other individual who contributed in any

7  manner to the BRATZ INVENTION;

8        (d)    the form, material and medium of the BRATZ INVENTION;

9        (e)    the title or name of the BRATZ INVENTION;

10        (f)    the version, modification, revision or iteration number of the

11  BRATZ INVENTION;

12        (g)    the current location of the original of the BRATZ INVENTION;

13        (h)    the first day on which the BRATZ INVENTION was CREATED;

14        (i)    the last day on which the BRATZ INVENTION was CREATED;

15        (j)    whether the entire invention was CREATED during the period of

16  time listed in the Interrogatory (and if not, which portions were created during,

17  earlier, or later than the period of time listed in the Interrogatory).

18        This interrogatory is further compounded by Mattel's definition of

19  IDENTITY, which purports to require MGA to provide the following information

20  for each of the individuals Mattel is requesting that MGA identify with respect to

21  each BRATZ INVENTION:  (a) the individual's name; (b) any known business title;

22  (c) the current or last known business affiliation; (d) current or last known residential

23  address; (e) current or last known business address; (f) current or last known

24  relationship to MGA; and (g) current or last known telephone number.

25        MGA further objects to this interrogatory on the grounds that it is

26  overbroad, unduly burdensome, vague and ambiguous both generally and

27  specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED,

28  DESIGN and REFER OR RELATES TO.  In particular, the term BRATZ

9

EXHIBIT 23

PAGE 458

1 INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR
2 RELATES TO, is so broad and over-inclusive that it could be read to include each
3 and every thought, idea and conversation that anyone may have had about BRATZ
4 during the time period at issue.

5      MGA further objects to the extent that this interrogatory seeks
6 information that is outside of MGA's knowledge and is not in MGA's possession,
7 custody or control. In particular, MGA objects to this interrogatory to the extent that
8 it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*
9 DOCUMENTS" (emphasis added).

10      MGA also objects to this interrogatory to the extent it seeks information
11 that is not subject to disclosure under any applicable privilege, doctrine or immunity,
12 including without limitation the attorney-client privilege, the work product doctrine,
13 the right of privacy, and all other privileges recognized under the constitutional,
14 statutory or decisional law of the United States of America, the State of California or
15 any other applicable jurisdiction. MGA further objects to the interrogatory on the
16 ground that it is premature because the invention, creation, conception, or reduction
17 to practice of Bratz (and related issues) will be the subject of expert testimony at
18 trial. MGA objects to this interrogatory to the extent it seeks to limit the expert
19 testimony that MGA may seek to introduce at trial. MGA will identify its experts
20 and make related disclosures in accordance with the Court's orders and applicable
21 rules.

22      MGA further objects to this interrogatory because Mattel has
23 propounded more than 50 interrogatories. Under Judge Larson's order of February
24 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
25 04049-SGL and CV 05-02727]."

26      Subject to and without waiving the foregoing objections, MGA
27 responds as follows: MGA is willing to meet and confer with Mattel regarding this
28 interrogatory and the obligation of Mattel to supplement its responses to MGA's First

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT 23

PAGE 459

1  Set of Interrogatories.

2  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 27:**

3     MGA incorporates by reference its General Response and General

4  Objections above, as though fully set forth herein and specifically incorporates

5  General Objection No. 7 (regarding the Definitions), including but not limited to its

6  objections to the definitions of the terms BRATZ INVENTION, CREATED,

7  IDENTIFY and REFER OR RELATES TO.  MGA further objects to this

8  interrogatory as compound because it contains discrete subparts that require separate,

9  distinct and multiple responses.  Specifically, MGA objects to the term IDENTIFY

10  as overbroad and unduly burdensome, as Mattel's definition of this term calls for

11  responses to multiple discrete subparts.  For example, Mattel's definition of the term

12  IDENTIFY in the context of this interrogatory would require MGA to provide a

13  multitude of discrete responses for each BRATZ INVENTION, including:

14     (a) the Bates number of any document that "REFERS OR RELATES

15  TO the BRATZ INVENTION;"

16     (b) the IDENTITY of the individual author or creator of the BRATZ

17  INVENTION;

18     (c) the IDENTITY of each other individual who contributed in any

19  manner to the BRATZ INVENTION;

20     (d) the form, material and medium of the BRATZ INVENTION;

21     (e) the title or name of the BRATZ INVENTION;

22     (f) the version, modification, revision or iteration number of the

23  BRATZ INVENTION;

24     (g) the current location of the original of the BRATZ INVENTION;

25     (h) the first day on which the BRATZ INVENTION was CREATED;

26     (i) the last day on which the BRATZ INVENTION was CREATED;

27     (j) whether the entire invention was CREATED during the period of

28  time listed in the Interrogatory (and if not, which portions were created during,

11

EXHIBIT ___23___

PAGE ___460___

1   earlier, or later than the period of time listed in the Interrogatory).

2        This interrogatory is further compounded by Mattel's definition of

3   IDENTITY, which purports to require MGA to provide the following information

4   for each of the individuals Mattel is requesting that MGA identify with respect to

5   each BRATZ INVENTION: (a) the individual's name; (b) any known business title;

6   (c) the current or last known business affiliation; (d) current or last known residential

7   address; (e) current or last known business address; (f) current or last known

8   relationship to MGA; and (g) current or last known telephone number.

9        MGA further objects to this interrogatory on the grounds that it is

10   overbroad, unduly burdensome, vague and ambiguous both generally and

11   specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED,

12   DESIGN and REFER OR RELATES TO. In particular, the term BRATZ

13   INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR

14   RELATES TO, is so broad and over-inclusive that it could be read to include each

15   and every thought, idea and conversation that anyone may have had about BRATZ

16   during the time period at issue.

17        MGA further objects to the extent that this interrogatory seeks

18   information that is outside of MGA's knowledge and is not in MGA's possession,

19   custody or control. In particular, MGA objects to this interrogatory to the extent that

20   it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS … and *all*

21   DOCUMENTS" (emphasis added).

22        MGA also objects to this interrogatory to the extent it seeks information

23   that is not subject to disclosure under any applicable privilege, doctrine or immunity,

24   including without limitation the attorney-client privilege, the work product doctrine,

25   the right of privacy, and all other privileges recognized under the constitutional,

26   statutory or decisional law of the United States of America, the State of California or

27   any other applicable jurisdiction. MGA further objects to the interrogatory on the

28   ground that it is premature because the invention, creation, conception, or reduction

12

EXHIBIT _____23_____

PAGE_____461_____

1  to practice of Bratz (and related issues) will be the subject of expert testimony at
2  trial.  MGA objects to this interrogatory to the extent it seeks to limit the expert
3  testimony that MGA may seek to introduce at trial.  MGA will identify its experts
4  and make related disclosures in accordance with the Court's orders and applicable
5  rules.

6      Subject to and without waiving the foregoing objections, MGA
7  responds as follows:

8      With respect to "inventions" as that term is used in utility patent law,
9  MGA does not make any affirmative contentions as to whether there were any such
10 inventions, except that MGA contends that the conception and/or reduction to
11 practice of any such invention occurred before January 1999 and/or after October 20,
12 2000.  With respect to design patents, in August or September of 1998, Carter
13 Bryant, inspired by images he was exposed to, including in the August 1998 issue of
14 *Seventeen Magazine*, the appearance of teenagers, as well as other images in the
15 public domain, conceived of an idea for a line of dolls he named Bratz.  At the same
16 time, Bryant sketched a series of drawings to illustrate his idea.  To the extent said
17 idea contained elements covered by design patent law, no such invention was
18 "reduced to practice" until after October 20, 2000.  Nor did it fall within the scope of
19 the term "inventions" as used in the "INVENTIONS AGREEMENT."

20      The following persons have knowledge of the facts and circumstances
21 surrounding Bryant's conception and his illustrative drawings that he named Bratz:
22 Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas Bryant;
23 Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince.

24      The following documents may be relevant to these facts:  the sketches
25 drawn by Bryant in August or September of 1998; publicly available materials that
26 Bryant identified in his deposition testimony as inspiring his conception of a line of
27 dolls in August or September of 1998, including but not limited to the August 1998
28 issue of *Seventeen Magazine*; and other documents shown to Bryant at his November

EXHIBIT ___23___

PAGE ___462___

1  2004 deposition.

2  **INTERROGATORY NO. 28:**

3       IDENTIFY each and every BRATZ INVENTION YOU contend was

4  CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and

5  for each BRATZ INVENTION so identified state all FACTS that support YOUR

6  contention that such BRATZ INVENTION (or aspects or portions thereof) was

7  CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all

8  PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR

9  RELATE TO such facts.

10 **RESPONSE TO INTERROGATORY NO. 28:**

11       MGA incorporates by reference its General Response and General

12 Objections above, as though fully set forth herein and specifically incorporates

13 General Objection No. 7 (regarding the Definitions), including but not limited to its

14 objections to the definitions of the terms BRATZ INVENTION, CREATED,

15 IDENTIFY, and REFER OR RELATED TO.  MGA further objects to this

16 interrogatory on the grounds that it is overbroad, unduly burdensome, vague and

17 ambiguous both generally and specifically with respect to the term BRATZ

18 INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR

19 RELATES TO, is so broad and over-inclusive that it could be read to include each

20 and every thought, idea and conversation that anyone may have had about BRATZ

21 during the time period at issue.

22       MGA further objects to this interrogatory as compound because it

23 contains discrete subparts that require separate, distinct and multiple responses.

24 Specifically, MGA objects to the term IDENTIFY as overbroad and unduly

25 burdensome, as Mattel's definition of this term calls for responses to multiple

26 discrete subparts.  For example, Mattel's definition of the term IDENTIFY in the

27 context of this interrogatory would require MGA to provide a multitude of discrete

28 responses for each BRATZ INVENTION, including:

14

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT __23__

PAGE __46᠆__

1          (a)     the Bates number of any document that "REFERS OR RELATES
2  TO the BRATZ INVENTION;"
3          (b)     the IDENTITY of the individual author or creator of the BRATZ
4  INVENTION;
5          (c)     the IDENTITY of each other individual who contributed in any
6  manner to the BRATZ INVENTION;
7          (d)     the form, material and medium of the BRATZ INVENTION;
8          (e)     the title or name of the BRATZ INVENTION;
9          (f)     the version, modification, revision or iteration number of the
10  BRATZ INVENTION;
11          (g)     the current location of the original of the BRATZ INVENTION;
12          (h)     the first day on which the BRATZ INVENTION was CREATED;
13          (i)     the last day on which the BRATZ INVENTION was CREATED;
14          (j)     whether the entire invention was CREATED during the period of
15  time listed in the Interrogatory (and if not, which portions were created during,
16  earlier, or later than the period of time listed in the Interrogatory).
17          This interrogatory is further compounded by Mattel's definition of
18  IDENTITY, which purports to require MGA to provide the following information
19  for each of the individuals Mattel is requesting that MGA identify with respect to
20  each BRATZ INVENTION:  (a) the individual's name (b) any known business title;
21  (c) the current or last known business affiliation; (d) current or last known residential
22  address; (e) current or last known business address; (f) current or last known
23  relationship to MGA; and (g) current or last known telephone number.
24          MGA further objects to the extent that this interrogatory seeks
25  information that is outside of MGA's knowledge and is not in MGA's possession,
26  custody or control.  In particular, MGA objects to this interrogatory to the extent that
27  it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*
28  DOCUMENTS" (emphasis added).

<div style="text-align:center">15</div>

EXHIBIT __23__
                 4l4
PAGE _____

1         MGA also objects to this interrogatory to the extent it seeks information

2   that is not subject to disclosure under any applicable privilege, doctrine or immunity,

3   including without limitation the attorney-client privilege, the work product doctrine,

4   the right of privacy, and all other privileges recognized under the constitutional,

5   statutory or decisional law of the United States of America, the State of California or

6   any other applicable jurisdiction.

7         MGA further objects to the interrogatory on the ground that it is

8   premature because the invention, creation, conception, or reduction to practice of

9   Bratz (and related issues) will be the subject of expert testimony at trial.  MGA

10  objects to this interrogatory to the extent it seeks to limit the expert testimony that

11  MGA may seek to introduce at trial.  MGA will identify its experts and make related

12  disclosures in accordance with the Court's orders and applicable rules.  MGA further

13  objects to the interrogatory as unduly burdensome, on the grounds that it would

14  require MGA to identify numerous documents that have already been produced and

15  are readily available to Mattel.

16        MGA further objects to this interrogatory because Mattel has

17  propounded more than 50 interrogatories.  Under Judge Larson's order of February

18  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

19  04049-SGL and CV 05-02727]."

20        Subject to and without waiving the foregoing objections, MGA

21  responds as follows:  MGA is willing to meet and confer with Mattel regarding this

22  interrogatory and the obligation of Mattel to supplement its responses to MGA's First

23  Set of Interrogatories.

24  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 28:**

25        MGA incorporates by reference its General Response and General

26  Objections above, as though fully set forth herein and specifically incorporates

27  General Objection No. 7 (regarding the Definitions), including but not limited to its

28  objections to the definitions of the terms BRATZ INVENTION, CREATED,

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___23___

PAGE ___9..b5....___

1  IDENTIFY, and REFER OR RELATED TO.  MGA further objects to this

2  interrogatory on the grounds that it is overbroad, unduly burdensome, vague and

3  ambiguous both generally and specifically with respect to the term BRATZ

4  INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR

5  RELATES TO, is so broad and over-inclusive that it could be read to include each

6  and every thought, idea and conversation that anyone may have had about BRATZ

7  during the time period at issue.

8           MGA further objects to this interrogatory as compound because it

9  contains discrete subparts that require separate, distinct and multiple responses.

10  Specifically, MGA objects to the term IDENTIFY as overbroad and unduly

11  burdensome, as Mattel's definition of this term calls for responses to multiple

12  discrete subparts.  For example, Mattel's definition of the term IDENTIFY in the

13  context of this interrogatory would require MGA to provide a multitude of discrete

14  responses for each BRATZ INVENTION, including:

15           (a)    the Bates number of any document that "REFERS OR RELATES

16  TO the BRATZ INVENTION;"

17           (b)    the IDENTITY of the individual author or creator of the BRATZ

18  INVENTION;

19           (c)    the IDENTITY of each other individual who contributed in any

20  manner to the BRATZ INVENTION;

21           (d)    the form, material and medium of the BRATZ INVENTION;

22           (e)    the title or name of the BRATZ INVENTION;

23           (f)    the version, modification, revision or iteration number of the

24  BRATZ INVENTION;

25           (g)    the current location of the original of the BRATZ INVENTION;

26           (h)    the first day on which the BRATZ INVENTION was CREATED;

27           (i)    the last day on which the BRATZ INVENTION was CREATED;

28           (j)    whether the entire invention was CREATED during the period of

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT    23

PAGE    446

1 | time listed in the Interrogatory (and if not, which portions were created during,
2 | earlier, or later than the period of time listed in the Interrogatory).

3 |        This interrogatory is further compounded by Mattel's definition of
4 | IDENTITY, which purports to require MGA to provide the following information
5 | for each of the individuals Mattel is requesting that MGA identify with respect to
6 | each BRATZ INVENTION:  (a) the individual's name (b) any known business title;
7 | (c) the current or last known business affiliation; (d) current or last known residential
8 | address; (e) current or last known business address; (f) current or last known
9 | relationship to MGA; and (g) current or last known telephone number.

10 |        MGA further objects to the extent that this interrogatory seeks
11 | information that is outside of MGA's knowledge and is not in MGA's possession,
12 | custody or control.  In particular, MGA objects to this interrogatory to the extent that
13 | it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*
14 | DOCUMENTS" (emphasis added).

15 |        MGA also objects to this interrogatory to the extent it seeks information
16 | that is not subject to disclosure under any applicable privilege, doctrine or immunity,
17 | including without limitation the attorney-client privilege, the work product doctrine,
18 | the right of privacy, and all other privileges recognized under the constitutional,
19 | statutory or decisional law of the United States of America, the State of California or
20 | any other applicable jurisdiction.

21 |        MGA further objects to the interrogatory on the ground that it is
22 | premature because the invention, creation, conception, or reduction to practice of
23 | Bratz (and related issues) will be the subject of expert testimony at trial.  MGA
24 | objects to this interrogatory to the extent it seeks to limit the expert testimony that
25 | MGA may seek to introduce at trial.  MGA will identify its experts and make related
26 | disclosures in accordance with the Court's orders and applicable rules.  MGA further
27 | objects to the interrogatory as unduly burdensome, on the grounds that it would
28 | require MGA to identify numerous documents that have already been produced and

18

EXHIBIT   23

PAGE   467

1  are readily available to Mattel.

2        Subject to and without waiving the foregoing objections, MGA
3  responds as follows:

4        With respect to Bratz dolls and accessories, as concerns the term
5  "inventions" as that is used in utility patent law, and/or in the "INVENTIONS
6  AGREEMENT," MGA does not make any affirmative contentions as to whether
7  there were any such inventions, except that MGA contends the conception and/or
8  reduction to practice of any such invention occurred before January 1999 and/or after
9  October 20, 2000.  With respect to package design for Bratz products, MGA
10 contends that certain aspects of said designs qualified as design patents.  With
11 respect to design patents, to the extent that the Bratz line of dolls, first marketed by
12 MGA in 2001, contained features covered by design patent law, said inventions were
13 "reduced to practice" by MGA after October 20, 2000 and before June 1, 2001.

14       The following persons have knowledge of the facts and circumstances
15 regarding the foregoing:  Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
16 Marlow; Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafelles (Garcia);
17 Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Sam
18 Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Rachel
19 Harris; Maggie Siu; Ben Ton; Samuel Wong; Ray Wong; Steffan Smith; and Samir
20 Khare.

21       The following documents may be relevant to these facts:  all
22 "DOCUMENTS" that refer to or evidence the work performed by MGA employees
23 and freelancers toward the reduction to practice of the first generation of Bratz dolls
24 during the period after October 19, 2000 through June 1, 2001, including but not
25 limited to:  (i) documents showing the development of the first generation of Bratz
26 dolls; (ii) documents showing exchanges with the Hong Kong factory regarding the
27 development of the first generation of Bratz dolls; (iii) documents showing the
28 timing of the development of packaging, fashion, and accessories for the first

19

EXHIBIT ___23___

PAGE ___968___

1  generation of Bratz dolls; (iv) documents related to the January 2001 Hong Kong toy

2  fair; (v) documents related to the February 2001 New York toy fair; (vi)

3  polyurethane samples of prototypes; (vii) rotocasts and sculpts in Hong Kong; and

4  (viii) invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria

5  O'Connor, and other invoices submitted by freelancers for work performed on the

6  Bratz project. The documents evidencing this work are too numerous to identify

7  individually.

8  **INTERROGATORY NO. 29:**

9           IDENTIFY each and every BRATZ INVENTION that was CREATED,

10 in whole or in part, after January 3, 1999 and before October 21, 2000, and for each

11 BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO

12 the timing of the creation of such BRATZ INVENTION and IDENTIFY all

13 PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR

14 RELATE TO such facts.

15 **RESPONSE TO INTERROGATORY NO. 29:**

16           MGA incorporates by reference its General Response and General

17 Objections above, as though fully set forth herein and specifically incorporates

18 General Objection No. 7 (regarding Definitions), including but not limited to its

19 objections to the definitions of the terms BRATZ INVENTION, CREATED, REFER

20 OR RELATE TO, and IDENTIFY. MGA further objects to this interrogatory as

21 compound because it contains discrete subparts that require separate, distinct and

22 multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad

23 and unduly burdensome, as Mattel's definition of this term calls for responses to

24 multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY

25 in the context of this interrogatory would require MGA to provide a multitude of

26 discrete responses for each BRATZ INVENTION, including:

27           (a)     the Bates number of any document that "REFERS OR RELATES

28 TO the BRATZ INVENTION;"

EXHIBIT  23

PAGE  467

1    (b)    the IDENTITY of the individual author or creator of the BRATZ
2 INVENTION;

3    (c)    the IDENTITY of each other individual who contributed in any
4 manner to the BRATZ INVENTION;

5    (d)    the form, material and medium of the BRATZ INVENTION;

6    (e)    the title or name of the BRATZ INVENTION;

7    (f)    the version, modification, revision or iteration number of the
8 BRATZ INVENTION;

9    (g)    the current location of the original of the BRATZ INVENTION;

10    (h)    the first day on which the BRATZ INVENTION was CREATED;

11    (i)    the last day on which the BRATZ INVENTION was CREATED;

12    (j)    whether the entire invention was CREATED during the period of
13 time listed in the Interrogatory (and if not, which portions were created during,
14 earlier, or later than the period of time listed in the Interrogatory).

15        This interrogatory is further compounded by Mattel's definition of
16 IDENTITY, which purports to require MGA to provide the following information
17 for each of the individuals Mattel is requesting that MGA identify with respect to
18 each BRATZ INVENTION:  (a) the individual's name (b) any known business title;
19 (c) the current or last known business affiliation; (d) current or last known residential
20 address; (e) current or last known business address; (f) current or last known
21 relationship to MGA; and (g) current or last known telephone number.

22        MGA further objects to this interrogatory on the grounds that it is
23 overbroad, unduly burdensome, vague and ambiguous both generally and
24 specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED,
25 DESIGN and REFER OR RELATES TO.  In particular, the term BRATZ
26 INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR
27 RELATES TO, is so broad and over-inclusive that it could be read to include each
28 and every thought, idea and conversation that anyone may have had about BRATZ

21

EXHIBIT ___23___

PAGE ___470___

1   during the time period at issue.

2         MGA further objects to the extent that this interrogatory seeks
3 information that is outside of MGA's knowledge and is not in MGA's possession,
4 custody or control.  In particular, MGA objects to this interrogatory to the extent that
5 it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*
6 DOCUMENTS" (emphasis added).

7         MGA also objects to this interrogatory to the extent it seeks information
8 that is not subject to disclosure under any applicable privilege, doctrine or immunity,
9 including without limitation the attorney-client privilege, the work product doctrine,
10 the right of privacy, and all other privileges recognized under the constitutional,
11 statutory or decisional law of the United States of America, the State of California or
12 any other applicable jurisdiction.

13         MGA further objects to the interrogatory on the ground that it is
14 premature because the invention, creation, conception, or reduction to practice of
15 Bratz (and related issues) will be the subject of expert testimony at trial.  MGA
16 objects to this interrogatory to the extent it seeks to limit the expert testimony that
17 MGA may seek to introduce at trial.  MGA will identify its experts and make related
18 disclosures in accordance with the Court's orders and applicable rules.  MGA further
19 objects to the interrogatory as unduly burdensome, on the grounds that it would
20 require MGA to identify numerous documents that have already been produced and
21 are readily available to Mattel.

22         MGA further objects to this interrogatory because Mattel has
23 propounded more than 50 interrogatories.  Under Judge Larson's order of February
24 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
25 04049-SGL and CV 05-02727]."

26         Subject to and without waiving the foregoing objections, MGA
27 responds as follows:  MGA is willing to meet and confer with Mattel regarding this
28 interrogatory and the obligation of Mattel to supplement its responses to MGA's First

<div align="center">22</div>

EXHIBIT __23__

PAGE __471__

1 | Set of Interrogatories.

2 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 29:**

3 | MGA incorporates by reference its General Response and General

4 | Objections above, as though fully set forth herein and specifically incorporates

5 | General Objection No. 7 (regarding Definitions), including but not limited to its

6 | objections to the definitions of the terms BRATZ INVENTION, CREATED, REFER

7 | OR RELATE TO, and IDENTIFY. MGA further objects to this interrogatory as

8 | compound because it contains discrete subparts that require separate, distinct and

9 | multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad

10 | and unduly burdensome, as Mattel's definition of this term calls for responses to

11 | multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY

12 | in the context of this interrogatory would require MGA to provide a multitude of

13 | discrete responses for each BRATZ INVENTION, including:

14 | (a)   the Bates number of any document that "REFERS OR RELATES

15 | TO the BRATZ INVENTION;"

16 | (b)   the IDENTITY of the individual author or creator of the BRATZ

17 | INVENTION;

18 | (c)   the IDENTITY of each other individual who contributed in any

19 | manner to the BRATZ INVENTION;

20 | (d)   the form, material and medium of the BRATZ INVENTION;

21 | (e)   the title or name of the BRATZ INVENTION;

22 | (f)   the version, modification, revision or iteration number of the

23 | BRATZ INVENTION;

24 | (g)   the current location of the original of the BRATZ INVENTION;

25 | (h)   the first day on which the BRATZ INVENTION was CREATED;

26 | (i)   the last day on which the BRATZ INVENTION was CREATED;

27 | (j)   whether the entire invention was CREATED during the period of

28 | time listed in the Interrogatory (and if not, which portions were created during,

23

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT 23

PAGE 472

1 earlier, or later than the period of time listed in the Interrogatory).

2       This interrogatory is further compounded by Mattel's definition of
3 IDENTITY, which purports to require MGA to provide the following information
4 for each of the individuals Mattel is requesting that MGA identify with respect to
5 each BRATZ INVENTION:  (a) the individual's name (b) any known business title;
6 (c) the current or last known business affiliation; (d) current or last known residential
7 address; (e) current or last known business address; (f) current or last known
8 relationship to MGA; and (g) current or last known telephone number.

