**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

ALONZO WICKERS IV (State Bar No. 169454)
    alonzowickers@dwt.com
ROBYN ARONSON (State Bar No. 228613)
    robynaronson@dwt.com

Attorneys for Non-Party Journalist
CHRIS PALMERI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. **CV 04-9049 SGL (RNBx)**<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**NON-PARTY JOURNALIST CHRIS PALMERI'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO DISCOVERY MASTER'S 02/26/08 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI; REQUEST FOR ATTORNEYS' FEES OF $9,785; DECLARATIONS OF CHRIS PALMERI AND ROBYN ARONSON WITH EXHIBITS A-B**<br><br>Date:          April 7, 2008<br>Time:          10:00 a.m.<br>Courtroom:  1<br><br>[Proposed] Order Lodged Concurrently] |

Non-party journalist Chris Palmeri, a reporter for *BusinessWeek*, respectfully submits this Opposition to Mattel's Motion Objecting to Discovery Master's February 26, 2008 Order Denying Motion to Compel Deposition of Christopher Palmeri ("Motion").

# TABLE OF CONTENTS

Page

1. INTRODUCTION ......................................................................... 1

2. STANDARD OF REVIEW ............................................................ 3

3. THE DISCOVERY MASTER'S ORDER SHOULD NOT BE DISTURBED. .............................................................................. 4

   A. Mattel Again Relies On Out-Of-Circuit Authorities That Are Inconsistent With The Ninth Circuit's View Of The Reporter's Privilege. ............................................................................... 4

   B. Contrary To Mattel's Argument, The Source Of The Statement At Issue Is Unpublished Information. ........................................... 5

   C. Even Assuming, For The Sake Of Argument, That The Source Of The Statement Were "Published" Information, Mattel's Subpoena Still Would Implicate Mr. Palmeri's First Amendment Reporter's Privilege. ............................................................................... 6

   D. The Discovery Master Correctly Held That Mattel Could Not Satisfy Any, Let Alone All Three, Of The *Shoen II* Factors. .............. 9

      1. Mr. Palmeri's Testimony Is Not Clearly Relevant To An Important Issue. ..................................................... 10

      2. The Information That Mattel Seeks Would Be Cumulative. ................................................................... 13

      3. Mattel Has Not Exhausted Alternative Sources. ............. 14

4. THE CALIFORNIA STATE SHIELD LAW PROVIDES AN INDEPENDENT BASIS FOR DENYING MATTEL'S MOTION. ........... 16

   A. The State Shield Law Applies In This Action. ........................... 17

   B. The Shield Law Broadly Protects Non-Party Reporters Like Mr. Palmeri. .............................................................................. 19

   C. The Shield Law Absolutely Protects Non-Party Reporters From Being Compelled To Testify About Unpublished Information In Civil Cases. ........................................................................... 21

   D. Mattel Cannot Overcome Mr. Palmeri's Shield Law Protections. ...... 23

5. THE COURT SHOULD AWARD MR. PALMERI ATTORNEYS' FEES. .................................................................................... 24

6. CONCLUSION ......................................................................... 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

## Cases

*Baker v. F & F Investment,*
   470 F.2d 778 (2d Cir. 1972) ............................................................15

*Bhan v. NME Hospitals, Inc.,*
   929 F.2d 1404 (9th Cir. 1991) ..........................................................4

*Branzburg v. Hayes,*
   408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972) ...................9

*Brinton v. Dunn,*
   919 F. Supp. 240 (S.D. Miss. 1996) .................................................6

*Carushka, Inc. v. Premiere Products, Inc.,*
   1989 WL 253565 (C.D. Cal. Sept. 1, 1989) ...........................14, 18

*Concerned Citizens of Belle Haven v. The Belle Haven Club,*
   2004 WL 3246719 (D. Conn. March 22, 2004) ..............................12

*De La Paz v. Henry's Diner, Inc.,*
   946 F. Supp. 484 (N.D. Tex. 1996) ..............................................5, 7

*Dillon v. City and County of San Francisco,*
   748 F. Supp. 722 (N.D. Cal. 1990) ..................................................6

*In re Application of Nat'l Broadcasting Co.,*
   79 F.3d 346 (2d Cir. 1996) ............................................................17

*In re Behar,*
   779 F. Supp. 273 (C.D. Cal.& S.D.N.Y. 1991) ...............10, 13, 14

*In re Jack Howard,*
   136 Cal. App. 2d 816, 289 P.2d 537 (1955) ...........................23, 24

*In re Maykuth,*
   2006 WL 724241 (E.D. Pa. 2006) ...................................................7

*In re Stratosphere Corp. Securities Litigation,*
   183 F.R.D. 684 (D. Nev. 1999) .....................................................18

*In re Vmark Software,*
   1998 WL 42252 (E.D. Pa. 1998) .................................................1, 7

*Los Angeles Mem. Coliseum Comm'n v. NFL,*
   89 F.R.D. 489 (C.D. Cal. 1981) ..............................................18, 21

*McCarty v. Bankers Ins.,*
   195 F.R.D. 39 (N.D. Fla. 1998) ..................................................2, 9

*McGarry v. Univ. of San Diego,*
   154 Cal. App. 4th 97, 64 Cal. Rptr. 3d 467 (2007) ......................21

*McKevitt v. Pallasch,*
   339 F.3d 530 (7th Cir. 2003) ...........................................................4

*Miami Herald Publ. Co. v. Morejon,*
   529 So. 2d 1204 (Fla. App. 1988) ...................................................5

*Miller v. Superior Court,*
   21 Cal. 4th 883, 986 P.2d 170 (1999) .......................19, 21, 22, 23

ii

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Mitchell v. Superior Court,*
   37 Cal. 3d 268, 690 P.2d 625 (1984) .................................................................21

*Moreno v. Baca,*
   2007 WL 809678 (C.D. Cal. 2007) .....................................................................3

*Nat'l Labor Relations Board v. Mortenson,*
   701 F. Supp. 244 (D.D.C. 1988) ...............................................................1, 7, 8

*New York Times v. Superior Court,*
   51 Cal. 3d 453, 796 P.2d 811 (1990) ..........................................................21, 22

*Parsons v. Watson,*
   778 F. Supp. 214 (D. Del. 1991) ........................................................................8

*People v. Cooper,*
   53 Cal. 3d 771, 281 Cal. Rptr. 90 (1991) ..........................................................21

*Playboy Enterprises v. Superior Court,*
   154 Cal. App. 3d 14, 201 Cal. Rptr. 207 (1984) .............................20, 22, 23, 24

*RE/MAX Int'l, Inc. v. Century 21 Real Estate Corp.,*
   846 F. Supp. 910 (D. Colo. 1994) .............................................................8, 12, 14

*SEC v. Seahawk Deep Ocean Technology,*
   166 F.R.D. 268 (D. Conn. 1996) ...............................................................1, 7, 8

*Shaklee Corp. v. Gunnell,*
   110 F.R.D. 190 (N.D. Cal. 1986) ......................................................................17

*Shoen v. Shoen ("Shoen I"),*
   5 F.3d 1289 (9th Cir. 1993) .......................................................................passim

*Shoen v. Shoen ("Shoen II"),*
   48 F.3d 412 (9th Cir. 1995) .......................................................................passim

*Silkwood v. Kerr-McGee Corp.,*
   563 F.2d 433 (10th Cir. 1977) ...........................................................................8

*Steaks Unlimited, Inc. v. Deaner,*
   623 F.2d 264 (3d Cir. 1980) .............................................................................17

*U.S. v. Burke,*
   700 F.2d 70 (2d Cir. 1983) ...............................................................................12

*U.S. v. Schneider,*
   2003 U.S. Dist. LEXIS 27324 (N.D. Cal. Nov. 18, 2003) ................................13

*United States v. Blanton,*
   534 F. Supp. 295 (S.D. Fla. 1982) ...............................................................8, 10

*Wright v. Fred Hutchinson Cancer Research Center,*
   206 F.R.D. 679 (W.D. Wash. 2002) ..................................................................25

*Zerilli v. Smith,*
   656 F.2d 705 (D.C. Cir. 1981) ..........................................................................15

**Statutes**

California Evidence Code § 1070 .............................................................................19

**Other Authorities**

Murphy, K., "Appealing for a Privilege," *The News Media and the Law,* v.27,
   n.4, p.15 (Fall 2003) ..........................................................................................4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Rules**

Federal Rule of Civil Procedure 37(a)(5)(B) .................................................................24

Federal Rule of Civil Procedure 72(a) .........................................................................4

**Constitutional Provisions**

California Constitution, Article I, § 2(b).........................................................20, 21, 22

OPPOSITION
LAX 616767v2 3930059-000040

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.

