# EXHIBIT 1

THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

KENNETH PLEVAN (admitted *pro hac vice*)
(kplevan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10046
Tel.: (212) 735-3000 / Fax: (212) 735-2000

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

UNITED STATED DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE 1 |
| v. | |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

2·15·08

MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE I

EXHIBIT 1

PAGE 3

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that the MGA Parties hereby withdraw their affirmative defense based on unclean hands as it pertains to Phase 1 of this action. The MGA Parties will assert unclean hands as an affirmative defense only in connection with Phase 2 of this action.

DATED: February 15, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
Thomas J. Nolan
Attorney for MGA Entertainment, Inc.

---

MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE I

1

EXHIBIT 1

PAGE 4



1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA 90071-3144
3  Telephone: (213) 687-5000
   Facsimile: (213) 687-5600
4  E-mail:    tnolan@skadden.com

5  KENNETH PLEVAN (admitted *pro hac vice*)
   (kplevan@skadden.com)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Four Times Square
7  New York, NY 10036
   Tel.: (212) 735-3000 / Fax: (212) 735-2000

8
   Attorneys for Counter-Defendants,
9  MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
   (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13

14  CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)

15              Plaintiff,                 )  Consolidated with Case No. 04-9059
                                           )  and Case No. 05-2727
16         v.                              )
                                           )  **PROOF OF SERVICE**
17  MATTEL, INC., a Delaware               )
    corporation                            )
18                                         )
                Defendant.                 )
19                                         )
                                           )
20                                         )
                                           )
21                                         )
                                           )
22  Consolidated with MATTEL, INC. v.      )  Discovery Cut-Off: January 28, 2008
23  BRYANT and MGA                         )
    ENTERTAINMENT, INC. v.                 )
24  MATTEL, INC.                           )

25

26

27

28
                        2-15-08
   _____
   PROOF OF SERVICE                          NO. CV 04-9049 SGL (RNBx)

                              EXHIBIT ___1___

                              PAGE ___5___

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34ᵗʰ Floor, Los Angeles, CA 90071.

On February 15, 2008, I served the foregoing documents described as:

## SEE ATTACHED DOCUMENT LIST

on the interested parties in this action addressed as follows:

## SEE ATTACHED SERVICE LIST

☒    (BY PERSONAL SERVICE)    ☐    By personally delivering copies to the person served. (FEDERAL)

☒    I caused such document to be hand delivered to the above addressees. (FEDERAL)

☒    (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with Federal Express and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on February 15, 2008 at Los Angeles, California.

_____          _____
        Matthew Bowman                        SIGNATURE
        PRINT NAME

- 2 -

PROOF OF SERVICE                                        NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___1___

PAGE ___6___

## **DOCUMENT LIST**

1)  MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE 1

2)  PROOF OF SERVICE

- 3 -

EXHIBIT 1

PAGE 7

1    SERVICE LIST

2

3    John B. Quinn, Esq.                      John W. Keker, Esq.
     Michael T. Zeller, Esq.                  Michael H. Page, Esq.
4    Jon D. Corey, Esq.                       Keker & Van Nest, LLP
     Timothy L. Alger, Esq.                   710 Sansome Street
5    Quinn Emanuel Urquhart Oliver &          San Francisco, CA  94111
     Hedges, LLP                              (415)  391-5400
6    865 South Figueroa Street, 10th Floor    (415)  397-7188 (Fax)
     Los Angeles, CA  90017-2543
7    (213)  443-3000                          Attorneys for Carter Bryant
     (213)  443-3100 (Fax)                    [Federal Express]
8
     Attorneys for Mattel, Inc.
9    [Personal Service]

10

11

12   Mark E. Overland, Esq.
     Alexander H. Cote, Esq.
     David C. Scheper, Esq.
13   Overland Borenstein Scheper & Kim
     300 South Grand Avenue, Suite 2750
14   Los Angeles, CA  90071
     (213)  613-4655
15   (213)  613-4656 (Fax)

16   [Federal Express]

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

EXHIBIT __1__

PAGE __8__

# EXHIBIT 2

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**     December 11, 2007                    **NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Marcus Mumford, Esq.* *Skadden, Arps, Slate, Meagher & Flom LLP* | 213.687.5000 | 213.687.5600 |
| Christa Anderson, Esq. Keker & Van Nest | 415.391.5400 | 415.397.7188 |

**FROM:**     Jon Corey

**RE:**     Mattel, Inc. v. Carter Bryant, et al.

**MESSAGE:**

Please see attached.



DEC 1 1 2007

---

07209/2308303.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Johanna Lopez | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | PRISCILLA P. | | CONFIRMED?   ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT 2

PAGE 10

Job number     : 773          *** SEND SUCCESSFUL *.

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| NEW YORK | LOS ANGELES | SAN FRANCISCO |
|---|---|---|
| 51 Madison Avenue, 22nd Floor | 865 South Figueroa Street, 10th Floor | 50 California Street, 22nd Floor |
| New York, NY 10010 | Los Angeles, CA 90017 | San Francisco, CA 94111 |
| (212) 849-7000 | (213) 443-3000 | (415) 875-6600 |
| Facsimile: (212) 849-7100 | Facsimile: (213) 443-3100 | Facsimile: (415) 875-6700 |

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:    December 11, 2007        NUMBER OF PAGES, INCLUDING COVER: 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Marcus Mumford, Esq. Skadden, Arps, Slate, Meagher & Flom LLP | 213.687.5000 | 213.687.5600 |
| Christa Anderson, Esq. Keker & Van Nest | 415.391.5400 | 415.397.7188 |

FROM:    Jon Corey

RE:      Mattel, Inc. v. Carter Bryant, et al.

MESSAGE:

Please see attached.

07200/2303303.1

CLIENT #    7209    ROUTE/ RETURN TO:  Johanne Lopez    ☐ CONFIRM FAX  ☐ INCLUDE CONF. REPORT

OPERATOR:  PRISCILLA R.    CONFIRMED?  ☐ NO  ☐ YES: _____

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT 2

PAGE 11

**Group Send Report**

Page      : 001
Date & Time: 12-11-2007   16:25
Line 1    : 2134433100
Line 2    :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 773 |
| Date | : | 12-11  16:23 |
| Number of pages | : | 004 |
| Start time | : | 12-11  16:23 |
| End time | : | 12-11  16:25 |

Successful nbrs.

   Fax numbers

         ☎1+12136875600
         ☎1+14153977188

Unsuccessful nbrs.                                                        Pages sent

EXHIBIT 2

PAGE 12

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 11, 2007

**FACSIMILE AND U.S. MAIL**

Marcus Mumford, Esq.
Skadden Arps Slate Meagher & Flom, LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:   Mattel v. Bryant

Dear Marcus:

I write in response to your December 10, 2007 letter sent after the close of business. I write
specifically to correct the false statements that I have previously corrected and that I have
repeatedly corrected, but with which you persist.

First, Adrienne Fontanella, Matt Bousequette, Tina Patel and Ivy Ross are not Mattel employees,
but third parties. My firm represents them, but I never represented at the November 16 meeting
of counsel or at any other time that they are reasonably available at times unilaterally dictated by
MGA. They are not.

Second, Mattel never agreed to produce any witness on the dates dictated by MGA. You and I
discussed this at length at a meeting of counsel last Thursday. At that conference of counsel, I
unequivocally stated that Mattel had requested a range of dates when MGA would be available
to take Ms. Fontanella's deposition, and you provided dates which provided almost no notice for
her. Indeed, you were told at our meeting of counsel on November 21, 2007 that Ms. Fontanella
was available through only the first part of December and then not until January so you needed
to advise us promptly if MGA would be in a position to take her deposition in December. You
failed to do so. Mattel is working to find a date for her, and will let you know as soon as we
have an available date.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street. 22nd Floor. San Francisco. California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive. Suite 560. Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2320353.1

EXHIBIT _____

PAGE __13__

Third, Mattel never agreed to produce Mr. Bousquette before MGA made the representation -- required by Judge Infante -- that its unfair competition document production is substantially complete. Quite the opposite was true. We reminded you and your colleagues of this at the November 21, 2007 conference as well. MGA has known of this requirement for almost a month, but was willing to make that representation for the first time yesterday. Now that it has been willing to do so, Mattel will seek a date from Mr. Bousequette. Please be advised, however, that such a date will not be in December. Nor is there any requirement that it be in December because Mr. Bousequette, to Mattel's knowledge, does not have knowledge relating to the claims at issue in Phase 1. Rather, a deposition for Mr. Bousquette will likely be after the close of Phase 1 discovery so, as you explained in your November 29, 2007 letter, the parties can concentrate on Phase 1 discovery.

Fourth, Ms. Ross, as I advised you on November 16, 2007, is available for deposition on January 17, 2008 as both Mattel's designee and individually. As a third-party she will not, as Judge Infante has already provided direction on, be deposed twice. The scheduling of this date has nothing to do with Mattel's willingness or unwillingness to produce Ms. Ross. Ms. Ross is a senior executive at a third-party. January 17th is the date that she is available for deposition. Indeed, we had offered Ms. Ross for multiple dates in the past that MGA elected not to take.

Fifth, as you and I discussed last Thursday, the parties have a dispute over the scope of the topics as to which Mattel contemplated designating Mr. de Anda. You and I agreed that the deposition of Mr. de Anda, as an individual, not as a Mattel designee, would go forward on December 19. At this time and until Judge Infante rules on the scope of the Topics in dispute, Mattel will not make Mr. de Anda a designee. Of course, if MGA is willing to reconsider its rejection of Mattel's proposals to properly narrow the Topics, we can revisit that issue.

Sixth, Mattel served supplemental responses to MGA's First Set of Interrogatories last week. Mattel will serve supplemental responses to Bryant's First Set of Interrogatories by tomorrow. The delay in serving these responses was because Mattel was reviewing, and continues to review the documents produced by MGA, including documents that for various technical reasons (including those for which MGA was responsible for) were not accessible to us. Notably, Mattel's supplemental responses far exceed the cursory "supplemental" responses that your firm has recently provided and which were the subject of a meeting of counsel yesterday, at which MGA did not agree to provide remotely complete responses to Mattel's interrogatories.

Finally, Mattel has not engaged in a pattern of delay. To the contrary, as reflected in your letter, Mattel has provided or has agreed to provide for deposition before the close of Phase 1 discovery the witnesses who MGA has identified who possess information related to Phase 1 claims—a request that you yourself made. Rather, MGA, not Mattel, has engaged in a repeated pattern of delay and disruption, as reflected most recently by MGA's failure to comply with its representations that it would address Mattel's complaints about the deficiencies in MGA's interrogatory responses. This is consistent with MGA's conduct that both before and after it retained your firm to represent it, and continues to this day.

2

EXHIBIT 2

PAGE 14

We can either cooperate in the scheduling of depositions, as Mattel has been and MGA has not (notably we do not have dates for the continuance of Mr. Larian's deposition which Mattel has repeatedly requested), or you can run to Judge Infante. Please be advised, however, that Mattel will oppose MGA's application and will serve its own ex parte application seeking a date for the continuance of Mr. Larian's deposition, Bryant's deposition, Farhad Larian's deposition and the other depositions that we have requested dates for at the same time.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

Jon Corey

cc: Christa Anderson

EXHIBIT __2__

PAGE __15__

# EXHIBIT 3

*Send*

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2      John B. Quinn (Bar No. 090378)
       (johnquinn@quinnemanuel.com)
       Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
       Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California  90017-2543
     Telephone:   (213) 443-3000
6    Facsimile:   (213) 443-3100
7    Attorneys for Mattel, Inc.
8    [Additional counsel listed on following page]
9

FILED
2006 DEC -6  PM 4:39

10                   UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12   CARTER BRYANT, an individual,          )   Case No. CV 04-09049 SGL (RNBx)
                                            )
13                    Plaintiff,            )   Consolidated with
                                            )   Case No. CV 04-09059
14          v.                              )   Case No. CV 05-02727
                                            )
15   MATTEL, INC., a Delaware               )   STIPULATION FOR APPOINTMENT
     corporation,                           )   OF A DISCOVERY MASTER; AND
16                                          )
                      Defendant.            )   [PROPOSED] ORDER
17                                          )
                                            )   Discovery Cutoff Date:  Not Set
18                                              Trial Date:  Not Set
19
20
21
22
23
24
25
26
27                              EXHIBIT  3

28                              PAGE  16

LITTLER MENDELSON
  Robert F. Millman (Bar No. 062152)
  Douglas A. Wickham (Bar No. 127268)
  Keith A. Jacoby (Bar No. 150233)
2049 Century Park East, 5th Floor
Los Angeles, California  90067-3107
Telephone:  (310) 553-0308
Facsimile:   (310) 553-5583

Attorneys for Carter Bryant

O'MELVENY & MYERS LLP
  Diana M. Torres (Bar No. 162284)
400 S. Hope Street
Los Angeles, California  90017
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

O'MELVENY & MYERS LLP
  Dale Cendali
Times Square Tower
7 Times Square
New York, NY 10036

CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
  Patricia Glaser (Bar No. 55668)
10250 Constellation Boulevard - 19th Floor
Los Angeles, CA 90067
Telephone:  (310) 553-3000
Facsimile:  (310) 556-2920

Attorneys for MGA Entertainment, Inc.

EXHIBIT 3

PAGE 17

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

- 2 -

1    WHEREAS, the parties are in agreement that a discovery master should be
2 appointed in this matter to resolve any discovery disputes and to minimize the
3 burden on the Court; and

4    WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5 (Ret.), and he has agreed to serve as a discovery master in this matter;

6    NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7 trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8 Inc., by and through their respective counsel of record, hereby stipulate and agree as
9 follows:

10    1.    The Discovery Master shall be appointed to assure and provide cost-
11 effective discovery and to minimize the burden of discovery disputes upon the
12 Court. Any and all discovery motions and other discovery disputes in the above
13 captioned action shall be decided by a master ("Discovery Master") pursuant to
14 Federal Rule of Civil Procedure 53. Any motions currently pending before
15 Magistrate Judge Block shall be transferred to the Discovery Master. The moving
16 party shall provide to the Discovery Master all papers associated with each pending
17 motion.

18    2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.). His
19 business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20 94111.

21    3.    Judge Infante shall serve as the Discovery Master until all issues herein
22 have been finally disposed of or determined, or until he shall withdraw in
23 accordance with applicable law. If at any time he becomes unable to serve as the
24 Discovery Master, the parties shall confer to present an alternative agreed-upon
25 designee to the Court. In the event that the parties cannot agree to an alternate
26 designee, then the Court shall appoint a Discovery Master.

27    4.    The Discovery Master shall have the authority to set the date, time, and
28 place for all hearings determined by the Discovery Master to be necessary; to

EXHIBIT 2

PAGE 18                    -3-                    STIPULATION FOR APPOINTMENT OF A DISCOVERY
                                                   MASTER AND [PROPOSED] ORDER

1   preside over hearings (whether telephonic or in-person); to take evidence in

2   connection with discovery disputes; to issue orders resolving discovery motions

3   submitted to the Discovery Master; to conduct telephonic conferences to resolve

4   discovery disputes arising during depositions; to issue orders awarding non-

5   contempt sanctions, including, without limitation, the award of attorney's fees, as

6   provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and

7   recommendations, as appropriate.

8       5.    All discovery disputes shall be resolved by motion (except those arising

9   during a deposition which the Discovery Master determines can be resolved by

10  telephonic conference during the deposition). The moving party shall first identify

11  each dispute, state the relief sought, and identify the authority supporting the

12  requested relief in a meet and confer letter that shall be served on all parties by

13  facsimile or electronic mail. The parties shall have five court days from the date of

14  service of that letter to conduct an in-person conference to attempt to resolve the

15  dispute. If the dispute has not been resolved within five court days after such

16  service, the moving party may seek relief from the Discovery Master by formal

17  motion or letter brief, at the moving party's option. The opposing party shall have

18  five court days from the date of service of the motion or letter brief to submit a

19  formal opposition or response. Any reply brief or letter brief shall be served within

20  three court days from the date of service of a formal opposition or response. The

21  hearing on the motion shall take place within five court days of the service of any

22  reply brief or letter unless (a) the parties agree to another hearing date or agree that

23  no hearing is necessary; (b) the Discovery Master determines that no hearing is

24  necessary; or (c) the Discovery Master is not available, in which case the hearing

25  shall take place on the Discovery Master's first available date. The foregoing shall

26  not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from

27  seeking the Discovery Master's immediate resolution of a dispute or resolution of a

28  dispute upon shortened time upon a showing of good cause why a party would be

EXHIBIT _3_

PAGE _19_

- 4 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1    prejudiced absent prompt resolution.  Service of any document by fax or electronic
2    mail prior to 6:00 p.m. shall constitute service on that day.

3        6.      The Discovery Master's orders resolving discovery disputes, reports, or
4    recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a
5    Magistrate Judge of the United States District Court.  The Discovery Master shall
6    file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve
7    the parties within five court days of his/her decision on a matter.

8        7.      A court reporter shall transcribe any hearing or other proceeding before
9    the Discovery Master.

10       8.      The cost of any proceeding before the Discovery Master, including the
11   fees of the Discovery Master, the fees of court reporters who transcribe hearings or
12   other proceedings before the Discovery Master, and the fees of any other person
13   necessary to the efficient administration of the proceeding before the Discovery
14   Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,
15   Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,
16   the Discovery Master Orders otherwise.  By agreeing to share costs among the
17   parties, no party waives its right to seek recovery or reimbursement for such costs
18   from any other party.

19       9.      The Discovery Master shall be compensated according to his regular
20   hourly rate of $750.

21       10.     Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery
22   Master shall proceed with all reasonable diligence.

23       11.     Based on an affidavit filed by Hon. Edward A. Infante pursuant to
24   28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not
25   aware that he has a relationship to the parties, to counsel, to the action, or to the
26   Court that would require disqualification of a judge under 28 U.S.C. § 455, and
27   based thereon the parties expressly waive any ground for disqualification disclosed
28   therein of Hon. Edward A. Infante to serve as master in these proceedings.

EXHIBIT __3__

PAGE __20__                            - 5 -                STIPULATION FOR APPOINTMENT OF A DISCOVERY
                                                           MASTER AND [PROPOSED] ORDER

12.   The Discovery Master shall not have ex parte communications with ~~the Court~~, a party or counsel.

13.   The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master.  These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14.   The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order.  The Discovery Master agrees to be bound by the January 4, 2005 Order.

15.   All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November 22, 2006

O'MELVENY & MYERS LLP

By: _____
Diana Torres
Attorneys for MGA Entertainment, Inc.

Dated:  November 29, 2006

LITTLER MENDELSON

By: _____
Douglas A. Wickham
Attorneys for Carter Bryant

EXHIBIT 3

PAGE 21

1  Dated: ~~November~~ December 4, , 2006        QUINN EMANUEL URQUHART
2                                                OLIVER & HEDGES, LLP
3                                         By: Jon D. Corey
4                                                Jon D. Corey
                                                 Attorneys for Mattel, Inc.
5

6                        **ORDER**

7       The foregoing Stipulation for Appointment of a Discovery Master is SO
8  ORDERED *as modified.*

9

10 Dated: _12-6-06._                        S G Larson
11                                          Hon. Stephen G. Larson
                                            United States District Court Judge
12

13

14               **CONSENT OF DISCOVERY MASTER**

15      If appointed by the Court, I, the undersigned, consent to serve as Discovery
16 Master in the above referenced proceeding consistent with this Order.

