1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         EASTERN DIVISION

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
    |---|---|
13  | Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
14  | vs. | Case No. CV 05-02727 |
15  | MATTEL, INC., a Delaware<br>corporation, | **DISCOVERY MATTER** |
16  | Defendant. | **[To Be Heard By Discovery Master<br>Hon. Edward Infante (Ret.) Pursuant<br>To The Court's Order Of December<br>6, 2006]** |
17  | | |
18  | AND CONSOLIDATED ACTIONS | **[PUBLIC REDACTED] MATTEL,<br>INC.'S OPPOSITION TO THE MGA** |
19  | | **DEFENDANTS' MOTION FOR<br>PROTECTIVE ORDER FROM** |
20  | | **MATTEL, INC.'S NOTICE OF<br>DEPOSITION OF LUCY ARANT** |
21  | | |
22  | | [Declaration of Jon D. Corey filed<br>concurrently] |
23  | | |
24  | | Hearing Date:   TBA<br>Time:   TBA<br>Place:   Telephonic |
25  | | **Phase 1** |
26  | | Discovery Cut-off:   January 28, 2008<br>Pre-trial Conference:   April 21, 2008 |
27  | | Trial Date:   May 27, 2008 |
28  | | |

07209/2449642.1

MATTEL, INC.'S OPP. TO MTN. FOR PROT. ORD. FROM MATTEL, INC.'S NOT. OF DEPO. OF LUCY ARANT

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

4  PRELIMINARY STATEMENT ................................................................................. 1

5  FACTUAL BACKGROUND ................................................................................. 3

6  ARGUMENT ........................................................................................................ 8

7  I.    MATTEL IS ENTITLED TO TAKE MS. ARANT'S DEPOSITION ............. 8

8  II.   NO GOOD CAUSE EXISTS TO GRANT THE PROTECTIVE
       ORDER MGA SEEKS ...................................................................................... 9

9

10       A.    MGA Does Not Make the Showing Required for A Protective
              Order ........................................................................................................ 9

11       B.    MGA Has Not Previously Provided the Information Mattel Seeks
              from Ms. Arant ...................................................................................... 12

12

13       C.    There is No Basis to Issue A Protective Order On Privilege
              Grounds ................................................................................................... 16

14  CONCLUSION ........................................................................................................ 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-i-

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Blankenship v. Hearst Corp.,
519 F.2d 418 (9th Cir. 1975)................................................................. 6, 12

Cadent Ltd. v. 3M Unitek Corp.,
232 F.R.D. 625 (C.D. Cal. 2005) .............................................................. 6

Hanks v. Korea Iron and Steel Co., Ltd.,
993 F. Supp. 1204 (S.D.Ill. 1998)............................................................. 7

Klayman v. Freedom's Watch, Inc.,
2007 WL 4414803 (Dec. 14, 2007 S.D.Fla.) ............................................. 7

Marco Island Partners v. Oak Dev. Corp.,
117 F.R.D. 418 (N.D.Ill. 1987) ................................................................. 7

Trunk v. City of San Diego,
2007 WL 2701356 (Sep. 13, 2007 S.D.Cal.) ............................................. 7

Walker v. United Parcel Services,
87 F.R.D. 360 (E.D.Pa 1980) .................................................................... 7

## Statutes

Federal Rules of Civil Procedure

Rule 26............................................................................................ 7

Rule 26(b)(2)(C)(i)-(iii).................................................................... 5

Rule 26(c) .................................................................... 1, 6, 7, 8

Rule 30(a) ....................................................................................... 5

## Other Authorities

Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc.
Before Trial, § 11:1165 (Rutter's Group 2007)........................................ 6

**Preliminary Statement**

In its motion, MGA relies on arguments that fly in the face of several prior rulings of the Discovery Master and the District Court. As the Discovery Master is aware, Mattel has asserted claims that center on the timing of Bratz's creation. Lucy Arant is an outside MGA lawyer who has percipient, non-privileged knowledge about key trademark and copyright applications and related communications that are squarely at issue in this case.

