1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13           Plaintiff,                  Consolidated with
                                         Case No. CV 04-09059
14       vs.                             Case No. CV 05-02727

15  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
    corporation,
16                                       **[To Be Heard By Hon. Edward
             Defendant.                  Infante (Ret.) Pursuant To Order Of
17                                       December 6, 2006]**

18  AND CONSOLIDATED ACTIONS             **[PUBLIC REDACTED]
                                         DECLARATION OF JON COREY
19                                       IN SUPPORT OF MATTEL, INC.'S
                                         OPPOSITION TO THE MGA
20                                       DEFENDANTS' MOTION FOR
                                         PROTECTIVE ORDER FROM
21                                       MATTEL, INC.'S NOTICE OF
                                         DEPOSITION OF LUCY ARANT**

22                                       Hearing Date:    TBA
23                                       Time:            TBA
                                         Place:           Telephonic
24
                                         **Phase 1**
25                                       Discovery Cut-off:  January 28, 2008
                                         Pre-trial Conference:  May 5, 2008
26                                       Trial Date:          May 27, 2008.

27

28

07209/2443147.1

1                 <u>DECLARATION OF JON D. COREY</u>

2          I, Jon D. Corey, declare as follows:

3             1.     I am a member of the bars of the State of California and the

4 District of Columbia. I am a partner at Quinn Emanuel Urquhart Oliver &

5 Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration in

6 support of Mattel, Inc.'s Opposition To the MGA Defendants' Motion For Protective

7 Order From Mattel, Inc.'s Notice of Deposition of Lucy Arant. I make this

8 declaration of personal, firsthand knowledge, and if called and sworn as a witness, I

9 could and would testify competently thereto.

10             2.     Attached as Exhibit 1 is a true and correct copy of the Civil

11 Minutes, dated January 7, 2008.

12             3.     Attached as Exhibit 2 are true and correct copied of an e-mail

13 message from Robert Herrington to me, dated March 12, 2008 and an e-mail

14 message from Robert Herrington to me, dated March 24, 2008.

15             4.     Attached as Exhibit 3 is a true and correct copy of the January 7,

16 2008 Hearing Transcript, in front of Judge Larson.

17             5.     Attached as Exhibit 4 is a true and correct copy of excerpts from

18 the deposition transcript of Kerri Brode, dated August 15, 2007.

19             6.     Attached as Exhibit 5 is a true and correct copy of excerpts from

20 the deposition transcript of Samir Khare, dated August 20, 2007.

21             7.     Attached as Exhibit 7 is a true and correct copy of the

22 Declarations of Kenneth Wright, Rudy Flores, and Miguel Leyva in support of

23 Mattel, Inc.'s Rely to Response to OSC, dated respectively February 19, 2008

24 [Wright], January 25, 2008 [Wright], February 15, 2008 [Leyva]and January 25,

25 2008 [Flores].

26             8.     Attached as Exhibit 8 are true and correct copies of MGA

27 Copyright Registrations, dated July 2001.

28

07209/2443147.1

1       9.    Attached as Exhibit 9 are true and correct copies of MGA

2 Supplemental Copyright Registrations.

3       10.    Attached as Exhibit 10 is a true and correct copy of the Order

4 Granting Mattel, Inc.'s Motion to Compel MGA to Produce Documents Bearing

5 Bates Nos. MGA 0800973-0800974 and MGA 0829296 - 0829305, dated December

6 17, 2007.

7       11.    Attached as Exhibit 11 is a true and correct copy of the July 2,

8 2007 Civil Minutes.

9       12.    Attached as Exhibit 12 is a true and correct copy of excerpts

10 from the deposition of Paula Garcia, dated October 10, 2007.

11       13.    Attached as Exhibit 13 is a true and correct copy of a fax from

12 Paula Treantafelles to Lucy Arant, dated December 7, 2000, MGA Bates Nos. MGA

13 0829296 - 0829305.

14       14.    Attached as Exhibit 14 is a true and correct copy of an internal

15 MGA Docket Sheet, MGA Bates Nos. MGA 0800973-0800974.

16       I declare under penalty of perjury under the laws of the United States of

17 America that the foregoing is true and correct.

18       Executed on March 27, 2008, at Los Angeles, California.

19

20                        Jon D. Corey

21

22

23

24

25

26

27

28

-2-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THIS PAGE INTENTIONALLY LEFT BLANK

07209/2443147.1

-3-

EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: January 7, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
================================================================
=

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                            Theresa Lanza
            Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR CARTER              ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  **Christa Martine Anderson**     **John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:                ATTORNEY PRESENT FOR CARLOS
**Thomas J. Nolan**                       GUSTAVO MACHADO GOMEZ:
**Carl A. Roth**                          **Mark E. Overland**
**Anna Park**
                                          ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-                 STERN & GOLDBERG: **Kien C. Tiet**
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND                  ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: **Larry W.**             KAYE SCHOLER, LLP: **Bryant S. Delgadillo**
**McFarland**

PROCEEDINGS:   **ORDER GRANTING IN PART AND DENYING IN PART
               MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL
               DISCOVERY (DOCKET #1134)**

               **ORDER GRANTING MOTION TO ENFORCE THE COURT'S
               ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR
               SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                    1                  Time: 1/30

EXHIBIT _____/_____

PAGE _____4_____

## ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

## ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

### MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)

This motion is **GRANTED IN PART**. Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____/_____

PAGE _____5_____

discovery caused by numerous discovery disputes and a Court-imposed stay
requested by MGA upon substitution of counsel.  Specifically, the Court grants
Mattel's request to take the individual depositions relating to the Bratz claims (set
forth in the moving papers at 9-11) and relating to the trade secret and RICO claims
(set forth in the moving papers at 13).  Mattel may serve the notices of deposition
and propound the interrogatories attached to the moving papers as Exs. A - C.
Additionally, the parties must answer Mattel's previously propounded interrogatories
to which the sole objection raised was that those interrogatories exceeded the
allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase
1 and Phase 2, believing that such an action is fraught with the potential of
unnecessarily compounding discovery disputes in a case already predisposed to
such disputes.  Nevertheless, in light of the additional discovery permitted by this
Order, and to the extent that counsel for the parties who are asserting or defending
against claims to be tried in Phase 2 of the trial are in agreement, the Court will
consider a stipulation of those parties that designates certain depositions as "Phase
2" depositions that may be conducted during the month of February, if counsel can
assure the Court that such depositions can be so conducted without altering the
Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the
Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that
seeks additional time in which to depose Carter Bryant.  The Court cannot say that
the Discovery Master's order allowing an additional nine hours to depose Carter
Bryant is contrary to law based on the Discovery Master's unchallenged factual
findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007
## AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**.  The Court's order clearly applied to "all parties."
No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of
Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead
on conclusory language.  Machado must file an affidavit that complies with the

MINUTES FORM 90
CIVIL -- GEN                                  3

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____/_____

PAGE _____ℓ_____

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation. The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

## MATTEL'S MOTION CLARIFYING COURT'S ORDER
## APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**. The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty. Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him. See Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard prior to the appointment of a special master). Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case. Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

## DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90
CIVIL -- GEN                          4

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____ / _____

PAGE _____ 7 _____

forth in their moving papers. The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl). To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008. However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____ / _____

PAGE _____ 8 _____

EXHIBIT 2

| | |
|---|---|
| **From:** | Herrington, Robert J [Robert.Herrington@skadden.com] |
| **Sent:** | Wednesday, March 12, 2008 5:46 PM |
| **To:** | Jon Corey |
| **Cc:** | Eckles, Paul M (NYC) |
| **Subject:** | Matte/MGA - Confirming our Discussions Yesterday |

Jon:

To follow-up on and confirm our discussions yesterday, we do intend to move for a protective order with respect to Ms.
Arant and Mr. McFarland. As we agreed, we will file our motions on March 17, 2008, Mattel will file its Opposition
on March 25, 2008, and MGA will file its reply on March 31, 2008. The motions will be heard at the hearing before
Judge Infante scheduled for April 4, 2008. I will send you and Paul Eckles the title of the motion so it can be included
in the joint statement being made to the Discovery Master.

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE,
COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

**Robert J. Herrington**
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
☎ Direct: (213) 687-5368 | 🖷 Fax: (213) 621-5368 | 🖃 Email: rherring@skadden.com

**Joanne Otero, Assistant to Robert Herrington**
☎ Direct: (213) 687-5252 | 🖃 Email: jootero@skadden.com

-----------------------------------------------------------------------------
************************************************** To ensure compliance with Treasury Department
regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message
was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending
to another party any tax-related matters addressed herein.
**************************************************
************************************************** This email and any attachments thereto, is intended
only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If
you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of
this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately
notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout
thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided
upon request. **************************************************

EXHIBIT ___2___

PAGE ___9___

----- Original Message -----
From: Herrington, Robert J <Robert.Herrington@skadden.com>
To: Jon Corey
Sent: Mon Mar 24 19:21:26 2008
Subject: Msg

Jon:

Two additional days for the opposition on McFarland and Arant is fine.  I understand from your message that we will have 2 additional days as well.  I believe this means your opposition is due on 3/27 and our reply is due on 4/2. Please confirm. Thank you

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY.  ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP 300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071 ' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email:
rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington ' Direct: (213) 687-5252 | , Email:


jootero@skadden.com <mailto:jootero@skadden.com>

-----------------------------------------------------------------------------
****************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
**************************************************
****************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
**************************************************
=========================================================================

EXHIBIT _____ 2 _____

PAGE _____ 10 _____

EXHIBIT 3

1

1   UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA

3   EASTERN DIVISION

4   — — —

5   HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6   — — —

7   CARTER BRYANT, ET. AL.,                    )
                                               )
8                  PLAINTIFFS,                 )
                                               )
9          VS.                                 )   NO. ED CV 04-09049
                                               )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,                     )
                                               )
11                 DEFENDANTS.                 )   MOTIONS
    _____        )
12  AND CONSOLIDATED ACTIONS,                  )
    _____        )

13

14

15   REPORTER'S TRANSCRIPT OF PROCEEDINGS

16   RIVERSIDE, CALIFORNIA

17   MONDAY, JANUARY 7, 2008

18   10:11 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
       FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
       RIVERSIDE, CALIFORNIA  92501
25          951-274-0844
          CSR11457@SBCGLOBAL.NET

CERTIFIED COPY

EXHIBIT _____ 3

PAGE _____ 11

2

```
 1   APPEARANCES:

 2   ON BEHALF OF CARTER BRYANT:

 3                        KEKER & VAN NEST
                         BY:   CHRISTA M. ANDERSON
 4                        710 SANSOME STREET
                         SAN FRANCISCO, CALIFORNIA  94111-1704
 5                        415-391-5400

 6

 7   ON BEHALF OF MATTEL:

                         QUINN EMANUEL
 8                        BY:   JOHN QUINN
                         BY:   MICHAEL T. ZELLER
 9                        865 S. FIGUEROA STREET,
                         10TH FLOOR
10                        LOS ANGELES, CALIFORNIA  90017
                         213-624-7707
11

12   ON BEHALF OF MGA ENTERTAINMENT:

13                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:   THOMAS J. NOLAN
14                        BY:   CARL ALAN ROTH
                         BY:   AMY S. PARK
15                        300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
16                        213-687-5000

17

18   ON BEHALF OF GUSTAVO MACHADO:

                         OVERLAND BORENSTEIN COTE & KIM LLP
19                        BY:   MARK E. OVERLAND
                         300 SOUTH GRAND AVENUE
20                        SUITE 2750
                         LOS ANGELES, CALIFORNIA  90071
21                        213-613-4660

22

23

24   / / /
                                         EXHIBIT ____ 3
25   / / /
                                         PAGE ____ 12
```

JANUARY 7, 2008                 BRYANT VS. MATTEL

APPEARANCES (CONT'D):


ON BEHALF OF NON-PARTY KAYE SCHOLER:

                    KAYE SCHOLER LLP
                    BY:  BRYANT S. DELGADILLO
                    1999 AVENUE OF THE STARS
                    SUITE 1600
                    LOS ANGELES, CALIFORNIA  90067-6048
                    310-788-1341

ON BEHALF OF NON-PARTY STERN & GOLDBERG:

                    STERN & GOLDBERG:
                    BY:  KIEN C. TIET
                    6345 BALBOA BOULEVARD,
                    SUITE 200
                    ENCINO, CALIFORNIA  91316
                    818-758-3940

ON BEHALF OF NON-PARTY FARHAD LARIAN:

                    CHRISTENSEN, GLASER, FINK,
                      JACOBS, WEIL & SHAPIRO, LLP
                    BY:  ALISA MORGENTHALER LEVER
                    10250 CONSTELLATION BOULEVARD
                    LOS ANGELES, CALIFORNIA  90067
                    310-553-3000

ON BEHALF OF DEFENDANTS CLOONAN, MARLOW,
HALPERN, LEAHY, AND ARONT:

                    KEATS MCFARLAND & WILSON, LLP
                    BY:  LARRY W. MCFARLAND
                    9720 WILSHIRE BOULEVARD
                    BEVERLY HILLS, CALIFORNIA  90212
                    310-777-3750


EXHIBIT _____3_____

PAGE _____13_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

4

1                        I N D E X

2                                                    PAGE

3    MOTIONS.......................................    5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                    EXHIBIT _____ 3 _____

25                                    PAGE _____ 14 _____

JANUARY 7, 2008                    BRYANT VS. MATTEL

5

1       RIVERSIDE, CALIFORNIA; MONDAY, JANUARY 7, 2008; 10:11 A.M.

2                                    -oOo-

3           THE CLERK:  CALLING CALENDAR ITEM NUMBER FOUR,

4    CARTER BRYANT, PLAINTIFF, VERSUS MATTEL, CASE NUMBER CV-04-9059

5    AND THE CONSOLIDATED DOCKET NUMBERS CV-04-9049 AND 05-2727.        10:11

6           MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES FOR

7    THE RECORD.

8           MR. NOLAN:  TOM NOLAN, CARL ROTH, AND AMY PARK ON

9    BEHALF OF MGA.

10          MS. ANDERSON:  CHRISTA ANDERSON ON BEHALF OF             10:11

11   CARTER BRYANT.

12          MR. OVERLAND:  MARK OVERLAND ON BEHALF OF

13   MR. MACHADO.

14          MR. MCFARLAND:  LARRY MCFARLAND ON BEHALF OF

15   MS. CLOONAN, MS. LEAHY, MS. MARLOW, MS. ARONT, AND MS. HALPERN.   10:11

16          MS. MORGENTHALER:  ALISA MORGENTHALER, OF CHRISTENSEN

17   GLASER, ON BEHALF OF NONPARTY FARHAD LARIAN.

18          MR. TIET:  KIEN TIET ON BEHALF OF NONPARTY STERN

19   & GOLDBERG.

