1 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5 Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6 Facsimile: (213) 443-3100

7 Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 13 | Plaintiff, | Consolidated with |
| 14 | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15 | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 16 | Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]** |
| 17 | | |
| 18 | AND CONSOLIDATED ACTIONS | |
| 19 | | **[PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO MGA DEFENDANT'S MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA** |
| 20 | | |
| 21 | | |
| 22 | | [Declaration of Jon D. Corey and Evidentiary Objection to the Declaration of Larry McFarland filed concurrently] |
| 23 | | |
| 24 | | Hearing Date: TBA<br>Time: TBA<br>Place: Telephonic |
| 25 | | |
| 26 | | **Phase 1** |
| 27 | | Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: April 21, 2008<br>Trial Date: May 27, 2008 |
| 28 | | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 2

ARGUMENT............................................................................................................ 5

I.   MGA LACKS STANDING TO MOVE TO QUASH MATTEL'S
     SUBPOENA OF LARRY MCFARLAND ........................................................ 5

II.  *SHELTON* DOES NOT PREVENT MATTEL FROM TAKING MR.
     MCFARLAND'S DEPOSITION ...................................................................... 6

     A.   The Ninth Circuit Has Not Adopted Shelton........................................... 7

     B.   Shelton Is Inapplicable Because Mattel Seeks the Deposition of a
          Percipient Witness .................................................................................. 10

     C.   Mr. McFarland Possesses Unique, Crucial Knowledge Essential
          to This Case............................................................................................. 13

     D.   The Information is Unavailable From Another Source ......................... 15

     E.   Mattel's Questioning Regarding the Substance of Public
          Copyright Applications and Registrations Does Not Invade
          Privileged Information ........................................................................... 20

CONCLUSION....................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

ALN Associates, Inc.,
132 F.R.D. 492 (N.D. Ill. 1990) .................................................................. 8

Calvin Klein Trademark Trust v. Wachner,
124 F. Supp. 2d 207 (S.D.N.Y. 2000)..................................................... 10

Carey v. Textron, Inc. (E-Z-Go Textron),
224 F.R.D. 530 (D. Mass. 2004) ............................................................. 10

Cook, Inc. v. C. R. Bard, Inc.,
2003 WL 23009047 (S.D. Ind. 2003)........................................................ 9

Kaiser v. Mutual Life Ins. Co. of New York,
161 F.R.D. 378 (S.D. Ind. 1994) ............................................................ 11

Lloyd Lifestyle Ltd. v. Soaring Helmet Corp.,
2006 WL 753243 (Mar. 23, 2006 W.D. Wash.) ....................... 7, 11, 20

Mass. Mut. Life Ins. Co. v. Cerf,
177 F.R.D. 472 (N.D. Cal. 1998) ...................................................... 11, 12

Nakash v. U.S. Dept. of Justice,
128 F.R.D. 32 (S.D.N.Y. 1989)......................................................... 10, 11

Nova Products, Inc. v. Kisma Video, Inc.,
220 F.R.D. 238 (S.D.N.Y. 2004)............................................................... 5

Pamida, Inc. v. E.S. Originals, Inc.,
281 F.3d 726 (8th Cir. 2002)..................................................................... 10

qad, inc. v. ALN Associates, Inc.,
132 F.R.D. 492, 495 (N.D. Ill. 1990) .................................................. 8, 9

Shelton v. American Motors Corp.,
805 F.2d 1323 (8th Cir. 1986)............................................................*passim*

In re Subpoena Issued to Dennis Friedman,
350 F.3d 65 (2d Cir.2003) .................................................................... 7, 8

Younger Mfg. Co. v. Kaenon, Inc.,
247 F.R.D. 586 (C.D. Cal. 2007) .............................................................. 7

## Statutes

Federal Rules of Civil Procedure

Rule 26 .................................................................................................... 8

Rule 26(b)(2)(C)(i)-(iii) ........................................................................... 6

Rule 26(c) ............................................................................................... 7

Rule 30 .................................................................................................... 1

Rule 30(a) ............................................................................................... 5

Rule 30(b)(6) ........................................................................ 2, 14, 16, 18

## Other Authorities

Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc.
Before Trial, § 11:1142, § 11:1144 (The Rutter Group 2007) ......................... 9, 11

**Preliminary Statement**

1

2        One of the central issues in this case is the date of creation of Bratz. In
3 2003, Larry McFarland, as an attorney for MGA, filled out and signed various
4 copyright registrations which included dates for the creation and first publication of
5 Bratz material. MGA, after the inception of this litigation, asserted these dates were
6 wrong and changed them. Mr. McFarland's knowledge of the basis for the creation
7 and publication dates represented to the Copyright Office on behalf of MGA, which
8 MGA later asserted to be wrong, goes to the heart of this case. Furthermore, acting
9 on MGA's behalf, Mr. McFarland has submitted pleadings in other copyright
10 litigation that alleged precisely the opposite of what MGA now claims in this suit.
11 For example, in this action, MGA claims (including in expert reports) that the Bratz
12 dolls are not based on or substantially similar to Carter Bryant's drawings.
13 Pleadings submitted by MGA through Mr. McFarland in other lawsuits, however,
14 made statements about the enforceability and scope of copyrights and what products
15 are "substantially similar" to the Carter Bryant's Bratz drawings that are inconsistent
16 with MGA's positions in this case.

