QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]**<br><br>**[PUBLIC REDACTED] DECLARATION OF JON COREY IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA**<br><br>Hearing Date: April 4, 2008<br>Time: 9:30 a.m.<br>Place: Telephonic<br><br>**Phase 1**<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008. |

1    <u>DECLARATION OF JON D. COREY</u>

2        I, Jon D. Corey, declare as follows:

3        1.    I am a member of the bars of the State of California and the

4    District of Columbia. I am a partner at Quinn Emanuel Urquhart Oliver &

5    Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration in

6    support of Mattel, Inc.'s Opposition To MGA's Motion To Quash Larry McFarland's

7    Deposition Subpoena. I make this declaration of personal, firsthand knowledge, and

8    if called and sworn as a witness, I could and would testify competently thereto.

9        2.    Attached as Exhibit 1 is a true and correct copy of the Civil

10   Minutes, dated January 7, 2008.

11       3.    Attached as Exhibit 2 are true and correct copied of an e-mail

12   message from Robert Herrington to me, dated March 12, 2008 and an e-mail

13   message from Robert Herrington to me, dated March 24, 2008.

14       4.    Attached as Exhibit 3 is a true and correct copy of the January 7,

15   2008 Hearing Transcript, in front of Judge Larson.

16       5.    Attached as Exhibit is 4 a true and correct copy of the MGA

17   Defendants' (1) Opposition to Mattel, Inc.'s Motion for Leave to Take Additional

18   Discovery and Objections to Discovery Master Order of September 28, 2007, and

19   (2) Joinder in Carter Bryant's Opposition to Mattel's Motion, dated December 24,

20   2007.

21       6.    Attached as Exhibit 5 is a true and correct copy of excerpts from

22   the deposition of Samir Khare, dated August 20, 2007 and January 23, 2008.

23       7.    Attached as Exhibit 6 is a true and correct copy of excerpts from

24   the deposition of Bryan Armstrong, dated August 1, 2007.

25       8.    Attached as Exhibit 7 is a true and correct copy of Mattel's

26   Second Notice of Deposition to MGA Entertainment, Inc., Pursuant to <u>Federal Rule</u>

27   <u>of Civil Procedure</u> 30(b)(6), dated February 1, 2007.

28

07209/2446387.1

-1-

COREY DEC. I.S.O. MATTEL, INC.'S OPP. TO MGA'S MTN. TO QUASH McFARLAND'S DEPO. SUBPOENA

1        9.     Attached as Exhibit 8 are true and correct copies of MGA
2  Copyright Registrations, dated December 2003.

3        10.    Attached as Exhibit 9 are true and correct copies of MGA
4  Copyright Registrations, dated July 2001.

5        11.    Attached as Exhibit 10 is a true and correct copy of the Court's
6  August 9, 2006 Order Denying Appointment of Expert Witnesses.

7        12.    Attached as Exhibit 11 are true and correct copies of additional
8  MGA Supplemental Copyright Registrations.

9        13.    Attached as Exhibit 12 is a true and correct copy of excerpts of
10  the Civil Docket For Case #: 2:04-cv-09049-SGL-RNB demonstrating that Mr.
11  McFarland is not trial counsel for any plaintiff of defendant.

12        14.    Attached as Exhibit 13 is a true and correct copy of the Order
13  Granting Mattel, Inc.'s Motion to Compel MGA to Produce Documents Bearing
14  Bates Nos. MGA 0800973-0800974 and MGA 0829296 - 0829305, dated December
15  17, 2007.

16        15.    Attached as Exhibit 14 is a true and correct copy of the July 2,
17  2007 Civil Minutes.

18        16.    Attached as Exhibit 15 is a true and correct copy of the
19  Complaint in the matter of MGA Entertainment, Inc. v. Multitoy, Inc., et al., Case
20  No. CV04-2524 CBM (CWx).  Based on representations to me by people who are
21  familiar with the parties' document productions, the parties have produced over 250
22  documents containing Mr. McFarland's name.

23       I declare under penalty of perjury under the laws of the United States of
24  America that the foregoing is true and correct.

25       Executed on March 27, 2008, at Los Angeles, California.

26

27

                       Jon D. Corey

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THIS PAGE INTENTIONALLY LEFT BLANK

EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: January 7, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
=================================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                              Theresa Lanza
            Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER                ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  Christa Martine Anderson          John B. Quinn and Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:                 ATTORNEY PRESENT FOR CARLOS
Thomas J. Nolan                            GUSTAVO MACHADO GOMEZ:
Carl A. Roth                               Mark E. Overland
Anna Park

                                           ATTORNEY PRESENT FOR NON-PARTY
                                           STERN & GOLDBERG: Kien C. Tiet
ATTORNEY PRESENT FOR NON-
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND                   ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: Larry W.                  KAYE SCHOLER, LLP: Bryant S. Delgadillo
McFarland


PROCEEDINGS:    **ORDER GRANTING IN PART AND DENYING IN PART**
                **MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL**
                **DISCOVERY (DOCKET #1134)**

                **ORDER GRANTING MOTION TO ENFORCE THE COURT'S**
                **ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR**
                **SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90                                     Initials of Deputy Clerk: jh
CIVIL -- GEN                     1                  Time: 1/30

                                        EXHIBIT _____/_____

                                        PAGE _____4_____

### ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

### ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

### MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)

This motion is **GRANTED IN PART**. Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

MINUTES FORM 90
CIVIL -- GEN                                    2

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____ / _____

PAGE _____ 5 _____

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel. Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13). Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes. Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant. The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED.** The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language. Machado must file an affidavit that complies with the

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____ /
PAGE _____ 6

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed
the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting
forth a factual description of their preservation efforts, policies, customs, and/or
practices with respect to potentially discoverable documents related to the present
litigation.  The failure of these parties to comply with this Order will result in the
imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

### MATTEL'S MOTION CLARIFYING COURT'S ORDER
### APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**.  The Court's order referred to the Discovery Master
any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was
entered as the Court's order, and as such, all parties are subject to that order unless
relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the
consent of any party or nonparty.  Machado has not convinced the Court that, as a
subsequently added party, he was required to be given the opportunity to object to
the order before it could be applied to him.  See Fed. R. Civ. P. 53(b)(1) (requiring
notice and opportunity to be heard prior to the appointment of a special master).
Importantly, Machado could have, but did not, seek relief from this order within a
reasonable amount of time after he became a party to this case.  Furthermore, the
Court does not find any basis to exclude Machado from the reach of the Court's
order appointing the Discovery Master pursuant to his present objections.

### DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET
### #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90                                                 Initials of Deputy Clerk: jh
CIVIL -- GEN                          4                          Time: 1/30

EXHIBIT _____/_____

PAGE _____7_____

forth in their moving papers.  The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl).  To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008.  However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____ / _____

PAGE _____ 8 _____

EXHIBIT 2

| | |
|---|---|
| **From:** | Herrington, Robert J [Robert.Herrington@skadden.com] |
| **Sent:** | Wednesday, March 12, 2008 5:46 PM |
| **To:** | Jon Corey |
| **Cc:** | Eckles, Paul M (NYC) |

**Subject:** Matte/MGA - Confirming our Discussions Yesterday

Jon:

To follow-up on and confirm our discussions yesterday, we do intend to move for a protective order with respect to Ms. Arant and Mr. McFarland. As we agreed, we will file our motions on March 17, 2008, Mattel will file its Opposition on March 25, 2008, and MGA will file its reply on March 31, 2008. The motions will be heard at the hearing before Judge Infante scheduled for April 4, 2008. I will send you and Paul Eckles the title of the motion so it can be included in the joint statement being made to the Discovery Master.

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

**Robert J. Herrington**
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
☎ Direct: (213) 687-5368 | 🖷 Fax: (213) 621-5368 | ✉ Email: rherring@skadden.com

**Joanne Otero, Assistant to Robert Herrington**
☎ Direct: (213) 687-5252 | ✉ Email: jootero@skadden.com

---------------------------------------------------------------------------------
*************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
***************************************************

*************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. ***************************************************

EXHIBIT _____2_____

PAGE _____9_____

```
----- Original Message -----
From: Herrington, Robert J <Robert.Herrington@skadden.com>
To: Jon Corey
Sent: Mon Mar 24 19:21:26 2008
Subject: Msg
```

Jon:

Two additional days for the opposition on McFarland and Arant is fine.  I understand from
your message that we will have 2 additional days as well.   I believe this means your
opposition is due on 3/27 and our reply is due on 4/2. Please confirm. Thank you

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY.   ALL
OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP 300 South Grand Ave. | Suite 3400 | Los Angeles,
CA | 90071 ' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email:
rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington ' Direct: (213) 687-5252 | , Email:

jootero@skadden.com <mailto:jootero@skadden.com>

--------------------------------------------------------------------------
*************************************************** To ensure compliance with Treasury
Department regulations, we advise you that, unless otherwise expressly indicated, any
federal tax advice contained in this message was not intended or written to be used, and
cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal
Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing
or recommending to another party any tax-related matters addressed herein.
***************************************************
*************************************************** This email and any attachments
thereto, is intended only for use by the addressee(s) named herein and may contain legally
privileged and/or confidential information. If you are not the intended recipient of this
email, you are hereby notified any dissemination, distribution or copying of this email,
and any attachments thereto, is strictly prohibited. If you receive this email in error
please immediately notify me at (212) 735-3000 and permanently delete the original copy
and any copy of any email, and any printout thereof. Further information about the firm, a
list of the Partners and their professional qualifications will be provided upon request.
***************************************************
==========================================================================

**EXHIBIT** _2_

**PAGE** _10_

EXHIBIT 3

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                 –  –  –

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 –  –  –                    CERTIFIED
                                             COPY
7    CARTER BRYANT, ET. AL.,          )
                                      )
8                    PLAINTIFFS,      )
                                      )
9         VS.                         )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,           )
                                      )
11                   DEFENDANTS.      )   MOTIONS
                                      )
12   AND CONSOLIDATED ACTIONS,        )
                                      )

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17              MONDAY, JANUARY 7, 2008

18                 10:11 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
         FEDERAL OFFICIAL COURT REPORTER
24         3470 12TH STREET, RM. 134
         RIVERSIDE, CALIFORNIA  92501
25            951-274-0844               **EXHIBIT** _3_
         CSR11457@SBCGLOBAL.NET
                                         **PAGE** _11_

2

```
 1   APPEARANCES:

 2   ON BEHALF OF CARTER BRYANT:

 3                         KEKER & VAN NEST
                           BY:  CHRISTA M. ANDERSON
 4                         710 SANSOME STREET
                           SAN FRANCISCO, CALIFORNIA  94111-1704
 5                         415-391-5400

 6
     ON BEHALF OF MATTEL:
 7
                           QUINN EMANUEL
 8                         BY:  JOHN QUINN
                           BY:  MICHAEL T. ZELLER
 9                         865 S. FIGUEROA STREET,
                           10TH FLOOR
10                         LOS ANGELES, CALIFORNIA  90017
                           213-624-7707
11

12   ON BEHALF OF MGA ENTERTAINMENT:

13                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                           BY:  THOMAS J. NOLAN
14                         BY:  CARL ALAN ROTH
                           BY:  AMY S. PARK
15                         300 SOUTH GRAND AVENUE
                           LOS ANGELES, CALIFORNIA  90071-3144
16                         213-687-5000

17
     ON BEHALF OF GUSTAVO MACHADO:
18
                           OVERLAND BORENSTEIN COTE & KIM LLP
19                         BY:  MARK E. OVERLAND
                           300 SOUTH GRAND AVENUE
20                         SUITE 2750
                           LOS ANGELES, CALIFORNIA  90071
21                         213-613-4660

22

23

24   / / /

25   / / /
```

EXHIBIT _____ 3 _____

PAGE _____ 12 _____

JANUARY 7, 2008                    BRYANT VS. MATTEL

```
 1    APPEARANCES (CONT'D):

 2

 3    ON BEHALF OF NON-PARTY KAYE SCHOLER:

 4                    KAYE SCHOLER LLP
                      BY:  BRYANT S. DELGADILLO
 5                    1999 AVENUE OF THE STARS
                      SUITE 1600
 6                    LOS ANGELES, CALIFORNIA  90067-6048
                      310-788-1341
 7

 8    ON BEHALF OF NON-PARTY STERN & GOLDBERG:

 9                    STERN & GOLDBERG:
                      BY:  KIEN C. TIET
10                    6345 BALBOA BOULEVARD,
                      SUITE 200
11                    ENCINO, CALIFORNIA  91316
                      818-758-3940
12

13    ON BEHALF OF NON-PARTY FARHAD LARIAN:

14                    CHRISTENSEN, GLASER, FINK,
                        JACOBS, WEIL & SHAPIRO, LLP
15                    BY:  ALISA MORGENTHALER LEVER
                      10250 CONSTELLATION BOULEVARD
16                    LOS ANGELES, CALIFORNIA  90067
                      310-553-3000
17

18    ON BEHALF OF DEFENDANTS CLOONAN, MARLOW,
      HALPERN, LEAHY, AND ARONT:
19
                      KEATS MCFARLAND & WILSON, LLP
20                    BY:  LARRY W. MCFARLAND
                      9720 WILSHIRE BOULEVARD
21                    BEVERLY HILLS, CALIFORNIA  90212
                      310-777-3750
22

23

24                                   EXHIBIT _____ 3

25                                   PAGE _____ 13
```

JANUARY 7, 2008                    BRYANT VS. MATTEL

4

```
 1                    I N D E X

 2                                                    PAGE

 3    MOTIONS.....................................     5

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT _____3_____

PAGE _____14_____

JANUARY 7, 2008            BRYANT VS. MATTEL

```
 1        RIVERSIDE, CALIFORNIA; MONDAY, JANUARY 7, 2008; 10:11 A.M.

 2                              -oOo-

 3             THE CLERK:  CALLING CALENDAR ITEM NUMBER FOUR,

 4    CARTER BRYANT, PLAINTIFF, VERSUS MATTEL, CASE NUMBER CV-04-9059

 5    AND THE CONSOLIDATED DOCKET NUMBERS CV-04-9049 AND 05-2727.      10:11

 6             MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES FOR

 7    THE RECORD.

 8             MR. NOLAN:  TOM NOLAN, CARL ROTH, AND AMY PARK ON

 9    BEHALF OF MGA.

10             MS. ANDERSON:  CHRISTA ANDERSON ON BEHALF OF           10:11

11    CARTER BRYANT.

12             MR. OVERLAND:  MARK OVERLAND ON BEHALF OF

13    MR. MACHADO.

14             MR. MCFARLAND:  LARRY MCFARLAND ON BEHALF OF

15    MS. CLOONAN, MS. LEAHY, MS. MARLOW, MS. ARONT, AND MS. HALPERN. 10:11

16             MS. MORGENTHALER:  ALISA MORGENTHALER, OF CHRISTENSEN

17    GLASER, ON BEHALF OF NONPARTY FARHAD LARIAN.

18             MR. TIET:  KIEN TIET ON BEHALF OF NONPARTY STERN

19    & GOLDBERG.

20             MR. DELGADILLO:  BRYANT DELGADILLO ON BEHALF OF        10:11

21    NONPARTY KAYE SCHOLER, LLP.

22             MR. QUINN:  JOHN QUINN AND MIKE ZELLER ON BEHALF OF

23    MATTEL.

24             THE COURT:  THE COURT HAS SEVERAL MATTERS BEFORE IT

25    ON THIS MATTER.  I HAVE THE MOST RECENTLY FILED MGA'S AND       10:12
```

EXHIBIT _____3____

PAGE ____/5____

```
 1   CARTER BRYANT'S EX-PARTE APPLICATION TO COMPEL NOTICE
 2   DEPOSITIONS; THAT WAS SET BY THE PARTIES, AT LEAST BY THE
 3   MOVING PARTY, FOR HEARING FOR THIS MORNING.  I DID RECEIVE THE
 4   OPPOSITION, AND I HAVE THAT.  I THEN HAVE THREE MOTIONS BROUGHT
 5   BY MATTEL; THE MOTION REGARDING THE SEPTEMBER 28, 2000 [SIC]        10:1:
 6   DISCOVERY MASTER'S ORDER; THE SECOND MOTION IS A MOTION
 7   REGARDING THE AUGUST 27, 2007 COURT ORDER; AND THEN FINALLY, WE
 8   HAVE THE MOTION BROUGHT BY MATTEL, BASICALLY THE CLARIFICATION
 9   ORDER, OR REQUEST FOR A CLARIFICATION ORDER, IN TERMS OF WHAT
10   THE DISCOVERY MASTER HEARS AND DOESN'T HEAR REGARDING THE THIRD    10:13
11   PARTIES.
12            I HAVE DOWN HERE IN MY NOTES THAT 'JUDGE INFANTE
13   HEARS ALL DISCOVERY MOTIONS.'
14            IN ANY EVENT, THAT'S WHAT'S BEFORE ME AT PRESENT.
15            FIRST OF ALL, IS THERE ANYTHING ELSE THAT IS BEFORE       10:13
16   THIS COURT THAT I'M NOT AWARE OF?
17            MR. QUINN:  NOT THAT WE KNOW OF, YOUR HONOR.
18            MR. NOLAN:  NOT THAT WE'RE AWARE OF.
19            THE COURT:  VERY WELL.
20            SO THOSE ARE THE FOUR MATTERS THAT I WANT TO TAKE UP.     10:13
21            LET ME TAKE UP THE MOTIONS FIRST, AND THEN I'LL TAKE
22   CARE OF THE EX-PARTE, JUST TO DEAL WITH THEM IN THE
23   CHRONOLOGICAL ORDER THAT I'VE RECEIVED OR REVIEWED THEM.
24            THE FIRST MOTION THAT I'LL TAKE UP -- IT'S DOCKET
25   ENTRY NUMBER 1134; IT'S THE MOTION REGARDING THE SEPTEMBER 28,     10:13
```

EXHIBIT _____3_____

PAGE _____16_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1    2007 DISCOVERY MASTER ORDER.  I BASICALLY DIVIDED THIS INTO TWO

2    PARTS.  WHAT I'M GOING TO DO IS GIVE YOU MY TENTATIVE THOUGHTS

3    ON IT, AND THEN I'LL CERTAINLY ENTERTAIN WHATEVER ORAL ARGUMENT

4    COUNSEL WISHES TO MAKE AFTER I'VE GIVEN MY THOUGHTS.

5         THE FIRST PART OF THIS ORDER THAT I'VE CONSIDERED IS          10:14

6    THE REQUEST TO EXTEND OR PROVIDE ADDITIONAL TIME FOR MATTEL TO

7    DEPOSE CARTER BRYANT.  THE COURT IS MINDFUL OF THE STANDARD OF

8    REVIEW OF THE DISCOVERY MASTER'S ORDERS, AND IN LIGHT OF THE

9    STANDARD OF REVIEW, THE COURT IS DISINCLINED TO EXTEND THIS

10   TIME ANY FURTHER.                                                  10:14

11        THAT IS NOT TO SAY THAT IF I WAS OPERATING WITH A

12   CLEAN SLATE THAT I WOULD NOT BE PERSUADED BY MATTEL'S ARGUMENT

13   THAT THE AMOUNT OF TIME TO DEPOSE CARTER BRYANT SHOULD NOT HAVE

14   BEEN LONGER TO BEGIN WITH, BUT THE STANDARD HERE IS WHETHER OR

15   NOT THE LEGAL FINDINGS BY THE DISCOVERY MASTER, BY               10:14

16   JUDGE INFANTE, WERE CLEARLY ERRONEOUS OR WHETHER THERE WAS ANY

17   CLEAR FACTUAL ERRORS.

18        THERE'S NO DISPUTE, I DON'T THINK, IN TERMS OF ANY

19   FACTUAL FINDINGS THAT THE DISCOVERY MASTER MADE, AND THERE'S

20   NOTHING CLEARLY ERRONEOUS ABOUT HIS LEGAL CONCLUSION; SO IN THE   10:15

21   ABSENCE OF THAT, MY TENTATIVE IS NOT TO DISTURB THAT FINDING.

22        WITH RESPECT TO THE OTHER DISCOVERY REQUESTS, I GUESS

23   I'M MORE INCLINED TO GRANT SOME LEAVE TO MATTEL TO OBTAIN SOME

24   ADDITIONAL DISCOVERY.  I FEEL THAT A COMBINATION OF EITHER THE

25   STAYS THAT WE IMPLEMENTED IN THE LATTER PART OF LAST YEAR,        10:15

EXHIBIT _____ 3 _____

PAGE _____ 17 _____

JANUARY 7, 2008                    BRYANT VS. MATTEL

