EXHIBIT 10

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 1 0 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

        Plaintiff,

v.

MATTEL, INC.,

        Defendant,

and related actions.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.  CV 04-9049 SGL (RNBx)

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER DENYING MOTION FOR APPOINTMENT OF EXPERT WITNESSES

Presently before the Court is Mattel, Inc.'s ("Mattel") motion for the appointment of expert witnesses pursuant to Federal Rule of Evidence 706, Carter Bryant and MGA Entertainment, Inc.'s ("MGA") opposition and response thereto, and Mattel's reply.  For the reasons set forth below, the Court **DENIES** the motion for the appointment of expert witnesses.

Federal Rule of Evidence 706(a) provides

> The court may . . . on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations.  The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witness of its own selection.  An expert witness shall not be appointed by the court unless the witness consents to act.

DOCKETED ON CM

AUG 1 1 2006

BY                    044

EXHIBIT _____ 10

PAGE _____ 261

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> A witness so appointed shall be informed of the witness'
> duties by the court in writing, a copy of which shall be filed
> with the clerk, or at a conference in which the parties shall
> have opportunity to participate.

The appointment of an expert by a federal court is a rare occurrence. Much of this stems from a concept "[d]eeply ingrained" in the common law "that it is the responsibility of the parties to produce the evidence while the court looks on to assure that the rules are followed." 4 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 706.02[1], at 706-6 (2nd ed. 2006). The reluctance of courts to intrude into the evidence-gathering function normally assigned to counsel is borne out of "the fear of ex parte communications between the court and its expert," as well as the unseemliness of "[c]ollecting a share of the expense [for the work performed by the court appointed expert] from a party who has been damaged by the expert's report." Id. at 706-6, 706-7. As a result of these institutional concerns, "experts are usually appointed only in exceptional cases that present unwieldy, complex, or technical issues" or where "there is a need for an impartial, independent assessment of a disputed issue." Id. § 706.02[3], at 706-8 706-9.

Here, Mattel seeks for the court to appoint experts in the fields of questioned document examination, ink chemistry analysis, and paper chemistry analysis in order to "analyze and date (1) the originals of 'BRATZ' design drawings, (2) the faxed-version of the BRATZ-related contract between . . . Carter Bryant and MGA Entertainment, Inc., (3) MGA's internal documents relating to work performed by Anna Rhee on Bryant-related projects in the year 2000, and (4) a facsimile of BRATZ drawings bearing a fax header date of April 10, 2000," as well as "(5) any other documents that cannot be sampled or tested without destroying the sample tested or analyzed." (Mattel's Mot. Appt. Expert, Preface at 2). The reason proffered for such an appointment is two-fold: First, a generalized concern that, because the documents sought to be examined are "highly relevant" to the litigation, having a neutral expert perform the testing on the same may obviate a battle of the experts that would make

2

EXHIBIT _____ 10 _____

PAGE _____ 262 _____

1 | the jury's function of sorting out the truth much more arduous; and second, concerns,

2 | deduced during discovery, about the possible spoilation of key documents in the case

3 | by MGA/Bryant and their counsel.

4 | A.        AVERTING A BATTLE OF THE EXPERTS

5 |        Mattel's argument that the Court should appoint an expert because otherwise

6 | each side will perform "separate, partisan destructive analyses of separate samples of

7 | the documents" with "wide divergence" of opinion "virtually assured" is not well-

8 | founded. (Mattel's Mot. Appt. Expert at 18, 20). Explicit in Mattel's argument is that

9 | this feared divergence in each side's retained expert's opinions has yet to materialize.

10 | This is not surprising as it appears that discovery in this case is in its nascent stage,

11 | owed largely to the fact that the Court had earlier stayed the case while Mattel

12 | appealed the denial of its motion to remand the case to state court. Mattel's argument

13 | instead is that the Court should appoint an expert now to avoid the _possibility_ that

14 | there _may_ be such wide divergence in each side's privately retained expert in the

15 | _future_. Needless to say from the jabs each party took at the credibility and even

16 | trustworthiness of the other side's retained expert during the oral argument on this

17 | motion (one going so far as to label the competing ink chemistry experts as being the

18 | modern day equivalent of one's Hatfield to the other's McCoy), such a possibility may

19 | be more easier to imagine occurring here than in ordinary cases. Nevertheless, such

20 | divergence, even if likely, is still that – a possibility, not an inevitability.

21 |        In those cases where an expert has been appointed by a court on account of

22 | the excessive partisanship in the expert opinions retained by counsel, the rationale for

23 | the appointment was based on the fact that the feared wide divergence in opinion had

24 | already materialized. See Students of California Sch. for the Blind v. Honig, 736 F.2d

25 | 538, 548 (9th Cir. 1984)("the judge could not decide the merits of the students' seismic

26 | safety claims on the basis of evidence presented at trial, so he reopened the case and

27 | appointed a neutral expert to evaluate the adequacy of seismic testing at the Fremont

28 | site"), vacated on other grounds, 471 U.S. 148 (1985); Eastern Air Lines, Inc. v.

3

EXHIBIT _____ 10

PAGE _____ 263

1 | McDonnell Douglas Corp., 532 F.2d 957 (5th Cir. 1976); 4 WEINSTEIN § 706App.100 at
2 | 706App.-5 (noting that legal commentators' "imprecations against the parties' 'battle of
3 | experts'", not the potential for such a battle, "led to the drafting of the Uniform Expert
4 | Testimony Act in 1937," the precursor to Federal Rule of Evidence 706).

5 | In no instance uncovered by the Court's research (or by Mattel's citation to
6 | authority) has a court appointed an expert because of a fear, even one that is well-
7 | founded, that such wide divergence in privately-retained expert testimony may
8 | materialize in the future. Were the Court to adopt Mattel's analysis, appointment of
9 | experts by courts would expand exponentially, limited only by a court's assessment of
10 | how partisan the experts in a given case may become in the future. Such a
11 | proliferation has not occurred precisely because courts generally require that the
12 | divergent "horse" be placed before the expert witness "cart." See FED. R. EVID. 706
13 | advisory committee's note ("actual appointment is a relatively infrequent occurrence").
14 | Unless and until this feared divergence in opinion becomes reality, the Court finds that
15 | the potential (which itself cannot be quantified at this point) for its occurrence does not
16 | warrant the Court's intrusion into the adversarial process through the appointment of
17 | an expert at this stage.

18 | **B.    SPOILATION OF EVIDENCE**

19 | The question is much closer with respect to Mattel's other reason for the Court
20 | to appoint an expert in this case: Concern that opposing counsel or their clients may
21 | have destroyed or altered key documents in the case. Mattel's basis for such concern
22 | is predicated on three facts uncovered during discovery.

23 | 1.    Evidence of spoilation

24 | Before being deposed Bryant was asked to bring all his original BRATZ design
25 | drawings. When he arrived at his deposition, however, Bryant only had in his
26 | possession a few of the originals. (Decl. Michael T. Zeller ¶ 13). Among these some
27 | "contained holes where plugs apparently had already been removed. Bryant
28 | acknowledged . . . that his drawings had no holes in them when he gave them to his

4

EXHIBIT _____ 10

PAGE _____ 2004

1   lawyers." (Mattel's Mot. Appt. Expert at 2; see also Decl. Michael T. Zeller ¶ 14).

2   Specifically, at Bryant's deposition the following exchange took place between Bryant

3   and counsel for Mattel:

4        Q.   (By Mr. Quinn) I wanted to ask you about one of
             these original drawings that were produced today.
5
             – what we're talking about here.  This is – the Post-It
6            says that's Bryant – that's the original of Bryant
             192, Bates number 192, which has the heads on it,
7            and this is one of the originals that your counsel was
             kind enough to have shipped here today for us to
8            look at.

9        A.   Yes

10       Q.   And we were just looking at these this afternoon and
             we notice[d] that there's a bunch of holes on the
11           page, including in the signature, as if somebody
             were taking ink samples.
12
         A.   Uh-huh.
13
         Q.   Do you see that?
14
         A.   Yes.
15
         Q.   Do you know anything about why those holes were
16           made or how or when?

17       A.   I have no idea what those are.

18       Q.   I mean, when you had – when you had possession
             of this document did it have those holes in it?
19
         A.   Not that I remember.
20
         Q.   You certainly never had anything to do with that?
21
         A.   No.  I don't know anything about those holes.
22
         Q.   And, similarly, if you wouldn't mind holding this up to
23           the camera, this is the original of Bryant 210 and it's
             also – if you take a look at it, I think you'll see it has
24           some of those holes in it, although not as many as
             the last one we looked at.  Again, you don't know
25           anything about how or why those holes got put on
             there?
26
         A.   I don't.
27

28   (Decl. Michael T. Zeller, Ex. 7 at 161-163).

                                5

EXHIBIT _____ 10
PAGE _____ 265

1      Mattel has submitted the declaration of a questioned document analysis expert,

2   Lloyd Cunningham, who has opined that the holes described in the document

3   mentioned above are consistent with those that would be generated by taking

4   microplug samples to perform analysis of the ink found on a document. (Decl. Lloyd

5   Cunningham ¶ 5). Bryant and MGA eventually conceded (although at first refusing to

6   do so under the veil of work-product privilege) that they tested some of the original

7   BRATZ drawings by an expert they retained in the field of forensic chemistry, Erich J.

8   Speckin. (Response to Order to Show Cause ("Response") at 1-2).

9      Mr. Speckin states that in June, 2004, he performed a series of tests "on

10   various 'Bratz' documents" at the request of MGA's counsel.[1] (Decl. Erich J. Speckin

11   ¶ 8). Those tests included examining the documents in question under an infrared

12   light as well as performing sidelight testing, which involves "visually inspecting a

13   document by holding a side light up to the document at an oblique angel . . . to

14   determine preliminarily whether the document contains impressions, or markings

15   impressed upon the document by drawing and writing done on a sheet of paper laid

16   on top of the document being tested." (Decl. Erich J. Speckin ¶¶ 9, 10). Mr. Speckin

17   also performed an electrostatic detection apparatus to see if there was indented

18   impressions on the documents. (Decl. Erich J. Speckin ¶ 11). Finally, Mr. Speckin

19   "performed ink identifications tests" on the documents. (Decl. Erich Speckin ¶¶ 12-

20   13). Such testing involved Mr. Speckin removing "very small microplug samples from

21   the document at issue and testing the microplug." (Decl. Erich Speckin ¶13).

22   Nowhere is it averred by MGA, Bryant, or Mr. Speckin which or how many of the

23   original BRATZ drawings were subjected to this microplug sampling procedure, nor is

24   it averred from what parts of the documents that were tested was the microplug taken.

25   Instead, Mr. Speckin simply notes that in taking the microplugs he "le[ft] more than

26

27   _____

28   [1] At the time the testing was done by Mr. Speckin, Bryant had already been
     sued by Mattel for violating the terms of the invention agreement he signed when he
     worked for them from 1999 to 2000. (Response at 1).

6

EXHIBIT _____ 10

PAGE _____ 266

1   sufficient material for another expert to test the exact same <u>documents</u>," but admits

2   that "another expert cannot test the very same microplug that I tested . . . ." (Decl.

3   Erich J. Speckin ¶14).

4         Another episode brought to light during discovery causing Mattel concern

5   relates to MGA's handling of the original Bryant/MGA contract before the inception of

6   the instant litigation.  At the deposition of a former MGA executive, Victoria O'Connor,

7   testimony was elicited that O'Connor, "on explicit instructions of MGA's [CEO] Isaac

8   Larian, . . . [made] redactions from] the fax header . . . on the BRATZ contract

9   between Bryant and MGA for the year 2000 to conceal the fact that Bryant sent the

10  contract from Mattel's Design Center while he was still employed at Mattel." (Mattel's

11  Mot. Appt. Expert at 3).  O'Connor's deposition appears to indicate that such alteration

12  occurred before the present litigation began (indeed, perhaps even before MGA

13  marketed the BRATZ doll).

