Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 1 of 87 Page ID
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 1 of 87
#:46906

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2   (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13      Plaintiff, | Consolidated with<br>Case No. CV 04-09039 |
| 14      vs. | Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware<br>corporation, | DECLARATION OF BERNARD B.<br>SMYTH IN SUPPORT OF MATTEL,<br>INC.'S MOTION OBJECTING TO |
| 16      Defendant. | PORTIONS OF DISCOVERY<br>MASTER'S (1) FEBRUARY 15, 2008 |
| 17  | ORDER REGARDING MATTEL'S<br>MOTION TO COMPEL RESPONSES |
| 18  | TO INTERROGATORIES BY THE<br>MGA PARTIES; AND (2) |
| 19  | FEBRUARY 20, 2008 ORDER<br>REGARDING MATTEL'S MOTION |
| 20  | TO COMPEL RESPONSES TO<br>INTERROGATORIES BY CARTER |
| 21  | BRYANT |
| 22  | Hearing Date:    March 31, 2008 |
| 23  | Time:            10:00 a.m.<br>Place:           Courtroom 1 |
| 24  |  |
| 25  | **Phase 1**<br>Discovery Cut-off:    January 28, 2008 |
| 26  | Pre-trial Conference:  April 21, 2008<br>Trial Date:           May 27, 2008 |

27

28

07209/2444255.1

SMYTH DECLARATION

# DECLARATION OF BERNARD B. SMYTH

I, Bernard B. Smyth, declare as follows:

1.     I am a member of the bars of the State of California and an associate at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the public redacted version of Mattel's Motion to Disqualify MGA's Counsel Skadden Arps and Expert Christina Tomiyama, dated March 18, 2008.

3.     Attached hereto as Exhibit 2 is a true and correct copy of Mattel's Motion for an Order Enforcing Court's January 25, 2007 Order Compelling Bryant to Produce Computer Hard Drives and for Sanctions, dated January 28, 2008.

4.     Attached hereto as Exhibit 3 is a true and correct copy of Mattel's Motion to Compel Deposition of Littler Mendleson, P.C. Pursuant to Subpoena, dated December 13, 2007.

5.     Attached hereto as Exhibit 4 is a true and correct copy of the Court's Order Granting Mattel's Motion Objecting to Portions of Discovery Master's December 31, 2007 Order Regarding Hard Drives, dated February 27, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 24, 2008, at Los Angeles, California.

_____
Bernard B. Smyth

07209/2444255.1

- 1 -

SMYTH DECLARATION

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 3 of 27 Page ID
#:46908
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 3 of 87

**EXHIBIT 1**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12 CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                         Consolidated with
13              Plaintiff,               Case No. CV 04-09059
                                         Case No. CV 05-02727
14       vs.
                                         The Honorable Stephen G. Larson
15 MATTEL, INC., a Delaware
   corporation,                          NOTICE OF MOTION AND
16                                       MOTION OF MATTEL, INC. TO
                Defendant.               DISQUALIFY MGA
17                                       ENTERTAINMENT, INC.'S
                                         COUNSEL SKADDEN ARPS AND
18 AND CONSOLIDATED ACTIONS              EXPERT CHRISTINA
                                         TOMIYAMA; AND
19
                                         MEMORANDUM OF POINTS AND
20     **PUBLIC REDACTED**               AUTHORITIES IN SUPPORT
                                         THEREOF
21
                                         [Declarations of Michael T. Zeller,
22                                       Dylan Proctor and Michael Moore filed
                                         concurrently herewith]
23
                                         Hearing Date:  April 14, 2008
24                                       Time:          10:00 a.m.
                                         Place:         Courtroom 1
25
                                         **Phase 1:**
26                                       Discovery Cut-Off:    January 28, 2008
                                         Pre-Trial Conference: May 5, 2008
27                                       Trial Date:           May 27, 2008

28                                       EXHIBIT  1

07209/2435140.11                         PAGE  2

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 14, 2008, at 10:00 a.m., or as soon as the matter may be heard, Mattel, Inc. ("Mattel") will, and hereby does, move the Court for an Order granting the following relief:

(1) disqualifying Christina Tomiyama from acting or testifying as an expert for defendants MGA Entertainment, Inc., MGA Entertainment (HK) Limited MGAE de Mexico S.R.L. de C.V. and Isaac Larian ("the MGA defendants") or Carter Bryant in this matter and providing that no defendant may designate a new expert to replace her;

(2) disqualifying the law firm of Skadden Arps Slate Meagher & Flom, LLP, MGA in-house counsel Craig Holden, and all other in-house or outside counsel of MGA with whom Tomiyama has communicated, from acting as counsel for the MGA defendants or any other party in this matter;

(3) for an injunction barring Tomiyama, the MGA defendants, their counsel and those persons subject to their authority or control, or acting in concert with them, from using, disclosing or otherwise disseminating Mattel's privileged communications or work product;

(4) for an injunction ordering Tomiyama, the MGA defendants, their counsel, and any persons subject to their authority or control, or acting in concert with them, to (i) return all of Mattel's privileged and work-product materials; (ii) deliver up and/or destroy any documents reflecting Mattel's privileged communications and work product or conversations with Tomiyama; and (iii) identify all persons who have interacted with Tomiyama or reviewed her report or any other Mattel privileged communications or work product;

(5) for an order precluding the MGA defendants from offering any fact or expert testimony as to any topic addressed by Tomiyama's expert report;

EXHIBIT _1_

PAGE _3_

07209/2435140.11

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

Case 2:04-cv-09049-DOC-RNB Document 2865-2 Filed 03/28/08 Page 6 of 87 Page ID
#:46911
Case 2:04-cv-09049-SGL-RNB Document 2707 Filed 03/18/2008 Page 3 of 31

1          (6) for an award of the attorneys fees and costs Mattel incurred

2    preparing for and taking Tomiyama's deposition and preparing this Motion.

3          This Motion is made on the grounds that (1) Ms. Tomiyama, a former Mattel

4    employee who worked closely with Mattel's counsel on litigation matters, including

5    Mattel's present litigation with Bryant and MGA, has been designated as an expert

6    for the MGA defendants and Bryant and has disclosed privileged communications,

7    work product and confidential information belonging to Mattel that relates directly

8    to this and other Mattel litigation, in violation of ongoing duties Tomiyama owes to

9    Mattel to maintain in confidence all privileged and work product information she

10   obtained while employed by Mattel; and (2) the Skadden Arps law firm and MGA's

11   in-house counsel violated their ethical obligations and impaired the integrity of these

12   proceedings by obtaining, disclosing and using Mattel's privileged communications

13   and work product information, while inducing Tomiyama to violate her duties to

14   Mattel.

15         This Motion is based on this Notice of Motion and Motion, the accompanying

16   Memorandum of Points and Authorities, the Declarations of Michael T. Zeller,

17   Dylan Proctor and Michael Moore, all filed concurrently herewith, the records and

18   files of this matter, and all other matters of which the Court may take judicial notice.

19         **Certification of Local Rule 7-3 Compliance**

20         This motion is made following the conference of counsel pursuant to Local

21   Rule 7-3 which took place on March 4 and 11, 2008.

22

23   DATED: March 18, 2008          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
24

25                                 By_____
                                      John B. Quinn
26                                    Attorneys for Mattel, Inc.

27

28                                          EXHIBIT ___1___

07209/2435140.11                    -ii-    PAGE ___4___

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

1

# **TABLE OF CONTENTS**

2                                                                          **Page**

3

4  MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

5  PRELIMINARY STATEMENT ...................................................................... 1

6  STATEMENT OF FACTS ............................................................................ 3

7  ARGUMENT ............................................................................................ 13

8  I.    THE COURT SHOULD DISQUALIFY TOMIYAMA ................................. 13

9        A.   Mattel Had A Confidential Relationship With Tomiyama ................. 14

10       B.   Tomiyama Received And Disclosed Mattel's Privileged And
             Confidential Information Related To This Litigation ......................... 14

11
         C.   The Interests Of Fairness And The Integrity Of The Judicial
12            Process Warrant Disqualification Of Tomiyama ............................. 15

13 II.   SKADDEN ARPS AND MGA IN-HOUSE COUNSEL CRAIG
         HOLDEN MUST BE DISQUALIFIED ...................................................... 16
14
         A.   This Court Has Inherent Authority to Disqualify Counsel Whose
15            Conduct Compromises the Integrity of the Adversarial Process .......... 16

16       B.   Improperly Obtaining and Using An Adversary's Privileged
             Information, as Skadden Did, Warrants Disqualification ................... 17
17
         C.   Skadden's Conduct Requires Disqualification ............................... 18
18
              1.   Skadden Obtained and Used Mattel Privileged Information
19                 to Gain an Advantage in this Litigation .............................. 18

20            2.   Skadden Concealed Tomiyama's Disclosures and
                   Interfered with Mattel's Ability to Seek a Protective Order
21                 By Counseling Her to Breach Her Contract with Mattel .......... 20

22            3.   Courts Have Found Similar Misconduct Warrants
                   Disqualification ........................................................... 22
23
              4.   Disqualification Is The Appropriate Remedy ....................... 24
24
   CONCLUSION ....................................................................................... 25

25

26

27                                              EXHIBIT __1__

28                                              PAGE __5__

07209/2435140.11

-i-

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

Case 2:04-cv-09049-DOC-RNB Document 2865-6 Filed 03/28/08 Page 8 of 87 Page ID #:46913
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 8 of 87
Case 2:04-cv-09049-SGL-RNB Document 2707 Filed 03/18/2008 Page 5 of 31

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4
American Empire Surplus Lines Ins. Co. v. Care Centers, Inc.,
5
   484 F. Supp. 2d 855 (N.D. Ill. 2007) ................................................................. 13

6
In re AFI Holding, Inc.,
   355 B.R. 139, 153 n.15 (B.A.P. 9th Cir., 2006) ................................................. 18

7
Cargill Inc. v. Budine,
8
   2007 WL. 1813762 (E.D. Cal. June 22, 2007) ................................................... 18

9
Chugach Elec. Assn. v. United States District Court,
10
   370 F.2d 441 (9th Cir. 1966) .............................................................................. 18

11
County of Los Angeles v. Superior Court,
   222 Cal. App. 3d 647, 271 Cal. Rptr. 698 (1990) .............................................. 23

12
Emle Industries, Inc. v. Patentex, Inc.,
13
   478 F.2d 562 (2nd Cir. 1973) ............................................................................. 18

14
Erickson v. Newmar Corp.,
15
   87 F.3d 298 (9th Cir. 1996) ................................................................. 16, 18, 21

16
Koch Refining Co. v. Jennifer L. Boudreaux M/V,
   85 F.3d 1178 (5th Cir. 1996) ........................................................................ 13, 14

17
MMR/Wallace Power & Indus., Inc. v. Thames Assoc.,
18
   764 F. Supp. 712 (D. Conn. 1991) ...................................................... 17, 18, 23, 24

19
Papanicolaou v. Chase Manhattan Bank, N.A.,
20
   720 F. Supp. 1080 (S.D.N.Y. 1989) ................................................................... 17

21
Richards v. Jain,
   168 F. Supp. 2d 1195 (W.D. Wash. 2001) ................................................. passim

22
Richardson v. Hamilton Int'l Corp.,
23
   469 F.2d 1382 (3rd Cir. 1972) ........................................................................... 18

24
Rico v. Mitsubishi Motors Co.,
25
   42 Cal. 4th 807 (2007) .......................................................................... 17, 19, 21

26
Shadow Traffic Network v. Superior Court,
   24 Cal. App. 4th 1067, 29 Cal. Rptr. 2d 693 (1994) .......................................... 23

27
Space Systems/Loral v. Martin Marietta Corp.,
28
   1995 WL. 686369 (N.D. Cal. 1995) ................................................................... 15

EXHIBIT ___
PAGE ___

07209/2435140.11

-ii-

State Comp. Ins. Fund v. WPS, Inc.,
   70 Cal. App. 4th 644 (1999) .................................................................. 17

Wang Labs., Inc. v. Toshiba Corp.,
   762 F. Supp. 1246 (E.D. Va. 1991) ................................................. 13, 15

Williams v. Trans World Airlines, Inc.,
   588 F. Supp. 1037 (W.D. Mo. 1984) .......................................... 18, 24, 25

**Statutes**

Local Rule 83-3.1.2 ................................................................................... 17

EXHIBIT ___1___

PAGE ___7___

07209/2435140.11

-iii-

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Preliminary Statement**

1   Skadden Arps appears to have knowingly violated its ethical duties in order to

2   obtain a tactical advantage in this case.  Its conduct warrants disqualification.

3   Christina Tomiyama was a Mattel manager until 2006 and a Mattel consultant

4   through April 2007.  On dozens of occasions, she worked with Mattel's in-house

5   and outside counsel (Quinn Emanuel) on this case and others to assist in providing

6   legal advice to Mattel.  Mattel's lawyers told her their theories and strategies

7   concerning Mattel's claims against Bryant, MGA's claims against Mattel, and other

8   relevant matters.  Tomiyama provided specifics regarding those theories, gave

9   direction on additional investigation into them, analyzed dolls for litigation purposes

10  and reported her findings to Mattel's counsel.  She performed these tasks at the

11  direction of Mattel's lawyers, and became privy to counsel's protected opinion work

12  product so she could assist counsel in advising Mattel.

13  She has now passed to MGA some or all of the protected information to

14  which she was exposed at Mattel.  Either while she was a paid Mattel consultant or

15  shortly thereafter (MGA refuses to say which), and unbeknownst to Mattel,

16  Tomiyama was contacted by MGA lawyers and started cooperating with them.

17  When Skadden was brought in, Tomiyama's mere cooperation was apparently not

18  enough—it formally retained her as an expert witness.  Last month Skadden served

19  an expert report by Tomiyama that discloses privileged Mattel information and

20  actually attaches a privileged Mattel document.  Tomiyama admits she is relying on

21  Mattel's privileged information for her expert opinions in this case and testified that

22  Skadden ███████████ the topics she covered in her report, including the section

23  called ██████████████████████████████████ that describes work

24  product analysis she did for Mattel's Law Department.  At no time did Skadden ever

25  tell Tomiyama not to disclose Mattel's privileged information or take any

EXHIBIT __1__

PAGE __8__

07209/2435140.11

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

1  precautions to avoid obtaining it.  Instead, it encouraged her to affirmatively use it

2  against Mattel.

3       Skadden also induced Tomiyama to breach her contractual obligations to

4  Mattel, apparently to conceal its undisclosed contacts with her.  Under her

5  Separation Agreement with Mattel, Tomiyama was required to notify Mattel before

6  providing services to a Mattel competitor.  According to Tomiyama, she did not do

7  so because Skadden asked her ████████████ it.  In fact, after a senior Skadden

8  partner reviewed her agreement, Skadden advised her that she need not disclose her

9  contacts with Skadden.  Tomiyama understood that she need not disclose because

10 she purportedly would not be providing services to a ███████ she would be

11 ███████████████ not MGA.  Regardless of that spurious distinction,

12 Tomiyama's agreement separately required her to notify Mattel when MGA's

13 lawyers sought information from her (whether she was working for "Skadden" or

14 "MGA").  Tomiyama admittedly breached her obligations to Mattel at Skadden's

15 urging, preventing Mattel from learning Skadden was working with Tomiyama—

16 and compromising protected Mattel information—until it received her expert report

17 last month.

18      Tomiyama must be disqualified.  An expert is not permitted to disclose or use

19 information obtained in confidence during employment with one party—especially

20 privileged information—against that party.  Here, Tomiyama admits her expert

21 opinions rely on privileged Mattel information.  She cannot be an expert against

22 Mattel.

23      Likewise, Skadden (and any MGA in-house counsel with whom Tomiyama

24 has been in contact, including Craig Holden) must be disqualified.  Skadden's

25 lawyers knew Tomiyama had privileged information, and they obtained it.

26 Appellate courts have instructed what an attorney must do if he comes into

27 possession—even inadvertently—of an opponent's protected communications and

28 work product.  Stop looking at it; notify the other side; and return it.  Skadden did

EXHIBIT ___
PAGE ___

07209/2435140.11

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

1 exactly the opposite, affirmatively counseling its expert to use it. Moreover, rather
2 than ensure compliance with her contractual and fiduciary obligations to Mattel,
3 Skadden's lawyers advised Tomiyama not to reveal to Mattel their cooperation
4 when she sought their advice. Any reasonable lawyer would have heard the alarm
5 bells ringing and seen the red flags waving long ago. And yet even now, Skadden
6 refuses to withdraw Tomiyama or return Mattel's protected information. Skadden's
7 violations of its ethical obligations have been repeated, and appear to have been
8 deliberate and tactical. They require disqualification.

9                                   **Statement of Facts**

10        Tomiyama's Mattel Employment.    In October 1991, Christina Tomiyama
11 began working as a face painter in Mattel's Face Design Group.[1]  She worked there
12 until November 1995, when she moved to Mattel's BARBIE Collectibles Group.[2]
13 In April 2003, Tomiyama returned to manage the Face Design Group where she
14 oversaw face painting for Mattel's BARBIE and MY SCENE doll lines.[3]  MGA
15 alleges in this action that the MY SCENE dolls, and their face paint in particular,
16 infringe MGA's trade dress and other purported rights in Bratz.[4]  On February 4,
17 2006, Mattel laid off Ms. Tomiyama, and Tomiyama entered into a Separation
18
19
20
21   [1]  Expert Report of Christina Tomiyama ("Tomiyama Report") at 1, attached as exhibit
     8 to the Declaration of Michael T. Zeller ("Zeller Dec"). In order to avoid any potential
22   waiver argument by MGA or its counsel, Mattel has submitted declarations of counsel
     sufficient only to prove the existence of attorney-client privilege and work product
23   protection. Should the Court direct it, Mattel will provide for *in camera* review further
     information and details regarding any of the matters discussed herein, including the
24   particulars of Mattel's privileged and work product communications with Ms. Tomiyama.
         [2]  Id. at 1-2.
25       [3]  Transcript of Deposition of Christina Tomiyama, February 27, 2008 ("Tomiyama
     Tr.") at 196:20-22, Zeller Dec. Ex. 1; Tomiyama Report at 2.
26       [4]  MGA's Complaint for False Designation of Origin, Affiliation, Association or
27   Sponsorship, Unfair Competition, Dilution, and Unjust Enrichment, dated April 13, 2005,
     ¶¶ 36-66, Zeller Dec. Ex. 7.
28                                                                     EXHIBIT ___/___

07209/2435140.11

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 13 of 87 Page ID
#:46918
Case 2:04-cv-09049-SGL-RNB Document 2707 Filed 03/18/2008 Page 13 of 31
Case 2:04-cv-09049-SGL-RNB Document 2707 Filed 03/18/2008 Page 10 of 31

1  Agreement and General Release ("Separation Agreement").[5] Under that agreement,

2  Mattel paid Tomiyama to provide consulting services to Mattel through April 2007.[6]

3       Tomiyama's Work With Mattel's Legal Department, Including In Connection

4  With This Case.  When Tomiyama was a Mattel employee, members of Mattel's

5  Law Department and its outside litigation counsel often called on her to assist in

6  litigation matters.[7]  She had numerous direct communications with Mattel's in-

7  house lawyers and paralegals, including Michael Moore and Adelle Jones, and its

8  outside counsel, including Michael Zeller of Quinn Emanuel, about the prosecution

9  and defense of pending and potential litigation.[8]

10       As Tomiyama's expert report confirms, ███████████████

11  ████████████████████████████████████████████

12  ████████████████████████████████████████████

13  ████████████████████[9]  Tomiyama admits in her report that she engaged in

14  such consultations approximately a dozen times a year.[10]  While seeking her input,

15  Mattel's counsel often disclosed to Tomiyama their opinions and work product.[11]

16       Tomiyama worked with Mattel's lawyers directly in connection with this

17  action.[12]  A central claim in MGA's complaint against Mattel is that the face

18  painting for Mattel's MY SCENE doll line changed over time to look more like

19  Bratz dolls.[13]  At the time these alleged changes occurred, Tomiyama managed the

20

21

22     [5] Zeller Dec. Ex. 3, ¶ 4.

