QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO MGA AND CARTER BRYANT'S MOTION FOR AN EVIDENTIARY HEARING REGARDING WITNESS TAMPERING** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

[Declaration of Cyrus S. Naim filed concurrently herewith]

Hearing Date:   April 14, 2008
Time:                10:00 a.m.
Court Room:    Courtroom 1

**Phase I**
Discovery Cut-off:        January 28, 2008
Pre-trial Conference:    May 5, 2008
Trial Date:                     May 27, 2008

1

# <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3

4
PRELIMINARY STATEMENT ................................................................................ 1

5
FACTUAL BACKGROUND................................................................................ 2

6
ARGUMENT........................................................................................................ 7

7
I.      DEFENDANTS SEEK SANCTIONS WHEN NO MISCONDUCT
8
        HAS BEEN ESTABLISHED.................................................................... 7

9
II.     EVEN BY DEFENDANTS' ACCOUNT, NONE OF MATTEL'S
        ACTIONS COULD CONSTITUTE WITNESS TAMPERING
10
        UNDER 18 U.S.C. § 1512 ........................................................................ 8

11
        A.      Alleged Failure to Provide An Interpreter Is Not Witness
                Tampering ....................................................................................... 12

12
        B.      Accepting Evidence Voluntarily Provided By An Employee Is
13
                Not Witness Tampering .................................................................. 13

14
        C.      Referring to Marlow's Deposition Testimony During The
                Interviews Does Not Constitute Witness Tampering ......................... 15

15
        D.      Representing That Marlow Acted In Her Own Self Interest—
16
                When She Most Surely Did—Does Not Constitute Witness
                Tampering ....................................................................................... 16

17
        E.      Close Questioning on the Employees' Contributions to Bratz
18
                Does Not Constitute Witness Tampering. ....................................... 16

19
        F.      Speculation As To Whether A Decision Had Already Been Made
                To Terminate The Employees At The Times Of Their Interviews
20
                Is Not Evidence Of Witness Tampering ......................................... 17

21
        G.      Informing The Employees That This Was "███████████
                ███████" And A "████████" Does Not Constitute Witness
22
                Tampering ....................................................................................... 17

23
III.    THERE IS NO BASIS TO SANCTION MATTEL ................................. 18

24
IV.     THE REAL PURPOSE OF THIS MOTION IS TO DELAY
        DEPOSITIONS WHICH THIS COURT AND THE DISCOVERY
25
        MASTER HAVE ALREADY ORDERED ................................................ 20

26
CONCLUSION.................................................................................................... 23

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4

5

<u>Bollow v. Federal Reserve Bank of San Francisco,</u>
650 F.2d 1093 (9th Cir. 1981) .................................................................. 19

6

<u>Gonzales v. Superior Court,</u>
189 Cal. App. 3d 1542 (Cal. Ct. App. 1987) ............................................ 7

7

8

<u>Harmston v. City and County of San Francisco,</u>
No. C 07-01186 SI, 2007 WL 3306526 (N.D. Cal. 2007) ....................... 11

9

<u>Mack University LLC v. Halstead,</u>
No. CV 07-393 DOC (ANx), 2007 WL 4458823 (C.D. Cal. 2007) ........... 19

10

11

<u>Medical Billing, Inc. v. Medical Management Sciences, Inc.,</u>
169 F.R.D. 325 (N.D. Ohio 1996) ........................................................... 12

12

<u>Quela v. Payco-General American Creditas, Inc.,</u>
No. 99-C-1904, 2000 WL 656681 (N.D. Ill. 2000) ........................... 10, 19

13

14

<u>Religious Technology Center v. Scott,</u>
1996 WL 171443 (9th Cir. 1996) ........................................................... 11

15

<u>Rohn v. United States,</u>
2002 WL 32123927 (E.D. Cal.  2002) ...................................................... 9

16

17

<u>Schlaifer Nance & Co., Inc. v. Estate of Warhol,</u>
194 F.3d 323 (2d Cir. 1999) .................................................................... 12

18

<u>Synergetics, Inc. v. Hurst,</u>
2007 WL 2422871 (E.D. Mo. 2007) ...................................................... 10

19

20

<u>TRW v. Superior Court,</u>
25 Cal. App. 4th 1834, 31 Cal. Rptr. 2d 460 (1994) ............................... 12

21

<u>Wyle v. R.J. Reynolds Industries, Inc.,</u>
709 F.2d 585 (9th Cir. 1983) .................................................................. 11

22

23

<u>Young v. Office of U.S. Senate Sergeant at Arms,</u>
217 F.R.D. 61 (D.D.C. 2003) ............................................................. 9, 19

24

## <u>Statutes</u>

25

18 U.S.C. § 1512 ................................................................................ 9, 23

26

18 U.S.C. § 1512(a) ................................................................................. 9

27

18 U.S.C. § 1512(c) ................................................................................. 9

28

18 U.S.C. § 1512(e) ................................................................................. 9

1

**<u>Preliminary Statement</u>**

2       It is ironic that defendants, who have often accused Mattel of "scorched earth

3  tactics,"[1] would bring this meritless motion accusing Mattel of criminal conduct.  By

4  any definition, there has been no witness tampering here.  The interviews in

5  question were recorded, and defendants have copies of the audio tapes.  That they

6  did not provide them to the Court with their motion says it all.  Mattel submits the

7  audio tapes with this response and the Court can hear for itself what transpired.

8       On December 28, 2007, Mattel learned for the first time that three of its

9  sample maker employees, including two who were still providing services to Mattel

10  at the time, had secretly worked on Bratz products for years, notwithstanding

11  Mattel's contracts and policies clearly prohibiting such competitive employment.

12  Mattel's Security and Human Relations Department interviewed the two who were

13  still working at Mattel -- Ana Cabrera and Beatriz Morales.  Each of them admitted

14  that they had worked on Bratz, and had used false names, false social security

15  numbers, and cash payments to avoid detection.  The interviews were recorded, with

16  the consent of Ms. Cabrera and Ms. Morales, to ensure that there was no dispute as

17  to what transpired.  Thereafter, Mattel noticed their depositions.

