1 | KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
2 | jkeker@kvn.com
MICHAEL H. PAGE - #154913
3 | mpage@kvn.com
CHRISTA M. ANDERSON - #184325
4 | canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
5 | mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
6 | jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
7 | awaltonhadlock@kvn.com
710 Sansome Street
8 | San Francisco, CA 94111-1704
Telephone: (415) 391-5400
9 | Facsimile: (415) 397-7188

10 | Attorneys for Plaintiff
CARTER BRYANT

11

12

13 | UNITED STATES DISTRICT COURT

14 | CENTRAL DISTRICT OF CALIFORNIA

15 | EASTERN DIVISION

16

17 | CARTER BRYANT, an individual,

18 |                 Plaintiff,

19 | v.

20 | MATTEL, INC. a Delaware Corporation,

21 |                 Defendant.

22

23 | CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC.

24

25

26

27

28

Case No. CV 04-09049 SGL (RNBx)
(consolidated with CV 04-9059 & 05-2727)

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF CARTER BRYANT'S OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

[Filed concurrently with Bryant's Opp. to Mattel, Inc.'s Mot. for Partial Summ. J. and Decl. of Jan Raymond]

Date:      April 22, 2008
Time:     10:00 a.m.
Dept:     Courtroom 1
Judge:   Hon. Stephen G. Larson

Date Comp. Filed: April 13, 2005

Discovery Cut-Off: Jan. 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

413815.01

Case 2:04-cv-09049-DOC-RNB Document 2875-2 Filed 04/01/09 Page 2 of 23 Page ID
#:47306
Case 2:04-cv-09049-SGL-RNB Document 2762 Filed 03/24/2008 Page 2 of 23

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Federal Rule of Evidence 201, Carter Bryant respectfully requests that the Court take judicial notice of the following portions of the legislative history for California Labor Code § 2870:

(A) California Assembly Bill No. 2902, 1975-76 Regular Sess. (introduced by Assemblyman Goggin, Jan. 29, 1976);

(B) California Assembly Committee on Judiciary, Bill Digest re Assembly Bill 2902 (Hearing Date: May 17, 1976);

(C) Letter from George H. Murphy, Legislative Counsel of California, to Hon. John J. Miller, California Assemblyman (Mar. 29, 1976);

(D) California Assembly Committee on Labor, Employment, & Consumer Affairs, Memo re Assembly Bill 474 (Hearing Date: Mar. 20, 1979);

(E) Assemblyman Terry Goggin, A.B. 474 Statement, Assembly Committee on Labor, Employment & Consumer Affairs (Mar. 20, 1979).

True and correct copies of these portions of the legislative history for California Labor Code § 2870 are attached hereto as Exhibits A – E respectively. *See* Decl. of Jan Raymond at ¶ 6-10, Exs. 1-5. As explained in the concurrently filed Declaration of Jan Raymond, these documents were gathered by Raymond Legislative Research at the direction of counsel. Decl. of Jan Raymond at ¶ 1.

Under Rule 201(b) of the Federal Rules of Evidence, the Court can take judicial notice of facts that are (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

413815.01

1    resort to sources whose accuracy cannot reasonably be questioned.  Judicial notice
2    is mandatory if requested by a party and if the Court has been supplied with "the
3    necessary information."  Fed. R. Evid. 201(d).
4         It is well established that legislative history is the proper subject of judicial
5    notice.  *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (granting
6    judicial notice of legislative history of section of California Penal Code); *Louie v.*
7    *McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d 1153, 1155-56 (C.D.
8    Cal. 2006) (granting plaintiff's request for judicial notice of certain portions of
9    legislative history).  Furthermore, the legislative history that Bryant requests
10   judicially noticed is capable of accurate and ready determination by resort to the
11   collection of the California State Law Library, the bill file of the Assembly
12   Committee on Labor and Employment, the bill file of the Senate Committee on
13   Industrial Relations, sources whose accuracy cannot reasonably be questioned. *See*
14   Decl. of Jan Raymond at ¶¶ 6-10.
15
16   Dated:  March 24, 2008                    KEKER & VAN NEST, LLP
17
18
19                                   By:  /s/ Matthew M. Werdegar
                                         MATTHEW M. WERDEGAR
                                         Attorneys for Plaintiff
20                                       CARTER BRYANT
21
22
23
24
25
26
27
28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF CARTER BRYANT'S OPPOSITION
TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413815.01

