1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     johnquinn@quinnemanuel.com
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11               EASTERN DIVISION

| | |
|---|---|
| 12 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13 Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
| 14 vs. | Case No. CV 05-02727 |
| 15 MATTEL, INC., a Delaware<br>corporation, | **DISCOVERY MATTER** |
| 16 Defendant. | **[To Be Heard by Discovery Master<br>Hon. Edward Infante (Ret.) Pursuant to<br>17 The Court's Order of December 6, 2006]** |
| 18 AND CONSOLIDATED ACTIONS | REPLY IN SUPPORT OF MATTEL,<br>INC.'S MOTION TO COMPEL<br>19 DEPOSITION AND PRODUCTION OF<br>DOCUMENTS OF CHRISTENSEN,<br>20 GLASER, FINK, JACOBS, WEIL &<br>SHAPIRO, LLP |
| 21 | |
| 22 | Date: TBD<br>Time: TBD<br>23 Place: TBD |
| 24 | **Phase I**<br>Discovery Cut-off: January 28, 2008<br>25 Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |
| 26 | **PUBLIC REDACTED** |
| 27 | |
| 28 | |

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PRELIMINARY STATEMENT ..................................................................... 1

ARGUMENT ..................................................................................................... 2

I.    CHRISTENSEN MISINTERPRETS THE FEBRUARY 4, 2008
ORDER. .................................................................................................... 2

II.   CHRISTENSEN MISSTATES THE STANDARD IN THIS
DISTRICT APPLICABLE TO SUBPOENAS TO ATTORNEYS . .............. 4

III.  MATTEL'S SUBPOENA COMPLIES WITH THE CENTRAL
DISTRICT'S STANDARDS. ...................................................................... 5

     A.    Isaac Larian's Handling Of The Bryant-MGA Agreement. ................. 7

             1.    Christensen's Unique Knowledge as a
Percipient Witness. ................................................. 7

             2.    The Agreement Christensen Received Is Not
Privileged. ............................................................... 9

     B.    Mattel Seeks Non-Privileged Information About Farhad Larian's
Destruction Of Evidence. .................................................................. 11

     C.    Christensen Appears To Have Non-Privileged Information About
Farhad Larian's Destruction Of Evidence. ........................................ 13

     D.    Christensen Has Non-Privileged Documents Relevant To MGA's
Disqualification Threat. ..................................................................... 18

     E.    Christensen Fails To Demonstrate Why Compliance With
Mattel's Subpoena Would Be Unduly Burdensome. ........................... 20

     F.    Mattel Has Taken Reasonable Steps To Obtain Information
Elsewhere, To No Avail. ..................................................................... 21

IV.  CHRISTENSEN MISSTATES THE RECORD ON THE MEET AND
CONFER PROCESS. ................................................................................. 25

CONCLUSION. ................................................................................................ 26

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## Cases

4

5

*Green v. Baca,*
    226 F.R.D. 624 (C.D. Cal. 2005) ............................................................…. 6

6

*In re Napster, Inc. Copyright  Litigation,*
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ........................................................ 9, 10

7

8

*Nash v. Waddington,*
    2006 WL 1207903 (W.D. Wash. 2006) ...............................................…. 6

9

*Rambus, Inc. v. Infineon Technologies AG,*
    222 F.R.D. 280 (E.D. Va. 2004)........................................................ 9, 13

10

11

*In re Subpoena Issued to Dennis Friedman,*
    350 F.3d 65 (2d Cir. 2003) ........................................................... 4, 5, 20

12

*Younger Mfg. Co. v. Kaenon, Inc., ,*
    247 F.R.D. 586 (C.D. Cal. 2007) ............................................... 5, 6, 7

13

14

## Statutes

15

*Federal Rules of Civil Procedure*

16

   *Rule 26* ...................................................................... 4, 5, 6, 17

17

   *Rule 45(c)(3)* ...................................................................... 4

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

The Opposition of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP ("Christensen")[1] strains logic and misstates the facts to argue that, despite two Court orders, it has no obligation to appear for deposition. Christensen suggests, for example, that documents related to the Bryant-MGA agreement, which Bryant and MGA shared as counterparties to a transaction, are privileged. Christensen also suggests that any communications it had with Bryant or his counsel, again regarding Bryant and MGA as counterparties, are privileged. Christensen goes on to argue that it has no responsibility to testify about *its own role* as a percipient witness concerning non-privileged facts about what *Christensen received* from Victoria O'Connor. And Christensen does so even though its testimony relates to a critical fact in this case—Isaac Larian's tampering with evidence regarding the MGA-Bryant agreement that is specifically alleged in Mattel's counterclaims—and whether Isaac Larian made misrepresentations about this issue.

---

[1]   The MGA parties, including Isaac Larian (together, "MGA") also filed an unauthorized opposition to Mattel's motion two weeks late. Mattel accepted a request from Christensen for a two-week extension to file an Opposition based on Christensen's representations that it needed more time to look for relevant, non-privileged information. Supplemental Declaration of Juan Pablo Albán filed concurrently ("Supp. Albán Dec.") ¶ 2, Exh. 1 (Mar. 11, 2008 Gizer and Albán e-mails). MGA never participated in that negotiation nor informed Mattel of its intent to file an Opposition. MGA is not a party to the Stipulation. *Id.*, Exh. 2 (Stip. and Order). MGA also neither served objections nor moved to quash Mattel's subpoena on Christensen. The Court should not consider MGA's belated and unauthorized Opposition. Mattel should not have to address a surprise Opposition in the limited time frame to file a Reply. Mattel nevertheless does address MGA's opposition in an abundance of caution. References to "Christensen's" positions also apply to MGA unless otherwise specified.

1      Similarly, Christensen suggests that it has no obligation to provide

2  Mattel information about *its own role* in MGA's document preservation and

3  destruction efforts, including which witnesses were instructed to preserve what and

4  when.  Christensen now takes this obstructionist position even though Patricia

5  Glaser represented to the Court that such information is not privileged.  The Court

6  agreed with her on that point.

