QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to The Court's Order of December 6, 2006]** |
| AND CONSOLIDATED ACTIONS | SUPPLEMENTAL DECLARATION OF JUAN PABLO ALBAN IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS OF CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP |
| | Date: TBD Time: TBD Place: TBD |
| | **Phase I** Discovery Cut-off: January 28, 2008 Pre-trial Conference: May 5, 2008 Trial Date: May 27, 2008 **PUBLIC REDACTED** |

1    SUPPLEMENTAL DECLARATION OF JUAN PABLO ALBÁN

2       I, Juan Pablo Albán, declare as follows:

3       1.    I am a member of the bar of the State of California and an

4    associate with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for

5    Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called

6    and sworn as a witness, I could and would testify competently thereto.

7       2.    Mattel, Inc. ("Mattel") and Christensen, Glaser, Fink, Jacobs,

8    Weil & Shapiro, LLP ("Christensen") held further meet and confer discussions

9    regarding Mattel's subpoena on Christensen after Mattel filed the motion at issue

10   here. Scott Gizer from Christensen and I participated in those discussions on March

11   2 and 5, 2008. During those discussions, Mr. Gizer requested first a one-week, and

12   then a two-week extension to file an Opposition. Mattel accepted the requests based

13   on Mr. Gizer's representation that Christensen was still going through approximately

14   six boxes of documents to determine whether it had non-privileged information.

15   Mr. Gizer offered to provide a declaration on "categories" of information for which

16   Christensen did not possess non-privileged information or documents. Mattel was

17   willing to consider such a declaration on a topic-by-topic and request-by-request

18   basis. Attached as Exhibit 1 is a true a correct copy of an e-mail exchange between

19   Mr. Gizer and me dated March 11, 2008, reflecting those discussions. Mr. Gizer

20   never responded to my proposal regarding a case-by-case declaration.

21      3.    Attached as Exhibit 2 a true and correct copy of the Stipulation

22   and Order Re Extension of Time For Christensen, Glaser to Oppose Mattel's Motion

23   to Compel Deposition and Production of Documents.

24      4.    Attached as Exhibit 3 is a true and correct copy of a Declaration

25   of Christopher Price dated January 28, 2008, only including the relevant exhibit

26   thereto.

27

28

2014:4/2448725.1

1

1         5.    I understand that, since Judge Larson's January 7, 2008 Order

2  granting Mattel leave to take additional depositions, David Rosenbaum and Anne

3  Wang have appeared for deposition.

4         6.    Attached as Exhibit 4 is a true and correct copy of the Amended

5  Answer and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment

6  (HK) Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second

7  Amended Answer and Counterclaims, dated September 19, 2007.

8         7.    Attached as Exhibit 5 are true and correct copies of relevant

9  excerpts from the deposition transcript of Carter Bryant, Volume 2, dated November

10  5, 2004.

11         8.    Attached as Exhibit 6 are true and correct copies of relevant

12  sections of Isaac Larian's privilege log dated January 15, 2008.

13         9.    Attached as Exhibit 7 are true and correct copies of relevant

14  sections of MGA's Supplemental Privilege Log dated August 14, 2007 .

15         10.    Attached as Exhibit 8 is a true and correct copy of an August 27,

16  2007 Hearing Transcript in this action.

17         11.    Attached as Exhibit 9 is a true and correct copy of a May 4, 2004

18  E-mail from Farhad Larian to Isaac Larian bearing Bates stamp MGA 4007280.

19         12.    Attached as Exhibit 10 is a true and correct copy of the

20  Declaration of Michael T. Zeller In Support Of Mattel, Inc.'s Motion to Compel

21  Farhad Larian, Stern & Goldberg and Kaye Scholer To Produce Documents, dated

22  January 3, 2008.

23         13.    Attached as Exhibit 11 are true and correct copies of relevant

24  excerpts from the transcripts of the *Larian v. Larian* arbitration proceedings that

25  took place on November 16 and 17, 2008.

26         14.    Attached as Exhibit 12 is a true and correct copy of a letter dated

27  September 7, 2005 from Mark D. Kremer, Farhad Larian's counsel, to Daphne

28  Gronich, bearing Bates stamps FL 0274 - 0277.

1      15.     Attached as Exhibit 13 is a true and correct copy of Mattel's

2  Supplemental *Rule* 26 Disclosures, dated May 16, 2005.

3      16.     Attached as Exhibit 14 is a true and correct copy of a February 7,

4  2008 article from *The Hollywood Reporter, Esq.* entitled "The Anthony Pellicano

5  Trial: Will Patty Glaser Be A Witness Or Defense Counsel?" available at

6  http://reporter.blogs.com/thresq/2008/02/patty-glaser-wi.html.

7      17.     Attached as Exhibit 15 is a true and correct copy of a February

8  19, 2008 article from *knbc.com* entitled "Judge: Separate Trials For Lawyer,

9  Pellicano In Racketeering Case" available at

10  http://www.knbc.com/news/15344316/detail.html.

11      18.     Attached as Exhibit 16 is a true and correct copy of a July 2,

12  2007 Hearing Transcript in this action.

13      19.     Attached as Exhibit 17 is a true and correct copy of Isaac

14  Larian's Response to New Issues In Farhad Larian's Opening Arbitration Brief dated

15  November 15, 2005.

16      20.     Attached as Exhibit 18 is a true and correct copy of a February

17  14, 2008 letter from Bryant Delgadillo to me.

18      21.     Attached as Exhibit 19 is a true and correct copy of a November

19  10, 2005 letter from Richard Kellner, attorney for Farhad Larian, to the Honorable

20  Alan B. Haber of ADR Services, Inc.

21      22.     Attached as Exhibit 20 are true and correct copies of relevant

22  excerpts from the deposition transcript of David Rosenbaum dated January 25,

23  2008.

24      23.     Attached as Exhibit 21 is a true and correct copy of a Declaration

25  of Mercedeh Ward dated November 3, 2005 produced to Mattel by Kabateck Brown

26  Kellner LLP.

27      24.     I am informed that our searchable production database is up-to-

28  date for the latest productions from MGA.  I searched the database for the

1 | documents listed in Mattel's Request No. 17 to Christensen.  Among the documents
2 | I could not find in the production database are:

3

4 | (c) the November 22, 2000 chart describing changes to the Bratz Doll Assortment
5 | and Bratz Holiday doll; (k) Farhad Larian's May 24, 2000 email to Isaac Larian that
6 | states Isaac Larian had instructed Farhad Larian to withhold original documents that
7 | had been located in connection with the Fireman's Fund case and "to tell him [an
8 | MGA attorney] we could not find the originals;" (l) the document entitled "Analysis
9 | of Design, Packaging & Mock-Up Expense for 6 Months Ending 6/30/99 and
10 | 6/30/00" attached to the August 11, 2000 email from Dennis Medici to Isaac Larian
11 | and Farhad Larian; and (o) the January 31, 2001 email from Isaac Larian to All in
12 | Marketing and Product Development, Medici and Didi Brown asserting that he
13 | (Isaac Larian) had been purportedly diagnosed with "Alzheimer's" and denying in
14 | substance that he ever said anything that cannot be confirmed by a writing.

15 |         25.     My colleague Heidi Frahm and I also searched for MGA e-mails
16 | dated prior to November 1, 2000 relating to the development, research or marketing
17 | for Bratz and got approximately 187 hits, including all repetitive e-mails produced.
18 | Adding the term "Gentle Giant" to those hits resulted in no e-mails.  Adding the
19 | terms "focus group" "or" "LA Focus" resulted in one e-mail chain.  Attached as
20 | Exhibit 22 is a true and correct copy of the e-mail chain dated between October 13
21 | and 16, 2000.

22 |         26.     Attached as Exhibit 23 is a true and correct copy of an Order
23 | Denying Motion For Appointment Of Expert Witnesses dated August 9, 2006.

24 |         27.     Attached as Exhibit 24 is a true and correct copy of a Court
25 | Order dated July 2, 2008, which, among other things, denied MGA's Motion Re
26 | Discovery Master's May 16, 2007 Order Re Mattel Motion To Compel 30(B)(6)
27 | Witnesses.

28

28.     Attached as Exhibit 25 are true and correct copies of relevant excerpts from the deposition transcript of Isaac Larian, Volume 2, dated March 26, 2008.

29.     Attached as Exhibit 26 are true and correct copies of relevant excerpts from the deposition transcript of Margaret Hatch-Leahy, dated December 12, 2007.

30.     Attached as Exhibit 27 is a true and correct copy of a letter from Bryant Delgadillo to me dated February 11, 2008.

31.     Attached as Exhibit 28 is a true and correct copy of a letter from Alisa Morgenthaler-Lever to me dated February 13, 2008.

32.     Attached as Exhibit 29 is a true and correct copy of a letter from Michael Zeller to Alecia Meyers dated December 23, 2004.

33.     Attached as Exhibit 30 is a true and correct copy of a letter from Ms. Meyers to Mr. Zeller dated January 7, 2005.

34.     Attached as Exhibit 31 are true and correct copies of relevant excerpts from MGA And Bryant's Joint Opposition To Mattel's Motion For Appointment Of Expert Witnesses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 31, 2008, at Los Angeles, California.

_____
Juan Pablo Albán

# EXHIBIT 1

## Juan Pablo Alban

| | |
|---|---|
| **From:** | Juan Pablo Alban |
| **Sent:** | Tuesday, March 11, 2008 7:00 PM |
| **To:** | 'Scott Gizer' |
| **Subject:** | RE: Mattel's Motion to Compel to Christensen Glaser |

**Attachments:** Stipulation re Christensen Glaser Deposition (2).DOC; 3 v 2 Stipulation re Christen.DOC

(1) We are okay with the additional extension of time. Please confirm that you are okay with a hearing on this motion for April 4 -- the Discovery Master is hearing several other motions that day, and as such March 21 is the latest extension we can give you. Please see the revised stipulation adjusting the date. I also modified the Whereas clauses as we discussed, but not completely as you proposed it -- see attached redline and let me know if we can finalize.

(2) We cannnot agree to any stipulation on this issue. Third party discovery, including from attorneys, has confirmed time and time again that the MGA parties have failed to produce key highly relevant and discoverable documents despite clear discovery requests (and often orders) to do so.

(3) We are agreeable to a declaration in principle, but as we discussed, we need to evaluate it on a topic-by-topic and request-by-request basis. Let us know the language you propose and the Topics/Requests which the declaraiton would encompass, and we can discuss further.

Thanks.

Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: juanpabloalban@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Scott Gizer [mailto:sgizer@chrisglase.com]
**Sent:** Tuesday, March 11, 2008 9:33 AM
**To:** Juan Pablo Alban
**Subject:** Mattel's Motion to Compel to Christensen Glaser·

EXHIBIT _____ 1

PAGE _____ 5A

Juan Pablo,

Following up on our call last week, did you talk to Jon Corey about (1) the additional one week extension to next Friday, March 21, 2008 for our opposition, (2) the topics and requests where CG would not have unique information; and (3) CG providing a declaration on categories that it does not possess information or documents? Let me know.

Also, I have the "MZ" and "ED" documents covered by the Larian v. Larian protective order in my office ready for pick-up. When

3/27/2008

you are ready, just send a messenger o     get them.

Thanks.

Scott

Scott E. Gizer, Esq.
Christensen, Glaser, Fink, Jacobs, Weil & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
T: 310.556.7852 | F: 310.556.2920
E-mail: sgizer@chrisglase.com

This message and any attached documents may contain information from the law firm of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**EXHIBIT**     1

**PAGE**     6

3/27/2008

# EXHIBIT 2

1 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
2 (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
3 (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
4 (joncorey@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
5 Los Angeles, California 90017-2543
  Telephone: (213) 443-3000
6 Facsimile: (213) 443-3100

7 Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                          EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware<br>corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard By Hon. Edward Infante<br>(Ret.) Pursuant To Order Of<br>December 6, 2006]** |
| AND CONSOLIDATED ACTIONS | STIPULATION RE EXTENSION OF<br>TIME FOR CHRISTENSEN, GLASER TO<br>OPPOSE MATTEL'S MOTION TO<br>COMPEL DEPOSITION AND<br>PRODUCTION OF DOCUMENTS; AND |
| | [PROPOSED] ORDER |
| | Phase 1:<br>Discovery Cut-off:     January 28, 2008<br>Pre-trial Conference:  May 5, 2008<br>Trial Date:              May 27, 2008 |

EXHIBIT _____2_____

PAGE _____7_____

07209/2438373.1

STIPULATION RE CHRISTENSEN, GLASER

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No: CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]** |
| AND CONSOLIDATED ACTIONS | STIPULATION RE EXTENSION OF TIME FOR CHRISTENSEN, GLASER TO OPPOSE MATTEL'S MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS; AND |
| | [PROPOSED] ORDER |
| | Phase 1:<br>Discovery Cut-off:      January 28, 2008<br>Pre-trial Conference:   May 5, 2008<br>Trial Date:                 May 27, 2008 |

EXHIBIT ___2___

PAGE ___8___

07209/2438373.1

STIPULATION RE CHRISTENSEN, GLASER

1    Mattel, Inc. ("Mattel") and Christensen, Glaser, Fink, Jacobs, Weil & Shapiro,

2  LLP ("Christensen") hereby stipulate, by and through their counsel of record, as

3  follows:

4

5    1.    Christensen shall have up to and including March 21, 2008 to file an

6  Opposition to Mattel's Motion to Compel Christensen's deposition and production of

7  documents;

8

9    2.    Mattel shall have up to and including March 28, 2008 to file a Reply

10  regarding Mattel's Motion to Compel Christensen's deposition and production of

11  documents;

12

13    3.    Christensen shall not object to the subpoena served on it by Mattel

14  ("Subpoena") on the grounds that it was served untimely or that the deposition and/or

15  production of documents, if it occurs, takes place after the discovery cut-off date;

16

17    4.    If the Discovery Master orders Christensen to appear at a deposition and/or

18  to produce documents on any topic in the Subpoena, Christensen will appear for

19  deposition and/or produce documents by April 21, 2008; and

20

21

22

23

24

25

26    EXHIBIT ____2____

27    PAGE ____9____

28

07209/2438373.1                                -1-

1    5.    Except as set forth above, Christensen and Mattel expressly reserve and

2    preserve all of their rights, claims and objections with respect to the Subpoena.

3

4        IT IS SO STIPULATED.

5

6    DATED: March 19, 2008          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
7

8                                    By _____

9                                       Juan Pablo Albán
                                        Attorneys for Mattel, Inc.
10

11

12   DATED: March ___, 2008         CHRISTENSEN, GLASER, FINK, JACOBS,
                                     WEIL & SHAPIRO, LLP
13

14

15                                   By _____

16                                       Scott Gizer
                                         Attorneys for Christensen, Glaser, Fink,
17                                       Jacobs, Weil & Shapiro, LLP

18

19

20

21

22

23

24

25

26          EXHIBIT _____2_____

27

28          PAGE _____16_____

07209/2438373.1                              -2-

STIPULATION RE CHRISTENSEN, GLASER

1      5.     Except as set forth above, Christensen and Mattel expressly reserve and

2 preserve all of their rights, claims and objections with respect to the Subpoena.

3

4      IT IS SO STIPULATED.

5

6 DATED: March ___, 2008      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

7

8      By_____

9            Juan Pablo Albán

10           Attorneys for Mattel, Inc.

11

12 DATED: March 18, 2008      CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP

13

14

15      By_____

16         Scott Gizer

17         Attorneys for Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP

18

19

20

21

22

23

24

25

26      EXHIBIT ____2____

27      PAGE ____11____

28

07209/2438373.1

-2-

STIPULATION RE CHRISTENSEN, GLASER

## [~~PROPOSED~~] ORDER

IT IS HEREBY ORDERED

1.     Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP ("Christensen") shall have up to and including March 21, 2008 to file an Opposition to Mattel, Inc.'s ("Mattel") Motion to Compel Christensen's deposition and production of documents;

2.     Christensen shall not object to the subpoena served on it by Mattel ("Subpoena") on the grounds that it was served untimely or that the deposition and/or production of documents, if it occurs, takes place after the discovery cut-off date;

3.     If the Discovery Master orders Christensen to appear at a deposition and/or to produce documents on any topic in the Subpoena, Christensen will appear for deposition and/or produce documents by April 21, 2008; and

4.     Except as set forth above, Christensen and Mattel expressly reserve and preserve all of their rights, claims and objections with respect to the Subpoena.

