KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>　　　　　　　　Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**[PUBLIC REDACTED] REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　April 22, 2008<br>Time:　　10:00 a.m.<br>Dept:　　Courtroom 1<br>Judge:　　Hon. Stephen G. Larson<br><br>Date Comp. Filed:  April 13, 2005<br><br>Discovery Cut-Off:  Jan. 28, 2008<br>Pre-Trial Conference: May 5, 2008 |

414311.02

# TABLE OF CONTENTS

**Page**

I.   Introduction ................................................................................. 1

II.  Argument ..................................................................................... 1

A.   Mattel attempts to distract the Court from the material facts by misrepresenting the evidence and raising irrelevant, disputed fact issues. ............................................................... 2

B.   Neither the law nor the facts cited in Mattel's brief establish that Bryant owed any fiduciary duty to Mattel. ........................ 3

1.   Mattel concedes that Bryant was not a Mattel fiduciary based on his position as an ordinary Mattel employee. ............................................................................. 3

2.   Mattel also fails to identify any facts making Bryant a fiduciary by agreement under the proper legal standard. ............................................................................. 3

C.   Mattel has failed to create any genuine issue of material fact concerning the proper interpretation of the relevant portions of its adhesive Employee Agreement, and therefore no contract gives Mattel any ownership of Bratz. ........................ 7

1.   California law mandates Bryant's interpretation of the Employee Agreement, which is a contract of adhesion. ............................................................................. 8

2.   The Agreement is ambiguous and must be interpreted narrowly against Mattel, its drafter. ..................................... 10

a.   Intrinsic evidence permits—and supports— Bryant's interpretation of the Agreement's ambiguous terms. ............................................... 10

b.   The extrinsic evidence also supports Bryant's interpretation, not Mattel's, and Bryant's interpretation does not render the Agreement "pointless." ...................................................... 12

3.   Mattel attempts to avoid California law's special rules for interpreting contracts of adhesion. ............................. 15

4.   Mattel also offers no argument that the Employee Agreement satisfies 17 U.S.C. § 204(a)'s requirements for a valid transfer of copyright ownership. ...................................................................... 16

5.   Mattel's Questionnaire is not a binding contract. ............. 17

i

[PUBLIC REDACTED] REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

414311.02

D.     Mattel has not opposed Bryant's motion for summary judgment as to Mattel's unjust enrichment claim. .............................18

E.     Bryant joins in MGA's Reply to the same extent Bryant joined in MGA's Motion...........................................................19

III.    Conclusion ...........................................................................19

414311.02

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page(s)**

*City of Oakland v. Harding ESE, Inc.,*
No. C 03-3534 CW, 2004 WL 2646654
(N.D. Cal. Nov. 17, 2004) ................................................................. 13

*City Solutions, Inc. v. Clear Channel Communications, Inc.,*
201 F. Supp. 2d 1048 (N.D. Cal. 2002) ........................................ 4, 5, 7

*Eldred v. Ashcroft,*
537 U.S. 186 (2003) ........................................................................ 11

*Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,*
403 F. Supp. 2d 968 (N.D. Cal. 2005) .......................................... 3, 4

*Gamery v. Greif Board Corp.,*
949 F. Supp. 523 (N.D. Ohio 1996) ............................................... 13

*Rita Medical Systems, Inc. v. Resect Medical, Inc.,*
No. C 05-03291 WHA, 2007 WL 161049
(N.D. Cal. Jan. 17, 2007) ............................................................... 4, 6

*Triton Energy Corp. v. Square D. Co.,*
68 F.3d 1216 (9th Cir. 1995) ............................................................ 2

## STATE CASES

*GAB Bus. Services, Inc. v. Lindsey & Newsom Claim Services,
Inc.,* 83 Cal. App. 4th 409 (2000), *overruled on other
grounds by Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004) .................. 3, 5

*Graham v. Scissor-Tail, Inc.,*
28 Cal. 3d 807 (1981) ............................................................. 8, 15, 16

*Maglica v. Maglica,*
66 Cal. App. 4th 442 (1998) ............................................................. 6

*Mayhew v. Benninghoff,*
53 Cal. App. 4th 1365 (1997) .......................................................... 15

iii

414311.02

*Michelson v. Hamada,*
    29 Cal. App. 4th 1566 (1994).................................................................5

*Mirpad, LLC v. Cal. Ins. Guarantee Ass'n,*
    132 Cal. App. 4th 1058 (2005)..............................................................10

*Montrose Chem. Corp. v. Admiral Ins. Co.,*
    10 Cal. 4th 645 (1995)...........................................................................12

*Neal v. State Farm Ins. Co.,*
    188 Cal. App. 2d 690 (1961).....................................................................8

*Oakland Raiders v. Nat'l Football League,*
    131 Cal. App. 4th 621 (2005).....................................................................7

*People v. Shelton,*
    37 Cal. 4th 759 (2006)......................................................................13, 18

*S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.,*
    74 Cal. App. 1232 (1999).......................................................................12

*Stevens v. Marco,*
    147 Cal. App. 2d 357 (1956).....................................................................5

*Wolf v. Superior Court,*
    107 Cal. App. 4th 25 (2003)..................................................................6, 7

*Worldvision Enterprises., Inc. v. Am. Broad. Companies,*
    142 Cal. App. 3d 589 (1983).....................................................................4

**FEDERAL STATUTES**

17 U.S.C. § 204(a) .........................................................................8, 16, 17

**STATE STATUTES**

Cal. Civ. Code § 1636...........................................................................13

Cal. Civ. Code §§ 1647-1649 ...................................................................15

iv

414311.02

Cal. Civ. Code § 1654 ................................................................................................15

Cal. Labor Code § 2870 ..............................................................................13, 14, 17

v

414311.02

# I.    Introduction

Mattel sidesteps the core issues actually presented by Bryant's motion for partial summary judgment ("Bryant's Motion"), attempting instead to distract the Court with Mattel's own false version of disputed facts that Bryant's Motion does not raise, and which need not be resolved to grant Bryant's Motion.  Although Bryant will prove at trial that his creation of the Bratz idea and his conduct while preparing to leave Mattel were entirely lawful, that disputed history is not relevant to the interpretation of Mattel's Employee Agreement, Bryant's status as a non-fiduciary of the company, or the other matters raised by Bryant's Motion.

