# Exhibit "VNA-1"

## Curriculum Vitae

## (List of publications)

EXHIBIT ___B___

PAGE ___35___

# VALERY N. AGINSKY, Ph.D.

## Curriculum Vitae

**Position:** *Forensic Chemist / Document Dating Specialist*
Riley, Welch & Aginsky Forensic Document Examinations, Inc.
Lansing, Michigan

**Education:** *Ph.D. Analytical Chemistry - 1980*
Military Academy of Chemical Defense (formerly known as the Chemical Faculty of the Institute of Mechanical Engineering prior to 1940), Moscow, USSR

*M.S. Analytical Chemistry - 1977*
Military Academy of Chemical Defense, Moscow, USSR

**Professional Experience:** Riley, Welch & Associates Forensic Document Examinations, Inc.,
Lansing, Michigan
*Forensic Chemist* (1998 to April 2005)

Riley, Welch & Aginsky Forensic Document Examinations, Inc.,
Lansing, Michigan
*Forensic Chemist* (April 2005 to present)

Responsible for chemical analysis of ink on documents (ink comparison and dating). Uses ink dating methods developed as a result of many years of research of the methodology developed and published by Dr. Antonio Cantu. These methods measure certain parameters of ink that decrease as ink ages on paper. They analyze *ink volatile components* (their residues are always present in ink lines, no matter the ink age) and enable *absolute* ink age determination: one determines a time frame within which a questioned entry has been written, not relative to other known dated entries, as *relative* ink age determination technology requires.

Forensic Science Center of the Ministry of the Interior, Moscow, Russia
*Senior Research Chemist* (1980 to 2000)

EXHIBIT ___B___

PAGE ___36___

*Aginsky CV*
*Page 2 of 6*

Involved in methods development, technical assistance to investigative personnel, including training and presentations to legal proceedings and routine examination of evidence. Developed several techniques for examining questioned documents, drugs of abuse, explosives and gunshot residues.

About ten years of professional research and practical experience as a questioned document examiner: the dating of writing, stamp pad and printing inks, alteration of records, indented writings, erasures/eradications/obliterations, sequence of strokes, paper/ink/toners, computer printers and documents generated, counterfeit currency, currency exposed to an exploding dye-pack.

*Methods:* microscopy, microspectrophotometry, electrostatic imaging analysis, video enhancement techniques, infrared spectroscopy, ultraviolet/visual spectrophotometry, thin-layer chromatography, and gas chromatography-mass spectrometry.

**Honors/Awards:**   *Diploma and the First Prize for new techniques on Dating Inks*
Ministry of the Interior, 1993

*Award for excellence in service (Best Forensic Chemist)*
Ministry of the Interior, 1982

*Silver medal in chemistry at the 1976 All-Union Contest of Scientific Works,*
Ministry of Defense

*Co-Chair of the Questioned Documents Sections at the First International Forensic Science Symposium, Moscow, Russia, 1994, the 13th and 14th Meetings of the International Association of Forensic Sciences, Dusseldorf, Germany, 1993, and Tokyo, Japan, 1996.*

**Teaching Experience:**   Conducted numerous training seminars for the personnel of forensic laboratories in Russia and the former Soviet Union in the framework of the Ministry of the Interior's training programs:

*Technical and Chemical Examination of Counterfeit Currency*
*Detecting and Dating Alterations Made to Documents*
*Ink/Paper Comparison by Thin-Layer Chromatography and Other Analytical Methods*
*Detection and Characterization of Explosive Residues*

EXHIBIT _____ B

PAGE _____ 87

*Aginsky CV*
*Page 3 of 6*

Served as visiting examiner to the Division of Identification and Forensic Science, Israel Police Headquarters, 1996 & 1997.

Conducted seminars on ink analysis and dating for the Division of Identification and Forensic Science, Israel Police Headquarters, Jerusalem, Israel, 1995; Ministry of Justice and Ministry of the Interior Combined Scientific Council for Forensic Science and Criminalistics, Moscow, Russia, 1997; the Forensic Sciences Division of the Canada Customs and Revenue Agency, Ottawa, Canada, 1998; Istanbul University, Institute of Forensic Sciences, Istanbul, Turkey 2000.

Conducted a seminar on Quantitative Thin-Layer Chromatography (Internal Standard Method) at the Russian-German Summer School on Thin-Layer Chromatography, Moscow, Russia, 1993.

**Court Testimony:** Testified regarding ink analysis and ink and document dating in criminal and civil matters and in arbitrations.

**Professional Affiliations:**

International Association for Identification, Questioned Documents Section (1992 - present)

International Association of Forensic Sciences, Questioned Documents Section (1993 - present)

Ministry of Justice and Ministry of the Interior Combined Scientific Council for Forensic Science and Criminalistics (Russia, 1995-1999)

Regional Representative for the Russian Charted Division of the International Association for Identification (1998 - 2000)

American Society for Testing & Materials (2003 - present)

EXHIBIT _____ B

PAGE _____ 38

## Professional Publications

### Books

1. Document Analysis / Analytical Methods. *Encyclopedia of Forensic Sciences*, J.A. Siegel (Ed.), Academic Press, Harcourt Publishers Ltd., 2000.

2. Writing Media and Documents. Chapter 19. *Handbook of Analytical Separations*. Vol. 2 – Forensic Science, M.J. Bogucz (Ed.), ELSEVIER, Amsterdam – New York – Oxford – Shannon – Singapore – Tokyo, 2000.

3. Writing Media and Documents. Chapter 28. *Handbook of Analytical Separations (2nd Edition)*. Vol. II – Forensic Science (publication pending).

4. An Application of Chromatographic Methods for Dating Questioned Documents. *Chromatography (Celebrating the 125th Birthday of the Inventor of Chromatography, Dr. Michael Tswett)*, O. Kaiser, R.E. Kaiser, H. Gunz, and W. Gunther (Eds.), InCOM, Duesseldorf, Germany, 1997.

5. A New Version of the Internal Standard Method in Quantitative Thin-Layer Chromatography. Chapter 4.6. *Handbook of Modern Thin-Layer Chromatography*, O.G. Larionov (Ed.), Russian Academy of Science, Chromatography Council, Moscow, Russia, 1994 (in Russian).

6. Aginsky, V.N. and Dildin, Yr. M., *Forensic Examination of Explosives*, VNII MVD SSSR, Moscow, USSR, 1982 (in Russian).

7. Aginsky, V.N., Safronenko, T.I., and Sorokina, G.I., *Forensic Examination of Questioned Documents*, VNII MVD SSSR, Moscow, USSR, 1987 (in Russian).

8. Aginsky, V.N., Safronenko, T.I., and Sorokina, G.I., *Detecting and Dating Alterations Made to Documents*, VNII MVD SSSR, Moscow, USSR, 1989 (in Russian).

9. Aginsky, V.N., Zibrov, G.S., and Sorokina, G.I., *Analysis of Drugs, Inks, Petroleum Products, and Explosives by Reversed Phase Thin-Layer Chromatography*, Forensic Science Center of the Russia's Ministry of the Interior, Moscow, 1993 (in Russian).

## Peer-Reviewed Articles and Presentations at Scientific Conferences

10. A New Application of Instrumental Planar Chromatography in Forensic Analysis, *Journal of Planar Chromatography*, Vol. 4, 1991, pp. 167-169.

11. Some New Ideas for Dating Ballpoint Inks – A Feasibility Study, *Journal of Forensic Sciences*, 1993, No. 5.

12. Comparative Examination of Inks by Using Instrumental Thin-Layer Chromatography and Microspectrophotometry, *Journal of Forensic Sciences*, Vol. 38, No. 5, Sept. 1993, pp. 1111-1130.

13. Forensic Examination of "Slightly Soluble" Inks Pigments Using Thin-Layer Chromatography, *Journal of Forensic Sciences*, Vol. 38, No. 5, Sept. 1993, pp. 1131-1133.

EXHIBIT _____ B

PAGE _____ 39

14. Mechanism and Kinetics of the Aging of Some Ink Dyes. *Advances in Forensic Sciences*, Vol. 3 - Forensic Criminalistics, Proceedings of the 13th Meeting of the International Association of Forensic Sciences, Dusseldorf 1993, B. Jacob and W. Bonte, Eds., Verlag Dr. Koster, Berlin, 1995.

15. Discrimination between Naturally and Artificially Aged Ballpoint Inks, ibid.

16. Determination of the Age of Ballpoint Pen Ink by Gas and Densitometric Thin-Layer Chromatography, *J. Chromatography*, 1994, Vol. 678.

17. A New Version of the Internal Standard Method in Quantitative Thin-Layer Chromatography, *Journal of Planar Chromatography*, July/August 1994, Vol. 7, pp. 309-314.

18. A Microspectrophotometric Method for Dating Ballpoint Inks - A Feasibility Study, *Journal of Forensic Sciences*, Vol. 40, No. 3, May 1995, pp. 475-478.

19. Dating and Characterizing Writing, Stamp Pad and Jet Printer Inks by Gas Chromatography/Mass Spectrometry, *International J. Forensic Document Examiners*, 1996, No. 2, pp. 103-115.

20. Accelerated Aging – Its Use in Methods for Dating Ink (Letter to the Editor), *International J. Forensic Document Examiners*, 1996, No. 3.

21. Ink Dating – The State of the Art in 1996, Proceedings of the 14th Meeting of the International Association of Forensic Sciences, Tokyo 1996, Shunderson Communications, 1997, Vol. 4.

22. Current Methods for Dating Inks – Which is the Best? Presented at the 49th Annual Meeting of the American Academy of Forensic Sciences, New York, NY, 1997.

23. Dating Ink on Questioned Documents – The State of the Art in 1997, presented at the First European Meeting of Forensic Science, Lausanne, Switzerland, 1997.

24. Measuring Ink Extractability as a Function of Age – Why the Relative Aging Approach is Unreliable and why it is More Correct to Measure Ink Volatile Components than Dyes, *International J. Forensic Document Examiners*, 1998, No. 3.

25. Ink Dating – The State of the Art, presented at the 50th Annual Meeting of the American Academy of Forensic Sciences, San Francisco, CA, 1998.

26. Ink Dating – The State of the Art, presented at the First Regional Symposium on Criminalistics, April 20-22, 2000, Istanbul University, Institute of Forensic Sciences, Turkey.

27. Determining the Sequence of Non-Intersecting Media on Documents: Ballpoint Pen Ink and Laser Toner Entries, *Journal of the American Society of Questioned Document Examiners*, 2002.

28. Current Methods for Dating Ink on Documents, presented at the 60th Annual Conference of the American Society of Questioned Document Examiners, San Diego, California, August 14-19, 2002, and at the Midwestern Association of Forensic Scientists Fall 2002 Meeting, Milwaukee, Wisconsin, September 15-20, 2002.

29. Using TLC and GC-MS to Determine whether Inks Came from the Same Manufacturing

Batch, presented at the 63rd Annual Conference of the American Society of Questioned Document Examiners, Montreal, Canada, August 11-16, 2005.

30. Using TLC and GC-MS to Determine whether Inks Came from the Same Manufacturing Batch, *Journal of the American Society of Questioned Document Examiners*, Vol. 9, No. 1, 2006, pp. 19-27.

31. Current Methods for Dating Ink on Documents, presented at the 65th Annual Conference of the American Society of Questioned Document Examiners, Boulder, Colorado, August 11-16, 2007.

## Other Professional Publications

32. Aginsky, V.N. and Sorokina, G.I., "Detecting Explosives in Post Explosion Debris Contaminated by Petroleum Products", *Expertnaya Praktika [Expert Practice]*, Vol. 19, 1982, pp. 73-75 (in Russian).

33. Aginsky, V.N. and Sorokina, G.I., "Detection of Explosive Residues Intruded into Asphalt", *Expertnaya Praktika [Expert Practice]*, Vol. 20, 1983, pp. 109, 110 (in Russian).

34. Aginsky, V.N. and Sorokina, G.I., *Detection and Quantitative Determination of Clonidine and Other Psychotropic Drugs in Beverages*, VNII MVD SSSR, Moscow, USSR, 1990 (in Russian).

35. Aginsky, V.N., "A New Application of Instrumental Planar Chromatography in Forensic Analysis," presented at the 6th International Symposium on Instrumental Planar Chromatography, Interlaken, Switzerland, April 23-26, 1991.

36. Aginsky, V.N., Sorokina, G.I., and Zibrov, G.S., "Detection, Identification and Comparative Examination of Narcotics and Drugs of Abuse," Proceedings of the Forensic Science Symposium, Linkoping, June 1992, Report 27, National Laboratory of Forensic Science, Linkoping, Sweden, 1993.

37. Aginsky, V.N., Savilov, A.P., and Sorokina, G.I., "Chromatographic Screening of Drugs of Abuse," Proceedings of the Forensic Science Symposium, Moscow, March 1994, Forensic Science Center of the Ministry of the Interior, Moscow, Russia, 1994.

38. Aginsky, V.N., "Increasing the Reliability of the Identification of Separated Substances in Densitometric Thin-Layer Chromatography", *Advances in Forensic Sciences*, Vol. 3 - Forensic Criminalistics, Proceedings of the 13th Meeting of the International Association of Forensic Sciences, Dusseldorf 1993, B. Jacob and W. Bonte, Eds., Verlag Dr. Koster, Berlin, 1995.

39. Aginsky, V.N., "A New Approach in Determining the Age of Inks Using Densitometric Thin-Layer Chromatography," ibid.

40. Aginsky, V.N., "Instrumental Techniques for Comparing Similarly Colored Inks," ibid.

41. Aginsky, V.N., Lesnikov, V.A. and Sorokina, G.I., "Time of Shooting - Feasibility of Discriminating "Fresh" and "Old" Organic Gunshot Residues," Proceedings of the 14th Meeting of the International Association of Forensic Sciences, Tokyo 1996, Shunderson Communications, 1997, Vol. 4.

42. Aginsky, V.N., "Application of GC/MS in Some Areas of Forensic Analysis," presented at the Hewlett-Packard Analytical Forum, Moscow, Russia, April 1998.

43. Aginsky, V.N., "Determining the Sequence of Non-Intersecting Media on Documents – Ballpoint pen ink and laser toner entries," presented at the 49th Annual Conference of the American Society of Questioned Document Examiners, Des Moines, Iowa, August 2001.

