**EXHIBIT A**

# BIOGRAPHICAL MATERIAL

*-Kenneth A. Hollander-*

**CAREER**
- *Procter & Gamble, Cincinnati*
  - Research Brand Manager

- *Hallmark Cards, Kansas City*
  - Associate Research Director

- *Young & Rubicam, Chicago*
  - Research Director

- *Interpublic Group of Companies, Atlanta*
  - Vice President, Director of Communications Planning Group

- *Kenneth Hollander Associates*
  - Chief Executive Officer

**ACADEMIC INVOLVEMENT**
- *University of Georgia Graduate School of Business*
  - Lecturer
  - Chairman, Board of Advisors, Masters of Marketing Research Program
  - Distinguished Practitioner, Department of Marketing

- *Emory University Graduate School of Business*
  - Lecturer

- *Stanford University Graduate School of Business*
  - Lecturer

**PUBLICATION**
- Contributing Editor, <u>Advertising</u>, McGraw Hill

**SPEAKER**
- *American Marketing Association*
- *Association of National Advertisers*
- *Advertising Research Foundation*
- *Marketing Research Association*

**EDUCATION**
- *B.S.*   The Ohio State University
- *MBA*   The University of Missouri

EXHIBIT  A

PAGE  3

## Kenneth Hollander Deposition and/or Trial Testimony: 2003-2007

2003
US District Court of Nevada. Hartl Crushek LLP v. Erin Systems, Hartl Anlagerbau GmbH. CV:S-02-0379-LDG-LRL

US District Court of South Florida. Nitro Leisure Products v. Acushnet Company. CV:02-14008-CIV Middlebrooks/Lynch

US District Court Southern District of Texas—Houston Division. TXU v. Encore Bank. CV:H-02-3463

US District Court of South Florida—Miami Division. Doral Golf Resort & Spa v. International Doral Miami, CV:01-23425

2004
US District Court Southern District of Florida—Fort Lauderdale Division. Bank of America v. Nations Mortgage and Investments, Inc. 03-62037 CIV-ZLOCH

2005
US District Court of Nevada. R&R Partners v. Dorothy Tovar. CV-N-04-0145-LRH-VPC

US District Court Southern District of California. Votivo v. Archieligo. CV03-230L

2006
US District Court for Western District of Washington. Richard Bach and Russell v. Forever Living Products U.S., Inc., C05-0970P

US District Court Central District of California, Southern Division, Lamoon, Inc. v. Lamour Nail Products, Inc., SAV05-191 AHS (ANx).

US District Court of South Florida, Miami Division. Manpower Software v. Manpower, Inc., 04-22997.

US District Court of Nevada. Hansen Beverage v. Rockstar, Inc. CV 2:06-cv-00733

U.S. District Court for the Eastern District of North Carolina Western Division. Georgia-Pacific Corporation v. Von Drehle Corporation, 5-05-CV-478-BO(1)

2007
U. S. District Court for Central District of California Western Division. Nissan Motor Co. Ltd. and Nissan North America, Inc. v. Nissan Computer Corporation and The Internet Center, Inc., CV 99-12980 DDP (Mcx).

U.S. District Court District of New Jersey. IDT Telecom Inc. and Union Telecard Alliance, LLC v. CVT Prepaid Solutions, Inc. CV 07-1076

U.S. District Court Central District of California. TrafficSchool.Com, Inc. v. Edriver, Inc. CV06-7561 PA (Cwx)

U.S. District Court Southern District of California. Brighton Collectibles, Inc. v. Renaissance Group International and Ralph's Grocery Company, CV-06-1115 H POR

U.S. District Court Northern District of Illinois Eastern Division, Luster Products v. Intimate Beauty Corporation and V. Secret Catalogue, Inc, CV05C-4527

