THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Ste. 3400, Los Angeles, CA 90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

KENNETH PLEVAN (admitted *pro hac vice*)
(kplevan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square, New York, NY 10046
Tel.: (212) 735-3000 / Fax: (212) 735-2000

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>MGA PARTIES' [REDACTED] REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Hearing Date: April 22, 2008; Time: 10:00 a.m. |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ..................................................................................................... 2

I.   MATTEL'S OPPOSITION CONFIRMS THAT ITS CLAIMS ARE STALE ........................................................................................ 2

  A.   Mattel Indisputably Knew or Should Have Known of the Facts Underlying Its Current Claims No Later Than March of 2002 ............ 4

  B.   Mattel's Inquiry Notice Theory Is Factually And Legally Unsupported .................................................................................. 7

  C.   There is No Tolling For Fraudulent Concealment Or The Stay ......... 12

  D.   Mattel Concedes It Cannot Satisfy the Mistake/Ignorance Requirement for "Relation-Back" of Claims Against New Parties.... 14

II.  MATTEL ONLY CONFIRMS ITS STATE-LAW CLAIMS ARE PREEMPTED .................................................................................. 16

  A.   Mattel Fails to Save its Conversion Claim from Preemption ............. 17

    1.   Mattel's Claim that the MGA Parties Have Converted Bryant's Ideas/Concepts Fails ................................. 18

    2.   Mattel Provides No Evidence that the MGA Parties Converted Any Tangible Material of Any Value ..................... 19

  B.   Mattel Did Not Save Its Intentional Interference Claim From Preemption ........................................................................... 20

  C.   Mattel's Unfair Competition Claim is Preempted to the Extent it is Based on Copyright Infringement ......................................... 21

III. MATTEL CONCEDES AWAY ITS UNFAIR COMPETITION CLAIM ........................................................................................... 22

  A.   Mattel Conceded The Fraudulent Prong Of Its Unfair Competition Claim .................................................................... 22

  B.   Mattel Effectively Conceded the Unfair Prong of its Claim .............. 22

  C.   Mattel Merely Confirmed the Unlawful Prong of Its Claim Fails ..... 23

  D.   Mattel Cannot Support its Common Law Unfair Competition Claim .................................................................... 24

i

IV.  MATTEL'S OPPOSITION CONFIRMS THAT THE MGA PARTIES DID NOT INTENTIONALLY INTERFERE WITH BRYANT'S CONTRACT ........................................................................ 25

   A.  Mattel Created No Genuine Issue That The MGA Parties Lacked the Intent to Induce Bryant to Breach His Contract ............... 25

   B.  The MGA Parties Did Not Induce Bryant to Leave Mattel and Therefore Could Not Be the Cause of His Alleged Breach ............... 28

V.  MATTEL CREATED NO GENUINE ISSUE TO SAVE ITS AIDING AND ABETTING CLAIMS AGAINST THE MGA PARTIES ........................................................................ 29

VI.  MATTEL IS NOT ENTITLED TO RULE 56(F) RELIEF .......................... 30

CONCLUSION ........................................................................ 30

ii

MGA Parties' [REDACTED] Reply in Further Support of Their Motion for Partial Summary Judgment – Case No. CV 04-9049 SGL (RNBx)

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

Altera Corp. v. Clear Logic, Inc.,
  424 F.3d 1079 (9th Cir. 2005)........................................................... 21

American Home Shield of California, Inc. v. Fidelity National
  Home Warranty Co.,
  No. D039241, 2003 WL 21085278 (Cal. Ct. App. May 14, 2003) ............... 29

Ananda Church of Self- Realization v. Massachusetts Bay Insurance Co.,
  95 Cal. App. 4th 1273 (2002)........................................................... 19

Bittaker v. Woodford,
  331 F.3d 715 (9th Cir. 2003)........................................................ 10, 11

Brewer-Giorgio v. Producers Video, Inc.,
  216 F.3d 1281 (11th Cir. 2000)......................................................... 16

Butler v. San Diego District Attorneys Office,
  No. 01CV2087 BTM(JMA),
  2007 WL 935711 (S.D. Cal. Feb. 27, 2007) ...................................... 11

Casey v. U.S. Bank National Association,
  127 Cal. App. 4th 1138 (2005)......................................................... 29

Castle v. Wells Fargo Financial, Inc.,
  No. C 06-4347 SI,
  2007 WL 1105118 (N.D. Cal. Apr. 10, 2007) .................................... 13

Cavalier v. The Jim Henson Co.,
  No. 99-10175 CM(MANX),
  2000 WL 33968969 (C.D. Cal. Apr. 3, 2000) .................................... 18

Chasteen v. UNISIA JECS Corp.,
  216 F.3d 1212 (10th Cir. 2000)......................................................... 10

Chevron Corp. v. Penzoil Co.,
  974 F.2d 1156 (9th Cir. 1992)........................................................... 11

Country Road Music, Inc. v. MP3.com, Inc.,
  279 F. Supp. 2d 325 (S.D.N.Y. 2003) ............................................... 16

Davis v. Johnson,
  CVF03-5935 LJO SMS,
  2007 WL 1430089 (E.D. Cal. May 14, 2007)...................................... 22

Dielsi v. Falk,
  916 F. Supp. 985 (C.D. Cal. 1996)..................................................... 18

MGA Parties' [REDACTED] Reply in Further Support of Their Motion for Partial Summary Judgment --
Case No. CV 04-9049 SGL (RNBx)

1   Eichman v. Fotomat Corp.,
        880 F.2d 149 (9th Cir. 1989) .................................................................. 12
2
    Family Home & Finance Center, Inc. v. Federal Home Loan Mortgage Corp.,
3       461 F. Supp.2d 1188 (C.D. Cal. 2006) ................................................. 26

4   Foster v. Arcata Associates, Inc.,
        772 F.2d 1453 (9th Cir. 1985), overruled on unrelated grounds by,
5       Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262 (9th Cir. 1991) ............... 30

6   Fox v. Ethicon Endo-Surgery, Inc.,
        35 Cal. 4th 797 (2005) .................................................................... 5, 11
7
    Friedman v. Estate of Presser,
8       929 F.2d 1151 (6th Cir. 1991) .............................................................. 13

9   Garamendi v. SDI Vendome S.A.,
        276 F. Supp. 2d 1030 (C.D. Cal. 2003) ............................................. 11, 12
10
    Garman v. Sterling Publishing Co., Inc.,
11      No. C-91-0882 SBA,
        1992 WL 12561293 (N.D. Cal. Nov. 5, 1992) ............................ 17, 21, 22
12
    Gonsalves v. Kaiser Sand & Gravel Co., Inc.,
13      Case No. No. C 92-3561 BAC,
        1994 WL 125211 (N.D. Cal. Mar. 24, 1994) .......................................... 6
14
    Harper & Row Publishers. v. Nation Enterprises
15      723 F.2d 195 (2d Cir. 1983) ............................................................... 19

16  Hollingsworth Solderless Terminal Co. v. Turley,
        622 F.2d 1324 (9th Cir. 1980) ............................................................ 25
17
    Hynix Semiconductor Inc. v. Rambus Inc.,
18      Nos. CV-00-2095 RMW, C-05-02298 RMW, C-05-00334 RMW,
        2007 WL 3284060 (N.D. Cal. Nov. 2, 2007) ......................................... 12
19
    Idema v. Dreamworks, Inc.,
20      162 F. Supp.2d 1129 (C.D. Cal. 2001) ............................................. 19, 20

21  Intermedics, Inc. v. Ventritex, Inc.,
        775 F. Supp. 1258 (N.D. Cal. 1991) .................................................... 10
22
    Intermedics, Inc. v. Ventritex, Inc.,
23      822 F. Supp. 634 (N.D. Cal. 1993) ..................................................... 10

24  Javier H. v. Garcia-Botello,
        239 F.R.D. 342 (W.D.N.Y. 2006) ...................................................... 13
25
    Jolly v. Eli Lilly & Co.,
26      44 Cal. 3d 1103 (1988) .................................................................... 11

27  Kabehie v. Zoland,
        102 Cal. App. 4th 513 (2002) ............................................................ 20
28

1   Kline v. Turner,
        87 Cal. App. 4th 1369 (2001)..................................................... 9
2
3   Kling v. Hallmark Cards Inc.,
        225 F.3d 1030 (9th Cir. 2000)................................................... 5
4   Kodadek v. MTV Networks, Inc.,
        152 F.3d 1209 (9th Cir. 1998)................................................. 22
5
6   Korody-Colyer Corp. v. General Motors Corp.,
        828 F.2d 1572 (Fed. Cir. (Cal.) 1987)................................... 13
7   Lanard Toys Ltd v. Novelty Inc.,
        511 F. Supp. 2d 1020 (C.D. Cal. 2007) ........................... 21, 22
8
9   Lipman v. Bhend,
        213 Cal. App. 2d 474 (1963)................................................... 13
10  Louisiana-Pacific Corp. v. ASARCO, Inc.,
        5 F.3d 431 (9th Cir. 1993)..................................................... 15
11
12  Maheu v. CBS, Inc.,
        201 Cal. App. 3d 662 (1988)................................................. 19
13  Mangini v. Aerojet-General Corp.,
        230 Cal. App. 3d 1125 (1991).................................................. 3
14
15  Migliori v. Boeing North American, Inc.,
        114 F. Supp. 2d 976 (C.D. Cal. 2000) .................................. 12
16  Miguel v. Country Funding Corp.,
        309 F.3d 1161 (9th Cir. 2002)................................................ 16
17
18  Motown Record Co. v. Hormel,
        657 F. Supp. 1236 (C.D. Cal. 1987) ........................... 17, 20, 22
19  Norgart v. Upjohn Co.,
        21 Cal. 4th 383 (1999).......................................................... 11
20
21  Ortega v. Kmart Corp.,
        26 Cal. 4th 1200 (2001).......................................................... 5
22  Peterson v. Dein,
        No. C050530,
23      2006 WL 3020935 (Cal. App. Oct. 25, 2006)........................ 12
24  Plessinger v. Castleman and Haskell,
        838 F. Supp. 448 (N.D. Cal. 1993) ...................................... 28
25
26  PMC, Inc. v. Saban Entertainment, Inc.,
        45 Cal. App. 4th 579 (1996).................................................. 21
27  Polar Bear Products, Inc. v. Timex Corp.,
        384 F.3d 700 (9th Cir. 2004).................................................. 5
28

Posdata Co. Ltd. v. Kim,
    No. C-07-0252504 RMW,
    2007 WL 1848661 (N.D. Cal. June 27, 2007) ................................. 25

Regents of University of California v. Superior Court.,
    20 Cal. 4th 509 (1990). ...................................................................... 12

Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,
    477 F.3d 383 (6th Cir. 2007) ............................................................. 15

Rokos v. Peck,
    182 Cal. App. 3d 604 (1986) .............................................................. 18

Ruskin v. Sunrise Management, Inc.,
    506 F. Supp. 1284 (D. Colo. 1981) .................................................... 16

San Jose Construction, Inc. v. S.B.C.C., Inc.,
    155 Cal. App. 4th 1528 (2007). .......................................................... 24

Selph v. Nelson, Reabe and Snyder, Inc.,
    966 F.2d 411 (8th Cir. 1992). ............................................................. 13

Silicon Image, Inc. v. Analogix Semiconductor, Inc.,
    No. C-07-0635 JCS,
    2007 WL 1455903 (N.D. Cal. May 16, 2007) ............................ 21, 26

Smith & Hawken, Ltd. v. Gardendance, Inc.,
    No. C04-1664 SBA,
    2004 WL 2496163 (N.D. Cal. Nov. 5, 2004). ................................... 23

Snapp & Associates Insurance Services, Inc. v. Malcolm Bruce
    Burlingame Robertson,
    96 Cal. App. 4th 884 (2002) ............................................................... 12

Soliman v. Philip Morris Inc.,
    311 F.3d 966 (9th Cir. 2002). ........................................................ 8, 11

Southern Nevada Shell Dealers Association v. Shell Oil Co.,
    725 F. Supp. 1104 (D. Nev. 1989) .............................................. 15, 22

Streit v. American Drug Stores, Inc.,
    B154854,
    2003 WL 932396 (Cal. Ct. App. Mar. 10, 2003) ............................. 15

Summit Machine Tool Manufacturing Corp. v. Victor CNC Systems, Inc.,
    7 F.3d 1434 (9th Cir. 1993). .............................................................. 21

