QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

The Honorable Stephen G. Larson

**REPLY IN SUPPORT OF MOTION OF MATTEL, INC. TO DISQUALIFY MGA ENTERTAINMENT, INC.'S COUNSEL SKADDEN ARPS AND EXPERT CHRISTINA TOMIYAMA**

**PUBLIC REDACTED**

Hearing Date: April 7, 2008
Time: 10:00 a.m.
Place: Courtroom 1

**Phase 1:**
Discovery Cut-Off: January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. TOMIYAMA CONVEYED PRIVILEGED INFORMATION TO SKADDEN .......... 2

A. Tomiyama Possesses Privileged Information .......... 2

B. Tomiyama Conveyed Privileged Information to Skadden .......... 5

C. Tomiyama's Testimony Contradicts Skadden's Declarations That They Warned Her Not to Disclose Privileged Information .......... 6

D. Skadden Does Not Dispute That It Advised Tomiyama to Breach Her Agreements with Mattel .......... 8

E. Tomiyama's Disclosures to Skadden Will Have A Continuing Effect, And Disqualification Is the Only Appropriate Remedy .......... 10

F. MGA Makes No Effort To Distinguish Mattel's Authority .......... 11

II. TOMIYAMA MUST BE DISQUALIFIED .......... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

Arnold v. Cargill Inc., 2004 WL. 2203410 (D. Minn., 2004) .......... 4, 7, 8, 12

B-C Housing Partnership, L.P. v. Apollo Ltd. Partnership, 2002 WL. 31628763 (Cal. App. Ct. 2002) .......... 12

C.I.R. v. Banks, 543 U.S. 426 (2005) .......... 9

Cargill v. Bedine, 2007 WL. 1813762 (E.D. Cal. 2007) .......... 7, 12

Collins v. State, 121 Cal. App. 4th 1112 (2004) .......... 6

In re Complex Asbestos Litigation, 232 Cal. App. 3d 572 (1991) .......... 6, 11

Continental Ins. Co. v. Superior Court, 32 Cal. App. 4th 94 (1995) .......... 6

In re EXDS, Inc., 2005 WL. 2043020 (N.D. Cal. 2005) .......... 6, 8

Fowler v. Varian Associates, Inc., 196 Cal. App. 3d 34 (1987) .......... 9

Lewis v. Capital One Servs., 2004 U.S. Dist. LEXIS 26978 (E.D. Va. 2004) .......... 10, 11

MMR/Wallace Power & Indus., Inc. v. Thames Assoc., 764 F. Supp. 712 (D. Conn. 1991) .......... 4, 8, 11, 12

Maruman Integrated Circuits, Inc. v. Consortium Co., 166 Cal. App. 3d 443 .......... 6, 11

Nalian Truck Lines, Inc. v. Nakano Warehouse & Transp. Corp., 6 Cal. App. 4th 1256 (1992) .......... 6

Neal v. Health Net, Inc., 100 Cal. App. 4th 831 .......... 12

Packard Bell NEC, Inc. v. Aztech Systems, LTD., 2001 WL. 880957 (C.D. Cal., 2001) .......... 7

Petroleum Ins. v. Hartford Accident and Indemnity Co., 111 F.R.D. 318 (D. Mass. 1983) .......... 4

Rice v. Baron, 456 F. Supp. 1361 (S.D.N.Y. 1978) .......... 12

Shadow Traffic Network v. Superior Court, 24 Cal. App. 4th 1067 (1994)....3, 6, 7, 8

Space Systems/Loral v. Martin Marietta Corp., 1995 WL. 686369 (N.D. Cal. 1995)....12

Taylor v. Lifetouch Nat'l Sch. Studios, Inc., 490 F. Supp. 2d 944 (N.D. Ind. 2007)....8

Williams v. Trans World Airlines, Inc., 588 F. Supp. 1037 (W.D. Mo. 1984)....11

## Preliminary Statement

MGA's Opposition has two important omissions. First, MGA offers no declaration from Tomiyama—no denial that she received privileged communications, no denial that she disclosed privileged communications—nothing. That is because she cannot deny it. She has already testified that she cannot deny that she received privileged information. Exhibit A to her report—which she prepared for Mattel's lawyers and at their direction—proves conclusively that she did indeed receive privileged information and gave it to MGA's counsel.

