1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
JOHN B. QUINN (State Bar No. 090378)
2 | MICHAEL T. ZELLER (State Bar No. 196417)
JON D. COREY (State Bar No. 185066)
3 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
4 | Telephone: (213) 443-3000; Facsimile: (213) 443-3100

5 | STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG (State Bar No. 048158)
6 | MICHAEL J. NIBORSKI (State Bar No. 192111)
2029 Century Park East, Suite 1600
7 | Los Angeles, California 90067-3086
(lacalendar@stroock.com)
8 | Telephone: (310) 556-5800; Facsimile: (310) 556-5959

9 | Attorneys for MATTEL, INC.

10 |
| UNITED STATES DISTRICT COURT
11 |
| CENTRAL DISTRICT OF CALIFORNIA
12 |
| EASTERN DIVISION
13 |

| CARTER BRYANT, an individual,            ) Case No. CV 04-9049 SGL (RNBx)
14 |                                          ) Consolidated with
|         Plaintiff,                        ) Case No. CV 04-09059
15 |                                          ) Case No. CV 05-02727
|   vs.                                     )
16 |                                          )
| MATTEL, INC., a Delaware                  ) MATTEL, INC.'S REPLY IN
17 | corporation,                             ) SUPPORT OF MOTION OBJECTING
|                                          ) TO DISCOVERY MASTER'S
18 |         Defendant.                        ) FEBRUARY 26, 2008 ORDER
|                                          ) DENYING MATTEL'S MOTION TO
19 |                                          ) COMPEL DEPOSITION OF
|                                          ) CHRISTOPHER PALMERI
20 |                                          )
|                                          ) [Second Supplemental Declaration of
21 |                                          ) Michael J. Niborski filed concurrently]
|                                          )
22 |                                          ) Hearing Date:    April 14, 2008
|                                          ) Time:            10:00 a.m.
23 |                                          ) Place:           Courtroom 1
|                                          )
24 |                                          )
|                                          )
25 |                                          ) **Phase 1**
| AND CONSOLIDATED ACTIONS                  ) Discovery Cut-off:   January 28, 2008
26 |                                          ) Pre-trial Conference: April 21, 2008
|                                          ) Trial Date:          May 27, 2008
27 |

28 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................ 1

I.   ARGUMENT...................................................................................... 3

    A.   The Discovery Master Erred in Applying the Reporter's Privilege to the Verification of the Source of Published Statements ..................... 3

        1.   The Source of Larian's Statement Was Published ......................... 3

        2.   The Reporter's Privilege Does Not Extend to the Verification of the Published Source of Statements ..................... 4

    B.   The Discovery Master's Application of the Reporter's Privilege Overlooked the Importance of Larian's Statement and MGA's Failure to Confirm It ...................................................................... 6

        1.   The Source of Larian's Statement Is Clearly Relevant to Important Claims and Defenses in this Case ................................ 6

        2.   The Source of Larian's Statement Is Not Cumulative ................. 7

        3.   Mattel Has Exhausted All Alternative Sources ............................ 8

    C.   The California Shield Law Does Not Apply.......................................... 10

    D.   There Are No Grounds On Which To Award Mr. Palmeri Attorneys' Fees ...................................................................................... 12

II.  CONCLUSION ................................................................................... 12

i

# TABLE OF AUTHORITIES

**Page**

## Cases

Agster v. Maricopa County,
422 F.3d 836 (9th Cir. 2005) ................................................................ 10, 11

In re Application of Nat'l Broadcasting Co.,
79 F.3d 346 (2d Cir. 1996) ........................................................................ 10

Baker v. F & F Investment,
470 F.2d 778 (2d Cir. 1972) ........................................................................ 9

Branzburg v. Hayes,
408 U.S. 665 (1972) ...................................................................................... 9

Brinston v. Dunn,
919 F. Supp. 240 (S.D. Miss. 1996) ....................................................... 4, 5

