QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]**<br><br>**[PUBLIC REDACTED] MATTEL, INC.'S *EX PARTE* APPLICATION (1) TO COMPEL DEPOSITIONS OF ANA CABRERA, BEATRIZ MORALES, AND MARIA SALAZAR; (2) FOR GUIDANCE AS TO EVIDENCE RECEIVED FROM ANA CABRERA; AND (3) FOR SANCTIONS; AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Cyrus S. Naim filed concurrently]<br><br>Hearing Date:  TBA<br>Time:  TBA<br>Place:  TBA<br><br>**Phase 1**<br>Discovery Cut-off:  January 28, 2008<br>Pre-trial Conference:  April 21, 2008<br>Trial Date:  May 27, 2008 |

MATTEL'S EX PARTE APPLICATION TO COMPEL DEPOSITIONS OF CABRERA AND MORALES; AND FOR GUIDANCE AS TO EVIDENCE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 3

ARGUMENT ........................................................................................................ 15

I.   THE COURT SHOULD ORDER THAT MS. CABRERA, MS. MORALES, AND MS. SALAZAR APPEAR FOR DEPOSITION ............. 15

    A.   Counsel for Ms. Diaz and Ms. Cabrera Refuses to Stipulate that They will Appear for Deposition ........................................................... 16

    B.   Counsel for MGA and Ms. Salazar Refuses to Provide Any Dates at All ...................................................................................... 18

II.  MATTEL SHOULD BE PERMITTED TO PRODUCE THE TIME SHEETS AND RECEIPTS IN UNREDACTED FORM ............................... 19

III. MATTEL SHOULD BE PERMITTED TO CONDUCT EXPERT RECONSTRUCTION OF THE DOCUMENTS PROVIDED BY MS. CABRERA ................................................................................................ 22

    A.   Mattel Has Lawful Possession Of The Evidence Provided By Ms. Cabrera ...................................................................................... 22

    B.   The Torn-Up Documents Are Clearly Relevant to This Case ............. 24

    C.   Any Expert Reconstruction Will Be Minimally Invasive, and Will Be Conducted By an Expert Already Approved by This Court ................................................................................................. 25

IV.  MGA SHOULD BE SANCTIONED ............................................................ 27

CONCLUSION ..................................................................................................... 29

# TABLE OF AUTHORITIES

**Page**

## Cases

A. Farber and Partners, Inc.,
   234 F.R.D. 186 (C.D. Cal. 2006) .............................................................. 20

Braley v. Campbell,
   832 F.2d 1504 (10th Cir. 1987)................................................................ 28

Diepenhorst v. City of Battle Creek,
   2006 WL. 1851243 (W.D. Mich. 2007)................................................... 27

Gohler v. Wood,
   162 F.R.D. 691 (D. Utah 1995)............................................................... 20

Grimes v. City and County of San Francisco,
   951 F.2d 236 (9th Cir. 1991).................................................................. 28

In re Heritage Bond Litigation,
   2004 WL. 1970058 (C.D. Cal. 2004)...................................................... 20

Humphreys v. Regents of Univ. of Cal.,
   2006 WL. 335275 (N.D. Cal. 2006)........................................................ 20

Mission Power Engineering Co. v. Continental Casualty Co.,
   883 F. Supp. 488 (C.D. Cal. 1995).......................................................... 2

Oakes v. Halvorsen Marine Ltd.,
   179 F.R.D. 281 (C.D. Cal. 1998) ............................................................ 20

RTC v. Dabney,
   73 F.3d 262 (10th Cir. 1995)................................................................... 28

Reyes v. Red Gold, Inc.,
   2006 WL. 2729412 (S.D. Tex. 2006)...................................................... 20

United States v. Westinghouse Electric Corp.,
   648 F.2d 642 (9th Cir. 1981).................................................................. 28

## Statutes

28 U.S.C. § 1927....................................................................................... 28

Federal Rule of Evidence 501 ................................................................... 20

Federal Rule of Civil Procedure 37(b)(2)................................................. 28

Federal Rules of Civil Procedure 26 ......................................................... 1

Local Rule 7-19 ...................................................................................... 1, 2

Rule 30(b)(6) ...................................................................................... 4, 18, 19

-i-

MATTEL'S EX PARTE APPLICATION TO COMPEL DEPOSITIONS OF CABRERA AND MORALES; AND FOR
GUIDANCE AS TO EVIDENCE

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          Pursuant to <u>Local Rule</u> 7-19, Mattel, Inc. respectfully submits this *ex*

3    *parte* application (1) to compel the depositions of Ana Cabrera, Beatriz Morales,

4    and Maria Salazar, and (2) for guidance regarding evidence provided to Mattel by

5    Ana Cabrera.

6          This Application is made pursuant to <u>Federal Rules of Civil Procedure</u>

7    26 and 37 on the grounds that Ms. Cabrera and Ms. Morales have failed to appear

8    for deposition, and counsel for Ms. Salazar has refused to provide any deposition

9    dates, despite the Discovery Master's rejection of the motion to quash these

10   depositions. This Application is made on the further grounds that counsel for these

11   witnesses have already delayed and are attempting to further delay these depositions

12   indefinitely, and the inability to depose these witnesses on a timely basis will has

13   prejudiced and will continue to prejudice Mattel's ability to prepare for trial, which

14   is scheduled to begin on May 27, 2008.

15         This Application is made on the further grounds that Ms. Cabrera is

16   asserting rights over documents that are inconsistent with discovery in this action.

17   Mattel seeks to produce documents demonstrating the use of false social security

18   numbers and names facilitated by MGA's agent Veronica Marlow, and Cabrera

19   objects to this production. Mattel will suffer prejudice in its ability to prepare for

20   trial if these documents are not produced, and produced in unredacted form.

21         As to certain torn-up documents Ms. Cabrera provided to Mattel, and

22   which Mattel seeks to have an expert reconstruct, counsel for MGA is obstructing

23   such reconstruction, despite the fact that no other party or third-party is asserting

24   any rights or claims to the documents and materials which constitute this evidence.

25   As a result, Mattel seeks a determination as to the manner in which it may proceed

26   with the investigation and expert reconstruction of this evidence.

27         This motion is made on the further grounds that, as a result of the delay

28   created by defendants and these witnesses, Mattel has been and will continue to be

1 prejudiced in its preparation for trial, in that it cannot prepare its trial strategy, and
2 in that important pre-trial deadlines are passing. See Mission Power Engineering
3 Co. v. Continental Casualty Co., 883 F. Supp. 488 (C.D. Cal. 1995) (ex parte is
4 warranted upon a showing of prejudice).

5 　　　　Pursuant to Local Rule 7-19, counsel for Ms. Cabrera and Ms. Morales,
6 Maria Diaz of Allred, Maroko & Goldberg, (telephone: 323-653-6530; address:
7 6300 Wilshire Blvd., Suite 1500, Los Angeles, CA 90048) was given notice of this
8 ex parte application and the relief being sought. Mattel's counsel also gave notice of
9 this Application and the relief being sought to counsel for all other parties and the
10 witnesses, including counsel for Gustavo Machado, Alexander Cote of Overland
11 Borenstein Sheper & Kim, LLP (telephone: 213-613-4660; address: 300 S. Grand
12 Avenue, Los Angeles, CA 90071), counsel for Maria Salazar and MGA
13 Entertainment, Inc., MGAE de Mexico, S.A. de C.R.L., MGA Entertainment (HK)
14 Limited, Isaac Larian (collectively "MGA"), Paul Eckles of Skadden, Arps, Slate,
15 Meagher & Flom LLP (telephone: 212-735-2578; address: 4 Times Square, New
16 York, NY 10036), counsel for Carter Bryant ("Bryant"), Michael H. Page of Keker
17 & Van Nest, LLP (telephone: 415-391-5400; address: 710 Sansome Street, San
18 Francisco, CA 94111-1704), and counsel for Veronica Marlow, Christian Dowell of
19 Keats McFarland & Wilson LLP (telephone: 310-248-3830; address: 9720 Wilshire
20 Boulevard, Penthouse Suite, Beverly Hills, California 90212).

21 　　　　MGA has informed Mattel that it opposes this ex parte application.
22 Cabrera and Morales have informed Mattel that they oppose this ex parte
23 application. Mattel has not received a response from Mr. Machado or Mr. Bryant.

24 　　　　This Application is based on this Notice of Application, the
25 accompanying Memorandum of Points and Authorities, the Declaration of Cyrus S.
26 Naim filed concurrently herewith, and all other matters of which the Court may take
27 judicial notice.

28

1

## Statement of Rule 37-1 Compliance

2          The parties met and conferred regarding this motion on March 20, 2008

3   and times thereafter.

4

5   DATED:  April 3, 2008          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
6

7
                                   By /s/ Michael T. Zeller
8                                      Michael T. Zeller
                                       Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2459505.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Veronica Marlow worked with Carter Bryant and MGA on Bratz for years, including during the time Bryant was still employed by Mattel. She testified at her December 28, 2007 deposition that three Mattel employees -- Ana Cabrera, Beatriz Morales, and Maria Salazar -- had also secretly worked on Bratz during times that each of them were employed by Mattel. Since the stunning revelation of these facts, which defendants have concealed in violation of Court Discovery Orders, defendants have worked to disrupt further discovery on the topic every step of the way.

Literally on the eve of the first deposition, MGA filed a motion to quash Mattel's deposition subpoenas of Cabrera, Morales and Salazar, claiming that Mattel had not obtained leave of the Court to take the depositions. MGA then wrote to Mattel claiming that all of these depositions were "off." Shortly after, Judge Larson made clear at a hearing that MGA's claim was wrong and that Mattel was entitled to take the full quota of depositions allocated to it, i.e., its original 24 depositions in addition to those granted in its motion for leave for additional discovery. MGA then filed a "Supplemental and Second Amended Motion to Quash" that attempted to essentially reargue the same point. That Motion was ultimately rejected by the Discovery Master on March 11, 2008.

Counsel for Cabrera and Morales then stated that their depositions could not take place until mid-April, less than a month-and-a-half before trial. Though Mattel proposed a stipulation requiring that the depositions go forward on dates certain to avoid further, last minute cancellations, counsel for Cabrera and Morales has refused unless Mattel agrees to unreasonable, extraneous terms. Moreover, counsel for MGA and Ms. Salazar (who is now an MGA employee) has stated that MGA has appealed the March 11, 2008 Order, and that this "moots" any

-1-

1  basis for having the depositions before that appeal is heard, and has refused to
2  provide any dates for Ms. Salazar's deposition at all. And, as far as Mattel can
3  ascertain, MGA's counsel is refusing to agree that the Cabrera and Morales
4  depositions will go forward. The Discovery Master should order the depositions to
5  proceed without further delay so that Mattel can obtain their evidence in time for
6  trial.

7        Defendants have also raised meritless disputes about documents to
8  further impede discovery. In January 2008, Mattel notified counsel of evidence it
9  had in its possession that Ana Cabrera had provided relating to her work on Bratz
10  while employed by Mattel. This evidence includes torn-up documents that Cabrera
11  stated were provided to her by Marlow, and which appear to be Bratz drawings by
12  Carter Bryant. The boxes containing the evidence Cabrera provided were sealed
13  following a videotape inspection at Mattel. Mattel then invited the parties to attend
14  its unsealing. The response by Cabrera's counsel was to threaten baseless legal
15  action if the boxes were opened. Since then, Mattel has repeatedly attempted to
16  meet and confer regarding this evidence, and has attempted to reach an agreement
17  permitting their reconstruction by its expert. Ms. Cabrera ultimately disclaimed any
18  interest in these documents. MGA meanwhile has refused to agree that these
19  documents may be reconstructed using non-destructive means, stating that it cannot
20  agree to a stipulation that does not address "the threshold issue" of whether Mattel
21  should be rewarded for its supposedly "unlawful actions."

22        Cabrera also provided Mattel time-sheets and payment receipts
23  received from Marlow for her work on Bratz while Cabrera was a Mattel employee.
24  The documents show Cabrera's use of a false name and a false social security
25  number, in an attempt to hide her work from Mattel. This is clear evidence of the
26  secrecy behind MGA's use of Mattel employees to work on Bratz and MGA's guilty
27  knowledge. Indeed, attempts at concealment are highly probative evidence that
28  refutes MGA's claims to have had no knowledge or intent in having Mattel

1  employees work for it while still employed by Mattel.  Cabrera has nevertheless
2  demanded that the social security numbers—the very information necessary to show
3  misconduct—be redacted before production.  Not only is this information critical,
4  but any interests Cabrera may have are fully protected by designating these
5  documents "Attorney's Eyes Only" under the Protective Order.  Her counsel's
6  objections are also inconsistent with her prior conduct at the inspection, where she
7  made no objection when Mattel provided a copy of these documents to counsel for
8  MGA and Veronica Marlow—i.e. the same parties to whom Mattel intends to
9  produce a Bates-stamped copy—at MGA's and Marlow's request.

10  MGA and its co-conspirators have obstructed discovery regarding their
11  conduct ever since Mattel learned of this wrongdoing at Marlow's deposition.
12  Mattel respectfully requests the Discovery Master to put an end to this obstruction
13  and grant the relief it seeks.

14

15  **Factual Background**

16  **Mattel's Discovery of the Existence of Cabrera, Morales, and**
17  **Salazar.**  According to Bryant and Veronica Marlow, Marlow introduced Bryant to
18  MGA, was present at his first pitch to MGA, and has since received millions of
19  dollars from MGA as an alleged finder's fee.[1]  Ms. Marlow also worked on MGA's
20  Bratz product line through 2005.  She was involved with the development of Bratz
21  from its inception, and is one of the few people to whom Carter Bryant claims he
22  showed his Bratz illustrations prior to presenting them to MGA.[2]

23

24  _____

25  [1]  Deposition Transcript of Veronica Marlow, dated December 28, 2007
26  ("Marlow Depo. Tr.") at 113:10-114:3, 115:10-122:3, Naim Dec., Exh. 1; Bryant Depo. Tr. at 157:19-158:3, Naim Dec., Exh. 2.
27  [2]  Transcript of the Deposition of Carter Bryant dated November 4, 2004
28  ("Bryant Depo. Tr.") at 46:22-47:8, Naim Dec., Exh. 2.

-3-

1          On December 28, 2007, after months of delay that forced Mattel to

2  bring an *ex parte* application to compel her appearance, Marlow testified at her

3  deposition that, in addition to Carter Bryant, three more Mattel employees secretly

4  worked on Bratz for *years*, and were paid for their work, while employed by

5  Mattel.[3]  This included Ana Cabrera, a long-time employee whom Mattel had

6  trusted and promoted to a supervisory position, Beatriz Morales, and Maria Salazar.[4]

7          Until this testimony, defendants had constantly sworn under oath that

8  Bryant was the only one who worked on Bratz while still a Mattel employee.

9  Indeed, both Bryant and MGA concealed the identity of these employees by

10  providing false, blanket denials under oath in response to specific discovery

11  questions seeking identification of Mattel employees who worked on Bratz or for

12  MGA.[5]  For example, Carter Bryant denied being aware of any other Mattel

13  employee working for MGA while he or she was employed by Mattel.[6]  MGA's

14  <u>Rule</u> 30(b)(6) designee on this topic, Lisa Tonnu, identified no one as having

15  performed work or services for MGA while also employed by Mattel at any time

16  since 1998.[7]  MGA's interrogatory responses entirely failed to name either Ms.

17  Cabrera or Ms. Morales as ever having worked on Bratz and falsely claimed that

18  Ms. Salazar, who subsequently became an MGA employee, did not work on Bratz

19  until more than two years after she left Mattel.[8]

---

[3]  Marlow Depo. Tr. at 306:14-308:1, 363:15-365:17, Naim Dec., Exh. 1.
[4]  <u>Id.</u>
[5]  <u>See e.g.</u>, Bryant Depo. Tr. at 286:25-287:5, Naim Dec., Exh. 2; Tonnu Depo.
Tr. at 301:2-17, Naim Dec., Exh. 50; MGA's Supplemental Responses to Mattel's
Revised Third Set of Interrogatories, dated November 30, 2007, at 64-70, Naim
Dec., Exh. 49.
[6]  Bryant Depo. Tr. at 286:25-287:5, Naim Dec., Exh. 2.
[7]  Tonnu Depo. Tr. at 301:2-17, Naim Dec., Exh. 50.
[8]  MGA's Supplemental Responses to Mattel's Revised Third Set of
Interrogatories at 64-70, Naim Dec., Exh. 49.

07209/2459505.1

-4-

1    At the time of Marlow's deposition, Mattel was closed for the end-of-
2 2007 holidays.  After it reopened, two Mattel representatives, one from Human
3 Resources and another from Security, interviewed Ms. Cabrera and Ms. Morales to
4 determine whether Marlow's allegations were true.  Ms. Cabrera admitted to having
5 worked on more than *70* Bratz doll products while a Mattel employee; Ms. Morales
6 to working on *50*.[9]  Both admitted knowing this was wrong.[10]  Ms. Cabrera and Ms.
7 Morales continued to simultaneously work for Mattel and on Bratz even after
8 learning about the present litigation involving Carter Bryant's similarly secret work
9 with MGA while he was employed by Mattel.[11]  Perhaps most troubling, both
10 admitted that they tried to hide their tracks by receiving cash payments under false
11 names and false social security numbers.[12]  Ms. Cabrera alone received over
12 $100,000 for her work on Bratz.[13]  In the course of the investigation, Ms. Cabrera
13 provided Mattel with time sheets and payment receipts for her work on Bratz, some
14 of which showed payments had falsely been made in the name and social security
15 number of her sister-in-law, Rosalba Cabrera.[14]

16    During her interview, Ms. Cabrera also stated that she had maintained
17 in her possession boxes with materials and documents relating to her work on Bratz
18 doll fashions.[15]  Cabrera provided these materials to Mattel's representatives as part

19
20    [9]  Naim Dec., ¶¶ 10, 12.
21    [10]  Transcript of the interview of Ana Cabrera, dated January 2, 2008 ("Cabrera
Tr. Vol. I") at 117:10-118:8, Naim Dec., Exh. 3; transcript of the interview of
22 Beatriz Morales, dated January 14, 2008 ("Morales Tr.") at 24:14-25:14, 27:11-17,
23 Naim Dec., Exh. 5.
    [11]  Cabrera Tr. Vol. I at 39:25-40:20, 46:3-22, Naim Dec., Exh. 3.
24    [12]  Cabrera Tr. Vol. I at 118:3-119:23, Naim Dec., Exh. 3; Morales Tr. at 115:2-
25 20, Naim Dec., Exh. 5.
    [13]  Naim Dec., ¶ 11.
26    [14]  Transcript of the interview of Ana Cabrera, dated January 3, 2008 ("Cabrera
27 Tr. Vol. II"), at 28:8-30:2, Naim Dec., Exh. 4.
    [15]  Cabrera Tr. Vol. I at 59:3-23, Naim Dec., Exh. 3.
28

1    of the investigation.[16]  The materials included Bratz heads and feet; completed Bratz

2    clothing; and sewing patterns.[17]  Notably, among these items Mattel also found a

3    bag of torn-up documents that may have been Bratz drawings done by Carter

4    Bryant.[18]  Cabrera stated that they were left by Veronica Marlow:

5    ████████████████████████████

6    ████████████████████████████████

7    ██████████████████████

8    ██████████████████████

9    ████████████████████████████████

10   ██████████████████[19]

11           In total, Mattel received seven boxes of materials from Ms. Cabrera.

12   Mattel videotaped the contents of each box and then sealed them with evidence

13   tape.[20]  Mattel also immediately produced the transcript and audio-tapes of its

14   interviews with Ms. Cabrera and Ms. Morales to opposing counsel.[21]  Mattel also

15   provided these transcripts and audio-tapes to counsel for Ms. Cabrera and Ms.

16   Morales upon her request, after she had identified herself to Mattel.[22]

17           **Despite The Discovery Master's Denials of MGA's Motions to**

18   **Quash, MGA and The Witnesses Continue to Obstruct the Depositions.**  Mattel

19   subpoenaed the three employees, with deposition dates of January 24, 2008 for Ana

20

21

---

22   [16]  Cabrera Tr. Vol. I at 71:5-72:4, Naim Dec., Exh. 3.

23   [17]  Naim Dec., ¶ 4.

24   [18]  Cabrera Tr. Vol. I at 109:16-110:25, Naim Dec., Exh. 3.

     [19]  Letter from Maria Diaz to Michael Zeller, dated January 22, 2008, Naim

25   Dec., Exh. 6.

     [20]  The videotape of this process was produced at Bates number M 0262583.

26   Naim Dec., ¶ 2.

27   [21]  Naim Dec., ¶ 2.

     [22]  Naim Dec., Exhs. 7, 8.

28

1    Cabrera, January 25, 2008 for Beatriz Morales, and January 28, 2008, for Maria

2    Salazar.[23]

3         On January 23, 2008—literally the eve of the Cabrera deposition—

4    Mattel received a letter from an attorney, Maria Diaz, stating that she represented

5    Cabrera and Morales.[24]  Counsel for MGA and Bryant were copied on that letter.

6    Ms. Diaz stated that Cabrera and Morales would not appear.[25]  The same day, MGA

7    filed a Motion to Quash several deposition subpoenas, including those for Cabrera,

8    Morales and Salazar.[26]  On January 24, 2008, MGA wrote to Mattel stating that it

9    considered the depositions of all witnesses addressed in its Motion to Quash to be

10   "off" and—despite MGA's having already been in contact with Ms. Diaz—insisting

11   that Mattel contact the subpoenaed witnesses to inform them that the depositions

12   were not proceeding.[27]

13         Mattel responded that MGA could not unilaterally cancel the

14   depositions and asked whether it had had contact with Maria Salazar, who was

15   scheduled to appear for deposition on Monday, January 28, 2008.[28]  MGA's counsel

16   responded on Sunday, January 27, 2008, stating that it represented Ms. Salazar, and

17   that she would not appear for deposition either.[29]  Given the imminent discovery

18

19

---

[23]   Naim Dec., Exhs. 9, 10, 11.

[24]   Facsimile from Maria Diaz to James Webster dated January 23, 2008, Naim Dec., Exh. 12.

[25]   Id.

[26]   See MGA Defendants' Notice Of Motion And Motion To Quash Deposition Subpoenas And Memorandum In Support, dated January 23, 2008.  That motion was amended on January 24, 2008, to include Maria Salazar.

[27]   Letter from Paul M. Eckles to Jon D. Corey dated January 24, 2008, Naim Dec., Exh. 13.

[28]   Email from James Webster to Paul M. Eckles dated January 25, 2008, Naim Dec., Exh. 14.

[29]   Email from Paul M. Eckles to James Webster dated January 27, 2008, Naim Dec., Exh. 53.  Mattel had previously asked counsel for MGA if it represented Ms. (footnote continued)

-7-

1  cut-off date, Mattel moved *ex parte* to compel the depositions of Ms. Cabrera, Ms.
2  Morales, and Ms. Salazar.[30]

3  　　　　Judge Larson referred the issue to the Discovery Master, and the
4  Discovery denied the motion to quash on March 11, 2008.[31]  Mattel then contacted
5  counsel for these witnesses on March 13, 2008 seeking dates for deposition.[32]

6  　　　　On March 19, 2008, Mattel finally received a response from Ms. Diaz
7  providing deposition dates for Cabrera and Morales.[33]  Despite the fact that these
8  witnesses were first noticed for deposition on January 24 and 25, and despite the
9  March 11, 2008 Order, Ms. Diaz stated that the witnesses would not appear for
10 almost another month and that the first dates on which they could appear were April
11 15 and 18, 2008—over two-and-a-half months since they were first noticed, and less
12 than a month-and-a-half before trial is set to commence.[34]  Mattel stated that, given
13 the prior cancellation and the delay, it expected counsel to sign a stipulation

14
15
16
17

Salazar, and would accept service on her behalf, but counsel did not notify Mattel
that it did. [Public Redacted] Declaration Of Michael T. Zeller In Support Of Reply
In Support Of Mattel, Inc.'s Ex Parte Application To Compel The Appearance For
Deposition Of Ana Cabrera, Beatriz Morales, Maria Salazar, And Mel Woods, dated
February 1, 2008, at ¶ 2, Naim Dec., Exh. 16.
[30]  Mattel, Inc.'s Ex Parte Application To Compel The Appearance For
Deposition Of Ana Cabrera, Beatriz Morales, And Maria Salazar, dated January 28,
2008 (without Memorandum of Points and Authorities), Naim Dec., Exh. 15.
[31]  Order Re MGA Defendants' Motion to Quash Deposition Subpoenas, dated
March 11, 2008 ("March 11, 2008 Order"), Naim Dec., Exh. 17.
[32]  Letter from James J. Webster to Maria Diaz dated March 13, 2008, Naim
Dec., Exh. 18; Letter from James J. Webster to Marcus Mumford dated March 13,
2008, Naim Dec., Exh. 19.
[33]  Facsimile from Maria Diaz to James J. Webster, dated March 19, 2008, at
12:25 p.m., Naim Dec., Exh. 20.
[34]  Id.

-8-

1   ensuring that the depositions proceed on those dates, as Mattel could not risk

2   waiting, only to have the depositions cancelled at the last minute yet again.[35]

3                Ms. Diaz, however, stated that she would agree only on the condition

4   that Mattel add language to the stipulation specifically limiting their use to this

5   case.[36] Because the limitations went beyond those Mattel would be obligated to

6   follow under the protective order, Mattel rejected this proposal on that basis, and

7   again requested that she sign the stipulations.[37] Counsel refused.[38] Counsel stated

8   that if her position was not satisfactory to Mattel, Mattel should "raise it with the

9   Court and give me notice of the same."[39]

10               Meanwhile, counsel for MGA and Ms. Salazar refused to provide any

11   dates for the deposition of Ms. Salazar.[40] According to MGA, its appeal of the

---

15   [35]  Facsimile from James J. Webster to Maria Diaz, dated March 25, 2008, and
sent at 5:15 p.m., Naim Dec., Exh. 21.

16   [36]  Facsimile from Maria Diaz to James J. Webster, dated March 28, 2008, Naim
17   Dec., Exh. 53. Specifically, Ms. Diaz asked that Mattel agree to the following
additional language:
18   "The deposition transcripts of Ana Cabrera and Beatriz Morales are to be deemed
19   confidential, for purposes of this action only and will not be utilized for any other
proceeding. The deposition transcripts shall be disclosed only to attorneys for the
20   parties, parties in litigation, and to the court having jurisdiction over this matter.
21   This stipulation and order survives the conclusion, whether by settlement, order
or judgment, of this litigation." Id.
22   [37]  Email from Cyrus Naim to Maria Diaz, Marcus Mumford, and Matthew
23   Werdegar, dated March 31, 2008, Naim Dec., Exh. 55; email from Michael Zeller to
Cyrus Naim, Maria Diaz, Marcus Mumford, and Matthew Werdegar, dated April 2,
24   2008, Naim Dec., Exh. 57.
25   [38]  Email from Maria Diaz to Cyrus Naim, Michael Zeller, Marcus Mumford,
and Matthew Werdegar, dated April 2, 2008, Naim Dec., Exh. 58.
26   [39]  Id.
27   [40]  Email from Marcus Mumford to James J. Webster, dated March 25, 2008, at
28   5:32 p.m., Naim Dec., Exh. 24.

1   March 11, 2008 Order "moots" any basis for deposing Ms. Cabrera, Ms. Morales, or

2   Ms. Salazar,[41] despite the fact that there is no stay pending that appeal.

3   **Allegations that the Boxes of Evidence were "Seized" and Judge**

4   **Larson's Order to Meet and Confer.** On January 22, 2008, Mattel notified

5   counsel for all parties of the existence of the boxes of evidence Cabrera had

6   provided to Mattel and invited them to be present when they were unsealed.[42] In

7   response, Mattel received a letter from Ms. Diaz, copying counsel for MGA and

8   Bryant, asserting that the contents of the boxes belonged to Ms. Cabrera, and

9   objecting to their unsealing.[43] Cabrera threatened legal action if Mattel proceeded.

10  Though Mattel did not believe there was any basis for such a threat, it nevertheless

11  maintained the seal on the boxes until the matter could be resolved.[44] On February

12  14, 2008, counsel for Marlow wrote a letter to Mattel stating that *she* might also

13  assert some (undefined) claim of ownership of the contents of the boxes.[45]

14  In its Opposition to Mattel's *Ex Parte* seeking the depositions of Ms.

15  Cabrera, Ms. Morales and Ms. Salazar, MGA made a host of false and misleading

16  representations regarding the interviews and claimed that Mattel had inappropriately

17  "seized" the evidence provided by Ana Cabrera.[46] As discussed below, this

18

19  [41] Id.

20  [42] Letter from Michael Zeller to Thomas J. Nolan, Alexander H. Cote, and

21  Michael H. Page, dated January 22, 2008, Naim Dec., Exh. 26.

    [43] Letter from Maria Diaz to Michael T. Zeller, dated January 22, 2008, Naim

22  Dec., Exh. 27.

23  [44] Naim Dec., ¶ 3.

    [45] Letter from Larry McFarland to James Webster, dated February 13, 2008,

24  Naim Dec., Exh. 28.

25  [46] See MGA's And Carter Bryant's Opposition To Mattel's Ex Parte

    Applications To Compel Additional Depositions, dated January 30, 2008, at 14,

26  Naim Dec., Exh. 29. MGA and Veronica Marlow have repeated those allegations

27  before this Court, and Mattel has fully responded to them. If the Court has any

    further concerns on this topic, Mattel respectfully refers the Court to Mattel, Inc.'s

28  (footnote continued)

-10-

1  allegation was false, but since these accusations were irrelevant to the motion at
2  hand, Mattel did not substantively address them at that time.  As a result, Judge
3  Larson deferred considering the issue and ordered the parties to meet and confer
4  regarding the boxes:

5              The Court: ...So why don't you meet and confer
6              with Mr. Quinn; see if you can't work out the return of the
7              tapes, return of anything which is your client's property
8              that was taken from her, or allegedly taken from her.  See
9              if you can't work it out.  And if you can't, bring a motion
10             to this Court.[47]

11  **Subsequent Attempts to Meet and Confer Regarding the Boxes of**
12  **Evidence.**  Since that direction from the Court, Mattel has sought an agreement
13  among all parties regarding the evidence at issue.  On March 3, 2007, counsel for
14  Ms. Cabrera, Ms. Marlow, Mattel, and MGA attended an inspection of the contents
15  of the boxes, to determine whether any party wished to make a claim as to their
16  contents.[48]  At the conclusion of the inspection, counsel for Ms. Cabrera stated that
17  she did not wish to take possession of the evidence at that time.[49]  Neither MGA nor
18  Marlow made any statements as to their intent.[50]

19             Several days later, having received no clear statement of the parties'
20  respective positions, Mattel wrote to counsel notifying them that, absent any
21  objections, Mattel would have an expert reconstruct the torn-up documents Cabrera
22
23
_____
24  Opposition To MGA's Supplemental And Second Motion To Quash, dated February
25  22, 2008.
26  [47]  Id. at 60:15-19.
     [48]  Naim Dec., ¶ 3.
27  [49]  Naim Dec., ¶ 7.
     [50]  Id.
28

1    had provided to Mattel.[51] Mattel also invited the parties to observe the

2    reconstruction process.[52]

3         In response, counsel for Ms. Cabrera sent a letter dated March 10,

4    2008, reiterating that she did not wish to take possession of the evidence in the

5    boxes.[53] Nevertheless, Cabrera's counsel vaguely stated that Cabrera was

6    "reserv[ing] all rights to the contents of the boxes."[54] It was thus unclear whether

7    Ms. Cabrera was stating that she had any objection to expert reconstruction of the

8    torn up documents. For its part, MGA sent a letter dated March 7, 2008, objecting

9    that the "ownership issue" regarding the boxes remained "unresolved."[55] In making

10   this objection, however, it made no claim to ownership of the boxes. MGA went on

11   to assert that any reconstruction of the documents could be done only after Mattel

12   had notified MGA of the name of the expert, and wrote a letter detailing the actions

13   to be taken by that expert.

14        In response, Mattel gave further details and asked counsel for all parties

15   to consider a stipulation permitting expert reconstruction of the torn documents.[56]

16   Ms. Cabrera agreed to this stipulation, subject to the addition of language in the

17

18

19

20   _____

21   [51]  Facsimile from James J. Webster to Marcus Mumford, Maria Diaz, and
     Christian Dowell, dated March 7, 2008, Naim Dec., Exh. 31.
22   [52]  Id.

23   [53]  Letter dated March 10, 2008, from Maria Diaz to James J. Webster, Naim
     Dec., Exh. 32.
24   [54]  Id.

25   [55]  Letter dated March 7, 2008, from Marcus Mumford to James J. Webster,
     Naim Dec., Exh. 33.
26   [56]  Email from James J. Webster to Marcus Mumford and Matthew Werdegar,
27   dated March 25, 2008, Naim Dec., Exh. 25; email from Cyrus Naim to Marcus
     Mumford and Matthew Werdegar, dated March 25, 2008, Naim Dec., Exh. 34.
28

1   stipulation explicitly waiving her rights to any further involvement in that
2   evidence.[57]  Cabrera's requested language states,

3           The Parties agree that Ana Cabrera and Beatriz Morales
4           claim no interest in the torn documents contained in the
5           boxes to be used in the re-construction.  The Parties to this
6           action further agree that they will determine amongst
7           themselves, without involvement of Ana Cabrera and
8           Beatriz Morales, the maintenance, retention and
9           disposition of these torn documents.   If the Parties are
10          unable to reach a mutual agreement, they will seek
11          appropriate relief from the Court.[58]

12          Counsel for MGA, however, stated that "the threshold issue" was
13  whether Mattel should be rewarded for its purportedly "unlawful actions" and would
14  not agree to any reconstruction.[59]  Counsel for Bryant stated that he "join[ed] in the
15  objections and concerns expressed by MGA," and would not sign any stipulation
16  either.[60]  Counsel for Veronica Marlow provided no response at all.[61]

17          **The Time Sheets and Receipts Ms. Cabrera Provided to Mattel.**  In
18  addition to the boxes of evidence, Ms. Cabrera also provided Mattel with time
19  sheets and payment records she received from Veronica Marlow for her work on
20  Bratz while a Mattel employee.[62]  Those receipts show Ms. Cabrera received

21

---

22  [57]  Facsimile from Maria Diaz to James J. Webster, dated March 28, 2008, Naim
23  Dec., Exh. 54.
    [58]  Id.
24  [59]  Email from Marcus Mumford to James J. Webster and Matthew Werdegar,
25  dated March 25, 2008, at 11:00 p.m., Naim Dec., Exh. 35.
    [60]  Email from Matthew Werdegar to Cyrus Naim and Marcus Mumford, dated
26  April 1, 2008, Naim Dec., Exh. 56.
    [61]  Naim Dec., ¶ 38.
27  [62]  Cabrera Tr. Vol. II, 2:11-17, Naim Dec., Exh. 4.
28

07209/2459505.1

-13-
MATTEL'S EX PARTE APPLICATION TO COMPEL DEPOSITIONS OF CABRERA AND MORALES; AND FOR GUIDANCE AS TO EVIDENCE

1  payments in excess of $100,000—all during the time she was employed by Mattel.[63]
2  Some of these show that Cabrera was paid under a false name and social security
3  number.[64]

4        At the inspection of the evidence on March 3, 2008, Mattel provided
5  the originals of these time sheets and receipts to Cabrera's counsel, although Mattel
6  maintained copies of each.[65]  Counsel for MGA and Veronica Marlow asked for
7  copies of the documents at the inspection.[66]  Without objection from Ms. Diaz, and
8  with her knowledge, Mattel provided the copies.[67]  Mattel's counsel notified the
9  parties of its intent to produce these documents with Bates numbers, and Ms. Diaz
10 stated that she wished to review them for privacy issues before this was done.  In
11 particular, she stated that she would potentially ask the social security numbers to be
12 redacted.[68]

13       By March 14, 2008, Mattel had received no response from Ms. Diaz
14 regarding the time-sheets, however.  Mattel then wrote to her stating that, absent a
15 response, it intended to produce them the following week.[69]  Mattel stated that it did
16 not intend to redact the social security numbers, because Ms. Cabrera's use of false
17 social security numbers is a highly relevant fact in this action.  To preserve any
18 privacy interests Ms. Cabrera might have, however, Mattel stated that it would
19 produce these documents with a confidentiality designation of "Attorney's Eyes
20 Only."[70]  Ms. Diaz flatly rejected this compromise in a letter dated March 19,

21

22   [63]  Naim Dec., ¶ 11.
23   [64]  Cabrera Tr. Vol. II, 28:8-30:2, Naim Dec., Exh. 4.
  [65]  Naim Dec., ¶ 5.
24   [66]  Id.
25   [67]  Id.
  [68]  Naim Dec., ¶ 6.
26   [69]  Facsimile from James J. Webster to Maria Diaz, dated March 14, 2008, Naim
27 Dec., Exh. 38.
  [70]  Id.
28

-14-

1  2008.[71]  She stated that she would not agree to the production of the time sheets

2  without redactions.[72]

3

4                           **Argument**

5  **I.    THE COURT SHOULD ORDER THAT MS. CABRERA, MS.**

6         **MORALES, AND MS. SALAZAR APPEAR FOR DEPOSITION**

7                  Since Mattel first discovered the actions of Ms. Cabrera, Ms. Morales,

8  and Ms. Salazar, MGA and counsel for the employees have used every available

9  delay tactic to prevent their depositions from taking place.  First, their counsel

10  unilaterally refused to attend the duly subpoenaed depositions in January.  Next,

11  MGA filed a motion to quash as to these witnesses and then, once Judge Larson had

12  made evident that the entire basis of the motion to quash was incorrect, filed a

13  "Supplemental and Second Amended Motion to Quash" attempting to essentially

14  reargue the same point.[73]  The Discovery Master issued his March 11, 2008 Order

15  denying the motion to quash.  Though the Order did not explicitly provide dates by

16  which these depositions must occur, once it denied the motion to quash, these

17  subpoenas were in full effect.  Cabrera, Morales and Salazar thus had an obligation

18  to comply with them without further delay or excuse.

19                  Instead, MGA went further.  Having made false and misleading

20  allegations regarding Mattel's investigation of its employees, and having had them

21  rejected first by Judge Larson and then the Discovery Master as a basis for

22  obstructing these depositions, it has now repeated the same arguments in a third

23  filing before Judge Larson seeking an evidentiary hearing regarding Mattel's

24  _____

25  [71]  Facsimile from Maria Diaz to James J. Webster, dated March 19, 2008, at
    10:55 a.m., Naim Dec., Exh. 39.

26  [72]  Id.

27  [73]  See MGA Defendants' Supplemental And Second Amended Notice Of
    Motion, Motion To Quash Deposition Subpoenas, dated February 14, 2008.

28

1   supposed "witness tampering."[74] Then, MGA filed a <u>fourth</u> motion, appealing the
2   motion to quash partly on the basis that it had filed the motion for an evidentiary
3   hearing.[75] The obvious goal is to prevent the depositions from proceeding at all
4   costs.

5   **A.    <u>Counsel for Ms. Diaz and Ms. Cabrera Refuses to Stipulate that</u>**
6           **<u>They will Appear for Deposition</u>**

7           Now, in the face of the Discovery Master's Order rejecting the motion
8   to quash, counsel for Ms. Cabrera and Ms. Morales provided dates for deposition in
9   mid-April, but has refused to sign a stipulation stating that they will *appear* on those
10  dates except on unreasonable conditions.

11          Such a stipulation is necessary because Mattel has repeatedly relied on
12  attorney affirmations that depositions would proceed, only to have them cancelled at
13  the last minute. For example, counsel for Carter Bryant stated that they were giving
14  their "word as attorneys" that defendant would appear for deposition in St. Louis
15  during the week of August 16, 2004.[76] Bryant's counsel stated that it was
16  "unnecessary" and "insulting" for them to sign a stipulation because their "word as
17  attorneys" was "good enough" to ensure defendant's appearance.[77] Thus, rather than
18  burden the Court with a motion, Mattel relied on defendant's counsel's word and

19
20
21
22  [74]  MGA and Bryant's Motion for Evidentiary Hearing Regarding Witness
     Tampering, dated March 12, 2008, Naim Dec., Exh. 41.
23  [75]  MGA Defendants' Notice of Motion and Motion Objecting to Portions of
     Discovery Master's March 11, 2008 Order Re Motion to Quash Deposition
24  Subpoenas, dated March 25, 2008, Naim Dec., Exh. 42.
25  [76]  Declaration of Michael T. Zeller in Support of Motion to Compel Deposition
     of Defendant and Cross-Complainant Carter Bryant and for Sanctions in the
26  Amount of $4,500, dated September 13, 2004, at ¶ 21 & Exh. 28, Naim Dec., Exh.
27  59.
     [77]  <u>Id.</u> at ¶ 21.
28

1  made arrangements to take defendant's deposition as agreed.[78]  Nevertheless, on the

2  afternoon of August 13, the Friday before the deposition, Bryant's counsel faxed a

3  letter to Mattel unilaterally canceling the deposition.[79]  It took two Court Orders and

4  some four months of repeated motion practice before Bryant finally deigned to

5  appear for his deposition.[80]

6        Nor has this been an isolated incident.  Mattel was forced to move to

7  compel the deposition of Isaac Larian, and received an Order that the deposition

8  should proceed by April 11, 2005.[81]     Nevertheless, at MGA's request, and to

9  accommodate Larian, Mattel agreed to hold the deposition on May 20, 2005.[82]

10  After that, MGA requested that the deposition be moved to May 26, 2005.[83]  Mattel

11  again agreed as an accommodation.[84]   On May 20, 2005, before the deposition

12  occurred, the Court stayed discovery pending a ruling by the Ninth Circuit.[85]  The

13  Court lifted the stay on May 16, 2006.[86]  One week later, on May 24, 2006, Mattel

14

15

---

16  [78]  Id. at ¶ 22.

17  [79]  Id. at ¶ 24 & Exh. 32

18  [80]  See Ruling On (1) Motion To Compel Deposition And (2) Motion For A
   Protective Order And Establish The Sequence And Timing Of Discovery, dated

19  October 5, 2004, Naim Dec., Exh. 63; Order Granting Mattel's Ex Parte Application
   To Set Compelled Deposition Of Defendant And Cross-Claimant Carter Bryant For

20  A Date Certain Pursuant To The Court's Order Of October 5, 2004, dated October

21  20, 2004, Naim Dec., Exh. 64.

22  [81]  Declaration Of Michael T. Zeller In Support Of Mattel, Inc.'s Reply In
   Support Of Ex Parte Application To Reschedule The Hearing Date On Defendants'

23  Motions To Dismiss Mattel's Amended Answer And Counterclaims, And
   Defendants' Objections To Discovery Master's March 7, 2007 Order, dated May 9,

24  2007, at ¶ 4 and Exh. 1, Naim Dec., Exh. 60.

25  [82]  Id. at ¶ 5.
   [83]  Id. at ¶ 5.

26  [84]  Id.

27  [85]  Id. at ¶ 6.
   [86]  Id.

28

-17-

1  contacted MGA's counsel to schedule Larian's deposition in June 2006.[87]  However,

2  counsel for MGA represented that the first tentative date that Larian could be

3  available was July 25 or 26, 2006.[88]  In an effort to accommodate Larian, Mattel

4  offered a number of additional deposition dates in June 2006.[89]  MGA rejected each

5  of those proposals.[90]  Ultimately, Mattel was forced to move to compel for a second

6  time.   On June 16, 2006, the Court ruled that MGA's failure to respond with

7  alternative proposed dates for Larian's deposition and insistence that Larian would

8  not be available until July 25-26 (without even firmly committing to those dates) did

9  not comply with the Court's March 23, 2005 Order, and imposed sanctions.[91]

10        As the Court is aware, Bryant's and Larian's conduct was but a small

11  part of defendants' continuing pattern of promises to appear for deposition, only to

12  be followed by delays and last-minute cancellations and then, ultimately, by outright

13  refusals to testify until ordered.[92]

14      **B.    Counsel for MGA and Ms. Salazar Refuses to Provide Any Dates at

15            All**

16        For their part, counsel for MGA and Ms. Salazar refuse to stipulate that

17  the depositions of Ms. Cabrera and Ms. Morales will proceed, and refuse to provide

18  dates for deposition of Ms. Salazar at all.  Instead, counsel argues that since MGA

19  has filed an appeal of the March 11, 2008 Order, it is free to ignore the subpoena

20

21  [87]  Id.

    [88]  Id.

22  [89]  Id.

23  [90]  Id.

    [91]  Id. at ¶ 7 and Exh. 3.

24  [92]  See generally Declaration of Michael T. Zeller in Support of Mattel's Motion

25  to Overrule Instructions Not to Answer During the Deposition of Carter Bryant,
    dated February 1, 2007, ¶¶ 5-13, Exhs. 5-11, Naim Dec., Exh. 61; Declaration of

26  Michael T. Zeller in Support of Mattel's Motion to Compel MGA to Produce

27  Witnesses for Deposition Pursuant to Rule 30(b)(6) and for Sanctions, dated
    April 13, 2007, ¶ 36 & Exh. 16, Naim Dec., Exh. 62.

28

1   and the Discovery Master's denial of its motion to quash. As MGA well knows,
2   however, that is not the law. MGA must have a court order in hand to stay the
3   March 11, 2008 Order, and a mere appeal is insufficient. Indeed, MGA was
4   previously sanctioned by the Discovery Master in this very case for its "clear and
5   flagrant" violation of a Court Order, when it failed to provide witnesses for
6   deposition on the basis that it was appealing the Order requiring the depositions
7   proceed.[93] MGA has not received an order staying the Discovery Master's March
8   11, 2008 Order. It is thus obliged to comply with the subpoena. Counsel has no
9   basis for refusing to have Ms. Salazar appear for deposition.

10          These tactics of delay should be put to an end. Ms. Cabrera, Ms.
11  Morales, and Ms. Salazar should be ordered to appear for deposition at the earliest
12  opportunity.

13  **II.  MATTEL SHOULD BE PERMITTED TO PRODUCE THE TIME**
14  **      SHEETS AND RECEIPTS IN UNREDACTED FORM**

15          Cabrera's counsel has also attempted to interfere with discovery into
16  her clients' conduct by preventing Mattel from producing unredacted payment
17  receipts Ms. Cabrera received from Veronica Marlow for her work on Bratz while
18  Cabrera was employed by Mattel. Cabrera's counsel demands that social security
19  numbers be redacted on privacy grounds, claiming that they are irrelevant to this
20  case. But the fact that Ms. Cabrera conspired with MGA's agent Marlow to arrange
21  for payments using false social security numbers and names to hide her work for
22  Bratz while employed by Mattel is unquestionably relevant. This fact demonstrates
23  guilty knowledge of wrongdoing and concealment by defendants and their agents.

24
25
26  [93] Order Granting In Part Mattel's Motion To Enforce The Court's Order Of
     May 16, 2007, To Compel MGA To Produce Witnesses For Deposition Pursuant To
27   Rule 30(B)(6), And Granting Request For Sanctions, dated August 14, 2007, at 9,
     Naim Dec., Exh. 45.
28

1          Moreover, Ms. Cabrera cannot rely on any privacy right to require

2 redaction. As a preliminary matter, the social security numbers do not belong to

3 Ms. Cabrera, and she therefore cannot assert any grounds for keeping them private.

4 In any case, federal law does not recognize a privacy privilege that would bar

5 production of personal information. See Humphreys v. Regents of Univ. of Cal.,

6 2006 WL 335275, *1 (N.D. Cal. 2006) (under Federal Rule of Evidence 501,

7 "federal law determines the evidentiary privileges that apply," and "there is no

8 federal analog to the California privacy rights that [defendant] seeks to invoke").

9          Even were there such a right, it would yield to the legitimate need for

10 this evidence of fraud and concealment to be adduced in this litigation. "[C]ourts

11 have frequently found that a party's need for information may outweigh whatever

12 privacy rights, if any, another party may have." Oakes v. Halvorsen Marine Ltd.,

13 179 F.R.D. 281, 284 (C.D. Cal. 1998); see Reyes v. Red Gold, Inc. 2006 WL

14 2729412, at *3 (S.D. Tex. 2006). This is especially true given that the documents

15 can be produced with a designation of "Confidential – Attorney's Eyes Only"

16 pursuant to the protective order in this case, which adequately protects any privacy

17 concerns. See, e.g., In re Heritage Bond Litigation, 2004 WL 1970058, *5, n.12

18 (C.D. Cal. 2004) ("Any privacy concerns . . . defendants have in their bank records

19 and related financial statements are adequately protected by the protective order, and

20 are not sufficient to prevent production in this matter"); A. Farber and Partners, Inc.,

21 234 F.R.D. 186, 191-92 (C.D. Cal. 2006) ("plaintiff's need for defendant Garber's

22 financial documents outweighs defendant Garber's claim of privacy, especially

23 when the 'impact' of the disclosure of the information can be protected by a

24 'carefully drafted' protective order"); Gohler v. Wood, 162 F.R.D. 691, 697 (D. Utah

25 1995) ("Because the protective order limits disclosure of confidential material to

26 those who are necessarily involved in the case, and these parties may use this

27 information only for purposes of litigating this case, excluding any business

28

1  purpose, the court concludes Deloitte's confidentiality concerns have been addressed
2  adequately.").

3          Also belying Ms. Cabrera's argument, her counsel was already present
4  and made no objection when these same documents were provided to counsel for
5  MGA and Veronica Marlow at the evidence inspection on March 3, 2008. In other
6  words, Cabrera objects to disclosure of these numbers to the very attorneys who
7  have already received them. This typifies the gamesmanship Mattel has been faced
8  with.

9          Finally, in her latest letter on this issue, dated March 19, 2008, Ms.
10  Diaz asserted without basis that these payment receipts and time sheets were taken
11  from her without her consent.[94] This is false. As a review of the transcript of the
12  interview shows, Ms. Cabrera brought these documents to Mattel. She first
13  mentioned their existence, without prompting, as a way to help establish her dates of
14  work:



[95]

23  The next day, Ms. Cabrera herself brought these documents for review by Mattel's
24  representatives:

25  _____

26  [94]   Facsimile from Maria Diaz to James J. Webster, dated March 19, 2008, at
27  10:55 a.m., Naim Dec., Exh. 38.
      [95]   Cabrera Tr. Vol. I, 170:3-12, Naim Dec., Exh. 3.
28

1  ████████████████████████████████████

2  ████████████████████████████████

3  ████████████████████████████████████

4  ████████████████████████

5  ███████████ [96]

6  Counsel has no basis for claiming that Mattel took documents without consent that

7  Ms. Cabrera provided.

8      Ms. Cabrera's use of false names and social security numbers -- with

9  MGA's agent's knowledge -- for her work on Bratz will be critical evidence in this

10 action, demonstrating defendant's knowledge and concealment of wrongdoing.  This

11 will also further evidence the scheme by which MGA used Mattel resources for its

12 own benefit.  Mattel should be permitted to produce these documents without the

13 redactions that Cabrera has demanded for no other reason than to hide the true facts

14 from scrutiny.

15

16 **III.   MATTEL SHOULD BE PERMITTED TO CONDUCT EXPERT**

17 **RECONSTRUCTION OF THE DOCUMENTS PROVIDED BY MS.**

18 **CABRERA**

19   **A.   Mattel Has Lawful Possession Of The Evidence Provided By Ms.**

20   **Cabrera**

21      Mattel should be permitted to conduct expert reconstruction on the

22 torn-up documents Ms. Cabrera provided to Mattel.  As an initial matter, defendants

23 have falsely asserted that Mattel "seized" this evidence from Ms. Cabrera as well.

24 In reality, Ms. Cabrera cooperated with an investigation into her wrongdoing and

25 provided these boxes to Mattel.  As the sole basis for these allegations, counsel

26

27

28

[96]   Cabrera Tr. Vol. II, 2:11-17, Naim Dec., Exh. 4.

-22-

1   quotes Ms. Cabrera during her interview with Mattel as saying, "████████████

2   ████████████████████████"[97]  Counsel claims that this was a statement that

3   Ms. Cabrera was unwilling to retrieve the boxes of evidence from her home.  Yet

4   the transcript reveals that, far from stating her unwillingness to cooperate, Ms.

5   Cabrera was stating that she did not want her employment with Mattel to be

6   terminated:

7   █████████████████████████████████████

8   ███████████████████████████████████████

9   ███████████████████████████

10   ████████████████████████████████████

11   ████████████

12   ███████████████████████████████████████

13   ███████████████████████████████████████

14   ███████████████████████████████

15   ████████████████████████████████████████

16   ██████████████████████████████████

17   ████████████████████████

18   █████████████████████████████████

19   ██████████████████████████████████████

20   ███████████████████████████████████████

21   ██[98]

22   Accordingly, there is no basis in fact for the assertion that Mattel "seized" this

23   evidence or that Ms. Cabrera did not voluntarily provide it to Mattel.

24

25   _____

26   [97]   For example, MGA made this argument in its Second Amended and

27   Supplemental Motion to Quash at p. 10.

     [98]   Cabrera Tr. Vol. I at 72:10-73:2 (emphasis added), Naim Dec., Exh. 3.

28

1         Indeed, this is underscored by the fact that even now Ms. Cabrera *does*

2 *not want this evidence returned to her*. Her counsel explicitly stated that she did not

3 want possession of these boxes.[99]

4         As to the specific issue of expert reconstruction on the torn-up

5 documents, Ms. Cabrera has agreed to such reconstruction, and *explicitly waived*

6 *any future rights to the evidence*. No other party has asserted any ownership claims

7 as to this evidence either. MGA has objected to reconstruction, but provided no

8 basis for its objection. Counsel for Marlow has maintained silence in the matter.

9        **B.**     **The Torn-Up Documents Are Clearly Relevant to This Case**

10         Mattel seeks the Court's permission to have its expert reconstruct the

11 torn-up documents provided to Mattel by Cabrera. These torn documents appear to

12 be Bratz drawings by Carter Bryant.[100] It is notable that Marlow -- the person who

13 Ms. Cabrera stated provided her with the documents -- was allegedly one of the first

14 people to whom Carter Bryant showed his Bratz drawings. Marlow also worked

15 with Bryant on fashions for Bratz through 2005.[101] These documents when

16 reconstructed will likely show that Bryant provided his drawings so that Cabrera

17 could work from them, thus warranting expert reconstruction.

18         Moreover, these documents are highly relevant to possible issues of

19 spoliation and of MGA's and Bryant's knowledge of Cabrera's work on Bratz while

20 a Mattel employee. As discussed above, both Bryant and MGA concealed the

21 identity of Ms. Cabrera throughout discovery by providing false, blanket denials

22 under oath in response to specific discovery questions seeking identification of

23

24

25      [99]    Letter dated March 10, 2008, from Maria Diaz to James J. Webster, Naim

26 Dec., Exh. 32.

     [100]   Cabrera Tr. Vol. I at 109:16-110:25, Naim Dec., Exh. 3.

27      [101]   Bryant Depo. Tr. at 46:22-47:8, Naim Dec., Exh. 2.

28

1   Mattel employees who worked on Bratz or for MGA.[102] Marlow attempted to hide
2   the existence of Ms. Cabrera and Ms. Morales by paying them in false names and
3   false social security numbers. Now, it appears defendants went still further, and
4   attempted to destroy and hide relevant documents by tearing them up and leaving
5   them in the possession of Ms. Cabrera.[103]

6          In sum, these documents are therefore relevant to this action, and good
7   cause for their reconstruction exists.

8   **C.    Any Expert Reconstruction Will Be Minimally Invasive, and Will**
9          **Be Conducted By an Expert Already Approved by This Court.**

10         Balancing against the high relevance of these documents, their
11  reconstruction by an expert will be minimally invasive. Mattel seeks to have its
12  expert document examiner, Lloyd Cunningham, reconstruct the documents at issue.
13  Mr. Cunningham has already submitted his C.V. to the Discovery Master, along

---

19  [102]  See e.g., Bryant Depo. Tr. at 286:25-287:5, Naim Dec., Exh. 2; Tonnu Depo.
20  Tr. at 301:2-17, Naim Dec., Exh. 50; MGA's Supplemental Responses to Mattel's
    Revised Third Set of Interrogatories, dated November 30, 2007, at 64-70, Naim
21  Dec., Exh. 49.
    [103]  And, as the Court is aware, spoliation is specifically alleged in Mattel's
22  Complaint, and there is evidence of prior, deliberate spoliation by defendants. For
23  example, Mattel has uncovered evidence that Carter Bryant has installed Evidence
    Eliminator software on his computers and used it to destroy evidence. See
24  Summary of Findings of Forensic Analysis Report 1 of Mark J. Menz, dated
25  February 10, 2008, at 1, Naim Dec., Exh. 47. Isaac Larian ordered an MGA
    executive to white-out Mattel fax headers from Carter Bryant's contract with MGA.
26  Tr. of Victoria O'Connor Depo. at 18:13-18, Naim Dec., Exh. 48.

with a statement of his practices with regard to the preservation of evidence,[104] and the Discovery Master has found his credentials satisfactory.[105]

Mr. Cunningham's normal process for reconstructing documents is usually completely non-invasive and does not change the inherent properties of the document.  His normal procedure is as follows:

- Mr. Cunningham first lays out each piece of a document as flat as possible.  For documents that are somewhat crumpled, he will straighten them by placing them in between two sheets of glass or transparent plastic.[106]
- Mr. Cunningham would then examine the edges of each piece of paper, and attempt to match those edges.[107]
- He would then connect the papers using special 3M liftable tape, that can hold the documents together, but is easily removed without damaging the underlying documents.[108]
- Finally, Mr. Cunningham would make a high quality reproduction of the assembled documents.[109]

This entire process is non-destructive.[110]  No damage would be done to the documents thus reconstructed.  The only situation in which further methods would take place is if the documents were crumpled severely enough that normal

[104]   *In Camera* Declaration #4 As To Expert Examination And Testing Of Bryant's Original Documents, dated August 27, 2007, Naim Dec., Exh. 51.
[105]   Order Granting Mattel, Inc.'s Motion to Compel Bryant to Make Original Documents Available for Expert Examination and Testing, dated August 30, 2007, Naim Dec., Exh. 52.
[106]   Declaration of Lloyd Cunningham ("Cunningham Dec."), filed concurrently, at ¶ 5.
[107]   Cunningham Dec., ¶ 6.
[108]   Cunningham Dec., ¶ 7.
[109]   Cunningham Dec., ¶ 8.
[110]   Cunningham Dec., ¶ 4.

MATTEL'S EX PARTE APPLICATION TO COMPEL DEPOSITIONS OF CABRERA AND MORALES; AND FOR GUIDANCE AS TO EVIDENCE

1  attempts to lay them flat would fail.  In those instances, Mr. Cunningham uses a
2  heating element to help flatten the documents.[111]  Such heating could change the
3  existing state of the documents by flattening them and rendering them more
4  readable.  Yet this would only be necessary as a result of Marlow tearing these
5  documents up in an attempt to destroy them.

6        Contrary to MGA's apparent position, the appropriate remedy is to
7  attempt to learn what was hidden by the attempted spoliation, not to demand that the
8  documents stay unviewable because a witness attempted to thwart discovery.  Mattel
9  should not be punished for the conduct of defendants and their agents.  Given that
10  the reconstruction at issue will likely be completely nondestructive, and will at
11  worst remove the creases from the documents, Mattel should be permitted to have
12  an expert attempt to reconstruct these documents.  Cf. Diepenhorst v. City of Battle
13  Creek, 2006 WL 1851243, at *1 (W.D. Mich. 2007) (permitting expert testing and
14  nothing that, "where purely nondestructive testing is proposed, the court generally
15  allows the examiner to perform his or her work without being scrutinized by the
16  opposing expert.").

17  **IV.  MGA SHOULD BE SANCTIONED**

18        Mattel has been attempting to depose these witnesses since January.
19  MGA has filed four motions in an attempt to thwart them.  Now, despite this Court's
20  March 11, 2008 Order denying MGA's motion to quash and permitting the
21  depositions to go forward, MGA and these defendants *still* refuse provide deposition
22  dates, or to stipulate to ensure they will *appear* on those dates.

23        By refusing to allow these depositions to proceed without seeking a
24  stay of the March 11, 2008 Order, MGA is in willful violation of this Court's Order
25  and the subpoenas themselves.  The Discovery Master has broad authority to

26

27

[111]  Cunningham Dec., ¶ 9.

28

-27-

1  sanction MGA for its disobedience of the Discovery Master's March 11, 2008
2  Order. Under Federal Rule of Civil Procedure 37(b)(2), the Court "may make such
3  orders in regard to the failure [to comply with the Court's Order] as are just." See
4  also United States v. Westinghouse Electric Corp., 648 F.2d 642, 651 (9th Cir.
5  1981) ("The choice of discovery sanctions is left to the discretion of the district
6  court."); accord Grimes v. City and County of San Francisco, 951 F.2d 236, 240-241
7  (9th Cir. 1991) (courts "may, within reason, use as many and as varied sanctions as
8  are necessary to hold the scales of justice even.").

9        Independently, sanctions may be imposed under 28 U.S.C. § 1927,
10  which provides that "[a]ny attorney . . . who so multiplies the proceedings in any
11  case unreasonably and vexatiously may be required by the court to satisfy personally
12  the excess costs, expenses, and attorneys' fees reasonably incurred because of such
13  conduct." Sanctions under this section are appropriate "for conduct that, viewed
14  objectively, manifests either intentional or reckless disregard of the attorney's duties
15  to the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995), citing Braley v.
16  Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987). By any definition, MGA's
17  decision to file four separate motions to prevent these depositions has multiplied the
18  proceedings in this case.

19        MGA's conduct is part of a pattern of unreasonable and vexatious
20  conduct. MGA and its counsel should be sanctioned for the fees Mattel has been
21  forced to incur in connection with this motion. Mattel therefore requests that MGA
22  be ordered to pay $4,500 as partial reimbursement for the fees Mattel has incurred
23  on this Motion.

24
25
26
27
28

07209/2459505.1

## Conclusion

For the foregoing reasons, Mattel respectfully requests that its motion be granted in its entirety.

DATED: April 3, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

1

## PROOF OF SERVICE

2        I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,

3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4  On April 4, 2008, I served true copies of the following document(s) described as  **[PUBLIC REDACTED] MATTEL, INC.'S** *EX PARTE* **APPLICATION (1) TO COMPEL**

5  **DEPOSITIONS OF ANA CABRERA, BEATRIZ MORALES, AND MARIA SALAZAR; (2) FOR GUIDANCE AS TO EVIDENCE RECEIVED FROM ANA CABRERA; AND (3) FOR**

6  **SANCTIONS; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

7

8      Maria Diaz
        **Allred, Maroko & Goldberg**

9      6300 Wilshire Blvd. Suite 1500
        Los Angeles, CA 90048

10

11

12

13  **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

14        I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

15

        Executed on April 4, 2008, at Los Angeles, California.

16

17

18        NOW LEGAL -- Dave Quintana

19

20

21

22

23

24

25

26

27

28

07209/2372990.1