QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059, Case No. CV 05-02727 |
| vs. | Hon. Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S (1) OPPOSITION TO MGA DEFENDANTS AND CARTER BRYANT'S JOINT EX PARTE APPLICATION FOR AN ORDER STRIKING MATTEL'S EXHIBIT LIST; AND (2) CROSS-EX PARTE APPLICATION FOR AN ORDER COMPELLING DEFENDANTS TO MEET AND CONFER IN GOOD-FAITH REGARDING THE PARTIES' EXHIBIT LISTS OR, IN THE ALTERNATIVE, FOR ORDER STRIKING DEFENDANTS' EXHIBIT LIST |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| | Hearing Date: TBA |
| | Time: TBA |
| | [Declarations of Tamarah Jih, Christopher E. Price, and Geoffrey A. Grundy filed concurrently herewith] |
| | **Phase I** |
| | Discovery Cut-off: January 28, 2008 |
| | Pre-trial Conference: May 5, 2008 |
| | Trial Date: May 27, 2008 |

07209/2458387.2

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE THAT, in addition to hereby opposing

3 | Defendants' Joint Ex Parte Application for an Order Striking Mattel's Exhibit List,

4 | Mattel, Inc. ("Mattel") will, and hereby does, respectfully apply ex parte, pursuant

5 | to Local Rule 7-19 and 16-14 and Fed.R.Civ.P. 16 and 26, for (1) an order

6 | compelling Defendants to meet and confer in good-faith regarding the parties'

7 | exhibit lists or, (2) in the alternative, for an order striking Defendants' exhibit list.

8 |      This application is made on the grounds that Defendants failed to

9 | comply with their obligations under Rules 16 and 26 of the Federal Rules of Civil

10 | Procedure to meet and confer in good faith regarding the parties' trial exhibit lists.

11 | Defendants have also failed to provide, in good faith, a list of exhibits it actually

12 | intends to use at trial and have included entries that purport to give Defendants a

13 | blank check to introduce at trial any exhibit they wish without prior notice to Mattel

14 | or the Court.

15 |      This application is based on this Opposition and Cross-Ex Parte

16 | Application, the accompanying Memorandum of Points and Authorities, the

17 | concurrently filed declarations of Tamarah Jih, Christopher E. Price, and

18 | Geoffrey A. Grundy and all pleadings and papers on file with the Court in this

19 | action.

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1          Pursuant to <u>Local Rule</u> 7-19.1, counsel for Mattel gave notice of this

2 application to counsel for all other parties via fax and email on April 3, 2008, after

3 Mattel's efforts to have Defendants meet and confer on all the parties' trial exhibit

4 lists were rebuffed by Defendants.

5          Counsel for Carter Bryant is Michael Werdegar of Keker & Van Nest,

6 LLP (telephone: 415-391-5400; address:  710 Sansome Street, San Francisco, CA

7 94111).  Mr. Bryant will oppose Mattel's <u>ex parte</u> application.

8          Counsel for MGA Entertainment, Inc., MGA Entertainment (HK) Ltd.,

9 MGAE de Mexico and Isaac Larian is Lance Etcheverry and Robert J. Herrington of

10 Skadden, Arps, Slate, Meagher & Flom LLP (telephone:  213-687-5000; address:

11 300 S. Grand Ave., Los Angeles, CA 90071).  The MGA defendants will oppose

12 Mattel's <u>ex parte</u> application.

13

14 DATED:  April 4, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

15

16

17                 By<u>/s/ Jon D. Corey</u>
                  Jon D. Corey
                  Attorneys for Mattel, Inc.

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3

4 MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

5 PRELIMINARY STATEMENT .................................................................. 1

6 ARGUMENT......................................................................................... 3

7 I.      DEFENDANTS' *EX PARTE* VIOLATES THE RULES................................. 3

8 II.     MATTEL'S EXHIBIT LIST COMPLIES WITH THE FEDERAL
         RULES OF CIVIL PROCEDURE AND LOCAL RULES............................... 4

9
         A.    Mattel's Disclosure of Trial Exhibits Was Prepared in Good-
10               Faith ................................................................................... 4

11        B.    Mattel's Exhibit List is Reasonable Given the Nature of the Case......... 5

12        C.    The True Size of Defendants' Exhibit List Demonstrates the
               Reasonableness of Mattel's List.................................................... 7

13
   III.  THE COURT SHOULD ORDER DEFENDANTS TO MEET AND
14        CONFER IN GOOD FAITH REGARDING THE PARTIES EXHIBIT
         LISTS OR PROVIDE ALTERNATIVE RELIEF......................................... 10
15
   CONCLUSION...................................................................................... 11

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Adams v. Shell Oil Co.,
   1992 WL 245566 (E.D. La. Sept. 8, 1992) ................................................................ 6

Martin v. Bell Helicopter Co.,
   85 F.R.D. 564 (D. Colo. 1980) .................................................................. 5, 6

Z4 Techns., Inc. v. Microsoft Corp.,
   2006 WL 2401099 (E.D. Tex. Aug. 18, 2006) ......................................................... 5

## Statutes

Federal Rules of Civil Procedure

   Rule 16 ................................................................................................ 1, 3

   Rule 26 ................................................................................................ 1, 3

   Rule 26(a)(3)(A) ...................................................................................... 5

   Rule 26(a)(3)(A)(iii) ................................................................................ 5

Local Rules

   Rule 16 ................................................................................................ 1, 3

   Rule 16-6.1 ............................................................................................ 3, 5

   Rule 16-2 .............................................................................................. 3

   Rule 16-2.3 ........................................................................................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Defendants have brought an <u>ex parte</u> that violates the pre-filing processes contemplated by <u>Local Rule</u> 16 and <u>Federal Rules of Civil Procedure</u> 16 and 26. In requiring the parties to exchange exhibit lists before they are filed with the Court, these <u>Rules</u> direct that the parties attempt to work out -- through discussions -- any issues with the exhibit lists before burdening the Court. In stark contrast to these requirements, Defendants wrote Mattel within hours of receiving Mattel's list to proclaim that they were bringing an <u>ex parte</u> to strike Mattel's exhibit list. Defendants' letter not only lacked any request to discuss the list with Mattel, but also lacked any discernible understanding of the pre-filing discussion process required by the <u>Rules</u>. So intent were they on bringing their <u>ex parte</u> that Defendants did not seek any pre-filing discussion about their announced <u>ex parte</u> either.

Only after Mattel insisted on pre-filing discussion in response to the letter did Defendants deign to talk. Although they were present on the telephone call Mattel requested, they refused to meaningfully participate. Indeed, in their haste to burden Mattel and the Court with their <u>ex parte</u>, Defendants even rejected Mattel's offer to get back to Defendants in "two hours" to provide a proposal whereby it would work to address their professed concerns by preparing a revised exhibit list. Defendants instead filed their <u>ex parte</u> almost immediately after the call.

As is evident, Defendants have not just violated the <u>Rules</u> by refusing to discuss Mattel's exhibit lists. They have thwarted their essential purpose by dispensing with those discussions entirely and resorting to precipitous motion practice. And, as described further below, when Mattel has sought to discuss with Defendants *their* exhibit lists, Defendants flatly refused that too.

1    For these reasons alone, Defendants' ex parte should be denied. The
2  Court also should order Defendants to comply with the Rules and to meet and confer
3  regarding all the parties' exhibit lists.
4    The ex parte is also without merit. Mattel's exhibit list complies with
5  the Federal Rules of Civil Procedure and the Local Rules. Mattel prepared it in a
6  good faith attempt to identify exhibits it expects to offer at trial as well as those it
7  may offer if the need arises. No exhibits were added to overburden Defendants or
8  conceal evidence, and the volume of Mattel's exhibit list is reasonable given the
9  nature of the case. This is a complex case with hundreds of products at issue, and
10  the burden of proof is on Mattel. MGA has produced over 4 million pages, more
11  than 2 million in the last few months. There have been more than 120 deposition
12  sessions and the parties have produced 29 expert reports. Defendants' own extreme
13  positions in this case where they vigorously contest even the most obvious facts --
14  such as their denial that even a single Bratz doll looks like Bryant's drawings and
15  they refused to agree to stipulate to MGA's financial information -- have further
16  complicated this matter and necessitated the inclusion of thousands of exhibits.
17    The true volume of Defendants' own exhibit list further demonstrates
18  the reasonableness of Mattel's. For many categories, Defendants simply lumped
19  hundreds and even thousands of documents into a single entry, whereas Mattel
20  identified each document separately. One example is expert reports, exhibits,
21  attachments and work documents. Mattel identified each one individually,
22  Defendants bundled all of the documents related to each expert into one entry per
23  expert. Another example from Defendants' list is, "Documents needed to place into
24  context any Exhibit used at trial by Mattel." (No. 2844). A conservative estimate
25  would put Defendants' actual exhibit list at over 10,000 entries.
26    Accordingly, the Court should deny Defendants' ex parte and order
27  Defendants to meet and confer about the parties' exhibit lists. In the alternative, the
28  Court should strike Defendants' exhibit list.

1

**Argument**

2 **I.   DEFENDANTS' *EX PARTE* VIOLATES THE RULES**

3            Defendants' ex parte forces the Court and the parties to waste time on

4 matters that could have been resolved if they had met and conferred in good faith.

5 Rules 16 and 26 of the Federal Rules of Procedure direct the parties to work

6 together to prepare their pre-trial submissions for filing. Local Rule 16 requires that

7 the parties meet and confer over a period of weeks before filing their joint exhibit

8 list. Local Rules 16-2, 16-6.1. Defendants violated these Rules by resorting to

9 precipitous ex parte motion practice rather than working with Mattel to address their

10 claimed concerns. On this basis alone, Defendants' application should be denied

11 and the Court should compel them to meet and confer about the lists and other pre-

12 trial matters as the Rules contemplate.

13            When the parties met via teleconference to discuss Defendants' threat to

14 file an ex parte, their fundamental rationale was that Mattel's list was too long.[1]

15 Other than the length of the list, Defendants offered only a few specific concerns.[2]

16 When counsel for Mattel requested that Defendants identify any additional concerns

17 or provide such concerns as arose so that Mattel could address them, Defendants

18 refused.[3]

19            Defendants' ex parte is similarly vague. Despite claiming that Mattel's

20 list is "littered with irrelevant documents having nothing to do with Carter Bryant,

21 Bratz, or the claims and defenses at issue in Phase I" (Ex Parte, 4:17), Defendants

22 cite only three exhibits. For example, Defendants contend that No. A-1220 is

23 gibberish. Had they raised it with Mattel before filing their ex parte, they would

24 have learned that the description is the result of a "bad read" of an electronic file.[4]

25

26

27 [1] Declaration of Christopher E. Price ("Price Dec."), ¶ 3.
[2] Id.

28 [3] Id.
[4] Declaration of Geoffrey A. Grundy ("Grundy Dec."), ¶ 3.

MATTEL'S OPPOSITION TO MGA'S EX PARTE APPLICATION AND CROSS-EX PARTE APPLICATION

1   Defendants thus have burdened the Court over a simple clerical error that could

2   have been avoided and readily fixed if they had met and conferred in good faith.[5]

3         It is now apparent that Defendants intended to file their application no

4   matter what good faith efforts Mattel made.  When Mattel asked how it could help

5   resolve Defendants' concern, their only proposal was that Mattel stipulate to file a

6   revised list by the close of business the next day, April 4, 2008.[6]  This was

7   unreasonable on its face.  In response, Mattel offered to respond within two hours

8   with a proposal whereby Mattel would work in good faith to address Defendants'

9   concerns by preparing a revised list.[7]  They refused and immediately filed this <u>ex</u>

10  <u>parte</u>.[8]  Obviously, it had been worked up in advance, further demonstrating that

11  Defendants had no intention of attempting to resolve the matter and had planned to

12  burden the Court with unnecessary motion practice well in advance.  Defendants' <u>ex</u>

13  <u>parte</u> should be denied and they should be ordered to meet and confer in good faith

14  regarding the contents of Mattel's exhibit lists.

15

16  **II.  MATTEL'S EXHIBIT LIST COMPLIES WITH THE FEDERAL**

17        **RULES OF CIVIL PROCEDURE AND LOCAL RULES**

18        **A.  <u>Mattel's Disclosure of Trial Exhibits Was Prepared in Good-Faith</u>**

19        Mattel disclosed the exhibits required by the <u>Federal Rules of Civil</u>

20  <u>Procedure</u> and <u>Local Rules</u>.  <u>Local Rule</u> 16-2.3 requires that the parties "disclose all

21  exhibits to be used at trial other than those contemplated to be used solely for

22  impeachment."  Defendants' position, though unclear, appears to be that Mattel must

23  list only what it knows it will use at trial.  This is not the standard.  <u>Fed. R. Civ. P.</u>

24

25      [5]  Neither party is immune to such mistakes.  Defendants' list contains several

26  entries for which the end bates numbers are lower than the beginning bates numbers. Grundy Dec., ¶ 13.

27      [6]  Price Dec., ¶ 4.

    [7]  <u>Id.</u>

28      [8]  <u>Id.</u>

1   26(a)(3)(A) directs the parties to exchange "information about the evidence that it

2   <u>may</u> present at trial other than solely for impeachment."[9] (emphasis added).

3   <u>Fed.R.Civ.P.</u> 26(a)(3)(A)(iii) requires that the parties exchange and file with the

4   Court "those items the party expects to offer <u>and</u> those it may offer if the need

5   arises."[10] (emphasis added). To meet these requirements, Mattel worked in good

6   faith to identify and exchange an exhibit list containing the exhibits it expects to

7   offer at trial as well as those it <u>may</u> offer if the need arises.[11] Mattel avoided

8   including exhibits to be used solely for impeachment and did not include exhibits in

9   an attempt to overburden Defendants or hide the exhibits it intends to use at trial.[12]

10      **B.      Mattel's Exhibit List is Reasonable Given the Nature of the Case**

11          Defendants' <u>ex parte</u> application rests almost entirely on the argument

12   that Mattel's exhibit list is too long. But merely counting the number of entries is

13   not the way to evaluate an exhibit list. Defendants do not say how many exhibits

14   would be acceptable, demanding only a supposedly "meaningful list." (Ex Parte,

15   2:14). Defendants offer no authority that puts an arbitrary cap on exhibit lists.

16   Neither <u>Z4 Techns., Inc. v. Microsoft Corp.</u>, 2006 WL 2401099 (E.D. Tex. Aug. 18,

17   2006), or <u>Martin v. Bell Helicopter Co.</u>, 85 F.R.D. 564 (D. Colo. 1980), involved

18   motions to strike exhibit lists. In <u>Z4 Techns. Inc.</u>, the court imposed an attorney's

19   fees award on Microsoft <u>after</u> judgment against it following a jury trial. The award

20   was imposed because of a long list of Microsoft "litigation misconduct," of which

21   one was the filing of an extensive exhibit list from which only 107 exhibits were

22   used. <u>Id.</u> at *4. The reference to <u>Martin</u> is pure dicta. The court simply was

23

24      [9]  MGA has demanded that Mattel revise its responses to Defendants' contention

25   interrogatories to identify by bates nos. the trial exhibits responsive to each request.
      (<u>Ex Parte</u>, 5:13-14). They offer no rationale for imposing such an onerous demand

26   on Mattel on the eve of trial.
         [10]  These documents are to be separately identified in the parties' Joint Exhibit

27   List. <u>Local Rule</u> 16-6.1
         [11]  Declaration of Tamarah Jih, ¶ 2.

28      [12]  <u>Id.</u>

1   cautioning counsel against engaging in unfair trial tactics. <u>Id.</u> at 662.  Because no

2   exhibit lists had been exchanged or filed, <u>Martin</u> offers no guidance about what

3   would be an acceptable list in this matter.

4          The central case upon which Defendants rely is a one-page,

5   unpublished minute entry, <u>Adams v. Shell Oil Co.</u>, 1992 WL 245566 (E.D. La.

6   Sept. 8, 1992).  As the <u>Adams</u> court noted, however, the issue was not that the

7   exhibit list was "too long," but that it was inappropriate for the trial of a simple state

8   court tort claim. <u>Id.</u> at *1, n. 1.  Here, Mattel's exhibit list is appropriate given the

9   nature and complexity of this action and the burden it bears as the plaintiff.

10          The parties have deposed 95 witnesses in more than 120 deposition

11   sessions.[13]  The parties have submitted 29 expert reports.[14]  MGA has produced

12   4,060,962 pages of documents; Mattel has produced 908,414; and third parties have

13   produced 15,809 pages.[15]  At issue are hundreds of products -- Bratz dolls and

14   licensed products -- and the relationship they bear to the drawings by Carter Bryant,

15   the timing of the development of Bratz, the enforceability of Mattel's contracts with

16   Bryant, the role of numerous third parties in creating Bratz (such as tracking MGA

17   extensive payments to third parties working on Bratz, including to Mattel

18   employees), as well as complex damages issues (including disgorgement of MGA's

19   profits and Larian's financial relationship with MGA and various trusts).

20          Hundreds of Mattel's exhibits, if not more, are base level financial

21   documents such as checks, etc.  Mattel anticipated asking Defendants to stipulate to

22   a single exhibit or exhibits documenting these base level transactions, thus

23

24     [13]  Grundy Dec., ¶ 4.

25     [14]  <u>Id.</u>, ¶ 5.
  [15]  Defendants' complaint that Mattel "required" it to appear at depositions and
26   produce documents is entirely misplaced.  It has been the Court and Discovery
Master who time and again have compelled the production of MGA documents and
27   witnesses because Defendants have stonewalled throughout this case on even the
most obvious discovery, including by refusing in the face of multiple Court orders to
28   produce even named Defendants for deposition.

1  eliminating the need for thousands of such documents.  That type of discussion

2  should be part of the meet and confer process.  But absent such an agreement,

3  Mattel was compelled to list all of the exhibits it needed to show bias, timing of

4  payments and by whom they were made.

5          Indeed, in this respect, Defendants have contributed to the complexity

6  of this matter by their litigation tactics.  For example, Defendants have denied that

7  <u>any</u> of the Bratz dolls or any other Bratz products is drawings are similar to any of

8  the Bryant's drawings.  For another example, of the four million pages MGA has

9  produced, over half -- more than 2 million pages -- were produced since

10 November 2007.[16]  Given the nature of the case, MGA's voluminous and belated

11 production, Mattel's burden and Defendants' unreasonable denials of even the most

12 obvious facts, Mattel's list is reasonable.

13 **C.**     <u>**The True Size of Defendants' Exhibit List Demonstrates the**</u>

14         <u>**Reasonableness of Mattel's List**</u>

15         Defendants concede that their exhibit list contains many categorical

16 descriptions of exhibits that, if individually listed, would substantially increase the

17 number of actual exhibits on Defendants' list.[17]  For example, Defendants' list

18 includes entries such as "tangibles produced by Mattel," "tangibles produced by

19 MGA," "tangibles produced by third-parties," and "boxes" of Bryant drawings listed

20 as one exhibit but which contain hundreds or thousands of exhibits each.[18]

21 Defendants attempt to deflect this point by claiming that Mattel's list also includes

22 some categorical descriptions.  This is misleading.  Defendants' list includes

23 categorical descriptions that "bundle" large numbers of exhibits into one entry that

24

25 _____

26 [16]  Grundy Dec., ¶ 6.

27 [17]  Ex Parte, 5:22-27.

28 [18]  Nos. 2873-2875, 2841, Exh. B to the Grundy Dec.  During the meet and confer, MGA stated that the boxes of Bryant drawing contained around 300 documents.  Price Dec., ¶ 5.

1   on Mattel's exhibit list are individually listed.  In other words, Mattel listed

2   thousands of exhibits separately that Defendants listed in a handful of entries.

3           • <u>Expert Reports and Supporting Documents</u>.  Mattel's exhibit list

4   includes over 4,500 individual entries reflecting each expert report, exhibit,

5   attachment, and working documents.[19]  Defendants' list lumps all of their expert

6   documents into single, categorical descriptions.  For example, No. 2826 is

7   "Attachments, Appendices, Schedules, and Workpapers from Expert & Rebuttal

8   Report(s) of Duffy."  Thirteen other exhibits on Defendants' list are substantially the

9   same, with the exception of the respective expert's name.[20]  Had Defendants been as

10  specific as Mattel about expert materials, their list could have increased by

11  thousands of exhibits.[21]

12          • <u>Exhibits Regarding Summary Judgment</u>.  Defendants broadly lumped

13  all exhibits cited by MGA and Mattel in their respective summary judgment briefs

14  into a single entry, whereas Mattel separately listed each exhibit.[22]

15          • <u>Defendant's Exh. No. 394</u>.  Defendants include 1,047 drawings as

16  <u>one</u> exhibit; whereas Mattel lists the same drawings as 475 separate entries.[23]  Had

17  Defendants been as specific as Mattel about these drawings, their list would have

18  increased by another 474 exhibits for that reason alone.[24]

19          • <u>Defendants' Exh. No. 3207</u>.  Defendants list 125 pages of drawings in

20  one exhibit; whereas Mattel marked most of them individually as 120 exhibits.[25]

21

22

---

23  [19]  Grundy Dec. ¶ 17.
24  [20]  Nos. 2826-2840, Exh. B to the Price Dec. .
      [21]  Mattel's review of Defendants' list is initial and ongoing.
25  [22]  Grundy Dec., ¶ 8.
      [23]  Id., ¶ 9
26  [24]  The use of Defendants' bate range on their list suggests the inclusion of the
27  1,047 drawings.  The issue may be unclear however given a conflicting reference to
    a deposition exhibit.  It is just these kinds of issues that the parties could resolve
28  without the Court's intervention.
      [25]  Id., ¶ 10.

1  Had Defendants been as specific as Mattel about these drawings, their list would
2  have increased by at least 119 exhibits.

3          • Defendants' Exh. No. 3237.  Defendants list 568 pages of different
4  documents as one exhibit; whereas Mattel -- though not using many of these same
5  pages -- listed 87 separate exhibits from this list.[26]

6          • Defendants' Exh. Nos. 3308 and 3186.  For No. 3308, Defendants
7  listed 568 pages as one exhibit.  Although Mattel did not use the entire range, it
8  listed them as 34 separate exhibits.  For No. 3186, Defendants list 251 pages as one
9  exhibit.  Although Mattel used only a few of those same pages, it listed them as 16
10 separate exhibits.[27]

11          Defendants' list also employs vast, sweeping categories that could add a
12 boundless number of exhibits to their true exhibit count.  These categorical
13 descriptions of exhibits are unlike any entry in Mattel's list:

14          • "Documents needed to place into context any Exhibit used at trial by
15 Mattel."  (No. 2844).

16          • "Documents selected from any Exhibits identified by Mattel."
17 (No. 2845).

18          • "Documents that impeach any witness whose testimony is presented
19 at trial."  (No. 2849).

20          • "Documents selected from supplemental document productions made
21 by any party from 3/1/08 through the trial."  (No. 2848).

22          It appears that Defendants' list would easily exceed 10,000 exhibits had
23 it listed these exhibits individually or used a similar approach to these categories as
24 Mattel.  This demonstrates that MGA's simple count method of the exhibit entries,
25 especially for comparison purposes, is a misleading guide to the actual number of
26 exhibits identified in the parties' respective lists.

27

28  [26]  Id., ¶ 11.

1

2   **III.   THE COURT SHOULD ORDER DEFENDANTS TO MEET AND**

3   **CONFER IN GOOD FAITH REGARDING THE PARTIES EXHIBIT**

4   **LISTS OR PROVIDE ALTERNATIVE RELIEF**

5              Mattel stands ready to discuss its exhibit list with MGA and Bryant.

6   Defendants' failure to meet and confer with Mattel in good faith to resolve its

7   concerns about Mattel's exhibit list and the problems with Defendants' own list is

8   contrary to their obligations under the Local Rules and Federal Rules of Civil

9   Procedure. Mattel is willing, Defendants are not. The Court should, therefore,

10  compel Defendants to meet and confer with Mattel in good faith so the parties can

11  work to resolve their concerns about each other's exhibit lists without further delay

12  by Defendants.

13             In the alternative, if the Court strikes Mattel's exhibit list it should also

14  strike Defendants' list. The same arguments about exchanging a lengthy exhibit list

15  apply to their list. Defendants, however, have attempted to obscure the volume of

16  their list by artificially reducing it by thousands of exhibits. They have lumped

17  thousands of exhibits into a few entries that are reflected individually on Mattel's

18  list. Defendants also use sweeping, improper categories encompassing any

19  document "identified by Mattel" or purportedly "needed to place into context any

20  Exhibit used at trial by Mattel."[28] This would impermissibly give Defendants a

21  blank check at trial.[29]

22

23

24

25  [27] Id., ¶ 12.
    [28] Nos. 2845 and 2844, Exh. B to the Price Dec.
26  [29] Conservatively estimating that Defendants' actual exhibit list is around
    10,000 documents, their own time estimate example (Ex Parte, 1:25-27) shows that
27  it would take about six weeks at eight hours a day, four days a week, at the pace of
    an exhibit every minute to use all of their exhibits. And that is for the defense case
28  that does not have the burden of proof.

## Conclusion

For the foregoing reasons, the Court should deny Defendants' Joint <u>Ex Parte</u> Application and grant Mattel's Cross-<u>Ex Parte</u> Application, ordering Defendants to meet and confer in good faith about the exhibit lists.  In the alternative, the Court should strike Defendants' exhibit list.

DATED:  April 4, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                               By <u>/s/ Jon D. Corey</u>
                                  Jon D. Corey
                                  Attorneys for Mattel, Inc.