THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br>**[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]**<br><br>SUPPLEMENTAL DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MGA'S MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA<br><br>Date: TBD<br>Time: TBD<br>Place: JAMS<br><br>**Phase 1**<br>Discovery Cut-off: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

I, Larry W. McFarland, hereby declare as follows:

I am an attorney duly licensed to practice law in the State of California and I am a member of the Bar of this Court. I am a partner of Keats McFarland & Wilson, LLP. I make this declaration in support of MGA's REPLY IN SUPPORT OF MGA'S MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA OR FOR PROTECTIVE ORDER. I have personal and first-hand knowledge of the facts set forth in this Declaration and, if called upon to do so, I could and would competently testify thereto.

1.     I have participated in legal defense discussions with MGA's prior trial counsel, O'Melveny & Myers, LLP, and now with MGA's current trial counsel, Skadden, Arps, Slate, Meagher & Flom LLP.

2.     Any knowledge I have with regards to the creation and publication dates of the six copyright applications I filed on behalf of MGA I obtained through privileged communications with MGA.

3.     Attached as **Exhibit 1** is a true and correct copy of Mattel's Motion For Leave To Take Additional Discovery and Objections To Discovery Master Order of September 28, 2007, filed on November 19, 2007.

4.     Attached as **Exhibit 2** is a true and correct copy of the Response To Order To Show Cause of Larry McFarland, Lucy Arant, Sarah Halpern, and Peter Marlow, dated February 11, 2008.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on April 7, 2008, at Beverly Hills, California.

Larry W. McFarland

---

Supplemental Declaration of Larry McFarland in Support of Motion To Quash
Case No. CV 04-9049 SGL (RNBx)
-2-

# Exhibit 1

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 4 of 49   Page ID #:50242
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 2 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 1 of 30

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,             Consolidated with
                                       Case No. CV 04-09059
14        vs.                          Case No. CV 05-02727

15  MATTEL, INC., a Delaware           Hon. Stephen G. Larson
    corporation,
16                                     NOTICE OF MOTION AND MOTION
              Defendant.               OF MATTEL, INC. FOR LEAVE TO
17                                     TAKE ADDITIONAL DISCOVERY
                                       AND OBJECTIONS TO DISCOVERY
18  AND CONSOLIDATED ACTIONS           MASTER ORDER OF SEPTEMBER
                                       28, 2007; AND
19
                                       MEMORANDUM OF POINTS AND
20                                     AUTHORITIES

21                                     [Declaration of B. Dylan Proctor filed
                                       concurrently]

22                                     Hearing Date:  January 7, 2008
                                       Time:           10:00 a.m.
23                                     Courtroom:      1

24                                     **Phase 1:**
                                       Discovery Cut-off:    January 28, 2008
25                                     Pre-trial Conference: May 5, 2008
                                       Trial Date:           May 27, 2008
26

27

28                                     Exhibit ___1___,
                                       P. ___3___

07209/2299353.1
                              -i-
              MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 5 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 3 of 69

Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 2 of 30

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on January 7, 2008, at 10:00 a.m., or as soon

3   thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.

4   Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,

5   and hereby does, move the Court, pursuant to <u>Federal Rule of Civil Procedure</u> 26(b)

6   and the Court's February 12, 2007 Scheduling Order, for an order granting Mattel leave

7   to take additional depositions, including <u>Rule</u> 30(b)(6) depositions of defendants MGA

8   Entertainment, Inc., and MGAE de Mexico S.R.L. de C.V., beyond the current limit set

9   by the Court and to serve additional interrogatories on defendants.  Pursuant to 28

10  U.S.C. § 636(b)(1), Mattel also seeks an additional 12 hours to depose Carter Bryant, in

11  addition to the seven hours already permitted by Discovery Master Infante.

12        Mattel makes this Motion on the grounds that the breadth and complexity of this

13  case warrant more than the 24 depositions and 50 interrogatories permitted by the

14  Court's Scheduling Order.  Mattel further makes this Motion on the grounds that, given

15  Bryant's central role in the hundreds of products that MGA has sued upon in this case,

16  and because both the parties and third-parties have produced many millions of pages of

17  documents since Mr. Bryant's deposition in 2005, seven hours is not enough time to

18  fully depose Mr. Bryant.

19        This Motion is based on this Notice of Motion and Motion, the accompanying

20  Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed

21  concurrently herewith, the records and files of this Court, and all other matters of which

22  the Court may take judicial notice.

23

24

25

26

27

28

Exhibit  1  ,
P.  4

-ii-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 6 of 49   Page ID
#:50306
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 4 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 3 of 30

1

## Statement of Local Rule 7-3 Compliance

2       The parties met and conferred pursuant to Local Rule 7-3 on October 3, 2007,

3  and times thereafter, but were not able to resolve this motion.

4

5  DATED: November 19, 2007          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
6

7                                    By_____

8                                        Jon Corey
                                         Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit __1__,
P.__5__

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ............................................................................... 3

ARGUMENT ................................................................................................... 6

I.     THE RULES CONTEMPLATE ADDITIONAL DISCOVERY ................... 6

    A.    Each Category of Claims Warrants More Depositions ........................ 8

        1.    The Bratz Claims Require Additional Depositions .................... 8

        2.    Mattel's Trade Secret and RICO Claims and MGA's Unfair Competition Claims Require Additional Depositions .............. 12

    B.    Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents Is At Issue ............. 14

    C.    Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative Topics ............................................................................ 15

    D.    Mattel Meets The Requirements for Additional Discovery ................ 15

II.    THE COURT SHOULD GRANT LEAVE WITH RESPECT TO MATTEL'S INTERROGATORIES ............................................................. 16

III.   THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE BRYANT DEPOSITION ............................................................................. 20

CONCLUSION ............................................................................................... 25

Exhibit __1__,
P. __6__

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2299353.1

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 8 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 6 of 69

Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 5 of 30

# TABLE OF AUTHORITIES

**Page**

### Cases

Andamiro v. Konami Amusement of Am.,
    2001 WL 535667 (C.D. Cal. April 26, 2001) ........................................................ 8

Bahn v. NME Hosps., Inc.,
    929 F.2d 1404 (9th Cir. 1991) .......................................................................... 22

Bromgard v. Montana,
    2007 WL 1101179 (D. Mont. April 11, 2007) ............................................. 11, 18

Collaboration Prop. v. Polycom, Inc.,
    224 F.R.D. 473 (N.D. Cal. 2004) ........................................................................ 8

Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc.,
    2007 WL 764302  Proctor Dec., Ex. 43 ........................................................... 23

Rx USA Wholesale, Inc. v. McKesson Corp.,
    2007 WL 1827335 (E.D.N.Y. June 25, 2007) ..................................... 7, 11, 19

Whittingham  v. Amherst Coll.,
    163 F.R.D. 170 (D. Mass. 1995) ......................................................................... 7

### Statutes

Cal. Civ. Code § 3426.1 .................................................................................... 20

Fed. R. Civ. P. 26(b) ................................................................................... 8, 20

Fed. R. Civ. P. 30(a)(2)(A) .......................................................................... 7, 20

Fed. R. Civ. P. 33 .................................................................................... 7, 8, 20

Local Rule 7-3 .................................................................................................. 3

Fed. R. Civ. P. 30(b)(6) ..................................................................... 9, 14, 16, 17

Fed. R. Civ. P. 53(e) ....................................................................................... 21

Exhibit 1 ,
P. 7

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 9 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 7 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 6 of 30

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

1    In its Scheduling Order, the Court limited each side to 50 interrogatories and 24 fact depositions. The Court recognized, however, that the case's complexity could require additional depositions or interrogatories and invited motions for additional discovery, if necessary: "I don't want to say they are soft limits [on the number of depositions], but they are limits which the Court would certainly understand or would invite counsel to submit a motion to expand if there's reason to. But I just want to have some parameters placed on this at the outset." Likewise, with respect to the interrogatory limit, the Court stated: "[L]et's try and work within the confines of the 50 interrogatories, and if you need more, again, the Court is going to be forthcoming, if there's a need for it."[1] Mattel respectfully submits that time has come.

Under the Federal Rules, leave to take additional discovery "shall be granted" to the extent consistent with the principles set forth in Rule 26(b)(2). Fed. R. Civ. P. 30(a)(2)(A) & 33(a). The additional discovery Mattel seeks is appropriate under that framework. It is not duplicative of prior discovery, Mattel has not had an adequate opportunity to take discovery on these matters, and the substantial benefits of discovery on these central issues outweigh any burden. MGA has identified many dozens of witnesses with knowledge of the parties' claims or defenses. Mattel has sued MGA for inducing several Mattel employees to misappropriate many thousands of pages of documents containing Mattel trade secrets over an extended period of time. For its part, MGA has accused over 400 Mattel products of infringing the trade dress of more than 200 MGA products. As MGA has proclaimed, it will be seeking "billions" of dollars from Mattel on its claims alone. Additional depositions are warranted given the breadth and complexity of the claims and defenses in this case and the stakes involved.

---

[1]  February 12, 2007 Scheduling Conference Tr. at 22:12-15 and 24:5-7, Exhibit 7 to the Declaration of B. Dylan Proctor, dated November 19, 2007 ("Proctor Dec.").

Exhibit 1,
P. 8

1      To date, Mattel has taken 18 depositions, which leaves Mattel with six

2 remaining. Mattel has been able to take only one deposition on its counterclaims or

3 defenses to MGA's unfair competition claims, and as of yet, Mattel has been unable to

4 depose any of the individuals actively involved in the theft of Mattel's trade secrets.

5 The specific individuals who Mattel seeks to depose are identified below, along with

6 the justification for each. In addition, Mattel cannot obtain without the Court's leave

7 the corporate testimony of MGA or MGAE de Mexico on the facts related to either

8 MGA's unfair competition claims or Mattel's counterclaims. Mattel seeks leave to

9 serve the First Notice of Deposition of MGAE de Mexico, attached as Exhibit A, and

10 an additional Notice of Deposition of MGA, attached as Exhibit B, on those subjects.

11      Mattel also seeks leave to serve defendants with additional interrogatories.

12 Mattel has served interrogatories seeking MGA's contentions with respect to the

13 creation of Bratz and MGA's unfair competition claims. Mattel's proposed

14 interrogatories, which are attached as Exhibit C, seek information related to Mattel's

15 counterclaims and to MGA's claims against Mattel for alleged unfair competition, as

16 well as certain of defendants' defenses.[2]

17      Finally, Mattel seeks additional time to depose Mr. Bryant. Although Bryant was

18 deposed in 2004, since that time MGA and Bryant have produced millions of pages of

19 documents that they had long withheld until compelled by the Court, and the scope of

20 the claims in these consolidated cases has increased dramatically. Only after Bryant's

21 deposition occurred, MGA asserted its broad unfair competition claims against Mattel.

22 Only after Bryant's deposition occurred, Mattel asserted its counterclaims, including its

23 copyright infringement and RICO counterclaims, against Bryant and other defendants.

24 And, despite the fact that Mattel sought documents relating to the origins of Bratz

25 _____

26   [2] Because defendants refuse to answer Mattel's previously served interrogatories based
on spurious claims that they exceed the 50 limit, Mattel seeks leave as to them to avoid

27 defendants' further quarreling over the counting of interrogatories and thereby obtain
obvious information about defendants' own contentions and other critical subjects.

28

Exhibit   _1_,
P.   _9_

Case 2:04-cv-09049-DOC-RNB    Document 2991-2    Filed 04/07/08    Page 11 of 49    Page ID
#:52042
Case 2:04-cv-09049-SGL-RNB    Document 2042-3    Filed 02/11/2008    Page 9 of 69
Case 2:04-cv-09049-SGL-RNB    Document 1134    Filed 11/19/2007    Page 8 of 30

1 | before Bryant's initial deposition, both MGA and Bryant were, unbeknownst to Mattel,

2 | withholding such documents at the time of the deposition – this was discovered only

3 | after multiple motions to compel brought by Mattel were granted. Judge Infante

4 | recognized that Bryant is the "most knowledge witness with respect to virtually all of

5 | the factual issues" and claims in these matters.[3] Judge Infante nevertheless gave Mattel

6 | only seven additional hours for Bryant's deposition (on top of two hours previously

7 | granted due to Bryant's and his counsel's improper conduct during the prior deposition).

8 | That simply is not enough to depose Bryant on MGA's claims, Mattel's counterclaims

9 | and all the newly produced evidence that post-dates the 2004 deposition. Mattel

10 | therefore requests that this Court grant additional time of another 12 hours for a total of

11 | 21 additional hours to question Bryant.

12 | **Statement of Facts**

13 | Mattel's Original Complaint. Mattel filed its initial Complaint on April 27, 2004,

14 | alleging that Carter Bryant breached his duties to Mattel by working with and assisting

15 | a Mattel competitor, MGA, while he was employed by Mattel.[4] While at Mattel,

16 | Bryant worked on the "Bratz" project.[5] On December 7, 2004, MGA filed an answer in

17 | intervention claiming that the action put at issue MGA's rights to Bratz.[6]

18 | MGA's Complaint. MGA filed a complaint against Mattel on April 13, 2005

19 | alleging that Mattel engaged in "serial copycatting" of the Bratz dolls.[7] Mattel's action

20 | and MGA's action were later consolidated along with a declaratory relief action filed by

21 | Bryant, which was later dismissed.[8]

22 | Mattel's Counterclaims. On November 19, 2006, Mattel moved for leave to

23 | amend its complaint. The Court granted Mattel's motion, allowing Mattel's new claims

---

[3] 9/27/07 Hearing Tr. at 24:24-25:2, Proctor Dec., Ex 85.
[4] Proctor Dec., Ex. 1.
[5] Id. ¶¶ 12-13.
[6] Proctor Dec., Ex. 2.
[7] Proctor Dec., Ex. 3.
[8] Minute Order Re Consolidation (June 19, 2006), Proctor Dec., Ex. 4.

Exhibit _1_,
P. _10_

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 12 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 10 of 69
#:62042
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 9 of 30

1   to be alleged as counterclaims to MGA's complaint.[9]   Mattel filed its Second Amended

2   Answer and Counterclaims on July 12, 2007.  Mattel's counterclaims against MGA

3   Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L.

4   de C.V. include claims for copyright infringement, violation of RICO, conspiracy to

5   violate RICO, misappropriation of trade secrets, intentional interference with contract,

6   aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of

7   loyalty, conversion and unfair competition.[10]   MGA's current amended answer to

8   Mattel's counterclaims asserts twenty-two affirmative defenses.[11]

9       Scheduling Conference.  At the February 12, 2007, and as reflected in a Minute

10  Order, the Court limited depositions to 24 per side and interrogatories to 50 per side.[12]

11  The Court recognized that the parties might need more depositions or interrogatories:

12          I don't want to say they are soft limits [on the number of
            depositions], but they are limits which the Court would
13          certainly understand or would invite counsel to submit a
14          motion to expand if there's reason to.  But I just want to have
            some parameters placed on this at the outset.
15
            . . .
16          [L]et's try and work within the confines of the 50
17          interrogatories, and if you need more, again, the Court is
            going to be forthcoming, if there's a need for it.[13]
18

19      Mattel's Interrogatories.  To date, Mattel has propounded 50 interrogatories.[14]  In

20  June 2007, Mattel propounded 19 interrogatories on MGA, MGA Hong Kong, Larian

21

22  [9]   1/11/07 Order Re Mattel's Motion for Leave to Amend, Proctor Dec., Ex. 5.
    [10]   See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
23  dated July 12, 2007 ("Mattel's Counterclaims"), Proctor Dec., Ex. 16.
    [11]   See MGA's Amended Answer and Affirmative Defenses ("MGA's Amended
24  Answer"), Proctor Dec., Ex. 46.  MGA had filed its original answer on August 13, 2007.
25  Proctor Dec., Ex. 17.  After meeting and conferring, MGA acknowledged deficiencies in
    its defenses and served its amended answer on September 19, 2007.
26  [12]   2/12/07 Scheduling Order, at 1, Proctor Dec., Ex. 6.
27  [13]   2/12/07 Scheduling Conference Tr., at 22:12-15 and 24:5-7, Proctor Dec., Ex. 7.
    [14]   See Proctor Dec., Exs. 8-12, 15, 64-68.
28

                                                            Exhibit _l_,
                                                            P. _ll_

07209/2299353.1                          -4-
                        MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB    Document 2991-2    Filed 04/07/08    Page 13 of 49    Page ID
Case 2:04-cv-09049-SGL-RNB    Document 5204-3    Filed 02/11/2008    Page 11 of 69
Case 2:04-cv-09049-SGL-RNB    Document 1134    Filed 11/19/2007    Page 10 of 30

1    and Bryant, seeking information about Bratz development, their affirmative defenses to

2    Mattel's claims, defendants' contentions regarding unfair competition claims and

3    MGA's benefit from Bratz.[15]  Defendants claimed they exceeded the interrogatory limit,

4    and on September 5, 2007, Judge Infante ruled that identical interrogatories served on

5    multiple parties, as well as interrogatories asking defendants to "state all facts"

6    supporting a particular contention, "identify all persons with knowledge of such facts,"

7    and "identify all documents" relevant to such facts, would each count as only one

8    interrogatory.[16]  However, an interrogatory asking a party to state facts supporting

9    different affirmative defenses would count as a different interrogatory per defense.[17]  In

10   accordance with that ruling, on September 21, 2007, Mattel served revised sets of

11   fifteen interrogatories.[18]  Defendants nevertheless still refuse to substantively answer

12   these interrogatories, including because they allegedly exceed the number permitted.[19]

13        <u>Mattel Depositions</u>.  To date, Mattel has taken 18 depositions.  Mattel has had

14   good cause for each of those depositions.  They include:

15   - Carter Bryant – defendant

16   - Victoria O'Connor – former MGA executive with knowledge of MGA's and Larian's spoliation of evidence

17

18   - Jaqueline Prince – witness allegedly supporting Bryant's Bratz creation story

19   - Isaac Larian – defendant

20   - Steve Linker – third party with knowledge of work on Bratz before Bryant left Mattel

21

22   - Paula Garcia – Bratz project manager from the start who worked on Bratz with Bryant before he left Mattel

23   - Brooke Gilbert – Bryant's niece with knowledge of Bryant's computer on which Bryant installed and used "Evidence Eliminator"

24

25   [15]  Proctor Dec., Ex. 13.

26   [16]  9/5/07 Order Re Mattel's Interrogatories, at 5-6, Proctor Dec., Ex. 14.
     [17]  See <u>id.</u> at 7.

27   [18]  Proctor Dec., Ex. 45.
     [19]  See Proctor Dec., Exs. 73-74.

28

Exhibit  <u>1</u> ,
P. <u>12</u>

07209/2299353.1

-5-

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 14 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 12 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 11 of 30

- Kerri Brode – MGA employee with knowledge of Bryant's work on Bratz while at Mattel

- Dave Malacrida – MGA public relations employee with knowledge regarding early Bratz design and marketing

- Janet Bryant – Bryant's mother and relied upon by Bryant to establish alleged date of Bratz creation

- Thomas Bryant – Bryant's father and relied upon by Bryant to establish alleged date of Bratz creation

- Sarah Chui – worked on Bratz in 2000 for MGA Hong Kong

- Richard Irmen – Bryant's partner and relied upon by Bryant to establish alleged date of Bratz creation

- Maureen Tkacik – *Wall Street Journal* reporter to whom Larian stated, in an interview, that he chose Mr. Bryant's idea for the Bratz over several others after holding "a sort of fashion-doll design contest in late 1999" -- a time during which Bryant was employed by Mattel and months before MGA and Bryant now say they first were introduced

- MGA Entertainment, Inc. – defendant

- MGA Entertainment (HK) Limited – defendant

- Schyler Bacon – MGA employee who recruited Mattel employees who stole trade secrets

- Denise O'Neal – *Chicago Sun Times* reporter to whom Larian made prior inconsistent statements, including that MGA's creative team decided to use the "Brats" name but to change the "s" to a "z"

## Argument

**I.    THE RULES CONTEMPLATE ADDITIONAL DISCOVERY**

The <u>Federal Rules</u> require that a party obtain leave before serving interrogatories or taking depositions beyond the limits established by the Court. <u>See</u> <u>Fed. R. Civ. P.</u> 33(a) (interrogatories); <u>id.</u> 30(a)(2)(A) (depositions). The purpose of these limits is to allow the Court to "maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of [w]ide ranging discovery". <u>Rx USA Wholesale, Inc. v. McKesson Corp.</u>, 2007 WL 1827335, at *2-3 (E.D.N.Y. June 25, 2007) (quoting <u>Whittingham v. Amherst Coll.</u>, 163 F.R.D. 170, 171-72 (D. Mass. 1995)). The limits, however, are not intended to "prevent needed discovery," and courts have "broad[] discretion" to allow

07209/2299353.1

Exhibit _1_,
P. _13_

Case 2:04-cv-09049-DOC-RNB    Document 2991-2    Filed 04/07/08    Page 15 of 49    Page ID
#:62042
Case 2:04-cv-09049-SGL-RNB    Document 2042-3    Filed 02/11/2008    Page 13 of 69
Case 2:04-cv-09049-SGL-RNB    Document 1134    Filed 11/19/2007    Page 12 of 30

1   additional discovery "based on the complexity" of the case at hand. Notes of the

2   Advisory Committee (1993) to <u>Fed. R. Civ. P.</u> 26(b) & 33. Leave to take additional

3   discovery "shall be granted" to the extent consistent with the principles set forth in <u>Rule</u>

4   26(b)(2). <u>Fed. R. Civ. P.</u> 30(a)(2)(A), & 33(a). Courts permit additional interrogatories

5   or depositions after considering whether:

> (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has [had] ample opportunity obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, and the importance of the proposed discovery in resolving the issues.

12   <u>Andamiro v. Konami Amusement of Am.</u>, 2001 WL 535667, at *2 (C.D. Cal. April

13   26, 2001) (depositions); <u>see also</u> <u>Collaboration Prop. v. Polycom, Inc.</u>, 224 F.R.D.

14   473, 475 (N.D. Cal. 2004) (interrogatories).

## II.   <u>MATTEL SHOULD BE GRANTED ADDITIONAL DEPOSITIONS</u>

16        Mattel should be permitted to take more than 24 depositions in these

17   consolidated cases. This action contains three broad categories of significant claims,

18   each of which necessitates additional depositions: Mattel's Bratz-related claims,

19   MGA's unfair competition claims, and Mattel's trade secret theft and RICO claims.

20   MGA's supplemental initial disclosures identified 86 witnesses with knowledge of

21   MGA's claims and defenses, 62 of whom are not Mattel employees.[20] Mattel's

22   supplemental disclosures contain nearly double the number of witnesses with

23   knowledge, only 43 of whom are Mattel employees.[21] Based on the million-and-a-half

24   pages that MGA has recently produced, Mattel is preparing third supplemental

---

[20]  <u>See</u> MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Larian's Initial Disclosures Under Rule 26(a)(1), dated September 21, 2007, at 1-16, Proctor Dec., Ex. 18.

[21]  <u>See</u> Proctor Dec., Ex. 19, at 3-19.

Exhibit _1_,
P. _14_

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 16 of 49   Page ID
#:52042
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 14 of 69

Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 13 of 30

1  disclosures which will name additional witnesses. Mattel can rely on Rule 30(b)(6) to

2  obtain some information, but Mattel cannot effectively prosecute or defend these cases

3  with only 24 depositions.

### A.   Each Category of Claims Warrants More Depositions

#### 1.   The Bratz Claims Require Additional Depositions

6  The number of witnesses involved with the creation of Bratz or with knowledge

7  of Bryant's purported story about when he created – and the inconsistent stories that

8  MGA spun in the media – justify additional depositions. For example, Bryant claims

9  that he created Bratz when he was not a Mattel employee.[22] He initially identified three

10 people who he claimed could corroborate this story:   Tom and Janet Bryant (his

11 parents) and Richard Irmen (his partner). Bryant's mother for the first time in this case

12 recently identified a fourth:  her friend, Jeanne Galvano. Bryant will introduce their

13 testimony to vouch for his story, so Mattel obviously needs and is entitled to depose

14 them. Similarly, Isaac Larian has repeatedly made conflicting, inconsistent statements

15 about Bratz's creation to the press, among others.[23] Mattel thus far has deposed two of

16 the journalists who wrote those stories – depositions where Mattel's questioning lasted

17 far less than an hour. Bryant's "alibi" witnesses and the reporters alone use up one-third

18 of Mattel's originally allotted 24 depositions.

19 In addition, at the time of the Scheduling Order, Bryant and MGA had said only

20 a handful of people worked directly on Bratz prior to 2002:   Bryant, Anna Rhee,

21 Mercedeh Ward, Margaret Leahy, Paula Garcia and unidentified people in Hong

22 Kong.[24] In a recent supplemental interrogatory response, MGA identified 11 more

23 people who worked on the first Bratz dolls, including Sarah Halpern, Veronica Marlow,

24

25   [22]   Bryant Dep. Tr. at 140:9-141:8, Proctor Dec., Ex. 20.

26   [23]   Proctor Dec., Ex. 21.

27   [24]   See Bryant's Objections and Responses to Second Set of Interrogatories
Propounded by Mattel, Inc., at 4, Proctor Dec., Ex. 22; MGA's Response to Mattel's
Second Set of Interrogatories, at 4:17-20, Proctor Dec., Ex. 23.

28

Exhibit __1__,
P. __15__

07209/2299353.1

-8-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 17 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 15 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 14 of 30

1    Cecilia Kwok, David Dees, Stephen Tarmichael, Edmond Lee, Franki Tsang, Samuel
2    Wong, Stephen Lee, William Ragsdale and Wendy Ragsdale (and Mattel now knows
3    that even this list is incomplete).[25] This list does not include anyone involved in early
4    sales, marketing, product testing or advertising of Bratz.

5           When a deponent possesses unique information, courts generally grant leave for
6    additional depositions because they do not undermine the key purpose of the limits –
7    preventing duplicative discovery. See, e.g., Bromgard v. Montana, 2007 WL 1101179,
8    at *2 (D. Mont. April 11, 2007).  Courts deny additional depositions when deponents
9    are likely to have common, interchangeable information.  And, even in such instances,
10   courts may allow a limited number or sequential depositions to proceed. See, e.g., Rx
11   USA, 2007 WL 1827335, at *3 (allowing additional deposition testimony on one but
12   not both individuals with generalized information).

13          Here, Mattel seeks depositions of witnesses who each have specific, unique
14   personal knowledge of the Bratz claims as well as about other claims in the case.  All of
15   them are third parties:

16      • Sarah Halpern – worked on the patterns for the first Bratz dolls

17      • Margaret Leahy – sculpted the first Bratz dolls and 4-Ever Best Friends

18      • Veronica Marlow – worked on the first Bratz doll fashions as well on
19        products at issue in MGA's claims

        • Elise Cloonan – worked with Bryant on his Bratz pitch to MGA while both
20        were employed by Mattel

21      • Jesse Ramirez – worked on molds for Bratz

22      • Jeanne Galvano – alleged witness Bryant's mother recently claimed can
23        verify facts relating to Bratz's creation

        • Stephen Lee – Managing Director of MGA Hong Kong during development
24        of Bratz and other products at issue

25   _____
     [25]  MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, at
26   4:1-6:3, Proctor Dec., Ex. 24; see Linker Dep. Tr. at 59:22-64:9, Proctor Dec., Ex. 25
27   (testifying that Paula (Treantafelles) Garcia and Bryant approached him and his partner,
     Liz Hogan, before Bryant left Mattel to work on Bratz).
28
                                              Exhibit  _1_,
                                              P. _16_
07209/2299353.1
                                          -9-

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 18 of 49   Page ID
#:52043
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 16 of 69

Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 15 of 30

- Cecilia Kwok – MGA Hong Kong employee principally involved with first Bratz dolls

- Farhad Larian – brother of Isaac Larian, who sued Isaac Larian and alleged, inter alia, that MGA was working on Bratz by early 2000 (months before MGA and Bryant claim to have met) when he was a part owner of MGA[26]

- Certain as yet unidentified attorneys who represented parties to disputes between Isaac Larian and Farhad Larian in which the creation of and value of Bratz was at issue

- Sandra Bilotto – sculptor who worked on Prayer Angel dolls at issue[27]

- Anne Wang – represented Bryant in negotiations with MGA while he was a Mattel employee that led to the agreement dated "as of September 18, 2000"[28]

- David Rosenbaum – represented MGA in negotiations with Bryant's first agreement with MGA[29]

- Christensen Glaser LLP – firm to which Victoria O'Connor faxed the MGA/Bryant agreement that Isaac Larian had ordered her to alter[30]

- Lucy Arant – lawyer with knowledge of MGA's first use of Bratz

- Mitchell Kamarck – former MGA counsel who responsible for patent applications, including those in which Isaac Larian had claimed to be the inventor of Bratz features that Bryant has since testified he created[31]

- Carol Witschell – lawyer who worked on MGA trademark applications and other trademark matters at issue

- Nana Ashong – former MGA employee who stated Bratz was created during Bryant's employment by Mattel[32]

- Larry McFarland – wrote MGA copyright registrations that stated the Bratz dolls were created during 2000 and that, after this suit was filed, MGA claimed were incorrect

- Eric Yip – MGA Hong Kong Sales Administrator in 2000 and 2001, when Bratz were created and first shipped to Bandai in Spain[33]

---

[26] See Larian Dep. Tr. at 159:17-160:14, Proctor Dec. Ex. 54.
[27] Brode Dep. Tr. at 303:9-316:16, Proctor Dec. Ex. 55; Dep. Exhs. 607, 608, 609, Proctor Dec., Ex. 56.
[28] See Bryant Tr. at 39:6-42:18, Proctor Dec. Ex. 60.
[29] See O'Connor Dep. Tr. at 94:1-95:21, Proctor Dec., Ex. 61.
[30] See O'Connor Tr. 17:3-19:19, Proctor Dec., Ex 75.
[31] See Armstrong Dep. Tr. at 10:7-12, 26:16-23, 244:18-21, Proctor Dec. Ex. 62.
[32] See Brode Tr. at 87:13-88:11, Proctor Dec., Ex. 55.
[33] See Harris Dep. Tr. at 121:16-122:17, Proctor Dec. Ex. 63.

Exhibit 1,
P. 17

07209/2299353.1

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 19 of 49   Page ID
#:02042
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 17 of 69

Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 16 of 30

- Gentle Giant Studios – created relevant moldings and casts while Bryant was
  still employed at Mattel[34]

- Christopher Palmeri – *Business Week* reporter who wrote that Larian
  purportedly "got the idea for Bratz after seeing his own kids run around in
  navel-bearing tops and hip-huggers"[35]

- Jeff Weiss – *San Fernando Valley Business Journal* reporter who quoted
  another inconsistent Larian statement concerning the origin of Bratz[36]

- Kickapoo High School – where Bryant allegedly found inspiration for Bratz
  and author of documents refuting that claim

- LA Focus – conducted Bratz focus groups, including focus groups that MGA
  denies occured

- Joyce Ng – independent contractor who moderated Bratz focus groups

- Rachel Harris – former MGA employee who worked on initial Bratz
  packaging as well as on other packaging which MGA's claims rest on

- Peter Marlow – spouse of Veronica Marlow who negotiated millions of
  dollars in payments for Bratz from Bryant on her behalf

- Andreas Koch – former MGA manager who has knowledge of Bryant's initial
  contacts with MGA

- Kami Gillmour – former Mattel and MGA employee who has knowledge
  regarding Paula Garcia's employment with MGA, confidential information
  taken from Mattel and MGA's projects at issue

- Mercedeh Ward – engineer on initial Bratz dolls and author of emails
  reflecting the use of Mattel property in its creation

- Moss Adams – accounting firm with knowledge of MGA's profits and
  distributions thereof to Larian (who owns 90% of MGA's shares)

- Wachovia Bank – bank identified as being involved in early Bratz financing
  and knowledgeable about MGA's net worth or value

- Amy Myers – formerly with MGA and has knowledge of Prayer Angels
  project that MGA has raised as a defense

- Two or three parties MGA sued for infringement of Bratz and whose
  identities are not yet known to Mattel – they will have knowledge of the dolls
  and other properties MGA has sued on in the past, which is relevant to
  refuting MGA's current claims that earlier iterations of Bratz products look
  nothing like subsequent iteration of Bratz products

---

[34] See Proctor Dec., Ex 72.
[35] Proctor Dec. Ex. 52.
[36] Proctor Dec. Ex. 53.

Exhibit _1_,
P. _78_

-11-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 20 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2642-3   Filed 02/11/2008   Page 18 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 17 of 30

1    Further, many of these same witnesses are also knowledgeable as to MGA's

2   claims of unfair competition and Mattel's trade secret and RICO claims, as they

3   continued to work with MGA in later years. For example, MGA has already identified

4   Halpern, Kwok, Leahy, Marlow, Lee, Ward and Yip as individuals involved with the

5   products at issue.[37] Likewise, Ramirez continued working on molds for subsequent

6   Bratz dolls through at least 2005,[38] while Kamarck,[39] Witschell,[40] Arant, and

7   McFarland[41] were involved in subsequent Bratz-related intellectual property matters.

8   As such, testimony from these witnesses is essential for both phases of trial.

9          **2.      Mattel's Trade Secret and RICO Claims and MGA's Unfair**

10                **Competition Claims Require Additional Depositions**

11   Mattel has sued MGA for misappropriating Mattel trade secrets and RICO

12   violations by, among other things, stealing thousands of pages of Mattel confidential

13   information in the United States, Canada and Mexico.[42] Mattel identified Ron Brawer,

14   Janine Brisbois, Gustavo Machado, Mariana Trueba Almada and Pablo Vargas as

15   individuals who misappropriated Mattel trade secrets. The only person Mattel has been

16   able to depose on its counterclaims is Ms. Bacon, who coordinated MGA's recruiting of

---

[37]  *See* MGA's Fourth Supp. Response to Interrogatory No. 1 of Mattel's First Set of
Interrogatories Re Claims of Unfair Competition, at 10-12, 18, 19, Proctor Dec., Ex. 27.
[38]  *See, e.g.,* Proctor Dec., Ex. 69 (showing various Bratz-related work in 2005).
[39]  *See, e.g.,* Armstrong Tr. 26:5-23, Proctor Dec., Ex. 62 (discussing involvement in
Bratz-related patent applications through 2004).
[40]  *See, e.g.,* Proctor Dec., Ex. 70 (discussing involvement with Bratz registrations).
[41]  *See, e.g.,* Proctor Dec., Ex. 71 (discussing involvement with Bratz licensing).
[42]  Mattel's Counterclaims ¶¶ 37-54, 70-76, Proctor Dec., Ex 16.

Exhibit  1  ,
P.  19

-12-

07209/2299353.1

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 21 of 49   Page ID
#:50262
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 19 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 18 of 30

1  Mattel employees.[43]   Accordingly, Mattel seeks leave to take the depositions of the

2  following witnesses on such claims:[44]

3    • Ron Brawer – has knowledge of stolen Mattel trade secrets in the U.S.

4    • Janine Brisbois – former Mattel employee who stole Mattel trade secrets

5    • Gustavo Machado – former Mattel employee who stole Mattel trade secrets

6    • Mariana Trueba – former Mattel employee who stole Mattel trade secrets

7    • Pablo Vargas – former Mattel employee who stole Mattel trade secrets

8    • Ricardo Abundis – has knowledge of stolen Mattel trade secrets in Mexico

9    • Jorge Castilla – believed to have stolen Mattel trade secrets in the U.S.

10   • Nic Contreras – believed to have knowledge of stolen Mattel trade secrets

11   • Dan Cooney – believed to have knowledge of stolen Mattel trade secrets

12   • Susan Kuemmerle – believed to have knowledge regarding stolen Mattel

13     trade secrets in Mexico

14   • Shirin Salemnia – believed to have knowledge of stolen Mattel trade secrets

15   • MGAE de Mexico – defendant to trade secret theft and RICO claims

16   • MGA Entertainment, Inc. – defendant

17     Further, MGA has accused Mattel of trade dress infringement and dilution and

18  unfair competition in connection with more than 440 products.[45]   MGA has identified

19  _____

20  [43]   Bacon Dep. Tr. at 12:12-13, 51:22-52:17, 86:8-12, and 114:19-116:9, Proctor Dec.,
    Ex. 28. And even with respect to Ms. Bacon's deposition, MGA attempted to prevent her
21  from testifying on the grounds that Mattel had not noticed her deposition individually, but
22  only as a Rule 30(b)(6) designee. See Proctor Dec., Ex. 29.
    [44]   These are those who Mattel has identified to date.  Mattel anticipates that there may
23  be more who will need to be deposed in connection with MGA's unfair competition claims
    and Mattel's counterclaims because (a) it continues to review the over one-and-a-half
24  million pages of documents that MGA produced in the past month and (b) MGA, to date,
    has failed to identify how it anticipates defending Mattel's counterclaims or which
25  documents or witnesses it will rely upon to do so, including by its ongoing failures to
    answer Mattel contention interrogatories related to its defenses to Mattel's counterclaims.
26  [45]   MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of
27  Interrogatories Re Claims of Unfair Competition, at 5-19, Proctor Dec., Ex. 26.

28

07209/2299353.1

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Exhibit   1  ,
P.   20

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 22 of 49   Page ID
#:52522
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 20 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 19 of 30

1  117 witnesses with knowledge of the creation or promotion of those products,[46]

2  including many of the persons listed above. Mattel has taken the depositions of only

3  six of those 117 named individuals, and has not yet been able to depose two of them,

4  Bryant or Larian, regarding the unfair competition allegations.

5  **B.   Mattel Needs Additional Depositions Because the Integrity of MGA's**

6  **and Bryant's Preservation of Documents Is At Issue**

7  Mattel also is entitled to inquire about MGA's and Bryant's preservation and

8  production of evidence. For example, as MGA's designee on document preservation

9  testified, MGA had only obtained off-site documents as of the summer of 2007 and had

10  searched none of these documents for responsive documents, even though the Court

11  had ordered MGA to produce them and MGA had previously represented that its

12  production was complete.[47] Further, MGA's designee on MGA's electronic document

13  preservation and collection testified that MGA's only search of such information was a

14  single search of Isaac Larian's e-mails in 2005, nothing more.[48]  MGA's designee

15  repeatedly testified that Joe Tiongco, who Mattel seeks to depose, has more

16  knowledge.[49]  In the same vein, Mattel seeks to depose Daphne Gronich, who provided

17  the preservation declaration on MGA's behalf.[50]  In addition, there are serious issues

18  about Bryant's hard drives, including because of Bryant's prior counsel's conflicting

19  representations about their collection and preservation – and indeed even their

20  existence. Mattel therefore seeks testimony on these subjects.[51]  Bryant's belated

21  revelation that he installed and used the "Evidence Eliminator" program on these drives

22  ────────────────────

23  [46]   MGA's Fourth Supp. Resp. Unfair Comp. No. 1, at 5-16, Proctor Dec., Ex. 27.

24  [47]   9/24/07 Stip. and Order, Proctor Dec., Ex. 30; Tonnu Dep. Tr. at 612:13-612:15, 620:14-621:21, Proctor Dec., Ex. 31; 8/13/07 Order, at 14:18-22, Proctor Dec., Ex. 32.

24  [48]   See Lockhart Deposition Tr. at 265:1-11, Proctor Dec., Ex. 33.

25  [49]   Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.

26  [50]   See Dec. of Daphne Gronich in Response to Court's Request for Information Regarding Document Preservation, dated September 10, 2007, Proctor Dec., Ex. 34.

27  [51]   Notice of Deposition of Littler Mendelson Pursuant to Federal Rule of Procedure 30(b)(6), dated September 6, 2007, Proctor Dec., Ex. 35.

28

Exhibit __1__ ,
P. __21__

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 23 of 49   Page ID
#:62043
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 21 of 69

Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 20 of 30

1   underscores all the more the legitimacy of full and fair discovery into the integrity of

2   his drives.

3       **C.      Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative**

4            **Topics**

5       MGA objected, and the Discovery Master has ruled, that a corporate party who

6   has been deposed pursuant to a Rule 30(b)(6) notice cannot be deposed pursuant to a

7   subsequent notice absent Court leave.[52]  Mattel has not propounded a Rule 30(b)(6)

8   Notice of Deposition on MGA or MGAE de Mexico related to either MGA's unfair

9   competition claims or Mattel's counterclaims.   Mattel's Notices of Deposition—

10  attached as Exhibits A and B—contain topics of testimony which relate to those

11  claims.[53]  Mattel has not previously served any Rule 30(b)(6) Notice on MGAE de

12  Mexico at all, and the topics in the additional Notice to MGA are not duplicative of

13  those in Mattel's prior Notices to MGA.[54]  Mattel respectfully submits that it should be

14  granted leave to proceed with those depositions.

15      **D.     Mattel Meets The Requirements for Additional Discovery**

16      When a deponent possess unique information, courts will generally allow leave

17  for additional depositions because they do not undermine the key purpose of the

18  _____

19  [52]  9/25/07 Order Re Mattel's Motion to Compel MGA to Produce Witnesses Pursuant
    to Third Notice of Deposition Under 30(b)(6), Proctor Dec., Ex. 36.

20  [53]  See Exhibits A & B.  Mattel's Fourth Notice of Deposition is far less than
    burdensome compared to MGA's recently served Notice of Deposition, which contains
21  more than 80 topics, each of which has many sub-parts.  See MGA Entertainment, Inc.'s
    Notice of Deposition of Mattel, dated September 5, 2007, Proctor Dec., Ex. 40.
22
    [54]  Mattel's First Notice of Deposition was narrowly tailored to obtain information
23  related to MGA's contentions that Bryant and Anna Rhee had worked on Prayer Angels,
    not Bratz, while Bryant employed by Mattel.  Proctor Dec., Ex. 37.  Mattel's Second
24  Notice sought information related to Bratz, including Bratz revenues, costs and profits, and
25  evidence preservation and collection.  Proctor Dec., Ex. 38.  Mattel's Third Notice sought
    follow-up information on matters that had arisen in discovery, including with respect to
26  specific electronic evidence, specific individuals who worked on the first Bratz dolls,
    payments made to witnesses or parties, and statements to reporters related to Bratz's
27  creation and inspiration.  Proctor Dec., Ex. 39.

28
                                                            Exhibit __1__,
    07209/2299353.1                                          P. __22__
                                    -15-

Case 2:04-cv-09049-DOC-RNB    Document 2991-2    Filed 04/07/08    Page 24 of 49    Page ID
Case 2:04-cv-09049-SGL-RNB    Document 2642-3    Filed 02/11/2008    Page 22 of 69
Case 2:04-cv-09049-SGL-RNB    Document 1134    Filed 11/19/2007    Page 21 of 30

1  limits—preventing duplicative discovery. See, e.g., Bromgard, 2007 WL 1101179, at

2  *2 (D. Mont. April 11, 2007).   As explained above, Mattel seeks depositions of

3  individuals who each have specific, unique knowledge of the underlying events.

4      Without additional depositions, Mattel cannot discover the full extent of MGA's

5  wrongdoing or adequately prepare to defend against MGA's claims.   Mattel seeks a

6  declaration of ownership of Bratz works that Bryant created during his Mattel

7  employment and their derivatives – property that MGA and Bryant have claimed are

8  worth hundreds of millions of dollars and perhaps more.   Mattel has accused MGA of

9  stealing thousands of pages of Mattel's most valuable trade secrets, including product

10 lines, and strategic plans.   MGA has accused Mattel of infringing hundreds of MGA

11 products, alleging "billions" of dollars in damages.   In light of the magnitude of this

12 case, the burden or additional expense of these depositions pales in comparison to

13 Mattel's need to fully prepare to try this case.   As set forth above, the depositions that

14 Mattel seeks by this motion are not collateral, but go to the heart of its claims and

15 defenses.   See, e.g., Rx USA, 2007 WL 1827335, at *2-3 (additional depositions

16 warranted in a dispute between large corporations, given the complexity of the issues

17 and the parties' resources).

18 **III.    THE COURT SHOULD GRANT LEAVE WITH RESPECT TO**

19 **MATTEL'S INTERROGATORIES**

20     Two categories of interrogatories are involved here:  first, Mattel's proposed

21 additional interrogatories that it seeks leave to serve; and, second, interrogatories which

22 Mattel has already served on defendants.

23     **A.    Mattel Should Be Allowed To Propound Additional Interrogatories**

24     Mattel seeks leave to propound additional interrogatories related to MGA's unfair

25 competition claims and Mattel's counterclaims, and MGA's evidence collection and

26 preservation.  To properly prepare for trial, Mattel seeks leave to serve interrogatories

27 requiring defendants to identify the facts, documents and witnesses it will use to prove

28 its claims, defenses and damages.  Mattel's proposed interrogatories thus seek to

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Exhibit   1   ,
P.   23

Case 2:04-cv-09049-DOC-RNB    Document 2991-2    Filed 04/07/08    Page 25 of 49    Page ID
Case 2:04-cv-09049-SGL-RNB      Document 2042-3    Filed 02/11/2008    Page 23 of 69
Case 2:04-cv-09049-SGL-RNB      Document 1134    Filed 11/19/2007    Page 22 of 30

1  identify which specific Mattel designs or products defendants allege infringe on

2  defendants' designs[55] and trade dress[56] and the facts supporting those legal claims.[57]

3  Additionally, Mattel seeks to determine defendants' position regarding their

4  misappropriation of Mattel documents, including whether defendants contend that no

5  such documents were obtained improperly,[58] that the information contained therein has

6  no value as a trade secret,[59] that the information had been publicly disclosed,[60] that

7  defendants did not use or disclose such information,[61] that any such disclosure neither

8  benefited defendants nor harmed Mattel,[62] and that defendants have a right to possess,

9  use or disclose any such documents in their possession.[63] These are essential elements

10 of the trade secret theft claim. See Cal. Civ. Code § 3426.1. Finally, Mattel seeks

11 information related to MGA's efforts to collect and preserve evidence relevant or

12 potentially relevant to this action.[64]

13      The proposed interrogatories are consistent with the factors set out in Rule 26(b)

14 and should be permitted. They seek disclosure of specific relevant facts regarding

15 topics which have not been the subject of prior interrogatories. The majority of Mattel's

16 prior interrogatories focused on issues related to creation and ownership of Bratz.[65]

17 Only Mattel's set of interrogatories relating to MGA's unfair competition claims could

18

19

20  [55] See Mattel's Proposed Interrogatory No. 51.
21  [56] See Mattel's Proposed Interrogatory No. 52.
    [57] See Mattel's Proposed Interrogatories Nos. 53, 54, 55.
22  [58] See Mattel's Proposed Interrogatory No. 56.
    [59] See Mattel's Proposed Interrogatory No. 57.
23  [60] See Mattel's Proposed Interrogatory No. 58.
    [61] See Mattel's Proposed Interrogatory No. 59.
24  [62] See Mattel's Proposed Interrogatory No. 60.
    [63] See Mattel's Proposed Interrogatory No. 61.
25  [64] See Mattel's Proposed Interrogatories Nos. 63-64.
26  [65] See First Set to Bryant, Proctor Dec., Ex 8; First Set to MGA, Proctor Dec., Ex. 9;
27 Second Set to Bryant, Proctor Dec., Ex. 11; Second Set to MGA, Proctor Dec., Ex. 10;
   Third Set Revised, Proctor Dec., Ex. 45.
28

                                           Exhibit 1,
                                           P. 24

                    MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 26 of 49   Page ID
#:50256
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 24 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 23 of 30

1    conceivably overlap with the proposed interrogatories.[66] However, the interrogatories

2    already propounded focused on issues distinct from the proposed interrogatories—

3    specifically, facts relating to MGA employees involved with certain MGA products,[67]

4    MGA's alleged injuries,[68] MGA's allegations regarding Mattel's conduct with certain

5    third-parties in the industry[69] and MGA's allegations of product confusion.[70] These are

6    not duplicated in the interrogatories which Mattel is proposing.

7          Finally, the benefits of the proposed interrogatories outweigh any added burden,

8    as these type of facts are properly revealed through interrogatories, and the information

9    sought by the interrogatories will advance this litigation and avoid surprise at trial.

10   **B.    The Court Should Grant Leave With Respect To Mattel's**

11   **Outstanding Interrogatories That Defendants Will Not Answer**

12         To date, Mattel has served 50 interrogatories on the defendants. Yet, by

13   objecting to some of those previously served interrogatories served as being compound,

14   defendants refuse to answer on the purported ground that they exceed the Court's

15   limit.[71] Although defendants are wrong, the Court should eliminate further delay and

16   quarreling by defendants by simply granting Mattel leave to serve them regardless of

17   how they are counted.

18         Mattel has been seeking answers to these basic interrogatories for over five

19   months now. To justify their wholesale refusal to answer them, defendants claimed

20   they exceeded the Court's limit on the number of interrogatories. Mattel moved to

21   compel, defendants moved for a protective order, and in a September 5, 2007 Order

22   Judge Infante provided guidance on the counting of the interrogatories. Mattel then

---

[66] See First Set Re Unfair Comp., Proctor Dec., Ex. 12.
[67] See id. No. 1.
[68] See id. No. 4.
[69] See id. Nos. 5, 8, 9, and 10.
[70] See id. No. 7.
[71] See Bryant's Objections to Revised Third Set, Proctor Dec., Ex. 73; Bryant's
Objections to Amended Fourth Set, Proctor Dec., Ex. 74.

Exhibit __|__,
P. 25

07209/2299353.1

-18-

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 27 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 25 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 24 of 30

1   propounded revised interrogatories that were consistent with the Discovery Master's

2   Order.

3        Defendants nevertheless claim, once again, that Mattel exceeds its 50 allotted

4   interrogatories.  Not only is this without merit,[72] but it is clear that defendants rehash

5   this objection for no other reason than to obstruct.  Bryant refuses to answer any

6   interrogatory past No. 27 because "Mattel has propounded more than 50

7   interrogatories."[73]  And, even the minimal answers he gave to others amply confirms

8   that he continues to stonewall on even basic discovery in this case.  MGA makes

9   essentially the same objection.[74]  Accordingly, through nothing more than creatively

10

[72]   The essence of the defendants' objection is that Mattel's revised interrogatories are
11   compound interrogatories because they improperly require them to respond to individual
     interrogatories with "different and distinct facts."  See Bryant's Objections to Revised
12   Third Set, at 18; Bryant's Objections to Amended Fourth Set, at 4.  For example,
     defendants frivolously object to having to identify both the name of a product and its
13   corresponding product number.  But Judge Infante ruled on this matter, explaining that
14   interrogatories "'containing subparts directed at eliciting details concerning [a] common
     theme should be considered a single question,'" while interrogatories on "discrete issues"
15   should be treated as multiple interrogatories. Order re Mattel's Interrogs., at 5 (quoting 8A
     Wright & Miller, Federal Practice & Procedure § 2168.1 (2d ed. 1994)); see also id. at 7.
16   The scope of Mattel's revised interrogatories is no different than those which Judge Infante
17   ruled were permissible, as in both instances the "subparts are related and directed to the
     underlying details of a specifically identified" subject.  See id.  Judge Infante specifically
18   observed that under the Advisory Committee notes,  interrogatories which required distinct
19   factual answers relating to the same subject—e.g., the time, place, persons present, and
     contents of a particular communication—should be treated as a single interrogatory.  See
20   id.  Mattel's revised interrogatories are not compound, and defendants' arguments to the
21   contrary are groundless:  the fact that an interrogatory answer requires different facts does
     not convert it into a compound interrogatory on different issues.
22   [73]   Bryant's Objections to Revised Third Set, at 7.  Bryant then makes the same
23   objection to the remaining 23 interrogatories.
     [74]   See MGA's Objections to Revised Third Set, at 8, Proctor Dec., Ex. 76; MGA (HK)
24   Ltd.'s Objections to Revised Third Set, at 17, Proctor Dec., Ex. 77; MGAE de Mexico's
25   Objections to Revised Third Set, at 8, Proctor Dec., Ex. 78; Larian's Objections to Revised
     Third, at 8, Proctor Dec., Ex. 79; MGA's Objections Amended Fourth Set, at 7, Proctor
26   Dec., Ex. 80; MGA (HK) Ltd.'S Objections to Amended Fourth Set, at 7-8, Proctor Dec.,
     Ex. 81; MGAE de Mexico's Objections to Amended Fourth Set, at 8, Proctor Dec., Ex. 82;
27   Larian's Objections to Amended Fourth Set, at 7, Proctor Dec., Ex. 83.

28
                                                    Exhibit  1 ,
                                                    P. 26

07209/2299353.1
                                        -19-

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 28 of 49   Page ID
#:50262
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 26 of 69

Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 25 of 30

1 | counting a few interrogatories as a multitude, defendants manufacture grounds to delay
2 | yet more and refuse obviously appropriate discovery. To the extent that defendants
3 | have substantive objections to specific interrogatories, these issues may be properly
4 | heard before the Discovery Master. But defendants should not be permitted to serially
5 | raise the same objection to a few specific interrogatories in order to delay for yet more
6 | months in responding to the bulk of Mattel's interrogatories. Mattel requests that this
7 | Court cut through this issue by granting Mattel leave, to the extent needed, to serve
8 | each of the interrogatories that have been served to date regardless of how they are
9 | counted.

10 | **IV.   THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE**
11 | **BRYANT DEPOSITION**

12 | On September 28, 2007, the Discovery Master issued an Order Granting in Part
13 | Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes,
14 | granting Mattel seven additional hours to depose Bryant (in addition to 2 hours
15 | previously granted based on counsel's dozens of improper instructions not to answer at
16 | the Bryant deposition), but denying Mattel the 21 hours that it sought.[75]  Mattel
17 | respectfully submits that the facts, as determined by the Discovery Master, justify far
18 | more than seven additional hours, and the Court should grant additional time.

19 | Mattel does not contest the Discovery Master's factual findings in any way. To
20 | the contrary, the underlying factual findings were plainly correct. As Judge Infante
21 | noted, Mattel's deposition of Bryant in 2004 took place before MGA even brought its
22 | unfair competition claims and before Mattel filed its counterclaims, and Mattel had no
23 | opportunity to depose Bryant on either.[76]  Thus, as Judge Infante justifiably found:

24 | •   The new claims and defenses that were added to the case after Bryant's
      deposition justify additional deposition time. . . . Without question,

25 |

26 | [75]  Order Granting in Part Mattel's Motion for Additional Time to Depose Carter
27 | Bryant for All Purposes (Sept. 28, 2007) ("Order re Additional Time"), at 8:7-13, Proctor
      Dec., Ex. 43.
28 | [76]  Id. at 5:2-10.

Exhibit _1_,
P. _27_

07209/2299353.1

-20-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 29 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2642-3   Filed 02/11/2008   Page 27 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 26 of 30

Bryant is a critical witness regarding MGA's unfair competition claims and Mattel has not had an opportunity to depose him on such claims.[77]

• In addition, Mattel filed a counterclaim against Bryant, MGA, and other defendants in 2007, asserting thirteen different claims . . . . Bryant filed an answer asserting over twenty affirmative defenses. Mattel has not had an opportunity to depose Bryant on any of these claims or defenses.[78]

• Bryant is the central figure in this litigation and arguably the most important witness *for virtually every claim in the case*. No other witness in the case has his depth and breadth of relevant information.[79]

Bryant and MGA cannot dispute any of this. In interrogatory responses, MGA lists Bryant as a person directly involved with and knowledgeable about the allegedly infringed MGA products that MGA has put at issue.[80] MGA's responses to Mattel's interrogatories also state that the entire Bratz line is the subject of MGA's claims, and an MGA witness has declared that there are more than 200 Bratz products.[81] Moreover, Paula Garcia, MGA's Vice President of Product Design and Development, has declared that she and Bryant are "the *only* people who know what the concept is and who see the early product drawings" with respect to many Bratz products.[82] That is particularly important because many of both Mattel's *and* MGA's claims will turn on the source and timing of these products at issue. As the Court knows, Mattel's defenses to MGA's infringement claims rest, in part, on the fact that it was MGA which stole and copied Mattel products through its trade secret thefts. Testimony on the origins of those MGA products and when they were created is indispensable.

---

[77] Id. at 5:4-5.

[78] Id. at 5:6-10.

[79] Id. at 5:15-17 (emphasis added).

[80] MGA's Responses to Mattel's First Set of Interrogatories Re Claims of Unfair Competition, dated January 19, 2007, Response No. 1, at 6:9, Proctor Dec., Ex. 57.

[81] See Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, dated May 25, 2007, at ¶ 2, Proctor Dec., Ex. 58; MGA Sup. Resp. Unfair Comp. No. 2, Proctor Dec., Ex. 26.

[82] Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), Proctor Dec., Ex. 59.

Exhibit __/__,
P. __28__

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2299353.1

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 30 of 49   Page ID
#:50262
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 28 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 27 of 30

1      Bryant is also obviously a crucial witness on Mattel's copyright infringement,

2   RICO and other counterclaims, which raise a host of new issues Bryant has not been

3   deposed on.  According to MGA, Mattel's copyright infringement claim against Bryant

4   alone relates to "*hundreds* of products."[83]  Bryant was also personally involved, either

5   as sender or recipient, in approximately 100 of the predicate acts of mail and wire fraud

6   alleged by Mattel. [84]  Mattel is entitled to question Bryant about these and all the other

7   issues presented for the first time by Mattel's counterclaims and Bryant's answer.

8      Moreover, as Judge Infante found, "new evidence justifies additional time to

9   depose Bryant."[85]  Judge Infante noted that Bryant's deposition took place before "98

10  percent of Bryant's and MGA's collective document production took place"[86] – and that

11  did not even reflect the more than a million-and-a-half pages, that MGA has produced

12  in recent weeks.[87]  In truth, *99.9%* of defendants' production in this case has occurred

13  only after Bryant's 2004 deposition.  Thus, Mattel has had no opportunity to examine

14  Bryant on the vast bulk of the evidence, whether relevant to new claims or the original

15  ones.  This includes, for example:

16      •   Bryant's fee agreements with MGA, which reflect that MGA is paying
            Bryant's legal fees at its discretion, and which were withheld by Bryant
17          even in the face of prior court orders;

18      •   Bratz design drawings produced by Bryant for the first time this year,
            only after being ordered, which bear handwritten dates of September
19          19, 1999, at time when Bryant was employed by Mattel;

20      •   Bryant's desktop hard drive, which reveals his use of "Evidence
            Eliminator" software, which was not produced until compelled this
21          year.

22  _____

[83]  See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz
23  Ownership in Phase One at 3:12-19.

[84]  See Mattel's Second Amended Answer & Counterclaims, Exhibit C.
24  [85]  Order re Additional Time at 5:20 (font altered), Proctor Dec., Ex. 43.

[86]  Id. at 5:24-27, Proctor Dec., Ex. 43.  Notably, Judge Infante calculated the 98
25  percent number based on MGA's production of 157,000 pages of documents as of the close
    of briefing in late August.  Since that time MGA has produced over a million-and-a-half
26  pages of documents. See Proctor Dec. ¶ 45.

[87]  See Proctor Dec. ¶ 45.
27

28                                                 Exhibit 1 ,
                                                   P. 29

07209/2299353.1
                              -22-

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 31 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 502-3   Filed 02/11/2008   Page 29 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 28 of 30

- • Original Bratz drawings, which Bryant did not make available for inspection until this summer, after being ordered to do so, notwithstanding his promise that he would produce such documents at the 2004 deposition.

- • A fax from Bryant to David Rosenbaum, outside counsel for MGA, dated September 14, 2000, wherein Bryant stated that he could not ask Mattel's Human Resources any more questions about his contract with Mattel "without risking suspicion."

- • October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and Paula Garcia (formerly Treantafelles), reflecting that Bryant worked on Bratz with MGA "on average about 4 hours a day," starting at least six weeks before he left Mattel.

- • Invoices showing that Veronica Marlow, a key third party, billed MGA for 169 hours of development services on Bratz that were performed before Bryant left Mattel.

The list of new evidence that was requested by Mattel before Bryant's deposition but first produced by defendants only later literally goes on and on. As Judge Infante ruled, "a witness may be re-deposed with respect to . . . new developments" in a case, including new documents such as these, as well as new claims.[88]

Despite his factual findings, Judge Infante ruled that Mattel is only entitled to an additional seven hours of deposition. Previously Judge Infante had gave Mattel two additional hours as a result of the improper instructions and objections by counsel at Bryant's deposition.[89] So, under Judge Infante's ruling, Mattel has been limited to only seven hours to depose Bryant – the "most important witness for virtually every claim in the case"[90] – on MGA's claims, Mattel's counterclaims, the hundreds of MGA and Mattel products now at issue about which Bryant has unique knowledge, and the vast amounts of recently produced new evidence. This is unfair. The ruling that Mattel be

---

[88]   Order re Additional Time at 4:20-24 (quoting Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc., 2007 WL 764302 (S.D. Ohio 2007)), Proctor Dec., Ex. 43.

[89]   Order re Additional Time at 7:24-25, Proctor Dec., Ex. 43; see Order Granting In Part And Denying In Part Mattel's Motion To Overrule Instructions Not To Answer During The Deposition Of Carter Bryant (March 7, 2007), Proctor Dec., Ex. 44.

[90]   Id. at 5:15-17.

Exhibit _1_,
P. _30_

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 32 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 30 of 69
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 29 of 30

1    granted only seven additional hours is clearly erroneous given Bryant's singular

2    importance, the magnitude of this case and the tectonic shift of claims.

3            Also, based on <u>Rule</u> 30's "presumptive one day, seven-hour limitation on

4    depositions," Judge Infante awarded Mattel a total of 7 hours to depose Bryant on all of

5    MGA's claims and all of Mattel's counterclaims.[91] It is simply impossible to conduct a

6    deposition on those claims – which had not even been filed when Bryant was first

7    deposed – in that amount of time. Judge Infante apparently awarded Mattel no

8    additional time based on new evidence, even though 99.9% of defendants' production

9    has taken place since the 2004 deposition. That effectively punishes Mattel for

10   defendants' discovery misconduct. Mattel requested defendants' documents before the

11   deposition took place; defendants withheld them at their own peril, not at Mattel's.[92]

12   Mattel is entitled to a fair amount of time to depose the key witness in the case on the

13   new claims and evidence he has not been deposed on. The Court should afford that,

14   and grant Mattel a total of 21 hours for the deposition.[93]

15

16

17   [91]  <u>Id.</u> at 8:10-13.

     [92]  <u>See, e.g.</u>, <u>Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.</u>, 2007
18   WL 764302, at *2 (S.D. Ohio 2007) (originally cited by Bryant to Judge Infante) (allowing
19   second deposition because defendant failed to produce requested documents prior to first
     deposition); <u>Robins v. Scholastic Book Fairs</u>, 928 F. Supp. 1027, 1036 (D. Or. 1996) ("the
20   second set of depositions of these individuals was necessary because they had to be
     questioned about additional documents that Defendant produced after the first set of
21   depositions"); <u>Ritchie v. U.S.</u>, 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further
22   evidence linking [witness to the project in dispute] subsequently came to light this court
     permitted plaintiff to depose [the witness] a second time")
23   [93]  In the alternative, the Court should excercise its discretion to enlarge Mattel's time
24   to depose Bryant. The Court previously extended MGA's deadlines to produce documents
     that it was compelled to produce even though Judge Infante had specifically *rejected*
25   MGA's request for additional time to comply and despite MGA's failure to show there was
     any error in that ruling. Here, there can be no dispute that the Court has the right to ensure
26   that the parties receive fair discovery, proportionate to the magnitude and complexity of
27   the case, and that trial in this matter is conducted without undue surprises which will cause
     prejudice and waste the time of the Court and the jury.

28
                                                      **Exhibit** /    ,
07209/2299353.1                                       **P.** 3/

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 33 of 49   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 2042-3   Filed 02/11/2008   Page 31 of 69
#:50263
Case 2:04-cv-09049-SGL-RNB   Document 1134   Filed 11/19/2007   Page 30 of 30

1

**<u>Conclusion</u>**

2      For the foregoing reasons, Mattel respectfully requests that the Court grant

3  Mattel's motion for leave.

4  DATED:  November 19, 2007     QUINN EMANUEL URQUHART OLIVER &
                HEDGES, LLP

5

6                   By<u>Jon Corey /s/</u>

7                     Jon Corey
                     Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit  _1_ ,

P. _32_

07209/2299353.1

-25-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

# Exhibit 2

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 35 of 49   Page ID
#:50185
Case 2:04-cv-09049-SGL-RNB   Document 2042   Filed 02/11/2008   Page 1 of 15

1   Larry McFarland (Bar No. 129668)
2   Christian Dowell (Bar No. 241973)
    KEATS, McFARLAND & WILSON LLP
3   9720 Wilshire Blvd.
    Penthouse Suite
4   Beverly Hills, CA 90212
    Telephone: (310) 248-3830
5   Facsimile: (310) 860-0363
    Email:  lmcfarland@kmwlaw.com
6           cdowell@kmwlaw.com

7   Attorneys for Lucy Arant,
    Sarah Halpern, and Peter Marlow
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12

13  | CARTER BRYANT, an individual, | Case No.: CV 04 – 09049 SGL (RNBx)

14  |            Plaintiff, | Consolidated with Case Nos.
       |  | CV 04-9059 and CV 05-2727

15  |      v. | Hon. Stephen G. Larson

16  | MATTEL, INC., a Delaware | **RESPONSE TO ORDER TO SHOW**
17  | corporation; | **CAUSE OF LARRY MCFARLAND,**
       |  | **LUCY ARANT, SARAH HALPERN,**
18  |            Defendant. | **AND PETER MARLOW**

19  | ——————————— | Date:   02/25/08
20  | AND RELATED ACTIONS. | Time:   10:00 A.M.
       |  | Place:  Courtroom One

21

22

23

24

25

26

27

28

Exhibit 2 ,
P. 33

1
2

# TABLE OF CONTENTS

3  I.  ARGUMENT.................................................................................1

4      A.  Response to Order To Show Cause Why Mr. McFarland

5          Should Not Be Ordered to Appear For Deposition....................1

6              1.  Mattel Failed To Establish Good Cause Under

7                  Fed. R. Civ. P. 26 To Depose Mr. McFarland................1

8              2.  Deposing Mr. McFarland Is Improper Under The

9                  Well-Established Shelton Rule .................................4

10             3.  Mattel Has Not Effected Service On Mr. McFarland....................7

11     B.  Response To Order To Show Cause Why Ms. Arant,

12         Ms. Halpern, And Mr. Marlow Should Not Be Ordered

13         To Appear For Deposition. ...................................................10

14 II. CONCLUSION .............................................................................12

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit  2  ,
P. 34

---

i

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 37 of 49   Page ID
#:5042
Case 2:04-cv-09049-SGL-RNB   Document 2042   Filed 02/11/2008   Page 3 of 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

Dibel v. Jenny Craig, Inc., No. 06cv2533 BEN(AJB),

   2007 WL 2220987 (S.D. Cal. Aug. 1, 2007)...................................................5

FMC Techs., Inc. v. Edwards, 2007 WL 836709

   (W.D. Wash. Mar. 15, 2007) ...................................................................5

Lloyd Lifestyle Ltd. v. Soaring Helmet Corp., No. C06-0349C,

   2006 WL 753243 at *2 (W.D. Wash. Mar. 23, 2006)........................4, 5

Mass. Mutual Life Ins. Co. v. Cerf, 177 F.R.D. 472 (N.D. Cal. 1998).....................4, 5

Nocal, Inc. v. Sabercat Ventures, Inc., No. C 04-0240 PJH(JL),

   2004 WL 3174427 at *4 (N.D. Cal. Nov. 15, 2004)..............................5

Reeder v. Knapik, No. 07-CV-362-L(LSP), 2007 WL 1521100,

   *1 (S.D. Cal. May 22, 2007)..................................................................9

S.F. Bay Area Rapid Transit Dist. v. Spencer, No. C 04-04632 SI,

   2006 WL 2734284, *1 (N.D. Cal. Sept. 25, 2006) .............................10

Securitron Magnalock Corp. v. Schnabolk, No. 89 CIV 6731(NRB),

   2000 WL 307393, *1 (S.D.N.Y. Mar. 23, 2000)...............................10

Tokuda v. Huang, 882 F. Supp. 154, 156 (D. Guam 1995) ...................................9

**Other Authorities**

7-3 Moore's Federal Practice § 33.102.....................................................3

**Rules**

4A Fed. Prac. & Proc. Civ. 3d § 1097 ...................................................10

62B Am. Jur. 2d Process § 217..............................................................10

Fed. R. Civ. P. 26.....................................................................................6

Fed. R. Civ. P. 33.....................................................................................6

Fed. R. Civ. P. 33(b)(3).............................................................................3

Fed. R. Civ. P. 45(b)(1)...........................................................................10

Exhibit 2,
P. 35

ii                        RESPONSE TO ORDER TO SHOW CAUSE

Non-parties Lucy Arant, Sarah Halpern, and Peter Marlow and Larry McFarland
hereby respectfully submit this response (the "Response") to Judge Larson's Order to
Show Cause dated February 4, 2008, Why Mr. McFarland and His Clients Should Not
be Ordered to Appear for Deposition ("Order to Show Cause").

## I.   ARGUMENT

### A.   Response to Order To Show Cause Why Mr. McFarland
Should Not Be Ordered to Appear For Deposition.

#### 1.   Mattel Failed To Establish Good Cause Under
Fed. R. Civ. P. 26 To Depose Mr. McFarland.

Mr. McFarland should not be deposed for the simple reason that Quinn Emanuel
Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") provided false information in
Mattel's Motion For Leave To Take Additional Discovery and Objections To Discovery
Master Order of September 28, 2007 (the "Deposition Motion")[1], filed on November
19, 2007, with respect to Mr. McFarland's work on Bratz.  In an effort to satisfy its
burden under Rule 26(b)(2) to establish good cause to be allowed to take additional
depositions, Quinn Emanuel stated that Mr. McFarland had "unique personal
knowledge of the Bratz claims as well as about other claims in the case," and as support
for this statement cited the following, "Larry McFarland – wrote MGA copyright
registrations that stated that Bratz dolls were created during 2000 and that, after this suit
was filed, MGA claimed were incorrect."[2]  This is not true.

The public record is clear.  With respect to Bratz, Mr. McFarland signed the
following six copyright applications: Bratz Group Drawing, Reg. No. VA 1-218-489;
Cloe Drawing, Reg. No. VA-1-218-490; Jade Drawing, Reg. No. VA 1-218-487; Sasha
Drawing, Reg. No. VA 1-218-488; Yasmin Drawing, Reg. No. VA 1-218-491; and
Bratz Purse Style Guide, Reg. No. VA 1-233-273.[3]  Not one of these registrations states

Exhibit _2_
P._36_

---

[1] Declaration of Larry McFarland ("McFarland Decl."), Exhibit ("Exh.") 1.
[2] Id. at 17-18.
[3] McFarland Decl., Exh. 2.

1    that the "Bratz dolls were created during 2000."[4]  Moreover, with respect to the six

2    copyright applications that Mr. McFarland did sign, there is no discoverable

3    information with respect to any of these applications because the only communications

4    Mr. McFarland had with respect to these applications were with his clients and

5    personnel at his firm.[5]

6          Moreover, other than Quinn Emanuel's inaccurate allegation regarding

7    Mr. McFarland in the Deposition Motion, Mr. McFarland has been unable to locate any

8    Rule 26 disclosures or interrogatory responses where Mattel identified Mr. McFarland

9    as a witness, including the following:

10        1.    Mattel, Inc.'s Initial Disclosures Pursuant To Rule 26, dated June 28, 2004;[6]

11        2.    Mattel, Inc.'s Objections And Responses To MGA's First Set Of

12              Interrogatories, dated March 7, 2005;[7]

13        3.    Mattel, Inc.'s Supplemental Initial Disclosures Pursuant To Rule 26,

14              dated May 16, 2005;[8]

15        4.    Mattel, Inc.'s Consolidated (1) Initial Disclosures Relating To MGA's Unfair

16              Competition Claims, And (2) Second Supplemental Initial Disclosures Relating

17              To Mattel's Claims Against Bryant And MGA, dated January 5, 2007 ("January

18              5, 2007 Disclosures");[9]

19        5.    Mattel's Supplemental Responses to MGA's First Set of Interrogatories

20              to Mattel, Inc., dated December 7, 2007 ("Supplemental Interrogatory

21              Responses").[10]

22          Particularly inexplicable is the fact that Quinn Emanuel did not identify

23    Mr. McFarland as a witness in its Supplemental Interrogatory Responses which Quinn

24    Emanuel served over two weeks after they filed the Deposition Motion.  In the

25

26    _____

27    [4] See Id.
      [5] McFarland Decl., ¶ 4.
      [6] McFarland Decl., Exh 3.
28    [7] McFarland Decl., Exh 4.
      [8] McFarland Decl., Exh 5.
      [9] McFarland Decl., Exh 6.
      [10] McFarland Decl., Exh 7.

Exhibit 2,
P. 37

RESPONSE TO ORDER TO SHOW CAUSE

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 40 of 49   Page ID
#:501
Case 2:04-cv-09049-SGL-RNB   Document 2042   Filed 02/11/2008   Page 6 of 15

1    Supplemental Interrogatory Responses, Interrogatory No. 1 stated as follows: "State all

2    facts, with particularity, and IDENTIFY all DOCUMENTS that support YOUR

3    contention, if YOU so contend, that YOU have suffered harm as a result of any act or

4    omission of MGA."[11]  In response, Mattel sets forth approximately 63 pages of

5    contentions and lists of documents and depositions.[12]  Included in Mattel's response is

6    the contention: "The Bratz dolls which had been created during the time of Bryant's

7    employment by Mattel…."[13]  This contention addresses the same alleged fact, that the

8    Bratz dolls were completed in 2000, that Mattel alleged that Mr. McFarland wrote in

9    the copyright applications – he "wrote MGA copyright registrations that stated the

10   Bratz dolls were created during 2000…."[14]  However, in response to Interrogatory No.

11   2, which states "For each fact stated in response to Interrogatory No. 1, IDENTIFY all

12   PERSONS with knowledge of each fact,"[15] Mattel listed approximately 189 individuals

13   and entities as persons with knowledge of the facts set forth in response to Interrogatory

14   No. 1,[16] but did not include Mr. McFarland even though Mattel included numerous

15   attorneys and law firms, such as O'Melveny & Myers, Littler Mendelson, Christensen

16   Glaser, Kaye Scholer, David Rosenbaum, among others.[17]  If Mattel believed when it

17   served its Supplemental Interrogatory Responses on December 7, 2007, that

18   Mr. McFarland had knowledge about the timing of the completion of the Bratz work,

19   Mattel was obligated to identify Mr. McFarland in its Supplemental Interrogatory

20   Responses.  See Fed. R. Civ. P. 33(b)(3); 7-3 Moore's Federal Practice § 33.102 ("A

21   party answering interrogatories has an affirmative duty to furnish any and all

22   information available to the party.").

23          Continuing its pattern of inexplicable conduct, Quinn Emanuel never disclosed to

24   this Court that Mattel had not identified Mr. McFarland as a witness in any of its Rule

25

26   _____

27   [11] Id. at 125.
     [12] Id. at 126-189.
     [13] Id. at 131.
28   [14] See McFarland Decl., Exh. 1 at 18.
     [15] McFarland Decl., Exh. 7 at 189.
     [16] Id. at 191-219.
     [17] Id.

Exhibit 2,
P. 38

- 3 -                              RESPONSE TO ORDER TO SHOW CAUSE

Case 2:04-cv-09049-DOC-RNB    Document 2991-2    Filed 04/07/08    Page 41 of 49    Page ID
#:61042
Case 2:04-cv-09049-SGL-RNB    Document 2042    Filed 02/11/2008    Page 7 of 15

1    26 disclosures or interrogatory responses, including in its Replies to MGA's and Mr.

2    Bryant's Oppositions to the Deposition Motion which Mattel filed on December 31,

3    2007.[18]  In fact, at no time between the serving of its Supplemental Interrogatory

4    Responses on December 7, 2007, and the hearing held before this Court on January 7,

5    2008, did Quinn Emanuel inform this Court of the truth with respect to Mr. McFarland,

6    even though they knew that the Court would be relying on the false statement set forth

7    in the Deposition Motion regarding Mr. McFarland.

8         Absent Mattel's false statement with respect to Mr. McFarland, there are no facts

9    to support a finding of good cause under Rule 26 for Mattel to depose Mr. McFarland.

10        **2.    Deposing Mr. McFarland Is Improper Under The Well-**

11             **Established Shelton Rule**

12        In addition to the fact that Mattel failed to establish good cause to depose

13   Mr. McFarland, Mattel's attempt to depose Mr. McFarland is improper under the

14   prevailing rule sharply limiting depositions of opposing litigation counsel, set forth in

15   Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1987).  As the Shelton

16   court explained, "[t]he harassing practice of deposing opposing counsel (unless that

17   counsel's testimony is crucial and unique) appears to be an adversary trial tactic that

18   does nothing for the administration of justice but rather prolongs and increases the costs

19   of litigation, demeans the profession, and constitutes an abuse of the discovery

20   process."  Id. at 1330.  Ninth Circuit district courts have "uniformly followed" Shelton,

21   the leading case on this issue.  Lloyd Lifestyle Ltd. v. Soaring Helmet Corp., No. C06-

22   0349C, 2006 WL 753243 at *2 (W.D. Wash. Mar. 23, 2006).

23        Under Shelton, deposing an opponent's current or former litigation counsel is

24   proper only in extremely limited circumstances, although not absolutely prohibited.

25   See Mass. Mutual Life Ins. Co. v. Cerf, 177 F.R.D. 472 (N.D. Cal. 1998) (Infante, J.)

26   (granting protective order preventing deposition of Cerf's former counsel in the

27   litigation at issue, applying Shelton); FMC Techs., Inc. v. Edwards, 2007 WL 836709

28

---

[18] McFarland Decl., Exh. 8.

Exhibit 2,
P. 39

- 4 -                                    RESPONSE TO ORDER TO SHOW CAUSE

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 42 of 49   Page ID
#:5042
Case 2:04-cv-09049-SGL-RNB   Document 2042   Filed 02/11/2008   Page 8 of 15

1 | (W.D. Wash. Mar. 15, 2007) (granting motion to quash deposition subpoena to

2 | opponent's former counsel in a related case).  Because depositions of opposing counsel

3 | are disfavored, the party seeking such a deposition must show that (1) no other means

4 | exist to obtain the information, (2) the information sought is relevant and non-

5 | privileged, and (3) the information is crucial to the preparation of the case.  <u>Shelton</u>,

6 | 805 F.2d at 1327.  If the party seeking to depose opposing litigation counsel cannot

7 | prove all three of these elements, courts will quash the subpoena or enter a protective

8 | order prohibiting the deposition.  <u>See, e.g.</u>, <u>Dibel v. Jenny Craig, Inc.</u>, No. 06cv2533

9 | BEN(AJB), 2007 WL 2220987 (S.D. Cal. Aug. 1, 2007) (quashing subpoena seeking

10 | deposition of defendant's attorney); <u>Lloyd Lifestyle Ltd.</u>, 2006 WL 753043 at *3

11 | (same); <u>Nocal, Inc. v. Sabercat Ventures, Inc.</u>, No. C 04-0240 PJH(JL), 2004 WL

12 | 3174427 at *4 (N.D. Cal. Nov. 15, 2004) (quashing subpoena and granting protective

13 | order; <u>Mass. Mut. Life Ins. Co.</u>, 177 F.R.D. at 487-82 (granting protective order).

14 |     Mattel has failed to present any facts to satisfy the three-part test set forth in

15 | <u>Shelton</u>.  Mattel has sources for all properly discoverable information other than

16 | Mr. McFarland.  For example, with respect to the six copyright applications that

17 | Mr. McFarland did sign, [19] Mattel has served numerous Rule 30(b)(6) deposition topics

18 | addressing the development of the Bratz dolls and the copyrights filed with respect to

19 |

20 |

21 |

22 |

23 | [19] Mattel also states in its Deposition Motion that Mr. McFarland may have knowledge
with respect to Phase 2 discovery and cites as support an e-mail which they characterize

24 | as "discussing involvement with Bratz licensing." McFarland Decl., Exh. 1 at 20 n.41.
As an initial matter, Mattel is merely speculating as to what projects Mr. McFarland

25 | worked on for MGA, and Mr. McFarland is unwilling to confirm or deny such
speculation here.  Moreover, any questions with respect to Mr. McFarland's work for

26 | MGA would necessarily intrude upon privileged matters and is improper under the
well-established <u>Shelton</u> rule.  Finally, to the extent that Mattel believes "licensing

27 | matters" are relevant to this litigation, it has sources other than Mr. McFarland and has
in fact already served several Rule 30(b)(6) deposition topics on this issue.  For

28 | example, Mattel's Fourth Notice of Deposition of MGA Entertainment, Inc., dated
January 9, 2008, topics 11, 14 and 16; and Mattel's Second Notice of Deposition of
MGA Entertainment, Inc., dated February 1, 2008, topic 15, are all Rule 30(b)(6)
deposition topics which cover any such "licensing matters" which Mattel believes may
be relevant.  McFarland Decl., Exh. 9.

RESPONSE TO ORDER TO SHOW CAUSE

**Exhibit** 2 ,
**P.** 40

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 43 of 49   Page ID
#:56127
Case 2:04-cv-09049-SGL-RNB   Document 2042   Filed 02/11/2008   Page 9 of 15

1   the Bratz property.[20]

2          Moreover, the <u>Shelton</u> court stated:

3          Finally, the practice of deposing opposing counsel detracts from the

4          quality of client representation. Counsel should be free to devote his or

5          her time and efforts to preparing the client's case without fear of being

6          interrogated by his or her opponent. Moreover, the "chilling effect" that

7          such practice will have on the truthful communications from the client

8          to the attorney is obvious.

9   <u>Shelton</u>, 805 F.2d at 1327.  Unfortunately, given the facts of this case it is hard to

10  conclude that Quinn Emanuel had any purpose other than to distract Mr. McFarland

11  from representing his clients.  First, Quinn Emanuel misstated the facts in its Deposition

12  Motion.  Second, Quinn Emanuel did not identify Mr. McFarland as a witness in any

13  Rule 26 disclosures or in its response to any interrogatories served either before or after

14  the Discovery Motion, even though it was required to do so under Fed. R. Civ. P. 26

15  and Fed. R. Civ. P. 33 if it believed that Mr. McFarland was a witness with

16  knowledge.[21]  Third, Quinn Emanuel failed to disclose to this Court that it had not listed

17  Mr. McFarland as a witness in any of its disclosures including the Supplemental

18  Interrogatory Responses served after the Deposition Motion.  Fourth, Quinn Emanuel

19  was fully aware that Mr. McFarland was busily engaged in representing Ms. Leahy, Ms.

20  Marlow, Ms. Halpern and Ms. Cloonan, and Quinn Emanuel knows full well that

21  Mr. McFarland's firm employs approximately 15 lawyers and therefore does not have

22  the tremendous resources to make available to represent their clients as does Quinn

23  Emanuel, "a 375+ lawyer business litigation firm – the largest in the United States

24

25

26  [20] The following Rule 30(b)(6) deposition topics address the development of the Bratz
    dolls and the copyrights filed with respect to the Bratz property: Mattel's Notice of
    Deposition of MGA Entertainment, Inc., dated February 16, 2005, topic 2; Mattel's
27  Notice of Deposition of MGA Entertainment (HK) Limited, dated June 4, 2007, topic
    19; Mattel's Fourth Notice of Deposition of MGA Entertainment, Inc., dated January 9,
28  2008, topics 7-10 and 13; Mattel's Second Notice of Deposition of MGA
    Entertainment, Inc., dated February 1, 2008, topics 1-8, 13, 14 and 33.  See McFarland
    Decl., Exh. 9.
    [21] <u>See</u> McFarland Decl., Exhs. 3-7.

**Exhibit** 2,
**P.** 41

RESPONSE TO ORDER TO SHOW CAUSE

1    devoted solely to business litigation."[22]  Fifth, at the same time that Quinn Emanuel is

2    making misrepresentations to the court to satisfy Mattel's burden of establishing good

3    cause to take Mr. McFarland's deposition, they are meeting-and-conferring with

4    Mr. McFarland regarding numerous discovery motions and have now bombarded

5    Mr. McFarland with the following motions: (1) Mattel's Motion to Compel Additional

6    Deposition Testimony and Production of Documents By Veronica Marlow, dated

7    January 28, 2008; (2) Mattel's Motion to Compel Additional Deposition Testimony and

8    Production of Documents Margaret Hatch-Leahy And To Overrule Instructions Not To

9    Answer; And For Sanctions, dated January 28, 2008; (3) Mattel's Ex Parte Application

10   To (i) Compel Production of Electronic Media From Third-Parties Elise Cloonan,

11   Margaret Hatch-Leahy and Veronica Marlow Or (ii) In the Alternative, Modify The

12   Scheduling Order, filed January 23, 2008; (4) Mattel's Motion for Leave to Obtain

13   Discovery after the Discovery Cut-Off in Response to Subpoenas Served on Doll Bag,

14   Inc., Veronica Marlow, Inc., Marlow Techo-Logic, Inc., People's Bank of the Ozarks

15   and Washington Mutual Bank, dated January 28, 2008; and (5) Mattel's Motion to

16   Compel Production of Fee Agreements and Privilege Logs from Leahy, Cloonan,

17   Halpern, and Marlow and for Sanctions, dated January 28, 2008.  Unfortunately, Quinn

18   Emanuel's actions seem to have been designed to disrupt the adversary litigation

19   process and to unreasonably burden and harass Mr. McFarland and his clients.  Under

20   the well-established Shelton rule, Mr. McFarland should not be deposed.

21            **3.    Mattel Has Not Effected Service On Mr. McFarland.**

22   With respect to the service of a subpoena on Mr. McFarland, Mr. McFarland was aware

23   since at least the time that Mattel filed its Deposition Motion on November 17, 2007,

24   that Quinn Emanuel wanted to depose him.  Nevertheless, Mr. McFarland went about

25   his business representing his clients, including defending all-day, marathon depositions

26   of Ms. Leahy, Ms. Cloonan and Ms. Marlow at Quinn Emanuel's offices on December

27   12th, 14th and 28th, respectively.  In addition, since Quinn Emanuel has repeatedly

28

---

[22] See www.quinnemanuel.com.

Exhibit 2,
P. 43

RESPONSE TO ORDER TO SHOW CAUSE

1   asserted that they have several of their 24 depositions remaining without considering

2   the additional depositions that it requested in its Deposition Motion, if Quinn Emanuel

3   wanted to serve a subpoena on Mr. McFarland, it could have easily done so at any of

4   these three depositions.[23]  In fact, Quinn Emanuel did serve Mr. McFarland and/or his

5   clients with trial subpoenas at the depositions of Ms. Leahy and Ms. Cloonan.[24]  In

6   addition, between November 17, 2007, and the discovery cut-off date of January 28,

7   2008, attorneys for Quinn Emanuel were in Mr. McFarland's offices to conduct

8   document review and Mr. McFarland met with the attorney from Quinn Emanuel during

9   at least one of these visits.[25]  Mr. McFarland also personally attended a hearing before

10  this Court on January 7, 2008, along with counsel from Quinn Emanuel.[26]

11  With respect to Quinn Emanuel's statements regarding their efforts to serve

12  Mr. McFarland after January 7, 2008, the statements in their Ex Parte Application (1)

13  To Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo

14  Vargas, MGA Entertainment, Inc., And MGAE De Mexico And (2) For Leave To Take

15  Depositions In February 2008; Or, In The Alternative, For An Order Shortening Time

16  To Hear A Motion Seeking The Foregoing Relief ("Ex Parte Application"), are not

17  accurate.[27]  Quinn Emanuel states that "Mattel requested that Larry McFarland accept

18  service on behalf of himself and his client," and that "Mattel recently asked

19  Mr. McFarland when it could arrange service at a time convenient to him.  He has not

20  

21  _____

22  [23] Mattel stated in its Deposition Motion that it had only taken 18 depositions, see
     McFarland Decl., Exh. 1 at 10, and Mr. Quinn stated at the February 4, 2008, hearing

23  that "I think to the contrary, your honor, we said we hadn't used up all of the slots.  We
     just anticipated we needed to get the ceiling raised, knowing what needed to be done."
     McFarland Decl., Exh. 10 at 346 [p. 30:7-10].

24  [24] McFarland Decl., Exh. 11.
     [25] McFarland Decl., ¶ 15.

25  [26] McFarland Decl., Exh. 12.
     [27] Mattel states that it gave Mr. McFarland notice of the Ex Parte Application on

26  Sunday, January 27, 2008, at 11:10 p.m.  Notice of Ex Parte Application at 4.  While it
     is true that Mattel stated in a January 27, 2008 letter that "[a]mong the depositions,

27  Mattel seeks leave to take on or before February 29, 2008, are the following three
     categories: ... 2) Witnesses subject to the January 7 Order who, despite Mattel's

28  diligent efforts, have not yet been served," nowhere in this letter did Mattel inform
     Mr. McFarland that it would be claiming that he and his clients had behaved improperly
     or that they had avoided service.  See Declaration of Christopher E. Price in support of
     Ex Parte Application ("Price Decl."), Exh. S.

- 8 -                      RESPONSE TO ORDER TO SHOW CAUSE

Exhibit 2,
P. 43

Case 2:04-cv-09049-DOC-RNB   Document 2991-2   Filed 04/07/08   Page 46 of 49   Page ID
#:59042
Case 2:04-cv-09049-SGL-RNB   Document 2642   Filed 02/11/2008   Page 12 of 15

1   responded."[28]   The truth is that Mattel did not ask Mr. McFarland to accept service of a

2   subpoena on himself until Mr. Price sent an e-mail to Mr. McFarland at 8:24 p.m. on

3   Sunday, January 27, 2008, which was one day before discovery cut-off.[29]  In addition,

4   Mr. Quinn's statement at the hearing held on February 4, 2008, as follows also does not

5   appear to be accurate: "We did notice all of the depositions that we got leave to take

6   pursuant to the Court's January 7th order."[30]  Mr. McFarland did not receive a notice of

7   deposition for his deposition or for the depositions of Ms. Arant, Ms. Halpern or

8   Mr. Marlow.[31]

9          Regarding Mattel's allegation that it attempted to serve Mr. McFarland four

10  times,[32] during the time period that Mattel claims to have tried to serve Mr. McFarland,

11  he was in and out of his office.  Mr. McFarland had no obligation to alter his usual

12  routine or otherwise go out of his way to make himself available to receive service.

13  See, e.g., Reeder v. Knapik, No. 07-CV-362-L(LSP), 2007 WL 1521100, *1 (S.D. Cal.

14  May 22, 2007) ("Failure to agree to meet with plaintiff or her process server to be

15  served is not an evasion of service."); Tokuda v. Huang, 882 F. Supp. 154, 156 (D.

16  Guam 1995) (reversing award of punitive damages based on alleged conduct of hiding

17  to avoid service and noting that the party "had no duty to run down to the office of the

18  plaintiff's attorney to accept service of summons.").  There are no facts whatsoever to

19  support Mattel's assertion that Mr. McFarland evaded service.

20

21

22  [28] Ex Parte Application at 7.
    [29] Price Decl., Exh. E.  Prior to that time, on Thursday, January 10, 2008, Mr. Price
23  asked if Mr. McFarland was willing to "accept service of depositions subpoenas for
    Lucy Arant and Sarah Halpern."  McFarland Decl., Exh. 13.  Three business days later,
24  in an e-mail dated January 15, 2008 at 11:45 a.m., Mr. McFarland stated as follows:
    "This serves to confirm that I am not authorized by Ms. Arant or Ms. Halpern to accept
25  service of the subpoena."  Id.
    [30] McFarland Decl., Exh. 10 at 341 [p. 12:3-5].
26  [31] McFarland Decl., ¶ 22.
    [32] Counsel objects to the statement in the Declaration of Miguel Leyva that "I was
27  informed by the receptionist that Mr. McFarland would be out of the office for an
    undetermined period.  The receptionist informed me that Mr. McFarland was not
28  present at the office when I made further attempts on January 16, 2008, at 11:30 a.m.,
    and January 22, 2008, at 12:30 p.m."  See Declaration of Miguel Leyva in support of
    Ex Parte Application ("Leyva Decl.") at ¶ 3.  These statements are inadmissible hearsay
    and should be stricken from the Leyva Decl.

RESPONSE TO ORDER TO SHOW CAUSE
                                                      Exhibit 2 ,
                                                      P. 44

Case 2:04-cv-09049-DOC-RNB    Document 2991-2    Filed 04/07/08    Page 47 of 49    Page ID
#:50167
Case 2:04-cv-09049-SGL-RNB    Document 2042    Filed 02/11/2008    Page 13 of 15

1    In sum, there is simply no good cause for Mr. McFarland's deposition, which

2    would violate the <u>Shelton</u> rule, intrude upon privileged matters and cause unreasonable

3    burden and harassment.

4    **B.    Response To Order To Show Cause Why Ms. Arant,**

5    **Ms. Halpern, And Mr. Marlow Should Not Be Ordered**

6    **To Appear For Deposition.**

7    With respect to Ms. Arant, Ms. Halpern[33] and Mr. Marlow, these witnesses

8    should not be deposed because they were not personally served with a Rule 45

9    subpoena.[34] <u>S.F. Bay Area Rapid Transit Dist. v. Spencer</u>, No. C 04-04632 SI, 2006

10   WL 2734284, *1 (N.D. Cal. Sept. 25, 2006) ("The Court agrees with the City and

11   majority of courts that have understood 'delivering' to require personal service of the

12   subpoena.").  As set forth above, in response to Mattel's request dated January 10,

13   2008, with respect to whether Mr. McFarland was authorized to accept service of

14   subpoenas on behalf of Ms. Arant and Ms. Halpern, three business days later, on

15   January 15, 2008, Mr. McFarland informed counsel for Mattel that he was not

16   authorized to do so.[35]  The law does not require counsel to accept service of subpoenas

17   on behalf of clients, <u>See</u>, <u>e.g.</u>, Fed. R. Civ. P. 45(b)(1); 4A Fed. Prac. & Proc. Civ. 3d §

18   1097; 62B Am. Jur. 2d Process § 217; <u>Securitron Magnalock Corp. v. Schnabolk</u>, No.

19   89 CIV 6731(NRB), 2000 WL 307393, *1 (S.D.N.Y. Mar. 23, 2000) ("[I]t cannot be

---

21   [33] Mattel seems to infer that they had a problem obtaining Ms. Halpern's address for the
     purpose of serving her – "Sarah Halpern was identified as a witness by MGA, but MGA
22   failed to provide her address and phone number.  Instead, MGA stated that she could be
     contacted through her attorney, Larry McFarland."  Ex Parte Application at 7 n.25.  The
23   truth is that not only did Mattel have Ms. Halpern's home address, they disclosed it in
     their January 5, 2007 Disclosures.  <u>See</u> McFarland Decl., Exh. 6 at 108.
24   [34] Counsel further objects to the statements in the Leyva Declaration that "the
     receptionist told me that Ms. Arant would not be in the office all day," Leyva Decl., at ¶
25   13, the Declaration of Rayn Jerez in support of Ex Parte Application ("Jerez Decl.")
     that "[w]hen I knocked, a female answered and said that Ms. Arant had moved a month
26   ago," Jerez Decl., at ¶3, the Declaration of Kenneth Wright in support of Ex Parte
     Application ("Wright Decl.") that "[t]he man would not give me his name, but
27   confirmed that he lived in the house next door to the Residence.  He told me that he had
     not seen Mr. Marlow or anyone at the Residence in a few days," Wright Decl., ¶3, and
28   that "Mr. Halpern answered and said his wife is hardly ever home.  He repeated the
     same statement when I called again on January 18."  <u>Id</u>.  These statements are
     inadmissible hearsay and should be stricken from the respective declarations.
     [35] <u>See</u> McFarland Decl., Exh. 13.

RESPONSE TO ORDER TO SHOW CAUSE

**Exhibit** 2

P. 45

1   forgotten that counsel was not obligated to accept service of the subpoenas in the first

2   instance."), as counsel for Mattel is obviously aware, given its own pattern of refusing

3   service of subpoenas.  See, e.g., Declaration of Raul Torres (describing Quinn

4   Emanuel's refusal to accept service of a notice of subpoena at its offices on Jan. 16,

5   2008 and *threatening to bar the messenger from the building*);[36] January 7, 2008,

6   Transcript of Hearing re Motions (Michael Zeller explaining refusal to accept service of

7   subpoenas for its own employees, unless they are "current directors and officers" of

8   Mattel).[37]

9        With respect to Mr. Marlow, counsel for Mattel did not ask Mr. McFarland if he

10  would accept service of the subpoena for Mr. Marlow until *Sunday*, January 27, 2008,

11  at 11:12 a.m.[38]  In a letter dated the same day, Christian Dowell responded for

12  Mr. McFarland stating that, "No one from your firm ever asked me whether I would

13  accept service of a subpoena for Mr. Marlow.  With respect to your request that I agree

14  to accept service of a subpoena on Mr. Marlow, I am not authorized to do so.  With

15  respect to your request that I stipulate to an extension of discovery cut-off with respect

16  to Mr. Marlow, I am unwilling to do this.  You have known about Peter Marlow since

17  2004 and yet you decided to wait until a few days before discovery cut-off to try and

18  depose him.  That was Mattel's choice."[39]  In addition, with respect to Mr. Marlow, if

19  Quinn Emanuel wanted to serve him with a deposition subpoena they could have done

20  so at the deposition of Ms. Marlow held on December 28, 2007 – just as they served

21  trial subpoenas for both Ms. Cloonan and Ms. Leahy at their respective depositions.

22  Indeed, Mr. Marlow attended Ms. Marlow's deposition and was in Quinn Emanuel's

23  offices for over 11 hours on that day.[40]  Moreover, as set forth above, Quinn Emanuel

24  _____

25  [36] McFarland Decl., Exh. 14.
    [37] McFarland Decl., Exh. 12 at 378-379 [pp. 57:24-25, 58:1-6] ("The other people, a
26  number of them, except for three, are low-level employees who are not subject to Rule
    30.  Now, what we have said in terms of our representations to accept service is very
27  specific.  It is Mattel's current directors and officers.  It does not extend to people who
    are former.  We have said, certainly, if there are former people that they want to ask us
28  about--").
    [38] McFarland Decl., Exh. 15.
    [39] McFarland Decl., Exh. 16.
    [40] McFarland Decl., Exh. 17.

Exhibit  2 ,
P. 46

1   has consistently taken the position, which Mr. Quinn repeated at the February 4, 2008,

2   hearing, that Mattel has not used all of its 24 allotted depositions, so there was no

3   impediment to Mattel serving Mr. Marlow on December 28, 2007.

4         In its January 7 order, the Court recognized that subpoenas needed to be served

5   on deponents other than the current officers of Mattel.  The evidence establishes that

6   Mr. Marlow, Ms. Arant and Ms. Halpern properly decided not to authorize their

7   counsel to accept service of a subpoena on their behalf, and Mattel failed to personally

8   serve the subpoenas on these three witnesses.  In addition, Ms. Arant, Ms. Halpern and

9   Mr. Marlow note that they are not the only witnesses that Mattel failed to serve, yet

10  they are the only witnesses who have been ordered to show cause.  Mattel also claims

11  to have tried, but failed, to serve Ms. Salemnia, Mr. Abundis, Ms. Ward, Ms. Witschell

12  and Mr. Weiss.[41]

13  **II.      CONCLUSION**

14         For the foregoing reasons, Mr. McFarland, Ms. Arant, Ms. Halpern and

15  Mr. Marlow have shown good cause why they should not be deposed.

17  Dated:  February 11, 2008           KEATS MCFARLAND & WILSON LLP

19                                      /s/
                                        _____
20                                      Larry W. McFarland, Esq.
                                        Attorneys for Lucy Arant, Sarah Halpern,
21                                      and Peter Marlow

28
_____

[41] Ex Parte Application at 8.

Exhibit  2 ,
P.  47

RESPONSE TO ORDER TO SHOW CAUSE