1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6    Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
7    Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9                   UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12

13  CARTER BRYANT, an                CASE NO. CV 04-9049 SGL (RNBx)
    individual,
14                                   Consolidated with Case Nos. CV 04-09059
              Plaintiff,             and CV 05-02727
15
          vs.                        Hon. Stephen G. Larson
16
    MATTEL, INC., a Delaware         MATTEL, INC.'S *EX PARTE*
17  corporation,                     APPLICATION TO FILE
                                     SUPPLEMENTAL EXPERT REPORTS BY
18            Defendant.             MESSRS. WILLIAM FLYNN AND LLOYD
                                     CUNNINGHAM REGARDING CERTAIN
19                                   BRYANT ORIGINALS;
    AND CONSOLIDATED
20  ACTIONS                          AND MEMORANDUM OF POINTS AND
                                     AUTHORITIES
21
                                     [Declaration of Diane C. Hutnyan filed
22                                   concurrently herewith]

23                                   Date:  TBA
                                     Time:  TBA
24                                   Courtroom: 1

25                                   **Phase 1:**
                                     Discovery Cut-off:       January 28, 2008
26                                   Pre-trial Conference:    May 5, 2008
                                     Trial Date:              May 27, 2008

27

28

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE  that pursuant to Local Rules 7-19 and 16-14 and

3 | Rules 16 and 26 of the Federal Rules of Civil Procedure, Mattel, Inc. hereby files

4 | this *ex parte* Application to File Supplemental Expert Reports by Messrs. William

5 | Flynn and Lloyd Cunningham Regarding Certain Carter Bryant original documents.

6 | The application is made in conjunction with an *ex parte* application to Judge Infante

7 | seeking additional access to these documents for essential non-destructive testing.

8 |      Mattel files this Application on the ground that supplemental expert reports –

9 | based on additional review and forensic testing of Bryant's documents[1] – are

10 | essential to the fairness and the accuracy of the factfinding process.   MGA's experts

11 | have performed and are relying on tests which Mattel has a right to replicate.  After

12 | Bryant and MGA severely limited Mattel's experts' access to Bryant's original

13 | documents, MGA's designated experts went well beyond rebutting Mattel's experts'

14 | opinions and did reflected infrared and infrared luminescence testing that they now

15 | claim revealed underlying pencil marks that cannot be seen without such testing.

16 | Though they claim this supposed evidence rebuts Mattel's experts' opinions, they

17 | refuse to allow Mattel's experts access to the originals so that they can perform the

18 | same tests and address the points raised.

19 |      Mattel is entitled to an even playing field.  Mattel has filed an Ex Parte

20 | Application with the Discovery Master seeking access to the documents for its

21 | experts for a period of two weeks to allow the same tests to be conducted.   There is,

22 | however, no point to conducting such tests unless Mattel's experts are permitted to

23 | file supplementary expert reports in this Court reflecting their results.   Because

24 | matters of scheduling are for this Court to decide, this Application simply seeks

25 |

26 | [1] The original documents to which access has been requested in the application to Judge Infante are those whose bates number was identified or referenced in

27 | (footnote continued)

28 |

1    permission to file supplementary expert reports within seven (7) days of the

2    completion of the testing.

3                    **Statement of Compliance with Local Rule 7-19**

4         Counsel for Carter Bryant is Matthew M. Werdegar of Keker and Van Nest

5    LLP (telephone: 415-391- 5400, Address: 710 Sansome Street, San Francisco, CA

6    94111-1704).

7         Counsel for MGA Entertainment Inc., MGA Entertainment (HK) Limited,

8    MGAE de Mexico , S.R.L. de C.V. and Isaac Larian (collectively "MGA") is

9    Matthew E. Sloan of Skadden, Arps, Slate, Meagher & Sloan (Telephone: 213-687-

10   5276;   Address: 300 South Grand Ave., Los Angeles, CA  90017-3144).

11        Pursuant to <u>Local Rule</u> 7-19.1, Mattel gave notice of its intent to file the

12   *ex parte* Applications to Judge Infante and to this Court by letter dated April 2, 2008

13   if defendants failed to comply with its request to have additional access to Bryant's

14   original documents.  Counsel for Bryant and MGA indicated their intent to deny

15   Mattel's request and to oppose the Applications by letters dated April 3, 2008 and

16   April 4, 2008, respectively.

17        This Application is based on this Notice of Application, the accompanying

18   Memorandum of Points and Authorities, the Declaration of Diane C. Hutnyan filed

19   concurrently herewith, the records and files of this Court, and all other matters of

20   which the Court may take judicial notice.

21   DATED:  April 8, 2008              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
22

23                                      By
24                                         Diane C. Hutnyan
                                           Attorneys for Mattel, Inc.
25

26   _____

27   Mr. Kullman and/or Dr. Lyter's reports, as well as any additional documents
     referenced in Mssrs. Flynn and Cunningham's reports.
28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 1

ARGUMENT............................................................................................................ 3

I.      MATTEL WILL BE IRREPARABLY PREJUDICED BY A DENIAL
        OF THIS *EX PARTE* APPLICATION OR IF IT IS HEARD
        THROUGH REGULAR NOTICED MOTION PROCEDURES..................... 4

I.      THE COURT SHOULD GRANT MATTEL'S APPLICATION
        BECAUSE MATTEL  DID NOT CREATE THE CIRCUMSTANCES
        REQUIRING *EX PARTE* RELIEF. .......................................................... 8

IIII.   DEFENDANTS HAVE NO CREDIBLE BASIS TO OBJECT TO
        THIS *EX PARTE* APPLICATION....................................................... 9

CONCLUSION....................................................................................................... 11

-i-

MATTEL'S EX PARTE APPLICATION TO FILE SUPPLEMENTAL EXPERT REPORTS

# TABLE OF AUTHORITIES

**Page**

## Cases

Carr v. Pacific Maritime Ass'n,
904 F.2d 1313 (9th Cir. 1990)................................................................. 6

Daubert v. Merrell Dow Pharm., Inc.,
509 U.S. 579 (1993) ................................................................. 5, 8, 10

Internet Specialties West, Inc. v. ISPWest,
2006 WL. 4568796 (C.D. Cal. 2006) ....................................................... 6, 7

Johnson v. Sacramento County,
2007 WL. 127799 (E.D. Cal. 2007) ............................................................. 3

Mission Power Eng'g Co. v Continental Cas. Co.,
883 F. Supp. 488 (C.D. Cal. 1995).................................................... 3, 8, 9

Phillips v. Netblue, Inc.,
2007 WL. 528722 (N.D. Cal. 2007)................................................ 5, 6, 7, 10

Rivera v. NIBCO, Inc.,
384 F.3d 822 (9th Cir. 2004) ................................................................. 6

Shoen v. Shoen,
5 F.3d 1289 (9th Cir. 1993) ................................................................. 6

Taylor v. Burlington Northern R. Co.,
787 F.2d 1309 (9th Cir. 1986)......................................................... 5, 10

United States v. Bryan,
339 U.S. 323 (1950) ................................................................. 6

United States v. Hempfling,
2008 WL. 703809 (E.D. Cal. 2008) ........................................................... 6

Universal Trading & Inv. Co. v. Kiritchenko,
2007 WL. 2141296 (2007) ................................................................. 10

Walsh v. McCain Foods Ltd.,
81 F.3d 722 (7th Cir. 1996) ................................................................. 9

## Statutes

Fed. R. Civ. P. 16(b)(4) ................................................................. 3

Fed. R. Civ. P. 26(e)(1) ................................................................. 10

Fed. R. Civ. P. 26(e)(2) ................................................................. 9

Fed.R. Evid. 702 ........................................................................................................... 10

**Other Authorities**

Rutter Group Practice Guide: Federal Civil Trials and Evidence Ch. 11-A 2a.5 § 11:25 .............................................................................................................................. 9

MATTEL'S EX PARTE APPLICATION TO FILE SUPPLEMENTAL EXPERT REPORTS

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

The issue before this Court is simple:  assuming, as fairness requires, that Judge Infante grants Mattel's experts the access they need in order to conduct the very same tests that MGA's experts have already conducted, should the Scheduling Order be modified to allow those experts seven (7) days following the completion of that testing in order to file supplementary expert reports.   There is no point to allowing the additional testing unless Mattel's experts are permitted to file supplementary reports which can then serve as a basis for their testimony at trial. And there is ample precedent that in these circumstances, supplementary expert reports are not only justified, but required.

## FACTUAL BACKGROUND

As detailed in the *Ex Parte* Application for Access to Certain Bryant Originals, attached to this Application as Exhibit 1,[2] Mattel's access to eight boxes of Bryant originals for its forensic experts was extremely limited, at MGA and Bryant's request.   These documents, which include drawings and other materials that Bryant claimed supported his chronology of events, go to the heart of the issues to be tried in Phase 1 of this case.  Mattel's four experts, each of whom has a different special area of expertise,[3] made the most of their time, examining and non-

---

[2]   See Exh. 1 to the Declaration of Diane C. Hutnyan, Esq. ("Hutnyan Dec.")
[3]   See Discovery Master's August 30, 2007 Order, attached as Exh. 2 to the Hutnyan Dec., and In Camera Declarations for Mssrs. Cunningham, Flynn, and Rantanen, and Dr. Aginsky, attached as Exhs. Exhs. 3-6 to the Hutnyan Dec.

1   destructively testing[4] the thousands of documents as best they could, looking
2   broadly for erasures, alterations, or other potentially probative evidence. As a result
3   of that analysis, two of Mattel's experts drew important conclusions pertinent to
4   whether certain documents in the case were original drawings, as alleged by Carter
5   Bryant; whether they were traced; and/or whether they were traced from other
6   documents that could be identified. Their conclusions were based on examinations
7   under special lenses, special lighting, and under microscopes. Both of these experts
8   observed that what appeared to be pencil lines obscured some of the ink, or colored,
9   portions of the drawings, but they did not regard them as significant to their analysis
10  at the time, as the pencil lines that stuck out from under those sections of the
11  drawings were consistent with their other findings.

12         In rebuttal, MGA's two forensic "experts" -- Dr. Lyter and Mr. Kullman --
13  who had unlimited access to Bryant's documents, as well as the information
14  contained in Mssrs. Flynn's and Cunningham's roadmap to the small subset of
15  documents among the thousands that were significant to their analysis -- zeroed in
16  on these obscured pencil lines. They conducted reflected infrared and infrared
17  luminescence testing of the lines, and then developed a theory around the pencil
18  lines that conveniently only they now had access to. Bryant then freely sent these
19  key originals to MGA for use at Mssrs. Cunningham's and Flynn's depositions,
20  where the Mattel experts were asked to testify and draw conclusions about the
21  pencil lines, which of course they were unable to do since they could not see them.

22         After their depositions, each of Mattel's experts sought access to the originals
23  again so that they could also fully examine and photograph the pencil lines, as
24  MGA's experts had done. Bryant refused. Bryant and MGA hope to prevent

25

26   [4]   "Non-destructive testing" methods include examining the documents using
27  microscopes, magnifiers, light sources, scanners with special filters and measuring
     instruments in ways that do not alter the documents.
28

1  Mattel's experts from (1) ever fully examining that aspect of the drawings and those
2  portions of MGA's experts' reports that rely on that aspect of the drawings, and
3  (2) being able to photograph -- and show to the jury -- the evidence MGA's
4  "experts" claim exist and claim is so significant.

5      Unable to secure voluntarily the access that fairness requires, Mattel has
6  applied to the Discovery Master to order Bryant to make available the documents in
7  question for a period of two weeks. Consistent with the procedure established in
8  similar circumstances in this case, Mattel is simultaneously applying to this Court
9  for permission to file supplementary expert reports based on such access within
10  seven (7) days of the completion of the two-week access period. [5] It is even more
11  imperative that this Court hear this Application because MGA has stated that it
12  intends to challenge the Discovery Master's very authority to rule upon Mattel's
13  application to compel Bryant to make available the documents in question.[6] If
14  MGA's experts are permitted to opine about the significance of pencil lines, Mattel's
15  experts must be given the opportunity to fully examine this supposedly significant
16  evidence and supplement their reports to address this evidence.

17
18                              **ARGUMENT**
19

20      An *ex parte* application may be granted where, as here, "the moving party's
21  cause will be irreparably prejudiced if the underlying motion is heard according to
22  the regular noticed motion procedures" and "the moving party is without fault in

23
---
24  [5]  See Order dated March 19, 2008 extending the March 17, 2008 deadline for
25  service of expert report by MGA concerning Jacqueline Prince notary book
   (rejecting argument that application sought hypothetical ruling) attached as Exh. 21
26  to the Hutnyan Dec.
    [6]  See Email from Matthew Werdegar to Diane Hutnyan, dated April 8, 2004,
27  attached as Exh. 19 to the Hutnyan Dec.
28

07209/2463004.1

1 creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result
2 of excusable neglect." Mission Power Eng'g Co. v Continental Cas. Co.,
3 883 F. Supp. 488, 492 (C.D. Cal. 1995). A scheduling order may be modified where
4 there is "good cause" for the change. Fed. R. Civ. P. 16(b)(4); Johnson v.
5 Sacramento County, 2007 WL 127799 * 3 (E.D. Cal. 2007). These standards are
6 clearly met here.

7

8 **I. MATTEL WILL BE IRREPARABLY PREJUDICED BY A DENIAL**
9 **OF THIS *EX PARTE* APPLICATION OR IF IT IS HEARD THROUGH**
10 **REGULAR NOTICED MOTION PROCEDURES.**

11

12 Mattel's experts worked diligently to do as much testing as they could within
13 the limited time-frame of 35 days allowed by the Discovery Master, and they
14 prepared expert reports based on that analysis. However, as became apparent
15 during the depositions of Mssrs. Flynn and Cunningham, as well as from the rebuttal
16 reports prepared by Dr. Lyter and Mr. Kullman, defendants' experts had far more
17 extensive access to the documents than Mattel's experts, as well as the additional
18 tactical advantage of being able to focus on a much smaller subset of documents
19 identified in Mattel's reports. As a result, defendants' rebuttal reports included the
20 results and analysis of testing that Mattel's experts did not conduct, including
21 infrared luminescence and reflective infrared testing. Drs. Lyter and Kullman drew
22 a number of evidentiary conclusions from such tests, which Mattel's experts could
23 not comment on or refute because they were unable to conduct the same testing.
24 Without the opportunity to conduct additional testing and file a supplemental report
25 based on that testing, which will rebut defendants' experts' conclusions, Mattel will
26 be irreparably prejudiced at trial. Accordingly, Mattel's Application to file
27 supplemental reports is founded on "good cause." (Order, para. 4).

28

1        The unusual circumstances here -- the extreme 35-day limitation on Mattel's

2   access, which Bryant and MGA insisted upon; the unlimited access provided to

3   MGA's experts; and the inherent invisibility of the obscured pencil lines without

4   access and special testing -- have all worked to deprive Mattel of fair opportunity to

5   challenge Defendants' conclusions, rendering the playing field uneven.  For all

6   Mattel knows, the pencil lines Dr. Lyter and Mr. Kullman find so significant do not

7   even exist, or in fact cut against Lyter's and Kullman's conclusions.  Mattel has a

8   right to see this same evidence, explore it and fully address it in supplementary

9   expert reports.

10        In numerous circumstances, California courts have recognized the need to

11   safeguard the process governing expert testimony to assure fairness to both sides,

12   and accurate information to the trier of fact.  As the court stated in Phillips v.

13   Netblue, Inc., 2007 WL 528722 (N.D. Cal. 2007), "sitting in its capacity as

14   gatekeeper, the Court must ensure that an expert's testimony `both rests on a reliable

15   foundation and is relevant to the task at hand.'"  (quoting Daubert, 509 U.S. at 597).

16   In doing so, "[t]he trial court has broad discretion in admitting and excluding expert

17   testimony." Taylor v. Burlington Northern R. Co., 787 F.2d 1309, 1315 (9th Cir.

18   1986).  While these cases pertain to the reliability of expert testimony, the

19   fundamental principle is the same: the court must safeguard the trial process by

20   ensuring that the trier of fact has access to complete, reliable and credible expert

21   testimony.

22        In Netblue, the court rejected defendants' argument that the plaintiffs'

23   supplemental report should be disregarded because it was submitted after various

24   deadlines and events had passed.  The court found that "no prejudice was caused to

25   Defendants by the Supplemental Report's timing."  Id. at *2.  The could held that

26   since the Supplemental Report did "not add anything new" to the original expert

27   report "or fill-in any gaps in required information,"  id., its submission was

28   appropriate.  Notably, the court held that if the expert report "had actually been

1   deficient, and the Supplemental Report resolved those deficiencies, the proper
2   remedy by this Court would have been to give Defendants additional time to address
3   the new information. It would not be, as Defendants suggest, to ignore or strike the
4   Supplemental Report, strike the original Report, and exclude any testimony by [the
5   expert] at trial." Id.

6       Netblue is significant for two reasons. First, it recognizes the appropriateness
7   of filing supplemental reports, even if, as here, they are technically untimely.
8   Second, the court rejected the notion that exclusion of supplemental reports is
9   appropriate either where the report fleshes out existing information OR where it
10  addresses new issues, concluding that even in the latter situation, the appropriate
11  remedy would be to give the other party adequate opportunity to respond, not to
12  deny to the court and the jury relevant and important information.

13      Likewise, in Internet Specialties West, Inc. v. ISPWest, 2006 WL 4568796 *
14  4 (C.D. Cal. 2006), the court suggested that it would have been appropriate for
15  defendants to rebut new issues raised in a rebuttal report with a supplemental expert
16  report of their own, and could have sought permission to do so. The court further
17  rejected the notion that exclusion of rebuttal reports would be justified.

18      The Federal Rules authorize broad pretrial discovery based on the general
19  principle that litigants have a right to 'every man's evidence,' and that wide access to
20  relevant facts serves the integrity and fairness of the judicial process by promoting
21  the search for the truth." Id. (quoting Rivera v. NIBCO, Inc., 384 F.3d 822, 824 (9th
22  Cir. 2004). See also Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) ("broad right
23  of discovery is based on the general principle that litigants have a right to 'every
24  man's evidence'") (quoting United States v. Bryan, 339 U.S. 323, 331 (1950)).

25      Notably, embodied within litigants' right to conduct broad discovery is the
26  recognition that such discovery must be *meaningful*. See, e.g., Carr v. Pacific
27  Maritime Ass'n, 904 F.2d 1313, 1321 (9th Cir. 1990) (grievance and arbitration
28  procedures "conducted within an extremely constricted time frame and without

1  provisions for any meaningful discovery, were wholly inadequate to the task of
2  fairly adjudicating the individual or class claims . . . ."); United States v. Hempfling,
3  2008 WL 703809 * 9 (E.D. Cal. 2008) ("Government's prejudice continues with its
4  inability to conduct meaningful discovery to pursue its claims.").

5      While Mattel's expert reports are not deficient and reach appropriate
6  conclusions based on the testing that was feasible at the time, they nonetheless
7  require supplementing to respond to the panoply of conclusions Drs. Lyter and
8  Kullman reached based on the additional testing they were able to conduct. As in
9  Netblue and ISPWest, this court should recognize the appropriateness of filing such
10  a supplemental report, and grant Mattel leave to do so once Judge Infante grants
11  Mattel access to Bryant's original documents for additional non-destructive forensic
12  testing.  Denying Mattel's application here would unfairly prevent it from being able
13  to supplement its analysis of Bryant's documents or adequately respond to
14  defendants' rebuttal reports in ways that will irreparably prejudice the trial.

15      MGA itself has recognized as much in its own recent request for access to the
16  notary book of Jacqueline Prince for destructive testing, supposedly to "replicate"
17  the testing that Dr. Aginsky did (which is the subject of Mattel's pending Mattel
18  Inc's *Ex Parte* Application for Protective Order Preventing MGA's Destructive
19  Sampling of the Prince Notary Book due to MGA's efforts, unabated even now, to
20  go far beyond replication).  In MGA's Opposition to that Application, MGA argued
21  for an extension of time in which to file an expert report to allow defendants to
22  conduct the exact same testing as Mattel.  In that instance, MGA argued that since
23  Mattel was able to take some samples from Jacqueline Prince's notary book in order
24  to perform forensic ink testing, MGA should have "the right to perform the same
25  testing, under the exact same circumstances,"[7] and should be granted an extension of

26
27  _____
   [7]  See MGA's Opposition to Mattel, Inc.'s *Ex Parte* Application for Protective
   Order Preventing MGA's Destructive Sampling of the Prince Notary Book at 16-17
28  (footnote continued)

1    time to file its expert report to reflect the additional testing.  As defendants pointed
2    out there: "[t]he denial of the opportunity to test and challenge evidence imposes
3    irreparable prejudice."[8]  Here, Mattel seeks precisely that same opportunity.   If
4    MGA has the right to replicate any testing done by Mattel, Mattel surely has a
5    corresponding right to replicate testing done by MGA and to present those results to
6    the trier of fact.  Without the opportunity to conduct additional testing and file a
7    supplemental report based on that testing, which will allow full rebuttal of
8    defendants' experts' conclusions, Mattel will be irreparably prejudiced at trial.
9    Granting Mattel's request will not only help to level the playing field, but also will
10   provide the trier of fact a more complete analysis of these key documents.

11

12   **II.    THE COURT SHOULD GRANT MATTEL'S APPLICATION**
13   **BECAUSE MATTEL  DID NOT CREATE THE CIRCUMSTANCES**
14   **REQUIRING _EX PARTE_ RELIEF.**

15

16          The circumstances creating the need for relief were created by Bryant and
17   MGA, not Mattel.  The limitations placed on Mattel's experts' original review of the
18   materials were due to the 35-day limitation on Mattel's access, which was instituted
19   at Bryant's and MGA's urging.  The unlimited access MGA's un-Court-approved
20   experts were given -- despite the clear indications by the Discovery Master last fall
21   that he had concern about who was examining the key documents in this case, and

22   _____
23   ("All that MGA seeks is the opportunity to perform the _same_ testing performed by
     Mattel's expert, pursuant to the _same_ protocol employed by Mattel, so that it can
24   prepare a rebuttal expert report") (emphasis added) attached as Exh. 20 to the
     Hutnyan Dec.
25   [8]   _See_ MGA's _Ex Parte_ Application for an Order Extending the March 17
26   Deadline for MGA to Serve Its Rebuttal Expert Report Concerning Ms. Prince's
     Notary Book at 15 (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596
27   (1993)) attached as Exh. 22 to the Hutnyan Dec.

28

1 how they were doing it, was given by Bryant. The decision to develop a rebuttal
2 theory not based on the evidence presented in Mssrs. Flynn's and Cunningham'
3 reports, and supposedly relying on obscured pencil lines that could only be seen by
4 experts with sufficient access to the materials to do special testing, was Bryant's and
5 MGA's. Accordingly, Mattel satisfies the requirement set forth in <u>Mission Power</u>,
6 883 F. Supp. at 493, for establishing that the moving party is without fault or guilty
7 only of excusable neglect -- namely that the movant "used the entire discovery
8 period efficiently and could not have, with due diligence, sought to obtain the
9 discovery earlier in the discovery period." <u>Id</u>.

10 Indeed, to the extent that such pencil lines exist, are visible, and are material
11 to the opinions expressed in Mssrs. Flynn's and Cunningham's reports, as Dr. Lyter
12 and Mr. Kullman contend, MGA and Bryant have arguably created an obligation
13 pursuant to Fed. R. Civ. P. 26(e)(2) for Mattel's experts to investigate and
14 supplement their reports. Under that rule, "parties must supplement or correct their
15 experts' reports or deposition testimony if they learn these items are incomplete or
16 incorrect in some material respect." Rutter Group Practice Guide: Federal Civil
17 Trials and Evidence Ch. 11-A 2a.5 § 11:25 (citing <u>Walsh v. McCain Foods Ltd.</u>, 81
18 F.3d 722, 727 (7th Cir. 1996)). If Mattel's experts' inability to conduct infrared
19 luminescence and reflective infrared testing and the pencil lines such testing may
20 reveal are material to their conclusions, Mattel has a responsibility to conduct that
21 testing and supplement its reports.

22

23 **III.   DEFENDANTS HAVE NO CREDIBLE BASIS TO OBJECT TO THIS**
24 ***EX PARTE* APPLICATION.**

25

26 Once Judge Infante grants permission for Mattel to conduct additional
27 non-destructive testing of Bryant's original documents, defendants have no basis to
28 object to the filing of a supplemental report analyzing the results of such testing.

1  Indeed, there is no point to conducting the additional testing without the ability to
2  submit the results of that testing to the Court.  The issue for this Court, strictly
3  stated, is not whether access and testing should be allowed, but whether any testing
4  that is allowed by Judge Infante should in turn be available to aid the trier of fact;
5  that is, whether it is appropriate to permit Mssrs. Cunningham and Flynn to provide
6  supplemental analysis of the documents based on those testing results.  There is no
7  basis to deny Mattel that opportunity, and indeed, given the material omissions in its
8  current report, Mattel is obligated to provide such supplementation.  See Fed. R.
9  Civ. P. 26(e)(1).

10  It is the Court's duty to safeguard the trial process by ensuring that the trier of
11  fact has access to complete, reliable and credible expert testimony, and it does this
12  by safeguarding the process governing expert testimony.  As the court stated in
13  Phillips v. Netblue, Inc., 2007 WL 528722 (N.D. Cal. 2007), "sitting in its capacity
14  as gatekeeper, the Court must ensure that an expert's testimony 'both rests on a
15  reliable foundation and is relevant to the task at hand.'"  (quoting Daubert, 509 U.S.
16  at 597). In doing so, "[t]he trial court has broad discretion in admitting and
17  excluding expert testimony." Taylor v. Burlington Northern R. Co., 787 F.2d 1309,
18  1315 (9th Cir. 1986).

19  Rule 702 "allows witnesses to present testimony to the trier of fact based on
20  'scientific, technical, or other specialized knowledge' in order to assist the trier of
21  fact to understand the evidence or to determine a fact in issue." Universal Trading &
22  Inv. Co. v. Kiritchenko, 2007 WL 2141296 * 2 (2007) (quoting Fed. R. Evid. 702).
23  As a result of the limitations place on Mattel's experts' access to the pertinent
24  materials, their ability to help the trier of fact fully "understand the evidence or to
25  determine a fact in issue," Universal Trading, 2007 WL at * 2, has potentially been
26  compromised by the severe disparities in the degree of access afforded Mattel's and
27  MGA's experts to the evidence.  Similarly, MGA's experts' ability to educate the
28

MATTEL'S EX PARTE APPLICATION TO FILE SUPPLEMENTAL EXPERT REPORTS

1  trier of fact on these issues is compromised because they will not have the benefit of
2  having their opinions fully tested by Mattel's experts.

3      As noted earlier, whatever objections defendants proffer now,  they have
4  argued precisely the opposite in circumstances where extension of time limits to
5  allow for parity of testing would benefit them. In MGA's Opposition to Mattel Inc's
6  *Ex Parte* Application for Protective Order Preventing MGA's Destructive Sampling
7  of the Prince Notary Book, MGA argued that defendants should be allowed to
8  conduct the exact same testing as Mattel, arguing that "the issue is one of simple
9  fairness. Should MGA be granted the same right to test documents as Mattel? Or
10 should Mattel be allowed to impose a double standard and prevent MGA from
11 performing the very same forensic testing it performed just two months ago?  The
12 answer," MGA claimed, "is clear." (Id. at 1, 16-17) ("All that MGA seeks is the
13 opportunity to perform the *same* testing performed by Mattel's expert, pursuant to
14 the *same* protocol employed by Mattel, so that it can prepare a rebuttal expert
15 report.")) (emphasis supplied).

16     Having argued for parity in one circumstance, which would benefit
17 defendants, defendants cannot now credibly seek to deny Mattel the same equality
18 here.  Accordingly, Mattel should be permitted to file supplemental expert reports
19 based on additional forensic testing of Bryant's original documents.

20

21                              **CONCLUSION**

22

23     For the reasons stated, Mattel's *ex parte* Application to supplement the expert

24

25

26

27

28

1  reports of Mssrs. Flynn and Cunningham after they have had access to Carter

2  Bryant's original documents should be granted.

3

4  DATED:  April 8, 2008                    QUINN EMANUEL URQUHART OLIVER &
                                            HEDGES, LLP
5

6                                           By
7                                               Diane C. Hutnyan
                                                Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2463004.1