EXHIBIT 11

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 12

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 13

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3666

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

April 2, 2008

**VIA E-MAIL AND FACSIMILE**

Matthew E. Sloan, Esq.                      Matthew Werdegar, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP    Keker and Van Nest LLP
300 South Grand Avenue                      710 Sansome Street
Suite 3400                                  San Francisco, CA 94111
Los Angeles, CA 90071

Re:     Mattel v. Carter Bryant

Dear Matt(s):

I write about two related issues.

The first is to ask you to confirm that you will make available at Kullman's and Lyter's depositions the original Bryant documents and original ESDA films that pertain to the opinions they rendered and/or the reports they issued in this case. Specifically, we would expect access to every original document whose bates number was referenced in either of their reports and any others they relied upon that they may not have referenced. As Matt Sloan witnessed, MGA's examination of our experts was facilitated by the availability of these materials at their depositions.

The second is to request, pursuant to the June 20, 2006 stipulation on the record before Magistrate Judge Block, reasonable access for further non-destructive examination and imaging of the pertinent originals for Messrs. Flynn and Cunningham. It is clear from these experts' depositions that the brief time that they were permitted for non-destructive examination of the eight boxes of Bryant original documents last fall was too limited for them to do all the analysis

quinn emanuel urquhart oliver & hedges, llp

EXHIBIT **13**

PAGE **232**

Matthew E. Sloan / Matthew Werdegar
April 2, 2008

that they would normally be able to do with the evidence presented to them. Further, the Lyter and Kullman reports suggest that, having had the benefit of our narrowing down the eight boxes of original documents to a few hundred items, as well as the benefit of unlimited access to the materials generally, Dr. Lyter and Dr. Kullman had sufficient time to do certain non-destructive tests and imaging that Messrs. Flynn and Cunningham were unable to do and which apparently allowed Drs. Lyter and Kullman to develop opinions that cannot be fully assessed and tested without similar access by our experts.

For these reasons, we would like to request on behalf of Mr. Flynn one week of access to all the original documents he referred to in his report or that were referred to in the portions of Dr. Kullman's or Dr. Lyter's reports rebutting his report. We would also like to request on behalf of Mr. Cunningham one week of access to all the original documents he referred to in his report or that were referred to in the portions of Dr. Kullman's or Dr. Lyter's reports rebutting his report. Please let me know if you would voluntarily agree to such access.

I hope you will see the inappropriateness of denying this limited request. But to the extent you are unwilling to produce these original documents for examination and imaging as requested, please also consider this letter notice that we will be filing an *ex parte* application before Judge Larson to allow for further expert reports and an *ex parte* application before the Discovery Master to compel the originals.

Very truly yours,

Diane C. Hutnyan

2

EXHIBIT __13__

PAGE __233__

EXHIBIT 14

LAW OFFICES
# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

MATTHEW M. WERDEGAR
MWERDEGAR@KVN.COM

April 3, 2008

### VIA FACSIMILE & U.S. MAIL

Diane C. Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:   Mattel v. Bryant

Dear Diane:

I am writing in response to your letter dated April 2, 2008 regarding certain of Carter
Bryant's original documents.

Mr. Bryant is willing to accommodate your request that he make available at Bob
Kullman's and Al Lyter's depositions the Bryant original documents that these experts
referenced or relied upon in their expert reports. As for the original ESDA films prepared by
these experts, you will have to obtain MGA's approval, as we do not have custody of those
materials.

The second request in your letter, that Mr. Bryant make certain of his original documents
available to Mattel and its experts yet again for examining and testing, however, is inappropriate
and unacceptable for a litany of reasons.

First, fact discovery closed more than two months ago. *See* Order Re Status Conference
dated Oct. 31, 2007 [Docket No. 1104]. Moreover, expert discovery, absent any agreement
between the parties to extend the time within which certain expert depositions may be conducted,
is also now closed. *See id.* Thus, your request is exceedingly untimely. Indeed, your
colleagues, when it suited Mattel's litigation purposes, have argued vociferously that the
discovery cut-offs ordered by the Court are firm cut-offs, and that no discovery motions, much
less additional discovery, is permitted after those cut-offs. *See, e.g.*, Mattel, Inc.'s *Ex Parte*
Application to Strike Carter Bryant's Motion to Compel Responses to Discovery Requests, dated
Feb. 12, 2008. The fact that Mattel chose to wait for more than two weeks after receiving Mr.
Lyter's and Mr. Kullman's reports before raising this issue only adds to the tardiness of Mattel's
request, and compounds the prejudice to Mr. Bryant of such intrusive additional fact and expert
discovery on the eve of trial.

EXHIBIT __14__

PAGE __234__

414571.01

Diane C. Hutnyan, Esq.
April 3, 2008
Page 2

Second, Mattel and its experts already have had ample opportunity to inspect and test Mr.
Bryant's original documents. As you are well-aware, in his August 31, 2007 Order the
Discovery Master granted Mattel 35 days "for the expert examination and testing of the materials
requested for the preparation of its initial expert reports[.]" Aug. 31, 2007 Order, at ¶ 4. Mattel
took possession of Mr. Bryant's originals last Fall, and retained possession of them for the full
35 days granted by the Discovery Master. The August 31, 2007 Order also expressly permitted
Mattel to request an extension of the 35 day inspection period "upon a showing by Mattel of
good cause by further Order of the Discovery Master." *Id.* at ¶ 4. Yet at no point during the 35-
day period that it had possession of Mr. Bryant's documents did Mattel indicate that it required
more time for its experts to conduct their testing. Instead, Mattel simply returned the documents
on the 35th day.

Months later, on December 13, 2007, Mattel requested additional time to inspect and test
Mr. Bryant's original documents. Although Mr. Bryant was no longer under any obligation to
make those documents available to Mattel—having fully complied with the August 31, 2007
Order, and Mattel having failed to seek any order extending its time to perform its analysis of the
documents—Mr. Bryant agreed to make his documents available for a second time. Specifically,
Mr. Bryant agreed to make the documents available for more testing by Mattel's experts for
another four days, which was all of the additional time that Mattel requested for its testing (I note
that Mattel originally said that it would need only a day or two to conduct the additional testing,
but then expanded its request to four days, which Mr. Bryant fully accommodated). At the end
of this four-day period, Mattel returned Mr. Bryant's documents, again without any suggestion
that its experts needed more time to complete their work.[1]

In short, Mattel's experts have had more than seven weeks to perform their testing and
analysis of Mr. Bryant's documents, and Mattel never requested additional time from Mr. Bryant
or the Discovery Master. Thus, the assertion in your letter that the time available to them was
"too limited for them to do all the analysis they normally would be able to do" is simply false.
The truth of the matter is that Mattel's experts simply chose not to perform certain tests when
they had the opportunity to do so. Having made that choice, Mattel cannot now seek to reopen
discovery in an effort to fix its expert's deficient reports.

Third, in your letter you suggest that Mattel is going to seek leave from the Court, via an
*ex parte* application, to allow for further expert reports. Any such *ex parte* application would be
entirely inappropriate. The Court's scheduling orders in this case are clear that there are to be
two, and only two, rounds of expert reports – opening reports and rebuttal reports. *See, e.g.,* Oct.
31, 2007 Order. There is no provision in the Court's schedule for any "reply" reports under any
circumstances. I assume that you are not suggesting that all parties should be permitted to file
reply expert reports on any issue that they failed to address in their experts' original reports, but

---

[1] All of this, of course, was in addition to the three separate occasions, spanning some five full
days, that Mr. Bryant made his documents available to Mattel's counsel for review and
inspection, during which Mattel photographed, videotaped, and 3D-digitally scanned many, if
not all, of the documents.

EXHIBIT **14**

PAGE **235**

Diane C. Hutnyan, Esq.
April 3, 2008
Page 3

rather that only Mattel should have this unsanctioned opportunity. Obviously, such a one-sided
approach to expert discovery would be unfair and prejudicial.

Lastly, with respect to your threatened *ex parte* application to the Discovery Master for
leave to reopen fact and expert discovery and to compel further inspection of Mr. Bryant's
documents, you should be aware that there are numerous motions currently before the Discovery
Master, many of which have been pending for months. All of these motions involve important
and pressing discovery issues, the resolution of many of which are necessary for Mr. Bryant and
MGA adequately to prepare for trial. Any effort by Mattel to "jump the line" and obtain an
expedited hearing on this issue, especially given Mattel's delay in raising this issue and the lack
of merit of Mattel's position, therefore would be inappropriate and contrary to the parties'
ongoing efforts to prioritize the matters before the Discovery Master.

In light of the foregoing, I trust Mattel will see the inappropriateness of further pursuing
this issue. But please note that if Mattel does insist on doing so, Mr. Bryant will seek to recover
any and all fees and costs he is forced to incur in responding to Mattel's baseless demand.

Very truly yours,

Matthew Werdegar

MMW/mls

cc:     Matthew E. Sloan

EXHIBIT __14__

PAGE __236__

414571.01

LAW OFFICES
# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

April 3, 2008

| To | Telephone | Facsimile |
|---|---|---|
| Diane C. Hutnyan | 213/443-3000 | 213/443-3100 |
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | | |

| cc: | | |
|---|---|---|
| Michael E. Sloan | 213/687-5000 | 213/687-5600 |
| Skadden Arps Slate Meagher & Flom | | |

| From | Telephone | Code |
|---|---|---|
| Matthew Werdegar | 415-391-5400 | **6647/mls** |

Re   **Bryant v. Mattel: (ED) 2:04-cv-09049-SGL-RNB**

### Number of Pages (Including Cover): 4

## COMMENTS

Please see attached.

Operator _____                              Time Sent _____

## IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

EXHIBIT 14
PAGE 237

393005.01

EXHIBIT 15

## Andrea Hoeven

| | |
|---|---|
| **From:** | Sloan, Matthew E [Matthew.Sloan@skadden.com] |
| **Sent:** | Friday, April 04, 2008 6:05 PM |
| **To:** | Diane Hutnyan |
| **Cc:** | Matthew Werdegar; Lanstra, Allen L (LAC); Weinstein, Ryan (LAC) |
| **Subject:** | Sloan 4/4/08 Letter to D. Hutnyan |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | lac2-511429-1.pdf |

Diane — Attached please find MGA's response to your letter to me, dated April 2, 2008.

Thanks, Matt

**Matthew E. Sloan**
**Skadden, Arps, Slate, Meagher & Flom LLP**

**Los Angeles Office**
*300 South Grand Ave., Suite 3400*
*Los Angeles, CA 90071*
*T: (213) 687-5276 | F: (213) 687-5600*
*Main: (213) 687-5000*
*E: matthew.sloan@skadden.com*

--------------------------------------------------------------------------
********************************************************* To ensure compliance with Treasury
Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice
contained in this message was not intended or written to be used, and cannot be used, for the purpose of
(i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law
provisions or (ii) promoting, marketing or recommending to another party any tax-related matters
addressed herein. **************************************************
********************************************************* This email and any attachments
thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged
and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly
prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and
permanently delete the original copy and any copy of any email, and any printout thereof. Further
information about the firm, a list of the Partners and their professional qualifications will be provided
upon request. **************************************************
==================================================================================

EXHIBIT ___15___

PAGE ___238___

4/7/2008

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
2 1 3-687-5276
DIRECT FAX
2 1 3-687-5600
EMAIL ADDRESS
MATTHEW.SLOAN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

April 4, 2008

### VIA FACSIMILE AND EMAIL

Diane C. Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

        RE:    Bryant v. Mattel, Inc.

Dear Ms. Hutnyan:

        I am writing in response to your letter of April 2, 2008, requesting that MGA (1) make the original Bryant documents and the original ESDA lifts prepared by Dr. Lyter and Mr. Kullman available at their upcoming depositions; and (2) agree to allow Mattel's experts, Lloyd Cunningham and William Flynn, an additional week each to perform examinations of the original Bryant documents relied upon by Dr. Lyter and Mr. Kullman in their expert reports. As we have informed you before by email, we have no objection to your first request, and with Mr. Bryant's assent (which his counsel has already granted), we will make available all the original Bryant drawings currently in Skadden's possession, as well as the original ESDA lifts on which Mr. Kullman and Dr. Lyter relied in their reports, at their upcoming depositions on April 8 and April 17, 2008.

        MGA vehemently opposes your unjustified and untimely request to conduct further expert examination of the Bryant documents, however, and joins Carter Bryant's objections to your request. Quite simply, Mattel's experts had ample time to conduct their examinations last fall and never asked for additional time for examinations. Having bypassed that opportunity last year, Mattel cannot now, on the eve of trial, seek special accommodation to correct the deficiencies in its expert

EXHIBIT ___15___

PAGE ___239___

Diane C. Hutnyan, Esq.
April 4, 2008
Page 2

reports which Mattel only learned about as a result of Dr. Lyter and Mr. Kullman's
expert reports, and MGA's recent depositions of Mr Cunningham and Mr. Flynn.

MGA agrees with each of the reasons opposing Mattel's request set forth in
Matthew Werdegar's letter to you, dated April 3, 2008. In addition, I note that
contrary to the representation in your letter that Mattel's experts did not have
sufficient time with the documents at issue, Mr. Flynn testified at his deposition just
last week that he had "certainly" had enough time to draw the conclusions he drew in
his report. (Tr. at 229.) Accordingly, by his own admission, Mr. Flynn does not
need further time to test the documents. Similarly, Mr. Cunningham testified at his
deposition that the expert report submitted by Dr. Lyter "has nothing to do with my
findings and conclusions as set forth in my Rule 26 report," and Dr. Kullman's report
"has no bearing on my direct testimony." (Rough Tr. at 193, 198.) Accordingly,
your rationale that additional testing time is needed in order for Mattel's experts to
fully assess and test the rebuttal opinions of Dr. Lyter and Mr. Kullman is simply
unfounded.

It is undisputed that Mattel's experts spent weeks with the documents last fall
and that Mattel never requested additional time for testing (with the exception of the
four days mentioned in Mr. Werdegar's letter), despite the fact that the August 31,
2007 Order of the Discovery Master expressly provided Mattel the ability to request
such an extension upon a showing of good cause. Expert discovery is now closed.
Accordingly, your request to re-open discovery for additional testing is inappropriate
and unwarranted.

Further, your suggestion that Mattel will seek to re-open discovery by means
of an *ex parte* application is wholly improper. An *ex parte* application may be filed
only where the evidence shows that the moving party's cause will be irreparably
prejudiced if the motion is heard according to the regular noticed motion procedures,
and the moving party is without fault in creating the crisis that requires *ex parte*
relief. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D.
Cal. 1995). For numerous reasons well known to Mattel, including among other
things the extensive list of motions already pending before the Discovery Master,
your request for additional expert analysis clearly does not meet this *ex parte*
standard. Thus, should Mattel seek to re-open discovery by means of an *ex parte*

EXHIBIT    15

PAGE    240

Diane C. Hutnyan, Esq.
April 4, 2008
Page 3

application, MGA reserves the right to seek sanctions, including the recovery of all
fees and costs incurred in opposing such an *ex parte* application, for wrongly
invoking the extraordinary *ex parte* procedures.

Very truly yours,

Matthew E. Sloan

cc:     Matthew Werdegar

EXHIBIT __15__

PAGE __241__

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144

TELEPHONE No.: (213) 687-5000
FACSIMILE No.: (213) 687-5600

DIRECT FACSIMILE No: 213-621-5276
EMAIL: matthew.sloan@skadden.com

### FACSIMILE TRANSMITTAL SHEET

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

| | | | |
|---|---|---|---|
| NAME: | Diane C. Hutnyan, Esq. | | |
| FIRM: | Quinn Emanuel | | |
| CITY: | Los Angeles | DATE: | April 4, 2008 |
| TELEPHONE No.: | 213-443-3000 | | |
| FACSIMILE No.: | 213-443-3100 | | |
| FROM: | Matthew E. Sloan | FLR/RM: | Suite 3400 |
| | | DIRECT DIAL: | 213-687-5276 |

TOTAL NUMBER OF PAGES INCLUDING COVER(S):          4

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

IF THIS TRANSMISSION IS UNCLEAR OR INCOMPLETE, PLEASE CONTACT THE FACSIMILE DEPARTMENT AT 213-687-5276. WHEN TRANSMITTING TO OUR MACHINES, PLEASE INCLUDE YOUR COVER SHEET AND NUMBER ALL PAGES CONSECUTIVELY

MESSAGE: Re: Mattel request for further examination of the Bryant Documents.

EXHIBIT     15

PAGE     242

EXHIBIT 16

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3666

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

April 6, 2008

VIA E-MAIL AND FACSIMILE

Matthew E. Sloan, Esq.                    Matthew Werdegar, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP  Keker and Van Nest LLP
300 South Grand Avenue                    710 Sansome Street
Suite 3400                                San Francisco, CA 94111
Los Angeles, CA 90071


Re:     Mattel v. Carter Bryant


Dear Matt(s):

I have received your April 3 and April 4 letters denying our request for reasonable access for further non-destructive examination and imaging of the pertinent originals for Messrs. Flynn and Cunningham. We disagree with the points in each of your letters.

As indicated in my correspondence of April 2, we intend to file an *ex parte* application before Judge Larson to allow for further expert reports and an *ex parte* application before the Discovery Master to compel the requested access to the originals. We plan to file the motions on Monday, April 7, 2008, for a hearing time and date TBD. We will let the Court know that you both oppose. If you care to fulfill your meet-and-confer obligations, please let me know.

Please note that if we are not permitted to replicate the testing done by Messrs. Kullman and Lyter, we will move to exclude the portions of their reports that relied on that testing.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan

EXHIBIT ____ 16

PAGE ____ 243

Matthew E. Sloan / Matthew Werdegar
April 6, 2008

Very truly yours,

Diane C. Hutnyan

20078/2461446.1

2

EXHIBIT __16__

PAGE __244__

EXHIBIT 17

## Andrea Hoeven

| | |
|---|---|
| **From:** | Sloan, Matthew E [Matthew.Sloan@skadden.com] |
| **Sent:** | Thursday, April 03, 2008 7:37 PM |
| **To:** | Diane Hutnyan |
| **Cc:** | Weinstein, Ryan (LAC); Lanstra, Allen L (LAC) |

**Subject:** RE: Kullman's report.

Diane — Sorry for the delay. I didn't have a chance to look into this until today.

Upon reviewing the report further, our understanding is that Mr. Kullman anticipated preparing a VSC print with green and yellow highlighting as a demonstrative exhibit for trial, but no such print was ever prepared. Therefore, there is nothing for Mr. Kullman to produce. We apologize for the confusion. Mr. Kullman has indicated that this sentence should have been deleted from the the final report and his failure to do so was an oversight. Mr. Kullman, accordingly, intends to prepare an amended report deleting this sentence as well as amending the erroneous references to "March 17, 2007" on the top of each page. Although Mr. Kullman may have made other VSC prints, to our knowlege he did not prepare green and yellow highlights on these prints. More importantly, he did not "rely" or consider these prints as a basis for his ultimate opinion, so they are not responsive to Mattel's document requests and MGA has no obligation to produce them under the expert stipulation.

I hope this answers your questions.

Thanks,

Matt

---

**From:** Diane Hutnyan [mailto:dianehutnyan@quinnemanuel.com]
**Sent:** Thursday, April 03, 2008 3:41 PM
**To:** Weinstein, Ryan (LAC); Sloan, Matthew E (LAC)
**Cc:** Lanstra, Allen L (LAC); Michael T Zeller
**Subject:** RE: Kullman's report.

Gentlemen:

I am still waiting for these attachments, which were never served on us. MGA's continuing failure to serve them are causing Mattel prejudice. Please send them to me this afternoon, or let me know what is causing the trouble and when I will receive them.

Thank you.

---

**From:** Diane Hutnyan
**Sent:** Wednesday, April 02, 2008 4:30 PM
**To:** 'Weinstein, Ryan'; 'Sloan, Matthew E (LAC)'
**Cc:** 'Lanstra, Allen L (LAC)'
**Subject:** RE: Kullman's report.

Thank you.

EXHIBIT __17__

PAGE __245__

4/7/2008

**From:** Weinstein, Ryan [mailto:Ryan.Weinstein@skadden.com]
**Sent:** Wednesday, April 02, 2008 4:29 PM
**To:** Diane Hutnyan; Sloan, Matthew E (LAC)
**Cc:** Lanstra, Allen L (LAC)
**Subject:** RE: Kullman's report.

Diane -- we're looking into this now and will provide any missing attachments ASAP.

---

**From:** Diane Hutnyan [mailto:dianehutnyan@quinnemanuel.com]
**Sent:** Wednesday, April 02, 2008 3:31 PM
**To:** Sloan, Matthew E (LAC)
**Cc:** Weinstein, Ryan (LAC); Lanstra, Allen L (LAC)
**Subject:** RE: Kullman's report.

Hi,

Have heard nothing on this. Could someone please send these to me right away? Thanks

---

**From:** Diane Hutnyan
**Sent:** Tuesday, April 01, 2008 4:58 PM
**To:** 'Sloan, Matthew E'
**Subject:** Kullman's report.

Hi again. I have checked around for the green- and yellow-highlighted "attachments" referenced in Kullman's report (p. 3, VSC paragraph) and have been unable to find them. I checked with my team and we do not think they ever came in. Could you please send them to me? Thanks

Diane Cafferata Hutnyan, Esq.
**quinn emanuel urquhart oliver & hedges llp**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3666
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: dianehutnyan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT __17__

PAGE __246__

*************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of

(i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ***************************************************** *********************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. *****************************************************

-------------------------------------------------------------------------------
***************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ***************************************************** *********************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. *****************************************************

EXHIBIT **17**

PAGE **247**

4/7/2008

EXHIBIT 18

## Andrea Hoeven

| | |
|---|---|
| **From:** | Sloan, Matthew E [Matthew.Sloan@skadden.com] |
| **Sent:** | Friday, April 04, 2008 6:42 PM |
| **To:** | Diane Hutnyan |
| **Cc:** | Weinstein, Ryan (LAC); Lanstra, Allen L (LAC) |
| **Subject:** | Amended Kullman Report |

**Attachments:** lac2-511432-1.pdf

Diane  – Attached please find a faxed version of the amended report of Robert Kullman. To my knowledge, the original report has only been amended in two minor respects. First, the sentence beginning, "In the attachments, areas of interest.........................." on p. 3 of the report has been deleted. In addition, the date on the top of each page has been corrected to read "March 17, 2008" and the notation "[Amended 4-04-08]" has been added.  We will bring a photocopied (non-faxed) version of the original to the depositon on Tuesday.

Let me know if you have any questions.

Would you also please let me know the location and time for the April 8 and April 17 depositions of  Kullman and Dr. Lyter.

Thanks,

Matt

***Matthew E. Sloan***
***Skadden, Arps, Slate, Meagher & Flom LLP***

**Los Angeles Office**
*300 South Grand Ave., Suite 3400*
*Los Angeles, CA 90071*
*T: (213) 687-5276 | F: (213) 687-5600*
*Main: (213) 687-5000*
*E: matthew.sloan@skadden.com*

--------------------------------------------------------------------------
*********************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ****************************************************
*************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided

EXHIBIT **16**

upon request. **************************************************

EXHIBIT 18

PAGE 249

4/7/2008

04/04/2008 FRI 15:36  FAX 5173495538 Speckin Forensic Labs                     @002/007

*Speckin Forensic Laboratories*
2105 UNIVERSITY PARK DRIVE, SUITE A
OKEMOS, MICHIGAN 48864
517-349-3528 • FAX 517-349-5538

20040202

LEONARD A. SPECKIN
RETIRED DOCUMENT ANALYST

MICHAEL J. SINKE
LATENT PRINT SPECIALIST
CRIME SCENE RECONSTRUCTION
FORENSIC DOCUMENT ANALYST

ROBERT D. KULLMAN
FORENSIC DOCUMENT ANALYST

LARRY A. DALMAN
COMPUTER RECOVERY SPECIALIST

KARL V. EBNER Ph.D.
FORENSIC TOXICOLOGIST

ERICH J. SPECKIN
FORENSIC DOCUMENT ANALYST
INK DATING SPECIALIST

ROGER J. BOLHOUSE MBA
LABORATORY DIRECTOR
CRIME SCENE RECONSTRUCTION
FORENSIC ANALYST & CONSULTANT

MARGO A. SCARPETTA Ph.D.
DNA ANALYST & CONSULTANT

DAVID G. TOWNSHEND M.S.
FORENSIC FIREARMS EXAMINER

March 17, 2008

RICHARD L. BRUNELLE
RETIRED INK DATING CONSULTANT

ANN E. CHAMBERLAIN M.S.
SEROLOGIST
DNA ANALYST & CONSULTANT
CRIME SCENE RECONSTRUCTION
BLOODSTAIN PATTERN ANALYST

LAURENCE R. SIMSON M.D.
FORENSIC PATHOLOGIST

JAY A. SIEGEL Ph.D.
ANALYTICAL CHEMIST

JASON S. HARNER B.S.
FORENSIC CHEMIST

Mr. Matthew E. Sloan
Mr. Ryan Weinstein
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:  Carter Bryant v. Mattel
     Rule 26 Rebuttal Expert Report

Dear Mr.'s Sloan and Weinstein:

I received and considered the following evidence for examination in my office in connection with this case:

Seven boxes of original Carter Bryant Production documents, including;
 – Original sheets of tracing paper containing pencil and ink drawings and
   corresponding to bates numbered documents – BRYANT 00193 - 00209, BRYANT
   00212 and 00213
 – Various individual documents containing pencil and ink drawings and corresponding
   to bates numbered documents –BRYANT 00192, 00140, 00176, 00177, 00179 –
   00184, 00232, 00235 and 00237.
 – The pages of an original Pen-Tab Perforated Notebook that correspond to bates
   numbered documents BRYANT 01589 – 01624.
 – The pages of an original Pen-Tab Spiral Ring Notebook that correspond to bates
   numbered documents BRYANT 01625 – 01665.
 – Original multi-colored drawings on poster board corresponding to bates numbered
   documents BRYANT 00220, 00221, 00222, 00224, 00225, 00226, 00227, 00228,
   00231, 00233 and 00234.

Machine copies of bates numbered documents BRYANT 00001 – BRYANT 01721, BRYANT
2692 and BRYANT 5025.

Rule 26 expert reports and exhibits of William Flynn, Lloyd Cunningham, Valery Aginsky, and
Walter Rantanen and "corrected" pages 5 and 6 of William Flynn's expert report.

Carter Bryant's deposition testimony, Volumes I, II and III.

EXAMINATION TASK:

My examination task was to determine if the conclusions drawn by Mr. Flynn, Mr. Cunningham and Mr.
Rantanen in their expert reports are consistent with the observable forensic evidence.

I have not evaluated the ink tests performed by Valery Aginsky on Ramona Prince's notary book as part of
my examinations, nor have I performed chemical ink testing or sampling of any kind.

EXHIBIT __18__

PAGE __250__

04/04/2008 FRI 15:36  FAX 5173495538 Speckin Forensic Labs                                    ☒003/007

Report 20040202 [AMENDED 4-04-08]
March 17, 2008
Page 2

PROCEDURES, OBSERVATIONS, AND RESULTS:

I assessed the documents submitted using my education, training, and experience in forensic document analysis. At all times during the examinations that I conducted, I adhered to techniques and procedures that are generally (if not universally) accepted in the relevant scientific community.

<u>Initial Examination</u>

The documents submitted were written on several different types of paper and my initial examinations revealed that many of the documents contained visible but not necessarily discernable impressions.

<u>ESDA Examinations</u>

I processed most of the mixed media drawings (Bryant 00220-00234), most of the drawings on transparent tracing paper (scattered numbers, but largely between Bryant 00192-00216), the pages from the notebooks (Bryant 01589-01624 and Bryant 01623-01665), and several other pages on the ESDA instrument. This instrument is used to detect the presence of impressed writing on a document. The ESDA is a non-destructive examination tool that uses the reaction between humidity and electricity to develop the impressions in paper with toner-coated beads in order to create a film that can be read. The examiner can use this instrument to determine what was written on top of the page being processed. This instrument is a generally (if not universally) accepted tool used in forensic science. I adhered to the procedures set forth by the manufacturer of the instrument and the training I received in the use of the instrument. The procedures I employed are generally accepted as appropriate in the field of forensic document examination.

Many of the documents processed had no detectable impressions or had impressions that could not be linked to a specific source. The chart below summarizes some of the documents that yielded impressions and the likely sources of those impressions.

| BRYANT # Processed | Source of Impressions by BRYANT # |
|---|---|
| 00178 | 00194 |
| 00186 | 00194 |
| 00190 | 00177 |
| 00192 | 00208 and 00212 |
| 00194 | 00ZZZ |
| 00196 | 00233 |
| 00198 | 00204 (top half) |
| 00203 | 00200, 00240, and 00359 |
| 00211 | 00193 |
| 00218 | 00193 |
| 00235 | 00236 |
| 00237 | 00228 |
| 00970 | 00962 (left figure) |
| 01016 | 00243 and 01100 |
| 01118 | 01015 |
| 01246 | 01100 |
| 01247 | 01098 |
| 01647 | 05025 (in reverse) |
| 01648 and 00179 | 02692 |

The ESDA tests indicate that Bryant 05025, Bryant 02692 and Bryant 00179 -- 00182 were created within close proximity of one another and within the same Pen-Tab notebook.

EXHIBIT __18__

PAGE __251__

Report 20040202 [AMENDED 4-04-08]
March 17, 2008
Page 3

### Microscopic Examinations

First, my microscopic examinations confirmed that many of the documents were created from one another or from the same model. Below is a partial list of the documents included in this category:

- Bryant 00194 and 00222; Bryant 00198 and 00204; Bryant 00199 and 00220; Bryant 00201 and 00231; Bryant 00204 and 00226; Bryant 00206 and 00224; along with Bryant 00213 and 00227.

I conducted a microscopic examination on the mixed media drawings (Bryant 00220-00234) and the tracing paper documents to determine if a sequence for the drawings could be established. If the tracing paper had been laid over a finished drawing and a tracing made of the finished drawing, as Mr. Flynn concludes, I would expect to find color from the finished drawing offset onto the back of the tracing paper. I only found evidence of color offset on the back of the tracing paper on one document. This document is Bryant 00232 and likely came as offset from Bryant 00225. The evidence of the offset color on the back of Bryant 00232 is consistent with Carter Bryant's testimony. The evidence is clear on this document of the offset, specifically on the reverse side of the lines where the pressure was the greatest while tracing. The documents that were similar to the mixed media drawings were all examined visually and microscopically on the reverse for offset by tracing. No other tracing paper documents showed any evidence of this type of offset from tracing.

The second examination I conducted was to determine if any faint or erased lines were present in either the tracing paper or the mixed media drawings. I used two methods to conduct these examinations. First, along with visual and microscopic examinations, I used the capture/mix image capabilities of the Video Spectral Comparator 2000 (VSC2000). The VSC2000, among other things, uses ultraviolet light and infrared analysis techniques to evaluate and compare inks and/or latent chemicals on documents along with capabilities to store and mix documents to determine if they superimpose. The second method involved computer scanning and mixing of images. Using the VSC2000, first the image of the mixed media was captured, a digital negative was made from that image (black turned to white and white turned to black) and the image from the tracing paper in black was superimposed (mixed) with the negative at various alignments (including overlapping) to show the similarities and proximity of faint lines to existing lines in the tracing paper. While the computer scanning method is similar to the VSC2000 method, instead of using a negative to superimpose the two images of interest, the images are shown in a series. Each set of documents being compared is shown through a series of images that get closer and closer to overlapping to show the areas of interest and their relative positions to one another.

The majority of the mixed media drawings contained faint lines obscured by erasures, coloring over, or similar method. In every case, the faint lines in the mixed media drawings matched with the lines from the tracing paper sketches/drawings. I further observed that the faint lines appearing in the mixed-media drawings were not visible to the naked eye through tracing paper. It therefore follows that a person overlaying tracing paper on top of the mixed media drawings could not have traced these faint lines. Instead, a person would have traced the far darker, more visible lines. This also makes logical sense; a person tracing a sketch would not trace lines that he had erased or colored over. The forensic evidence therefore indicates that the mixed-media drawings were traced from the tracing paper sketches/drawings, rather than vice versa, which is consistent with Mr. Bryant's testimony.

Below is a brief description of the documents that show this evidence:

EXHIBIT 18

PAGE 252

Report 20040202 [AMENDED 4-04-08]
March 17, 2008
Page 4

| Tracing paper (Bryant #) | Mixed-media (Bryant #) | Areas of Evidential Value |
|---|---|---|
| 00194 | 00222 | Line between hems at bottom of skirt of third doll<br>Missing upper crease in skirt of third doll<br>Corner of pant cuff on upper left leg of second doll<br>Crease in cuff left side of left leg of second doll |
| 00199 | 00220 | Left side of doll's left leg<br>Left side of doll's right leg |
| 00201 | 00231 | Two lines between sock and buckle on doll's left leg<br>Two lines between sock and buckle on doll's right leg<br>Vertical line on shoe near buckle |
| 00201 | 00230 | Left and right vertical lines of skirt |
| 00204 | 00226 | Triangle shaped object on right side bottom of vest |
| 00206 | 00224 | Area at bottom of pant leg on left leg<br>Straight lines in area of crease in lower left leg |
| 00213 | 00227 | Lines of offset in hem at bottom of shirt on left and right<br>Vertical line between two lines of hem on left of skirt |

At the time of trial, I anticipate using a series of each type of demonstrative mentioned above to show the evidence observed.

In a few instances (including one where the sequence could not be established using the methods above), the tracing paper contains both ink (darker in document) and pencil (lighter in document). These examples include: Bryant 00201 / 00231; Bryant 00204 / 00226; and Bryant 00208 / 00233 (sequence could not be established by other means). In these examples, where there is a divergence in the forms in the tracing paper, the mixed media drawing lines follow the lines of the ink in the tracing paper and not the pencil. This is a further indication of the tracing paper drawings being done before the mixed media drawings. On the tracing paper, it is more logical that the pencil was on the paper first and the ink was added and used to create the desired appearance of the finished product. The opposite scenario (if the ink were there and bold, to outline the areas in pencil that is faint) does not logically fit. Therefore, since the mixed media and the ink portions of the tracing paper line up, and two of the above examples (Bryant 00201-00231 and Bryant 00204-00226) were already established, it is more likely that Bryant 00233 (mixed-media) was created from the pen outline in Bryant 00208 (tracing paper). This is the same manner that shows the other drawings (Bryant 00201-00231 and Bryant 00204-00226) were created as well.

When the results of the above examinations and methods are combined and put in series, a distinct pattern can be seen as to the manner that the drawings progressed from one to the next by using one as a model for the next. The first distinct stage seen is the basic form of a doll (Bryant 00186 for example); from that form a more detailed version typically including clothing was created also on tracing paper (Bryant 00194 for example); culminating in several instances with the mixed media type drawings (Bryant 00222 for example). Below is a chart of the flow of the documents that can be established to show the progression of the concept:

EXHIBIT ___18___

PAGE ___252___

Report 20040202 [AMENDED 4-04-08]
March 17, 2008
Page 5

| Form | Tracing paper with clothes | Significant detail typically mixed media |
|---|---|---|
| (Bryant #) | (Bryant #) | (Bryant #) |
| 00186 | 00194 | 00222 |
| 00178 | 00194 | 00222 |
| 00196 (in reverse) | ---- | 00233 |
| 00198 | 00204 | 00226 |
| 00203 | ---- | 00240 |
| 00211 | 00193 | ---- |
| 00218 (hair) | 00193 (hair) | ---- |
| ---- | 00237 | 00228 |
| 00970 | 00962 | ---- |
| 01016 | 00243 | ---- |
| 01118 | 01015 | ---- |
| 01246 | 01100 | ---- |
| 01247 | 01098 | ---- |

EXAMINATIONS OF PAGES REMOVED FROM NOTEBOOKS (BRYANT 00179-00182):

Impressions were found of two sketches (Bryant 00179 and Bryant 00182) into pages still in the notebook (Bryant 01648 and Bryant 01647). The removed pages also showed evidence of being written on top of each other, probably while still in the notebook.

No evidence exists that Bryant 00179-00182 were used as a model to trace or create any of the submitted drawings or sketches and they were not traced or created from any of the submitted documents.

COMMENTS ON THE REPORT OF WILLIAM FLYNN:

Mr. Flynn states that the reverse side of Bryant 00199 contains remnants of offset from Bryant 00220 that was transferred while tracing Bryant 00199 from Bryant 00220. I performed a complete examination of the reverse side of Bryant 00199 including a visual examination, microscopic examination, and an infrared examination to look for luminescent traces of offset. None of these three examinations showed any evidence of offset or embedded color. This is especially significant considering the offset that was seen on the reverse side of Bryant 00232, which was a document known to have been created by tracing from a mixed-media drawing. I also note in the report of Lloyd Cunningham that he performed his examination before William Flynn and Mr. Cunningham's examination procedure was to place the tracing paper over the mixed-media drawing and move it to confirm if sufficient portions were in agreement to conclude that one drawing was created from the other. It is possible through this process that a small offset was created that was transient, in other words the offset was present for Mr. Flynn and disappeared by the time my laboratory received the document for examination. However, if this were the case, the color that was seen by Mr. Flynn could not have been offset onto Bryant 00199 by tracing from Bryant 00220. Once a known offset such as present on the reverse of Bryant 00232 is seen, it could not be mistaken for a transfer by casual contact or a minor "fleck" of color. I would therefore conclude that Bryant 00199 was not created by tracing from Bryant 00220 as claimed in Mr. Flynn's report.

COMMENTS ON THE REPORT OF LLOYD CUNNINGHAM:

1.  In the area of Mr. Cunningham's report regarding the examination of Bryant 01647 and Bryant 01648, he notes and relies on several pieces of evidence. The first is that Bryant 01647 and 01648 appear to (but not conclusively) contain impressions from Bryant 00182 and 00179 respectively. Second, Mr. Cunningham concludes that the non-ballpoint portion of Bryant 00179 and 00182 have bled-through the paper and that this bleed-through for Bryant 00179 matches up with the spots on Bryant 01648 and the bleed through for Bryant 00182 matches up with the spots on

EXHIBIT  18

PAGE  254

04/04/2008 FRI 15:38  FAX 5173495538 Speckin Forensic Labs                    ☒007/007

Report 20040202 [AMENDED 4-04-08]
March 17, 2008
Page 6

Bryant 01647. However, when I use the capture/mix imaging capabilities of the VSC2000 to
superimpose the spots with the non-ballpoint ink on each drawing, with the edges and pre-printed
lines of each page aligned with the other page, I do not find sufficient evidence that the blood
through can be associated with either sketch.

2.  Both Mr. Flynn and Mr. Cunningham indicate in their examination of the notary journal that the
entry "from 1998 Missouri" appears cramped or squeezed in and may have been added. Based on
my review of color photocopies of Ms. Prince's log book, I agree that this is the appearance of the
entry; however, like Mr. Flynn and Mr. Cunningham, I draw no definitive conclusion that the
entry was added at a later time. There is insufficient evidence to support a conclusion of that
nature, especially considering that the size of the box for the entry in the notary book was pre-
printed. In simple terms, if someone wanted to enter that much information into a box that small,
it is not surprising that some of the writing would cramped in to conform to the size.

I am being compensated at my standard rate of $250.00 per hour for my time spent on this case. In
conducting my examinations, I have been assisted by other examiners at Speckin Forensic Laboratory who
have also been compensated at their customary rates. Neither my compensation nor the compensation of
my colleagues is tied in any way to the outcome of this litigation.

I have attached my Curriculum Vitae, which lists my testimony over the last four years and my publications
over the last ten years.

                                        Very Truly Yours,

                                        Robert D. Kullman
                                        Forensic Document Analyst

Current CV with last 4 years testimony and publications attached

EXHIBIT  18

PAGE  255

EXHIBIT 19

Matter v. Bryant et al. -- ex parte application to Judge Infante
Case 2:04-cv-09049-DOC-RNB Document 3008-5 Filed 04/08/08 Page 36 of 44 Page ID
#:50879
Page 1 of 2

## Chris Grohman

| **From:** | Diane Hutnyan |
|---|---|
| **Sent:** | Tuesday, April 08, 2008 1:31 PM |
| **To:** | Susan R. Estrich; Michael T Zeller |
| **Cc:** | MGA / Bryant Team |

**Subject:** FW: Mattel v. Bryant et al. -- ex parte application to Judge Infante

---

**From:** Matthew Werdegar [mailto:MWerdegar@kvn.com]
**Sent:** Tuesday, April 08, 2008 12:46 PM
**To:** Diane Hutnyan
**Cc:** Lanstra, Allen L; Sloan, Matthew E (LAC)
**Subject:** Mattel v. Bryant et al. -- ex parte application to Judge Infante

Dear Diane:

We are in receipt of your *ex parte* application to compel access to certain Bryant original documents for additional, non-destructive expert examination and imaging. Reviewing the application and the relevant case law, it is apparent to us that Judge Infante does not have the authority to grant the relief you are seeking. The Court's October 31, 2007 Rule 16 Scheduling Order set January 28, 2007 as the fact discovery cut off, and March 31, 2008 as the expert discovery cut off. Because your application is seeking additional discovery beyond these cut-off dates, which were ordered by Judge Larson, only Judge Larson, and not Judge Infante, may grant Mattel's request. Central District Local Rule 16-14 states that "[a]ny application to modify an order entered pursuant to F.R.Civ.P. 16 shall be made to the judicial officer who entered the order," *i.e.*, Judge Larson. Additionally, for the same reasons, Judge Larson must grant Mattel leave to file its contemplated supplemental expert reports, as the current scheduling order only provides for opening and rebuttal reports, and not any supplemental or reply reports.

In light of the foregoing, we are hereby requesting that you agree either (1) to dismiss your *ex parte* application without prejudice to renewing it if and when Judge Larson agrees to modify his scheduling order or (2) stay consideration of the motion until Judge Larson rules on the schedule issues. Please let me know by 5 p.m. today whether you are willing to agree to this request, in which case I will provide you with a proposed stipulation and order memorializing our agreement. If you do not agree, we will file a preliminary opposition with Judge Infante on grounds that he lacks authority to grant the requested relief and, in the unlikely event he disagrees with our analysis, requesting that he set an appropriate schedule for the submission of our opposition and Mattel's reply briefs on the merits of Mattel's request.

I have spoken with counsel for MGA, and they agree with the foregoing analysis and join in our request that you agree to dismiss or stay consideration of the *ex parte* application.

Regards,

EXHIBIT __19__

PAGE __250__

Case 2:04-cv-09049-DOC-RNB  Document 3008-5  Filed 04/08/08  Page 37 of 44  Page ID
#:50880
Matter v. Bryant et al. – ex parte application to Judge Infante                    Page 2 of 2

Matthew M. Werdegar

**KEKER & VAN NEST LLP**

710 Sansome Street
San Francisco, CA 94111-1704
tel: (415) 391-5400
fax: (415) 397-7188
www.kvn.com

EXHIBIT __**19**__

PAGE __**257**__

4/8/2008

EXHIBIT 20

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 21

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>         v.<br><br>MATTEL, INC., a Delaware<br>corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**ORDER GRANTING MGA DEFENDANTS' *EX PARTE* APPLICATION FOR AN ORDER EXTENDING THE MARCH 17 DEADLINE FOR MGA TO SERVE ITS REBUTTAL EXPERT REPORT CONCERNING MS. PRINCE'S NOTARY BOOK** |

Honorable Stephen G. Larson

## ORDER

The Court has reviewed the ex parte application of the MGA defendants, as well as Mattel's opposition thereto. Based on the Application filed with the Court, and good cause appearing for the entry thereof, IT IS HEREBY ORDERED that:

1.      The *Ex Parte* Application For An Order Extending the March 17 Deadline for MGA to Serve Its Rebuttal Expert Report Concerning Ms. Prince's Notary Book is granted.

2.      In order to allow MGA to serve a rebuttal expert report to the expert report of Valery Aginsky submitted by Mattel, Inc. ("Mattel"), the March 17, 2008

EXHIBIT  21

PAGE  288

deadline for rebuttal expert reports set forth in the Scheduling Order entered October 31, 2007, is hereby extended for a period of fourteen (14) days following the entry of an Order by the Discovery Master resolving Mattel's pending *Ex Parte* Application for a Protective Order Preventing MGA's Destructive Sampling of the Prince Notary Book, filed March 10, 2008 (Docket No. 2563).

DATED:   March 19, 2008 _____

Hon. Stephen G. Larson
United States District Court Judge

EXHIBIT __21__

PAGE __289__

EXHIBIT 22

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**