1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      johnquinn@quinnemanuel.com
3     Michael T. Zeller (Bar No. 196417)
      (michaelzeller@quinnemanuel.com)
4     Jon D. Corey (Bar No. 185066)
      (joncorey@quinnemanuel.com)
5     Timothy L. Alger (Bar No. 160303)
      (timalger@quinnemanuel.com)
6   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
7   Telephone:   (213) 443-3000
    Facsimile:   (213) 443-3100

8   Attorneys for Mattel, Inc.

9

10                UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

14          Plaintiff,                 Consolidated with
                                       Case No. CV 04-09059
15      vs.                            Case No. CV 05-02727

16  MATTEL, INC., a Delaware           **DISCOVERY MATTER**
    corporation,
17                                     **[To Be Heard By Discovery Master**
            Defendant.                 **Hon. Edward Infante (Ret.)]**
18
19  AND CONSOLIDATED ACTIONS           SUPPLEMENTAL DECLARATION
                                       OF TIMOTHY L. ALGER IN
20                                     OPPOSITION TO MGA'S MOTION
                                       TO COMPEL PRODUCTION OF
21                                     E-MAILS

22                                     Hearing:  April 11, 2008
                                       Time:     8:30 a.m.
23                                     Place:    Telephonic

24

25

26

27

28

## DECLARATION OF TIMOTHY L. ALGER

I, Timothy L. Alger, declare as follows:

1.     I am a member of the bar of the State of California and a partner with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2.     On February 11, 2008, MGA's Motion to Compel Production of E-Mails ("E-Mail Motion") came on for hearing before the Discovery Master.  A true and correct copy of the relevant portions of the hearing transcript is attached as Exhibit A.

3.     The Discovery Master declined to decide the E-Mail Motion, finding that the parties had not met and conferred, and pointing out that counsel for MGA had raised a proposal relating to searching of e-mail backup tapes for the first time during the hearing.  The Discovery Master stated that he would not decide the motion until there was an adequate meet and confer.  He also stated that that the parties should "prepare a joint report or a stipulated order, if you will, as to what constitutes a reasonable search for electronic discovery."  Exh. A at 50:14-19.

4.     MGA has made no serious attempt to meet and confer regarding the E-Mail Motion since the February 11, 2008 hearing.  Counsel for the parties met and conferred on all of the pending motions – approximately 30 motions -- on February 21, 2008.  The E-Mail Motion was addressed briefly at that time.  MGA repeated the proposal made at the February 11 hearing, that Mattel review e-mail backup tapes at intervals.  However, despite my request that it do so, MGA declined to specify any search terms or other parameters that could be used to conduct a reasonable search.  MGA also refused to discuss cost-shifting.

5.     I pointed out during the conference that the e-mail backup tapes at Mattel that still exist would not contain documents relevant to the Phase I trial.  I also pointed out that terms such as "MGA," "Bratz," and "Larian" are likely to draw

-1-
SUPPLEMENTAL DECLARATION OF TIMOTHY L. ALGER

1    many thousands of false "hits" – and I gave as an example the countless and
2    voluminous market reports such as those provided to Mattel by the NPD tracking
3    service, which are disseminated widely and relied upon in all aspects of Mattel's
4    business.  Further, a search based on search terms such as "MGA," "Bratz" and
5    "Larian" would sweep up a far broader universe of documents than has ever been
6    ordered in this case; indeed, the Discovery Master rejected document requests
7    simply seeking all documents referencing "MGA," "Bratz," and "Larian" in an
8    Order dated May 22, 2007.  A true and correct copy of that Order is attached as
9    Exhibit B.

10         6.     MGA has engaged in no further discussion about the E-Mail
11   Motion.  Mattel has received no proposal for search terms that might result in a
12   focused, reasonable search.  Mattel has received no proposal for cost-shifting.
13   Moreover, MGA has offered no justification for a search through thousands of e-
14   mail backup tapes for a period of time that is at issue only in Phase II of this
15   litigation.  Such discovery has been stayed.

16         7.     MGA has not proposed any joint report or stipulated order
17   relating to the search of e-mails at Mattel.

18         8.     In correspondence since the February 21, 2008 meet and confer,
19   MGA has asserted that it proposed that Mattel use the same words it has used for
20   other searching in this litigation.  This is untrue.  MGA has made no such proposal
21   to Mattel.  In any event, such a proposal does not address the stay on Phase II
22   discovery, or the huge costs involved in searching four years of e-mails at Mattel,
23   which are described in other papers submitted by Mattel to the Discovery Master.
24   (See Mattel's Opposition at 14-18, and evidence cited therein.)

25         9.     For the Discovery Master's reference, I attach true and correct
26   copies of the following documents:  (a) an email from my partner Jon Corey to Paul
27   Eckles (counsel for MGA) and Matthew Werdegar (counsel for Bryant) dated
28   March 24, 2008 [Exhibit C]; (b) my letter to Robert Herrington (counsel for MGA)

07209/2462808.1

SUPPLEMENTAL DECLARATION OF TIMOTHY L. ALGER

1 | dated March 25, 2008 [Exhibit D]; (c) an email to me from Paul Eckles dated March

2 | 26, 2008 [Exhibit E]; (d) an email from me to Mr. Eckles dated March 26, 2008

3 | [Exhibit F], and (e) an email from Mr. Eckles to me dated March 27, 2008 [Exhibit

4 | G].

5 | I declare under penalty of perjury under the laws of the United States of

6 | America that the foregoing is true and correct.

7 | Executed on April 8, 2008, at New York, New York.

8

9

10 | Timothy L. Alger

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2462808.1

# EXHIBIT A

**CERTIFIED COPY**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
                                     )
        PLAINTIFF,         )
                                     )    CASE NO.
        V.              )    CV 04-9040 SGL (RNBX)
                                     )
MATTEL, INC., A DELAWARE     )    CONSOLIDATED WITH
CORPORATION,              )    CASE NO. 04-9059
                                   )
        DEFENDANTS.      )    CASE NO.  05-2727
                                   )
                                   )
AND CONSOLIDATED ACTION (S).   )

# TELEPHONIC TRANSCRIPT OF PROCEEDINGS

# FEBRUARY 11, 2008



COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

**REPORTED BY:**
ANGELA DUPRE
CSR NO. 7804
JOB NO. 08AD008

EXHIBIT _____ _A_

PAGE _____ 4

1          MR. PAGE:  THANK YOU, YOUR HONOR.

2          MR. KENNEDY:  THANK YOU.

3          JUDGE INFANTE:  LET ME SEE.  I WANT TO CHECK

4    ONE THING.  GIVE ME A MOMENT.

5               OKAY.  MGA'S MOTION TO COMPEL MATTEL TO

6    PRODUCE E-MAIL.

7               YOU MAY PROCEED.

8          MR. KENNEDY:  THANK YOU.  RAOUL KENNEDY AGAIN.

9               AS I UNDERSTAND IT, MATTEL'S POSITION

10   COMES DOWN TO A REASONABLE SEARCH FOR ALL

11   POTENTIALLY RESPONSIVE DOCUMENTS, WHICH ALLOWS

12   MATTEL TO SIMPLY DECIDE BOTH LIVE E-MAIL AND E-MAIL

13   BACKUP TAPES NEED TO BE SAMPLED, EXAMINED, OR

14   CONSIDERED, BECAUSE IF YOU TRY TO CONSIDER THEM

15   COMPLETELY AND IN THEIR ENTIRETY, THAT WOULD BE

16   BURDENSOME.

17               AND MATTEL JUST GRANTED ITSELF LIMITED

18   DISPENSATION OR PROTECTIVE ORDER, WITHOUT BOTHERING

19   TO TELL US OR THE COURT ABOUT IT.  AND WE SUBMIT A

20   REASONABLE SEARCH INCLUDE SOME EFFORT TO LOCATE

21   RESPONSIVE DOCS FROM ALL SOURCES.

22               AND AGAIN WITH THAT BACKGROUND, I PROPOSE

23   THE FOLLOWING:  THAT, FIRST, MATTEL -- LET ME BACK

24   UP.

25               AS I UNDERSTAND IT, THE TAPES ONLY GO

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT _____ N

PAGE _____ 5

1  BACK TO 2004 OR 2005.  MATTEL CAN GIVE US THE EXACT

2  DATE.  BUT I WOULD PROPOSE MATTEL BE REQUIRED TO

3  SEARCH FOR THE KEY WITNESSES THAT ARE IDENTIFIED IN

4  EXHIBITS 14 AND 15 TO THE SUPPLEMENTAL DECLARATION

5  OF ROB HARRINGTON THAT WAS FILED IN SUPPORT OF THE

6  PRESENT MOTION.  THAT'S 68 PEOPLE WHO WERE EITHER

7  ON MGA'S, BRYANT'S, OR I BELIEVE IN SOME CASES

8  MATTEL'S INITIAL DISCLOSURE LISTS, AND FOR WHOM NO

9  CHECK OR INSPECTION APPARENTLY WHATSOEVER HAS BEEN

10  DONE.

11          IN ADDITION, THE KEYWORDS MGA HAD BEEN --

12  I'M SURE YOUR HONOR KNOWS BY NOW, IT'S MATTEL'S

13  CODE FOR MGA -- BRATZ, LARIAN, AND BRYANT, BE

14  CHECKED.  THEY TELL US THEY HAVE A 90-DAY DELETE

15  POLICY, SO THEY REALLY ONLY OUGHT TO HAVE TO REVIEW

16  TAPES, 60-, 75-, OR 80-DAY INTERVALS.  THEY

17  SHOULDN'T HAVE TO CHECK EVERY DAY FOR EACH OF THOSE

18  PARTICULAR CATEGORIES.

19          AS I SAID, WE WOULD BE TALKING FROM

20  FEBRUARY 2004, AT 90-DAY INTERVALS, FOR A VERY

21  LIMITED SEARCH.

22          IN ADDITION, MATTEL PUT IN A DECLARATION

23  SAYING IN CONNECTION WITH THE MY SCENE, M-Y

24  S-C-E-N-E, AND DIVA STARZ LITIGATION, BACK IN 2002

25  AND 2003, MATTEL PRESERVED SOME UNKNOWN NUMBER OF

44

EXHIBIT ____N____

PAGE ____6____

1  E-MAILS AND TAPES, NO INDICATION EXACTLY WHAT THAT

2  WAS.

3         I URGE THAT THE SAME SEARCH OF LIMITED

4  NATURE THAT I JUST DESCRIBED BE ORDERED FOR THOSE

5  TAPES AS WELL. AND, FINALLY, WE'RE TALKING ABOUT

6  4,000 TAPES. I COULD SEE THERE WOULD BE A WHOLE

7  LOT OF THEM THAT COULD BE TOTALLY IRRELEVANT, BUT

8  WE NEED AN INDEX. AND I WOULD URGE THAT MATTEL BE

9  GIVEN THE OPTION, NOT THE REQUIREMENT, BUT THE

10  OPTION TO, IF THEY WANT TO PROVIDE US AN INDEX BY

11  TAPE, SHOWING THE INDIVIDUALS WHOSE E-MAIL ACCOUNTS

12  WERE KEPT ON THAT TAPE, WE MIGHT VERY WELL BE ABLE

13  TO REACH A SIGNIFICANT LIMITATION, BUT THAT ISN'T

14  RELIEF WE SPECIFICALLY REQUESTED IN THE MOTION, SO

15  I DON'T THINK IT'S SOMETHING I COULD ASK FOR IN

16  THIS ORDER.

17         I SUBMIT, AGAIN, WITH THAT KIND OF

18  PROPOSAL, THAT PARES THIS DOWN TO STUFF THAT'S

19  REALLY ESSENTIAL, BUT TO THE CASE AND WOULD

20  CONSTITUTE A REASONABLE SEARCH THAT MATTEL HAS YET

21  TO UNDERTAKE.

22         ONCE AGAIN, UNLESS THERE ARE ANY

23  QUESTIONS, I DON'T WANT TO REPEAT WHAT'S IN THE

24  PAPERS.

25         JUDGE INFANTE:  THANK YOU, VERY MUCH.

EXHIBIT _____ *N*

PAGE _____ *X*

```
 1        MR. TAYBACK:  IT'S CHRISTOPHER TAYBACK
 2   ADDRESSING THIS PARTICULAR MOTION.
 3             GOOD MORNING, YOUR HONOR.
 4        JUDGE INFANTE:  GOOD MORNING.
 5        MR. TAYBACK:  IT'S ACTUALLY MY FIRST APPEARANCE
 6   IN THIS PARTICULAR CASE.
 7             BUT I GUESS I WANT TO START WITH THE
 8   PREMISE THAT, ACTUALLY, NONE OF THE THINGS THAT
 9   MR. KENNEDY JUST ASKED FOR ARE ASKED FOR IN THE
10   MOTION.  THE MOTION SAYS MATTEL HAS TO GO OUT AND
11   SEARCH -- AND THIS IS FROM PAGE 2, LINE 1 AND 2 OF
12   ITS MOTION -- SEARCH ITS E-MAIL, INCLUDING ARCHIVED
13   E-MAIL AND E-MAIL BACKUP TAPES FOR RESPONSIVE
14   DOCUMENTS.
15             OUR POSITION HAS BEEN ALL ALONG, AS I
16   THINK WAS REPRESENTED TO THE COURT, YOUR HONOR,
17   WITH RESPECT TO THE -- IN THE COTTAGE (PHONETIC) OF
18   THE MAY HEARING ON VARIOUS MOTIONS, AND ALSO IN THE
19   SEPTEMBER HEARING OF VARIOUS MOTIONS, THAT THERE
20   ARE OODLES, TO USE A TECHNICAL TERM, OF ELECTRONIC
21   DATA COMPILATIONS, INCLUDING E-MAIL BACKUP TAPES.
22   AND IT WOULD COST -- TO DO A WHOLESALE RESTORATION
23   OF THESE WOULD COST TENS OF MILLIONS OF DOLLARS.
24             AND WE HAVE SAID THAT UP FRONT, IN
25   CONNECTION WITH THE EARLY HEARING, THE ONE THAT
```

46

EXHIBIT _____

PAGE _____

1   RESULTED IN THE MAY ORDER BY YOUR HONOR.  YOUR

2   HONOR CONSTRUED THE REQUEST TO WHICH WE HAD

3   OBJECTED AS BEING UNDULY BURDENSOME IN A

4   SUFFICIENTLY NARROW MANNER AS TO SAY, LOOK, YOU

5   DON'T NEED TO SEARCH ALL YOUR TAPES.  LOOK, YOU

6   DON'T NEED TO SEARCH E-MAILS FOR EVERY EMPLOYEE.

7   YOU NEED TO SEARCH ONLY CERTAIN OF THESE SPECIFIC

8   PEOPLE THAT -- YOU NEED TO DO A REASONABLE SEARCH

9   TO FIND RESPONSIVE DOCUMENTS WITH RESPECT TO THESE

10  SPECIFIC PEOPLE ENGAGED IN THESE SPECIFIC KINDS OF

11  COMMUNICATIONS.

12      JUDGE INFANTE:  I DID NOT DEFINE A REASONABLE

13  SEARCH.

14      MR. TAYBACK:  NO, YOU DID NOT.

15           AND IT'S OUR CONTENTION WHAT WE HAVE

16  DONE -- AND WE RECITE IN SOME DETAIL IN OUR MOTION

17  AT PAGES -- IN OUR OPPOSITION, RATHER, AT PAGES 7

18  AND 8, ALL OF THE VAST, VERY SIGNIFICANT ELECTRONIC

19  DATA COMPILATIONS THAT WE HAVE SEARCHED, MANY OF

20  WHICH INCLUDE ARCHIVED E-MAILS OR E-MAILS CONTAINED

21  IN WHAT'S CALLED SHARED SPACE, TO GATHER RESPONSIVE

22  DOCUMENTS.

23           WHAT THIS MOTION IS THE RESULT OF IS

24  ESSENTIALLY AN -- A QUESTION BY MGA FOR US TO

25  DESCRIBE SPECIFICALLY, WHAT DID WE SEARCH, WHAT

A&B COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT _____ X

PAGE _____ 9

1   HAVEN'T WE SEARCHED, WHOSE E-MAILS HAVE WE CHECKED,

2   HOW HAVE WE CHECKED THEM.  AND, ESSENTIALLY, THAT'S

3   A QUESTION THAT'S PENDING AS AN INTERROGATORY.

4          BOTH PARTIES HAVE PROPOUNDED AN

5   INTERROGATORY ALONG THOSE LINES.  THAT'S THE

6   SUBJECT OF ANOTHER MOTION, BECAUSE MGA

7   CATEGORICALLY REFUSED TO PROVIDE US WITH THAT

8   INFORMATION; INFORMATION AIMED AT FINDING OUT WHAT

9   DID YOU DO, HOW DID YOU SEARCH, WHAT DIDN'T YOU

10  SEARCH.

11         AT THE END OF THE DAY, THOUGH, AND A

12  POINT MR. KENNEDY MADE, I THINK THIS PARTICULAR

13  ISSUE IS MUCH ADO ABOUT NOTHING, FOR THE FOLLOWING

14  REASON, WHICH IS NOT ADDRESSED IN ANYBODY'S PAPERS

15  BECAUSE IT JUST HAPPENED, JUDGE LARSON STAYED

16  DISCOVERY, NOT JUST BIFURCATED IT, STAYED IT, WITH

17  RESPECT TO PHASE II.

18         AND AS MR. KENNEDY JUST ALLUDED TO, THE

19  E-MAIL BACKUP TAPES ONLY GO BACK TO APRIL OF 2005.

20  THERE IS, I SUBMIT, VIRTUALLY NOTHING THAT COULD BE

21  ON THE E-MAIL BACKUP TAPES FROM APRIL 2005 TO THE

22  PRESENT THAT RELATES TO PHASE I.  SIMILARLY, AND

23  EVEN MORE POINTEDLY, THE IDEA OF SEARCHING A LIVE

24  E-MAIL SERVER THAT ONLY HAS A 90-DAY WINDOW OF

25  TIME, IS NOT LIKELY AT ALL TO LEAD TO RESPONSIVE --

48

EXHIBIT _____ X

PAGE _____ 10

1   TO DISCOVERABLE OR ADMISSIBLE EVIDENCE.  AND I

2   THINK EITHER ONE IS JUST NOT A FRUITFUL WAY OF

3   CONDUCTING A REASONABLE SEARCH, ESPECIALLY GIVEN

4   THE COST CONCERNS.

5          NOW, I'VE HEARD FOR THE FIRST TIME A

6   PROPOSAL THAT TALKED ABOUT CERTAIN SPECIFIC PEOPLE;

7   ALTHOUGH, THEY HAVEN'T EXACTLY BEEN ITEMIZED ON A

8   NAME-BY-NAME BASIS, SO I CAN'T REALLY RESPOND TO

9   WHETHER THEY ARE REALLY GOING TO HAVE RESPONSIVE

10  EVIDENCE OR WHETHER THEY WERE AROUND AT MATTEL FOR

11  CERTAIN PERIODS OF TIME.  THIS IS REALLY THE FIRST

12  TIME I'M HEARING SOME OF THE SPECIFIC PROPOSALS

13  BEING OFFERED.

14          WHAT I WOULD SAY IS THAT, TO THE EXTENT

15  YOUR HONOR IS GOING TO ORDER ANY SEARCH OF ANY

16  BACKUP E-MAIL TAPE, THAT ESSENTIALLY THE PARTIES

17  WOULD NEED TO MEET AND CONFER, AS YOUR HONOR

18  ORDERED WITH RESPECT TO ZEUSS.

19      JUDGE INFANTE:  WOULD YOU STOP FOR A MOMENT.

20      MR. TAYBACK:  YES.

21      JUDGE INFANTE:  I AGREE WITH YOU, IN A SENSE

22  THAT I DON'T THINK THE PARTIES HAVE MET AND

23  CONFERRED.  I FIND MYSELF RIGHT NOW PRESIDING OVER

24  A MEET AND CONFER MEETING, RATHER THAN A MOTION

25  HEARING.  AND I'M NOT GOING TO DECIDE THIS MOTION,

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT _____

PAGE _____

1    BECAUSE I BELIEVE YOU SHOULD MEET AND CONFER.

2              MR. KENNEDY, YOU RAISED A PROPOSAL TODAY

3    FOR THE FIRST TIME.

4              I BELIEVE THAT AN ADEQUATE MEET AND

5    CONFER SESSION BETWEEN YOU, IN GOOD FAITH, AS

6    REQUIRED BY THE RULES, WOULD LEAD TO A RESOLUTION

7    OF THIS QUESTION.

8              RULE 34 AND RULE 26 HAVE BEEN AMENDED

9    SINCE THIS LAWSUIT WAS FIRST FILED, WHICH GIVE YOU

10   CLARITY AS TO THE STANDARDS THAT ARE TO BE

11   EMPLOYED.  AND, IN MY VIEW, THERE HASN'T BEEN AN

12   ADEQUATE MEET AND CONFER.  I'M NOT GOING TO DECIDE

13   THE MOTION UNTIL THERE IS.

14             SO AS FAR AS I'M CONCERNED, THERE'S NO

15   FURTHER HEARING ON THIS MATTER AND YOU ARE ORDERED

16   TO MEET AND CONFER.  AND I WOULD LIKE YOU TO

17   PREPARE A JOINT REPORT OR A STIPULATED ORDER, IF

18   YOU WILL, AS TO WHAT CONSTITUTES A REASONABLE

19   SEARCH FOR ELECTRONIC DISCOVERY.

20             WE CAN MOVE ON TO THE NEXT MOTION NOW.

21        MR. KENNEDY:  THANK YOU, YOUR HONOR.

22        MR. TAYBACK:  THANK YOU, YOUR HONOR.

23        JUDGE INFANTE:  THE MOTION TO COMPEL PRODUCTION

24   OF DOCUMENTS OF ISAAC LARIAN AND FOR SANCTIONS

25   REGARDING MATTEL'S FIRST SET OF REQUESTS FOR

50

EXHIBIT ____ A

PAGE ____ 12

1    STATE OF CALIFORNIA        )
                                )    SS.
2    COUNTY OF LOS ANGELES      )

3

4          I,    ANGELA DUPRE    , CERTIFIED

5    SHORTHAND REPORTER, CERTIFICATE NUMBER 7804, FOR

6    THE STATE OF CALIFORNIA, HEREBY CERTIFY:

7          THE PROCEEDINGS WERE RECORDED

8    STENOGRAPHICALLY BY ME AND WERE TRANSCRIBED TO THE

9    BEST OF MY ABILITY;

10         THE FOREGOING TRANSCRIPT IS A TRUE AND

11   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

12         I FURTHER CERTIFY THAT I AM NEITHER

13   COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

14   NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

15         IN WITNESS WHEREOF, I HAVE HEREUNTO

16   SUBSCRIBED MY NAME THIS _14th_ DAY OF

17   _FEBRUARY_____ , 2008.

18

19

20

21   _____

22

23

24

25

                                                    59

EXHIBIT ___ X

PAGE ___ 13

# EXHIBIT B

1    Hon. Edward A. Infante (Ret.)
     JAMS
2    Two Embarcadero Center
     Suite 1500
3    San Francisco, California  94111
     Telephone:    (415) 774-2611
4    Facsimile:    (415) 982-5287

5

6

7                        UNITED STATES DISTRICT COURT

8                        CENTRAL DISTRICT OF CALIFORNIA

9                              EASTERN DIVISION

10

11   CARTER BRYANT, an individual,              CASE NO. C 04-09049 SGL (RNBx)
                                                JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                      Consolidated with
                                                Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,      Case No. CV 05-2727

15          Defendant.                          ORDER GRANTING IN PART AND
                                                DENYING IN PART MGA'S MOTION
16                                              TO COMPEL DOCUMENTS
                                                RESPONSIVE TO FIRST SET OF
17                                              REQUESTS FOR PRODUCTION OF
                                                DOCUMENTS DATED NOVEMBER
18   CONSOLIDATED WITH                          22, 2006
     MATTEL, INC. v. BRYANT and
19   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
20                                                   I. INTRODUCTION

21          On April 13, 2007, MGA Entertainment, Inc. ("MGA") submitted a motion to compel

22   Mattel, Inc. ("Mattel") to produce documents responsive to MGA's First Set of Requests for

23   Production of Documents dated November 22, 2006 (the "requests"), which generally seeks

24   documents that MGA contends are relevant to its Lanham Act and unfair competition claims.  On

25   April 25, 2007, Mattel submitted its opposition brief, and on May 2, 2007, MGA submitted a

26   reply brief.  The matter was heard via telephonic conference on May 11, 2007.  Having

27

28   Bryant v. Mattel, Inc.,                                                                    1
     CV-04-09049 SGL (RNBx)

EXHIBIT ___B___

PAGE ___14___

1   considered the motion papers and comments of counsel at the hearing, MGA's motion to compel

2   is granted in part and denied in part.

3                                   II. BACKGROUND

4       There are two themes underlying MGA's claims for unfair competition against Mattel.

5   First, MGA alleges that Mattel has intentionally "serially imitated and copy-catted the look of

6   MGA products, trade dress, trademarks, themes, ideas, advertising and packaging, including for

7   the 'Bratz' line of dolls," to dilute MGA's brand, create customer confusion, and unfairly stifle

8   competition. MGA's Complaint at ¶¶9, 65. Second, MGA alleges, on information and belief,

9   that "Mattel has intimidated, coerced and threatened retailers, licensees, suppliers and others in

10  the industry – both in the U.S. and internationally – in order to inhibit and stifle MGA's ability to

11  compete with Mattel and to prevent MGA from obtaining licensees, contracts and supplies for its

12  products." Id. at ¶9.

13                             The Alleged Copy-catting

14      Mattel's alleged serial copycatting "began with the 'Bratz' dolls themselves, but quickly

15  extended to MGA's packaging, themes, accessories, advertising and even other product lines."

16  Id. at ¶33. Mattel allegedly "designed its 'My Scene' dolls to evoke the unique and distinctive

17  look of the 'Bratz' – also with disproportionately oversized heads, artfully made-up almond-

18  shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-

19  sized feet." Id. at ¶34. Mattel also allegedly "systematically proceeded to modify the 'My Scene'

20  dolls since their original release, particularly their eyes, to increase their similarity to 'Bratz' more

21  and more over time." Id.

22      Further, Mattel allegedly "modified its 'My Scene' packaging, and the manner in which

23  the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and

24  total image of MGA's 'Bratz.'" Id. at ¶41. For example, Mattel allegedly changed its packaging

25  "to the open and transparent style of the 'Bratz' packaging." Id. at ¶43. Mattel also allegedly

26  hung its packaging and product display to "look even more closely and confusingly similar to

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ B _____

PAGE _____ 15 _____

2

1    MGA's packaging and '*tout ensemble*.'" Id. at ¶45. Mattel also allegedly "discarded its

2    traditional rectangular shaped box, and like 'Bratz', adopted an unusual, non-rectangular shaped

3    box." Id. at ¶46. Mattel also allegedly "adopted the 'flying banner' ribbon-style slogan running

4    across the middle of the box, similar to that used on the 'Bratz' packaging." Id.

5         In addition to the packaging changes, Mattel allegedly copied "MGA's practice of

6    regularly releasing new dolls in connection with a theme – but not just any theme, often MGA's

7    theme." Id. at ¶47. For example, when MGA released its "Wintertime Wonderland" theme,

8    Mattel allegedly released "Chillin Out." Id. at ¶48. Mattel also allegedly imitated Bratz

9    accessories and related products in order to create consumer confusion in the marketplace. Id. at

10   ¶52. Further, Mattel allegedly "began running television commercials for its 'My Scene' dolls

11   bearing a remarkable similarity to 'Bratz' commercials, combining live action with animated

12   sequences set to similar sounding pop music and lyrics." Id. at ¶51. MGA alleges that Mattel's

13   conduct described above "is a calculated and intentional effort unquestionably designed to trade

14   off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder

15   and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products."

16   Id. at ¶54.

17        Further, MGA alleges that when it "came out with a 'Bratz' 'Funky Fashion Makeover

18   Head,' Mattel came out with a confusingly similar – indeed, practically identical – 'My Scene'

19   styling head." Id. at ¶55. Mattel also allegedly "used a portion of the Bratz doll's now-famous

20   trademarked tag line 'The Girls With a Passion for Fashion' on Mattel's website for its 'Diva

21   Starz' dolls, asking its website users: 'Do you have a passion for fashion?'" Id. at ¶58.

22        MGA also alleges that Mattel recently came out with a confusingly similar line of "My

23   Scene" plush pets that have the distinctive look of MGA's "Bratz" line. Id. at ¶59. In addition,

24   Mattel allegedly "chose to package its pets the same way that MGA packaged its 'Bratz Petz',

25   sitting in an open box, with no top and with partial side panels that slope from a narrow front

26   panel to a higher back panel." Id. at ¶60. MGA alleges that the similarity of the "My Scene" pets

27

28



EXHIBIT ___B___

PAGE ___14___

1    and the "Bratz Petz" has confused sophisticated retailers who have mistakenly merchandised the

2    products together. Id. at ¶61.

3       MGA alleges that Mattel's television commercials and "My Scene" products have become

4    so confusingly similar to MGA's commercials and products that advertising executives have

5    expressed concern. Id. at ¶62. MGA also alleges that the press has taken notice of Mattel's

6    alleged attempts to confuse consumers. Id. at ¶63. Further, MGA alleges that some customers

7    have contacted MGA seeking to purchase "My Scene" dolls. Id. at ¶64.

8       MGA alleges that Mattel's conduct has reached beyond "Bratz" to include other new

9    MGA toy lines. Id. at ¶67. For example, Mattel allegedly modeled its "Wee 3 Friends" line of

10    dolls and packaging on MGA's "4-Ever Best Friends" line. Id. at ¶68. Mattel also allegedly

11    modeled its "Little Mommy Potty Training Baby Doll" on MGA's "Mommy's Little Patient." Id.

12    at ¶69. Mattel also allegedly revamped and renamed one of its "Hot Wheels" lines with the

13    "AcceleRacerS" logo based upon MGA's "AlienRacers" radio controlled racing vehicles. Id. at

14    ¶70.

15                        <u>Additional Allegedly Anti-Competitive Conduct</u>

16       MGA alleges that Mattel has engaged in additional allegedly anti-competitive conduct,

17    including "sending threatening letters to several of its former employees who now work for MGA

18    warning them not to disclose *even publicly available information* about Mattel, including the

19    names and positions of Mattel employees." Id. at ¶75 (emphasis in original). Mattel has also

20    allegedly "warned a number of companies, including the biggest publishing entity in the United

21    Kingdom, not to license MGA products, or risk retribution." Id. at ¶76. MGA alleges that it has

22    lost valuable licensing opportunities as a result of Mattel's conduct. Id.

23       MGA also alleges that "Mattel has used similar intimidation to pressure distributors and

24    retailers, particularly in foreign countries, not to distribute 'Bratz', to reduce shelf and display

25    space for 'Bratz' and to place 'Bratz' in unfavorable locations at retail outlets." Id. at ¶77. MGA

26    further alleges that "[w]hen MGA faced a shortage of doll hair in October 2002, MGA is

27

28   



EXHIBIT _____ β

PAGE _____ ⍺

4

1   informed and believes that the reason for that shortage was that Mattel had locked MGA out by

2   buying up the supply from the two main hair supply companies." Id. at ¶78.

3          MGA also alleges that Mattel manipulated the retail market. More specifically, MGA

4   alleges that "Mattel merchandisers have been caught tampering with MGA's retail displays,

5   replacing favorably located MGA merchandise with Mattel merchandise instead." Id. at ¶79.

6   MGA further alleges on information and belief that "Mattel has falsely told a major United States

7   retailer that MGA was giving another major United States retailer below-market pricing and

8   falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to

9   make such line less attractive to buyers and thereby attempt to increase sales of the competitive

10  Mattel product and improve its own sales, at MGA's expense." Id.

11         Next MGA alleges on information and belief that NPD Funworld ("NPD"), the leading

12  supplier of sales statistics in the toy industry, terminated MGA's subscription ostensibly for

13  misusing NPD data and that "the termination was the result of pressure from Mattel." Id. at ¶¶80-

14  85. MGA also alleges on information and belief that Mattel pressured NPD into changing certain

15  product classifications for "Bratz" products to manipulate the data and preserve Mattel's market

16  share rankings in the "fashion doll" category. Id. at ¶86.

17         MGA further alleges on information and belief that Mattel used its influence as a major

18  contributor to the Children's Advertising Review Unit ("CARU"), which is a unit of the Council

19  of Better Business Bureaus, to "place onerous restrictions on MGA advertisements, and require

20  MGA to amend aspects of commercials that have gone unchallenged in other parties'

21  commercials." Id. at ¶89. As a result of CARU's restrictions, MGA allegedly incurred

22  unnecessary costs for reshooting and producing or re-editing its commercials. Id. at ¶90.

23         MGA also alleges on information and belief that Mattel's subsidiary, Fisher Price,

24  "orchestrated" a change to the selection process for TIA's "Toy-of-the-Year Awards," which

25  allegedly resulted in a Fisher Price toy beating out "BRATZ Formal Funk Super Stylin' Runway

26  Disco." Id. at ¶¶92-96. MGA also alleges on information and belief that one year "Mattel was

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)



EXHIBIT ____ B ____

PAGE ____ 18 ____

5

1    instrumental in attempting to keep MGA from participating as a sponsor in the 'Kids' Choice

2    Awards.'" Id. at ¶97.

3       As a result of Mattel's alleged conduct described above, MGA has allegedly suffered, and

4    unless abated, will continue to suffer lost sales, lost licensing fees, lost contracts, lost

5    relationships, lost business opportunities and other damages. Id. at ¶100. MGA also alleges that

6    its ability to enter new markets and product lines has been hampered and delayed. Id.

7    Furthermore, MGA alleges that "[i]ts production costs have increased, its reputation and

8    relationships with important players in the industry have been negatively impacted, the value of

9    its business has been diminished, and its ability to attract, hire and retain employees has been

10    affected." Id. Based upon the foregoing, MGA asserts claims for (1) false designation of origin

11    or affiliation in violation of 15 U.S.C. §1125(a); (2) unfair competition in violation of 15 U.S.C.

12    §1125(a) and unfair competition and unfair business practices in violation of Cal. Bus. & Prof.

13    Code §17200 et seq. and California common law; (3) dilution in violation of 15 U.S.C. §1125(c),

14    Cal. Bus. & Prof. Code §14330 and California common law; and (4) unjust enrichment.

15             MGA's First Set of Requests for Production of Documents

16       On November 22, 2006, MGA propounded one hundred fifteen (115) document requests

17    seeking discovery regarding, among other things: (a) Mattel's alleged copycatting efforts and

18    activities with respect to Bratz and other MGA product lines; (b) anti-competitive business

19    practices allegedly carried out by Mattel; and (c) any similar or related activities. In response,

20    Mattel objected to many requests primarily on the grounds that they were overly broad and

21    unduly burdensome. Mattel agreed, however, to produce documents responsive to many of the

22    requests.

23       The parties met and conferred in person on March 9, 2007. MGA's counsel demanded

24    that Mattel withdraw all objections based on relevance. Alger Decl. in Support of Mattel's

25    Opposition at ¶7. Mattel's counsel responded that Mattel was producing responsive documents

26    and would continue to produce responsive documents, but had concerns over the "lack of focus

27

28

1 | and infinite scope" of MGA's document requests. Id. Mattel's counsel suggested that MGA

2 | narrow the requests to "those products, retailers, licensees, and time frames that MGA has put at

3 | issue in its Complaint and response to interrogatories." Id. MGA's counsel, however, rejected

4 | the proposal. Id.

5 |   A few days later, counsel for MGA sent Mattel's counsel a letter offering several

6 | suggestions for limiting the requests. Glad Decl. in Support of MGA's Motion, Ex. 1. In

7 | particular, MGA stated that "it would be amenable to certain limitations on the number and

8 | identities of custodians whose files must be searched, so long as Mattel is willing to accept

9 | reciprocal accommodations for MGA's own document review." Id. Mattel did not respond to the

10 | letter, and the instant motion ensued.

11 | III. STANDARDS

12 |   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

13 | discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

14 | party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

15 | permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

16 | 2004) ("District courts need not condone the use of discovery to engage in 'fishing

17 | expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

18 | (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

19 | (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

20 | the phrase "subject matter involved in the pending action," were intended to target discovery that

21 | swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

22 | litigate the issues presented by the pleadings but to develop new claims or defenses.). Further,

23 | pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit discovery where "the burden or

24 | expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

25 | the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

26 | the litigation, and the importance of the proposed discovery in resolving the issues."

27 |

28 |

EXHIBIT _____ *B*

PAGE _____ *20*

7

## IV. DISCUSSION

A. General Objections

MGA contends that Mattel has improperly withheld documents based on three generalized objections. First, MGA contends that Mattel has asserted an objection based upon relevance to requests that are not related to facts specifically alleged in MGA's complaint. MGA contends the objection is improper because it essentially grafts a heightened pleading standard onto discovery requests, is inconsistent with the standard for discovery set forth in Rule 26(b), Fed.R.Civ.P., and goes against the very purpose of discovery. MGA denies "fishing" for new claims, contending that it is seeking discovery tending to support or refute existing claims.

Second, MGA contends that Mattel has improperly refused to produce "documents related to MGA's BRATZ dolls unless the documents are 'in the context' of Mattel's BARBIE or MY SCENE products." MGA's Motion at 9:10-11. MGA contends that all of the documents related to Bratz that it seeks are relevant, regardless of whether they refer to or contemplate Barbie or My Scene. In particular, MGA contends that documents related to Bratz, even if they do not refer to Barbie or My Scene, are relevant to its claims that (1) Mattel has exerted pressure on licensees not to license Bratz products; (2) Mattel has exerted pressure on retailers or distributors not to distribute Bratz products; (3) Mattel has tampered with Bratz displays; and (4) Mattel intentionally copied Bratz products.

Third, MGA contends that Mattel has improperly limited its production of My Scene documents to only those documents related to the specific acts of product and packaging infringement identified in MGA's complaint. MGA contends that it is entitled to far more, including documents concerning potential acts of infringement not mentioned in the complaint and documents concerning the development of the My Scene product line from inception of this suit to the present. In particular, MGA contends that documents concerning the current development of My Scene may tend to show continuing infringement, and therefore are relevant to prove that Mattel's conduct is willful.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT _____ B _____

PAGE _____ 21 _____

1      Mattel contends that it has produced documents in response to many of MGA's requests,

2   and will continue to do so.  Mattel objects, however, to those requests that require Mattel to

3   produce virtually every document, anywhere in the world, that mentions MGA, Larian, Bratz, or

4   any other MGA product.  Mattel contends that MGA is engaging in an improper fishing

5   expedition, casting its requests so broadly as to require production of documents relating to

6   products and entire product lines that are irrelevant to the suit.  Mattel also contends that the

7   requests are overbroad because they seek documents about subjects such as quality and pricing

8   which do not appear anywhere in MGA's pleadings.  Id.  Furthermore, Mattel contends that

9   MGA's requests are not linked in any manner to MGA's claims in the suit and do not reference

10   any particular alleged wrongdoing by Mattel.

11      Mattel also contends that responding to MGA's document requests would impose a

12   considerable, unjustifiable burden on Mattel.  Mattel emphasizes that it is a large company, with

13   over 140 subsidiaries and affiliates in approximately 43 different countries.  Mattel represents that

14   it has over 5,000 employees in the United States and more than 25,000 employees at subsidiaries

15   and affiliates worldwide.

16      Mattel also represents that its products are sold in thousands of stores.  It represents that it

17   deals with Wal-Mart, Target, K-Mart, and Toys "R" Us on a daily basis, and that these four

18   retailers have more than 4,500 stores in the United States.  Mattel also represents that it deals with

19   many hundreds more retailers domestically and overseas.  Further, Mattel represents that it has

20   relationships with more than 1,400 licensees and licensors.

21      Mattel also represents that the toys it produces vary widely, including collectible card

22   games, electronic handheld devices, toy cars, and the Barbie doll line.  Mattel asserts that it

23   introduces annually more than 2,000 different types of toys, dolls and other products in more than

24   150 nations throughout the world.  Mattel asserts that many products often involve the creation of

25   many categories of documents relating to design, marketing, consumer and market research,

26   planning, engineering, cost, manufacturing, distribution, sales and finance.  Mattel represents that

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)



EXHIBIT B

PAGE 22

9

1  these types of documents are stored on Mattel's over 800 computer servers worldwide, and that

2  countless others are stored in hardcopy or stored on individual employees' desktop computers and

3  laptops. Furthermore, Mattel represents that many of its network systems, including its e-mail

4  system, are not readily searchable, or searchable at all, by use of keyword terms. For example,

5  Mattel asserts that the computer system used by Mattel's designers and engineers overwhelmingly

6  consists of graphical files whose content cannot be searched by keywords.

7         Mattel estimates that MGA and its products are referenced in millions of pages of

8  documents and computer files at Mattel. More specifically, Mattel contends that many groups

9  across Mattel, such as marketing, consumer research, sales, finance, human resources and safety

10  testing, have documents that refer or relate to MGA or its products in some way. Mattel also

11  contends that a large volume of this information is from third party analysts and third party

12  sources, including retail sales reports that track doll sales across the entire industry, newspaper

13  and magazine articles, commercials and advertisements. Mattel also represents that it collects

14  great quantities of documents about its competitors that are readily available on the Internet or

15  other public sources, including catalogs, advertising, press releases, and media reports, and from

16  retailers and distributors throughout the world.

17         Furthermore, Mattel represents that its documents, particularly its marketing and sales

18  research documents, often reference many competing products, not just the Bratz dolls at issue.

19  Mattel contends that these types of documents would be difficult to search and collect because, in

20  many instances, the only way to determine whether a particular document mentions Bratz would

21  be to review the entire document.

22         Mattel contends that virtually any employee at Mattel might have documents that are

23  responsive to MGA's requests. Mattel estimates that "to locate all such documents would take

24  years, cost millions of dollars, and seriously interfere with the operation of Mattel's business."

25  Mattel's Opposition at 17. Matter also asserts that "[s]uch efforts – including search of Mattel's

26  servers, its employees' computer workstations, hard copy files, computer disks, and video files –

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ B

PAGE _____ 23

10

1   would be in addition to the cost of attorney review of the materials before they are produced in

2   litigation." Id. Mattel also contends that the burden and expense of production is multiplied

3   several times further if Mattel is required to search the files in the possession of its worldwide

4   subsidiaries.

5         Mattel contends that even if the search for responsive documents could be accomplished,

6   the resulting document production would provide MGA with countless documents with little or

7   no relevance. For example, Mattel anticipates that many documents would be discussions of the

8   competition in the context of irrelevant dolls, such as any number of mainline Barbie dolls.

9   Mattel contends that other documents would simply be third party market reports which are

10   equally available to MGA from public sources. Accordingly, Mattel requests that the motion be

11   denied in full.

12         In its reply, MGA counters that the requests are not unduly burdensome. MGA contends

13   that contrary to Mattel's assertions, the requests are factually self-limited, containing restrictive

14   language and defining the outer parameters for the documents sought. Furthermore, MGA

15   contends that it told Mattel that it would be amenable to certain limitations on the number and

16   identities of custodians whose files must be searched, so long as Mattel was amenable to

17   reciprocal accommodations for MGA's own document review. MGA contends that, at a

18   minimum, Mattel should be required to search the physical and electronic files of its employees.

19   MGA contends that Mattel should not be released wholesale from its discovery obligations based

20   on a purported burden, particularly when it failed to work with MGA in good faith to mitigate that

21   burden.

22         Lastly, MGA argues that any burden to Mattel is outweighed by the benefit to be secured

23   from the discovery. MGA contends that it "realistically has no other way of obtaining documents

24   tending to support its claims that Mattel engaged in a pattern of conduct with suppliers,

25   distributors, licensees and others constituting unfair competition except from Mattel." MGA's

26

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ B _____

PAGE _____ 24 _____

11

1   Reply at 10.  Therefore, MGA believes that the benefits of the discovery it seeks are

2   immeasurable and that in contrast, the burden to Mattel is not unreasonable.[1]

3   B. Document Requests

4     In addition to the three general objections described above, Mattel has asserted other

5   objections to certain categories of document requests which MGA contends are improper.  The

6   general objections stated above, as well as the additional objections asserted by Mattel, are

7   reviewed herein in the context of the nine categories of document requests at issue.

8             1. Document Request Nos. 32-33, 61

9     Request nos. 32, 33 and 61 seek production of communications with sales personnel,

10  merchandisers and retailers relating to alteration of displays or retail spacing of MGA products

11  other than Bratz.  MGA contends that the documents it seeks are relevant to the allegation in

12  paragraph 79 of its complaint that "Mattel merchandisers have been caught tampering with

13  MGA's displays, replacing favorably located MGA merchandise with Mattel merchandise

14  instead."  In its reply brief, MGA clarifies that it "seeks information tending to show that at any

15  time after June 2001, Mattel sales personnel tampered with, or directed others to tamper with,

16  MGA's in-store displays."  MGA's Reply at 8.

17    During the meet and confer process, Mattel agreed to produce documents responsive to

18  request nos. 32-33 and 61 insofar as they related to displays, retail spacing, or shelf space for

19  Bratz, but refused to produce responsive documents relating to any other MGA products.  Glad

20  Decl. in Support of MGA's Motion, Ex. 1.  Mattel contends that request nos. 32 and 33 are

21  overbroad and unduly burdensome insofar as they require production of communications relating

22  to displays, retail spacing, or shelf-space for any other MGA products.  Mattel views the requests

23  as a directive to "go out and find, review and produce essentially all of its retailer

24  _____

25    [1] In a footnote, MGA mentions that Mattel has also withheld documents relating to conduct occurring outside of the United States, and that this issue will be addressed in a separate motion.  MGA's Motion at 10, n. 29.

26  Nothing in this Order is intended in any way to permit or foreclose discovery relating to conduct occurring outside of the United States.

27

28   Bryant v. Mattel, Inc.,
 CV-04-09049 SGL (RNBx)



EXHIBIT   B

PAGE   25

12

1    communications about any 'change' in any 'display' or any 'retail spacing' for any MGA

2    product." Mattel's Opposition at 10. Mattel contends that MGA, not Mattel, should bear the

3    burden of identifying specific incidents of alleged tampering, and thereafter Mattel will attempt to

4    find and produce pertinent documents relating to those incidents. Id.

5         Mattel also contends that request no. 61 is overbroad and amounts to an improper fishing

6    expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

7    product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

8    Opposition at 7-8. Mattel also contends that the request has no linkage to any possible consumer

9    confusion between Bratz and My Scene or between the other products mentioned in MGA's

10   complaint or MGA's responses to Mattel's contention interrogatories. Id. at 8.

11        Request nos. 32, 33, and 61 seek documents relevant to MGA's allegation that "Mattel

12   merchandisers have been caught tampering with MGA's displays, replacing favorably located

13   MGA merchandise with Mattel merchandise instead." MGA's allegation of tampering is broader

14   than just Bratz products, and therefore, Mattel's objection to producing responsive documents for

15   MGA products other than the Bratz line is overruled.

16        Further, the requests are not unduly burdensome. Request nos. 32 and 33 are limited to

17   communications between Mattel and its sales personnel and merchandisers relating to alterations

18   of display or retail spacing for MGA products, and therefore do not require Mattel to search for

19   documents from every single one of its employees. Request no. 61 is also reasonably tailored to

20   seek relevant information, requiring production of communications between Mattel and any

21   retailer, sales person or merchandiser referring or relating to the allocation of shelf space, altering

22   of retail displays, or placement of Bratz in retail stores, including but not limited to

23   communications concerning the placement of "Bratz" relative to My Scene. Contrary to Mattel's

24   assertion, request no. 61 does not require Mattel to search for virtually all documents that mention

25   MGA, Larian, Bratz, or any other MGA product, whether or not they have anything to do with

26   anything placed at issue by MGA. Instead request no. 61 is clearly limited to a defined category

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT ____ B ____                    13

PAGE ____ 24 ____

1    of communications with certain individuals and/or entities regarding a defined subject matter.  In

2    addition, MGA indicates in its reply brief that it seeks documents and communications from June

3    2001 forward.  With this temporal limitation, MGA's motion is granted as to request nos. 32, 33

4    and 61.

5                                    2. Document Request Nos. 37-39

6            Request nos. 37 through 39 call for production of Mattel's communications with CARU

7    relating to MGA and restrictions to be placed on MGA, as well as documents supporting Mattel's

8    allegation in its answer that MGA violated CARU standards.  MGA contends that the documents

9    it seeks are relevant to its allegation in paragraph 89 of its complaint that "Mattel used its

10   influence as a major contributor to CARU's budget to induce CARU to place onerous restrictions

11   on MGA advertisements, and to require MGA to amend aspects of commercials that have gone

12   unchallenged in other parties' commercials."

13           In its opposition brief, Mattel represents that is prepared to produce documents that bear

14   on MGA's claims and Mattel's defenses involving CARU, but nothing further.  Mattel contends

15   that the sweep of these requests "goes far beyond any particular advertisements or the allegations

16   in MGA's complaint that Mattel pressured CARU or obtained better treatment different than

17   MGA."  Mattel's Opposition at 10.  Furthermore, Mattel contends that the requests are improper

18   because CARU investigates complaints and claims in confidence.

19           MGA's request nos. 37 and 39 seek information relevant to MGA's allegation that Mattel

20   influenced CARU to place restrictions on MGA's advertisements.  The Federal Rules of Civil

21   Procedure do not require MGA to identify every instance when CARU imposed restrictions or

22   required amendments to MGA's advertisements before propounding discovery on the subject.

23           Request no. 38 is much broader, however, seeking all communications between Mattel

24   and CARU referring or relating to MGA, Larian, Bratz, or MGA products.  Request no. 38 is not

25   limited to the subject of MGA's advertisements, or any other subject that is at issue in the case.

26   Further, request no. 38 is, to a certain extent, cumulative of request nos. 37 and 39.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT ___B___

PAGE ___27___

14

1   Accordingly, MGA's motion is granted with respect to request nos. 37 and 39, but denied
2   as to request no. 38.

3   ### 3. Document Request No. 43

4   Request no. 43 seeks documents relating to any attempts by Mattel to price My Scene
5   below Bratz. MGA contends that the documents it seeks are likely to lead to admissible evidence
6   relating to whether Mattel has an "organic process" for setting prices, or whether it set prices
7   based on confidential information obtained from MGA. MGA's Motion at 13:22.

8   Mattel contends that there is no allegation in MGA's complaint of below-market pricing.
9   Further, Mattel contends that the request is overbroad and seeks documents that have no relevance
10  to any other subject matter in suit.

11  Request no. 43 seeks documents that have no relevance to any claim or defense in the
12  case. There is no allegation in MGA's complaint related to below-market pricing. Nor is there
13  any allegation that Mattel misappropriated confidential pricing information from MGA.
14  Accordingly, MGA's motion is denied as to request no. 43.

15  ### 4. Document Request No. 47

16  Request no. 47 calls for production of documents relating to Mattel's communications
17  with buyers, merchandisers, general merchandise managers, or retailers relating to whether MGA
18  was giving any other U.S. retailer below-market pricing or whether MGA was discontinuing one
19  of its product lines. MGA contends that these documents are relevant to the allegation in
20  paragraph 79 of its complaint that "Mattel has falsely told a major United States retailer that
21  MGA was giving another major United States retailer below-market pricing and falsely told a
22  United Kingdom retailer that MGA was discontinuing one of its lines."

23  Mattel contends that request no. 47 is improper because it demands documents about
24  "alleged statements to an unidentified retailer and an unidentified toy line" without giving Mattel
25  "a hint as to where to look in order to perform a good-faith search for documents." Mattel's
26  Opposition at 12.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___*B*___           15
PAGE ___*28*___

1    Request no. 47 seeks documents relevant to MGA's allegation that Mattel made a false

2  representation to a major United States retailer that MGA was giving another retailer below-

3  market pricing, and falsely told a United Kingdom retailer that MGA was discontinuing a product

4  line.  The Federal Rules of Civil Procedure do not require MGA to identify the businesses to

5  whom Mattel allegedly made the false statements as a precondition to propounding discovery.

6  Nor is MGA required to identify every instance in which Mattel allegedly made such false

7  representations before propounding discovery.  Nevertheless, the request is extremely broad and

8  burdensome, requiring Mattel to search for "all documents referring or relating to any

9  communications between Mattel" and buyers, merchandisers, general merchandise managers, or

10  retailers referring or relating to whether MGA was giving another United States retailer below-

11  marketing pricing, or whether MGA was discontinuing one of its lines.  To alleviate some of the

12  burden to Mattel, the request is hereby limited to require production of only Mattel's

13  communications with any buyers, merchandisers, general merchandise managers or retailers

14  about MGA providing below-market pricing or MGA discontinuing a product line.  With this

15  limitation, MGA's motion is granted as to request no. 47.

16                    5. Document Request Nos. 48 – 50

17    Request nos. 48 through 50 essentially seek all documents referring or relating to Mattel's

18  communications with any buyers, merchandisers, general merchandise managers, retailers,

19  suppliers, licensees, and potential licensees, referring or relating to Bratz, Larian or MGA

20  regarding the origins, design, development, product launch, sales, promotions, advertising,

21  quality, or price of Bratz or any other MGA product.  During the meet and confer, Mattel agreed

22  to produce some, but not all, responsive documents.  In particular, Mattel objected to producing

23  documents relating to the pricing of Bratz or any MGA product.  Mattel also objected to

24  producing documents relating to Bratz unless the documents also referenced Mattel's My Scene

25  or Barbie products.

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT ___B___                    16

PAGE ___29___

1   MGA contends that these documents are relevant to its allegation that Mattel interfered

2   with its business dealings with third parties. In its reply brief, MGA asserts that it seeks

3   documents and communications between Mattel and certain third parties "from June 2001 tending

4   to support or refute MGA's assertions that Mattel interfered with MGA's dealings with such

5   parties by providing false or misleading information concerning MGA products, the ownership of

6   'Bratz' and exerting pressure on these parties not to license or sell MGA products." MGA's

7   Reply at 8.

8       Mattel contends that these requests are overbroad and amount to an improper fishing

9   expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

10  product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

11  Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible

12  consumer confusion between Bratz and My Scene or between the other products mentioned in

13  MGA's complaint or MGA's responses to Mattel's contention interrogatories. Id. at 8.

14      This category of requests is clearly overbroad, requiring production of documents that

15  merely mention MGA, Larian, Bratz or other MGA products, regardless of whether or not they

16  have anything to do with the claims and defenses in the case. MGA has not made any attempt to

17  link these requests to any of the numerous and far-ranging allegations of unfair competition set

18  forth in its complaint. Instead MGA makes a very generalized argument that the requests seek

19  information relevant to its allegation that Mattel interfered with MGA's business dealings with

20  third parties. Furthermore, Mattel has carried its burden of establishing that the burden and

21  expense of complying with the requests far exceed their likely benefit, taking into account the

22  needs of the case. Accordingly, MGA's motion is denied as to request nos. 48 through 50.

23                          6. Document Request Nos. 51 – 55

24      This category of document requests requires production of essentially all documents

25  referring or relating to any communications between Mattel and any public relations firms,

26  members of the press, current or former MGA employees, or former Mattel employees, relating to

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)



EXHIBIT _____ B _____                    17

PAGE _____ 30

1  Bratz, Larian, or MGA regarding the origins, design, development, product launch, sales,
2  promotions, advertising, quality, or price of Bratz or any other MGA product. During the meet
3  and confer process, Mattel agreed to produce some, but not all responsive documents.

4      MGA contends that these documents are relevant to its allegations that Mattel has engaged
5  in serial imitation of MGA products in an attempt to dilute their distinctiveness and create
6  confusion in the marketplace. MGA also contends that these documents are likely to lead to
7  admissible evidence relating to the creation and ownership of Bratz, Mattel's knowledge and
8  awareness of Bratz products and marketing and its attempt to imitate those products and dilute
9  their distinctiveness.

10      Mattel contends that these requests are overbroad and amount to an improper fishing
11  expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA
12  product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's
13  Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible
14  consumer confusion between Bratz and My Scene or between the other products mentioned in
15  MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at 8.

16      Like the previous category of requests, this category of requests is grossly overbroad,
17  requiring production of documents that merely mention MGA, Larian, Bratz or other MGA
18  products, regardless of whether or not they have anything to do with the claims and defenses in
19  the case. MGA has not made any attempt to link these requests to any of the allegations of unfair
20  competition set forth in its complaint or to the responses it provided to Mattel's contention
21  interrogatories. Furthermore, Mattel has carried its burden of establishing that the burden and
22  expense of complying with these requests far exceed their likely benefit, taking into account the
23  needs of the case. Accordingly, MGA's motion is denied as to request nos. 51-55.

24                    7. Document Request Nos. 56 – 58
25      This category of requests requires production of all documents relating to business
26  dealings between any licensee, supplier, manufacturer, retailer, distributor, or merchandiser and

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)


EXHIBIT __B__
PAGE __131__

18

1  MGA. MGA contends that these document requests are specifically tailored to documents in
2  Mattel's possession, custody or control concerning MGA's business dealings with licensees,
3  suppliers, manufacturers, retailers, distributors, or merchandisers, and are directly relevant to its
4  claims that Mattel interfered with MGA's business dealings with third parties.

5        Again, Mattel contends that these requests are overbroad and amount to an improper
6  fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other
7  MGA product, whether or not they have anything to do with anything placed at issue by MGA.
8  Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible
9  consumer confusion between Bratz and My Scene or between the other products mentioned in
10  MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at 8. Mattel
11  also objects to request nos. 57 and 58 insofar as they require Mattel to produce documents that
12  refer "explicitly or implicitly" to business dealings involving MGA.

13        Like the previous two categories of document requests, this category of requests is grossly
14  overbroad. Request nos. 56 and 57 require production of documents referring or relating to
15  MGA's business dealings, without specifying any products or other subject matter limitations.
16  Request no. 58 is narrower, but is unreasonable insofar as it requires Mattel to produce documents
17  that refer "explicitly or implicitly" to business deals involving MGA's Bratz or other products.
18  Furthermore, Mattel has carried its burden of establishing that the burden and expense of
19  complying with the requests far exceed their likely benefit, taking into account the needs of the
20  case. Accordingly, MGA's motion is denied as to request nos. 56 through 58.

21                            <u>8. Document Request Nos. 59, 60, 62-63, 99, 101</u>

22        This category of requests requires production of all documents relating to (a) any
23  interference with or inhibition of the licensing or potential licensing of MGA's products, or
24  relating to any limitations or restrictions on any MGA licensee (request nos. 59, 62-63); (b) any
25  third party's licensing or potential licensing of MGA products (request no. 60); and (c)
26  communications between Mattel and MGA's licensees and distributors referring to MGA, Bratz

27

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

     19

EXHIBIT _____ _B_

PAGE _____ _32_

1   or the claims in this lawsuit (request nos. 99, 101). MGA contends that the documents it seeks are

2   relevant to its allegation that Mattel exerted its influence on retailers and other third parties not to

3   do business with MGA.

4        Mattel contends that request nos. 59, 60, 62 and 63 are overbroad, seeking all documents

5   that might bear on MGA's business without identifying any particular business dealings. Mattel

6   also contends that they are overbroad insofar as they require production of all documents related

7   to "any MGA PRODUCT world wide," where "product" is defined as "each image, character,

8   logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been

9   manufactured, marketed or sold by MGA or others under license." Mattel's Opposition at 9.

10        Mattel also contends that request nos. 99 and 101 are overbroad and amount to an

11   improper fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or

12   any other MGA product, whether or not they have anything to do with anything placed at issue by

13   MGA. Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any

14   possible consumer confusion between Bratz and My Scene or between the other products

15   mentioned in MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at

16   8.

17        Request nos. 59, 60, 62, and 63 seek information relevant to MGA's allegations, including

18   among others, that Mattel "warned a number of companies, including the biggest publishing

19   entity in the United Kingdom, not to license MGA products, or risk retribution," and that Mattel

20   "terminated one of its licensees, apparently in retribution for licensing Bratz." MGA's Complaint

21   at ¶76. They are also reasonably tailored to require production of only those documents and

22   communications that refer or relate to interference with or inhibition of the licensing or potential

23   licensing of MGA's products, that refer or relate to any limitations or restrictions on any MGA

24   licensee, and that refer or relate to any third party's licensing or potential licensing of MGA

25   products. Mattel has not established that searching for theses types of responsive documents is

26   unduly burdensome. Therefore, MGA's motion is granted as to request nos. 59, 60, 62 and 63.

27

28

EXHIBIT _____ B _____

PAGE ____ 33

20

1    In contrast, however, request nos. 99 and 101 are overbroad, requiring Mattel to search for

2    and produce all documents referring or relating to communications between Mattel and any MGA

3    licensee or distributor that refer or relate to MGA, Bratz, this lawsuit, other litigation involving

4    the parties or their employees, claims by MGA against Mattel or claims by Mattel against MGA

5    or its employees.  For example, the requests would potentially require production of documents

6    that merely mentioned MGA and Bratz but that otherwise have no relevance to the claims and

7    defenses in the suit.  Therefore, MGA's motion is denied as to request nos. 99 and 101.

8                              9. Document Request Nos. 64, 65, 66, 67

9    This category of requests requires production of all documents relating to (a) any third

10   party's agreement or decision not to license, manufacture, promote, distribute or sell MGA

11   products or supply materials or services to MGA, or to limit, restrict, curtail or reduce such

12   activities (request nos. 64-65); and (b) any interference with or inhibition of the supply of goods

13   or services to MGA, or of MGA's distribution of its products (request nos. 66-67).  MGA

14   contends that these documents are relevant to its claims that Mattel interfered with MGA's

15   business dealings with distributors, retailers, and other third parties, as alleged in paragraphs 76-

16   79 of its complaint.

17   Mattel contends that these requests are overbroad, seeking all documents that might bear

18   on MGA's business without identifying any particular business dealings.  Mattel also contends

19   that they are overbroad insofar as they require production of all documents related to "any MGA

20   PRODUCT world wide," where "product" is defined as "each image, character, logo, doll, toy,

21   accessory, product, packaging or other thing or matter that is or has ever been manufactured,

22   marketed or sold by MGA or others under license."  Mattel's Opposition at 9.

23   These requests seek information relevant to MGA's allegation that Mattel interfered with

24   its business dealings.  In particular, MGA has alleged that Mattel "warned a number of

25   companies, including the biggest publishing entity in the United Kingdom, not to license MGA

26   products, or risk retribution," and that Mattel "terminated one of its licensees, apparently in

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____
PAGE _____

21

1   retribution for licensing Bratz." MGA's Complaint at ¶76.  MGA's requests are reasonably
2   calculated to lead to information relevant to this allegation.  Although the definition of product is
3   broad, the definition does not render the requests overbroad because they are otherwise limited in
4   subject matter.  Further Mattel has failed to establish that it is unduly burdensome to search for
5   and produce documents responsive to this category of requests.  Therefore, MGA's motion is
6   granted as to request nos. 64, 65, 66, and 67.

7                          10. Document Request Nos. 102-104

8           This category of requests requires production of Mattel's communications with three
9   companies referring to MGA, Bratz or Larian.  MGA contends that these documents are relevant
10  to its claims that Mattel interfered with its business dealings with third parties.

11          Mattel now represents that it will produce communications with Nickelodeon that bear on
12  MGA's allegation regarding sponsorship of the 2005 Kids Choice Awards.  Mattel contends,
13  however, that communications with Cartoon Network or 4kids Entertainment are not relevant to
14  any claim or defense in suit.

15          Mattel's communications with Nickelodeon regarding MGA, Bratz or Larian are relevant
16  in light of MGA's allegation that Mattel was "instrumental in attempting to keep MGA from
17  participating as a sponsor in the 'Kids' Choice Awards.'" Id. at ¶97.  Therefore, MGA's motion
18  is granted as to request nos. 102.  In contrast, MGA has failed to establish that similar
19  communications with Cartoon Network and 4kids Entertainment are relevant to a claim or
20  defense in suit.  Therefore, MGA's motion is denied as to request nos. 103 and 104.

21  //
22  //
23  //
24
25
26
27
28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                            EXHIBIT ___ B___
                                            PAGE ___ 3S___                    22

1

## V. CONCLUSION

2    For the reasons set forth above, MGA's motion to compel is granted in part as to

3  document request nos. 32 ( as modified), 33 (as modified), 61 (as modified), 37, 39, 47 (as

4  modified) , 59, 60, 62, 63, 64, 65, 66, 67, and 102, and denied in part as to document request nos.

5  38, 43, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 99, 101, 103 and 104.  MGA's request for

6  sanctions is denied.  Mattel shall produce responsive documents as set forth above no later than

7  June 15, 2007.

8    Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

9  Master, MGA shall file this Order with the Clerk of Court forthwith.

10

11  Dated: May 22, 2007

            HON. EDWARD A. INFANTE (Ret.)
12                      Discovery Master

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

23

EXHIBIT ___ *B*___

PAGE ___ *34*___

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 22, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DATED NOVEMBER 22, 2006 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 22, 2007, at San Francisco, California.

_____
ANTHONY SALES

EXHIBIT _____ *B*

PAGE _____ *57*

# EXHIBIT C

## Albert Villamil

**From:** Timothy Alger
**Sent:** Tuesday, April 08, 2008 2:21 PM
**To:** Albert Villamil
**Subject:** FW:

**Attachments:** 2444416_Joint Report re Pending Motions - 3-24-08.DOC



2444416_Joint
Report re Pendin...

-----Original Message-----
From: joncorey@quinnemanuel.com [mailto:joncorey@quinnemanuel.com]
Sent: Monday, March 24, 2008 1:35 PM
To: Eckles, Paul M (NYC); Matthew Werdegar
Cc: Dylan Proctor
Subject:

Following up on Ms. Chan's email today, attached is the form that we propose submitting to Judge Infante.

I not that there is some disagreement as to whether the meet and confer process is complete.  I have elected to include those motions that the moving party wishes to be heard.  For example, Mattel does not understand that the MGA motion regarding electronic mail is ripe, given that Mattel expressly requested that MGA provide a concrete proposal searching Mattel's e-mails and cost-shifting.  MGA has not done so, but I have included it on the list of motions to be heard on April 4, 2008.

Please let me know if you have any comments, or whether this can go to Judge Infante.

Best regards,


Jon Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax:   (213) 443-3100
E-mail:  joncorey@quinnemanuel.com <blocked::mailto:username@quinnemanuel.com>
Web:  www.quinnemanuel.com <blocked::http://www.quinnemanuel.com/>

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT ___C___

PAGE ___38___

1

# EXHIBIT D

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3223**

WRITER'S INTERNET ADDRESS
**timalger@quinnemanuel.com**

March 25, 2008

**VIA FACSIMILE & U.S. MAIL**

Robert J. Herrington, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave., Suite 3400
Los Angeles, CA  90071

Re:  MGA Entertainment, Inc. v. Mattel, Inc.

Dear Rob:

I understand that MGA has proposed placing MGA's Motion to Compel Mattel to Produce
E-Mail ("E-mail Motion") on calendar for Judge Infante's next hearing.  This is a surprise to us
because there has been no attempt by MGA to engage in a good-faith meet-and-confer with
Mattel regarding the Motion.  At the February 11, 2008 hearing, Judge Infante found that the
E-mail Motion could not be heard because there had not been sufficient discussion among the
parties.  (*See* Feb. 11, 2008 Trans. at 49:19-50:19 (observing that "an adequate meet and confer
session between you, in good faith, as required by the rules, would lead to a resolution of this
question," and ordering the parties "to prepare a joint report or a stipulated order, if you will, as
to what constitutes a reasonable search for electronic discovery").)

Counsel discussed the E-mail Motion briefly at the omnibus meet-and-confer on February 21,
2008.  At that session, I reviewed the deficiencies of the Motion, including the fact that the data
sought necessarily involves Phase 2 discovery, which is stayed, and the overbreadth of the
Motion, which is untethered to any particular document requests.  Further, I proposed again – as
Mattel has done repeatedly – that MGA propose a protocol for any search, including key words,
particular custodians, and a cost-shifting plan.  Paul Eckles and Raoul Kennedy did not make any
meaningful response as to any of these issues on February 21, and we have heard nothing further.
MGA has not even followed up with any specifics relating to the so-called "limited search"
proposed for the first time, in general terms, by Raoul at the February 11, 2008 hearing.

**EXHIBIT** _____ D

**PAGE** _____ 39

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

Robert J. Herrington, Esq.
March 25, 2008
Page 2

Accordingly, nothing has changed since February 11 that would justify a hearing on the motion. Mattel remains willing to engage in the good-faith meet-and-confer ordered by Judge Infante, but until that occurs, the E-mail Motion cannot be heard.

We look forward to hearing from you.

Very truly yours,

Timothy L. Alger

cc: Matthew Werdegar, Esq.

EXHIBIT _____ D _____

PAGE _____ 4 u _____

# EXHIBIT E

## Albert Villamil

**From:** Timothy Alger
**Sent:** Tuesday, April 08, 2008 2:23 PM
**To:** Albert Villamil
**Subject:** FW: MGA's email motion

**Attachments:** 3-25-08 Letter from Timothy Alger to Robert Herrington.pdf

 

Untitled Attachment 3-25-08 Letter from
Timothy Al...

-----Original Message-----
From: Eckles, Paul M [mailto:Paul.Eckles@skadden.com]
Sent: Wednesday, March 26, 2008 8:18 AM
To: Timothy Alger
Cc: Herrington, Robert J (LAC); Jon Corey
Subject: MGA's email motion

Tim: We received your letter directed to Rob Herrington relating to MGA's motion to
compel the production of email. I have been dealing with Jon Corey in connection with the
motions to be heard at the next hearing. Both sides have disagreements about the adequacy
of the meet-and-confer process as to certain motions. However, given the need to agree
upon an agenda and move this process forward, I thought we had reached an understanding
that the parties could designate the motions they believe should be heard irrespective of
the opposing party's position. Each side can obviously address their positions about the
purported inadequacy of the opposing side's meet-and-confer efforts at the hearing.

As to your claim relating to MGA's email motion, we believe Mattel is the party that has
failed to engage in a good-faith meet-and-confer effort. At our meeting on February 21,
we proposed a search of backup tapes on 85 day intervals; of the accounts of the 68
individuals MGA identified in its motion; and using either whatever search terms Mattel
has used to search its other databases (as to which you have refused to provide any
information) or the terms NHB, MGA, Bratz, Larian, and Bryant. We also stated that our
position is that Mattel should bear the costs of the search (just as MGA incurred the
costs of its email searches). You rejected our proposal out-of-hand and have refused to
make any sort of counter-proposal. Judge Infante can obviously make his own judgment as
to who is being unreasonable.

In any event, please let me know by the close of business today if we have an agreement as
to the joint report. If not, we will have no choice but to make separate submissions to
Judge Infante -- which I think would be unfortunate and counter-productive. I think it is
in both side's interest to get this resolved so we can get some hearing dates scheduled.

I will look forward to hearing from you.


Paul M. Eckles
Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square New York, NY 10036
(212) 735-2578

--------------------------------------------------------------------------------
****************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless
otherwise expressly indicated, any federal tax advice contained in this message was not
intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-
related penalties under the Internal Revenue Code or applicable state or local tax law

EXHIBIT ___E___

1

PAGE ___4 1___

provisions or (ii) promoting, marketing or recommending to another party any.tax-related
matters addressed herein.
****************************************************
****************************************************

This email and any attachments thereto, is intended only for use by the addressee(s) named
herein and may contain legally privileged and/or confidential information. If you are not
the intended recipient of this email, you are hereby notified any dissemination,
distribution or copying of this email, and any attachments thereto, is strictly
prohibited. If you receive this email in error please immediately notify me at (212)
735-3000 and permanently delete the original copy and any copy of any email, and any
printout thereof.

Further information about the firm, a list of the Partners and their professional
qualifications will be provided upon request.
****************************************************
================================================================================

EXHIBIT _E_

PAGE_____42_____

# EXHIBIT F

**Albert Villamil**

| | |
|---|---|
| **From:** | Timothy Alger |
| **Sent:** | Tuesday, April 08, 2008 2:28 PM |
| **To:** | Albert Villamil |
| **Subject:** | FW: MGA's email motion |

-----Original Message-----
From: Timothy Alger
Sent: Wednesday, March 26, 2008 3:46 PM
To: 'Eckles, Paul M'
Cc: 'Herrington, Robert J (LAC)'; Jon Corey
Subject: RE: MGA's email motion

Paul:

I'm going to let you and Jon discuss the joint report. However, your alleged description of the February 21 meet and confer is nothing close to the truth. There was no proposal by MGA for Mattel to use search terms for an email search that had been previously used by Mattel for other searching. Further, I informed you (as I informed your colleagues at Skadden several previous times, and your predecessors at O'Melveny countless times before Skadden's arrival on the scene) that untethered searching for such terms as MGA, Bratz, Larian and Bryant (a notion that has been rejected by Judge Infante) will generate innumerable irrelevant "hits" -- numbers that will certainly be in the millions. MGA and its products are mentioned countless times in documents that have zero to do with the claims in this litigation, and I gave you the example of NPD reports, which are used and transmitted throughout Mattel (as with any toy company) on a continuing basis by countless employees. It's quite clear that the folks on your side of the case who are making these demands have not had occasion to roll up their sleeves and actually wade through the kind of materials that we are dealing with here. Imagine searching the servers at Ford Motor Co. for "General Motors" and "Chevrolet." My request for specific search proposals that include combinations of terms that can result in a search result that actually can be reviewed for relevance, responsiveness, and privilege was greeted with a shrug from you. That is not a meaningful meet-and-confer.

Further, that MGA chose a strategy whereby it waited more than a year after discovery resumed in this case and then gathered up and disgorged millions of pages of irrelevant documents from their servers, without any discussion with Mattel regarding protocol and costs, does not compel Mattel to do the same. See FRCP 26(b). Indeed, it's become quite clear that MGA's belated dumping of documents -- including about 2.7 million pages of spreadsheets -- was a sanctionable abuse of discovery.

Finally, MGA still hasn't responded to the issue of the Phase 2 stay. As discussed in Mattel's papers, in Chris Tayback's argument at the February 11 hearing, and by me at the February 21 meet-and-confer, unprivileged emails that exist in electronic form today would necessarily implicate Phase 2 issues, not the matters before the Court in the Phase 1 trial. Judge Infante clearly wanted the parties to grapple with the Phase 2 stay in relation to all of the the discovery motions, including MGA's motion to compel emails. We haven't heard one word from MGA on this point. Indeed, the fact that MGA hasn't even given this question serious thought is proven by the fact many of the people on MGA's list of 68 custodians are purely Phase 2 witnesses. What we have here is posturing by MGA, not an attempt (as required by Judge Infante) to engage in a good-faith meet-and-confer.

Tim

Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3223
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100

EXHIBIT ___F___

PAGE ___43___

1

E-mail:  timalger@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and
confidential use of the recipient(s) named above.  This message may be an attorney-client
communication and/or work product and as such is privileged and confidential.  If the
reader of this message is not the intended recipient or agent responsible for delivering
it to the intended recipient, you are hereby notified that you have received this document
in error and that any review, dissemination, distribution, or copying of this message is
strictly prohibited.  If you have received this communication in error, please notify us
immediately by e-mail, and delete the original message.


-----Original Message-----
From: Eckles, Paul M [mailto:Paul.Eckles@skadden.com]
Sent: Wednesday, March 26, 2008 8:18 AM
To: Timothy Alger
Cc: Herrington, Robert J (LAC); Jon Corey
Subject: MGA's email motion


Tim:  We received your letter directed to Rob Herrington relating to MGA's motion to
compel the production of email.  I have been dealing with Jon Corey in connection with the
motions to be heard at the next hearing.  Both sides have disagreements about the adequacy
of the meet-and-confer process as to certain motions.  However, given the need to agree
upon an agenda and move this process forward, I thought we had reached an understanding
that the parties could designate the motions they believe should be heard irrespective of
the opposing party's position.  Each side can obviously address their positions about the
purported inadequacy of the opposing side's meet-and-confer efforts at the hearing.

As to your claim relating to MGA's email motion, we believe Mattel is the party that has
failed to engage in a good-faith meet-and-confer effort.  At our meeting on February 21,
we proposed a search of backup tapes on 85 day intervals; of the accounts of the 68
individuals MGA identified in its motion; and using either whatever search terms Mattel
has used to search its other databases (as to which you have refused to provide any
information) or the terms NHB, MGA, Bratz, Larian, and Bryant.  We also stated that our
position is that Mattel should bear the costs of the search (just as MGA incurred the
costs of its email searches).  You rejected our proposal out-of-hand and have refused to
make any sort of counter-proposal.  Judge Infante can obviously make his own judgment as
to who is being unreasonable.

In any event, please let me know by the close of business today if we have an agreement as
to the joint report.  If not, we will have no choice but to make separate submissions to
Judge Infante -- which I think would be unfortunate and counter-productive.  I think it is
in both side's interest to get this resolved so we can get some hearing dates scheduled.

I will look forward to hearing from you.


Paul M. Eckles
Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square New York, NY 10036
(212) 735-2578

--------------------------------------------------------------------------
**************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless
otherwise expressly indicated, any federal tax advice contained in this message was not
intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-
related penalties under the Internal Revenue Code or applicable state or local tax law
provisions or (ii) promoting, marketing or recommending to another party any tax-related
matters addressed herein.
**************************************************
**************************************************

EXHIBIT ___F___

PAGE ___44___

**EXHIBIT G**

**Albert Villamil**

| From: | Timothy Alger |
|---|---|
| Sent: | Monday, April 07, 2008 6:23 PM |
| To: | Albert Villamil |
| Subject: | FW: MGA's email motion |

-----Original Message-----
From: Eckles, Paul M [mailto:Paul.Eckles@skadden.com]
Sent: Thursday, March 27, 2008 11:13 AM
To: Timothy Alger
Cc: Herrington, Robert J (LAC); Jon Corey
Subject: RE: MGA's email motion

Tim:  We respectfully disagree.  I won't belabor the point, but we discussed these issues
at our meeting.

Jon:  Do we have an agreement as to the joint report?


-----Original Message-----
From: Timothy Alger [mailto:timalger@quinnemanuel.com]
Sent: Wednesday, March 26, 2008 6:46 PM
To: Eckles, Paul M (NYC)
Cc: Herrington, Robert J (LAC); Jon Corey
Subject: RE: MGA's email motion

Paul:

I'm going to let you and Jon discuss the joint report.  However, your alleged description
of the February 21 meet and confer is nothing close to the truth.  There was no proposal
by MGA for Mattel to use search terms for an email search that had been previously used by
Mattel for other searching.  Further, I informed you (as I informed your colleagues at
Skadden several previous times, and your predecessors at O'Melveny countless times before
Skadden's arrival on the scene) that untethered searching for such terms as MGA, Bratz,
Larian and Bryant (a notion that has been rejected by Judge Infante) will generate
innumerable irrelevant "hits" -- numbers that will certainly be in the millions.  MGA and
its products are mentioned countless times in documents that have zero to do with the
claims in this litigation, and I gave you the example of NPD reports, which are used and
transmitted throughout Mattel (as with any toy company) on a continuing basis by countless
employees.  It's quite clear that the folks on your side of the case who are making these
demands have not had occasion to roll up their sleeves and actually wade through the kind
of materials that we are dealing with here.  Imagine searching the servers at Ford Motor
Co. for "General Motors" and "Chevrolet."  My request for specific search proposals that
include combinations of terms that can result in a search result that actually can be
reviewed for relevance, responsiveness, and privilege was greeted with a shrug from you.
That is not a meaningful meet-and-confer.

Further, that MGA chose a strategy whereby it waited more than a year after discovery
resumed in this case and then gathered up and disgorged millions of pages of irrelevant
documents from their servers, without any discussion with Mattel regarding protocol and
costs, does not compel Mattel to do the same.  See FRCP 26(b).  Indeed, it's become quite
clear that MGA's belated dumping of documents -- including about 2.7 million pages of
spreadsheets -- was a sanctionable abuse of discovery.

Finally, MGA still hasn't responded to the issue of the Phase 2 stay.
As discussed in Mattel's papers, in Chris Tayback's argument at the February 11 hearing,
and by me at the February 21 meet-and-confer, unprivileged emails that exist in electronic
form today would necessarily implicate Phase 2 issues, not the matters before the Court in
the Phase 1 trial.  Judge Infante clearly wanted the parties to grapple with the Phase 2
stay in relation to all of the the discovery motions, including MGA's motion to compel
emails.  We haven't heard one word from MGA on this point.  Indeed, the fact that MGA

1

EXHIBIT _____ _G1_

_45_

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On April 9, 2008, I served true copies of the following documents described as:

**SUPPLEMENTAL DECLARATION OF TIMOTHY L. ALGER IN OPPOSITION TO MGA'S MOTION TO COMPEL PRODUCTION OF E-MAILS**

on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>  Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | **Attorneys for *MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Isaac Larian and MGAE de Mexico, S.R.L. de C.V.***<br>Telephone: 213.687.5000<br>Facsimile: 213.687.5600 |
| Overland Borenstein Scheper & Kim, LLP<br>  Mark E. Overland, Esq.<br>  David C. Scheper, Esq.<br>  Alexander H. Cote, Esq.<br>601 West Fifth Street, Suite 12th Floor<br>Los Angeles, CA 90017 | **Attorneys for *Carlos Gustavo Machado Gomez***<br><br>Telephone: 213.613.4655<br>Facsimile: 213.613.4656 |
| Keker & Van Nest, LLP<br>  John W. Keker, Esq.<br>  Michael H. Page, Esq.<br>  Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111 | **Attorneys for *Carter Bryant***<br><br>Telephone: 415.391.5400<br>Facsimile: 415.397.7188 |

[√]    **[PERSONAL]** by personally delivering the documents listed below to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 9, 2008, at Los Angeles, California.

David Quintana

07209/2464040.1