QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>  Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]**<br><br>REPLY IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD<br><br>Phase 1<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

07132/2465528.1

REPLY IN SUPPORT OF MATTEL, INC.'S EX PARTE APPLICATION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING

**Preliminary Statement**

Defendants' main argument is that the Discovery Master lacks the authority to change the schedule. That might be a problem if Mattel's *ex parte* sought a change in the schedule. It doesn't. It seeks reasonable access to important original documents that have been produced for inspection in this action previously but which now are being unfairly withheld from Mattel so that Mattel's experts cannot fairly review and address new issues raised by MGA's expert reports. The separate *ex parte* application to change the schedule is properly before Judge Larson.

Defendants raise no persuasive argument in defense of Mattel's present *ex parte,* and it should be granted without futher delay.

**Argument**

**I.  MATTEL'S APPLICATION IS PROPERLY IN FRONT OF THE DISCOVERY MASTER**

MGA's main argument -- that only Judge Larson may grant Mattel the relief it has requested because he "was the judicial officer that entered the order" -- is a strange *non sequitur.*

Mattel is *not* seeking a modification of a scheduling order in its application. Rather, it is seeking reasonable access for its two experts to certain vital Bryant original documents so that they can properly challenge new claims raised in MGA's experts' rebuttal reports -- clearly an expert discovery matter. As Judge Larson has said many times, the proper venue for discovery disputes is the Discovery Matter. See also Court's December 6, 2006 Order Appointing a Discovery Master.[1]

---

[1] See Supplemental Declaration of Diane Hutnyan ("Supplemental Hutnyan Dec.") , Exh. 2 (December 6, 2006 Order).

07132/2465528.1

-1-
REPLY IN SUPPORT OF MATTEL, INC.'S EX PARTE APPLICATION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING

Moreover, the concern Defendants raised as to the scheduling-related supplemental expert report issue -- as they freely acknowledge they knew before filing their motion[2] -- has been already put before Judge Larson. Mattel has brought a separate *ex parte* application requesting a change in the scheduling order such that, after Mattel's experts have a chance to review the documents, they may file supplemental expert reports.[3]

## II. MATTEL WOULD BE IRREPARABLY HARMED IF IT IS NOT GRANTED ACCESS TO THE REQUESTED DOCUMENTS

Defendants choose to ignore, not recognize and counter, the facts that Mattel provided showing that it filed its application shortly after it learned of MGA's reliance on the obscured pencil lines Defendants claim exist and rebut Mattel's experts' findings.[4] MGA and Bryant cannot show a reasonable basis for Mattels' experts to have known that something that they either did not see and/or believed was not significant[5] would be something MGA would seize upon as the focus of its rebuttal expert reports.

Moreover, Defendants' assertion that Mattel's experts had sufficient time to do the requested examination of the documents is belied by MGA's own purported expert, Mr. Kullman. As he testified just yesterday, forensic document examination is a time-consuming process.[6] Mr. Kullman testified that it would take him an "extended period of time" for him to do a basic examination of the seven boxes, and that with three helpers, he alone spent from 50-100 work hours just

---

[2] Opposition Brief, at n.4.
[3] See Supplemental Hutnyan Dec., Exh. 4 (*Ex Parte* Application for Leave to File Supplemental Expert Reports, filed on April 8, 2008 before the District Court).
[4] Opposition Brief, at n.5.
[5] As explained in Mattel's Application, some of the obscured or faint pencil lines were detected but there were others apparently were not.
[6] See Supplemental Hutnyan Dec., Exh. 3 (Rough Deposition Transcript of Robert Kullman at 196:4-10; 197:17-19; 202:5-205:16).

processing the small subset of documents (approximately 200) that were the subject of Mr. Flynn's initial report:

> Q   Could you go through all those seven boxes and do that kind of basic examination in eight days?
>
> MR. SLOAN: Same objection.
>
> THE WITNESS: Eight days of ten-hour days?
>
> BY MS. HUTNYAN:
>
> Q   Sure.
>
> A   No. I couldn't. Some people may be able to. I couldn't, no.
>
> Q   If -- could you do it in 15 days?
>
> MR. SLOAN: Same objection.
>
> BY MS. HUTNYAN: 6 [sic]
>
> A   First off, as I stated before, I didn't examine all the document tz [sic] in the box. Had I examined all the documents in the box for each of the examinations that I conducted on the majority of the -- of the ones I did on the tracing papers, on the notebook, and on the mixed media, I don't know how long it would take me, as an individual, by myself, but it would be a career maker. I'm sure I would have to devote the majority of my time for an extended period of time to do that. So -- but as I stated, the examinations that I did alone, I probably spent anywhere from 50 to 100 hours, I would think. I don't know exactly, but I would think that much time.[7]

Kullman's testimony establishes that it would be extremely difficult, if not impossible, for a forensic document examiner to run the full spectrum of tests on all

---

[7] Id., Exh. 3, at 194:19-195:17.

07132/2465528.1

-3-
REPLY IN SUPPORT OF MATTEL, INC.'S EX PARTE APPLICATION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING

1  seven boxes of documents during in an 8-day period, much less the 3-day period
2  that Mr. Flynn, the primary expert whose analysis MGA's experts are trying to rebut
3  as to this aspect of the tracing issue, had.

    Kullman also admitted that it is common for an examiner not to determine the need for a particular test or examination, or the need to see the documents once again, until after making other findings.

> Q  Well, is it common for you to do an examination on, let's say, a group of documents for a case and then come back and make findings later based on a further examination of those documents that you didn't notice before based on your -- based on examination of other materials in the case?
>
> A  It can happen.
>
> Q  Have you had that happen before?
>
> A  With medical records, generally, sure. I've had it happen where I've examined handwriting, for instance, and then said, well, what I can tell you is, it's probably written by the same person or probably not, but I need additional known samples to determine -- make a more determined -- definitive determination. So then I get it back, I reexamine, come up with findings, sure. I examined documents before that I never -- the task may have been to determine if page 1 was a page substitution in a three-page document. I may find folds that are different, staple holes that are different. So I say, yes. Page 1 was not always attached to page 2 and 3. And then later on, they call back and say, look. We need to know if there are any other

07132/2465528.1

-4-
REPLY IN SUPPORT OF MATTEL, INC.'S EX PARTE APPLICATION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING

evidence of impressions if page 1 was dated when it was
attached to page 2. So I've reexamined things later.[8]

This is a simple matter of fairness. Mattel needs two short weeks tof its experts to be allowed to do the same non-destructive infrared tests and examination so that they can see the supposedly significant faint pencil lines that Mr. Kullman and Dr. Lyter are relying upon. Failure to allow this access will be irreparably prejudicial to Mattel at trial.

### III. DEFENDANTS HAVE WAIVED THEIR ABILITY TO FILE A SECOND OPPOSITION TO MATTEL'S APPLICATION

Defendants characterize their opposition to Mattel's application as "preliminary." They ask, in the event that their arguments prove unpersuasive to the Court that, "the Discovery Master set an appropriate schedule for the submission of [Defendants' additional] opposition." See Opposition at 3. But Defendants do not cite any authority establishing that they have the right to file a second opposition. An ex *parte* motion is designed to bring about a speedy resolution of an issue that could create irreparable harm if delayed. There is no reason to adjudicate the one discrete issued Defendants chose to raise, wait for the Discovery Master's ruling, and then establish a separate briefing schedule so they may raise new arguments. This would delay the process and defeat the purpose of the *ex parte* application. The Discovery Master has before him all the necessary information and arguments to render a decision on Mattel's application.

The additional arguments Defendants hope to discuss more later were all known to them before they submitted their opposition. Before Mattel brought its *ex parte* application, MGA and Bryant each sent a long letter raising several complex arguments in opposition to Mattel's simple request and threatening

---
[8] Id., Exh. 3 at 202:9-203:9.

sanctions if Mattel proceeded. All of the timeliness, as well as the Mattel-has-had-enough-time argument, that Defendants touch upon in their Opposition, were in these letters.[9] MGA and Bryant had fleshed these arguments in their letters days before but *chose* not to place them before the Discovery Master.

As for any new arguments Defendants did not raise in their opposition, they are waived. See Batzel v. Smith, 372 F. Supp. 2d 546, 554 (C.D. Cal. 2005) citing Kratville v. Runyon, 90 F.3d 195 (7th Cir. 1995) ("because Plaintiff failed to raise the issue of waiver in her Opposition to Defendant Cremers' Motion for Summary Judgment, choosing to focus on the application of California law with respect to res judicata, Plaintiff has waived her waiver argument").

---

[9] See Letter from M. Werdegar to D. Hutnyan, dated April 3, 2008 and Letter from M. Sloan to D. Hutnyan, dated April 4, 2008 attached as Exhibits 15 and 16 to the Declaration of Diane Hutnyan in support of Mattel, Inc.'s *Ex Parte* Application for Access to Certain Bryant Originals for Expert Examination and Imaging. At no time did did either Bryant or MGA mention their belief that the Discovery Master is precluded from adjudicating Mattel's application. Also, during the two telephonic meet and confers, held with Matt Werdegar, Matt Sloan and Allen Lanstra on April 7, no mention of this novel theory was made. See Supplemental Hutnyan Dec. at ¶ 1. It was not until after Mattel filed its application, just hours before Defendants' opposition was due, that Defendants raised this argument in an email only addressed to Ms. Hutnyan, whom defendants knew would be taking a deposition all day. See Supplemental Hutnyan Dec., Exh. 1 (Email from Matthew Werdegar to Diane Hutnyan dated April 8, 2008).

07132/2465528.1

-6-

REPLY IN SUPPORT OF MATTEL, INC.'S EX PARTE APPLICATION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING

## Conclusion

For the foregoing reasons, Mattel's *Ex Parte* Application for Access to Certain Bryant Originals for Expert Examination and Imaging should be granted.

DATED: April 9, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Diane Hutnyan
Diane Hutnyan
Attorneys for Mattel, Inc.