QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| Defendant. | [PUBLIC REDACTED] SECOND SUPPLEMENTAL DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION |
| AND CONSOLIDATED ACTIONS | |

Date: April 11, 2008
Time: 9:00 a.m.
Place: Telephonic

**Phase 1:**
Discovery Cutoff:        January 28, 2008
Pre-Trial Conference:   May 5, 2008
Trial Date:               May 27, 2008

## DECLARATION OF B. DYLAN PROCTOR

I, B. Dylan Proctor, declare as follows:

1.     I am a member of the bar of the State of California and a member of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.  I make this declaration in further support of Mattel's Motion to Compel MGA to Produce Communications Regarding This Litigation, filed on February 4, 2008 ("Motion").  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.     As stated in its Motion, Mattel seeks three categories of communications regarding this action.  The first category is communications involving senior MGA employees.  The second involves MGA's outside agents and attorneys.  The third involves MGA employees who are former Mattel employees.

3.     Pursuant to the Discovery Master's directions, I conferred with Amy Park, counsel for MGA, on February 20 and 27, 2008, regarding this Motion.  As to the second category, the parties remain at an impasse -- MGA refuses to produce its counsel's non-privileged communications with third-parties relating to this action, and refuses to conduct any search for them.  As to the other two categories, however, it initially appeared compromise was likely.

4.     At the meet and confer, Ms. Park stated that MGA would agree to search for and produce -- at its own expense -- communications relating to this action involving senior MGA personnel and former Mattel employees, if Mattel would limit its request to 10 individuals whose files need to be searched.  (As to the second category, the motion was to go forward given the parties' clear lack of agreement.)  After whittling down Mattel's substantially longer list dramatically, I offered to limit Mattel's request as to categories 1 and 3 to 23 individuals whose files would need to be searched.  MGA refused.

1      5.     In a further effort to compromise, I then questioned whether MGA

2 would agree to honor Mattel's request as to 10 individuals for Phase 1 of the

3 litigation, with the understanding that Mattel's motion would be held in abeyance for

4 specified individuals whose communications are more likely pertinent to Phase 2.

5 MGA again refused.  I also questioned whether MGA would produce its documents

6 as to all 23 requested individuals if Mattel were to agree to split the cost of doing so.

7 MGA refused this as well.

8      6.     For all the reasons set forth in Mattel's motion papers, Mattel believes it

9 is entitled to a production of communications relating to this action by all senior

10 MGA personnel and former Mattel employees -- individuals whose communications

11 about this case are likely to be probative.  However, Mattel respectfully submits

12 that, at the very least, MGA should be ordered to produce non-privileged

13 communications relating to this action involving the following key senior MGA

14 personnel and former Mattel employees, as well as MGA's outside counsel.

15      a.    <u>Isaac Larian</u>:  Mr. Larian is the President and CEO of MGA.  He

16 is at the heart of this case.  His non-privileged communications regarding this action

17 are highly likely to be relevant, and Mattel submits are clearly discoverable.

18      b.    <u>Paula Garcia</u>:  Ms. Garcia is likewise at the heart of this

19 litigation.  The Discovery Master has recognized that "Ms Garcia is, without

20 question, one of the most important witnesses in this case."  <u>See</u> Order Granting

21 Mattel's Motion for an Extension of Time to Depose Paula Garcia in Her Individual

22 Capacity and as a 30(b)(6) Designee, dated August 14, 2007, at 9, a true and correct

23 copy of which is attached as Exhibit 1.  Ms. Garcia has been the product manager

24 for Bratz since the product's inception at MGA.  <u>Id.</u>  Further, she was the first person

25 at MGA with whom Bryant spoke, and was present when Bryant first presented

26 Bratz to Isaac Larian.  <u>Id.</u>  Ms. Garcia also met with Bryant and Margaret Leahy to

27

28

-2-
SECOND SUPP. DECL. OF B. DYLAN PROCTOR ISO MATTEL'S MOTION TO COMPEL MGA TO PROD.
COMM'NS RE LITIGATION

1   discuss doll sculpting at a time when Bryant was still employed at Mattel. Id. Her

2   non-privileged communications about this case are highly likely to be relevant.

3               c.      Maria Elena Salazar:  Ms. Salazar is a Sample Maker Supervisor

4   at MGA.  See MGA Entertainment, Inc.'s Corrected Fifth Supplemental Response to

5   Interrogatory No. 41 of Mattel, Inc.'s Revised Third Set of Interrogatories, dated

6   March 28, 2008, a true and correct copy of which is attached as Exhibit 2.  She

7   worked at Mattel until in or about March 2001.  See MGA 0886443, a true and

8   correct copy of which is attached as Exhibit 3.  Prior to that -- i.e., while still

9   employed by Mattel -- she worked with Veronica Marlow on Bratz fashions.  See

10  Deposition Transcript of Veronica Marlow, dated Dec. 28, 2007 ("Marlow Tr.") at

11  363:7-364:18, a true and correct copy of which is attached as Exhibit 4.  To my

12  knowledge, MGA did not disclose this, ever.  Rather, Mattel first learned it at

13  Veronica Marlow's deposition three months ago.  Salazar's communications about

14  this case are clearly relevant.

15              d.      Margaret Leahy:  Ms. Leahy was a Mattel employee until

16  September 2000.  See Margaret Leahy's MGA Application For Employment, dated

17  February 14, 2005, a true and correct copy of which is attached as Exhibit 5.  While

18  Bryant was still employed by Mattel, Bryant solicited Leahy to sculpt the Bratz dolls

19  and introduced her to MGA.  Deposition Tr. of Carter Bryant ("Bryant Depo."), Vol.

20  I, dated November 4, 2004 at 68:22-71:13, a true and correct copy of which is

21  attached as Exhibit 6.  Ms. Leahy also attended meetings with Bryant and Paula

22  Garcia to discuss Bratz doll sculptures when Bryant was still employed at Mattel.

23  Id. at 78:11-81:8.  Leahy claims to have created the first Bratz sculpt and, according

24  to Paula Garcia, was the sole sculptor of Bratz in the key 2000 time period.

25  Deposition Tr. of Paula Garcia ("Garcia Depo."), Vol. I, dated May 24, 2007 at

26  255:1-17, Garcia Depo., Vol. II, dated May 25, 2007 at 629:6-18, a true and correct

27  copy of which is attached as Exhibit 7.  By Leahy's account, it was she (and not

28

1   Bryant) who created the appearance of Bratz.  Deposition Tr. of Margaret Leahy

2   ("Leahy Depo."), dated December 12, 2007 at 275:2-10, a true and correct copy of

3   which is attached as Exhibit 8.  Leahy was employed by MGA at least from April

4   2005 to March 2007.  See MGA Entertainment, Inc.'s Corrected Fifth Supplemental

5   Response to Interrogatory No. 41 of Mattel, Inc.'s Revised Third Set of

6   Interrogatories, dated March 28, 2008, Exhibit 2.  Her communications about this

7   case clearly will be relevant.

8             e.     Mercedeh Ward:  Ms. Ward is a former Mattel employee who

9   MGA hired in or about October 2000 to work on Bratz as a Senior Product

10  Designer, with Paula Garcia.  See MGA Entertainment, Inc.'s Corrected Fifth

11  Supplemental Response to Interrogatory No. 41 of Mattel, Inc.'s Revised Third Set

12  of Interrogatories, dated March 28, 2008, Exhibit 2.  Carter Bryant testified that it

13  was only after Ms. Ward was hired by MGA that the development process really got

14  started.  See Deposition Transcript of Carter Bryant, Volume II, dated November 5,

15  2004 at 279:12-280:1, a true and correct copy of which is attached as Exhibit 9.

16  MGA fired Ms. Ward in or about January 2001, and subsequently rehired her in or

17  about March 2005.  See MGA Entertainment, Inc.'s Corrected Fifth Supplemental

18  Response to Interrogatory No. 41 of Mattel, Inc.'s Revised Third Set of

19  Interrogatories, dated March 28, 2008, Exhibit 2.  Andreas Koch, a former product

20  manager at MGA, testified ████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████   Deposition Tr. of Andreas Koch, Vol. II,

23  dated March 28, 2008 at 217:19-23, a true and correct copy of which is attached as

24  Exhibit 10.  Ward's communications relating to this action are likely to be relevant --

25  according to at least one former MGA executive, she was rehired precisely because

26  of this case.

27

28

07209/2466664.1

1          f.     David Malacrida:  Mr. Malacrida is MGA's Public Relations

2    Coordinator.  See Deposition Transcript of David Malacrida, dated August 30, 2007

3    ("Malacrida. Tr.") at 70:11-12, a true and correct copy of which is attached as

4    Exhibit 11.  His responsibilities have included

5    

6    

7                                      Id. at 70:25-71:3, 89:22-24, 95:8-23, 98:7-

8    22.  Mr. Malacrida was involved with identifying target consumers for Bratz in

9    January 2001 and conducted searches of websites related to Bratz in October 2000

10   and April 2001.  Id. at 141:7-156:10.  Given his involvement in press relations and

11   his likely knowledge of early Bratz focus groups (which MGA has denied took

12   place, see MGA Entertainment, Inc.'s Objections and Responses to Mattel, Inc.'s

13   First Set of Requests for Admission, dated February 4, 2008 at Nos. 36 and 37, a

14   true and correct copy of which is attached as Exhibit 12), Malacrida's

15   communications about this case are likely to be relevant.

16         g.     Ron Brawer:  Mr. Brawer was Mattel's Senior Vice President and

17   General Manager until he became MGA's Executive Vice-President of Sales and

18   Marketing.  Mattel's Second Amended Answer and Counterclaims, dated July 12,

19   2007, ¶¶ 55, 67.  Mr. Brawer is a key employee regarding Mattel's trade secret theft

20   and RICO claims.  "Based on his knowledge of Mattel's operations and the roles of

21   certain Mattel employees, [Mr. Brawer] has targeted certain Mattel employees who

22   have broad access to Mattel proprietary information in an effort to induce and

23   encourage them to join MGA and to steal or otherwise wrongfully misappropriate

24   Mattel confidential information and trade secrets."  Id. ¶ 69.  As set forth in Mattel's

25   Motion in more detail, Brawer's communications that further the alleged enterprises'

26   unlawful scheme would themselves be predicate acts, thus constituting not only

27   admissions but actual elements of Mattel's claims.

28

-5-

1     h.     Daphne Gronich:  Ms. Gronich is MGA's former General

2  Counsel.  Ms. Gronich has filed a declaration in this case attesting to MGA's

3  evidence preservation efforts, a true and correct copy of which is attached as Exhibit

4  13.  She also has filed affidavits in Hong Kong actions regarding the early

5  development of Bratz, a true and correct copy of an example of which is attached as

6  Exhibit 14.  In 2004, one month after this action was filed, Ms. Gronich signed a

7  modification of Carter Bryant's 2000 agreement on behalf of MGA, a true and

8  correct copy of which is attached as Exhibit 15.  She was also actively involved in

9  MGA's recruitment of three Mattel Mexico executives and was party to a number of

10  communications between MGA and the three Mattel Mexico executives discussing

11  their plans to leave Mattel Mexico to join MGA -- communications which Mattel

12  has alleged as predicate acts of wire fraud to its RICO claims.  See Exhibit C to

13  Mattel's Second Amended Answer and Counterclaims, a true and correct copy of

14  which is attached as Exhibit 16.  Ms. Gronich recently left MGA.  Her non-

15  privileged communications about this action are very likely to be relevant to

16  Mattel's claims.

17     i.     Craig Holden:  Mr. Holden is an attorney employed by MGA.

18  See Deposition Transcript of Nick Contreras, dated January 28, 2008 at 92:19-93:4,

19  a true and correct copy of which is attached as Exhibit 17.  Mr. Holden negotiated

20  the terms of the agreement between Carter Bryant and Keker & Van Nest.  See

21  Deposition Transcript of Lisa Tonnu, dated September 24, 2007 at 474:5-12, a true

22  and correct copy of which is attached as Exhibit 18.  Mr. Holden also negotiated an

23  agreement with Mr. Machado for MGA to cover his legal fees.  Id. at 474:19-

24  475:12.  Mr. Holden also appears to be involved in contacting potential witnesses on

25  behalf of MGA.  For example, he had early contacts with Christina Tomiyama, a

26  former Mattel consultant who MGA later retained -- and whom Judge Larson has

27  now disqualified.  See Court's Minute Order Granting Motion to Disqualify Expert,

28

1   dated April 8, 2008, a true and correct copy of which is attached as Exhibit 19.

2   Given Mr. Holden's apparent role in contacting third party witnesses on behalf of

3   MGA (See, e.g., Tomiyama Tr. at 132:17-133:12, a true and correct copy of which

4   is attached as Exhibit 20), his communications with third parties are very likely to

5   be relevant.

6           j.      Jeanine Posini: Ms. Posini is MGA's current General Counsel.

7   Her non-privileged communications about this case, and particularly any

8   communications she has had with third parties since she joined MGA, are highly

9   likely to be relevant.

10          k.      Bryan Armstrong: Mr. Armstrong is a paralegal at MGA who

11  works on MGA's copyright and trademark applications.  Mr. Armstrong was part of

12  the effort to file correction forms with the U.S. Copyright Office in or about July

13  2007.  These correction forms pertained to copyright registrations that MGA had

14  previously filed for several Bratz style guides, in which MGA provided allegedly

15  "incorrect" derivative work information.  See Depo Tr. of Bryan Armstrong,

16  Volume 2, dated August 1, 2007 at 376:1-8, 388:16-389:1, a true and correct copy

17  of which is attached as Exhibit 21.  Mr. Armstrong was proffered by MGA as a Rule

18  30(b)(6) witness on at least 2 topics of Mattel's Second Notice of Deposition of

19  MGA Entertainment, Inc.  Thereafter, on September 4, 2007, Armstrong purported

20  to make several pages of written changes to his deposition testimony that directly

21  contradicted his sworn testimony at the deposition.  See Deposition Correction Sheet

22  of Bryan Armstrong, dated September 4, 2007, a true and correct copy of which is

23  attached as Exhibit 22.  For example, Armstrong testified that MGA's style guides

24  with respect to Bratz are based on the dolls.  See Deposition Transcript of Bryan

25  Armstrong, Volume 1, dated July 18, 2007 at 164:9-19, a true and correct copy of

26  which is attached as Exhibit 23.  Thereafter, he altered his testimony to indicate that

27  ███████████████████████████████ Deposition Correction Sheet of

28

1  Bryan Armstrong, dated September 4, 2007, Exhibit 22.  To take another example,

2  Armstrong testified that the listed creation date of 1998 for a copyright registration

3  for a "Jade" drawing that MGA obtained from the U.S. Copyright Office was

4  incorrect, and that the drawing was in fact created in 2000.  <u>See</u> Armstrong Tr. at

5  261:7-23, Exhibit 23.  Armstrong then purported to change his testimony to state

6  that the 1998 creation date was correct.  <u>See</u> Deposition Correction Sheet of Bryan

7  Armstrong, dated September 4, 2007, Exhibit 22.  Clearly, any non-privileged

8  communications Armstrong may have had about these corrections, or other aspects

9  of this case are relevant.

10       l.   <u>Samir Khare</u>:  Mr. Khare is an in-house counsel at MGA.  <u>See</u>

11  Deposition Transcript of Samir Khare, dated August 20, 2007 ("Khare Tr.") at 8:12-

12  9:6, a true and correct copy of which is attached as Exhibit 24.  One of Mr. Khare's

13  primary functions at MGA is to support the intellectual property needs of MGA's

14  Product Development Group, which includes working on clearance of trademarks or

15  potential trademarks for MGA.  <u>Id.</u> at 30:11-18, 34:21-24.  Mr. Khare was

16  designated by MGA as a <u>Rule</u> 30(b)(6) witness on 12 topics of Mattel's Second and

17  Third Notices of Deposition of MGA Entertainment, Inc., and 1 topic of Mattel's

18  Notice of Deposition of MGA Hong Kong Ltd.  Among the topics on which Khare

19  was designated was Topic No. 33 of Mattel's Second Notice of Deposition of MGA

20  Entertainment, Inc., regarding MGA's copyright registrations relating to Bratz.

21  Khare was designated on this topic only after Bryan Armstrong testified as MGA's

22  <u>Rule</u> 30(b)(6) designee on the subject; Khare then purported to contradict

23  Armstrong's testimony on the topic.

24       m.   <u>Janine Brisbois</u>:  Ms. Brisbois was Director of Sales for the Girls

25  Division for Mattel Canada until she joined MGA Canada as Vice President of

26  Sales.  Mattel's Second Amended Answer and Counterclaims, dated July 12, 2007,

27  ¶¶ 71, 73.  She is a key MGA employee regarding Mattel's trade secret theft and

28

1    RICO claims.  "Upon information and belief, Brisbois removed [a] thumb drive

2    from Mattel Canada's office by concealing it in her backpack or gym bag the last

3    time that she left that office.  These documents contained Mattel trade secret and

4    proprietary information."  Id. at ¶ 74.  Her communications about this case, like

5    those of Mr. Brawer, are very likely to be relevant to Mattel's RICO claim.

6              n.    Carlos Gustavo Machado Gomez ("Machado"), Mariana Trueba

7    Almada ("Trueba") and Pablo Vargas San Jose ("Vargas"):  Machado, Trueba and

8    Vargas are at the heart of Mattel's RICO and trade secret theft claims.  These three

9    individuals were senior Mattel Mexico executives before they were recruited by

10   MGA Mexico.  Id. at ¶¶ 38-40.  Machado is a named defendant in this litigation.

11   "Beginning in late 2003 or early 2004, Machado, Trueba and Vargas began planning

12   to leave Mattel Mexico to join MGA.  In connection with that plan, and with the

13   encouragement of Larian and other MGA officers operating in the United States,

14   they began accessing, copying and collecting proprietary Mattel documents to take

15   with them."  Id. at ¶ 41.

16             o.    Susanna Kuemmerle:  Ms. Kuemmerle was involved in

17   recruiting Messrs. Machado and Vargas and Ms. Trueba from Mattel Mexico to

18   MGA Mexico.  Mattel's Second Amended Answer and Counterclaims, dated July

19   12, 2007 at ¶ 43.  Ms. Kuemmerle was party to a number of communications alleged

20   by Mattel as predicate acts of wire fraud to its RICO claims.  See Exhibit C to

21   Mattel's Second Amended Answer and Counterclaims, Exhibit 16.

22             p.    Schuyler Bacon, Nanette Black, Nick Contreras, Dan Cooney,

23   Jorge Castilla and Jill Hatch:  Ms. Bacon is likewise a key MGA employee

24   regarding Mattel's RICO and trade secret theft claims.  She joined MGA in 2004 as

25   the Director of Recruiting and is MGA's Executive Recruiter.  See Depo. Tr. of

26   Schuyler Bacon, dated September 27, 2007 ("Bacon Tr.") at 12:10-19, a true and

27   correct copy of which is attached as Exhibit 25.  As such, she is directly involved in

28

1   Mattel's claims that MGA has poached Mattel's employees and induced them to

2   abscond with Mattel's trade secrets.  "In the past few years, MGA has hired directly

3   from Mattel's United States operations at least 25 employees, from Senior Vice-

4   President level to lower level employees.  On information and belief, many of these

5   employees were specifically targeted and recruited by MGA, including by Larian

6   and Brawer, based on the Mattel confidential and proprietary information they could

7   access."  Mattel's Second Amended Answer and Counterclaims, dated July 12, 2007

8   at ¶ 77. ████████████████████████████████████

9   ███████████████████████████████ See Bacon Tr. at 51:22-25.  Ms. Bacon has

10  been involved in the recruitment of Nanette Black, Jorge Castilla, Nick Contreras,

11  Dan Cooney and Jill Hatch.  Id. at 115:4-23.  Each of these individuals is a former

12  Mattel employee who left for senior managerial positions at MGA, and who may

13  possess information relevant to Mattel's theft of trade secrets claim.

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

7.   Finally, in addition to the foregoing, Mattel submits that the Court should grant Mattel's motion as to Category 2 in its entirety -- communications between MGA's outside counsel and non-parties. Mattel is entitled to obtain communications that will bear on the testimony of third-party witnesses, regardless of whether such non-privileged communications involve counsel. Communications between MGA's counsel and third parties are clearly relevant as they could present valuable impeachment evidence and reveal witness' biases, and could present valuable admissions relevant to liability issues. Notes of a conversation taken by an attorney may be work product, but communications *between* MGA's counsel and third parties about this case generally will not be privileged. These too should be compelled.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 9, 2008, at Los Angeles, California.

B. Dylan Proctor

-11-

SECOND SUPP. DECL. OF B. DYLAN PROCTOR ISO MATTEL'S MOTION TO COMPEL MGA TO PROD.
COMM'NS RE LITIGATION