QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>REPLY IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION TO SUPPLEMENT EXPERT REPORTS BY MESSRS. WILLIAM FLYNN AND LLOYD CUNNINGHAM REGARDING CERTAIN BRYANT ORIGINALS<br><br>[Supplemental Declaration of Diane C. Hutnyan filed concurrently]<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD<br><br>Phase 1<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

## Preliminary Statement

Apparently desperate to prevent Mattel's Discovery-Master-approved experts from seeing the evidence Defendants' non-Discovery-Master-approved experts are relying upon, Defendants raise a host of irrelevant arguments in opposing Mattel's request for the right to submit supplemental reports within a mere week after examining the originals.

Most of the arguments purport to address the propriety of Mattel's request for access to the documents. That is the issue before the Discovery Master. Not only are these arguments not relevant to the issue before this Court, but tellingly, they were not put before the Discovery Master. Defendants even requested an extra half day to put these arguments into their 25-page tome opposing Mattel's request to allow supplemental reports after the deadline in this Court. In contrast, they requested no extra time to oppose the *Ex Parte* before the Discovery Master; in that opposition, they eschewed all substantive issues about the discovery rights requested for a simple 3-page argument telling the Discovery Master he had no authority to Rule on them.[1]

Several of MGA's arguments are also irrelevant by virtue of the fact that they address issues that are just not at issue. Because they have no good answer as to why the Court should not allow Mattel's request -- especially since their request for the right to do a supplemental report if and when the Discovery Master allowed them access to the notary book for testing was *granted*-- the Defendants must re-label the supplemental reports as "sur-rebuttal" reports and re-label the Application as a wholesale effort to change the whole Scheduling Order and then argue about those things.

---

[1] Also, notably, Defendants argued that he had no authority to rule until this Court ruled on this Application. If that were true, that would be all the more reason why this Court, as it did for MGA's request for supplemental reports, should grant the requested relief now, so that when the Discovery Master makes his ruling on the substantive discovery issue, things can move forward quickly.

        The basic point made in actual opposition to what Mattel is requesting appears to be that Mattel's request comes too late, creating problems with the schedule. Even if that were true (which it is not), MGA's still-pending request before the Discovery Master for testing of the notary book already creates the same supposed problem. Further, twice this week, Mattel's counsel invited counsel for MGA to work out an expedited schedule for hearing that motion, but MGA never even called -- showing that MGA's concern about the schedule is conveniently limited to Mattel's request and not its own.[2]

        Mattel submits that its request the right to supplement its reports, if and when the Discovery Master allows the access requested, be granted.

## Argument

### I. THE SUBSTANTIVE DISCOVERY-RELATED ISSUES DEFENDANTS RAISE IN OPPOSITION TO MATTEL'S REQUEST SHOULD HAVE BEEN, BUT WERE TELLINGLY NOT, PRESENTED TO JUDGE INFANTE

        Defendants' brief evinces a misunderstanding of the discrete issue presently before this Court. Mattel only asks this Court to grant it leave to supplement the expert reports of Messrs. Cunningham and Flynn *if and when* Judge Infante grants Mattel's application for access to certain Bryant original documents for expert inspection. Notwithstanding Defendants' assertions, the discovery aspects of Mattel's request are properly before Judge Infante, and the scheduling aspects of Mattel's request are properly before this Court.

---

[2] See email from Diane Hutnyan to Ms. Chan and Raoul Kennedy, dated April 7, 2008, attached as Exh. 7 to the Supplemental Declaration of Diane Hutnyan ("Supplemental Hutnyan Dec."). See also letter from Diane Hutnyan to Judge Infante, dated April 8, 2008, attached as Exh. 8 to the Supplemental Hutnyan Dec.

As such, the majority of the arguments in Defendants' brief -- the relevance of Mattel's experts seeing faint pencil lines on Bryant's drawings, the timeliness of Mattel's application, the previous diligence of Mattel's counsel in examining the documents -- are irrelevant as they should have been raised before the Discovery Master. The Court has ruled time and time again that discovery matters are to be adjudicated by the Discovery Master.[3] During a recent hearing, the Court stated that "[a]ll discovery was referred to the Discovery Master. I don't know what really needs to be clarified or what the confusion on that is."[4]

But instead of raising these purportedly substantive arguments in opposition to Mattel's application for access to the Bryant originals before the Discovery Master, there Defendants chose to rely solely on the argument that the Discovery Master lacked the authority to grant Mattel access to the Bryant originals,[5] while purporting to reserve a right to file *another* opposition in the event that Judge Infante concludes that he does have the authority to hear Mattel's application.[6] By raising these substantive arguments in its opposition before this Court, defendants attempt to get in the back door the arguments they were clearly hesitant to bring before the Discovery Master.

One big reason for such hesitation might be that Defendants' own expert testified at deposition just this week that the amount of time Mattel's experts had with the documents was extremely limited and that it is quite common in forensic document examination to have need for further access as the significance of various pieces of evidence becomes relevant.

---

[3] See Court's December 6, 2006 Order Appointing a Discovery Master attached as Exh. 2 to the Supplemental Hutnyan Dec.

[4] See Hearing transcript, dated January 7, 2008, at 39:5-7, attached as Exh. 3 to the Supplemental Hutnyan Dec.

[5] See Defendants' Opposition to Mattel's *Ex Parte* Application for Access to Certain Bryant Originals for Expert Examination and Imaging, dated April 8, 2008, attached as Exh. 1 to the Supplemental Hutnyan Dec.

[6] See id.

MGA's expert, Mr. Kullman, admitted that the maximum amount of time Mattel's experts had to examine the documents -- eight days[7] -- would make it nearly impossible for a forensic document examiner to perform even a basic examination on the thousands of documents in the seven boxes. Mr. Kullman admitted that with three helpers, he alone spent from 50-100 work hours just processing the small subset of documents (approximately 200) that were the subject of Mr. Flynn's initial report:

> Q  Could you go through all those seven boxes and do that kind of basic examination in eight days?
>
> MR. SLOAN: Same objection.
>
> THE WITNESS: Eight days of [sic] ten-hour days?
>
> BY MS. HUTNYAN:
>
> Q  Sure.
>
> A  No. I couldn't. Some people may be able to. I couldn't, no.
>
> Q  If -- could you do it in 15 days?
>
> MR. SLOAN: Same objection.
>
> BY MS. HUTNYAN: 6 [sic]
>
> A  First off, as I stated before, I didn't examine all the document tz [sic] in the box. Had I examined all the documents in the box for each of the examinations that I conducted on the majority of the -- of the ones I did on the tracing papers, on the notebook, and on the mixed media, I don't know how long it would take me, as an individual, by myself, but it would be a career maker. I'm sure I would have to devote the majority of my time for an extended period of time to do that. So -- but as I stated, the examinations

---

[7] Mattel's first expert, Mr. Lloyd Cunningham, had only eight days to examine the documents. See deposition transcript of Lloyd Cunningham, dated March 31, 2008, at 32:17-33:17, attached as Exh. 5 to the Supplemental Hutnyan Dec. Mattel's other expert, Mr. William Flynn, had only three working days to examine the documents. See deposition transcript of William Flynn, dated March 27, 2008, at 18:22-19:7, attached as Exh. 6 to the Supplemental Hutnyan Dec.

that I did alone, I probably spent anywhere from 50 to 100 hours, I would think. I don't know exactly, but I would think that much time.[8]

Mr. Kullman also admitted at deposition that it is common for an examiner not to determine the need for a particular test or examination, or the need to see the documents once again, until after making other findings:

Q   Well, is it common for you to do an examination on, let's say, a group of documents for a case and then come back and make findings later based on a further examination of those documents that you didn't notice before based on your -- based on examination of other materials in the case?

A   It can happen.

Q   Have you had that happen before?

A   With medical records, generally, sure. I've had it happen where I've examined handwriting, for instance, and then said, well, what I can tell you is, it's probably written by the same person or probably not, but I need additional known samples to determine -- make a more determined -- definitive determination. So then I get it back, I reexamine, come up with findings, sure. I examined documents before that I never -- the task may have been to determine if page 1 was a page substitution in a three-page document. I may find folds that are different, staple holes that are different. So I say, yes. Page 1 was not always attached to page 2 and 3. And then later on, they call back and say, look. We need to know if there are any other evidence of impressions if page 1 was

---

[8] See Transcript of Robert Kullman, dated April 8, 2008, at 205:24-206:23, attached as Exh. 4 to the Supplemental Hutnyan Dec.

dated when it was attached to page 2. So I've reexamined things later.[9]

Finally, Defendants should not be heard to complain that Mattel could have saved time in examining all the evidence by improperly steering its experts to the conclusions it wanted, as Defendants apparently did with their experts. Unlike the Defendants' purported experts, both of Mattel's experts were reviewed and approved in advance by the Discovery Master, and they conducted a proper forensic examination.

## II. MATTEL'S REQUEST BEFORE THIS COURT IS PROCEDURALLY CORRECT AND TIMELY

Mattel's request before this Court is quite narrow: in the event that Judge Infante grants Mattel's request for reasonable access for its two experts to certain vital Bryant original documents so that they can properly challenge new claims raised in MGA's experts' rebuttal reports, Mattel requests that it be given one week after examination to supplement (at most) two expert reports.

This request is nearly identical to the request that MGA made to this Court requesting an extension of the deadline to file its expert report concerning the testing of the Ramona Prince notary book.[10] The Court granted that relief, yet even now, the underlying discovery issue -- whether MGA's expert may perform the destructive testing on the notary book -- remains pending before the Discovery Master.[11]

---

[9] See Exh. 4 to the Supplemental Hutnyan Dec. at 214:15-215:16.

[10] See MGA's *Ex Parte* Application for an Order Extending the March 17 Deadline for MGA to Serve Its Rebuttal Expert Report Concerning Ms. Prince's Notary Book at 15 (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596 (1993)) attached as Exh. 22 to the Declaration of Diane Hutnyan in support of Mattel's *Ex Parte* Application to File Supplemental Expert Reports ("Hutnyan Dec").

[11] See Order dated March 19, 2008 extending the March 17, 2008 deadline for service of expert report by MGA concerning Jacqueline Prince notary book (rejecting argument that application sought hypothetical ruling) attached as Exh. 21 to the Hutnyan Dec.

1   Mattel is not seeking to file a sur-rebuttal report. Rather, Mattel seeks to
2   quickly serve a supplement to one or two of its existing expert reports in order to fully
3   explain the significance of certain pencil lines (or lack thereof) in several of Bryant's
4   drawings, in the event that Judge Infante allows Mattel have its *rightful continuing*
5   *access* to key documents.
6   Nor is it seeking to re-open discovery. Nothing is being reopened. Every
7   one of these documents was produced for inspection pursuant to Federal Rule of Civil
8   Procedure 34, and as it is clearly relevant evidence, Mattel should have reasonable
9   continuing access to it for purposes of the case. Defendants have provided no authority
10  supporting their remarkable position that discovery produced in a case can be somehow
11  un-discovered, or withdrawn from discovery, because the deadline to collect new
12  discovery has passed.
13  Moreover, Mattel is not trying to file a report based on information its
14  expert "negligently missed" in its first examinations (again, an issue for the Discovery
15  Master). Instead, Mattel has the right to examine the claims made by MGA's experts
16  regarding evidence that is not there and/or Mattel's experts never saw and/or that
17  Mattel's experts saw but did not view as significant during the short time period they
18  had to examine the documents. The true significance of this evidence, if there is any,
19  should be something Mattel's experts should be given the opportunity to determine.
20  Similarly, Mattel did not wait several weeks before it requested the
21  opportunity to file supplemental reports. Defendants choose to ignore, rather than
22  recognize and counter, the facts that Mattel provided showing that it filed its
23  application two days after it learned of MGA's supposed reliance on the obscured pencil
24  lines that defendants claim exist and rebut Mattel's experts' findings. Indeed, Mattel did
25  not even wait to depose MGA's experts; by the time Mattel's expert, Mr. Cunningham,
26  was deposed on March 31, 2008, MGA's position on the supposed significance of the
27  pencil lines was clear, and Mattel requested the right to file supplemental reports less
28

than 2 days later on April 2, 2008.[12] MGA and Bryant do not, and cannot, show a reasonable basis for Mattel's experts to have known that something that they either did not see and/or believed was not significant[13] would be something MGA would seize upon as the focus of its rebuttal expert reports. This is especially true, as discussed above, given the extremely limited timeframe during which each of Mattel's experts had access to the documents.

Further, if MGA's experts' view of the evidence is true -- meaning if the hidden pencil lines are significant to the opinions stated by Mattel's experts in their reports, then Mattel is under a duty to pursue further access and supplement its expert reports to ensure the reports' completeness. See FRCP 26(a)(2)(D),(e)(2); Tenbarge v. Ames Taping tool Systems, Inc., 190 F.3d 862, 865 (8th Cir. 1999). The Court may allow Mattel to file such supplemental report up to 30 days before trial. See FRCP 26(a)(3)(B); Luma Corp. v. Stryker Corp., 226 FRD 536, 543 (S.D. W.V. 2005).

Last, Mattel is not extending the scheduling order into the distant future. Assuming that Mattel is granted two weeks for its experts to be allowed to do the same non-destructive infrared tests and examination so that they can see the supposedly significant faint pencil lines that Mr. Kullman and Dr. Lyter are relying upon, and if this Application is granted, its experts will have one short week in which to quickly amend their reports. Any follow-on discovery allowed[14] could be scheduled to take place quickly thereafter. Besides, the schedule would be affected no more than it would be if Defendants gain the right to access for testing of the Prince notary book.

As in Phillips v. Netblue, Inc., 2007 WL 528722 at * 2 (N.D. Cal. 2007), "no prejudice [will be] caused to Defendants by the Supplemental Report's timing." Id.

---

[12] See Supplemental Hutnyan Dec. at ¶ 5. The first brief to the Discovery Master on the subject was filed the following Monday, April 7, after meet and conferring on the issue failed to bring about a resolution.

[13] As explained in Mattel's Application, some of the obscured or faint pencil lines were detected but there were others apparently were not.

[14] Mattel disagrees with Defendants' assumption that they are entitled to an endless chain of rebuttal, but that is a discovery issue.

at *2. If Defendants were so sure of their experts' conclusions, they would not be wary of Mattel's experts examining the evidence.

## Conclusion

For the foregoing reasons, Mattel's *Ex Parte* Application to Supplement the Expert Reports of Mssrs. Flynn and Cunningham should be granted.

DATED: April 11, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Diane C. Hutnyan
Diane C. Hutnyan
Attorneys for Mattel, Inc.