EXHIBIT 1

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   710 Sansome Street
6  San Francisco, CA  94111-1704
   Telephone: (415) 391-5400
7  Facsimile: (415) 397-7188

8  Attorneys for Plaintiff
   CARTER BRYANT
9

10                   UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13

14
   CARTER BRYANT, an individual,       Case No. CV 04-09049 SGL (RNBx)
15                                      (consolidated with CV 04-9059 & 05-
                       Plaintiff,       2727)
16
        v.                             **DISCOVERY MATTER**
17                                      **[To be heard by Discovery Master**
   MATTEL, INC. a Delaware             **Hon. Edward Infante (Ret.)]**
18 Corporation,
                                        **CARTER BRYANT'S AND MGA'S**
19                      Defendant.      **JOINT PRELIMINARY**
                                        **OPPOSITION TO MATTEL, INC.'S**
20                                      ***EX PARTE* APPLICATION TO**
   CONSOLIDATED WITH MATTEL,           **COMPEL ACCESS TO CERTAIN**
21 INC., v. BRYANT and MGA             **BRYANT ORIGINALS FOR NON-**
   ENTERTAINMENT, INC. v.              **DESTRUCTIVE EXPERT**
22 MATTEL, INC.                        **EXAMINATION AND IMAGING;**
                                        **AND REQUEST FOR BRIEFING**
23                                      **SCHEDULE**

24                                      Date:      TBD
                                        Time:      TBD
25
                                        Date Comp. Filed:  April 13, 2005
26
                                        Discovery Cut-Off:  Jan. 28, 2008
27                                      Pre-Trial Conference:  May 5, 2008
                                        Trial Date:  May 27, 2008
28

EXHIBIT 1

PAGE 3

1

## I.   PRELIMINARY STATEMENT

2     Carter Bryant and MGA Entertainment, Inc. ("MGA") respectfully submit
3 that the Discovery Master does not have the authority to grant Mattel the relief that
4 it is seeking through *Ex Parte* Application to Compel Access to Certain Bryant
5 Originals for Non-Destructing Expert Examination and Imaging (Mattel's
6 "Application"), filed on April 7, 2008. Rather, pursuant to Rule 16 of the Federal
7 Rules of Civil Procedure and Central District of California Local Rule 16-14, that
8 authority rests exclusively with the District Court. Bryant and MGA submit this
9 Preliminary Opposition to address this important threshold jurisdictional issue and
10 to request—if the Discovery Master finds that he does in fact have the requisite
11 authority—that the Discovery Master set an appropriate briefing schedule to
12 address the merits of Mattel's Application.

13

## II.   ARGUMENT

14     In its Scheduling Order dated October 31, 2007, the District Court set
15 January 28, 2008 as the cut off for all Phase 1 fact discovery, and March 31, 2008
16 as the cut off for all Phase 1 expert discovery. *See* Oct. 31, 2007 Order [Docket
17 No. 1104], at 2. Through its Application, Mattel seeks leave to reopen these now-
18 closed discovery periods to conduct additional inspection and testing of certain of
19 Carter Bryant's original documents, which Mattel claims is necessary to rebut the
20 opinions of two of MGA's rebuttal experts, whose opinions were disclosed on
21 March 17, 2008. Absent such leave, Mattel's requested discovery, which was first
22 made on April 2, 2008—three days after the close of expert discovery and more
23 than two months after the close of fact discovery[1]—is plainly untimely. *See* Order
24 dated Feb. 4, 2008 [Docket No. 1931], at 2 (holding that "[a]ny phase 1 discovery
25 not properly served on or before th[e discovery] deadline may not now be
26 pursued."); *see also Braun v. Agri-Systems*, No. F-02-6482, 2006 WL 278592, at *

27

---

28 [1] Hutnyan Decl., Exh. 14 (Letter from Hutnyan to Sloan and Werdegar, dated Apr. 2, 2008).

1

414798.01

EXHIBIT ___1___

PAGE ___4___

1   5 (E.D. Cal. Feb. 2, 2006) (finding that party waived right to inspect documents

2   because it did not seek to inspect them before the close of discovery); *Jenkins v.*

3   *Wholesale Alley, Inc.*, No. 1:05-CV-3266 JEC, 2006 WL 2716091, at *9 (N.D. Ga.

4   Sep. 22, 2006) (finding demand to inspect property made after discovery cut-off to

5   be untimely).[2]

6        However, the Discovery Master cannot grant Mattel the leave it requires to

7   engage in any additional discovery.  Only the *District Court* may grant leave to

8   reopen or extend discovery beyond the deadlines set in its Rule 16 Scheduling

9   Order.  Central District Local Rule 16-14 expressly provides that "[a]ny

10  application to modify an order entered pursuant to F.R.Civ.P. 16 *shall be made to*

11  *the judicial officer who entered the order*." (Emphasis added); *see also* Fed. R.

12  Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the

13  judge's consent."); *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005);

14  ("A pretrial order controls the subsequent course of the action unless modified

15  upon a showing of good cause." (internal quotation omitted)).  Because Judge

16  Larson is "the judicial officer who entered the" Scheduling Order setting the

17  discovery cut offs in this case, only he can now modify that order.[3]  For the same

18  reason, Judge Larson must grant Mattel leave to file its proposed sur-rebuttal

19  _____

20  [2] Mattel may seek to argue that its request for inspection and testing is timely because it was made pursuant to the parties' stipulation on June 20, 2006, whereby Bryant agreed to make his original documents available for inspection *during discovery* on 15 days notice.

21  The Discovery Master should reject any such argument.  The June 20, 2006 stipulation was made as part of the parties' meet and confer efforts to resolve a discovery motion

22  brought by Mattel.  As such, it was a *discovery* stipulation, and necessarily was confined to the fact discovery phase of this litigation.  Nothing in the transcript of the June 20,

23  2006 meet and confer session before Magistrate Judge Block suggests that Bryant was in any way waiving the discovery cut off as to Mattel's inspection demands and granting

24  Mattel opened-ended access to his original documents.  And even if the stipulation could be so interpreted, neither the parties nor Magistrate Judge Block had the power under

25  Local Rule 16-14 and Federal Rule of Civil Procedure 16 to alter the Court's scheduling orders in this matter.  The court's current Scheduling Order, which was entered more

26  than a year after the parties' discovery stipulation, supersedes any prior stipulation of the parties.

27  [3] Mattel knows, or should know, that it must seek leave directly from the District Court, as it has previously submitted all of its requests for additional discovery directly to the

28  District Court.

2

414798.01

EXHIBIT __1__

PAGE __5__

1   expert reports, which Mattel claims necessitates the additional discovery it is now

2   seeking, as the current Scheduling Order only provides for opening and rebuttal

3   reports, and not any sur-rebuttal or reply reports. *See* Oct. 31, 2007 Order, at 2.

4   Without leave from the District Court to file these sur-rebuttal reports, there is no

5   justification for the requested discovery.

6        Accordingly, the Discovery Master should deny Mattel's Application

7   without prejudice, or stay consideration of the Application, until such time as the

8   District Court modifies its Scheduling Order to permit the additional discovery and

9   expert reports requested by Mattel.[4] (Prior to filing this Preliminary Opposition,

10  Bryant requested that Mattel enter into a stipulation this effect, but Mattel has not

11  responded to that request. Declaration of Matthew M. Werdegar, ¶ 2, Ex. A.)

12  Alternatively, if the Discovery Master concludes that he does have authority to

13  grant the relief sought by Mattel, Bryant and MGA respectfully request that the

14  Discovery Master set an appropriate schedule for the submission of their

15  opposition to the merits of Mattel's Application as well as any reply brief by

16  Mattel. Mattel's Application misstates both the relevant facts and the law,[5] and

17  Bryant and MGA would be significantly prejudiced if they were not accorded a

18  reasonably opportunity to prepare a substantive response to the merits of Mattel's

19  Application.

20  / / /

21  / / /

22  / / /

23

24  [4] In its Application, Mattel states that it "simultaneously" filing an *ex parte* Application with Judge Larson for permission to file supplemental reports. However, as of the time

25  of the filing of this Preliminary Opposition, Mattel had not filed any such Application.

26  [5] For example, Mattel claims that its experts were not given an adequate opportunity to inspect and test Bryant's documents, even though Mattel never sought an extension of

27  time for testing—either from Bryant himself or from the Court—as expressly permitted under the Court's August 30, 2007 Order. Mattel also fails to explain why it waited more

28  than two weeks after receiving MGA's rebuttal expert reports, until after the close of expert discovery, before raising this issue.

3

414798.01

PAGE

1

### III.   CONCLUSION

2      For all the foregoing reasons, Bryant and MGA respectfully request that the

3 Court deny without prejudice or stay consideration of Mattel's Application

4 pending a ruling by the District Court granting Mattel leave to file proposed sur-

5 rebuttal expert reports and to conduct additional discovery beyond the current

6 discovery cut-offs.

7

8                                                  Respectfully submitted,

9 Dated:   April 8, 2008                           KEKER & VAN NEST, LLP

10

11                                        By: _____

12                                             MATTHEW M. WERDEGAR
                                               Attorneys for Plaintiff
13                                             CARTER BRYANT

14 Dated:   April 8, 2008                        SKADDEN, ARPS, SLATE,
                                                 MEAGHER & FLOM, LLP
15

16

17                                        By: _____

18                                             RAOUL D. KENNEDY
                                               Attorneys for
19                                             MGA ENTERTAINMENT, INC.,
                                               MGA ENTERTAINMENT (HK)
20                                             LIMITED, MGAE de MEXICO,
                                               S.R.L. DE C.V., AND ISAAC
21                                             LARIAN

22

23

24

25

26

27

28

4

414798.01

EXHIBIT ___1___

PAGE ___7___

1

## DECLARATION OF MATTHEW M. WERDEGAR

2       I, Matthew M. Werdegar, declare and state that:

3       1.      I am an attorney licensed to practice law in the State of California and

4   am a partner of the law firm of Keker & Van Nest LLP, located at 710 Sansome

5   Street, San Francisco, California 94111, counsel for plaintiff Carter Bryant in the

6   above-captioned action. I am duly admitted to practice law before this Court.

7   Except where expressly stated, I have knowledge of the facts set forth herein, and

8   if called to testify as a witness thereto, could do so competently under oath.

9       2.      On April 8, 2008, at approximately 12:45 p.m., I sent an email

10  message to Diane Hutnyan, counsel for Mattel, requesting that Mattel agree to

11  dismiss its *Ex Parte* Application to Compel Access to Certain Bryant Originals for

12  Non-Destructive Expert Examination and Imaging without prejudice, or to agree to

13  stay consideration of the Application, pending a ruling by Judge Larson on a

14  request by Mattel to modify the Court's Scheduling Order to permit Mattel to file

15  supplemental expert reports and to conduct additional discovery beyond the

16  discovery cut-offs. Attached hereto as Exhibit A is a true and correct copy of my

17  email message. As of the filing of this Preliminary Opposition, Ms. Hutnyan had

18  not responded to my request.

19      I declare under penalty of perjury under the laws of the United States that

20  the foregoing is true and correct and that this declaration was executed on

21  March 24, 2008, at San Francisco, California.

22

23                                          MATTHEW M. WERDEGAR

24

25

26

27

28

1

414798.01

BRYANT'S AND MGA'S JOINT PRELIMINARY OPPOSITION TO MATTEL'S *EX PARTE* APPLICATION
TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT ___1___

PAGE __B__

# EXHIBIT A

EXHIBIT ___ 1 _____

PAGE _____ 9 _____

**Matthew Werdegar**

| | |
|---|---|
| **From:** | Matthew Werdegar |
| **Sent:** | Tuesday, April 08, 2008 12:46 PM |
| **To:** | 'Diane Hutnyan' |
| **Cc:** | 'Lanstra, Allen L'; Sloan, Matthew E (LAC) |
| **Subject:** | Mattel v. Bryant et al. -- ex parte application to Judge Infante |

**Attachments:** Picture (Metafile)


Dear Diane:

We are in receipt of your *ex parte* application to compel access to certain Bryant original documents for additional, non-destructive expert examination and imaging. Reviewing the application and the relevant case law, it is apparent to us that Judge Infante does not have the authority to grant the relief you are seeking. The Court's October 31, 2007 Rule 16 Scheduling Order set January 28, 2007 as the fact discovery cut off, and March 31, 2008 as the expert discovery cut off. Because your application is seeking additional discovery beyond these cut-off dates, which were ordered by Judge Larson, only Judge Larson, and not Judge Infante, may grant Mattel's request. Central District Local Rule 16-14 states that "[a]ny application to modify an order entered pursuant to F.R.Civ.P. 16 shall be made to the judicial officer who entered the order," *i.e.*, Judge Larson. Additionally, for the same reasons, Judge Larson must grant Mattel leave to file its contemplated supplemental expert reports, as the current scheduling order only provides for opening and rebuttal reports, and not any supplemental or reply reports.

In light of the foregoing, we are hereby requesting that you agree either (1) to dismiss your *ex parte* application without prejudice to renewing it if and when Judge Larson agrees to modify his scheduling order or (2) stay consideration of the motion until Judge Larson rules on the schedule issues. Please let me know by 5 p.m. today whether you are willing to agree to this request, in which case I will provide you with a proposed stipulation and order memorializing our agreement. If you do not agree, we will file a preliminary opposition with Judge Infante on grounds that he lacks authority to grant the requested relief and, in the unlikely event he disagrees with our analysis, requesting that he set an appropriate schedule for the submission of our opposition and Mattel's reply briefs on the merits of Mattel's request.

I have spoken with counsel for MGA, and they agree with the foregoing analysis and join in our request that you agree to dismiss or stay consideration of the *ex parte* application.

Regards,


Matthew M. Werdegar

K E K E R   &   V A N   N E S T   L L P

710 Sansome Street
San Francisco, CA 94111-1704
tel: (415) 391-5400
fax: (415) 397-7188
www.kvn.com


1

EXHIBIT ___1___

PAGE ___10___

1

## PROOF OF SERVICE

2

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

3

4

5

6  On April 8, 2008, I served the following document(s):

7

**CARTER BRYANT'S AND MGA'S JOINT PRELIMINARY OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING; AND REQUEST FOR BRIEFING SCHEDULE**

8

9

10

11

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery and

12

13

14

15

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

16

17

18  | Hon. Edward A. Infante  (via Fed Ex) | John B. Quinn |
19  | JAMS | Michael T. Zeller |
    | Two Embarcadero Center, Suite 1500 | Quinn Emanuel Urquhart Oliver & |
20  | San Francisco, CA 94111 | Hedges, LLP |
    | Tel:   415/774-2649 | 865 South Figueroa Street, 10th Floor |
21  | Fax:   415/982-5287 | Los Angeles, CA  90017-2543 |
    | Email:       schan@jamsadr.com | Tel:   213/443-3000 |
22  | | Fax:   213/443-3100 |
    | | Email: |
23  | |        johnquinn@quinnemanuel.com |
24  | | Email: |
    | |        michaelzeller@quinnemanuel.com |
25

26

27

28

EXHIBIT ___1___

PAGE ___11___

| 1 | Thomas J. Nolan | Alexander H. Cote |
|---|---|---|
| 2 | Skadden Arps Slate Meagher & Flom | Overland Borenstein Scheper & Kim LLP |
| 3 | 300 South Grand Avenue, Suite 3400 | 300 S. Grand Avenue, Suite 2750 Los Angeles, California 90071 |
| 4 | Los Angeles, CA 90071-3144 | Tel:   213/613-4660 |
| 5 | Tel:   213/687-5000 | Fax:  213/613-4656 Email :     acote@obsklaw.com |
| 6 | Fax:   213/687-5600 Email: tnolan@skadden.com | |

7

8        Executed on April 8, 2008, at San Francisco, California.

9

10        I declare under penalty of perjury under the laws of the State of California

that the above is true and correct.

11

12

13                                                        _____

                                                        PATTY LEMOS

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT _____ 1

PAGE_____ 12

EXHIBIT 2

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemnauel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

[Additional counsel listed on following page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND |
| Defendant. | [PROPOSED] ORDER |
| | Discovery Cutoff Date: Not Set<br>Trial Date: Not Set |

EXHIBIT 2

PAGE 13

Case No. CV 04-09049 SGL (RNBx)
STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1   LITTLER MENDELSON
       Robert F. Millman (Bar No. 062152)
2      Douglas A. Wickham (Bar No. 127268)
       Keith A. Jacoby (Bar No. 150233)
3   2049 Century Park East, 5th Floor
    Los Angeles, California 90067-3107
4   Telephone:  (310) 553-0308
    Facsimile:  (310) 553-5583
5
    Attorneys for Carter Bryant
6
    O'MELVENY & MYERS LLP
7      Diana M. Torres (Bar No. 162284)
    400 S. Hope Street
8   Los Angeles, California 90017
    Telephone:  (213) 430-6000
9   Facsimile:  (213) 430-6407

10  O'MELVENY & MYERS LLP
       Dale Cendali
11  Times Square Tower
    7 Times Square
12  New York, NY 10036

13  CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
       Patricia Glaser (Bar No. 55668)
14  10250 Constellation Boulevard - 19th Floor
    Los Angeles, CA 90067
15  Telephone:  (310) 553-3000
    Facsimile:  (310) 556-2920
16
    Attorneys for MGA Entertainment, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___2___

PAGE ___14___

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1       WHEREAS, the parties are in agreement that a discovery master should be
2   appointed in this matter to resolve any discovery disputes and to minimize the
3   burden on the Court; and

4       WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5   (Ret.), and he has agreed to serve as a discovery master in this matter;

6       NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7   trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8   Inc., by and through their respective counsel of record, hereby stipulate and agree as
9   follows:

10      1.      The Discovery Master shall be appointed to assure and provide cost-
11  effective discovery and to minimize the burden of discovery disputes upon the
12  Court.  Any and all discovery motions and other discovery disputes in the above
13  captioned action shall be decided by a master ("Discovery Master") pursuant to
14  Federal Rule of Civil Procedure 53.  Any motions currently pending before
15  Magistrate Judge Block shall be transferred to the Discovery Master.  The moving
16  party shall provide to the Discovery Master all papers associated with each pending
17  motion.

18      2.      The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His
19  business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20  94111.

21      3.      Judge Infante shall serve as the Discovery Master until all issues herein
22  have been finally disposed of or determined, or until he shall withdraw in
23  accordance with applicable law.  If at any time he becomes unable to serve as the
24  Discovery Master, the parties shall confer to present an alternative agreed-upon
25  designee to the Court.  In the event that the parties cannot agree to an alternate
26  designee, then the Court shall appoint a Discovery Master.

27      4.      The Discovery Master shall have the authority to set the date, time, and
28  place for all hearings determined by the Discovery Master to be necessary; to

EXHIBIT _____2_____

PAGE _____15_____

-3-

1  preside over hearings (whether telephonic or in-person); to take evidence in
2  connection with discovery disputes; to issue orders resolving discovery motions
3  submitted to the Discovery Master; to conduct telephonic conferences to resolve
4  discovery disputes arising during depositions; to issue orders awarding non-
5  contempt sanctions, including, without limitation, the award of attorney's fees, as
6  provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and
7  recommendations, as appropriate.

8      5.     All discovery disputes shall be resolved by motion (except those arising
9  during a deposition which the Discovery Master determines can be resolved by
10  telephonic conference during the deposition). The moving party shall first identify
11  each dispute, state the relief sought, and identify the authority supporting the
12  requested relief in a meet and confer letter that shall be served on all parties by
13  facsimile or electronic mail. The parties shall have five court days from the date of
14  service of that letter to conduct an in-person conference to attempt to resolve the
15  dispute. If the dispute has not been resolved within five court days after such
16  service, the moving party may seek relief from the Discovery Master by formal
17  motion or letter brief, at the moving party's option. The opposing party shall have
18  five court days from the date of service of the motion or letter brief to submit a
19  formal opposition or response. Any reply brief or letter brief shall be served within
20  three court days from the date of service of a formal opposition or response. The
21  hearing on the motion shall take place within five court days of the service of any
22  reply brief or letter unless (a) the parties agree to another hearing date or agree that
23  no hearing is necessary; (b) the Discovery Master determines that no hearing is
24  necessary; or (c) the Discovery Master is not available, in which case the hearing
25  shall take place on the Discovery Master's first available date. The foregoing shall
26  not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from
27  seeking the Discovery Master's immediate resolution of a dispute or resolution of a
28  dispute upon shortened time upon a showing of good cause why a party would be

1  prejudiced absent prompt resolution.  Service of any document by fax or electronic
2  mail prior to 6:00 p.m. shall constitute service on that day.

3      6.      The Discovery Master's orders resolving discovery disputes, reports, or
4  recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a
5  Magistrate Judge of the United States District Court.  The Discovery Master shall
6  file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve
7  the parties within five court days of his/her decision on a matter.

8      7.      A court reporter shall transcribe any hearing or other proceeding before
9  the Discovery Master.

10     8.      The cost of any proceeding before the Discovery Master, including the
11 fees of the Discovery Master, the fees of court reporters who transcribe hearings or
12 other proceedings before the Discovery Master, and the fees of any other person
13 necessary to the efficient administration of the proceeding before the Discovery
14 Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,
15 Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,
16 the Discovery Master Orders otherwise.  By agreeing to share costs among the
17 parties, no party waives its right to seek recovery or reimbursement for such costs
18 from any other party.

19     9.      The Discovery Master shall be compensated according to his regular
20 hourly rate of $750.

21     10.     Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery
22 Master shall proceed with all reasonable diligence.

23     11.     Based on an affidavit filed by Hon. Edward A. Infante pursuant to
24 28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not
25 aware that he has a relationship to the parties, to counsel, to the action, or to the
26 Court that would require disqualification of a judge under 28 U.S.C. § 455, and
27 based thereon the parties expressly waive any ground for disqualification disclosed
28 therein of Hon. Edward A. Infante to serve as master in these proceedings.

EXHIBIT  2

PAGE  17

- 5 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER AND [PROPOSED] ORDER

12. The Discovery Master shall not have ex parte communications with ~~the~~ ~~Court~~, a party or counsel.

13. The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master. These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14. The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

15. All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November 22, 2006          O'MELVENY & MYERS LLP

                                  By: _____
                                       Diana Torres
                                       Attorneys for MGA Entertainment, Inc.

Dated: November 29, 2006          LITTLER MENDELSON

                                  By: _____
                                       Douglas A. Wickham
                                       Attorneys for Carter Bryant

EXHIBIT ___2___

PAGE ___18___

1 | Dated: ~~November~~ December 4, 2006          QUINN EMANUEL URQUHART
                                                  OLIVER & HEDGES, LLP

2

3                                                 By: Jon D Corey
                                                      Jon D. Corey
4                                                     Attorneys for Mattel, Inc.

5

6                                          **ORDER**

7      The foregoing Stipulation for Appointment of a Discovery Master is SO

8  ORDERED as modified.

9

10 Dated:    12-6-06 .                             S G Larson

11                                                 Hon. Stephen G. Larson
                                                   United States District Court Judge

12

13

14                           **CONSENT OF DISCOVERY MASTER**

15     If appointed by the Court, I, the undersigned, consent to serve as Discovery

16 Master in the above referenced proceeding consistent with this Order.

17

18 Dated:    12-5-06                               Edward A Infante

19                                                 Hon. Edward A. Infante (Ret.)

20

21

22

23

24

25

26

27

28

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

EXHIBIT __2__

PAGE __19__

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.

| | |
|---|---|
| **Keith A. Jacoby, Esq.** | **Diana M. Torres, Esq.** |
| **Douglas Wickham, Esq.** | **O'Melveney & Meyers** |
| **Littler Mendelson** | 400 S. Hope Street |
| **A Professional Corporation** | Los Angeles, CA 90071 |
| 2049 Century Park East, 5th Floor | Phone: 213-430-6000 |
| Los Angeles, California 90067-3107 | **Fax: 213-430-6407** |
| Phone: 310-553-0308 | |
| **Fax: 310-553-5583** | |

[ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

**[X]   BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 5, 2006, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Cheri Hatch
Print Name

Signature

EXHIBIT  2

PAGE  20

EXHIBIT 3

1

1       UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3       EASTERN DIVISION

4       - - -

5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6       - - -

7   CARTER BRYANT, ET. AL.,          )

8                   PLAINTIFFS,       )
                                      )
9           VS.                       )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,            )
                                      )
11                  DEFENDANTS.       )   MOTIONS
                                      )
12  AND CONSOLIDATED ACTIONS,         )
                                      )
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17              MONDAY, JANUARY 7, 2008

18                  10:11 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
           FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA   92501
25               951-274-0844
           CSR11457@SBCGLOBAL.NET

CERTIFIED COPY

EXHIBIT __3__

PAGE __21__

1  SET FORTH IN THE ORDER.  AND PERHAPS THAT MIGHT BE BECAUSE YOU

2  DIDN'T HAVE THE SENSE, AS CARTER BRYANT DIDN'T HAVE THE SENSE,

3  THAT IT FULLY APPLIED.

4       I HOPE, AFTER TODAY'S ORDER, I'LL MAKE IT AS CRYSTAL

5  CLEAR AS POSSIBLE THAT IT DOES APPLY TO ALL PARTIES AND THAT AN        10:56

6  ACTUAL AFFIDAVIT NEEDS TO BE FILED WITH THE COURT, SETTING

7  FORTH EVERYTHING AS REQUESTED IN THE ORDER.

8       MR. OVERLAND:  AS I UNDERSTAND THE ORDER, IT WAS THAT

9  ALL PARTIES SET FORTH, IN AFFIDAVIT FORM, THEIR PRESERVATION

10 EFFORTS AND POLICIES.                                                  10:57

11      THE COURT:  ALL YOUR CLIENT STATED IN THE DECLARATION

12 IS THAT HE HAS NOT KNOWINGLY DESTROYED ANY EVIDENCE.

13      THAT'S NOT A DESCRIPTION IN DETAIL OF THE RETENTION

14 POLICIES.

15      MR. OVERLAND:  WELL, HE DOESN'T HAVE A POLICY.  HE'S       10:57

16 AN INDIVIDUAL.  IT'S LIKE YOU ASKING ME WHAT MY RETENTION

17 POLICY IS.

18      THE COURT:  I SUSPECT YOU, LIKE I, PROBABLY HAVE

19 PERSONAL FILES AND WE KEEP THINGS OR WE DON'T KEEP THINGS OR WE

20 THROW THINGS OUT AFTER SO MANY YEARS.  WE ALL HAVE OUR OWN            10:57

21 POLICIES.  I UNDERSTAND THEY'RE NOT POLICIES IN THE CORPORATE

22 SENSE, BUT WE ALL HAVE OUR CUSTOMS, PRACTICES, HOWEVER YOU WANT

23 TO PHRASE IT.

24      HE'S A SOPHISTICATED BUSINESSMAN, LIKE THE OTHER

25 PARTIES IN THIS CASE, AND I SUSPECT HE HAS SOME -- I WANT TO          10:57

38

```
 1   KNOW WHAT HE DOES WITH HIS DOCUMENTS.  AND TO SIMPLY SAY THAT

 2   HE HASN'T KNOWINGLY DESTROYED IS REALLY NOT SUFFICIENT.

 3            MR. OVERLAND:  I UNDERSTAND.  AND WE'D BE WILLING TO

 4   SUBMIT A DIFFERENT DECLARATION.

 5            IF THE COURT COULD BE CLEAR ON EXACTLY WHAT IT IS        10:57

 6   THAT MR. MACHADO SHOULD SAY.  IN OTHER WORDS, DOES HE HAVE TO

 7   SAY, 'FROM X DAY, HERE'S WHAT I DID WITH RESPECT TO DOCUMENTS,'

 8   OR 'THIS IS MY NORMAL HABIT OR CUSTOM'?

 9            THE COURT:  I'LL TRY TO BE CLEAR IN THE ORDER THAT I

10   ISSUE TODAY.                                                     10:58

11            MR. OVERLAND:  OKAY.  VERY WELL.

12            THE COURT:  THE LAST MOTION BEFORE THE COURT IS THE

13   MOTION CONCERNING DISCOVERY BEFORE JUDGE INFANTE.

14            AGAIN, THE ORDER SEEMS QUITE CLEAR.  IT RESTS ON

15   FEDERAL RULES OF CIVIL PROCEDURE 53.  OF COURSE, THERE'S         10:58

16   MULTIPLE PROVISIONS IN RULE 53 WHICH PERMIT THE APPOINTMENT OF

17   A DISCOVERY MASTER.  ONE PROVISION IS PURSUANT TO A STIPULATION

18   OF THE PARTIES, BUT THE THIRD PROVISION IS PURSUANT TO THE

19   COURT'S ORDER THAT THIS IS AN APPROPRIATE CASE FOR THE

20   APPOINTMENT OF A DISCOVERY MASTER.                               10:58

21            I'M CERTAINLY SYMPATHETIC TO THE ARGUMENT BEING MADE

22   THAT IT'S AN EXCEPTIONAL AND RARE PROCEDURE FOR THE COURT TO

23   INVOKE.  BUT I THINK JUST THIS RECORD ALONE, MR. NOLAN'S

24   RECITATION OF THE DISCOVERY PRODUCED IN THIS CASE, CLEARLY

25   SUGGESTS THAT THIS IS A PRETTY UNIQUE CASE.  AND THIS IS A CASE  10:59
```

JANUARY 7, 2008                BRYANT VS. MATTEL   EXHIBIT __3__

                                                   PAGE __23__

1  WHICH, AFTER CONSULTATION WITH JUDGE BLOCK, THE COURT MADE THE

2  DECISION, FOR THE FIRST TIME IN MY CAREER AS A JUDICIAL OFFICER

3  THAT, YEAH, THIS IS A CASE THAT A DISCOVERY MASTER NEEDS TO BE

4  APPOINTED.

5  ALL DISCOVERY WAS REFERRED TO THE DISCOVERY MASTER.  10:59

6  I DON'T KNOW WHAT REALLY NEEDS TO BE CLARIFIED OR

7  WHAT THE CONFUSION ON THAT IS.

8  I DON'T SEE THE DUE PROCESS ARGUMENT THAT'S BEING

9  MADE OR URGED BY THE DEFENSE IN THIS CASE.  CERTAINLY, ANY

10  DECISION BY THE DISCOVERY MASTER IS REVIEWABLE BY THIS COURT.  10:59

11  THE RULE ITSELF AND THE COMMENTARY MADE CLEAR, I THINK, THAT

12  THIRD PARTIES, EVEN NONCONSENTING THIRD PARTIES, ARE SUBJECT TO

13  THE PROVISIONS, EVEN TO THE CONTEMPT PROVISIONS.

14  SO I GUESS I DON'T REALLY SEE MUCH OF AN ISSUE ON

15  THIS MOTION, BUT I'LL HEAR FROM ANYBODY WHO WISHES TO SPEAK  11:00

16  FURTHER.

17  MR. OVERLAND:  WITH RESPECT TO MR. MACHADO, I THINK

18  THE BASIC PROBLEM WE HAVE IS THAT THE ORDER WAS MADE PURSUANT

19  TO RULE 53, AND RULE 53 REQUIRES PRIOR NOTICE.

20  WE NEVER RECEIVED PRIOR NOTICE.  11:00

21  IF YOU LOOK AT 53(B)(1), THAT REQUIRES PRIOR NOTICE

22  TO THE PARTY, AN OPPORTUNITY TO BE HEARD, AN OPPORTUNITY TO

23  OBJECT.

24  THE COURT:  YOU HAVE AN OPPORTUNITY TO BE HEARD, NOT

25  ON THE APPOINTMENT OF THE DISCOVERY MASTER, BUT ON THE RULINGS  11:00

JANUARY 7, 2008          BRYANT VS. MATTEL   EXHIBIT 3

PAGE 24

40

```
 1    OF THE COURT.  WITH THE DISCOVERY MASTER, YOU CAN CERTAINLY --
 2            MR. OVERLAND:  NO.  WE DO HAVE AN OPPORTUNITY TO BE
 3    HEARD ON THE APPOINTMENT.
 4            IF THE COURT -- UNLESS IT'S BY CONSENT --
 5            THE COURT:  CITE ME TO A CASE, ONE CASE, COUNSEL,      11:00
 6    THAT SAYS THAT.
 7            MR. OVERLAND:  LOOK AT THE LANGUAGE OF 53(B)(1).
 8            THE COURT:  THAT'S NOT HOW -- I DON'T BELIEVE I
 9    APPOINTED HIM PURSUANT TO.
10            LET ME TAKE A LOOK HERE.                               11:01
11            53(B)(1) TALKS ABOUT 'THE COURT MUST GIVE THE PARTIES
12    NOTICE AND AN OPPORTUNITY TO BE HEARD.'
13            MR. OVERLAND:  THAT'S RIGHT.
14            THE COURT:  YOU'RE NOT A PARTY.
15            MR. OVERLAND:  WELL, IF THE PARTIES ARE ENTITLED TO    11:01
16    NOTICE, THEN CERTAINLY --
17            I AM A PARTY.  MR. MACHADO IS A PARTY.
18            THE COURT:  VERY WELL.
19            AND YOU DID NOT RECEIVE NOTICE?
20            MR. OVERLAND:  NEVER RECEIVED NOTICE OF THAT.          11:01
21            THE COURT:  YOU CAME IN THE CASE AFTERWARDS.
22            MR. OVERLAND:  CORRECT.
23            AND MR. MACHADO, THEREFORE, STANDS IN A DIFFERENT
24    POSITION, BECAUSE AS A PARTY, HE'S ENTITLED TO NOTICE BEFORE
25    THE APPOINTMENT OF A SPECIAL MASTER.                          11:01
```

JANUARY 7, 2008                 BRYANT VS. MATTEL    EXHIBIT 3

PAGE 25

41

1    THE COURT:  ANY CASE AT ALL?

2       MR. OVERLAND:  I THINK WE CITED IN OUR PAPERS, YOUR

3  HONOR.

4       THE COURT:  YOU CITE 53 ON PAGE 3 OF YOUR OPPOSITION,

5  COUNSEL, AND YOU CITE TO 53(B)(1), BUT YOU DIDN'T CITE A CASE.    11:02

6       MR. OVERLAND:  MAYBE IT'S SELF-EVIDENT.  MAYBE THERE

7  IS NO CASE BECAUSE IT'S SELF-EVIDENT.

8       THE COURT:  CLEARLY, THE RULE ENVISIONS NONPARTIES

9  BEING SUBJECT TO CONTEMPT PROCEEDINGS FOR NOT FOLLOWING THE

10 ORDERS OF THE DISCOVERY MASTER, AND A NONPARTY WOULD NEVER HAVE   11:02

11 ANY NOTICE, SO IF A NONPARTY HAD NO NOTICE AND YET THEY'RE

12 SUBJECT TO THE RULE, WHY WOULD NOT A SUBSEQUENTLY-SERVED PARTY

13 BE SUBJECT TO THE RULE?  THAT DOESN'T MAKE ANY SENSE.

14       MR. OVERLAND:  WELL, IT DOESN'T MAKE SENSE BECAUSE

15 PARTIES ARE TREATED DIFFERENTLY.  PARTIES ARE ENTITLED TO        11:02

16 NOTICE, ACCORDING TO THE RULE.

17       THE COURT:  WHEN YOU COME INTO AN EXISTING CASE WITH

18 A DISCOVERY MASTER ALREADY PROPERLY APPOINTED, YOU COULD

19 CERTAINLY, I CAN SEE, HAVE GROUNDS TO OBJECT TO THE DISCOVERY

20 MASTER.  AND YOU'VE NEVER DONE THAT SINCE BEING BROUGHT INTO     11:03

21 THIS CASE.

22       MR. OVERLAND:  WE ARE DOING IT.

23       THE COURT:  YOU'RE DOING IT NOW.  I UNDERSTAND THAT.

24       MR. OVERLAND:  WE ARE DOING IT, THE FIRST OPPORTUNITY

25 WHEN A MOTION WAS BROUGHT WITH RESPECT TO DISCOVERY IN FRONT OF  11:03

59

1                                    CERTIFICATE

2

3     I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
      STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4     THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
      ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5     CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
      THE UNITED STATES.

6

7     _____          _1 - 16 - 08_

8     THERESA A. LANZA, CSR, RPR                      DATE
      FEDERAL OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JANUARY 7, 2008                    BRYANT VS. MATTEL   EXHIBIT __3__

                                                      PAGE __27__

EXHIBIT 4

Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

        Plaintiff,

vs.                                     No. CV 04-9049
                           SGL (RNBx)
MATTEL, INC., a Delaware
corporation,

        Defendant.

_____

AND CONSOLIDATED ACTIONS
_____

DEPOSITION OF ROBERT KULLMAN

Los Angeles, California

Tuesday, April 8, 2008

Reported by:
Stephanie Leslie
CSR No. 12893

Job No. 85751

EXHIBIT ___4___

PAGE ___28___

3d26fa95-febd-4193-b40b-59f904a2408e

1     calibration on the ESDA, run the calibration on the

2     Dage.  That takes time.

3:27    3            So -- and then there's the breakdown time.  I

4     had to take all these instruments back and put them

5     back in the case to get my flight.  So we had

6     examined -- there were other documents there that could

7     have been examined.  One of the other problems that

8     occurred was --

3:28    9        Q    I think we're kind of far afield from my

10    question.

3:28   11        A    Okay.  Then I'm done.  You said there was more

12    than I could examine.  What I'm saying is yes, there

13    was more -- I did not complete an examination of all of

14    the documents that were there.

3:28   15        Q    I understand.  What is the average pace?  Once

16    you have all the equipment set up, let's say, you're

17    ready to go, and you're just doing the -- your initial

18    examination, which would include whatever you would

19    normally do for an initial examination -- whether it's

20    microscopic, infrared, ESDA -- how many documents an

21    hour could you cover?

3:28   22            MR. SLOAN:  Objection.  EXHIBIT ___4___

3:28   23    BY MS. HUTNYAN:                    PAGE ___29___

3:28   24        Q    Everything's set up and calibrated.

3:28   25            MR. SLOAN:  Objection, calls for speculation,

3d26fa95-febd-4193-b40b-59f904a2408e

Page 204

         1    it's an incomplete hypothetical, assumes facts not in

         2    evidence.

3:28     3              THE WITNESS:  It is basically unanswerable,

         4    but I'll try.  You may spend three or four hours

         5    examining one document.  It depends on what you

         6    observe, what you don't observe.  You may spend -- if

         7    you're going to run ESDA on it and possibly a Dage and

         8    a microscopic, you may spend 20 minutes to a half an

         9    hour on a document.

3:29    10              If you're not going to do all those exams, you

        11    may only spend five or ten minutes, so it varies.  I

        12    couldn't say how long it would take, average, to

        13    examine a document.  It depends on what you observe,

        14    what you're looking for.  And things that you may not

        15    even look for you may see.  And then you have to do

        16    additional examinations on that.  You can't say.  I

        17    wish I could.  I wish I could say, "Well, I can do 50

        18    in two hours," but I can't say that.  I don't know.

3:29    19         Q    It might be a lot less to do a thorough

        20    examination?  A lot less --

3:29    21         A    To do a thorough examination, I don't think

        22    you could do 50 in any kind of -- two hours or so.  No.

        23    To do a thorough examination of a document takes time.

        24    And it depends on what you're all looking for.  If

        25    you're looking for a printed document to see if the

3d26fa95-febd-4193-b40b-59f904a2408e

Page 205

1   printing aligns, to see if there's additions to it,

2   deletions, it may take hours to examine one document.

3:30    3       Q    So the seven boxes that you received in 2008,

4   could you do a thorough examination of all of those

5   documents and -- let's say you're not looking for

6   anything in particular. You're looking for the

7   evidence that the documents show. Could you do that in

8   eight days?

3:30    9           MR. SLOAN: Objection, vague as to what

10  particular tasks he would be performing and which

11  documents. Again, it assumes facts that aren't in

12  evidence.

3:30    13  BY MS. HUTNYAN:

3:30    14      Q    Thorough examination. You know what a

15  thorough examination is. I mean, I'm not saying

16  exhaustively, referencing every single thing in the

17  document. But the one that we've been talking about,

18  your examination of a document. Let's see what this

19  document has to tell me -- you know, maybe oblique

20  lighting and microscopic, whatever you normally do.

3:30    21      A    Okay.

3:30    22          MR. SLOAN: Same objection.

3:30    23  BY MS. HUTNYAN:

3:30    24      Q    Could you go through all those seven boxes and

25  do that kind of basic examination in eight days?

| | | |
|---|---|---|
| 3:30 | 1 | MR. SLOAN: Same objection. |
| 3:30 | 2 | THE WITNESS: Eight days of ten-hour days? |
| 3:30 | 3 | BY MS. HUTNYAN: |
| 3:30 | 4 | Q    Sure. |
| 3:30 | 5 | A    No, I couldn't. Some people may be able to. |
| | 6 | I couldn't, no. |
| 3:31 | 7 | Q    If -- could you do it in 15 days? |
| 3:31 | 8 | MR. SLOAN: Same objection. |
| 3:31 | 9 | BY MS. HUTNYAN: |
| 3:31 | 10 | Q    You saw the documents. You have more -- |
| 3:31 | 11 | A    It depends. First off, as I had stated |
| | 12 | before, I didn't examine all the documents in the box. |
| | 13 | Had I examined all the documents in the box for each of |
| | 14 | the examinations that I conducted on the majority of |
| | 15 | the -- of the ones I did on the tracing papers and on |
| | 16 | the notebook and on the mixed-media, I don't know how |
| | 17 | long it would take me, as an individual, by myself, but |
| | 18 | it would be a career maker. I'm sure I would have to |
| | 19 | devote the majority of my time for an extended period |
| | 20 | of time to do that. |
| 3:31 | 21 | So -- but as I stated, the examinations that I |
| | 22 | did alone, I probably spent anywhere from 50 to 100 |
| | 23 | hours, I would think. I don't know exactly, but I |
| | 24 | would think that much time. And I certainly didn't |
| | 25 | take them all out of the box, individually catalog them |

EXHIBIT 32

PAGE

3d26fa95-febd-4193-b40b-59f904a2408e

Page 207

1    all, individually examine every document that was in

2    there.  Some of them didn't have Bryant numbers.  They

3    weren't examined.  So -- I had a task.  I had a task

4    related to Mr. Flynn and Mr. Cunningham's reports.  So

5    that's what the examination surrounded.

3:32    6         Q    So you were going to zero in on the ones that

7    they were focusing on and examine those.  And even

8    then, it took 50 to 100 hours, you think?

3:32    9         A    I examined -- yes.  But I examined more than

10    they did, from what I can see.  Mr. Cunningham ran some

11    ESDAs.  I don't believe Mr. Flynn did, from my

12    recollection of his report.  I conducted probably 150

13    to 180, 190 ESDAs.  So just doing the ESDAs alone, if

14    you can run through maybe six or seven an hour at a

15    reasonable pace, that takes a long time to go through

16    that many.

3:33    17         Q    So if somebody told you that you had a total

18    of eight days to thoroughly examine -- not every single

19    piece of evidence, but basically do an examination of

20    each document in those seven boxes, what would you

21    think of that?

3:33    22              MR. SLOAN:  Objection, vague and ambiguous,

23    incomplete hypothetical.

3:33    24    BY MS. HUTNYAN:                    EXHIBIT___4_____

3:33    25         Q    Impossible task?          PAGE___33_____

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

3d26fa95-febd-4193-b40b-59f904a2408e

Page 212

3:37    1          If a client just sent me a box full of boxes

        2     [sic] and said, "Go through these, and see if you can

        3     find anything suspicious," you know, I would need more

        4     specific instructions than that.

3:37    5          Q    Do you need information from the client?

3:37    6          A    Certainly.  I need to know what the task is.

        7     What is it that we're attempting -- what do you want to

        8     show?  And I'll tell you whether the evidence shows it

        9     or whether the evidence refutes it.

3:37   10          And I can give you an example of that.

       11     Somebody sends me ten documents with signatures on them

       12     and they say, "Here.  I want to know if these

       13     signatures are all by the same person."  That's

       14     specific.  But if they send me ten documents that are

       15     signed and say, "Tell me if there's anything suspicious

       16     about these," I would say, "What do you mean by

       17     'suspicious'?  Tell me what you're looking for."  And

       18     then they may say, "Well, I want to know if Document B

       19     and E and F were written by the same person who wrote

       20     all the other documents," I'd say, "Great.  Now, that I

       21     can do for you in a reasonable length of time."

3:38   22          Q    So in the criminal cases that you worked on as

       23     part of the Michigan State Police, did you always have

       24     somebody tell you what might be suspicious about

                                        EXHIBIT 4
       25     documents?

                                        PAGE 34

3d26fa95-febd-4193-b40b-59f904a2408e

Page 213

3:38    1         A     Certainly.   There's some reason they're

        2     sending it to us.   They didn't just send me documents.

        3     They would send me documents and say, "Here.  This is a

        4     bank robbery note that was at the bank.  Can you find

        5     anything to link it to somebody?"  Or "These are some

        6     checks we think are forged, and we think this guy did

        7     them.  Can you link them to him?"  Sure.  That's the

        8     way you do document examinations.

3:38    9             And if they sent me a robbery note and said,

       10     "Can you tell me anything about it?" then I would

       11     examine it and see if there's anything of evidential

       12     value in it, whether there's a watermark, whether it's

       13     an impression, whether it's somebody's handwriting that

       14     they may have known writing of.  Yeah.  It's the way

       15     the work's done, I believe.  You have to have a task in

       16     mind when you're going to do something.

3:39   17         Q     But the purpose of examination should include

       18     a hypothesis of what you might be able to find or what

       19     you'd like to show?

3:39   20         A     Generally, when I talk to clients, I tell them

       21     what type of exams I can do and what they may or may

       22     not show us.  And then I want to know, what is it that

       23     you're trying to show?  What are you trying to show?

3:39   24             In this particular case, I had reports of

       25     Flynn and Cunningham.  What I was trying to see is,

EXHIBIT 4

PAGE 35

3d26fa95-febd-4193-b40b-59f904a2408e

Page 214

1    does the evidence that I can determine -- does it

2    support or refute what they're saying in their reports?

3    So that's what I do, and that's what most document

4    examiners do, I'm sure.

3:40      5         I'm sure if you sent Mr. Flynn or Mr.

6    Cunningham a box of things and said, "Here.  Tell me if

7    there's something suspicious," I would think they would

8    say, "What is it you're looking for?  Maybe I can help

9    you."  Maybe they don't do it that way.  I would think

10   they would.  Maybe not.

3:40      11        Q    Is forensic document examination an iterative

12   process?

3:40      13        A    You'd have to tell me what that means,

14   "iterative."

3:40      15        Q    Well, is it -- is it common for you to do an

16   examination on, let's say, a group of documents for a

17   case and then come back and make findings later based

18   on a further examination of those documents that you

19   didn't notice before based on your -- based on

20   examination of other materials in the case?

3:40      21        A    It can happen.

3:40      22        Q    Have you had that happen before?

3:40      23        A    With medical records, generally, sure.  I've

24   had it happen where I've examined handwriting, for

25   instance, and then said, "Well, what I can tell you is

EXHIBIT

PAGE 36

3d26fa95-febd-4193-b40b-59f904a2408e

ROBERT KULLMAN                    04/08/08

Page 215

1    it's probably written by the same person or probably

2    not, but I need additional known samples to

3    determine -- make a more determined -- definitive

4    determination." So then I'd get it back. I reexamine,

5    come up with findings, sure.

3:41    6              I examined documents before that I never --

7    the task may have been to determine if page 1 was a

8    page substitution in a three-page document. I may find

9    folds that are different, staple holes that are

10    different. So I say, "Yes. Page 1 was not always

11    attached to page 2 and 3." And then later on, they've

12    called and said, "Look. Now there -- we need to know

13    if there's other evidence of impressions that would

14    tell us that page 1 was initialed or dated when it was

15    attached to page 2." So yeah, I've reexamined things

16    later.

3:41    17    Q    And you felt it was useful to be able to go

18    back to the documents that you examined before and take

19    another look?

3:42    20    A    It was obviously useful for the client, or

21    they wouldn't have sent me additional materials. I

22    examine the documents, I run the finding. If the

23    finding is probably and the client doesn't care anymore

24    then, then probably they're not going to send me

25    anything back. I'm not going to say, "You have to send

3d26fa95-febd-4193-b40b-59f904a2408e

ROBERT KULLMAN                    04/08/08

Page 216

1    me stuff back."  And I don't -- it doesn't matter to me

2    if they want to or not.

3:42    3        So the best way to put this is I'm a

4    disinterested party.  I receive items; I examine them;

5    I give you the forensic answer.  If it helps you,

6    that's excellent.  If it hurts you, that's what you

7    have to deal with.  I guide people.  I recommend to

8    clients what would help their case, what would help my

9    examination, but you don't always get it, and --

3:42    10       Q    I guess my question is a little different,

11   though.  If -- if you have one examination of documents

12   and then -- I mean, it's not just the client that would

13   potentially benefit from further examination.  You may

14   have different findings or better findings or more

15   accurate findings based on a further examination.

16   That's something you would care about; right?

3:43    17       A    Well, you always want the most accurate

18   finding, correct.  But you are an attorney; I'm a

19   forensic document examiner.  You were hired by somebody

20   to do work.  They may say, "I don't want you to do any

21   additional work."  You don't do additional work.  If

22   I'm hired, I do work.  They say, "I don't want you to

23   do any additional work."  I stop doing additional work.

24   We're in private business.
                                         EXHIBIT  4
3:43    25       Would I want to do additional work?
                                         PAGE  38

3d26fa95-febd-4193-b40b-59f904a2408e

Page 409

1            I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3            That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11           Further, that if the foregoing pertains to the

12   original transcript of a deposition in a Federal Case,

13   before completion of the proceedings, review of the

14   transcript [X] was [ ] was not requested.

15           I further certify I am neither financially

16   interested in the action nor a relative or employee of

17   an attorney or party to this action.

18           IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated: _____

22

23

                        _____
                        STEPHANIE LESLIE
24                      CSR No. 12893
                        EXHIBIT _____ A
25
                        PAGE _____ 39