1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
      Telephone: (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11   CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                            Consolidated with Case No. CV 04-
12                  Plaintiff,              09059 and Case No. CV 05-02727

13        vs.                               Hon. Stephen G. Larson

14   MATTEL, INC., a Delaware corporation,  [PUBLIC REDACTED] MATTEL,
                                            INC.'S NOTICE OF MOTION AND
15                  Defendant.              MOTION IN LIMINE NO. 1 TO
                                            EXCLUDE: (1) EVIDENCE OR
16   ─────────────────────────────         ARGUMENT THAT BRYANT'S
                                            INVENTION ASSIGNMENT
17   AND CONSOLIDATED ACTIONS               AGREEMENTS ARE UNFAIR OR
                                            UNCONSCIONABLE; (2) EVIDENCE
18                                          OF OTHER VERSIONS OF MATTEL'S
                                            INVENTIONS AGREEMENTS; AND
19                                          (3) EXPERT TESTIMONY OF D. JAN
                                            DUFFY; AND
20
                                            MEMORANDUM OF POINTS AND
21                                          AUTHORITIES

22                                          [Notice of Lodging and Declarations of
                                            B. Dylan Proctor and Jon D. Corey filed
23                                          concurrently]

24                                          Date: May 21, 2008
                                            Time: 1:00 p.m.
25                                          Place: Courtroom 1

26                                          **Phase 1**
                                            Pre-Trial Conference:    May 5, 2008
27                                          Trial Date:              May 27, 2008

                  **CONFIDENTIAL – ATTORNEYS EYES ONLY**
28        **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on May 21, 2008, at 1:00 p.m. or as soon
3   thereafter as this matter may be heard, in the Courtroom of the Honorable Stephen G.
4   Larson, located at Courtroom 1 of the above-entitled Court, 3470 Twelfth Street,
5   Riverside CA 92501, plaintiff and counterclaimant Mattel, Inc. will, and hereby does,
6   move the Court in limine for an order precluding MGA Entertainment, Inc., MGA
7   Entertainment (HK) Limited, Isaac Larian and Carter Bryant and their witnesses from
8   asserting or relying on: (1) argument, evidence or suggestion that Bryant's inventions
9   agreements and assignments are unfair or unconscionable; (2) argument, evidence or
10  suggestion relating to other versions of Mattel's inventions agreements; and (3) expert
11  testimony of D. Jan Duffy.

12       This Motion is made pursuant to Federal Rules of Evidence 401, 402, 403
13  and 702 on the grounds that such evidence and argument is irrelevant, that any minimal
14  probative value of any such evidence is substantially outweighed by its undue prejudice
15  to Mattel and the risk of confusion to the jury, and that Duffy's anticipated testimony is
16  not "scientific, technical, or other specialized knowledge," invades the unique province
17  of the jury, makes legal conclusions and purports to instruct the jury on the law, lacks
18  foundation, and is prejudicial and cumulative in excess of its probative value.

19       This Motion is based on this Notice of Motion and Motion, the
20  accompanying Memorandum of Points and Authorities, the Declarations of B. Dylan
21  Proctor and Jon D. Corey filed concurrently herewith, the records and files of this Court,
22  and all other matters of which the Court may take judicial notice.

23
24
25
26
27
28

1

## **Statement of Rule 7-3 Compliance**

2     The parties met and conferred regarding the subject matter of this Motion on

3   March 25, 2008 and thereafter.

4

5   DATED:  April 14, 2008          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
6

7                                   By_____
                                       John Quinn
8                                      Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2469760

MATTEL'S MOTION IN LIMINE NO. 1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT........................................................................................................... 2

I.    THE COURT'S PRIOR RULINGS BAR EVIDENCE OF
      UNCONSCIONABILITY.............................................................................. 2

II.   LATER VERSIONS OF MATTEL'S INVENTIONS AGREEMENT
      ARE IRRELEVANT AND UNFAIRLY PREJUDICIAL ................................. 4

III.  DUFFY'S INTERPRETATION OF THE INVENTIONS AGREEMENT
      AND OPINIONS ON MATTEL'S "MANAGEMENT PRACTICES"
      SHOULD BE EXCLUDED ........................................................................... 6

      A.    Intellectual Property Protection Practices Fall Outside Duffy's
            Expertise............................................................................................ 6

      B.    Duffy's Testimony is Irrelevant To Whether The Inventions
            Agreement Was Adhesive Or To The Interpretation of Its Terms ........... 9

      C.    Duffy's Opinions About The Inventions Agreement Are Not
            Based On "Specialized Knowledge" That Will Assist The Jury ............ 11

      D.    Whether Mattel's Policies Provided "Effective Guidance" About
            Bryant's Obligations is Irrelevant to Whether Bryant Breached His
            Agreements ....................................................................................... 14

      E.    Duffy Cannot Instruct the On The Law Or Provide Legal
            Conclusions...................................................................................... 15

      F.    Any Value to Duffy's "Expert" Testimony Is Outweighed by
            Prejudice to Mattel .......................................................................... 16

CONCLUSION...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## Cases

Aguilar v. Int'l Longshoremen's Union Local # 10,
 966 F.2d 443 (9th Cir. 1992)............................................................... 15

Atlas Assurance Co. v. McCombs Corp.,
 146 Cal. App. 3d 135 (1983)................................................................ 4

Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.,
 5 Cal. 4th 854 (1993).......................................................................... 4

In re Baycol Prods. Litig.,
 532 F. Supp. 2d 1029 (D. Minn. 2007) ................................................ 5

Beech Aircraft Corp. v. United States,
 51 F.3d 834 (9th Cir. 1995)................................................................ 13

California School Emp. Ass'n v. Willits Unified School Dist.,
 243 Cal. App. 2d 776 (1966)............................................................... 9

Carlson v. C.H. Robinson Worldwide, Inc.,
 2005 WL. 758602 (D. Minn. 2005)...................................................... 7

Clinton Physical Therapy Services, P.C. v. John Deere Health,
 714 N.W.2d 603 (Iowa 2006)............................................................... 5

Daubert v. Merrell Dow Pharms., Inc.,
 509 U.S. 579 (1993) ............................................................................ 6

DePaepe v. General Motors Corp.,
 141 F.3d 715 (7th Cir. 1998)............................................................... 5

Delta Mining Corp. v. Big Rivers Electric Corp.,
 18 F.3d 1398 (7th Cir. 1994)............................................................. 11

Employers Reinsurance Co. v. Superior Court
 Cal. Rptr. 3d ___, 2008 WL 90664, at *9 n. 14 (Cal. App. April 3, 2008) ............ 5

In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.,
 2000 WL. 876900 (E.D. Pa. 2000)....................................................... 5

Division of Labor Standards Enforcement v. Dick Bullis, Inc.,
 72 Cal. App. 3d Supp. 52 (1977)........................................................ 10

EEOC v. Indiana Bell Tel. Co., Inc.,
 1997 WL. 1098409 (S.D. Ind. 1997)..................................................... 8

General Elec. Co. v. Joiner,
 522 U.S. 136 (1992) ............................................................................ 6

J&V Dev., Inc. v. Athens-Clark County,
387 F. Supp. 2d 1214 (M.D. Ga. 2005)................................................................ 8

Kase v. Salmon Smith Barney, Inc.,
218 F.R.D. 149 (S.D. Tex., 2003) ...................................................................... 14

King v. McKillop,
112 F. Supp. 2d 1214 (D. Colo. 2000) ............................................................... 13

Kumho Tire Co. v. Carmichael,
526 U.S. 137 (1999) ............................................................................................ 6

Lee v. City and County of San Francisco,
203 F.3d 831 (9th Cir. 1999)................................................................................ 9

Maffei v. Northern Ins. Co. of New York,
12 F.3d 892 (9th Cir. 1993)................................................................................ 15

Martin Lane Co. v. U.S.,
432 F.2d 1013 (Ct.Cl. 1970)................................................................................ 5

Marx & Co. v. Diners' Club, Inc.,
550 F.2d 505 (2d Cir. 1977)............................................................................... 11

Miller v. United Parcel Serv., Inc.,
2004 WL. 1771571 (N.D. Cal. 2004)............................................................... 7, 8

Mountain Funding, Inc. v. Frontier Ins. Co.,
2004 WL. 868366 (N.D. Ill. 2004).................................................................... 2

Oakland Bank of Commerce v. T.W. Washington,
6 Cal. App. 3d 793 (1970)........................................................................... 10, 14

Olin Corp. v. Insurance Co. of North America,
2006 WL. 509779 (S.D.N.Y. 2006) .................................................................. 2

Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley
Cookies, Ltd., 970 F.2d 273 (7th Cir. 1992) ...................................................... 14

In re Rezulin Prods Liability,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................................................. 5

Tilton v. Capital Cities/ABC, Inc.,
938 F. Supp. 751 (N.D. Okl. 1995)................................................................... 13

U.S. v. Rahm,
993 F.2d 1405 (9th Cir. 1997)........................................................................... 11

United States v. Purham,
725 F.2d 450 (8th Cir. 1984)............................................................................. 16

United States v. Vallejo,
237 F.3d 1008 (9th Cir.), amended by 246 F.3d 1150 (9th Cir. 2001).................. 11

Westlye v. Look Sports, Inc.,
   17 Cal. App. 4th 1715 (1993) ................................................................................. 2

**Statutes**

Cal. Civ. Code § 1636 .............................................................................................. 4

Fed. R. Evid. 401 .............................................................................................. 2, 4

Fed. R. Evid. 402 ................................................................................................. 4

Fed. R. Evid. 403 ...................................................................................... 2, 6, 16

Fed. R. Evid. 702 ............................................................................................ 6, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel respectfully requests that the Court exclude any argument or evidence that the Inventions Agreement is unconscionable or unfair.  When he joined Mattel as a doll designer, Bryant signed an Employee Confidentiality and Inventions Agreement in which he assigned to Mattel inventions that he conceived or reduced to practice while a Mattel employee.  Tacitly conceding that Bryant created Bratz while at Mattel, defendants wish to prove that the Inventions Agreement is unconscionable and unfair.  The first time they made that argument, they lost.  The Court dismissed Bryant's claim for a declaration that the Inventions Agreement is unconscionable, and Bryant withdrew the defense to Mattel's claims.   The MGA defendants asserted no unconscionability defense.  Because no unconscionability defense persists, evidence or argument related to it must be excluded.

Mattel further requests that the Court exclude any evidence or argument relating to Mattel's subsequently adopted (or prior) inventions agreements that Mattel used with employees *other than Bryant*.  Mattel's decision to rewrite the inventions agreement in 2004, for example, does not inform Mattel's or Bryant's intent when they entered into the Inventions Agreement in 1999.

Finally, defendants wish to use Ms. D. Jan Duffy to opine about wholly improper matters:  enforceability of the Inventions Agreement; how a "rank and file" employee would understand the Inventions Agreement; whether the Inventions Agreement is ambiguous or intelligible; and to instruct the jury on legal issues.  These opinions are not proper expert testimony and invade the exclusive province of judge and jury.  Her opinions should be excluded.

-1-

MATTEL'S MOTION IN LIMINE NO. 1

**Argument**

## I.   THE COURT'S PRIOR RULINGS BAR EVIDENCE OF UNCONSCIONABILITY

Bryant's express waiver of his unconscionability defense precludes evidence or argument that the Inventions Agreement is unconscionable or unfair. Fed. R. Evid. 401, 402.  See Olin Corp. v. Insurance Co. of North America, 2006 WL 509779, at *4 (S.D.N.Y. 2006) (evidence related to waived defense is irrelevant); Mountain Funding, Inc. v. Frontier Ins. Co., 2004 WL 868366, at *5 (N.D. Ill. 2004) (granting motion in limine to exclude evidence related to waived defense).

Bryant concedes the Court previously rejected his claim that the Inventions Agreement was procedurally or substantively unconscionable and fell within Bryant's reasonable expectations.[1]  See also Order Granting Motion to Dismiss, dated July 18, 2007, at 14:8-12 ("It is not surprising or overly harsh that Mattel would expect . . . that the works of its design staff—created by Mattel's employees, using Mattel's resources, during time for which Mattel paid the employee—be considered its property").[2]  Bryant also then abandoned, without any reservation, his entire unconscionability defense in his Second Amended Reply to Mattel's Counterclaims.[3]  Unconscionability is an affirmative defense that is waived if not in the pleadings.  See, e.g., Westlye v. Look Sports, Inc., 17 Cal. App. 4th 1715, 1736-41 (1993).  So, any evidence or argument related to this withdrawn defense, including Duffy's opinion, is barred.

Long after the Court rejected Bryant's unconscionability defense and Bryant abandoned it, defendants proffered D. Jan Duffy, who opined about the supposed

---

[1]  Bryant's Memorandum of Points and Authorities in Opposition to Mattel's Motion for Partial Summary Judgment, dated March 24, 2008 ("Bryant MSJ Opp."), at 15, Declaration of B. Dylan Proctor, dated April 14, 2008 ("Proctor Dec."), Exh. 1.

[2]  Proctor Dec., Exh. 2.

[3]  Stipulation and Order Regarding Carter Bryant's Amended Reply to Mattel's Counterclaims, dated October 5, 2007, at 1:18-23, Proctor Dec., Exh. 3.

MATTEL'S MOTION IN LIMINE NO. 1

1   procedural and substantive unfairness of the Inventions Agreement.  For example, ███████

2   ████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████

8   ███████████   Expert Report of D. Jan Duffy, dated February 11, 2008 ("Duffy Report"),

9   at 15, 18, 19, 21, Proctor Dec., Exh. 4.  The primary purpose of Duffy's testimony would

10  be precisely to suggest the Inventions Agreement was unconscionable or unfair.

11          According to Bryant, unconscionability remains a viable defense because

12  ████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████[4]  This argument

14  mischaracterizes the Court's decision, which was rendered against the same "as applied"

15  backdrop that exists now—Mattel contended Bryant "assigned his creative works to

16  Mattel,"[5] and Bryant argued that Mattel's reading rendered the contract unconscionable.

17  No basis exists to revisit the Court's ruling that the Inventions Agreement was

18  enforceable, thus defendants cannot offer testimony from Duffy or any other witness

19  suggesting the Agreement was unconscionable or unfair.[6]

20

21

22

23  [4]  Bryant MSJ Opp., at 15-16, Proctor Dec., Exh. 1.
    [5]  Memorandum of Points and Authorities in Support of Mattel's Motion to Dismiss
24  Cross-Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), dated November
25  23, 2004, at 2:9-10, Proctor Dec., Exh. 5.
    [6]  As MGA's own expert admits, Bryant's earlier 1995 Inventions Agreement with
26  Mattel is substantially identical to the 1999 Agreement addressed in the motion to
    dismiss, thus evidence of unconscionability is equally irrelevant with respect to the 1995
27  agreement.  Duffy Report at 18, Proctor Dec., Exh. 4.

28

07209/2469760

MATTEL'S MOTION IN LIMINE NO. 1

## II.   LATER VERSIONS OF MATTEL'S INVENTIONS AGREEMENT ARE IRRELEVANT AND UNFAIRLY PREJUDICIAL

As with any contract, the Invention Agreement must be interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636; Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co., 5 Cal. 4th 854, 866 (1993). Defendants apparently intend to argue that Mattel's decision to adopt a different version of the Inventions Agreement implemented years after Bryant left Mattel informs the intent of Mattel and Bryant when they signed the Inventions Agreement years earlier. For example, Duffy opines ██████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Duffy Report at 16, 20, Proctor Dec., Exh. 4.

Mattel's adoption of a new Inventions Agreement five years after Bryant's agreement was executed is irrelevant to the parties' intent in 1999. Fed. R. Evid. 401, 402; Atlas Assurance Co. v. McCombs Corp., 146 Cal. App. 3d 135, 143 (1983) (excluding purported evidence of intent where the evidence was not tied to the parties' intent *at the time* the agreement was executed). Defendants argue that because Mattel decided to use a new agreement in 2004, which included changing the assignment of creative works language, it therefore must have intended that Bryant's earlier version of the Agreement excluded such works entirely. Of course, that conclusion does not follow. Compare 1999 Inventions Agreement, Proctor Dec., Exh. 6, with 2004 Inventions Agreement, Proctor Dec., Exh. 7. As a comparison of the agreements shows, adding specificity to an agreement does not mean a new and different intent. But even if it did, it would not show what the parties intended years before at the time of the original

contract.[7]   See Martin Lane Co. v. U.S., 432 F.2d 1013, 1021 (Ct.Cl. 1970) ("[C]larification in a subsequent procurement of language which has theretofore given rise to disagreement is only wise.  The clarification cannot serve to forgive an unreasonable interpretation of the earlier language, nor properly be regarded as an admission that it was in fact ambiguous.").  This precise situation was addressed in Clinton Physical Therapy Services, P.C. v. John Deere Health, 714 N.W. 2d 603 (Iowa 2006), a dispute over whether a 1996 contract addressed providing services in a certain location. The court excluded evidence of a 2001 contract with a more specific provision addressing that location as "not relevant to the interpretation of the 1996 contract." Id. 615-616.

Defendants may argue that the adoption of the new agreement in 2004 comes in as course of conduct evidence.  Not so.  That rule is limited to the conduct under the specific contract at issue. Employers Reinsurance Co. v. Superior Court, ___ Cal. Rptr. 3d ___, 2008 WL 90664, at *9 n. 14 (Cal. App. April 3, 2008) (insurer's course of performance under later agreement could not be used to interpret the earlier policy in dispute).  Defendants' attempt to rely on agreements to which Bryant is not a party makes the course of conduct rule inapplicable.

Even if defendants can show some collateral probative value concerning Mattel's later versions of its Inventions Agreement that is substantially outweighed by

---

[7]   Expert testimony about the purported "intent" of the parties is consistently excluded because experts can no better assess intent than jurors.  In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., 2000 WL 876900, at *9 (E.D. Pa. 2000) ("[t]he question of intent is a classic jury question and not one for experts"); DePaepe v. General Motors Corp., 141 F.3d 715, 720 (7th Cir. 1998) (error to permit expert to "speculate" that motive for design-change was cost cutting); In re Rezulin Prods Liability, 309 F.Supp.2d 531, 546 (S.D.N.Y. 2004) ("[O]pinions of witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise."); In re Baycol Prods. Litig., 532 F. Supp. 2d 1029, 1069 (D. Minn. 2007) ("[t]he question of corporate intent is one for the jury, not for an expert").

1  the fact that such testimony will prolong the trial by unnecessarily putting at issue all of
2  Mattel's reasons for modifying its agreements.  This evidence will also mislead the jury
3  by suggesting these later versions of Mattel's inventions agreement have greater weight
4  than warranted and should therefore be barred under Fed. R. Evid. 403.

5

6  **III.   DUFFY'S INTERPRETATION OF THE INVENTIONS AGREEMENT**
7  **AND OPINIONS ON MATTEL'S "MANAGEMENT PRACTICES"**
8  **SHOULD BE EXCLUDED**

9        Duffy's expert report consists entirely of "opinions" about whether Bryant's
10 agreements are enforceable, how easy they are for a "rank and file" employee to
11 understand, and how alleged deficiencies in Mattel's human resources and intellectual
12 property protection programs should bear on the interpretation of Bryant's employment
13 agreements.  The opinions are not only irrelevant but also constitute improper expert
14 testimony.

15

16     **A.     Intellectual Property Protection Practices Fall Outside Duffy's**
17     **Expertise**

18        Rule 702 "establishes a standard of evidentiary reliability and requires a
19 valid . . . connection to the pertinent inquiry as a precondition to admissibility."
20 Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590, 592 (1993); see also Kumho
21 Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999).  The Court must assess reliability in
22 light of the expert's industry, analyzing overall "whether the testimony has 'a reliable
23 basis in the knowledge and experience of [the relevant] discipline.'"  Kumho Tire Co.,
24 526 U.S. at 148 (quoting Daubert, 509 U.S. at 592).  The burden rests with the party
25 offering the testimony.  General Elec. Co. v. Joiner, 522 U.S. 136, 143 (1992); see also
26 Fed. R. Evid. 702 Ad. Comm. Note, 2000 Amendments.

27

28

████████████████████████████████████████████

████████████████████████████████████ Duffy Report at 22,

Proctor Dec., Exh. 4.  Because Duffy's sole "expertise" -- a professed knowledge of employment anti-discrimination standards -- does not equate with expertise on the topics on which she actually opines -- managing intellectual property and, apparently, reading employees' minds -- her testimony and report should be excluded as unreliable.

Although Duffy has testified in matters related to human resources, she apparently has <u>never</u> testified on expert intellectual property management practices despite now offering a 20-plus page report on precisely that subject.  She has <u>not once</u> published an article on that topic, nor identified a single instance where she offered related consulting services.  This manifest lack of experience in the very subject matter on which she opines renders her views unreliable.[8]

Duffy improperly imports her almost exclusively employment discrimination background to analyze Mattel's intellectual property practices.  She provides no support in law, academic literature, or experience for her assertion ████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████ Duffy Report at 6, Proctor Dec., Exh. 4.

Whereas discrimination issues implicate tort-based rights, the intellectual property issues

---

[8] Nor would Duffy be qualified to opine on management practices even if her opinions addressed that issue.  In <u>Carlson v. C.H. Robinson Worldwide, Inc.</u>, 2005 WL 758602, at *3-4 (D. Minn. 2005), the court held that degrees in sociology and psychology, eight years' experience in a human resource department, and sixteen years' experience as a human resources consultant still did not qualify plaintiff's expert to testify about whether defendant's human resources policies comported with accepted business practices.  <u>See</u> <u>Miller v. United Parcel Serv., Inc.</u>, 2004 WL 1771571, at *16 (N.D. Cal. 2004) (excluding as irrelevant and unreliable the opinion of a human resources expert that the defendant did not comply with "recognized management practices.")  Similarly, Duffy is not qualified to opine on Mattel's "management practices," let alone Mattel's intellectual property management.

1   here involve property rights that are a matter of contract.  Yet Duffy simply applies

2   discrimination practices without discussion of intellectual property, ██████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████, without

5   identifying any other employer who did so, or any publication or case that suggests this

6   would have been sound employer practice in 1999.  Id. at 11.

7            Duffy also provides no evidence her methodology or conclusions have ever

8   been adopted or published by any industry group or subjected to peer review, which is

9   dispositive given Duffy's lack of experience with intellectual property issues.  J&V Dev.,

10  Inc. v. Athens-Clark County, 387 F. Supp. 2d 1214, 1227 (M.D. Ga. 2005) (excluding

11  expert who failed to show his methodology could be tested, failed to testify about

12  potential for error, showed no peer review or publication history for his method, and

13  offered no evidence his method was otherwise generally accepted: "Did he make it up

14  himself?  Did he learn it in his training?  Did some professional organization devise this

15  approach?"  Because these questions could not be answered, even the expert's "strong

16  credentials [could not] salvage the invalidity of his method.");  United Parcel Serv., Inc.,

17  2004 WL 1771571, at *16.

18           Other courts have excluded Duffy's testimony for using improper

19  methodology to arrive at her conclusions.  In EEOC v. Indiana Bell Tel. Co., Inc., 1997

20  WL 1098409 (S.D. Ind. 1997) (rev'd on other grounds, 214 F.3d 813 (7th Cir. 2000)),[9]

21  she was excluded because, among the other reasons previously addressed, "[t]he

22  standards about which [Duffy] wishes to testify have not been published in any article of

23  which she is aware, nor have they been adopted by any industry group."  Id.  The court

24  reasoned that "Duffy claims to have a specialized knowledge as to what is reasonable

25  based on her contact with a variety of employers and her 'deeper understanding of the

26  workplace' than most lawyers.  Yet she cannot claim to have any expertise in sociology,

27

28

MATTEL'S MOTION IN LIMINE NO. 1

1  psychology, human relations, psychiatry or human resource management." Id. The

2  Court went on to hold that "[c]onsequently, she is not qualified to render any opinion on

3  any human factors, such as predicting or explaining human behavior in the workplace."

4  Id. Duffy was again excluded in Lee v. City and County of San Francisco, 203 F.3d 831

5  (9th Cir. 1999) (unpublished)[10] because her report did not adequately explain her

6  conclusions.  The same flaws underlie Duffy's report here.

7

8  **B.    Duffy's Testimony is Irrelevant To Whether The Inventions**

9  **Agreement Was Adhesive Or To The Interpretation of Its Terms**

10         As shown in Mattel's summary judgment briefs, unambiguous contract

11  terms render irrelevant whether an agreement might be adhesive, and even adhesive

12  contracts are enforceable.  California School Emp. Ass'n v. Willits Unified School Dist.,

13  243 Cal. App. 2d 776, 787 (1966) ("Consideration of contracts of adhesion is relevant

14  only where the contract itself is ambiguous").  The Inventions Agreement was not

15  adhesive because it was negotiable.[11]

16  _____

17    [9]   Proctor Dec., Exh. 101.
      [10]  Proctor Dec., Exh. 102.

18    [11]  For example, one employee who had worked at Mattel previously created

19  protectible works between his stints at Mattel -- just as Bryant claims -- disclosed those
    works and negotiated a side agreement clarifying ownership to those non-Mattel works.

20  Robert Hudnut's Employee Confidential Information and Inventions Agreement and

21  Conflict of Interest Questionnaire, Proctor Dec., Exhs. 8 and 9; Hudnut's side letter,
    Proctor Dec., Exh. 10.  Similarly, another employee testified that she owned a separate

22  small company and thus negotiated a carve out to the Inventions Agreement -- ▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Deposition of Adrienne Fontanella, January 16, 2008, at

25  26:11-28:3, Declaration of Jon Corey, dated April 14, 2008 ("Corey Dec."), Exh. 1.
    Bryant offers no evidence that he tried to negotiate any term of the contract and was

26  rebuffed, or that the agreement was presented to him as non-negotiable.  See Mattel

27  Inc.'s Corrected Opposition to the MGA's Parties' and Carter Bryant's Motions for Partial
    Summary Judgment, dated March 24, 2008, at 15:14-28, Proctor Dec., Exh. 12.

28

1    Even were there a genuine dispute that the Inventions Agreement were
2    adhesive, the narrow facts that relate to this issue do not include the subjects on which
3    Duffy opines. Specifically, "[a] contract of adhesion has been defined as a standardized
4    contract, which imposed and drafted by the party of superior bargaining strength,
5    relegates to the subscribing party only the opportunity to adhere to the contract or reject
6    it . . . ." Division of Labor Standards Enforcement v. Dick Bullis, Inc., 72 Cal. App. 3d
7    Supp. 52, 56 (1977) (citing 1 Witkin, Summary of Cal. Law, Contracts § 13 (8th ed.
8    1973)). The jury is fully capable of resolving, without expert assistance, whether Bryant
9    was offered a non-negotiable standardized contract. Duffy's opinions on Mattel's general
10   intellectual property protection practices, how it conducts its intake and exit interviews,
11   and whether Mattel management is familiar with HR policies have no bearing on
12   whether Bryant was offered a take-it-or-leave it contract.

13   This result is confirmed by Oakland Bank of Commerce v. T.W.
14   Washington, 6 Cal. App. 3d 793 (1970), which held that neither a party's failure to read a
15   contract nor a party's failure to comprehend it triggered the contract interpretation rules
16   related to contracts of adhesion. Id. at 799. If it is irrelevant whether Bryant understood
17   or even read the Agreement, it follows that the more collateral issues of whether Mattel
18   personnel explained the Agreement to Bryant, whether they had been trained to answer
19   questions Bryant never asked, and what the human resources department did with the
20   contract after Bryant signed it are irrelevant as well.

21   Nor do alleged deficiencies in Mattel's human resources practices indicate
22   one way or another whether the parties intended the term "inventions" to apply only to
23   technological inventions or otherwise exclude Bryant's Bratz works. It is undisputed that
24   Mattel's human resources department played no role in drafting the contract but rather, as
25   is typical for such departments, simply administered it. Nor do the actions of Mattel's
26   human resource department actions during Bryant's exit interview bear on how the
27   parties understood the agreement when entered more than a year before.

28

MATTEL'S MOTION IN LIMINE NO. 1

1    Similarly irrelevant are Duffy's opinions that certain Mattel executives were
2    insufficiently familiar with the specific language in the Inventions Agreement, or that
3    Mattel failed to invest adequately in its in intellectual property protection program as a
4    whole.  Neither issue is relevant to how Bryant and Mattel understood the terms of the
5    Agreement.

6

7    **C.    Duffy's Opinions About The Inventions Agreement Are Not Based**
8    **On "Specialized Knowledge" That Will Assist The Jury**

9    Fed. R. Evid. 702 limits experts to testifying where "scientific,
10   technological, or other specialized knowledge will assist the trier of fact to understand
11   the evidence or to determine a fact in issue." Fed. R. Evid. 702.  To be admissible,
12   "expert testimony must . . . address an issue beyond the common knowledge of the
13   average layman." United States v. Vallejo, 237 F.3d 1008, 1019 (9th Cir.), amended by
14   246 F.3d 1150 (9th Cir. 2001); see also U.S. v. Rahm, 993 F.2d 1405, 1413 (9th Cir.
15   1997) (noting that the Ninth Circuit jealously guards from "expert elucidation . . . areas
16   believed within the jurors' common understanding").  Duffy's testimony regarding
17   Bryant's Inventions Agreement is replete with "expert opinions" on topics well within the
18   jury's common understanding and are not informed by any specialized knowledge:

19   *Contract Ambiguity.*  Courts consistently refuse to let experts interpret a
20   contract unless it involves a specialized term or art, science or trade. See, e.g., Marx &
21   Co. v. Diners' Club, Inc., 550 F.2d 505, 509-10 (2d Cir. 1977) (trial court erred in
22   permitting an expert opine on legal obligations of contract); Delta Mining Corp. v. Big
23   Rivers Electric Corp., 18 F.3d 1398, 1402 (7th Cir. 1994) ("[a]bsent any need to clarify
24   or define terms of art, science or trade, expert opinion testimony to interpret contract
25   language is inadmissible") (internal citations omitted). ██████████████████████████
26   ████████████████████████████████████████████████████████████████████████████████
27   ████████████████████████████████████████████████ Duffy Report at 22,
28   Proctor Dec., Exh. 4.  Her critique, however, would apply to numerous, commonplace

1   consumer contracts, such as insurance, lease and automobile purchase agreements.  For

2   example, she states that:

3   •   

4   

5       Id. at 19.

6   •   

7   

8       Id. at 19-20.

9   •   

10   

11   

12   

13   Id. at 21.

14   

15   

16       Id. at 22 (report's conclusion).  All of these opinions are improper

17   conclusions about the contract that should properly be determined by judge or jury.

18       *Contract Comprehensibility.*  Similarly, Duffy's opinions as to whether the

19   agreements were readable requires no more expertise than a juror would have.  For

20   example, Duffy concludes:

21   •   

22       Id. at 14.

23   •   

24   

25   

26       Id. at 19.

27   •   Id.

28   at 19.

MATTEL'S MOTION IN LIMINE NO. 1

1   •   ███████████████████████████████████████████████

2   ███████████   Id. at 19.

3   The jury can recognize small type.  Because the jury is equally capable of assessing the

4   readibility and comprehensibility of these documents, Duffy's testimony regarding these

5   agreements should be excluded.  See, e.g., Tilton v. Capital Cities/ABC, Inc., 938 F.

6   Supp. 751, 753 (N.D. Okl. 1995) ("[T]he jury is clearly capable of determining what the

7   average viewer from a one time viewing understood as expressed or implied by the . . .

8   broadcasts[.]"); cf. Beech Aircraft Corp. v. United States, 51 F.3d 834, 842 (9th Cir.

9   1995) (testimony regarding what could be heard in a tape recorded conversation properly

10  excluded because hearing "is within the ability and experience of the trier of fact").

11          *Interpretation of Evidence.*  Duffy's report indicates that she also intends to

12  offer her own commentary on the testimony of others:

13  •   ███████████████████████████████████████████████

14  ███████████████████████████████████████████████

15  ██████████████████████████████   Duffy Report at 22, Proctor Dec., Exh.

16  4.

17  •   ███████████████████████████████████████████████

18  ██████████████████████████████   Id. at 16.

19  •   ███████████████████████████████████████████████

20  ███████████████████████████████████████████████

21  ███████████   Id. at 16.

22  •   ███████████████████████████████████████████████

23  ███████████████████████████████████████████████

24  ███████████████████████████████████   Id. at 16.

25  These "opinions" are the argument of counsel and do not constitute proper expert

26  testimony.  The jury would not need Duffy's assistance to conclude whether such

27  evidence is ███████████ or ███████████   See, e.g., King v. McKillop, 112 F. Supp.

28  2d 1214, 1222 (D. Colo. 2000) (expert testimony excluded where experts "seek,

1   impermissibly, to do 'what the jury could do just as well on its own[,] i.e., infer the

2   presence or absence of negligence, [or willful or wanton conduct,] from the . . . evidence

3   adduced at trial.'").

4

5   **D.     Whether Mattel's Policies Provided "Effective Guidance" About**

6           **Bryant's Obligations is Irrelevant to Whether Bryant Breached His**

7           **Agreements**

8           Duffy also suggests Mattel should have provided "effective guidance" by

9   offering additional explanation beyond what was set forth in the signed written contact

10  that delineated those rights. Duffy Report at 22, Proctor Dec., Exh. 4. Notably, Duffy

11  identifies no authority that requires an employer to provide additional "guidance" to an

12  employee about his written contractual obligations. No principle of contract law renders

13  a contract unenforceable, when -- as Duffy opines -- there is no "hot line" to interpret the

14  contract. To the contrary, a failure to comprehend a contract would not absolve a party

15  of his contractual duties. Oakland Bank of Commerce, 6 Cal. App. 3d at 799; Kase v.

16  Salmon Smith Barney, Inc., 218 F.R.D. 149, 159 n. 9 (S.D. Tex., 2003) (issues "such as

17  intent and lack of accident or mistake are irrelevant" to breach of contract); Original

18  Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.,

19  970 F.2d 273, 279 (7th Cir. 1992) (liability for breach of contract is strict).

20          Moreover, there is no evidence Bryant ever asked anyone in Mattel's human

21  resource department -- or any other Mattel employee for that matter -- questions

22  regarding his intellectual property rights under the Inventions Agreement, or that he

23  looked to Mattel's policies for guidance in any way whatsoever.

24          Any minimal probative value to evidence of alleged deficiencies in Mattel's

25  business practices would be substantially outweighed by the fact that such testimony will

26  prolong the trial and confuse the issues. Putting Mattel's human resource and intellectual

27  property practices on trial would require numerous past and present human resource

28

07209/2469760

-14-

1  employees to testify.  Such evidence would do little more than confuse the jury by

2  raising issues that have no bearing on the ultimate claims and issues.

3

4  **E.**  **Duffy Cannot Instruct the On The Law Or Provide Legal**

5  **Conclusions**

6  It is the province of the judge -- not an expert witness -- to instruct the jury

7  on legal issues.  Aguilar v. Int'l Longshoremen's Union Local # 10, 966 F.2d 443, 447

8  (9th Cir. 1992) (legal opinions are inappropriate expert testimony); Maffei v. Northern

9  Ins. Co. of New York, 12 F.3d 892, 898-899 (9th Cir. 1993) (expert opinion interpreting

10  insurance policy language properly excluded as an unsupported legal conclusion).

11  Nonetheless, Duffy interjects legal opinions about Bryant's agreement throughout her

12  report.

13  For example, Duffy ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮  Duffy Report at 22, Proctor Dec., Exh. 4.  Duffy is in no position to decide the

16  scope of Bryant's rights under the Agreement.  Similarly, ▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Id. at 14.

19  Later in her report, she repeats this legal conclusion: ▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Id. at 18.

22  Mattel's rights under the Inventions Agreement are central to this case.

23  Duffy's effort to inform this Court and the jury about the nature and scope of those rights

24  should be precluded.

25

26

27

28

**F.      Any Value to Duffy's "Expert" Testimony Is Outweighed by Prejudice to Mattel**

Any limited value to Duffy's testimony is outweighed by prejudice to Mattel. Courts recognize that jurors give expert testimony an aura of infallibility. If Duffy is allowed to testify rather than let the otherwise relevant and admissible evidence speak for itself, her testimony will necessarily incline the jurors to relinquish their own role as trier of fact and adopt the view of the expert. See, e.g., United States v. Purham, 725 F.2d 450, 454 (8th Cir. 1984). Even if otherwise admissible, her testimony should be excluded under Fed. R. Evid. 403.

**Conclusion**

For all the foregoing reasons, Mattel respectfully requests that the Court preclude defendants from offering evidence, argument or suggestion that Bryant's agreements with Mattel were unconscionable, unfair or otherwise unenforceable and all evidence regarding other versions of these documents. Further, Duffy should be precluded from offering any testimony because all her opinions are irrelevant or improper subjects for expert testimony.[12]

DATED:  April 14, 2008                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

                                          By_____ /CRT
                                             John Quinn
                                             Attorneys for Mattel, Inc.

---

[12]   Mattel has not yet had an opportunity to depose Duffy.  Accordingly, Mattel reserves the right to supplement this motion once her deposition occurs.

MATTEL'S MOTION IN LIMINE NO. 1

1

**PROOF OF SERVICE**

2

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

3

4

On April 14, 2008, I served true copies of the following document(s) described as

5

6

7

**[PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE: (1) EVIDENCE OR ARGUMENT THAT BRYANT'S INVENTION ASSIGNMENT AGREEMENTS ARE UNFAIR OR UNCONSCIONABLE; (2) EVIDENCE OF OTHER VERSIONS OF MATTEL'S INVENTIONS AGREEMENTS; AND (3) EXPERT TESTIMONY OF JAN DUFFY; AND**

8

**MEMORANDUM OF POINTS AND AUTHORITIES**

9

on the parties in this action as follows:

10

Thomas J. Nolan
**Skadden, Arps, Slate, Meageher & Flom LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071

Mark E. Overland
David C. Scheper
Alexander H. Cote
**Overland Borenstein Scheper & Kim LLP**
601 West Fifth Street, 12th Floor
Los Angeles, CA 90017

11

12

13

14

15

16

17

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

18

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

19

20

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

21

Executed on April 14, 2008, at Los Angeles, California.

22

23

_____
NOW LEGAL -- Dave Quintana

24

25

26

27

28

quinn emanuel

07209/2442344.1