QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>[PUBLIC REDACTED]<br><br>NOTICE OF MOTION AND MOTION IN LIMINE NO. 7 OF MATTEL, INC., TO PRECLUDE THE MGA DEFENDANTS FROM ASSERTING OR RELYING ON AN ADVICE OF COUNSEL DEFENSE; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Declarations of B. Dylan Proctor and Jon D. Corey and Notice of Lodging filed concurrently herewith]<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 21, 2008 at 1:00 p.m., or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Stephen G. Larson, located at Courtroom 1 of the above-entitled Court, 3470 Twelfth Street, Riverside, CA 92501, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move in limine for an order precluding MGA Entertainment, Inc., MGA Entertainment (HK) Limited and Isaac Larian from asserting, relying on, or introducing any evidence in support of, or making any argument or any reference to, an advice of counsel defense, assurances received from counsel or consultations with counsel concerning the legal propriety of MGA's contracting with Bryant regarding Bratz, MGA's subsequent copying, development, production and sales of Bratz, and/or MGA's or Bryant's obligations to Mattel.

This Motion is made pursuant to Rule 403 of the <u>Federal Rules of Evidence</u>, and is made on the grounds that it would be unduly prejudicial to Mattel if MGA, MGA Hong Kong and Isaac Larian were permitted to assert or rely on an advice of counsel defense after they failed to produce documents or permit testimony related to that defense in discovery.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of B. Dylan Proctor and Jon D. Corey and Notice of Lodging filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

**Statement of Local Rule 7-3 Compliance**

The parties met and conferred regarding this matter on March 25, 2008 and times thereafter.

DATED: April 14, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT ........................................................................................................... 10

I.   FAIRNESS DEMANDS THAT MGA BE PRECLUDED FROM ASSERTING OR OTHERWISE RELYING ON AN ADVICE OF COUNSEL DEFENSE ................................................................................. 10

II.  IT IS OF NO MOMENT THAT MGA PREVIOUSLY OFFERED TO PRODUCE ONLY A SMALL SUBSET OF PRIVILEGED DOCUMENTS ................................................................................................ 12

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

Chevron Corp. v. Pennzoil Corp.,
  974 F.2d 1156 (9th Cir. 1992) ................................................................. 14

Chiron Corp. v. Genentech, Inc.,
  179 F. Supp. 2d 1182 (E.D. Cal. 2001) ................................................... 14

Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.,
  259 F.3d 1186 (9th Cir. 2001) ................................................................. 10

Permian Corp. v. U.S.,
  665 F.2d 1214 (D.C. Cir. 1981) .............................................................. 13

Trouble v. West Seal, Inc.,
  179 F. Supp. 2d 291 (S.D.N.Y. 2001) ..................................................... 10

U.S. v. Reyes,
  239 F.R.D. 591 (N.D. Cal. 2006) ............................................................ 13

Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.,
  266 F. Supp. 2d 1144 (C.D. Cal. 2003) ................................................... 13

Vicinanzo v. Brunschwig & fils, Inc.,
  739 F. Supp. 891 (S.D.N.Y. 1990) .......................................................... 10

**Statutes**

Fed. R. of Evid. 403 ........................................................................... 10, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

An important issue which may be resolved at trial is the extent to which the MGA defendants acted intentionally when they encouraged Bryant to violate his duties to Mattel. Mattel anticipates that the MGA defendants will attempt to argue that they had a good faith belief that: (1) Bryant owned the rights to the original Bratz drawings; (2) Bryant could properly assign those rights to MGA; and (3) Mattel did not own any of the materials that Bryant presented to MGA relating to Bratz, based in whole or part on the advice they sought and received from counsel prior to entering into an agreement with Bryant. The MGA defendants should not be permitted to present any evidence or argument that they acted in good faith based on advice of counsel, or solicited the advice of counsel to ensure they were acting lawfully, because they did not produce documents reflecting such advice during discovery, nor did they permit their witnesses to disclose such communications and advice during deposition.

For example, as evidence of his purported good faith, Larian testified that he instructed an MGA executive to consult with MGA's attorneys concerning Bryant's contract obligations with Mattel before MGA contracted with Bryant, and that she did so. However, MGA's counsel instructed Larian not to go beyond that partial disclosure and not to disclose the substance of counsel's advice. MGA is thus trying to rely on the consultation with counsel -- and the implication that it was advised that MGA could properly contract with Bryant -- as evidence of its good faith, while at the same time withholding the actual substance of the advice. MGA has also withheld several emails to and from its attorneys around the time when MGA first unveiled Bratz, which are described as seeking and receiving legal advice regarding Bryant's contract and licensing. Further, MGA has withheld communications with its litigation counsel from June 2001 -- nearly three years before Mattel filed suit -- which are described as ███

▓▓▓▓" and "▓▓▓▓." None of this has been produced. Thus, while communications with lawyers about Mattel obviously occurred, MGA has shielded the substance of them.

Having made the tactical decision not to produce documents or testimony showing the advice they actually received from counsel, the MGA defendants should not now be permitted to rely upon at trial, to Mattel's prejudice, their consultations with lawyers in support of their "good faith" defenses. Nor should they be permitted to introduce at trial the documents and testimony they shielded during discovery. Any suggestion or evidence that MGA relied on the advice of counsel in support of its denials of knowledge or intent should be excluded.

### Statement of Facts

*Mattel's Counterclaims and MGA's "Good Faith" Affirmative Defenses.* Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007.[1] Mattel alleges, among other things, that the MGA defendants encouraged, aided and paid Carter Bryant to develop Bratz designs while Bryant was a Mattel employee, knowing that such conduct was a breach of Bryant's contractual duties to Mattel;[2] that MGA and Bryant intentionally concealed these facts from Mattel;[3] that Mattel is the rightful owner of Bratz drawings; and that MGA's infringement of Mattel copyrights in those drawings harmed, and continues to harm, Mattel.[4] Mattel claims that the MGA defendants are liable for, among other things, aiding and abetting Bryant's

---

[1] Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, attached as Exhibit 12 to the concurrently filed Declaration of B. Dylan Proctor ("Proctor Dec.").
[2] Id., ¶ 33.
[3] Id., ¶ 35.
[4] Id., ¶¶ 83-87.

-2-

MATTEL'S MOTION IN LIMINE NO. 7

breaches of duty to Mattel, copyright infringement, and willful copyright infringement.[5]

MGA asserted 22 affirmative defenses in response to Mattel's counterclaims. Central to a number of those defenses is MGA's claim that it "███████████████████████████████████████████████████████."[6] MGA also separately asserts the defense of "██████" to Mattel's counterclaims.[7]

<u>Larian Suggests MGA Obtained Legal Advice Justifying Its Actions.</u> MGA claims that "████████████████████████████████████████████████████████████████████████████."[8] At his deposition, Larian offered reasoning in support of his claimed good faith defense. Despite Bryant's alleged representations, Larian testified that in entering into a contract with Bryant he "████████████████████████████████████████████████."[9] Similarly, MGA has stated that ████████████████████████████████████████████████████████████████████████████████

---

[5] <u>Id.</u>, ¶¶ 83-87, 136-141, 149-154.

[6] <u>See, e.g.,</u> MGA's Fifth and Sixth Affirmative Defenses, Amended Answer and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims, dated September 19, 2007, at 22, Proctor Dec., Exh. 29.

[7] <u>Id.</u>, MGA's Eighteenth Affirmative Defense, at 25.

[8] MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at 35, 76-77, Proctor Dec., Exh. 25.

[9] Deposition Transcript of Isaac Larian, dated July 18, 2006 ("Larian Depo. Tr."), at 46:16-19, attached as Exhibit 6 to the concurrently filed Declaration of Jon D. Corey ("Corey Dec.").

1 ▮."[10] Larian testified that, as evidence of his good faith, he asked Victoria O'Connor to make sure to check with MGA's attorney regarding whether Bryant had a contract with Mattel.[11] Although Larian testified that he saw an email from David Rosenbaum, outside counsel for MGA, to O'Connor, indicating that they confirmed that Bryant created the Bratz drawings in 1998 in Missouri,[12] MGA's counsel did not allow Larian to answer any other questions concerning this email absent a stipulation that the attorney client privilege would not be waived.[13] Larian was also instructed not to disclose any information he received from counsel about what was done to confirm that what Bryant said about the date of creation was accurate.[14]

MGA's Discovery Responses Demonstrate Continued Reliance on Its Alleged "Good Faith." Written discovery in this case also has demonstrated that MGA clearly intends to rely on its alleged "good faith" in defending Mattel's counterclaims. In response to requests for admissions, MGA acknowledged that "▮ ▮" that:



- ▮,"[15]
- ▮,"[16]

---

[10] MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at 12 (emphasis added), Proctor Dec., Exh. 43.
[11] Larian Depo. Tr. at 47:16-23, Corey Dec., Exh. 6.
[12] Larian Depo. Tr. at 91:13-92:6, Corey Dec., Exh. 6.
[13] Larian Depo. Tr. at 92:8-94:2, Corey Dec., Ex. 6.
[14] Larian Depo. Tr. at 91:13-24; 96:1-11, Corey Dec., Ex. 6.
[15] MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at 4, Proctor Dec., Exh. 43.
[16] Id. at 5.

-4-

1 • ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"[17] and
2
3 • ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"[18]
4
5   As recently as January 7, 2008, MGA served interrogatory responses in which it contended that "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬,"[19] and that MGA "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬."[20] MGA contends that, "▬▬▬▬▬▬▬▬▬▬" it did not know that Carter Bryant entered into an inventions agreement with Mattel.[21]

   MGA's Outside Counsel Refuses to Answer Questions At Deposition. David Rosenbaum, outside counsel for MGA from 1996 until 2003,[22] was instructed repeatedly during his deposition not to answer questions on the grounds of the attorney-client privilege. For example:

   Q ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[17] Id. at 6.
[18] Id. at 8.
[19] MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at 35, Proctor Dec., Exh. 25.
[20] Id. at 32.
[21] MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, dated January 7, 2008, at 79-80, Proctor Dec., Exh. 44.
[22] Deposition Transcript of David Rosenbaum, dated January 25, 2008 ("Rosenbaum Tr."), at 13:11-14:4, 17:15-18:10, Corey Dec., Exh. 7.



[23]

Rosenbaum was also instructed not to answer questions concerning: whether or not MGA asked him to provide legal advice regarding Mattel's potential ownership of Bratz;[24] whether or not Rosenbaum offered legal advice to MGA concerning Bryant's

---

[23] Rosenbaum Tr., at 242:1-243:12, Corey Dec., Exh. 7.
[24] Rosenbaum Tr., at 243:20-24, Corey Dec., Exh. 7.

obligations to Mattel relating to his employment;[25] whether or not Rosenbaum advised MGA that if Bryant had created the Bratz drawings, or any other design, idea or concept, while an employee of Mattel, that Mattel may have an ownership interest in those drawings, designs, ideas and/or concepts;[26] and whether or not Rosenbaum advised MGA that he believed, based on communications with Bryant, that Bryant had a confidential information and inventions agreement with Mattel.[27]

   <u>MGA Asserts the Attorney Client Privilege.</u> Although MGA has repeatedly injected its alleged "good faith" as to the central events in this case, it refused to produce the communications with its attorneys that are the only evidence of (1) what it actually thought, and was advised about, the legal propriety of contracting with Bryant and the subsequent copying and sales of Bratz, and (2) what inquiry, if any, it asked its lawyers to conduct. MGA has withheld those communications as privileged.

   There is ample reason to doubt MGA's claims of good faith, as set forth in detail in Mattel's Motion for Partial Summary Judgment. According to MGA, MGA first met with Bryant in late August or early September 2000. MGA admits that "███████████████████████████████████████████."[28] MGA claims that despite some undisclosed "███████," it did not know Bryant had signed an inventions agreement with Mattel. However, MGA produced a fax from the same time period (September 14, 2000) from Bryant to David Rosenbaum, who was the attorney MGA hired to assist with the Bryant contract,[29] in which Bryant

---

[25] Rosenbaum Tr., at 244:1-11, Corey Dec., Exh. 7.
[26] Rosenbaum Tr., at 244:19-245:6, Corey Dec., Exh. 7.
[27] Rosenbaum Tr., at 245:18-24, Corey Dec., Exh. 7.
[28] MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at 21, Proctor Dec., Exh. 43.
[29] Deposition Transcript of Victoria O'Connor, dated December 6, 2004 ("O'Connor Depo. Tr."), at 226:24-227:7, Corey Dec., Exh. 8; Larian Depo. Tr., at 50:25-51:6; 140:18-140:21, Corey Dec., Exh. 6.

encloses his offer letter with Mattel. That offer letter expressly calls attention to his Confidential Information and Inventions Agreement.[30] In the fax, Bryant advised MGA's lawyer that he was "████████████████ ████" on Mattel's part.[31]

However, when Mattel attempted to probe this matter, MGA would not disclose what its attorneys told it, or what it asked them. MGA's counsel instructed Larian not to answer, on attorney-client privilege grounds, questions regarding what MGA asked its attorneys about the propriety of contracting with Bryant and what its attorneys told MGA.[32] MGA also withheld more than a dozen emails between O'Connor and Rosenbaum that were sent between September 1, 2000, the date of the claimed meeting with Bryant, and October 4, 2000, the date Bryant's contract was executed.[33] Those emails are all described as messages "████████████ ████████████████"[34] Many emails between O'Connor and Rosenbaum from the same time period were withheld by Rosenbaum as well.[35] Those emails may include advice regarding the propriety of MGA contracting with Bryant and MGA's or Bryant's obligations to Mattel.

MGA alleges that it first unveiled Bratz at the Hong Kong Toy Fair in January 2001.[36] The next month, on February 10, 2001, Isaac Larian emailed David

---

[30] See Proctor Dec., Exh. 6.
[31] Id.
[32] Larian Depo Tr., at 47:19-48:1, Corey Dec., Exh. 6.
[33] Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document Production, Entry Nos. 12-18, 21-27, Proctor Dec., Exh. 46.
[34] Id.
[35] Privilege Log of David Rosenbaum, dated October 26, 2007, Entry Nos. 9, 12-17, 19-25, Proctor Dec., Exh. 47.
[36] MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23, Proctor Dec., Exh. 15.

Rosenbaum, noting that "███████████."[37] MGA redacted the rest of that email as privileged, describing it as "████████████████████████████████████████."[38] That email apparently started a series of communications -- first between Larian and Rosenbaum and then between O'Connor and Rosenbaum -- all described as "████████████████████████████████████████."[39] MGA withheld all of those communications.

MGA has thus withheld dozens of emails between MGA and its counsel that, based on their description, evidence legal advice MGA requested and received regarding the legal propriety of contracting with Bryant, both before the contract with him was executed and once it became apparent that MGA would begin significant efforts copying, developing, producing and selling Bratz.

Isaac Larian has also personally withheld on privilege grounds documents that appear to evidence what he knew regarding the legal propriety of MGA's contract with Bryant and subsequent development of Bratz. Larian's privilege log, which the Discovery Master ordered Larian to provide and which was served in January 2008, includes a June 30, 2001 email from Larian to Patricia Glaser, Larian's litigation counsel. The email is described as a "████████████████████████████████████,"[40] and was sent approximately when the Bratz dolls were first put on sale,[41] well before Mattel filed suit in April 2004. Additional emails from Larian to Glaser between June 29, 2001 and July 2, 2001, are listed on MGA's logs as

---

[37] See Email from Isaac Larian to David Rosenbaum, dated February 10, 2001, Proctor Dec., Exh. 48.

[38] Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document Production, Entry No. 8, Proctor Dec., Exh. 46.

[39] Id., Entry Nos. 3-6, 8-11.

[40] Larian Privilege Log, dated January 15, 2008, Entry No. 89. Entry No. 90 on Larian's log is another communication from Larian to Glaser, dated June 29, 2001, Proctor Dec., Exh. 49.

[41] MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23 ("MGA introduced [Bratz] to consumers in June 2001."), Proctor Dec., Exh. 15.

well,[42] including one described as an email "█████████████."[43] These 2001 communications between Larian and Glaser are particularly suspicious in light of Victoria O'Connor's testimony. She testified that the executed agreement between Bryant and MGA was faxed to her by Bryant with a heading at the top stating "█████████."[44] She acknowledged that the heading caused her concern "████████████████████████████████."[45] She expressed that concern to Isaac Larian.[46] Larian then asked her to whiteout "█████████" from the faxed agreement and send it to Patricia Glaser.[47]

### Argument

### I. FAIRNESS DEMANDS THAT MGA BE PRECLUDED FROM ASSERTING OR OTHERWISE RELYING ON AN ADVICE OF COUNSEL DEFENSE

"A party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; 'failure to do so constitutes a waiver of the advice-of-counsel defense.'" Trouble v. West Seal, Inc., 179 F.Supp.2d 291, 304 (S.D.N.Y. 2001), quoting Vicinanzo v. Brunschwig & fils, Inc., 739 F. Supp. 891, 894 (S.D.N.Y. 1990). See also Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc., 259 F.3d 1186 (9th Cir. 2001) (district court properly prohibited defendant from relying on advice of counsel defense at trial where defendant refused to answer questions regarding the advice of counsel during

---

[42] MGA's Supplemental Privilege Log, dated August 14, 2007, Entry Nos. 655-657, 660, Proctor Dec., Exh. 50.
[43] Id., Entry No. 660.
[44] O'Connor Depo. Tr., at 18:13-18, Corey Dec., Exh. 8.
[45] Id. at 20:8-20.
[46] Id. at 20:8-21:20.
[47] Id. at 18:13-18.

-10-

deposition). Here, MGA argues that it should be absolved of liability because it supposedly had a good faith belief that its actions were lawful, but it has withheld from production communications with its attorneys bearing on that very subject. Thus, it has waived any right it had to assert an advice of counsel defense, and all such evidence and argument should be excluded under Rule 403 of the Federal Rules of Evidence.

Nor should MGA be permitted to only half-assert this defense. MGA clearly intends to attempt to prejudice Mattel by <u>referring to</u> its attempts to obtain legal advice regarding the propriety of its actions -- including the clear implication that MGA was advised all along that Bryant was legally free to contract with MGA and that MGA was free to copy, develop and market Bratz -- while withholding the actual communications. It would be unfair to permit MGA to make such an implication.

Larian testified that in entering into a contract with Bryant he "█████████ █████████████████████████████████████████████ █████████."[48] MGA has stated that it "took steps to confirm the timing of Mr. Bryant's work prior to executing the agreement."[49] MGA claims to have conducted a "█████████."[50] Yet MGA has refused to provide testimony or produce documents that demonstrate what those steps were or what MGA learned in taking those steps. The closest MGA has come to providing that information is when Larian testified that he asked Victoria O'Connor to make sure to check with MGA's attorney regarding

---

[48] Larian Depo. Tr., at 46:16-19, Corey Dec., Exh. 6.
[49] MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at 12, Proctor Dec., Exh. 43.
[50] MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, at 79-80, dated January 7, 2008, Proctor Dec., Exh. 44.

whether Bryant had a contract with Mattel, but he was then promptly interrupted by his counsel and instructed not to divulge any attorney-client communications.[51]

Such partial "lifting of the veil" to gain an advantage is clearly improper. MGA should not be permitted to create implications before the jury it has not permitted Mattel to test in discovery. Having failed to produce evidence of any "advice of counsel" during discovery, the MGA defendants should be precluded from introducing any evidence or argument in support of an advice of counsel defense at trial, and likewise should be precluded from referring to consultations with counsel for the purpose of ensuring compliance with the law. Any such evidence, argument or suggestion would be unduly prejudicial and should be excluded under Rule 403 of the Federal Rules of Evidence.

## II. IT IS OF NO MOMENT THAT MGA PREVIOUSLY OFFERED TO PRODUCE ONLY A SMALL SUBSET OF PRIVILEGED DOCUMENTS

Mattel anticipates that the MGA defendants will argue that they should not be precluded from asserting an advice of counsel defense or referring to the legal advice they sought to ensure their compliance with law because they previously offered to produce some documents reflecting the advice of counsel. Specifically, MGA has at various times in the past proposed a narrow "transactional" waiver as to only one aspect of its claimed "good faith" -- its purported good faith prior to contracting with Bryant. However, MGA's proposal was improper and not supported by law as it would have allowed MGA to unilaterally pick and choose which privileged information it would disclose and which it would not.

MGA previously argued that its waiver of the privilege, and any corresponding document production or testimony, should be limited to documents

---

[51] Larian Depo. Tr., at 47:16-48:1, Corey Dec., Exh. 6.

showing advice to MGA, prior to October 4, 2000 (when MGA entered into its agreement with Bryant), that its acquisition of Bratz from Bryant was unlawful.[52] This proposal was woefully inadequate, particularly in light of MGA's own allegations, which belie such a narrow waiver. MGA has alleged that:



- ▉▉▉▉▉▉▉▉▉▉[53]
- ▉▉▉▉▉▉▉▉▉▉[54]
- ▉▉▉▉▉▉▉▉▉▉[55]

and

- ▉▉▉▉▉▉▉▉▉▉[56]

Moreover, MGA's "good faith" defenses and its intent more generally are relevant to a number of Mattel's claims, including its civil and willful copyright infringement claims, which apply to *ongoing* conduct. As this Court has previously explained, "[b]ecause infringement is a continuing activity, the requirement to exercise due care and seek and receive advice is a continuing duty. Therefore, once a party asserts the defense of advice of counsel, this ***opens to inspection the advice***

---

[52] MGA Entertainment, Inc.'s Opposition to Motion of Plaintiff Mattel, Inc for Order Finding Waiver and to Compel Production of Documents Withheld as Privileged, date January 31, 2008, at 12, Proctor Dec., Exh. 51.

[53] MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at 4 (emphasis added), Proctor Dec., Exh. 43.

[54] Id. at 5 (emphasis added).

[55] Id. at 6 (emphasis added).

[56] Id. at 8 (emphasis added).

*received during the entire course of the alleged infringement.*" Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P., 266 F. Supp. 2d 1144, 1148 (C.D. Cal. 2003) (emphasis added); see also U.S. v. Reyes, 239 F.R.D. 591, 603 (N.D. Cal. 2006) ("[p]arties 'cannot be permitted to pick and choose' in their disclosure of protected communications, 'waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others.'") (quoting Permian Corp. v. U.S., 665 F.2d 1214, 1221 (D.C. Cir. 1981)).

Accordingly, Mattel properly rejected MGA's request that Mattel agree to a limited "transactional" waiver by which MGA could disclose only the selected communications it wishes to, while concealing the remainder.[57] Allowing MGA to pick and choose which communications to produce and which to withhold would unfairly prejudice Mattel. Because MGA chose to stand on its prior claims and shield the advice it sought and received, MGA should not be permitted to refer to legal advice it obtained at trial to attempt to create the impression that its conduct was sanctioned by counsel.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court enter an Order precluding the MGA defendants from asserting, relying on, or introducing any evidence in support of, or making any argument or any reference to an advice of counsel defense, assurances received from counsel or consultations with counsel regarding the legal propriety of MGA's contracting with Bryant regarding

---

[57] As other courts have made clear, waiver of the privilege as to communications acts as "a waiver of all communications on the same subject matter." Chiron Corp. v. Genentech, Inc., 179 F. Supp. 2d 1182, 1186 (E.D. Cal. 2001) (citation omitted). The "subject matter" is defined by the subject, not the date. MGA efforts to limit the scope of its waiver only to "pre-October 4, 2000" information that presumably supports its defenses, while shielding information that undermines its defenses contravenes Ninth Circuit law. See Chevron Corp. v. Pennzoil Corp., 974 F.2d 1156, 1162 (9th Cir. 1992) ("[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield.") (citation omitted).

Bratz, MGA's subsequent copying, development, production and sales of Bratz, and MGA's or Bryant's obligations to Mattel.

DATED: April 14, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc.

-15-