QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 6 TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING ACTIONS TAKEN BY OR AGAINST MATTEL EMPLOYEES OTHER THAN CARTER BRYANT; AND |
| AND CONSOLIDATED ACTIONS | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; |
| | [Notice of Lodging and Declarations of B. Dylan Proctor and Jon D. Corey filed concurrently herewith] |
| | Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1 |
| | **Phase 1**<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

07209/2470215.1

MATTEL'S MOTION IN LIMINE NO. 6

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 21, 2008, at 1:00 p.m. or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Stephen G. Larson, located at Courtroom 1, 3470 Twelfth Street, Riverside CA 92501, plaintiff and counterclaimant Mattel, Inc. ("Mattel") will, and hereby does, move the Court in limine for an order precluding MGA Entertainment, Inc., MGA Entertainment (HK), Limited and Isaac Larian (collectively "MGA") and Carter Bryant  from asserting, relying on, making any argument based on, or introducing evidence relating to actions taken or not taken by or against Mattel employees other than Carter Bryant, including evidence regarding moonlighting by other Mattel employees and Mattel's alleged failure to take enforcement actions against such employees.

This motion is made pursuant to Federal Rules of Evidence 402 and 403, on the grounds that: (1) such evidence is barred by the parol evidence rule; (2) such evidence is irrelevant and immaterial to the issues, claims and/or defenses in this action; (3) the probative value of such evidence or argument, if any, is substantially outweighed by the probability that its admission will cause undue prejudice, confusion and misleading the jury; and (4) the admission of such evidence or argument would result in an undue waste of time.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Notice of Lodging and Declarations of B. Dylan Proctor and Jon D. Corey filed concurrently herewith, the records and files of the Court, and all other matters of which this Court may take judicial notice.

### Statement of Local Rule 7-3 Compliance

The parties met and conferred regarding the subject matter of this motion on March 25, 2008 and thereafter.

07209/2470215.1

MATTEL'S MOTION IN LIMINE NO. 6

1    DATED:  April 14, 2008          QUINN EMANUEL URQUHART OLIVER &
2                                    HEDGES, LLP

3                                    By /s/ John B. Quinn
4                                       John B. Quinn
                                        Attorneys for Mattel, Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 4

I.    THE PAROL EVIDENCE RULE BARS EVIDENCE OF MOONLIGHTING .............................................................................. 4

I.    EVIDENCE OR ARGUMENT CONCERNING MOONLIGHTING SHOULD BE EXCLUDED BECAUSE IT IS IRRELEVANT ...................... 7

II.   EVIDENCE OR ARGUMENT CONCERNING MOONLIGHTING SHOULD BE EXCLUDED BECAUSE ANY PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE RISK OF UNDUE PREJUDICE AND CONFUSION ............................................................ 12

III.  ADMISSION OF EVIDENCE OR ARGUMENT CONCERNING MOONLIGHTING SHOULD BE EXCLUDED BECAUSE IT WOULD RESULT IN AN UNDUE WASTE OF TIME ............................... 14

CONCLUSION ..................................................................................................... 15

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

5   <u>Alling v. Universal Manufacturing Corp.,</u>
      5 Cal. App. 4th 1412 (1992) ................................................................ 5, 7

6   <u>Beck v. American Health Group Int'l., Inc.,</u>
7      211 Cal. App. 3d 1555 (1989) ................................................................ 5

8   <u>Bionghi v. Metro. Water Dist.,</u>
      70 Cal. App. 4th 1358 (1999) ................................................................ 5

9   <u>Bonshire v. Thompson,</u>
10     52 Cal. App. 4th 803 (1997) ............................................................... 3, 6

11  <u>Deal v. Consumer Programs, Inc.,</u>
      458 F. Supp. 2d 970 (E.D. Mo. 2005) ................................................ 11

12  <u>Emerson Electric Co. v. Rogers,</u>
13     418 F.3d 841 (8th Cir. 2005) ............................................................... 11

14  <u>Founding Members of the Newport Beach Country Club v. Newport Beach Country</u>
       <u>Club, Inc.,</u>
15     109 Cal. App. 4th 944 (2003) ............................................................. 5, 7

16  <u>Haggard v. Kimberly Quality Care, Inc.,</u>
17     39 Cal. App. 4th 508 (1995) .................................................................. 5

18  <u>Kennecott Corp. v. Union Oil Co.,</u>
      196 Cal. App. 3d 1179 (1987)) .............................................................. 8

19  <u>Moorhouse v. Boeing Co.,</u>
20     501 F. Supp. 390 (E.D. Pa. 1980) ....................................................... 15

21  <u>Oceanside 84, Ltd. v. Fidelity Federal Bank,</u>
      56 Cal. App. 4th 1441 (1997) ................................................................ 8

22  <u>Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,</u>
23     133 Cal. App. 4th 658 (2005) .............................................................. 11

24  <u>Tahoe National Bank v. Phillips,</u>
      4 Cal. 3d 11 (1971) ............................................................................... 5

25
26  <u>Titan Group, Inc. v.  Sonoma Valley County Sanitation Dist.,</u>
      164 Cal. App. 3d 1122 (1985) ............................................................... 4

27  <u>Turner v. Anheuser-Busch, Inc.,</u>
28     7 Cal. 4th 1238 (1994) ........................................................................ 11

<u>United California Bank v. Maltzman</u>,
   44 Cal. App. 3d 41 (1975) ...................................................................................... 11

## <u>Statutes</u>

Federal Rule of Evidence 402 ..................................................................................... 2, 7

Federal Rule of Evidence 403 ................................................................................. 12, 14

California Civil Code § 1638 ........................................................................................ 4

## MEMORANDUM OF POINT AND AUTHORITIES

### Preliminary Statement

As part of their ongoing efforts to deflect attention at the Phase 1 trial from the core issues to collateral ones, Mattel anticipates that defendants will offer evidence that Mattel employees other than Carter Bryant "moonlighted" and that Mattel failed to take action against them.  The ostensible purpose of this evidence is to support an interpretation of Bryant's contract with Mattel that means something other than what it says, i.e. defendants intend to argue that despite the clear prohibition against such conduct in the contract, Mattel intended to allow Bryant to design a line of dolls and sell it to a competitor while he was employed by Mattel. However, the evidence should be excluded because (i) it is barred by the parol evidence rule; (ii) it is not relevant to the interpretation of the contract or any affirmative defense; (iii) even if it had any probative value, the value would be outweighed by the risk of prejudice and confusion; and (iv) it would result in an undue waste of time.

The parol evidence rule precludes the admission of extrinsic evidence to vary a term of a contract.  Bryant's contract with Mattel is integrated and unambiguous -- it provides that, without express written consent, Bryant shall not engage in any other business or assist any competitor during the term of his employment.  It also provides that the contract may not be modified except in writing.  However, based on a purported "course of conduct" regarding other employees' actions, defendants seek to interpret the contract to mean that Bryant could engage in business with a competitor while he was employed by Mattel.  The parol evidence rule clearly bars such extrinsic evidence.

Furthermore, whether other Mattel employees may have moonlighted is irrelevant.  Evidence of a course of conduct may be relevant to the interpretation of a contract where the parties did not agree to a term and the course of conduct manifests the contracting parties' intent.  But here, the parties did agree on the

1   relevant term and the purported course of conduct does not manifest Bryant's or

2   Mattel's intent.  Indeed, Bryant testified merely that █████████████████

3   ███████████████████████████████  Moreover, even having ████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████  For

7   similar reasons, the evidence is irrelevant in connection with MGA's or Bryant's

8   affirmative defenses.

9          Evidence of moonlighting also should be excluded because it would

10  create undue prejudice and confuse or mislead the jury.  The probative value of such

11  evidence, if any, is minimal because, among other things, defendants have evidence

12  only of a few isolated incidents of moonlighting which were immaterial, have

13  nothing to do with Bryant's work for MGA and do not evidence either Mattel's or

14  Bryant's intent.  The admission of this evidence would serve primarily to embarrass

15  Mattel and confuse or mislead the jury with respect to the real issues.

16         Finally, if such evidence were admitted, it would significantly broaden

17  the scope of the trial and cause a substantial waste of time.  Mattel would have to

18  present evidence regarding, among other things, who allegedly moonlighted (such as

19  the employee's position, responsibilities and access to confidential information);

20  what side business he or she conducted (including the scope of the purported

21  moonlighting, its materiality and the potential competitive harm, if any); Mattel's

22  knowledge or lack of knowledge of the facts; what actions Mattel took or

23  contemplated in response to each instance and the reasons for the action or inaction;

24  and Bryant's knowledge or lack of knowledge of the facts.  A mini-trial could be

25  required on each alleged act of moonlighting.  The Court has imposed strict time

26  limits on Mattel's presentation of evidence; if defendants are allowed to inject

27  collateral issues such as this into the trial, Mattel will not be able to meet those

28  limits.

1    Therefore, as demonstrated below, evidence of moonlighting by

2  employees other than Bryant should be excluded.

3                        **Statement of Facts**

4    Mattel has asserted a claim for relief against Bryant for breach of

5  contract.[1]  Mattel alleges that it entered into an agreement with Bryant entitled

6  "Employee Confidential Information and Inventions Agreement" (the "Employee

7  Agreement").  Pursuant to the Employee Agreement, Bryant agreed that, without

8  Mattel's express written consent, he would not engage in any business other than for

9  Mattel and would not assist in any manner any business competitive with Mattel's

10  business.[2]  Mattel claims that Bryant breached the Employee Agreement by working

11  on Bratz for Mattel's competitor, MGA, while still employed by Mattel.  Mattel also

12  claims that MGA and Isaac Larian intentionally interfered with the Employee

13  Agreement.[3]

14    In response to Mattel's claims, defendants have sought to put at issue an

15  alleged course of conduct by which Mattel effectively acquiesced in moonlighting

16  by several other Mattel employees.  Defendants want to use the evidence to interpret

17  the Employee Agreement to mean that Bryant was permitted to work for MGA

18  designing Bratz dolls while he was employed by Mattel.[4]

19    Defendants have cited several instances of Mattel employees allegedly

20  doing work outside of their jobs as evidence of a purported course of conduct of

21  moonlighting, including: ███████████████████████████

22

23    [1]  Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
24  dated July 12, 2007 ("Mattel's Counterclaims"), ¶¶ 116-121 attached as Exhibit 12
     to the concurrently filed Declaration of B. Dylan Proctor ("Proctor Dec.").
25    [2]  Id., ¶ 117 and Exhibit A, ¶ 3.
26    [3]  Id., ¶¶ 122-128.

27

28

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] [5] However, as to each of these alleged instances of moonlighting, either Mattel had no knowledge of it (and hence did not knowingly condone it) or the employee disclosed it and obtained express approval from Mattel.  Mattel has never approved or acquiesced in conduct of the nature of Bryant's work for MGA.  Thus, none of the alleged moonlighting has anything to do with the issues to be tried -- there is no evidence that Mattel has permitted, expressly or otherwise, other employees to work for competitors on competing business while employed by Mattel.

## Argument

I.      **THE PAROL EVIDENCE RULE BARS EVIDENCE OF MOONLIGHTING**

Under California law, the "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.  <u>Cal. Civil Code</u> § 1638.  Furthermore, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ."  <u>Cal. Civil Code</u> § 1639.

---

[4]      Defendants raised this argument in Bryant's Motion for Partial Summary Judgment, in which MGA and Larian have joined.  <u>See</u> Bryant's Motion for Partial Summary Judgment at 7-8, Proctor Dec., Exhibit 41.

[5]      <u>See, e.g.</u>, Carter Bryant's Responses to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses at 35, Proctor Dec., Exh. 42.

1    Accordingly, it is well established that "[a]lthough the intent of the

2    parties determines the meaning of the contract (Civ.Code, §§ 1636, 1638), the

3    relevant intent is 'objective'-- that is, the objective intent as evidenced by the words

4    of the instrument, not a party's subjective intent." Beck v. American Health Group

5    Int'l., Inc.,  211 Cal.App.3d 1555, 1562 (1989) (emphasis added). See also Titan

6    Group, Inc. v. Sonoma Valley County Sanitation Dist., 164 Cal. App. 3d 1122, 1127

7    (1985) ("objective intent, as evidenced by the words of the contract, rather than the

8    subjective intent of one of the parties, [] controls interpretation."); Founding

9    Members of the Newport Beach Country Club v. Newport Beach Country Club,

10   Inc., 109 Cal. App. 4th 944, 956 (2003) ("objective intent, as evidenced by the

11   words of the contract," governs interpretation of contract).

12   The parol evidence rule "prohibits the introduction of extrinsic

13   evidence, whether oral or written, to vary, alter or add to the terms of an integrated

14   written agreement." Alling v. Universal Manufacturing Corp., 5 Cal. App. 4th 1412,

15   1433 (1992) (citing Tahoe National Bank v. Phillips, 4 Cal. 3d 11, 23 (1971)). See

16   also Haggard v. Kimberly Quality Care, Inc., 39 Cal. App. 4th 508, 519-20 (1995)

17   (excluding extrinsic evidence, noting that evidence of intent "which is contrary to a

18   contract's express terms . . . does not give meaning to the contract; rather it seeks to

19   substitute a different meaning"); Bionghi v. Metro. Water Dist., 70 Cal. App. 4th

20   1358, 1363-66 (1999) (party cannot "smuggle extrinsic evidence to add a term to an

21   integrated contract").

22   The issues that the Court must address in determining whether extrinsic

23   evidence should go to the jury are: "(1) whether the written agreement appears to

24   state a complete agreement; (2) whether the [extrinsic evidence] directly contradicts

25   the writing; (3) whether the [extrinsic evidence] might naturally be made as a

26   separate agreement; [and] (4) whether the jury might be misled by the introduction

27   of the parol testimony." Alling, 5 Cal. App. 4th at 1434 (citing Masterson v. Sine,

28   68 Cal. 2d 222, 225-28 (1968)).

First, the determination of whether an agreement "appears to state a complete agreement," i.e. whether it is integrated, is a question of law.  Alling, 5 Cal. App. 4th at 1434 (citations omitted).  The Employee Agreement contains an integration clause stating:  "This Agreement contains the complete agreement between [Mattel] and [Bryant] concerning the subject matter hereof and supersedes all other agreements and understandings."[6]  Such an integration clause evidences a "complete agreement" and ordinarily precludes the admission of extrinsic evidence.  See Bonshire v. Thompson, 52 Cal. App. 4th 803, 809-12 (1997) (reversing arbitration award where arbitrator considered extrinsic evidence despite integration clause).

Second, defendants' interpretation of the agreement, based  on the alleged course of conduct, would contradict an express term of the Employee Agreement.  The Employee Agreement is clear in this respect -- Bryant was not permitted to engage in any business other than for Mattel or to assist any Mattel competitor while he was employed by Mattel.  It provides:



Defendants seek to use the alleged course of conduct to interpret the Employee Agreement to mean that Bryant was free to engage in business other than for Mattel and, in fact, to assist MGA in a business competitive with Mattel's fashion doll business.  Thus, the intended use of the evidence would "directly

---

[6]   Mattel's Counterclaims, Exhibit A, ¶ 4(g), Proctor Dec., Exh. 12.
[7]   Id., ¶ 3 (emphasis added).

contradict" the terms of the Employee Agreement.  Where extrinsic evidence is inconsistent with the provisions of the written agreement, it may not even be admitted to explain or supplement those provisions.  Alling, 5 Cal. App. 4th at 1434-35.

Third, the extrinsic evidence would not establish an agreement that would  "naturally be made as a separate agreement."  Even if the purported course of conduct was sufficient to evidence a term of a contract allowing employees to work for a competitor, such a term would "naturally" be an aspect of the Employee Agreement and, in fact, the contract does contain a term addressing that issue.  See Founding Members of the Newport Beach Country Club, supra, 109 Cal. App. 4th at 954 (contract term would not naturally be part of a separate agreement where term on issue was included in primary agreement).

Fourth, the jury could easily be misled if evidence of the alleged course of conduct were admitted.  As described in Sections II and III below, such evidence is irrelevant and, even if it had any probative value, the value would be outweighed by the potential for misleading or confusing the jury.  The jury could mistakenly believe that the issue is whether other employees were allowed to moonlight, rather than the meaning of the Employee Agreement and the intent of Mattel and Bryant when they entered into the agreement.

Unquestionably, each of the factors to be considered by the Court demonstrates that extrinsic evidence of an alleged course of conduct regarding moonlighting is inadmissible.

I.      **EVIDENCE OR ARGUMENT CONCERNING MOONLIGHTING SHOULD BE EXCLUDED BECAUSE IT IS IRRELEVANT**

Even if the parol evidence rule did not bar evidence of moonlighting by other Mattel employees, such evidence should be excluded because it is irrelevant.

Fed. R. Evid. 402.  Consistent with the contract law cited above, evidence of a course of conduct can be relevant to the interpretation of a contract where (i) there is no evidence that the parties agreed on a term; and (ii) the course of conduct manifests the parties' intent.  See Oceanside 84, Ltd. v. Fidelity Federal Bank, 56 Cal. App. 4th 1441, 1449 (1997) (citing Kennecott Corp. v. Union Oil Co., 196 Cal. App. 3d 1179, 1189-90 (1987)) ("where there is no evidence that the parties specifically agreed," conduct of parties after the execution of the contract and before controversy arose may be considered "to ascertain the parties' intention.").

However, in this case, the parties did agree on the relevant term in the Employee Agreement.  Defendants seek to introduce evidence of a course of conduct to change that term.  For this reason alone, the evidence is inadmissible.

Moreover, the purported course of conduct cannot manifest the parties' intent to enter into a different contract.  First, the relevant intent is the objective intent evidenced by the words of the contract, not either party's subjective intent. (See pages 4-5 above.)

Second, evidence of moonlighting by other Mattel employees does not show any intent by Bryant, at the time he entered into the Employee Agreement, that he would be allowed to work for Mattel's competitors.  Indeed, Bryant testified that



_____

[8]   Bryant Depo. Tr. at 788:14-23 (emphasis added), attached as Exhibit 2 to the concurrently filed Declaration of Jon D. Corey ("Corey Dec.").

1
2
3

       After a discussion with counsel during a break in his deposition, Bryant supplemented his prior testimony:

4
5
6
7

       Even in his supplemental testimony, Bryant was ███████████████

8
9
10
11
12
13
14
15
16
17
18
19
20

       Moreover, ████████████████████████ Bryant confirmed that ███████████████████████████:

21
22
23
24
25
26

---

27  9   Id. at 866:21-867:2.
28  10  Id. at 867:11-869:3 (emphasis added).

-9-   Case No. CASE NO. CV 04-9049 SGL (RNBx)
MATTEL'S MOTION IN LIMINE NO. 6



[redacted][11]

In particular, [redacted]:

[redacted][12]

Thus, the alleged moonlighting by other employees does not evidence or manifest any understanding or intent by Bryant when he signed the Employee Agreement that it would allow him to work for MGA while employed by Mattel. In fact, Bryant clearly did not have such an intent -- [redacted][13]

---

[11] Id. at 869:13-17.

[12] Id. at 833:4-24.

[13] Janet Bryant Depo. Tr. at 83:20-86:22 (emphasis added), Corey Dec., Exh. 3.

Similarly, evidence of moonlighting by other Mattel employees cannot manifest Mattel's intent when it entered into the Employee Agreement because there is no evidence that Mattel knew of and agreed to allow any such conduct (other than when disclosed and expressly authorized), let alone that Mattel permitted employees to perform work for Mattel competitors as Bryant did.[14]

Thus, evidence of a course of conduct in this respect is irrelevant to the interpretation of the Employee Agreement because the parties expressly agreed to the relevant term in the contract and the evidence cannot manifest the parties' intent to enter into a different contract.

Finally, defendants may argue that evidence of moonlighting supports some of its affirmative defenses such as waiver or estoppel.  However, an employer's alleged non-enforcement of a contractual provision against one employee does not operate as a waiver of that provision as to another employee. See Emerson Electric Co. v. Rogers, 418 F.3d 841, 844-845 (8th Cir. 2005); Deal v. Consumer Programs, Inc., 458 F.Supp.2d 970, 978, n. 5 (E.D. Mo. 2005). Furthermore, because Bryant had no knowledge of any actual moonlighting and did not believe he was allowed to work for a competitor while still employed by Mattel, he could not have relied on the purported course of conduct.  Accordingly, the evidence cannot support a defense such as estoppel.  See Cotta v. City of and

---

[14]  Testimony that it was "common knowledge" that employees moonlighted would be hearsay and any such knowledge cannot be imputed to Mattel. Knowledge of employees is imputed to the corporation only if the knowledge "exist[s] on the part of either the employer or those persons who effectively represent the employer, i.e., its officers, directors, managing agents, or supervisory employees" within the scope of their duties.  Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1251 (1994).  See also Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal.App.4th 658, 679 (2005) ("knowledge of an officer of a corporation within the scope of his duties is imputed to the corporation."); United California Bank v. Maltzman, 44 Cal.App.3d 41, 51-52 (1975) (same).

County of San Francisco, 157 Cal. App. 4th 1550, 1567 (2007) (elements of equitable estoppel are: (1) the party to be estopped must be apprised of the facts; (2) the party to be estopped must intend that its conduct be acted upon or must act so that the party asserting the estoppel had right to believe it was so intended; (3) the other party must be ignorant of the facts; and (4) the other party must rely upon the conduct to his or her injury.)

II.   **EVIDENCE OR ARGUMENT CONCERNING MOONLIGHTING SHOULD BE EXCLUDED BECAUSE ANY PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE RISK OF UNDUE PREJUDICE AND CONFUSION**

Evidence of alleged moonlighting by other Mattel employees also should be excluded because the probative value of such evidence, if any, is substantially outweighed by the risk of prejudice, confusion and misleading the jury. Fed. R. Evid. 403.

To the extent that evidence of moonlighting has any probative value, the value is minimal.  As discussed above, it is the objective intent as evidenced by the contract (not either party's subjective intent) that controls the interpretation of the Employee Agreement, and the evidence of moonlighting by other Mattel employees cannot manifest an intent by either Bryant or Mattel (either objective or subjective) to allow Bryant to work for a competitor of Mattel.  Bryant testified only that ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████████.

Furthermore, defendants apparently have non-hearsay evidence of only a handful of instances of moonlighting by other employees -- ████████████████ ████████████████████████████████████████ -- whereas Mattel has

1    thousands of employees.  Moreover, none of those instances is comparable to Bryant

2    working for a competitor in the fashion doll business.

3              In particular, ████████████████████████, not a designer like

4    Bryant.  His outside work is ██████████████████████, neither of which

5    poses any threat of competitive harm to Mattel.  In addition, ████████████████

6    ██████████████████████████████████████████████████████████

7    ████████████[15] ████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████[16]  The alleged moonlighting by ██████████████████████████

11   involved work that was unsubstantial and qualitatively different than Bryant's design

12   work (i.e., ████████████████████████████████████████████████

13   ████████████████████, respectively).[17]  Finally, ████████████████████

14   ██████████████████████████████████ would be hearsay.[18]

15   Accordingly, there is no real probative value in the moonlighting evidence.

16             In contrast, there would be substantial prejudice to Mattel if the

17   moonlighting evidence were admitted.  Defendants intend to argue that a course of

18   conduct, based on the evidence described above, supports an interpretation of the

19   Employee Agreement that differs from its express terms.  But evidence of rumors

20   and immaterial instances of moonlighting with non-competitors have nothing to do

21   with the terms of the Employee Agreement or the intent of either party.  The jury

22   could believe that the issue is whether these other employees were allowed to

---

23   [15]  See Declaration of Richard De Anda, dated February 7, 2008, ¶ 2 and Exh. B,

24   attached as Exhibit 1 to the concurrently filed Notice of Lodging.

25   [16]  Leahy Depo. Tr. at 186:23-187:21, Corey Dec., Exh. 4.

26   [17]  Carter Bryant's Responses to Mattel, Inc.'s Amended Supplemental
     Interrogatory Regarding Defendants' Affirmative Defenses at 35, Proctor Dec., Exh.

27   42.

28

1  moonlight, rather than what the Employee Agreement means and what Mattel and

2  Bryant intended when they entered into the contract.

3         Furthermore, defendants may try to use the evidence of ███████████

4  ████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ███████████████████████. However, as mentioned above, █████████████

7  ███████████ has nothing to do with Mattel's business and █████████████

8  ████████████████████████████████████████████████████ has

9  no bearing on the issues to be decided by the jury.

10        The actions of other Mattel employees are not on trial.  It is Bryant's

11  breach of contract and MGA's intentional interference with contract that are at issue.

12  The jury should not be presented with evidence of other employees' possible

13  wrongdoing which is likely to prejudice Mattel, and confuse and mislead the jury as

14  to the real issues in dispute.

15

16

17  **III.   ADMISSION OF EVIDENCE OR ARGUMENT CONCERNING**

**MOONLIGHTING SHOULD BE EXCLUDED BECAUSE IT WOULD**

18  **RESULT IN AN UNDUE WASTE OF TIME**

19

20        Evidence of moonlighting also should be excluded because the

21  admission of such evidence will significantly waste time at trial.  Fed. R. Evid. 403.

22        If evidence of moonlighting by other Mattel employees is admitted for

23  the ostensible purpose of establishing a course of conduct to support the defendants'

24  interpretation of the Employee Agreement, Mattel may be forced to conduct mini-

25  trials on each allegation of moonlighting.  Mattel may have to put on evidence for

26

27        [18]  Cloonan Depo. Tr. at 100:12-107:2, Corey Dec., Exh. 5.

28

each purported instance of moonlighting concerning, among other things:  (i) the position of the employee who allegedly moonlighted, the scope of his or her responsibilities and his or her access to confidential information; (ii) any disclosure or discussion of the moonlighting activity; (iii) what outside business was conducted; (iv) the scope of the purported moonlighting and its materiality; (v) whether the employee worked for a Mattel competitor and whether there was potential for competitive harm related to the conduct; (vi) whether Mattel had knowledge of the facts; (vii) what actions Mattel took or contemplated in response to each instance of moonlighting along with the reasons for Mattel's action or inaction; (viii) Bryant's knowledge or lack of knowledge of the purported moonlighting; and (ix) the effect of all of the foregoing on the parties' intent in entering into the Employee Agreement.

The presentation of all this evidence would waste an undue amount  of time.  In <u>Moorhouse v. Boeing Co.</u>, 501 F. Supp. 390, 393 (E.D. Pa. 1980), the court excluded evidence of purported wrongdoing against others because "defendants then would have been placed in the position of either presenting the justification for each witness's lay off, or of allowing the testimony to stand unrebutted.  This latter alternative, of course, would have had an obvious prejudicial impact on the jury's consideration of [plaintiff's] case."  The same reasoning applies here.

The minimal probative value of the evidence, if any, would be substantially outweighed by the inordinate amount of time that would be incurred conducting mini-trials on each alleged instance of moonlighting.

## **Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court preclude defendants from asserting, relying on, making any argument based on, or introducing evidence relating to actions taken or not taken by or against Mattel employees other than Carter Bryant, including evidence regarding moonlighting by

-15-

1   other Mattel employees and Mattel's alleged failure to take enforcement actions

2   against such employees.

3   DATED:  April 14, 2008                QUINN EMANUEL URQUHART OLIVER &
4                                         HEDGES, LLP

5

6                                         By  /s/ John B. Quinn
7                                              John B. Quinn
                                               Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28