QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S NOTICE OF AND MOTION IN LIMINE NO. 10 TO EXCLUDE TESTIMONY BY GLENN V. VILPPU;<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>[Declarations of B. Dylan Proctor and Jon D. Corey and Notice of Lodging filed concurrently herewith]<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 21, 2008 at 1:00 p.m., or as soon thereafter as the matter may be heard, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the above-entitled Court, located at 3470 Twelfth St., Riverside, California, for an order precluding MGA Entertainment, Inc., MGA Entertainment (HK) Limited, Isaac Larian and Carter Bryant, and their respective counsel and witnesses, from introducing any evidence or argument concerning, or making reference to, the expert opinions or testimony of Glenn V. Vilppu.

This motion is made pursuant to Fed. R. Evid. 402, 403, 602 and 702 on the grounds that: (1) evidence concerning purported differences between Carter Bryant's drawings and the Bratz dolls is not probative as to any fact of consequence in Phase 1 of this action, (2) assuming the contested evidence has any probative value to Phase 1 issues, the probative value of such evidence, if any, is substantially outweighed by the probability that its admission will cause fair prejudice, confusion of the issues to be tried, and waste of time, (3) Vilppu's opinions regarding employee moonlighting are not relevant, without foundation, and do not satisfy the requirements for expert evidence of Rule 702, and (4) Vilppu lacks foundation to testify regarding the purported influence of *Seventeen* magazine on Bryant's drawings.

**Statement of Local Rule 7-3 Compliance**

This Motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities in support thereof, the Declarations of Jon D. Corey and B. Dylan Proctor, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

This Motion is made following the conference of counsel pursuant to C.D. Cal. Local Rule 7-3, which was held on March 25, 2008 and at times thereafter.

DATED: April 14, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Quinn
John B. Quinn
Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF GLENN VILPPU'S OPINIONS ...................................................... 2

ARGUMENT ............................................................................................................... 3

I. VILPPU'S OPINIONS REGARDING PURPORTED DIFFERENCES BETWEEN BRYANT'S DRAWINGS AND THE BRATZ DOLLS ARE IRRELEVANT TO THE ISSUE OF SUBSTANTIAL SIMILARITY. ................................................................................................ 3

II. VILPPU LACKS FOUNDATION TO TESTIFY REGARDING BRYANT'S PURPORTED ARTISTIC INFLUENCES ................................. 7

III. VILPPU'S OPINIONS ON OWNERSHIP OF "MOONLIGHTING" CREATIONS ARE INADMISSIBLE ............................................................ 8

IV. CROSS-EXAMINATION IS NOT A SUFFICIENT REMEDY ................... 10

V. VILPPU'S TESTIMONY WOULD BE UNDULY PREJUDICIAL ............. 11

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

Atari Games Corp. v. Nintendo of Am., Inc..,
  1993 WL 207548 (N.D. Cal. 1993)......................................................................4

Baxter v. MCA, Inc.,
  812 F.2d 421 (9th Cir. 1987)...............................................................................5

In re Baycol Prods. Litig.,
  495 F. Supp. 2d 977 (D. Minn. 2007).................................................................8

Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.,
  409 F.2d 1315 (2d Cir. 1969)..............................................................................6

Curtis v. General Dynamics Corp.,
  1990 WL 302725 (W.D. Wash. 1990).................................................................4

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
  509 U.S. 579 (1993).....................................................................................10, 11

In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)
  Prods. Liab. Litig.,
  2000 WL 876900 (E.D. Pa. 2000).......................................................................8

Elsayed Mukhtar v. Cal. State Univ., Hayward,
  299 F.3d 1053 (9th Cir. 2002)............................................................................11

Fred Fisher, Inc. v. Dillingham,
  298 F.145 (S.D.N.Y.1924)...................................................................................5

Harper & Row Publishers, Inc. v. Nation Enter's,
  471 U.S. 539 (1985).............................................................................................4

Jinro Am. Inc. v. Secure Inv., Inc.,
  266 F.3d 993 (9th Cir. 2001)..............................................................................11

Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery,
  179 F.R.D. 450 (D. N.J. 1998)...........................................................................11

Loew's Inc. v. Columbia Broadcasting System,
  131 F. Supp. 165 (C.D. Cal. 1955)......................................................................6

Murray Hill Pubs. v. ABC Commn's, Inc..,
  264 F.3d 622 (6th Cir. 2001)...............................................................................5

Netbula, LLC v. BindView Development Corp.,
  516 F. Supp. 2d 1137 (N.D. Cal. 2007)...............................................................9

Newton v. Diamond,
  388 F.3d 1189 (9th Cir. 2004).............................................................................5

Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.,
  367 F. Supp. 2d 514 (S.D.N.Y. 2005)................................................................6

Rogers v. Raymark Indus., Inc.,
  922 F.2d 1426 (9th Cir. 1991)...........................................................................8

Roth Greeting Cards v. United Card Co.,
  429 F.2d 1106 (9th Cir. 1970)...........................................................................6

Runge v. Lee,
  441 F.2d 579 (9th Cir.1971)..............................................................................5

Shaw v. Lindheim,
  919 F.2d 1353 (9th Cir. 1990)...........................................................................4

Sid & Marty Krofft Television Prods, Inc. v. McDonald's Corp.,
  562 F.2d 1157 (9th Cir. 1977)...........................................................................5

Smith v. Goodyear Tire & Rubber Co.,
  495 F.3d 224 (5th Cir. 2007).............................................................................9

United States v. Chang,
  207 F.3d 1169 (9th Cir. 2000)...........................................................................9

United States v. Scop,
  846 F.2d 135 (2d Cir. 1998)..............................................................................8

Universal Pictures Co. v. Harold Lloyd Corp.,
  162 F.2d 354 (9th Cir.1947)..............................................................................5

Williams v. Kaag Mfrs.,
  338 F.2d 949 (9th Cir.1964)..............................................................................5

**Statutes**

Cal. Labor Code § 2870..........................................................................................10

Federal Rules of Evidence

    Rule 401.......................................................................................................1, 10, 11

    Rule 402...........................................................................................................10, 11

    Rule 403.......................................................................................................2, 10, 11

    Rule 702.................................................................................................1, 2, 4, 7, 11

    Rule 704(b)..............................................................................................................8

**Other Authorities**

NIMMER ON COPYRIGHT § 13.03[B][1][a] ..............................................................4

**Preliminary Statement**

Mattel's expert Lee Loetz, a toy designer with decades of experience, concluded that the first-wave Bratz dolls are substantially similar to Carter Bryant's drawings. Seeking to rebut Loetz's analysis of pervasive similarities between the works, defendants have proffered an expert report from Glenn Vilppu. Vilppu's expert report and testimony are inadmissible for several independent reasons.[1]

First, Vilppu's conclusion that the Bratz dolls are not identical to Bryant's drawings is irrelevant under Federal Rule of Evidence 401 and will not assist the trier of fact under Federal Rule of Evidence 702. It is black-letter law that an infringer cannot avoid liability by showing how much of the plaintiff's work he did *not* copy. To establish infringement, Mattel need only show that defendants copied a qualitatively important portion of Bryant's drawings. Loetz's conclusions, in addition to other evidence in the case, demonstrate that Mattel has met this standard. Vilppu's single-minded focus on purported isolated *differences* between the works does not assist the trier of fact in answering the key question whether there are actionable *similarities* between the works.

Second, Vilppu is unqualified to testify regarding what inspired Bryant to create Bratz. As an initial matter, Vilppu never interviewed Bryant, nor even read his deposition transcript. Vilppu's claim that he perceives in Bryant's drawings the influences of a 1998 issue of *Seventeen* magazine advertisements that Bryant claims to have seen thus lacks foundation. In any event, it is hornbook law that a person's intent or motivation is not a proper subject for expert testimony. Vilppu's opinion that Bryant was actually influenced by 1998 sources to which Bryant claims he was exposed is inadmissible.

Third, Vilppu's opinions on moonlighting in the toy industry should also be excluded as irrelevant. There is no evidence that Mattel ever tolerated its employees working for direct competitors, as Bryant indisputably did here (for MGA). Further, Vilppu's opinions on moonlighting do not meet the requirements of Rule 702 because they are not based on a reliable scientific analysis. Vilppu has not performed—and is not qualified to perform—industry surveys. Nor has Vilppu reviewed any pertinent academic literature on the topic. Rather, Vilppu's "expert" conclusions are based exclusively on his own limited claimed experience with moonlighting by animators. Even if Vilppu's personal experience were a sufficient basis for expert testimony on the subject of the animation industry, that experience is irrelevant to the field of doll design at issue here.

Fourth, even if any of the foregoing Vilppu opinions were marginally relevant and admissible under Rule 702, the Court should exclude them pursuant to Rule 403 because they will confuse and distract the trier of fact from determining the fundamental threshold issue of the substantial similarity of Bryant's drawings to Bratz dolls.

The Court should therefore exclude Vilppu's opinions in their entirety.

## Summary of Glenn Vilppu's Opinions

Glenn Vilppu is an artist and animator, who had worked on several cartoon series. Vilppu Report, p. 1.[2] Vilppu has also taught animation. Id. Vilppu's report does not disclose that he has had any experience in toy design, toy development and/or toy marketing.

---

[1] Mattel has not yet had the opportunity to depose Mr. Vilppu. Accordingly, Mattel reserves the right to supplement this motion based upon Mr. Vilppu's deposition testimony.

Vilppu opines that there are numerous differences between Bryant's drawings and the Bratz dolls. Id., passim. Most of his report is devoted to pointing these purported differences. Id. Vilppu also contends that Bryant's drawings demonstrate influences of prior art, including advertising featured in a 1998 issue of *Seventeen* magazine, by which Bryant claims he was inspired, and opines that "[a]lmost all art is some form of 'copying' other art. . ." Id., p. 6, 9-10.

Vilppu also concludes, based upon his personal experience in the animation industry, that artists often create ideas on their free time or as part of a freelance assignment. Id., p. 4. Vilppu claims that in the animation industry "as long as you got your work done, and didn't flaunt your other jobs, your employer would turn a blind eye to your freelance work." Id. Vilppu does not contend that this alleged practice is common in the toy, as opposed to animation, industry, and does not cite any personal or even anecdotal knowledge of moonlighting practices in the toy industry. See id.

**Argument**

**I.   VILPPU'S OPINIONS REGARDING PURPORTED DIFFERENCES BETWEEN BRYANT'S DRAWINGS AND THE BRATZ DOLLS ARE IRRELEVANT TO THE ISSUE OF SUBSTANTIAL SIMILARITY.**

Vilppu's principal opinion is that "there are many significant differences between Mr. Bryant's sketches and the Bratz dolls. …. [I]f the sketches were mine, and the goal of the project was to recreate the sketches in the dolls, I would consider the project a failure." Vilppu Report, p. 3. Vilppu bases this opinion on his dissection of every conceivable difference between the drawings and the dolls. See generally id. at 12-53. No dissimilarity is too minor. For instance, he

---

[2] Glenn Vilppu's report is attached as Exhibit 91 to the Declaration of B. Dylan Proctor in Support of Mattel Inc.'s Motions in Limine. For the Court's convenience, (footnote continued)

notes that the shoelaces are tied on the dolls but not on the characters depicted in in Bryant's drawings. Id., p. 47. He also highlights that in Bryant's drawing the character's bangs are slightly "choppier" than on the doll. Id., p. 32.

Vilppu's recitation of such negligible differences between the works will not "help the trier of fact to understand the evidence or to determine a fact in issue," which is the prerequisite for admissibility of expert testimony. Fed. R. Evid. 702. It is a fundamental tenet of copyright law that a defendant may not escape liability by distracting the trier of fact with dissimilarities between the works at issue. "[A] taking may not be excused merely because it is insubstantial with respect to the infringing work. As Judge Learned Hand cogently remarked, 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'" Harper & Row Publishers, Inc. v. Nation Enter's, 471 U.S. 539, 565 (1985) (citation omitted). The Ninth Circuit and district courts within the Circuit have consistently applied this rule. See, e.g., Shaw v. Lindheim, 919 F.2d 1353, 1362 (9th Cir. 1990) ("No plagiarist can excuse the wrong by showing how much of his work he did not pirate.") (quoting NIMMER ON COPYRIGHT § 13.03[B][1] [a], at 13-48 to 13-49); Atari Games Corp. v. Nintendo of Am., Inc.. 1993 WL 207548, *4 (N.D. Cal. 1993) ("Atari argues that there are many lock-specific features which it did not include in the Rabbit program. Atari may not avoid summary judgment by pointing to what it did not copy."); Curtis v. General Dynamics Corp., 1990 WL 302725, *9 (W.D. Wash. 1990) ("Defendants argue that their poster could not infringe plaintiff's copyright because only a small proportion of its design could possibly be considered similar. This argument is both factually and legally without merit."). Indeed, the Ninth Circuit recently rejected "a contrary rule that measured the significance of the copied segment in the defendant's work [and thus] allow an

---

this motion cites directly to the report.

unscrupulous defendant to copy large or qualitatively significant portions of another's work and escape liability by burying them beneath non-infringing material in the defendant's own work, even where the average audience might recognize the appropriation." Newton v. Diamond, 388 F.3d 1189 (9th Cir. 2004).

Thus, it is well-settled that "[d]uplication or near identity is not necessary to establish infringement." Sid & Marty Krofft Television Prods, Inc. v. McDonald's Corp., 562 F.2d 1157, 1167 (9th Cir. 1977) (citing Runge v. Lee, 441 F.2d 579, 582 (9th Cir.1971), and Williams v. Kaag Mfrs., 338 F.2d 949, 951 (9th Cir.1964)). "[A]n infringement is not confined to literal and exact repetition or reproduction; it includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy." Id. (quotation and citation omitted). "Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987). See also Loew's Inc. v. Columbia Broadcasting System, 131 F. Supp. 165 (C.D. Cal. 1955) ("The infringement of a copyright does not depend so much upon the length of the extracts as upon their value. If they embody the spirit and the force of the work in a few pages, they take from it that in which its chief value consists.") (quotation and citation omitted); Fred Fisher, Inc. v. Dillingham, 298 F.145 (S.D.N.Y.1924) (L. Hand, J) (eight note "ostinato" held to infringe copyright in song).[3] Even if there are differences between the works at issue, "[t]he test of infringement is whether the work is recognizable by an ordinary observer as having been taken from the copyrighted

---

[3] See also Murray Hill Pubs. v. ABC Commn's, Inc.., 264 F.3d 622, 633 (6th Cir. 2001) ("[t]he misappropriation of even a small portion of a copyrighted work ... may constitute an infringement under certain circumstances.") (citing Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354, 361 (9th Cir.1947)).

1  source." Roth Greeting Cards v. United Card Co., 429 F.2d 1106, 1110 (9th Cir.
2  1970) (quotation and citation omitted).
3        Vilppu's analysis of the dissimilarities between Bryant's drawings and
4  the Bratz dolls is therefore legally irrelevant and misleading. Aside from cases
5  involving wholesale copying (*i.e.*, bootlegging), every infringing work has some
6  differences from the original. As courts recognize consistently (see supra), analysis
7  of such differences misses the point because infringement analysis focuses on
8  similarities, not differences, between the works. See cases cited supra; see also, e.g.,
9  Nicholls v. Tufenkian Imp./Exp. Ventures, Inc., 367 F. Supp. 2d 514, 522 (S.D.N.Y.
10 2005) ("In determining substantial similarity, 'the key . . . is . . . the similarities
11 rather than the differences.') (citation omitted); cf. Concord Fabrics, Inc. v. Marcus
12 Bros. Textile Corp., 409 F.2d 1315, 1316 (2d Cir. 1969) ("While the trial court
13 placed great emphasis on the minor differences between the two patterns, we feel
14 that the very nature of these differences only tends to emphasize the extent to which
15 the defendant has deliberately copied from the plaintiff.").
16       Contrary to settled law, Vilppu does not consider the pervasive
17 similarities between Bryant's drawings and the Bratz dolls. Vilppu pays lip service
18 to rebutting Loetz' opinions, but actually he ignores them. For instance, Vilppu
19 notes that the one of the Bratz' dolls' backpack features a drawing of a rabbit with
20 four legs, not two, but fails to acknowledge the remarkable similarity between the
21 works insofar as both feature a backpack with a drawing of a rabbit inside an oval
22 with the words "Hip Hop."



Thus, the Bratz dolls faithfully reproduce the creative gist of Bryant's drawings. Vilppu's failure to analyze this issue according to settled Ninth Circuit law renders his opinion irrelevant, unhelpful to the trier of fact, and inadmissible.

## II. VILPPU LACKS FOUNDATION TO TESTIFY REGARDING BRYANT'S PURPORTED ARTISTIC INFLUENCES

Vilppu concludes that Bryant's drawings are influenced by prior art, such as advertisements in a 1998 issue of *Seventeen* magazine. Vilppu Report, pp. 9-10. This opinion is plainly inadmissible. As an initial matter, Vilppu lacks foundation for this "expert" conclusion. Vilppu did not interview Bryant. See id, p. 2 (listing materials consulted). He did not even read Bryant's deposition transcript. Id. His opinion is pure unbridled speculation, which falls far short of the requirement that expert testimony be "based upon sufficient facts or data." Fed. R. Evid. 702. That alone warrants excluding Vilppu's testimony on this topic.

In any event, the actual influence of prior art on Bryant's Bratz drawings -- e.g., that Bryant was purportedly influenced by certain magazine illustrations to which he claims he was exposed in 1998 -- is not an appropriate matter for expert testimony because experts cannot opine on issues of intent or motivation. See, e.g., In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., 2000 WL 876900, at *9 (E.D. Pa. 2000) ("[t]he question of intent is a classic jury question and not one for experts"); cf. In re Baycol Prods. Litig., 495 F. Supp. 2d 977, 1016-17 (D. Minn. 2007) ("[t]he question of corporate intent is one for the jury, not for an expert"); Fed. R. Evid. 704(b) (in criminal cases, expert testimony on the issue of the defendant's scienter is inadmissible because "[s]uch . . . matters [are] for the trier of fact alone."). Indeed, what Bryant was influenced by -- and whether that was in 1998 or 1999, -- is perhaps the primary question for the jury, not Vilppu. See Rogers v. Raymark Indus., Inc., 922 F.2d 1426, 1431 (9th Cir. 1991) ("[A] party is not entitled to have an expert testify solely because that witness can eloquently summarize the evidence. That job belongs to counsel. The district court properly exercised its discretion to guard against the jury's becoming mesmerized by an 'expert.'"); United States v. Scop, 846 F.2d 135, 142 (2d Cir. 1998) ("The credibility of witnesses is exclusively for the determination by jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at trial.") (internal citations omitted). Vilppu's speculation concerning the artistic origins of Bryant's works is plainly inadmissible.

## III. VILPPU'S OPINIONS ON OWNERSHIP OF "MOONLIGHTING" CREATIONS ARE INADMISSIBLE

Vilppu also improperly opines that artists commonly work on their own projects in their free time, that "such work is appropriate and an accepted part of the industry," and that "I did not believe that the studios owned what I did in my own time." Vilppu Report, pp. 3-4.

    Of course, whether an employer owns specific designs created by an employee is a matter of contract. See Netbula, LLC v. BindView Development Corp., 516 F. Supp. 2d 1137, 1148 (N.D. Cal. 2007) ("the question of whether a license has in fact been assigned depends on contract interpretation"). Vilppu fails to identify a single contract under which he or any other animator ever worked, whether such agreements included inventions assignment clauses at all, and if so, the scope of those clauses. His subjective legal conclusions concerning his invention rights are impossible to assess apart from the context of any specific agreement or any particular creation. Vilppu Report, p. 4. ("While I did not try to use [a cartoon concept developed on my own time] commercially, I always felt that I had a right to do so."); id. ("In my view, the studio did not own that idea or any of my related drawings").

    Nor in any event does Vilppu provide any basis to find that his purported 45 years of experience as an animator qualifies him to opine on custom and practice in the toy industry. See United States v. Chang, 207 F.3d 1169, 1171-73 (9th Cir. 2000) (affirming exclusion of expert testimony offered as to authenticity of allegedly counterfeit Japanese bank certificate because, although expert was well-qualified to testify as to the underlying indicia of authenticity, he was unqualified to determine whether particular securities were counterfeit, which was the relevant issue); Smith v. Goodyear Tire & Rubber Co., 495 F.3d 224, 227 (5th Cir. 2007) (affirming exclusion of expert on polymers from testifying regarding tire failure because he did not have experience with tire design, manufacture, or malfunction). Vilppu devotes the entire two pages on "moonlighting works" to the custom and practice of the animation industry, referencing "pitch night" at the Animation Guild, the frequency by which animation employers turn a "blind eye" to freelance work, and a motto apparently prevalent among animation employees regarding how they should not flaunt to their employers other jobs on which they may be working.

Report at 4. Vilppu does not describe any alleged customs and practices in the toy industry, nor does he even suggest animation is related to the toy industry.[4]

Finally, for reasons explained elsewhere, even alleged "moonlighting" by Mattel employees other than Bryant is irrelevant. Moonlighting by non-Mattel employees in a different industry is thus wholly irrelevant. Introduction of this testimony, which Mattel would then be forced to rebut, would be improper. Fed. R. Evid. 401-403.

For these reasons, Vilppu's unfounded speculation about the ownership of creative works within the toy industry should be excluded.

## IV. CROSS-EXAMINATION IS NOT A SUFFICIENT REMEDY

Defendants will likely argue that Mattel may address the analytical deficiencies in Vilppu's analysis in cross-examination. The Supreme Court, however, has held that cross-examination is not a substitute for the Court's exercise of its gatekeeping function, but instead is appropriate only "where the basis of scientific testimony meets the standards of Rule 702." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993). "[T]o conclude that evidence is admissible because it is subject to [cross-examination] is, therefore, circular."

---

[4] Vilppu's opinion also assumes without explanation that moonlighting works invariably fall outside an employer's line of business. For example, Vilppu asserts that Disney did not own paintings created at lunch or at night "because [the paintings were] not related to the work the studio had hired and paid me to do." Vilppu Report, p. 4. This assumption--which is almost surely incorrect as a matter of law but again impossible to assess given the lack of detail Vilppu provides--is critical because California law protects employees from assigning inventions that do not relate to an employer's line of business, subject to a number of other requirements. Cal. Labor Code § 2870. Here, there is no reasonable dispute that Bryant's Bratz doll creations directly relate to Mattel's business, which includes fashion dolls. Vilppu's opinion is thus irrelevant because his threshold assumption does not apply here.

1 Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 179 F.R.D. 450, 458 (D. N.J. 1998).

As set forth above, Vilppu's analysis falls short of the threshold standards of Rule 702. Accordingly, it must be excluded.

## V. VILPPU'S TESTIMONY WOULD BE UNDULY PREJUDICIAL

Even if Vilppu's testimony surpasses the prerequisites of Rules 401, 402 and 702, it should nonetheless be excluded under Rule 403. It is well-settled that otherwise admissible expert testimony must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury under Rule 403. See Jinro Am. Inc. v. Secure Inv., Inc., 266 F.3d 993, 1005-06 (9th Cir. 2001). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than lay witnesses." Daubert, 509 U.S. at 595 (quotation omitted).

Here, Vilppu's testimony is substantially more prejudicial than probative. Vilppu is a well-known artist and a prominent member of the artistic community. His prominence in these fields may improperly distract the jury from its task of analyzing the actionable similarities between the works, in favor of considering legally irrelevant differences between the works. The jury's task will be complex enough without this distraction. It would be unduly prejudicial for Vilppu to testify as to such matters, "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." Elsayed Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063-64 (9th Cir. 2002). Therefore, Vilppu's testimony should be excluded under Rule 403, in addition to being inadmissible under Rule 702.

## Conclusion

The Court should exclude Glenn Vilppu's testimony at trial and bar defendants from making any reference to his conclusions or opinions.

DATED: April 14, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc.