QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059 and<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | [PUBLIC REDACTED] NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 OF MATTEL, INC. TO PRECLUDE DEFENDANTS FROM OFFERING IMPROPERLY DISCLOSED EVIDENCE; AND |
| AND CONSOLIDATED ACTIONS | MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Notice of Lodging and Declarations of Jon D. Corey and B. Dylan Proctor filed concurrently] |
| | Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1 |
| | **Phase 1**<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 21, 2008, at 1:00 p.m. or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Stephen G. Larson, located at Courtroom 1 of the above-entitled Court, 3470 Twelfth Street, Riverside CA 92501, plaintiff and counterclaimant Mattel, Inc. ("Mattel") will, and hereby does, move the Court in limine for an order precluding MGA Entertainment, Inc., MGA Entertainment (HK), Ltd., Isaac Larian and Carter Bryant  from asserting, relying on, making any argument based on, or introducing evidence which they failed to disclose properly pursuant to Federal Rules of Civil Procedure 26(a)(2), 26(e) or 33, including without limitation (i) paragraphs 19-26 and 92-121 of the Expert Rebuttal Report of Paul K. Meyer; (ii) paragraphs 30-35, 39, 42, 45, 50 and 52-53 of the Expert Rebuttal Report of Douglas Kidder; (iii) paragraphs 7-16 of the Expert Rebuttal Report of Thomas Gruca; (iv) paragraph 24 of the Expert Rebuttal Report of Robert Tonner; and (v) argument or evidence by MGA that Bryant performed a "test" project for MGA while he was employed by Mattel.

This Motion is made pursuant to Federal Rule of Evidence 403 and Federal Rules of Civil Procedure 37(b)(2)(A)(ii) and (c)(1) and is made on the grounds that it would be unduly prejudicial to Mattel if MGA or Bryant were permitted to assert, rely on, make any argument based on, or introduce any such evidence after they failed to disclose the evidence properly under the rules for discovery.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of B. Dylan Proctor and Jon Corey filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

1

## <u>Statement of Local Rule 7-3 Compliance</u>

2         The parties met and conferred regarding the subject matter of this motion

3   on March 25, 2008 and thereafter.

4

5   DATED:  April 14, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                     By /s/ John B. Quinn

8                       John B. Quinn
                    Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **<u>TABLE OF CONTENTS</u>**

2
**<u>Page</u>**

3

4

PRELIMINARY STATEMENT ................................................................... 1

5

STATEMENT OF FACTS ......................................................................... 2

6

ARGUMENT ............................................................................................ 13

7

8

I.      MGA AND BRYANT HAVE THE BURDEN OF PROVING
        APPORTIONMENT ...................................................................... 13

9

10

II.     MGA AND BRYANT WERE REQUIRED TO DISCLOSE
        INITIALLY THEIR EXPERT REPORTS ON APPORTIONMENT.............. 15

11

III.    A PARTY THAT UNJUSTIFIABLY FAILS TO MAKE PROPER
        EXPERT DISCLOSURES IS NOT PERMITTED TO USE THE
        EVIDENCE OR OPINIONS AT TRIAL ........................................ 19

12

13

IV.     A PARTY THAT MAKES AN EVASIVE OR INCOMPLETE
        ANSWER TO AN INTERROGATORY, OR FAILS TO CORRECT AN
        ANSWER, IS PRECLUDED FROM USING THE EVIDENCE AT
        TRIAL ......................................................................................... 22

14

15

16

V.      OTHER EVIDENCE DEFENDANTS FAILED TO DISCLOSE
        SHOULD BE EXCLUDED AS WELL............................................ 24

17

CONCLUSION......................................................................................... 25

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S MOTION IN LIMINE NO. 11

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

*Baldwin Graphic Systems, Inc.*,
  2005 WL. 1300763 (N.D. Ill. 2005) ........................................................................ 15

*Bucklew v. Hawkins, Ash, Baptie & Co.*,
  329 F.3d 923 (7th Cir. 2003) ................................................................................. 14

*Coles v. Perry*,
  217 F.R.D. 1 (D.D.C. 2003) ................................................................................... 16

*Data General Corp. v. Grumman Systems Support Corp.*,
  36 F.3d 1147 (1st Cir. 1994) ................................................................................. 14

*Finley v. Marathon Oil Co.*,
  75 F.3d 1225 (7th Cir. 1996) ................................................................................. 19

*International Business Machines Corp. v. Fasco Industries, Inc.*,
  1995 WL. 115421 (N.D. Cal. 1995) ....................................................................... 20

*Johnson v. Grays Harbor Community Hospital*,
  2007 WL. 4510313 (W.D. Wash. 2007) ................................................................. 20

*Jorgenson Forge Corp. v. Consarc Corp.*,
  2002 WL. 34363668 (W.D. Wash. 2002) ............................................................... 16

*Lohnes v. Level .3 Communications, Inc.*,
  272 F.3d 49 (1st Cir. 2001) ................................................................................... 19

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*,
  592 F.2d 651 (2nd Cir. 1978) ................................................................................. 14

*M2 Software, Inc., v. Madacy Entertainment*,
  421 F.3d 1073 (9th Cir. 2005) ............................................................................... 18

*Mabrey v. United States*,
  2006 WL. 1891127 (D. Nev. 2006) .................................................................. 16, 19

*Martin v. Inclusion, Inc.*,
  2007 WL. 778183 (D. Idaho 2007) ........................................................................ 22

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*,
  284 F.3d 505 (4th Cir. 2002) ................................................................................. 14

*Pierce v. Novastar Mortg., Inc.*,
  2007 WL. 636029 (W.D. Wash. 2007) ................................................................... 20

*Sandata Technologies, Inc. v. Infocrossing, Inc.*,
  2007 WL. 4157163 (S.D.N.Y. 2007) ...................................................................... 15

28

-ii-

*Technology Licensing Corp. v. Thomson, Inc.*,
    2005 WL. 1562225 (E.D. Cal. 2005) ......................................................... 23

*Trost v. Trek Bicycle Corp.*,
    162 F.3d 1004 (8th Cir. 1998) ............................................................... 15

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ......................................................... 18, 21

## **Statutes**

Fed. R. Civ. P. 26(a) ............................................................................... 19, 23

Fed. R. Civ. P. 26(a)(2) ................................................................................. 15

Fed. R. Civ. P. 26(a)(2)(C) ...................................................................... 16, 18

Fed. R. Civ. P. 26(e)(1) ................................................................................ 23

Fed. R. Civ. P. 30(b)(6) .......................................................................... 11, 12

Fed. R. Civ. P. 37(a)(4) ................................................................................ 22

Fed. R. Civ. P. 37(c) .................................................................................... 21

Fed. R. Civ. P. 37(c)(1) ................................................................... 18, 19, 21 23

Fed. R. Civ. P. 37(d)(1)(A)(ii) ....................................................................... 22

Fed. R. Civ. P. 37(d)(3)  ............................................................................... 22

07209/2470515.1

MATTEL'S MOTION IN LIMINE NO. 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel seeks an order precluding MGA Entertainment, Inc., MGA Entertainment (HK), Limited and Isaac Larian (collectively "MGA") and Carter Bryant ("Bryant") from introducing evidence or argument in support of matters which they failed to disclose properly.  The motion involves two types of improperly disclosed evidence.  First, experts for MGA and Bryant expressed opinions for the first time in rebuttal reports that (a) were required to be included in their initial reports and (b) were not proper rebuttal.  Second, Mattel anticipates that MGA will attempt to introduce evidence at trial that Bryant conducted a "test project" for MGA after MGA denied in discovery that a "test project" had occurred.

The first issue concerns the damages recoverable for copyright infringement.  A plaintiff in a copyright infringement action may recover the defendant's profits that are attributable to the infringement.  In doing so, the plaintiff has the burden of proving only the infringer's gross revenues.  The defendant has the burden of proving its costs and, if it asserts that part of its profits are not attributable to the infringing work, it has the burden of proving the proper "apportionment."

Here, MGA and Bryant assert that their profits should be apportioned among infringing and non-infringing factors.  Because they have the burden of proof on that issue, their experts were required to disclose their opinions regarding apportionment in their initial reports.  Mattel then would have had an opportunity to retain experts and prepare rebuttal reports.

However, with one exception, MGA and Bryant disclosed their apportionment opinions only in their rebuttal reports.  But MGA and Bryant were required to make these disclosures <u>initially</u>.  Moreover, the reports do <u>not</u> rebut any opinions expressed in Mattel's expert reports because Mattel's experts did not address apportionment.  MGA's and Bryant's experts recognize that Mattel's experts did not discuss apportionment.

Mattel would be substantially prejudiced if MGA and Bryant were allowed to introduce evidence and make arguments based on these untimely opinions. Mattel had no opportunity to retain experts and submit rebuttal reports in response to these experts' opinions and there is no time to do so now.

The second issue concerns Mattel's claim that Bryant breached his duty of loyalty to Mattel, and that MGA aided and abetted that breach, when Bryant performed work for MGA while he was still employed by Mattel. Although Bryant claimed that he merely performed a project as a "tryout" or "test" as part of his application for employment at MGA, MGA denied in response to an interrogatory that Bryant did such a project for MGA. However, in its recent opposition to Mattel's motion for partial summary judgment, MGA argued that Bryant did perform a "tryout project" for MGA as part of the hiring process. MGA should not be allowed to introduce such evidence at trial that it did not disclose in discovery.

Having made tactical decisions not to make initial expert disclosures on apportionment issues, and not to disclose information about any test project, MGA and Bryant should not be permitted to sandbag Mattel at trial by introducing this evidence when Mattel has not had an adequate opportunity to conduct full discovery, submit true rebuttal reports or prepare for trial on these issues.

## **Statement of Facts**

<u>The Pleadings.</u>

In its Second Amended Answer and Counterclaims, Mattel alleges, among other things, that it owns copyrights in Bryant's initial drawings for the Bratz dolls and that MGA and Bryant have infringed Mattel's copyrights.[1] Mattel claims

---

[1]   Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, attached as Exhibit 12 to the Declaration of B. Dylan Proctor ("Proctor Decl."), ¶¶ 83-85.

1  that the defendants are liable for the profits they have received from the

2  infringement.[2]

3        Mattel also alleges that, as an employee of Mattel, Bryant owed it a duty

4  of loyalty and that he breached that duty by doing work for MGA during his

5  employment with Mattel.[3]  Mattel claims that Bryant is liable for the damages caused

6  by this breach and that MGA is liable for aiding and abetting the breach.[4]

7  The Order on Expert Disclosures.

8        On October 31, 2007, the Court ordered, inter alia, that Initial Expert

9  Reports be served by February 11, 2008, that Rebuttal Expert Reports be served by

10 March 17, 2008 and that expert discovery be cut off on March 31, 2008.

11 The Expert Reports.

12        Pursuant to the Court's Order, the parties exchanged Initial Expert

13 Reports on February 11, 2008.  As shown below, MGA and Bryant have the burden

14 of proof on apportionment.  However, other than in one report, MGA's and Bryant's

15 experts did not address apportionment in their Initial Expert Reports.  Rather, they

16 expressed their opinions on apportionment for the first time in Rebuttal Expert

17 Reports exchanged on March 17, 2008.  The obvious consequence of this later

18 disclosure is that Mattel could not have experts prepare reports to rebut those

19 opinions.  The specific reports in issue are discussed below.

20        Mattel's Initial Expert Reports.

21              1.     Report of Michael Wagner.

22        Mattel retained Michael Wagner to provide expert testimony regarding,

23 inter alia: (a) MGA's revenues, costs and profits relating to the sale, distribution and

24 licensing of Bratz products; and (b) Bryant's benefits from payments he received in

25

26 _____

27  [2]  Id., ¶ 86.
    [3]  Id., ¶¶ 143-144.

28  [4]  Id., ¶¶ 145, 150 and 152-153.

1 connection with a consulting agreement he had with MGA concerning Bratz.   Mr.

2 Wagner prepared an Expert Report dated February 11, 2008.[5]

3         With respect to MGA, Mr. Wagner wrote that for the period from 2001

4 through October 2007, ███████████████████████████████████

5 ████████████████████████████████████████████████████

6 ███████████.   Mr. Wagner did not express an opinion concerning any apportionment

7 of revenues, costs or profits among infringing and non-infringing factors.[6]   In fact,

8 Mr. Wagner specifically wrote: █████████████████████████

9 ████████████████████████████████████████████████████

10 ███████[7]

11         With respect to Bryant, Mr. Wagner totaled the payments received by

12 Bryant pursuant to his consulting agreement with MGA.   █████████████

13 ████████████████████████████████████████.[8]   Again, Mr.

14 Wagner expressed no opinion concerning any apportionment of these payments or

15 any costs that may be associated with them.[9]

16         2.    <u>Expert Report of Carol Scott</u>.

17         Carol Scott was retained by Mattel to provide expert opinions regarding,

18 <u>inter alia</u>, the relationship between the success of Bratz dolls and the sales of

19 accessories and other merchandise sold or licensed as part of the Bratz product line.

20 Ms. Scott prepared an Expert Report dated February 11, 2008.[10]

21

22

23     [5]   Expert Report of Michael J. Wagner, dated February 11, 2008, attached as Exhibit 56 to the Proctor Decl.

24     [6]   <u>Id</u>., pages 7-11.

25     [7]   <u>Id</u>., page 24.

    [8]   <u>Id</u>., page 21.

26     [9]   Mr. Wagner also expressed opinions as to Larian's benefit from the use, sale and licensing of Bratz products and MGA's, Larian's and Bryant's net worths.

27     [10]   Expert Report of Carol A. Scott, dated February 11, 2008, attached as Exhibit

28 57 to the Proctor Decl.

MATTEL'S MOTION IN LIMINE NO. 11

1    Ms. Scott wrote essentially that MGA's sales and licenses of accessories

2   and other merchandise in the Bratz product line are dependent on, and derive their

3   value from, the success of the Bratz dolls.[11]  She expressed no opinion on the issue of

4   apportionment.  With respect to this motion, the relevant part of Ms. Scott's report is

5   paragraph 12 because one of MGA's experts purports to rebut that paragraph.  (See

6   pages 8-9 below.)  Paragraph 12 reads in full:

7

8   ██████████████████████████████████

9   ███████████████████████████████████

10  ██████████████████████████████████

11  ███████████████████████████████

12  █████████████████████████████████

13  ██████████████████████████████

14  ██████████████████████████████████

15  ████████████████████████████████

16  █████████████████████████████████

17  ███████████████████████████████

18  ██████████████████████████████

19  █████████████████████████████████

20  ███████████████[12]

21

22      3.    Expert Report of Lee Loetz.

23      Lee Loetz is an art director and a product designer in the toy industry.

24  Mattel retained Mr. Loetz to provide expert opinions regarding the relationship

25

26  _____

27  [11]  Id., ¶¶ 6-7.

28  [12]  Id., ¶ 12.

1   between Bryant's drawings, *i.e.* the copyrighted works, and the Bratz dolls, the

2   infringing products.  Mr. Loetz prepared an Expert Report dated February 11, 2008.[13]

3   In his report, Mr. Loetz concluded, <u>inter alia</u>, that ████████████

4   ████████████████████████████████████████████████████████████

5   ████████████████[14]   He bases his opinion on analyses of the proportions, poses,

6   face designs and styles of both the drawings and the dolls.[15]

7   <u>MGA's and Bryant's Expert Rebuttal Reports</u>.

8   1.   <u>Rebuttal Report of Paul K. Meyer</u>.

9   MGA and Bryant designated Paul Meyer as an expert regarding various

10  damages issues.  Mr. Meyer prepared an initial report in which he expressed, <u>inter</u>

11  <u>alia</u>, certain opinions on methods for apportioning MGA's profits.  This motion does

12  not concern Mr. Meyer's initial report; rather it addresses the additional opinions

13  concerning apportionment, not disclosed initially, that are contained in Mr. Meyer's

14  and other of MGA's and Bryant's experts' rebuttal reports.

15  Thus, Mr. Meyer prepared a rebuttal report dated March 17, 2008.[16]  He

16  writes that ████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████[17]

20  However, Mr. Wagner had not offered any opinion concerning

21  apportionment.   Indeed, Mr. Meyer writes: ██████████████████████████

22

23  _____

24  [13]   Expert Report of Lee Loetz, dated February 11, 2008, attached as Exhibit 58 to
      the Proctor Decl.

25  [14]   <u>Id.</u>, page 2.

26  [15]   <u>Id.</u>, pages 2-10.

27  [16]   Expert Report of Paul K. Meyer, dated March 17, 2008, attached as Exhibit 59
      to the Proctor Decl.

28  [17]   <u>Id.</u>, ¶ 7.  <u>See also</u> ¶ 15.

1 ███████████████████████[18] Mr. Meyer even quotes Mr. Wagner's statement that he

2 ██████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████

4 ████████████████████[19]  Mr. Meyer is correct -- Mattel's expert did not address

5 any apportionment issues in his initial report.

6 Nevertheless, Mr. Meyer proceeds to discuss in detail new opinions

7 concerning apportionment.[20]  Mr. Meyer spends 38 paragraphs, over 17 pages,

8 writing about apportionment "factors," "considerations" and "approaches" despite the

9 absence of any discussion of these "factors," "considerations" and "approaches" in

10 Mr. Wagner's report.  In fact, nothing in those 38 paragraphs criticizes or rebuts any

11 opinion by Mr. Wagner concerning apportionment.  Instead, Mr. Meyer performs

12 new analyses of apportionment issues that he did not include in his initial report.[21]

13 2. <u>Rebuttal Report of Douglas Kidder.</u>

14 Mr. Bryant retained Douglas Kidder to offer expert testimony on

15 damages issues.  Mr. Kidder prepared an expert rebuttal report dated March 17, 2008

16 (he did not offer an initial report).[22]  Like Mr. Meyer, Mr. Kidder purports to rebut

17 Mr. Wagner's opinions on apportionment even though he acknowledges there is

18 nothing to rebut.

19 Mr. Kidder writes that ██████████████████████████████

20 ██████████████████████████████████████████████████████████

21 █████████████████.  Mr. Kidder also points out that ████████████████

22 ██████████████████████████████████████████████████████████

23

24 _____

25 [18]  <u>Id.</u>, ¶ 19.

[19]  <u>Id.</u>, ¶ 92.

26 [20]  <u>Id.</u>, ¶¶ 19-26 and 92-121.

[21]  <u>Id.</u>

27 [22]  Expert Report of Douglas Kidder, dated March 17, 2008, attached as Exhibit

28 60 to the Proctor Decl.

1

2 ████████████████████████████████ [23]

3          After acknowledging repeatedly that Mr. Wagner expressed no opinion

4 concerning apportionment, Mr. Kidder offers his new expert opinions on

5 apportionment.[24]  He discusses, <u>inter alia</u>, the work performed by Bryant for MGA

6 and an allocation of time spent performing that work and, based thereon, he

7 apportions Bryant's profits attributable to the copyrighted works, even though Mr.

8 Wagner had not addressed any of those issues.[25]

9          Mr. Kidder also addresses one of the opinions of his co-expert, Paul

10 Meyer, <u>i.e.</u> Mr. Meyer's apportionment analysis.  He writes that Mr. Meyer does not

11 complete the analysis to fully apportion profits, and expresses his opinion on how to

12 do so.  However, as shown below, this cannot be rebuttal because an expert can only

13 rebut the opinion of "another party's" expert and Bryant designated both Mr. Kidder

14 and Mr. Meyer as his experts.[26]

15          3.    <u>Rebuttal Report of Thomas S. Gruca</u>.

16          MGA also retained Thomas Gruca as a rebuttal expert.  Mr. Gruca

17 prepared a rebuttal report dated March 17, 2008.[27]  Mr. Gruca writes that he was

18 retained to give an opinion specifically regarding matters expressed by Mattel's

19 expert, Carol Scott, in paragraph 12 of her initial expert report.[28]  However, Mr.

20 Gruca's report consists primarily of a description and an analysis of new market

21 research by a company with which he is associated, Brandware Research, that is used

22 _____

23    [23]  <u>Id.</u>, ¶¶ 22, 26 and 29.

24    [24]  <u>Id.</u>, ¶¶ 30-35, 39.

25    [25]  <u>Id.</u>

26    [26]  See Carter Bryant's Notice of Expert Disclosures, dated February 11, 2008, attached as Exhibit 61 to the Proctor Decl.

27    [27]  Expert Report of Thomas S. Gruca, dated March 17, 2008, attached as Exhibit 62 to the Proctor Decl.

28    [28]  <u>Id.</u>, ¶ 5.

as a basis for opinions concerning apportionment expressed in his and in another of MGA's experts' rebuttal reports.[29]

In paragraph 12 of her report (quoted in full on page 5 above), Ms. Scott merely ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████. Even if Mr. Gruca could rebut Ms. Scott's summary or quotation of MGA's statements, he does not do so.

Instead, Mr. Gruca cites an online survey by Brandware Research apparently conducted after the exchange of the initial expert reports.[30] The survey, based on questionable methodology, purports to measure the relative influence of the appearance of the Bratz dolls, compared with other product and brand attributes, on purchasing decisions.[31] Mr. Gruca then gives his opinion on apportionment:  Not surprisingly, Mr. Gruca writes that ██████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████.[32] However, Ms. Scott, the ostensible subject of Mr. Gruca's "rebuttal," had expressed no opinion on apportionment in her initial report.

Significantly, Mr. Gruca's report is used by another MGA expert, Mr. Meyer, in the improper apportionment analysis in his rebuttal report.  Mr. Meyer writes that ████████████████████████████████████████████████ ██████████████████████████████████████.[33] Mr. Meyer opines

---

[29] <u>Id.</u>, ¶ 6.
[30] <u>Id.</u>, ¶ 7.
[31] <u>Id.</u>, ¶¶ 7-11.
[32] <u>Id.</u>, ¶¶ 12-14.
[33] Meyer Rebuttal Report, Exhibit 59, ¶¶ 106 and 111.

1   that ██████████████████████████████████████████████████

2   ████████████████████████████████████████████████████[34]

3          Thus, Mr. Gruca's rebuttal report is not a rebuttal of paragraph 12 of Ms.

4   Scott's report.   Rather, it presents a new study relating to the influence of the

5   copyrighted designs on purchasing decisions which is used by Mr. Gruca and another

6   expert to express new opinions on apportionment.   Neither Mr. Gruca's rebuttal

7   report, nor that of Mr. Meyer (as it relates to apportionment), rebuts any of Mattel's

8   initial expert reports.

9          4.     Rebuttal Report of Robert Tonner.

10          MGA retained Robert Tonner to offer expert testimony regarding the

11   report of Mattel's design expert, Mr. Loetz.   Mr. Tonner prepared a rebuttal report

12   dated March 17, 2008.[35]   Although Mr. Tonner does offer opinions rebutting matters

13   contained in Mr. Loetz's report, he also expresses an opinion on apportionment that

14   does not relate to Mr. Loetz's report or that of any other Mattel expert.[36]

15          In particular, Mr. Tonner purports ██████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████████[37]   He concludes (without

18   any specific calculation or analysis):   ████████████████████

19   ██████████████████████████████████████████████████████[38]

20   However, neither Mr. Loetz, nor any other Mattel expert, had expressed an opinion

21   on the relative contributions of Bryant and the other MGA personnel.   In particular,

22   nobody had apportioned Bryant's input for the creation of the Bratz dolls.

23

24   _____

25   [34]   Id., ¶¶ 112-115 and Table X.
     [35]   Rebuttal Expert Report of Robert Tonner, dated March 17, 2008, attached as

26   Exhibit 63 to the Proctor Decl.
     [36]   Id., ¶ 24.

27   [37]   Id.
     [38]   Id.

28

The portion of Mr. Tonner's report concerning apportionment is not rebuttal because it does not criticize or rebut opinions on the subject by any of Mattel's experts in their initial disclosures.   Furthermore, MGA compounded the impropriety of Mr. Tonner's rebuttal report by using it (like the improper rebuttal of Mr. Gruca) as an additional basis for Mr. Meyer's rebuttal report concerning apportionment.[39]   MGA knew of Tonner's opinion before Meyer submitted his first report.   He testified that ███████████████████████████████████, but MGA knowingly elected not to include in Meyer's report.[40]

The Interrogatory Regarding "Test" Projects.

In defense to Mattel's allegations that Bryant breached his duty of loyalty and MGA aided and abetted that breach, Bryant and MGA claim that Bryant did not perform work for MGA during his employment with Mattel.   Bryant says that he merely performed a "test" project as a "tryout" for employment at MGA.   He testified at his deposition in 2004: ████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████[41]

Thereafter, Mattel served a Notice of Deposition on MGA, under Fed. R. Civ. P. 30(b)(6), on various topics including the identity of each person who MGA caused or asked to perform any "test project" in consideration of employment.[42] When MGA refused to comply, Mattel moved to compel.   On September 25, 2007,

---

[39]   Meyer Expert Rebuttal Report, Exhibit 59, ¶ 116.
[40]   Tonner Tr. at 262:24-263:19, Corey Dec. Ex. 16.
[41]   Deposition of Carter Bryant, 178:3-18 attached as Exhibit 11 to the Declaration of Jon Corey.
[42]   Third Notice of Deposition of MGA Entertainment, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated June 5, 2007, page 8, ¶ 9, attached as Exhibit 64 to the Proctor Decl.

the Discovery Master granted the motion in part.[43]  With respect to topic of the "test project," the Discovery Master granted Mattel leave to serve a supplemental interrogatory in lieu of taking a Rule 30(b)(6) deposition after MGA argued that responding to an interrogatory would be less burdensome.[44]

Accordingly, on October 17, 2007, Mattel propounded a supplemental interrogatory to MGA as follows:  "IDENTIFY, fully and completely, each and every TEST PROJECT that YOU caused, had, requested, asked or solicited any PERSON to perform during the time period January 1, 1998 through December 31, 2004, inclusive, and IDENTIFY all PERSONS with knowledge thereof and all DOCUMENTS that REFER OR RELATE TO such TEST PROJECT."  "Test project" was defined to include "any DESIGN, project, assignment or other work of any kind created, developed, improved upon or performed by any candidate, interviewee, applicant or prospective or potential employee or independent contractor in advance of, in consideration of, or otherwise as part of or in connection with any interview or interviewing process for, employment or contracting or potential employment or contracting of any kind."[45]

On November 19, 2007, MGA served its response to Mattel's supplemental interrogatory.  After objecting three separate times that the interrogatory sought information that was not relevant to the claims or defenses in the action and was not reasonably calculated to lead to the discovery of admissible evidence, MGA responded:  ███████████████

---

[43]  Order Granting In Part And Denying In Part Mattel's Motion to Compel MGA To Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6), dated September 25, 2007 ("September 25, 2007 Order"), Exhibit 65 to Proctor Decl.

[44]  Id. at 10.

[45]  Mattel, Inc.'s Supplemental Interrogatory Pursuant to Order Dated September 25, 2007, dated October 19, 2007, attached as Exhibit 66 to the Proctor Decl.

1 ██████████████████████████████████████████[46]   The Discovery Master

2 denied Mattel's motion to compel a further response.

3    On March 11, 2008, Mattel filed its Motion for Partial Summary

4 Judgment in which it argued that Bryant breached his duty of loyalty and that MGA

5 aided and abetted the breach.  Surprisingly, despite its objections that information

6 about a "test" project is not relevant, and despite its sworn statement that it did not

7 cause or ask Bryant to do a "test" project, MGA argued in opposition to the motion:

8 ████████████████████████████████████████████████

9 ██████████████████████████[47]   Mattel anticipates that MGA will seek to

10 offer similar evidence or argument at trial.

11

12           **<u>Argument</u>**

13 **I.**   **<u>MGA AND BRYANT HAVE THE BURDEN OF PROVING</u>**

14    **<u>APPORTIONMENT</u>**

15    In a copyright infringement action, a copyright owner is entitled to

16 recover the profits of an infringer that are attributable to the infringement.  The

17 Copyright Act establishes each party's burden of proof with respect to the calculation

18 of profits, <u>i.e.</u> the plaintiff has the burden of proving the defendant's gross revenue

19 and the defendant has the burden of proving its costs and apportionment.  17 U.S.C.

20 § 504(b) provides:

21

22

23

24 _____

25 [46] MGA Entertainment Inc.'s Objections and Responses to Mattel, Inc.'s Supplemental Set of Interrogatories, dated November 19, 2007, pages 2, 7, 9 and 10, attached as Exhibit 67 to the Proctor Decl.

26

27 [47] MGA Parties Mem. of Points and Authorities in Opposition to Mattel, Inc.'s Motion for Partial Summary Judgment, dated March 24, 2008, page 20, lines 25-27, attached as Exhibit 68 to the Proctor Decl.

28

1    . . .  In establishing the infringer's profits, the copyright

2    owner is required to present proof only of the infringer's

3    gross revenue, and the infringer is required to prove his or

4    her deductible expenses and the elements of profit

5    attributable to factors other than the copyrighted work.

6    Therefore, the copyright owner's burden is to offer evidence only of the

7 infringer's gross revenues.  See 4 M. Nimmer & D. Nimmer, Nimmer on Copyright

8 (2007) ("Nimmer") § 14.03[B] at 14-40.  The "purpose" of allowing the recovery of

9 profits "is to make the infringement worthless to the infringer.  This will sometimes

10 require tracing those profits into another product, as where it is bundled with the

11 infringing product."  Bucklew v. Hawkins, Ash, Baptie & Co., 329 F.3d 923, 933 (7th

12 Cir. 2003) (original italics).  Accordingly, all gross revenues are "presumed" to be

13 profits attributable to the infringement, subject to the infringer proving costs and

14 apportionment.  Data General Corp. v. Grumman Systems Support Corp., 36 F.3d

15 1147, 1173-1174 (1st Cir. 1994).  See also Nelson-Salabes, Inc. v. Morningside Dev.,

16 LLC, 284 F.3d 505, 512, n.9 (4th Cir. 2002).

17    The infringer has the burden of proving that the profits are attributable to

18 factors other from the copyrighted work.  Nimmer, § 14.03[D][1] at 14-60. The

19 infringer's "burden under the apportionment provision of Section 504(b) is primarily

20 to demonstrate the absence of a causal link between the infringement and all or part

21 of the profits claimed by the plaintiff."  Data General Corp., supra, 36 F.3d at 1171.

22 Consequently, an infringer has the burden of going forward with evidence to

23 overcome the presumption that all gross revenues are attributable to the infringement

24 and to prove that its profits were earned independently of the infringement.[48]

25

26 _____

27 [48] In Lottie Joplin Thomas Trust v. Crown Publishers, Inc., 592 F.2d 651 (2nd

28 Cir. 1978), the defendants infringed plaintiff's copyrights in several musical
compositions by producing and distributing a record album which also contained
(footnote continued)

1    Accordingly, in this case, MGA and Bryant have the burden of proving

2    that some portion of their profits from the Bratz line of products is not attributable to

3    their infringement of the copyrighted works, i.e. apportionment.

4    **II.     MGA AND BRYANT WERE REQUIRED TO DISCLOSE INITIALLY**

5    **THEIR EXPERT REPORTS ON APPORTIONMENT**

6    Fed. R. Civ. P. 26(a)(2) provides for the disclosure of expert testimony.

7    In particular, Rule 26(a)(2)(B) requires that the initial disclosure be accompanied by

8    written reports which "must contain a complete statement of all opinions the witness

9    will express and the basis and reasons for them" along with the data considered by the

10   witness and certain other information.   Rule 26(a)(2)(C) allows a party to serve

11   rebuttal reports "if the evidence is intended solely to contradict or rebut evidence on

12   the same subject matter identified by another party" in its initial disclosures. Fed. R.

13   Civ. P. 26(a)(2) (emphasis added).

14   Therefore, a party's initial expert disclosures must contain a complete

15   statement of all opinions to be expressed by its expert witnesses.  See Schwarzer,

16   Tashima & Wagstaffe, Fed. Civ. Pro. Before Trial, § 11:399 at 11-48 (2008). "This is

17   an extremely broad disclosure requirement. . . .   Full disclosure must be made of

18   everything to be covered in the expert's direct examination . . . ." Id., § 11:400 at 11-

19   48.

20   In particular, where a party bears the burden of proof on an issue, it must

21   disclose initially all of its expert opinions on that issue. Trost v. Trek Bicycle Corp.,

22   162 F.3d 1004, 1008-1009 (8th Cir. 1998) (excluding expert report).   See also

23   ————————————

24   non-infringing compositions.   Only one side of a five record set included the copyrighted works.  However, in the absence of adequate proof from the infringer as

25   to the contributions of the non-infringing works to the profits, the District Court

26   awarded the plaintiff 50% of the profits from the album.   The Second Circuit affirmed, holding that defendants had the burden of proving apportionment and that

27   "every indulgence should be granted plaintiff in an attempt to arrive at a sum which is

28   assuredly adequate." Id. at 657.

1   <u>Baldwin Graphic Systems, Inc.</u>, 2005 WL 1300763, *2 (N.D. Ill. 2005); <u>Sandata</u>

2   <u>Technologies, Inc. v. Infocrossing, Inc.</u>, 2007 WL 4157163, *1 (S.D.N.Y. 2007).

3      The Advisory Committee Notes to the 1993 Amendments to Rule

4   26(a)(2) confirm that the party with the burden of proof on an issue should disclose

5   its expert testimony before other parties have to make their disclosures on that issue.

6   This is an aspect of the duty to disclose expert information "sufficiently in advance of

7   trial that opposing parties have a reasonable opportunity to prepare for effective cross

8   examination and perhaps arrange for expert testimony from other witnesses." <u>Id.</u>

9   <u>See also</u> <u>Mabrey v. United States</u>, 2006 WL 1891127, *4-5 (D. Nev. 2006)

10  (excluding defendant's purported expert rebuttal testimony on an issue on which

11  defendant had the burden of proof but did not make an initial disclosure).

12     One of the purposes of the rule was discussed in <u>Coles v. Perry</u>, 217

13  F.R.D. 1 (D.D.C. 2003):

14     By 'locking' the expert witness into what Fed. R. Civ. P.

15     26(a)(2)(B) calls 'a complete statement of all opinions to be

16     expressed and the basis and reasons therefore,' the opposing

17     party knows exactly what she is facing and can decide

18     whether to take the deposition of the expert and <u>how to</u>

19     <u>prepare for cross-examination and rebuttal</u>.  When the expert

20     supplements her report by addressing a new matter after

21     discovery has ended, the very purpose of the rule is nullified.

22  <u>Id.</u> at 4 (emphasis added.)

23     Accordingly, MGA and Bryant were required to disclose, <u>initially</u>,

24  complete statements of all opinions they intend to use at trial to meet their burden of

25  proof on apportionment along with the bases and reasons for each of those opinions.

26  They plainly did not do so.  Instead, MGA and Bryant waited until the exchange of

27  rebuttal reports to disclose their expert opinions on apportionment.

28

1    MGA's and Bryant's disclosures also are improper for an additional,
2 independent reason:  Rebuttal reports must be "solely to contradict or rebut evidence
3 on the same subject matter identified by another party" in its initial disclosures.  Fed.
4 R. Civ. P. 26(a)(2)(C); see Jorgenson Forge Corp. v. Consarc Corp., 2002 WL
5 34363668, *1 (W.D. Wash. 2002) (excluding purported rebuttal report to the extent it
6 goes beyond scope of plaintiff's reports and introduces new opinions).  Here, the
7 apportionment opinions in defendants' purported rebuttal reports do not contradict or
8 rebut any evidence in Mattel's initial expert reports.

9    In particular, Paul Meyer prepared a rebuttal report the ostensible
10 purpose of which was to rebut the opinion of Mattel's expert, Michael Wagner.
11 However, although Mr. Meyer acknowledges that Mr. Wagner had declined to
12 address the issue of apportionment, Mr. Meyer discusses in detail, over 17 pages, new
13 opinions about apportionment "factors," "considerations" and "approaches."  Mr.
14 Meyer does not rebut any opinion by Mr. Wagner on these matters; rather, he sets
15 forth analyses of apportionment that were not, but should have been, included in his
16 initial report.

17    Like Mr. Meyer, Douglas Kidder purports to rebut Mr. Wagner's
18 opinions on apportionment even though he writes that Mr. Wagner did not even
19 attempt to apportion the monies received by Bryant.  In fact, Mr. Kidder offers
20 previously undisclosed opinions on apportionment, including an allocation of the
21 work performed by Bryant, that Mr. Wagner clearly did not address.

22    Mr. Kidder also tries to "complete" the apportionment analysis in Mr.
23 Meyer's initial report.  Mr. Kidder's report cannot be "rebuttal" as to Mr. Meyer for
24 two simple reasons:  First, he and Mr. Meyer are both designated as Bryant's experts,
25 and Rule 26(a)(2) provides that an expert may only rebut the evidence of another
26 party's expert.  Second, he does not rebut Mr. Meyer's analysis; rather he supplements
27 the analysis by using it to arrive at a new apportionment figure.

28

07209/2470515.1

-17-

MATTEL'S MOTION IN LIMINE NO. 11

1    Thomas Gruca writes that he was retained to rebut the matters expressed
2    by Mattel's expert, Carol Scott, in paragraph 12 of her initial report.  But Mr. Gruca
3    does not do so at all.  Rather, Mr. Gruca cites new market research on the relative
4    influence of the appearance of the Bratz dolls on purchasing decisions, which is then
5    used both by Mr. Gruca and Mr. Meyer as the basis for their opinions of
6    apportionment in their "rebuttal" reports.

7    Furthermore, Gruca's survey is inadmissible under <u>Daubert</u>.  Although
8    courts frequently accept surveys regarding consumer perception of products, courts
9    may exclude a survey when it was not conducted in accordance with generally
10   accepted principles.   <u>See</u> <u>M2 Software, Inc., v. Madacy Entertainment</u>, 421 F.3d
11   1073, 1087 (9th Cir. 2005).  In particular, a proper survey should have some means of
12   eliminating erratic responses, such as using a control group, filter questions or trap
13   questions.   The survey relied upon by Mr. Gruca does not do so.[49]   Because
14   defendants did not disclose the survey until Mr. Gruca's rebuttal report, Mattel had no
15   opportunity to retain an expert to rebut this material.

16   Finally, Robert Tonner prepared a report to rebut the initial report of
17   Mattel's design expert, Mr. Loetz.  However, Mr. Tonner expresses an opinion on
18   apportionment that does not relate to Mr. Loetz's report or that of any other Mattel
19   expert.  He opines on the relative contributions of Bryant and other MGA employees
20   to the "final creative product."  Mr. Loetz's report does not address that subject.

21
22
23

24
25   [49]   Mattel understands that MGA will move to exclude a survey conducted by one
     of Mattel's experts, Kenneth Hollander, on the grounds that it does not satisfy
26   <u>Daubert</u>.  Mattel strongly believes that Mr. Hollander's report is not only admissible,
     but is persuasive.  However, if the Court decides to exclude Mr. Hollander's report as
27   methodologically flawed, it must also exclude Mr. Gruca's survey which, unlike that
28   of Mr. Hollander, actually is methodologically flawed.

1      If MGA and Bryant wanted to argue apportionment based on expert

2   opinions, they were required to disclose them in their initial disclosures.  MGA and

3   Bryant failed to disclose their experts' opinions as required under Rule 26(a)(2)(B),

4   and the opinions are not proper rebuttal under Rule 26(a)(2)(C).

5   **III.**   **<u>A PARTY THAT UNJUSTIFIABLY FAILS TO MAKE PROPER</u>**

6       **<u>EXPERT DISCLOSURES IS NOT PERMITTED TO USE THE</u>**

7       **<u>EVIDENCE OR OPINIONS AT TRIAL</u>**

8      If a party does not make a proper expert disclosure, it "is not allowed to

9   use that information or witness to supply evidence . . . at a trial, unless the failure was

10  substantially justified or is harmless . . . ."  <u>Fed. R. Civ. P.</u> 37(c)(1).  In <u>Yeti by</u>

11  <u>Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001), the

12  Ninth Circuit explained that Rule 37(c)(1) "gives teeth to [Rule 26's] requirements by

13  forbidding the use at trial of any information required to be disclosed by Rule 26(a)

14  that is not properly disclosed."  The Court noted:  "Courts have upheld the use of the

15  sanction even when a litigant's entire cause of action or defense has been precluded."

16  <u>Id.</u>

17     Here, MGA and Bryant did not disclose the opinions at issue until the

18  exchange of rebuttal reports.  Because they have the burden of proof on

19  apportionment, they were required to disclose all of their opinions as well as the

20  bases and reasons for those opinions at the time of the initial disclosures.  Therefore,

21  under Rule 37(c)(1), these opinions should be excluded at trial.  <u>Id.</u>  <u>See also</u> <u>Finley v.</u>

22  <u>Marathon Oil Co.</u>, 75 F.3d 1225, 1230 (7th Cir. 1996) (exclusion of untimely expert

23  testimony is "automatic and mandatory unless the party to be sanctioned can show

24  that its violation of Rule 26(a) was either justified or harmless");  <u>Lohnes v. Level 3</u>

25  <u>Communications, Inc.</u>, 272 F.3d 49, 60 (1st Cir. 2001) (describing late disclosure of

26  expert testimony as a "sneak attack" and "exactly the type of unfair tactical advantage

27  that the discovery rules were designed to eradicate").

28

1    In <u>Mabrey v. United States</u>, 2006 WL 1891127, *4-5, the District Court

2 of Nevada excluded the defendant's purported expert rebuttal testimony, explaining:

3          Under Fed. R. Civ. Pro. 26(a)(2)(C) and LR 26-1(e)(3),

4          Defendant was arguably entitled to disclose its expert

5          witnesses on the rebuttal expert witness disclosure deadline

6          if its experts' opinions are intended solely to contradict or

7          rebut evidence on the same subject matter by Plaintiffs'

8          expert witnesses and as to which Plaintiffs have the burden

9          of proof.  Because the Advisory Notes also indicate that in

10         most cases the party with the burden of proof on an issue

11         should disclose its expert testimony on that issue before

12         other parties are required to make their disclosures, the

13         Court will not exclude Defendant's experts to the extent

14         they are offered solely to rebut the opinions of Plaintiffs'

15         expert witnesses . . . .

16

17         "Because Defendant elected to only disclose its expert

18         witnesses on the rebuttal expert witness disclosure date,

19         however, <u>Defendant's expert witnesses will not be permitted</u>

20         <u>to testify to any expert opinion regarding an issue on which</u>

21         <u>Defendant has the burden of proof</u>.

22

23 <u>Id.</u> (emphasis added).

24         MGA's and Bryant's attempt to pass off their experts' apportionment

25 opinions as rebuttal does not fix the problem.  Rather, MGA's and Bryant's improper

26 designations of the reports as rebuttal merits the exclusion of the evidence.

27 "Inappropriately characterizing an expert's analysis as 'rebuttal' can result in the

28 exclusion of his or her testimony."  <u>Schwarzer, et al.</u>, <u>supra</u>, § 11:369 at 11-43.

In <u>International Business Machines Corp. v. Fasco Industries, Inc.</u>, 1995 WL 115421, *3-4 (N.D. Cal. 1995), the District Court excluded purported expert rebuttal reports when they sought to opine on matters not addressed by the opposing party in its initial disclosures.  The Court wrote that the testimony of the rebuttal experts "will be strictly limited to poking holes in the theories of IBM's experts."  <u>See also</u> <u>Johnson v. Grays Harbor Community Hospital</u>, 2007 WL 4510313, *2 (W.D. Wash. 2007) (experts' testimony excluded to the extent it does not contradict or rebut evidence on the same subject matter identified by opposing experts); <u>Pierce v. Novastar Mortg., Inc.</u>, 2007 WL 636029, *3 (W.D. Wash. 2007) (expert report stricken to the extent that it does not rebut adverse expert report).

MGA and Bryant may try somehow to justify their conduct or argue that their transgression of the rules was harmless.  But as explained in the Advisory Committee Notes to the 1993 Amendments to Rule 37(c), the "substantially justified" and "harmless" exceptions are narrow, and are intended only to avoid "unduly harsh results" in situations such as the inadvertent omission of the name of a witness known to all parties, the failure to list as a trial witness a person listed by another party or the lack of knowledge of a pro se litigant of the disclosure requirements.

Here, defendants' failure to comply with the disclosure requirements is neither justified nor harmless.  Their decision to withhold apportionment opinions until rebuttal reports was tactical and designed to prejudice Mattel.  If MGA and Bryant had disclosed the opinions and the bases for the opinions initially, Mattel could have retained experts to prepare true rebuttal reports.  Instead, Mattel is left without experts on these issues.

MGA and Bryant have the burden of proving justification or harmlessness.  <u>See</u> <u>Yeti by Molly, Ltd.</u>, 259 F.3d at 1107 ("burden is on the party facing sanctions to prove harmlessness").  They cannot sustain their burden as to either.  Therefore, under Rule 37(c)(1), MGA and Bryant should not be permitted to introduce the opinions on apportionment expressed in their expert rebuttal reports.

## IV.    A PARTY THAT MAKES AN EVASIVE OR INCOMPLETE ANSWER TO AN INTERROGATORY, OR FAILS TO CORRECT AN ANSWER, IS PRECLUDED FROM USING THE EVIDENCE AT TRIAL

In its supplemental interrogatory, Mattel asked MGA to identify each test project that it caused or asked any person to perform from 1998 through 2004, all persons with knowledge of the projects and all documents that relate to such projects.  "Test project" was defined to include any design or "other work of any kind," developed or performed by any prospective or potential employee or independent contractor, in connection with any employment, potential employment or contracting of any kind.[50]

After objecting that the interrogatory sought information that was not relevant to the claims or defenses in the action and not reasonably calculated to lead to the discovery of admissible evidence, MGA responded: ████████

██████████████████████████████████████████████████

████████[51]   However, when faced with Mattel's motion for partial summary judgment only a few months later, MGA argued as a defense that ████████

██████████████████████████████████████████████████

████████[52]

MGA's argument is inconsistent with its interrogatory response. Accordingly, it appears either that the interrogatory response was evasive or incomplete, or that MGA subsequently learned that the response was incorrect.  In either case, evidence of a "test" (or "try-out") project should be excluded.

---

[50]  Mattel's Supplemental Interrogatory Pursuant to Order Dated September 25, 2007, Exhibit 66 to the Proctor Decl.

[51]  MGA's Objections and Responses to Mattel's Supplemental Set of Interrogatories, Exhibit 67 to the Proctor Decl., page 10.

[52]  MGA Parties Mem. of Points and Authorities in Opposition to Mattel's Motion for Partial Summary Judgment, Exhibit 68 to the Proctor Decl., page 20, lines 25-27.

1    Fed. R. Civ. P. 37(a)(4) provides that an evasive or incomplete response

2    to an interrogatory must be treated as a "failure" to answer the interrogatory.  Under

3    Rule 37(d)(1)(A)(ii), a party that fails to answer an interrogatory is subject to

4    sanctions which, under Rule 37(d)(3), may include any of the orders listed in Rule

5    37(b)(2)(A)(i)-(vi).  Rule 37(b)(2)(A)(ii) gives the Court the power to prohibit MGA

6    from "introducing designated matters in evidence," i.e. from introducing evidence of

7    a "test" or "try-out" project.  See Martin v. Inclusion, Inc., 2007 WL 778183, *3 (D.

8    Idaho 2007) (court excluded evidence of actual damages for failure to provide a

9    proper answer to an interrogatory).

10    Fed. R. Civ. P. 26(e)(1) states that a party who has responded to an

11    interrogatory "must supplement or correct" its response "in a timely manner if the

12    party learns that in some material respect the . . . response is incomplete or incorrect,

13    and if the additional or corrective information has not otherwise been made known to

14    the other parties during the discovery process . . . ."

15    A party that has failed to supplement or correct an interrogatory response

16    is precluded from using that information at trial under Rule 37(c)(1):  "If a party fails

17    to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to

18    use that information . . . at a trial, unless the failure was substantially justified or is

19    harmless. . . ."  See Technology Licensing Corp. v. Thomson, Inc., 2005 WL

20    1562225, *5 (E.D. Cal. 2005) (granting motion to exclude evidence where party did

21    not supplement response to interrogatory).

22    By the time MGA filed its opposition to Mattel's motion for partial

23    summary judgment, it had to know that its response to the supplemental interrogatory

24    was incomplete or incorrect.  Yet, it made no effort to supplement or correct the

25    response.  As a result of MGA's denial that it caused or requested Bryant to perform a

26    test project, and its failure to supplement or correct the response, Mattel was deprived

27    of information necessary to rebut this purported defense.  It would be unfair to permit

28

1 MGA to introduce such evidence at trial when Mattel has not had an adequate
2 opportunity to conduct full discovery or prepare for trial on this issue.

3 **V.      OTHER EVIDENCE DEFENDANTS FAILED TO DISCLOSE SHOULD**
4 **       BE EXCLUDED AS WELL**

5 For the reasons set forth above, the Court also should prevent defendants
6 from using at trial other evidence they improperly did not disclose in discovery, and
7 in particular evidence defendants did not disclose in their Court-ordered responses to
8 Mattel's supplemental interrogatory regarding their affirmative defenses.  Defendants'
9 discovery misconduct bars them from presenting much of the evidence that they now
10 contend supports their affirmative defenses.  It is well-settled that a party may not
11 present at trial evidence that it did not properly produce in discovery.  See Fed. R.
12 Civ. P. 37(c)(1); Yeti by Molly, Ltd., supra, 259 F.3d at 1106.

13 Here, pursuant to leave granted by the Court, Mattel propounded on
14 defendants an interrogatory seeking the facts upon which defendants base their
15 affirmative defenses.  The Court ordered defendants to respond to their interrogatory
16 without objection.  Defendants served their responses on January 7, 2008, just a few
17 weeks before the discovery cutoff, and have not updated it since.[53]  Yet, much of the
18 purported evidence that defendants recently cited in support of their affirmative
19 defenses in connection with Mattel's Motion for Partial Summary Judgment does not
20 appear in these Court-ordered discovery responses, or any others.  For example,
21 defendants contend that they offered Bratz to Mattel in early 2001, through Mattel de
22 Mexico employee Mateo Romano, which defendants believe supports their statute of
23 limitations defense.  Although this information was presumably in defendants
24 possession since 2001, their response to Mattel's interrogatory did not so much as
25 reference it.

26

27 _____

28 [53]  See Proctor Decl., Exhibits 25 and 26.

1   Accordingly, defendants may not present this evidence at trial as a

2   matter of law.  Fed. R. Civ. P. 37(c)(1).

3   **Conclusion**

4   For the foregoing reasons, Mattel respectfully requests that the Court

5   enter an Order precluding defendants from asserting, relying on, making any

6   argument based on, or introducing evidence that they failed to disclose properly

7   pursuant to Rules 26(a)(2), 26(e) or 33 including, but not limited to: (i) paragraphs

8   19-26 and 92-121 of the Expert Rebuttal Report of Paul K. Meyer; (ii) paragraphs 30-

9   35, 39, 42, 45, 50 and 52-53 of the Expert Rebuttal Report of Douglas Kidder; (iii)

10  paragraphs 7-16 of the Expert Rebuttal Report of Thomas Gruca; (iv) paragraph 24 of

11  the Expert Rebuttal Report of Robert Tonner; and (v) argument or evidence by MGA

12  that Bryant performed a "test project" for MGA while Bryant was employed by

13  Mattel.

14

15  DATED:  April 14, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

16

17

18                                  By /s/ John B. Quinn
                                       John B. Quinn

19                                     Attorneys for Mattel, Inc.

20

21

22

23

24

25

26

27

28