1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12          Plaintiff, | Consolidated with |
| 13      vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 14  MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 15          Defendant. | **[PUBLIC REDACTED]** NOTICE OF MOTION AND MOTION IN LIMINE NO. 8 OF MATTEL, INC. TO EXCLUDE EVIDENCE RELATING TO WHETHER MATTEL WOULD HAVE MARKETED BRATZ; AND |
| 16 | |
| 17  AND CONSOLIDATED CASE | |
| 18 | MEMORANDUM OF POINTS AND AUTHORITIES |
| 19 | |
| 20 | [Declarations of Jon D. Corey and B. Dylan Proctor and Notice of Lodging filed concurrently] |
| 21 | |
| 22 | Date: May 21, 2008 |
| 23 | Time: 1:00 p.m.<br>Place: Courtroom 1 |
| 24 | **Phase 1** |
| 25 | Pre-Trial Conference:  May 5, 2008<br>Trial Date:  May 27, 2008 |
| 26 | |
| 27 | |
| 28 | |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that, on May 21, 2008 at 1:00 p.m., or as
3  soon thereafter as the matter may be heard, in the Courtroom of the Honorable
4  Stephen G. Larson, in Courtroom 1 of the United States District Court located at
5  3470 Twelfth Street, Riverside, California 92501, Mattel, Inc. ("Mattel") will, and
6  hereby does, move the above-entitled Court for an order precluding MGA
7  Entertainment, Inc., MGA Entertainment (HK) Limited, Isaac Larian and Carter
8  Bryant, and their respective counsel and witnesses, from introducing any evidence,
9  argument, or suggestion relating to whether, or to what extent, Mattel would have or
10  could have marketed Bratz had Carter Bryant disclosed his Bratz designs and
11  concept to Mattel, and precluding any suggestion that Mattel is seeking a windfall.
12  This motion is made pursuant to Federal Rules of Evidence 401, 402 and 403 on the
13  grounds that: (1) such evidence is irrelevant to the issue of whether Mattel lawfully
14  owns the copyrights to Bryant's Bratz drawings and any other Phase 1 issues; and
15  (2) the probative value of such evidence, if any, is substantially outweighed by the
16  probability that its admission will cause undue prejudice, delay, and confusion of the
17  issues to be tried.

18          This Motion is based upon this Notice of Motion and Motion, the
19  Memorandum of Points and Authorities in support thereof, the declarations of B.
20  Dylan Proctor and Jon Corey, all pleadings and papers on file in this action, such
21  other evidence or arguments as may be presented to the Court, and such other
22  matters of which this Court may take judicial notice.

23

24
DATED: April 14, 2008            QUINN EMANUEL URQUHART OLIVER &
25                               HEDGES, LLP
26

27                               By/S/_____
                                    John B. Quinn
28                                  Attorneys for Mattel, Inc.

07209/2445239.6

-2-

1          **Statement of Local Rule 7-3 Compliance**

2

3               This motion is made following the conference of counsel pursuant to

4   Local Rule 7.3, which was held on March 25, 2008, and thereafter.

5

6   DATED:  April 14, 2008              QUINN EMANUEL URQUHART OLIVER &
7                                       HEDGES, LLP

8

9                                       By/S/_____
                                           John B. Quinn
10                                         Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2
**Page**

3

4  MEMORANDUM OF POINT AND AUTHORITIES ................................................ 1

5  PRELIMINARY STATEMENT ............................................................................... 1

6  STATEMENT OF FACTS ...................................................................................... 1

7  ARGUMENT ........................................................................................................... 3

8  I.   EVIDENCE PERTAINING TO MATTEL'S ABILITY OR
     INCLINATION TO MARKET BRATZ IS IRRELEVANT ............................ 3

9
10  II.  THE EVIDENCE IS ALSO UNSUBSTANTIATED AND
     SPECULATIVE ............................................................................................ 4

11  III. ANY MINIMAL PROBATIVE VALUE IS SUBSTANTIALLY
     OUTWEIGHED BY THE RISK OF UNDUE DELAY, PREJUDICE
12     AND CONFUSION ...................................................................................... 5

13  CONCLUSION ........................................................................................................ 7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-i-

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

Athridge v. Aetna Cas. and Sur. Co.,
   475 F. Supp. 2d 102 (D.D.C. 2007) ................................................ 4

U.S. ex rel. Maxwell v. Kerr-McGee Chemical Worldwide, LLC,
   2007 WL 47320871 (D. Col. Jan. 16, 2007) ........................................ 4

### Statutes

Federal Rules of Evidence

   Rule 401 ................................................................................................. 3

   Rule 402 ............................................................................................. 1, 3

   Rule 403 ............................................................................................. 1, 5

## MEMORANDUM OF POINT AND AUTHORITIES

### Preliminary Statement

Mattel claims ownership of Bryant's Bratz drawings.  That issue turns on the timing of their creation, not what use Mattel would have put them to if Bryant had disclosed them.  Nevertheless, as part of their multifaceted efforts to confuse the jury, Mattel anticipates defendants will attempt to argue to the jury that Mattel would not have, or could not have, effectively produced and marketed the Bratz dolls *if* Carter Bryant had presented his Bratz designs to Mattel as his contract required.  Defendants' speculation regarding the success Mattel may or may not have had in marketing Bratz, and whether Mattel would have endeavored to do so, is not germane to the parties' claims or defenses.  What Mattel would have done with Bryant's designs had they been disclosed to Mattel has no bearing on Bryant's obligation to disclose them or Mattel's rights to them.

Moreover, to the extent this evidence has any probative value, it is far outweighed by the danger that it would unduly prejudice Mattel and confuse the jury.  In fact, that is why defendants will seek to introduce such evidence -- to argue to the jury that Mattel is simply seeking a windfall because it would not have marketed Bratz anyway, and hence is undeserving of relief.  Any such suggestion would be wholly improper.  Evidence or argument relating to MGA's view that Mattel could not or would not have successfully marketed Bratz should be excluded pursuant to Rules 402 and 403.

### Statement of Facts

The reports of MGA's experts Robert Tonner and Erich Joachimsthaler indicate that MGA intends to offer at trial evidence relating to its theory that Mattel could not have marketed Bratz dolls successfully. For example, Joachimsthaler:

MATTEL'S MOTION IN LIMINE NO. 8

1  ████████████████████████████████████████

2  ██████████████████████████████████████████

3  ████████████████████████████████

4  ████████████████████████████████████████[1]

5  Similarly, Tonner opines that if Bryant had opted to use a Mattel sculptor for the

6  original Bratz sculpt, ████████████████████████████████████████████████

7  ████████████████████████████.[2]  He also takes the extreme position that

8  "███████████████████████████████████████████████████████████

9  █████████████████████████████.[3]

10          Similarly, MGA has argued that Mattel would not have accepted Bratz

11  because it does not introduce "flanker" products that could "cannibalize" BARBIE

12  in the marketplace.  For example, MGA contends:

13  ████████████████████████████████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ██████████████████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19  █████████████████████████████████████

20  ████████████████████.[4]

21          Thus, MGA undoubtedly intends to place whether Mattel would have

22  marketed Bratz, or instead would have swept it under the rug, directly at issue.

23

24

25  [1]  Expert Report of Erich Joachimsthaler dated February 11, 2008 at 80.
    [2]  Expert Report of Robert Tonner dated February 8, 2008 at 12.

26  [3]  Id. at 16.

27  [4]  MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory
    Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at 39.

28

1

### Argument

2 **I.  EVIDENCE PERTAINING TO MATTEL'S ABILITY OR**

3  **INCLINATION TO MARKET BRATZ IS IRRELEVANT**

4  Defendants' speculation that Mattel would not have marketed Bratz had

5 it been offered it is irrelevant to any issue in Phase 1.  Likewise, their speculation

6 that Mattel could not have done so is irrelevant.  To be admissible, evidence must

7 tend to "make the existence of any fact that is of consequence to the determination

8 of the action" more or less probable.  <u>Fed. R. Evid.</u> 401, 402.  Mattel's likely actions

9 or non-actions upon receiving Bryant's drawings will not make any fact of

10 consequence more or less probable.

11  A primary issue underlying the claims being tried in Phase 1 is which

12 party, Mattel or MGA, rightfully owns Bryant's Bratz works.  What Mattel would

13 have, or could have, done with those designs and concept if they had been disclosed

14 by Bryant, as he was bound to do,[5] is irrelevant to any Phase 1 issue.  Capacity for,

15 or inclination to engage in, profitable use of a copyrighted work is not a legal

16 element of Mattel's copyright or any other claim.  If Mattel owns Bratz, it is within

17 its rights to market it profitably, "sweep it under the rug," blow it up or do anything

18 else it pleases with it.  This is all irrelevant to liability.

19  Nor is MGA's planned argument regarding Mattel's ability or

20 inclination to market Bratz relevant to damages.  Mattel long ago confirmed to

21 MGA that, in Phase 1, it would not attempt to quantify the amount of sales of Mattel

22 products it has lost because of Bratz as a form of damages.[6]  Nor will Mattel attempt

23

24  [5]  <u>See</u> Mattel Inventions Agreement, dated January 4, 1999, at ¶ 2: ("Ownership
25 of Inventions: I agree to communicate to the Company as promptly and fully as
practicable all inventions [as defined below] conceived or reduced to practice by me
26 [alone or jointly by others] at anytime during my employment by the Company.")
27  [6]  <u>See</u> Mattel Inc.'s Amended and Supplemental Responses and Objections to
MGA's Second Set of Requests for Admission dated December 4, 2007
28 (footnote continued)

1   to obtain an award of damages as measured by the amount it would have made

2   through sales of Bratz had it known of it, marketed it and sold it.  Instead, Mattel

3   seeks to recover Defendants' revenues and profits.[7]  What Mattel may or may not

4   have done with Bratz has no bearing on the revenue or profits that defendants

5   derived from their unlawful conduct.

6   **II.     THE EVIDENCE IS ALSO UNSUBSTANTIATED AND**

7   **          SPECULATIVE**

8                    Nor, for that matter, can defendants' claims be substantiated.  To the

9   contrary, defendants' and their experts' speculation about what Mattel would or

10  could have done with Bratz is just that -- rank speculation.  Because of Bryant's

11  wrongful conduct, it is impossible to know what if anything Mattel would have done

12  with Bratz.  Speculation regarding hypothetical situations, such as what Mattel

13  would have done if -- unlike here -- Bryant had complied with his obligation to

14  disclose his designs, is neither relevant nor admissible even where -- unlike here -- it

15  relates to a relevant issue.  See Athridge v. Aetna Cas. and Sur. Co., 475 F. Supp.

16  2d 102, 105 (D.D.C. 2007) (granting motion in limine in auto accident case to

17  exclude evidence of what parents would have done, in hypothetical situation, if they

18  had been home with their son on the day of the accident in question); see also U.S.

19  ex rel. Maxwell v. Kerr-McGee Chemical Worldwide, LLC, 2007 WL 47320871 * 1

20  (D. Col. Jan. 16, 2007) (minute order excluding "testimony regarding hypothetical

21  MS actions").

22

23  ─────────────────
    ("Mattel states that it is seeking revenues and profits (including without limitation
24  through disgorgement) that defendants and other parties have obtained from 'Bratz'
    on its claims alleged in the Mattel, Inc. v. Bryant case and that it does not intend to
25  attempt to quantify as a measure of recoverable damages on its claims in the
    Mattel, Inc. v. Bryant case the amount of sales of Mattel products Mattel has
26  marketed to date which Mattel has or may have lost because of 'Bratz.'")
27  [7]   See Expert Report of Michael Wagner, dated February 11, 2008 at 1.

28

1    Defendants may argue that MGA offered Mattel the right to license and

2  distribute Bratz in early 2001 at Toy Fairs, and claim that what Mattel would have

3  done with it is therefore not speculative.[8]  It is uncontroverted, however, that MGA

4  only offered Mattel de Mexico -- a Mexican Corporation and independent subsidiary

5  of Mattel -- the right to distribute Bratz.  Mateo Romano, the Mattel de Mexico

6  employee with whom MGA discussed the possibility of licensing Bratz, "did not

7  share the information about Bratz beyond the product name and product number

8  with anyone at Mattel, Inc. in El Segundo."[9]  Further, Bryant admits that he did not

9  disclose Bratz to Mattel.[10]  Thus, what Mattel would or could have done with Bratz

10  is also inadmissible because it is speculative.

11  **III.    ANY MINIMAL PROBATIVE VALUE IS SUBSTANTIALLY**

12  **OUTWEIGHED BY THE RISK OF UNDUE DELAY, PREJUDICE**

13  **AND CONFUSION**

14    Even if MGA could show that evidence relating to Mattel's ability or

15  inclination to market Bratz dolls were somehow relevant, the Court should still

16  exclude this evidence because its probative value is substantially outweighed by the

17  danger of unfair prejudice, confusion of the issues, or misleading the jury.  Fed. R.

18  Evid. 403.  Admission of defendants' argument would cause substantial prejudice to

19  Mattel.  MGA will seek to introduce evidence of Mattel's likely actions to suggest to

20  the jury that, because Mattel would not have marketed Bratz anyway, it is simply

21

22  [8]  See MGA's Motion for Partial Summary Judgment, dated March 7, 2008, at 6-
23  7.  [9]  See Declaration of Mateo Ramono in support of Mattel, Inc.'s Consolidated
24  Opposition to Defendants' Motion for Partial Summary Judgment, dated March 20,
25  2008.  This evidence is separately inadmissible because, after being ordered to
   identify all facts supporting its affirmative defenses, MGA neglected to identify this
26  one in its responses.  See Mattel's Motion in Limine No. 4.
27  [10]  See Deposition Transcript of Carter Bryant, dated November 4, 2004, at
   136:11 - 137:19.

28

07209/2445239.6

MATTEL'S MOTION IN LIMINE NO. 8

1 | seeking to capitalize on MGA's foresight and vision in taking Bratz to market.
2 | Defendants will argue that Mattel is seeking a windfall.  Defendants will suggest
3 | this is a "no harm, no foul" situation since Mattel would not have appreciated Bratz.
4 | Defendants will argue that their misconduct should be condoned because it is
5 | purportedly only because of this conduct that consumers have the variety and choice
6 | that Bratz provides.  None of this is proper.  Such arguments would inject
7 | extraneous issues into the case and have the potential to severely prejudice the jury
8 | against Mattel.

9 | Moreover, admission of defendants' arguments would be particularly
10 | prejudicial and wasteful because of their speculative nature.  Given that Mattel
11 | indisputably was not presented with the Bratz concept by Bryant, no evidence can
12 | exist relating to Mattel's actual marketing strategy vis-a'-vis Bratz.  Instead, any
13 | such evidence must depend on the speculation of MGA's so-called "experts."  If
14 | admitted, Mattel would have to rebut that speculation with testimony showing how
15 | it does pursue "different" lines of dolls and lines of dolls marketed to older girls,
16 | such as "What's Her Face," "Generation Girl," and others.[11]  Mattel would have to
17 | explain all the steps it takes precisely to come up with new, different ideas, such as
18 | "Blue Sky" meetings.[12]  Quite literally, Mattel's entire marketing history for the past
19 | decade would be put on trial.  Such an exercise would waste valuable trial time for
20 | no reason.

21 | Thus, even if it had some probative value, admission of evidence or
22 | argument regarding what Mattel would have done if the facts were otherwise -- if
23 | Bryant had complied with his obligation to disclose Bratz to Mattel -- will divert the
24 |

---

[11] See Deposition Transcript of Ivy Ross, dated January 17, 2008. at 22:7-12;
and Deposition Transcript of Adrienne Fontanella, dated January 16, 2008, at 75:25-
77:14.
[12] See Deposition Transcript of Adrienne Fontanella, dated January 16 2008 at
67:12-25, 90:3-25.

1 │ jury's attention from the central issue in this case, namely, which party legally owns

2 │ the rights to Bratz.   Such evidence should be excluded.

3 │ **Conclusion**

4 │       For the foregoing reasons, Mattel respectfully requests that the Court

5 │ exclude any evidence, argument, or suggestion that Mattel could not or would not

6 │ have been successful in producing or marketing Bratz dolls had Carter Bryant

7 │ presented his original Bratz designs and concept to Mattel.

8
9 │ DATED:  April 14, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

10

11 │          By/S/_____

12 │            John B. Quinn
   │            Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2445239.6

MATTEL'S MOTION IN LIMINE NO. 8