1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| 12 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13     Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| 14     vs. | Hon. Stephen G. Larson |
| 15 MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED]** MOTION *IN LIMINE* NO. 12 OF MATTEL, INC. TO EXCLUDE THE TESTIMONY OF PETER S. MENELL; AND MEMORANDUM OF POINTS AND AUTHORITIES |
| 16 | |
| 17     Defendant. | |
| 18 AND CONSOLIDATED CASES | |
| 19 | [Declarations of B. Dylan Proctor and Jon D. Corey and Notice of Lodging filed concurrently herewith] |
| 20 | |
| 21 | Hearing Date: May 21, 2008 |
| 22 | Time:       1:00 p.m.<br>Place:      Courtroom 1 |
| 23 | **Phase 1:** |
| 24 | Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 PLEASE TAKE NOTICE that Mattel, Inc. will, and hereby does, move the

3 Court for an order excluding certain purported expert opinions of Peter S. Menell.

4 This Motion shall be heard by the Honorable Stephen G. Larson on May 21, 2008,

5 at 1:00 p.m., in Courtroom 1 of the United States District Court located at 3470

6 Twelfth Street, Riverside, California 92501.

7 This Motion is made pursuant to the <u>Federal Rules of Evidence</u> and <u>Daubert</u>

8 <u>v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), on the grounds that Menell's

9 opinions are not the proper subject of expert testimony, not within Menell's

10 expertise, and are otherwise unreliable, incorrect, and unhelpful to the jury.

11 This Motion is based on this Notice of Motion and Motion, the accompanying

12 Memorandum of Points and Authorities, the Declarations of Jon Corey and Dylan

13 Proctor filed concurrently herewith, the [Proposed] Order lodged concurrently

14 herewith, the records and files of this Court, and all other matters of which the Court

15 may take judicial notice.

16

17 **<u>Statement of Local Rule 7-3 Compliance</u>**

18 The parties met and conferred on March 25, 2008, and times thereafter,

19 regarding the issues set forth in this motion.

20

21 DATED: April 14, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

22

23                               By  John Quinn  o.s.

24                                  John B. Quinn
                                   Attorneys for Mattel, Inc.

25

26

27

28

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT .............................................................................................. 3

I.  THE LAW REQUIRES THE EXCLUSION OF EXPERT
    TESTIMONY THAT IS UNHELPFUL, UNRELIABLE, OR
    OFFERED BY AN UNQUALIFIED WITNESS ............................... 3

II.  MENELL'S TESTIMONY MUST BE EXCLUDED BECAUSE HE
     PURPORTS TO INSTRUCT THE JURY ON THE LAW, WHICH IS
     THE SOLE PROVINCE OF THIS COURT ..................................... 4

III.  MENELL'S OPINIONS REGARDING ART AND FASHION
      HISTORY, DOLL DESIGN, COPYRIGHT OFFICE PROCEDURES,
      AND CALIFORNIA EMPLOYMENT LAW MUST BE EXCLUDED
      BECAUSE HE LACKS THE SPECIALIZED KNOWLEDGE AND
      EXPERTISE TO SUPPORT THOSE OPINIONS ............................. 6

IV.  MENELL'S OPINIONS WILL NOT BE HELPFUL TO THE JURY ........... 8

     A.  Menell's Opinions Regarding Popular Culture and His
         Comparison of the BRATZ Dolls to the BRATZ Drawings
         Would Not Aid the Jury ..................................................... 8

     B.  Menell Should Also Be Precluded from Opining Regarding the
         Inventions Agreement Because It Is Unambiguous ................ 10

V.  MENELL'S COPYRIGHT OPINIONS ARE UNRELIABLE
    BECAUSE HE IGNORED KEY FACTS ....................................... 13

     A.  Menell Ignores Evidence of "Intermediate Copying" by MGA ........... 13

     B.  Menell Also Ignores "Direct Copying" by MGA ..................... 15

     C.  Menell Ignores MGA's Admission that the BRATZ Dolls Are
         Derivative of Bryant's BRATZ Drawings ............................. 15

VI.  MENELL HAS APPLIED THE WRONG LAW AND IGNORED
     KEY NINTH CIRCUIT LEGAL DOCTRINES .............................. 16

     A.  The Second Circuit Infringement Test Used by Menell Is
         Inapplicable in the Ninth Circuit ..................................... 16

     B.  The AFC Test Is Not Applicable to Visual Works ................. 18

     C.  Menell Failed to Apply the Ninth Circuit Substantial Similarity
         Test ................................................................................ 19

     D.  Menell Misstates the Scope of Protection Afforded to Bryant's
         Drawings ........................................................................ 20

E.   The Originality, Functionality, Merger, and *Scenes-à-Faire* Doctrines Relied upon by Menell Are Inapplicable ............................. 20

F.   Menell Also Failed to Apply the "Inverse Ratio" Rule ..................... 22

G.   Menell Failed to Account for the Intended Audience ........................ 22

H.   Menell Misstates California Employment Law.................................. 23

VII.   MENELL'S TESTIMONY SHOULD BE EXCLUDED BECAUSE THE JURY MIGHT DEFER TO HIS OPINIONS ON MATTERS OF LAW .................................................................................................... 24

CONCLUSION.................................................................................................. 25

MATTEL'S MOTION *IN LIMINE* NO. 12 TO EXCLUDE TESTIMONY OF MENELL

# TABLE OF AUTHORITIES

**Page**

## Cases

Aguilar v. Int'l Longshoremen's Union,
   966 F.2d 443 (9th Cir. 1992)........................................................4

Andrews v. Metro N. Commuter R.R.,
   882 F.2d 705 (2d Cir. 1989)........................................................8

Apple Computer, Inc. v. Microsoft Corp.,
   35 F.3d 1435 (9th Cir. 1994)........................................................9

Apple Computer, Inc. v. Microsoft Corp.,
   759 F. Supp. 1444 (N.D. Cal. 1991)........................................15

Arc Music Corp. v. Lee,
   296 F.2d 186 (2d Cir. 1961)........................................................17

Atari Games Corp. v. Nintendo of Am., Inc.,
   1993 WL. 207548 (N.D. Cal. 1993)........................................21

Atlas Assurance Co. v. McCombs Corp.,
   146 Cal. App. 3d 135 (1983)........................................................23

In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ...........................13, 14, 16

Estate of Bojcic v. City of San Jose,
   2007 WL. 3314008 (N.D. Cal. 2007)........................................6

Burkhart v. Wash. Metro. Area Transit Auth.,
   112 F.3d 1207 (D.C. Cir. 1997) ................................................6

CFM Communications, LLC v. Mitts Telecasting Co.,
   424 F. Supp. 2d 1229 (E.D. Cal. 2005)........................................4

Cavalier v. Random House, Inc.,
   297 F.3d 815 (9th Cir. 2002)........................................................18

Computer Assocs. Int'l., Inc. v. Altai, Inc.,
   982 F.2d 693 (2d Cir. 1992)........................................................17

Coregis Ins. Co. v. Bell,
   1999 WL. 244097 (E.D. La 1999)........................................11

MATTEL'S MOTION *IN LIMINE* NO. 12 TO EXCLUDE TESTIMONY OF MENELL

7209/2468756.4

1    Country Kids 'N City Slicks, Inc. v. Sheen,
2      77 F.3d 1280 (10th Cir. 1996)...................................................................20

3    Daubert v. Merrell Dow Pharms., Inc.,
      509 U.S. 579 (1993) .................................................................................3

4    Delta Mining Corp. v. Big Rivers Elec. Corp.,
5      18 F.3d 1398 (7th Cir. 1994).....................................................................10

6    Educational Testing Service v. Simon,
7      95 F. Supp. 2d 1081 (C.D. Cal. 1999)........................................................21

8    Elsayed Mukhtar v. Cal. State Univ., Hayward,
      299 F.3d 1053 (9th Cir. 2002)....................................................................4

9    Entm't, Inc. v. Chex Servs., Inc.,
10     2005 WL. 3657156 (D. Del. 2005) ............................................................12

11    Ets-Hokin v. Skyy Spirits, Inc.,
12     225 F.3d 1068 (9th Cir. 2000).....................................................................21

13    Funky Films, Inc. v. Time Warner Entm't. Co.,
      462 F.3d 1072 (9th Cir. 2006).....................................................................9

14    GPF Waikiki Galleria,
15     2007 WL. 3195089 (D. Hawaii 2007).........................................................10

16    Guidroz-Brault v.  Missouri Pacific R.R. Co.,
17     254 F.3d 825 (9th Cir. 2001).......................................................................3

18    Harper House, Inc. v. Thomas Nelson, Inc.,
      889 F.2d 197 (9th Cir. 1989).......................................................................20

19    Jada Toys, Inc. v. Mattel, Inc.,
20     2008 WL. 450891 (9th Cir. 2008)................................................................19

21    Jinro Am. Inc. v. Secure Invs., Inc.,
22     266 F.3d 993 (9th Cir. 2001).......................................................................24

23    Johnson Controls, Inc. v. Phoenix Control Sys., Inc., ,
24     886 F.2d 1173 (9th Cir. 1989).....................................................................22

      King v. McKillop,
25     112 F. Supp. 2d 1214 (D. Colo. 2000) ......................................................9, 12

26    Kouf v. Walt Disney Pictures & Television,
27     16 F.3d 1042 (9th Cir. 1994).......................................................................19

28

Kumho Tire Co. v. Carmichael,
    526 U.S. 137 (1999) ..................................................................................... 3

Landsberg v. Scrabble Crossword Game Players, Inc.,
    736 F.2d 485 (9th Cir. 1984) ..................................................................... 20

Litchfield v. Spielberg,
    736 F.2d 1352 (9th Cir. 1984) ................................................................... 16

Lotus Dev. Corp. v. Borland Int'l, Inc.,
    49 F.3d 807 (1st Cir. 1995) ........................................................................ 19

MAI Systems Corp. v. Peak Computer, Inc.,
    991 F.2d 511 (9th Cir. 1993) ............................................................... 14, 15

Maffei v. N. Ins. Co. of New York,
    12 F.3d 892 (9th Cir. 1993) ......................................................................... 4

Mannion v. Coors Brewing Co.,
    377 F. Supp. 2d 444 (S.D.N.Y. 2005) ....................................................... 18

Marx & Co. v. Diners' Club, Inc.,
    550 F.2d 505 (2d Cir. 1977) ....................................................................... 10

Masterson Mktg., Inc. v. KSL Recreation Corp.,
    495 F. Supp. 2d 1044 (S.D. Cal. 2007) ....................................................... 6

Mattel, Inc. v. Goldberger Doll Mfg. Co.,
    365 F.3d 133 (2d Cir. 2004) ....................................................................... 20

Matthew Bender & Co., Inc. v. West Pub. Co.,
    158 F.3d 674 (2d Cir. 1998) ....................................................................... 21

McCulloch v. Albert E. Price, Inc.,
    823 F.2d 316 (9th Cir. 1987) ..................................................................... 20

McHugh v. United Serv. Auto. Ass'n,
    164 F.3d 451 (9th Cir. 1999) ....................................................................... 4

Micro Star v. Formgen Inc.,
    154 F.3d 1107 (9th Cir. 1998) ................................................................... 15

N. Am. Specialty Ins. Co. v. Myers,
    111 F.3d 1273 (6th Cir. 1997) ................................................................... 10

Nimely v. City of New York,
    414 F.3d 381 (2d Cir. 2005) ......................................................................... 8

1209/2468756.4

Norse v. Henry Holt and Co.,
    991 F.2d 563 (9th Cir. 1993)......................................................................15

Nova Cas. Co. v. Wasertstein,
    2005 WL. 5955694 (S.D. Fla 2005)...........................................................10

Original Appalachian Artworks, Inc. v. Blue Box Factory (USA) Ltd.,
    577 F. Supp. 625 (S.D.N.Y. 1983).............................................................18

Reeves v. Commonwealth Edison Co.,
    2008 WL. 239030........................................................................................15

Reeves v. Commonwealth Edison Co.,
    2008 WL. 239030 (N.D. Ill. 2008)......................................................13, 14

Salas v. Carpenter,
    980 F.2d 299 (5th Cir. 1992)......................................................................13

Sega Enters. Ltd. v. Accolade, Inc.,
    977 F.2d 1510 (9th Cir. 1992)....................................................................14

Sid & Marty Krofft Tel. Prods., Inc. v. McDonald's Corp.,
    562 F.2d 1157 (9th Cir. 1977)................................................9, 17, 19, 22

Slice of Pie Prods., LLC v. Wayans Bros. Entm't.,
    487 F. Supp. 2d 41 (D. Conn. 2007) ..........................................................17

Smith v. Jackson,
    84 F.3d 1213 (9th Cir. 1996)...............................................15, 17, 19, 22

Sparton Crop v. United States,
    77 Fed. Cl. 1 (Fed. Cl. 2007)......................................................................10

Three Boys Music Corp. v. Bolton,
    212 F.3d 477 (9th Cir. 2000)................................................................17, 22

Twentieth Century Fox Film Corp. v. Dastar Corp.,
    2000 WL. 35503105 (C.D. Cal. 2000).................................................15, 16

United States v. Chang,
    207 F.3d 1169 (9th Cir. 2000)......................................................................8

United States v. Cruz,
    363 F.3d 187 (2d Cir. 2004)..........................................................................9

United States v. Frazier,
    387 F.3d 1244 (11th Cir. 2004)..................................................................24

MATTEL'S MOTION *IN LIMINE* NO. 12 TO EXCLUDE TESTIMONY OF MENELL

IJ209/2468756.4

United States v. Purham,
   725 F.2d 450 (8th Cir. 1984)..................................................................24

United States v. Stevens,
   935 F.2d 1380 (3d Cir. 1991)................................................................25

Universal City Studios, Inc. v. J.A.R. Sales, Inc.,
   1982 WL. 1279 (C.D. Cal. 1982)..........................................................18

Venture Corp. v. Wherify Wireless, Inc.,
   2005 WL. 5960919 (C.D. Cal. 2005).................................................3, 6

Walker v. Univ. Books,
   602 F.2d 859 (9th Cir. 1979).................................................................14

**Statutes**

California Civil Code §1644...........................................................................5

Fed. R. Evid. 403 ........................................................................................24

Fed. R. Evid. 702 ..................................................................................16, 24

**Miscellaneous**

Douglas Y. Barbo, The Origin of the Contemporary Standard for Copyright
   Infringement, 6 J. Intell. Prop. Law 285, 286 (Spring 1999)..............17

Hon. Jon Newman, New Lyrics for an Old Melody: the Idea/Expression Dichotomy
   in the Computer Age, ...........................................................................18

7209/2468756.4

# **PRELIMINARY STATEMENT**

MGA's multi-purpose expert, Peter S. Menell, is a law school professor who claims expert status because he has read many judicial opinions in the course of his career. The Court should exclude Mr. Menell's opinions and testimony because: (1) he purports to instruct the jury on the law, which is the sole province of the Court; (2) he is not qualified to testify on most topics in his report; (3) his opinions are not helpful to the trier of fact; (4) he has ignored key facts; (5) he has applied the wrong law to the facts; and (6) his testimony would be more prejudicial than probative.

First, Menell's entire report discusses legal issues that this Court can easily determine, such as the test for copyright infringement, protected elements under copyright law, the substantial similarity standard, the *scenes-à-faire* and merger doctrines, and even California employment law (which he does not appear to have examined extensively or taught). Bryant's Employee Confidential Information and Inventions Agreement with Mattel (the "Agreement" or "Inventions Agreement") is clear and unambiguous, but even if it were not, courts consistently refuse to let experts interpret a contract unless it involves a specialized term of art, science or trade. Menell even opines on ultimate legal issues, such as whether MGA's BRATZ dolls are "substantially similar" to Bryant's BRATZ drawings, and whether Bryant's BRATZ drawings fall within the assignment provisions of the Agreement. It is up to the Court, not Menell, to instruct the jury on the law. Accordingly, Menell's opinions should be stricken on these grounds alone.

Second, Menell is simply not qualified to opine on most of the topics addressed by his report, such as art and fashion history, doll design, and employment law. He has no special training, education or experience in these areas, and admits that he is not an expert. His purported reliance on the opinions of MGA's other purported experts, Robert Tonner and Tina Tomiyama (who has been

1   disqualified) is facetious, as he admits that their conclusions were based on his own
2   instructions regarding the law.

3        Third, Menell's discussion of popular culture and comparison of the BRATZ
4   drawings with the BRATZ dolls is similarly unhelpful, because the jury is fully
5   capable of understanding popular culture and comparing the drawings to the dolls
6   without Menell's input.  Indeed, Menell admits that his comparison was based on
7   things that are "pretty self evident" and "that don't require artistic training." Menell,
8   who does not have any artistic training, is thus a lay "expert." Likewise, Menell
9   opines only on the "ordinary" meaning of language in the Agreement and is guided
10  by "standard dictionary definitions," as opposed to trade terms related to doll design
11  or inventing.  Beyond offering his lay opinions on the "ordinary" meaning of
12  language, Menell merely discusses legal standards (which are incorrect), his own
13  legal conclusions, and his personal interpretation of the Agreement.  All of these
14  topics are of course improper.

15       Fourth, Menell has ignored key facts, such as evidence of: (i) intermediate
16  copying by MGA; (ii) direct copying by MGA; and (iii) MGA's admission that the
17  BRATZ dolls are "derivative" of Bryant's drawings (which admission directly
18  contradicts Menell's conclusions).  Each of these facts independently warrants a
19  finding of copyright infringement, eliminating the need for a substantial similarity
20  analysis.  Menell's failure to address such key facts is alone sufficient grounds for
21  exclusion.

22       Fifth, Menell applies the wrong law to the facts of this case.  This case was
23  filed in and is governed by Ninth Circuit law, but Menell applies Second Circuit law
24  even though the two Circuits have substantially different tests for copyright
25  infringement.  For example, the Second Circuit allows the filtration of ideas and
26  rejects the "inverse ratio" rule.  In contrast, the Ninth Circuit requires a comparison
27  of ideas and embraces the "inverse ratio" rule.  Further, the abstraction, filtration and
28  comparison ("AFC") test applied by Menell is not applicable to visual works, such

1   as the BRATZ drawings, as noted by a wide body of case law and even his own

2   mentor. Menell also ignores the intended audience for the works at issue, as well as

3   the fact that the defenses of "*scenes-à-faire*," "merger" and "functionality" are

4   inapplicable where there is proof and admission of direct copying, as here.

5        Finally, Menell's opinions should be excluded under Rule 403 because they

6   are far more prejudicial than probative. If Menell were permitted to testify, the jury

7   would be unduly prejudiced by the credence commonly afforded by juries to

8   perceived experts. Further, admitting Menell's testimony would cause undue delay

9   while he attempts to instruct the jury on the law, which is the sole province of this

10  Court.

11                          **ARGUMENT**

12  **I.   THE LAW REQUIRES THE EXCLUSION OF EXPERT TESTIMONY**

13       **THAT IS UNHELPFUL, UNRELIABLE, OR OFFERED BY AN**

14       **UNQUALIFIED WITNESS**

15       Under Rule 702, a witness may testify in the form of an opinion regarding

16  scientific, technical, or other specialized knowledge *only* if such knowledge will

17  "assist the trier of fact to understand the evidence or to determine a fact in issue"; if

18  the witness is "qualified as an expert by knowledge, skill, experience, training, or

19  education"; and "if (1) the testimony is based on sufficient facts or data, (2) the

20  testimony is the product of reliable principles and methods, and (3) the witness has

21  applied the principles and methods reliably to the facts of the case." Fed. R. Evid.

22  702; see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

23       The trial court must act as a "gatekeeper" to exclude scientific and non-

24  scientific expert testimony that does not meet these admissibility requirements. See

25  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148-49 (1999); Guidroz-Brault v.

26  Missouri Pacific R.R. Co., 254 F.3d 825, 829 (9th Cir. 2001). As Judge Klausner

27  explained in Venture Corp. v. Wherify Wireless, Inc., 2005 WL 5960919, at *1

28

1 (C.D. Cal. 2005), "[t]he offering party has the burden of showing that the expert

2 testimony meets the requirements of Rule 702." Here, MGA has failed to do so.

3 **II.  MENELL'S TESTIMONY MUST BE EXCLUDED BECAUSE HE**

4 **PURPORTS TO INSTRUCT THE JURY ON THE LAW, WHICH IS**

5 **THE SOLE PROVINCE OF THIS COURT**

6 It is black letter law that expert opinions regarding matters of law and

7 application of law to the facts are improper and inadmissible.  See, e.g., Elsayed

8 Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1066, n. 10 (9th Cir. 2002)

9 ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an

10 opinion on an ultimate issue of law"); McHugh v. United Serv. Auto. Ass'n, 164

11 F.3d 451, 454 (9th Cir. 1999) (same); Aguilar v. Int'l Longshoremen's Union, 966

12 F.2d 443, 447 (9th Cir. 1992) (holding that matters of law are "inappropriate

13 subjects for expert testimony"); CFM Communications, LLC v. Mitts Telecasting

14 Co., 424 F. Supp. 2d 1229, 1237 (E.D. Cal. 2005) (prohibiting expert from applying

15 the law to the facts of the case); Maffei v. N. Ins. Co. of New York, 12 F.3d 892,

16 898-899 (9th Cir. 1993) (expert opinion interpreting insurance policy language

17 properly excluded as an unsupported legal conclusion).

18 The "Copyright Tutorial" and "Copyright Infringement" sections of Menell's

19 Report (pp. 5-23) set forth opinions on issues that are explicitly addressed by case

20 law, such as the proper copyright infringement test, "protected elements" under

21 copyright law, the "substantial similarity" standard, and other copyright legal

22 issues.[1]  See, e.g., Report ¶ 22 (titled "Infringement Analysis"); ¶ 24 (titled

23 "Copyright Protected Material"); ¶ 35 (titled "Comparison: "Substantial Similarity");

24 and ¶ 36 (titled "Compilations of Unprotected Elements: Virtual Identity").  Menell

25 purports to apply his interpretation of the law to the facts of this case and offers

26

27 [1]  See Expert Report of Peter S. Menell, dated February 11, 2008, attached as Exhibit 69 to the concurrently filed Declaration of B. Dylan Proctor ("Proctor

28 Dec.").

7209/2468756.4

-4-

1  conclusions as to the ultimate legal issues of this case.  <u>See</u>, <u>e.g.</u>, Report ¶ 65

2

3

4

5

6      The "Inventions Agreement" section of Menell's Report (pp. 23-31) likewise

7  opines on legal standards and offers legal conclusions.   For example, Menell

8  dedicates an entire paragraph--aptly titled "Legal Standard" -- to stating his

9  understanding of California contract law.  Report, ¶ 70.  He next describes a contract

10 of adhesion "under California law."  <u>Id.</u>  Several paragraphs later he opines on how

11 "ambiguous" terms should be construed, citing California Civil Code §1644, and

12 does so again in a paragraph entitled "Interpretation of Ambiguous Terms."  <u>Id.</u>, ¶¶

13 76-77.   He also repeatedly states that

14          <u>See</u>, <u>e.g.</u>, Report, ¶¶ 71, 77, 85.  It is not Menell's role to tell the jury

15 what constitutes a contract of adhesion, nor to decide whether the Agreement was

16 adhesive.   Further, Menell (a copyright professor) opines that,

17

18

19     Although Menell himself admits that the job of interpreting the Agreement

20 lies with the Court, he does precisely that, concluding for example that the Bratz

21 drawings do not fall within the assignment provisions of the Agreement.[2]  In fact,

22 Menell concedes that there are portions of his report written

23

24

25

26  [2]   Deposition of Peter S. Menell, dated April 1, 2008 ("Menell Depo."), at
    289:14-290:1,  290:12-19,  attached  as  Exhibit  13  to  the  concurrently  filed
27  Declaration of Jon Corey

28          <u>Id.</u>, at 289:23-290:1.

1

2

3    Expert testimony is not necessary or admissible as to legal conclusions or to
4    inform the finder of fact regarding the relevant law to apply to the facts of this case,
5    which is a matter reserved exclusively for the Court.  "Each courtroom comes
6    equipped with a 'legal expert,' called a judge, and it is his or her province alone to
7    instruct the jury on the relevant legal standards."  <u>Burkhart v. Wash. Metro. Area</u>
8    <u>Transit Auth.</u>, 112 F.3d 1207, 1213 (D.C. Cir. 1997); <u>see also</u> <u>Estate of Bojcic v.</u>
9    <u>City of San Jose</u>, 2007 WL 3314008, at *2 (N.D. Cal. 2007) (holding that "[w]hen
10   an expert undertakes to tell the jury what result to reach, this does not aid the jury in
11   making a decision, but rather attempts to substitute the expert's judgment for the
12   jury's.") (cite omitted).  Accordingly, Menell's legal conclusions, like his discussion
13   of the law generally, are improper expert testimony, requiring that his report be
14   stricken.

15   **III.   MENELL'S OPINIONS REGARDING ART AND FASHION**
16   **HISTORY, DOLL DESIGN, COPYRIGHT OFFICE PROCEDURES,**
17   **AND CALIFORNIA EMPLOYMENT LAW MUST BE EXCLUDED**
18   **BECAUSE HE LACKS THE SPECIALIZED KNOWLEDGE AND**
19   **EXPERTISE TO SUPPORT THOSE OPINIONS**

20   A witness may be qualified as an expert "by knowledge, skill experience,
21   training, or education." <u>Rule</u> 702.  The party offering the expert's opinions has the
22   burden to prove such qualifications. <u>Venture Corp. v. Wherify Wireless, Inc.</u>, 2005
23   WL 5960919, at *1 (C.D. Cal. 2005); <u>Masterson Mktg., Inc. v. KSL Recreation</u>
24   <u>Corp.</u>, 495 F. Supp. 2d 1044, 1050 (S.D. Cal. 2007).  Here, MGA has presented no
25   evidence that might qualify Menell as an expert with respect to art and fashion
26   history, doll design, United States Copyright Office procedures, or California

27

28   [3]   Menell Depo. at 272:25-273:5, Corey Dec., Exh. 13.

1   employment law. Menell's report and curriculum vitae are notably silent regarding

2   those areas.

3          Menell has never worked as a fashion or art historian, or even in the general

4   fields of fashion or illustration, nor does he have any training or education in these

5   areas.[4]    Nevertheless, he offers opinions concerning "Prior Widely-Known

6   Character Illustrations" (¶ 46), "Prior Fashion Dolls" (¶ 47), "Doll Illustration Art"

7   (¶ 48), and "Fashion Illustration" (¶ 49), and bases his opinions on his analysis of art

8   and fashion history. See Report ¶¶ 46-51. Menell also has never worked, and has

9   no training, in the field of doll-design.[5]   In deposition he gave the following

10  testimony:

11          However, his opinions purport to compare the body elements and facial

12  features of Bryant's BRATZ drawings to MGA's BRATZ dolls. See Report ¶¶ 53-

13  65.

14          Likewise, Menell has never registered a copyright, nor has he ever worked for

15  or even corresponded with the United States Copyright Office.[7] In deposition, he

16  gave the following testimony:

17

18                         Nonetheless, Menell offers opinions on this topic.[9]

19          Menell also does not appear to have examined extensively or ever taught

20  California employment law. Nevertheless, he purports to interpret the terms of

21  Bryant's Agreement with Mattel. See Report ¶¶ 67-85.

22

23

24  [4]  See, e.g., Menell Depo., at 61:7-19, Corey Dec., Exh. 13.
    [5]  Id., at 61:20-62:23.
25  [6]  Id. at 164:20-23.
    [7]  Id., at 200:14-202:13.
26  [8]  Id., at 203:25-204:4.
    [9]  See Menell's Rebuttal Report to Oman, ¶¶ 4, 7-8, Proctor Dec., Exh. 77.
27  These opinions must also be excluded because they constitute improper expert
    testimony regarding matters of law.
28

1   Menell's attempt to justify his opinions by relying on the reports of MGA's
2   other purported experts, Robert Tonner and Tina Tomiyama, is facetious, as he
3   admits that their conclusions were based on his own instructions regarding the law.[10]
4   Further, to the extent Menell relies upon the report of Ms. Tomiyama, his opinions
5   should be stricken because Tomiyama has been disqualified as an expert.[11]

6   Menell's opinions must be excluded because he is not qualified by
7   knowledge, skill, experience, training or education to instruct the jury in these areas.
8   See Nimely v. City of New York, 414 F.3d 381, 399, n.2 (2d Cir. 2005) (holding
9   that "because a witness qualifies as an expert with respect to certain matters or areas
10  of knowledge, it by no means follows that he or she is qualified to express expert
11  opinions as to other fields"); United States v. Chang, 207 F.3d 1169, 1172-1173 (9th
12  Cir. 2000) (holding that district court did not abuse its discretion in precluding
13  expert from testifying regarding matters beyond the scope of his expertise); Fed. R.
14  Evid. 702.[12]

15  **IV.   MENELL'S OPINIONS WILL NOT BE HELPFUL TO THE JURY**

16  **A.   Menell's Opinions Regarding Popular Culture and His**
17  **Comparison of the BRATZ Dolls to the BRATZ Drawings Would**
18  **Not Aid the Jury**

19  The portion of Menell's report comparing Carter Bryant's drawings with the
20  Bratz dolls (¶¶ 53-65) must be excluded for the independent reason that expert

---

22  [10]   See Report ¶¶ 16, 18 (stating that

24  [11]   See Order Granting Motion to Disqualify Expert, dated April 8, 2008, Proctor
25  Dec., Exh. 70.

26  [12]   Likewise, though Menell ventures to opine on what juries may or may not
conclude upon being presented with copyright issues (see Report, ¶¶ 16, 41), he has
never tried a case to a jury or even appeared in court as a lawyer. See Menell Depo.
27  at 59:2-11, Corey Dec., Exh. 13. Accordingly, his opinions regarding potential jury
reactions to copyright issues must be excluded as well.

1   testimony is not permitted when it is within the knowledge and experience of lay
2   people.  See, e.g., Andrews v. Metro N. Commuter R.R., 882 F.2d 705, 708 (2d Cir.
3   1989) (expert should not be permitted to testify "to lay matters which a jury is
4   capable of understanding and deciding without the expert's help"); United States v.
5   Cruz, 363 F.3d 187, 196-97 (2d Cir. 2004) (accord); King v. McKillop, 112 F. Supp.
6   2d 1214, 1222 (D. Colo. 2000) (expert testimony excluded where experts "seek,
7   impermissibly, to do what the jury could do just as well on its own").

8       Here, the jury will be fully capable of comparing the body elements (*i.e.*, feet,
9   legs, arms, hands, torso, and head shape) and facial features (*i.e.*, eyes and lips) of
10   the BRATZ drawings to the BRATZ dolls, to determine whether or not they appear
11   similar.   Indeed, Menell admits that he is

12

13                              13

14       Likewise, Menell's opinions regarding popular culture (see ¶¶ 50-51) must be
15   excluded because they are not based on, nor do they provide, any specialized
16   knowledge that would assist the jury.   Menell admits that he does not have any
17   special expertise in popular culture other than as a "contemporary father" and "a
18   copyright law professor."[14]   A lay person does not need to have popular culture
19   explained to him by an expert -- that is why it is called *popular* culture.

20       To the extent Menell merely compares Bryant's drawings to the Bratz dolls as
21   a whole (see ¶ 65), his opinions also must be excluded because ordinary expert
22   testimony on this issue is generally prohibited under Ninth Circuit law.   See, e.g.,
23   Funky Films, Inc. v. Time Warner Entm't. Co., 462 F.3d 1072, 1077 (9th Cir. 2006);
24   Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994); Sid &
25   Marty Krofft Tel. Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir.
26   1977) (same).

27   _____
     [13]   Menell Depo., at 163:5-8, 68:11-16, Corey Dec., Exh. 13.
28

1    **B.    Menell Should Also Be Precluded from Opining Regarding the**
2         **Inventions Agreement Because It Is Unambiguous**

3    Experts cannot interpret contracts if the meaning is plain and unambiguous.
4    N. Am. Specialty Ins. Co. v. Myers, 111 F.3d 1273, 1280-81 (6th Cir. 1997)
5    (expert's contract interpretation inadmissible where there were no ambiguous
6    provisions or technical terms in the relevant portion); Nova Cas. Co. v. Wasertstein,
7    2005 WL 5955694, at *2 (S.D. Fla 2005) (excluding expert from interpreting
8    insurance policy because "there has been no finding that the policy language is
9    ambiguous").  As set forth in Mattel's summary judgment briefing, the Inventions
10   Agreement contains no ambiguous terms.[15]  For that reason alone, Menell's
11   testimony on the meaning of terms such as "inventions" should be excluded.

12   Expert interpretation is also improper if it is "not directed to interpretation of
13   contract terms based on trade practice or usage [and] the expert report [does not]
14   suggest that there any contract terms with specialized meaning."  Sparton Crop v.
15   United States, 77 Fed. Cl. 1, 9 (Fed. Cl. 2007); see also GPF Waikiki Galleria, 2007
16   WL 3195089, at *6 (D. Hawaii 2007) (excluding expert because his "conclusions
17   are not based on his assessment of other similar agreements to clarify or define
18   terms of art" but rather are "based on his construction of this [particular agreement],
19   making, him an advocate, not an expert.") (emphasis in original).   Courts
20   consistently refuse to let experts interpret a contract unless it involves a specialized
21   term or art, science or trade.  See, e.g., Marx & Co. v. Diners' Club, Inc., 550 F.2d
22   505, 509-10 (2d Cir. 1977) (trial court erred in permitting an expert to opine on legal
23   obligations under a contract); Delta Mining Corp. v. Big Rivers Elec. Corp., 18 F.3d
24   1398, 1402 (7th Cir. 1994) ("Absent any need to clarify or define terms of art,

---

26   [14]  Id., at 62:24-65:2.
27   [15]  See, e.g., Mattel Inc.'s Opposition To The MGA Parties' and Carter Bryant's
     Motion for Partial Summary Judgment ("Mattel Opposition"), at 11-15, Proctor
28   Dec., Exh. 11.

1   science or trade, expert opinion testimony to interpret contract language is
2   inadmissible").

3        Menell's testimony is not directed to the interpretation of contract terms based
4   on trade practice, nor does he suggest the terms have any specialized meanings
5   beyond a vague assertion that some words have technological connotations.   For
6   example, in analyzing the Agreement's trade secret provision, Menell opines that the
7
8
9
10  Report, ¶ 76.  Having conceded that the ordinary meaning controls, there is no need
11  for expert opinion.  See Coregis Ins. Co. v. Bell, 1999 WL 244097, at *1 (E.D. La
12  1999) (excluding expert because "the terminology at issue 'might be expected', is a
13  phrase which a juror could easily understand and interpret").

14       Similarly inappropriate is Menell's analysis of Bryant's inventions assignment
15  provision.   Menell initially discusses the
16
17
18       [16]  Report, ¶ 81.  However, Menell never suggests these terms have any
19  trade practice or specialized meaning that would require his testimony.

20       Instead, Menell's contract analysis consists chiefly of "expert opinions"
21  concerning terms the jury is perfectly capable of reading and interpreting:
22        •
23
24
25  [16]   Menell also offers a lengthy discussion of extrinsic evidence, including
    subsequent changes to Mattel's general employment agreement.  As discussed in
26  Mattel's Motion in Limine No. 1, these changes are irrelevant in any event.   In
    particular, here, where Menell has no experience in employer practices and the
27  numerous reasons that an employer may change its agreement, it would be unfairly
    prejudicial to allow Menell to imply that these changes were made for any particular
28  reason.

7209/2468756.4

-11-

1

2

3

4

5

6

7

8

9

10    Of course, the jury needs no expert to understand the "ordinary" meaning of

11  words or phrases such as "as a result of my employment."   See, e.g., King v.

12  McKillop, 112 F. Supp. 2d 1214, 1222 (D. Colo. 2000) (expert testimony excluded

13  where experts "seek, impermissibly, to do 'what the jury could do just as well on its

14  own[,] i.e., infer the presence or absence of negligence, [or willful or wanton

15  conduct,] from the . . . evidence adduced at trial").

16    The closest Menell comes to discussing specialized meaning or terms of art is

17  in one paragraph, entitled "Analysis of Inventions Ownership Provisions of the 1999

18  Agreement: Technical Meaning."  Report, ¶ 80.  But Menell merely discusses how

19  the Constitution and the Patent Act use terms such as "inventions," "discoveries,"

20  "processes" and "improvements."   Id.  He does not purport to analyze  how the

21  parties understood those terms, which is the only relevant issue.[17]   See iGames

22  Entm't, Inc. v. Chex Servs., Inc., 2005 WL 3657156, *3 (D. Del. 2005) ("An expert

23

24

25

26

27    (footnote continued)                                                    One  or  two

28

7209/2468756.4

1  giving his view of what contract language means, without linking it to what the
2  parties understood, is not giving relevant evidence."). His "analysis" is really legal
3  argument. See, e.g., Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992) ("Stated
4  more directly a judge ought to insist that a proffered expert bring more to the jury
5  than the lawyers can offer in argument.") (citations omitted).

6  **V.    MENELL'S COPYRIGHT OPINIONS ARE UNRELIABLE BECAUSE**
7  **HE IGNORED KEY FACTS**

8  When an expert ignores key facts or data contradicting his conclusions, the
9  resulting opinion is inadmissible because it is unreliable. See, e.g., Reeves v.
10 Commonwealth Edison Co., 2008 WL 239030, at *5 (N.D. Ill. 2008) (precluding
11 expert's opinions because he ignored key facts); In re Bextra and Celebrex Mktg.
12 Sales Practices and Prod. Liab. Litig., 524 F. Supp. 2d 1166, 1181 (N.D. Cal. 2007)
13 (finding an expert opinion unreliable and inadmissible because the expert ignored
14 evidence contradicting her conclusions).   Here, Menell ignores key evidence
15 regarding:   (1) intermediate copying by MGA; (2) direct copying by MGA;  and
16 (3) the fact that MGA has filed papers with the U.S. Copyright Office admitting that
17 the BRATZ dolls are "derivative" of Bryant's drawings, and directly contradicting
18 Menell's conclusions.   Each of these facts independently warrants a finding of
19 infringement and requires the exclusion of Menell's analysis.

20 **A.    Menell Ignores Evidence of "Intermediate Copying" by MGA**
21 Menell states that his copyright analysis focuses on
22
23 Report ¶¶ 14, 21. However, Ninth Circuit case law protects the copyright owner not
24 only against the final product that is marketed commercially (i.e., the BRATZ dolls),
25 but also against all preparatory items that may have led to the final revised copy.
26 _____
27 conclusory sentences (unbacked by appropriate foundation) from his entire nine
28 pages devoted to contract analysis do not render his report admissible.

-13-

1  See, e.g., Walker v. Univ. Books, 602 F.2d 859, 864 (9th Cir. 1979) ("the fact that
2  an allegedly infringing copy of a protected work may itself be only an inchoate
3  representation of some final product to be marketed commercially does not in itself
4  negate the possibility of infringement"); Sega Enters. Ltd. v. Accolade, Inc., 977
5  F.2d 1510, 1518 (9th Cir. 1992) ("intermediate copying [] falls squarely within the
6  category of acts that are prohibited by the statute"); MAI Systems Corp. v. Peak
7  Computer, Inc., 991 F.2d 511, 518-519 (9th Cir. 1993) (holding that temporary
8  intermediate copying constituted infringement under the Copyright Act).

9  Here, the evidence is that MGA showed Bryant's BRATZ drawings, as part of
10  its character art boards to market the BRATZ dolls, to retailers and potential buyers
11  including Wal-Mart, Toys "R" Us, Kmart and Walgreens.[18]  The BRATZ drawings
12  were also used at the New York and the Hong Kong toy fairs.[19]  MGA also
13  submitted Bryant's BRATZ drawings as part of its copyright applications.[20]  Menell
14  does not address any of these facts, even though he had an opportunity to do so in
15  his Rebuttal Reports.[21]

16  Indeed, Menell assumes for purposes of his analysis that MGA artists
17
18  Report ¶ 39.  Because the evidence of intermediate
19  copying is alone sufficient to find infringement, Menell's deliberate failure to
20  address these facts makes his opinions unreliable.  See Reeves v. Commonwealth
21  Edison Co., 2008 WL 239030, at *5; In re Bextra, 524 F. Supp. 2d at 1179.

22

23
24  [18]   See Rebecca Harris Depo., at 366:14-367:1, 376:3-377:15, 476:1-25
, Corey Dec., Exh. 14.
25  [19]   See id.; Harris Depo., at 476:1-25, Corey Dec., Exh. 14; Chui Depo, at
171:21-175:8, 187:20-188:11, Corey Dec., Exh. 15.
26  [20]   See Proctor Dec., Exhs. 71-75.
27  [21]   See generally Menell's Rebuttal Reports to Loetz, Oman and Stein, and
Menell's Declaration in support of MGA's Opposition to Mattel's Motion for Partial
28  Summary Judgment, Proctor Dec., Exhs. 76-79.

1    **B.    Menell Also Ignores "Direct Copying" by MGA**

2    Plaintiff may establish "copying" by either: (1) showing direct copying or

3    (2) showing that: (i) defendant had access to plaintiff's work and (ii) the two works

4    are "substantially similar" in idea and in expression of the idea. Smith v. Jackson,

5    84 F.3d 1213, 1218 (9th Cir. 1996). Thus, when there is evidence of direct copying,

6    there is no need to engage in a substantial similarity analysis. See, e.g., Norse v.

7    Henry Holt and Co., 991 F.2d 563, 566 (9th Cir. 1993) (substantial similarity

8    analysis is inapposite to the copying issue where there is proof of copying);

9    Twentieth Century Fox Film Corp. v. Dastar Corp., 2000 WL 35503105, at *10

10   (C.D. Cal. 2000) ("[W]here there is admission of copying, the court need not

11   employ [substantial similarity] analysis.") (Cooper, J.).

12   Here, there is evidence of direct copying by MGA, which registered the same

13   BRATZ drawings with the Copyright Office as Mattel.[22]   Shockingly, Menell calls

14   attention to his decision to

15   _____ ' (Report ¶ 39), and instead engages in a substantial

16   similarity analysis (under Second Circuit law, no less). See Report ¶¶ 40-66.

17   Accordingly, Menell's substantial similarity analysis must be excluded because he

18   ignores data that makes his analysis utterly inapposite.[23]

19   **C.    Menell Ignores MGA's Admission that the BRATZ Dolls Are**

20   **Derivative of Bryant's BRATZ Drawings**

21   It is well established law that, "[a] derivative work is one which is

22   substantially copied from a prior work." Apple Computer, Inc. v. Microsoft Corp.,

23   759 F. Supp. 1444, 1454 (N.D. Cal. 1991); see also Micro Star v. Formgen Inc., 154

24

25   [22]   Compare Bratz drawings registered by MGA (see Proctor Dec. Exhs. 71-75)
     with Bratz drawings registered by Mattel (see Proctor Dec., Exhs. 80-84).

26   [23]   Of course, this portion of the opinion must be stricken for the independent
27   reason that Menell is not an expert on doll design and is no more qualified to
     compare the body elements and facial features of the BRATZ dolls to Bryant's
28   drawings than any ordinary lay witness. See supra at III and IV.

7209/2468756.4

F.3d 1107, 1112 (9th Cir. 1998) ("a work will be considered a derivative work only if it would be considered an infringing work"); Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984) ("a work is not derivative unless it has been substantially copied from the prior work"). Menell is familiar with and agrees with this legal doctrine.[24]

Here, MGA has admitted copying. It told the U.S. Copyright Office, under oath, that the BRATZ dolls are "derivative" of Bryant's BRATZ drawings.[25] Menell was familiar with this evidence. He disclosed that, but did not take it into account, evidently because it contradicts his conclusions.

[26]

Accordingly, Menell's substantial similarity analysis must be excluded as irrelevant and unreliable. See, e.g., Twentieth Century Fox Film Corp. v. Dastar Corp., 2000 WL 35503105, at *10 (C.D. Cal. 2000) (substantial similarity analysis inapposite where there is evidence of direct copying); In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig., 524 F. Supp. 2d 1166, 1181 (N.D. Cal. 2007) (finding expert opinion unreliable and inadmissible because the expert ignored the evidence contradicting her conclusions).

## VI.   MENELL HAS APPLIED THE WRONG LAW AND IGNORED KEY NINTH CIRCUIT LEGAL DOCTRINES

### A.   The Second Circuit Infringement Test Used by Menell Is Inapplicable in the Ninth Circuit

To be admissible, expert testimony must be the product of reliable principles and methods that are reliably applied to the facts of the case. Fed. R. Evid. 702.

---

[24] Menell Depo., at 207:20-209:9, Corey Dec., Exh. 13.
[25] Proctor Dec., Exh. 85.
[26] Menell Depo. at 220:22-221:6, Corey Dec., Exh. 13.

1  Menell bases his copyright infringement analysis on the Second Circuit's
2  abstraction, filtration, and comparison ("AFC") test, as set forth in Computer
3  Assocs. Int'l., Inc. v. Altai, Inc., 982 F.2d 693, 712 (2d Cir. 1992). See Report ¶ 24.
4  But this case is governed by Ninth Circuit law, which applies a substantially
5  different test for copyright infringement.[27]

6      For example, the Ninth Circuit requires a lower standard of proof on
7  substantial similarity when a high degree of access is shown (*i.e.* the "inverse ratio"
8  rule). See, e.g., Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir.
9  2000); Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d
10  1157, 1172 (9th Cir. 1977). In contrast, "the Second Circuit has rejected the Ninth
11  Circuit's inverse ratio rule." Slice of Pie Prods., LLC v. Wayans Bros. Entm't., 487
12  F. Supp. 2d 41, 47, n. 4 (D. Conn. 2007); see also Arc Music Corp. v. Lee, 296 F.2d
13  186, 187-188 (2d Cir. 1961) (same).

14     Similarly, in the Ninth Circuit, one must "consider whether two works share a
15  similarity of ideas." Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).   In
16  contrast, the Second Circuit allows filtration of ideas. See Altai, 982 F.2d at 706-
17  707.

18     As one legal treatise notes, with respect to the Second Circuit's and Ninth
19  Circuit's tests for copyright infringement, "[i]f one thing is clear, it is that the two
20  tests bear no resemblance to each other." WILLIAM PATRY ON COPYRIGHT, at
21  § 9:235, p. 9-256 (2007); see also Douglas Y. Barbo, *The Origin of the*
22  *Contemporary Standard for Copyright Infringement*, 6 J. INTELL. PROP. LAW 285,
23  286 (Spring 1999) ("the Second and Ninth Circuits currently apply different
24  standards for copyright infringement"). Accordingly, in addition to being prohibited
25
26  
―――――――――――――――――――――――――――――
27  [27]  Compare the "extrinsic" and "intrinsic" tests set forth in Sid & Marty Krofft
     Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir. 1977)
28  with the AFC test set forth in Altai.

r209/2468756.4

1    by black-letter law, Menell's copyright infringement analysis and conclusions are

2    inadmissible because he has applied the wrong law to the facts of this case.

3          **B.**     **The AFC Test Is Not Applicable to Visual Works**

4        The Second Circuit's AFC test is also inapposite here because it is not used

5    with visual works (*e.g.*, drawings or dolls), which must be considered in their

6    entirety. See, e.g., Mannion v. Coors Brewing Co., 377 F. Supp. 2d 444, 458

7    (S.D.N.Y. 2005) (finding that Judge Hand's "level of abstractions" test and the

8    idea/express distinction as a whole is ill-suited when dealing with works other than

9    literary works). "Unlike a story, which has a linear dimension, a three-dimensional

10   work is created to be perceived as an entirety." Original Appalachian Artworks,

11   Inc. v. Blue Box Factory (USA) Ltd., 577 F. Supp. 625, 628 (S.D.N.Y. 1983)

12   (holding that "[t]he differences and similarities are not to be assessed separately, but

13   rather the dolls should be evaluated in total concept and feel"); Universal City

14   Studios, Inc. v. J.A.R. Sales, Inc., 1982 WL 1279, at *3 (C.D. Cal. 1982)

15   (comparing "total concept and feel" of the works at issue) (Hauk, A).

16        Menell's own mentor, Second Circuit Judge Jon O. Newman (who Menell

17   notes "is particularly noted for his jurisprudence" (Report ¶ 3)), has explained that

18   Altai's "abstractions, filtration and comparison" analysis should be limited to written

19   works, and cannot be applied to "copyright issues beyond the context of written

20   texts." See Hon. Jon Newman, *New Lyrics for an Old Melody: the Idea/Expression*

21   *Dichotomy in the Computer Age*, 17 CARDOZO ARTS AND ENTM'T. L. J., at 695-699

22   (1999) (noting that "[o]ne cannot divide a visual work into neat layers of abstraction

23   in precisely the same manner one could with a text," and that "[a]nalysis appropriate

24   to written text is not transferable wholesale to the realm of . . . visual works"). Id. at

25   699, 703. See also  Cavalier v. Random House, Inc., 297 F.3d 815, 826 (9th Cir.

26

27

28

7209/2468756.4

-18-

1  2002) ("The precise factors evaluated for literary works do not readily apply to art

2  works.").[28]

3       **C.**     **Menell Failed to Apply the Ninth Circuit Substantial Similarity**

4              **Test**

5       The Ninth Circuit uses a two-part test to determine whether two works are

6  substantially similar:  (1) the "extrinsic" test considers whether two works share a

7  similarity of ideas and expression based on external, objective criteria and (2) the

8  "intrinsic" test asks whether an "ordinary, reasonable observer" would find a

9  substantial similarity of expression of the shared idea.  See Kouf v. Walt Disney

10  Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994); Sid & Marty Krofft

11  Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir. 1977).   The

12  Menell Report never addresses this two-part test, even though Menell admits that it

13  is the governing law in the Ninth Circuit.[29]

14       Instead, relying on Second Circuit's AFC test, as expressed in Altai, Menell

15  argues that ideas

16       Report, ¶ 8. However, in the Ninth Circuit it is reversible error to fail to

17  compare the ideas in the defendant's and plaintiff's works. See, e.g., Jada Toys, Inc.

18  v. Mattel, Inc., 2008 WL 450891, at *6 (9th Cir. 2008) (reversing district court's

19  granting of summary judgment because it did not compare the ideas in plaintiff's and

20  defendant's works); Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding

21  that "the extrinsic test considers whether two works share a similarity of ideas and

22  

23    [28]  The abstraction, filtration, and comparison test is also inapplicable because it

24  addresses non-literal copying, "which is copying that is paraphrased or loosely paraphrased rather than word for word." Lotus Dev. Corp. v. Borland Int'l, Inc., 49

25  F.3d 807, 814 (1st Cir. 1995).  Of course, Mattel has alleged literal copying by

26  MGA. See, e.g., Lotus, 49 F.3d at 814-815 (1st Cir. 1995) (holding that the Altai "abstraction, filtration and comparison" test is "misleading" and "of little help" in

27  assessing whether literal copying constitutes copyright infringement).

28    [29]  Menell Depo., at 232:22-233:15, Corey Dec., Exh. 13.

1 expression"). By failing to compare the ideas in the BRATZ drawings and dolls,

2 Menell failed to apply the extrinsic test, which is an integral part of the Ninth

3 Circuit's substantial similarity analysis.

**D.   Menell Misstates the Scope of Protection Afforded to Bryant's Drawings**

6      Relying on Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197 (9th Cir.

7 1989), Menell opines that Mattel must show "bodily appropriation" or "virtual

8 identity" to prove copyright infringement, ostensibly because Bryant's drawings are

9 purportedly entitled only to "thin" protection as a compilation of unprotected

10 elements. See Report, ¶¶ 36, 65. That is not the law. Harper dealt with a collection

11 of blank forms in an organizer (i.e., a factual work), and held that "[a] factual

12 compilation receives only limited copyright protection." Id. at 205.   In contrast,

13 Bryant's drawings are clearly artistic, not factual. Accordingly, they deserve greater

14 protection under copyright law. See, e.g, McCulloch v. Albert E. Price, Inc., 823

15 F.2d 316, 321 (9th Cir. 1987) ("Works that are not factual receive much broader

16 protection under the copyright laws because of the endless variations of expression

17 available to the artist"); Landsberg v. Scrabble Crossword Game Players, Inc., 736

18 F.2d 485, 488 (9th Cir. 1984) (same); Country Kids 'N City Slicks, Inc. v. Sheen, 77

19 F.3d 1280, 1288 (10th Cir. 1996) (applying copyright infringement analysis to dolls

20 and holding that "a finding of substantial similarity does not require that an

21 infringing work be a 'virtual copy' of a protected one").

**E.   The Originality, Functionality, Merger, and *Scenes-à-Faire* Doctrines Relied upon by Menell Are Inapplicable**

24      Menell argues that, with the exception of

25                              ' the Bratz drawings are not protected by copyright law

26 under the doctrines of originality, functionality, merger and *scenes-à-faire*. Report,

27 ¶¶ 42-54. Again, Menell is wrong on the law.

28

It is well established that the numerous creative choices available to a doll designer ensure sufficient originality for copyright protection if the doll has not been clearly copied from another source -- even under Second Circuit law. See, e.g., Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133, 135 (2d Cir. 2004) ("Even if the record had shown that many dolls possess upturned noses, bow lips, and wide-spread eyes, it would not follow that each such doll - assuming it was independently created and not copied from others - would not enjoy protection from copying"); see also Educational Testing Service v. Simon, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999) (holding that registrations issued by the Copyright Office, as here, "constitute prima facie evidence of the validity of the copyright") (Consuelo, B.M.). Indeed, Menell acknowledges that the BRATZ drawings are original and entitled to copyright protection.[30]   Bryant has also admitted this in his responses to Mattel's Requests for Admission.[31]   Yet Menell has ignored this.

Additionally, in the Ninth Circuit, functionality, merger, and *scenes-à-faire* are typically part of the "independent creation" defense. See, e.g., Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000); Atari Games Corp. v. Nintendo of America, Inc., 1993 WL 207548, at *9 (N.D. Cal. 1993). Here, MGA has admitted that the BRATZ dolls are "derivative" of Bryant's drawings in its filings with the Copyright Office.[32]   Moreover, MGA has itself sued for infringement of the drawings, claiming, successfully, that they are protectible and were infringed by competitors' dolls.[33]   Accordingly, MGA is estopped from

---

[30]   Menell Depo. at 136:11-12 , Corey Dec., Exh. 13.

[31]   See, e.g., Carter Bryant's Responses to Mattel, Inc.'s Sixth Set of Requests for Admission to Carter Bryant, Response Nos. 18, 50, 71, 92, Proctor Dec., Exh. 86.

[32]   Proctor Dec., Exh. 85.

[33]   See Affidavit of Isaac Larian dated July 2, 2002, at ¶ 12, filed in ABC International Traders, Inc. (d/b/a MGA Entertainment) v. Toys & Trends (Hong Kong) Limited, et al., High Court of the Hong Kong Special Administrative Region, Court of First Instance, Civ. Action No. 2152 (2002); see also Proctor Dec., Exhs. 88-89.

Jf209/2468756.4

1    asserting the independent creation defense, making these doctrines inapplicable even
2    if they were correctly applied, which they were not.[34]

3    .    **F.    Menell Also Failed to Apply the "Inverse Ratio" Rule**

4        It is well established that the Ninth Circuit requires a lower standard of proof
5    of substantial similarity when a high degree of access is shown. See, e.g., Three
6    Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case
7    law, substantial similarity is inextricably linked to the issue of access. In what is
8    known as the "inverse ratio rule," we require a lower standard of proof of substantial
9    similarity when a high degree of access is shown."); Smith v. Jackson, 84 F.3d 1213,
10   1218 (9th Cir. 1996) (same).

11       Here, Menell concedes access by MGA employees to Bryant's Bratz
12   drawings.[35]  Indeed, it is undisputed that MGA had complete access to Bryant's
13   drawings -- MGA even registered them with the Copyright Office.[36]  However,
14   relying on Second Circuit law, Menell argues that the "inverse ratio" rule should not
15   be applied as part of the substantial similarity analysis.[37]  His failure to consider the
16   lower standard of proof of similarity between the drawings and the dolls based on
17   MGA's undisputed access is also independently sufficient to make his copyright
18   infringement analysis unreliable.[38]

19       **G.    Menell Failed to Account for the Intended Audience**

20       In determining whether the defendant has taken the total concept and feel of
21   the plaintiff's work, the Ninth Circuit uses the "reasonable person in the intended
22   audience" standard. Johnson Controls, Inc. v. Phoenix Control Sys., Inc., 886 F.2d

23   _____

24   [34]   Further, "if a defendant has actually copied the plaintiff's work, it is unlikely to be allowed to rely on merger to avoid liability." Matthew Bender & Co., Inc. v.
25   West Pub. Co., 158 F.3d 674, 688, n. 12 (2d Cir. 1998); Atari Games Corp. v. Nintendo of Am., Inc., 1993 WL 207548, at *9 (N.D. Cal. 1993) (accord).

26   [35]   Report, ¶ 39; Menell Depo., at 249:22-250:11, Corey Dec, Exh. 13.
     [36]   Proctor Dec., Exhs. 71-75.
27   [37]   Menell Depo., at 248:9-249:21, Corey Dec., Exh. 13.
     [38]   See Menell Depo. at 248:9-252:6 (admitting that he did not apply the "inverse
28   ratio" rule as party of his substantial similarity analysis), Corey Dec., Exh. 13.

1173, 1176, n. 4 (9th Cir. 1989).  If works are to be used by children, their relative
lack of sophistication is taken into account when a comparison of similarities is
made.  <u>Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.</u>, 562 F.2d
1157, 1166 (9th Cir. 1977).  Here, Menell has completely disregarded that the
intended audience for BRATZ is children, who will not be able to focus on the
hypercritical, comparative analysis of body elements and facial features relied upon
by Menell for his conclusions.[39]  For example, preteen girls will not be able to
distinguish between the "concepts," "sketches," "studies," "drawings," "models," and
"sculpt w/Face Paint" that make up Menell's "abstractions pyramid."[40]  Likewise,
children will not use Menell's "filtration colander" (*i.e.*, apply *scenes-à-faire*,
originality, merger and functionality doctrines) before purchasing BRATZ dolls.[41]
<u>See</u>, <u>e.g.</u>, <u>Krofft</u>, 562 F.2d at 1166 (children "certainly are not bent upon detecting
disparities or even readily observing upon inspection such fine details as the point at
which the necks are molded") (citations omitted).

### H.    Menell Misstates California Employment Law

Menell misstates California employment law.  For example, Menell tries to
show the purported import of changes made to Mattel's inventions agreement in
2004 by stating that

Of course, as explained more fully in Mattel's Motion in Limine No. 1, the
rule that sometimes allows evidence of the parties' performance *under the contract*
*at issue* does not extend to evidence that one party entered different contracts on
different terms with different parties years later.  That evidence has no bearing on
the parties' intent in entering the original contract, and is therefore irrelevant and

---

[39] Menell Depo. at 265:12-267:19, Corey Dec., Exh. 13.
[40] <u>See</u> Report, ¶ 42 and C-3.
[41] Report ¶ 44.

1  inadmissible.  Atlas Assurance Co. v. McCombs Corp., 146 Cal. App. 3d 135, 143
2  (1983) (excluding evidence related to party's intent where evidence was not tied to
3  the intention of the parties at the time the agreement was made).

4  **VII.  MENELL'S TESTIMONY SHOULD BE EXCLUDED BECAUSE THE**
5  **JURY MIGHT DEFER TO HIS OPINIONS ON MATTERS OF LAW**

6      Any marginal value in Menell's testimony would be outweighed by the unfair
7  prejudice to Mattel.  Courts have long recognized that expert testimony is given an
8  aura of infallibility by jurors.  If Menell is allowed to provide his own understanding
9  of contract or copyright law, as opposed to allowing the otherwise relevant and
10  admissible evidence speak for itself, his testimony will necessarily incline the jurors
11  to relinquish their own role as triers of fact and adopt the view of the expert.  See,
12  e.g., United States v. Purham, 725 F.2d 450, 454 (8th Cir. 1984) ("the unfair
13  prejudice which might have resulted because of the aura of reliability and
14  trustworthiness that surrounds scientific evidence outweighed any small aid the
15  expert testimony might have provided"); United States v. Frazier, 387 F.3d 1244,
16  1263 (11th Cir. 2004) (same).

17      The unfair prejudice to Mattel here would be particularly acute.  At its core,
18  this case is largely about how Bryant's invention assignment agreement should be
19  interpreted and whether MGA has infringed Mattel's rights in Bryant's drawings.  If
20  Menell is allowed to testify, his opinions could influence the jurors to defer to his
21  reading of the contract and interpretation of copyright law instead of the Court's
22  instructions.  That is improper.  Menell's testimony should thus be precluded under
23  both Rule 403 and Rule 702.  See, e.g., Jinro Am. Inc. v. Secure Invs., Inc., 266 F.3d
24  993, 1004 (9th Cir. 2001) ("even assuming expert testimony was admissible, it was
25  far more prejudicial than probative and should have been excluded under Rule
26  403").

27      Further, Menell's report should be excluded because considerations of undue
28  delay, waste of time, and needless presentation of cumulative evidence will

1   substantially outweigh the probative value of such evidence.  See Fed. R. Evid. 403.
2   Menell's opinions are unhelpful to the jury and unreliable because they ignore key
3   facts and are based on the wrong law.  If Menell were permitted to testify, Mattel
4   would be forced to cross-examine him on his understanding of specific cases to test
5   his proffered specialized knowledge of the relevant legal standards.  It would result
6   in a mini-trial predominantly on legal issues.  Admitting his testimony would
7   thereby cause undue delay and result in a substantial waste of time.  See, e.g.,
8   United States v. Stevens, 935 F.2d 1380, 1399 (3d Cir. 1991) (finding expert
9   testimony properly excluded because its probative value was outweighed by
10   concerns of "undue delay, waste of time, or needless presentation of cumulative
11   evidence").  The Court should instruct on the law, not Menell.

12                              **CONCLUSION**

13          For the foregoing reasons, Mattel respectfully requests that this Court enter an
14   order excluding the testimony of Peter Menell.

15

16   DATED:  April 14, 2008              QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP
17

18                                       By  John Quinn  OS.
19                                          John B. Quinn
                                            Attorneys for Mattel, Inc.
20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On April 14, 2008, I served true copies of the following document(s) described as

**MOTION *IN LIMINE* NO. 12 OF MATTEL, INC. TO EXCLUDE THE TESTIMONY OF PETER S. MENELL**

on the parties in this action as follows:

Thomas J. Nolan
**Skadden, Arps, Slate, Meageher & Flom LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071

Mark E. Overland
David C. Scheper
Alexander H. Cote
**Overland Borenstein Scheper & Kim LLP**
601 West Fifth Street, 12th Floor
Los Angeles, CA 90017

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 14, 2008, at Los Angeles, California.

NOW LEGAL -- Dave Quintana

20253/2470002.1