QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>OPPOSITION TO MOTION OBJECTING TO DISCOVERY MASTER'S MARCH 17, 2008 ORDER RE MOTION TO COMPEL PRODUCTION OF DOCUMENT NOS. M 0199767-68 AND M 0199769-70<br><br>[Declaration of Christopher E. Price filed concurrently herewith]<br><br>[Federal Rule of Civil Procedure 72(a); Local Rule 72-2.1]<br><br>Hearing Date: April 28, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 2

I. THE DISCOVERY MASTER'S ORDER WAS CORRECT, AND CERTAINLY WAS NOT "CLEARLY ERRONEOUS" .................................. 2

II. MICHAEL MOORE'S DECLARATION ESTABLISHES THAT THE DOCUMENTS ARE PRIVILEGED ................................................................ 3

III. THE DOCUMENTS SHOULD NOT BE PRODUCED IN REDACTED FORM .......................................................................................... 5

IV. MGA MISREPRESENTS MATTEL'S INVESTIGATION ........................... 9

CONCLUSION .................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page**

*Allen v. Burns Fry, Ltd.*,
  1987 WL 12199, at * 2 (N.D. Ill. 1987) ................................................................... 7

*Asuncion v. Met. Life Ins. Co.*,
  493 F. Supp. 2d 716 (S.D.N.Y. 2007) ..................................................................... 8

*Clarke v. American Commerce Nat'l Bank*,
  974 F.2d 127 (9th Cir. 1992) .................................................................................. 5

*In re CV Therapeutics, Inc. Securities Litigation*,
  2006 WL 1699536 (N.D. Cal. June 16, 2006) ........................................................ 5

*Dang v. Cross*,
  2002 WL. 432197 (C.D. Cal. 2002) ........................................................................ 2

*First Chicago Int'l v. United Exchange Co. Ltd.*,
  125 F.R.D. 55 (S.D.N.Y. 1989) .............................................................................. 8

*Grimes v. City and County of San Francisco*,
  951 F.2d 236 (9th Cir. 1991) .................................................................................. 2

*Philadelphia v. Westinghouse Electric Corp.*,
  205 F. Supp. 830 (E.D.Pa. 1962) ........................................................................ 7, 8

*Scanlon v. Bricklayers and Allied Craftworks*,
  242 F.R.D. 238 (W.D.N.Y. 2007) ........................................................................... 4

*In re Spalding Sports Worldwide, Inc.*,
  203 F.3d 800 (Fed. Cir. 2000) ................................................................................. 7

*Star Editorial, Inc. v. U.S. Dist. Court for Cent. Dist. of California*,
  7 F.3d 856 (9th Cir. 1993) ....................................................................................... 3

*U.S. v. Frederick*,
  182 F.3d 496 (7th Cir. 1999) ................................................................................... 3

*U.S. v. Laurins*,
  857 F.2d 529 (9th Cir. 1988) ................................................................................... 3

*In re Underwriters at Lloyd's*,
  666 F.2d 55 (4th Cir. 1981) .................................................................................... 3

*United States v. White*,
  970 F.2d 328 (7th Cir. 1992) ................................................................................... 5

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ..................................................................................... 6, 7, 8, 10

*Wolpin v. Philip Morris Inc.*,
  189 F.R.D. 418 (C.D. Cal. 1999) ............................................................................. 2

*Yent v. Baca,*
  2002 WL. 32810316 (C.D. Cal. 2002) .................................................................. 2

**Statutes**

Cal. Civ. Proc. Code § 128.7 ............................................................................... 10

Fed. R. Civ. P. 11 ................................................................................................ 10

Fed. R. Civ. P. 72(a) ............................................................................................. 2

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The Court should affirm the Discovery Master's March 17, 2008 order denying MGA's motion to compel the production of two documents, Bates numbered M 0199767-68 and M 0199769-70 (the "Documents"). MGA attempts to clutter its appeal with extraneous issues, but the simple question decided by the Discovery Master and now before the Court is whether the Documents are privileged. The declaration of Mattel's in-house counsel, and the Documents themselves (which were reviewed by the Discovery Master *in camera*), establish that the Documents were confidential communications with outside counsel for the purposes of obtaining legal advice. Nothing more is required. Attorney-client privilege protects the Documents, and the Discovery Master's order should be affirmed.

MGA contends that the Documents must be produced in redacted form because they contain "underlying facts." This does not make the Documents or portions thereof non-privileged. Almost all privileged communications contain references to facts – legal advice is not usually requested or given in a vacuum. Compelled production of privileged communications in a redacted format would just be a back-door way of obtaining information about the matters being considered and the advice being given in confidence to a client at a particular point in time. It would disclose attorney thought processes and give a clear view into what facts and evidence were considered important to a party's legal opponent.

The Supreme Court's decision in Upjohn Co. v. United States is directly on point. The Court held that notes and questionnaires taken during an investigation were privileged because they were created to communicate information to an attorney for the purpose of providing legal advice. Although the

facts referenced in the communications may have been discoverable by other means, the communications themselves were fully protected.

Accordingly, the Court should deny MGA's motion and affirm the Discovery Master's ruling.

## Argument

### I. THE DISCOVERY MASTER'S ORDER WAS CORRECT, AND CERTAINLY WAS NOT "CLEARLY ERRONEOUS"

The Discovery Master's ruling must be treated as a ruling by a magistrate judge for purposes of review. When a party objects under Rule 72 to non-dispositive rulings by a magistrate judge, the District Court may only "modify or set aside any portion of the magistrate judge's order found to be *clearly erroneous or contrary to law*." Fed. R. Civ. P. 72(a) (emphasis added); see Grimes v. City and County of San Francisco, 951 F.2d 236, 240 (9th Cir. 1991) ("The district court shall defer to the magistrate's orders unless they are clearly erroneous or contrary to law."); Dang v. Cross, 2002 WL 432197, *1 (C.D. Cal. 2002) ("Discovery orders . . . are non-dispositive orders subject to [the clearly erroneous or contrary to law] standard of review").

Under this deferential standard of review, the Discovery Master's order "is 'clearly erroneous' if, after considering all of the evidence, the district court is left with the definite and firm conviction that a mistake has been committed, and the order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Yent v. Baca, 2002 WL 32810316, *2 (C.D. Cal. 2002); Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal. 1999) (same).

Although privilege issues can be reviewed *de novo* where they raise pure questions of law (under the "contrary to law" prong), "if the scope of the privilege is clear and the decision made by the district court is essentially factual . . .

only clear error justifies reversal." U.S. v. Laurins, 857 F.2d 529, 541 (9th Cir. 1988). Accordingly, orders overruling privilege objections are generally reviewed for clear error. See, e.g., Star Editorial, Inc. v. U.S. Dist. Court for Cent. Dist. of California, 7 F.3d 856, 859 (9th Cir. 1993) (refusing to reverse district court's order overruling privilege objections, because it was "not clearly erroneous as a matter of law"); In re Underwriters at Lloyd's, 666 F.2d 55, 57 (4th Cir. 1981) (holding order overruling privilege objections subject to "clearly erroneous" standard of review); U.S. v. Frederick, 182 F.3d 496, 499 (7th Cir. 1999) ("Our review of the judge's ruling on the privilege claims is deferential; we ask not whether the ruling was erroneous but whether it was clearly erroneous, just as when we are reviewing simple fact-findings.") (citations omitted). Accordingly, the Discovery Master's ruling should be reversed only if it is clearly erroneous.

## II. MICHAEL MOORE'S DECLARATION ESTABLISHES THAT THE DOCUMENTS ARE PRIVILEGED

Under any standard of review, the Discovery Master's Order must be upheld, because the Documents are indisputably protected by attorney-client privilege. MGA complains that the Discovery Master based his decision on the "self-serving and conclusory declaration from Mattel's in-house counsel." (Motion, at 2:8). At the outset, because the Discovery Master also reviewed the Documents *in camera*, MGA thus mischaracterizes the basis for the Discovery Master's ruling. Moreover, such an argument gets MGA nowhere because anytime a party claims that a communication is privileged, it must make its proof through a declaration by counsel. Mr. Moore, as counsel for Mattel, created or caused to be created both documents, and conveyed them to outside counsel for purposes of obtaining legal advice. He is the appropriate person to attest to their origins and privileged nature.

MGA also asserts that the Moore Declaration provides insufficient information because it lacks the exact date the Documents were sent or the precise

legal advice being sought. (Motion, at 9:8-10:14.)[1] As the Discovery Master recognized, Mr. Moore's declaration provides evidence supporting the required elements of the privilege. Document M 0199767-68 was created at Mr. Moore's request by a paralegal for the express purpose of communicating it to outside counsel for the provision of legal advice.[2] Document M 0199769-70 was created by Mr. Moore himself, and it records communications he received from outside counsel and additional comments from other in-house counsel. These communications were for the purpose of providing and obtaining legal advice.[3] Both documents were kept in confidence.[4] MGA fails to dispute any of these facts.

Instead, MGA demands more. The kind of information MGA wants, however, is simply not required. A party claiming privilege is not obligated to flirt with waiver when it presents evidence to the court in opposition to a motion to compel. None of MGA's purported authority helps it. In Scanlon v. Bricklayers and Allied Craftworks, 242 F.R.D. 238 (W.D.N.Y. 2007), the specificity of the privilege assertion was not at issue. Rather, the determining factor in the court's finding that the privilege did not apply was that an *in camera* review of meeting minutes revealed that no legal advice had been sought. Id. at 244-25. In the other cases cited by MGA, the issue was not the exactitude of the description of legal advice being sought, but which documents or communications were covered by the privilege. As the Seventh Circuit noted in United States v. White, "the privilege

---

[1] MGA also claims that Mattel fails to identify the "specific communications within the documents that was conveyed for purposes of seeking legal advice." (Motion, at 10:15-16) There is no distinction between the communications within the Documents and the Documents themselves. The Documents themselves constitute or reflect in their entirety communications sent to facilitate the provision of legal advice.
[2] Declaration of Michael Moore, ¶ 4, Exh. 9 to the Declaration of Marcus R. Mumford ("Mumford Decl.").
[3] Id., ¶¶ 4-5.
[4] Id., ¶ 6.

07209/2469611.1
4
MATTEL'S OPPOSITION TO MOTION OBJECTING TO DISCOVERY MASTER'S MARCH 17, 2008 ORDER

must be made and sustained on a 'document-by-document basis' rather than by a 'blanket claim of privilege.'" 970 F.2d 328, 334 (7th Cir. 1992) (finding no privilege because communications were unrelated to the provision of legal advice). Similarly, In re CV Therapeutics, Inc. Securities Litigation, involved a "blanket" claim of privilege as to 335 different documents, sent at different times and for different purposes. 2006 WL 1699536 (N.D. Cal. June 16, 2006), at *6.[5] Despite the "general and conclusory" assertion of the privilege, the court examined each document and found that the majority were protected. Id.

Here, there is no mystery about the two documents at issue. As discussed above, Mr. Moore's declaration describes the circumstances surrounding, and purposes for, the creation of both of them. Further, the Discovery Master has reviewed both documents *in camera*. The assertion of privilege, therefore, is not blanket, general, or conclusory.

### III. THE DOCUMENTS SHOULD NOT BE PRODUCED IN REDACTED FORM

MGA argues that Mattel must produce the Documents in "redacted form based on the fact that both documents contain underlying facts that are not privileged." (Motion, at 14:5-6.) This argument betrays a fundamental misapprehension of attorney-client privilege and confuses communications of facts with the facts themselves. The latter may be discoverable by other means, but not by impinging on the privileged status of the former. As the Supreme Court has

---

[5] In Clarke v. American Commerce Nat'l Bank, 974 F.2d 127 (9th Cir. 1992), the Ninth Circuit upheld a district court's decision requiring an attorney to justify the assertion of a privilege as to billing records on a line-by-line basis. The issue was not with what specificity the elements of privilege were met, but whether each entry in fact was privileged. The focus of the inquiry was whether each statement "reveals specific research or litigation strategy." Id. at 130.

recognized, one of the fundamental purposes served by the privilege is to encourage the communication of relevant facts between counsel and client to allow the provision of informed legal advice. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) ("[T]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."). MGA's approach to the privilege betrays this fundamental purpose. In essence, MGA claims the right to compel the production of all privileged documents – in redacted form – that refer to facts. Such a rule would encompass virtually every document exchanged between an attorney and the client, because informed legal advice cannot be separated from the "underlying facts." Indeed, the confidential communication of certain facts between a client and counsel itself conveys critical information about what was being gathered and considered on a particular date.

According to the Supreme Court, facts conveyed in confidential attorney-client communications are *not* fair game for discovery. In Upjohn, the Court held that investigative notes, just like those at issue here, are protected by attorney-client privilege even though they communicated "underlying facts." 449 U.S. 383, 395-96 (1981). A corporation's in-house counsel conducted an internal investigation, taking notes and having employees answer questionnaires. The opposing party then demanded that the corporation produce the questionnaires and notes reflecting the facts obtained during the investigation. Although recognizing that the facts in and of themselves are not protected by the privilege, the Supreme Court held that the questionnaires and notes taken by counsel during their internal investigation were privileged. Id. at 396.

The Court distinguished between the communications and the privileged facts themselves. Parties are entitled to the latter, but not by discovery of the former. As the Supreme Court noted, if the opposing party was interested in the underlying facts it "was free to question the employees who communicated " those

1  facts to the attorneys. Id. It was not, however, entitled to the attorney notes
2  reflecting those facts.
3        Also instructive is Philadelphia v. Westinghouse Electric Corp., 205 F.
4  Supp. 830, 831 (E.D. Pa. 1962), which was quoted with approval in Upjohn Co.:
5       A fact is one thing and a communication concerning that fact is an
6       entirely different thing. The client cannot be compelled to answer the
7       question, "What did you say or write to the attorney?" but may not
8       refuse to disclose any relevant fact within his knowledge merely
9       because he incorporated a statement of such fact into his
10      communication to his attorney.
11 Upjohn, 349 U.S. at 395-96. MGA might obtain discovery *about* facts referenced in
12 privileged communications. But that does not entitle MGA to the privileged
13 communications between Mattel and its counsel – even in redacted form. For
14 example, if a party is interested in an ex-employees' birthday or last known address,
15 it can seek such information via an interrogatory or through the depositions of
16 knowledgeable witnesses. What it cannot do is demand the production of privileged
17 communications in redacted form that happen to contain those same facts. See In re
18 Spalding Sports Worldwide, Inc., 203 F.3d 800, 806 (Fed. Cir. 2000) (denying
19 request to "dissect" document because entire communication was "a request for
20 legal advice or services"); Allen v. Burns Fry, Ltd., 1987 WL 12199, at * 2 (N.D.
21 Ill. 1987) (denying request to redact "factual" portion of privileged communication
22 because "the presence of factual information . . . does not vitiate the privilege").
23       In any event, it is clear that MGA is not interested in the purported
24 underlying facts. It does not demand a birth date, hire date, or address. Rather, by
25 its own admission MGA seeks information related to what advice Mattel was
26 receiving from its attorneys and what facts those attorneys thought would be
27 relevant to the provision of such advice. (Motion, at 14:18-20.) It is exactly that
28 kind of information that the privilege was designed to protect.

1         The cases relied on by MGA are inapposite. In <u>Asuncion v. Met. Life Ins. Co.</u>, 493 F. Supp.2d 716 (S.D.N.Y. 2007), the privilege did not apply because the factual investigation was related to a determination of benefit eligibility rather than the provision of legal advice. <u>Id</u>. at 721. Similarly, <u>In re CV Therapeutics, Inc. Securities Litigation</u>, the issue was not whether the communications referred to underlying facts, but whether they related to the provision of legal advice. <u>Id</u>. at *4 ("the critical question is the extent to which the communication solicits or provides legal advice or functions to facilitate the solicitation or provision of legal advice").

        On the other hand, <u>First Chicago Int'l v. United Exchange Co. Ltd.</u>, 125 F.R.D. 55 (S.D.N.Y. 1989), is on point. Therein, corporate counsel instructed a bank employee to conduct interviews and communicate the results of those interviews to counsel. The court held that the notes and memorandum created during that process were privileged, despite the fact they contained underlying facts. As the court stated, "the documents created to communicate the results of these investigations to plaintiff's counsel are privileged." <u>Id</u>. at 58.

        Just as in <u>Upjohn</u>, <u>Philadelphia</u>, and <u>First Chicago</u>, so too with the notes (M 0199767-68) made by Mattel's paralegal. The document was created to communicate information to Mattel's legal counsel for the purpose of obtaining appropriate legal advice. That it included references to facts does not require its production in redacted form. If MGA wanted "just the facts" it should have sought them through other means. But as it admits, it does not care about those facts but instead wants to know Mattel's legal counsel's thoughts and intentions.

        The recording (M 0199769-70) Mr. Moore made of instructions from Mattel's outside counsel is even more obviously protected. It records instructions received from outside counsel along with comments made by other in-house attorneys. The document was conveyed to outside counsel. It is not a collection of underlying facts, but a recording of privileged communications for the purpose of obtaining further legal advice.

Accordingly, the Documents are fully protected by attorney-client privilege and need not be produced in redacted form.

### IV. MGA MISREPRESENTS MATTEL'S INVESTIGATION

Although irrelevant to the issue of the attorney-client privilege, MGA spends considerable time falsely asserting that Mattel denies in this litigation that it conducted any inquiry into Bryant or MGA prior to November 2003. MGA's theory is that the Documents prove Mattel wrong because they purportedly reflect Mattel's interest in Bryant and MGA in August 2003. In addition to being irrelevant to the issue of privilege, MGA's argument misstates the facts – apparently in the hope of convincing the Court that these Documents are especially important.

In July 2003, the Wall Street Journal reported that Bryant had submitted Bratz to MGA as part of a fashion doll design contest in 1999 – a time period when Bryant was employed by Mattel. It has been no secret that Mattel has trying to determine in the summer of 2003 whether that statement was true. The Affidavit of Michael Moore submitted in opposition to MGA's motion for terminating sanctions stated, "During the summer of 2003, I, with others, began investigating any potential misconduct by Bryant while a Mattel employee or thereafter. During the course of that investigation I interviewed numerous Mattel employees regarding Bryant and his work for Mattel."[6] Mr. Moore even provided a list of the interviewed employees along with his affidavit.[7] Clearly, Mattel acknowledged that it had conducted inquiries relevant to Bryant and MGA prior to November 2003.

---

[6] Affidavit of Michael Moore, ¶ 6, Exh. 2 to the Mumford Declaration. Mr. Moore's affidavit also records that in the fall of 2003, Mattel was collecting e-mail messages as part of its inquiry. Id. ¶ 10.

[7] Exhibit A to the Moore Affidavit, Exh. 2 to the Mumford Declaration.

        Furthermore, MGA once again confuses the existence of concerns about certain issues with the probability of having specific legal claims. It was not until November 24, 2003 that Mattel obtained documents proving Bryant's disloyalty – which led to this litigation.[8] Mattel obtained from counsel for a party in litigation with MGA in Hong Kong a copy of an agreement between Bryant and MGA that was executed while Bryant was a Mattel employee. Mattel also obtained copies of 17 Bratz design drawings by Bryant.[9] As the Court put it, November 24, 2003 "marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable."[10]

        The "probability" of having meritorious legal claims does not spring into existence *ex nihilo*. Such a probability is typically the result of, rather than the cause of, an inquiry. See Cal. Civ. Proc. Code § 128.7 (requiring "inquiry reasonable under the circumstance" prior to filing complaint); Fed. R. Civ. P. 11 (same). Mattel's efforts to discover the truth about the statement in the Wall Street Journal article in the summer of 2003 does not somehow make confidential attorney-client communications non-privileged. Indeed, in these circumstances it is especially important for clients and counsel to engage in the kind of unimpeded communications that will facilitate provision of informed legal advice. Upjohn, 349 U.S. at 395-96.

---

[8] Affidavit of Michael Moore, ¶¶ 3-4, Exh. 2 to the Mumford Dec.
[9] Id.
[10] Exh. A to the Declaration Christopher E. Price.

## Conclusion

For all of the foregoing reasons, Mattel respectfully requests that the Court deny MGA's Motion.

DATED: April 14, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _____
Timothy L. Alger
Attorneys for Mattel, Inc.