QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>[PUBLIC REDACTED]<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE, ARGUMENT OR REFERENCE TO MATTEL'S ALLEGED MOTIVE IN FILING SUIT, OR RE CONSEQUENCES THEREOF; AND MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Declarations of Jon D. Corey and B. Dylan Proctor filed concurrently herewith]<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>Phase 1<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 21, 2008 at 1:00 p.m., or as soon thereafter as the matter may be heard, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the above-entitled Court for an order precluding MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Carter Bryant and Isaac Larian, and their respective counsel and witnesses, from introducing any evidence or argument concerning, or making reference to, any purported motive of Mattel in filing this lawsuit or the consequences of a verdict for Mattel, including without limitation, any evidence, argument or suggestion that:

- Mattel purportedly "had to" bring this case because it was suffering in the marketplace because of MGA's and Bratz's alleged domination;
- Mattel brought this lawsuit to try to "[REDACTED]" or force it out of business, including but not limited to the testimony of Ron Brawer;
- Mattel aggressively defends against any new entrants in the fashion doll business or that it targets other companies that make fashion dolls for litigation, or that Mattel is litigious;
- Mattel brought this action to increase BARBIE's market share or save Mattel's "[REDACTED]", i.e., BARBIE, including but not limited to, Eric Clark, The Real Toy Story: Inside the Ruthless Battle for America's Youngest Consumers, Ch. 4, at 76-108 (2007);
- Mattel encountered severe financial troubles because of Bratz (or other factors), including but not limited to:
    - Document No. M79731-79758;
    - A "2005 Barbie Spring Line Review" presentation, dated April 15, 2004;
    - An E-mail from S. Ross to T. Kilpin dated April 2, 2004;

- o Another Mattel Tries Hip-Hop Dolls - Firm's Stalwart Barbie loses Market Share, so "Flavas' Will Take on Rivals the 'BRATZ,' Wall Street Journal dated July 21, 2003.
- Tim Kilpin or others at Mattel instituted a plan of action to help Barbie regain market share which was allegedly lost because of Bratz.
- Mattel tried but failed to compete with Bratz and MGA in the marketplace;
- Mattel attempted to "▇▇▇▇," including, but not limited to:
   - o Document No. PMH002273;
   - o Document No. M 79765;
- Mattel thought its house was on fire, including but not limited to:
   - o Mattel Marketing Plan Update, dated March 16, 2004;
- Mattel laid off employees, including, but not limited to:
   - o Deposition Excerpts of Hoi Hoffman-Briggs (describing layoffs); and
- The purported "consequences" if Mattel were to prevail in this case, including that (a) MGA employees will or may lose their jobs; (b) Bratz will or may be taken off the market; or (c) MGA will be deprived of its substantial investment in the Bratz brand.

This motion is made pursuant to Federal Rules of Evidence 401, 402 and 403, on the grounds that: (1) such evidence is irrelevant and immaterial to any of the issues, claims or defenses in this action; and (2) the probative value of such evidence, if any, is substantially outweighed by the probability that its admission will cause undue prejudice, delay, and confusion of the issues to be tried.

This motion is made following the conference of counsel pursuant to Local Rule 7.3, which was held on March 25, 2008, and thereafter.

This Motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities in support thereof, the Declarations of Jon

1 | D. Corey and B. Dylan Proctor, filed concurrently herewith, all pleadings and papers
2 | on file in this action, such other evidence or arguments as may be presented to the
3 | Court, and such other matters of which this Court may take judicial notice.
4 |
5 | DATED: April 14, 2008         QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP
6 |
7 |
                                  By_____
8 |                                   John B. Quinn
                                      Attorneys for Plaintiff
9 |                                   Mattel, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 1

I.    EVIDENCE OF MATTEL'S ALLEGED MOTIVE IN FILING SUIT IS NOT RELEVANT ........................................................................... 4

II.   EVIDENCE OF THE ALLEGED CONSEQUENCES IF MATTEL PREVAILS IS NOT RELEVANT ................................................................. 6

III.  EVIDENCE OF MATTEL'S ALLEGED MOTIVES IN FILING SUIT OR THE CONSEQUENCES IF MATTEL PREVAILS IS INADMISSIBLE UNDER RULE 403 ................................................................ 7

CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

## Cases

Caldwell v. Wal-Mart Stores, Inc.,
   229 F.3d 1162 (10th Cir. 2000) ......................................................................... 4

Fuller v. City Nat. Bank of Huron,
   52 F.2d 865 (D.C.S.D. 1930) ............................................................................. 5

Higgins v. Shenango Pottery Co.,
   99 F. Supp. 522 (D.C. Pa. 1951) ........................................................................ 4

Johnson v. King-Richardson Co.,
   36 F.2d 675 (1st Cir. 1930) ................................................................................ 4

Mardel Securities, Inc. v. Alexandria Gazette Corporation,
   183 F. Supp. 7 (D.C. Va. 1960) .......................................................................... 5

Southern Music Publishing Co., Inc. v. Seeco Records, Inc.,
   704 F. Supp. 704 (S.D.N.Y. 1960) ................................................................. 5, 6

In Re Yarbrough,
   18 F. Supp. 359 (D.C. Ga. 1937) ....................................................................... 5

## Statutes

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................ 6

Fed. R. Evid. 401 ................................................................................................ 4, 12

Fed. R. Evid. 402 ............................................................................................ 1, 4, 12

Fed. R. Evid. 403 .......................................................................................... 7, 11, 12

# MEMORANDUM OF POINT AND AUTHORITIES

## Preliminary Statement

Defendants will likely attempt to introduce evidence as to Mattel's motive in deciding to sue Bryant and the MGA. Among the assertions defendants have made pretrial is that Mattel only brought suit against them after it learned that it could not successfully compete against Bratz in the marketplace; that Mattel is trying to litigate MGA to death or litigating to save its meal ticket. Based on discovery they are collecting, defendants will try to turn the trial into a giant side show of Mattel's alleged financial condition.

Evidence of a plaintiff's motive in filing an action is irrelevant to the merits of its claims. <u>Why</u> a plaintiff decided to sue does not prove or disprove, whether the case is meritorious. All defendants' accusation have nothing to do with who owns the rights to Bryant's Bratz's designs and concepts. Arguments about Mattel's intent in bringing suit could have only one purpose; to smear Mattel and distract the jury.

Even if Mattel's motive in filing suit had some minimal relevance, evidence of it should still be excluded because any probative value is significantly outweighed by the risk of unfair prejudice to Mattel, misleading the jury, wasting time and confusing the issues to be tried.

## Statement of Facts

Defendants have repeatedly argued that Mattel's "real" motive in suing was to cure a business problem--BARBIE was losing market share, and Mattel purportedly chose to sue MGA rather than compete with Bratz. This was a recurring theme of MGA's Motion for Summary Judgment, in which MGA defendants made the following assertions:

-1-  Case No. CASE NO. CV 04-9049 SGL (RNBx)

MATTEL'S MOTION IN LIMINE NO. 2

1  ● [REDACTED]
2  [REDACTED]
3  [REDACTED] "[1]
4  ● "[REDACTED]
5  [REDACTED]
6  [REDACTED]."[2]
7  ● "[REDACTED]
8  [REDACTED]
9  [REDACTED]
10 [REDACTED]
11 [REDACTED]
12 [REDACTED]
13 [REDACTED]
14 [REDACTED]
15 [REDACTED]"[3]
16 ● "[REDACTED]
17 [REDACTED]
18 [REDACTED]
19 [REDACTED]."[4]
20 ● [REDACTED]
21 [REDACTED]."[5]

---

[1] MGA's Parties' Motion for Partial Summary Judgment, dated Mar. 7, 2008 at 1, Proctor Dec., Exh. 54.
[2] Id.
[3] Id. at 1-2.
[4] Id. at 12.
[5] Id.

Other MGA filings demonstrate that the MGA defendants are likely to attempt to introduce evidence of Mattel's layoffs and purported financial troubles as evidence of Mattel's motive for suing MGA:



- "███████████████████████████
███████████████████████████
███████████████████████████
███████."[6]
- "███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
█."[7]
- "███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
█████████."[8]

Thus, rather than address the merits of Mattel's claims, defendants improperly intend to focus on why Mattel has purportedly brought them.

---

[6] MGA's Motion to Compel Documents from Third Party Rights Management Consultants, Inc., dated March 3, 2008 at 2, Proctor Dec., Exh. 99.
[7] Id.

## Argument

### I. EVIDENCE OF MATTEL'S ALLEGED MOTIVE IN FILING SUIT IS NOT RELEVANT

The motive for filing suit is irrelevant. It has nothing to do with who owns Bratz, when Bryant created the Bratz designs or what MGA did to acquire Bratz. Courts have long held that a plaintiff's motives in bringing suit are immaterial:

> The trial of the motives of parties in a civil action has no proper place in a judicial forum. [citations omitted] . . . "If the law concerned itself with the motives of parties new complications would be introduced into suits which might seriously obscure their real merits." The general rule is that, where a claimant is entitled to relief in respect to the matter concerning which he sues, his motives are immaterial.

Higgins v. Shenango Pottery Co., 99 F.Supp. 522, 525 (D.C. Pa. 1951), quoting Johnson v. King-Richardson Co., 36 F.2d 675 (1st Cir. 1930) (striking affirmative defenses that asserted improper motive of plaintiff); see also Caldwell v. Wal-Mart Stores, Inc., 229 F.3d 1162 (10th Cir. 2000) (district court properly granted motion in limine to exclude testimony regarding plaintiff's motive in bringing suit because, absent fraud, "evidence of [plaintiff's] financial motivation to bring the suit was not relevant to any of the issues in this case"); Mardel Securities, Inc. v. Alexandria Gazette Corporation, 183 F.Supp. 7 (D.C. Va. 1960) (defendant asserted unclean hands defense, claiming that plaintiff acquired stock "for the vexatious purpose of

---
[8] Id. at 6.

litigation with the end in view of compelling Carlin to purchase [plaintiff's] stock at an exorbitant price;" but the court rejected this defense, explaining that "we do not believe that [plaintiff's] motives are of any consequence in this derivative action"); Fuller v. City Nat. Bank of Huron, 52 F.2d 865, 869 (D.C.S.D. 1930) (court rejected defendants' claim that plaintiff lacked good faith in filing the action, as "[t]he question of good faith in no manner enters into the rights of this plaintiff to recover upon the claim set forth in this action"); In Re Yarbrough, 18 F. Supp. 359, 361 (D.C. Ga. 1937) ("[I]f the law confers jurisdiction of a case upon a court, it not a fraud upon the court for a party to invoke that jurisdiction; and the court will not inquire into his motive, because it is immaterial.").

In Southern Music Publishing Co., Inc. v. Seeco Records, Inc., 704 F. Supp. 704 (S.D.N.Y. 1960), plaintiff sued for violation of copyright laws. One of the affirmative defenses asserted by defendant was that plaintiff was not entitled to relief because plaintiff's sole purpose in prosecuting the action was to coerce and harass defendant in connection with other actions, and to destroy defendant's reputation. Id., at 705. In granting plaintiff's motion for partial summary judgment and striking the affirmative defense, the Court stated: "[t]he short answer to this defense is that if plaintiff has a valid cause of action, what its purpose is in pursuing it is of no moment in this proceeding." Id.

Here, defendants assert that Mattel brought suit because it purportedly could not beat Bratz in the marketplace. Aside from being false, this contention has no bearing on the merits of this case. If, as Mattel will show at trial, it is the lawful owner of Bratz, it is immaterial how BARBIE has fared in the marketplace. Mattel has every right to pursue and protect its rights in a lawsuit irrespective of the success of any of its products.

Recognizing this, the Discovery Master recently denied discovery allegedly relevant to the "motives" defense (the standard for which is far lower than that for admissibility). In a motion to compel, MGA sought "███████


1   ▮" allegedly concerning layoffs at Mattel, arguing that the documents were
2   relevant to its allegations that Mattel could not compete with Bratz in the
3   marketplace and initiated this action to regain its competitive edge.[9]  Specifically,
4   MGA argued that "▮
5   ▮
6   ▮."[10]  In denying MGA's Motion, the Discovery
7   Master explained:

> the documents MGA seeks have no or such minimal
> relevance to the claims and defenses in the case that any
> burden associated with producing the documents
> outweighs its likely benefit, taking into consideration all of
> the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.[11]

13   Even if Mattel's motive for suing MGA were relevant, which it is not, MGA's
14   proffered evidence is still inadmissible because its marginal probative value is
15   dramatically outweighed by the danger of unfair prejudice to Mattel, confusion of
16   the issues, misleading the jury, and undue delay.  <u>Fed. R. Evid.</u> 403.

## II. EVIDENCE OF THE ALLEGED CONSEQUENCES IF MATTEL PREVAILS IS NOT RELEVANT

Mattel also anticipates that MGA will argue at trial that if Mattel
prevails in this action, it will have a devastating impact on MGA and its business
and employees, and perhaps even the public at large.  For example, MGA will likely

---

[9] <u>See id.</u>
[10] <u>Id.</u> at 2.
[11] Order Denying MGA's Motion to Compel Production of Documents From Third Party Right Management Consultants, Inc. dated April 11, 2008, at pp. 2-3, Proctor Dec., Exh. 100.

1 argue that if Mattel prevails here, MGA will be forced to layoff significant numbers
2 of employees because of the financial devastation it will suffer if it loses its largest
3 source of revenue. MGA will attempt to prejudice the jury by stating that if the jury
4 finds in favor of Mattel, Bratz will or may be taken off the market, potentially
5 disappointing many young girls who now play with this doll. MGA will also likely
6 argue that if it does not prevail, it will be deprived of its substantial investment in
7 the Bratz brand. None of these arguments have anything to do with the merits of the
8 lawsuit. What may befall MGA as the result of an adverse verdict is simply the
9 consequence of its wrongdoing.

10   If the jury finds that MGA does not own Bratz, MGA will not be
11 entitled to keep what it stole. The jury need not concern itself with what will
12 happen when MGA faces an adverse judgment. This case should be decided on its
13 merits, under the law, and not on emotions, sympathies or passion. Evidence of the
14 consequences of a verdict for Mattel should be excluded.

## III. EVIDENCE OF MATTEL'S ALLEGED MOTIVES IN FILING SUIT OR THE CONSEQUENCES IF MATTEL PREVAILS IS INADMISSIBLE UNDER RULE 403

  MGA's real purpose in introducing evidence of Mattel's purported motive for filing suit is to attempt to prejudice the jury against Mattel. For example, Mattel anticipates that MGA will attempt to introduce excerpts from or allude to portions of a book entitled The Real Toy Story, in which the author makes several statements portraying BARBIE and/or Mattel in a negative light, such as stating that: (1) "Barbie is in trouble. Deep Trouble;"[12] (2) feminists have criticized

---

[12] The Real Toy Story, by Eric Clark, at Ch. 4, p. 76, Proctor Dec., Exh. 92.

1  BARBIE;[13] (3) that Mattel was non-responsive to the author's requests for
2  information;[14] (4) the Mattel v. Larian dispute is the "classic David and Goliath
3  clash";[15] (5) the compensation of a former Mattel CEO;[16] (6) Mattel fends off
4  competitors "with the ease of a pit bull facing a rabbit;"[17] and (7) Mattel's defense
5  of its BARBIE brand sometimes "verges on the ludicrous,"[18] and other similar
6  statements. What this particular author's view of BARBIE or Mattel may be has no
7  bearing on this case.[19] If such evidence were admitted, it could prejudice the jury
8  against Mattel and, it would force Mattel to introduce evidence and argument to
9  rebut each and every negative allegation. This would waste countless hours of court
10 time, and would no doubt confuse the jury as to what is at issue.

11      MGA will also likely attempt to introduce evidence of or allude to an
12 article in the Wall Street Journal which discusses Mattel's Flavas brand, and
13 comments that "Mattel Inc. hopes the dolls are hip enough to take on "Bratz."[20] The
14 article also states that Mattel attempted, but failed, to defeat Bratz with a trendier
15 doll in 2002.[21] The article also discusses Mattel's former CEO, Mattel's acquisition
16 of The Learning Company, and Mattel's finances, among other things.[22] As much
17 as the MGA defendants would like this to be a trial about BARBIE or other Mattel
18 products, Mattel's finances and its other business ventures, that is not what this case

---

[13] Id., at 76-77.
[14] Id., at 77.
[15] Id., at 79.
[16] Id., at 83.
[17] Id., at 78.
[18] Id., at 102.
[19] This evidence is also inadmissible because it lacks foundation, constitutes hearsay, improper opinion, and improper opinion testimony.
[20] See "Mattel Tries Hip-Hop Dolls -- Firm's Stalwart Barbie Loses Market Share, So 'Flavas' Will Take on Rivals the 'Bratz'" by Maureen Tkacik, dated July 21, 2003, Proctor Dec., Exh. 95.
[21] Id.

1  is about. Nor is it a trial about which doll is more popular, or which company had
2  more foresight to create a "hipper" doll. Simply put, this trial is about Mattel's
3  ownership in Bratz, and whether or not defendants infringed that interest.
4  Defendants' "motives" evidence will consume undue amounts of time as the parties
5  attempt to prove and rebut allegations that have nothing to do with the case. This
6  will only serve to mislead the jury and confuse the issues.

7        Admission of such evidence would also cause severe prejudice to
8  Mattel. MGA clearly intends to introduce evidence of internal Mattel documents
9  that express concern over BARBIE's performance in the marketplace, Mattel's
10 finances or market share. One such document, the 2005 Barbie Spring Line Review
11 dated April 15, 2004, includes comments like: "███████████████████
12 ████████████████████████████████████████
13 ████████████████████████████████████████
14 ████████████████████████████████████████
15 ████████████████████████"[23] Again, none of these statements will shed any
16 light on the issues in dispute, but they could be used to portray Mattel in a negative
17 light and to inflame the jury's passions and prejudices against Mattel. Mattel would
18 then be required to call witnesses to explain this document and its contents, and the
19 jury will be unable to focus on the core issues, such as when Bryant created his
20 Bratz designs.

21       Similarly, MGA may also attempt to introduce or allude to handwritten
22 notes discussing Bratz and Mattel's "MyScene" product line. These notes are under

---

[22] Id.
[23] Proctor Dec. Exh. 93. Similar documents include: (1) an e-mail sent from S. Ross to T. Kilpin, dated April 2, 2004, Proctor Dec. Exh. 94; (2) a Barbie Marketing Plan dated October 28, 2003 ("A brand in crisis"), Proctor Dec. Exh. 103; and (3) Barbie Marketing Plan dated March 16, 2004 ("The house is on fire!" "Every Score Card Measurement Is Down;" Worst attribute ratings in 45 years of Barbie"). Proctor Dec., Exh. 98.

1  a heading entitled "█████████████████," and include the following
2  comments: "█████████████████"; and "████████."[24] It also includes an
3  attachment entitled "The Bratz Brief," which states that "█████████████
4  ████████████████████████████████████████" on Mattel.[25]
5  MGA will attempt to use this document to portray Mattel as ruthless and litigious,
6  stopping at nothing to destroy a competitor. MGA will attempt to use this document
7  to convince the jury that Mattel brought suit because of its purported financial woes,
8  as evidenced by the unsuccessful acquisition of he Learning Company. Mattel's
9  motives are not relevant to the merits of its claims. But, the prejudicial effect of
10 such evidence can be understated. The jury may be prejudiced against Mattel and
11 seek to "punish" it in this action if the Court were to permit MGA to portray Mattel
12 as overly litigious or vigilant in protecting its market share.
13            Nor is this irrelevant, prejudicial evidence limited to a handful of
14 documents. To the contrary, MGA intends to introduce vast swaths of "motive"
15 evidence. For example, Ronald Brawer, a former Mattel employee, testified in
16 deposition that he believes Mattel's motive for suing MGA is to financially bury
17 MGA.[26] Brawer based his opinion on the fact that Mattel had sued him shortly after
18 he left Mattel, and asserted a RICO charge against MGA.[27] Brawer also testified
19 that while he was at Mattel, the phrase "█████████████████" was "███"
20 bantered around, and that this was discussed in connection with MGA.[28] But
21 Brawer's opinions about why Mattel purportedly sued MGA are clearly
22 inadmissible because they are speculative, lack foundation, constitute improper
23 opinion evidence, and improper character evidence. Nevertheless, given their

---

[24] Proctor Dec., Exh. 96.
[25] Proctor Dec., Exh. 97.
[26] Deposition Transcript of Ron Brawer at 231:9-14, Corey Dec., Exh. 19.
[27] Id. at 231:19-232:1.
[28] Id. at 232:2-8.

loaded contents, Mattel will be forced to spend valuable time rebutting these opinions if offered. This waste of time and prejudice is uncalled for.

The same is true of evidence of Mattel's layoffs, which MGA claims somehow show why Mattel "had to" sue MGA. MGA has repeatedly questioned Mattel's witnesses about layoffs at Mattel. For example, in deposition, Ms. Hoi Hoffman-Briggs was asked to list the names of individuals who were laid off by Mattel.[29] Mattel's layoffs have no legitimate bearing on this case -- as the Discovery Master correctly found in denying even discovery into it -- but might cause some jurors to be hostile toward Mattel for letting its employees go. This is precisely the kind of prejudicial evidence that Rule 403 is designed to exclude.

The Court has imposed strict time limits for the trial of this action. They cannot be met if the vast range of motive evidence defendants will seek to introduce were permitted. Defendants are seeking to confuse the issues, prejudice Mattel and mislead the jury. They should not be permitted to do so.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court exclude any evidence, argument, or suggestion concerning any purported motive of Mattel in filing this lawsuit or the consequences of a verdict for Mattel.

DATED: April 14, 2008              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By_____/s/_____
John B. Quinn
Attorneys for Plaintiff
Mattel, Inc.

---

[29] Deposition Transcript of Hoi Hoffman-Briggs pp. 103:3-109:3, Corey Dec., Exh. 18.

70775.1
-11-    Case No. CASE NO. CV 04-9049 SGL (RNBx)
MATTEL'S MOTION IN LIMINE NO. 2