QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059 and<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 13 TO EXCLUDE EXPERT TESTIMONY OF MARY BERGSTEIN, ROBERT TONNER, AND DEBORA MIDDLETON |
| AND CONSOLIDATED ACTIONS | |
| | MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Declarations of Jon D. Corey and B. Dylan Proctor and Notice of Lodging filed concurrently] |
| | Date:      May 21, 2008<br>Time:      1:00 p.m.<br>Place:     Courtroom 1 |
| | **Phase 1**<br>Pre-Trial Conference:     May 5, 2008<br>Trial Date:     May 27, 2008 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 21, 2008, at 1:00 p.m. or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Stephen G. Larson, located at Courtroom 1 of the above-entitled Court, 3470 Twelfth Street, Riverside CA 92501, plaintiff and counterclaimant Mattel, Inc. ("Mattel") will, and hereby does, move the Court in limine for an order precluding MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian and Carter Bryant from asserting or relying on: (1) expert testimony of Mary Bergstein; (2) expert testimony of Robert Tonner; and (3) expert testimony of Debora Middleton.

This Motion is made pursuant to <u>Federal Rules of Evidence</u> 401, 402, 403 and 702 on the grounds that such evidence and argument is irrelevant, that any minimal probative value of any such evidence is substantially outweighed by its undue prejudice to Mattel and the risk of confusion to the jury, and that the anticipated testimony of Bergstein, Tonner, and Middleton is not "scientific, technical, or other specialized knowledge," invades the unique province of the jury, lacks foundation and is without a satisfactory basis, and contains legal conclusions.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Jon D. Corey and B. Dylan Proctor and Notice of Lodging filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

1

<u>Statement of Rule 7-3 Compliance</u>

2      Before filing this motion, counsel met and conferred regarding the subject

3   matter of the motion on March 25, 2008, and thereafter.

4

5   DATED:  April 14, 2008            QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
6

7                                     By _____
                                         John B. Quinn
8                                        Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 3

I.     LEGAL STANDARDS APPLICABLE TO THIS MOTION ........................... 3

II.    BERGSTEIN SHOULD BE PRECLUDED FROM TESTIFYING ABOUT PURELY FACTUAL MATTERS ....................................................... 5

III.   EXPERT TESTIMONY FROM ROBERT TONNER SHOULD BE EXCLUDED ................................................................................................ 6

      A.     Tonner Opinions Regarding Bryant's Credibility and the Likelihood that Bryant's Account is True Invade the Province of the Jury and Should Be Excluded ............................................. 6

      B.     Tonner Should Be Prevented From Providing Unsupported and Speculative Opinions Regarding the Motives, Intentions, and Actions of Others, and What Might Have Been ...................................... 7

      C.     Tonner Should Be Precluded From Testifying Regarding What Were The Relative Contributions of Bryant and MGA to the Final Bratz Creative Product ............................................................ 10

      D.     The Court Should Exclude Testimony Regarding Tonner's Charity Work As Irrelevant ................................................................ 11

IV.   EXPERT TESTIMONY FROM DEBORA MIDDLETON SHOULD BE EXCLUDED ................................................................................................ 12

      A.     Middleton's Opinions Comparing Byant's Drawings to MGA Artwork From 2003 Lacks Foundation and Is Without Adequate Support ................................................................................................ 12

      B.     Middleton Should Be Precluded From Testifying About Purely Factual Matters ............................................................................ 14

V.     BERGSTEIN, MIDDLETON, AND TONNER'S OPINIONS CONTAINING LEGAL ARGUMENT AND CONCLUSIONS SHOULD BE EXCLUDED ............................................................................ 15

A.    The Court Should Exclude Bergstein and Tonner's Opinions
      Regarding "The Public Domain" and "Prior Art" Because They
      Constitute Legal Argument .................................................................. 15

B.    Tonner and Middleton's Conclusions Regarding Whether MGA
      Copied Bryant's Bratz Drawings Should Be Excluded As
      Improper Legal Conclusions ................................................................. 19

VI.   BERGSTEIN AND TONNER SHOULD BE PREVENTED FROM
      REFERRING TO THE TIMING OF THE CREATION OF BRATZ ............. 21

CONCLUSION ........................................................................................... 23

1

<div align="center">

# TABLE OF AUTHORITIES

</div>

2

<div align="right">

**Page**

</div>

3

<div align="center">

**Cases**

</div>

4

5

Aetna Life Ins. Co. v. Ward,
  140 U.S. 77 (1891) ............................................................................. 7

6

Aguilar v. Int'l Longshoremen's Union Local # 10,
  966 F.2d 443 (9th Cir. 1992) ........................................................... 17

7

8

Andrews v. Metro N. Commuter R.R. Co.,
  882 F.2d 705 (2d Cir.1989) ................................................................ 4

9

City of Grass Valley v. Newmont Mining Corp., Slip Copy,
  2008 WL 544388 (E.D.Cal.) ............................................................... 4

10

11

Crow Tribe of Indians v. Racicot,
  87 F.3d 1039 (9th Cir. 1996) ........................................................... 20

12

DSU Medical Corp. v. JMS Co., Ltd.,
  296 F. Supp. 2d 1140 (N.D.Cal. 2003)..................................... 4, 10, 11, 18

13

14

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
  509 U.S. 579 (1993) .............................................................. 3, 4, 7, 9, 22

15

DePaepe v. General Motors Corp.,
  141 F.3d 715 (7th Cir. 1998) .............................................................. 9

16

17

Edmonds v. Illinois Central Gulf Railroad Co.,
  910 F.2d 1284 (5th Cir. 1990) ........................................................ 3, 6

18

Gomez v. Ryan, Slip Copy,
  2007 WL 2109168 (E.D.Cal.) ............................................................. 5

19

20

Kumo Tire v. Carmichael,
  526 U.S. 137 (1999) ................................................................ 3, 4, 14, 19

21

McGlinchy v. Shell Chemical Co.,
  845 F.2d 802 (9th Cir. 1988) ............................................................. 3

22

23

Montgomery v. Aetna Casualty & Surety Co.,
  898 F.2d 1537 (11th Cir. 1990)........................................................ 17

24

Mukhtar v. Cal. State Univ., Hayward,
  299 F.3d 1053 (9th Cir. 2002)......................................................... 20

25

26

Nimely v. City of New York,
  414 F.3d 381 (2d. Cir. 2005) ............................................................. 9

27

Owen v. Kerr-McGee Corp.,
  698 F.2d 236 (5th Cir. 1983) ...................................................... 17, 20

28

<div align="center">iii</div>

In re Rezulin Prods. Liab. Litig.,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................................ 4, 9, 15, 18

Rogers v. Raymark Indus., Inc.,
   922 F.2d 1426 (9th Cir. 1991) ............................................................ 22

Ruvalcaba v. City of Los Angeles,
   64 F.3d 1323 (9th Cir. 1995) ............................................................... 4

Salem v. U.S. Lines Co.,
   370 U.S. 31 (1962) ............................................................................. 5

U.S. v. Duncan,
   42 F.3d 97 (2d Cir. 1994) ................................................................... 7

United States v. Hicks,
   103 F.3d 837 (9th Cir. 1996) .................................................. 4, 12, 14, 18

United States v. Scop,
   846 F.2d 135 (2d Cir. 1998) ................................................................ 7

**Statutes**

17 U.S.C. § 101 .......................................................................................... 17

Fed. R. Civ. P. 702 ....................................................................................... 7

Fed. R. Evid. 403 ....................................................................................... 17

Fed. R. Evid. 701 ................................................................................... 5, 15

Fed. R. Evid. 702 ................................................................ 3, 4, 5, 10, 15, 19

**Other Authorities**

"Wikipedia: About", *available at* http://en.wikipedia.org/wiki/Wikipedia:About,
   *last visited* April 12, 2008 .......................................................... 19

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

This motion is to prevent three of MGA's expert witnesses from providing factual commentary to the jury that should be provided by lay witnesses, commenting on the credibility of witnesses, offering legal opinions, and providing expert opinions that are not properly supported by reasonable analysis or methodology.

Among other things, Mary Bergstein and Robert Tonner intend to opine regarding the timing of Bratz' creation.  Without so much as reading Bryant's deposition or interviewing him, Bergstein vouches for Bryant's claim that he created Bratz in August 1998 based on what she views to be similarities between advertisements in an August 1998 Seventeen Magazine and Bryant's drawings. Bergstein acknowledges that Bryant could have seen the magazine _after_ August 1998 and that she does not have any reason (other than Bryant's say-so) for believing Bryant's chronology of events.

Likewise, having read Bryant's account of Bratz creation in Bryant's deposition, Tonner concludes that the account of seeing Missouri high school kids while driving by and going home to draw Bratz "rang true" to him. Viewing similarities between images in the Seventeen Magazine and Bryant's drawings, Tonner also concludes that Bryant was telling the truth.  Any testimony by thse witnesses about the date when Bryant created Bratz is without foundation, wholly speculative, invades the province of the jury to judge credibility, and will only confuse the jury by giving Bryant's account the endorsement of an "expert."  Indeed, like Bergstein, Tonner recognizes that Bryant may not have viewed the Seventeen Magazine at the same time that he drew Bratz, and that he could have seen students in the schoolyard at a different time.

Bergstein intends to opine that the concept for Bratz was a mere regurgitation by Bryant of a variety of cultural influences, such as Betty Boop,

Bambi, and Ally McBeal – which Bergstein asserts were in the "public domain" and Bryant's consciousness when he created Bratz.  Tonner, in turn, references what he calls "prior art" that he believes was "in the air" and influenced Bryant's design of Bratz.  Bergstein and Tonner's testimony regarding what Bryant knew or did not know, and what influenced him in the creation of Bratz, is pure speculation.  Bergstein has neither spoken with Bryant nor read his deposition.  Tonner read some of Bryant's deposition, but nowhere does it address the cultural references he now points to.  Moreover, the concepts of "public domain" and "prior art" are legal concepts used in copyright law, and Bergstein and Tonner's misuse of the terms (apparently to mean cultural influences) is likely to confuse the jury about the copyright issues in this case.

Both Tonner and Middleton attempt to opine regarding what portion of Bratz should be credited to Bryant, as opposed to MGA.  Tonner – without any reasoned analysis based on reliable principles and methods – actually puts a number on their relative contributions.  Middleton, comparing only MGA artwork from 2003 against Bryant's pre-MGA drawings, concludes that there is no correlation between them, that MGA did not "copy" Bryant's work.  Middleton concludes that MGA, not Bryant, is responsible for the look and feel of Bratz artwork.  Middleton's opinions are unsound due to her failure to review drawings from 2000-2003.  Tonner likewise improperly opines, based on his comparison of Bryant's pre-MGA drawings to the Bratz dolls, that the Bratz dolls are not "copies" of Bryant's drawings.  This is an improper legal conclusion that goes to the ultimate issue in the case and should be excluded.

Middleton should also be excluded from providing expert testimony regarding facts she has learned as a lay person working for MGA.  Her testimony regarding the history of Bratz character artwork at MGA is not properly the subject of expert testimony.

Tonner's expert report contains numerous speculative statements and unsupported leaps of reason regarding the thoughts and intentions of others, and what could or would have been.  Such unsupported views should not be shared with the jury as attention-worthy "expert opinions."  Finally, Tonner should be precluded from discussing his charity work, which can only lead to other experts needing to share their good works so as to be viewed on equally high moral ground as Tonner.  This would waste time and not enhance the jury's understanding of the case in any way.

<u>**Argument**</u>

I.      <u>**LEGAL STANDARDS APPLICABLE TO THIS MOTION**</u>

Expert testimony is admissible only if (1) the purported expert has "scientific, technical, or other specialized knowledge;" (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case.  <u>See</u> <u>Fed. R. Evid.</u> 702; <u>see also</u> <u>Kumo Tire v. Carmichael</u>, 526 U.S. 137, 141 (1999); <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589-92 (1993).

<u>Federal Rule of Evidence</u> 702 requires that an expert have "knowledge, skill, experience, training or education" pertaining to the issues that go beyond" subjective belief or unsupported speculation."  <u>Daubert</u>, 509 U.S. at 588-590. "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."  <u>Edmonds v. Illinois Central Gulf Railroad Co.</u>, 910 F.2d 1284, 1287 (5th Cir. 1990).  "[I]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury."  <u>Id.</u> at 1287.  Courts in the Ninth Circuit do not hesitate to exclude expert testimony that lacks proper foundation or is based on speculation.  <u>See</u>, <u>e.g.</u>, <u>McGlinchy v. Shell Chemical Co.</u>, 845 F.2d 802, 807 (9th Cir. 1988).

To be reliable and thus admissible, an expert's opinion must provide more than "subjective belief or unsupported speculation."  Rather, the opinions must

1  rest upon "good grounds, based on what is known."  Daubert, 509 U.S. at 588-90.

2  "[T]rial judges are responsible for determining whether the knowledge of the expert,

3  whether scientific, technical, or specialized, is based upon the application of reliable

4  theories or techniques."  DSU Medical Corp. v. JMS Co., Ltd., 296 F. Supp. 2d 1140,

5  1146 (N.D.Cal. 2003).

6          The Court has broad discretion in determining whether to admit or

7  exclude evidence.  Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir.

8  1995).  The trial courts act as gatekeepers to exclude expert testimony that is

9  irrelevant or does not result from the application of reliable methods to the facts of a

10  case.  Kumho Tire Co., 526 U.S. at 147.  Expert testimony must rest on a reliable

11  foundation and must be relevant to the task at hand.  Id., at 138.

12          The proponent of the testimony must establish admissibility by a

13  preponderance of the evidence."  DSU Medical Corp., 296 F. Supp. 2d at 1146.  Even

14  if a party is able to satisfy the thresholds of reliability and relevancy under Rule 702,

15  the district court may still "exercise its discretion to exclude expert testimony if it

16  finds that the testimony would waste time, confuse or not materially assist the trier of

17  fact."  United States v. Hicks, 103 F.3d 837, 847 (9th Cir. 1996).  For example, a

18  court should not allow an expert to provide factual narratives that are unnecessary to

19  support his or her opinions, or testify about matters that the jury is capable of

20  understanding without the assistance of expert opinion.  See, e.g., In re Rezulin

21  Prods. Liab. Litig., 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (noting that examples

22  of "expert" testimony that courts have excluded under Rule 702 include "factual

23  narratives"); City of Grass Valley v. Newmont Mining Corp., Slip Copy, 2008 WL

24  544388, *1 (E.D.Cal.) ("For an expert's testimony to be admissible under Rule 702, it

25  must be directed to matters within the witness' scientific, technical, or specialized

26  knowledge and not to lay matters which a jury is capable of understanding and

27  deciding without the expert's help.") (internal punctuation and citations omitted)

28  (quoting Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir.1989);

1   see also Gomez v. Ryan, Slip Copy, 2007 WL 2109168, *10 (E.D.Cal.) ("expert

2   testimony not only is unnecessary but indeed may properly be excluded in the

3   discretion of the trial judge 'if all the primary facts can be accurately and intelligibly

4   described to the jury, and if they, as men of common understanding, are as capable of

5   comprehending the primary facts and of drawing correct conclusions from them as

6   are witnesses possessed of special or peculiar training, experience, or observation in

7   respect of the subject under investigation.'") (quoting Salem v. U.S. Lines Co., 370

8   U.S. 31, 35 (1962)).

9   II.     **BERGSTEIN SHOULD BE PRECLUDED FROM TESTIFYING**

10          **ABOUT PURELY FACTUAL MATTERS**[1]

11                  According to her report, Bergstein expects to testify about what

12   happened during the meeting between Bryant and MGA in October 2000 and what

13   effect it had on the direction the Bratz took.  Bergstein has no personal knowledge of

14   this issue.  Instead, she simply summarizes her understanding of deposition testimony

15   from another case that she was provided by counsel.[2]  Bergstein should be precluded

16   from testifying about this meeting because the jury is perfectly capable of

17   understanding the testimony of lay witnesses who were at the meeting, if they testify

18   about it at trial.  There is nothing about this topic that requires expert testimony.  Cf.

19   Fed. R. Evid. 701 (standards for lay testimony), with Fed. R. Evid. 702 (standards for

20   expert testimony).

21

22       [1]   Bergstein's testimony about BARBIE is subject to a separate motion in limine.

23   See Mattel Inc.'s Motion in Limine No. 9 to Exclude Argument, Evidence, or Expert
     Testimony Regarding Barbie and other Mattel Dolls.

24       [2]   See Deposition of Mary Bergstein, dated April 7, 2008 ("Bergstein Depo."), at

25   116:24-117:14, attached as Exhibit 10 to the Declaration of Jon D. Corey, dated April
     14, 2008 ("Corey Dec.").  Notably, Bergstein has not read any of the deposition

26   transcripts in this case, including the depositions of Carter Bryant and Isaac Larian,
     who were at the meeting.  Id., 13:17-14:1; 118:20-119:1.  Nor has she had any

27   communications with Bryant.  Id., 78:4-9.

28

III.    **EXPERT TESTIMONY FROM ROBERT TONNER SHOULD BE EXCLUDED**[3]

    A.    **Tonner Opinions Regarding Bryant's Credibility and the Likelihood that Bryant's Account is True Invade the Province of the Jury and Should Be Excluded**

Tonner intends to opine that he believes Bryant's account regarding how and when he created Bratz.  Tonner states: ███████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████[4]  Specifically, Tonner credits Bryant's account that Bryant was inspired by the attitude and appearance of students outside of a Missouri high school and went home and made a sketch of them, and that he was inspired by images from Seventeen magazine.[5]

Tonner acknowledges that he has not been asked to determine whether Bryant's creation story is actually true and that he could ███████████████ ██████[6]  Furthermore, Tonner stated that even if it could be proven to him that the drawings were created in 1999 or 2000, he would still find it credible that Bryant arrived at his inspiration for Bratz as he stated, in August 1998, after watching high school students.[7]  Tonner's subjective belief about Bryant's credibility, without more, is irrelevant and inadmissible. See Edmonds, 910 F.2d at 1287 ( "Without more than

---

[3]   Tonner's testimony about BARBIE, Mattel, and other Mattel dolls is subject to a separate motion in limine.  See Mattel Inc.'s Motion in Limine No. 9 to Exclude Argument, Evidence, or Expert Testimony Regarding Barbie and other Mattel Dolls.
[4]   Expert Report of Robert Tonner, dated February 11, 2008 ("Tonner Report"), at 8, 19, attached as Exhibit 52 to the Declaration of Dylan Proctor, dated April 14, 2008 ("Proctor Dec.").
[5]   Tonner Depo., 58:19-59:8, 65:9-65:16, 134:23-135:2, Corey Dec., Exh. 16.
[6]   Id., 123:11-25.
[7]   Id., 125:22-126:5.

1   credentials and a subjective opinion, an expert's testimony that 'it is so' is not

2   admissible."); <u>Daubert</u>, 509 U.S. at 588-90 (an expert's opinion must provide more

3   than "subjective belief or unsupported speculation," rather, the opinions must rest

4   upon "good grounds, based on what is known").

5           Such testimony is inadmissible under <u>Federal Rule of Civil Procedure</u>

6   702 because it does not "assist the trier of fact," but rather "attempts to substitute the

7   expert's judgment for the jury's."  <u>U.S. v. Duncan</u>, 42 F.3d 97, 101 (2d Cir. 1994).  It

8   is a well-recognized principle of our trial system that "determining the weight and

9   credibility of [a witness's] testimony . . . belongs to the jury, who are presumed to be

10  fitted by their natural intelligence and their practical knowledge of men and the ways

11  of men." <u>Aetna Life Ins. Co. v. Ward</u>, 140 U.S. 77, 88 (1891); <u>United States v. Scop</u>,

12  846 F.2d 135, 142 (2d Cir. 1998) ("The credibility of witnesses is exclusively for the

13  determination by jury, and witnesses may not opine as to the credibility of the

14  testimony of other witnesses at trial.") (internal citations omitted).

15          Accordingly, Tonner should be precluded from vouching for Bryant's

16  credibility and the accuracy and truthfulness of his account as expert testimony.  It is

17  the jury's prerogative to decide whether or not to believe a witness.  There is no need

18  for any special expertise to assist the jury in making this decision and there is no

19  reason to believe that experts are any more qualified to render such opinions than are

20  jurors.  The jury will hear Bryant's testimony and may decide for itself whether it

21  rings true.

22      B.      **Tonner Should Be Prevented From Providing Unsupported and**

23              **Speculative Opinions Regarding the Motives, Intentions, and**

24              **Actions of Others, and What Might Have Been**

25          Tonner's report speculates about the thoughts, intentions and actions of

26  others, imagining what people thought or how they might or would have acted, all

27  without any evidentiary support.  For example, Tonner states:

28



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[8] Tonner Report, at 11, Proctor Dec., Exh. 52.

[9] Id., at 13.

[10] Id., at 14.

[11] Id., at 15.

[12] Id.

[13] Id.

[14] Id.

[15] Id., at 17.

[16] Id., at 19.

1    Tonner likewise speculates about what dolls and images Bryant was

2 familiar with when he designed Bratz.  Tonner (like Bergstein) acknowledges he does

3 not know for sure whether Bryant knew of or relied on such influences. But because

4 Tonner views them to be in his view of public consciousness or popular culture, he

5 attributes knowledge of them (subconscious or conscious) to Bryant:



13 The assertion that Bryant – as a designer – would somehow feel "in the air" the

14 influence of dolls and images in the marketplace, which he may not even have seen,

15 is speculative in the extreme and should be precluded.  Daubert, 509 U.S. at 588-90

16 (expert may not opine based on "unsupported speculation").

17    Tonner's claimed area of expertise is doll making, not mind reading.

18 The question of intent is a classic jury question and not one for the experts.  An

19 expert witness cannot purport to testify as to the state of mind of any individual or

20 corporate entity.  Nimely v. City of New York, 414 F.3d 381 (2d. Cir. 2005); see also

21 DePaepe v. General Motors Corp., 141 F.3d 715, 720 (7th Cir. 1998) (error to permit

22 expert to "speculate" that motive for design-change was cost-cutting); In re Rezulin

23 Prods. Liability, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) ("[O]pinions of witnesses

24 on the intent, motives or states of mind of corporations, regulatory agencies and

25 others have no basis in any relevant body of knowledge or expertise.").

---

[17]    Tonner Report, at 14-15, Proctor Dec., Exh. 52.

MATTEL'S MOTION IN LIMINE NO. 13

1    Because it does not require "scientific, technical, or other specialized

2 knowledge" as required by <u>Rule</u> 702 and would invade the unique province of the

3 jury, Tonner should be precluded from offering testimony regarding any part or

4 witness's intent, motives, or what would or could be.

5    C.    **<u>Tonner Should Be Precluded From Testifying Regarding What</u>**

6         **<u>Were The Relative Contributions of Bryant and MGA to the Final</u>**

7         **<u>Bratz Creative Product</u>**

8    Tonner's Rebuttal Expert Report states:



19    Tonner's report provides no explanation for how he arrived at his

20 conclusion that Bryant's contributed only 15-20% of Bratz, with MGA contributing

21 the remaining portion.  <u>Federal Rule of Evidence</u> 702 requires that expert testimony

22 be based upon sufficient facts or data and the product of reliable principles and

23 methods applied reliably to the facts of the case.  <u>Fed. R. Evid</u>. 702; <u>DSU Medical</u>

24 <u>Corp</u>., 296 F. Supp. 2d 1146 (party introducing expert testimony must establish by a

25

26    [18]   Rebuttal Expert Report of Robert Tonner, dated March 17, 2008 ("Tonner

27 Rebuttal Report"), at ¶ 24, attached as Exhibit 63 to the Proctor Dec. (emphasis
added).

28

preponderance of the evidence that the expert's opinion is "based upon the application of reliable theories or techniques").

Tonner provides no explanation regarding how he carved up these contributions and attributed weight to specific activities.  Tonner simply states that, based on his experience, as an ▮▮▮▮▮▮▮▮ the designer who comes up with the idea contributes only 15-20% of the final product, regardless of the product and its success.[19]  Here, "'there is simply too great an analytical gap between the data and the opinion proffered" by Tonner, and his conclusion should be excluded.  <u>DSU Medical Corp.</u>, 296 F. Supp. 2d at 1147.

D.   **The Court Should Exclude Testimony Regarding Tonner's Charity Work As Irrelevant**

In an effort to garner sympathy from the jury and give greater weight to his suspect opinions, Tonner is likely to testify regarding the charity work he has performed through doll-related fundraisers. Tonner's report states:



Tonner's charity work is irrelevant to establish his qualifications as an expert and bears on no relevant issue.  If Tonner is permitted to testify regarding his good works, every expert will need to testify regarding his or her own charity work in order to be perceived by the jury as having the same moral high ground as Tonner.  This would waste considerable time, and may induce jurors to find those experts to be more

---

[19]   Tonner Depo., 104:22-105:2, 105:20-24, Corey Dec., Exh. 16.
[20]   Tonner Report, 2, Proctor Dec., Exh. 52.

1   credible who performed charitable work consistent with a juror's particular

2   sympathies.  See Hicks, 103 F.3d at 847 (court may still "exercise its discretion to

3   exclude expert testimony if it finds that the testimony would waste time, confuse or

4   not materially assist the trier of fact").  Accordingly, evidence regarding Tonner's

5   charitable work should be excluded.

6   IV.   **EXPERT TESTIMONY FROM DEBORA MIDDLETON SHOULD BE**

7         **EXCLUDED**

8         A.   **Middleton's Opinions Comparing Byant's Drawings to MGA**

9              **Artwork From 2003 Lacks Foundation and Is Without Adequate**

10             **Support**

11        Based on her report, Middleton intends to provide the following opinions

12   at trial:



20        Middleton is being offered as an expert to state that current Bratz

21   packaging art is not derived from Bryant's drawings.[22]  But her opinions are not

22   supported by acceptable methodology.  She also has no information about, and has

23   not investigated, the origins of the first Bratz packaging art and its evolution from

---

[21]   Expert Report of Debora Middleton, dated February 11, 2008 ("Middleton Report"), at 10, attached as Exhibit 90 to the Proctor Dec.

[22]   Id.

1   2000 to 2003.[23]  To arrive at her conclusion that MGA's two-dimensional Bratz

2   character art from July 2003 was different than Bryant's pitch book to MGA and other

3   pre-MGA drawings, Middleton simply looks at Bryant's pitch drawings and compares

4   them to the commercial art used in recent Bratz packaging and advertising.  Not

5   surprisingly, she concludes that they are different.[24]  That is the extent of Middleton's

6   analysis.  Middleton simply asserts that when she came to MGA in 2003, the

7   packaging art was different than the Bryant drawings from 2000.  She makes no

8   effort to determine whether there is any kind of connection between Bryant's pre-

9   MGA drawings and <u>any</u> of MGA's two-dimensional character art, including even the

10  very first wave of packaging for Bratz.

11         Middleton compares the original packaging for Bratz to the two-

12  dimensional character art that she was working on in July 2003, noting differences.

13  From these differences, Middleton concludes: ████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████[25]  The fact of the matter is Middleton

16  has no idea whether Bryant or other artists copied Bratz packaging art from Bryant's

17  drawings in the pitch book or any other drawings created while Bryant was employed

18  by Mattel.

19         Moreover, the relevant question – which Middleton does not broach – is

20  whether one came from or was influenced by the other.  Indeed, Middleton

21  acknowledges that she did not █████████████████████████

22  ██████[26] therefore, she cannot comment in any way on how Bryant's pre-MGA

23

24     [23]  Middleton Depo., at 96:21-97:9, 104:8-105:121, 110:5-111:15, Corey Dec.,
25  Exh. 17.
      [24]  Middleton is employed by MGA as its Director of Creative Development.  <u>Id.</u>,
26  at 41:17-18.
      [25]  Middleton Report, at 7-9, Proctor Dec., Exh. 90.
27     [26]  <u>Id.</u>

28

1   drawings compare with MGA's two-dimensional artwork created between 1999 and

2   July 2003.

3           Accordingly, Middleton's testimony is irrelevant and has no value to the

4   jury.  Kumho Tire Co., 526 U.S. at 147 (trial courts act as gatekeepers to exclude

5   expert testimony that is irrelevant or does not result from the application of reliable

6   methods to the facts of a case).

7           Middleton next seeks to opine regarding Bryant's pitch book to MGA:

8       •   

9

10

11

12          No one is asserting in this litigation that MGA cut and pasted the

13   drawings in Bryant's pitch book onto packaging or advertisements – or that Bryant

14   ever intended his conceptual art to be used as character art for marketing.  Bryant has

15   never claimed to be a professional character artist.  But this issue is completely

16   irrelevant – the real question is whether Mattel owns the Bryant drawings of Bratz.

17   And Middleton is not qualified to comment on whether MGA's packaging art is

18   derived from those drawings – she has not investigated any of the facts relating to the

19   origins of the Bratz packaging art, including the artwork created prior to her arrival at

20   MGA in 2003.  Accordingly, there is no value to the jury from Middleton's opinions

21   and they would serve only to waste time and confuse the jury.  See Hicks, 103 F.3d at

22   847.

23   B.   **Middleton Should Be Precluded From Testifying About Purely**

24        **Factual Matters**

25          According to her report, Middleton expects to testify about the history of

26   Bratz's two dimensional Bratz character artwork that is used on Bratz doll packaging,

27

28

promotional materials and in MGA's style guides and the development of a Bratz template for two-dimensional art files.[28]  This testimony is based on Middleton's personal experience as an MGA employee and is lay testimony, not expert testimony.  Compare Fed. Rule Evid. 701 (standards for lay testimony), with Fed. R. Evid. 702 (standards for expert testimony).  See also In re Rezulin, 309 F. Supp. 2d at 541 (Rule 702's requirements of scientific, technical or specialized knowledge ensures expert witnesses will not testify about "lay matters which the jury is capable of understanding" without an expert's help).  For all the foregoing reasons, Middleton should be precluded from providing expert testimony regarding the background on Bratz artwork and the development of a template for Bratz two-dimensional artwork, as described in pages 4-6 of her expert report.

## V.   **BERGSTEIN, MIDDLETON, AND TONNER'S OPINIONS CONTAINING LEGAL ARGUMENT AND CONCLUSIONS SHOULD BE EXCLUDED**

### A.   **The Court Should Exclude Bergstein and Tonner's Opinions Regarding "The Public Domain" and "Prior Art" Because They Constitute Legal Argument**

Bergstein and Tonner intend to opine that the ideas that formed the basis for Bratz, such as disproportionate body ratios, large eyes, and a "funky" attitude were in the "public domain" or existed in "prior art" at the time Bryant created Bratz.  In addition to being irrelevant to the issue of Bratz ownership, these opinions contain impermissible legal conclusions regarding the meaning of "public domain" and "prior art."  This is likely to interfere with the jury's ability to understand the Court's instructions regarding copyright law.  Accordingly, such testimony should be excluded.

---

[27]   Id.
[28]   Middleton Report, at 4-6, Proctor Dec., Exh. 90.

1    In her expert report, Bergstein describes a variety of images which she

2   concludes were in the "████████████" prior to Bryant's creation of Bratz, and which

3   provide "████████████" for Bratz, including Betty Boop's large eyes, Japanese

4   anime, Lisa Frank's artwork, the Ally McBeal and Sex and the City television shows,

5   and others.[29]  Bergstein states:



10   . . . .

14   . . . .

20    Not only are these comparisons irrelevant because Bergstein has seen no

21   evidence to suggest that Bryant was familiar with them or relied on them in creating

22   Bratz,[31] but they contain an improper legal conclusion.  The concept of "public

23

24    [29]   Bergstein Report, at 18-22, Proctor Dec., Exh. 55.

25    [30]   Id., at 18, 22, 23.

26    [31]   Bergstein did not read Bryant's deposition or speak with him in the preparation
     of her opinions.  (Bergstein Depo., 13:14-25, 78:4-9, Corey Dec., Exh. 10.)  Her sole
     basis for believing that Bryant was exposed to influences such as Lisa Frank
27   drawings before he created Bratz was that the works ███████████████████
28   (footnote continued)

domain" is a term of art within copyright law, which has a particular meaning.  The
public domain is generally defined as consisting of works that are either ineligible for
copyright protection or with expired copyrights. No permission whatsoever is needed
to copy or use public domain works.  17 U.S.C. § 101.  But Bergstein uses the term to
refer to available cultural references that are most certainly protected by copyright,
including Ally McBeal, Sex and the City, Sailor Moon, and Lisa Frank artwork.

Given the copyright issues in this case, Bergstein's "expert" opinion
regarding what was already in the "public domain" prior to Bratz is nothing more
than legal argument masquerading as expert testimony. See Aguilar v. Int'l
Longshoremen's Union Local # 10, 966 F.2d 443, 447 (9th Cir. 1992) (legal opinions
are inappropriate expert testimony); Owen v. Kerr-McGee Corp., 698 F.2d 236 (5th
Cir. 1983) (noting that experts cannot give legal conclusions on the stand because
"allowing an expert to give his opinion on the legal conclusions to be drawn from the
evidence both invades the court's province and is irrelevant").

Moreover, Bergstein's opinion of what is in the "public domain" will
likely confuse the jury.  Her status as an "expert" runs the danger of putting an
improper imprimatur on her opinion of what "public domain" means.  As such, it
should be precluded from the jury.  Fed. R. Evid. 403; Montgomery v. Aetna
Casualty & Surety Co., 898 F.2d 1537 (11th Cir. 1990) ("the court must be the jury's
only source of law").

_____
▓▓▓▓▓▓▓▓▓▓▓ when he was young.  (Id., 78:10-79:9.)  Even Bergstein
acknowledges uncertainty about this conclusion, stating that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Id., 79:18-24 (emphasis
added).)  Similarly, Bergstein suggests that Bryant was aware of a Spice Girls song
because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ despite having no
evidence that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Id., 191:16-24.)  This speculation
about Bryant's music listening habits is ridiculous – particularly in an age where a
seemingly infinite array of entertainment sources is available.  Not everyone listens to
"top 40" radio, dance music, or vapid pop music.

1    Moreover, these references to pop culture that Bryant never identified as
2    a source inspiration are totally irrelevant to the issue of who owns Bratz.  Whether
3    Bratz' eyes resemble those of Betty Boop, Bambi, Lisa Frank drawings, and Japanese
4    anime is completely irrelevant.[32]  Such statements as ████████████████
5    ████████████████████████████████  do not provide useful
6    information to the jury regarding the issues in the case.[33]  The jury does not need to
7    know that in Bergstein's experience, ████████████████████████ Ally
8    McBeal or that the media speculated about whether Calista Flockhart, the actress who
9    played Ally McBeal, was anorexic.[34]  Such commentary, which Bergstein may permit
10   in her own classroom, will only waste time and distract the jury.  See DSU Medical
11   Corp. v. JMS Co., Ltd., 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003) ("A trial court
12   may exclude evidence when it finds that 'there is simply too great an analytical gap
13   between the data and the opinion proffered.") (internal citations omitted); In re
14   Rezulin Prods. Liab. Litig., 309 F. Supp. 2d at 541 (expert may not provide factual
15   narratives that are unnecessary to support opinions, or testify about matters jury can
16   understand without the assistance of expert opinion); Hicks, 103 F.3d at 847 (court
17   may exclude expert testimony that would waste time).

18         Bergstein's conclusions are not only based on rank speculation about
19   influences, but she relies on grossly untrustworthy sources.  For example, she quotes
20   from Wikipedia for the notion that ████████████████████████████
21   ████████████████████  (Bergstein Report, 20.)  Wikipedia is an online
22   encyclopedia that is user generated and not fact or source checked, much less peer-
23   reviewed.  It describes itself as follows:

24            Wikipedia is written collaboratively by volunteers from
25            all around the world. . . . Visitors do not need specialized

26   ───────────────────
     [32] Bergstein Report, at 18-22, Proctor Dec., Exh. 55.
27   [33] Id., at 14.
     [34] Id., at 22.
28

qualifications to contribute, since their primary role is to write articles that cover existing knowledge; this means that people of all ages and cultural and social backgrounds can write Wikipedia articles. Most of the articles can be edited by anyone with access to the Internet, simply by clicking the edit this page link. Anyone is welcome to add information, cross-references or citations, as long as they do so within Wikipedia's editing policies and to an appropriate standard. Substandard or disputed information is subject to removal. . . . . Because Wikipedia is an ongoing work to which, in principle, anybody can contribute, . . . newer articles more frequently contain significant misinformation, unencyclopedic content, or vandalism. Users need to be aware of this to obtain valid information and avoid misinformation that has been recently added and not yet removed.

("Wikipedia: About", *available at* http://en.wikipedia.org/wiki/Wikipedia:About, *last visited* April 12, 2008.)  At her deposition, Bergstein acknowledged that she does not permit students to use Wikipedia to research ███████████████ but she used it in forming her opinions in this litigation, to ████████████████████████ ████[35]  When informed that the above passage relating to the influence of Lisa Frank on Bratz is no longer on Wikipedia, she acknowledged that the reason the comment had been taken down from Wikipedia ██████████████████████ ██████████████████████[36]  Bergstein's consultation of Wikipedia clearly does not meet <u>Rule</u> 702's requirement that "an expert, whether basing testimony upon professional studies or personal experience, employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Kumho Tire Co.</u>, 526 U.S. at 152.

    B.    **Tonner and Middleton's Conclusions Regarding Whether MGA Copied Bryant's Bratz Drawings Should Be Excluded As Improper Legal Conclusions**

Tonner's expert report states: ████████████████████████

██████████████████████████████████████████████

---

[35]    Bergstein Depo., 304:15-305:1, Corey Dec., Exh. 10.

1   ███████████████████████████[37]  Tonner's rebuttal report further states: █

2   ██████████████████████████████████████████████████████

3   ████████████████████████████████[38]  Like Tonner, Middleton also

4   concludes ███████████████████████████████████████████████

5   ██████████████████████████████████████████████████████

6   █████████████████████████████████████████████████[39]

7           Whether A is a copy of B is fundamentally a question for the factfinder.

8 <u>See</u> <u>Owen v. Kerr-McGee Corp.</u>, 698 F.2d 236 (5th Cir. 1983) ("allowing an expert to

9 give his opinion on the legal conclusions to be drawn from the evidence both invades

10 the court's province and is irrelevant").  The question of whether MGA's dolls are

11 works that infringe Bryant's works goes to the heart of Mattel's copyright

12 infringement claims against MGA.  Tonner and Bergstein's opinions goes to the

13 ultimate issue in the case, which should be decided by the jury.  While it is well-

14 established that expert testimony concerning an ultimate issue of fact is not per se

15 improper, "an expert witness cannot give an opinion as to her legal conclusion, i.e.,

16 an opinion on an ultimate issue of law."  <u>Mukhtar v. Cal. State Univ., Hayward</u>, 299

17 F.3d 1053, 1066 n.10 (9th Cir. 2002); <u>see also</u> <u>Crow Tribe of Indians v. Racicot</u>, 87

18 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law.

19 Experts interpret and analyze factual evidence.  They do not testify about the law[.]")

20 (internal quotes omitted).  Accordingly, Tonner and Middleton should be precluded

21 from testifying about whether copying occurred.

22

23

24

25   [36]   <u>Id.</u>, 310:6-18.

26   [37]   Tonner Report, at 19, Proctor Dec., Exh. 52.

      [38]   Tonner Rebuttal Report, at ¶ 20, Proctor Dec., Exh. 63.

27   [39]   Middleton Report, at 10, Proctor Dec., Exh. 90.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.   **BERGSTEIN AND TONNER SHOULD BE PREVENTED FROM REFERRING TO THE TIMING OF THE CREATION OF BRATZ**

Bergstein's report and deposition contain several statements regarding the timing of Bryant's creation of Bratz, confirming or supporting Bryant's claim that he made his first drawings in August 1998:



In addition, Bergstein testified that the August 1998 Seventeen magazine was the ████████████ edition of the magazine to examine ███████████████ ████████████████████████████ and that she accepted that because ██ ████████████████████████████████████████[43]

Bergstein's sole basis for concluding that there is evidence that Bryant prepared the drawings that he took to MGA in 1998 is the correlation she sees between his drawings and the images in Seventeen Magazine and that she has no reason to disbelieve Bryant's testimony regarding when he drew Bratz.[44]  This does not amount to an adequate basis for expert testimony purporting to confirm a highly disputed date of creation.  Bergstein does nothing more than note similarities between

---

[40]   Bergstein Report, at 4, Proctor Dec., Exh. 55.
[41]   Bergstein Depo., 136:17-21, Corey Dec., Exh. 10.
[42]   Id., 138:14-16.
[43]   Id., 120:16-121:3.
[44]   Id., at 135:24-136:21.

Bryant's drawings and advertisements which could have been seen or remembered by Bryant at any later date.[45]  This analysis does not satisfy <u>Daubert</u> principles.

Bergstein testified she did not read Bryant's deposition or speak with him.[46]  She admitted the August 1998 Seventeen magazine Bryant claims was the source of his inspiration for Bratz could have been viewed after 1998 and is not ██████████ that Bryant did the drawings in August 1998.[47]  Bergstein testified, Bryant in 1999 could just as easily have been influenced by images that were in the 1998 edition of Seventeen Magazine as from a 1999 edition of Seventeen Magazine.[48] The timing of his creation of the drawings has nothing to do with her opinions, Bergstein said.[49]  Bergstein further acknowledges that she is ████████████ ███████████████████████████████████[50]  Therefore, reference by Bergstein to when Bryant drew his images of Bratz or when Bratz was created is unfounded, speculative, irrelevant, and undermines the jury's role to judge witnesses' credibility.

Bergstein's claim of being an "expert" also poses a real danger by causing a jury to give her unsupported views about the creation of Bratz special weight.  <u>See</u> <u>Rogers v. Raymark Indus., Inc.</u>, 922 F.2d 1426, 1431 (9th Cir. 1991) ("[A] party is not entitled to have an expert testify solely because that witness can eloquently summarize the evidence.  That job belongs to counsel.  The district court properly exercised its discretion to guard against the jury's becoming mesmerized by

---

[45]   <u>Id.</u>, at 131:14-133:19, 134:14-19.
[46]   <u>Id.</u>, at 78:4-9.
[47]   <u>Id.</u>, at 128:7-130:8
[48]   <u>Id.</u>, at 133:15-19, 134:17-19.
[49]   <u>Id.</u>, at 315:16-316:1.  Bergstein testified at deposition that the timing of when Bryant made those first sketches was not important to and had ████████████████ ██ the conclusions she reached in her expert report.  <u>Id.</u>  Because the timing of Bryant's creation of Bratz is irrelevant to Bergstein's opinions, she should not be permitted to refer to it at trial.

1   an 'expert.'").  She simply does not know what she's talking about; she credits

2   Bryant's story but has nothing additional to add in the way of evidence or expertise.

3   Bergstein may unduly influence the jury to erroneously believe that the August 1998

4   date of creation claimed by Bryant and MGA has been established and is beyond

5   dispute.  That is nothing close to correct, and defendants may not short-circuit the

6   jury's factfinding role in this trial by presenting witnesses such as Bergstein who

7   simply parrot Bryant's claims.

8                              **Conclusion**

9           For all the foregoing reasons, Mattel respectfully requests that the Court

10  preclude Mary Bergstein, Robert Tonner, and Debora Middleton from testifying at

11  trial because all their opinions are irrelevant, more prejudicial than probative,

12  unfounded, or improper subjects for expert testimony.

13

14  DATED:  April 14, 2008           QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
15

16                                   By _____
17                                      John B. Quinn
                                        Attorneys for Mattel, Inc.
18

19

20

21

22

23

24

25

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [50]  Id., at 141:15-21.
28

07209/2469372.3

MATTEL'S MOTION IN LIMINE NO. 13