EXHIBIT 1

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   JOHN E. TRINIDAD - #250468
6  jtrinidad@kvn.com
   AUDREY WALTON-HADLOCK- #250574
7  awaltonhadlock@kvn.com
   710 Sansome Street
8  San Francisco, CA  94111-1704
   Telephone: (415) 391-5400
9  Facsimile: (415) 397-7188

10 Attorneys for Plaintiff
   CARTER BRYANT
11

12          UNITED STATES DISTRICT COURT

13          CENTRAL DISTRICT OF CALIFORNIA

14              EASTERN DIVISION

15

16 | CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx)
17 |                               | (consolidated with CV 04-9059 & 05-2727)
   |                    Plaintiff, |
18 |                               | BRYANT'S MEMORANDUM OF
   | v.                            | POINTS AND AUTHORITIES IN
19 |                               | OPPOSITION TO MATTEL'S
   | MATTEL, INC. a Delaware       | MOTION FOR PARTIAL
20 | Corporation,                  | SUMMARY JUDGMENT
21 |                    Defendant. | FILED UNDER SEAL PURSUANT
22 |                               | TO PROTECTIVE ORDER
   | CONSOLIDATED WITH MATTEL,     | Date:    April 22, 2008
23 | INC. v. BRYANT and MGA        | Time:    10:00 a.m.
   | ENTERTAINMENT, INC. v.        | Dept:    Courtroom 1
24 | MATTEL, INC.                  | Judge:   Hon. Stephen G. Larson
25 |                               | Date Comp. Filed:  April 13, 2005
26 |                               | Discovery Cut-Off: Jan. 28, 2008
27 |                               | Pre-Trial Conference:  May 5, 2008
   |                               | Trial Date:  May 27, 2008
28

EXHIBIT 1
PAGE 13

3-24

# TABLE OF CONTENTS

Page

I.  Introduction ...................................................................................................... 1

II. Factual Background ............................................................................................ 3

    A.  Mattel's Employee Agreement is far more limited in scope
    than Mattel now claims. ................................................................................. 3

    B.  Bryant honored all of his obligations to Mattel while
    pitching his Bratz idea to MGA and preparing to transition
    to a new career opportunity ........................................................................... 3

III. Argument ............................................................................................................ 5

    A.  Mattel's claims to Bratz fail because the Employee
    Agreement does not include the sweeping definitions Mattel
    now seeks to assert against Bryant, and even if it did Mattel
    could not enforce such definitions here. ........................................................ 6

        1.  Mattel ignores and misstates controlling principles of
        California contract interpretation (as set forth in
        Bryant's Motion) ............................................................................. 6

        2.  Mattel disregards the actual language of the
        agreement it forced on Bryant, which (as explained in
        Bryant's Motion) does not encompass Bryant's Bratz
        idea and material. ............................................................................ 7

        3.  California Labor Code Section 2870 does not help
        Mattel. ............................................................................................ 8

        4.  Mattel cannot prevail on summary judgment as to any
        of Bryant's Bratz sketches—including the five
        sketches and rough dummy it claims are undisputedly
        its property—because they are not "inventions" and
        were not "conceived or reduced to practice . . during
        [Bryant's] employment" within the meaning of the
        Employee Agreement. ..................................................................... 13

        5.  If the Employee Agreement means what Mattel claims
        (which it does not), it cannot be enforced against
        Bryant. ............................................................................................ 14

    B.  Mattel's copyright infringement claims lack merit, as set
    forth in the MGA parties' opposition brief. ................................................... 16

    C.  Mattel's claims for breach of contract, breach of fiduciary
    duty, and breach of loyalty all fail. ................................................................ 16

        1.  Bryant breached no contractual obligation to Mattel. ............... 16

        2.  Bryant did not owe Mattel any fiduciary duty as a

EXHIBIT 1
PAGE 14

EXHIBIT _____

PAGE _____

i

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

result of his position at Mattel or due to any alleged sharing of confidential information, and breached no duty to Mattel. .......................................................................... 18

    a.   In California, an employee must be an officer, participate in the management of the company, and exercise discretionary authority for a fiduciary relationship to be imposed by law. ................. 18

    b.   Bryant's Employee Agreement and his alleged access to highly confidential information did not transform his ordinary employee relationship into a fiduciary relationship. ......................... 19

       (i)   The Employee Agreement's provisions do not create a confidential relationship as a matter of law. .................................................. 19

       (ii)  Bryant's alleged access to confidential information is insufficient to create a fiduciary relationship. ............................................. 21

  3.   Bryant did not breach his limited duty of loyalty (or any alleged fiduciary duty) by preparing to compete with Mattel *after* leaving his employment. ................................ 23

    a.   Bryant did not directly compete with Mattel while a Mattel employee—and thus he did not breach his duty of loyalty to Mattel. .............................. 25

    b.   Bryant was not required to disclose his efforts to pursue the Bratz idea. ................................................. 28

    c.   Bryant owned the Bratz idea and, thus, his assignment of the idea to MGA cannot be the basis for a claim of breach. ............................................... 30

    d.   Bryant undertook no acts of direct competition with Mattel while still an employee. ............................... 31

D.  Mattel is not entitled to summary judgment on Bryant and MGA's affirmative defenses. ................................................. 33

  1.   Bryant's affirmative defenses based on applicable statutes of limitations, laches, waiver, consent, and estoppel must go to the jury, as set forth in the MGA parties' opposition brief. ............................................. 33

  2.   Bryant's Phase I unclean hands defense must go to the jury. ..................................................................... 33

IV.   Conclusion ............................................................................ 37

**EXHIBIT 1**
**PAGE 15**

ii

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT
PAGE _____

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

Page(s)

4   *Abraham Zion Corp. v. Lebow,*
      593 F. Supp. 551 aff'd, 761 F. 2d 93 (2d Cir. 1985) ...........................26. 27, 29, 31
5

6   *Applera Corp.-Applied Biosystems Group v. Illumina, Inc.,*
      07-02845 WHA, 2008 WL. 170597 (N.D. Cal. Jan. 17, 2008) .....................11, 13
7

8   *Braxton-Secret v. A.H. Robins Co.,*
      769 F.2d 528 (9th Cir. 1985).................................................................6
9

10  *BurroughsWellcome Co. v. Barr Labs, Inc.,*
      40 F.3d 1223 (1994)...........................................................................14
11

12  *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.,*
      213 F.3d 474 (9th Cir. 2000)................................................................5
13

14  *City Solutions, Inc. v. Clear Channel Communications, Inc.,*
      201 F. Supp. 2d 1048 (N.D. Cal. 2002) ...............................19, 20, 22, 23
15

16  *Eckard Brandes, Inc. v. Riley,*
      338 F.3d 1082 (9th Cir. 2003)........................................................25, 27
17

18  *Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,*
      403 F. Supp. 2d 968 (N.D. Cal. 2005) .................................................18
19

20  *Fitzgerald v. Arbib,*
      268 F.2d 763 (C.C.P.A. 1959)...........................................................14
21

22  *Franklin Music Co. v. American Broadcasting Cos.,*
      616 F.2d 528 (3d Cir. 1979)..............................................................32
23

24  *Hitzeman v. Rutter,*
      243 F.3d 1345 (Fed. Cir. 2001)..........................................................14
25

26  *IPVenture, Inc. v. Prostar Computer, Inc.,*
      503 F.3d 1324 (Fed. Cir. 2007)..........................................................11

27

28

EXHIBIT 1
PAGE 16

i

EXHIBIT

PAGE

413780.01

*Lahr v. Nat'l Trans. Safety Bd.,*
453 F. Supp. 2d 1153 (C.D. Cal. 2006) .................................................... 6

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,*
146 F.3d 983 (D.C. Cir. 1998) ......................................................... 27, 28

*Merger Mgmt. Consulting, Inc. v. Wilde,*
920 F. Supp. 219 (D. D.C. 1996) ...................................................... 26, 27

*Miller v. Glenn Miller Products,*
454 F.3d 975 (9th Cir. 2006) ......................................................... 5, 6, 25

*Rita Medical Sys., Inc. v. Resect Medical, Inc.,*
No. C. 05-03291 WHA, 2007 WL 161049
(N.D. Cal. Jan. 17, 2007) ............................................................... 11, 22

*Seward v. Union Pump Co.,*
428 F. Supp. 161 (S.D. Texas 1977) ...................................................... 26

*T.A. Pelsue Co. v. Grand Enters, Inc.,*
782 F. Supp. 1476 (D. Colo. 1991) ....................................................... 27

*Verigy US, Inc. v. Mayder,*
No. C-07-04330 RMW, 2008 WL. 564634
(N.D. Cal. Feb. 29, 2008) ................................................................ 11

*Voith Hydro Inc. v. Hydro West Group,*
1997 WL 154400 (N.D. Cal. 1997) ...................................................... 12

*Western Medical Consultants, Inc. v. Johnson,*
80 F.3d 1331 (1996) ....................................................................... 27

*Wommack v. Durham Pecan Co.,*
715 F.2d 962 (5th Cir. 1983) ............................................................. 14

**STATE CASES**

*Aero Bolt & Screw Co. v. Iaia,*
180 Cal. App. 2d 728 (1960) ............................................................. 12

*Am. Home Shield of Cal., Inc. v. Fidelity Nat'l Home Warranty
Co.,* 2003 WL 21085278 (Cal. App. 4 Dist. 2003) ................................... 29

ii

EXHIBIT 1
PAGE 17

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT

PAGE _____

1   *Auxton Computer Enters., Inc. v. Parker,*
        174 N.J. Super. 418 (1980) ...............................................24, 25, 26, 27, 29, 31, 32
2

3   *Badie v. Bank of America,*
        67 Cal. App. 4th 779 (1998).................................................................................7
4

5   *Banner Metals Co. v. Lockwood,*
        178 Cal. App. 2d 643 (1960)...............................................................................12
6

7   *Bancroft Whitney Co. v. Glen,*
        64 Cal. 2d 327 (1966)........................................................................24, 25, 26, 28
8

9   *Computer Sciences Corp. v. Ferguson,*
        74 Cal. Rptr. 86 (1968).......................................................................................27
10

11  *Daniel Orifice Fitting Co. v. Whalen,*
        198 Cal. App. 2d 791 (1962).............................................................25, 26, 28, 30
12

13  *Edenbaum v. Dalton,*
        2002 WL 31474450 (Cal. Ct. App. Nov. 6, 2002)..........................................26, 27
14

15  *Fibreboard Paper Prods. Corp. v. East Bay Union of*
        *Machinists,* 227 Cal. App. 2d 675 (1964)........................................................34, 37
16

17  *Fowler v. Varian,*
        196 Cal. App. 3d 34 (1987).................................................................................32
18

19  *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.,*
        83 Cal. App. 4th 409 (2000), overruled on other grounds by
20      *Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004)....................................................18, 20

21
    *Graham v. Scissor-Tail,*
22      28 Cal. 3d 807 (1981)...........................................................................................7

23  *J.C. Peacock, Inc. v. Hasko,*
24      196 Cal. App. 2d 353 (1961)................................................................................32

25  *Kendall-Jackson Winery, Ltd. v. Super. Ct,*
26      76 Cal. App. 4th 970 (1999)....................................................................33, 34, 36

27  *Maglica v. Maglica,*
28      66 Cal. App. 4th 442 (1998)................................................................................23

**EXHIBIT 1
PAGE 18**

iii
BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT ___

PAGE ___

*Maryland Metals, Inc. v. Metzner,*
  282 Md. 31 (1978)..........................................................................26, 28, 29

*Mayhew v. Benninghoff,*
  53 Cal. App. 4th 1365 (1997)................................................................7

*Michelson v. Hamada,*
  29 Cal. App. 4th 1566 (1994)..............................................................21

*Neal v. State Farm Ins. Co.,*
  188 Cal. App. 2d 690 (1961).................................................................7

*Oakland Raiders v. Nat'l Football League,*
  131 Cal. App. 4th 621 (2005)...............................................................23

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,*
  69 Cal. 2d 33 (1968)..............................................................................7

*Parsons v. Bristol Dev. Co.,*
  62 Cal. 2d 861 (1965)............................................................................7

*Pond v. Ins. Co. of N. America,*
  151 Cal. App. 3d 280 (1989)...............................................................33

*Powerline Oil Co. v. Super. Ct.,*
  37 Cal. 4th 377 (2005)...........................................................................7

*Rapistan Corp. v. Michaels,*
  511 N.W. 2d 918 (Mich. Ct. App. 1994) ............................................26

*Science Accessories Corp. v. Summagraphics Corp.,*
  425 A.2d 957 (1980) ......................................24, 26, 27, 28, 30, 31

*Sequoia Vacuum System v. Stransky,*
  229 Cal. App. 2d 281 (1964)................................24, 25, 26, 28

*Stevens v. Marco,*
  147 Cal. App. 2d 357 (1956)..........................................................21, 22

*Stokes v. Dole Nut Co.,*
  41 Cal. App. 4th 285 (1995)................................................................32

**EXHIBIT 1**
**PAGE 19**

iv

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT
PAGE 1

*Warrantech Corp. v. Computer Adapters Servs., Inc.*,
134 S.W.3d 516 (Tex. App. 2004) ................................................................31

*Wolf v. Super. Ct.*,
107 Cal. App. 4th 25 (2003)........................................................................23

*Wolf v. Superior Court*,
114 Cal. App. 4th 1343 (2004).......................................................................7

*Worldvision Enter., Inc. v. Am. Broad. Companies*,
142 Cal. App. 3d 589 (1983).......................................................................19

## FEDERAL STATUTES

17 U.S.C.S. 204(a) ....................................................................................10

## STATE STATUTES

Cal. Civ. Code § 1636.................................................................................8

Cal. Civ. Code §§ 980-989 .........................................................................10

Cal. Civ. Code § 1654.................................................................................7

Cal. Labor Code § 2870.................................................................1, 8, 9, 10, 11

## OTHER AUTHORITIES

19 Williston on Contracts, Sect. 54:26 (4th ed.) ...........................................25

Rest. 2d Agency § 393 cmt e ..................................................................25, 26

Rest. (Third) of Agency, Sect. 8.04 cmt. c .............................................24, 25, 31

**EXHIBIT 1
PAGE 20**

v

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT

PAGE ____ 1

413780.01

# I. Introduction

Mattel's motion for summary judgment ("Mattel's Motion") misstates the law and distorts the facts of this case, and cannot justify summary judgment for Mattel on any part of its claims. As explained below, in MGA's opposition brief, and in Bryant's own summary judgment motion ("Bryant's Motion"), the only possible grant of partial summary judgment here must be against Mattel, not for it.

*First*, Sections I and II of Mattel's Motion ignore critical questions of contract scope and interpretation and distort the nature of the inquiry before the Court. For all the reasons discussed in Bryant's Motion, a proper analysis in fact mandates judgment in Bryant's favor, not Mattel's. Mattel's self-serving and conclusory argument cannot hide the fact that its only contract with Bryant gives it no rights to his Bratz idea and creative efforts. Moreover, California Labor Code § 2870 does not define the outer limits of Mattel's Employee Agreement, as Mattel claims (although even then Bryant's work would fall within its protections); rather, the nature and history of Section 2870 re-confirm that the Agreement drafted by Mattel had a narrow, technological and patent-oriented focus that does not encompass any part of Bratz. All of this analysis (as well as other defects) also belies Mattel's assertion that its claims to certain Bratz sketches and Bryant's rough, patchwork "dummy" could be undisputed based merely on their dates of creation. Finally, the Employee Agreement would be unconscionably draconian if interpreted as Mattel now claims it should be.

*Second*, Mattel is not entitled to summary judgment on its copyright claims (Mattel's Section III) both because (1) Mattel does not own any of the works it claims have been infringed, based both on a proper analysis of Mattel's Employee Agreement (regardless of the works' factual history) and, in addition, on the actual history of Bryant's creative process (which he will prove at trial), and (2) MGA's Bratz dolls are not substantially similar to Bryant's sketches, under principles of copyright law. Bryant joins in and incorporates by reference MGA's arguments on

1

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT
PAGE ___

EXHIBIT 1
PAGE 21

1   these issues as set forth in MGA's Memorandum of Points and Authorities in

2   Opposition to Mattel's Motion for Partial Summary Judgment ("MGA

3   Opposition"), and the relevant portions of MGA's Opposition to Mattel, Inc.'s

4   [Corrected] Separate Statement of Uncontested Facts and Conclusions of Law in

5   Support of Mattel, Inc.'s Motion for Partial Summary Judgment, as though fully

6   set forth herein.

7        *Third*, Mattel is not entitled to summary judgment on any part of its claims

8   for breach of contract, breach of fiduciary duty or breach of duty of loyalty

9   (Mattel's Section IV). Bryant did not breach any contractual obligation to Mattel,

10  because Bryant owned everything he conveyed to MGA and honored all legitimate

11  requirements of Mattel's Employee Agreement. Likewise, Bryant was not a

12  fiduciary of Mattel, either based on his position as an ordinary, low-level Mattel

13  employee or due to being "entrusted by Mattel with confidential, proprietary

14  information" (Mattel MSJ 34), and thus owed Mattel no fiduciary duty. Moreover,

15  Bryant did not breach his limited duty of loyalty as an ordinary employee, and

16  Mattel cannot prove that his limited involvement with MGA prior to his departure

17  from Mattel (which he will prove at trial) was anything more than preparations to

18  compete with Mattel after leaving the company, which California law permits.

19       *Finally*, Mattel is not entitled to summary judgment on any of Bryant's

20  affirmative defenses (Mattel's Section VI), which either must be resolved in

21  Bryant's favor or present issues of material fact for the jury. Bryant joins MGA's

22  argument supporting his defenses based on the statutes of limitations, laches,

23  waiver, consent, and estoppel, incorporating all related arguments and facts from

24  the MGA Opposition as though fully set forth here. Bryant's unclean hands

25  defense must also survive summary judgment, as set forth below, because it

26  involves quintessential factual questions of Mattel's motivation and intent, and the

27  equitable significance of Mattel's unfair conduct surrounding this litigation.

28

**EXHIBIT 1**
**PAGE 22**

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT ___
PAGE ___ 1

413780.01

## II.    Factual Background[1]

**A.    Mattel's Employee Agreement is far more limited in scope than Mattel now claims.**

As discussed at length in Bryant's Motion, both the text of Mattel's Employee Agreement (which Mattel labels an "Inventions Agreement") and the circumstances surrounding it make clear that the Agreement seizes for Mattel far less of its employees' creative work than Mattel now claims in this litigation. The Employee Agreement was an adhesive, one-sided contract drafted by Mattel lawyers that Mattel imposed on all of its El Segundo Design Center employees, as well as many others. SGI 131.[2] The terms of the Agreement claim for Mattel only "inventions" that are either "conceived or reduced to practice by [an employee] [alone or jointly by others] at any time during [his] employment by the Company"—terms of art invoking patent law. Bryant Motion 21-25; SUF 7 (Ex. 8). Although Mattel now claims (in litigation) that the Employee Agreement effected a sweeping assignment of all creative efforts by Mattel employees, except as prohibited under California law, Mattel in fact never had—and thus made no attempt to enforce—such sweeping rights. Bryant Motion 7-8, 25-28; SUF 37-42. Instead, moonlighting and side-work flourished at Mattel when Bryant worked there, including with the support and encouragement of Mattel supervisors. *Id.*

As also discussed in Bryant's Motion, no other document Bryant signed at Mattel was a valid, binding contract. Bryant Motion 36-40; SGI 134.

**B.    Bryant honored all of his obligations to Mattel while pitching his Bratz idea to MGA and preparing to transition to a new career opportunity.**

Bryant's efforts to seek a more creatively fulfilling career by pitching his Bratz idea to MGA were lawful and violated no rights of Mattel. Instead, as

---

[1] To avoid repetition, Bryant refers the Court to his summary judgment papers (including portions of MGA's motion papers incorporated therein) for additional facts, incorporating them here by reference. Bryant also relies on and incorporates here by reference certain facts stated in the MGA Opposition and supporting evidence, as stated herein.

[2] "SUF" refers to Bryant's Separate Statement of Undisputed Facts in support of Bryant's Motion. Similarly, "SGI" refers to Bryant's Statement of Genuine Issues, filed herewith.

3

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

**EXHIBIT**

**PAGE __**

**EXHIBIT 1
PAGE 23**

1   Bryant will prove at trial, his actions prior to leaving Mattel were nothing more

2   than preparations to pursue an idea of his own with MGA after leaving Mattel.

3   Taking the facts in the light most favorable to Bryant, Bryant had an idea for four

4   doll characters he called Bratz in 1998, while living with his parents in Missouri.

5   SGI 136. He drew an initial set of sketches, named the drawings, and drafted text

6   to describe the "characters." SGI 137. Later, Bryant traced and added color to

7   some of his original drawings. SGI 138.

8       In the summer of 2000, Bryant discussed his Bratz idea with Veronica

9   Marlow, and she arranged a meeting between MGA and Bryant. SGI 139. After

10  the initial meeting, Bryant completed a few more sketches to show MGA. SGI

11  140. Early in the pitch process, Bryant also did some work on what he believed to

12  be a trial project called "Angels." SGI 141. MGA never used the drawings Bryant

13  made for this Prayer Angels project, and Bryant understood that he was asked to

14  work on the project just to show MGA what he could do, as he had done for Mattel

15  before his initial hiring. SGI 142.

16      To prepare for a meeting with MGA, Bryant also made a very rough

17  "dummy" to bring with him, using some doll parts he found in the trash, as well as

18  a few hours of off-duty time of a Mattel face painter and hair rooter (who knew it

19  was for a side-project, not part of their Mattel work). SGI 143. He separately paid

20  the face painter, Sheila Kyaw, a small amount, $150, for her time. SGI 144.

21  During the pitch process, Bryant began some preliminary efforts to prepare to

22  make his idea a reality—such as contacting a hair vendor. SGI 145. He also used

23  his work phone and fax for preparatory discussions related to Bratz and to send

24  MGA the last page of his signed contract. SGI 146.

25      Prior to leaving Mattel, Bryant always fulfilled his job responsibilities. SGI

26  147. The time he spent on Bratz was minimal, and never interfered with his

27  performance of his job. SGI 148-149, 164. With the exception of a small payment

28  ($162.38) for completing the tryout assignment, the only money Bryant received

4

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 24

EXHIBIT ___
PAGE ___

1   from MGA prior to his departure from Mattel was as an advance for future work or

2   to reimburse him for supplies. SGI 150.

3       As soon as the Bratz opportunity solidified—when he signed his October 4,

4   2000 contract with MGA—Bryant immediately gave notice to Mattel. SGI 151.

5   He stayed at Mattel for just over two weeks in order to complete his work there.

6   SGI 152. During that time, Bryant informed Mattel of his plans to pursue other

7   opportunities. SGI 153. Bryant has testified that before he left Mattel he told

8   various Mattel employees—including management—that he was leaving Mattel to

9   start his own business as a freelance designer, working on his own doll line as an

10  independent contractor. SGI 154. During his exit interview, he told Mattel's HR

11  representative, Sandy Yonemoto, the same thing. SGI 155. The only documentary

12  evidence from this period corroborates Bryant's account: Mattel's exit interview

13  form for Bryant indicates that he said he was leaving for a new job as a "business

14  owner" in "illustration/ product design," because an "[o]pportunity arose – had to

15  take it." Id. Bryant never told anyone at Mattel that he was leaving Mattel to work

16  with a non-competitor.[3] SGI 156. While he was still pitching his Bratz idea to

17  MGA, Bryant did not resign from Mattel or inform Mattel about his efforts to

18  pursue the idea, because he did not want Mattel to think he was going to quit, in

19  case his new opportunity did not materialize. SGI 157.

20                    **III.   Argument**

21      Because Mattel bears the burden of proving its claims against Bryant at trial,

22  "it must come forward with evidence which would entitle it to a *directed verdict* if

23  the evidence went uncontroverted at trial" to satisfy even its initial burden in

24  seeking summary judgment. *Miller v. Glenn Miller Prods.*, 454 F.3d 975, 987 (9th

25  Cir. 2006) (emphasis added); *C.A.R. Transp. Brokerage Co., Inc. v. Darden*

26  *Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). In evaluating Mattel's

**EXHIBIT 1**
**PAGE 25**

27

28  [3] Any contrary testimony by Mattel's witnesses can only create a fact issue for trial.

5

EXHIBIT

PAGE ____

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

1    motion, all of Bryant's evidence must be believed, and all reasonable inferences

2    must be drawn in his favor. *Miller*, 454 F.3d at 988.  Mattel falls far short of even

3    this heavy "initial burden of establishing the absence of a genuine issue of fact on

4    each issue material to its case." *Id.* at 987.  Moreover, even where facts are

5    undisputed, summary judgment is not proper "where divergent ultimate inferences

6    may reasonably be drawn from the undisputed facts." *Lahr v. Nat'l Transp. Safety*

7    *Bd.*, 453 F. Supp.2d 1153, 1169 (C.D. Cal. 2006) (citing *Braxton-Secret v. A.H.*

8    *Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)).

9        Here, as set forth below, in the MGA Opposition, and in Bryant's Motion

10   (which Bryant will not repeat here, but incorporates by reference in full), the only

11   proper grant of partial summary judgment would be against Mattel, not for it.  The

12   undisputed facts require judgment for Bryant on many of Mattel's claims, while all

13   other claims raised in Mattel's Motion involve fact issues that must go to trial.

14   **A.    Mattel's claims to Bratz fail because the Employee Agreement does not include the sweeping definitions Mattel now seeks to assert against Bryant, and even if it did Mattel could not enforce such definitions here.**

15

16       Sections I and II of Mattel's Motion ignore critical questions of contract

17   scope and interpretation (on which the undisputed facts, as discussed in Bryant's

18   own summary judgment motion, mandate judgment in Bryant's favor), and distort

19   the nature of the inquiry before the Court.  The Court should reject Mattel's glibly

20   misleading approach to the contractual issues before it.  The fundamental flaws in

21   Mattel's argument discussed here infect—and must defeat—not only Mattel's

22   breach of contract claim, but also its claims of copyright infringement, breach of

23   fiduciary duty, and breach of the duty of loyalty.[4]

24       **1.    Mattel ignores and misstates controlling principles of California contract interpretation (as set forth in Bryant's Motion).**

25

26       Contrary to Mattel's simplistic presentation of the law, the Court must

27   consider all available evidence of the parties' intent to determine whether Mattel's

28   [4] The particular flaws of each claim are discussed in more detail in the sections below.

6
BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

-413780.01

EXHIBIT 1
PAGE 26

PAGE __

1  Employee Agreement—or any other purported contract with Bryant—is

2  reasonably susceptible to more than one interpretation, even if the language

3  appears to be clear on its face (which is not always the case here). *Parsons v.*

4  *Bristol Dev. Co.*, 62 Cal. 2d 861, 865-66 (1965); *Pac. Gas & Elec. Co. v. G.W.*

5  *Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37, 39-40 (1968); *Wolf v. Superior*

6  *Court*, 114 Cal. App. 4th 1343, 1351 & 1356 (2004).

7  　　　Then, all ambiguities must be resolved against Mattel, the drafter of the

8  contract. *Graham v. Scissor-Tail*, 28 Cal. 3d 807, 819-20, n. 16 (1981); *see also*

9  *Powerline Oil Co. v. Superior Court*, 37 Cal. 4th 377, 391 (2005); Cal. Civil Code

10  § 1654.  For a contract that is drafted by one party's lawyers or a contract of

11  adhesion (and the Employee Agreement is *both*), this *contra preferentem* rule

12  applies with extra force. *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998)

13  (adhesion); *Neal v. State Farm Ins. Co.*, 188 Cal. App. 2d 690, 694 (1961)

14  (adhesion); *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365 (1997) (attorneys).

15  　　　In addition, and regardless of whether or not the text is ambiguous, the Court

16  must not give Mattel's adhesive form contract an interpretation that would fall

17  outside the reasonable expectations of a weaker party in Bryant's position.

18  *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 (1981).  Nor can the Court

19  permit an unfairly one-sided interpretation of an adhesive contract. *Id.*

20  　　　Under these principles, which Mattel entirely fails to address, the only

21  possible grant of summary judgment regarding Mattel's claims to any ownership of

22  Bratz must be for Bryant, not Mattel. *See* Bryant Motion 17-40.

23  　　　**2.　　Mattel disregards the actual language of the agreement it forced
24  　　　　　　on Bryant, which (as explained in Bryant's Motion) does not
　　　　　　　encompass Bryant's Bratz idea and material.**

25  　　　Mattel's argument disregards not only the applicable legal principles, but the

26  facts of this case.  First, Mattel's argument fails to mention this critical fact:

27  Mattel's Employee Agreement does not claim for Mattel the rights that Mattel now

28  asserts against Bryant.  For all the reasons set forth in Bryant's Motion, Mattel's

7

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

**EXHIBIT 1**
**PAGE 27**

EXHIBIT ___
PAGE ___

1   Employee Agreement is not so sweeping as Mattel now claims; nor does Mattel

2   make any real effort to justify the broad contract reading it seeks. By its plain

3   terms, the Agreement does not encompass Bryant's Bratz idea, sketches, and other

4   material, because none of Bryant's work was an "invention" under the Agreement,

5   nor would any hypothetical such "invention" have been "conceived or reduced to

6   practice by [Bryant] (alone or jointly by others) at any time during [his]

7   employment by the Company." See Bryant Motion 17-36. Nothing in Mattel's

8   actual Employee Agreement states or implies that Mattel owns Bryant's creative

9   work "to the fullest extent of the law," as Mattel now contends—without any

10  detailed analysis. Mattel MSJ 2; SGI 159.

11         Mattel seeks to sidestep the plain language and scope of its Employee

12  Agreement by claiming that Bryant agrees that "inventing" includes designing

13  toys. Mattel MSJ 8. He does not, nor would any such agreement help Mattel here.

14  Mattel relies for this supposed "admission" on a deposition answer, taken out of

15  context, which had nothing to do with Mattel's Employee Agreement. Also,

16  Mattel offers no evidence (and there is none) that Bryant's idea for a set of doll

17  characters, or his related sketches, would constitute "designing toys" even if

18  designing toys were in fact "inventing." Moreover, Mattel offers no evidence—

19  again, because it has none—that Bryant had Mattel's claimed understanding of

20  "inventing" in 1999 when he read and signed the Employee Agreement, or that a

21  reasonable employee in Bryant's position would understand the Agreement in this

22  way. Where everything about the Employee Agreement and the circumstances at

23  the time of its execution indicates that all reasonable parties would understand it to

24  have a far narrower meaning, that narrower meaning must prevail. Cal. Civ. Code

25  § 1636 (providing contracts "must be so interpreted as to give effect to the mutual

26  intention of the parties as it existed at the time of contracting").

27         3.     **California Labor Code Section 2870 does not help Mattel.**

28         Mattel claims that California Labor Code Sections 2870-2872 define the

8

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 28

PAGE ___

1   outer limits of Mattel's Employee Agreement; they do no such thing, as both the

2   Employee Agreement itself and the nature and history of Section 2870 make clear.

3   Mattel's Agreement does not claim for Mattel all employee thoughts and creative

4   ideas, except inventions protected by Section 2870, as Mattel now falsely claims.

5   Mattel MSJ 6; SGI 159. Rather, the Agreement's scope is far more limited, as

6   described above and in Bryant's Motion.

7       In addition, because Mattel now claims that the Employee Agreement

8   directly tracks Section 2870 and its limits, the Agreement should also share the

9   limitations of that legislation. And the history of Section 2870 reveals that it was

10  intended to promote scientific and technological innovation by securing certain

11  patent rights for engineers and scientists—that concern for patent rights permeates

12  the entire legislative history.[5] SGI 158. Thus, to the extent that Section 2870 is at

13  all relevant to this dispute, it only serves to reaffirm the narrow, technologically-

14  focused meaning of Mattel's Employee Agreement, which is already clear from the

---

[5] The following are just a few highlights illustrating this strong patent focus:

- Assembly Bill No. 2902, Jan. 29, 1976 (first version of Section 2870, explaining that bill is needed because "existing law contains no provisions relating to the right to the patent for an invention made by an employee.");

- Bill Digest for May 17, 1976 hearing (explaining that "patents are governed by federal law" but "state law may affect certain aspects of patents," which bill will do by "provid[ing] that patent rights to an invention" belong to employees under certain conditions");

- March 29, 1976 letter of George H. Murphy, Legislative Counsel, to Assemblyman John J. Miller (analyzing proposed legislation for conflict with federal patent laws, with no mention of copyright) (in legislative history file of A.B. 474, the version of the patent bill that passed in 1979);

- Memo re A.B. 474 for Labor, Employment & Consumer Affairs Committee hearing March 20, 1979 (explaining that "patents are governed by federal law. The United States Constitution specifically empowers Congress to protect inventions.");

- Assemblyman Terry Goggin, A.B. 474 Statement Assembly Comm. on Labor, Employment & Consumer Affairs, March 20, 1979 (A.B. 474's author explaining that the bill "guarantees patent rights to employed inventors"; describing need for bill because lack of employee control over inventions "undermines the patent system itself by removing any incentive to create," contributing to United States's "fall[] from 1st to 7th place since World War II" in "patents of origin").

*See* Bryant's Request for Judicial Notice (filed herewith), Exs. A-E.

9

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT
PAGE ____

EXHIBIT 1
PAGE 29

1  Agreement's text and surrounding circumstances (as discussed in Bryant's own

2  motion for partial summary judgment).[6]

3       Moreover, Mattel's Employee Agreement follows Section 2870 in using the

4  language of patent law – not of copyright law.  In contrast, the California code

5  contains numerous provisions that do address copyright issues, using the distinct

6  language of copyright law.  *See, e.g.*, Cal. Civ. Code §§ 980-989 (protecting

7  "products of the mind").  Some of these provisions even illustrate the contrasting

8  language used for copyrights and patents by addressing both types of protection, in

9  parallel (but separate) subsections.  *Compare, e.g.*, Cal. Civ. Code § 980(a)

10  (addressing "original work[s] of authorship" by an "author") *with* Cal. Civ. Code §

11  980(b) (addressing "invention[s] or design[s]" by an "inventor or proprietor").

12  These provisions confirm that the California legislature is fully capable of enacting

13  copyright-related laws (to the extent not preempted by federal law), but that

14  Section 2870 is not such a law:  it addresses inventions, and is a patent-oriented

15  law intended to protect and promote technological innovation.  Mattel's Employee

16  Agreement, which tracks and incorporates Section 2870 (according to Mattel, by

17  using Section 2870 to define the scope of the Agreement), is similarly patent-

18  oriented and cannot encompass Bryant's Bratz idea, sketches, and other materials.[7]

19  ---

[6] In the event that the Court disagrees with Bryant's interpretation of the term "invention"
20  in the Employee Agreement and Section 2870, Bryant contends and will argue at trial
   that his Bratz idea and creative efforts nonetheless belong solely to him under the
21  protections of Section 2870.  However, under the most coherent reading of the
   Agreement and Section 2870, the Court (and the jury) need not reach the question
22  whether Section 2870 protects Bryant here.

[7] Bryant's Motion also refutes Mattel's claim that the Employee Agreement's limited
23  reference to copyright in inventions alters the basic technology and patent-oriented nature
   of the Agreement.  Bryant Motion 22-25 & n.13.  To the extent that the Court might find
24  (or Mattel might argue) that Section 2870 carries a narrower definition of "inventions"
   than the Employee Agreement (which it does not), Bryant's Bratz idea and efforts would
25  still belong to him under principles of copyright law.  *Id.* 34-36.  Section 2870 does not
   attempt to displace the federal copyright regime, under which Bryant's work belongs to
26  him unless (1) Mattel owns it as a work for hire, or (2) Bryant knowingly transferred
   ownership in a clear, explicit written instrument.  As Bryant's Motion explains, Mattel
27  admits that Bryant's Bratz work was not a "work for hire" done in the scope of his Mattel
   employment, *id.* 34 n.20; MGA SUF para 80, and the adhesive and unclear Employee
28  Agreement is not a valid transfer of copyright ownership under 17 U.S.C. s 204(a).

10

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 30

EXHIBIT
PAGE ____

1      A review of court decisions applying Section 2870 also confirms that, unlike

2   some other employers' agreements, Mattel's Employee Agreement simply does not

3   claim for Mattel "all inventions not excluded by the terms of Section 2870" (as

4   Mattel now claims, without analysis, Mattel MSJ 6), and that Section 2870 and

5   agreements referencing it ordinarily apply to technological and scientific

6   innovations.  Where employers' agreements do expressly claim all inventions not

7   exempted under Section 2870, courts may enforce that agreement; but Mattel's

8   Employee Agreement contains no such express language. SGI 159. *Cf. Verigy*

9   *US, Inc. v. Mayder*, No. C-07-04330 RMW, 2008 WL 564634, *1 (N.D. Cal. Feb.

10   29, 2008) (technical employer's agreement claiming all proprietary developments

11   not exempted under Section 2870).  Also, and tellingly, Mattel has pointed to no

12   decision applying Section 2870 or an "inventions" assignment agreement to a doll

13   character idea, sketch, or other artistic effort.  Rather, Section 2870 typically

14   affects cases and agreements involving patent disputes in a wide range of technical

15   fields. *See, e.g., IPVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324 (Fed.

16   Cir. 2007) (patent for management of computer systems); *Applera Corp.-Applied*

17   *Biosystems Group v. Illumina, Inc.*, No. C 07-02845 WHA, 2008 WL 170597, *1-5

18   (N.D. Cal. Jan. 17, 2008) (patents related to DNA sequencing); *Rita Medical Sys.,*

19   *Inc. v. Resect Medical, Inc.*, No.. C 05-03291 WHA, 2007 WL 161049, *2 (N.D.

20   Cal. Jan. 17, 2007) (patents related to medical devices).

21      Finally, even if Mattel's Employee Agreement did claim all inventions not

22   protected by Section 2870, and even if that claim could potentially encompass

23   Bryant's Bratz idea and sketches, material factual disputes would remain as to

24   whether Section 2870 would protect Bryant's Bratz efforts here.  Mattel grossly

25   oversimplifies this analysis, with a glib and conclusory argument that ignores key

26   factual disputes and the precise scope of Section 2870.  In fact, a reasonable jury

27   could find that any "invention" involving Bryant's Bratz idea and creative efforts

28   was developed on his own time, without using Mattel's resources within the

11

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 31

EXHIBIT _

PAGE __

1 | meaning of the law, and did not relate to Mattel's actual or anticipated business.

2 |     First, Bryant's testimony and other evidence indicate that Bryant had his

3 | Bratz idea and made his early sketches while not working at Mattel, and that any

4 | actual development of the idea during the years he worked at Mattel used only

5 | Bryant's own time and resources. SGI 135-150. Indeed, in the shop rights

6 | context, courts consistently hold that use of a *de minimis* amount of materials gives

7 | the employer no rights to an employee's invention.[8] Also, Mattel's "resources"

8 | cannot include its trash and Bryant or other employees' off-duty time.

9 |     Second, a jury could find that any efforts by Bryant related to his Bratz idea

10 | during the years he worked at Mattel (even to the extent he used Mattel's phone or

11 | other equipment) did not constitute "development" of the idea, but only

12 | preparations to pitch and pursue it after leaving Mattel. *See infra* Section C.III.

13 |     Finally, a jury could find that (despite Mattel's current self-servingly broad

14 | definitions of its "business") Mattel in fact had more limited business interests and

15 | plans that did not encompass Bratz, based on at least the following facts: Mattel

16 | rejected other dolls that it claims are similar to Bratz (Toon Teens); Mattel strictly

17 | limited its non-Barbie dolls to avoid cannibalization of the Barbie market; Mattel

18 | management did not inquire about Bryant's plans even when told he was leaving to

19 | work on his own doll line; and Mattel delayed bringing suit long after it knew

20 | about Bryant's Bratz involvement. SGI 160-163.

21 |     Courts have denied summary judgment in similar (though patent-related)

22 |

---

[8] *See Voith Hydro Inc. v. Hydro West Group*, 1997 WL 154400, *6-8 (N.D. Cal. 1997) (where invention was conceived before employment and reduced to practice afterward, the employee's use of "some time and resources" to work on one component of the invention was insufficient to give rise to any ownership rights in the employer); *Banner Metals Co. v. Lockwood*, 178 Cal. App. 2d 643, 649-50, 656-58, 662 (1960) (use of some wire and employer's welding machine after hours was "negligible and unimportant and in no substantial way produced or contributed to the development of a receptacle of a commercially acceptable form"); *Aero Bolt & Screw Co. v. Iaia*, 180 Cal. App. 2d 728, 737-39 (1960) (use of employer's paper pads, bolts for early models and prototypes, typists and copier in connection with drawings submitted to manufacturers, and employer's shop on weekends to make samples did not create ownership rights in the employer because employee did not use a "substantial amount" of its resources).

12

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 32

PAGE __

1  situations, properly recognizing that the jury must be permitted to evaluate the

2  evidence and determine whether Section 2870 applies. *Applera Corp.-Applied*

3  *Biosystems Group*, 2008 WL 170597 at *4-5 (denying summary judgment in

4  Section 2870 dispute despite "strong" evidence favoring employer, where

5  employee testified he thought up and developed his invention on his own time, jury

6  could find that minimal company resources used were not part of "developing" his

7  invention, and company knew about the invention but delayed suit).

8       **4.    Mattel cannot prevail on summary judgment as to any of Bryant's**
        **Bratz sketches—including the five sketches and rough dummy it**
9       **claims are undisputedly its property—because they are not**
        **"inventions" and were not "conceived or reduced to practice ..**
10      **during [Bryant's] employment" within the meaning of the**
        **Employee Agreement.**

11

12       The analysis above (and in Bryant's Motion) amply demonstrates that Mattel

13  does not own any of Bryant's Bratz material, regardless of when it was created—

14  or, at the very least, that the material facts underlying Mattel's claims of ownership

15  are disputed, precluding any grant of summary judgment to Mattel as to any of

16  Bryant's Bratz materials.  That analysis applies equally to the five sketches and

17  rough, patchwork "dummy" that Mattel claims were undisputedly made within the

18  time period that Bryant was employed at Mattel; whatever their dates of creation,

19  they still do not belong to Mattel.  First, they are not Mattel's because (as shown

20  above) none of Bryant's Bratz idea or creative efforts are inventions conceived or

21  reduced to practice during his employment, within the meaning of the Employee

22  Agreement.  Second, even if Bryant's overall Bratz idea, or some combination of

23  sketches and other materials could be an invention satisfying all the terms of the

24  Agreement (which is not the case), the individual items Mattel claims here still

25  would not constitute "inventions" "conceived" or "reduced to practice" "during

26  [Bryant's] employment." Tracing or coloring a sketch logically cannot constitute

27                                                           **EXHIBIT 1**
                                                             **PAGE 33**
28

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

1 "conceiving" or "reducing to practice" an invention.[9] Also, if such a thing is

2 possible, it makes even less sense to claim that sketches for evening wear outfits

3 (four of the sketches Mattel claims) are "inventions" than that a complete doll

4 character idea is one. Nor does Mattel offer any explanation of how it claims the

5 evening wear sketches were ever reduced to practice during Bryant's Mattel

6 employment (especially since MGA never used those sketches or the "dummy"),

7 or how they were "conceived" separately from Bryant's core Bratz idea and earlier

8 sketches (whose factual history is disputed). Also, Mattel offers (and has) no

9 evidence that any of the sketches were created during Bryant's working hours at

10 Mattel. SGI 164. The same problems defeat Mattel's claims to the rough dummy

11 Bryant created to illustrate his Bratz idea (using doll parts from Mattel's trash and

12 some minimal off-duty assistance from two co-workers), and his sketch illustrating

13 the proportions of a preliminary Bratz sculpt created by Margaret Leahy. *See*

14 MGA SGI 21.

### 5. If the Employee Agreement means what Mattel claims (which it does not), it cannot be enforced against Bryant.

It does not matter whether the Employee Agreement is enforceable or not,

because as a matter of common sense and ordinary contract interpretation it does

not give Mattel the rights the company now claims. However, Mattel also

mistakes Bryant's argument against enforcing the agreement with the meaning

---

21 [9] The terms "conceived" and "reduced to practice" are terms of art in patent law that do
22 not encompass sketching, tracing, or coloring a doll character idea. *See Hitzeman v.
Rutter,* 243 F.3d 1345, 1356 (Fed Cir. 2001) ("[T]he test for conception is whether the
23 inventor had an idea that was definite and permanent enough that one skilled in the art
could understand the invention . . . An idea is definite and permanent when the inventor
24 has a specific, settled idea, a particular solution to the problem at hand, not just a general
goal or research plan . . ."); (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.,* 40
25 F.3d 1223, 1228 (1994)); *Wommack v. Durham Pecan Co.,* 715 F.2d 962, 966 (5th Cir.
1983) ("[R]educed to practice [] includes not only the reduction [of an idea] to reality, but
26 also sufficient testing or experimentation to demonstrate that the device as it exists
possesses sufficient utility to justify a patent, i.e., that the invention is suitable for its
27 intended purpose.") (quotations omitted); *Fitzgerald v. Arbib,* 268 F.2d 763, 765
(C.C.P.A. 1959) ("[T]his court and its predecessors in patent jurisdiction have held that
28 reduction to practice of a three-dimensional design invention requires the production of
an article embodying that design."). *See also* Bryant Motion 23-24.

EXHIBIT

EXHIBIT 1
PAGE 34

PAGE __

1  Mattel now claims for it: Bryant does not contend that the Employee Agreement

2  in itself is unenforceable, but only that it is unconscionably draconian if interpreted

3  as Mattel now claims it should be, and thus cannot be interpreted or enforced in

4  that manner. Under the proper interpretations set forth in Bryant's Motion and

5  above, the Employee Agreement is enforceable—but it gives Mattel no rights to

6  Bryant's Bratz idea, sketches, and other material.

7  Bryant recognizes that the Court has already considered the terms of the

8  Employee Agreement on motions to dismiss and concluded, looking only within

9  the four corners of the document, that it is not unconscionable for Mattel to expect

10  "that the works of its design staff—created by Mattel's employees, using Mattel's

11  resources, during time for which Mattel paid the employee—be considered its

12  property." July 18, 2006 Order at 14.[10] However, the Court has not considered

13  whether the Employee Agreement is enforceable if it is given the meaning Mattel

14  now claims for it, on the facts of this particular case. Based on its past conduct and

15  the circumstances surround the Employee Agreement, as well as California public

16  policy, Mattel simply cannot enforce any improper interpretation of the Employee

17  Agreement—such as one purporting to prohibit Bryant from engaging in good faith

18  and reasonable efforts to seek employment or professional opportunities with other

19  companies, including Mattel competitors, while still employed by Mattel.[11]

20  In sum, the Employee Agreement gives Mattel no rights to any part of

21  Bryant's Bratz idea or sketches. Thus, all of Mattel's claims based on its supposed

22  ownership of Bryant's idea and sketches fail. As discussed below, this

23  fundamental defect—as well as other flaws—must defeat Mattel's motion for

24  summary judgment on its claims for copyright infringement, breach of contract,

25  _____

26  [10] Bryant preserves all of his rights with respect to the Court's July 18, 2006 Order dismissing Bryant's counterclaims pertaining to the validity and enforceability of the Employee Agreement, including any and all rights on appeal.

27  [11] Mattel is also precluded from enforcing the Employee Agreement against Bryant in

28  this litigation on the bases of various statutes of limitations, and Mattel's unclean hands, waiver, estoppel, laches, and consent. See infra Section D.

15

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 35

PAGE ___

1    breach of fiduciary duty, and breach of loyalty.

2    **B.    Mattel's copyright infringement claims lack merit, as set forth in the MGA parties' opposition brief.**

3

4    Bryant joins in MGA's arguments that Mattel's copyright infringement

5    claims fail because Mattel does not own the works it claims MGA and Bryant have

6    infringed, and because MGA's Bratz dolls are not substantially similar to Bryant's

7    original sketches.  To the extent summary judgment is possible on any copyright

8    issues, that judgment must be in Bryant's favor – not Mattel's – so Mattel's

9    summary judgment motion must be denied.  Bryant incorporates the arguments and

10   facts set forth in MGA's Opposition Brief and factual submissions on this subject,

11   as though fully set forth herein.

12   **C.    Mattel's claims for breach of contract, breach of fiduciary duty, and breach of loyalty all fail.**

13   **1.    Bryant breached no contractual obligation to Mattel.**

14   Mattel's adhesive Employee Agreement is the only contract between Mattel

15   and Bryant, and Bryant did not breach any of that agreement's requirements.  First,

16   as explained above, Bryant did not breach the Employee Agreement by failing to

17   turn his Bratz idea, sketches and other material over to Mattel, because the

18   Agreement gave Mattel no rights to any of Bryant's Bratz material, even setting

19   aside the clear factual disputes over the history of Bryant's idea and creative efforts

20   surrounding Bratz.[12]

21   Bryant also did not breach any contractual obligation to Mattel by pitching

22   his Bratz idea and pursuing the opportunity to develop it with MGA.  The

23   Employee Agreement does contain a clause barring Bryant from engaging in

24   employment or business other than for the company, or investing in or assisting (in

25   any manner) any business competitive with the business or future business plans of

26

27   [12] Even Mattel acknowledges that the parties dispute the history of Bryant's Bratz idea and of "some items" related to it—a rather coy description for *all* of Bryant's tangible

28   Bratz work (including his original Bratz sketches) except for the six allegedly undisputed items identified in Mattel's motion. SGI 165; Mattel MSJ 1, 9.

16
BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT
EXHIBIT 1
PAGE ___
PAGE 36

1  the Company, without Mattel's consent. SUF 7 (Ex. 8 ¶ 3(a)). However, this

2  language on its face does not prohibit a Mattel employee from pursuing new

3  employment opportunities or preparing to leave the company. As discussed below,

4  that is all Bryant did before he left his Mattel employment. The language of the

5  Employee Agreement and Mattel's related conduct (of tolerating widespread

6  moonlighting) do not logically support a broader interpretation. Moreover, (1) the

7  Employee Agreement must be read narrowly against Mattel, its drafter, (2) a

8  broader interpretation would impermissibly violate the reasonable expectations of

9  Mattel employees, the weaker parties to an adhesive contract, and (3) a broader

10 interpretation would violate California's strong public policy in favor of employee

11 mobility, as demonstrated by California's law that preparations to compete with an

12 employer to not violate an employee's duty of loyalty (discussed below).[13]

13     Mattel's claims also fail to the extent they are based on any other purported

14 contract. As discussed in Bryant's Motion, Mattel's Conflict of Interest

15 Questionnaire is not a contract (nor did Mattel intend it to be), and does not bind

16 Bryant. Bryant Motion 36-38. Thus, even if Mattel's claims that Bryant failed to

17 comply with the supposed terms of the Questionnaire were accurate (which they

18 are not), that failure would not breach any contractual obligation to Mattel. And in

19 fact, as the facts set forth above demonstrate, Bryant did notify Mattel personnel

20 that he was planning to leave Mattel to pursue an opportunity to work on his own

21 doll line, as soon as that opportunity became concrete with Bryant's signing of a

22 contract with MGA. Bryant cannot be blamed for Mattel's failure to seek more

23 information about that opportunity once informed of it.

24

25                                        **EXHIBIT 1**

26                                        **PAGE 37**

27 [13] The principles of California contract law discussed in Bryant's Motion and above
   apply equally here, and Mattel's course of conduct (including imposing an adhesive
28 contract and tolerating moonlighting) is equally significant. Bryant Motion 17-34.

413780.01

1    **2.    Bryant did not owe Mattel any fiduciary duty as a result of his**
         **position at Mattel or due to any alleged sharing of confidential**
2        **information, and breached no duty to Mattel.**

3        The Court also should reject Mattel's attempt to sidestep established

4    California law in order to create a fiduciary relationship where the undisputed facts

5    (much less disputed facts) show a straightforward employment relationship giving

6    rise to a modest duty of loyalty, but not a more onerous fiduciary duty.

7                 **a.    In California, an employee must be an officer, participate in**
                     **the management of the company, and exercise discretionary**
8                    **authority for a fiduciary relationship to be imposed by law.**

9        *First,* Mattel tacitly concedes that Bryant does not owe Mattel any fiduciary

10   duty *imposed by law* as a result of his position as a Mattel employee. Mattel fails

11   to even mention that under California law employees ordinarily do *not* owe

12   employers fiduciary duties. In addition, Mattel omits any discussion of the limited

13   circumstances under which an employee of a corporation will owe his employer a

14   fiduciary duty—the employee must be an officer of the company, must participate

15   in management of the company, *and* must have discretionary authority in his

16   managerial capacity. *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.,*

17   *Inc.,* 83 Cal.App. 4th 409, 420-21 (2000) ("*GAB Business*"), *overruled on other*

18   *grounds by Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004); *Enreach Tech., Inc. v.*

19   *Embedded Internet Solutions, Inc.,* 403 F. Supp. 2d 968 (N.D. Cal. 2005). Mattel

20   has provided no evidence (much less undisputed facts) to satisfy the criteria set

21   forth in *GAB Business* or in *Enreach Technology.*[14] Mattel's complete failure to

22   address the criteria set forth in *GAB Business* alone requires the denial of summary

23   judgment on Mattel's claim for breach of fiduciary duty. *Enreach Tech.,* 403 F.

24   _____

25   [14]Bryant was not an officer or director of Mattel. SUF ¶¶ 34. Bryant was offered a
     position as an *employee* of Mattel, and that is the position he accepted. *See* SUF ¶¶ 3, 27.
26   Indeed, it is undisputed that Bryant was not even a managerial or supervisory employee
     (as was the chief software architect in *Enreach*), but rather simply one member of a team
27   of artists, sculptors, packagers, and pattern-makers who were assigned a project and
     worked under the overall direction of a supervisor to complete it. SUF ¶¶ 28-33. Indeed,
28   the provisions of the Employee Agreement relied upon by Mattel are not even relevant to
     the analysis under *GAB Business.*

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT
PAGE __

**EXHIBIT 1
PAGE 38**

1    Supp. 2d at 976.  Nevertheless, we address Mattel's additional arguments below.

2            b.      **Bryant's Employee Agreement and his alleged access to
                     highly confidential information did not transform his**
3                    **ordinary employee relationship into a fiduciary**
                     **relationship.**
4
5        Omitting any reference to the established principles set forth in *GAB*

6    *Business* and discussed in Bryant's Motion, Mattel instead asserts that Bryant held

7    a "position of trust" and was "entrusted . . . with highly confidential information"

8    and thus owed Mattel fiduciary duties as a matter of law.  Mattel MSJ 34-35.

9    Given that Mattel cannot satisfy the standard set forth in *GAB Business* to

10   demonstrate a fiduciary relationship imposed by law, Mattel presumably claims

11   that Bryant entered into the second type of fiduciary relationship, a "confidential

12   relationship" undertaken by agreement.  However, the two alleged "facts" relied

13   upon by Mattel—that Bryant held a "position of trust" and had access to "highly

14   confidential information"—do not even come close to demonstrating as a matter of

15   law that Bryant was in a "confidential relationship" with Mattel such that he owed

16   Mattel fiduciary duties.[15]

17           (i)     **The Employee Agreement's provisions do not create a
                     confidential relationship as a matter of law.**
18
19       As discussed at length in Bryant's Motion, California law requires more than

20   the mere assertion of the placement of trust in another or the sharing of

21   confidential information to establish a fiduciary relationship.  Indeed, California

22   courts consistently grant summary judgment on this issue *in favor of defendants*

23   where a party does not set forth facts establishing the hallmarks of an agreed upon

24   [15]  Indeed, as argued in Bryant's Motion, no triable issue of fact precludes summary

25   judgment *against Mattel* on Mattel's claim for breach of fiduciary duty.  Although the
     question of whether a confidential relationship exists involves evaluation of facts, *City*
26   *Solutions*, 201 F.Supp. 2d at 1051, courts may grant summary judgment on a breach of
     fiduciary duty claim when, as here, "the facts, taken in the light most favorable to
27   plaintiff, make it perfectly clear the parties' dealings fall into a category of relationships
     not susceptible to fiduciary obligations and that the parties have not, by their actions,
28   taken themselves out of its ambit."  *Id.*; *see also, Worldvision Enters., Inc. v. Am. Broad.
     Cos.*, 142 Cal. App. 3d 589, 595 (1983).

                                         19

413780.01

**EXHIBIT 1
PAGE 39**

PAGE __

1   confidential relationship: the *voluntary and knowing* acceptance of trust that

2   creates a *legally recognized* fiduciary relationship, placing the fiduciary in a

3   superior position of control over the dependent party. *City Solutions, Inc. v. Clear*

4   *Channel Communications,* Inc., 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002).

5   Mattel simply has not met its burden of setting forth undisputed facts which

6   establish the hallmarks of such a "confidential relationship."

7       Mattel fails to mention these established requirements for creating a

8   confidential relationship. Instead, it summarily asserts that the provisions of the

9   Employee Agreement stating that Mattel "depends upon [the employee] to

10   maintain [the confidentiality of Proprietary Information] and [the employee]

11   accept[s] that position of trust...create a fiduciary duty under California law."

12   Mattel MSJ 34. Remarkably, the only case Mattel cites to support its flatly

13   incorrect assertion is *GAB Business. Id.* In fact, *GAB Business* specifically notes

14   that *even when an employee is an officer*, something more than mere title is needed

15   to create a fiduciary relationship. *GAB Business*, 83 Cal. App. 4th at 420. "After

16   all, a corporation cannot make a mail clerk its fiduciary by simply bestowing upon

17   the clerk the title of officer." *Id.*

18       Thus, *GAB* Business rejected the very proposition upon which Mattel now

19   appears to rely—that a party can claim a fiduciary relationship is created merely by

20   stating that an employee has a particular title or, as here, is designated as holding a

21   "position of trust." As discussed above, the Employee Agreement was an adhesive

22   form agreement, signed by all Design Center employees, and many others,

23   amounting to thousands (even tens of thousands) of Mattel employees, including

24   seamstresses. SUF ¶¶ 11-13, 17-18. Mattel asserts that this fact alone—the

25   inclusion of a Proprietary Information provision in an adhesive contract—creates a

26   confidential relationship giving rise to a fiduciary relationship with every

27   employee it hires, including Bryant. Mattel's failure to cite any additional case for

28

EXHIBIT 1
PAGE 40

1  this position underscores its absurdity.[16]

2      **(ii) Bryant's alleged access to confidential information is insufficient to create a fiduciary relationship.**

3

4    Mattel then argues that even if the provisions of the Employee Agreement

5  do not create a "confidential relationship," Bryant became a fiduciary because

6  Mattel entrusted him with highly confidential information, relying on *Stevens v.*

7  *Marco,* 147 Cal. App. 2d 357 (1956). Mattel MSJ 34-35. Again, Mattel fails to

8  satisfy the standards set forth in the cases it relies upon. In *Stevens v. Marco,*

9  Stevens, an inventor, disclosed a secret invention to Marco, the officer of a

10  company capable of manufacturing the invention. Stevens then entered into a

11  series of agreements with Marco in which Marco promised that, in exchange for

12  transferring Steven's interest in the invention, Marco would prosecute an

13  application for a patent, manufacture and sell the device, and pay plaintiff a royalty

14  on gross sales. *Stevens v. Marco,* 147 Cal. App. 2d at 373. The court specifically

15  noted that "all the classic elements of a confidential relation" were present: (1)

16  entrusting of a secret invention to a person with the ability to develop, patent and

17  exploit it; (2) Marco's superior position, since he was in charge of marketing,

18  production and bookkeeping; and (3) a relationship akin to that of a trustee or joint

19  venturer. *Id.* at 373-74.[17]

20  [16] Mattel perhaps relies upon *GAB* Business only for its recitation of the general
21  requirements of a confidential relationship that gives rise to a fiduciary relationship. If
so, *GAB Business* is equally unhelpful to Mattel. In reaching its holding, *GAB Business*
22  acknowledged the line of authority discussing the "*other kind* of fiduciary duty—one
'undertaken by agreement' rather than 'imposed by law.'" *Id.* at 417. The court then
23  explained that this line of authority was not germane to the issue before it—when to
impose a fiduciary duty on an officer of a corporation. *Id.* at 417-19. *GAB Business*
24  offers no support for Mattel's claim that the insertion of a confidentiality provision in
Bryant's Employee Agreement creates a fiduciary relationship.
25  [17] Mattel also relies upon *Michelson v. Hamada,* 29 Cal. App. 4th 1566, 1581 (1994) for
the general proposition that confidential and fiduciary relationships arise whenever trust
26  and confidence is reposed by one person in the integrity of another. However, *Michelson*
goes on to note that courts have not found confidential relationships in certain
27  relationships such as employer-employee, landlord-tenant, insurer-insured, and other
contractual relationships. *Id.* Moreover, in *Michelson,* the alleged fiduciary relationship
28  arose out of the plaintiff's agreement with the defendant that the defendant would perform
bookkeeping, billing and collection services for plaintiff's professional corporation in

1    Here, even Bryant's supposed admissions (which Mattel overstates) do not

2  even approach the factual situation in *Stevens v. Marco*. According to Mattel,

3  Bryant understood that he was to keep the work at Mattel secret; he had access to

4  knowledge of the products that he was working on, he attended product

5  development meetings; he attended some brainstorming sessions about future

6  products; and the Mattel design center was open such that employees could walk

7  by and see what a doll designer was doing. Mattel MSJ 35. Thus, the information

8  "entrusted" to Bryant is nothing more than the information he needed to do his

9  job—it is not analogous to the entrusting of a secret invention to the business

10  person who will take sole charge of exploiting it.

11    More importantly, courts, including the court in *Stevens v. Marco*, have

12  repeatedly held that the entrusting of confidential information is not sufficient to

13  create a "confidential relationship" that gives rise to fiduciary duties. *Stevens*, 147

14  Cal. App. 2d at 373-74; *see also City Solutions*, 201 F. Supp. 2d at 1050

15  (confidentiality agreement between two parties considering bidding on a public

16  contract and sharing of confidential information did not create a confidential

17  relationship where the contract did not); *Rita Medical Systems, Inc. v. Resect*

18  *Medical, Inc.*, 2007 WL 161049 (N.D.Cal.) *6 (employee had no fiduciary duty as

19  a matter of law where the employment contract required employee to keep trade

20  secrets confidential but did not clearly indicate he had a fiduciary duty). If an

21  employee's access to confidential information needed to do his job were sufficient

22  to create a fiduciary relationship, then nearly every employee in California would

23  be a fiduciary—a result *GAB Business* and other courts have already rejected.

24    In short, Mattel has not even attempted to show that the additional "classic

25  elements of a confidential relations" are present. Nor can it. Mattel points to no

26  facts that show that Bryant *knowingly* or *voluntarily* agreed to enter into a

27

28  exchange for 50% of the first $120,000 collected. Defendant was not an employee of
    plaintiff, nor did the case turn on access to confidential information. *Id.* at 1576-77.

22

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 42
EXHIBIT
PAGE _

1   "confidential relationship" with Mattel.[18]  Nor does Mattel point to any act creating

2   a legally recognized fiduciary relationship—such as a trustee or joint venturer.[19]

3   Mattel also fails to set forth evidence that Bryant was placed in a position of

4   control over Mattel's property or affairs.[20]  Indeed, the existence of the contracts

5   governing the relationship between Bryant and Mattel precludes a finding that the

6   parties entered into a separate "confidential relationship."[21]  Thus, because the

7   Employee Agreement specifically covers the relationship between Mattel and

8   Bryant and does not impose a fiduciary duty, SUF ¶¶ 14, the court should reject

9   Mattel's attempt to convert its breach of contract claim into a tort claim, merely in

10  order to obtain additional damages.[22]

11          3.      **Bryant did not breach his limited duty of loyalty (or any alleged**
                    **fiduciary duty) by preparing to compete with Mattel** *after* **leaving**
12                  **his employment.**

13          Mattel also moves for summary judgment on the issue of breach—claiming

14  that the undisputed facts show a "pattern of conduct [that] is a classic breach of the

15  duty of loyalty and fiduciary duty." Mattel MSJ 36.  Mattel's motion must be

16  denied because Mattel again misstates the legal standard and relies on highly

17  disputed facts.

18

19  [18] To the contrary, as set forth in Bryant's Motion and incorporated herein, the undisputed
20  facts show that Bryant did not voluntarily assume any fiduciary duty to Mattel.

    [19] *See* Bryant's Motion at 15-16 (discussing *Maglica v. Maglica*, 66 Cal. App. 4th 442
21  (1998) and *Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003)).

22  [20] To the contrary, Bryant was merely one member of one design team at Mattel, which
    has thousands of employees and numerous design teams. *See* Bryant's Motion 6-7.

23  [21]As a general rule, courts have found that no fiduciary duty exists "where other legal
    relationships clearly existed between parties which covered the transaction in suit and
24  which were inconsistent with the existence of fiduciary duty." *Oakland Raiders v. Nat'l
    Football League*, 131 Cal. App. 4th 621, 634 (2005) (internal quotation marks omitted);
25  *see also City Solutions*, 201 F. Supp. 2d at 1049 (existence of confidentiality agreement
    precludes finding of breach of fiduciary duty not explicitly required by the agreement);
26  *Wolf*, 107 Cal. App. 4th at 25 (reposing trust and confidence in the party to a contract
    does not create a fiduciary relationship but rather affords redress for breach of contract).

27  [22]Mattel cannot raise a triable issue of fact defeating Bryant's Motion as to its claim for
    breach of fiduciary duty. However, in the event the Court disagrees, certainly Bryant has
28  raised a triable issue of fact to *defeat* Mattel's Motion on this issue.

EXHIBIT 1
PAGE 43

EXHIBIT
PAGE

1       As set forth below and as Bryant will prove at trial, Bryant's actions before

2  leaving Mattel were nothing more than preparations to compete, privileged under

3  California law.  In particular, (1) Bryant was *not* required to disclose his efforts to

4  obtain another job; (2) Bryant owned the Bratz idea and sketches he pitched to

5  MGA; (3) Bryant undertook no acts of direct competition with Mattel while

6  employed at Mattel; (4) Bryant's use of any Mattel resources (including his own

7  time) was *de minimis* and thus does not establish a breach of any duty; and (5)

8  Bryant fully fulfilled his job responsibilities at Mattel.

9       As a preliminary matter, whether an employee has breached his duty of

10  loyalty (or his alleged fiduciary duty) is a question for the trier of fact. *See Sequoia*

11  *Vacuum Sys. v. Stransky*, 229 Cal. App. 2d 281, 288 (1964) ("For that reason, the

12  determination of the particular factual circumstances and the application of the

13  ethical standards of fairness and good faith required of a fiduciary in a given

14  situation are for the trier of facts."); *Science Accessories Corp. v. Summagraphics*

15  *Corp.*, 425 A. 2d 957, 962 (1980).  This question of breach is highly dependent of

16  the facts of each case, in part because "[n]o ironclad rules as to the type of conduct

17  which is permissible can be stated . . ." *Bancroft Whitney Co. v. Glen*, 64 Cal. 2d

18  327, 346 (1966).  Moreover, it is "difficult to draw a clean distinction between acts

19  prior to termination . . . that constitute mere preparation for competition . . . and

20  actions that constitute competition." Restatement (Third) of Agency § 804 cmt c;

21  *see also Auxton Computer Enters., Inc. v. Parker*, 174 N.J. Super. 418, 424 (1980)

22  ("Obviously, each case must be decided upon its own facts; because of the

23  competing interests the actionable wrong is a matter of degree.").  Further, this

24  distinction between "mere preparation to compete" and "actions that constitute

25  competition" is difficult to assess because the propriety of certain actions may

26  "depend on the intention with which the [employee] acted and the surrounding

27

28

EXHIBIT _____

PAGE ____

**EXHIBIT 1**
**PAGE 44**

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

1  circumstances." Restatement (Third) of Agency § 804 cmt c.[23]  This is precisely

2  the type of factual issue ill-suited to summary adjudication – especially on a

3  motion brought by Mattel, which bears the burden of proof at trial and cannot

4  prevail unless its evidence would justify a directed verdict in its favor.  *See Miller*,

5  454 F.3d at 975.

6             **a.**    **Bryant did not directly compete with Mattel while a Mattel**

                     **employee—and thus he did not breach his duty of loyalty to**

7                            **Mattel.**

8           Despite the intensely factual nature of the inquiry, courts have consistently

9  distinguished between permissible *preparations to compete* with one's employer

10  *after leaving employment*, on the one hand, and impermissible *direct competition*

11  with one's employer *while still employed*, on the other hand.  Therefore, "[t]he

12  mere fact that [an employee] makes preparations to compete before he resigns his

13  office is not sufficient to constitute a breach of duty." *Bancroft Whitney*, 64 Cal.

14  2d at 346; *accord Eckard Brandes, Inc., v. Riley*, 338 F. 3d 1082, 1086 (9th Cir.

15  2003).  An employee does, however, breach the duty of loyalty (or a fiduciary

16  duty) if he engages *in direct competition* with his employer, such that the employer

17  is harmed during the term of employment. *Auxton Computer Enters., Inc.*, 174

18  N.J. Super. at 424 ("It is something more than preparation which is so harmful as

19  to substantially hinder the employer in the continuation of his business);

20  Restatement 2d Agency § 393 cmt e (employee may not do "similar acts in direct

21

22  [23]  Indeed, although the duty of loyalty is one that every employee in California owes his
employer, the scope of that duty is determined by the level and job responsibilities of the

23  employee. 19 Williston on Contracts § 54:26 (4th ed.) ("the scope of the duty of loyalty
that an employee owes to his or her employer may vary with the nature of their

24  relationship; it is generally agreed that a higher duty of loyalty exists for employees who
occupy positions of trust and confidence than for those who occupy low-level positions."

25  Bryant has presented undisputed evidence that he was an ordinary Mattel employee, with
no managerial responsibilities or decision-making authority. Thus, any reliance by

26  Mattel on cases such as *Sequoia Vacuum*, 229 Cal. App. 2d 281 (1964), *Daniel Orifice
Fitting Co. v. Whalen*, 198 Cal. App. 2d 791 (1962), and *Bancroft Whitney*, 64 Cal. 2d

27  327 (1966) to define the scope of Bryant's duties to Mattel is misplaced. These cases all
base their analysis on the fact that the employees at issue were officers, with managerial

28  responsibilities, and with unique *fiduciary* duties as a result of their status as officers.

25
BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

**EXHIBIT 1
PAGE 45**

PAGE_

competition with the employer's business"). Moreover, "[p]roof of serious employee misconduct causing injury to the employer must also be shown before relief will generally be granted." *Science Accessories*, 425 A. 2d at 965; *see also Auxton Computer Enters.*, 174 N.J. Super. at 424.[24]

Following these guiding principles, courts have held that employees may, during the term of their employment, undertake extensive efforts to establish a competing business and immediately compete upon termination of employment. *Bancroft Whitney*, 64 Cal. 2d at n. 10 (quoting Restatement 2d Agency § 393 cmt e); *Maryland Metals, Inc. v. Metzner*, 282 Md. 31 (1978). Employees may use *de minimis* amounts of their employer's resources, such as phones, faxes, computers, and employee time. *Science Accessories Corp.*, 425 A. 2d at 962 (use of telephone and small amount of wire worth $30); *Edenbaum v. Dalton*, 2002 WL 31474450 (Cal. Ct. App. Nov. 6, 2002) (use of office resources during working hours); *Abraham Zion Corp. v. Lebow*, 593 F. Supp. 551, 570-71 *aff'd*, 761 F. 2d 93 (2d Cir. 1985) (use of employer's clothing pattern where such use caused no economic harm); *Merger Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219 (D. D.C. 1996) (use of laptop).[25]

Employees also may discuss their competing venture with other employees and ask customers whether work might be available. *Abraham Zion Corp.*, 593 F.

---

[24] Even an officer (which Bryant indisputably was not), who has a far greater duty to a company, may engage in a competing business while he remains an officer *provided that he does not cripple or injure the business. See Sequoia Vacuum Sys.*, 229 Cal. App. 2d at 286 (citing *Daniel Orifice*, 198 Cal. App. 2d at 800 ("[A] party may not enter into a competing enterprise which cripples or injures a business or corporation *of which he remains an officer or director*.") (emphasis added).

[25] *See also Rapistan Corp. v. Michaels*, 511 N.W. 2d 918 (Mich. Ct. App. 1994) (employees use of "funds, facilities, personnel, and compensated time, in minimal amounts" to assist in the acquisition of $29 million company was insufficient to show a "substantial nexus or causal connection" between the assets used and the business opportunity and therefore employees were not estopped to deny acquisition was a corporate opportunity); *Seward v. Union Pump Co.*, 428 F. Supp. 161 (S.D. Texas 1977) (no breach of fiduciary duty where officer used secretary for matters associated with side business where performance of ministerial tasks did not work to "the detriment of Union Pump" because secretary performed all his duties to the fullest extent).

26
EXHIBIT ___
BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)
PAGE __
EXHIBIT 1
PAGE 46
413780.01

1   Supp. at 570-71 (discussion with retailers regarding potential collaboration);

2   *Computer Sciences Corp. v. Ferguson*, 74 Cal. Rptr. 86, 92-93 (1968)

3   (unpublished) (discussion with fellow employees and customers); *Merger Mgmt.*

4   *Consulting*, 920 F. Supp. 219 (executives identified clients and sent them discs of

5   all work). Employees may use some time during work hours to prepare to

6   compete, and be paid their salary while they do so, provided they continue to

7   perform their job responsibilities. *Edenbaum*, 2002 WL 31474450 *8 (payment of

8   salary while employee performed outside work); *Computer Sciences Corp.*, 74

9   Cal. Rptr. at 93 (no evidence defendant failed to perform work competently);

10  *Auxton Computer Enters., Inc.*, 174 N.J. Super at 424-25 (employee said he was ill

11  in order to attend meeting on behalf of competitor with whom employee sought a

12  job); *Science Accessories Corp.*, 425 A. 2d at 962 (use of off-hours time to work

13  on invention). Employees may even use marketing plans, customer lists or other

14  information learned during their employment provided it is not a trade secret or

15  confidential information. *Western Medical Consultants Inc. v. Johnson*, 80 F. 3d

16  1331, 1336-38 (1996) (use of marketing plans and customer lists obtainable from

17  public sources); *Abraham Zion*, 593 F. Supp. at 570 (use of pattern for clothing

18  was not prohibited where the information obtained was generally available from

19  public sources to members of the trade).

20      In contrast, courts have found a breach of the duty of loyalty where an

21  employee, while still employed by the former employer, engaged *in direct*

22  *competition* with his employer, such that an employer was harmed while the

23  employee remained in its employ. For example, employees breached their duty of

24  loyalty (or fiduciary duty) where they formed a competing company and bid

25  against their employers while still employed or sold competing products or

26  diverted sales away from their employer. *Eckard Brandes*, 338 F. 3d at 1086 (bid

27  against employer); *T.A. Pelsue Co. v. Grand Enters., Inc.*, 782 F. Supp. 1476, 1486

28  (D. Colo. 1991) (sold competing products while still employed); *Material Supply*

27

**EXHIBIT** _____

413780.01

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)   **PAGE** _   **EXHIBIT 1**
**PAGE 47**

1  *Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F. 3d 983, 993 (D.C. Cir. 1998) (use of

2  employer's trademark to solicit sales for its own private label).[26]

3         **b.**  **Bryant was not required to disclose his efforts to pursue the Bratz idea.**

4      Thus, in order to establish that Bryant breached his duty of loyalty to Mattel

5  as a matter of law, Mattel must set forth undisputed facts showing that Bryant

6  engaged in *direct competition* with Mattel *while employed at Mattel*.  Mattel does

7  not even attempt to make any such showing.  Instead it acknowledges in a cursory

8  sentence that preparations to compete do not constitute breach of any duty, and

9  then erroneously states that "for any such preparation to compete defense to apply,

10  Bryant had to disclose his plans to Mattel," relying on *Daniel Orifice Fitting Co.*,

11  198 Cal. App. 2d at 800-01 and *Sequoia Vacuum Sys.*, 229 Cal. App. 2d 281, 287

12  (1964). Mattel MSJ 37-38.[27]

13      Mattel is simply wrong.  In *Bancroft Whitney Co. v. Glen*, 64 Cal. 2d 327

14  (1966), the California Supreme Court specifically rejected Mattel's interpretation

15  of *Daniel Orifice* and *Sequoia Vacuum*.  The Court held that, even for an officer

16  (which Bryant was not) with fiduciary duties (which Bryant lacked), "[t]here is *no*

17  *requirement that an officer disclose his preparations to compete with the*

18  *corporation in every case*, and failure to disclose such acts will render the officer

19  liable for breach of his fiduciary duties only where particular circumstances render

20  nondisclosure harmful to the corporation." *Id.* at 347 (emphasis added).  Indeed, as

21  numerous courts have held, to require an at-will employee, such as Bryant, to

22

23  [26] Courts have attempted to summarize the preparation to compete doctrine by stating that employees have a privilege to prepare to compete while still employed, but

24  misconduct such as misappropriation of trade secrets, misuse of confidential information, solicitation of an employer's customers before terminating employment, conspiracy to

25  cause 'mass resignation' of key employees, and usurpation of a corporate opportunity will defeat the privilege. *Science Accessories Corp.*, 425 A. 2d at 962 (*citing Maryland*

26  *Metals, Inc.*, 382 A. 2d at 569-70).

27  [27] Mattel's characterization of "preparations to compete" as a "defense" is also incorrect. Mattel bears the burden on the issue of Bryant's alleged breach.  As the above cases

28  establish, Mattel must show Bryant engaged in acts of direct competition—which it has not done simply by pointing to acts constituting preparations to compete.

28
BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)
PAGE _

EXHIBIT
EXHIBIT 1
PAGE 48

413780.01

1  disclose preparations to compete would render the employee's right to prepare to
2  compete meaningless.[28]

3      Mattel not only misleads the Court by asserting disclosure is required, but it
4  also fails to point to any particular circumstances that rendered Bryant's failure to
5  disclose his plans harmful. *Cf. id.* at 347-48 (president misled employer into
6  thinking competitor would not raid employees, suggested a two-step salary
7  increase that made employees more vulnerable to raid, and disclosed confidential
8  salary information to competitor). To the contrary, as described above, Bryant was
9  looking into starting a new career and did not want his supervisors at Mattel
10 thinking that he was going to quit until he had a signed contract with MGA locked
11 down. He gave Mattel notice as soon as practicable—the day he signed his
12 contract with MGA. SGI 151. *Cf. id.* at 330 (noting that president signed contract
13 with competitor but failed to give notice to employer). Further, he informed both
14 colleagues and those in management at Mattel that he was leaving to work
15 freelance on his own line of dolls. SGI 154-156. Thus, Bryant simply exercised
16 his right under California law to pursue a new job without disclosing every step of
17 that process to his current employer. *See Am. Home Shield of Cal., Inc. v. Fidelity*
18 *Nat'l Home Warranty Co.,* 2003 WL 21085278, *12 (Cal. App. 4 Dist. 2003)
19 (sustaining demurrer without leave to amend and noting that plaintiff failed to "cite

20

21  [28] Rest. 3d Agency § 8.04 cmt. c. ("An employee or other agent who plans to compete
    with the principal does not have a duty to disclose this fact to the principal. To be sure,
22  the fact that an agent has such a plan is information that a principal would find useful, but
    the agent's fiduciary duty to the principal does not oblige the agent to make such
23  disclosure. Nor does an agent's duty to provide facts to the principal . . . require
    disclosure to the principal of an agent's competitive plans. In this respect, the social
24  benefits of furthering competition outweigh the principal's interest in full disclosure by
    its agents."); *Auxton Computer Enters,* 174 N.J. Super at 324 ("If the right to changes
25  jobs is to be in any way meaningful for an employee not under contract for a definite
    term, it must be exercisable without the necessity of revealing the plans to the
26  employer."); *Abraham Zion Corp. v. Lebow,* 593 F. Supp. 551, 571, *aff'd,* 761 F. 2d 93
    (2d Cir. 1985) (no duty to notify employer of preparations to compete, since doing so
27  would render the right to engage in such conduct meaningless); *Maryland Metals,* 382
    A.2d at 573 ("an employee's privilege to plan and prepare for future competition while in
28  the employ of a prospective competitor would be rendered practically meaningless if the
    employee were required by law to reveal the details of such arrangements").

29

413780.01

EXHIBIT 1
PAGE 49

EXHIBIT __
PAGE __

1  any authority for the proposition that an at-will employee violates any duty of

2  loyalty by negotiating an agreement with a prospective employer and not divulging

3  plans to change employment until she has made a final decision.").

4         c.     **Bryant owned the Bratz idea and, thus, his assignment of the idea to MGA cannot be the basis for a claim of breach.**

5

6         Setting aside lack of disclosure as a basis for establishing a breach of an

7  employee's duty of loyalty (or fiduciary duty), Mattel complains that Bryant

8  breached his duty of loyalty because he "conveyed to MGA drawings and models

9  he created while employed by Mattel." Mattel MSJ 36. However, taking the facts

10  in the light most favorable to Bryant, as the Court must, Bryant came up with the

11  idea for Bratz, and drew and described his initial sketches, in the summer of 1998

12  while living at home in Missouri. SGI 136-137. This was the idea he pitched to

13  MGA—an idea he owned because, as set forth above, it was not an "invention,"

14  much less an invention "conceived or reduced to practice" during his employment

15  with Mattel. Thus, Mattel cannot rely on its disputed claim of ownership of the

16  Bratz idea and sketches as a basis for claiming that Bryant breached his duty of

17  loyalty to Mattel *as a matter of law*.[29]

18  [29] For this reason, Mattel's reliance on *Daniel Orifice Fitting Co. v. Whalen*, 198 Cal.

19  App. 2d 791 (1962), is misplaced. In *Daniel Orifice*, the vice president and chief engineer was found by the trier of fact to have breached his fiduciary duty to the

20  company by secretly using the confidential information he obtained as a result of his position as chief engineer to design improvements and modifications to the company's

21  valves while still employed at the company. *Id.* at 796. Rather than turning over the improvements to the company (as he had done for years), he retained them for his own

22  use, and immediately upon resigning started a directly competing business. *Id. Daniel Orifice* relies upon a holding that Whalen's inventions created while employed as chief

23  engineer were owned by his employer under his employment contract, in part because Whalen had turned over previous inventions to his employer. *Id.* at 798. Again, here, the

24  facts taken in the most favorable light to Bryant, shows that Bryant owned his Bratz idea and sketches; this alone distinguishes the holding of *Daniel Orifice*. Moreover, here,

25  unlike in *Daniel Orifice*, Bryant is not an officer; he was not employed to design new cutting edge dolls at Mattel, but to design elements of the classic Barbie line; Bryant

26  created the *Bratz* idea prior to his employment with Mattel, and used no confidential information from Mattel in order to do so. Lastly, here, there is evidence Mattel never

27  would have developed Bratz, and thus his idea could not be viewed as a corporate opportunity. *See also Science Accessories*, 425 A. 2d at 962 (invention was not a

28  corporate opportunity where evidence showed corporation would not have been interested in developing it).

30

EXHIBIT

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

PAGE __

**EXHIBIT 1
PAGE 50**

### d.   Bryant undertook no acts of direct competition with Mattel while still an employee.

The remaining facts Mattel complains of also fail to establish any breach of a duty of loyalty to Mattel, and certainly show no direct acts of competition by Bryant while still employed at Mattel. Bryant's use of a small amount of his own time, where there is no evidence he failed to perform his job duties, is insufficient to establish a breach. *E.g, Auxton Computer Enters,* 174 N.J. Super at 424-25 (employee's excuse of illness on day he attended interview on behalf of competitor was insufficient to establish breach). Bryant's use of a *de minimis* amount of Mattel's resources—the phone, the fax, a doll head found in the trash, and a few hours of employees' non-Mattel time, is also insufficient to establish a breach. *E.g. Science Accessories,* 425 A. 2d at 962 (use of telephone and wire were not a breach); *Abraham Zion,* 593 F. Supp. at 570-71 (use of employer's clothing pattern). Bryant's work on Prayer Angels as a "try out" project, is analogous to attending a meeting representing a competitor in an effort to obtain a job.[30] *Auxton Computer Enters,* 174 N.J. Super at 424-25 (attending meeting on behalf of competitor was nothing more than part of employee's effort to obtain a new job).[31]

Further, Bryant's contacting one hair vendor—whose identity Mattel has not even claimed was a trade secret or otherwise confidential information—is also insufficient to establish a breach. *Computer Sciences Corp.,* 74 Cal. Rptr. At 92-93 (asking customer whether work might be available not a breach); *Abraham Zion Corp.,* 593 F. Supp. at 570-71 (asking retailers about potential collaboration and

---

[30] Also, Bryant's work on the tryout project, evening wear sketches, and the "dummy" could not constitute direct competition with Mattel, because MGA never used them.

[31] Moreover, even if Bryant's try out project were viewed as "moonlighting," this practice was widely accepted at Mattel, as discussed above. *See* Restatement (Third) Agency Sect. 8.04, cmt. b (even if an employer's consent is necessary for an employee to be free to compete during the term of his employment, such consent need not be explicit, but can be shown by "implied understandings and known customs."); *Warrantech Corp. v. Computer Adapters Servs., Inc.,* 134 S.W.3d 516, 531 (Tex. App. 2004) (employer implicitly sanctioned moonlighting by its employees because supervisors made efforts to structure employee work schedules so as not to interfere with their second jobs).

31

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE _
EXHIBIT 1
PAGE 51

1  using information generally available to the trade not a breach).[32]  Lastly, the trier

2  of fact is entitled to consider and (for the purposes of this motion) believe that

3  Bryant's intentions prior to leaving were simply to pursue a new career

4  opportunity. *Auxton Computer Enters.*, 174 N.J. Super. at 425 (defendant was

5  "simply trying to get a job"); *cf. Franklin Music Co.*, 616 F. 2d at 532-33 (trier of

6  fact could believe that president wanted to harm majority owner of company).

7      All the circumstances Mattel complains of do not amount to any actual

8  injury to Mattel while Bryant was still employed at Mattel, and thus do not even

9  approach the conduct in the remaining cases relied upon by Mattel.  Bryant's

10  efforts to seek a new career opportunity are in no way similar to forming a

11  fraudulent subcontracting business with the specific purpose of defrauding one's

12  employer. *J.C. Peacock, Inc. v. Hasko*, 196 Cal. App. 2d 353, 358-59 (1961).[33]

13  Nor do these facts show any direct competition with Mattel similar to the

14

15  [32] Mattel's reliance on *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, (1995) and *Fowler v. Varian Associates, Inc.*, 196 Cal. App. 3d 34, 37 (1987), is misplaced. Both cases held

16  that an employee's claim of wrongful discharge failed because the employee at issue had become sufficiently involved with a potential competitor to justify the employer's

17  termination of the employee. Thus, *Stokes* held that Dole Nut had cause to terminate two long term employees (the night shift manager and production supervisor) who had taken

18  several steps toward starting their own almond processing plant—including buying land, speaking with bank representatives about getting a loan, discussing the project with other

19  employees, producing financial projections, producing several proposals, and approaching governmental and financing agencies.  However, the court in *Stokes*

20  specifically noted that the standard for termination with cause is not identical to the standard for tortious behavior of an employee, noting that "an employer is not required to

21  retain an employee while awaiting the commission of a tort." 41 Cal. App. 4th at 295. Similarly, in *Fowler*, the court held that the employer, Varian, had good cause to

22  discharge its marketing manager, who had met with those forming a competing venture, had provided ideas, had assisted in efforts to obtain financing, and had examined a

23  possible building site.  The employee's refusal to provide Varian with any information regarding the competing venture was held to be good cause for his discharge. 196 Cal.

24  App. 3d at 41-42.  Thus, although Mattel could perhaps rely on *Stokes* or *Fowler* to justify terminating Bryant for his contacts with a competitor, neither case offers support

25  for the Mattel's claim that Bryant's actions establish an actionable breach of Bryant's duty of loyalty.

26  [33] Mattel misleadingly claims the facts in this case are more "egregious" than those in *J.C. Peacock, Inc. v. Hasko*, 196 Cal. App. 2d 353, 358-59 (1961). Mattel MSJ 39. Not

27  so. In *Hasko*, the general manager for J.C. Peacock formed a partnership "for the purpose of cheating and defrauding [J.C. Peacock] in the subcontracting work of the

28  partnership." *Id.*  Moreover, he and another defendant falsely represented J.C. Peacock's profits to the owner in order to obtain bonuses based on the false profits. *Id.*

EXHIBIT 1
PAGE 52
413780.01
PAGE.

1   engineering of an *en masse* resignation of employees (*Bancroft Whitney*), or the

2   direct bidding for contracts against an employer while still employed (*Eckard*

3   *Brandes*).  Thus, Mattel has failed to meet its burden of establishing a breach of the

4   duty of loyalty (or any alleged fiduciary duty) as a matter of law.  Of course,

5   Mattel's true complaint is that months after Bryant left Mattel, MGA launched a

6   doll that beat Mattel in the market place.  And, that, as Bryant and MGA will prove

7   at trial, is not an actionable wrong of any kind.

8   **D.    Mattel is not entitled to summary judgment on Bryant and MGA's affirmative defenses.**

9

10  **1.    Bryant's affirmative defenses based on applicable statutes of limitations, laches, waiver, consent, and estoppel must go to the jury, as set forth in the MGA parties' opposition brief.**

11

12  Bryant joins in MGA's arguments opposing Mattel's motion for summary

13  judgment on MGA and Bryant's affirmative defenses based on the statute of

14  limitations, laches, waiver, consent, and estoppel.  Bryant incorporates the related

15  arguments and facts in the MGA Opposition, as though fully set forth here.

16  **2.    Bryant's Phase I unclean hands defense must go to the jury.**

17  Bryant's unclean hands defense must also go to the jury, because it presents

18  genuine issues of fact (including intent and motive) not amenable to decision on

19  summary judgment.  "Whether the doctrine of unclean hands applies is a question

20  of fact." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970,

21  978 (1999).  Summary adjudication of the unclean hands defense is particularly

22  difficult because the defense is intimately related to the facts of the specific case,

23  and requires broad consideration of Mattel's entire course of conduct.  Courts have

24  consistently held that, even if a party's conduct is not outright illegal, the equitable

25  principles underlying the unclean hands doctrine dictate that "[a]ny

26  unconscientious conduct upon his part which is connected to the controversy will

27  repel him from the forum whose very foundation is good conscience." *Pond v.*

28  *Insurance Co. of N. Am.*, 151 Cal. App. 3d 280, 291 (1989); *Kendall-Jackson*, 76

33

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 53

1 │ Cal. App. 4th at 979 ("[T]he misconduct need not be a crime or an actionable tort.

2 │ Any conduct that violates conscience, good faith, or other equitable standards of

3 │ conduct is sufficient cause to invoke the doctrine."); *Fibreboard Paper Prods.*

4 │ *Corp. v. East Bay Union of Machinists*, 227 Cal. App. 2d 675, 727 (1964).

5 │ Although unclean hands does not warrant a wholesale trial of a party's morals, the

6 │ fact-finder can consider any inequitable conduct connected to the controversy or

7 │ transactions at issue: unclean hands is not a technical defense tied to any particular

8 │ element of a specific cause of action, but an equitable rationale based on principles

9 │ of fairness. *Kendall-Jackson*, 75 Cal. App. 4th at 986. To avoid an unclean hands

10 │ defense, a party must "act fairly in the matter for which he seeks a remedy," and

11 │ must keep clean hands both before and after coming into court. *Id.* at 978.

12 │ Mattel's hands in this litigation are far from clean, and only the jury can

13 │ decide whether Mattel's conduct should bar its claims against Bryant. Bryant's

14 │ unclean hands defense here does not depend on overt, easily-documented crimes or

15 │ illegality (for which, after all, the law provides other remedies), but on a more

16 │ subtle balance of equities and intent that the unclean hands defense exists to

17 │ evaluate: given its acts in this matter, is Mattel a worthy claimant in a court of

18 │ equitable justice? Bryant has raised numerous issues for trial as to Mattel's subtle

19 │ and secretive misbehavior (just as inequitable and damning to Mattel's claims as

20 │ any crime); the jury must weigh these issues through the mechanism of unclean

21 │ hands precisely because they involve questions of motive, credibility, and intent

22 │ that are not clear-cut and susceptible of proof on a cold record, but depend on

23 │ inferences to be made with a holistic understanding of a case at trial. Whether

24 │ those acts bear a close enough connection to Mattel's claims to support the defense

25 │ is also a question for the jury. *See Kendall-Jackson*, 75 Cal. App. 4th at 988.

26 │ Mattel's wrongs in this matter are many. First, Mattel continues to assert

27 │ rights to Bryant's Bratz idea and sketches based on a deceptive Checkout form that

28 │ the company forced Bryant to sign when he left his employment, and which

34

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 1
PAGE 54

413780.01

PAGE

1    blatantly misrepresented the terms of his actual agreement with the company.

2    Bryant Motion 38-39. The jury must determine whether Mattel did so in bad faith,

3    in an attempt to intimidate and coerce its employees into ceding to Mattel rights it

4    could not legitimately claim. Also, Mattel now claims that its Employee

5    Agreement documents a draconian seizure of its employees' entire creative lives,

6    but the undisputed evidence is that Mattel never explained its purported

7    understanding of the document to its employees. *See id.* 25-28. If (as Mattel now

8    claims) it always understood the Employee Agreement to have such a drastic effect

9    on its employees' rights, a jury could reasonably find that Mattel acted unfairly and

10   deceptively by asking its employees, including Bryant, to sign the Agreement as

11   part of a routine on-boarding process that involved no explanation of the

12   document, and only a cursory warning that it could affect their rights.[34] *See id.*

13       Similarly, although it was common knowledge at Mattel (including among

14   management) that many employees engaged in non-Mattel work on the side,

15   Mattel never took any steps while Bryant was at Mattel to enforce its supposed

16   prohibitions on non-Mattel work, or to explain its policies to employees. *Id.* 7-8;

17   SUF 37-41. By doing so, Mattel deliberately (a jury could find) induced in Bryant

18   a false sense of independence and privacy, which Mattel intended to destroy only

19   when it served the company's purposes. The jury could infer that Mattel

20   deliberately declined to enforce its moonlighting policy in hopes that it could then

21   pursue and claim Bryant and other employees' independent creative projects as its

22   own, thus preserving its market dominance through deliberate deceit and

23   manipulation. Further evidence confirms that this was Mattel's settled practice:

24   even after Bryant left Mattel, the company continued to ignore widespread

25   moonlighting, until it discovered that certain seamstresses still in its employ had

26

27   [34] Bryant contends that Mattel had no such belief, as the document does not mean what Mattel claims; however, if Mattel's *post hoc* interpretation prevails, then its conduct in

28   forcing employees like Bryant to sign it was plainly inequitable.

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 55

PAGE _

1   taken in side-work at home on Bratz clothes; in the interests of obtaining an edge

2   in this litigation, by any means possible, before firing them Mattel brutally

3   interrogated them using plainly inequitable—if not illegal—methods.  SGI 166.

4   *See* Declaration of Marcus R. Mumford In Support of MGA's and Carter Bryant's

5   Motion For An Evidentiary Hearing Re: Witness Tampering (Docket No. 2651),

6   Exs. 3-6.[35]

7          In addition, through this recent abuse of its now-former seamstress

8   employees (which the jury can find was intended to gain an improper advantage in

9   trying Mattel's Phase I claims against Bryant), Mattel has dirtied its hands during

10  the course of this litigation, which necessarily relates to the matters being litigated.

11  Because a claimant "must come into court with clean hands, and *keep them clean*"

12  to escape an unclean hands defense, Mattel's recent acts sullying its hands also

13  independently defeat its claims against Bryant.  *Kendall-Jackson*, 76 Cal. App. 4th

14  at 978 (emphasis added).  Mattel also acted inequitably by delaying this suit for

15  several years after it knew about Bryant's involvement in Bratz, in order to

16  maximize its damages and use Bryant to its advantage in another litigation.  *See*

17  SGI 167; MGA Motion 15-29.

18         Any one of these unjust acts by Mattel would permit the jury to find that

19  Mattel's hands are unclean and deny Mattel any relief against Bryant.  Only the

20  jury, and not the Court, may make the inferences and evaluations of character and

21  credibility at the heart of Bryant's unclean hands defense.  The jury must weigh the

22  evidence above, and all the other evidence to be presented at trial, to determine

23  whether—considering Mattel's entire course of conduct towards Bryant—Mattel's

24  conduct "violates conscience, or good faith, or other equitable standards of

25

26  [35] Bryant will not burden the Court by re-submitting these materials, which (along with
    remaining exhibits to this Mumford Declaration, on which Bryant also relies) total nearly
27  500 pages.  Bryant also incorporates by reference here the discussion and analysis of
    these materials contained in MGA and Carter Bryant's Motion For An Evidentiary
28  Hearing Regarding Witness Tampering (Docket No. 2650).

36
BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 56

EXHIBIT
PAGE __

1 | conduct." *Fibreboard Paper Products*, 227 Cal. App. 2d at 727.

2 | ### IV.   Conclusion

3 | For all the foregoing reasons, Bryant respectfully requests that the Court

4 | deny Mattel's motion for summary judgment in its entirety.

5 | Respectfully submitted,

6 | Dated: March 24, 2008                          KEKER & VAN NEST, LLP

7 |

8 | By: _Christa Anderson AWA_

9 | CHRISTA M. ANDERSON
   | Attorneys for Plaintiff
10 | CARTER BRYANT

37

BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413780.01

EXHIBIT 1
PAGE 57

PAGE _

EXHIBIT 2

Received:      7/18/06   4:40PM         RightFAX -> JetFax   ~20;   Page 2
RightFAX                7/18/2006 4:37   PAGE 002/019   Fax Server

FILED

2006 JUL 18 AM 10: 16

**ENTERED**

JUL 18 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
                              DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT,<br><br>               Plaintiff,<br><br>v.<br><br>MATTEL, INC.,<br><br>               Defendant,<br><br>and related actions. | CASE NO. CV 04-09049 SGL (RNBx)<br><br>(Consolidated with cases CV 04-09059 and CV 05-02727)<br><br>ORDER GRANTING MOTIONS TO DISMISS |

## I. Introduction

This consolidated action involves the individual cases of Bryant v. Mattel, Inc., CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; and MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727. This Order rules on Motions to Dismiss previously docketed in cases 04-09049 and 04-9059.

The factual background underlying this consolidated action is complex. The Court sets forth the factual background only to the extent that it is necessary to discuss its ruling on two pending motions to dismiss. A hearing regarding these motions was held on June 26, 2006. For the reasons and in the manner set forth below, the Court grants both motions.

DOCKETED ON CM

JUL 18 20~

EXHIBIT ___2___

EXHIBIT ___
PAGE ___          EXHIBIT 2          — 7-18
                  PAGE 58

## II. Motion to Dismiss (04-09049)

### A.   Factual Background

Carter Bryant is a designer to whom creation of MGA's "Bratz" line of dolls has
been attributed. Compl. ¶ 6. Mattel has sued him under a variety of state-law theories
relating to certain agreements Bryant signed while an employee with Mattel. See
generally Compl. filed in 04-09059. Although Mattel has not sued him for copyright
infringement of any Mattel product, Bryant nevertheless claims that he is reasonably
apprehensive regarding being sued for copyright infringement. Specifically, Bryant
makes the following allegations in his complaint seeking declaratory relief:

First, Bryant claims that an article published in the Wall Street Journal in July,
2003, attributed to Mattel sources a belief that "the Bratz borrow liberally from a Mattel
project that was scrapped at the testing stage in 1998." Compl. Ex. A; Compl. ¶ 54.
The scrapped Mattel project is alleged to be the project referred to by Mattel as "Toon
Teens." Compl. ¶ 56.

Second, Bryant alleges that he suggested, as a way to resolve a discovery
dispute, that Mattel stipulate that it would not sue based on "Toon Teens." Compl.
¶ 55. Mattel refused to do so. Id. However, since that initial refusal, Mattel has
represented to the Court that it "will not maintain that Bratz infringes the copyright in
Toon Teens." June 26, 2006, Tr. at 64 (statement of Mattel counsel John B. Quinn).
Mattel has reiterated this position in a post-hearing brief, filed on July 5, 2006.

Third, Mattel cooperated with a Hong Kong toy company that MGA sued for
copyright infringement. Compl. ¶ 56. MGA's claims involved the Bratz dolls. Id.
Mattel's cooperation consisted of providing the Hong Kong toy company with
documents and photographs of the Toon Teens products, ostensibly to help prove that
Bratz was not an original design and that Bryant had copied and infringed Toon
Teens. Compl. ¶ 57.

Finally, Bryant notes that Mattel did not seek copyright registration until
November, 2003, which is the same time Mattel claims it first learned of Bryant's

EXHIBIT _____ 2

PAGE _____   EXHIBIT 2
              PAGE 59

1   contract with MGA. Compl. ¶¶ 59-60. Bryant alleges that registration of a copyright is

2   a necessary step to be taken prior to filing a copyright infringement action. Compl.

3   ¶ 60.

4   **B.**   **Standing to Seek Declaratory Relief**

5          The purpose of the Declaratory Judgment Act is "to relieve potential defendants

6   from the Damoclean threat of impending litigation which a harassing adversary might

7   brandish, while initiating suit at his leisure — or never." Societe de Conditionnement

8   v. Hunter Engineering Co., 655 F.2d 938, 943 (9th Cir.1981). However, a party

9   seeking declaratory relief must still satisfy the "case or controversy" requirement found

10  in 28 U.S.C. § 2201(a). Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896

11  F.2d 1542,1555 (9th Cir. 1990). This requirement must be satisfied at the time the

12  suit is filed and must continue throughout the term of the suit. Id. at 1556 (citing

13  International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980)).

14         To meet this requirement, a party seeking declaratory relief must show that,

15  based on his reasonable perceptions, under all the circumstances of the case, there is

16  a substantial controversy between parties having adverse legal interests that causes

17  in the plaintiff a real and reasonable apprehension that he will be subject to liability,

18  and the controversy is of sufficient immediacy and reality to warrant declaratory relief.

19  Hal Roach, 896 F.2d at 1555. The apprehension must have been caused by the

20  defendant's actions. Id. (citing International Harvester, 623 F.2d at 1211).

21         Viewing Bryant's allegations in light of this standard, and in light of recent

22  developments, the Court must conclude that Bryant, although having a reasonable

23  apprehension of suit prior to counsel's representations regarding the intent to sue

24  based on Toon Teens, no longer has a reasonable apprehension that he will be

25  subject to liability. Bryant's Complaint, of course, makes reference to "other Mattel

26  products;" however, the substance of his allegations all address the product "Toon

27  Teens." The Wall Street Journal article is alleged to have involved Toon Teens.

28  Mattel's cooperation with the Hong Kong toy company allegedly involved Toon Teens.

EXHIBIT ___ 2

1    The copyright registration referenced in the Complaint relates to Toon Teens. No

2    other allegations are made that might tend to raise a real and reasonable

3    apprehension that Bryant could be subject to liability for copyright infringement based

4    on any other Mattel product. Accordingly, Bryant has not met the standard for

5    asserting a claim for declaratory relief.

6    **C.    Ruling on Motion to Dismiss**

7        Accordingly, the Court **GRANTS** the Motion to Dismiss and dismisses without

8    prejudice Bryant's claim for declaratory relief. Should Bryant, through discovery or

9    otherwise, acquire a real and reasonable apprehension of being subject to liability on

10   the basis of another identifiable Mattel product, Bryant may file a declaratory relief

11   claim. A claim by Mattel of copyright infringement based on the Toon Teens product

12   is barred by counsel's representation; therefore, Bryant may not seek declaratory relief

13   regarding this issue.

14                      **III. Motion to Dismiss (04-9059)**

15   **A.    Factual Background**

16       The parties make the following factual allegations and assert the following

17   claims and counterclaims.

18       Bryant was employed by Mattel from September, 1995, to April, 1998, and

19   again beginning in January, 1999, and ending in October, 2000. Compl. ¶ 9. In

20   January, 1999, Bryant signed documents entitled "Employee Confidential Information

21   and Inventions Agreement" ("Employee Agreement") and "Conflict of Interest

22   Questionnaire" ("COI Questionnaire"). The Employee Agreement provides:

23       This Agreement is designed to make clear that: (i) I will maintain the

24       confidentiality of the Company's trade secrets; (ii) I will use those trade

25       secrets for the exclusive benefit of the Company; (iii) inventions that I

26       create will be owned by the Company; (iv) my prior and continuing

27       activities separate from the Company will not conflict with the Company's

28       development of its proprietary rights; and (v) when and if my employment

                                    4

Received:   7/18/06  4:42PM        RightFAX -> JetFax    20;   Page 6
RightFAX          7/18/2006 4:37    PAGE 006/019    Fax Server

with the Company terminates I will not use my prior position with the
Company to the detriment of the Company.

1.    Provisions Related to Trade Secrets

. . . .

(b) As used in the Agreement, "Proprietary Information" means
any information (including formula, pattern, compilation, device, method,
technique or process) that derives independent economic value, actual
or potential, from not being generally known to the public or to other
persons who can obtain economic value from its disclosure or use, and
includes information on the Company, its customers, suppliers, joint
ventures, licensors, licensees, distributors and other persons and entities
with whom the Company does Business.

(c) I will not disclose or use at any time either during or after my
employment with the Company, any Proprietary Information except for
the exclusive benefit of the Company as required by my duties for the
Company, or as the Company expressly may consent to in writing, I will
cooperate with the Company and use my best efforts to prevent the
unauthorized disclosure, use or reproduction of all Proprietary
Information.

. . . .

2.    Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully
as practicable all inventions [as defined below] conceived or reduced to
practice to me (alone or jointly by others) at any time during my
employment by the Company, I hereby assign to the Company and/or its
nominees all my right, title and interest in such inventions, and all my
right, title and interest in any patents, copyrights, patent applications or
copyright applications based thereon. . . .

EXHIBIT _____ 2

5

PAGE _____

EXHIBIT 2
PAGE 62

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

. . . .

3.    Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

4.    Miscellaneous

. . . .

EXHIBIT ___2___

6    PAGE_____

**EXHIBIT 2
PAGE 63**

1    (f) This agreement will be governed by and interpreted in

2  accordance with the laws of the State of California.

3      . . . .

4    CAUTION: THIS AGREEMENT CREATES IMPORTANT

5  OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS

6  TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER

7  EMPLOYMENT.

8  Employment Agreement, attached to the Compl. as Ex. A.[1]

9  **B.**  **The Parties' Claims**

10    Mattel brings a number of claims based on these documents, including breach

11  of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment,

12  and conversion.

13    Bryant brings a number of counterclaims based on these documents.

14  Specifically, Bryant makes the following challenges to the Employment Agreement:

15    In his first counterclaim, Bryant claims that the Employment Agreement violates

16  Cal. Bus. & Prof. Code §§ 17200 (unfair competition law) because (a) it is an unfair

17  restraint of trade (restricting job mobility and use of publicly available information) in

18  violation of Cal. Bus. & Prof. Code § 16600; (b) it violates Cal. Labor Code §§ 96(k),

19  98.6, and 2699; (c) it violates Cal. Labor Code § 2870; and (d) it is procedurally and

20  substantively unconscionable.  See Bryant's Counterclaims ¶¶ 33-47.

21    In his second counterclaim, Bryant claims that the Employment Agreement

22  should be rescinded because it was procured due to mistake, duress, menace and/or

23

24     [1] Bryant objects to the Court's consideration of the Agreement and the COI

25  Questionnaire. Bryant purports to dispute the authenticity of these documents.
    However, examining the substance of Bryant's objections, it becomes clear that Bryant

26  objects not to the content of these documents, but to the validity and legal effect of
    these documents. Accordingly, the Court's consideration of these documents in

27  connection with the present Motion to Dismiss is proper. See Parrino v. FHP, Inc., 146
    F.3d 699, 706 (9th Cir. 1998) (the Court may consider documents whose authenticity is

28  not questioned and upon which the complaint necessarily relies).

EXHIBIT ___2___

PAGE _____

EXHIBIT 2
PAGE 64

Received:   7/18/06  4:43Pt              RightFAX -> JetFax   20;   Page 9
RightFAX            7/18/2006 4:37    PAGE 009/019    Fax Server

1   fraud. See Bryant's Counterclaims ¶¶ 48-54.

2           In his third counterclaim, Bryant alleges that the Employment Agreement was

3   procured by fraud in that Mattel "fail[ed] to disclose to Bryant the true meaning of the

4   terms and the purported legal effect of the [Employment] Agreement." See Bryant's

5   Counterclaims ¶¶ 55-60.

6           Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that

7   Mattel's conduct in requiring Bryant and other employees to execute the Employment

8   Agreement constitutes unfair competition and unfair business practices in violation of

9   Cal. Bus. & Prof. Code §§ 17200 and 16600.  Bryant also seeks a declaration that the

10  Employment Agreement is unlawful and unenforceable as to him and as to other

11  current and former employees of Mattel.  See Bryant's Counterclaims ¶¶ 61-65.

12  C.      **Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

13          The present Motion to Dismiss requires the Court to determine whether the

14  counterclaims state any claim upon which relief may be granted.  See Fed R. Civ. P.

15  12(b)(6).  The Court will not dismiss the claims for relief unless Bryant cannot prove

16  any set of facts in support of the claims that would entitle him to relief.  See Steckman

17  v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998).  In limiting its inquiry to the

18  content of the counterclaims, the Court must take the allegations of material fact as

19  true and construe them in the light most favorable to Bryant.  See Western Reserve

20  Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985).  Additionally, the Court "is

21  not required to accept legal conclusions cast in the form of factual allegations if those

22  conclusions cannot be reasonably drawn from the facts alleged."  Clegg v. Cult

23  Awareness Network, 18 F.3d 752, 755 (9th Cir. 1994).

24  D.      **§ 17200 Claim**

25          1.      **Generally**

26          "California's unfair competition law (UCL) (17200 et seq.) defines 'unfair

27  competition' to mean and include any unlawful, unfair or fraudulent business act or

28  practice. . . ." Kasky v. Nike, Inc., 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296 (2002)

EXHIBIT ___ 2

EXHIBIT 2
PAGE 65

8

PAGE ___

1    (internal quotation marks and citation omitted).  Because "section 17200 is written in

2    the disjunctive, it establishes three varieties of unfair competition—acts or practices

3    which are unlawful, unfair, or fraudulent."  Cel-Tech Communications v. Los Angeles

4    Cellular Telephone Co., 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999) (emphasis

5    added).  "Unlawful" practices are those practices that are prohibited by law, whether

6    "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."

7    Saunders v. Superior Court, 27 Cal.App.4th 832, 839 (citing People v. McKale, 25

8    Cal.3d 626, 632 (1979)).  The prohibition against "unfair" conduct is not as broad as it

9    would seem.  In Cel-Tech, the California Supreme Court announced that the test of

10   "unfairness" for commercial cases:  "Unfair" means "conduct that threatens an

11   incipient violation of an antitrust law, or violates the policy or spirit of one of those laws

12   because its effects are comparable to or the same as a violation of the law, or

13   otherwise significantly threatens or harms competition."  Cel-Tech, 20 Cal.4th at 187.

14        2.    Standing

15        Bryant claims to be bringing the § 17200 "on his own behalf, on behalf of all

16   current and former employees of Mattel employees . . . and on behalf of the general

17   public."  See Counterclaims ¶ 10.  The parties disagree as to whether he may bring

18   such a claim on behalf of anyone other than himself and argue this point on state-law

19   grounds.  However, it is clear under established Ninth Circuit authority that Bryant's

20   purported claims on behalf of others suffer from a federal constitutional deficiency:

21   Bryant must satisfy the case-or-controversy requirement of Article III for any claim that

22   he brings under § 17200.  Bryant has not alleged facts that establish that he has

23   standing to bring his claims on behalf of anyone other than himself.[2]  See Lee v.

24   American Nat. Ins. Co., 260 F.3d 997, 1001 (9th Cir. 2001) (rejecting, on

25   constitutional grounds, a plaintiff's attempt to assert a § 17200 claim on behalf of

26   others noting that "Article III of the Constitution . . . limits the jurisdiction of the federal

27

28

_____

[2] As stated below, Bryant has failed to state a claim on his own behalf as well.

9

EXHIBIT _____

PAGE _____                EXHIBIT 2
                            PAGE 66

1   courts to 'cases and controversies,' a restriction that has been held to require a

2   plaintiff to show, *inter alia*, that he has actually been injured by the defendant's

3   challenged conduct.") (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,

4   528 U.S. 167, 180, 120 S.Ct. 693 (2000)).

5        Absent class-action type allegations (and a successful motion to certify a class

6   pursuant to Fed. R. Civ. P. 23), it appears to the Court that Bryant cannot assert

7   claims challenging the Employee Agreement or the COI Questionnaire on behalf of

8   anyone other than himself. Therefore, the Court considers only whether Bryant has

9   stated a claim pursuant to § 17200 on his own behalf.

10       **3.    Cal. Bus. & Prof. Code § 16600**

11       Bryant argues that the Agreement is "unlawful" because it violates Cal. Bus. &

12  Prof. Code § 16600, which provides: "Except as provided in this chapter, every

13  contract by which anyone is restrained from engaging in a lawful profession, trade, or

14  business of any kind is to that extent void." Id. Specifically, Bryant argues (without

15  further elaboration) that "the [Employment] Agreement unlawfully impair[s] Bryant's

16  right to prepare to compete with Mattel." Opp. at 7.

17       California law permits an employee to seek other employment and even to

18  make some "preparations to compete" before resigning. See Bancroft-Whitney Co. v.

19  Glen, 64 Cal.2d 327, 346 (1966) ("The mere fact that the officer makes preparations

20  to compete before he resigns his office is not sufficient to constitute a breach of duty.

21  It is the nature of his preparations which is significant.") However, "an employee may

22  not transfer his loyalty to a competitor." Stokes v. Dole Nut Co., 41 Cal.App.4th 285,

23  295 (1995). "During the term of employment, an employer is entitled to its employees'

24  undivided loyalty." Id. (internal citations and quotation marks omitted).

25       Mattel alleges in the Complaint that Bryant entered into an agreement with

26  MGA to provide MGA design services on a "top priority" basis while he was still

27  employed with by Mattel. Compl. ¶ 13. Bryant also makes similar allegations in the

28  related case, Bryant v. Mattel, Inc., 04-09049: "MGA ultimately offered Bryant a

                                    10

EXHIBIT _____ 2

EXHIBIT 2
PAGE _____ PAGE 67

Received:   7/18/08   4:45PM         RightFAX -> JetFax   20;  Page 12
RightFAX            7/18/2008 4:37    PAGE 012/019    Fax Server

1    consulting arrangement. His agreement with MGA was signed on or about October 4,

2    2000. Bryant resigned from Mattel immediately, giving two weeks notice, but stayed at

3    the company until October 20 to finish up and transition the projects on which he had

4    been working." Compl. ¶ 38.

5         The parties' arguments assume that the Employment Agreement would prohibit

6    such conduct;[3] therefore, the Court considers whether an agreement prohibiting an

7    employee from entering into a contract with a competitor *during the course of his*

8    *employment* constitutes an unfair restraint of trade in violation of § 16600. The Court

9    concludes that it does not. Such an agreement is more akin to ensuring the employer

10   has the "employee's undivided loyalty" than it is to an agreement that restricts an

11   employee from "prepar[ing] to compete." For this reason, Plaintiff cannot state a

12   § 17200 claim on this basis.

13       **4.    Cal. Labor Code §§ 96(k), 98.6 and 2699**

14       Bryant also argues that the Agreement is "unlawful" because it violates a

15   number of provisions of the California Labor Code. Specifically, Bryant alleges that

16   the Agreement is "unlawful" because it violates § 96(k), which provides:

17            The Labor Commissioner and his or her deputies and

18        representatives authorized by him or her in writing shall, upon the filing

19        of a claim therefor by an employee, or an employee representative

20        authorized in writing by an employee, with the Labor Commissioner, take

21        assignments of: . . . (k) Claims for loss of wages as the result of

22        demotion, suspension, or discharge from employment for lawful conduct

23        occurring during nonworking hours away from the employer's premises.

24   Cal. Labor Code § 96(k).

25       Section 98.6 prohibits discrimination or retaliation against an employee who

26   engages in conduct described in §96(k). Section 2699 authorizes a private right of

27

28

---

[3] The Court does not mean to imply that Bryant has conceded this point.

11

EXHIBIT _____

PAGE _____

EXHIBIT 2
PAGE 68

Received:   7/18/06  4:45PM          RightFAX -> JetFax   ?0;  Page 13
RightFAX              7/1./2006  4:37   PAGE 013/019   Fax Server

1   action for certain violations of the Labor Code.

2          Assuming that § 96(k) would otherwise support a § 17200 claim, Bryant has still

3   failed to allege any "loss of wages" or "demotion, suspension or discharge" based on

4   lawful off-duty conduct.  Therefore, Bryant has not alleged facts sufficient to support a

5   violation of § 96(k) that would, in turn, support his § 17200 claim.

6          Despite Mattel's arguments against § 98.6 and § 2699 as a proper basis for

7   Bryant's § 17200 claim, Bryant did not defend such claims in his opposition; therefore,

8   the Court treats these claims as abandoned.

9          5.    Cal. Labor Code § 2870

10          Bryant also argues that the Agreement is "unlawful" because it violates Cal.

11   Labor Code § 2870.  That provision states:

12              (a) Any provision in an employment agreement which provides

13          that an employee shall assign, or offer to assign, any of his or her rights

14          in an invention to his or her employer shall not apply to an invention that

15          the employee developed entirely on his or her own time without using the

16          employer's equipment, supplies, facilities, or trade secret information

17          except for those inventions that either:

18              (1) Relate at the time of conception or reduction to practice of the

19          invention to the employer's business, or actual or demonstrably

20          anticipated research or development of the employer; or

21              (2) Result from any work performed by the employee for the

22          employer.

23              (b) To the extent a provision in an employment agreement

24          purports to require an employee to assign an invention otherwise

25          excluded from being required to be assigned under subdivision (a), the

26          provision is against the public policy of this state and is unenforceable.

27   Cal. Labor Code § 2870.

28          The Employment Agreement assigns the rights to certain inventions by the

12

EXHIBIT ___2___

PAGE ___

EXHIBIT 2
PAGE 69

1   employee to the Company. The Agreement limits the scope of this assignment to the

2   extent required by § 2870 by specifically incorporating and quoting § 2870. The

3   Agreement also informs the employee that he bears the burden of proving that the

4   invention falls within the scope of § 2870. This is consistent with California law. See

5   Cal. Labor Code § 2872 ("In any suit or action arising thereunder, the burden of proof

6   shall be on the employee claiming the benefits of its provisions.").

7        Therefore, Bryant cannot maintain a § 17200 claim based on § 2870.

8        **6.    Unconscionability**

9        Unconscionability has both procedural and substantive elements. Armendariz

10   v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 99 (2000). Both must

11   be present for a court to invalidate a contract or one of the contract's provisions. Id. at

12   114. However, "[t]he more substantively oppressive the contract term, the less

13   evidence of procedural unconscionability is required to come to the conclusion that the

14   term is unenforceable, and vice versa." Id.

15        Procedural unconscionability focuses on the elements of oppression and

16   surprise. Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005). "Oppression

17   arises from an inequality of bargaining power which results in no real negotiation and

18   an absence of meaningful choice . . . . Surprise involves the extent to which the terms

19   of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior

20   bargaining position." Crippen v. Central Valley RV Outlet, 124 Cal.App.4th 1159, 1165

21   (2004).

22        Substantive unconscionability focuses on the actual terms of the agreement

23   and evaluates whether they create "overly harsh" or "one-sided results." Armendariz,

24   24 Cal.4th at 114. To be substantively unconscionable, a contractual provision must

25   shock the conscience. California Grocers Assn. v. Bank of America, 22 Cal.App.4th

26   205, 214 (1994).

27        Here, Bryant alleges that the Employee Agreement is a contract of adhesion.

28   Counterclaims ¶ 26. For purposes of the present analysis, the Court assumes that the

13

EXHIBIT _____ *2*

PAGE _____

EXHIBIT 2
PAGE 70

1   Employment Agreement is procedurally unconscionable.  See Discover Bank v.

2   Superior Court, 36 Cal.4th 148, 160 (2005) ("The procedural element of an

3   unconscionable contract generally takes the form of a contract of adhesion, which,

4   imposed and drafted by the party of superior bargaining strength, relegates to the

5   subscribing party only the opportunity to adhere to the contract or reject it.") (internal

6   quotation marks and citation omitted).  However, upon examination of the terms of the

7   Employment Agreement, the Court is unable to conclude that the element of

8   substantive unconscionability has been met.  It is not surprising or overly harsh that

9   Mattel would expect its trade secrets and proprietary information to be kept

10  confidential; the same is true regarding Mattel's expectation that the works of its

11  design staff — created by Mattel's employees, using Mattel's resources, during time

12  for which Mattel paid the employee — be considered its property.  Therefore, Bryant

13  cannot state a claim based on unconscionability.

14         **7.    Cal. Labor Code §§ 232 and 232.5**

15         Although not pleaded in the Counterclaims, Bryant argues that his § 17200

16  claim is supported by an alleged violation of §§ 232 and 232.5.  These provisions

17  prohibit limitations on an employee's ability to disclose the amount of his or her wages

18  or information about his or her working conditions.  Bryant's arguments fail to address

19  how the Employment Agreement (which prohibits the disclosure of "trade secrets" and

20  "proprietary information") prevented him from disclosing the amount of his wages or

21  information about his working conditions.  Bryant has failed to state a § 17200 claim

22  based on §§ 232 and 232.5.

23         **8.    Unfairness**

24         As noted above, there is only a limited basis on which a plaintiff may challenge

25  conduct as an "unfair" business practice.  See Cel-Tech Communications, 20 Cal.4th

26  at 187 ("unfair" conduct that may be challenged pursuant to § 17200 is conduct that is,

27  or is similar to, conduct that constitutes a violation of antitrust laws).  Bryant's

28  allegations do not state a claim for an "unfair" business practice in violation of

                                      14        EXHIBIT  2

                                               PAGE _____          **EXHIBIT 2
                                                                    PAGE 71**

1   § 17200.

2       9.      "Fraudulent" Conduct

3           Bryant also argues that the same conduct complained of in connection with his

4   fraud claim also supports a § 17200 claim based on the prohibition against

5   "fraudulent" conduct. This claim is not cognizable. Bryant's fraud claim, explored

6   more fully in the following section, is based upon Mattel's alleged failure to explain to

7   him the terms of the Employment Agreement. However, to allege a "fraudulent

8   business practice" under § 17200, a plaintiff must allege that "members of the public

9   are likely to be deceived." Comm. on Children's Television, Inc. v. Gen. Foods Corp.,

10  35 Cal.3d 197, 211 (1983). Bryant has not alleged facts that would tend to establish

11  that the public might be deceived by Mattel's conduct regarding its employment

12  practices.

13  E.      Fraud Claim

14          The parties agree that Bryant's fraud claim is one for fraudulent concealment,

15  and that Bryant must allege all the elements set forth in Marketing West, Inc. v. Sanyo

16  Fisher Corp., 6 Cal.App.4th 603, 612-13 (1992): (1) Mattel must have concealed or

17  suppressed a material fact; (2) Mattel must have been under a duty to disclose the

18  fact to Bryant; (3) Mattel must have intentionally concealed or suppressed the fact with

19  the intent to defraud Bryant; (4) Bryant must have been unaware of the fact and would

20  not have acted as he did if he had known of the concealed or suppressed fact; and (5)

21  as a result of the concealment or suppression of the fact, Bryant must have sustained

22  damage. Bryant alleges that "Mattel required [him] to execute the [Employment]

23  Agreement without disclosing to him its true import and terms." Counterclaims ¶ 56.

24  Bryant's claim is, in essence, that Mattel failed to inform him of the potential legal

25  effect the Agreement might have; in other words, Bryant claims that Mattel failed to

26  fully explain the Agreement to him. This does not support a fraudulent concealment

27  claim.

28          Bryant argues, based on Marketing West, that because Mattel chose to

                                            15        EXHIBIT  2

                                                     PAGE _____

EXHIBIT 2
PAGE 72

Received:   7/18/08   4:47PM;                    RightFAX -> JetFax P-70;   Page 17
RightFAX                      7/1 /2006 4:37     PAGE 017/019    Fax Server

1   respond to his inquiries, Mattel was under a duty to disclose material facts. Under

2   Marketing West, where a party is "under no duty to speak" but nevertheless

3   "undertakes to do so, either voluntarily or in response to inquiries, he is bound not only

4   to state truly what he tells but also not to suppress or conceal any facts within his

5   knowledge which materially qualify those stated." Marketing West, 6 Cal.App.4th at

6   613 (citing Rogers v. Warden, 20 Cal.2d 286, 289 (1942)) (internal quotation marks

7   omitted). In other words, one who speaks "must make a full and fair disclosure." Id.

8          Bryant makes no allegations that suggest that anyone at Mattel falls into this

9   category. He alleges that he was "presented with the form Agreement by Mattel," and

10  that "he was told that his execution of the Agreement was a condition of his

11  employment." Counterclaims ¶ 26. He then alleges that "[t]he terms of the Agreement

12  were not explained to him." Id. This is not the situation discussed in Marketing West

13  which, not surprisingly, prohibits a party from disclosing only that part of the truth that

14  favors it. Here, Bryant's allegations complain that Mattel did not disclose anything

15  regarding the Employment Agreement.

16  **F.   Rescission**

17         Bryant asserts that rescission is proper because (1) the Agreement was

18  obtained through fraud; (2) Mattel required Bryant to execute the document as a

19  condition of employment, which resulted in duress; and (3) Mattel did not explain the

20  terms of the Agreement to Bryant, did not give him sufficient time to review it, and did

21  not permit or encourage him to seek legal counsel regarding the Agreement.

22         Bryant failed to state a fraud claim; therefore, rescission based on his fraud

23  claim would be improper.

24         Bryant's allegations do not meet the standard for duress, and Mattel's failure to

25  encourage him to seek legal counsel also does not require rescission of the

26  Employment Agreement. See Robison v. City of Manteca, 78 Cal.App.4th 452, 457

27  (2000). Additionally, although Bryant argues that he was not "given a meaningful

28  opportunity to review the Agreement at the time he executed it," he does not allege

EXHIBIT __2__

Received:   7/18/06   4:47PM·          RightFAX -> JetFax  ̄ ̄ ̄0;   Page 18
RightFAX                    7/  /2006  4:37   PAGE  018/019   Fax Server

1  that he asked for, and was refused, sufficient time to actually read the Agreement with

2  which he was presented.

3  **G.    Declaratory Relief**

4         Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that

5  Mattel's conduct in requiring Bryant and other employees to execute the Employment

6  Agreement constitutes unfair competition and unfair business practices in violation of

7  Cal. Bus. & Prof. Code §§ 17200 and 16600.  This claim for declaratory relief fails

8  because the underlying § 17200 fails.

9         Bryant also seeks a declaration that the Employment Agreement is unlawful

10  and unenforceable as to him and as to other current and former employees of Mattel.

11  See Bryant's Counterclaims ¶¶ 61-65.  As discussed previously, Bryant has no

12  standing to assert claims on behalf of anyone other than himself.  As discussed

13  throughout this Order, Bryant has not sufficiently alleged that the Employment

14  Agreement is unlawful or unenforceable as to him.

15  **H.    Ruling on Motion to Dismiss (04-09059)**

16         The Motion to Dismiss is **GRANTED** in its entirety.  Bryant requested in his

17  Opposition for an opportunity to amend his counterclaims.  Therefore, the Court

18  dismisses Bryant's counterclaims without prejudice.  Bryant may file Amended

19  Counterclaims that conform with this Order within ten days of the entry of this Order.

20                        **IV. Conclusion**

21         For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss in

22  04-09049 and **DISMISSES WITHOUT PREJUDICE** Bryant's action for declaratory

23  relief.  The Court also **GRANTS** the Motion to Dismiss in 04-09059, and **DISMISSES**

24  **WITHOUT PREJUDICE** Bryant's counterclaims.  Bryant is granted ten days' leave to

25  amend the counterclaims in conformity with this Order.

26

27

28

EXHIBIT  $\mathcal{V}$

PAGE

**EXHIBIT 2
PAGE 74**

Received:   7/18/06   4:47PM·                RightFAX -> JetFax '''?20;   Page 19
RightFAX                    7/  /2006 4:37    PAGE 019/019   Fax Server

1          Although this Order dismisses the Complaint in 04-09049, any future filings in

2   the consolidated action shall continue to be filed under 04-09049 in conformity with

3   the Court's consolidation order.

4          IT IS SO ORDERED.

5   DATE:   7 - 17 - 06

6

7                                    STEPHEN G. LARSON
                                     UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

EXHIBIT   2

PAGE

EXHIBIT 2
PAGE 75