EXHIBIT 3



COPY
LODGED

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

FILED
CLERK, U.S. DISTRICT COURT

OCT - 9 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>STIPULATION AND [PROPOSED] ORDER REGARDING CARTER BRYANT'S AMENDED REPLY TO MATTEL'S COUNTERCLAIMS<br><br>**Phase 1**<br>Discovery Cut-Off:   January 14, 2008<br>Pre-Trial Conference: April 7, 2008<br>Trial Date:   April 29, 2008<br><br>**Phase 2**<br>Discovery Cut-Off:   March 3, 2008<br>Pre-Trial Conference:   June 2, 2008<br>Trial Date:   July 1, 2008 |

EXHIBIT 3

404050.01
07209/2211520.1

10-5

EXHIBIT ___          EXHIBIT 3

PAGE ___          PAGE 76

STIPULATION AND [PROPOSED] ORDER

1

### Stipulation

2   WHEREAS, on July 12, 2007, Mattel, Inc. ("Mattel") filed its Second

3   Amended Answer in Case No. 05-2727 and Counterclaims ("Counterclaims"),

4   WHEREAS, on August 13, 2007, Carter Bryant ("Bryant") filed his reply to

5   Mattel's Counterclaims and asserted twenty-two affirmative defenses,

6   WHEREAS, Mattel contended that Bryant's affirmative defenses were

7   inadequately pleaded and that certain of the defenses were insufficient as a matter of

8   law, and the parties met and conferred regarding a motion Mattel contemplated

9   filing to strike the defenses on those grounds,

10   WHEREAS, Bryant agreed to voluntarily amend his reply to eliminate some

11   of the disputes between the parties and, pursuant to a Stipulation and Order dated

12   September 6, 2007, filed an amended reply to Mattel's Counterclaims on September

13   12, 2007, asserting seventeen affirmative defenses,

14   WHEREAS, Mattel believes that certain of Bryant's defenses remain

15   inadequately pleaded and that certain of the defenses remain insufficient as a matter

16   of law, and the parties have again met and conferred regarding Mattel's

17   contemplated motion to strike the defenses on these grounds, and

18   WHEREAS, Bryant is willing to voluntarily amend his amended reply again

19   in an attempt to eliminate further disputes between the parties, including by

20   withdrawing his Ninth, Tenth, and Eleventh affirmative defenses of "failure of

21   contract," "duress/unconscionability" and "alleged duties contrary to law,"

22   respectively,

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

404060.01
07209/2211520.1

-1-

EXHIBIT 3

PAGE ___

**EXHIBIT 3**
**PAGE 77**

STIPULATION AND [PROPOSED] ORDER

1 | ///

2 |      NOW, THEREFORE, Mattel and Bryant hereby stipulate, by and through

3 | their counsel of record and subject to the Court's approval, that Bryant will file a

4 | Second Amended Reply to Mattel's Counterclaims on or before October 15, 2007.

5 | Mattel may then file a motion to strike Bryant's Second Amended Reply pursuant to

6 | the time limits set forth in Fed. R. Civ. P. 12(f) as may be appropriate.

7 |      IT IS SO STIPULATED.

8 |

9 | DATED: October 4, 2007     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

10 |

11 |

12 |                     By_____
                          B. Dylan Proctor

13 |                           Attorneys for Mattel, Inc.

14 |

15 | DATED: October 4, 2007     KEKER & VAN NEST, LLP

16 |

17 |

18 |                     By_____
                        John Trinidad

19 |                         Attorneys for Carter Bryant

20 |

21 |      IT IS SO ORDERED.

22 |

23 | DATED: October___, 2007     By    STEPHEN G. LARSON
                                  UNITED STATES DISTRICT JUDGE

24 |                           Hon. Stephen G. Larson

25 |                           United States District Court Judge

26 |

27 |

28 |

404050.01
07209/2211520.1

-2-

EXHIBIT 3
PAGE ___

STIPULATION AND [PROPOSED] ORDER

EXHIBIT 3
PAGE 78

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On October 5, 2007, I served true copies of the following document(s) described as **STIPULATION AND [PROPOSED] ORDER REGARDING CARTER BRYANT'S AMENDED REPLY TO MATTEL'S COUNTERCLAIMS** on the parties in this action as follows:

Diana Torres, Esq.
**O'MELVENY & MYERS, LLP**
400 S. Hope Street
Los Angeles, CA 90071

*Attorneys for MGA Entertainment, Inc.*

Patricia Glaser, Esq.
**CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP**
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

*Attorneys for MGA Entertainment*

Michael H. Page, Esq.
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 94111

*Attorneys for Carter Bryant*

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
**OVERLAND, BORENSTEIN, SCHEPER & KIM, LLP**
300 S. Grand Avenue, Suite 2750
Los Angeles, CA 90071

*Attorneys for Carlos Gustav Machado Gomez*

**BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 5, 2007, at Los Angeles, California.

*Laura Kinsey*
Laura Kinsey

EXHIBIT 3

PAGE ____

**EXHIBIT 3
PAGE 79**

07209/2243792.1

EXHIBIT 4

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 5

1 │ QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   │ John B. Quinn (Bar No. 90378)
2 │ Michael T. Zeller (Bar No. 196417)
   │ Jon D. Corey (Bar No. 185066)
3 │ B. Dylan Proctor (Bar No. 219354)
   │ 865 South Figueroa Street, 10th Floor
4 │ Los Angeles, California 90017-2543
   │ Telephone: (213) 443-3000
5 │ Facsimile: (213) 443-3100

6 │ Attorneys for Plaintiff and Cross-Defendant
   │ Mattel, Inc.

7

FILED
CLERK U.S. DISTRICT COURT
NOV 2 3 2004
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 │ MATTEL, INC., a Delaware          ) CASE NO. CV 04-9059 NM (RNBx)
    │ Corporation,                      )
12 │                                    ) COUNTER-DEFENDANT
    │               Plaintiff,          ) MATTEL, INC.'S NOTICE OF
13 │                                    ) MOTION AND MOTION TO
    │        v.                         ) DISMISS CROSS-COMPLAINT
14 │                                    ) PURSUANT TO FEDERAL RULE
    │ CARTER BRYANT, an individual; and ) OF CIVIL PROCEDURE 12(b)(6);
15 │ DOES 1 through 10, inclusive,      ) AND
    │                                    )
16 │               Defendants.         ) MEMORANDUM OF POINTS AND
    │                                    ) AUTHORITIES
17 │                                    )
    │ CARTER BRYANT, on behalf of       ) Date:   January 31, 2005
18 │ himself, all present and former    ) Time:   10:00 A.M.
    │ employees of Mattel, Inc., and the)
19 │ general public,                    ) Hon. Nora M. Manella
    │                                    )
20 │               Counterclaimant,     )
    │                                    )
21 │        v.                          )
    │                                    )
22 │ MATTEL, INC., a Delaware           )
    │ Corporation,                      )
23 │                                    )
    │               Counter-Defendant.  )
24 │                                    )

25

26

27

28

EXHIBIT 5

EXHIBIT 5
PAGE 140
PAGE _____
MOTION TO DISMISS

1  TO DEFENDANT AND COUNTER-CLAIMANT AND HIS ATTORNEYS OF
2  RECORD:
3       PLEASE TAKE NOTICE THAT on January 31, 2005 at 10:00 a.m., or as
4  soon thereafter as counsel may be heard, in the Courtroom of the Honorable Nora
5  Manella, located at 312 North Spring Street, Los Angeles, California 90012, counter-
6  defendant and plaintiff Mattel, Inc. ("Mattel") will, and hereby does, pursuant to
7  <u>Federal Rule of Civil Procedure</u> 12(b)(6), move the Court to dismiss the First,
8  Second, Third and Fourth purported claims appearing in the Cross-Complaint that
9  Carter Bryant ("Bryant") filed in Los Angeles County Superior Court before this
10 action was removed to federal court.
11      This motion is brought on the grounds that each of the First through
12 Fourth purported claims in the Cross-Complaint fails to state a claim upon which
13 relief can be granted.
14      This motion is based on this Notice of Motion and Motion, the
15 accompanying Memorandum of Points and Authorities, the Request for Judicial
16 Notice filed concurrently herewith, the records and files of this Court, and all other
17 matters of which the Court may take judicial notice.

18                    <u>Local Rule 7-3 Certification</u>
19      This motion is made following the conference of counsel, which was
20 held pursuant to <u>Local Rule</u> 7.3 on November 15, 2004.

21
22 DATED: November 23, 2004
23                          QUINN EMANUEL URQUHART OLIVER &
                            HEDGES, LLP
24
25                          By _____
                               Michael T. Zeller
26                             Attorneys for Plaintiff
                               and Counter-Defendant
27                             Mattel, Inc.
28

                                                    EXHIBIT 5

07209/620553.1                          2          PAGE ___    **EXHIBIT 5**
                                                              **PAGE 141**
                                                    MOTION TO DISMISS

1

# **TABLE OF CONTENTS**

2
**Page**

3    MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . 1

4    Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6    The Employee Confidential Information and Inventions Agreement . . . . . . . . . 2

7    Bryant's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9    I.     BRYANT HAS NOT STATED A FRAUD CLAIM . . . . . . . . . . . . . . . . . 4

10   II.    BRYANT'S SECTION 17200 ALLEGATIONS FAIL TO STATE A CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11
12          A.    Bryant's Unfair Competition Claim Does Not Comport with the Requirements of Proposition 64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

13                1.    Bryant Has Not Alleged Injury in Fact, Loss of Money or Property, or Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14
15                2.    Bryant Has Not Alleged Predicate Facts for a Class Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16          B.    Proposition 64's Amendments Apply to Bryant's Claim . . . . . . . . . 9

17                1.    Amendments to Statutory Claims Apply to Pending Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18
19                2.    Applying the Proposition 64 Amendments to Bryant's Claim Does Not Raise Retroactivity Concerns . . . . . . . . . . . 10

20          C.    Even Under the Pre-Proposition 64 Version of § 17200, Bryant's Claim Fails as a Matter of Law . . . . . . . . . . . . . . . . . . . . 12

21                1.    There Is No Unlawful Business Practice . . . . . . . . . . . . . . . . 12

22                      (a)    Mattel Did Not Violate Labor Code § 2870 . . . . . . . . 12

23
24                      (b)    The Agreement Does Not Violate Business & Professions Code § 16600 . . . . . . . . . . . . . . . . . . . . . 13

25                      (c)    The Agreement Does Not Violate Labor Code §§ 96(k), 98.6 or 2269 . . . . . . . . . . . . . . . . . . . . . . . 14

26
27                      (d)    The Agreement Does Not Violate the Trade Secrets Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28                2.    There Is No Unfairness . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

07209/620553.1

i

EXHIBIT _    **EXHIBIT 5**
              **PAGE 142**
PAGE    MOTION TO DISMISS

# TABLE OF CONTENTS
## (Continued)

Page

(a)  The Agreement Cannot Be Unfair Because It Complies with Applicable Laws .................. 17

(b)  The Agreement Is Not Unconscionable ............ 17

3.  There Is No Fraudulent Practice ....................... 18

D.  Bryant Cannot State an Unfair Competition Claim For Restitution or Disgorgement ................................ 20

III.  BRYANT HAS NOT STATED A CLAIM FOR RESCISSION ........ 21

IV.  MATTEL'S CONDUCT IS PRIVILEGED ........................ 23

V.  BRYANT IS NOT ENTITLED TO DECLARATORY RELIEF ........ 25

07209/620553.1

EXHIBIT ___ 5

PAGE ___   EXHIBIT 5
PAGE 143

MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page**

## CASES

Armendariz v. Foundation Health Psychcare Servs., Inc.,
24 Cal. 4th 83, 99 Cal. Rptr. 2d 745 (2000) ............................................. 17

Aronson v. Kinsella,
58 Cal. App. 4th 254, 68 Cal. Rptr. 2d 305 (1997) ...................................... 23

Barbee v. Household Automotive Finance Corp.,
113 Cal. App. 4th 525, 6 Cal. Rptr. 3d 406 (2003) ..................................... 14

Berman v. Bromberg,
56 Cal. App. 4th 936, 65 Cal. Rptr. 2d 777 (1997) ...................................... 6

Bernardo v. Planned Parenthood Federation of America,
115 Cal. App. 4th 322, 9 Cal. Rptr. 3d 197 (2004) ..................................... 12

Bosinger v. Phillips Plastic Corp.,
57 F. Supp. 2d 986 (S.D. Cal. 1999) ........................................................... 22

Brenton v. Metabolife Intern., Inc.,
116 Cal. App. 4th 679, 10 Cal. Rptr. 3d 702 (2004) ............................ 10, 11

California Service Station and Auto. Repair Ass'n v.
American Home Assur. Co.,
62 Cal. App. 4th 1166, 73 Cal. Rptr. 2d 182 (1998) .................................... 5

Cel-Tech Comm. v. Los Angeles Cellular Tel. Co.,
20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ........................... 7, 16, 17, 23

City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith,
68 Cal. App. 4th 445, 80 Cal. Rptr. 2d 329 (1999) ...................................... 7

Cohen v. Wedbush, Noble, Cooke, Inc.,
841 F.2d 282 (9th Cir. 1988) ....................................................................... 6

Columbia Pictures Indus., Inc. v. Prof. Real Est. Inv., Inc.,
944 F.2d 1525 (9th Cir. 1991), aff'd, 508 U.S. 49 (1993) .......................... 24

Cortec Industries, Inc. v. Some Holding L.P.,
949 F.2d 42 (2d Cir. 1991) .......................................................................... 2

Cortez v. Purolator Air Filtration Prods.,
23 Cal. 4th 163, 96 Cal. Rptr. 2d 518 (2000) ............................................ 20

Cubic Corp. v. Marty,
185 Cal. App. 3d 438, 229 Cal. Rptr. 828 (1986) ...................................... 17

Eastern Railroads Presidents Conference v. Noerr Motor Freight, Inc.,
365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961) ................................. 24

EXHIBIT 5

PAGE ____

EXHIBIT 5
PAGE 144
MOTION TO DISMISS

iii

# TABLE OF AUTHORITIES
## (Continued)

**Page**

Fowler v. Varian Associates, Inc.,
196 Cal. App. 3d 34, 241 Cal. Rptr. 539 (1987) .......................... 14

Governing Board v. Mann,
18 Cal. 3d 819 (1977) ..................................................................... 10

Gracyk v. Workers Compensation Appeals Bd.,
184 Cal. App. 3d 997, 229 Cal. Rptr. 494 (1986) ....................... 10

Gregory v. Albertson's, Inc.,
104 Cal. App. 4th 845, 128 Cal. Rptr. 2d 389 (2003) ................. 16

Hedging Concepts, Inc. v. First Alliance Mortgage Co.,
41 Cal. App. 4th 1410, 49 Cal. Rptr. 2d 191 (1996) .................. 22

Ingle v. Circuit City Stores, Inc.,
328 F.3d 1165 (9th Cir. 2003) ................................................. 17, 18

Joshua Tree Townsite Co. v. Joshua Tree Land Co.,
100 Cal. App. 2d 590, 224 P.2d 85 (1950) ................................. 23

Khoury v. Maly's of California, Inc.,
14 Cal. App. 4th 612, 17 Cal. Rptr. 2d 708 (1993) .................. 7, 15

Klein v. Earth Elements, Inc.,
59 Cal. App. 4th 965, 69 Cal. Rptr. 2d 623 (1997) .................... 12

Korea Supply Co. v. Lockheed Martin Corp.,
29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) ...................... 20, 21

Kraus v. Trinity Management Services, Inc.,
23 Cal. 4th 116 (2000) .............................................................. 20, 21

Loral Corp. v. Moyes,
174 Cal. App. 3d 268, 219 Cal. Rptr. 836 (1985) ....................... 13

Lovejoy v. AT&T Corp.,
92 Cal. App. 4th 85, 111 Cal. Rptr. 2d 711 (2001) ...................... 5

MAI Systems Corp. v. Peak Computer, Inc.,
991 F.2d 511 (9th Cir. 1993) ......................................................... 16

Marketing West, Inc. v. Sanyo Fisher (USA) Corp.,
6 Cal. App. 4th 603, 7 Cal. Rptr. 2d 859 (1992) .......................... 5

Morlife, Inc. v. Perry,
56 Cal. App. 4th 1514, 66 Cal. Rptr. 2d 731 (1997) ................... 16

Morton v. Rank America, Inc.,
812 F. Supp. 1062 (C.D. Ca. 1993) ............................................. 16

EXHIBIT 5

EXHIBIT 5
PAGE 145

PAGE

MOTION TO DISMISS

07209/620553.1

# TABLE OF AUTHORITIES
### (Continued)

**Page**

Muggill v. Reuben H. Donnelley Corp.,
62 Cal. 2d 239, 42 Cal. Rptr. 107 (1965) ................................... 13

Myers v. Philip Morris Companies, Inc.,
28 Cal. 4th 828 (2002) ............................................................ 10

Nachum v. Allstate Ins. Co.,
1997 WL 580522 (C.D. Ca. July 21, 1997) ............................... 21

Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells,
86 Cal. App. 4th 303, 103 Cal. Rptr. 2d 159 (2000) .................... 6

Newell v. State Farm Gen. Ins. Co.,
118 Cal. App. 4th 1094, 13 Cal. Rptr. 3d 343 (2004) .................. 9

Pacific Legal Foundation v. California Coastal Com.,
33 Cal. 3d 158, 188 Cal. Rptr. 104 (1982) ............................... 15

Parrino v. FHP Inc.,
146 F.3d 699 (9th Cir. 1998) ..................................................... 2

Parsons v. Tickner,
31 Cal. App. 4th 1513, 37 Cal. Rptr. 2d 810 (1995) ............. 10, 11

Patent & Licensing Corp. v. Olsen,
188 F.2d 522 (2d Cir. 1951) .................................................... 18

Estate of Patterson,
155 Cal. 626 (1909) ................................................................ 11

Plotkin v. Sajahtera, Inc.,
106 Cal. App. 4th 953, 131 Cal. Rptr. 2d 303 (2003) ............... 19

Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,
508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)   24

Reyes v. Atlantic Richfield Co.,
12 F.3d 1464 (9th Cir. 1993) ..................................................... 5

Robison v. City of Manteca,
78 Cal. App. 4th 452, 92 Cal. Rptr. 2d 748 (2000) ...... 18, 19, 20, 22

Rubin v. Green,
4 Cal. 4th 1187, 17 Cal. Rptr. 2d 828 (1993) ........................... 23

Schnall v. Hertz Corp.,
78 Cal. App. 4th 1144, 93 Cal. Rptr. 2d 439 (2000) ............. 16, 17

Shvarts v. Budget Group, Inc.,
81 Cal. App. 4th 1153, 97 Cal. Rptr. 2d 722 ............................ 19

EXHIBIT 5
PAGE 146

v

MOTION TO DISMISS

07209/620553.1

# TABLE OF AUTHORITIES
## (Continued)

**Page**

South Bay Chevrolet v. GMAC,
72 Cal. App. 4th 861, 85 Cal. Rptr. 2d 301 (1999) ................................ 9, 19

Stirlen v. Supercuts, Inc.,
51 Cal. App. 4th 1519, 60 Cal. Rptr. 2d 138 (1997) ................................ 18

Tapia v. Superior Court,
53 Cal. 3d 282 (1991) ............................................................ 10, 11

Tarmann v. State Farm Mut. Auto Ins. Co.,
2 Cal. App. 4th 153, 2 Cal. Rtpr. 2d 861 (1991) ........................................ 6

Ticknor v. Choice Hotels Intern., Inc.,
265 F.3d 931, 942 (9th Cir. 2001) .............................................................. 6

United Mine Workers v. Pennington,
381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965) ............................ 24

Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,
178 F. Supp. 2d 1099 (C.D. Cal. 2001) ................................................. 20, 21

Whyte v. Schlage Lock Co.,
125 Cal. Rptr. 2d 277 (2002) ....................................................... 16

Winet v. Price,
4 Cal. App. 4th 1159, 6 Cal. Rptr. 2d 554 (1992) ........................................ 6

**STATUTES**

Cal. Bus. & Prof. Code § 16600 ........................................... 3, 13, 14, 25

Cal. Bus. & Prof. Code § 17200 .......................... 2, 7, 8, 10, 11, 12,16, 21, 23, 25

Cal. Bus. & Prof. Code § 17203 ........................................................ 8, 21

Cal. Bus. & Prof. Code § 17204 ........................................................ 7, 8

Cal. Civ. Code § 47(b) ........................................................ 23

Cal. Civ. Code § 1689 ........................................................ 21

Cal. Civ. Code § 1691 ........................................................ 23

Cal. Civ. Code § 3426.1 ........................................................ 16

Civil Code § 1577 ........................................................ 22

Civil Code § 1578 ........................................................ 22

Code Civ. P. § 382 ........................................................ 8, 9

EXHIBIT 1

EXHIBIT 5
PAGE 147

MOTION TO DISMISS

07209/620553.1

# TABLE OF AUTHORITIES
### (Continued)

**Page**

Fed. R. Civ. P. 9(b) ................................................................ 5, 7

Fed. R. Civ. P. 12(b)(6) ........................................................... 2, 8

Fed. R. Civ. P. 23 ................................................................... 9

Fed. R. Civ. P. 23(a) ................................................................ 9

Labor Code § 96(k) .......................................................... 1, 3, 14, 15

Labor Code § 98.6 ............................................................ 3, 14, 15

Labor Code § 2699 .......................................................... 1, 3, 14, 15

Labor Code § 2863 ................................................................ 14

Labor Code § 2870 ............................................................ 1, 12, 13

Local Rule 7.3 ..................................................................... 2

## OTHER AUTHORITIES

1 Witkin, Summary of California Law, Contracts
§ 120 (9th ed. 1987) .............................................................. 12

7 B.E. Witkin, Summary of California Law, Constitutional Law,
§ 492 (9th ed. 1990) .............................................................. 11

Summary of California Law Constitution Law
§ 497 .......................................................................... 10, 11

EXHIBIT 5

EXHIBIT 5
PAGE ___   PAGE 148

MOTION TO DISMISS

07209/620553.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel, like other California employers, asks its product designers (1) not to work for competitors while working for Mattel, (2) not to disclose Mattel's trade secrets, and (3) to assign to Mattel the works created by the employee while employed by Mattel and as permitted by law. In a single page document entitled "Employee Confidential Information and Inventions Agreement" (the "Agreement"), Bryant agreed to these terms. He then breached his Agreement by working for a Mattel competitor during the term of his Mattel employment. Rather than deny his breach, Bryant now has sued Mattel, protesting that the Agreement is illegal and that he did not understand it. Both theories fail as a matter of law.

Bryant asks this Court to rule that his Agreement and all of Mattel's agreements with its thousands of employees violate the law. The Agreement is not illegal, but complies with the applicable statutes. Indeed, it specifically recites the language of many statutes Bryant contends it violates. Bryant's unfair competition claim, predicated on Bryant's allegation of unlawfulness, should be dismissed as a result.

Bryant also alleges he never understood the Agreement, that Mattel "fail[ed] to affirmatively disclose [the Agreement's] material terms" and "did not explain the terms of the Agreement to Bryant." Mattel "disclosed" and "explained" the terms of the single-page Agreement in the Agreement itself, which Bryant signed. As a matter of law, a person cannot be misled by a contract he or she signed. Indeed, the Agreement here states in capital letters right above the signature line, "CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT." Because Bryant's allegations as to his purported lack of understanding fail to state a claim, they should be dismissed as well.

EXHIBIT 5

PAGE ___

## Background

### The Employee Confidential Information and Inventions Agreement

Bryant signed Mattel's Employee Confidential Information and Inventions Agreement ("Agreement") on or about January 4, 1999. (Cross-Complaint ("CC") ¶ 14.) That single-page agreement contains four sections: (1) Provisions Relating to Trade Secrets, (2) Ownership of Inventions, (3) Conflicts with Other Activities, and (4) Miscellaneous. In the Trade Secrets section, Bryant promised that he would not disclose Mattel's "Proprietary Information," either during or after his employment. In the Ownership of Inventions section, Bryant assigned his creative works to Mattel. That section identifies those inventions that Bryant could not legally assign to Mattel by quoting the applicable California statute. In the third section, Bryant agreed to avoid conflicts of interest and not work for or assist any competitor of Mattel while he was employed by Mattel.[1]

After Bryant signed the Agreement and while he was being paid and employed by Mattel for his exclusive design services, he worked for and aided a Mattel competitor, MGA Entertainment, by providing design services and purporting to assign rights to designs to MGA. Bryant's misconduct violated the law and breached his agreement with Mattel. After Mattel obtained a copy of his contract with MGA showing that he was working for and aiding MGA while he was employed

---

[1] The Agreement, which is attached to Mattel's Complaint as Exhibit A and to the Request for Judicial Notice filed herewith as Exhibit 1, is consistently referred to by Bryant in his Cross-Complaint. See, e.g., Cross-Complaint ¶ 14. Although Bryant does not attach the Agreement to his Cross-Complaint, the Court should analyze Bryant's allegations in light of the terms of the actual Agreement on this motion to dismiss. See Parrino v. FHP Inc., 146 F.3d 699, 706 (9th Cir. 1998) ("if a plaintiff's claims are predicated upon a document, the defendant may attach the document to his Rule 12b(6) motion, even if the plaintiff's complaint does not explicitly refer to it"); Cortec Industries, Inc. v. Some Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). The "policy concern" underlying the rule is simple: "Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." Parrino, 146 F.3d at 706.

EXHIBIT

EXHIBIT 5
PAGE 150

2        PAGE___

MOTION TO DISMISS

1  by Mattel, Mattel filed a complaint against him on April 27, 2004 for breach of

2  contract, breach of the duty of loyalty, breach of fiduciary duty and conversion.

3  <u>Bryant's Allegations</u>

4  Bryant attacks the Agreement by alleging that it "contains terms and

5  conditions that violate established California law on their face and/or in connection

6  with Mattel's interpretation and threats to enforce this Agreement." (CC ¶ 3.) The

7  Agreement allegedly violates California law in the following respects:

8      (1)   "The confidentiality provision in the first section of the

9  Agreement (as interpreted by Mattel) purports to require Bryant . . . to maintain a cone of silence--on pains of a breach of contract lawsuit by Mattel's lawyers--over such innocuous *and*

10  *public* information as the identities of Mattel employees and the general skills and knowledge of such employees." (CC ¶ 3

11  (emphasis in original).)

12      (2)   The Agreement "purports to prevent current employees from

13  accepting any other employment or engagement of any nature whatsoever" and thus unlawfully restricts lawful off duty conduct in violation of California Business and Professions Code

14  sections 16600 and 17200 and California Labor Code sections 96(k) and 98.6" and public policy. (CC ¶ 4.)

15      (3)   The Agreement "illegally restrict[s] the job mobility of current

16  and even former Mattel employees," and "restrict[s] current Mattel employees from seeking other gainful employment" and

17  "from accepting or holding any lawful employment within the State of California or elsewhere other than with Mattel." (CC

18  ¶ 32.)

19      (4)   The Agreement "purports to require each and every Mattel

20  employee, including Bryant, to assign all inventions or creations conceived or reduced to practice during the time period of his or her Mattel employment in direct violation of California Labor

21  Code section 2870." (CC ¶ 5)

22      (5)   The Agreement "purports to effect an assignment of all inventions

23  created or even simply touched by Bryant during the time period of his employment with Mattel, regardless of whether or not they relate to any aspect of Mattel's business and regardless of when

24  or where this occurred." (CC ¶ 16.)

25  Based on these ostensible violations of <u>Labor Code</u> §§ 96(k), 98.6, 2699, and 2870,

26  and <u>Business and Professions Code</u> § 16600, Bryant alleges that Mattel engaged in

27  unfair competition. (CC ¶¶ 30-34.) Bryant also alleges that Mattel engaged in unfair

28  competition by requiring its employees to sign an "unconscionable" Agreement, and

3

EXHIBIT 5

PAGE   MOTION TO DISMISS

EXHIBIT 5
PAGE 151

1  by "threatening to enforce" the Agreement's allegedly unlawful provisions. (CC
2  ¶¶ 35-37, 41.)

3        Bryant next complains that Mattel "fail[ed] to affirmative[ly] disclose"
4  the Agreement's material terms and "did not explain the terms of the Agreement to
5  Bryant." (CC ¶ 22.) Bryant alleges that the limitation on the scope of the assignment
6  of inventions provision set forth in the Agreement "is shrouded in so much legalese
7  that no employee in Bryant's shoes would know or understand either the inventions
8  assignment or the limit on that assignment." (CC ¶ 5.) He also asserts that he "was
9  not informed that by executing the Agreement, he was assigning to Mattel all the
10  inventions and creations he created or simply even touched during the time period of
11  his employment with Mattel regardless of how unrelated they might be to his work
12  at Mattel." (CC ¶ 26.) Bryant alleges that Mattel "conceal[ed] . . . its interpretation
13  of the force and effect of the Agreement from Bryant," "fail[ed] to disclose to Bryant
14  the true meaning of the terms and the purported legal effect of the Agreement," and
15  "misrepresented and suppressed the nature of the Agreement," thus supposedly
16  committing fraud. (CC ¶¶ 55-56.)

17        Bryant makes the conclusory allegations that his "consent to the
18  Agreement was given due to mistake, or obtained through duress, menace, and/or
19  fraud," that the Agreement "is unlawful and unconscionable," that the "public interest
20  will be prejudiced by permitting the Agreement or other similar agreements to stand,
21  and it should be rescinded." (CC ¶¶ 46-49, 51.)

22            **Argument**

23  **I.   BRYANT HAS NOT STATED A FRAUD CLAIM**

24        Bryant claims that Mattel "committed actual fraud" by "failing to
25  disclose to Bryant the true meaning of the terms and the purported legal effect of the
26  Agreement, and Mattel's intent to attempt to enforce it with regard to work that he
27  conceived and/or reduced to practice while not employed by Mattel." (CC ¶ 56.)
28  While these allegations could be construed as alleging either "actual fraud" or

1  fraudulent concealment, Bryant judicially admitted in state court proceedings that he
2  does not purport to state a claim for affirmative fraud.[2]  Likewise, Bryant has not
3  stated a viable claim of fraudulent concealment.

4          To state a fraudulent concealment claim, Bryant must plead, among other
5  things, (1) that Mattel concealed or suppressed a material fact, (2) that Mattel had a
6  duty to disclose to Bryant, (3) with the intent to defraud Bryant.  Marketing
7  West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603, 612-613, 7 Cal. Rptr.
8  2d 859 (1992); Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 96, 111 Cal. Rptr.
9  2d 711 (2001).  Bryant also must plead his fraud claim with particularity.  See Fed.
10 R. Civ. P. 9(b).

11          Bryant's only fraud allegations are that Mattel concealed, variously, the
12 "terms" of the Agreement, its "interpretation" of the Agreement, and its "intent" with
13 respect to the Agreement.  Nowhere, however, does Bryant allege any facts that give
14 rise to a duty to disclose, and, in the absence of such a duty, his concealment claim
15 fails.  See Marketing West, Inc., 6 Cal. App. 4th at 612-613; see, e.g., California
16 Service Station and Auto. Repair Ass'n v. American Home Assur. Co., 62 Cal. App.
17 4th 1166, 1173, 73 Cal. Rptr. 2d 182, 187 (1998) ("There is no duty of ordinary care
18 to disclose pricing information during arm's-length contract negotiations."); Reyes v.
19 Atlantic Richfield Co., 12 F.3d 1464, 1472 (9th Cir. 1993) ("[T]he appellants cite no
20 authority that a franchisor and a prospective franchisee enjoy a fiduciary or similar
21 relationship during negotiations between the existing franchisee and the prospective
22 franchisee prior to the time that the franchisor has approved the prospective
23 franchisee.").

24          Even  if  there  were  such  a  duty,  Mattel's  contemporaneous
25 "interpretation" of and "intent" to enforce the Agreement are not material facts in the

26       [2] See Defendant and Cross-Plaintiff Carter Bryant's Opposition to Plaintiff
   Mattel's Demurrer to His Cross-Complaint dated October 29, 2004, at 16:22-24
27 ("Although Mattel claims that Bryant has attempted to plead a cause of action for
   actual fraud, his Cross-Complaint makes clear that his claim is for fraudulent
28 concealment.").

EXHIBIT
EXHIBIT 5
PAGE 153

1 | first place. To the contrary, a contracting party's undisclosed intent or subjective
2 | "interpretation" of a contract is demonstrably *immaterial*, as it has no bearing on the
3 | actual interpretation or force of the contract. <u>Berman v. Bromberg</u>, 56 Cal. App.
4 | 4th 936, 948, 65 Cal. Rptr. 2d 777 (1997); <u>Winet v. Price</u>, 4 Cal. App. 4th 1159, 1166
5 | n.3, 6 Cal. Rptr. 2d 554 (1992). To the extent Bryant's complaint is that Mattel did
6 | not disclose its future interpretation of the Agreement, that allegation is not
7 | actionable because it does not relate to an existing material fact. <u>See</u> <u>Neu-Visions</u>
8 | <u>Sports, Inc. v. Soren/McAdam/Bartells</u>, 86 Cal. App. 4th 303, 308, 103 Cal. Rptr.
9 | 2d 159 (2000); <u>Tarmann v. State Farm Mut. Auto Ins. Co.</u>, 2 Cal. App. 4th 153, 158,
10 | 2 Cal. Rtpr. 2d 861, 863 (1991) ("Predictions as to future events . . . are deemed
11 | opinions, and not actionable fraud.").

12 | <u>Cohen v. Wedbush, Noble, Cooke, Inc.</u> is controlling. In <u>Cohen</u>, the
13 | Ninth Circuit held that contracting parties do not have "a duty to explain to each other
14 | the terms of a written contract"--the same thing that Bryant faults Mattel for allegedly
15 | not having done. <u>Cohen v. Wedbush, Noble, Cooke, Inc.</u>, 841 F.2d 282, 287 (9th Cir.
16 | 1988) (applying California law), <u>overruled on other grounds by</u> <u>Ticknor v. Choice</u>
17 | <u>Hotels Intern., Inc.</u>, 265 F.3d 931, 942 (9th Cir. 2001). The plaintiffs in <u>Cohen</u>
18 | alleged that they were fraudulently induced to enter into a contract by the defendant
19 | brokerage's "failure to disclose the effect of the arbitration clause." <u>Id.</u> The Ninth
20 | Circuit rejected the claim as a matter of law:

21 | We know of no case holding that parties dealing at arm's length have a
    | duty to explain to each other the terms of a written contract. . . . The
22 | Cohens do not state a claim for fraudulent failure to disclose any
    | material facts. . . . We see no unfairness in expecting parties to read
23 | contracts before they sign them.

24 | <u>Id.</u> at 287. Like the Cohens, Bryant cannot avoid the obligations he agreed to in the
25 | Agreement by making up after-the-fact allegations about Mattel's "interpretation" of
26 | the terms of the Agreement or supposed concealment of the terms of the Agreement.
27 | The law prohibits such tactics because a contracting party could avoid any contract
28 |

1   simply by claiming that he did not know what the other party thought the contract
2   meant.

3          Because Bryant's essential allegations do not state a viable concealment
4   claim, Bryant's claim should be dismissed without leave to amend.  In any event,
5   Bryant has not plead his cause with the particularity required for fraud claims.  See
6   Fed. R. Civ. P. 9(b).  Bryant does not identify a single individual who allegedly
7   defrauded him, and his fraud claims fails for this reason alone.

8          Further, the facts alleged by Bryant do not support an inference of intent
9   to defraud.  At most, Bryant alleges that Mattel "was of course aware of the contents
10  of the Agreement and its import" because Mattel drafted the Agreement.  (CC ¶ 54.)
11  Simply having drafted the Agreement does not, however, give rise to an inference of
12  intent to defraud, and Bryant cannot establish his claim without adequately pleading
13  facts showing an intent to deceive.  See City of Atascadero v. Merrill Lynch, Pierce,
14  Fenner & Smith, 68 Cal. App. 4th 445, 482, 80 Cal. Rptr. 2d 329, 354 (1999).

15  **II.   BRYANT'S SECTION 17200 ALLEGATIONS FAIL TO STATE A**
16  **CLAIM**

17         To plead a claim for unfair competition, Bryant must allege conduct by
18  Mattel that is fraudulent, unlawful, or unfair.  Cal. Bus. & Prof. Code § 17200; Cel-
19  Tech Comm. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180, 83 Cal. Rptr.
20  2d 548 (1999); Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619,
21  17 Cal. Rptr. 2d 708 (1993).  Bryant has not done so here.  In addition, under
22  Proposition 64, which recently amended California's unfair competition law, Bryant
23  must plead that he "has suffered injury in fact and has lost money or property as a
24  result of such unfair competition," and he must satisfy traditional class action
25  requirements to maintain a representative claim.  Proposition 64 at §§ 2, 3, codified
26  at Cal. Bus. & Prof. Code §§ 17203, 17204.[3]  Bryant does not satisfy these
27  requirements.

28  _____
    [3] The text of Proposition 64 is attached hereto as Exhibit A for the Court's
    convenience.

07209/620553.1                          7

EXHIBIT 5
PAGE 155
MOTION TO DISMISS

A.  **Bryant's Unfair Competition Claim Does Not Comport with the Requirements of Proposition 64**

1.  **Bryant Has Not Alleged Injury in Fact, Loss of Money or Property, or Causation**

California voters passed Proposition 64 for the express purpose of "eliminat[ing] frivolous unfair competition lawsuits." Proposition 64 at § 1. It amended the unfair competition statutes to add standing, injury, and causation requirements. Under the amended statutes, a private plaintiff can maintain a § 17200 claim only if he "has suffered injury in fact and has lost money or property as a result of such unfair competition." Id. § 3, Cal. Bus. & Prof. Code § 17204. Bryant nowhere alleges any injury in fact, and he nowhere alleges that he has "lost money or property." Bryant not only alleges no losses, he also fails to allege that his losses were caused by, or occurred "as a result of," Mattel's alleged unfair competition. Without such allegations, Bryant's unfair competition claim must be dismissed

2.  **Bryant Has Not Alleged Predicate Facts for a Class Action**

Bryant purports to bring his unfair competition claim "on behalf of all present and former Mattel employees within the applicable limitations period and the general public," (CC ¶ 6), but Bryant has not alleged any facts that would support the maintenance of a class action. Under Proposition 64, Bryant cannot maintain a representative action in the absence of such facts, because, now, "[a]ny person may pursue representative claims or relief on behalf of others *only if* the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure." Proposition 64 § 2, Cal. Bus. & Prof. Code § 17203 (emphasis added).

Section 382 of the California Code of Civil Procedure, California's class action statute, imposes requirements similar to those in Federal Rule of Civil Procedure 23.[4] Bryant has made no attempt to allege facts that would support a

---

[4] While there may be a question as to whether Federal or California class

(continued...)

8

EXHIBIT ___
PAGE ___

EXHIBIT 5
PAGE 156
MOTION TO DISMISS

1  finding of adequate representation, predominance of common issues, typicality, or

2  other traditional class action prerequisites. See Code Civ. Pro. § 382; see Fed. R. Civ.

3  P. 23(a). Indeed, Bryant *cannot* make such allegations because the heart of his Cross-

4  Complaint is that he had a particular, idiosyncratic understanding of the Agreement

5  that he gained from some unidentified Mattel employee, and because he is no longer

6  a Mattel employee. See South Bay Chevrolet v. GMAC, 72 Cal. App. 4th 861, 897,

7  85 Cal. Rptr. 2d 301 (1999) (holding that plaintiff could not maintain representative

8  action under the former version of § 17200 because litigation of claim "would require

9  presentation of evidence about each [employee's] individual understanding based on

10  unique disclosures received by such [employee]").

11  **B.   Proposition 64's Amendments Apply to Bryant's Claim**

12  Proposition 64 governs Bryant's unfair competition claim for two

13  independent reasons. First, because his claim is exclusively a statutory one, an

14  amendment to the statute narrowing that claim applies to any pending claim. Second,

15  and independently, because the amendments are only "procedural" and "remedial,"

16  they apply to Bryant's claim without concern for retroactive application.

17

18

19  [4] (...continued)

20  action rules govern, the Court need not resolve that question here because, under
either authority, Bryant has pled no facts to meet any class action requirement.

21  Compare Newell v. State Farm Gen. Ins. Co., 118 Cal. App. 4th 1094, 1100, 13

22  Cal. Rptr. 3d 343, 348 (2004) (holding that a § 382 class action plaintiff must
show a "community of interest," which "embodies three factors: (1) predominant

23  common questions of law or fact; (2) class representatives with claims or defenses

24  typical of the class; and (3) class representatives who can adequately represent the
class." (internal quotations omitted)) with Fed. R. Civ. P. 23 ("One or more

25  members of a class may sue or be sued as representative parties on behalf of all

26  only if (1) the class is so numerous that joinder of all members is impracticable,

27  (2) there are questions of law or fact common to the class, (3) the claims or
defenses of the representative parties are typical of the claims or defenses of the

28  class, and (4) the representative parties will fairly and adequately protect the
interests of the class.").

EXHIBIT
EXHIBIT 5
PAGE 157
MOTION TO DISMISS

1    **1.    Amendments to Statutory Claims Apply to Pending Actions**

2    The claim created by § 17200 of the Business and Professions Code is

3    exclusively statutory.  Amendments to statutory claims apply to pending cases.

4    "Where a right of action does not exist at common law, but depends solely on statute,

5    the repeal of the statute destroys the inchoate right unless it has been reduced to final

6    judgment, or unless the repealing statute contains a saving clause protecting the right

7    in pending litigation." Gracyk v. Workers Compensation Appeals Bd., 184 Cal. App.

8    3d 997, 1006-07, 229 Cal. Rptr. 494 (1986); accord Governing Board v. Mann, 18

9    Cal. 3d 819, 822 (1977); Brenton v. Metabolife Intern., Inc., 116 Cal. App. 4th 679,

10   690, 10 Cal. Rptr. 3d 702 (2004) ("Where, as here, the Legislature has conferred a

11   remedy and withdraws it by amendment or repeal of the remedial statute, the new

12   statutory scheme may be applied to pending actions without triggering retrospectivity

13   concerns."); 7 Witkin, Summary of California Law, Constitutional Law § 497 ("An

14   exception to the rule of prospective construction is recognized where a right of action

15   is created by statute and the statute is repealed without a savings clause:  The repeal

16   will operate retroactively to terminate a pending action based on the statute.").

17   Proposition 64 does not include a savings clause.  Its amendments, therefore, apply

18   to Bryant's claim.

19   **2.    Applying the Proposition 64 Amendments to Bryant's Claim**

20   **Does Not Raise Retroactivity Concerns**

21   Bryant may also argue that Proposition 64 should not apply to his claims

22   because that would be retroactive application of the statute.   Applying the

23   requirements mandated by Proposition 64 to Bryant's claims would not be retroactive

24   because the amendments are (1) intended to apply to pending cases, (2) procedural,

25   and (3) remedial, affecting the propriety of the issuance of prospective relief. Tapia

26   v. Superior Court, 53 Cal. 3d 282, 289 (1991); Parsons v. Tickner, 31 Cal. App. 4th

27   1513, 1523, 37 Cal. Rptr. 810 (1995).

28

EXHIBIT 5

PAGE 158

EXHIBIT 5

PAGE

MOTION TO DISMISS

1    Where a statute has a prescribed temporal scope, that statement of scope

2  governs.  Myers v. Philip Morris Companies, Inc., 28 Cal. 4th 828, 841 (2002).

3  Proposition 64 is written to apply to pending cases, having been enacted "to eliminate

4  frivolous unfair competition lawsuits," without making exceptions for pending ones.

5  Proposition 64 at § 1(d).  Accordingly, it applies to Byrant's claims.

6    Further, even if the temporal scope of Proposition 64 is unclear, a court

7  must apply the law in effect at the time it renders its decision. "[L]aws which address

8  the conduct of trials which have yet to take place," rather than pre-litigation conduct,

9  do not have a retroactive effect when applied to pending cases because such laws

10  "address[] conduct in the future." Tapia, 53 Cal. 3d at 288.  Procedural statutes,

11  which affect the rules of litigation, are *prospectively* applied to pending cases. See

12  Brenton, 116 Cal. App. 4th at 688-89; Parsons, 31 Cal. App. 4th at 1523 ("There is

13  no vested right in existing remedies and rules of procedure and evidence. '[G]enerally

14  speaking, the Legislature may change such rules and make the changes apply

15  retroactively to causes of action or rights which accrued prior to the change.'"

16  (quoting 7 B.E. Witkin, Summary of California Law, Constitutional Law, § 492 (9th

17  ed. 1990))

18    Proposition 64 is procedural and remedial.  The Proposition's standing

19  restrictions affect the propriety of prospective relief (which is all that § 17200

20  provides for) and implement only procedural, remedial changes. Like the new rules

21  on "the proof that must be furnished and the facts which must be established" in

22  Estate of Patterson, or the new standing rules at issue in Parsons, the new standing

23  requirements set forth in Proposition 64 "are procedural only." Parsons, 31 Cal. App.

24  4th at 1523; Estate of Patterson, 155 Cal. 626, 638 (1909) (cited in Tapia, 53 Cal. 3d

25  at 288-89). Because Proposition 64's standing and class requirements do not change

26  the consequences of any pre-litigation behavior that has already occurred, application

27  of the requirements to ongoing litigation is not retroactive.  Proposition 64 bars

28  Bryant's unfair competition claim.

EXHIBIT 5

EXHIBIT 5
PAGE 159

07209/620553.1

11

PAGE _____

MOTION TO DISMISS

1
2

C. **Even Under the Pre-Proposition 64 Version of § 17200, Bryant's Claim Fails as a Matter of Law**

3        In light of Proposition 64, Bryant's § 17200 claim must be dismissed.
4 Even assuming, contrary to law, that Bryant can escape the fatal effect of
5 Proposition 64, Bryant's unfair competition claims fail for further reasons,
6 independent of Proposition 64.

7        **1.  There Is No Unlawful Business Practice**

8        An unlawful business practice that violates § 17200 is "an act or
9 practice, committed pursuant to business activity, that is at the same time forbidden
10 by law." <u>Klein v. Earth Elements, Inc.</u>, 59 Cal. App. 4th 965, 969, 69 Cal. Rptr.
11 2d 623 (1997); <u>Bernardo v. Planned Parenthood Federation of America</u>, 115 Cal.
12 App. 4th 322, 352, 9 Cal. Rptr. 3d 197 (2004) (holding that a § 17200 plaintiff must
13 "stat[e] and substantiat[e] a violation of law). Although he cites to a scatter-shot of
14 statutes, Bryant has not plead such a violation.

15        **(a).  Mattel Did Not Violate Labor Code § 2870**

16        Bryant makes the ironic argument that the assignment of inventions
17 clause violates § 2870 because it recites § 2870 verbatim. He alleges that the clause
18 "is shrouded in so much legalese" that Bryant could not understand the clause. That
19 is not a defense. "One who accepts or signs an instrument, which on its face is a
20 contract, is deemed to assent to all its terms . . . " 1 Witkin, <u>Summary of California</u>
21 <u>Law</u>, Contracts § 120 (9th ed. 1987). Moreover, that "legalese" Bryant derides is the
22 language from § 2870 that excludes from the assignment those inventions that cannot
23 be legally assigned:

24
25
26
27
28

07209/620553.1

12

EXHIBIT __5

EXHIBIT 5
PAGE 160

PAGE __

MOTION TO DISMISS

| Cal. Labor Code § 2870(a) | Agreement ¶ 2(c) |
|---|---|
| (a)  Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer *shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) Result from any work performed by the employee for the employer.* | Any provision of this agreement requiring me to assign my rights in any invention does not apply to any invention which qualifies under the provision of Section 2870 of the California Labor Code.  That section provides that the requirement to assign *"shall not apply to an invention that the employee developed entirely on his or her own time without using the employers equipment, supplies, facilities, or trade secret information except for those inventions that either (1) relate at the time or conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer, or (2) result from any work performed by the employer for the employer."*  I understand that I bear the burden of proving that an invention qualifies under Section 2870. |

An agreement that adopts the language of a statute to comply with it does not, thereby, violate it.

**(b)     The Agreement Does Not Violate Business & Professions Code § 16600**

Section 16600 applies only to restrictions on employment and covenants not to compete *after* the parties' relationship has ended.  "The basic rule in this state is that contracts precluding a *former* employee *from obtaining new employment with a competitor* are invalid under section 16600."  See Loral Corp. v. Moyes, 174 Cal. App. 3d 268, 275-76, 219 Cal. Rptr. 836 (1985) (emphasis added); Muggill v. Reuben H. Donnelley Corp., 62 Cal. 2d 239, 242, 42 Cal. Rptr. 107 (1965) ("This section invalidates provisions in employment contracts prohibiting an employee from working for a competitor *after completion of his employment....*") (emphasis added). The Agreement, however, only obligated Bryant to focus his attention on his work for Mattel and not assist competitors while he was working for Mattel:

EXHIBIT __5__
PAGE _____

EXHIBIT 5
PAGE 161

07209/620553.1

13

MOTION TO DISMISS

1   My employment with [Mattel] requires my undivided attention and
2   effort. Therefore, *during my employment with [Mattel]*, I will fully
    comply with [Mattel]'s Conflict of Interest Policy, as it may be amended
    from time to time.   I shall not, without [Mattel]'s express written
3   consent, engage in any employment or business other than for [Mattel],
    or invest in or assist (in any manner) any business competitive with the
4   business or future business plans of [Mattel].[5]

5   Because this provision does not restrict post-Mattel employment, it does not violate

6   § 16600.[6]  To the contrary, the provision is harmonious with the duty of loyalty that

7   Bryant owed to Mattel as a matter of California law.  "While California law does

8   permit an employee to seek other employment and even to make some 'preparations

9   to compete' before resigning, California law *does not* authorize an employee to

10  transfer his loyalty to a competitor.  During the term of employment, an employer is

11  entitled to its employees' 'undivided loyalty.'" Fowler v. Varian Associates, Inc., 196

12  Cal. App. 3d 34, 41, 241 Cal. Rptr. 539 (1987) (emphasis added); see Cal. Labor

13  Code § 2863 ("An employee who has any business to transact on his own account,

14  similar to that intrusted to him by his employer, shall always give the preference to

15  the business of the employer").

16              (c)    The Agreement Does Not Violate Labor Code §§ 96(k),

17                     98.6 or 2269

18          Bryant also tries to rely on Labor Code § 96, but that provision states

19  only that the "Labor Commissioner . . . shall . . . take assignments of: (k) Claims for

20  loss of wages as a result of demotion, suspension, or discharge from employment for

21  lawful conduct occurring during non-working hours away from the employer's

22  premises."  This procedural statute does what it says--it authorizes the assignment of

23  claims--and does not set forth *any* substantive rights that can be the predicate of a

24  claim. See Barbee v. Household Automotive Finance Corp., 113 Cal. App. 4th 525,

25  533-35, 6 Cal. Rptr. 3d 406 (2003) (affirming grant of summary judgment: "We

26  conclude that Labor Code section 96, subdivision (k) does not set forth an

27  _____
    [5]  Agreement ¶ 3 (emphasis added).
28  [6]  Moreover, since Bryant is no longer employed by Mattel, he also clearly
    lacks standing to assert this claim under Proposition 64.  EXHIBIT _

EXHIBIT 5
PAGE 162
MOTION TO DISMISS

1   independent public policy that provides employees with any substantive rights, but
2   rather, merely establishes a procedure by which the Labor Commissioner may assert,
3   on behalf of employees, recognized constitutional rights.").

4          Sections 98.6 and 2699 are, like § 96(k), procedural statutes: Section
5   98.6 proscribes retaliation against employees who have engaged in protected conduct,
6   and § 2699 provides a private right of action and attorney's fees for certain
7   substantive violations.   None of these statutes bears on the legitimacy of the
8   provisions of the Agreement, in which Mattel asks its employees to agree, consistent
9   with their statutory duty of loyalty, not to assist competitors of Mattel while they are
10  employed by Mattel.

11          Indeed, even according to Bryant's own allegations, there has been no
12  violation of any of these statutes. Bryant does not specify anything about § 2699 that
13  has been violated, and Bryant alleges that § 98.6 has been violated only "to the extent
14  Mattel has taken adverse employment actions against employees who have refused
15  to sign the Agreement." (CC ¶ 33.) Notably absent is any allegation that Mattel has
16  *in fact* taken adverse employment actions against employees who have refused to sign
17  the Agreement, rendering the purported claim unripe. See Pacific Legal Foundation
18  v. California Coastal Com., 33 Cal. 3d 158, 171, 188 Cal. Rptr. 104 (1982).
19  Moreover, Bryant does not assert that he (or anyone else) was ever "demot[ed],
20  suspen[ded], or discharge[d]" and he thus has not met even the most rudimentary
21  pleading requirement for an alleged violation of § 96(k), much less the particularity
22  required for an unfair competition claim. Khoury's, 14 Cal. App. 4th at 619. Bryant
23  also clearly lacks standing to assert any of these claims under Proposition 64, because
24  he is no longer employed by Mattel and does not allege that he ever refused to sign
25  any agreement.

26          **(d)     The Agreement Does Not Violate the Trade Secrets Act**
27          While Bryant appears to allege that the Agreement illegally restricts the
28  use of public information in violation of the California Trade Secret Act, Bryant did

EXHIBIT ___5

07209/620553.1

15          PAGE

EXHIBIT 5
PAGE 163

MOTION TO DISMISS

1   not oppose Mattel's demurrer on this claim before the state court.[7]  In any event, the

2   Agreement's trade secrets language once again mirrors statutory language and

3   therefore does not violate that statute:

| Cal. Civ. Code § 3426.1 | Agreement ¶ 1(b) |
|---|---|
| "Trade secret" means *information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.* | As used in the Agreement, "Proprietary Information" means any *information (including a formula, pattern, compilation, program, device, method, technique, or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use,* and includes information on [Mattel], its customers, suppliers, joint venturers, licensors, licensees, distributors, and other persons and entities with whom the Company does business.[8] |

13   ## 2.   **There Is No Unfairness**

14          To plead an unfair practice, Bryant must specify some unfairness that is

15   "tethered to some legislatively declared policy . . . ."  <u>Cel-Tech</u>, 20 Cal. 4th at 185

16   (internal citations omitted).  "*[A]ny* claim of unfairness under § 17200 should be

17   defined in connection with a legislatively declared policy."  <u>Schnall v. Hertz Corp.</u>,

18   _____

19   [7]  <u>See</u> Defendant and Cross-Plaintiff Carter Bryant's Opposition to Plaintiff
    Mattel's Demurrer to His Cross-Complaint dated October 29, 2004.

20          [8]  The additional language in paragraph 1(b) of the Agreement does not

21   support a claim of unlawfulness.  Courts consider agreements between parties as
    to trade secret designation to determine whether information in fact is a trade

22   secret.  <u>See</u> <u>Morlife, Inc. v. Perry</u>, 56 Cal. App.  4th 1514, 1522, 66 Cal. Rptr.

23   2d 731, 736 (1997) ("While labeling information 'trade secret' or 'confidential
    information' . . . it is nonetheless an important factor in establishing the value

24   which was placed on the information and that it could not be readily derived from
    publicly-available sources.").  Moreover, the listed categories have been held to

25   constitute trade secrets.  <u>See, e.g.</u>, <u>MAI Systems Corp. v. Peak Computer, Inc.</u>, 991

26   F.2d 511 (9th Cir. 1993) (holding that customer database qualified as a trade
    secret); <u>Whyte v. Schlage Lock Co.</u>, 125 Cal. Rptr. 2d 277 (2002) (holding that

27   employer's pricing, profit margins, costs of production and related data were trade

28   secrets); <u>Morton v. Rank America, Inc.</u>, 812 F. Supp. 1062 (C.D. Ca. 1993)
    (holding that supplier lists qualified as trade secrets).  EXHIBIT —

EXHIBIT 5
PAGE 164

MOTION TO DISMISS

1 | 78 Cal. App. 4th 1144, 1166, 93 Cal. Rptr. 2d 439 (2000); see also Gregory v.
2 | Albertson's, Inc., 104 Cal. App. 4th 845, 854, 128 Cal. Rptr. 2d 389 (2003) (requiring
3 | that the "unfair act or practice" be "'tethered' to *specific constitutional, statutory or*
4 | *regulatory provisions*") (emphasis added).

5 |         (a)    **The Agreement Cannot Be Unfair Because It Complies**
6 |                **with Applicable Laws**

7 |        Because the terms of the Agreement do not violate the statutes Bryant
8 | identifies, those terms cannot be unfair. "Acts that the Legislature has determined to
9 | be lawful may not form the basis for an action under the unfair competition law."
10 | Cel-Tech, 20 Cal. 4th at 182; see Schnall, 78 Cal. App. 4th at 1160 (affirming
11 | decision to sustain demurrer where the allegedly unfair business practice had been
12 | authorized by the legislature).

13 |         (b)    **The Agreement Is Not Unconscionable**

14 |        Bryant's only independent allegation of unfairness is that the Agreement
15 | is "surprising, grossly unfair and shocks the conscience," although he identifies no
16 | specific clause or term that he contends is unconscionable. (CC ¶¶ 35-37.)
17 | Regardless, the Agreement cannot be unconscionable as a matter of law because, as
18 | has been seen, it tracks applicable California statutes.

19 |        Additionally, to be avoided as unconscionable, an agreement must be
20 | both procedurally and substantively unconscionable. Armendariz v. Foundation
21 | Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114, 99 Cal. Rptr. 2d 745 (2000).
22 | "Substantive unconscionability centers on the 'terms of the agreement and whether
23 | those terms are so one-sided as to shock the conscience.'" Ingle v. Circuit City
24 | Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003). The terms of the Agreement do not
25 | come close to "shocking the conscience." Bryant agreed to design products for
26 | Mattel knowing that he would inevitably be exposed to confidential and proprietary
27 | designs and information. It was entirely reasonable for Mattel to ask Bryant to assign
28 | to Mattel those inventions he developed within the limits set by the Legislature; to

EXHIBIT _____

EXHIBIT 5
PAGE 165

17

PAGE _____

MOTION TO DISMISS

1    promise to protect Mattel's proprietary information; and not to aid and assist Mattel's

2    competitors while he worked for Mattel. Cubic Corp. v. Marty, 185 Cal. App.

3    3d 438, 450, 229 Cal. Rptr. 828 (1986) (rejecting argument that an employment

4    agreement containing an assignment of inventions clause was unconscionable); see

5    Patent & Licensing Corp. v. Olsen, 188 F.2d 522, 525 (2d Cir. 1951) ("It is well

6    settled that an agreement on the part of an inventor to assign inventions developed

7    while in the employ of another is not inequitable or unconscionable.").

8              Procedural unconscionability is a function of (1) "oppression," or the

9    extent to which there was a difference in bargaining power when the Agreement was

10   executed, and (2) "surprise," or "the extent to which the supposedly agreed-upon

11   terms of the bargain are hidden in the prolix printed form drafted by the party seeking

12   to enforce the disputed terms." Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519,

13   1532, 60 Cal. Rptr. 2d 138 (1997); accord Ingle, 328 F.3d at 1170. While Bryant has

14   alleged that he could not negotiate the Agreement, the single-page Agreement was

15   identified as an "Employee Confidential Information and Inventions Agreement," and

16   its basic terms, which relate to confidential information and inventions, are anything

17   but "surprising" or "hidden." To the contrary, the Agreement states in capital letters

18   right above Bryant's signature: "CAUTION: THIS AGREEMENT CREATES

19   IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S

20   RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR

21   HER EMPLOYMENT." Because the terms of the Agreement are not surprising or

22   hidden, the Agreement is not procedurally unconscionable. See Robison v. City of

23   Manteca, 78 Cal. App. 4th 452, 459, 92 Cal. Rptr. 2d 748 (2000) (holding that there

24   was no "lack of disclosure of material provisions," and hence no surprise, because

25   there was "no allegation [employee] was *prevented* from reading the agreement on the

26   day of executing, only that it was open to the signature page," and the material terms

27   were not "obscured in any respect in the agreement itself") (italics in original).

28

EXHIBIT 5

PAGE 166

EXHIBIT 5
PAGE 166

MOTION TO DISMISS

07209/620553.1                                           18

### 3.    There Is No Fraudulent Practice

Bryant alleges that members of the public are likely to be deceived by Mattel's "fraudulent and/or negligent misrepresentation of . . . the terms contained within the Agreement." (CC ¶ 38.) Because Bryant states no fraud claim, as shown above, Bryant's states no fraudulent business practice. While lacking any specificity, Bryant appears to allege that members of the public are likely to be deceived by the Agreement's assignment of invention clause because "no lay person could reasonably understand" the statutory language written and adopted by the Legislature and incorporated by Mattel. (CC ¶ 18.) This allegation fails to state a claim as a matter of law. The single-page Agreement is clear and concise, conspicuously labeled, and includes a conspicuous "CAUTION" immediately above the signature line. Mattel *complied* with the law by quoting applicable statutes in the Agreement. South Bay Chevrolet v. GMAC is directly on point. The appellate court there affirmed the trial court's finding that disclosure of the allegedly fraudulent practice in, inter alia, the terms of a contract, precluded any possibility that the allegedly fraudulent practice was likely to deceive the general public. 72 Cal. App. 4th 861, 888-89, 85 Cal. Rptr. 2d 301 (1999).[9]

Bryant alleges that lay employees could not understand the Agreement and that he was not encouraged to seek independent counsel before he signed the agreement. These allegations, even if true, do not constitute a fraudulent business practice. Again, in Robison, the appellate court held that an employee who was "strongly advised" to sign agreement or face immediate termination, handed a multi-page agreement already turned to signature page, and "coerced" into signing the agreement without reading it did not allege sufficient facts to avoid the agreement's

---

[9] See Shvarts v. Budget Group, Inc., 81 Cal. App. 4th 1153, 1159, 97 Cal. Rptr. 2d 722, 726 (affirming grant of demurrer because "[w]e cannot conclude here that the public is likely to be deceived."); Plotkin v. Sajahtera, Inc., 106 Cal. App. 4th 953, 965, 131 Cal. Rptr. 2d 303, 312 (2003).

07209/620553.1

19

EXHIBIT 5
PAGE 167
MOTION TO DISMISS

EXHIBIT ___

PAGE ___

1   obligations. 78 Cal. App. 4th at 458-59. Because Bryant's allegations do not even

2   rise to the conduct alleged in <u>Robison</u>, his claim fails.[10]

3       **D.    Bryant Cannot State an Unfair Competition Claim For Restitution**

4              **or Disgorgement**

5              Bryant claims "disgorgement and restitution for illicit profits obtained

6   by Mattel from its unlawful and/or unfair business acts and practices."[11]  (CC § 42.)

7   Bryant, however, has alleged no facts that entitle him to restitution or disgorgement.

8              Restitution is a proper remedy only if a defendant obtained money from

9   a plaintiff. "[W]hen we refer to orders for restitution, we mean orders compelling a

10  UCL [section 17200] defendant to *return* money obtained through an unfair business

11  practice to those persons in interest *from whom the property was taken*." <u>Kraus v.</u>

12  <u>Trinity Management Services, Inc.</u>, 23 Cal. 4th 116, 126-27 (2000) (emphasis added);

13  <u>Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.</u>, 178 F. Supp. 2d 1099, 1122

14  (C.D. Cal. 2001) (rejecting a restitution claims against a defendant that had no funds

15  of plaintiff: "There is a difference between 'getting' and 'getting back.'").[12]  Because

16

17        ────────────
          [10]  In any event, Bryant's "fraudulent practice" claim obviously fails under

18  Proposition 64, which requires Bryant to show, both for himself and any members
    of the general public that he purports to represent, actual monetary losses and

19  causation of such losses. Bryant has not made any such allegations.

20        [11]  <u>See</u> <u>also</u> <u>id.</u> ¶ 6 (seeking "an order disgorging Mattel of all profits
    unlawfully obtained by its misconduct"); <u>id.</u> ¶ 28 (seeking an order "requiring

21  Mattel to disgorge and/or make restitution for all unlawful profits received and/or

22  costs incurred by virtue of its unlawful and unfair business practices"); <u>id.</u> ¶ 42
    (alleging that "Mattel has enjoyed unlawful profits"); <u>id.</u>, Prayer for Relief at ¶ 1

23  (seeking "restitution, disgorgement and interest in an amount to be determined at

24  trial").
          [12]  <u>See</u> <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1151,

25  131 Cal. Rptr. 2d 29 (2003) (stating that "restitution is limited to restoring money

26  or property to direct victims of an unfair practice"); <u>Cortez v. Purolator Air</u>
    <u>Filtration Prods.</u>, 23 Cal. 4th 163, 177, 96 Cal. Rptr. 2d 518 (2000) (noting that in

27  prior cases approving of restitution as a remedy, "the remedy we approved was

28  literally restoration of money, the *return* of money acquired *from* an individual *to*
    that individual").

EXHIBIT 5
PAGE 168
MOTION TO DISMISS
EXHIBIT

1  Byrant has not alleged that Mattel obtained any money from him, restitution is not

2  available as a matter of law.

3        Further, disgorgement is available only in a class action, not in a

4  representative action. Bryant asserts a representative action. The California Supreme

5  Court held:

6        [r]elying on th[e] distinction between restitution and disgorgement, we
          held in Kraus that although restitution was an available remedy in UCL
7        actions, a plaintiff in a representative action under the UCL could not
          recover disgorgement in the broader, nonrestitutionary sense, into a fluid
8        recovery fund.

9  29 Cal. 4th at 1145; accord Watson Labs, 178 F. Supp. 2d at 1122 ("While Section

10  17200 serves important and vital public policies and interests by permitting injured

11  plaintiffs to benefit from restitutionary remedies, for this Court to permit [plaintiff]

12  to recover "disgorgement" of all the revenues, or even merely the extra profits, that

13  the [defendants] derived from sales of [the product at issue] would extend the scope

14  of Section 17203. That the Court will not do.").

15        Bryant's request for disgorgement, effectively a request for

16  "disgorgement of unfairly obtained profits into a fluid recovery fund," is improper.

17  Such relief is "not an available remedy in a representative action brought under the

18  UCL." Korea Supply, 29 Cal. 4th at 1144 (citing Kraus, 23 Cal. 4th at 137).

19  **III.   BRYANT HAS NOT STATED A CLAIM FOR RESCISSION**

20        Bryant alleges that the Agreement should be rescinded because his

21  "consent to the Agreement was given due to mistake, or obtained due to duress,

22  menace and/or fraud," the "Agreement is unlawful and unconscionable," and the

23  "public interest will be prejudiced by permitting the Agreement or other similar

24  agreements to stand." (CC ¶¶ 46, 47, 49.) Such conclusions do not state a claim for

25  rescission; rather, Bryant must set forth sufficient *facts* to justify relief. See Nachum

26  v. Allstate Ins. Co., 1997 WL 580522, *3 (C.D. Ca. July 21, 1997) (on a motion to

27  dismiss, "a court need not accept as true unreasonable inferences, unwarranted

28

EXHIBIT _____

EXHIBIT 5
PAGE 169

21        PAGE _____

MOTION TO DISMISS

07209/620553.1

1 deductions of fact, or conclusory legal allegations cast in the form of factual
2 allegations").

3        As to duress and menace, the most Bryant alleges is that he was
4 "required to execute" the Agreement to be employed by Mattel. (CC ¶¶ 14, 46.) But,
5 even an employee alleging that he was "strongly advised" to sign an agreement or
6 face immediate termination does not allege sufficient facts to avoid an agreement.
7 See Robison, 78 Cal. App. 4th at 458.

8        The Agreement cannot be rescinded due to fraud, because Bryant has
9 failed to plead fraud, as explained above. The Agreement can only be rescinded for
10 unlawfulness if it is "unlawful for causes which *do not appear* in its terms or
11 conditions." Cal. Civ. Code § 1689 (emphasis added). Bryant's claims of
12 unlawfulness are based on provisions that *do appear* in the Agreement, so rescission
13 would be improper. Unconscionability is not a basis for rescinding the Agreement
14 because the rescission statute does not identify it as a basis of rescission. Id.

15        Bryant next relies on mistake, although he fails to identify any "mistake"
16 that led to his entering into the Agreement. (CC ¶ 46.) Presumably he is relying on
17 an alleged mistake of law–misinterpretation of the Agreement. Hedging
18 Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th 1410, 1421 n.9,
19 49 Cal. Rptr. 2d 191 (1996) (stating that "subjective misinterpretation of the contract"
20 is "at most a mistake of law"). A unilateral mistake of law permits rescission only
21 "when one side misunderstands the law at the time of contracting and the other side
22 knows it, but does not rectify that misunderstanding." Id. Bryant alleges that Mattel
23 knew the terms of the Agreement. He does not allege that Mattel knew that he
24 (supposedly) did not understand the terms. Absent such an allegation, the claim fails.

25        Bryant further alleges that he did not understand "the scope, breadth or
26 meaning of" the Agreement. (CC ¶ 27.) That theory, even if proven, states no claim.

27        There are two reasons courts will not set aside contracts for mere
   subjective misinterpretation. First, to declare rescission based upon
28 mistaken undisclosed subjective interpretation would conflict with the
   objective theory of enforceable contracts. If this ꜀⃰⃰ꜛꜛ the law, the

1    objective theory of contracts would give with one hand, while the
2    subjective misunderstanding theory of rescission would take away with
     the other. This is not the law. Second, a unilateral misinterpretation of
3    contractual terms, without knowledge by the other party at the time of
     contract, does not constitute a mistake under either Civil Code section
4    1577 or 1578.

5    Id. at 1421-1422.[13]

6          Finally, "[r]escission is not allowable where the party demanding it

7    cannot or does not restore the other party to the condition he would have been in

8    before the contract." Joshua Tree Townsite Co. v. Joshua Tree Land Co., 100 Cal.

9    App. 2d 590, 596-97, 224 P.2d 85, 90 (1950); Cal. Civ. Code § 1691 (same). Bryant

10   cannot credibly offer to "forget" the confidential and proprietary information Mattel

11   disclosed to him or to return the exclusive design services that he owed Mattel. The

12   recission claim fails as a matter of law.

13   **IV.   MATTEL'S CONDUCT IS PRIVILEGED**

14         All of Bryant's claims are predicated, at least in part, on allegations about

15   Mattel's litigation conduct--allegations that the Agreement is unlawful "as applied by

16   Mattel, as it seeks to enforce the Agreement" and that Mattel engaged in unfair

17   competition in violation of § 17200 by "threatening to enforce" the Agreement's

18   allegedly unlawful provisions. (CC ¶¶ 20, 41.)

19         California's litigation privilege protects conduct made in or in connection

20   with any judicial proceeding, including pre-litigation statements. Cal. Civ. Code

21   § 47(b); see Aronson v. Kinsella, 58 Cal. App. 4th 254, 262, 68 Cal. Rptr. 2d 305

22   (1997). Bryant cannot avoid this privilege by pleading an unfair competition claim.

23         [T]he Courts of Appeal have considered [whether] the unfair
           competition statute grants [a plaintiff] unqualified standing to seek
24         injunctive relief against defendants notwithstanding the absolute bar
           imposed by section 47(b). These decisions have rejected the claim that

25   _____
     [13]  See Bosinger v. Phillips Plastic Corp., 57 F. Supp. 2d 986, 991 (S.D. Cal.
26   1999) ("On their face, these reasons are not sufficient to deny enforceability of the
     arbitration provision. Lacking in Plaintiff's Declaration are statements that he did
27   not read or sign the agreement, or was not allowed to so do. *That Plaintiff was
     unaware of the consequences of his arbitration agreement is not relevant.*")
28   (emphasis added).

                              23

EXHIBIT 5
PAGE 171
EXHIBIT
PAGE
MOTION TO DISMISS

1       a plaintiff may, in effect, "plead around" absolute barriers to relief by
2       relabeling the nature of the action as one brought under the unfair
       competition statute.

3   Rubin v. Green, 4 Cal. 4th 1187, 1201, 17 Cal. Rptr. 2d 828 (1993). The Supreme

4   Court echoed this reasoning in Cel-Tech, 20 Cal. App. 4th at 182, when the Court

5   stated that the broad scope of § 17200 is subject to limitation: "If the Legislature has

6   permitted certain conduct or considered a situation and concluded no action should

7   lie, courts may not override that determination. When specific legislation provides

8   a 'safe harbor' plaintiffs may not use the general unfair competition law to assault that

9   harbor." To allow claims to go forward under the unfair competition statute or under

10   the common law of fraud that would otherwise be barred by the litigation privilege

11   would "undermine[] th[e] immunity" created by Civil Code § 47(b). Id.

12        The Noerr-Pennington doctrine likewise protects a party's First

13   Amendment rights to petition governmental authorities for redress.[14] Noerr-

14   Pennington immunizes litigation and other petitioning conduct from any liability.

15   See, e.g., Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,

16   508 U.S. 49, 51, 113 S. Ct. 1920, 1923, 123 L. Ed. 2d 611 (1993). Thus, if a party's

17   conduct is protected by the Noerr-Pennington doctrine, any claim based upon that

18   protected conduct necessarily fails. See Columbia Pictures Indus., Inc. v. Prof. Real

19   Est. Inv., Inc., 944 F.2d 1525, 1531 (9th Cir. 1991) (Noerr-Pennington immunizes all

20   good faith judicial claims from derivative litigation and extends to "all conduct

21   incidental to the prosecution of the suit"), aff'd, 508 U.S. 49 (1993).

22        Mattel's enforcement of the Agreement and "threats" to enforce the

23   Agreement are protected activities. As protected activities, allegations of such

24   conduct cannot be the predicate of any of Bryant's claims. Bryant's focus on Mattel's

25

26      ―――――――――――――

27   [14] The name of the doctrine comes from two Supreme Court decisions:
Eastern Railroads Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S.

28   127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and United Mine Workers v.
Pennington, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965).

EXHIBIT 5
PAGE 172
EXHIBIT
PAGE

1 litigation conduct--and specifically Mattel's filing of a Complaint--appears from the

2 beginning of his Cross-Complaint. In paragraph 3, Bryant alleges:

3      Furthermore, the Agreement contains terms and conditions that violate
       established California law on their face *and/or in connection with*
4      *Mattel's interpretation and threats to enforce this Agreement.* (CC ¶ 3)
       (emphasis added).

5 Bryant's refrain appears throughout his Cross-Complaint:

6
       [T]he Agreement contains several other provisions that are equally
7      unlawful either on the face of the Agreement or as applied by Mattel, *as*
       *it seeks to enforce the Agreement.* (CC ¶ 20) (emphasis added).

8
       Mattel's unlawful conduct in requiring Bryant . . . to sign the Agreement
9      with its unlawful provisions . . . *and then threatening to enforce such*
       *unlawful provisions and eventually filing a lawsuit to enforce such*
10     *provisions against Bryant,* constitutes unfair competition . . . . (CC
       ¶ 59) (emphasis added).

11
       [F]or an order . . . prohibiting Mattel from threatening and attempting to
12     enforce such agreements or restrictions against Bryant or any other
       current or former employees . . . . (CC Prayer for Relief ¶ 2.)

13

14 These are only a few examples--there are many others.[15] Mattel's litigation position

15 as to the meaning of the terms of the Agreement, Mattel's alleged "threats to enforce"

16 the Agreement, and Mattel's "filing a lawsuit" are absolutely privileged. Bryant

17 cannot rely on such conduct to state a claim.

18 **V.    BRYANT IS NOT ENTITLED TO DECLARATORY RELIEF**

19        Bryant seeks a declaration that the Agreement violates Business and

20 Professions Code §§ 16600 and 17200 and that the Agreement is procedurally and

21 substantively unconscionable. For the same reasons that Bryant's unfair competition

22 claim fails, the declaratory relief claim should also be dismissed without leave to

23 amend.

24 DATED: November 23, 2004          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
25

26                                 By: *Micah T. Zee*
                                       Michael T. Zeller
27                                     Attorneys for Plaintiff
                                       and Counter-Defendant
28                                     Mattel, Inc.

      [15] See, e.g., Cross-Complaint ¶¶ 3, 26, 41, 56.

EXHIBIT

EXHIBIT 5

PAGE      PAGE 173

MOTION TO DISMISS

Exhibit A

EXHIBIT ___S___

PAGE ___

**EXHIBIT 5**
**PAGE 174**

# TEXT OF PROPOSED LAWS

This initiative measure is submitted to the people in accordance with the provisions of Section 8 of Article II of the California Constitution.

This initiative measure amends sections of the Business and Professions Code; therefore, existing provisions proposed to be deleted are printed in strikeout type and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

## PROPOSED LAW

SECTION 1.   Findings and Declarations of Purpose.

The people of the State of California find and declare that:

(a) This state's unfair competition laws set forth in Sections 17200 and 17500 of the Business and Professions Code are intended to protect California businesses and consumers from unlawful, unfair, and fraudulent business practices.

(b) These unfair competition laws are being misused by some private attorneys who:

(1) File frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit.

(2) File lawsuits where no client has been injured in fact.

(3) File lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant.

(4) File lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision.

(c) Frivolous unfair competition lawsuits clog our courts and cost taxpayers. Such lawsuits cost California jobs and economic prosperity, threatening the survival of small businesses and forcing businesses to raise their prices or to lay off employees to pay lawsuit settlement costs or to relocate to states that do not permit such lawsuits.

(d) It is the intent of California voters in enacting this act to eliminate frivolous unfair competition lawsuits while protecting the right of individuals to retain an attorney and file an action for relief pursuant to Chapter 5 (commencing with Section 17200) of Division 7 of the Business and Professions Code.

(e) It is the intent of the California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution.

(f) It is the intent of California voters in enacting this act that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public.

(g) It is the intent of California voters in enacting this act that the Attorney General, district attorneys, county counsels, and city attorneys maintain their public protection authority and capability under the unfair competition laws.

(h) It is the intent of California voters in enacting this act to require that civil penalty payments be used by the Attorney General, district attorneys, county counsels, and city attorneys to strengthen the enforcement of California's unfair competition and consumer protection laws.

SEC. 2.   Section 17203 of the Business and Professions Code is amended to read:

### 17203.   *Injunctive Relief—Court Orders*

Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. *Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.*

SEC. 3.   Section 17204 of the Business and Professions Code is amended to read:

### 17204.   *Actions for Injunctions by Attorney General, District Attorney, County Counsel, and City Attorney*

Actions for any relief pursuant to this chapter shall be prosecuted exclu-

sively in a court of competent jurisdiction by the Attorney General or any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city, or city and county, having a population in excess of 750,000, and with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor or, with the consent of the district attorney, by a city attorney in any city and county in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person ~~acting for the interests of itself, its members or the general public or~~ *he who has suffered injury in fact and has lost money or property as a result of such unfair competition.*

SEC. 4.   Section 17206 of the Business and Professions Code is amended to read:

### 17206.   *Civil Penalty for Violation of Chapter*

(a) Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, by any district attorney, by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, by any city attorney of a city, or city and county, having a population in excess of 750,000, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor, or, with the consent of the district attorney, by a city attorney in any city and county, in any court of competent jurisdiction.

(b) The court shall impose a civil penalty for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

(c) If the action is brought by the Attorney General, one-half of the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the State General Fund. If the action is brought by a district attorney or county counsel, the penalty collected shall be paid to the treasurer of the county in which the judgment was entered. Except as provided in subdivision (d), if the action is brought by a city attorney or city prosecutor, one-half of the penalty collected shall be paid to the treasurer of the city in which the judgment was entered, and one-half to the treasurer of the county in which the judgment was entered. *The aforementioned funds shall be for the exclusive use by the Attorney General, the district attorney, the county counsel, and the city attorney for the enforcement of consumer protection laws.*

(d) If the action is brought at the request of a board within the Department of Consumer Affairs or a local consumer affairs agency, the court shall determine the reasonable expenses incurred by the board or local agency in the investigation and prosecution of the action.

Before any penalty collected is paid out pursuant to subdivision (c), the amount of any reasonable expenses incurred by the board shall be paid to the state Treasurer for deposit in the special fund of the board described in Section 205. If the board has no such special fund, the moneys shall be paid to the state Treasurer. The amount of any reasonable expenses incurred by a local consumer affairs agency shall be paid to the general fund of the municipality or county that funds the local agency.

(e) If the action is brought by a city attorney of a city and county, the entire amount of the penalty collected shall be paid to the treasurer of the city and county in which the judgment was entered *for the exclusive use by the city attorney for the enforcement of consumer protection laws.* However, if the action is brought by a city attorney of a city and county for the purposes of civil enforcement pursuant to Section 17980 of the Health and Safety Code or Article 3 (commencing with Section 11570) of Chapter 10 of Division 10 of the Health and Safety Code, either the penalty collected shall be paid entirely to the treasurer of the city and county in which the judgment was entered or, upon the request of the city attorney, the court may order that up to one-half of the penalty, under court supervision and approval, be paid for the purpose of restoring, maintaining, or enhancing the premises that were the subject of the action, and that the balance of the penalty be paid to the treasurer of the city and county.

SEC. 5.   Section 17535 of the Business and Professions Code is amended to read:

### 17535.   *Obtaining Injunctive Relief*

EXHIBIT ____

PAGE ____

**EXHIBIT 5
PAGE 175**

# TEXT OF PROPOSED LAWS

Proposition                    ...

Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company, or any other association or organization of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.

Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney, county counsel, city attorney, or city prosecutor in this state in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person ~~acting for the interests of itself, its members or the general public~~ who has suffered injury in fact and has lost money or property as a result of a violation of this chapter. *Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of this section and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.*

SEC. 6.  Section 17536 of the Business and Professions Code is amended to read:

17536.  *Penalty for Violations of Chapter; Proceedings; Disposition of Proceeds*

(a) Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and ~~recovered~~ in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

(b) The court shall impose a civil penalty for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

(c) If the action is brought by the Attorney General, one-half of the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the State Treasurer.

If brought by a district attorney or county counsel, the entire amount of penalty collected shall be paid to the treasurer of the county in which the judgment was entered. If brought by a city attorney or city prosecutor, one-half of the penalty shall be paid to the treasurer of the county and one-half to the city. *The aforementioned funds shall be for the exclusive use by the Attorney General, district attorney, county counsel, and city attorney for the enforcement of consumer protection laws.*

(d) If the action is brought at the request of a board within the Department of Consumer Affairs or a local consumer affairs agency, the court shall determine the reasonable expenses incurred by the board or local agency in the investigation and prosecution of the action.

Before any penalty collected is paid out pursuant to subdivision (c), the amount of such reasonable expenses incurred by the board shall be paid to the State Treasurer for deposit in the special fund of the board described in Section 205. If the board has no such special fund the moneys shall be paid to the State Treasurer. The amount of such reasonable expenses incurred by a local consumer affairs agency shall be paid to the general fund of the municipality which funds the local agency.

(e) As applied to the penalties for acts in violation of Section 17530, the remedies provided by this section and Section 17534 are mutually exclusive.

SEC. 7.  In the event that between July 1, 2003, and the effective date of this measure, legislation is enacted that is inconsistent with this measure, said legislation is void and repealed irrespective of the code in which it appears.

SEC. 8.  In the event that this measure and another measure or measures relating to unfair competition law shall appear on the same statewide election ballot, the provisions of the other measures shall be deemed to be in conflict with this measure. In the event that this measure shall receive a greater number of affirmative votes, the provisions of this measure shall prevail in their entirety, and the provisions of the other measure relating to unfair competition law shall be null and void.

SEC. 9.  If any provision of this act, or part thereof, is for any reason held to be invalid or unconstitutional, the remaining provisions shall not be affected, but shall remain in full force and effect, and to this end the provisions of this act are severable.

---

## Proposition 65

Pursuant to statute, Proposition 65 will appear in a Supplemental Voter Information Guide.

---

## Proposition 66

This initiative measure is submitted to the people in accordance with the provisions of Section 8 of Article II of the California Constitution.

This initiative measure amends sections of the Penal Code and amends a section of the Welfare and Institutions Code; therefore, existing provisions proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

### PROPOSED LAW

THE THREE STRIKES AND CHILD PROTECTION ACT OF 2004

SECTION 1.  Title

This initiative shall be known and may be cited as the Three Strikes and Child Protection Act of 2004.

SEC. 2.  Findings and Declarations

The people of the State of California do hereby find and declare that:

(a) Proposition 184 (the "Three Strikes" law) was overwhelmingly approved in 1994 with the intent of protecting law-abiding citizens by enhancing the sentences of repeat offenders who commit serious and/or violent felonies;

(b) Proposition 184 did not set reasonable limits to determine what criminal acts to prosecute as a second and/or third strike; and

(c) Since its enactment, Proposition 184 has been used to enhance the sentences of more than 35,000 persons who did not commit a serious and/or violent crime against another person, at a cost to taxpayers of more than eight hundred million dollars ($800,000,000) per year.

SEC. 3.  Purposes

The people do hereby enact this measure to:

(a) Continue to protect the people from criminals who commit serious and/or violent crimes;

(b) Ensure greater punishment and longer prison sentences for those who have been previously convicted of serious and/or violent felonies, and who commit another serious and/or violent felony;

(c) Require that no more than one strike be prosecuted for each criminal act and to conform the burglary and arson statutes; and

(d) Protect children from dangerous sex offenders and reduce the cost to taxpayers for warehousing offenders who commit crimes that do not qualify for increased punishment according to this act.

EXHIBIT __5__

PAGE __

EXHIBIT 5
PAGE 176

EXHIBIT 6

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those imposed in this Agreement. This Agreement is designed to make clear that: (i) I will remain the confidante of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on its remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time during or after my employment with the Company any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

(a) I agree to communicate to the Company as promptly and fully as is practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for it and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

**3. Conflicts with Other Activities**

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

**4. Miscellaneous**

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination, This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to any continued employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature

Employee Name (print)  CARTER H. BRYANT

Date  01/04/99

MATTEL, INC.
By  Teresa Newcomb
Signature
Name of Witness (print)  TERESA NEWCOMB

EXHIBIT 46
p 9.

M 0001622

EXHIBIT ____ 6

PAGE ____   EXHIBIT 6
PAGE 177

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use any prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best effort to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominee all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominee (without charge but at no expense to me) at any time in every proper way to obtain for it and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, development, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualified under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any documents and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a essential condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterpart. The Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature

Employee Name (print)    CARTER H. BRYANT

Date    01/04/99

Signature    Teresa Newcomb

Name of Witness (print)    TERESA NEWCOMB

M 0001596

EXHIBIT _____ 6

PAGE _____    **EXHIBIT 6 PAGE 178**

DEPOSITION EXHIBIT
25A
11-8-04    St

EXHIBIT 7

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**