9       MGA further objects to this interrogatory on the grounds that it is
10 overbroad, unduly burdensome, vague and ambiguous both generally and
11 specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED,
12 DESIGN and REFER OR RELATES TO.  In particular, the term BRATZ
13 INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR
14 RELATES TO, is so broad and over-inclusive that it could be read to include each
15 and every thought, idea and conversation that anyone may have had about BRATZ
16 during the time period at issue.

17       MGA further objects to the extent that this interrogatory seeks
18 information that is outside of MGA's knowledge and is not in MGA's possession,
19 custody or control.  In particular, MGA objects to this interrogatory to the extent that
20 it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS … and *all*
21 DOCUMENTS" (emphasis added).

22       MGA also objects to this interrogatory to the extent it seeks information
23 that is not subject to disclosure under any applicable privilege, doctrine or immunity,
24 including without limitation the attorney-client privilege, the work product doctrine,
25 the right of privacy, and all other privileges recognized under the constitutional,
26 statutory or decisional law of the United States of America, the State of California or
27 any other applicable jurisdiction.

28       MGA further objects to the interrogatory on the ground that it is

<div align="center">24</div>

EXHIBIT __23__

PAGE __473__

1   premature because the invention, creation, conception, or reduction to practice of

2   Bratz (and related issues) will be the subject of expert testimony at trial. MGA

3   objects to this interrogatory to the extent it seeks to limit the expert testimony that

4   MGA may seek to introduce at trial. MGA will identify its experts and make related

5   disclosures in accordance with the Court's orders and applicable rules. MGA further

6   objects to the interrogatory as unduly burdensome, on the grounds that it would

7   require MGA to identify numerous documents that have already been produced and

8   are readily available to Mattel.

9           Subject to and without waiving the foregoing objections, MGA

10  responds as follows:

11          There were no inventions related to Bratz after January 3, 1999 and

12  before October 21, 2000.

13  **INTERROGATORY NO. 30:**

14          State all facts that support YOUR contention, if YOU so contend, that,

15  assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL

16  pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over

17  and/or has superior rights to MATTEL as to such BRATZ INVENTION, and

18  IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that

19  REFER OR RELATE TO such facts.

20  **RESPONSE TO INTERROGATORY NO. 30:**

21          MGA incorporates by reference its General Response and General

22  Objections above, as though fully set forth herein and specifically incorporates

23  General Objection No. 7 (regarding Definitions), including but not limited to its

24  objections to the definitions of the terms BRATZ INVENTION, INVENTIONS

25  AGREEMENT, IDENTIFY and REFER OR RELATE TO. MGA also objects to

26  this interrogatory to the extent it seeks information that is not subject to disclosure

27  under any applicable privilege, doctrine or immunity, including without limitation

28  the attorney-client privilege, the work product doctrine, the right of privacy, and all

25

EXHIBIT ___23___

PAGE ___474___

1 | other privileges recognized under the constitutional, statutory or decisional law of
2 | the United States of America, the State of California or any other applicable
3 | jurisdiction. MGA further objects to this interrogatory to the extent it calls for a
4 | legal conclusion. MGA further objects to the extent that this interrogatory seeks
5 | information that is outside MGA's knowledge and is not in MGA's possession,
6 | custody, or control. In particular, MGA objects to this interrogatory to the extent
7 | that it requests MGA to "state *all facts* . . . *and* IDENTIFY all PERSONS . . . and *all*
8 | DOCUMENTS" (emphasis added).

9 | MGA further objects to the interrogatory on the grounds that it is vague,
10 | ambiguous and threatens to mislead the trier of fact in that it is stated in the
11 | hypothetical and therefore proceeds from the false premise that Bryant assigned
12 | rights in the Bratz line of dolls to Mattel and that all terms of the INVENTIONS
13 | AGREEMENT are binding and enforceable. *See e.g., Kendrick v. Sullivan*, 125
14 | F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention
15 | interrogatories directed at hypothetical scenarios). Any response to this interrogatory
16 | depends on, among other factual and legal factors, specifically which BRATZ
17 | INVENTION it is hypothetically assumed that Bryant assigned rights in to MGA and
18 | which rights he assigned, which information is not provided in the incomplete
19 | hypothetical scenario posited in this interrogatory.

20 | MGA further objects to the interrogatory on the ground that it is
21 | premature because the invention, creation, conception, or reduction to practice of
22 | Bratz (and related issues) will be the subject of expert testimony at trial. MGA
23 | objects to this interrogatory to the extent it seeks to limit the expert testimony that
24 | MGA may seek to introduce at trial. MGA further objects on the grounds that the
25 | interrogatory seeks information not relevant to any claim or defense in the action and
26 | is not reasonably calculated to the discovery of admissible evidence because MGA
27 | denies that Bryant assigned any such rights to Mattel.

28 | MGA objects to this interrogatory because Mattel has propounded more

26

EXHIBIT ___23___

PAGE ___475___

1 | than 50 interrogatories. Under Judge Larson's order of February 22, 2007,
2 | "Interrogatories are to be limited to 50 for each side for both [Case Nos. CV 04-
3 | 04049-SGL and CV 05-02727]."

4 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 30:**

5 | MGA incorporates by reference its General Response and General
6 | Objections above, as though fully set forth herein and specifically incorporates
7 | General Objection No. 7 (regarding Definitions), including but not limited to its
8 | objections to the definitions of the terms BRATZ INVENTION, INVENTIONS
9 | AGREEMENT, IDENTIFY and REFER OR RELATE TO. MGA also objects to
10 | this interrogatory to the extent it seeks information that is not subject to disclosure
11 | under any applicable privilege, doctrine or immunity, including without limitation
12 | the attorney-client privilege, the work product doctrine, the right of privacy, and all
13 | other privileges recognized under the constitutional, statutory or decisional law of
14 | the United States of America, the State of California or any other applicable
15 | jurisdiction. MGA further objects to this interrogatory to the extent it calls for a
16 | legal conclusion. MGA further objects to the extent that this interrogatory seeks
17 | information that is outside MGA's knowledge and is not in MGA's possession,
18 | custody, or control. In particular, MGA objects to this interrogatory to the extent
19 | that it requests MGA to "state *all facts . . . and* IDENTIFY all PERSONS . . . and *all*
20 | DOCUMENTS" (emphasis added).

21 | MGA further objects to the interrogatory on the grounds that it is vague,
22 | ambiguous and threatens to mislead the trier of fact in that it is stated in the
23 | hypothetical and therefore proceeds from the false premise that Bryant assigned
24 | rights in the Bratz line of dolls to Mattel and that all terms of the INVENTIONS
25 | AGREEMENT are binding and enforceable. *See e.g., Kendrick v. Sullivan,* 125
26 | F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention
27 | interrogatories directed at hypothetical scenarios). Any response to this interrogatory
28 | depends on, among other factual and legal factors, specifically which BRATZ

EXHIBIT ___23___

PAGE_____876_____

1 INVENTION it is hypothetically assumed that Bryant assigned rights in to MGA and
2 which rights he assigned, which information is not provided in the incomplete
3 hypothetical scenario posited in this interrogatory.

4 MGA further objects to the interrogatory on the ground that it is
5 premature because the invention, creation, conception, or reduction to practice of
6 Bratz (and related issues) will be the subject of expert testimony at trial. MGA
7 objects to this interrogatory to the extent it seeks to limit the expert testimony that
8 MGA may seek to introduce at trial. MGA further objects on the grounds that the
9 interrogatory seeks information not relevant to any claim or defense in the action and
10 is not reasonably calculated to the discovery of admissible evidence because MGA
11 denies that Bryant assigned any such rights to Mattel.

12 Subject to and without waiving the foregoing objections, MGA
13 responds as follows:

14 MGA incorporates by reference its supplemental responses to
15 Interrogatory Nos. 27, 28, 29 and 31 as though fully set forth herein, and responds
16 further that, assuming Bryant assigned rights to inventions related to Bratz pursuant
17 to the "INVENTIONS AGREEMENT," (i.e. under the terms of said Agreement and
18 for inventions conceived of and/or reduced to practice during the period of Bryant's
19 employment with Mattel to which said Agreement relates), MGA would have
20 superior rights in the Bratz dolls because: (i) there were no "inventions" related to
21 Bratz covered by the "INVENTIONS AGREEMENT;" (ii) the Bratz dolls were
22 neither substantially similar to, nor a copy of, nor derivative of, Mattel's hypothetical
23 rights; and (iii) Mattel waived any rights it may have had due to laches and the
24 statute of limitations.

25 **INTERROGATORY NO. 31:**

26 State all facts that support YOUR contention, if YOU so contend, that
27 the INVENTIONS AGREEMENT is not valid and enforceable, and IDENTIFY all
28 PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

28

EXHIBIT ___23___

PAGE____477____

1  RELATE TO such facts.

2  **RESPONSE TO INTERROGATORY NO. 31:**

3       MGA incorporates by reference its General Response and General

4  Objections above, as though fully set forth herein and specifically incorporates

5  General Objection No. 7 (regarding Definitions), including but not limited to its

6  objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

7  and REFER OR RELATE TO.  MGA also objects to this interrogatory to the extent

8  it seeks information that is not subject to disclosure under any applicable privilege,

9  doctrine or immunity, including without limitation the attorney-client privilege, the

10  work product doctrine, the right of privacy, and all other privileges recognized under

11  the constitutional, statutory or decisional law of the United States of America, the

12  State of California or any other applicable jurisdiction.  MGA also objects to this

13  interrogatory to the extent that it calls for a legal conclusion.

14       MGA objects that this interrogatory is an overbroad and unduly

15  burdensome contention interrogatory to the extent it asks for "all facts" which

16  supports the denial of a statement or allegation.  *See e.g., Safeco of Am. v. Rawstron,*

17  181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all

18  facts, documents, and witnesses that support the denial of a statement or allegation of

19  fact" because the "universe of potentially responsive information is almost endless").

20  MGA further objects to the extent that this interrogatory seeks information outside of

21  MGA's personal knowledge and is not in MGA's possession, custody or control.  In

22  particular, MGA objects to this interrogatory to the extent that it requests that MGA

23  "state *all* facts . . . and IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS"

24  (emphasis added).

25       MGA objects to this interrogatory because Mattel has propounded more

26  than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,

27  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

28  SGL and CV 05-02727]."

29

EXHIBIT 23

PAGE 478

1    Subject to and without waiving the foregoing objections, MGA

2  responds as follows: MGA is willing to meet and confer with Mattel regarding this

3  interrogatory and the obligation of Mattel to supplement its responses to MGA's First

4  Set of Interrogatories.

5  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 31:**

6    MGA incorporates by reference its General Response and General

7  Objections above, as though fully set forth herein and specifically incorporates

8  General Objection No. 7 (regarding Definitions), including but not limited to its

9  objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

10  and REFER OR RELATE TO. MGA also objects to this interrogatory to the extent

11  it seeks information that is not subject to disclosure under any applicable privilege,

12  doctrine or immunity, including without limitation the attorney-client privilege, the

13  work product doctrine, the right of privacy, and all other privileges recognized under

14  the constitutional, statutory or decisional law of the United States of America, the

15  State of California or any other applicable jurisdiction. MGA also objects to this

16  interrogatory to the extent that it calls for a legal conclusion.

17    MGA objects that this interrogatory is an overbroad and unduly

18  burdensome contention interrogatory to the extent it asks for "all facts" which

19  supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*,

20  181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all

21  facts, documents, and witnesses that support the denial of a statement or allegation of

22  fact" because the "universe of potentially responsive information is almost endless").

23  MGA further objects to the extent that this interrogatory seeks information outside of

24  MGA's personal knowledge and is not in MGA's possession, custody or control. In

25  particular, MGA objects to this interrogatory to the extent that it requests that MGA

26  "state *all* facts . . . and IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS"

27  (emphasis added).

28    Subject to and without waiving the foregoing objections, MGA

30

EXHIBIT ___23___

PAGE_____479

1  responds as follows:

2       MGA contends that Paragraph 3-a of the "INVENTIONS
3  AGREEMENT" is unenforceable based on the equitable doctrine of laches, and the
4  statute of limitations, in that Mattel intentionally delayed in taking legal action
5  against MGA or Carter Bryant for several years in the belief that Mattel would be
6  able to drive Bratz out of the marketplace through the introduction of a copycat line
7  of My Scene Barbie dolls. Mattel only took legal action well after MGA had
8  invested substantial amounts of capital and creative and innovative human effort in
9  the Bratz line of dolls and had experienced enormous success in the market place,
10  changing the fashion doll business forever. In addition, many Mattel employees
11  knew following the introduction of the first generation of Bratz dolls to the market
12  that Carter Bryant was the originator of the idea that led to the first generation of
13  Bratz dolls.

14       The "INVENTIONS AGREEMENT" is also invalid and unenforceable
15  insofar it purports to prohibit Bryant from engaging in good faith and reasonable
16  efforts to seek professional opportunities with Mattel competitors while still
17  employed by Mattel.

18       These contentions are based on the following facts and circumstances:
19  MGA is informed and believes that it was common knowledge at Mattel that many
20  Mattel employees employed in the Mattel design center worked on a freelance basis
21  for third parties, including Mattel competitors. Despite knowledge of this activity,
22  Mattel rarely, if ever, enforced any rights it may have had to prohibit such
23  freelancing. Mattel has therefore waived any right it may have had to enforce
24  Paragraph 3-a of the "INVENTIONS AGREEMENT" against Carter Bryant by
25  virtue of course-of-conduct contract law principles.

26       The following persons have knowledge of the facts and circumstances
27  supporting this contention: current and former members of Mattel management,
28  current and former members of Mattel's legal department, current and former

31

EXHIBIT  23

PAGE  470

1  employees in Mattel's Design Center, including, Robert Eckert, Alan Kaye, Matt

2  Bousquette, Adrienne Fontanella, Richard De Anda, Ivy Ross and Margaret Leahy.

3     The following documents may be relevant to these facts: the

4  "INVENTIONS AGREEMENT;" Mattel documents referring or relating to Mattel's

5  enforcement, or lack thereof, of the provisions of similar agreements between Mattel

6  and its employees; Mattel documents referring or relating to Mattel's knowledge or

7  investigation of suspected violations of similar agreements between Mattel and its

8  employees; Mattel's internal emails that have not been produced; documents from

9  Mattel's Zeus computer systems; documents referring or relating to Mattel's market

10  research; documents referring or relating to Mattel's public relations efforts;

11  documents referring or relating to Mattel's advertising and advertising strategies.

12  Mattel has produced very few documents in this action in response to MGA's

13  outstanding requests. MGA recently served additional requests for production of

14  documents. MGA reserves the right to supplement this response and all of its other

15  responses after Mattel has completed its production.

16     This response is without prejudice to MGA's position that the

17  "INVENTIONS AGREEMENT" as a whole is invalid and unenforceable as a

18  violation of public policy.

19  **INTERROGATORY NO. 32:**

20     State all facts that support YOUR contention, if YOU so contend, that

21  MATTEL is not or would not be entitled to injunctive relief as requested in its

22  COMPLAINT and/or COUNTERCLAIMS if it is ultimately determined that

23  MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all PERSONS

24  with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

25  such facts.

26  **RESPONSE TO INTERROGATORY NO. 32:**

27     MGA incorporates by reference its General Response and General

28  Objections above, as though fully set forth herein and specifically incorporates

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT  23

PAGE  481

1 General Objection No. 7 (regarding Definitions), including but not limited to its
2 objections to the definitions of the terms BRATZ INVENTIONS, IDENTIFY and
3 REFER OR RELATE TO, and further objects on the ground that the interrogatory is
4 overbroad, unduly burdensome, vague and ambiguous both generally and
5 specifically with respect to the terms YOUR, YOU, MATTEL. MGA also objects to
6 this interrogatory to the extent it seeks information that is not subject to disclosure
7 under any applicable privilege, doctrine or immunity, including without limitation
8 the attorney-client privilege, the work product doctrine, the right of privacy, and all
9 other privileges recognized under the constitutional, statutory or decisional law of
10 the United States of America, the State of California or any other applicable
11 jurisdiction. MGA further objects to the interrogatory on the ground that it is
12 premature because matters affecting Mattel's ability to obtain injunctive relief may
13 be the subject of expert testimony at trial. MGA objects to this interrogatory to the
14 extent it seeks to limit the expert testimony that MGA may seek to introduce at trial.
15 MGA will identify its experts and make related disclosures in accordance with the
16 Court's orders and applicable rules.

17      MGA notes that the issue of injunctive relief will be decided by the
18 Court after the conclusion of all jury deliberation relevant to the issue. MGA
19 believes accordingly that the Court's review of injunctive relief issue will not occur
20 until the conclusion of Phase 2.

21      MGA further objects on the ground that this interrogatory is an
22 overbroad and unduly burdensome contention interrogatory to the extent it asks for
23 "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
24 *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
25 requests seeking "all facts, documents, and witnesses that support the denial of a
26 statement or allegation of fact" because the "universe of potentially responsive
27 information is almost endless").

28      MGA further objects to the extent that this interrogatory seeks

33

EXHIBIT ___23___

PAGE _____482_____

1 │ information that is outside MGA's knowledge and is not in MGA's possession,

2 │ custody, or control.  In particular, MGA objects to this interrogatory to the extent

3 │ that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all*

4 │ DOCUMENTS" (emphasis added).

5 │       MGA further objects to this interrogatory as it asks MGA to assume

6 │ facts contrary to evidence, and further asks it to base any response on an incomplete

7 │ and incomprehensible hypothetical scenario.  *See, e.g., Kendrick v. Sullivan*, 125

8 │ F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention

9 │ interrogatories directed at hypothetical scenarios).  Whether or not Mattel is or would

10 │ or would not be "entitled to injunctive relief" depends on, among other factual and

11 │ legal factors, which specific "BRATZ INVENTION" Mattel is hypothetically found

12 │ to own, and whether and/or to what extent it is determined that any Bratz products

13 │ that have been produced and sold are derivative works of any such BRATZ

14 │ INVENTIONS, which information is not provided in the incomplete hypothetical

15 │ scenario posited in this interrogatory.  MGA also objects to this interrogatory on the

16 │ grounds that Mattel – not MGA – bears the burden of proof to show that it is entitled

17 │ to injunctive relief, it if is ultimately determined that Mattel owns one or more

18 │ BRATZ INVENTIONS.

19 │       MGA further objects to this interrogatory because Mattel has

20 │ propounded more than 50 interrogatories.  Under Judge Larson's order of February

21 │ 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

22 │ 04049-SGL and CV 05-02727]."

23 │ **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 32:**

24 │       MGA incorporates by reference its General Response and General

25 │ Objections above, as though fully set forth herein and specifically incorporates

26 │ General Objection No. 7 (regarding Definitions), including but not limited to its

27 │ objections to the definitions of the terms BRATZ INVENTIONS, IDENTIFY and

28 │ REFER OR RELATE TO, and further objects on the ground that the interrogatory is

EXHIBIT __23__

PAGE __4 83__

overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, MATTEL. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory on the ground that it is premature because matters affecting Mattel's ability to obtain injunctive relief may be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA notes that the issue of injunctive relief will be decided by the Court after the conclusion of all jury deliberation relevant to the issue. MGA believes accordingly that the Court's review of injunctive relief issue will not occur until the conclusion of Phase 2.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

1  DOCUMENTS" (emphasis added).

2        MGA further objects to this interrogatory as it asks MGA to assume
3  facts contrary to evidence, and further asks it to base any response on an incomplete
4  and incomprehensible hypothetical scenario. *See, e.g., Kendrick v. Sullivan*, 125
5  F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention
6  interrogatories directed at hypothetical scenarios). Whether or not Mattel is or would
7  or would not be "entitled to injunctive relief" depends on, among other factual and
8  legal factors, which specific "BRATZ INVENTION" Mattel is hypothetically found
9  to own, and whether and/or to what extent it is determined that any Bratz products
10  that have been produced and sold are derivative works of any such BRATZ
11  INVENTIONS, which information is not provided in the incomplete hypothetical
12  scenario posited in this interrogatory. MGA also objects to this interrogatory on the
13  grounds that Mattel – not MGA – bears the burden of proof to show that it is entitled
14  to injunctive relief, it if is ultimately determined that Mattel owns one or more
15  BRATZ INVENTIONS.

16        Subject to and without waiving the foregoing objections, MGA
17  responds as follows:

18        Mattel is not entitled to injunctive relief for the following reasons:

19        (a)    Mattel is not entitled to injunctive relief in accordance with the
20  principles established by the United States Supreme Court in eBay v. MercExchange,
21  126 S. Ct. 1837 (2006).

22        (b)    The original concepts contributed by Bryant to the creation of the
23  Bratz dolls represent only one of the many factors that combined to make Bratz one
24  of the most successful fashion dolls on the market. The contributions made by MGA
25  to the Bratz dolls far outweigh any contributions made by Bryant prior to October
26  21, 2000 in terms of the overall factors that contributed to the commercial success of
27  Bratz.

28        (c)    Mattel played no role in the creation and/or selection of the Bratz

36

EXHIBIT ___23___

PAGE ___485___

1 | slogan, "The Girls with a Passion for Fashion!" or the brand name "Bratz."

2 |        (d)    Mattel played no role in the development of the Bratz line of
3 | dolls' innovative and trend-setting packaging.

4 |        (e)    Mattel played no role in MGA's improvements, enhancements
5 | and changes to the Bratz dolls in the months and years on and/or after October 21,
6 | 2000.

7 |        (f)    Mattel played no role in MGA's development of the fashions for
8 | the Bratz dolls.

9 |        (g)    Mattel played no role in the development of Bratz Kidz, Bratz
10 | Petz, Bratz Babyz and other successful additions to the Bratz doll family.

11 |        (h)    Mattel played no role in the development of the myriad of
12 | accessories for the Bratz dolls.

13 |        (i)    Mattel played no role in the development of the successful
14 | themes that have enhanced the popularity of the Bratz dolls.

15 |        (j)    Mattel played no role in the development of the Bratz animated
16 | TV series, Bratz TV commercials, or Bratz the movie.

17 |        (k)    Mattel played no role in the development of the Bratz brand.

18 |        (l)    If in 2000 Mattel had been presented with the opportunity to
19 | develop Bryant's idea for a line of fashion dolls, Mattel would not have pursued said
20 | opportunity because of a perceived threat to Mattel's Barbie franchise.

21 |        (m)    Mattel's inequitable conduct through years of efforts to eliminate
22 | competition to its lines of fashion dolls.

23 |        (n)    Mattel's inequitable conduct through specific acts of unfair
24 | competition, as previously set forth in MGA's Responses and Supplemental
25 | Responses to Mattel's First Set of Interrogatories Re: Claims of Unfair Competition
26 | Nos. 5, 6, 8, 9 and 10.

27 |        (o)    The equitable doctrine of laches, in that Mattel intentionally
28 | delayed in taking legal action against MGA or Carter Bryant for several years in the

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT   23

PAGE   486

1 | belief that Mattel would be able to drive Bratz out of the marketplace through the
2 | introduction of a copycat line of My Scene Barbie dolls. Mattel only took legal
3 | action well after MGA had invested substantial amounts of capital and creative and
4 | innovative human effort in the Bratz line of dolls and had experienced enormous
5 | success in the marketplace, changing the fashion doll business forever.

6 |         (p)     The statute of limitations.

7 |         The persons who have knowledge of the facts and circumstances
8 | supporting these contentions of inequitable conduct by Mattel have already been
9 | provided in MGA's supplemental responses to Interrogatory Nos. 27, 28, and 31.

10 |         To the extent that Mattel's interrogatory could be interpreted to require
11 | MGA to identify all documents that "REFER OR RELATE TO" substantially all
12 | facets of MGA's business, these documents are too numerous to identify individually
13 | without undue burden to MGA. The following categories of documents may be
14 | relevant to these facts: Mattel's Brand Directional Outlines; analyses and assessments
15 | of Mattel's marketing strategies prepared and/or produced by Young and Rubicam
16 | Brands; Mattel's Marketing Department assessments of Mattel's advertising and
17 | branding strategies; Mattel's Creative Briefs; and publicly available documents
18 | evidencing MGA's trademarks, patents, and copyrights.

19 | **INTERROGATORY NO. 33:**

20 |         State all facts that support YOUR contention, if YOU so contend, that
21 | MATTEL is not entitled to an award of punitive or exemplary damages against
22 | YOU, and IDENTIFY all PERSONS with knowledge of such facts and all
23 | DOCUMENTS that REFER OR RELATE TO such facts.

24 | **RESPONSE TO INTERROGATORY NO. 33:**

25 |         MGA incorporates by reference its General Response and General
26 | Objections above, as though fully set forth herein and specifically incorporates
27 | General Objection No. 7 (regarding Definitions), including but not limited to its
28 | objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

23.

PAGE _____ 464

1   and further objects on the ground that the interrogatory is overbroad, unduly

2   burdensome, vague and ambiguous both generally and specifically with respect to

3   the terms YOUR, YOU, and MATTEL. In particular, by way of example, the term

4   YOU as defined by Mattel could be read to require MGA to state all facts supporting

5   why Mattel is not entitled to an award of punitive damages against each of the

6   responding parties in this litigation, thereby rendering the interrogatory

7   impermissibly compound. MGA also objects to this interrogatory to the extent it

8   seeks information that is not subject to disclosure under any applicable privilege,

9   doctrine or immunity, including without limitation the attorney-client privilege, the

10  work product doctrine, the right of privacy, and all other privileges recognized under

11  the constitutional, statutory or decisional law of the United States of America, the

12  State of California or any other applicable jurisdiction. MGA further objects to the

13  interrogatory to the extent it calls for a legal conclusion.

14          MGA further objects on the ground that this interrogatory is an

15  overbroad and unduly burdensome contention interrogatory to the extent it asks for

16  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

17  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

18  requests seeking "all facts, documents, and witnesses that support the denial of a

19  statement or allegation of fact" because the "universe of potentially responsive

20  information is almost endless").

21          MGA further objects to the extent that this interrogatory seeks

22  information that is outside MGA's knowledge and is not in MGA's possession,

23  custody, or control. In particular, MGA objects to this interrogatory to the extent

24  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

25  DOCUMENTS" (emphasis added).

26          MGA also objects to this interrogatory on the grounds that Mattel – not

27  MGA – bears the burden of proof to show that it is entitled to an award of punitive or

28  exemplary damages.

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT 23

PAGE 488

1    MGA further objects to this interrogatory because Mattel has

2 propounded more than 50 interrogatories. Under Judge Larson's order of February

3 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

4 04049-SGL and CV 05-02727]."

5    Subject to and without waiving the foregoing objections, MGA

6 responds as follows: MGA is willing to meet and confer with Mattel regarding this

7 interrogatory and the obligation of Mattel to supplement its responses to MGA's First

8 Set of Interrogatories.

9 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 33:**

10    MGA incorporates by reference its General Response and General

11 Objections above, as though fully set forth herein and specifically incorporates

12 General Objection No. 7 (regarding Definitions), including but not limited to its

13 objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

14 and further objects on the ground that the interrogatory is overbroad, unduly

15 burdensome, vague and ambiguous both generally and specifically with respect to

16 the terms YOUR, YOU, and MATTEL. In particular, by way of example, the term

17 YOU as defined by Mattel could be read to require MGA to state all facts supporting

18 why Mattel is not entitled to an award of punitive damages against each of the

19 responding parties in this litigation, thereby rendering the interrogatory

20 impermissibly compound. MGA also objects to this interrogatory to the extent it

21 seeks information that is not subject to disclosure under any applicable privilege,

22 doctrine or immunity, including without limitation the attorney-client privilege, the

23 work product doctrine, the right of privacy, and all other privileges recognized under

24 the constitutional, statutory or decisional law of the United States of America, the

25 State of California or any other applicable jurisdiction. MGA further objects to the

26 interrogatory to the extent it calls for a legal conclusion.

27    MGA further objects on the ground that this interrogatory is an

28 overbroad and unduly burdensome contention interrogatory to the extent it asks for

40

EXHIBIT ___23___

PAGE ___989___

1   "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
2   *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
3   requests seeking "all facts, documents, and witnesses that support the denial of a
4   statement or allegation of fact" because the "universe of potentially responsive
5   information is almost endless").

6          MGA further objects to the extent that this interrogatory seeks
7   information that is outside MGA's knowledge and is not in MGA's possession,
8   custody, or control.  In particular, MGA objects to this interrogatory to the extent
9   that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*
10  DOCUMENTS" (emphasis added).

11         MGA also objects to this interrogatory on the grounds that Mattel – not
12  MGA – bears the burden of proof to show that it is entitled to an award of punitive or
13  exemplary damages.

14         Subject to and without waiving the foregoing objections, MGA
15  responds as follows:

16         Mattel is not entitled to an award of punitive or exemplary damages
17  against MGA because:  (i) Mattel does not own any rights in the Bratz dolls; (ii)
18  MGA has not violated or infringed any rights of Mattel with respect to the Bratz
19  dolls; (iii) Mattel has not shown that MGA acted in bad faith; and (iv) Mattel has not
20  presented any evidence to support the requirements for such an award against MGA.

21  **INTERROGATORY NO. 34:**

22         State all facts that support YOUR contention, if YOU so contend, that
23  YOU did not intentionally interfere with the INVENTIONS AGREEMENT when
24  BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to
25  BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all
26  DOCUMENTS that REFER OR RELATE TO such facts.

27  **RESPONSE TO INTERROGATORY NO. 34:**

28         MGA incorporates by reference its General Response and General

41

EXHIBIT      23

PAGE        490

1   Objections above, as though fully set forth herein and specifically incorporates

2   General Objection No. 7 (regarding Definitions), including but not limited to its

3   objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

4   and REFER OR RELATE TO, and further objects on the ground that the

5   interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

6   and specifically with respect to the terms YOUR, YOU, BRYANT, MGA,

7   TRANSFER and ACQUIRE.  In particular, by way of example, the term YOU as

8   defined by Mattel could be read to require MGA to state all facts supporting why

9   each of the responding parties did not "intentionally interfere with the

10  INVENTIONS AGREEMENT," thereby rendering the interrogatory impermissibly

11  compound.  MGA also objects to this interrogatory to the extent it seeks information

12  that is not subject to disclosure under any applicable privilege, doctrine or immunity,

13  including without limitation the attorney-client privilege, the work product doctrine,

14  the right of privacy, and all other privileges recognized under the constitutional,

15  statutory or decisional law of the United States of America, the State of California or

16  any other applicable jurisdiction.  MGA further objects to the interrogatory to the

17  extent it calls for a legal conclusion.

18        MGA further objects on the ground that this interrogatory is an

19  overbroad and unduly burdensome contention interrogatory to the extent it asks for

20  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

21  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

22  requests seeking "all facts, documents, and witnesses that support the denial of a

23  statement or allegation of fact" because the "universe of potentially responsive

24  information is almost endless").

25        MGA further objects to the extent that this interrogatory seeks

26  information that is outside MGA's knowledge and is not in MGA's possession,

27  custody, or control.  In particular, MGA objects to this interrogatory to the extent

28  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

42

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT __23__

PAGE __491__

1 | DOCUMENTS" (emphasis added).

2 |       MGA further objects to this interrogatory because Mattel has

3 | propounded more than 50 interrogatories. Under Judge Larson's order of February

4 | 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

5 | 04049-SGL and CV 05-02727]."

6 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 34:**

7 |       MGA incorporates by reference its General Response and General

8 | Objections above, as though fully set forth herein and specifically incorporates

9 | General Objection No. 7 (regarding Definitions), including but not limited to its

10 | objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

11 | and REFER OR RELATE TO, and further objects on the ground that the

12 | interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

13 | and specifically with respect to the terms YOUR, YOU, BRYANT, MGA,

14 | TRANSFER and ACQUIRE. In particular, by way of example, the term YOU as

15 | defined by Mattel could be read to require MGA to state all facts supporting why

16 | each of the responding parties did not "intentionally interfere with the

17 | INVENTIONS AGREEMENT," thereby rendering the interrogatory impermissibly

18 | compound. MGA also objects to this interrogatory to the extent it seeks information

19 | that is not subject to disclosure under any applicable privilege, doctrine or immunity,

20 | including without limitation the attorney-client privilege, the work product doctrine,

21 | the right of privacy, and all other privileges recognized under the constitutional,

22 | statutory or decisional law of the United States of America, the State of California or

23 | any other applicable jurisdiction. MGA further objects to the interrogatory to the

24 | extent it calls for a legal conclusion.

25 |       MGA further objects on the ground that this interrogatory is an

26 | overbroad and unduly burdensome contention interrogatory to the extent it asks for

27 | "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

28 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

43

EXHIBIT ___23___

PAGE ___492___

1 | requests seeking "all facts, documents, and witnesses that support the denial of a
2 | statement or allegation of fact" because the "universe of potentially responsive
3 | information is almost endless").

4 |       MGA further objects to the extent that this interrogatory seeks
5 | information that is outside MGA's knowledge and is not in MGA's possession,
6 | custody, or control. In particular, MGA objects to this interrogatory to the extent
7 | that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*
8 | DOCUMENTS" (emphasis added).

9 |       Subject to and without waiving the foregoing objections, MGA
10 | responds as follows:

11 |       MGA incorporates by reference its supplemental responses to
12 | Interrogatory No. 33 as though fully set forth herein, and further responds that MGA
13 | did not know, despite fair inquiry, that Carter Bryant had entered into the
14 | "INVENTIONS AGREEMENT." MGA responds further that MGA did not
15 | intentionally induce Bryant to breach any agreement (known or unknown) with
16 | Mattel, but instead it was Bryant who, through an intermediary, approached MGA,
17 | and pitched the Bratz concept to MGA. In addition, MGA does not believe that
18 | Bryant has breached the "INVENTIONS AGREEMENT" or any other agreement
19 | with Mattel, or breached any duties or obligations to Mattel.

20 |       The persons who have knowledge of the facts and circumstances
21 | supporting this contention that MGA did not intentionally interfere with the
22 | INVENTIONS AGREEMENT when Bryant transferred his rights in Bratz to MGA
23 | have already been identified in the supplemental responses to Interrogatory Nos. 27,
24 | 28, and 31.

25 |       Documents responsive to this interrogatory are protected by the
26 | attorney-client privileged or work product doctrine. MGA previously offered to
27 | stipulate to a limited waiver of these privileges and protections to permit inspection
28 | of such documents, but Mattel refused. Subject to these objections, MGA responds

1  that the following documents may be relevant to these facts: all documents showing
2  Bryant's work on his "pitch" materials; documents evidencing Bryant's desire to be a
3  freelance artist; documents evidencing Bryant's interactions with MGA prior to the
4  execution of the October 4, 2000 agreement between Bryant and MGA; and the
5  October 4, 2000 agreement between Bryant and MGA.

6  **INTERROGATORY NO. 35:**

7          State all facts that support YOUR contention, if YOU so contend, that
8  YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by
9  BRYANT to MATTEL when BRYANT performed work or services with or for
10 MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS
11 with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
12 such facts.

13 **RESPONSE TO INTERROGATORY NO. 35:**

14         MGA incorporates by reference its General Response and General
15 Objections above, as though fully set forth herein and specifically incorporates
16 General Objection No. 7 (regarding Definitions), including but not limited to its
17 objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,
18 and further objects on the ground that the interrogatory is overbroad, unduly
19 burdensome, vague and ambiguous both generally and specifically with respect to
20 the terms YOU, BRYANT, MGA and MATTEL.  In particular, by way of example,
21 the term YOU as defined by Mattel could be read to require MGA to state all facts
22 supporting why each of the responding parties "did not aid or abet any breach of
23 fiduciary duty or duty of loyalty owed by BRYANT to MATTEL," thereby
24 rendering the interrogatory impermissibly compound.  MGA also objects to this
25 interrogatory to the extent it seeks information that is not subject to disclosure under
26 any applicable privilege, doctrine or immunity, including without limitation the
27 attorney-client privilege, the work product doctrine, the right of privacy, and all other
28 privileges recognized under the constitutional, statutory or decisional law of the

45

EXHIBIT _____23__

PAGE _____494

1  United States of America, the State of California or any other applicable jurisdiction.

2  MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

3  MGA further objects on the ground that this interrogatory is an

4  overbroad and unduly burdensome contention interrogatory to the extent it asks for

5  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

6  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

7  requests seeking "all facts, documents, and witnesses that support the denial of a

8  statement or allegation of fact" because the "universe of potentially responsive

9  information is almost endless").

10  MGA further objects to the extent that this interrogatory seeks

11  information that is outside MGA's knowledge and is not in MGA's possession,

12  custody, or control.  In particular, MGA objects to this interrogatory to the extent

13  that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all*

14  DOCUMENTS" (emphasis added).

15  MGA further objects to this interrogatory because Mattel has

16  propounded more than 50 interrogatories.  Under Judge Larson's order of February

17  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

18  04049-SGL and CV 05-02727]."

19  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 35:**

20  MGA incorporates by reference its General Response and General

21  Objections above, as though fully set forth herein and specifically incorporates

22  General Objection No. 7 (regarding Definitions), including but not limited to its

23  objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

24  and further objects on the ground that the interrogatory is overbroad, unduly

25  burdensome, vague and ambiguous both generally and specifically with respect to

26  the terms YOU, BRYANT, MGA and MATTEL.  In particular, by way of example,

27  the term YOU as defined by Mattel could be read to require MGA to state all facts

28  supporting why each of the responding parties "did not aid or abet any breach of

46

EXHIBIT _____23

PAGE _____ 495

1  fiduciary duty or duty of loyalty owed by BRYANT to MATTEL," thereby

2  rendering the interrogatory impermissibly compound.  MGA also objects to this

3  interrogatory to the extent it seeks information that is not subject to disclosure under

4  any applicable privilege, doctrine or immunity, including without limitation the

5  attorney-client privilege, the work product doctrine, the right of privacy, and all other

6  privileges recognized under the constitutional, statutory or decisional law of the

7  United States of America, the State of California or any other applicable jurisdiction.

8  MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

9        MGA further objects on the ground that this interrogatory is an

10  overbroad and unduly burdensome contention interrogatory to the extent it asks for

11  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

12  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

13  requests seeking "all facts, documents, and witnesses that support the denial of a

14  statement or allegation of fact" because the "universe of potentially responsive

15  information is almost endless").

16        MGA further objects to the extent that this interrogatory seeks

17  information that is outside MGA's knowledge and is not in MGA's possession,

18  custody, or control.  In particular, MGA objects to this interrogatory to the extent

19  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

20  DOCUMENTS" (emphasis added).

21        Subject to and without waiving the foregoing objections, MGA

22  responds as follows:

23        MGA incorporates by reference its supplemental responses to

24  Interrogatory Nos. 34 and 38 as though fully set forth herein.  In addition, MGA

25  denies that Bryant was a fiduciary with respect to his efforts to become a freelance

26  artist.

27  **INTERROGATORY NO. 36:**

28        State all facts that support YOUR contention, if YOU so contend, that

47

EXHIBIT  23

PAGE  49 6

1  YOU acted with an innocent state of mind or reasonably believed that MATTEL did

2  not own any rights in any BRATZ INVENTION when BRYANT purported to

3  TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY

4  all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

5  RELATE TO such facts.

6  **RESPONSE TO INTERROGATORY NO. 36:**

7         MGA incorporates by reference its General Response and General

8  Objections above, as though fully set forth herein and specifically incorporates

9  General Objection No. 7 (regarding Definitions), including but not limited to its

10  objections to the definitions of BRATZ INVENTION, IDENTIFY and REFER OR

11  RELATE TO, and further objects on the grounds that the interrogatory is overbroad,

12  unduly burdensome, vague and ambiguous both generally and specifically with

13  respect to the terms YOU, BRYANT, MGA, TRANSFER, MATTEL and

14  ACQUIRE.  In particular, by way of example, the term YOU as defined by Mattel

15  could be read to require MGA to state all facts supporting why each of the

16  responding parties "acted with an innocent state of mind," thereby rendering the

17  interrogatory impermissibly compound.  MGA also objects to this interrogatory to

18  the extent it seeks information that is not subject to disclosure under any applicable

19  privilege, doctrine or immunity, including without limitation the attorney-client

20  privilege, the work product doctrine, the right of privacy, and all other privileges

21  recognized under the constitutional, statutory or decisional law of the United States

22  of America, the State of California or any other applicable jurisdiction.

23         Subject to and without waiving the foregoing objections, MGA

24  responds as follows:  MGA is willing to meet and confer with Mattel regarding this

25  interrogatory and the obligation of Mattel to supplement its responses to MGA's First

26  Set of Interrogatories.

27  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 36:**

28         MGA incorporates by reference its General Response and General

48

EXHIBIT __23__

PAGE __497__

1  Objections above, as though fully set forth herein and specifically incorporates
2  General Objection No. 7 (regarding Definitions), including but not limited to its
3  objections to the definitions of BRATZ INVENTION, IDENTIFY and REFER OR
4  RELATE TO, and further objects on the grounds that the interrogatory is overbroad,
5  unduly burdensome, vague and ambiguous both generally and specifically with
6  respect to the terms YOU, BRYANT, MGA, TRANSFER, MATTEL and
7  ACQUIRE. In particular, by way of example, the term YOU as defined by Mattel
8  could be read to require MGA to state all facts supporting why each of the
9  responding parties "acted with an innocent state of mind," thereby rendering the
10 interrogatory impermissibly compound. MGA also objects to this interrogatory to
11 the extent it seeks information that is not subject to disclosure under any applicable
12 privilege, doctrine or immunity, including without limitation the attorney-client
13 privilege, the work product doctrine, the right of privacy, and all other privileges
14 recognized under the constitutional, statutory or decisional law of the United States
15 of America, the State of California or any other applicable jurisdiction.

16        Subject to and without waiving the foregoing objections, MGA
17 responds as follows:

18        Mattel cannot show that MGA acted in bad faith when Bryant
19 transferred and MGA acquired all rights to the Bratz concept on October 4, 2000,
20 because of the following facts of which MGA was aware in the September to
21 October 2000 time period: (i) Bryant had an idea in August or September of 1998,
22 when he was not employed by Mattel, for a series of characters that he named Bratz
23 that could be used to create, among other things, a line of fashion dolls; (ii) at the
24 same time, Bryant sketched a series of drawings to illustrate his conception; (iii)
25 Bryant was the rightful owner of the concepts reflected in his drawings and other
26 representations of his ideas and of his drawings; (iv) Bryant and his counsel
27 represented and warranted to MGA that he was the exclusive originator and owner of
28 his Bratz ideas and drawing and that no third party had any interest or rights in the

49

EXHIBIT ___23___

PAGE ___498___

1   drawings or the ideas reflected in the drawings; (v) Bryant came recommended by
2   Veronica Marlow, a trusted freelancer who had worked for MGA in the past; (vi)
3   immediately upon entering into a written freelance agreement with Bryant, Isaac
4   Larian, the CEO of MGA, instructed Bryant to immediately resign from Mattel; (vii)
5   MGA employees and freelance artists had made substantial original and creative
6   contributions to the creation of what ultimately was marketed as Bratz dolls; and
7   (viii) assuming some part of the Bratz concept was a feature that could have been
8   protected by a design patent, any such invention was not "reduced to practice" prior
9   to October 20, 2000.

10          The following persons have knowledge of these facts:  Carter Bryant;
11   Bryant's mother, Janet Bryant; Bryant's father, Thomas Bryant; Jeanne Galvano;
12   Richard Irmen; Elise Cloonan; Ramona Prince; Margaret Leahy; Veronica Marlow;
13   Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafelles (Garcia); Steve
14   Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel
15   Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Rachel
16   Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong.

17          The following documents may be relevant to these facts:  MGA's
18   agreement with Carter Bryant; and documents that refer to or evidence the work
19   performed by MGA employees and freelancers toward the reduction to practice of
20   the Bratz line of dolls.  Documents responsive to this interrogatory are protected by
21   the attorney-client privilege and work product doctrine.  MGA previously offered to
22   stipulate to a limited waiver of these privileges and protections to permit inspection
23   of such documents, but Mattel refused.

24   **INTERROGATORY NO. 37:**

25          State all facts that support YOUR contention, if YOU so contend, that
26   BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT
27   purported to TRANSFER rights to BRATZ to MGA, and IDENTIFY all PERSONS
28   with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

EXHIBIT ____23____

PAGE _____499____

1 | such facts.

2 | **RESPONSE TO INTERROGATORY NO. 37:**

3 |       MGA incorporates by reference its General Response and General

4 | Objections above, as though fully set forth herein and specifically incorporates

5 | General Objection No. 7 (regarding Definitions), including but not limited to its

6 | objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ

7 | and REFER OR RELATE TO, and further objects on the ground that the

8 | interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

9 | and specifically with respect to the terms YOUR, YOU, BRYANT, MGA and

10 | TRANSFER.  MGA also objects to this interrogatory to the extent it seeks

11 | information that is not subject to disclosure under any applicable privilege, doctrine

12 | or immunity, including without limitation the attorney-client privilege, the work

13 | product doctrine, the right of privacy, and all other privileges recognized under the

14 | constitutional, statutory or decisional law of the United States of America, the State

15 | of California or any other applicable jurisdiction.  MGA further objects to the

16 | interrogatory to the extent it calls for a legal conclusion.  MGA further objects to the

17 | interrogatory on the ground that Mattel – not MGA – bears the burden of proof to

18 | show that Bryant breached the INVENTIONS AGREEMENT.

19 |       MGA further objects on the ground that this interrogatory is an

20 | overbroad and unduly burdensome contention interrogatory to the extent it asks for

21 | "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

22 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

23 | requests seeking "all facts, documents, and witnesses that support the denial of a

24 | statement or allegation of fact" because the "universe of potentially responsive

25 | information is almost endless").  MGA further objects on the ground that it is an

26 | abuse of the discovery process to effectively ask a Party to prove his, her or its entire

27 | case in response to a single interrogatory.  *See, e.g., Lawrence v. First Kansas Bank*

28 | *& Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No.

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___23___

PAGE ___500___

1 | 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling

2 | that interrogatory that asks defendant to "plead and prove its entire case, and to

3 | marshal all evidence, in response to one interrogatory" is overbroad and "constitutes

4 | an abuse of the discovery process").

5 |      MGA further objects to the extent that this interrogatory seeks

6 | information that is outside MGA's knowledge and is not in MGA's possession,

7 | custody, or control. In particular, MGA objects to this interrogatory to the extent

8 | that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

9 | DOCUMENTS" (emphasis added). In responding to this interrogatory, MGA

10 | undertakes only to make a good faith, reasonable effort to summarize facts currently

11 | known to it, and reserves the right to supplement its response.

12 |      MGA further objects to this interrogatory because Mattel has

13 | propounded more than 50 interrogatories. Under Judge Larson's order of February

14 | 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

15 | 04049-SGL and CV 05-02727]."

16 |      Subject to and without waiving the foregoing objections, MGA

17 | responds as follows: MGA is willing to meet and confer with Mattel regarding this

18 | interrogatory and the obligation of Mattel to supplement its responses to MGA's First

19 | Set of Interrogatories.

20 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 37:**

21 |      MGA incorporates by reference its General Response and General

22 | Objections above, as though fully set forth herein and specifically incorporates

23 | General Objection No. 7 (regarding Definitions), including but not limited to its

24 | objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ

25 | and REFER OR RELATE TO, and further objects on the ground that the

26 | interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

27 | and specifically with respect to the terms YOUR, YOU, BRYANT, MGA and

28 | TRANSFER. MGA also objects to this interrogatory to the extent it seeks

EXHIBIT ___23

PAGE ___50/

1 │ information that is not subject to disclosure under any applicable privilege, doctrine
2 │ or immunity, including without limitation the attorney-client privilege, the work
3 │ product doctrine, the right of privacy, and all other privileges recognized under the
4 │ constitutional, statutory or decisional law of the United States of America, the State
5 │ of California or any other applicable jurisdiction. MGA further objects to the
6 │ interrogatory to the extent it calls for a legal conclusion. MGA further objects to the
7 │ interrogatory on the ground that Mattel – not MGA – bears the burden of proof to
8 │ show that Bryant breached the INVENTIONS AGREEMENT.

9 │       MGA further objects on the ground that this interrogatory is an
10 │ overbroad and unduly burdensome contention interrogatory to the extent it asks for
11 │ "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
12 │ *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
13 │ requests seeking "all facts, documents, and witnesses that support the denial of a
14 │ statement or allegation of fact" because the "universe of potentially responsive
15 │ information is almost endless"). MGA further objects on the ground that it is an
16 │ abuse of the discovery process to effectively ask a Party to prove his, her or its entire
17 │ case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas Bank*
18 │ *& Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No.
19 │ 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling
20 │ that interrogatory that asks defendant to "plead and prove its entire case, and to
21 │ marshal all evidence, in response to one interrogatory" is overbroad and "constitutes
22 │ an abuse of the discovery process").

23 │       MGA further objects to the extent that this interrogatory seeks
24 │ information that is outside MGA's knowledge and is not in MGA's possession,
25 │ custody, or control. In particular, MGA objects to this interrogatory to the extent
26 │ that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all*
27 │ DOCUMENTS" (emphasis added). In responding to this interrogatory, MGA
28 │

1 undertakes only to make a good faith, reasonable effort to summarize facts currently
2 known to it, and reserves the right to supplement its response.

3      Subject to and without waiving the foregoing objections, MGA
4 responds as follows:

5      In August or September of 1998, Carter Bryant, inspired by images he
6 was exposed to, including in the August 1998 issue of *Seventeen Magazine*, the
7 appearance of teenagers as well as other images in the public domain, had an idea for
8 a line of fashion dolls that he named Bratz. At the same time, Bryant sketched a
9 series of drawings to illustrate his conception. To the extent that some aspect of
10 Bryant's idea would have been protectible under patent law, there was neither a
11 conception nor reduction to practice during the period of Bryant's unemployment
12 with Mattel. In addition, Bryant's idea for a unique approach to fashion dolls was
13 not covered by the "INVENTIONS AGREEMENT."

14 **INTERROGATORY NO. 38:**

15      State all facts that support YOUR contention, if YOU so contend, that
16 BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to MATTEL
17 when BRYANT performed work or services with or for MGA while BRYANT was
18 employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts
19 and all DOCUMENTS that REFER OR RELATE TO such facts.

20 **RESPONSE TO INTERROGATORY NO. 38:**

21      MGA incorporates by reference its General Response and General
22 Objections above, as though fully set forth herein and specifically incorporates
23 General Objection No. 7 (regarding Definitions), including but not limited to its
24 objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,
25 and further objects on the ground that the interrogatory is overbroad, unduly
26 burdensome, vague and ambiguous both generally and specifically with respect to
27 the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ. MGA also
28 objects to this interrogatory to the extent it seeks information that is not subject to

EXHIBIT 23

PAGE 504

1  disclosure under any applicable privilege, doctrine or immunity, including without
2  limitation the attorney-client privilege, the work product doctrine, the right of
3  privacy, and all other privileges recognized under the constitutional, statutory or
4  decisional law of the United States of America, the State of California or any other
5  applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls
6  for a legal conclusion. MGA further objects to the interrogatory on the ground that
7  Mattel – not MGA – bears the burden of proof to show that Bryant breached any
8  duties, fiduciary or otherwise, to Mattel.

9          MGA further objects on the ground that this interrogatory is an
10 overbroad and unduly burdensome contention interrogatory to the extent it asks for
11 "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
12 *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
13 requests seeking "all facts, documents, and witnesses that support the denial of a
14 statement or allegation of fact" because the "universe of potentially responsive
15 information is almost endless"). MGA further objects on the ground that it is an
16 abuse of the discovery process to effectively ask a Party to prove his, her or its entire
17 case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas Bank*
18 *& Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No.
19 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling
20 that interrogatory that asks defendant to "plead and prove its entire case, and to
21 marshal all evidence, in response to one interrogatory" is overbroad and "constitutes
22 an abuse of the discovery process").

23         MGA further objects to the extent that this interrogatory seeks
24 information that is outside MGA's knowledge and is not in MGA's possession,
25 custody, or control. In particular, MGA objects to this interrogatory to the extent
26 that it requests that MGA "state all facts … and IDENTIFY all PERSONS…and all
27 DOCUMENTS" (emphasis added). In responding to this interrogatory, MGA
28 undertakes only to make a good faith, reasonable effort to summarize facts currently

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT ____23____

PAGE ____505____

1 known to it, and reserves the right to supplement its response.

2       MGA further objects to this interrogatory because Mattel has

3 propounded more than 50 interrogatories. Under Judge Larson's order of February

4 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

5 04049-SGL and CV 05-02727]."

6       Subject to and without waiving the foregoing objections, MGA

7 responds as follows: MGA is willing to meet and confer with Mattel regarding this

8 interrogatory and the obligation of Mattel to supplement its responses to MGA's First

9 Set of Interrogatories.

10 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 38:**

11       MGA incorporates by reference its General Response and General

12 Objections above, as though fully set forth herein and specifically incorporates

13 General Objection No. 7 (regarding Definitions), including but not limited to its

14 objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

15 and further objects on the ground that the interrogatory is overbroad, unduly

16 burdensome, vague and ambiguous both generally and specifically with respect to

17 the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ. MGA also

18 objects to this interrogatory to the extent it seeks information that is not subject to

19 disclosure under any applicable privilege, doctrine or immunity, including without

20 limitation the attorney-client privilege, the work product doctrine, the right of

21 privacy, and all other privileges recognized under the constitutional, statutory or

22 decisional law of the United States of America, the State of California or any other

23 applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls

24 for a legal conclusion. MGA further objects to the interrogatory on the ground that

25 Mattel – not MGA – bears the burden of proof to show that Bryant breached any

26 duties, fiduciary or otherwise, to Mattel.

27       MGA further objects on the ground that this interrogatory is an

28 overbroad and unduly burdensome contention interrogatory to the extent it asks for

EXHIBIT 23

PAGE 506

1  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

2  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

3  requests seeking "all facts, documents, and witnesses that support the denial of a

4  statement or allegation of fact" because the "universe of potentially responsive

5  information is almost endless"). MGA further objects on the ground that it is an

6  abuse of the discovery process to effectively ask a Party to prove his, her or its entire

7  case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas Bank*

8  *& Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No.

9  03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling

10 that interrogatory that asks defendant to "plead and prove its entire case, and to

11 marshal all evidence, in response to one interrogatory" is overbroad and "constitutes

12 an abuse of the discovery process").

13      MGA further objects to the extent that this interrogatory seeks

14 information that is outside MGA's knowledge and is not in MGA's possession,

15 custody, or control. In particular, MGA objects to this interrogatory to the extent

16 that it requests that MGA "state all facts … and IDENTIFY all PERSONS…and all

17 DOCUMENTS" (emphasis added). In responding to this interrogatory, MGA

18 undertakes only to make a good faith, reasonable effort to summarize facts currently

19 known to it, and reserves the right to supplement its response.

20      Subject to and without waiving the foregoing objections, MGA

21 responds as follows:

22      Bryant was not a fiduciary of Mattel. Bryant was not an officer or

23 director of Mattel. Mattel has not proven any facts that would support its claim that

24 Bryant was a fiduciary of Mattel. MGA responds further that Bryant did not perform

25 any services for MGA prior to signing his agreement with MGA on October 4, 2000.

26 Bryant's activities with respect to the Bratz concept prior to October 4, 2000, were

27 directed to securing a commercially beneficial relationship with MGA, i.e., Bryant

28 "pitched" the concept of Bratz to MGA. In addition, Bryant's employment with

57

EXHIBIT ___23

PAGE ___507

1  Mattel was at will, and Bryant had the right to leave Mattel to join a competitor, or to
2  work for a competitor, at any time.  Any work that Bryant performed relating to his
3  Bratz ideas during the time period that he was still employed by Mattel constituted
4  lawful steps by Bryant to prepare to embark upon a new career.  Isaac Larian
5  instructed Bryant to leave Mattel immediately upon executing his contract with
6  MGA.  During the period from October 4, 2000, through October 20, 2000, Bryant
7  contributed very little to the development of what later became the first generation of
8  Bratz dolls.

9          The following persons have knowledge of the facts and circumstances
10  supporting this contention:  Isaac Larian, Carter Bryant, Victoria O'Connor, Margaret
11  Leahy, Aileen Storer, Veronica Marlow, Paula Garcia, and Anne Wang.

12  **INTERROGATORY NO. 39:**

13          IDENTIFY each and every bank or financial institution account that
14  REFERS OR RELATES TO YOU, including accounts in YOUR name or for YOUR
15  benefit, since January 1, 1999.

16  **RESPONSE TO INTERROGATORY NO. 39:**

17          MGA incorporates by reference its General Response and General
18  Objections above, as though fully set forth herein and specifically incorporates
19  General Objection No. 7 (regarding Definitions), including but not limited to its
20  objections to the definitions of the terms IDENTIFY and REFERS OR RELATES
21  TO, and further objects on the ground that the interrogatory is overbroad, unduly
22  burdensome, vague and ambiguous both generally and specifically with respect to
23  the terms YOU and YOUR.  MGA also objects to this interrogatory to the extent it
24  seeks information that is not subject to disclosure under any applicable privilege,
25  doctrine or immunity, including without limitation the attorney-client privilege, the
26  work product doctrine, the right of privacy, and all other privileges recognized under
27  the constitutional, statutory or decisional law of the United States of America, the
28  State of California or any other applicable jurisdiction.  MGA further objects to this

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 23

PAGE _____ 508

1 | interrogatory as premature asset discovery under Federal Rule of Civil Procedure
2 | 69(a), as there is presently no judgment for the payment of money pending against
3 | MGA. MGA further objects on the grounds that it is overbroad, not relevant to the
4 | claims or defenses of any party to the action and not reasonably calculated to lead to
5 | the discovery of admissible evidence.

6 | **INTERROGATORY NO. 40:**

7 | IDENTIFY each and every STORAGE DEVICE that YOU have used
8 | for any purpose which contains or contained DIGITAL INFORMATION that
9 | REFERS OR RELATES TO BRATZ prior to January 1, 2002.

10 | **RESPONSE TO INTERROGATORY NO. 40:**

11 | MGA incorporates by reference its General Response and General
12 | Objections above, as though fully set forth herein and specifically incorporates
13 | General Objection No. 7 (regarding Definitions), including but not limited to its
14 | objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO
15 | and BRATZ, and further objects to this interrogatory on the grounds that it is
16 | overbroad, unduly burdensome, vague and ambiguous both generally and
17 | specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL
18 | INFORMATION. MGA further objects to this interrogatory as compound because
19 | it contains discrete subparts that require separate, distinct and multiple responses.
20 | Specifically, MGA objects to the terms IDENTIFY and STORAGE DEVICE as
21 | overbroad and unduly burdensome, as Mattel's definition of this term calls for
22 | responses to multiple discrete subparts. For example, Mattel's definition of the term
23 | IDENTIFY in the context of this interrogatory would require MGA to provide
24 | numerous discrete facts for each STORAGE DEVICE, including:

25 | (a) the individual(s) that use or have used the STORAGE DEVICE;

26 | (b) the current location of the STORAGE DEVICE;

27 | (c) the IDENTITY of the PERSON who possesses the STORAGE
28 | DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT 23

PAGE 509

1        (d)    the type of STORAGE DEVICE;

2        (e)    whether the STORAGE DEVICE has ever been copied or imaged

3 (and if so, the current location of each copy or image and the IDENTITY of the

4 PERSONS who possess such copies or image);

5        (f)    the date(s) on which such copies or images were made;

6        (g)    the manufacturer name, brand, model name, model number, and

7 serial number of the STORAGE DEVICE;

8        (h)    the technical specifications and capacities of such STORAGE

9 DEVICE.

10        In addition, Mattel's definition of YOU could be read to require MGA to

11 provide the foregoing information about STORAGE DEVICES belonging to each of

12 the responding parties.

13        MGA also objects to this interrogatory to the extent it seeks information

14 that is not subject to disclosure under any applicable privilege, doctrine or immunity,

15 including without limitation the attorney-client privilege, the work product doctrine,

16 the right of privacy, and all other privileges recognized under the constitutional,

17 statutory or decisional law of the United States of America, the State of California or

18 any other applicable jurisdiction. MGA further objects to the interrogatory on the

19 ground that it is premature because the invention, creation, conception, or reduction

20 to practice of Bratz (and related issues) will be the subject of expert testimony at

21 trial. MGA objects to this interrogatory to the extent it seeks to limit the expert

22 testimony that MGA may seek to introduce at trial. MGA will identify its experts

23 and make related disclosures in accordance with the Court's orders and applicable

24 rules. MGA further objects to the extent that this interrogatory seeks information

25 that is outside of MGA's knowledge and is not in MGA's possession, custody or

26 control.

27        MGA further objects to this interrogatory because Mattel has

28 propounded more than 50 interrogatories. Under Judge Larson's order of February

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 23

PAGE _____ 510

1 | 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
2 | 04049-SGL and CV 05-02727]."

3 |       Subject to and without waiving the foregoing objections, MGA
4 | responds as follows: MGA is willing to meet and confer with Mattel regarding this
5 | interrogatory and the obligation of Mattel to supplement its responses to MGA's First
6 | Set of Interrogatories.

7 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 40:**

8 |       MGA incorporates by reference its General Response and General
9 | Objections above, as though fully set forth herein and specifically incorporates
10 | General Objection No. 7 (regarding Definitions), including but not limited to its
11 | objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO
12 | and BRATZ, and further objects to this interrogatory on the grounds that it is
13 | overbroad, unduly burdensome, vague and ambiguous both generally and
14 | specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL
15 | INFORMATION. MGA further objects to this interrogatory as compound because
16 | it contains discrete subparts that require separate, distinct and multiple responses.
17 | Specifically, MGA objects to the terms IDENTIFY and STORAGE DEVICE as
18 | overbroad and unduly burdensome, as Mattel's definition of this term calls for
19 | responses to multiple discrete subparts. For example, Mattel's definition of the term
20 | IDENTIFY in the context of this interrogatory would require MGA to provide
21 | numerous discrete facts for each STORAGE DEVICE, including:

22 |       (a)    the individual(s) that use or have used the STORAGE DEVICE;
23 |       (b)    the current location of the STORAGE DEVICE;
24 |       (c)    the IDENTITY of the PERSON who possesses the STORAGE
25 | DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;
26 |       (d)    the type of STORAGE DEVICE;
27 |       (e)    whether the STORAGE DEVICE has ever been copied or imaged
28 | (and if so, the current location of each copy or image and the IDENTITY of the

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 23

PAGE _____ 511

1 PERSONS who possess such copies or image);

2       (f)    the date(s) on which such copies or images were made;

3       (g)   the manufacturer name, brand, model name, model number, and

4 serial number of the STORAGE DEVICE;

5       (h)   the technical specifications and capacities of such STORAGE

6 DEVICE.

7      In addition, Mattel's definition of YOU could be read to require MGA to

8 provide the foregoing information about STORAGE DEVICES belonging to each of

9 the responding parties.

10      MGA also objects to this interrogatory to the extent it seeks information

11 that is not subject to disclosure under any applicable privilege, doctrine or immunity,

12 including without limitation the attorney-client privilege, the work product doctrine,

13 the right of privacy, and all other privileges recognized under the constitutional,

14 statutory or decisional law of the United States of America, the State of California or

15 any other applicable jurisdiction. MGA further objects to the interrogatory on the

16 ground that it is premature because the invention, creation, conception, or reduction

17 to practice of Bratz (and related issues) will be the subject of expert testimony at

18 trial. MGA objects to this interrogatory to the extent it seeks to limit the expert

19 testimony that MGA may seek to introduce at trial. MGA will identify its experts

20 and make related disclosures in accordance with the Court's orders and applicable

21 rules. MGA further objects to the extent that this interrogatory seeks information

22 that is outside of MGA's knowledge and is not in MGA's possession, custody or

23 control.

24      Subject to and without waiving the foregoing objections, MGA

25 responds as follows:

26      With respect to North America prior to January 1, 2002, MGA

27 maintained several Snap servers in Los Angeles containing mostly graphic art files.

28 The servers are no longer in service but are currently archived at MGA's Southern

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___ 23

PAGE ___ 513

1  California facility.  MGA Art Department personnel also used Macintosh desktops

2  and laptops that linked to the snap servers which may have contained files referring

3  to Bratz.  Files created with accounting and other back office software applications

4  were saved on sequel servers located in Los Angeles via an application called "Great

5  Plains."  MGA personnel's emails were located on an exchange server, also housed

6  in Los Angeles.  MGA employees save all company related work files on a file

7  server called the "U Drive," which is also used by MGA Entertainment (HK) Ltd.

8  ("MGA Hong Kong") employees.  This Drive is still in production and has been

9  upgraded to a Netapp Storage System.

10      With respect to MGA's offices in Hong Kong prior to January 1, 2002,

11  MGA Hong Kong Art Department personnel utilized Macintosh desktops that linked

12  to a few file servers housed in Hong Kong to store graphic files.  MGA Hong Kong

13  personnel connected to the "Great Plains" sequel server located in Southern

14  California.  MGA Hong Kong maintained its own exchange server in Hong Kong for

15  emails to and from MGA Hong Kong employees.

16  **INTERROGATORY NO. 41:**

17      IDENTIFY all PERSONS who at any time have been employed by or

18  under contract with MATTEL who are now or have been employed by or under

19  contract with YOU since January 1, 1999, and, for each such PERSON, state his or

20  her name, date of hire or effective date of contract, the date on which YOU first had

21  contact with such PERSON regarding potential employment or contracting, the

22  date(s) on which such PERSON was interviewed for possible employment or

23  contracting, each title (if any) such PERSON has held while employed by or under

24  contract with YOU, and the date of termination (if applicable).

25  **RESPONSE TO INTERROGATORY NO. 41:**

26      MGA incorporates by reference its General Response and General

27  Objections above, as though fully set forth herein and specifically incorporates

28  General Objection No. 7 (regarding Definitions), including but not limited to its

EXHIBIT    23

PAGE    513

1  objections to the definitions of the term IDENTIFY and further objects to this
2  interrogatory on the grounds that it is overbroad, unduly burdensome, vague and
3  ambiguous both generally and specifically with respect to the terms YOU. MGA
4  also objects to this interrogatory to the extent it seeks information that is not subject
5  to disclosure under any applicable privilege, doctrine or immunity, including without
6  limitation the attorney-client privilege, the work product doctrine, the right of
7  privacy, and all other privileges recognized under the constitutional, statutory or
8  decisional law of the United States of America, the State of California or any other
9  applicable jurisdiction.

10 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 41:**

11        MGA incorporates by reference its General Response and General
12 Objections above, as though fully set forth herein and specifically incorporates
13 General Objection No. 7 (regarding Definitions), including but not limited to its
14 objections to the definitions of the term IDENTIFY and further objects to this
15 interrogatory on the grounds that it is overbroad, unduly burdensome, vague and
16 ambiguous both generally and specifically with respect to the terms YOU. MGA
17 also objects to this interrogatory to the extent it seeks information that is not subject
18 to disclosure under any applicable privilege, doctrine or immunity, including without
19 limitation the attorney-client privilege, the work product doctrine, the right of
20 privacy, and all other privileges recognized under the constitutional, statutory or
21 decisional law of the United States of America, the State of California or any other
22 applicable jurisdiction.

23        Subject to and without waiving the foregoing objections, MGA
24 responds as follows:  the following is a list of all former Mattel employees who have
25 been employed by MGA, MGA Hong Kong or MGAE de MEXICO S.R.L. de C.V.
26 since January 1, 1999:

27

28

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___23

PAGE ___514

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Abundis, Ricardo | Dir. of Inventory/Customer Finance | 12/01/04- Present |
| Bate, Ian | Quality Assurance Mgr. | 7/31/06- Present |
| Black, Nanette | SVP, HR | 2/12/07 - Present |
| Bloodworth III, John E. | Prod. Mgr., Games | 08/21/06- Present |
| Bloomfield, Kevin | Sr. Designer | 11/25/02- Present |
| Brawer, Ron | President, Sales, Marketing & Strategic Planning | 10/05/04- Present |
| Brisbois, Janine (CANADA) | VP Nat'l Accts. | 10/04/05- Present |
| Castilla, Jorge | Mgr. Sales Planning | 04/03/06- Present |
| Chang, Suzy | Sr. Development Designer | 08/28/06- Present |
| Cheng, Steve | Sr. Designer | 04/08/02- Present |
| Cody Jr, Gerry | Sr. Designer - Boys Toys | 11/20/06- Present |
| Contreras, Nick | VP Customer Marketing | 11/29/04- Present |
| Cooney Jr., Daniel | VP National Account Mgr. | 05/15/06- Present |
| De La Cruz, Maria | Fashion Design Mgr., Style Guides | 2/12/07 - Present |
| Dixon, Karen | Sr. Producer | 2/19/07 - Present |
| Domingo, Luisito H | Sr. Prelim Dolls Designer | 07/07/03- Present |
| Dominguez, Greg Paul | Prod. Designer | 04/01/02- Present |
| Feldman, Joe | Design Engineer | 12/08/04- Present |
| Forrest, Craig | Prod. Mgr., Games | 5/15/06- Present |
| Garcia, Mia | Dev. Designer | 2/23/05- Present |
| Garcia, Paula | VP Girls Toy Prod. Dev. | 04/17/00- Present |

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT    23

PAGE       515

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Gonzalez, Eduardo | Sr. Dir. of Quality Assurance;<br><br>Quality Assurance Mgr. | 10/16/06-Present;<br><br>1/3/05-8/18/05 |
| Hall, Tracy | Sr. Dir. of Prod. Dev., CE/YE | 08/07/06 - Present |
| Hansen, Melody | Face Painter | 03/13/06-Present |
| Hansen, Todd | Packaging Engineer | 5/2/05-Present |
| Hatch, Jill | Sr. Dir., National Sales | 09/18/06 - Present |
| Hinh, Michael | Mgr. Category Adv. | 6/28/05-Present |
| Hsu, Janet | SVP Non Toys Prod. Dev. & Licensing | 3/9/05-Present |
| Kao, Alice | Cust. Marketing Mgr. - Hong Kong Office | 2/21/05-Present |
| Kaufman, Ken | Advertising Exec. | 01/03/05-Present |
| Keller, Pamela E | VP Supply Chain & Operations | 09/25/06 - Present |
| Keossian, Alejandro Gabriel | Gr. Designer | 08/11/03-Present |
| Kim (Lee), Joyce | Sr. Playset Designer | 2/23/05-Present |
| Kim, Young Ran | Sample Maker Specialist | 01/15/04-Present |
| Kirst, Kristen | Hair Designer | 03/31/03-Present |
| Komatsu, Ellen | Sr. Prelim Dolls Designer | 08/25/03-Present |
| Larson, Jill | Sales Associate | 12/20/06-Present |
| Law, Adrian (Chi Shing) | Dev. Design Mgr. | 05/01/06-Present |
| Lumabao, Bo | Prod. Mgr. | 2/14/05-Present |
| Marks, Dorothy | Sample Maker Specialist | 07/26/05-Present |
| Martin, Raymond John | Prod. Mgr. of Consumer Electronics | 02/23/04-Present |
| Min, Aye Aye | Hair Designer | 04/17/06-Present |

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT   23

PAGE   5/6

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Nakamura, Yumi | Mgr. of Style Guides | 1/22/07- Present |
| Natareno, Marvin | Jr. Project Analyst | 01/03/07- Present |
| Nigoghossian, Christine | Sr. Doll Designer | 04/25/05- Present |
| Ochoa, Laura | Trade Marketing Mgr. | 09/01/04- Present |
| Palijo, Amelia Ivy Arafiles | Sr. Sculptress | 02/23/04- Present |
| Pestonji, Danny | Dir. Prod. Dev. Preschool | 06/01/04- Present |
| Phelan, Denise | Sample Maker Specialist | 01/18/05- Present |
| Phoosopha, Poottipong | Face Painter | 12/08/03- Present |
| Pickard, Michael | Sr. Project Packaging Engineer | 03/22/04- Present |
| Rae, Ronald | SVP, National Account Sales | 03/12/07- Present |
| Ratleff, Leland | Sr. HR Dir. | 12/04/06- Present |
| Ronquillo, Desiree Elisabeth | Sr. Dev. Designer | 05/03/04- Present |
| Ruiz, Micaela | Sample Maker Specialist | 2/13/06- Present |
| Sasic-Koetsier, Natasha | Illustrator | 06/01/04- Present |
| Salazar, Maria Elena | Sample Maker Supervisor | 03/31/03- Present |
| Salemnia, Shirin | Research Mgr. | 02/17/03- Present |
| Scott, Harvey | Sample Maker Specialist | 08/01/05- Present |
| Smith, Steffen J. | Dir. of Package Dev. | 10/13/03- Present |
| Su, Jier | Dir. of Prod. Planning | 8/16/05- Present |
| Soai, Dennis | Dolls Dev. Design Mgr. | 03/04/02- Present |
| Thompson, Marla | Sample Sourcing & Procurement Mgr. | 04/04/05- Present |
| Tran, Chau Ngoc | Sample Maker Specialist | 05/10/04- Present |
| Trueba, Mariana | Marketing Mgr. | 04/26/04- Present |

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT   23

PAGE   517

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Umana, Esteban | Quality Engineer | 03/19/07-Present |
| Upshaw, Gail | Sample Maker Specialist | 5/23/05-Present |
| Vargas, Pablo | Dir. Sales | 04/26/04-Present |
| Wang, Chang-Chin | Assoc. Face Designer | 05/03/04-Present |
| Ward, Lance | Structural Engineer | 08/02/04-Present |
| Whittaker, Dawn | Sr. Prod. Designer | 12/06/04-Present |
| Wong, Jenny | Sr. Gr. Designer | 09/09/02-Present |

| CURRENT MGA INDEPENDENT CONTRACTORS/FREELANCERS/TEMPS | MGA POSITION | DATES |
|---|---|---|
| Augborne, Troy | Structural Engineer (Temp) | 2/26/07 – 3/2/07, 4/16/07 – Present |
| Bryant, Carter | Prod. Designer/Independent Contractor | |
| Zetino, Reyna | Samplemaker, Temp Assignment | 04/13/07 – Present |

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Aryapour, Daryoush | Creative Ser. Dir. | 10/25/99-04/14/00 |
| Aguilar, Lourdes | Brand Mgr. | 9/01/04-6/11/06 |
| Blaser, Janet | Dev. Designer | 06/14/04-09/10/04 |
| Bower Violette, Mari Joanne | Prod. Mgr. | 10/13/03-03/10/06 |
| Brown, Lilia | Gr. Designer | 03/31/03-05/05/05 |
| Burlando, Gabriella | Prod. Mgr. | 03/5/02-06/27/06 |
| Chonavel, Fabienne | Marketing Mgr. | 04/10/02-08/23/02 |
| Dailey, Christine | VP Prod. Dev. | 05/07/01-11/22/02 |
| Feicht, Steve | Artist/Jr. Designer Freelancer | 07/18/02-Unknown |

68

EXHIBIT ___23___

PAGE ___5/8___

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Gillmour, Kami | VP Marketing | 05/24/99–07/14/00 |
| Hardouin, Christopher | Project Mgr. | 06/04/01–07/23/04 |
| Hitch, Martin | VP Int'l Sales | 01/04/01–06/04/02 |
| Ho, Jeff | Sr. Prod. Artist Freelancer | Unknown–10/04 |
| Huntley, James | Independent Contractor – Miuchiz;<br><br>VP Marketing | 08/17/06 – Unknown;<br><br>5/23/05–08/16/06 |
| Kagan, Randi | Marketing Dir. | 09/23/02–07/22/03 |
| Koch, Andreas | Prod. Mgr. | 10/18/99–01/11/01 |
| Leahy, Margaret | Sr. Sculptor | Temp To Perm. Eff. 4/4/05 – 03/06/07 |
| Mayer, Lyn Carol | Fabric Artist | 07/21/03–05/05/05 |
| McBride, Susan | Prod. Dir., Games | 06/03/02–01/25/07 |
| Mils, Frank | Mgr. of Quality Assurance | 03/20/06–07/07/06 |
| Nguyen, Xuanlan T | Pattern Maker | 05/19/03–01/03/05 |
| O'Brien, Gary Thomas | Field Sales Dir. | 05/10/04–07/22/04 |
| Otero, Jose | Web Designer | 08/11/03–2/1/06 |
| Owen, Dan | Sr. Playset Mgr. | 08/23/04–12/13/05 |
| Parasole, Nicolletta | Gr. Designer | 01/05/04–6/27/05 |
| Parkinson, Ana Mancia | Dev. Designer | 05/10/04–01/03/07 |
| Rambeau, Roger | VP Operations | 05/13/96–04/03/98 |
| Ramirez, Andrea | Key Account Mgr. | 04/05/05–12/12/06 |
| Reed, Wendy | Soft Goods Spec. | 11/06/00–01/12/01 |

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT   23

PAGE   519

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Reyes, Scot Anthony | Sm. Doll Designer | 05/23/04-3/11/05 |
| Rhee, Anna | Doll Face Design Freelancer | 1/4/07 - 2/13/07 |
| Ross, Lon | Marketing Dir. | 11/13/00-08/03/01 |
| Schwartz, Dena | Sr. Prod. Mgr. | 05/21/01-04/08/02 |
| Shaver, Brandi | Gr. Designer | 05/03/04-06/30/06 |
| Stinnett, Holly | Sr. Brand Mgr. | 07/21/03-1/12/05 |
| Tawil, Lisa | Licensing Coord. | 04/08/02-07/18/03 |
| Terry, Gord | Dir. of Sales | 10/01/01-06/06/02 |
| Ward, Mercedeh | Sr. Prod. Designer | 10/00-1/01; 3/7/05-8/5/05 |
| Whitaker, Joseph | Consultant | 11/05/96-03/97 |
| Williams, Patrick | SVP Sales | 01/07/01-05/29/01 |
| Wong, Tong | Dev. Designer | 03/10/03-05/16/03 |
| Wright, Cherrise | Soft Goods Mgr. | 05/03/04-8/24/05 |
| Zbojniewicz, Dave | Dir. Bus. Planning/Independent Contractor | 04/04-09/04 |

DATED: November 30, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____

Thomas J. Nolan

Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT __23__

PAGE __520__

**EXHIBIT   24**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   25**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   26**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   27**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   28**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  29**



1    KEKER & VAN NEST, LLP
     JOHN W. KEKER - #49092
2    jkeker@kvn.com
     MICHAEL H. PAGE - #154913
3    mpage@kvn.com
     CHRISTA M. ANDERSON - #184325
4    canderson@kvn.com
     MATTHEW M. WERDEGAR - #200470
5    mwerdegar@kvn.com
     JOHN E. TRINIDAD - #250468
6    jtrinidad@kvn.com
     AUDREY WALTON-HADLOCK- #250574
7    awaltonhadlock@kvn.com
     710 Sansome Street
8    San Francisco, CA  94111-1704
     Telephone: (415) 391-5400
9    Facsimile: (415) 397-7188

10   Attorneys for Plaintiff
     CARTER BRYANT

11

12

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15                     EASTERN DIVISION

16

17   CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)
                        (consolidated with CV 04-9059 & 05-2727

18                Plaintiff,

19     v.                           **CARTER BRYANT'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL, INC'S REVISED FOURTH SET OF INTERROGATORIES**

20   MATTEL, INC. a Delaware Corporation,

21                Defendant.     Judge:    Hon. Stephen G. Larson

22   CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA    **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
23   ENTERTAINMENT, INC. v. MATTEL, INC.

24

25

26      **PROPOUNDING PARTY:**    **MATTEL, INC.**

27      **RESPONDING PARTY:**    **CARTER BRYANT**

28      **SET NO.:**               **FOUR (REVISED)**

EXHIBIT _____ 2 9

PAGE _____ 5 2 6

1-28

1  performed by Bryant while he was working for Mattel or that Bryant adopts or

2  agrees with any fact or legal conclusion assumed, presumed or contained in any of

3  Mattel's interrogatories.

4     21.   Bryant objects to each of Mattel's interrogatories because Mattel has

5  propounded more than 50 interrogatories, including discrete subparts. Under

6  Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for

7  each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

8     **22.**  The above stated objections are incorporated by reference as though

9  fully set forth in each response below. Subject to the existing Protective Order and

10 without waiving any of the foregoing objections, Bryant responds as follows:

11

12          **SPECIFIC RESPONSES AND OBJECTIONS**

13 **INTERROGATORY NO. 42:**

14    State all facts that support YOUR contention, if YOU so contend, that any

15 BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT on

16 or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of such

17 facts and all DOCUMENTS that REFER OR RELATE TO such facts.

18 **RESPONSE TO INTERROGATORY NO. 42:**

19    Bryant incorporates by reference his general objections. Bryant objects that

20 this interrogatory is an overbroad and unduly burdensome contention interrogatory

21 to the extent it asks for "every fact" which supports the denial of a statement or

22 allegation. *See, e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D.

23 Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and

24 witnesses that support the denial of a statement or allegation of fact" because the

25 "universe of potentially responsive information is almost endless.").

26    Bryant also objects to this interrogatory on the ground that it is overbroad,

27 unduly burdensome, vague and ambiguous both generally and specifically with

28 respect to the terms IDENTIFY and REFER OR RELATE TO. Bryant also

6

CARTER BRYANT'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL, INC'S REVISED FOURTH SET OF INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

409873.01

EXHIBIT ____29____

PAGE_____527_____

1   objects to this interrogatory as overbroad, unduly burdensome, vague and

2   ambiguous generally and specifically with respects to the terms BASED ON,

3   BRATZ DOLLS, and BRATZ DESIGNS.  In addition, Bryant objects to this

4   interrogatory to the extent it calls for the disclosure of attorney-client privileged

5   information, information protected from disclosure by the work-product doctrine,

6   the joint defense privilege or the common interest privilege.  Bryant also objects to

7   this interrogatory generally and specifically with respect to the term BASED ON to

8   the extent it calls for a legal conclusion.  Bryant also objects to this interrogatory to

9   the extent it calls for the premature disclosure of expert opinions or analysis.

10  Bryant further objects to the extent that this interrogatory seeks information that is

11  outside Bryant's personal knowledge and is not in Bryant's possession, custody, or

12  control.  In particular, Bryant objects to this interrogatory to the extent that it

13  requests that Bryant "[s]tate *all* facts ... and IDENTIFY *all* PERSONS...and *all*

14  DOCUMENTS."  (emphasis added).

15      Bryant objects to this interrogatory because Mattel has propounded more

16  than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,

17  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049

18  SGL and CV 05-02727]."

19  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

20      Bryant incorporates by reference his general objections.  Bryant objects that

21  this interrogatory is an overbroad and unduly burdensome contention interrogatory

22  to the extent it asks for "every fact" which supports the denial of a statement or

23  allegation.  *See, e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D.

24  Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and

25  witnesses that support the denial of a statement or allegation of fact" because the

26  "universe of potentially responsive information is almost endless.").

27      Bryant also objects to this interrogatory on the ground that it is overbroad,

28  unduly burdensome, vague and ambiguous both generally and specifically with

7

CARTER BRYANT'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL, INC'S REVISED FOURTH SET OF INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

409873.01

EXHIBIT 29

PAGE 528

1   respect to the terms IDENTIFY and REFER OR RELATE TO.  Bryant also

2   objects to this interrogatory as overbroad, unduly burdensome, vague and

3   ambiguous generally and specifically with respects to the terms BASED ON,

4   BRATZ DOLLS, and BRATZ DESIGNS.  In addition, Bryant objects to this

5   interrogatory to the extent it calls for the disclosure of attorney-client privileged

6   information, information protected from disclosure by the work-product doctrine,

7   the joint defense privilege or the common interest privilege.  Bryant also objects to

8   this interrogatory generally and specifically with respect to the term BASED ON to

9   the extent it calls for a legal conclusion.  Bryant also objects to this interrogatory to

10   the extent it calls for the premature disclosure of expert opinions or analysis.

11   Bryant further objects to the extent that this interrogatory seeks information that is

12   outside Bryant's personal knowledge and is not in Bryant's possession, custody, or

13   control.  In particular, Bryant objects to this interrogatory to the extent that it

14   requests that Bryant "[s]tate *all* facts ... and IDENTIFY *all* PERSONS...and *all*

15   DOCUMENTS."  (emphasis added).

16       Bryant objects to this interrogatory because Mattel has propounded more

17   than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,

18   "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049

19   SGL and CV 05-02727]."

20       Subject to, and without waiver of, the foregoing objections, Bryant responds

21   as follows:

22       The first generation of Bratz dolls, first "reduced to practice" and first

23   expressed in a tangible medium after October 20, 2000, and all subsequent Bratz

24   dolls, differ markedly and significantly from the drawings or designs completed by

25   Bryant prior to October 20, 2000.  First, with respect to the three-dimensional

26   "dummy" to which Bryant referred at his deposition, it had no material

27   resemblance to the first generation of Bratz dolls.  Second, with respect to Bryant's

28   drawings, Bryant notes that two-dimensional drawings do not translate into three-

---

8

CARTER BRYANT'S SECOND SUPPLEMENTAL RESPONSE TO
MATTEL, INC'S REVISED FOURTH SET OF INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

409873.01

PAGE _____ 530

1  dimensional dolls without original, creative effort.  Third, there are recognizable

2  and material differences in the total overall look and feel of the first generation of

3  Bratz dolls compared to Bryant's drawings completed prior to October 20, 2000.

4  Fourth there are recognizable and material differences in the individual elements of

5  the first generation of Bratz dolls compared to Bryant's drawings completed prior

6  to October 20, 2000, including, but not limited to, with respect to the following:

7  hair styles; hair colors; facial expressions; depiction of noses; eye art; extent of

8  detail of eye art; lip art; eyebrow art; proportions of the bodies; posture; spatial

9  arrangement of hands, wrists and arms; and proportions and spatial arrangements

10  of the eyes, noses, and mouths.  Additional details regarding such differences will

11  be the subject of expert disclosures and will be provided at a later time consistent

12  with the Court's orders regarding the disclosure of expert opinions.

13       The following persons have knowledge of the facts and circumstances

14  regarding the foregoing:  Isaac Larian, Carter Bryant; Margaret Leahy; Veronica

15  Marlow; Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafellas

16  (Garcia); Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse

17  Ramirez; Sam Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon

18  Djiguerian; Rachel Harris; Maggie Siu; Ben Ton; Samuel Wong; Ray Wong;

19  Steffan Smith; and Samir Khare.

20       The following documents may be relevant to these facts:  all

21  "DOCUMENTS" that refer to or evidence the work performed by MGA

22  employees, contractors, and freelancers, including Bryant, toward the reduction to

23  practice of the first generation of Bratz dolls during the period after October 19,

24  2000 through June 1, 2001, including but not limited to:  (i) documents showing

25  the development of the first generation of Bratz dolls; (ii) documents showing

26  exchanges with the Hong Kong factory regarding the development of the first

27  generation of Bratz dolls; (iii) documents showing the timing of the development

28  of packaging, fashion, and accessories for the first generation of Bratz dolls; (iv)

9

CARTER BRYANT'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL, INC'S REVISED FOURTH SET OF INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

409873.01

PAGE

1 documents related to the January 2001 Hong Kong toy fair; (v) documents related

2 to the February 2001 New York toy fair; (vi) polyurethane samples of prototypes;

3 (vii) rotocasts and sculpts in Hong Kong; and (viii) invoices submitted from Carter

4 Bryant, Veronica Marlow, Anna Rhee, and Victoria O'Connor, and other invoices

5 submitted for freelance work performed on the Bratz project. The documents

6 evidencing this work, including the categories of documents (i) – (viii)

7 summarized above, number in the tens of thousands and are too numerous to

8 identify individually.

9 As stated above, this interrogatory calls for the disclosure of expert opinions

10 and analysis, although expert discovery has not yet been completed and disclosure

11 of expert opinions and analysis would be premature. Accordingly, Bryant reserves

12 the right to supplement his response to this interrogatory at a later time consistent

13 with the Court's orders regarding the disclosure of expert opinions.

14 **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

15 Bryant incorporates by reference his general objections. Bryant objects that

16 this interrogatory is an overbroad and unduly burdensome contention interrogatory

17 to the extent it asks for "every fact" which supports the denial of a statement or

18 allegation. *See, e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D.

19 Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and

20 witnesses that support the denial of a statement or allegation of fact" because the

21 "universe of potentially responsive information is almost endless.").

22 Bryant also objects to this interrogatory on the ground that it is overbroad,

23 unduly burdensome, vague and ambiguous both generally and specifically with

24 respect to the terms IDENTIFY and REFER OR RELATE TO. Bryant also

25 objects to this interrogatory as overbroad, unduly burdensome, vague and

26 ambiguous generally and specifically with respects to the terms BASED ON,

27 BRATZ DOLLS, and BRATZ DESIGNS. In addition, Bryant objects to this

28 interrogatory to the extent it calls for the disclosure of attorney-client privileged

10

CARTER BRYANT'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL, INC'S REVISED FOURTH SET OF INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

409873.01

EXHIBIT 29

PAGE 532

1   information, information protected from disclosure by the work-product doctrine,

2   the joint defense privilege or the common interest privilege. Bryant also objects to

3   this interrogatory generally and specifically with respect to the term BASED ON to

4   the extent it calls for a legal conclusion. Bryant also objects to this interrogatory to

5   the extent it calls for the premature disclosure of expert opinions or analysis.

6   Bryant further objects to the extent that this interrogatory seeks information that is

7   outside Bryant's personal knowledge and is not in Bryant's possession, custody, or

8   control. In particular, Bryant objects to this interrogatory to the extent that it

9   requests that Bryant "[s]tate *all* facts ... and IDENTIFY *all* PERSONS...and *all*

10  DOCUMENTS." (emphasis added).

11      Bryant objects to this interrogatory because Mattel has propounded more

12  than 50 interrogatories. Under Judge Larson's order of February 22, 2007,

13  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049

14  SGL and CV 05-02727]."

15      Subject to and without waiving the foregoing objections, Bryant provides his

16  Second Supplemental Response as follows:

17      The first generation of Bratz dolls, first "reduced to practice" and first

18  expressed in a tangible medium after October 20, 2000, and all subsequent Bratz

19  dolls, differ markedly and significantly from the drawings or designs completed by

20  Bryant prior to October 20, 2000. First, with respect to the three-dimensional

21  "dummy" to which Bryant referred at his deposition, it had no material

22  resemblance to the first generation of Bratz dolls. Second, with respect to Bryant's

23  drawings, Bryant notes that two-dimensional drawings do not translate into three-

24  dimensional dolls without original, creative effort. Third, there are recognizable

25  and material differences in the total overall look and feel of the first generation of

26  Bratz dolls compared to Bryant's drawings completed prior to October 20, 2000.

27  Fourth there are recognizable and material differences in the individual elements of

28  the first generation of Bratz dolls compared to Bryant's drawings completed prior

11

CARTER BRYANT'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL, INC'S REVISED FOURTH SET OF INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

409873.01                                           29

PAGE _____ 533

1  to October 20, 2000, including, but not limited to, with respect to the following:

2  hair styles; hair colors; facial expressions; depiction of noses; eye art; extent of

3  detail of eye art; lip art; eyebrow art; proportions of the bodies; posture; spatial

4  arrangement of hands, wrists and arms; and proportions and spatial arrangements

5  of the eyes, noses, and mouths.  Additional details regarding such differences will

6  be the subject of expert disclosures and will be provided at a later time consistent

7  with the Court's orders regarding the disclosure of expert opinions.

8        The following persons have knowledge of the facts and circumstances

9  regarding the foregoing:  Isaac Larian, Carter Bryant; Margaret Leahy; Veronica

10  Marlow; Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafellas

11  (Garcia); Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse

12  Ramirez; Sam Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon

13  Djiguerian; Rachel Harris; Maggie Siu; Ben Ton; Samuel Wong; Ray Wong;

14  Steffan Smith; and Samir Khare.

15        The following documents may be relevant to these facts:  all

16  "DOCUMENTS" that refer to or evidence the work performed by MGA

17  employees, contractors, and freelancers, including Bryant, toward the reduction to

18  practice of the first generation of Bratz dolls during the period after October 19,

19  2000 through June 1, 2001, including but not limited to:  (i) documents showing

20  the development of the first generation of Bratz dolls; (ii) documents showing

21  exchanges with the Hong Kong factory regarding the development of the first

22  generation of Bratz dolls; (iii) documents showing the timing of the development

23  of packaging, fashion, and accessories for the first generation of Bratz dolls; (iv)

24  documents related to the January 2001 Hong Kong toy fair; (v) documents related

25  to the February 2001 New York toy fair; (vi) polyurethane samples of prototypes;

26  (vii) rotocasts and sculpts in Hong Kong; and (viii) invoices submitted from Carter

27  Bryant, Veronica Marlow, Anna Rhee, and Victoria O'Connor, and other invoices

28  submitted for freelance work performed on the Bratz project.

12

409873.01

CARTER BRYANT'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL, INC'S REVISED FOURTH SET OF INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

29

PAGE _____ 534

1    Bryant also further identifies all persons and documents identified by MGA

2 in its responses to this interrogatory and interrogatories on related subject matter,

3 including any future supplemental responses. Although Bryant lacks personal

4 knowledge of many factual statements in MGA's interrogatory responses, and is

5 still completing his analysis of the matters stated in MGA's responses (particularly

6 in light of Mattel's production of roughly half a million documents at the end of

7 the discovery period), Bryant also reserves the right to rely on all factual

8 statements in MGA's responses to this interrogatory and interrogatories on related

9 subject matter, including any future supplemental responses by MGA.

10    As stated above, this interrogatory calls for the disclosure of expert opinions

11 and analysis, although expert discovery has not yet been completed and disclosure

12 of expert opinions and analysis would be premature. Accordingly, Bryant reserves

13 the right to supplement his response to this interrogatory at a later time consistent

14 with the Court's orders regarding the disclosure of expert opinions.

15 **INTERROGATORY NO. 43:**

16    For each concept, design, product, product packaging or other matter that

17 YOU contend MATTEL copied or infringed, including but not limited to those

18 identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re

19 Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any

20 Supplemental Responses to such Interrogatory), state the date that each such

21 concept, design, product, product packaging or other matter was conceived, and

22 IDENTIFY all PERSONS with knowledge of, and all DOCUMENTS that REFER

23 OR RELATE TO, the foregoing.

24 **RESPONSE TO INTERROGATORY NO. 43:**

25    Bryant incorporates by reference his general objections. Bryant objects to

26 this interrogatory on the grounds that it is overbroad, unduly burdensome, vague

27 and ambiguous, and compound both generally and specifically with respect to the

28 terms YOU, IDENTIFY, MATTEL, and REFER OR RELATE TO. In addition,

13

409873.01

EXHIBIT 29

PAGE 535

1  possession, custody, or control.  In particular, Bryant objects to this interrogatory

2  to the extent that it that it requests that Bryant "IDENTIFY *all* PERSONS…and *all*

3  DOCUMENTS" (emphasis added).

4  　　　Bryant objects to this interrogatory because Mattel has propounded more

5  than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,

6  "Interrogatories are limited to 0 for each side for both [Case Nos. CV 04-04049-

7  SGL and CV 05-02727]."

8  　　　Subject to, and without waiver of, the foregoing objections, Bryant responds

9  as follows.  Bryant incorporates by reference MGA Entertainment, Inc's Response

10  to Interrogatory No. 44, and any and all supplemental responses thereto.  Although

11  Bryant lacks personal knowledge of many factual statements in MGA's

12  interrogatory responses, and is still completing his analysis of the matters stated in

13  MGA's responses (particularly in light of Mattel's production of roughly half a

14  million documents at the end of the discovery period), Bryant reserves the right to

15  rely on all factual statements in MGA's responses to this interrogatory and

16  interrogatories on related subject matter, including any future supplemental

17  responses by MGA.  Bryant also identifies all persons and documents identified by

18  MGA in its responses to this interrogatory and interrogatories on related subject

19  matter, including any future supplemental responses.

20  Dated:  January 28, 2008　　　　　　　KEKER & VAN NEST, LLP

21

22

23  By: _____
　　　　CHRISTA M. ANDERSON
24  　　　Attorneys for Plaintiff
　　　　CARTER BRYANT
25

26

27

28

_____
19

409873.01

EXHIBIT ___29___

PAGE ___536___

# PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On January 28, 2008, I served the following document(s):

**CARTER BRYANT'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL, INC'S REVISED FOURTH SET OF INTERROGATORIES**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery.

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:  213/443-3000
Fax:  213/443-3100
Email: johnquinn@quinnemanuel.com
Email: michaelzeller@quinnemanuel.com

Thomas J. Nolan
Skadden Arps Slate Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel:  213/687-5000
Fax:  213/687-5600
Email: tnolan@skadden.com

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
Tel:  213/613-4660
Fax:  213/613-4656
Email :    acote@obsklaw.com

1    Executed on January 28, 2008, at San Francisco, California.

2    I declare under penalty of perjury under the laws of the State of California

3    that the above is true and correct.

4    _____
     JULIE A. SELBY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT   30**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  31**

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

### 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best effort to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

### 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for us and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvement, processes, developments, designs, know-how, data computer programs and formulas, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer, or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

### 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

### 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature _____

Employee Name (print)  CARTER H. BRYANT

Date  01/04/99

MATTEL, INC.

By: _____
Signature

TERESA NEWCOMB
Name of Witness (print)

M 0001596

DEPOSITION EXHIBIT

25

11·5·04     SH

EXHIBIT  31

PAGE  545

**EXHIBIT   32**

## CONFLICT OF INTEREST QUESTIONNAIRE

MATTEL

Name (Last, First, M.I.)  **BRYANT, CARTER H.**   Job Title  **PROJECT DESIGNER**   Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

◯ YES  ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

◯ YES  ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

◯ YES  ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES  ◯ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES  ◯ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

◯ YES  ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

◯ YES  ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

◯ YES  ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

◯ YES  ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

*4, 5, Freelance design & artwork in 1998, from appx. 5/98 - 11/98 for the Ashton Drake galleries.*

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature  *Carter Bryant*      Date  *01/04/98*

M 0001621


DEPOSITION EXHIBIT
26
11·8·04        SH

EXHIBIT _____ 32 _____

PAGE _____ 546 _____

**EXHIBIT   33**

## Employee Confidential Information and Inventions Agreement

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates, I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment by the Company and other good and valuable consideration, I agree that:

1. *Provisions Related to Trade Secrets.*

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including any formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information of the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time, either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

2. *Ownership of Inventions.*

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time and in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data, computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provisions of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

M 0001638

DEPOSITION EXHIBIT
23
11.5.04      SH

EXHIBIT 33

PAGE 541

3. *Conflicts with Other Activities.*

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or the future business plans of the Company.

(b) My employment with the Company and my compliance with this Agreement do not and will not breach any agreement to keep in confidence information acquired by me prior to or outside of my employment with the Company. I have not brought and will not bring with me to the Company for use in the performance of my duties at the Company any materials, documents or information of a former employer or any third party that are not generally available to the public unless I have obtained express written authorization from the owner for their possession and use by or for the Company. I have not entered into, and will not enter into, any agreement either oral or written, in conflict with this Agreement.

4. *Miscellaneous.*

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in a writing signed by a Vice-President of the Company. Any waiver by the Company of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligations under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This Agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

_____
Employee Signature

MATTEL, INC.

By: _____

CARTER H. BRYANT
Employee Name (print)

11/6/95
Date

T. NEWCOMB
Name of Witness (print)

M 0001639

EXHIBIT _____33_____

PAGE _____548_____

**EXHIBIT   34**

**EXHIBIT   35**



# Teen Skipper™

by Scott Arend

It's Skipper doll's 33rd birthday, and in the usual limited life span of toys, that makes her something of a legend. During that time she's had five face lifts, a new body, two boyfriends, several cars, a boat and a horse. She's perfected her athletic skills on roller skates, teeter boards, sleds and in the ice skating rink, while still finding time to babysit, act as a flower girl or bridesmaid in dozens of weddings and be elected Homecoming Queen. In spite of these triumphs—she's never really gotten to grow up—until now.

1997 is the year that Barbie doll's little sister, Skipper, finally becomes a real teenager. Teen Skipper has grown an additional two inches, has a new body style, face mold, hairstyle, clothes, a hip new attitude and is officially 16 years old. Available since May, Teen Skipper and her friends, Nikki and Courtney, are cute, cool and catching the interest of vintage and new doll collectors—an unusual surprise for a doll designed as part of the children's play line.

An adult-figured doll with breasts was still a radical idea to many parents in the early 1960s, and their children were not allowed to play with the Barbie doll. Mattel appealed to this group of parents and kids with the introduction of Skipper, Barbie doll's little sister. Only 9" tall and lacking the full-figured body of Barbie doll, Skipper was approximately 7-10 years of age. The sister connection between the two dolls was firmly

BRYANT 00943          CONFIDENTIAL

EXHIBIT 35
PAGE 551



established by Mattel through the use of companion outfits. All 10 of Skipper doll's original 1964 ensembles and 8 of the 12 ensembles from 1965, coordinated with Barbie doll's wardrobe.

Skipper doll's success can be measured by the profusion of ensembles she received and by the world of friends that was soon added for her. Although she continued to be involved in many activities younger children enjoyed, such as giving tea parties and jumping rope, her wardrobe reflected the eye-popping influences of mod fashion. Wild colors, prints, patterns and accessories definitely made her the coolest preteen in toydom.

The first head mold for Skipper doll was used exclusively through

1978, and occasionally between 1978 and 1984. This original doll was superseded by "Super Teen Skipper" who was introduced in 1979 and, by following the lead of the Superstar Barbie, had a smiling face. Although a teen-ager, she still had the shapeless body of her predecessor, and was meant to be about 13 years old. Not too popular with kids, she underwent cosmetic surgery again for another smiling debut in 1985 as Hot Stuff Skipper. Looking rather demonic, the doll was as unpopular as the one she replaced, and a new look was again developed.

Radically different from the earlier versions, the fourth incarnation of Skipper doll, introduced in 1988, had a large head and a flatter, cartoon-like face. She resembled the humans prevalent in Japanese animation, and was somewhat similar to the Takara Jenny doll with her big eyes and small, closed mouth. Although her make over included a new body with small breasts, the doll looked very childlike. She had a wide age range with younger activities reflected in Pet Pals Skipper and Babysitter Skipper, as well as older teen-aged activities such as Homecoming Queen and Teen Sweetheart. Whatever age she portrayed, she was extremely appealing to children, and over two dozen versions of this doll were created, including the first introduction of an African American Skipper.

A revamped, smiling Skipper doll, who appeared to be 12 or 13 years of age, was introduced in 1995. Her head size was smaller and she didn't have the large painted eyes used over the past seven years, but she still seemed to be at an awkward

Teen Skipper, left, as she appears on store shelves   if you like Skipper, chances are you will love friends Nikki and Courtney.
Below  Talented fashion illustrator Carter Bryant  prepared these preliminary sketches of this new teen doll



"Cool Streaker Nikki"

38 Barbie Bazaar

BRYANT 00944
EXHIBIT 35
PAGE 552
CONFIDENTIAL

**EXHIBIT   36**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  37**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  38**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   39**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   40**

THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

**EXHIBIT   41**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   42**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   43**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   44**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   45**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   46**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 4**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   48**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   49**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   50**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   51**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   52**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  53**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  54**

Immigrant's Creative Company Shakes Up Toy Industry

By JEFF WEISS; Contributing Reporter
1,098 words
29 March 2004
San Fernando Valley Business Journal
English
2004 San Fernando Valley Business Journal. All rights reserved.

Large Business Award - MGA Entertainment, North Hills

Only 16 years old, with a mere $750 in his pocket, and with parents across the globe in Iran, Isaac Larian never expected to eventually be the founder of one of the fastest growing toy companies in the world.

Initially undecided whether to emigrate to the United States or to Israel, Larian opted to pursue the American dream. The Business Journal's recipient of the family business Best Large Company award, MGA Entertainment, is the end product of Larian's hard work, determination, and foresight in capitalizing upon opportunity.

Yet before becoming a toy mogul, Larian set out to forge a career in the civil engineering industry before realizing his true talents lay elsewhere.

"I came here to get a civil engineering degree because I thought I'd be a civil engineer and go back to Iran and build infrastructure," Larian said. "I graduated in 1978 from Cal State Los Angeles but I never worked as an engineer. Shortly after graduating, the (Iranian) revolution broke out and I discovered that engineering wasn't for me. I was more of an entrepreneur."

The following year Larian and his brother Farhad founded MGA as a consumer electronics company. Their first foray into the toy industry didn't come until 1987 when Isaac saw the opportunity to manufacture Nintendo's hand-held electronic games.

"I'm an entrepreneur and in 1987 I saw an opportunity to become the distributor for Nintendo's hand-held games. I just saw opportunity. Most entrepreneurs do that," Larian said.

After two years in the hand-held video game industry, MGA left the toy game and returned to consumer

© 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

EXHIBIT __54__

PAGE __787__

M 0101133

electronics. Returning in 1993 to produce Mighty Morphin Power Rangers accessories, MGA never left the toy industry, having its first breakthrough item with 1997's wildly successful Singing Bouncing Baby Doll.

"Singing Bouncing Baby was our first doll and it was a huge hit," Larian said. "We ended up winning Family Fun Toy of the Year which is the Oscars of the toy industry. We ended up doing in excess of a million pieces," said Larian.

Introducing Bratz

But MGA's greatest success came later, with the introduction of 2001's Bratz dolls. Against all odds, Larian pioneered a line of dolls able to undercut the success of Barbie, the only company to do so since Barbie's 1959 debut.

However, the modest Larian is quick to acknowledge others for contributing to the company's success. A close knit family, Larian's sister, Shirin Makabi, is the company's director of travel and expenses. Shirin's husband, Eli Makabi, is MGA's vice-president in charge of traffic in sales. In addition, the Makabis co-own the business with Larian. But Larian family involvement does not stop there; Larian's children have played a crucial role in MGA's development.

"My oldest son, 17-year-old Jason, is very creative and a music writer. He has come up with some of our popular toys," Larian said. "He came up with Commandobot—a robot that was the first ever robot toy to work on voice recognition. It was a fantastic seller that was featured in Wired magazine. It was Jason's idea for Bratz."

Larian's other children have also been key to product development.

"Yasmin, my 15-year-old daughter, is involved in the business as well. She's particularly interested in fashion and focus groups. One of the Bratz is named after her," Larian said. "My 10-year-old son, Cameron, is also the namesake for one of the boy Bratz. Cameron comes up with different product ideas. One of our best ideas was a winter wonderland Bratz line. We were on a family ski vacation and he said 'Dad, you should do a Bratz winter break.' So we did it and it sold wonderfully."

Thanking the employees

Larian also credits the company's 430 employees for much of MGA's success.

"Our success is due to the passion of the people we have working for us. Each one has contributed to our success because they are passionate about the company and winning."

Page 130      © 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

EXHIBIT ___54___
PAGE ___788___

M 0101134

With business booming, a Bratz licensing deal with 20th Century Fox has been inked. A Bratz DVD and a Bratz feature film are soon on the way.

"The Bratz are a true phenomenon that has taken the toy/doll industry by storm," Jim Gianopulos, chairman of Fox Filmed Entertainment, said. "They are more than just toys; they reflect the cultural diversity and contemporary style that kids relate to. That kind of success and impact on young people make the company a natural in a major motion picture, and we look forward to turning the Bratz figures into major motion picture stars."

MGA's projected revenue for 2004 is $1 billion and the company has openings for 110 employees in a variety of positions. Although MGA's success is now assured, there were obstacles along the way.

"I noticed some discrimination when I first got into the business world. I think that after living here for 33 years, there is unfortunately discrimination whether you're Jewish, Persian, black or whatever," Larian said. "But it made me stronger to go out and fight. People become resilient and they get angry and they need to turn that anger into positive energy."

Larian has certainly come a great distance from being a teenager with inclinations towards civil engineering and less than a thousand dollars in his pocket. Thanks to MGA, Barbie's pedestal seems a little less secure.

"I'm having a lot of fun and enjoying what I'm doing here right now and I think as long as you have fun at your job, it's a great thing," Larian said. "I believe that in life you have to have passion for what you do and if you lose that passion you shouldn't do it. My vision is for MGA to become a multibillion-dollar entertainment company and specialize in other things besides just toys."

Looking back on the whirlwind rise of MGA, Larian still seems a bit surprised by the amount of success he's encountered.

"My life is proof that dreams come true. You can't give up. They were definitely moments of self-doubt. I just didn't want to fail, I always had that desire to win," Larian said. "We've made history by unseating Barbie and for a small San Fernando Valley company to do that is a miracle."

Document SFVBJ00020041020e03t0003p

Page 231      © 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

EXHIBIT ___54___

PAGE ___789___

M 0101135

**EXHIBIT   55**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  56**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   57**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   58**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   59**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   60**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   61**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   62**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 63**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   64**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   65**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   66**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   67**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   68**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   69**

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
3  Los Angeles, CA 90071
   Tel.: (213) 687-5000/Fax: (213) 687-5600
4
   KENNETH PLEVAN (admitted *pro hac vice*)
5  (kplevan@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Times Square
   New York, NY 10046
7  Tel.: (212) 735-3000 / Fax: (212) 735-2000

8  Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

9

10               UNITED STATED DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  CARTER BRYANT, an individual,        )  CASE NO. CV 04-9049 SGL (RNBx)
                                         )
14                    Plaintiff,         )  MGA'S NOTICE OF
                                         )  WITHDRAWAL OF UNCLEAN
15          v.                           )  HANDS AFFIRMATIVE DEFENSE
                                         )  AS IT PERTAINS TO PHASE 1
16  MATTEL, INC., a Delaware             )
    corporation,                         )
17                                       )
                      Defendant.         )
18                                       )
                                         )
19  _____  )
                                         )
20  AND CONSOLIDATED ACTIONS             )
                                         )
21

22

23

24

25

26

27

28
                          2·15·08
   MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE I

EXHIBIT ____69____

PAGE ____1096____

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that the MGA Parties hereby withdraw their affirmative defense based on unclean hands as it pertains to Phase 1 of this action.  The MGA Parties will assert unclean hands as an affirmative defense only in connection with Phase 2 of this action.

DATED:  February 15, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
     Thomas J. Nolan
     Attorney for MGA Entertainment, Inc.

EXHIBIT ___69___

PAGE ___1097___

1 | THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, CA  90071-3144
3 | Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600
4 | E-mail:      tnolan@skadden.com

5 | KENNETH PLEVAN (admitted *pro hac vice*)
(kplevan@skadden.com)
6 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
7 | New York, NY  10036
Tel.: (212) 735-3000 / Fax: (212) 735-2000

8 |
Attorneys for Counter-Defendants,
9 | MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
(HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

10 |

**UNITED STATES DISTRICT COURT**

11 |

**CENTRAL DISTRICT OF CALIFORNIA**

12 |

**EASTERN DIVISION**

13 |

| | |
|---|---|
| 14  CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| 15              Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 16       v. | **PROOF OF SERVICE** |
| 17  MATTEL, INC., a Delaware corporation | |
| 18              Defendant. | |
| 19 | |
| 20 | |
| 21 | |
| 22  Consolidated with MATTEL, INC. v. BRYANT and MGA | Discovery Cut-Off:  January 28, 2008 |
| 23  ENTERTAINMENT, INC. v. MATTEL, INC. | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

*2-15-08*

| | |
|---|---|
| PROOF OF SERVICE | NO. CV 04-9049 SGL (RNBx) |

EXHIBIT ___69___

PAGE ___1098___

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3
4

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

5

On February 15, 2008, I served the foregoing documents described as:

6

### SEE ATTACHED DOCUMENT LIST

7

on the interested parties in this action addressed as follows:

8
9

### SEE ATTACHED SERVICE LIST

10

☒   (BY PERSONAL SERVICE)   ☐   By personally delivering copies to the person served. (FEDERAL)

11
12

☒   I caused such document to be hand delivered to the above addressees. (FEDERAL)

13

14
15
16
17
18

☒   (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with Federal Express and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

19

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

20

Executed on February 15, 2008 at Los Angeles, California.

21

22    ___Matthew Bowman___            _____
      PRINT NAME                      SIGNATURE

23

24

25

26

27

28

- 2 -

PROOF OF SERVICE                                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___69___

PAGE ___1099___

## <u>DOCUMENT LIST</u>

1) MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS
AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE 1

2) PROOF OF SERVICE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 3 -

EXHIBIT _____69_____

PAGE _____1100_____

1 | SERVICE LIST

2

3 | John B. Quinn, Esq.
Michael T. Zeller, Esq.
4 | Jon D. Corey, Esq.
Timothy L. Alger, Esq.
5 | Quinn Emanuel Urquhart Oliver &
Hedges, LLP
6 | 865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
7 | (213)  443-3000
(213)  443-3100 (Fax)
8
Attorneys for Mattel, Inc.
9 | [Personal Service]

10

11

12 | Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David C. Scheper, Esq.
13 | Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
14 | Los Angeles, CA  90071
(213)  613-4655
15 | (213)  613-4656 (Fax)

16 | [Federal Express]

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111
(415)  391-5400
(415)  397-7188 (Fax)

Attorneys for Carter Bryant
[Federal Express]

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

PROOF OF SERVICE

NO. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 69

PAGE _____ 1101

**EXHIBIT   70**

RightFAX          2/22/2007 3:18   PAGE 002/017   Fax Server

SEND

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9         CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION
10
11   MGA ENTERTAINMENT, INC.,           Case No. CV 05-02727 SGL(RNBx)
12              Plaintiff,              SCHEDULING ORDER [FRCP 16(b)]
13        v.                           1.   Establishing a Discovery Cut-off Date of
                                            March 3, 2008
14   MATTEL, INC.,
                                       2.   Non-Discovery Motion Hearing Cutoff
15              Defendants.                 date of April 7, 2008, at 10:00 a.m.
16                                     3.   Setting Final Pretrial Conference for
                                            June 2, 2008, at 11:00 a.m.
17
                                       4.   Setting Jury Trial Date of July 1, 2008, at
18                                          9:30 a.m.
19
20
21        READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE      FEB 2 2 2007
22        AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.
23
          The above matter is set for trial before the Honorable Stephen G. Larson, United
24   States District Court, Courtroom 1, United States District Court, Eastern Division, 2nd
25   Floor, Riverside, California.
26
27        1.    **Discovery Cut-Off:** This is the last date to complete discovery, including
28
                                                       FEB 2 2 2007

EXHIBIT _____70_____

PAGE _____1102_____

2-21

1   expert discovery, and the resolution of any discovery motions before this court. If expert

2   witnesses are to be called at trial, the parties shall designate experts to be called at trial and

3   provide reports required by Fed. R. Civ. P. 26(a)(B), not later than eight weeks prior to the

4   discovery cutoff date. Rebuttal expert witnesses shall be designated and reports provided as

5   required by Fed.R.Civ.P. 26(a)(2)(B), not later than five weeks prior to the discovery cutoff

6   date. Failure to timely comply with this deadline may result in the expert being excluded at

7   trial as a witness. The Court requires compliance with Local Rule 37-1 and 37-2 in the

8   preparation and filing of discovery motions. Discovery motions may not be heard on an ex

9   parte basis.

10      2.      Joinder of Parties and Amendment of Pleadings:  Any motions to join other

11   parties or for leave to amend the pleadings shall be filed within sixty (60) days of the date of

12   this Order so that they can be heard and decided prior to the deadline. This deadline does

13   not apply if the deadline for joining parties or amending pleadings has already been

14   calendared or occurred by virtue of an order issued by another Judge.

15      In addition to the requirements of Local Rules 15-1, 15-2, and 15-3, all motions to

16   amend the pleadings shall (a) state the effect of the amendment; (b) be serially numbered to

17   differentiate the amendment from previous amendments and (c) state the page, line

18   number(s), and wording of any proposed change or addition of material.

19      3.      Motion Filing Cut-Off:  The Court hears motions on Mondays at 10:00 a.m.

20   The motion filing cut-off date is the last day motions may be heard (not filed). The Court will

21   not decide late motions. Issues left undetermined by the passage of the motion cut-off date

22   should be listed as issues for trial in the Final Pretrial Conference Order. As an exception to

23   the above, motions in limine dealing with evidentiary matters may be heard at or before trial;

24   however, summary judgment motions disguised as motions in limine will not be heard.

25   Parties need not wait until the discovery cut-off to bring motions for summary judgment or

26   partial summary judgment. However, in the usual case, the court expects that more than the

27   minimum notice will be provided to counsel opposing motions for summary judgment. In the

28

2

EXHIBIT _____ 70 _____

PAGE _____ 1103 _____

1   usual case, the parties should confer and agree on the date for setting such motions.

2          Ex parte applications are entertained solely for extraordinary relief. See Mission Power

3   Eng. Co. v. Continental Casualty Co., 883 F.Supp. 488 (C.D. Cal. 1995). Strict adherence to

4   proper ex parte procedures is required for any ex parte application filed with the Court.

5          4.   **Stipulations to Extend Time:**  Stipulations to extend the time to file any required

6   document or to continue any pretrial or trial date must set forth (a) the existing due date or

7   hearing date; (b) the current pretrial conference date and trial date; (c) the specific reasons

8   supporting good cause for granting the extension or continuance; and (d) whether there have

9   been any prior requests for extensions or continuances, and whether these were granted or

10  denied by the Court.

11         5.   **Summary Judgment Motions:**  The Separate Statement of Undisputed Facts is to

12  be prepared in a two-column format.  The left-hand column should set forth the allegedly

13  undisputed fact.  The right-hand column should set forth the evidence that supports the

14  factual statement. The fact statements should be set forth in sequentially numbered

15  paragraphs. Each paragraph should contain a narrowly focused statement of fact. Each

16  numbered paragraph should address a single subject in as concise a manner as possible.

17         The opposing party's statement of genuine issues must be in two columns and

18  track the movant's separate statement exactly as prepared.  The document must be in two

19  columns; the left-hand column must restate the allegedly undisputed fact, and the right-hand

20  column must indicate either undisputed, or disputed.  The opposing party may dispute all or

21  only a portion of the statement, but if disputing only a portion, must clearly indicate what part

22  is being disputed.  Where the opposing party is disputing the fact in whole or part, the

23  opposing party must, in the right-hand column, label and restate the moving party's evidence

24  in support of the fact, followed by the opposing party's evidence controverting the fact.

25  Where the opposing party is disputing the fact on the basis of an evidentiary objection, the

26  party must cite to the evidence alleged to be objectionable and state the ground of the

27

28

3

EXHIBIT ___70___

PAGE ___1104___

1   objection and nothing more.  No argument should be set forth in this document.

2        The opposing party may submit additional material facts that bear on or relate to the

3   issues raised by the movant, which shall follow the format described above for the moving

4   party's separate statement.  These additional facts shall follow the movant's facts, shall

5   continue in sequentially numbered paragraphs (i.e., if movant's last statement of fact was set

6   forth in paragraph 30, then the first new fact will be set forth in paragraph 31), and shall set

7   forth in the right hand column the evidence that supports that statement.

8        The moving party, in its reply, shall respond to the additional facts in the same

9   manner and format that the opposition party is required to adhere to in responding to the

10  statement of undisputed facts, as described above.

11       (a)  Supporting Evidence:  No party should submit any evidence other than the

12  specific items of evidence or testimony necessary to support or controvert a proposed

13  statement of undisputed fact.  Thus, for example, the entire transcript of a deposition, entire

14  sets of interrogatory responses, and documents that do not specifically support or controvert

15  material in the separate statements, should not be submitted in support or opposition to a

16  motion for summary judgment.  Any such material will not be considered.

17       Evidence submitted in support of or in opposition to a motion should be submitted

18  either by way of stipulation or as exhibits to declarations sufficient to authenticate the

19  proffered evidence, and should not be attached to the Memorandum of Points and

20  Authorities.  The Court will accept counsel's authentication of deposition transcript, of written

21  discovery responses, and of the receipt of documents in discovery if the fact that the

22  document was in the opponent's possession is of independent significance.  Documentary

23  evidence as to which there is no stipulation regarding foundation must be accompanied by

24  the testimony, either by declaration or properly authenticated deposition transcript, of a

25  witness who can establish its authenticity.

26       If evidence in support of or in opposition to a motion exceeds twenty pages, the

27

28

                                      4

EXHIBIT  70

PAGE  1105

1   evidence must be in a separate bound volume and include a Table of Contents.

2        (b) **Objections to Evidence:** If a party disputes a fact based in whole or in part

3   on an evidentiary objection, the ground of the objection, as indicated above, should be

4   stated in the separate statement but not argued in that document.  Evidentiary objections

5   are to be addressed in a separate memorandum to be filed with the opposition or reply brief

6   of the party.  This memorandum should be organized **to track the paragraph numbers of**

7   **the separate statement in sequence.**  It should identify the specific item of evidence to

8   which objection is made, the ground of the objection, and a very brief argument with citation

9   to authority as to why the objection is well taken.  The following is an example of the format

10  contemplated by the Court:

11       Separate Statement Paragraph 1:  Objection to the supporting deposition transcript

12       of Jane Smith at 60:1-10 on the grounds that the statement constitutes inadmissible

13       hearsay and no exception is applicable.  To the extent it is offered to prove her

14       state of mind, it is irrelevant since her state of mind is not in issue.

15       Fed. R. Evid. 801, 802.

16   Do not submit blanket or boilerplate objections to the opponent's statements of

17   undisputed fact: these will be disregarded and overruled.

18       (c) **The Memorandum of Points and Authorities:**  The movant's memorandum of

19   points and authorities should be in the usual form required under Local Rule 7-5 and should

20   contain a narrative statement of facts as to those aspects of the case that are before the

21   Court. All facts should be supported with citations to the paragraph number in the  Separate

22   Statement that supports the factual assertion and not to the underlying evidence.

23       Unless the case involves some unusual twist on Rule 56, the motion need only

24   contain a brief statement of the Rule 56 standard;  the Court is familiar with the Rule and

25   with its interpretation under Celotex and its progeny.  If at all possible, the argument should

26   be organized to focus on the pertinent elements of the cause(s) of action or defense(s) in

27

28

EXHIBIT ___70___

PAGE ___1106___

1  issue, with the purpose of showing the existence or non-existence of a genuine issue of

2  material fact for trial on that element of the claim or defense.

3        Likewise, the opposition memorandum of points and authorities should be in the

4  usual form required by Local Rule 7-5, and where the opposition memorandum sets forth

5  facts, the memorandum should cite to paragraphs in the separate statement if they are not in

6  dispute, to the evidence that contravenes the fact where the fact is in dispute or, if the fact is

7  contravened by an additional fact in the statement of genuine issues, the citation should be

8  to such fact by paragraph number.

9        **(d) Timing:** In virtually every case, the Court expects that the moving party will

10  provide more than the minimum twenty-one (21) day notice for such motions. The moving

11  party should deliver to chambers a copy of a diskette, in WordPerfect format (11.0 or earlier

12  versions), containing the Statement of Uncontroverted Facts and Conclusions of Law.

13      6.  **Motions in Limine:**  The parties must file motions in limine addressing the

14  admissibility of evidence in accordance with Local Rule 7-3.  The parties shall file their

15  opposing and reply papers in accordance with Local Rules 7-9 and 7-10 respectively.

16      7.  **Pretrial Conference and Trial Setting:**  Compliance with the requirements of

17  Local Rule 16 is mandatory.  Counsel shall submit carefully prepared Memoranda of

18  Contentions of Fact and Law (which may also serve as the trial briefs) and Proposed Pre-

19  Trial Conference Order ("PTCO") in accordance with the provisions of Local Rules 16-1

20  through 16-7. The Proposed Pre-Trial Conference Order shall conform to the example set

21  forth in Appendix A to the Local Rules, modified as necessary to comply with this order.

22        The Memoranda of Contentions of Fact and Law, Exhibit Lists, and Witness Lists

23  shall be served and filed no later than fourteen (14) calendar days before the Pre-Trial

24  Conference.  The Proposed Pre-Trial Conference Order shall be lodged fourteen (14)

25  calendar days before the Pre-Trial Conference.

26        The Proposed Pre-Trial Conference Order must contain a Table of Contents.  Place

27

28

6

EXHIBIT __70__

PAGE __1107__

1  In all capital letters and in bold the separately numbered headings for each category in the

2  PTCO. Under paragraph 1, list each claim, counterclaim, or defense that has been

3  dismissed or abandoned. In multiple-party cases where not all claims or counterclaims will

4  be prosecuted against all remaining parties on the other side, please specify to which party

5  each claim or counterclaim is directed. The factual issues in dispute should track the

6  elements of a claim or defense upon which the jury would be required to make findings.

7  Counsel should state issues in ultimate fact form, not as evidentiary fact issues (i.e., "was the

8  defendant negligent," "was defendant's negligence the proximate cause of plaintiff's injury;"

9  not "was the plaintiff standing on the corner of 12th Street and Lemon Avenue at 10:00 a.m.

10  on March 1"). Issues of law should state legal issues upon which the Court will be required

11  to rule after the Pre-Trial Conference, including during the trial, and should not list ultimate

12  fact issues to be submitted to the trier of fact.

13          In drafting the PTCO, the court expects that counsel will attempt to agree on and

14  set forth as many non-contested facts as possible. The court will normally read the

15  uncontested facts to the jury at the start of the trial. Carefully drafted and comprehensively

16  stated stipulation of facts will reduce the length of trial and increase jury understanding of the

17  case.

18          If expert witnesses are to be called at trial, each party must list and identify its

19  respective expert witnesses, both retained and non-retained. Failure of a party to list and

20  identify an expert witness in the Proposed Pre-Trial Conference Order shall preclude a party

21  from calling that expert witness at trial.

22          This case has been placed on calendar for a Final Pretrial Conference ("PTC")

23  pursuant to Fed. R. Civ. P. 16 and Local Rule 16-1, et seq., unless the PTC was expressly

24  waived at the Scheduling Conference by the court. Unless excused for good cause, each

25  party appearing in this action shall be represented at the PTC and all pretrial meetings of

26  counsel, by lead trial counsel. The failure to attend the PTC or to submit the required pretrial

27

28

EXHIBIT ___70___

PAGE ___1108___

1   documents may result in the dismissal of the action, striking the answer and entering a

2   default, and/or the imposition of sanctions.

3          A continuance of the Final Pretrial Conference at counsel's request or stipulation

4   will only be approved upon a showing of good cause. Counsel should plan to do the

5   necessary pretrial work on a schedule which will insure its completion with time to spare

6   before the Final Pretrial Conference. Specifically, failure to complete discovery work,

7   including expert discovery, is not a ground for a continuance.

8          Compliance with the requirements of Local Rules 16-1 to 16-13 is required by the

9   court. Carefully prepared Memoranda of Contentions of Fact (which may also serve as the

10   trial brief) and a proposed Final Pretrial Conference Order shall be submitted in accordance

11   with the provisions of Local Rule 16-7 and the form of the proposed Final Pretrial Conference

12   Order shall be in conformity with the format set forth in Appendix A to the Local Rules.

13          At the PTC, counsel should be prepared to discuss means of streamlining the trial,

14   including, but not limited to: bifurcation, presentation of non-critical testimony by deposition

15   excerpts, stipulations as to the content of testimony, presentation of testimony on direct

16   examination by declaration subject to cross-examination, and qualification of experts by

17   admitted resumes. In certain cases where the PTC is waived by the court, counsel must

18   follow Local Rule 16-11.

19      8.   **Witness List and Times Estimates:** Counsel shall prepare a list of their witnesses,

20   an estimate of the length of time needed for direct examination for each witness, and whether

21   the witness will testify by deposition or in person. Counsel shall exchange these lists with

22   opposing counsel.[1] **Counsel shall jointly file a single witness list, including estimates for**

23   **direct examination of their own witnesses and estimates for cross-examination of**

24   **opposing witnesses.** This list shall be filed at the time counsel lodge the Proposed Pre-Trial

25

26   _____

27   [1] See "Joint Trial Witness Estimate Form" appended to this order.

28

8

EXHIBIT   70

PAGE   1109

1  Conference Order, i.e., fourteen (14) days before the Pre-Trial Conference.

2      9.  **Jury Instructions and Verdict Forms:**  Fourteen (14) calendar days prior to

3  counsel's Rule 16 pre-trial meeting, counsel shall exchange proposed jury instructions

4  (general and special) and special verdict forms (if applicable).  Seven (7) calendar days prior

5  to the Rule 16-2 meeting, counsel shall exchange any objections to the instructions and

6  special verdict forms.  Prior to, or at the time of the Rule 16 meeting, counsel shall meet and

7  confer with the goal of reaching agreement on one set of joint jury instructions and one special

8  verdict form.

9      The parties should make every attempt to agree upon the jury instructions before

10  submitting them to the Court.  The Court expects counsel to agree on the substantial majority

11  of jury instructions, particularly when pattern instructions provide a statement of applicable law.

12  When the Manual of Model Civil Jury Instructions for the Ninth Circuit provides a version of an

13  applicable requested instruction, the parties should submit the most recent version of the

14  Model instruction.  Where language appears in brackets in the model instruction, counsel shall

15  select the appropriate text and eliminate the inapplicable bracketed text.  Where California law

16  applies, counsel should use Judicial Council of California Civil Jury Instructions (June 2006)

17  ("CACI").  If neither of the above sources is applicable, counsel are directed to use the

18  instructions from O'Malley, Grenig & Lee (formerly Devitt, et al.), Federal Jury Practice and

19  Instructions (latest edition).  Each requested jury instruction shall cover only one subject or

20  principle of law and shall be numbered and set forth in full on a separate page, citing the

21  authority or source of the requested instruction (except for the "clean" jury copy discussed

22  below).

23      When the parties disagree on an instruction, the party opposing the instruction must

24  attach a short statement (one to two paragraphs) supporting the objection, and the party

25  submitting the instruction must attach a short statement supporting the instruction.  Each

26  statement should be on a separate page and should follow directly after the disputed

27

28

<center>9</center>

EXHIBIT __70__

PAGE __1110__

1  Instruction.

2      The parties ultimately must submit one document or, if the parties disagree over any

3  proposed jury instructions, two documents.  If the parties submit two documents, those

4  documents shall consist of: (a) a set of Joint Proposed Jury Instructions and (b) a set of

5  Disputed Jury Instructions, along with reasons supporting and opposing each disputed

6  instruction in the format set forth in the previous paragraph.

7      The parties must file proposed jury instructions fourteen (14) calendar days before

8  the Pre-Trial Conference.  If the court is closed that day, counsel shall file the proposed

9  instructions the preceding Friday.  No later than 4:00 p.m. on the date such instructions are

10  due, the parties must submit conformed courtesy copies to the Court's courtesy box located

11  outside the entrance to Courtroom 1, United States District Court, 3470 Twelfth Street, 2nd

12  Floor, Riverside, California.  Counsel shall also provide the Court with a 3½ inch diskette

13  compatible with WordPerfect version 11.0 or lower containing the proposed jury instructions, in

14  accordance with this paragraph and the previous paragraph.

15      The Court will send a copy of the instructions into the jury room for the jury's use

16  during deliberations.  Accordingly, in addition to the file copies described above, the diskette

17  submitted with the jury instructions shall contain a "clean set" of Joint Proposed and/or

18  Disputed Jury Instructions, containing only the text of each instruction set forth in full on each

19  page, with the caption "Court's Instruction No. ___" (eliminating titles, supporting authority,

20  indication of party proposing, etc.).

21      An index page shall accompany all jury instructions submitted to the Court.  The

22  index page shall indicate the following:

23      (a)  The number of the instruction;

24      (b)  A brief title of the instruction;

25      (c)  The source of the instruction and any relevant case citations; and

26      (d)  The page number of the instruction.

27

28

EXHIBIT ___70___

PAGE ___1111___

EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Trademark-Defined (15 U.S.C. § 1127) | 9th Cir. 15.3.2 | 7 |

Along with the jury instructions, counsel shall submit any necessary special verdict form fourteen (14) calendar days before the Pre-Trial Conference.

10. **Voir Dire Questions:** Counsel may, but need not, submit brief proposed voir dire questions for the jury at the Pre-Trial Conference. The Court will conduct its own voir dire after consulting any proposed voir dire submitted by counsel. After the Court conducts its own voir dire, counsel will be provided an opportunity to ask supplemental questions subject to Court approval.

11. **Joint Statement of the Case:** Counsel shall submit a joint statement of the case at the Pretrial Conference. The joint statement of the case will be read to the prospective panel of jurors prior to the commencement of voir dire. The statement should not exceed one page. The statement shall be filed with the Court no later than 4:00 p.m., on the Wednesday prior to the Pre-Trial Conference.

12. **Exhibits:** The parties shall file their witness lists and exhibits lists in accordance with Local Rule 16. Counsel are to assemble their exhibits by placing them in three-ring binders labeled on the spine portion of the binder showing both the volume number and the exhibit numbers. Each exhibit shall be separated by a tabbed divider on the right side. Counsel shall provide original exhibits for the courtroom deputy clerk and a duplicate set for the judge. The original exhibits shall be tagged with the appropriate exhibit tags in the upper or lower right corner of the first page of each exhibit and include the case number, case name, and exhibit number. Each binder shall contain a Table of Contents. Counsel must comply with Local Rule 26-3 when numbering the exhibits. The Clerk's Office, located at the United States District Court, 3470 Twelfth Street, Riverside, California can supply counsel with appropriate exhibit tags.

11

EXHIBIT ___70___

PAGE ___1112___

1       The Court requires the following to be submitted to the courtroom deputy clerk on the

2    first day of trial: (a) The original exhibits with the Court's exhibit tags; (b) one bench book with

3    a copy of each exhibit for the Court's use, tabbed as described above; (c) three (3) copies of

4    exhibit lists and a floppy disk containing the exhibit list; (d) three (3) copies of witness lists in

5    the order in which the witnesses will be called to testify; and (e) file a Notice of Lodging of

6    Deposition Transcripts (original and 2 copies) and Lodge all anticipated trial deposition

7    transcripts directly with the deputy clerk in the courtroom.

8       All counsel are to meet no later than ten (10) calendar days before trial to discuss

9    and agree to the extent possible on issues including foundation and admissibility.

10      **13. Pre-Trial Exhibit Stipulation:** The parties shall prepare a Pre-Trial Exhibit

11   Stipulation which shall contain each party's numbered list of trial exhibits, with objections, if

12   any, to each exhibit including the basis of the objection and the offering party's response. All

13   exhibits to which there is no objection shall be deemed admitted. All parties shall stipulate to

14   the authenticity of exhibits whenever possible, and the Pre-Trial Exhibit Stipulation shall

15   identify any exhibits whose authenticity has not been stipulated to and the specific reasons for

16   the party's failure to stipulate.

17      The Stipulation shall be substantially in the following form:

18             Pre-Trial Exhibit Stipulation

19   Plaintiff's Exhibits

20   Number      Description      Objection      Response to Question

21

22   Defendant's Exhibits

23   Number      Description      Objection      Response to Question

24

25      The Pre-Trial Exhibit Stipulation shall be filed at the same time as counsel lodges the

26   Proposed Pre-Trial Conference Order. Failure to comply with this paragraph may constitute a

27

28

            12

EXHIBIT ___70___

PAGE ___1113___

1   waiver of all objections.

2       **14. Findings of Fact and Conclusions of Law:**  For a non-jury trial, counsel for each

3   party shall lodge proposed findings of fact and conclusions of law fourteen (14) days before

4   trial.  The parties should deliver to chambers a copy of these findings and conclusions of law

5   on disk in WordPerfect format.

6           (a)    Underline in red the portions which it disputes;

7           (b)    Underline in blue the portions which it admits;  and

8           (c)    Underline in black the portions which it deems not disputed, but deems

9                  irrelevant.

10      Counsel may agree with a part of a finding or conclusion, disagree with a part of it

11  and/or consider a part of irrelevant.

12      Two marked copies of opposing counsel's proposed findings of fact and conclusions of

13  law shall be lodged with the court seven (7) days before trial and one marked copy shall be

14  served on opposing counsel.  Courtesy copies of the marked copies shall be deposited in the

15  drop box located outside the entrance of Courtroom 1 of the above-entitled court on the date

16  due.

17      **15. Settlement:**  Local Rule 16-15.2 provides that the Settlement Conference shall be

18  conducted not later than 45 days before the Pretrial Conference.  The Court believes that in

19  most cases completion of all discovery and dispositive motions will help the parties assess

20  their positions before they embark on the costly pre-trial process.  However, in many cases,

21  the parties find it more difficult to settle after they have incurred the cost of all discovery and

22  motion practice.  Accordingly, the Court strongly encourages counsel and the parties to pursue

23  settlement earlier.

24      The Court has a keen interest in helping the parties achieve settlement.  If the parties

25  believe that it would be more likely that a settlement would be reached if they conduct

26  settlement conference at an earlier time than that specified by the Court, they should conduct

27

28

EXHIBIT ___70___

PAGE ___114___

1  it at that time. In any event, the parties must file a Status Report re Settlement at the time

2  they lodge the Proposed Pretrial Order.

3      The Court will not conduct settlement conferences in non-jury cases which the Court will

4  try. In jury cases, the Court will conduct a settlement conference at the parties' request if

5  three conditions exist: (a) The parties are satisfied that the fact issues in the case will be tried

6  to a jury; (b) all significant pre-trial rulings which Court must make have been made; and (c)

7  the parties desire the Court to conduct the conference, understanding that if settlement fails,

8  the Court will preside over the trial of the case.

9      **If a settlement is reached, it shall be reported immediately to this Court as**

10  **required by Local Rule 16-15.7.**

11     16. The failure to attend the pretrial conference or to submit timely in conformity

12  with the format set forth in this order, the jury instructions, pre-trial exhibit stipulation, joint

13  statement of the case, voir dire questions, summary of witness testimony and times estimates,

14  proposed Pretrial Conference Order or the memorandum of contentions of fact and law may

15  result in the dismissal of the action, striking the answer and entering default and/or the

16  imposition of sanctions.

17     **17. Telephonic Status Conference:**

18     Telephonic status conferences are sometimes set by the court to discuss settlement

19  status and other pending issues. If a telephonic status conference has been set, all counsel

20  are ordered to discuss the matter with their clients and opposing counsel before the telephonic

21  status conference. Plaintiff's counsel must make the arrangements and place the conference

22  call. Plaintiff's counsel shall include all counsel of record and the Court on the date and time

23  scheduled. The conference operator is to place the final call to the Court at (951) 328-4410.

24  To assist the Court and staff, participants shall identify themselves each time they speak. No

25  cellular telephones or speaker telephones will be allowed.

26                                **Internet Site**

27

28

                                        14

EXHIBIT ___70___

PAGE ___1115___

1       Counsel are encouraged to review the Central District's website for additional information.

2   The address is "http: //www.cacd.uscourts.gov".

3

4       The courtroom deputy clerk is ordered to serve a copy of this Order by mail, facsimile or

5   e-mail on counsel for all parties to this action.

6

7       IT IS SO ORDERED.

8   Dated: _____ FEB 2 1 2007

9

10

11

12   STEPHEN G. LARSON
    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              15

EXHIBIT ___70___

PAGE ___1116___

Joint Trial Witness Estimate Form

Case: _____

Trial Date: _____

| | WITNESS NAME | PARTY CALLING WITNESS AND ESTIMATE | X-EXAMINER'S ESTIMATE | DESCRIPTION OF TESTIMONY | COMMENTS |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| | Total Estimates This Page: | | | | |

Instructions:
(1) List witnesses (last name first); (2) For description, be extremely brief, e.g. "eyewitness to accident." Or "expert on standard of care"(3) Use estimates within fractions of an hour, rounded off to the closest quarter of an hour, e.g. if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75; (4) Note special factors in "Comments" column. e.g. "Needs interpreter." (5) Entries may be in handwriting if very neat and legible.

-16-

EXHIBIT ___70___

PAGE ___1117___

Confirmation Report - Memory Send

Page      : 001
Date & Time: 02-22-2007   03:22pm
Line 1    : 2136240543
Line 2    :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 446 |
| Date | : | 02-22  03:18pm |
| To | : | ☎76038#20257#13104771699 |
| Number of pages | : | 016 |
| Start time | : | 02-22  03:18pm |
| End time | : | 02-22  03:22pm |
| Pages sent | : | 016 |
| Status | : | OK |
| Job number | : 446 | *** SEND SUCCESSFUL *** |

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK                    LOS ANGELES                  SAN FRANCISCO
51 Madison Avenue, 22nd Floor   865 South Figueroa Street, 10th Floor   50 California Street, 22nd Floor
New York, NY 10010          Los Angeles, CA 90017        San Francisco, CA 94111
(212) 849-7000             (213) 443-3000              (415) 875-6600
Facsimile: (212) 849-7100   Facsimile: (213) 443-3100    Facsimile: (415) 875-6700

                                                        SILICON VALLEY
                                                        555 Twin Dolphin Drive, Suite 560
                                                        Redwood Shores, CA 94065
                                                        (650) 801-5000
                                                        Facsimile: (650) 801-5100

LOS ANGELES OFFICE
FACSIMILE TRANSMISSION

DATE:   February 22, 2007            NUMBER OF PAGES, INCLUDING COVER:  16

            NAME/COMPANY              PHONE NO.          FAX NO.
Rahul Ravipudi, Esq.               (310) 477-1700     (310) 477-1699

FROM:    Allison Burkholder, Esq.

RE:      Gulati v. IBM

MESSAGE:  PLEASE SEE ATTACHED

20277/2001943.2
CLIENT #   20287      ROUTE/     Monica Argarras        ☐ CONFIRM FAX
                      RETURN TO:                        ☐ INCLUDE CONF. REPORT
OPERATOR: Rafael      CONFIRMED?  ☐ NO  ☐ YES:_____

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT   70

PAGE   1118

RightFAX          2/22/2007 3:18    PAGE 001/017    Fax Server

From:    Name:        United States District Court
                      312 North Spring Street
                      Los Angeles, CA 90012
         Voice Phone: (213) 894-5474


To:      Name:        Michael Zeller
         Company:
                      865 S Figueroa St, 10th Floor,
         City/State:  Los Angeles, CA 90017-2543
         Fax Number:  213-443-3100



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

Fax Notes:

Case 2:05-CV-02727 : MGA ENTERTAINMENT INC V. MATTEL INC ET AL

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov
Southern Division:  CrimIntakeCourtDocs-SA@cacd.uscourts.gov
Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optional Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:          Thursday, February 22, 2007 3:14:36 PM
Number of pages including this cover sheet:  17

EXHIBIT __70__

PAGE __1119__

**EXHIBIT   71**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  72**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   73**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   74**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   75**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 76**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   77**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   78**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   79**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   80**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   81**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   82**

RECEIVED

MAY 3 0 2007

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  MICHAEL H. PAGE - #154913
   CHRISTA M. ANDERSON - #184325
3  710 Sansome Street
   San Francisco, CA 94111-1704
4  Telephone: (415) 391-5400
   Facsimile: (415) 397-7188
5
6  Attorneys for Plaintiff
   CARTER BRYANT
7
8
9            UNITED STATES DISTRICT COURT
10           CENTRAL DISTRICT OF CALIFORNIA
11
12 CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-2727)
13                    Plaintiff,
                                         CARTER BRYANT'S SUPPLEMENTAL
14      v.                               AND AMENDED RESPONSES TO
                                         MATTEL, INC.'S THIRD SET OF
15 MATTEL, INC., a Delaware Corporation, REQUESTS FOR ADMISSION TO
                                         CARTER BRYANT
16                    Defendant.
17 CONSOLIDATED WITH MATTEL, INC. v.
   BRYANT and MGA ENTERTAINMENT,
18 INC. v. MATTEL, INC.
19
20
21 PROPOUNDING PARTY:   Defendant MATTEL, INC. ("Defendant")
22 RESPONDING PARTY:    Plaintiff CARTER BRYANT ("Plaintiff")
23 SET NUMBER:          THREE (3)
24
25
26
27
28

EXHIBIT 82

PAGE 1272

1        Carter Bryant ("Defendant" or "Bryant") hereby provides supplemental and amended

2  responses to certain requests included in Mattel, Inc.'s ("Plaintiff" or "Mattel") Third Set of

3  Requests for Admission.  Bryant, in good faith, provides these supplemental and amended

4  responses in an effort to address concerns raised by Mattel in its letter dated April 25, 2007, and

5  as outlined in Bryant's letter to Mattel dated May 15, 2007.

6        Bryant's responses and objections are made solely for the purpose of this action.

7        Bryant points out that discovery is still pending, that it has not concluded its investigation

8  of the facts relating to this case, has not completed its own discovery in this case, and has not

9  completed preparation for trial.  In light of the foregoing, the following Responses are given

10  without prejudice to Bryant's right to stand on its objections, to continue its investigation and

11  discovery, to rely on subsequently discovered facts, and to utilize subsequently discovered or

12  subsequently identified evidence or documents.

13        The following Responses reflect the current status of Bryant's knowledge and belief

14  respecting the matters about which inquiry is made.  Discovery will continue as long as

15  permitted by statute or stipulation of the parties, and investigation by Bryant, its attorneys and

16  agents will continue up to and throughout the trial of this action.  Bryant specifically reserves the

17  right to introduce at the time of trial any evidence from any source, including documents and

18  testimony from any witnesses which may hereafter be discovered.

19        If any information has been unintentionally omitted from these Responses, Bryant hereby

20  reserves the right to amend these Responses to include the omitted information.  Bryant also

21  reserves the right to change, amend or supplement any or all of the matters contained in these

22  responses as additional facts are ascertained, analyses are made, and research is completed.

23  These introductory paragraphs apply to each and every Response herein and shall be

24  incorporated as though fully set forth in each and every Response.

25        All of Bryant's responses are based upon information and documentation that is currently

26  available and specifically known to Bryant.  The responses are made in a good-faith effort to

27  provide information now known to Bryant which are responsive, but Bryant specifically reserves

28

<div align="center">1</div>

EXHIBIT  82

PAGE  1273

1  the right both to supplement any of the responses set forth below and to utilize at trial any further

2  information or documents.

3

4  ### GENERAL OBJECTIONS

5    Bryant incorporates the General Objections originally set forth in his response to Mattel's

6  Third Set of Requests for Admissions.

7

8  ### RESPONSES TO REQUESTS FOR ADMISSION

9  ### REQUEST FOR ADMISSION NO. 1:

10    Admit that the document attached hereto as Exhibit 1 is a true and correct copy of a

11  registration MGA obtained from the U.S. Copyright Office as of June 18, 2001.

12  ### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

13    Bryant incorporates by reference the above-stated general objections as if fully set forth

14  herein. Bryant specifically objects to this request on the grounds that the request seeks to have

15  Bryant characterize the document. Bryant also asserts that the document speaks for itself.

16  Bryant specifically objects to this request on the grounds that it calls for Bryant to speculate

17  about matters to which Bryant lacks personal knowledge.

18    Subject to and without waiving the foregoing general and specific objections, Bryant

19  responds to this request by incorporating MGA's response to Request Number 1 in Mattel's

20  Fourth Set of Requests for Admissions, served on MGA by Mattel, as follows: MGA responds

21  that the document appears to be a copy of the original, and Bryant is presently unaware of any

22  facts which refute that response.

23

24  ### REQUEST FOR ADMISSION NO. 2:

25    Admit that the document attached hereto as Exhibit 2 is a true and correct copy of a

26  supplementary registration MGA obtained from the U.S. Copyright Office as of March 28, 2005.

27

28              2

1  on or about October 4, 2000, copies of which have been produced in this litigation.  One of the

2  clauses of that contract includes the following language: "Without limiting the generality of the

3  provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation

4  related thereto, and any other material, whether written or oral, created by or for Bryant relating

5  to the MGA Products prior to the commencement of the term of this Agreement, for good and

6  valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant,

7  Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity

8  all of Bryant's right, title and interest, in an[sic] to the such material, including without limiting

9  the generality of the foregoing, all rights under copyright and patent (and all renewals and

10  extensions thereof) including the right to produce and authorize the production of any and all

11  derivative work, and all proprietary rights of any kind therein, now known or hereafter created

12  through out the world."

13

14  **REQUEST FOR ADMISSION NO. 80:**

15      Admit that, prior to July 1, 2003, MGA had not issued any press release that identified

16  YOU as the creator of BRATZ.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

18      Bryant incorporates by reference the above-stated general objections as if fully set forth

19  herein. Bryant specifically objects to this request on the grounds that it is vague and ambiguous,

20  particularly in its use of the phrase "identified BRYANT as the creator of BRATZ." Bryant

21  specifically objects to this request on the grounds that it calls for Bryant to speculate about

22  matters to which Bryant lacks personal knowledge.

23      Subject to and without waiving the foregoing general and specific objections, Bryant

24  responds to this request by incorporating MGA's supplemental response to Request Number 183

25  in Mattel's Third Set of Requests for Admissions, served on MGA by Mattel, as follows:  MGA

26  admits the request, and Bryant is presently unaware of any facts which refute that response.

27

28                                                29

EXHIBIT ___82___

PAGE ___1275___

1  **REQUEST FOR ADMISSION NO. 81:**

2       Admit that YOU are not aware of any press report or publication that identified YOU as

3  the creator of BRATZ prior to July 15, 2003.

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

5       Bryant incorporates by reference the above-stated general objections as if fully set forth

6  herein. Bryant specifically objects to this request on the grounds that it is vague and ambiguous,

7  particularly in its use of the phrases "press report," "publication," and "identified Bryant as the

8  creator of BRATZ."

9       Subject to and without waiving the foregoing general and specific objections, Bryant

10  responds to this request as follows: Bryant admits the request.

11

12  **REQUEST FOR ADMISSION NO. 82:**

13       Admit that the first press report or publication that identified YOU as the creator of

14  BRATZ was the *Wall Street Journal* articled entitled "Dolled Up: To Lure Older Girls, Mattel

15  Brings in Hip-Hop Crowd" and published on July 18, 2003.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

17       Bryant incorporates by reference the above-stated general objections as if fully set forth

18  herein. Bryant specifically objects to this request on the grounds that it is vague and ambiguous,

19  particularly in its use of the phrases "press report," "publication," and "identified Bryant as the

20  creator of BRATZ."

21       Subject to and without waiving the foregoing general and specific objections, Bryant

22  responds to this request by incorporating MGA's supplemental response to Request Number 185

23  in Mattel's Third Set of Requests for Admissions, served on MGA by Mattel, as follows: Bryant

24  has made reasonable inquiry and that the information known or readily obtainable by Bryant is

25  insufficient to enable Bryant to admit or deny this Request, and, on that basis, Defendant denies

26  the same.  Bryant, however, admits that he is not aware of any press report or publication that

27  identified Bryant as the creator of the Bratz dolls prior to the July 18, 2003 publication of the

28                                          30

1  *Wall Street Journal* articled entitled "Dolled Up:  To Lure Older Girls, Mattel Brings in Hip-Hop

2  Crowd."

3

4  <u>**REQUEST FOR ADMISSION NO. 83:**</u>

5      Admit that, as of the date of these Requests, MGA has not recorded the agreement

6  produced by YOU as BRYANT 00794-BRYANT 0000799, or any version thereof, with the U.S.

7  Copyright Office.

8  <u>**RESPONSE TO REQUEST FOR ADMISSION NO. 83:**</u>

9      Bryant incorporates by reference the above-stated general objections as if fully set forth

10  herein. Bryant specifically objects to this request on the grounds that the request seeks

11  information not relevant to any claim or defense of any party in this action.  Bryant specifically

12  objects to this request on the grounds that it calls for Bryant to speculate about matters to which

13  Bryant lacks personal knowledge.

14      Subject to and without waiving the foregoing general and specific objections, Bryant

15  responds to this request by incorporating MGA's response to Request Number 241 in Mattel's

16  Third Set of Requests for Admissions, served on MGA by Mattel, as follows:  MGA admits the

17  request, and Bryant is presently unaware of any facts which refute that response.

18

19  <u>**REQUEST FOR ADMISSION NO. 84:**</u>

20      Admit that, as of the date of these Requests, MGA has not recorded the agreement

21  produced by YOU as BRYANT 00794-BRYANT 0000799, or any version thereof, with any

22  state or federal agency, department or entity.

23  <u>**RESPONSE TO REQUEST FOR ADMISSION NO. 84:**</u>

24      Bryant incorporates by reference the above-stated general objections as if fully set forth

25  herein. Bryant specifically objects to this request on the grounds that the request seeks

26  information not relevant to any claim or defense of any party in this action.  Bryant specifically

27  objects to this request on the grounds that it calls for Bryant to speculate about matters to which

28

<div align="center">31</div>

EXHIBIT __82__

PAGE __1277__

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 141:**

2    Bryant incorporates by reference the above-stated general objections as if fully set forth

3  herein. Bryant specifically objects to this request on the grounds it calls for a legal conclusion.

4  Bryant also specifically objects to this request on the grounds that it calls for the disclosure of

5  information subject to the attorney-client privilege, the work product doctrine, and other

6  applicable privileges.

7

8  **REQUEST FOR ADMISSION NO. 143:**

9    Admit that the work registered as V A 1-233-273 is a derivative of the works registered

10  as V A 1-218-487, V A 1-218-488, V A 1-218-489, V A 1-218-490, V A 1-218-491,

11  V A 1-090-287, V A 1-090-288, V A 1-090-289, and V A 1-090-290.

12

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

14    Bryant incorporates by reference the above-stated general objections as if fully set forth

15  herein. Bryant specifically objects to this request on the grounds it calls for a legal conclusion.

16  Bryant also specifically objects to this request on the grounds that it calls for the disclosure of

17  information subject to the attorney-client privilege, the work product doctrine, and other

18  applicable privileges.

19

20  Dated: May 29, 2007                    KEKER & VAN NEST

21

22                              By:  _____

23                                   CHRISTA M. ANDERSON
                                     Attorneys for Plaintiff
24                                   CARTER BRYANT

25

26

27

28                              61

---

PLAINTIFF'S SUPPLEMENTAL AND AMENDED RESPONSES TO
DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION
CASE NO. CV 04-09049

EXHIBIT __82__

PAGE __1278__

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On May 29, 2007, I served the following document(s):

**CARTER BRYANT'S SUPPLEMENTAL AND AMENDED RESPONSES TO MATTEL, INC.'S THIRD SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery; AND

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:    213/443-3000
Fax:    213/443-3100
Email: johnquinn@quinnemanuel.com
Email: michaelzeller@quinnemanuel.com

Diana M. Torres
O'Melveny & Myers, LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel:    213/430-6000
Fax:    213/430-6407
Email: dtorres@omm.com

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel:    310/553-3000
Fax:    310/556-2920
Email: pglaser@chrisglase.com

Executed on May 29, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Julie A. Selby*

JULIE A. SELBY

EXHIBIT  82

PAGE  1279

**EXHIBIT   83**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  84**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   85**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  86**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   87**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   88**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   89**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   90**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   91**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   92**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   93**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   94**

| ☒ Yahoo! Finance | Search - Finance Home - Yahoo! - Help | ☑ Reuters |

☒ Click here for more information

[ Latest Headlines | Market Overview | News Alerts ]

**Thursday February 14, 3:18 pm** Eastern Time

# With Bratz, a toy maker's dreams come true

By Jan Paschal

NEW YORK, Feb 14 (Reuters) - For Isaac Larian, a toy maker who first set foot on U.S. soil in 1971 as a teenager from Tehran with $570 in his pocket, this year's Toy Fair represented his ``wildest dreams come true.''

ADVERTISEMENT

☒ Click Here!

The reason? The ``People's Choice Toy of the Year Award'' went to his company, privately held MGA Entertainment Inc., of North Hills, California, for the Bratz -- a quartet of 11-inch dolls with attitude.

The Bratz, marketed as ``the dolls with a passion for fashion,'' favor clothes that take their style cues from pop music superstars Britney Spears and J. Lo, as well as from American teen girls who make the club scenes on both coasts.

``The People's Choice'' awards -- where consumers pick their favorites -- are sponsored by the Toy Industry Association, which owns and manages Toy Fair. Other ``Toy of the Year'' awards, called ``T.O.T.Y.'s'' in the business, are given in other categories, including best boy's, best girl's and best educational toys.

The Bratz, known as Yasmin, Cloe, Jade and Sasha, love thick-soled sneakers, boots and shoes (think Skechers and Steve Madden). Though sold separately, they run in a pack like 'tweens and teens often do. (Check them out at http://www.bratzpack.com/.)

``When they announced the girl's toy winner and we didn't get it, I threw my acceptance speech away,'' Larian told Reuters. ``Then, when it came time for 'People's Choice' and they called out MGA, I ran up to the podium and gave my speech from memory. Now I know what the Oscars feel like.''

Larian, the chief executive of MGA Entertainment, who has a master's degree in business, founded the

EXHIBIT ___94___

PAGE ___1551___

Confidential - For Attorney's Eyes Only

MGA 0142775

Los Angeles area company as a maker of electronic handheld games in the late 1970s. The company made its name as the licensee for the handheld Pac-Man and Ms. Pac-Man games.

Last year, MGA entered the competitive fashion doll category by creating the Bratz, designed to appeal to fashion-conscious girls ages 7 to 12, and intended, as MGA's public relations director Dave Malacrida put it, ``to take market share away from Barbie,'' Mattel Inc.'s best-selling doll for the last 43 years.

``Bratz are the anti-Barbie,'' Malacrida said.

The Bratz favor low-rise glitter jeans, micro skirts and midriff-baring tops. Their bodies resemble those of teen girls, instead of Barbie's shape, which is rarely seen on a real woman. Their hair, eyes and skin reflect various ethnicities. Before Christmas, Sasha, Jade and Yasmin disappeared quickly from the shelves of the huge new Toys 'R Us (NYSE:TOY - news) store in New York City's Times Square, leaving blue-eyed blonde Cloe to fend for herself. The same thing happened at Wal-Mart (NYSE:WMT - news) and other toy retailers.

``If you look at Barbie, the scale is a girl about 5 feet, 11 inches tall,'' Larian said. ``Not every girl looks like that. You see all kinds of girls, all kinds of beauty, in every shape and color. We wanted to make dolls who look like real girls.''

Larian, a doting father of two boys and a girl, named one of the dolls Yasmin after his own daughter.

BEATING BARBIE

In December 2001, the Bratz did the unthinkable. In the crowded fashion doll category, they outsold Barbie, the perennial best seller for Mattel Inc. (NYSE:MAT - news), the largest publicly traded U.S.-based toymaker. The Bratz ranked No. 1, with about $8.5 million in sales, or 588,282 units sold at an average price of $14.41 each, for December alone, at retailers representing 65 percent of the U.S. market, according to NPD TRSTS, a report by The NPD Group, of Port Washington, New York.

``My reaction was, 'Oh my God, we beat Barbie,''' said Larian, whose company's sales were estimated at $100 million in 2001.

Tina Sederberg, a buyer for Target stores, recalled her first impression of the Bratz dolls at a Toy Fair 2001 preview.

``They were very different, very beautiful, fashion forward and a little bit edgy, which is what attracted girls to the line,'' she said, in an interview from Target Corp. (NYSE:TGT - news) headquarters in Minneapolis. ``We are very happy with current sales results.''

IS ``RAPUNZEL BARBIE'' READY TO RUMBLE?

Mattel, with fourth-quarter 2001 sales of $1.61 billion, dominated the fashion doll category's sales for all of 2001 ``with strong sales of Holiday Barbie and the Barbie VW Beetle,'' The NPD Group said in a report this week. ``Not far behind was MGA Entertainment's new introduction, the Bratz doll assortment, capturing third position in the overall dolls supercategory.''

At Toy Fair this year, Mattel showed ``Rapunzel Barbie'' in Caucasian and African-American versions with hair flowing past her feet, much like Rapunzel of the classic fairy-tale fame. The line's ``sold separately'' items include Ken, in a fairy-tale prince costume; an animated video, and a carriage drawn

EXHIBIT ___94___

PAGE ___1552___

Confidential - For Attorney's Eyes Only

MGA 0142776

by a horse with an exceptionally long, flowing (yes, brushable!) mane.

``Hair play is the No. 1 play category for girls,'' said Julia Jensen, Mattel's spokeswoman for Barbie.

CLUB CLOTHES AND A CAR

At Toy Fair 2002, MGA Entertainment showed a new version of the Bratz with Funk N' Glow clothes embedded with fiber-optics -- a fashion trend already seen on teen club dance floors. When you close the front of the jacket, the icon on the back lights up.

The Funk N' Glow line of dolls will be priced about $10 higher -- suggested retail is $24.99 -- than the original Bratz.

A Bratzmobile, which looks like a squared-off blue 1957 Cadillac with a built-in FM radio and a trunk that pops open, is part of this year's extended toy line. It will sell for about $34.99. A Stylin' Salon and Spa, with salon chairs upholstered in leopard print and a mauve tub on one side, and an aqua health-club juice bar on the other side, will sell for $49.99.

``We're building a brand,'' MGA spokesman Malacrida said.

Email this story - Most-emailed articles - Most-viewed articles

**Related News Categories:** US Market News

Search News   Help

Copyright © 2002 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service
Copyright © 2002 Reuters Limited. All rights reserved. Republication or redistribution of Reuters content is expressly prohibited without the prior written consent of Reuters. Reuters shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.
Questions or Comments?

EXHIBIT 94
PAGE 1553

Confidential - For Attorney's Eyes Only

MGA 0142777

**EXHIBIT   95**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  96**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER.**

**EXHIBIT   97**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

July 19, 2007

**VIA FACSIMILE AND U.S. MAIL**

Diana M. Torres, Esq.
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, California  90071

Re:   <u>Mattel, Inc. v. Bryant</u>

Dear Diana:

At the <u>Art Attacks v. MGA</u> trial, Isaac Larian testified that Carter Bryant's lawyer wrote a letter to MGA confirming that Bryant created Bratz drawings in 1998.  No such letter has ever been produced by MGA or Bryant in this case.  We request that you please produce the document immediately, if it exists - - it would obviously be discoverable.  In the alternative, please consider this a request to meet and confer within the next five days pursuant to Paragraph 5 of the Order for the Appointment of a Discovery Master.  If MGA refuses to produce the document, Mattel contemplates moving to enforce the Court's May 15, 2007 Order, to compel its production, and for sanctions.

I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

BDP:lak
cc:   Michael Page, Esq.

EXHIBIT __97__

PAGE __1560__

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2172300.1

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

<u>NEW YORK</u>
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

<u>LOS ANGELES</u>
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

<u>SAN FRANCISCO</u>
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

<u>SILICON VALLEY</u>
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   July 19, 2007

**NUMBER OF PAGES, INCLUDING COVER: 2**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Diana Torres, Esq.<br>**O'Melveny & Myers, LLP** | (213) 430-6000 | (213) 430-6407 |
| Michael H. Page, Esq.<br>**Keker & Van Nest, LLP** | (415) 391-5400 | (415) 397-7188 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   *Bryant v. Mattel*

**MESSAGE:**



07209/2172399.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Mia Albert/3rd Floor | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT ___97___

PAGE __1561__

07/19/2007 17:00 FAX  1213443310 9        QEUOH-LAO-2                          ☑001

```
                        *******************************
                        ***    MULTI TX/RX REPORT    ***
                        *******************************
    TX/RX NO           2883
    PGS.                2
    TX/RX INCOMPLETE

    TRANSACTION OK      -----
                        (1)   9414#07209#12134306407
                        (2)   9414#007209#14153977188
    ERROR INFORMATION
                        -----
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:     July 19, 2007

NUMBER OF PAGES, INCLUDING COVER: 2

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Diana Torres, Esq. **O'Melveny & Myers, LLP** | (213) 430-6000 | (213) 430-6407 |
| Michael H. Page, Esq. **Keker & Van Nest, LLP** | (415) 391-5400 | (415) 397-7188 |

FROM:     B. Dylan Proctor, Esq.

RE:     *Bryant v. Mattel*

MESSAGE:

EXHIBIT _____ 97

PAGE _____ 562

**EXHIBIT   98**

Received: 7/25/07 5:00PM· -> QUINN EMANUEL; Page 2
07/25/2007 16:42 FAX ☑002/002

O

## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

July 25, 2007

OUR FILE NUMBER
527436-4

WRITER'S DIRECT DIAL
(213) 430-6556

WRITER'S E-MAIL ADDRESS
dtorres@omm.com

**VIA FACSIMILE**

Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street - 10th Floor
Los Angeles, California 90017

Re:  *Mattel, Inc. v. Carter Bryant*

Dear Dylan:

We are in receipt of your letters concerning certain testimony of Mr. Larian, Mr. Ackerman and Mr. Kennedy at the *Art Attacks v. MGA* trial. With respect to the letter you reference, we know of no written communication from Mr. Bryant's attorney to MGA and therefore are unable to produce any such letter. With respect to the referenced transcripts and exhibits, the deadline for their production is, at the earliest, not until July 31, 2007, and therefore no conference of counsel in anticipation of a motion is appropriate at this time. If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Diana M. Torres
of O'MELVENY & MYERS LLP

DMT/mds
LA2:837780.1

cc: Michael Page, Esq.

EXHIBIT 98
PAGE 1503

Received:   7/25/07   4:59PM·                    -> QUINN EMANUEL;   Page 1
07/25/2007 16:42 FAX                                                      ☑001/002

# O'MELVENY & MYERS LLP

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407

## FAX TRANSMITTAL

| DATE: | | TOTAL NUMBER OF PAGES: |
|---|---|---|
| July 25, 2007 | | 2 |

| TO: | FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Dylan Proctor, Esq.<br>Quinn Emanuel Urquhart Oliver & Hedges, LLP | (213) 443-3100 | (213) 443-3000 |
| Michael Page, Esq.<br>Keker & Van Nest LLP | (415) 397-7188 | (415) 391-5400 |

| FROM: | RETURN FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Diana Torres | (213) 430-6407 | (213) 430-6556 |

## MESSAGE

JUL 25 '07 PM4:39

EXHIBIT _____ 98

PAGE _____ 1504

IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL OUR FAX DEPARTMENT AT (213) 430-6357.

| FILE NO.: | 527,436-04 | RETURN ORIGINAL TO: | Mila Sucgang |
|---|---|---|---|
| USER NO.: | 08350 | EXTENSION: | 6556 |
| RESPONSIBLE ATTY NAME: | Diana Torres | LOCATION: | 15th Floor |
| SPECIAL INSTRUCTIONS: | | | |

This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.

**EXHIBIT   99**

# quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

August 1, 2007

## VIA FACSIMILE AND U.S. MAIL

William J. Charron, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     Mattel, Inc. v. Bryant

Dear Bill:

I write further to our conversation yesterday regarding the sealed portions of the Art Attacks v. MGA Entertainment, Inc. trial testimony given on May 1, 2007 and May 2, 2007 by Isaac Larian, Patrick Kennedy and William Ackerman, and sealed exhibits from that case.

You stated that MGA is amenable to producing the sealed transcripts and exhibits at issue subject to the Protective Order in this case, assuming they are responsive to Mattel's requests, which we are supposed to discuss again tomorrow. These documents clearly are responsive. You agreed that the transcripts of Isaac Larian's testimony are responsive to Request No. 38 from Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA dated March 14, 2005, which seeks "All transcripts . . . of statements made by YOU under oath, including without limitation all . . . trial transcripts . . . that REFER OR RELATE TO BRATZ." Moreover, as MGA's expert, the testimony of Mr. Ackerman also falls within the scope of the foregoing request, to which MGA has been compelled to produce responsive documents. The term "YOU" in the Request includes not only MGA and its officers, such as Mr. Larian, but also "any of its current or former . . . agents, representatives, . . . and any other PERSON acting on its behalf, pursuant to its authority or subject to its control."

Moreover, the transcripts of testimony of both Messrs. Kennedy and Ackerman are also responsive to a number of other Mattel requests regarding MGA's finances, revenues, costs and profits. Many such requests are set forth in my prior letter. For each difference, however, I

99

EXHIBIT
PAGE 1505

quinn emanuel urquhart oliver & hedges, llp

07209/2182162.2

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

suggest you look specifically at Mattel's First Set of Requests for Documents and Things Re Claims of Unfair Competition to MGA, dated December 18, 2006, Nos. 28, 29 & 30, and Mattel's Second Set of Requests for Documents and Things to MGA, dated June 6, 2007, Nos. 5-7, 20, 22-24, 37-39, 44 and 45.  Request No. 44, for example, seeks "All DOCUMENTS that REFER OR RELATE TO the value of the Bratz brand."  Request No. 37 seeks "DOCUMENTS sufficient to show the revenue and profits derived by YOU from the sale by YOU or YOUR licensees of BRATZ PRODUCTS including, without limitation, DOCUMENTS sufficient to show sales revenue, cost of goods sold, variable costs, gross margins, royalties paid and received, gross profits and net profits."  Request No. 28 seeks "All DOCUMENTS RELATING TO revenues received by YOU in connection with each of the CONTESTED MGA PRODUCTS [which includes Bratz and all other MGA products at issue]."  The testimony of Messrs. Kennedy and Ackerman is responsive to all of these requests, and others.

Accordingly, assuming MGA will not dispute that the transcripts are responsive, the only outstanding question is whether MGA will simply produce them or whether the parties will need to seek relief from Judge Brewster.  On that point, I have enclosed herewith the Art Attacks sealing orders of which we are aware for your reference.  As we discussed, if based on these orders MGA believes it needs to seek relief from Judge Brewster before it produces the sealed transcripts or documents in this case, we can prepare a stipulation for relief from the sealing orders for the parties to submit to Judge Brewster, which you confirmed MGA would be willing to sign.

On a separate issue, we also discussed the letter from Carter Bryant's lawyer to MGA confirming that Bryant created Bratz drawings in 1998 that Isaac Larian testified about at the Art Attacks v. MGA trial.  You confirmed that, after double-checking, MGA does not possess any such document, and that is why it has not been produced.  Thank you for providing that confirmation.

I look forward to speaking with you tomorrow.

Very truly yours,

B. Dylan Proctor

Enclosures
07209/2182162.2

07209/2182162.2                    2

EXHIBIT _____ 99

PAGE _____ 1566



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ART ATTACKS INK, LLC a
California limited liability company,

Plaintiff,

v.

MGA ENTERTAINMENT, INC., a
California corporation, Isaac Larian,
an individual, and DOES 1 through
200, inclusive,

Defendants.

Case No. 04 CV 1035 B (BLM)

**ORDER RE: UNSEALING OF TRIAL
TRANSCRIPT AND TRIAL EXHIBITS
FOR LIMITED PURPOSE**

Trial Dates:  April 23, 2007-May 4, 2007

[Hon. Rudi M. Brewster]

LA2:830564.1

- 1 -

ORDER RE: UNSEALING OF TRIAL
TRANSCRIPTS AND TRIAL EXHIBITS

EXHIBIT _____ 99

PAGE _____ 1507

1      By this Order, the Court hereby permits the unsealing and disclosure of the sealed

2 transcripts of the trial testimony and sealed exhibits for the limited purpose of disclosure

3 to the parties in this action and counsel of record for such parties.  There shall be no

4 disclosure of the sealed trial transcripts or sealed trial exhibits to any other person other

5 than a party to this action or such party's counsel of record.

6

7      The parties and their counsel of record are prohibited from disclosing portions of

8 the trial transcript and trial exhibits which have been sealed to any other person other than

9 a party to this action or such party's counsel of record.

10

11      The parties and their counsel of record are as follows:

12      For Plaintiff Art Attacks Ink LLC:  Richard Clegg of Seltzer Caplan McMahon

13 Vitek; Douglas Grinnell of Epsten, Grinnell & Howell  and Amy Allemann and Michael

14 W. Quade of Quade and Associates.

15      For Defendants MGA Entertainment Inc. and Isaac Larian:  Patricia L Glaser of

16 Christiansen Miller Fink Jacobs Glasser Weil and Shapiro, Dale M Cendali of

17 O'Melveny and Myers and Edward P Swan, JR of Luce Forward Hamilton and Scripps.

18

19

20 **IT IS SO ORDERED.**

21

22 Dated: May 4, 2007      By: _____

                                        Honorable Rudi M. Brewster,

23                                         U.S. Senior District Court Judge

24

25

26

27

28

LA2:830564.1                          - 2 -                      ORDER RE: SEALING OF
                                                   TRIAL TRANSCRIPT

EXHIBIT _____99_____

PAGE _____1568_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART ATTACKS INK, LLC a California limited liability company, | Case No. 04 CV 1035 B (BLM) |
| Plaintiff, | **ORDER RE: SEALING OF TRIAL TRANSCRIPT AND TRIAL EXHIBITS** |
| v. | |
| MGA ENTERTAINMENT, INC., a California corporation, Isaac Larian, an individual, and DOES 1 through 200, inclusive, | Trial Dates: April 23, 2007-May 4, 2007 |
| | [Hon. Rudi M. Brewster] |
| Defendants. | |

LA2:830564.1

- 1 -

ORDER RE: SEALING OF TRIAL
TRANSCRIPT AND TRIAL EXHIBITS

EXHIBIT _____ 99

PAGE _____ 1569

1    The Court hereby seals the transcripts of the trial testimony given on May 1, 2007,

2  including the testimony of Isaac Larian, Patrick Kennedy and William Ackerman which

3  relates to the confidential financial condition of Defendants Isaac Larian and/or MGA

4  Entertainment, Inc.

5

6    The Court hereby seals the following trial exhibits which relate to the confidential

7  financial condition of Defendants Isaac Larian and/or MGA Entertainment, Inc.: Exhibit

8  nos. 3052-3057, 3070, 2311-2313, 5087, 5253 and 5255. The information contained in

9  these exhibits is subject to the Protective Order in this litigation and has been designated

10  as attorney's eyes only.

11

12

13  **IT IS SO ORDERED.**

14

15  Dated: May 4, 2007                    By: _____

                                                 Honorable Rudi M. Brewster,
                                                 U.S. Senior District Court Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:830564.1

- 2 -

ORDER RE: SEALING OF
TRIAL TRANSCRIPT

EXHIBIT _____ 99

PAGE _____ 1570

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   ART ATTACKS INK, LLC a                Case No. 04 CV 1035 B (BLM)
     California limited liability company,
12                                         **ORDER RE: SEALING OF TRIAL**
                      Plaintiff,           **TRANSCRIPT AND TRIAL**
13                                         **EXHIBITS**
              v.
14
     MGA ENTERTAINMENT, INC., a
15   California corporation, Isaac         Trial Dates:  April 23, 2007-May 4, 2007
     Larian, an individual, and DOES 1
16   through 200, inclusive,
17                    Defendants.          [Hon. Rudi M. Brewster]
18
19
20
21
22
23
24
25
26
27
28
                                           ORDER RE: SEALING OF TRIAL TRANSCRIPT AND
                                                          TRIAL EXHIBITS

495816.1

EXHIBIT _____ 9a

PAGE _____ 1571

1        The Court hereby seals the transcripts of the trial testimony given on May 2,

2    2007, including the testimony of Patrick Kennedy and William Ackerman which

3    relates to the confidential financial condition of Defendants Isaac Larian and/or

4    MGA Entertainment, Inc.

5

6        The Court hereby seals the following trial exhibits which related to the

7    confidential financial condition of Defendants Isaac Larian and/or MGA

8    Entertainment, Inc.: Exhibit nos. 3052-3057, 3070, 2311-2313, 5087, 5253 and

9    5255. The information contained in these exhibits is subject to the Protective Order

10   in this litigation and has been designated as attorney's eyes only.

11

12

13   **IT IS SO ORDERED.**

14

15

16   Dated: May 7, 2007         By: _____

17                                 Honorable Rudi M. Brewster,

18                                 U.S. Senior District Court Judge

19

20

21

22

23

24

25

26

27

28

04 CV 1035 B (BLM)

495816.1

EXHIBIT _____99_____

PAGE _____1572_____

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   August 1, 2007          **NUMBER OF PAGES, INCLUDING COVER:** 9

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| William J. Charron, Esq.<br>O'Melveny & Myers LLP | 310-246-8462 | 310-246-6779 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   *Mattel, Inc. v. Bryant*

**MESSAGE:** PLEASE SEE ATTACHED

07209/2166768.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Charlene Ho/4th Floor | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ NO   ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ 99

PAGE _____ 1573

TRANSMISSION VERIFICATION REPORT

```
TIME   : 08/01/2007 19:56
NAME   : JOHN B QUINN
FAX    : 2134890000
TEL    : 2134433201
SER.#  : BROE5J272067
```

```
DATE,TIME           08/01  19:54
FAX NO./NAME        13102466779
DURATION            00:01:47
PAGE(S)             09
RESULT              OK
MODE                STANDARD
                    ECM
```

EXHIBIT ___99___

PAGE ___1574___

**EXHIBIT   100**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**