## INTRODUCTION

To prevail on its Motion, Mattel must demonstrate that the Discovery Master's Order was "clearly erroneous" or "contrary to law." Motion at 6:11. This is an onerous burden, which Mattel cannot come close to meeting.

Mattel first argues that the Discovery Master should not have undertaken the reporter's-privilege analysis at all, on the grounds that the information that it seeks from Mr. Palmeri supposedly is "published." *See* Motion at 6-12. But that information – specifically, the source of the information conveyed in the sentence "[Larian] should know:  He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" – is *not* published for purposes of the reporter's privilege. *See* Ex. A (07/18/03 Article).  Indeed, nothing within the four corners of the *BusinessWeek* article reveals whether Mr. Palmeri obtained this information about the origin of the Bratz dolls from Mr. Larian, from others at MGA, from toy-industry analysts, from earlier articles about the dolls, or from some other source. *Id.  See* Section 3(B), *infra*.

But even assuming, solely for the sake of argument, that the information were published, the First Amendment reporter's privilege still would be implicated, as the Discovery Master recognized and as decisions cited by Mattel confirm. *See, e.g., SEC v. Seahawk Deep Ocean Technology*, 166 F.R.D. 268, 269 (D. Conn. 1996) (applying three-part reporter's-privilege test where litigant moved to compel reporter to verify published statement specifically attributed to source); *Nat'l Labor Relations Board v. Mortenson*, 701 F. Supp. 244, 247 (D.D.C. 1988) (same); *In re Vmark Software*, 1998 WL 42252, *2 (E.D. Pa. 1998) (same).  In fact, "the federal courts … have overwhelmingly recognized a qualified privilege for journalists which allows them to resist compelled disclosure of their professional news gathering efforts and

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

results, *whether published or not.*" *McCarty v. Bankers Ins.*, 195 F.R.D. 39, 44 (N.D. Fla. 1998) (emphasis added). *See* Section 3(C), *infra*.

Regardless of whether the information is deemed to be published or unpublished, the Discovery Master thus properly evaluated Mr. Palmeri's federal constitutional privilege under the controlling test announced in *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II*"). Under that test, Mattel bore the burden of demonstrating that Mr. Palmeri's testimony would be "clearly relevant to an important issue in the case," that it would be "non-cumulative," and that it was "unavailable despite exhaustion of all reasonable alternative sources." *Id.* As the Discovery Master found, Mattel did not satisfy any – much less all three – of those elements. *See* Niborski Supp. Decl., Ex. 1 (02/26/08 Order) at 4-6.

The Discovery Master's Order was correct as to each element. On the relevance prong, the Discovery Master emphasized that the central issue in this lawsuit is not what Mr. Larian did or did not tell Mr. Palmeri, but whether Carter Bryant created the Bratz dolls while he was employed by Mattel. *Id.* at 4. The statement at issue simply does not illuminate this issue. In the proceedings before Judge Infante, Mattel claimed that Mr. Palmeri's deposition was necessary to determine whether Mr. Larian "made inconsistent statements concerning the origins of Bratz" (Mattel's 01/14/08 Motion to Compel ("Motion to Compel")) at 2) – in other words, for impeachment. As the Discovery Master recognized, however, such a purpose does not meet the standard of materiality necessary to overcome the reporter's privilege. Supp. Decl. Ex. 1 at 4-5. *See* Section 3(D)(1), *infra*.

As to the second element of the *Shoen II* test, Mattel admits that a former *Wall Street Journal* reporter and a *Chicago Sun-Times* reporter voluntarily have testified about "statements attributed to Larian regarding the origins of Bratz which were inconsistent with Larian's, MGA's and Bryant's subsequent claims in this case." Motion to Compel at 4; *see also* Niborski Decl. at ¶¶ 9-10, Exs. 8-9. That is why the Discovery Master held that "[a]ny testimony that Palmeri might provide on the same

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

subject would be cumulative[.]" Supp. Decl. Ex. 1 at 5.  And that holding applies with even greater force now, because Mattel has deposed yet another former journalist who reported on Bratz dolls.  Aronson Decl. at ¶ 2.  *See* Section 3(D)(2), *infra*.

With respect to the exhaustion requirement, the Discovery Master accurately concluded that "the information Mattel seeks from Palmeri is clearly available from another source," since Mattel has not yet "exhaust[ed] Larian's recollection of his communications with Palmeri," nor has Mattel "claim[ed] to have questioned or deposed" other witnesses to Mr. Larian's statements about the creation of the dolls.  Supp. Decl. Ex. 1. at 6.  Having failed to ask Mr. Larian whether he made the statement at issue to Mr. Palmeri, and having failed to ask other witnesses whether Mr. Larian made similar statements to them, Mattel plainly has not exhausted alternative sources.  *See* Section 3(D)(3), *infra*.  Because Mattel did not satisfy any of the three *Shoen II* requirements, the Discovery Master correctly denied the Motion to Compel.

Finally, Mattel continues to ignore Mr. Palmeri's rights under California's state constitutional shield law.  Although the Discovery Master did not consider the shield law because he concluded that the federal reporter's privilege was dispositive, this state constitutional protection provides an alternative basis for affirming the Master's Order.  *See* Section 4, *infra*.

For all of these reasons, the Court should deny Mattel's Motion and award Mr. Palmeri $9,785 in attorneys' fees incurred in opposing this Motion.  *See* Section 5, *infra*.

## 2.

## STANDARD OF REVIEW

It is well settled that "a magistrate judge's resolution of pretrial matters is entitled to *substantial deference*."  *Moreno v. Baca*, 2007 WL 809678, *1 (C.D. Cal. 2007) (emphasis in original).  Indeed, even Mattel concedes that the Court must deny

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

this Motion unless Mattel demonstrates that Judge Infante's order was "clearly erroneous or contrary to law." Motion at 6:11. *See also* Fed. R. Civ. P. 72(a); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991). As set forth below, Mattel cannot meet this heavy burden.

### 3.

## THE DISCOVERY MASTER'S ORDER SHOULD NOT BE DISTURBED.

**A.** **Mattel Again Relies On Out-Of-Circuit Authorities That Are Inconsistent With The Ninth Circuit's View Of The Reporter's Privilege.**

In the proceedings before Judge Infante, Mattel relied heavily on *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003), where the Seventh Circuit refused to recognize a First Amendment reporter's privilege. *See* Motion to Compel at 7-9, 14. But nowhere in the Motion to Compel did Mattel acknowledge that the Seventh Circuit's rejection of *any* First Amendment privilege – which one commentator described as "the most radical view of a constitutionally based reporter's privilege by any federal circuit in the country"[1] – is squarely at odds with the Ninth Circuit's expansive view of the privilege. *Compare McKevitt*, 339 F. 3d at 535 *with Shoen v. Shoen*, 5 F.3d 1289, 1293, 1295 (9th Cir. 1993) ("*Shoen I*") and *Shoen II*, 48 F.3d at 416. Instead, Mattel cited *McKevitt* on four separate occasions to suggest that the privilege does not apply to non-confidential information acquired in the course of newsgathering (*see* Motion to Compel at 7-9, 14), even though the Ninth Circuit specifically held to the contrary in *Shoen I* and *Shoen II*. *See Shoen I*, 5 F.3d at 1293; *Shoen II*, 48 F.3d at 416.

While Mattel has abandoned its reliance on *McKevitt*, it continues to cite decisions from courts that have interpreted the privilege much more narrowly than the Ninth Circuit. For example, Mattel again cites case law from within the Fifth

---

[1] K. Murphy, "Appealing for a Privilege," *The News Media and the Law*, v.27, n.4, p.15 (Fall 2003).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Circuit to argue that the privilege is limited to confidential materials. *See* Motion at 6:25-27. As Mr. Palmeri pointed out in his earlier opposition, however, the Fifth Circuit recognizes a narrow reporter's privilege that protects only the identities of confidential informants, in contrast to the Ninth Circuit's broad privilege that indisputably extends to non-confidential information. *Compare De La Paz v. Henry's Diner, Inc.*, 946 F. Supp. 484, 485 (N.D. Tex. 1996) ("the Fifth Circuit has never extended the qualified journalist's privilege beyond the compelled disclosure of the confidential informant's identity") *with Shoen I*, 5 F.3d at 1293 (expressly holding that privilege extends to non-confidential information). And Mattel devotes half a page of its Motion to discussing *Miami Herald Publ. Co. v. Morejon*, 529 So. 2d 1204, 1207 (Fla. App. 1988), without revealing that the state court in that case limited the privilege to confidential source information – a decision that also is completely inconsistent with Ninth Circuit law. Mattel's reliance on these decisions underscores the absence of relevant authority supporting its position.

**B.      Contrary To Mattel's Argument, The Source Of The Statement At Issue Is Unpublished Information.**

Mattel insists that the source of the statement at issue – "[Larian] should know: He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" – is "published information" for purposes of the reporter's privilege. *See* Motion at 9:21-12:10. Tellingly, Mattel fails to cite reporter's-privilege decisions to support this argument. Instead, Mattel cites seven *defamation* decisions that affirm the unremarkable proposition that a court must interpret an allegedly defamatory statement "from the standpoint of the average reader," and "within the context in which [the statement] is made." *Id.* at 11:6-8. *But none of these seven decisions addresses the reporter's privilege, much less the meaning of "unpublished information."* Those decisions thus are irrelevant, and do not remotely assist Mattel in meeting its burden to show that the Discovery Master's order was clearly erroneous.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

A review of the article highlights the flaw in Mattel's argument. Mattel claims that the unattributed statement about the supposed inspiration for Bratz must have come directly from Mr. Larian because the "statement follows immediately from a direct quote of [Mr.] Larian." Motion at 10:14-15. Mattel's logic is faulty; the mere fact that an unattributed statement follows a sentence that contains an attributed quotation does not mean that the unattributed statement necessarily was made by the individual quoted in the previous sentence. As Mr. Palmeri explained in his earlier opposition, the statement about the origin of Bratz could have come from Mr. Palmeri's or a researcher's independent fact-gathering, from an MGA press release, from a company publicist, from another published work about the dolls, or even from a conversation that Mr. Palmeri overheard in a hallway. Under these circumstances, Mattel cannot show that any finding by the Discovery Master that the information was "unpublished" was clearly erroneous or contrary to law.

**C.     Even Assuming, For The Sake Of Argument, That The Source Of The Statement Were "Published" Information, Mattel's Subpoena Still Would Implicate Mr. Palmeri's First Amendment Reporter's Privilege.**

Mattel also asserts – again without authority – that the reporter's privilege applies only to unpublished information. *See* Motion at 6:12-9:19. But Mattel fails to cite any Ninth Circuit decision where the court limited the privilege to unpublished information. Nor could Mattel do so, because the Ninth Circuit has not reached that conclusion. To support its theory, Mattel cites two inapposite cases: *Dillon v. City and County of San Francisco*, 748 F. Supp. 722 (N.D. Cal. 1990), and *Brinton v. Dunn*, 919 F. Supp. 240 (S.D. Miss. 1996). *Dillon* was decided three years *before* the Ninth Circuit extended the reporter's privilege to non-confidential information in *Shoen I,* and thus has no precedential value to the extent that it suggests that the privilege is limited to confidential information. 748 F. Supp. at 726. And *Brinton* was decided by a district court within the Fifth Circuit, which never has extended the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

privilege beyond the identities of confidential sources. *See De La Paz*, 946 F. Supp. at 485.

Even more conspicuously, Mattel's theory that the privilege applies only to unpublished information is contradicted by several cases that Mattel cites in its own briefs. In *Seahawk Deep Ocean Technology*, the SEC sought to compel a reporter to testify about a statement that was published in an article appearing under the reporter's byline. 166 F.R.D. at 269. Although the statement at issue in *Seahawk* was published – and, unlike the statement at issue in this case, *was specifically attributed to an individual* – the court nonetheless went through the Second Circuit's three-part test for determining whether the SEC could overcome the reporter's privilege. *Id.* at 269-270. In *NLRB*, the court likewise held that the qualified First Amendment privilege is implicated when a litigant demands that a reporter verify published statements. 701 F. Supp. at 247. The court explained that "[r]egardless of whether [the subpoenaing parties] seek confidential or nonconfidential sources, or whether they seek disclosure *or verification of statements*, [they are] attempting to examine the reportorial and editorial processes. *The fact that their purpose is to support, rather than undermine, the bona fides of the statements as expressed by the reporters makes no difference. Such discovery necessarily implicates the First Amendment interests of the journalists.*" *Id.* (emphasis added). The courts in two other cases cited by Mattel reached the same conclusion, undertaking the relevant circuit's reporter's-privilege analysis where a litigant sought to compel a reporter to authenticate indisputably published statements. *In re Maykuth*, 2006 WL 724241, *2 (E.D. Pa. 2006) (cited in Motion to Compel at 6); *In re Vmark Software*, 1998 WL 42252 at *2.[2]

---

[2] Although the courts in *Seahawk* and *NLRB* ultimately held that the subpoenaing parties could overcome the reporters' privilege, the facts that informed those holdings are readily distinguishable from the present case. In those cases, there was no question whatsoever as to the source of the statements at issue. Moreover, those sources already had been questioned about the statements, and specifically had denied having made them. And perhaps most importantly, the claims in those

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

As even Mattel's cases confirm, the reporter's privilege applies to *all* information generated during the newsgathering process, and extends to situations where a litigant insists that he seeks only to authenticate or to verify the contents of a journalist's published work. *See, e.g., Shoen II*, 48 F.3d at 416 (finding qualified privilege protected against disclosure of information regarding conversations between book author and libel defendant). Courts have recognized this rule in numerous cases, and have refused to compel reporters to testify for the purpose of verifying published statements. In *RE/MAX Int'l, Inc. v. Century 21 Real Estate Corp.*, 846 F. Supp. 910 (D. Colo. 1994), for example, the plaintiff subpoenaed a newspaper reporter regarding a series of articles that was based on an interview that the reporter conducted with the president of the defendant-company. The plaintiff stated that it sought the reporter's testimony "solely to authenticate [the president's] statements set forth in the articles." *Id.* at 912. Applying the Tenth Circuit's formulation of the reporter's privilege, which is similar to the Ninth Circuit's (*see Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 437 (10th Cir. 1977)), the district court quashed the subpoena. 846 F. Supp. at 912. Similarly, in *Parsons v. Watson*, 778 F. Supp. 214 (D. Del. 1991), the plaintiff subpoenaed a journalist who attributed certain remarks to the plaintiff in a newspaper article. Claiming that he had been misquoted, the plaintiff sought testimony from the reporter to determine whether "the contents of certain statements quote[d] in the article, or the identity of the speakers, is reflected accurately in the article." *Id.* at 215. The court found that the qualified privilege applied, and quashed the subpoena. *See also United States v. Blanton*, 534

government enforcement actions rested in large part on the defendants' attributed statements that appeared in the reporters' articles. *Seahawk*, 166 F.R.D. at 269-270 (securities action arising from defendant's statements to media allegedly designed to depress stock price); *NLRB*, 701 F. Supp. at 249-250 (action based on allegedly pretextual statements made by union leadership). In contrast, the statement at issue here is not attributed to any individual (Ex. A); it has, at best, a tenuous connection to the subject matter of this lawsuit; and although Mattel deposed Mr. Larian, it did not even bother to ask him whether he made the statement at issue in this Motion (Motion at 15-16).

8

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

F. Supp. 295, 297 (S.D. Fla. 1982) (quashing subpoena on the basis of qualified privilege where the reporter was asked to verify statements attributed in article to criminal defendant); *McCarty*, 195 F.R.D. at 44 ("the federal courts ... have overwhelmingly recognized a qualified privilege for journalists which allows them to resist compelled disclosure of their professional news gathering efforts and results, *whether published or not*"; granting reporter's motion to quash subpoena) (emphasis added).

Thus, regardless of whether the source of the statement at issue is deemed to be published or unpublished information, the Discovery Master properly concluded that Mattel would have to satisfy the three-part test from *Shoen II* before it could overcome Mr. Palmeri's federal constitutional reporter's privilege.

**D.** **The Discovery Master Correctly Held That Mattel Could Not Satisfy Any, Let Alone All Three, Of The *Shoen II* Factors.**

Under controlling Ninth Circuit law, the First Amendment protects non-party journalists against being compelled to disclose information that they acquire in the course of their newsgathering. *Shoen I*, 5 F.3d at 1293; *Shoen II*, 48 F.3d at 416. The United States Supreme Court laid the foundation for this federal constitutional reporter's privilege in *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972), when it noted that "[w]ithout some protection for seeking out the news, freedom of the press could be eviscerated." In *Shoen I*, the Ninth Circuit joined eight other circuits in recognizing a federal constitutional reporter's privilege. 5 F.3d at 1293.

Subsequently, in *Shoen II*, the Ninth Circuit imposed an onerous burden on any civil litigant who seeks to compel the disclosure of information that a non-party reporter has acquired in the newsgathering process. To overcome the reporter's federal constitutional privilege, the litigant first must "show[] that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources;

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(2) non-cumulative; *and* (3) clearly relevant to an important issue in the case." *Shoen II*, 48 F.3d at 416 (emphasis added).

Contrary to Mattel's suggestion, confidentiality is *not* an element of the controlling Ninth Circuit test. In fact, the court in *Shoen II* declined to make confidentiality an element of the test, even though the subpoenaing litigant focused on the non-confidential nature of the information that he sought from the author. 48 F.2d at 416. *See also In re Behar,* 779 F. Supp. 273, 275-276 (C.D. Cal.& S.D.N.Y. 1991) ("[t]he qualified reporter's privilege, accorded under the United States Constitution, … protects non-confidential as well as confidential information); *Blanton,* 534 F. Supp. at 297 ("[a]lthough no confidential source or information" was implicated by the subpoena at issue, "this distinction is irrelevant to the chilling effect enforcement of the subpoena would have on the flow of information to the press and public").

In *Shoen II,* the Ninth Circuit also made clear that the reporter's privilege must be broadly construed to "ensure that compelled disclosure is the exception, not the rule." *Id.* As the Court observed, "if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished." *Id.* (citations omitted). In this case, the Discovery Master correctly found that Mattel could not show that the testimony was clearly relevant to an important issue, non-cumulative, and unavailable from another source.

### 1. Mr. Palmeri's Testimony Is Not Clearly Relevant To An Important Issue.

In analyzing this prong of the reporter's-privilege test, the Discovery Master evaluated whether the information sought from Mr. Palmeri "goes to the heart" of this lawsuit. *Shoen II,* 48 F.3d at 416. Mattel did not come close to meeting this standard. A review of the operative counterclaims demonstrates that Mattel's causes of action against Mr. Bryant turn on whether he created the Bratz dolls while he still was employed by Mattel. Niborski Decl. at ¶18, Ex. 15. As the Discovery Master

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

observed, whether or not Mr. Larian made any statement to Mr. Palmeri about Mr. Larian's children "run[ning] around in navel-baring tops and hip-huggers" simply is not relevant to that central issue. Supp. Decl. Ex. 1 at 4.

Nor can Mattel meet this "clearly relevant to an important issue" standard by claiming that Mr. Palmeri's testimony is necessary to determine "whether Mattel's claims accrued for purposes of the statute of limitations and laches in July 2003." Motion at 2:2-3. Regardless of whether Mr. Larian made the statement about Bratz dolls that is contained in Mr. Palmeri's article, the article itself is self-authenticating. And the very fact of the article's existence means that as of July 2003, this public account of the dolls' origin did not mention Mr. Bryant at all. Ex. A. The circumstances surrounding the creation of the article therefore are completely irrelevant for statute-of-limitations or laches purposes; the only possibly relevant fact is the publication of the article in July 2003. That fact is not in dispute, however, and does not require Mr. Palmeri's testimony.

Ultimately, Mattel's real purpose for attempting to compel Mr. Palmeri's testimony is to show that Mr. Larian "made inconsistent statements concerning the origins of Bratz." Motion to Compel at 2:25. But Mattel's desire for additional ammunition for impeachment here does not meet the high standard of relevance necessary to overcome the reporter's privilege. As the Discovery Master noted, even if Mr. Palmeri has information relevant to Mr. Larian's credibility, "a greater showing is required … to tip the balance of competing interests in favor of compelling disclosure of information protected by the journalist's privilege." Supp. Decl. Ex. 1.

*Shoen II* is on point. There, the Ninth Circuit considered whether a civil litigant could overcome a journalist's privilege where verification of the journalist's published statements "might provide valuable impeachment material." 48 F.3d at 413. The court concluded that "to the extent the requested materials would demonstrate that [a party] was less than candid during his deposition, they do not

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

relate to an important issue in this case." 48 F.3d at 412. *See also RE/MAX Int'l*, 846 F. Supp. at 912 (quashing subpoena where its primary purpose was to impeach a party's testimony); *Concerned Citizens of Belle Haven v. The Belle Haven Club*, 2004 WL 3246719, *2 (D. Conn. 2004) (quashing subpoena where its primary purpose was to impeach witness' testimony). This rule even has been applied to defeat a criminal defendant's subpoena to a reporter, even though the reporter's notes "may have been material and relevant inasmuch as they might have contradicted [a prosecution witness'] trial testimony." *U.S. v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983).

Significantly, while Mattel asserts that Mr. Larian was asked "about his statements to journalists" during his deposition, there is no indication that Mattel ever specifically asked him about any conversation that he may have had with Mr. Palmeri. *See* Motion at 15-16. Instead, Mattel apparently asked Mr. Larian only about his statements to the media in general. *Id. If Mr. Larian's statements to Mr. Palmeri were as central to Mattel's case as Mattel now contends, it is curious that Mattel did not even bother to ask about them at Mr. Larian's deposition.*

Neither Mattel's statute-of-limitations argument nor its impeachment argument is sufficient to satisfy the first prong of the *Shoen II* test. Put simply, the central issue in this lawsuit is not what Mr. Larian may or may not have told Mr. Palmeri, and none of the claims turn on any communications that may have taken place between Mr. Larian and Mr. Palmeri. Because Mattel cannot meet the relevance standard, the Discovery Master's Order should be upheld.[3]

---

[3] Mattel has retreated from its original argument that Mr. Palmeri's testimony was relevant for impeachment purposes, and now asserts that his testimony "is relevant to Mattel's allegations that MGA deliberately and intentionally concealed 'Bryant's role in Bratz by falsely claiming that Larian and others were the creators of Bratz.'" Motion at 14. Even if the Court were to consider Mattel's new argument, the statement at issue bears at most a tenuous relationship to this "guilty mind" theory. Moreover, Mattel already has deposed other reporters who have testified about varying statements that Mr. Larian made regarding the origin of Bratz dolls. As discussed below, any such testimony from Mr. Palmeri would be impermissibly cumulative. *See* Section 3(D)(2), *infra*.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## 2. The Information That Mattel Seeks Would Be Cumulative.

"When testimony sought from a reporter would be cumulative of other evidence, it cannot be 'necessary or critical' to an action so as to override the First Amendment privilege." *In re Behar*, 779 F. Supp. at 275-276. *See also U.S. v. Schneider*, 2003 U.S. Dist. LEXIS 27324, *18-*20 (N.D. Cal. 2003) (quashing subpoena where reporters' testimony would be cumulative of other sources).

In its Motion, Mattel misapprehends the meaning of cumulativeness for purposes of the reporter's privilege. Mattel insists that Mr. Palmeri's testimony would not be cumulative because no one else has testified about any communications between Mr. Palmeri and Mr. Larian. Motion at 14-15. The issue is not whether other witnesses have testified about those specific communications, however, but whether any other witnesses have testified about the subject on which Mattel demands that Mr. Palmeri testify. The court underscored that point in *Schneider*, where it rejected the government's attempt to subpoena unaired video outtakes from television news reporters because similar information was available from other witnesses who had interacted with the defendant. 2003 U.S. Dist. LEXIS 27324 at *18-*20.

In its Motion to Compel, Mattel admitted that other witnesses already have testified on the single issue about which Mattel seeks to examine Mr. Palmeri: that is, Mr. Larian's supposedly conflicting public accounts of the origins of the Bratz dolls. Motion to Compel at 12-13; Niborski Decl. at ¶¶ 9-10, Exs. 8-9. Despite Mattel's protests to the contrary, "[t]he fact that Mattel has obtained testimony from two other reporters … which *clearly establishes that Larian has contradicted his sworn testimony on other occasions*" is indeed significant. Motion to Compel at 12-13 (emphasis added).[4] Any testimony that Mr. Palmeri might provide on this same

---

[4] In fact, Mr. Palmeri is informed and believes that since filing the Motion to Compel, Mattel has deposed yet another journalist who has testified about Mr. Larian's statements to the press concerning the origin of Bratz dolls. Aronson Decl. at ¶ 3.

13

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION
LAX 616767v2 3930059-000040

1  subject plainly would be cumulative. *See RE/MAX Int'l*, 846 F. Supp. at 910-912

2  (refusing to compel newspaper reporter to testify in civil lawsuit, where subpoenaing

3  party sought only impeachment evidence and "admit[ted] having some impeachment

4  evidence already in its possession").  For that reason alone, the Discovery Master's

5  Order should be affirmed.

### 3.    Mattel Has Not Exhausted Alternative Sources.

7        "Before a reporter's resources can be tapped by subpoena, the party seeking

8  the information must demonstrate that other available sources of the information

9  have been exhausted." *In re Behar*, 779 F. Supp. at 275.  As a preliminary matter,

10  the Ninth Circuit has made clear that a litigant cannot compel a non-party reporter to

11  testify about his communications with an opposing party unless and until the litigant

12  deposes the opposing party and specifically questions him about those

13  communications. *Shoen I*, 5 F.3d at 1295.  In fact, the Ninth Circuit refused to

14  compel the book author in *Shoen I* to testify precisely because the plaintiffs had not

15  deposed the defendant about statements that he allegedly made to the author. *Id.*

16  The court described the defendant as "an obvious alternative source for discovering

17  what he said to [the author] in their conversations." *Id.* at 1296.  Even though the

18  plaintiffs had served interrogatories asking the defendant about his communications

19  with the author – and even though the defendant responded that he "c[ould] not recall

20  the specific content of [his] various meetings or conversations" with the author – the

21  court found that the plaintiffs could not even remotely claim to have exhausted

22  alternative sources until they "plumb[ed] the depths" of the defendant's recollection

23  in deposition. *Id.* at 1297.  The fact that the defendant was a "hostile" witness was

24  immaterial. *Id. See also Carushka, Inc. v. Premiere Products, Inc.*, 1989 WL

25  253565, *2 (C.D. Cal. 1989) (quashing defendant's subpoena relating to reporter's

26  interview with plaintiff, where defendant had not sought information from plaintiff

27  herself).

28

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In this case, Mattel has not deposed Mr. Larian about any communications that he may have had with Mr. Palmeri.[5] As the Discovery Master stated in his Order, "Mattel cannot claim to have exhausted alternative sources unless and until Mattel deposes Larian and exhausts Larian's recollection of his communications with Palmeri." Supp. Decl. Ex. 1 at 6. Even though Mattel already has deposed Mr. Larian once, Mr. Palmeri is informed and believes that Mattel has obtained a court order approving an additional deposition, which would permit Mr. Larian to be deposed on the subject of his conversation with Mr. Palmeri. Under these circumstances, the Discovery Master properly found that Mattel had not met the exhaustion requirement.

But even if Mattel were to depose Mr. Larian on this topic, it still could not satisfy the third prong of the *Shoen II* test. In a passage that the Ninth Circuit cited with approval in *Shoen I*, the D.C. Circuit stressed that subpoenaing parties "cannot escape their obligation to exhaust alternative sources simply because they fear[] that deposing [other witnesses] would be time-consuming, costly, and unproductive." *Zerilli v. Smith*, 656 F.2d 705, 715 (D.C. Cir. 1981), *cited with approval in Shoen I*, 5 F.3d at 1297. Similarly, in *Baker v. F & F Investment*, 470 F.2d 778, 784 (2d Cir. 1972), the Second Circuit suggested that it would be reasonable to require the subpoenaing party to depose as many as 60 persons before permitting that party to compel testimony from a non-party journalist. As the Ninth Circuit has emphasized, "[c]ompelled disclosure from a journalist must be a *last resort after pursuit of other opportunities has failed.*" *Shoen I*, 5 F.3d at 1297 (emphasis added).

Mattel claims, without any evidentiary support, that Mr. Palmeri "is the only witness to a public statement by Mr. Larian." Motion at 3:26-27. Putting aside the

---

[5] Mr. Palmeri's counsel is unaware of the content of the portions of Mr. Larian's deposition transcript that Mattel has submitted with its Motion because that exhibit has been filed under seal. From Mattel's arguments, however, it appears that Mattel did not examine Mr. Larian about this subject. *See* Motion at 14.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

fact that Mr. Larian could be asked about this conversation, there clearly are other sources for this information as well. Testimony about Mr. Larian's statements regarding the origins of the Bratz dolls may be available from other witnesses, including co-workers, family members, investors, publicists, and industry analysts. Having failed to pursue these alternate avenues of inquiry, Mattel cannot turn to Mr. Palmeri on the eve of trial.[6]

In sum, Mattel did not, and cannot, carry its burden on any of the *Shoen II* factors, let alone on all three. The information sought does not go to the "heart" of the case; it would be cumulative of other witnesses' testimony; and Mattel has not exhausted other possible sources, including Mr. Larian himself. For each of these reasons, the Discovery Master properly found that Mattel could not overcome Mr. Palmeri's federal constitutional reporter's privilege. Mattel's Motion, therefore, should be denied.[7]

### 4. THE CALIFORNIA STATE SHIELD LAW PROVIDES AN INDEPENDENT BASIS FOR DENYING MATTEL'S MOTION.

Mattel flatly mischaracterizes the Discovery Master' Order when it states that he "did not find that California's state shield law applies." Motion at 6. Because the Discovery Master found that Mattel could not overcome Mr. Palmeri's federal constitutional reporter's privilege, he expressly declined to reach the issue of whether the state shield law also defeated the subpoena. Supp. Decl. Ex. 1 at 6 n. 2. If this

---

[6] Mattel's counsel has indicated that it plans to subpoena Mr. Palmeri for trial. If the Court denies this Motion and upholds the Discovery Master's Order, Mr. Palmeri respectfully requests that the Court bar Mattel from issuing him a trial subpoena without first obtaining leave of Court.

[7] There is no basis to Mattel's suggestion that this Court's order permitting further discovery in any way addresses, much less overrules, Mr. Palmeri's claim of privilege. *See* Motion at 5:3-9. Nowhere in the transcript of the hearing or in the Court's minute order is the question of the reporter's privilege discussed or ruled upon. Niborski Decl. at ¶¶11-13, Exs. 10-12 (Mattel's 11/19/07 Motion for Additional Interrogatories and Depositions; 1/7/08 Hearing Transcript; and 1/7/08 Minute Order).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Court were to find that the Discovery Master's analysis of the First Amendment reporter's privilege was clearly erroneous – which it was not – the California shield law would provide an alternative ground to affirm Judge Infante's denial of Mattel's motion.

## A. The State Shield Law Applies In This Action.

Although the shield law is found in the California Constitution, its application is not limited to litigation in state courts. Where a subpoena seeks evidence affecting only the state-law claims in a federal-court action, the state law of privilege applies. *See, e.g., Shaklee Corp. v. Gunnell*, 110 F.R.D. 190, 192 (N.D. Cal. 1986). Several other circuits also have recognized that state shield laws control state-law claims in federal court. For example, in *In re Application of Nat'l Broadcasting Co.*, 79 F.3d 346, 351 (2d Cir. 1996), which concerned a subpoena issued to a news organization in a case involving state-law claims, the Second Circuit analyzed the privilege issue under New York's state shield law alone. Similarly, in *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 279 (3d Cir. 1980), where the Third Circuit upheld the denial of a motion to compel a television station to produce outtakes, the court held that the state shield law applied to the action, and provided protection against disclosure.

Here, Mattel has claimed that the information sought from Mr. Palmeri "shows guilty knowledge by Larian and MGA that Bryant developed Bratz while an employee of Mattel, in violation of his employment agreement with Mattel," and that the information "bears directly on MGA's contention that Mattel had notice of Bryant's disloyalty prior to November 24, 2003." Motion to Compel at 3. In other words, this evidence relates to Mattel's claims for breach of contract, breach of fiduciary duty, and breach of duty of loyalty – all of which arise under state law.

Mattel's own Motion for Additional Interrogatories and Depositions confirms that Mr. Palmeri's anticipated testimony would relate to those state-law claims. There, Mattel groups Mr. Palmeri's testimony into a category of evidence separate from the category of evidence that supposedly would be relevant to Mattel's federal

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

RICO claims. *See* Niborski Decl. at ¶ 11, Ex. 10. This distinction between RICO evidence and other evidence is reflected in the Court's Minute Order, as well. Niborski Decl. at ¶ 13, Ex. 12. Since, based on Mattel's representations and this Court's minute order, Mr. Palmeri's testimony relates solely to state-law issues, he clearly benefits from the protections of the state constitutional shield law.

However, even if Mattel were to argue that the evidence it seeks from Mr. Palmeri would affect claims arising under federal law in this action (such as the RICO claims), the state shield law still would be relevant. Courts in this district have recognized that where state and federal causes of action are mixed, the court "should evaluate claims of privilege under *both* state and federal law." *Los Angeles Mem. Coliseum Comm'n v. NFL*, 89 F.R.D. 489, 492 (C.D. Cal. 1981) (emphasis added). In fact, "even in cases in which all claims are based exclusively on federal law, federal courts... have traditionally sought guidance from existing state law." *Id.* Courts in the Ninth Circuit thus will consider the state shield law and the qualified First Amendment privilege when a reporter is subpoenaed in federal court and the information requested relates to both federal and state claims. *Id.* at 494-495; *accord Carushka*, 1989 WL 253565 at *2.

*In re Stratosphere Corp. Securities Litigation*, 183 F.R.D. 684 (D. Nev. 1999), is instructive. That lawsuit arose from alleged violations of both federal securities law and state racketeering laws, based in part on the defendants' purportedly false and misleading statements to the press about the Stratosphere Hotel's financial condition. *Id.* at 685. At one point, a journalist wrote an article that included a sentence predicting the Stratosphere's gross revenues in the coming quarter. *Id.* After the defendants denied making any revenue projections to the public, the plaintiffs subpoenaed the journalist to determine the source of his information. *Id.* The court determined that both the state and federal privilege laws applied to the dispute, as the evidence requested related to both state and federal claims. *Id.* at 686. The court noted, however, that it would have looked to state law for guidance

OPPOSITION
LAX 616767v2 3930059-000040

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  even if only federal claims were involved, holding that a federal court should not

2  ignore state policy. *Id.* As the court found that Nevada's shield law provided

3  absolute protection for the journalist's unpublished information, the plaintiffs'

4  motion to compel was denied. *Id.* at 687.

5       In this case, Mattel alleges that Mr. Palmeri's testimony is relevant to the

6  issues of whether and when Mr. Bryant allegedly breached his employment contract

7  and duty of loyalty. Even accepting as true the contention that Mr. Palmeri's

8  testimony is relevant at all – which Mr. Palmeri vigorously disputes (*see* Section

9  3(D)(1), *supra*) – the evidence sought by Mattel relates principally to state-law

10  claims. Consequently, California's shield law applies, and provides Mr. Palmeri with

11  an absolute immunity, as described below in Sections 4(B)-4(D).

12  **B.**    **The Shield Law Broadly Protects Non-Party Reporters Like Mr. Palmeri.**

13       California's shield law effectively protects journalists who want to avoid

14  taking sides as witnesses in a courtroom, because allowing litigants to compel

15  testimony impairs reporters' ability to investigate and to disseminate information to

16  the public. The California Supreme Court has explained that:

17       A comprehensive reporter's immunity … has the effect of safeguarding

18       'the autonomy of the press.' [¶] The threat to press autonomy [from

19       subpoenas] is particularly clear in light of the press' unique role in

20       society. As the institution that gathers and disseminates information,

21       journalists often serve as the eyes and ears of the public. Because

22       journalists not only gather a great deal of information, but publicly

23       identify themselves as possessing it, they are especially prone to be

24       called upon by litigants seeking to minimize the costs of obtaining

25       needed information.

26  *Miller v. Superior Court,* 21 Cal. 4th 883, 898, 986 P.2d 170 (1999).

27       To protect against these dangers, the California Legislature enacted a series of

28  statutory reporter's shield laws, including current Evidence Code § 1070. In 1980,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   this statutory protection was enshrined in the state Constitution by an overwhelming

2   majority of California voters.  In *Playboy Enterprises v. Superior Court*, 154 Cal.

3   App. 3d 14, 27, 201 Cal. Rptr. 207 (1984), the California Court of Appeal observed

4   that "the elevation to constitutional status must be viewed as an intention to favor the

5   interest of the press in confidentiality over the general and fundamental interest of the

6   state in having civil actions determined upon a full development of material facts."

7   The court concluded that "[i]t has long been acknowledged that our state Constitution

8   is the highest expression of the will of the people acting in their sovereign capacity as

9   to matters of state law.  When the Constitution speaks plainly on a particular matter,

10  it must be given effect as the paramount law of the state." *Id.* at 27-28.

11      The shield law, which is now Article I, § 2(b) of the state Constitution,

12  provides that:

13      A publisher, editor, reporter, or other person connected with or

14      employed upon a newspaper, [or] magazine ... shall not be adjudged in

15      contempt ... for refusing to disclose the source of any information

16      procured while so connected or employed for publication in a

17      newspaper, ... or for refusing to disclose any unpublished information

18      obtained or prepared in gathering, receiving or processing of

19      information for communication to the public ...

20      As used in this subdivision, "unpublished information" includes

21      information not disseminated to the public by the person from whom

22      disclosure is sought, whether or not related information has been

23      disseminated, and includes, but is not limited to, all notes, outtakes,

24      photographs, tapes, or other data of whatever sort not itself disseminated

25      to the public through a medium of communication, whether or not

26      published information based upon or related to such materials has been

27      disseminated.

28

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Cal. Const. Art. I, § 2(b). This constitutional provision prevents Mattel from compelling Mr. Palmeri to testify.[8]

## C. The Shield Law Absolutely Protects Non-Party Reporters From Being Compelled To Testify About Unpublished Information In Civil Cases.

The California Supreme Court has made clear that the shield law guarantees non-party reporters an "absolute" protection against being compelled to testify about unpublished information that they acquire in the course of their newsgathering, regardless of whether the information is confidential. *New York Times*, 51 Cal. 3d at 461; *see also Miller,* 21 Cal. 4th at 890. Importantly, as discussed above, the state Constitution broadly defines "unpublished information" to include "data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such materials has been disseminated." Cal. Const, Art. I, § 2(b).

Civil litigants routinely misapprehend the scope of the shield law's protections for non-party reporters. *First*, they fail to heed the California Supreme Court's unequivocal holding that the shield law provides "absolute protection to nonparty journalists in civil litigation from being compelled to disclose unpublished information." *New York Times*, 51 Cal. 3d at 457. *See also Mitchell v. Superior Court*, 37 Cal. 3d 268, 274, 690 P. 2d 625 (1984) ("[s]ince contempt is generally the only effective remedy against a non-party witness, the California [shield law] grant[s] such witnesses virtually absolute protection" in civil cases). The reason for this absolute protection is clear: "[c]ivil litigants do not have a constitutional right to

---

[8] Although the shield law creates an immunity against contempt, it effectively prevents civil litigants from compelling non-party reporters to testify. *New York Times v. Superior Court*, 51 Cal. 3d 453, 461, 796 P.2d 811 (1990). Consequently, courts regularly grant reporters' motions to quash subpoenas and deny litigants' motions to compel reporters' testimony. *See, e.g., People v. Cooper*, 53 Cal. 3d 771, 819, 821, 281 Cal. Rptr. 90 (1991); *Los Angeles Mem. Coliseum Comm'n*, 89 F.R.D. at 491; *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 117-121, 64 Cal. Rptr. 3d 467 (2007).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

unrestricted discovery of relevant information," and thus have no constitutional right that can be balanced against a reporter's state constitutional shield law rights. *Playboy*, 154 Cal. App. 3d at 25.

*Second*, many civil litigants mistakenly believe that the shield law protects only information that a reporter obtains in confidence. But the California Supreme Court flatly has rejected this argument, holding that the shield law applies to all information, regardless of whether it was obtained in confidence. *See, e.g., New York Times*, 51 Cal. 3d at 461-462 (unpublished photographs of automobile accident on public highway are protected); *Miller*, 21 Cal. 4th at 897 ("the shield law applies to unpublished information whether confidential or not").

*Third*, litigants frequently fail to recognize how expansively courts – and California voters – have defined "unpublished information." But the case law demonstrates the breadth of this protection. In *Playboy*, for example, civil litigants sought audio and videotapes, notes, and other documents relating to an interview conducted by a reporter for *Playboy* magazine, portions of which the magazine had published verbatim. 154 Cal. App. 3d at 21. Rejecting the litigants' argument that the tape of the interview became "published information" within the meaning of the shield law when the magazine published the interview transcript, the court emphasized that Article I, § 2(b) defines "unpublished information" to include any information "not disseminated to the public by the person from whom disclosure is sought, whether or not related information has been disseminated[.]" *Id.* The court explained that "[a]gainst the construction we have adopted, defendants contend that [Playboy] has waived whatever protection it might have under article 1, section 2, by having published information that is either an exact transcription of the ... source materials or so closely derived therefrom that disclosure of the source materials would essentially be a repeat disclosure of the already published statements." *Id.* at 23. While "[i]t is evident that the published material ... in the article is either based upon or related to the underlying records of the interview," the court nonetheless

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 concluded that the tape "falls squarely within the ambit of article I, section 2

2 protection." *Id.* at 24.

3     *In re Jack Howard*, 136 Cal. App. 2d 816, 289 P.2d 537 (1955), is on point,

4 and underscores how broadly courts have defined unpublished information. There,

5 the California Court of Appeal held that even though a newspaper article published

6 under a reporter's byline contained *direct quotations* attributed to a labor organizer,

7 the reporter maintained his right to refuse to testify about whether he ever had a

8 conversation with that individual. 136 Cal. App. 2d at 818-819. "[I]n the absence of

9 any showing other than the published news story," the court reasoned that the

10 reporter had not disclosed the source of the published information. The court

11 declared:

12        [i]t cannot be assumed from the use of quotation marks that the

13        statement attributed to [the source] was made directly to the [reporter].

14        As [the reporter] notes, his information could have been secured in

15        many ways; that is, ... he might have learned of [the labor organizer's

16        statements] from another person; he might have received his information

17        from a printed press release; he might have listened to a recording of the

18        speech; or the story might have been telephoned to his newspaper and

19        rewritten by someone else under his by-line.

20 *Id.* at 819. In short, because the article did not disclose anything other than the

21 quoted statement that appeared within the four corners of the article, the reporter

22 could not be compelled to answer questions about the context of that statement,

23 including how the statement came to be published in the newspaper in an article

24 under the reporter's byline. *Id.*

25 **D.**     **Mattel Cannot Overcome Mr. Palmeri's Shield Law Protections.**

26     Mattel cannot circumvent the holdings in *Miller, Playboy,* and *In re Howard.*

27 As the California Supreme Court made clear in *Miller*, the shield law applies

28 regardless of whether Mr. Palmeri obtained the information at issue in confidence.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

As *Playboy* instructs, the shield law applies regardless of whether Mr. Palmeri published closely related information. And, as *In re Howard* illustrates, the shield law protects Mr. Palmeri from having to answer questions about whether and how he obtained the statement in the article about the origins of the Bratz dolls.

Mr. Palmeri's shield-law argument is even stronger than the reporter's argument in *In re Howard* because the *BusinessWeek* article does not even attribute the statement at issue – "[Larian] should know: He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" – to Mr. Larian. Mattel admittedly wants to ask Mr. Palmeri how he obtained that information. But the article does not reveal the source of the information, which thus is not "published" within the meaning of the shield law. *In re Howard*, 136 Cal. App. 2d at 818-819. In fact, Mattel seeks Mr. Palmeri's testimony precisely *because* the source of the information regarding the Bratz dolls' origin is not published, and Mattel wants to "confirm" who or what the source of the information was. Motion at 1:11. The information could have come from any number of sources: a press release, another magazine or newspaper account, a company spokesperson, a publicist, Mr. Larian, or someone else. Because the answers to these and similar questions are not specifically set forth within the four corners of the article, the shield law absolutely prevents Mattel from compelling Mr. Palmeri to testify about this information, just as the reporter in *In re Howard* did not have to testify about how the newspaper obtained the quote that was published in that case. 136 Cal. App. 3d at 818-819. *See also Playboy*, 154 Cal. App. 3d at 23-24. For this independent reason, the Court should deny Mattel's Motion, and uphold the Discovery Master's Order.

## 5.

## THE COURT SHOULD AWARD MR. PALMERI ATTORNEYS' FEES.

Mr. Palmeri is entitled to an award of his attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), which provides that the court "*must*, after giving an opportunity to be heard, require the movant, the attorney filing the

OPPOSITION
LAX 616767v2 3930059-000040

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless the motion was substantially justified or the award of fees would be unjust. (Emphasis added.) *See, e.g., Wright v. Fred Hutchinson Cancer Research Center*, 206 F.R.D. 679, 683 (W.D. Wash. 2002) (court denied litigant's motion to compel reporter's testimony and invited reporter to file fee motion).

Here, Mr. Palmeri incurred significant fees in preparing and filing this opposition. Attorney Robyn Aronson spent in excess of 15 hours reviewing the instant Motion, researching and preparing Mr. Palmeri's Opposition, and preparing the accompanying declarations and proposed order. Ms. Aronson's billing rate on this matter is $315 per hour. In addition, attorney Alonzo Wickers spent at least seven hours working on the motion and anticipates that he will spend at least four more hours preparing for and attending the hearing on this motion. Mr. Wickers' billing rate on this matter is $460 per hour. Accordingly, Mr. Palmeri will incur attorneys' fees in excess of $9,785. Mr. Palmeri respectfully requests that this Court order Mattel to reimburse him these attorneys' fees. Aronson Decl. at ¶ 3.

### 6.
### CONCLUSION

Mattel has not come remotely close to meeting its burden of showing that the Discovery Master's Order was clearly erroneous or contrary to law. In fact, as set forth above, the Order amply was supported by case law and by evidence. Because Mattel cannot satisfy any of the *Shoen II* factors, much less all three, it cannot overcome Mr. Palmeri's federal constitutional reporter's privilege. Nor can Mattel overcome the state constitutional shield law. Accordingly, the Court should deny Mattel's Motion and award Mr. Palmeri his attorneys' fees.

DATED: March 24, 2008          By: _____
                                    Alonzo Wickers IV

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION
LAX 616767v2 3930059-000040

# DECLARATION OF CHRIS PALMERI

I, Chris Palmeri, declare:

1.    I am a reporter for *BusinessWeek*, and am not a party to this lawsuit. I have been employed as a reporter for *BusinessWeek* since 2000, and have been employed in that capacity at all times relevant to the matters set forth in this declaration. The matters stated here are true of my own personal knowledge, and, if called to testify, I could and would competently testify to these matters.

2.    In 2003, I worked on an article about toy manufacturer Mattel. On July 28, 2003, the article was published in *BusinessWeek* under my byline. The article was entitled "The Corporation: To Really Be a Player, Mattel Needs Hotter Toys." A true and correct copy of that article is attached to this declaration as Exhibit A. Any information that I may possess regarding Mattel was obtained in the course of gathering information for publication in *BusinessWeek*.

3.    On or around July 25, 2007, I received a subpoena from Mattel's attorneys. A true and correct copy of the subpoena is attached to this declaration as Exhibit B.

This declaration was executed this 29th day of January, 2008, at
___Las Angeles___, California. I declare under penalty of perjury under the laws of the United States of American and of the State of California that the foregoing is true and correct.

Chris Palmeri

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax (213) 633-6899

JULY 28, 2003

THE CORPORATION

By Christopher Palmeri

Commentary: To Really Be a Player, Mattel Needs Hotter Toys

The Bratz pack has invaded the Gabriele house. The line of trendy dolls burst on the scene two years ago, offering girls a hipper alternative to that old standby, Barbie: Think Jennifer Lopez to Barbie's Reese Witherspoon. Joan Gabriele, a Hollywood (Fla.) mother of two, now has eight Bratz dolls in her home. Her daughters, ages 6 and 8, rarely touch their Barbies. "Barbie is pretty much a thing of the past," she says. "They like Bratz better."

That's bad news for Barbie's maker, Mattel (MAT ) Inc. — and for the three-year-old turnaround efforts of CEO Robert A. Eckert, the ex-president of Kraft Foods (KFT ) Inc. who replaced the embattled Jill E. Barad. The El Segundo (Calif.) toy giant counts on Barbie for about one-third of its revenues and more of its profits. But Mattel says U.S. Barbie sales declined 2% last year and 14% in this year's first quarter. The overall doll category, says market researcher NPD Group Inc., dropped only 3% in the quarter.

Give Eckert, 48, his due: He pulled Mattel out of its tailspin after its disastrous $3.8 billion acquisition of Learning Co. He got rid of the money-losing computer-game maker and slashed costs. His goal: to bring the stability of a consumer-products company to the hit-driven toymaker. And using such practices as computer-aided design to speed up product development and just-in-time inventory management, he succeeded.

But now it looks like Eckert is learning a valuable lesson: Mattel is selling toys, not soap or cornflakes. Good brand management goes only so far in a business that caters to children's whims. Like it or not, the key to success is launching innovative products and promoting the heck out of them. If you don't do it, your competitors will.

Eckert's strategy has been great for Mattel's bottom line. Profits last year, before special charges, were a healthy $455 million, and the stock has nearly doubled, to $20, since Eckert arrived in May, 2000. But top-line growth has sputtered. U.S. revenues, $3.4 billion in 2002, have declined marginally in the past few years. Total 2002 sales of $4.9 billion crept up from $4.6 billion in 2000 — thanks to overseas expansion.

While Eckert continues to build on the massive Barbie franchise that Barad constructed, he now knows that he needs hot new toys. Recycling old characters like Sesame Street's Elmo just won't be enough. "We need to do a better job on the top line," he says. "The good news is, it's only spring training, and we have a long season ahead of us."

To that end, Eckert has begun an ambitious push. Between now and Christmas, he hopes to launch 250 new toys, including dozens of Hot Wheels models and Flavas, a Bratz-like hip-hop posse with baggy jeans and serious bling-bling. Originally, half of these toys weren't scheduled until 2004.

That should help boost sales. But it's even more important that Mattel prove it can respond to nimble upstarts as well as traditional big rivals like Hasbro (HAS ) Inc. After all, it took the company more than a year to launch a competitor to MGA Entertainment's Bratz. My Scene Barbie didn't hit stores until last October and has yet to make a dent in Bratz's success. At its Santa Monica (Calif.) store recently, Toy 'R' Us Inc. devoted just a sliver of the shelf space to My Scene that it did to Bratz. And My Scene dolls were being offered at 2 for 1. "It's not really catching ground," says Sean P. McGowan, toy industry analyst at Harris Nesbitt Gerard Inc. Mattel will start tossing in a cell phone with 300 free minutes if you buy four of the $13.99 dolls. It also plans to add accessories-- and boy versions -- Hudson, River, and Bryant.

Barbie isn't the only Mattel stalwart under attack. Its Fisher-Price unit, long the king of preschool, is losing sales to newcomer LeapFrog Enterprises Inc., whose electronic interactive books have captured 19% of the $2.9 billion preschool toy and electronic learning aid markets. Eckert is counting on a successful launch in August for PowerTouch, Mattel's version of LeapFrog's popular interactive book. PowerTouch is operated by pointing a

finger at an image or a word, instead of the stylus used in LeapFrog's original products. That's key for younger kids. "It's much easier for her to use," says Christopher Coye, a Los Angeles-area parent whose 4-year-old tested a PowerTouch. Still, LeapFrog releases a finger-operated system in August, too.

Over the long term, Eckert puts at risk one of the strongest toy companies around if he can't instill innovation and rapid reaction in his much-tightened organization. To his credit, he is making it crystal clear that he doesn't want ideas to linger in the pipeline. When Matchbox brand managers mentioned this year that they had designed a toy firehouse that could be shipped with no assembly required, Eckert told them to get it out by fall. "Why wait?" he says. "If you've got it, sell it." And not a moment too soon: Sales of Mattel's Hot Wheels and Matchbox cars fell 6% in the first quarter, thanks to competition for boys' attention from action figures like Hasbro's resurgent G.I. Joe and Transformers.

The question is how much Eckert needs to tweak his model. He probably cut back too much, for instance, on marketing. In 1998, Mattel's advertising and promotional spending totaled $631 million, or 13.8% of sales. By last year, it had fallen to $552 million, or 11.2% of sales. Aggressive television marketing boosted sales of Hot Wheels cars in Spain last year, and a strong new campaign could help Mattel toys here.

Mattel won't live or die on every new toy it develops. But it can't just rely on Barbies, either. "Like they say in business school -- no risk, no reward," says Isaac Larian, CEO of privately held MGA. He should know: He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers. As Eckert is finding out, sometimes the best ideas are right in front of you.

Palmeri covers toys from Los Angeles.

**AO88 (Rev. 12/06) Subpoena in a Civil Case**

Issued by the

# UNITED STATES DISTRICT COURT

<u>Central</u>  DISTRICT OF <u>California</u>

MATTEL, INC., a Delaware Corporation

**SUBPOENA IN A CIVIL CASE**

v.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number: CV 04-9059 NM (RNBx)
Consolidated with cases
CV 04-9049 and CV 05-2727

TO:  Christopher Palmeri c/o Business Week
     3333 Wilshire Blvd., Suite 500
     Los Angeles, CA 90010

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. Testimony will be recorded stenographically and by videographer.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | September 4, 2007 9:30 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | August 28, 2007 9:30 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff, Mattel, Inc. | July 25, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Timothy L. Alger, QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017    (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

AO-88

JUL-25-2007 16:15
07-25-2007 03:03pm From-QUINN EMANUEL
2134433100
T-974 P.003/010 F-337

P.03/05

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fees.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT A

### Documents To Be Produced

I. **DEFINITIONS**

    1.   "YOU" or "YOUR" means Christopher Palmeri, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

    2.   "LARIAN" means Isaac Larian and his representatives and agents.

    3.   "ARTICLE" means the article bearing YOUR byline published in the Business Week edition dated July 28, 2003, bearing the headline, "To Really Be A Player, Mattel Needs Hotter Toys."

    4.   "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Civil Procedure 34 or Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, optical storage disk, other electronic media, and all other writings and recordings of any kind.

    5.   "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing, constituting, or indicating in any way.

    6.   Wherever used herein, the singular shall include the plural and the plural shall include the singular.

II. **INSTRUCTIONS**

    A.   YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

    B.   If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such

07975/3176044.1                                    - 1 -

JUL-25-2007  16:16
07-25-2007  03:04pm  From-QUINN EMANUEL                          2134435100        P.05/05

DOCUMENTS identify each DOCUMENT and provide the following information:

       1.    The privilege or protection that you claim precludes disclosure;

       2.    The subject matter of the DOCUMENT;

       3.    The date, author(s), addressee(s); and

       4.    Any additional facts on which YOU would base YOUR claim of privilege or protection.

       C.    YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

       D.    YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

       E.    Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

III.    <u>DOCUMENTS TO BE PRODUCED.</u>

       All DOCUMENTS REFERRING OR RELATING TO statements made to YOU by LARIAN during YOUR research for the ARTICLE.

07975/2176044.1                          - 2 -

ATTACHMENT A

### DECLARATION OF ROBYN ARONSON

I, Robyn Aronson, declare:

1.     I am an attorney licensed to practice law before all the courts of the State of California and before this Court. I am an associate with the law firm of Davis Wright Tremaine LLP, counsel of record for non-party journalist Chris Palmeri. The matters stated below are true of my own personal knowledge.

2.     I am informed and believe that Michael Niborski, counsel for Mattel, informed my colleague Alonzo Wickers that, since filing its Motion to Compel Mr. Palmeri's testimony, Mattel has deposed a former journalist from the *San Fernando Valley Business Journal* concerning that journalist's interview with Mr. Larian.

3.     I spent in excess of 15 hours reviewing the instant Motion, researching and preparing Mr. Palmeri's Opposition, and preparing the accompanying declaration and proposed order. My billing rate on this matter is $315 per hour. In addition, Mr. Wickers spent at least seven hours working on the motion and it is anticipated that he will spend at least four more hours preparing for and attending the hearing on this motion. His billing rate on this matter is $460 per hour. Accordingly, Mr. Palmeri will incur attorneys' fees in excess of $9,785 in responding to Mattel's Motion.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on March 24, 2008, at Los Angeles, California.

Robyn Aronson

## PROOF OF SERVICE BY FEDERAL EXPRESS

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566. I am familiar with the practice at my place of business for collection and processing of correspondence for overnight delivery by Federal Express. Such correspondence will be deposited with a facility regularly maintained by Federal Express for receipt on the next business day.

On March 24, 2008, I served the following document(s): **NON-PARTY JOURNALIST CHRIS PALMERI'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO DISCOVERY MASTER'S 02/26/08 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI; REQUEST FOR ATTORNEYS' FEES OF $9,785; DECLARATIONS OF CHRIS PALMERI AND ROBYN ARONSON WITH EXHIBITS A-B** by placing a **true copy or original** in a separate envelope for each addressee named below, with the name and address of the person served shown on the envelope as follows:

See attached service list.

and by sealing the envelope and placing it for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices.

Executed on March 24, 2008, at Los Angeles, California.

☐    State     I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☑    Federal    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

| | |
|---|---|
| Frank M. Romero | _Frank M. Romero_ |
| Print Name | Signature |

## SERVICE LIST
## USDC-CASE NO. CV 04-9049

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Anthony Algers, Esq.
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Barry B. Langberg, Esq.
Michael J. Niborski, Esq.
STROOCK & STROOCK & LAVAN LLP
2049 Century Park East, Suite 1600
Los Angeles, CA 90067

Thomas J. Nolan, Esq.
Michael H. Page, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Ave., Suite 3400
Los Angeles, CA 90071

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
OVERLAND BORENSTEIN SCHEPER & KIM, LLP
300 South Grand Ave., Suite 2750
Los Angeles, CA  90071

John W. Keker, Esq.
Michael H. Page, Esq.
Christa M. Anderson, Esq.
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111