17

18 Dated: _12-5-06_                         Hon. Edward A. Infante (Ret.)
19

20

21

22

23

24

25

26

27

28

                                    -7-
                              STIPULATION FOR APPOINTMENT OF A DISCOVERY
                              MASTER AND [PROPOSED] ORDER

                              EXHIBIT __3__

                              PAGE __22__

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.

**Keith A. Jacoby, Esq.**
**Douglas Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
**Fax: 310-553-5583**

**Diana M. Torres, Esq.**
**O'Melveny & Meyers**
400 S. Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
**Fax: 213-430-6407**

[ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[X]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 5, 2006, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Cheri Hatch
Print Name

Signature

EXHIBIT 2
PAGE 23

# EXHIBIT 4

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CARTER BRYANT, AN INDIVIDUAL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | NO.  CV 04-9040 SGL (RNBX) |
| V. | ) | (CONSOLIDATED WITH |
| | ) | CASE NO. 04-9059 AND |
| MATTEL, INC., A DELAWARE | ) | CASE NO. 05-27271) |
| CORPORATION, | ) | |
| DEFENDANT. | ) | |
| | ) | |
| | ) | |
| AND CONSOLIDATED ACTION(S). | ) | |
| | ) | |

# TRANSCRIPT OF
# TELEPHONIC PROCEEDINGS

## FEBRUARY 13, 2007

**REPORTED BY:**
ANGELA DUPRE
CSR NO.  7804
JOB NO. 07AD019



COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT  4

PAGE  24

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,)
                              )
           PLAINTIFF,         )
                              )
   VS.                        ) CASE NO.
                              )
MATTEL, INC., A DELAWARE      ) CV 04-9049 SGL (RNBX)
CORPORATION,                  ) [CONSOLIDATED WITH
                              ) CASE NO. 04-9059 AND
           DEFENDANT.         ) CASE NO. 05-2727]
                              )
_____)
                              )
AND CONSOLIDATED ACTION(S).   )
_____)


        TRANSCRIPT OF TELEPHONIC
        PROCEEDINGS, TAKEN BEFORE
        HON. EDWARD A. INFANTE, AT
        865 SOUTH FIGUEROA STREET, LOS
        ANGELES, CALIFORNIA, COMMENCING
        AT 8:13 A.M., MONDAY,
        FEBRUARY 13, 2007, BEFORE ANGELA
        DUPRE, CSR 7804.

EXHIBIT 4

PAGE 25

2

```
 1    APPEARANCES OF COUNSEL:
 2
 3    FOR CARTER BRYANT:
 4        LITTLER MENDELSON
          BY:  KEITH A. JACOBY, ESQ.
 5        2049 CENTURY PARK EAST
          FIFTH FLOOR
 6        LOS ANGELES, CALIFORNIA 90067-3107
          (310) 553-0308
 7        (TELEPHONICALLY)
 8
 9    FOR MATTEL, INC.:
10        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:  MICHAEL T. ZELLER, ESQ.
11             TIMOTHY ALGER, ESQ.
          865 SOUTH FIGUEROA STREET
12        TENTH FLOOR
          LOS ANGELES, CALIFORNIA 90017-2543
13        (213) 624-7707
14
15    FOR MGA ENTERTAINMENT, INC.:
16        O'MELVENY & MYERS, LLP
          BY:  JAMES JENAL, ESQ.
17        400 SOUTH HOPE STREET
          LOS ANGELES, CALIFORNIA 90071-2899
18        (213) 430-6000
          (TELEPHONICALLY)
19
20
      ALSO PRESENT:
21
          HON. EDWARD A. INFANTE
22        (TELEPHONICALLY)
23
24
25
```

3

EXHIBIT _4_

PAGE _26_

1  THIS MESSY CASE ARE TO RULE ON THE DISCOVERY
2  REQUESTS THAT HAVE BEEN SERVED.  DISCOVERY
3  ESSENTIALLY HAS OVERRUN RULE 26 IN THIS CASE.  AND
4  I THINK THERE WILL BE A BETTER RECORD AT THE END OF
5  THE DAY IF THE SPECIAL MASTER, AND ULTIMATELY THE
6  COURT, RULES ON DISCOVERY DISPUTES WHERE THE
7  VEHICLES ARE THE DISCOVERY REQUESTS UNDER RULES 34
8  AND 33 THAT HAVE BEEN SERVED.
9        AND, FOR THAT REASON, I'M DENYING THE
10  MOTION TO COMPEL INITIAL DISCLOSURES, AND I'M
11  DENYING THE REQUEST FOR PROTECTIVE ORDER BARRING
12  DEPOSITIONS UNTIL MGA COMPLETES ITS DISCLOSURES.
13  THE MOTION IS DENIED, EVEN THOUGH YOU ARE QUITE
14  CORRECT IN YOUR CRITICISMS AND ANALYSIS OF MGA'S
15  PERFORMANCE UNDER RULE 26(A).
16        NOTHING IN MY ORDER HERE EXCUSES MGA OF
17  ITS OBLIGATIONS TO SUPPLEMENT ITS DISCLOSURES AT
18  APPROPRIATE INTERVALS, IN ACCORDANCE WITH RULE
19  26(E)(1), FEDERAL RULES OF CIVIL PROCEDURE.
20        SO THE MOTION IS DENIED.  I'M ISSUING A
21  WRITTEN ORDER.  YOU'LL HAVE IT BY THE CLOSE OF
22  BUSINESS TODAY.
23        ANY QUESTIONS?
24    MR. ZELLER:  YES, YOUR HONOR.  IT'S MIKE ZELLER
25  FOR MATTEL.

1    IF I MAY JUST INQUIRE ABOUT A PRACTICAL
2  ISSUE ON THIS, WHICH IS -- YOU KNOW, AS MR. JENAL
3  HAS INDICATED, THEY WANT TO DEPOSE OUR FORMER
4  PRESIDENT, MATT BOUSQUETTE.  WE DON'T HAVE ANY OF
5  THEIR DOCUMENTS.  IT'S -- IT'S PROBLEMATIC FOR US
6  TO, IN THIS CASE -- AND, OF COURSE, THE COURT HAS
7  SEEN THEIR COMPLAINT, WHICH IS REALLY ALL WE HAVE
8  IN TERMS OF WHAT ARE THE PARAMETERS OF THE CASE,
9  WHAT ARE THEIR ALLEGATIONS.
10    I SHOULD CORRECT IT.  WE OBVIOUSLY HAVE
11  THEIR INTERROGATORY RESPONSES, BUT WE DON'T HAVE
12  DOCUMENTS.  AND SO IT'S SOMEWHAT, JUST AS A
13  PRACTICAL MATTER, DIFFICULT TO HAVE SOMEONE DEPOSED
14  UNDER THOSE CIRCUMSTANCES.
15    JUDGE INFANTE:  I THINK THE DEPOSITION SHOULD
16  NOT TAKE PLACE UNTIL THE DOCUMENT DISCOVERY IS
17  SUBSTANTIALLY COMPLETED, WITH RESPECT TO THAT
18  WITNESS.
19    MR. ZELLER:  I WOULD APPRECIATE THAT, YOUR
20  HONOR.
21    JUDGE INFANTE:  BUT THAT'S ALL I'M GOING TO SAY
22  AT THIS POINT.
23    OKAY.  I'LL ISSUE MY ORDER, AND YOU
24  SHOULD HAVE IT BY THE END OF TODAY.
25    THANK YOU, VERY MUCH.

34

EXHIBIT 4

PAGE 28



1    MR. ZELLER:   THANK YOU.

2    MR. ALGER:   THANK YOU.

3

4              (WHEREUPON, AT THE HOUR OF

5         8:52 A.M., THE PROCEEDINGS

6              WERE CONCLUDED.)

7                   -OOO-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

35

EXHIBIT 4

PAGE 29

1   STATE OF CALIFORNIA        )

                              )   SS.

2   COUNTY OF LOS ANGELES      )

3       I,   ANGELA DUPRE  , CERTIFIED SHORTHAND

4   REPORTER, CERTIFICATE NUMBER 7804, FOR THE STATE OF

5   CALIFORNIA, HEREBY CERTIFY:

6           THE FOREGOING TRANSCRIPT IS A TRUE AND

7   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

8           I FURTHER CERTIFY THAT I AM NEITHER

9   COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

10  NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

11          IN WITNESS WHEREOF, I HAVE HEREUNTO

12  SUBSCRIBED MY NAME THIS ____1____ DAY OF

13  _____March_____, 2007.

14

15

16                          _____

17

18

19

20

21

22

23

24

25

36

EXHIBIT 4

PAGE 30

# EXHIBIT 5

Case 2:04-cv-09049-S⸺-RNB   Document 2337   Filed 0⸺4/2008   Page 1 of 6

RECEIVED

FEB 2 9 2008

1   THOMAS J. NOLAN (Bar No. 66992)
    (tnolan@skadden.com)
2   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue
3   Los Angeles, CA 90071-3144
    Tel.: (213) 687-5000/Fax: (213) 687-5600

4   RAOUL D. KENNEDY (Bar No. 40892)
    (rkennedy@skadden.com)
5   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    4 Embarcadero Center, 38th Floor
6   San Francisco, CA 94111-5974
    Tel.: (415) 984-6400/Fax: (415) 984-2698
7

8   Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
    MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

9

10                UNITED STATED DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12   CARTER BRYANT, an individual,        )   CASE NO. CV 04-9049 SGL (RNBx)
                                          )
13                   Plaintiff,           )   Consolidated with Case No. 04-9059
                                          )   and Case No. 05-2727
14          v.                            )
                                          )   **REPLY IN SUPPORT OF MGA**
15   MATTEL, INC., a Delaware corporation,)   **DEFENDANTS'** *EX PARTE*
                                          )   **APPLICATION TO COMPEL THE**
16                   Defendant.           )   **DEPOSITIONS OF MATTHEW**
                                          )   **BOUSQUETTE AND TINA PATEL**
17                                        )
                                          )   Honorable Stephen G. Larson
18                                        )
                                          )   Hearing Date: TBD
19                                        )   Time: TBD
                                          )   Place: Courtroom 1
20                                        )
21                                        )
     AND CONSOLIDATED ACTIONS            )
22                                        )
23
24
25
26
27
28

────────────────────────────────────────
Reply In Support of *Ex Parte* Application To Compel Depositions
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT   5

PAGE   31

# **REPLY**

MGA's *ex parte* application presents a simple question: *should Matt Bousquette and Tina Patel be deposed during the Phase I portion of this case*? They should. These depositions were properly noticed before the January 28, 2008 deadline, agreed to by Mattel, scheduled in February for the convenience of the witnesses, and both witnesses have knowledge relating to issues arising in Phase I of this case. Accordingly, under this Court's February 4, 2008 Order, both should sit for deposition now.

Mattel's Opposition fails to contest MGA's showing that Mr. Bousquette and Ms. Patel have knowledge regarding key Phase I issues. Mr. Bousquette has information regarding the proper interpretation of Mattel's Employee Inventions Agreement (the key document at issue in this case) and why, in early 2004, Mattel felt it necessary to modify and expand this Agreement at nearly the same time it was filing suit against Mr. Bryant.[1] Mr. Bousquette also has key knowledge regarding why Mattel waited so long to file this litigation – a subject that is central to MGA's laches and statute of limitations defenses.[2] In addition, both Mr. Bousquette and Ms. Patel received and, may have been involved in creating, key research reports and presentations that are central to the Phase I damages issue in this case of how to properly apportion any damages awarded for copyright infringement.[3] Indeed, Ms. Patel's name is specifically identified in one of the key presentations discussed by the experts who conducted MGA's lead apportionment study.[4]

---

[1] MGA's *Ex Parte* Application To Compel The Depositions of Matthew Bousquette and Tina Patel (hereinafter "MGA's *Ex Parte* Application") at 3; *see also Montrose Chemical Corp. v. Monstrose Ins. Co.*, 10 Cal. 4th 645, 670-71 (1995) (drafting history is relevant to interpreting standard form contracts).

[2] MGA's *Ex Parte* Application at 3-5.

[3] The centrality of research reports in this case is confirmed by Mattel's expert, Carol Scott, who repeatedly cites these reports in her purported expert declaration. *See* Carol A. Scott Expert Report at 4-8.

[4] Herrington Decl., Ex. 20: My Scene. My City. My Style. My Scene. Competitive Overview (August 27, 2003) (M0072014-00720600) at 2046.

EXHIBIT **5**

PAGE **32**

1      Unable to dispute that Matt Bousquette and Tina Patel have critical knowledge

2  regarding Phase I issues, Mattel resorts to distortion in an effort to avoid these

3  depositions:

4      **First,** Mattel asserts that the Court cannot grant this application because Mr.

5  Bousquette is a third party witness. This is wrong. Mattel's counsel, Quinn

6  Emanuel, has indicated they represent Mr. Bousquette, and they have accepted

7  service on this behalf. Any suggestion that Mr. Bousquette is not under Mattel's

8  control is demonstrably false. In a recent filing with the SEC, Mattel disclosed that it

9  has a "consulting agreement" with Mr. Bousquette under which Mattel pays him

10  $750,000 in exchange for his cooperation in litigation and other proceedings.[5]

11  Moreover, MGA's application is directed at *Mattel's* obstructionist conduct – not Mr.

12  Bousquette. The witness has never indicated that he is unwilling to sit for a

13  deposition. It is Mattel that has strung MGA along, first delaying the deposition,

14  then scheduling it, and then canceling it.[6] The Court should put an end to Mattel's

15  game playing and order that Mr. Bousquette's deposition proceed immediately.

16      **Second,** Mattel distorts the Discovery Master's statements regarding

17  document production and Mr. Bousquette's deposition. More than a year ago, in

18  February 2007, Mattel's counsel raised the concern that they did not yet have any

19  substantial document production from MGA, and they asked that Mr. Bousquette's

20  deposition not proceed until documents were received. In response, the Discovery

21  Master stated, "I think the deposition should not proceed until document discovery is

22  substantially completed, *with respect to that witness.*"[7] Since February 2007, MGA

23  has produced millions of pages of documents, and in a letter dated December 10,

24  2007, MGA's counsel confirmed that its unfair competition document production

25

26

---

[5]  Supp. Herrington Decl., Ex. 1: Mattel 8-K filing at 2-3 (filed December 28, 2005).

27  [6]  MGA's *Ex Parte* Application at 7-10.

28  [7]  Proctor Decl., Ex. 14 at 34:15-18.

EXHIBIT _5_

PAGE _33_

1   was substantially complete.[8]  Mattel's counsel sent a letter the next day noting this,

2   and informing MGA's counsel that it would obtain a deposition date for Mr.

3   Bousquette.[9]  The other discovery Mattel identifies, including its reference to

4   document production by MGA de Mexico regarding *Mattel's* trade secrets and RICO

5   claims, has nothing to do with Mr. Bousquette, and Mattel has not shown otherwise.

6   In short, MGA's document production "with respect to [Mr. Bousquette]" is

7   substantially complete, Mattel has acknowledged this fact, and Mr. Bousquette's

8   deposition should proceed immediately.

9       **Third**, Mattel asserts that MGA is seeking to interject Phase II issues into the

10  Phase I trial.  Again, Mattel's assertions are nonsense.  Mattel asked this Court to

11  include its purported claim for copyright infringement as part of the Phase I trial.

12  One of the key issues in the copyright infringement claim will be, assuming Mattel

13  can prove ownership and infringement (dubious propositions given the state of the

14  record), the extent to which any profits earned by MGA are attributable to the

15  copyrightable works Mattel claims to own, or whether those profits are attributable

16  to other factors. [10]  MGA's experts have conducted studies establishing that only a

17  portion of the profits from Bratz sales could be properly attributed to the copyrights

18  Mattel claims to own.  Mr. Bousquette and Ms. Patel received and appear to have

19  been involved in preparing several reports that are at the center of these

20  apportionment studies.  These reports, supported by monthly focus groups and the

21  results of which it appears were reported to both Bousquette and Patel, reflect

22  Mattel's understanding that the underlying design of the doll was only partly

---

23  
24  [8]  Herrington Decl., Ex.21: Letter from Marcus Mumford to Jon Corey, dated December 10, 2007.

25  [9]  Supp. Herrington Decl, Ex. 2: Letter from Jon Corey to Marcus Mumford, dated December 11, 2007.

26  [10]  *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002) ("In establishing the
27  infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible
28  expenses and the elements of profit attributable to factors other than the copyrighted work.").

EXHIBIT  5

PAGE  34

1   responsible for Bratz's commercial success. As these reports repeatedly emphasized,

2   that success was largely a result of MGA's superior execution, marketing, packaging,

3   as well as the dolls' fashions, accessories and the themes associated with the dolls. In

4   short, Bousquette and Patel are key Phase I witnesses.[11]

5       Mattel's argument that if MGA is permitted to depose Bousquette and Patel, it

6   must be permitted to open an entirely new round of Phase II discovery is absurd, and

7   simply another attempt to delay the Phase I trial. Mattel specifically asked this Court

8   to have its trade secrets claim tried as part of Phase II – not Phase I. Mattel will have

9   the opportunity to prove, during Phase II, that it suffered harm as a result of alleged

10  trade secret violations. Those trade secret issues have nothing to do with a proper

11  apportionment of *copyright* infringement damages, which is a discrete issue to be

12  tried in Phase I.

13                          **CONCLUSION**

14      Mattel's Opposition confirms that its motive is delay. MGA has been trying to

15  take the depositions of Bousquette and Patel since last year.[12] Patel was scheduled in

16  January 2008, but Mattel unilaterally cancelled it without explanation.[13] MGA

17  attempted to reschedule these depositions before January 28, and Mattel represented

18  that the witnesses could not be produced until February because of their schedules.[14]

19

20  [11] Herrington Decl., Ex. 8: Barbie 2004 Marketing Plan (M0284970-995) at 971,
21  976; Herrington Decl., Ex. 9: March 12, 2004 Mattel Board Meeting Minutes
    (M0737414-439) at 421; Herrington Decl., Ex. 10: 2004 Marketing Plan Update
22  (M0079848-855) at 850, 853; Herrington Decl., Ex. 11: Kilpin Depo. 238:6-251:3;
    Herrington Decl., Ex. 12: 2005 Barbie Spring Line Review (M0079731-M0079758)
23  at 732-35; Herrington Decl., Ex. 13: Wall Street Journal Article (M0199111-115) at
    111; Herrington Decl., Ex. 16: Email Re: Meeting with Matthew Bousquette (M
24  0094669-94671); Herrington Decl. Ex. 18: Farr Depo. 220:25-221:7; Herrington
    Decl, Ex. 20: My Scene. My City. My Style. My Scene. Competitive Overview
25  (August 27, 2003) (M 0072014-00720600) at 2025.
    [12] MGA Defendants' *Ex Parte* Application at 7-10.
26  [13] Herrington Decl., Ex. 24: Letter from Michael Zeller to Timothy Miller and
27  Michael Page, dated January 3, 2008.
    [14] Herrington Decl., Ex. 23: Letter from Jon Corey to Thomas J. Nolan and Michael
28  Page, dated January 2, 2008; Declaration of Paul M. Eckles, ¶ 2.

EXHIBIT ___5___

PAGE ___35___

1    At the hearing on February 4, 2008, Mattel had the opportunity to address these

2    depositions, but it chose to wait until February 11, just four days before the date

3    agreed upon for Bousquette's deposition, to cancel yet again.[15]  The only basis for

4    canceling was Mattel's assertion that Bousquette and Patel are not Phase I

5    witnesses,[16] which, as shown above, is wrong.  Accordingly, MGA respectfully

6    requests that the Court grant its *ex parte* application, that Mr. Bousquette and Ms.

7    Patel be produced for depositions within 10 days of the Court's order, and sanction

8    Mattel for its bad faith conduct.

9

10   DATED:  February 24, 2008            Respectfully submitted,

11                                         SKADDEN, ARPS, SLATE, MEAGHER &
                                           FLOM, LLP
12

13                                   By: *Thomas Nolan* (ADO)
14                                        Thomas J. Nolan
15                                        Attorney for MGA Entertainment, Inc.

16

17

18

19

20

21

22

23

24

25

26   _____

27   [15]  Herrington Decl., Ex. 27: Letter from Michael Zeller to Michael Page and
      Thomas Nolan, dated February 11, 2008.
28   [16]  *Id.*

EXHIBIT 5

PAGE 36

# EXHIBIT 6

CALENDARED

JAN 1 6 2007

P-Send

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

FILED

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

                    Plaintiff,

v.

MATTEL, INC.,

                    Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

    This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

    Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant.  The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire").  Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT 6
PAGE 37

resources in creating and/or developing the BRATZ dolls or whether he continued
to develop his BRATZ design while still working in Mattel's employ. In either event,
the rights to the BRATZ dolls could become the property of Mattel, either through
infringement or through operation of the agreements noted above. The case was
later removed to this Court and was assigned the case number CV-04-9059. MGA
Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.
Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
property, i.e., the Bratz creations, were decided in the absence of MGA").

In the interim, Bryant filed a declaratory judgment action in this Court,
seeking for the Court to declare that his BRATZ doll creations did not infringe
Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at
3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
products,' . . . the substance of his allegations all address the product 'Toon
Teens'"). The declaratory judgment action was assigned the case number CV-04-
9049.

MGA then filed an action against Mattel in this Court broadening the scope
of the controversy beyond that concerned with the ownership rights to the BRATZ
doll line. MGA's complaint asserted various Lanham Act claims and their California
state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
competition-by-intimidation and serial copycatting of MGA's products." (Compl.
¶ 7). In essence, although the prior actions were concerned with ownership in the
rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
MGA's complaint did make mention of other products that were affected by Mattel's
alleged predatory business practices, but by far the largest portion of its complaint
concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2

EXHIBIT 6

PAGE 38

1  line of BRATZ dolls.[1]

2  　　　　By Order dated June 19, 2006, the Court consolidated all three cases "for all

3  purposes" as they "involve[d] a number of common issues of law and fact."  As the

4  Court later noted in its August 10, 2006, Order:  "At its heart, this case asks the

5  question:  Who owns the rights to the Bratz dolls?"  Resolution of this question lies

6  at the heart of or, at the very least, affects many of the other claims set forth in

7  each of the three respective cases.  For instance, even though the allegations in

8  05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ

9  dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot

10  many of those allegations.  It is hard to imagine how it is unlawful for a company to

11  thwart or otherwise undermine the marketing of a product it owns.  Thus, if Mattel

12  owned the rights to the BRATZ dolls, many of the allegations in the 05-2727

13  complaint would become moot.  That said, such consolidation did not do away with

14  the distinctions that do exist between the three cases.  As the Court highlighted in

15  its consolidation order, when either party files a pleading in the case, "the first

16  paragraph of [that] document . . . shall inform the Court to which case(s) the

17  document relates."

18  　　　　On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,

19  04-9049, finding there existed no reasonable apprehension of an imminent

20  copyright infringement claim being filed against him by Mattel based on Mattel's

21  Toon Teen intellectual property.  See Court's July 18, 2006, Order at 4.  The

22  Court's Order was predicated entirely upon counsel for Mattel's representation

23  during oral argument that it "will not maintain that Bratz infringes the copyright in

24  Toon Teens."  Owing to this representation, the Court, in dismissing the declaratory

25  judgment action, made clear that any future "claim by Mattel of copyright

26  ─────────────

27  　　[1] That the marketing of the BRATZ dolls lies at the heart of the issues between the rival doll makers in the 05-2727 case is best illustrated by the Court's

28  discussion of those allegations in its August 26, 2005, Order, Granting in Part and Denying Part Mattel's Motion to Strike portions of MGA's complaint.

3

EXHIBIT _6_

PAGE _39_

1  infringement based on the Toon Teens product is barred by counsel's

2  representation."  July 18, 2006, Order at 4.

3        Presently before the Court is Mattel's request for leave to file an amended

4  complaint in the 04-9059 action.  The complaint broadens considerably the nature

5  of the action from its genesis in state court.  Whereas before the complaint simply

6  sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7  employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8  claim to the BRATZ doll line), the amended complaint adds five more defendants

9  and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries.  For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19        Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23        Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT  6

PAGE  40

infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end, Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various BRATZ doll design drawings penned by Bryant.

A.    ANALYSIS

Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." With no consent to Mattel's proposed filing proffered by MGA and Bryant, determining whether to grant Mattel leave to file an amended complaint is gauged by looking to the familiar formulation of factors set forth by the Supreme Court in Forman v. Davis:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

371 U.S. 178, 182 (1962).

MGA and Bryant offer the following reasons for denying Mattel leave to amend: (1) Mattel has long known of the factual predicates underlying its copyright and intentional interference claims but delayed in asserting them; (2) the proposed amendment to add the copyright claim and the intentional interference claims (against the new defendants) are futile because they are barred by the applicable statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel because of its prior public disavowal of an intent to assert such a claim; and (4) MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

EXHIBIT 6

PAGE 41

1   suit because of alleged spoilation of evidence issues involving Mattel's ZEUS

2   computer system used by doll designers at Mattel and its e-mail system.  None of

3   these arguments are persuasive.

4        1.    Awareness of Factual Predicate for Copyright and Intentional

5             Interference Claims

6        MGA argues that Mattel has long known about the factual predicate for its

7   recently added copyright claim, observing that, "[o]ver four years ago, in August

8   2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9   created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10  that project — while still employed at Mattel." (MGA Opp. at 9).  Similarly, MGA

11  argues that Mattel has long known of the factual predicate for its intentional

12  interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13  admission, it learned in November 2003 — more than three years ago — that

14  Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15  Mattel."  (MGA Opp. at 11-12).

16       At the outset it must be observed that "[m]ere delay in proffering an

17  amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.

18  of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19  485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988).  Seizing upon

20  this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21  require discovery to be reopened after summary judgment motions have been filed"

22  has the Ninth Circuit found the denial of leave "justified" based on the passage of

23  time alone. (Reply to MGA Opp. at 3).  That is incorrect.  There is a line of cases

24  from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25  know of the facts underlying the amendment when the original complaint is filed,

26  the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan

27  v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)).  And, recently, the

28  Ninth Circuit upheld the denial of leave to amend based on the passage of time

EXHIBIT 6

PAGE 42

1  even though the requested leave to amend was tendered <u>before</u> the time, as set
2  forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.
3  See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).
4  The Ninth Circuit observed that, even when a request for leave to amend is timely
5  under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless
6  still deny the request based on any of the <u>Forman</u> factors. <u>Id.</u> at 951-52. The Ninth
7  Circuit then noted that the issue of untimeliness (regardless of whether the
8  amendment is tendered "within the period of time allotted by the district court in a
9  Rule 16 scheduling order") in seeking to amend can constitute a justification for
10  denying leave to amend if "the moving party knew or should have known the facts
11  and theories raised by the amendment in the original pleading." <u>Id.</u> at 953.
12  Toward that end, the Ninth Circuit observed that "an eight month delay between the
13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."
14  <u>Id.</u> In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,
15  even though the moving party had known of the facts prompting the amendment for
16  a long period of time, there still remained eight more months of discovery for the
17  parties to marshal facts against the allegations raised by the amended pleading:
18  "Even though eight months of discovery remained, requiring the parties to scramble
19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was
20  tainted, would have unfairly imposed potentially high, additional litigation costs on
21  Dialysist West that could have easily been avoided had AmerisourceBergen
22  pursued its 'tainted product' theory in its original complaint or reply." <u>Id.</u> Thus,
23  absent "a satisfactory explanation" for the delay in amending the complaint, the
24  Court is well within its rights to deny leave to amend. <u>Id.</u>

25        Mattel proffers the following reasons for taking the time that it did before
26  presenting its amended complaint: (1) Acting out of an abundance of caution to its
27  obligations under Rule 11 to present "factual contentions [that] have evidentiary
28  support," Mattel waited until its claims were better supported by evidence

7

EXHIBIT _6_

PAGE _43_

1    uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2    long stay and the parties' prior jurisdictional disputes" have left the case still in its

3    "nascent stage." (Reply to MGA Opp. at 2, 4).

4         The first reason is not well-founded. Rule 11 specifically allows parties to

5    aver factual allegations that "are likely to have evidentiary support after a

6    reasonable opportunity for further investigation or discovery" so long as the party

7    makes clear in its pleading that its factual contentions on those points are with the

8    caveat that they are based on a good faith belief that further discovery would

9    unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule

10    11 did not stand in the way of Mattel averring the factual contentions it now claims it

11    "merely suspected" as being the case based on the limited information before it.

12    Mattel could have gone ahead and made such suspected factual allegations so

13    long as it caveated those claims with the declaration that it reasonably believed that

14    those allegations would be borne out by further discovery. Perhaps the time by

15    which Mattel could have reasonably believed such allegations would be borne out

16    by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17    that such materialization took three or four years to occur.

18         The second reason would have some merit to it but for the fact that the

19    information that alerted (or should have alerted) Mattel to the existence of its now

20    asserted copyright and intentional interference claims was brought to Mattel's

21    attention well before the case was stayed on May 20, 2005. The stay, therefore,

22    did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23    stay does not explain why Mattel waited nearly six months after the stay was lifted

24    on May 16, 2006, to present those claims now.

25         All of that being said, the one thing that gives the Court pause in denying

26    leave based on the tardiness in Mattel's presentation is the lack of any evidence

27    that MGA or Bryant have been prejudiced by the delay. Delay unconnected to

28    some showing of prejudice, be it prejudice to the parties or disruption in judicial

EXHIBIT 6

PAGE 44

1  management of the case, does not suffice to deny granting leave to amend.  The

2  Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3  in an amendment to a complaint, there is no serious prejudice to defendant in

4  allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5  Indeed, the denial of leave was proper in the Dialysist case not simply because of

6  the length of the delay, but because the delay itself was "detrimental" in that it

7  would entail the opposing party to have "unfairly" incurred "potentially high,

8  additional litigation costs" that could have been avoided if the moving party had

9  made clear its intentions earlier.  465 F.3d at 953.

10       Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11  pleadings filed by MGA and Bryant in this case that both have been aware for some

12  time of the factual predicates now underlying Mattel's copyright claim and

13  intentional interference claim.  (See MGA Opp. at 5 ("As Bryant and MGA

14  suspected at the time of filing — and Mattel now concedes by conduct — those

15  deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16  along")(emphasis added)).  The parties have engaged in meaningful discovery

17  regarding many of the facts touched upon by these new claims, be it tracking down

18  experts in various forensic fields or taking depositions of various of the key players

19  to those claims.   In point of fact, in their papers filed with this Court before this

20  present motion, both Bryant and MGA have made it abundantly clear that they have

21  long suspected that a copyright infringement claim was in the offing as evidenced

22  by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23  05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24  have been on notice to the facts comprising the interference claim concerning

25  Bryant's contract as evidenced by the identity of the individuals who have been

26  deposed by Mattel, as well as the nature of the questions posed and the testimony

27  proffered at those depositions.  MGA's argument that, with the amendments, it

28  faces the prospect of defending "against stale claims" owing to faded memories and

9

EXHIBIT 6

PAGE 45

1  loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2  is diminished by the fact that (no doubt owing to the sophistication of all counsel

3  involved) discovery on these very issues have been proceeding apace by both

4  sides long before Mattel filed its proposed amendments. This is simply not a case

5  where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6  allowing the proposed amendments; much of those costs have already been borne

7  by the parties for some time.

8        2.    Spoilation of Evidence

9        MGA next argues that Mattel's delay in bringing the amended complaint has

10  caused it prejudice as, in the interim, critical pieces of evidence have been or are

11  suspected of having become lost. For instance, MGA asserts that Mattel's Rule

12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13  "although Mattel identified and segregated its most relevant backup tapes available

14  for Zeus, Mattel allowed its tape backup system to expire the database for those

15  backup tapes, thereby eliminating all information about what was actually stored on

16  those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer

17  system is critical because of Mattel's assertion that part of its copyright claim rests

18  on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)).

19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20  center personnel are stored on Zeus. Thus, the electronic documents stored on

21  Zeus – which should include the metadata showing who created, edited and

22  accessed Mattel's concept drawings and designs – during the time Bryant worked

23  in the design center at Mattel is vitally important to defending against Mattel's

24  claims." (MGA Opp. at 14). MGA's argument is neither an accurate

25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26  claim.

27        Ms. Marine did not testify that the information on the backup tapes (some

28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

EXHIBIT 6

PAGE 46

1  that could restore the information still found on those tapes:

2      Q.   So if you wanted to restore that 2002 backup
                tape[s] then, how would you go about doing that?

3                . . . .

4      A.   You need the hardware so if we don't have the
5                  hardware — if [the technology used by the tape
                is] DLT we don't have the hardware and you've
6                  got to buy it and — well, first you have to find a
                place to put it with adequate power which we
7                  don't have in the design center. You need to
                have a tape library. You need to have the tape
8                  drives that carried those tapes. You need a
                server that has the capability to – that's big
9                  enough to handle all of the hardware. You need
                the software – the license for the backup
10                 software[, Net Backup]. You need the disk space
                to restore it to and then you have to start reading
11                 in all those tapes.

12     Q.   You said that you don't have that in the design
                center. Do you have that hardware anywhere
13                 else in the company?

14     A.   DLT? No, no.

15     Q.   At what point did you get rid of the hardware?

16     A.   Once the last backups — DLT backups expired
                so it would have been a couple years ago
17                 probably.

18 (Decl. Diana Torres, Ex. K at 118-119).

19     The above testimony clearly denotes the difficulty in restoring what was on

20 Mattel's Zeus computer system during the relevant time frame, but it certainly does

21 not demonstrate that the information on those backup tapes has been "eliminated"

22 or forever lost. Undoubtedly it will be a costly endeavor to recover that information

23 (not to mention to later search and sort through it); but to argue, as MGA does, that

24 the information is "unavailable" or "lost," (MGA Opp. at 9, 14), exaggerates its

25 plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26 information on the Zeus backup tapes has been present for some time (maybe

27 since 2004 or perhaps even earlier). This is important because it undermines

28 MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

11

EXHIBIT __6__

PAGE __47__

1   it to suffer prejudice it otherwise would not have faced if the amendments were

2   brought sooner.  Such prejudice has been present for years, and Mattel's failure to

3   bring its amended complaint sooner would not have changed this situation.

4         Similarly, MGA's point that access to what was on the Zeus computer

5   system is vital in demonstrating that Bryant was not exposed to or otherwise did not

6   hack the system to steal other designers work is diminished to some extent by the

7   fact that Bryant himself testified that he did not use the Zeus computer system and

8   was "pretty much computer illiterate" while employed at Mattel.  Admittedly, the

9   ability to point to information on the Zeus system backup tapes to prove that Bryant

10  did not access other designers drawings or to prove the date those drawings were

11  created by those other designers would be useful evidence to negate Mattel's

12  factual claims.  Nonetheless, such evidence still would not discount other avenues

13  outside of the Zeus computer system by which Mattel could seek to prove that

14  Bryant was exposed to its copyrighted works, _e.g._, witness testimony that Bryant

15  saw drawings of the same posted on other designers' cubicles.

16        MGA next surmises that Mattel's e-mail records have disappeared, not

17  because it has any proof on that point, but simply because Mattel has postponed

18  the deposition of the individual most knowledgeable of Mattel's e-mail records until

19  after the hearing on Mattel's motion for leave to amend.  (MGA Opp. at 10).

20  Speculation of spoilation does not suffice.  That MGA's argumentation on this point

21  is nothing more than speculation is best exhibited by the evidence it has proffered

22  in support of its argument: "[I]f the sole retained backup for Zeus is no longer

23  available, it is not hard to _imagine_ that Mattel's electronic mail archives are similarly

24  out of reach."  (MGA Opp. at 15 (emphasis added)).  MGA then makes much of a

25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his

26  inbox would be automatically deleted if they had remained there for more than a

27  certain time period.  (Decl. Diana Torres, Ex. H at 292-93).  MGA takes from this

28  acknowledgment that Mattel has an "automatic email deletion system" that has

12

EXHIBIT _6_

PAGE _48_

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2   Noticeably absent from MGA's argument is any evidence that the e-mails so

3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4   whether such information remains or is otherwise archived on some backup file on

5   Mattel's computer system. Absent concrete proof that spoilation has occurred,

6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7   amend.

8        3.   Statute of Limitations

9        MGA next argues that Mattel's copyright and intentional interference claims

10  are futile as both are barred by the applicable statute of limitations. This argument

11  was pressed emphatically at oral argument. With respect to the copyright claim,

12  MGA argues that the applicable statute of limitations is three years, with the

13  limitations period accruing from when a party has knowledge of a violation or when

14  a reasonably diligent person would have been put on inquiry of the infringement.

15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

16  1994)). MGA argues that Mattel was put on notice about its copyright claim in

17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18  had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,

19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20  current copyright claim stale.

21       The problem with MGA's analysis is it fails to take into account the relations-

22  back principles found in Rule 15(c), which provides that "[a]n amendment of a

23  pleading relates back to the date of the original pleading when "the claim . . . in the

24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25  in the original pleading," or if such relation back is otherwise permissible by the

26  state "law that provides the statute of limitations applicable to the action." By

27  MGA's own admission Mattel's copyright claim arises out of the same conduct or

28  transaction contained in the original complaint filed in April, 2004, well within the

13

EXHIBIT  6

PAGE  49

1   applicable limitations period.[2]  (MGA Opp. at 12 ("These very same allegations

2   [contained in the original complaint] underlie the copyright infringement and

3   intentional interference contract claims Mattel now seeks to allege against MGA,

4   Mr. Larian and Bryant")).

5        MGA's statute of limitations argument with respect to the intentional

6   interference claims fares no better.  According to MGA, the applicable statute of

7   limitations is two years for an intentional interference with contract claim and Mattel

8   was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9   concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10  to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11  prior to the expiration of his contractual relationship with Mattel."[3]  (MGA Opp. at 18

12  (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) .  Such a time line

13  would, according to MGA, mean that the applicable limitations period expired on

14  Mattel's interference with Bryant's contract claim on November 24, 2005, well

15  before Mattel sought leave to file its amended complaint.  (Id).  The problem again

16  with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17  interference claim would relate back to when it filed its original complaint in April,

18

19

20       [2] The same would appear to be true — that the amendments would be timely

21  — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
    MGA's complaint in the 05-2727 case.

22

23       [3] With respect to Mattel's interference with contract claim as to one of its
    former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim

24  on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
    for MGA. (MGA Opp. at 19-20).  The problem with this argument is that nothing from

25  that simple event — Brawer's declaration of his intent to leave — in any way would
    apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct

26  (the stealing of proprietary information) causing Brawer to breach his contract with
    Mattel that he would not do anything to help a competitor while working for them.

27  MGA's contention that Mattel must have known of those misdeeds in mid-September
    is nothing more than speculation. Futility cannot be founded on what might or might

28  not be the case; either a claim is futile to bring or it is not.

EXHIBIT _6_

PAGE _50_

2004, well before the limitations period expired.[4]

Accordingly, MGA's futility argument is not well-founded.

4.    Prior Disavowals of Asserting a Copyright Claim

Finally, MGA takes umbrage with the cageyness to which Mattel has taken in this case as to whether or not it is asserting a copyright infringement claim against it. To MGA, such ducking and weaving on Mattel's part renders its effort to now bring such a copyright claim as one done in bad faith. No doubt the Court itself has been subjected to Mattel's overly vague statements on this point, but in the end nothing in those statements has ever foreclosed the possibility that such a claim may be in the offing. Indeed, during the oral argument on Mattel's motion to dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as to whether it would assert such a copyright claim against Bryant as it is currently seeking to do. The most that Mattel's counsel would proffer was that Mattel would not assert a copyright claim against Bryant based on Mattel's copyright rights in TOON TEENS. At that point, the Court directed the parties to engage in a meet and confer based on counsel for Mattel's representation and to provide a report to the Court based on those discussions. The report submitted to the Court made clear that, although Mattel was willing to accede that it would not bring a copyright claim based on TOON TEENS, it refused to accede to Bryant's broader request that "Bryant 'never copied anything' and that no Mattel product has any 'relevance' to any claim that Mattel has or ever will assert against Bryant." This by itself should have dispelled any illusion either Bryant or MGA was operating under that Mattel's prior statements had foreclosed any potential copyright claim against them.[5]

---

[4] Again the relations-back principle would also seem to render its claim timely if it were filed as an amended answer (the original having been filed in May, 2005) in the 05-2727 case.

[5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac Larian, for the "Doe" defendants listed in its original complaint is improper because Mattel knew of their identity when it filed the original complaint. The argument is

15

EXHIBIT 6

PAGE 51

That said, Mattel's allegation in the amended complaint as to how it is seeking to lay claim to the copyright in BRATZ is disconcerting.  Paragraph 26, subsection a, in the amended complaint alleges that Bryant "misappropriated and misused Mattel property" by "using his exposure to Mattel development programs to create the concept, design and name of Bratz."  (First Am. Compl. ¶ 26(a)).  Such "exposure" could include Bryant misappropriating the Mattel design concept in TOON TEENS in drawing his inspiration for the BRATZ doll.  Were Mattel's copyright claim so predicated it would be barred by this Court's July, 2006, Order, dismissing Bryant's declaratory judgment action.  Mattel was pressed on this point during oral argument and conceded that such "exposure" to Mattel "development programs" did not include TOON TEENS.  With this representation, nothing in Mattel's proposed copyright claim is barred under the rubric of bad faith.

>        5.    Judicial Economy Considerations

In his opposition, Bryant adds an additional reason for denying leave beyond those contained in MGA's papers — the amendment would muddy the waters in the 04-9059 by adding "tangential" issues that would only serve to delay resolution of the key issue lying at the heart of the complaint:  Who owns the rights to the BRATZ line of dolls.  (Bryant Opp. at 2 ).  Bryant notes that the case has proceeded apace in moving toward resolving that issue, and the amendment would "transform

misplaced.  As made clear by Mattel, California law allows a plaintiff to substitute in a defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or ignorant of the basis for liability at the time the complaint was filed.  See Miller v. Thomas, 121 Cal.App.3d 440 (1981).  MGA does not dispute this legal contention but at oral argument disputed that Mattel did not know the basis for liability against itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in the original complaint and those now proffered against the two in the amended complaint.  Specifically, MGA notes that the original complaint spoke of Bryant working for one of Mattel's competitiors and of that employee's theft of Mattel's intellectual property before leaving to work for that competitior.  At most, all this shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr. Larian encouraged Bryant's alleged unlawful behavior recited in the original complaint.

EXHIBIT 6

PAGE 52

1   what Mattel has always claimed was a straightforward employment action against
2   an individual defendant into a global commercial dispute against Mattel's primary
3   competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns
4   BRATZ.[6]  (Bryant Opp. at 2).  Mattel argues that "the law does not deny leave to
5   amend because claims are 'tangential'" and then reiterates its point that some
6   showing of prejudice, namely, seeking leave after expiration of discovery, is
7   necessary. (Reply to Bryant Opp. at 3).  That is not entirely correct.

8          As noted previously, the Ninth Circuit recently upheld a denial for leave to
9   amend because the amendment would have "drastically changed" the litigation,
10  even though the leave request was tendered <u>before</u> the time, as set forth in a Rule
11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well
12  before the discovery cut-off. <u>See AmerisourceBergen Corp. v. Dialysist West, Inc.,</u>
13  465 F.3d 946, 953 (9th Cir. 2006).  In justifying its reasoning the Ninth Circuit cited
14  approvingly to the following statement from a well-respected treatise: "If an
15  amendment substantially changes the theory on which the case has been
16  proceeding and is proposed late enough so that the opponent would be required to
17  engage in significant new preparation, the court may deem it prejudicial." <u>Id.</u> at 953
18  n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
19  FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)).  Thus, <u>Dialysist</u>
20  recognized that the introduction of "different legal theories" and/or proof of
21  materially different facts well into the litigation can itself be a basis for finding
22  prejudice regardless of whether the period for discovery has expired (or is even
23  close to expiring) or the parties have already filed summary judgment motions. <u>Id.</u>
24  at 953-54.

25         Although the parties can safely be said to be at this point well into the

26

27         [6] Bryant also brings intricate legal arguments about the sufficiency of the
28  allegations Mattel has averred in building its RICO claims against him.  Such
    considerations are best left to be resolved on a properly filed motion to dismiss.

EXHIBIT 6

PAGE 53

1  litigation in this consolidated action (as evidenced by the protracted discovery

2  disputes contained in the docket sheet that the parties have had before the

3  magistrate judge and now the special master, and the litigation of motions to

4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel

5  has made painfully clear in its papers, no scheduling order has been entered in this

6  case.[7] This takes away somewhat from the prejudice Dialysist found to exist when

7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the

8  litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial

9  motions and other matters (e.g., discovery cutoff), the parties have been given free

10 reign in how to conduct the litigation in this case.

11        That the delay in bringing the proposed amendments and the relative length

12 of time into the litigation when those amendments were brought may not neatly fold

13 into Dialysist's reasoning does not mean that leave must nonetheless be granted.

14 The 04-9059 action, as it is presently constituted, is not a complex one. It asks a

15 rather narrow and straightforward question — Did anything from Bryant's

16 employment at Mattel during the 1999-2000 period give Mattel ownership rights to

17 the BRATZ doll line? The proposed amendments would radically alter the litigation

18 in that case to include far ranging disputes involving multiple parties and concerning

19 events not connected with the BRATZ ownership issue. That the original action

20 was a relatively simple and straight-forward matter raises another point beyond the

21 change in the action's litigation posture — whether entangling the rival doll makers'

22 other commercial disputes into this particular case would serve to muddy the waters

23 and make the matter that much more difficult to manage from the Court's

24 perspective.

25        [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced

26 by the fact that the parties only just recently exchanged in initial disclosures is
   misleading. The exchange of initial disclosures referred to by Mattel is in the 05-

27 2727 case. With respect to the 04-9059 case it appears that such initial disclosures
   were completed long ago as evidenced by the fact that discovery disputes appeared

28 in that case as far back as January, 2005.

EXHIBIT 6

PAGE 54

1    As has long been recognized, equally important in determining whether to

2  grant such leave is what impact such amendments would have on the court's ability

3  to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4  § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5  economy and its ability to manage the case. . . . The court should also temper the

6  policy favoring freely granting leave to amend with consideration of the ability of the

7  district court to manage the case adequately if amendment is allowed"). As Judge

8  Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9  the court should consider judicial economy and whether the amendments would

10  lead to expeditious disposition of the merits of the litigation. Finally, the court

11  should consider whether the amendment adds substance to the original allegations,

12  and whether it is germane to the original case of action." Chitimacha Tribe of

13  Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14  Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15  1987)("General considerations of judicial economy also justify allowing the

16  amendments. The violations included in the proposed amendment relate to the

17  same subject matter as the original complaint. Allowing the amendment will further

18  the federal policy of 'wrapping in one bundle all matters concerning the same

19  subject matter.'").

20    Mattel's amendments do not add substance to the claims contained in its

21  original complaint. Rather, they would expand the universe of claims and

22  defendants stretching well-beyond the questions raised in the original complaint

23  over whether Bryant's conduct while in the employ of Mattel subjected his later

24  attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25  Agreement or otherwise rendered his creation subject to an infringement action.

26  Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27  the narrowness of the allegations contained in its original complaint. In fact, the

28  precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

EXHIBIT 6

PAGE 55

1  more congruity to the allegations leveled against it in MGA's Lanham Act case than

2  to those in the action to which it seeks to add them:

3          [M]any of the matters raised by Mattel's proposed
4          Amended Complaint are and will remain at issue
           because of MGA's Complaint, whether or not leave to
5          amend is granted. MGA's claims allege that a broad
           array of purported Mattel conduct across the globe,
6          starting at least as early as 1999, has violated the
           Lanham Act and unfair competition law. This includes
7          Mattel's alleged infringement of Bratz and other MGA
           products. As a result, issues in the proposed Amended
8          Complaint are already part and parcel of Mattel's
           defenses to MGA's unfair competition claims, including
9          because they show that MGA and Bryant, and not
           Mattel, are ones who stole the products and other
10         properties involved.

11  (Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this

12  discongruity unimportant because "all of these matters have been consolidated with

13  the Bryant case." (Id. at 7). As noted earlier, the fact that the cases have been

14  consolidated does not mean that the parties can ignore the distinctions that still

15  exist between them. If, as Mattel acknowledges, the present amendments are

16  nothing more than re-formulated defenses and counterclaims it presently has to

17  MGA's complaint against it in the 05-2727 case, then such amendments should be

18  brought in the form of an amended answer and counterclaim in that case.

19         Consideration of the distinctions between the two cases is wise as it serves

20  as a useful tool in providing the Court a better means to manage the cases now

21  that they have been consolidated. The proverbial dog (ownership in BRATZ)

22  should be wagging the proverbial tail (the remaining commercial disputes), not the

23  other way around. Admittedly, the dog's tail has grown in size both by MGA's filing

24  of its complaint in the 05-2727 action and Mattel's response thereto through its

25  proposed amendments. Nonetheless, it is readily apparent to the Court that the

26  crown jewel in this action still remains the ownership rights to the BRATZ dolls. The

27  parties have engaged in extensive and undoubtedly expensive discovery on this

28  very issue (from hiring world-renowned experts to test the age of Bryant's design

20

EXHIBIT 6

PAGE 56

1  drawings to technically complex discovery of what is on each other's computers).

2      Indeed the separateness of the two matters is reflected in how the cases are

3  currently structured, namely, the narrowness of the issue involved in 04-9059 and

4  the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court

5  believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6  off and trial date are set well-ahead of those in 05-2727 makes the most sense. As

7  noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8  the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to

9  the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10 "development programs" or by way of the Inventions Agreement because he

11 continued to work on his designs while at Mattel), then large portions of MGA's

12 Lanham Act infringement claims may become moot. By the same token, if Mattel

13 does not own rights to BRATZ, then some of the defenses and counterclaims set

14 forth as independent claims in the present amended complaint may become moot,

15 including Mattel's copyright infringement claim as well as portions of its remaining

16 RICO, misappropriation, and aiding and abetting claims. If, however, the Court

17 were to allow the amended complaint to be filed in the 04-9059 action, such case

18 management would be difficult, if not impossible as many of the issues being

19 litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20 amendment. Due to this substantial overlap in claims and facts, a two-track

21 scheduling order utilizing the case number distinctions would be impossible to craft.

22 When pressed by the Court at oral argument as to which of its proposed claims it

23 believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24 Mattel cited to its copyright and RICO claims. However, upon further questioning

25 by the Court, counsel for Mattel acknowledged that much of those claims were, like

26 the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27      In light of the burden allowing Mattel's amendment to proceed would have on

28 this Court's ability to efficiently manage these consolidated matters denial of

21

EXHIBIT  6

PAGE  57

Mattel's request to amend its complaint in the 04-9059 matter is justified. <u>See</u> <u>Perrian v. O'Grady</u>, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial system can justify a denial of a motion to amend 'even if the amendment would cause no hardship at all to the opposing party'"). Buttressing the Court's decision is the fact that, even with such a denial, Mattel may file (and the Court provides leave to Mattel to so file) an amended answer and counterclaim in the 05-2727 case raising all the new claims and defendants presently sought to be achieved through amendment of its complaint in the 04-9059 action. None of the substantive concerns raised by MGA and Bryant to the present amended complaint, <u>e.g.</u>, statutes of limitations, would appear to be affected if the new claims and defendants were brought as defenses and counterclaims in the 05-2727 case as opposed to the 04-9059 one.

Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the 05-2727 case.

Finally, the lack of a scheduling order in this case is problematic; one should have been entered long ago. <u>See</u> Fed. R. Civ. P. 16(b)(noting that a scheduling "order shall issue as soon as practicable but in any event within 90 days after the appearance of a defendant and within 120 days after the complaint has been served on a defendant"). In light of the fact that entry of a scheduling order is woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b) scheduling conference be held in this consolidated matter on February 12, 2007, at 1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f) report with the Court by February 5, 2007.

IT IS SO ORDERED.

DATE: _1-11-07_

_S. Larson_

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

22

EXHIBIT _6_

PAGE _58_

# EXHIBIT 7

CALENDARED

RECEIVED

FEB 2 3 2007

SEND

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., | Case No. CV 04-09059 SGL(RNBx) |
| Plaintiff, | SCHEDULING ORDER [FRCP 16(b)] |
| v. | 1.  Establishing a Discovery Cut-off Date of October 22, 2007 |
| CARTER BRYANT, DOES 1-10, INCLUSIVE, | 2.  Non-Discovery Motion Hearing Cutoff date of November 19, 2007, at 10:00 a.m. |
| Defendants. | 3.  Setting Final Pretrial Conference for January 14, 2008, at 11:00 a.m. |
| | 4.  Setting Jury Trial Date of February 12, 2008, at 9:30 a.m. |

**READ THIS ORDER CAREFULLY.  IT CONTROLS THE CASE**

**AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

The above matter is set for trial before the Honorable Stephen G. Larson, United States District Judge, Courtroom 1, United States District Court, Eastern Division, 2nd Floor, Riverside, California.

DOCKETED ON

FEB 2 2 2007

1.    **Discovery Cut-Off:** This is the last date to complete discovery, including expert discovery, and the resolution of any discovery motions before this court.  If

EXHIBIT 7

PAGE 59



1   expert witnesses are to be called at trial, the parties shall designate experts to be called
2   at trial and provide reports required by Fed. R. Civ. P. 26(a)(B), not later than eight
3   weeks prior to the discovery cutoff date. Rebuttal expert witnesses shall be designated
4   and reports provided as required by Fed.R.Civ.P. 26(a)(2)(B), not later than five weeks
5   prior to the discovery cutoff date. Failure to timely comply with this deadline may result
6   in the expert being excluded at trial as a witness. The Court requires compliance with
7   Local Rule 37-1 and 37-2 in the preparation and filing of discovery motions. Discovery
8   motions may not be heard on an ex parte basis.

9       **2.**      **Joinder of Parties and Amendment of Pleadings:**   This deadline does
10   not apply if the deadline for joining parties or amending pleadings has already been
11   calendared or occurred by virtue of an order issued by another Judge.

12          In addition to the requirements of Local Rule 15-1, all motions to amend the
13   pleadings shall (a) state the effect of the amendment; (b) be serially numbered to
14   differentiate the amendment from previous amendments and (c) state the page, line
15   number(s), and wording of any proposed change or addition of material.

16       3.      **Motion Filing Cut-Off:** The Court hears motions on Mondays at 10:00
17   a.m. The motion filing cut-off date is the last day motions may be heard (not filed). The
18   Court will not decide late motions. Issues left undetermined by the passage of the
19   motion cut-off date should be listed as issues for trial in the Final Pretrial Conference
20   Order. As an exception to the above, motions in limine dealing with evidentiary matters
21   may be heard at or before trial; however, summary judgment motions disguised as
22   motions in limine will not be heard. Parties need not wait until the discovery cut-off to
23   bring motions for summary judgment or partial summary judgment. However, in the
24   usual case, the court expects that more than the minimum notice will be provided to
25   counsel opposing motions for summary judgment. In the usual case, the parties should
26   confer and agree on the date for setting such motions.

27

28

2

EXHIBIT __7__

PAGE _60_

1       Ex parte applications are entertained solely for extraordinary relief. See Mission

2 Power Eng. Co. v. Continental Casualty Co., 883 F.Supp. 488 (C.D. Cal. 1995). Strict

3 adherence to proper ex parte procedures is required for any ex parte application filed

4 with the Court.

5      4.   **Stipulations to Extend Time:** Stipulations to extend the time to file any

6 required document or to continue any pretrial or trial date must set forth (a) the existing

7 due date or hearing date; (b) the current pretrial conference date and trial date; (c) the

8 specific reasons supporting good cause for granting the extension or continuance; and

9 (d) whether there have been any prior requests for extensions or continuances, and

10 whether these were granted or denied by the Court.

11      5.   **Summary Judgment Motions:** The Separate Statement of Undisputed Facts

12 is to be prepared in a two-column format. The left-hand column should set forth the

13 allegedly undisputed fact. The right-hand column should set forth the evidence that

14 supports the factual statement. The fact statements should be set forth in sequentially

15 numbered paragraphs. Each paragraph should contain a narrowly focused statement

16 of fact. Each numbered paragraph should address a single subject in as concise a

17 manner as possible.

18      The opposing party's statement of genuine issues must be in two columns and

19 track the movant's separate statement exactly as prepared. The document must be in

20 two columns; the left-hand column must restate the allegedly undisputed fact, and the

21 right-hand column must indicate either undisputed, or disputed. The opposing party

22 may dispute all or only a portion of the statement, but if disputing only a portion, must

23 clearly indicate what part is being disputed. Where the opposing party is disputing the

24 fact in whole or part, the opposing party must, in the right-hand column, label and

25 restate the moving party's evidence in support of the fact, followed by the opposing

26 party's evidence controverting the fact. Where the opposing party is disputing the fact

27 on the basis of an evidentiary objection, the party must cite to the evidence alleged to

28

EXHIBIT __7__

PAGE _61_

1  be objectionable and state the ground of the objection and nothing more.  **No**
2  **argument should be set forth in this document.**

3       The opposing party may submit additional material facts that bear on or relate to
4  the issues raised by the movant, which shall follow the format described above for the
5  moving party's separate statement.  These additional facts shall follow the movant's
6  facts, shall continue in sequentially numbered paragraphs (i.e., if movant's last
7  statement of fact was set forth in paragraph 30, then the first new fact will be set forth in
8  paragraph 31), and shall set forth in the right hand column the evidence that supports
9  that statement.

10      The moving party, in its reply, shall respond to the additional facts in the same
11  manner and format that the opposition party is required to adhere to in responding to
12  the
13  statement of undisputed facts, as described above.

14      **(a)  Supporting Evidence:** No party should submit any evidence other than
15  the specific items of evidence or testimony necessary to support or controvert a
16  proposed statement of undisputed fact.  Thus, for example, the entire transcript of a
17  deposition, entire sets of interrogatory responses, and documents that do not
18  specifically support or controvert material in the separate statements, should not be
19  submitted in support or opposition to a motion for summary judgment.  Any such
20  material will not be considered.

21      Evidence submitted in support of or in opposition to a motion should be
22  submitted either by way of stipulation or as exhibits to declarations sufficient to
23  authenticate the proffered evidence, and should not be attached to the Memorandum of
24  Points and Authorities.  The Court will accept counsel's authentication of deposition
25  transcript, of written discovery responses, and of the receipt of documents in discovery
26  if the fact that the document was in the opponent's possession is of independent
27  significance.  Documentary evidence as to which there is no stipulation regarding
28

4

EXHIBIT  7

PAGE  62

1 | foundation must be accompanied by the testimony, either by declaration or properly
2 | authenticated deposition transcript, of a witness who can establish its authenticity.

3 |     If evidence in support of or in opposition to a motion exceeds twenty pages, the
4 | evidence must be in a separate bound volume and include a Table of Contents.

5 |     **(b) Objections to Evidence:** If a party disputes a fact based in whole or in
6 | part on an evidentiary objection, the ground of the objection, as indicated above,
7 | should be stated in the separate statement but not argued in that document.
8 | Evidentiary objections are to be addressed in a separate memorandum to be filed with
9 | the opposition or reply brief of the party. This memorandum should be organized **to**
10 | **track the paragraph numbers of the separate statement in sequence**. It should
11 | identify the specific item of evidence to which objection is made, the ground of the
12 | objection, and a very brief argument with citation to authority as to why the objection is
13 | well taken. The following is an example of the format contemplated by the Court:

14 |       Separate Statement Paragraph 1: Objection to the supporting deposition
15 |       transcript of Jane Smith at 60:1-10 on the grounds that the statement
16 |       constitutes inadmissible hearsay and no exception is applicable. To the
17 |       extent it is offered to prove her state of mind, it is irrelevant since her state of
18 |       mind is not in issue.

19 |       Fed. R. Evid. 801, 802.

20 |     Do not submit blanket or boilerplate objections to the opponent's statements of
21 | undisputed fact: these will be disregarded and overruled.

22 |     **(c) The Memorandum of Points and Authorities:** The movant's
23 | memorandum of points and authorities should be in the usual form required under
24 | Local Rule 7-5 and should contain a narrative statement of facts as to those aspects of
25 | the case that are before the Court. All facts should be supported with citations to the
26 | paragraph number in the Separate Statement that supports the factual assertion and
27 | not to the underlying evidence.

28 |

EXHIBIT __7__

PAGE __63__

1         Unless the case involves some unusual twist on Rule 56, the motion need

2 only

3 contain a brief statement of the Rule 56 standard;  the Court is familiar with the Rule

4 and

5 with its interpretation under Celotex and its progeny.  If at all possible, the argument

6 should be organized to focus on the pertinent elements of the cause(s) of action or

7 defense(s) in issue, with the purpose of showing the existence or non-existence of a

8 genuine issue of material fact for trial on that element of the claim or defense.

9         Likewise, the opposition memorandum of points and authorities should be in

10 the

11 usual form required by Local Rule 7-5, and where the opposition memorandum sets

12 forth facts, the memorandum should cite to paragraphs in the separate statement if

13 they are not in dispute, to the evidence that contravenes the fact where the fact is in

14 dispute or, if the fact is contravened by an additional fact in the statement of genuine

15 issues, the citation should be to such fact by paragraph number.

16     **(d)  Timing:**  In virtually every case, the Court expects that the moving party

17 will provide more than the minimum twenty-one (21) day notice for such motions.  The

18 moving party should deliver to chambers a copy of a diskette, in WordPerfect format

19 (11.0 or earlier versions), containing the Statement of Uncontroverted Facts and

20 Conclusions of Law.

21    6.  **Motions in Limine:**  The parties must file motions in limine addressing the

22 admissibility of evidence in accordance with Local Rule 7-3.  The parties shall file their

23 opposing and reply papers in accordance with Local Rules 7-9 and 7-10 respectively.

24    7.  **Pretrial Conference and Trial Setting:**  Compliance with the requirements of

25 Local Rule 16 is mandatory.  Counsel shall submit carefully prepared Memoranda of

26 Contentions of Fact and Law (which may also serve as the trial briefs) and Proposed

27 Pre-Trial Conference Order ("PTCO") in accordance with the provisions of Local Rules

28 16-2.8 through 16-6. The Proposed Pre-Trial Conference Order shall conform to the

EXHIBIT __7__

PAGE __64__

1  example set forth in Appendix A to the Local Rules, modified as necessary to comply

2  with this order.          The Memoranda of Contentions of Fact and Law, Exhibit

3  Lists, and Witness Lists shall be served and filed no later than fourteen (14) calendar

4  days before the Pre-Trial Conference. The Proposed Pre-Trial Conference Order shall

5  be lodged fourteen (14) calendar days before the Pre-Trial Conference.

6          The Proposed Pre-Trial Conference Order must contain a Table of Contents.

7  Place in all capital letters and in bold the separately numbered headings for each

8  category in the PTCO. Under paragraph 1, list each claim, counterclaim, or defense

9  that has been dismissed or abandoned. In multiple-party cases where not all claims or

10  counterclaims will be prosecuted against all remaining parties on the other side, please

11  specify to which party each claim or counterclaim is directed. The factual issues in

12  dispute should track the elements of a claim or defense upon which the jury would be

13  required to make findings. Counsel should state issues in ultimate fact form, not as

14  evidentiary fact issues (i.e., "was the defendant negligent," "was defendant's negligence

15  the proximate cause of plaintiff's injury;" not "was the plaintiff standing on the corner of

16  12th Street and Lemon Avenue at 10:00 a.m. on March 1"). Issues of law should state

17  legal issues upon which the Court will be required to rule after the Pre-Trial Conference,

18  including during the trial, and should not list ultimate fact issues to be submitted to the

19  trier of fact.

20          In drafting the PTCO, the court expects that counsel will attempt to agree on

21  and set forth as many non-contested facts as possible. The court will normally read the

22  uncontested facts to the jury at the start of the trial. Carefully drafted and

23  comprehensively stated stipulation of facts will reduce the length of trial and increase

24  jury understanding of the case.

25          If expert witnesses are to be called at trial, each party must list and identify its

26  respective expert witnesses, both retained and non-retained. Failure of a party to list

27  and identify an expert witness in the Proposed Pre-Trial Conference Order shall

28  preclude a party from calling that expert witness at trial.

7

EXHIBIT __7__

PAGE __65__

1         This case has been placed on calendar for a Final Pretrial Conference ("PTC")

2  pursuant to Fed. R. Civ. P. 16 and Local Rule 16-1, unless the PTC was expressly

3  waived at the Scheduling Conference by the court. Unless excused for good cause,

4  each party appearing in this action shall be represented at the PTC and all pretrial

5  meetings of counsel, by lead trial counsel. The failure to attend the PTC or to submit

6  the required pretrial documents may result in the dismissal of the action, striking the

7  answer and entering a default, and/or the imposition of sanctions.

8         A continuance of the Final Pretrial Conference at counsel's request or

9  stipulation will <u>only</u> be approved upon a showing of good cause. Counsel should plan

10  to do the necessary pretrial work on a schedule which will insure its completion with

11  time to spare before the Final Pretrial Conference. Specifically, failure to complete

12  discovery work, including expert discovery, is not a ground for a continuance.

13        Compliance with the requirements of Local Rules 16-1 to 16-13 is required by

14  the court. Carefully prepared Memoranda of Contentions of Fact (which may also serve

15  as the trial brief) and a proposed Final Pretrial Conference Order shall be submitted in

16  accordance with the provisions of Local Rule 16-6 and the form of the proposed Final

17  Pretrial Conference Order shall be in conformity with the format set forth in Appendix A

18  to the Local Rules.

19        At the PTC, counsel should be prepared to discuss means of streamlining the

20  trial, including, but not limited to: bifurcation, presentation of non-critical testimony by

21  deposition excerpts, stipulations as to the content of testimony, presentation of

22  testimony on direct examination by declaration subject to cross-examination, and

23  qualification of experts by admitted resumes. In certain cases where the PTC is waived

24  by the court, counsel must follow Local Rule 16-10.

25     **8.**  **Witness List and Times Estimates:** Counsel shall prepare a list of their

26  witnesses, an estimate of the length of time needed for direct examination for each

27  witness, and whether the witness will testify by deposition or in person. Counsel shall

28

8

EXHIBIT 7

PAGE 66

1  exchange these lists with opposing counsel.[1] **Counsel shall jointly file a single**
2  **witness list, including estimates for direct examination of their own witnesses**
3  **and estimates for cross-examination of opposing witnesses.** This list shall be filed
4  at the time counsel lodge the Proposed Pre-Trial Conference Order, i.e., fourteen (14)
5  days before the Pre-Trial Conference.

6      9.    <u>Jury Instructions and Verdict Forms:</u> Fourteen (14) calendar days prior to
7  counsel's Rule 16 pre-trial meeting, counsel shall exchange proposed jury instructions
8  (general and special) and special verdict forms (if applicable). Seven (7) calendar days
9  prior to the Rule 16-2 meeting, counsel shall exchange any objections to the
10 instructions and special verdict forms. Prior to, or at the time of the Rule 16 meeting,
11 counsel shall meet and confer with the goal of reaching agreement on one set of joint
12 jury instructions and one special verdict form.

13      The parties should make every attempt to agree upon the jury instructions
14 before submitting them to the Court. The Court expects counsel to agree on the
15 substantial majority of jury instructions, particularly when pattern instructions provide a
16 statement of applicable law. When the Manual of Model Civil Jury Instructions for the
.17 Ninth Circuit provides a version of an applicable requested instruction, the parties
18 should submit the most recent version of the Model instruction. Where language
19 appears in brackets in the model instruction, counsel shall select the appropriate text
20 and eliminate the inapplicable bracketed text. Where California law applies, counsel
21 should use <u>California Jury Instructions – Civil</u> (8th ed.) ("BAJI"). If neither of the above
22 sources is applicable, counsel are directed to use the instructions from O'Malley, Grenig
23 & Lee (formerly Devitt, <u>et al.</u>), <u>Federal Jury Practice and Instructions</u> (latest edition).
24 Each requested jury instruction shall cover only one subject or principle of law and shall
25 be numbered and set forth in full on a separate page, citing the authority or source of
26 the requested instruction (except for the "clean" jury copy discussed below).

27

28    [1]  <u>See</u> "Joint Trial Witness Estimate Form" appended to this order.

EXHIBIT ___7___

PAGE _67_

1    When the parties disagree on an instruction, the party opposing the instruction
2  must attach a short statement (one to two paragraphs) supporting the objection, and
3  the party submitting the instruction must attach a short statement supporting the
4  instruction. Each statement should be on a separate page and should follow directly
5  after the disputed instruction.

6    The parties ultimately must submit one document or, if the parties disagree
7  over any proposed jury instructions, two documents. If the parties submit two
8  documents, those documents shall consist of: (a) a set of Joint Proposed Jury
9  Instructions and (b) a set of Disputed Jury Instructions, along with reasons supporting
10  and opposing each disputed instruction in the format set forth in the previous
11  paragraph.

12    The parties must file proposed jury instructions fourteen (14) calendar days
13  before the Pre-Trial Conference. If the court is closed that day, counsel shall file the
14  proposed instructions the preceding Friday. No later than 4:00 p.m. on the date such
15  instructions are due, the parties must submit conformed courtesy copies to the Court's
16  courtesy box located outside the entrance to Courtroom 1, United States District Court,
17  3470 Twelfth Street, 2nd Floor, Riverside, California. Counsel shall also provide the
18  Court with a 3½ inch diskette compatible with WordPerfect version 11.0 or lower
19  containing the proposed jury instructions, in accordance with this paragraph and the
20  previous paragraph.

21    The Court will send a copy of the instructions into the jury room for the jury's
22  use during deliberations. Accordingly, in addition to the file copies described above, the
23  diskette submitted with the jury instructions shall contain a "clean set" of Joint Proposed
24  and/or Disputed Jury Instructions, containing only the text of each instruction set forth in
25  full on each page, with the caption "Court's Instruction No. ___" (eliminating titles,
26  supporting authority, indication of party proposing, etc.).

27    An index page shall accompany all jury instructions submitted to the Court.
28  The index page shall indicate the following:

EXHIBIT 7

PAGE 68

1  (a) The number of the instruction;

2  (b) A brief title of the instruction;

3  (c) The source of the instruction and any relevant case citations; and

4  (d) The page number of the instruction.

5  EXAMPLE:

6  | Number | Title | Source | Page |

7  | 1 | Trademark-Defined (15 U.S.C. § 1127) | 9th Cir. 15.3.2 | 7 |

8
9  Along with the jury instructions, counsel shall submit any necessary special

10  verdict form fourteen (14) calendar days before the Pre-Trial Conference.

11  **10. Voir Dire Questions:** Counsel may, but need not, submit brief proposed voir

12  dire questions for the jury at the Pre-Trial Conference. The Court will conduct its own

13  voir dire after consulting any proposed voir dire submitted by counsel. After the Court

14  conducts its own voir dire, counsel will be provided an opportunity to ask supplemental

15  questions subject to Court approval.

16  **11. Joint Statement of the Case:** Counsel shall submit a joint statement of the

17  case at the Pretrial Conference. The joint statement of the case will be read to the

18  prospective panel of jurors prior to the commencement of voir dire. The statement

19  should not exceed one page. The statement shall be filed with the Court no later than

20  4:00 p.m., on the Wednesday prior to the Pre-Trial Conference.

21  **12. Exhibits:** The parties shall file their witness lists and exhibits lists in

22  accordance with Local Rule 16. Counsel are to assemble their exhibits by placing them

23  in three-ring binders labeled on the spine portion of the binder showing both the volume

24  number and the exhibit numbers. Each exhibit shall be separated by a tabbed divider

25  on the right side. Counsel shall provide original exhibits for the courtroom deputy clerk

26  and a duplicate set for the judge. The original exhibits shall be tagged with the

27  appropriate exhibit tags in the upper or lower right corner of the first page of each

28  exhibit and include the case number, case name, and exhibit number. Each binder

11

EXHIBIT __7__

PAGE __69__

1  shall contain a Table of Contents. Counsel must comply with Local Rule 26-4 when

2  numbering the exhibits. The Clerk's Office, located at the United States District Court,

3  3470 Twelfth Street, Riverside, California can supply counsel with appropriate exhibit

4  tags.

5        The Court requires the following to be submitted to the courtroom deputy clerk

6  on the first day of trial: (a) The original exhibits with the Court's exhibit tags; (b) one

7  bench book with a copy of each exhibit for the Court's use, tabbed as described above;

8  (c) three (3) copies of exhibit lists and a floppy disk containing the exhibit list; (d) three

9  (3) copies of witness lists in the order in which the witnesses will be called to testify; and

10  (e) file a Notice of Lodging of Deposition Transcripts (original and 2 copies) and Lodge

11  all anticipated trial deposition transcripts directly with the deputy clerk in the courtroom.

12        All counsel are to meet no later than ten (10) calendar days before trial to

13  discuss and agree to the extent possible on issues including foundation and

14  admissibility.

15      **13. Pre-Trial Exhibit Stipulation:** The parties shall prepare a Pre-Trial Exhibit

16  Stipulation which shall contain each party's numbered list of trial exhibits, with

17  objections, if any, to each exhibit including the basis of the objection and the offering

18  party's response. All exhibits to which there is no objection shall be deemed admitted.

19  All parties shall stipulate to the authenticity of exhibits whenever possible, and the Pre-

20  Trial Exhibit Stipulation shall identify any exhibits whose authenticity has not been

21  stipulated to and the specific reasons for the party's failure to stipulate.

22        The Stipulation shall be substantially in the following form:

23                       Pre-Trial Exhibit Stipulation

24  Plaintiff's Exhibits

25  

| Number | Description | Objection | Response to Question |
|--------|-------------|-----------|----------------------|

26  

27  Defendant's Exhibits

28  

| Number | Description | Objection | Response to Question |
|--------|-------------|-----------|----------------------|

12

EXHIBIT __7__

PAGE __70__

The Pre-Trial Exhibit Stipulation shall be filed at the same time as counsel lodges the Proposed Pre-Trial Conference Order. Failure to comply with this paragraph may constitute a waiver of all objections.

**14. Findings of Fact and Conclusions of Law:** For a non-jury trial, counsel for each party shall lodge proposed findings of fact and conclusions of law fourteen (14) days before trial. The parties should deliver to chambers a copy of these findings and conclusions of law on disk in WordPerfect format.

(a)     Underline in red the portions which it disputes;

(b)     Underline in blue the portions which it admits;  and

(c)     Underline in black the portions which it deems not disputed, but deems irrelevant.

Counsel may agree with a part of a finding or conclusion, disagree with a part of it and/or consider a part of irrelevant.

Two marked copies of opposing counsel's proposed findings of fact and conclusions of law shall be lodged with the court seven (7) days before trial and one marked copy shall be served on opposing counsel. Courtesy copies of the marked copies shall be deposited in the drop box located outside the entrance of Courtroom 1 of the above-entitled court on the date due.

**15. Settlement:** Local Rule 16-14.2 provides that the Settlement Conference shall be conducted not later than 45 days before the Pretrial Conference. The Court believes that in most cases completion of all discovery and dispositive motions will help the parties assess their positions before they embark on the costly pre-trial process. However, in many cases, the parties find it more difficult to settle after they have incurred the cost of all discovery and motion practice. Accordingly, the Court strongly encourages counsel and the parties to pursue settlement earlier.

The Court has a keen interest in helping the parties achieve settlement. If the parties believe that it would be more likely that a settlement would be reached if they

EXHIBIT ___7___

PAGE ___71___

1 conduct settlement conference at an earlier time than that specified by the Court, they

2 should conduct it at that time.  In any event, the parties must file a Status Report re

3 Settlement at the time they lodge the Proposed Pretrial Order.

4      The Court will not conduct settlement conferences in non-jury cases which the

5 Court will try.  In jury cases, the Court will conduct a settlement conference at the

6 parties' request if three conditions exist: (a) The parties are satisfied that the fact issues

7 in the case will be tried to a jury; (b) all significant pre-trial rulings which Court must

8 make have been made; and (c) the parties desire the Court to conduct the conference,

9 understanding that if settlement fails, the Court will preside over the trial of the case.

10      **If a settlement is reached, it shall be reported immediately to this Court as**

11 **required by Local Rule 16-14.7.**

12      16.  The failure to attend the pretrial conference or to submit timely in conformity

13 with the format set forth in this order, the jury instructions, pre-trial exhibit stipulation,

14 joint statement of the case, voir dire questions, summary of witness testimony and

15 times estimates, proposed Pretrial Conference Order or the memorandum of

16 contentions of fact and law may result in the dismissal of the action, striking the answer

17 and entering default and/or the imposition of sanctions.

18      **17. Telephonic Status Conference:**

19      Telephonic status conferences are sometimes set by the court to discuss

20 settlement status and other pending issues.  If a telephonic status conference has been

21 set, all counsel are ordered to discuss the matter with their clients and opposing

22 counsel before the telephonic status conference.  Plaintiff's counsel must make the

23 arrangements and place the conference call.  Plaintiff's counsel shall include all counsel

24 of record and the Court on the date and time scheduled.  The conference operator is to

25 place the final call to the Court at (951) 328-4410.  To assist the Court and staff,

26 participants shall identify themselves each time they speak.  No cellular telephones or

27 speaker telephones will be allowed.

28

EXHIBIT __7__

PAGE __72__

1               **Internet Site**

2      Counsel are encouraged to review the Central District's website for additional

3 information.  The address is "http: //www.cacd.uscourts.gov"

4

5      The courtroom deputy clerk is ordered to serve a copy of this Order by mail,

6 facsimile or e-mail on counsel for all parties to this action.

7

8      IT IS SO ORDERED.

9 Dated: ___FEB 2 1 2008___

10

11

12

13                        STEPHEN G. LARSON
                          UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

EXHIBIT 7

PAGE 73

Joint Trial Witness Estimate Form

Case: _____

Trial Date: _____

| | WITNESS NAME | PARTY CALLING WITNESS AND ESTIMATE | X-EXAMINER'S ESTIMATE | DESCRIPTION OF TESTIMONY | COMMENTS |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| | Total Estimates This Page: | | | | |

**Instructions:**
(1) List witnesses (last name first); (2) For description, be extremely brief, <u>e.g.</u> "eyewitness to accident." Or "expert on standard of care"(3) Use estimates within fractions of an hour, rounded off to the closest quarter of an hour. <u>e.g.</u> if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75; (4) Note special factors in "Comments" column. <u>e.g.</u>, "Needs interpreter," (5) Entries may be in handwriting <u>if very neat and legible</u>.

-16-

EXHIBIT ___7___

PAGE __74__

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | | |
|---|---|---|
| MGA ENTERTAINMENT, INC., | ) | Case No. CV 05-02727 SGL(RNBx) |
| Plaintiff, | ) | SCHEDULING ORDER [FRCP 16(b)] |
| v. | ) | 1.  Establishing a Discovery Cut-off Date of March 3, 2008 |
| MATTEL, INC., | ) | 2.  Non-Discovery Motion Hearing Cutoff date of April 7, 2008, at 10:00 a.m. |
| Defendants. | ) | 3.  Setting Final Pretrial Conference for June 2, 2008, at 11:00 a.m. |
| | | 4.  Setting Jury Trial Date of July 1, 2008, at 9:30 a.m. |

**READ THIS ORDER CAREFULLY.  IT CONTROLS THE CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

FEB 2 2 2007

**The above matter is set for trial before the Honorable Stephen G. Larson, United States District Judge, Courtroom 1, United States District Court, Eastern Division, 2nd Floor, Riverside, California.**

1.      **Discovery Cut-Off:**  This is the last date to complete discovery, including

DOCKETED ON C.

FEB 2 2 2007

EXHIBIT  7

PAGE  75

1   expert discovery, and the resolution of any discovery motions before this court. If expert

2   witnesses are to be called at trial, the parties shall designate experts to be called at trial and

3   provide reports required by Fed. R. Civ. P. 26(a)(B), not later than eight weeks prior to the

4   discovery cutoff date. *Rebuttal expert witnesses shall be designated and reports provided as*

5   required by Fed.R.Civ.P. 26(a)(2)(B), not later than five weeks prior to the discovery cutoff

6   date. *Failure to timely comply with this deadline may result in the expert being excluded at*

7   *trial as a witness. The Court requires compliance with Local Rule 37-1 and 37-2 in the*

8   preparation and filing of discovery motions. Discovery motions may not be heard on an <u>ex</u>

9   <u>parte</u> basis.

10       **2.      <u>Joinder of Parties and Amendment of Pleadings:</u>** Any motions to join other

11   parties or for leave to amend the pleadings shall be filed within sixty (60) days of the date of

12   this Order so that they can be heard and decided prior to the deadline. This deadline does

13   not apply if the deadline for joining parties or amending pleadings has already been

14   calendared or occurred by virtue of an order issued by another Judge.

15       In addition to the requirements of Local Rules 15-1, 15-2, and 15-3, all motions to

16   amend the pleadings shall (a) state the effect of the amendment; (b) be serially numbered to

17   differentiate the amendment from previous amendments and (c) state the page, line

18   number(s), and wording of any proposed change or addition of material.

19       **3.      <u>Motion Filing Cut-Off:</u>** The Court hears motions on Mondays at 10:00 a.m.

20   The motion filing cut-off date is the last day motions may be heard (not filed). The Court will

21   not decide late motions. Issues left undetermined by the passage of the motion cut-off date

22   should be listed as issues for trial in the Final Pretrial Conference Order. As an exception to

23   the above, motions in limine dealing with evidentiary matters may be heard at or before trial;

24   however, summary judgment motions disguised as motions in limine will not be heard.

25   Parties need not wait until the discovery cut-off to bring motions for summary judgment or

26   partial summary judgment. However, in the usual case, the court expects that *more than the*

27   *minimum notice will be provided to counsel opposing motions for summary judgment. In the*

28

2

EXHIBIT __7__

PAGE __76__

1   usual case, the parties should confer and agree on the date for setting such motions.

2       Ex parte applications are entertained solely for extraordinary relief. See Mission Power

3   Eng. Co. v. Continential Casualty Co., 883 F.Supp. 488 (C.D. Cal. 1995). Strict adherence to

4   proper ex parte procedures is required for any ex parte application filed with the Court.

5       4.   **Stipulations to Extend Time:**  Stipulations to extend the time to file any required

6   document or to continue any pretrial or trial date must set forth (a) the existing due date or

7   hearing date; (b) the current pretrial conference date and trial date; (c) the specific reasons

8   supporting good cause for granting the extension or continuance; and (d) whether there have

9   been any prior requests for extensions or continuances, and whether these were granted or

10  denied by the Court.

11      5.   **Summary Judgment Motions:**  The Separate Statement of Undisputed Facts is to

12  be prepared in a two-column format.  The left-hand column should set forth the allegedly

13  undisputed fact.  The right-hand column should set forth the evidence that supports the

14  factual statement. The fact statements should be set forth in sequentially numbered

15  paragraphs.  Each paragraph should contain a narrowly focused statement of fact.  Each

16  numbered paragraph should address a single subject in as concise a manner as possible.

17      The opposing party's statement of genuine issues must be in two columns and

18  track the movant's separate statement exactly as prepared.  The document must be in two

19  columns; the left-hand column must restate the allegedly undisputed fact, and the right-hand

20  column must indicate either undisputed, or disputed.  The opposing party may dispute all or

21  only a portion of the statement, but if disputing only a portion, must clearly indicate what part

22  is being disputed.  Where the opposing party is disputing the fact in whole or part, the

23  opposing party must, in the right-hand column, label and restate the moving party's evidence

24  in support of the fact, followed by the opposing party's evidence controverting the fact.

25  Where the opposing party is disputing the fact on the basis of an evidentiary objection, the

26  party must cite to the evidence alleged to be objectionable and state the ground of the

27

28

EXHIBIT ___7___

PAGE __77__

1   objection and nothing more. **No argument should be set forth in this document.**

2        The opposing party may submit additional material facts that bear on or relate to the

3   issues raised by the movant, which shall follow the format described above for the moving

4   party's separate statement. These additional facts shall follow the movant's facts, shall

5   continue in sequentially numbered paragraphs (i.e., if movant's last statement of fact was set

6   forth in paragraph 30, then the first new fact will be set forth in paragraph 31), and shall set

7   forth in the right hand column the evidence that supports that statement.

8        The moving party, in its reply, shall respond to the additional facts in the same

9   manner and format that the opposition party is required to adhere to in responding to the

10  statement of undisputed facts, as described above.

11        **(a) Supporting Evidence:** No party should submit any evidence other than the

12  specific items of evidence or testimony necessary to support or controvert a proposed

13  statement of undisputed fact. Thus, for example, the entire transcript of a deposition, entire

14  sets of interrogatory responses, and documents that do not specifically support or controvert

15  material in the separate statements, should not be submitted in support or opposition to a

16  motion for summary judgment. Any such material will not be considered.

17        Evidence submitted in support of or in opposition to a motion should be submitted

18  either by way of stipulation or as exhibits to declarations sufficient to authenticate the

19  proffered evidence, and should not be attached to the Memorandum of Points and

20  Authorities. The Court will accept counsel's authentication of deposition transcript, of written

21  discovery responses, and of the receipt of documents in discovery if the fact that the

22  document was in the opponent's possession is of independent significance. Documentary

23  evidence as to which there is no stipulation regarding foundation must be accompanied by

24  the testimony, either by declaration or properly authenticated deposition transcript, of a

25  witness who can establish its authenticity.

26        If evidence in support of or in opposition to a motion exceeds twenty pages, the

27

28

4

EXHIBIT 7

PAGE 78

1    evidence must be in a separate bound volume and include a Table of Contents.

2        **(b) Objections to Evidence:** If a party disputes a fact based in whole or in part

3    on an evidentiary objection, the ground of the objection, as indicated above, should be

4    stated in the separate statement but not argued in that document. Evidentiary objections

5    are to be addressed in a separate memorandum to be filed with the opposition or reply brief

6    of the party. This memorandum should be organized **to track the paragraph numbers of**

7    **the separate statement in sequence**. It should identify the specific item of evidence to

8    which objection is made, the ground of the objection, and a very brief argument with citation

9    to authority as to why the objection is well taken. The following is an example of the format

10   contemplated by the Court:

11           Separate Statement Paragraph 1: Objection to the supporting deposition transcript

12           of Jane Smith at 60:1-10 on the grounds that the statement constitutes inadmissible

13           hearsay and no exception is applicable. To the extent it is offered to prove her

14           state of mind, it is irrelevant since her state of mind is not in issue.

15           Fed. R. Evid. 801, 802.

16       Do not submit blanket or boilerplate objections to the opponent's statements of

17   undisputed fact: these will be disregarded and overruled.

18       **(c) The Memorandum of Points and Authorities:** The movant's memorandum of

19   points and authorities should be in the usual form required under Local Rule 7-5 and should

20   contain a narrative statement of facts as to those aspects of the case that are before the

21   Court. All facts should be supported with citations to the paragraph number in the Separate

22   Statement that supports the factual assertion and not to the underlying evidence.

23           Unless the case involves some unusual twist on Rule 56, the motion need only

24   contain a brief statement of the Rule 56 standard; the Court is familiar with the Rule and

25   with its interpretation under Celotex and its progeny. If at all possible, the argument should

26   be organized to focus on the pertinent elements of the cause(s) of action or defense(s) in

27

28

EXHIBIT 7

PAGE 79

1   issue, with the purpose of showing the existence or non-existence of a genuine issue of
2   material fact for trial on that element of the claim or defense.

3         Likewise, the opposition memorandum of points and authorities should be in the
4   usual form required by Local Rule 7-5, and where the opposition memorandum sets forth
5   facts, the memorandum should cite to paragraphs in the separate statement if they are not in
6   dispute, to the evidence that contravenes the fact where the fact is in dispute or, if the fact is
7   contravened by an additional fact in the statement of genuine issues, the citation should be
8   to such fact by paragraph number.

9         **(d) Timing:** In virtually every case, the Court expects that the moving party will
10   provide more than the minimum twenty-one (21) day notice for such motions. The moving
11   party should deliver to chambers a copy of a diskette, in WordPerfect format (11.0 or earlier
12   versions), containing the Statement of Uncontroverted Facts and Conclusions of Law.

13       6.   **Motions in Limine:** The parties must file motions in limine addressing the
14   admissibility of evidence in accordance with Local Rule 7-3. The parties shall file their
15   opposing and reply papers in accordance with Local Rules 7-9 and 7-10 respectively.

16       7.   **Pretrial Conference and Trial Setting:** Compliance with the requirements of
17   Local Rule 16 is mandatory. Counsel shall submit carefully prepared Memoranda of
18   Contentions of Fact and Law (which may also serve as the trial briefs) and Proposed Pre-
19   Trial Conference Order ("PTCO") in accordance with the provisions of Local Rules 16-1
20   through 16-7. The Proposed Pre-Trial Conference Order shall conform to the example set
21   forth in Appendix A to the Local Rules, modified as necessary to comply with this order.

22         The Memoranda of Contentions of Fact and Law, Exhibit Lists, and Witness Lists
23   shall be served and filed no later than fourteen (14) calendar days before the Pre-Trial
24   Conference. The Proposed Pre-Trial Conference Order shall be lodged fourteen (14)
25   calendar days before the Pre-Trial Conference.

26         The Proposed Pre-Trial Conference Order must contain a Table of Contents. Place

27

28

6

EXHIBIT 7

PAGE 80

1   in all capital letters and in bold the separately numbered headings for each category in the

2   PTCO. Under paragraph 1, list each claim, counterclaim, or defense that has been

3   dismissed or abandoned. In multiple-party cases where not all claims or counterclaims will

4   be prosecuted against all remaining parties on the other side, please specify to which party

5   each claim or counterclaim is directed. The factual issues in dispute should track the

6   elements of a claim or defense upon which the jury would be required to make findings.

7   Counsel should state issues in ultimate fact form, not as evidentiary fact issues (i.e., "was the

8   defendant negligent," "was defendant's negligence the proximate cause of plaintiff's injury;"

9   not "was the plaintiff standing on the corner of 12th Street and Lemon Avenue at 10:00 a.m.

10  on March 1"). Issues of law should state legal issues upon which the Court will be required

11  to rule after the Pre-Trial Conference, including during the trial, and should not list ultimate

12  fact issues to be submitted to the trier of fact.

13          In drafting the PTCO, the court expects that counsel will attempt to agree on and

14  set forth as many non-contested facts as possible. The court will normally read the

15  uncontested facts to the jury at the start of the trial. Carefully drafted and comprehensively

16  stated stipulation of facts will reduce the length of trial and increase jury understanding of the

17  case.

18          If expert witnesses are to be called at trial, each party must list and identify its

19  respective expert witnesses, both retained and non-retained. <u>Failure of a party to list and</u>

20  <u>identify an expert witness in the Proposed Pre-Trial Conference Order shall preclude a party</u>

21  <u>from calling that expert witness at trial.</u>

22          This case has been placed on calendar for a Final Pretrial Conference ("PTC")

23  pursuant to Fed. R. Civ. P. 16 and Local Rule 16-1, <u>et seq.</u>, unless the PTC was expressly

24  waived at the Scheduling Conference by the court. Unless excused for good cause, each

25  party appearing in this action shall be represented at the PTC and all pretrial meetings of

26  counsel, by lead trial counsel. The failure to attend the PTC or to submit the required pretrial

27

28

EXHIBIT __7__

PAGE __81__

1   documents may result in the dismissal of the action, striking the answer and entering a

2   default, and/or the imposition of sanctions.

3           A continuance of the Final Pretrial Conference at counsel's request or stipulation

4   will only be approved upon a showing of good cause. Counsel should plan to do the

5   necessary pretrial work on a schedule which will insure its completion with time to spare

6   before the Final Pretrial Conference. Specifically, failure to complete discovery work,

7   including expert discovery, is not a ground for a continuance.

8           Compliance with the requirements of Local Rules 16-1 to 16-13 is required by the

9   court. Carefully prepared Memoranda of Contentions of Fact (which may also serve as the

10  trial brief) and a proposed Final Pretrial Conference Order shall be submitted in accordance

11  with the provisions of Local Rule 16-7 and the form of the proposed Final Pretrial Conference

12  Order shall be in conformity with the format set forth in Appendix A to the Local Rules.

13          At the PTC, counsel should be prepared to discuss means of streamlining the trial,

14  including, but not limited to: bifurcation, presentation of non-critical testimony by deposition

15  excerpts, stipulations as to the content of testimony, presentation of testimony on direct

16  examination by declaration subject to cross-examination, and qualification of experts by

17  admitted resumes. In certain cases where the PTC is waived by the court, counsel must

18  follow Local Rule 16-11.

19      8.  **Witness List and Times Estimates:** Counsel shall prepare a list of their witnesses,

20  an estimate of the length of time needed for direct examination for each witness, and whether

21  the witness will testify by deposition or in person. Counsel shall exchange these lists with

22  opposing counsel.[1] **Counsel shall jointly file a single witness list, including estimates for**

23  **direct examination of their own witnesses and estimates for cross-examination of**

24  **opposing witnesses.** This list shall be filed at the time counsel lodge the Proposed Pre-Trial

25

26  _____

27      [1] See "Joint Trial Witness Estimate Form" appended to this order.

28

8

EXHIBIT 7
PAGE 82

1   Conference Order, i.e., fourteen (14) days before the Pre-Trial Conference.

2       **9.   Jury Instructions and Verdict Forms:** Fourteen (14) calendar days prior to

3   counsel's Rule 16 pre-trial meeting, counsel shall exchange proposed jury instructions

4   (general and special) and special verdict forms (if applicable). Seven (7) calendar days prior

5   to the Rule 16-2 meeting, counsel shall exchange any objections to the instructions and

6   special verdict forms. Prior to, or at the time of the Rule 16 meeting, counsel shall meet and

7   confer with the goal of reaching agreement on one set of joint jury instructions and one special

8   verdict form.

9           The parties should make every attempt to agree upon the jury instructions before

10  submitting them to the Court. The Court expects counsel to agree on the substantial majority

11  of jury instructions, particularly when pattern instructions provide a statement of applicable law.

12  When the Manual of Model Civil Jury Instructions for the Ninth Circuit provides a version of an

13  applicable requested instruction, the parties should submit the most recent version of the

14  Model instruction. Where language appears in brackets in the model instruction, counsel shall

15  select the appropriate text and eliminate the inapplicable bracketed text. Where California law

16  applies, counsel should use Judicial Council of California Civil Jury Instructions (June 2006)

17  ("CACI"). If neither of the above sources is applicable, counsel are directed to use the

18  instructions from O'Malley, Grenig & Lee (formerly Devitt, et al.), Federal Jury Practice and

19  Instructions (latest edition). Each requested jury instruction shall cover only one subject or

20  principle of law and shall be numbered and set forth in full on a separate page, citing the

21  authority or source of the requested instruction (except for the "clean" jury copy discussed

22  below).

23          When the parties disagree on an instruction, the party opposing the instruction must

24  attach a short statement (one to two paragraphs) supporting the objection, and the party

25  submitting the instruction must attach a short statement supporting the instruction. Each

26  statement should be on a separate page and should follow directly after the disputed

27

28

9

EXHIBIT 7

PAGE 83

1   instruction.

2   The parties ultimately must submit one document or, if the parties disagree over any

3   proposed jury instructions, two documents. If the parties submit two documents, those

4   documents shall consist of: (a) a set of Joint Proposed Jury Instructions and (b) a set of

5   Disputed Jury Instructions, along with reasons supporting and opposing each disputed

6   instruction in the format set forth in the previous paragraph.

7   The parties must file proposed jury instructions fourteen (14) calendar days before

8   the Pre-Trial Conference. If the court is closed that day, counsel shall file the proposed

9   instructions the preceding Friday. No later than 4:00 p.m. on the date such instructions are

10  due, the parties must submit conformed courtesy copies to the Court's courtesy box located

11  outside the entrance to Courtroom 1, United States District Court, 3470 Twelfth Street, 2nd

12  Floor, Riverside, California. Counsel shall also provide the Court with a 3½ inch diskette

13  compatible with WordPerfect version 11.0 or lower containing the proposed jury instructions, in

14  accordance with this paragraph and the previous paragraph.

15  The Court will send a copy of the instructions into the jury room for the jury's use

16  during deliberations. Accordingly, in addition to the file copies described above, the diskette

17  submitted with the jury instructions shall contain a "clean set" of Joint Proposed and/or

18  Disputed Jury Instructions, containing only the text of each instruction set forth in full on each

19  page, with the caption "Court's Instruction No. __" (eliminating titles, supporting authority,

20  indication of party proposing, etc.).

21  An index page shall accompany all jury instructions submitted to the Court. The

22  index page shall indicate the following:

23  (a) The number of the instruction;

24  (b) A brief title of the instruction;

25  (c) The source of the instruction and any relevant case citations; and

26  (d) The page number of the instruction.

27

28

10

EXHIBIT 7

PAGE 84

EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Trademark-Defined<br>(15 U.S.C. § 1127) | 9th Cir. 15.3.2 | 7 |

Along with the jury instructions, counsel shall submit any necessary special verdict form fourteen (14) calendar days before the Pre-Trial Conference.

10. **Voir Dire Questions:** Counsel may, but need not, submit brief proposed voir dire questions for the jury at the Pre-Trial Conference. The Court will conduct its own voir dire after consulting any proposed voir dire submitted by counsel. After the Court conducts its own voir dire, counsel will be provided an opportunity to ask supplemental questions subject to Court approval.

11. **Joint Statement of the Case:** Counsel shall submit a joint statement of the case at the Pretrial Conference. The joint statement of the case will be read to the prospective panel of jurors prior to the commencement of voir dire. The statement should not exceed one page. The statement shall be filed with the Court no later than 4:00 p.m., on the Wednesday prior to the Pre-Trial Conference.

12. **Exhibits:** The parties shall file their witness lists and exhibits lists in accordance with Local Rule 16. Counsel are to assemble their exhibits by placing them in three-ring binders labeled on the spine portion of the binder showing both the volume number and the exhibit numbers. Each exhibit shall be separated by a tabbed divider on the right side. Counsel shall provide original exhibits for the courtroom deputy clerk and a duplicate set for the judge. The original exhibits shall be tagged with the appropriate exhibit tags in the upper or lower right corner of the first page of each exhibit and include the case number, case name, and exhibit number. Each binder shall contain a Table of Contents. Counsel must comply with Local Rule 26-3 when numbering the exhibits. The Clerk's Office, located at the United States District Court, 3470 Twelfth Street, Riverside, California can supply counsel with appropriate exhibit tags.

11

EXHIBIT __7__

PAGE __85__

1    <u>The Court requires the following to be submitted to the courtroom deputy clerk on the</u>

2    <u>first day of trial</u>: (a) The original exhibits with the Court's exhibit tags; (b) one bench book with

3    a copy of each exhibit for the Court's use, tabbed as described above; (c) three (3) copies of

4    exhibit lists and a floppy disk containing the exhibit list; (d) three (3) copies of witness lists in

5    the order in which the witnesses will be called to testify; and (e) file a Notice of Lodging of

6    Deposition Transcripts  (original and 2 copies) and Lodge all anticipated trial deposition

7    transcripts <u>directly</u> with the deputy clerk in the courtroom.

8         All counsel are to meet no later than ten (10) calendar days before trial to discuss

9    and agree to the extent possible on issues including foundation and admissibility.

10    **13. <u>Pre-Trial Exhibit Stipulation</u>:** The parties shall prepare a Pre-Trial Exhibit

11    Stipulation which shall contain each party's numbered list of trial exhibits, with objections, if

12    any, to each exhibit including the basis of the objection and the offering party's response.  All

13    exhibits to which there is no objection shall be deemed admitted.  All parties shall stipulate to

14    the authenticity of exhibits whenever possible, and the Pre-Trial Exhibit Stipulation shall

15    identify any exhibits whose authenticity has not been stipulated to and the specific reasons for

16    the party's failure to stipulate.

17         The Stipulation shall be substantially in the following form:

18                        <u>Pre-Trial Exhibit Stipulation</u>

19    <u>Plaintiff's Exhibits</u>

20    <u>Number</u>      <u>Description</u>        <u>Objection</u>        <u>Response to Question</u>

21

22    <u>Defendant's Exhibits</u>

23    <u>Number</u>      <u>Description</u>        <u>Objection</u>        <u>Response to Question</u>

24

25         The Pre-Trial Exhibit Stipulation shall be filed at the same time as counsel lodges the

26    Proposed Pre-Trial Conference Order.  Failure to comply with this paragraph may constitute a

27

28

                                    12

EXHIBIT ___7___

PAGE __86__

1    waiver of all objections.

2        **14. Findings of Fact and Conclusions of Law:** For a non-jury trial, counsel for each

3    party shall lodge proposed findings of fact and conclusions of law fourteen (14) days before

4    trial. The parties should deliver to chambers a copy of these findings and conclusions of law

5    on disk in WordPerfect format.

6            (a)    Underline in red the portions which it disputes;

7            (b)    Underline in blue the portions which it admits; and

8            (c)    Underline in black the portions which it deems not disputed, but deems

9                   irrelevant.

10           Counsel may agree with a part of a finding or conclusion, disagree with a part of it

11   and/or consider a part of irrelevant.

12           Two marked copies of opposing counsel's proposed findings of fact and conclusions of

13   law shall be lodged with the court seven (7) days before trial and one marked copy shall be

14   served on opposing counsel. Courtesy copies of the marked copies shall be deposited in the

15   drop box located outside the entrance of Courtroom 1 of the above-entitled court on the date

16   due.

17       **15. Settlement:** Local Rule 16-15.2 provides that the Settlement Conference shall be

18   conducted not later than 45 days before the Pretrial Conference. The Court believes that in

19   most cases completion of all discovery and dispositive motions will help the parties assess

20   their positions before they embark on the costly pre-trial process. However, in many cases,

21   the parties find it more difficult to settle after they have incurred the cost of all discovery and

22   motion practice. Accordingly, the Court strongly encourages counsel and the parties to pursue

23   settlement earlier.

24           The Court has a keen interest in helping the parties achieve settlement. If the parties

25   believe that it would be more likely that a settlement would be reached if they conduct

26   settlement conference at an earlier time than that specified by the Court, they should conduct

27

28

                                     13

EXHIBIT __7__

PAGE __87__

1   it at that time.  In any event, the parties must file a Status Report re Settlement at the time

2   they lodge the Proposed Pretrial Order.

3       The Court will not conduct settlement conferences in non-jury cases which the Court will

4   try.  In jury cases, the Court will conduct a settlement conference at the parties' request if

5   three conditions exist: (a) The parties are satisfied that the fact issues in the case will be tried

6   to a jury; (b) all significant pre-trial rulings which Court must make have been made; and (c)

7   the parties desire the Court to conduct the conference, understanding that if settlement fails,

8   the Court will preside over the trial of the case.

9       **If a settlement is reached, it shall be reported immediately to this Court as**

10  **required by Local Rule 16-15.7.**

11      16.  The failure to attend the pretrial conference or to submit timely in conformity

12  with the format set forth in this order, the jury instructions, pre-trial exhibit stipulation, joint

13  statement of the case, voir dire questions, summary of witness testimony and times estimates,

14  proposed Pretrial Conference Order or the memorandum of contentions of fact and law may

15  result in the dismissal of the action, striking the answer and entering default and/or the

16  imposition of sanctions.

17      **17. Telephonic Status Conference:**

18      Telephonic status conferences are sometimes set by the court to discuss settlement

19  status and other pending issues.  If a telephonic status conference has been set, all counsel

20  are ordered to discuss the matter with their clients and opposing counsel before the telephonic

21  status conference.  Plaintiff's counsel must make the arrangements and place the conference

22  call.  Plaintiff's counsel shall include all counsel of record and the Court on the date and time

23  scheduled.  The conference operator is to place the final call to the Court at (951) 328-4410.

24  To assist the Court and staff, participants shall identify themselves each time they speak.  No

25  cellular telephones or speaker telephones will be allowed.

26                          **Internet Site**

27

28

                             14


EXHIBIT 7

PAGE 88

1      Counsel are encouraged to review the Central District's website for additional information.

2    The address is "http: //www.cacd.uscourts.gov".

3

4      The courtroom deputy clerk is ordered to serve a copy of this Order by mail, facsimile or

5    e-mail on counsel for all parties to this action.

6

7      IT IS SO ORDERED.

8    Dated: _____   FEB 2 1 2007

9

10

11

12    STEPHEN G. LARSON
       UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

EXHIBIT 7

PAGE 89

Joint Trial Witness Estimate Form

Case: _____

Trial Date: _____

| | WITNESS NAME | PARTY CALLING WITNESS AND ESTIMATE | X-EXAMINER'S ESTIMATE | DESCRIPTION OF TESTIMONY | COMMENTS |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| | Total Estimates This Page: | | | | |

Instructions:
(1) List witnesses (last name first); (2) For description, be extremely brief, e.g. "eyewitness to accident." Or "expert on standard of care"(3) Use estimates within fractions of an hour, rounded off to the closest quarter of an hour. e.g. if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75; (4) Note special factors in "Comments" column. e.g., "Needs Interpreter."  (5) Entries may be in handwriting if very neat and legible.

-16-

EXHIBIT  7

PAGE  90

# Confirmation Report — Memory Send

Page           : 001
Date & Time: 02-22-2007   03:24pm
Line 1         : 2136240643
Line 2         :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 447 |
| Date | : | 02-22  03:19pm |
| To | : | ☎76039#7943#13102755697 |
| Number of pages | : | 003 |
| Start time | : | 02-22  03:22pm |
| End time | : | 02-22  03:24pm |
| Pages sent | : | 003 |
| Status | : | OK |
| Job number | : 447 | *** SEND SUCCESSFUL *** |

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
335 Madison Avenue, 17th Floor
New York, NY 10017
(212) 702-8100
Facsimile: (212) 702-8200

SAN DIEGO
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
### FACSIMILE TRANSMISSION

DATE:   February 22, 2007                    NUMBER OF PAGES, INCLUDING COVER:

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Wayne S. Ball<br>Browne Woods & George LLP | 310.274.7100 | 310.275.5697 |

FROM:   Iris K. Woon

RE:   Sargon v. USC

MESSAGE:

| 07943/1936613.1 | | | |
|---|---|---|---|
| CLIENT # | 7943 | ROUTE/RETURN TO:  Irma Felix - 4th Floor | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
| OPERATOR: | | CONFIRMED?   ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT   7

PAGE   91

RightFAX                    2/22 2007 3:18   PAGE 001/017    x Server

**From:**   Name:        United States District Court
                         312 North Spring Street
                         Los Angeles, CA  90012
            Voice Phone: (213) 894-5474



**To:**     Name:        Michael Zeller
            Company:

                         865 S Figueroa St, 10th Floor,
            City/State:  Los Angeles, CA 90017-2543
            Fax Number:  213-443-3100

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**



## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**Fax Notes:**

Case 2:05-CV-02727 : MGA ENTERTAINMENT INC V. MATTEL INC ET AL


*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search
Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents
(Complaints, Informations, Indictments, and Superseding Charging Documents).  All other documents filed in cases unassigned to a
judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division.  The proper e-mail
address for each division is as follows:*

> *Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov
> Southern Division: CrimIntakeCourtDocs-SA@cacd.uscouts.gov
> Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!
To switch, complete and submit
Optical Scanning Enrollment / Update form G-76.
Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case,
a Notice of Change of Attorney Information, form G-6, must be filed.  If there are other cases which you've received documents for
which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending
of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:         Thursday, February 22, 2007 3:14:36 PM
Number of pages including this cover sheet:  17

EXHIBIT __7__

PAGE __92__

## Confirmation Report – Memory Send

Page           : 001
Date & Time: 02-22-2007   03:22pm
Line 1        : 2136240643
Line 2        :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 446 |
| Date | : | 02-22   03:18pm |
| To | : | ☎76039#20257#13104771699 |
| Number of pages | : | 016 |
| Start time | : | 02-22   03:18pm |
| End time | : | 02-22   03:22pm |
| Pages sent | : | 016 |
| Status | : | OK |

Job number     : 446          *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
### FACSIMILE TRANSMISSION

DATE:     February 22, 2007                    NUMBER OF PAGES, INCLUDING COVER:  16

|  |  |  |
|---|---|---|
| NAME/COMPANY | PHONE NO. | FAX NO. |
| Rahul Ravipudi, Esq. | (310) 477-1700 | (310) 477-1699 |

FROM:     Allison Burkholder, Esq.

RE:        Gulati v. IBM

MESSAGE:     PLEASE SEE ATTACHED

---

20257/2008146.2

| CLIENT #    20257 | ROUTE/ RETURN TO:   Monica Ascarrunz | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR:  *Rafael* | CONFIRMED?   ☐ NO   ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT 7

PAGE 93

# EXHIBIT 8

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date:  July 2, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS
==========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

    Jim Holmes                                   Theresa Lanza
    Courtroom Deputy Clerk                       Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                         John B. Quinn
                                      Brett Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:      ENTERED
                                CLERK, U.S. DISTRICT COURT

Dale M. Cendali                 JUL - 5 2007                    DOCKETED ON CM
Patricia Glaser
                                                               JUL - 5 2007
PROCEEDINGS:    MINUTE ORDER    CENTRAL DISTRICT OF CALIFORNIA
                                EASTERN DIVISION    BY DEPUTY   BY _____ 164

    As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
       May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                              Initials of Deputy Clerk __jh__
CIVIL – GEN                              1                   Time: 01/15

EXHIBIT 8

PAGE 94



07|c2|c7

regarding date of production of documents (docket #545); and

(4)   The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)   The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.


(1)   Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL**, as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)   MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)   MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT 8

PAGE 95

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __lh_____
Time: 01/15

EXHIBIT 8

PAGE 96

later than two weeks after that date.  Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above.  The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above.  The application is **DENIED** in all other respects.

(4)    MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation."  Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted).  Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _8_

PAGE _97_

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)    Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT ___8___

PAGE ___98___

# EXHIBIT 9

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| Plaintiff, | |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Honorable Stephen G. Larson |
| Defendant. | MATTEL'S MEMORANDUM REGARDING TRIAL STRUCTURE |
| | Date:   TBA Time:   TBA Place:   TBA |
| AND CONSOLIDATED ACTIONS | |

**Phase 1**
Discovery Cut-Off:   October 22, 2007
Pre-Trial Conference: January 14, 2008
Trial Date:           February 12, 2008

**Phase 2**
Discovery Cut-Off:   March 3, 2008
Pre-Trial Conference: June 2, 2008
Trial Date:           July 1, 2008

EXHIBIT 9

PAGE 99

C6/20/07

07209/2147647.5

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

CONFORMED COPY

1          At the June 11, 2007, hearing, the Court was clear that it was not

2   inclined to change its existing order regarding the phasing of the trial.  This would

3   leave the original <u>Mattel v. Carter Bryant</u> complaint as Phase One and MGA's unfair

4   competition claims, along with Mattel's amended claims, in Phase Two.  Mattel has

5   previously apprised the Court of the reasons it believes this structure is not optimal,

6   including the following:

7

8   •   The Court has stated its intention to resolve "Bratz ownership" issues in

9       Phase One; however, Bratz ownership was not as squarely addressed in

10      the original complaint as it is in the claims now structured as

11      counterclaims (which were drafted with the benefit of discovery).

12      Indeed, while encompassed by the original complaint's allegations,

13      "Bratz" is nowhere explicitly named in the original complaint.

14  •   The present structure would have almost entirely overlapping claims

15      arising out of Bryant's conduct while employed by Mattel in both

16      phases of the trial:  a claim for breach for fiduciary duty against Bryant

17      in both phases, a claim for breach of contract against Bryant in both

18      phases, etc.  In addition, all the associated aiding and abetting claims

19      (e.g., aiding and abetting breach of fiduciary duty, etc.) would be in

20      Phase Two.  This will require adducing the same evidence and

21      producing the same witnesses twice.  Defendants agree with Mattel that

22      this would be inefficient.

23  •   MGA intervened in the action on the original complaint and

24      accordingly presumably expects to be permitted to fully participate in

25      opening statements, examination of witnesses and closing arguments in

26      Phase One, even though none of the claims against it will be explicitly

27      tried in Phase One.  In other words, Mattel will be required to contend

28      with MGA in One, but will not be able to assert <u>pending</u> claims

EXHIBIT __9__

PAGE __100__

-1-

1    it has against MGA arising from the very same Bryant/MGA conduct

2    that is the subject of Phase One.

3        If the Court is inclined to reconsider, Mattel respectfully submits that

4    the most satisfactory way to divide the claims is between (1) claims arising out of

5    Bryant's activities while employed by Mattel (in Phase One) and (2) all other claims

6    (in Phase Two). This is what Mattel had proposed in its motion, heard June 11,

7    2007, ruling on which was deferred because of the proposal that MGA and Bryant

8    put forward at the hearing.

9        If the Court is not disposed to the proposal set forth in Mattel's motion,

10   Mattel offers the following two alternatives. One is a modification of defendants'

11   proposal submitted to the Court on June 11. The other -- Mattel respectfully

12   submits -- is the minimum modification necessary to the existing order to

13   accomplish the Court's stated objective of resolving "Bratz ownership" issues in

14   Phase One.

15

16   Modification of Defendants' Proposal

17       Defendants' proposal is the same as what Mattel had proposed in its

18   motion, with two differences. Defendants' proposal, like Mattel's, recognizes that

19   Mattel's amended claims arising out of Bryant's activities while employed by Mattel

20   overlap substantially with--or indeed are merely restatements of--Mattel's claims in

21   the original complaint. Like Mattel, defendants propose that all these claims be

22   tried together in Phase One.[1]

23       The two differences between Mattel's proposal and defendants' is that

24   defendants propose to try the copyright infringement claims and damages issues in

25   Phase One. This represents a reversal in position on defendants' part. Defendants

26   had previously argued that it was not practical to try all copyright infringement

27   ---

[1]  Defendants' proposal is set forth in the Powerpoint slide they presented at the

28   June 11 hearing.

EXHIBIT __9__

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

07209/2147647.5

1    claims in Phase One because doing so would require individually assessing

2    infringement issues with respect to over 200 products.  As MGA stated in its last

3    brief on the subject:

4        Mattel's Phase Two copyright infringement claims against

5        MGA, MGA Hong Kong, Isaac Larian and Bryant

6        (Counterclaim 1) relate to *hundreds* of products that MGA

7        created and released between 2001 and 2007, long *after*

8        Bryant left Mattel.  Trial of those claims will require a jury

9        to analyze each product to determine whether it is even a

10       derivative work of Bryant's original drawings.  Those

11       issues are entirely separate and distinct from the narrow

12       issue of whether Bryant or Mattel own [sic] Bryant's

13       original drawings.[2]

14    Mattel agrees that deferring resolution of copyright issues may avoid this

15    burdensome assessment of 200 products.  If the issue of ownership of Bratz works

16    created by Bryant while he was employed at Mattel is resolved against Mattel, then

17    it will likely never be necessary to get into the copyright infringement issues.

18        Defendants had likewise previously urged that damages issues should

19    <u>not</u> be tried in Phase One.  This is because, as MGA argued, "[t]here are countless

20    'Bratz' products, as well as dozens of different themes used to market the 'Bratz'

21    dolls, each of which would need to be individually analyzed in order to calculate the

22    profits attributable to each and to apportion damages appropriately."[3]  Mattel

23    submits that defendants' stated concern is legitimate, and applies both to Mattel's

24    copyright infringement claim and the state law claims that are already in Phase One.

25    That is because Mattel's claim for breach of fiduciary duty, for example, permits

26

27    [2]   <u>See</u> MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz
Ownership in Phase One at 3:12-19 (italics in original).

28    [3]   <u>Id.</u> at 8:8-11 (addressing copyright claim).

EXHIBIT 9

PAGE 102

07209/2147647.5

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

1  disgorgement of profits as a remedy.  See, e.g., Harris Trust and Sav. Bank v.

2  Salomon Smith Barney, Inc., 530 U.S. 238, 250-251 (2000) (when legal title to

3  property passes to another through breach of fiduciary duty, the victim may seek a

4  disgorgement of any profits derived therefrom); Parke v. First Reliance Standard

5  Life Ins. Co., 368 F.3d 999, 1008 (8th Cir. 2004) ("a defendant who owes a

6  fiduciary duty to a plaintiff may be forced to disgorge any profits made by breaching

7  that duty").  A state law disgorgement of profits analysis may substantially overlap

8  in proof with copyright infringement damages.  For both, proof of damages will

9  likely involve individual assessment of numerous derivative works.  Ownership can

10  be addressed and resolved without wading into this minutia.

11        Accordingly, Mattel proposes that defendants' current proposal be

12  adopted by the Court with the modification that copyright infringement and

13  damages issues be bifurcated within Phase One, consistent with defendants' original

14  position.  In other words, Phase One would address all claims arising out of Bryant's

15  conduct while he was employed by Mattel, but copyright infringement and damages

16  issues would be bifurcated and reached only if there were findings against

17  defendants in the first part of the Phase One trial.  Phase Two would address claims

18  arising from the acts of unfair competition asserted by MGA against Mattel and

19  trade secret theft asserted by Mattel against MGA, occurring after, and unrelated to,

20  Bryant's employment with Mattel.

21

22  Minimum Modification

23        In the alternative, Mattel respectfully submits that to resolve "Bratz

24  ownership" issues in Phase One the Court should, at a minimum, make two

25  modifications.  First, it should import into Phase One Mattel's declaratory relief

26  claim relating to Bratz ownership.  In the original complaint, there is no explicit

27  reference to Bratz and ownership of Bratz.  Although the facts alleged in the original

28  complaint encompass those relating to Bratz ownership, that issue is specifically

07209/2147647.5

EXHIBIT 9

PAGE 103

-4-

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

1   addressed only in the amended claims.  Mattel has a declaratory relief claim
2   squarely addressing ownership of Bratz.  That claim presently appears as a
3   counterclaim in Phase Two.  It belongs in Phase One, insofar as it relates to
4   ownership of the Bratz works created by Bryant while employed by Mattel.

5              Second, damages should be moved to Phase Two.  If Mattel introduces
6   evidence in Phase One of defendants' profits and obtains a damage award on its state
7   law claims against Bryant, defendants may argue that the first jury's award of
8   disgorgement precludes Mattel from seeking any separate award for copyright
9   infringement damages in Phase Two under some claim splitting theory because both
10  sets of claims permit awards of defendants' ill-gotten profits and gains.  The parties
11  agree that state law and copyright damages issues substantially overlap.  All
12  damages issues should be dealt with in one proceeding.  If any of these damages
13  issues are to be tried in Phase Two, all should be tried in Phase Two.

14             At the June 11, 2007 hearing, Bryant argued that his right to trial by
15  jury precludes the Court from trying liability and damages to separate juries.  That is
16  simply incorrect.  See Arthur Young & Co. v. U. S. Dist. Court, 549 F.2d 686, 692-
17  693 (9th Cir. 1977) (holding that liability and damages may be tried to separate
18  juries); Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc., 2001 WL 501354,
19  at *3 (C.D. Cal. 2001) (holding that the plaintiff "is not entitled to a unitary jury,"
20  and that "even if a second jury were to be empaneled, [plaintiff's] Seventh
21  Amendment rights would not be implicated"); Butler v. Home Depot, Inc., 1996 WL
22  421436, at *6 (N.D. Cal. 1996) (rejecting defendant's argument "that bifurcation of
23  liability and damages would violate its Seventh Amendment right to a fair trial,
24  because different juries would be deciding essentially the same issues," and holding
25  that "[a]s evidenced by the numerous cases across the country that have addressed
26  this issue, the Seventh Amendment does not mandate that all phases of the litigation
27  be heard by the same jury"); see also 9 Fed. Practice & Procedure § 2391 ("Is there a

28

EXHIBIT __9__

1   violation of the constitutional provision if issues are submitted independently to

2   separate juries?  The answer rather clearly must be in the negative.").

3            The Seventh Amendment does not preclude the Court from trying

4   liability and damages issues to separate juries.[4]

5

6   DATED:  June 20, 2007            QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
7

8                                    By _John Quinn_ *O.S.*
9                                       John B. Quinn
                                        Attorneys for Plaintiff
10                                      Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                       EXHIBIT  9

25                                       PAGE  105

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [4]   Charts of Mattel's proposals, listing the claims that would be tried in each
28   Phase, are included in the Appendix that follows.

## Appendix

## CURRENT STRUCTURE

| Phase 1 Trial | Phase 2 Trial |
|---|---|

**Phase 1 Trial**

- Breach of Contract against Bryant (MC 1)[5]

- Breach of Fiduciary Duty against Bryant (MC 2)

- Breach of Duty of Loyalty against Bryant (MC 3)

- Unjust Enrichment against Bryant (MC 4)

- Conversion against Bryant (MC 5)

**Phase 2 Trial**

- Copyright Infringement (AC 1)

- RICO (AC 2)

- Conspiracy to Violate RICO (AC 3)

- Misappropriation of Trade Secrets (AC 4)

- Breach of Contract (AC 5)

- Intentional Interference with Contract (AC 6)

- Breach of Fiduciary Duty (AC 7)

- Aiding and Abetting Breach of Fiduciary Duty (AC 8)

- Breach of Duty of Loyalty (AC 9)

- Aiding and Abetting Breach of Duty of Loyalty (AC 10)

- Conversion (AC 11)

- Unfair Competition (AC 12)

- Declaratory Relief (AC 13)

- False Designation of Origin (UC 1)

- Unfair Competition (UC 2)

- Dilution (UC 3)

- Unjust Enrichment (UC 4)

---

[5]  MC = Mattel's Claims in *Mattel v. Bryant*
AC = Mattel's Counterclaims in *MGA v. Mattel*
UC = MGA's Claims in *MGA v. Mattel*

EXHIBIT  9

PAGE  106

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

07209/2147647.5

## MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL

| Phase 1(a) Trial | Phase 1(b) Trial | Phase 2 Trial |
|---|---|---|
| • Breach of Contract against Bryant (MC 1, AC 5) (liability only) | • Copyright Infringement (AC 1) | • False Designation of Origin (UC 1) |
| • Breach of Fiduciary Duty against Bryant (MC 2, AC 7) (liability only) | • Damages (re: all Phase 1 claims) | • Unfair Competition (UC 2) |
| • Breach of Duty of Loyalty against Bryant (MC 3, AC 9) (liability only) | | • Dilution (UC 3) |
| • Unjust Enrichment against Bryant (MC 4) (liability only) | | • Unjust Enrichment (UC 4) |
| • Conversion against Bryant (MC 5; AC 11) (liability only) | | • RICO (AC 2) |
| • Conversion against MGA and Larian (re: Bratz; AC 11) (liability only) | | • Conspiracy to Violate Rico (AC 3) |
| • Intentional Interference with Contract (re: Bryant; AC 6) (liability only) | | • Misappropriation of Trade Secrets (AC 4) |
| • Aiding and Abetting Breach of Fiduciary Duty (re: Bryant; AC 8) (liability only) | | • Intentional Interference with Contract (re: Brawer, Machado, Trueba, Vargas, Brisbois, and other former Mattel employees; AC 6) |
| • Aiding and Abetting Breach of Duty of Loyalty (re: Bryant; AC 10) (liability only) | | • Breach of Fiduciary Duty (re: Machado; AC 7) |
| | | • Aiding and Abetting Breach of Fiduciary Duty (re: Brawer, Machado, Trueba, Vargas, Brisbois, and other former Mattel employees; AC 8) |
| | | • Breach of Duty of Loyalty (re: Machado; AC 9) |
| | | • Aiding and Abetting Breach of |

EXHIBIT 9

PAGE 107

-8-

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

07209/2147647.5

| | Phase 1(a) Trial | Phase 1(b) Trial | Phase 2 Trial |
|---|---|---|---|
| 1 | | | |
| 2 | • Unfair Competition (re: bribery of Bryant; AC 12) (liability only)) | | Duty of Loyalty (re: Brawer, Machado, Trueba, Vargas, Brisbois, and other former Mattel employees; AC 10) |
| 3 | | | |
| 4 | • Declaratory Relief (re: ownership of original Bratz works allegedly created by Bryant while employed by Mattel; AC 13) | | |
| 5 | | | • Conversion (non-Bratz; AC 11) |
| 6 | | | |
| 7 | | | • Unfair Competition (except bribery of Bryant) (AC 12) |
| 8 | | | |
| 9 | | | • Damages (re: all Phase Two claims) |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

EXHIBIT  9

PAGE  108

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

## MATTEL'S SUGGESTED MINIMUM MODIFICATION

| Phase 1 Trial | Phase 2 Trial |
| --- | --- |
| • Breach of Contract against Bryant (MC 1) (liability only) | • Copyright Infringement (AC 1) |
| • Breach of Fiduciary Duty against Bryant (MC 2) (liability only) | • RICO (AC 2) |
|  | • Conspiracy to Violate RICO (AC 3) |
| • Breach of Duty of Loyalty against Bryant (MC 3) (liability only) | • Misappropriation of Trade Secrets (AC 4) |
|  | • Breach of Contract (AC 5) |
| • Unjust Enrichment against Bryant (MC 4) (liability only) | • Intentional Interference with Contract (AC 6) |
| • Conversion against Bryant (MC 5) (liability only) | • Breach of Fiduciary Duty (AC 7) |
|  | • Aiding and Abetting Breach of Fiduciary Duty (AC 8) |
| • Declaratory Relief (re: ownership of original Bratz works allegedly created by Bryant while employed by Mattel; AC 13) | • Breach of Duty of Loyalty (AC 9) |
|  | • Aiding and Abetting Breach of Duty of Loyalty (AC 10) |
|  | • Conversion (AC 11) |
|  | • Unfair Competition (AC 12) |
|  | • Declaratory Relief (except ownership of original Bratz works allegedly created by Bryant while employed by Mattel; AC 13) |
|  | • False Designation of Origin (UC 1) |
|  | • Unfair Competition (UC 2) |
|  | • Dilution (UC 3) |
|  | • Unjust Enrichment (UC 4) |
|  | • Damages (re: Phase One and Phase Two claims) |

EXHIBIT 9

PAGE 109

07209/2147647.5

-10-

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa

3 Street, 10th Floor, Los Angeles, California 90017-2543.

4      On June 20, 2007, I served true copies of the following document(s) described as **MATTEL'S MEMORANDUM REGARDING TRIAL STRUCTURE** on the parties in this

5 action as follows:

6                 Diana M. Torres                   Patricia Glaser, Esq.
            O'Melveny & Myers, LLP     Christensen, Glaser, Fink, Jacobs, Weil &

7                400 S Hope Street                    Shapiro, LLP
             Los Angeles, CA 90071      10250 Constellation Blvd., 19th Floor

8                Personal Service                Los Angeles, CA  90067
                                                 Personal Service

9

               John W. Keker, Esq.

10             Michael H. Page, Esq.
          Christa M. Anderson, Esq.

11        KEKER & VAN NEST, LLP
            710 Sansome Street

12         San Francisco, CA 94111
                 FedEx

13

14 **BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or

15 provided for, addressed to the person(s) being served.

16 **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

17

     I declare that I am employed in the office of a member of the bar of this Court at whose

18 direction the service was made.

19      Executed on June 20, 2007, at Los Angeles, California.

20

21

                               Wanda Taylor

22

23

24                                Dave Quintana, Now Messenger

25

26

27

28

                                        EXHIBIT 9

                                        PAGE 110

# EXHIBIT 10

1   THOMAS J. NOLAN (Bar No. 66992)
    (tnolan@skadden.com)
2   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue
3   Los Angeles, CA  90071-3144
    Tel.: (213) 687-5000/Fax: (213) 687-5600

4   RAOUL D. KENNEDY (Bar No. 40892)
    (rkennedy@skadden.com)
5   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    4 Embarcadero Center, 38th Floor
6   San Francisco, CA  94111-5974
    Tel.: (415) 984-6400/Fax: (415) 984-2698
7
8   Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
    MGAE de Mexico, S.R.L. de C.V., and Isaac Larian
9

10              UNITED STATED DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12  CARTER BRYANT, an individual,          )   CASE NO. CV 04-9049 SGL (RNBx)
                                           )
13                  Plaintiff,             )   Consolidated with Case No. 04-9059
                                           )   and Case No. 05-2727
14        v.                               )
                                           )   **DISCOVERY MATTER**
15  MATTEL, INC., a Delaware corporation,  )
                                           )   **[To be heard by Discovery Master
16                  Defendant.             )   Hon. Edward A. Infante (Ret.)]**
                                           )
17                                         )
                                           )   **MGA'S APPLICATION AND
18                                         )   REQUEST FOR HEARING
                                           )   REGARDING THE ALREADY
19                                         )   BRIEFED MOTION TO COMPEL
                                           )   THE DEPOSITION TESTIMONY
20                                         )   OF MATTHEW BOUSQUETTE
                                           )   AND TINA PATEL**
21                                         )
                                           )   Hearing Date: March 10, 2008
22                                         )   Time:  8:30 am
                                           )   Place:  JAMS
23                                         )   Two Embarcadero Center,
                                           )   Suite 1500,San Francisco, CA  94111
24                                         )
25                                         )
                                           )   **Phase 1**
26  AND CONSOLIDATED ACTIONS              )   Discovery Cut-off: January 28, 2008
                                           )   Pre-Trial Conference: May 5, 2008
27                                         )   Trial Date: May 27, 2008
28

────────────────────────────────────────────
Application Re: Motion  To Compel Depositions of Matthew Bousquette and Tina Patel
Case No. CV 04-9049 SGL (RNBx)
-1-

EXHIBIT _10_

PAGE _111_

## **APPLICATION**

MGA's Request that Motion to Compel be Heard on March 10, 2008

Counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA
Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively,
the "MGA Defendants") hereby request to have the already briefed Motion to
Compel the Depositions of Matt Bousquette and Tina Patel heard at the hearing
currently set for March 10, 2008 at 8:30 am.

This Application is based on this notice, the parties' briefing on the Motion To
Compel The Deposition Testimony of Matthew Bousquette and Tina Patel,
submitted to Judge Larson, and the concurrently filed Second Supplemental
Declaration of Robert J. Herrington, and all pleadings and papers on file with the
Court in this action. With this Application, MGA is enclosing all of the briefs and
exhibits filed with Judge Larson relating to this Motion.

Mattel has agreed to have this Motion heard on March 10, 2008 in lieu of
MGA and Carter Bryant's Joint Motion To Compel An Unredacted Version of
M0074400, Mattel's Investigative File 02-299 And The Further Deposition of
Richard De Anda, provided that Mattel has the opportunity to submit an additional
brief during the week of March 3, 2008. MGA has no objection to Mattel submitting
another brief and will address any new points raised by Mattel at the hearing.

Background Regarding the Motion

Mattel's counsel represents both Mr. Bousquette and Ms. Patel and have
agreed to produce these witnesses for deposition.[1]  MGA has been trying to schedule
these depositions for months. MGA originally noticed Ms. Patel's deposition for
September 5, 2007, and Mr. Bousquette's deposition for November 22, 2006. After
literally months spent trying to get Mattel to produce these witnesses, the depositions

---

[1]  Second Supp. Herrington Decl., Ex. 1: Letter from Jon Corey to Marcus
Mumford, dated December 11, 2007.

EXHIBIT _10_

PAGE _112_

1  of Matt Bousquette and Ms. Patel were finally set to proceed in February 2008 by

2  agreement of the parties.  Just days before the depositions were set to begin, Mattel

3  unilaterally cancelled them solely because, in Mattel's view, these witnesses do not

4  have knowledge regarding Phase I issues and the Court has stayed Phase II discovery.

5  Mattel made no effort to meet and confer with MGA before canceling the

6  depositions, and after MGA sent two letters explaining and providing evidence

7  demonstrating why Mr. Bousquette and Ms. Patel were Phase I witnesses, Mattel

8  refused to meet and confer, stating only that they "disagreed."

9      Because of Mattel's unwillingness to produce Mr. Bousquette and Ms. Patel

10  for depositions and in light of the fact that the discovery cut-off date for Phase I

11  discovery had come and gone, MGA filed an *ex parte* application on February 21,

12  2008 with Judge Larson seeking to immediately compel the depositions of Mr.

13  Bousquette and Ms. Patel.  On February 25, Judge Larson held a hearing during

14  which Mattel argued that Mr. Bousquette and Ms. Patel should not be deposed

15  because they were Phase II witness and Phase II discovery had been stayed.[2]  The

16  Court, however, made it clear that this was not Mattel's "call to make."[3]  The Court

17  further stated to both parties that if they are unable to work out whether a witness is a

18  Phase I or Phase II witness, then "just take the deposition and . . . move forward."[4]

19  Ultimately, the Court directed MGA to present this matter first to the Discovery

20  Master, because it involved a discovery issue.[5]

21      As explained in MGA's briefing, MGA's experts rely extensively on

22  documents and information that Mr. Bousquette and Ms. Patel prepared or were

23  involved in preparing.  MGA's experts need the deposition testimony from these

24

25  [2]  Second Supp. Herrington Decl., Ex. 2: February 25, 2008 Hr. Tr. 8:8-25.

26  [3]  *Id.* at 8:2-7, 9:1-3.

27  [4]  *Id.* at 9:4-14.

28  [5]  Second Supp. Herrington Decl., Ex. 2: February 25, 2008 Hr. Tr. 5:2-5; Second
     Supp. Herrington Decl., Ex: 3: Minute Order, dated February 25, 2008, at 2.

EXHIBIT  10

PAGE  113

1    witnesses in order to prepare their rebuttal reports, which currently are due on March

2    17, 2008.

3         Thus, for the foregoing reasons, MGA requests that the Court grant this

4    Application and hear MGA's Motion to Compel the Depositions of Matt Bousquette

5    and Tina Patel on March 10, 2008.

6

7    DATED:  February 28, 2008          Respectfully submitted,

8                                        SKADDEN, ARPS, SLATE, MEAGHER &
                                         FLOM, LLP
9

10

11   By: _Raoul D. Kennedy by RN_
                                         Raoul D. Kennedy
12                                       Attorney for MGA Entertainment, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _10_

PAGE _114_