For example, Ms. Arant was the author of a fax to Paula Garcia, MGA's Bratz project manager, confirming Ms. Garcia's statement that the first use date of the names for Bratz and for the individual doll names was June 15, 2000. This June 15, 2000 date is months before MGA and Bryant claim Bryant introduced Bratz to MGA and indeed before Bryant claims to have even heard of MGA. Ms. Arant also unquestionably has knowledge about the other documents -- including an internal docket sheet -- that provide confirmation of this first use date. Finding that these very documents were non-privileged and relevant, the Discovery Master previously compelled their production. Mattel is obviously entitled to ask their author questions about them.

Furthermore, acting on MGA's behalf, Ms. Arant filed Bratz copyright registrations that stated Bratz was created in 2000. That evidence is, too, inconsistent with the chronology of Bratz's creation that MGA has espoused in this litigation. In fact, MGA <u>now</u> claims that the dates reflected in the registrations were wrong. Ms. Arant, therefore, is a percipient witness to the crucial -- and disputed -- facts set forth in her public filings on behalf of MGA and to MGA's prior, inconsistent statements about the dates of Bratz's creation.

<u>Federal Rule of Civil Procedure</u> 26(c) and Ninth Circuit case law require a particularized showing of good cause for a protective order to issue preventing a deposition. MGA not only fails to meet that standard, but it fails to even cite the relevant <u>Rule</u>. As purported "good cause" for its desired protective

-1-

1   order, MGA claims that Ms. Arant's deposition would be duplicative and as of yet
2   unasked questions could call for disclosure of privileged information.  At the outset,
3   over MGA's objections, Judge Larson previously found that Mattel had good cause
4   to take the deposition of Lucy Arant.  In doing so, Judge Larson necessarily rejected
5   the argument that Ms. Arant's deposition was duplicative of other discovery.
6   MGA's argument is also factually baseless.  Ms. Arant is the author of the fax
7   confirming Ms. Garcia's statement that the relevant Bratz names were first used in
8   June 2000.  No other witness can testify about her knowledge and basis for this
9   document, and Ms. Garcia herself claims not to remember having made such
10  statements.  As for the other topics Ms. Arant has personal knowledge on, Mattel as
11  of now has not obtained information concerning Ms. Arant's personal knowledge
12  (which neither MGA nor Ms. Arant deny she possesses).  Her deposition is not
13  duplicative of other discovery that Mattel has obtained.

14          Equally groundless are MGA's privilege claims.  With respect to Ms.
15  Arant's communications with Ms. Garcia that are squarely at issue, the Discovery
16  Master specifically ruled that they are not privileged.  Further, Mattel seeks the facts
17  surrounding Ms. Arant's representations on behalf of MGA in public copyright
18  filings regarding certain dates of creation and publication for Bratz materials.  Such
19  matters are not privileged, as the Discovery Master also has ruled, because there can
20  be no expectation that facts conveyed to be input into a public document will be
21  maintained as confidential.  Mattel, therefore, does not seek privileged, confidential
22  information.  Nor, in any event, can MGA block a deposition based on blanket
23  assertions of privilege.  As both the Discovery Master and the District Court have
24  held, privilege must be asserted on a question-by-question basis.

25          MGA fails to make the required showing of good cause for a protective
26  order to prohibit Ms. Arant's deposition.  The motion should be rejected, and Ms.
27  Arant should be ordered to appear for deposition without further delay.

28

**Factual Background**

Lucy Arant Possesses Knowledge of Facts that Are Essential to This Litigation. Ms. Arant is "former outside counsel"[1] for MGA. Ms. Arant prepared, filed and prosecuted multiple trademark registration applications relating to Bratz on MGA's behalf.[2] These included the initial trademark applications that MGA submitted for the "Bratz" mark and for the individual Bratz doll names, including "Yasmin."[3] In the course of preparing those applications, Ms. Arant worked with Paula Garcia, MGA's project manager for Bratz. In a fax to Ms. Garcia, Ms. Arant confirmed that Ms. Garcia had "indicated that all four of the applications have a date of *first use of June 15, 2000*."[4] Other documents from Ms. Arant's then-law firm, including a docket sheet, confirm this date as well.[5] When Ms. Garcia was asked at deposition whether she had stated that the first use of the Bratz name or the individual doll names was June 15, 2000, Ms. Garcia claimed not to remember.[6] Ms. Arant also prepared, filed and prosecuted copyright applications for Bratz materials containing publication and creation dates of 2000 and February of 2001, respectively.[7] MGA now contends those dates are wrong.[8]

The first use, creation and publication information reflected in documents prepared by Ms. Arant is of central importance in this case. Mattel's claims include allegations that "Carter Bryant conceived, created and developed

---

[1]   Motion, at 1:4.
[2]   Declaration of Jon Corey in Support of Mattel's Opposition MGA's Motion For Protective Order From Mattel, Inc.'s Notice of Deposition of Lucy Arant, dated March 27, 2008 ("Corey Dec."), Exh. 8.
[3]   Corey Dec., Exh. 13.
[4]   Id. (emphasis added).
[5]   Corey Dec., Exh. 14.
[6]   Corey Dec., Exh. 12.
[7]   See Corey Dec., Exh. 8 [MGA Copyright Registrations, dated July 2001].
[8]   See Corey Dec., Exh. 9 [Supplemental Copyright Registrations]

1   Bratz designs while he was employed by Mattel as a doll designer,"[9] that "using
2   Mattel resources, and while employed by Mattel, Bryant took steps to assist MGA to
3   produce dolls,"[10] and that he "concealed his Bratz work from Mattel and wrongfully
4   sold Bratz to MGA while he was a Mattel employee."[11] Mattel alleges that "as a
5   result of the efforts of Bryant and other Mattel employees working on Bratz (which
6   were done without Mattel's knowledge), the Bratz dolls had been designed and were
7   far along in development during the time that Bryant was employed by Mattel and
8   prior to the time that Bryant left Mattel on October 20, 2000."[12] Based in part on
9   these allegations, Mattel claims ownership of Bratz works created by Bryant while
10  employed by Mattel, asserts that Bryant breached his duties of loyalty and fiduciary
11  duties to Mattel, and claims that MGA aided and abetted Bryant in that regard.

12          Defendants dispute these allegations.[13] Specifically, defendants dispute
13  that Bryant and MGA had any relationship at all prior to September or possibly
14  August 2000. Bryant testified at his deposition that he first pitched the Bratz
15  concept to MGA when he met Paula Garcia in August 2000 -- while he was
16  employed by Mattel.[14] He also testified that he had never even heard of MGA
17  before July 2000.[15] According to Bryant and Larian, Bryant met Larian for the first

18

19      [9]   Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and
20  Counterclaims, ¶ 2 ("Second Amended Answer and Counterclaims") is attached as
    Exhibit 3 to the Declaration of B. Dylan Proctor dated August 23, 2007 ("Proctor
21  Dec.").
22      [10]  Id. at Counterclaims ¶ 26.
        [11]  Id. at Counterclaims ¶ 2.
23      [12]  Id. at Counterclaims ¶ 36.
24      [13]  See Answer and Affirmative Defenses of MGA Entertainment, Inc., MGA
    Entertainment (HK) Limited, and MGAE De Mexico S.R.K. De C.V. to Mattel,
25  Inc.'s Second Amended Answer and Counterclaims dated August 13, 2007 ("MGA's
    Answer"), Proctor Dec., Exh. 4 at ¶¶ 2, 26, 36, and at 22:18-19, 23:8, and 23:20-21.
26      [14]  Deposition of Carter Bryant, dated November 4-8, 2005 ("Bryant Depo."),
27  Proctor Dec., Exh. 5 at 9:25 - 10:12.
        [15]  Bryant Depo., Proctor Dec., Exh. 5 at 5:10-12.
28

-4-

1   time in September 2000,[16] when Bryant presented the Bratz concept to him.[17]

2   Garcia has also testified about Bryant's September 2000 pitch meeting with Larian,

3   although -- contrary to Bryant's testimony -- she claims the September 2000 meeting

4   was the first time she met Bryant.[18] Larian also testified that at the time of the

5   September meeting, Bryant had conceived of names for each of the Bratz doll

6   characters.[19] However, according to Larian, one of the Bratz dolls, Yasmin, was

7   <u>subsequently</u> named after Larian's daughter.[20] Thus, *according to defendants, the*

8   *doll name "Yasmin" could not have been conceived prior to September 2000.* A first

9   use date of June 15, 2000 for "Yasmin" as reflected in Ms. Arant's documents

10   squarely refutes this account.

11         Anna Rhee, a third-party vendor, also has testified that she was asked

12   by Bryant and paid by MGA to paint Bratz doll heads in June 2000.[21] Bryant has

13   testified that he did not ask Ms. Rhee to paint the faces of the Bratz dolls until

14   November 2000.[22] Defendants have represented to the Court that Ms. Rhee's

15   "assertions regarding the timing of the creation of 'Bratz'" -- which put the MGA

16   and Bryant relationship in June 2000 like the Arant documents do -- are "false."[23]

17         <u>Ms. Arant and Her Counsel, Larry McFarland, Evade Service; Judge</u>

18   <u>Larson Deems Them Properly Served</u>. Mattel sought leave to take additional

19

20

---

21   [16] Bryant Depo., Proctor Dec., Exh. 5 at 88:21-89:19.

     [17] Id. at 88:21-89:19, 104:18-105:6; Deposition of Isaac Larian, dated July 18,

22   2006 ("Larian Depo."), Proctor Dec., Exh 6 at 26:14-27:6, 66:15-67:1.

     [18] Deposition of Paula Garcia dated May 24 and 25, 2007 ("Garcia Depo."),

23   Proctor Dec., Exh. 7 at 263:2-24.

24   [19] Larian Depo., Proctor Dec., Exh. 6 at 141:7 - 142:7.

     [20] Id.

25   [21] Deposition of Anna Rhee dated February 3, 2005 ("Rhee Depo."), Proctor

26   Dec., Exh. 8 at 107:4 - 108:12, 197:6-197:25, 199:8-199:16.

     [22] Bryant Depo., Proctor Dec., Exh. 5 at 114:1 - 115:25.

27   [23] MGA's Opposition to Mattel's Motion For Leave to File Amended

28   Complaint, dated December 21, 2006, Proctor Dec., Exh. 10 at 18:25 - 19:3.

1   discovery, including Ms. Arant's deposition. In January 2008, finding that Mattel
2   had established good cause therefor, Judge Larson granted Mattel leave to take Ms.
3   Arant's deposition, along with other of MGA's former counsel.[24]

4          After Judge Larson granted Mattel leave, Ms. Arant evaded service of
5   her deposition subpoena by Mattel on multiple occasions.[25] MGA states that Mattel
6   "never served Ms. Arant with a deposition subpoena before the January 28
7   discovery cut-off date for Phase 1."[26] Mattel tried to serve Arant 13 times. Mattel
8   attempted to serve Arant at her home and her office, weekdays and weekends,
9   morning, afternoon, and evening. At her office, her receptionist claimed she was
10  not present. There is no dispute that the process servers visited the correct residence
11  address. Nevertheless, no one ever answered her door. The process server even
12  waited at her residence, to no avail.[27]

13         MGA conspicuously omits this information from its motion. As MGA
14  does concede, however, and as discussed in the McFarland Opposition, because Mr.
15  McFarland and his clients evaded service, on February 4, 2008, Judge Larson issued
16  an Order to Show Cause Why Larry McFarland and each of his clients -- Sarah
17  Halpern, Lucy Arant, and Peter Marlow -- should not be ordered to appear for
18  deposition.

19

20  [24] Minute Order, January 7, 2008, p. 3, attached to the Corey Dec., Exh. 1.
21  Interestingly, MGA cherry-picked the depositions of its former counsel whom it
22  would "permit" Mattel to depose, such as Mitchell Kamarck. MGA also produced
    its present in-house counsel to discuss its copyright applications and registrations
23  (albeit to no avail). MGA, however, provides no explanation as to why certain of its
24  former counsel, such as Ms. Arant, should have special immunity from deposition
    by virtue of her status as former counsel.
25  [25] This evasion is discussed in Mattel's concurrently filed Opposition to MGA's
26  Motion to Quash Larry McFarland's Deposition Subpoena (the "McFarland
    Opposition"), which is hereby incorporated by reference.
27  [26] Motion, 1:22-23.
28  [27] Declaration of Miguel Leyva, ¶¶ 5-9, attached to the Corey Dec., Exh. 7.

1           [T]he Court is concerned with the allegations by Mattel in

2           its ex parte application regarding certain actions of Larry

3           McFarland, who represents certain third-party witnesses.

4           Mattel submits that Mr. McFarland has been deliberately

5           evading service of a notice of deposition on him and his

6           clients -- serious allegations when made by an officer of

7           the Court against another officer of the Court.

8           Accordingly, Mr. McFarland is ORDERED TO SHOW

9           CAUSE why he and his clients should not be ordered to

10          appear for deposition.[28]

11 At the hearing on the Order to Show Cause, Judge Larson stated to Mr. McFarland:

12           There's no need to order. I'm simply going to direct that

13           you will receive service on your own behalf and your three

14           clients. And then you are ordered leave to bring whatever

15           motions you believe are appropriate to quash those

16           subpoenas. ***But they are going to be deemed served as of***

17           ***today.***[29]

18 Judge Larson subsequently ordered that:

19           As set forth on the record, the Court orders that counsel

20           Larry McFarland be deemed timely served with a notice

21           for his deposition and that he serve notices of deposition

22           on his clients, Lucy Arant, Sarah Halpern, and Peter

23           Marlow. Neither Mr. McFarland nor his clients may

24           object to the taking of their depositions on the basis of

25 ──────────────

26 [28]  Declaration of Robert Herrington in support of MGA Defendants' Motion for

27 Protective Order from Mattel, Inc.'s Notice of Deposition of Lucy Arant, dated
March 17, 2008 ("Herrington Dec."), February 4, 2008 Minute Order, Exh. 2, p. 36.

28 [29]  Harrington Dec., Exh. 4, p.58 (emphasis added).

1    notice, service, or timeliness, but may assert any other

2    objections they may have thereto and may seek any

3    appropriate protective orders from the Discovery Master.

4    Subject to these conditions, the Court DISCHARGES the

5    order to show cause.[30]

6  To date, Ms. Arant has not filed objections to her deposition subpoena.

7        The Parties' Meet and Confer Efforts.  On March 11, 2008, MGA and

8  Mattel met and conferred concerning MGA's objections to the deposition subpoenas

9  of Lucy Arant and Mr. McFarland.  With respect to Ms. Arant, MGA stated that it

10 would move for a protective order on the grounds that it believes Ms. Arant's

11 deposition would be cumulative and duplicative of previously taken depositions and

12 seeks privileged information.  Mattel disagreed, stating that there will be questions

13 asked of Ms. Arant that were not previously asked of others and that will not call for

14 privileged information.  MGA insisted upon opposing Ms. Arant's deposition

15 subpoena.[31]

16                          **Argument**

17 I.    **MATTEL IS ENTITLED TO TAKE MS. ARANT'S DEPOSITION**

18        Mattel sought, and the Court specifically granted, leave to take Ms.

19 Arant's deposition.  In granting Mattel's Motion for Leave to Take Additional

20 Discovery, the Court held:

21

22

23    [30]  See Exhibit 5 to the Herrington Dec.
      [31]  The parties also agreed to a particular briefing schedule for MGA's motions,
24 with MGA's moving papers due on March 17, 2008, Mattel's Oppositions thereto
   due on March 25, 2008, and MGA's replies due March 31, 2008, for the hearing set
25 for April 4, 2008 in front of Judge Infante.  See e-mail message from Robert
   Herrington to Jon Corey, dated March 12, 2008, attached to the Corey Dec., Exh. 2.
26 The parties subsequently agreed to an extension of time, with Mattel's Opposition
27 brief due on March 27th.  Id.

28

1    Considering [the standard set forth in Rule 26(b)(2)(C)(i)-
2    (iii)] the Court concludes that Mattel has shown good
3    cause to grant additional discovery given the complexity
4    of this case, the number of parties, recent developments
5    related to the substitution of counsel, the concerns
6    regarding retention and spoliation of evidence, and the
7    delay in receiving paper discovery caused by numerous
8    discovery disputes and a Court-imposed stay requested by
9    MGA upon substitution of counsel.  Specifically, the
10   Court grants Mattel's request to take the individual
11   depositions relating to the Bratz claims (set forth in the
12   moving papers at 9-11) . . .[32]

13   Ms. Arant was listed on the referenced pages.

14       Accordingly, Mattel is entitled to take Ms. Arant's deposition pursuant
15   to Rule 30(a).

16   **II.     NO GOOD CAUSE EXISTS TO GRANT THE PROTECTIVE ORDER**
17   **MGA SEEKS**

18       **A.     MGA Does Not Make the Showing Required for A Protective**
19               **Order**

20       MGA bears the burden of demonstrating that good cause exists for the
21   protective order it seeks.[33]  MGA omits, however, the requirements of the Federal
22   Rules of Civil Procedure for a protective order prohibiting a deposition.  Rule
23   26(c)(1) provides in pertinent part:

24

25   _____

26   [32]  Minute Order, January 7, 2008, p. 3, attached to the Corey Dec., Exh. 1.
27   Pages 9-11 identified Ms. Arant, along with other former MGA counsel.  See
     Herrington Dec., Exh. 1, p. 18.
28   [33]  Motion, 2:12-13.

1    A party or any person from whom discovery is sought may

2    move for a protective order in the court where the action is

3    pending--or as an alternative on matters relating to a

4    deposition, in the court for the district where the

5    deposition will be taken.  The motion must include a

6    certification that the movant has in good faith conferred or

7    attempted to confer with other affected parties in an effort

8    to resolve the dispute without court action. *The court may,*

9    *for good cause, issue an order to protect a party or person*

10   *from annoyance, embarrassment, oppression, or undue*

11   *burden or expense, including one or more of the following*

12   . . .

13   Fed. R. Civ. P. 26(c) (emphasis added).  To obtain such an order, a "strong

14   showing" is required: "'All motions under these subparagraphs of the rule must be

15   supported by "good cause" and a strong showing is required before a party will be

16   denied entirely the right to take a deposition.'"  Blankenship v. Hearst Corp., 519

17   F.2d 418, 429 (9th Cir. 1975).[34]  Further, "[f]or good cause to exist, the party

18   seeking protection bears the burden of showing specific prejudice or harm will result

19   if no protective order is granted."  Cadent Ltd. v. 3M Unitek Corp., 232 F.R.D. 625,

20   629 (C.D. Cal. 2005) (denying plaintiff's request for a protective order regarding the

21   location of depositions and holding that a "general presumption" regarding hardship

22   is insufficient to show "good cause." Id. at 630.); see also Schwarzer, Tashima &

23

24   [34]   In Blankenship, the Ninth Circuit reversed the district court's order granting a
     protective order prohibiting plaintiff from taking the deposition of defendant's
25   publisher which defendant sought because it asserted that what the publisher "had to
     offer would be repetitious with what plaintiff had learned from other sources." Id.
26   The court held that "[u]nder the liberal discovery principles of the Federal Rules
27   defendants [are] required to carry a heavy burden of showing why discovery was
     denied.  They did not meet this burden." Id.
28

Wagstaffe, Fed. Prac. Guide: Civ. Proc. Before Trial, § 11:1165 (Rutter's Group 2007) ("The proponent of the protective order must provide specific facts demonstrating good cause for the relief sought.  Merely describing material as 'confidential,' 'private,' or 'proprietary' does not meet Rule 26(c)'s 'good cause' standard.").

MGA asserts that Ms. Arant's deposition should not proceed because it would be "cumulative and wasteful."[35]  MGA provides no authority supporting its position that protective orders may issue before any question has been asked solely because one party speculates that the deposition of a non-party would be cumulative or duplicative.[36]  Nor has MGA shown that any specific prejudice or harm would result in the circumstances presented here if Ms. Arant is deposed.  Further, MGA does not explain how a protective order would meet the requirements of Rule 26 and protect MGA or Ms. Arant "from annoyance, embarrassment, oppression, or undue

---

[35]   Motion, 4:8, 9-10, 5:12.

[36]   See Hanks v. Korea Iron and Steel Co., Ltd., 993 F. Supp. 1204, 1205 (S.D.Ill. 1998) (granting motion to quash and for protective order for depositions of defendant's personnel because it would be duplicative and unhelpful to issues before the court); Marco Island Partners v. Oak Dev. Corp., 117 F.R.D. 418, 419 (N.D.Ill. 1987) (granting motion to quash); Walker v. United Parcel Services, 87 F.R.D. 360, 361-62 (E.D.Pa 1980) (denying request for plaintiff to depose defendants' attorney in the present matter in light of the procedural posture of the case where a motion for preliminary relief was "pending for nearly three years and the testimony "sought only to . . . buttress the testimony of plaintiffs' other witnesses".); Klayman v. Freedom's Watch, Inc., 2007 WL 4414803, *3-4 (S.D.Fla. Dec. 14, 2007 ) (granting protective order prohibiting deposition because plaintiff failed to show that the deposition of defendants' attorneys involved in the litigation was either "necessary or proper" and plaintiff failed to overcome presumptions of Florida federal case law against attorneys' depositions); Trunk v. City of San Diego, 2007 WL 2701356 (S.D.Cal. Sep. 13, 2007) (granting motion to quash and for protective order because the deposition sought by plaintiff invaded the privilege provided by the Constitutional Speech or Debate Clause and sought historical information available through other sources).

-11-

1    burden or expense."  Mattel does not seek to annoy, embarrass, oppress or add
2    undue burden or expense to MGA or Ms. Arant.

3           Contrary to MGA's assertion, Mattel also does not seek Ms. Arant's
4    testimony to "simply establish credibility or buttress the testimony of other
5    witnesses."[37]  Mattel seeks Ms. Arant's knowledge about key dates for Bratz and
6    MGA's prior, inconsistent statements to her about them.  This includes, most
7    critically, Ms. Arant's documents reflecting that MGA had informed her the first use
8    date of the Bratz name and the individual doll names was June 15, 2000 -- well
9    before MGA and Bryant claim to have worked together and indeed to have even
10   known one another.  Mattel additionally seeks Ms. Arant's knowledge about the
11   information that she provided, on MGA's behalf, to the Copyright Office about the
12   creation of Bratz -- information that is of utmost factual importance to this case.
13   And, as explained below, Ms. Arant's knowledge is unique in key respects, which
14   more than amply justifies the taking of her deposition.

15       **B.    MGA Has Not Previously Provided the Information Mattel Seeks**
16            **from Ms. Arant**

17           MGA's unproven argument that Mattel has already obtained Ms.
18   Arant's personal knowledge is also wrong.  MGA asserts that the depositions of
19   Kerri Brode, Nana Ashong and Samir Khare provided the information Mattel seeks.
20   But none of the prior deponents named by MGA was a party to the key first use
21   documents or their surrounding communications.  Ms. Arant in contrast was
22   personally involved and, indeed, she was the author of the fax confirming Ms.
23   Garcia's statement that the first use date for the relevant Bratz names was June 15,
24   2000.  Ms. Garcia was the recipient, but Ms. Garcia denied recalling that she had
25   told anyone that the first use date was June 15, 2000.  There is nothing that is even
26
27   _____
28   [37]   Motion, at 4:2-7.

1   arguably cumulative about Ms. Arant's percipient -- and plainly unique --
2   knowledge about these matters.
3             Nor did the prior depositions provide important information about the
4   facts of Bratz's creation and publication that were reflected in the relevant copyright
5   registrations -- and which MGA has put squarely at issue by now deeming them to
6   be "inaccurate."  For example, Mr. Khare could not even explain what the
7   publication dates on MGA's copyright registrations was based on:



16   In response to questions about what he had done to investigate the basis for the date
17   that MGA now disputes, Mr. Khare conspicuously failed to consult with Ms. Arant
18   for his testimony.[39]
19             Ms. Brode, who appeared as a percipient witness, testified that she had
20   no knowledge of dates of creation as they appear on MGA's copyright applications:



_____

[38]   8/20/2007 Deposition Transcript of Samir Khare, at 254:9-256:24, attached to
the Corey Dec., Exh. 5.
[39]   Id.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

███████████████████

2          As for Ms. Ashong, there is no evidence that she participated in the first

3   use communications discussed above that go to a central issue in this litigation.  Nor

4   did she provide any testimony about the copyright registrations that Ms. Arant

5   prepared and then filed and prosecuted in the Copyright Office.

6          MGA's assertion that MGA employees, "people Mattel has already

7   deposed," are "the best source of information as to the creation of Bratz" misses the

8   mark as well.[41]  It is scarcely a proper basis to block a deposition on the grounds that

9   a party such as MGA unilaterally declares itself content with its own story in

10  litigation.  Discovery seeks to uncover the facts, and MGA's conclusory

11  pronouncements are no substitute and surely not a basis to deny the testimony of a

12  witness who has direct, personal knowledge of highly critical facts.  Further, as just

13  shown, the witnesses who MGA cites did not in fact provide the sought-after

14  information about the applications and the associated communications that Ms.

15  Arant was personally involved in.[42]  Indeed, in finding that Mattel had met the

16  standard set forth in <u>Rule</u> 26(b)(2)(C)(i)-(iii) when he granted Mattel leave to take

17  Ms. Arant's deposition in the first place, Judge Larson necessarily found that her

18  deposition would not be unnecessarily cumulative of other discovery.  MGA's

19  arguments otherwise should be rejected.

20

21

22

---

23  [40]  8/15/2007 Deposition Transcript of Kerri Brode, 320:18-323:5, attached to

24  the Corey Dec., Exh. 4.  The portions of Ms. Brode's transcript cited by MGA,

25  discuss trademark searches she conducted on her own and at the direction of Farhad or Isaac Larian.

26  [41]  Motion, at 5:10-11

27  [42]  As the <u>Blankenship</u> court found, even if testimony were repetitious of other

28  deponents -- and here it is not -- a proposed deposition should go forward if the deponent might have information that others did not.  <u>Blankenship</u>, 519 F.2d at 429.

C.     **There is No Basis to Issue A Protective Order On Privilege Grounds**

MGA speculates that Mattel seeks only privileged information from Ms. Arant.[43] The argument is factually and legally groundless and indeed it and indeed is flatly contrary to the Court's prior rulings.

MGA provides no particularized example of the "privileged" information it believes Mattel seeks. Nor can it. Mattel seeks testimony concerning, for example, Ms. Arant's first use documents and communications that the Discovery Master already held were *not* privileged.[44] Likewise, Mattel seeks testimony on the factual information reflected in copyright registrations that Ms. Arant filed with and obtained from the Copyright Office. As the Discovery Master has also held, there can be no good faith expectation that information provided for public disclosure in such circumstances would be maintained confidential and it therefore cannot be privileged.[45] And Mattel seeks testimony about Ms. Arant communications on MGA's behalf, with the Trademark Office and Copyright Office. It is axiomatic that such communications with third parties cannot be privileged.

Further, even assuming (contrary to fact) that MGA has legitimate basis to assert privilege or work product to questions while at the deposition, that is no reason to preclude all questioning. Instead, such issues can and should be considered on a question-by-question basis, with MGA asserting instructions during the course of the deposition according to the usual rule. This, too, is what both the

---

[43]   Motion, at 4:19-20.
[44]   Corey Dec., Exh. 10 at 7:25-11:17.
[45]   Corey Dec., Exh. 10 at 7:25-11:17.

-16-

1   Discovery Master and the District Court have previously ruled in rejecting an almost
2   identical argument by MGA months ago.[46]

3                              **Conclusion**

4               For the foregoing reasons, Mattel respectfully requests that the MGA
5   Defendants' motion for a protective order prohibiting the deposition of Lucy Arant
6   be denied in its entirety.

7

8   DATED:  March 27, 2008              QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP
9

10                                       By /S/ Jon D. Corey
11                                          Jon D. Corey
                                            Attorneys for Mattel, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28   [46]  Corey Dec., Exh. 10, 11.

07209/2449642.1