20          MR. DELGADILLO:  BRYANT DELGADILLO ON BEHALF OF          10:11

21   NONPARTY KAYE SCHOLER, LLP.

22          MR. QUINN:  JOHN QUINN AND MIKE ZELLER ON BEHALF OF

23   MATTEL.

24          THE COURT:  THE COURT HAS SEVERAL MATTERS BEFORE IT

25   ON THIS MATTER.  I HAVE THE MOST RECENTLY FILED MGA'S AND        10:12

EXHIBIT _____3____

1  CARTER BRYANT'S EX-PARTE APPLICATION TO COMPEL NOTICE

2  DEPOSITIONS; THAT WAS SET BY THE PARTIES, AT LEAST BY THE

3  MOVING PARTY, FOR HEARING FOR THIS MORNING.  I DID RECEIVE THE

4  OPPOSITION, AND I HAVE THAT.  I THEN HAVE THREE MOTIONS BROUGHT

5  BY MATTEL; THE MOTION REGARDING THE SEPTEMBER 28, 2000 [SIC]         10:1:

6  DISCOVERY MASTER'S ORDER; THE SECOND MOTION IS A MOTION

7  REGARDING THE AUGUST 27, 2007 COURT ORDER; AND THEN FINALLY, WE

8  HAVE THE MOTION BROUGHT BY MATTEL, BASICALLY THE CLARIFICATION

9  ORDER, OR REQUEST FOR A CLARIFICATION ORDER, IN TERMS OF WHAT

10 THE DISCOVERY MASTER HEARS AND DOESN'T HEAR REGARDING THE THIRD     10:1:

11 PARTIES.

12        I HAVE DOWN HERE IN MY NOTES THAT 'JUDGE INFANTE

13 HEARS ALL DISCOVERY MOTIONS.'

14        IN ANY EVENT, THAT'S WHAT'S BEFORE ME AT PRESENT.

15        FIRST OF ALL, IS THERE ANYTHING ELSE THAT IS BEFORE        10:1:

16 THIS COURT THAT I'M NOT AWARE OF?

17        MR. QUINN:  NOT THAT WE KNOW OF, YOUR HONOR.

18        MR. NOLAN:  NOT THAT WE'RE AWARE OF.

19        THE COURT:  VERY WELL.

20        SO THOSE ARE THE FOUR MATTERS THAT I WANT TO TAKE UP.      10:1:

21        LET ME TAKE UP THE MOTIONS FIRST, AND THEN I'LL TAKE

22 CARE OF THE EX-PARTE, JUST TO DEAL WITH THEM IN THE

23 CHRONOLOGICAL ORDER THAT I'VE RECEIVED OR REVIEWED THEM.

24        THE FIRST MOTION THAT I'LL TAKE UP -- IT'S DOCKET

25 ENTRY NUMBER 1134; IT'S THE MOTION REGARDING THE SEPTEMBER 28,    10:1:

EXHIBIT ___3___

PAGE ___16___

JANUARY 7, 2008                    BRYANT VS. MATTEL

1  2007 DISCOVERY MASTER ORDER.  I BASICALLY DIVIDED THIS INTO TWO

2  PARTS.  WHAT I'M GOING TO DO IS GIVE YOU MY TENTATIVE THOUGHTS

3  ON IT, AND THEN I'LL CERTAINLY ENTERTAIN WHATEVER ORAL ARGUMENT

4  COUNSEL WISHES TO MAKE AFTER I'VE GIVEN MY THOUGHTS.

5          THE FIRST PART OF THIS ORDER THAT I'VE CONSIDERED IS          10:1∠

6  THE REQUEST TO EXTEND OR PROVIDE ADDITIONAL TIME FOR MATTEL TO

7  DEPOSE CARTER BRYANT.  THE COURT IS MINDFUL OF THE STANDARD OF

8  REVIEW OF THE DISCOVERY MASTER'S ORDERS, AND IN LIGHT OF THE

9  STANDARD OF REVIEW, THE COURT IS DISINCLINED TO EXTEND THIS

10  TIME ANY FURTHER.                                                   10:14

11          THAT IS NOT TO SAY THAT IF I WAS OPERATING WITH A

12  CLEAN SLATE THAT I WOULD NOT BE PERSUADED BY MATTEL'S ARGUMENT

13  THAT THE AMOUNT OF TIME TO DEPOSE CARTER BRYANT SHOULD NOT HAVE

14  BEEN LONGER TO BEGIN WITH, BUT THE STANDARD HERE IS WHETHER OR

15  NOT THE LEGAL FINDINGS BY THE DISCOVERY MASTER, BY               10:14

16  JUDGE INFANTE, WERE CLEARLY ERRONEOUS OR WHETHER THERE WAS ANY

17  CLEAR FACTUAL ERRORS.

18          THERE'S NO DISPUTE, I DON'T THINK, IN TERMS OF ANY

19  FACTUAL FINDINGS THAT THE DISCOVERY MASTER MADE, AND THERE'S

20  NOTHING CLEARLY ERRONEOUS ABOUT HIS LEGAL CONCLUSION; SO IN THE    10:1∈

21  ABSENCE OF THAT, MY TENTATIVE IS NOT TO DISTURB THAT FINDING.

22          WITH RESPECT TO THE OTHER DISCOVERY REQUESTS, I GUESS

23  I'M MORE INCLINED TO GRANT SOME LEAVE TO MATTEL TO OBTAIN SOME

24  ADDITIONAL DISCOVERY.  I FEEL THAT A COMBINATION OF EITHER THE

25  STAYS THAT WE IMPLEMENTED IN THE LATTER PART OF LAST YEAR,         10:1∈

EXHIBIT _____3_____

 1   COUPLED WITH DELAYS -- AND I'M NOT TRYING TO SUGGEST THAT

 2   ANYONE DID ANYTHING WRONG HERE; I'M SIMPLY SUGGESTING THAT

 3   THERE APPEAR TO HAVE BEEN DELAYS IN THE PRODUCTION OF SOME

 4   DISCOVERY AND THE TIMING OF THE DISCLOSURES, AND THE TIMING OF

 5   THE PROVIDING OF THE DISCOVERY -- THAT MAY, IN FACT, WARRANT    10:

 6   THE LEAVE THAT MATTEL IS SEEKING WITH RESPECT TO THAT

 7   ADDITIONAL DISCOVERY.

 8             AFTER WADING THROUGH THE MATERIALS SUBMITTED TO THE

 9   COURT, THAT'S MY INITIAL SENSE OF THIS FIRST MOTION.

10             SO LET ME HEAR FROM WHOMEVER WOULD LIKE TO SPEAK AT    10::

11   THIS POINT.

12             MR. QUINN, IT'S YOUR MOTION.  YOU MAY PROCEED FIRST.

13             MR. QUINN:  THANK YOU, YOUR HONOR.

14             IF I COULD, PERHAPS, YOUR HONOR, BEGIN WITH THE

15   REQUEST FOR ADDITIONAL DISCOVERY OTHER THAN THE ADDITIONAL TIME  10:1

16   FOR THE BRYANT DEPOSITION WHERE THE COURT HAS INDICATED SOME

17   WILLINGNESS TO GIVE FAVORABLE CONSIDERATION TO THAT REQUEST.

18             WHEN YOU START ANY CIVIL LITIGATION, INCLUDING WHAT

19   WAS OBVIOUSLY FROM THE BEGINNING A BUSINESS LITIGATION CASE

20   WHICH WAS HOTLY CONTESTED, WHERE SUBSTANTIAL AMOUNTS WERE AT     10:1

21   ISSUE, IT'S UNDERSTANDABLE THAT STILL ONE WOULD TRY TO SET

22   LIMITS ON WHAT THE SCOPE OF DISCOVERY WOULD BE FROM THE OUTSET.

23   IT'S IN THE PARTIES' INTEREST, AND IT'S OBVIOUSLY IN THE

24   COURT'S INTEREST, AND I THINK UNDER THE FEDERAL RULES, THE

25   COURT OBVIOUSLY HAS A DUTY TO TRY TO DO THAT.  AND THE COURT     10:1

EXHIBIT _____3_____

1    INITIALLY DID THAT AND SET A LIMIT OF 24 DEPOSITIONS PER SIDE.

2              AT THE TIME, WE RAISED AN ISSUE THAT WE DIDN'T THINK

3    THAT WAS GOING TO BE ENOUGH, BUT, WELL ENOUGH, THE COURT SAID,

4    LET'S SEE WHAT YOU CAN DO; I DON'T WANT TO SAY THOSE ARE SOFT

5    NUMBERS, BUT LET'S SEE WHAT CAN BE DONE.                          10:1

6              IF WE STAND BACK AND LOOK AT WHAT THIS CASE IS NOW

7    AND WHAT IT'S BECOME, THERE ARE THREE SORT OF MAJOR PARTS TO

8    IT.  THE FIRST PART, THE PHASE ONE, WHAT HAS NOW BEEN SET UP

9    FOR THE PHASE ONE TRIAL, RELATES TO THE ORIGIN OF BRATZ AND

10   CLAIMS FOR DAMAGES OR RESTITUTION OR DISGORGEMENT ARISING OUT     10:1

11   OF THAT, WHICH, IT'S ALLEGED, RUN IN THE BILLIONS OF DOLLARS.

12   THAT'S SORT OF THE FIRST THIRD.

13             THE SECOND THIRD, WE HAVE MGA'S COUNTERCLAIM, WHICH

14   REALLY ADDRESSES A WHOLE HOST OF DIFFERENT KINDS OF ISSUES IN

15   CONDUCT, ADVERTISING, COMMUNICATIONS WITH LICENSING BODIES,       10:1

16   WHICH PUTS IN ISSUE, BY MGA'S ACCOUNT, SOME 200 DIFFERENT

17   PRODUCTS AND CLAIMS WHICH MGA SAYS AMOUNT TO BILLIONS OF

18   DOLLARS WORTH OF CLAIMS; SO THAT'S SORT OF THE SECOND THIRD.

19             THE FINAL THIRD IS THE CLAIM THAT -- WHEN WE --

20   MATTEL AMENDED ITS COUNTERCLAIM BASED ON EVENTS THAT HAD          10:1

21   HAPPENED OR HAD COME TO LIGHT SINCE THE CASE WAS ORIGINALLY

22   FILED, THE TRADE THEFT CLAIMS, THE TRADE THEFT CLAIMS RELATING

23   TO EVENTS IN MEXICO, WHERE, IN FACT, THERE HAD BEEN ARRESTS AND

24   CRIMINAL PROCEEDINGS SIMILARLY IN CANADA, AND WE ALLEGED

25   SIMILAR CONDUCT IN THE UNITED STATES, WHICH RAISED A WHOLE HOST   10:1

EXHIBIT ____3____

1   OF OTHER ISSUES, MOST OF WHICH ARE, PERHAPS, UNRELATED TO BRATZ

2   ITSELF BUT ARE TRADE SECRET THEFT ISSUES.

3          EACH OF THOSE THREE PARTS OF THIS CASE, YOUR HONOR,

4   THEMSELVES, ARE VERY, VERY SUBSTANTIAL CASES WHERE VERY, VERY

5   SUBSTANTIAL AMOUNTS OF MONEY ARE ALLEGED TO BE AT ISSUE; SO WE   10:1

6   STARTED OUT WITH SORT OF A HORSEBACK ASSUMPTION:  LET'S SEE IF

7   WE CAN GET IT DONE IN 24 DEPOSITIONS A SIDE.

8          IN THIS CASE, WHAT THAT BOILS DOWN TO, THEN, IS, FOR

9   EACH OF THOSE THREE MAJOR PARTS OF THIS CASE, THAT'S EIGHT

10  DEPOSITIONS PER CASE.  AND I SUBMIT, YOUR HONOR, THAT          10:1

11  CONSCIENTIOUS LAWYERS, TRYING TO DO A GOOD JOB AND USING THE

12  TOOLS AVAILABLE UNDER MODERN FEDERAL DISCOVERY, SIMPLY COULD

13  NOT ADEQUATELY PREPARE ANY OF THOSE CASES WITH SIMPLY EIGHT

14  DEPOSITIONS.

15          IF THE COURT SAID, REALLY, I'M NOT INCLINED TO BUDGE   10:1

16  FROM THAT, WE'D HAVE A VERY, VERY DIFFERENT KIND OF TRIAL, I

17  SUGGEST, THAN WHAT WE USUALLY HAVE IN FEDERAL COURT TODAY.  IT

18  REALLY WOULD BE WITHOUT THE BENEFIT OF THE FULL EXPLORATION OF

19  THE ISSUES UNDER MODERN DISCOVERY RULES; SO I THINK IT'S PRETTY

20  CLEAR THAT THERE DOES NEED TO BE SOME RELIEF FROM THOSE LIMITS.  10:2

21          AND WHEN WE LOOK AT MGA'S EX-PARTE APPLICATION, I

22  THINK WE'RE GOING TO SEE -- ALTHOUGH IT DOES RAISE SOME

23  SLIGHTLY DIFFERENT ISSUES, I THINK MGA IS ALSO FEELING THE

24  PRESSURE HERE OF TRYING TO GET DONE EVERYTHING THAT THEY

25  BELIEVE NEEDS TO BE DONE IN ORDER TO PROPERLY PREPARE THIS      10:2

EXHIBIT _____3_____

PAGE _____20_____

JANUARY 7, 2008          BRYANT VS. MATTEL

1   CASE.

2           THE COURT:   BUT DISCUSS FOR A MOMENT, IF YOU WOULD,

3   THE IMPACT YOU SEE THIS HAVING ON THE COURT'S CALENDAR IN THIS

4   MATTER IN TERMS OF SCHEDULING OF THE TRIAL.   BECAUSE WE WENT

5   DOWN THIS ROAD A LITTLE BIT AT THE END OF LAST YEAR, AND IT WAS        10:2

6   REALLY APPARENT THAT IF I BUDGE FROM THE TRIAL DATES, I OPEN UP

7   A PANDORA'S BOX IN TERMS OF SCHEDULING ISSUES.   I MEAN, A

8   NUMBER OF PEOPLE ARE INVOLVED IN THIS THING.   THE IDEA OF

9   TRYING TO COME BACK TOGETHER ON A DATE THAT WORKS IS GOING TO

10  BE HARD.                                                              10:2

11          MR. QUINN:   RIGHT.   AND WE ARE NOT ASKING THE COURT

12  TO CHANGE ANY OF THE SCHEDULE IN ANY RESPECT.

13          THE COURT:   BUT I DON'T WANT TO BE UNREALISTIC

14  EITHER.   I MEAN, IF I DO WHAT YOU'RE ASKING IN TERMS OF

15  DISCOVERY AND IF I DO WHAT THE DEFENSE IS ASKING IN TERMS OF          10:2

16  THEIR EX-PARTE APPLICATION, I HAVE REAL CONCERNS ABOUT THE

17  CONSEQUENCES THAT WILL HAVE FOR THE DISCOVERY CUTOFF DATE WHICH

18  IS LATER THIS MONTH.

19          MR. QUINN:   LAWYERS WOULD BE WORKING VERY HARD.   MOST

20  OF THE DEPOSITIONS THAT WE'VE IDENTIFIED, THAT WE'RE ASKING           10:21

21  FOR, YOUR HONOR, RELATE TO PHASE TWO; SO THAT DISCOVERY CUTOFF

22  DATE RELATES ONLY TO PHASE ONE.   FEET TO THE FIRE, GUN TO THE

23  HEAD, IT'S CONCEIVABLE THERE WOULD BE DOUBLE -- TRIPLE-TRACK

24  DEPOSITIONS.

25          BUT IF WE NEED TO STICK WITH THE CURRENT DATES -- AND         10:21

EXHIBIT _____3_____

PAGE _____21_____

JANUARY 7, 2008                    BRYANT VS. MATTEL.

1   WE'RE MINDFUL OF WHAT THE COURT HAS SAID BEFORE ABOUT DATES,

2   ALTHOUGH I WILL POINT OUT THAT WHEN WE HAD THE STAY, WE DID

3   LOSE A WEEK.  THE COURT STAYED MATTERS FOR -- I THINK IT WAS A

4   HARD STAY OF TWO WEEKS AND A SOFT STAY OF A WEEK, WHATEVER IT

5   WAS; AND THEN THE COURT WENT BACK AND SLIPPED THE DISCOVERY          10:2

6   DEADLINE TWO WEEKS, AND WE LOST ONE WEEK THERE.  SO MAYBE THE

7   FACT THAT I'M EVEN BRINGING THAT UP SUGGESTS THAT THERE'S

8   SOMETHING TO WHAT THE COURT SAYS.

9           AND I DON'T MEAN TO SUGGEST THAT IT WOULDN'T BE A

10  DAUNTING SCHEDULE, BUT MY EXPERIENCE IS, LAWYERS, WHEN GIVEN       10:2

11  DEADLINES -- AND THERE'S A CERTAIN AMOUNT OF WORK THAT NEEDS TO

12  BE DONE, YOU WORK TOWARD THOSE DEADLINES, AND TO BE SURE, WE'D

13  HAVE TO WORK VERY HARD, BUT I THINK IT COULD BE DONE.

14          MOST OF THE DEPOSITIONS RELATE TO PHASE TWO MATTERS.

15  SEVERAL OF THEM, YOUR HONOR, ARE PURELY HOUSEKEEPING ISSUES.      10:2

16  FOR EXAMPLE, CARTER BRYANT SAYS HIS INSPIRATION FOR THE BRATZ

17  DOLLS WAS HE WALKED BY KICKAPOO HIGH SCHOOL IN A SMALL TOWN IN

18  MISSOURI ONE DAY, ON THE WAY HOME FROM WORK, OR DROVE BY IT,

19  AND HE SAW THE KIDS AND THEY HAD THIS SORT OF ETHNIC KIND OF

20  BRATTY ATTIRE AND BEHAVIOR THAT HE SAYS WAS THE INSPIRATION FOR   10:23

21  HIS DOLL.

22          WELL, WE'VE GOTTEN THE YEARBOOK FROM KICKAPOO HIGH

23  SCHOOL THAT YEAR, SO WE CAN SEE HOW THE KIDS DRESS, WE CAN SEE

24  WHAT THEY LOOK LIKE, AND WE CAN SEE HOW URBAN THEY WERE.  SO WE

25  ASKED MGA, WILL YOU STIPULATE THAT THIS IS AN AUTHENTIC COPY OF   10:23

EXHIBIT _____3_____

1    THE YEARBOOK?  WE MADE THIS REQUEST A MONTH AGO.  WE HAVEN'T

2    HEARD AN ANSWER ON THAT.  MAYBE THEY ULTIMATELY WILL; MAYBE

3    THEY WON'T.  BUT ONE DEPOSITION ON OUR LIST IS THE DEPOSITION

4    OF A DOCUMENT CUSTODIAN OF KICKAPOO HIGH SCHOOL, THE SOLE

5    PURPOSE OF WHICH, YOUR HONOR, IS TO ESTABLISH THAT THIS IS AN

6    AUTHENTIC COPY OF THE YEARBOOK.

7        AND I DON'T WANT TO SUGGEST THAT THIS KIND OF THING

8    ONLY GOES ONE WAY, YOUR HONOR.  THIS IS A CASE WHERE EVERY

9    FACT, IT SEEMS, IS DISPUTED.  THEY CHIDE US IN THEIR PAPERS FOR

10    TAKING THE DEPOSITIONS OF REPORTERS WHO QUOTE MR. LARIAN, THE

11    FOUNDER AND CEO OF MGA, GIVING AN ACCOUNT OF THE ORIGIN OF THE

12    BRATZ DOLL WHERE HE SAYS, 'I HAD A CONTEST, AN IDEA CONTEST,

13    AMONG MY EMPLOYEES, AND THIS WAS THE WINNING SUBMISSION.'

14        WE TOOK MR. LARIAN'S DEPOSITION AND SAID, 'IS THAT

15    TRUE?'  COULDN'T GET A STRAIGHT ANSWER.  ASKED FOR A

16    STIPULATION.  COULDN'T GET A STRAIGHT ANSWER.  SO WE TOOK THE

17    DEPOSITION OF THE REPORTER.  THE SOLE PURPOSE OF THAT

18    DEPOSITION WAS, 'IS THIS WHAT MR. LARIAN TOLD YOU?'  WE HAD TO

19    DO THAT, OBVIOUSLY, IF WE'RE GOING TO HAVE THE EVIDENCE AT

20    TRIAL.  AND ACTUALLY, THEY THEN CROSS-EXAMINED THE REPORTER FOR

21    MUCH LONGER -- I MEAN, I THINK OUR EXAMINATION WAS A HALF HOUR.

22    THEY THEN CROSS-EXAMINED THE REPORTER FOR MUCH LONGER.

23        SIMILARLY, THERE WAS ANOTHER REPORTER -- THERE'S BEEN

24    VARIOUS ACCOUNTS IN THE PRESS WHERE MR. LARIAN HAS BEEN QUOTED

25    ABOUT THE ORIGIN OF BRATZ -- THERE WAS A SIMILAR DEPOSITION

EXHIBIT _____ 3

1   WITH ANOTHER REPORTER.  THE COURT WILL SEE ON THIS LIST TWO

2   OTHER REPORTERS WHO WE'D LIKE TO DEPOSE.

3        THERE AREN'T REPORTER SHIELD PROBLEMS.  IT'S JUST,

4   'MADAM REPORTER, IS THIS WHAT MR. LARIAN TOLD YOU,' OR 'IS THIS

5   WHAT THE MGA REPRESENTATIVE TOLD YOU.'

6        THE COURT:  WHY DON'T YOU ADDRESS THE ISSUE THAT I'M

7   DISINCLINED TO GRANT, AND THAT'S THE CARTER BRYANT DEPOSITION.

8        MR. QUINN:  OKAY.

9        A FOOTNOTE, YOUR HONOR, ON THE INTERROGATORIES --

10        THE COURT:  YES.

11        MR. QUINN:  -- WE'RE LIMITED TO 50.  THESE RELATE TO

12   CONTENTION INTERROGATORIES SERVED LAST MARCH; SO IT'S GARDEN

13   VARIETY, STATE ALL FACTS, IDENTIFY ALL WITNESSES.

14        THE COURT:  I'M AWARE OF THAT.

15        MR. QUINN:  NOW, MR. BRYANT, AGAIN, HE'S

16   IDENTIFIED -- IF WE GO BACK TO THE TRI-PART DIVISION OF THE

17   CASE --

18        THE COURT:  AGAIN, DON'T FOCUS ON THE NEED, BECAUSE

19   I'M PROBABLY WITH YOU ON THE NEED TO DO SO.

20        MR. QUINN:  YOUR HONOR, WITH RESPECT TO

21   JUDGE INFANTE, I THINK HIS RULING THAT NINE ADDITIONAL HOURS

22   ARE ADEQUATE TO PROPERLY EXPLORE MR. BRYANT'S KNOWLEDGE WITH

23   RESPECT TO THE OTHER TWO-THIRDS OF THE CASE IS SIMPLY -- I

24   BELIEVE THAT IS ERRONEOUS, YOUR HONOR.

25        THE COURT:  AS A MATTER OF LAW?

EXHIBIT _____ 3 _____

PAGE _____ 24 _____

1    MR. QUINN:  I WOULD SAY SO.

2    THE COURT:  HOW?

3    MR. QUINN:  THERE ARE SOME -- I MEAN, WHAT ARE THE

4    FACTS THAT WE KNOW?

5    THERE ARE SOME 200 PRODUCTS, BRATZ PRODUCTS, AT

6    ISSUE, MGA SAYS.  THEY SAY THAT HE'S ONE OF TWO PEOPLE WHO HAS

7    UNIQUE KNOWLEDGE AS TO ALL OF THOSE PRODUCTS.  JUST ON THE FACE

8    OF IT, YOUR HONOR, NO REASONABLE LAWYER, I SUBMIT, COULD

9    REASONABLY CONCLUDE THAT THAT'S ADEQUATE TIME IN WHICH TO

10   EXAMINE HIM ON THAT SCOPE OF MATERIAL.

11   THE COURT:  I UNDERSTAND YOU DISAGREE THAT THAT'S NOT

12   ENOUGH TIME.

13   MR. QUINN:  RIGHT.

14   THE COURT:  BUT AS A MATTER OF LAW, WHEN

15   JUDGE INFANTE LOOKED AT THIS, HE HEARD, PRESUMABLY, ALL OF

16   THESE ARGUMENTS, AND HE CONCLUDED THAT IT WAS.

17   I DON'T KNOW HOW I, AS A REVIEWING COURT, AT LEAST

18   WITH RESPECT TO THIS ISSUE, CAN SAY THAT AS A MATTER OF LAW,

19   THAT THAT WAS AN INCORRECT OR LEGALLY UNSOUND FINDING.

20   MR. QUINN:  IT WOULD BE MY UNDERSTANDING, YOUR HONOR,

21   THAT AT SOME POINT, IF A --

22   THE COURT:  CERTAINLY, AT SOME POINT.

23   MR. QUINN:  I WOULD REFER THE COURT BACK TO THE

24   HEARING WE HAD LAST SUMMER WHERE JUDGE INFANTE HAD ENTERED AN

25   ORDER, BEFORE THE SKADDEN ARPS FIRM WAS INVOLVED AND THE

EXHIBIT _____3_____

1   O'MELVENY FIRM WAS INVOLVED, REQUIRING MGA TO PRODUCE DOCUMENTS

2   BY A CERTAIN DATE.  I THINK IT WAS THE END OF JUNE OR THE FIRST

3   OF JULY, AND THEY WERE IN HERE SEEKING RELIEF FROM THAT, SAYING

4   THAT 'WE CAN'T DO IT.'

5            AT THAT TIME, THIS COURT LOOKED AT THAT AND SAID,

6   'WELL, I THINK SOME ADDITIONAL TIME IS APPROPRIATE,' AND I

7   BELIEVE GAVE THEM AN ADDITIONAL TWO WEEKS OR 30 DAYS.  I

8   FRANKLY DON'T RECALL WHAT IT WAS.  WE DIDN'T TRIP OVER THE

9   ISSUE ABOUT WHETHER THE THEN-DEADLINE OF JUNE 30TH OR JULY 1ST

10  WAS A CLEARLY ERRONEOUS DEADLINE OR NOT.  IT SEEMED LIKE THE

11  APPROPRIATE THING TO DO TO THE COURT, AND THE COURT GRANTED

12  SOME ADDITIONAL TIME.

13           I MEAN, I THINK THIS IS AT LEAST A COMPELLING CASE,

14  GIVEN THE CENTRALITY OF THIS WITNESS TO ALL OF THOSE ISSUES ON

15  THE OTHER TWO-THIRDS OF THE CASE, YOUR HONOR.

16           I GUESS THAT'S THE BEST I CAN RESPOND ON THAT.

17           THE COURT:  VERY WELL.  THANK YOU, MR. QUINN.

18           MR. NOLAN?

19           MR. NOLAN:  YOUR HONOR, WOULD YOU PREFER TO HEAR FROM

20  CARTER BRYANT COUNSEL WITH RESPECT TO THAT FIRST ISSUE?

21           THE COURT:  I WILL LEAVE THAT UP TO YOU.

22           MR. NOLAN:  WHY DON'T WE DO THAT, AND THEN I'LL

23  ADDRESS THE SECOND PART.

24           THE COURT:  VERY WELL.

25           MS. ANDERSON:  THANK YOU, YOUR HONOR.  JUST BRIEFLY.

EXHIBIT _____3_____

PAGE _____26_____

1          WE FULLY AGREE WITH THE COURT.  AND THE REASON THAT

2  MATTEL'S OPENING MOTION, IN WHICH IT SOUGHT ADDITIONAL TIME

3  WITH MR. BRYANT, DIDN'T ADDRESS THE GOVERNING STANDARD THAT'S

4  BEFORE YOUR HONOR IN TERMS OF REVIEWING JUDGE INFANTE'S RULINGS

5  IS BECAUSE THEY COULDN'T.                                              10:2

6          THE COURT:  ADDRESS THIS LAST POINT THAT MR. QUINN

7  MAKES, THAT THIS KIND OF ALMOST INTERNAL CONSISTENCY IF THE

8  COURT DID GRANT A FEW EXTRA WEEKS BACK LAST SUMMER.  I

9  CERTAINLY DON'T HAVE THAT BEFORE ME RIGHT NOW.  BUT I'M

10  STRUGGLING TO COME UP WITH A LEGAL JUSTIFICATION FOR DOING SO      10:2

11  IN LIGHT OF THIS STANDARD.

12          MS. ANDERSON:  YOUR HONOR, FIRST OF ALL, I DON'T HAVE

13  ANY PAPERS BEFORE ME ABOUT WHATEVER THIS PRIOR RULING WAS, AND

14  I THINK, EVEN IF THE COURT DID GO SOMEHOW BEYOND ITS AMBIT IN A

15  PRIOR RULING, WHICH I DO NOT KNOW EVER HAPPENED, THAT DOESN'T      10:2

16  JUSTIFY THEN COMPOUNDING THE PROBLEM AND DOING IT HERE.

17          THE COURT:  TWO WRONGS DON'T MAKE A RIGHT.

18          MS. ANDERSON:  INDEED.

19          AND I SUBMIT, YOUR HONOR, I KNOW THAT MATTEL HAS

20  PLENTY OF ARGUMENTS WHY THEY BELIEVE MR. BRYANT SHOULD SIT FOR     10:2

21  THREE ADDITIONAL DAYS OF DEPOSITION AFTER HAVING ALREADY SAT

22  FOR THREE.  BUT I SUBMIT, THE FINDINGS THAT JUDGE INFANTE MADE,

23  INCLUDING THE FACTUAL FINDING ABOUT HIS ASSESSMENT OF WHAT THEY

24  WERE GOING TO DELVE INTO IN THIS DEPO, THIS IS ALL REHASHING OF

25  STUFF THEY'VE HAD AMPLE OPPORTUNITY TO COVER.  NINE HOURS IS A     10:3

EXHIBIT _____3_____

```
 1   LONG TIME THAT THEY WILL HAVE WITH MY CLIENT, YOUR HONOR.

 2            THE COURT:  THANK YOU, COUNSEL.

 3            MS. ANDERSON:  THANK YOU.

 4            THE COURT:  MR. NOLAN?

 5            MR. NOLAN:  THANK YOU.                          10:3

 6            YOUR HONOR, I WOULD BE REMISS IF I DID NOT START OUT

 7   BY SAYING THAT LAST EVENING, ONE OF THE LAST THINGS I READ IN

 8   PREPARING FOR THE HEARING THIS MORNING WAS THE OCTOBER 31ST

 9   TRANSCRIPT.  WHEN I WAS HERE, I WAS JUST KIND OF NEW TO THE

10   CASE AND SAYING WE NEEDED JUST A BRIEF STAY UNTIL JANUARY 15TH  10:3

11   FOR THE DEPOSITIONS.  AND MR. QUINN PROPERLY POINTED OUT THAT

12   WE'RE A BIG FIRM; ALL FIRMS KIND OF PARACHUTE IN; BASICALLY,

13   SUCK IT UP AND GET READY.

14            I HAVE TO TELL YOU, YOUR HONOR, THAT WE HAVE DONE

15   THAT, AND THE NOTION THAT THERE'S BEEN ANY DELAY, I THINK, IS  10:3

16   JUST BELIED BY THE ACTUAL FACTS.  IF I COULD JUST TELL YOU A

17   LITTLE BIT ABOUT WHAT WE'VE BEEN DOING TO GET THIS CASE READY,

18   AND THEN COME UP WITH A PROPOSAL FOR YOU WITH RESPECT TO THE

19   DISCOVERY REQUEST.

20            FROM THE BEGINNING OF TIME IN THIS CASE -- AND QUINN  10:3

21   HAS BEEN THERE FOREVER -- THERE'S BEEN 4,600 REQUESTS FOR

22   ADMISSIONS; 2,865 REQUESTS FOR PRODUCTION; 131 30(B)(6) TOPICS;

23   50-PLUS THIRD-PARTY SUBPOENAS; 63 INTERROGATORIES.  WE'VE

24   PRODUCED, MGA HAS PRODUCED, YOUR HONOR, ABOUT 3.8 MILLION.

25            INTERESTINGLY, QUINN EMANUEL, WHO'S BEEN IN THIS CASE  10:3
```

EXHIBIT _____ 3 _____

PAGE _____ 28 _____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   FOR FOUR YEARS, JUST RECENTLY, ON JANUARY 2ND AND JANUARY 4TH,

2   DOUBLED THEIR PRODUCTION, DROPPED ON US ABOUT A HALF MILLION

3   PAGES OF DOCUMENTS, WITHOUT ANY EXPLANATION AS TO WHY THESE

4   DOCUMENTS WERE NOT PRODUCED.  WE'RE STILL GOING THROUGH THEM.

5        SINCE WE'VE COME INTO THE CASE, SINCE SKADDEN CAME

6   INTO THE CASE AND MR. QUINN DID NOT WANT TO GIVE THE RELIEF

7   THAT WE REQUESTED, WE WENT TO THE MAT, AS DID MGA, AT ENORMOUS

8   EXPENSE.  WE BROUGHT IN ALMOST 50 LAWYERS TO DEAL WITH

9   OUTSTANDING ISSUES.  WE'VE ANSWERED 2,584 REQUESTS FOR

10  ADMISSIONS; WE'VE ANSWERED 101 INTERROGATORIES; WE'VE PRODUCED

11  1.6 MILLION PAGES IN DOCUMENTS.  WE HAD TO FILE 17 OPPOSITION

12  BRIEFS TO MATTEL.

13       IF THERE'S ANY NOTION HERE, YOUR HONOR, THAT WE

14  DISAGREE WITH POSITIONS IN DISCOVERY, WITH ALL DUE RESPECT,

15  MATTEL HAS WRITTEN THE BOOK ON THIS.

16       THE COURT:  THAT'S WHY, MR. NOLAN, I WAS VERY CAREFUL

17  IN MY INITIAL REMARKS THAT I AM NOT SUGGESTING ANY FAULT

18  WHATSOEVER IN YOUR PRODUCTION PATTERN SINCE COMING INTO THE

19  CASE.  I'VE READ WHAT YOU'VE PRODUCED, AND I HAVE A SENSE THAT

20  YOU AND YOUR FIRM HAVE WORKED AS HARD AS HUMANLY POSSIBLE TO DO

21  WHAT YOU CAN.

22       I GUESS MY TENTATIVE STEMS MORE FROM WHAT I PERCEIVE

23  AS THE GOOD CAUSE SHOWN FOR SOME ADDITIONAL DISCOVERY IN LIGHT

24  OF WHAT IS BEING PRODUCED, AND THE DELAY IN THE SENSE THAT IT'S

25  BEING PRODUCED NOW AS OPPOSED TO EARLIER.  AND I'M NOT

EXHIBIT _____3_____

PAGE _____29_____

1    SUGGESTING THAT IT NECESSARILY SHOULD HAVE BEEN PRODUCED

2    EARLIER OR THAT YOU COULD HAVE PRODUCED IT EARLIER.  IT'S JUST

3    A SIMPLE FACT THAT THERE ARE MATERIAL THINGS COMING TO LIGHT

4    NOW THAT SEEM TO THE COURT TO PERHAPS JUSTIFY SOME ADDITIONAL

5    DISCOVERY; SOME ADDITIONAL DEPOSITIONS, SOME ADDITIONAL                    10:3

6    INTERROGATORIES, ET CETERA.

7         SO YOU DON'T NEED TO CONVINCE THE COURT, BECAUSE YOU

8    HAVE ALREADY CONVINCED THE COURT THAT YOU'VE BEEN WORKING

9    EXTRAORDINARILY HARD AND YOU'VE BEEN DOING ALL THAT YOU CAN.

10   THE DISCOVERY IN THIS CASE IS ON A SCALE THAT I PERSONALLY HAVE          10:3

11   NEVER SEEN IN MY CAREER; SO THAT'S ESTABLISHED.

12        MR. NOLAN:  OKAY.  THANK YOU VERY MUCH, YOUR HONOR.

13        I JUST NEEDED TO SAY THAT FOR THE PEOPLE WHO HAVE

14   BEEN WORKING AROUND THE CLOCK.  I PROMISED THEM I WOULD PUT

15   THAT PITCH IN.

16        THE COURT:  OKAY.  FAIR ENOUGH.

17        MR. NOLAN:  HERE'S THE POINT, THOUGH, YOUR HONOR.  IF

18   YOU READ THEIR PAPERS CAREFULLY, I WOULD RESPECTFULLY DISAGREE.

19   I DON'T BELIEVE THAT THEY HAVE MADE A GOOD FAITH SHOWING THAT

20   ADDITIONAL DISCOVERY IS WARRANTED OR THAT THEY'RE SURPRISED BY           10:3

21   THIS OR THAT THEY WERE PREJUDICED IN ANY WAY BY ANY STAY OR

22   SOFT STAY OR CONTINUANCE FOR A BRIEF PERIOD OF TIME.

23        I THINK THE FACTS ARE QUITE CLEAR AND QUITE DRAMATIC,

24   AND THAT IS, AT A TIME -- TO TAKE YOU BACK TO A TIME WHEN WE

25   WERE NOT HERE; SO THE WORLD WAS AHEAD OF YOU ALL WHEN YOU SET            10:3

EXHIBIT _____3_____

1    THE SCHEDULES.  MATTEL CAME IN ON THEIR DISCLOSURES IN JANUARY

2    OF 2007 AND IDENTIFIED SOME 155 FACTUAL WITNESSES, 70 OF WHICH

3    THEY WANTED TO TAKE A PARTICULAR INTEREST IN.  THEY PROPOSED AT

4    THAT TIME, WITH FULL KNOWLEDGE OF ALL OF THE ISSUES IN THIS

5    CASE, AND HAVING BOTH DISCLOSURES IN FRONT OF THEM, A TOTAL OF

6    50 DEPOSITIONS.

7             NOW, I READ THE TRANSCRIPT, YOUR HONOR, AND WITH ALL

8    DUE RESPECT, I DON'T THINK YOU AND YOUR CLERK -- BECAUSE THE

9    TRANSCRIPT REFLECTS THAT YOU CONSULTED WITH YOUR CLERK WITH

10   RESPECT TO THIS, AND YOU CAME OUT WITH A NUMBER OF 24.  YOU

11   NEVER SAID THAT WAS JUST A HORSEBACK KIND OF ANALYSIS.  YOU

12   SAID THAT THEIR NUMBERS WERE DISCONCERTING TO YOU.  AND I

13   BELIEVE THE REASON WHY YOU SAID THAT IS BECAUSE, YOUR HONOR,

14   THAT ALTHOUGH THIS IS A LARGE CASE, THIS ISN'T THE LARGEST CASE

15   AROUND.

16            I MEAN, MY GOSH, THIS CASE AND THE POSITIONS THAT ARE

17   NOW BEING TAKEN BY MATTEL, WHERE THEY NEED 50 MORE ON TOP OF

18   THE 22 DEPOSITIONS THAT THEY'VE TAKEN, WHICH, WHEN YOU THINK

19   ABOUT IT, JUDGE, IS 22 MORE THAN THEY ASKED YOU FOR AT THE TIME

20   OF THE DISCLOSURE, WITHOUT A LOT OF NEW INFORMATION AVAILABLE.

21   I THINK, OF THE 50 WITNESSES THAT THEY'RE ASKING PERMISSION TO

22   TAKE, ONLY SIX NAMES ARE NEW.  YOU DO THE MATH.  THE OTHERS

23   WERE ALL IN THE DISCLOSURES.

24            THE COURT:  WHAT ABOUT THOSE SIX NEW WITNESSES?

25            MR. NOLAN:  IF THOSE SIX NEW ADDITIONAL WITNESSES,

EXHIBIT _____ 3 _____

1    YOUR HONOR, RELATE TO PHASE ONE, I'M WILLING TO WORK SOMETHING

2    OUT WITH THEM IN THAT REGARD.  I'M NOT TRYING TO CUT THEM OFF

3    AT THE KNEES AND SAY, 'LISTEN, TOUGH LUCK, YOU BLEW 24.'  HE'S

4    TALKING ABOUT HE HAD TO TAKE THE DEPOSITION OF A REPORTER TO

5    JUSTIFY SOMETHING.  I WASN'T INVOLVED IN THAT.  I GUESS THE

6    SOFT ISSUE HE DIDN'T WANT TO GO TO IS, WHY DID THEY TAKE

7    CARTER BRYANT'S NIECE TO TALK ABOUT THE COMPUTER THAT WAS GIVEN

8    TO HER AS A GIFT?  BUT THAT'S ALL IN THE BACK.

9             WHAT I'M INTERESTED IN, YOUR HONOR, IS TRYING THIS

10   CASE ON A SCHEDULE THAT YOU TOLD US TO GET READY FOR.

11             THE COURT:  I AM AS WELL.

12             MR. NOLAN:  MAY I JUST MAKE A -- BECAUSE I THINK,

13   FRANKLY, THINKING ABOUT ALL OF THIS LAST NIGHT, I HAVE A

14   PROPOSAL THAT, I THINK, ALLOWS THIS TO MAKES SENSE.

15             THE COURT:  LET ME HEAR IT.

16             MR. NOLAN:  AND THIS IS NOT BEHIND CURTAIN ONE OR

17   CURTAIN TWO OR CURTAIN THREE.

18             HERE'S WHAT I THINK MAKES ABSOLUTE SENSE, HAVING DONE

19   THIS A LITTLE BIT MYSELF IN BIG CASES BEFORE:

20             MOST OF WHAT THEY'RE ASKING FOR IS PHASE TWO STUFF.

21   RIGHT NOW, IN FRONT OF US, WE'RE STARING AT A HARD CUTOFF OF

22   JANUARY 28TH.  AND WE'LL LIVE WITH IT, JUDGE.  WE CAN LIVE WITH

23   IT, IF WE GET COOPERATION FROM MATTEL.  AND I'LL DEAL WITH THE

24   EX-PARTE APPLICATIONS IN JUST A MINUTE, BUT HERE'S MY PROPOSAL,

25   YOUR HONOR:

EXHIBIT ____3____

PAGE ____32____

23

```
 1            THAT THE PARTIES FOCUS ON PHASE ONE DISCOVERY.  IF
 2   JOHN QUINN OR MIKE ZELLER COMES TO ME AND SAYS, 'WE NEED THREE
 3   MORE WITNESSES FOR DEPOSITION FOR PHASE ONE ISSUES,' I'M FINE.
 4   WE MADE THAT PROPOSAL.  BUT IT'S ALWAYS 50 OR NOTHING.
 5            LET'S FOCUS AND NARROW THE ISSUES TO BRING THIS CASE      10:3
 6   HOME FOR YOU, YOUR HONOR, ON THE SCHEDULE THAT YOU HAVE SET AND
 7   EVERYBODY HAS BEEN LIVING UP TO.
 8            LET'S TALK ABOUT TODAY SAYING TO THE PARTIES,
 9   'COMPLETE DEPOSITIONS BY JANUARY 28TH.  IF YOU HAVE, HOWEVER,
10   SCHEDULING ISSUES' -- BECAUSE ONE, FOR INSTANCE, MATT           10:3
11   (UNINTELLIGIBLE) IS OUT OF TOWN.  THEY WANT ISAAC LARIAN ONCE
12   MORE, BUT ISAAC HAS TO GO TO THE HONG KONG TOY FAIR IN NEW
13   YORK; SO THERE'S A SCHEDULING ISSUE WITH RESPECT TO HIM THAT WE
14   MIGHT NOT BE ABLE TO GET HIM IN BEFORE JANUARY 28TH.  LET'S
15   WORK TOGETHER TO IDENTIFY --                                    10:3
16            THE COURT:  SLOW DOWN.
17            MR. NOLAN:  THERE CAN BE A LITTLE BIT OF WIGGLE ROOM
18   ON THE 28TH, BUT WE TRY TO GET EVERYTHING IN BY THE 28TH.
19   WE'LL DOUBLE TRACK; WE'LL TRIPLE TRACK.  I MEAN, EVERYBODY HAS
20   TOO MANY LAWYERS ON THIS CASE.  WE CAN DO THAT.                 10:3
21            THE COURT:  SO ARE YOU SAYING THAT YOU WOULD BE
22   WILLING TO WAIVE ANY OBJECTIONS OR YOU'D STIPULATE TO AN
23   INCREASE IN THE NUMBER OF DEPOSITIONS?
24            MR. NOLAN:  FOR A VERY LIMITED NUMBER.
25            THE COURT:  FOR PHASE ONE.                             10:3
```

EXHIBIT _____ 3 _____

PAGE _____ 33 _____

JANUARY 7, 2008                    BRYANT VS. MATTEL

MR. NOLAN:   IF THEY'RE RELATED TO PHASE ONE.

WHY SHOULD WE, RIGHT NOW, JUDGE, WITH JUDGE INFANTE BURIED, WITH YOUR HONOR -- I MEAN, THE ELECTRONIC FILING SYSTEM -- I'M AFRAID WE'RE GOING TO BURN THE SYSTEM WITH THE NUMBER OF DOCUMENTS THAT ARE BEING FILED IN THIS CASE.

THE COURT:   SOMEONE BROKE THE PLASTIC COURTESY BOX THAT WE HAD IN THE BACK.

MR. NOLAN:   THAT WAS QUINN EMANUEL.

THE COURT:   YOU'RE SURE IT WAS?

MR. NOLAN:   I'M POSITIVE; THEY FILED MORE PAPERS THAN ANYBODY ELSE.

THE COURT:   SOMEBODY BROKE IT.

MR. NOLAN:   BUT TO BE SERIOUS, YOUR HONOR -- LET'S COME BACK TO MY OTHER PROPOSAL THAT WE FOCUS ON PHASE ONE.

THERE ARE HEARINGS THAT ARE CURRENTLY SCHEDULED FOR JUDGE INFANTE ON FEBRUARY 8TH.  THEY'RE ALL, EXCEPT FOR ONE, COMPLETELY BRIEFED.  THEY'RE ALL READY TO GO.  JUDGE INFANTE HAS BEEN DOING THE LORD'S WORK.  IT IS UNBELIEVABLE THE AMOUNT OF WORK THAT HE HAS BEEN DOING IN THIS CASE, ON TOP OF ALL OF HIS OTHER CLIENTS THAT HE HAS COMMITTED.  AND EVEN KNOWING THAT WE HAVE JANUARY 28TH COMING UP, HE CAN'T HEAR SOME VERY SIGNIFICANT MOTIONS UNTIL FEBRUARY 8TH.

THE EXPERT REPORTS IN THIS CASE ARE DUE FEBRUARY 11TH.  MANY OF THE ISSUES ON THE FEBRUARY 8TH CALENDAR ARE ISSUES THAT DIRECTLY RELATE TO GETTING DOCUMENTS NECESSARY

EXHIBIT ____3____

1  FOR OUR EXPERT PREPARATION.

2      HERE'S THE WORST PART OF MY PROPOSAL: I'M WONDERING

3  WHETHER OR NOT, WITH RESPECT TO THE MATTERS THAT HAVE BEEN

4  BRIEFED AND ARE READY TO GO -- AND THERE'S ONE THAT THEIR

5  OPPOSITION IS DUE A LITTLE BIT LATER THIS WEEK, AND I WAS GOING

6  TO TWEAK THAT A LITTLE BIT -- I WAS WONDERING WHETHER OR NOT

7  THOSE MATTERS -- AND THERE'S MAYBE FOUR MATTERS -- POSSIBLY

8  COULD BE HEARD BY MAGISTRATE BLOCK AS EARLY AS NEXT WEEK.

9  THEY'RE ALL BRIEFED.

10      ALL OF THE PARTIES COULD GIVE TO THE MAGISTRATE, OR

11  WHICHEVER MAGISTRATE THE COURT MIGHT ASK -- WE COULD GET ALL OF

12  THE BRIEFS TO THEM BY THE CLOSE OF BUSINESS TOMORROW. WE COULD

13  DO IT BY THE END OF TODAY; THEY'VE ALL BEEN PREPARED. I THINK

14  YOU HAVE ALL OF THEM THAT HAVE BEEN FILED IN FRONT OF

15  JUDGE INFANTE. BUT WE COULD PACKAGE THEM ALL TOGETHER, HAVE

16  THOSE MATTERS HEARD NEXT WEEK BY A MAGISTRATE, GET THE RULINGS.

17  IF THE DISCOVERY IS ORDERED, PARTIES MOVE QUICKLY TO GET THE

18  DISCOVERY READY AND GET GOING.

19      THE COURT: THE CONCERN THAT I WOULD HAVE IS -- YOU

20  KNOW, JUDGE INFANTE HAS DEVELOPED, I'M SURE, A CERTAIN DEGREE

21  OF INSTITUTIONAL MEMORY ASSOCIATED WITH THIS CASE, AND TO

22  SADDLE JUDGE BLOCK OR ANY OTHER JUDGE IN THIS COURT WITH THOSE

23  TYPES OF MOTIONS OUT OF NOWHERE, WITH NO BACKGROUND, I THINK

24  THAT WOULD PROBABLY BE A PRETTY ONEROUS IMPOSITION.

25      MR. NOLAN: JUDGE BLOCK WAS INVOLVED IN THIS CASE

EXHIBIT _____3_____

PAGE _____35_____

1   EARLY ON, YOUR HONOR.  HE DID RULE ON SEVERAL MATTERS.  I CAN'T

2   GIVE YOU THE FULL COUNT.

3         I CAN SAY THAT MANY OF THESE ARE STRAIGHT-UP MOTIONS

4   THAT PRESENT ISSUES OF FACT THAT ARE NOT NECESSARILY TIED TO

5   HAVING PARTICIPATED IN THE FIRST THREE QUARTERS OF THE GAME.     10:4

6   IT'S NOT THAT WE'RE BRINGING IN SOMEBODY FROM A NEW TEAM.

7         I THINK THAT IT'S POSSIBLE.

8         OTHERWISE, YOUR HONOR, WE'RE LOOKING AT A SCHEDULE IN

9   FRONT OF JUDGE INFANTE ON FEBRUARY 8TH FOR HEARINGS THAT,

10  DESPITE HIS BEST EFFORTS, HE COULDN'T HANDLE ON JANUARY 3RD.     10:4

11  HE'S GOT A TELEPHONIC CONFERENCE TOMORROW ON SOME THIRD-PARTY

12  ISSUES; JANUARY 10TH, HE HAS THAT HEARING.

13        BUT IN ORDER FOR THIS IDEA TO WORK, YOUR HONOR -- I

14  DON'T KNOW WHETHER OR NOT YOU REALLY NEED THE HISTORY.

15        THE GOOD NEWS ABOUT THE LAWYERS IN THIS CASE, THEY        10:4

16  REPEAT EVERYTHING IN THE PAPERS; SO FRANKLY, SOMEONE PICKING

17  UP -- I THINK IT'S POSSIBLE, YOUR HONOR.

18        THERE'S ONE OTHER ISSUE THAT WOULD HAVE TO BE

19  CHANGED, AND THAT IS THAT THERE'S AN OPPOSITION THAT MATTEL HAS

20  TO FILE ON THE 11TH.  THEY HAD ASKED FOR -- I THINK THEY GOT     10:4

21  SOMETHING, LIKE, A 20-DAY EXTENSION OF TIME TO FILE IT BECAUSE

22  OF THE HOLIDAYS.  IF THEY FILED IT ON THURSDAY RATHER THAN

23  FRIDAY, I COULD COMMIT TO FILING OUR PAPERS ON SUNDAY EVENING

24  SO THAT THOSE COULD ALL BE HEARD NEXT WEEK IN FRONT OF THE

25  MAGISTRATE.

EXHIBIT _____3_____

PAGE _____36_____     10:4

JANUARY 7, 2008                    BRYANT VS. MATTEL

1          THEN I WOULD SAY, YOUR HONOR, THAT WE COULD HAVE OUR

2     HEARING ON JANUARY 17TH, WHICH WOULD BE THE HEARING ON THESE

3     OUTSTANDING MOTIONS THAT RELATE TO PHASE ONE ISSUES.  WE COULD

4     GET THE RULING.  IF IT'S GRANTED, WE TAKE THE DISCOVERY RIGHT

5     AWAY, AND WE HAVE THAT DISCOVERY AVAILABLE FOR THE EXPERTS ON                10:4

6     FEBRUARY 11TH.

7          NOW, IF JOHN OR MIKE COME TO ME AND SAY WE NEED THREE

8     MORE DEPOSITIONS, I'M WILLING TO WORK THAT OUT, YOUR HONOR.

9     I'M NOT HOLDING IT TO 22 OR 24.  I WANT TO SET ASIDE THIS

10    NONSENSE ABOUT HOW YOU COUNT DEPOSITIONS.  WE THINK THAT WHEN              10:4

11    WE GET TO THE EX-PARTE ARGUMENT, I'LL TELL YOU THAT THAT IS A

12    LITTLE BIT LATE IN THE GAME.  WE THINK IT'S A LITTLE BIT

13    DISINGENUOUS AT THIS POINT IN TIME.  BUT IT CANNOT BE, YOUR

14    HONOR, IT CANNOT BE, THAT WHEN YOU THINK OF THE HARD SCHEDULE

15    THAT YOU PUT IN, WHAT YOU ASKED MGA AND US TO STEP UP TO                   10:4

16    PROPERLY, NOTHING WRONG WITH THAT.  WE DID IT.  WE DID IT.  TO

17    NOW SOFTEN IT BECAUSE OF ALLEGED PRODUCTION ISSUES, WHERE,

18    FRANKLY, YOUR HONOR, MOST OF THE PRODUCTION HAD ALREADY TAKEN

19    PLACE BEFORE THAT DISCOVERY.

20         THE PROPOSAL THAT I HAVE COME UP WITH, YOUR HONOR,                    10:4

21    ALLOWS US TO GET PHASE ONE DONE.  IT DOES REQUIRE PHASE TWO TO

22    BE PUT ON THE BACK BURNER.

23         WHEN I SUGGESTED THAT EARLIER, IT WAS A DIFFERENT

24    TIME AND A DIFFERENT PLACE.  YOUR CONCERN, RIGHTFULLY SO, WAS,

25    'GEE, WE'RE GOING TO HAVE MORE BATTLES, NOLAN, BECAUSE WHO CAN            10:4

EXHIBIT _____ 3

```
 1   TELL WHETHER OR NOT IT'S PHASE ONE OR PHASE TWO?'

 2        THAT ISSUE IS REMOVED BECAUSE OF THE HARD DISCOVERY

 3   STAY ON JANUARY 28TH.  IF WE FOCUS ALL ON PHASE ONE --

 4        THE COURT:  LET ME HEAR MR. QUINN'S RESPONSE TO YOUR

 5   PROPOSAL.  AND I DON'T MEAN TO MOVE YOU ALONG HERE, BUT WE HAVE    10:4

 6   TO MOVE YOU ALONG.

 7        MR. QUINN, WHAT'S YOUR THOUGHT ON --

 8        MR. QUINN:  YOUR HONOR, BECAUSE I'M NOT INTIMATELY

 9   FAMILIAR WITH THE MATTERS THAT ARE TEED UP BEFORE JUDGE INFANTE

10   ON THAT PORTION AND THE IDEA THAT BE DEFERRED TO MAGISTRATE        10:4

11   BLOCK, I'D LIKE TO DEFER THAT TO MR. ZELLER.

12        BUT BEFORE I DO THAT, IF I COULD RESPOND TO THE

13   PROPOSAL.

14        THE COURT:  PLEASE.

15        MR. QUINN:  WHAT I'M HEARING IS THAT MR. NOLAN IS           10:4

16   PREPARED, IF WE REALLY NEED IT, TO GIVE US THREE MORE

17   DEPOSITIONS ON PHASE ONE TOPICS.

18        THE COURT:  I DON'T THINK HE'S LOCKED INTO THREE.  I

19   THINK HE WAS USING THREE AS AN EXAMPLE.  BUT I THINK WHAT HE'S

20   RELUCTANT TO DO IS GIVE YOU A BLANK CHECK.                         10:4

21        WHAT I'M HEARING IS THAT IF YOU CAN IDENTIFY THOSE

22   PARTICULAR DEPOSITIONS OR THAT PARTICULAR DISCOVERY THAT YOU

23   NEED TO COMPLETE THE PHASE ONE DISCOVERY -- AND I DO ACCEPT THE

24   NOTION THAT WE'RE AT A DIFFERENT POINT NOW THAN WE WERE SEVERAL

25   MONTHS AGO IN TERMS OF BEING ABLE TO IDENTIFY WHAT IS PHASE ONE    10:4
```

EXHIBIT _____ 3 _____

1    AND PHASE TWO.  I MEAN, WE SHOULD BE NEARING THE END.  YOU

2    SHOULD HAVE A PRETTY CLEAR SENSE OF WHAT YOU NEED TO TRY YOUR

3    CASE AND WHAT THEY NEED TO TRY THEIR CASE.

4              MR. QUINN:  RIGHT.

5              THE COURT:  I THINK WE SHOULD BE AT A POINT WHERE      10:4

6    PEOPLE OF THE CALIBER THAT ARE GATHERED HERE SHOULD BE ABLE TO

7    SAY, 'THIS IS WHAT WE NEED TO PIN DOWN BEFORE WE CAN GO TO

8    TRIAL.'  AND YOU NEED SOME MORE; THEY NEED SOME MORE; LET'S GET

9    THAT DONE.

10             THAT SUGGESTION IS SOMETHING THAT RESONATES WITH THE   10:4

11   COURT QUITE WELL.  IT REQUIRES THE LEVEL OF MATURITY THAT IS

12   NOT ALWAYS PRESENT IN LITIGATION, BUT I TRUST IS PRESENT IN

13   THIS COURTROOM.

14             MR. QUINN:  YOUR HONOR, I THINK THERE IS SOME WISDOM

15   THERE.  THE DEVIL IS IN THE DETAILS.                            10:4

16             THE COURT:  AS ALWAYS.

17             MR. QUINN:  LET ME SAY THAT JUST, FOR EXAMPLE, THE

18   WEEK BEFORE LAST, WE TOOK -- AND THIS IS SOMETHING THAT

19   HAPPENED SINCE THIS MOTION WAS FILED -- WE TOOK THE DEPOSITION

20   OF A PERSON NAMED VERONICA MARLOW, WHO IS THEIR VENDOR FOR      10:4

21   FASHION DESIGN FOR BRATZ, AND LEARNED IN THE COURSE OF THAT

22   DEPOSITION THAT THREE MATTEL EMPLOYEES OTHER THAN CARTER BRYANT

23   HAVE BEEN WORKING ON BRATZ FOR YEARS.  THAT WAS THE TESTIMONY.

24             THIS WAS NEWS TO US.

25             MOREOVER, SHE TESTIFIED THAT SHE HAD A CONVERSATION    10:4

EXHIBIT _____3_____

PAGE_____39_____

1   WITH AN MGA EXECUTIVE ABOUT THIS, WHERE SHE REFUSED TO ANSWER

2   POINTED QUESTIONS ABOUT WHETHER THERE WAS SOMEBODY ELSE AT

3   MATTEL WORKING ON THIS.

4          I SUBMIT, YOUR HONOR, THAT IS BLOCKBUSTER TESTIMONY,

5   IN OUR VIEW.  WE THOUGHT THIS WAS JUST CARTER BRYANT; SO          10:4

6   THERE'S THREE EMPLOYEES, TWO OF WHICH ARE FORMER EMPLOYEES NOW,

7   AND THIS EXECUTIVE, MEL WOODS -- HIS NAME ISN'T EVEN IN THIS

8   LIST THAT WE'VE SUBMITTED -- THAT I THINK WE NEED TO TAKE THEIR

9   DEPOSITIONS.

10          NOW, MR. NOLAN BANDIED ABOUT THE NUMBER OF 50.  THE       10:4

11  NUMBER ISN'T 50.  WE'VE LISTED THE DEPOSITIONS IN OUR PROPOSED

12  FORM OF ORDER THAT WE SUBMITTED TO THE COURT.  I DO THINK WE

13  COULD SIT DOWN AND SAY THIS GROUP -- AND MOST OF THEM ARE -- IS

14  TRULY JUST PHASE TWO.  THERE'S GOING TO BE A SIGNIFICANT

15  CATEGORY THAT ARE BOTH PHASE ONE AND PHASE TWO, AND THEN THERE    10:4

16  WILL BE SOME SMALLER NUMBER WHICH ARE PHASE ONE ALONE.

17          THE COURT:  THIS IS HELPFUL IN TERMS OF THE COURT

18  FASHIONING AN ORDER FOR THIS MOTION.

19          MR. QUINN:  IN TERMS OF MR. BRYANT, YOUR HONOR, AND

20  WHAT HAPPENED LAST FALL -- AND COUNSEL FOR MR. BRYANT SAID SHE    10:4

21  DIDN'T HAVE ANYTHING BEFORE HER ABOUT THE ORDER THAT THE COURT

22  ENTERED.  WE RAISED THIS IN OUR MOVING PAPERS.  WE CALLED THE

23  COURT'S ATTENTION -- REMEMBER WHEN THEY WERE HERE BEFORE,

24  ASKING TO CUT SOME SLACK FROM THE MAGISTRATE'S ORDER.  IN THE

25  MOVING ORDERS, PAGE 24, WE DISCUSSED THAT, AND AGAIN IN OUR       10:4

EXHIBIT _____3_____

PAGE _____40_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1  REPLY PAPERS ON PAGE 11; SO I SUBMIT, WE DID TEE UP THAT ISSUE.

2  THIS IS AT LEAST AS COMPELLING A SITUATION TO TAKE ANOTHER LOOK

3  AT WHAT JUDGE INFANTE RULED.

4        WITH RESPECT TO THE NIECE, THE NIECE HAD HIS

5  COMPUTER. WE WENT THROUGH A RUNAROUND TO GET HIS COMPUTER. WE

6  FOUND THIS 'EVIDENCE ELIMINATOR' -- THAT'S THE NAME OF A

7  PROGRAM; IT'S NOT A GREAT NAME -- ON THE COMPUTER, AND JUST TO

8  GET ASSURANCE THAT SOMEBODY WASN'T GOING TO SAY -- NOW, TELL ME

9  I'M BEING TOO DEVIOUS AND OVER THINKING THIS HERE -- THAT

10  SOMEBODY MIGHT SAY THE NIECE PUT 'EVIDENCE ELIMINATOR' ON THE

11  COMPUTER. WE TOOK HER DEPOSITION FOR ONE HOUR AND 15 MINUTES;

12  THAT WAS IT.

13        SO IF THE PROPOSITION IS THAT --

14        THE COURT: A LONG TIME TO ASK A QUESTION.

15        MR. QUINN: YEAH.

16        THE COURT: ALL RIGHT.

17        MR. QUINN: IF THE PROPOSITION IS THAT MR. NOLAN AND

18  I SHOULD SIT DOWN AND FIGURE OUT WHICH ARE TRULY PHASE ONE AND

19  WHICH ARE SORT OF A MIX AND WHICH ARE PHASE TWO AND WE CAN

20  FORGET ABOUT FOR NOW, I'M SURE WE CAN DO THAT. BUT, AGAIN, I

21  UNDERSCORE THE IDEA, IT'S NOT GOING TO BE THREE, AND IT'S NOT

22  GOING TO BE TEN; IT'S GOING TO BE MORE THAN THAT THAT WE NEED

23  FOR PHASE ONE.

24        THE COURT: I'LL TRY TO PROVIDE AS MUCH GUIDANCE AS I

25  CAN IN THE COURT'S ORDER.

EXHIBIT _____ 3 _____

PAGE _____ 41 _____

1    MR. ZELLER:  I'D JUST LIKE TO ADD, YOUR HONOR -- AND

2    I'M NOT TRYING TO FAULT MR. NOLAN -- I WAS THE ONE WHO

3    DISCUSSED WITH HIS COLLEAGUES THE VERY PROPOSAL THAT HE'S

4    MAKING HERE NOW, IN WHICH I ASKED WHETHER OR NOT THERE WERE AT

5    LEAST SOME PEOPLE ON OUR LIST, WHICH WE GAVE TO THEM IN ADVANCE

6    OF ALL OF THIS, THAT THEY WOULD AGREE TO.  WE GOT AN ANSWER OF,

7    NO, THAT THEY WOULDN'T AGREE TO ANY OF THEM.

8              THE COURT:  WELL, HOPEFULLY, THE COURT'S ORDER WILL

9    PROPEL AND MR. NOLAN'S STATEMENTS TODAY WILL RESOLVE THAT.

10             I'M GOING TO MAKE YOUR JOB A LITTLE EASIER HERE,

11   BECAUSE THE COURT DOESN'T TAKE THE SUGGESTION WELL IN TERMS OF

12   SENDING THIS TO A MAGISTRATE JUDGE AT THIS POINT.  I JUST DON'T

13   THINK THAT WOULD WORK FOR A NUMBER OF REASONS, SOME THAT HAVE

14   NOTHING TO DO WITH -- THAT ARE INTERNAL TO THE COURT'S

15   OPERATIONS.

16             MR. ZELLER:  YOU'RE REFERRING TO THE REFERENCE OF

17   SOME OF THOSE MOTIONS TO JUDGE BLOCK?

18             THE COURT:  OR TO SOME OTHER MAGISTRATE JUDGE, YES.

19             MR. ZELLER:  AND NOT TO BELABOR THE POINT, I BELIEVE

20   THE COURT HAS REACHED A DETERMINATION ON THAT, BUT SOME OF

21   THOSE MOTIONS THAT ARE UP IN FRONT OF JUDGE INFANTE ACTUALLY

22   HEAVILY INVOLVE HIS PRIOR RULINGS AS WELL; SO THAT WOULD BE

23   PARTICULAR INEFFICIENCY, I THINK, ON TRYING TO MOVE THOSE OVER

24   TO JUDGE BLOCK.  THEY ARE NOT DISCRETE ISSUES, AS HAS BEEN

25   SUGGESTED.              EXHIBIT _____ 3 _____

                             PAGE _____ 42 _____

1    THE COURT: VERY WELL.

2        I'M GOING TO MOVE ON TO THE MOTION REGARDING THE

3    AUGUST 27, 2007 ORDER.

4        THIS RELATES TO WHETHER OR NOT ALL PARTIES ARE

5    REQUIRED TO SUBMIT THE AFFIDAVIT SUGGESTING OR SETTING FORTH    10:5

6    SPECIFICALLY THEIR EVIDENCE RETENTION AND OTHER PRACTICES

7    RELATED TO DOCUMENT RETENTION IN THIS CASE.

8        THE COURT REMEMBERS THE HEARING WELL, AND WHILE IT IS

9    TRUE THAT IN THE COURSE OF DISCUSSING THE MOTION FOR

10   TERMINATING SANCTIONS WHICH WAS BROUGHT BY MGA THAT THE COURT    10:5

11   REFERRED DURING THE HEARING TO MATTEL AND TO MGA, I DON'T THINK

12   THE COURT COULD HAVE BEEN MORE EXPLICIT IN ITS ORDER THAT THE

13   ORDER APPLIED TO ALL PARTIES.

14       I DON'T KNOW WHAT LANGUAGE I COULD HAVE USED TO BE

15   CLEARER IN TERMS OF THE SCOPE OF THE ORDER; THAT'S MY TENTATIVE    10:5

16   THOUGHTS. I'LL CERTAINLY GIVE ANYONE WHO WANTS TO ADDRESS IT

17   AN OPPORTUNITY TO DO SO, BUT MY SENSE IS THAT THIS APPLIES TO

18   EVERYBODY. AND I GUESS I NEED TO HEAR SPECIFICALLY FROM

19   COUNSEL FOR MACHADO GOMEZ, BECAUSE I ALSO TEND TO AGREE THAT

20   THE DECLARATION SUBMITTED BY HIM -- WHICH IT'S NOT CLEAR TO THE    10:5

21   COURT WAS EVER FILED, ALTHOUGH I'VE NOW SEEN IT AS IT'S BEEN

22   SUBMITTED IN PAPERS -- IS ANYTHING BUT ADEQUATE TO COMPLY WITH

23   THE COURT'S ORDER REGARDING THE NEED FOR A FILED AFFIDAVIT.

24       COUNSEL?

25       MS. ANDERSON: THANK YOU, YOUR HONOR. THIS IS    10:5

EXHIBIT _____ 3 _____

PAGE _____ 43 _____

1    CHRISTA ANDERSON FOR CARTER BRYANT.

2           YOUR HONOR, I CERTAINLY CONSIDER MYSELF AND MY FIRM

3    TO BE VERY RESPONSIBLE LAWYERS, AND WE DID NOT UNDERSTAND

4    YOUR HONOR'S ORDER TO REALLY MEAN ALL PARTIES BECAUSE WE READ

5    THE LANGUAGE OF THE ORDER AS INCORPORATING AS ORDERED BY THE

6    COURT DURING THE HEARING.

7           WE DID READ YOUR HONOR'S WORDS VERY CAREFULLY TO TRY

8    TO ASCERTAIN WHETHER WE DID OR DID NOT HAVE TO DO IT. WE

9    APOLOGIZE IF WE MISREAD THIS ORDER, YOUR HONOR.

10          THE COURT:   THERE'S NO NEED TO APOLOGIZE, BUT PART OF

11   WHAT I REMEMBER OF THE HEARING IS THAT THE ATTORNEY THAT YOU

12   HAD REPRESENTING CARTER BRYANT HAD TO LEAVE FOR A SPEAKING

13   ENGAGEMENT IN THE MIDDLE OF THE HEARING.   I'VE HAD ATTORNEYS

14   NOT SHOW UP FOR HEARINGS, BUT IT LITERALLY WAS THE FIRST TIME

15   THAT I'VE BEEN ON THE BENCH THAT I'VE ACTUALLY HAD AN ATTORNEY

16   WALK OUT IN THE MIDDLE OF A HEARING.

17          SO FOR CARTER BRYANT NOW TO BE SUGGESTING THAT THEY

18   DID NOT UNDERSTAND THE COURT'S ORDER OR DIDN'T HAVE AN

19   OPPORTUNITY TO CHALLENGE THE COURT'S ORDER, IT WOULD BE A GOOD

20   THING NEXT TIME FOR HIM TO STAY FOR THE WHOLE HEARING.

21          MS. ANDERSON:   ABSOLUTELY, YOUR HONOR.

22          JUST TO DEFEND OUR POSITION A BIT, IF YOUR HONOR

23   WOULD TOLERATE IT FOR ONE MOMENT, BECAUSE WE WERE NOT THERE,

24   WHEN WE SAW THAT YOUR HONOR HAD INCORPORATED REFERENCE TO --

25          THE COURT:   AGAIN, YOU LEFT.   YOU WERE THERE AT THE

10:5
10:5
10:5.
10:5.
10:5.
10:5

EXHIBIT _____3_____

PAGE _____44_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   BEGINNING OF THE HEARING, AND YOU LEFT.

2        MS. ANDERSON:  INDEED.

3        WE GOT THE TRANSCRIPT, AND WE EXAMINED IT, AND WE HAD

4   CONCLUDED THAT BECAUSE THE AFFIDAVIT SEEMED TO BE INTENDED TO

5   ADDRESS WHO WAS INSTRUCTED TO PRESERVE DOCUMENTS AND WHICH

6   CATEGORIES OF DOCUMENTS THEY WERE INSTRUCTED TO PRESERVE, AND

7   BECAUSE THE COURT HAD SAID, AT LEAST DURING THE HEARING, IT

8   REQUIRED TWO SINGULAR AFFIDAVITS, ONE FROM MGA, ONE FROM

9   MATTEL; TO US, THAT SUGGESTED THAT THIS WHOLE AFFIDAVIT

10  PROCEDURE DIDN'T SEEM TO BE DIRECTED AT OUR CLIENT.

11       AGAIN, WE DO APOLOGIZE.

12       THE COURT:  IT'S CLEAR NOW.

13       MS. ANDERSON:  YES.  WE WILL TAKE CARE OF THAT,

14  YOUR HONOR.

15       THE COURT:  VERY GOOD.

16       MS. ANDERSON:  ALSO, YOUR HONOR, THERE IS A REQUEST

17  IN HERE.  IT SEEMS TO BE TYPICAL FOR THESE MOTIONS FILED BY

18  MATTEL FOR SANCTIONS.  WE WOULD REQUEST THAT OUR CLIENT NOT BE

19  SANCTIONED, GIVEN THE AMBIGUITY OF THIS SITUATION.

20       THE COURT:  IF IT WAS AMBIGUOUS TO YOU, WHY DIDN'T

21  YOU SEEK CLARIFICATION IN THE INTERVENING MONTHS?

22       MS. ANDERSON:  I SUBMIT, YOUR HONOR, THAT MATTEL

23  EQUALLY SHOULD HAVE SOUGHT CLARIFICATION, BECAUSE WHEN WE READ

24  THE ORDER -- AND WE POINTED THIS OUT TO MATTEL'S COUNSEL -- IT

25  SEEMED TO INCORPORATE BY REFERENCE THE GUIDANCE THE COURT HAD

EXHIBIT _____ 3 _____

1  GIVEN DURING THE HEARING ABOUT WHO WAS SUPPOSED TO DO IT AND

2  WHAT WAS SUPPOSED TO BE IN IT.

3      WE WERE NOT TRYING TO BE DIFFICULT.

4      YOUR HONOR, FRANKLY, IN THIS LITIGATION, WHICH IS

5  SCORCHED EARTH LITIGATION IF I'VE EVER SEEN IT, WE'VE SPENT, MY   10:5

6  CLIENT AND MYSELF AND MY FIRM, A LOT OF TIME DEFENDING

7  OURSELVES AGAINST WHAT WE VIEW TO BE INCESSANT ACTIVITIES BY

8  MATTEL TO SORT OF MAKE WORK, FILE BRIEFS, DO THINGS FOR

9  SITUATIONS WHERE WE DO NOT BELIEVE IT IS APPROPRIATE, AND WE

10  THINK IT IS HARASSING.  AND THIS APPEARED TO US TO BE YET   10:5

11  ANOTHER SITUATION WHERE WE WERE BEING DRIVEN TO DO THE SAME

12  THING OVER AND OVER AGAIN.

13      THAT IS SORT OF THE CONTEXT OF THE SITUATION WE'VE

14  BEEN DEALING WITH, YOUR HONOR.

15      **THE COURT:**  THANK YOU, COUNSEL.   10:5

16      MR. OVERLAND, DO YOU WISH TO SPEAK ON BEHALF OF

17  MR. MACHADO GOMEZ?

18      **MR. OVERLAND:**  YES, YOUR HONOR.

19      DOES THE COURT WISH ME TO JUST ADDRESS THE CONTENTS

20  OF THE DECLARATION?   10:5

21      **THE COURT:**  YOU MAY ADDRESS THE COURT'S TENTATIVE ON

22  THIS, AND THAT'S TO MAKE IT CLEAR TO THE PARTIES THAT ALL

23  PARTIES NEED TO SUBMIT THE AFFIDAVIT.  BUT PARTICULARLY WITH

24  RESPECT TO THE DECLARATION THAT HAS BEEN SUBMITTED ON BEHALF OF

25  YOUR CLIENT, I DON'T THINK IT FULLY CAPTURES WHAT THE COURT HAS   10:5

EXHIBIT _____ 3

1   SET FORTH IN THE ORDER.  AND PERHAPS THAT MIGHT BE BECAUSE YOU

2   DIDN'T HAVE THE SENSE, AS CARTER BRYANT DIDN'T HAVE THE SENSE,

3   THAT IT FULLY APPLIED.

4        I HOPE, AFTER TODAY'S ORDER, I'LL MAKE IT AS CRYSTAL

5   CLEAR AS POSSIBLE THAT IT DOES APPLY TO ALL PARTIES AND THAT AN

6   ACTUAL AFFIDAVIT NEEDS TO BE FILED WITH THE COURT, SETTING

7   FORTH EVERYTHING AS REQUESTED IN THE ORDER.

8        MR. OVERLAND:  AS I UNDERSTAND THE ORDER, IT WAS THAT

9   ALL PARTIES SET FORTH, IN AFFIDAVIT FORM, THEIR PRESERVATION

10  EFFORTS AND POLICIES.

11       THE COURT:  ALL YOUR CLIENT STATED IN THE DECLARATION

12  IS THAT HE HAS NOT KNOWINGLY DESTROYED ANY EVIDENCE.

13       THAT'S NOT A DESCRIPTION IN DETAIL OF THE RETENTION

14  POLICIES.

15       MR. OVERLAND:  WELL, HE DOESN'T HAVE A POLICY.  HE'S

16  AN INDIVIDUAL.  IT'S LIKE YOU ASKING ME WHAT MY RETENTION

17  POLICY IS.

18       THE COURT:  I SUSPECT YOU, LIKE I, PROBABLY HAVE

19  PERSONAL FILES AND WE KEEP THINGS OR WE DON'T KEEP THINGS OR WE

20  THROW THINGS OUT AFTER SO MANY YEARS.  WE ALL HAVE OUR OWN

21  POLICIES.  I UNDERSTAND THEY'RE NOT POLICIES IN THE CORPORATE

22  SENSE, BUT WE ALL HAVE OUR CUSTOMS, PRACTICES, HOWEVER YOU WANT

23  TO PHRASE IT.

24       HE'S A SOPHISTICATED BUSINESSMAN, LIKE THE OTHER

25  PARTIES IN THIS CASE, AND I SUSPECT HE HAS SOME -- I WANT TO

EXHIBIT _____ 3 _____

PAGE _____ 47 _____

1   KNOW WHAT HE DOES WITH HIS DOCUMENTS.  AND TO SIMPLY SAY THAT

2   HE HASN'T KNOWINGLY DESTROYED IS REALLY NOT SUFFICIENT.

3               MR. OVERLAND:  I UNDERSTAND.  AND WE'D BE WILLING TO

4   SUBMIT A DIFFERENT DECLARATION.

5               IF THE COURT COULD BE CLEAR ON EXACTLY WHAT IT IS       10:5

6   THAT MR. MACHADO SHOULD SAY.  IN OTHER WORDS, DOES HE HAVE TO

7   SAY, 'FROM X DAY, HERE'S WHAT I DID WITH RESPECT TO DOCUMENTS,'

8   OR 'THIS IS MY NORMAL HABIT OR CUSTOM'?

9               THE COURT:  I'LL TRY TO BE CLEAR IN THE ORDER THAT I

10  ISSUE TODAY.                                                       10:5

11              MR. OVERLAND:  OKAY.  VERY WELL.

12              THE COURT:  THE LAST MOTION BEFORE THE COURT IS THE

13  MOTION CONCERNING DISCOVERY BEFORE JUDGE INFANTE.

14              AGAIN, THE ORDER SEEMS QUITE CLEAR.  IT RESTS ON

15  FEDERAL RULES OF CIVIL PROCEDURE 53.  OF COURSE, THERE'S           10:5

16  MULTIPLE PROVISIONS IN RULE 53 WHICH PERMIT THE APPOINTMENT OF

17  A DISCOVERY MASTER.  ONE PROVISION IS PURSUANT TO A STIPULATION

18  OF THE PARTIES, BUT THE THIRD PROVISION IS PURSUANT TO THE

19  COURT'S ORDER THAT THIS IS AN APPROPRIATE CASE FOR THE

20  APPOINTMENT OF A DISCOVERY MASTER.                                 10:5

21              I'M CERTAINLY SYMPATHETIC TO THE ARGUMENT BEING MADE

22  THAT IT'S AN EXCEPTIONAL AND RARE PROCEDURE FOR THE COURT TO

23  INVOKE.  BUT I THINK JUST THIS RECORD ALONE, MR. NOLAN'S

24  RECITATION OF THE DISCOVERY PRODUCED IN THIS CASE, CLEARLY

25  SUGGESTS THAT THIS IS A PRETTY UNIQUE CASE.  AND THIS IS A CASE    10:5

EXHIBIT _____3_____

PAGE _____48_____

| | |
|---|---|
| 1 | WHICH, AFTER CONSULTATION WITH JUDGE BLOCK, THE COURT MADE THE |
| 2 | DECISION, FOR THE FIRST TIME IN MY CAREER AS A JUDICIAL OFFICER |
| 3 | THAT, YEAH, THIS IS A CASE THAT A DISCOVERY MASTER NEEDS TO BE |
| 4 | APPOINTED. |
| 5 | ALL DISCOVERY WAS REFERRED TO THE DISCOVERY MASTER. |
| 6 | I DON'T KNOW WHAT REALLY NEEDS TO BE CLARIFIED OR |
| 7 | WHAT THE CONFUSION ON THAT IS. |
| 8 | I DON'T SEE THE DUE PROCESS ARGUMENT THAT'S BEING |
| 9 | MADE OR URGED BY THE DEFENSE IN THIS CASE. CERTAINLY, ANY |
| 10 | DECISION BY THE DISCOVERY MASTER IS REVIEWABLE BY THIS COURT. |
| 11 | THE RULE ITSELF AND THE COMMENTARY MADE CLEAR, I THINK, THAT |
| 12 | THIRD PARTIES, EVEN NONCONSENTING THIRD PARTIES, ARE SUBJECT TO |
| 13 | THE PROVISIONS, EVEN TO THE CONTEMPT PROVISIONS. |
| 14 | SO I GUESS I DON'T REALLY SEE MUCH OF AN ISSUE ON |
| 15 | THIS MOTION, BUT I'LL HEAR FROM ANYBODY WHO WISHES TO SPEAK |
| 16 | FURTHER. |
| 17 | MR. OVERLAND: WITH RESPECT TO MR. MACHADO, I THINK |
| 18 | THE BASIC PROBLEM WE HAVE IS THAT THE ORDER WAS MADE PURSUANT |
| 19 | TO RULE 53, AND RULE 53 REQUIRES PRIOR NOTICE. |
| 20 | WE NEVER RECEIVED PRIOR NOTICE. |
| 21 | IF YOU LOOK AT 53(B)(1), THAT REQUIRES PRIOR NOTICE |
| 22 | TO THE PARTY, AN OPPORTUNITY TO BE HEARD, AN OPPORTUNITY TO |
| 23 | OBJECT. |
| 24 | THE COURT: YOU HAVE AN OPPORTUNITY TO BE HEARD, NOT |
| 25 | ON THE APPOINTMENT OF THE DISCOVERY MASTER, BUT ON THE RULINGS |

EXHIBIT _____ 3 _____

PAGE _____ 49 _____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   OF THE COURT.  WITH THE DISCOVERY MASTER, YOU CAN CERTAINLY --

2          MR. OVERLAND:  NO.  WE DO HAVE AN OPPORTUNITY TO BE

3   HEARD ON THE APPOINTMENT.

4          IF THE COURT -- UNLESS IT'S BY CONSENT --

5          THE COURT:  CITE ME TO A CASE, ONE CASE, COUNSEL,

6   THAT SAYS THAT.

7          MR. OVERLAND:  LOOK AT THE LANGUAGE OF 53(B)(1).

8          THE COURT:  THAT'S NOT HOW -- I DON'T BELIEVE I

9   APPOINTED HIM PURSUANT TO.

10          LET ME TAKE A LOOK HERE.

11          53(B)(1) TALKS ABOUT 'THE COURT MUST GIVE THE PARTIES

12   NOTICE AND AN OPPORTUNITY TO BE HEARD.'

13          MR. OVERLAND:  THAT'S RIGHT.

14          THE COURT:  YOU'RE NOT A PARTY.

15          MR. OVERLAND:  WELL, IF THE PARTIES ARE ENTITLED TO

16   NOTICE, THEN CERTAINLY --

17          I AM A PARTY.  MR. MACHADO IS A PARTY.

18          THE COURT:  VERY WELL.

19          AND YOU DID NOT RECEIVE NOTICE?

20          MR. OVERLAND:  NEVER RECEIVED NOTICE OF THAT.

21          THE COURT:  YOU CAME IN THE CASE AFTERWARDS.

22          MR. OVERLAND:  CORRECT.

23          AND MR. MACHADO, THEREFORE, STANDS IN A DIFFERENT

24   POSITION, BECAUSE AS A PARTY, HE'S ENTITLED TO NOTICE BEFORE

25   THE APPOINTMENT OF A SPECIAL MASTER.

EXHIBIT _____3_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1          THE COURT:  ANY CASE AT ALL?

2          MR. OVERLAND:  I THINK WE CITED IN OUR PAPERS, YOUR

3    HONOR.

4          THE COURT:  YOU CITE 53 ON PAGE 3 OF YOUR OPPOSITION,

5    COUNSEL, AND YOU CITE TO 53(B)(1), BUT YOU DIDN'T CITE A CASE.          11:0

6          MR. OVERLAND:  MAYBE IT'S SELF-EVIDENT.  MAYBE THERE

7    IS NO CASE BECAUSE IT'S SELF-EVIDENT.

8          THE COURT:  CLEARLY, THE RULE ENVISIONS NONPARTIES

9    BEING SUBJECT TO CONTEMPT PROCEEDINGS FOR NOT FOLLOWING THE

10   ORDERS OF THE DISCOVERY MASTER, AND A NONPARTY WOULD NEVER HAVE        11:0

11   ANY NOTICE, SO IF A NONPARTY HAD NO NOTICE AND YET THEY'RE

12   SUBJECT TO THE RULE, WHY WOULD NOT A SUBSEQUENTLY-SERVED PARTY

13   BE SUBJECT TO THE RULE?  THAT DOESN'T MAKE ANY SENSE.

14         MR. OVERLAND:  WELL, IT DOESN'T MAKE SENSE BECAUSE

15   PARTIES ARE TREATED DIFFERENTLY.  PARTIES ARE ENTITLED TO             11:0

16   NOTICE, ACCORDING TO THE RULE.

17         THE COURT:  WHEN YOU COME INTO AN EXISTING CASE WITH

18   A DISCOVERY MASTER ALREADY PROPERLY APPOINTED, YOU COULD

19   CERTAINLY, I CAN SEE, HAVE GROUNDS TO OBJECT TO THE DISCOVERY

20   MASTER.  AND YOU'VE NEVER DONE THAT SINCE BEING BROUGHT INTO          11:0

21   THIS CASE.

22         MR. OVERLAND:  WE ARE DOING IT.

23         THE COURT:  YOU'RE DOING IT NOW.  I UNDERSTAND THAT.

24         MR. OVERLAND:  WE ARE DOING IT, THE FIRST OPPORTUNITY

25   WHEN A MOTION WAS BROUGHT WITH RESPECT TO DISCOVERY IN FRONT OF       11:0

EXHIBIT ____3____

PAGE ____51____

JANUARY 7, 2008                    BRYANT VS. MATTEL

42

1    THE MASTER.

2             THE COURT:  ALL RIGHT.  I'LL RECONSIDER MY POSITION

3    IN LIGHT OF THAT ARGUMENT, COUNSEL.

4             MR. OVERLAND:  THE OTHER THING, YOUR HONOR, IS WITH

5    RESPECT TO MR. MACHADO -- AND I UNDERSTAND THE PROBLEM WITH          11:0

6    RESPECT TO THE DISCOVERY ISSUES BETWEEN MATTEL AND MGA, BUT

7    WITH RESPECT TO MR. MACHADO, THERE'S GOING TO BE A DISCRETE

8    DISCOVERY DISPUTE, AND THAT INVOLVES THE FIFTH AMENDMENT CLAIM

9    WITH RESPECT TO SPECIFIC QUESTIONS.

10            WHAT CONCERNS ME IS WHAT I HEARD BEFORE FROM THIS           11:0

11   COURT THAT THERE'S A STANDARD OF DEFERENCE TO THE RULING OF THE

12   MASTER.

13            THE COURT:  IT'S THE STANDARD THAT'S SET FORTH IN THE

14   ORDER GOVERNING THE DISCOVERY MASTER.

15            MR. OVERLAND:  I UNDERSTAND.  AND WHAT CONCERNS ME IS       11:0

16   THAT THESE RULINGS WITH RESPECT TO MR. MACHADO'S FIFTH

17   AMENDMENT PRIVILEGE ARE GOING TO BIND THE COURT.  THEY ARE VERY

18   IMPORTANT ISSUES WITH RESPECT TO MR. MACHADO.

19            THE COURT:  THEY ARE.  I UNDERSTAND THAT.

20            THANK YOU, COUNSEL.                                        11:0

21            ANYONE ELSE WISH TO BE HEARD ON THIS?

22            AND YOU ARE REPRESENTING THE NONPARTIES?

23            MR. MCFARLAND:  SOME OF THEM.

24            LARRY MCFARLAND ON BEHALF OF MS. CLOONAN, MS. LEAHY,

25   MS. MARLOW, MS. HALPERN, AND MS. ROCK.                             11:0

EXHIBIT _____3_____

PAGE _____52_____

JANUARY 7, 2008                              BRYANT VS. MATTEL

1       YOUR HONOR, ONE OF THE THINGS I WOULD LIKE TO ADDRESS

2   IS, MY UNDERSTANDING, THERE IS A DEARTH OF CASE LAW, I WILL

3   ACKNOWLEDGE.  WE'VE CITED CASE; THEY'VE CITED CASES.  I DON'T

4   THINK ANY OF THEM ARE ALL THAT ILLUMINATING, REALLY.  THEY JUST

5   KIND OF SAY IT.

6       THE COURT:  RIGHT.

7       MR. MCFARLAND:  WE UNDERSTOOD WHEN WE READ THAT IT

8   WAS DONE UNDER SECTION A, WHICH WAS, OF COURSE, BY STIPULATION.

9   SECTION C, OF COURSE, HAS A FINDING THAT IT CANNOT BE

10  EFFECTIVELY AND TIMELY ADDRESSED BY AN AVAILABLE DISTRICT COURT

11  JUDGE OR MAGISTRATE JUDGE OF THE DISTRICT.  AND CERTAINLY, AS

12  TO MGA AND MATTEL, NO ONE WOULD DISPUTE THAT THERE'S A LOT

13  GOING ON AND A LOT OF ACTIVITY, AND NO ONE IS TALKING ABOUT

14  THAT, THAT ALL OF THOSE MASSIVE, HARD-FOUGHT BATTLES ARE BEING

15  HANDLED BY JUDGE INFANTE.

16       TO MY KNOWLEDGE, THUS FAR, JUDGE INFANTE HASN'T

17  ISSUED ANY BINDING RULINGS WITH RESPECT TO THIRD PARTIES.  IT'S

18  ALL KIND OF COMING UP LATE IN THE GAME.

19       I DON'T KNOW EVERYTHING THAT'S DONE, BUT THAT'S MY

20  UNDERSTANDING.

21       NOW, CERTAINLY, HE'S NOT ISSUED ANY WITH RESPECT TO

22  MY CLIENTS, NOR ARE ANY MOTIONS PENDING IN FRONT OF JUDGE

23  INFANTE WITH RESPECT TO MY CLIENTS.  SO WHAT I'D LIKE TO

24  ADDRESS WITH SOME OF MY TIME IS THIS ISSUE OF UNIFORMITY, WHICH

25  SEEMS TO BE, I THINK, THE MOST POWERFUL ARGUMENT THEY HAVE,

EXHIBIT _____3_____

1   THAT THERE NEEDS TO BE SOME HISTORY AND SOME HISTORICAL

2   KNOWLEDGE.

3           AND WHAT I WOULD ARGUE, YOUR HONOR, IS THAT CONGRESS

4   ADDRESSED THAT ISSUE WHEN THEY SET UP THE SYSTEM OF HOW YOU

5   ISSUE A RULE 45 SUBPOENA.  PRESUMABLY, IF CONGRESS HAD WANTED

6   EVERY RULE 45 SUBPOENA TO ISSUE OUT OF THIS COURT, REGARDLESS

7   OF WHERE THE DEPONENT RESIDED, IF THE DEPONENT RESIDED IN TEXAS

8   OR MAINE OR MINNESOTA, CONSISTENT WITH DUE PROCESS, PRESUMABLY,

9   CONGRESS COULD HAVE DONE THAT.  BUT CONGRESS DIDN'T.  AND WE

10  HAVE A SYSTEM IN THIS COUNTRY WHERE IF YOU WANT TO ISSUE A RULE

11  45 SUBPOENA FOR A PERSON RESIDING IN TEXAS, IT HAS TO BE ISSUED

12  BY THE DISTRICT COURT IN TEXAS.

13          SO IN THAT CASE, I DON'T THINK I UNDERSTAND, OR MAYBE

14  I'M WRONG, IF YOU BELIEVE THAT THIS ORDER WOULD REQUIRE THE

15  DISTRICT COURT MAGISTRATE OR JUDGE IN TEXAS TO BE DIVESTED OF

16  JURISDICTION AND FOR THIS MATTER TO BE HEARD IN FRONT OF

17  JUDGE INFANTE IN SAN FRANCISCO.

18          IF THAT'S NOT THE CASE --

19          THE COURT:  THAT ISSUE IS REALLY NOT BEFORE THE COURT

20  RIGHT NOW.

21          MR. MCFARLAND:  WELL, I THINK IT IS BEFORE THE COURT,

22  BECAUSE THE ONLY REASON THAT THERE'S THIS UNIFORMITY ISSUE IS

23  BECAUSE MY CLIENT HAPPENS TO RESIDE IN LOS ANGELES.  I DON'T

24  THINK THAT'S A DISTINCTION WITHOUT A DIFFERENCE.  IF UNIFORMITY

25  IS A GOVERNMENT PRINCIPLE, THEN I THINK IT WOULD HAVE TO APPLY

11:0
11:0
11:0
11:0
11:0

EXHIBIT _____3_____

PAGE _____54_____

1    TO ALL RULE 45 SUBPOENAS.  AND IT CANNOT APPLY.

2           THE COURT:  BUT THE COURT WOULD CERTAINLY RECONSIDER

3    THE EFFECT OR THE BREADTH OR REACH OF ITS ORDER IF IT WAS

4    OPERATING TO DIVEST A DISTRICT JUDGE ON A RULE 45 CHALLENGE IN

5    TEXAS, FOR EXAMPLE.  THAT'S NOT BEFORE THE COURT RIGHT NOW.        11:0

6           MR. MCFARLAND:  THE OTHER THING, TOO, IS, I THINK IT

7    ALSO SHOWS HOW THIS IS NOT REALLY BEING ENFORCED BY EVEN MATTEL

8    IS THAT WHEN YOU GET A RULE 45 SUBPOENA, THERE IS LANGUAGE ON

9    IT THAT TELLS YOU WHAT TO DO AS THE RECIPIENT.  AGAIN, YOU GO

10   INTO COURT -- YOU KNOW, YOU HAVE THESE RIGHTS UNDER RULE 45;       11:0

11   IT'S ALL THERE ON PAGE 2 OF THE STANDARD FORM.

12          THIS ORDER, TO THE EXTENT IT DIVESTS THE THIRD-PARTY

13   DEPONENT OF THOSE RIGHTS -- NO NOTICE WAS EVER GIVEN TO ANY

14   THIRD-PARTY DEPONENT, TO MY KNOWLEDGE, THAT RATHER THAN FOLLOW

15   THE FEDERAL RULES, WHETHER THAT BE WHERE YOU FILE YOUR PAPERS,     11:0

16   THE TIMING, ALL OF THOSE OTHER ISSUES, YOU INSTEAD NEED TO

17   FOLLOW THIS ORDER.

18          THE COURT:  LIKE I SAY, THAT'S NOT AN ISSUE THAT --

19   IF THAT ISSUE WERE TO COME UP, COUNSEL, I CAN SEE THAT BEING

20   SOMETHING WHICH THE COURT WOULD NEED TO ADDRESS.                   11:0

21          MR. MCFARLAND:  AND THE LAST THING, THEN, YOUR HONOR,

22   IS THAT I DO THINK, ESPECIALLY WITH TWO OF MY CLIENTS,

23   MS. MARLOW AND MS. LEAHY, SUBPOENAS HAD ALREADY BEEN SERVED AND

24   OBJECTIONS HAD ALREADY BEEN SERVED, ACTUALLY BEFORE THE FIRST

25   STAY PERIOD BACK IN 2005; SO MATTEL WAS WELL AWARE IN THAT LATE    11:0

EXHIBIT ___3___

PAGE ___55___

1  2006 TIME FRAME, WHEN THIS STIPULATION AND ORDER WAS PRESENTED

2  TO THE COURT, THAT THERE WERE DISPUTES, VIS-À-VIS AT LEAST

3  THOSE TWO OF MY WITNESSES, AND YET NO NOTICE WAS GIVEN TO THEM,

4  NO OPPORTUNITY TO BE HEARD AT THAT TIME.  AND IF THEY HAD BEEN

5  HEARD AT THAT TIME, THIS UNIFORMITY KNOWLEDGE THAT NOW EXISTS A          11:0

6  YEAR LATER WOULDN'T BE USED.  IN OTHER WORDS, THEY COULD HAVE

7  SPOKEN UP AT THAT TIME AND SAID THAT THEY FELT THAT IT WAS

8  IMPORTANT TO HAVE ACCESS TO A FEDERAL JUDGE.

9           THE COURT:  SPEAKING OF DEPOSITIONS, I ASSUME THOSE

10  DEPOSITIONS THAT WE LAST DISCUSSED WENT FORWARD IN DECEMBER?          11:0

11           MR. MCFARLAND:  I'M PROUD TO SAY, YOUR HONOR, THAT

12  ALL THREE OF MY WITNESSES APPEARED ON THE DATES THAT I

13  REPRESENTED TO THIS COURT THAT THEY WOULD BE THERE.

14           THE COURT:  EXCELLENT.  I'M VERY PLEASED TO HEAR

15  THAT, COUNSEL.  THANK YOU VERY MUCH.                                   11:0

16           YOU MAY, COUNSEL.

17           MR. DELGADILLO:  BRYANT DELGADILLO FOR NONPARTY

18  KAYE SCHOLER.

19           TWO QUICK POINTS.

20           THE FIRST, AS YOU MENTIONED, THE RULES OR TIMING HAD          11:0

21  NOT BEEN RAISED.  A POINT OF CLARIFICATION, IT HAS, AT LEAST

22  WITH RESPECT TO KAYE SCHOLER.  WE RESPONDED TO THE OPPOSITION

23  TO THEIR MOTION PURSUANT TO THE FEDERAL RULES ON THE ORDER THAT

24  THEY PROVIDED AS A FIVE-DAY NOTICE PERIOD, FIVE-DAY RESPONSE

25  PERIOD.  WE DIDN'T BELIEVE WE WERE BOUND BY THAT ORDER, AS WE          11:1

EXHIBIT _____3_____

1    ARGUED HERE.  WE RESPONDED IN ACCORDANCE WITH THE FEDERAL RULES

2    OF CIVIL PROCEDURE.  AND MATTEL'S COUNSEL HAS NOW TAKEN THE

3    POSITION BEFORE THIS COURT, AS WELL AS BEFORE JUDGE INFANTE,

4    THAT OUR OPPOSITION IS TIME-BARRED AND SHOULD BE STRICKEN.  SO

5    IT HAS BEEN RAISED.  WE'VE TAKEN THAT POSITION, THAT WE                    11:1

6    COMPLIED WITH THE FEDERAL RULES, WHICH UNDER THE SUBPOENA, THE

7    RULE 45 SUBPOENA, AS COUNSEL POINTED OUT, THERE WAS NO NOTICE

8    GIVEN UNDER THE SUBPOENA THAT WE RECEIVED THAT THE OBJECTION

9    PERIOD, ANY RESPONSE TO A MOTION TO COMPEL, WAS OTHERWISE

10   CHANGED.

11           THEY DID PROVIDE US WITH THE DISCOVERY ORDER IN THE

12   COURSE OF OUR MEET AND CONFERS, WHEN IT BECAME CLEAR THERE WAS

13   GOING TO BE SOME OBJECTIONS TO THE SUBPOENA AND THAT WE WOULD

14   HAVE TO WORK OUT.  AND MOTION PRACTICE ULTIMATELY RESULTED.

15   THEY DID PROVIDE US WITH THE DISCOVERY ORDER, BUT NOT IN                   11:1

16   CONNECTION WITH THE ACTUAL SUBPOENA THAT OUR FIRM RECEIVED.

17           ANOTHER POINT IS, JUST TO CLARIFY AS WELL, THE

18   DISCOVERY ORDER SAYS THAT THE PARTIES ARE RESPONSIBLE FOR

19   PAYING FOR THE DISCOVERY REFEREE.  I JUST WANT TO MAKE CLEAR

20   THAT NONPARTIES ARE NOT GOING TO BE REQUIRED TO PAY.                       11:1

21           THE COURT:  THAT IS CORRECT.

22           MR. DELGADILLO:  THANK YOU, YOUR HONOR.

23           THE COURT:  THAT IS CORRECT.

24           MR. TIET:  KIEN TIET FOR NONPARTY STERN & GOLDBERG.

25           WE'RE IN THE SAME BOAT WITH KAYE & SCHOLER, AND WE'LL            11:1

EXHIBIT _____3_____

1    JUST JOIN IN THEIR ARGUMENT.

2              THE COURT:  VERY WELL.  THANK YOU.

3              ANYBODY ELSE?

4              MS. MORGENTHALER:  ALISA MORGENTHALER FOR NONPARTY

5    FARHAD LARIAN.

6              AS MR. NOLAN MENTIONED, THERE HAVE BEEN OVER 50

7    THIRD-PARTY SUBPOENAS IN THIS CASE.  YET, THIS IS THE VERY

8    FIRST TIME THAT JUDGE INFANTE IS BEING ASKED TO CONSIDER A

9    THIRD-PARTY SUBPOENA OR DISCOVERY MATTER THAT WOULD BIND A

10   THIRD PARTY THAT DID NOT CONSENT TO THE DISCOVERY REFERENCE; SO

11   I DON'T THINK SOME OF THE EFFICIENCY ISSUES THAT HAVE BEEN

12   DISCUSSED AND THE COURTS CONCERN WITH INSTITUTIONAL MEMORY

13   APPLY HERE.

14             I THINK THAT THESE ARE ISSUES THAT CAN BE EFFECTIVELY

15   ADDRESSED BY A MAGISTRATE JUDGE, SUCH THAT THE BALANCE WEIGHS

16   IN FAVOR OF CONSIDERING THE DUE PROCESS CONCERNS TO THE

17   NONPARTIES VERSUS THE EFFICIENCY ARGUMENT TO THE PARTIES.

18             THE COURT:  LET ME ASK YOU THE SAME QUESTION.

19             ARE YOU AWARE OF ANY AUTHORITY WHICH PREVENTS THE

20   ASSIGNMENT OF THE THIRD PARTY TO THE DISCOVERY MASTER UNDER

21   53(C).

22             MS. MORGENTHALER:  I'M NOT AWARE OF ANY CASE THAT

23   SAYS THAT SPECIFICALLY.  I'M ALSO NOT AWARE OF ANY CASE MATTEL

24   CITED ON WHERE A NONPARTY HAS BEEN BOUND BY DISCOVERY REFERENCE

25   THAT WAS DONE PURSUANT TO THE STIPULATION OF THE PARTIES, WHICH

EXHIBIT _____3_____

PAGE _____58_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   IS THE CASE HERE.

2            THE COURT:  VERY WELL.

3            MS. MORGENTHALER:  I THINK ONE OF THE OTHER COUNSEL

4   MENTIONED THAT THE CASES JUST HAVE NOT BEEN PARTICULARLY CLEAR

5   ON THIS POINT.

6            ALSO, JUST ONE FINAL POINT, I THINK THE PREJUDICE TO

7   THE NONPARTIES THAT IS TAKING PLACE HERE IS ILLUSTRATED BY THE

8   FACT THAT SOME OF THE EVIDENCE THAT MATTEL IS RELYING ON IN

9   SUPPORT OF THIS MOTION, THE DECLARATION OF BRIDGET HAULER, THE

10  THIRD PARTIES HAVE NEVER SEEN, BECAUSE THAT DECLARATION IS

11  FILED UNDER SEAL; IT'S DESIGNATED AEO UNDER THEIR PROTECTIVE

12  ORDER.  SO SINCE WE'RE NOT ATTORNEYS IN THE CASE, WE CAN'T SEE

13  IT.  I'VE NEVER SEEN IT.  WE CAN'T GET IT OFF PACER.

14           AND OTHER PARTICULAR LOGISTICAL PROBLEMS, WE NEVER

15  RECEIVED HARD COPIES OF THE REPLIES WE HAD TO GET, BECAUSE

16  INITIALLY, THE THIRD PARTIES WERE NOT ON PACER AND --

17           THE COURT:  THAT'S A PROBLEM WITH THE PROTECTIVE

18  ORDER, THOUGH.  THAT'S NOT A PROBLEM WITH THE DISCOVERY MASTER

19  PROCEDURE.

20           MS. MORGENTHALER:  RIGHT.  BUT I'VE SEEN SOME OF THE

21  EVIDENCE THAT THEY'RE RELYING ON HERE.

22           THE COURT:  I AGREE, THAT SOUNDS LIKE A PROBLEM AND

23  THAT NEEDS TO BE ADDRESSED, BUT THAT'S NOT BEFORE THE COURT

24  RIGHT NOW.  AND PERHAPS IT SHOULD BE.  I INVITE THE THIRD

25  PARTIES TO TAKE THAT UP AS APPROPRIATE, AND I WOULD TRUST THAT

11:1

11:1

11:1

11:1

11:1

EXHIBIT _____3_____

1    MATTEL WOULD BE ABLE TO ADDRESS THAT ISSUE IN A MEET AND

2    CONFER.  BUT THAT'S CERTAINLY SOMETHING THAT NEEDS TO BE

3    ADDRESSED.  EVERYONE WHO HAS BEEN AFFECTED BY AN UNDER-SEAL

4    DOCUMENT IN LITIGATION -- NOT TO ISSUE AN ADVISORY OPINION, BUT

5    I'LL GIVE YOU THE ADVICE THAT THEY SHOULD SEE IT; THAT SEEMS          11::

6    PRETTY SELF-EVIDENT.

7         I CERTAINLY AGREE WITH YOU, COUNSEL.

8         MS. MORGENTHALER:  THANK YOU, YOUR HONOR.

9         THE COURT:  THANK YOU.

10        MR. NOLAN, DO YOU HAVE ANYTHING ON THIS?                          11::

11        MR. NOLAN:  THE ONLY THING IS, I WANTED TO MAKE SURE

12   I COME BACK TO THE EX-PARTE APPLICATION THAT WE HAVE.

13        THE COURT:  I HAVEN'T FORGOTTEN ABOUT IT.

14        MR. NOLAN:  OKAY.  THEN I'LL WAIT.

15        THE COURT:  LET'S GIVE MATTEL A CHANCE TO RESPOND TO             11::

16   THIS THIRD AND FINAL MOTION THAT'S BEEN BROUGHT.

17        COUNSEL, REALLY, MY TENTATIVE IS IN YOUR FAVOR, BUT I

18   WOULD LIKE YOU TO ADDRESS THIS RULE 45 ISSUE THAT'S BEEN RAISED

19   BY MR. OVERLAND AND SOME OF THE OTHER COUNSEL.

20        MR. ZELLER:  I THINK, NUMBER ONE, THAT IT IS NOT                 11::

21   BEFORE THE COURT AT THIS JUNCTURE.  IF PEOPLE HAVE

22   PARTICULAR COMPLAINTS --

23        THE COURT:  IT IS AND IT ISN'T, THOUGH, BECAUSE IT'S

24   BEFORE -- AND I UNDERSTAND THAT IT'S NOW BEFORE JUDGE INFANTE,

25   AND THE ORDER IS BEING USED BY YOU AS A RESPONSE BEFORE             11:1

EXHIBIT _____3_____

1   JUDGE INFANTE, AND WE'RE GETTING PRETTY CLOSE TO THE END OF

2   DISCOVERY HERE.  SO IF THIS IS A PROBLEM -- IT APPARENTLY

3   APPEARS TO BE SOMETHING THAT WE DIDN'T FULLY ADDRESS OR THINK

4   THROUGH, PERHAPS, WHEN WE WERE DOING THE DISCOVERY MASTER

5   MOTIONS.                                                    11:1

6            MR. ZELLER:  SURE.

7            ON THAT NOTE, I'LL BE HAPPY TO ADDRESS IT AS TO THE

8   SUBSTANCE.

9            THE COURT:  PLEASE.

10           MR. ZELLER:  NUMBER ONE, THE MOTION THAT WE HAVE      11:1

11  BROUGHT ONLY ASKED FOR CONFIRMATION OF THE DISCOVERY MASTER'S

12  AUTHORITY AS TO THIRD PARTIES WHO ARE WITHIN THE PERSONAL

13  JURISDICTION OF THE COURT.  THAT IS CONSISTENT WITH RULE 45.

14  THAT IS ALL THAT WE'VE ASKED THE COURT TO DO.  NONE OF THE

15  PARTIES HERE TODAY DISPUTE IN ANY WAY THAT THEY ARE CALIFORNIA  11:1

16  RESIDENTS WHO ARE SUBJECT TO THAT AUTHORITY.

17           THE COURT:  FAIR ENOUGH.

18           AS FAR AS THAT'S CONCERNED, I THINK I'M WITH YOU,

19  ALTHOUGH I DO WANT TO LOOK AT THIS ONE ISSUE RAISED BY

20  MR. OVERLAND.  BUT ADDRESS THIS RULE 45 PROBLEM.              11:1

21           MR. ZELLER:  I THINK THAT IT MAY NOT BE -- THERE'S A

22  UNITARY ANSWER TO THE SECOND PART OF THE RULE 45 ISSUE THAT WAS

23  RAISED.  LET ME START OFF WITH THE PARTIES WHO ARE INVOLVED

24  HERE.

25           WHO ARE WE TALKING ABOUT?  EXHIBIT _____3_____       11:1

                                          PAGE _____61_____

```
 1              NUMBER ONE, KAYE SCHOLER, WHO ARE ISAAC LARIAN'S

 2    ATTORNEYS.  THERE IS NO QUESTION THAT THEY HAVE HAD NOTICE.

 3    WHEN WE ENGAGED THEM, AS KAYE SCHOLER ADMITS, WE PROVIDED THEM

 4    WITH A COPY OF THE DISCOVERY MASTER ORDER, AND WE ADVISED THEM

 5    AS TO, CERTAINLY, WHAT OUR VIEWPOINT WAS, AS TO WHO WAS GOING        11:1

 6    TO BE DECIDING THESE DISPUTES.

 7              I DON'T SEE THAT AS BEING ANY DIFFERENT THAN,

 8    NECESSARILY, TELLING SOMEONE WHO IS NOT A PARTY IN THE CASE, UP

 9    UNTIL THAT POINT, 'WELL, HERE'S THE NAME OF THE JUDGE WHO IS

10    HANDLING IT.'                                                       11:1

11              THE COURT:  SO IS IT YOUR POSITION THAT WITH RESPECT

12    TO EACH OF THESE THIRD PARTIES, YOU HAVE PROVIDED NOTICE?

13              MR. ZELLER:  THAT'S CORRECT.

14              THE COURT:  THEN I'LL LET THE DISCOVERY MASTER TAKE

15    THAT UP, AND I'LL REVIEW THAT IF NECESSARY.                         11:1

16              MR. ZELLER:  WE DON'T NECESSARILY DISAGREE,

17    YOUR HONOR, THAT OBVIOUSLY, IN A PARTICULAR CASE, PERHAPS THERE

18    WOULD BE SOME ISSUE, PRESUMABLY, THE PARTIES WILL DO EVERYTHING

19    THEY CAN TO RESOLVE IT.  CERTAINLY, WE WOULD GIVE PEOPLE

20    NOTICE.

21              BUT ALL THEY WERE COMPLAINING ABOUT, YOU WILL NOTICE,

22    WAS THAT THE FACE OF THE SUBPOENA DOESN'T MENTION

23    JUDGE INFANTE.  I'M NOT REALLY SURE THAT THAT'S A MEANINGFUL

24    CONSIDERATION AT THIS JUNCTURE.

25              IT CERTAINLY WOULD NOT HAVE ANY MEANING TO A PARTY        11:1
```

EXHIBIT _____3_____

PAGE _____62_____

1   WHO IS OUTSIDE THE COURT'S PERSONAL JURISDICTION, BECAUSE I

2   DON'T THINK WE NECESSARILY DISAGREE THAT IF IT'S AN

3   OUT-OF-STATE PARTY, THEN THAT SUBPOENA IS GOING TO HAVE TO BE

4   DEALT WITH BY A DISTRICT COURT WHO HAS PERSONAL JURISDICTION IN

5   ACCORDANCE WITH THE NORMAL RULES.                              11:1

6           THE COURT:  RIGHT.

7           MR. ZELLER:  I MEAN, ALL WE'RE TALKING ABOUT HERE ARE

8   PARTIES, NONPARTIES, WHO ARE CLEARLY WITHIN THE JURISDICTION OF

9   THE COURT; SO WE'RE NOT PUSHING THE ENVELOPE ON THAT BY ANY

10  STRETCH OF THE IMAGINATION, YOUR HONOR.                        11:1

11          THE COURT:  VERY WELL.

12          WHILE YOU'RE AT THE LECTERN, LET'S SHIFT GEARS TO THE

13  EX-PARTE APPLICATION THAT'S BEEN BROUGHT BY MGA AND

14  CARTER BRYANT.

15          MR. QUINN:  I'D BE HAPPY TO ADDRESS IT, YOUR HONOR.    11:1

16          THE COURT:  ALL RIGHT.  SOMEBODY.

17          BECAUSE I TEND TO AGREE WITH MGA AND CARTER BRYANT ON

18  THIS ONE.  I DON'T THINK, BASED ON MY READING OF THE LAW -- AND

19  I KNOW THERE'S NOTHING CLEARLY ON POINT, AND YOU BOTH CITE TO A

20  VARIETY OF CASES IN THE COMMENTARY AND IN THE RULE ITSELF, BUT  11:1

21  MY SENSE IS THAT THE 30(B)(6) DEPOSITIONS DO NOT COUNT TOWARDS

22  THE NUMBER OF ALLOTTED DEPOSITIONS.  I THINK THAT'S PROBABLY

23  THE SAFEST WAY TO INTERPRET THE STATUTE, THE RULE, AND THE

24  CASES THAT HAVE ATTEMPTED TO GRAPPLE WITH THAT RULE.

25          I UNDERSTAND THAT THEY, FROM YOUR PERSPECTIVE, WENT     11:1

EXHIBIT _____ 3

1   AFIELD OF THE 30(B)(6) TOPICS, BUT THAT'S PERMITTED.  AND IN

2   TERMS OF THE ACTUAL COUNTING, I DON'T THINK THAT IT DOES US ANY

3   GOOD HERE AT THIS POINT TO TRY TO FIGURE OUT HOW FAR AFIELD

4   THEY WENT AND WHETHER THAT COUNTS.

5           MY TENTATIVE WOULD BE TO ONLY COUNT THOSE AS 30(B)(6)          11:1

6   DEPOSITIONS -- THOSE WOULD ALL COUNT TOWARDS ONE OF THE MATTEL.

7           MR. QUINN:  I UNDERSTAND, YOUR HONOR.

8           MY FIRST RESPONSE IS, WE'RE DEALING WITH THIS ON AN

9   EX-PARTE BASIS.

10          THE COURT:  I UNDERSTAND THE CONCERN HERE.                     11:1

11          MR. QUINN:  LET'S SET THAT ASIDE.

12          THE COURT:  IF WE WEREN'T THREE WEEKS AWAY FROM THIS,

13  I'D PROBABLY TELL YOU ALL TO GO TO THE DISCOVERY MASTER.

14          MR. QUINN:  INDEED.  AND THAT WAS GOING TO BE MY

15  SECOND POINT, YOUR HONOR.  I THINK THIS IS AN INFANTE ISSUE.         11:1

16          THE COURT:  IT PROBABLY IS, COUNSEL.

17          MR. QUINN:  SO THIRD, I AGREE WITH THE GENERAL

18  PRINCIPAL THAT THAT'S JUST A 30(B)(6) DEPOSITION.  BUT IF YOU

19  TAKE A 30(B)(6) DEPOSITION AND YOU ESSENTIALLY ABANDON -- I'LL

20  GIVE YOU A HYPOTHETICAL NOW -- YOU ABANDON THE TOPIC, YOU          11:2

21  ADDRESS THE TOPIC AND THEN YOU GO FAR OFF THE RESERVATIONS, AND

22  YOU'RE REALLY DEPOSING THAT WITNESS AS AN INDIVIDUAL FACT

23  WITNESS, THEN IT'S CONVERTED INTO AN INDIVIDUAL DEPOSITION.

24          THE COURT:  AND I GUESS I UNDERSTAND THAT.

25          MR. QUINN:  THERE'S CASE LAW THAT SAYS THAT.              11:2

EXHIBIT _____3_____

PAGE _____64_____

```
 1            THE COURT:   I UNDERSTAND THAT ARGUMENT.  BUT YOU
 2   CHOOSE WHO YOU BRING AS YOUR 30(B)(6) WITNESSES, AND THEY
 3   DON'T.  I JUST THINK IT GOES DOWN A DIFFICULT ROAD.
 4            I'M NOT SAYING THIS IS A PERFECT DECISION ON THIS.  I
 5   THINK WE NEED TO COME UP WITH A GROUND RULE, AND I THINK THE      11:2
 6   GROUND RULE I'M LEANING TOWARDS IS, LET'S NOT COUNT THE
 7   30(B)(6) WITNESSES TOWARDS THE DEPOSITION TOTAL.
 8            MR. QUINN:   I WOULD POINT OUT, YOUR HONOR, THAT IT
 9   CREATES A POTENTIAL LOOPHOLE THAT TRUCKS CAN DRIVE THROUGH.
10            THE COURT:   I UNDERSTAND IT DOES.  AND THE ONLY THING   11:2
11   THAT STOPS THE LOOPHOLE IS THAT YOU GET TO CONTROL THAT; YOU
12   GET TO CONTROL YOUR 30(B)(6) DEPOSITIONS WITNESSES TO A CERTAIN
13   EXTENT AND THEY GET TO CONTROL THEIRS.
14            MR. QUINN:   THE PROBLEM IS, WE DON'T GET TO CONTROL
15   WHAT THEY ASK.                                                   11:2
16            THE COURT:   NO.
17            MR. QUINN:   ONCE THE PERSON IS IN THE CHAIR, THEY CAN
18   BE ASKED THINGS OUTSIDE THE SCOPE.
19            THE COURT:   SO PICK WHO YOU PUT IN THE CHAIR
20   CAREFULLY.                                                       11:2
21            MR. QUINN:   THE RULE GIVES US, REALLY, SOME
22   REQUIREMENTS THERE.  WE'RE SUPPOSED TO PUT SOMEBODY WHO'S MOST
23   KNOWLEDGEABLE AND NOT TRY TO BE DEFENSIVE AND GIVE THEM
24   SOMEBODY WHO WOULDN'T NECESSARILY HAVE THE BEST KNOWLEDGE ON
25   THE DESIGNATED SUBJECT BUT DOESN'T KNOW ANYTHING ELSE.           11:2
```

EXHIBIT _____3_____

| | |
|---|---|
| 1 | THE COURT:  AND THAT LEADS TO THE OPENNESS AND THE |
| 2 | TRANSPARENCY OF THE WHOLE PROCESS. |
| 3 | MR. QUINN:  THERE YOU GO. |
| 4 | THE COURT:  SO THE EX-PARTE APPLICATION IS GRANTED, |
| 5 | UNLESS MR. NOLAN WANTS TO CONVINCE ME OTHERWISE. |
| 6 | MR. NOLAN:  NO.  I LIKE WINNING. |
| 7 | I THINK IT'S ALSO NICE BECAUSE IT DOESN'T MAKE ME |
| 8 | HAVE TO SAY THAT, GEE, IT'S CURIOUS THAT WHEN WE WERE BACK HERE |
| 9 | ON OCTOBER 15TH -- |
| 10 | THE COURT:  I UNDERSTAND.  THAT CERTAINLY COLORS THE |
| 11 | COURT'S RULING ON THIS AS WELL. |
| 12 | MR. QUINN:  BUT, YOUR HONOR, JUST SO WE'RE ALL CLEAR |
| 13 | WHAT THE RESULTS OF THE EX-PARTE IS. |
| 14 | THE COURT:  I'LL TRY TO WRITE A REAL CLEAR ORDER THIS |
| 15 | TIME. |
| 16 | MR. QUINN:  THERE'S TEN INDIVIDUALS -- IN ADDITION TO |
| 17 | THE 30(B)(6) SUBJECTS, THERE ARE TEN INDIVIDUALS NOW THAT |
| 18 | THEY'RE ASKING US TO PRODUCE BY THE 28TH OF JANUARY. |
| 19 | THE COURT:  AS YOU SAID EARLIER, MR. QUINN, YOU HAVE |
| 20 | A LOT OF WORK TO DO. |
| 21 | MR. QUINN:  THANK YOU, YOUR HONOR. |
| 22 | THE COURT:  THANK YOU, COUNSEL. |
| 23 | GOOD DAY. |
| 24 | MR. QUINN:  YOUR HONOR, I ASSUME THEY STILL HAVE TO |
| 25 | BE SERVED WITH SUBPOENAS IF THEY'RE NONPARTIES. |

EXHIBIT _____3_____

PAGE _____66_____

JANUARY 7, 2008                BRYANT VS. MATTEL

57

```
 1            THE COURT:  I THINK THAT'S PART OF THE RULES.
 2            MR. NOLAN:   OKAY.  YOUR HONOR, THESE LAST-MINUTE
 3   'HAIL MARY' PASSES CAUSE A LOT OF CONFUSION.  I'VE JUST GOT TO
 4   ADDRESS THIS.
 5            UP UNTIL NOW, MATTEL HAS ALWAYS INDICATED -- FIRST OF   11:2
 6   ALL, THEY NEVER OBJECTED TO THE FACT THAT WE DIDN'T ISSUE
 7   SUBPOENAS.  BUT WE'LL ISSUE SUBPOENAS.
 8            BUT MATTEL HAS TO BE AUTHORIZED TO ACCEPT SUBPOENAS,
 9   BECAUSE THEY HAVE OBJECTED IN THE PAST WHEN I'VE TRIED TO SERVE
10   SUBPOENAS OR SOMEBODY HAS SERVED SUBPOENAS ON THEM.            11:2
11            WILL THEY ACCEPT SUBPOENAS FOR THESE EMPLOYEES?
12            THE COURT:  MR. QUINN, WILL YOU ACCEPT SUBPOENAS FOR
13   YOUR MATTEL EMPLOYEES?
14            MR. QUINN:  NOT EX-EMPLOYEES.  MOST OF THESE ARE
15   EX-EMPLOYEES.
16            AND I'VE GOT TO DEFER TO MR. ZELLER ABOUT THE
17   COMMITMENTS THAT WE'VE MADE BEFORE, WHICH WE STAND BY.
18            MR. ZELLER:  WE ABSOLUTELY STAND BY IT.  BUT THAT IS
19   NOT A CORRECT STATEMENT OF WHAT'S GOING ON HERE.
20            NUMBER ONE, TWO OF THE PEOPLE WHO ARE IDENTIFIED       11:2
21   HERE, MILT ZABLOW AND ROB SIMONEAU, ARE EX-EMPLOYEES.  THEY ARE
22   NOT EVEN CURRENT MATTEL EMPLOYEES.  THEY'VE NEVER BEEN SERVED
23   WITH A SUBPOENA.  WE'VE NEVER BEEN ASKED TO ACCEPT SERVICE OF
24   SUBPOENA FOR THEM.  SO THEY ARE EX-EMPLOYEES.  THE OTHER
25   PEOPLE, A NUMBER OF THEM, EXCEPT FOR THREE, ARE LOW-LEVEL       11:2
```

EXHIBIT _____3_____

58

1   EMPLOYEES WHO ARE NOT SUBJECT TO RULE 30.

2          NOW, WHAT WE HAVE SAID IN TERMS OF OUR

3   REPRESENTATIONS TO ACCEPT SERVICE IS VERY SPECIFIC.  IT IS

4   MATTEL'S CURRENT DIRECTORS AND OFFICERS.  IT DOES NOT EXTEND TO

5   PEOPLE WHO ARE FORMER.  WE HAVE SAID, CERTAINLY, IF THERE ARE          11:2

6   FORMER PEOPLE THAT THEY WANT TO ASK US ABOUT --

7          THE COURT:  I'M GOING TO STOP YOU HERE FOR A SECOND.

8          THIS IS BEYOND THE SCOPE OF THE EX-PARTE APPLICATION.

9          ALL I'M DOING IS, I'M GRANTING THE EX-PARTE

10  APPLICATION IN TERMS OF THE COUNTING OF THE WITNESSES.  I'M NOT       11:2

11  GOING TO WADE INTO -- I NEED TO RETRACT MY STATEMENT IN TERMS

12  OF WHAT -- I'M NOT OFFERING ANY RULING RIGHT NOW WITH RESPECT

13  TO THE SERVICE OF SUBPOENAS.

14          MR. NOLAN:  FINE, YOUR HONOR.

15          COULD YOU JUST ORDER MATTEL TO ADVISE US BY CLOSE OF          11:2

16  BUSINESS TODAY OF THE TEN WHO THEY REPRESENT AND WHO THEY

17  DON'T.  I THINK THAT'S REASONABLE, ISN'T IT?

18          MR. QUINN:  THAT'S NO PROBLEM.

19          THE COURT:  VERY GOOD.  THAT'S NOT A PROBLEM.

20          THANK YOU, COUNSEL.                                          11:2

21

22

23

24  / / /

25  / / /                              EXHIBIT _____3_____

                                       PAGE _____68_____

JANUARY 7, 2008                    BRYANT VS. MATTEL.

59

1                               CERTIFICATE

2

3    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
THE UNITED STATES.

6

7                                                     1-16-08

    THERESA A. LANZA, CSR, RPR                  DATE
8    FEDERAL OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                      EXHIBIT    3

                                            PAGE    69

# EXHIBIT 4

# EXHIBIT 4

## CONFIDENTIAL
## THIS EXHIBIT FILED UNDER SEAL PURSUANT TO
## PROTECTIVE ORDER OF 1- 4 -2005

# EXHIBIT 5

# EXHIBIT 5

## CONFIDENTIAL
## THIS EXHIBIT FILED UNDER SEAL PURSUANT TO
## PROTECTIVE ORDER OF 1- 4 -2005

# EXHIBIT 6

# EXHIBIT 6 INTENTIONALLY LEFT BLANK

## EXHIBIT 6, PAGE 81-EXHIBIT 6, PAGE 90

EXHIBIT 7

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | DECLARATIONS OF KENNETH WRIGHT, RUDY FLORES, AND MIGUEL LEYVA IN SUPPORT OF MATTEL, INC.'S REPLY TO RESPONSE TO OSC |
| Defendant. | Date:   February 25, 2008<br>Time:   10:00 a.m.<br>Place:  Courtroom 1 |
| AND CONSOLIDATED ACTIONS | **Phase 1**<br>Discovery Cut-Off:   January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:   May 27, 2008 |

EXHIBIT _____ 7

PAGE _____ 91

2/15

07209/2389597.1

DECLARATIONS IN SUPPORT OF REPLY

**DECLARATION OF KENNETH WRIGHT**

I, Kenneth Wright, declare as follows:

1. I am a process sever for Now Legal Service, registered in the State of California by the County Clerk of Los Angeles, our registration number being 5426. My business address is 1301 West 2nd Street, Suite 206, Los Angeles, CA 90026. I make this declaration of my personal and firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2. On January 14, 2008, I received an assignment from our client, Quinn Emanuel Urquhart Oliver & Hedges, LLP, to serve Sarah Halpern with a federal deposition subpoena. The address provided was of a residence at 1418 Hillcrest Avenue, Glendale, CA 91202.

3. I first attempted service at the Hillcrest Avenue address on Monday, January 14, 2008, at 8:00 p.m. I saw a Toyota Highlander at the address and knocked on the door. No one answered, although I heard dogs barking inside the premise. There was also no answer when I returned to the Hillcrest Avenue address and knocked on the door on Monday, January 14, 2008, at 9:35 p.m.; Tuesday, January 15, 2008, at 7:00 p.m.; Wednesday, January 16, 2008, at 7:20 a.m.; Thursday, January 17, 2008, at 5:30 p.m.; Friday, January 18, 2008, at 8:30 p.m.; Saturday, January 19, 2008, at 2:30 p.m.; Sunday, January 20, 2008, at 11:00 a.m.; and Monday, January 21, 2008 at 9:00 p.m.

4. On Wednesday, January 16, 2008, I obtained a phone number attributed to Sarah Halpern and called it to arrange service. A man who identified himself as Ms. Halpern's husband answered and said Ms. Halpern is "hardly ever home." I called again on Monday, January 28, 2008, and asked to speak with Ms. Halpern. The same man again told me that she was not available and was hardly ever home.

EXHIBIT _____7_____

PAGE _____92_____

DECLARATION OF KENNETH WRIGHT

1        5.     I returned to the Hillcrest Avenue address on Saturday, January

2 26, 2008, at 4:30 p.m. I noticed that the Highlander and a Ford Escape were parked

3 at the address. I knocked on the door but no one answered.

4        6.     I again returned to the Hillcrest Avenue address on Sunday,

5 January 27, 2008, at 9:30 p.m. to attempt service. The Highlander and Ford Escape

6 were present. However, when I knocked on the door, no one answered.

7       I declare under penalty of perjury under the laws of the United States of

8 America and the State of California that the foregoing is true and correct.

9       Executed on February 19, 2008, at Los Angeles, California.

_____
Kenneth Wright

EXHIBIT _____7_____

PAGE _____93_____

07209/2389578.1

1        I, Kenneth Wright, declare as follows:

2        1.    I am a process service server for Now Legal Service, registered

3 in the State of California by the County Clerk of Los Angeles, our registration

4 numbering being 5426. My business address is 1301 West 2nd Street, Suite 206,

5 Los Angeles, CA 90067. I make this declaration of personal, firsthand knowledge

6 and, if called and sworn as a witness, I could and would testify competently thereto.

7        2.    On or about January 17, 2008, I received an assignment from our

8 client Quinn Emanuel Urquhart Oliver & Hedges LLP to serve Federal Civil

9 Subpoenas on Peter A. Marlow, Veronica Marlow, Inc., Doll Bag, Inc., and Marlow

10 Techno-Logic , Inc. The address provided for Mr. Marlow and the three entities

11 was a residence of 12250 Woodley Avenue, Granada Hills, CA 91344 ("the

12 Residence").

13        3.    When I first attempted service on January 17, 2008 at 3:00 p.m.,

14 I saw two vehicles parked in the driveway, a BMW and Mercedes Benz, and a red

15 Honda Pilot parked on the street in front of the Residence. Although there were

16 lights on at the Residence, when I rang the doorbell, no one answered. I then saw a

17 man at the house next door and went to speak with him. The man would not give

18 me his name, but confirmed that he lived in the house next door to the Residence.

19 He told me that he had not seen Mr. Marlow or anyone at the Residence in a few

20 days.

21        4.    I made further attempts on January 17, 2008 at 8:15 p.m.,

22 January 18, 2008 at 7:30 a.m., January 19, 2008 at 10:35 a.m., January 20, 2008 at

23 10:20 p.m., and January 21, 2008 at 8:30 a.m. Each time I returned to the

24 Residence, the same vehicles were parked in the same locations, the same lights

25 were on in the Residence, and no one answered the door when I rang the door bell.

26        5.    On January 22, 2008, I conducted a 7.5 hour stakeout at the

27 Residence from 1:30 p.m. until 9:30 p.m. The same vehicles were in the same place

28

01209/2367221.1072094
67221.1

EXHIBIT ____7____

-1-    PAGE ____94____

DECLARATION OF KENNETH WRIGHT REGARDING ATTEMPTED SERVICE

1  and the same lights were on in the Residence, but I saw no other activity at the

2  Residence at all. And no one answered the door.

3          6.      I made my final attempt on January 23, 2008 at 10:30 a.m. The

4  vehicles were still there and lights still on. No one answered the door when I range

5  the bell.

6          I declare under penalty of perjury under the laws of the United States of

7  America that the foregoing is true and correct.

8          Executed on January 25, 2008, at Los Angeles, California.

9

10                                  Kenneth Wright

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2367221.i07209/3
67221.1

-2-

EXHIBIT _____ 7 _____

PAGE _____ 95 _____

DECLARATION OF KENNETH WRIGHT REGARDING ATTEMPTED SERVICE

## DECLARATION OF MIGUEL LEYVA

I, Miguel Leyva, declare as follows:

1.    I am a process server for Now Legal Service, registered in the State of California by the County Clerk of Los Angeles, our registration number being 5426. I make this declaration of my personal and firsthand knowledge and, if called and sworn as a witness, I could and would testify competently hereto.

### Larry McFarland

2.    On January 14, 2008, I received an assignment from our client, Quinn Emanuel Urquhart Oliver & Hedges, LLP, to serve Larry McFarland with a federal deposition subpoena. The address provided was of a business located at 9920 Wilshire Boulevard, Penthouse, Beverly Hills, CA 90211.

3.    The office was apparently closed when I attempted service on Monday, January 14, 2008, at 5:15 p.m. When I returned on Tuesday, January 15, 2008, at 12:30 p.m., I was informed by the receptionist that Mr. McFarland would be out of the office for an undetermined period. The receptionist also informed me that Mr. McFarland was not present at the office when I made further attempts on Wednesday, January 16, 2008, at 11:30 a.m., and Tuesday, January 22, 2008, at 12:30 p.m.

4.    I also attempted to serve Mr. McFarland at a residential address, 1991 Outpost, Los Angeles, CA. I first attempted service at the Outpost address on Friday, January 25, 2008, at 8:15 p.m. I knocked on the door, but no one answered. I similarly attempted service at the Outpost address on Saturday, January 26, 2008, at 3:15 p.m. and Sunday, January 27, 2008, at 7:30 p.m., but no one ever answered the door.

### Lucy Arant

5.    On January 16, 2008, I received an assignment from our client, Quinn Emanuel Urquhart Oliver & Hedges, LLP, to serve Lucy Arant with a federal deposition subpoena. The addresses provided were of a business located at 11377

-1-

DECLARATION OF MIGUEL LEYVA

**EXHIBIT** 7

1   West Olympic Boulevard, Los Angeles, CA 90064, and of a residence located at

2   3119 South Durango, #4, Los Angeles, CA 90034.

3         6.      I first went to the Durango address on Wednesday, January 16,

4   2008, at 9:30 p.m. and attempted to contact Ms. Arant using the security intercom.

5   There was no answer to the security intercom. I tried the Olympic residence address

6   on Thursday, January 17, 2008, at 10:00 a.m. When I asked the receptionist to see

7   Ms. Arant, the she said Ms. Arant was not there.

8         7.      I attempted service at the Durango address again on Thursday,

9   January 17, 2008, at 7:45 p.m. Because the intercom was not working, I could not

10  gain access to the grounds. I encountered the same situation on Friday, January 18,

11  2008, at 8:15 p.m.; Saturday, January 19, 2008, at 9:20 a.m.; Sunday, January 20,

12  2008, at 8:30 a.m.; and Monday, January 21, 2008, at 9:00 p.m. When the intercom

13  was down again on Tuesday, January 22, 2008, at 6:30 p.m., I asked a neighbor to

14  knock on Ms. Arant's door. The neighbor did so but there was no answer.

15        8.      I attempted service again at the Durango address on Wednesday,

16  January 23, 2008, by conducting a stake-out from 7:00 p.m. to 9:00 p.m. During

17  this time period, I saw no one enter or leave the residence at the Durango address.

18        9.      I attempted service again at the Olympic address on Thursday,

19  January 24, 2008, but the receptionist told me that Ms. Arant would not be in the

20  office all day.

21

22

23

24

25

26

27                    •                           EXHIBIT ____7____

28                                                PAGE ____97____

072092389597.1                          -2-

DECLARATION OF MIGUEL LEYVA

1          10.    I attempted three more times to serve Ms. Larant at the Durango

2    address on Friday, January 25, 2008, at 8:15 p.m.; Saturday, January 26, 2008, at

3    3:15 p.m.; and Sunday, January 27, 2008, at 8:45 p.m.  On each occasion I

4    attempted to contact anyone at the residence by using the security intercom, but no

5    one answered.

6

7          I declare under penalty of perjury under the laws of the United States of

8    America and the State of California that the foregoing is true and correct.

9          Executed on February 15, 2008, at Los Angeles, California.

10

11                         Miguel Leyva

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   EXHIBIT _____ 7 _____

28   PAGE _____ 98 _____

07209/2389597.1

-3-

DECLARATION OF MIGUEL LEYVA

1        I, Rudy Flores, declare as follows:

2        1.    I am a process service server for Now Legal Service, registered

3  in the State of California by the County Clerk of Los Angeles, our registration

4  numbering being 5426. My business address is 1301 West 2nd Street, Suite 206,

5  Los Angeles, CA 90067. I make this declaration of personal, firsthand knowledge

6  and, if called and sworn as a witness, I could and would testify competently thereto.

7        2.    On January 16, 2008, I received an assignment from our client

8  Quinn Emanuel Urquhart Oliver & Hedges LLP to serve Federal Civil Subpoenas

9  on Peter A. Marlow, Veronica Marlow, Inc., Doll Bag, Inc., and Marlow Techno-

10  Logic , Inc. The address provided for Mr. Marlow and the three entities was a

11  residence of 12250 Woodley Avenue, Granada Hills, CA 91344 ("the Residence").

12        3.    I first attempted service on January 16, 2008 at 4:30 p.m.. I rang

13  the doorbell but no one answered.

14        4.    When I returned to the Residence at 8:15 p.m. on January 16,

15  2008 for another attempt, I saw two vehicles in the driveway, a BMW and Mercedes

16  Benz. Although there were lights on in the Residence, when I rang the doorbell, no

17  one answered.

18        5.    I made further attempts on January 17, 2008 at 7:00 a.m. and at

19  9:00 a.m. The same two vehicles were in the driveway and the same lights were on

20  in the Residence. Once again, no one answered the door. I also did not see anyone

21  entering or leaving the home during a 75 minute stake-out until 10:30 a.m.

22        I declare under penalty of perjury under the laws of the United States of

23  America that the foregoing is true and correct.

24        Executed on January 25, 2008, at Los Angeles, California.

25

26

27                     Rudy Flores

28

EXHIBIT ___7___

PAGE ___99___

-1-

DECLARATION OF RUDY FLORES REGARDING ATTEMPTED SERVICE

EXHIBIT 8



LIBRARY OF CONGRESS

Copyright Office
of the United States
WASHINGTON. D.C.

THIS IS TO CERTIFY that the attached additional certificate is a claim of copyright for the work entitled JADE DOLL CONFIGURATION, ACCESSORIES AND PACKAGING registered under number VA 1-090-287.

THIS IS TO CERTIFY ALSO that the attached photocopies are a true representation of the work entitled JADE DOLL CONFIGURATION, ACCESSORIES AND PACKAGING deposited in the Copyright Office on July 18, 2001 registered under number VA 1-090-287.

IN WITNESS WHEREOF, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By: Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.



△ π EXHIBIT 557
Deponent Armstrong
Date 8/1/07 Rptr. AC
WWW.DEPOBOOK.COM

M 0110155

EXHIBIT _____ 8 _____

PAGE _____ 100 _____

**Additional Certificate (17 U.S.C. 706)**
Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

VA 1-090-287

EFFECTIVE DATE OF REGISTRATION

JUN 1 8 2001

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**

Jade Doll Configuration, Accessories and Packaging

**PREVIOUS OR ALTERNATIVE TITLES ▼**

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**NAME OF AUTHOR ▼**
ABC International Traders, Inc. d/b/a
MGA Entertainment

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ▶
    { Domiciled in ▶  U. S. A.

Was This Author's Contribution to the Work
Anonymous?   ☐ Yes  ☒ No
Pseudonymous? ☐ Yes  ☒ No

NATURE OF AUTHORSHIP Check appropriate box(es). See Instructions
☒ 3-Dimensional sculpture     ☐ Map          ☐ Technical drawing
☐ 2-Dimensional artwork       ☐ Photograph   ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

**NAME OF AUTHOR ▼**

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ▶
    { Domiciled in ▶

Was This Author's Contribution to the Work
Anonymous?   ☐ Yes  ☐ No
Pseudonymous? ☐ Yes  ☐ No

NATURE OF AUTHORSHIP Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture     ☐ Map          ☐ Technical drawing
☐ 2-Dimensional artwork       ☐ Photograph   ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

Year in Which Creation of This Work Was Completed
2000

Date and Nation of First Publication of This Particular Work
Month February Day 12 Year 2001
United States of America

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼
ABC International Traders, Inc. d/b/a
MGA Entertainment
16730 Schoenborn Street, North Hills, CA   91343

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
JUL 13, 2001
ONE DEPOSIT RECEIVED
JUL 18, 2001
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions    • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages

557-2

M 0110156

EXHIBIT ___8___

PAGE ___101___

EXAMINED BY ___  FORM VA

CHECKED BY ___

☐ CORRESPONDENCE
  Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼     Year of Registration ▼

DERIVATIVE WORK OR COMPILATION Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions
before completing
this space

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                    Account Number ▼

CORRESPONDENCE Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
12424 Wilshire Boulevard, Suite 1200
Los Angeles, California 90025

Area code and daytime telephone number ▶ (310) 826-7474, ext. 270        Fax number ▶ (310) 826-4415
Email ▶  larant@raklaw.com

CERTIFICATION*  I, the undersigned, hereby certify that I am the

check only one ▶   ☐ author
                   ☐ other copyright claimant
                   ☐ owner of exclusive right(s)
                   ☒ authorized agent of _____ ABC International Traders, Inc.
                        Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Lucy B. Arant                                          Date ▶ 7/18/01

Handwritten signature (X) ▼
X _Lucy B. Arant_

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
Number/Street/Apt ▼
12424 Wilshire Boulevard, Suite 1200
City/State/ZIP ▼
Los Angeles, California 90025

9

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
June 1999—100,000       ⊕ PRINTED ON RECYCLED PAPER                         ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/71

EXHIBIT ___ 8 ___

PAGE ___ 102 ___

M 0110157

557-3







EXHIBIT _____ 8 _____

PAGE _____ 103 _____

M 0110158    557- 4







EXHIBIT     8

PAGE     104

M 0110159    552-5

LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*
WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled SASHA DOLL CONFIGURATION, ACCESSORIES AND PACKAGING registered under number VA 1-090-288.

**THIS IS TO CERTIFY ALSO** that the attached photocopy is a true representation of the work entitled SASHA DOLL CONFIGURATION, ACCESSORIES AND PACKAGING deposited in the Copyright Office on July 18, 2001 registered under number VA 1-090-288.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By: Tracie M. Coleman
Head
Certifications and Documents Section
Information and Reference Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.

Δ π EXHIBIT 559
Deponent Armstrong
Date 8/1/07 Rptr. AC
WWW.DEPOBOOK.COM

M 0110160

EXHIBIT _____8_____

PAGE _____105_____

**Additional Certificate [17 U.S.C. 706]**
## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

VA 1-090-886

**EFFECTIVE DATE OF REGISTRATION**

**JUN 18 2001**

Month      Day      Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**                                          NATURE OF THIS WORK ▼ See instructions

Sasha Doll Configuration, Accessories and Packaging

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼      Number ▼      Issue Date ▼      On Pages ▼

---

**NAME OF AUTHOR ▼**
ABC International Traders, Inc. d/b/a
MGA Entertainment

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ U.S.A.

**Was This Author's Contribution to the Work**
Anonymous?      ☐ Yes  ☒ No
Pseudonymous?   ☐ Yes  ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☒ 3-Dimensional sculpture      ☐ Map            ☐ Technical drawing
☐ 2-Dimensional artwork        ☐ Photograph     ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design ☐ Architectural work

---

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**Was This Author's Contribution to the Work**
Anonymous?      ☐ Yes  ☐ No
Pseudonymous?   ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See instructions**
☐ 3-Dimensional sculpture      ☐ Map            ☐ Technical drawing
☐ 2-Dimensional artwork        ☐ Photograph     ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design ☐ Architectural work

---

**Year in Which Creation of This Work Was Completed**
2000
◀Year  This information must be given ONLY if this work has been published.

**Date and Nation of First Publication of This Particular Work**
Complete this information   Month ▶ February   Day ▶ 12   Year ▶ 2001
United States of America                                      ◀ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
ABC International Traders, Inc. d/b/a
MGA Entertainment
16730 Schoenborn Street, North Hills, CA  91343

See instructions before completing this space.

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**APPLICATION RECEIVED**
JUL 18 2001
**ONE DEPOSIT RECEIVED**
JUL 18 2001
**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

---

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of __2__ pages

M 0110161
559-2

EXHIBIT ___8___

PAGE ___106___

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION**

**DERIVATIVE WORK OR COMPILATION**

**DEPOSIT ACCOUNT**

**CORRESPONDENCE**
Lucy S. Arant c/o Rush, Alguer, Kaban & Kent
12424 Wilshire Boulevard, Suite 1200
Los Angeles, California 90025

(310) 826-7474, ext. 270     Fax number ▶ 310 · 826-6445

Email ▶ larant@rakn.com

**CERTIFICATION**

ABC International Traders, Inc.

Lucy S. Arant

Lucy S. Arant c/o Rush, Alguer, Kaban & Kent
12424 Wilshire Boulevard, Suite 1200
Los Angeles, California 90025

EXHIBIT _____ 8 _____

PAGE _____ 107 _____

M 0110162
559-3

EXHIBIT ___8___

PAGE ___108___

M 0110163
559-4



EXHIBIT _____ 8 _____

PAGE _____ 109 _____

M 0110164

559-5



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **CLOE DOLL CONFIGURATION, ACCESSORIES AND PACKAGING** registered under number **VA 1-090-289.**

**THIS IS TO CERTIFY ALSO**   that   the attached photocopies are a true representation of the work entitled **CLOE DOLL CONFIGURATION, ACCESSORIES AND PACKAGING** deposited in the Copyright Office on July 18, 2001 registered under number **VA 1-090-289.**

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By:   Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.

Δ π EXHIBIT 56 1
Deponent *Armstrong*
Date 8/1/07 Rptr. *AC*
www.depobooks.com

**M 0110165**

EXHIBIT _____ 8 _____

PAGE _____ 110 _____