17        Mr. McFarland is thus a percipient witness and, indeed, his name
18 appears on hundreds of pages of documents that MGA relies on in this case. Under
19 Federal Rule of Civil Procedure 30, Mattel may take his deposition, as Judge Larson
20 previously recognized. MGA's sole authority for moving to quash, Shelton v.
21 American Motors Corp., 805 F.2d 1323 (8th Cir. 1986), is unavailing. It is not the
22 law of this Circuit and, in any event, does not apply to Mr. McFarland. He is not
23 trial counsel, so the limitations of do not apply.

24        MGA and Mr. McFarland have stonewalled endlessly in attempting to
25 prevent his deposition, including by deliberately evading service of Mattel's
26 deposition subpoena and now by trying to run the clock out on Mattel to prevent it
27 from obtaining critical information before trial. MGA's motion, which it lacks
28 standing to bring, is simply the latest maneuver to avoid a deposition concerning

1  potentially harmful facts for MGA and one that Judge Larson granted Mattel leave
2  to take.  Mattel respectfully requests that MGA's motion to quash Mr. McFarland's
3  deposition subpoena and for a protective order be denied, and that Mr. McFarland
4  be ordered to sit for his deposition immediately.

**Factual Background**

6  <u>McFarland Filed Early Bratz Copyright Applications With a Date of</u>
7  <u>Publication that MGA Later Disavows.</u>  McFarland may be the only available,
8  percipient witness on certain issues.  As an attorney acting for MGA to obtain
9  copyrights, he signed early copyright registrations related to Bratz.  In the
10  registrations, he claimed that the "First Publication" of Bratz was February 12,
11  2001.[1]  Lucy Arant, another MGA copyright and trademark attorney, signed early
12  Bratz copyright registrations, stating that the first Bratz dolls were created in 2000
13  and that the "First Publication" of Bratz was February 12, 2001 as well.[2]

14  In 2005, after this lawsuit began -- and after the timing of the
15  development of Bratz became the "heart" of the case[3] -- the MGA defendants
16  claimed for the first time that their representations to the U.S. Copyright Office were
17  mistaken.[4]  The MGA defendants now claim that Bratz was created in 2001, rather

18

---

19  [1]  Exh. 8 [MGA Copyright Registrations, dated December 2003], to the
20  Declaration of Jon D. Corey in Support of Mattel's Opposition to the MGA
Defendants' Motion to Quash Larry McFarland's Deposition Subpoena, dated March
21  27, 2008 (the "Corey Dec.").
22  [2]  Corey Dec., Exh. 9 [MGA Copyright Registrations, dated July 2001].
[3]  As the Court has recognized, the key to this case is the timing of the
23  development of Brat ("At its heart, this case asks the question:  Who owns the rights
24  to the Bratz dolls?").  Corey Dec., Exh. 10, at 11:1-2 [Court's August 9, 2006 Order
Denying Appointment of Expert Witnesses].
25  [4]  Corey Dec., Exh. 11 [Supplemental Copyright Registrations]; Corey Dec.,
26  Exh. 5, at 251:8-256:24; 260:14-262:4; 268:19-272:13; 276:10-278:14; 281:16-
282:4; 283:6-25; 284:23-285:21; 298:24-299:14; 328:18-331:21; 346:25-349:7;
27  349:25-357:18; 365:20-368:10; 370:18-371:16; 372:15-373:9; 673:19-678:6; 684:8-
28  689:21; 694:17-695:10 [Deposition Transcripts of Samir Khare ("Khare Tr.")].

07209/2449658.1

1 | than in 2000, when Carter Bryant was still a Mattel employee.[5]  Rather than being
2 | first published in February 12, 2001 the MGA defendants now claim that Bratz was
3 | published later, by "May 21, 2001."[6]

4 |        When MGA's <u>Rule</u> 30(b)(6) designee concerning the Bratz copyright
5 | registrations was questioned concerning the belated change of the Bratz creation and
6 | first publication dates, he testified that <u>he did not know</u> what information the dates
7 | in the registration applications were based on because they were prepared by
8 | "outside counsel," including McFarland.[7]  During his second deposition MGA's
9 | designee <u>again</u> claimed that MGA did not know why outside counsel represented to
10 | the Copyright Office that Bratz was created in 2000 and first published in
11 | February 12, 2001.

12 |        <u>Mattel is Granted Leave to Serve a Subpoena on McFarland;</u>
13 | <u>McFarland Evades Service</u>.  On November 20, 2007, Mattel filed its Motion for
14 | Leave to Take Additional Discovery and Objections to Discovery Master Order of
15 | September 28, 2007.[8]  Mattel, by this Motion, sought leave to take the deposition of
16 | Larry McFarland, among other things.[9]  On January 7, 2008, Judge Larson granted
17 |
18 | _____

[5]  <u>Id.</u>, at 251:8-256:24; 260:14-262:4; 268:19-272:13; 276:10-278:14; 281:16-282:4; 283:6-25; 284:23-285:21; 298:24-299:14; Exh. 11 [MGA Supplemental Copyright Registrations].

[6]  <u>Id.</u>, at 328:18-331:21; 346:25-357:18; 365:20-368:10; 370:18-371:16; 372:15-373:9; 375:17-380:8 [Khare Tr.]; Exh. 11 [MGA Supplemental Copyright Registrations].

[7]  <u>Id.</u>, at 253:16-23; 254:9-256:24; 271:2-272:13; 276:10-278:14; 281:16-282:4; 283:6-25; 328:18-330:7; 331:18-21; 365:20-368:10; 370:18-371:16; 372:15-373:9; 673:19-674:25; 684:8-686:10; 694:17-695:10 [Khare Tr.].

[8]  Declaration of Robert Herrington in Support of MGA Entertainment, Inc.'s Motion to Quash Larry McFarland's Deposition Subpoena, dated March 17, 2008 ("Herrington Dec."), Exh. 1.

[9]  Herrington Dec., Exh. 1, page 18.  MGA asserts that "[r]elying on false statements regarding Mr. McFarland, the Court granted the Motion For Leave and allowed Mattel to seek to depose Mr. McFarland." Motion, 2:16-18.  As discussed
     (footnote continued)

1  Mattel leave to take the depositions of Larry McFarland and Lucy Arant, in addition
2  to other witnesses.[10]  The Court ruled:

3          Considering [the standard set forth in <u>Rule</u> 26(b)(2)(C)(i)-(iii)] the
4          Court concludes that Mattel has shown good cause to grant additional
5          discovery given the complexity of this case, the number of parties,
6          recent developments related to the substitution of counsel, the concerns
7          regarding retention and spoliation of evidence, and the delay in
8          receiving paper discovery caused by numerous discovery disputes and a
9          Court-imposed stay requested by MGA upon substitution of counsel.
10         Specifically, the Court grants Mattel's request to take the individual
11         depositions relating to the Bratz claims (set forth in the moving papers
12         at 9-11) . . .[11]

13         <u>Judge Larson Issues an Order to Show Cause Why McFarland and His</u>
14  <u>Clients Should Not Be Ordered to Appear for a Deposition; McFarland Finally</u>
15  <u>Accepts Service of the Subpoena at Judge Larson's Direction.</u>  After Judge Larson
16  granted Mattel's motion for leave, and despite Mattel's repeated efforts to serve Mr.
17  McFarland, he evaded service for over a month.  Consequently, the Court issued an
18  Order to Show Cause to Mr. McFarland to show "why he and his clients should not

19
20
_____

21  herein, Mattel's assertions concerning Mr. McFarland's unique knowledge are well-
    founded and correct.  MGA initially implicitly conceded the same -- in its
22  Opposition to Mattel's "Motion For Leave," MGA did not object to Mattel's
    statements concerning Mr. McFarland's unique knowledge, and, importantly, did not
23  deny that he had such knowledge.  <u>See</u> MGA Defendants' (1) Opposition to Mattel,
24  Inc.'s Motion for Leave to Take Additional Discovery and Objections to Discovery
    Master Order of September 28, 2007, and (2) Joinder in Carter Bryant's Opposition
25  to Mattel's Motion, dated December 24, 2007, attached to the Corey Dec., Exh. 4.
26  Nor did Mr. McFarland.  <u>See e.g.</u> 1/7/2008 Hearing Transcript, attached to the
    Corey Dec., Exh. 3.
27    [10]   Civil Minutes, January 7, 2008, at pg. 3, attached to the Corey Dec.,  Exh. 1.
28    [11]   Minute Order, January 7, 2008, pp. 2-3, attached to the Corey Dec., Exh. 1.

1  be ordered to appear for deposition."[12]  At the hearing on the Order to Show Cause,

2  Judge Larson stated: "There's no need to order. I'm simply going to direct that you

3  will receive service on your own behalf and your three clients. And then you are

4  ordered leave to bring whatever motions you believe are appropriate to quash those

5  subpoenas. But they are going to be deemed served as of today."[13]  To date, Mr.

6  McFarland has not objected to his deposition subpoena.

7         The Parties' Meet and Confer Efforts.  On March 11, 2008, MGA and

8  Mattel met and conferred concerning MGA's objections to the deposition subpoenas

9  of Lucy Arant and Mr. McFarland. Concerning Mr. McFarland, MGA stated that

10  the rule set forth in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir.

11  1986), provided the sole authority for quashing Mattel's deposition subpoena.

12  Mattel asked whether MGA had authority for the proposition that Shelton applied to

13  witnesses to third parties and invited MGA to provide Mattel with the same.[14]

14  MGA failed to do so.[15]

15                           **Argument**

16  **I.    MGA LACKS STANDING TO MOVE TO QUASH MATTEL'S**

17  **       SUBPOENA OF LARRY MCFARLAND**

18         The Discovery Master should deny the Motion because MGA lacks

19  standing to bring it. MGA, not Mr. McFarland, seeks to prevent Mr. McFarland's

20  deposition. Mr. McFarland is not a party to this matter. "[A] party ordinarily lacks

21  _____

22  [12]  Civil Minutes, February 4, 2008, Herrington Dec., Exh. 2, p. 36.

23  [13]  Harrington Dec., Exh. 4, p.58.

     [14]  See Herrington Dec., Exh. 7.

24  [15]  The parties also agreed to a particular briefing schedule for MGA's motions,

25  with MGA's moving papers due on March 17, 2008, Mattel's Oppositions thereto
     due on March 25, 2008, and MGA's replies due March 31, 2008, for the hearing set

26  for April 4, 2008 in front of Judge Infante. See e-mail message from Robert
     Herrington to Jon Corey, dated March 12, 2008, attached to the Corey Dec., Exh. 2.

27  The parties subsequently agreed to an extension of time, with Mattel's Opposition

28  brief due on March 27th. Id.

1 | standing to quash a subpoena directed at a nonparty unless the party is seeking to
2 | protect a personal privilege or right."  Nova Products, Inc. v. Kisma Video, Inc., 220
3 | F.R.D. 238, 241 (S.D.N.Y. 2004).

4 |        MGA has not specifically articulated why it believes it has standing to
5 | move to quash Mr. McFarland's deposition subpoena.  Presumably it does so to
6 | protect purported "improper instructions on the attorney-client privilege"[16] in its
7 | public copyright registrations and other public statements.  As discussed below in
8 | Part II, Mattel seeks information that is not privileged.  Indeed, as the Discovery
9 | Master ruled, MGA has no legitimate expectation that information conveyed by
10 | someone to Mr. McFarland to be disclosed in a public document, such as dates of
11 | copyright creation and publication, would be maintained as confidential.[17]  Thus,
12 | this information cannot be privileged and MGA therefore has no privilege to
13 | "protect" through its Motion to Quash.  Accordingly, MGA has no standing to
14 | challenge a subpoena to Mr. McFarland, a non-party.

15 | **II.    _SHELTON_ DOES NOT PREVENT MATTEL FROM TAKING MR.**
16 | **MCFARLAND'S DEPOSITION**

17 |        MGA's sole basis for moving to quash Mattel's deposition subpoena of
18 | Mr. McFarland is the Eighth Circuit's decision in Shelton v. American Motors
19 | Corp., 805 F.2d 1323 (8th Cir. 1986).  Shelton is not the law in this Circuit.  Nor
20 | does it apply here.  Mr. McFarland is not a party to this case, but is an attorney who
21 | represents several third party witnesses in this matter.[18]  In the past he claims to

---

25 | [16]  Motion, at 1:22-23.
26 | [17]  Order Granting Mattel, Inc.'s Motion to Compel MGA to Produce Documents
27 | Bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296 - 0829305, dated
December 17, 2007, Corey Dec., Exh. 13.
28 | [18]  Motion, at 1:4-6.

1  have worked as counsel for MGA, but he is not MGA's trial counsel in this matter.[19]
2  Furthermore, even under Shelton, the deposition should proceed because Mattel
3  seeks to take the deposition of counsel for third party witnesses who is a percipient
4  witness to facts crucial to this litigation. Even if Shelton applied, and it does not,
5  Mattel meets its criteria for deposing Mr. McFarland.

6       **A.**    **The Ninth Circuit Has Not Adopted Shelton**

7         Neither the Federal Rules of Civil Procedure nor the Federal Rules of
8  Evidence prohibit taking the deposition of an opposing party's attorney. Shelton,
9  805 F.2d at 1327. Rule 30(a) of the Federal Rules of Civil Procedure permits a
10  party to take the testimony of "any person" by deposition. Here, Mattel sought, and
11  the Court specifically granted, leave to take Mr. McFarland's deposition.

12         MGA asserts that "the Ninth Circuit district courts have 'uniformly
13  followed' Shelton," relying on Lloyd Lifestyle Ltd. v. Soaring Helmet Corp., No
14  C06-0349C, 2006 WL 753243, *2 (W.D. Wash. Mar. 23, 2006).[20] The Ninth
15  Circuit itself has never adopted Shelton, and the Ninth Circuit district courts do not
16  "uniformly follow" Shelton. In Younger Mfg. Co. v. Kaenon, Inc., 247 F.R.D. 586,
17  588 (C.D. Cal. 2007), the United States District Court, Central District of California
18  rejected Shelton:

19            There is no Ninth Circuit precedent addressing the proper
20            standards for the Court to consider in this situation[21]. The
21
22

---

23  [19]  See Civil Docket for Case #: 2:04-cv-09049-SGL-RNB, attached to the Corey
Dec., Exh. 12.
24  [20]  Motion, at 4:6-8.
25  [21]  Younger denied an ex parte application for a protective order seeking to
depose the corporate defendant's general counsel. The Younger court held that the
26  defendants failed to show good cause to issue a protective order on the alleged
grounds that the deposition was for the sole purpose of harassment and that the
27  information sought was protected by attorney-client privilege or work product
doctrine. Younger 247 F.R.D. at 588. The court held that the counsel was a fact
28  (footnote continued)

1   Ninth Circuit Court of Appeals has not adopted the Eighth

2   Circuit's reasoning in <u>Shelton v. American Motors Corp.</u>,

3   805 F.2d 1323, 1327-28 (8th Cir.1986), or the Second

4   Circuit's reasoning in <u>In re Subpoena Issued to Dennis</u>

5   <u>Friedman</u>, 350 F.3d 65, 71-72 (2d Cir.2003), and this

6   Court finds the Second Circuit's reasoning to be the more

7   persuasive. As the Second Circuit has held, whether the

8   deposition of a lawyer should take place requires the Court

9   to take into consideration various factors, including:

10  The need to depose the lawyer, the lawyer's role in

11  connection with the matter on which discovery is sought

12  and in relation to the pending litigation, the risk of

13  encountering privilege and work-product issues, and the

14  extent of discovery already conducted.... Under this

15  approach, the fact that the proposed deponent is a lawyer

16  does not automatically insulate him or her from a

17  deposition nor automatically require prior resort to

18  alternative discovery devices, but it is a circumstance to be

19

20  _____

21  witness about statements and declarations he made about lenses at issue in the

22  litigation and communications arising from his job functions in addition to his role
    as general counsel, and therefore his deposition was "like the deposition of any

23  other percipient or fact witness and should not be prohibited under <u>Rule</u> 26(c)." <u>Id</u>.

24  588-89 (citations omitted).  To the extent defendant believed that questions during
    deposition impinge upon the attorney-client privilege or the work product doctrine,

25  defendant could make a proper objection.  <u>Id</u>. at 589.  Here, although Mr.

26  McFarland is not general counsel to MGA, he is a percipient witness about changes
    made to MGA's copyright applications and registrations.  Accordingly, his

27  deposition is proper.  As discussed herein, any objections to questions that might

28  arise at his deposition can be objected to at the time.

1    considered. <u>In re Subpoena Issued to Dennis Friedman,</u>

2    350 F.3d at 72.[22]

3

4    Other courts have also found <u>Shelton</u> to be inappropriately inflexible,

5    particularly when a party seeks the deposition of an attorney who is not trial counsel

6    or a witness to relevant facts.  <u>See, e.g.</u>, <u>In re Subpoena Issued to Dennis Friedman,</u>

7    350 F.3d 65, 72 (2d Cir. 2003) (rejecting <u>Shelton</u> rule and stating, "the standards set

8    forth in <u>Rule</u> 26 require a flexible approach to lawyer depositions whereby the

9    judicial officer supervising discovery takes into consideration all of the relevant

10   facts and circumstances to determine whether the proposed deposition would entail

11   an inappropriate burden or hardship")[23]; <u>qad, inc. v. ALN Associates, Inc.</u>, 132

12

13   [22]   Under either standard, the Motion should be denied.  In <u>In re Subpoena
Issued to Dennis Friedman</u>, 350 F.3d 65 (2d Cir. 2003), the "flexible approach"

14   adopted by the Second Circuit requires the court to consider "all relevant facts and
circumstances" which may include "the need to depose the lawyer, the lawyer's role

15   in connection with the matter on which discovery is sought and in relation to the

16   pending litigation, the risk of encountering privilege and work-product issues, and
the extent of discovery already conducted" to determine whether "the proposed

17   deposition would entail an inappropriate burden or hardship." <u>Id.</u> at 71-72. As

18   discussed herein, Mr. McFarland is a percipient witness to non-privileged facts
crucial to this case, facts which Mattel has been unable to learn from other MGA

19   sources.  Accordingly, under <u>Friedman</u>, his deposition is permissible.

20   [23]   In <u>Friedman</u>, the Second Circuit reversed the district court's granting of
defendant's motion to quash the deposition of defendant's former attorney who

21   provided advice during merger negotiations in a separate matter and who

22   subsequently moved to the law firm acting as trial counsel in the present matter.  <u>Id.</u>
at 66-67. It did so on the grounds that "[t] he district court ruled, relying on the rule

23   set forth in <u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323 (8th Cir. 1986), that

24   plaintiff-appellant must exhaust all practical alternative means of obtaining the
information sought from Friedman before it would consider allowing the proposed

25   deposition and ordered plaintiff-appellant to proceed first by written interrogatories.

26   We conclude that the deposition-discovery regime of the Federal Rules of Civil
Procedure requires a more flexible approach to attorney depositions than the rigid

27   Shelton rule." <u>Id.</u> (holding that they need not rule definitively on the matter because

28   the attorney consented to his deposition, mooting the appeal.)

1  F.R.D. 492, 495 (N.D. Ill. 1990) ("[T]his Court subscribes wholeheartedly to a

2  procedure that rejects any prior restraint in favor of permitting the deposition to go

3  forward, with any individualized objections to be dealt with during its regular

4  course."); Cook, Inc. v. C. R. Bard, Inc., 2003 WL 23009047, *1 (S.D. Ind. 2003)

5  ("[T]he Court finds that it was not error for the Magistrate Judge to decline to follow

6  Shelton and permit the deposition of Mr. Godlewski to proceed.").

7       **B.**    **<u>Shelton Is Inapplicable Because Mattel Seeks the Deposition of a</u>**

8            **<u>Percipient Witness</u>**

9         Furthermore, because Mr. McFarland is not trial counsel, Shelton does

10  not apply.  Shelton acknowledged a policy against deposing "trial counsel" to

11  protect from interference with trial preparation work.  Id. at 1327-28.  See also

12  Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc. Before Trial,

13  § 11:1142 (The Rutter Group 2007) ("The three Shelton criteria apply only when

14  trial and/or litigation counsel (rather than in-house counsel) are being deposed and

15  the questioning would expose litigation strategy (rather than disputed facts) in the

16  pending case.").

17         The core purpose of the Shelton test is to protect a party from a trial-

18  counsel deposition that might disclose strategies and otherwise harass and disrupt

19  trial-counsel. As the Eighth Circuit has stated, "the Shelton test was intended to

20  protect against the ills of deposing opposing counsel in a pending case which could

21  potentially lead to the disclosure of the attorney's litigation strategy." Pamida, Inc.

22  v. E.S. Originals, Inc., 281 F.3d 726, 730, 731 (8th Cir. 2002). ("The concerns

23  raised in Shelton regarding abuse of the discovery process and adding time and

24  expense to litigation are not implicated in this case where [defendant] seeks relevant

25  information uniquely known by [plaintiff's] attorneys about prior terminated

26  litigation, the substance of which is central to the pending case."). Thus, "Shelton

27  was not intended to provide heightened protection to attorneys who represented a

28  client in a completed case and then also happened to represent that same client in a

1  pending case where the information known only by the attorneys regarding the prior
2  concluded case was crucial. In such circumstances, the protection <u>Shelton</u> provides
3  to opposing counsel only applies because opposing counsel is counsel in the instant
4  case and not because opposing counsel had represented the client in the concluded
5  case." <u>Id</u>. at 730.

6      Although Mr. McFarland has in the past represented MGA in
7  connection with Bratz copyright representations, he is not trial counsel for MGA in
8  this case. It follows that concerns about questioning on litigation strategy for MGA
9  in this matter do not apply. <u>See, e.g.</u>, <u>Carey v. Textron, Inc. (E-Z-Go Textron)</u>, 224
10 F.R.D. 530, 532 (D. Mass. 2004) ("Moreover, the fact that Attorney Gelineau no
11 longer represents Carey in this matter reduces the degree [of] interference that any
12 deposition of him would introduce. He, presumably, does not possess information
13 concerning Plaintiff's current litigation strategy.").[24] Moreover, Mr. McFarland is
14 not preparing MGA's case for trial. Accordingly, the concern that counsel will be
15 distracted or unable to "devote his or her time and efforts to preparing the client's
16 case" if faced with a deposition simply does not apply. <u>Shelton</u>, 805 F.2d at 1327.
17 Nor could this have a chilling effect on future communications with McFarland, <u>id.</u>,
18 or lead to the disqualification of counsel who may be called as witnesses. <u>See</u>
19 <u>Kaiser v. Mutual Life Ins. Co. of New York</u>, 161 F.R.D. 378, 382 (S.D. Ind. 1994).

20     Prior representation or representation of third-party witnesses does not
21 transform Mr. McFarland into trial counsel. Were it otherwise, then all a litigant
22 would have to do to shield key factual knowledge held by its past counsel from

23

24   [24]  <u>Calvin Klein Trademark Trust v. Wachner</u>, 124 F. Supp. 2d 207, 211
     (S.D.N.Y. 2000) (noting that counsel's role in litigation was "peripheral" and
25   refusing to apply <u>Shelton</u> on that basis); <u>Nakash v. U.S. Dept. of Justice</u>, 128 F.R.D.
26   32, 34 (S.D.N.Y. 1989) ("[T]he major rationales in these cases—discouraging the
     depositions of opposing attorneys in a particular lawsuit to avoid unnecessary
27   expense and interference with the attorney-client relationship—are not applicable
28   here.").

1  deposition would be to retain them to represent third parties in a legal action.  And
2  Mr. McFarland does possess relevant information.  As discussed below, not only
3  was Mr. McFarland involved in representing dates of creation and publication for
4  Bratz works that are of questionable accuracy, the parties have produced in this case
5  over 1,000 documents containing Mr. McFarland's name.  Further,  Mr. McFarland
6  has represented MGA in other copyright infringement cases in which he, on behalf
7  of MGA, has taken positions about the enforceability and scope of copyrights and
8  what products are "substantially similar" to the Carter Bryant's Bratz drawings that
9  are inconsistent with MGA's positions in this case.

10  MGA relies on several cases to support its position that, under Shelton,
11  Mr. McFarland may not be deposed.  These cases, however, do not prohibit the
12  deposition of an attorney for third-party witnesses, who is also a percipient witness.
13  See e.g. Lloyd Lifestyle Ltd. v. Soaring Helmet Corp., 2006 WL 753243, *1 (W.D.
14  Wash. Mar. 23, 2006) (granting defendant's motion to quash plaintiff's deposition
15  subpoena to defendant's "lead counsel" before the United States Patent and
16  Trademark Office's Trademark Trial and Appeal Board); Mass. Mut. Life Ins. Co. v.
17  Cerf, 177 F.R.D. 472, 480, 481-482 (N.D. Cal. 1998) (denying defendant's motion
18  for a protective order and permitting plaintiff to take deposition of defendant's
19  counsel in a separate proceeding because she was a percipient witness to facts in the
20  present litigation, and granting defendant's motion for a protective order precluding
21  the deposition of its former counsel for the present litigation because privileged
22  information was sought, the information sought was not crucial and the counsel had
23  no firsthand knowledge thereof).

24
25
26
27
28

-12-

1
2

C.    **Mr. McFarland Possesses Unique, Crucial Knowledge Essential to This Case**

3          Even if <u>Shelton</u> applies, Mattel meets its criteria to depose Mr.
4    McFarland.  MGA asserts that Mattel "cannot show that Mr. McFarland has any
5    non-privileged information that is 'crucial' to this case."[25]  Mattel seeks information
6    related to the factual basis for MGA's copyright applications and registrations for
7    Bratz -- including the dates of creation and publication -- that Mr. McFarland
8    submitted to the Copyright Office and that were changed after the inception of this
9    litigation.  That information could not be more "crucial."  It goes to the issue at the
10   heart of this case -- when Bryant created Bratz.

11         Mr. McFarland possesses unique knowledge concerning changes in
12   MGA's copyright registrations for Bratz dolls.  As an agent for MGA, he signed
13   early copyright registrations related to Bratz.  In the registrations, he claimed that
14   the "First Publication" of Bratz was February 12, 2001.  Lucy Arant, another MGA
15   attorney, signed copyright registrations related to Bratz, stating that the first Bratz
16   dolls were created in 2000 and that the "First Publication of Bratz was February 12,
17   2001.  After this lawsuit began -- and after the timing of the development of Bratz
18   became the "heart" of the case -- the MGA defendants claimed for the first time that
19   their representations to the U.S. Copyright Office were mistaken.  Rather than being
20   created in 2000 -- while Bratz's inventor, Carter Bryant, was still a Mattel employee
21   -- the MGA defendants now claim that Bratz was created in 2001.  And rather than
22   being first published in February 12, 2001 the MGA defendants now claim that
23   Bratz was published by "May 21, 2001."

24         MGA attempts to minimize Mr. McFarland's knowledge because "[t]he
25   copyright applications Mr. McFarland signed state that Carter Bryant's Bratz
26   drawings were created in 1998, which is consistent with what Mr. Bryant and

27   _____

28   [25]   Motion, at 6:3-4.

1  numerous other witnesses have testified to in this case."[26]  MGA misses the point.
2  Mattel does not simply want to know what the applications say at one point in time.
3  Creation and publication dates for Bratz and related materials is crucial to this case
4  because it goes to the central issue of ownership of Bratz.  If Bryant created Bratz
5  while a Mattel employee, Mattel owns rights in Bratz.  MGA has not fully explained
6  the basis for its dates or their changes in those dates for Bratz materials from 2000 to
7  2001--from a time when Bryant was a Mattel employee to when he was not.  Mattel
8  is entitled to the facts behind what actually happened--facts Mr. McFarland
9  possesses.  The information Mattel seeks is "crucial" to this case.  Importantly,
10  MGA fails to discuss this information in its motion or explain why it is not
11  "crucial," nor can it.

12          This is not the only issue as to which Mr. McFarland possesses
13  percipient knowledge.  The parties in this case have produced over 1000 documents
14  that Mr. McFarland authored, executed or received, or that reference him.  They are
15  unquestionably relevant and range from trademark applications to lengthy detailed
16  complaints for copyright, trademark  and trade dress infringement of Bratz
17  intellectual property.  Indeed, Mr. McFarland has represented MGA in a variety of
18  such cases.  MGA's representations in those cases, made by Mr. McFarland on
19  MGA's behalf, are relevant to issues that MGA itself has interjected into this case.
20  MGA has contended that (1) Bryant's Bratz drawings are not original and otherwise
21  unprotectible by copyright; and (2) the Bratz dolls at issue in this lawsuit are *not*
22  based on or substantially similar to Bryant's Bratz drawings.  In fact, these assertions
23  have been made repeatedly in MGA's recent expert reports.[27]  The apparent reason

24

25    [26]  Motion, at 6:3-10.
26    [27]  See, e.g., Expert Report of Peter S. Menell, dated February 11, 2008 ("Menell
27  Report") (Exhibit 4 to the February 15, 2008 Declaration of Jon D. Corey ("Corey Dec.")); Expert Report of Mary Bergstein, dated February 11, 2008 (Corey Dec. Ex.
28  5); Expert Report of Debora Middleton, dated February 11, 2008 (Corey Dec. Ex.
       (footnote continued)

1  for MGA's arguments on this score is to assert at trial that even if Mattel owns the
2  Bratz doll design drawings Bryant created, the dolls do not infringe upon those
3  drawings.

4          Based even on what Mattel has obtained so far from other Bratz
5  lawsuits to date, MGA has a track record of saying the opposite. For example, in
6  other suits acting for MGA, Mr. McFarland has repeatedly accused the products of
7  defendants in other cases of infringing the copyrights in Carter Bryant's drawings
8  specifically. [28] This is in direct contravention of MGA's recent positions in this case,
9  and the Court and the jury are entitled to compare other dolls that MGA has
10 previously claimed are substantially similar to Bryant's Bratz drawings at issue in
11 this case in deciding whether those Bratz drawings are substantially similar to the
12 Bratz dolls. Mattel is plainly entitled to testimony on other instances MGA has
13 made such inconsistent statements and representations to Courts.

14          **D.      The Information is Unavailable From Another Source**

15          MGA asserts that "Mattel has numerous other sources from which to
16 obtain relevant, non-privileged information regarding MGA's copyright
17 applications."[29] MGA points to the deposition testimony of Samir Khare, Bryan
18 Armstrong, Nana Ashong and Mitchell Kamarck as support for its assertion.
19 Nowhere does MGA show where these witnesses answered Mattel's questions about
20 Mr. McFarland applications. It cannot. Mr. Khare, as MGA's 30(b)(6) witness,
21 indicates that Mr. McFarland is MGA's sole source of knowledge.[30] MGA, by
22
23
24
25 6); Expert Report of Paul K. Meyer, dated February 11, 2008 (Corey Dec. Ex. 7), at
   16.
26    [28]  E.g., Complaint in Case No. CV 04-2524 CBM (CWx) (C.D. Cal. 2004),
   Exh. 15 to the Corey Dec.
27    [29]  Motion, at 5:4-5.
28    [30]  Khare Tr., 281:7-294:9, attached to the Corey Dec., Exh. 5.

07209/2449658.1

1  asserting these depositions prove Mr. McFarland is not the sole source for the

2  information Mattel seeks, shows its argument lacks merit.

3           Samir Khare is MGA's in-house legal counsel and testified as MGA's

4  Rule 30(b)(6) witness concerning the copyright registrations at issue.[31] Mr. Khare

5  lacked knowledge of changes to the registrations, and MGA omits the portion of Mr.

6  Khare's testimony where he points to Mr. McFarland as the source of information

7  for the basis of certain information was submitted.[32] Mr. Khare testified, in part,

8  that he did not speak with Mr. McFarland concerning the substance of the

9  registrations:



10
11
12
13  Further, Mr. Khare testified that although he recognized MGA submitted copyright
14  applications which it later changed, he had no idea why:
15
16

17      [31]  Motion, at 5:8-9. Mr. Khare was designated to testify, in part, on Topic 33 of
18  Mattel's Second Notice of Deposition to MGA Entertainment, Inc., Pursuant to
    Federal Rule of Civil Procedure 30(b)(6), which sought the following information:
19  "The applications for registration and the registrations for copyright, patent,
20  trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ
    DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT,
21  including without limitation COMMUNICATIONS pertaining thereto." Corey Dec.,
22  Exh. 7. See also Khare Tr. 57:5-17, attached to the Corey Dec., Exh. 5 ("Q. So,
    then, let me ask it this way: directing your attention to topic 33 -- A. Yes. Q. -- is
23  it your understanding you're here to testify as to the substance of the applications for
24  registration and the registrations that are -- that are the subject of Topic 33? A.
    Yes."). Interestingly, MGA does not explain why it permits its in-house counsel,
25  Mr. Khare, as well as its former in-house counsel Mr. Kamarck, to testify about the
26  substance of MGA's copyright registrations, yet objects to the deposition of Mr.
    McFarland -- its former counsel who was actually responsible for the information.
27      [32]  See Motion, at 11-14, n. 13.
28      [33]  Khare Tr., 83:24-84:3, attached to the Corey Dec., Exh. 5.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[34] Khare Tr., 260:14-262:4, attached to the Corey Dec., Exh. 5.

MATTEL, INC.'S OPP. TO MGA'S MOTION TO QUASH LARRY MCFARLAND'S DEPO. SUBPOENA

07209/2449658.1



07209/2449658.1

MATTEL, INC.'S OPP. TO MGA'S MOTION TO QUASH LARRY MCFARLAND'S DEPO. SUBPOENA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18    The testimony from the other depositions were equally unhelpful. No
19  one possessed knowledge of the facts on which the changes in the copyright
20  applications were based.[36] By asserting that "Mattel has numerous other sources
      from which to obtain relevant, non-privileged information regarding MGA's
21
22
23
24    [35]   Khare Tr., 281:7-294:9 (emphasis added), attached to the Corey Dec., Exh. 5.
25    [36]   See 8/1/2007 Deposition Transcript of Bryan Armstrong, 329:19-331:22,
      361:22-373:2, Exh. 6 (Counsel for MGA and Armstrong testifying that as MGA's
26    Rule 30(b)(6) designee, in part for Topic 33, as discussed above, he had no
      knowledge of the substance of the copyright registrations and had no personal
27    knowledge of such documents); see also Herrington Dec., Exh. 11 [Kamarck Tr.];
28    Exh. 9 [Ashong Tr.]; Ex. 10 [Armstrong Tr.].

1   copyright applications,"[37] MGA implicitly concedes that is acceptable for Mattel to
2   question MGA's attorneys and employees concerning the changes in MGA's
3   copyright registrations, and that MGA's attorneys can provide non-privileged
4   helpful information.  MGA, however, does not reconcile why it finds it acceptable
5   for its counsel -- other than Mr. McFarland -- and employees to testify unhelpfully
6   concerning the information Mattel seeks, yet Mr. McFarland's testimony is
7   somehow off-limits.  Importantly, neither MGA nor Mr. McFarland disavow that
8   Mr. McFarland has this information.

9          This is unsurprising.  Given the types of questions Mattel seeks to ask,
10  no other witness could have the same information.  Mattel has exhausted, to no
11  avail, other means of obtaining the evidence, including deposing MGA.  As its
12  30(b)(6) designee, Mr. Khare, pointed out, Ms. Arant and Mr. McFarland were the
13  people involved in inputting information in MGA's copyright registrations for Bratz.
14  Only they can explain the factual bases for the changes made to these documents.  In
15  addition, MGA points to no one who can substitute for Mr. McFarland in testifying
16  about MGA's representations to other Courts that now conflict with its positions in
17  this case.

18      **E.    Mattel's Questioning Regarding the Substance of Public Copyright**
19            **Applications and Registrations Does Not Invade Privileged**
20            **Information**

21          MGA asserts that Mattel "cannot show that Mr. McFarland has any
22  non-privileged information that is 'crucial' to this case."[38]  As discussed herein, the
23  information Mattel seeks is "crucial."  MGA is also incorrect that Mattel cannot
24  point to any non-privileged information.  Further, MGA fails to explain how the
25  information Mattel seeks is privileged.  Nor can it.  Mattel seeks information

26  _____

27  [37]   Motion, at 5:4-5.
28  [38]   Motion,  at 6:3-4.

07209/2449658.1

MATTEL, INC.'S OPP. TO MGA'S MOTION TO QUASH LARRY MCFARLAND'S DEPO. SUBPOENA

1   concerning the factual bases for certain dates in MGA's copyright applications and

2   trademark applications, MGA's associated communications with the Copyright

3   Office and Trademark Office and MGA's representations to Courts in other

4   infringement cases. All of this is public information. Mr. McFarland is a percipient

5   witness to these facts. As the Discovery Master has held, there can be no good faith

6   expectation that information provided for public disclosure or that was publicly

7   disclosed would be maintained confidential.[39] The attorney-client privilege does not

8   apply.

9         Further, to the extent MGA has legitimate basis to assert privilege or

10   work product to questions while at the deposition, that is no reason to preclude all

11   questioning. Instead, such issues can and should be considered on a question-by-

12   question basis, with MGA asserting instructions during the course of the deposition

13   according to the usual rule. The Discovery Master and the District Court previously

14   rejected MGA's arguments that it was entitled to block deposition testimony based

15   on blanket assertions of privilege.[40] Those arguments fare no better this time around

16   and provide no legitimate basis for a protective order here. Indeed, as MGA's case

17   law acknowledges, "protective orders that completely bar a deposition are not

18   favored." Lloyd, 2006 WL 7533243 at *1.

19                     **Conclusion**

20         MGA's motion to quash and for a protective order should be denied.

21   DATED:  March 27, 2008       QUINN EMANUEL URQUHART OLIVER &
                            HEDGES, LLP

22

23

24                      By /s/ Jon D. Corey
                         Jon D. Corey
                         Attorneys for Mattel, Inc.

25

26

27   [39]  Corey Dec., Exh. 13.

28   [40]  Corey Dec., Exhs. 13, 14.