```
 1   COUPLED WITH DELAYS -- AND I'M NOT TRYING TO SUGGEST THAT
 2   ANYONE DID ANYTHING WRONG HERE; I'M SIMPLY SUGGESTING THAT
 3   THERE APPEAR TO HAVE BEEN DELAYS IN THE PRODUCTION OF SOME
 4   DISCOVERY AND THE TIMING OF THE DISCLOSURES, AND THE TIMING OF
 5   THE PROVIDING OF THE DISCOVERY -- THAT MAY, IN FACT, WARRANT       10:1
 6   THE LEAVE THAT MATTEL IS SEEKING WITH RESPECT TO THAT
·7   ADDITIONAL DISCOVERY.
 8              AFTER WADING THROUGH THE MATERIALS SUBMITTED TO THE
 9   COURT, THAT'S MY INITIAL SENSE OF THIS FIRST MOTION.
10              SO LET ME HEAR FROM WHOMEVER WOULD LIKE TO SPEAK AT      10:1
11   THIS POINT.
12              MR. QUINN, IT'S YOUR MOTION.  YOU MAY PROCEED FIRST.
13              MR. QUINN:  THANK YOU, YOUR HONOR.
14              IF I COULD, PERHAPS, YOUR HONOR, BEGIN WITH THE
15   REQUEST FOR ADDITIONAL DISCOVERY OTHER THAN THE ADDITIONAL TIME    10:1
16   FOR THE BRYANT DEPOSITION WHERE THE COURT HAS INDICATED SOME
17   WILLINGNESS TO GIVE FAVORABLE CONSIDERATION TO THAT REQUEST.
18              WHEN YOU START ANY CIVIL LITIGATION, INCLUDING WHAT
19   WAS OBVIOUSLY FROM THE BEGINNING A BUSINESS LITIGATION CASE
20   WHICH WAS HOTLY CONTESTED, WHERE SUBSTANTIAL AMOUNTS WERE AT       10:1
21   ISSUE, IT'S UNDERSTANDABLE THAT STILL ONE WOULD TRY TO SET
22   LIMITS ON WHAT THE SCOPE OF DISCOVERY WOULD BE FROM THE OUTSET.
23   IT'S IN THE PARTIES' INTEREST, AND IT'S OBVIOUSLY IN THE
24   COURT'S INTEREST, AND I THINK UNDER THE FEDERAL RULES, THE
25   COURT OBVIOUSLY HAS A DUTY TO TRY TO DO THAT.  AND THE COURT       10:1
```

EXHIBIT _____3_____

PAGE_____/8_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   INITIALLY DID THAT AND SET A LIMIT OF 24 DEPOSITIONS PER SIDE.

2          AT THE TIME, WE RAISED AN ISSUE THAT WE DIDN'T THINK

3   THAT WAS GOING TO BE ENOUGH, BUT, WELL ENOUGH, THE COURT SAID,

4   LET'S SEE WHAT YOU CAN DO; I DON'T WANT TO SAY THOSE ARE SOFT

5   NUMBERS, BUT LET'S SEE WHAT CAN BE DONE.                    10:1

6          IF WE STAND BACK AND LOOK AT WHAT THIS CASE IS NOW

7   AND WHAT IT'S BECOME, THERE ARE THREE SORT OF MAJOR PARTS TO

8   IT.  THE FIRST PART, THE PHASE ONE, WHAT HAS NOW BEEN SET UP

9   FOR THE PHASE ONE TRIAL, RELATES TO THE ORIGIN OF BRATZ AND

10  CLAIMS FOR DAMAGES OR RESTITUTION OR DISGORGEMENT ARISING OUT   10:1

11  OF THAT, WHICH, IT'S ALLEGED, RUN IN THE BILLIONS OF DOLLARS.

12  THAT'S SORT OF THE FIRST THIRD.

13         THE SECOND THIRD, WE HAVE MGA'S COUNTERCLAIM, WHICH

14  REALLY ADDRESSES A WHOLE HOST OF DIFFERENT KINDS OF ISSUES IN

15  CONDUCT, ADVERTISING, COMMUNICATIONS WITH LICENSING BODIES,   10:1

16  WHICH PUTS IN ISSUE, BY MGA'S ACCOUNT, SOME 200 DIFFERENT

17  PRODUCTS AND CLAIMS WHICH MGA SAYS AMOUNT TO BILLIONS OF

18  DOLLARS WORTH OF CLAIMS; SO THAT'S SORT OF THE SECOND THIRD.

19         THE FINAL THIRD IS THE CLAIM THAT -- WHEN WE --

20  MATTEL AMENDED ITS COUNTERCLAIM BASED ON EVENTS THAT HAD   10:1

21  HAPPENED OR HAD COME TO LIGHT SINCE THE CASE WAS ORIGINALLY

22  FILED, THE TRADE THEFT CLAIMS, THE TRADE THEFT CLAIMS RELATING

23  TO EVENTS IN MEXICO, WHERE, IN FACT, THERE HAD BEEN ARRESTS AND

24  CRIMINAL PROCEEDINGS SIMILARLY IN CANADA, AND WE ALLEGED

25  SIMILAR CONDUCT IN THE UNITED STATES, WHICH RAISED A WHOLE HOST   10:1

EXHIBIT _____3_____

1   OF OTHER ISSUES, MOST OF WHICH ARE, PERHAPS, UNRELATED TO BRATZ

2   ITSELF BUT ARE TRADE SECRET THEFT ISSUES.

3       EACH OF THOSE THREE PARTS OF THIS CASE, YOUR HONOR,

4   THEMSELVES, ARE VERY, VERY SUBSTANTIAL CASES WHERE VERY, VERY

5   SUBSTANTIAL AMOUNTS OF MONEY ARE ALLEGED TO BE AT ISSUE; SO WE

6   STARTED OUT WITH SORT OF A HORSEBACK ASSUMPTION:  LET'S SEE IF

7   WE CAN GET IT DONE IN 24 DEPOSITIONS A SIDE.

8       IN THIS CASE, WHAT THAT BOILS DOWN TO, THEN, IS, FOR

9   EACH OF THOSE THREE MAJOR PARTS OF THIS CASE, THAT'S EIGHT

10  DEPOSITIONS PER CASE.  AND I SUBMIT, YOUR HONOR, THAT

11  CONSCIENTIOUS LAWYERS, TRYING TO DO A GOOD JOB AND USING THE

12  TOOLS AVAILABLE UNDER MODERN FEDERAL DISCOVERY, SIMPLY COULD

13  NOT ADEQUATELY PREPARE ANY OF THOSE CASES WITH SIMPLY EIGHT

14  DEPOSITIONS.

15      IF THE COURT SAID, REALLY, I'M NOT INCLINED TO BUDGE

16  FROM THAT, WE'D HAVE A VERY, VERY DIFFERENT KIND OF TRIAL, I

17  SUGGEST, THAN WHAT WE USUALLY HAVE IN FEDERAL COURT TODAY.  IT

18  REALLY WOULD BE WITHOUT THE BENEFIT OF THE FULL EXPLORATION OF

19  THE ISSUES UNDER MODERN DISCOVERY RULES; SO I THINK IT'S PRETTY

20  CLEAR THAT THERE DOES NEED TO BE SOME RELIEF FROM THOSE LIMITS.

21      AND WHEN WE LOOK AT MGA'S EX-PARTE APPLICATION, I

22  THINK WE'RE GOING TO SEE -- ALTHOUGH IT DOES RAISE SOME

23  SLIGHTLY DIFFERENT ISSUES, I THINK MGA IS ALSO FEELING THE

24  PRESSURE HERE OF TRYING TO GET DONE EVERYTHING THAT THEY

25  BELIEVE NEEDS TO BE DONE IN ORDER TO PROPERLY PREPARE THIS

EXHIBIT ____3____

1  CASE.

2      THE COURT:  BUT DISCUSS FOR A MOMENT, IF YOU WOULD,

3  THE IMPACT YOU SEE THIS HAVING ON THE COURT'S CALENDAR IN THIS

4  MATTER IN TERMS OF SCHEDULING OF THE TRIAL.  BECAUSE WE WENT

5  DOWN THIS ROAD A LITTLE BIT AT THE END OF LAST YEAR, AND IT WAS     10:2(

6  REALLY APPARENT THAT IF I BUDGE FROM THE TRIAL DATES, I OPEN UP

7  A PANDORA'S BOX IN TERMS OF SCHEDULING ISSUES.  I MEAN, A

8  NUMBER OF PEOPLE ARE INVOLVED IN THIS THING.  THE IDEA OF

9  TRYING TO COME BACK TOGETHER ON A DATE THAT WORKS IS GOING TO

10  BE HARD.                                                           10:2:

11      MR. QUINN:  RIGHT.  AND WE ARE NOT ASKING THE COURT

12  TO CHANGE ANY OF THE SCHEDULE IN ANY RESPECT.

13      THE COURT:  BUT I DON'T WANT TO BE UNREALISTIC

14  EITHER.  I MEAN, IF I DO WHAT YOU'RE ASKING IN TERMS OF

15  DISCOVERY AND IF I DO WHAT THE DEFENSE IS ASKING IN TERMS OF       10:2:

16  THEIR EX-PARTE APPLICATION, I HAVE REAL CONCERNS ABOUT THE

17  CONSEQUENCES THAT WILL HAVE FOR THE DISCOVERY CUTOFF DATE WHICH

18  IS LATER THIS MONTH.

19      MR. QUINN:  LAWYERS WOULD BE WORKING VERY HARD.  MOST

20  OF THE DEPOSITIONS THAT WE'VE IDENTIFIED, THAT WE'RE ASKING        10:2:

21  FOR, YOUR HONOR, RELATE TO PHASE TWO; SO THAT DISCOVERY CUTOFF

22  DATE RELATES ONLY TO PHASE ONE.  FEET TO THE FIRE, GUN TO THE

23  HEAD, IT'S CONCEIVABLE THERE WOULD BE DOUBLE -- TRIPLE-TRACK

24  DEPOSITIONS.

25      BUT IF WE NEED TO STICK WITH THE CURRENT DATES -- AND          10:2:

EXHIBIT _____ 3

PAGE _____ 21

 1   WE'RE MINDFUL OF WHAT THE COURT HAS SAID BEFORE ABOUT DATES,

 2   ALTHOUGH I WILL POINT OUT THAT WHEN WE HAD THE STAY, WE DID

 3   LOSE A WEEK.  THE COURT STAYED MATTERS FOR -- I THINK IT WAS A

 4   HARD STAY OF TWO WEEKS AND A SOFT STAY OF A WEEK, WHATEVER IT

 5   WAS; AND THEN THE COURT WENT BACK AND SLIPPED THE DISCOVERY

 6   DEADLINE TWO WEEKS, AND WE LOST ONE WEEK THERE.  SO MAYBE THE

 7   FACT THAT I'M EVEN BRINGING THAT UP SUGGESTS THAT THERE'S

 8   SOMETHING TO WHAT THE COURT SAYS.

 9        AND I DON'T MEAN TO SUGGEST THAT IT WOULDN'T BE A

10   DAUNTING SCHEDULE, BUT MY EXPERIENCE IS, LAWYERS, WHEN GIVEN

11   DEADLINES -- AND THERE'S A CERTAIN AMOUNT OF WORK THAT NEEDS TO

12   BE DONE, YOU WORK TOWARD THOSE DEADLINES, AND TO BE SURE, WE'D

13   HAVE TO WORK VERY HARD, BUT I THINK IT COULD BE DONE.

14        MOST OF THE DEPOSITIONS RELATE TO PHASE TWO MATTERS.

15   SEVERAL OF THEM, YOUR HONOR, ARE PURELY HOUSEKEEPING ISSUES.

16   FOR EXAMPLE, CARTER BRYANT SAYS HIS INSPIRATION FOR THE BRATZ

17   DOLLS WAS HE WALKED BY KICKAPOO HIGH SCHOOL IN A SMALL TOWN IN

18   MISSOURI ONE DAY, ON THE WAY HOME FROM WORK, OR DROVE BY IT,

19   AND HE SAW THE KIDS AND THEY HAD THIS SORT OF ETHNIC KIND OF

20   BRATTY ATTIRE AND BEHAVIOR THAT HE SAYS WAS THE INSPIRATION FOR

21   HIS DOLL.

22        WELL, WE'VE GOTTEN THE YEARBOOK FROM KICKAPOO HIGH

23   SCHOOL THAT YEAR, SO WE CAN SEE HOW THE KIDS DRESS, WE CAN SEE

24   WHAT THEY LOOK LIKE, AND WE CAN SEE HOW URBAN THEY WERE.  SO WE

25   ASKED MGA, WILL YOU STIPULATE THAT THIS IS AN AUTHENTIC COPY OF

EXHIBIT _____3_____

 1    THE YEARBOOK?  WE MADE THIS REQUEST A MONTH AGO.  WE HAVEN'T

 2    HEARD AN ANSWER ON THAT.  MAYBE THEY ULTIMATELY WILL; MAYBE

 3    THEY WON'T.  BUT ONE DEPOSITION ON OUR LIST IS THE DEPOSITION

 4    OF A DOCUMENT CUSTODIAN OF KICKAPOO HIGH SCHOOL, THE SOLE

 5    PURPOSE OF WHICH, YOUR HONOR, IS TO ESTABLISH THAT THIS IS AN           10:2:

 6    AUTHENTIC COPY OF THE YEARBOOK.

 7         AND I DON'T WANT TO SUGGEST THAT THIS KIND OF THING

 8    ONLY GOES ONE WAY, YOUR HONOR.  THIS IS A CASE WHERE EVERY

 9    FACT, IT SEEMS, IS DISPUTED.  THEY CHIDE US IN THEIR PAPERS FOR

10    TAKING THE DEPOSITIONS OF REPORTERS WHO QUOTE MR. LARIAN, THE          10:2:

11    FOUNDER AND CEO OF MGA, GIVING AN ACCOUNT OF THE ORIGIN OF THE

12    BRATZ DOLL WHERE HE SAYS, 'I HAD A CONTEST, AN IDEA CONTEST,

13    AMONG MY EMPLOYEES, AND THIS WAS THE WINNING SUBMISSION.'

14         WE TOOK MR. LARIAN'S DEPOSITION AND SAID, 'IS THAT

15    TRUE?'  COULDN'T GET A STRAIGHT ANSWER.  ASKED FOR A                   10:2:

16    STIPULATION.  COULDN'T GET A STRAIGHT ANSWER.  SO WE TOOK THE

17    DEPOSITION OF THE REPORTER.  THE SOLE PURPOSE OF THAT

18    DEPOSITION WAS, 'IS THIS WHAT MR. LARIAN TOLD YOU?'  WE HAD TO

19    DO THAT, OBVIOUSLY, IF WE'RE GOING TO HAVE THE EVIDENCE AT

20    TRIAL.  AND ACTUALLY, THEY THEN CROSS-EXAMINED THE REPORTER FOR        10:2:

21    MUCH LONGER -- I MEAN, I THINK OUR EXAMINATION WAS A HALF HOUR.

22    THEY THEN CROSS-EXAMINED THE REPORTER FOR MUCH LONGER.

23         SIMILARLY, THERE WAS ANOTHER REPORTER -- THERE'S BEEN

24    VARIOUS ACCOUNTS IN THE PRESS WHERE MR. LARIAN HAS BEEN QUOTED

25    ABOUT THE ORIGIN OF BRATZ -- THERE WAS A SIMILAR DEPOSITION            10:2:

EXHIBIT _____3_____

PAGE _____23_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

```
 1    WITH ANOTHER REPORTER.  THE COURT WILL SEE ON THIS LIST TWO

 2    OTHER REPORTERS WHO WE'D LIKE TO DEPOSE.

 3         THERE AREN'T REPORTER SHIELD PROBLEMS.  IT'S JUST,

 4    'MADAM REPORTER, IS THIS WHAT MR. LARIAN TOLD YOU,' OR 'IS THIS

 5    WHAT THE MGA REPRESENTATIVE TOLD YOU.'                          10:2

 6         THE COURT:  WHY DON'T YOU ADDRESS THE ISSUE THAT I'M

 7    DISINCLINED TO GRANT, AND THAT'S THE CARTER BRYANT DEPOSITION.

 8         MR. QUINN:  OKAY.

 9         A FOOTNOTE, YOUR HONOR, ON THE INTERROGATORIES --

10         THE COURT:  YES.

11         MR. QUINN:  -- WE'RE LIMITED TO 50.  THESE RELATE TO

12    CONTENTION INTERROGATORIES SERVED LAST MARCH; SO IT'S GARDEN

13    VARIETY, STATE ALL FACTS, IDENTIFY ALL WITNESSES.

14         THE COURT:  I'M AWARE OF THAT.

15         MR. QUINN:  NOW, MR. BRYANT, AGAIN, HE'S               10:2

16    IDENTIFIED -- IF WE GO BACK TO THE TRI-PART DIVISION OF THE

17    CASE --

18         THE COURT:  AGAIN, DON'T FOCUS ON THE NEED, BECAUSE

19    I'M PROBABLY WITH YOU ON THE NEED TO DO SO.

20         MR. QUINN:  YOUR HONOR, WITH RESPECT TO               10:2

21    JUDGE INFANTE, I THINK HIS RULING THAT NINE ADDITIONAL HOURS

22    ARE ADEQUATE TO PROPERLY EXPLORE MR. BRYANT'S KNOWLEDGE WITH

23    RESPECT TO THE OTHER TWO-THIRDS OF THE CASE IS SIMPLY -- I

24    BELIEVE THAT IS ERRONEOUS, YOUR HONOR.

25         THE COURT:  AS A MATTER OF LAW?                       10:2
```

EXHIBIT _____3_____

PAGE _____24_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1          MR. QUINN:  I WOULD SAY SO.

2          THE COURT:  HOW?

3          MR. QUINN:  THERE ARE SOME -- I MEAN, WHAT ARE THE

4    FACTS THAT WE KNOW?

5          THERE ARE SOME 200 PRODUCTS, BRATZ PRODUCTS, AT          10:2

6    ISSUE, MGA SAYS.  THEY SAY THAT HE'S ONE OF TWO PEOPLE WHO HAS

7    UNIQUE KNOWLEDGE AS TO ALL OF THOSE PRODUCTS.  JUST ON THE FACE

8    OF IT, YOUR HONOR, NO REASONABLE LAWYER, I SUBMIT, COULD

9    REASONABLY CONCLUDE THAT THAT'S ADEQUATE TIME IN WHICH TO

10   EXAMINE HIM ON THAT SCOPE OF MATERIAL.                        10:2

11         THE COURT:  I UNDERSTAND YOU DISAGREE THAT THAT'S NOT

12   ENOUGH TIME.

13         MR. QUINN:  RIGHT.

14         THE COURT:  BUT AS A MATTER OF LAW, WHEN

15   JUDGE INFANTE LOOKED AT THIS, HE HEARD, PRESUMABLY, ALL OF     10:2

16   THESE ARGUMENTS, AND HE CONCLUDED THAT IT WAS.

17         I DON'T KNOW HOW I, AS A REVIEWING COURT, AT LEAST

18   WITH RESPECT TO THIS ISSUE, CAN SAY THAT AS A MATTER OF LAW,

19   THAT THAT WAS AN INCORRECT OR LEGALLY UNSOUND FINDING.

20         MR. QUINN:  IT WOULD BE MY UNDERSTANDING, YOUR HONOR,    10:2

21   THAT AT SOME POINT, IF A --

22         THE COURT:  CERTAINLY, AT SOME POINT.

23         MR. QUINN:  I WOULD REFER THE COURT BACK TO THE

24   HEARING WE HAD LAST SUMMER WHERE JUDGE INFANTE HAD ENTERED AN

25   ORDER, BEFORE THE SKADDEN ARPS FIRM WAS INVOLVED AND THE       10:2

EXHIBIT _____ 3 _____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   O'MELVENY FIRM WAS INVOLVED, REQUIRING MGA TO PRODUCE DOCUMENTS

2   BY A CERTAIN DATE.  I THINK IT WAS THE END OF JUNE OR THE FIRST

3   OF JULY, AND THEY WERE IN HERE SEEKING RELIEF FROM THAT, SAYING

4   THAT 'WE CAN'T DO IT.'

5          AT THAT TIME, THIS COURT LOOKED AT THAT AND SAID,                    10:2

6   'WELL, I THINK SOME ADDITIONAL TIME IS APPROPRIATE,' AND I

7   BELIEVE GAVE THEM AN ADDITIONAL TWO WEEKS OR 30 DAYS.  I

8   FRANKLY DON'T RECALL WHAT IT WAS.  WE DIDN'T TRIP OVER THE

9   ISSUE ABOUT WHETHER THE THEN-DEADLINE OF JUNE 30TH OR JULY 1ST

10  WAS A CLEARLY ERRONEOUS DEADLINE OR NOT.  IT SEEMED LIKE THE             10:2

11  APPROPRIATE THING TO DO TO THE COURT, AND THE COURT GRANTED

12  SOME ADDITIONAL TIME.

13         I MEAN, I THINK THIS IS AT LEAST A COMPELLING CASE,

14  GIVEN THE CENTRALITY OF THIS WITNESS TO ALL OF THOSE ISSUES ON

15  THE OTHER TWO-THIRDS OF THE CASE, YOUR HONOR.                            10:2

16         I GUESS THAT'S THE BEST I CAN RESPOND ON THAT.

17         THE COURT:  VERY WELL.  THANK YOU, MR. QUINN.

18         MR. NOLAN?

19         MR. NOLAN:  YOUR HONOR, WOULD YOU PREFER TO HEAR FROM

20  CARTER BRYANT COUNSEL WITH RESPECT TO THAT FIRST ISSUE?                  10:2

21         THE COURT:  I WILL LEAVE THAT UP TO YOU.

22         MR. NOLAN:  WHY DON'T WE DO THAT, AND THEN I'LL

23  ADDRESS THE SECOND PART.

24         THE COURT:  VERY WELL.

25         MS. ANDERSON:  THANK YOU, YOUR HONOR.  JUST BRIEFLY.              10:2

EXHIBIT _____3_____

1    WE FULLY AGREE WITH THE COURT.  AND THE REASON THAT

2    MATTEL'S OPENING MOTION, IN WHICH IT SOUGHT ADDITIONAL TIME

3    WITH MR. BRYANT, DIDN'T ADDRESS THE GOVERNING STANDARD THAT'S

4    BEFORE YOUR HONOR IN TERMS OF REVIEWING JUDGE INFANTE'S RULINGS

5    IS BECAUSE THEY COULDN'T.                                        10:2:

6         THE COURT:  ADDRESS THIS LAST POINT THAT MR. QUINN

7    MAKES, THAT THIS KIND OF ALMOST INTERNAL CONSISTENCY IF THE

8    COURT DID GRANT A FEW EXTRA WEEKS BACK LAST SUMMER.  I

9    CERTAINLY DON'T HAVE THAT BEFORE ME RIGHT NOW.  BUT I'M

10   STRUGGLING TO COME UP WITH A LEGAL JUSTIFICATION FOR DOING SO    10:2

11   IN LIGHT OF THIS STANDARD.

12        MS. ANDERSON:  YOUR HONOR, FIRST OF ALL, I DON'T HAVE

13   ANY PAPERS BEFORE ME ABOUT WHATEVER THIS PRIOR RULING WAS, AND

14   I THINK, EVEN IF THE COURT DID GO SOMEHOW BEYOND ITS AMBIT IN A

15   PRIOR RULING, WHICH I DO NOT KNOW EVER HAPPENED, THAT DOESN'T    10:2

16   JUSTIFY THEN COMPOUNDING THE PROBLEM AND DOING IT HERE.

17        THE COURT:  TWO WRONGS DON'T MAKE A RIGHT.

18        MS. ANDERSON:  INDEED.

19        AND I SUBMIT, YOUR HONOR, I KNOW THAT MATTEL HAS

20   PLENTY OF ARGUMENTS WHY THEY BELIEVE MR. BRYANT SHOULD SIT FOR   10:2

21   THREE ADDITIONAL DAYS OF DEPOSITION AFTER HAVING ALREADY SAT

22   FOR THREE.  BUT I SUBMIT, THE FINDINGS THAT JUDGE INFANTE MADE,

23   INCLUDING THE FACTUAL FINDING ABOUT HIS ASSESSMENT OF WHAT THEY

24   WERE GOING TO DELVE INTO IN THIS DEPO, THIS IS ALL REHASHING OF

25   STUFF THEY'VE HAD AMPLE OPPORTUNITY TO COVER.  NINE HOURS IS A   10:3

EXHIBIT _____ 3

PAGE _____ 27
BRYANT VS. MATTEL

JANUARY 7, 2008

1   LONG TIME THAT THEY WILL HAVE WITH MY CLIENT, YOUR HONOR.

2            THE COURT:  THANK YOU, COUNSEL.

3            MS. ANDERSON:  THANK YOU.

4            THE COURT:  MR. NOLAN?

5            MR. NOLAN:  THANK YOU.                          10:3

6            YOUR HONOR, I WOULD BE REMISS IF I DID NOT START OUT

7   BY SAYING THAT LAST EVENING, ONE OF THE LAST THINGS I READ IN

8   PREPARING FOR THE HEARING THIS MORNING WAS THE OCTOBER 31ST

9   TRANSCRIPT.  WHEN I WAS HERE, I WAS JUST KIND OF NEW TO THE

10  CASE AND SAYING WE NEEDED JUST A BRIEF STAY UNTIL JANUARY 15TH   10:3

11  FOR THE DEPOSITIONS.  AND MR. QUINN PROPERLY POINTED OUT THAT

12  WE'RE A BIG FIRM; ALL FIRMS KIND OF PARACHUTE IN; BASICALLY,

13  SUCK IT UP AND GET READY.

14           I HAVE TO TELL YOU, YOUR HONOR, THAT WE HAVE DONE

15  THAT, AND THE NOTION THAT THERE'S BEEN ANY DELAY, I THINK, IS    10:3

16  JUST BELIED BY THE ACTUAL FACTS.  IF I COULD JUST TELL YOU A

17  LITTLE BIT ABOUT WHAT WE'VE BEEN DOING TO GET THIS CASE READY,

18  AND THEN COME UP WITH A PROPOSAL FOR YOU WITH RESPECT TO THE

19  DISCOVERY REQUEST.

20           FROM THE BEGINNING OF TIME IN THIS CASE -- AND QUINN    10:3

21  HAS BEEN THERE FOREVER -- THERE'S BEEN 4,600 REQUESTS FOR

22  ADMISSIONS; 2,865 REQUESTS FOR PRODUCTION; 131 30(B)(6) TOPICS;

23  50-PLUS THIRD-PARTY SUBPOENAS; 63 INTERROGATORIES.  WE'VE

24  PRODUCED, MGA HAS PRODUCED, YOUR HONOR, ABOUT 3.8 MILLION.

25           INTERESTINGLY, QUINN EMANUEL, WHO'S BEEN IN THIS CASE    10:3

EXHIBIT _____3_____

1    FOR FOUR YEARS, JUST RECENTLY, ON JANUARY 2ND AND JANUARY 4TH,

2    DOUBLED THEIR PRODUCTION, DROPPED ON US ABOUT A HALF MILLION

3    PAGES OF DOCUMENTS, WITHOUT ANY EXPLANATION AS TO WHY THESE

4    DOCUMENTS WERE NOT PRODUCED.  WE'RE STILL GOING THROUGH THEM.

5            SINCE WE'VE COME INTO THE CASE, SINCE SKADDEN CAME

6    INTO THE CASE AND MR. QUINN DID NOT WANT TO GIVE THE RELIEF

7    THAT WE REQUESTED, WE WENT TO THE MAT, AS DID MGA, AT ENORMOUS

8    EXPENSE.  WE BROUGHT IN ALMOST 50 LAWYERS TO DEAL WITH

9    OUTSTANDING ISSUES.  WE'VE ANSWERED 2,584 REQUESTS FOR

10   ADMISSIONS; WE'VE ANSWERED 101 INTERROGATORIES; WE'VE PRODUCED

11   1.6 MILLION PAGES IN DOCUMENTS.  WE HAD TO FILE 17 OPPOSITION

12   BRIEFS TO MATTEL.

13           IF THERE'S ANY NOTION HERE, YOUR HONOR, THAT WE

14   DISAGREE WITH POSITIONS IN DISCOVERY, WITH ALL DUE RESPECT,

15   MATTEL HAS WRITTEN THE BOOK ON THIS.

16           THE COURT:  THAT'S WHY, MR. NOLAN, I WAS VERY CAREFUL

17   IN MY INITIAL REMARKS THAT I AM NOT SUGGESTING ANY FAULT

18   WHATSOEVER IN YOUR PRODUCTION PATTERN SINCE COMING INTO THE

19   CASE.  I'VE READ WHAT YOU'VE PRODUCED, AND I HAVE A SENSE THAT

20   YOU AND YOUR FIRM HAVE WORKED AS HARD AS HUMANLY POSSIBLE TO DO

21   WHAT YOU CAN.

22           I GUESS MY TENTATIVE STEMS MORE FROM WHAT I PERCEIVE

23   AS THE GOOD CAUSE SHOWN FOR SOME ADDITIONAL DISCOVERY IN LIGHT

24   OF WHAT IS BEING PRODUCED, AND THE DELAY IN THE SENSE THAT IT'S

25   BEING PRODUCED NOW AS OPPOSED TO EARLIER.  AND I'M NOT

EXHIBIT _____3_____

PAGE _____29_____

```
 1   SUGGESTING THAT IT NECESSARILY SHOULD HAVE BEEN PRODUCED

 2   EARLIER OR THAT YOU COULD HAVE PRODUCED IT EARLIER.  IT'S JUST

 3   A SIMPLE FACT THAT THERE ARE MATERIAL THINGS COMING TO LIGHT

 4   NOW THAT SEEM TO THE COURT TO PERHAPS JUSTIFY SOME ADDITIONAL

 5   DISCOVERY; SOME ADDITIONAL DEPOSITIONS, SOME ADDITIONAL            10:3

 6   INTERROGATORIES, ET CETERA.

 7         SO YOU DON'T NEED TO CONVINCE THE COURT, BECAUSE YOU

 8   HAVE ALREADY CONVINCED THE COURT THAT YOU'VE BEEN WORKING

 9   EXTRAORDINARILY HARD AND YOU'VE BEEN DOING ALL THAT YOU CAN.

10   THE DISCOVERY IN THIS CASE IS ON A SCALE THAT I PERSONALLY HAVE   10:3

11   NEVER SEEN IN MY CAREER; SO THAT'S ESTABLISHED.

12         MR. NOLAN:  OKAY.  THANK YOU VERY MUCH, YOUR HONOR.

13         I JUST NEEDED TO SAY THAT FOR THE PEOPLE WHO HAVE

14   BEEN WORKING AROUND THE CLOCK.  I PROMISED THEM I WOULD PUT

15   THAT PITCH IN.

16         THE COURT:  OKAY.  FAIR ENOUGH.

17         MR. NOLAN:  HERE'S THE POINT, THOUGH, YOUR HONOR.  IF

18   YOU READ THEIR PAPERS CAREFULLY, I WOULD RESPECTFULLY DISAGREE.

19   I DON'T BELIEVE THAT THEY HAVE MADE A GOOD FAITH SHOWING THAT

20   ADDITIONAL DISCOVERY IS WARRANTED OR THAT THEY'RE SURPRISED BY    10:3

21   THIS OR THAT THEY WERE PREJUDICED IN ANY WAY BY ANY STAY OR

22   SOFT STAY OR CONTINUANCE FOR A BRIEF PERIOD OF TIME.

23         I THINK THE FACTS ARE QUITE CLEAR AND QUITE DRAMATIC,

24   AND THAT IS, AT A TIME -- TO TAKE YOU BACK TO A TIME WHEN WE

25   WERE NOT HERE; SO THE WORLD WAS AHEAD OF YOU ALL WHEN YOU SET     10:3
```

EXHIBIT ____3____

PAGE ____30____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1  THE SCHEDULES. MATTEL CAME IN ON THEIR DISCLOSURES IN JANUARY

2  OF 2007 AND IDENTIFIED SOME 155 FACTUAL WITNESSES, 70 OF WHICH

3  THEY WANTED TO TAKE A PARTICULAR INTEREST IN. THEY PROPOSED AT

4  THAT TIME, WITH FULL KNOWLEDGE OF ALL OF THE ISSUES IN THIS

5  CASE, AND HAVING BOTH DISCLOSURES IN FRONT OF THEM, A TOTAL OF

6  50 DEPOSITIONS.

7       NOW, I READ THE TRANSCRIPT, YOUR HONOR, AND WITH ALL

8  DUE RESPECT, I DON'T THINK YOU AND YOUR CLERK -- BECAUSE THE

9  TRANSCRIPT REFLECTS THAT YOU CONSULTED WITH YOUR CLERK WITH

10  RESPECT TO THIS, AND YOU CAME OUT WITH A NUMBER OF 24. YOU

11  NEVER SAID THAT WAS JUST A HORSEBACK KIND OF ANALYSIS. YOU

12  SAID THAT THEIR NUMBERS WERE DISCONCERTING TO YOU. AND I

13  BELIEVE THE REASON WHY YOU SAID THAT IS BECAUSE, YOUR HONOR,

14  THAT ALTHOUGH THIS IS A LARGE CASE, THIS ISN'T THE LARGEST CASE

15  AROUND.

16       I MEAN, MY GOSH, THIS CASE AND THE POSITIONS THAT ARE

17  NOW BEING TAKEN BY MATTEL, WHERE THEY NEED 50 MORE ON TOP OF

18  THE 22 DEPOSITIONS THAT THEY'VE TAKEN, WHICH, WHEN YOU THINK

19  ABOUT IT, JUDGE, IS 22 MORE THAN THEY ASKED YOU FOR AT THE TIME

20  OF THE DISCLOSURE, WITHOUT A LOT OF NEW INFORMATION AVAILABLE.

21  I THINK, OF THE 50 WITNESSES THAT THEY'RE ASKING PERMISSION TO

22  TAKE, ONLY SIX NAMES ARE NEW. YOU DO THE MATH. THE OTHERS

23  WERE ALL IN THE DISCLOSURES.

24       THE COURT: WHAT ABOUT THOSE SIX NEW WITNESSES?

25       MR. NOLAN: IF THOSE SIX NEW ADDITIONAL WITNESSES,

EXHIBIT _____ 3

PAGE _____ 3 1

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   YOUR HONOR, RELATE TO PHASE ONE, I'M WILLING TO WORK SOMETHING

2   OUT WITH THEM IN THAT REGARD.  I'M NOT TRYING TO CUT THEM OFF

3   AT THE KNEES AND SAY, 'LISTEN, TOUGH LUCK, YOU BLEW 24.'  HE'S

4   TALKING ABOUT HE HAD TO TAKE THE DEPOSITION OF A REPORTER TO

5   JUSTIFY SOMETHING.  I WASN'T INVOLVED IN THAT.  I GUESS THE          10:3

6   SOFT ISSUE HE DIDN'T WANT TO GO TO IS, WHY DID THEY TAKE

7   CARTER BRYANT'S NIECE TO TALK ABOUT THE COMPUTER THAT WAS GIVEN

8   TO HER AS A GIFT?  BUT THAT'S ALL IN THE BACK.

9        WHAT I'M INTERESTED IN, YOUR HONOR, IS TRYING THIS

10  CASE ON A SCHEDULE THAT YOU TOLD US TO GET READY FOR.              10:3

11       THE COURT:  I AM AS WELL.

12       MR. NOLAN:  MAY I JUST MAKE A -- BECAUSE I THINK,

13  FRANKLY, THINKING ABOUT ALL OF THIS LAST NIGHT, I HAVE A

14  PROPOSAL THAT, I THINK, ALLOWS THIS TO MAKES SENSE.

15       THE COURT:  LET ME HEAR IT.                                   10:3

16       MR. NOLAN:  AND THIS IS NOT BEHIND CURTAIN ONE OR

17  CURTAIN TWO OR CURTAIN THREE.

18       HERE'S WHAT I THINK MAKES ABSOLUTE SENSE, HAVING DONE

19  THIS A LITTLE BIT MYSELF IN BIG CASES BEFORE:

20       MOST OF WHAT THEY'RE ASKING FOR IS PHASE TWO STUFF.          10:3

21  RIGHT NOW, IN FRONT OF US, WE'RE STARING AT A HARD CUTOFF OF

22  JANUARY 28TH.  AND WE'LL LIVE WITH IT, JUDGE.  WE CAN LIVE WITH

23  IT, IF WE GET COOPERATION FROM MATTEL.  AND I'LL DEAL WITH THE

24  EX-PARTE APPLICATIONS IN JUST A MINUTE, BUT HERE'S MY PROPOSAL,

25  YOUR HONOR:                                                        10:3

EXHIBIT ____3____

PAGE ____32____

| 1 | THAT THE PARTIES FOCUS ON PHASE ONE DISCOVERY. IF |
| 2 | JOHN QUINN OR MIKE ZELLER COMES TO ME AND SAYS, 'WE NEED THREE |
| 3 | MORE WITNESSES FOR DEPOSITION FOR PHASE ONE ISSUES,' I'M FINE. |
| 4 | WE MADE THAT PROPOSAL. BUT IT'S ALWAYS 50 OR NOTHING. |
| 5 | LET'S FOCUS AND NARROW THE ISSUES TO BRING THIS CASE |
| 6 | HOME FOR YOU, YOUR HONOR, ON THE SCHEDULE THAT YOU HAVE SET AND |
| 7 | EVERYBODY HAS BEEN LIVING UP TO. |
| 8 | LET'S TALK ABOUT TODAY SAYING TO THE PARTIES, |
| 9 | 'COMPLETE DEPOSITIONS BY JANUARY 28TH. IF YOU HAVE, HOWEVER, |
| 10 | SCHEDULING ISSUES' -- BECAUSE ONE, FOR INSTANCE, MATT |
| 11 | (UNINTELLIGIBLE) IS OUT OF TOWN. THEY WANT ISAAC LARIAN ONCE |
| 12 | MORE, BUT ISAAC HAS TO GO TO THE HONG KONG TOY FAIR IN NEW |
| 13 | YORK; SO THERE'S A SCHEDULING ISSUE WITH RESPECT TO HIM THAT WE |
| 14 | MIGHT NOT BE ABLE TO GET HIM IN BEFORE JANUARY 28TH. LET'S |
| 15 | WORK TOGETHER TO IDENTIFY -- |
| 16 | THE COURT: SLOW DOWN. |
| 17 | MR. NOLAN: THERE CAN BE A LITTLE BIT OF WIGGLE ROOM |
| 18 | ON THE 28TH, BUT WE TRY TO GET EVERYTHING IN BY THE 28TH. |
| 19 | WE'LL DOUBLE TRACK; WE'LL TRIPLE TRACK. I MEAN, EVERYBODY HAS |
| 20 | TOO MANY LAWYERS ON THIS CASE. WE CAN DO THAT. |
| 21 | THE COURT: SO ARE YOU SAYING THAT YOU WOULD BE |
| 22 | WILLING TO WAIVE ANY OBJECTIONS OR YOU'D STIPULATE TO AN |
| 23 | INCREASE IN THE NUMBER OF DEPOSITIONS? |
| 24 | MR. NOLAN: FOR A VERY LIMITED NUMBER. |
| 25 | THE COURT: FOR PHASE ONE. EXHIBIT _____ 3 |

PAGE _____ 33

1          MR. NOLAN:  IF THEY'RE RELATED TO PHASE ONE.

2          WHY SHOULD WE, RIGHT NOW, JUDGE, WITH JUDGE INFANTE

3   BURIED, WITH YOUR HONOR -- I MEAN, THE ELECTRONIC FILING

4   SYSTEM -- I'M AFRAID WE'RE GOING TO BURN THE SYSTEM WITH THE

5   NUMBER OF DOCUMENTS THAT ARE BEING FILED IN THIS CASE.          10:3

6          THE COURT:  SOMEONE BROKE THE PLASTIC COURTESY BOX

7   THAT WE HAD IN THE BACK.

8          MR. NOLAN:  THAT WAS QUINN EMANUEL.

9          THE COURT:  YOU'RE SURE IT WAS?

10         MR. NOLAN:  I'M POSITIVE; THEY FILED MORE PAPERS THAN   10:3

11  ANYBODY ELSE.

12         THE COURT:  SOMEBODY BROKE IT.

13         MR. NOLAN:  BUT TO BE SERIOUS, YOUR HONOR -- LET'S

14  COME BACK TO MY OTHER PROPOSAL THAT WE FOCUS ON PHASE ONE.

15         THERE ARE HEARINGS THAT ARE CURRENTLY SCHEDULED FOR    10:3

16  JUDGE INFANTE ON FEBRUARY 8TH.  THEY'RE ALL, EXCEPT FOR ONE,

17  COMPLETELY BRIEFED.  THEY'RE ALL READY TO GO.  JUDGE INFANTE

18  HAS BEEN DOING THE LORD'S WORK.  IT IS UNBELIEVABLE THE AMOUNT

19  OF WORK THAT HE HAS BEEN DOING IN THIS CASE, ON TOP OF ALL OF

20  HIS OTHER CLIENTS THAT HE HAS COMMITTED.  AND EVEN KNOWING THAT  10:3

21  WE HAVE JANUARY 28TH COMING UP, HE CAN'T HEAR SOME VERY

22  SIGNIFICANT MOTIONS UNTIL FEBRUARY 8TH.

23         THE EXPERT REPORTS IN THIS CASE ARE DUE

24  FEBRUARY 11TH.  MANY OF THE ISSUES ON THE FEBRUARY 8TH CALENDAR

25  ARE ISSUES THAT DIRECTLY RELATE TO GETTING DOCUMENTS NECESSARY  10:4

EXHIBIT _____3_____

25

| 1 | FOR OUR EXPERT PREPARATION.

2 | HERE'S THE WORST PART OF MY PROPOSAL: I'M WONDERING

3 | WHETHER OR NOT, WITH RESPECT TO THE MATTERS THAT HAVE BEEN

4 | BRIEFED AND ARE READY TO GO -- AND THERE'S ONE THAT THEIR

5 | OPPOSITION IS DUE A LITTLE BIT LATER THIS WEEK, AND I WAS GOING     10:4

6 | TO TWEAK THAT A LITTLE BIT -- I WAS WONDERING WHETHER OR NOT

7 | THOSE MATTERS -- AND THERE'S MAYBE FOUR MATTERS -- POSSIBLY

8 | COULD BE HEARD BY MAGISTRATE BLOCK AS EARLY AS NEXT WEEK.

9 | THEY'RE ALL BRIEFED.

10 | ALL OF THE PARTIES COULD GIVE TO THE MAGISTRATE, OR     10:4

11 | WHICHEVER MAGISTRATE THE COURT MIGHT ASK -- WE COULD GET ALL OF

12 | THE BRIEFS TO THEM BY THE CLOSE OF BUSINESS TOMORROW.  WE COULD

13 | DO IT BY THE END OF TODAY; THEY'VE ALL BEEN PREPARED.  I THINK

14 | YOU HAVE ALL OF THEM THAT HAVE BEEN FILED IN FRONT OF

15 | JUDGE INFANTE.  BUT WE COULD PACKAGE THEM ALL TOGETHER, HAVE     10:4

16 | THOSE MATTERS HEARD NEXT WEEK BY A MAGISTRATE, GET THE RULINGS.

17 | IF THE DISCOVERY IS ORDERED, PARTIES MOVE QUICKLY TO GET THE

18 | DISCOVERY READY AND GET GOING.

19 | THE COURT:  THE CONCERN THAT I WOULD HAVE IS -- YOU

20 | KNOW, JUDGE INFANTE HAS DEVELOPED, I'M SURE, A CERTAIN DEGREE     10:4

21 | OF INSTITUTIONAL MEMORY ASSOCIATED WITH THIS CASE, AND TO

22 | SADDLE JUDGE BLOCK OR ANY OTHER JUDGE IN THIS COURT WITH THOSE

23 | TYPES OF MOTIONS OUT OF NOWHERE, WITH NO BACKGROUND, I THINK

24 | THAT WOULD PROBABLY BE A PRETTY ONEROUS IMPOSITION.

25 | MR. NOLAN:  JUDGE BLOCK WAS INVOLVED IN THIS CASE     10:4

EXHIBIT _____ 3 _____

PAGE _____ 35 _____

1  EARLY ON, YOUR HONOR.  HE DID RULE ON SEVERAL MATTERS.  I CAN'T

2  GIVE YOU THE FULL COUNT.

3        I CAN SAY THAT MANY OF THESE ARE STRAIGHT-UP MOTIONS

4  THAT PRESENT ISSUES OF FACT THAT ARE NOT NECESSARILY TIED TO

5  HAVING PARTICIPATED IN THE FIRST THREE QUARTERS OF THE GAME.

6  IT'S NOT THAT WE'RE BRINGING IN SOMEBODY FROM A NEW TEAM.

7        I THINK THAT IT'S POSSIBLE.

8        OTHERWISE, YOUR HONOR, WE'RE LOOKING AT A SCHEDULE IN

9  FRONT OF JUDGE INFANTE ON FEBRUARY 8TH FOR HEARINGS THAT,

10  DESPITE HIS BEST EFFORTS, HE COULDN'T HANDLE ON JANUARY 3RD.

11  HE'S GOT A TELEPHONIC CONFERENCE TOMORROW ON SOME THIRD-PARTY

12  ISSUES; JANUARY 10TH, HE HAS THAT HEARING.

13        BUT IN ORDER FOR THIS IDEA TO WORK, YOUR HONOR -- I

14  DON'T KNOW WHETHER OR NOT YOU REALLY NEED THE HISTORY.

15        THE GOOD NEWS ABOUT THE LAWYERS IN THIS CASE, THEY

16  REPEAT EVERYTHING IN THE PAPERS; SO FRANKLY, SOMEONE PICKING

17  UP -- I THINK IT'S POSSIBLE, YOUR HONOR.

18        THERE'S ONE OTHER ISSUE THAT WOULD HAVE TO BE

19  CHANGED, AND THAT IS THAT THERE'S AN OPPOSITION THAT MATTEL HAS

20  TO FILE ON THE 11TH.  THEY HAD ASKED FOR -- I THINK THEY GOT

21  SOMETHING, LIKE, A 20-DAY EXTENSION OF TIME TO FILE IT BECAUSE

22  OF THE HOLIDAYS.  IF THEY FILED IT ON THURSDAY RATHER THAN

23  FRIDAY, I COULD COMMIT TO FILING OUR PAPERS ON SUNDAY EVENING

24  SO THAT THOSE COULD ALL BE HEARD NEXT WEEK IN FRONT OF THE

25  MAGISTRATE.

EXHIBIT ____3____

PAGE ____36____

10:4
10:4
10:4
10:4
10:4

JANUARY 7, 2008              BRYANT VS. MATTEL

1    THEN I WOULD SAY, YOUR HONOR, THAT WE COULD HAVE OUR

2    HEARING ON JANUARY 17TH, WHICH WOULD BE THE HEARING ON THESE

3    OUTSTANDING MOTIONS THAT RELATE TO PHASE ONE ISSUES.  WE COULD

4    GET THE RULING.  IF IT'S GRANTED, WE TAKE THE DISCOVERY RIGHT

5    AWAY, AND WE HAVE THAT DISCOVERY AVAILABLE FOR THE EXPERTS ON          10:4

6    FEBRUARY 11TH.

7    NOW, IF JOHN OR MIKE COME TO ME AND SAY WE NEED THREE

8    MORE DEPOSITIONS, I'M WILLING TO WORK THAT OUT, YOUR HONOR.

9    I'M NOT HOLDING IT TO 22 OR 24.  I WANT TO SET ASIDE THIS

10   NONSENSE ABOUT HOW YOU COUNT DEPOSITIONS.  WE THINK THAT WHEN         10:4

11   WE GET TO THE EX-PARTE ARGUMENT, I'LL TELL YOU THAT THAT IS A

12   LITTLE BIT LATE IN THE GAME.  WE THINK IT'S A LITTLE BIT

13   DISINGENUOUS AT THIS POINT IN TIME.  BUT IT CANNOT BE, YOUR

14   HONOR, IT CANNOT BE, THAT WHEN YOU THINK OF THE HARD SCHEDULE

15   THAT YOU PUT IN, WHAT YOU ASKED MGA AND US TO STEP UP TO             10:4

16   PROPERLY, NOTHING WRONG WITH THAT.  WE DID IT.  WE DID IT.  TO

17   NOW SOFTEN IT BECAUSE OF ALLEGED PRODUCTION ISSUES, WHERE,

18   FRANKLY, YOUR HONOR, MOST OF THE PRODUCTION HAD ALREADY TAKEN

19   PLACE BEFORE THAT DISCOVERY.

20   THE PROPOSAL THAT I HAVE COME UP WITH, YOUR HONOR,                    10:4

21   ALLOWS US TO GET PHASE ONE DONE.  IT DOES REQUIRE PHASE TWO TO

22   BE PUT ON THE BACK BURNER.

23   WHEN I SUGGESTED THAT EARLIER, IT WAS A DIFFERENT

24   TIME AND A DIFFERENT PLACE.  YOUR CONCERN, RIGHTFULLY SO, WAS,

25   'GEE, WE'RE GOING TO HAVE MORE BATTLES, NOLAN, BECAUSE WHO CAN        10:4

EXHIBIT ____3____

PAGE ____37____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1  TELL WHETHER OR NOT IT'S PHASE ONE OR PHASE TWO?'

2          THAT ISSUE IS REMOVED BECAUSE OF THE HARD DISCOVERY

3  STAY ON JANUARY 28TH.  IF WE FOCUS ALL ON PHASE ONE --

4          THE COURT:  LET ME HEAR MR. QUINN'S RESPONSE TO YOUR

5  PROPOSAL.  AND I DON'T MEAN TO MOVE YOU ALONG HERE, BUT WE HAVE     10:4

6  TO MOVE YOU ALONG.

7          MR. QUINN, WHAT'S YOUR THOUGHT ON --

8          MR. QUINN:  YOUR HONOR, BECAUSE I'M NOT INTIMATELY

9  FAMILIAR WITH THE MATTERS THAT ARE TEED UP BEFORE JUDGE INFANTE

10  ON THAT PORTION AND THE IDEA THAT BE DEFERRED TO MAGISTRATE     10:4

11  BLOCK, I'D LIKE TO DEFER THAT TO MR. ZELLER.

12          BUT BEFORE I DO THAT, IF I COULD RESPOND TO THE

13  PROPOSAL.

14          THE COURT:  PLEASE.

15          MR. QUINN:  WHAT I'M HEARING IS THAT MR. NOLAN IS     10:4

16  PREPARED, IF WE REALLY NEED IT, TO GIVE US THREE MORE

17  DEPOSITIONS ON PHASE ONE TOPICS.

18          THE COURT:  I DON'T THINK HE'S LOCKED INTO THREE.  I

19  THINK HE WAS USING THREE AS AN EXAMPLE.  BUT I THINK WHAT HE'S

20  RELUCTANT TO DO IS GIVE YOU A BLANK CHECK.     10:4

21          WHAT I'M HEARING IS THAT IF YOU CAN IDENTIFY THOSE

22  PARTICULAR DEPOSITIONS OR THAT PARTICULAR DISCOVERY THAT YOU

23  NEED TO COMPLETE THE PHASE ONE DISCOVERY -- AND I DO ACCEPT THE

24  NOTION THAT WE'RE AT A DIFFERENT POINT NOW THAN WE WERE SEVERAL

25  MONTHS AGO IN TERMS OF BEING ABLE TO IDENTIFY WHAT IS PHASE ONE     10:4

EXHIBIT _____ 3 _____

PAGE _____ 38 _____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   AND PHASE TWO.  I MEAN, WE SHOULD BE NEARING THE END.  YOU

2   SHOULD HAVE A PRETTY CLEAR SENSE OF WHAT YOU NEED TO TRY YOUR

3   CASE AND WHAT THEY NEED TO TRY THEIR CASE.

4           MR. QUINN:  RIGHT.

5           **THE COURT:**  I THINK WE SHOULD BE AT A POINT WHERE          10:4

6   PEOPLE OF THE CALIBER THAT ARE GATHERED HERE SHOULD BE ABLE TO

7   SAY, 'THIS IS WHAT WE NEED TO PIN DOWN BEFORE WE CAN GO TO

8   TRIAL.'  AND YOU NEED SOME MORE; THEY NEED SOME MORE; LET'S GET

9   THAT DONE.

10          THAT SUGGESTION IS SOMETHING THAT RESONATES WITH THE      10:4

11  COURT QUITE WELL.  IT REQUIRES THE LEVEL OF MATURITY THAT IS

12  NOT ALWAYS PRESENT IN LITIGATION, BUT I TRUST IS PRESENT IN

13  THIS COURTROOM.

14          MR. QUINN:  YOUR HONOR, I THINK THERE IS SOME WISDOM

15  THERE.  THE DEVIL IS IN THE DETAILS.                             10:4

16          THE COURT:  AS ALWAYS.

17          MR. QUINN:  LET ME SAY THAT JUST, FOR EXAMPLE, THE

18  WEEK BEFORE LAST, WE TOOK -- AND THIS IS SOMETHING THAT

19  HAPPENED SINCE THIS MOTION WAS FILED -- WE TOOK THE DEPOSITION

20  OF A PERSON NAMED VERONICA MARLOW, WHO IS THEIR VENDOR FOR       10:4

21  FASHION DESIGN FOR BRATZ, AND LEARNED IN THE COURSE OF THAT

22  DEPOSITION THAT THREE MATTEL EMPLOYEES OTHER THAN CARTER BRYANT

23  HAVE BEEN WORKING ON BRATZ FOR YEARS.  THAT WAS THE TESTIMONY.

24          THIS WAS NEWS TO US.

25          MOREOVER, SHE TESTIFIED THAT SHE HAD A CONVERSATION       10:4

EXHIBIT _____ 3 _____

1    WITH AN MGA EXECUTIVE ABOUT THIS, WHERE SHE REFUSED TO ANSWER

2    POINTED QUESTIONS ABOUT WHETHER THERE WAS SOMEBODY ELSE AT

3    MATTEL WORKING ON THIS.

4            I SUBMIT, YOUR HONOR, THAT IS BLOCKBUSTER TESTIMONY,

5    IN OUR VIEW.  WE THOUGHT THIS WAS JUST CARTER BRYANT; SO          10:4

6    THERE'S THREE EMPLOYEES, TWO OF WHICH ARE FORMER EMPLOYEES NOW,

7    AND THIS EXECUTIVE, MEL WOODS -- HIS NAME ISN'T EVEN IN THIS

8    LIST THAT WE'VE SUBMITTED -- THAT I THINK WE NEED TO TAKE THEIR

9    DEPOSITIONS.

10           NOW, MR. NOLAN BANDIED ABOUT THE NUMBER OF 50.  THE       10:4

11   NUMBER ISN'T 50.  WE'VE LISTED THE DEPOSITIONS IN OUR PROPOSED

12   FORM OF ORDER THAT WE SUBMITTED TO THE COURT.  I DO THINK WE

13   COULD SIT DOWN AND SAY THIS GROUP -- AND MOST OF THEM ARE -- IS

14   TRULY JUST PHASE TWO.  THERE'S GOING TO BE A SIGNIFICANT

15   CATEGORY THAT ARE BOTH PHASE ONE AND PHASE TWO, AND THEN THERE    10:4

16   WILL BE SOME SMALLER NUMBER WHICH ARE PHASE ONE ALONE.

17           THE COURT:  THIS IS HELPFUL IN TERMS OF THE COURT

18   FASHIONING AN ORDER FOR THIS MOTION.

19           MR. QUINN:  IN TERMS OF MR. BRYANT, YOUR HONOR, AND

20   WHAT HAPPENED LAST FALL -- AND COUNSEL FOR MR. BRYANT SAID SHE    10:4

21   DIDN'T HAVE ANYTHING BEFORE HER ABOUT THE ORDER THAT THE COURT

22   ENTERED.  WE RAISED THIS IN OUR MOVING PAPERS.  WE CALLED THE

23   COURT'S ATTENTION -- REMEMBER WHEN THEY WERE HERE BEFORE,

24   ASKING TO CUT SOME SLACK FROM THE MAGISTRATE'S ORDER.  IN THE

25   MOVING ORDERS, PAGE 24, WE DISCUSSED THAT, AND AGAIN IN OUR       10:4

EXHIBIT _____3_____

1   REPLY PAPERS ON PAGE 11; SO I SUBMIT, WE DID TEE UP THAT ISSUE.

2   THIS IS AT LEAST AS COMPELLING A SITUATION TO TAKE ANOTHER LOOK

3   AT WHAT JUDGE INFANTE RULED.

4           WITH RESPECT TO THE NIECE, THE NIECE HAD HIS

5   COMPUTER.  WE WENT THROUGH A RUNAROUND TO GET HIS COMPUTER.  WE        10:4

6   FOUND THIS 'EVIDENCE ELIMINATOR' -- THAT'S THE NAME OF A

7   PROGRAM; IT'S NOT A GREAT NAME -- ON THE COMPUTER, AND JUST TO

8   GET ASSURANCE THAT SOMEBODY WASN'T GOING TO SAY -- NOW, TELL ME

9   I'M BEING TOO DEVIOUS AND OVER THINKING THIS HERE -- THAT

10  SOMEBODY MIGHT SAY THE NIECE PUT 'EVIDENCE ELIMINATOR' ON THE        10:4

11  COMPUTER.  WE TOOK HER DEPOSITION FOR ONE HOUR AND 15 MINUTES;

12  THAT WAS IT.

13          SO IF THE PROPOSITION IS THAT --

14          THE COURT:  A LONG TIME TO ASK A QUESTION.

15          MR. QUINN:  YEAH.                                            10:4

16          THE COURT:  ALL RIGHT.

17          MR. QUINN:  IF THE PROPOSITION IS THAT MR. NOLAN AND

18  I SHOULD SIT DOWN AND FIGURE OUT WHICH ARE TRULY PHASE ONE AND

19  WHICH ARE SORT OF A MIX AND WHICH ARE PHASE TWO AND WE CAN

20  FORGET ABOUT FOR NOW, I'M SURE WE CAN DO THAT.  BUT, AGAIN, I        10:4

21  UNDERSCORE THE IDEA, IT'S NOT GOING TO BE THREE, AND IT'S NOT

22  GOING TO BE TEN; IT'S GOING TO BE MORE THAN THAT THAT WE NEED

23  FOR PHASE ONE.

24          THE COURT:  I'LL TRY TO PROVIDE AS MUCH GUIDANCE AS I

25  CAN IN THE COURT'S ORDER.                                           10:4

EXHIBIT _____ 3 _____

PAGE _____ 41 _____

JANUARY 7, 2008              BRYANT VS. MATTEL

1       MR. ZELLER:  I'D JUST LIKE TO ADD, YOUR HONOR -- AND

2   I'M NOT TRYING TO FAULT MR. NOLAN -- I WAS THE ONE WHO

3   DISCUSSED WITH HIS COLLEAGUES THE VERY PROPOSAL THAT HE'S

4   MAKING HERE NOW, IN WHICH I ASKED WHETHER OR NOT THERE WERE AT

5   LEAST SOME PEOPLE ON OUR LIST, WHICH WE GAVE TO THEM IN ADVANCE          10:5

6   OF ALL OF THIS, THAT THEY WOULD AGREE TO.  WE GOT AN ANSWER OF,

7   NO, THAT THEY WOULDN'T AGREE TO ANY OF THEM.

8       THE COURT:  WELL, HOPEFULLY, THE COURT'S ORDER WILL

9   PROPEL AND MR. NOLAN'S STATEMENTS TODAY WILL RESOLVE THAT.

10      I'M GOING TO MAKE YOUR JOB A LITTLE EASIER HERE,                      10:5

11  BECAUSE THE COURT DOESN'T TAKE THE SUGGESTION WELL IN TERMS OF

12  SENDING THIS TO A MAGISTRATE JUDGE AT THIS POINT.  I JUST DON'T

13  THINK THAT WOULD WORK FOR A NUMBER OF REASONS, SOME THAT HAVE

14  NOTHING TO DO WITH -- THAT ARE INTERNAL TO THE COURT'S

15  OPERATIONS.                                                             10:5

16      MR. ZELLER:  YOU'RE REFERRING TO THE REFERENCE OF

17  SOME OF THOSE MOTIONS TO JUDGE BLOCK?

18      THE COURT:  OR TO SOME OTHER MAGISTRATE JUDGE, YES.

19      MR. ZELLER:  AND NOT TO BELABOR THE POINT, I BELIEVE

20  THE COURT HAS REACHED A DETERMINATION ON THAT, BUT SOME OF            10:5

21  THOSE MOTIONS THAT ARE UP IN FRONT OF JUDGE INFANTE ACTUALLY

22  HEAVILY INVOLVE HIS PRIOR RULINGS AS WELL; SO THAT WOULD BE

23  PARTICULAR INEFFICIENCY, I THINK, ON TRYING TO MOVE THOSE OVER

24  TO JUDGE BLOCK.  THEY ARE NOT DISCRETE ISSUES, AS HAS BEEN

25  SUGGESTED.

EXHIBIT ____3____                                                       10:5

PAGE ____42____

JANUARY 7, 2008                    BRYANT VS. MATTEL

33

1          **THE COURT:**  VERY WELL.

2          I'M GOING TO MOVE ON TO THE MOTION REGARDING THE

3     AUGUST 27, 2007 ORDER.

4          THIS RELATES TO WHETHER OR NOT ALL PARTIES ARE

5     REQUIRED TO SUBMIT THE AFFIDAVIT SUGGESTING OR SETTING FORTH          10:5

6     SPECIFICALLY THEIR EVIDENCE RETENTION AND OTHER PRACTICES

7     RELATED TO DOCUMENT RETENTION IN THIS CASE.

8          THE COURT REMEMBERS THE HEARING WELL, AND WHILE IT IS

9     TRUE THAT IN THE COURSE OF DISCUSSING THE MOTION FOR

10    TERMINATING SANCTIONS WHICH WAS BROUGHT BY MGA THAT THE COURT        10:5

11    REFERRED DURING THE HEARING TO MATTEL AND TO MGA, I DON'T THINK

12    THE COURT COULD HAVE BEEN MORE EXPLICIT IN ITS ORDER THAT THE

13    ORDER APPLIED TO ALL PARTIES.

14         I DON'T KNOW WHAT LANGUAGE I COULD HAVE USED TO BE

15    CLEARER IN TERMS OF THE SCOPE OF THE ORDER; THAT'S MY TENTATIVE      10:5

16    THOUGHTS.  I'LL CERTAINLY GIVE ANYONE WHO WANTS TO ADDRESS IT

17    AN OPPORTUNITY TO DO SO, BUT MY SENSE IS THAT THIS APPLIES TO

18    EVERYBODY.  AND I GUESS I NEED TO HEAR SPECIFICALLY FROM

19    COUNSEL FOR MACHADO GOMEZ, BECAUSE I ALSO TEND TO AGREE THAT

20    THE DECLARATION SUBMITTED BY HIM -- WHICH IT'S NOT CLEAR TO THE      10:5

21    COURT WAS EVER FILED, ALTHOUGH I'VE NOW SEEN IT AS IT'S BEEN

22    SUBMITTED IN PAPERS -- IS ANYTHING BUT ADEQUATE TO COMPLY WITH

23    THE COURT'S ORDER REGARDING THE NEED FOR A FILED AFFIDAVIT.

24         COUNSEL?

25         **MS. ANDERSON:**  THANK YOU, YOUR HONOR.  THIS IS              10:5

EXHIBIT _____3_____

PAGE _____43_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1    CHRISTA ANDERSON FOR CARTER BRYANT.

2         YOUR HONOR, I CERTAINLY CONSIDER MYSELF AND MY FIRM

3    TO BE VERY RESPONSIBLE LAWYERS, AND WE DID NOT UNDERSTAND

4    YOUR HONOR'S ORDER TO REALLY MEAN ALL PARTIES BECAUSE WE READ

5    THE LANGUAGE OF THE ORDER AS INCORPORATING AS ORDERED BY THE          10:5.

6    COURT DURING THE HEARING.

7         WE DID READ YOUR HONOR'S WORDS VERY CAREFULLY TO TRY

8    TO ASCERTAIN WHETHER WE DID OR DID NOT HAVE TO DO IT.  WE

9    APOLOGIZE IF WE MISREAD THIS ORDER, YOUR HONOR.

10        THE COURT:  THERE'S NO NEED TO APOLOGIZE, BUT PART OF          10:5.

11   WHAT I REMEMBER OF THE HEARING IS THAT THE ATTORNEY THAT YOU

12   HAD REPRESENTING CARTER BRYANT HAD TO LEAVE FOR A SPEAKING

13   ENGAGEMENT IN THE MIDDLE OF THE HEARING.  I'VE HAD ATTORNEYS

14   NOT SHOW UP FOR HEARINGS, BUT IT LITERALLY WAS THE FIRST TIME

15   THAT I'VE BEEN ON THE BENCH THAT I'VE ACTUALLY HAD AN ATTORNEY          10:5.

16   WALK OUT IN THE MIDDLE OF A HEARING.

17        SO FOR CARTER BRYANT NOW TO BE SUGGESTING THAT THEY

18   DID NOT UNDERSTAND THE COURT'S ORDER OR DIDN'T HAVE AN

19   OPPORTUNITY TO CHALLENGE THE COURT'S ORDER, IT WOULD BE A GOOD

20   THING NEXT TIME FOR HIM TO STAY FOR THE WHOLE HEARING.          10:5.

21        MS. ANDERSON:  ABSOLUTELY, YOUR HONOR.

22        JUST TO DEFEND OUR POSITION A BIT, IF YOUR HONOR

23   WOULD TOLERATE IT FOR ONE MOMENT, BECAUSE WE WERE NOT THERE,

24   WHEN WE SAW THAT YOUR HONOR HAD INCORPORATED REFERENCE TO --

25        THE COURT:  AGAIN, YOU LEFT.  YOU WERE THERE AT THE          10:5

EXHIBIT _____3_____

PAGE _____44_____

JANUARY 7, 2008                 BRYANT VS. MATTEL

 1   BEGINNING OF THE HEARING, AND YOU LEFT.

 2          MS. ANDERSON:   INDEED.

 3          WE GOT THE TRANSCRIPT, AND WE EXAMINED IT, AND WE HAD

 4   CONCLUDED THAT BECAUSE THE AFFIDAVIT SEEMED TO BE INTENDED TO

 5   ADDRESS WHO WAS INSTRUCTED TO PRESERVE DOCUMENTS AND WHICH

 6   CATEGORIES OF DOCUMENTS THEY WERE INSTRUCTED TO PRESERVE, AND

 7   BECAUSE THE COURT HAD SAID, AT LEAST DURING THE HEARING, IT

 8   REQUIRED TWO SINGULAR AFFIDAVITS, ONE FROM MGA, ONE FROM

 9   MATTEL; TO US, THAT SUGGESTED THAT THIS WHOLE AFFIDAVIT

10   PROCEDURE DIDN'T SEEM TO BE DIRECTED AT OUR CLIENT.

11          AGAIN, WE DO APOLOGIZE.

12          THE COURT:   IT'S CLEAR NOW.

13          MS. ANDERSON:   YES.   WE WILL TAKE CARE OF THAT,

14   YOUR HONOR.

15          THE COURT:   VERY GOOD.

16          MS. ANDERSON:   ALSO, YOUR HONOR, THERE IS A REQUEST

17   IN HERE.   IT SEEMS TO BE TYPICAL FOR THESE MOTIONS FILED BY

18   MATTEL FOR SANCTIONS.   WE WOULD REQUEST THAT OUR CLIENT NOT BE

19   SANCTIONED, GIVEN THE AMBIGUITY OF THIS SITUATION.

20          THE COURT:   IF IT WAS AMBIGUOUS TO YOU, WHY DIDN'T

21   YOU SEEK CLARIFICATION IN THE INTERVENING MONTHS?

22          MS. ANDERSON:   I SUBMIT, YOUR HONOR, THAT MATTEL

23   EQUALLY SHOULD HAVE SOUGHT CLARIFICATION, BECAUSE WHEN WE READ

24   THE ORDER -- AND WE POINTED THIS OUT TO MATTEL'S COUNSEL -- IT

25   SEEMED TO INCORPORATE BY REFERENCE THE GUIDANCE THE COURT HAD

EXHIBIT _____3_____

1   GIVEN DURING THE HEARING ABOUT WHO WAS SUPPOSED TO DO IT AND

2   WHAT WAS SUPPOSED TO BE IN IT.

3        WE WERE NOT TRYING TO BE DIFFICULT.

4        YOUR HONOR, FRANKLY, IN THIS LITIGATION, WHICH IS

5   SCORCHED EARTH LITIGATION IF I'VE EVER SEEN IT, WE'VE SPENT, MY     10:5

6   CLIENT AND MYSELF AND MY FIRM, A LOT OF TIME DEFENDING

7   OURSELVES AGAINST WHAT WE VIEW TO BE INCESSANT ACTIVITIES BY

8   MATTEL TO SORT OF MAKE WORK, FILE BRIEFS, DO THINGS FOR

9   SITUATIONS WHERE WE DO NOT BELIEVE IT IS APPROPRIATE, AND WE

10  THINK IT IS HARASSING.  AND THIS APPEARED TO US TO BE YET          10:5

11  ANOTHER SITUATION WHERE WE WERE BEING DRIVEN TO DO THE SAME

12  THING OVER AND OVER AGAIN.

13       THAT IS SORT OF THE CONTEXT OF THE SITUATION WE'VE

14  BEEN DEALING WITH, YOUR HONOR.

15       **THE COURT:**  THANK YOU, COUNSEL.                            10:5

16       MR. OVERLAND, DO YOU WISH TO SPEAK ON BEHALF OF

17  MR. MACHADO GOMEZ?

18       **MR. OVERLAND:**  YES, YOUR HONOR.

19       DOES THE COURT WISH ME TO JUST ADDRESS THE CONTENTS

20  OF THE DECLARATION?                                                10:5

21       **THE COURT:**  YOU MAY ADDRESS THE COURT'S TENTATIVE ON

22  THIS, AND THAT'S TO MAKE IT CLEAR TO THE PARTIES THAT ALL

23  PARTIES NEED TO SUBMIT THE AFFIDAVIT.  BUT PARTICULARLY WITH

24  RESPECT TO THE DECLARATION THAT HAS BEEN SUBMITTED ON BEHALF OF

25  YOUR CLIENT, I DON'T THINK IT FULLY CAPTURES WHAT THE COURT HAS    10:5

EXHIBIT _____3_____

```
 1    SET FORTH IN THE ORDER.  AND PERHAPS THAT MIGHT BE BECAUSE YOU

 2    DIDN'T HAVE THE SENSE, AS CARTER BRYANT DIDN'T HAVE THE SENSE,

 3    THAT IT FULLY APPLIED.

 4         I HOPE, AFTER TODAY'S ORDER, I'LL MAKE IT AS CRYSTAL

 5    CLEAR AS POSSIBLE THAT IT DOES APPLY TO ALL PARTIES AND THAT AN

 6    ACTUAL AFFIDAVIT NEEDS TO BE FILED WITH THE COURT, SETTING

 7    FORTH EVERYTHING AS REQUESTED IN THE ORDER.

 8         MR. OVERLAND:  AS I UNDERSTAND THE ORDER, IT WAS THAT

 9    ALL PARTIES SET FORTH, IN AFFIDAVIT FORM, THEIR PRESERVATION

10    EFFORTS AND POLICIES.

11         THE COURT:  ALL YOUR CLIENT STATED IN THE DECLARATION

12    IS THAT HE HAS NOT KNOWINGLY DESTROYED ANY EVIDENCE.

13         THAT'S NOT A DESCRIPTION IN DETAIL OF THE RETENTION

14    POLICIES.

15         MR. OVERLAND:  WELL, HE DOESN'T HAVE A POLICY.  HE'S

16    AN INDIVIDUAL.  IT'S LIKE YOU ASKING ME WHAT MY RETENTION

17    POLICY IS.

18         THE COURT:  I SUSPECT YOU, LIKE I, PROBABLY HAVE

19    PERSONAL FILES AND WE KEEP THINGS OR WE DON'T KEEP THINGS OR WE

20    THROW THINGS OUT AFTER SO MANY YEARS.  WE ALL HAVE OUR OWN

21    POLICIES.  I UNDERSTAND THEY'RE NOT POLICIES IN THE CORPORATE

22    SENSE, BUT WE ALL HAVE OUR CUSTOMS, PRACTICES, HOWEVER YOU WANT

23    TO PHRASE IT.

24         HE'S A SOPHISTICATED BUSINESSMAN, LIKE THE OTHER

25    PARTIES IN THIS CASE, AND I SUSPECT HE HAS SOME -- I WANT TO
```

10:5
10:5
10:5
10:5
10:5

EXHIBIT ____3____

PAGE ____47____

JANUARY 7, 2008                    BRYANT VS. MATTEL

38

1    KNOW WHAT HE DOES WITH HIS DOCUMENTS. AND TO SIMPLY SAY THAT

2    HE HASN'T KNOWINGLY DESTROYED IS REALLY NOT SUFFICIENT.

3           MR. OVERLAND:  I UNDERSTAND.  AND WE'D BE WILLING TO

4    SUBMIT A DIFFERENT DECLARATION.

5           IF THE COURT COULD BE CLEAR ON EXACTLY WHAT IT IS        10:5

6    THAT MR. MACHADO SHOULD SAY.  IN OTHER WORDS, DOES HE HAVE TO

7    SAY, 'FROM X DAY, HERE'S WHAT I DID WITH RESPECT TO DOCUMENTS,'

8    OR 'THIS IS MY NORMAL HABIT OR CUSTOM'?

9           THE COURT:  I'LL TRY TO BE CLEAR IN THE ORDER THAT I

10   ISSUE TODAY.                                                   10:5

11          MR. OVERLAND:  OKAY.  VERY WELL.

12          THE COURT:  THE LAST MOTION BEFORE THE COURT IS THE

13   MOTION CONCERNING DISCOVERY BEFORE JUDGE INFANTE.

14          AGAIN, THE ORDER SEEMS QUITE CLEAR.  IT RESTS ON

15   FEDERAL RULES OF CIVIL PROCEDURE 53.  OF COURSE, THERE'S       10:5

16   MULTIPLE PROVISIONS IN RULE 53 WHICH PERMIT THE APPOINTMENT OF

17   A DISCOVERY MASTER.  ONE PROVISION IS PURSUANT TO A STIPULATION

18   OF THE PARTIES, BUT THE THIRD PROVISION IS PURSUANT TO THE

19   COURT'S ORDER THAT THIS IS AN APPROPRIATE CASE FOR THE

20   APPOINTMENT OF A DISCOVERY MASTER.                             10:5

21          I'M CERTAINLY SYMPATHETIC TO THE ARGUMENT BEING MADE

22   THAT IT'S AN EXCEPTIONAL AND RARE PROCEDURE FOR THE COURT TO

23   INVOKE.  BUT I THINK JUST THIS RECORD ALONE, MR. NOLAN'S

24   RECITATION OF THE DISCOVERY PRODUCED IN THIS CASE, CLEARLY

25   SUGGESTS THAT THIS IS A PRETTY UNIQUE CASE.  AND THIS IS A CASE 10:5

EXHIBIT _____3_____

PAGE _____48_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

```
 1   WHICH, AFTER CONSULTATION WITH JUDGE BLOCK, THE COURT MADE THE
 2   DECISION, FOR THE FIRST TIME IN MY CAREER AS A JUDICIAL OFFICER
 3   THAT, YEAH, THIS IS A CASE THAT A DISCOVERY MASTER NEEDS TO BE
 4   APPOINTED.
 5          ALL DISCOVERY WAS REFERRED TO THE DISCOVERY MASTER.        10:5
 6          I DON'T KNOW WHAT REALLY NEEDS TO BE CLARIFIED OR
 7   WHAT THE CONFUSION ON THAT IS.
 8          I DON'T SEE THE DUE PROCESS ARGUMENT THAT'S BEING
 9   MADE OR URGED BY THE DEFENSE IN THIS CASE.  CERTAINLY, ANY
10   DECISION BY THE DISCOVERY MASTER IS REVIEWABLE BY THIS COURT.     10:5
11   THE RULE ITSELF AND THE COMMENTARY MADE CLEAR, I THINK, THAT
12   THIRD PARTIES, EVEN NONCONSENTING THIRD PARTIES, ARE SUBJECT TO
13   THE PROVISIONS, EVEN TO THE CONTEMPT PROVISIONS.
14          SO I GUESS I DON'T REALLY SEE MUCH OF AN ISSUE ON
15   THIS MOTION, BUT I'LL HEAR FROM ANYBODY WHO WISHES TO SPEAK       11:0
16   FURTHER.
17          MR. OVERLAND:  WITH RESPECT TO MR. MACHADO, I THINK
18   THE BASIC PROBLEM WE HAVE IS THAT THE ORDER WAS MADE PURSUANT
19   TO RULE 53, AND RULE 53 REQUIRES PRIOR NOTICE.
20          WE NEVER RECEIVED PRIOR NOTICE.                           11:0
21          IF YOU LOOK AT 53(B)(1), THAT REQUIRES PRIOR NOTICE
22   TO THE PARTY, AN OPPORTUNITY TO BE HEARD, AN OPPORTUNITY TO
23   OBJECT.
24          THE COURT:  YOU HAVE AN OPPORTUNITY TO BE HEARD, NOT
25   ON THE APPOINTMENT OF THE DISCOVERY MASTER, BUT ON THE RULINGS    11:0
```

EXHIBIT _____3_____

1    OF THE COURT.  WITH THE DISCOVERY MASTER, YOU CAN CERTAINLY --

2             MR. OVERLAND:  NO.  WE DO HAVE AN OPPORTUNITY TO BE

3    HEARD ON THE APPOINTMENT.

4             IF THE COURT -- UNLESS IT'S BY CONSENT --

5             THE COURT:  CITE ME TO A CASE, ONE CASE, COUNSEL,        11:0

6    THAT SAYS THAT.

7             MR. OVERLAND:  LOOK AT THE LANGUAGE OF 53(B)(1).

8             THE COURT:  THAT'S NOT HOW -- I DON'T BELIEVE I

9    APPOINTED HIM PURSUANT TO.

10            LET ME TAKE A LOOK HERE.                                 11:0

11            53(B)(1) TALKS ABOUT 'THE COURT MUST GIVE THE PARTIES

12   NOTICE AND AN OPPORTUNITY TO BE HEARD.'

13            MR. OVERLAND:  THAT'S RIGHT.

14            THE COURT:  YOU'RE NOT A PARTY.

15            MR. OVERLAND:  WELL, IF THE PARTIES ARE ENTITLED TO      11:0

16   NOTICE, THEN CERTAINLY --

17            I AM A PARTY.  MR. MACHADO IS A PARTY.

18            THE COURT:  VERY WELL.

19            AND YOU DID NOT RECEIVE NOTICE?

20            MR. OVERLAND:  NEVER RECEIVED NOTICE OF THAT.            11:0

21            THE COURT:  YOU CAME IN THE CASE AFTERWARDS.

22            MR. OVERLAND:  CORRECT.

23            AND MR. MACHADO, THEREFORE, STANDS IN A DIFFERENT

24   POSITION, BECAUSE AS A PARTY, HE'S ENTITLED TO NOTICE BEFORE

25   THE APPOINTMENT OF A SPECIAL MASTER.                             11:0

EXHIBIT ____3____

PAGE ____50____

41

| | |
|---|---|
| 1 | THE COURT:  ANY CASE AT ALL? |
| 2 | MR. OVERLAND:  I THINK WE CITED IN OUR PAPERS, YOUR |
| 3 | HONOR. |
| 4 | THE COURT:  YOU CITE 53 ON PAGE 3 OF YOUR OPPOSITION, |
| 5 | COUNSEL, AND YOU CITE TO 53(B)(1), BUT YOU DIDN'T CITE A CASE. |
| 6 | MR. OVERLAND:  MAYBE IT'S SELF-EVIDENT.  MAYBE THERE |
| 7 | IS NO CASE BECAUSE IT'S SELF-EVIDENT. |
| 8 | THE COURT:  CLEARLY, THE RULE ENVISIONS NONPARTIES |
| 9 | BEING SUBJECT TO CONTEMPT PROCEEDINGS FOR NOT FOLLOWING THE |
| 10 | ORDERS OF THE DISCOVERY MASTER, AND A NONPARTY WOULD NEVER HAVE |
| 11 | ANY NOTICE, SO IF A NONPARTY HAD NO NOTICE AND YET THEY'RE |
| 12 | SUBJECT TO THE RULE, WHY WOULD NOT A SUBSEQUENTLY-SERVED PARTY |
| 13 | BE SUBJECT TO THE RULE?  THAT DOESN'T MAKE ANY SENSE. |
| 14 | MR. OVERLAND:  WELL, IT DOESN'T MAKE SENSE BECAUSE |
| 15 | PARTIES ARE TREATED DIFFERENTLY.  PARTIES ARE ENTITLED TO |
| 16 | NOTICE, ACCORDING TO THE RULE. |
| 17 | THE COURT:  WHEN YOU COME INTO AN EXISTING CASE WITH |
| 18 | A DISCOVERY MASTER ALREADY PROPERLY APPOINTED, YOU COULD |
| 19 | CERTAINLY, I CAN SEE, HAVE GROUNDS TO OBJECT TO THE DISCOVERY |
| 20 | MASTER.  AND YOU'VE NEVER DONE THAT SINCE BEING BROUGHT INTO |
| 21 | THIS CASE. |
| 22 | MR. OVERLAND:  WE ARE DOING IT. |
| 23 | THE COURT:  YOU'RE DOING IT NOW.  I UNDERSTAND THAT. |
| 24 | MR. OVERLAND:  WE ARE DOING IT, THE FIRST OPPORTUNITY |
| 25 | WHEN A MOTION WAS BROUGHT WITH RESPECT TO DISCOVERY IN FRONT OF |

EXHIBIT ____3____

PAGE ____5/____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   THE MASTER.

2           THE COURT:  ALL RIGHT.  I'LL RECONSIDER MY POSITION

3   IN LIGHT OF THAT ARGUMENT, COUNSEL.

4           MR. OVERLAND:  THE OTHER THING, YOUR HONOR, IS WITH

5   RESPECT TO MR. MACHADO -- AND I UNDERSTAND THE PROBLEM WITH       11:0

6   RESPECT TO THE DISCOVERY ISSUES BETWEEN MATTEL AND MGA, BUT

7   WITH RESPECT TO MR. MACHADO, THERE'S GOING TO BE A DISCRETE

8   DISCOVERY DISPUTE, AND THAT INVOLVES THE FIFTH AMENDMENT CLAIM

9   WITH RESPECT TO SPECIFIC QUESTIONS.

10          WHAT CONCERNS ME IS WHAT I HEARD BEFORE FROM THIS          11:0

11  COURT THAT THERE'S A STANDARD OF DEFERENCE TO THE RULING OF THE

12  MASTER.

13          THE COURT:  IT'S THE STANDARD THAT'S SET FORTH IN THE

14  ORDER GOVERNING THE DISCOVERY MASTER.

15          MR. OVERLAND:  I UNDERSTAND.  AND WHAT CONCERNS ME IS      11:0

16  THAT THESE RULINGS WITH RESPECT TO MR. MACHADO'S FIFTH

17  AMENDMENT PRIVILEGE ARE GOING TO BIND THE COURT.  THEY ARE VERY

18  IMPORTANT ISSUES WITH RESPECT TO MR. MACHADO.

19          THE COURT:  THEY ARE.  I UNDERSTAND THAT.

20          THANK YOU, COUNSEL.                                       11:0

21          ANYONE ELSE WISH TO BE HEARD ON THIS?

22          AND YOU ARE REPRESENTING THE NONPARTIES?

23          MR. MCFARLAND:  SOME OF THEM.

24          LARRY MCFARLAND ON BEHALF OF MS. CLOONAN, MS. LEAHY,

25  MS. MARLOW, MS. HALPERN, AND MS. ROCK.                           11:0

EXHIBIT _____ 3 _____

PAGE _____ 52 _____

1    YOUR HONOR, ONE OF THE THINGS I WOULD LIKE TO ADDRESS

2    IS, MY UNDERSTANDING, THERE IS A DEARTH OF CASE LAW, I WILL

3    ACKNOWLEDGE.  WE'VE CITED CASE; THEY'VE CITED CASES.  I DON'T

4    THINK ANY OF THEM ARE ALL THAT ILLUMINATING, REALLY.  THEY JUST

5    KIND OF SAY IT.                                                    11:0

6         THE COURT:  RIGHT.

7         MR. MCFARLAND:  WE UNDERSTOOD WHEN WE READ THAT IT

8    WAS DONE UNDER SECTION A, WHICH WAS, OF COURSE, BY STIPULATION.

9    SECTION C, OF COURSE, HAS A FINDING THAT IT CANNOT BE

10   EFFECTIVELY AND TIMELY ADDRESSED BY AN AVAILABLE DISTRICT COURT   11:0

11   JUDGE OR MAGISTRATE JUDGE OF THE DISTRICT.  AND CERTAINLY, AS

12   TO MGA AND MATTEL, NO ONE WOULD DISPUTE THAT THERE'S A LOT

13   GOING ON AND A LOT OF ACTIVITY, AND NO ONE IS TALKING ABOUT

14   THAT, THAT ALL OF THOSE MASSIVE, HARD-FOUGHT BATTLES ARE BEING

15   HANDLED BY JUDGE INFANTE.                                         11:0

16        TO MY KNOWLEDGE, THUS FAR, JUDGE INFANTE HASN'T

17   ISSUED ANY BINDING RULINGS WITH RESPECT TO THIRD PARTIES.  IT'S

18   ALL KIND OF COMING UP LATE IN THE GAME.

19        I DON'T KNOW EVERYTHING THAT'S DONE, BUT THAT'S MY

20   UNDERSTANDING.                                                    11:0

21        NOW, CERTAINLY, HE'S NOT ISSUED ANY WITH RESPECT TO

22   MY CLIENTS, NOR ARE ANY MOTIONS PENDING IN FRONT OF JUDGE

23   INFANTE WITH RESPECT TO MY CLIENTS.  SO WHAT I'D LIKE TO

24   ADDRESS WITH SOME OF MY TIME IS THIS ISSUE OF UNIFORMITY, WHICH

25   SEEMS TO BE, I THINK, THE MOST POWERFUL ARGUMENT THEY HAVE,       11:0

EXHIBIT _____3_____

PAGE _____53_____

1    THAT THERE NEEDS TO BE SOME HISTORY AND SOME HISTORICAL

2    KNOWLEDGE.

3         AND WHAT I WOULD ARGUE, YOUR HONOR, IS THAT CONGRESS

4    ADDRESSED THAT ISSUE WHEN THEY SET UP THE SYSTEM OF HOW YOU

5    ISSUE A RULE 45 SUBPOENA.  PRESUMABLY, IF CONGRESS HAD WANTED       11:0

6    EVERY RULE 45 SUBPOENA TO ISSUE OUT OF THIS COURT, REGARDLESS

7    OF WHERE THE DEPONENT RESIDED, IF THE DEPONENT RESIDED IN TEXAS

8    OR MAINE OR MINNESOTA, CONSISTENT WITH DUE PROCESS, PRESUMABLY,

9    CONGRESS COULD HAVE DONE THAT.  BUT CONGRESS DIDN'T.  AND WE

10   HAVE A SYSTEM IN THIS COUNTRY WHERE IF YOU WANT TO ISSUE A RULE     11:0

11   45 SUBPOENA FOR A PERSON RESIDING IN TEXAS, IT HAS TO BE ISSUED

12   BY THE DISTRICT COURT IN TEXAS.

13        SO IN THAT CASE, I DON'T THINK I UNDERSTAND, OR MAYBE

14   I'M WRONG, IF YOU BELIEVE THAT THIS ORDER WOULD REQUIRE THE

15   DISTRICT COURT MAGISTRATE OR JUDGE IN TEXAS TO BE DIVESTED OF       11:0

16   JURISDICTION AND FOR THIS MATTER TO BE HEARD IN FRONT OF

17   JUDGE INFANTE IN SAN FRANCISCO.

18        IF THAT'S NOT THE CASE --

19        THE COURT:  THAT ISSUE IS REALLY NOT BEFORE THE COURT

20   RIGHT NOW.                                                         11:0

21        MR. MCFARLAND:  WELL, I THINK IT IS BEFORE THE COURT,

22   BECAUSE THE ONLY REASON THAT THERE'S THIS UNIFORMITY ISSUE IS

23   BECAUSE MY CLIENT HAPPENS TO RESIDE IN LOS ANGELES.  I DON'T

24   THINK THAT'S A DISTINCTION WITHOUT A DIFFERENCE.  IF UNIFORMITY

25   IS A GOVERNMENT PRINCIPLE, THEN I THINK IT WOULD HAVE TO APPLY      11:0

EXHIBIT ____3____

PAGE ____54____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   TO ALL RULE 45 SUBPOENAS.  AND IT CANNOT APPLY.

2           THE COURT:  BUT THE COURT WOULD CERTAINLY RECONSIDER

3   THE EFFECT OR THE BREADTH OR REACH OF ITS ORDER IF IT WAS

4   OPERATING TO DIVEST A DISTRICT JUDGE ON A RULE 45 CHALLENGE IN

5   TEXAS, FOR EXAMPLE.  THAT'S NOT BEFORE THE COURT RIGHT NOW.          11:0

6           MR. MCFARLAND:  THE OTHER THING, TOO, IS, I THINK IT

7   ALSO SHOWS HOW THIS IS NOT REALLY BEING ENFORCED BY EVEN MATTEL

8   IS THAT WHEN YOU GET A RULE 45 SUBPOENA, THERE IS LANGUAGE ON

9   IT THAT TELLS YOU WHAT TO DO AS THE RECIPIENT.  AGAIN, YOU GO

10  INTO COURT -- YOU KNOW, YOU HAVE THESE RIGHTS UNDER RULE 45;        11:0

11  IT'S ALL THERE ON PAGE 2 OF THE STANDARD FORM.

12          THIS ORDER, TO THE EXTENT IT DIVESTS THE THIRD-PARTY

13  DEPONENT OF THOSE RIGHTS -- NO NOTICE WAS EVER GIVEN TO ANY

14  THIRD-PARTY DEPONENT, TO MY KNOWLEDGE, THAT RATHER THAN FOLLOW

15  THE FEDERAL RULES, WHETHER THAT BE WHERE YOU FILE YOUR PAPERS,      11:0

16  THE TIMING, ALL OF THOSE OTHER ISSUES, YOU INSTEAD NEED TO

17  FOLLOW THIS ORDER.

18          THE COURT:  LIKE I SAY, THAT'S NOT AN ISSUE THAT --

19  IF THAT ISSUE WERE TO COME UP, COUNSEL, I CAN SEE THAT BEING

20  SOMETHING WHICH THE COURT WOULD NEED TO ADDRESS.                    11:0

21          MR. MCFARLAND:  AND THE LAST THING, THEN, YOUR HONOR,

22  IS THAT I DO THINK, ESPECIALLY WITH TWO OF MY CLIENTS,

23  MS. MARLOW AND MS. LEAHY, SUBPOENAS HAD ALREADY BEEN SERVED AND

24  OBJECTIONS HAD ALREADY BEEN SERVED, ACTUALLY BEFORE THE FIRST

25  STAY PERIOD BACK IN 2005; SO MATTEL WAS WELL AWARE IN THAT LATE     11:0

EXHIBIT _____3_____

1　2006 TIME FRAME, WHEN THIS STIPULATION AND ORDER WAS PRESENTED

2　TO THE COURT, THAT THERE WERE DISPUTES, VIS-À-VIS AT LEAST

3　THOSE TWO OF MY WITNESSES, AND YET NO NOTICE WAS GIVEN TO THEM,

4　NO OPPORTUNITY TO BE HEARD AT THAT TIME. AND IF THEY HAD BEEN

5　HEARD AT THAT TIME, THIS UNIFORMITY KNOWLEDGE THAT NOW EXISTS A

6　YEAR LATER WOULDN'T BE USED. IN OTHER WORDS, THEY COULD HAVE

7　SPOKEN UP AT THAT TIME AND SAID THAT THEY FELT THAT IT WAS

8　IMPORTANT TO HAVE ACCESS TO A FEDERAL JUDGE.

9　　　　THE COURT: SPEAKING OF DEPOSITIONS, I ASSUME THOSE

10　DEPOSITIONS THAT WE LAST DISCUSSED WENT FORWARD IN DECEMBER?

11　　　　MR. MCFARLAND: I'M PROUD TO SAY, YOUR HONOR, THAT

12　ALL THREE OF MY WITNESSES APPEARED ON THE DATES THAT I

13　REPRESENTED TO THIS COURT THAT THEY WOULD BE THERE.

14　　　　THE COURT: EXCELLENT. I'M VERY PLEASED TO HEAR

15　THAT, COUNSEL. THANK YOU VERY MUCH.

16　　　. YOU MAY, COUNSEL.

17　　　　MR. DELGADILLO: BRYANT DELGADILLO FOR NONPARTY

18　KAYE SCHOLER.

19　　　　TWO QUICK POINTS.

20　　　　THE FIRST, AS YOU MENTIONED, THE RULES OR TIMING HAD

21　NOT BEEN RAISED. A POINT OF CLARIFICATION, IT HAS, AT LEAST

22　WITH RESPECT TO KAYE SCHOLER. WE RESPONDED TO THE OPPOSITION

23　TO THEIR MOTION PURSUANT TO THE FEDERAL RULES ON THE ORDER THAT

24　THEY PROVIDED AS A FIVE-DAY NOTICE PERIOD, FIVE-DAY RESPONSE

25　PERIOD. WE DIDN'T BELIEVE WE WERE BOUND BY THAT ORDER, AS WE

11:0
11:0
11:0
11:0
11:1

EXHIBIT ____3____

47

1    ARGUED HERE.  WE RESPONDED IN ACCORDANCE WITH THE FEDERAL RULES

2    OF CIVIL PROCEDURE.  AND MATTEL'S COUNSEL HAS NOW TAKEN THE

3    POSITION BEFORE THIS COURT, AS WELL AS BEFORE JUDGE INFANTE,

4    THAT OUR OPPOSITION IS TIME-BARRED AND SHOULD BE STRICKEN.  SO

5    IT HAS BEEN RAISED.  WE'VE TAKEN THAT POSITION, THAT WE                    11:1

6    COMPLIED WITH THE FEDERAL RULES, WHICH UNDER THE SUBPOENA, THE

7    RULE 45 SUBPOENA, AS COUNSEL POINTED OUT, THERE WAS NO NOTICE

8    GIVEN UNDER THE SUBPOENA THAT WE RECEIVED THAT THE OBJECTION

9    PERIOD, ANY RESPONSE TO A MOTION TO COMPEL, WAS OTHERWISE

10   CHANGED.

11          THEY DID PROVIDE US WITH THE DISCOVERY ORDER IN THE

12   COURSE OF OUR MEET AND CONFERS, WHEN IT BECAME CLEAR THERE WAS

13   GOING TO BE SOME OBJECTIONS TO THE SUBPOENA AND THAT WE WOULD

14   HAVE TO WORK OUT.  AND MOTION PRACTICE ULTIMATELY RESULTED.

15   THEY DID PROVIDE US WITH THE DISCOVERY ORDER, BUT NOT IN               11:1

16   CONNECTION WITH THE ACTUAL SUBPOENA THAT OUR FIRM RECEIVED.

17          ANOTHER POINT IS, JUST TO CLARIFY AS WELL, THE

18   DISCOVERY ORDER SAYS THAT THE PARTIES ARE RESPONSIBLE FOR

19   PAYING FOR THE DISCOVERY REFEREE.  I JUST WANT TO MAKE CLEAR

20   THAT NONPARTIES ARE NOT GOING TO BE REQUIRED TO PAY.                   11:1

21          THE COURT:  THAT IS CORRECT.

22          MR. DELGADILLO:  THANK YOU, YOUR HONOR.

23          THE COURT:  THAT IS CORRECT.

24          MR. TIET:  KIEN TIET FOR NONPARTY STERN & GOLDBERG.

25   WE'RE IN THE SAME BOAT WITH KAYE & SCHOLER, AND WE'LL                  11:1

EXHIBIT _____3_____

48

1    JUST JOIN IN THEIR ARGUMENT.

2              THE COURT:  VERY WELL.  THANK YOU.

3              ANYBODY ELSE?

4              MS. MORGENTHALER:  ALISA MORGENTHALER FOR NONPARTY

5    FARHAD LARIAN.                                              11:1

6              AS MR. NOLAN MENTIONED, THERE HAVE BEEN OVER 50

7    THIRD-PARTY SUBPOENAS IN THIS CASE.  YET, THIS IS THE VERY

8    FIRST TIME THAT JUDGE INFANTE IS BEING ASKED TO CONSIDER A

9    THIRD-PARTY SUBPOENA OR DISCOVERY MATTER THAT WOULD BIND A

10   THIRD PARTY THAT DID NOT CONSENT TO THE DISCOVERY REFERENCE; SO   11:1

11   I DON'T THINK SOME OF THE EFFICIENCY ISSUES THAT HAVE BEEN

12   DISCUSSED AND THE COURTS CONCERN WITH INSTITUTIONAL MEMORY

13   APPLY HERE.

14             I THINK THAT THESE ARE ISSUES THAT CAN BE EFFECTIVELY

15   ADDRESSED BY A MAGISTRATE JUDGE, SUCH THAT THE BALANCE WEIGHS   11:1

16   IN FAVOR OF CONSIDERING THE DUE PROCESS CONCERNS TO THE

17   NONPARTIES VERSUS THE EFFICIENCY ARGUMENT TO THE PARTIES.

18             THE COURT:  LET ME ASK YOU THE SAME QUESTION.

19             ARE YOU AWARE OF ANY AUTHORITY WHICH PREVENTS THE

20   ASSIGNMENT OF THE THIRD PARTY TO THE DISCOVERY MASTER UNDER   11:1

21   53(C).

22             MS. MORGENTHALER:  I'M NOT AWARE OF ANY CASE THAT

23   SAYS THAT SPECIFICALLY.  I'M ALSO NOT AWARE OF ANY CASE MATTEL

24   CITED ON WHERE A NONPARTY HAS BEEN BOUND BY DISCOVERY REFERENCE

25   THAT WAS DONE PURSUANT TO THE STIPULATION OF THE PARTIES, WHICH   11:1

EXHIBIT _____3_____

PAGE _____58_____
JANUARY 7, 2008                    BRYANT VS. MATTEL

1   IS THE CASE HERE.

2          THE COURT:  VERY WELL.

3          MS. MORGENTHALER:  I THINK ONE OF THE OTHER COUNSEL

4   MENTIONED THAT THE CASES JUST HAVE NOT BEEN PARTICULARLY CLEAR

5   ON THIS POINT.                                                11:1

6          ALSO, JUST ONE FINAL POINT, I THINK THE PREJUDICE TO

7   THE NONPARTIES THAT IS TAKING PLACE HERE IS ILLUSTRATED BY THE

8   FACT THAT SOME OF THE EVIDENCE THAT MATTEL IS RELYING ON IN

9   SUPPORT OF THIS MOTION, THE DECLARATION OF BRIDGET HAULER, THE

10  THIRD PARTIES HAVE NEVER SEEN, BECAUSE THAT DECLARATION IS     11:1

11  FILED UNDER SEAL; IT'S DESIGNATED AEO UNDER THEIR PROTECTIVE

12  ORDER.  SO SINCE WE'RE NOT ATTORNEYS IN THE CASE, WE CAN'T SEE

13  IT.  I'VE NEVER SEEN IT.  WE CAN'T GET IT OFF PACER.

14         AND OTHER PARTICULAR LOGISTICAL PROBLEMS, WE NEVER

15  RECEIVED HARD COPIES OF THE REPLIES WE HAD TO GET, BECAUSE     11:1

16  INITIALLY, THE THIRD PARTIES WERE NOT ON PACER AND --

17         THE COURT:  THAT'S A PROBLEM WITH THE PROTECTIVE

18  ORDER, THOUGH.  THAT'S NOT A PROBLEM WITH THE DISCOVERY MASTER

19  PROCEDURE.

20         MS. MORGENTHALER:  RIGHT.  BUT I'VE SEEN SOME OF THE     11:1

21  EVIDENCE THAT THEY'RE RELYING ON HERE.

22         THE COURT:  I AGREE, THAT SOUNDS LIKE A PROBLEM AND

23  THAT NEEDS TO BE ADDRESSED, BUT THAT'S NOT BEFORE THE COURT

24  RIGHT NOW.  AND PERHAPS IT SHOULD BE.  I INVITE THE THIRD

25  PARTIES TO TAKE THAT UP AS APPROPRIATE, AND I WOULD TRUST THAT  11:1

EXHIBIT _____3_____

PAGE _____59_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1    MATTEL WOULD BE ABLE TO ADDRESS THAT ISSUE IN A MEET AND

2    CONFER.  BUT THAT'S CERTAINLY SOMETHING THAT NEEDS TO BE

3    ADDRESSED.  EVERYONE WHO HAS BEEN AFFECTED BY AN UNDER-SEAL

4    DOCUMENT IN LITIGATION -- NOT TO ISSUE AN ADVISORY OPINION, BUT

5    I'LL GIVE YOU THE ADVICE THAT THEY SHOULD SEE IT; THAT SEEMS          11:1

6    PRETTY SELF-EVIDENT.

7              I CERTAINLY AGREE WITH YOU, COUNSEL.

8              MS. MORGENTHALER:  THANK YOU, YOUR HONOR.

9              THE COURT:  THANK YOU.

10             MR. NOLAN, DO YOU HAVE ANYTHING ON THIS?                    11:1

11             MR. NOLAN:  THE ONLY THING IS, I WANTED TO MAKE SURE

12   I COME BACK TO THE EX-PARTE APPLICATION THAT WE HAVE.

13             THE COURT:  I HAVEN'T FORGOTTEN ABOUT IT.

14             MR. NOLAN:  OKAY.  THEN I'LL WAIT.

15             THE COURT:  LET'S GIVE MATTEL A CHANCE TO RESPOND TO        11:1

16   THIS THIRD AND FINAL MOTION THAT'S BEEN BROUGHT.

17             COUNSEL, REALLY, MY TENTATIVE IS IN YOUR FAVOR, BUT I

18   WOULD LIKE YOU TO ADDRESS THIS RULE 45 ISSUE THAT'S BEEN RAISED

19   BY MR. OVERLAND AND SOME OF THE OTHER COUNSEL.

20             MR. ZELLER:  I THINK, NUMBER ONE, THAT IT IS NOT           11:1

21   BEFORE THE COURT AT THIS JUNCTURE.  IF PEOPLE HAVE

22   PARTICULAR COMPLAINTS --

23             THE COURT:  IT IS AND IT ISN'T, THOUGH, BECAUSE IT'S

24   BEFORE -- AND I UNDERSTAND THAT IT'S NOW BEFORE JUDGE INFANTE,

25   AND THE ORDER IS BEING USED BY YOU AS A RESPONSE BEFORE             11:1

EXHIBIT _____ 3 _____

PAGE _____ 60 _____
BRYANT VS. MATTEL

JANUARY 7, 2008

1   JUDGE INFANTE, AND WE'RE GETTING PRETTY CLOSE TO THE END OF

2   DISCOVERY HERE. SO IF THIS IS A PROBLEM -- IT APPARENTLY

3   APPEARS TO BE SOMETHING THAT WE DIDN'T FULLY ADDRESS OR THINK

4   THROUGH, PERHAPS, WHEN WE WERE DOING THE DISCOVERY MASTER

5   MOTIONS.                                                      11:1

6           MR. ZELLER:  SURE.

7           ON THAT NOTE, I'LL BE HAPPY TO ADDRESS IT AS TO THE

8   SUBSTANCE.

9           THE COURT:  PLEASE.

10          MR. ZELLER:  NUMBER ONE, THE MOTION THAT WE HAVE      11:1

11  BROUGHT ONLY ASKED FOR CONFIRMATION OF THE DISCOVERY MASTER'S

12  AUTHORITY AS TO THIRD PARTIES WHO ARE WITHIN THE PERSONAL

13  JURISDICTION OF THE COURT.  THAT IS CONSISTENT WITH RULE 45.

14  THAT IS ALL THAT WE'VE ASKED THE COURT TO DO.  NONE OF THE

15  PARTIES HERE TODAY DISPUTE IN ANY WAY THAT THEY ARE CALIFORNIA  11:1

16  RESIDENTS WHO ARE SUBJECT TO THAT AUTHORITY.

17          THE COURT:  FAIR ENOUGH.

18          AS FAR AS THAT'S CONCERNED, I THINK I'M WITH YOU,

19  ALTHOUGH I DO WANT TO LOOK AT THIS ONE ISSUE RAISED BY

20  MR. OVERLAND.  BUT ADDRESS THIS RULE 45 PROBLEM.              11:1

21          MR. ZELLER:  I THINK THAT IT MAY NOT BE -- THERE'S A

22  UNITARY ANSWER TO THE SECOND PART OF THE RULE 45 ISSUE THAT WAS

23  RAISED.  LET ME START OFF WITH THE PARTIES WHO ARE INVOLVED

24  HERE.

25          WHO ARE WE TALKING ABOUT?  EXHIBIT ____3____          11:1

                                      PAGE ____61____

JANUARY 7, 2008                    BRYANT VS. MATTEL

1    NUMBER ONE, KAYE SCHOLER, WHO ARE ISAAC LARIAN'S

2    ATTORNEYS.  THERE IS NO QUESTION THAT THEY HAVE HAD NOTICE.

3    WHEN WE ENGAGED THEM, AS KAYE SCHOLER ADMITS, WE PROVIDED THEM

4    WITH A COPY OF THE DISCOVERY MASTER ORDER, AND WE ADVISED THEM

5    AS TO, CERTAINLY, WHAT OUR VIEWPOINT WAS, AS TO WHO WAS GOING        11:1

6    TO BE DECIDING THESE DISPUTES.

7    I DON'T SEE THAT AS BEING ANY DIFFERENT THAN,

8    NECESSARILY, TELLING SOMEONE WHO IS NOT A PARTY IN THE CASE, UP

9    UNTIL THAT POINT, 'WELL, HERE'S THE NAME OF THE JUDGE WHO IS

10   HANDLING IT.'                                                       11:1

11   THE COURT:  SO IS IT YOUR POSITION THAT WITH RESPECT

12   TO EACH OF THESE THIRD PARTIES, YOU HAVE PROVIDED NOTICE?

13   MR. ZELLER:  THAT'S CORRECT.

14   THE COURT:  THEN I'LL LET THE DISCOVERY MASTER TAKE

15   THAT UP, AND I'LL REVIEW THAT IF NECESSARY.                         11:1

16   MR. ZELLER:  WE DON'T NECESSARILY DISAGREE,

17   YOUR HONOR, THAT OBVIOUSLY, IN A PARTICULAR CASE, PERHAPS THERE

18   WOULD BE SOME ISSUE, PRESUMABLY, THE PARTIES WILL DO EVERYTHING

19   THEY CAN TO RESOLVE IT.  CERTAINLY, WE WOULD GIVE PEOPLE

20   NOTICE.

21   BUT ALL THEY WERE COMPLAINING ABOUT, YOU WILL NOTICE,

22   WAS THAT THE FACE OF THE SUBPOENA DOESN'T MENTION

23   JUDGE INFANTE.  I'M NOT REALLY SURE THAT THAT'S A MEANINGFUL

24   CONSIDERATION AT THIS JUNCTURE.

25   IT CERTAINLY WOULD NOT HAVE ANY MEANING TO A PARTY              11:1

EXHIBIT ____3____

```
 1   WHO IS OUTSIDE THE COURT'S PERSONAL JURISDICTION, BECAUSE I

 2   DON'T THINK WE NECESSARILY DISAGREE THAT IF IT'S AN

 3   OUT-OF-STATE PARTY, THEN THAT SUBPOENA IS GOING TO HAVE TO BE

 4   DEALT WITH BY A DISTRICT COURT WHO HAS PERSONAL JURISDICTION IN

 5   ACCORDANCE WITH THE NORMAL RULES.                                11:1

 6             THE COURT:  RIGHT.

 7             MR. ZELLER:  I MEAN, ALL WE'RE TALKING ABOUT HERE ARE

 8   PARTIES, NONPARTIES, WHO ARE CLEARLY WITHIN THE JURISDICTION OF

 9   THE COURT; SO WE'RE NOT PUSHING THE ENVELOPE ON THAT BY ANY

10   STRETCH OF THE IMAGINATION, YOUR HONOR.                          11:1

11             THE COURT:  VERY WELL.

12             WHILE YOU'RE AT THE LECTERN, LET'S SHIFT GEARS TO THE

13   EX-PARTE APPLICATION THAT'S BEEN BROUGHT BY MGA AND

14   CARTER BRYANT.

15             MR. QUINN:  I'D BE HAPPY TO ADDRESS IT, YOUR HONOR.    11:18

16             THE COURT:  ALL RIGHT.  SOMEBODY.

17             BECAUSE I TEND TO AGREE WITH MGA AND CARTER BRYANT ON

18   THIS ONE.  I DON'T THINK, BASED ON MY READING OF THE LAW -- AND

19   I KNOW THERE'S NOTHING CLEARLY ON POINT, AND YOU BOTH CITE TO A

20   VARIETY OF CASES IN THE COMMENTARY AND IN THE RULE ITSELF, BUT   11:18

21   MY SENSE IS THAT THE 30(B)(6) DEPOSITIONS DO NOT COUNT TOWARDS

22   THE NUMBER OF ALLOTTED DEPOSITIONS.  I THINK THAT'S PROBABLY

23   THE SAFEST WAY TO INTERPRET THE STATUTE, THE RULE, AND THE

24   CASES THAT HAVE ATTEMPTED TO GRAPPLE WITH THAT RULE.

25             I UNDERSTAND THAT THEY, FROM YOUR PERSPECTIVE, WENT    11:18
```

EXHIBIT ___3___

PAGE ___63___

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   AFIELD OF THE 30(B)(6) TOPICS, BUT THAT'S PERMITTED.  AND IN

2   TERMS OF THE ACTUAL COUNTING, I DON'T THINK THAT IT DOES US ANY

3   GOOD HERE AT THIS POINT TO TRY TO FIGURE OUT HOW FAR AFIELD

4   THEY WENT AND WHETHER THAT COUNTS.

5          MY TENTATIVE WOULD BE TO ONLY COUNT THOSE AS 30(B)(6)        11:1

6   DEPOSITIONS -- THOSE WOULD ALL COUNT TOWARDS ONE OF THE MATTEL.

7          MR. QUINN:  I UNDERSTAND, YOUR HONOR.

8          MY FIRST RESPONSE IS, WE'RE DEALING WITH THIS ON AN

9   EX-PARTE BASIS.

10         THE COURT:  I UNDERSTAND THE CONCERN HERE.                   11:1

11         MR. QUINN:  LET'S SET THAT ASIDE.

12         THE COURT:  IF WE WEREN'T THREE WEEKS AWAY FROM THIS,

13  I'D PROBABLY TELL YOU ALL TO GO TO THE DISCOVERY MASTER.

14         MR. QUINN:  INDEED.  AND THAT WAS GOING TO BE MY

15  SECOND POINT, YOUR HONOR.  I THINK THIS IS AN INFANTE ISSUE.       11:1

16         THE COURT:  IT PROBABLY IS, COUNSEL.

17         MR. QUINN:  SO THIRD, I AGREE WITH THE GENERAL

18  PRINCIPAL THAT THAT'S JUST A 30(B)(6) DEPOSITION.  BUT IF YOU

19  TAKE A 30(B)(6) DEPOSITION AND YOU ESSENTIALLY ABANDON -- I'LL

20  GIVE YOU A HYPOTHETICAL NOW -- YOU ABANDON THE TOPIC, YOU         11:2

21  ADDRESS THE TOPIC AND THEN YOU GO FAR OFF THE RESERVATIONS, AND

22  YOU'RE REALLY DEPOSING THAT WITNESS AS AN INDIVIDUAL FACT

23  WITNESS, THEN IT'S CONVERTED INTO AN INDIVIDUAL DEPOSITION.

24         THE COURT:  AND I GUESS I UNDERSTAND THAT.

25         MR. QUINN:  THERE'S CASE LAW THAT SAYS THAT.               11:2

EXHIBIT _____3_____

55

```
1        THE COURT:  I UNDERSTAND THAT ARGUMENT.  BUT YOU
2   CHOOSE WHO YOU BRING AS YOUR 30(B)(6) WITNESSES, AND THEY
3   DON'T.  I JUST THINK IT GOES DOWN A DIFFICULT ROAD.
4        I'M NOT SAYING THIS IS A PERFECT DECISION ON THIS.  I
5   THINK WE NEED TO COME UP WITH A GROUND RULE, AND I THINK THE     11:2
6   GROUND RULE I'M LEANING TOWARDS IS, LET'S NOT COUNT THE
7   30(B)(6) WITNESSES TOWARDS THE DEPOSITION TOTAL.
8        MR. QUINN:  I WOULD POINT OUT, YOUR HONOR, THAT IT
9   CREATES A POTENTIAL LOOPHOLE THAT TRUCKS CAN DRIVE THROUGH.
10       THE COURT:  I UNDERSTAND IT DOES.  AND THE ONLY THING     11:2
11  THAT STOPS THE LOOPHOLE IS THAT YOU GET TO CONTROL THAT; YOU
12  GET TO CONTROL YOUR 30(B)(6) DEPOSITIONS WITNESSES TO A CERTAIN
13  EXTENT AND THEY GET TO CONTROL THEIRS.
14       MR. QUINN:  THE PROBLEM IS, WE DON'T GET TO CONTROL
15  WHAT THEY ASK.                                                  11:2
16       THE COURT:  NO.
17       MR. QUINN:  ONCE THE PERSON IS IN THE CHAIR, THEY CAN
18  BE ASKED THINGS OUTSIDE THE SCOPE.
19       THE COURT:  SO PICK WHO YOU PUT IN THE CHAIR
20  CAREFULLY.                                                      11:2
21       MR. QUINN:  THE RULE GIVES US, REALLY, SOME
22  REQUIREMENTS THERE.  WE'RE SUPPOSED TO PUT SOMEBODY WHO'S MOST
23  KNOWLEDGEABLE AND NOT TRY TO BE DEFENSIVE AND GIVE THEM
24  SOMEBODY WHO WOULDN'T NECESSARILY HAVE THE BEST KNOWLEDGE ON
25  THE DESIGNATED SUBJECT BUT DOESN'T KNOW ANYTHING ELSE.          11:2
```

EXHIBIT _____ 3 _____

1           THE COURT:  AND THAT LEADS TO THE OPENNESS AND THE

2    TRANSPARENCY OF THE WHOLE PROCESS.

3           MR. QUINN:  THERE YOU GO.

4           THE COURT:  SO THE EX-PARTE APPLICATION IS GRANTED,

5    UNLESS MR. NOLAN WANTS TO CONVINCE ME OTHERWISE.              11:2

6           MR. NOLAN:  NO.  I LIKE WINNING.

7           I THINK IT'S ALSO NICE BECAUSE IT DOESN'T MAKE ME

8    HAVE TO SAY THAT, GEE, IT'S CURIOUS THAT WHEN WE WERE BACK HERE

9    ON OCTOBER 15TH --

10          THE COURT:  I UNDERSTAND.  THAT CERTAINLY COLORS THE     11:2:

11   COURT'S RULING ON THIS AS WELL.

12          MR. QUINN:  BUT, YOUR HONOR, JUST SO WE'RE ALL CLEAR

13   WHAT THE RESULTS OF THE EX-PARTE IS.

14          THE COURT:  I'LL TRY TO WRITE A REAL CLEAR ORDER THIS

15   TIME.                                                         11:2:

16          MR. QUINN:  THERE'S TEN INDIVIDUALS -- IN ADDITION TO

17   THE 30(B)(6) SUBJECTS, THERE ARE TEN INDIVIDUALS NOW THAT

18   THEY'RE ASKING US TO PRODUCE BY THE 28TH OF JANUARY.

19          THE COURT:  AS YOU SAID EARLIER, MR. QUINN, YOU HAVE

20   A LOT OF WORK TO DO.                                          11:2:

21          MR. QUINN:  THANK YOU, YOUR HONOR.

22          THE COURT:  THANK YOU, COUNSEL.

23          GOOD DAY.

24          MR. QUINN:  YOUR HONOR, I ASSUME THEY STILL HAVE TO

25   BE SERVED WITH SUBPOENAS IF THEY'RE NONPARTIES.              11:2:

EXHIBIT _____3_____

PAGE _____66_____

JANUARY 7, 2008                    BRYANT VS. MATTEL

57

1      **THE COURT:** I THINK THAT'S PART OF THE RULES.

2      **MR. NOLAN:** OKAY. YOUR HONOR, THESE LAST-MINUTE

3  'HAIL MARY' PASSES CAUSE A LOT OF CONFUSION. I'VE JUST GOT TO

4  ADDRESS THIS.

5      UP UNTIL NOW, MATTEL HAS ALWAYS INDICATED -- FIRST OF      11:2

6  ALL, THEY NEVER OBJECTED TO THE FACT THAT WE DIDN'T ISSUE

7  SUBPOENAS. BUT WE'LL ISSUE SUBPOENAS.

8      BUT MATTEL HAS TO BE AUTHORIZED TO ACCEPT SUBPOENAS,

9  BECAUSE THEY HAVE OBJECTED IN THE PAST WHEN I'VE TRIED TO SERVE

10  SUBPOENAS OR SOMEBODY HAS SERVED SUBPOENAS ON THEM.      11:2

11      WILL THEY ACCEPT SUBPOENAS FOR THESE EMPLOYEES?

12      **THE COURT:** MR. QUINN, WILL YOU ACCEPT SUBPOENAS FOR

13  YOUR MATTEL EMPLOYEES?

14      **MR. QUINN:** NOT EX-EMPLOYEES. MOST OF THESE ARE

15  EX-EMPLOYEES.

16      AND I'VE GOT TO DEFER TO MR. ZELLER ABOUT THE

17  COMMITMENTS THAT WE'VE MADE BEFORE, WHICH WE STAND BY.

18      **MR. ZELLER:** WE ABSOLUTELY STAND BY IT. BUT THAT IS

19  NOT A CORRECT STATEMENT OF WHAT'S GOING ON HERE.

20      NUMBER ONE, TWO OF THE PEOPLE WHO ARE IDENTIFIED      11:2

21  HERE, MILT ZABLOW AND ROB SIMONEAU, ARE EX-EMPLOYEES. THEY ARE

22  NOT EVEN CURRENT MATTEL EMPLOYEES. THEY'VE NEVER BEEN SERVED

23  WITH A SUBPOENA. WE'VE NEVER BEEN ASKED TO ACCEPT SERVICE OF

24  SUBPOENA FOR THEM. SO THEY ARE EX-EMPLOYEES. THE OTHER

25  PEOPLE, A NUMBER OF THEM, EXCEPT FOR THREE, ARE LOW-LEVEL      11:2

EXHIBIT _____ 3 _____

58

```
 1   EMPLOYEES WHO ARE NOT SUBJECT TO RULE 30.

 2          NOW, WHAT WE HAVE SAID IN TERMS OF OUR

 3   REPRESENTATIONS TO ACCEPT SERVICE IS VERY SPECIFIC.  IT IS

 4   MATTEL'S CURRENT DIRECTORS AND OFFICERS.  IT DOES NOT EXTEND TO

 5   PEOPLE WHO ARE FORMER.  WE HAVE SAID, CERTAINLY, IF THERE ARE       11:2

 6   FORMER PEOPLE THAT THEY WANT TO ASK US ABOUT --

 7          THE COURT:  I'M GOING TO STOP YOU HERE FOR A SECOND.

 8          THIS IS BEYOND THE SCOPE OF THE EX-PARTE APPLICATION.

 9          ALL I'M DOING IS, I'M GRANTING THE EX-PARTE

10   APPLICATION IN TERMS OF THE COUNTING OF THE WITNESSES.  I'M NOT     11:2

11   GOING TO WADE INTO -- I NEED TO RETRACT MY STATEMENT IN TERMS

12   OF WHAT -- I'M NOT OFFERING ANY RULING RIGHT NOW WITH RESPECT

13   TO THE SERVICE OF SUBPOENAS.

14          MR. NOLAN:  FINE, YOUR HONOR.

15          COULD YOU JUST ORDER MATTEL TO ADVISE US BY CLOSE OF        11:2

16   BUSINESS TODAY OF THE TEN WHO THEY REPRESENT AND WHO THEY

17   DON'T.  I THINK THAT'S REASONABLE, ISN'T IT?

18          MR. QUINN:  THAT'S NO PROBLEM.

19          THE COURT:  VERY GOOD.  THAT'S NOT A PROBLEM.

20          THANK YOU, COUNSEL.                                         11:2

21

22

23

24   / / /

25   / / /                              EXHIBIT ___3___

                                        PAGE ___68___
```

JANUARY 7, 2008                    BRYANT VS. MATTEL

59

```
 1                              CERTIFICATE

 2

 3     I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
       STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
 4     THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
       ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
 5     CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
       THE UNITED STATES.

 6

 7

 8     THERESA A. LANZA, CSR, RPR              1-16-08
       FEDERAL OFFICIAL COURT REPORTER            DATE

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
                                   EXHIBIT ____3____
25
                                   PAGE ____69____
```

JANUARY 7, 2008                    BRYANT VS. MATTEL

EXHIBIT 4

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA  90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:  tnolan@skadden.com

5  KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Times Square
   New York, NY  10036
7  Telephone:  (212) 735-3000
   Facsimile:  (212) 735-2000
8  E-mail:  kplevan@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC.,
10 ISAAC LARIAN, MGA
   ENTERTAINMENT (HK) LIMITED,
11 and MGAE de MEXICO S.R.L. de
   C.V.
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16 CARTER BRYANT, an individual       ) CASE NO. CV 04-9049 SGL (RNBx)
                                      )
17              Plaintiff,            ) Consolidated with Case No. 04-9059
                                      ) and Case No. 05-2727
18         v.                         )
                                      ) **MGA DEFENDANTS' (1)**
19 MATTEL, INC., a Delaware           ) **OPPOSITION TO MATTEL,**
   corporation                        ) **INC.'S MOTION FOR LEAVE TO**
20                                    ) **TAKE ADDITIONAL**
                Defendant.            ) **DISCOVERY AND OBJECTIONS**
21                                    ) **TO DISCOVERY MASTER**
                                      ) **ORDER OF SEPTEMBER 28, 2007,**
22                                    ) **AND (2) JOINDER IN CARTER**
                                      ) **BRYANT'S OPPOSITION TO**
23                                    ) **MATTEL'S MOTION**
                                      )
24                                    ) Honorable Stephen G. Larson
                                      )
25                                    )
   Consolidated with MATTEL, INC. v.  ) Date: January 7, 2008
26 BRYANT and MGA                     ) Time: 10:00 a.m.
   ENTERTAINMENT, INC. v.             ) Place: Courtroom 1
27 MATTEL, INC.                       )
                                      ) EXHIBIT _____4_____
28                                    )
                                      ) PAGE _____70_____

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... iii

I.    PRELIMINARY STATEMENT. .......................................................1

II.   STATEMENT OF FACTS. .............................................................3

III.  THE COURT SHOULD DENY MATTEL'S MOTION BECAUSE THE COURT HAS ALREADY GIVEN MATTEL A FULL AND FAIR OPPORTUNITY TO TAKE DISCOVERY IN THIS CASE. ...............................................................................5

      A.   The Federal Discovery Rules Do Not Support Mattel's Request for Additional Discovery. ..........................................5

      B.   Mattel Is Not Entitled to Any More Depositions. .......................7

           1.   Mattel Has Not Made a Good Faith, Diligent Effort to Adhere to the Court's 24-Deposition Limit. ...............8

           2.   Mattel Has Failed to Make a Particularized Showing as to Why It Needs Its Requested Depositions. .............10

           3.   Granting Mattel Additional Depositions Would Unduly Burden and Prejudice the MGA Defendants and the Various Non-Party Witnesses. ...........................14

           4.   Mattel's Improper Manipulation of Counter-Defendants' Deposition Count Warrants Denial of Mattel's Motion. ..........................................................15

      C.   Mattel Is Not Entitled to Any More Interrogatories.................17

           1.   Mattel Did Not Make a Good Faith, Diligent Attempt to Comply with the Court's Interrogatory Limit. ...................................................................17

           2.   Mattel Has Not Made a Particularized Showing of Necessity with Respect to Each of Its Interrogatories....19

           3.   Mattel's Proposed Interrogatories Are Overly Broad and Would Impose an Undue Burden on Counter-Defendants. ............................................................20

      D.   The Court Should Deny Mattel's Motion in View of Mattel's Unwillingness to Comply with Its Own Discovery Obligations. .........................................................21

      E.   Mattel Should Not Be Allowed to Circumvent the Discovery Master by Having this Court Rule on the Validity of Counter-Defendants' Responses and Objections to Mattel's Interrogatories.......................................................23

- i -
MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT  4

PAGE ___ 71

IV.    CONCLUSION ...................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _____ 4 _____

PAGE _____ 72 _____

1

## TABLE OF AUTHORITIES

2   **Cases**                                                                      Pages

3   *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*,
        187 F.R.D. 578 (D. Minn. 1999).................................................................6, 19
4

5   *In re At Home Corp.*,
        No. C 04-0931 MMC (JL), 2005 WL 289976
6       N.D. Cal. Feb. 4, 2005)................................................................................5, 6, 11

7   *Barrow v. Greenville Independent School District*,
        202 F.R.D. 480 (N.D. Tex. 2001) .....................................................................6

8   *Detoy v. City & County of San Francisco*,
        196 F.R.D. 362 (N.D. Cal. 2000) ....................................................................16
9

10  *Dixon v. Certainteed Corp.*,
        164 F.R.D. 685 (D. Kan. 1996).......................................................................10

11  *Jackson v. Laureate, Inc.*,
        186 F.R.D. 605 (E.D. Cal. 1999) .........................................................7, 8, 17
12

13  *Johnson v. Mammoth Recreations, Inc.*,
        975 F.2d 604 (9th Cir. 1992)...........................................................7, 10, 19
14
    *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
15      218 F.R.D. 667 (C.D. Cal. 2003) ......................................................................7

16  *Newell v. State of Wis. Teamsters Joint Council No. 39*,
        No. 05-C-552, 2007 WL 3166757 (E.D.Wis. Oct. 25, 2007) .........6, 10, 11, 19

17  *Safeco of Am. v. Rawstron*,
        181 F.R.D. 441 (C.D. Cal. 1998) ......................................................................5
18

19  *Veranda Beach Club Ltd. Partnership v. Western Surety Co.*,
        936 F.2d 1364 (1st Cir. 1991) ...........................................................................7

20  *Zivkovic v. Southern California Edison Co.*,
        302 F.3d 1080 (9th Cir. 2002)............................................................7, 10, 19
21

22  **Statutes**                                                                    Pages

23  Fed. R. Civ. P. 16(b)..........................................................................................7

24  Fed. R. Civ. P. 26(b)(2)(C)...........................................................................6, 11

25  Fed. R. Civ. P. 30(a)(2) ...................................................................................5, 6

26  Fed. R. Civ. P. 33 ...............................................................................................5

27  Fed. R. Civ. P. 33(a)........................................................................................5, 6

28

EXHIBIT _____ 4 _____

- iii -

PAGE _____ 73 _____

1      Counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA

2 Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively,

3 the "MGA Defendants") hereby submit this opposition to Mattel, Inc.'s Motion for

4 Leave to Take Additional Discovery and Objections to Discovery Master Order of

5 September 28, 2007. In addition, the MGA Defendants hereby join in Carter

6 Bryant's opposition to Mattel's motion.

7 **I.    PRELIMINARY STATEMENT.**

8      The Court recently granted a motion by Mattel to serve a "supplemental"

9 interrogatory on affirmative defenses that Mattel conceded was the equivalent of 37

10 separate interrogatories. Unwilling to exercise even an ounce of discipline or self-

11 control, Mattel has returned to the Court demanding that it now receive at least fifty

12 additional non-expert depositions, two additional Rule 30(b)(6) depositions covering

13 160 topics, and 19 additional interrogatories. Having given Mattel considerably

14 more than an inch, the Court must not let Mattel take far more than a mile.

15      When the Court set the deposition and interrogatory limits in February 2007,

16 Mattel was well aware of the issues and witnesses that are the subject of the

17 additional interrogatories and depositions that Mattel now seeks. In fact, Mattel told

18 the Court at the Rule 16(b) Scheduling Conference that at least "some 70" witnesses

19 had been identified as having relevant knowledge. (Declaration of Amy S. Park

20 ("Park Decl."), Ex. 1 (2/12/07 Sched. Conf. Tr.) at 10:9-20.) Nevertheless, the Court

21 limited each side to 24 non-expert depositions with the expectation that this number

22 "would hopefully capture most of the individuals who have some information to

23 provide in this case." (*Id.* at 22:19-22.) The Court also limited interrogatories to

24 fifty per side, which Mattel had proposed and represented would be sufficient to

25 cover *all* issues in the case. (Park Decl., Ex. 3 at 5.)

26      Despite the Court's admonition that these were not "soft limits," Mattel and its

27 counsel have proceeded with discovery as if they could obtain any number of

28 additional interrogatories and depositions as a matter of right. With full knowledge

**EXHIBIT** _____

1 of the issues and witnesses that Mattel now seeks to take discovery of, Mattel chose
2 to devote its allotted interrogatories and depositions to other matters. Mattel served
3 interrogatories and took depositions indiscriminately and without any regard for
4 whether it would have any interrogatories or depositions left for Phase 2 issues.
5 Indeed, it appears that Mattel deliberately chose to spend most of its allotted
6 discovery tools on Phase 1 issues in order to manufacture the situation in which they
7 now find themselves. Having made that choice, Mattel has only itself to blame for
8 its current predicament.

9       Mattel cannot legitimately assert that it has not had a full and fair opportunity
10 to conduct reasonable discovery. Mattel has used virtually every discovery tool
11 available, frequently using multiple discovery tools to seek the same information.
12 To date, Mattel has taken 21 depositions and served more than fifty interrogatories,
13 more than fifty subpoenas, more than 2,300 document requests, and more than 4,500
14 requests for admissions. (Park Decl., ¶ 1.) If there are relevant areas that Mattel has
15 not yet covered in its "scorched earth" discovery, it is because Mattel has failed to
16 manage discovery properly, not because Mattel has too few discovery requests and
17 depositions at its disposal.

18       In contrast to Mattel's shotgun approach, counter-defendants have used their
19 interrogatories and depositions judiciously to stay within the Court's limits. To date,
20 they have taken only eight of their 24 allotted depositions. Having nearly used up its
21 allotted depositions though, Mattel does not want anyone else to take any more
22 depositions. Mattel now claims for the first time that counter-defendants have only
23 one allotted deposition left based on a newly concocted argument that their prior
24 Rule 30(b)(6) depositions of Mattel now count as multiple depositions, and is
25 refusing to produce witnesses on that basis. (Park Decl., ¶ 25 & Ex. 17 at 2.) Under
26 this new argument, Mattel would be in contempt of the Court's Scheduling Order
27 because it would have exceeded the deposition limit months ago. (Park Decl., ¶ 24.)
28                                          EXHIBIT ____4____

                                                              75
- 2 -                              PAGE _____
MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

1 | Mattel's argument is absurd and serves only to highlight its abusive and harassing
2 | discovery practices.

3 |     The Court's discovery limits apply to both sides equally and Mattel must be
4 | required to work within those bounds. To hold otherwise would punish counter-
5 | defendants for following the rules, but reward Mattel for adopting a strategy that
6 | totally disregards the Court's limits. With only 15 court days left in Phase 1
7 | discovery when Mattel's motion is to be heard, Mattel should not be allowed to delay
8 | and disrupt counter-defendants' efforts to complete discovery with the vast amounts
9 | of additional discovery that Mattel now seeks. Mattel's request is without merit and
10 | patently unfair. Accordingly, the Court should deny Mattel's motion in its entirety.

**11 | II.    STATEMENT OF FACTS.**

12 |     On February 12, 2007, the Court held a Rule 16(b) Scheduling Conference to
13 | schedule relevant dates and set discovery limits. By that time, all of the claims
14 | currently at issue in this case were well known to the parties. (Mot. at 3-4.) In
15 | addition, well over a hundred potential witnesses had been identified in the parties'
16 | Rule 26 initial and supplemental disclosures. (Proctor Decl., Ex. 19 at 3-19.) Indeed,
17 | Mattel alone identified *155 witnesses* in its January 5, 2007 disclosures, including
18 | the vast majority of the witnesses it now seeks leave to depose. (*Id.*)

19 |     In preparation for the Scheduling Conference, the parties submitted a Joint
20 | Rule 26(f) Report. (Park Decl., Ex. 3.) In the report, Mattel proposed that the Court
21 | adopt the following discovery limits. First, Mattel proposed that the Court limit the
22 | parties to fifty interrogatories per side to address all issues in the case. (*Id.* at 5.)
23 | Second, Mattel proposed that the Court allow the parties forty depositions per side,
24 | not including expert depositions or Rule 30(b)(6) depositions. (*Id.*)

25 |     At the Scheduling Conference, the Court granted Mattel's proposal of fifty
26 | interrogatories per side to address all issues. (Proctor Decl., Ex. 6 at 1.) With
27 | respect to the deposition limit, Mattel argued that there were at least "some 70"
28 | witnesses with relevant knowledge. (Park Decl., Ex. 1 (2/12/07 Sched. Conf.) at

EXHIBIT _____ *4*

1   10:9-20.) The Court rejected Mattel's proposal of 40 non-expert depositions and

2   unlimited Rule 30(b)(6) depositions, finding Mattel's proposal to be "disconcerting."

3   (*Id.* at 8:23-25.) Instead, the Court limited depositions to 24 per side with the

4   expectation that this "would hopefully capture most of the individuals who have

5   some information to provide in this case." (*Id.* at 22:19-22.) The Court allowed the

6   parties to request additional discovery if necessary, but expressly contemplated that

7   such requests would be limited to small increases. (*Id.* at 23:1-4 ("[I]f you get to the

8   point where you need ... 25 fact witnesses, you can make application to this Court

9   and the Court will consider that ...") .)

10   On September 21, 2007, Mattel filed a motion for leave to consolidate 37

11   separate interrogatories regarding each of counter-defendants' affirmative defenses

12   into a single "supplemental" interrogatory that would not count against the fifty-

13   interrogatory limit. (Park Decl., Ex. 4.) Mattel argued that it had already served 41

14   interrogatories and would exceed the limit if it were not allowed to combine the 37

15   interrogatories. (*Id.* at 7 & 9.) Notably, Mattel did not mention anything in its

16   motion about needing any further expansion of the interrogatory limit. On December

17   3, 2007, the Court granted Mattel's motion. (Docket Item 1180.)

18   Mattel has fully exhausted its interrogatory limit and has nearly exhausted its

19   deposition allotment, having taken 21 depositions to date.[1] Mattel has also taken

20   mountains of other discovery, including more than fifty subpoenas, more than 2,300

21   document requests, and more than 4,500 requests for admissions. (Park Decl., ¶ 1.)

22   To date, counter-defendants have taken 8 depositions. (Park Decl., ¶ 24.) On

23   December 20, 2007, however, Mattel informed counter-defendants for the first time

24   that Mattel believed that counter-defendants had taken 17 depositions and, including

25   currently noticed or scheduled depositions, had only one more deposition left. (Park

26

27   [1] In addition to the 18 witnesses Mattel deposed prior to filing its motion, Mattel has

28   since deposed Margaret Hatch-Leahy, Elise Cloonan and Jeanne Galvano.

EXHIBIT _____ 4

1 Decl., Ex. 17.) On that basis, Mattel objected to MGA's ten deposition notices and

2 refused to provide a deposition date for more than one of the ten witnesses. (*Id.* ¶ 24.)

3 Mattel's new theory is based on an argument that during the depositions of many of

4 Mattel's Rule 30(b)(6) designees, counter-defendants purportedly exceeded the

5 scope of the designations and were therefore deposing those designees both as

6 Mattel's representatives and in their individual capacities. (*Id.*) Although counter-

7 defendants had been requesting deposition dates for various witnesses from Mattel

8 for weeks, Mattel never mentioned that it believed counter-defendants were at or

9 near their deposition limit, even though counter-defendants told Mattel in mid-

10 November that they still had 18 depositions remaining. (Park Decl., ¶ 24; Exs. 2, 16,

11 18 & 19.) Under Mattel's new theory of calculating depositions, Mattel has taken 29

12 depositions to date and first violated the Court's 24-deposition limit in October 2007,

13 when it took its twenty-fifth deposition. (Park Decl., ¶ 24.)

14 **III. THE COURT SHOULD DENY MATTEL'S MOTION BECAUSE THE COURT HAS ALREADY GIVEN MATTEL A FULL AND FAIR**
15 **OPPORTUNITY TO TAKE DISCOVERY IN THIS CASE.**

16 **A. The Federal Discovery Rules Do Not Support Mattel's Request for Additional Discovery.**
17

18 The Federal Rules of Civil Procedure require courts to place appropriate

19 limitations on discovery. Rules 30 and 33 restrict a party to 10 depositions and 25

20 interrogatories, respectively, absent leave of court. *See* Fed. R. Civ. P. 30(a)(2)(A)

21 & 33(a). These numerical limits were enacted to reduce litigation costs and increase

22 efficiency of interrogatory and deposition practice. *See Safeco of Am. v. Rawstron*,

23 181 F.R.D. 441, 443 (C.D. Cal. 1998) ("The purpose of this revision is to reduce the

24 frequency and increase the efficiency of interrogatory practice."), quoting Fed. R.

25 Civ. P. 33, Advisory Comm. Notes to 1993 Amendment; *In re At Home Corp.*, No. C

26 04-0931 MMC (JL), 2005 WL 289976, at *3 (N.D. Cal. Feb. 4, 2005) ("Rule 30 is

27 designed to reduce litigation costs and delay of discovery by setting a limit on the

28 number of depositions, which is one of the more expensive forms of discovery.").

**EXHIBIT** _____ 4

1        In addition, Rule 26(b)(2) provides that discovery "shall be limited by the

2   court" if it finds any of the following:

3           (i) the discovery sought is unreasonably cumulative or duplicative, or
            can be obtained from some other source that is more convenient, less
4           burdensome, or less expensive;

5           (ii) the party seeking discovery has had ample opportunity to obtain the
            information by discovery in the action; or
6

7           (iii) the burden or expense of the proposed discovery outweighs its
            likely benefit, considering the needs of the case, the amount in
            controversy, the parties' resources, the importance of the issues at stake
8           in the action, and the importance of the discovery in resolving the issues.

9   Fed. R. Civ. P. 26(b)(2)(C). Thus, absent agreement of the parties, a court may only

10   expand the limits on interrogatories and depositions "to the extent consistent with the

11   principles stated in Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2) & 33(a).

12        Any request for additional depositions or interrogatories must be supported by

13   a "particularized showing of why the discovery is necessary." *At Home*, 2005 WL

14   289976, at *3 (internal quotations and citation omitted); *Archer Daniels Midland Co.*

15   *v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 586 (D. Minn. 1999). The party

16   seeking additional discovery must "at an irreducible minimum" show that each

17   deposition or interrogatory "concern[s] an issue material to the case and [is] not

18   unreasonably cumulative or duplicative." *Barrow v. Greenville Indep. Sch. Dist.*,

19   202 F.R.D. 480, 483-84 (N.D. Tex.. 2001). *See also At Home*, 2005 WL 289976, at

20   *3 (denying request for 21 depositions where "many of [the witnesses] may

21   duplicate each other's testimony"). This showing must be made "for not only the

22   additional depositions [or interrogatories] but also the depositions [or interrogatories]

23   already taken. ... Absent such a rule, ... a party could circumvent the cap by taking

24   ten deposition[s] of questionable relevance first and leave the most crucial

25   depositions for the end, confident in the belief that leave of the court shall not be

26   denied." *Newell v. State of Wis. Teamsters Joint Council No. 39*, No. 05-C-552,

27   2007 WL 3166757, at *1 (E.D.Wis. Oct. 25, 2007), citing *Barrow*, 202 F.R.D. at

28   482-483.                                    EXHIBIT _____ 4 _____

1  Moreover, where, as here, a court has set discovery limits as part of its Rule

2  16(b) scheduling order, those limits shall not be modified except upon a showing of

3  good cause. Fed. R. Civ. P. 16(b). "This 'good cause' standard 'primarily considers

4  the diligence of the party seeking the amendment.'" *Matrix Motor Co. v. Toyota*

5  *Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003), quoting *Johnson v.*

6  *Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

> Because "[g]ood-faith compliance with [ ] Rule 16 plays an important role in this process," *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1371 (1st Cir.1991), not only must parties participate from the outset in creating a workable Rule 16 scheduling order but *they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation.* ...Accordingly, to demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, ...; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, ...; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order, ....

15  *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (emphasis added,

16  citations omitted). "If the party seeking the modification 'was not diligent, the

17  inquiry should end' and the motion to modify should not be granted." *Zivkovic v. So.*

18  *Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002), quoting *Johnson*, 975 F.2d at

19  609.

20  Applying the foregoing principles in this case, it is clear that Mattel has failed

21  to show the diligence and need required to support its request for more discovery.

22  **B.    Mattel Is Not Entitled to Any More Depositions.**

23  Mattel's request to take at least fifty additional depositions and two additional

24  Rule 30(b)(6) depositions covering 160 topics is untenable because Mattel has not

25  acted diligently, has failed to demonstrate sufficient need, and has made its request

26  for the purpose of harassing and unduly burdening the MGA Defendants, and the

27  non-party witnesses.

28  EXHIBIT ____4____

PAGE ____80____

1
2

### 1. Mattel Has Not Made a Good Faith, Diligent Effort to Adhere to the Court's 24-Deposition Limit.

3      When the Court imposed the 24-deposition limit, it was Mattel and its
4  counsel's obligation to make a good faith, diligent effort to adhere to that limit. *See*
5  *Jackson*, 186 F.R.D. at 608. This is particularly true because the Court made clear at
6  the Scheduling Conference that it was not going to allow a substantially greater
7  number of depositions. Despite Mattel's assertion that there were at least "some 70"
8  witnesses with relevant knowledge, the Court imposed the 24-deposition limit with
9  the expectation that this number "would hopefully capture most of the individuals
10  who have some information to provide in this case." (Park Decl., Ex. 1 (2/12/07
11  Sched. Conf.) at 10:9-20 & 22:19-22.) Notably, in setting the 24-deposition limit,
12  the Court rejected Mattel's proposal of forty non-expert depositions and unlimited
13  Rule 30(b)(6) depositions, finding Mattel's proposal to be "disconcerting." (Park
14  Decl., Ex. 1 (2/12/07 Sched. Conf. Tr.) at 8:23-25.)

15      Despite its duty to act diligently and in good faith, Mattel and its counsel have
16  made little effort to adhere to the 24-deposition limit. Rather than apportion its 24
17  depositions among the different claims and issues in this case, Mattel has used
18  almost all of its allotted depositions on Phase 1 witnesses. To date, Mattel has taken
19  21 depositions, although this number jumps to 29 applying Mattel's newly devised
20  counting technique. As Mattel concedes, only one of those depositions has been
21  directed at non-Phase 1 issues. (Mot. at 2.) Indeed, although Mattel knew before
22  February 2007 of the Phase 2 witnesses it now seeks to depose (*see* Proctor Decl., Ex.
23  19 at 3-19), Mattel did not reserve any of its 24 depositions for those witnesses.

24      In reviewing the list of witnesses whom Mattel has deposed, it is also clear
25  that Mattel has made no attempt to prioritize its depositions. Instead, Mattel has
26  used numerous depositions on matters that are duplicative of discovery Mattel has
27  already taken or on witnesses who have little or no relevant information.

EXHIBIT _____

28

PAGE _____ 81

- 8 -

1    For example, Mattel used two depositions to examine reporters Denise O'Neal
2  and Maureen Tkacik about whether quoted statements attributed to Isaac Larian in
3  articles they wrote were exact quotes. (Park Decl., Ex. 5 (O'Neal Dep.) at 9:1-14:4;
4  Ex. 6 (Tkacik Dep.) at 8:25-10:5.) Mattel also subpoenaed two other reporters—
5  Christopher Palmeri and Jeff Weiss—for deposition, presumably to ask them similar
6  questions about articles they wrote, and, but for scheduling issues, would have taken
7  those depositions by now. (Proctor Decl., Ex. 21.) Mattel used another deposition to
8  examine Bryant's 26-year-old niece solely because Bryant had given her one of his
9  computers as a gift, even though Mattel already had a copy of that computer's hard
10  drive from the relevant time period and already deposed Bryant about the computer.
11  (Park Decl., Exs. 7 & 8.) Mattel also deposed Dave Malacrida because they
12  mistakenly believed that he was an "MGA public relations employee with
13  knowledge regarding early Bratz design and marketing" (Mot. at 6), despite the fact
14  that Mattel included those same topics in its previously served Rule 30(b)(6)
15  deposition notice to MGA. (Proctor Decl., Ex. 38 at 6-7 (Topic Nos. 1 and 11).)

16    Mattel has only itself to blame for its lack of diligence in trying to adhere to
17  the Court's deposition limit. Most of the additional witnesses Mattel seeks to depose
18  were known to Mattel prior to the February 2007 Scheduling Conference, as were
19  the areas of knowledge that Mattel ascribes to them. (*See* Proctor Decl., Ex. 19 at 3-
20  19; Mot. at 10 n.26, n.28, n. 29, n.30.) Indeed, Mattel identified the vast majority of
21  those witnesses, including all but one of the Phase 2 witnesses, in its Rule 26
22  disclosures in January 2007. (Proctor Decl., Ex. 19 at 3-19.) Thus, Mattel cannot
23  blame any unforeseen or unanticipated developments following the Scheduling
24  Conference for Mattel's failure to allocate some of its depositions to witnesses who
25  were clearly known to Mattel at that time. Nor is anyone other than Mattel
26  responsible for Mattel's decision to use its depositions to examine tangential or
27  duplicative witnesses instead of, for example, any of the Phase 2 witnesses that
28  Mattel now seeks leave to depose.

EXHIBIT ____ 4

PAGE ____ 82

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

1    There is also no reason why Mattel could not have brought its motion for
2  additional discovery earlier. Mattel has known for many months about most of the
3  additional witnesses it wants to depose. In addition, since even before the February
4  2007 Scheduling Conference, Mattel has known that counter-defendants would not
5  agree to a deposition limit substantially greater than 24 because they had already
6  rejected Mattel's proposed limit of 40. (Park Decl., Ex. 3 at 6.) Indeed, even after
7  Mattel's counsel told the Court at the October 31, 2007 Status Conference that it
8  would be filing shortly a motion for additional discovery (Park Decl., Ex. 9
9  (10/31/07 Status Conf.) at 36:14-37:9), Mattel inexplicably waited another three
10  weeks before filing its motion. This delay alone caused the hearing on Mattel's
11  motion to be delayed by a month. (Park Decl., Ex 10 (showing that Mattel's motion
12  could have been heard on December 10, 2007, if filed by November 5, 2007).

13    Mattel has proceeded with discovery in this case as if the Court's deposition
14  limit were nonexistent. To the contrary, the deposition limit is an order of the Court
15  to which Mattel must make a diligent, good faith effort to adhere. Mattel has failed
16  to do so and its request for more depositions therefore should be denied. *See*
17  *Zivkovic*, 302 F.3d at 1087, quoting *Johnson*, 975 F.2d at 609 ("If the party seeking
18  the modification 'was not diligent, the inquiry should end' and the motion to modify
19  should not be granted.").

20              2.    **Mattel Has Failed to Make a Particularized Showing as to**
                      **Why It Needs Its Requested Depositions.**
21

22    By its motion, Mattel essentially seeks to depose almost every non-Mattel
23  employee or witness who has been identified as potentially having some knowledge
24  of relevant information in this case. However, "[t]he mere fact that many individuals
25  may have discoverable information does not necessarily entitle a party to depose
26  each such individual." *Newell*, 2007 WL 3166757, at *1, quoting *Dixon v.*
27  *Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996).

28

EXHIBIT ____4____

PAGE ____83____

1     Rather, Mattel must make a particularized showing that each deposition it has
2  taken and wants to take is necessary (e.g., that the information sought in the
3  deposition is relevant, not duplicative of other discovery, and not available through
4  other sources). *See* Fed. R. Civ. P. 26(b)(2)(C); *Newell,* 2007 WL 3166757, at \*1.
5  Given that Mattel waited until three weeks before the close of Phase 1 discovery to
6  have its motion heard, the Court also should more closely scrutinize Mattel's
7  assertion of need with respect to each Phase 1 witness since there would be little time
8  left in which to conduct any additional Phase 1 depositions.

9     Mattel's argument is essentially that it needs more depositions because there
10  are many more than 24 potential witnesses with knowledge of relevant facts.
11  However, "[t]he number of potential witnesses does not justify deposing every one."
12  *At Home*, 2005 WL 289976, at \*3. Moreover, this argument is the same argument
13  that Mattel unsuccessfully advanced at the February 2007 Scheduling Conference in
14  support of its proposed 40 non-expert depositions and unlimited Rule 30(b)(6)
15  depositions. (Park Decl., Ex. 1 (2/12/07 Sched. Conf.) at 10:9-20 (arguing that at
16  least "some 70" fact witnesses had been identified).) The Court was not persuaded
17  by Mattel's argument and rejected Mattel's proposal as "disconcerting." (*Id.* at 8:19-
18  25 & 22:19-22.) Far more disconcerting is Mattel's proposal, which would bring its
19  total non-expert depositions to more than 70, including two more Rule 30(b)(6)
20  depositions on 160 topics.

21     Mattel fails to make the particularized showing necessary to justify its
22  troubling proposal. With respect to witnesses Mattel has already deposed, Mattel
23  does nothing more than make a conclusory assertion that it "has had good cause for
24  each of those depositions" and then briefly identify each of those deponents. (Mot.
25  at 5-6.) Such a cursory discussion hardly constitutes the particularized showing that
26  Mattel is required to make. Moreover, it is clear that Mattel cannot make a
27  particularized showing for each witness it has already deposed because, as discussed
28

EXHIBIT _____ 4

PAGE _____ 84

1  above, Mattel has taken numerous depositions that either are duplicative of other
2  discovery or do not bear meaningfully on the issues to be tried in this case.

3      As to the additional witnesses Mattel wants to depose, Mattel's showing of
4  necessity is also lacking. Mattel seeks leave to depose at least 37 additional Phase 1
5  witnesses and 13 additional Phase 2 witnesses, although Mattel indicates that these
6  numbers represent the minimum numbers of additional depositions that it seeks.
7  (Mot. at 13-14.) Mattel, however, does not demonstrate how each witness's
8  knowledge is relevant to the specific issues in this case, why such information is not
9  duplicative or cumulative, or why Mattel cannot obtain such information from other
10 sources or through less burdensome means. For example, Mattel identifies three
11 MGA HK employees that it seeks to depose—Stephen Lee, Cecilia Kwok and Eric
12 Yip—but fails to show why their testimony would not be duplicative of each other or
13 of the Rule 30(b)(6) deposition notice that Mattel served on MGA HK.

14     Similarly, Mattel asserts that it needs two additional Rule 30(b)(6) depositions
15 covering 160 Phase 2 topics but fails to adequately demonstrate that each of the
16 proposed topics is relevant to Phase 2 issues and is not duplicative of other discovery.
17 For example, although Mattel claims that the proposed topics address only Phase 2
18 issues, several of the topics specifically relate to Bratz. (See, e.g., Mot., Ex. A at 11-
19 12 (Topics Nos. 38-46); Ex. B at 23-24 (Topics Nos. 85-87).) Mattel's proposed
20 Rule 30(b)(6) topics also include topics directed at the factual bases of Defendants'
21 affirmative defenses. (Mot. Ex. A at 11 (Topic No. 37); Ex. B at 24 (Topic No. 88).)
22 These topics are plainly duplicative of the "supplemental" interrogatory regarding
23 affirmative defenses that the Court recently allowed. Moreover, Mattel has stated its
24 belief that Rule 30(b)(6) depositions "are far inferior" to a contention interrogatory
25 for gathering full and complete information about affirmative defenses. (Park Decl.,
26 Ex. 4 at 9.) Thus, Mattel does not need depositions on these topics.

27     Moreover, it is clear from Mattel's list of witnesses that Mattel's primary
28 objective in seeking to additional depositions is to harass and intimidate the MGA

EXHIBIT ____4____

1   Defendants through these non-party witnesses. For example, Mattel claims that it
2   wants to depose Moss Adams, Mr. Larian's tax accounting firm, and Wachovia, one
3   of MGA's lenders, because they allegedly have knowledge of MGA's profits, net
4   worth, and payments to Mr. Larian. (Mot. at 11.) These non-parties, however, are
5   hardly material witnesses and have no meaningful, non-duplicative information to
6   provide. Indeed, whatever relevant information about MGA's finances that these
7   non-parties might have would have come from the MGA Defendants, from whom
8   Mattel has already sought and obtained discovery on these subjects. (See, e.g.,
9   Proctor Decl., Ex. 38 at 9 (identifying as topics for Mattel's Rule 30(b)(6) deposition
10  of MGA "YOUR revenues and profits from BRATZ…" and "YOUR net worth"); Ex.
11  39 at 8 (identifying as topic for Mattel's Rule 30(b)(6) deposition of MGA
12  "[p]ayments of money … that YOU have made to …Isaac Larian…"). Such
13  discovery obtained by Mattel has included numerous financial documents and
14  information, as well as the depositions of Mr. Larian and a MGA Rule 30(b)(6)
15  witness designated to testify about MGA's Bratz-related revenue and MGA's net
16  worth. (Park Decl., ¶ 4.)

17      Mattel also contends that it needs to depose several of MGA's current and
18  former attorneys regarding MGA's patent and trademark applications and copyright
19  registrations. (Mot. at 10.) Mattel, however, has already sought and obtained
20  deposition testimony and other information regarding these subjects from the MGA
21  Defendants. (Proctor Decl., Ex. 38 at 10 (identifying as topic for Mattel's Rule
22  30(b)(6) deposition of MGA "[t]he applications for registration and the registrations
23  for copyright, patent, trademark or any other right that REFER OR RELATE TO
24  BRATZ or BRATZ DESIGNS sought, made or obtained by, for or on behalf of
25  YOU or BRYANT, including without limitation COMMUNICATIONS pertaining
26  thereto").) Indeed, MGA already produced two Rule 30(b)(6) witnesses on these
27  subjects for two days of deposition by Mattel and has even agreed to produce one of
28  its Rule 30(b)(6) witnesses for some follow-up examination. (Park Decl., ¶¶ 2 & 3.)

EXHIBIT

PAGE    86

1 | Given the ample discovery that Mattel has already taken on issues such as MGA's
2 | profits and its applications for intellectual property protections, Mattel does not
3 | "need" to depose witnesses such as Moss Adams, Wachovia or MGA's current and
4 | former attorneys.

5 |       Having failed to make a particularized showing of need with respect to each
6 | witness that Mattel has deposed and seeks leave to depose, Mattel's motion for
7 | additional depositions is unwarranted and must be denied.

8 |              3.    **Granting Mattel Additional Depositions Would Unduly
                        Burden and Prejudice the MGA Defendants and the Various
9 |                    Non-Party Witnesses.**

10 |       Glaringly absent from Mattel's motion is any discussion of the negative
11 | impact that its requested expansion of the Court's deposition limit would have on the
12 | other parties, the non-party witnesses, as well as the Court's schedule. It is not
13 | surprising, however, that Mattel would want to avoid discussing this issue because
14 | the impact of allowing Mattel to have all, or even a small portion, of the additional
15 | depositions it seeks would be severe.

16 |       Because Mattel waited until late November to file its motion, only three weeks
17 | of Phase 1 discovery will remain when Mattel's motion is heard. Mattel, however,
18 | seeks at last fifty additional deponents, including at least 37 Phase 1 witnesses and
19 | two more Rule 30(b)(6) depositions on 160 topics. Conservatively assuming that
20 | Mattel could cover one witness or five Rule 30(b)(6) topics per day, *it would take*
21 | *nearly four months to complete all of the depositions Mattel has requested.* It
22 | would be impossible under the current schedule for the MGA Defendants and their
23 | respective counsel to finish taking their Phase 1 discovery, complete their responses
24 | to Mattel's continual stream of new discovery requests, and prepare for and
25 | participate in Mattel's additional depositions. Similarly, it would be unreasonable to
26 | impose such a compressed schedule on the non-party witnesses.

27 |       Modifying the current schedule or allowing only some additional Phase 2
28 | depositions is not the solution; denying Mattel's motion in its entirety is the solution.

EXHIBIT _____ 4

1   After litigating this case for nearly four years, Mattel should not be allowed to extend
2   the schedule at the eleventh hour so that it may engage in essentially limitless
3   discovery.  Mattel has had ample opportunity to take discovery regarding the issues
4   in this case.  In addition to its exhausted allotment of interrogatories and depositions,
5   Mattel has served thousands of requests for production and thousands of requests for
6   admissions.  The time has come for Mattel to wrap up its discovery, not continue to
7   ramp it up.

8       Even granting Mattel only additional Phase 2 witnesses would also unduly
9   burden the MGA Defendants.  Because Phase 2 discovery is proceeding concurrently
10  with the Phase 1 litigation, if Mattel obtains additional Phase 2 depositions, counter-
11  defendants would likely have to interrupt their preparation of Phase 1 summary
12  judgment motions and trial preparation to prepare for and participate in these
13  additional Phase 2 depositions.  Moreover, Mattel's requested Phase 2 depositions
14  include Rule 30(b)(6) depositions of MGA and MGA Mexico covering 160 topics.
15  The amount of time and resources required to identify witnesses on each of these 160
16  topics and prepare for and participate in the depositions of each of those witnesses
17  would be enormous.  The MGA Defendants should not be forced to disrupt their case
18  preparation because of Mattel's failure to abide by the Court's discovery limits.

19      Because Mattel's request for scores of additional depositions would unduly
20  burden and unfairly prejudice counter-defendants and the non-party witnesses, the
21  Court should deny Mattel's motion.

22          4.    **Mattel's Improper Manipulation of Counter-Defendants'**
                  **Deposition Count Warrants Denial of Mattel's Motion.**
23

24      Mattel's recent attempt to deny counter-defendants even the 24 depositions
25  allowed under the Court's current order exemplifies Mattel's abusive discovery
26  tactics and underscores the importance of denying Mattel's request for additional
27  discovery.

28

EXHIBIT _____ 4

PAGE _____ 88

- 15 -
MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

1      Until December 20, 2007, one of the few undisputed issues in this case was
2  how to count depositions. Each separately noticed deposition of a witness counted
3  as one deposition. A deposition noticed under Rule 30(b)(6) also counted as one
4  deposition, regardless of the number of designated witnesses who testified. This
5  approach is consistent with how courts count Rule 30(b)(6) witnesses. *See Detoy v.*
6  *City & County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) ("Nor should
7  one witness count as two depositions for purposes of the Local Rules' limit on the
8  number of depositions to be taken by each party. Such a rule would encourage
9  defending counsel to take a hard line and force an opponent to expend its deposition
10  allotment."). Under this approved methodology, Mattel has taken 21 depositions to
11  date and counter-defendants have taken 8 depositions to date.

12      On December 20, however, after MGA had been trying for weeks to secure
13  deposition dates for numerous Mattel witnesses (Park Decl., Exs. 2, 16, 18 & 19),
14  Mattel took the position for the first time that if a Rule 30(b)(6) witness testified
15  outside the scope of his designation at his deposition, that deposition would count as
16  two depositions. (Park Decl., Ex. 17.) Under this methodology, Mattel argued that
17  counter-defendants could depose only one of the ten witnesses that counter-
18  defendants had asked to depose. (*Id.*) Mattel has now objected to producing any of
19  the ten witnesses for deposition until MGA identifies which *one* it wants. (*Id.* ¶ 24.)

20      Not only is Mattel's new position contrary to the law, it also exemplifies the
21  abusive tactics that Mattel has employed in this litigation. It is clear that Mattel has
22  taken this position at the eleventh hour to put counter-defendants in the same
23  predicament in which Mattel currently sits with respect to the deposition limit in
24  order to increase Mattel's chances of obtaining additional depositions. In effect,
25  Mattel is trying to extort additional depositions from counter-defendants. Had
26  Mattel genuinely believed that its methodology was the appropriate way to count
27  depositions, it would have stopped taking depositions in early October when it
28  reached 24 depositions to avoid being in contempt of the Court's Rule 16(b)

EXHIBIT _____ 4

1 | Scheduling Order. (Park Decl., ¶ 24.) The Court should not condone Mattel's
2 | improper tactics, which are solely intended to unfairly prejudice counter-defendants.

3 |     Accordingly, the Court should deny Mattel's request for additional depositions.

4 | **C.**    **Mattel Is Not Entitled to Any More Interrogatories.**

5 |     The same principles that weigh in favor of denying Mattel's request for
6 | additional depositions also support denial of Mattel's request for 19 additional
7 | interrogatories. Specifically, Mattel is not entitled to additional interrogatories for
8 | each of the following reasons: Mattel did not act diligently to try to comply with the
9 | Court's interrogatory limit; Mattel has not made a particularized showing of
10 | necessity with respect to each of its prior interrogatories and proposed interrogatories;
11 | and Mattel's request for additional interrogatories would unduly burden and
12 | prejudice the MGA Defendants.

13 |         **1.**    **Mattel Did Not Make a Good Faith, Diligent Attempt to**
14 |                **Comply with the Court's Interrogatory Limit.**

15 |     In arguing to exceed the 50-interrogatory limit, Mattel conveniently omits the
16 | fact that it was Mattel that originally proposed that limit to cover all issues in the
17 | case: "Mattel proposes that discovery should be taken on all issues, including
18 | liability, damages and affirmatives defenses … Mattel further proposes that each
19 | side be permitted to propound 50 interrogatories." (Park Decl., Ex. 3 (Joint Rule
20 | 26(f) Report) at 5.) Because the Court adopted Mattel's proposal as part of its Rule
21 | 16(b) Scheduling Order, Mattel is obligated to act diligently to comply with that
22 | interrogatory limit. *See Jackson*, 186 F.R.D. at 608. Mattel has not done so.

23 |     Tellingly, Mattel offers no explanation as to why it was not able to stay within
24 | the limit. Since Mattel was the party that proposed fifty interrogatories, Mattel
25 | should have had no problem complying with the limit. All of the issues for which
26 | Mattel now seeks leave to serve additional interrogatories were known to Mattel
27 | when the limit was imposed and therefore could have been included in Mattel's
28 | interrogatories. In short, nothing prevented Mattel from including some or all of its

EXHIBIT _____ 4

PAGE 90

1    proposed additional interrogatories among its fifty allotted interrogatories.

2    Nevertheless, rather than use any of its allotted interrogatories to address these issues,

3    Mattel used numerous interrogatories to address issues that were already the subject

4    of prior interrogatories or other discovery requests.

5        For example, Mattel served an interrogatory asking MGA to identify each

6    Bratz product sold and for each product, the number of units sold, the revenue

7    received, the costs incurred, and the gross and net profits. (Proctor Decl., Ex. 67 at 7

8    (Interrogatory No. 45).) Mattel, however, requested precisely the same information

9    in its Second Set of Document Requests to MGA. (Park Decl., Ex. 12 at 7-8

10   (Requests Nos. 3-7).)

11       In June 2007, Mattel served three interrogatories asking MGA to identify

12   every "BRATZ INVENTION" created prior June 1, 2001. (Proctor Decl., Ex. 13 at

13   8-9 (Interrogatories Nos. 12-14). Two years earlier though, Mattel had served an

14   interrogatory covering the same issue: "IDENTIFY, fully and separately, each and

15   every EMBODIMENT of BRATZ prior to December 31, 2001." (Proctor Decl., Ex.

16   10 at 7 (Interrogatory No. 7).) Mattel's use of its allotted interrogatories to duplicate

17   other discovery requests plainly demonstrates that Mattel has not acted diligently to

18   comply with the interrogatory limit.

19       In addition, Mattel did not act diligently in filing its motion for additional

20   interrogatories because Mattel clearly could have raised this issue earlier. At the

21   time of the February 2007 Scheduling Conference, Mattel knew that it had used up

22   24 interrogatories (which the Discovery Master later held were actually 26

23   interrogatories) and was well aware of all the issues for which Mattel now seeks

24   additional interrogatories. Thus, if Mattel believed it needed to address all of these

25   issues in its interrogatories, Mattel necessarily knew that fifty interrogatories would

26   not be enough at the time it proposed that limit to the Court.

27       Mattel also could have raised this issue in conjunction with its motion for

28   leave to file a "supplemental" interrogatory regarding affirmative defenses. By its

EXHIBIT _____  4/

1 own count, Mattel had used 41 of its allotted interrogatories by the time it filed its
2 motion in September 2007. (Park Decl., Ex. 4 at 7.) Yet, other than the
3 "supplemental" interrogatory, Mattel did not mention any need or desire to go
4 beyond the fifty-interrogatory limit. As discussed above with respect to Mattel's
5 request for additional depositions, Mattel also inexplicably waited three weeks to file
6 its motion for additional discovery after informing the Court at the October 31, 2007
7 Status Conference that it would be filing the motion shortly.

8     Because Mattel was not diligent with regard to the interrogatory limit, "'the
9 inquiry should end' and [Mattel's] motion to modify [the interrogatory limit] should
10 not be granted." *Zivkovic*, 302 F.3d at 1087, quoting *Johnson*, 975 F.2d at 609.

11         **2.**    **Mattel Has Not Made a Particularized Showing of Necessity**
             **with Respect to Each of Its Interrogatories.**
12

13     As with its request for more depositions, Mattel's request for additional
14 interrogatories must be supported by a "particularized showing of why the discovery
15 is necessary." *Archer Daniels*, 187 F.R.D. at 586. That showing must be made for
16 each interrogatory that Mattel seeks leave to serve and for each interrogatory that
17 Mattel has already taken. *See Newell*, 2007 WL 3166757, at *1. Mattel, however,
18 has failed to make the necessary showing with respect to both sets of interrogatories.

19     As to interrogatories it has previously served, Mattel does not assert any were
20 necessary. Instead, Mattel simply identifies the issues to which they related. (Mot.
21 at 17-18.) That Mattel's prior interrogatories may have generally related to relevant
22 issues does not come close to showing that each interrogatory was necessary. Indeed,
23 Mattel cannot make such a showing because, as discussed above, Mattel served
24 numerous interrogatories that were duplicative of other discovery requests served by
25 Mattel. Mattel also served interrogatories that sought irrelevant or tangential
26 information. For example, after the MGA Defendants' current counsel substituted in,
27 Mattel used one of its allotted interrogatories to try to find out why the MGA
28 Defendants' prior attorneys withdrew. (Proctor Decl., Ex. 65 at 9.) If Mattel wants

EXHIBIT     $\mathcal{4}$

1  to use its allotted interrogatories to embark on such fishing expeditions rather than to
2  take relevant, non-duplicative discovery, it should not be allowed to assert later that
3  it did not have enough interrogatories to address all of the parties' claims.

4      Mattel also has not made the necessary showing with respect to the additional
5  interrogatories it seeks leave to propound.  For example, Mattel has failed to
6  demonstrate that its proposed interrogatories are not duplicative of interrogatories
7  and other discovery requests that it previously served.  Proposed Interrogatories Nos.
8  68 and 69 request the MGA Defendants to identify all payments by MGA to former
9  Mattel employees. (Mot., Ex. C at 17.)  Mattel, however, previously served a
10  document request covering the same information: "All DOCUMENTS REFERRING
11  OR RELATING TO any bonuses, monetary incentives or payments other than as
12  part of base salary received by any of the FORMER MATTEL EMPLOYEES while
13  employed by YOU, including without limitation all DOCUMENTS REFERRING
14  OR RELATING TO the reasons therefor." (Park Decl., Ex. 13 at Request 74.)  Even
15  assuming such information were relevant, it is not necessary to request the same
16  information in both a document request and two interrogatories.  Because Mattel has
17  not shown the requisite need with respect to the interrogatories it has served and
18  seeks leave to serve, Mattel's request for additional interrogatories should be denied.

19          3.    **Mattel's Proposed Interrogatories Are Overly Broad and
                    Would Impose an Undue Burden on Counter-Defendants.**
20

21      The Court also should deny Mattel's request for additional interrogatories
22  because Mattel's proposed interrogatories are extremely overbroad and would
23  require the MGA Defendants to incur substantial burden and expense in responding
24  to them.  Many of Mattel's proposed interrogatories are not properly limited in time
25  or scope.  Proposed Interrogatory No. 56 exemplifies Mattel's overly expansive
26  interrogatories.  That interrogatory requests the identity of "all MATTEL
27  DOCUMENTS that MGA has obtained, received, reviewed, copied, reproduced,
28  transmitted, requested or used at any time since January 1, 1999." (Mot. Ex. C at 14.)

EXHIBIT _____

- 20 -

1 Mattel broadly defines "MATTEL DOCUMENTS" to include "any document[s] ...
2 obtained ... from MATTEL by any PERSON." (*Id.* at 7.) As written, proposed
3 Interrogatory No. 56 demands that MGA search through every paper and electronic
4 file over the past nine years for anything that might appear to relate to Mattel and
5 then try to trace the transfer history of each of those documents to determine whether
6 it came from anyone at Mattel. Such an undertaking would be enormous and would
7 impose a burden and expense that far outweighs any probative value of the
8 information sought. (*See also* Mot., Ex. C at 15 (Interrogatory No. 57: "IDENTIFY
9 all DOCUMENTS that REFER OR RELATE TO any MATTEL product or plan that
10 any of the FORMER MATTEL EMPLOYEES provided, transmitted or disclosed to,
11 shared with or used on behalf of MGA at any time since January 1, 1999...") & 16
12 (Proposed Interrogatory No. 64: "...state all facts which support YOUR claims
13 against Mattel in THIS ACTION...").)

14     In addition, as with Mattel's request for additional depositions, granting
15 Mattel's request for 19 more interrogatories would unfairly prejudice counter-
16 defendants by rewarding Mattel for disregarding the Court's discovery limits. While
17 counter-defendants have diligently and in good faith worked to stay within the
18 Court's discovery limits, Mattel has blown through both the limits as if they did not
19 exist. Mattel's conduct with regard to the interrogatories should be particularly
20 disconcerting to the Court since it was Mattel that proposed the fifty-interrogatory
21 limit. Counter-defendants should not have to incur the added burden and expense of
22 responding to additional interrogatories that were only "necessitated" by Mattel's
23 unwillingness to comply with the court-ordered discovery limits.

24     Accordingly, the Court should deny Mattel's request for more interrogatories.

25     **D.**    **The Court Should Deny Mattel's Motion in View of Mattel's**
         **Unwillingness to Comply with Its Own Discovery Obligations.**
26

27     Mattel also should not be allowed additional depositions or interrogatories
28 because Mattel has failed to fulfill its discovery obligations to counter-defendants in

EXHIBIT _____ 4

1  a reasonable or timely manner. For months, the MGA Defendants have tried to
2  schedule depositions of numerous Mattel employees and non-parties represented by
3  Mattel's counsel before the end of Phase 1 discovery. (Park Decl., Exs. 2, 16 & 19.)
4  Mattel has responded by either completely refusing to schedule the depositions or by
5  unreasonably delaying in scheduling witnesses. (*Id.*, Exs. 2, 16, 17 & 19.) For
6  example, although Mattel identified its CEO Robert Eckert as having personal
7  knowledge of "Mattel's business operations and the development and ownership of
8  intellectual property at issue" (Proctor Decl., Ex. 19 at 6), Mattel has refused to
9  permit counter-defendants to depose Mr. Eckert for any meaningful length of time.

10      Mattel has taken a similar approach with Rule 30(b)(6) designees, refusing to
11  designate witnesses or trying to limit improperly the depositions of designated
12  witnesses. (Park Decl., Ex. 2 & 16.)

13      Moreover, Mattel has refused even to provide dates for the depositions of any
14  of the following ten witnesses based on their recently concocted counting scheme
15  that is designed to falsely inflate the number of depositions that counter-defendants
16  have taken: Milt Zablow (former Mattel head of sales), Theresa Newcomb (former
17  Mattel corporate staffing employee), Roger Simoneau (Mattel investigator who
18  investigated Bryant in 2002), Evelyn Viohl (Mattel Vice President of Product Design
19  For Girls Dolls Plush Group), Hoi Hoffman-Briggs (pattern maker in Mattel's Collector
20  Group), Jean Gomez (Mattel Brand Manager of My Scene), Kevin Farr (Mattel Chief
21  Financial Officer), Tim Kilpin (Mattel Senior Vice President of Girls Marketing), Sheila
22  Kyaw (employee in Mattel Design Department) and Maureen Tafoya (Mattel Human
23  Resources Department, Manager of Corporate Staffing). (Park Decl. ¶ 24.) It is
24  apparent that Mattel's refusal to cooperate in the scheduling of depositions is
25  designed to run out the clock on Phase 1 discovery.

26      The same is true of Mattel's motion for additional discovery, which seeks to
27  depose at least another 37 Phase 1 witnesses. If Mattel's motion were granted,
28  Mattel would be able to use the additional depositions to disrupt and delay counter-

EXHIBIT _____ 4

1  defendants' efforts to complete Phase 1 discovery on time.  Because Mattel's

2  discovery practices have been abusive and improper, Mattel is not entitled to the vast

3  amounts of additional discovery it now seeks.

4          **E.     Mattel Should Not Be Allowed to Circumvent the Discovery Master
              by Having this Court Rule on the Validity of Counter-Defendants'**

5          **Responses and Objections to Mattel's Interrogatories.**

6          In addition to the 19 interrogatories that Mattel seeks leave to serve, Mattel

7  has also requested that the Court order counter-defendants to respond to numerous

8  interrogatories previously served by Mattel that counter-defendants have objected to

9  as exceeding the fifty-interrogatory limit.  Mattel's request, however, is improper

10  because the Discovery Master must decide such issues in the first instance and, in

11  fact, Mattel has already filed motions regarding counter-defendants' interrogatory

12  objections and responses with the Discovery Master.  Accordingly, there is no

13  reason for the Court to address this issue.

14          When Mattel filed its motion for additional discovery, the parties were still

15  meeting and conferring regarding whether and to what extent counter-defendants

16  would supplement their responses to Mattel's interrogatories.  (Proctor Decl., Ex. 76

17  at 1; Park Decl., Ex. 14.)  Indeed, after the filing of Mattel's motion, Mr. Bryant

18  agreed to supplement his responses and the MGA Defendants served supplemental

19  interrogatory responses.  (Park Decl., Exs. 14 & 15.)  Recently, Mattel filed with the

20  Discovery Master two motions to compel counter-defendants' further responses to

21  these interrogatories.  (Park Decl., ¶ 26.)  In short, Mattel has now brought the same

22  discovery issue—whether counter-defendants must respond further to Mattel's

23  previously served interrogatories—before both the Discovery Master and the Court

24  in the hope that at least one judge will find in its favor.

25          Mattel's approach violates the Discovery Master Order, which explicitly

26  provides that "[a]ny and all discovery motions and other discovery disputes in [this]

27  action shall be decided by a master ("Discovery Master") ...."  (Docket Item 107

28  (December 6, 2006 Stipulation and Order), ¶ 1.)  In an attempt to "minimize the

EXHIBIT          4

- 23 -

1 | burden of discovery disputes upon the Court," the Court appointed the Honorable
2 | Edward Infante to be the Discovery Master and laid out clear steps for bringing a
3 | motion before him. (*Id.*, ¶¶ 2, 5.) In addition, the Court granted the parties the right
4 | to object or move to modify orders issued by the Discovery Master under Fed. R.
5 | Civ. P. 53. (*See Id.*, ¶ 6 ("The Discovery Master's orders resolving discovery
6 | disputes, reports, or recommendations pursuant to Rule 53(e) or (f) shall be treated
7 | as rulings made by a Magistrate Judge of the United States District Court.").) Thus,
8 | whether counter-defendants must respond further to Mattel's interrogatories must be
9 | decided by the Discovery Master in the first instance. This Court should only
10 | consider the substance of that dispute if and only if a party objects to or seeks
11 | modification of the Discovery Master's ruling.

12 | That Mattel wants to avoid Judge Infante is not surprising since Judge Infante
13 | previously held that other interrogatories served by Mattel exceeded the fifty-
14 | interrogatory limit because they were "compound," contained multiple "discrete
15 | subparts," and covered "multiple legal theories." (September 5, 2007 Order at 7-9
16 | (granting defendant's joint motion for protective order and denying Mattel's motion
17 | to compel interrogatory responses).) An adverse ruling, however, does not entitle
18 | Mattel to circumvent the procedures set forth in the Discovery Master Order or to
19 | pursue motions regarding the same issue before both the Discovery Master and the
20 | Court. Accordingly, the Court should deny Mattel's request to compel counter-
21 | defendants to respond further to any of its previously served interrogatories.

22
23
24
25
26
27
28

EXHIBIT _____ 4

PAGE _____ 97

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

1  **IV.    CONCLUSION**

2          For the foregoing reasons, the MGA Defendants respectfully request that the

3  Court deny Mattel's motion for additional discovery in its entirety.

4  DATED:  December 24, 2007

5                                          SKADDEN, ARPS, SLATE, MEAGHER &
                                           FLOM, LLP
6

7

8                                          By:  /s/ Thomas J. Nolan
                                                Thomas J. Nolan
9
                                           Attorneys for Counter-Defendants, MGA
10                                         ENTERTAINMENT, INC., ISAAC
                                           LARIAN, MGA ENTERTAINMENT (HK)
11                                         LIMITED, and MGAE de MEXICO S.R.L.
                                           de C.V.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                         EXHIBIT _____4_____

28                                         PAGE _____98_____

- 25 -
MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT 5

# EXHIBIT 5

## CONFIDENTIAL
## THIS EXHIBIT FILED UNDER SEAL PURSUANT
## TO
## PROTECTIVE ORDER OF 1- 4 -2005

EXHIBIT 6

# EXHIBIT 6

## CONFIDENTIAL
## THIS EXHIBIT FILED UNDER SEAL PURSUANT TO
## PROTECTIVE ORDER OF 1- 4 -2005