14        Q.      . . . Was there ever anything that you were asked to
                  do that you -- made you feel kind of uncomfortable?
15

16        A.      Yes.
                          . . . .
17        Q.      And what was that?

18        A.      When the original contract was executed by Carter
                  Bryant, it was sent to me <u>via</u> fax, and on the top of
19                the fax listed the phone number from where it was
                  faxed, which said "Barbie Collectibles," and at one
20                point my boss, Isaac Larian, asked me to white that
                  out and send it to a lawyer, Patty Glaser.
21

22  (Decl. Michael T. Zeller, Ex. 19 at 306).  Upon further examination, however,

23  O'Connor stated that she did not participate in or have knowledge of any other

24  instances in which any other agreement between Bryant and MGA was directed to be

25  altered:

26        Q.      Were you ever asked to change the date on any
                  agreements between Mr. Bryant and MGA?
27

28        A.      No.

7

EXHIBIT _____ _10_

PAGE _____ _267_

1    Q.   Are you aware of anybody being asked to change
          the date on any of those agreements?

2

3    A.   No.

     Q.   I mean, do you have any reason to believe that any
4         agreement that was entered into between Mr. Bryant
          and MGA had a date altered or changed?
5

6    A.   No.

     Q.   You never heard that from — from any source?
7
     A.   No.
8

9    (Decl. Paula E. Ambrosini, Ex. 3).

10        Finally, Mattel speculates that a drawing of some BRATZ doll accessories

11   faxed on April 10, 2000, had the fax header altered, much in the same manner

12   described in O'Connor's testimony vis-à-vis the MGA/Bryant faxed contract, as the

13   fields on the fax header for the sender's name and the sender's telephone number are

14   missing. (Decl. Michael T. Zeller ¶ 23 & Ex. 24).[2] As explained by Mattel, "Because

15
     _____

16        [2] Mattel speculates that the time sheets produced by MGA for one of its

17   employees, Anna Rhee (who did doll face painting work for the BRATZ mock-up), from
     "mid-to-late 2000" were altered or recently created by MGA to show that Rhee worked

18   on projects called "Angel" or "Prayer Angel," when in fact she was working at the time
     painting faces for BRATZ dolls at the direction of Bryant. (Mattel's Mot. Appt. Expert at

19   3). The basis for this speculation is based on the fact that the initial disclosure by MGA
     of Rhee's time sheets comprised only 8 pages. (Decl. Michael T. Zeller ¶ 20). Then,

20   on January 7, 2005, Rhee produced 20 separate invoices of her work at MGA during

21   mid-to-late 2000, indicating that Rhee performed work for MGA prior to Bryant's
     departure from Mattel, most notably on June 12, 2000. (Decl. Michael T. Zeller ¶ 21).

22   Within a couple of weeks after Rhee's production of invoices to Mattel, MGA
     supplemented its earlier production of Rhee's time sheets showing that during the mid-

23   to-late 2000 period Rhee was working on a MGA project known as "Angel" or "Prayer

24   Angels" and was not involved in any BRATZ-related work until after Bryant's departure
     from Mattel. (Decl. Michael T. Zeller ¶ 22). Mattel's surmise that the supplemental time

25   sheets were altered is allegedly bolstered by the fact that Rhee testified during her
     deposition that the only work she performed in mid-to-late 2000 was on BRATZ and

26   that the supplemental time sheets reference to the "Angel" and "Prayer Angel" was

27   nothing but a cover or code word for BRATZ-related work. This argument is hard to
     accept. First, even the invoices Rhee turned over to Mattel contain the phrase "Angel"

28   for the mid-2000 project she worked on. (Decl. Michael T. Zeller, Ex. 22 at 356-60,
     362). It is not until December, 2000, that any of the invoices submitted by Rhee show

8

EXHIBIT _____ 10

PAGE _____ 268

1   facsimile machines normally insert senders' names and numbers as a matter of

2   course, and indeed is required by law [to do so], it appears likely that the document

3   was altered to conceal the sender's information. See 47 U.S.C. § 227(d)(1)(B)."

4   (Mattel's Mot. Appt. Expert at 10). The premise underlying Mattel's concern on this

5   topic is not unreasonable. The law requires such information to be found on any

6   document, like the one in question, that has been faxed. Additionally, the testimony

7   elicited from Ms. O'Connor that MGA altered the fax header for other documents

8   related to BRATZ from the same time period leads to an obvious inference that other

9   documents where spaces on other fax headers are absent suffered a similar fate.

10      2.      Analysis

11          a.      Microplug Ink Testing

12          Bryant and MGA begin by downplaying the significance of the spoilation issue

13   in this case. With respect to the holes on some of the original BRATZ design

14   drawings produced at Bryant's deposition, they note that, even with these holes,

15   nothing prevents Mattel from performing its own testing on the remaining portions of

16   the drawings on the document. "Indeed, the very fact that Mattel is asking for court-

17   appointed experts to perform ink and paper testing only underscores the fact that

18   nothing has been 'destroyed.'" (Joint Opp. at 2). Mr. Speckin makes similar assertions

19   in his declaration, stating that the fact that the same microplug cannot be tested "is

20   entirely irrelevant because there is more than enough ink on each of the documents I

21   tested to allow numerous microplug samples to be extracted and tested by different

22   experts." (Decl. Erich J. Speckin ¶ 14 (emphasis added); see also Response at 5-6

23   ("While another expert cannot test the very same microplug that Mr. Speckin tested,

24

25   _____

26   her doing work on the BRATZ doll, well after Bryant had left Mattel. (Decl. Michael T. Zeller, Ex. 21 at 367, 370, 373). To accept Mattel's argument, not only would MGA
27   have had to alter the invoices it produced in the supplemental production, but the documents produced by Rhee would also have to be similarly altered. An alternative
28   and just as plausible explanation is that Rhee is simply mistaken as to when she began performing work on the BRATZ project.

9

EXHIBIT _____ 10 _____

PAGE _____ 269 _____

1   that fact is entirely irrelevant because, unlike in a situation where the entire object is
2   destroyed during the testing, there is more than enough ink on each of the <u>documents</u>
3   Mr. Speckin tested to allow numerous microplug samples to be extracted and tested"
4   (emphasis added))). This argument is not persuasive. This is not a case where
5   everyone concedes that the documents in question were created at one point in time,
6   but dispute what that date may have been. In such a circumstance all the ink
7   markings on the documents are comparable to one another as it is conceded that all
8   the marks came from one point in time.
9        Here, however, it is Mattel's theory that Bryant made drawings in 1998 and then
10  periodically touched up or made refinements/additions to those drawings, adding more
11  marks in 1999 and 2000 during the time he was employed by Mattel. An ink mark
12  from one part of the document is not necessarily comparable to another set of ink
13  markings found elsewhere on the document. One ink mark on a drawing could have
14  been made in 1998, for example, while another ink mark found on the same drawing
15  could have been put there sometime later. In taking microplug samples from one of
16  these ink markings without the ability of the other side to test <u>the same mark</u> would
17  forever foreclose a potential avenue of crucial evidence in this case. It is on that point
18  that taking microplug samples of the marks on these drawings is akin to the spoliation.
19  Therefore the fact that another expert could test other parts of the document does not
20  mean that key relevant evidence found on that document has not been destroyed. As
21  MGA and Bryant make clear spoliation of evidence occurs through the "destruction or
22  significant alteration of evidence, or the failure to preserve property for another's use
23  as evidence in pending or reasonably foreseeable litigation." <u>West v. Goodyear Tire &</u>
24  <u>Rubber Co.</u>, 167 F.3d 776, 779 (2nd Cir. 1999).[3]
25       At this point, it should not be lost that the documents in question are not
26  _____
27     [3] The Court does not mean to suggest that Mattel's theory is correct. Instead,
    the Court simply notes this theory as refuting MGA and Bryant's argument that only the
28  complete destruction of a document would amount to spoliation under the particular
    circumstances in this case.

10

EXHIBIT _____ 10 _____

PAGE _____ 270 _____

1  peripheral to the case. At its heart, this case asks the question: Who owns the rights
2  to the Bratz dolls?  Bryant asserts that he came up with the idea for the Bratz dolls
3  while on a break from his employment at Mattel in 1998, and that he sold his idea to
4  MGA when he went to work for them in October, 2000.  Mattel claims, among other
5  things, that Bryant "developed" or "continued to develop" his idea for Bratz dolls while
6  he was working for them from January, 1999, to October, 2000, and that pursuant to
7  an inventions agreement he signed with the Mattel when he went to work for them,
8  that idea now belongs to Mattel. As this clash of factual contentions makes clear, the
9  dating of the original BRATZ drawings and the markings contained thereon is a
10  fundamental, perhaps despositive, issue to this case.  That there are serious
11  questions concerning the handling of these critical documents certainly causes the
12  Court much concern about whether the truth seeking functions of the adversarial
13  system have been fundamentally compromised in this case.  As Mattel rightly notes,
14  "The adversarial process is not an end in itself; its value is in its ability to promote a
15  search for truth."  (Mattel's Reply at 9).

16       Bryant and MGA concede that the sections that were holed out contained
17  markings, be they handwritten dates or other words or letters, that may be crucial to
18  the case.  Indeed, one of the drawings – Bryant 192 – had a portion of the signature
19  line sampled.  What is left unclear is whether, for those portions of the document
20  where ink or signatures were sampled, enough of the same part of the document in
21  question (meaning the same mark) remains to be sampled by Mattel.  For instance, is
22  there enough of the signature line from Bryant 192 left to sample, or has too much of it
23  already been sampled?  In that sense, MGA's and Bryant's argument that nothing has
24  been destroyed by the microplug testing procedure because other parts of the
25  document still exist is misplaced.  Indeed, MGA and Bryant later admit that the
26  circumstances allowing for "multiple experts [to] remove multiple microplugs and test
27  the exact same paper and ink" is dependent upon there being the same exact paper
28  and ink there to test.  (Joint Opp. at 15 ("[a]s long as there is paper and ink to test")).

11

EXHIBIT _____ _10_

PAGE _____ _271_

1   The continued existence of the "exact same pen stroke" is the very issue that is now

2   left open because of the holes in some of Bryant's original BRATZ design drawings.

3   Is there anything left of that exact same pen stroke that was sampled by Mr. Speckin

4   remaining on the original drawing for Mattel to test? None of these questions have

5   been addressed by MGA, Bryant, or Mr. Speckin in their papers.  Instead, they simply

6   make the observation that there remain other ink markings on the same drawings for

7   Mattel to test, a reason which, as explained above, is wholly insufficient to assure the

8   Court that Mattel has not been prejudiced by MGA's actions.

9       Given the absence of any representation by them on this point, the Court

10  pressed MGA's counsel about the same at oral argument:

11              THE COURT:  And part of your argument is that
12          while a small portion of the small portion of the page may
            be gone, as you in your most recent papers concede is
13          gone, there are other portions of the page that can be
            tested.  The concern I have, I guess – and maybe you can
14          clear this up for me – I've seen some of the drawings and I
            have a pretty good mental image of what the drawings look
15          like.  But there is also writing on these drawings,
            signatures, copyright registration indications; some are
16          large, some are small.  As I gather from the plaintiff, from
            Mattel, the concern is that these different drawings or
17          writings were done at different times.  And I guess I can
            understand why when those drawings or writings were
18          done could be significant from an evidentiary standpoint.
            So the concern is not so much there's another part of the
19          paper that can be tested; it's whether or not the particular
            marking in question has been so damaged as to not permit
20          a full further testing on that particular marking.  Does my
            question make sense?

21              MS. CENDALI:  Yes, it does, your Honor.  And I
22          anticipated that.  Significant, we thought, in their papers
            was that . . . they cited to the fact that Mr. Bryant admitted
23          in his deposition that there were holes in some of the
            documents that he didn't know how they got there
24          originally.  As an example, if you look at part of Zeller,
            Exhibit 17, Bates number Bryant 201, that's an example of
25          one of the documents that's been tested.

26              THE COURT:  One second so I have that in front of
            me.  Okay.

27              MS. CENDALI:  There are many many others that were
28          submitted that were also submitted to this type of ink
            testing, but this is just an example of one of them.  And if

                                12

EXHIBIT _____ 10 _____

PAGE _____ 272 _____

1    you look at the document, you would never know —
     granted, this is smaller, so the actual drawing is even larger
2    than this, so there's even more ink on the larger drawing
     than there would be available on this reproduction size.
3

4        But if you look at it — and I'll represent to you that we
     didn't test the face; the face is absent before and after the
5    testing — but if you look at it, you couldn't even see that
     there were any pin pricks to it. If you look very, very
6    carefully at the signature at the bottom, you can maybe see
     where it says "Ramona Prints, 8-26-99"; that maybe there
7    was like a little tiny hole in one of the little slash marks; that
     was a teeny little pin prick hole that showed the testing .
8    There's ample amount of ink to do the testing on all of
     these documents. This is the normal course of procedure
9    that was done.

10   When asked by the Court whether it accepted MGA's representation that there

11   was "ample amount of ink" left on the same marks that the microplugs were taken

12   from for further microplug testing, Mattel, in seeming contradiction to its position in its

13   papers, said it did: "I agree with Ms. Cendali. We do not maintain any portion of the

14   ink on a signature or an image has been so obliterated that you couldn't take a plug

15   now on any of it; that's not our point." (Emphasis added).

16   In light of this concession by Mattel, the Court finds that no colorable claim of

17   spoliation has been established at this time vis-à-vis Mr. Speckin's testing of the

18   documents to warrant the appointment of an expert by the Court to investigate the

19   same. See Sedrati v. Allstate Life Ins. Co., 185 F.R.D. 388, 393 (M.D. Ga.

20   1998)(sanction warranted where because "defendant's expert has conducted

21   destructive tests on the original documents," plaintiff's expert "cannot duplicate the

22   conditions of the original documents"). If there was any evidence indicating that MGA,

23   Bryant, or their counsel had engaged in acts that could compromise Mattel's ability to

24   discover crucial information in this case, the Court would be sympathetic to the

25   appointment of an expert to investigate the same. Here, no such evidence exists.

26   The tests done by Mr. Speckin have not left the marks that were micro-sampled or the

27   documents that were handled so compromised that Mattel cannot perform the exact

28   same tests on those exact same marks as performed by Mr. Speckin.

13

EXHIBIT _____ 10

PAGE _____ 273

1        Indeed, the only basis for spoliation that Mattel has left to argue – that the

2   passage of time has left the ability to perform any meaningful ink testing at this time

3   problematic – is an argument that has nothing to do with MGA's conduct, but much

4   more with Mattel's own dereliction. As the Court understands it, the process of dating

5   when ink was placed on a document has only a limited window of time in which it can

6   be accomplished because, eventually, the ink dries (be it in 2 years or 3 to 4 years),

7   leaving nothing capable of being sampled after that point to test (save to acknowledge

8   that the ink in question was put on the paper some time more than 3 to 4 years ago).

9   Mattel essentially argues that the impossibility of testing ink after a certain period

10   mandates that, if the other side is going to test ink while "fresh" ink remains on the

11   document, that party has an obligation to inform the other side so that they can do the

12   same before the ink "dries out"; failure to do so renders the test performed something

13   that cannot be replicated.[4] By Mattel's own admission, they knew there had been

14   testing done on the BRATZ original drawings as far back as November, 2004, during

15   Bryant's deposition testimony when they saw some of the original BRATZ drawings

16   (drawings that had been tested by Mr. Speckin five months earlier). Rather than

17   immediately seeking the production of those documents and having its own expert

18   perform similar tests on them, Mattel sat idly by, waiting until June of this year to do

19   anything, either by way of court-pleadings or formal requests made to MGA and

20   Braynt, related to having ink tests performed on the documents. Nowhere has Mattel

21   _____

22        [4] The basic factual assumption in Mattel's argument may indeed be faulty – that

23   when MGA tested the ink there was enough "fresh" ink to test. Mr. Speckin states that
    "[I]nk takes approximately 3 to 4 years to dry on paper. Thus, by testing the ink to

24   determine if it is dry, it can be determined whether the document was created within the
    last [3 to] 4 years, or whether the ink, and thus the drawing, is more than [3 to] 4 years

25   old." (Decl. Erich J. Speckin ¶ 13). Given that Mr. Speckin performed his ink dating
    test in June, 2004, at best he could determine whether the ink had been put on the

26   paper on or after June, 2000. Beyond that time frame his test could not tell when the
    now-dried ink was marked on the document. Given that the relevant period in question

27   in this case is from August, 1998, to October, 2000, Mr. Speckin's test results would

28   appear to be only marginally relevant in adducing proof as to when the BRATZ
    drawings were made.

                                14

                        EXHIBIT _____ 10

                        PAGE _____ 274

1   explained how MGA or Bryant had anything to do with it not having the ability to

2   perform such testing until now.  Mattel's allusion to the fact that a stay on discovery

3   was put in place by this Court in 2005 is misguided.  If Mattel thought that it was losing

4   valuable time on account of the stay, it could have at any time filed with this Court an

5   emergency request for relief from the stay to have such tests performed.  All it needed

6   to do was inform the Court that it had only a short period of time to perform the test on

7   account of the fact that ink dries; something which it never did in this case.

8       Mattel's citation to the case <u>Edwardes v. Southampton Hospital Associates,</u>

9   278 N.Y.S.2d 283 (1967) is equally unhelpful to their argument.  In that case, the court

10  was presented with an application to prevent the testing of a intramedullary pin for

11  discovery and testing.  <u>Id.</u> at 284.  The court held that, "[s]ince the pin is crucial to the

12  action it is not too difficult to appreciate that any change, however slight, assumes an

13  importance magnified proportionately. And undoubtedly tests which would destroy or

14  alter most or all of a particular article ought not be permitted in the first instance

15  without providing adequate safeguards to protect all concerned." <u>Id.</u> at 286.  Here,

16  such an argument cannot be made because, for the reasons cited above, Mattel has

17  conceded that even in performing the tests of the original BRATZ drawings Mr.

18  Speckin left enough ink of the same pen stroke for its own experts to test.  In short,

19  there has been no alteration, however slight, made to the documents insofar as

20  Mattel's ability to replicate the exact same test is concerned.  The only change that

21  has occurred is in Mattel's ability to retrieve any relevant information from such a test

22  <u>on account of the passage of time that has elapsed.</u>  The test Mr. Speckin performed

23  is not responsible for this negative occurrence.  MGA is similarly not responsible for

24  the passage of time or Mattel's inability to retrieve useful information from the testing

25  process.  On that point, Mattel should look itself in the mirror for any finding of fault or

26  blame.

27      Moreover, aside from the potential for "destroying" key portions of the original

28  documents, it is alleged that MGA and Bryant's actions carry other means of

15

EXHIBIT _____ 10 _____

PAGE _____ 275 _____

1   prejudicing Mattel's ability to pursue lines of potential evidence in this case.  The

2   expert declaration submitted by Mattel notes another possible spoliation of the original

3   drawings even if there remained enough of the pertinent portion of the document in

4   question to sample: The sampling process itself may have contaminated the

5   document in question by obliterating potential crucial clues that were on the document

6   or otherwise the sampling process led to the introduction of foreign materials onto the

7   documents themselves which may complicate any future analysis.  As explained by

8   Mattel's expert:

9           [P]erforming many such types of testing, even if described
            as "non-destructive," on a particular original document
10          carries the risk that potential evidence on it, including
            indentations in the paper fiber, might be contaminated or
11          destroyed in the process.  Furthermore, the order of the
            types of testing to be performed on a given document
12          might have an impact on developing potential evidence
            during subsequent examinations. . . .
13
                . . . . [With respect to the original BRATZ drawings
14          containing holes in them,] it is possible that the destructive
            testing performed on the document may have caused
15          some form of contamination and/or alteration, which carries
            the further prospect that subsequent examinations by
16          experts may not enable them to develop potential evidence
            or the same evidence that the other [earlier] expert
17          developed.

18   (Decl. Lloyd Cunningham ¶¶ 4-5).

19          MGA has rebutted this risk of contamination argument by proffering Mr.

20   Speckin's declaration, the expert who actually performed the tests in question.  Mr.

21   Speckin states that he "exercised the utmost care in handling the documents [he]

22   tested," that a number of the tests he performed on the documents "has absolutely no

23   effect on the tested document whatsoever," and that with respect to those tests that

24   could effect the document he followed established procedures in carrying out the test

25   in question.  (Decl. Erich J. Speckin ¶¶ 8, 9, 10, 11, 12, 13).  Nowhere has Mattel

26   proffered any evidence rebutting or calling into question Mr. Speckin's

27   representations.  The Court therefore finds that, based on the evidence that is

28   currently before it, Mattel has not established a colorable claim of spoliation by way of

16

EXHIBIT _____ _10_

PAGE _____ _276_

1    contamination in the tests MGA performed on the documents in question.

2              b.    Alteration of Fax Headers

3         Insofar as O'Connor's deposition testimony relating to the white out of the fax

4    header on the October, 2000, contract between Bryant and MGA, this too is

5    downplayed by MGA and Bryant as being irrelevant because "there is no dispute that

6    Mr. Bryant faxed his signed contract from a fax machine at Mattel and, indeed, Mr.

7    Bryant readily admitted that fact at his deposition, which took place before Ms.

8    O'Connor's deposition." (Joint Opp. at 8 (emphasis in original)). This argument seeks

9    to compare apples to oranges. While it may be true that now there is no dispute by

10   MGA and Bryant that he faxed his portion of the contract to MGA from his office at

11   Mattel, at the time O'Connor did the white out of the fax header such a lack of dispute

12   was not apparent. It is from that perspective in time – the prologue to the litigation –

13   that O'Connor's deposition testimony is to be judged. And from that perspective her

14   testimony calls into question MGA's handling of relevant documents in its possession.

15        When the contract was first executed there is no indication that MGA and/or

16   Bryant would admit to the fact that Bryant negotiated his contract with MGA while he

17   was still working at Mattel; rather, at that point, that issue appeared to be an open one.

18   Indeed, the fact that MGA's CEO would direct O'Connor to tamper with the contract's

19   fax header clearly indicates that they would not admit to the fact. If MGA mistreated

20   this document where an open issue existed, it is not unreasonable to infer that it may

21   have been just as cavalier with its obligations to maintain the other documents in their

22   possession – say, for instance, the original BRATZ drawings – where similar open

23   issues remained. This concern with MGA's handling of documents in its possession at

24   the prologue to this litigation is reinforced by MGA and Bryant's blasé mention in a

25   footnote to their opposition that the original to this contract, the one which they

26   describe as being irrelevant, "has not been found." (Joint Opp. at 15 n.6). Indeed, it

27   has been suggested that MGA and Bryant or their counsel have made representations

28   that they are not sure of the exact whereabouts of a number of the original BRATZ

17

EXHIBIT _____ 10 _____

PAGE _____ 277

1    drawings. (Decl. Shane McKenzie ¶ 3 ("Mr. Bryant's counsel[, at the December 22 to
2    23, 2004, inspection of the originals by counsel for Mattel,] claimed not to have the
3    majority of the originals of BRATZ drawings and sketches, and further claimed not to
4    know where those originals were located")).

5          All that being said, the Court does not find that the alteration of the fax header
6    on the original Bryant/MGA contract warrants the appointment of an expert at this
7    time. Ms. O'Connor testified that, other than this one instance, she is aware of no
8    other documents that were purposefully altered by MGA. While the evidence related
9    to the missing fax header on the April, 2000, BRATZ accessories fax may indicate that
10   more than one document had been tampered with by MGA personnel, the Court has
11   nothing at this time to basis that conclusion on other than speculation and conjecture.
12   Without any tangible, concrete proof that MGA's mishandling of documents was more
13   widespread, the Court is left with what appears simply as an isolated instance of
14   tampering.

15         Accordingly, the motion for appointment of expert witnesses is **DENIED**.
16         IT IS SO ORDERED.

17

18   DATE:  *8-9-06*.

19

20                                           *[signature]*
                                             STEPHEN G. LARSON
21                                           UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

                                        18

EXHIBIT ___ *10*

PAGE ___ *278*

EXHIBIT 11



…ject to change
…opyright Office
…write the Copy-
…700

**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

VA 1-391-529

| TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

*March  28  2005*

Month   Day    Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**A**
Title of Work ▼
Jade Drawing

Registration Number of the Basic Registration ▼
VA 1-218-487

Year of Basic Registration ▼
2003

Name(s) of Author(s) ▼
Carter Bryant

Name(s) of Copyright Claimant(s) ▼
MGA Entertainment, Inc

**B**
Location and Nature of Incorrect Information in Basic Registration ▼

Line Number ___3b___   Line Heading or Description  Date of Publication

Incorrect Information as it Appears in Basic Registration ▼
February 12, 2001

Corrected Information ▼
at least as early as May 21, 2001

Explanation of Correction ▼

**C**
Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____   Line Heading or Description _____

Amplified Information and Explanation of Information ▼



EXHIBIT _5_X_0_
Deponent ARMSTRONG
Date 7/18/07 Rptr. ACC
WWW.FEDEXFORCODE.COM

MORE ON BACK ▶   • Complete all applicable spaces (D-G) on the reverse side of this page.   • See detailed instructions.   • Sign the form at Space F

DO NOT WRITE HERE
Page 1 of ___2___ pages

EXHIBIT ___11___

PAGE ___279___

FORM CA RECEIVED

**MAR 28 2005**

FUNDS RECEIVED DATE

EXAMINED BY

CORRESPONDENCE ☒

REFERENCE TO THIS REGISTRATION ADDED TO
BASIC REGISTRATION   ☒YES ☐NO

FORM CA

FOR
COPYRIGHT
OFFICE
USE
ONLY

**D**

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

Continuation of ☐ Part B or ☐ Part C

---

Correspondence Give name and address to which correspondence about this application should be sent

Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone ( 212 ) 819-8200          Fax ( 212 ) 354-8113          Email cwitschel@whitecase.com

Deposit Account  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name ▼

Account Number ▼  A 5 - 013

Certification* I, the undersigned, hereby certify that I am the (Check only one)

☐ author      ☐ owner of exclusive right(s)  MGA Entertainment Inc.
☐ other copyright claimant  ☒ duly authorized agent of _____
                                                    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼  Carol A. Witschel                          Date ▼  March 24, 2005

Handwritten signature (X) ▼  _Carol A. Witschel_

---

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼
Carol A. Witschel - White & Case LLP

Number/Street/Apt ▼
1155 Avenue of the Americas

City/State/ZIP ▼
New York, New York  10036

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: July 2003—20,000   Web Rev: July 2003   Printed on recycled paper          U.S. Government Printing Office: 2003-491-625/60,020

EXHIBIT _____11_____

PAGE _____280_____

Copyright Office fees are subject to change

[barcode]

yright Office
as the Copy-
)

**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

VA 1-391-539

[barcode]

| TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

March 28 2005
Month   Day   Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**A**

Title of Work ▼
Sasha Drawing

Registration Number of the Basic Registration ▼
VA-1-218-489

Year of Basic Registration ▼
2003

Name(s) of Author(s) ▼
Carter Bryant

Name(s) of Copyright Claimant(s) ▼
MGA Entertainment, Inc

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number     3b     Line Heading or Description   Date of Publication

Incorrect Information as It Appears in Basic Registration ▼
February 12, 2001

Corrected Information ▼
at least as early as May 21, 2001

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____     Line Heading or Description _____

Amplified Information and Explanation of Information ▼

π EXHIBIT 508
Deponent ARMSTRONG
Date 7/18/07 Rptr ACC
WWW.DEPOBOOK.COM

MORE ON BACK ▶   • Complete all applicable spaces (D-H) on the reverse side of this page.   • See detailed instructions.   • Sign the form at Space F.

DO NOT WRITE HERE
Page 1 of __ pages

EXHIBIT _____ 11

PAGE _____ 281

FORM CA RECEIVED

**MAR 28 2005**

FUNDS RECEIVED DATE

FORM CA

EXAMINED BY

CORRESPONDENCE

REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☒ YES ☐ NO

FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

Continuation of ☐ Part B or ☐ Part C

**D**

Correspondence: Give name and address to which correspondence about the application should be sent
Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone (212)  819-8200    Fax (212) 354-8113    Email cwitschel@whitecase.com

Deposit Account: If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name _____

Account Number _____

Certification* I, the undersigned, hereby certify that I am the (Check only one)
☐ author   ☐ owner of exclusive right(s)
☐ other copyright claimant   ☒ duly authorized agent of   MGA Entertainment Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼ Carol A. Witschel          Date ▼ March 24, 2005

Handwritten signature (X) ▼ _Carol A Witschel_

Certificate will be mailed in window envelope to this address

Name ▼ Carol A. Witschel — White & Case LLP
Number/Street/Apt ▼ 1155 Avenue of the Americas
City/State/Zip ▼ New York, New York  10036

EXHIBIT ___11___

PAGE ___282___

to change
ight Office
e the Copy-

**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

VA 1-301-531

| TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

*March 28 2005*
Month   Day   Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**A**

Title of Work ▼
    Cloe Drawing

| Registration Number of the Basic Registration ▼ | Year of Basic Registration ▼ |
|---|---|
| VA 1-218-490 | 2003 |

| Name(s) of Author(s) ▼ | Name(s) of Copyright Claimant(s) ▼ |
|---|---|
| Carter Bryant | MGA Entertainment, Inc |

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number    3b      Line Heading or Description Date of Publication

Incorrect Information as It Appears in Basic Registration ▼

February 12, 2001

Corrected Information ▼

at least as early as May 21, 2001

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____ Line Heading or Description _____
Amplified Information and Explanation of Information ▼

EXHIBIT 510
Deponent ARMSTRONG
Date 7/8/07 Rptr. ACC
WWW.DEPOBOOK.COM

MORE ON BACK ▶ • Complete all applicable spaces (D-G) on the reverse side of this page.
• See detailed instructions. • Sign the form at Space F

DO NOT WRITE HERE
Page 1 of ___ pages

EXHIBIT _____//_____

PAGE _____283_____

FORM CA RECEIVED

**MAR 2 8 2005**

FUNDS RECEIVED DATE

EXAMINED BY _____ | FORM CA

CORRESPONDENCE ☐ | FOR COPYRIGHT OFFICE USE ONLY

REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☒ YES ☐ NO

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

Continuation of ☐ Part B or ☐ Part C

**D**

Correspondence Give name and address to which correspondence about this application should be sent

Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone ( 212 )  819-8200       Fax ( 212 )  354-8113       Email  cwatschel@whitecase.com

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name ▼

Account Number ▼

Certification* I, the undersigned, hereby certify that I am the (Check only one)

☐ author   ☐ owner of exclusive right(s)   MGA Entertainment Inc.
☐ other copyright claimant   ☒ duly authorized agent of _____
                                 Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼ Carol A. Witschel          Date ▼ March 24, 2005

Handwritten signature (X) ▼ *Carol A. Witschel*

Certificate will be mailed in window envelope to this address

Name ▼
Carol A. Witschel – White & Case LLP
Number/Street/Apt ▼
1155 Avenue of the Americas
City/State/ZIP ▼
New York, New York  10036

Form July 2006—40,000   Web Rev July 2006   Printed on recycled paper          U.S. Government Printing Office: 2006-301-401/60 040

EXHIBIT ____ 11

PAGE ____ 284

Copyright Office fees are subject to change.
F                                right Office
r                                e the Copy-
r

1439·0812

**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

VA 1—391—532

EX | TXU | PA | PAU | VA | VAU | SR | SRU | RE
**EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION**

March 28 2005
Month   Day   Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## A

Title of Work ▼
**Yasmin Drawing**

Registration Number of the Basic Registration ▼
**VA 1-218-491**

Year of Basic Registration ▼
**2003**

Name(s) of Author(s) ▼
**Carter Bryant**

Name(s) of Copyright Claimant(s) ▼
**MGA Entertainment, Inc**

## B

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number   **3b**          Line Heading or Description   **Date of Publication**

Incorrect Information as it Appears in Basic Registration ▼

**February 12, 2001**

Corrected Information ▼

**at least as early as May 21, 2001**

Explanation of Correction ▼

## C

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____   Line Heading or Description _____

Amplified Information and Explanation of Information ▼

MORE ON BACK ▶ • Complete all applicable spaces (D–G) on the reverse side of this page
• See detailed instructions   • Sign the form at Space F

DO NOT WRITE HERE
Page 1 of ___ Pages



A/JE EXHIBIT 512
Deponent ARMSTRONG
Date 7/19/07 Rptr. ACC
WWW.DEPOBOOK.COM

EXHIBIT _____ 11

PAGE _____ 285

FORM CA RECEIVED

**MAR 28 2005**

FUNDS RECEIVED DATE

EXAMINED BY

CORRESPONDENCE ☒

REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☒ YES ☐ NO

FORM CA

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

Continuation of ☐ Part B or ☐ Part C

**D**

Correspondence Give name and address to which correspondence about this application should be sent

Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York   10036
Phone (212) 819-8700       Fax (212) 356-8113       Email cwitschel@whitecase.com

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name _____

Account Number _____

Certification* I, the undersigned, hereby certify that I am the (Check only one)
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ duly authorized agent of   MGA Entertainment Inc.
   Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼ Carol A. Witschel                          Date ▼ March 26, 2005

Handwritten signature (X) ▼   Carol A. Witschel

Certificate will be mailed in window envelope to this address

Name ▼
Carol A. Witschel - White & Case LLP
Number/Street ▼
1155 Avenue of the Americas
City/State/ZIP ▼
New York, New York   10036

EXHIBIT _____11_____

PAGE _____284_____

Copyright Office fees are subject to change.
...yright Office
...nte the Copy-
1.

1439190.15



**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

VA 1-301-528

TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE
EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

March 28 2005
Month   Day   Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

## A
Title of Work ▼
**BRATZ Group Drawing**

Registration Number of the Basic Registration ▼
**VA 1-218-489.**

Year of Basic Registration ▼
**2003**

Name(s) of Author(s) ▼
**Carter Bryant**

Name(s) of Copyright Claimant(s) ▼
**MGA Entertainment, Inc.**

## B
Location and Nature of Incorrect Information in Basic Registration ▼

Line Number  **3b**        Line Heading or Description  Date of Publication

Incorrect Information as It Appears in Basic Registration ▼

**February 12, 2001**

Corrected Information ▼

**at least as early as May 21, 2001**

Explanation of Correction ▼

## C
Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____  Line Heading or Description _____

Amplified Information and Explanation of Information ▼

MORE ON BACK ▶  • Complete all applicable spaces (D-G) on the reverse side of this page    • DO NOT WRITE HERE
• See detailed instructions    • Sign the form at Space F          Page 1 of ___ Pages

π EXHIBIT 514
Deponent AAMSTRONG
Date 7/8/07 Rptr. ACC
WWW.DEPOBOOK.COM

EXHIBIT _____ 11

PAGE _____ 287

| | |
|---|---|
| FORM CA RECEIVED | FORM CA |
| MAR 28 2005 | |
| FUNDS RECEIVED DATE | |
| EXAMINED BY | FOR COPYRIGHT OFFICE USE ONLY |
| CORRESPONDENCE ☒ | |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☐ YES ☐ NO | |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

Continuation of ☐ Part B or ☐ Part C

**D**

Correspondence Give name and address to which correspondence about this application should be sent
Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone(212 ) 819-8200      Fax (212 ) 354-8113      Email cwitschel@whitecase.com

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name _____

Account Number _____

Certification* I, the undersigned, hereby certify that I am the (Check only one)
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ duly authorized agent of    MGA Entertainment Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼   Carol A. Witschel          Date ▼  March 24, 2005

Handwritten signature (X) ▼   *Carol A. Witschel*

Certificate will be mailed in window envelope to this address

Name ▼  Carol A. Witschel - White & Case LLP
Number/Street/Apt ▼   1155 Avenue of the Americas
City/State/ZIP ▼   New York, New York  10036

**G**

EXHIBIT ___11___

PAGE ___288___

Copyright Office fees are subject to change
For current fees, check the Copyright Office
website at *www copyright gov*, write the Copy-
right Office, or call (202) 707-3000

*143 940  854*



Form CA
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

VA 1–391–533

[ TX ] TXU ] PA ] PAU [ VA ] VAU ] SR ] SRU ] RE ]
EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

*March 28  2005*

 Month   Day   Year

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**A**

Title of Work ▼
    Jade Doll Configuration, Accessories and Packaging

Registration Number of the Basic Registration ▼        Year of Basic Registration ▼
    VA 1-090-287                                        2001

Name(s) of Author(s) ▼                                 Name(s) of Copyright Claimant(s) ▼
    ABC International Traders, Inc d/b/a MGA Entertainment,     ABC International Traders, Inc. d/b/a
    Inc                                                        MGA Entertainment

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number  2a          Line Heading or Description  Nature of Authorship

Incorrect Information as It Appears in Basic Registration ▼
    Only "3-dimensional sculpture" box checked

Corrected Information ▼
    Additional box "2-dimensional artwork" should be checked

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number  5          Line Heading or Description  Previous Registration

Amplified Information and Explanation of Information ▼

"No" box - checked, 5c box - unchecked
"Yes" box should be checked, 5c box should be checked

This basic registration VA 1-090-287 for the Jade Doll Configuration, Accessories and Packaging,
should cite to registration VA 1-218-487 (December 22, 2003) for the Jade Drawing, which was
registered after this basic registration but prior to the filing of this Form CA, and should include the
following additional information.

Line 6a - Derivative Work
    Jade Drawing (VA 1-218-487)

Line 6b – Material Added
    3-dimensional doll, sculpt, artwork and packaging

**MORE ON BACK ▶**    • Complete all applicable spaces (D-G) on the reverse side of this page        **DO NOT WRITE HERE**
                      • See detailed instructions        Sign the form at Space F                      Page 1 of ____ pages

△ π EXHIBIT 588
Deponent Armstrong
Date 8/1/07  Rptr Ac
WWW.DEPOBOOK.COM

EXHIBIT    *11*

PAGE    *289*

✳ Added from C.O. records.

| | FORM CA |
|---|---|
| FORM CA RECEIVED | 4/25/05 |
| FUNDS RECEIVED DATE | 3/28/05 |
| EXAMINED BY | WPH |
| CORRESPONDENCE ☑ | FOR COPYRIGHT OFFICE USE ONLY |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☑ YES ☐ NO | |

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

Continuation of ☐ Part B or ☐ Part C

**D**

Line 3a - Year of Completion
      Incorrect information  2000
      Corrected information  2001

Line 3b - Year of Publication
      Incorrect information  February 12, 2001
      Corrected information  At least as early as May 21, 2001

**E**

Correspondence: Give name and address to which correspondence about this application should be sent

Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York   10036
Phone( 212 ) 819-8200    Fax( 212 ) 354-8113    Email: cwitschel@whitecase.com

Deposit Account: If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name _____

Account Number _____

Certification* I, the undersigned, hereby certify that I am the (Check only one)

☐ author    ☐ owner of exclusive right(s)
☐ other copyright claimant  ☑ duly authorized agent of  MGA Entertainment Inc.
                Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**F**

Typed or printed name ▼ Carol A. Witschel      Date ▼ 4/22/05

Handwritten signature (X) ▼  *Carol A. Witschel*

**G**

Certificate will be mailed in window envelope to this address

Name ▼
Carol A. Witschel - White & Case LLP

Number/Street/Apt ▼
1155 Avenue of the Americas

City/State/Zip ▼
New York, New York   10036

17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: July 2005—20,000  Web Rev: July 2002  Printed on recycled paper        U.S. Government Printing Office: 2005-401-412/60 130

EXHIBIT __11__
PAGE __290__



Δ π EXHIBIT 5260
Deponent Armstrong
Date 8/1/07 Rptr. AC
WWW.DEPOBOOK.COM

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at www.copyright.gov, write the Copyright Office, or call (202) 707-3000.



Form CA
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

VA 1-301-534

TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE
EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

March 28 2005
Month    Day    Year

*143. 940 887*

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**A**

Title of Work ▼
Sasha Doll Configuration, Accessories and Packaging

Registration Number of the Basic Registration ▼
VA 1-090-288

Year of Basic Registration ▼
2001

Name(s) of Author(s) ▼
ABC International Traders, Inc d/b/a MGA Entertainment, Inc

Name(s) of Copyright Claimant(s) ▼
ABC International Traders, Inc.d/b/a MGA Entertainment

**B**

Location and Nature of Incorrect Information in Basic Registration ▼
Line Number     2a     Line Heading or Description    Nature of Authorship

Incorrect Information as it Appears in Basic Registration ▼
Only "3-dimensional sculpture" box checked

Corrected Information ▼
Additional box "2-dimensional artwork" should be checked

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼
Line Number     5     Line Heading or Description    Previous Registration

Amplified Information and Explanation of Information ▼

"No" box - checked, 5c box - unchecked
"Yes" box should be checked, 5c box should be checked

This basic registration VA 1-090-288 for the Sasha Doll Configuration, Accessories and Packaging, should cite to registration VA 1-218-488 (December 22, 2003) for the Sasha Drawing, which was registered after this basic registration but prior to the filing of this Form CA, and should include the following additional information

Line 6a - Derivative Work
Sasha Drawing (VA 1-218-488)

Line 6b - Material Added
3-dimensional doll, sculpt, artwork and packaging

MORE ON BACK ▶    • Complete all applicable spaces (D-G) on the reverse side of this page
                   • See detailed instructions    • Sign the form at Space F

DO NOT WRITE HERE
Page 1 of 2 pages

EXHIBIT _____ 11
PAGE _____ 291

★ Added from C.O. records.

| FORM CA RECEIVED | | FORM CA |
|---|---|---|
| 4/25/05 | | |
| FUNDS RECEIVED DATE | | |
| 3/28/05 | | |
| EXAMINED BY | | FOR COPYRIGHT OFFICE USE ONLY |
| CORRESPONDENCE ☒ | | |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☒ YES ☐ NO | | |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

Continuation of ☐ Part B or ☐ Part C

**D**

Line 3a - Year of Completion
    Incorrect information  2000
    Corrected information  2001

Line 3b - Year of Publication
    Incorrect information  February 12, 2001
    Corrected information  At least as early as May 21, 2001

**E**

Correspondence Give name and address to which correspondence about this application should be sent
Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone ( 212 819-8200     Fax ( 212 354-8113     Email cwitschel@whitecase.com

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name

Account Number

**F**

Certification* I, the undersigned, hereby certify that I am the (Check only one)
☐ author    ☐ owner of exclusive right(s)
☐ other copyright claimant  ☒ duly authorized agent of  MGA Entertainment Inc.
    Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼ Carol A. Witschel      Date ▼ 4/22/05

Handwritten signature (X) ▼ _Carol A. Witschel_

**G**

Certificate will be mailed in window envelope to this address

Name ▼ Carol A. Witschel - White & Case LLP
Number/Street/Apt ▼ 1155 Avenue of the Americas
City/State/ZIP ▼ New York, New York  10036

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev July 2000—20,000   Web Rev July 2000   Printed on recycled paper            U.S. Government Printing Office: 2000-461-422/44 006

EXHIBIT    11
PAGE    242

Copyright Office fees are subject to change
For current fees, check the Copyright Office
website at www.copyright.gov, write the Copy-
right Office, or call (202) 707-3000

*143  940  843*

**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**VA 1-301-535**



| VA | TXU | PA | PAU | VAU(VA) | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

*March 28 2005*

Month   Day   Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**A**   Title of Work ▼
Cloe Doll Configuration, Accessories and Packaging

| Registration Number of the Basic Registration ▼ | Year of Basic Registration ▼ |
|---|---|
| VA 1-090-289 | 2001 |

| Name(s) of Author(s) ▼ | Name(s) of Copyright Claimant(s) ▼ |
|---|---|
| ABC International Traders, Inc. d/b/a MGA Entertainment, Inc. | * ABC International Traders, Inc. d/b/a MGA Entertainment |

**B**   Location and Nature of Incorrect Information in Basic Registration ▼

Line Number ___2a___   Line Heading or Description  Nature of Authorship

Incorrect Information as It Appears in Basic Registration ▼

Only "3-dimensional sculpture" box checked

Corrected Information ▼

Additional box "2-dimensional artwork" should be checked

Explanation of Correction ▼

**C**   Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number ___5___   Line Heading or Description  Previous Registration

Amplified Information and Explanation of Information ▼

"No" box - checked, 5c box - unchecked
"Yes" box should be checked, 5c box should be checked

This basic registration VA 1-090-289 for the Cloe Doll Configuration, Accessories and Packaging, should cite to registration VA 1-218-490 (December 22, 2003) for the Cloe Drawing, which was registered after this basic registration but prior to the filing of this Form CA, and should include the following additional information

Line 6a – Derivative Work
        Cloe Drawing (VA 1-218-490)

Line 6b – Material Added
        3-dimensional doll, sculpt, artwork and packaging

---

MORE ON BACK ▶   • Complete all applicable spaces (D-G) on the reverse side of this page.   • See detailed instructions.   • Sign the form at Space 7
DO NOT WRITE HERE   Page 1 of ___2___ pages

Δ π EXHIBIT 202
Deponent Armstrong
Date 8/11 07 Rptr. AC
WWW.DEPOBOOK.COM

EXHIBIT ___11___
PAGE ___293___

\* Added from C.O. records.

| | | |
|---|---|---|
| FORM CA RECEIVED | 4/25/05 | FORM CA |
| FUNDS RECEIVED DATE | 3/28/05 | |
| EXAMINED BY | wm | FOR COPYRIGHT OFFICE USE ONLY |
| CORRESPONDENCE | | |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☐YES ☐NO | | |

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

Continuation of ☐ Part B or ☐ Part C

**D**

Line 3a – Year of Completion
    Incorrect information  2000
    Corrected information  2001

Line 3b – Year of Publication
    Incorrect information  February 12, 2001
    Corrected information  At least as early as May 21, 2001

---

Correspondence Give name and address to which correspondence about this application should be sent
Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone (212) 819-8700    Fax (212) 354-8113    Email cwitschel@whitecase.com

**E**

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name

Account Number

Certification* I, the undersigned, hereby certify that I am the (Check only one)
☐ author   ☐ owner of exclusive right(s) ☑ MGA Entertainment Inc.
☐ other copyright claimant ☑ duly authorized agent of  Name of author or other copyright claimant, or owner of exclusive right(s) ▲
    of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

**F**

Typed or printed name ▼    Carol A. Witschel    Date ▼ 4/22/05

Handwritten signature (X) ▼   Carol A Witschel

| Certificate will be mailed in window envelope to this address | Name ▼ Carol A. Witschel – White & Case LLP | **G** |
|---|---|---|
| | Number/Street/Apt ▼ 1155 Avenue of the Americas | |
| | City/State/Zip ▼ New York, New York  10036 | |

*17 U.S.C. § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev July 2003—80,000 Web Rev July 2003  Printed on recycled paper    U.S. Government Printing Office: 2003-494-422/60166

EXHIBIT ___11___

PAGE ___294___

Copyright Office fees are subject to change
For current fees, check the Copyright Office
website at www.copyright.gov, write the Copy-
right Office, or call (202) 707-3000.

*143 940 865*

**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

VA 1-381-536

TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

March 28 2005

Month   Day   Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**A**

Title of Work ▼
Yasmin Doll Configuration, Accessories and Packaging

Registration Number of the Basic Registration ▼
VA 1-090-290

Year of Basic Registration ▼
2001

Name(s) of Author(s) ▼
ABC International Traders, Inc. d/b/a MGA Entertainment, Inc

Name(s) of Copyright Claimant(s) ▼
* ABC International Traders, Inc. d/b/a
MGA Entertainment

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number _____ **2a** _____   Line Heading or Description  Nature of Authorship

Incorrect Information as It Appears in Basic Registration ▼

Only "3-dimensional sculpture" box checked

Corrected Information ▼

Additional box "2-dimensional artwork" should be checked

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____ **5** _____   Line Heading or Description  Previous Registration

Amplified Information and Explanation of Information ▼

"No" box - checked, 5c box - unchecked
"Yes" box should be checked, 5c box should be checked

This basic registration VA 1-090-290 for the Yasmin Doll Configuration, Accessories and Packaging,
should cite to registration VA 1-218-491 (December 22, 2003) for the Yasmin Drawing, which was
registered after this basic registration but prior to the filing of this Form CA, and should include the
following additional information

Line 6a - Derivative Work
Yasmin Drawing (VA 1-218-491)

Line 6b - Material Added
3-dimensional doll, sculpt, artwork and packaging

---

MORE ON BACK ▶   • Complete all applicable spaces (D-G) on the reverse side of this page
• See detailed instructions   • Sign the form at Space F

DO NOT WRITE HERE
Page 1 of __2__ pages



Δ π EXHIBIT 564
Deponent Armstrong
Date 8/1/07 Rptr. AC
WWW.DEPOBOOK.COM

EXHIBIT _____11_____

PAGE _____295_____

* Added from C.O. records.

| FORM CA RECEIVED | | FORM CA |
|---|---|---|
| 4/25/05 | | |
| FUNDS RECEIVED DATE | | |
| 3/28/05 | | |
| EXAMINED BY | hven | FOR COPYRIGHT OFFICE USE ONLY |
| CORRESPONDENCE NO | | |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☒YES ☐NO | | |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

Continuation of ☐ Part B or ☐ Part C

**D**

Line 3a – Year of Completion
  Incorrect information   2000
  Corrected information   2001

Line 3b – Year of Publication
  Incorrect information   February 12, 2001
  Corrected information   At least as early as May 21, 2001

**E**

Correspondence Give name and address to which correspondence about this application should be sent
Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York   10036
Phone ( 212 )819-8200      Fax(212) 354-8113      Email cwitschel@whitecase.com

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
Name

Account Number   R r   3

**F**

Certification* I, the undersigned, hereby certify that I am the (Check only one)
  ☐ author              ☐ owner of exclusive right(s)
  ☐ other copyright claimant   ☒ duly authorized agent of   MGA Entertainment Inc.
                                                    Name of author or other copyright claimant, or owner of exclusive right(s) ▲
  of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼ Carol A. Witschel                    Date ▼ 4/22/05

Handwritten signature (X) ▼

*Caral A. Witschel*

**G**

| Certificate will be mailed in window envelope to this address | Name ▼ Carol A. Witschel – White & Case LLP |
|---|---|
| | Number/Street ▼ 1155 Avenue of the Americas |
| | City/State/Zip ▼ New York, New York   10036 |

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.*

Rev July 2003—20 000   Web Rev July 2003   Printed on recycled paper                    U.S. Government Printing Office: 2003-491-423/80 000

EXHIBIT _____ 11
PAGE _____ 294

EXHIBIT 12

Case 2:04-cv-09049-DOC-RNB  Document 2863-4  Filed 03/28/08  Page 40 of 69  Page ID
CM/ECF - California Central    ict - Docket Report #:46726
                                                                       Page 1 of 365

(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:04-cv-09049-SGL-RNB

Carter Bryant v. Mattel Inc
Assigned to: Judge Stephen G. Larson
Referred to: Magistrate Judge Robert N. Block
Related Cases: 2:04-cv-03431-NM-RNB
                5:07-cv-00487-SGL-RNB
Cause: 17:101 Copyright Infringement

Date Filed: 11/02/2004
Jury Demand: Defendant
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**Carter Bryant**
*an individual*

represented by **John W Keker**
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704
415-391-5400
Email: jkeker@kvn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Audrey Walton-Hadlock**
Keker and Van Nest
710 Sansome Street
San Francisco, CA 94111
415-391-5400
Email: awaltonhadlock@kvn.com
*ATTORNEY TO BE NOTICED*

**Christa M Anderson**
Keker and Van Nest
710 Sansome Street
San Francisco, CA 94111-1704
415-391-5400
Fax: 415-397-7188
Email: canderson@kvn.com
*ATTORNEY TO BE NOTICED*

**John Elliot Trinidad**
Keker and Van Nest
710 Sansome Street
San Francisco, CA 94111
415-391-5400
Fax: 415-397-7188
Email: jtrinidad@kvn.com

**EXHIBIT** /2

**PAGE** 297

*ATTORNEY TO BE NOTICED*

**Matthew M Werdegar**
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111
415-391-5400
Email: mmw@kvn.com
*ATTORNEY TO BE NOTICED*

**Michael H Page**
Keker and Van Nest
710 Sansome Street
San Francisco, CA 94111-1704
415-391-5400
Email: mhp@kvn.com
*ATTORNEY TO BE NOTICED*

**Movant**

**Stern & Goldberg**

represented by **Alan Neil Goldberg**
Stern & Goldberg
6345 Balboa Blvd, Ste 200
Encino, CA 91316
818-758-3940
Fax: 818-758-3950
Email: agoldberg@sgattys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kien C Tiet**
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316
818-758-3940
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Ana Elise Cloonan**

represented by **Larry W McFarland**
Keats McFarland & Wilson
9720 Wilshire Blvd, Ste PH
Beverly Hills, CA 90212
310-248-3830
Email: lmcfarland@kmwlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Margaret Hatch-Leahy**

represented by **Larry W McFarland**
(See above for address)

EXHIBIT _____ /2

298

PAGE

3/26/2008

Case 2:04-cv-09049-DOC-RNB  Document 2863-4  Filed 03/28/08  Page 42 of 69  Page ID
#:46728
CM/ECF - California Central District - Docket Report

Page 3 of 365

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**Veronica Marlow**                     represented by **Emil W Herich**
Keats McFarland & Wilson
9720 Wilshire Blvd, Ste PH
Beverly Hills, CA 90212
310-248-3830
Fax: 310-860-0363
Email: eherich@kmwlaw.com
*LEAD ATTORNEY*

**Larry W McFarland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**Lucy Arant**                          represented by **Larry W McFarland**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**Sarah Halpern**                       represented by **Larry W McFarland**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**Peter Marlow**                        represented by **Larry W McFarland**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Movant</u>

**Right Management Inc**                represented by **Cheryl Plambeck**
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019
212-468-4965
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**Mattel Inc**                          represented by **John B Quinn**
*a Delaware corporation*                Quinn Emanuel Urquhart Oliver &
Hedges
865 S Figueroa Street, 10th Floor

**EXHIBIT** _____ *12*

_____ *299*

Los Angeles, CA 90017-2543
213-443-3000
Fax: 213-443-3100
Email: johnquinn@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Juan Pablo Alban**
Quinn Emanuel Urquhart Oliver and
Hedges
865 South Figueroa Street, 10th Fl
Los Angeles, CA 90017-2543
213-443-3000
Email:
juanpabloalban@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy L Alger**
Quinn Emanuel Urquhart Oliver &
Hedges
865 S Figueroa St, 10th Fl
Los Angeles, CA 90017-2543
213-443-3000
Email: timalger@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brett Dylan Proctor**
Quinn Emanuel Urquhart Oliver and
Hedges
865 S Figueroa St, 10th Fl
Los Angeles, CA 90017-2543
213-443-3000
Email:
dylanproctor@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Cyrus S Naim**
Quinn Emanuel Urquhart Oliver &
Hedges
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
213-443-3000
Email: cyrusnaim@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Jon D Corey**
Quinn Emanuel Urquhart Oliver &
Hedges

EXHIBIT _____ *12*

865 S Figueroa St, 10th Fl
Los Angeles, CA 90017-2543
213-443-3000
Email: joncorey@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Melissa Grant**
Quinn Emanuel Urquhart Oliver and
Hedges
865 South Figueroa Street, 10th Fl
Los Angeles, CA 90017-2543
213-443-3191
Email:
melissagrant@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Michael T Zeller**
Quinn Emanuel Urquhart Oliver &
Hedges
865 S Figueroa St, 10th Floor
Los Angeles, CA 90017-2543
213-443-3000
Fax: 213-443-3100
Email:
michaelzeller@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Oleg Stolyar**
Quinn Emanuel Urquhart Oliver and
Hedges
865 S Figueroa St, 10th Fl
Los Angeles, CA 90017-2543
213-624-7707
Email: alexstolyar@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**MGA ENTERTAINMENT INC.,**
**INTERVENOR RE: CV04-09059**

represented by **Raoul D Kennedy**
Skadden Arps Slate Meagher & Flom
4 Embarcadero Center
Ste 3800
San Francisco, CA 94111
415-984-6400
Email: rkennedy@skadden.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas J Nolan**
Skadden Arps Slate Meagher and Flom
LLP

EXHIBIT _____ /2

PAGE _____ 301

300 South Grand Avenue 34th Floor
Los Angeles, CA 90071-3144
213-687-5252
Email: tnolan@skadden.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle M Campana**
Skadden Arps Slate Meagher & Flom
LLP
4 Times Square
New York, NY 10036-6522
212-735-3912
Email:
michelle.campana@skadden.com
*ATTORNEY TO BE NOTICED*

**ThirdParty Defendant**

**Anne Wang**                    represented by **Linda M Burrow**
                                 Caldwell Leslie and Proctor
                                 1000 Wilshire Boulevard, Suite 600
                                 Los Angeles, CA 90017
                                 213-629-9040
                                 Email: burrow@caldwell-leslie.com
                                 *LEAD ATTORNEY*
                                 *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Mattel Inc**                   represented by **Diane C Hutnyan**
*a Delaware corporation*         Quinn Emanuel Urquhart Oliver &
                                 Hedges
                                 865 S Figueroa St, 10th Fl
                                 Los Angeles, CA 90017-2543
                                 213-624-7707
                                 Email:
                                 dianehutnyan@quinnemanuel.com
                                 *LEAD ATTORNEY*
                                 *ATTORNEY TO BE NOTICED*

                                 **John B Quinn**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *ATTORNEY TO BE NOTICED*

                                 **Timothy L Alger**
                                 (See above for address)
                                 *LEAD ATTORNEY*
                                 *ATTORNEY TO BE NOTICED*

                                 **Brett Dylan Proctor**

EXHIBIT _____ *12*

PAGE _____ *302*

(See above for address)
*ATTORNEY TO BE NOTICED*

**Jon D Corey**
Quinn Emanuel Urquhart Oliver &
Hedges
865 S Figueroa St, 10th Floor
Los Angeles, CA 90017-2543
213-443-3000
Email: joncorey@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Melissa Grant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T Zeller**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**
**DOES**
*4 through 10*

represented by **Larry W McFarland**
(See above for address)
*LEAD ATTORNEY*

**Emil W Herich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Carlos Gustavo Machado Gomez**
*an indivdual*

represented by **Alexander H Cote**
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
213-613-4655
Email: acote@obsklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David C Scheper**
Overland Borenstein Scheper and Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071-3144
213-613-4670
Fax: 213-613-4656
Email: dscheper@obsklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

EXHIBIT _/2_

PAGE _303_

Leah Chava Gershon
James W Spertus Law Offices
12100 Wilshire Boulevard, Suite 620
Los Angeles, CA 90025
310-826-4700
Email: leah@spertuslaw.com
*ATTORNEY TO BE NOTICED*

Mark E Overland
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
213-613-4655
Email: moverland@obsklaw.com
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Isaac Larian**                  represented by   **Raoul D Kennedy**
*an individual*                                    (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Thomas J Nolan**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Kenneth A Plevan**
                                                   Skadden Arps Slate Meagher &
                                                   Flom,LLP
                                                   4 Times Sq
                                                   New York, NY 10036-6522
                                                   212-735-3410
                                                   Email: kenneth.plevan@skadden.com
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Michelle M Campana**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**MGA Entertainment HK Limited**  represented by   **Raoul D Kennedy**
*a Hong Kong Speical Administrative*               (See above for address)
*REgion business entity*                           *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Thomas J Nolan**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*

EXHIBIT _____ 12

PAGE _____ 304

*ATTORNEY TO BE NOTICED*

**Kenneth A Plevan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle M Campana**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**MGAE De Mexico SRL De Cv**
*a Mexico business entity*

represented by **Raoul D Kennedy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas J Nolan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth A Plevan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle M Campana**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**MGA ENTERTAINMENT INC.,**
**INTERVENOR RE: CV04-09059**

represented by **Raoul D Kennedy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas J Nolan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth A Plevan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle M Campana**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Carter Bryant**

represented by **Audrey Walton-Hadlock**

EXHIBIT _____ *12*

PAGE _____ *305*

*an individual*

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christa M Anderson**
Keker and Van Nest
710 Sansome Street
San Francisco, CA 94111-1704
415-391-5400
Email: canderson@kvn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W Keker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Elliot Trinidad**
Keker and Van Nest
710 Sansome Street
San Francisco, CA 94111
415-391-5400
Email: jtrinidad@kvn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew M Werdegar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keith A Jacoby**
Littler Mendelson
2049 Century Park E, 5th Fl
Los Angeles, CA 90067-3107
310-553-0308
Email: kjacoby@littler.com

**Michael H Page**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas J Nolan**
(See above for address)

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 11/02/2004 | 1 | COMPLAINT against defendant Mattel Inc. (Filing fee $150.) filed by |

EXHIBIT _____ *12*

PAGE _____ *306*

EXHIBIT 13

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12                                          | CASE NO. C 04-09049 SGL (RNBx)
   CARTER BRYANT, an individual,            | JAMS Reference No. 1100049450
13
                Plaintiff,
14                                          | Consolidated with
         v.                                 | Case No. CV 04-09059
15                                          | Case No. CV 05-2727
   MATTEL, INC., a Delaware corporation,
16                                          | **ORDER GRANTING MATTEL'S**
                Defendant.                  | **MOTION TO COMPEL MGA TO**
17                                          | **PRODUCE DOCUMENTS BEARING**
                                            | **BATES NOS. MGA 0800973-0800974**
18                                          | **AND MGA 0829296-0829305**

19
   CONSOLIDATED WITH
20 MATTEL, INC. v. BRYANT and
   MGA ENTERTAINMENT, INC. v. MATTEL,
21 INC.

22

23

24                        I. INTRODUCTION

25       Mattel, Inc. ("Mattel") submitted a "Motion to Compel Withheld MGA Documents That

26 Prove MGA Was Developing Bratz as Early as June 2000." Specifically, Mattel seeks an order

27 compelling MGA to produce documents bearing Bates Nos. MGA 0800973-0800974 and MGA

28
   Bryant v. Mattel, Inc.,                                                    1
   CV-04-09049 SGL (RNBx)

1   0829296 – 0829305, which Mattel characterizes as "smoking gun" documents that prove MGA

2   was developing Bratz as early as June 2000. MGA contends that the disputed documents were

3   inadvertently produced and are protected by the attorney-client privilege. At MGA's request,

4   Mattel destroyed the disputed documents. Mattel, however, disputes MGA's claims of privilege

5   and presently seeks an order compelling production of the disputed documents. MGA submitted

6   an opposition together with a supporting declaration, and lodged the disputed documents for an *in*

7   *camera* review. Mattel submitted a reply. The matter was heard on December 14, 2007.

## II. BACKGROUND

8

9        Mattel's claims in this case include allegations that "Carter Bryant [hereinafter "Bryant"]

10  conceived, created and developed Bratz designs while he was employed by Mattel as a doll

11  designer." Mattel alleges that "using Mattel resources and while employed by Mattel, Bryant

12  took steps to assist MGA to produce dolls," and that he "concealed his Bratz work from Mattel

13  and wrongfully sold Bratz to MGA while he was a Mattel employee." Mattel's Second Amended

14  Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶¶2, 26, attached as Ex. 3

15  to Proctor Decl. Mattel alleges that "as a result of the efforts of Bryant and other Mattel

16  employees working on Bratz (which was done without Mattel's knowledge), the Bratz dolls had

17  been designed and were far along in development during the time that Bryant was employed by

18  Mattel and prior to the time that Bryant left Mattel on October 20, 2000." Id. at Counterclaims,

19  ¶36. Mattel claims ownership of Bratz works created by Bryant while he was employed by

20  Mattel, asserts that Bryant breached his duties of loyalty and fiduciary duties to Mattel, and

21  claims that MGA aided and abetted Bryant. Defendants dispute these allegations.

22       The timing of Bryant's creation and development of Bratz is a central issue in the case,

23  and thus has been the focus of a substantial amount of discovery. Bryant testified at his

24  deposition that he first pitched the Bratz concept to MGA when he met Paula Garcia in August of

25  2000. According to the deposition testimony of Bryant and MGA's Isaac Larian ("Larian"),

26  Bryant met Larian for the first time in September 2000. Larian testified that at the time of the

27  September meeting, Bryant had names for each Bratz doll character. Larian also testified,

     however, that one of the Bratz dolls, "Yasmin," was subsequently named after his daughter

28

1   Jasmine.

2        Another witness, Anna Rhee, testified that Bryant asked her to paint Bratz doll heads in

3   June 2000.  Bryant, however, testified that he did not ask Ms. Rhee to paint faces for Bratz dolls

4   until November 2000.

5        In the course of discovery, MGA produced documents bearing Bates Nos. MGA 0800973-

6   0800974 and MGA 0829296-0829305 to Mattel.  On August 7, 2007, however, MGA sent Mattel

7   a letter asserting that the documents are protected by the attorney-client privilege and were

8   inadvertently produced.  Accordingly, Mattel destroyed its copies of the disputed documents and

9   so confirmed to MGA.

10        The first document in question, marked as MGA 0800973-0800974, is an internal

11   document sheet (the "Docket Sheet") from Russ, August, Kabat & Kent, trademark prosecution

12   counsel for MGA, regarding MGA's trademark application for "Bratz."  The Docket Sheet

13   includes such information as the name of the mark, the country, the name of the registrant, the

14   application number, the application date (December 11, 2000), the registration number, the

15   registration date (December 2, 2003), the term, the date the renewal is due (December 2, 2013),

16   and the type of goods/services the mark is used for ("Dolls").  Mattel is particularly interested in

17   the notation "Dates of Use:  6-15-2000," which appears in a box entitled "Remarks" on the

18   second page of the Docket Sheet.

19        The second document in question, marked as MGA 0829296-0829305, is a facsimile

20   dated December 7, 2000 (the "Fax") from Lucy B. Arant, trademark counsel at Russ, August,

21   Kabat & Kent to Paula Garcia (then known as Paula Traentafellas) at MGA.  The first page of the

22   Fax includes a written message from Ms. Arant to Ms. Garcia stating that the Fax attaches four

23   trademark applications for Isaac Larian's review and signature.  The message also includes the

24   following remarks by Ms. Arant to Ms. Garcia:  "You indicated that all four of the applications

25   have a date of first use of June 15, 2000.  Please confirm that this is correct."  The remainder of

26   the Fax consists of the "intent to use" trademark applications for "Jade," "Yasmin," "Sasha," and

27   "Bratz."  These "intent to use" trademark applications do not include any information regarding

28   "dates of use."

1    Mr. Larian executed MGA's trademark applications for "Jade," "Yasmin," "Sasha," and
2  "Bratz" on the day the Fax was sent, December 7, 2000, and the applications were filed with the
3  Patent and Trademark Office ("PTO"). MGA subsequently filed a statement of use for each of
4  the four marks that specified dates in May of 2001 for the "date of first use" and a "date of first
5  use in commerce," which are significantly different from the June 15, 2000 date noted in the
6  Docket Sheet and the Fax.
7    Mattel contends that the disputed documents, and in particular the June 15, 2000 date
8  noted therein, are relevant to its claim that Bryant secretly worked with MGA on Bratz while he
9  was employed by Mattel. Bryant was employed at Mattel from January 4, 1999 until October 20,
10  2000. Mattel also contends that the disputed documents are relevant to challenge the credibility
11  of defendants' key witnesses, and to substantiate the testimony of Ms. Rhee.
12    Furthermore, Mattel contends that neither of the disputed documents are protected by the
13  attorney-client privilege. Mattel contends that the Docket Sheet is not a communication, much
14  less a communication from MGA to counsel for the purpose of obtaining legal advice. Rather, in
15  Mattel's view, the Docket Sheet is an internal law firm document that contains basic facts that are
   not privileged.
16    Mattel also contends that even if the Docket Sheet were a privileged communication, the
17  information contained within it, including the date of first use information, is not privileged
18  because MGA did not communicate the information for the purpose of keeping it confidential.
19  Rather, Mattel contends that MGA communicated the date of first use and other information listed
20  on the Docket Sheet to its trademark attorneys so that they could use the information to register
21  MGA's marks with the PTO. Indeed, Mattel points out that after MGA submitted its "intent to
22  use" trademark applications, MGA submitted a "statement of use" for each of its marks to the
23  PTO that specified a "date of first use," although the specified "date of first use" was not June 15,
24  2000.
25    Moreover, Mattel contends that applicants for trademarks must disclose to the PTO a date
26  of first use of the mark. Mattel explains that an applicant may initially apply to register a
27  trademark by filing an application for use of a trademark or by filing an application for bona fide
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

Exhibit ___13___

1  intention to use a trademark (see 15 U.S.C. §1051(a) and (b)), but in either case the applicant

2  must eventually disclose a "date of first use" of the mark. A use-based application must include

3  the date of first use of the mark at the outset. See 15 U.S.C. §1051(a)(1). In contrast, an "intent

4  to use" applicant must, within six month of the PTO's issuance of notice of allowance, file a

5  "statement that verifies the mark is in use in commerce, the date of first use in commerce, the

6  goods and services in connection with the mark are used in commerce, and the manner in which

7  the mark is being used." Eastman V. Kodak Co. v. Bell & Howell Document Management

8  Products Co., 994 F.2d 1569, 1570 (C.A. Fed. 1993). Mattel reasons that because MGA was

9  required to submit information about the date of first use to the PTO in order for MGA to obtain a

10  trademark registration, MGA could not have provided the information to trademark counsel with

11  any reasonable expectation or intention that such information would remain confidential.

12       Mattel contends that the Fax is not privileged because it is a communication from counsel

13  to MGA, not vice versa, and that the attachments are non-privileged trademark applications.

14  Mattel also contends that the Fax is not privileged because it does not reveal any confidential

15  communication for the purpose of rendering legal advice. Rather, Mattel reiterates that MGA was

16  required to submit information about the date of first use to the PTO in order for MGA to obtain a

17  trademark registration, and therefore MGA could not have expected or intended that such

information remain confidential.

18       MGA contends that the declaration of MGA employee Paula Garcia demonstrates that the

19  communications by MGA to its counsel regarding date of first use for the Bratz doll marks were

20  intended to be confidential attorney-client communications for the purpose of obtaining legal

21  advice for trademark applications. Accordingly, MGA contends that the references to the date of

22  first use in the Docket Sheet and the Fax are protected because the references reflect a client

23  confidence transmitted as part of a privileged communication.

24       MGA contends that Ms. Arant's role was not as a "mere conduit of data" or transcriber.

25  See e.g., Knogo Corp. v. United States, 213 U.S.P.Q. 936, 940, 1980 WL 39083 (Ct. Cl. Trial

26  Div. 1980) (rejecting the characterization of patent attorneys as mere "conduits" to the PTO).

27  Instead, MGA describes her role as providing what information should be included in the

28

EXHIBIT __13__

2 / /

1    trademark applications and how it should be sent out. MGA contends that Ms. Arant requested

2    "dates of first use" information from Ms. Garcia in connection with advising MGA regarding

3    "intent to use" trademark applications. MGA's Opposition, pp. 5-6. According to MGA, "dates

4    of first use" information has significance to "intent to use" applications for two reasons: first, an

5    "intent to use" application is only appropriate for marks not already in use; and second, an

6    applicant has six months from the "date of first use" to use the mark before it is abandoned.

7    MGA emphasizes, however, that "dates of first use" are not among the facts disclosed to the PTO

8    as part of an "intent to use" application. MGA reasons, therefore, that it is incorrect for Mattel to

9    assume that Ms. Garcia intended her communications regarding date of first use to be made

     public.

10

11          MGA also contends that Mattel erroneously relies on MGA's later filings of the

12   "statement of use" documents to argue that Ms. Garcia conveyed "dates of first use" to Ms. Arant

13   with the intent that those dates would be publicly disclosed. MGA contends that Mattel has no

14   evidentiary support for such a conclusion, and that indeed, Mattel's submissions show that

15   different attorneys from two different law firms prepared the "statement of use" filings for MGA

16   and specified different "dates of first use" for each mark than the June 15, 2000 date that Ms.

     Garcia allegedly communicated to Ms. Arant.

17          MGA contends further that "[e]ven as to information that made its way into the 'intent to

18   use applications,' the documents generated in the preparation and drafting of applications that

19   reflect attorney-client discourse are shielded by the attorney-client privilege." MGA's Opposition

20   at p.7. Borrowing the reasoning in <u>McCook Metals L.L.C. v. Alcoa Inc.</u>, 192 F.R.D. 242, 252

21   (N.D. Ill. 2000), MGA asserts that drafts "necessarily reflect the communications between a client

22   and his attorney as the attorney attempts to put forth the invention in the best light possible to

23   protect a client's legal right." MGA also contends that attorney-client protection extends to

24   factual information provided to counsel for the purpose of providing legal advice. <u>See e.g.</u> <u>In re</u>

25   <u>Spalding Sports Worldwide, Inc.</u>, 203 F.3d 800 (Fed. Cir. 2000) (invention record submitted to

26   legal counsel for the purpose of obtaining legal advice was privileged); <u>TeKnowledge Corp. v.</u>

27   <u>Akamai Techs., Inc.</u>, 2004 U.S. Dist. LEXIS 19109, at *6 (N.D. Cal. Aug. 10, 2004) ("technical

28

1   information communicated to a patent attorney does not warrant different treatment than any

2   other information communicated to an attorney in the process of obtaining legal services.").

3          As for Mattel's argument that the documents in question are "smoking gun" evidence,

4   MGA responds that the Bratz launch occurred in June 2001, at which time the marks were first

5   used. MGA asserts that "[a]ny contrary information contained in the documents in question was

6   an error that should have no bearing on whether the information is privileged." MGA's

7   Opposition, p.2. Ms. Garcia explains in her declaration that the June 15, 2000 date was

8   erroneous. MGA also contends that there could have been no "date of first use" of Bratz in June

9   2000 within the meaning of trademark law. MGA reasons that the Lanham Act requires that "first

10   use" be "actual use in commerce," or "bona fide use [] in the ordinary course of trade," (Fila

11   Sport S.p.A. v. Diadora America, Inc., 141 F.R.D. 75, 78 (D. Ill. 1991), and that Bratz was not

12   being used in commerce in June 2000.

                                  III. DISCUSSION

13          The essential elements of the attorney-client privilege are: "(1) When legal advice of any

14   kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the

15   communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the

16   client's instance, permanently protected (7) from disclosure by the client or by the legal adviser

17   (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).

18   The burden is on the party asserting the privilege to establish all the elements of the privilege.

19   United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000). "Because the attorney-client

20   privilege has the effect of withholding relevant information from the factfinder, it is applied only

21   when necessary to achieve its limited purpose of encouraging full and frank disclosure by the

22   client to his or her attorney." Clark v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir.

23   1992).

                MGA has Failed to Establish that the Docket Sheet is Privileged

24          MGA argues that the attorney-client privilege extends to the Docket Sheet because it was

25   a "paper [] prepared by an attorney or at an attorney's request for the purpose of advising the

26   client, [which was] based on and would tend to reveal the client's confidential communications."

27

28                                                                                              7

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT    13

PAGE    3/3

1   MGA's Opposition at p.9 (citing In re Fischel, 557 F. 2d 209,211 (9th Cir. 1977)).  MGA's

2   argument, however, is unsupported by evidence.

3        The declaration of Paula Garcia fails to specifically address the Docket Sheet.  Instead,

4   Ms. Garcia generalizes as follows:

5            Prior to the launch of Bratz, I communicated with outside lawyers for

6        MGA in connection with protecting MGA's trademarks for the "Bratz" line of

7        products it hoped to launch in June 2001.  These communications were for the

8        purpose of obtaining legal advice from MGA's trademark counsel, including

9        communications in or about December 2000 with Lucy Arant of Russ, August,

         Kabat & Kent LLP.  In general, I intended and expected my communications with

10       counsel in connection with MGA's trademark filings to be confidential, including

11       communications regarding the anticipated date of MGA's first use of the "Bratz"

12       marks.

13  Garcia Decl. In Support of MGA's Opposition, ¶3.

14       Nowhere in the evidentiary record submitted by MGA does MGA explain why or how the

15  Docket Sheet was created or maintained.  MGA does not explain who created the Docket Sheet or

16  provide the source of the information contained therein.  MGA has not established the requisite

17  elements of the attorney-client privilege for this specific document.  See e.g. Automated

18  Technologies, Inc. v. Knapp Logistics & Automation, Inc., 382 F.Supp.2d 1372, 1375 (N.D. Ga.

19  2005) (party invoking privilege has the burden of proving "that the particular communications

20  were confidential"); Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 453

21  ("The party seeking to assert the privilege must show that the particular communication was part

22  of a request for advice or part of the advice, and that the communication was intended to be and

23  was kept confidential.").  MGA has failed to carry its burden of establishing that the Docket Sheet

24  is protected by the attorney-client privilege.

                     MGA has Failed to Establish That the Fax is Privileged

25       An in camera review of the Fax confirms that the document constitutes a communication

26  between MGA and counsel regarding MGA's trademark applications.  That the Fax constitutes a

27

28
    Bryant v. Mattel, Inc.,                                                                   8
    CV-04-09049 SGL (RNBx)

EXHIBIT ___13___

____ . 314

1   communication between MGA and counsel, however, is insufficient without more to establish

2   that the Fax is privileged. MGA must also establish that the Fax is a confidential communication

3   for the purpose of rendering legal advice. See e.g. Automated Technologies, Inc. v. Knapp

4   Logistics & Automation, Inc., supra; Kodish v. Oakbrook Terrace Fire Protection Dist., supra.

5   MGA has failed to do so. Ms. Garcia's declaration does not even mention the Fax, much less

6   specify that the information contained therein was intended to be confidential for the purpose of

7   rendering legal advice. Instead, Ms. Garcia speaks in generalities about communications

8   regarding MGA's trademark applications. In fact, the Fax does not contain any legal opinions or

9   advice. The only attorney-client communication reflected in the Fax is the statement regarding

10   the "date of first use."

11        MGA could not have had a reasonable expectation that the June 15, 2000 "date of first

12   use" stated in the Fax would be kept confidential. As Mattel points out, in order to obtain a full

13   trademark registration, an applicant must disclose the "dates of first use" to the PTO. This is true

14   regardless of whether the applicant initially files an "intent to use" application or a use-based

15   application. See 15 U.S.C. §1051(a)(2) (use-based application must include the date of first use

16   of the mark); Eastman V. Kodak Co. v. Bell & Howell Document Management Products Co., 994

17   F.2d at 1570 (an "intent to use" applicant must file a "statement that verifies . . . the date of first

     use in commerce).

18        MGA relies on Ms. Garcia's declaration that she generally expected her communications

19   with trademark counsel to be confidential. However, a client's subjective belief as to whether a

20   communication is privileged must be reasonable in order for the attorney-client privilege to

21   attach. Speaker ex rel. Speaker v. County of San Bernadino, 82 F.Supp.2d 1105, 1112-1113

22   (C.D. Cal. 2000) (client's subjective belief "should be reasonable in order to lay claim to the

23   protections of the privilege"); Griffith v. Davis, 161 F.R.D. 687, 696 (C.D. Cal. 1995) (attorney-

24   client privilege not applicable to information communicated to attorney where client knew

25   information would be used in his employer's administrative investigation). Although a client's

26   subjective belief of confidentiality is necessary for the attorney-client privilege to attach, it is not

27   sufficient. See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir. 1997)

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT ___ 13

PAGE  315

1  ("[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the

2  law of privilege can transform an otherwise unprivileged conversation into a privileged one.").

3       Nevertheless, MGA attempts to identify confidential reasons why Ms. Garcia might have

4  communicated "date of first use" information to Ms. Arant. According to MGA, the only reason

5  Ms. Arant solicited "date of first use" information from Ms. Garcia was (i) to determine whether

6  an "intent to use" application would be proper and (ii) to determine when MGA should file its

7  applications. MGA asserts that "these legal considerations led Ms. Arant to request 'dates of first

8  use' from Ms. Garcia." MGA's Opposition at p.6. However, there is no evidence of record to

9  substantiate MGA's contentions.

10       MGA's failure to provide evidence to substantiate its claim that the Fax reveals the

11  substance of a confidential communication is fatal to its claim of privilege. Because a mark's

12  date of first use is factual information that must be conveyed to the PTO to secure a trademark

13  application, communication of this information is not privileged. Weil Ceramics & Glass, Inc. v.

14  Work, 110 F.R.D. 5000, 504 (E.D. N.Y. 1986) ("The party claiming the privilege must clearly

15  show that a document renders legal advice and does not, for example, merely contain facts later

16  disclosed in a patent or trademark application"); see also United States v. White, 950 F.2d 426,

17  430 (7th Cir. 1991) ("when information is disclosed for the purpose of assembly into a bankruptcy

18  petition and supporting schedules, there is no intent for the information to be held in confidence

19  because the information is to be disclosed on documents publicly filed").

20       MGA contends, however, that the June 15, 2000 date was not actually disclosed to the

21  PTO and points out that Mattel's own submissions show that different attorneys from two

22  different law firms prepared the "statement of use" filings for MGA and specified different "dates

23  of first use" for each mark than the June 15, 2000 date that Ms. Garcia allegedly communicated to

24  Ms. Arant. That the June 15, 2000 date was not actually disclosed is irrelevant. What is relevant

25  is whether Ms. Garcia actually and reasonably intended and expected the "dates of first use"

26  information she provided to Ms. Arant to remain confidential when she made the communication,

27  not whether the information was actually conveyed to the public. See In re Grand Jury

28  Proceedings, 727 F.2d 1352, 1358 (4th Cir. 1984) (information given to attorney to prepare

10

EXHIBIT ___ /3

PAGE ___ 31 6

1  prospectus was not protected by attorney-client privilege, even though no prospectus was ever

2  actually issued); United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983) ("[I]f the client

3  transmitted the information so that it might be used on the tax return, such a transmission destroys

4  any expectation of confidentiality.").

5      Lastly, MGA's reliance on McCook, supra, and other related caselaw[1] is misplaced.  In

6  McCook, the court held that draft patent applications were privileged because they "contain[ed]

7  the legal opinion and advice of the attorney regarding the wording of technical specifications,

8  claims, and prior art, and whether an item is included, all of which are necessary to secure a legal

9  claim for the client." McCook, 192 F.R.D. at 252-253.  In contrast, the Fax at issue in this case

10  reflects no such attorney opinions or advice.  Indeed, the only attorney-client communication

11  reflected in the Fax is the statement regarding the "date of first use."  The cases cited by MGA are

12  inapplicable to communications conveying date of first use information in the trademark context

13  because, as discussed previously, a trademark attorney does not have discretion regarding whether

    to disclose the "date of first use" information to the PTO.[2]

14                    IV. CONCLUSION

15      For the reasons set forth above, Mattel's motion to compel MGA to produce documents

16  bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 is granted.  MGA shall

17  produce said documents on or before December 28, 2007.

18      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

19  Master, Mattel shall file this Order with the Clerk of Court forthwith.

20

21  Dated: December 17, 2007

                            HON. EDWARD A. INFANTE (Ret.)
22                            Discovery Master

23

24  _____

25  [1] See Rohm v. Haas Co. v. Brotech Corp., 815 F.Supp. 793, 797 (D. Del. 1993); Hyuk Suh v. Choon Sik Yang, 1997 U.S. Dist. LEXIS 20077 (N.D. Cal. No. 18, 1977); Conner Peripherals, Inc. v. Western Digital Corp., 1993 U.S. Dist. LEXIS 20149 (N.D. Cal. June 8, 1993); TcKnowledge Corp. v. Akamai Techs. Inc., 2004 U.S. Dist. LEXIS 19109 (N.D. Cal. Aug. 10, 2004).

26  [2] Mattel argues in the alternative that even if the disputed documents were privileged, MGA has waived the privilege. Because MGA

27  has failed to establish the requisite elements of the attorney-client privilege as to the disputed documents, it is unnecessary to address Mattel's waiver argument herein.

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                    11

EXHIBIT ___13___

PAGE ___317___

**PROOF OF SERVICE BY E-MAIL**

I, Sandra Chan, not a party to the within action, hereby declare that on December 17, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO PRODUCE DOCUMENTS BEARING BATES NOS. MGA 0800973-0800974 AND MGA 0829296-0829305 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on December 17, 2007, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT ____ _13_

PAGE ____ _318_

EXHIBIT 14

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

# PRIORITY SEND
### & ENTERED

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date:  July 2, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
              AND CONSOLIDATED ACTIONS
==================================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                                    Theresa Lanza
          Courtroom Deputy Clerk                        Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                          John B. Quinn
                                       Brett Dylan Proctor
                                       Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser

PROCEEDINGS:    MINUTE ORDER



ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

DOCKETED ON CM

JUL - 5 2007

BY _____ 164

          As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
       May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                          Initials of Deputy Clerk _Jh_
CIVIL – GEN                                    1         Time: 01/15

EXHIBIT ___14___

PAGE ___3/9___

07|2|07

regarding date of production of documents (docket #545); and

(4)     The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)     The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)     Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL,** as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)     MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)     MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

MINUTES FORM 90
CIVIL -- GEN

EXHIBIT ____14____

PAGE ____320____

2

Initials of Deputy Clerk __jh_____
Time: 01/15

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

EXHIBIT _____ 14

PAGE _____ 321

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above. The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above. The application is **DENIED** in all other respects.

(4)     MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

MINUTES FORM 90
CIVIL – GEN

4

Initials of Deputy Clerk __jh____
Time: 01/15

EXHIBIT _____14_____

PAGE _____322_____

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial – a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)     Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __jh_____
Time: 01/15

5

EXHIBIT _____ /4

PAGE _____ 323

# EXHIBIT 15

# CONFIDENTIAL
# THIS EXHIBIT FILED UNDER SEAL PURSUANT TO
# PROTECTIVE ORDER OF 1- 4 -2005