   [6] Id.

23     [7] Declaration of Michael Moore ("Moore Dec.") ¶ 4; see, e.g., Tomiyama Tr. at

261:25-263:4; 268:3-270:4.

24     [8] Tomiyama Tr. at 247:13-248:17; Moore Dec. ¶¶ 5-10.

25     [9] Tomiyama Report at 2.

   [10] Tomiyama Report at 9 (describing how she assisted Mattel's legal department in this

26  kind of analysis ██████████ ).

   [11] Moore Dec. ¶ 5-10; Zeller Dec. ¶ 12.

27     [12] Moore Dec. ¶¶ 5-7; Zeller Dec ¶ 12; see also Tomiyama Tr. at 260:20-261:6.

28     [13] Zeller Dec. Ex 7.

EXHIBIT ___/___

PAGE ___//___

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

07209/2435140.11

1  Mattel group responsible for face painting the MY SCENE dolls.[14]  As a Mattel

2  employee, Tomiyama met with Mattel's counsel regarding MGA's complaint, and

3  in these meetings, Mattel's counsel shared with Tomiyama their thoughts and

4  impressions about MGA's suit.[15]  Tomiyama's expert report acknowledges she ███

5  ████████████████████████████████████████████████  while employed

6  by Mattel.[16]  Mattel's counsel discussed MGA's allegations with Tomiyama, and

7  disclosed to her work product in the form of mental impressions and thoughts with

8  respect to those claims.[17]

9      Mattel's lawyers also consulted Tomiyama in connection with Mattel's claims

10  against Bryant and its investigation into such claims.  Mattel's counsel discussed

11  these claims with Tomiyama while she was employed by Mattel, again disclosing

12  counsel's theories regarding this action.[18]  Working with Mattel's law Department,

13  Ms. Tomiyama gave direction on additional investigation into those theories as

14  well.[19]

15      Tomiyama was frequently directed by Mattel's Law Department to make

16  comparisons of Mattel's MY SCENE dolls to dolls of competitors in connection

17  with other pending and potential litigation.[20]  One such case was the Simba matter,

18  which MGA has asserted is directly relevant to this action.[21]  In Simba, Mattel sued

19  another doll manufacturer for infringing its rights in MY SCENE and BARBIE

20  dolls.   At the direction of Mattel's Law Department, Tomiyama prepared a

21  document to be used by counsel in evaluating Mattel's intellectual property rights

22

23

24  [14] Tomiyama Tr. at 196:20-22.
   [15] Moore Dec. ¶¶ 6, 7; see also Tomiyama Tr. 262:4-263:4.
25  [16] Tomiyama Report at 3.
   [17] Tomiyama Tr. at 252:17-22, 253:12-254:3, 254:23-255:2; Moore Decl ¶ 6.
26  [18] Moore Dec. ¶ 5; Zeller Dec. ¶ 12.
27  [19] Moore Dec. ¶ 5.
   [20] Tomiyama Tr. at 251:2-25.
28  [21] See infra at page 11 & n.57.

07209/2435140.11

EXHIBIT __1__
PAGE __12__

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

1   and what dolls would and would not infringe Mattel's rights.[22]  This document is

2   privileged and work product; Mattel maintained it in confidence and did not disclose

3   it to any third party.[23]  Despite her written representations that she had returned all

4   confidential Mattel documents to Mattel when she left Mattel, as discussed below,

5   Tomiyama kept a copy of it, provided it to Skadden Arps and attached it to her

6   expert report in this case.[24]

7        Tomiyama's Agreements to Preserve Mattel's Confidential Information.

8   Tomiyama signed two agreements with Mattel documenting the duty of

9   confidentiality she owed and continues to owe to Mattel.  In 1991, when Tomiyama

10  became a full-time Mattel employee, she signed an Employee Patent and

11  Confidence Agreement.[25]  Tomiyama acknowledged that she would be exposed to

12  confidential and proprietary information belonging to Mattel and that public

13  disclosure of such information would damage it.[26]  She agreed to keep Mattel's non-

14  public information in strict confidence, both while employed by Mattel and

15  thereafter.[27]

16       When Tomiyama left Mattel in 2006, she signed a Separation Agreement.[28]

17  She agreed, among other things, to continue to work for Mattel in the role of a

18  consultant through April 2007.[29]  Tomiyama agreed to preserve Mattel's

19  confidential information,[30] to cooperate and assist Mattel in any legal claims or

20  investigations involving the company,[31] and to notify Mattel if she was contacted by

21

22  [22] Tomiyama Tr. at 234:16-235:9; 239:6-21; Tomiyama Report at 2.
    [23] Moore Dec. ¶ 9; Zeller Dec. ¶ 13.
23  [24] Separation Agreement, Zeller Dec. Ex. 3 at Section 3(c); Tomiyama Tr. at 238:5-
    239:23.
24  [25] Employee Patent and Confidence Agreement, Zeller Dec. Ex. 2.
25  [26] Id., Section 5; Separation Agreement, Zeller Dec. Ex. 3 Section 3(e).
    [27] Employee Patent and Confidence Agreement, Zeller Dec. Ex. 2, Section 5.
26  [28] Separation Agreement, Zeller Dec. Ex. 3.
    [29] Id.
27  [30] Id., Section 3(e); see also id., Section 3(c) at p. 4.
28  [31] Id., Section 3(j).

EXHIBIT _1_

PAGE _13_

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

07209/2435140.11

1 | an attorney relating to any claims against Mattel.[32] These obligations did not
2 | terminate when the consulting period ended.[33] Tomiyama also agreed to give
3 | written notice to Mattel prior to providing services for a Mattel competitor—a
4 | provision that also remains in effect.[34]

5 |    <u>MGA Retains Tomiyama As An Expert.</u>  Tomiyama testified that MGA's
6 | prior lawyers, O'Melveny & Myers, first contacted her sometime in 2007.[35] At
7 | some point in 2007, Ms. Tomiyama also met in-person with O'Melveny lawyers and
8 | others, including MGA's in-house counsel, Craig Holden.[36] At that meeting she was
9 | given MGA's complaint against Mattel and asked for information about Mattel's
10 | litigation with MGA and Carter Bryant.[37] Tomiyama was, of course, already aware
11 | of the lawsuits. She had discussed them with Mattel's counsel while at Mattel and
12 | had previously assisted Mattel's counsel in connection with them.[38]

13 |    Skadden later contacted Tomiyama to retain her as an expert.[39] In early
14 | November 2007, Tomiyama signed an expert retention agreement.[40] Under
15 | Skadden's direction, Tomiyama prepared an expert report dated February 8, 2008.[41]
16 | On February 17, 2008, Mattel served a subpoena on Tomiyama requesting
17 | documents related to Bryant and MGA, her employment at Mattel, and her status as
18 | an expert.[42] On February 26, 2008, Ms. Tomiyama produced responsive documents
19 | to some of Mattel's requests while refusing as to others.[43] Mattel deposed her the

---

[32] <u>Id.</u>
[33] <u>Id.</u>, Sections 3(e) and 3(j).
[34] <u>Id.</u>, Section 3(l).
[35] Tomiyama Tr. at 131:5-15.
[36] <u>Id.</u> at 132:17-133:12.
[37] <u>Id.</u> at 134:14-19; 258:8-14.
[38] <u>Id.</u> at 252:17-253:14; Moore Dec. ¶¶ 5, 6.
[39] Tomiyama Tr. at 127:2-10; Tomiyama Report at 3.
[40] Tomiyama Report at 3.
[41] <u>See</u> Zeller Dec. Ex. 8.
[42] <u>See</u> Subpoena to Christina Tomiyama, dated February 15, 2008, Zeller Dec. Ex. 9.
[43] <u>See</u> Objections of Non-Party Christina Tomiyama to Mattel's Subpoena for the Production of Documents, dated February 26, 2008, Zeller Decl., Ex. 10.

EXHIBIT ___1___

PAGE ___14___

1 | next day.[44]

2 |     <u>Skadden Counsels Tomiyama To Breach Her Agreements With Mattel.</u>

3 | When Skadden retained her, Tomiyama ███████████████████████████████████████████

4 | ███████████████ and told Skadden that she was concerned that acting as an expert for

5 | MGA would conflict with her obligations to Mattel.[45] Tomiyama gave a copy of her

6 | Separation Agreement to Kenneth Plevan, a senior Skadden partner, and asked him,

7 | in light of her promises to Mattel, ████████████████████████████████████████████

8 | ███████████████████████████████[46] According to Tomiyama, ████████████████████

9 | ████████████████████████████████████████████████████████████████████████████[47]

10 | Mr. Plevan advised Tomiyama that her Separation Agreement did not pose a

11 | problem with Tomiyama's acting as an MGA expert.[48]

12 |     At deposition, Ms. Tomiyama admitted that she violated the Separation

13 | Agreement. For instance, Tomiyama acknowledged that the Separation Agreement

14 | required her to notify Mattel after MGA's lawyers sought information from her and

15 | that she did not do so, ████████████████ of the requirement.[49] Tomiyama also violated

16 | her promise to inform Mattel before providing services to a Mattel competitor,

17 | explaining that she did not notify Mattel because Skadden asked her ██████████████

18 | ████████[50] Tomiyama testified that Skadden advised her that she did not need to

19 |

20 |

21 | [44] <u>See</u> Zeller Dec. Ex. 1.
[45] Tomiyama Tr. at 361:21-362:21.

22 | [46] <u>Id.</u> at 361:8-14.
[47] <u>Id.</u> at 362:19-21.

23 | [48] <u>Id.</u> at 349:25-350:2.

24 | [49] <u>Id.</u> at 353:25-354:21.
[50] <u>Id.</u> at 351:8-352:2.

25 | ████████████████████████████████████████████████████████

26 | ████████████████████████████████████████████████████████████

27 | ██████████████████████████████████████████████████████████████

28 | █████████████████████████████████████████████████

EXHIBIT ___1___

PAGE ___15___

07209/2435140.11

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

1   provide such notice, notwithstanding her clear obligation to do so.[51]  Tomiyama

2   claimed this obligation did not attach because she was ███████████████████

3   not MGA.[52]  In fact, Skadden and Tomiyama discussed this specific issue:

4   ████████████████████████████████████████

5   █████████████████████████████████████████████

6   █████████████████████████████████████████████

7   █████████████████████████████████

8   ████████████

9   ██

10   ████████████████████████████████████████

11   ████████████████████████████████

12   █████████████████[53]

13        <u>Tomiyama's Disclosures of Attorney-Client Privileged Communications and</u>

14   <u>Work Product</u>.  Tomiyama also disclosed privileged Mattel communications to

15   Skadden.  Indeed, Tomiyama is expressly relying on privileged communications

16   with Mattel's lawyers and Mattel's attorney work product to provide her opinions.

17   Her expert report sets forth steps she took—at the direction of Mattel's counsel—to

18   assist in determining whether competing products infringed Mattel products,

19   including the MY SCENE line, for purposes of actual and potential litigation.[54]  In

20   discussing the section of her report titled ████████████████████████

21   ██████ Tomiyama testified:

22   ███████████████████████████████████████████

23   ███████████████████████████████

24

25   [51] <u>Id.</u> at 356:18-23; 357:9-12.

26   [52] <u>Id.</u> at 355:5-357:12.
     [53] <u>Id.</u> at 356:18-23; 357:9-12.  Tomiyama also disclosed her agreement with Mattel to

27   Skadden, despite the fact that she understood that she was under an obligation to Mattel to
     keep the agreement itself confidential. <u>Id.</u> at 358:5-9.

28   [54] Tomiyama Report at 9.

EXHIBIT __1__

PAGE __16__

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

07209/2435140.11



17      Tomiyama's report included a discussion of her work for the Mattel Law

18 Department in the <u>Simba</u> matter, which also concerned Mattel's MY SCENE line of

19 dolls and allegations of infringement.[56] In <u>Simba,</u> Mattel obtained damages and

20 injunctive relief against a manufacturer of dolls that infringed Mattel's intellectual

21 property rights in its MY SCENE dolls. MGA has consistently argued that the

22 <u>Simba</u> litigation is directly relevant to this action because "it involved claims and

23 facts similar to those at issue in this case."[57] Mattel's Law Department asked

EXHIBIT  /

PAGE   /7

---

[55]   Tomiyama Tr. at 268:3-270:4.

[56]   <u>Id.</u> at 246:3-7; 250:15-251:1; Tomiyama Report at 9.

[57]   January 4, 2008 letter from R. Herrington to J. Corey, Zeller Decl., Ex. 4. <u>See also</u> MGA's Fifth Set of Requests for Production, No. 472, Zeller Decl., Ex. 5 (MGA request seeking "ALL DOCUMENTS REFERRING OR RELATING TO any SIMBA (footnote continued)

-10-

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

1  Tomiyama to prepare a document for Mattel's counsel for the purpose of providing

2  legal advice for the <u>Simba</u> litigation.[58]  That document is privileged and work

3  product.[59]  Violating her representations to Mattel, Tomiyama kept a copy of it when

4  she left.[60]  She then provided it to Skadden and attached a copy of it as Exhibit A to

5  her expert report.[61]  Her testimony confirms that the exhibit is a privileged Mattel

6  attorney-client communication and work product document prepared at the direction

7  of Mattel's lawyers for the <u>Simba</u> matter.[62]  Nevertheless, Tomiyama testified that

8  she is ████████████████████████████[63]

9       Tomiyama acknowledges that she discussed with Skadden all the matters

10  related in her expert report, including the work she performed at the direction of

11  Mattel's Law Department to assist Mattel's lawyers in litigation matters.[64]  In fact,

12  according to Tomiyama, the areas she covered in her report were ████████ by

13  Skadden.[65]  Skadden did not take any steps to prevent Tomiyama from disclosing

14

15  LITIGATION"); MGA's Eighth Set of Requests for Production, Nos. 781-784, Zeller

16  Decl., Ex. 6 (MGA requests seeking a variety of documents related to <u>Simba</u>).
       [58]  Tomiyama Tr. at 230:19-233:1.

17     [59]  Moore Dec. ¶ 9.
       [60]  Zeller Dec. Exs. 2 (Section 6) & 3 (Section 3(c)); Moore Dec. ¶ 9; Tomiyama Tr.

18  238:5-20. Both the Employee Patent and Confidence Agreement which Tomiyama

19  executed when she joined Mattel in 1991 and the 2006 Separation Agreement required that

20  Tomiyama return to Mattel all files, documents and written information relating to
    Mattel's business at the termination of her employment with the company.

21     [61]  Tomiyama Tr. at 238:5-239:23.
       [62]  <u>Id.</u> at 234:7-235:13; 238:5-21.

22     [63]  <u>Id.</u> at 238:21-23.

23     [64]  <u>Id.</u> at 224:8-12; 246:3-7.

24

25

26

27

28     [65]  <u>Id.</u> at 328:23-329:13.



EXHIBIT ___1___

PAGE ___18___

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

Mattel's privileged information she had acquired while assisting on litigation matters:



At her deposition, Tomiyama blurted out privileged Mattel communications in response to questions that did not call for such information, confirming that she has no understanding of what Mattel communications she should be protecting.[67]

Skadden's Refusal To Take Any Steps To Correct Its Misconduct. Following Tomiyama's deposition, Mattel's counsel informed Skadden that it had improperly obtained Mattel attorney-client communications and attorney work product. During calls on March 4 and 11, 2008, the parties discussed these issues.[68] Bryant's counsel at least implicitly acknowledged Skadden's wrongdoing when they informed Mattel that they had destroyed all copies of Tomiyama's report and represented that they had never spoken with her.[69]

---

[66] Id. at 221:21-222:11.
[67] E.g., id. at 214:7-217:8.
[68] Declaration of Dylan Proctor ("Proctor Dec.") at ¶ 2.
[69] Id. at ¶ 3.

EXHIBIT __1__

PAGE __19__

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 22 of 87 Page ID
#:46927
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 22 of 31
Case 2:04-cv-09049-SGL-RNB    Document 2707    Filed 03/18/2008    Page 19 of 31

1    Skadden, in contrast, refused to answer any questions about MGA's
2  relationship with Tomiyama, including: (i) who else at MGA, Skadden, or other
3  outside MGA counsel spoke with her; (ii) when MGA first contacted her (*i.e.*,
4  whether it was when she was still a Mattel consultant); and (iii) whether Skadden
5  agreed with Tomiyama's testimony that the firm represents her personally.[70]
6  Trivializing the matter, Skadden offered that the situation was analogous to an
7  inadvertent production of privileged material.[71]  Skadden also refused to withdraw
8  Ms. Tomiyama as an expert or return Mattel's privileged or work product
9  documents.[72]

10                            **Argument**

11  **I.    THE COURT SHOULD DISQUALIFY TOMIYAMA**

12    Federal courts have inherent power to disqualify experts. <u>Koch Refining Co.</u>
13  <u>v. Jennifer L. Boudreaux M/V</u>, 85 F.3d 1178, 1181 (5th Cir. 1996); <u>American</u>
14  <u>Empire Surplus Lines Ins. Co. v. Care Centers, Inc.</u>, 484 F. Supp. 2d 855, 856-857
15  (N.D. Ill. 2007) (court has inherent power to disqualify experts "[t]o protect
16  privileges and ensure confidence in the fairness and integrity of the judicial
17  process").   Disqualification based on a prior relationship with an adversary is
18  warranted when (1) the adversary had a confidential relationship with the expert and
19  (2) the adversary disclosed confidential information to the expert that is relevant to
20  the current litigation.  <u>Wang Labs., Inc. v. Toshiba Corp.</u>, 762 F. Supp. 1246, 1248
21  (E.D. Va. 1991) (disqualifying defendant's expert in patent case where plaintiff's
22  counsel had previously sought to engage expert and had disclosed to him
23  confidential information and work product).

24

25

26
_____
27  [70] <u>Id.</u> at ¶ 4; <u>see</u> Tomiyama Tr. at 349:18-22.
   [71] <u>Id.</u> at ¶ 5.
28  [72] <u>Id.</u>

EXHIBIT    /
PAGE    20

Case 2:04-cv-09049-DOC-RNB   Document 2865-3   Filed 03/28/08   Page 23 of 87   Page ID
#:46928
Case 2:04-cv-09049-SGL-RNB   Document 2707   Filed 03/18/2008   Page 23 of 87
Case 2:04-cv-09049-SGL-RNB   Document 2707   Filed 03/18/2008   Page 20 of 31

A.   **Mattel Had A Confidential Relationship With Tomiyama**

A party has a confidential relationship with an expert if it is "objectively reasonable" for the party to believe that such a relationship exists. <u>Koch</u>, 85 F.3d at 1181. The 1991 and 2006 agreements prove the confidential relationship between Mattel and Tomiyama. In both agreements Tomiyama expressly agreed to preserve inviolate Mattel's confidential and proprietary information.[73] She agreed that this obligation would ▮▮▮▮▮▮▮▮[74]

B.   **Tomiyama Received And Disclosed Mattel's Privileged And Confidential Information Related To This Litigation**

Tomiyama acted as an in-house consultant for Mattel's lawyers and received confidential and privileged Mattel information relevant to this case. She specifically discussed with Mattel's counsel their theories and mental impressions regarding Mattel's claims against Bryant and assisted Mattel's Law Department in investigating those theories.[75] She also discussed with Mattel's counsel their theories about MGA's suit against Mattel.[76] She admits that she ▮▮▮▮▮▮ ▮▮▮▮▮▮ with Mattel's lawyers in matters relating to the infringement of Mattel's intellectual property in doll products during her Mattel employment.[77] This included discussions with Mattel's counsel about Mattel's theories and strategies with respect to the dolls at issue in this case.[78] For example, she further admits she evaluated, for Mattel's counsel, the MY SCENE dolls at issue in this case and competitive products to assist counsel in litigation, including in the <u>Simba</u> matter that MGA itself has urged is relevant to this case.[79] This information is of the type that warrants her disqualification. See <u>Koch</u>, 85 F.3d at 1182 (confidential

---

[73] Zeller Dec. Ex. 2, Section 5; <u>Id.</u> Ex. 3, Section 3(e).
[74] <u>Id.</u> Ex. 3, Section 3(e).
[75] Moore Dec. ¶ 5.
[76] Tomiyama Tr. at 252:17-253:14; Moore Dec. ¶ 6; Zeller Dec. ¶ 10.
[77] Tomiyama Report at 2.
[78] Moore Dec. ¶¶ 7, 10.
[79] Tomiyama Tr. at 251:2-25; 261:4-6; 262:4-263:4.

EXHIBIT  /

PAGE  21

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

07209/2435140.11

Case 2:04-cv-09049-DOC-RNB   Document 2865-3   Filed 03/28/08   Page 24 of 87   Page ID
#:46929
Case 2:04-cv-09049-SGL-RNB   Document 2707   Filed 03/18/2008   Page 21 of 31

1   information may include "discussion of [the moving party's] strategies in the
2   litigation, the kinds of experts [the party] expected to retain, [the party's] views of
3   the strengths and weaknesses of each side, the role of the [party's] witnesses to be
4   hired, and anticipated defenses") (citations omitted).

5        Tomiyama disclosed Mattel's privileged communications and work product
6   to MGA's counsel, disclosed and used them in her report, and even attached them to
7   her report.[80]   Tomiyama admits she relies on Mattel's privileged information and
8   work product in rendering the opinions set forth in her report.[81]   These facts clearly
9   require that she be disqualified from acting as an expert in this case.   See Space
10  Systems/Loral v. Martin Marietta Corp., 1995 WL 686369, *2 (N.D. Cal. 1995)
11  ("There is no doubt that [former employee of adversary] must be disqualified as an
12  expert witness" where he was privy to substantial confidential information from
13  adversary relevant to the issues in the case); Wang Labs, 762 F. Supp. at 1248
14  ("[N]o one would seriously contend that a court should permit a consultant to serve
15  as one party's expert where it is undisputed that the consultant was previously
16  retained as an expert by the adverse party in the same litigation and had received
17  confidential information from the adverse party pursuant to the earlier retention.").

18  **C.**   **Fairness And The Integrity Of The Judicial Process Warrant**
19       **Disqualification Of Tomiyama**

20       In determining whether to disqualify an expert, courts balance competing
21  policy objectives. Space Systems/Loral, 1995 WL 686369 at *2. "Policies favoring
22  disqualification include ensuring fairness and preventing conflicts of interest," while
23  "[p]olicies militating against disqualification include guaranteeing that parties have
24  access to expert witnesses who possess specialized knowledge and allowing experts
25  to pursue their professional callings." Id. Each policy favors disqualification here.

26  _____

27  [80]   Id. at 224:8-12; 232:4-18; 246:3-7; 234:4-235:1; 238:5-239:21; 250:15-18; 268:3-
      270:4.
28  [81]   Id. at 238:5-239:23.

EXHIBIT ___1___

PAGE ___22___

1   Tomiyama's disclosures create an inexcusable conflict of interest. Tomiyama
2   acted at the direction of Mattel's lawyers to provide the company analysis
3   supporting legal advice and to create work product on litigation matters directly
4   bearing on this case. MGA now seeks to use that protected work against Mattel by
5   having Tomiyama offer expert opinions on it. Tomiyama's ongoing obligations to
6   Mattel directly conflict with the work she has performed and would continue to
7   perform for MGA as an expert witness if permitted to play any further role for
8   MGA. Nor will disqualifying Tomiyama hinder the "pursuit of her professional
9   calling." She is not an expert by profession. The policy considerations favor
10  Tomiyama's disqualification.

11  **II.   SKADDEN ARPS AND MGA IN-HOUSE COUNSEL CRAIG HOLDEN**
12         **MUST BE DISQUALIFIED**

13         Skadden Arps, Mr. Holden, and likely others obtained Mattel's privileged
14  information and litigation strategy regarding this case from Tomiyama. Skadden did
15  not comply with its ethical obligations to remedy this disclosure by notifying Mattel.
16  Instead, to prevent Mattel from taking steps to protect its privileged information,
17  Skadden Arps advised Ms. Tomiyama to keep their contacts secret—in direct
18  violation of her contract with Mattel. Skadden's pattern of eliciting from Tomiyama
19  privileged information, advising her to breach her agreement to conceal their
20  misconduct and failing to remedy its ethical breaches once they occurred warrants
21  disqualification.

22         **A.   This Court Has Inherent Authority to Disqualify Counsel Whose**
23              **Conduct Compromises the Integrity of the Adversarial Process**

24         The Court's authority to disqualify an attorney for unethical conduct arises
25  from its inherent power to control the conduct of those who appear before it and to
26  preserve the integrity of the adversarial process. <u>Erickson v. Newmar Corp.</u>, 87
27  F.3d 298, 303 (9th Cir. 1996); <u>Richards v. Jain</u>, 168 F. Supp. 2d 1195 (W.D. Wash.
28  2001) (disqualifying counsel who came into possession of privileged documents and

-16-

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

EXHIBIT ___
PAGE 23

Case 2:04-cv-09049-DOC-RNB Document 28656-3 Filed 02/28/08 Page 26 of 87 Page ID #:46931
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 06/03/2008 26 Page 26 of 87 Page ID

Case 2:04-cv-09049-SGL-RNB    Document 2707    Filed 03/18/2008    Page 23 of 31

1   failed to cease review or notify opposing counsel).  Where the "asserted course of

2   conduct by counsel threatens to affect the integrity of the adversarial process, [the

3   court] should take appropriate measures, including disqualification, to eliminate

4   such taint."  MMR/Wallace Power & Indus., Inc. v. Thames Assoc., 764 F. Supp.

5   712, 718 (D. Conn. 1991) (citing Papanicolaou v. Chase Manhattan Bank, N.A., 720

6   F. Supp. 1080, 1083 (S.D.N.Y. 1989)).

7         **B.    Improperly Obtaining and Using An Adversary's Privileged**

8                **Information, as Skadden Did, Warrants Disqualification**

9         Attorneys practicing before this Court must comply with the ethical

10  obligations imposed upon California attorneys.  Local Rule 83-3.1.2.[82]  Improper

11  access to or use of an adversary's privileged information has long been grounds for

12  disqualification.  As recently as last year, the California Supreme Court confirmed

13  that a lawyer who receives another party's privileged information must refrain from

14  examining the materials any more than is essential to ascertain if the material is

15  privileged and immediately notify the opposing counsel or sender that he possesses

16  the privileged material.  See Rico v. Mitsubishi Motors Co., 42 Cal. 4th 807, 817

17  (2007) (adopting the standard articulated in State Comp. Ins. Fund v. WPS, Inc., 70

18  Cal. App. 4th 644, 656 (1999)).  Disqualification is appropriate when the lawyer

19  fails to do so, and "act[s] unethically in making full use of the confidential

20  document" to place opposing counsel at a disadvantage.  Rico, 42 Cal. 4th at 819.

21        Federal law on this point is no different.  "An attorney who receives

22  privileged documents has an ethical duty upon notice of the privileged nature of the

23

24  [82]  Under Local Rule 83-3.1.2, "each attorney shall be familiar with and comply with
     the standards of professional conduct required of members of the State Bar of California
25   and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of
     California, and the decisions of any court applicable thereto."  The Central District has
26   adopted the "statutes, rules and decisions" of California "as the standards of professional
     conduct, and any breach or violation thereof may be the basis for the imposition of
27   discipline.  The Model Rules of Professional Conduct of the American Bar Association
     may be considered as guidance."  Local Rule 83-3.1.2.
28

EXHIBIT \_\_\_\_
PAGE \_\_\_\_

07209/2435140.11

-17-

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 27 of 87 Page ID #:46932
Case 2:04-cv-09049-SGL-RNB Document 2760 Filed 03/28/2008 Page 27 of 87

Case 2:04-cv-09049-SGL-RNB    Document 2707    Filed 03/18/2008    Page 24 of 31

1  documents to cease review of the documents, notify the privilege holder, and return

2  the documents.  A failure by an attorney to abide by these rules is grounds for

3  disqualification." <u>Richards</u>, 168 F. Supp. 2d at 1200-1201 (citing ABA Comm. on

4  Ethics and Professional Responsibility, Formal Op. 94-382 (1994)).[83]

5        A court may disqualify counsel "not only for acting improperly, but also for

6  failing to avoid the appearance of impropriety." <u>Erickson v. Newmar Corp.</u>, 87 F.3d

7  298, 303 (9th Cir. 1996) (citations and quotations omitted); <u>see also</u> <u>Richardson v.</u>

8  <u>Hamilton Int'l Corp.</u>, 469 F.2d 1382, 1385-86 (3rd Cir. 1972) (remanding for new

9  trial where district court failed to remedy an appearance of impropriety).    In

10  determining whether to disqualify counsel in cases involving violation of privilege,

11  "the Court should resolve any doubts in favor of disqualification." <u>Richards</u>, 168 F.

12  Supp. 2d at 1209.[84]

13        **C.    <u>Skadden's Conduct Requires Disqualification</u>**

14             **1.    <u>Skadden Obtained and Used Mattel Privileged Information</u>**

15                  **<u>to Gain an Advantage in this Litigation</u>**

16        Skadden's conduct fell far short of the standard required of attorneys

17  practicing in this Court.  It was or should have been entirely foreseeable to Skadden

18  that, as a manager on the MY SCENE line through 2006, Tomiyama might have

19  _____

[83]  <u>See</u> <u>Cargill Inc. v. Budine</u>, 2007 WL 1813762 (E.D. Cal. June 22, 2007) (reiterating

20  the inherent power of federal courts to apply the 'appearance of impropriety' standard)

(citing <u>In re AFI Holding, Inc.</u>, 355 B.R. 139, 153 n.15 (B.A.P. 9th Cir., 2006)); <u>Williams</u>

21  <u>v. Trans World Airlines, Inc.</u>, 588 F. Supp. 1037, 1045 (W.D. Mo. 1984) ("[T]he potential

for unfair discovery of information through private consultation rather than through normal

22  discovery procedures threatens the integrity of the trial process."); <u>see also</u> <u>MMR/Wallace</u>,

764 F. Supp. 712, 719 (the mere possibility that privileged information had been released

23  "threaten[ed] to taint the integrity of [the] case" and was sufficient to warrant

24  disqualification).

[84]  <u>See</u> <u>Emle Industries, Inc. v. Patentex, Inc.</u>, 478 F.2d 562, 565 (2nd Cir. 1973)

25  (affirming disqualification of plaintiffs' counsel who obtained confidential information in

the course of representing defendant in an earlier case); <u>Chugach Elec. Assn. v. United</u>

26  <u>States District Court</u>, 370 F.2d 441, 444 (9th Cir. 1966) ("Where conflict of interest or

abuse of professional confidence is asserted, the right of an attorney freely to practice his

27  profession must, in the public interest, give way in cases of doubt.").

28

EXHIBIT ___
PAGE ___ 25

07209/2435140.11

-18-

1  privileged information relating to this case.  Upon contacting her, Skadden should

2  have taken steps to avoid coming into possession of such information.  "With

3  respect to any unrepresented former employee, of course, the potentially-

4  communicating adversary attorney must be careful not to seek to induce the former

5  employee to violate the [attorney-client] privilege."  ABA Comm. on Ethics and

6  Prof. Responsibility, Formal Op. 91-359 (1991); see also Rico, 42 Cal. 4th at 818

7  (counsel has an obligation "to respect the legitimate interests of fellow members of

8  the bar, the judiciary, and the administration of justice," and must not examine or

9  use opposing party's privileged information) (citation omitted).

10       Notwithstanding these requirements, Skadden took no measures to ensure that

11  it did not come into possession of Mattel's privileged information.  It neither told

12  Tomiyama not to disclose privileged Mattel information nor explained to her what

13  types of communications were privileged—something she clearly did not

14  understand.[85]   As a consequence, Tomiyama did disclose Mattel's privileged

15  communications and work product to Skadden during the preparation of her expert

16  report, including the steps she took at the direction of Mattel's counsel to assist them

17  in evaluating infringement claims.[86]  Although the full scope of Skadden's improper

18  acquisition of Mattel's privileged information is unknown to Mattel (in part because

19  Skadden refuses to disclose it), Mattel does know that Tomiyama possesses a wealth

20  of such information and does not know the difference between privileged and non-

21  privileged information.[87]   Confirming that she does not, Tomiyama blurted out

22  privileged communications with Mattel's Law Department in response to questions

23  that did not seek the substance of such communications during her deposition.[88]

---

[85]  Tomiyama Tr. at 221:14-222:11.
[86]  Id. at 224:8-12; 232:14-18; 234:16:-235:13; 238:5-239:21; 246:3-7; 247:19-248:17; 250:15-18; 268:3-270:4.
[87]  Moore Dec. ¶¶4-10; Zeller Dec. ¶¶9, 10; Tomiyama Tr. at 221:14-222:11.
[88]  See, e.g. id. at 214:7-217:8.

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

EXHIBIT 1 PAGE 26
07209/2435140.11

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 29 of 87 Page ID
#:46934
Case 2:04-cv-09049-SGL-RNB     Document 2707     Filed 03/18/2008     Page 26 of 31

1    Rather than refraining from examining Mattel's privileged information and

2    notifying Mattel it possessed it once it was disclosed, Skadden did the opposite: it

3    prompted Tomiyama to affirmatively rely on this information for her opinions.

4    Skadden ███████ that Tomiyama include the work she did at counsel's direction

5    in her report, and she attached a privileged Mattel document to her report.[89]

6        Skadden's refusal to comply with its ethical obligations continues to this day.

7    After Mattel requested a conference of counsel prior to filing this motion, Skadden

8    trivialized its conduct, saying that situation was akin to the inadvertent production of

9    a privileged document in discovery.[90]  Skadden did not destroy Tomiyama's expert

10   report or its other documents containing Mattel's privileged information and refused

11   to withdraw Tomiyama as a designated expert.[91]  By contrast, the Keker firm, after

12   learning what Skadden and Tomiyama had done, destroyed all copies of the report

13   and confirmed that its lawyers had not spoken with Tomiyama.[92]

14        **2.    Skadden Concealed Tomiyama's Disclosures and Interfered**

15             **with Mattel's Ability to Seek a Protective Order By**

16             **Counseling Her to Breach Her Contract with Mattel**

17       Compounding its violations, Skadden counseled Tomiyama to breach her

18   obligations to conceal what she, and they, were doing.  Although she had never been

19   an expert before, even Tomiyama questioned the propriety of serving as an expert

20   for MGA.[93]  She asked Skadden for advice, and gave a senior Skadden partner her

21

22       [89]  Tomiyama Tr. at 328:23-329:13.
         [90]  Proctor Dec. at ¶ 4.  See Richards, 168 F. Supp. 2d at 1208 ("This is not a case of
23   inadvertent disclosure during the normal discovery process that could potentially constitute
     a waiver of privilege.  Defendants did not provide any of the contested documents to
24   Plaintiffs.  [Plaintiff's counsel] received the Disk outside of the discovery process and
     through no fault of Defendants.  In fact, Defendants made every effort to protect their
25   privileged and confidential documents by requiring employees to sign a Non-Disclosure
26   Agreement.").
         [91]  Proctor Dec. at ¶ 3.
27       [92]  Proctor Dec. at ¶ 2.
28       [93]  Tomiyama Tr. at 361:21-362:21.

EXHIBIT ___1___

PAGE ___27___

07209/2435140.11

-20-

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

Case 2:04-cv-09049-DOC-RNB   Document 2865-3   Filed 03/28/08   Page 30 of 87   Page ID #:46935
Case 2:04-cv-09049-SGL-RNB   Document 2760-2   Filed 03/24/2008   Page 30 of 87

Case 2:04-cv-09049-SGL-RNB   Document 2707   Filed 03/18/2008   Page 27 of 31

1   Separation Agreement with Mattel.[94]   Violating its ethical obligations, Skadden

2   encouraged her to stay silent and to violate her obligations to Mattel.[95]   That

3   Tomiyama breached her obligations to Mattel—pursuant to Skadden's advice—is

4   beyond question.   She admitted it.   Tomiyama promised Mattel: ███████████

5   ██████████████████████████████████████████████████████████

6   ████████████████████████████████████[96]   Tomiyama

7   quite clearly violated this requirement, as she acknowledged.[97]

8          Following Skadden's advice, Tomiyama also violated another provision of

9   the Agreement.   Tomiyama agreed that if she ████████████████████████

10  ██████████████████████████████████████████████████████████

11  █████████████████████   she would provide Mattel written notice.[98]

12  According to Tomiyama, she had no obligation to notify Mattel under this provision

13  because Skadden *expressly* had advised her that it █████████████████[99]   Her

14  understanding was that this is because she was not working for MGA—she was

15  ████████████████████[100]   Skadden's complicity presents far more than the

16  requisite "appearance of impropriety;" it warrants disqualification.  See Erickson, 87

17  F.3d at 303; Rico, 42 Cal. 4th at 819.[101]

18

19

20  _____

    [94]  Id. at 361:8-14; 362:19-21.
21  [95]  Id. at 351:8-352:2.
    [96]  Zeller Dec. Ex. 3, Section 3(j).
22  [97]  Tomiyama Tr. at 354:17-21.

23  ████████████████████████████████████████████████████

24  ████████████████████████████████                          EXHIBIT ___1___
    [98]  Zeller Dec. Ex. Section 3(l).
25  [99]  Tomiyama Tr. at 355:-357:12.                         PAGE ___28___
    [100] Id.
26  [101] Tomiyama may also be in breach of a separate term of her Separation Agreement

27  which precluded her from working for MGA while a Mattel consultant.  Zeller Dec. Ex 3,
    Section 3(f) at p. 5.  Mattel does not know is she has breached this provision because
28  Skadden refuses to disclose when she first spoke with MGA's counsel.  Proctor Dec. ¶ 4.

Case 2:04-cv-09049-DOC-RNB   Document 2865-3   Filed 03/28/08   Page 31 of 87   Page ID
#:46936
Case 2:04-cv-09049-SGL-RNB      Document 2707      Filed 03/18/2008      Page 28 of 31

1        This is not a case where a lawyer innocently failed to live up to technical or

2   obscure ethical requirements.  Far from it—it appears that Skadden intentionally

3   engaged in a pattern of misconduct to gain a tactical advantage: with full knowledge

4   of the facts, Skadden actively induced and cooperated in multiple violations of

5   Tomiyama's agreements and affirmatively encouraged her to disclose and to rely

6   upon Mattel's privileged communications and work product.    Skadden has

7   compromised the integrity of these proceedings.

8           **3.**    **Courts  Have  Found  Similar  Misconduct  Warrants**

9               **Disqualification**

10       Case law makes clear that Skadden must be disqualified.  In <u>Richards</u>, the

11  court found disqualification "necessary to remedy the substantial taint placed on any

12  future proceedings by [counsel's] possession and review" of business e-mails

13  provided to it by its client, a former executive of the defendant.  168 F. Supp. 2d at

14  1200.  Plaintiff's counsel, like MGA's counsel here, took no steps to ensure that the

15  information provided to it did not include defendant's privileged material.  <u>Id.</u> at

16  1202.  Nor did counsel take any measures to cease review of the material once it

17  became apparent that it was privileged, to notify defendant of the disclosure or to

18  prevent any further disclosure.  <u>Id.</u>  The court disqualified counsel, explaining that

19  "access to privileged materials creates an appearance of impropriety and so taints

20  the proceedings that the harsh remedy of disqualification is justified."[102]

21       In <u>MMR/Wallace</u>, defense counsel hired Richard Willett—a former employee

22  of the plaintiff with knowledge of the project at issue—as a litigation consultant.

23  764 F. Supp. at 715-716.  While employed by the plaintiff, Willett (like Tomiyama

24  here) had provided assistance to plaintiff's lawyers by directing them to relevant

---

[102]  The <u>Richards</u> court found that the knowing retention of privileged information
presented an easy case for disqualification, but for the fact that a paralegal, not attorneys,
had reviewed the opposing party's privileged documents. 168 F. Supp. 2d at 1201.
Nevertheless, the court disqualified counsel. This case is easier—the privileged materials
were reviewed by a senior partner and other Skadden attorneys.

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

07209/2435140.11

EXHIBIT /
PAGE 29

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 32 of 87 Page ID #:46937
Case 2:04-cv-09049-SGL-RNB Document 2760 Filed 03/24/2008 Page 32 of 87
Case 2:04-cv-09049-SGL-RNB Document 2707 Filed 03/18/2008 Page 29 of 31

1  documents, preparing reports on issues related to the case, and attending meetings in
2  which confidential litigation strategies were discussed. Id. at 714-715. While
3  Willett had only "limited responsibilities" with the plaintiff (and the defendant
4  contended he was merely a "document clerk"), he had obtained confidential
5  information about the case. Id. at 725. Defense counsel gave specific instructions
6  to Willett, *verbally and in writing*, to refrain from disclosing any privileged
7  information. Nevertheless, the court held that disqualification was appropriate,
8  particularly "in light of Willett's own admission that, as a lay person, he did not
9  know what information or communications were protected by the attorney-client
10  privilege," because any further involvement in the case by defense counsel
11  "threaten[ed] to taint the integrity" of the case and would "create[] at least an
12  appearance that defendant ha[d] obtained an unfair advantage at trial." Id. at 716-
13  17, 726-27.[103]

14      Skadden's misconduct presents a far more compelling case for
15  disqualification than Richards or MMR/Wallace. Tomiyama, a Mattel manager,
16  acknowledged that she had no ability to discern which communications were
17  protected by privilege,[104] and yet Skadden made no efforts to prevent her disclosure
18  of privileged communications or work product.[105] Instead, it misused for tactical
19  advantage the protected information she disclosed, induced her to conceal her
20

21      [103] California state court cases take the same approach with similar results. See, e.g.,
22  County of Los Angeles v. Superior Court, 222 Cal. App. 3d 647, 657-658, 271 Cal. Rptr.
698 (1990) (when an attorney consults with an expert and discloses privileged information,
23  and the opposing attorney later acquires the privileged information during communications
with that expert, the opposing attorney must be disqualified because, "[h]aving become
24  privy to [the privileged information], there is no way the offending attorney could separate
that knowledge from his or her preparation of the case."); Shadow Traffic Network v.
25  Superior Court, 24 Cal. App. 4th 1067, 1085-1087, 29 Cal. Rptr. 2d 693 (1994) (counsel
26  disqualified where it retained accounting firm as experts where opponents had previously
consulted with same accountants).
27      [104] Id. at 247:7-12.
28      [105] Tomiyama Tr. at 221:14-222:11.

EXHIBIT _1_

PAGE _30_

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 33 of 87 Page ID #:46938
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 33 of 33
Case 2:04-cv-09049-SGL-RNB Document 2707 Filed 03/18/2008 Page 30 of 31

1  cooperation with MGA and, even now, refuses to take any steps to mitigate its
2  misconduct.

### 4.  Disqualification Is The Appropriate Remedy

4      Mattel submits the only appropriate remedy for Skadden's misconduct is
5  disqualification.   MGA and Skadden may argue that, despite the evidence of
6  impropriety, disqualification is too harsh and would deprive MGA of counsel of
7  choice, as well as disrupt trial preparation.  The Court should not be swayed.  When
8  the client and its lawyers themselves "are directly responsible for the breach of
9  privilege . . . the deprivation of counsel of choice does not weigh heavily against
10 disqualification."  Richards, 168 F. Supp. 2d at 1208; see MMR/Wallace, 764 F.
11 Supp. at 728 ("While the court is concerned about interfering with Thames' right to
12 freely select counsel of its choice, that concern is outweighed by MMR's interest in
13 a trial free from the risk that confidential information has been used against it and in
14 the public's interest in the integrity of the judicial process itself.").  Here, Skadden
15 and MGA are complicit.  MGA is not the victim here, but an active participant.[106]

16     The Court should also provide additional relief beyond the disqualification of
17 Skadden.     All members of MGA in-house Law Department who had
18 communications with Tomiyama should also be disqualified.   While MGA has
19 refused to identify these attorneys, Tomiyama has testified that she discussed this
20 case with at least one in-house MGA counsel, ████—who is presumably Craig
21 Holden.[107]  The Court should also issue an injunction ordering MGA and its counsel

---

23 [106]  Moreover, means exist to ameliorate any hardship of disqualification.  For example,
   "this hardship can be reduced by allowing portions of [the disqualified firm's] work
24 product to be turned over to new counsel and by allowing limited consultation with
25 disqualified counsel for the purpose of explaining the work product."  Williams, 588 F.2d
   at 1046.  The timing of disqualification should not be weighed heavily when compared to
26 the paramount need to uphold "[the moving party's] legitimate interest in a trial free from
   the risk that confidential information has been unfairly used against it."  Id. (granting
27 motion to disqualify counsel filed less than two weeks before trial).
28 [107] Tomiyama Tr. at 132:17-133:2 (identifying MGA's in-house counsel ████).

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

EXHIBIT ___/___

PAGE ___3/___

07209/2435140.11

Case 2:04-cv-09049-DOC-RNB   Document 2865-3   Filed 03/28/08   Page 34 of 87   Page ID #:46939
Case 2:04-cv-09049-SGL-RNB   Document 2760-2   Filed 03/24/2008   Page 34 of 87
Case 2:04-cv-09049-SGL-RNB   Document 2707   Filed 03/18/2008   Page 31 of 31

1   to return all Mattel's privileged and work-product materials, directing the delivery
2   up or destruction of any documents generated by MGA or its counsel reflecting
3   those materials or any conversations with Tomiyama, and barring MGA and its
4   counsel from further disclosing or using Mattel's privileged communications and
5   work product. See Williams, 588 F. Supp. at 1046 (any information developed or
6   created after the date privileged materials were received should not be given to new
7   counsel).   Last, the Court should require MGA to identify all other persons,
8   including other outside experts, who have interacted with Tomiyama or reviewed
9   her report. Mattel reserves the right to seek to exclude or strike any testimony by a
10  witness who has spoken to Tomiyama or reviewed her report, and to strike any
11  expert reports that rely upon her analysis, once this information is disclosed.

12                              **Conclusion**

13          For the foregoing reasons, Mattel respectfully requests that the Court enter an
14  Order (1) disqualifying Christina Tomiyama as an expert in this lawsuit, (2)
15  disqualifying Skadden Arps; (3) disqualifying Craig Holden and any other MGA in-
16  house counsel engaged in communications with Tomiyama; and (4) issuing an
17  injunction to protect Mattel as set forth above.

18

19  DATED:  March 18, 2008              QUINN EMANUEL URQUHART OLIVER &
20                                      HEDGES, LLP

21                                      By_____
22                                         John B. Quinn
23                                         Attorneys for Mattel, Inc.

24

25

26

27                                              EXHIBIT ___1___
28                                              PAGE ___32___

MATTEL'S MOTION TO DISQUALIFY MGA'S COUNSEL SKADDEN ARPS AND EXPERT TOMIYAMA

Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 35 of 87

**EXHIBIT 2**

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 36 of 87 Page ID #:46941
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 36 of 87

Case 2:04-cv-09049-SGL-RNB    Document 1755    Filed 01/29/2008    Page 1 of 25

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017–2543
    Telephone:   (213) 443–3000
7   Facsimile:   (213) 443–3100

8   Attorneys for Mattel, Inc.

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12

13  CARTER BRYANT, an individual,       CASE NO. CV 04–9049 SGL (RNBx)

            Plaintiff,                   Consolidated with
14                                       Case No. CV 04–09059
                                         Case No. CV 05–02727
15        vs.
                                         **DISCOVERY MATTER**
16
    MATTEL, INC., a Delaware             **[To Be Heard By Discovery Master**
17  corporation,                         **Hon. Edward Infante (Ret.) Pursuant**
                                         **To The Court's Order Of**
            Defendant.                   **December 6, 2006]**
18

19                                       NOTICE OF MOTION AND MOTION
    AND CONSOLIDATED ACTIONS             OF MATTEL, INC. FOR AN ORDER
20                                       ENFORCING COURT'S
                                         JANUARY 25, 2007 ORDER
21                                       COMPELLING BRYANT TO
                                         PRODUCE COMPUTER HARD
22                                       DRIVES AND FOR SANCTIONS

23                                       [Declaration of Melissa Grant filed
                                         concurrently herewith]
24
                                         Hearing Date: TBA
25                                       Time:  TBA
                                         Place: TBA
26
                                         **Phase I**
27                                       Discovery Cut-off:      January 28, 2008
                                         Pre–trial Conference:   May 5, 2008
28                                       Trial Date:             May 27, 2008

MATTEL'S MOTION RE. BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

EXHIBIT   2
PAGE   33

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017–2543
   Telephone: (213) 443–3000
7  Facsimile: (213) 443–3100

8  Attorneys for Mattel, Inc.

9

10                 UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                      EASTERN DIVISION

13  CARTER BRYANT, an individual,       | CASE NO. CV 04–9049 SGL (RNBx)

         Plaintiff,                     | Consolidated with
14                                      | Case No. CV 04–09059
                                        | Case No. CV 05–02727
15       vs.
                                        | **DISCOVERY MATTER**
16  MATTEL, INC., a Delaware
    corporation,                        | **[To Be Heard By Discovery Master**
17                                      | **Hon. Edward Infante (Ret.) Pursuant**
         Defendant.                     | **To The Court's Order Of**
18                                      | **December 6, 2006]**

19  ─────────────────────────           | NOTICE OF MOTION AND MOTION
    AND CONSOLIDATED ACTIONS            | OF MATTEL, INC. FOR AN ORDER
20                                      | ENFORCING COURT'S
                                        | JANUARY 25, 2007 ORDER
21                                      | COMPELLING BRYANT TO
                                        | PRODUCE COMPUTER HARD
22                                      | DRIVES AND FOR SANCTIONS

23                                      | [Declaration of Melissa Grant filed
                                        | concurrently herewith]
24
                                        | Hearing Date: TBA
25                                      | Time: TBA
                                        | Place: TBA
26
                                        | **Phase I**
27                                      | Discovery Cut–off: January 28, 2008
                                        | Pre–trial Conference: May 5, 2008
28                                      | Trial Date: May 27, 2008

                    EXHIBIT _2_

                    PAGE _34_

07209/2349684.2

─────────────────────────────────────────────────────────
MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a telephonic conference before Discovery Master Hon. Edward Infante (Ret.), that will occur at a time to be determined by Judge Infante, plaintiff and cross–defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court:

(1)     for an Order requiring Carter Bryant ("Bryant") to produce for inspection and forensic imaging within five calendar days all computer hard drives and/or images that Bryant has in his possession, custody, control (including, without limitation, the two computers Bryant purchased in 2004 and imaged in 2005, and the two desktops and one laptop he purchased and imaged in 2007), as Bryant was compelled to produce by Judge Infante's Order dated January 25, 2007;

(2)     for an Order requiring Bryant, in the event of his continued non–production of the hard drives and/or images, to provide sworn declarations from each person with knowledge fully detailing the facts and circumstances surrounding the search for and the non–production of the hard drive(s) and/or images;

(3)     in the alternative, for an Order to Show Cause why Bryant should not be required to provide the foregoing; and

(4)     for sanctions against Bryant and his counsel, including prospective monetary sanctions to obtain Bryant's compliance with the January 25, 2007 Order.

This Motion is made pursuant to Federal Rules of Civil Procedure 34 and 37 on the grounds that Bryant has failed to comply with the Order requiring him to produce his computer hard drives and has made inconsistent statements about his search for, his inspection of, and the whereabouts of such computer hard drives that he was compelled to produce.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Melissa Grant filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

EXHIBIT ___2___

PAGE ___35___

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 02/28/08 Page 39 of 87 Page ID
#:46944
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 39 of 87

1                      **Statement of Rule 37–1 Compliance**

2             The parties met and conferred regarding this motion on April 2, 2007, in

3 or around September 2007, and on January 7, 2008, as well as on other occasions.

4

5 DATED:  January 28, 2008         QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP

6

7                         By _____

8                           Timothy L. Alger
                          Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                        EXHIBIT 2

28                                          PAGE 36

                                    3

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVE

## TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ................................................................................................ 4

ARGUMENT .................................................................................................... 13

I.     BRYANT SHOULD BE ORDERED TO MAKE ALL HIS HARD DRIVES AVAILABLE FOR INSPECTION AND IMAGING, OR EXPLAIN THEIR NON–PRODUCTION UNDER OATH. ......................... 13

     A.    The January 25, 2008 Expressly Orders Bryant to Produce All of His Hard Drives. ........................................................................ 13

     B.    Bryant's Claim That Mattel Is On a "Fishing Expedition" Is Without Merit. ............................................................................... 14

II.    BRYANT'S FAILURE TO COMPLY WITH JANUARY 25, 2007 ORDER HAS BEEN WILLFUL, AND SHOULD BE SANCTIONED ....... 16

CONCLUSION ................................................................................................. 17

EXHIBIT __2__

PAGE __37__

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

Ameriwood Indus., Inc. v. Liberman,
   2006 WL 3825291 (E.D. Mo Dec. 27, 2006).......................................... 15

Frees, Inc. v. McMillan,
   2007 WL 184889 (W.D. La. Jan. 22, 2007)........................................ 14

Grimes v. City and County of San Francisco,
   951 F.2d 236 (9th Cir. 1991)...................................................... 15, 16

Hedenburg v. Aramark American Food Servs.,
   2007 WL 162716 (W.D. Wash. Jan. 17 2007)...................................... 14

RTC v. Dabney,
   73 F.3d 262 (10th Cir. 1995)....................................................... 16

Richmark Corp. v. Timber Falling Consultants,
   959 F.2d 1468 (9th Cir. 1992)..................................................... 13

Simon Prop. Group L.P. v. mySimon, Inc.,
   194 F.R.D. 639 (S.D. Ind. 2000)................................................... 15

U.S. v. Westinghouse Electric Corp.,
   648 F.2d 642 (9th Cir. 1981)....................................................... 15

## **Statutes**

28 U.S.C. § 1927 ............................................................................. 15

Federal Rules of Civil Procedure
   Rule 34.......................................................................................... 7
   Rule 37(b)(2) ....................................................................... 15, 16

EXHIBIT __2__

PAGE __38__

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 42 of 87 Page ID
#:46947
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 42 of 87

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

One year ago, the Discovery Master ordered Carter Bryant to "produce the hard drives of his computers for forensic imaging" no later than February 23, 2007.[1] Bryant has willfully failed to comply with the January 25, 2007 Order.

Bryant testified in deposition in November 2004 that he owned two personal computers that he used to communicate with and perform work for MGA since October 2000, the month he left Mattel's employment. The first is a desktop computer he purchased in October 2000 and used until approximately November 2003, when he gave it to his niece (the "Desktop"). The second is a laptop computer he purchased in late 2001 or early 2002 (the "Laptop").

For more than two years, Mattel has sought discovery on Bryant's hard drives, including the Desktop and Laptop,[2] and the crucial information they (should) contain. In response, Bryant and his former counsel made numerous conflicting representations. As the Discovery Master recently stated on the record, the "inconsistency" in Bryant's former counsel's statements regarding the "condition and whereabouts of Mr. Bryant's former computers, hard drives, laptops, etcetera . . . is **alarming.**"[3]

Bryant and his counsel initially claimed that only **one** hard drive, for the Desktop, could be located and that their allegedly "tireless" search of that one drive purportedly yielded <u>no</u> relevant documents. Then, in the wake of the January 25, 2007

---

[1]  Order of the Discovery Master Hon. Edward Infante (Ret.), dated January 25, 2007 ("January 25, 2007 Order"), attached as Exhibit 1 to the Declaration of Melissa Grant ("Grant Dec.") filed concurrently herewith.
[2]  The hard drive of a computer is the primary storage medium in desktop and laptop computers. A computer can use multiple hard drives, be they internal and external drives.
[3]  Omnibus Discovery Motions Hr'g Tr. 69:9-15 (emphasis added), dated January 3, 2008, Grant Dec. Exh. 2.

EXHIBIT __2__

PAGE __39__

1 Order compelling production of Bryant's hard drives, and after repeatedly delaying

2 their production, Bryant and his former counsel announced that they had in fact **five**

3 forensic images of Bryant hard drives containing Bratz-related information.

4     Two of the images were made in July 2004—long before Bryant had

5 represented to the Court that **only** the Desktop had been located. (One of the images

6 was of the Desktop, the other of the Laptop.) The three other forensic images were

7 made in March 2007 of still other unidentified Bryant hard drives.

8     For more than four additional months, Bryant then refused to produce any

9 of his hard drives. He did not dispute that the drives and/or their contents were ordered

10 produced by the Discovery Master. Instead, he refused to comply with those Orders

11 and produce his hard drives because they purportedly contained unspecified "highly

12 private" materials and unidentified information about unreleased Bratz products

13 scheduled for release in 2007 and 2008. Only after Mattel moved to enforce the

14 January 25, 2007 Order and compel production of his drives did Bryant's counsel relent

15 in part and produce the Desktop for inspection. Later, Bryant produced the Laptop to

16 Mattel for inspection (and the July 2004 image of its hard drive) as well. But Bryant

17 still refused to produce his three other hard drives.

18     Mattel promptly inspected both the Desktop and Laptop hard drives.

19 Based on that inspection, Mattel determined that data from the critical period of 2000

20 through 2001 is missing from the drives and discovered that a software program called

21 "Evidence Eliminator" had been installed and run on both. Upon learning of this fact

22 (and others supporting Mattel's counterclaims for spoliation) Judge Larson issued an

23 Order requiring "all parties" to provide preservation of evidence affidavits no later

24 September 10, 2007.[4]

25     Bryant flatly refused. Mattel had to obtain yet another Order on January 7,

26 2008 mandating Bryant's compliance with the August 27, 2007 Order before Bryant

27

28 [4]  Order Requiring Filing of Affidavits Re Evidence Preservations, dated August 27, 2007, at 5, Grant Dec., Exh. 3.

07209/2349684.2

EXHIBIT ___2___

PAGE ___40___

1  would file the ordered preservation affidavit.[5]  Bryant filed his affidavit on January 15,

2  2008.

3        Bryant's January 15, 2008 preservation affidavit raised more questions

4  than it answered about Bryant's remaining hard drives.  Bryant claimed in his affidavit

5  that the three hard drive images made in March 2007 were taken "of three computers

6  [he] had used since the imaging [of the Desktop and Laptop] in July, 2004."  Although

7  he did not explain which computers were imaged, his statement clearly suggested that

8  the three hard drive images contain relevant information spanning from August 2004 to

9  March 2007, when the images were taken.

10        Then, a week later, the story dramatically changed yet again.  On

11  January 23, 2008, Bryant testified in deposition that since 2000 he has actually owned

12  at least **seven** personal computers—not just two as he previously testified—and used

13  each to do Bratz related work, to communicate with MGA and others, and to conduct

14  research.  Sometime in 2004, Bryant purchased another laptop and another desktop (the

15  "2004 Computers").  According to Bryant, in 2005 his counsel made forensic images of

16  both 2004 Computers and has had possession of them ever since.  What computers

17  Bryant used to do his work in 2006 remains a mystery.  Bryant testified he purchased in

18  2007 two new desktops and another laptop (the "2007 Computers"), which he

19  purportedly is still using.  Seemingly contradicting his preservation affidavit, Bryant

20  testified that the three forensic images made in March 2007 were taken of the 2007

21  Computers and consist only of some unidentified files, not the full drives.

22        The inconsistencies and discrepancies in Bryant's ever-changing story

23  about his hard drives are now <u>beyond</u> "alarming."  Bryant and his counsel failed to

24  mention the 2004 Computers in opposing the motion to compel that underlies the

25  January 25, 2007 Order.  They failed to mention them in 2005 when the motion was

26  originally filed, and they did not mention them in 2007 when the motion was renewed

27  _____

28  [5]  Order Granting Motion to Enforce the Court's Order of August 27, 2007, and Denying Request for Sanctions, dated January 7, 2008, Grant Dec., Exh. 4.

EXHIBIT 2

PAGE 41

07209/2349684.2

-3-

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

after the stay was lifted. Nor did they disclose the 2004 and 2007 Computers in April 2007, when Mattel filed its first motion to enforce the January 15, 2007 Order; in November 2007 when Mattel filed its motion to enforce the August 27, 2007 Order directing all parties to file preservation affidavits; nor in December 2007 when Mattel filed its motion to compel the deposition of Bryant's former counsel on just this issue.

Bryant continues to willfully refuse to abide by the Court's January 25, 2007 Order. He has not produced the 2004 Computers and their forensic images—the existence of which Bryant and his counsel repeatedly failed to advise the Court for more than two years. Nor has he produced the 2007 Computers and their three hard drive images.

Accordingly, Mattel respectfully requests that the Discovery Master order Bryant to comply immediately with the January 25, 2007 Order and, as that Order requires, to produce **all** hard drives and forensic images in his or his counsel's possession, including the 2004 and 2007 Computers. Mattel further submits that Bryant's willful refusal to abide by the Court's Order for more than a year, and his repeated failure to disclose the 2004 Computers and their forensic images to the Court or Mattel, warrant sanctions, including prospective sanctions.

## **Background**

### **At Deposition in November 2004, Bryant Identifies Three Relevant Computers.**

Bryant testified that he had used three different computers prior to his deposition in November 2004, two of which he owned.[6] One was the Desktop computer that Bryant purchased on October 21, 2000—just one day after he resigned from Mattel.[7] Bryant testified that he used this computer from 2000 until approximately November 2003 (only five months before this lawsuit was filed), and

---

[6]  Bryant Deposition 246:3–5, Grant Dec., Exh. 5.
[7]  Circuit City receipt dated October 21, 2000, Grant Dec., Exh. 6; Bryant Deposition at 246:3–5, Grant Dec., Exh. 5.

EXHIBIT  2

PAGE  42

1    then gave it to his niece.[8] The other was the Laptop computer that Bryant purchased in

2    November 2001.[9]

3    **Bryant and His Counsel Represent That The Desktop Was Retrieved**

4    **From The Niece And Examined, But Contained No Responsive Information.**

5    While represented by his former counsel, Bryant repeatedly represented that they had

6    possession of the Desktop, had searched it, and found no responsive documents. For

7    example, on November 1, 2004, Bryant's former counsel sent a letter to Mattel's

8    counsel claiming that the computer Bryant had given away to his niece "has been

9    retrieved and searched for responsive documents, and none have been located."[10]

10    Mattel specifically asked Bryant's counsel to preserve the Desktop hard drive.[11]

11        In January 2005, Mattel filed a motion to compel seeking the production of

12    Bryant's hard drives, among other things.[12] Bryant opposed the motion, representing to

13    the Court that he had "tirelessly searched for and inspected" his Desktop "for relevant

14    information" and had made an "extensive and diligent search" for responsive

15

---

16    [8]   Bryant Deposition at 245:8–17; 246:3–5; 248:5–9, Grant Dec., Exh. 5.
     Bryant's counsel elsewhere stated that Bryant had used the Desktop "from 2000 to

17    2002" and thus confirmed as well that it pertained to a highly pertinent time period.
     Joint Stipulation Re: Mattel's Motion to Compel Production of Documents, filed on

18    January 6, 2005 (excerpts) ("Joint Stipulation") at 62:8–10, Grant Dec., Exh. 7.

19    [9]   Bryant Deposition at 247:25-248:2, Grant Dec., Exh. 5.

20    [10]   Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to
     John Quinn, Kirkland Garey, and John [sic] Corey, counsel for Mattel, at p. 2, Grant

21    Dec., Exh. 8 ("Regarding [Mattel's] requests to inspect Mr. Bryant's home

22    computer, I have made further inquir[i]es on that subject to Mr. Bryant and my
     colleagues. Mr. Bryant did not own a home computer during his time at Mattel. He

23    later purchased a computer, which he used for a time, and then gave away to his

24    niece. That computer has been retrieved and searched for responsive documents,
     and none have been located. Mr. Bryant declines to produce his hard drive for

25    inspection for the reasons articulated in his response to Mattel's document

26    request.").

27    [11]   Letter dated November 17, 2004 from Kirk Garey, counsel for Mattel, to
     Mr. Jacoby, Grant Dec., Exh. 9.

28    [12]   Joint Stipulation at 3–4, 58–61, Grant Dec., Exh. 7.

EXHIBIT _2_

PAGE _43_

07209/2349684.2

1    information on them.[13]  Bryant's counsel also represented in declarations that they too

2    had examined the Desktop—indeed, "extensively" so—and had spent "scores of

3    attorney hours" searching for responsive documents, but found nothing responsive.[14]

4              Due to an intervening discovery stay, the Court did not rule on Mattel's

5    original motion to compel.  After the stay was lifted and the Discovery Master was

6    appointed, Mattel renewed its motion to compel Bryant's computer hard drives in early

7    January 2007.[15]

8              In his 2007 opposition, Bryant again represented to the Court that the *only*

9    computer he was able to find was the Desktop.[16]  And Bryant's counsel again stated

10   they had performed a "diligent" search of the Desktop hard drive, but did not find "any

11   responsive documents or relevant information" on it.[17]  Bryant did not disclose to the

12   Court in his opposition that he had purchased two other computers in 2004 (and three

13   more in 2007) and used them to conduct Bratz related business.  Nor did he disclose

14

15   _____

16   [13]  Joint Stipulation at 62:1–13, Grant Dec., Exh. 7; [Redacted] Declaration of
     Keith A. Jacoby in Support of Defendant and Cross–Claimant Carter Bryant's
17   Portion of Joint Stipulation (excerpted and without exhibits) ("2005 Jacoby Dec.")
18   at ¶¶ 22, 23, Grant Dec., Exh. 10.
     [14]  Joint Stipulation at 62:2–13, 18–20, Grant Dec., Exh. 7; 2005 Jacoby Dec. at
19   ¶¶ 23, 24, Grant Dec., Exh. 10.
20   [15]  Grant Dec. ¶ 12; see also Separate Statement of Mattel, Inc. in Support of
     Motion to Compel Production of Documents by Carter Bryant, filed on January 4,
21   2007 (excerpts) at 57–61 ("Mattel's 2007 Separate Statement"), Grant Dec.,
22   Exh. 11; Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion to
     Compel Production of Documents by Carter Bryant (without exhibits) filed
23   January 4, 2007 at ¶ 27, Grant Dec., Exh. 12.
24   [16]  Separate Statement of Defendant Carter Bryant in Opposition to Mattel's
     Motion to Compel,  filed on January 11, 2007 (excerpts) ("Bryant's 2007 Separate
25   Statement") at 39, Grant Dec., Exh. 13; Declaration of Keith A. Jacoby in Support
26   of Carter Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of
     Documents (excerpted and without exhibits) ("2007 Jacoby Dec.") at ¶ 31, Grant
27   Dec., Exh. 14.
28   [17]  2007 Jacoby Dec., ¶ 31, Grant Dec., Exh. 14.

EXHIBIT  2

PAGE  44

1  that his counsel had taken forensic images of them and had them in its possession, as
2  Mattel later learned (See discussion below).

3  **On January 25, 2007, the Court Orders Production of the Hard Drive,**
4  **But Bryant's Counsel Fails to Produce Them.**  The Discovery Master granted
5  Mattel's motion to compel without limitation.  Among other things, it ordered that
6  "[p]ursuant to Rule 34, Fed.R.Civ.P., *Bryant shall produce the hard drives of his*
7  *computers for forensic imaging*" by no later than February 23, 2007 (the "January 25,
8  2007 Order").[18]

9  Shortly before the February 23, 2007 deadline, Bryant's former counsel
10 asked Mattel for an extension of time to comply with the Order, claiming additional
11 time was required because (i) the quantity of responsive documents "may be
12 significant" and (ii) because Bryant would be traveling.[19]  Mattel agreed to extend
13 Bryant's time to produce the hard drives.[20]

14 Four days later, in a February 27, 2007 email, Bryant's counsel asserted a
15 new reason for failing to produce the hard drives, i.e., that the hard drive contained
16 some unspecified "highly private material" and seeking "some sort of agreement" on
17 that issue.[21]  Mattel again agreed to extend the deadline for production so the parties
18 could further discuss this new privacy issue.  In return, Bryant's counsel agreed to
19 provide a detailed log of the "highly private" files at issue by no later than March 23,
20 2007.[22]  By March 26, 2007, Bryant had still not produced that log.[23]

21
22 [18] Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25, 2007 at 17, Grant Dec., Exh. 1.
23 [19] Stipulation and Order re: Request to Extend Deadline Within Which Carter Bryant Must Comply with the Discovery master's January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents dated February 23, 2007, Grant Dec., Exh. 15.
24
25 [20] Id.
   [21] E-mail message dated February 27, 2007, from Douglas Wickham to Michael Zeller, Grant Dec., Exh. 16.
26
27 [22] Letter dated March 2, 2007 from Douglas Wickham to Michael Zeller, Grant Dec., Exh. 17; letter dated March 16, 2007 from Douglas Wickham to Michael Zeller, Grant Dec., Exh. 18; letter dated March 27, 2007 from Douglas Wickham to John Quinn, Grant Dec., Exh. 19.
28

EXHIBIT 2  PAGE 45

07209/2349684.2

-7-

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

**Mattel Moves To Enforce the January 25, 2007 Order.** In view of Bryant's failure to comply with the January 25, 2007 Order, Mattel sought to meet and confer in advance of a motion to enforce the Order.[24]

In response, Bryant's former counsel announced that they in fact had **five** forensic images of Bryant hard drives containing Bratz-related information.[25] Two of the images were made in July 2004—long before Bryant had represented to the Court that **only** the Desktop had been located. One of the images was of the Desktop, the other of the Laptop. According to Bryant's counsel, those two hard drive images contained data **only** from 2002 and 2003[26]—an odd suggestion given that Bryant had testified that he had used them since 2000.[27] When Mattel asked about the whereabouts of the actual Desktop, Bryant's counsel said for the first time that the Desktop could no longer be found.[28] They also revealed for the first time that the Laptop—which Bryant had previously represented to the Court could not be located[29]—was in fact in their possession (and had been since it was imaged in 2004) and contained Bratz-related

---

[23] Letter dated March 26, 2007 from Michael Zeller to Douglas Wickham, Grant Dec., Exh. 20.

[24] Id.

[25] Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Grant Dec., Exh. 21.

[26] Id.

[27] Bryant Deposition 245:8-17; 246:3-5; 248:5-9, Grant Dec., Exh. 5. Bryant and his former counsel had also represented to the Court in 2005 that Bryant had used the Desktop "from 2000 to 2002." Bryant's 2007 Separate Statement, at 62:8-10, Grant Dec., Exh. 13; 2005 Jacoby Dec. ¶ 22, Grant Dec., Exh. 10.

[28] Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Grant Dec., Exh. 21.

[29] Bryant's 2007 Separate Statement, at 39:15-18, Grant Dec., Exh. 13.

EXHIBIT 2
PAGE 46

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

07209/2349684.2

1  documents.[30] Last, Bryant disclosed that the three other forensic images of Bryant hard

2  drives were made in March 2007.[31]

3          Bryant's counsel did not dispute the relevance and discoverability of

4  Bryant's hard drives.  To the contrary, they expressly acknowledged that the drives

5  were ordered produced by the Discovery Master.  However, they claimed the hard

6  drives contained unspecified "highly private" materials and unidentified information

7  about unreleased Bratz products scheduled for release in 2007 and 2008 and, on this

8  basis, refused to produce them.[32]

9          Faced with Bryant's conflicting representations, Mattel moved to enforce

10  the Court's January 25, 2007 Order and compel Bryant to produce his hard drives.[33]

11  The day before Bryant's Opposition was due, Bryant's counsel advised Mattel they had

12  "found" the Desktop and "discovered" an image of it in their possession and would

13  now make them available to Mattel.[34]

14       **The Court Rules Information and Materials Related to Unreleased**

15  **Products Are Relevant, and Orders Their Production.**  By Order dated May 15,

16  2007, the Discovery Master ruled that information related to defendants' unreleased

17  products—which was part of the purportedly sensitive material Bryant had indicated

18  the three other images of his hard drives contained (along with the "highly private"

19  information) is relevant to Mattel's claims.[35]  The Court then approved a third-tier,

---

[30]  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Grant Dec., Exh. 21.

[31]  Id.; see also Letter dated March 27, 2007 from Douglas Wickham to Michael Zeller, Grant Dec. Exh. 20.

[32]  Id.

[33]  Notice of Motion and Motion of Mattel, Inc. for An Order to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive, dated April 10, 2007 ("April 2007 Motion to Enforce Discovery Order)," Grant Decl., Exh. 22.

[34]  Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller. Grant Dec., Exh. 23.

[35]  Id.

EXHIBIT 2

PAGE 47

1   hyper-strict protective order to guard the sensitive nature of the information and ordered

2   MGA to produce such materials.[36] MGA appealed, and the Court upheld the Discovery

3   Master's ruling.[37]

4         Shortly thereafter, Bryant's current counsel produced the Laptop and the

5   July 2004 image of its hard drive.[38] But Bryant continued to refuse to produce his three

6   other hard drives and/or their images, which he claimed need not be produced,

7   notwithstanding the January 25, 2007 Order, because of the sensitive materials they

8   contain.

9   **Bryant Used "Evidence Eliminator" Program on Both the Desktop**

10   **and Laptop.** When Mattel inspected Bryant's Desktop and Laptop hard drives, it

11   discovered that a software program called "Evidence Eliminator" had been installed

12   and run on them.[39] Evidence Eliminator purports to be a program designed to

13   permanently destroy data to prevent its use in legal proceedings: "Evidence

14   Eliminator . . . the data destroyed is 'gone forever' and it is impossible to create mirror

15   images of defendants' hard drives . . ."[40] Mattel's inspection also confirmed that data

16   from the critical period of 2000 through 2001 was missing from both drives.[41]

17         Just last week, Bryant admitted in deposition that by using "Evidence

18   Eliminator" "there was data that was eliminated" from his hard drives.[42] He claims,

19   however, not to recall what data was deleted.[43] Bryant also claims the only reason he

20   used "Evidence Eliminator" was to make his Desktop and Laptop "run smoother."[44]

21

22

---

23   [36] Id.

24   [37] Minute Order, dated July 2, 2007, at 3-4, Grant Dec., Exh. 24.
     [38] Grant Dec., ¶ 27.

25   [39] Grant Dec., ¶ 29, Exh. 25.
     [40] Id.

26   [41] Id.

27   [42] Bryant Deposition [Rough] 10:10-11:6, Grant Dec., Exh. 26.
     [43] Id.

28   [44] Bryant Deposition [Rough] 6:17-10:9; 12:18-13:20, Grant Dec., Exh. 26.

EXHIBIT _2_

PAGE _48_

07209/2349684.2

-10-

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

1  However, Evidence Eliminator is specifically designed to permanently destroy data to

2  prevent its use in legal proceedings, not to improve a computer's efficiency.[45]

3        **Bryant's January 15, 2008 Preservation Affidavit.**  Upon learning of

4  Bryant's use of "Evidence Eliminator" and among other thing, Judge Larson issued an

5  Order dated August 27, 2007 requiring "all parties" to provide preservation of evidence

6  affidavits no later September 10, 2007.[46]  Bryant refused.  Judge Larson then issued an

7  Order dated January 7, 2008, mandating Bryant's compliance with the August 27, 2007

8  Order.[47]

9        In that affidavit, Bryant claimed that the three hard drive images made in

10  March 2007 were taken "of three computers [he] had used since the imaging [of the

11  Desktop and Laptop] in July, 2004."[48]  This statement suggested that the three hard

12  drive images contain relevant information spanning from August 2004 to March 2007,

13  when the images were taken.

14        **Bryant Testifies That He Owned At Least Seven Personal**

15  **Computers—Not Two As He Previously Testified and Represented to the Court.**

16  A week after filing his preservation affidavit, Bryant's story dramatically changed yet

17  again.  On January 23, 2008, Bryant testified in deposition that since 2000 he has

18  actually owned at least **seven** personal computers—not just two as he previously

19  testified—and used each to do Bratz-related work, to communicate with MGA and

20  others, and to conduct research.[49]  Sometime in 2004, Bryant purchased another laptop

21

22

---

[45]  Grant Dec. ¶ 29, Exh. 25.

[46]  Order Requiring Filing of Affidavits Re Evidence Preservations, dated August 27, 2007, at 5, Grant Dec., Exh. 3.

[47]  Order Granting Motion to Enforce the Court's Order of August 27, 2007, and Denying Request for Sanctions, dated January 7, 2008, Grant Dec., Exh. 4.

[48]  Declaration Of Carter Bryant In Response To Court's Request For Information Regarding Document Preservation, filed January 15, 2008, Grant Dec., Exh. 27.

[49]  Bryant Deposition [Rough] 21:24-28:18; Grant, Dec., Exh. 26.

EXHIBIT ___2___

PAGE ___49___

1   and another desktop (the "2004 Computers").[50]   According to Bryant, in 2005 his

2   counsel made forensic images of both 2004 Computers and has had possession of them

3   ever since.[51]   What computers Bryant used to do his work in 2006 remains a mystery.

4   Bryant testified only that he purchased two new desktops and another laptop in 2007

5   (the "2007 Computers"), which he is currently using.[52]   Seemingly contradicting his

6   preservation affidavit, Bryant testified that the three forensic images made in

7   March 2007 were taken of the 2007 Computers and consist only of some unidentified

8   files, not the full drives.[53]

9              **Mattel's Meet-and-Confer Efforts.**   On April 2, 2007, Mattel's

10  counsel initiated the meet and confer process with Bryant's former counsel regarding

11  Bryant's Desktop and thereafter regarding Bryant's Laptop.   Since then, Bryant

12  produced the Desktop and Laptop to Mattel for inspection and forensic imaging,

13  along with images of those drives.   Bryant's current counsel and Mattel's counsel

14  began the meet and confer process regarding Bryant's more recent hard drives in or

15  around September 2007.   Bryant refused to produce those hard drives.   Mattel's

16  wrote Bryant's counsel on January 4, 2008 regarding Bryant's continuing failure to

17  produce his other hard drives and/or forensic images of them and requesting another

18  meet and confer on this issue before Mattel filed a motion to enforce the January 25,

19  2007 Order compelling their production and seeking sanctions.   By e-mail message

20  dated January 7, 2008, Bryant's current counsel responded and stated that Bryant

21  would not produce his other hard drives for two reasons.[54]   First, Bryant's counsel

22  claims that the January 25, 2007 Order applied only to Bryant's Desktop, Laptop,

23

---

24   [50] Id.
25   [51] Id.
26   [52] Id.
     [53] Id.; Bryant Deposition [Rough] 199:23-200:13, Grant, Dec., Exh. 28.
     [54] E-mail message from Michael Zeller to Mike Page and Christa Anderson,.
27   dated January 4, 2008; e-mail message from Michael Werdergar to Michael Zeller,
28   dated January 7, 2008, Grant Dec., Exh. 29.

                                            EXHIBIT _2_
                                                  50

1  and his parents' computer. Second, Bryant's counsel claimed that Mattel's request

2  for Bryant's other hard drives was a "fishing expedition."

4  <u>**Argument**</u>

5  **I. <u>BRYANT SHOULD BE ORDERED TO MAKE ALL HIS HARD</u>**

6  <u>**DRIVES AVAILABLE FOR INSPECTION AND IMAGING, OR**</u>

7  <u>**EXPLAIN THEIR NON–PRODUCTION UNDER OATH.**</u>

9  **A. <u>The January 25, 2007 Order Compelled Bryant to Produce All of</u>**

10  <u>**His Hard Drives.**</u>

11  The Discovery Master ordered Bryant to produce "the hard drives of his

12  computers for forensic imaging," no later than February 23, 2007.[55] By its express

13  terms, the Court's Order is not limited Bryant's Desktop and Laptop. Bryant's

14  counsel's recent claim to the contrary is unavailing.[56]

15  The language of the Court's Order is clear. In the January 25, 2007

16  Order, the Discovery Master compelled Bryant to produce his hard drives for forensic

17  imaging. That requirement is unambiguous. Bryant has willfully failed to comply that

18  Order.

19  Significantly, in opposing the motions to compel that underlie the

20  January 25, 2007 Order, Bryant and his counsel failed to mention that he purchased two

21  computers in 2004 that used for Bratz-related work and communications with MGA.[57]

22  They failed to mention them in 2005 when the motion was originally filed and in 2007

23  when it was renewed after the stay was lifted. Nor did they disclose the 2004

24  Computers (or the three additional computers purchased sometime 2007) in April 2007

---

[55] The January 25, 2007 Order, at 17, Grant Dec., Exh. 1.
[56] E-mail message from Mathew M. Werdegar to Michael T. Zeller, dated January 7, 2008, Grant Dec., Exh. 29.
[57] Joint Stipulation, at 62-63, Grant Dec., Exh. 7; Bryant's 2007 Separate Statement, at 38-40, Grant Dec., Exh. 13.

EXHIBIT 2

PAGE 57

1  when Mattel filed its first motion to enforce the January 25, 2007 Order; in

2  November 2007 when Mattel filed its motion to enforce the August 27, 2007 Order

3  directing all parties to filed preservation affidavits; and again in December 2007 when

4  Mattel filed its motion to compel the deposition of Bryant's former counsel on just this

5  issue. Thus, Bryant has waived his right to oppose the production of the 2004 and 2007

6  hard drives and their forensic images. <u>See, e.g.</u>, <u>Richmark Corp. v. Timber Falling</u>

7  <u>Consultants</u>, 959 F.2d 1468, 1473 (9th Cir. 1992) (finding defendant waived objections

8  to discovery orders and a contempt adjudication based on the People's Republic of

9  China's secrecy laws where it failed to raise argument in response to motion to

10 compel).

11

12 **B.     <u>Bryant's Claim That Mattel Is On a "Fishing Expedition" Is</u>**

13 **<u>Without Merit.</u>**

14            Bryant's counsel has asserted that Mattel's demand for production of

15 Bryant's other hard drives is a mere "fishing expedition." Not so. The relevance of

16 Bryant's 2004 and 2007 hard drives is indisputable. Bryant recently testified that he

17 used each hard drive to perform Bratz-related work and to communicate with MGA.[58]

18 And the Discovery Master and the Court have already ruled that materials and evidence

19 related to unreleased products are relevant to Mattel's trade secret and RICO claims and

20 ordered MGA to produce such materials.[59] "[W]here [, as here,] the contents of an

21 adversary's computer go to the heart of the case," courts have consistently ordered their

22

23    [58]   Bryant Deposition 23:9-45:6; 25:2-16 , Grant Dec., Exh. 26.
      [59]   Order Modifying Protective Order, dated May 15, 2007, at 6-8; Order
24 Granting Mattel's Motion Compel Production of Documents and Interrogatory
Responses, dated May 15, 2007, at 9; Stipulation to Modify Protective Order; and
25 Order Thereon, dated May 15, 2007 (collectively "the May 15, 2007 Orders"), Grant
Dec., Exh. 30. Minute Order, dated July 2, 2007, at 3-4, Grant Dec., Exh. 24. Even
26 if the Discovery Master and Court had not previously ruled on this issue, Bryant
waived the right to object to the January 25, 2007 Order on the ground that
27 unreleased products are not relevant by failing to raise this issue in opposition
Mattel's 2005 and 2007 motions to compel. <u>See, e.g.</u>, <u>Richmark Corp.</u>, 959 F.2d
28 at 1473.

EXHIBIT 2
PAGE 52

07209/2349684.2

-14-

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

1   production and/or a forensic image to be taken of them.  See, e.g., Hedenburg v.

2   Aramark American Food Servs., 2007 WL 162716, at *2 (W.D. Wash. Jan. 17 2007)

3   (citing cases and so ordering); see also Frees, Inc. v. McMillan, 2007 WL 184889, at *2

4   (W.D. La. Jan. 22, 2007) (same).  The need to order Bryant's production of the 2004

5   and 2007 hard drives and their images is particularly acute here because their contents

6   may support Mattel's claims that Bryant and others stole its trade secrets.  See, e.g., id.

7            The fact that Bryant purchased the three 2007 hard drives after he left

8   Mattel's employ in 2004 is of no consequence.  See id.  In Frees, the defendant argued

9   that he should not be compelled to produce two computers purchased two years after

10  his alleged misappropriation of plaintiff's trade secrets.  Id. at *1.  The district court

11  rejected this argument for two reasons—both of which apply here.  First, the court held

12  that "[a] party cannot, by his own self-serving statements, deny the other party access to

13  potentially relevant information."  Id. at *2.  Second, the court held that, even assuming

14  the defendant's statements were true:

15               the fact that the computers were allegedly acquired two years

16               after the misappropriation is said to have occurred in no way

17               forecloses the existence of the pilfered data, or information

18               related to such date, on the computers.  It would certainly have

19               been possible for [the defendant] to transfer computer data

20               acquired from Frees in 2003 to a computer he did not obtain until

21               two years later.

22  Id.

23            In any case, as the Court knows, Mattel has asserted claims alleging MGA

24  and others with the ongoing theft of trade secrets.  Hence, post-2004 information is

25  highly relevant.

26            Moreover, the inconsistencies in Bryant's ever-changing story about what

27  computers he owned during critical time periods and what drives he or his counsel have

28  in their possession—which the Discovery Master deemed "alarming"—alone justify

EXHIBIT  2
PAGE  53

07209/2349684.2

-15-

1  inspection. In such circumstances, it is well settled that the hard drives sought should

2  be produced for forensic imaging. <u>See</u>, e.g. <u>Simon Prop. Group L.P. v. mySimon, Inc.</u>,

3  194 F.R.D. 639, 641 (S.D. Ind. 2000) (allowing plaintiff to mirror image defendant's

4  computers where there were "troubling discrepancies with respect to defendant's

5  document production"); <u>accord</u> <u>Ameriwood Indus., Inc. v. Liberman</u>, 2006 WL

6  3825291, at *4-*5 (E.D. Mo Dec. 27, 2006) (holding same and citing cases holding

7  same).

8        Accordingly, Bryant should be ordered to produce all his hard drives and

9  the images of them in his counsel's possession, including the 2004 and 2007

10  Computers.

11

12  **II.   <u>BRYANT'S FAILURE TO COMPLY WITH JANUARY 25, 2007</u>**

13        **<u>ORDER HAS BEEN WILLFUL, AND SHOULD BE SANCTIONED</u>**

14        Bryant's failure to comply with the January 25, 2007 has been willful and

15  flagrant. This is but another effort by Bryant and MGA to delay and obstruct Mattel's

16  ability to obtain information that it is plainly entitled to.

17        The Discovery Master has broad authority to sanction Bryant for his

18  disobedience of its Orders.[60] Under <u>Federal Rule of Civil Procedure</u> 37(b)(2), the Court

19  "may make such orders in regard to the failure [to comply with the Court's Order] as are

20  just." <u>See also</u> <u>U.S. v. Westinghouse Electric Corp.</u>, 648 F.2d 642, 651 (9th Cir. 1981)

21  ("The choice of discovery sanctions is left to the discretion of the district court.");

22  <u>accord</u> <u>Grimes v. City and County of San Francisco</u>, 951 F.2d 236, 240-241 (9th Cir.

23  1991) (courts "may, within reason, use as many and as varied sanctions as are necessary

24  to hold the scales of justice even.").

25        Independently, sanctions may be imposed under 28 U.S.C. § 1927, which

26  provides that "[a]ny attorney . . . who so multiplies the proceedings in any case

27

28  [60]  Stipulation and Order for the Appointment of the Discovery Master, dated December 6, 2006, at 3-4, Grant Dec., Exh. 1.

EXHIBIT ___

PAGE ___

07209/2349684.2

-16-

1  unreasonably and vexatiously may be required by the court to satisfy personally the

2  excess costs, expenses, and attorneys' fees reasonably incurred because of such

3  conduct."  Sanctions under this section are appropriate "for conduct that, viewed

4  objectively, manifests either intentional or reckless disregard of the attorney's duties to

5  the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995). Here, Bryant has not

6  and cannot over any valid justification for refusing to comply with the January 25, 2007

7  Order, let alone a substantial justification for doing so. See Fed. R. Civ. P. 37(b)(2)

8  ("the court shall require the party failing to obey the order or the attorney advising that

9  party or both to pay the reasonable expenses, including attorney's fees, caused by the

10  failure unless the court finds that the failure was substantially justified or that other

11  circumstances make an award of expenses unjust.")

12  Sanctions are needed here as a deterrent, particularly in light of Bryant's

13  prolonged refusal to disclose the existence of critical evidence, and to coerce

14  compliance.  Mattel respectfully requests that Bryant be ordered to pay $3,500 as

15  partial reimbursement for the fees and costs that Mattel has incurred in bringing this

16  motion.[61]  Mattel also requests that Bryant be fined $5,000 for every day that he refuses

17  to comply following the date by which the Court orders him again to produce the

18  computer images and hard drives to ensure compliance and prevent still further motion

19  practice on this matter.  See Grimes, 951 F.2d at 241 ("magistrates may impose

20  prospective sanctions pursuant to Rule 37 where such sanctions are necessary to

21  enforce compliance with a valid discovery order").

22

23  **Conclusion**

24  For the foregoing reasons, Mattel respectfully requests that the Discovery

25  Master order Bryant to:  (1) produce within five calendar days his 2004 and 2007

26  computer hard drives for forensic examination and the forensic images in his counsel's

27

28  [61] Grant Decl. ¶ 32.

EXHIBIT 2

PAGE 55

07209/2349684.2

-17-

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

possession of those drives in compliance with the January 25, 2007 Order, along with any other drives Bryant used for Bratz that are in his possession, custody, or control. Mattel also respectfully requests that the Discovery Master award sanctions in the amount of $3,500 to reimburse Mattel for at least part of its attorney's fees; and impose prospective sanctions of $5,000 per day until such time as Bryant fully complies with the January 25, 2007 Order.

DATED:  January 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By
Timonthy L. Alger
Attorneys for Mattel, Inc.

EXHIBIT 2
PAGE 56

07209/2349684.2

-18-

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1301 West 2nd Street, Suite 206, Los Angeles, California 90026.

On January 28, 2008, I served true copies of the following document(s) described as :

**1) NOTICE OF MOTION AND MOTION OF MATTEL, INC. FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS**

on the parties in this action as follows:

**SEE ATTACHED LIST**

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 28, 2008, at Los Angeles, California.

_____
NOW LEGAL -- Dave Quintana

07209/2368323.1

EXHIBIT ___2___

PAGE ___57___

1

## SERVICE LIST

2
Thomas J. Nolan                          John W. Keker
**Skadden, Arps, Slate, Meagher & Flom ,**      Michael H. Page
3
**LLP**                                      Christa M. Anderson
300 South Grand Ave., Ste. 3400          **Keker & Van Nest, LLP**
4
Los Angeles, California 90071            710 Sansome Street
TEL: (213) 687-5000                      San Francisco, CA 94111
5
FAX: (213) 687-5600                      TEL: (415) 391-5400
**tnolan@skadden.com**                       FAX: (415) 397-7188
6
                                         **jkeker@kvn.com**
7                                        **mhp@kvn.com**

8
Mark E. Overland, Esq.
David E. Scheper, Esq.
9
Alexander H. Cote, Esq.
**Overland Borenstein Scheper & Kim, LLP**
10
300 South Grand Avenue
11
Suite 2750
Los Angeles, CA 90071-3144
12
TEL: (213) 613-4655
FAX: (213) 613-4656
13
**moverland@obsklaw.com**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _2_

PAGE _58_

**EXHIBIT 3**

1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       John B. Quinn (Bar No. 090378)
2       johnquinn@quinnemanuel.com
       Michael T. Zeller (Bar No. 196417)
3       (michaelzeller@quinnemanuel.com)
       Jon D. Corey (Bar No. 185066)
4       (joncorey@quinnemanuel.com)
       Timothy L. Alger (Bar No. 160303)
5       (timalger@quinnemanuel.com)
       865 South Figueroa Street, 10th Floor
6    Los Angeles, California 90017-2543
       Telephone: (213) 443-3000
7    Facsimile: (213) 443-3100

8    Attorneys for Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                 EASTERN DIVISION

13    CARTER BRYANT, an individual,

14            Plaintiff,

15        vs.

16    MATTEL, INC., a Delaware corporation,

17

18            Defendant.

19    AND CONSOLIDATED ACTIONS

---

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09039
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]**

**MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON, P.C. PURSUANT TO SUBPOENA**

**MEMORANDUM OF POINTS AND AUTHORITIES**
[Declaration of Michael T. Zeller filed concurrently]

Hearing Date:   January 4, 20008
Time:          TBA
Place:        Telephonic
**Phase 1**
Discovery Cut-off:   January 28, 2008
Pre-trial Conference:   April 21, 2008
Trial Date:      May 27, 2008

EXHIBIT _3_

PAGE _59_

_12-13_

07209/2325182.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

     PLEASE TAKE NOTICE that at a telephonic conference before Discovery Master Hon. Edward Infante (Ret.) that will occur on January 4, 2008, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to compel the deposition of Littler Mendelson, P.C. ("Littler"), pursuant to a subpoena issued on September 6, 2007.

     This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 36 and 37 on the grounds that pursuant to the subpoena Mattel seeks to depose Littler on discoverable, non-privileged information, and that Carter Bryant's objections to, and concurrent motion to quash, the deposition are improper and should be overruled.

     This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of James J. Webster filed concurrently herewith, and all other matters of which the Court may take judicial notice.

### Statement of Rule 37-1 Compliance

     The parties met and conferred regarding this motion on September 10, 2007 and times thereafter.

DATED: December 13, 2007     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _____
James J. Webster
Attorneys for Mattel, Inc.

EXHIBIT _3_

PAGE _60_

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Bryant's sworn deposition testimony in 2005 was that he personally used three computers since October 2000, i.e., the time periods directly relevant to this case. The drives would contain critical evidence of Bryant's activities during the ensuing period. For the past more than two years, Mattel has sought discovery on these drives, and the information they (should) contain. In response, Bryant and his now former counsel, Littler Mendelson, P.C. ("Littler"), have made conflicting representations.

Their initial position was that only <u>one</u> of the three drives could be located—the one for his October 2000 Desktop—and that their allegedly "tireless" search for the only drive they purportedly found yielded <u>no</u> relevant documents. In response, on January 4, 2007, Mattel moved to compel production of the drives. On January 25, 2007, the Court ordered Bryant to produce his hard drives. After delays in Bryant's production of compelled drives, Littler announced that that the Desktop drive could no longer be found. At the same time, Littler revealed that contrary to its prior representations to the Court, it <u>did</u> have possession of another drive (from a Bryant laptop)—which had been in Littler's possession <u>since 2004</u>—and which did contain Bratz related documents.

On April 10, 2007, Mattel moved to enforce the Court's Order, and require immediate production of the drives. In response, after yet more delays, Littler reversed course and revealed without explanation that it had regained possession of the Desktop drive. Mattel inspected two drives and found that a program called "Evidence Eliminator" had been installed apparently to destroy data. On September 6, 2007, Mattel served a <u>Rule</u> 30(b)(6) deposition subpoena on Littler seeking information regarding the handling of the drive.

By this motion, Mattel seeks an Order that it can now depose Littler regarding non-privileged, percipient issues, i.e., to determine when it obtained the

EXHIBIT _3_

PAGE _61_

-1-

MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON

1   drives, how they were preserved, when the Desktop went missing, and if it has any

2   knowledge regarding the destruction of evidence, especially given Littler's

3   conflicting representations to the Court on these subjects. This information is critical

4   to Mattel's preparation for trial, including on the issue of spoliation. It is also

5   information uniquely in the possession of Littler.

6          Mattel also seeks testimony regarding destructive testing on key Bratz

7   drawings that was conducted while Littler was counsel, without notice to the Court

8   or Mattel. Judge Larson has already recognized that the handling of these critical

9   documents raises serious questions; only Littler can provide necessary answers on

10   aspects of those documents' handling.

11          Bryant's objections to the deposition are based solely upon an

12   inapplicable Eighth Circuit precedent—Shelton v. Amer. Motors Corp., 805 F.2d

13   1323 (8th Cir. 1986)—which speaks to the protection of opposing trial counsel's

14   litigation tactics and strategy. But Littler is *former* trial counsel, and Mattel seeks

15   *facts* regarding the handling of evidence wholly unrelated to trial strategy. In any

16   case, even were Shelton applicable, the deposition is proper because of the critical

17   evidence at issue, and the inability of Mattel to gather it from any other source. For

18   all these reasons, the Court should compel Littler to appear for deposition.

19

20                **Factual Background**

21

22         **At Deposition in November 2004, Bryant Identified Three**

23   **Relevant Computers He Used Since October 2000.** At his deposition on

24   November 4, 2004, Bryant testified that he had used three different computers for

25   the period since 1998. Two are relevant here. One was a desktop computer he

26   purchased on October 21, 2000 (the "Desktop")—just one day after he resigned

27

28

1 from Mattel;[1] Bryant testified that he used this computer from 2000 until

2 approximately November 2003 (i.e., five months before this lawsuit was filed), and

3 then gave it to his niece .[2] The other was the laptop computer Bryant purchased in

4 November 2001 ("the Laptop").[3]

5 **Bryant and Littler Represent That The Desktop Was Examined**

6 **And Contained No Responsive Information.** Bryant and Littler repeatedly

7 represented that they had possession of the Desktop computer; they also represented

8 that they searched it and found no responsive documents. Littler confirmed this in a

9 November 1, 2004 letter to Mattel claiming that the Desktop "has been retrieved and

10 searched for responsive documents, and none have been located."[4] Mattel wrote

11 back asking that the Desktop hard drive be preserved.[5]

12

13

14

15 [1] Circuit City receipt dated October 21, 2000, attached to the Declaration of Michael T. Zeller, dated December 13, 2007 filed concurrently herewith ("Zeller

16 Dec."), Exh. 2; Deposition of Carter Bryant ("Bryant Deposition") at 246:3-5, Zeller Dec., Exh. 3.

17 [2] Bryant Deposition at 245:8-17; 246:3-5; 248:5-9, Zeller Dec., Exh. 3.

18 Bryant's counsel elsewhere stated that Bryant had used the Desktop "from 2000 to 2002" and thus confirmed as well that it pertained to a highly pertinent time period.

19 Joint Stipulation Re: Mattel's Motion to Compel Production of Documents, filed on

20 January 6, 2005 (excerpts) ("Joint Stipulation") at 62:8-10, Zeller Dec., Exh. 5.

21 [3] Bryant Deposition at 247:25-248:2, Zeller Dec., Exh. 3.
[4] Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John

22 Quinn and Michael Zeller, counsel for Mattel, at p. 2, Zeller Dec., Exh. 4

23 ("Regarding [Mattel's] requests to inspect Mr. Bryant's home computer, I have made further inquir[i]es on that subject to Mr. Bryant and my colleagues. Mr. Bryant did

24 not own a home computer during his time at Mattel. He later purchased a computer, which he used for a time, and then gave away to his niece. That computer has been

25 retrieved and searched for responsive documents, and none have been located. Mr.

26 Bryant declines to produce his hard drive for inspection for the reasons articulated in his response to Mattel's document request.").

27 [5] Letter dated November 17, 2004 from Kirk Garey, counsel for Mattel, to Keith

28 A. Jacoby, Zeller Dec., Exh. 1.

EXHIBIT 3
PAGE 63

1      In January 2005, Mattel filed a motion to compel seeking the

2 production of Bryant's hard drives, including the Desktop hard drive.[6] Bryant

3 opposed the motion, representing to the Court that he had "tirelessly searched for

4 and inspected" the Desktop drive "for relevant information" and had made an

5 "extensive and diligent search" for responsive information.[7] Littler's attorney

6 declarations averred that counsel had examined the Desktop—indeed, "extensively"

7 so—and that they spent "scores of attorney hours" searching for responsive

8 documents, and found no responsive documents.[8]

9      Due to an intervening discovery stay, Mattel's original motion to

10 compel was not ruled upon. After the stay was lifted and the Discovery Master

11 appointed, Mattel renewed its motion to compel production of Bryant's hard drives

12 in early January 2007, again specifically seeking production of the Desktop hard

13 drive.[9]

14      Bryant represented (again) in his Opposition that he had conducted a

15 "diligent" search for the hard drives and stated that the *only* drive he could locate

16

17

18   [6]  Joint Stipulation at 3-4, 58-61, Zeller Dec., Exh. 5.

19   [7]  Joint Stipulation at 62:1-13, Zeller Dec., Exh. 5; [Redacted] Declaration of
20 Keith A. Jacoby in Support of Defendant and Cross-Claimant Carter Bryant's
Portion of Joint Stipulation (excerpted and without exhibits) ("2005 Jacoby Dec.") at
21 ¶¶ 22, 23, attached as Exh. 6 to the Zeller Dec. Bryant's opposition also made clear
that the hard drive purportedly searched was from the Desktop. Id. at ¶ 23
22 (referencing the "hard drive from Bryant's home computer, which he gave to his
23 niece in 2002").
[8]  Joint Stipulation at 62:2-13, 18-20, Zeller Dec., Exh. 5; 2005 Jacoby Dec. at
24 ¶¶ 23, 24, Zeller Dec., Exh. 6.
25   [9]  Zeller Dec. ¶ 8; see also Separate Statement of Mattel, Inc. in Support of
26 Motion to Compel Production of Documents by Carter Bryant, filed on January 4,
2007 (excerpts) at 57-61, Zeller Dec., Exh. 7; Declaration of Michael T. Zeller in
27 Support of Mattel, Inc.'s Motion to Compel Production of Documents by Carter
28 Bryant (without exhibits) filed January 4, 2007 at ¶ 27, Zeller Dec., Exh. 8.

07209/2325182.1

-4-

MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON

EXHIBIT 3

PAGE 64

1   was from the Desktop.[10]  Littler represented (again) that they had searched the

2   Desktop hard drive, but did not find "any responsive documents or relevant

3   information" on it.[11]

4      **On January 25, 2007, the Court Orders Production of the Hard**

5   **Drive, But Bryant's Counsel Fails to Produce Them.**  The Discovery Master

6   granted Mattel's motion to compel.  Among other things, it was ordered that

7   "[p]ursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his

8   computers for forensic imaging" by no later than February 23, 2007 (the "Discovery

9   Order").[12]

10      Shortly before the February 23, 2007 deadline, Littler asked Mattel for

11   an extension of time to comply with the Discovery Order, claiming additional time

12   was required because (i) the quantity of responsive documents "may be significant"

13   and (ii) because Bryant would be traveling.[13]  Mattel agreed to extend Bryant's time

14   to produce the hard drives.[14]

15      Four days later, in a February 27, 2007 email, Littler asserted a new

16   reason for failing to produce the hard drives, i.e., that the hard drive contained some

17   unspecified "highly private material" and seeking "some sort of agreement" on that

18

19   —————————————

20   [10]  Separate Statement of Defendant Carter Bryant in Opposition to Mattel's
     Motion to Compel, filed on January 11, 2007 ("Bryant's 2007 Separate Statement")
21   at 39, Zeller Dec., Exh. 9; Declaration of Keith A. Jacoby in Support of Carter
22   Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of Documents
     (excerpted and without exhibits) ("2007 Jacoby Dec.") at ¶ 31, Zeller Dec., Exh. 10.
23   [11]  2007 Jacoby Dec., ¶ 31, Zeller Dec., Exh. 10.
     [12]  Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25,
24   2007 at 17, Zeller Dec., Exh. 11.
25   [13]  Stipulation and Order re: Request to Extend Deadline Within Which Carter
26   Bryant Must Comply with the Discovery master's January 25, 2007 Order Granting
     Mattel's Motion to Compel Production of Documents dated February 23, 2007,
27   Zeller Dec., Exh. 12.
28   [14]  Id.

EXHIBIT   3

PAGE   65

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 70 of 87 Page ID
#:46975
Case 2:04-cv-00049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 70 of 87

issue.[15]  Yet again, Mattel's counsel agreed to extend the deadline for production so
the parties could further discuss this new privacy issue.  In return, Littler agreed to
provide a detailed log of the "highly private" files at issue by no later than the end of
the following week (by March 23, 2007).[16]  By March 26, 2007, Littler had still not
produced that log.[17]

**In April 2007, Littler Reveals It Has Possession of Additional Hard
Drives But No Longer Has the Desktop Drive.**  In view of Littler's failure to
comply with the January 25, 2007 Order, Mattel sought to meet and confer in
advance of a motion to enforce the Order.[18]  Littler then made two new claims:

First, although Littler had previously represented to the Court that it
*only* had the Desktop hard drive,[19] it now stated that forensic images of *two* Bryant
hard drives had been made in *July 2004*—after this suit was filed and long before
Littler's representations to the Court that *only* the Desktop drive had been located.[20]
Littler claimed that one of these forensic images made in July 2004 was the Laptop
drive that Littler had represented to the Court had not been located.[21]  It thus also

---

[15]  E-mail dated February 27, 2007, from Douglas Wickham to John Quinn and
Michael Zeller, Zeller Dec., Exh. 13.
[16]  Letter dated March 2, 2007 from Douglas Wickham to Michael Zeller, Zeller
Dec., Exh. 14; letter dated March 16, 2007 from Douglas Wickham to Michael
Zeller, Zeller Dec., Exh. 15;  letter dated March 27, 2007 from Douglas Wickham to
Michael Zeller, Zeller Dec., Exh. 18.
[17]  Letter dated March 26, 2007 from Michael Zeller to Douglas Wickham, Zeller
Dec., Exh. 16.
[18]  Id.
[19]  Bryant's 2007 Separate Statement at 39, Zeller Dec., Exh. 9; 2007 Jacoby
Dec. at ¶ 31, Zeller Dec., Exh. 10; Letter dated March 26, 2007 from Douglas
Wickham to Michael Zeller, Zeller Dec. Exh. 17; Letter dated March 27, 2007 from
Douglas Wickham to Michael Zeller, Zeller Dec. Exh. 19.
[20]  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Zeller
Dec., Exh. 21.
[21]  Id.  More specifically, Bryant identified the two images that were made in
July 2004 as being of (1) a 20 GB Travelstar hard drive from a Compaq Presario
(footnote continued)

-6-

EXHIBIT _3_

PAGE _66_

07209/2325182.1

1  came to light that Littler had withheld these additional drives since July 2004.[22]

2  Littler further informed Mattel that the imaged data were from the 2002 and 2003

3  time period, giving the impression that the computers from which the hard drives

4  were imaged were not in use before that time.[23]

5          Second, in response to Mattel's specific requests for an explanation

6  regarding the status of the Desktop hard drive, Littler stated that it no longer knew

7  the whereabouts of the Desktop.[24]  Littler stated that it was "not sure" about the

8  accuracy of its prior representations—i.e., that the Desktop drive had been retrieved

9  from Bryant's niece—and that it may have been "wrong."[25]

10  **On April 10, 2007 Mattel Moved to Enforce the Court's January**

11  **25, 2007 Order.**  Faced with these starkly conflicting representations, Mattel moved

12  to enforce the Court's January 25, 2007 Order and compel Bryant to produce the

13  compelled computer hard drives.[26]  The day before Bryant's Opposition was due,

14  Littler  wrote stating that it had discovered an image of the Desktop in its

15  ───────────────

16  laptop, and (2) a 20 GB Quantum Fireball LCT 15 hard drive.  Id., p. 1.  Also during
    the meet and confer process, Bryant's counsel represented that Bryant was still in

17  possession of the physical hard drive from the laptop but no longer had the Quantum

18  hard drive.  Id., p. 1.
    [22]  Letter dated March 27, 2007 from Douglas Wickham to Michael Zeller,

19  Zeller Dec. Exh. 19.  Bryant's counsel further disclosed that there were additional

20  "hard drive(s)" that had been "recently copied in Missouri," and that "[a]fter further
    examination, it appears that these drives also contain highly private, non-responsive

21  documents."  Id.  As noted above, in subsequent conversations, Bryant's counsel

22  stated that there were three images of these additional drives, for a total of at least
    five hard drive images.  Letter dated April 6, 2007 from Michael Zeller to Douglas

23  Wickham, Zeller Dec., Exh. 21.

24  [23]  Id.
    [24]  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Zeller

25  Dec., Exh. 21.

26  [25]  Id.; Zeller Dec. ¶ 25.
    [26]  See Notice of Motion and Motion of Mattel, Inc. for an Order to Enforce

27  Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer

28  Hard Drive, dated April 10, 2007, Zeller Dec., Exh. 23.  EXHIBIT __3__

1    possession, and would now make it available to Mattel.[27]  Mattel imaged that drive,

2    and took its motion off calendar.[28]  Shortly after, Littler withdrew as counsel and

3    was replaced by Bryant's current counsel, Keker & Van Nest.[29]  Keker subsequently

4    produced the Laptop drive and the image.

5            Upon reviewing the drives, Mattel discovered that a software program

6    titled "Evidence Eliminator" had been installed and run on them.  Evidence

7    Eliminator purports to be a program designed to permanently destroy data to prevent

8    its use in legal proceedings:  "Evidence Eliminator ... the data destroyed is 'gone

9    forever' and it is impossible to create mirror images of defendants' hard drives ..."[30]

10   This meant that, although it is undisputed that Bryant used the Desktop from

11   October 21, 2000 to November 2003, data from 2000 – 2001 had been eliminated—

12   perhaps explaining why Littler had represented that (without explanation) only data

13   from 2002 to 2003 was present on the drive.

14                        **Destructive Testing on the Bratz Drawings**

15           This was not the first instance in which Mattel was aware of damage

16   done to evidence in this case while in the possession of Littler.  Indeed, Mattel

17   uncovered evidence that Littler engaged in destructive testing of the original Bratz

18   drawings without notice to the Court or Mattel.[31]

19

20

21   _____

22   [27]  Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller. Zeller
     Dec., Exh. 24.

23   [28]  Mattel, Inc.'s Notice of Withdrawal Without Prejudice of Motion for an Order

24   to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop
     Computer Hard Drive, Zeller Dec., Exh. 25.

25   [29]  Request for Approval of Substitution of Attorney, dated May 18, 2007, Zeller

26   Dec., Exh. 26.
     [30]  Zeller Dec. ¶ 30, Exh. 27.

27   [31]  Court's Order Denying Appointment of Expert Witnesses ("Expert Witnesses

28   Order"), dated August 11, 2006, at 4:19-7:3, Zeller Dec., Exh. 31.

07209/2325182.1

EXHIBIT ___3___

PAGE ___68___

-8-
MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON

1    Littler agreed to produce all of Bryant's original Bratz drawings at his

2    deposition in November 2004.[32] Despite these promises, Bryant brought only a few

3    of his original drawings to the deposition.[33] Some of these drawings had holes in

4    them, indicating that samples had been extracted for ink and/or paper chemical

5    dating analysis.[34] Bryant testified that his drawings did not have holes in them when

6    he turned them over to defendants' counsel and that he was unaware of the origin of

7    the holes.[35] Appearances notwithstanding, defendants' counsel at first denied that

8    anyone engaged in destructive sampling or analysis of Bryant's original drawings.[36]

9    Only after Mattel filed a motion asking the Court to appoint an expert witness did

10   defendants finally reverse course and admit that destructive sampling had been

11   performed on these documents.[37] In ruling on that motion, the Court recognized that

12   defendants' handling of these "critical documents" raises "serious questions . . .

13   [which cause] the Court much concern about whether the truth seeking functions of

14   the adversarial system have been fundamentally compromised in this case."[38]

15                    **Mattel Serves Subpoenas on Littler Mendelson**

16           Faced with Littler's contradictory statements about the hard drives, and

17   apparent spoliation of evidence with regard to the original Bratz drawings, Mattel

18   served a subpoena on Littler for documents,[39] and a second Rule 30(b)(6) subpoena

19

20

---

21   [32]  Zeller Dec., Exhs. 32 & 33.
22   [33]  Zeller Dec. ¶ 37.
     [34]  Zeller Dec. ¶ 38; Bryant Deposition at 459:13-460:16, Zeller Dec., Exh. 3.
23   [35]  Bryant Deposition at 460:2-16, Zeller Dec., Exh. 3.
24   [36]  Declaration of Keith Jacoby in support of Bryant's portion of Joint Stipulation
     Re: Mattel, Inc.'s Motion to Compel Inspection of Original Documents and
25   Tangible Things, filed February 18, 2005, ¶ 11, Zeller Dec., Exh. 34.
26   [37]  Declaration of Erich J. Speckin, dated July 21, 2006, ¶¶ 8, 13, Zeller Dec.,
     Exh. 35.
27   [38]  Expert Witnesses Order at 11:10-13, Zeller Dec., Exh. 31.
28   [39]  Zeller Dec., Exh. 28.                          EXHIBIT   3

1  to depose Littler.[40] These subpoenas sought information regarding the hard drive,

2  and preservation and destruction of other evidence in Littler's possession, including

3  destructive testing done on the original Bratz drawings.[41] Bryant objected, and the

4  parties engaged in a series of meet and confers on the topic. Bryant took the

5  position that he had no objection to production of documents, but that Littler had no

6  responsive, non-privileged documents in its possession.[42] Bryant refused to allow

7  the deposition, arguing that it was barred under Shelton v. Amer. Motors Corp., 805

8  F.2d 1323 (8th Cir. 1986).

9

10                            **Argument**

11  I.   **THE LITTLER DEPOSITION IS PROPER BECAUSE LITTLER HAS**

12      **NON-PRIVILEGED AND RELEVANT PERCIPIENT INFORMATION**

13      **REGARDING BRYANT'S COMPUTER DRIVES**

14        Bryant does not and cannot dispute that the information that would be

15  contained on Bryant's computer hard drives from 2000 onwards is probative of

16  Bryant's conduct during his transition from Mattel to MGA in 2000. As set forth

17  above, serious concerns have arisen as to whether proper steps were taken to

18  preserve evidence, particularly in relation to the 2000 – 2001 period on the Desktop

19  containing the "Evidence Eliminator" program. Data is missing and Mattel has no

20  explanation as to why it is missing. The handling of the computer hard drives is

21  therefore a proper subject of percipient witness testimony. This will not require any

22  impermissible intrusion into work product or attorney-client communications.

23        The non privileged information Mattel seeks is as follows:

24

25

26   _____

27  [40]  Zeller Dec., Exh. 29.
     [41]  Id.

28  [42]  Zeller Dec., Exh. 30.

EXHIBIT 3

PAGE 70

1    •    When and how Littler or its agents collected Bryant's computer
2         hard drives.
3    •    What was done with those drives once they were in Littler's
4         possession, including how those drives were stored, whether
5         evidence was preserved on backup images, and whether and
6         when such drives were reviewed.
7    •    Communications with third parties regarding collection and
8         preservation of evidence that were the subject of representations
9         made by Littler.
10   •    The facts regarding any other destruction of evidence, such as
11        destructive testing conducted on the original Bratz drawings.

12

13        Courts routinely find that such discovery targeted to issues of spoliation
14   and evidence collection and preservation are proper subjects of discovery. See, e.g.,
15   Rambus, Inc. v. Infineon Technologies AG, 222 F.R.D. 280, 299 (E.D. Va. 2004)
16   (granting motion to compel documents regarding spoliation); In re Automotive
17   Refinishing Paint Antitrust Litigation, 2006 WL 1479819, *6 (E.D. Pa.) (permitting
18   discovery regarding existence of evidence; "Defendants just want to know whether
19   Plaintiffs possess any such documents at all.  They are merely seeking to uncover
20   the factual basis for Plaintiffs' claims—the central purpose of discovery.").
21        In such cases, courts do not shield a witness with unique percipient
22   evidence simply because that witness is an attorney who has acted as counsel.
23   Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 559 (S.D.N.Y. 1994) ("[T]the
24   collection of evidence, without any creative or analytic input by an attorney or his
25   agent, does not qualify as work product."); In re Grand Jury Subpoenas dated March
26   9, 2001, 179 F. Supp. 2d 270, 284 (S.D.N.Y. 2001) (same).
27        Mattel expects that Littler will complain that it is being forced to
28   expose its litigation strategy.  Although it is true that Littler has made conflicting

-11-

EXHIBIT ___3___

PAGE ___71___

MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON

1  representations in the past two years regarding whether it had the Desktop, and

2  whether it contained relevant evidence, Littler's litigation strategy is not at issue.

3  Instead, Mattel seeks and is entitled to know how, whether and by whom evidence

4  has been handled or mishandled.  Littler played a key role in the handling of the

5  evidence which Mattel continues to seek.  There can be no dispute that Littler has

6  unique and percipient information regarding the preservation—or, apparently, the

7  destruction—of evidence concerning Bryant's activities at the very time during

8  which he transitioned from Mattel to MGA and that the District Court and the

9  Discovery Master have directly found to be relevant and indeed crucial.

10  **II.    THE SHELTON RULE DOES NOT APPLY IN THIS CASE**

11      **A.    Courts Have Often Rejected The Shelton Test As Inflexible**

12          Tellingly, as to the subpoena document requests on the same topics,

13  Bryant states that he has no objection to production.  Bryant's objects to the Littler

14  deposition based solely on the theory that Littler was at one time Bryant's intended

15  trial counsel.  In doing so, Bryant invokes out-of-circuit authority which is readily

16  distinguishable here.  Bryant relies upon Shelton v. Amer. Motors Corp., 805 F.2d

17  1323 (8th Cir. 1986) as the sole basis for refusing the deposition.  That case

18  established special rules in the Eighth Circuit designed to limit (but not bar)

19  depositions of opposing counsel.  The Shelton court stated that it wished to prevent

20  the practice of "simply depos[ing] opposing counsel in an attempt to identify the

21  information that opposing counsel has decided is relevant and important to his legal

22  theories and strategy." Id. at 1327.  It further noted a fear that opposing counsel

23  might use the practice to interfere with an attorney's preparation of the case or

24  otherwise harass.  Id.  The Shelton court therefore created a three-prong test before

25  allowing such a deposition:

26          We do not hold that opposing trial counsel is absolutely

27          immune from being deposed.  We recognize that

28          circumstances may arise in which the court should order

EXHIBIT 3

PAGE 72

1    the taking of opposing counsel's deposition.  But those

2    circumstances should be limited to where the party

3    seeking to take the deposition has shown that (1) no other

4    means exist to obtain the information than to depose

5    opposing counsel; (2) the information sought is relevant

6    and nonprivileged; and (3) the information is crucial to the

7    preparation of the case.

8    Id.

9         As a preliminary matter, Shelton has never been adopted in the Ninth

10   Circuit.  Several courts, including the Second Circuit, have rejected its test as overly

11   harsh, and chosen instead to apply more flexible rules.  See, e.g., In re Subpoena

12   Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting Shelton rule

13   and stating, "the standards set forth in Rule 26 require a flexible approach to lawyer

14   depositions whereby the judicial officer supervising discovery takes into

15   consideration all of the relevant facts and circumstances to determine whether the

16   proposed deposition would entail an inappropriate burden or hardship"); qad.inc v.

17   ALN Associates, Inc., 132 F.R.D. 492, 495 (N.D. Ill. 1990) ("[T]his Court

18   subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of

19   permitting the deposition to go forward, with any individualized objections to be

20   dealt with during its regular course."); Cook, Inc. v. C. R. Bard, Inc., 2003 WL

21   23009047, *1 (S.D. Ind. 2003) ("[T]he Court finds that it was not error for the

22   Magistrate Judge to decline to follow Shelton and permit the deposition of Mr.

23   Godlewski to proceed.").  For the reasons set forth below, Mattel submits that the

24   Shelton rationale does not have application to the deposition at issue here, and

25   should not be embraced by the Court.

26

27

28

EXHIBIT ___3___

PAGE ___73___

MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON

**B.**     <u>Shelton Does Not Apply to Bar the Deposition of Former Trial Counsel Such as Littler</u>

By its terms, <u>Shelton</u> is specifically limited to depositions of trial counsel and the harms that might arise therefrom. The core purpose of the <u>Shelton</u> test is to protect a party from a trial counsel deposition that might disclose strategies and otherwise harass and disrupt trial counsel. "The <u>Shelton</u> test was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." <u>Pamida, Inc. v. E.S. Originals, Inc.</u>, 281 F.3d 726, 730 (8th Cir. 2002). The Littler deposition poses no such danger here. Apart from the fact that Mattel will not be questioning Littler on litigation strategy, Littler has withdrawn as Bryant's counsel, and been replaced by Keker & Van Nest. Littler is no longer opposing counsel. The <u>Shelton</u> test should not be applied here. <u>See, e.g.</u>, <u>Calvin Klein Trademark Trust v. Wachner</u>, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000) (noting that counsel's role in litigation was "peripheral" and refusing to apply <u>Shelton</u> on that basis). Indeed, courts considering the issue have routinely permitted prior—as opposed to current—trial counsel to be deposed based on this distinction. <u>See, e.g.</u>, <u>Pamida, Inc.</u>, 281 F.3d at 730 (refusing to apply <u>Shelton</u> to bar deposition of counsel); <u>Nakash v. U.S. Dept. of Justice</u>, 128 F.R.D. 32, 34 (S.D.N.Y. 1989) ("[T]he major rationales in these cases—discouraging the depositions of opposing attorneys in a particular lawsuit to avoid unnecessary expense and interference with the attorney-client relationship—are not applicable here.").

For the same reasons, Littler is no longer preparing Bryant's case for trial. Accordingly, the concern that counsel will be distracted or unable to "devote his or her time and efforts to preparing the client's case" if faced with a deposition simply does not apply. <u>Shelton</u>, 805 F.2d at 1327. Nor could this have a chilling effect on future communications with Littler (<u>id.</u>) or lead to the disqualification of

EXHIBIT   <u>3</u>

74

MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON

1   counsel who may be called as witnesses.  <u>See</u> <u>Kaiser v. Mutual Life Ins. Co. of New</u>

2   <u>York</u>, 161 F.R.D. 378, 382 (S.D. Ind. 1994).

3   **III.   <u>EVEN IF ADOPTED HERE, SHELTON DOES NOT IMMUNIZE</u>**

4   **<u>COUNSEL FROM BEING DEPOSED</u>**

5           Even were <u>Shelton</u> to be followed and applied, Mattel should still be

6   permitted to proceed with the deposition.  <u>Shelton</u> permits such discovery where (1)

7   the information sought is relevant and non-privileged; (2) the information is crucial

8   to the preparation of the case; and (3) no other means exists to obtain the

9   information at issue than to conduct the deposition.

10          **A.   <u>The Information Mattel Seeks is Relevant and Non-Privileged</u>**

11          Mattel is seeking relevant and non-privileged information.  The

12  destruction of evidence, including from Bryant's hard drives, is referenced in

13  Mattel's answer and counterclaims in this case.[43]  In response, defendants

14  themselves have placed preservation of evidence and spoliation directly at issue in

15  this case also.[44]  There can be no dispute that inquiry on such topics seeks relevant

16

17

18  _____

19  [43]  Mattel, Inc.'s Second Amended Answer In Case No. 05-2727, dated July 12, 2007 (without exhibits), at ¶ 93(c), Zeller Dec., Exh. 36 ("Counter-defendants

20  MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of

21  the remaining members of the MGA Criminal Enterprise, did corruptly alter,

22  destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for

23  use in an official proceeding, including this action, including without limitation by . . . destroying electronic and other evidence, including by **destroying evidence**

24  **previously contained on Carter Bryant's and Isaac Larian's computer hard**

25  **drives.**") (emphasis added); <u>see also id.</u> at ¶ 53 (alleging that Machado destroyed his

26  Mattel hard drive to conceal evidence).

    [44]  <u>See</u> Order Denying Motion For Terminating Sanctions; Order Denying

27  Request For Interlocutory Appeal; Order Requiring Filing Of Affidavits Re

28  Evidence Preservation, dated August 29, 2007, Zeller Dec., Exh. 37.

EXHIBIT   3

PAGE   75

1 | information calculated to lead to the discovery of admissible evidence. <u>See</u> <u>Fed. R.</u>
2 | <u>Civ. Proc.</u> 26(b)(1).

3 |     Mattel therefore satisfies the first prong of the <u>Shelton</u> test.

4 |     **B.     The Information Mattel Seeks is Crucial**

5 |     Evidence demonstrating that Bryant worked on Bratz while employed
6 | by Mattel—or responding to defendants' arguments that he did not—is pivotal in
7 | this action.  The Littler deposition will target the extent to which and manner in
8 | which data from Bryant's own computers—including during critical times when
9 | Bryant began working with MGA—was preserved.  It also will seek information
10 | uniquely in Littler's possession about the handling of Bratz drawings that the
11 | District Court has found are key evidence when they were in Littler's possession.

12 |     **C.     There are No Other Means of Acquiring the Relevant Information**

13 |     There are no other means of acquiring the information at issue here.
14 | Only Littler knows what it has done with respect to the hard drives and the drawings
15 | while they were in its possession.  No other witness would have the same
16 | information.  For example, by its own account, Littler has communicated with third
17 | parties including Bryant's niece, in taking possession of the Desktop drive.  Littler
18 | arranged for and oversaw the imaging of the drives.

19 |     Mattel has exhausted other means of obtaining the evidence from
20 | Littler.  Mattel has already attempted to investigate through the use of a document
21 | subpoena on Littler, but no responsive documents have been produced.  In any
22 | event, by its nature, investigation of spoliation requires the ability to ask follow-up
23 | questions to ferret out the truth, something that interrogatories or other written
24 | discovery cannot offer.

25 |     Thus, even if the <u>Shelton</u> test were applied, Mattel has satisfied each
26 | prong of that test.

EXHIBIT 3

PAGE 76

07209/2325182.1

-16-

MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON

<u>**Conclusion**</u>

       For the foregoing reasons, Mattel respectfully requests that its motion be granted in its entirety.

DATED:  December 13, 2007      QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

                                By _____
                                     James J. Webster
                                     Attorneys for Mattel, Inc.

EXHIBIT _3_

PAGE _77_

07209/2325182.1

-17-

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 82 of 87 Page ID
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 82 of 87
#:46987

<strong><u>PROOF OF SERVICE</u></strong>

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On December 13, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON, P.C. PURSUANT TO SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

> John W. Keker
> Michael H. Page
> Christa M. Anderson
> **Keker & Van Nest, LLP**
> 710 Sansome Street
> San Francisco, CA 94111
> ***Attorneys for CARTER BRYANT***

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 13, 2007, at Los Angeles, California.

_____
NOW LEGAL -- Dave Quintana

EXHIBIT ___3___

PAGE ___78___

07209/2169461.1

**PROOF OF SERVICE**

1

2    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa

3    Street, 10th Floor, Los Angeles, California 90017-2543.

4    On December 13, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF LITTLER**

5    **MENDELSON, P.C. PURSUANT TO SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

6

7    Thomas J. Nolan                        Mark E. Overland, Esq.
     **Skadden, Arps, Slate, Meagher & Flom**      David E. Scheper, Esq.

8    **LLP**                                Alexander H. Cote, Esq.
     300 South Grand Ave., Ste. 3400        **Overland Borenstein Scheper & Kim,**

9    Los Angeles, California 90071          **LLP**
     *Attorneys for MGA ENTERTAINMENT,*     300 South Grand Avenue

10   *INC.*                                 Suite 2750
                                            Los Angeles, CA 90071-3144

11                                          *Attorneys for Carlos Gustavo Machado*

12

13   **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with

14   postage thereon fully prepaid.

15       I declare that I am employed in the office of a member of the bar of this Court at whose

16   direction the service was made.

17       Executed on December 13, 2007, at Los Angeles, California.

18

19                                          _____
                                            Yalonda J. Dekle

20

21

22

23

24

25

26

27

28

EXHIBIT  3

PAGE  79

Case 2:04-cv-09049-SGL-RNB  Document 2760-2  Filed 03/24/2008  Page 84 of 87

**EXHIBIT 4**

Case 2:04-cv-09049-DOC-RNB Document 3865-3 Filed 02/28/08 Page 85 of 87 Page ID #:46990
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 85 of 87
Case 2:04-cv-09049-SGL-RNB Document 2362 Filed 02/27/2008 Page 1 of 3

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11 | CARTER BRYANT, an individual,  | CASE NO. CV 04-9049 SGL (RNBx)
   |                                 | Consolidated with
12 |              Plaintiff,         | Case Nos. CV 04-09059 & CV 05-2727
   |                                 |
13 |        vs.                      |
   |                                 | [PROPOSED] ORDER GRANTING
14 | MATTEL, INC., a Delaware        | MATTEL, INC.'S MOTION OBJECTING
   | corporation,                    | TO PORTIONS OF DISCOVERY
15 |                                 | MASTER'S DECEMBER 31, 2007 ORDER
   |              Defendant.         | REGARDING HARD DRIVES
16 |                                 |
17 | AND CONSOLIDATED ACTIONS        | Phase 1
   |                                 | Discovery Cut-Off:   January 28, 2008
18 |                                 | Pre-Trial Conference: May 5, 2008
   |                                 | Trial Date:          May 27, 2008
19
20
21
22
23
24
25
26
27                          EXHIBIT ___4___
28                          PAGE ___80___

07209/2414052.3

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 86 of 87 Page ID
#:46991
Case 2:04-cv-09049-SGL-RNB Document 2760-2 Filed 03/24/2008 Page 86 of 87

Case 2:04-cv-09049-SGL-RNB      Document 2362      Filed 02/27/2008      Page 2 of 3

1                             [~~PROPOSED~~] ORDER

2

3               Having considered Mattel, Inc.'s Motion Objecting To Portions Of

4 Discovery Master's December 31, 2007 Order Regarding Hard Drives and all

5 supporting papers, all papers submitted in opposition to the Motion, and having

6 considered the arguments of counsel, the Court finds good cause to grant the Motion

7 and to overrule in part the Discovery Master's Order Granting in Part and Denying

8 in Part Mattel's Motion to Compel Production of Documents by Isaac Larian;

9 Denying Request for Sanctions, dated December 31, 2007, as to Request Nos. 222

10 and 225:

11               IT IS HEREBY ORDERED THAT the Discovery Master's Order is

12 overruled as to Request Nos. 222 and 225.  Destruction of electronic evidence on

13 hard drives is relevant to Mattel's claims, including specific predicate acts alleged in

14 Mattel's RICO counterclaims.  The Discovery Master's Order denying such evidence

15 to Mattel was clearly erroneous and contrary to law.

16               IT IS FURTHER ORDERED THAT Isaac Larian shall make available

17 within ten (10) calendar days the following hard drives that are in his possession,

18 custody, or control for inspection and copying:

19        1.     All hard drives from, or that were at any time connected to, any

20                 computer used by either Isaac Larian or Carter Bryant at any time from

21                 1999 to the present and that contain or previously contained any digital

22                 information referring or relating to Bratz, Angel, MGA or Bryant (as

23                 those terms are defined in Mattel's Requests).

24 A consultant of Mattel's choosing, who Mattel will identify before the inspection,

25 shall be allowed to inspect each of the hard drives produced.  Mattel's consultant

26 shall be allowed to make a forensically sound image of each hard drive produced.

27 The inspection may take place at a location of Larian's choosing in this District, so

28 long as the location has the minimum requirements necessary to inspect and create a

07209/2414052.3

-2-

[PROPOSED] ORDER GRANTING MATTEL'S MOTION OBJECTING TO DECEMBER 31, 2007 ORDER RE
HARD DRIVES

EXHIBIT ___4___

PAGE ___81___

Case 2:04-cv-09049-DOC-RNB Document 2865-3 Filed 03/28/08 Page 87 of 87 Page ID
#:46992
Case 2:04-cv-09049-SGL-RNB Document 2362 Filed 02/27/2008 Page 3 of 3

1   forensically sound image of the produced hard drives.  A consultant of Larian's

2   choosing, who Larian will identify before the inspection, shall be allowed to observe

3   the inspection and imaging of the hard drives.

4           IT IS FURTHER ORDERED THAT Mattel's consultant shall have the

5   right to inspect any and all information on said hard drives to determine:

6           (a)     whether, when and by whom any information was deleted,

7   destroyed, written over, lost, exported, moved, spoliated or otherwise rendered

8   inaccessible or unreadable;

9           (b)     whether, when and by whom any attempts were made to delete,

10  destroy, write over, export, move, spoliate or otherwise render inaccessible or

11  unreadable any information on those hard drives;

12          (c)     the current or past presence or use of any hardware or software

13  tool to accomplish any of the actions identified above;

14          (d)     whether any information deleted, destroyed, written over, lost,

15  exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be

16  recovered; and

17          (e)     to recover any such information, in whole or in part.

18

19  DATED:      2/27          , 2008

20                                          Hon. Stephen G. Larson
                                            United States District Judge

21

22

23

24

25

26

27

28
                                            EXHIBIT  4

07209/2414052.3
                                   -3-      PAGE  82
        [PROPOSED] ORDER GRANTING MATTEL'S MOTION OBJECTING TO DECEMBER 31, 2007 ORDER RE
                                                                              HARD DRIVES