18       Defendants have not identified any conduct that even approximates witness

19  tampering.  Mattel has never sought anything other than the truth from its

20  employees.  It did not threaten its employees with jail; quite the contrary, it

21  reassured them that they would not go to prison.  It did not deny requests for

22  interpreters; no such requests were made, because both the witnesses involved are

23  fluent in English, and in any event, there is simply no authority to support the

24  argument that conducting an internal investigation in English is witness tampering.

25  _____

26       [1]  <u>See, e.g.</u>, Jason W. Armstrong, <u>Barbie Lawyer Tries to Remove Bratz</u>

27  <u>Counsel</u>, Daily Journal, March 24, 2008 (quoting counsel for MGA as stating that

      (footnote continued)

28

It did not seize personal property without consent; the recording of the interview makes clear that the items received by Mattel investigators were provided voluntarily.  All Ms. Cabrera's personal property was returned.  Nor, in any event, does the taking of boxes does not constitute witness tampering.

In fact, this motion offers no evidence from either Ana Cabrera or Beatriz Morales to suggest that their statements and admissions resulted from any "tampering."   Their own attorney has never taken the position that anything they said in the interviews was untrue.  The defendants do not point to a single statement by either witness in their interviews that they claim was inaccurate.

Defendants' real purpose behind this motion is clear: to delay for as long as possible the depositions of these witnesses, whose existence they concealed throughout discovery in defiance of Court Orders compelling them to disclose it. This Motion is the <u>third</u> time the MGA defendants have raised precisely the same issues in an effort to block depositions noticed more than two months ago. Defendants' attempts to delay have thus far been successful.  They should end here.

## **Factual Background**

MGA and Bryant long hid the involvement of Cabrera, Morales and Maria Salazar in the development of Bratz.  Throughout discovery, Mattel repeatedly asked Carter Bryant and the MGA defendants to identify any current or former Mattel employees who worked on Bratz while employed by Mattel.[2]  Despite his having worked with Cabrera on numerous projects while he was at Mattel, Carter

_____

motion was "another example of Mattel's scorched earth litigation style"), attached as Exhibit 30 to the Declaration of Cyrus S. Naim, filed concurrently ("Naim Dec.").

[2]   <u>See e.g.</u>, Transcript of the Deposition of Carter Bryant dated November 4, 2004, and November 5, 2004 ("Bryant Depo. Tr."), at 286:25-287:5, Naim Dec., Exh. 4; Transcript of the Deposition of Lisa  Tonnu dated September 24, 2007 ("Tonnu Depo. Tr."), at 301:2-17, Naim Dec., Exh. 5; MGA's Supplemental Responses to Mattel's Revised Third Set of Interrogatories, dated November 30, 2007, at 64-70, Naim Dec., Exh. 6.

Bryant denied knowing of any other person who worked on Bratz while employed by Mattel.[3]  MGA's Rule 30(b)(6) designee on this topic, Lisa Tonnu, identified no one either.[4]  MGA's interrogatory responses did not identify Ms. Cabrera or Ms. Morales as ever having worked on Bratz at all, and claimed that Ms. Salazar did not work on Bratz until more than two years after she left Mattel.[5]  MGA made that denial even though it had documents (belatedly produced to Mattel) showing that Salazar was working on Bratz while still employed by Mattel in 2001.[6]  It was not until the December 28, 2007 deposition of MGA's agent, Veronica Marlow,[7] that Mattel learned that three of its sample makers—Cabrera, Morales, and Salazar—had been secretly working on Bratz for years.[8]

Mattel was closed for its annual holiday break at the time.  Shortly after reopening, two Mattel employees, one from Human Resources and another from Security, interviewed Ms. Cabrera and Ms. Morales.  Ms. Cabrera admitted to working on more than *70* Bratz products while a Mattel employee; Ms. Morales admitted to working on *50*.[9]  Both admitted knowing this was wrong.[10]  Both

---

[3]  Bryant Depo. Tr. at 286:25-287:5, Naim Dec., Exh. 4.

[4]  Tonnu Depo. Tr. at 301:2-17, Naim Dec., Exh. 5.

[5]  MGA's Supplemental Responses to Mattel's Revised Third Set of Interrogatories at 64-70, Naim Dec., Exh. 6.

[6]  Application for Employment of Maria Elena Salazar to MGA, dated March 6, 2003, at p. 2 (Noting work for Veronica Marlow from 2001 to 2005 on "first patterns for Brat doll"), Naim Dec., Exh. 7.

[7]  Veronica Marlow was employed by Mattel from 1996 to approximately 1999, and worked on Bratz for MGA through 2005.  According to Marlow and Carter Bryant, Marlow introduced Bryant to MGA, was present at his first Bratz pitch to MGA, and has received millions of dollars from defendants as a finder's fee. Deposition Transcript of Veronica Marlow, dated December 28, 2007 ("Marlow Depo. Tr.") at 37:14-18, 106:11-14, 107:22-108:4, 113:10-114:3, 115:10-122:3, Naim Dec., Exh. 3; Bryant Depo. Tr. at 157:19-158:3, Naim Dec., Exh. 4.

[8]  Marlow Depo. Tr. at 306:14-308:1, 363:15-365:17, Naim Dec., Exh. 3.

[9]  Naim Dec., ¶¶ 12, 14.

specifically acknowledged that they continued to work on Bratz even after Mattel had made them aware of this litigation involving Bryant's secret work with MGA and reiterated the need to protect Mattel's intellectual property.[11]  Both admitted that they tried to hide their tracks by receiving cash payments under false names and false social security numbers.[12]  Ms. Cabrera alone received in excess of $100,000.[13]  Given the seriousness of their violations of Mattel's rules, Mattel had no choice but to terminate their employment.[14]

During the interviews, Ms. Cabrera voluntarily provided Mattel with various materials and documents.[15]  The materials included torn-up drawings and fashion patterns for Bratz, which Cabrera claims were given to her by Veronica Marlow.[16]  The inspection of those materials was videotaped and photographed by Mattel, and the boxes containing the materials were then sealed.  When Ms. Cabrera's employment was terminated, she retained her own counsel, Maria Diaz.  At Ms. Cabrera's husband's request, Mattel returned all of Ms. Cabrera's personal

---

[10]   Transcript of interview of Ana Cabrera, dated January 2, 2008 ("Cabrera Tr.") at 117:10-118:8, Naim Dec., Exh. 8; Transcript of interview of Beatriz Morales, dated January 14, 2008 ("Morales Tr.") at 24:14-25:14, 27:11-17, Naim Dec., Exh. 9.

[11]   Cabrera Tr. at 39:25-40:20, 46:3-22, Naim Dec., Exh. 8; Morales Tr. at 24:14-25:14, 27:11-17, 31:12-32:12, Naim Dec., Exh. 9.

[12]   Cabrera Tr. at 118:3-119:23, Naim Dec., Exh. 8; Morales Tr. at 115:2-20, Naim Dec., Exh. 9.

[13]   Naim Dec., ¶ 13.

[14]   At the time their relationships with Mattel were terminated, Ms. Cabrera was a regular full time employee; Ms. Morales was an agency employee.

[15]   To Mattel's knowledge, Ms. Cabrera did not provide Mattel with any of her "sewing supplies," Motion 1:15-16, but instead items specifically provided to her by Veronica Marlow for her work on Bratz.  The Motion does not provide any evidentiary support for the claim that she did, nor for the claim that Ms. Cabrera made "explicit protests" when she provided the materials to Mattel. Id.

[16]   Cabrera Tr., 109:16-110:25, Naim Dec., Exh. 8.

belongings from her workspace.[17]  Mattel also produced copies of the transcript and tapes of the interviews of Cabrera and Morales, and provided counsel for these employees with copies as well.[18]  In addition, Mattel provided opposing counsel in this action with a copy of the videotaped inspection of the (subsequently sealed) boxes,[19] and invited Ms. Diaz—as well as counsel for each of the parties in this action and counsel for Ms. Marlow—to indicate whether any of their clients intended to assert any interest in the materials or documents contained in the boxes.[20]

On behalf of Cabrera, Ms. Diaz asserted that she was reserving her rights as to all the materials in the boxes, but did not ask for them to be returned, because she stated that she did not want to impede discovery in this action.[21]  Marlow's counsel remained silent as to whether any of the materials were hers.  Mattel invited all

---

[17]  Facsimile from James J. Webster to Maria G. Diaz, dated January 23, 2008, Naim Dec., Exh. 10; facsimile from James J. Webster to Thomas Nolan, Maria Diaz, Larry McFarland, and Michael Page, dated February 6, 2008, Naim Dec., Exh. 11.

[18]  Naim Dec., ¶ 2; letter dated February 8, 2008, from James Webster to Ramit Mizrahi, Naim Dec., Exh. 12.

[19]  This was produced at Bates number M 0262583.  Naim Dec., ¶ 2.

[20]  Facsimile from James J. Webster to Thomas Nolan, Maria Diaz, Larry McFarland, and Michael Page, dated February 6, 2008, Naim Dec., Exh. 11.

[21]  Facsimile from Maria Diaz to James J. Webster, dated March 10, 2008, Naim Dec., Exh. 13.  Nevertheless, Ms. Diaz has demanded that Mattel not produce a copy of the timesheets Cabrera provided to Mattel, which reflect the use of false names and social security numbers, without first redacting those social security numbers.  Facsimile from Maria Diaz to James Webster, dated March 19, 2008, and sent at 10:55 a.m., Naim Dec., Exh. 14.  Mattel returned the originals of those documents to Cabrera's counsel on March 3, 2008.  Naim Dec., ¶ 4.  Mattel intends to seek the guidance of the Discovery Master as to how these timesheets should be handled in discovery, given that Ms. Cabrera wishes to redact the very information demonstrating the use of false social security numbers, a very important fact for the Court and jury to know in this case.

1  interested parties to attend the unsealing of the boxes.[22]  That inspection took place

2  on March 3, 2008.  Counsel for Ms. Cabrera, MGA, and Ms. Marlow were present.[23]

3      Mattel also served deposition subpoenas on Ms. Cabrera and Ms. Morales on

4  January 16, 2008 and on Ms. Salazar on January 22, 2008.[24]  On January 23, 2008,

5  on the eve of Cabrera's scheduled deposition, Mattel received a letter from Ms. Diaz

6  stating that neither Cabrera nor Morales would appear for their depositions.[25]  Since

7  that time, Mattel has been continuously rebuffed by the defendants in its efforts to

8  take these critical depositions.  Both in proceedings in this Court and in front of the

9  Discovery Master, MGA and Bryant have sought to block these depositions on the

10 very same grounds alleged here.  This Court ordered the parties to "go forward."[26]

11 The Discovery Master has ordered the depositions to proceed.  But despite Mattel's

12 written requests on March 13, 2008 and March 25, 2008, counsel for Ms. Salazar

13 initially failed to provide any proposed dates for deposition.[27]  On March 26, 2008,

14 MGA filed an appeal of the Discovery Master's order denying its motion to quash

15 these depositions, repeating the claims it made before this Court and before Judge

16 Infante for the <u>fourth</u> time.[28]

17

18

19

_____

20 [22]  Facsimile from James J. Webster to Maria Diaz, Thomas J. Nolan, Alexander

21 H. Cote, and Michael H. Page, dated February 19, 2008, Naim Dec., Exh. 15.
   [23]  Naim Dec., ¶ 3.

22 [24]  Naim Dec., Exhs. 16, 17, 18.
   [25]  Facsimile from Maria Diaz to James Webster dated January 23, 2008, Naim

23 Dec., Exh. 19.

24 [26]  February 11, 2008 Hearing Tr. at 16:5-17:6, Naim Dec., Exh. 25.

25 [27]  Email from Marcus Mumford to James J. Webster, dated March 25, 2008, at

26 5:32 p.m. (stating that MGA's motion to set aside the March 11, 2008 Order "moots" the depositions of Ms. Salazar, Ms. Cabrera, and Ms. Morales), Naim Dec., Exh. 27.

27 [28]  MGA Defendants' Notice of Motion and Motion Objecting to Portions of Discovery Master's March 11, 2008 Order Re Motion to Quash Deposition

28 Subpoenas, dated March 25, 2008, Naim Dec., Exh. 31.

Counsel for Ms. Cabrera and Ms. Morales has stated that the earliest they could appear for deposition is mid-April.[29]   Though Mattel has agreed to these dates subject to a stipulation and order requiring they go forward on that date,[30] counsel for MGA has argued that its appeal of the March 11, 2008 Order "moots" any basis for deposing these witnesses until its appeal is heard.[31]

## ARGUMENT

## I.   DEFENDANTS SEEK SANCTIONS WHEN NO MISCONDUCT HAS BEEN ESTABLISHED.

As a preliminary matter, defendants' motion should be rejected in its entirety because it seeks a hearing solely to determine what sanctions should be imposed on Mattel, when no wrongdoing has been or could be established.  The scope of a motion is governed by the movant's statement of the relief sought in the notice of motion.  See L.R. 7-4 ("The notice of motion shall contain a concise statement of the relief or Court action the movant seeks."); cf. Cal. R. Ct. 3.1110 ("A notice of motion must state in the opening paragraph the nature of the order being sought and the grounds for issuance of the order."); Gonzales v. Superior Court, 189 Cal. App. 3d 1542, 1545 (Cal. Ct. App. 1987) ("Only the grounds specified in the notice of motion may be considered by the trial court.").  Defendants' notice of motion states the relief they seek by this motion.  It states that they seek "an evidentiary

---

[29]   Facsimile from Maria Diaz to James Webster, dated March 21, 2008, Naim Dec., Exh. 28.

[30]   Facsimile from James J. Webster to Maria Diaz, Marcus Mumford, and Michael H. Page, dated March 25, 2008, Naim Dec., Exh. 32.

[31]   Email from Marcus Mumford to James J. Webster, dated March 25, 2008, at 5:32 p.m., Naim Dec., Exh. 27.

hearing regarding Mattel's *ex parte* interrogations of Ana Isabel Cabrera and Beatriz Morales to determine <u>what sanctions are appropriate</u> against Mattel, Inc. and its agents for witness tampering."  Notice of Motion at 1 (emphasis added).

Defendants thus assume their own conclusion.  They seek a hearing to determine what sanctions are appropriate for witness tampering when the Court has never made a determination that there was any tampering.  To the contrary, in ruling in Mattel's favor on its ex parte motion to proceed with these depositions, the Court stated that there were "two sides to th[e] story," that there was "no need to resolve that at this point," and invited the parties to move on.[32]  Defendants nevertheless then moved to quash these depositions before Judge Infante, again alleging witness tampering, and Judge Infante denied their motion and ordered the depositions to be taken.  Defendants now seek an evidentiary hearing to determine sanctions for witness tampering, but witness tampering has not been established.  Their motion therefore is premature at best, and seeks relief that is not available.  It should be denied for that reason alone.

## II.   EVEN BY DEFENDANTS' ACCOUNT, NONE OF MATTEL'S ACTIONS COULD CONSTITUTE WITNESS TAMPERING UNDER 18 U.S.C. § 1512

Even if defendants' motion had sought a determination that witness tampering occurred, rather than simply assuming it, the motion would still fail.  There has been

---

[32]   February 11, 2008 Hearing Tr. at 16:5-17:6 (emphasis added), Naim Dec., Exh. 25.

no witness tampering here.  Witness tampering is a federal crime under 18 U.S.C. § 1512.  The broadest portions of that statute[33] define witness tampering as:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to –
>
> > (1) influence, delay, or prevent the testimony of any person in an official proceeding….
>
> (d) Whoever intentionally harasses another person and thereby hinders, delays, prevents or dissuades any person from –
>
> > (1) attending or testifying in an official proceeding.[34]

Neither the words of the statute, nor a single case cited by MGA in its motion, provide any basis for concluding that a legitimate internal investigation by an employer which aimed at, and did, uncover the truth about employee misconduct amounts to "witness tampering."

In their Motion, MGA and Bryant cite cases in which witnesses were <u>coerced</u> either to provide false testimony, or to not testify at all.  Motion at 6-7.  In <u>Young</u>, the plaintiff sought to bribe a witness with $50,000 to falsely testify.  <u>Young v. Office of U.S. Senate Sergeant at Arms</u>, 217 F.R.D. 61, 68 (D.D.C. 2003).  In <u>Rohn</u>, a potential witness was induced not to testify by soliciting a boycott of her business by county residents.  <u>Rohn v. United States</u>, 2002 WL 32123927, *2 (E.D. Cal.

---

[33]   Other portions of the statute involve the use of murder or physical force (18 U.S.C. § 1512(a)) and destruction of evidence (18 U.S.C. § 1512(c)).

[34]   The statute also provides: "In a prosecution under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct
    (footnote continued)

2002).  In <u>Quela</u>, false testimony at a deposition was actually elicited and false written statements were obtained.  In that case, involving charges of sexual harassment, the supervisor who obtained the false statements was the very person who had responsibility within the corporation to prevent the alleged sexual harassment.  <u>Quela v. Payco-General American Creditas, Inc.</u>, No. 99-C-1904, 2000 WL 656681, *4 (N.D. Ill. 2000).  In <u>Synergetics</u>, the plaintiff wrongfully conditioned the settlement of a separate lawsuit on a witness for the defense not testifying at trial.  <u>Synergetics, Inc. v. Hurst</u>, 2007 WL 2422871, *5 (E.D. Mo. 2007).

Here, after receiving information of employee misconduct, Mattel conducted an employee investigation.  The supposed "coercion" was to refer to the testimony of Marlow when confronting these employees with their wrongdoing.[35]  Nowhere in the Motion is there any suggestion of what "false testimony" could possibly result from referring the employees to the testimony of their former colleague.  The employees then confirmed Marlow's testimony that they had been secretly working on Bratz while employed by Mattel.  Defendants do not dispute that the admissions are truthful. [36]  Mattel recorded the interviews with consent, to ensure there was no second-guessing as to what transpired.

---

and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully." 18 USC § 1512(e).

[35]   It should be noted that the Motion is unsupported by any evidence apart from the transcripts of the interviews. Neither Cabrera nor Morales offer any evidence regarding the alleged "tampering." As a result, MGA's representations as to what occurred during the investigation—apart from during the recorded interviews is conjecture, and false conjecture at that.  For example, there is no support for the claim that during the review of materials at her home, Cabrera made "explicit protest" regarding providing Mattel with those materials.  Motion at 1:13-15.

[36]   The Motion misleadingly states that "she [Cabrera] was interrogated for at least two days."  Motion at 2:9-10.  In fact, the interview took place over the course of two days but lasted for approximately 50 minutes on the second day.  Naim Dec.,
(footnote continued)

MATTEL'S OPPO TO MGA & BRYANT'S MOTION FOR EVID HRG REGARDING WITNESS TAMPERING

1    Unable to dispute that wrongdoing was truthfully admitted, the Motion

2 misleadingly argues that "Mattel claims that some of the work [Cabrera] did was

3 related to Bratz." (Motion at 2:6-7.)  But this is not simply a "claim" made by

4 Mattel; *both Cabrera and Marlow admitted just that*.  And, *their own timesheets*

5 *show that work was done on many Bratz products*.[37]  Similarly, the Motion argues

6 that Cabrera merely "took on work for a third party contractor at nighttimes and

7 during weekends to make extra money." (Motion 2:5- 6.)   But this was no

8 anonymous, unrelated third party contractor; the work was for MGA's Bratz product

9 line, managed by Marlow, in direct competition with Mattel, as Marlow herself has

10 now admitted under oath.[38]

11    The cases cited by MGA and Bryant in which hearings were held on

12 allegations of misconduct by one of the parties do not involve allegations even

13 remotely similar to those raised here.  (Motion at 7.)  Wyle concerns the withholding

14 of essential documentary evidence which undermined the core allegations in an

15 antitrust plaintiff's claim; the case was accordingly dismissed.  Wyle v. R.J.

16 Reynolds Industries, Inc., 709 F.2d 585, 590-591 (9th Cir. 1983).  Likewise,

17 Religious Tech (an unpublished opinion) concerns a litigant's ongoing and

18 systematic failure to comply with discovery orders, again resulting in dismissal.

19 Religious Technology Center v. Scott, 1996 WL 171443, *3 (9th Cir. 1996).

20 Similarly, neither Harmston, Schaifler, nor Med. Billing Inc., the remaining cases

21 relied upon by MGA and Bryant, has anything to do with witness tampering.  See

22 Harmston v. City and County of San Francisco, No. C 07-01186 SI, 2007 WL

23 3306526, *6 (N.D. Cal. 2007) (violation of protective order by placing confidential

24 _____

25 ¶ 13, Exh. 33.  This time included the slow process of reviewing with Ms. Cabrera

26 each time-sheet and payment receipt she provided to Mattel on that day.

27 [37]  E.g., time sheet for work done by Ana Cabrera from October 27, 2001, to November 3, 2001, Naim Dec., Exh. 29.

28 [38]  Marlow Depo. Tr. at 306:14-308:1, Naim Dec., Exh. 3.

deposition testimony on internet, and providing to television stations); <u>Schlaifer Nance & Co., Inc. v. Estate of Warhol</u>, 194 F.3d 323, (2d Cir. 1999) (overruling issuance of sanctions where attorneys were accused of abusive litigation practices, including incurring excessive legal fees in an attempt to recover them as punitive damages); <u>Medical Billing, Inc. v. Medical Management Sciences, Inc.</u>, 169 F.R.D. 325, 330 (N.D. Ohio 1996) (intentionally altering and belatedly producing relevant documents).

In sum, Mattel is not alleged to have engaged in <u>any</u> conduct that could constitute witness tampering.  Mattel nevertheless now responds to defendants' arguments concerning each of the specific acts with which defendants take issue.[39]

## A.    <u>Alleged Failure to Provide An Interpreter Is Not Witness Tampering</u>

MGA attacks Mattel for conducting these interviews in English and claims—without citation—that there were "repeated requests" for an interpreter.  Motion at 1, 3 n.15.[40]  There were no such "repeated requests."  The audiotape of the interviews is the best evidence to refute this claim.  Mattel has provided a copy of

_____

[39]   Indeed, the Motion quietly changes course at the end, asserting that Mattel engaged in an "attempt to tamper" (Motion 10:3-4) rather than in witness tampering.

[40]   MGA has apparently withdrawn its argument, made twice already to the Court, that Mattel's interviews were conducted "without counsel present" and without advising the employees of "any rights they may have had to refuse to answer the company's questions."  MGA was unable to cite any authority that employees are so entitled to counsel.  There is no such authority.  An employee is not entitled to "remain silent" simply because an issue arises that could result in their termination.  In the workplace, employees have no Fifth Amendment rights, and no right to counsel, absent government action.  <u>E.g.</u>, <u>TRW v. Superior Court</u>, 25 Cal. App. 4th 1834, 1847, 31 Cal. Rptr. 2d 460 (1994) (rejecting application of
(footnote continued)

1   the audiotape to counsel, and in order to address any doubt, a copy is being made

2   available to the Court (by Mattel, not MGA).[41]  Ms. Cabrera and Ms. Morales both

3   speak English well.  Both employees worked for many years at Mattel in El

4   Segundo—in Ms. Cabrera's case for over a decade—without the assistance of an

5   interpreter.  As the audiotapes of the interviews also show, Ms. Cabrera and

6   Ms. Morales were able to communicate clearly and calmly during the interviews.[42]

8          **B.**    **Accepting Evidence Voluntarily Provided By An Employee Is Not**

9              **Witness Tampering**

11        MGA also repeats its argument that "[o]ver Ms. Cabrera's protest, [Mattel]

12   seized boxes of materials from her garage," and quotes Ms. Cabrera as saying, "█████

13   ████████████████████████████████████"  (Motion at 10.)  The transcript

14   reveals that Ms. Cabrera was not protesting the collection of documents from her

15   garage, but was instead stating that she did not want her employment with Mattel to

16   be terminated:

_____

19   Fifth Amendment and holding that employee did not have a right to counsel when
employer requested interview regarding alleged security violations).

20   [41]  Naim Dec., Exh. 33.

21   [42]  The claim that Mattel "led them to believe they were going to jail," is a
distortion as well; Cabrera (not Morales) realizing apparently that her deception had

22   been uncovered, asked whether "████████████████████████"  Cabrera

23   Tr. at 177:6-7, Naim Dec., Exh. 8.  Mattel's representatives repeatedly reassured her
that she would not:

24–27   ████████████████████████████████████████████████

28   Cabrera Tr. at 177:8-15, Naim Dec., Exh. 8.



43

In any event, as the Court had suggested, the parties and Ms. Cabrera's counsel have met and conferred regarding the evidence contained in those boxes. Ms. Marlow and MGA have so far refused to clarify their positions as to ownership or control of the boxes' contents. Ms. Cabrera has "reserved her rights" to the boxes, but has stated that she does not want them returned.[44]  Mattel is currently preparing a motion to the Discovery Master for guidance as to this evidence.

_____

[43]   Cabrera Tr. at 72:10-73:2 (emphasis added), Naim Dec., Exh. 8.
[44]   Facsimile from Maria Diaz to James J. Webster, dated March 10, 2008, Naim Dec., Exh. 13.  It should be noted that Ms. Cabrera was invited to collect any personal items or materials from Mattel; Mattel delivered those items to Cabrera's counsel.  Facsimile from James J. Webster to Maria G. Diaz, dated January 23, 2008, Naim Dec., Exh. 19; facsimile from James J. Webster to Thomas Nolan, Maria Diaz, Larry McFarland, and Michael Page, dated February 6, 2008, Naim Dec., Exh. 11.

C.     **Referring to Marlow's Deposition Testimony During The Interviews Does Not Constitute Witness Tampering**

Mattel only became aware of the secret work its employees performed on Bratz as a result of Marlow's deposition.  It is hardly surprising, then, that during the interviews, Mattel referred to that testimony to question the employees.

The Motion argues that Mattel misled Cabrera by stating "falsely that Marlow had testified it was "██████████████████████████████████████ ████████████████████████████"  Motion at 4:17-19.  MGA argues that Marlow did not so testify, but that at some unspecified point, Ms. Cabrera told her that she recognized "█████████" on all the "██████████████████ █████████"  This misses the mark and misstates the record.  The documents produced by Marlow show that Cabrera's signed timesheets—in 2001—refer to her as working on Bratz dolls at that time.[45]  Ms. Cabrera was not misled.

MGA also quibbles that Mattel misleadingly claimed that Marlow had <u>voluntarily</u> provided Cabrera's and Morales' names (i.e., rather than explaining that Marlow provided the names in response to deposition questions).  Motion at 4:9-13.  This is a distinction without a difference, and could hardly cause any "false testimony."  It is also utterly irrelevant.  The interview transcripts show that Cabrera and Morales spoke to Marlow before they were interviewed and were informed by her that she had provided their names at her deposition.[46]  It was the confirmation

---

[45]   Time sheet for work done by Ana Cabrera from October 27, 2001, to November 3, 2001, Naim Dec., Exh. 29.

[46]   Before Marlow's deposition, Marlow told Cabrera she was being deposed. Cabrera Tr. 35:12-36:1, Naim Dec., Exh. 8.  Marlow did not tell her she was going to say things "█████████" Cabrera.  Cabrera then spoke with Marlow after her deposition and Marlow told her that she had said her name. "████████████████ ████████████████████████████████████" <u>Id.</u> at 31:1-2.  In the same conversation, (footnote continued)

1   that they had been so named, not whether Marlow named them "voluntarily" or in

2   answer to a question, that led Cabrera and Morales to tell Mattel the truth about their

3   wrongdoing.[47]

4

5         **D.**      **Representing That Marlow Acted In Her Own Self Interest—When**

6                 **She Most Surely Did—Does Not Constitute Witness Tampering**

7

8         MGA and Bryant also contend that Mattel misled the employees during their

9   interviews when it said Marlow had acted in her own self-interest.  Yet by any

10  interpretation, that is precisely what she did.  Marlow engaged in a fraudulent

11  scheme which caused Cabrera and Morales to lose their jobs, while Marlow made

12  millions of dollars from her relationship with MGA.

13

14        **E.**      **Close Questioning on the Employees' Contributions to Bratz Does**

15                **Not Constitute Witness Tampering.**

16

17        MGA and Bryant contend that Mattel's representatives used "manipulative

18  interrogation techniques" in questioning the employees.  Motion at 3.  This assertion

19  is based on Mattel having asked Ms. Cabrera several times whether she had made

20  creative contributions to Bratz.  That a question was asked several times does not

21  constitute witness tampering.  The employees were being investigated because they

22  worked on a competitor's products.  Moreover, rephrasing a question is a well-

23  established means to move beyond different people's ways of characterizing their

24  contributions and determining just how much these employees did.  Indeed, contrary

25  _____

26  according to Cabrera, Marlow said "███████████████████████"  Id.

27  at 31:16-19.

28

1   to their assertion, defendants' own citation shows Ms. Cabrera's acknowledging her

2   contributions to Bratz.  When Mr. De Anda asked her if she helped make the

3   patterns, she at first said no, but nevertheless stated that she would tell Marlow

4   where the patterns were wrong, and needed improvement.  "████████████████

5   ████████████████"  Motion at 4.

6

7       **F.**    **Speculation As To Whether A Decision Had Already Been Made**

8              **To Terminate The Employees At The Times Of Their Interviews Is**

9              **Not Evidence Of Witness Tampering**

10

11      MGA and Bryant have no evidence to support their claim that Mattel had

12   decided to terminate Cabrera's and Morales' employment before it interviewed

13   them.  Motion at 6:3-7.  This is another example of pure conjecture as a basis to

14   level accusations against Mattel.  In any event, criticism of Mattel's employment

15   practices is not grounds for a claim of witness tampering.

16

17      **G.**    **Informing The Employees That This Was "████████████████**

18              **████"  And A "████████"  Does Not Constitute Witness**

19              **Tampering**

20

21      MGA and Bryant also take issue with Mattel informing its employees that it

22   was in their best interest to cooperate with their employer.  Motion at 5:8-12.  First,

23   to the extent Movants are suggesting the employees were entitled <u>not</u> to cooperate in

24   an employment investigation, that is simply wrong.  MGA has already abandoned

25   the position it previously advanced in this Court that the employees were entitled to

26   _____

27      [47]   <u>See</u> Cabrera Tr. at 41:18-44:22, Naim Dec., Exh. 8 (denying knowledge that

28   she had worked on Bratz, until confronted with Marlow's testimony).

1  resist the investigation by remaining silent and/or insisting that counsel be present.[48]

2  Second, MGA can't explain why it was <u>not</u> in the employees' best interest to

3  cooperate, unless the implication is that the employees would have been better off

4  lying rather than telling the truth about their secret work for MGA.

5      The Motion also states that Mattel told the employees it was in their "best

6  interests" not to "tell anyone else about the recorded interrogations."  Motion at 1.

7  But it was Ms. Cabrera who requested that nobody at Mattel be told of her

8  wrongdoing, apparently because she was ashamed about what she had done.[49]  In

9  any event, she was <u>never</u> told to conceal the fact the interviews were recorded.

10  Indeed, given that Mattel promptly produced the recording of the interviews to the

11  parties in this action, MGA's speculative argument is nonsensical.[50]

12      In sum, none of the cases cited in the Motion suggest that an employer who

13  conducts a thorough investigation into employee wrongdoing can be exposed to

14  liability when no falsely incriminating statements of any kind have been elicited.

15  Nor does the Motion point to such a single false statement made in the transcripts or

16  on the recordings.

17

18  **III.   <u>THERE IS NO BASIS TO SANCTION MATTEL</u>**

19

20      To support its argument that Mattel be sanctioned for witness tampering, the

21  Motion cites a series of cases concerning sanctions for engaging, not in "witness

22  tampering," but in discovery abuse.  Motion at 6-7, nn. 32, 33.  Of course, here

23  Mattel was conducting an employment investigation.  It is true that the allegations

24  giving rise to the investigation arose out of testimony by Marlow <u>in this action</u>, yet

25

26   [48]   MGA's And Carter Bryant's Opposition To Mattel's Ex Parte Applications To
    Compel Additional Depositions, dated January 30, 2008, at 11, Naim Dec., Exh. 1.

27   [49]   Cabrera Tr. at 171:25-172:15, Naim Dec., Exh. 8.

28

1   that does not render Mattel's interviews of its own current employees a matter of

2   "discovery in this action."  Defendants offer no theory or explanation as to how an

3   investigation of employee wrongdoing resulting in a termination of employment

4   could be considered a "discovery abuse."

5       Because Mattel has not violated any Order, the authorities cited by MGA and

6   Bryant as justifying sanctions are inapposite.  (See Motion at 7 n.33.)  In Mack

7   University LLC v. Halstead, No. CV 07-393 DOC (ANx), 2007 WL 4458823, at *2

8   (C.D. Cal. Sept. 25, 2007), discovery orders were violated; that was the very basis

9   for the Court's imposition of sanctions.  Id.[51]  The tampering cases cited by MGA

10  and Bryant, as noted earlier, all involve instances where the employees were

11  intimidated, coerced, or induced to lie, which is precisely what is missing here.

12  Young involved evidence that a witness was bribed to testify falsely.  Young, 217

13  F.R.D. at 68.  In Quela, the employee claimed she was coerced into providing false

14  written testimony by the senior officer who had personal responsibility for

15  preventing the sexual harassment at issue.  Quela, 2000 WL 656681 at *4.  Here, by

16  contrast, while MGA and Bryant allege witness tampering, they fail to present any

17  evidence from either of the witnesses, Cabrera or Morales, that they said, or will

18  say, anything incriminating that is false.  Motion 8-9.  In sum, there is no evidence

19  that Mattel engaged in "coercion," "intimidation," or "threats," or acted "corruptly,"

20  and there is no basis in law or fact to support a request for either an evidentiary

21  hearing or sanctions.

22

23

24

25

---

26   [50]  Naim Dec., ¶ 2, Exh. 33.

27   [51]  Conversely, in Bollow, the court declined to impose sanctions, and was
     affirmed on appeal.  Bollow v. Federal Reserve Bank of San Francisco, 650

28   F.2d 1093, 1102 (9th Cir. 1981).

1
2
3
4

**IV.   THE REAL PURPOSE OF THIS MOTION IS TO DELAY DEPOSITIONS WHICH THIS COURT AND THE DISCOVERY MASTER HAVE ALREADY ORDERED**

5   This motion is simply another attempt by MGA and Bryant to block

6   depositions which this Court and the Discovery Master have directed should

7   proceed and to distract attention from their own concealment of evidence -- done by

8   defendants in violation of Court Orders compelling disclosure -- which caused the

9   belated discovery of these important witnesses.  It relies on precisely the same

10   arguments which this Court and the Discovery Master have reviewed and rejected.

11   Mattel first noticed the depositions of Ana Cabrera, Beatriz Morales, and

12   Maria Salazar in January 2008.  All three failed to appear.  On January 24, Mattel

13   wrote to Ms. Diaz, counsel for Cabrera and Morales, asking to meet and confer, and

14   stating that if new dates were not immediately set, it would move to compel the

15   depositions;[52] on the same day, MGA's counsel wrote to Mattel insisting that the

16   depositions were "off."[53]  On January 25, Mattel responded to MGA that it could not

17   unilaterally cancel the depositions.[54]  Mattel also followed up its letter to Ms. Diaz

18   with a telephone message seeking new dates for the deposition, but received no

19   response to this call or its letter.[55]  On January 28, 2008, Mattel moved *ex parte* to

20
21
22

_____

23   [52]   Facsimile from James J. Webster to Maria G. Diaz, Thomas J. Nolan,

24   Alexander H. Cote, and Michael H. Page, dated January 24, 2008, Naim Dec., Exh. 20.

25   [53]   Letter from Paul M. Eckles to Jon D. Corey dated January 24, 2008, Naim

26   Dec., Exh. 21.

27   [54]   Email from James Webster to Paul M. Eckles dated January 25, 2008, Naim Dec., Exh. 22.

28   [55]   Naim Dec., ¶ 25.

1  compel the depositions of Cabrera, Morales, and Salazar,[56] which MGA opposed

2  both on the grounds that Mattel had exceeded the maximum number of depositions

3  allowed to it, and on the grounds of the supposed "tampering" alleged here.[57]

4       Although MGA now claims that "the Court has already expressed 'pretty

5  serious' concerns about Mattel's conduct with respect to Ms. Cabrera and

6  Ms. Morales," and invited this motion (Motion at 1), that is not so.  At the first

7  hearing on Mattel's application, at a time when Mattel had yet to make its

8  submission to the Court,[58] the Court only noted that the <u>allegations</u> were "pretty

9  serious,"[59] and invited Mattel to reply.[60]  A week later, after Mattel had addressed

10  these allegations, the Court concluded that "there are two sides to that story," and

11  that no further investigation was required before it proceeded to rule in Mattel's

12  favor as to the challenged depositions.  The transcript makes this clear:

13            MR. NOLAN:  Your Honor, one last bit because

14       there was a filing before your Honor, just very quickly.  I

15       notice that Mattel did file a reply.

16            THE COURT:  They—this is with respect to the

17       other issue regarding those three—or the two witnesses?

18            MR. NOLAN:  Seamstresses, right.

19            THE COURT:  The seamstresses.  I did read that.  I

20       understand there are two sides to that story.  I don't think

21

22  _____

23  [56]  Mattel, Inc.'s Ex Parte Application To Compel The Appearance For
Deposition Of Ana Cabrera, Beatriz Morales, And Maria Salazar, dated January 28,

24  2008 (without Memorandum of Points and Authorities), Naim Dec., Exh. 23.

25  [57]  Ex Parte Opp. at 5-6, 9, Naim Dec., Exh. 1.

26  [58]  On the one hand MGA represents that the Court expressed "serious
concerns;" elsewhere MGA appears to correct itself referring to "pretty serious
allegations." Motion at 8:6-7.

27  [59]  February 4, 2008 Hearing Tr. at 47:9-13, Naim Dec., Exh. 24.

28  [60]  <u>Id.</u> at 48:12-13.

1    the Court needs to resolve that at this point.  If and when

2    that becomes relevant to some other issue, we will take

3    that up, but I've read your position, I've read Mattel's reply

4    to that.  I'm sure you may take exception to some of the

5    things that Mattel stated in that, but there's no need at this

6    point in time to spend time focusing on this issue right

7    now.  *Let's go forward.*

8         MR. NOLAN:  Right, your Honor.  The only point

9    that we wanted to make, your Honor, is that *at some point*

10   *in time we may ask for a hearing* because I know you want

11   to hold on to this issue.  I think that was the term you used

12   last time.

13        THE COURT:  Sure.

14        MR. NOLAN:  We do believe that it raises a very

15   serious issue under 1512 of Title 18 about intimidation of

16   witnesses and that a hearing may be required on the

17   matter.  We will continue to let this thing develop a little

18   bit, but we are going to reserve that issue and bring it back

19   to you rather than Judge Infante at your request.

20        THE COURT:  So observed, Counsel.  Thank you.[61]

21   In other words, *MGA¸* not the Court, stated that it would bring a motion on the issue,

22   if the Court requested one.  The Court has never done so.

23        MGA then renewed its efforts to block these depositions on the grounds of

24   alleged witness tampering, arguing to Judge Infante that this Court had agreed that

25   these issues "'would have to be resolved before the deposition went forward.'"

26   _____

27   [61]  February 11, 2008 Hearing Tr. at 16:5-17:6 (emphasis added), Naim Dec.,

28   Exh. 25.

1   (MGA Motion to Quash at 7.)  In fact, this Court did not so hold.[62]  Nonetheless,

2   MGA argued to Judge Infante that, "at a minimum, the Discovery Master should

3   rule that the depositions of Ms. Cabrera and Ms. Morales should not take place until

4   after the Court conducts the hearing under 18 U.S.C. § 1512 [the 'witness tampering'

5   statute]."[63]  Plainly not accepting MGA's invitation, On March 11, 2008, the

6   Discovery Master denied MGA's Motion to Quash the depositions of Salazar,

7   Cabrera and Morales, and ordered those depositions to proceed.[64]  Since then,

8   defendants have filed the current motion, and an appeal of the March 11, 2008

9   Order, making the same allegations in each case.  They have thus made the same

10  allegations in four separate filings.  Defendants are doing everything they can to

11  prevent these depositions from taking place.  Their obstruction must end so that

12  these witnesses can be deposed, and the parties can prepare for trial.

### Conclusion

14          For the foregoing reasons, the Court should deny the Motion in its entirety.

16  DATED:  March 31, 2008              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP

19                                      By /s/ John B. Quinn
                                          John B. Quinn
20                                        Attorneys for Mattel, Inc.

---

[62]     MGA, in quoting this language to Judge Infante, neglected to point out that it was from the first hearing on Mattel's ex parte motion, during which the Court invited Mattel to reply to the allegations.  A week later, after Mattel did so, the Court concluded that no further action was necessary. See February 11, 2008 Hearing Tr. at 16:5-17:6, Naim Dec., Exh. 25.

[63]     MGA Defendants' Supplemental and Second Amended Motion to Quash, dated February 14, 2008 ("Motion to Quash"), at 10, Naim Dec., Exh. 2.

[64]     Order Re MGA Defendants' Motion to Quash Deposition Subpoenas, dated March 11, 2008 ("March 11, 2008 Order"), Naim Dec., Exh. 31.