# EXHIBIT A

Case 2:04-cv-09049-DOC-RNB Document 2875-2 Filed 04/01/08 Page 5 of 23 Page ID
Case 2:04-cv-09049-SGL-RNB Document 2762 Filed 03/24/2008 Page 5 of 23
#: 46399

CALIFORNIA LEGISLATURE—1975–76 REGULAR SESSION

# ASSEMBLY BILL           No. 2902

---

## Introduced by Assemblyman Goggin

### January 29, 1976

---

REFERRED TO COMMITTEE ON JUDICIARY

---

An act to add Chapter 7.8 (commencing with Section 1130) to Part 3 of Division 2 of the Labor Code, relating to employees.

LEGISLATIVE COUNSEL'S DIGEST

AB 2902, as introduced, Goggin (Jud.).  Labor: employee inventions.

The existing law contains no provisions relating to the right to the patent for an invention made by an employee.

This bill would provide that the right to the patent for an invention made by an employee belongs to the employee, unless the employer makes a declaration of interest in the invention pursuant to specified procedures. If such a declaration is made by the employer, the right to the patent would belong to the employer and the employee would have a right to remuneration for the invention.

This bill would also provide that the rights conferred on the employee by the bill shall not be reduced by contract.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Chapter 7.8 (commencing with Section
2  1130) is added to Part 3 of Division 2 of the Labor Code,

Case 2:04-cv-09049-SGL-RNB Document 2762 Filed 03/24/2008 Page 6 of 23

AB 2902                              — 2 —

1  to read:
2
3  CHAPTER 7.8.   INVENTIONS MADE BY AN EMPLOYEE
4
5     1130.   The right to the patent for an invention made
6  by an employee in the execution of an employment
7  contract or by using data or means available to him
8  through his employment shall belong to the employee,
9  unless the employer makes a declaration of interest in the
10  invention.
11     1131.   An employee who makes an invention of the
12  kind referred to in Section 1130 shall immediately inform
13  his employer thereof in a written report.
14     1132.   Where the employer makes a declaration of
15  interest in the invention, the right to the patent shall be
16  considered as having belonged to the employer from the
17  beginning, provided that the employee is notified in
18  writing of the employer's declaration of interest in the
19  invention within four months after either the date of
20  receipt of the employee's report, or the date on which the
21  invention became otherwise known to the employer,
22  whichever date is earlier.
23     1133.   If the employer makes a declaration of interest
24  in the invention, the employee shall have a right to
25  remuneration for the invention, taking into account his
26  salary, the importance of the invention, and any benefit
27  derived from the invention by the employer. In the
28  absence of agreement between the parties, the
29  remuneration shall be fixed by a court of competent
30  jurisdiction.
31     1134.   The rights conferred on the employee by the
32  provisions of this chapter shall not be reduced by
33  contract.

O

# EXHIBIT B

ASSEMBLY COMMITTEE ON JUDICIARY
JOHN J. MILLER, Chairman

BILL DIGEST

BILL:     AB 2902                    HEARING DATE:  5/17/76

AUTHOR:   Goggin

SUBJECT:  Patents:  Employee Inventions

BILL DESCRIPTION:

     Generally, patents are governed by federal law.
The federal constitution specifically authorizes Congress
to enact legislation for the protection of inventions.
Certain subject matters relating to patents are not
proper subjects for state legislation:  patentability of
inventions, grant of patents, patent infringement, and
the validity or invalidity of a patent.  However, state
law may affect certain aspects of patents including
ownership, agreements between co-owners, licenses, agree-
ments not to infringe, and various patent related torts.

     This bill provides that patent rights to an invention
belong to an employee unless an employer makes a declaration
of interest in the invention.  The bill applies to patents
made in an employment capacity.  The bill specifies the
following procedure when an employee makes an invention:

1.  The employee must immediately notify the employer
    of the invention in a written report.

2.  In order for an employer to acquire patent rights in
    an invention made by an employee, the employer must
    notify the employee of his declaration of interest
    within four months after receipt of the employee's
    report or the date on which the invention became
    known to the employer, whichever date is first.

                                        (CONTINUED)

AB 2902
Page 2

3. When an employer makes a declaration of interest, the employee must be compensated for the invention. If the parties cannot agree to the compensation, the compensation would be fixed by the court.

4. The bill specifically provides that patent rights conferred by this bill could not be reduced by contract, except that employers and employees may agree at any time after the declaration of interest on a proportional share of invention value as compensation.

SOURCE:

Author

SUPPORT:

The California Sections of the American Chemical Society
The California Society of Professional Engineers
Institute of Electrical and Electronics Engineers, Inc.

OPPOSITION:

General Electric Company
Atlantic Richfield Company
Continental Oil Company
Exxon Corporation
Gulf Oil Corporation
Mobil Oil Corporation
Phillips Petroleum Company
Shell Oil Company
Standard Oil Company of California
Texaco, Inc.
Union Oil Company of California
Association of Motion Picture and Television Producers, Inc.
McDonnel Douglas Corporation

(CONTINUED)

Case 2:04-cv-09049-DOC-RNB Document 2875-2 Filed 04/01/09 Page 10 of 23 Page ID
Case 2:04-cv-09049-SGL-RNB Document 2762 Filed 03/24/2008 Page 10 of 23
#:47314

COMMENT:

    This bill is almost identical to sections of the
Draft Model Provisions on Rights Under the Patent prepared
by the World Intellectual Property Organization.  The
Draft Model Provisions are also similar to the
corresponding sections of Model Law for developing
countries on inventions and know-how 1965.  The purpose
of this bill is to give employed inventors a right to
compensation if their employers take their inventions.
Proponents of the bill assert that corporations have
replaced individual inventors in the marketing of inven-
tions.  The proponents assert that employers, as a condition
of employment, require employee-inventors to assign their
inventions to the employer.  The proponents feel that this
system discourages employee-inventors from inventing.

    This bill raises some drafting problems as well as
public policy considerations.  The bill provides that
patent rights belong to an employee-inventor unless his
employer makes a "declaration of interest" in the invention.
The bill does not establish guidelines for the form or
contents of the "declaration of interest."

    The bill requires an employee who makes an invention
to immediately inform his employer of the invention.  However,
the bill does not specify the time period in which employee-
inventors must report their inventions to employers.  This
time period should be specified in the bill.

    The bill does not specify what happens when more than
one employee makes an invention.  How would patent rights
be allocated between inventing co-workers?

    In order for an employer to acquire patent rights in
an invention made by an employee, the employer must declare
his interest in the invention within four months after
receipt of the employee's report or the date when the
invention becomes known to the employer, whichever is earlier.
Is the four month period after notice by the employee-inventor
too long?

(CONTINUED)

AB 2902
Page 4


        The bill does not specify any penalties against
employers who refuse to carry out the provisions of this
bill.  Shouldn't remedies be provided to the employee-
inventor when an employer refuses to comply with the
provisions of this bill?


        The opponents of the bill have raised these general
issues:

        1.  Would this bill necessarily encourage employee-
            inventors to become more productive?

        2.  How would the bill affect an employer's incentive
            to engage in research and development activities
            and other business practicalities?

        3.  Is the bill an undue intrusion by government into
            a basically employer-employee relationship?

Case 2:04-cv-09049-SGL-RNB Document 2762 Filed 03/24/2008 Page 12 of 23

# EXHIBIT C

# Legislative Counsel
# of California

GEORGE H. MURPHY

BE... ...
OWEN K. KUNS
CHIEF DEPUTY

OWEN K. KUNS
EDWARD K. PURCELL
RAY H. WHITAKER

KENT L. DeCHAMBEAU
ERNEST H. KUNZI
STANLEY M. LOURIMORE
SHERWIN C. MacKENZIE, JR
ANN M. MACKEY
EDWARD F. NOVAK
RUSSELL L. SPARLING
PRINCIPAL DEPUTIES

3021 STATE CAPITOL
SACRAMENTO 95814

107 SOUTH BROADWAY
LOS ANGELES 90012

GERALD ROSS
DAVID D. ALVES
MARTIN L. ANDERSON
PAUL ANTILLA
JEFFREY D. ARTHUR
CHARLES C. ASBILL
JAMES L. ASHFORD
JOHN CORZINE
BEN E. DALE
CLINTON J. DeWITT
C. DAVID DICKERSON
FRANCES S. DORBIN
ROBERT CULLEN DUFFY
CARL NED ELDER, JR.
LAWRENCE H. FEIN
JOHN FOSSETTE
HARVEY J. FOSTER
HENRY CLAY FULLER III
ALVIN D. GRESS
ROBERT D. GRONKE
JAMES W. HEINZER
THOMAS R. HEUER
EILEEN K. JENKINS
MICHAEL J. KERSTEN
L. DOUGLAS KINNEY
JEAN KLINGENSMITH
VICTOR KOZIELSKI
STEPHEN E. LENZI
DANIEL LOUIS
JAMES A. MARSALA
DAVID R. MEEKER
PETER F. MELNICOE
MIRKO A. MILICEVICH
ROBERT G. MILLER
JOHN A. MOGER
VERNE L. OLIVER
EUGENE L. PAINE
TRACY O. POWELL, II
MARGUERITE ROTH
HUGH P. SCARAMELLA
MARY SHAW
WILLIAM K. STARK
JOHN T. STUDEBAKER
BRIAN L. WALKUP
THOMAS D. WHELAN
JIMMIE WING
CHRISTOPHER ZIRKLE
DEPUTIES

Sacramento, California
March 29, 1976

Honorable John J. Miller
Assembly Chamber

## Rights to Inventions - #6452

Dear Mr. Miller:

### QUESTION

You have asked whether Assembly Bill No. 2902, if enacted as introduced, would conflict with the federal statutes regarding patents.

### OPINION

Assembly Bill No. 2902,[1] if enacted as introduced, would not conflict with federal statutes regarding patents.

### ANALYSIS

Assembly Bill No. 2902 would allocate by statute the right to patents of employers and employees as to inventions made by an employee in the execution of an employment contract or in the course of employment.

With regard to the federal law, Clause 8 of Section 8 of Article I of the United States Constitution invests the Congress with power to enact legislation for the protection of inventions, as follows:

---

[1] Hereinafter referred to as A.B. 2902.

Case 2:04-cv-09049-DOC-RNB Document 2875-2 Filed 04/01/09 Page 14 of 23 Page ID
#:47318
Case 2:04-cv-09049-SGL-RNB Document 2762 Filed 03/24/2008 Page 14 of 23

Honorable John J. Miller - p. 2 - #6452

"The Congress shall have power ...
to promote the progress of science and
useful arts, by securing for limited times
to authors and inventors the exclusive right
to their respective writings and discoveries;"

Pursuant to this constitutional authority, Congress,
in 1790, enacted the first federal patent law and since that
time has established peremptorily the conditions upon which
patents may be granted (see Sec. 1 et seq., Title 35,
U.S.C.). The federal patent laws are the supreme law of
the land and, in the words of the United States Supreme
Court, "when state law touches upon the area of these fed-
eral statutes, it is 'familiar doctrine' that the federal
policy 'may not be set at naught, or its benefits denied' by
the state law" (Sears, Roebuck & Co. v. Stiffel Co. (1964),
11 L. Ed. 2d 661, 665. See also Kewanee Oil Co. v. Bicron
Corp. (1974), 40 L. Ed. 2d 315).

Thus, the subject matters relating to patents
which are provided for by federal law are not proper sub-
jects for state legislation. For example, matters relating
to the patentability of inventions and the grant of patents
(see Part II (commencing with Section 100), Title 35,
U.S.C.) and matters relating to patent infringement and
questions generally concerning the validity or invalidity
of a patent are all provided for by federal law and are not
proper subjects for state legislation. Moreover, since
actions relating to such matters as patentability of inven-
tions, infringement of patent rights, and the validity of
patents arise under federal law, the federal courts have
original jurisdiction thereof. (See, e.g., Unarco Industries,
Inc. v. Kelley Co. (1972) 465 F. 2d 1303.)

However, state law is said to control or affect in
varying degrees many incidents of patents, including owner-
ship, agreements between co-owners, licenses, agreements
not to infringe, and some torts involving patent rights
(See, e.g., Cooper, State Law of Patent Exploitation, 56
Minn. L. Rev. 313, 344). With respect to such incidents,

Honorable John J. Miller - p. 3 - #6452

absent federal diversity jurisdiction, state courts have exclusive original jurisdiction, since such matters do not arise under the patent or other federal laws, but rather arise, if at all, pursuant to state law (Luckett v. Delpark, Inc. (1926), 70 L. Ed. 703, 708-709; Thiokol Chemical Corp. v. Burlington Industries, Inc. (1970), 313 F. Supp. 253). Indeed, state court decisions concerning such incidents of patent law are not subject to federal court review where there exists no question of patent or other federal law (Wade v. Lawder (1897), 41 L. Ed 851; Marsh v. Nichols, Shepard & Co. (1891), 35 L. Ed. 413).

The case of Farmland Irrigation Co. v. Dopplmaier (1957), 48 Cal. 2d 208, contains a cogent and incisive discussion of the authority of a state to affect patent laws. In that case, it was contended that because a patent is a creature of federal law and can be assigned only in the manner provided by federal law the assignability of rights under a patent license is also to be determined by federal law. The court concluded, to the contrary, that, so long as state law does not destroy the advantages of the monopoly of a patent and so long as it respects the federal purpose of patents, there is no reason why state law should not govern ancillary aspects of patents for which no provision is made by the federal patent laws. Thus, the common law of the state controlled in determining the outcome of the question before the court.

Similarly, the federal patent laws are silent with regard to the relationship between employers and employees and their respective rights to patent ownership. Nonetheless, the employment relationship is critical to patent rights since the respective rights and obligations of the employer and employee, touching an invention conceived by an employee, arise out of the contract of employment (United States v. Dubilier Condenser Corp. (1932), 77 L. Ed. 1114, 1118).

Under present law, in the absence of a contract allocating the rights between an employer and his employee to inventions perfected by an employee, the mere existence of an employer-employee relationship does not entitle the employer to ownership of the inventions of an employee, but where an employee is hired for the purpose of making an invention and he succeeds, the invention belongs to the employer and the employee is bound to assign any patent he

Case 2:04-cv-09049-DOC-RNB   Document 2875-2   Filed 04/01/08   Page 16 of 23   Page ID
#:47320
Case 2:04-cv-09049-SGL-RNB   Document 2762   Filed 03/24/2008   Page 16 of 23

Honorable John J. Miller - p. 4 - #6452

obtains to the employer (Standard Parts Co. v. Peck (1924), 68 L. Ed. 560). However, inventions made completely independent of an employee's employment are the employee's, to do with as he chooses. In between these two extremes, the "shop right" doctrine applies. Under this doctrine, an employer is deemed entitled to limited rights in an employee's invention where the employer has made some significant contribution to the invention, as, for example, by permitting the use of the employer's equipment, time, or resources. While, under the shop right doctrine, any patents that are awarded belong to the employee, the employer is entitled to a royalty-free, personal, nonassignable license to use the invention in the conduct of his business (see Costner and Einhorn, 14 Business Organizations-Patents, Sec. 2.07 (1975)).

However, where the respective rights of an employer and employee are allocated by contract, the shop right doctrine is superseded (Jamesburg Corp. v. Worcester Valve Co. (1971), 443 F. 2d 205).

Thus, in determining rights of an employer and his employees to inventions of the employees, one presently must look to the employment contract, involving the law of contracts, or, if none, to the employment relationship, involving the common law, and the law of trade secrets and awards programs (see Stedman, The Employed Inventor, The Public Interest, and Horse and Buggy Law in the Space Age, 45 N.Y.U.L. Rev. 1 (1970). Each such area of law traditionally and primarily is controlled by state law. Moreover, there is no doubt that the Legislature generally may regulate an employer-employee relationship.

Accordingly, since there is nothing in the federal law of patents prohibiting such legislation, since state law already is looked to in determining numerous incidents to patents, and since the employer-employee relationship is a matter traditionally within the scope of the so-called police power, we think the Legislature may regulate the employer-employee relationship in the context of rights to inventions, so long as such regulation does not interfere with any paramount federal policy arising from the federal patent laws (see, e.g., Goldstein v. California, 37 L. Ed. 2d 163; Lear v. Adkins (1969), 23 L. Ed. 2d 610; Sears, Roebuck & Co. v. Stiffel (1964), 11 L. Ed. 2d 661; Unarco Industries, Inc. v. Kelley Co., supra).

Honorable John J. Miller - p. 5 - #6452

In this connection, the extent to which a state may regulate with respect to rights of inventors is an open question, as yet not definitively resolved by the Supreme Court (Lear v. Adkins, supra, at 625). In adjudging the validity of a state law in this regard, under existing case law, a court would inquire as to whether the overriding federal policies embodied in the federal patent laws would be significantly frustrated by applying state law (Lear v. Adkins, supra, at 624).

The Supreme Court has stated the general policy of the federal patent laws to be as follows:

"                    * * *

"The stated objective of the Constitution in granting the power to Congress to legislate in the area of intellectual property is to promote the Progress of Science and useful Arts. The patent laws promote this progress by offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research, and development. The productive effort thereby fostered will have a positive effect on society through the introduction of new products and processes of manufacture into the economy, and the emanations by way of increased employment and better lives for our citizens ... ." (Kewanee Oil Co. v. Bicron Corp., supra, at 325. See also, Goldstein.)

In our opinion, A.B. 2902 would not have a negative effect upon such federal policy by discouraging or decreasing the introduction of new products and processes of manufacture into the economy.

Very truly yours,

George H. Murphy
Legislative Counsel

By C. David Dickerson
C. David Dickerson
Deputy Legislative Counsel

CDD:pfb

Two copies to the Honorable Terry Goggin, pursuant to Joint Rule 34.

Case 2:04-cv-09049-DOC-RNB Document 2875-2 Filed 04/01/09 Page 18 of 23 Page ID
Case 2:04-cv-09049-SGL-RNB Document 2762 Filed 03/24/2008 Page 18 of 23
#:47322

# EXHIBIT D

ASSEMBLY COMMITTEE ON LABOR, EMPLOYMENT, & CONSUMER AFFAIRS
Bill Lockyer, Chairman

                                        HEARING DATE:  March 20, 1979


BILL:    AB 474

AUTHOR:  Goggin

SUBJECT: Inventions

BACKGROUND

Generally, patents are governed by federal law.  The United States
Constitution specifically empowers Congress to protect inventions.
However, certain matters relating to patents are proper subjects
for state legislation.  They include ownership, agreements between
co-owners, licenses, agreements not to infringe, and some torts
involving patent rights.

In the absence of a contract allocating the rights between an
employer and an employee to inventions perfected by an employee,
the mere existence of an employer-employee relationship does not
entitle the employer to ownership of the employee's invention.
Where an employee is specifically hired for the purpose of making
an invention, the invention belongs to the employer and the employee
is bound to assign the patent he obtains to the employer.  In-
ventions which are made completely independent of the employee's
employment are the employee's.  Between these two extremes, the
"shop right" doctrine applies.  Under this doctrine, an employer
is deemed entitled to limited rights in an employee's invention
where the employer has made some significant contribution to the
invention such as permitting the use of the employer's equipment,
time, or resources.  Where the rights of an employer and an
employee are allocated by contract, however, the shop right doctrine
is superseded.

Most inventors are employed by corporations or educational institu-
tions.  In nearly all cases, the employed inventor is required to
enter a contract assigning all of his or her future inventions to
the employer as a condition of employment.  These contracts often
do not distinguish between inventions related to the employment
and inventions perfected independent of the employment.  The
compensation provided the employed inventor by the employer varies
widely.  Often, the inventor receives only nominal compensation,
such as a dollar.  On the other hand, the University of California,
for example, pays its employees 50 percent of the royalties result-
ing from an invention, minus 15 percent of the royalties for
overhead expenses plus a deduction for the cost of patenting and
protection of the patent rights.

AB 474
Page 2

<u>BILL</u>

This bill provides that any employment agreement which assigns the
rights of an invention to an employer shall not apply to an in-
vention for which no equipment, supplies, facility, or trade
secret information of the employer was used and:

(a) does not relate (1) directly to the business of the employer,
or (2) to the employer's actual or demonstrably anticipated
research or development, or
(b) does not result from any work performed by the employee for
the employer.

<u>ANALYSIS</u>

This bill is identical to AB 2257 which was passed by the committee,
as amended, last year.  The bill is patterned after a similar
Minnesota law which was enacted in 1977 (House File 763, Chapter
47, 1977).  The author of this bill, Representative Stanley Fudro,
reports that there has been complete compliance and cooperation
by Minnesota businesses with this law.  In addition, he states
that such corporations as 3M, Honeywell, and Federal Munitions
have had no problems obtaining contracts with the federal govern-
ment as a result of the law.

The purpose of this bill is to guarantee the rights to an invention
perfected by an employed inventor independent of the inventor's
employment.  Many companies require the assignment of all an
employee's inventions.  This creates a disincentive to invent
since the inventor will receive little or no compensation for
his or her "free invention".  Proponents of the bill state that
the disincentive to invent has resulted in a slackening of creative
inventiveness in the United States and note that the U.S. has
fallen to seventh place in terms of patents of origin.  This bill
would place in statute the legal concept that the right to an
invention made independent of the employee's employment belongs
to the employee.

SUPPORT:  California Society of Professional Engineers

Consultant:  Steve Holloway
(mh)

Case 2:04-cv-09049-SGL-RNB   Document 2762   Filed 03/24/2008   Page 21 of 23

# EXHIBIT E

Case 2:04-cv-09049-SGL-RNB Document 2762 Filed 03/24/2008 Page 22 of 23

JOHN HUSING
ADMINISTRATIVE ASSISTANT

HARRY E. REYNOLDS
FIELD REPRESENTATIVE

DISTRICT OFFICE
VANIR TOWER PLAZA
290 NORTH "D" STREET
SUITE 802
SAN BERNARDINO, CALIFORNIA
92401
(714) 884-1241

JEFF RUCH
LEGISLATIVE ASSISTANT

STATE CAPITOL
SACRAMENTO, CALIFORNIA
95814
(916) 445-4843

COMMITTEES
CHAIRMAN
WAYS AND MEANS SUBCOMMITTEE
ON RESOURCES AND
TRANSPORTATION

MEMBER
PUBLIC EMPLOYEES AND
RETIREMENT
RESOURCES, LAND USE AND
ENERGY
WAYS AND MEANS

# Assembly
# California Legislature

## TERRY GOGGIN
### ASSEMBLYMAN, SIXTY-SIXTH DISTRICT
### SAN BERNARDINO COUNTY

AB 474 STATEMENT
ASSEMBLY COMMITTEE ON LABOR,
EMPLOYMENT & CONSUMER AFFAIRS
March 20, 1979

AB 474 IS A BILL ABOUT FUNDAMENTAL FAIRNESS. IT GUARANTEES PATENT RIGHTS TO EMPLOYED INVENTORS FOR INVENTIONS MADE ON THE EMPLOYEE'S OWN TIME, WITH HIS OWN RESOURCES, BASED ON HIS OWN IDEAS, COMPLETELY OUTSIDE THE SCOPE OF HIS EMPLOYMENT.

AS A CONDITION OF EMPLOYMENT, WORKERS ARE TYPICALLY REQUIRED TO SIGN AWAY ALL OR NEARLY ALL OF THEIR RIGHTS TO ANY INVENTIONS THEY MIGHT DEVELOP. THESE CONTRACTS OFTEN DO NOT DISTINGUISH BETWEEN INVENTIONS RELATED TO EMPLOYMENT AND THOSE PERFECTED INDEPENDENT OF THE JOB. EMPLOYED INVENTORS USUALLY RECEIVE LITTLE OR NOTHING FOR THEIR CREATIONS. ONE SURVEY OF CHEMICAL PATENT-HOLDERS IN CALIFORNIA FOUND THAT MORE THAN HALF RECEIVED A DOLLAR OR LESS IN DIRECT COMPENSATION. THIS IS NOT ONLY UNFAIR TO THE EMPLOYEE BUT ALSO UNDERMINES THE PATENT SYSTEM ITSELF BY REMOVING ANY INCENTIVE TO CREATE.

THE U.S. IS ONE OF THE FEW INDUSTRIALIZED COUNTRIES IN THE WORLD WITHOUT STATUTORY PROTECTION FOR EMPLOYED INVENTORS. GERMANY AND JAPAN, TWO OF OUR COMPETITORS WHO HAVE LAWS SIMILAR TO AB 474, ARE NOW LEADING THE WORLD IN PATENTS OF ORIGIN, WHILE THE U.S. HAS FALLEN FROM 1ST TO 7TH PLACE SINCE WORLD WAR II.

BILL

This bill provides that any employment agreement which assigns the rights of an invention to an employer shall not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and:

(a) does not relate (1) directly to the business of the employer, or (2) to the employer's actual or demonstrably anticipated research or development, or
(b) does not result from any work performed by the employee for the employer.

ANALYSIS

This bill is identical to AB 2257 which was passed by the committee, as amended, last year. The bill is patterned after a similar Minnesota law which was enacted in 1977 (House File 763, Chapter 47, 1977). The author of this bill, Representative Stanley Fudro, reports that there has been complete compliance and cooperation by Minnesota businesses with this law. In addition, he states that such corporations as 3M, Honeywell, and Federal Munitions have had no problems obtaining contracts with the federal government as a result of the law.

The purpose of this bill is to guarantee the rights to an invention perfected by an employed inventor independent of the inventor's employment. Many companies require the assignment of all an employee's inventions. This creates a disincentive to invent since the inventor will receive little or no compensation for his or her "free invention". Proponents of the bill state that the disincentive to invent has resulted in a slackening of creative inventiveness in the United States and note that the U.S. has fallen to seventh place in terms of patents of origin. This bill would place in statute the legal concept that the right to an invention made independent of the employee's employment belongs to the employee.

SUPPORT: California Society of Professional Engineers

OPPOSE: TRW Inc. (Redondo Beach)
American Safety Equipment Corp. (Encino)
California Manufacturers Association
Rockwell International

Consultant: Steve Holloway
(mh)