7      Christensen additionally argues that, despite MGA and Bryant's

8  withholding of relevant and non-privileged information for almost four years, it has

9  no obligation now to provide that information.  Christensen relies on the so-called

10  *Shelton* standards, which have never been adopted by the Ninth Circuit.  But even if

11  they were the law in this Circuit (and they are not), the *Shelton* standards heavily

12  weigh in favor of compelling Christensen to appear for deposition and produce

13  documents.  Under Christensen's logic, a lawyer would be able to freely advise its

14  client, and a former major shareholder and director of its client, to destroy evidence.

15  The lawyer could then cloak himself or herself under privilege to permanently keep

16  other copies of that evidence, or those instructions, from surfacing.  The law,

17  including as it applies to privilege, simply does not stand for that proposition.

18

19                            **Argument**

20

21  **I.    CHRISTENSEN MISINTERPRETS THE FEBRUARY 4, 2008 ORDER.**

22      MGA misstates the record on the Court's February 4, 2008 Order and

23  on what evidence Judge Larson had before him.  MGA claims that Judge Larson's

24  decision only applied to the number of depositions Mattel could take.[2]  MGA also

25

26

27  _____

28  [2]   MGA Opp. at p. 3:18-22.

1  claims that the Court did not have access to the Topics and Requests Mattel sought,
2  so it had no way to address them.[3]

3          To the contrary, the Court's February 4 Order went beyond the number
4  of depositions Mattel could take. Christensen specifically requested that the Court
5  limit Mattel's deposition to only one Topic.[4]  In the briefing preceding the Order,
6  Mattel gave the Court a copy of Mattel's subpoena to Christensen Glaser so that it
7  could properly address Christensen's request to limit the deposition to one Topic.[5]
8  With that subpoena in the record, and addressing Christensen separately, the Court
9  ruled that "*[u]nless* otherwise restricted by the Discovery Master upon proper
10  presentation of the issue to him, Mattel may depose Christensen, Glaser on *any*
11  relevant, non-privileged matter."[6]

12          Despite this language, Christensen takes the strained position that it
13  still had no obligation to appear for deposition because it served objections prior to
14  the February 4 Order. Mattel does not disagree that the Discovery Master has first
15  say in ruling on the scope of a deposition upon "proper presentation of the issue to
16  him." But after the February 4 Order, "proper presentation of the issue" required
17  Christensen to seek a ruling from the Discovery Master if it intended to not appear
18  for deposition. The word "unless" is not ambiguous in the February 4 Order. The
19  Court's ruling was, plainly, that Christensen otherwise was required to appear for
20  deposition on any relevant, non-privileged matter. Tellingly, following the Court's
21  January 7 and February 4 Orders, other MGA and Bryant attorneys—David
22  Rosenbaum and Anne Wang—understood the Court's directive and appeared for
23  deposition.[7]

---

[3]  *Id.* at pp. 4:16 – 5:13.
[4]  Albán Dec., Exh. 16 at p. 4, ¶ 9 (Feb. 4, 2008 Order).
[5]  Supp. Albán Dec., Exh. 3 (Jan. 28, 2008 C. Price Dec.).
[6]  Albán Dec., Exh. 16 at p. 4, ¶ 9 (Feb. 4, 2008 Order) (emphasis added).
[7]  Supp. Albán Dec. ¶ 5.

1        Christensen failed to seek relief from the February 4 Order to appear

2   for deposition on any relevant, non-privileged matter and instead unilaterally

3   refused to appear. This violated both the language and the spirit of the Order and

4   forced Mattel to request a *third* order on the same issue. Christensen's unreasonable

5   delay in seeking relief waived its right to "properly present" the issue to the

6   Discovery Master. *Fed. R. Civ. P.* 45(c)(3) (motion to quash or modify subpoena

7   must be timely). On this ground alone, the Discovery Master should reject

8   Christensen's excuses in their entirety and compel Christensen to appear for

9   deposition on all relevant, non-privileged Topics.

10

11   **II.   CHRISTENSEN MISSTATES THE STANDARD IN THIS DISTRICT**

12   **APPLICABLE TO SUBPOENAS TO ATTORNEYS .**

13        Christensen cites no Ninth Circuit decision adopting the *Shelton*

14   standard, nor have federal courts uniformly accepted *Shelton*. The Second Circuit,

15   for example, explicitly rejected the standard, stating that "the standards set forth in

16   Rule 26 require a flexible approach to lawyer depositions whereby the judicial

17   officer supervising discovery takes into consideration all of the relevant facts and

18   circumstances to determine whether the proposed deposition would entail an

19   inappropriate burden or hardship." *In re Subpoena Issued to Dennis Friedman*, 350

20   F.3d 65, 72 (2d Cir. 2003). *Friedman* notes, in fact, that only the Sixth and the

21   Eighth Circuits have adopted the standard. *Id.* at 71.

22        MGA misstates the law when it argues that district courts in the Ninth

23   Circuit have "uniformly followed" *Shelton*.[8] In fact, ***this Court*** explicitly rejected

24   the *Shelton* standard last year:

25        As an initial matter, there is no Ninth Circuit precedent addressing the

26        proper standards for the Court to consider in this situation. The Ninth

27   ———————————

28   [8]   MGA Opp. at p. 9:3-4.

1    Circuit Court of Appeals has not adopted the Eighth Circuit's reasoning

2    in *Shelton* . . . or the Second Circuit's reasoning in *In re Subpoena*

3    *Issued to Dennis Friedman* . . . ***and this Court finds the Second***

4    ***Circuit's reasoning to be the more persuasive.***

5  *Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588 (C.D.Cal. 2007)(emphasis

6  added).  This Court in *Younger* chose to follow various factors under <u>Rule</u> 26,

7  including

8    the need to depose the lawyer, the lawyer's role in connection with the

9    matter on which discovery is sought and in relation to the pending

10    litigation, the risk of encountering privilege and work-product issues,

11    and the extent of discovery already conducted . . . Under this approach,

12    the fact that the proposed deponent is a lawyer does not automatically

13    insulate him or her from a deposition ***nor automatically require prior***

14    ***resort to alternative discovery devices***, but it is a circumstance to be

15    considered.

16  *Id.* (emphasis added).

17

18  **III.    MATTEL'S SUBPOENA COMPLIES WITH THE CENTRAL**

19  **DISTRICT'S STANDARDS.**

20    The factors the Central District has adopted, and indeed even the

21  *Shelton* factors, weigh heavily in favor of compelling Christensen to appear for

22  deposition and produce documents.  First, Christensen Glaser is a uniquely-

23  positioned percipient witness and has a copy of a non-privileged document that

24  would reveal whether or not Isaac Larian had the MGA-Bryant agreement tampered

25  with.  This is unquestionably highly probative evidence bearing on several key

26  issues.  The MGA-Bryant agreement is at the heart of this case and is the very

27  document by which Bryant purportedly assigned Bratz to MGA in the first place.

28  The date of its transmission to Christen alone is potentially material.  And, if it was

1  altered, as Judge Larson has noted, it would be evidence of spoliation.[9]  Plainly,
2  spoliation of evidence designed, as O'Connor testified, to conceal Bryant's
3  involvement with MGA while still a Mattel employee would support a jury
4  inference of guilty knowledge and intent by defendants as well as fraudulent
5  concealment for statute of limitations purposes.  Furthermore, such evidence
6  tampering is specifically alleged in Mattel's counterclaims as a RICO predicate act.[10]

7        Second, the documents Mattel seeks do not call for privileged
8  information.  The MGA-Bryant agreement simply cannot be privileged, and the
9  date, time and manner of its transmission – as well as the form in which it was
10 transmitted – is not remotely privileged either.  Mattel also asks for non-privileged
11 information about document preservation and payments to witnesses, and MGA
12 communications with Mattel personnel.  Given that Mattel's Topics and Requests
13 focus on non-privileged information, *Rule* 26, case law and the Court's prior rulings
14 dictate that that the parties and the Court should resolve privilege issues only on a
15 case-by-case basis.[11]

16
17
18
19 [9]  Supp. Albán Dec., Exh. 23 at p. 17 (Aug. 11, 2006 Order) (O'Connor's
20 testimony "calls into question MGA's handling of relevant documents in its possession.").
21 [10]  Albán Dec., Exh. 1 at ¶¶ 35, 36, 93(c)(i) (Mattel's Second Amended Counterclaims)
22 [11]  Supp. Albán Dec., Exh. 24 (Jul. 2, 2008 Order) ("To the extent such a
23 deposition [on destructive ink testing by an MGA consultant] has the potential to encroach upon information protected by the work-product privilege, then that
24 objection must be made on a question-by-question basis."). *See also Nash v.*
25 *Waddington,* 2006 WL 1207903, at *1 (W.D. Wash. 2006) ("While the attorney-client privilege may certainly be a proper objection to certain discovery questions,
26 the court is not persuaded that the privilege may be used as a blanket refusal to any discovery."); *Green v. Baca,* 226 F.R.D. 624, 652 (C.D. Cal. 2005) ("Like his claim
27 of attorney-client privilege, defendant's blanket invocation of the work product doctrine is not a sufficient basis to exclude Bobb's testimony in it entirety.")
28

MATTEL'S REPLY RE CHRISTENSEN GLASER

1       Finally, as discussed further below, despite Mattel's repeated efforts to
2   obtain the evidence from MGA and third parties, and despite numerous Orders to do
3   so, they have refused to produce it, destroyed it or otherwise claim to no longer have
4   it.

5

6       **A.    <u>Isaac Larian's Handling Of The Bryant-MGA Agreement.</u>**
7           **1.    <u>Christensen's Unique Knowledge as a Percipient Witness.</u>**
8       Christensen uniquely possesses information about the Bryant-MGA
9   agreement and related transactions.[12] Its Opposition misses the point when it argues
10  that both Victoria O'Connor and Isaac Larian testified that O'Connor sent the
11  agreement to Ms. Glaser, so a jury can decide which witness has more credibility as
12  to whether Christensen received an altered signature page from Bryant.[13] The
13  argument only serves to underscore that MGA and Christensen seek to obscure the
14  truth and treat the judicial process as a guessing game.

15  # REDACTED
16
17  t    Christensen has information that can potentially
18  resolve the issue of what occurred in a straight-forward, non-burdensome way:
19  Christensen either received a version of the agreement from O'Connor with a fax
20  header from Mattel on Bryant's signature page, or it did not. *See Younger Mfg. Co*,
21  247 F.R.D. at 588 (requiring attorney to appear for deposition when it had percipient
22  knowledge of relevant facts).  In any event, the answer to this question goes far
23  beyond just credibility.  It goes to the heart of whether or not (a) Bryant and MGA

24  _____

25  [12]  Mattel's Topics 1-3, 5, 7 and 11-13, and Requests 1-6, 8, and 11-14 cover the
26  Bryant/MGA agreement and related claims and defenses in this action, as set forth
    more specifically in Mattel's Separate Statements.
27  [13]  Opp. at p. 12:1-6.
28  [14]  Supp. Albán Dec., Exh. 5 at p. 309:3-13 (Bryant Depo Tr. Vol. 2).

      7

1  finalized the agreement while Bryant still worked for Mattel and (b) MGA believed

2  in good faith that Bryant had the rights to Bratz—an affirmative defense MGA

3  raised.[15]  It also, as noted, goes to issues of spoliation and to RICO predicate acts

4  alleged in Mattel's counterclaims.[16]

5       MGA incorrectly argues that testimony regarding Larian's tampering of

6  the Bryant-MGA agreement only goes to Phase 2.[17]  Tampering of the agreement

7  does go to Mattel's RICO claims.  The agreement, however, is also central to the

8  Phase I copyright infringement claims and to Larian's good faith defenses.  As the

9  Court ordered, depositions that encompass both Phases are not stayed.[18]

10      Finally, MGA's attachment of seven versions of the MGA-Bryant

11 agreement—none of which indicate a fax from O'Connor to Glaser—serves no

12 purpose here.[19]  Neither Mattel nor the Court can tell from this if Christensen

13 received any of these versions, or any other versions.  The exhibits are meaningless

14 without a production and testimony from Christensen about what it received.

15

16

17

18
19   [15]  Supp. Albán Dec., Exh. 4 at pp. 22, 25 (MGA's Fifth, Sixth, Eighteenth
     Affirmative Defenses in Am. Answer and Aff. Def. of MGA, dated Sep. 19, 2007).
20   [16]  Christensen also misses the point when it argues that Isaac Larian can again
     answer the question instead of Christensen.  He has already denied at deposition the
21   episode of tampering occurred, and forcing Mattel to see if he would change his
22   testimony cannot be a basis for denying relevant discovery from a third-party.  If
     anything, Larian's testimony makes clear why this additional discovery is necessary.
23   Christensen, unlike Larian, also was the recipient of the document, so it alone can
24   testify about what it in fact received.
     [17]  MGA Opp at p. 12.
25   [18]  Albán Dec., Exh. 16 at p. 3, ¶ 6 (Feb. 4, 2008 Order).  Because Christensen
26   has information about both Phases, its deposition subpoena on strictly Phase II
     Topics and Requests going to trade secret theft should occur simultaneously under
27   the Court's Order.
28   [19]  Marsh Dec., Exhs. F-L.

## 2.   The Agreement Christensen Received Is Not Privileged.

Christensen does not dispute Mattel's point that agreements or drafts of agreements that MGA and Bryant shared are not privileged. That opposite parties to a transaction shared the agreements is the central privilege issue here as to the documents Mattel seeks related to the Bryant-MGA agreement or agreements.[20] Bryant saw and reviewed the agreement that O'Connor sent Christensen. Bryant and/or his attorneys communicated with MGA and/or its attorneys in finalizing the agreement. Mattel's subpoena explicitly excludes privileged material.[21]

Testimony about the agreement also will not encompass non-privileged information. Whether or not Ms. Glaser received a version of the agreement with a fax heading does not divulge the substance of any attorney-client communication. Further, if Christensen knew or found out that Larian sent a tampered version of the agreement, and sanctioned that conduct in its advice, under no circumstances are such communications privileged. *See Rambus, Inc. v. Infineon Technologies AG*, 222 F.R.D. 280, 290 (E.D. Va. 2004) ("the crime/fraud exception [to the attorney-client and work product privileges] extends to materials or communications created in planning, or in furtherance of, spoliation of evidence").

Christensen contends that Larian's tampering of the MGA-Bryant agreement is not spoliation because this litigation did not exist at the time.[22] An obligation to preserve evidence, however, commences when a party anticipates or should reasonably anticipate litigation. *See, e.g., In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1069 (N.D. Cal. 2006).

# REDACTED

---

[20]   Mot. at pp. 12-13.
[21]   Albán Dec., Exh. 13 at p. 223, ¶2(B) (Subpoena's Instructions regarding withholding of privileged documents).
[22]   Opp at pp. 14-15.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# REDACTED

27    [23]   Supp. Albán Dec., Exh. 25 at 436:9-438:4 (Mar. 26, 2008 I. Larian Depo. Tr.
28    Vol. 2).

1

2

3 # REDACTED

4

5 1                           Regardless, the tampering of the Bryant-

6 MGA agreement is non-privileged, relevant evidence of Larian's alleged "good

7 faith" intent, whether or not the tampering constituted spoliation.

8

9 **B.    Mattel Seeks Non-Privileged Information About Farhad Larian's**

10 **Destruction Of Evidence.**

11          Conspicuously absent from Christensen's declaration in support of its

12 Opposition is any affirmative declaration that it played no role or did not know

13 about how MGA handled document preservation with respect to Farhad Larian.[27]

14 To the contrary, MGA's general counsel declares that its outside counsel ***was***

15 involved in preservation efforts with respect to "key" witnesses.[28] Ms. Glaser has

16 argued that information about what documents were and were not preserved is not

17 privileged:

18          I think I'm entitled to know, and I think the Court, more importantly, I

19          guess, is entitled to know if the request for preservation was a limited

20          request inappropriately limited or if it was a broad request.  Because I

21

22

23 [24]   Supp. Albán Dec., Exh. 6 at Entry No. 89 (I. Larian Privilege Log) (emphasis

24 added).  Entry No. 90 is another communication from Larian to Glaser, dated June

25 29, 2001.
   [25]   *Id.*, Exh. 7 at Entry Nos. 655-657, 660 (MGA Aug. 14, 2007 Supp. Privilege

26 Log).
   [26]   *Id.*, Entry No. 660.

27 [27]   Gizer Dec.

28 [28]   Alban Dec., Exh. 9 at ¶ 4 (Sep. 10, 2007 Gronich Dec.)

1    will represent to the Court, MGA's counsel sent out something saying,

2    "preserve everything."[29]

3       . . .

4    We haven't sent a directive around saying, "preserve this but not this."

5    We've asked *everybody* to preserve *everything*.  We're not hiding that.

6    There's no criteria that's out there.  We've asked them to preserve

7    everything.[30]

8  The Court expressly stated that information about what was and was not preserved

9  is not privileged information:

10    [T]here's certainly no privilege issue with respect to the scope of the

11    retention policy, given what this witness and many other witnesses for

12    Mattel have already disclosed.[31]

13       . . .

14    What I want from both parties is two singular declarations, under

15    penalty of perjury, setting forth exactly the preservation policies.  I

16    want it from MGA.  I want it from Mattel.  And I don't want to just

17    hear about 35 witnesses.  I want to know who those 35 people are.  I

18    don't want to hear just about 'we were asked to save everything,'

19    because obviously, MGA is not saving every e-mail in their entire

20    company.  You've got criteria as well.[32]

21       If Christensen had any involvement in or knowledge about MGA's

22  decision not to instruct Farhad Larian to preserve documents, or worse, to

23  affirmatively tell him that he had no obligation to preserve documents, the substance

24  of such communications are likewise not privileged—they would constitute

25

26  [29]  Supp. Albán Dec., Exh. 8 at 89:25-90:5 (Aug. 27, 2007 Hearing Tr.).

     [30]  *Id.* at 117:2-118:1 (emphasis added).

27  [31]  *Id.* at 90:22-24.

28  [32]  *Id.* at 119:9-16.

1  communications related to the planning or in furtherance of spoliation of evidence.

2  *Rambus*, 222 F.R.D. at 580.

3  **REDACTED**

4

5

6  Spoliation and Christensen's knowledge thereof

7  is squarely at issue with respect to Farhad Larian's destruction of evidence.

8

9  ### C.  **Christensen Appears To Have Non-Privileged Information About**

10  **Farhad Larian's Destruction Of Evidence.**

11  As stated above, any evidence about whether or not MGA's attorneys

12  told Farhad Larian to preserve or destroy evidence is not privileged under *Rambus*.

13  But the information Christensen has goes beyond that.  Mattel has grounds to

14  believe that attorneys—very likely Christensen—were involved in Farhad Larian's

15  decision to destroy evidence.

16  **REDACTED**

17

18

19  At the time he destroyed the documents, Mr. Larian was a paid

20  consultant for MGA and knew that Christensen represented MGA.[38]  When Mattel

21  sent Mr. Larian a document preservation letter in late November 2005—roughly

22  contemporaneous with Farhad Larian's destruction of documents according to his

23

24  [33] Albán Dec., Exh. 7 at 59:9-60:6 (Feb. 4, 2008 F. Larian Depo. Tr.).

[34] *Id.* at 56:22-57.2.

25  [35] Supp. Albán Dec., Exh. 9 (May 4, 2004 e-mail from F. Larian to I. Larian).

26  [36] Albán Dec., Exh. 7 at 98:11-99:2 (Feb. 4, 2008 F. Larian Depo. Tr.).

[37] *Id.*

27  [38] *Id.*, Exhs. 5 (Consulting Agr. between F. Larian and MGA) and 6 (Jul. 5, Ltr.

28  from Glaser to Quinn).

# REDACTED

1  testimony—.                                                     ' Mattel also has

2  inspected evidence that, during a time when Christensen represented MGA, Isaac

3  Larian instructed Farhad Larian to conceal from outside litigation counsel original

4  documents that MGA possessed.[40]  Days before Farhad Larian destroyed the

5  documents,

6

7

8

9

10                      **REDACTED**

11

12

13

14

15

16

17         It is also disingenuous for MGA to suggest to the Court that the "only"

18  document MGA knew Farhad Larian possessed was a telephone list of MGA

19  employees.[42]  Gronich apparently did send Farhad Larian a letter specifically asking

20

21

22  _____

23  [39]  *Id.*, Exh. 7 at 46:4-47:4 (Feb. 4, 2008 F. Larian Depo. Tr.).
    [40]  Supp. Albán Dec., Exh. 10 at p. 1, ¶ 2 (Zeller Dec. dated Jan. 3, 2008).

24  [41]  *Id.*, Exh. 11 at 107:2-14 (I. Larian testimony in *Larian v. Larian*).  *See also*

25  *id.* at 75:18-76:1 ("Because one thing you are going to see about Mr. Fred Larian, he is capable of lying under oath.  He's capable of backdating documents.  He's

26  admitted to both of these things in prior litigation.") (I. Larian opening statement);

27  159:13-160:5 (F. Larian fabricated an agreement that did not exist in other litigation); 182:11-15 (another possibly fabricated e-mail).

28  [42]  MGA Opp at pp. 14-15.

1  him to return that telephone list.[43] Mr. Larian's response to that letter on September
2  7, 2005, informed Gronich that he did not have that telephone list, but that he did
3  have Bratz-related documents:

4      Fred did not obtain while at MGA and does not have a confidential list
5      of home telephone numbers of MGA's current or former employees

6          . . .

7      Because of the generalizations you use to identify MGA's "trade
8      secrets," we are unable to intelligently evaluate your claim that any are
9      involved here . . . It is certainly not clear what, if any, information
10     concerning development of Bratz Dolls is a "trade secret" . . . much of
11     the information is so old that it cannot possibly have any commercial
12     value from being "secret" . . . Fred's interest in the information is for
13     use in the arbitration over Isaac's concealment of it in 2000 when it
14     should have been disclosed to Fred . . . .[44]

15  At the time, Farhad Larian was also in litigation against Isaac Larian regarding
16  concealment of Bratz from Farhad Larian in 2000. On November 16, 2005, days
17  before Farhad Larian claims to have destroyed evidence, Isaac Larian heard Farhad
18  Larian's counsel describe the Bratz-related evidence Farhad Larian intended to offer
19  during the arbitration:

20

21                        REDACTED
22

23

24

25

26  [43]  Supp. Albán Dec., Exh. 12 at p. 1, ¶ 1 (Sep. 7, 2005 Ltr. from Kremer to
    Gronich responding to Aug. 19, 2005 Ltr.). MGA agreed to but does not appear to
27  have produced the August 19, 2005 letter from Gronich.
28  [44]  *Id.* at pp. 1-2, ¶¶ 1, 3. (Sep. 7, 2005 Ltr. from Kremer to Gronich).

                                          MATTEL'S REPLY RE CHRISTENSEN GLASER

1

2

3

4

5

6

7

8

9

10          **REDACTED**

11

12

13

14

15

16

17

18

19

20

21          Given all of the above, at a minimum, MGA had a strong basis to

22 believe that Farhad Larian—a witness Mattel had already identified in its *Rule* 26

23 disclosures and a former MGA officer and director who was still under contract with

24 MGA—had Bratz-related documents and was perfectly capable of destroying them

25 to keep them from Mattel.

26          **REDACTED**

27 _____

28     [45]   *Id.*, Exh. 11 at 62:24-65:5 (F. Larian Opening in *Larian v. Larian*).

07209/2451289.4

16

# REDACTED

1

2   and shortly thereafter indeed destroyed the bulk of his evidence.

3       MGA's attempt to shrug off any responsibility to instruct Farhad Larian

4   to preserve evidence because he was merely a "contractor" in 2005 is unavailing.[47]

5   Christensen relies in part on that very same fact as a basis to justify its threat to

6   disqualify Quinn Emanuel for reviewing Farhad Larian's documents.[48]  Christensen

7   also emphasized Farhad Larian's intimate relationship with MGA, including his

8   status as a former controlling shareholder and director of the company.[49]  Mattel had

9   also already identified Farhad Larian as a key witness with knowledge of the

10  development of Bratz.[50]  Ms. Gronich declared to its outside counsel making efforts

11  to instruct "key potential witnesses," not just employees, to preserve evidence.[51]

12      The facts cited above show that MGA and its counsel did not simply

13  forget or not think about asking Farhad Larian to preserve evidence.  Given MGA's

14  knowledge about Farhad Larian's possession of evidence directly related to the

15  development of Bratz in 2000 -- the same issue in this litigation -- his long past

16  history with MGA, the fact that MGA was paying him $7,500 per month in

17  "consulting" fees for doing nothing, and the fact that MGA knew of Farhad Larian's

18  capacity to spoliate evidence, MGA and its counsel had preservation obligations

19  with Farhad Larian.  Christensen must provide testimony about its knowledge and

20  efforts on document preservation as they apply to Farhad Larian, especially during

21  times that it was not even his counsel.  Christensen's information about document

22

23

---

24  [46]  *Id.* at 314:12-315:13 (F. Larian statement in *Larian v. Larian*).

25  [47]  Opp at p. 14:2-9.

    [48]  Albán Dec., Exh. 6 (Jul. 5, 2007 Ltr from Glaser to Quinn).

26  [49]  *Id.*

27  [50]  Supp. Albán Dec., Exh. 13 at p. 4, ¶ 20 (Mattel's May 16, 2005 Supp. *Rule 26* Disclosures).

28  [51]  Albán Dec., Exh. 9 at p. 123, ¶ 4 (Sep. 18, 2008 Gronich Dec.)

1  preservation more generally is also discoverable under the relevance and non-
2  privilege parameters that the Court established.

3          Christensen apparently has a history of trying to shield itself from
4  providing adverse testimony by manipulating privilege.[52]  Christensen himself is a
5  defendant in a criminal trial pending in this District involving illegal wiretapping.[53]
6  The government issued a trial subpoena on Ms. Glaser.[54]  Even though she initially
7  agreed to testify, two days later "Christensen's counsel notified the government that
8  Glaser would be joining the defendant's team."[55]  In opposing Christensen's motion
9  to add Ms. Glaser to his legal team, the government argued that this is an attempt "to
10  use privilege to suppress from public disclosure information adverse to his potential
11  interests."  Although the Court allowed Ms. Glaser to represent Christensen, he
12  ordered Christensen to sign a waiver that would allow her to testify if the
13  prosecution calls Ms. Glaser as a witness during trial.[56]

14

15  **D.    Christensen Has Non-Privileged Documents Relevant To MGA's**
16  **Disqualification Threat.**

17          MGA claims that the "only" non-privileged document it has in its
18  possession related to MGA's "contemplated" disqualification is the letter it sent to
19  Quinn Emanuel cited above.[57]  That representation is apparently false.  Mattel
20  specifically asked Christensen, as it did Farhad Larian, to produce a list of
21  documents that Mattel inspected in November 2005 at the offices of Farhad Larian's

22

23      [52]  Supp. Albán Dec., Exh. 14 (Feb. 7, 2008 Hollywood Reporter, Esq., "The
24  Anthony Pellicano Trial: Will Patty Glaser Be A Witness Or Defense Counsel?").
         [53]  *Id.*
25      [54]  *Id.*
        [55]  *Id.*
26      [56]  *Id.*, Exh. 15 (Feb. 19, 2008 *knbc.com*, "Judge: Separate Trials For Lawyer,
27  Pellicano In Racketeering Case.").
        [57]  Opp. at p. 11:22-23.
28

1   attorneys.[58]  It is Mattel's inspection of those documents upon which MGA

2   threatened to disqualify Quinn Emanuel.[59]  The documents themselves, then, are

3   central to Mattel's defense to this threat and are not privileged.  Christensen's

4   objections do not say that it does not have these documents in its possession.[60]

5           Mattel cannot get most of these documents from Farhad Larian because

6   he testified that he destroyed them.  Further, contrary to Christensen's suggestion

7   that Farhad Larian's other attorneys can produce documents,[61]

8                          REDACTED

9           MGA may indeed have the documents, but it has failed to

10  produce a substantial number of them despite Mattel's Requests and Court Orders

11  compelling them.  For example, MGA has not produced the following documents

12  that Mattel inspected and therefore knows existed as late as 2005:[63]

13  (b)    The November 22, 2000 chart describing changes to the Bratz Doll

14  Assortment and Bratz Holiday doll;

15  (c)    Farhad Larian's May 24, 2000 email to Isaac Larian that states Isaac had

16  instructed Farhad to withhold original documents that had been located in

17  connection with the Fireman's Fund case and "to tell him [an MGA attorney] we

18  could not find the originals.";

19  (d)    The document entitled "Analysis of Design, Packaging & Mock-Up Expense

20  for 6 Months Ending 6/30/99 and 6/30/00" attached to the August 11, 2000 email

21  from Dennis Medici to ISAAC LARIAN and FARHAD LARIAN; and

22

23

24   [58]  Albán Dec., Exh. 11 at Request No. 17 (Mattel's Subpoena to MGA).
25   [59]  Id., Exh. 9 (Jul 5, 2007 Ltr. from Glaser to Quinn).
     [60]  Id., Exh. 14 at pp. 24-25 (Christensen's Responses and Objections).
26   [61]  Opp. at p. 12:23-25.
     [62]  Albán Dec., Exh. 7 at pp. 55:7-14; 65:21-66:10 (Feb. 4, 2008 F. Larian Depo.
27   Tr.)
     [63]  See id., Exh. 13 at pp. 226-228 (Mattel's Request No. 17 to Christensen)

28

1   (e)      The January 31, 2001 email from ISAAC LARIAN to All in Marketing and
2   Product Development, Medici and Didi Brown asserting that he (ISAAC LARIAN)
3   had been purportedly diagnosed with "Alzheimer's" and denying in substance that
4   he ever said anything that cannot be confirmed by a writing.[64]

5

6           **E.      Christensen Fails To Demonstrate Why Compliance With Mattel's**
7                     **Subpoena Would Be Unduly Burdensome.**

8                The deposition sought will not "entail an inappropriate burden or
9   hardship." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d at 72. Though
10  Christensen refers to "millions" of documents in its possession, this does not in and
11  of itself implicate an unreasonable burden. Christensen undoubtedly can segregate -
12  - and likely already has segregated -- privileged documents it received from MGA
13  and Farhad Larian. Mattel is not asking for those. Christensen also undoubtedly
14  can segregate all documents Mattel received bearing Bates stamp headings "MGA"
15  or "FL." Mattel is not asking for those again. Mattel is also not asking MGA to
16  review any work product files, with the exception of any documents that do not
17  constitute work product as they relate to furtherance of or advice on document
18  destruction. As shown above, such information pierces any work product privilege.
19  What Mattel *is* asking for, in addition to information uniquely in Christensen's
20  possession, is all responsive, non-privileged information that Christensen's clients
21  have improperly withheld from Mattel for three years. There is nothing burdensome
22  about that.

23
24
25
26
27

28      [64]   Supp. Albán Dec. ¶ 24.

1    **F.    Mattel Has Taken Reasonable Steps To Obtain Information**
2        **Elsewhere, To No Avail.**

3        Christensen appears to admit that it possesses much of the information
4    Mattel seeks.  It refers to documents MGA and Farhad Larian have given to it, and
5    none of its objections state that they do not have responsive information.[65]
6    Christensen takes the position, however, that it has no obligation to produce the
7    information because MGA and Farhad Larian also purportedly have it.[66]  Of course,
8    this ignores that Farhad Larian testified that he destroyed almost everything he had
9    related to Bratz.  MGA also carefully crafts the language in its own unauthorized
10   opposition to stop short of saying it has given Mattel all documents it is entitled to.[67]
11   It also makes no such representation in its supporting declaration.[68]

12       In fact, three years ago, Mattel asked MGA and Bryant to produce
13   documents showing the timing of the conception of Bratz, and anything relevant to
14   the formation of the contract between Bryant and MGA.[69]  MGA's efforts to
15   withhold documents since then are uncannily persistent.  On July 2, 2007, after
16   producing "10,000 documents," Dale Cendali assured Judge Larson that MGA had
17   "substantially complied" with the Discovery Master's March 2007 Order requiring
18   the production of documents.[70]

19       The MGA defendants have since produced millions of pages of
20   documents, but almost none of them relate to the early development of Bratz in
21   1999 and 2000.[71]  For example, MGA has produced no e-mails related to the first

22

23

24   [65] Opp. at p. 11; Albán Dec., Exh. 14.
25   [66] Opp. at pp. 11-13.
     [67] MGA Opp. at pp. 20-26.
26   [68] Marsh Dec.
     [69] *Id.*, Exh. O.
27   [70] Supp. Albán Dec., Exh. 16 at p. 30:13-25 (July 2, 2007 Hrg. Tr.).
28   [71] *Id.* ¶ 25.

07209/2451289.4                                21

1 | Bratz molds,[72]

2 |     MGA has produced just one e-mail pointing to a Bratz focus

3 | group prior to November 2000,[74]

4 | # REDACTED

5 | ¡

6 |     This lackluster production sharply contrasts an argument Isaac Larian

7 | made during the *Larian v. Larian* arbitration to oppose Farhad Larian's claim that

8 | Isaac concealed Bratz from him in 2000. He argued that "[i]ndeed; the items alleged

9 | could hardly be 'special facts' when Farhad's own evidence is that 'former employees

10 | of MGA will testify that there was ***prolific email traffic*** regarding Bratz.'"[76] Isaac

11 | Larian also apparently had thousands of exhibits in the arbitration ready to disprove

12 | that he concealed Bratz from Farhad in 2000.[77] Consistent with Larian's argument,

13 | an MGA sales representative testified in *Larian v. Larian* that email was the

14 | predominant form of communication at MGA in 2000.[78]

15 |     Not surprisingly given MGA's discovery obstruction, Mattel has

16 | repeatedly learned critical information in this case only from third parties—

17 | including attorneys—where MGA had an obligation to produce that information

18 | long before. For example:

19 | •     One of Farhad Larian's former attorneys produced one of the few or only

20 | declaration from *Larian v. Larian* that Mr. Larian did not destroy. In that

21 | declaration, Mercedeh Ward says that, by the time she started working at MGA in

22 |

23 | [72] *Id.*

24 | [73] *Id.*, Exh. 25 at 191:2-25 (Leahy Dep. Tr.).

[74] *Id.* ¶ 25.

25 | [75] *Id.*, Exh. 11 at 237:4-6; 238:6-17; 239:14-240:17 (Maurus Tr. in *Larian v.*

26 | *Larian*).

[76] Supp. Albán Dec., Exh. 17 at p. 7 (I. Larian Arbitration Brief).

27 | [77] *Id.*, Exh. 11 at 47:11-16 (F. Larian opening statement in *Larian v. Larian*).

28 | [78] *Id.* at 243:2-6 (Maurus Tr. in *Larian v. Larian*).

1   October 2000 -- during a time when Bryant was still employed by Mattel --

2   defendants "had already begun sculpting the head for the Bratz doll."[79]

3   •       Kaye Scholer produced rough transcripts of the *Larian v. Larian* 2005

4   arbitration,[80] and one of Farhad Larian's attorneys produced a letter revealing the

5   court reporter for the arbitration.[81]  Kaye Scholer and Farhad Larian both refused to

6   provide Mattel the court reporter's information.[82]  Mattel was able to obtain from the

7   court reporter a final transcript of the proceedings.  There, Jennifer Maurus's

8   testimony starkly contradicts MGA's claims on the advancement of Bratz in 2000

9   and signals significant deficiencies in MGA's year 2000 document productions.

10

11

12

13                          **REDACTED**

14

15

16

17          Ms. Maurus's testimony relates directly to the conception, origins and early

18   development of Bratz, and MGA was obligated by Court Order to produce this

19   testimony—at least in rough form—since November 2005.  It did not do so.  Mattel

20   obtained it only from third parties and then, ultimately, by obtaining it from a court

21   reporter.

22   _____

23   [79]   *Id.*, Exh. 21 at ¶¶ 15, 16 (M. Ward Dec. dated Nov. 3, 2005).

24   [80]   *Id.*, Exh. 18 (Feb. 14, 2008 Ltr. from Delgadillo to Albán).
        [81]   *Id.*, Exh. 19 (Nov. 10, 2005 Ltr. from Kellner to ADR).
25   [82]   *Id.*, Exhs. 27 (Feb. 11, 2008 Ltrs. to Albán from Delgadillo); 28 (Feb. 13,
26   2008 Ltr. from Lever to Albán).
        [83]   *Id.*, Exh. 11 at 227:10-228:18 (Maurus Tr. in *Larian v. Larian*).
27   [84]   *Id.* at 229:22-231:7.
28   [85]   *Id.* at 237:4-6; 238:6-17; 239:14-240:17.

1    •     Contradicting MGA's affirmative defense that it believed "in good faith" that

2    Bryant had the rights to Bratz, MGA's attorney during those negotiations,

3

4

5

6

7    # REDACTED

8

9

10

11

12        Again, but for discovery from third parties, none of this

13    plainly crucial evidence would have come to light.

14        The circumstances described above and in the Motion heavily weigh in

15    favor of compelling Christensen to appear for deposition and produce documents,

16    even under the *Shelton* standards. Christensen has unique information. For

17    example, only Christensen received a version of the Bryant-MGA agreement from

18    O'Connor. MGA previously represented to Mattel that it could not locate it.[87]

19    Mattel also seeks information about ***Christensen's*** role in what was and was not

20    preserved, including with respect to Farhad Larian. None of this information is

21    privileged. For non-privileged relevant documents Christensen admittedly

22    possesses, Mattel has for three years made more than reasonable efforts, including

23

24

25    [86]  *Id.*, Exh. 20 at 71:20-88:18; 91:20-93:1. (D. Rosenbaum Depo. Tr.)
    [87]  Supp. Albán Dec., Exhs. 29, 30 (Dec 23, 2004 Ltr from Zeller to Meyers and

26    Meyers Jan. 7, 2005 Response). By contrast, Christensen informed Mattel on March

27    27, 2008 that it had located the faxed agreement from O'Connor. MGA and Bryant
also purportedly could not locate the original agreement. *Id.*, Exh. 31 at p. 15 n.6

28    (MGA and Bryant's Joint Opp. to Mattel's Mot. for Appnt. of Expert Witnesses).

MATTEL'S REPLY RE CHRISTENSEN GLASER

1  by obtaining Court Orders compelling MGA to produce them, but has been unable

2  to, procure critical evidence.

3

4  **IV.   CHRISTENSEN MISSTATES THE RECORD ON THE MEET AND**

5  **CONFER PROCESS.**

6          The Court's February 4 Order resolved and finalized the meet and

7  confer process as to Christensen's requirement to appear for deposition.  Christensen

8  admits that the parties had already met and conferred on Mattel's subpoena on

9  January 23.[88]  The process failed, and the Court subsequently confirmed Mattel's

10  right to depose Christensen on any relevant, non-privileged matter.

11          Mattel's attempt to send Christensen a final offer to meet and confer on

12  February 27 was an additional courtesy.  While there were inadvertent errors in the

13  delivery of that additional request, it does not alter the fact that Mattel had already

14  complied with its meet and confer obligations.  Mattel scarcely should be punished

15  for attempting to go beyond what was required -- especially given that the February

16  4 Order placed the onus on Christensen, not Mattel, to seek Court intervention if

17  Christensen was not going to appear for deposition.  Mattel's continued efforts to

18  resolve its disagreements with Christensen on March 2 and 5 also proved the futility

19  of further conferences.[89]  Christensen misrepresents the record of these efforts.  It

20  claims that Mattel summarily refused to accept a declaration from Christensen

21  stating that it had no documents or information that were uniquely in its possession

22  and not privileged.[90]  Regardless of its intention, Christensen never actually offered

23  an all-encompassing declaration, but rather only suggested that such a declaration

24

25

26  _____

27  [88]  Gizer Dec. ¶¶ 4-5.
   [89]  Supp. Albán Dec. ¶ 2.

28  [90]  Gizer Dec. ¶ 16.

MATTEL'S REPLY RE CHRISTENSEN GLASER

1 | might be appropriate as to "certain categories" of Mattel's Requests and Topics.[91]
2 | Mattel never uniformly rejected that proposal and proposed to consider a declaration
3 | on a topic-by-topic and request-by-request basis.[92]  As set forth in detail above,
4 | Mattel could not accept a blanket declaration because Christen indisputably
5 | possesses relevant, non-privileged information that Mattel does not reasonably have
6 | available by other means.  Christensen ignored Mattel's offer to address each Topic
7 | and Request separately.[93]

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court compel Christensen to appear for deposition to answer non-privileged questions about all Topics at issue here and to produce all non-privileged responsive documents responsive to its Request.

DATED:  March 31, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon D. Corey
Jon D. Corey
Attorneys for Mattel, Inc.

[91] Supp. Albán Dec., Exh. 1.
[92] Id.
[93] Supp. Albán Dec. ¶ 2.

07209/2451289.4

26