DATED: March 21             , 2008                    /s/
                                          Hon. Edward Infante (Ret.)

EXHIBIT _____ 2_____

PAGE _____ 12_____

-3-

STIPULATION RE CHRISTENSEN, GLASER

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on March 24, 2008, I served the attached STIPULATION AND ORDER RE EXTENSION OF TIME FOR CHRISTENSEN, GLASER TO OPPOSE MATTEL'S MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Patricia L. Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgenthaler@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on March 24, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT _____ 2

PAGE _____ 13

# EXHIBIT 3

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
2 | Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
3 | Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
4 | Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
5 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
6 | Telephone: (213) 443-3000
Facsimile: (213) 443-3100
7

8 | Attorneys for Mattel, Inc.

9

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12 | EASTERN DIVISION

13 | CARTER BRYANT, an individual,    CASE NO. CV 04-9049 SGL (RNBx)

14 | Plaintiff,    Consolidated with
Case No. CV 04-09059
15 | vs.    Case No. CV 05-02727

16 | MATTEL, INC., a Delaware    Hon. Stephen G. Larson
corporation,
17 |    DECLARATION OF CHRISTOPHER
Defendant.    E. PRICE IN SUPPORT OF MATTEL,
18 |    INC.'S EX PARTE APPLICATION:
    (1) TO COMPEL DEPOSITIONS OF
19 | AND CONSOLIDATED ACTIONS    DAPHNE GRONICH, JOE TIONGCO,
    MARIANA TRUEBA, PABLO
20 |    VARGAS, MGA ENTERTAINMENT,
    INC. (PURSUANT TO RULE
21 |    30(B)(6), AND MGAE DE MEXICO
    (PURSUANT TO 30(B)(6) AND
22 |    (2) FOR LEAVE TO TAKE
    DEPOSITIONS IN FEBRUARY 2008;
23 |    OR, IN THE ALTERNATIVE, FOR
    AN ORDER SHORTENING TIME TO
    HEAR A MOTION SEEKING THE
24 |    FOREGOING RELIEF

25 |    Hearing Date: N/A
    Time:        N/A
26 |    Courtroom:    N/A

    Phase 1:
27 | EXHIBIT __3__    Discovery Cut-off:    January 28, 2008
    Pre-trial Conference:  May 5, 2008
28 | PAGE __14__    Trial Date:    May 27, 2008

07209/2366499.1

DECLARATION OF CHRISTOPHER E. PRICE ISO MATTEL'S EX PARTE APPLICATION

1

## DECLARATION OF CHRISTOPHER E. PRICE

2         I, Christopher E. Price, declare as follows:

3         1.      I am a member of the bar of the State of California and am Of

4   Counsel with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for

5   Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called

6   and sworn as a witness, I could and would testify competently thereto.

7         2.      On January 10, 2008, I began working to serve subpoenas and

8   notices of deposition on many of the witnesses the Court granted leave to depose in

9   its January 7, 2008 Order. In order to find addresses for the witnesses, my office

10  utilized personnel files, interrogatory responses, prior subpoenas, whitepages.com,

11  the Westlaw People Finder, Google, and USSearch.com. We also retained licensed

12  personal investigators to locate addresses. For some witnesses, we found multiple

13  addresses. Despite counsel for Mattel's best efforts, various of the witnesses, despite

14  numerous attempts to serve them, have not yet been served.

15        3.      On January 10, 2008, I called Larry McFarland to discuss his

16  deposition as well as those of his clients, Lucy Arant and Sarah Halpern. I was told

17  he was not available. I left him a voice mail message asking whether he would

18  accept service of deposition subpoenas on behalf of Ms. Arant and Ms. Halpern.

19  That same day, I sent Mr. McFarland an e-mail message repeating my request that

20  he confirm that he would accept service of subpoenas on behalf of his clients,

21  Ms. Arant and Ms. Halpern. On January 15, 2008, after I had left another voice

22  mail message with Mr. McFarland repeating my request and sent another e-mail

23  message, Mr. McFarland responded by e-mail that he was "not authorized by

24  Ms. Arant or Ms. Halpern to accept service of the subpoena." True and correct

25  copies of the above e-mail messages are attached as Exhibit A.

26        4.      According to the declaration of the process server who has been

27  attempting service on Larry McFarland, his receptionist has repeatedly stated that

28  Mr. McFarland is out of the office for an indeterminate amount of time. During this

1   time, however, my office has received letters from Mr. McFarland on January 16,
2   2008, January 23, 2008, and January 27, 2008. True and correct copies of his letters
3   are attached as Exhibits B, C, and D.

4          5.     On January 27, 2008, I sent Larry McFarland an e-mail
5   requesting that he provide a convenient time for the service of his subpoena in this
6   matter. A true and correct copy of the e-mail is attached as Exhibit E. To date,
7   Mr. McFarland has not responded.

8          6.     On January 23, 2008, I spoke with Scott E. Gizer of Christensen
9   Glaser concerning the document subpoena that was served on his firm. He
10  acknowledged that Judge Larson had allowed the service of the subpoena as to one
11  of the designated topics. He objected to the scope of the subpoena and said that a
12  witness would not be available January 28, 2008, but asked that we meet and confer
13  regarding the scope of the subpoena.

14         7.     On January 24, 2008, I called Andreas Koch and left him a voice
15  mail message requesting that he contact me so we could schedule his deposition in
16  February. On January 25, 2008, Mr. Koch left me a voice mail message offering to
17  appear for deposition in early February.

18         8.     Attached as Exhibits F through Q are true and correct copies of
19  the deposition subpoenas of Moss Adams, Wachovia Corporation, Joyce Ng, Jorge
20  Castilla, Daphne Gronich, Joe Tiongco, Andrea Koch, Gentile Giant Studios,
21  Christensen Glaser, Amy Myers, Rachel Harris, and Kami Gilmour.

22         9.     Counsel for Mattel has attempted to serve Carol Witschell. The
23  first process server apparently mistakenly reported her served. Since then, Mattel
24  has worked to discover her current address.

25         10.    On January 27, 2008, I left voice mail messages for Thomas J.
26  Nolan of Skadden Arps, Michael Page of Keker and Van Nest, and Alexander Cote
27  of Overland Borenstein, Scheper & Kim, advising them that Mattel would bring the
28  accompanying ex parte application on January 28, 2008, before Judge Larson, and

07209/2366499.1

EXHIBIT ___3___

PAGE ___14___

-2-
DECLARATION OF CHRISTOPHER E. PRICE ISO MATTEL'S EX PARTE APPLICATION

1   requested that they inform me as soon as possible whether they opposed the
2   application (my colleague Jon D. Corey provided written notice via e-mail and
3   letter). Messrs. Nolan and Page later responded that their clients wished to oppose
4   the application but they did not say whether their clients wished to be heard.

5         11.    On January 27, 2008, my colleague Jon D. Corey e-mailed Larry
6   McFarland a letter notifying him of the Ex Parte Application. A true and correct
7   copy of Mr. Corey's e-mail message is attached as Exhibit R.

8         12.    On January 28, 2008, I faxed the notice letter advising the parties
9   of Mattel's Ex Parte Application to Larry McFarland. A true and correct copy of that
10  fax is attached as Exhibit S.

11        13.    On January 28, 2008, Ricardo Abundis left a voice mail message
12  stating that he was calling regarding the deposition subpoena that Mattel was
13  attempting to serve and asked that he be called back. Mr. Abundis left his phone
14  number and identified the city in which he resides in Arkansas.

15        14.    On January 28, 2008, Rachel Harris left a voice mail message
16  stating that she had been served with a deposition subpoena but asking that her
17  deposition be rescheduled. I returned Ms. Harris' call. She agreed to appear for
18  deposition in February, 2008. She stated that she would be available the weeks of
19  February 4 and February 11.

20        15.    Attached as Exhibits T - Y are notices of deposition of MGA
21  employees that Mattel served on January 10, 2004.

22
23
24
25
26
27  EXHIBIT _____3_____
28  PAGE _____17_____

07209/2366499.1

-3-
DECLARATION OF CHRISTOPHER E. PRICE ISO MATTEL'S EX PARTE APPLICATION

1         16.     On January 28, 2008, the process server attempting to serve

2  Mercedeh Ward informed me that he had attempted to serve Ms. Ward at 5247 S.

3  Granby Ct., Aurora, CO 80015 with a federal deposition subpoena on three

4  occasions, but that a man identifying himself as Ms. Ward's husband said she was

5  out of town and that on another occasion a man who identified himself as Ms.

6  Ward's son said she was out of the country and he did not know when she would

7  return.

8

9         I declare under penalty of perjury under the laws of the United States of

10  America that the foregoing is true and correct.

11         Executed on January 28, 2008, at Los Angeles, California.

12

13                   Christopher E. Price

14

15

16

17

18

19

20

21

22

23

24

25

26

27   **EXHIBIT** _3_

28   **PAGE** _19_

07209/2366499.1

-4-

# Exhibit N

.0002/2340430.1

EXHIBIT _____3_____

PAGE _____19_____

◈ AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
_____CENTRAL____ DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,

### SUBPOENA IN A CIVIL CASE

V.

MATTEL, INC., a Delaware corporation,

Case Number: [1] CV 04-9049 SGL (RNBx)

Consolidated with cases CV 49-9059 and CV50-2727

TO:   Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
      10250 Constellation Boulevard -19th Floor
      Los Angeles, CA 90067

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. Testimony will be recorded by stenographer and videographer. Topics of testimony are set forth in Exhibit B.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges LLP 865 S. Figueroa St, 10th Fl, Los Angeles, CA 90017 | January 28, 2008 9:00 am |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT B

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges LLP 865 S. Figueroa St, 10th Fl, Los Angeles, CA 90017 | January 28, 2008 |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Mattel, Inc. | January 18, 2008 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Jon D. Corey, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017-2543 (213) 443-3000

3

(See Rule 45, Federal Rules of Civil Procedure.
[1] If action is pending in district other than district of issuance, state district under case number.

Exhibit N, Page 61

EXHIBIT _____
PAGE _____ 20
AO-88

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| | | | |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things; or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of a

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists, when a subpoena purports to require a nonparty to attend or produce at a place not provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT 2

Exhibit N, Page 52

**Exhibit A**

Exhibit N, Page 63

EXHIBIT 3

PAGE 22

## ATTACHMENT A

## Documents To Be Produced

## I.    DEFINITIONS.

1.    "YOU" or "YOUR" means Christensen, Glaser, Fink, Jacobs,
Weil & Shapiro, LLP and any other PERSON acting on YOUR behalf, pursuant to
YOUR authority or subject to YOUR control, including but not limited to Patricia
Glaser, Esq.

2.    "BRYANT" means Carter Bryant and any of his current or
former agents, representatives, employees, attorneys, predecessors-in-interest and
successors-in-interest, and any other PERSON acting on his behalf, pursuant to his
authority or subject to his control.

3.    "MGA" means MGA Entertainment Inc., any of its current or
former employees, officers, directors, agents, representatives, attorneys, parents,
subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-
interest, and any other PERSON acting on its behalf, pursuant to its authority or
subject to its control.  Without limiting the generality of the foregoing, "MGA"
includes "LARIAN."

4.    "MATTEL" means Mattel, Inc., any of its current or former
employees, officers, directors, agents, representatives, attorneys, parents,
subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-
interest, and any other PERSON acting on its behalf, pursuant to its authority or
subject to its control.

5.    "ISAAC LARIAN" means Isaac Larian and any of his current or
former agents, representatives, employees, attorneys, predecessors-in-interest and
successors-in-interest, and any other PERSON acting on his behalf, pursuant to his
authority or subject to his control.  Without limiting the generality of the foregoing,
"ISAAC LARIAN" includes any trusts held in the name of or for the benefit of Isaac
Larian or of which Isaac Larian is a trustee.

EXHIBIT ___3___

PAGE ___23___          Exhibit N, Page 64

07209/2240909.2                    - 1 -

Case 2:04-cv-09049-DOC-RNB Document 2878-2 Filed 04/01/08 Page 29 of 107 Page ID
#:47363
Case 2:04-cv-09049-JVS-RNB Document 1724-11 Filed 1/28/2008 Page 6 of 70

6. "FARHAD LARIAN" means Farhad Larian and any of his current
or former agents, representatives, employees, attorneys, predecessors-in-interest and
successors-in-interest, and any other PERSON acting on his behalf, pursuant to his
authority or subject to his control. Without limiting the generality of the foregoing,
"FARHAD LARIAN" includes any trusts held in the name of or for the benefit of
Farhad Larian or of which Farhad Larian is a trustee.

7. "BRATZ" means any project, product, doll or DESIGN ever
known by that name (whether in whole or in part and regardless of what such
project, product or doll is or has been also, previously or subsequently called) and
any product, doll or DESIGN or any portion thereof that is now or has ever been
known as, or sold or marketed under, the name or term "Bratz" (whether in whole
or in part and regardless of what such product, doll or DESIGN or portion thereof
is or has been also, previously or subsequently called) or that is now or has ever
been sold or marketed as part of the "Bratz" line, and each version or iteration of
such product, doll or DESIGN or any portion thereof. As used herein, "product,
doll or DESIGN or any portion thereof" also includes without limitation any
names, fashions, accessories, artwork, packaging or any other works, materials,
matters or items included or associated therewith. Without limiting the generality
of the foregoing, the term "BRATZ" does not and shall not require that there be a
doll existing at the time of the event, incident or occurrence that is the subject of,
or otherwise relevant or responsive to, the subpoena requests.

8. "BRATZ WORK" or "BRATZ WORKS" means any
representation of BRATZ, whether two-dimensional or three-dimensional, and
whether in tangible, digital, electronic or other form, including any DESIGN
REFERRING OR RELATING TO BRATZ, in whole or in part.

9. "DESIGN" or "DESIGNS" means any and all representations,
whether two-dimensional or three-dimensional, and whether in tangible, digital,
electronic or other form, including but not limited to all works, designs, artwork,
sketches, drawings, illustrations, representations, depictions, blueprints,
schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts,
reductions to practice, developments, inventions and/or improvements, as well as
all other items, things and DOCUMENTS in which any of the foregoing are or
have been expressed, embodied, contained, fixed or reflected in any manner,
whether in whole or in part.

10. "BRYANT/MGA AGREEMENT" means the agreement related
to BRATZ between MGA and BRYANT titled "MGA Consulting Agreement,"

EXHIBIT ___3___

07209/2240909.2          PAGE ___24___          - 2 -

dated as of September 18, 2000, and purportedly executed on or about October 4, 2000.

11.    "INVENTIONS AGREEMENT" means the Confidential Information and Inventions Agreement between MATTEL and BRYANT signed by BRYANT on or about January 4, 1999 and produced in this action by MATTEL as M0001596, or any other version of such January 4, 1999 agreement.

12.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel, Inc. v. Bryant*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

13.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

14.    "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Civil Procedure 34 or Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

15.    "REFER OR RELATE TO" or "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

16.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

07209/2240909.2                                      - 3 -

EXHIBIT    3

PAGE    25                     Exhibit N, Page 66          ATTACHMENT A

17.   Wherever used herein, the singular shall include the plural and the plural shall include the singular.

## II.   INSTRUCTIONS.

A.   YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

B.   If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

1.   The privilege or protection that you claim precludes disclosure;

2.   The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

3.   The date, author(s), addressee(s); and

4.   Any additional facts on which YOU would base YOUR claim of privilege or protection.

C.   YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

D.   YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

E.   Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

EXHIBIT ___3___

PAGE ___26___   - 4 -

07209/2240909.2

Exhibit N, Page 67

Case 2:04-cv-09049-DOC-RNB   Document 2878-2   Filed 04/01/08   Page 32 of 107   Page ID
#:47366
Case 2:04-cv-09049-BL-RNB   Document 1724-11   Filed 01/28/2008   Page 9 of 70

## III.   DOCUMENTS TO BE PRODUCED.

1.   ALL DOCUMENTS generated, created, prepared or
transmitted in whole or part prior to April 27, 2004 that REFER OR RELATE to
the BRYANT/MGA AGREEMENT, including without limitation such agreement
(or version thereof) that Victoria O'Connor of MGA testified she sent YOU in
2000 and including without limitation any iteration, version or draft thereof, and all
COMMUNICATIONS with BRYANT relating thereto.

2.   To the extent not produced in response to Request No. 1, all
contracts or agreements, or proposed, requested or offered contracts or agreements,
between MGA and BRYANT and all other DOCUMENTS generated, created,
prepared or transmitted in whole or part prior to April 27, 2004 that REFER OR
RELATE thereto.

3.   All DOCUMENTS generated, created, prepared or transmitted in
whole or part prior to April 27, 2004 that REFER OR RELATE TO BRYANT's
employment by, or any contracts or agreements with, MATTEL, including without
limitation to the INVENTIONS AGREEMENT, and all COMMUNICATIONS with
BRYANT relating thereto.

4.   All DOCUMENTS generated, created, prepared or transmitted
in whole or part prior to April 27, 2004 that REFER OR RELATE TO BRATZ or
any BRATZ WORK and REFER OR RELATE TO the time period prior to
December 31, 2001.

5.   To the extent not produced in response to any other Request, all
DOCUMENTS generated, created, prepared or transmitted in whole or part prior to
April 27, 2004 that REFER OR RELATE TO BRYANT and that REFER OR
RELATE TO the time period prior to December 31, 2001.

6.   All DOCUMENTS that were generated, created, prepared or
transmitted in whole or part prior to April 27, 2004 and that REFER OR RELATE
TO the origins, reduction to practice, conception, creation or development, or the
timing of conception, creation, development or reduction to practice, of BRATZ or
any BRATZ WORK, including without limitation any COMMUNICATIONS
between YOU and BRYANT relating thereto and any investigations, analysis or
inquiry performed by any PERSON in connection therewith.

EXHIBIT ___3___

07209/2240909.2   PAGE ___27___   - 5 -

ATTACHMENT A

7.    All opinion letters provided, transmitted or otherwise shared with MGA prior to April 27, 2004 REFERRING OR RELATING TO BRYANT, the origins, reduction to practice, conception or creation of BRATZ or any BRATZ WORK or the ownership of any right, title or interest in or to BRATZ or any BRATZ WORK.

8.    All contracts or agreements between MATTEL and any PERSON other than BRYANT that REFERS OR RELATES TO the ownership, or putative or potential ownership, of inventions, designs, works or ideas and that YOU sent or transmitted to, received from, or shared with MGA or that MGA sent or transmitted to, received from, or shared with YOU, prior to April 27, 2004.

9.    All DOCUMENTS, including but not limited to opinion letters, that REFER OR RELATE TO the ownership, or putative or potential, ownership of inventions, designs, works or ideas created, made, conceived or reduced to practice by BRYANT while employed by MATTEL.

10.    All COMMUNICATIONS transmitted by YOU or received by YOU prior to April 27, 2004 REFERRING OR RELATING TO the ownership, or putative or potential ownership, of inventions, designs, works or ideas created, conceived or reduced to practice by BRYANT while he was employed by MATTEL.

11.    All    DOCUMENTS,    including    without    limitation COMMUNICATIONS between YOU and any BRYANT, REFERRING OR RELATING TO statements, assertions, claims or suggestions that BRYANT conceived, created, worked on, reduced to practice, modified or improved BRATZ or any BRATZ WORK between January 4, 1999 and October 20, 2000, including without limitation any denials or refutations, whether in whole or in part, of any such statements, assertions, claims or suggestions.

12.    All COMMUNICATIONS REFERRING OR RELATING TO BRYANT, BRATZ, any BRATZ WORK, MGA, FARHAD LARIAN, MATTEL or THIS ACTION to or from Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Mercedeh Ward, Elise Cloonan, Sarah Halpern, Jesse Ramirez and/or Anna Rhee.

13.    All COMMUNICATIONS REFERRING OR RELATING TO BRYANT, BRATZ, any BRATZ WORK, MGA, FARHAD LARIAN, MATTEL or THIS ACTION to or from Ana Cabrera, Beatriz Morales and/or Maria Salazar.

07209/2240909.2                                    - 6 -

EXHIBIT    3

PAGE    28

14.    To the extent not produced in response to any other Request, all
COMMUNICATIONS REFERRING OR RELATING TO BRYANT, BRATZ,
any BRATZ WORK, MGA, FARHAD LARIAN, MATTEL or THIS ACTION to
or from any MATTEL employee while such person was employed by MATTEL.

15.    All DOCUMENTS that REFER OR RELATE TO any
indemnification that BRYANT or FARHAD LARIAN has sought, proposed,
requested or obtained from MGA or that MGA has sought, proposed, requested or
obtained from BRYANT or FARHAD LARIAN.

16.    Any fee or indemnification agreements REFERRING OR
RELATING TO this ACTION or any MATTEL claim, including without
limitation by or with BRYANT, MGA or FARHAD LARIAN, including but not
limited to all drafts thereof and COMMUNICATIONS RELATED thereto.

17.    All DOCUMENTS that FARHAD LARIAN showed MATTEL at
any time since January 1, 1999, including all such DOCUMENTS that he showed
MATTEL in connection with this ACTION, including without limitation each of the
following:

(a)    The MGA email dated November 16, 2000 that summarizes "last
week's meeting" with K-Mart and references BRATZ.

(b)    FARHAD LARIAN's email to ISAAC LARIAN dated November
22, 2000 mentioning prices for a "Bratz Fashion Pack."

(c)    The November 22, 2000 chart describing changes to the Bratz Doll
Assortment and Bratz Holiday doll.

(d)    FARHAD LARIAN's August 19, 2005 email to Scott Bachrach (at
scottbac@aol.com) inquiring about the first contact between Mr. Bachrach and MGA
concerning BRATZ, as well associated COMMUNICATIONS.

(e)    FARHAD LARIAN's August 22, 2005 email to Colleen O'Higgins
asking about BRYANT and BRATZ, as well as associated COMMUNICATIONS.

(f)    The COMMUNICATIONS with Bin Ton, Michael Lingg and
Jennifer Maurus regarding BRATZ, including without limitation those relating to

EXHIBIT _____ 3 _____

PAGE _____ 29 _____

Exhibit N, Page 70

ATTACHMENT A

actual and/or draft declaration(s) by the foregoing regarding BRATZ.

(g)  The December 21, 2000 email from ISAAC LARIAN to Paul Warner, with copies to Dennis Medici and FARHAD LARIAN, that mentions TRU purchases for products including BRATZ.

(h)  FARHAD LARIAN's August 1, 2005 email to Victoria O'Connor regarding BRATZ licensees, as well as associated COMMUNICATIONS.

(i)  FARHAD LARIAN's August 1, 2005 email chain with employees at dng.com asking about BRATZ, as well as associated COMMUNICATIONS.

(j)  The August 7, 2005 email from Mark Fragel responding to questions regarding BRATZ materials shown to Paulette Prim in November 2000.

(k)  FARHAD LARIAN's May 24, 2000 email to ISAAC LARIAN that states ISAAC LARIAN had instructed FARHAD LARIAN to withhold original documents that had been located in connection with the Fireman's Fund case and "to tell him [an MGA attorney] we could not find the originals."

(l)  The document entitled "Analysis of Design, Packaging & Mock-Up Expense for 6 Months Ending 6/30/99 and 6/30/00" attached to the August 11, 2000 email from Dennis Medici to ISAAC LARIAN and FARHAD LARIAN.

(m)  The August 14, 2000 ISAAC LARIAN email to Medici, Warner and FARHAD LARIAN that references cost tracking software used by MATTEL that ISAAC LARIAN says he learned about from interviewing MATTEL employees.

(n)  The emails between ISAAC LARIAN and Jahangir Makabi requesting that Mr. Makabi sign an affidavit that he lost his original stock certificates despite Mr. Makabi's protestation that he never had any such certificates, as well as associated COMMUNICATIONS.

(o)  The January 31, 2001 email from ISAAC LARIAN to All in Marketing and Product Development, Medici and Didi Brown asserting that he (ISAAC LARIAN) had been purportedly diagnosed with "Alzheimer's" and denying in substance that he ever said anything that cannot be confirmed by a writing.

(p)    The November 15, 2000 Paula Treantafelles email to FARHAD
LARIAN that says MGA will be selling a BRATZ backpack and states that a
design for it is attached.

18.    All DOCUMENTS that REFER OR RELATE to any surveillance
or recording, including without limitation any tape or video recording, made by or at
the direction of YOU or MGA of any officer, director or employee of MATTEL or
MATTEL's counsel (excluding recordings made by duly authorized Court reporters of
sworn testimony taken in THIS ACTION).

19.    All DOCUMENTS RELATING TO the payment, offering or
promising of money or anything of value by MGA and/or YOU to any PERSON who
was at the time employed by or worked for MATTEL.

20.    All DOCUMENTS RELATING TO the payment, offering or
promising of money or anything of value by MGA to FARHAD LARIAN (excluding
any gifts with a value of less than $500) at any time since January 1, 1999.

21.    All DOCUMENTS REFERRING OR RELATING TO the
destruction or loss of any DOCUMENT sought by or the subject of Request Nos. 1
through 20.

22.    Any instruction or COMMUNICATION from any PERSON,
including without limitation BRYANT, MGA or FARHAD LARIAN, with respect
to the retention, preservation, collection, search, transmittal, transfer or destruction
of any DOCUMENT sought by or the subject of Request Nos. 1 through 20.

Case 2:04-cv-09049-DOC-RNB   Document 2878-2   Filed 04/01/08   Page 37 of 107   Page ID
#:47371
Case 2:04-cv-09049-_L-RNB   Document 1724-11   F__ 01/28/2008   Page 14 of 70

EXHIBIT ____3____

PAGE ____32____

Exhibit B                          Exhibit N, Page 73

Case 2:04-cv-09049-DOC-RNB   Document 2878-2   Filed 04/01/08   Page 38 of 107   Page ID
#:47372
Case 2:04-cv-09049-  -RNB   Document 724-11   Fi   1/28/2008   Page 15 of 70

Attachment B.

Topics of Testimony

## I.    DEFINITIONS.

1.    "YOU" or "YOUR" means Christensen, Glaser, Fink, Jacobs,
Weil & Shapiro, LLP and any other PERSON acting on YOUR behalf, pursuant to
YOUR authority or subject to YOUR control, including but not limited to Patricia
Glaser, Esq.

2.    "BRYANT" means Carter Bryant and any of his current or
former agents, representatives, employees, attorneys, predecessors-in-interest and
successors-in-interest, and any other PERSON acting on his behalf, pursuant to his
authority or subject to his control.

3.    "MGA" means MGA Entertainment Inc., any of its current or
former employees, officers, directors, agents, representatives, attorneys, parents,
subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-
interest, and any other PERSON acting on its behalf, pursuant to its authority or
subject to its control.  Without limiting the generality of the foregoing, "MGA"
includes "LARIAN."

4.    "MATTEL" means Mattel, Inc., any of its current or former
employees, officers, directors, agents, representatives, attorneys, parents,
subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-
interest, and any other PERSON acting on its behalf, pursuant to its authority or
subject to its control.

5.    "ISAAC LARIAN" means Isaac Larian and any of his current or
former agents, representatives, employees, attorneys, predecessors-in-interest and
successors-in-interest, and any other PERSON acting on his behalf, pursuant to his
authority or subject to his control.  Without limiting the generality of the foregoing,
"ISAAC LARIAN" includes any trusts held in the name of or for the benefit of Isaac
Larian or of which Isaac Larian is a trustee.

6.    "FARHAD LARIAN" means Farhad Larian and any of his current
or former agents, representatives, employees, attorneys, predecessors-in-interest and
successors-in-interest, and any other PERSON acting on his behalf, pursuant to his
authority or subject to his control.  Without limiting the generality of the foregoing,

EXHIBIT _____3_____

PAGE _____33_____

"FARHAD LARIAN" includes any trusts held in the name of or for the benefit of Farhad Larian or of which Farhad Larian is a trustee.

7. "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. As used herein, "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the subpoena requests.

8. "BRATZ WORK" or "BRATZ WORKS" means any representation of BRATZ, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including any DESIGN REFERRING OR RELATING TO BRATZ, in whole or in part.

9. "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

10. "BRYANT/MGA AGREEMENT" means the agreement related to BRATZ between MGA and BRYANT titled "MGA Consulting Agreement," dated as of September 18, 2000, and purportedly executed on or about October 4, 2000.

11. "INVENTIONS AGREEMENT" means the Confidential Information and Inventions Agreement between MATTEL and BRYANT signed

Case 2:04-cv-09049-DOC-RNB   Document 2878-2   Filed 04/01/08   Page 40 of 107   Page ID
Case 2:04-cv-09049-RNB   Document 4724-11   Fil 1/28/2008   Page 17 of 70
#:47374

by BRYANT on or about January 4, 1999 and produced in this action by MATTEL
as M0001596, or any other version of such January 4, 1999 agreement.

12.   "ACTION" means this action now consolidated under Case No.
04-9049 before the Hon. Stephen Larson and formerly *Mattel, Inc. v. Bryant*, first
filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA
Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses
therein.

13.   "PERSON" or "PERSONS" means all natural persons,
partnerships, corporations, joint ventures and any kind of business, legal or public
entity or organization, as well as its, his or her agents, representatives, employees,
officers and directors and any one else acting on its, his or her behalf, pursuant to
its, his or her authority or subject to its, his or her control.

14.   "DOCUMENT" means any "writing" or "recording" as defined
in Federal Rule of Civil Procedure 34 or Federal Rule of Evidence 1001 and
includes any tangible thing upon which any expression, communication or
representation has been recorded, including but not limited to correspondence, e-
mails, preliminary, intermediate or final drafts, memoranda, notes, reports of
telephone or other oral conversations, audio or videotape recordings, computer
tape, computer disk or storage media, computer printout, CD-ROM disk, optical
storage disk, other electronic medium, and all other writings and recordings of any
kind.

15.   "REFER OR RELATE TO" or "REFERRING OR RELATING
TO" means reflecting, identifying, describing, summarizing, evidencing,
referencing, concerning, discussing or indicating in any way.

16.   "COMMUNICATION" or "COMMUNICATIONS" means and
includes any disclosure, transfer or exchange of information between two or more
PERSONS, whether orally or in writing, including, without limitation, any
conversation or discussion by means of meeting, letter, telephone, note,
memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic
or other medium, including without limitation in written, audio or video form.

17.   Wherever used herein, the singular shall include the plural and
the plural shall include the singular.

EXHIBIT ___3___

PAGE ___35___

Case 2:04-cv-09049-DOC-RNB   Document 2878-2   Filed 04/01/08   Page 41 of 107   Page ID
Case 2:04-cv-09049-☐-RNB   Document 5724-11   Fil☐ )1/28/2008   Page 18 of 70
#:47375

## II.   SPECIFIC TOPICS

1.    Any contract or agreement between MGA and BRYANT, amendments thereto, drafts thereof, and COMMUNICATIONS related thereto.

2.    Any proposed, requested or offered contracts or agreements between MGA or ISAAC LARIAN, on one hand, and BRYANT, on the other hand; drafts thereof; and COMMUNICATIONS related thereto.

3.    The origins, reduction to practice, conception, creation or development, or the timing of conception, creation, development or reduction to practice of BRATZ and BRATZ WORK and COMMUNICATIONS related thereto.

4.    Opinion letters provided, transmitted or otherwise shared with MGA prior to April 27, 2004 REFERRING OR RELATING TO BRYANT, the origins, reduction to practice, conception or creation of BRATZ or any BRATZ WORK or the ownership of any right, title or interest in or to BRATZ or any BRATZ WORK.

5.    Contracts or agreements between MATTEL and any PERSON other than BRYANT that REFERS OR RELATES TO the ownership, or putative or potential ownership, of inventions, designs, works or ideas that you received, reviewed or transmitted prior to April 27, 2004.

6.    Opinion letters or other DOCUMENTS that REFER OR RELATE TO the ownership, or putative or potential, ownership of inventions, designs, works or ideas created, made, conceived or reduced to practice by BRYANT while employed by MATTEL.

7.    The ownership, or putative or potential ownership, of inventions, designs, works or ideas created, conceived or reduced to practice by BRYANT while he was employed by MATTEL.

8.    The DOCUMENTS that FARHAD LARIAN showed to MATTEL.

9.    COMMUNICATIONS between MGA OR YOU, on the one hand, and any MATTEL employee.

10.    Any surveillance or recording, including without limitation any tape or video recording, made by or at the direction of YOU or MGA of any officer, director or employee of MATTEL or MATTEL's counsel (excluding recordings

made by duly authorized Court reporters of sworn testimony taken in THIS ACTION).

11.  COMMUNICATIONS REFERRING OR RELATING TO BRYANT, BRATZ, any BRATZ WORK, MGA, FARHAD LARIAN, MATTEL or THIS ACTION to or from Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Mercedeh Ward, Elise Cloonan, Sarah Halpern, Jesse Ramirez, Anna Rhee, Ana Cabrera, Beatriz Morales and/or Maria Salazar.

12.  Any fee or indemnification agreements REFERRING OR RELATING TO this ACTION or any MATTEL claim.

13.  The DOCUMENT that Victoria O'Connor of MGA testified she sent YOU in 2000 and including without limitation any iteration, version or draft thereof, and all COMMUNICATIONS with BRYANT relating thereto.

14.  Any investigation, analysis, due diligence or research that YOU conducted, were asked to conduct, was conducted under your supervision or at YOUR request that REFERS OR RELATES TO BRYANT; MATTEL; the origins, reduction to practice, conception or creation of BRATZ or any BRATZ WORK; or the ownership of any right, title or interest in or to BRATZ or any BRATZ WORK.

AO88 (Rev. 12/06) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | 1/18/2008 | 10250 Constellation Boulevard, 19th Floor Los Angeles, CA 90067 |

| SERVED ON (PRINT NAME) | MANNER OR SERVICE |
|---|---|
| ERIKA BARBOUR, Custodian of Records, CHRISTENSEN GLASER | Personal –Witness Fee Paid $40.00 ~~$50.00~~ (Served 1-18-08 at 4:05 p.m.) |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Keneth Wright | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on    1/21/2008
                    DATE

SIGNATURE OF SERVER

Now Legal Service, 1301 W, 2nd St, #206, Los
ADDRESS OF SERVER

Angeles, CA, (213) 482-1567, L.A. Cty. #5426

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises - or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation material, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT    3

PAGE    38

Exhibit N, Page 79

**EXHIBIT 4**

1  DALE M. CENDALI (admitted pro hac vice)
   DIANA M. TORRES (S.B. #162284)
2  MARC F. FEINSTEIN (S.B. #158901)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, California 90071-2899
4  Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
5  Email: dtorres@omm.com

6  PATRICIA GLASER (S.B. # 55668)
   CHRISTENSEN, GLASER, FINK,
7  JACOBS, WEIL & SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
8  Los Angeles, California 90067
   Telephone: (310) 553-3000
9  Facsimile: (310) 556-2920
   Email: pglaser@chrisglase.com

10
   Attorneys for Counter-defendants MGA
11 Entertainment, Inc., Isaac Larian, MGA
   Entertainment (HK) Limited, and MGAE de
12 Mexico S.R.L. de C.V.

13

14

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17                    EASTERN DIVISION

18  CARTER BRYANT, an individual,        | Case No. CV 05-2727 SGL (RNBx)
                                          | (Consolidated with CV 04-09049 and
19              Plaintiff,                | CV 04-9059)

20        v.                              

21  MATTEL, INC., a Delaware Corporation, | **AMENDED ANSWER AND**
                                          | **AFFIRMATIVE DEFENSES OF**
22              Defendant                 | **MGA ENTERTAINMENT INC.,**
                                          | **MGA ENTERTAINMENT (HK)**
23                                        | **LIMITED, AND MGAE DE**
                                          | **MEXICO S.R.L. DE C.V. TO**
24                                        | **MATTEL, INC.'S SECOND**
                                          | **AMENDED ANSWER AND**
25                                        | **COUNTERCLAIMS**

26  CONSOLIDATED WITH                     | Judge:      Hon. Stephen G. Larson
                                          | Courtroom: 1
27  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v.
28  MATTEL, INC.

EXHIBIT ___4___

PAGE ___39___

1    Counter-defendants MGA Entertainment, Inc. ("MGA"), MGA

2 Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively

3 the "MGA Defendants") hereby answer, for themselves alone, the Second

4 Amended Answer and Counterclaim of Counter-claimant Mattel Inc., as follows:

5    As a preliminary matter, Mattel's use of headings throughout its

6 counterclaims is improper, and therefore no response to Mattel's headings is

7 required. If any response is required, MGA Defendants deny all allegations

8 contained in Mattel's headings.

9                    **RESPONSES**

10    1.    MGA Defendants deny the allegations set forth in paragraph 1.

11    2.    MGA Defendants deny the allegations set forth in paragraph 2.

12    3.    MGA Defendants admit that MGA decided to expand into

13 Mexico in or about 2004, and deny the remaining allegations set forth in paragraph

14 3.

15    4.    MGA Defendants deny the allegations set forth in paragraph 4.

16    5.    MGA Defendants deny the allegations set forth in paragraph 5.

17    6.    MGA Defendants admit that the Court has federal question

18 jurisdiction over this action pursuant to 28 U.S.C. § 1331, deny that 17 U.S.C. §§

19 101 and 18 U.S.C. § 1964(c) apply to the extraterritorial conduct alleged in the

20 Counterclaims, and deny that Mattel is entitled to any relief on its Counterclaims.

21    7.    MGA Defendants admit that venue is proper in this District for

22 Mattel's claims based on conduct alleged to have occurred within this District and

23 deny that venue is proper in this District for acts alleged to have occurred in

24 Mexico, Canada, Hong Kong, or other places outside of this District.

25    8.    MGA Defendants admit the allegations set forth in paragraph 8.

26    9.    MGA Defendants admit the allegations set forth in the first and

27 second sentences of paragraph 9, and deny the remaining allegations set forth in

28 paragraph 9.

EXHIBIT ___4___

PAGE ___40___

LA2:841935.2                              - 2 -

1              10.     MGA Defendants admit the allegations set forth in paragraph

2   10.

3              11.     MGA Defendants admit the allegations set forth in the first

4   sentence of paragraph 11, and deny the remaining allegations set forth in paragraph

5   11.

6              12.     MGA Defendants admit the allegations set forth in paragraph

7   12.

8              13.     MGA Defendants admit the allegations set forth in the first

9   sentence of paragraph 13, and deny the remaining allegations set forth in paragraph

10  13.

11             14.     MGA Defendants admit the allegations set forth in paragraph

12  14.

13             15.     Paragraph 15 is a statement of Mattel's legal position, to which

14  no response is necessary.  To the extent a response is required, MGA Defendants

15  deny the allegations set forth in paragraph 15.

16             16.     MGA Defendants admit the allegations set forth in the first

17  sentence of paragraph 16.  MGA Defendants are without sufficient knowledge to

18  admit or deny the remaining allegations set forth in paragraph 16, and on that basis,

19  deny the remaining allegations set forth in paragraph 16.

20             17.     MGA Defendants are without sufficient knowledge to admit or

21  deny the allegations set forth in paragraph 17, and on that basis, deny the

22  allegations set forth in paragraph 17.

23             18.     MGA Defendants are without sufficient knowledge to admit or

24  deny the allegations set forth in paragraph 18, and on that basis, deny the

25  allegations set forth in paragraph 18.

26             19.     MGA Defendants admit that MGA is a toy manufacturer, that

27  MGA began as a consumer electronics business and expanded into the toy business

28  with licenses to sell handheld electronic games, and later expanded its business by

EXHIBIT _____ 4

PAGE _____ 41

1   launching the Bratz fashion doll line, and deny the remaining allegations set forth in

2   paragraph 19.

3           20.    MGA Defendants deny the allegations set forth in paragraph 20.

4           21.    MGA Defendants admit that Carter Bryant is a former employee

5   of Mattel, and state that they are without sufficient knowledge to admit or deny the

6   remaining allegations set forth in paragraph 21, and on that basis, deny the

7   remaining allegations set forth in paragraph 21.

8           22.    MGA Defendants are without sufficient knowledge to admit or

9   deny the allegations set forth in paragraph 22, and on that basis, deny the

10   allegations set forth in paragraph 22.

11           23.    MGA Defendants are without sufficient knowledge to admit or

12   deny the allegations set forth in paragraph 23, and on that basis, deny the

13   allegations set forth in paragraph 23.

14           24.    MGA Defendants are without sufficient knowledge to admit or

15   deny the allegations set forth in paragraph 24, and on that basis, deny the

16   allegations set forth in paragraph 24.

17           25.    MGA Defendants are without sufficient knowledge to admit or

18   deny the allegations set forth in paragraph 25, and on that basis, deny the

19   allegations set forth in paragraph 25.

20           26.    MGA Defendants deny the allegations set forth in paragraph 26.

21           27.    MGA Defendants deny the allegations set forth in paragraph 27.

22           28.    MGA Defendants deny the allegations set forth in paragraph 28.

23           29.    MGA Defendants deny the allegations set forth in paragraph 29.

24           30.    MGA Defendants admit that after MGA made the decision to

25   proceed with the manufacture of the Bratz dolls, MGA employees communicated

26   with employees of MGA Entertainment (HK) Limited on subjects including the

27   manufacturing of Bratz, and deny the remaining allegations set forth in the first

28

EXHIBIT ____ 4 ____

PAGE ____ 42 ____

1   sentence of paragraph 30.  MGA Defendants admit the second sentence of

2   paragraph 30.

3        31.   MGA Defendants admit that samples of the four original Bratz

4   dolls were shown at the Hong Kong Toy Fair in January 2001, and deny the

5   remaining allegations set forth in paragraph 31.

6        32.   MGA Defendants admit that MGA and its subsidiaries have

7   distributed and sold Bratz and Bratz-related products in many countries throughout

8   the world, that MGA and its subsidiaries have licensed Bratz to third parties, that

9   MGA has derived annual revenues from its sales and licenses of Bratz in excess of

10  $500 million, that MGA and its subsidiaries continue to market, sell and license

11  Bratz and intend to continue to do so, and deny the remaining allegations set forth

12  in paragraph 32.

13       33.   MGA Defendants deny the allegations set forth in paragraph 33.

14       34.   MGA Defendants deny the allegations set forth in paragraph 34.

15       35.   MGA Defendants deny the allegations set forth in paragraph 35.

16       36.   MGA Defendants admit that Bryant had an agreement with

17  MGA, state that the terms of the agreement speak for themselves, and deny the

18  remaining allegations set forth in paragraph 36.

19       37.   MGA Defendants admit that in or about late 2003 or early 2004,

20  MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to

21  conduct business in Mexico, admit that MGAE de Mexico hired three employees of

22  Mattel's Mexican subsidiary, and deny the remaining allegations set forth in

23  paragraph 37.

24       38.   MGA Defendants admit that Carlos Gustavo Machado Gomez

25  was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado

26  was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that

27  Machado had access to some nonpublic business information of Mattel Mexico, and

28  state that they are without sufficient knowledge to admit or deny the remaining

LA2:841935.2                           - 5 -

EXHIBIT ___4___

PAGE ___43___

1   allegations set forth in paragraph 38, and on that basis, deny the remaining
2   allegations set forth in paragraph 38.

3        39.   MGA Defendants admit that Mariana Trueba Almada was a
4   Marketing Manager, Girls Division, for Mattel Mexico, admit that Trueba had
5   access to some nonpublic business information of Mattel Mexico, and state that
6   they are without sufficient knowledge to admit or deny the remaining allegations
7   set forth in paragraph 39, and on that basis, deny the remaining allegations set forth
8   in paragraph 39.

9        40.   MGA Defendants admit that Pablo Vargas San Jose was a Trade
10  Marketing Manager for Mattel Mexico, admit that Vargas was employed at Mattel
11  Mexico from March 2001 until April 19, 2004, admit that Vargas had access to
12  some nonpublic business information of Mattel Mexico, and state that they are
13  without sufficient knowledge to admit or deny the remaining allegations set forth in
14  paragraph 40, and on that basis, deny the remaining allegations set forth in
15  paragraph 40.

16       41.   MGA Defendants admit that in or about early 2004, Machado,
17  Trueba and Vargas discussed leaving Mattel Mexico, admit that Machado, Trueba
18  and Vargas resigned from Mattel Mexico on April 19, 2004, admit that they did not
19  identify their new employer to Mattel Mexico, admit that Machado, Trueba and
20  Vargas were offered and accepted employment with MGAE de Mexico, and deny
21  the remaining allegations set forth in paragraph 41.

22       42.   MGA Defendants admit that MGA personnel communicated by
23  telephone with Machado and Vargas prior to their Mattel resignations, admit that
24  MGA personnel, including Isaac Larian, communicated by e-mail with Machado
25  and Vargas concerning terms of employment through an America Online e-mail
26  account with the address <plot04@aol.com>, and deny the remaining allegations
27  set forth in paragraph 42.
28

EXHIBIT ___4___

PAGE ___44___

1         43.    MGA Defendants admit that in or about March 2004, Machado,

2  Trueba, and Vargas made plans to travel from Mexico to Los Angeles in April

3  2004, admit that in or about March 2004, Machado, Trueba and Vargas discussed

4  with MGA personnel, including Larian, employment at MGAE de Mexico, state

5  that the quoted <plot04@aol.com> e-mails speak for themselves, and deny the

6  remaining allegations set forth in paragraph 43.

7         44.   MGA Defendants are without sufficient knowledge to admit or

8  deny the allegations set forth in paragraph 44, and on that basis, deny the

9  allegations set forth in paragraph 44.

10        45.    MGA Defendants are without sufficient knowledge to admit or

11  deny the allegations set forth in paragraph 45, and on that basis, deny the

12  allegations set forth in paragraph 45.

13        46.    MGA Defendants are without sufficient knowledge to admit or

14  deny the allegations set forth in paragraph 46, and on that basis, deny the

15  allegations set forth in paragraph 46.

16        47.    MGA Defendants are without sufficient knowledge to admit or

17  deny the allegation set forth in the third sentence of paragraph 47, and on that basis,

18  deny these allegations, and deny the remaining allegations set forth in paragraph 47.

19        48.    MGA Defendants deny the allegations set forth in paragraph 48.

20        49.    MGA Defendants deny the allegations set forth in paragraph 49.

21        50.    MGA Defendants are without sufficient knowledge to admit or

22  deny the allegation that MGA publicized a claim that, in 2005, it had increased its

23  Mexican market share by 90% over the prior year, and on that basis, deny this

24  allegation, and deny the remaining allegations set forth in paragraph 50.

25        51.    MGA Defendants deny the allegations set forth in paragraph 51.

26        52.    MGA Defendants deny the allegations set forth in paragraph 52.

27        53.    MGA Defendants admit that on October 27, 2005, Mexican

28  authorities searched MGAE de Mexico and seized certain documents, and state that

EXHIBIT _____ 4

PAGE _____ 45

1  they are without sufficient knowledge to admit or deny the remaining allegations
2  set forth in paragraph 53, and on that basis, deny the remaining allegations set forth
3  in paragraph 53.

4      54. MGA Defendants admit that Machado was transferred from
5  MGAE de Mexico to MGA's office in Van Nuys, California, admit that Machado
6  resides in the County of Los Angeles, and deny the remaining allegations set forth
7  in paragraph 54.

8      55. MGA Defendants admit the allegations set forth in the first
9  sentence of paragraph 55. MGA Defendants admit that Tyco Toys hired Brawer on
10  April 22, 1996, and state that they are without sufficient knowledge to admit or
11  deny the remaining allegations set forth in the second sentence of paragraph 55, and
12  on that basis, deny the remaining allegations set forth in the second sentence of
13  paragraph 55. MGA Defendants admit the allegations set forth in third sentence of
14  paragraph 55. MGA Defendants admit that on April 9, 1997, Brawer became a
15  Marketing Director for Mattel in Mount Laurel, New Jersey, and state that the
16  remaining allegations in the fourth sentence of paragraph 55 are a statement of
17  Mattel's legal position, to which no response is necessary. To the extent a response
18  is required, MGA Defendants deny the remaining allegations set forth in paragraph
19  55.

20      56. MGA Defendants are without sufficient knowledge to admit or
21  deny the allegations set forth in paragraph 56, and on that basis, deny the
22  allegations set forth in paragraph 56. The last sentence of paragraph 56 is a
23  statement of Mattel's legal position, to which no response is necessary. To the
24  extent a response is required, MGA Defendants deny the remaining allegations set
25  forth in paragraph 56.

26      57. MGA Defendants admit that by 2003, Brawer had advanced
27  within Mattel to a Senior Vice President position over customer marketing, and
28  state that the remaining allegations in the first sentence of paragraph 57 are a

LA2:841935.2

- 8 -

EXHIBIT ____ 4
PAGE ____ 46

1  statement of Mattel's legal position, to which no response is necessary. To the
2  extent a response is required, MGA Defendants deny the remaining allegations set
3  forth in the first sentence of paragraph 57. MGA Defendants admit that in his
4  executive position, Brawer was provided access to certain nonpublic Mattel
5  information.

6       58.   MGA Defendants admit the allegations set forth in the first
7  sentence of paragraph 58. MGA Defendants deny the allegations set forth in the
8  second sentence of paragraph 58. MGA Defendants are without sufficient
9  knowledge to admit or deny the remaining allegations set forth in paragraph 58, and
10 on that basis, deny the remaining allegations set forth in paragraph 58.

11      59.   MGA Defendants are without sufficient knowledge to admit or
12 deny the allegations set forth in paragraph 59, and on that basis, deny the
13 allegations set forth in paragraph 59.

14      60.   MGA Defendants admit that in April 2004, Mattel made Brawer
15 a Senior Vice President/General Manager, and state that they are without sufficient
16 knowledge to admit or deny the remaining allegations set forth in paragraph 60, and
17 on that basis, deny the remaining allegations set forth in paragraph 60.

18      61.   MGA Defendants admit that in May 2004, Brawer began
19 performing General Manager duties, working with one of Mattel's major retail
20 customer accounts, and state that they are without sufficient knowledge to admit or
21 deny the remaining allegations set forth in paragraph 61, and on that basis, deny the
22 remaining allegations set forth in paragraph 61.

23      62.   MGA Defendants admit the allegations set forth in the first
24 sentence of paragraph 62. MGA Defendants admit that as Brawer left, he carried a
25 large cardboard box, and deny the remaining allegations set forth in the second
26 sentence of paragraph 62. MGA Defendants state that they are without sufficient
27 knowledge to admit or deny the remaining allegations set forth in paragraph 62, and
28 on that basis, deny the remaining allegations set forth in paragraph 62.

EXHIBIT _____ 4

- 9 -

LA2:841935.2

PAGE_____ 47

1     63.     MGA Defendants admit the allegations set forth in paragraph

2     63.

3     64.     MGA Defendants admit that on September 20, 2004, Mattel

4     hand-delivered a letter to Brawer, state that the contents of the letter speak for

5     themselves, and deny the remaining allegations set forth in paragraph 64.

6     65.     MGA Defendants admit that at his exit interview on September

7     29, 2004, Brawer was given a copy of an agreement with Tyco that he had signed

8     on April 22, 1996, and a copy of Mattel's Code of Conduct, admit that Brawer

9     stated that he had not signed the Code of Conduct, and deny the remaining

10    allegations set forth in paragraph 65.

11    66.     MGA Defendants admit that on October 1, 2004, Brawer's last

12    day of employment with Mattel, Mattel delivered a letter to Brawer, state that the

13    contents of the letter speak for themselves, and deny the remaining allegations set

14    forth in paragraph 66.

15    67.     MGA Defendants admit that Brawer became MGA's Executive

16    Vice President of Sales and Marketing, admit that he was responsible for sales

17    worldwide, admit that he had and continues to have responsibility for MGA's

18    accounts with some of the same retailers that he worked with while at Mattel, and

19    deny the remaining allegations set forth in paragraph 67.

20    68.     MGA Defendants admit that Brawer stated during his exit

21    interview that he had returned all confidential proprietary information to Mattel,

22    state that he did not provide copies of information from his personal contacts file,

23    and deny the remaining allegations set forth in paragraph 68.

24    69.     MGA Defendants admit that since leaving Mattel, Brawer has

25    had contacts with certain Mattel employees, both by telephone and electronic mail,

26    and deny the remaining allegations set forth in paragraph 69.

27    70.     MGA Defendants deny the allegations set forth in paragraph 70.

28

EXHIBIT ____ 4 ____

PAGE ____ 48 ____

1        71.   MGA Defendants are without sufficient knowledge to admit or

2  deny the allegations set forth in paragraph 71, and on that basis, deny the

3  allegations set forth in paragraph 71.

4        72.   MGA Defendants are without sufficient knowledge to admit or

5  deny the allegations set forth in paragraph 72, and on that basis, deny the

6  allegations set forth in paragraph 72.

7        73.   MGA Defendants admit that on September 26, 2005, Brisbois

8  resigned from Mattel Canada, state that she took a position as Vice President of

9  National Accounts at MGAE Canada, and deny the remaining allegations set forth

10  in the first sentence of paragraph 73. MGA Defendants are without sufficient

11  knowledge to admit or deny the remaining allegations set forth in paragraph 73, and

12  on that basis, deny the remaining allegations set forth in paragraph 73.

13        74.   MGA Defendants admit that Brisbois spoke with Isaac Larian

14  by telephone on or about the evening of September 22, 2005, deny that Brisbois

15  copied approximately 45 Mattel documents onto a USB or thumb drive on that

16  same date, deny that Brisbois concealed the thumb drive the last time she left

17  Mattel Canada's office, and state that they are without sufficient knowledge to

18  admit or deny the remaining allegations set forth in paragraph 74, and on that basis,

19  deny the remaining allegations set forth in paragraph 74.

20        75.   MGA Defendants are without sufficient knowledge to admit or

21  deny the allegations set forth in paragraph 75, and on that basis, deny the

22  allegations set forth in paragraph 75.

23        76.   MGA Defendants admit that Brisbois traveled several times to

24  MGA's offices in Van Nuys, California and met with Larian and Brawer, that

25  MGA issued a press release, state that the press release speaks for itself, and state

26  that they are without sufficient knowledge to admit or deny the remaining

27  allegations set forth in paragraph 76 and, on that basis, deny the remaining

28  allegations set forth in paragraph 76.

EXHIBIT _____ 4

PAGE _____ 49

1          77.    MGA Defendants admit that MGA has hired at least 25

2    employees directly from Mattel's United States operations in the past few years,

3    and deny the remaining allegations set forth in paragraph 77.

4          78.    MGA Defendants deny the allegations set forth in the first

5    sentence of paragraph 78. MGA Defendants admit that Larian has sent email

6    messages to a "Bratz News" distribution list, admit that the recipients of e-mail

7    messages sent to the "Bratz News" distribution list includes members of the media

8    as well as representatives of customers of both MGA and Mattel, and deny the

9    remaining allegations set forth in paragraph 78.

10         79.    MGA Defendants admit that on May 12, 2006, Larian sent an

11   email message to the "Bratz News" distribution list that included a reference to the

12   new My Scene product with real gems, and state that they are without sufficient

13   knowledge to admit or deny the remaining allegations set forth in paragraph 79, and

14   on that basis, deny the remaining allegations set forth in paragraph 79.

15         80.    MGA Defendants admit that Larian told one retailer that such

16   retailer was the only retailer with plans to purchase MY SCENE BLING BLING

17   with real gems, at a time when Larian had a good faith belief that such retailer was

18   the only retailer with plans to purchase MY SCENE BLING BLING with real

19   gems, and deny the remaining allegations set forth in paragraph 80.

20         81.    MGA Defendants deny the allegation set forth in paragraph 81.

21         82.    MGA Defendants repeat their responses contained in paragraphs

22   1 through 81 of this Answer and incorporate them by reference as though fully and

23   completely set forth herein.

24         83.    MGA Defendants deny the allegations set forth in paragraph 83.

25         84.    MGA Defendants deny the allegations set forth in paragraph 84.

26         85.    MGA Defendants deny the allegations set forth in paragraph 85.

27         86.    MGA Defendants deny the allegations set forth in paragraph 86.

28         87.    MGA Defendants deny the allegations set forth in paragraph 87.

EXHIBIT _____ 4

PAGE _____ 50

1        88.    MGA Defendants repeat their responses contained in paragraphs

2    1 through 87 of this Answer and incorporate them by reference as though fully and

3    completely set forth herein.

4        89.    MGA Defendants deny the allegations set forth in paragraph 89.

5        90.    MGA Defendants deny the allegations set forth in paragraph 90.

6        91.    MGA Defendants deny the allegations set forth in paragraph 91.

7        92.    MGA Defendants deny the allegations set forth in paragraph 92.

8        93.    MGA Defendants deny the allegations set forth in paragraph 93.

9        94.    MGA Defendants deny the allegations set forth in paragraph 94.

10       95.    MGA Defendants deny the allegations set forth in paragraph 95.

11       96.    MGA Defendants deny the allegations set forth in paragraph 96.

12       97.    MGA Defendants deny the allegations set forth in paragraph 97.

13       98.    MGA Defendants repeat their responses contained in paragraphs

14   1 through 97 of this Answer and incorporate them by reference as though fully and

15   completely set forth herein.

16       99.    MGA Defendants deny the allegations set forth in paragraph 99.

17       100.   MGA Defendants deny the allegations set forth in paragraph

18   100.

19       101.   MGA Defendants deny the allegations set forth in paragraph

20   101.

21       102.   MGA Defendants deny the allegations set forth in paragraph

22   102.

23       103.   MGA Defendants deny the allegations set forth in paragraph

24   103.

25       104.   MGA Defendants deny the allegations set forth in paragraph

26   104.

27       105.   MGA Defendants deny the allegations set forth in paragraph

28   105.

EXHIBIT ____4____

PAGE ____51____

LA2:841935.2

- 13 -

1        106.  MGA Defendants repeat their responses contained in paragraphs

2  1 through 105 of this Answer and incorporate them by reference as though fully and

3  completely set forth herein.

4        107.  MGA Defendants deny the allegations set forth in paragraph

5  107.

6        108.  MGA Defendants deny the allegations set forth in paragraph

7  108.

8        109.  MGA Defendants deny the allegations set forth in paragraph

9  109.

10        110.  MGA Defendants deny the allegations set forth in paragraph

11  110.

12        111.  MGA Defendants deny the allegations set forth in paragraph

13  111.

14        112.  MGA Defendants deny the allegations set forth in paragraph

15  112.

16        113.  MGA Defendants deny the allegations set forth in paragraph

17  113.

18        114.  MGA Defendants deny the allegations set forth in paragraph

19  114.

20        115.  MGA Defendants deny the allegations set forth in paragraph

21  115.

22        116.  MGA Defendants repeat their responses contained in paragraphs

23  1 through 115 of this Answer and incorporate them by reference as though fully and

24  completely set forth herein.

25        117.  MGA Defendants deny the remaining allegations set forth in

26  paragraph 117.

27        118.  MGA Defendants deny the allegations set forth in paragraph

28  118.

EXHIBIT   4

PAGE   52

1   119.   MGA Defendants deny the allegations set forth in paragraph
2   119.

3   120.   MGA Defendants deny the allegations set forth in paragraph
4   120.

5   121.   MGA Defendants deny the allegations set forth in paragraph
6   121.

7   122.   MGA Defendants repeat their responses contained in paragraphs
8   1 through 121 of this Answer and incorporate them by reference as though fully and
9   completely set forth herein.

10   123.   MGA Defendants deny the allegations set forth in paragraph
11   123.

12   124.   MGA Defendants deny the allegations set forth in paragraph
13   124.

14   125.   MGA Defendants deny the allegations set forth in paragraph
15   125.

16   126.   MGA Defendants deny the allegations set forth in paragraph
17   126.

18   127.   MGA Defendants deny the allegations set forth in paragraph
19   127.

20   128.   MGA Defendants deny the allegations set forth in paragraph
21   128.

22   129.   MGA Defendants repeat their responses contained in paragraphs
23   1 through 128 of this Answer and incorporate them by reference as though fully and
24   completely set forth herein.

25   130.   The first and fifth sentences of paragraph 130 are statements of
26   Mattel's legal position, to which no response is necessary. To the extent a response
27   is required, MGA Defendants deny the allegations set forth in the first and fifth
28   sentences of paragraph 130. MGA Defendants are without sufficient knowledge to

LA2:841935.2                                        - 15 -

EXHIBIT ____4____

PAGE ____53____

1    admit or deny the remaining allegations set forth in paragraph 130, and on that

2    basis, deny the remaining allegations set forth in paragraph 130.

3            131.    MGA Defendants deny the allegations set forth in paragraph

4    131.

5            132.    MGA Defendants deny the allegations set forth in paragraph

6    132.

7            133.    MGA Defendants deny the allegations set forth in paragraph

8    133.

9            134.    MGA Defendants deny the allegations set forth in paragraph

10    134.

11            135.    MGA Defendants deny the allegations set forth in paragraph

12    135.

13            136.    MGA Defendants repeat their responses contained in paragraphs

14    1 through 135 of this Answer and incorporate them by reference as though fully and

15    completely set forth herein.

16            137.    MGA Defendants deny the allegations set forth in paragraph

17    137.

18            138.    MGA Defendants deny the allegations set forth in paragraph

19    138.

20            139.    MGA Defendants deny the allegations set forth in paragraph

21    139.

22            140.    MGA Defendants deny the allegations set forth in paragraph

23    140.

24            141.    MGA Defendants deny the allegations set forth in paragraph

25    141.

26            142.    MGA Defendants repeat their responses contained in paragraphs

27    1 through 141 of this Answer and incorporate them by reference as though fully and

28    completely set forth herein.

LA2:841935.2                                    - 16 -

EXHIBIT _____4_____

PAGE _____54_____

1          143. Paragraph 143 is a statement of Mattel's legal position, to which

2  no response is necessary. To the extent a response is required, MGA Defendants

3  deny the allegations set forth in the paragraph 143.

4          144. MGA Defendants deny the allegations set forth in paragraph

5  144.

6          145. MGA Defendants deny the allegations set forth in paragraph

7  145.

8          146. MGA Defendants deny the allegations set forth in paragraph

9  146.

10         147. MGA Defendants deny the allegations set forth in paragraph

11  147.

12         148. MGA Defendants deny the allegations set forth in paragraph

13  148.

14         149. MGA Defendants repeat their responses contained in paragraphs

15  1 through 148 of this Answer and incorporate them by reference as though fully and

16  completely set forth herein.

17         150. MGA Defendants deny the allegations set forth in paragraph

18  150.

19         151. MGA Defendants deny the allegations set forth in paragraph

20  151.

21         152. MGA Defendants deny the allegations set forth in paragraph

22  152.

23         153. MGA Defendants deny the allegations set forth in paragraph

24  153.

25         154. MGA Defendants deny the allegations set forth in paragraph

26  154.

27

28

EXHIBIT ___4___

PAGE ___55___

1    155.   MGA Defendants repeat their responses contained in paragraphs
2    1 through 154 of this Answer and incorporate them by reference as though fully and
3    completely set forth herein.

4    156.   MGA Defendants deny the allegations set forth in paragraph
5    156.

6    157.   MGA Defendants deny the allegations set forth in paragraph
7    157.

8    158.   MGA Defendants deny the allegations set forth in paragraph
9    158.

10   159.   MGA Defendants deny the allegations set forth in paragraph
11   159.

12   160.   MGA Defendants deny the allegations set forth in paragraph
13   160.

14   161.   MGA Defendants deny the allegations set forth in paragraph
15   161.

16   162.   MGA Defendants deny the allegations set forth in paragraph
17   162.

18   163.   MGA Defendants repeat their responses contained in paragraphs
19   1 through 162 of this Answer and incorporate them by reference as though fully and
20   completely set forth herein.

21   164.   MGA Defendants deny the allegations set forth in paragraph
22   164.

23   165.   MGA Defendants deny the allegations set forth in paragraph
24   165.

25   166.   MGA Defendants deny the allegations set forth in paragraph
26   166.

27

28

EXHIBIT ___ 4

LA2:841935.2                              - 18 -

PAGE ___ 56

1    167.   MGA Defendants repeat their responses contained in paragraphs
2   1 through 166 f this Answer and incorporate them by reference as though fully and
3   completely set forth herein.

4    168.   MGA Defendants deny the allegations set forth in paragraph
5   168.

6    169.   Paragraph 169 is a statement of Mattel's legal position, to which
7   no response is necessary. To the extent a response is required, MGA Defendants
8   deny the allegations set forth in the paragraph 169.

9    170.   Paragraph 170 is a statement of Mattel's legal position, to which
10   no response is necessary. To the extent a response is required, MGA Defendants
11   deny the allegations set forth in the paragraph 170.

12                            **AFFIRMATIVE DEFENSES**

13         Without admitting any wrongful conduct on the part of MGA Defendants or
14   any Counter-Defendant, and without admitting that Mattel suffered any loss,
15   damage, or injury, MGA Defendants allege the following affirmative defenses to
16   the Counterclaims. By designating the following as affirmative defenses, MGA
17   Defendants do not in any way waive or limit any defenses which are or may be
18   raised by their denials, allegations, and averments set forth herein. MGA
19   Defendants also do not, by alleging any affirmative defense, admit that Mattel does
20   not have the burden of proof for any or all facts underlying any of those defenses.
21   These defenses are pled in the alternative, and are raised to preserve the rights of
22   MGA Defendants to assert such defenses, and are without prejudice to their ability
23   to raise other and further defenses.

24                          **FIRST AFFIRMATIVE DEFENSE**

25                            (Failure to State a Claim)

26         Mattel's counterclaims fail to state a claim against MGA Defendants upon
27   which relief can be granted.

28

LA2:841935.2                                    - 19 -

EXHIBIT ____ Ч

PAGE ____ 57

# SECOND AFFIRMATIVE DEFENSE

## (Unclean Hands/*in Pari Delicto*)

Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands and wrongful acts. This affirmative defense is based, in part, on Mattel's efforts to undermine MGA's business and to "kill" Bratz at any cost which include, but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little Mommy products, to name a few), and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against Mattel; Mattel's efforts to create negative publicity or press about MGA, MGA products, Bryant, Larian, or MGA employees; Mattel's efforts to fund or commission market research or studies that portray Bratz or MGA products negatively; Mattel's efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's efforts to include negative references to MGA or Bratz on Mattel's "We Believe in Girls" website; Mattel's efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; Mattel's influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; assisting parties in lawsuits against MGA; Mattel's monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; Mattel's wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; Mattel's inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; Mattel's covertly investigating MGA, its officers and employees, and their family members; Mattel's contacting persons under false

EXHIBIT _____ 4

PAGE _____ 58

1   pretense in order to interrogate them about Bratz and this litigation; Mattel's

2   coercing its employees to accept restrictive covenants (right before a massive

3   layoff) and non-compete clauses and other efforts to prevent prospective MGA

4   employees from accepting offers of employment; Mattel's delay in suing Carter

5   Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel

6   case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead the

7   public and retailers; and Mattel's taking all measures to conceal its bad acts,

8   including the willful non-retention and destruction of documents. Additionally,

9   Mattel believed from the time that Carter Bryant left Mattel's employ that he was

10  going to perform work for a Mattel competitor. Mattel began investigating Bryant

11  and MGA Defendants, including Bryant's role in the creation and development of

12  Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring

13  suit, all the while allowing MGA Defendants to spend years developing their

14  business and invest tens of millions of dollars developing the Bratz products and

15  building the Bratz brand. These averments are made on information and belief

16  except where MGA Defendants have knowledge thereof.

17                         **THIRD AFFIRMATIVE DEFENSE**

18                                  (Laches)

19       Mattel's counterclaims are barred by the equitable doctrine of laches

20  because, among other things, Mattel believed from the time that Carter Bryant left

21  Mattel's employ that he was going to perform work for a Mattel competitor. Mattel

22  began investigating Bryant and MGA Defendants, including Bryant's role in the

23  creation and development of Bratz, at least as early as March 2002 and thereafter

24  continued its investigation into Bryant's role in the creation and development of

25  Bratz, as well as his work with MGA, in August 2002 after Mattel's CEO, Robert

26  Eckert, received an "anonymous letter" that claimed that Bryant stole the idea for

27  Bratz from Mattel and sold it to MGA Defendants. Nonetheless, Mattel waited

28  years to bring suit, all the while allowing MGA Defendants to spend years

EXHIBIT _____ 4

PAGE _____ 59

1   developing their business and invest tens of millions of dollars developing the Bratz

2   products and building the Bratz brand.

### FOURTH AFFIRMATIVE DEFENSE

#### (Statute of Limitations)

5   Mattel's counterclaims are barred by the applicable statutes of limitations,

6   including but not limited to, 18 U.S.C. § 1961 *et seq.*, 17 U.S.C. § 507(b), and Code

7   of Civil Procedure §§ 337, 339, 343 and 338(c).

### FIFTH AFFIRMATIVE DEFENSE

#### (*Bona Fide* Purchaser for Value)

10   Mattel cannot maintain its counterclaims against MGA Defendants because

11   MGA Defendants paid valuable consideration for Bryant's assignment of his rights

12   in the original Bratz drawings to MGA Defendants, and MGA Defendants acted

13   with a good faith belief that Bryant owned the rights to his original Bratz drawings

14   and that his assignment of such rights to MGA Defendants was valid and

15   permissible.

### SIXTH AFFIRMATIVE DEFENSE

#### (17 U.S.C. § 205(d))

18   Mattel cannot maintain its counterclaims against MGA Defendants because,

19   among other things, MGA Defendants acted with a good faith belief that Bryant

20   owned the rights to his original Bratz drawings and that his assignment of such

21   rights to MGA Defendants was valid and permissible.

### SEVENTH AFFIRMATIVE DEFENSE

#### (Information Readily Ascertainable)

24   MGA Defendants cannot be liable, either on their own account or by

25   association with other defendants, for misappropriation of information that was

26   readily ascertainable by proper means at the time of the alleged acquisition or use.

27   Such information includes, but is not limited to, the identity of suppliers,

28

EXHIBIT ____ 4

PAGE ____ 60

1  manufacturers, distributors and retailers; contact information for the same; and

2  sales, marketing and media data.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Acts or Omissions of Others)

5  Mattel's damages, if any, were not caused by MGA Defendants and are not

6  attributable to any acts or omissions of MGA Defendants.

### NINTH AFFIRMATIVE DEFENSE

#### (Estoppel)

9  Mattel's counterclaims are barred in whole or in part by the equitable

10  doctrine of estoppel because, among other things, Mattel believed from the time

11  that Carter Bryant left Mattel's employ that he was going to perform work for a

12  Mattel competitor. Mattel began investigating Bryant and MGA Defendants,

13  including Bryant's role in the creation and development of Bratz, at least as early as

14  March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing

15  MGA Defendants to spend years developing their business and invest tens of

16  millions of dollars developing the Bratz products and building the Bratz brand.

### TENTH AFFIRMATIVE DEFENSE

#### (Acquiescence)

19  Mattel's counterclaims are barred in whole or in part by acquiescence

20  because, among other things, Mattel believed from the time that Carter Bryant left

21  Mattel's employ that he was going to perform work for a Mattel competitor. Mattel

22  began investigating Bryant and MGA Defendants, including Bryant's role in the

23  creation and development of Bratz, at least as early as March 2002. Nonetheless,

24  Mattel waited years to bring suit, all the while allowing MGA Defendants to spend

25  years developing their business and invest tens of millions of dollars developing the

26  Bratz products and building the Bratz brand. Additionally, Mattel tolerated and

27  condoned conduct by other employees similar to the alleged conduct by Bryant and

28  others on which Mattel bases its claims.

EXHIBIT ____ 4

LA2:841935.2

- 23 -

PAGE ____ 61

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

MGA Defendants deny that Mattel suffered any damages, but even if it did, Mattel failed to take reasonable steps to mitigate those purported damages.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Statutory Damages or Attorneys' Fees)

Mattel is barred from recovering statutory damages and/or attorneys' fees because it failed to register the copyrights that are purportedly at issue within the time required by 17 U.S.C. § 412.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

Mattel's counterclaims are barred in whole or in part by waiver because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA Defendants, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA Defendants to spend years developing their business and invest tens of millions of dollars developing the Bratz products and building the Bratz brand.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

Mattel has abandoned any interest it may have had in the alleged copyrighted works.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (De Minimus Use)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if Mattel could craft a claim that the Bratz dolls incorporate an

LA2:841935.2

- 24 -

EXHIBIT _____ 4 _____

PAGE _____ 62 _____

1    aspect of a Mattel copyrighted work, such use would be *de minimus* and non-

2    infringing.

### SIXTEENTH AFFIRMATIVE DEFENSE

#### (Joint Authorship)

5    MGA Defendants deny that Mattel owns any copyright interest in the alleged

6    works, but even if it did, any liability would be eliminated or greatly diminished by

7    the doctrine of joint authorship.

### SEVENTEENTH AFFIRMATIVE DEFENSE

#### (Competition Privilege/Justification)

10   Mattel's counterclaims are barred in whole or in part on the grounds that the

11   acts of the MGA Defendants were lawful competition or justified.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (Good Faith)

14   Mattel's counterclaims are barred in whole or in part because the MGA

15   Defendants acted in good faith.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Lack of Authority)

18   Mattel's counterclaims are barred in whole or in part on the grounds that to

19   the extent any person committed an unlawful or tortious act, the person lacked

20   authority to commit such act on behalf of the MGA Defendants.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Lack of Standing)

23   Mattel's counterclaims are barred in whole or in part by its lack of standing.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Joinder in Defenses of Co-Defendants)

26   MGA Defendants hereby adopt and incorporate by reference any and all

27   other affirmative defenses that have been or will be asserted by any other defendant

28   (including Bryant) in this litigation to the extent that defendants may share in such

EXHIBIT ____ 4

PAGE ____ 63

1  affirmative defenses.

2  **TWENTY-SECOND AFFIRMATIVE DEFENSE**

3  (Undiscovered Defenses)

4  MGA Defendants have insufficient knowledge or information upon which to

5  form a belief as to whether additional defenses are available. MGA Defendants

6  reserve the right to assert any further or additional defenses upon receiving more

7  complete information regarding the matters alleged in the Counterclaims, through

8  discovery or otherwise.

9

10  WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK)

11  Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

12      a.    that the Counterclaims be dismissed with prejudice;

13      b.    that judgment be entered in favor of counter-defendants and against

14  counterclaimant;

15      c.    that counter-defendants recover their costs and attorneys' fees; and

16      d.    that the Court award such other and further relief as is just and proper.

17

18  Dated: September 19, 2007    O'MELVENY & MYERS LLP

19

20      Marc F. Feinstein

21  Attorneys for Counter-defendants

    MGA Entertainment, Inc., Isaac Larian,

22  MGA Entertainment (HK) Limited, and

    MGAE de Mexico S.R.L. de C.V.

23

24

25

26

27

28

LA2:841935.2

EXHIBIT ___4___

PAGE ___64___

## PROOF OF SERVICE

I, Karen A. Nakatsu, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On September 19, 2007, I served the within document(s):

**AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V. TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS**

☒ by causing to be personally served the document(s) listed above to the person(s) listed below.

John B. Quinn, Esq.
Michael T. Zeller, Esq.
B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street,
10th Floor
Los Angeles, CA 90017

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Patricia Glaser, Esq.                    Michael H. Page, Esq.
Christensen, Glaser, Fink, Jacobs,        Keker & Van Nest LLP
Weil & Shapiro, LLP                       710 Sansome Street
10250 Constellation Blvd.,                San Francisco, CA 94111
19th Floor
Los Angeles, CA 90067

James W. Spertus, Esq.
Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

EXHIBIT ____4____

PAGE ____65____

LA2:817525.2

1    I declare under penalty of perjury under the laws of the United States that the
above is true and correct.

2

3       Executed on September 19, 2007, at Los Angeles, California.

4

                                        _Karen a Nakatsu_____
5                                            Karen A. Nakatsu

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:817525.2

EXHIBIT ___4___

PAGE ___66___

# EXHIBIT 5

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 6

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 7

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 8

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                 EASTERN DIVISION

4                   _ _ _

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                   _ _ _

7   CARTER BRYANT,                )
                                  )
8                    PLAINTIFF,   )
                                  )
9           VS.                   )   NO. ED CV 04-09049
                                  )   (LEAD LOW NUMBER)
10  MATTEL, INC.,                 )
                                  )
11                   DEFENDANT.   )
    _____)   BRYANT'S MOTION FOR
12  AND RELATED ACTIONS,          )   TERMINATING SANCTIONS
                                  )
13  _____)

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                RIVERSIDE, CALIFORNIA

17                MONDAY, AUGUST 27, 2007

18                   11:06 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25               (951) 274-0844
            CSR11457@SBCGLOBAL.NET

**CERTIFIED COPY**

AUGUST 27, 2007    EXHIBIT ___8___    ED CV 04-9049
                   PAGE ___79___

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF PLAINTIFF/COUNTER DEFENDANT MATTEL, INC.:

 4
                          QUINN EMANUEL
 5                        BY:  JOHN B. QUINN
                          BY:  MICHAEL T. ZELLER
 6                        BY:  JON C. COREY
                          865 S. FIGUEROA STREET,
 7                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
 8                        (213) 624-7707

 9

10   ON BEHALF OF PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
     CARTER BRYANT:
11
                          KEKER & VAN NEST
12                        BY:  MICHAEL H. PAGE
                          710 SANSOME STREET
13                        SAN FRANCISCO, CALIFORNIA  94111-1704
                          (415) 391-5400
14

15

16   ON BEHALF OF MGA ENTERTAINMENT:

17                        O'MELVENY & MYERS LLP
                          BY:  DIANA M. TORRES
18                        400 SOUTH HOPE STREET
                          LOS ANGELES, CALIFORNIA  90071-2899
19                        (213) 430-6000

20                        CHRISTENSEN, GLASER, FINK,
                           JACOBS, WEIL & SHAPIRO, LLP
21                        BY:  PATRICIA GLASER
                          10250 CONSTELLATION BOULEVARD
22                        LOS ANGELES, CALIFORNIA  90067
                          (310) 553-3000
23

24

25
```

3

1                          I N D E X

2                                                    PAGE

3    ARGUMENT.....................................     4

4    TESTIMONY....................................    83

5

6

7

     WITNESS          DIRECT      CROSS     REDIRECT      RECROSS
8    **MICHAEL MOORE**

9    BY THE COURT        83
     BY MS. GLASER       86
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  BY MS. GLASER:

2  Q    IS IT TRUE THAT THE FIRST TIME A DIRECTIVE WENT OUT TO

3  MATTEL EMPLOYEES IN WRITING, TO PRESERVE RECORDS, WAS IN APRIL

4  OF 2005?

5  A    IN APRIL OF 2005, A DOCUMENT RETENTION MEMO WENT OUT, AND     02:33

6  THAT WAS THE FIRST TIME IT WENT OUT COMPANY-WIDE.

7  Q    DID AN E-MAIL GO OUT LESS THAN COMPANY-WIDE AT ANY OTHER

8  TIME BEFORE APRIL OF 2005 IN CONNECTION WITH CARTER BRYANT,

9  MGA, POSSIBLE LITIGATION, PROBABLE LITIGATION,

10  HOWEVER-YOU-WANT-TO-COUCH-IT LITIGATION, WITH MGA AND           02:33

11  CARTER BRYANT IN WRITING?

12  A    THERE WASN'T A MEMO THAT WENT TO MORE THAN ONE PERSON,

13  THAT I CAN REMEMBER, BUT THERE MAY HAVE BEEN AN E-MAIL TO MORE

14  THAN ONE PERSON TALKING ABOUT THE CASE AND ASKING FOR

15  DOCUMENTS.                                                      02:33

16  Q    I DIDN'T ASK THAT.

17       I WANT TO KNOW IF THERE WAS A WRITTEN DIRECTIVE THAT

18  WENT OUT TO ANY EMPLOYEE PRIOR TO APRIL OF 2005, ASKING THEM OR

19  TELLING THEM TO PRESERVE THEIR E-MAILS?

20  A    I CAN'T REMEMBER THAT ONE WENT OUT LIKE THAT.  HOWEVER, IT   02:34

21  COULD HAVE BEEN LESS FORMAL THAN THAT IN TERMS OF, YOU KNOW,

22  WITHIN AN E-MAIL, FOLLOWING UP A PHONE CALL.  I DON'T WANT TO

23  EXCLUDE THAT THERE MIGHT HAVE BEEN SOME E-MAILS OF THAT NATURE.

24  Q    IS IT FAIR TO SAY THAT WE DON'T KNOW, AS WE SIT HERE

25  TODAY, EXACTLY WHAT WAS TOLD TO WHOMEVER IT WAS TOLD, WHICHEVER   02:34

1   EMPLOYEES IT WAS TOLD TO, WHAT THEY SHOULD BE PRESERVING?

2   THERE'S NO WRITTEN RECORD OF A DIRECTION AS TO WHAT THEY SHOULD

3   BE PRESERVING?

4          THE COURT:   THOSE ARE TWO SEPARATE QUESTIONS.

5   BY MS. GLASER:                                                    02:34

6   Q   IS THERE A WRITTEN RECORD OF WHAT THEY SHOULD BE

7   PRESERVING?

8   A   WELL, THERE'S THE MEMO THAT WENT OUT IN APRIL OF 2005.

9   Q   OTHER THAN THAT, IS THERE A WRITTEN RECORD DESCRIBING WHAT

10  THEY SHOULD BE PRESERVING?                                        02:34

11         IN OTHER WORDS, IT'S LESS THAN THE UNIVERSE, CORRECT,

12  WHATEVER WENT OUT IN APRIL OF 2005?  WHATEVER YOU ASKED PEOPLE

13  TO PRESERVE, IT WAS LESS THAN THE WHOLE UNIVERSE OF THEIR

14  E-MAILS; CORRECT?

15         MR. QUINN:   I CAN'T FOLLOW THE QUESTION.                  02:35

16         MS. GLASER:   I'LL WITHDRAW IT.   I'M SURE IT'S MY

17  FAULT.

18  BY MS. GLASER:

19  Q   WHEN YOU SENT OUT A DIRECTIVE, OR WHOMEVER SENT OUT THE

20  DIRECTIVE IN APRIL OF 2005, WERE PEOPLE ASKED TO PRESERVE        02:35

21  EVERYTHING OR LESS THAN EVERYTHING?

22  A   PEOPLE WERE ASKED TO PRESERVE DOCUMENTS RELATING TO

23  CERTAIN ISSUES.   AND I'M NOT SURE I CAN GET INTO WHAT THAT

24  DOCUMENT SAID WITHOUT CROSSING SOME PRIVILEGE LINE, BUT --

25         MS. GLASER:   YOUR HONOR, I THINK I'M ENTITLED TO          02:35

JULY 24, 2007 EXHIBIT ___8___      ED CV 04-09049

PAGE ___83___

1    KNOW, AND I THINK THE COURT, MORE IMPORTANTLY, I GUESS, IS

2    ENTITLED TO KNOW IF THE REQUEST FOR PRESERVATION WAS A LIMITED

3    REQUEST INAPPROPRIATELY LIMITED OR IF IT WAS A BROAD REQUEST.

4    BECAUSE I WILL REPRESENT TO THE COURT, MGA'S COUNSEL SENT OUT

5    SOMETHING SAYING, 'PRESERVE EVERYTHING.'                       02:36

6           THE COURT:  YES, COUNSEL.

7           MR. QUINN, I DO THINK THAT THE SCOPE OF THE RETENTION

8    POLICY IS SOMETHING WHICH IS NOT PROTECTED BY PRIVILEGE AT THIS

9    POINT.

10          MR. QUINN:  YOUR HONOR, MGA HAS TAKEN THE POSITION --   02:36

11   THE SHOE'S ON THE OTHER FOOT -- THAT WE'RE NOT PERMITTED TO

12   KNOW THAT.  THEY CLAIM THAT THAT'S PRIVILEGED INFORMATION AS TO

13   WHAT PEOPLE WERE TOLD TO RETAIN.

14          THE COURT:  IS THAT MGA'S POSITION?

15          MS. GLASER:  I DO NOT BELIEVE SO, YOUR HONOR.  I'M      02:36

16   NOT AWARE THAT WAS EVER DONE, BUT I DON'T WANT TO MISREPRESENT

17   -- I'M NOT AWARE OF THAT, BUT I'M CERTAINLY PREPARED TO LET THE

18   COURT KNOW AND COUNSEL KNOW WHAT PEOPLE HAVE BEEN ASKED TO

19   PRESERVE.

20          THE COURT:  PUTTING ASIDE THAT RECIPROCITY, WHICH I     02:36

21   THINK YOU WOULD CERTAINLY BE ENTITLED TO, GIVEN HOW THIS HAS

22   UNFURLED, THERE'S CERTAINLY NO PRIVILEGE ISSUE WITH RESPECT TO

23   THE SCOPE OF THE RETENTION POLICY, GIVEN WHAT THIS WITNESS AND

24   MANY OTHER WITNESSES FOR MATTEL HAVE ALREADY DISCLOSED.

25          MR. QUINN:  I WOULD AGREE, YOUR HONOR, IN TERMS OF      02:36

1    SOME GENERAL SUBJECT MATTERS.

2            THE COURT:   RIGHT.   THAT'S ALL WE'RE LOOKING FOR

3    RIGHT NOW.

4            MR. QUINN:   AND WHAT WE'RE TOUCHING ON HERE -- I MADE

5    REFERENCE TO A SECURITY TOOL THAT WAS PUT IN PLACE BACK IN LATE      02:37

6    2003.

7            THE COURT:   THAT'S CORRECT.

8            MR. QUINN:   MATTEL DOES REGARD THAT AS -- THAT'S

9    SOMETHING THAT WAS PUT IN PLACE TO PROTECT MATTEL FROM -- AMONG

10   OTHER THINGS, IT WAS PUT IN PLACE TO PROTECT MATTEL FROM            02:37

11   INDUSTRIAL ESPIONAGE --

12           THE COURT:   YES.

13           MR. QUINN:   -- WHICH MATTEL HAD BEEN ON THE RECEIVING

14   END OF.

15           THE COURT:   ALLEGEDLY.                                     02:37

16           MR. QUINN:   I'M A LITTLE CONCERNED ABOUT DISCUSSING

17   THAT IN OPEN COURT, ESPECIALLY WITH MGA'S IN-HOUSE COUNSEL.

18           THE COURT:   WE'RE NOT ASKING FOR THOSE KINDS OF

19   SPECIFICS.

20           MR. QUINN:   SO AS LONG AS THE WITNESS UNDERSTANDS,         02:37

21   BECAUSE I THOUGHT HE MAY BE CONFUSED ABOUT WHETHER HE'S BEING

22   ASKED TO GET INTO THAT.

23           THE COURT:   AS I UNDERSTAND THE QUESTION RIGHT NOW,

24   WE'RE SIMPLY ASKING HIM TO DESCRIBE IN GENERAL TERMS THE NATURE

25   OF THIS APRIL 2005 MEMO.                                           02:37

JULY 24, EXHIBIT _____9_____     ED CV 04-09049

PAGE _____85_____

1 MGA'S MEXICAN EMPLOYEES -- AND BY THE WAY, THOSE WOULD BE THE

2 EMPLOYEES THAT THE MEXICAN COURT, JUST WITHIN THE LAST FEW

3 DAYS, HAS ORDERED TO BE ARRESTED.

4       **MS. GLASER:** THIS IS MISREPRESENTATION.

5       **THE COURT:** MR. QUINN, THAT WAS NOT NECESSARY.    03:09

6 PLEASE. WE DON'T NEED THAT.

7       **MR. QUINN:** ALL RIGHT.

8       EXHIBIT C TO THE COMPLAINT, THE ATTACHED E-MAILS

9 RELATING TO THOSE MGA MEXICAN EMPLOYEES' ACTIVITIES -- I DON'T

10 KNOW -- IT'S VERY HARD FOR US TO SIT HERE AND LISTEN -- WE    03:09

11 FILED A SUPPLEMENTAL DECLARATION. ORDER AFTER ORDER AFTER

12 ORDER HAS BEEN ENTERED AGAINST MGA, COMPELLING DISCOVERY.

13 JUDGE INFANTE FOUND THAT THEY DELIBERATELY, WILLFULLY,

14 FLAGRANTLY VIOLATED HIS ORDER IN REFUSING TO PRODUCE A WITNESS

15 TO TESTIFY ON DOCUMENT PRESERVATION, AND WE HAVE TO SIT HERE    03:09

16 AND LISTEN TO THIS. THIS IS NOW, AT THIS POINT, A WITCH-HUNT.

17 THEY MADE A MOTION FOR TERMINATING SANCTIONS. THEY HAVE

18 ABSOLUTELY NO BASIS FOR THAT.

19       YOUR HONOR, IN MY VIEW, THIS MOTION SHOULD NEVER HAVE

20 BEEN BROUGHT. THE COURT SAID, "WHY IS THIS BEFORE ME?" WE    03:10

21 TOLD THEM, "YOU WANT THE TAPES, YOU CAN HAVE THE TAPES." WE

22 TOLD THEM.

23       **THE COURT:** AND YOU ARE PREPARED TO PROVIDE TO

24 COUNSEL THE CRITERIA THAT YOU'RE USING TO DETERMINE WHICH

25 REQUESTS GO TO THIS OUTSIDE VENDOR WHO'S ABLE TO --    03:10

JULY 24, 2006 EXHIBIT   **8**   ED CV 04-09049

PAGE   **86**

1    MR. QUINN:  BY THE WAY, THEY WON'T GIVE US ANY OF

2    THAT INFORMATION.

3    MR. ZELLER:  I MEAN, WE'RE CERTAINLY HAPPY TO TALK

4    WITH THEM ABOUT THAT, YOUR HONOR.  I THINK IT DOES HAVE TO BE A

5    TWO-WAY STREET IN TERMS OF WHAT THE PARTIES HAVE, IN DEPOSITION    03:1(

6    SO FAR -- AND IT HAS BEEN ON BOTH SIDES -- HAVE SAID THAT THE

7    PARTICULAR SEARCH CRITERIA, THE THINGS THAT PEOPLE ARE TOLD,

8    THOSE ARE ATTORNEY-CLIENT COMMUNICATIONS AND, THEREFORE,

9    PRIVILEGED, OR IN SOME INSTANCES, WORK PRODUCT.  SO THOSE

10   ISSUES NEED TO BE DISCUSSED BY THE PARTIES AND POTENTIALLY    03:11

11   RESOLVED.

12   BUT, YOU KNOW, I DON'T THINK IT'S FAIR THAT WE WOULD

13   HAVE TO SAY, 'HERE, WE'RE GOING TO GIVE THEM ALL OF THE

14   CRITERIA,' WITHOUT GETTING THAT IN RETURN.

15   THE COURT:  I AGREE.  IT'S GOING TO BE MUTUAL.    03:11

16   MR. QUINN:  ESPECIALLY SINCE WE'VE OFFERED, YOUR

17   HONOR, TO GIVE THEM THE TAPES.  THEY CAN RUN ANY CRITERIA THEY

18   WANT.

19   MS. GLASER:  TWO THINGS:  IT IS ENORMOUSLY EXPENSIVE

20   TO GO THROUGH THE ZEUS TAPES, AND THAT'S AN EXPENSE THAT    03:11

21   CLEARLY MATTEL SHOULD HAVE TO BEAR.

22   BUT THE OTHER THING:  WE HAVEN'T SENT A DIRECTIVE

23   AROUND SAYING, 'PRESERVE THIS BUT NOT THIS.'  WE'VE ASKED

24   EVERYBODY TO PRESERVE EVERYTHING.  WE'RE NOT HIDING THAT.

25   THERE'S NO CRITERIA THAT'S OUT THERE.  WE'VE ASKED THEM TO    03:11

JULY 24, 2006    EXHIBIT _____ 8    ED CV 04-09049

PAGE ___ 87

1   PRESERVE EVERYTHING.

2          THE COURT:  WHEN THE COURT SPEAKS ABOUT CRITERIA,

3   THERE IS A LOT ON THOSE ZEUS TAPES.  MATTEL DOES A LOT MORE

4   THAN JUST MATTERS RELATED TO BRATZ, OR WHATEVER.  THEY'VE GOT

5   BARBIE; THEY'VE GOT ALL KINDS OF DIFFERENT THINGS GOING THAT          03:11

6   ARE PRESUMABLY ON THESE ZEUS TAPES; SO THE CRITERIA THAT I'M

7   TALKING ABOUT IS WHAT CRITERIA ARE USED TO --

8          MS. GLASER:  THAT'S IN CONNECTION WITH ZEUS.

9          THE COURT:  RIGHT.

10          MS. GLASER:  WITH RESPECT TO E-MAILS --          03:12

11          THE COURT:  LET'S NOT MIX THESE THINGS.

12          MS. GLASER:  -- WE'VE ASKED PEOPLE TO PRESERVE

13   EVERYTHING.  THEY HAVE NOT ASKED THEM TO PRESERVE EVERYTHING.

14   THEY HAVE CRITERIA THAT WE ARE JUST LEARNING ABOUT TODAY.

15          THE COURT:  AND I DON'T DISAGREE WITH THE PRACTICE OF          03:12

16   NOT PRESERVING EVERY E-MAIL.  I DON'T THINK MATTEL HAS TO

17   PRESERVE EVERY E-MAIL THAT'S GENERATED BY MATTEL.

18          MS. GLASER:  BUT, YOUR HONOR, THEY SHOULD HAVE TO,

19   AND WE ASKED THEM -- YOU KNOW WHAT?  DON'T PRESERVE EVERY

20   E-MAIL.  HOW ABOUT GIVING US THE LIST OF KEY PERSONNEL THAT ARE          03:12

21   WITNESSES THAT YOU'VE IDENTIFIED IN THIS CASE AS WITNESSES AND

22   PRESERVE THEIR E-MAIL FROM THE BEGINNING OF TIME?

23          THEY HAVEN'T EVEN DONE THAT.

24          AND WHEN WE PUSHED THEM ON THAT -- BECAUSE THE

25   INITIAL RESPONSE WAS, 'IT'S TOO EXPENSIVE, AND WE'LL CRASH THE          03:12

```
 1  SYSTEM IF WE TRY TO PICK OUT CERTAIN PEOPLE.'

 2          AND THEN WE LEARN FROM THEIR 30(B)(6) WITNESS, 'YES,

 3  YOU CAN DO THAT, AND IT WON'T HARM THE SYSTEM.  IT'S TIME

 4  CONSUMING, BUT IT WON'T HARM THE SYSTEM.'

 5          WE'RE NOT BEING TOLD THE SAME THING BY THEIR                03:12

 6  PURPORTED REPRESENTED, PUSH-FORWARD, 30(B)(6) WITNESSES AND THE

 7  LAWYERS.

 8          THAT'S GOT TO STOP.

 9          THE COURT:  WHAT I WANT FROM BOTH PARTIES IS TWO

10  SINGULAR DECLARATIONS, UNDER PENALTY OF PERJURY, SETTING FORTH      03:13

11  EXACTLY THE PRESERVATION POLICIES.  I WANT IT FROM MGA.  I WANT

12  IT FROM MATTEL.  AND I DON'T WANT TO JUST HEAR ABOUT 35

13  WITNESSES.  I WANT TO KNOW WHO THOSE 35 PEOPLE ARE.  I DON'T

14  WANT TO HEAR JUST ABOUT 'WE WERE ASKED TO SAVE EVERYTHING,'

15  BECAUSE OBVIOUSLY, MGA IS NOT SAVING EVERY E-MAIL IN THEIR         03:13

16  ENTIRE COMPANY.  YOU'VE GOT CRITERIA AS WELL.

17          MS. GLASER:  (INAUDIBLE.)

18          THE COURT:  YOU'RE SAVING EVERY E-MAIL?

19          FAIR ENOUGH.  IF THAT'S WHAT YOU'RE DOING, THAT'S

20  WHAT YOU'RE DOING.                                                 03:13

21          MR. QUINN:  SO ARE WE, YOUR HONOR.  ALL THE BACKUP

22  TAPES --

23          THE COURT:  NOW EVERYTHING IS BEING BACKED UP?

24          MR. QUINN:  EVERY SINGLE ONE.

25          SO IF WE'RE GOING TO IDENTIFY THE PEOPLE WE SPOKE TO,      03:13
```

1    I ASSUME MGA IS ALSO GOING TO IDENTIFY THE PEOPLE THEY SPOKE

2    TO.

3         **THE COURT:**  I'M ONLY ASKING FOR YOU TO IDENTIFY TO

4    THE EXTENT THAT YOU LIMITED THE RETENTION TO THOSE INDIVIDUALS.

5    IF THEY'RE DOING IT FOR EVERY EMPLOYEE, THEN THEY DON'T HAVE TO     03:14

6    DO THAT.  IF YOU'RE DOING IT FOR EVERY EMPLOYEE AT MATTEL, THEN

7    YOU DON'T HAVE TO DO IT.

8         IF YOU ARE LIMITING OR SETTING CRITERIA, THEN I WANT

9    TO KNOW WHO THOSE ARE, JUST FOR FUTURE REFERENCE.  I WANT THIS

10   FOR NO OTHER REASON THAN FOR ANY FUTURE DISPUTES THAT COME UP      03:14

11   SO THAT I'VE GOT A CLEAR, SINGULAR DOCUMENT THAT I CAN USE AS

12   REFERENCE TO LOCK BOTH SIDES IN.

13        **MS. GLASER:**  THANK YOU, YOUR HONOR.

14        **THE COURT:**  DO YOU UNDERSTAND WHAT I'M ASKING FOR,

15   MR. QUINN?                                                        03:14

16        **MR. QUINN:**  WHAT I'M HEARING, YOUR HONOR, IS -- THE

17   COURT'S REALLY GOING BACK -- IN TERMS OF IDENTIFYING PEOPLE WHO

18   WERE SPOKEN TO AND GIVEN THIS DIRECTION, THE COURT IS REALLY

19   GOING BACK TO THE NOVEMBER 2003 TIME FRAME AND WANTS TO KNOW,

20   WHO ARE THOSE INDIVIDUALS.                                        03:14

21        **THE COURT:**  BASICALLY, IT SOUNDS LIKE, FROM MATTEL'S

22   PERSPECTIVE, THERE WERE TWO CRITICAL PERIODS:  NOVEMBER OF

23   2003, WHEN 35 OR SO INDIVIDUALS WERE IDENTIFIED AND WERE GIVEN

24   CERTAIN INSTRUCTIONS -- I WANT TO KNOW WHO THOSE 35 INDIVIDUALS

25   WERE, APPROXIMATELY, AND WHAT THOSE INSTRUCTIONS WERE; AND THEN    03:14

1   IS ACTUALLY GOING TO BE UNDER SEAL.

2          I'LL ISSUE A MINUTE ORDER DIRECTING FURTHER

3   PROCEEDINGS IN THIS MATTER, BUT BE WORKING ON THIS DECLARATION.

4          **MS. GLASER:**   THANK YOU, YOUR HONOR.

5          **MR. QUINN:**   THANK YOU, YOUR HONOR.

6          **THE COURT:**   GOOD DAY, COUNSEL.

7

8

9

10

11                          CERTIFICATE

12

13   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
14   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
15   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

16

17   _____          9-5-07
     THERESA A. LANZA, CSR, RPR                _____
18   FEDERAL OFFICIAL COURT REPORTER                 DATE

19

20

21

22

23

24

25

EXHIBIT ___8___

JULY 24, 2006         PAGE ___91___        ED CV 04-09049

# EXHIBIT 9

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 10

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
      Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8                     UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                            Consolidated with
12                 Plaintiff,               Case Nos. CV 04-09059 & CV 05-2727

13         vs.                              **DISCOVERY MATTER**

14  MATTEL, INC., a Delaware               **[To Be Heard By Hon. Edward Infante
                                            (Ret.) Pursuant To Order Of December 6,**
15  corporation,                           **2006]**

16                 Defendant.               DECLARATION OF MICHAEL T.
                                            ZELLER IN SUPPORT OF MATTEL,
17                                          INC.'S MOTIONS TO COMPEL FARHAD
                                            LARIAN, STERN & GOLDBERG AND
18  AND CONSOLIDATED ACTIONS               KAYE SCHOLER TO PRODUCE
                                            DOCUMENTS
19

20

21                                          Hearing Date:    January 10, 2008
                                            Time:            9:30 a.m.
22                                          Place:           Telephonic

23                                          **Phase 1**
                                            Discovery Cut-Off:      January 28, 2008
24                                          Pre-Trial Conference:   May 5, 2008
                                            Trial Date: May 27, 2008
25

26

27

28                          EXHIBIT _____ 10

07209/2339945.1             PAGE _____ 93

ZELLER DEC. ISO MATTEL'S REPLY TO MOTIONS TO COMPEL LARIAN V. LARIAN DOCUMENTS

1       I, Michael T. Zeller, declare as follows:

2       1.    I am a member of the Bars of the States of California, New York

3 and Illinois, am admitted to practice before this Court and am a partner at Quinn

4 Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and cross-

5 defendant Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand

6 knowledge and, if called and sworn as a witness, I could and would testify

7 competently thereto.

8       2.    On November 2 and 3, 2005, my former associate Tania Krebs

9 and I reviewed Farhad Larian documents at the offices of Mr. Larian's attorneys.

10 Included among the documents in Mr. Larian's possession that Ms. Krebs and I

11 reviewed at that time were (1) a May 24, 2000 email from Farhad Larian to Isaac

12 Larian in which Farhad Larian stated that Isaac Larian instructed him to withhold

13 from MGA's counsel the originals of documents that had been located in the

14 Fireman's Fund case and to tell MGA's counsel that the documents could not be

15 found; and (2) an August 14, 2000 email from Isaac Larian to Farhad Larian, Dennis

16 Medici and Warner referencing cost tracking software used by Mattel that Isaac

17 Larian stated he learned about from interviewing Mattel employees.

18      3.    Based on Mattel's review of the documents produced by Farhad

19 Larian in response to the subpoena Mattel served on him on August 31, 2007, it

20 does not appear that either of these emails have been produced.

21      4.    After the review of documents described above, Mattel's counsel

22 sent a letter to Farhad Larian's counsel on November 28, 2005. A true and correct

23 copy of that letter is attached hereto as Exhibit A. In response, on December 22,

24 2005, Farhad Larian's counsel stated during a telephone conference with Mattel's

25 counsel that he had sent Farhad Larian a copy of Mattel's letter. A true and correct

26 copy of the letter confirming that conversation, dated December 22, 2005, is

27 attached hereto as Exhibit B.

28

**EXHIBIT** _____ 10

**PAGE** _____ 94

1      I declare under penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.

3      Executed this 3rd day of January, 2008, at Los Angeles, California.

4

5                                        _____

6                                        Michael T. Zeller

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27        EXHIBIT _____10_____

28        PAGE _____95_____

7209/2339945.1

**EXHIBIT A**

EXHIBIT _____ 10 _____

PAGE _____ 96 _____

**quinn emanuel** trial lawyers

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | PALM SPRINGS | SAN DIEGO

WRITER'S DIRECT DIAL NO.
(213) 443-3675

WRITER'S INTERNET ADDRESS
taniakrebs@quinnemanuel.com

November 28, 2005

Robert Wilson
Cotkin Collins & Ginsburg
300 South Grand Avenue, 24th Floor
Los Angeles, CA 90071

Dear Bob:

As you know, this firm represents Mattel in ongoing litigation against Carter Bryant and MGA that involves, at least in part, events pertaining to Bratz dolls, including the conception, design, development and marketing of Bratz dolls.

We are aware that your client is in possession of documents that fall into the following general categories, among others: (1) internal MGA emails dating from the mid-1990s through 2005; (2) emails between MGA employees and individuals outside MGA dating from the mid-1990s through 2005; (3) emails between your client and various individuals regarding the timing of Bratz development in 2000; and (4) other emails between your client and Isaac Larian.

Documents that we are aware are in your client's possession, custody and control which are relevant to Mattel's litigation include -- but are in no way limited to -- the following:

- An internal MGA email dated November 16, 2000 that summarizes "last week's meeting" with K-Mart and references Bratz.

- An email from Fred Larian to Isaac Larian dated November 22, 2000 mentioning prices for a "Bratz Fashion Pack."

- A November 22, 2000 chart describing changes to the Bratz Doll Assortment and Bratz Holiday doll.

quinn emanuel urquhart oliver & hedges, llp

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643
805 Third Avenue, 11th Floor, New York, New York 10022 | TEL. 212-702-8100 FAX 212-702-8200
201 Sansome Street, 6th Floor, San Francisco, California 94104 | TEL. 415-986-5700 FAX 415-986-5707
555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-620-4500 FAX 650-620-4555
45-025 Manitou Drive, Suite 8, Indian Wells, California 92210 | TEL. 760-345-4757 FAX 760-345-2414
4445 Eastgate Mall, Suite 210, San Diego, California 92121 | TEL. 858-812-3107 FAX 858-812-3336

EXHIBIT _____

PAGE          97          A

- An August 19, 2005 Fred Larian email to Scott Bachrach (at scottbac@aol.com) inquiring about the first contact between Mr. Bachrach and MGA concerning Bratz, as well associated communications.

- An August 22, 2005 Fred Larian email to Colleen O'Higgins (colleenohiggins@msn.com) asking about Carter Bryant and Bratz licensees, as well as associated communications.

- Communications with Bin Ton regarding Bratz, including without limitation those relating to actual and/or draft Bin Ton declaration(s) regarding Bratz.

- Communications with Michael Lingg regarding Bratz, including without limitation those relating to actual and/or draft Lingg declaration(s) regarding Bratz.

- Communications with Jennifer Maurus regarding Bratz, including without limitation those relating to actual and/or draft Maurus declarations regarding Bratz.

- A December 21, 2000 email from Isaac Larian to Paul Warner, with copies to Dennis Medici and Fred Larian, that mentions TRU purchases for products including Bratz.

- An August 1, 2005 email from Fred Larian to Victoria O'Connor regarding Bratz licensees, as well as associated communications.

- An August 1, 2005 email chain between Fred Larian and employees at dng.com asking about Bratz, as well as associated communications.

- An August 7, 2005 email from Mark Fragel answering questions regarding Bratz materials shown to Paulette Prim in November 2000.

- A document entitled "Analysis of Design, Packaging & Mock-Up Expense for 6 Months Ending 6/30/99 and 6/30/00" attached to an August 11, 2000 email from Dennis Medici to Isaac Larian and Fred Larian.

- A May 24, 2000 Fred Larian email to Isaac Larian which asserts that Isaac had instructed Fred to withhold the originals of documents that had been located in connection with the Fireman's Fund case and "to tell him [an MGA attorney] we could not find the originals."

- An August 14, 2000 Isaac Larian email to Medici, Warner and Fred Larian that references cost tracking software used by Mattel that Isaac Larian says he learned about from interviewing Mattel employees.

- Emails between Isaac Larian and Jahangir Makabi requesting that Mr. Makabi sign an affidavit that he lost his original stock certificates despite Makabi's protestation that he never had any such certificates, as well as associated communications.

- A January 31, 2001 email from Isaac Larian to All in Marketing and Product Development, Medici and Didi Brown asserting that he (Isaac Larian) had been

2

EXHIBIT ___10___

PAGE ___98___

EXHIBIT _A_ PAGE _4_

diagnosed with "Alzheimer's" and denying in substance that he ever said anything that cannot be confirmed by a writing.

- A November 15, 2000 Paula Treantafelles email to Fred Larian that says MGA will be selling a Bratz backpack and states that a design for it is attached.

As you also are aware, the MGA/Bryant litigation is currently stayed pending an interlocutory appeal to the Ninth Circuit on jurisdictional issues. When discovery resumes, we plan to serve your client with a subpoena for the production of documents that include without limitation the documents listed above as well as such other documents in his possession, custody or control that refer or relate to the design, development, marketing, sale and/or any other activities regarding Bratz prior to June 30, 2001. You and your client are obligated to ensure that your client preserves all such documents in the interim. Moreover, you and your client have an obligation to retain all electronic copies or versions of such documents that he has in his possession, custody or control and their associated metadata.

If you disagree with our view on the preservation obligations that you and your client have, or if your client has taken or intends to take any steps to dispose of or to otherwise dispossess himself of such documents, please let me know immediately so that we can seek Court intervention on the matter. Thank you in advance for your anticipated cooperation.

Very truly yours,

Tania M. Krebs

EXHIBIT ___ ID ___   3
PAGE ___ 99

EXHIBIT A PAGE 5

**EXHIBIT B**

EXHIBIT _____ (O

PAGE_____ \OO

**quinn emanuel** trial lawyers

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | PALM SPRINGS | SAN DIEGO

WRITER'S DIRECT DIAL NO.
(213) 443-3675

WRITER'S INTERNET ADDRESS
taniakrebs@quinnemanuel.com

December 22, 2005

Robert Wilson
Cotkin Collins & Ginsburg
300 South Grand Avenue, 24th Floor
Los Angeles, CA 90071

Dear Bob:

We received today your letter dated December 5, 2005, responding to my letter of November 28, 2005. Per your handwritten note, it appears that your letter was not delivered until today because your letter was misaddressed.

Per our telephone discussion today, thank you for confirming that you previously had forwarded to Farhad Larian our letter regarding his obligations to preserve documents relevant to Mattel's ongoing litigation against MGA and that Mr. Larian has received the letter. Also, we understand from you that Richard Kellner of Kabateck Brown Kellner LLP is currently representing Mr. Larian, and we will direct future correspondence accordingly. We are copying Mr. Kellner on this letter.

If any of this is incorrect, please let us know.

Very truly yours,

Tania M. Krebs

cc:    Richard L. Kellner, Esq.

EXHIBIT ___10___

PAGE ___101___

EXHIBIT _B_ PAGE _6_

quinn emanuel urquhart oliver & hedges, llp

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643
805 Third Avenue, 11th Floor, New York, New York 10022 | TEL 212-702-8100 FAX 212-702-8200
201 Sansome Street, 6th Floor, San Francisco, California 94104 | TEL 415-986-5700 FAX 415-986-5707
555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-620-4500 FAX 650-620-4555
45-025 Manitou Drive, Suite 8, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

# EXHIBIT 11

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 12