Where Mattel does confront the issues raised in Bryant's Motion, it also fails to present evidence creating any genuine issue of material fact.  Mattel's distortions of the evidence and the law do not create any genuine disputes of material fact for trial on the issues raised by Bryant's Motion.  Because Mattel has failed to demonstrate any genuine issues for trial on its claims against Bryant to defeat Bryant's Motion, Bryant is entitled to summary judgment in his favor as to Mattel's claims for breach of fiduciary duty, Mattel's contractual claims to ownership of Bratz (and all other claims based on that alleged ownership), and all other claims raised by Bryant's Motion.[1]

# II.    Argument

Mattel has failed to provide the Court with evidence supporting the claims (and parts of claims) that Bryant's Motion identified as unsupported and subject to summary judgment in Bryant's favor.  Because Mattel bears the burden of proof on

---

[1] Bryant also joins in the MGA Parties' Reply Memorandum of Points and Authorities in Further Support of Their Motion for Partial Summary Judgment ("MGA Reply") and related materials, to the same extent Bryant joined in MGA's Motion for Partial Summary Judgment and supporting materials, and incorporates those arguments and related facts as though fully set forth here.  In addition, Bryant hereby incorporates by reference, as though fully set forth here, all relevant portions of his Memorandum of Points and Authorities in Opposition to Mattel's Motion for Partial Summary Judgment ("Bryant's Opposition") and supporting materials.

1

414311.02

1   each of its claims at trial, Mattel's failure to provide such evidence in the face of

2   Bryant's Motion is fatal.  *See Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216,

3   1222 (9th Cir. 1995); L.R. 56-3 (facts not refuted in opposing summary judgment

4   to be deemed admitted).  Bryant is entitled to summary judgment on all claims

5   identified in his Motion.

6   **A.**     **Mattel attempts to distract the Court from the material facts by**
            **misrepresenting the evidence and raising irrelevant, disputed fact**
7            **issues.**

8           Stripped of facts irrelevant to resolution of Bryant's Motion, Mattel Inc.'s

9   Corrected Opposition to the MGA Parties' and Bryant's Motions for Partial

10   Summary Judgment ("Mattel's Opposition") concedes the absence of genuine

11   issues of material fact as to the facts presented in support of Bryant's Motion

12   (discussed further below).  Instead, recognizing that it cannot truly dispute the core

13   facts underlying Bryant's Motion, Mattel resorts to reciting its own inflammatory

14   version of hotly-disputed issues not relevant to Bryant's Motion.  Although

15   Mattel's "facts" on such issues are flatly wrong, as Bryant will prove at trial, they

16   do not affect Bryant's Motion.  In addition to actual factual disputes not material to

17   Bryant's Motion, Mattel also relies on purported factual "disputes" based on

18   evidence that does not say what Mattel claims it does, is taken grossly out of

19   context, or is simply irrelevant to Bryant's asserted facts—none of which creates

20   any genuine dispute precluding summary judgment in Bryant's favor.  The actual

21   evidence (unlike Mattel's account of it) does not create any material issues of fact

22   for this Motion, and Mattel's distortions of the record do not alter the applicable

23   legal analysis.  Bryant refutes Mattel's purported "facts" and points out its

24   misleading use of the record evidence at length in his Response to Mattel, Inc.'s

25   Statement of Genuine Issues ("SGI").  *See also* Bryant's Opposition at 3-5

26   (explaining the history of Bryant's Bratz idea and pitch to MGA, and his

27   preparations to compete upon his departure from Mattel).  Because none of

28

1    Mattel's misrepresentations affect the matters at issue in Bryant's Motion, Bryant

2    does not address them here in detail.

3    **B.    Neither the law nor the facts cited in Mattel's brief establish that Bryant owed any fiduciary duty to Mattel.**

4          **1.    Mattel concedes that Bryant was not a Mattel fiduciary based on his position as an ordinary Mattel employee.**

5

6         Mattel expressly concedes, as it must, that Bryant does not owe Mattel any

7    fiduciary duty *imposed by law* as a result of his position as an ordinary Mattel

8    employee. *See GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Services, Inc.*,

9    83 Cal.App. 4th 409, 420-21 (2000) ("*GAB Business*"), *overruled on other grounds*

10   *by Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004); *Enreach Tech., Inc. v. Embedded*

11   *Internet Solutions, Inc.*, 403 F. Supp. 2d 968 (N.D. Cal. 2005). That concession is

12   undoubtedly because, as set forth in Bryant's SGI ¶¶ 27-36, Mattel could identify

13   no evidence materially disputing the nature of Bryant's role and position at Mattel

14   as described in Bryant's Motion. (Any actual disputes about the exact nature of

15   Bryant's position at Mattel are irrelevant to his alleged status as a fiduciary.) *See*

16   Bryant's Motion at 10-13.

17

18         **2.    Mattel also fails to identify any facts making Bryant a fiduciary by agreement under the proper legal standard.**

19

20        Nevertheless, Mattel contends that Bryant undertook a fiduciary relationship

21   by agreement or because Mattel allegedly entrusted him with confidential

22   information. Mattel continues to ignore the legal standard, and has failed to set

23   forth any facts from which a trier of fact could conclude Bryant entered into a

24   fiduciary relationship by agreement.

25        As set forth in detail in Bryant's Motion and his Opposition and

26   incorporated herein by reference, Bryant's Employee Agreement did not transform

27   his ordinary employee relationship into a fiduciary relationship. *See* Bryant's

28   Motion at 11, 13-17; Bryant's Opposition at 19-23. Mattel nowhere in its

3

414311.02

1  Opposition brings forth facts showing the hallmarks of an agreed upon fiduciary

2  relationship:  the *voluntary and knowing* acceptance of trust that creates a *legally*

3  *recognized* fiduciary relationship, placing the fiduciary in a superior position of

4  control over the dependent party.  *City Solutions, Inc. v. Clear Channel*

5  *Communications,* Inc., 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002);

6  *Worldvision Enterprises., Inc. v. Am. Broad. Companies*, 142 Cal. App. 3d 589,

7  595 (1983).

8       Notably, Mattel does not dispute that it must satisfy these elements to show

9  an agreed upon fiduciary relationship.  Nor does Mattel cite a single case in which

10  an employee such as Bryant was held to have entered into a fiduciary relationship

11  by agreement.  Instead, it claims that the cases cited by Bryant are *factually*

12  inapposite.  Mattel's Opposition at 53 n. 179.  Not so.  In *Enreach Technology*, the

13  chief software architect (a much higher level employee than Bryant) had signed a

14  confidentiality agreement with almost identical language to the Employee

15  Agreement at issue here, and the court denied the employer's motion for summary

16  judgment.  *Enreach Technology*, 403 F. Supp. 2d at 971.  Further, in *Rita Medical*,

17  the employee signed a confidentiality agreement requiring that he keep trade

18  secrets confidential, but it gave him no "special status"—just as the adhesive

19  Employee Agreement here gave Bryant no special status.  *Rita Medical Systems,*

20  *Inc. v. Resect Medical, Inc.*, No. C 05-03291 WHA, 2007 WL 161049, *6 (N.D.

21  Cal. Jan. 17, 2007).  The court in *Rita Medical* thus rejected an employer's attempt

22  to saddle an employee with an agreed-upon fiduciary relationship where the

23  contract did not explicitly state the employee was a fiduciary.

24       This is precisely what Mattel seeks to do here.  The only language Mattel

25  identifies in its offer letter to Bryant as in any way "mention[ing] a confidential or

26  fiduciary relationship" is the letter's statement that the offer "▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

28

414311.02

1  Mattel SGI ¶ 10.  Similarly, Mattel disputes the fact that "███████████

2  ████████████████████████████████████████████████████"—but

3  identifies no contract language actually stating that Bryant has a fiduciary duty.

4  Mattel SGI ¶ 14.  Rather, Mattel points only to language imposing duties of

5  *confidentiality* ████████████, and the contract's use (in describing those

6  duties of confidentiality) of the phrases "████████" and "████████

7  ████████".  *Id.*  Mattel thus claims that, by stating in an adhesive

8  agreement that an employee accepts a "████████," ████████ employees

9  including Bryant accepted not only a position of trust, but a *fiduciary relationship.*

10  But this is *precisely* the position courts have rejected—the mere reposing of

11  confidence and trust alone does not suffice to create a *fiduciary* relationship.  *See*

12  Bryant's Motion at 13-17.[2]

13       Similarly, Bryant's alleged access to confidential information is insufficient

14  to create an agreed-upon fiduciary relationship.  *See* Bryant's Opposition at 21-23

15  (incorporated herein by reference).  Courts, including the court in *Stevens v. Marco*

16  (relied upon by Mattel),[3] have repeatedly held that the entrusting of confidential

17  information is not sufficient to create a "confidential relationship" that gives rise to

18  fiduciary duties.  *Stevens v. Marco*, 147 Cal. App. 2d at 373-74; *see also City*

19  *Solutions,* 201 F. Supp. 2d at 1050 (confidentiality agreement between two parties

20  considering bidding on a public contract and sharing of confidential information

21  _____

22  [2] As discussed in Bryant's Opposition, *GAB Business* explicitly rejects the idea that a
    mere label creates a fiduciary relationship.  *GAB Business*, 83 Cal. App. 4th at 420

23  ("After all, a corporation cannot make a mail clerk its fiduciary by simply bestowing
    upon the clerk the title of officer.").

24  [3] *See* Bryant's discussion of *Stevens v. Marco,* 147 Cal. App. 2d 357 (1956), in Bryant's
    Opposition at 21-22.  The *Stevens* court specifically noted that "all the classic elements of

25  a confidential relation" were present:  (1) entrusting of a secret invention to a person with
    the ability to develop, patent and exploit it; (2) defendant's superior position, since he

26  was in charge of marketing, production and bookkeeping; and (3) a relationship akin to
    that of a trustee or joint venturer.  *Id.* at 373-74; *see also Michelson v. Hamada*, 29 Cal.

27  App. 4th 1566, 1581 (1994) (courts have not found confidential relationships in certain
    relationships such as employer-employee, landlord-tenant, insurer-insured, and other

28  contractual relationships).

414311.02

1   did not create a confidential relationship where the contract did not); *Rita Medical*,

2   2007 WL 161049 at *6  (employee had no fiduciary duty as a matter of law where

3   the employment contract required employee to keep trade secrets confidential but

4   did not clearly indicate he had a fiduciary duty).  Again, Mattel offers no facts

5   indicating that any exposure Bryant had to Mattel's confidential information

6   differed from that of any other employee ████████████████████████

7   ████████████████████████████████████████████████████.  If an

8   employee's mere access or exposure to confidential information needed to do his

9   job were sufficient to create a fiduciary relationship, then nearly every employee in

10  California would be a fiduciary—a result *GAB Business* and other courts have

11  already rejected.[4]

12         In short, Mattel has not even attempted to show that the additional "classic

13  elements of a confidential relation" are present.  Nor can it.  Mattel fails to set forth

14  facts to show that Bryant *knowingly* or *voluntarily* agreed to enter into a

15  "confidential relationship" with Mattel.[5]  Nor does Mattel point to any act creating

16  a legally recognized fiduciary relationship—such as a trustee or joint venturer.[6]

17  Mattel also fails to set forth evidence that Bryant was placed in a position of

18  control over Mattel's property or affairs.[7]  Indeed, the existence of the contract

19  [4]Mattel cannot raise a triable issue of fact as to the existence of a fiduciary relationship
20  between Bryant and Mattel.  However, in the event the Court disagrees with the legal
    doctrine requiring such a finding, certainly Bryant has raised a triable issue of fact to
    *defeat* Mattel's motion for summary judgment on this issue.

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████ at a minimum raise triable issues of fact as to the existence of
    any fiduciary duty.

24  [5] To the contrary, as set forth in Bryant's Motion, the undisputed facts show that Bryant
25  did not voluntarily assume any fiduciary duty to Mattel.

26  [6]  *See* Bryant's Motion at 15-16 discussing *Maglica v. Maglica*, 66 Cal. App. 4th 442,
    448 (1998); *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 30-33 (2003).

27  [7]  To the contrary, as discussed in Byrant's Motion at 6-7, ████████████████████
    ████████████.

28

[PUBLIC REDACTED] REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

414311.02

1  governing the relationship between Bryant and Mattel precludes a finding that the

2  parties entered into a separate "confidential relationship."[8]  For these reasons, the

3  Court should reject Mattel's overreaching attempt to assert a claim for breach of

4  fiduciary duty here, and grant summary judgment as to the entirety of Mattel's

5  claim for breach of fiduciary duty.[9]

6  **C.  Mattel has failed to create any genuine issue of material fact concerning the proper interpretation of the relevant portions of its adhesive Employee Agreement, and therefore no contract gives Mattel any ownership of Bratz.**

7

8

9  Bryant is entitled to summary judgment as to Mattel's claims of ownership

10  rights in Bratz, and to all portions of Mattel's various claims that depend on that

11  alleged ownership.[10]  Bryant is also entitled to summary judgment as to Mattel's

12  contractual or other claims to the extent that they rely on any alleged obligations

13  under Mattel's Conflict of Interest Questionnaire ("Questionnaire") or Proprietary

14  Information Checkout Form ("Checkout Form"), which are not valid contracts.  To

15  the extent Mattel now asserts violations of other alleged contractual duties under

16  the Employee Agreement, those contentions are not relevant to the contractual

17

18  [8]As a general rule, courts have found that no fiduciary duty exists "where other legal relationships clearly existed between parties which covered the transaction in suit and which were inconsistent with the existence of fiduciary duty." *Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 634 (2005) (internal quotation marks omitted); *see also City Solutions*, 201 F. Supp. 2d at 1049 (existence of confidentiality agreement precludes finding of breach of fiduciary duty not explicitly required by the agreement); *Wolf*, 107 Cal. App. 4th at 31 (reposing trust and confidence in the party to a contract does not create a fiduciary relationship but rather affords redress for breach of contract).

19

20

21

22  [9]Mattel argues in its Opposition that Bryant breached his alleged fiduciary duty. Mattel Opposition at 54.  Acknowledging that if Bryant had any fiduciary duty, the issue of breach would be one of fact, Bryant did not move for summary judgment on that basis. However, as set forth in Bryant's Opposition at 23-33 and incorporated herein by reference, Bryant will prove at trial that all his actions were preparations to compete and thus not in breach of any alleged fiduciary duty or duty of loyalty.  Bryant also notes that Mattel again misstates the standard for establishing a breach, claiming contrary to California Supreme Court authority that Bryant was required to disclose any preparations to compete.

23

24

25

26

27  [10] Those claims include (in whole or in part) Mattel's claims for Breach of Contract, Copyright Infringement, Breach of Fiduciary Duty, Conversion, Unjust Enrichment, Unfair Competition, and Declaratory Relief.  Bryant Motion at 2.

28

414311.02

issues presented in Bryant's Motion.  (Mattel's other contractual claims are also wrong on their merits, as set forth in Bryant's Opposition.  Bryant's Opposition at 16-17.)  As to the issues actually raised by Bryant's Motion, Mattel has failed to create any genuine issue of material fact concerning the proper interpretation of the relevant portions of its adhesive Employee Agreement.  At most, Mattel has shown only that the Employee Agreement is somewhat ambiguous—and thus must be read narrowly against Mattel (its drafter), and in favor of Bryant, to exclude his Bratz idea and sketches.  Mattel has also failed to offer any evidence or persuasive argument to dispute that (1) the Employee Agreement is a contract of adhesion, which must be interpreted narrowly in Bryant's favor, or (2) the Agreement fails to satisfy 17 U.S.C. § 204(a)'s requirements that any transfer of copyright ownership must be recorded in an clear, explicit, negotiated written instrument.

### 1.   California law mandates Bryant's interpretation of the Employee Agreement, which is a contract of adhesion.

The Employee Agreement was a contract of adhesion: as Mattel admits in almost so many words, ███████████████████████████████████████████ ██████████████████████████████████████████. SGI ¶ 6.  That take-it-or-leave-it choice is the essence of an adhesive contract, which California courts have defined as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates the subscribing party only the opportunity to adhere to the contract or reject it."  *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981) (quoting *Neal v. State Farm Ins. Co.*, 188 Cal. App. 2d 690, 694 (1961)); Bryant's Motion at 19-20.  Bryant does not need to prove that a Mattel pressgang coerced him to sign and enter its employment to establish that this is a contract of adhesion; he only need show that signing the Agreement in the form presented was required for him to work at Mattel.

414311.02

1    And Mattel has no evidence to the contrary.  As Mattel itself states in its

2  statement of genuine issues, "

4  " SGI

5  ¶ 6.  Mattel offers no evidence that Bryant had any other options, and makes no

6  attempt to deny that (as his new employer) Mattel had vastly superior bargaining

7  power.  Mattel does not dispute (or else provides no evidence supporting its

8  claimed dispute) that

9  (SGI ¶ 5), that

10  (SGI ¶ 7), which

11  (SGI ¶ 8)—and that

12  (SGI ¶ 18).

13  Nor can Mattel genuinely dispute that

14  (SGI ¶ 12),

15  (SGI ¶ 13),

16  . SGI ¶ 11[11].

17  Indeed, Mattel offers no evidence that

20  . SGI ¶¶ 18, 20.

23  . SGI ¶ 20.)  Mattel also offers no actual evidence that the Agreement

25  [11] Mattel "disputes" this last fact with evidence that in fact confirms it: recognizing that it
26  was a mandatory, form document, Bryant did not try to negotiate or customize it; and the
   only two people Mattel can identify as having modified the agreement in any way are
27  both high-level executives who did not negotiate any changes to the printed terms of the
   agreement, but only negotiated carve-outs for pre-existing products or companies.  SGI
28  ¶ 11.

9

414311.02

██████████████████████████████████. *See* SGI ¶¶ 17, 20-22.  In keeping with this take-it-or-leave-it treatment of the Agreement, Mattel admits that ████ ████████████████████████████████████████ SGI ¶ 24.[12]

### 2. The Agreement is ambiguous and must be interpreted narrowly against Mattel, its drafter.

Mattel disregards California law requiring that ambiguous contracts like the Employee Agreement must be interpreted in light of all the surrounding circumstances and read narrowly against their drafters, especially when ████████ drafted by one party's lawyers.  *See* Bryant Motion at 18-20.  At heart, Mattel's efforts to argue that the Agreement is not ambiguous are at most arguments that the contested terms could *also* mean what Mattel wants them to—not that Mattel's desired meaning is the only possible reasonable meaning, as required for the Agreement to be truly unambiguous.

### a. Intrinsic evidence permits—and supports—Bryant's interpretation of the Agreement's ambiguous terms.

First, as stated in Bryant's Motion and Bryant's Opposition, the Agreement term assigning to Mattel "██████████████████████████████████████████████████████████████" is, on its face, ambiguous.  In interpreting language in a contract, the Court's function is not to search out the broadest possible meaning of a term, but "to glean the meaning of the words *from the context and usage of the words in the contract itself*."  *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1069 (2005) (emphasis in original); Bryant's Motion at 22-25.  For all the reasons stated in Bryant's Motion, the term "invention" in the context of the Agreement invokes not a free-wheeling, careless

---

[12] Based on this undisputed evidence, even if the Court were to deny Bryant's motion for summary adjudication as to the meaning of the term "inventions," the Court would need to instruct the jury that the Employee Agreement is a contract of adhesion and thus any ambiguities must be interpreted strongly in Bryant's favor.

10

[PUBLIC REDACTED] REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

414311.02

1  layman's definition, but one informed by the technical field of patent law, with its

2  associated technical terms of "█████████" and "█████████████" and

3  technical defining terms such as "█████████," "█████████," and "███████,"[13]

4  *See* Bryant's Motion at 21-25; Bryant's Opposition at 7-14 & n.9. Mattel entirely

5  fails to address the Agreement's "████████████████████████" language, or

6  the technical bent of the terms used to define "inventions."[14]

7     Even outside of that technically-oriented context, the average layman would

8  not call an idea or sketch of a doll character an "invention," however broadly a

9  dictionary definition might be stretched.  (Mattel does not challenge the notion that

10  in the common understanding, Edison and Bell are "inventors," and the artist

11  Michelangelo is not.  *See* Bryant's Motion at 33.)  Even if the term "invention"—

12  used in conjunction with patent-oriented terms of art, and defying the common-

13  sense understanding—could also refer to a doll character or sketch, that meaning is

14  not the only meaning to which the term is reasonably susceptible.[15]  Thus, it is not

---

15  [13] As explained in Bryant's Motion, the term "█████" in the context of the Agreement
16  takes on a narrower, technical meaning in keeping with the other technical terms included
    in the Agreement's definition of "inventions."  Bryant's Motion at 23.

17  [14]  Mattel persists in avoiding any discussion of the patent terms of art "█████████" and
18  "██████████████" in part because these terms reinforce the patent-oriented meaning
    of the term "inventions."  In addition, however, Mattel fails to acknowledge that the
19  Employee Agreement gives it rights only to ███████████████████████████████
    ████████████████████████  Thus, even under Mattel's
20  definition of inventions (and without considering the factual disputes not raised by
    Bryant's Motion), Mattel would not necessarily own anything created by Bryant.  As
21  Bryant will show at trial if necessary, under any definition of "inventions," the Bratz idea
    and sketches were not "█████████" or "████████████" during his employment at
22  Mattel.

23  [15] To illustrate the point: Mattel makes much of two passing uses of the term "invention"
    in cases discussing the purpose of copyright protection.  Mattel's Opposition at 14.
24  However, even Mattel's archaic sources illustrate at most a dual meaning for the term
    "invention" as describing either patent-type works or some broader scope.  *Compare*
25  *Eldred v. Ashcroft*, 537 U.S. 186, 247 (2003) (Breyer, J. dissenting) (Mattel's reference,
    to a quote from 1909 legislative history) *with id.* at 246 (the preceding paragraph,
26  containing one of many references in Justice Breyer's dissent—let alone the Court's
    decision—distinguishing the Constitution's protections for, respectively "the authors of
27  Books, and of useful inventions").  More importantly, they do not alter the terms of art
    commonly used to discuss copyright (author, work, etc.) and patents (inventor,
28  inventions, etc.), as discussed in Bryant's Motion and Opposition, or the reasonable
    expectations of someone reading the Employee Agreement in 1999.  Bryant's Motion at

11

414311.02

1    the proper meaning here.

2       **b.    The extrinsic evidence also supports Bryant's**
         **interpretation, not Mattel's, and Bryant's interpretation**
3        **does not render the Agreement "pointless."**

4        Nor can Mattel show that even Mattel (let alone Bryant) understood the

5    Agreement to have the sweeping meaning the company now claims: the extrinsic

6    evidence, too, supports Bryant's interpretation.  As set forth in Bryant's Motion,

7    and not substantially disputed by Mattel, Mattel's own actions surrounding the

8    Agreement reveal that it did not view the contract so broadly as it now claims.

9    Bryant's Motion at 25-27.  In addition to Mattel's failure to ████████████████

10   ███████████████████████████ (SGI ¶¶ 23-26), Mattel failed to ██████

11   ███████████████████████ (SGI ¶¶ 37-42). ████████████████████████████

12   ██████████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████████

16   ████████████ Contrary to Mattel's bald assertions (Mattel Opp. at 16), that failure

17   ████████ is not irrelevant, but a key illustration of how Mattel actually viewed the

18   Agreement before this litigation began.  *See S. Pac. Transp. Co. v. Santa Fe Pac.*

19   *Pipelines, Inc.*, 74 Cal. App. 1232, 1242 (1999) (providing that parties' course of

20   conduct after entering into contract, but before any dispute arose, is relevant to

21   interpreting the contract's terms).  Likewise, Mattel's ████████████████████

22   ██████████████████████████████████████████████████████████████

23   ████████████████████████ is highly relevant to show Mattel's true understanding of

24   the Agreement Bryant signed.[16]  *See id.*; *Montrose Chem. Corp. v. Admiral Ins.*

25

26   24-25; Bryant's Opposition at 10.

27   [16] So, too, is the Checkout Form through which Mattel deceptively sought to re-
     characterize and broaden the terms of Bryant's actual Employee Agreement.  *See* Bryant
28   Motion 38-39.

414311.02

1   *Co.*, 10 Cal. 4th 645, 670 (1995) (drafting history of standardized form policy was

2   relevant to interpreting meaning of contract); *People v. Shelton*, 37 Cal. 4th 759,

3   767 (2006) ("subsequent conduct of the parties" relevant to contract

4   interpretation); *City of Oakland v. Harding ESE, Inc.*, No. C 03-3534 CW, 2004

5   WL 2646654, at *4 (N.D. Cal. Nov. 17, 2004) ("The Court may consider

6   subsequent conduct of the parties to determine their contractual intent."); Bryant's

7   Motion at 18-19; SGI ¶¶ 48-49.

8           Mattel's only authority to the contrary is a footnote in a district court case

9   from Ohio that had nothing to do with California law (and in fact was only

10  peripherally related to contract interpretation at all).  *See* Mattel's Opposition at

11  16-17 (citing *Gamery v. Greif Bd. Corp.*, 949 F. Supp. 523, 526 (N.D. Ohio

12  1996)).  That out-of-state and irrelevant footnote cannot trump the clear principles

13  of California law set forth in Bryant's Motion and other papers.  Mattel also fails to

14  offer any substantial evidence—again, because it has none—that Bryant had

15  Mattel's claimed understanding of "inventing" in 1999 when he signed the

16  Employee Agreement, or that a reasonable employee in Bryant's position would

17  understand the Agreement in this way.  *See* Bryant's Opposition at 8.  Where

18  everything about the Employee Agreement and the circumstances at the time of its

19  execution indicates that all reasonable parties would understand it to have a far

20  narrower meaning (the meaning that Mattel's subsequent actions reflect), that

21  narrower meaning must prevail.  Cal. Civ. Code § 1636 (providing contracts "must

22  be so interpreted as to give effect to the mutual intention of the parties as it existed

23  at the time of contracting").

24          Further, Mattel mistakenly attempts to rely on California Labor Code §

25  2870's reference to "inventions" to bolster its assertion that "inventions" includes

26  copyrightable material such as sketches of a doll.  Mattel's Opposition at 14.

27  However, as set forth in Bryant's Opposition at 8-11, Labor Code § 2870 is a

28

13

414311.02

1  statute that only applies to patentable inventions—thus demonstrating that the

2  Employee Agreement was never intended to encompass copyright in works such as

3  the Bratz idea and sketches.[17]  *See* Bryant's Opposition at 8-13.

4  Moreover, despite Mattel's glib claims to the contrary, Bryant's

5  interpretation of the Agreement does not render it "pointless."  *See* Mattel's

6  Opposition at 17.  The Employee Agreement addresses many aspects of Bryant's

7  and other employees' work at Mattel, not merely ownership of "inventions."  The

8  agreement also addresses, for example, ███████████████████████████

9  ████████████████████████████████████████████████████████████

10  ████████████████████████████  Anderson Decl. Ex. 8 ¶ 1.

11  Moreover, Mattel claims to have a broad-based toy business (*see* Mattel SUF ¶ 1),

12  and its products include toys with mechanical and technical aspects potentially

13  subject to patent protection, or at least falling within the layman's understanding of

14  "inventions" (which, of course, is not strictly limited to lightbulbs and robots).  *See*

15  Supp. Anderson Decl. Ex. 4 at 63:3-64:4; *id.* Ex. 17 at 37:15-38:6; *id.* Ex. 18.  The

16  narrower "inventions" provision that Bryant asks the Court to apply here (the one

17  Mattel actually drafted, as opposed to the one it now would like to have) would

---

18  [17] Bryant's interpretation does not render the Agreement's exception based on Labor

19  Code § 2870 "unnecessary."  As explained in Bryant's Motion, the Agreement's assignment of inventions "does not include projects that Bryant came up with on his own

20  time, and not during the performance of his duties."  Bryant Motion at 28:20-21.  (Bryant assumes that Mattel's extensive mis-quotation of this argument is a slip of the pen, and

21  not a blatant effort to mislead the Court. *See* Mattel Opposition at 13:20 (n. 82).)  Thus, the Agreement is somewhat more generous to employees than § 2870 requires: it reserves

22  to employees a broader range of inventions developed on the employees' own time than the bare minimum protected under § 2870.

23  This expanded protection of off-duty inventions does not render the Agreement's § 2870

24  exception meaningless, however.  The § 2870 exception could still apply to protect an invention that would otherwise fall within the Agreement's scope (such as, for example,

25  an invention "████████" while on duty at Mattel), if the invention was nonetheless *developed* using only an employees' own time and resources, and did not result from the

26  employee's work or relate to the employer's actual anticipated business. *See* Cal. Labor Code § 2870; Bryant Opposition at 8-13 (discussing § 2870).  In addition, of course, as

27  explained at length elsewhere, not every creative work is an "invention"—and Mattel offers no real support or analysis for its claim that the Agreement encompasses anything

28  and everything that § 2870 does not expressly protect.

---

14

1    still have significant value to Mattel in protecting such toys or features of toys.

2    The contract was not drafted purely

3

4                                        In fact, Mattel's own interpretation would (by

5    Mattel's measure) still render the Agreement "pointless" for

6

7                          . Thus, given

8

9              , Mattel              should bear the burden of its poor drafting—

10   including the weight of one-size-fits-all terms forced upon its employees. *Graham*,

11   28 Cal. 3d at 819-20 & n.16; *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365

12   (1997); Cal. Civ. Code §§ 1647-1649, 1654.

13        **3.    Mattel attempts to avoid California law's special rules for
                  interpreting contracts of adhesion.**
14

15        Mattel makes no substantial effort to dispute that the Employee Agreement

16   must be interpreted in Bryant's favor (to exclude his Bratz idea and creative work)

17   if it is found to be a contract of adhesion.  Nor could it.  To the contrary, Mattel

18   struggles vainly to maintain that the Agreement is not adhesive—despite the

19   undoubtedly sticky evidence against it—precisely because the adhesive nature of

20   the Agreement affects the legal analysis and requires interpretation in Bryant's

21   favor.

22        As shown above and in Bryant's Motion, a reasonable employee in Bryant's

23   position would not understand the terms of the Employee Agreement—a

24

25                                        —to give Mattel unlimited rights to all of his or her

26   creative ideas, even off the job and unrelated to work for the company.  Thus, as

27   explained in Bryant's Motion, the adhesive Agreement cannot be interpreted to

28

15

414311.02

1    give Mattel such expansive rights, even if the language of the contract would

2    otherwise support that interpretation.  *See Graham*, 28 Cal. 3d at 820; Bryant's

3    Motion at 19-20, 31-33.

4         Such an expansive interpretation would also be substantively

5    unconscionable, because it would both make the Agreement an unfairly

6    oppressive, one-sided bargain for Mattel's employees and conflict with the federal

7    public policy of ensuring predictability of copyright ownership by avoiding

8    inadvertent transfers.  *See* Bryant's Motion at 33-34; Bryant's Opposition at 14-15.

9    Mattel mistakes Bryant's unconscionability argument here.  That argument

10   involves not an attempt to revive Bryant's affirmative unconscionability defense

11   and prevent *enforcement* of the contract, but an aspect of ordinary California

12   contract interpretation that prevents Mattel's adhesive contract from *meaning* what

13   Mattel claims.  Bryant does not contend that the Agreement is unenforceable

14   because that result would be unconscionable (an affirmative defense that Bryant

15   has withdrawn); rather, Bryant contends that the Agreement does not mean what

16   Mattel claims, because that interpretation would be unconscionable and violate

17   California's principles of interpretation for contracts of adhesion.  *See* Bryant's

18   Motion at 33-34; Bryant's Opposition at 14-15.

19        Accordingly, the Agreement must receive a narrower interpretation

20   consistent with both public policy and the expectations of a reasonable employee

21   signing it.

22   **4.    Mattel also offers no argument that the Employee Agreement**
     **satisfies 17 U.S.C. § 204(a)'s requirements for a valid transfer of**
23   **copyright ownership.**

24        Mattel also entirely fails to respond to Bryant's argument that the Employee

25   Agreement is inadequate to transfer copyright ownership because it does not

26   satisfy the requirements of 17 U.S.C. § 204(a).  Nor could it do so.  As set forth in

27   Bryant's motion, and as conceded by Mattel in its statement of issues, the

28

16

414311.02

1  Employee Agreement " ███████████████████████████
2  ███████████."  SGI ¶ 16 (other than helpfully adding the word " ██████████,"
3  Mattel's purported dispute of this fact is illusory, and Mattel offers no real contrary
4  evidence).  Mattel also offers no evidence that the Agreement was a clear, explicit,
5  negotiated transfer of any copyright interest in Bratz, as it must be to satisfy
6  Section 204(a).  *See* Bryant's Motion 34-36.  Thus, in addition to the other defects
7  in Mattel's contract claims set forth above and in Bryant's Motion, Mattel's claims
8  to ownership over any copyright in Bratz also fail for lack of a transfer instrument
9  satisfying Section 204(a).[18]

10       **5.       Mattel's Questionnaire is not a binding contract.**

11       Mattel concedes that the Questionnaire gives it no rights to Bratz.[19]  Mattel's
12  Opposition at 20 n. 107.  However, Mattel also fails to refute Bryant's argument
13  that the Questionnaire is not a contract at all, and can give Mattel no rights of any
14  kind.  The Employee Agreement does include an agreement that Bryant " ██████
15  ██████████████████████████████████████████████████ " but it
16  ██████████████████████████████████████████████████████████
17  ██████████████████████████ Anderson Decl. Ex. 8 ¶ 3(a).  The Agreement
18  thus gives a signing employee no reason to believe that the Questionnaire is a
19  binding part of any contract with Mattel.
20       In addition, the fact that the Agreement expressly addresses ██████████
21  ██████████████ only further confirms that treating the Questionnaire as an

---

23  [18] Indeed, Mattel's failure to satisfy Section 204(a) further supports Bryant's broader
     contract interpretation arguments discussed above.  As noted in Bryant's Opposition, the
24  Court should avoid any interpretation of the Employee Agreement and Labor Code §
     2870 that would conflict with federal copyright law.  *See* Bryant's Opposition at 10 &
25  n.7.

26  [19] Mattel also does not argue that the Checkout Form is a contract giving it any rights to
     Bratz, or identify any other contract besides the Employee Agreement that allegedly
27  gives it rights to Bratz.  Mattel similarly does not dispute Bryant's analysis showing that
     Bratz is not Mattel's "Proprietary Information" under the Employee Agreement.  *See*
28  Bryant's Motion at 29-31.

414311.02

1   independently binding contract would violate the Agreement's integration clause.

2   That clause provides that the Agreement "███████████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████," Anderson Decl. Ex. 8 ¶ 4(g); the

5   Agreement also provides that it "███████████████████████████████████████

6   ██████████████████." *Id.* ¶ 4(a).  The Agreement's reference to

7   ███████████████████████████ confirms that the "████████████████"

8   includes ████████████████████, so that the Agreement "███████████████

9   █████████████████████" on that subject.  Mattel claims that the

10  Questionnaire "simply effectuates the referenced ████████████████" but

11  offers no evidence that the ████ actually referenced contains the supposed

12  requirements which Mattel now seeks to "effectuate" through the Questionnaire.

13       The Agreement's own limiting terms, combined with the misleading label of

14  "Questionnaire," would indicate to any reasonable employee that the

15  "Questionnaire" was simply a questionnaire, and not a separate, binding contract.

16  Because the *mutual* intent of the parties—not Mattel's unilateral "intent to create

17  binding obligations" for its dependent employees (Mattel's Motion at 20:8-9)—

18  determines the existence and scope of contractual obligations under California law,

19  the Questionnaire is not a contract and does not bind Bryant.  *See Shelton*, 37 Cal.

20  4th at 767 (describing manifestations of "the parties' intent" used to determine

21  "[t]he mutual intention to which the courts give effect").

22  **D.    Mattel has not opposed Bryant's motion for summary judgment as to Mattel's unjust enrichment claim.**

23

24       Mattel fails to present any argument opposing summary judgment in

25  Bryant's favor on Mattel's unjust enrichment claim.  For all the reasons set forth in

26  Bryant's Motion, and implicitly conceded by Mattel, Bryant is entitled to summary

27  judgment on Mattel's unjust enrichment claim.

28

---

18

414311.02

**E.    Bryant joins in MGA's Reply to the same extent Bryant joined in MGA's Motion.**

Bryant will not repeat here MGA's reply arguments in support of MGA's motion for partial summary judgment, which Bryant joined in part as stated in Bryant's Motion.  Rather, Bryant joins and incorporates by reference MGA's Reply to the same extent that Bryant joined in MGA's motion.  For all the reasons stated in Bryant's Motion and the portions of MGA's motion papers in which Bryant joins, summary judgment is also proper in Bryant's favor on Mattel's claims of unfair competition and conversion, and on Bryant's statute of limitations defense.  Mattel has failed to identify any genuine issue of material fact on any of these remaining issues raised by Bryant's Motion.  Bryant also notes, in addition, that Mattel's unfair competition arguments focus exclusively on MGA's alleged acts (which MGA, like Bryant, will disprove at trial); Mattel apparently concedes that it does not assert its unfair competition claim against Bryant himself.

**III.    Conclusion**

For all the reasons set forth above, and in Bryant's Motion, Opposition, and other summary judgment papers, including those portions of MGA's summary judgment submissions incorporated by reference, Bryant respectfully requests that the Court grant his motion for partial summary judgment in its entirety.


Dated:  April 1, 2008

Respectfully submitted,
KEKER & VAN NEST, LLP


By:  /s/ Christa M. Anderson
CHRISTA M. ANDERSON
Attorneys for Plaintiff
CARTER BRYANT

414311.02