EXHIBIT ___B___

PAGE ___41___

# Exhibit "VNA-2"

## Court Cases and Depositions

EXHIBIT _____ B

PAGE _____ 42

**Valery N. Aginsky, Ph.D.**                                                                    - 1 -

## COURT CASES AND DEPOSITIONS

| Date | Location | Type of Proceeding | Case |
|------|----------|--------------------|------|
| 10-22-01 through 10-31-01 | Hong Kong | Trial | Wang Din Shin vs Nina Kung alias Nina T.H. Wang<br>High Court, Case No. HCAP8/1999 |
| 01-15-02 | Pennsylvania | Arbitration Hearing | Labor's Union International of North America - vs - Prudencio Martinez, Jr. |
| 05-06-02 | Cayman Islands | Trial | CVC/Opportunity Equity Partners Limited - vs - Luis Roberto Demarco Almeida<br>The Grand Court of the Cayman Islands Case No. 389 of 1999 |
| 8-21-02<br>8-22-02 | Chicago, IL | Trial | MULTIUT CORPORATION - vs - DRAIMAN, et al<br>Circuit Court of Cook County, Illinois Case No. 01 CH 9989 |
| 10-16-02 | Farmington Hills MI | Deposition | Robert J. Petz |
| 03-12-03 | Los Angeles, CA | Trial | Estate of Yvette Smith<br>Superior Court of the State of California Case No. 069111 |
| 09-26-03 | Toronto, Canada | Arbitration Hearing | FCLG Enterprises, Ltd. - vs - 668152 ONTARIO, Ltd., et al |
| 11-05-03 | Chicago, IL | Deposition | Rempala - vs - Ebner, et al<br>Circuit Court of Cook County, Illinois Case No. 00 CH 01783 |
| 02-11-04 | Okemos, MI | Deposition | JJK Industries, L.P. - vs - KPlus, et al<br>District Court for the Southern District of Taxes, Houston, Case No. H-02-2252 |
| 05-06-04 | East Lansing, MI | Deposition | Digital Control, Inc. - vs - Charles Machine Works, Arbitration Hearing, Seattle, Washington |
| 01-26-05<br>12-05-05 | Okemos, MI<br>West Palm Beach, FL | Deposition<br>Hearing | Jupiter Medical Center - vs - Orion Carr, III, MD<br>Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, Case No. CL-00-9971-AD |
| 03-14-05<br>04-06-05 | Glendale, CA<br>Van Nuys, CA | Deposition<br>Trial | SP22, Inc. et al v. Yurdumyan, et al<br>Superior Court of the State of California County of Los Angeles, Northwest District Case No. LC067829 |

EXHIBIT ___B___

PAGE ___43___

**Valery N. Aginsky, Ph.D.**                                              - 2 -
**COURT CASES AND DEPOSITIONS**

| Date | Location | Type of Proceeding | Case |
|------|----------|--------------------|------|
| 10-27-05 | Washington, DC | Deposition | LG. Phillips LCD Co., Ltd. v. Tatung Co. of America, Tatung Company, and Chunghwa Picture Tubes, Ltd. <br><br> District Court, Central District of California <br> Case No.  CV-02-6775 CBM (JTLx) |
| 04-14-06 <br><br> 06-20-06 <br> 06-20-06 | Los Angeles, CA | Deposition <br><br> Court Hearing <br> Trial | 1124 Marilyn Drive Development LLC v. Shahram Elyaszadeh <br><br> Superior Court of California, County of Los Angeles,  Case No.  SC 085 437 |
| 05-29-06 | Lansing, MI | Deposition | Van Cleave v.  Newbrough, M.D., et al <br><br> Superior Court of California, County of Kern <br> Case No.  S-1500-CV-255754-AEW |
| 09-07-06 | Wichita, KS | Deposition | Bolton v. Coombs, et al <br><br> District Court, Sedgwick County, Kansas <br> Case No.  05 CV 2332 |
| 02-06-06 <br> 03-09-07 | Laguna Hills, CA <br> Los Angeles, CA | Deposition <br> Arbitration Hearing | Angeline Hebert v. Bank of America, et al <br><br> Superior Court of California, County of Orange <br> Case No.  04CC10405 |
| 05-07-07 | Vancouver, Canada | Trial | Osooli-Talesh v. Emami <br><br> Supreme Court of British Columbia <br> Vancouver Registry No. S026800 |
| 07-07-06 <br><br><br> 06-29-07 | Lansing, MI <br><br><br> Clearwater, FL | Deposition <br><br><br> Trial | Estate of Paul R. Smith et al v. William P. Gregory, et al <br><br> Circuit Court of the 6th Judicial Circuit in and for Pinellas County, Florida, Probate Division <br> Case No.  02-4488-ES-003 |
| 04-26-07 <br> 07-18-07 | Okemos, MI <br> Troy, MI | Deposition <br> Trial | Quality Manufacturing, Inc. v. Brian P. Mann, et al <br><br> Genesee County Circuit Court <br> Case No. 04-79512-CZ |
| 08-03-07 | Lansing, MI | Deposition | Hypoxico v. Colorado Altitude Training, et al <br><br> District Court, Southern District of New York <br> Case No.  02 Civ 6191 (JGK) |
| 10-05-07 | San Francisco, CA | Deposition | Plant Insulation Company v. Fireman's Fund Insurance Company, et al <br><br> Superior Court of California, County of San Francisco,  Case No.  06-448618 |

EXHIBIT ___ B
PAGE ___ 44

# Exhibit "VNA-3"

# RWAFDE Schedule of Fees

EXHIBIT _____ B
PAGE _____ 45



www.rileywelch.com

# RILEY WELCH AGINSKY
## &
### FORENSIC DOCUMENT EXAMINATORS, Inc.
PO Box 80225, Lansing, Michigan 48908-0225
Telephone (517) 394-1512  Fax (517) 882-2767

# SCHEDULE OF FEES

**Tax I.D. 38-3294972**

Call for a physical address to send any deliveries, packages or evidence

| **Document Examinations:** | | **Latent Prints:** | |
|---|---|---|---|
| Retainer: | $1500.00 | Retainer: | $1000.00 |
| Retainer: | $2500.00 (Medical Malpractice) | Hourly Rate: | $200.00 |
| Hourly Rate: | $250.00 | | |

| **Chemical Analysis of Ink (Ink Dating or Comparison):** | | **Toxicology:** | |
|---|---|---|---|
| Retainer: | $3000.00 | Retainer: | $1500.00 |
| Hourly Rate: | $300.00 | Hourly Rate: | $250.00 |

**Court/Deposition/Hearings:** *(payment in advance [estimated] is required)*
Rate:   $50.00 above hourly rate   (portal to portal)
Travel:  Court hourly rate x 4 hours (minimum)

* Traveling (air or ground) hours over the 4 hour minimum billed at .5 court hourly rate (hours worked during air or ground travel billed at court hourly rate)
* Court room (deposition) testimony time and weekdays/weekends waiting to testify = 8-hour minimum at court rate (hourly rate + $50.00); minimum of 2 hours preparation time per event.

**On-Site Document Examinations:**
Limited Inspections:        $250.00 per hour (plus any setup, tear down, mileage & expenses)
Complete Instrumentation:   $500.00 per hour (2 examiners, plus setup, tear down, mileage & expenses)

**Miscellaneous:**
| | |
|---|---|
| Travel: | Case related travel is billed portal to portal for purposes of on-site document examination, taking ink samples, or any other travel requested by client. Amounts due for travel must be paid in advance (estimate of expenses will be provided). |
| Mileage: | .485 per mile. |
| Meals: | $38.50 or $50.00[1] per day |
| Rush Cases: | $100.00 above hourly rate. Any request for cases to be completed in less than 14 days. |
| Evidence Courier: | Customary Law Clerk Rate + .485 per mile. |
| All Related Charges: | Any and all taxes, fees, airfare, lodging, interpretation services, shipping, mail, telephone, travel fees & required documentation, or any other expenses incurred by this firm on behalf the client. |
| International Cases: | Payment via wire transfer is required. |
| Payment: | The retainer is non-refundable and must be paid with the submission of evidence, prior to the firm or examiner's name to be added to witness lists (payment precludes consultations with opposing parties). This amount is applied towards examination, consultation and report preparation time (the first six hours in document cases, the first five hours in print cases and toxicology cases, and the first ten hours in ink dating cases). Any outstanding balance is due prior to the rendering of an opinion. Court appearances and travel fees must be paid in advance, based upon a quoted estimate of expenses provided to the client and billed against for travel; any remaining balances on quotes for service will be refunded upon final billing. |
| Late Fees: | Any accounts over thirty days old are assessed the fee of 10% of the outstanding balance, per month, along with any costs incurred by this firm in collection actions, including attorney fees. |
| Cancellation: | Any cancellation of court testimony (deposition, or other proceeding) at less than 48 hours notice will result in a minimum billing of 2 hours. Cancellation of court testimony at less than 24 hours notice will result in a minimum billing of 4 hours. Same day cancellation will result in full day fee (8 hours at court hourly rate). |

ALL FEES ARE ASSESSED ON THE BASIS OF THIS FIRM'S FEE SCHEDULE ON THE DATE SERVICE IS RENDERED.

---

[1] Select high cost cities are taken from State of Michigan government traveler listings.

* Diplomat of the American Board of Forensic Document Examiners, Inc.
*American Society of Questioned Document Examiners

EXHiBiT ___B___

PAGE ___46___

1

## PROOF OF SERVICE

2     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

3

4     On February 11, 2008, I served true copies of the following document(s) described as **EXPERT REPORT OF VALERY AGINSKY, DATED February 8, 2008** on the parties in this action as follows:

5

6     John W. Keker, Esq.                          Thomas J. Nolan
      Michael H. Page, Esq.                        Timothy A. Miller
7     Christina M. Anderson, Esq.                  **Skadden, Arps, Slate, Meageher &**
      **Keker & Van Nest, LLP**                    **Flom LLP**
8     710 Sansome Street                           300 South Grand Ave.,
      San Francisco, CA 94111                      Suite 3400
9     *jkeker@kvn.com*                             Los Angeles, CA 90071
      *mhp@kvn.com*                                *thomas.nolan@skadden.com*
10    *canderson@kvn.com*                          *timothy.miller@skadden.com*

11

12    Mark E. Overland
      **Overland Borenstein Scheper & Kim**
13    **LLP**
      300 South Grand Ave.
14    Suite 2750
      Los Angeles, CA 90071
15    *moverland@obsklaw.com*

16    **BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission on February 11, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

17

18    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

19

20

21

22    Executed on February 11, 2008, at Los Angeles, California.

23

24    _____
      Andrea Hoeven

25

26

27

28

EXHIBIT _____ B

PAGE _____ 47

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On February 12, 2008, I served true copies of the following document(s) described as **EXPERT REPORT OF VALERY AGINSKY, DATED February 8, 2008** on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

[√]    **[PERSONAL]** by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 12, 2008, at San Francisco, California.

_____
Erin Gilbride

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On February 12, 2008, I served true copies of the following document(s) described as **EXPERT REPORT OF VALERY AGINSKY, DATED February 8, 2008** on the parties in this action as follows:

Mark E. Overland
**Overland Borenstein Scheper & Kim LLP**
300 South Grand Ave.
Suite 2750
Los Angeles, CA 90071

Thomas J. Nolan
Timothy A. Miller
**Skadden, Arps, Slate, Meageher & Flom LLP**
300 South Grand Ave.,
Suite 3400
Los Angeles, CA 90071

[√] **[PERSONAL]** by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 12, 2008, at Los Angeles, California.

_____
Dave Quintana

EXHIBIT _____

PAGE _____

# Responses, Replies and Other Motion Related Documents

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 3/25/2008 at 4:51 PM PDT and filed on
3/25/2008
**Case Name:**       Carter Bryant v. Mattel Inc
**Case Number:**     2:04-cv-9049
**Filer:**           Mattel Inc
**Document Number:** 2799

**Docket Text:**
DECLARATION of Valery Aginsky in opposition to MOTION for Partial Summary Judgment[2572],
MOTION for Partial Summary Judgment as to Mattel's Claims Against Bryant[2506] filed by Counter
Claimant Mattel Inc. (Attachments: # (1) Exhibit to the Declaration of Valery Aginsky)(Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Juan Pablo Alban     juanpabloalban@quinnemanuel.com

Timothy L Alger     timalger@quinnemanuel.com

Christa M Anderson     canderson@kvn.com

Linda M Burrow     burrow@caldwell-leslie.com

Michelle M Campana     michelle.campana@skadden.com

Jon D Corey     joncorey@quinnemanuel.com

Alexander H Cote     acote@obsklaw.com

Leah Chava Gershon     leah@spertuslaw.com

Scott E Gizer     sgizer@chrisglase.com

Alan Neil Goldberg     agoldberg@sgattys.com

Melissa Grant     melissagrant@quinnemanuel.com

Emil W Herich     eherich@kmwlaw.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

John W Keker    jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Larry W McFarland    lmcfarland@kmwlaw.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

John Elliot Trinidad    jtrinidad@kvn.com, cparker@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmw@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Nathan Meyer
Kaye Scholer
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Kien C Tiet
Stern and Goldberg

6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\stephenhauss\Desktop\Cases\Mattel 07209\Filings\SJ
Opp\Aginsky Declaration.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=3/25/2008] [FileNumber=5577581-0]
[8f2dc7c411ca266b037532d8fff7b96c60b88f752bbfe460c5385ca634fe875c998b
3aa172ebc47ae7854bfa8c4c6b96f7b10d305b2730dbf586b3d52fd3284f]]
**Document description:**Exhibit to the Declaration of Valery Aginsky
**Original filename:**C:\Documents and Settings\stephenhauss\Desktop\Cases\Mattel 07209\Filings\SJ
Opp\Aginsky Exhibits.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=3/25/2008] [FileNumber=5577581-1]
[2949561da3dce12eea8dce313ce16f4791172d06ba858533a31c34d53f2ed6462aa1
166736cec544138c1faea4e24475991c9cd48fa2e38e1167eca86a7c1014]]

# EXHIBIT F

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT G

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT H**

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT I

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         EASTERN DIVISION

12  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,                 Consolidated with
                                           Case No. CV 04-09059
14        vs.                              Case No. CV 05-02727

15  MATTEL, INC., a Delaware              DECLARATION OF BRUCE L.
    corporation,                          STEIN IN SUPPORT OF MATTEL,
16                                         INC.'S CONSOLIDATED
                Defendant.                 OPPOSITION TO DEFENDANTS'
17                                         MOTIONS FOR PARTIAL
    _____         SUMMARY ADJUDICATION
18  AND CONSOLIDATED ACTIONS

19                                         Date:  April 22, 2008
                                           Time:  10:00 a.m.
20                                         Place: Courtroom 1

21                                         **Phase 1**
                                           Discovery Cut-Off:   Jan. 28, 2008
22                                         Pre-Trial Conference: May 5, 2008
                                           Trial Date:          May 27, 2008

23

24

25

26

27

28

07209/2442081.1

# DECLARATION OF BRUCE L. STEIN

I, Bruce L. Stein, declare as follows:

1.      I make this declaration of my personal and firsthand knowledge and, if called and sworn as a witness, I could and would testify competently hereto.

2.      I make this declaration in support of plaintiff Mattel, Inc.'s ("Mattel") Consolidated Opposition to Defendants' Motions for Partial Summary Adjudication.

3.      I have been retained as an expert on behalf of Mattel in this lawsuit. I have over 25 years experience in the toy industry.

4.      Attached as Exhibit A is a true and correct copy of the expert report I prepared in this case, dated February 11, 2008. I certify that this report is true, accurate and correct, and accurately sets forth my opinions in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 2̲6̲, 2008, at _____.

_____
Bruce L. Stein

**Exhibit A**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | EXPERT REPORT OF BRUCE L. STEIN |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

05059/2384234.1

1

**EXHIBIT** _____ A _____

**PAGE** _____ 3 _____

## **Background**

Before beginning my comments on commonly understood and accepted employment practices in the toy industry, I have copied a portion of a biography that I have used during the last year for SEC filings as a Director of a few companies:

> Bruce Stein brings a wealth of marketing and corporate strategy expertise through his experiences and accomplishments in small and Fortune 500 companies. Most recently Mr. Stein was the founder and Co-CEO of The Hatchery, llc., a company specializing in intellectual property development and entertainment production of kids and family franchises. Prior to this Mr. Stein served in various executive capacities within corporations such as Worldwide President, Chief Operating Officer and Board member of Mattel, Inc., Chief Executive Officer Sony Interactive Entertainment (Playstation), President of Kenner Products, a company he sold to and built within Hasbro Toys. He began his corporate marketing experiences at Dial Corp. and Ogilvy & Mather Advertising. Mr. Stein also was CEO of several small companies including The Hatchery and Radical Communication, a full service software provider of marketing solutions. He served as a consultant to Warner Bros. Consumer Products and at DreamWorks.

> Mr. Stein has held Board of Director seats on several public and private companies including Dreamlife, Mattel, MindArrow, Radical Communication, and continues to serve on the Board of ViewSonic. He also served as a trustee for the Toy Industry Foundation and as an advisor for the National Underground Railroad Freedom Center. Bruce is a former member of YPO, holds a bachelor's degree in psychology/biology from Pitzer College, and an MBA from the University of Chicago with concentrations in marketing and finance.

As of January 3, 2008, I also began serving as the CEO of Mandalay Media, a company whose mission is the acquisition, building and creation of broad based digital media management and distribution company.

05059/2384234.1                                      2

EXHIBIT _____ A

PAGE _____ 4

Based on my more than 25 years of experience in the toy industry, I am very familiar with common industry practices with respect to the allocation of rights to inventions, ideas, and concepts, as well as measures typically taken by toy companies to ensure confidentiality and to identify and manage possible conflicts of interests by employees and independent inventors. I am also familiar with the types of benefits that creative personnel within a toy company typically receive in comparison to independent, non-employee designers.

I am being compensated for my work on this matter at the rate of $250 per hour.

A list of materials I considered in forming my opinions is attached as Appendix A.

## Statement of Opinions

Anyone who works at a toy company learns from their first day about the critical importance of protecting product ideas and designs, as they are the lifeblood of what a toy company sells. In my experiences at medium and large toy companies such as Kenner, Hasbro, Mattel, and consulting with very small toy companies, they are all alike in that they have strict procedures governing how ideas are presented, reviewed, discussed, developed.

The importance of protection extends not only to patentable inventions but also to product concepts, ideas, names, and other product or marketing concepts. Designers, engineers, marketers and virtually every discipline in a toy company abide by this strict practice. They understand that all ideas and product designs are confidential company property and typically sign paperwork upon beginning their employment that requires them to disclose if they have any conflicts of interest with adhering to this policy or if they have any competitive company conflicts or relationships. For example, both the Bryant/Mattel and Bryant/MGA contracts I reviewed in connection with this matter contain confidentiality provisions that by their terms extend beyond patentable inventions to other types of protectible and/or proprietary information. Similar provisions are contained in the other employment and consulting contracts used by both Mattel and MGA that were provided for my review. Other companies at which I previously worked required creative personnel to execute agreements containing similar confidentiality provisions, and based on my experience in the industry I believe such provisions are the norm, if not a universal requirement for employees and consultants.

05059/2384234.1

3

EXHIBIT ___A___

PAGE ___5___

Toy companies at any given moment are typically working on three product years at one time; the product line that is already in the market, the product line that is being prepared for next calendar year, and product concepts for two years out. Design groups are primarily focused on the two latter product line years and as part of their regular work they frequently meet about, discuss, and are exposed to, new product ideas by other designers from within the company and from outside the company through presentations by freelance or independent design and invention groups.

Although some design group employees inside the toy companies envy the lifestyle and individual fortunes made by the small group of successful inventors, the risks and trade-offs of this career choice are well known. While designers have the option to go the independent route, most choose not to based on their individual risk tolerance and lifestyle preferences. As part of a company they receive many benefits not offered to a solo inventor, such as a regular salary, performance bonuses, stock options, health insurance, vacation pay, disability plans, 401k plans, life insurance, paid holidays, sick days, etc. In exchange for these pay and benefit packages, it is industry practice for a toy company to require these design group employees to execute contracts that assign their work product solely to the company. The universality of this type of invention assignment agreement is reflected in the Bryant/Mattel and Bryant/MGA agreements, as well as the other employment and consulting contracts used by both Mattel and MGA that were provided for my review. As with the confidentiality provisions, the invention assignment clauses in those contracts appear by their terms to extend beyond patentable inventions to other types of protectible intellectual property. Based on my experience, the scope of these provisions is consistent with predominant industry practice, although obviously the precise wording and scope of such provisions varies.

Being an independent is an option that is always open to toy designers. Many designers give the freelance, independent inventing route a try. Some succeed but it is a very challenging road that most inventors barely earn a living at. Most product ideas are rejected, and even if accepted it often takes years for an idea to make it to market and begin generating royalty income for the inventor. Also, for many independent inventors, the absence of a broad group of talented peers and the team process negatively impacts the quality of their ideas, their productivity and their enjoyment of their work.

EXHIBIT ___A___

PAGE ___6___

02/11/2008 18:00 FAX 13235409832          MANDALAY                              ☒002

Design jobs inside toy companies are thus coveted by many creative types. While company jobs in the toy industry often carry the pressures of intense schedules and constant product concept and line development work, it is a place for a creative designer to do their most creative work, have a company ready to bring their ideas to market, and have a lucrative set of benefits that remove the everyday worries of finances, health care, and the like from the joy they experience in being creative. In the end, in my experience, for most designers, the contracts they sign that give a toy company the rights to their work product are more liberating than restrictive.

Signed February 11, 2008 in _____, Los Angeles, California.


_____
Bruce L. Stein

EXHIBIT _____A_____

PAGE _____ŋ_____

## Appendix A

### Documents Considered

Employee Patent and Confidence Agreement between Mattel Toys and Mercedeh Ward (undated)

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Paula Treantafelles dated July 4, 1997

Confidential and No Conflict Agreement for temporary Assignment at a Mattel, Inc. Company between Mattel, Inc. and John Bloodworth dated June 1, 2006

Confidentiality and Non-Disclosure Agreement between John Bloodworth and Mattel, Inc. dated June 1, 2006

PrO Unlimited Non-Exempt Employee Services Agreement between John Bloodworth and PrO Unlimited dated June 1, 2006

Mattel, Inc. 2004 Code of Service Survey Agreement between Janine Brisbois and Mattel, Inc. dated June 7, 2005

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Jorge R. Castilla dated October, 29, 1999

Employee Retention Agreement between Mattel, Inc. and Nick A. Contreras dated January 13, 2004

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Dan Cooney dated May 20, 1997

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Janet Han dated August 12, 2002

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Jill Hatch dated June 24, 1994

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Jill Hatch dated March 31, 2004

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Robert Hudnut dated March 30, 1998

Employee Patent and Confidence Agreement between Mattel, Inc. and Jul Sybrant Carson dated September 14, 1990

- 1 -

EXHIBIT _____ A

PAGE _____ 8

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Daniel
Owen dated January 19, 1999

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Ivy
Arafiles dated September 26, 1999

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Rene
Pasko dated June 2, 1998

Confidentiality and Non-Disclosure Agreement between Phootipong Phoosopha and Mattel, Inc.
dated December 12, 2002

Consulting Agreement between Abigail Belknap dated January 31, 2002

Employee Patent and Confidence Agreement between Mattel Toys and Leland Ratleff dated
March 11, 1985

Employee Patent and Confidence Agreement between Mattel, Inc. and Scot A. Reyes dated
January 5, 2004

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Scot A.
Reyes dated October 21, 2001

Employee Confidentiality and Inventions Agreement between Mattel and Harvey Scott dated
March 22, 2004

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Jier Su
dated November 5, 1998

Employee Confidentiality and Inventions Agreement between Mattel and Jier Su dated March
22, 2004

Employee Confidentiality and Inventions Agreement between Mattel and Marla R. Thompson
dated March 22, 2004

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Dawn
Whitaker dated May 17, 1099

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Jenny
Wong dated April 4, 2000

Employee Patent and Confidence Agreement between Mattel, Inc. and Eve Bennett dated May
21, 1984

Separation Agreement and General Release Agreement between Mattel, Inc. and Eve Bennett
dated February 5, 2002

EXHIBIT _____ A

PAGE _____ 9

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Andreas E. Koch dated April 19, 1998

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Steve Cheng dated September 25, 1999

Employee Retention Agreement between Mattel, Inc. and Nick A. Contreras dated January 13, 2004

Separation Agreement and General Release Agreement between Mattel, Inc. and Steve Cheeg dated June 27, 2001

Confidentiality and Non-Disclosure Agreement between Margaret Leahy/3-DD, Inc. and Mattel, Inc. dated February 11, 2004

Services Agreement between Margaret Leahy/3-DD, Inc. and Mattel, Inc. dated April 1, 2004

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Maria Veronica Brandao Marlow dated June 27, 1996

Consulting Agreement between Mattel, Inc and Veronica Marlow dated April 28, 1998

Offer Letter setting forth agreement as a "work-made-for-hire" between Mattel, Inc and Maria Veronica Brandao Marlow dated January 13, 1999

Consulting Agreement between Mattel, Inc and Veronica Marlow dated April 2, 1998

Separation Agreement and General Release Agreement between Mattel, Inc. and Susan G. McBride dated March 21, 2001

Consulting Agreement between Mattel, Inc and Rita Mullen/R Mullen Associates, Inc. dated April 13, 2000

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Maureen Mullen dated May 12, 1997

Employee Patent Confidence Agreement between Mattel Toys and Wendy Wilson dated January 19, 1993

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Danny Pestonji dated January 10, 1997

Services Agreement between Mattel, Inc. and South Bay Molds/Jesse Ramirez dated January 22, 2004

EXHIBIT _____ A

PAGE _____ 10

Engagement of Serivces between Mattel, Inc. and South Bay Molds/Jesse Ramirez dated February 4, 2004

Services Agreement between Mattel, Inc. and Matthew C. Bousquette dated December 15, 2005

Executive Employment Agreement between Mattel, Inc. and Matthew C. Bousquette dated January 31, 2000

Separation Agreement between Mattel, Inc. and Matt Bousquette dated December 15, 2005, executed December 15, 2006

Employee Confidentiality and Inventions Agreement between Mattel, Inc. and Joseph Feldman dated March 22, 2004

Separation Agreement and General Release Agreement between Mattel, Inc. and Joseph B. Feldman dated April 4, 2004

Separation Agreement and General Release Agreement between Mattel, Inc. and Sarah Halpern dated October 2, 1995

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Kristen Kirst dated December 4, 2000

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Joyce Kim dated September 21, 1998

Employment Agreement between Mattel Services and Mariana Trueba Almada dated November 3, 1997

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Christopher Hardouin dated August 9, 2004

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Holly A. Stinnett dated November 20, 1996

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Chang-Chin Wang dated September 20, 1999

Employee Confidential Information and Inventions Agreement between Mattel, Inc and Lisa Tawil dated September 3, 1999

Separation Agreement and General Release Agreement between Mattel, Inc. and Lisa H. Tawil dated February 13, 2001

Offer letter between MGA and Roger Rambeau dated April 4, 1998

EXHIBIT ___ A ___

- 4 -

PAGE ___ 11 ___

Confidentiality Agreement between MGA and Roger Rambeau dated June 1998

Confidential Information Agreement between ABC and Roger Rambeau dated May 13, 1996

Confidentiality and Inventions Assignment Agreement between ABC Int'l Traders, Inc. and Roger Rambeau dated February 13, 1997

Response Letter regarding Consulting Agreement between ABC Int'l traders Inc and Roger Rambeau dated April 21, 1998

Confidentiality and Inventions Assignment Agreement between MGA and Roger Rambeau dated April 15, 1998

Offer letter between MGA and Kami Gillmour dated May 4, 1999

Mutual Agreement to Mediate and/or Arbitrate between ABC Int'l Traders, Inc and Kami Gilmour dated May 24, 1999

Offer Letter between Andy Aryapour and MGA Entertainment dated October 20, 1999

Confidentiality and Inventions Assignment Agreement between ABC Int'l Traders, Inc and Daryoush Aryapour dated October 22, 1999

Acknowledgment of Receipt of Handbook between ABC Int'l Traders, Inc and Daryoush Aryapour dated October 25, 1999

Mutual Agreement to Mediate and/or Arbitrate between ABC Int'l Traders, Inc and Daryoush Aryapour dated October 22, 1999

Form MGA Entertainment Non-Disclosure Agreement

Offer Letter between MGA Entertainment and Paula Treantafelles dated April 4, 2000

Confidentiality and Inventions Assignment Agreement between ABC Int'l Traders, Inc and Paula Treantafelles dated April 17, 2000

Mutual Agreement to Mediate and/or Arbitrate between ABC Int'l Traders, Inc and Paula Treantafelles dated April 17, 2000

Application for Employment between MGA and Paula Treantafelles dated April 5, 2000

Application for Employment between MGA and Mercedeh Mirkazemi Ward dated September 29, 2000

Offer Letter between MGA Entertainment and Wendy LaVerne Reed dated November 1, 2000

EXHIBIT ___A___

PAGE ___12___

Proprietary Information Agreement and Mutual Agreement to Mediate and/or Arbitrate between
MGA Entertainment and Wendy L. Reed dated November 6, 2000

Confidentiality and Inventions Assignment Agreement between ABC Int'l Traders, Inc. and
Wendy L. Reed dated November 6, 2000

- Mutual Agreement to Mediate and/or Arbitrate between ABC Int'l Traders, Inc and Lon Ross
dated November 13, 2000

Confidentiality and Inventions Assignment Agreement between ABC Int'l Traders, Inc and Lon
Ross dated November 13, 2000

Acknowledgement of Receipt of Handbook between ABC Int'l Traders, Inc and Lon Ross dated
November 13, 2000

Offer letter between Martin J. Hitch and MGA Entertainment dated December 28, 2000

Confidentiality and Inventions Assignment Agreement between ABC Int'l Traders, Inc and
Martin Hitch dated January 4, 2001

Proprietary Information Agreement between ABC Int'l Traders, Inc and Martin Hitch dated
January 4, 2001

Mutual Agreement to Mediate and/or Arbitrate between ABC Int'l Traders, Inc and Martin Hitch
dated January 4, 2001

Non-disclosure Agreement between ABC Int'l Traders, Inc. and Martin Hitch dated December 6,
2000

Arbitration Agreement between MGA and Martin Hitch dated January 4, 2001

Acknowledgement of Receipt of Handbook between MGA and Martin Hitch dated January 4,
2001

Proprietary Information Agreement between MGA and Christopher J. Hardouin dated June 7,
2001

Confidentiality and Inventions Assignment Agreement between MGA and Christopher J.
Hardouin dated April 10, 2001

Arbitration Agreement between MGA and Christopher J. Hardouin dated April 10, 2001

Acknowledgement of Receipt of Handbook between MGA and Christopher J. Hardouin dated
June 4, 2001

Acceptance letter between MGA and Christopher J. Hardouin dated April 10, 2001

EXHIBIT ___ A

PAGE ___ 13

Confidentiality and Inventions Assignment Agreement between ABC Int'l Traders, Inc. and Christine Devine-Dailey dated May 7, 2001

Arbitration Agreement between ABC Int'l Traders, Inc. and Christine Devine-Dailey dated May 7, 2001

Proprietary Information Agreement between ABC Int'l Traders, Inc. and Christine Devine-Dailey dated May 7, 2001

Acknowledgement of Receipt of Handbook between ABC Int'l Traders, Inc. and Christine Devine-Dailey dated May 7, 2001

Offer Letter between MGA and Dena Schwartz dated May 15, 2001

Confidentiality and Inventions Assignment Agreement between MGA and Dena Schwartz dated May 15, 2001

Proprietary Information Agreement between MGA and Dena Schwartz dated May 15, 2001

Acknowledgement of Receipt of Handbook between MGA and Dena Schwartz dated May 15, 2001

Offer of Employment letter between MGA and Shirin Salemnia dated February 3, 2003

Team Member Health Benefits Plan between MGA and Shirin Salemnia dated February 17, 2003

Arbitration Agreement between MGA and Shirin Salemnia (undated)

Confidentiality and Inventions Assignment Agreement between ABC Int'l Traders, Inc. and Shirin Salemnia dated February 21, 2003

Non-Disclosure Agreement between MGA and Shirin Salemnia dated January 17, 2003

Proprietary Information Agreement between MGA and Shirin Salemnia dated February 21, 2003

Application for Employment between MGA and Maria Elena Salazar dated March 6, 2003

Notice and Disclosure between MGA and Maria Elena Salazar dated March 3, 2003

Authorization to Obtain Investigation Reports between MGA and Maria Elena Salazar dated March 3, 2003

Offer of Employment letter between MGA and Maria Elena Salazar dated March 17, 2003

EXHIBIT _____ A

PAGE _____ 14

Team Member Health Benefits Plan between MGA and Maria Elena Salazar dated March 20, 2003

Non-Disclosure Agreement between MGA and Maria Elena Salazar dated March 6, 2003

Annual Acknowledgement and Agreement between MGA and Maria Elena Salazar regarding receipt of Company's Employee Handbook dated May 19, 2005

Arbitration Agreement between MGA and Maria Elena Salazar (undated )

Confidentiality and Inventions Assignment Agreement between ABC Int'l Traders, Inc. and Maria Elena Salazar dated March 31, 2003

Proprietary Information Agreement between MGA and Maria Elena Salazar dated March 31, 2003

Confidentiality and Inventions Agreement between ABC Int'l Traders, Inc. and Lilia Brown dated March 31, 2003

Proprietary Information Agreement between MGA and Lilia Brown dated March 31, 2003

Non-Disclosure Agreement between MGA and Lilia Brown dated February 19, 2003

Acknowledgement of Receipt of Employee Handbook by Lilia Brown dated March 31, 2003

Non-Disclosure Agreement between MGA and Kristen Kirst dated March 3, 2003

Confidentiality Agreement between ABC Int'l Traders, Inc. and Kristen Kirst dated March 31, 2003

Proprietary Information Agreement between MGA and Kristen Kirst dated March 31, 2003

Non-Disclosure Agreement between MGA and Kristen Kirst dated May 24, 2004

Acknowledgement of Receipt of Employee Handbook between MGA and Kristen Kirst dated March 31, 2003
Non-Disclosure Agreement between MGA and Lui Domingo dated June 12, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Lui Domingo dated July 23, 2003

Proprietary Information Agreement between MGA and Lui Domingo dated July 28, 2003

Acknowledgement of Receipt of Employee Handbook between MGA and Lui Domingo dated July 7, 2003

EXHIBIT _____ A

PAGE _____ 15

Offer of Employment letter between MGA and Lyn Mayer dated July 16, 2003

Proprietary Information Agreement between MGA and Lyn Mayer dated July 28, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Lyn Mayer dated July 28, 2003

Arbitration Agreement between MGA and Lyn Mayer dated July 28, 2003

Acknowledgement of Receipt of Employee Handbook between MGA and Lyn Mayer dated July 21, 2003

Application for Employment between MGA and Alejandro (Alex) Gabriel Keossian dated July 18, 2003

Notice and Disclosure Agreement between MGA and Alex Keossian dated July 18, 2003

Authorization to Obtain Investigation Reports between MGA and Alex Keossian dated July 18, 2003

Temporary Employee Help Request between MGA and Dianna Eisenberg (undated) for work overload help with anticipated start date on July 14, 2003

Offer of Employment letter between MGA and Holly Stinnett dated July 18, 2003

Proprietary Information Agreement between MGA and Holly Stinnett dated July 28, 2003

Acknowledgement of Receipt of Employee Handbook between MGA and Holly Stinnett dated July 21, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Holly Stinnett dated July 28, 2003

Arbitration Agreement between MGA and Holly Stinnett dated July 28, 2003

Offer of Employment letter between MGA and Jose Otero dated August 8, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Jose Otero dated August 22, 2003

Proprietary Information Agreement between MGA and Jose Otero dated August 11, 2003

Arbitration Agreement between MGA and Jose Otero (undated)

Acknowledgement of Receipt of Employee Handbook between MGA and Jose Otero dated August 11, 2003

EXHIBIT ___A___

PAGE ___16___

Offer of Employment letter between MGA and Alejandro (Alex) Gabriel Keossian dated August 8, 2003

Non-Disclosure Agreement between MGA and Alex Keossian dated July 14, 2003

Non-Disclosure Agreement between MGA and Alex Keossian (undated)

Independent Contractor Agreement for Professional Services between MGA and Alex Keossian dated July 18, 2003

Independent Contractor Agreement for Professional Services between MGA and Alex Keossian dated July 14, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Alex Keossian dated August 25, 2003

Proprietary Information Agreement between MGA and Alex Keossian dated August 25, 2003

Arbitration Agreement between MGA and Alejandro (Alex) Gabriel Keossian (undated)

Acknowledgement of Receipt of Employee Handbook between MGA and Alex Keossian dated August 11, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Ellen Komatsu dated September 4, 2003

Proprietary Information Agreement between MGA and Ellen Komatsu dated September 4, 2003

Acknowledgement of Receipt of Employee Handbook between MGA and Ellen Komatsu dated August 25, 2003

Offer of Employment letter between MGA and Steffen J. Smith dated September 25, 2003

Non-Disclosure Agreement between MGA and Stephen Smith dated November 26, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Steffen J. Smith dated October 15, 2003

Proprietary Information Agreement between MGA and Steffen J. Smith dated October 15, 2003

Arbitration Agreement between MGA and Steffen J. Smith (undated)

Employer Property Return Agreement between MGA and Steffen J. Smith dated October 13, 2003

- 10 -

EXHIBIT ___ A ___

PAGE ___ M ___

Acknowledgement of Receipt of Employee Handbook between MGA and Steffen J. Smith dated October 13, 2003

Non-Disclosure Agreement between MGA and Mari J. Bower dated September 18, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Mari J. Bower dated October 15, 2003

Proprietary Information Agreement between MGA and Mari J. Bower dated October 15, 2003

Acknowledgement of Receipt of Employee Handbook between MGA and Mari J. Bower dated October 13, 2003

Work for Hire Agreement between MGA and Donald Pennington, Inc. (undated)

Offer of Employment letter between MGA and Poottipong Phoosopha dated December 1, 2003

Non-Disclosure Agreement between MGA and Poottipong Phoosopha dated November 21, 2003

Proprietary Information Agreement between MGA and Poottipong Phoosopha dated December 12, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Poottipong Phoosopha dated December 12, 2003

Arbitration Agreement between MGA and Poottipong Phoosopha dated December 12, 2003

Acknowledgement of Receipt of Employee Handbook between MGA and Poottipong Phoosopha dated December 8, 2003

Offer of Employment letter between MGA and Nicoletta Parasole dated December 22, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Nicoletta Parasole dated January 7, 2004

Proprietary Information Agreement between MGA and Nicoletta Parasole dated January 7, 2003

Arbitration Agreement between MGA and Nicoletta Parasole dated March 10, 2003

Acknowledgement of Receipt of Employee Handbook between MGA and Nicoletta Parasole dated January 5, 2004

Employer Property Return Agreement between MGA and Nicoletta Parasole dated January 5, 2004

Bratz Non-Disclosure Agreement for invitees of Fall 2004 Bratz Line Review

- 11 -

EXHIBIT _____ A

PAGE _____ 18

Non-Disclosure Agreement between MGA and Young Kim dated December 18, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Young R. Kim dated January 23, 2004

Proprietary Information Agreement between MGA and Young R. Kim dated January 23, 2004

Acknowledgement of Receipt of Employee Handbook between MGA and Young R. Kim dated January 19, 2004

Offer of Employment letter between MGA and Ivy Palijo dated February 9, 2004

Non-Disclosure Agreement between MGA and Ivy Palijo dated January 16, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Ivy Palijo dated February 25, 2004

Proprietary Information Agreement between MGA and Ivy Palijo dated February 26, 2004

Letter from Bob Normile to MGA Chief Legal Counsel dated February 12, 2004 regarding enforcement of Employee Confidential Information and Inventions Agreement signed by Amelia Ivy Arafiles Palijo

MGA Arbitration Agreement dated February 26, 2004 (employee signature illegible)

Acknowledgement of Receipt of Employee Handbook between MGA and Ivy Palijo dated February 23, 2004

Offer Letter between MGA and Danny Pestonji dated March 17, 2004

Non-Disclosure Agreement between MGA and Danny Pestonji dated March 1, 2004

Acknowledgement of Receipt of Handbook between MGA and Danny Pestonji dated June 1, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Danny Pestonji dated June 3, 2004

Proprietary Information Agreement between MGA and Danny Pestonji dated June 3, 2004

Arbitration Agreement between MGA and Danny Pestonji dated June 4, 2004

Offer Letter between MGA and Chang-Chin Wang dated March 25, 2004

Non-Disclosure Agreement between MGA and Chang-Chin Wang dated March 19, 2004

- 12 -

EXHIBIT _____ A

PAGE _____ 19

Confidentiality and Inventions Assignment Agreement between MGA and Chang-Chin Wang dated May 5, 2004

Proprietary Information Agreement between MGA and Chang-Chin Wang dated May 5, 2004

Arbitration Agreement between MGA and Chang-Chin Wang dated May 3, 2004

Offer Letter between MGA and Desiree Ronquillo dated April 7, 2004

Non-Disclosure Agreement between MGA and Desiree Ronquillo dated March 19, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Desiree Ronquillo dated May 5, 2004

Proprietary Information Agreement between MGA and Desiree Ronquillo dated May 5, 2004

Arbitration Agreement between MGA and Desiree Ronquillo dated May 19, 2004

Acknowledgement of Receipt of Handbook between MGA and Desiree Ronquillo dated May 3, 2004

Offer Letter between MGA and Brandi Shaver dated April 14, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Brandi Shaver dated May 5, 2004

Non-Disclosure Agreement between MGA and Brandi Shaver dated April 8, 2004

Proprietary Information Agreement between MGA and Brandi Shaver dated May 5, 2004

Acknowledgement of Receipt of Handbook between MGA and Brandi Shaver dated May 3, 2004

Arbitration Agreement between MGA and Brandi Shaver dated May 5, 2004

Annual Acknowledgment and Agreement regarding Employee Handbook between MGA and Brandi Shaver dated April 8, 2005

Offer Letter between MGA and Gary O'Brien dated April 19, 2004

Non-Disclosure Agreement between MGA and Gary O'Brien dated March 1, 2004

Acknowledgement of Receipt of Handbook between MGA and Gary O'Brien dated May 10, 2004

- 13 -

EXHIBIT _____ A

PAGE _____ 20

Confidentiality and Inventions Assignment Agreement between MGA and Gary O'Brien dated May 17, 2004

Proprietary Information Agreement between MGA and Gary O'Brien dated May 17, 2004

Arbitration Agreement between MGA and Gary O'Brien dated May 17, 2004

Offer Letter between MGA and Chau Tran dated April 22, 2004

Non-Disclosure Agreement between MGA and Chau Tran dated March 23, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Chau Tran dated May 17, 2004

Proprietary Information Agreement between MGA and Chau Tran dated May 17, 2004

Arbitration Agreement between MGA and Chau Tran

Acknowledgement of Receipt of Handbook between MGA and Chau Tran dated May 10, 2004

Offer Letter between MGA and Janine Brisbois dated September 23, 2005

Understanding Regarding Compliance with Obligations to Former Employers Letter between MGA and Janine Brisbois dated September 23, 2005

Non-Disclosure Agreement between MGA and Janine Brisbois dated October 4, 2005

Employment Agreement Term Sheet between MGA Mexico and Susana Kuemmerle

Offer Letter between MGA and Ana Mancia Parkinson dated April 23, 2004

Non-Disclosure Agreement between MGA and Ana Mancia Parkinson dated April 23, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Ana Mancia Parkinson dated May 17, 2004

Proprietary Information Agreement between MGA and Ana Mancia Parkinson dated May 17, 2004

Acknowledgement of Receipt of Handbook between MGA and Ana Mancia Parkinson dated May 10, 2004

Arbitration agreement between MGA and Ana Mancia Parkinson dated May 17, 2004

Non-Disclosure Agreement between MGA and Janet Blaser dated June 14, 2004

- 14 -

EXHIBIT _____ A

PAGE _____ 91

Proprietary Information Agreement between MGA and Janet Blaser dated June 14, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Janet Blaser dated June 14, 2004

Acknowledgement of Receipt of Handbook between MGA and Janet Blaser dated June 14, 2004

Offer letter between MGA and Micaela Ruiz dated February 6, 2006

Annual Acknowledgement and Agreement between MGA and Micaela Ruiz dated February 13, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Micaela Ruiz dated February 14, 2006

Proprietary Information Agreement between MGA and Micaela Ruiz dated February 14, 2006

Non-Disclosure Agreement between MGA and Micaela Ruiz dated February 14, 2006

Arbitration Agreement between MGA and Micaela Ruiz

MGA Mutual Non-Disclosure Agreement

Offer Letter between MGA and Melody Hansen dated February 24, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Melody Hansen dated March 17, 2006

Proprietary Information Agreement between MGA and Melody Hansen dated March 17, 2006

Non-Disclosure Agreement between MGA and Melody Hansen dated March 17, 2006

Arbitration Agreement between MGA and Melody Hansen dated March 17, 2006

Annual Acknowledgement and Agreement between MGA and Melody Hansen dated March 13, 2006

Letter between Bob Normile and Daphne Gronich dated March 14, 2006 regarding Mattel's Confidentiality Agreement (employee Melody Hansen)

Offer Letter between MGA and Gustavo Machado Gomez dated March 6, 2006

Email between Linda Whaley and Gustavo Machado Gomez dated February 21, 2006 negotiating employment terms, and Employee Benefits Overview

Offer Letter between MGA and Gustavo Machado Gomez dated March 30, 2006

- 15 -

EXHIBIT _____ A

PAGE _____ 22

Employer Property Return Agreement between MGA and Gustavo Machado Gomez dated May 7, 2006

Arbitration Agreement between MGA and Gustavo Machado Gomez dated August 3, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Gustavo Machado Gomez dated August 3, 2006

Proprietary Information Agreement between MGA and Gustavo Machado Gomez dated August 3, 2006

Non-Disclosure Agreement between MGA and Gustavo Machado Gomez dated July 5, 2006

Acknowledgement and Agreement (regarding receipt of Handbook) between MGA and Gustavo Machado Gomez dated August 3, 2006.

Handwritten Notes regarding office set-up, housing, and car rental for Gustavo Machado Gomez (not dated)

Email between Linda Whaley and Gustavo Machado dated July 19, 2006 regarding housing

New Hire Orientation Paperwork Checklist for Gustavo Machado dated July 5, 2006

Proprietary Information Agreement between MGA and Lisa Tawil dated April 12, 2002

Confidentiality and Inventions Assignment Agreement between MGA and Lisa Tawil dated April 12, 2002

Acknowledgement of Receipt of Handbook between MGA and Lisa Tawil dated April 8, 2002

Arbitration Agreement between MGA and Lisa Tawil dated April 12, 2002

Offer letter between MGA and Lisa Tawil dated March 22, 2002

Confidentiality and Inventions Assignment Agreement between MGA and Steve Cheng dated April 12, 2002

Proprietary Information Agreement between MGA and Steve Cheng dated April 12, 2002

Acknowledgement of Receipt of Handbook between MGA and Steve Cheng dated April 8, 2002

Notice and Disclosure between MGA and Steve Cheng dated March 18 (no year)

Authorization to Obtain Investigation Reports between MGA and Steve Cheng dated March 18, 2002

- 16 -

EXHIBIT ____ A

PAGE ____ 23

Notification of Request for Investigative Consumer Report between MGA and Steve Cheng dated March 26, 2002

Summary of Rights Under the Fair Credit Reporting Act

Non-Disclosure Agreement between MGA and Steve Cheng dated March 28, 2002

Offer letter between MGA and Fabienne Chonavel dated April 3, 2002

Application For Employment with MGA for Fabienne Chonavel dated March 13, 2002

Notice and Disclosure between MGA and Fabienne Chonavel dated March 21, 2002

Authorization to Obtain Investigative Reports between MGA and Fabienne Chonavel dated March 21, 2002

Proprietary Information Agreement between MGA and Gabriella Burlando dated March 10, 2002

Confidentiality and Inventions Assignment Agreement between MGA and Gabriella Burlando dated March 5, 2002

Confidentiality and Inventions Assignment Agreement (re-hire) between MGA and Gabriella Burlando dated June 13, 2003

Proprietary Information Agreement (re-hire) between MGA and Gabriella Burlando dated May 1, 2003

Acknowledgement of Receipt of Handbook between MGA and Gabriella Burlando dated May 1, 2003

Acknowledgement of Receipt of Handbook between MGA and Gabriella Burlando dated March 5, 2002

Offer Letter between MGA and Lance Ward dated July 20, 2004

Non-Disclosure Agreement between MGA and Lance Ward dated August 2, 2004

Acknowledgement of Receipt of Handbook between MGA and Lance Ward dated August 2, 2004

Annual Acknowledge and Agreement between MGA and Lance Ward dated April 7, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Lance Ward dated August 3, 2004

- 17 -

EXHIBIT ____ A

PAGE ____ 24

Proprietary Information Agreement between MGA and Lance Ward dated August 3, 2004

Arbitration Agreement between MGA and Lance Ward dated August 3, 2004

Form Non-Disclosure Agreement between MGA and Employee undated

Offer Letter between MGA and Dan Owen dated August 23, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Daniel Owen dated August 24, 2004

Proprietary Information Agreement between MGA and Daniel Owen dated August 24, 2004

Arbitration Agreement between MGA and Daniel Owen dated August 24, 2004

Non-Disclosure Agreement between MGA and Daniel Owen dated August 23, 2004

Acknowledgement of Receipt of Handbook between MGA and Daniel Owen  dated August 23, 2004

Offer Letter between MGA and Ronald Brawer dated September 1, 2004

Letter Re: Understanding Regarding Compliance with Obligations to Former Employers between MGA and Ronald Brawer dated September 1, 2004

Executive Employment Agreement between MGA and Ronald Brawer dated as of October 5, 2004

Offer Letter between MGA and Ronald Brawer dated September 17, 2004

Annual Acknowledgement and Agreement between MGA and Ron Brawer (undated)

Acknowledgement of Receipt of Handbook between MGA and Ron Brawer dated October 5, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Ron Brawer dated October 21, 2004

Non-Disclosure Agreement between MGA and Ron Brawer (undated)

Employer Property Return Agreement  between MGA and Ron Brawer dated October 5, 2004

Arbitration Agreement between MGA and Ron Brawer (undated)

EXHIBIT _____ A

PAGE _____ 25

Amended and Restated Employment Agreement between MGA and Ronald Brawer dated as of
October 1, 2006

Amendment No. 1 to Amended and Restated Employment Agreement between MGA and
Ronald Brawer dated as of June 15, 2007

Attachment "A" to Amendment No. 1 to Amended and Restated Employment Agreement
between MGA and Ronald Brawer (undated)

Letter Re: Understanding Regarding Compliance with Obligations to Former Employers between
MGA and Ronald Brawer dated September 17,2004

Offer Letter between MGA and Nick Contreras  dated October 28, 2004

Proprietary Information Agreement between MGA and Nick Contreras dated January 17, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Nick Contreras dated
January 17, 2005

Non-Disclosure Agreement between MGA and Nick Contreras dated January 17, 2005

Non-Disclosure Agreement between MGA and Nick Contreras dated November 2, 2004

Acknowledgement of Receipt of Handbook between MGA and Nick Contreras dated November
29, 2004

Letter from Bob Normile  to Daphne Gronich dated December 2, 2004 Re: Nick Contreras/
Confidentiality and Inventions Agreement with Mattel

Notice and Disclosure  between MGA and Nick Contreras dated November 2, 2004

Authorization to Obtain Investigation Reports between MGA and Nick Contreras dated
November 2, 2004

Notification of request for Investigative Consumer Report  between MGA and Nick Contreras
dated November 2, 2004

Summary of Your Rights Under the Fair Credit Reporting Act

Offer Letter between MGA and Dawn Whitaker dated November 15, 2004

Letter from Bob Normile  to Daphne Gronich dated December 20, 2004 Re: Dawn Whitaker/
Confidentiality and Inventions Agreement with Mattel

Proprietary Information Agreement between MGA and Dawn Whitaker dated January 17, 2005

- 19 -

EXHIBIT _____ A

PAGE _____ 26

Confidentiality and Inventions Assignment Agreement between MGA and Dawn Whitaker dated January 17, 2005

Non-Disclosure Agreement between MGA and Dawn Whitaker dated January 17, 2005

Arbitration Agreement between MGA and Dawn Whitaker (undated)

Form Arbitration Agreement (undated)

Acknowledgement of Receipt of Handbook between MGA and Dawn Whitaker dated December 6, 2004

Annual Acknowledgement and Agreement between MGA and Dawn Whitaker dated April 12, 2005

Offer Letter between MGA and Ricardo Abundis  dated November 15, 2004

Letter Re: Understanding Regarding Compliance with Obligations to Former Employers between MGA and Ricardo Abundis dated November 15,2004

Notice and Disclosure between MGA and Ricardo Abundis dated November 11,2004

Authorization to Obtain Investigation Reports between MGA and Ricardo Abundis dated November 11, 2004

Notification of Request for Investigative Consumer Report between MGA and Ricardo Abundis dated November 11, 2004

A Summary of Your Rights Under the Fair Credit Reporting Act

Letter from Bob Normile  to Daphne Gronich dated December 6, 2004 Re: Ricardo Abundis / Confidentiality and Inventions Agreement with Mattel

Non- Disclosure Agreement between MGA and Ricardo Abundis dated January 17, 2005

Acknowledgement of Receipt of Handbook between MGA and Ricardo Abundis dated December 1, 2004

Proprietary Information Agreement between MGA and Ricardo Abundis dated January 17, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Ricardo Abundis dated January 17, 2005

Application for Employment between MGA and Ricardo Abundis dated November 11, 2004

EXHIBIT _____ A

PAGE _____ 27

Letter from Bob Normile to Daphne Gronich dated September 5, 2006 Re: Jill Hatch/ Confidentiality and Inventions Agreement with Mattel

Letter from Bob Normile to Daphne Gronich dated July 5, 2005 Re: Michael Hinh / Confidentiality and Inventions Agreement with Mattel

Letter from Bob Normile to Daphne Gronich dated June 13,2005 Re: Michael Hinh Code of Conduct & Confidentiality with Mattel

Proprietary Information Agreement between MGA and Joseph Feldman dated January 17, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Joseph Feldman dated January 17, 2005

Non-Disclosure Agreement between MGA and Joseph Feldman dated January 17, 2005

Annual Acknowledgement and Agreement between MGA and Joseph Feldman dated April 8, 2005

Offer Letter between MGA and Gord Terry dated September 21,2001

Signature Page between MGA and Gord Terry dated September 24, 2001

Arbitration Agreement between MGA and Gord Terry dated October 5, 2001

Confidentiality and Inventions Assignment Agreement between MGA and Gordon Terry dated October 1, 2001

Proprietary Information Agreement between MGA and Gordon Terry dated October 2, 2001

Acknowledgement of Receipt of Handbook between MGA and Gordon Terry dated October 1, 2001

Offer Letter between MGA and Dennis Soai dated February 26, 2002

Arbitration Agreement between MGA and Dennis Soai dated March 4, 2002

Proprietary Information Agreement between MGA and Dennis Soai dated March 10, 2002

Confidentiality and Inventions Assignment Agreement between MGA and Dennis Soai dated March 10, 2002

Confidentiality and Inventions Assignment and Agreement between MGA and Ken Kauffmann dated January 10, 2005

Proprietary Information Agreement between MGA and Ken Kauffmann dated January 10, 2005

EXHIBIT _____ A

PAGE _____ 26

Non-Disclosure Agreement between MGA and Ken Kauffman dated January 10, 2005

Email Re: Ken Kauffmann's notification to Mattel of his acceptance of position at MGA, between Daphne Gronich and Mel Woods dated January 4, 2005

Letter Re: Kauffmann Separation Agreement between Andrew Cipes and Alan Kaye dated December 23, 2004

Email Re: Alan Kaye's response to Andrew Cipes's letter re: Ken Kauffmann's employment with MGA, between Daphne Gronich and Mel Woods dated January 4, 2005

Fax Transmission of Letter Re: Alan Kaye of Mattel re: Mattel's response to Andrew Cipes's letter regarding Ken Kauffmann's Separation Agreement, between Andrew Cipes and Ken Kauffman, dated January 4, 2005

Letter Re: Understanding Regarding Compliance with Obligations to Former Employers between MGA and Ken Kauffman dated December 10, 2004

Authorization to Obtain Investigation Reports between MGA and Ken Kauffman dated October 25, 2004

Notice and Disclosure between MGA and Ken Kauffmann dated October 25, 2004

Non-Disclosure Agreement between MGA and Shirin Salemnia (undated)

Offer Letter between MGA and Alice Kao dated February 5, 2005

Letter Re: Understanding Regarding Compliance with Obligations to Former Employers between MGA and Alice Kao dated February 4, 2005

Letter Re: Alice Kao's Employee Confidential Information and Inventions Agreement with Mattel, between Mattel and MGA dated February 18, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Alice Kao (undated)

Arbitration Agreement between MGA and Alice Kao dated February 21, 2005

Offer Letter between MGA and Margaret Leahy dated February 14, 2005

Proprietary Information Agreement between MGA and Margaret Leahy dated April 24, 2005

Non-Disclosure Agreement between MGA and Margaret Leahy dated April 24, 2005

Annual Acknowledge and Agreement between MGA and Margaret Leahy dated April 4, 2005

EXHIBIT _____ A

PAGE _____ 29

Non-Disclosure Agreement between MGA and Margaret Leahy dated February 14, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Margaret Leahy dated April 24, 2005

Arbitration Agreement between MGA and Margaret Leahy dated April 24, 2005

Offer Letter between MGA and Mia Garcia dated February 17, 2005

Non-Disclosure Agreement between MGA and Mia Garcia dated February 17, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Mia Garcia dated March 1, 2005

Proprietary Information Agreement between MGA and Mia Garcia dated March 1, 2005

Non-Disclosure Agreement between MGA and Mia Garcia dated March 1, 2005

Arbitration Agreement between MGA and Mia Garcia dated February 23, 2005

Non-Disclosure Agreement between MGA and Bo Lumabao dated January 18, 2005

Non-Disclosure Agreement between MGA and Bo Lumabao dated February 15, 2005

Proprietary Information Agreement between MGA and Bo Lumabao dated February 15, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Bo Lumabao dated February 15, 2005

Acknowledgement of Receipt of Handbook between MGA and Bo Lumabao dated February 14, 2005

Offer Letter between MGA and Janet Hsu dated March 9, 2005

Letter Re: Understanding Regarding Compliance with Obligations to Former Employers, between MGA and Janet Hsu dated March 10, 2005

Letter Re: Janet Han's Employee Confidential Information and Inventions Agreement with Mattel, between Bob Normille and Daphne Gronich dated March 15, 2005

Letter Re: Janet Han's resignation from Mattel, between Mattel and Janet Han dated February 22, 2005

Law Department Memorandum Re: Reminder Regarding Mattel Confidential and Proprietary Information, between Mattel and Janet Han dated February 22, 2005

EXHIBIT ___ A ___

PAGE ___ 30 ___

Exit Interview Checkout Form Re: Reminder Code of Conduct, between Mattel and Janet Han, dated February 2005

Proprietary Information Checkout between Mattel and Janet Han (undated)

Non-Disclosure Agreement between MGA and Jane Hsu dated March 29, 2005

Proprietary Information Agreement between MGA and Janet Hsu dated March 28, 2005

Confidentiality and Inventions Agreement between MGA and Janet Hsu dated March 29. 2005

Arbitration Agreement between MGA and Janet Hsu dated March 29, 2005

Independent Contractor Consulting Agreement between MGA and Mercedeh Ward dated March 15, 2006

Acknowledgement of Receipt of Handbook between MGA and Mercedeh Ward dated March 7, 2005

Offer Letter between MGA and Mercedeh Ward dated either February 28, 2005 or March 28, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Mercedeh Ward dated March 7, 2005

Proprietary Information Agreement between MGA and Mercedeh Ward dated March 7, 2005

Non-Disclosure Agreement between MGA and Mercedeh Ward dated March 7, 2005

Letter Re: Joyce Kim's Employee Confidential Information and Inventions Agreement with Mattel, between Bob Normille and Daphne Gronich dated March 15, 2005

Proprietary Information Agreement between MGA and Joyce Kim dated March 1, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Joyce Kim dated March 1, 2005

Non-Disclosure Agreement between MGA and Joyce Kim dated March 1, 2005

Employment Agreement between MGA and Janet Hsu dated March 9, 2005

Application for Employment between MGA and Janet Han (undated)

Notice and Disclosure Re: MGA obtaining investigative reports in connection with application for employment, between MGA and Janet Han (undated)

- 24 -

EXHIBIT _____ A

PAGE _____ 31

Authorization to Obtain Investigation Reports re: in connection with application for employment, between MGA and Janet Han (undated)

Offer Letter between MGA and Marla Thompson dated April 4, 2005

Letter Re: Understanding Regarding Compliance with Obligations to Former Employers, between MGA and Marla Thompson dated April 8, 2005

Letter Re: Marla Thompson's Employee Confidential Information and Inventions Agreement with Mattel, between Bob Normille and Daphne Gronich dated April 1, 2005

Envelope showing postmark, between Mattel and Daphne Gronich (date illegible)

Letter Re: Marla Thompson's Employee Confidential Information and Inventions Agreement with Mattel, between Bob Normille and Daphne Gronich dated April 1, 2005

Annual Acknowledgement and Agreement Re: receipt of company's employee handbook, between MGA and Marla Thompson dated April 4, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Marla Thompson dated April 24, 2005

Proprietary Information Agreement between MGA and Marla Thompson dated April 24, 2005

Non-Disclosure Agreement between MGA and Marla Thompson dated April 24, 2005

Arbitration Agreement between MGA and Marla Thompson (undated)

Letter Re: Marla Thompson's Employee Confidential Information and Inventions Agreement with Mattel, between Bob Normille and Marla Thompson dated March 29, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Christine Nigoghossian dated May 9, 2005

Proprietary Information Agreement between MGA and Christine Nigoghossian dated April 25, 2005

Non-Disclosure Agreement between MGA and Christine Nigoghossian dated May 6, 2005

Annual Acknowledgement and Agreement between MGA and Christine Nigoghossian dated April 25, 2005

Offer Letter between MGA and James Huntley dated May 23, 2005

Letter Re: Understanding Regarding Compliance with Obligations to Former Employers between MGA and James Huntley dated May 23, 2005

- 25 -

EXHIBIT _____ A _____

PAGE _____ 32 _____

Arbitration Agreement between MGA and James Huntley dated May 25, 2005

Confidentiality and Inventions Assignment Agreement between MGA and James Huntley dated May 25, 2005

Proprietary Information Agreement between MGA and James Huntley dated May 25, 2005

Non-Disclosure Agreement between MGA and James Huntley dated May 25, 2005

Annual Acknowledgement and Agreement between MGA and James Huntley dated May 23, 2005

Confidentiality and Work for Hire Agreement between MGA and Freeshot LLC (Jim Huntley) dated August 17, 2006

Offer Letter between MGA and Gail Upshaw (undated)

Confidentiality and Inventions Agreement between MGA and Gail Upshaw dated May

Non-Disclosure Agreement between MGA and Gail Upshaw dated May 25, 2005

Proprietary Information Agreement between MGA and Gail Upshaw dated May25, 2005

Non-Disclosure Agreement between MGA and Gail Upshaw dated May 25, 2005

Annual Acknowledgement and Agreement MGA and Gail Upshaw dated May 23, 2005

Arbitration Agreement between MGA and Gail Upshaw (undated)

Letter Re: Understanding Regarding Compliance with Obligations to Former Employees between MGA and Michael Hinh dated June 21, 2005

Letter Re: Michael Hinh's continued obligations to Mattel re: confidentiality, between Bob Normille and Daphne Gronich dated June 15, 2005

Letter Re: Michael Hinh's Employee Confidential Information and Inventions Agreement with Mattel, between Bob Normille and Daphne Gronich dated July 11, 2005

Offer Letter between MGA and Michael Hinh dated June 21, 2005

Annual Acknowledgement and Agreement between MGA and Michael Hinh dated June 28, 2005

Confidentiality and Inventions Agreement between MGA and Michael Hinh dated June 30, 2005

- 26 -

EXHIBIT ____ A ____

PAGE ____ 33 ____

Proprietary Information Agreement between MGA and Michael Hinh dated June 30, 2005

Non-Disclosure Agreement between MGA and Michael Hinh dated June 25, 2005

Arbitration Agreement between MGA and Michael Hinh dated June 30, 2005

Offer Letter between MGA and Harvey Scott dated July 12, 2005

Letter Re: Understanding Regarding Compliance with Obligations to Former Employers between MGA and Harvey Scott dated 12, 2005

Annual Acknowledgement and Agreement between MGA and Harvey Scott dated August 1, 2005

Confidentiality and Inventions Agreement between MGA and Harvey Scott dated August 3, 2005

Proprietary Information Agreement between MGA and Harvey Scott dated August 3, 2005

Arbitration Agreement between MGA and Harvey Scott dated August 3, 2005

Non-Disclosure Agreement between MGA and Harvey Scott dated August 3, 2005

Letter: Re: Understanding Regarding Compliance with Obligations to Former Employers, between MGA and Dorothy Marks dated July 13, 2005

Application for Employment between MGA and Dorothy Marks dated July 13, 2005

Notice and Disclosure between MGA and Dorothy Marks dated July 13, 2005

Authorization to Obtain Investigation Reports re: application for employment, between MGA and Dorothy Marks dated September 1, 2005

Non-Disclosure Agreement between MGA and Dorothy Marks dated August 3, 2005

Annual Acknowledgement and Agreement between MGA and Dorothy Marks dated August 3, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Dorothy Marks dated August 3, 2005

Proprietary Information Agreement between MGA and Dorothy Marks dated August 3, 2005

Letter: Re: Understanding Regarding Compliance with Obligations to Former Employers, between MGA and Jier Su dated August 1, 2005

- 27 -

EXHIBIT _____ A
PAGE _____ 34

Application for Employment between MGA and Jier Su dated June 24, 2005

Authorization to Obtain Investigative Reports re: application for employment between MGA and Jier Su dated June 24, 2005

Notice and Disclosure between MGA and Jier Su dated June 24, 2005

Notification Re: Request for Investigative Consumer Report, between MGA and Jier Su dated June 24, 2005

Summary of Your Rights Under the Fair Credit Reporting Act, between MGA and Jier Su (undated)

Letter: Re: Jier Su's Employee Confidentiality and Inventions Agreement with Mattel, between Bob Normille and Daphne Gronich dated August 16, 2005

Offer Letter between MGA and Jier Su dated August 1, 2005

Letter: Re: Understanding Regarding Compliance with Obligations to Former Employers, between MGA and Jier Su dated August 1, 2005

Letter: Re: Jier Su's Employee Confidentiality and Inventions Agreement with Mattel, between Bob Normille and Daphne Gronich dated August 16, 2005

Envelope showing Certified Mail Stamp, between Mattel and Daphne Gronich (date illegible)

Annual Acknowledgement and Agreement between MGA and Jier Su dated August 17, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Jier Su dated August 25, 2005

Proprietary Information Agreement between MGA and Jier Su dated August 25, 2005

Non-Disclosure Agreement between MGA and Jier Su dated August 25, 2005

Arbitration Agreement between MGA and Jier Su (undated)

Offer Letter between MGA and Denise Paulino-Phelan dated January 7, 2005

Acknowledgement of Receipt of Handbook between MGA and Denise Paulino-Phelan dated January 18, 2005

Annual Acknowledgement and Agreement between MGA and Denise Paulino-Phelan dated April 15, 2005

EXHIBIT _____ A

PAGE _____ 35

Confidentiality and Inventions Assignment Agreement between MGA and Denise Paulino-Phelan dated January 20, 2005

Proprietary Information Agreement between MGA and Denise Paulino-Phelan dated January 18, 2005

Non-Disclosure Agreement between MGA and Denise Paulino-Phelan dated January 18, 2005

Arbitration Agreement between MGA and Denise Paulino-Phelan dated January 20, 2005

Confidentiality and Work For Hire Agreement between MGA and Scrambled Eggz Productions dated October 1, 2006

Offer Letter between MGA and Robert Langer dated February 15, 2007

Amended and Restated Employment Agreement between MGa and Ronald Brawer dated October 1, 2006

Offer Letter between MGA and Raime Quick dated October 3, 2006

Offer Letter between MGA and Gerry Cody dated November 13, 2006

Arbitration Agreement between MGA and Gerry Cody dated November 28, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Gerry Cody dated November 28, 2006

Proprietary Information Agreement between MGA and Gerry Cody dated November 28, 2006

Non-Disclosure Agreement between MGA and Gerry Cody dated November 28, 2006

Acknowledgement and Agreement between MGA and Gerry Cody dated November 20, 2006

Offer Letter between MGA and Leland Ratleff dated November 15, 2006

Arbitration Agreement between MGA and Leland Ratleff dated December 4, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Leland Ratleff dated December 4, 2006

Proprietary Information Agreement between MGA and Leland Ratleff dated December 4, 2006

Non-Disclosure Agreement between MGA and Leland Ratleff dated December 4, 2006

Acknowledgement and Agreement between MGA and Leland Ratleff dated December 4, 2006

EXHIBIT _____ A

PAGE _____ 36

Letter re Compliance with Mattel's Confidentiality Agreement between MGA and Marvin Natareno dated December 12, 2006

Arbitration Agreement between MGA and Marvin Natareno dated January 10, 2007

Confidentiality and Inventions Assignment Agreement between MGA and Marvin Natareno dated January 10, 2007

Proprietary Information Agreement between MGA and Marvin Natareno dated January 10, 2007

Non-Disclosure Agreement between MGA and Marvin Natareno dated January 3, 2007

Non-Disclosure Agreement between MGA and Marvin Natareno dated September 27, 2006

Acknowledgment and Agreement between MGA and Marvin Natareno dated January 3, 2007

Arbitration Agreement between MGA and Jill Larson dated December 22, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Jill Larson dated December 22, 2006

Proprietary Information Agreement between MGA and Jill Larson dated December 22, 2006

Non-Disclosure Agreement between MGA and Jill Larson dated December 16, 2006

Letter re Compliance with Mattel's Confidentiality Agreement between MGA and Yumi Nakamura dated January 4, 2007

Non-Disclosure Agreement between MGA and Yumi Nakamura dated January 27, 2007

Arbitration Agreement between MGA and Yumi Nakamura dated January 26, 2007

Confidentiality and Inventions Assignment Agreement between MGA and Yumi Nakamura dated January 26, 2007

Proprietary Information Agreement between MGA and Yumi Nakamura dated January 26, 2007

Non-Disclosure Agreement between MGA and Yumi Nakamura dated January 22, 2006 (the date should be 2007)

Acknowledgment and Agreement between MGA and Yumi Nakamura dated January 22, 2007

Letter Employment Agreement between MGA and Nanette Black dated January 8, 2007

MGA Application for Employment between MGA and Nanette Black dated December 21, 2006

EXHIBIT _____ A

PAGE _____ 37

Independent Contractor Services Agreement between MGA and LeapFrog Enterprises, Inc. dated June 22, 2004

Offer Letter between MGA Mexico and Alejandro Gurza Romay dated July 26, 2004

Offer Letter between MGA and Scot Reyes dated February 10, 2004

Arbitration Agreement between MGA and Scot Anthony Reyes dated February 11, 2004

Non-Diclosure Agreement between MGA and Scot Reyes dated January 30, 2004

Confidentiality and Inventions Assignment Agreement between MGA and Scot Reyes dated February 26, 2004

Proprietary Information Agreement between MGA and Scot Reyes dated February 25, 2004

Acknowledgment of Receipt of Handbook between MGA and Scot Reyes dated February 23, 2004

Non-Disclosure Agreement between MGA and Ray Martin dated February 17, 2004

Annual Acknowledgment and Agreement between MGA and Raymond Martin dated April 11, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Raymond Martin dated February 25, 2004

Proprietary Information Agreement between MGA and Raymond Martin dated February 25, 2004

Offer Letter between MGA and Michael Pickard dated March 22, 2004

Non-Disclosure Agreement between MGA and Mike Pickard dated April 15, 2003

Confidentiality and Inventions Assignment Agreement between MGA and Michael Pickard dated March 30, 2004

Proprietary Information Agreement between MGA and Michael Pickard dated March 30, 2004

Arbitration Agreement between MGA and Michael Pickard dated March 30, 2004

Acknowledgement of Receipt of Handbook between MGA and Michael Pickard dated March 22, 2004

Letter between Daphne Gronich and Bob Normile re: Mattel's Confidentiality Agreement dated September 5, 2006 (employment offer to Jill Hatch)

EXHIBIT _____ A

- 31 -

PAGE _____ 86

Offer letter between MGA and Jill Hatch dated August 18, 2006

Arbitration Agreement between MGA and Jill Hatch dated September 26, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Jill Hatch dated September 26, 2006

Proprietary Information Agreement between MGA and Jill Hatch dated September 26, 2006

Non-Disclosure Agreement between MGA and Jill Hatch dated August 22, 2006

Acknowledgement and Agreement between MGA and Jill Hatch dated September 25, 2006

Confidentiality and Work For Hire Agreement between MGA and Imagistic dated September 20, 2006

Acknowledgment and Agreement between MGA and Pamela Keller dated September 25, 2006

Arbitration Agreement between MGA and Pamela Keller dated September 26, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Pamela Keller dated September 26, 2006

Proprietary Information Agreement between MGA and Pamela Keller dated September 26, 2006

Non-Disclosure Agreement between MGA and Pamela Keller dated September 25, 2006

Offer Letter between MGA and Maria De La Cruz dated February 7, 2007

Arbitration Agreement between MGA and Maria De La Cruz dated February 12, 2007

Confidentiality and Inventions Assignment Agreement between MGA and Maria De La Cruz dated February 12, 2007

Proprietary Information Agreement between MGA and Maria De La Cruz dated February 12, 2007

Non-Disclosure Agreement between MGA and Maria De La Cruz dated February 12, 2007

Acknowledgement and Agreement between MGA and Maria De La Cruz dated February 12, 2007

Offer Letter between MGA and Ronald Rae dated March 12, 2007

EXHIBIT _____ A

PAGE _____ 39

Letter between MGA and Ronald Rae re: Understanding Regarding Compliance with Obligations to Former Employers dated March 12, 2007 (re: Offer of Employment)

Arbitration Agreement between MGA and Ronald Rae dated March 14, 2007

Confidentiality and Inventions Assignment Agreement between MGA and Ronald Rae dated March 14, 2007

Proprietary Information Agreement between MGA and Ronald Rae dated March 14, 2007

Non-Disclosure Agreement between MGA and Ronald Rae dated March 12, 2007

Acknowledgement and Agreement MGA and Ronald Rae dated March 12, 2007

Confidentiality and Inventions Assignment Agreement between MGA and Nanette Black dated February 12, 2007

Non-Disclosure Agreement between MGA and Nanette Black dated December 8, 2006

Proprietary Information Agreement between MGA and Nanette Black dated February 12, 2007

Non-Disclosure Agreement between MGA and Nanette Black dated February 12, 2007

Acknowledgement and Agreement between MGA and Nanette Black dated February 12, 2007

Non-Disclosure Agreement between MGA and Karen Dixon dated January 17, 2007

Arbitration Agreement between MGA and Karen Dixon dated February 20, 2007

Confidentiality and Inventions Assignment Agreement between MGA and Karen Dixon dated February 20, 2007

Proprietary Information Agreement between MGA and Karen Dixon dated February 20, 2007

Non-Disclosure Agreement between MGA and Karen Dixon dated February 19, 2007

Acknowledgement and Agreement between MGA and Karen Dixon dated February 19, 2007

Offer Letter between MGA and Jenny Wong dated August 30, 2002

MGA Team Members Benefits Highlights 2002

Proprietary Information Agreement between MGA and Jenny Wong dated September 23, 2002

Arbitration Agreement between MGA and Jenny Wong dated July 18, 2002-no date for MGA

EXHIBIT _____ A

PAGE _____ 40

Confidentiality and Inventions Assignment Agreement between MGA and Jenny Wong dated September 23, 2002

Acknowledgement of Receipt of Handbook between MGA and Jenny Wong dated September 9, 2002

Letter between Jenny Wong and Jill Thomas dated July 2004 re: obligation of Mattel confidentiality agreement

Letter between Jill Thomas and Jenny Wong dated June 15, 2004 re: obligation of Mattel confidentiality agreement

Offer Letter between MGA and Randi Kagan dated September 5, 2002

Arbitration Agreement between MGA and Randi Kagan

Confidentiality and Inventions Assignment Agreement between ABC Int's Traders, Inc. and Randi Kagan dated September 29, 2002

Proprietary Information Agreement between MGA and Randi Kagan dated September 29, 2002

Receipt of Key Card to Building between MGA and Randi Kagan dated September 23, 2002

Offer Letter between MGA and Edward Gonzalez dated September 27, 2006

Arbitration Agreement between MGA and Edward Gonzalez dated October 20, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Edward Gonzalez dated October 20, 2006

Proprietary Information Agreement between MGA and Edward Gonzalez dated October 20, 2006

Non-Disclosure Agreement between MGA and Edward Gonzalez dated October 20, 2006

Arbitration Agreement between MGA and prospective employee

Arbitration Agreement between MGA and prospective employee

Acknowledgement of Receipt of Handbook between MGA and Edward Gonzalez dated January 3, 2005

Acknowledgement and Agreement of Receipt of Employee Handbook between MGA and Edward Gonzalez dated October 20, 2006

Non-Disclosure Agreement between MGA and Edward Gonzalez dated December 17, 2004

- 34 -

EXHIBIT _____ A

PAGE _____ 41

Proprietary Information Agreement between MGA and Edward Gonzalez dated January 17, 2005

Non-Disclosure Agreement between MGA and Edward Gonzalez dated January 17, 2005

Confidentiality and Inventions Assignment Agreement between MGA and Edward Gonzalez
dated January 17, 2005

Offer Letter between MGA and Frank Mils dated March 20, 2006

Non-Disclosure Agreement between MGA and Frank Mils dated March 28, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Frank Mils dated
March 28, 2006

Proprietary Information Agreement between MGA and Frank Mils dated March 28, 2006

Non-Disclosure Agreement between MGA and Frank Mils dated March 28, 2006

Annual Acknowledgement and Receipt of the Company's Employee Handbook between MGA
and Frank Mils dated March 20, 2006

Arbitration Agreement between MGA and Frank Mils dated March 28, 2006

Letter between Daphne Gronich and Bob Normille re: Mattel Confidentiality Agreement dated
March 27, 2006 (Re: Jorge Castilla)

Offer Letter between MGA to Jorge Castilla dated March 10, 2006

Related Offer Letter between MGA and Jorge Castilla re: Compliance with Obligations to
Former Employers dated March 10, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Jorge Castilla

Proprietary Information Agreement between MGA and Jorge Castilla dated April 10, 2006

Non-Disclosure Agreement between MGA and Jorge Castilla dated April 10, 2006

Arbitration Agreement between MGA and Jorge Castilla dated April 10, 2006

Non-Disclosure Agreement between MGA and Jorge Castilla dated April 10, 2006

Annual Acknowledgement and Agreement of Employee Handbook between MGA and Aye Aye
Min dated April 17, 2006

EXHIBIT _____ A

PAGE _____ 42

Confidentiality and Inventions Assignment Agreement between MGA and Aye Aye Min dated April 26, 2006

Proprietary Information Agreement between MGA and Aye Aye Min dated April 24, 2006

Non-Disclosure Agreement between MGA and Aye Aye Min dated April 24, 2006

Related Offer Letter between MGA and Dan Cooney re: Compliance with Obligations to Former Employers accepted May 16, 2006

Offer Letter from MGA to Dan Cooney dated April 27, 2006

Confirmation of Obligation to Protect Proprietary Information and Confirmation of Employer's Ownership of Intellectual Property between Mattel and Dan Cooney dated March 8, 2004

Certification of Receipt of Mattel's Code of Conduct and Conflicts of Interest between Mattel and Dan Cooney dated March 8, 2004

Employee Confidential Information and Inventions Agreement between Mattel and Dan Cooney (undated)

Conflict of Interest Questionnaire between Mattel and Dan Cooney dated January 26, 2004

Email re: MGA Application between Schuyler Bacon to Dan Cooney dated May 1, 2005

Related Offer Letter between MGA to Dan Cooney re: Compliance with Obligations to Former Employers dated May 16, 2006

Non-Disclosure Agreement between MGA and Dan Cooney dated May 15, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Dan Cooney dated May 15, 2006

Annual Acknowledgement and Agreement of Receipt of Employee Handbook between MGA and Dan Cooney dated May 12, 2006

Arbitration Agreement between MGA and Dan Cooney dated May 16, 2006

Letter between Bob Normille and Daphne Gronich re: Mattel's Confidentiality Agreement dated May 15, 2006 (re: Dan Cooney)

Copyright Assignment between MGA and Margaret Leahy signed (date unclear)

Non-Disclosure Agreement between MGA and Adrian Law dated May 2, 2006

- 36 -

EXHIBIT _____ A

PAGE _____ 43

Annual Acknowledgement and Agreement of receipt of Employee Handbook between MGA and Chi-Shing Law (Adrian Law) dated May 2, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Chi-Shing Law dated May 1, 2006

Proprietary Information Agreement between MGA and Chi-Shing Law dated May 1, 2006

Non-Disclosure Agreement between MGA and Chi-Shing Law dated May 1, 2006

Related Offer Letter between MGA and Kam-Wah Cheng re: Compliance with Obligations to Former Employers dated May 3, 2006

Offer Letter between MGA and Craig Forrest dated May 12, 2006

Related Offer Letter between MGA and Craig Forrest re: Compliance with Obligations to Former Employers dated May 12, 2006

Non-Disclosure Agreement between MGA and Craig Forrest dated May 8, 2006

Proprietary Information Agreement between MGA and Craig Forrest dated May 15, 2006

Confidentiality and Inventions Assignment and Agreement between MGA and Craig Forrest dated May 15, 2006

Non-Disclosure Agreement between MGA and Craig Forrest dated May 15, 2006

Annual Acknowledgement and Agreement of receipt of Employee Handbook between MGA and Craig Forrest dated May 15, 2006

Non-Disclosure Agreement between MGA and Ian Bate dated August 6, 2006

Acknowledgement and Agreement of receipt of Employee Handbook between MGA and Ian Bate dated July 31, 2006

Arbitration Agreement between MGA and Ian Bate dated August 2, 2006

Proprietary Information Agreement between MGA and Ian Bate dated August 2, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Ian Bate dated August 6, 2006

Non-Disclosure Agreement between MGA and Ian Bate dated August 2, 2006

Offer Letter between MGA and John Bloodworth dated August 7, 2006

- 37 -

EXHIBIT _____ A

PAGE _____ 44

Confidentiality and Work for Hire Agreement between MGA and North Side Studios dated August 8, 2006

Offer Letter between MGA and Jill Hatch dated August 18, 2006

Confidentiality and Inventions Assignment Agreement between MGA and Suzy Chang dated August 28, 2006

Proprietary Information Agreement between MGA and Suzy Chang dated August 28, 2006

Non-Disclosure Agreement between MGA and Suzy Chang dated August 28, 2006

Acknowledgement and Agreement of receipt of Employee Handbook between MGA and Suzy Chang dated August 28, 2006

Employment Agreement between MGA and Teresa Covington dated March 19, 2007

Offer Letter between MGA and Terry Kemper dated June 8, 2007

Non-Disclosure Agreement between MGA and Terry Kemper dated June 5, 2007

Fax between Terry Kemper and Schuyler Bacon re: Employment Application and NDA dated June 6, 2007

Arbitration Agreement between MGA and Terry Kemper dated June 26, 2007

Confidentiality and Inventions Assignment Agreement between MGA and Terry Kemper dated June 26, 2007

Proprietary Information Agreement between MGA and Terry Kemper dated June 26, 2007

Non-Disclosure Agreement between MGA and Terry Kemper dated June 26, 2007

Acknowledgement and Agreement of receipt of Employee Handbook between MGA and Terry Kemper dated June 26, 2007

Copyright Assignment between MGA and potential employee

Confidentiality and Inventions Assignment Agreement between MGA and Fabienne Chonavel dated April 12, 2002

Proprietary Information Agreement between MGA and Fabienne Chonavel dated April 12, 2002.

Offer Letter between MGA and Susan McBride dated May 14, 2002

- 38 -

EXHIBIT _____ A

PAGE _____ 45

Confidentiality and Inventions Assignment Agreement between MGA and Susan McBride dated June 10, 2002

Acknowledgement of Receipt of Handbook between MGA and Susan McBride dated October 7, 2003

Proprietary Information Agreement between MGA and Susan McBride dated June 10, 2002

Arbitration Agreement between MGA and Susan McBride dated June 14, 2002

Offer Letter between MGA and Kevin Bloomfield dated November 4, 2002

Notice and Disclosure between MGA and Kevin Bloomfield dated October 14, 2002

Arbitration and Agreement between MGA and Kevin Bloomfield dated November 25, 2002

Proprietary Information Agreement between MGA and Kevin Bloomfield dated November 25, 2002

Confidentiality and Inventions Assignment Agreement between MGA and Kevin Bloomfield dated November 25, 2002

Proprietary Information Agreement between MGA and Greg Dominguez dated April 3, 2002.

Confidentiality and Inventions Assignment Agreement between MGA and Greg Dominguez dated April 3, 2002

Acknowledgement of Receipt of Handbook between MGA and Greg Dominguez dated April 1, 2002

Notice and Disclosure between MGA and Greg Dominguez dated March 7, 2002

Authorization to Obtain Investigation Reports between MGA and Greg Dominguez dated March 7, 2002

Agreement between MGA and Anna Rhee dated January 27, 2004

Copyright Assignment between MGA and Anna Rhee dated June 12, 2003

Offer of Employment Letter from Lynne Robinson to Carter Bryant dated October 23, 1995

Employee Confidential Information and Inventions Agreement between Mattel, Inc. and Carter Bryant dated November 6, 1995

Conflict of Interest Questionnaire between Mattel, Inc. and Carter Bryant dated November 6, 1995

- 39 -

EXHIBIT _____ A

PAGE _____ 46

Confirmation of Acceptance Letter from Lynne Robinson to Carter Bryant dated December 11, 1998

Offer of Employment Letter from Lynne Robinson to Carter Bryant dated December 9, 1998

Employee Confidential Information and Inventions Agreement between Mattel, Inc. and Carter Bryant dated January 4, 1999

Conflict of Interest Questionnaire between Mattel, Inc. and Carter Bryant dated January 4, 1998

Proprietary Information Checkout between Mattel, Inc. and Carter Bryant dated October 19, 2000

Email from David Rosenbaum to Carter Bryant dated September 19, 2000 with attached draft of Consulting Agreement including Independent Contractor Agreement between MGA and Carter Bryant dated September 18, 2000 (footer - 9/19/2000) (DR 00156 - DR 00164)

Revised Consulting Agreement between MGA and Carter Bryant including Independent Contractor Agreement dated September 18, 2000 (footer - 10/4/2000) and emails to/from David Rosenbaum to/from Anne Wang dated between September 28, 2000 to October 4, 2000 re Consulting Agreement between MGA and Carter Bryant (DR 00045 - DR 00057)

Revised Consulting Agreement between MGA and Carter Bryant including Independent Contractor Agreement dated September 18, 2000 (footer - 10/4/2000)

Revised Consulting Agreement between MGA and Carter Bryant including Independent Contractor Agreement dated September 18, 2000 (footer - 10/4/2000)

Revision List of Anne Wang's revisions to the Consulting Agreement between MGA and Carter Bryant including Independent Contractor Agreement dated September 18, 2000 with footer - 9/19/2000

Emails to/from Victoria O'Connor to/from David Rosenbaum dated September 19, 2000

Email to/from David Rosenbaum to/from Victoria O'Connor dated September 19, 2000

Email from David Rosenbaum to Anne Wang dated September 28, 2000 with attached draft of Consulting Agreement including Independent Contractor Agreement between MGA and Carter Bryant dated September 18, 2000 (footer - 9/19/2000)

Email from David Rosenbaum to Victoria O'Connor dated September 29, 2000 with emails to/from Anne Wang to/from David Rosenbaum re Carter Bryant Proposed Agreement

Anne Wang Revised Consulting Agreement between MGA and Carter Bryant including Independent Contractor Agreement dated September 18, 2000 [footer - 9/19/2000], attached Revision List

EXHIBIT _____ A

PAGE _____ 47

Emails to/from David Rosenbaum to/from Anne Wang, dated October 4, 2000 with attached draft of Consulting Agreement including Independent Contractor Agreement between MGA and Carter Bryant dated September 18, 2000 (footer - 10/4/2000)

Email from David Rosenbaum to Victoria O'Connor dated October 3, 2000 with email from Anne Wang to David Rosenbaum with her revisions to the Consulting Agreement between MGA and Carter Bryant (footer 9/19/2000) and Revision List

Revised Consulting Agreement between MGA and Carter Bryant including Independent Contractor Agreement dated September 18, 2000 (footer - 10/4/2000) and Revision List

Consulting Agreement between MGA and Carter Bryant dated September 18, 2000 with "Final" (footer - 10/4/2000)

Consulting Agreement between MGA and Carter Bryant dated September 18, 2000 with "Final" (footer - 10/4/2000)

Consulting Agreement between MGA and Carter Bryant dated September 18, 2000 with "Final", "Confidential Seal" (footer - 10/4/2000)

Independent Contractor Agreement between MGA and Carter Bryant (footer - 9/19/2000)

Confidentiality Agreement between MGA and Carter Bryant dated April 11, 2001

Consulting Agreement between MGA and Carter Bryant and Veronica Marlow dated May 14, 2001

Confidentiality and Inventions Assignment Agreement between MGA and Carter Bryant dated April 25, 2002

Modification and Clarification of the Agreement Dated September 18, 2000 between MGA and Carter Bryant dated February 13, 2004

Modification and Clarification of the 2000 Agreement between MGA and Carter Bryant dated May 11, 2004

EXHIBIT _____ A

PAGE _____ 46

# EXHIBIT J

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
      Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         EASTERN DIVISION

12   CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,                Consolidated with
                                          Case No. CV 04-09059
14       vs.                              Case No. CV 05-02727

15   MATTEL, INC., a Delaware             DECLARATION OF MATEO
      corporation,                        ROMANO IN SUPPORT OF
16                                        MATTEL, INC.'S CONSOLIDATED
                Defendant.                OPPOSITION TO DEFENDANTS'
17                                        MOTIONS FOR PARTIAL
                                          SUMMARY ADJUDICATION
18   AND CONSOLIDATED ACTIONS

19                                        Date:   April 23, 2008
                                          Time:   10:00 a.m.
20                                        Place:  Courtroom 1

21                                        Phase 1
                                          Discovery Cut-Off:      Jan. 28, 2008
22                                        Pre-Trial Conference:   May 5, 2008
                                          Trial Date:             May 27, 2008
23

24

25

26

27

28

## DECLARATION OF MATEO ROMANO

I, Mateo Romano, declare as follows:

1.    I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.    I was an employee of Mattel Latin America from approximately April 1997 until approximately April 2002.  From January 2001 until April 2002, I worked out of Mattel Latin America's offices in Mexico City, Mexico.  During that time, I was not an employee of and did not otherwise work for Mattel, Inc., which is located in El Segundo, California.  Rather, Mattel Latin America was a separate subsidiary of Mattel, Inc.  My responsibilities for Mattel Latin America included the distribution of third-party products in Latin America, which included Mexico and the countries of South America.

3.    In January and February 2001, I attended the Hong Kong and New York Toy Fairs on behalf of Mattel Latin America.  At the Toy Fairs, Isaac Larian and others at MGA showed me several products for potential distribution in Latin America.  Among the various MGA products I saw were Bratz dolls.  I discussed and agreed with MGA that the products I saw would be kept confidential from Mattel, Inc. because of their potentially competitive nature.

4.    I subsequently submitted a list to Mattel, Inc. of potential items for Mattel's Latin American subsidiaries and affiliates to distribute in Latin America for the upcoming year.  Bratz dolls, among other products, was included on that list.  The list did not provide information about the Bratz dolls beyond the product name and item number.  That information was provided and input into an El Segundo system as part of the process of submitting the list for consideration by Mattel Latin America's foreign affiliates distributing in Latin America.  I did not show or provide pictures, prototypes or samples of the Bratz dolls to anyone at Mattel, Inc. or

072092440391.1

1  describe them to anyone at Mattel, Inc. beyond submitting the product name and
2  item number for inclusion on the system.

3      5.    I understand that MGA has submitted to the Court certain emails
4  between me and Martin Hitch of MGA. I referred to the Bratz and Samantha
5  products as being similar concepts in the March 5, 2001 email exchange with Mr.
6  Hitch because the Bratz and Scooter Samantha products were third-party competing
7  doll products, which meant that it was a potential conflict for Mattel Latin America
8  to distribute them. That was, in fact, the reason why Mattel Latin America
9  ultimately did not distribute these products.

10     6.    Mr. Hitch subsequently contacted me in April 2001 to ask about
11 Bratz and Scooter Samantha information which had been loaded into an El Segundo
12 computer system. This information was the same information mentioned above,
13 namely, only their product names and product numbers. As explained above and as
14 I explained to Mr. Hitch in my April 25, 2001 email, the information had been
15 entered into the system as part of the process of submitting the list for consideration
16 by Mattel Latin America's foreign affiliates distributing in Latin America. As my
17 April 25, 2001 email exchange with Mr. Hitch also states, MGA had given me "very
18 little information on the product" -- that is, Bratz -- through New York Toy Fair, and
19 I had "respected the confidentiality of [MGA's] line with the people in El Segundo"
20 -- meaning that I did not share information about Bratz beyond the product name
21 and product number with anyone at Mattel, Inc. in El Segundo, California beyond
22 submitting that information for inclusion in the system.

23     7.    At no time did Isaac Larian or anyone else at MGA inform me
24 that the designer or creator of Bratz was Carter Bryant, that Carter Bryant had any
25 involvement with Bratz, that Carter Bryant had worked with MGA while he was
26 employed by Mattel, Inc. or that Carter Bryant had worked on Bratz while he was
27 employed by Mattel, Inc. The first time I recall learning of Carter Bryant's name
28 was after reading a news article reporting that Mattel, Inc. was in a lawsuit with

1  Carter Bryant.  I had no discussions with anyone at Mattel, Inc. about Carter Bryant

2  prior to that time.

3

4         I declare under penalty of perjury under the laws of the United States of

5  America that the foregoing is true and correct.

6         Executed on March 20, 2008, at _BARCELONA_____, Spain.

7

8  _____

9  Mateo Romano

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2440391.1

-4-

# EXHIBIT K

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10               UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

| 13 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 14 | Plaintiff, | Consolidated with |
| 15 | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 16 | MATTEL, INC., a Delaware corporation, | DECLARATION OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S CONSOLIDATED |
| 17 | | OPPOSITION TO DEFENDANTS' |
| 18 | Defendant. | MOTIONS FOR PARTIAL SUMMARY JUDGMENT |
| 19 | AND CONSOLIDATED ACTIONS | Date:   April 22, 2008 |
| 20 | | Time:   10:00 a.m.<br>Place:  Courtroom 1 |
| 21 | | |
| 22 | | **Phase 1**<br>Discovery Cut-Off:      Jan. 28, 2008 |
| 23 | | Pre-Trial Conference:  May 5, 2008<br>Trial Date:               May 27, 2008 |

24

25

26

27

28

## DECLARATION OF MICHAEL MOORE

I, Michael Moore, declare as follows:

1.      I have been an employee of Mattel, Inc. since December 2000. I am currently Expert Counsel in Mattel's Law Department. I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      By making this declaration, as Mattel's legal counsel, I hereby expressly reserve all rights, duties and privileges on behalf of Mattel and my own under the applicable law of California and federal law, including, but not limited to, California Evidence Code sections 950-962, Federal Rule of Evidence 501 and California Business Professions Code section 6068(e), which requires that I "maintain inviolate the confidence, and at every peril to [me], to preserve the secrets of [my] client."

3.      I met with Cityworld's counsel Danny Yu and George Kesserling on November 24, 2003, at the offices of Bird & Bird in Hong Kong. At this meeting I received documents from Cityworld's counsel, including a copy of a contract between MGA Entertainment, Inc. and Carter Bryant dated as of September 18, 2000. To my knowledge Mattel had not received this document prior to that date. Attached as Exhibit 1 is a true and correct copy of the contract that I received from Cityworld on November 24, 2003, and which Mattel has produced in this action as Bates number M 0001547-52.

4.      Also among the documents I received was the Affirmation of Lee Shiu Cheung, which, according to the Affirmation, attached copies of "17 initial concept and [d]esign drawings of the Bratz Dolls made by [Carter] Bryant in the year 2000." To my knowledge, Mattel had not received these drawings prior to that date. Attached as Exhibit 2 is a true and correct copy of the Affirmation of Lee Shiu Cheung with exhibit "LSC-3," which are attached drawings, as I received them from

07209/2421824.1

1  Cityworld on November 24, 2003, which Mattel has produced in this action as Bates

2  number M 0001570-M 0001581 and M 0001489A-1505.

3

4         I declare under penalty of perjury under the laws of the United States of

5  America that the foregoing is true and correct.

6         Executed on March 24, 2008, at Venice, California.

7

8                                      Michael Moore

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**MGA ENTERTAINMENT**
16730 Schoenborn Street
North Hills, California 91343

Dated as of September 18, 2000

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.    **Retention as Consultant/Services:** MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.    **Term/Exclusivity:** The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.    **Ownership:**

(a)    All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

(OC00E662.DOC/2 / 10/04/2000  03:05 PM)                    1

EXHIBIT \_\_1_____

PAGE \_\_4_____

M 0001547

...ents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)     Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.   **Compensation/Costs:**

(a)     For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)     MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final.

EXHIBIT    1

PAGE    5

M 0001548

...ing on Bryant, shall constitute an account stated, and shall not be subject to any question for ...eason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to ...GA within two (2) years after the date rendered. No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)    All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent. In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)    Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis. Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable). MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)    MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales. MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell. Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant. Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.    <u>Warranties and Indemnity</u>: Bryant represents, warrants and agrees that:

(a)    he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)    neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)    the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

[CC006662.DOC/2 / 10/04/2000 03:05 PM]

3

EXHIBIT ___1___

PAGE ___6___

M 0001549

copyrights, mask work rights, trade secrets, rights of privacy, ...d other intellectual property.

(d)     he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)     he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.     **Default/Termination:**

(a)     In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)     Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.     **Confidentiality:**

(a)     Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)     Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)     Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

(0C006662.DOC/2 / 10/04/2000  03:05 PM)                        4

EXHIBIT ____1____

PAGE ____7____

M 0001550

⌐ equitable relief in the nature of injunction and to all other available relief, at law and/or in

8.     **Notices:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.     **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10.    **Services Rendered Deemed Special, etc.:** Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.    **General Provisions:**

      (a) .    This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law. Any such assignment shall not relieve such Party of its obligations hereunder.

      (b)     The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

      (c)     A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

      (d)     Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

{CC006662.DOC/2 / 10/04/2000  03:05 PM}

5

EXHIBIT ____1____

PAGE ____8____

M 0001551

(e)     This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)     This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained. No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)     Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

CARTER BRYANT

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
Social Security Number

(00005662.DOC/2 / 10/04/2000  03:05 PM)

6

EXHIBIT ___1___

PAGE ___9___

M 0001552

# EXHIBIT 2



HCA 2152/2002

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 2152 OF 2002

BETWEEN

ABC INTERNATIONAL TRADERS, INC.                            Plaintiff
doing business as MGA ENTERTAINMENT

and

(1) TOYS & TRENDS (HONG KONG) LIMITED

(2) CITYWORLD LIMITED

(3) JURG WILLI KESSELRING                                  Defendants

---

AFFIRMATION OF LEE SHIU CHEUNG

I, Lee Shiu Cheung of Room 1001, Empire Centre, 68 Mody Road, Tsimshatsui East, Kowloon, Hong Kong do solemnly, sincerely and truly affirm and say as follows: -

1.      I am the Managing Director of MGA (HK) Entertainment Ltd. (hereinafter referred to as "MGAHK"), an affiliate of ABC International Traders Inc, doing business as MGA Entertainment, the Plaintiff herein (hereinafter referred to as "MGA") and duly authorised by MGA to make this affirmation on its behalf. Unless otherwise stated, the facts and matters contained herein are true and they are either within my own personal knowledge or gleaned from books and records of MGAHK to which I have free access or supplied or related to me by Isaac Larain, the CEO of MGA. Insofar as facts and matters that do not fall within the aforesaid category, they are related to me by the respective sources stated hereinafter and are true to the best of my information and belief.

Exhibit 941
E. Lee
10, 5, 07  12 PM
Angela Dupre, CSR 7804

M 0001570

EXHIBIT 2

PAGE 10

2.  MGA was originally founded in 1979 as a consumer electronics business. However, in 1987 MGA obtained exclusive rights to sell Nintendo hand held LCD games (Game Boy) in the USA and naturally, Game Boy was an instant success which paved the way for MGA to enter the toy business.  MGA obtained licenses to deal with a series of action figures known as Power Rangers back in the 1990s which was again another mega success worldwide. This year MGA added Spider-Man: The Movie to its already existing collection of licences.  Thus one can see that MGA is a reputable company in the toy business with substantial goodwill by successfully acquiring the aforesaid licences of these "mega hits".  MGA holds a total of 17 licences and others include Hello Kitty and Coca Cola.  Now produced and shown to me marked "LSC-1" is a copy of the corporate profile of MGA downloaded from its website.

3.  Since 1987 MGA has primarily concentrated and focused its efforts in the toy industry and as at the date hereof, MGA has 8 product categories and they are smart toys, interactive dolls, handheld games, fashion dolls, youth electronics, music, licensed products and small dolls.  In the years 2000 and 2001, MGA's revenue exceeded US$93 million and US$98 million respectively.  The projected revenue for the year 2002 is US$250 million due to the success of a range of dolls known as BRATZ which is the subject matter of this action and will be dealt with in detail hereinafter.  For the year 2001, the sale of BRATZ dolls, accessories and income from licence fees accounted for 22% of the total revenue of US$160 million.  MGA forecasts that the sale of BRATZ dolls, accessories and income from licence fees for the year 2002 will account for 50% of the revenue for that year.

4.  Toys designed and marketed by MGA have been the subject of numerous awards and prizes.  However, the most successful toy designed and marketed by MGA must be the BRATZ dolls.  In the year 2001, BRATZ dolls won the

2

M 0001571

EXHIBIT ___2___

PAGE ___11___

941-2

following awards in the USA, namely, Toy of the Year Award (Winner) and People's Choice Toy of the Year (Winner).

**BRATZ DOLLS**

5. On 18 September 2000, MGA entered into an agreement to commission Mr. Carter Bryant (hereinafter referred to as "Mr. Bryant") to design and develop a line of dolls known as BRATZ (hereinafter referred to as "the Agreement"). Mr. Bryant was a graduate of Ottis College in fashion and toy design. Although BRATZ is a misspelling of the word "brats", the former was coined by MGA not to denote naughty or spoilt children but to denote hip and cool young adolescent or teenage girls. This idea of hip and cool is born out in the design of the BRATZ dolls.

6. Now produced and shown to me marked "LSC-2" is a copy of the Agreement. I crave leave to draw this Court's attention to clause 3 of the Agreement whereby all intellectual property right including copyright subsisting in the works generated by Mr. Bryant shall be owned by MGA. Pursuant and prior to the Agreement and commission, Mr. Bryant did design a range of 4 dolls known as BRATZ and did make original design drawings of the BRATZ dolls. At all material times, Mr. Bryant is a resident of and domiciled in the USA.

7. Now produced and shown to me marked "LSC-3" are copies of 17 initial concept and design drawings of the BRATZ dolls made by Mr. Bryant in the year 2000 pursuant to the Agreement. Now produced and shown to me marked "LSC-4" is a copy of a sheet of paper setting out the initial concept and idea of the BRATZ dolls by Mr. Bryant. The 4 dolls represent 4 best friends in high school who love to trade clothes, shoes and hairdos. Since these accessories are interchangeable, the 4 dolls can look different every day. And furthermore, there would be a lucrative business of supplying accessories to the owners of BRATZ dolls thus ensuring a steady stream of revenue.

3

M 0001572

EXHIBIT ___2___

PAGE ___12___

942-3

8.  Each of the 4 BRATZ dolls was given a name and a different ethnic origin so they could appeal to everyone in the targeted age group of girls between 5 to 14 years old. Chloe is Caucasian, Sasha is black, Yasmin is Hispanic and Jade is Oriental.

9.  The BRATZ dolls are the subject matter of copyright protection in the United States and copies of their registration certificates are now produced and shown to me marked "LSC-5". Samples of each of the 4 dolls in their original packaging are now produced and shown to me marked "LSC-6a to d".

10. The BRATZ dolls and accessories are marketed and sold in the following packs: -

    a)  BRATZ dolls, Beach Party doll and micro BRATZ doll- BRATZ dolls are those exhibited as "IL-6a to d", Beach Party dolls are BRATZ dolls wearing beach apparel and micro BRATZ dolls are smaller versions of BRATZ dolls. The total sales of the Bratz dolls and Micro Bratz dolls for 2001 was over US$22 million. The 1st quarter sales (FOB) for dolls this year has so far been over US$17 Million. Now produced and shown to me marked "LSC-7" is a sample of 1 micro BRATZ doll.

    b)  BRATZ fashion pack- These are separately sold apparel so that the dolls could have a wider selection of new clothing. The total sales value (FOB) of the fashion packs for the year 2001 was over US$940,000. The first quarter sales(FOB) for the said fashion packs this year has so far been over US$1.5 million. Now produced and shown to me marked "LSC-8" is a sample of a BRATZ fashion pack.

    c)  BRATZ shoe pack- These are additional shoes of different styles sold in separate packs. The total sales value (FOB) of the shoe packs for the year 2001 was over US$140,000.

4

EXHIBIT ___2___

PAGE ___13___

M 0001573

941-4

11. The BRATZ dolls and accessories are marketed and sold in the European Union, the Americas, Australia, New Zealand, Philippines, Indonesia, Israel, Japan and Switzerland.

12. The BRATZ dolls have their own website at www.bratzpack.com. The site also maintains a fan club known as BRATZ pack which maintains a list of its members. The aim of this fan club is to notify its members of new fashion trends that the BRATZ dolls will wear themselves and the launch and marketing thereof. Now produced and shown to me marked "LSC-9" are downloaded copies from the said website.

13. So far MGA has spent a total of US$7.5 million in advertising and promotion expenses in USA alone. A further sum of US$5 million has been spent in MGA's other markets worldwide as listed hereinabove.

14. As mentioned hereinbefore, the BRATZ dolls have become an instant success and they have become collectibles. Considerable media coverage have been given to these dolls and now produced and shown to me marked "LSC-10" is a selection of press cuttings and celebrity photos of the BRATZ pack.

15. Another major source of revenue generated by the BRATZ dolls is income derived from merchandising rights by granting non-exclusive licences to other companies worldwide. So far, 27 merchandise licence agreements have been granted in respect of a wide range of products including paper napkins, girls clothing, jewelry, bedding, home furnishing, stationery, toiletries, video games and footwear etc. Now produced and shown to me marked "LSC-11" is a sample of a merchandise licence agreement.

16. Furthermore, MGA has granted exclusive distribution rights of the BRATZ dolls and accessories to Bandai Inc. for a term of 3 years starting from 1 April 2001 in France, Belgium, Germany, Austria, Switzerland, Spain, UK, Portugal, Ireland, Luxembourg and Netherlands.

5

M 0001574

EXHIBIT _____2_____

PAGE _____14_____

941-5

17.

18.

19.

20.

6

M 0001575

EXHIBIT _____ 2 _____

PAGE _____ 15 _____

941-6

21.

22.

23.

24.

7

M 0001576

EXHIBIT    2

PAGE      16

941-7

25.

26.

27.

28.

29.

8

M 0001577

EXHIBIT ___2___

PAGE ___17___

9418



30.

31.

32.

9

M 0001578

EXHIBIT ___2___

PAGE ___18___

941-9



33.

34.

35.

10

EXHIBIT ___2___

PAGE ___19___

M 0001579

94210



36.

37.

38.

11

M 0001580

EXHIBIT ___2___

PAGE ___70___

941-11

39.    Finally, I state that this affidavit is made on behalf of MGA, the owner of the copyright subsisting in the artistic works exhibited as "LSC-3" herein and: -

a)    The said artistic works were made on divers dates between 1998 and 2000 in the USA;

b)    The author of the said artistic works is one Carter Bryant and at all material times he was a resident of and domiciled in the USA;

c)    Copies of the said artistic works exhibited as "IL-3" are true copies of the said artistic works.

Affirmed at the office of Mehri.    )
C.L. Chow & Machion Chan,    )
Rooms 801-807, 8th. Hang    )
Seng Bldg., 77 Des Voeux    )
Road Central, H.K    )
this 18th day of    June    2002    )

Before me,

Chan Yin Chee
Solicitor, Hong Kong SAR
C.L. Chow & Machion Chan, Solicitors

Solicitor
This affirmation is filed on behalf of the Plaintiff.

12

M 0001581

EXHIBIT _____ 2 _____

941-12

PAGE _____ 81 _____



HCA 2152/2002

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 2152 OF 2002

———————

BETWEEN

ABC INTERNATIONAL TRADERS, INC.        Plaintiff
doing business as MGA ENTERTAINMENT

and

(1)  TOYS & TRENDS (HONG KONG) LIMITED

(2)  CITYWORLD LIMITED

(3)  JURG WILLI KESSELRING        Defendants

This is the exhibit marked "LSC-3" referred to in the Affirmation of Lee Shiu Cheung
dated the 18th day of June 2002.

| Description of document | Date | No. of pages |
|---|---|---|
| Copies of 17 initial concept and Design drawings of the BRATZ Dolls made by Mr. Bryant in the year 2000 | divers | 17 |

Before me,

*Chan Yee*

Solicitor, HKSAR

Chan Yin Chee
Solicitor, Hong Kong SAR
C.L. Chow & Macksion Chan, Solicitors

DEPOSITION EXHIBIT 10

M 0001489A

EXHIBIT  2

PAGE  22