EXHIBIT A
PAGE 4

**EXHIBIT B**

# EXPERT REBUTTAL REPORT OF
# KENNETH HOLLANDER

March, 2008

Kenneth Hollander Associates
45431 Greenling Circle Mendocino, CA 95460
(707) 962-1648  www.kharesearch.com

EXHIBIT **B**

PAGE **5**

# TABLE OF CONTENTS

Rule 26(a)(2)(B) Disclosure ................................................................................ 1

Purpose ............................................................................................................ 2

Findings ........................................................................................................... 3

Design Principles and Standards ..................................................................... 4

Proper Universe ............................................................................................... 5

Sample of Respondents ................................................................................... 6

Protocol ........................................................................................................... 8

Screener and Questionnaire ............................................................................. 9

Period of Interviewing .................................................................................. 13

"Double Blind" Procedures ........................................................................... 13

Recapitulation of Survey Neutrality ............................................................. 14

Detailed Findings .......................................................................................... 15

Appendices

A: Resume of Kenneth A. Hollander

B: Questionnaires and Images

C: Computer Tabular Output

EXHIBIT B
PAGE 6

# RULE 26(A)(2)(B) DISCLOSURE

1. Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, this report states opinions Kenneth Hollander will express in the matter of CARTER BRYANT v. MATTEL, INC. Case # CV 04-9049 SGL (RNBx).

2. The sources considered by Kenneth Hollander in forming these opinions include the information contained in the Complaint for False Designation of Origin, Affiliation, Association, or Sponsorship, Unfair Competition, Dilution, and Unjust Enrichment; Mattel, Inc.'s Second Amended Answer in Case No, 05-2727 and Counterclaims; the Reference Manual on Scientific Evidence, Second Edition; The Manual for Complex Litigation, Third Edition; and the results of the interviews, which are the basis for this report.

3. Mr. Hollander's qualifications are found in Appendix A. I have not authored any publications in the past ten years. Although all invoices for cost components of the study reported herein have not yet been received, it is estimated that the total cost for the conduct of this study will be approximately $59,200. His fee for testimony is $450 an hour.

4. These fees are not contingent upon the outcome of either this study or of the litigation.

EXHIBIT **B**

PAGE **7**

Kenneth Hollander Associates     Page 1     March 17, 2008

## PURPOSE

5. Mattel's outside attorneys, Quinn Emanuel Urquhart Oliver & Hedges, LLP, asked the firm of Kenneth Hollander Associates to respond to certain portions of the expert reports of Robert Tonner and Mary Bergstein dated February 11, 2008, regarding purported differences between certain Carter Bryant drawings and Bratz dolls.

6. Specifically Kenneth Hollander Associates was asked to conduct survey research to determine the extent to which, if any, girls aged 8-13 recognize certain Carter Bryant drawings as looking like Bratz dolls.

7. The results of this survey are discussed in detail on the following pages where, it will be noted, every effort was made to be objective by recognizing potential, albeit inadvertent, biases and accounting for each of them beforehand.

EXHIBIT B

PAGE 8

## FINDINGS

8. The results of this survey are that a net nine out of ten respondents (91.1%) identified the Bryant drawings as Bratz dolls.

9. These results were obtained under neutral conditions: (a) neither the respondents nor the interviewers knew the purpose of the survey; (b) only non-leading questions were asked; (c) there was neither stimulus bias nor question bias; and (d) experimental controls were used to account for any anomalous influences.

10. The basis for my opining about these findings are my qualifications and experience, which include conducting or critiquing more than 100 intellectual property surveys.

_____          3·17·08
**Kenneth A. Hollander**                 **Date**

EXHIBIT B
PAGE 9

# DESIGN PRINCIPLES AND STANDARDS

11. The present survey was designed and conducted in accordance with the principles and standards delineated in the <u>Manual for Complex Litigation, Third Edition</u>, 1995, prepared for the Federal Judicial Center. These principles provide the best assurance that the data collected are valid and can be relied upon to draw conclusions regarding consumers' opinions. The principles provide that:

- The proper universe(s) be identified and examined.

- A representative sample be drawn from each such universe.

- The plan for selecting the samples be prepared in accordance with generally accepted standards of procedure in the field.

- The questionnaire for gathering this relevant information be prepared in accordance with generally accepted standards of procedure.

- The persons designing and conducting the investigation be qualified to perform their tasks.

- The interviewers be well trained and have no knowledge of the pending litigation or purposes for which the data would be used.

- The interviewing be conducted in accordance with generally accepted standards of procedure in the field.

- The questioning of respondents be correct and unbiased.

- Once gathered, the data be accurately analyzed and reported.

EXHIBIT  B
PAGE  10

## PROPER UNIVERSE

12. The <u>Reference Manual on Complex Litigation, Second Edition</u>, West Group, St. Paul, MN, 2000, prepared for the Federal Judicial Center, states on page 239, "One of the first steps in designing a survey or in deciding whether an existing survey is relevant is to identify the target population (or universe). The target population consists of all elements (i.e., objects, individuals, or other social units) whose characteristics or perceptions the survey is intended to represent."

13. With respect to this issue, we understand that an intended audience for Bratz dolls is females aged 8-13.

14. Accordingly, we have defined the proper universe for this survey as follows:

   A. Females aged 8-13,

   B. Residing in the United States,

   C. Who have had a Bratz doll (among others) bought for them within the past 12 months.

   D. And, to avoid their knowledge base and opinions being influenced, no member of their immediate household works for:

      (1) A marketing or marketing research firm

      (2) An advertising or public relations agency

      (3) A law firm

      (4) A newspaper, radio or TV station

      (5) A manufacturer, distributor, or retailer of children's dolls

EXHIBIT B
PAGE 11

## SAMPLE OF RESPONDENTS

15. The <u>Reference Manual</u> also states on page 240 that "The surveyor's job generally is easier if a complete list of every eligible member of the population is available...so that the sampling frame lists the identity of all members of the target population." A sample drawn at random from such a list would be a true probability sample.

16. A complete list of all members of this proper universe was not available, which means that a true probability sample was not possible. Therefore, a non-probability sample was used for this investigation.

17. Non-probability samples are and have been used to make consequential academic and business decisions and are also accepted into evidence in Federal Courts throughout the country.

18. In this case, the Internet was used as the preferred interviewing medium, not only because it has fewer drawbacks than the alternatives but also because it has significant advantages, such that it is fast becoming the preferred medium whenever appropriate. In fact, according to the leading marketing research publication, "Inside Research," one-third of all survey research in 2006 was conducted via the Internet and this percentage will continue to increase.

19. Given such widespread adoption, the use of the Internet as an interviewing medium affords the opportunity to (a) locate and interview a representative sample of the proper universe in a timely and efficient manner, (b) eliminate any potential

EXHIBIT B
PAGE 12

interviewer biases, (c) expose the exact same stimuli to specific respondents in exactly the same manner, and (d) allow respondents to complete a survey at a time and place of their choosing and, thus, to do so in a more thoughtful manner than if it were a time and place of the researcher's choosing.

20. With these considerations in mind, the sample for this survey comprised females aged 8-13 living in households recruited by the Internet interviewing firm of Greenfield Online; all met the screening requirements previously discussed.

21. Greenfield Online is America's largest exclusive Internet interviewing company, is widely respected, and has been used before by Kenneth Hollander Associates.

22. We therefore assert that the beliefs of the Greenfield Online respondents meeting this survey's screening requirements are reasonably representative of all USA respondents meeting these same requirements.

23. The protocol for this survey was to recruit and interview 410 female respondents aged 8-13: 203 were exposed to certain Bryant drawings and another 207 were exposed to certain uncontested drawings.

24. The rationale for this survey design is explained in the following section of the report headed, "Protocol."

EXHIBIT B
PAGE 13