Sybersound Records, Inc. v. UAV Corp.,
    No. 06-55221,
    2008 WL 509245 (9th Cir. Feb. 27, 2008). ................................. 23, 24

In re Syntex Corp. Securities Litigation,
    95 F.3d 922 (9th Cir. 1996). .............................................................. 14

vi

Topolos v. Caldewey,
  698 F.2d 991 (9th Cir. 1983)................................................................. 17

Troystar Investments, Inc. v. Sabat,
  No. G038593,
  2008 WL 316218 (Cal. Ct. App. Feb. 6, 2008)............................... 25

Unisys Corp. v. Varilease Technology Group, Inc.,
  No. CIV 98-2251 PHXRGSJW,
  1999 WL 34782848 (D. Ariz. 1999)......................................... 21, 22

United States v. Randall & Blake,
  817 F.2d 1188 (5th Cir. 1987)............................................................ 14

United States v. Tri-State Insurance Co. of Minnesota,
  946 F.2d 581 (8th Cir. 1991).............................................................. 7

Wood v. Santa Barbara Chamber of Commerce, Inc.,
  705 F.2d 1515 (9th Cir. 1983)............................................................ 11

Worth v. Universal Pictures, Inc.,
  5 F. Supp. 2d 816 (C.D. Cal. 1997)................................................... 20

**STATUTES**

Cal. Penal Code § 641.3 .......................................................................... 23

15 U.S.C. § 13(c) ....................................................................................... 23

17 U.S.C. § 106 .......................................................................................... 20

**MISCELLANEOUS**

3 B.E. Witkin, California Procedure: Actions (4th ed. 1996) ................... 5

Restatement (Second) Torts § 766, cmt. n ............................................... 28

vii

MGA Parties' [REDACTED] Reply in Further Support of Their Motion for Partial Summary Judgment –
Case No. CV 04-9049 SGL (RNBx)

## PRELIMINARY STATEMENT

In their opening brief, the MGA Parties established that Mattel's claims were time-barred, preempted, and failed on their merits. Mattel's meandering opposition does nothing to change that, even after Mattel repeatedly "corrected" its brief and supporting papers to make extensive substantive changes days after the deadline to file its brief. If anything, Mattel's opposition is more noteworthy for what it concedes or ignores than for what it argues. For example, Mattel fails to defend the fraudulent portion of its statutory unfair competition claim, effectively conceding it. Mattel also effectively concedes the unfair portion of that same claim by admitting that it had to plead and establish an antitrust violation to maintain that claim, yet no such claim is pled. Even where Mattel purports to contest a point, it makes fatal concessions. Thus, for example, Mattel contends that it is entitled to "relation-back" but admits that it knew the identities and roles of the MGA Parties in November of 2003 – before the first pleading in the '04 Action was filed – and thus, effectively concedes that it is not entitled to "relation-back", as this doctrine only applies in the case of mistake or ignorance of the identities of the newly-added defendants.

First, Mattel's claims are time-barred. Mattel did not create a genuine issue that it was on notice of its claims as early as January of 2001 but no later than March of 2002. Thus, all of its claims were stale years before it filed them in November of 2006. Mattel also failed to show that it was entitled to "relation-back" to the '04 Complaint, which is the only way that any of its claims could be revived because it admittedly knew all the facts surrounding its present claims before any pleading was ever filed and it cannot show the requisite mistake or ignorance. Indeed, Mattel has no substantive defense of the fact that "relation-back" is facially inapplicable to Larian and MGA (HK) as they were never parties to any action before Mattel filed its counterclaims. With respect to Mattel's infringement claim, Mattel failed to overcome the caselaw that holds that a copyright claim cannot be revived by relation-back where it was stale before plaintiff ever registered the copyright. As Mattel knew the facts surrounding its infringement claim three years before it registered its

MGA Parties' [REDACTED] Reply in Further Support of Their Motion for Partial Summary Judgment – Case No. CV 04-9049 SGL (RNBx)

1

1  copyrights, under any theory, that claim is time-barred. (Section I, infra.)

2      Second, Mattel's state law claims are plainly preempted.  Although Mattel strives
3  mightily to manufacture an "extra element" to avoid preemption, all that Mattel
4  accomplishes is undercutting its other claims.   There simply is no avoiding that the
5  gravamen of all of Mattel's claims is for ownership of Bryant's original works, which are
6  squarely within the scope of the Copyright Act, and thus preempted.  (See Section II, infra.)

7      Third, Mattel concedes away its unfair competition claims, as it does not defend the
8  fraudulent prong, admits it did not plead the requisite elements for its unfair prong, and
9  failed to establish any genuine issue or legal basis for its unlawful prong. (Section III, infra.)

10      Fourth, Mattel's intentional interference with contract claim fails as Mattel did not
11  create a genuine issue that the MGA Parties: (i) actually knew and intended that their
12  conduct would cause Bryant to breach his contract with Mattel (they did not); or (ii) induced
13  Bryant to breach his contract (it is undisputed he approached MGA).  (See Section IV, infra.)

14      Finally, Mattel's aiding and abetting claims fail because: (i) as a matter of law, Bryant
15  neither owed nor breached a duty; (ii) the conduct that Mattel challenges is not actionable
16  under California law; and (iii) there is no substantial assistance. (See Section V, infra.)

17  ## ARGUMENT[1]

18  ## I.   MATTEL'S OPPOSITION CONFIRMS THAT ITS CLAIMS ARE STALE

19      The MGA Parties have shown that Mattel was on inquiry notice of its claims as early
20  as January 2001 and no later than March 2002; some of Mattel's claims accrued when

21  ---
22  [1]   The MGA Parties refer the Court to their and Bryant's summary judgment papers and opposition for the facts relevant to the arguments herein and incorporate them by reference. (See MGA MSJ at 4-15; Bryant MSJ at 3-8; MGA Opp'n passim; Bryant Opp'n § II.) All "MGA RF"
23  and "Bryant RF" references are to MGA Parties' Reply to [Corrected] Mattel, Inc.'s Statement of Genuine Issues and Carter Bryant's Response to Mattel, Inc.'s Statement of Genuine Issues,
24  respectively. All "MGA OF" and "Bryant OF" references are to MGA Parties' Opposition to Mattel, Inc.'s Separate Statement of Uncontroverted Facts and Conclusions of Law and Bryant's
25  Statement of Genuine Issues in Opposition to Mattel's Motion for Partial Summary Judgment, respectively. All "Mattel OF" and "Mattel CB OF" references are to [Corrected] Mattel, Inc.'s
26  Statements of Genuine Issues Regarding MGA Parties' and Bryant's Statements of Uncontroverted Facts, respectively. All "MGA UF", "Mattel UF" and "Bryant UF" references are to MGA
27  Parties', Mattel's, and Bryant's Separate Statements of Uncontroverted Facts and Conclusions of Law, respectively.

28

MGA Parties' [REDACTED] Reply in Further Support of Their Motion for Partial Summary Judgment – Case No. CV 04-9049 SGL (RNBx)

2

1 | Bryant left Mattel in October 2000. (See MGA MSJ at 6-11, 17-20; MGA Opp'n at 22-24.)

2 |     In response, Mattel tries to dissect the big picture of the evidence presented into tiny
3 | fragments, striving to show that each of those fragments would be insufficient to place
4 | Mattel on notice of its claims. That exercise, however, is fruitless as the evidence must be
5 | viewed in its totality. Mangini v. Aerojet-General Corp., 230 Cal. App. 3d 1125, 1152-1153
6 | (1991). Taken together, it was ample to place Mattel on inquiry notice. Mattel's longest
7 | surviving claim thus expired no later than March 2005 (MGA MSJ at 20-28 & MGA Opp'n
8 | at 24-26),[2] and Mattel's claims were dead on arrival when brought in November 2006.
9 | While Mattel argues that its claims should be revived by "relation-back" to its '04
10 | Complaint, the MGA Parties already showed that this theory is unavailable to Mattel as it
11 | failed to satisfy both the "mistake" requirement under Rule 15(c) and the "ignorance"
12 | requirement under California "Doe" defendant procedure. (MGA MSJ at 29-33; MGA
13 | Opp'n at 24-27.) As Mattel admits that it knew the facts underlying its current claims
14 | against the MGA Parties as of November 2003, its protestations that it did not know the full
15 | extent of the MGA Parties' liability before it filed its '04 Complaint are irrelevant.[3]

16 |     Finally, Mattel's arguments concerning alleged "fraudulent concealment" of the
17 | underlying facts and the intervening stay of proceedings from March 2005 until May 2006
18 | are similarly irrelevant. The former provides no relief to Mattel because, as the MGA
19 | Parties already showed, Mattel was aware of enough facts to place it on inquiry notice

---

[2]     Even assuming the latest possible inquiry notice in March 2002, Mattel's claims governed by two- and three-year statutes of limitations expired by March 2005. Mattel's sole claim governed by a four-year statute of limitations for statutory unfair competition (asserted only against Larian and MGA (HK)) expired by October 2004 because this claim accrues upon the underlying wrong, which in this case occurred when Bryant left Mattel in October 2000. (MGA MSJ at 27.)

[3]     Oddly, Mattel argues that the MGA Parties "assert[ed]" that Mattel's claims relate back to MGA's complaint or Mattel's answer in the '05 Action" (Mattel Opp'n at 39:17-18) and then argues that "relation-back" to the '05 Action does **not** apply. (Mattel Opp'n at 39-41.) In fact, the MGA Parties actually argued **against** relation back to the '05 Action (and relation back to the '04 Action as well). (MGA MSJ at 33-34.) The MGA Parties raised "relation-back" to the '05 Action only because the Court raised "relation-back" as an alternative to "relation-back" to the '04 Complaint. (See Jan. 12, 2007 Order at 14 n.2.) In any event, as the MGA Parties already explained, "relation-back" of Mattel's claims against MGA (HK) and Larian to the '05 Action is unavailable to Mattel as a matter of law as they were never parties to that action. (See MGA MSJ at 33-34.)

---

1  despite the alleged concealment; moreover, the purported "concealment" cited by Mattel is

2  of its own making, as the underlying facts show nothing but MGA's response to Mattel's

3  threatening letter (written by Quinn Emanuel), which demanded that the MGA Parties cease

4  and desist any references to Mattel or its intellectual property alongside MGA's BRATZ.

5  The latter, in turn, is of no help to Mattel because even if the Court were to account for the

6  year of the stay, that would only push the filing of Mattel's claims back to November 2005,

7  at which point Mattel's claims still would be untimely, as they expired no later than March

8  2005. And, as shown below, that stay did not bar the filing of pleadings, as Mattel filed its

9  First Amended Answer in the '05 Action in September 2005, during the middle of the stay.

10  Thus, it could have asserted counterclaims against MGA, but affirmatively chose not do so.

### A.   Mattel Indisputably Knew or Should Have Known of the Facts Underlying Its Current Claims No Later Than March of 2002

The clock on many of Mattel's claims started ticking as soon as Bryant left Mattel in October of 2000, as Mattel had all the evidence it needed to know that Bryant associated with MGA while in Mattel's employ.[4] Mattel concedes that its executives suspected that Bryant was leaving Mattel for a competitor.[5] If Mattel had checked its phone records, which Mattel admits was a regular practice of its security department, it would have known who that competitor was, as "Bryant placed dozens of calls to MGA from his extension at Mattel, and sent faxes to MGA from the BARBIE COLLECTIBLES fax line" in September 2000. (Mattel Opp'n at 6; see also MGA Opp'n at 22, Mattel UF ¶ 8, MGA RF ¶ 8.) Mattel thus

---

[4]   Mattel's claims for aiding and abetting a fiduciary duty and duty of loyalty, intentional interference, conversion, and statutory unfair competition all accrued in October 2000, when Bryant left Mattel for MGA because these claims accrue upon the occurrence of the underlying wrong. (MGA MSJ at 21, 25-26, 27; MGA Opp'n at 25 n.19, 26 n.23.) As explained herein, the fraudulent concealment theory is unavailable to Mattel to toll the statute of limitations for these claims against the MGA Parties. (Infra at 12; see also MGA MSJ at 25 n.30; MGA Opp'n at 22 n.16.)

[5]   (Mattel OF ¶ 29 (former Marketing Manager for Mattel's Barbie Collectibles ███████ ███████████████████████████████ see also Mattel Opp'n at 23 (acknowledging "suspicions that Bryant was going to a competitor", despite Bryant's alleged assurances that he was not); cf. MGA Opp'n at 22 n.16 (collecting authority demonstrating that fraudulent concealment does not toll the statute of limitations where plaintiff suspects the truth despite the alleged concealment).)

---

1   constructively knew that Bryant went to MGA.[6]

2       Barely three months later, Mattel attended toy fairs in New York, Hong Kong, and

3   Tokyo, where it encountered new dolls called BRATZ presented by MGA.[7] Importantly,

4   these displays and subsequent publicity included BRATZ drawings from Bryant's sketches,

5   which serve as the basis of Mattel's current claims against the MGA Parties. (MGA Opp'n

6   at 23, citing MGA OF ¶¶ 153, 157; id. ¶¶ 154-5.)[8] As Mattel claims, one look at these

7   displays and the subsequent final product upon its entry into the market raised suspicions

8   concerning alleged similarities between BRATZ and Mattel's own products, some of which

9

10  [6]     3 B.E. Witkin, California Procedure: Actions § 602, p. 773 (4th ed. 1996) (for statute of limitations, "constructive and presumed notice or knowledge are equivalent to knowledge. So,

11  when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation …, the statute

12  commences to run"); Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807-8 (2005) (for inquiry notice, "plaintiffs are charged with presumptive knowledge of an injury if they have … 'the

13  opportunity to obtain knowledge from sources open to [their] investigation'"); Ortega v. Kmart Corp., 26 Cal. 4th 1200, 1209 (2001) (owner has constructive knowledge of dangerous condition

14  on premises "if he knew or by the exercise of reasonable care could have discovered" condition).

    [7]     While Mattel denies its attendance at the Hong Kong Toy Fair claiming (falsely) it was
15  attended only by a representative for Mattel's Mexican subsidiary (Mattel OF ¶ 31), Mattel was present at the New York Toy Fair, as it exhibited its own products there. (See Mattel OF ¶ 34 (no

16  dispute as to Exs. 42 & 43 (Mattel's own materials for products exhibited at the New York Toy Fair in February 2001); no dispute as to Ex. 10 to Russell Decl.) Mattel also cannot deny it

17  attended the Tokyo Toy Fair and saw the BRATZ there, as Mattel filmed the BRATZ booth in Tokyo in February 2001. (MGA OF ¶¶ 154-55.) It was also at these fairs that Mattel was offered an

18  opportunity to sell BRATZ and shortly thereafter declined to do so, asserting that BRATZ were too similar to some of its own products. (MGA MSJ at 6-7, 18; MGA Opp'n at 23; see also

19  Declaration of Martin Hitch dated April 1, 2008 at ¶ 6 (instructions precluding distribution of the BRATZ as "too similar" to Mattel's own products came from Mattel, Inc.'s offices in El Segundo,

20  California).)  Although Mattel attempts to suggest a distinction between Mattel, Inc. and Mattel Mexico correspondence between Mateo Romano and Martin Hitch reveals that Mattel, Inc. directly

21  controlled Mattel Mexico's affairs. (See MGA RF ¶ 126.)

    [8]     This public display of the BRATZ drawings undercuts Mattel's argument that its copyright
22  infringement claim could not accrue until Mattel obtained Bryant's drawings in November 2003 (Mattel Opp'n at 44-45), as those publicly displayed and published drawings were sufficient for

23  Mattel to perform the required substantial similarity analysis, especially considering, as discussed below, that Mattel was on notice that the BRATZ drawings were Bryant's work. For this reason,

24  Mattel's attempt to claim lack of required information at the time it attended the 2001 toy fairs and on this basis distinguish Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004)

25  (plaintiffs were on notice of their infringement claim via attendance at a trade show) (Mattel Opp'n at 45-46), also fails. In this connection, Mattel's reliance on the laches analysis in Kling v.

26  Hallmark Cards Inc., 225 F.3d 1030 (9th Cir. 2000), is similarly unavailing, as the Kling court expressly distinguished its analysis from that required for statute of limitations, observing that a

27  copyright infringement claim may accrue earlier than the starting point for laches. Id. at 1038-39.

28

**[REDACTED]**

1
2 ▮. (MGA MSJ at 8, 18-19; MGA Opp'n at 23; <u>accord</u> Mattel OF ¶¶ 40-41
3 (Mattel's executives and marketing saw the BRATZ in June-July 2001), 47-48 (when
4 Mattel's executives saw the BRATZ, they immediately concluded that there were
5 similarities between them and Mattel's own products).) Given that in Mattel's world, it
6 takes "▮▮▮▮▮ (MGA RF ¶ 127),[9] and that
7 Bryant left Mattel to design his own line of dolls (MGA UF ¶ 27), Bryant's departure to
8 work for MGA only three months earlier should have placed him on top of the list of
9 suspects.
10      And, in fact, it did. As Mattel confirms, Mattel investigated Bryant, along with MGA
11 and Isaac Larian, as potential suspects in suspected infringement no later than March 2002.
12 (<u>See, e.g.</u>, Mattel OF ¶¶ 57-59, 112-13; <u>see also</u> MGA UF ¶¶ 35-36 & MGA OF ¶¶ 154,
13 156-57, 160.)[10] Indeed, as speculations at Mattel that Bryant was the BRATZ's creator
14 reached fever pitch – starting with June 2001, when BRATZ were released in Spain, and
15 continuing into early fall of 2001, when BRATZ appeared on the U.S. market (MGA MSJ
16 at 7-9; MGA Opp'n at 23; <u>see also</u> RF ¶¶ 39-43) – Mattel could not help investigating
17 Bryant. Especially since ***Mattel had been already told that it was Bryant that created the***
18 ***BRATZ*** by "an MGA vendor [who] innocently revealed Bryant's role as the creator of

19 [9]      Mattel's reliance on MGA's expert Robert Tonner that it is possible to make a new doll in
20 just a couple of months (Mattel Opp'n at 24) does not help Mattel here because Mattel's inquiry notice is formed out of <u>Mattel's</u> beliefs, not MGA's experts. <u>See Gonsalves v. Kaiser Sand &</u>
21 <u>Gravel Co., Inc.</u>, 1994 WL 125211, at **3-4 (N.D. Cal. Mar. 24, 1994) ("It is plaintiff's belief or suspicion of a connection between his injury and another's wrongdoing - not the confirmation of
22 the belief or suspicion - that is the crucial date for the commencement of the limitations period under the delayed discovery rule.") (emphasis added). Here, Mattel believed that BRATZ could not
23 have been created in the three months following Bryant's departure from Mattel; thus, Mattel's own beliefs ▮▮▮ placed Mattel on notice that BRATZ
24 were created some time prior to Bryant's departure from Mattel.
   [10]     Mattel's awareness of Larian's role in the BRATZ enterprise since at least February 2001,
25 as well as Mattel's March 2002 investigation of Larian's involvement in suspected infringement on Mattel's intellectual property, negates Mattel's arguments that it was not on notice of Larian's
26 alleged wrongdoing until much later. (<u>See</u> Mattel Opp'n at 26-27 (relying on authorities that have nothing to do with California law).) Indeed, as the record shows, Mattel wrote directly to Larian in
27 February 2002, demanding that he remove references to Mattel's products appearing alongside references to BRATZ on one of the BRATZ fan sites. (MGA Opp'n at 24, citing MGA OF ¶ 82.)
28

1  Bratz on a Bratz fan site" in March 2002. (Mattel Opp'n at 10.) Mattel was monitoring that

2  site at the time, as on February 7, 2002, Mattel (through its current counsel, Quinn Emanuel)

3  wrote MGA a threatening letter, demanding removal of references to Mattel's products from

4  that site. (MGA Opp'n at 24, citing MGA OF ¶ 82.)

5      Notably, it was in response to Mattel's February 7, 2002 letter that MGA instituted an

6  internal policy that Mattel dramatically refers to as a "strict code of silence" precluding

7  public references to Mattel or its products alongside MGA's own products, the very policy

8  that Mattel now cites in support of the MGA Parties' alleged "fraudulent concealment" of

9  the facts underlying its claims. (Mattel Opp'n at 10-11, 29; cf. MGA OF ¶¶ 83-85, 107 &

10 RF ¶¶ 93, 96, 98 (disputing Mattel's allegations that Larian misled the public by claiming to

11 have created BRATZ); MGA RF ¶¶ 93, 96 (MGA's copyright registrations openly lists

12 Bryant as BRATZ' creator); Mattel UF ¶ 23.)[11]

13     **B.   Mattel's Inquiry Notice Theory Is Factually And Legally Unsupported**

14     Mattel argues that the above-cited evidence was insufficient to put it on notice

15 because it does not show that Mattel knew that Bryant allegedly created BRATZ while

16 working at Mattel. First, this argument is irrelevant as Mattel did not need explicit public

17 statements identifying Bryant as a BRATZ' creator to trigger the required suspicions for its

18 inquiry notice, as the combined effect of (1) the timing of Bryant's departure from Mattel to

19 design his own line of fashion dolls, (2) Mattel's constructive knowledge upon his departure

20 that Bryant went to work for MGA, (3) the amount of time that Mattel believed it took to

21 design a line of fashion dolls, and (4) the alleged similarities between MGA's new products

22 _____

[11]    In light of the accumulation of the above-described facts by August 2002, when Mattel's
23 CEO received an anonymous letter alleging that Bryant created BRATZ and sold them to MGA
    while employed at Mattel (Mattel Opp'n at 25), that letter undoubtedly cemented the facts that had
24 already developed into a full blown inquiry notice by the time the letter landed on Mr. Eckert's
    desk. While the letter, as this Court indicated, would not necessarily suffice by itself to trigger such
25 notice (id. at n.124), it was certainly sufficient to do so when viewed in conjunction with all the
    facts gathered by Mattel. Indeed, as Mattel's own authority suggests (id. at
26 25-26, citing U.S. v. Tri-State Ins. Co. of Minn., 946 F.2d 581 (8th Cir. 1991)), if the anonymous
    letter confirmed something that Mattel already knew, i.e., "the [anonymous] information received
27 were in some way self-proving, its validity evident on its face, the [limitations] period might
    immediately commence to run." Id. at 583.

28

1  and Mattel's own intellectual property, observable by anyone who, like Mattel, attended toy

2  fairs in early 2001, placed Mattel on notice by March 2001 that Bryant may have created

3  BRATZ. <u>Soliman v. Philip Morris Inc.</u>, 311 F.3d 966, 973 (9th Cir. 2002)  ("the date that

4  [plaintiff] actually discovered his [injury] is irrelevant if a reasonable person would have

5  discovered it sooner").  Mattel's own views on ███████████████████████████

6  had to trigger suspicions that Bryant created BRATZ at the time he was actually employed

7  by Mattel. (MGA MSJ at 19.) Those suspicions were solidified by Mattel's rumor mill that

8  identified Bryant as a BRATZ' creator by summer of 2001. (MGA RF ¶¶ 53-55, 95.)

9        Second, this argument is factually inaccurate. Mattel's repeated assertions that there

10  was no publicly available information linking BRATZ and Bryant before July 2003 does not

11  make it so. (Mattel OF ¶¶ 33, 35, 36, 51, 78, 93.)[12] As Mattel's evidence shows, if anyone

12  searched the internet in March 2002, he or she would have encountered the posting on the

13  BRATZ fan cite originating from an MGA vendor, specifically identifying Carter Bryant as

14  the BRATZ' creator.[13] Mattel was closely monitoring this very site at the time. (<u>Supra</u> at 6.)

15  That knowledge, together with the timing of Bryant's departure from Mattel, as well as the

16  time Mattel considered necessary to develop a new doll line (<u>supra</u> at 5-6), would have

17  necessarily triggered suspicions that Bryant might have created BRATZ while at Mattel.

18  Mattel's own witnesses confirm that it was "█████████████████" within Mattel's Design

19  Center by June of 2001 that Bryant had a role in creating BRATZ.  (MGA UF ¶¶ 53-54.)

20  

---

[12]   And neither does Mattel's **outright deception** that MGA purportedly "admit[ed] that no public statement even recognizing Bryant as Bratz's creator was issued until July 18, 2003, when the Wall Street Journal published an article with that information." (<u>See</u> Mattel OF ¶ 33, citing Ex. 113 to Declaration of Dylan Proctor dated March 7, 2008 (MGA Entertainment, Inc.'s Supplemental and Amended Responses to Mattel, Inc.'s Third Set of Requests for Admission to MGA Entertainment, Inc., Nos. 183, 185); <u>see also</u> Mattel Opp'n at 11:4-6 (citing the same alleged "conce[ssion]"), 29:16-18 (same).) One look at MGA's Responses cited in support of this assertion confirms that the Requests for Admissions in question were actually **denied**.

[13]   This was not the only publicly available statement identifying Bryant as the BRATZ' creator. As a Mattel's executive testified, Mattel was ████████████████████████████ ██████████████████; thus, it undoubtedly could not have missed other public statements identifying Bryant as the creator of BRATZ, such as, for example, MGA's registrations for BRATZ in Brazil (where Mattel is the largest toy company), which publicly specified that Bryant was the BRATZ' "████." (MGA RF ¶¶ 93, 96.)

1    Indeed, Mattel itself confirms that by that point it had all the facts necessary to trigger
2    inquiry notice when it freely admits that it was on notice of its claims as of November 2003,
3    when it received a copy of Bryant's contract with MGA. (Mattel Opp'n at 25.) This is so
4    because seeing a copy of the contract added nothing more substantive than the contract's
5    specific date to the aforementioned universe of facts that Mattel should have suspected all
6    along – specifically, that Bryant had associated himself with MGA while still working at
7    Mattel and that he could not have developed BRATZ in the couple of months between his
8    departure and the BRATZ' first public display. [14] Mattel may not toll the statute of
9    limitations until it received final confirmation of what it suspected all along, as its claims
10   accrued as soon as Mattel "at least 'suspect[ed] ... that someone has done something wrong'
11   to ... [it]." (MGA Opp'n at 23 n.18, citing, inter alia, Soliman, 311 F.3d at 971-72; see also
12   id. at 22 n.16; MGA MSJ at 17.) Accord Kline v. Turner, 87 Cal. App. 4th 1369, 1374-75
13   (2001) (rejecting argument that "it is not the suspicion of a general wrong but rather the
14   suspicion of a particular wrong that is crucial").

15       Mattel's inquiry notice theory does not hold up as a matter of law either. First, if one
16   follows Mattel's logic, the statute of limitations would not even begin to run until it has
17   "concrete evidence" (Mattel Opp'n at 26; cf. id. at 30 n.139 (distinguishing one of the MGA

18   _____
     [14]   Bryant's deposition in November 2004 also did not add any "actionable" facts to what
19   Mattel had already suspected by that time. While Mattel argues that it was at that deposition that it
     learned that MGA and Larian knew of Bryant's employment at Mattel when they contracted with
20   him (Mattel Opp'n at 26-27), that fact is irrelevant because, as shown below (infra §§ IV. & V.), it
     does not constitute an actionable wrong. Rather, it was Mattel's possession of its own September
21   2000 phone records demonstrating Bryant's communications with MGA while employed at Mattel,
     coupled with Mattel's suspicions that he was leaving to work for a competitor, and a new line of
22   MGA's dolls appearing shortly thereafter, bearing alleged similarities to Mattel's never-released
     intellectual property, that had already placed Mattel on notice of its claims by the time it deposed
23   Bryant. This is confirmed by Mattel's March 2002 investigation (see, e.g., MGA UF ¶ 58 (citing
     evidence demonstrating that in March 2002 Mattel was already investigating ███████
24   ████████)). The MGA Parties are relegated to reliance on mere snippets of that record
     due to Mattel's persistent and inconsistent assumption of privilege in connection with its March
25   2002 investigation (see Nolan Decl. ¶¶ 2-6). Was it not for Mattel's tactics, the evidence would
     reveal the precise focus of Mattel's investigation on the very facts underlying Mattel's current
26   claims. (See, e.g., MGA UF ¶ 73 (Mattel's head of security writing with regard to the August 2002
     anonymous letter that ████████████████████████████████
27   ████████████████████████.") (emphasis added); see also RF ¶¶ 112-114.)

28
     _____
     MGA Parties' [REDACTED] Reply in Further Support of Their Motion for Partial Summary Judgment --
     Case No. CV 04-9049 SGL (RNBx)
     9

1  Parties' authorities on the basis that Mattel made no "admissions" that it was on notice of its

2  claims)) – as opposed to "unverifiable suspicion[s]" (id. at 21).   In other words, Mattel

3  seems to take the preposterous position that it must win on the ultimate issue – whether

4  Bryant created the drawings while at Mattel – before it would be on inquiry notice. (See,

5  e.g., id. at 26 n.125). Unsurprisingly, Mattel's statute of limitations theory is not the law.

6  Indeed, Mattel's reliance in support of its theory on Intermedics, Inc. v. Ventritex, Inc., 775

7  F. Supp. 1258, 1266 (N.D. Cal. 1991), has been already rejected as "absurd" by one Circuit:

8  > A rule such as the one [Plaintiff] proposes [relying, inter alia, on Intermedics],

9  > under which a statute of limitations only begins running when a plaintiff can

10  > unassailably establish a legal claim …, would effectively eviscerate the statute of

11  > limitations in all cases in which the plaintiff never discovers "smoking gun"

12  > evidence [supporting its claim], but instead must rely on circumstantial and

13  > inferential evidence to prove [the claim].

14  Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1218 (10th Cir. 2000).[15]

15      Second, Mattel argues that because its March 2002 investigation was limited to

16  suspected infringement of "Diva Starz" or "Toon Teens" only – i.e., products that are not

17  the subject of its current claims against the MGA Parties – that investigation, as well as the

18  alleged similarities between those products and BRATZ observed as early as February 2001,

19  could not give rise to an inquiry notice as to Mattel's current claims. (See, e.g., Mattel

20  Opp'n at 23.) *As a initial matter, Mattel's characterization of this investigation should be*

21  *stricken* as it has wholly precluded the MGA Parties from testing the veracity of that

22  assertion through the wrongful assertion of privilege. See Bittaker v. Woodford, 331 F.3d

23  ----

[15]      Relying on a later opinion in Intermedics, the Tenth Circuit underscored "a further absurd consequence which would flow from [Plaintiff]'s proposed approach": "[U]nder plaintiff's theory, a defendant could successfully invoke the statute of limitations only by proving, in trial, that at an earlier time, outside the limitations period, plaintiff would have established liability if it had litigated the matter to judgment. Defendant, in other words, would be required to litigate against herself the plaintiff's stale claim, introducing the evidence that plaintiff would have introduced in the hypothetical earlier litigation, then introducing the evidence that she as defendant would have presented, and then asking the jury to find that she (as defendant) would have lost." Chasteen, 216 F.3d at 1218, citing Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634, 641 (N.D. Cal. 1993).

28

1  715, 719 (9th Cir. 2003) (party may not use "privilege as both a shield and a sword"; "In

2  practical terms, this means that parties in litigation may not abuse the privilege by asserting

3  claims the opposing party cannot adequately dispute unless it has access to the privileged

4  materials."); Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162-63 (9th Cir. 1992) ("The

5  privilege which protects attorney-client communications may not be used both as a sword

6  and a shield. ... [T]o the extent that Pennzoil claims that its tax position is reasonable

7  because it was based on advice of counsel, Pennzoil puts at issue the tax advice it

8  received. ... Pennzoil cannot invoke the attorney-client privilege to deny Chevron access to

9  the very information that Chevron must refute"). If the Court permits Mattel to rely on that

10  investigation – and it should not – then the MGA Parties are entitled to further discovery.

11  (See Declaration of Thomas J. Nolan dated March 7, 2008 ("Nolan Decl.") ¶¶ 2-6.)

12      Regardless, as Mattel's *own authority* shows (Mattel Opp'n at 51, citing Wood v.

13  Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515 (9th Cir. 1983)), the theory that

14  a narrow investigation does not trigger the statute of limitations has been squarely rejected.

15  In Wood, the Ninth Circuit held that where plaintiff suspected that defendants infringed one

16  of his products, that suspicion placed him on inquiry notice as to possible infringement of

17  his other products. Id. at 1521.[16] It also rejected the notion espoused by Mattel here that

18

19  [16]    California law is in accord. (See MGA Opp'n at 23 n.18, citing Soliman, 311 F.3d at 971-72
20  (plaintiff "need not be aware of the specific 'facts' necessary to establish the claim" for a claim to
   accrue. Nor need he be aware of a particular legal theory. His claim accrues "when, simply put, he
   at least 'suspects ... that someone has done something wrong' to him."), citing Norgart v. Upjohn
21  Co., 21 Cal. 4th 383, 397 (1999), and Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110-11 (1988); id.
   at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of the statute of limitations
22  need not be in any technical sense, but rather in accordance with its "lay understanding"); Butler v.
   San Diego Dist. Attorneys Office, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California,
23  "the statute of limitations begins to run when the plaintiff suspects or should suspect that someone
   has done something wrong to him").) Mattel's cases are not to the contrary. Mattel cites Fox, 35
24  Cal. 4th 797, arguing that the suspicion required for inquiry notice must "relate specifically to the
   elements of the specific cause of action sued on." (Mattel Opp'n at 21.) Fox, however, clarified that
25  "[r]ather than examining whether the plaintiffs suspect facts supporting each specific legal element
   of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that
26  a type of wrongdoing has injured them." Fox, 35 Cal. 4th at 807 (emphasis added). (See also MGA
   Opp'n at 22 n.16, distinguishing Mattel's other case, Garamendi v. SDI Vendome S.A., 276 F.
27  Supp. 2d 1030 (C.D. Cal. 2003), on the grounds that it dealt with fraudulent concealment, as
   opposed to inquiry notice in general and, in any event, did not apply California law).)

28

MGA Parties' [REDACTED] Reply in Further Support of Their Motion for Partial Summary Judgment – Case No. CV 04-9049 SGL (RNBx)

11

1 | because it allegedly did not conduct any investigation into the precise facts that it is now
2 | suing upon (Mattel Opp'n at 24), the statute of limitations did not start, despite all the facts
3 | Mattel knew that compelled further investigation. Id. ("[a]lthough … [plaintiff] may not
4 | actually have conducted this further investigation [into infringement on his other products],
5 | equity will impute to a litigant knowledge of facts that would have been revealed by
6 | reasonably required further investigation.").

7 | ## C.   There is No Tolling For Fraudulent Concealment Or The Stay

8 | As the MGA Parties already showed, Mattel's fraudulent concealment theory, even if
9 | properly alleged, is not only factually unsupported (see supra at 7), but also unavailable to
10 | Mattel because it was on inquiry notice of its claims despite the alleged concealment. (See
11 | MGA Opp'n at 22 n.16, citing, inter alia, Hynix Semiconductor Inc. v. Rambus Inc., 2007
12 | WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) ("fraudulent concealment doctrine does not
13 | toll the statute of limitations, no matter what the defendant has done to conceal his wrongs,
14 | if a plaintiff has a suspicion of wrongdoing and knowledge of the harm and its cause").)[17]
15 | Accord Eichman v. Fotomat Corp., 880 F.2d 149, 157 (9th Cir. 1989) (applying similar rule
16 | for claims asserted under federal law.[18]

17 |

18 | [17]   (See also MGA MSJ at 25 n.30.) Accord Snapp & Assocs. Ins. Servs., Inc. v. Malcolm
Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002) ("a suspicion of wrongdoing,
19 | coupled with a knowledge of the harm and its cause" is sufficient to end tolling based on fraudulent
concealment); Peterson v. Dein, 2006 WL 3020935, at *3 (Cal. App. Oct. 25, 2006) (if "a
20 | plaintiff … is aware of facts sufficient to give rise to a reasonable suspicion of wrongdoing, then
the fraudulent concealment rule has no further application regardless of the lengths to which the
21 | defendant has gone to conceal the wrongs").

[18]   Mattel's reliance on Garamendi, 276 F. Supp. 2d at 1043, in support of its argument that
22 | fraudulent concealment tolls the statute of limitations even where plaintiff would have inquiry
notice (Mattel Opp'n at 28) is unavailing. In Garamendi, the court found that plaintiff had actual
23 | notice of its claims; thus, any discussion concerning mere inquiry notice is dicta. Moreover,
Garamendi's sole authority for the rule it states, aside from its reliance on non-California
24 | authorities, is Migliori v. Boeing North Am., Inc., 114 F. Supp. 2d 976 (C.D. Cal. 2000), which, in
turn, states the rule as follows: "[W]here fraud is established the statute [of limitations] is tolled
25 | only for as long as the plaintiff remains justifiably ignorant of the facts upon which the cause of
action depends; discovery or inquiry notice of the facts terminates the tolling." Id. at 984 (emphasis
26 | added). Thus, to the extent Garamendi has any precedential value, it misinterpreted California law
and, for that reason, has not been followed on that point by any other court. Mattel's other case,
27 | Regents of Univ. of Cal. v. Sup. Ct., 20 Cal. 4th 509, 533 (1999), does not even deal with the issue,
but merely cites the purpose behind the fraudulent concealment doctrine.

28 |

MGA Parties' [REDACTED] Reply in Further Support of Their Motion for Partial Summary Judgment –
Case No. CV 04-9049 SGL (RNBx)

12

1     Mattel's tolling arguments based on the stay of proceedings from May 2005 until

2 May 2006 (Mattel Opp'n at 30-31) are irrelevant as all of Mattel's claims were barred

3 before the stay was entered (supra n.2). Moreover, Mattel does not get the benefit of tolling

4 based on the stay as a matter of law because such tolling extends neither to claims that were

5 yet to be asserted at the time the stay was entered nor to such entities that were yet to

6 become parties to the case at the time.[19] As Mattel did not assert its claims until after the

7 stay was lifted, the stay could not toll the statute of limitations for those claims. And, as

8 Larian and MGA (HK) were not parties to the action at the time (and neither, as shown

9 below, was MGA), the stay could not toll the statute of limitations as to them.[20]

10     Finally, tolling based on the stay of proceedings is inapplicable for yet another reason:

11 namely, the stay order did not preclude Mattel from amending its '04 Complaint or asserting

12 counterclaims in the '05 Action. On September 20, 2005, while the stay was pending,

13 Mattel amended its answer in the '05 Action, proving that the stay did not bar Mattel from

14 filing amended pleadings. Korody-Colyer Corp, 828 F.2d at 1575 (denying tolling based on

15 stay of proceedings, observing that plaintiff "points to absolutely no evidence indicating …

16 that [he] was precluded from adding its … [new] claim to its pleadings"; adding that

17 plaintiff "cannot now seize upon the stay as basis for excusing its slumber and its failure to

18 amend its pleadings for more than four years"). Thus, Mattel cannot seize upon the stay to

19 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[19]    See Korody-Colyer Corp. v. General Motors Corp., 828 F.2d 1572, 1575 (Fed. Cir. (Cal.)

20 1987) (district court's order staying proceedings on antitrust claim did not preclude or excuse
plaintiff from amending its antitrust claim to assert Walker Process claim, and so stay did not toll

21 statute of limitations on amended antitrust claim; "Nowhere does [plaintiff] explain how a claim
that had not been made could have been stayed."); Lipman v. Bhend, 213 Cal. App. 2d 474, 480

22 (1963) (no tolling of statute of limitations based on the stay of proceedings pending appeal as to
claims against the individual that "was not a party to the case" at the time appeal was taken); see

23 also Friedman v. Estate of Presser, 929 F.2d 1151, 1156-57 (6th Cir. 1991) (stay cannot affect
rights of nonparties; thus, stay order did not toll the time for effecting personal service).

24 [20]    Mattel's cases are not to the contrary as they did not involve new claims or new defendants.
See Selph v. Nelson, Reabe and Snyder, Inc., 966 F.2d 411, 413 (8th Cir. 1992) (tolling as to

25 original claims and original parties based on stay of proceedings warranted by pendency of parallel
action in another court); Castle v. Wells Fargo Financial, Inc., 2007 WL 1105118, at *1 (N.D. Cal.

26 Apr. 10, 2007) (tolling statute of limitations for putative class members); Javier H. v. Garcia-
Botello, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) (contrary to Mattel's description of the case

27 (Mattel Opp'n at 30:16-18), tolling for an amended claim against defendants that were already
before the court when it issued the stay, "which the … Defendants [at issue] did not oppose").

28

1  excuse its own lack of diligence in pursuing claims against the MGA Parties.

2  **D.  Mattel Concedes It Cannot Satisfy the Mistake/Ignorance Requirement for "Relation-Back" of Claims Against New Parties**

3  The MGA Parties already showed that Mattel cannot revive its claims via "relation-

4  back" to its '04 Complaint as it cannot satisfy the "mistake" requirement of Rule 15(c) for

5  claims against new parties[21] or the "ignorance" requirement under California's "Doe"

6  defendant procedure. (MGA MSJ at 29-33; MGA Opp'n at 24-27.)[22] This is because, as

7

8  _____

9  [21]   While it is undisputed that MGA (HK) and Larian were new parties in this litigation at the time Mattel asserted its claims against them, Mattel takes issue with MGA's characterization as
10  such, since, as Mattel argues, MGA's intervention made it a "full-blown" party (Mattel Opp'n at 35-36). Mattel ignores, however, that MGA's status as an intervenor was spelled out in the
11  Stipulation allowing MGA to intervene and it was Mattel itself that limited MGA's status to that attendant to intervention "as a procedural matter" only. (See MGA Opp'n at 25; MGA MSJ at 14
12  & n.18 (explaining that Mattel was on notice that it had asserted no claims against MGA as a result of the latter's intervention).) None of Mattel's cases address intervention by stipulation limiting the
13  intervenor's status, nor do they address "relation-back" of claims against such an intervenor-defendant asserted after the applicable statute of limitations expired. (Cf. MGA Opp'n at 25 n.21
14  ("relation-back" of claims against an intervenor-defendant, as opposed to claims by an intervenor-plaintiff, is not allowed).) Cf. In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th Cir. 1996)
15  (intervenor's complaint did not relate back to filing date of original complaint where interests of original plaintiff and intervenor were adverse). Moreover, all claims asserted against MGA expired
16  before the filing of the '04 Complaint (MGA Opp'n at 24-25), as Mattel was on notice of its claims as early as January-March 2001. Thus, "relation-back" for Mattel's claims against MGA is
17  irrelevant. Even assuming that Mattel was not on notice of its claims until summer 2001 – when BRATZ were released on the market, and it was "common knowledge" at Mattel that Bryant
18  created BRATZ – Mattel's claims against MGA would have expired around June 2004 and still would have been time-barred before MGA's intervention in December 2004. U.S. v. Randall &
19  Blake, 817 F.2d 1188, 1192 (5th Cir. 1987) (for statute of limitations, the date of intervention is the operative date).
20  [22]   As the MGA Parties already explained, Mattel's protestations to the effect that this Court had already accepted "relation-back" here in granting Mattel's motion for leave to amend (Mattel
21  Opp'n 34, 38) miss the mark because the Court neither reached the requirements for claims against new parties nor had the current evidence record before it that only a motion for summary judgment
22  could properly bring in. (See MGA MSJ 16 n.20, 17 n.22.) Similarly, Mattel's reliance on this Court's order denying MGA's motion for terminating sanctions (Mattel Opp'n at 34 n.152) is
23  unavailing, as the Court did not rule on the timing of inquiry notice there; rather, the Court determined when Mattel's **duty to preserve evidence** arose, which is based on a standard markedly
24  different from that of the inquiry notice for purposes of statute of limitations. (See MGA Opp'n at 24.) Finally, Mattel's selective quoting of the MGA Parties' motion to the effect that the MGA
25  Parties' allegedly "concede[d]" that "relation-back" would revive Mattel's claims (Mattel Opp'n at 34) ignores the very language following the alleged concession, where the MGA Parties explained
26  that "relation-back" could "conceivably" revive only one of Mattel's claims (statutory unfair competition asserted only against MGA (HK) and Larian), and only if the Court finds that
27  "discovery" rule delayed accrual of that claim, rather then follows the long line of authorities holding that "discovery" rule does not apply. (MGA MSJ at 29; see also id. at 27 n.33.)

28

1  Mattel concedes, it was on notice of both the MGA Parties' identities and the alleged facts

2  underlying Mattel's claims against them as of November 24, 2003, when it received a copy

3  of Bryant's contract with MGA (see, e.g., Mattel Opp'n at 25) – i.e., **five months before** it

4  filed its April 2004 complaint against Bryant. Thus, Mattel's assertion that it "did not *know*"

5  of these facts in April 2004 (Mattel Opp'n at 39) is contradicted by its own admission,

6  which shows that Mattel cannot satisfy the ignorance requirement for "relation-back" of its

7  state law claims against "Doe" defendants such as the MGA Parties.[23]

8      As for its copyright infringement claim, Mattel concedes "relation-back" does not lie

9  here[24] by failing to address the "mistake" requirement of "relation-back" for claims against

10 new defendants altogether.[25] Mattel's infringement claim also cannot relate back to the '04

11 [23]   Cf. Streit v. Am. Drug Stores, Inc., 2003 WL 932396, at *4 (Cal. Ct. App. Mar. 10, 2003) (unpublished) (denying "Doe" amendment and distinguishing Mattel's cases as involving evidence

12 of plaintiffs' lack of knowledge as to the necessary facts; "[i]n the present case, by contrast, it is unrefuted that appellants knew all of the facts when they filed their complaint. No new facts

13 developed after .. [their original complaint was filed], relating to the name of the ... [defendant] or ... [facts underlying its liability].").

14 [24]   "Relation-back" is also irrelevant for Mattel's copyright infringement claim as this claim

15 expired by March 2004 – before Mattel filed the '04 Complaint. This is because Mattel's claim, a claim for copyright ownership, accrued when MGA publicly repudiated Mattel's alleged

16 ownership interest in BRATZ by displaying them as MGA's own at the toy fairs in January-March 2001 attended by Mattel. (MGA MSJ at 23-24.) As Mattel was then on notice that it may have an

17 ownership interest in BRATZ (supra at 5-6), Mattel's attempt to distinguish MGA's cases as involving a known ownership interest (Mattel Opp'n at 49-50) is unavailing. Moreover, by arguing

18 that its ownership claim is "separate and distinct" from its infringement claim (id. at 49), Mattel concedes that it asserted both, thus placing itself squarely into the ownership claims territory for

19 the statute of limitations analysis. (MGA MSJ at 23 n.28, citing Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389-90 (6th Cir. 2007) ("When claims for both

20 infringement and ownership are alleged, the infringement claim is timely only if the corresponding ownership claim is also timely.").) This concession dooms Mattel's attempt to disassociate itself

21 from cases viewing copyright infringement claims as disguised ownership claims and thereby rejecting application of the "rolling" statute of limitations theory (MGA MSJ at 24 (collecting

22 cases)).

23 [25]   (See Mattel Opp'n at 46-47 (addressing relation back under Rule 15(c) only for its copyright infringement claim against Bryant and MGA, the latter considered by Mattel as having been made

24 a party to the action via intervention; ignoring altogether "relation-back" of its copyright infringement claims against MGA (HK) and Larian; cf. MGA MSJ at 29-32 (setting forth the

25 "mistake" requirement for relation back of Mattel's copyright infringement claim under Rule 15 (c)), citing inter alia, Louisiana-Pacific Corp. v. ASARCO, Inc., 5 F.3d 431, 434 (9th Cir. 1993)

26 ("relation-back" properly denied where plaintiff "knew perfectly well" the identity of the potential defendant and "[t]here was no mistake of identity, but rather a conscious choice of whom to sue").)

27 By failing to address the MGA Parties' argument, Mattel concedes it. See. e.g., So. Nevada Shell Dealers Ass'n v. Shell Oil Co., 725 F. Supp. 1104, 1109 (D. Nev. 1989) (finding party opposing

28 summary judgment implicitly conceded issue by failing to respond to movant's argument).

1  Complaint as this claim was barred <u>before</u> Mattel registered its copyrights in October 2006,

2  and the Court had no jurisdiction over the claim before Mattel registered its copyrights.

3  (MGA MSJ at 24-5, citing <u>Brewer-Giorgio v. Producers Video, Inc.</u>, 216 F.3d 1281, 1285

4  (11th Cir. 2000) (plaintiff cannot amend complaint to add copyright claims where it failed

5  to register copyrights before filing of the original complaint and the statute of limitation

6  expired before registration; "even if the new claims relate back to the original claims, they

7  may not be added because the district court did not have jurisdiction to hear the new claims

8  at the time the original claims were filed"); <u>Country Road Music, Inc. v. MP3.com, Inc.</u>,

9  279 F. Supp. 2d 325, 332-33 (S.D.N.Y. 2003) (infringement claim does not relate back to

10  original complaint where plaintiff failed to register copyright within limitations period).)[26]

11  **II.     MATTEL ONLY CONFIRMS ITS STATE-LAW CLAIMS ARE PREEMPTED**

12      Mattel goes hoarse trying to conjure the "extra element" it needs to save its state law

13  claims of conversion, intentional interference and unfair competition from preemption.  To

14  save its claims, however, Mattel is compelled to undercut its other arguments, going so far

15  as to concede that the Inventions Agreement is inapplicable.   (<u>Infra</u> n.31.) Moreover, in

16  defiance of a Phasing Order it drafted, Mattel also has improperly injected its Phase Two

17  claims, [27] including misappropriation of trade secrets and RICO, into its Phase One

18

19  [26]     Mattel ignores these authorities, first labeling them nonexistent (Mattel Opp'n at 47), then referring to them as "slim" (<u>id.</u> at 48). However, Mattel presents no contrary authority, as all the cases it cites (<u>id.</u> at 47 (relying on cases dating back more than a quarter century)) did not involve

20  the situation where, as here, the statute of limitations expired after the original suit was filed, but before plaintiff registered its copyrights. Rather, Mattel's cases involved amendments curing a

21  jurisdictional defect within the appropriate limitations period. The distinction is important because, as one of Mattel's cases explains (<u>id.</u>, citing <u>Ruskin v. Sunrise Mgmt., Inc.</u>, 506 F. Supp. 1284, 212

22  (D. Colo. 1981)), amendments to cure jurisdictional defects are allowed out of convenience to avoid dismissals and subsequent re-filings; by contrast, Mattel would face the same statute of

23  limitations problem if its suit was dismissed only to be re-filed. It is for this very reason that the Ninth Circuit held that "relation-back" under Rule 15 cannot be utilized to create federal

24  jurisdiction where there was none (MGA MSJ at 24, citing <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161, 1165 (9th Cir. 2002)); indeed, Mattel's observation that <u>Miguel</u> dealt with the Truth in

25  Lending Act rather than the Copyright Act is a distinction without a difference, as it is unclear why would Rule 15 be allowed to create federal jurisdiction under one federal statute but not another.

26  [27]     (<u>See</u> Mattel's Mem. Re: Trial Structure, dated June 20, 2007, at 2-4, 8-9, adopted by an

27  Order dated July 2, 2007 ("Phasing Order") ("Phase two would address claims arising from the acts of … trade secret theft asserted by Mattel against MGA").)

28

1  arguments to confuse the Court, but such claims cannot prevention of Phase One claims.

2      Although Mattel does not dispute the standard for preemption,[28] it eschews its earlier

3  representations that "[t]he nature of the underlying claim is to establish that [MGA has] no

4  interest in Bratz" to create an extra element for each of its state law claims. (Mattel UF ¶

5  119; see, e.g., Mattel Opp'n at 75 ("Mattel's conversion claims fundamentally involve

6  questions of ownership").)  For example, Mattel's argues that the gravamen of its Phase

7  One claims is ownership when arguing for relation back of its claims (see Mattel Opp'n at

8  32 (amended claims rest on same general set of facts as 2004 complaint)), but retreats from

9  this very position by distancing its state law claims from the Copyright Act to support its

10 preemption arguments (id. at 70-71).[29] Mattel's alchemy cannot save its claims.

11     A.    **Mattel Fails to Save its Conversion Claim from Preemption**

12     The MGA Parties already established that the gravamen of Mattel's conversion claim

13 is "ownership of Bryant's original works of authorship (i.e., the BRATZ drawings)" and is

14 thus preempted.  (MGA MSJ at 35.) In response, Mattel parses its conversion claim to

15 extricate it from copyright's scope, splitting the underlying allegations into: (1) conversion

16 of unprotectable "ideas or concepts," and (2) conversion of "tangible materials" in an

17 attempt to add the "extra element" needed to avoid preemption.[30] (Mattel Opp'n at 71-73.)

18

19 [28]    Mattel claims that preemption is a fact-specific inquiry. In fact, state law claims like
   Mattel's are routinely preempted at the summary judgment stage. See, e.g., Motown Record Co. v.
20 Hormel, 657 F. Supp. 1236, 1239 (C.D. Cal. 1987) (preempting unfair competition and intentional
   interference on summary judgment); see also Garman v. Sterling Pub. Co., Inc., 1992 WL
21 12561293, at *8 (N.D. Cal. Nov. 5, 1992) (preempting unfair competition on summary judgment).

22 [29]    Mattel cites Topolos v. Caldewey for the proposition that state law claims involving
   copyrightable subject matter do not bring all of its claims into the realm of the Copyright Act.
23 However, despite the favorable language quoted by Mattel, the Topolos court reached the opposite
   conclusion and held that the district court erred in concluding it lacked jurisdiction because "the
24 principal and threshold issue to be resolved was ownership of the copyright," a question which
   "properly belongs to a federal court." 698 F.2d 991, 994 (9th Cir. 1983).

25 [30]    As anticipated, Mattel relies on Judge Manella's prior ruling regarding preemption of its
   conversion claim.  As the MGA Parties noted (MGA MSJ at n.40), Judge Manella rejected
26 defendant's conversion preemption argument then only because Mattel's initial complaint did not
   even assert a copyright infringement claim, and the preemption argument thus was premature. Now,
27 given Mattel's assertion of a Copyright claim and its failure to establish that any tangible material
   of value was converted, this Court may properly dispose of Mattel's conversion claim.

28

1  As Mattel itself argues, "conversion does not apply to ideas." (Id. at 71.) [31] Mattel's

2  limitation of its conversion claim to Bryant's "ideas and concepts," whether contractually

3  protected or not, thus operates as a complete waiver of its conversion claim as to BRATZ,

4  without regard to preemption. As Mattel waives its conversion claim as to ideas/concepts,

5  its conversion claim devolves into one for discarded tangible material only. But Mattel (i)

6  cites no authority that de minimis material is properly the subject of a conversion claim, (ii)

7  puts forth no evidence that Bryant or MGA even took tangible material, and (iii) provides

8  no evidence of harm.  Thus, its conversion claim is completely preempted.

9
      1.    **Mattel's Claim that the MGA Parties Have
                Converted Bryant's Ideas/Concepts Fails**

10  Having disposed of its own conversion claim for the BRATZ idea/concept, Mattel

11  nevertheless argues that Bryant's contract with Mattel created an enforceable property

12  interest in his "ideas/concepts", which serves as the subject of a conversion claim.  Mattel

13  cites no authority that conversion applies to contractually protected ideas or that such claims

14  are not preempted. [32] Trapped by the weakness of its argument, Mattel distinguishes a

15  leading conversion preemption authority with the circular (and nonsensical) argument that

16  this case is different as "defendants have converted Bryant's idea for Bratz … independent

17  of any of his drawings." (Mattel Opp'n at 73 n.243.) But Mattel's jumbled argument cannot

18  stave off preemption of Mattel's conversion claim as to the BRATZ concept as, regardless

19  of whether the alleged deprivation is of an idea itself or the tangible medium in which it is

20  expressed, it is preempted.  Dielsi v. Falk, 916 F. Supp. 985, 992 (C.D. Cal. 1996).

21

22

23  [31]   Mattel's argument against conversion preemption rests on the proposition that its claim does

24  not seek to recover Bryant's "ideas/concepts." (Mattel Opp'n at 71-73.)  But earlier in its brief, Mattel spends pages staking its claim on Bryant's BRATZ drawings, arguing that those drawings

25  are covered by his Inventions Agreement, based on the fact that Bryant's works are copyrightable expressions. (Id. at 11-15 (arguing that the Inventions Agreement encompasses "creative works

26  such as Bratz designs, drawings[,] and other copyrightable material").)

   [32]   Mattel's cases are inapposite, applying not to conversion, but to state law claims for "theft

27  of ideas," Cavalier v. The Jim Henson Co., 2000 WL 33968969, at *3 (C.D. Cal. Apr. 3, 2000), and "breach of an implied-in-fact contract", Rokos v. Peck, 182 Cal. App. 3d 604, 617 (1986).

28

### 2. Mattel Provides No Evidence that the MGA Parties Converted Any Tangible Material of Any Value

To stave off preemption, Mattel argues that it seeks the return of certain discarded tangible materials "stolen" by Bryant.[33] As it pertains to discarded tangible materials, Mattel's conversion claim fails as a matter of law because Mattel offered no evidence of converted tangible material of any value.  Mattel's inclusion of "Trade Secret Materials" among the materials allegedly converted (Mattel Opp'n at 73) is improper; the MGA Parties do not seek (because they were not permitted to seek) summary judgment of Phase II issues, nor is Mattel entitled to rely on Phase II issues to preserve a conversion claim in Phase I.

Mattel's authority for the proposition that conversion claims for tangible property are not preempted (Mattel Opp'n at 73-74) is irrelevant because the MGA Parties established in their opening brief that the materials Bryant is alleged to have used in assembling what Mattel characterizes as the early pitch doll had been discarded by Mattel.  (See Russell Decl., Ex. 1 (Bryant) at 235:9-10 ("███████████████████████████████████████████████ ██████████████████████████████████████████").) It is settled that "no claim for conversion or other interference with personal property rights may be based on the taking of documents placed in a trash can." (MGA MSJ at 36 n.39, citing Ananda Church of Self-Realization v. Mass. Bay Ins. Co., 95 Cal. App. 4th 1273, 1281-2 (2002).)  Mattel did not dispute the legal principle nor the fact that the supposedly "stolen" items were trash.  This ends the analysis as there can be no claim for conversion of trash.

Mattel even concedes that damages for its conversion and copyright claims overlap. (Mattel Opp'n at 75.)  Where the primary measure of damages sought is disgorgement of

---

[33]     Mattel tries to distinguish Idema in the context of conversion preemption on the ground that Mattel "seek[s] recovery of tangible materials." (Mattel Opp'n at n.246.)  In Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1192-93 (C.D. Cal. 2001), however, the court held that, although plaintiffs alleged that there had been a conversion of tangible documents by defendants, plaintiffs sought "not the documents themselves which Plaintiffs claim as their 'property' which was wrongfully converted, but the information contained therein." As in Idema, Mattel seeks only damages based on the value of the BRATZ concept, not the paper on which they were expressed. Furthermore, Mattel tries to distinguish Harper & Row Publrs. v. Nation. Enters., 723 F.2d 195 (2d Cir. 1983) as a "non-binding case[] from outside this circuit" (Mattel Opp'n at 76 n.249), but Harper & Row's analysis has been expressly adopted by California courts.  See, e.g., Maheu v. CBS, Inc., 201 Cal. App. 3d 662, 670-3 (1988).

1  profits from the unauthorized use, reproduction or distribution of copyrighted works, the

2  claim is equivalent to a copyright claim. <u>Worth v. Universal Pictures, Inc.</u>, 5 F. Supp. 2d

3  816, 822 (C.D. Cal. 1997).   Moreover, as Mattel did not dispute that the tangible items it

4  seeks are nothing more than *de minimis* discarded materials, it admits that its conversion

5  claim for tangible material is part-and-parcel of its claim for damages under the Copyright

6  Act.[34]

7      **B.**    **<u>Mattel Did Not Save Its Intentional Interference Claim From Preemption</u>**

8        Mattel's contention that intentional interference contains an "extra element" of

9  inducement asks this Court to ignore legion authority of this District holding inducement

10  does <u>not</u> add the extra element necessary to avoid preemption. <u>See</u> <u>Idema</u>, 162 F. Supp. 2d

11  at 1192-93 (intentional interference "merely a restatement of Plaintiffs' copyright claim");

12  <u>Worth</u>, 5 F. Supp. 2d at 822 (same); <u>Motown Record</u>, 657 F. Supp. at 1239 ("[e]lements

13  such as awareness or intent may alter the scope of the action, but not its nature"); <u>see also</u>

14  <u>Kabehie v. Zoland</u>, 102 Cal. App. 4th 513, 530 (2002) (preempting intentional interference

15  claim). [35] Mattel then distinguishes the MGA Parties' cases because they involve

16  "reproduction of intangible intellectual property subject to copyright protection," while

17  Mattel's claims do not. (Mattel Opp'n at 76 n.249.)  By doing so, Mattel undermines its

18  contractual arguments, which urge that the subject matter covered by the Inventions

19  Agreement includes copyrightable subject matter. (<u>Id.</u> at 11-14.)   Regardless, it is

20  undisputed that the alleged inducement Mattel charges against the MGA Parties emanates

21  from the purported "reproduction," "preparation of derivative works," and "distribution" of

22  copyrightable material within the protective scope of the Copyright Act. 17 U.S.C. § 106.

23

24  [34]    In the alternative, were this Court to accept Mattel's tangible/intangible distinction and preempt its conversion claim only to the extent it involves intangible material, its surviving claim
25  should be specifically limited at the Phase One trial to damages arising from the alleged conversion of any itemized discarded tangible materials that Mattel can prove were converted and no more.

26  [35]    Mattel tries to distinguish <u>Idema</u> and <u>Motown Record</u> on the basis that these cases "involve reproduction of intangible intellectual property subject to copyright protection." (Mattel Opp'n at
27  76 n.249.)  But Mattel likewise alleges that "[c]ounter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel" (SAA ¶ 84.)

28

1   Mattel's authority discussing preemption of interference claims is thus inapposite.[36]

2   On the precipice of losing one of its key claims against the MGA Parties, Mattel

3   attempts to insert irrelevant issues into the preemption analysis, pointing to fiduciary duty

4   and trade secret "elements" purportedly protected by Bryant's Inventions Agreement.  This

5   effort is fruitless.  First, Bryant had no fiduciary duty to Mattel, nor would his actions

6   breach any such duty.  (Bryant MSJ § III.A; Bryant Opp'n § III.C.2; Bryant Reply § II.B.)

7   Second, to the extent Mattel suggests that trade secret misappropriation is a Phase One

8   claim, Mattel is simply wrong. (See Phasing Order at 8-9 ("Phase two would address claims

9   arising from the acts of … trade secret theft asserted by Mattel against MGA"); accord

10  Mattel MSJ at 50:18-20 & 51:17-20 (no trade secret misappropriation claim listed among

11  the claims asserted against the MGA Parties in Phase One).) As Mattel's intentional

12  interference claim adds no "extra element" to its copyright claim, it is preempted.

### C.   Mattel's Unfair Competition Claim is Preempted to the Extent it is Based on Copyright Infringement

15  Mattel fails utterly to extricate its unfair competition claims from the grasp of the

16  Copyright Act, and is forced once again to resort to Phase Two issues in a desperate attempt

17  to preserve its claims.  In doing so, Mattel could not distinguish the MGA Parties' most

18  prominent authority – Lanard Toys Ltd. v. Novelty Inc. – which granted defendants'

19  summary judgment motion on preemption, holding that "plaintiffs may not allege a claim

---

[36]   Mattel relies on Altera Corp. v. Clear Logic, Inc. in an attempt to add an element of "use" to its intentional interference with contract claim. (Mattel Opp'n at 76.)  This authority is inapposite as Mattel's allegation of intentional interference turns on the MGA Parties' alleged infringement of Mattel's purported copyright. (MGA MSJ at 38.)  Moreover, as the underlying agreement in Altera was a shrinkwrap license containing a "permitted use" provision, and not a contractual right protected by the Copyright Act, the case is inapposite.  424 F.3d 1079, 1089 (9th Cir. 2005). Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc. is likewise inapposite, as the court was not compelled to discuss preemption of intentional interference because the claim failed on its own. 7 F.3d 1434, 1443-44 (9th Cir. 1993).  Mattel's other authorities (Mattel Opp'n at 77 n.250) are similarly distinguishable. Silicon Image, Inc. v. Analogix Semiconductor, Inc., 2007 WL 1455903, at *9 (N.D. Cal. May 16, 2007) ("permitted use" provision, similar to Altera); Unisys Corp. v. Varilease Technology Group, Inc., 1999 WL 34782848, at *2 (D. Ariz. Aug. 10, 1999) (decision on motion to dismiss where cause of action included language regarding fiduciary duty and intentional misconduct); PMC, Inc. v. Saban Entertainment, Inc., 45 Cal. App. 4th 579, 594 n.8 (1996) (involving interference with closing of a deal).

for unfair competition based on defendants' alleged infringement of its copyright." 511 F. Supp. 2d 1020, 1030-31 (C.D. Cal. 2007). To the extent Mattel's unfair competition claim is "based on defendants' alleged infringement of its copyright," <u>Lanard</u> controls. <u>Id.</u> at 1031; <u>see also</u> <u>Garman</u>, 1992 WL 12561293, at *8 (unfair competition claim involved "the exact rights that the Copyright Act gives exclusively to the copyright owner"), citing <u>Motown Record</u>, 657 F. Supp. at 1239.

Mattel tries to distinguish <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d 1209, 1213 (9th Cir. 1998), on the ground that the plaintiff's unfair competition claim only incorporated "paragraphs of consequence" but ignores that Mattel's unfair competition claim is <u>expressly</u> based on its copyright infringement claim. (Mattel Opp'n at 65 ("any of Mattel's claims against defendants can constitute the predicate unlawful act supporting Mattel's UCL claim ... [including] copyright infringement").) Indeed, the "paragraphs of consequence" relating to Phase One (SAA ¶¶ 21-36) deal almost *exclusively* with the MGA Parties' alleged copyright infringement. Even Mattel's *own authority*, which relies on <u>Kodadek</u>, preempts an unfair competition claim on the basis of incorporation. <u>Unisys Corp.</u>, 1999 WL 34782848, at *1 ("Unisys' unfair competition claim incorporates by reference paragraphs from its copyright claim ... [and] is preempted"), citing <u>Kodadek</u>, 152 F.3d at 1213.

## III.   MATTEL CONCEDES AWAY ITS UNFAIR COMPETITION CLAIM

### A.   Mattel Conceded The Fraudulent Prong Of Its Unfair Competition Claim

Mattel failed to respond to the MGA Parties' argument that the fraud prong of its unfair competition claim fails as a matter of law. (See MGA MSJ § III.B.) Failure to oppose an argument in a summary judgment motion constitutes a concession of the argument. <u>See</u> <u>Davis v. Johnson</u>, 2007 WL 1430089, at *7 (E.D. Cal. May 14, 2007) ("[Plaintiff's] failure to oppose summary judgment is a concession of as much."); <u>So. Nevada Shell Dealers</u>, 725 F.Supp. at 1109 (same). <u>Consequently, the fraudulent prong of the claim is conceded.</u>

### B.   Mattel Effectively Conceded the Unfair Prong of its Claim

Mattel again seeks to import irrelevant laws into this litigation to save one of its

1  ailing state law claims, and concedes that the unfair prong of its unfair competition claims

2  fails without a requisite antitrust basis, which was not pled here.  See Sybersound Records,

3  Inc. v. UAV Corp., __ F.3d __, 2008 WL 509245, at *13 (9th Cir. Feb. 27, 2008) (in action

4  brought under Lanham and Copyright Acts, plaintiff's failure to plead that "unfair" act

5  would be an "incipient violation of antitrust law" defeats its claim unfair competition claim).

6  Mattel references the Robinson-Patman and RICO Acts as providing the necessary antitrust

7  underpinning required to support the unfair prong of its unfair competition claim. (Mattel

8  Opp'n at 68.)  These statutes cannot save Mattel's claim.  First, RICO is a Phase Two issue

9  that has no bearing on Mattel's Phase One unfair competition claim.  (See Phasing Order at

10  8-9.)  Second, because Mattel did not allege violations of the Robinson-Patman Act in its

11  pleadings, it cannot substitute that law for its California Penal Code's "commercial bribery"

12  predicate simply because both laws happen to prohibit commercial bribery.  The Robinson-

13  Patman Act prohibits commercial bribery in the context of price discrimination, and not, as

14  in the California Penal Code, in the employment context.  Compare 15 U.S.C. § 13(c), with

15  Cal. Penal Code § 641.3 (provision expressly applies to "employee" and "employer").

16      **C.**    **Mattel Merely Confirmed the Unlawful Prong of Its Claim Fails**

17         The MGA Parties already showed that commercial bribery is the only express

18  predicate that would support the "unlawful" prong of Mattel's unfair competition claim.

19  (MGA MSJ at 42-44.)  This remains true.  Neither of Mattel's other purported implied

20  predicates for its unfair competition claim (intentional interference or copyright

21  infringement) provides the basis necessary to avoid summary judgment.  First, as the MGA

22  Parties established, a dispute over copyright ownership does not constitute an "unlawful"

23  practice "prohibited by law, whether 'civil or criminal, federal, state, or municipal, statutory,

24  regulatory, or court-made.'"  Smith & Hawken, Ltd. v. Gardendance, Inc., 2004 WL

25  2496163, at **6-7 (N.D. Cal. Nov. 5, 2004).  Furthermore, "[t]o the extent the improper

26  business act complained of is based on copyright infringement, [Mattel's] claim [is]

27  properly dismissed because it is preempted."  Sybersound Records, __ F.3d __, 2008 WL

28

1  509245, at *12. <u>Second</u>, although Mattel argues that intentional interference with contract

2  may be a predicate to an unfair competition claim, this is not so when such a claim fails or

3  is preempted, as is Mattel's claim here.

4         With respect to its commercial bribery predicate, Mattel did <u>not</u> raise a genuine issue.

5  <u>First</u>, Mattel's "evidence" that Bryant acted corruptly is based entirely on evidence of the

6  ████████████████████████████████████████████████

7  ██████████████████████. (Mattel Opp'n at 66 nn.227-229.)  This evidence

8  does <u>not</u> establish that Bryant acted with specific intent to injure or defraud Mattel.  <u>Second</u>,

9  Mattel did <u>not</u> raise a genuine issue as to whether the MGA Parties "asked" Bryant to "use"

10  his position with Mattel for MGA's benefit.  Mattel's sole evidence regarding this argument

11  is that ██████████████████████████████████████

12  ████████ (Mattel Opp'n at 67.)  However, Mattel does not dispute that the MGA Parties

13  requested copies of his agreement (MGA OF ¶ 16; MGA RF ¶¶ 16-7) and that they asked

14  him to represent that he was not violating any terms of his employment with Mattel. (MGA

15  RF¶¶ 18, 20-22.) In any event, ████████████████████████████

16  ██████████████████. (MGA OF ¶ 137.)  Finally, Mattel fails to establish that

17  Bryant was seeking to benefit the MGA Parties (as opposed to himself) (<u>see</u> MGA OF ¶ 6),

18  let alone establish that Bryant's efforts constituted "use of his position." (<u>Id.</u> ¶¶ 6-8, 53, 65,

19  138-39, 143, 144, 175.) The bottom line is that Mattel provided no evidence disputing that

20  the MGA Parties hired Bryant with the good faith belief that he would resign from Mattel

21  and enter MGA's exclusive employ, without regard to his position at Mattel. (MGA OF ¶

22  148.) The commercial bribery predicate thus lacks evidentiary support and fails.

23     **D.**   **<u>Mattel Cannot Support its Common Law Unfair Competition Claim</u>**

24         Mattel's authority regarding its common law unfair competition claim does not apply,

25  as it reversed a grant of summary judgment in favor of defendant on common law unfair

26  competition because there was evidence supporting plaintiff's claim for misappropriation of

27  trade secrets. <u>See</u> <u>San Jose Const., Inc. v. S.B.C.C., Inc.</u>, 155 Cal. App. 4th 1528, 1546

28

1  (2007).  Misappropriation of trade secrets is not at issue in Phase One of this litigation, and

2  Mattel does not allege that the BRATZ are a "Trade Secret Material."  (SAA ¶¶ 106-15.)

3  Thus, Mattel's common law unfair competition claim should be reserved for Phase Two.

4        In addition, Mattel's claim that it has invested substantial time and money into the

5  development of BRATZ is ludicrous.  First, ████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████

7  ██████████████████████████████████████████.  (Bryant RF ¶ 80; MGA OF

8  ¶ 176.)  Second, if this Court credited that Bryant's Mattel "salary" and "employment

9  benefits" were a substantial investment, then certainly Bryant's MGA salary and benefits

10  were equal to or greater than "little or no cost."  Mattel's common law unfair competition

11  claim thus fails.

12  **IV.   MATTEL'S OPPOSITION CONFIRMS THAT THE MGA PARTIES DID NOT INTENTIONALLY INTERFERE WITH BRYANT'S CONTRACT**

13        The MGA Parties showed that they may contract with at-will employees of a

14  competitor under California law. (MGA MSJ at § IV.)[37]  Forced to concede that Bryant was

15  an at-will employee (Mattel OF ¶ 1) but faced with the public policy approving the MGA

16  Parties' conduct, Mattel feigns a distinction between Bryant's "'at-will' employment

17  agreement" and the Inventions Agreement (previously defined by Mattel as the

18  "Employment Agreement" (SAA ¶ 22)) and the Conflict of Interest Questionnaire – but

19  stops short of asserting these were not also "at-will" contracts. (Mattel Opp'n at 57.)

20  **A.   Mattel Created No Genuine Issue That The MGA Parties Lacked the Intent to Induce Bryant to Breach His Contract**

21

22        The MGA Parties showed that the "actual knowledge" requires proof that

23  interference with Mattel's contract must be "certain or substantially certain to occur" as

24  ───────────────

25  [37]     See also Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1337 (9th Cir. 1980) ("[m]ere solicitation of an employee, under no contract of employment, to leave and associate with a competing firm is not illegal"); Posdata Co. Ltd. v. Kim, 2007 WL 1848661, *7 (N.D. Cal. June 27, 2007); Troystar Invs., Inc. v. Sabat, 2008 WL 316218, at *4 (Cal. Ct. App. Feb. 6, 2008) (unpublished) ("Troystar's allegations support only the notion that a competitor attempted to entice away Troystar's employees. *That is not unlawful by any standard.*") (emphasis added).

26

27

28

result of MGA's acquisition of the BRATZ concept from Bryant, and such knowledge and intent cannot be proven where, as here, the defendant has verified that plaintiff's contractual relationship with the third party is not impacted.  (See MGA MSJ at § IV.B.)[38]  Mattel concedes that the "substantially certain" test applies.  (Mattel Opp'n at 59-60.)  Mattel responds that the MGA Parties' awareness of the existence of Bryant's contract with Mattel and their purported knowledge of "the basic terms" of inventions agreements in general[39] is sufficient to infer the MGA Parties' "requisite knowledge here" (id. at 58-59).  Not so.  Evidence of awareness of the contract or even the identity of the contracting parties "does not establish a genuine issue of material fact as to whether [defendant] caused [employee] to terminate its relationship with [plaintiff] or intended to bring about that result." Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F. Supp. 2d 1188, 1194-95 (C.D. Cal. 2006) (granting summary judgment).  Mattel's insistence that the MGA Parties knew that Bryant had a contract with Mattel and could guess what that contract required (Mattel Opp'n at 58-59, 62) ignores that the MGA Parties sought a copy of Bryant's Mattel agreements to determine what obligations he owed Mattel and obtained assurances from Bryant and his patent attorney that Bryant's development of the BRATZ concept fell outside the scope of Bryant's employment with Mattel. (MGA UF ¶¶ 14, 20.)[40]

Mattel flatly misrepresents the "diligence" performed by MGA counsel Rosenbaum as " ███████████████████████████████████████████████████████████████ (Mattel Opp'n at 63.)  Mattel fails to mention that there was

---

[38]     The MGA Parties respectfully refer the Court to Bryant's briefing demonstrating that there was no contractual breach by Bryant because any BRATZ-related drawings or models allegedly created by Bryant before his departure from Mattel do not fall within the scope of his contractual obligations to Mattel. (Bryant Br. at III.B, Bryant Opp'n at III.C.1, Bryant Reply § II.C.)

[39]     Mattel relies on Silicon Image, 2007 WL 1455903, at *4, but that court was determining whether allegations of knowledge, assumed to be true, sufficed to survive a motion to dismiss.

[40]     Since MGA's counsel verified Bryant's obligations to Mattel with Bryant and his attorney, the fact that Larian and O'Connor disagree whether O'Connor was also asked to verify Bryant's status is immaterial. (Mattel Opp'n at 63; MGA UF ¶¶ 17-18, 20-22; MGA RF ¶¶ 117, 130.)



indisputably

"

"[41]

(MGA UF ¶ 21; RF ¶ 83.)[42] Mattel does not explain what more Rosenbaum needed to ask an experienced patent attorney representing that she had researched his concern and was "     " the Employment Agreement was not implicated. (MGA UF ¶¶ 20-22.)[43] Mattel also ignores that the MGA Parties had received identical assurances from Bryant himself. (MGA UF ¶¶ 13-15.)

Mattel concedes as undisputed, but otherwise ignores, the warranty from Bryant that his signing of the agreement with MGA did not breach any existing contract with Mattel, that the BRATZ concept and drawings were "     " and were the exclusive property of MGA, and indemnifying MGA from third party claims to ownership of the BRATZ concept or drawings. (Mattel OF ¶ 23.)[44] Instead, Mattel claims that the MGA Parties' dealings with Bryant after verifying that the acquisition of BRATZ did not impact Mattel's contractual rights "     " (Mattel

[41] Mattel's characterization of Wang's review of the BRATZ development chronology as "limited" is puzzling, not only because Mattel's evidence shows she reviewed written and physical materials as well as interviewing Bryant himself (Mattel OF ¶ 84), but also because the MGA Parties would have no reason to query the extent of an experienced patent attorney's review.

[42] Mattel makes much of the irrelevant fact that "     " (Mattel Opp'n at 63) (emphasis added). So what. "     " indisputably asked when Bryant created BRATZ, in relation to his employment at Mattel. (MGA UF ¶¶ 21-22.)

[43] Mattel implies that Rosenbaum should have researched "whether Bryant owned the copyrights in any of the BRATZ materials he was seeking to sell to MGA" himself but offers no factual or legal support suggesting his faith in Wang was misplaced or what additional research he could have done. (Mattel Opp'n at 63.) In fact, there was nothing more that he could have done.

[44]

Opp'n at 60.)[45] Mattel claims, <u>without any evidence</u>, that the MGA Parties "encouraged Bryant to use Mattel's resources to develop BRATZ" and that MGA expected Bryant to "perform work for MGA" while still at Mattel (<u>id.</u> at 60-61) but it cannot reconcile these claims with the fact that the MGA Parties instructed and expected Bryant to quit Mattel on signing the contract. (MGA UF ¶¶ 24-26.)[46] Thus, there is no genuine issue as to the MGA Parties' lack of intent to interfere with Bryant's Employment Agreement.

## B.   The MGA Parties Did Not Induce Bryant to Leave Mattel and Therefore Could Not Be the Cause of His Alleged Breach

Mattel bizarrely claims that "the issue is not who called whom first." (Mattel Opp'n at 60.) Not true. A contracting party is not liable for intentional interference where the "breaching" party initiates the contact. (MGA MSJ at § IV.C.)[47] Mattel does not offer any evidence disputing that (1) Bryant approached MGA with his BRATZ concept at freelancer Marlow's[48] suggestion (Mattel OF ¶¶ 5, 6, 10), (2) Bryant pitched BRATZ to O'Connor, Garcia and Larian <u>on September 1, 2000</u> (<u>id.</u> ¶ 12), and (3) Bryant contracted with MGA on October 4, 2000 (<u>id.</u> ¶ 23). Mattel tries to muddy the waters by claiming Bryant approached MGA earlier in the summer of 2000,[49] which simply confirms that <u>Bryant approached MGA.</u>

---

[45]   Mattel relies on <u>Plessinger v. Castleman and Haskell</u>, 838 F. Supp. 448, 453 (N.D. Cal. 1993), where the court noted "<u>an allegation</u> that the defendant engaged in an intentional act designed to 'disrupt' the plaintiff's contractual relationship" is enough to survive a motion to dismiss –which means little in the summary judgment context.

[46]   Mattel fails to explain how intent to cause Bryant's alleged breach of his agreement in selling BRATZ to MGA is demonstrated by MGA's paying Bryant $162 for work on what Mattel concedes was a "<u>separate</u>" Prayer Angels project and reimbursing expenses Bryant incurred in off-hours shopping trips <u>after the MGA contract was signed.</u> (Mattel Opp'n at 60; <u>see also</u> MGA OF ¶¶ 56, 65, 144.)  Apparently, ████████████████████████ (Mattel Opp'n at 43.)

[47]   Citing no authority, Mattel asserts that "a seller needs a buyer" and that as Bryant did not breach his Inventions Agreement <u>until</u> he sold BRATZ to MGA, MGA is liable. (Mattel Opp'n at 60 nn.179, 181.) Not so. <u>See</u> Restatement (Second) Torts § 766, cmt. n ("B is under contract to sell certain goods to C. He offers to sell them to A, who knows of the contract. A accepts the offer and receives the goods. A has not induced the breach and is not subject to liability[.]").

[48]   In relying on Bryant testimony that Marlow was "working for" MGA as an employee, Mattel omits Bryant's express testimony that Marlow was performing work for MGA as an independent contractor, specifically <u>not</u> as a MGA employee. (MGA RF ¶ 3.)

[49]   Mattel relies on testimony from ███████████████████████████████

---

## V.   MATTEL CREATED NO GENUINE ISSUE TO SAVE ITS AIDING AND ABETTING CLAIMS AGAINST THE MGA PARTIES

As already shown, Bryant owed no fiduciary duty to Mattel and therefore the MGA Parties could not have assisted in any breach of such duty. (See Bryant MSJ at § III.A.; Bryant Opp'n at § III.C.2.; MGA MSJ at § V.; MGA Opp'n at § II.A.) Mattel asserts in response that the MGA Parties knew of Bryant's breaches of duty and "substantially assisted Bryant's wrongdoing"[50] by contracting with Bryant, paying him for "███████████████████████████████████████████████████" (Mattel Opp'n at 56). But the MGA Parties lacked both the actual knowledge of and intent to cause any alleged breach of duty by Bryant. (Supra § IV; see also MGA Opp'n at § II.B.-C.) Moreover, Mattel cannot show that an employee breaches a duty to its current employer by negotiating an employment agreement with a competitor, see Am. Home Shield of Cal., Inc. v. Fid. Nat'l. Home Warranty Co., 2003 WL 21085278, at *12 (Cal. Ct. App. May 14, 2003) (unpublished), and it is undisputed that the MGA Parties told and expected Bryant to leave Mattel as soon as he signed his agreement with MGA. (MGA UF ¶¶ 24-26; MGA OF ¶¶ 47, 140-43.)  Mattel cannot explain how MGA's payment of $162.38 for three unsolicited sketches by Bryant on an unrelated Prayer Angels project (MGA OF ¶¶ 56, 144), and reimbursement of expenses Bryant incurred in

(MGA RF ¶ 116.) ████████(MGA OF ¶ 61), and ███████████████████," but could not be more specific. (MGA RF ¶ 81.)  Mattel also contends Garcia "██████████████████████████████ (See Mattel CB OF ¶ 163.) Finally, Mattel claims the "various stories widely diverge" on the irrelevant point that Bryant had another meeting set up by ██████ (MGA RF ¶ 81.)

[50]   The "ordinary business transactions" potentially satisfying the substantial assistance prong in Casey v. U.S. Bank Nat'l. Ass'n., 127 Cal. App. 4th 1138 (2005), cited by Mattel, included "allowing the [defendants]' skullduggery in connection with the bank accounts (see, e.g., opening accounts for sham business entities, transferring money from those accounts to themselves through forged checks and checks that exceeded monetary restrictions, and carrying away huge, unreported sums of cash in unmarked duffel bags)" – and, as the court noted, would only constitute substantial assistance "if the bank *actually knew* those transactions were assisting the customer in committing a specific tort" since *"[k]nowledge is the crucial element."*  Id. at 1144-45 (emphasis added).

1  off-hours shopping trips for BRATZ (id. ¶ 65), equal "substantial assistance." Indeed, MGA

2  indisputably did not commission, pay for, or use any other Bryant "work" before Bryant

3  signed his contract with MGA on October 4, 2000. (Id. ¶¶ 6, 19, 59, 131-32, 135-39, 144.)

4  ## VI.   MATTEL IS NOT ENTITLED TO RULE 56(F) RELIEF

5      Mattel submitted a "Rule 56(f) Declaration of B. Dylan Proctor", but requested no

6  relief under Rule 56(f) in its opposition. As such, Rule 56(f) relief is improper, and the

7  declaration for this nonexistent request should be stricken. Foster v. Arcata Associates, Inc.,

8  772 F.2d 1453, 1467 (9th Cir. 1985) ("We reject appellant's claim [under Rule 56(f)]

9  because she failed to follow the proper procedures … for obtaining a continuance or other

10  appropriate discovery order when opposing a motion for summary judgment."), overruled

11  on other grounds by, Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262 (9th Cir. 1991).

12                                    **CONCLUSION**

13      For the foregoing reasons, and for the reasons stated in the MGA Parties' opening

14  papers, their Motion for Partial Summary Judgment should be granted in its entirety.

15  DATED: April 1, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16                          By: _____ with permission

17                                    Jason D. Russell
                                      Attorneys for the MGA Parties

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' [REDACTED] Reply in Further Support of Their Motion for Partial Summary Judgment –
Case No. CV 04-9049 SGL (RNBx)
30

510990.01-Los Angeles Server 2A - MSW