Second, Mr. Plevan does not dispute Ms. Tomiyama's testimony that she showed him her agreement to notify Mattel of her retention, and that he advised her to breach her promise. Mr. Plevan's direction to Tomiyama to keep quiet prevented Mattel from taking steps to protect its privileged information.

Instead, Mr. Plevan and his firm plead ignorance. They claim they did not know Tomiyama had attorney-client and work product information. They explain that they never intended to obtain such information. The flaw with that argument is that Mattel need not prove an improper intent. Disqualification is not punitive—it is remedial. All that must be shown is that MGA's lawyers had access to Mattel's privileged information pertinent to this case. The evidence shows that Tomiyama did convey Mattel's privileged information to Skadden. Even if such evidence did not exist, MGA certainly has not rebutted the presumption that she did so.

If MGA's attorneys were in fact ignorant, it was willful ignorance. Skadden learned from Tomiyama that she had assisted the Mattel Legal Department in assessing infringement, including dolls at issue in this case. It knew that she met with Mattel attorneys; that they gave her direction as to what to do; and that she prepared reports for them. Any claimed ignorance was tactical, not innocent.

Moreover, to profess ignorance, MGA's attorneys must resort to throwing Tomiyama under the bus. She testified that no one at Skadden told her not to disclose attorney-client communications. Mr. Plevan and Ms. Campana contradict

her, asserting that they did tell her, and tacitly blame her for not calling to their attention what information was privileged. This Court need not resolve the contradictions between MGA's own witnesses. Tomiyama is not a lawyer. Not surprisingly, she testified that she does not know what constitutes privileged information. Mr. Plevan does not explain why any reasonable attorney—knowing what he knew about Tomiyama and her role at Mattel—would put such a crucial decision in the hands of an untrained lay person. He cannot blame Tomiyama.

Any suggestion that this was all an innocent misadventure is rebutted by Skadden's admitted instruction to Tomiyama not to inform Mattel that she had been contacted by them. MGA's lawyers assert that Mattel was obligated to obtain a protective order to prevent Tomiyama from disclosing privileged information. Skadden should not be heard to complain that Mattel did not act on information Skadden actively concealed. Moreover, attorneys do not have to be told by a judge that they may not have an opponent's attorney-client communications.

Ironically, if Tomiyama had simply complied with the notice provision in her contract, MGA would not be in the position it finds itself in now. The provision would have worked as it was intended: Mattel would have moved for a protective order, the Court would have learned of the information she possessed, and its disclosure would have been prevented. Now, because of Skadden's poor judgment, there is only one way to put the genie back in the bottle. Skadden and Tomiyama must be disqualified.

## Argument

## I. TOMIYAMA CONVEYED PRIVILEGED INFORMATION TO SKADDEN

### A. Tomiyama Possesses Privileged Information

There is no dispute that Tomiyama: (1) discussed with Mattel's lawyers MGA's complaint; (2) repeatedly discussed with Mattel's lawyers potential claims of infringement of Mattel dolls, including MY SCENE; (3) repeated in her report

Mattel work product regarding the Mattel Law Department's methods of assessing infringement; (4) prepared a document at the direction of Mattel's counsel in connection with the Simba litigation, which MGA contends is directly related to this case; and (5) attached that document to her expert report to be used against Mattel.

MGA argues that the entirety of Tomiyama's discussion with Mattel's lawyers about MGA's complaint was limited to a single "joking comment." (Opp. at 2:3.) The evidence—and common sense—say otherwise. (Moore Dec. ¶ 6; Zeller Dec. ¶ 12.)[1] At deposition, Tomiyama was asked directly if she could deny that she substantively discussed MGA's complaint with Mattel's lawyers. Her answer was that she could not deny it.[2] In the face of the Moore and Zeller declarations, Tomiyama's "non-denial" is hardly compelling. Which is more plausible: that an in-house lawyer and a Quinn Emanuel partner met with Tomiyama solely to joke about the language of MGA's complaint, or that they met with her to discuss MGA's allegations that the face painting developed by Tomiyama's department had evolved to infringe Bratz? The question answers itself. MGA offers no evidence to dispute Moore's and Zeller's sworn statements. Unlike MGA, Mattel's counsel knows what they discussed with Tomiyama.[3]

MGA concedes that Tomiyama—at the direction of Mattel's lawyers—reviewed dolls to determine whether they infringed the MY SCENE dolls at issue. But, they argue, she never compared them with Bratz. Again, this is untrue.[4] But

[1] The *in camera* Supplemental Moore and Zeller Declarations, submitted pursuant to the Court's direction, set forth this conversation in further detail. See Supp. Moore Dec ¶ 7-8; Supp. Zeller Dec. ¶ 5-11.

[2] Tomiyama Tr. at 257:22-258:7.

[3] Mattel concurrently files objections to these declarations. MGA argues that the publicly-filed Moore and Zeller declarations are insufficient to establish that Tomiyama possesses privileged information. (Opp. at 14.) But a party moving for disqualification "should not be required to disclose the actual information contended to be confidential," rather, "the court should be provided with the nature of the information and its material relationship to the proceeding." Shadow Traffic Network v. Superior Court, 24 Cal. App. 4th 1067, 1084-5 (1994). This is precisely what Mattel has done. Mattel's *in camera* submissions provide additional, privileged information at the direction of the Court.

[4] Sup. Moore Dec. ¶ 7-8; Sup. Zeller Dec. ¶ 5-6, 8, 10, 11.

even if it were true, it would not matter. MY SCENE is at issue in this case. MGA devotes six pages of its complaint to allegations that the MY SCENE line infringes Bratz. It is undisputed that Mattel's counsel conveyed to Tomiyama their mental impressions and opinions about the protectable characteristics of the MY SCENE dolls.[5] That goes to the core of MGA's claims against MY SCENE.

There is no serious dispute that Exhibit A is privileged. MGA only says it thought the privilege was waived. (Opp. at 16-17). It was wrong.[6] MGA says that it had no way of knowing that Exhibit A was privileged because it was not marked as such. This is precisely Mattel's point: MGA has no way of knowing whether any of the information provided to Skadden by Tomiyama is privileged because it has no knowledge, and can have no knowledge, of the circumstances under which the information was created or communicated to or from Tomiyama. Tomiyama herself claimed to have no understanding what is and is not privileged.[7] MGA is thus in no position to say whether or not it received privileged information. It knowingly—knowingly, since it knew it was dealing with a former Mattel employee who worked with Mattel's lawyers—put itself in a position in which it was highly likely to receive privileged information, as it did.

---

[5] Sup. Moore Dec. ¶ 5, 10, 11; Sup. Zeller Dec. ¶ 3, 11. The manner in which Mattel's attorneys instructed Ms. Tomiyama—the very basis of her so called methodology—is protected work product. See, e.g., Petroleum Ins. v. Hartford Accident and Indemnity Co., 111 F.R.D. 318, 321 (D. Mass. 1983) (employee's analysis performed at direction of counsel is privileged work product). So too are the fruits of that labor. See id.

[6] Supp. Zeller Dec. ¶ 18.

[7] Nor does it help MGA that Tomiyama does not understand the scope of her privileged knowledge. The privilege does not turn on whether the person disclosing privileged information understands that it is privileged. Arnold v. Cargill Inc., 2004 WL 2203410, at *8 (D. Minn., 2004); MMR/Wallace Power & Indus., Inc. v. Thames Assoc., 764 F. Supp. 712, 727 (D. Conn. 1991). Indeed, it is precisely because Tomiyama cannot distinguish between the privileged and non-privileged information she received that disqualification is necessary.

**B. Tomiyama Conveyed Privileged Information to Skadden**

MGA and Skadden unquestionably received Mattel's privileged information.[8] "Exhibit A" is, of course, Exhibit A. As explained in the moving papers—and not contradicted by the opposition—that document is an attempt by the Mattel Law Department to define, in visual terms, the scope of Mattel's protectable interests in connection with ongoing litigation. That document was never disclosed to any third parties, and is privileged.[9]

"Exhibit B" is Tomiyama's report itself. She describes how she [REDACTED] for Mattel, which she acknowledges was *at the direction* of Mattel's Law Department.[10] In describing both what she did—and did not do[11]—Tomiyama again reveals the process she and Mattel's Legal Department jointly developed to assess the scope of its intellectual property and its methodology for enforcing it. This is why MGA has risked so much for Tomiyama's testimony. [REDACTED] This is core privileged information. And, finally, Tomiyama's testimony makes clear that she thoroughly discussed these privileged matters with Skadden.[12]

Even if it were not clear that privileged information had been disclosed, Skadden would still have to be disqualified.[13] In cases where a former employee

---

[8] After Mattel filed its Motion, counsel for Bryant contacted Mattel's counsel and stated that, contrary to its earlier representation, an attorney from the Keker firm had been present at one meeting that Tomiyama attended. In contrast to Skadden, Bryant's counsel has been forthcoming about the nature of her interactions with Tomiyama. However, Mattel is still meeting and conferring with the Keker firm about this issue, and reserves the right to bring an appropriate motion.

[9] Zeller Dec. ¶ 13; Zeller Supp. Dec. ¶ 19-20.

[10] Tomiyama Report at 9.

[11] Tomiyama Report at 11 [REDACTED]).

[12] Tomiyama Tr. 224:8-12; 238:5-239:21; 246:3-7.

[13] MGA attempts to justify its actions by citing the unremarkable proposition that an adversary may contact its opponent's former employees. This does not translate into a (footnote continued)

with privileged information is hired by opposing counsel, California law presumes that privileged information has been disclosed. Shadow Traffic Network, 24 Cal. App. 4th at 1085; In re Complex Asbestos Litigation, 232 Cal. App. 3d 572, 596 (1991). This presumption is a "rule by necessity" because "the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff." Complex Asbestos, 232 Cal. App. 3d at 596. As such, all Mattel was required to show to give rise to the presumption is that Tomiyama "possesses confidential attorney-client information materially related to the proceedings before the court." Shadow Traffic, 24 Cal. App. 4th at 1084-85.

### C. Tomiyama's Testimony Contradicts Skadden's Declarations That They Warned Her Not to Disclose Privileged Information

MGA's counsel asserts that they warned Tomiyama not to disclose privileged information. (Plevan Dec. ¶¶ 8, 19; Campana ¶ 6.) This contradicts Tomiyama's testimony; she unequivocally denied that Skadden told her any such thing.[14] (Mtn. at 12; see also Plevan Dec. ¶ 19 (acknowledging that Tomiyama's testimony contradicts his declaration)). Even if the Court credits counsel's account, it is clear that any admonitions had no effect—which is predictable given Tomiyama's claim

---

right to learn attorney-client privileged information from that former employee. MGA's own cases admit this. In re EXDS, Inc., 2005 WL 2043020, *3 n.3 (N.D. Cal. 2005) ("California allows ex parte contacts with an opponent's former employees precisely for that purpose [obtaining information that aids discovery] (*absent improper conduct, such as seeking and using another party's privileged information*)") (emphasis added). Further, none of the non-disqualification cases MGA cites is on point. In re EXDS, Inc., 2005 WL 2043020 *5 (N.D. Cal., 1995) (former employee had no privileged information to disclose); Continental Ins. Co. v. Superior Court, 32 Cal. App. 4th 94, 120 (1995) ("[S]ince the former employee is not involved in the corporation's attorney-client relationship, ex parte communication cannot undermine that relationship."); Nalian Truck Lines, Inc. v. Nakano Warehouse & Transp. Corp., 6 Cal. App. 4th 1256 (1992) (no presumption of disclosure of privileged information from ex parte interview with former employee who does not enter into an employment relationship with counsel); Collins v. State, 121 Cal. App. 4th 1112, 1129 (2004) (no presumption when expert "has remained under the control of the moving party, and there is no evidence counsel knowingly retained the opposing party's expert or that the expert intentionally advised both sides").

[14] Tomiyama Tr. at 221:21-222:11.

that she has no ability to discern what communications were privileged.[15] See Cargill, 2004 WL 2203410, at *8 (denials that privileged information was communicated by a former employee to attorneys "[rang] hollow" because the former employee was "not trained in law" and therefore "not in a position to determine what [of Defendant's] information was discloseable and what was not discloseable without assistance of counsel"). Ultimately, the Court need not decide whether MGA's counsel did or did not warn Tomiyama. To the extent that MGA offers these statements to show innocent intent, they are irrelevant. Disqualification does not turn on counsel's intentions. See Shadow Traffic, 24 Cal.App.4th at 1086.

MGA's counsel's declarations disclaim any transfer of privileged information.[16] Again, how would they know? They claim not to know that Exhibit A was privileged because it was not marked as such. But the same would be true of anything that Tomiyama shared. Since they concede that they do not know the circumstances of Tomiyama's knowledge, MGA's counsel could not know whether anything she was reporting was privileged. See Cargill 2007 WL 1813762 at *12 (neither counsel nor lay witness in a position to determine what is privileged).

In Shadow Traffic, both the attorney and former expert declared that no privileged information had been disclosed. 24 Cal. App. 4th at 1086. The Court held that even assuming these declarations were true, the attorney could still obtain the benefit of the privileged information, because either "consciously or unconsciously" the privileged information could "shape or affect the analysis and advice" the expert rendered. Id.; see also Packard Bell NEC, Inc. v. Aztech Systems, LTD., 2001 WL 880957, at *9, n.2 (C.D. Cal., 2001) (statements of former employee and counsel that there was no transfer of privileged information did not preclude disqualification); MMR/Wallace, 764 F. Supp. at 726-27; Cargill, 2004 WL 2203410, at *8.

---

15 Id. at 221:6-13.

16 See Holden Dec. ¶¶ 5, 6; Pleavan Dec. ¶¶ 10, 18; Campana Dec. ¶¶ 4, 6, 8.

D. Skadden Does Not Dispute That It Advised Tomiyama to Breach Her Agreements with Mattel

Mr. Plevan admits knowing of Tomiyama's Separation Agreement, but is conspicuously silent when confronted with his advice to disregard her obligations. (Plevan Dec. ¶ 30.) He does not contradict Tomiyama's testimony that he reviewed her agreement, told her that it did not apply, and asked her to say nothing to Mattel.[17] Ironically, having instructed Tomiyama to conceal her work for MGA, it now cites In re EXDS, Inc. (Opp. at 9) to argue that Mattel should have sought a protective order. Mr. Plevan's instruction to Tomiyama made sure that would not happen.[18]

MGA's "fig leaf" is that the Separation Agreement "expired" as of April 13, 2007. (Opp. at 20.) Although her obligation to render consulting services ended in April 2007, the Separation Agreement remains in effect. Tomiyama's obligation to notify Mattel upon rendering services to a competitor expressly lasts for three years (until 2009) following her employment, and other provisions explicitly [REDACTED] [REDACTED][19]

MGA's final line of defense is the claim that her notification obligation did not attach because Tomiyama was working for MGA's counsel—not MGA. This is wrong. First, it is contrary to Tomiyama's Expert Consultant/Witness Engagement Agreement, which expressly provides that she is working for MGA.[20] Second, even

---

17 Tomiyama Tr. 356:18-23; 351:18-351:2.

18 Mattel pointed out that MGA has refused to disclose when MGA's prior counsel first contacted Tomiyama. (Mtn. at 13, 21 n. 101.) Neither the Opposition nor MGA's declarations answers this question. It seems likely that it was while Tomiyama was still a Mattel consultant.

19 Separation Agreement, Zeller Dec. Ex. 3, Section 3(e). For this reason, Taylor v. Lifetouch Nat'l Sch. Studios, Inc., 490 F. Supp. 2d 944 (N.D. Ind. 2007), is irrelevant. The Taylor contract explicitly stated that only six specific paragraphs would survived the termination of plaintiff's employment by defendant. There is no such clause here.

20 Tomiyama Expert Consultant/ Witness Engagement Agreement ("Tomiyama Engagement"), Plevan Dec., Ex. A. Under that agreement: (i) MGA agrees to pay Tomiyama for her services; (ii) Skadden has no obligation to Tomiyama for fees or expenses; (iii) MGA owns Tomiyama's work; (iv) MGA controls the circumstances under which Tomiyama can disclose her work; (v) Tomiyama is precluded from being adverse to (footnote continued)

if Tomiyama had been retained by Skadden alone, MGA's argument would be a slice too thin. A law firm is an agent for its clients. "In fact, [the attorney-client] relationship is a quintessential principal-agent relationship." C.I.R. v. Banks, 543 U.S. 426, 427 (2005). If Tomiyama had worked only for Skadden, she would still be working for MGA. Third, Tomiyama's Separation Agreement requires notice to Mattel not only if Tomiyama becomes employed by a competitor, but also in the event she [REDACTED] to a competitor.[21] It cannot reasonably be disputed that Tomiyama has provided services to MGA as one of its experts. Fourth, MGA's attempt to distinguish between Skadden and MGA does not address her other breaches of the Separation Agreement (like retaining Exhibit A and failing to notify Mattel as soon as she was contacted by MGA's lawyers) or the Employee Patent and Confidence Agreement.[22]

MGA charges that Mattel's motion is a tactical ploy, arguing that it informed Mattel in early January that Tomiyama might serve as an expert witness and Mattel "took no action." (Opp at 2.) The January 7, 2008, interrogatory responses MGA points to identified Tomiyama among more than a hundred other potential fact witnesses, including many current Mattel employees who have privileged information, such as Robert Normile, Mattel's General Counsel.[23] The January interrogatory response did not place Mattel "on notice" that MGA would offer Tomiyama as an expert—those responses say nothing about expert witnesses.

---

MGA; (v) MGA can authorize Tomiyama incurring expenses; and (vi) MGA even appears as a party in the signature blocks.

[21] Separation Agreement, Zeller Dec. Ex. 3, Section 3(l).

[22] MGA's covenant-not-to-compete argument is a red herring. Tomiyama is not prohibited from working for competitors. All she promised is that she would provide notice to Mattel, which would permit Mattel to obtain assurances that its proprietary information would not be disclosed nor used by the new employer. Such a provision is not illegal. To the contrary, courts permit agreements that protect proprietary information: "Agreements designed to protect an employer's proprietary information do not violate section 16600." Fowler v. Varian Associates, Inc., 196 Cal. App. 3d 34 (1987).

[23] See MGA's Responses to Mattel's Revised Third Set of Interrogatories, Eckles Dec., Ex. A, at 56 (Response to Interrogatory No. 31).

**E. Tomiyama's Disclosures to Skadden Will Have A Continuing Effect, And Disqualification Is the Only Appropriate Remedy**

MGA argues that even if Tomiyama received Mattel's privileged information, disqualification is unwarranted because the disclosure will have only a limited impact. (Opp. 22.) MGA argues that Mattel cannot meet the "exacting 'continuing effects'" standard because, for example, conversations with Mattel's lawyers that Tomiyama cannot remember "cannot affect the case." (Opp. at 22.) This does not follow. Even if Tomiyama has no present recollection of specific instances of privileged conversations, she may yet unwittingly divulge the *content* of those conversations—particularly since she claims not to know what is privileged and what is not. And indeed she has.

Skadden's admission that it reviewed Exhibit A is alone a basis for disqualification. In Lewis v. Capital One Services the court disqualified plaintiff's counsel for their improper review of a single privileged document. Lewis v. Capital One Servs., 2004 U.S. Dist. LEXIS 26978 *7-11 (E.D. Va. 2004). Here, as in Capital One, the fact that MGA's counsel reviewed at least one privileged document, "coupled with the fact that the full extent of Plaintiff's taint is unknown, illustrate that [counsel] must be disqualified." Id., at 11.[24]

---

24 Skadden's reliance on Maruman v. Consortium is misguided. First, the Court in Maruman addressed the issue of "whether exposure of an attorney to confidential and privileged information requires, as a matter of law, the disqualification of that attorney and his associates." Maruman Integrated Circuits, Inc. v. Consortium Co., 166 Cal. App. 3d 443, 448 (1985). In rejecting "so broad a rule," the Court was not endorsing the other extreme, that the exposure of an attorney to confidential and privileged information *forbids*, as a matter of law, disqualification. Id. Rather, the Court was identifying a set of facts under which disqualification was not a necessary remedy. As the Court in Complex Asbestos observed, that set of facts is limited to cases in which a party "disclose[s] information to its own counsel in the prosecution of its own lawsuit." Complex Asbestos v. Owens-Corning, 232 Cal. App. 3d 572, 591 (1991). Disqualification is ineffective in these circumstances because "[e]ven if counsel were disqualified, the party would be free to give new counsel the information, leaving the opposing party with the same situation." Id. In this case, the privileged information Tomiyama disclosed was not in prosecution of her own lawsuit.

Ultimately, there is no such thing as an "immaterial" or "irrelevant" breach of the attorney-client privilege. MGA does not cite a single case suggesting that a "small breach" of privilege does not justify disqualification. Courts have recognized that a breach of the privilege taints the entire proceeding such that only disqualification can set it right again. Williams v. Trans World Airlines, Inc., 588 F. Supp. 1037, 1040, 1045 (W.D. Mo. 1984) (even though the former employee stated she had "no specific recollection" of confidential information "[t]he only effective way at this time to protect the trial process" from the "taint" and "nagging suspicion" that plaintiffs may have benefited from acquiring confidential information was to disqualify counsel); MMR/Wallace Power & Indus., Inc., 764 F. Supp. at 726 (the mere possibility that privileged information had been released "threate[ed] to taint the integrity of [the] case" and was sufficient to warrant disqualification).

**F. MGA Makes No Effort To Distinguish Mattel's Authority**

Mattel's opening brief spent more than a page discussing two analogous cases—Richards and MMR/Wallace. MGA's Opposition attempts to distinguish Richards in a two line parenthetical and completely ignores MMR/Wallace. While it never confronts these cases directly, MGA appears to argue that California law is different—that while its conduct would require disqualification in other jurisdictions, California holds its lawyers to a lower standard (Opp. at 7.) This is incorrect.

The conduct requiring disqualification is the same in California as in other states. The Ninth Circuit and California cases that MGA cites rely on language common to other states and federal circuits.[25] MMR/Wallace specifically has been

[25] For example, MGA quotes Shurance v. Planning Control Inter. in its Section entitled "Attorney Disqualification in California is Subject to Strict Scrutiny." (Opp. at 7.) However, the Ninth Circuit quotation MGA uses to support this contention is actually lifted from a Southern District of New York opinion, Rice v. Baron, 456 F.Supp. 1361, 1370 (S.D.N.Y. 1978).

cited with approval by California federal and state courts.[26] None of these cases suggests that California lawyers are held to a lower standard.

## II. TOMIYAMA MUST BE DISQUALIFIED

MGA argues that Tomiyama did not have a confidential relationship with Mattel. (Opp. at 24.) This is refuted by the record. When she began her tenure at Mattel in 1991, Tomiyama acknowledged that she would frequently obtain Mattel's confidential information, and agreed to shield that information from disclosure [REDACTED][27] Then, when she left Mattel in 2004, she once again promised [REDACTED] such information.[28] She agreed that this promise would [REDACTED][29] Plainly, Mattel had a confidential relationship with her.[30] Finally, absent disqualification of Tomiyama, Mattel is in a "no win" situation: it cannot cross-examine Tomiyama about the methodology she claims she used to [REDACTED] at Mattel without disclosing that privileged information to the world.

DATED: April 2, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By John B. Quinn /s/
John B. Quinn
Attorneys for Mattel, Inc.

---

[26] See B-C Housing Partnership, L.P. v. Apollo Ltd. Partnership, 2002 WL 31628763, *4 n.4 (Cal. App. Ct. 2002) (disqualifying counsel when plaintiff failed to rebut presumption that expert had disclosed privileged information); Space Systems/Loral v. Martin Marietta Corp., 1995 WL 686369, *4 (N.D. Cal. 1995) (disqualifying expert who had opposing party's privileged information); Cargill Inc. v. Budine, 2007 WL 1813762, *11 (E.D. Cal., 2007) ("Given their 'undeniable interest in preserving any tactical advantage they may have garnered,' these assertions are unavailing.").

[27] Zeller Dec., Ex 2, Section 5. Her obligations extended not only to confidential information that she received, but also to [REDACTED] Id.

[28] Separation Agreement, Zeller Dec., Ex. 3, Section 3(e).

[29] Id.

[30] Although MGA suggests that it has shown that Mattel did not have a confidential relationship, nowhere is this argument made. (Opp. at 24.) Indeed, MGA specifically concedes that Tomiyama was (and still is) bound by the nondisclosure provisions of her Separation Agreement. (Opp. at 20.)