Dillon v. City and County of San Francisco,
748 F. Supp. 722 (N.D. Cal. 1990) ................................................... 4, 5, 10

Los Angeles Mem. Coliseum Comm'n v. NFL,
89 F.R.D. 489 (C.D. Cal. 1981) ................................................................ 10

In re Maykuth,
2006 WL. 724241 (E.D. Pa. 2006) .............................................................. 5

NLRB v. Mortenson,
701 F. Supp. 244 (D.D.C. 1988) ................................................................. 5

SEC v. Seahawk Deep Ocean Tech., Inc.,
166 F.R.D. 268 (D. Conn. 1996) ................................................................ 5

Shaklee Corp. v. Gunnell,
110 F.R.D. 190 (N.D. Cal. 1986) ........................................................ 10, 11

Shoen v. Shoen,
5 F.3d 1289 (9th Cir. 1993) .................................................................... 4, 5

Shoen v. Shoen,
48 F.3d 412 (9th Cir. 1995) ........................................................................ 6

Steaks Unlimited, Inc. v. Deaner,
623 F.2d 264 (3d Cir. 1980) ...................................................................... 10

In re Stratosphere Corp. Sec. Litig.,
183 F.R.D. 684 (D. Nev. 1999) ................................................................. 10

In re Vmark Software,
1998 WL. 42252 (E.D. Pa. 1998) ................................................................ 5

Wright v. Fred Hutchinson Cancer Research Center,
206 F.R.D. 679 (W.D. Wash. 2002) .......................................................... 12

ii

Zerilli v. Smith,
    656 F.2d 705 (D.C. Cir. 1981) ............................................................................... 9

### Statutes

Fed. R. Civ. P. 30 ....................................................................................................... 8, 9

Fed. R. Civ. P. 30(b)(6) ........................................................................................... 1, 7, 9

Fed. R. Civ. P. 37(a)(5)(B) ........................................................................................... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Mattel seeks the limited deposition of Christopher Palmeri to obtain admissible evidence that Isaac Larian claimed to BusinessWeek (and the world) in July 2003 that he "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers."   Mattel has now deposed three witnesses regarding that claim -- Larian himself, David Malacrida (MGA's spokesman), and a Rule 30(b)(6) witness designated by MGA to testify about the statement.  Larian testified that he did not recall making the statement.  Mr. Malacrida and MGA's Rule 30(b)(6) witness had no information, and they confirmed that the only participants in the interview were Larian and Palmeri.

Mattel needs Mr. Palmeri's testimony in order to cut through MGA's evasion regarding the BusinessWeek article.   The Discovery Master denied Mattel that important testimony.  In doing so, the Discovery Master made clear errors of law and fact.  His ruling should be overturned.

The Discovery Master found that verification of the statement at issue about the origins of Bratz was not clearly relevant to an important issue in the case and would be cumulative of other discovery.  Not so.  As the Court is aware, the date of accrual of Mattel's claims against MGA and Carter Bryant, and MGA's and Larian's fraudulent concealment of Bryant's disloyalty, are central issues in this litigation. The fact that Larian publicly claimed, nearly three years after Bryant brought him Bratz while Bryant was employed by Mattel, to have thought up Bratz based on observing his children bears directly on those issues, and as discussed below, Mattel has obtained no other discovery regarding Larian's assertions to Palmeri in July 2003.   The Discovery Master failed to recognize this, incorrectly assuming that Mattel was seeking the information primarily for the purposes of impeachment.

Furthermore, the reporter's privilege does not extend to merely verifying published information.  A plain reading of Mr. Palmeri's article leaves no question

that Larian is the source of the statement at issue.  Mr. Palmeri argues that Larian's identity as the source is not "published" -- a position that defies a common-sense reading of the article and the law's requirement that a statement be interpreted by the Court in context and from the standpoint of an average reader.  Mr. Palmeri failed to cite any authority supporting his expansive reading of the reporter's privilege and hyper-technical interpretation of the Larian statements.  Despite this, the Discovery Master assumed that Larian's identity as the source of the statements was unpublished, and then went on to find that Mattel had failed to overcome the qualified privilege.  Skipping that critical determination -- whether the information sought was unpublished and even subject to a claim of privilege -- was clearly erroneous and contrary to law.

Even were the privilege to apply here, it should yield under the circumstances. The Discovery Master found that Mattel had not exhausted all reasonable alternative sources of the information because it had not asked Larian whether he made the statement.  Mattel has now done so -- and Larian claimed that he did not recall. Palmeri argues that Mattel should be required to depose 60 or more people on the issue before being able to question him, but that contention is inconsistent with the Federal Rules' limitation on depositions.  Moreover, the other testimony Mattel has obtained makes clear that Mr. Palmeri is the only remaining person with the information Mattel seeks.  That Larian might have said things to other people does not make those other people alternative sources for Larian's claim to BusinessWeek in July 2003.

Mr. Palmeri also attempts to resurrect his argument that the state shield law provides an alternative basis on which to uphold the Discovery Master's Order.  But the Ninth Circuit is clear that state privilege law does not apply in federal suits in which both federal and state-law claims are at issue, as is the case here.

MATTEL'S REPLY RE MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER

1    I.    **ARGUMENT**

2          A.    **The Discovery Master Erred in Applying the Reporter's Privilege to the Verification of the Source of Published Statements**

3          One of Mattel's principle arguments before the Discovery Master was that the

4    reporter's privilege does not apply here because the source of the statements Mattel

5    seeks to verify is published.   The Discovery Master overlooked this threshold

6    question, because nowhere in the Discovery Master's Order does he make a

7    determination as to either (1) whether the source of the statements was published or

8    (2) whether the reporter's privilege applies to published information.  Neglecting to

9    engage in that analysis was contrary to law and clear error.   Had the Discovery

10   Master considered the issue, the facts and law would have compelled him to order

11   Mr. Palmeri to be made available for a limited deposition to verify the statements by

12   Larian published in BusinessWeek.

13               1.    **The Source of Larian's Statement Was Published**

14         As detailed in Mattel's motion, any reasonable reader of Mr. Palmeri's article

15   would conclude that Isaac Larian was the source of the statement that "he got the

16   idea for Bratz after seeing his own kids run around in navel-baring tops and hip-

17   huggers."  The Discovery Master did not find differently.

18         In his papers before the Discovery Master, Mr. Palmeri went to great efforts to

19   argue that the source of Larian's statement was not published information.   Mr.

20   Palmeri largely abandons those efforts in opposition to Mattel's current motion.

21   Rather than seriously take issue with what any reasonable reader would recognize --

22   namely, that Larian was the source of the statements regarding his purported

23   inspiration for the idea of Bratz -- Mr. Palmeri now argues that the numerous cases

24   Mattel cites for the proposition that a court should interpret a published statement

25   within context and "from the standpoint of an average reader" are "irrelevant."[1]  But

26   Mr. Palmeri fails to cite <u>any</u> authority (case law or otherwise) to support his urged

27   interpretation that the source of Larian's statement is unpublished.  And Mr. Palmeri

28

---

[1]   Palmeri's Opposition at 5-6.

MATTEL'S REPLY RE MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER

1    fails to explain why defamation law -- in which the interpretation of written
2    statements is often at issue -- does not provide guidance to a Court that must interpret
3    a news article such as the one here.  There can be little question that Larian was the
4    source of the statement at issue, and Mr. Palmeri does not seriously contend that he
5    was not.  The information Mattel seeks was published.

**2.     The Reporter's Privilege Does Not Extend to the Verification of the Published Source of Statements**

6

7         The Discovery Master incorrectly assumed that Mr. Palmeri is entitled to
8    assert the reporter's privilege under Ninth Circuit law.  In fact, no Ninth Circuit case
9    has applied the reporter's privilege to the mere verification of published information.
10   Because the information Mattel seeks was published, the reporter's privilege does not
11   apply.

12        Palmeri begins his argument by proclaiming that Mattel relies on out-of-circuit
13   cases.[2]  Mr. Palmeri then fails to cite a single case within the Ninth Circuit in support
14   of his assertion that the privilege applies to the verification of published information.
15   In fact, the only case within the Ninth Circuit either party has cited on the matter is
16   Dillon v. City and County of San Francisco, 748 F. Supp. 722, 726 (N.D. Cal. 1990).
17   The court in that case found that the privilege did not apply to the personal
18   observations of a reporter who "has not been asked to reveal any confidential sources
19   or information, nor has been requested to produce or discuss any resource materials."
20   Dillon has been the last word on this issue in this Circuit for 18 years.

21        Palmeri tries to distinguish Dillon by contending it was decided before the
22   Ninth Circuit's decision in Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993), ("Shoen I").
23   But in Shoen I the Court applied the privilege to indisputably unpublished
24   information -- a writer's research materials.  The Ninth Circuit was faced with a
25   different situation, and it did not overrule the holding in Dillon.  Moreover, as Mattel
26   has noted, since the Shoen I decision, courts have continued to recognize that the
27   privilege does not apply to published information.  See, e.g., Brinston v. Dunn, 919

28

---

[2]    Palmeri's Opposition at 4-5.

4

1   F. Supp. 240, 244 (S.D. Miss. 1996) (holding that it was proper to compel the
2   deposition of journalist to authenticate published statements, but not regarding
3   unpublished information).

4       Palmeri then makes the same mischaracterization of Mattel's arguments he
5   made before the Discovery Master.  He claims that Mattel has asserted "that the
6   privilege is limited to confidential information."[3]  Not so.  Mattel has never argued
7   that the privilege applies only to confidential information.  Rather, a promise of
8   confidentiality (or lack of such a promise) must be considered when a court engages
9   in the weighing required for the qualified privilege.  "[T]he absence of
10  confidentiality may be considered in the balance of competing interests as a factor
11  that diminishes the journalist's, and the public's, interest in non-disclosure."  Shoen I,
12  5 F.3d at 1295.

13      Indeed, the interest in non-disclosure -- i.e., refusal to provide evidence -- is
14  non-existent where the information at issue is non-confidential and published, as it is
15  here.  Mr. Palmeri has not -- and cannot -- dispute that point.  The findings in Dillon
16  and Brinston are thus entirely consistent with the Ninth Circuit's view of the
17  reporter's privilege.  It does not apply to the verification of published statements.

18      The Discovery Master never undertook this analysis, and he instead simply
19  assumed that the reporter's privilege applied because the witness is a journalist and
20  the information sought involved a magazine article.  No court has stretched the
21  privilege so far as to relieve a reporter from testifying about that which he has
22  disseminated to the world.  The Discovery Master's finding was therefore clearly
23  erroneous and contrary to law.[4]

24  _____

25  [3]  Id.
26  [4]  Even those out-of-circuit courts that have applied the reporter's privilege to the verification of published information have found that it should yield where testimony is sought for that limited purpose.  See, e.g., In re Maykuth, 2006 WL 724241, at *2 (E.D. Pa. 2006) (requiring reporter to testify about published statements); In re Vmark Software, 1998 WL 42252, at *2 (E.D. Pa. 1998); SEC v. Seahawk Deep Ocean Tech., Inc., 166 F.R.D. 268, 271-72 (D. Conn. 1996) (refusing to quash subpoena for deposition seeking verification of published statements); NLRB v. Mortenson, 701 F. Supp. 244, 250 (D.D.C. 1988) (requiring reporters to testify about published statements).

MATTEL'S REPLY RE MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER

**B.**   **The Discovery Master's Application of the Reporter's Privilege Overlooked the Importance of Larian's Statement and MGA's Failure to Confirm It**

The Discovery Master's error in applying the reporter's privilege to the mere verification of published information is reason alone to overrule the Order. However, even if the Court were to find that the Discovery Master properly found that the reporter's privilege applied, Mattel has overcome the privilege and is entitled to the limited deposition it seeks. The privilege yields where "the requested evidence is: '(1) unavailable despite the exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case.'" February 26, 2008 Order, at 4 (quoting Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Schoen II")). The Discovery Master's finding that Mattel has not satisfied this test is clearly erroneous and contrary to law.

**1.**   **The Source of Larian's Statement Is Clearly Relevant to Important Claims and Defenses in this Case**

In finding that the information Mattel seeks is not clearly relevant to an important issue in this case, the Discovery Master erroneously considered impeachment as Mattel's primary purpose in seeking to verify Larian's statement to BusinessWeek. The Discovery Master's Order overlooked the importance of Larian's public claim to be the inventor of Bratz nearly three years after Bryant brought Bratz to MGA from Mattel. Larian's assertion bears directly on Mattel's claims that defendants concealed Bryant's disloyalty and theft, as well as MGA and Bryant's statute of limitations and laches defenses -- issues that are central to this case and were heavily briefed in the parties' recently filed motions for summary judgment.

In his opposition, Mr. Palmeri mischaracterizes the primary reason Mattel is seeking his testimony. Palmeri claims that Mattel's "real purpose" for seeking his testimony is to obtain impeachment evidence,[5] but that is incorrect. Mattel alleges that "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz," including by

---

[5] Palmeri's Opposition at 11.

6

"concealing Bryant's role in Bratz by falsely claiming that Larian and others were the creators of Bratz."[6]   To demonstrate MGA's intent and to show Larian's guilty knowledge of the theft of Bratz from Mattel, Mattel must obtain admissible evidence that Larian did in fact make the statements Mr. Palmeri included in his article.  The only witness who can provide the jury with this critical information is Christopher Palmeri.

Indeed, Mr. Palmeri does not even dispute the relevance of the information Mattel seeks.  Palmeri merely asserts without explanation or basis that "the statement at issue bears at most a tenuous relationship to this 'guilty mind.'"[7]  The Discovery Master's failure to recognize the importance of Larian's statements to Mattel's case-in-chief was clearly erroneous and contrary to law.

> ## 2.   The Source of Larian's Statement Is Not Cumulative

In finding the source of the statement in Mr. Palmeri's article regarding the origins of Bratz cumulative of other discovery Mattel has obtained in this litigation, the Discovery Master stated that "Mattel contends that the information it seeks from Palmeri is not cumulative because no one else has testified about any communications between Palmeri and Larian."[8]  The Discovery Master's finding was clearly erroneous and contrary to law for several reasons.

First, the Discovery Master's finding is factually incorrect.  As discussed in section II.B.3, Mattel has deposed three witnesses, including MGA's Rule 30(b)(6) designee, on the subject of Mr. Palmeri's article.  The issue is not that no one has testified about communications between Mr. Palmeri and Larian; it is that the MGA witnesses who have testified have provided only evasive answers.  No witness has confirmed that Larian made the statements attributed to him in Mr. Palmeri's article. And no witness has provided the story of the origins of Bratz that is reflected in the

---

[6]   Declaration of Michael J. Niborski, dated January 20, 2008 ("Niborski Dec."), Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶ 35) (emphasis added).  The Niborski Declaration is attached as Exhibit 2 to the Notice of Lodging dated March 11, 2008.
[7]   Palmeri's Opposition at 12 n.3.
[8]   February 26, 2008 Order at 5.

MATTEL'S REPLY RE MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER

1    BusinessWeek article.

2       Second, the Discovery Master's finding that "Mattel is essentially seeking

3 evidence of Larian's allegedly inconsistent statements regarding the origins of

4 Bratz"[9] misses the point. Mattel's primary purpose in obtaining Mr. Palmeri's

5 testimony is not for impeachment evidence. As described in section II.B.1, Mattel is

6 seeking Mr. Palmeri's testimony because verification that Larian made the statement

7 in Mr. Palmeri's article regarding the origins of Bratz is relevant to both the

8 concealment of the true origins of Bratz and the date of accrual of Mattel's claims for

9 the purposes of the statute of limitations. The Discovery Master's failure to

10 recognize that Mr. Palmeri's testimony was unique and vital to Mattel's case in chief,

11 and not cumulative, was clearly erroneous and contrary to law.

12             **3.**    **Mattel Has Exhausted All Alternative Sources**

13       The Discovery Master found that because Mattel had not asked Larian whether

14 he made the statement attributed to him regarding the origins of Bratz, Mattel had not

15 exhausted all reasonable alternative sources of the information. However, since the

16 Discovery Master issued his Order, Mattel deposed Larian.[10] Larian testified that he

17 did not recall making the statement at issue.[11] Larian's testimony was consistent with

18 MGA's evasive responses throughout discovery in this case regarding the statements

19 in Mr. Palmeri's article.

20       Remarkably, Palmeri argues that even after deposing Larian, Mattel should be

21 forced "to depose as many as 60 persons" before the deposition of Mr. Palmeri would

22 be warranted.[12] That interpretation of the reporter's privilege is completely at odds

23 with limitations on discovery codified in the <u>Federal Rules</u>. <u>Rule</u> 30 limits parties to

24 no more than ten depositions without leave of court. Were a party required to depose

25 [9]    February 26, 2008 Order at 5.

26 [10]  Mattel's inability to depose Mr. Larian earlier on the full scope of the allegations now being made in this case was attributable solely to MGA's refusal to produce him. Mattel had to file yet another motion to compel against Larian. After Mattel won, MGA belatedly made Mr.

27 Larian available on March 26, 2008.
[11]  Second Supplemental Declaration of Michael J. Niborski, dated April 3, 2008 and

28 concurrently filed herewith ("Second Supp. Niborski Dec."), Ex. 1 (Larian Depo. Tr. at 268:4-17).
[12]  Palmeri's Opposition at 15.

1   every conceivable alternative witness to a reporter, including "as many as 60

2   persons" if necessary, the federal qualified privilege recognized in Branzburg v.

3   Hayes, 408 U.S. 665 (1972), and its progeny would in effect become an absolute one.

4        Mr. Palmeri cites only two cases in support of his argument that Mattel should

5   be required to depose an indefinite number of persons before his deposition would be

6   proper.[13]   But both cases pre-date the 1993 amendment to Rule 30 limiting

7   depositions to ten without leave of court.  See Zerilli v. Smith, 656 F.2d 705, 715

8   (D.C. Cir. 1981); Baker v. F & F Investment, 470 F.2d 778, 784 (2d Cir. 1972).  The

9   reasoning in those cases is inconsistent with the current Federal Rule.  Moreover, no

10  case, even prior to 1993, required a litigant to depose numerous persons to determine

11  if a similar statement had been made to other people.  What Mattel needs here is

12  admissible evidence that Larian told the world -- through BusinessWeek -- in July

13  2003 that he was inspired to create Bratz by watching his children.  This conflicting

14  statement was published at the same time that the Wall Street Journal was reporting

15  that Bryant invented Bratz and brought it to MGA as part of a fashion doll design

16  contest in 1998.  And, even setting aside the limits of the Federal Rules, the burden

17  Mr. Palmeri proposes by imposed upon courts, parties and witnesses is staggering

18  and indeed prohibitive in most and perhaps all cases.  It is not and cannot be the law.

19       Moreover, what Larian said to Mr. Palmeri, and the circumstances in which he

20  said it, is unique -- and MGA has confirmed that there are no witnesses to the

21  statements other than Larian and Palmeri.  MGA designated and Mattel deposed a

22  Rule 30(b)(6) witness on the statements in Mr. Palmeri's article.  MGA's designee

23  testified that he did not know who provided the information to Mr. Palmeri, but that

24  "to the extent there would be any quotes going out from the company, they would

25  either go through Dave [Malacrida] or they would go through Isaac [Larian]."[14]

26  According to MGA's Rule 30(b)(6) designee, Mr. Malacrida was not present when

27

28

---

[13]   Id.

[14]   Second Supp. Niborski Dec., Ex. 3 (Khare Depo. Tr. at 718:24-719:20).

MATTEL'S REPLY RE MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER

1   statements were made to Mr. Palmeri.[15]   Mr. Malacrida confirmed this at his

2   deposition, and testified that he spoke with Mr. Palmeri only to arrange the interview

3   of Larian.[16]   Given that Larian does not remember his statements to Palmeri, and

4   MGA cannot confirm them, the only witness who can verify Larian's statements to

5   BusinessWeek is Mr. Palmeri.

6          **C.     The California Shield Law Does Not Apply**

7          As Mr. Palmeri acknowledges, the Discovery Master did not address his

8   argument that California's shield law protects Mr. Palmeri from testifying.[17]   Mr.

9   Palmeri claims, however, that the state shield law provides an alternative basis for

10  the Court to uphold the Discovery Master's Order.  That argument fails.

11         Ninth Circuit law is clear that "[w]here there are federal question claims and

12  pendent state law claims present, the federal law of privilege law applies."  Agster v.

13  Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005).  Here, Mattel has asserted both

14  federal and state law claims.[18]   Thus, federal privilege law governs and California's

15  shield law is inapplicable.   See, e.g., Dillon, 748 F. Supp. at 724-45 (rejecting

16  application of state shield law).

17         Mattel raised the Ninth Circuit's decision in Agster in its papers before the

18  Discovery Master.   Yet, Mr. Palmeri fails to even acknowledge that controlling

19  precedent in arguing that California's state law of privilege applies to state-law

20  claims in a case involving both federal and state-law claims.  Palmeri relies entirely

21  on the law of other jurisdictions and cases that pre-date Agster.[19]   The authority Mr.

22  Palmeri cites is simply not the law in the Ninth Circuit.

---

23  [15]  Id. at 719:8-719:20.
    [16]  Second Supp. Niborski Dec., Ex. 2 (Malacrida Depo. Tr. at 194:20-196:24).

24  [17] Palmeri claims Mattel's statement that the Discovery Master "did not find that California's
25  state shield law applies" mischaracterized the Discovery Master's Order.  Opp. at 16.  Not so.
    It is undisputed that the Order did not apply the state shield law.

26  [18]  Niborski Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and
    Counterclaims, dated July 12, 2007).

27  [19]  See Palmeri's Opposition, at 17-19 (citing In re Application of Nat'l Broadcasting Co., 79
    F.3d 346, 351 (2d Cir. 1996) (out-of-circuit case decided before Agster); Steaks Unlimited, Inc.
28  v. Deaner, 623 F.2d 264, 279 (3d Cir. 1980) (same); In re Stratosphere Corp. Sec. Litig., 183
    F.R.D. 684, 685 (D. Nev. 1999) (decided before Agster); Shaklee Corp. v. Gunnell, 110 F.R.D.
    190, 192 (N.D. Cal. 1986) (same); Los Angeles Mem. Coliseum Comm'n v. NFL, 89 F.R.D.
    489, 492 (C.D. Cal. 1981) (same).

MATTEL'S REPLY RE MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER

1    In an effort to get around this clear rule, Mr. Palmeri argues that California's

2    shield law should apply because the information sought applies only to Mattel's state

3    law claims of "breach of contract, breach of fiduciary duty, and breach of duty of

4    loyalty."[20]  As an initial matter, Mr. Palmeri again cites no post-<u>Agster</u> Ninth Circuit

5    authority supporting application of state privilege laws in a case involving both

6    federal and state-law claims even where the information sought is relevant only to

7    the state-law claims.

8    Moreover, Mr. Palmeri is simply wrong that the information Mattel seeks is

9    relevant only to Mattel's state-law claims.  Mattel has alleged that "Bryant and MGA

10   deliberately and intentionally concealed facts sufficient for Mattel to suspect or to

11   know that it was the true owner of Bratz," including "concealing Bryant's role in

12   Bratz by falsely claiming that Larian and others were the creators of Bratz."[21]  Mattel

13   has alleged that "[b]ecause of Bryant's and MGA's acts of concealment and Bryant's

14   misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked

15   with MGA, or assisted MGA, while he [was] still employed by Mattel until

16   approximately November 24, 2003."[22]  These allegations are relevant to Mattel's

17   copyright claims because they demonstrate that the claims are not time barred.  Isaac

18   Larian's statement that he "got the idea for Bratz after seeing his own kids run around

19   in navel-baring tops and hip-huggers" is evidence of MGA's intentional concealment

20   of Bryant's role as the true creator of Bratz and is thus directly relevant to Mattel's

21   federal copyright claims.  Even under the pre-<u>Agster</u> law upon which Mr. Palmeri

22   incorrectly relies, it is only "[w]here a subpoena seeks evidence affecting <u>only</u> the

23   state-law claims in a federal-court action, [that] the state law of privilege applies."

24   <u>Shaklee Corp. v. Gunnell</u>, 110 F.R.D. 190, 192 (N.D. Cal. 1986).

25   In short, Ninth Circuit law is clear that state privilege law does not apply in

26   cases like this one, in which both federal and state-law claims are at issue.  And even

27
---
[20]  Palmeri's Opposition at 17.

28
[21]  Niborksi Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶ 35).
[22]  Id. at ¶ 36.

11

based on the non-controlling authority Mr. Palmeri cites, California's privilege does not apply here because the information Mattel seeks is relevant to, among other things, Mattel's federal copyright infringement claims.  California's state shield law does not provide a basis on which to uphold the Discovery Master's Order.

**D.  There Are No Grounds On Which To Award Mr. Palmeri Attorneys' Fees**

Palmeri's request for attorneys' fees is without merit and should be rejected. As Mr. Palmeri recognizes, fess should not be awarded where a motion is substantially justified or an award of fees would be unjust.[23] Mattel's motion here is substantially justified.  Because the information sought here was published it is not subject to the protections of the privilege.  Palmeri cites no Ninth Circuit authority to the contrary.  Moreover, even if the privilege does apply, under the circumstances here it must yield because the information is clearly relevant to important issues, is not cumulative, and Mattel has exhausted all reasonable alternative sources.  On the law and the facts here, there is no basis on which to award Mr. Palmeri fees.[24]

## II.  CONCLUSION

For the foregoing reasons, Mattel respectfully requests that the Discovery Master's February 26, 2008 Order be overruled and that Christopher Palmeri be compelled to appeal for deposition.

Dated: April 3, 2008          STROOCK & STROOCK & LAVAN LLP


By:    /s/ Michael J. Niborski
       Michael J. Niborski
       Attorneys for Mattel, Inc.

---

[23]  Palmeri's Opposition, at 24-25 (citing Fed. R. Civ. P. 37(a)(5)(B)).
[24]  The only case Mr. Palmeri cites in support of his request for fees is readily distinguished. Palmeri's Opposition at 25.  In Wright v. Fred Hutchinson Cancer Research Center, 206 F.R.D. 679, 683 (W.D. Wash. 2002), the moving party sought the production of unpublished, confidential research materials.  By contrast, Mattel merely seeks verification of the source of a non-confidential published statement.

12

MATTEL'S REPLY RE MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER