1   sentence of paragraph 30.  MGA Defendants admit the second sentence of

2   paragraph 30.

3        31.    MGA Defendants admit that samples of the four original Bratz

4   dolls were shown at the Hong Kong Toy Fair in January 2001, and deny the

5   remaining allegations set forth in paragraph 31.

6        32.    MGA Defendants admit that MGA and its subsidiaries have

7   distributed and sold Bratz and Bratz-related products in many countries throughout

8   the world, that MGA and its subsidiaries have licensed Bratz to third parties, that

9   MGA has derived annual revenues from its sales and licenses of Bratz in excess of

10   $500 million, that MGA and its subsidiaries continue to market, sell and license

11   Bratz and intend to continue to do so, and deny the remaining allegations set forth

12   in paragraph 32.

13        33.    MGA Defendants deny the allegations set forth in paragraph 33.

14        34.    MGA Defendants deny the allegations set forth in paragraph 34.

15        35.    MGA Defendants deny the allegations set forth in paragraph 35.

16        36.    MGA Defendants admit that Bryant had an agreement with

17   MGA, state that the terms of the agreement speak for themselves, and deny the

18   remaining allegations set forth in paragraph 36.

19        37.    MGA Defendants admit that in or about late 2003 or early 2004,

20   MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to

21   conduct business in Mexico, admit that MGAE de Mexico hired three employees of

22   Mattel's Mexican subsidiary, and deny the remaining allegations set forth in

23   paragraph 37.

24        38.    MGA Defendants admit that Carlos Gustavo Machado Gomez

25   was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado

26   was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that

27   Machado had access to some nonpublic business information of Mattel Mexico, and

28   state that they are without sufficient knowledge to admit or deny the remaining

1    allegations set forth in paragraph 38, and on that basis, deny the remaining
2    allegations set forth in paragraph 38.

3         39.    MGA Defendants admit that Mariana Trueba Almada was a
4    Marketing Manager, Girls Division, for Mattel Mexico, admit that Trueba had
5    access to some nonpublic business information of Mattel Mexico, and state that
6    they are without sufficient knowledge to admit or deny the remaining allegations
7    set forth in paragraph 39, and on that basis, deny the remaining allegations set forth
8    in paragraph 39.

9         40.    MGA Defendants admit that Pablo Vargas San Jose was a Trade
10    Marketing Manager for Mattel Mexico, admit that Vargas was employed at Mattel
11    Mexico from March 2001 until April 19, 2004, admit that Vargas had access to
12    some nonpublic business information of Mattel Mexico, and state that they are
13    without sufficient knowledge to admit or deny the remaining allegations set forth in
14    paragraph 40, and on that basis, deny the remaining allegations set forth in
15    paragraph 40.

16         41.    MGA Defendants admit that in or about early 2004, Machado,
17    Trueba and Vargas discussed leaving Mattel Mexico, admit that Machado, Trueba
18    and Vargas resigned from Mattel Mexico on April 19, 2004, admit that they did not
19    identify their new employer to Mattel Mexico, admit that Machado, Trueba and
20    Vargas were offered and accepted employment with MGAE de Mexico, and deny
21    the remaining allegations set forth in paragraph 41.

22         42.    MGA Defendants admit that MGA personnel communicated by
23    telephone with Machado and Vargas prior to their Mattel resignations, admit that
24    MGA personnel, including Isaac Larian, communicated by e-mail with Machado
25    and Vargas concerning terms of employment through an America Online e-mail
26    account with the address <plot04@aol.com>, and deny the remaining allegations
27    set forth in paragraph 42.

28

EXHIBIT
PAGE

**EXHIBIT 29
PAGE 1026**

43.   MGA Defendants admit that in or about March 2004, Machado, Trueba, and Vargas made plans to travel from Mexico to Los Angeles in April 2004, admit that in or about March 2004, Machado, Trueba and Vargas discussed with MGA personnel, including Larian, employment at MGAE de Mexico, state that the quoted <plot04@aol.com> e-mails speak for themselves, and deny the remaining allegations set forth in paragraph 43.

44.   MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 44, and on that basis, deny the allegations set forth in paragraph 44.

45.   MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 45, and on that basis, deny the allegations set forth in paragraph 45.

46.   MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 46, and on that basis, deny the allegations set forth in paragraph 46.

47.   MGA Defendants are without sufficient knowledge to admit or deny the allegation set forth in the third sentence of paragraph 47, and on that basis, deny these allegations, and deny the remaining allegations set forth in paragraph 47.

48.   MGA Defendants deny the allegations set forth in paragraph 48.

49.   MGA Defendants deny the allegations set forth in paragraph 49.

50.   MGA Defendants are without sufficient knowledge to admit or deny the allegation that MGA publicized a claim that, in 2005, it had increased its Mexican market share by 90% over the prior year, and on that basis, deny this allegation, and deny the remaining allegations set forth in paragraph 50.

51.   MGA Defendants deny the allegations set forth in paragraph 51.

52.   MGA Defendants deny the allegations set forth in paragraph 52.

53.   MGA Defendants admit that on October 27, 2005, Mexican authorities searched MGAE de Mexico and seized certain documents, and state that

PAGE ___                    EXHIBIT 29
                            PAGE 1027

1   they are without sufficient knowledge to admit or deny the remaining allegations

2   set forth in paragraph 53, and on that basis, deny the remaining allegations set forth

3   in paragraph 53.

4         54.   MGA Defendants admit that Machado was transferred from

5   MGAE de Mexico to MGA's office in Van Nuys, California, admit that Machado

6   resides in the County of Los Angeles, and deny the remaining allegations set forth

7   in paragraph 54.

8         55.   MGA Defendants admit the allegations set forth in the first

9   sentence of paragraph 55. MGA Defendants admit that Tyco Toys hired Brawer on

10  April 22, 1996, and state that they are without sufficient knowledge to admit or

11  deny the remaining allegations set forth in the second sentence of paragraph 55, and

12  on that basis, deny the remaining allegations set forth in the second sentence of

13  paragraph 55. MGA Defendants admit the allegations set forth in third sentence of

14  paragraph 55. MGA Defendants admit that on April 9, 1997, Brawer became a

15  Marketing Director for Mattel in Mount Laurel, New Jersey, and state that the

16  remaining allegations in the fourth sentence of paragraph 55 are a statement of

17  Mattel's legal position, to which no response is necessary. To the extent a response

18  is required, MGA Defendants deny the remaining allegations set forth in paragraph

19  55.

20        56.   MGA Defendants are without sufficient knowledge to admit or

21  deny the allegations set forth in paragraph 56, and on that basis, deny the

22  allegations set forth in paragraph 56. The last sentence of paragraph 56 is a

23  statement of Mattel's legal position, to which no response is necessary. To the

24  extent a response is required, MGA Defendants deny the remaining allegations set

25  forth in paragraph 56.

26        57.   MGA Defendants admit that by 2003, Brawer had advanced

27  within Mattel to a Senior Vice President position over customer marketing, and

28  state that the remaining allegations in the first sentence of paragraph 57 are a

EXHIBIT _____

PAGE ____

EXHIBIT 29
PAGE 1028

1   statement of Mattel's legal position, to which no response is necessary.  To the

2   extent a response is required, MGA Defendants deny the remaining allegations set

3   forth in the first sentence of paragraph 57.  MGA Defendants admit that in his

4   executive position, Brawer was provided access to certain nonpublic Mattel

5   information.

6           58.   MGA Defendants admit the allegations set forth in the first

7   sentence of paragraph 58.  MGA Defendants deny the allegations set forth in the

8   second sentence of paragraph 58.  MGA Defendants are without sufficient

9   knowledge to admit or deny the remaining allegations set forth in paragraph 58, and

10  on that basis, deny the remaining allegations set forth in paragraph 58.

11          59.   MGA Defendants are without sufficient knowledge to admit or

12  deny the allegations set forth in paragraph 59, and on that basis, deny the

13  allegations set forth in paragraph 59.

14          60.   MGA Defendants admit that in April 2004, Mattel made Brawer

15  a Senior Vice President/General Manager, and state that they are without sufficient

16  knowledge to admit or deny the remaining allegations set forth in paragraph 60, and

17  on that basis, deny the remaining allegations set forth in paragraph 60.

18          61.   MGA Defendants admit that in May 2004, Brawer began

19  performing General Manager duties, working with one of Mattel's major retail

20  customer accounts, and state that they are without sufficient knowledge to admit or

21  deny the remaining allegations set forth in paragraph 61, and on that basis, deny the

22  remaining allegations set forth in paragraph 61.

23          62.   MGA Defendants admit the allegations set forth in the first

24  sentence of paragraph 62.  MGA Defendants admit that as Brawer left, he carried a

25  large cardboard box, and deny the remaining allegations set forth in the second

26  sentence of paragraph 62.  MGA Defendants state that they are without sufficient

27  knowledge to admit or deny the remaining allegations set forth in paragraph 62, and

28  on that basis, deny the remaining allegations set forth in paragraph 62.

EXHIBIT 29
PAGE 1029

1    63.    MGA Defendants admit the allegations set forth in paragraph

2    63.

3    64.    MGA Defendants admit that on September 20, 2004, Mattel

4    hand-delivered a letter to Brawer, state that the contents of the letter speak for

5    themselves, and deny the remaining allegations set forth in paragraph 64.

6    65.    MGA Defendants admit that at his exit interview on September

7    29, 2004, Brawer was given a copy of an agreement with Tyco that he had signed

8    on April 22, 1996, and a copy of Mattel's Code of Conduct, admit that Brawer

9    stated that he had not signed the Code of Conduct, and deny the remaining

10   allegations set forth in paragraph 65.

11   66.    MGA Defendants admit that on October 1, 2004, Brawer's last

12   day of employment with Mattel, Mattel delivered a letter to Brawer, state that the

13   contents of the letter speak for themselves, and deny the remaining allegations set

14   forth in paragraph 66.

15   67.    MGA Defendants admit that Brawer became MGA's Executive

16   Vice President of Sales and Marketing, admit that he was responsible for sales

17   worldwide, admit that he had and continues to have responsibility for MGA's

18   accounts with some of the same retailers that he worked with while at Mattel, and

19   deny the remaining allegations set forth in paragraph 67.

20   68.    MGA Defendants admit that Brawer stated during his exit

21   interview that he had returned all confidential proprietary information to Mattel,

22   state that he did not provide copies of information from his personal contacts file,

23   and deny the remaining allegations set forth in paragraph 68.

24   69.    MGA Defendants admit that since leaving Mattel, Brawer has

25   had contacts with certain Mattel employees, both by telephone and electronic mail,

26   and deny the remaining allegations set forth in paragraph 69.

27   70.    MGA Defendants deny the allegations set forth in paragraph 70.

28

EXHIBIT _____

PAGE _____

EXHIBIT 29
PAGE 1030

1    71.    MGA Defendants are without sufficient knowledge to admit or
2    deny the allegations set forth in paragraph 71, and on that basis, deny the
3    allegations set forth in paragraph 71.

4    72.    MGA Defendants are without sufficient knowledge to admit or
5    deny the allegations set forth in paragraph 72, and on that basis, deny the
6    allegations set forth in paragraph 72.

7    73.    MGA Defendants admit that on September 26, 2005, Brisbois
8    resigned from Mattel Canada, state that she took a position as Vice President of
9    National Accounts at MGAE Canada, and deny the remaining allegations set forth
10   in the first sentence of paragraph 73. MGA Defendants are without sufficient
11   knowledge to admit or deny the remaining allegations set forth in paragraph 73, and
12   on that basis, deny the remaining allegations set forth in paragraph 73.

13   74.    MGA Defendants admit that Brisbois spoke with Isaac Larian
14   by telephone on or about the evening of September 22, 2005, deny that Brisbois
15   copied approximately 45 Mattel documents onto a USB or thumb drive on that
16   same date, deny that Brisbois concealed the thumb drive the last time she left
17   Mattel Canada's office, and state that they are without sufficient knowledge to
18   admit or deny the remaining allegations set forth in paragraph 74, and on that basis,
19   deny the remaining allegations set forth in paragraph 74.

20   75.    MGA Defendants are without sufficient knowledge to admit or
21   deny the allegations set forth in paragraph 75, and on that basis, deny the
22   allegations set forth in paragraph 75.

23   76.    MGA Defendants admit that Brisbois traveled several times to
24   MGA's offices in Van Nuys, California and met with Larian and Brawer, that
25   MGA issued a press release, state that the press release speaks for itself, and state
26   that they are without sufficient knowledge to admit or deny the remaining
27   allegations set forth in paragraph 76 and, on that basis, deny the remaining
28   allegations set forth in paragraph 76.

EXHIBIT
PAGE

**EXHIBIT 29
PAGE 1031**

1      77.    MGA Defendants admit that MGA has hired at least 25

2  employees directly from Mattel's United States operations in the past few years,

3  and deny the remaining allegations set forth in paragraph 77.

4      78.    MGA Defendants deny the allegations set forth in the first

5  sentence of paragraph 78.  MGA Defendants admit that Larian has sent email

6  messages to a "Bratz News" distribution list, admit that the recipients of e-mail

7  messages sent to the "Bratz News" distribution list includes members of the media

8  as well as representatives of customers of both MGA and Mattel, and deny the

9  remaining allegations set forth in paragraph 78.

10     79.    MGA Defendants admit that on May 12, 2006, Larian sent an

11 email message to the "Bratz News" distribution list that included a reference to the

12 new My Scene product with real gems, and state that they are without sufficient

13 knowledge to admit or deny the remaining allegations set forth in paragraph 79, and

14 on that basis, deny the remaining allegations set forth in paragraph 79.

15     80.    MGA Defendants admit that Larian told one retailer that such

16 retailer was the only retailer with plans to purchase MY SCENE BLING BLING

17 with real gems, at a time when Larian had a good faith belief that such retailer was

18 the only retailer with plans to purchase MY SCENE BLING BLING with real

19 gems, and deny the remaining allegations set forth in paragraph 80.

20     81.    MGA Defendants deny the allegation set forth in paragraph 81.

21     82.    MGA Defendants repeat their responses contained in paragraphs

22 1 through 81 of this Answer and incorporate them by reference as though fully and

23 completely set forth herein.

24     83.    MGA Defendants deny the allegations set forth in paragraph 83.

25     84.    MGA Defendants deny the allegations set forth in paragraph 84.

26     85.    MGA Defendants deny the allegations set forth in paragraph 85.

27     86.    MGA Defendants deny the allegations set forth in paragraph 86.

28     87.    MGA Defendants deny the allegations set forth in paragraph 87.

EXHIBIT _____

PAGE _____

**EXHIBIT 29**
**PAGE 1032**

1         88.   MGA Defendants repeat their responses contained in paragraphs

2   1 through 87 of this Answer and incorporate them by reference as though fully and

3   completely set forth herein.

4         89.   MGA Defendants deny the allegations set forth in paragraph 89.

5         90.   MGA Defendants deny the allegations set forth in paragraph 90.

6         91.   MGA Defendants deny the allegations set forth in paragraph 91.

7         92.   MGA Defendants deny the allegations set forth in paragraph 92.

8         93.   MGA Defendants deny the allegations set forth in paragraph 93.

9         94.   MGA Defendants deny the allegations set forth in paragraph 94.

10        95.   MGA Defendants deny the allegations set forth in paragraph 95.

11        96.   MGA Defendants deny the allegations set forth in paragraph 96.

12        97.   MGA Defendants deny the allegations set forth in paragraph 97.

13        98.   MGA Defendants repeat their responses contained in paragraphs

14   1 through 97 of this Answer and incorporate them by reference as though fully and

15   completely set forth herein.

16        99.   MGA Defendants deny the allegations set forth in paragraph 99.

17       100.   MGA Defendants deny the allegations set forth in paragraph

18   100.

19       101.   MGA Defendants deny the allegations set forth in paragraph

20   101.

21       102.   MGA Defendants deny the allegations set forth in paragraph

22   102.

23       103.   MGA Defendants deny the allegations set forth in paragraph

24   103.

25       104.   MGA Defendants deny the allegations set forth in paragraph

26   104.

27       105.   MGA Defendants deny the allegations set forth in paragraph

28   105.

- 13 -

EXHIBIT _____

PAGE _____

**EXHIBIT 29
PAGE 1033**

1        106.  MGA Defendants repeat their responses contained in paragraphs

2  1 through 105 of this Answer and incorporate them by reference as though fully and

3  completely set forth herein.

4        107.  MGA Defendants deny the allegations set forth in paragraph

5  107.

6        108.  MGA Defendants deny the allegations set forth in paragraph

7  108.

8        109.  MGA Defendants deny the allegations set forth in paragraph

9  109.

10       110.  MGA Defendants deny the allegations set forth in paragraph

11  110.

12       111.  MGA Defendants deny the allegations set forth in paragraph

13  111.

14       112.  MGA Defendants deny the allegations set forth in paragraph

15  112.

16       113.  MGA Defendants deny the allegations set forth in paragraph

17  113.

18       114.  MGA Defendants deny the allegations set forth in paragraph

19  114.

20       115.  MGA Defendants deny the allegations set forth in paragraph

21  115.

22       116.  MGA Defendants repeat their responses contained in paragraphs

23  1 through 115 of this Answer and incorporate them by reference as though fully and

24  completely set forth herein.

25       117.  MGA Defendants deny the remaining allegations set forth in

26  paragraph 117.

27       118.  MGA Defendants deny the allegations set forth in paragraph

28  118.

EXHIBIT _____

PAGE _____

EXHIBIT 29
PAGE 1034

1            119.   MGA Defendants deny the allegations set forth in paragraph

2    119.

3            120.   MGA Defendants deny the allegations set forth in paragraph

4    120.

5            121.   MGA Defendants deny the allegations set forth in paragraph

6    121.

7            122.   MGA Defendants repeat their responses contained in paragraphs

8    1 through 121 of this Answer and incorporate them by reference as though fully and

9    completely set forth herein.

10           123.   MGA Defendants deny the allegations set forth in paragraph

11   123.

12           124.   MGA Defendants deny the allegations set forth in paragraph

13   124.

14           125.   MGA Defendants deny the allegations set forth in paragraph

15   125.

16           126.   MGA Defendants deny the allegations set forth in paragraph

17   126.

18           127.   MGA Defendants deny the allegations set forth in paragraph

19   127.

20           128.   MGA Defendants deny the allegations set forth in paragraph

21   128.

22           129.   MGA Defendants repeat their responses contained in paragraphs

23   1 through 128 of this Answer and incorporate them by reference as though fully and

24   completely set forth herein.

25           130.   The first and fifth sentences of paragraph 130 are statements of

26   Mattel's legal position, to which no response is necessary.  To the extent a response

27   is required, MGA Defendants deny the allegations set forth in the first and fifth

28   sentences of paragraph 130.  MGA Defendants are without sufficient knowledge to

- 15 -

EXHIBIT _____

PAGE _____

**EXHIBIT 29
PAGE 1035**

1    admit or deny the remaining allegations set forth in paragraph 130, and on that

2    basis, deny the remaining allegations set forth in paragraph 130.

3            131.   MGA Defendants deny the allegations set forth in paragraph

4    131.

5            132.   MGA Defendants deny the allegations set forth in paragraph

6    132.

7            133.   MGA Defendants deny the allegations set forth in paragraph

8    133.

9            134.   MGA Defendants deny the allegations set forth in paragraph

10   134.

11           135.   MGA Defendants deny the allegations set forth in paragraph

12   135.

13           136.   MGA Defendants repeat their responses contained in paragraphs

14   1 through 135 of this Answer and incorporate them by reference as though fully and

15   completely set forth herein.

16           137.   MGA Defendants deny the allegations set forth in paragraph

17   137.

18           138.   MGA Defendants deny the allegations set forth in paragraph

19   138.

20           139.   MGA Defendants deny the allegations set forth in paragraph

21   139.

22           140.   MGA Defendants deny the allegations set forth in paragraph

23   140.

24           141.   MGA Defendants deny the allegations set forth in paragraph

25   141.

26           142.   MGA Defendants repeat their responses contained in paragraphs

27   1 through 141 of this Answer and incorporate them by reference as though fully and

28   completely set forth herein.

- 16 -

EXHIBIT _____

PAGE _____

**EXHIBIT 29
PAGE 1036**

1    143.   Paragraph 143 is a statement of Mattel's legal position, to which
2  no response is necessary. To the extent a response is required, MGA Defendants
3  deny the allegations set forth in the paragraph 143.

4    144.   MGA Defendants deny the allegations set forth in paragraph
5  144.

6    145.   MGA Defendants deny the allegations set forth in paragraph
7  145.

8    146.   MGA Defendants deny the allegations set forth in paragraph
9  146.

10    147.   MGA Defendants deny the allegations set forth in paragraph
11  147.

12    148.   MGA Defendants deny the allegations set forth in paragraph
13  148.

14    149.   MGA Defendants repeat their responses contained in paragraphs
15  1 through 148 of this Answer and incorporate them by reference as though fully and
16  completely set forth herein.

17    150.   MGA Defendants deny the allegations set forth in paragraph
18  150.

19    151.   MGA Defendants deny the allegations set forth in paragraph
20  151.

21    152.   MGA Defendants deny the allegations set forth in paragraph
22  152.

23    153.   MGA Defendants deny the allegations set forth in paragraph
24  153.

25    154.   MGA Defendants deny the allegations set forth in paragraph
26  154.

27

28

EXHIBIT _____

**EXHIBIT 29**
**PAGE 1037**

1    155.   MGA Defendants repeat their responses contained in paragraphs
2    1 through 154 of this Answer and incorporate them by reference as though fully and
3    completely set forth herein.

4    156.   MGA Defendants deny the allegations set forth in paragraph
5    156.

6    157.   MGA Defendants deny the allegations set forth in paragraph
7    157.

8    158.   MGA Defendants deny the allegations set forth in paragraph
9    158.

10   159.   MGA Defendants deny the allegations set forth in paragraph
11   159.

12   160.   MGA Defendants deny the allegations set forth in paragraph
13   160.

14   161.   MGA Defendants deny the allegations set forth in paragraph
15   161.

16   162.   MGA Defendants deny the allegations set forth in paragraph
17   162.

18   163.   MGA Defendants repeat their responses contained in paragraphs
19   1 through 162 of this Answer and incorporate them by reference as though fully and
20   completely set forth herein.

21   164.   MGA Defendants deny the allegations set forth in paragraph
22   164.

23   165.   MGA Defendants deny the allegations set forth in paragraph
24   165.

25   166.   MGA Defendants deny the allegations set forth in paragraph
26   166.

27

28

EXHIBIT _____

LA2:841935.2                                    - 18 -                      PAGE

EXHIBIT 29
PAGE 1038

1          167.   MGA Defendants repeat their responses contained in paragraphs

2   1 through 166 f this Answer and incorporate them by reference as though fully and

3   completely set forth herein.

4          168.   MGA Defendants deny the allegations set forth in paragraph

5   168.

6          169.   Paragraph 169 is a statement of Mattel's legal position, to which

7   no response is necessary. To the extent a response is required, MGA Defendants

8   deny the allegations set forth in the paragraph 169.

9          170.   Paragraph 170 is a statement of Mattel's legal position, to which

10   no response is necessary. To the extent a response is required, MGA Defendants

11   deny the allegations set forth in the paragraph 170.

12                         **AFFIRMATIVE DEFENSES**

13        Without admitting any wrongful conduct on the part of MGA Defendants or

14   any Counter-Defendant, and without admitting that Mattel suffered any loss,

15   damage, or injury, MGA Defendants allege the following affirmative defenses to

16   the Counterclaims. By designating the following as affirmative defenses, MGA

17   Defendants do not in any way waive or limit any defenses which are or may be

18   raised by their denials, allegations, and averments set forth herein. MGA

19   Defendants also do not, by alleging any affirmative defense, admit that Mattel does

20   not have the burden of proof for any or all facts underlying any of those defenses.

21   These defenses are pled in the alternative, and are raised to preserve the rights of

22   MGA Defendants to assert such defenses, and are without prejudice to their ability

23   to raise other and further defenses.

24                       **FIRST AFFIRMATIVE DEFENSE**

25                         (Failure to State a Claim)

26        Mattel's counterclaims fail to state a claim against MGA Defendants upon

27   which relief can be granted.

28

EXHIBIT

PAGE

**EXHIBIT 29
PAGE 1039**

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands/*in Pari Delicto*)

Mattel's counterclaims are barred in whole or in part by Mattel's unclean
hands and wrongful acts. This affirmative defense is based, in part, on Mattel's
efforts to undermine MGA's business and to "kill" Bratz at any cost which include,
but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress,
copy MGA's products, packaging, themes, and advertising (including for Mattel
products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and
Little Mommy products, to name a few), and engage in other acts of unfair
competition against MGA as alleged in MGA's complaint against Mattel; Mattel's
efforts to create negative publicity or press about MGA, MGA products, Bryant,
Larian, or MGA employees; Mattel's efforts to fund or commission market research
or studies that portray Bratz or MGA products negatively; Mattel's efforts to
interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's
efforts to include negative references to MGA or Bratz on Mattel's "We Believe in
Girls" website; Mattel's efforts or intent to interfere with business dealings or
contractual relations between MGA and Smoby Group; Mattel's influencing
Nickelodeon to reject MGA advertisements or to limit time slots for
advertisements; assisting parties in lawsuits against MGA; Mattel's monitoring,
"spying on" or gaining knowledge of MGA's trade secrets, non-public information,
non-public activities, unreleased products, and product development; gaining
access, or attempts to gain access, to MGA showrooms, Plan-o-Grams,
merchandising displays, Toy Fair displays on false pretenses; Mattel's wrongfully
obtaining MGA's costs and sales information through Mattel-employed category
managers at retailers; Mattel's inducing non-party customers to breach
confidentiality agreements with MGA and divulge non-public information about
MGA's unreleased products; Mattel's covertly investigating MGA, its officers and
employees, and their family members; Mattel's contacting persons under false

- 20 -

**EXHIBIT 29
PAGE 1040**

1   pretense in order to interrogate them about Bratz and this litigation; Mattel's

2   coercing its employees to accept restrictive covenants (right before a massive

3   layoff) and non-compete clauses and other efforts to prevent prospective MGA

4   employees from accepting offers of employment; Mattel's delay in suing Carter

5   Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel

6   case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead the

7   public and retailers; and Mattel's taking all measures to conceal its bad acts,

8   including the willful non-retention and destruction of documents. Additionally,

9   Mattel believed from the time that Carter Bryant left Mattel's employ that he was

10   going to perform work for a Mattel competitor. Mattel began investigating Bryant

11   and MGA Defendants, including Bryant's role in the creation and development of

12   Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring

13   suit, all the while allowing MGA Defendants to spend years developing their

14   business and invest tens of millions of dollars developing the Bratz products and

15   building the Bratz brand. These averments are made on information and belief

16   except where MGA Defendants have knowledge thereof.

### THIRD AFFIRMATIVE DEFENSE

(Laches)

19      Mattel's counterclaims are barred by the equitable doctrine of laches

20   because, among other things, Mattel believed from the time that Carter Bryant left

21   Mattel's employ that he was going to perform work for a Mattel competitor. Mattel

22   began investigating Bryant and MGA Defendants, including Bryant's role in the

23   creation and development of Bratz, at least as early as March 2002 and thereafter

24   continued its investigation into Bryant's role in the creation and development of

25   Bratz, as well as his work with MGA, in August 2002 after Mattel's CEO, Robert

26   Eckert, received an "anonymous letter" that claimed that Bryant stole the idea for

27   Bratz from Mattel and sold it to MGA Defendants. Nonetheless, Mattel waited

28   years to bring suit, all the while allowing MGA Defendants to spend years

- 21 -

EXHIBIT 29
PAGE 1041

1  developing their business and invest tens of millions of dollars developing the Bratz

2  products and building the Bratz brand.

3  ### FOURTH AFFIRMATIVE DEFENSE

4  ### (Statute of Limitations)

5      Mattel's counterclaims are barred by the applicable statutes of limitations,

6  including but not limited to, 18 U.S.C. § 1961 *et seq.*, 17 U.S.C. § 507(b), and Code

7  of Civil Procedure §§ 337, 339, 343 and 338(c).

8  ### FIFTH AFFIRMATIVE DEFENSE

9  ### (*Bona Fide* Purchaser for Value)

10      Mattel cannot maintain its counterclaims against MGA Defendants because

11  MGA Defendants paid valuable consideration for Bryant's assignment of his rights

12  in the original Bratz drawings to MGA Defendants, and MGA Defendants acted

13  with a good faith belief that Bryant owned the rights to his original Bratz drawings

14  and that his assignment of such rights to MGA Defendants was valid and

15  permissible.

16  ### SIXTH AFFIRMATIVE DEFENSE

17  ### (17 U.S.C. § 205(d))

18      Mattel cannot maintain its counterclaims against MGA Defendants because,

19  among other things, MGA Defendants acted with a good faith belief that Bryant

20  owned the rights to his original Bratz drawings and that his assignment of such

21  rights to MGA Defendants was valid and permissible.

22  ### SEVENTH AFFIRMATIVE DEFENSE

23  ### (Information Readily Ascertainable)

24      MGA Defendants cannot be liable, either on their own account or by

25  association with other defendants, for misappropriation of information that was

26  readily ascertainable by proper means at the time of the alleged acquisition or use.

27  Such information includes, but is not limited to, the identity of suppliers,

28

PAGE _____

**EXHIBIT 29**
**PAGE 1042**

1  manufacturers, distributors and retailers; contact information for the same; and

2  sales, marketing and media data.

3  **EIGHTH AFFIRMATIVE DEFENSE**

4  (Acts or Omissions of Others)

5  Mattel's damages, if any, were not caused by MGA Defendants and are not

6  attributable to any acts or omissions of MGA Defendants.

7  **NINTH AFFIRMATIVE DEFENSE**

8  (Estoppel)

9  Mattel's counterclaims are barred in whole or in part by the equitable

10  doctrine of estoppel because, among other things, Mattel believed from the time

11  that Carter Bryant left Mattel's employ that he was going to perform work for a

12  Mattel competitor. Mattel began investigating Bryant and MGA Defendants,

13  including Bryant's role in the creation and development of Bratz, at least as early as

14  March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing

15  MGA Defendants to spend years developing their business and invest tens of

16  millions of dollars developing the Bratz products and building the Bratz brand.

17  **TENTH AFFIRMATIVE DEFENSE**

18  (Acquiescence)

19  Mattel's counterclaims are barred in whole or in part by acquiescence

20  because, among other things, Mattel believed from the time that Carter Bryant left

21  Mattel's employ that he was going to perform work for a Mattel competitor. Mattel

22  began investigating Bryant and MGA Defendants, including Bryant's role in the

23  creation and development of Bratz, at least as early as March 2002. Nonetheless,

24  Mattel waited years to bring suit, all the while allowing MGA Defendants to spend

25  years developing their business and invest tens of millions of dollars developing the

26  Bratz products and building the Bratz brand. Additionally, Mattel tolerated and

27  condoned conduct by other employees similar to the alleged conduct by Bryant and

28  others on which Mattel bases its claims.

- 23 -

PAGE

**EXHIBIT 29**
**PAGE 1043**

1      ## ELEVENTH AFFIRMATIVE DEFENSE

2      ### (Failure to Mitigate)

3      MGA Defendants deny that Mattel suffered any damages, but even if it did,

4      Mattel failed to take reasonable steps to mitigate those purported damages.

5      ## TWELFTH AFFIRMATIVE DEFENSE

6      ### (No Statutory Damages or Attorneys' Fees)

7      Mattel is barred from recovering statutory damages and/or attorneys' fees

8      because it failed to register the copyrights that are purportedly at issue within the

9      time required by 17 U.S.C. § 412.

10     ## THIRTEENTH AFFIRMATIVE DEFENSE

11     ### (Waiver)

12     Mattel's counterclaims are barred in whole or in part by waiver because,

13     among other things, Mattel believed from the time that Carter Bryant left Mattel's

14     employ that he was going to perform work for a Mattel competitor.  Mattel began

15     investigating Bryant and MGA Defendants, including Bryant's role in the creation

16     and development of Bratz, at least as early as March 2002.  Nonetheless, Mattel

17     waited years to bring suit, all the while allowing MGA Defendants to spend years

18     developing their business and invest tens of millions of dollars developing the Bratz

19     products and building the Bratz brand.

20     ## FOURTEENTH AFFIRMATIVE DEFENSE

21     ### (Abandonment)

22     Mattel has abandoned any interest it may have had in the alleged copyrighted

23     works.

24     ## FIFTEENTH AFFIRMATIVE DEFENSE

25     ### (*De Minimus* Use)

26     MGA Defendants deny that Mattel owns any copyright interest in the alleged

27     works, but even if Mattel could craft a claim that the Bratz dolls incorporate an

28

EXHIBIT 29
PAGE 1044

1  aspect of a Mattel copyrighted work, such use would be *de minimus* and non-
2  infringing.

### SIXTEENTH AFFIRMATIVE DEFENSE

#### (Joint Authorship)

5  MGA Defendants deny that Mattel owns any copyright interest in the alleged
6  works, but even if it did, any liability would be eliminated or greatly diminished by
7  the doctrine of joint authorship.

### SEVENTEENTH AFFIRMATIVE DEFENSE

#### (Competition Privilege/Justification)

10  Mattel's counterclaims are barred in whole or in part on the grounds that the
11  acts of the MGA Defendants were lawful competition or justified.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (Good Faith)

14  Mattel's counterclaims are barred in whole or in part because the MGA
15  Defendants acted in good faith.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Lack of Authority)

18  Mattel's counterclaims are barred in whole or in part on the grounds that to
19  the extent any person committed an unlawful or tortious act, the person lacked
20  authority to commit such act on behalf of the MGA Defendants.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Lack of Standing)

23  Mattel's counterclaims are barred in whole or in part by its lack of standing.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Joinder in Defenses of Co-Defendants)

26  MGA Defendants hereby adopt and incorporate by reference any and all
27  other affirmative defenses that have been or will be asserted by any other defendant
28  (including Bryant) in this litigation to the extent that defendants may share in such

LA2:841935.2

- 25 -

EXHIBIT 29
PAGE 1045

1    affirmative defenses.

2    <u>**TWENTY-SECOND AFFIRMATIVE DEFENSE**</u>

3    (Undiscovered Defenses)

4    MGA Defendants have insufficient knowledge or information upon which to

5    form a belief as to whether additional defenses are available.  MGA Defendants

6    reserve the right to assert any further or additional defenses upon receiving more

7    complete information regarding the matters alleged in the Counterclaims, through

8    discovery or otherwise.

9

10   WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK)

11   Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

12        a.    that the Counterclaims be dismissed with prejudice;

13        b.    that judgment be entered in favor of counter-defendants and against

14   counterclaimant;

15        c.    that counter-defendants recover their costs and attorneys' fees; and

16        d.    that the Court award such other and further relief as is just and proper.

17

18   Dated:  September 19, 2007          O'MELVENY & MYERS LLP

19

20

21                                       Marc F. Feinstein
                                         Attorneys for Counter-defendants
22                                       MGA Entertainment, Inc., Isaac Larian,
                                         MGA Entertainment (HK) Limited, and
23                                       MGAE de Mexico S.R.L. de C.V.

24

25

26

27

28

LA2:841935.2                     - 26 -

**EXHIBIT 29**
**PAGE 1046**

1

## PROOF OF SERVICE

2

I, Karen A. Nakatsu, declare:

3

I am a resident of the State of California and over the age of eighteen years, and
not a party to the within action; my business address is 400 South Hope Street, Los Angeles,
California 90071-2899.  On September 19, 2007, I served the within document(s):

4

5

**AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF**
**MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT**
**(HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V.**
**TO MATTEL, INC.'S SECOND AMENDED ANSWER AND**
**COUNTERCLAIMS**

6

7

8

☒     by causing to be personally served the document(s) listed above to the person(s)
listed below.

9

10

John B. Quinn, Esq.
Michael T. Zeller, Esq.
B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street,
10th Floor
Los Angeles, CA 90017

11

12

13

14

☒     by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in the United States mail at Los Angeles, California addressed as set
forth below.  I am readily familiar with the firm's practice of collecting and
processing correspondence for mailing.  Under that practice it would be deposited
with the U.S. Postal Service on that same day with postage thereon fully prepaid in
the ordinary course of business.  I am aware that on motion of the party served,
service is presumed invalid if the postal cancellation date or postage meter date is
more than one day after date of deposit for mailing in affidavit.

15

16

17

18

19

Patricia Glaser, Esq.
Christensen, Glaser, Fink, Jacobs,
Weil & Shapiro, LLP
10250 Constellation Blvd.,
19th Floor
Los Angeles, CA 90067

Michael H. Page, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

20

21

22

23

James W. Spertus, Esq.
Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

24

25

26

27

28

LA2:817525.2

**EXHIBIT 29**
**PAGE 1047**

1
2

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

3

Executed on September 19, 2007, at Los Angeles, California.

4
5

*Karen a. Nakatsu*

Karen A. Nakatsu

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LA2:817525.2

EXHIBIT _____

PAGE _____

**EXHIBIT 29
PAGE 1048**

EXHIBIT 30

1

1       UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3       EASTERN DIVISION

4       - - -

5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6       - - -

7    CARTER BRYANT, ET. AL.,            )
                                        )      CERTIFIED
8                       PLAINTIFFS,     )      COPY
                                        )
9           VS.                         )   NO. ED CV 04-09049
                                        )   (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,             )
                                        )
11                      DEFENDANTS.     )   MOTIONS
                                        )
12   AND CONSOLIDATED ACTIONS,          )
                                        )

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                     RIVERSIDE, CALIFORNIA

17                  MONDAY, JANUARY 7, 2008

18                       10:11 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
                RIVERSIDE, CALIFORNIA  92501
25              951-274-0844
                CSR11457@SBCGLOBAL.NET        EXHIBIT

EXHIBIT 30
PAGE 1049

PAGE

JANUARY 7, 2008                    BRYANT VS. MATTEL

1   LONG TIME THAT THEY WILL HAVE WITH MY CLIENT, YOUR HONOR.

2          THE COURT:   THANK YOU, COUNSEL.

3          MS. ANDERSON:   THANK YOU.

4          THE COURT:   MR. NOLAN?

5          MR. NOLAN:   THANK YOU.                                    10:3

6          YOUR HONOR, I WOULD BE REMISS IF I DID NOT START OUT

7   BY SAYING THAT LAST EVENING, ONE OF THE LAST THINGS I READ IN

8   PREPARING FOR THE HEARING THIS MORNING WAS THE OCTOBER 31ST

9   TRANSCRIPT.  WHEN I WAS HERE, I WAS JUST KIND OF NEW TO THE

10  CASE AND SAYING WE NEEDED JUST A BRIEF STAY UNTIL JANUARY 15TH   10:3

11  FOR THE DEPOSITIONS.  AND MR. QUINN PROPERLY POINTED OUT THAT

12  WE'RE A BIG FIRM; ALL FIRMS KIND OF PARACHUTE IN; BASICALLY,

13  SUCK IT UP AND GET READY.

14         I HAVE TO TELL YOU, YOUR HONOR, THAT WE HAVE DONE

15  THAT, AND THE NOTION THAT THERE'S BEEN ANY DELAY, I THINK, IS   10:3

16  JUST BELIED BY THE ACTUAL FACTS.  IF I COULD JUST TELL YOU A

17  LITTLE BIT ABOUT WHAT WE'VE BEEN DOING TO GET THIS CASE READY,

18  AND THEN COME UP WITH A PROPOSAL FOR YOU WITH RESPECT TO THE

19  DISCOVERY REQUEST.

20         FROM THE BEGINNING OF TIME IN THIS CASE -- AND QUINN    10:3

21  HAS BEEN THERE FOREVER -- THERE'S BEEN 4,600 REQUESTS FOR

22  ADMISSIONS; 2,865 REQUESTS FOR PRODUCTION; 131 30(B)(6) TOPICS;

23  50-PLUS THIRD-PARTY SUBPOENAS; 63 INTERROGATORIES.  WE'VE

24  PRODUCED, MGA HAS PRODUCED, YOUR HONOR, ABOUT 3.8 MILLION.

25         INTERESTINGLY, QUINN EMANUEL, WHO'S BEEN IN THIS CASE   10:3

EXHIBIT _____

**EXHIBIT 30**
**PAGE 1050**

PAGE ___

JANUARY 7, 2008                    BRYANT VS. MATTEL

19

1    FOR FOUR YEARS, JUST RECENTLY, ON JANUARY 2ND AND JANUARY 4TH,

2    DOUBLED THEIR PRODUCTION, DROPPED ON US ABOUT A HALF MILLION

3    PAGES OF DOCUMENTS, WITHOUT ANY EXPLANATION AS TO WHY THESE

4    DOCUMENTS WERE NOT PRODUCED. WE'RE STILL GOING THROUGH THEM.

5         SINCE WE'VE COME INTO THE CASE, SINCE SKADDEN CAME          10:3:

6    INTO THE CASE AND MR. QUINN DID NOT WANT TO GIVE THE RELIEF

7    THAT WE REQUESTED, WE WENT TO THE MAT, AS DID MGA, AT ENORMOUS

8    EXPENSE. WE BROUGHT IN ALMOST 50 LAWYERS TO DEAL WITH

9    OUTSTANDING ISSUES. WE'VE ANSWERED 2,584 REQUESTS FOR

10   ADMISSIONS; WE'VE ANSWERED 101 INTERROGATORIES; WE'VE PRODUCED   10:3:

11   1.6 MILLION PAGES IN DOCUMENTS. WE HAD TO FILE 17 OPPOSITION

12   BRIEFS TO MATTEL.

13        IF THERE'S ANY NOTION HERE, YOUR HONOR, THAT WE

14   DISAGREE WITH POSITIONS IN DISCOVERY, WITH ALL DUE RESPECT,

15   MATTEL HAS WRITTEN THE BOOK ON THIS.                             10:3

16        **THE COURT:** THAT'S WHY, MR. NOLAN, I WAS VERY CAREFUL

17   IN MY INITIAL REMARKS THAT I AM NOT SUGGESTING ANY FAULT

18   WHATSOEVER IN YOUR PRODUCTION PATTERN SINCE COMING INTO THE

19   CASE. I'VE READ WHAT YOU'VE PRODUCED, AND I HAVE A SENSE THAT

20   YOU AND YOUR FIRM HAVE WORKED AS HARD AS HUMANLY POSSIBLE TO DO  10:3

21   WHAT YOU CAN.

22        I GUESS MY TENTATIVE STEMS MORE FROM WHAT I PERCEIVE

23   AS THE GOOD CAUSE SHOWN FOR SOME ADDITIONAL DISCOVERY IN LIGHT

24   OF WHAT IS BEING PRODUCED, AND THE DELAY IN THE SENSE THAT IT'S

25   BEING PRODUCED NOW AS OPPOSED TO EARLIER. AND I'M NOT            10:3

EXHIBIT

**EXHIBIT 30**
**PAGE 1051**

JANUARY 7, 2008                          PAGE
                              BRYANT VS. MATTEL

36

1   GIVEN DURING THE HEARING ABOUT WHO WAS SUPPOSED TO DO IT AND

2   WHAT WAS SUPPOSED TO BE IN IT.

3            WE WERE NOT TRYING TO BE DIFFICULT.

4            YOUR HONOR, FRANKLY, IN THIS LITIGATION, WHICH IS

5   SCORCHED EARTH LITIGATION IF I'VE EVER SEEN IT, WE'VE SPENT, MY   10:5

6   CLIENT AND MYSELF AND MY FIRM, A LOT OF TIME DEFENDING

7   OURSELVES AGAINST WHAT WE VIEW TO BE INCESSANT ACTIVITIES BY

8   MATTEL TO SORT OF MAKE WORK, FILE BRIEFS, DO THINGS FOR

9   SITUATIONS WHERE WE DO NOT BELIEVE IT IS APPROPRIATE, AND WE

10  THINK IT IS HARASSING.  AND THIS APPEARED TO US TO BE YET   10:5

11  ANOTHER SITUATION WHERE WE WERE BEING DRIVEN TO DO THE SAME

12  THING OVER AND OVER AGAIN.

13           THAT IS SORT OF THE CONTEXT OF THE SITUATION WE'VE

14  BEEN DEALING WITH, YOUR HONOR.

15           **THE COURT:**  THANK YOU, COUNSEL.   10:5

16           MR. OVERLAND, DO YOU WISH TO SPEAK ON BEHALF OF

17  MR. MACHADO GOMEZ?

18           **MR. OVERLAND:**  YES, YOUR HONOR.

19           DOES THE COURT WISH ME TO JUST ADDRESS THE CONTENTS

20  OF THE DECLARATION?   10:5

21           **THE COURT:**  YOU MAY ADDRESS THE COURT'S TENTATIVE ON

22  THIS, AND THAT'S TO MAKE IT CLEAR TO THE PARTIES THAT ALL

23  PARTIES NEED TO SUBMIT THE AFFIDAVIT.  BUT PARTICULARLY WITH

24  RESPECT TO THE DECLARATION THAT HAS BEEN SUBMITTED ON BEHALF OF

25  YOUR CLIENT, I DON'T THINK IT FULLY CAPTURES WHAT THE COURT HAS   10:5

**EXHIBIT 30**
**PAGE 1052**

59

1                           CERTIFICATE

2

3    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

6

7    _____          1-16-08
     THERESA A. LANZA, CSR, RPR                _____
8    FEDERAL OFFICIAL COURT REPORTER              DATE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                          EXHIBIT
                                            PAGE          **EXHIBIT 30**
                                                         **PAGE 1053**

        JANUARY 7, 2008                BRYANT VS. MATTEL

EXHIBIT 31

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                 - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7    CARTER BRYANT,                    )
                                       )
8                    PLAINTIFF,        )
                                       )
9         VS.                          )    NO. ED CV 04-09049
                                       )    (LEAD LOW NUMBER)
10   MATTEL, INC.,                     )
                                       )
11                   DEFENDANTS.       )    STATUS/SCHEDULING
     _____)         CONFERENCE
12   AND RELATED ACTIONS,             )
     _____)
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17            MONDAY, FEBRUARY 12, 2007

18                 1:49 P.M.

19                              **CERTIFIED**

20                              **COPY**

21

22

23           THERESA A. LANZA, RPR, CSR
          FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
          RIVERSIDE, CALIFORNIA  92501
25              (951) 274-0844
            CSR11457@SBCGLOBAL.NET

12

1          BUT THE IMPORTANT POINT IS, THAT I WOULD HOPE THE

2     COURT WOULD APPRECIATE, IS THAT NOTWITHSTANDING THE AMOUNT OF

3     TIME THAT'S GONE BY SINCE THIS CASE WAS FILED, DISCOVERY IS

4     NOWHERE NEAR AS FAR ALONG AS ONE MIGHT EXPECT.  IN PART, IT'S

5     BECAUSE OF THE STAY.  BUT IT'S, IN PART, BECAUSE OF JUST THE          02:03

6     INABILITY TO GET ANYWHERE.  AND I DO THINK THAT'S GOING TO

7     CHANGE NOW.

8          WE HAVE NO INTEREST IN TAKING DISCOVERY GRATUITOUSLY

9     OR JUST TO TAKE DISCOVERY, BUT THERE ARE A LOT OF DIFFERENT

10    SUBJECTS THAT NEED TO BE COVERED AND WE'RE STILL AT A PRETTY          02:04

11    EARLY STAGE IN THAT REGARD.

12          THE COURT:  LET ME HEAR FROM MS. TORRES FROM MGA.

13          MS. TORRES:  THANK YOU, YOUR HONOR.

14          AT A CERTAIN POINT, THE LITIGATION DOES HAVE TO GO

15    FORWARD.  AND I WILL SUBMIT TO YOU THAT MATTEL NEVER REALLY          02:04

16    SOUGHT TO MAKE IT GO FORWARD UNTIL JANUARY WHEN THIS COURT SAID

17    'I WANT A SCHEDULE.'

18          MR. QUINN JUST WENT THROUGH A LAUNDRY LIST OF

19    HORRIBLES ABOUT WHAT TYPE OF DISCOVERY-OBSTRUCTIONIST TACTICS

20    WE'VE ENGAGED IN, AND THE FACT OF THE MATTER IS HIS INFORMATION      02:04

21    IS INCOMPLETE, SUFFICE IT TO SAY; THINGS LIKE THE MOTION TO

22    COMPEL CARTER BRYANT FOR DEPOSITION.

23          YES, THEY MOVED TO COMPEL CARTER BRYANT FOR

24    DEPOSITION, AND THEY WERE ABLE TO COMPEL HIM.  BUT NOT UNTIL

25    AFTER WE GOT A PROTECTIVE ORDER REQUIRING THEM TO PRODUCE            02:05

EXHIBIT ___

PAGE ___

13

1  DOCUMENTS.

2      THERE HAS BEEN A DELAY FOR A START-UP TIME IN GETTING

3  DISCOVERY GOING, BUT FRANKLY IT HAS BEEN MORE BECAUSE WHAT THEY

4  WANT IN DISCOVERY IS SCORCHED-EARTH DISCOVERY TO BE ABLE TO

5  FIND THEIR THEORIES.                                          02:05

6      THE COURT:  THE COURT HAS TAKEN A LOOK, A GANDER, A

7  PERUSAL, OF SOME OF THE DOCUMENTS THAT HAVE BEEN GOING UP TO

8  JUDGE INFANTE.  ADMITTEDLY, I HAVE BEEN CONCERNED AT SOME OF

9  THE THINGS THAT I HAVE OBSERVED THE FIGHT GOING ON OVER.  AND

10  JUST SINCE YOU'RE THE ONE THAT HAS THE LECTERN RIGHT NOW, A     02:05

11  RECENT EXAMPLE, THE COURT SAW THAT THERE WERE DRAWINGS THAT

12  MR. BRYANT DID OF BRATZ DOLLS THAT WERE NOT TURNED OVER, AND

13  SOME OF THIS STUFF JUST SEEMS LIKE IT WOULD BE PRETTY OBVIOUS

14  THAT THIS WOULD BE THE TYPE OF THING THAT WOULD BE RELEVANT

15  THAT WOULD HAVE TO BE TURNED OVER UP FRONT.                    02:06

16      MS. TORRES:  THE ISSUE OF THE BRATZ DRAWINGS IS

17  WHETHER OR NOT THEY WERE FIRST-GENERATION BRATZ OR SUBSEQUENT-

18  GENERATION BRATZ.  AND WHEN THE CASE WAS SIMPLY THE MATTEL V.

19  BRYANT CASE, WE -- AND EARLY IN THIS CASE IT WAS MR. BRYANT,

20  BUT ALSO MGA -- AGREED TO PRODUCE FIRST-GENERATION BRATZ       02:06

21  DOCUMENTS, AND WE DID.

22      WHAT THEY MOVED TO COMPEL ON WERE POST-FIRST-

23  GENERATION BRATZ DOCUMENTS, AND THE REASON JUDGE INFANTE

24  GRANTED THAT WAS BECAUSE NOW SUBSEQUENT-GENERATION BRATZ ARE AT

25  ISSUE.  BUT THEY WEREN'T AT ISSUE IN THE ORIGINAL CASE THAT WAS  02:06

2-12-07

CV 04-09049T

PAGE

EXHIBIT 31
PAGE 1056

14

1    FILED, MATTEL VERSUS CARTER BRYANT.

2             THE COURT:  THE INITIAL CASE.

3             MS. TORRES:  YES.

4             THEREFORE, NOW THAT THERE IS MORE IN THE CASE, THOSE

5    DOCUMENTS ARE RELEVANT AND THEY ARE BEING PRODUCED.                    02:07

6             THAT IS A NEW DEVELOPMENT THAT THEY HAD AGREED IN

7    FRONT OF JUDGE BLOCK, AND WE HAVE A TRANSCRIPT OF IT, THAT WE

8    ONLY NEEDED TO PRODUCE FIRST GENERATION.  AND IN DECEMBER THEY

9    RAISED THE ISSUE OF ALL BRATZ DRAWINGS.  SO WHEN THEY SAY THAT

10   CRITICAL BRATZ DRAWINGS HAVE NOT BEEN PRODUCED, IT'S MISLEADING        02:07

11   BECAUSE THEY MAY BE RELEVANT TO THE SECOND ROUND OF CLAIMS BUT

12   THEY WEREN'T RELEVANT TO THE MATTEL V. BRYANT CASE.  AND

13   DISCOVERY IN THE SECOND ROUND OF CASES OR CLAIMS DID NOT START

14   UNTIL DECEMBER.

15            THE COURT:  ALL RIGHT.  THAT WAS JUST ONE THAT KIND           02:07

16   OF STRUCK ME AS -- AND LIKE I SAY, I DIDN'T THOROUGHLY REVIEW

17   THESE PLEADINGS IN DETAIL.  I JUST KIND OF WANTED TO GET A

18   SENSE OF WHAT I WAS SIGNING THE UNDER-SEAL ORDER ON, AND I JUST

19   REVIEWED THEM TO GET A GENERAL SENSE OF THAT.

20            MS. TORRES:  YES.  AND WE HAVE NOT BEEN FILING -- MGA         02:08

21   AND CARTER BRYANT HAVEN'T BEEN FILING THEIR MOTIONS TO COMPEL

22   WITH THIS COURT BECAUSE WE THOUGHT THAT WAS IMPROPER.  AND

23   RECENTLY JUDGE INFANTE AGREED THAT THE MOTIONS TO COMPEL SHOULD

24   NOT BE FILED WITH THIS COURT.

25            THE COURT:  WELL, THE MOTIONS DON'T NEED TO BE FILED          02:08

EXHIBIT 31
PAGE 1057

25

1   AND THE RESOURCES THAT QUINN EMANUEL AND O'MELVENY & MYERS AND

2   LITTLER ARE ALL DEVOTING TO THIS, THESE DATES ARE PRETTY FIRM;

3   SO PLAN ACCORDINGLY.

4           MR. JACOBY:   THANK YOU, YOUR HONOR.

5           MR. QUINN:   THANK YOU, YOUR HONOR.                    02:23

6           THE COURT:   ALL RIGHT.   GOOD LUCK.

7

8

9

10

11

12

13

14

15

16

17                        CERTIFICATE

18

19   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

22

23   _____          2-22-07
     THERESA A. LANZA, CSR, RPR                 DATE
24   FEDERAL OFFICIAL COURT REPORTER

25

2-12-07                 CV 04-09049

EXHIBIT 32

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 33

CONFORMED COPY

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       John B. Quinn (Bar No. 090378)
2      Michael T. Zeller (Bar No. 196417)
       Jon D. Corey (Bar No. 185066)
3   865 South Figueroa Street, 10th Floor
    Los Angeles, California  90017-2543
4   (213) 443-3000 (telephone)
    (213) 443-3100 (facsimile)
5
    Attorneys for Plaintiff and Counter-Defendant
6   Mattel, Inc.

7   LITTLER MENDELSON
       Robert F. Millman (Bar No. 062152)
8      Douglas A. Wickham (Bar No. 127268)
       Keith A. Jacoby (Bar No. 150233)
9   2049 Century Park East, 5th Floor
    Los Angeles, California 90067-3107
10  (310) 553-0308 (telephone)
    (310) 553-5583 (facsimile)
11
    Attorneys for Defendant and Counter-Claimant
12  Carter Bryant

13  O'MELVENY & MYERS, LLP
       Diana M. Torres (Bar No. 162284)
14     Paula E. Ambrosini (Bar No. 193126)
       Alicia C. Meyer (Bar No. 230189)
15  400 South Hope Street
    Los Angeles, California  90071-2899
16  (213) 430-6000 (telephone)
    (213) 430-6407 (facsimile)
17
    Attorneys for Defendant
18  MGA Entertainment Inc.

19
                   UNITED STATES DISTRICT COURT
20
                  CENTRAL DISTRICT OF CALIFORNIA
21

22  MATTEL, INC., a Delaware corporation,   )   CASE NO. CV 04-9059 NM (RNBx)

23              Plaintiff,                   )   **DISCOVERY MATTER**

24         v.                               )   JOINT STIPULATION RE:
                                                MATTEL, INC.'S MOTION TO
25  CARTER BRYANT, an individual, MGA       )   COMPEL INSPECTION OF
    ENTERTAINMENT INC., a California            ORIGINAL DOCUMENTS AND
26  corporation, and DOES 1 through 10,        TANGIBLE THINGS
    inclusive,
27                                              Hearing Date: March 15, 2005
                Defendants.                  )   Time: 9:30 a.m.
28
                                                Hon. Robert N. Block

EXHIBIT ___
PAGE ___

**EXHIBIT 33**
**PAGE 1088**

JOINT STIPULATION

| | | |
|---|---|---|
| 1 | CARTER BRYANT, on behalf of himself, ) | Discovery Cut-Off: None Set |
| | all present and former employees of ) | Pretrial Conference: None Set |
| 2 | Mattel, Inc., and the general public, ) | Trial: None Set |
| 3 | Counter-Claimant, ) | |
| 4 | v. ) | |
| 5 | MATTEL, INC., a Delaware corporation, ) | |
| 6 | Counter-Defendant. ) | |

EXHIBIT

PAGE

**EXHIBIT 33**
**PAGE 1089**                JOINT STIPULATION

# **TABLE OF CONTENTS**

**Page**

Mattel's Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Defendant and Counter-Claimant Carter Bryant's Introductory Statement . . . . . . 5

MGA's Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Issue No. 1   Should Bryant Be Compelled to Make Available for
Inspection the Originals of Documents That He Has
Produced? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Mattel's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

           Nature Of This Action  . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

           Bryant's Failures To Make Originals And Tangible Items
Available for Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

           The Court Should Order Bryant to Make The Original
Drawings,  Documents And Tangible Things Available For
Inspection  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B.    Bryant's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

           Mattel Has Had a More Than Reasonable Opportunity To
Inspect Bryant's Original Documents And Things  . . . . . . . . . . . . 20

           A Court Is Required To Place Reasonable Limitations On
The Inspection Of Documents  . . . . . . . . . . . . . . . . . . . . . . . . . 21

           Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Issue No. 2   Should MGA Be Compelled to Make Available for
Inspection the Originals of Documents That It Has
Produced? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    A.    Mattel's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    B.    MGA's Position  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        1.    MGA Has Agreed to Produce for Inspection Original
Artwork and Tangible Things  . . . . . . . . . . . . . . . . . . . . . . 28

        2.    The Purported Fax Testified To By Victoria O'Connor . . . . . 29

Issue No. 3   Should Defendants Be Sanctioned?  . . . . . . . . . . . . . . . . . . . . . . . 31

    A.    Mattel's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    B.    Bryant's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

EXHIBIT _____

C.   MGA's Position ......................................... 33

    1.    This Motion Was Completely Unnecessary, and Mattel Failed to Make an Honest, Good Faith Effort to Resolve the Issues Without Court Intervention .................. 34

    2.    Mattel Will Not Permit MGA to See the Declarations and Exhibits that Mattel Has Referenced in its Portion of the Joint Stipulation ................................. 35

EXHIBIT _____

PAGE _____

**EXHIBIT 33**
**PAGE 1091**

JOINT STIPULATION

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    Michael T. Zeller (Bar No. 196417)
    Jon D. Corey (Bar No. 185066)
3  865 South Figueroa Street, 10th Floor
  Los Angeles, California  90017-2543
4  (213) 443-3000 (telephone)
  (213) 443-3100 (facsimile)
5
  Attorneys for Plaintiff and Counter-Defendant
6  Mattel, Inc.

7  LITTLER MENDELSON
    Robert F. Millman (Bar No. 062152)
8    Douglas A. Wickham (Bar No. 127268)
    Keith A. Jacoby (Bar No. 150233)
9  2049 Century Park East, 5th Floor
  Los Angeles, California  90067-3107
10  (310) 553-0308 (telephone)
  (310) 553-5583 (facsimile)
11
  Attorneys for Defendant and Counter-Claimant
12  Carter Bryant

13  O'MELVENY & MYERS, LLP
    Diana M. Torres (Bar No. 162284)
14    Paula E. Ambrosini (Bar No. 193126)
    Alicia C. Meyer (Bar No. 230189)
15  400 South Hope Street
  Los Angeles, California  90071-2899
16  (213) 430-6000 (telephone)
  (213) 430-6407 (facsimile)
17
  Attorneys for Defendant
18  MGA Entertainment Inc.

19              UNITED STATES DISTRICT COURT

20             CENTRAL DISTRICT OF CALIFORNIA

21  MATTEL, INC., a Delaware corporation,  )  CASE NO. CV 04-9059 NM (RNBx)
22              Plaintiff,                 )  **DISCOVERY MATTER**
23        v.                               )  JOINT STIPULATION RE:
24                                         )  MATTEL, INC.'S MOTION TO
  CARTER BRYANT, an individual, MGA       )  COMPEL INSPECTION OF
25  ENTERTAINMENT INC., a California       )  ORIGINAL DOCUMENTS AND
  corporation, and DOES 1 through 10,     )  TANGIBLE THINGS
26  inclusive,                            )
                                          )  Hearing Date:  March 15, 2005
27              Defendants.                )  Time:  9:30 a.m.
                                          )
28                                         )  Hon. Robert N. Block

EXHIBIT _____          **EXHIBIT 33**
                          **PAGE 1092**
PAGE _____
                          JOINT STIPULATION

| | | |
|---|---|---|
| 1 | CARTER BRYANT, on behalf of himself, ) | Discovery Cut-Off: None Set |
| | all present and former employees of ) | Pretrial Conference: None Set |
| 2 | Mattel, Inc., and the general public, ) | Trial: None Set |
| 3 | Counter-Claimant, ) | |
| 4 | v. ) | |
| 5 | MATTEL, INC., a Delaware corporation, ) | |
| 6 | Counter-Defendant. ) | |
| 7 | | |

8    Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37,

9  Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel"), Defendant and Counter-

10  Claimant Carter Bryant ("Bryant") and Defendant MGA Entertainment Inc. ("MGA")

11  respectfully submit this Joint Stipulation on Mattel's Motion to Compel Inspection

12  of Original Documents And Tangible Things.

13

14                    **Mattel's Introduction**

15    This suit involves defendant Carter Bryant's aid and assistance to a Mattel

16  competitor, defendant MGA, during the time of his employment by Mattel as a

17  product designer.  Thus far, discovery has shown that Bryant assisted MGA on

18  projects, known as "Bratz" and "Angel," while he worked for Mattel.  What Bryant

19  did on these and any other projects with MGA, and when he did it, are central issues.

20    The bulk of Bryant's document production consists of undated (and

21  unorganized) design drawings pertaining to his work on MGA-related projects.  For

22  months now, Mattel has been seeking to inspect and photograph the originals of the

23  materials produced by defendants.  In fact, Mattel has been requesting that Bryant

24  make his originals available since October and has been requesting that MGA do so

25  since early December.  Both defendants agreed at various times to make their

26  originals available and promised dates for the inspections would be forthcoming.

27    Nevertheless, Mattel has been getting the run-around and still has not

28  been allowed to make a complete inspection. MGA has not made available any of the

1   originals of the drawings and other documents it has produced and, despite MGA's

2   promise that it would propose dates for the inspection, MGA has never provided even

3   those. As for Bryant, although he promised on more than one occasion beginning in

4   November 2004 that he would make all of his originals available, he has allowed

5   Mattel to inspect and photograph less than a third of the originals of the materials he

6   has produced. He has failed to make the majority of originals--including *any* of his

7   Bratz drawings--available for inspection and photographing. Bryant now refuses to

8   turn over many of his originals and, in any event, has not provided any dates for when

9   a complete inspection can be made as to any of his remaining originals.

10      Defendants agreed to make the originals available, and the Court should

11   enforce those promises. Even apart from defendants' agreements, Mattel is entitled

12   to inspect and photograph the originals of Bryant's and MGA's documents. The

13   express terms of <u>Federal Rule of Civil Procedure</u> 34 give Mattel a right to inspect

14   their originals. Indeed, the policies underlying <u>Federal Rule of Evidence</u> 1002 also

15   require defendants here to turn them over for inspection.

16      The circumstances of this case make defendants' failures especially unfair and

17   inappropriate. Not only do the originals provide information and details not

18   discernible from the copies, but there are serious questions about the genuineness and

19   authenticity of defendants' documents. First, there already is evidence that

20   defendants have spoliated original documents. One former MGA executive testified

21   that, at the direction of MGA's CEO, she altered Bryant's contract with MGA to

22   conceal a fax header which showed Bryant was working for Mattel at the time he

23   signed the contract. The document with this fax header has never been produced

24   (even as a copy), nor has MGA allowed Mattel to see the original of what it had

25   purported to produce earlier as a copy of the "original" faxed contract. Bryant also

26   has produced copies of documents that omit fax header information. This includes,

27   most notably, a fax of Bratz drawings dated April 10, 2000 that is missing

28   information regarding who transmitted it and is missing its surrounding pages. The

EXHIBIT _____

**EXHIBIT 33**
**PAGE 1094**

3   PAGE

JOINT STIPULATION

1  omissions are all the more troubling because this fax was sent during a time that
2  Bryant was working for Mattel and during a time that he claimed he was doing
3  nothing on the Bratz project.

4       Second, Bryant and MGA have engaged in the destructive testing of originals,
5  without providing advance notice to either the Court or to Mattel. Originals of a few
6  Bratz drawings that Mattel's counsel was shown at Bryant's deposition (but which
7  Mattel has never had the opportunity to photograph) had holes punched in them
8  where one or both defendants appear to have had destructive ink and paper analysis
9  performed. Needless to say, courts not only have condemned such destructive testing
10 without prior notice to the court or to the opposing party as an unfair practice, but
11 indeed have imposed evidentiary sanctions for it. Mattel is entitled to find out and
12 fully document, through an inspection, which originals defendants have altered,
13 including through testing.

14      Third, Bryant has allowed inspection of only some originals, but then failed to
15 allow Mattel to inspect the originals of many other drawings and other documents.
16 Before he ceased allowing Mattel access to additional originals, Mattel learned that
17 many of the black and white photocopies of undated drawings that Bryant had
18 produced were not even from original drawings. They instead are photocopies of
19 other photocopies of unknown origin. Bryant also claimed that during the limited
20 inspection that, as to some of these materials, he is suddenly unable to locate the
21 originals of documents that he had produced in this case.

22      Without a complete inspection, Mattel has no way of knowing what drawings
23 and other documents defendants even have originals of. Not only is Mattel entitled
24 to that information, but it is particularly important in this case because, as mentioned
25 above, timing is critical, including when drawings and other documents were created.
26 The chemical composition of certain types of inks and papers, and details such as
27 watermarks and other impressions found only on the originals of the documents, may
28 bear on when a document was created or when the various writings on them were

EXHIBIT _____

**EXHIBIT 33**
**PAGE 1095**

4  PAGE

JOINT STIPULATION

1  made. Mattel anticipates, as is its right, that it may seek to have experts examine the
2  documents to determine whether anything on the originals would reveal the true date
3  of their creation. But Mattel needs detailed information about the originals before it
4  can ascertain what, if any, kind of analysis would be appropriate (or even possible in
5  the aftermath of defendants' testing and handling of the documents)[1] and,
6  furthermore, to determine which of the originals are potentially appropriate
7  candidates for testing. Mattel cannot even begin this process, however, without being
8  able to inspect and photograph the originals.

9      Mattel therefore respectfully requests that the Court order defendants to
10  provide their original drawings, documents and items for inspection and
11  photographing.

12

13  **Defendant and Counter-Claimant Carter Bryant's Introductory Statement**

14      Mattel's attorneys have spent well in excess of three full days inspecting
15  original documents and things produced by Bryant. In addition, Mattel has had two
16  *more* days to examine documents - and question Bryant about them - at his deposition
17  in Springfield, Missouri. Mattel has inspected each and every tangible thing that
18  Bryant has produced in this litigation. Nevertheless, it has brought yet another
19  discovery motion, claiming that it has not had the opportunity to inspect the originals
20  of Bryant's production.

21      Bryant has gone to extreme measures to accommodate Mattel's inspection
22  requests. After his counsel had already left Los Angeles to travel to Springfield,
23  Missouri to attend Bryant's deposition on November 3, 2004, Mattel made an
24  eleventh-hour request, *for the first time,* that original documents be produced there.
25  Bryant was forced to incur the significant expense of hand-delivering the

26  ————————————————————————————————
27  [1] As discussed below, defendants' handling and destructive testing of the originals
   may well preclude any further effective testing from being performed. That can be
28  determined only from an inspection of the originals, which is another reason it should be
   ordered.

EXHIBIT 33
PAGE 1096

5 PAGE

1  irreplaceable documents to Missouri, on literally a few hours' notice, simply at
2  Mattel's whim.  Remarkably, although the parties had engaged in several months of
3  negotiation and motion practice before the deposition took place - notably because
4  of Mattel's own failure to produce documents - Mattel had never requested the
5  original documents until just before the start of the deposition.[2]

6      While Bryant has expended significant time and resources to comply with
7  Mattel's request for inspection, *Mattel has completely stonewalled in response to*
8  *Bryant's request to inspect Mattel's original documents*.  Despite Bryant's repeated
9  requests, <u>Mattel has not permitted him to inspect a single original document, even</u>
10 <u>after meeting and conferring with his counsel</u>.  In the face of its blanket refusal to
11 comply with its Rule 34 obligations, Mattel nevertheless asks this Court to compel
12 Bryant to *again* make his documents available for inspection, despite the burden and
13 expense already imposed on him by Mattel's repeated inspections.

14      While a party is entitled to inspect another party's relevant documents and
15 things during litigation, it does not have an unfettered right to disrupt, burden and
16 harass the opposing party by conducting repeated, unreasonably long inspections that
17 are intended primarily to consume undue time and drive up litigation costs.  Bryant
18 has cooperated fully in providing Mattel a reasonable opportunity to inspect the
19 documents and things he has produced.  Mattel has taken undue advantage of that
20 opportunity much like it has abused the discovery process in so many other respects
21 during this litigation - Mattel has attempted to use its rights under Rule 34 as a sword,
22 to consume undue time, wage an expensive war of attrition, and prevent Bryant from
23 defending the action and pursuing his legitimate cross-claims.  It has done this by
24 forcing Bryant to respond to its daily barrage of meaningless (and frequently false)
25 faxes and correspondence, and by failing to cooperate in discovery at every turn.
26 Mattel's intentional lackadaisical approach to carrying out its inspections is a

27

28  [2] <u>See</u> Declaration of Keith A. Jacoby ("Jacoby Decl."), filed concurrently herewith
    at Par. 5.

EXHIBIT 33
PAGE 1097

JOINT STIPULATION

1 | deliberate part of its broader scorched-earth strategy to outspend Bryant, and to bury
2 | him under so much paper that he can no longer effectively defend himself against
3 | Mattel's allegations.[3]

4 | Mattel's claims of spoliation are nothing more than mere speculation. There
5 | is no evidence that Bryant has conducted or intends to conduct any destructive testing
6 | of the original documents at issue, because no such testing has occurred or will take
7 | place.[4] Bryant has every interest in preserving all the documentary evidence in his
8 | possession, given that it refutes Mattel's claims *and* supports his counter-claims.
9 | There can therefore be no legitimate concern regarding their safekeeping. Mattel's
10 | claims here are yet another shell game to deflect attention from its own failures to
11 | maintain and/or produce hundreds of pages of emails that are either being improperly
12 | withheld or that have been intentionally and/or systematically destroyed.[5]

13 | As even Mattel acknowledges, Bryant has *agreed* to produce original
14 | documents and things contained in his document production for inspection.[6] More
15 | importantly, Bryant has actually made those originals available over the course of
16 | three full days - during which Mattel lawyers conducted their inspection - as well as

17
18
19
20
21

---

22 | [3] Jacoby Decl. at Par. 9.

23 | [4] Jacoby Decl. at Par. 11.

24 | [5] Typical of Mattel's obfuscation is an extended, nonsensical discussion in its portion
25 | of the Joint Stipulation regarding the redaction of a fax header by witness Victoria O'Connor. Ms. O'Connor testified that she redacted that information on a document
26 | received by MGA from Bryant while he worked at Mattel. What Mattel fails to do is demonstrate what, if anything, this has to do with its request to inspect original documents.
27 | Given O'Connor's testimony, Mattel's inspection of the original document will not reveal
28 | any additional information beyond that found on the copy produced.

[6] Jacoby Decl. at Par. 2.

EXHIBIT
7 PAGE

**EXHIBIT 33**
**PAGE 1098**
JOINT STIPULATION

1  two additional days of deposition.[7] Bryant has also made available all tangible things
2  he has produced for inspection, and Mattel has inspected them.[8]

3      Bryant submits that Mattel has had a full opportunity to inspect his original
4  documents and things, and he should not be forced to bear the brunt of Mattel's
5  failure to effectively use its time. In the alternative, should this Court be inclined to
6  permit a further inspection by Mattel, it should be specifically delimited in time and
7  scope. Moreover, because the original documents Mattel requested during Bryant's
8  deposition are now located in Missouri, Mattel should be required to pay any
9  necessary costs in transporting those materials again, or be required to fly to Missouri
10 to inspect them and pay Bryant's counsel's expenses in conjunction with any such
11 trip. Finally, because of Mattel's dereliction in failing to permit Bryant to inspect its
12 original documents, no inspection should take place unless Mattel is simultaneously
13 ordered to comply with *its* Rule 34 obligations.

14
15                              **MGA's Introduction**

16     Mattel has, once again, managed to create a "dispute" where there is none for
17 the apparent purposes of driving up the costs of this litigation, distracting MGA's
18 attention from the defense of this case, and inflaming the Court against MGA. Mattel
19 itself acknowledges that *MGA has agreed to make available for inspection, on a*
20 *mutually convenient date, any original artwork and tangible things in its*
21 *possession and produced in this matter*. (Ex. D to Declaration of Paula E.
22 Ambrosini ("Ambrosini Decl.") at 17:10-12; Ex. A at 2 to Ambrosini Decl.) In
23 addition to this, MGA has also agreed that it will provide for inspection all original

24
25     [7] Mattel's factual statement is misleading as well. While Mattel's first request to
   inspect originals was made in October, a large number of documents that Mattel now seeks
26 to inspect were produced by Bryant *subsequent to that request.* In fact, Bryant produced
   approximately one-third of the documents at issue *after* Mattel's first suggestion that it
27 sought to inspect originals. For Mattel to claim, as it does, that it has been seeking to inspect
   all of the more than 1500 pages of documents produced by Bryant since October is just false.
28
   [8] Jacoby Decl. at Par. 2.                    EXHIBIT ___

                                                                    **EXHIBIT 33**
                                         8  PAGE                     **PAGE 1099**
                                                                    JOINT STIPULATION

1  invoices. (Ex. C at 2 to Ambrosini Decl.). In fact, MGA has made clear to Mattel's
2  counsel on several occasions that MGA is in the process of locating the original
3  artwork and tangible things that Mattel asked to inspect and assembling them for
4  Mattel's inspection. (Exs. A & C to Ambrosini Decl.)

5      Nonetheless, despite MGA's demonstrated cooperation on this issue in agreeing
6  to locate and allow Mattel to inspect all of the documents that it understood Mattel
7  wanted, Mattel, true to form, again conjured up a supposed dispute as an excuse to
8  bring a motion. A week after MGA agreed, in writing, to Mattel's request to inspect
9  originals, Mattel's counsel nonetheless complained, on January 17, 2005, that MGA's
10 agreement was still inadequate, but failed to explain why. (Ex. B to Ambrosini Decl.)
11 The only "originals" that MGA had not agreed to make available were electronic
12 records, for which a request to inspect originals made no logical sense.  MGA
13 wondered, therefore, whether Mattel might be expecting MGA to identify and locate
14 the original artwork and tangibles that are pictured in some of the email attachments
15 that MGA produced. MGA had never understood Mattel to be asking for this because
16 MGA's production was not made directly from the original artwork or goods, but
17 rather from the electronic records themselves.

18     If Mattel expected MGA to search for and identify the original source material
19 from which the electronic records were originally made many years ago, it was
20 important for MGA to understand that because the burden placed on MGA to do so
21 would be immense – if, indeed, it is even possible for MGA to identify and locate the
22 original source material for the email attachments at all. MGA asked Mattel,
23 accordingly to clarify precisely what Mattel wanted, so there could be no question of
24 MGA's compliance, and so that Mattel could not use its own vague demands to later
25 accuse MGA of providing an incomplete inspection. (Ex. C to Ambrosini Decl.) In
26 an effort to speed the process along, MGA made clear to Mattel that the sooner Mattel
27 provided this necessary clarification, the sooner MGA would be able to undertake
28 such efforts and make the requested documents and tangibles available for inspection.

1    (*Id.*) ***Mattel ignored MGA's request, and MGA received no clarification of Mattel's***
2    ***request.*** Instead, MGA received this Joint Stipulation.

3    Apparently, no matter what MGA does, and no matter how reasonable it tries
4    to be, Mattel is determined to place MGA in a no win situation and involve this Court
5    at every opportunity. Astonishingly, even with this Joint Stipulation, Mattel still fails
6    to clarify exactly what it wants to inspect – other than what MGA has already agreed
7    to make available. There is certainly nothing additional identified in the text of its
8    stated position, and if any such information is contained in its declarations, Mattel
9    failed to provide such declarations to MGA. (Ambrosini Decl. ¶¶ 6-7 & Ex. D
10   thereto.) ***Indeed, Mattel routinely makes a habit of serving Joint Stipulations***
11   ***without the accompanying declarations, without the accompanying exhibits, and***
12   ***with all of the citations left blank, unfairly requiring MGA to respond based on***
13   ***incomplete information.***

14   Nonetheless, Mattel is not short on rhetoric when it comes to accusing MGA
15   of "spoliating" evidence by supposedly redacting a fax header. Indeed, parading this
16   accusation past the Court appears to be one of Mattel's primary motives for bringing
17   this wholly unnecessary motion. As MGA has told Mattel over and over again,
18   however, MGA has searched high and low for this supposedly redacted document,
19   and even had a number of others outside of MGA search for the same thing, but has
20   never located such a document.

21   Mattel has brought this motion in bad faith without any legitimate reason. The
22   motion should be denied, accordingly, and sanctions awarded in favor of MGA in the
23   amount of $5000.

24
25
26
27
28

EXHIBIT _____

10   PAGE _____

**EXHIBIT 33**
**PAGE 1101**

JOINT STIPULATION

### Issue No. 1

Should Bryant Be Compelled to Make Available for

Inspection the Originals of Documents That He Has Produced?

Set forth below are (A) Mattel's position and (B) Bryant's position with respect to Issue No. 1.

### A.   Mattel's Position

### Nature Of This Action

Defendant Carter Bryant is a former Mattel employee. He worked as a Mattel product designer from September 1995 to April 1998, and then again from January 1999 to October 2000.[9] Upon starting his second term of employment with Mattel, Bryant executed an Employee Confidential Information and Inventions Agreement.[10] There, he agreed that during his Mattel employment he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." Bryant also assigned to Mattel, to the fullest extent of the law, all rights in "inventions," including "designs," that he created during his Mattel employment. In his agreement, Bryant further promised not to disclose or misuse Mattel's proprietary or confidential information, which is an obligation that continues to this day.

In November 2003, Mattel obtained a copy of a contract between Bryant and MGA, a Mattel competitor.[11] That contract--which was entered into while Bryant was employed by Mattel--required Bryant to provide design services to MGA on a "top priority" basis, in conflict with his then-existing duties to Mattel. It also

---

[9] See Declaration of Jon D. Corey ("Corey Dec."), Exh. 1 (Complaint at ¶ 9) & Exh. 3 (Cross-Complaint at ¶ 7).

[10] Exhibit A to the Complaint (Corey Dec., ¶ 2 and Exh. 1).

[11] Corey Dec., ¶ 3 and Exh. 2.

11

**EXHIBIT 33**
**PAGE 1102**

1   purported to grant MGA ownership of works made by Bryant, both before and after

2   the agreement's effective date, in further contravention of his obligations to Mattel.

3        Mattel filed this suit against Bryant for breach of contract, breach of

4   fiduciary duty, breach of the duty of loyalty, unjust enrichment and conversion.

5   MGA subsequently intervened and is now a party-defendant in this action.[12]

6   <u>**Bryant's Failures To Make Originals And Tangible Items Available**</u>

7   <u>**for Inspection**</u>

8        Discovery has shown so far that Bryant worked on at least two projects

9   with MGA while he was employed by Mattel. One was the "Bratz" project.[13] The

10  other was an ostensibly separate project known as "Angel".[14] In this case, the timing

11  of Bryant's actions are important to many of Mattel's claims. Indeed, Bryant and

12  MGA have put timing at issue by claiming that Bryant created most or all of his

13  drawings, and performed other relevant work, either during the few months in 1998

14  when he was not working for Mattel or else after the time he had left Mattel.[15]

15       Much of the documentary evidence produced by Bryant consists of

16  undated design drawings, which Bryant has produced to Mattel as black and white

17  photocopies.[16] Moreover, information that one would naturally expect--such as

18  complete fax headers, date and time stamps and fax cover pages--are missing from

19  his production.[17]

20       Mattel has been requesting for over three months now that it be allowed

21  to make a complete inspection of the originals of the documents that Bryant has

22  produced in this case, but Bryant has not permitted Mattel to do so. More

23

24   [12] <u>Id.</u>, Exh. 4.

25   [13] <u>Id.</u>, Exh. 5 (at 178:3-22).

26   [14] <u>Id.</u>, Exh. 5 (at 178:3-18, 195:21-196:20).

27   [15] <u>E.g.</u>, <u>id.</u>, ¶ 7 and Exhs. 3 and 5 (at 45:7-14, 139:23-141:8).

28   [16] <u>Id.</u>, ¶¶ 8-9 and Exh. 6.

    [17] <u>Id.</u>, ¶¶ 9-10 and Exhs. 7-8.

EXHIBIT

PAGE

**EXHIBIT 33**
**PAGE 1103**

JOINT STIPULATION

1  specifically, Mattel made its first request for inspection on October 25, 2004.[18]
2  Bryant responded that Mattel could make the inspection on November 1, 2004.[19]
3  Mattel asked Bryant to confirm that the inspection would include: "1) all of the non-
4  privileged responsive documents in Bryant's possession or control; 2) the additional
5  documents you agreed to allow us to inspect at the meeting of counsel; and 3) all of
6  the tangible items that Mattel requested."[20]  Before the inspection, Bryant's counsel
7  unilaterally limited Mattel's inspection to only the tangible things produced by Bryant
8  up to that point.[21]  Then, at the inspection on November 1, 2004, Bryant's counsel
9  provided only a few tangible items for Mattel's inspection, but provided none of the
10 originals of the drawings and other documents that Bryant had produced.[22]

11           Mattel again asked that all of the originals be made available for
12 inspection, this time requesting that the originals be made available for inspection
13 during Bryant's deposition, which the Court had twice compelled.[23]  Bryant's counsel
14 stated that "we will have the originals sent to Missouri," where the deposition was
15 taking place.[24]  Despite this, and despite Mattel's further requests at that time for the
16 originals,[25] Bryant made only a few of the original drawings available to be used in
17 questioning.[26]  As shown by the deposition transcript, in response to Mattel's
18 additional inquiries, Bryant's counsel specifically represented that, as to Bryant's

---

19     [18] Corey Dec., ¶ 11 and Exh. 9 (letter from K. Garey to K. Jacoby dated October 27,
20 2004).

21     [19] Id., ¶ 12 and Exh. 10 (letter from K. Jacoby to J. Corey dated October 28, 2004).

       [20] Id., ¶ 13 and Exh. 11 (letter from K. Garey to K. Jacoby dated October 28, 2004).
22
       [21] Declaration of Tania Krebs, dated February 9, 2005 and filed concurrently
23 herewith ("Krebs Dec."), ¶ 2.

24     [22] Id.

       [23] Corey Dec., ¶ 14 and Exh. 12 (letter from J. Corey to K. Jacoby dated November
25 1, 2004).

26     [24] Id., Exh. 13 (e-mail from K. Jacoby to J. Corey dated November 11, 2004).

27     [25] Declaration of Michael T. Zeller, dated February 9, 2005 and filed concurrently
herewith ("Zeller Dec."), Exh. 1; see also Corey Dec., ¶ 16 & Exh. 5 (at 120:17-18).
28     [26] Id; Krebs Dec., ¶ 3.

EXHIBIT 33
PAGE 1104

JOINT STIPULATION

1  original documents and drawings, "we certainly will make them available for
2  inspection at a reasonable time upon reasonable notice."[27]

3         During the deposition, Mattel questioned Bryant about the condition of
4  the few original Bratz drawings that Bryant's counsel had brought. These originals
5  included Bratz drawings that had numerous "plugs" or holes in them, consistent with
6  the extraction of ink and paper samples for chemical analysis.[28] Bryant testified that
7  he was unaware of the origin of the plugs, but did confirm that they were not present
8  on the documents when he turned them over to defendants' counsel.[29]

9         Mattel also questioned Bryant about a one-page document of Bratz
10 drawings that had a fax header date of April 10, 2000.[30] Although the fax header
11 information on the page states that it was the third page of a fax transmission, neither
12 the first nor the second page of the transmission were produced, nor were any
13 subsequent pages or any cover sheet produced. Moreover, neither the name of the
14 sender nor the sender's telephone number appears in the header. Bryant stated that,
15 because his fax machine "wasn't set right," his fax machine did not indicate
16 information such as date and the sender's information.[31] When asked if his fax
17 machine's setting would also cause all pages to be numbered page three, he stated that
18 he didn't recall.[32]

19         After the deposition, Mattel made additional requests to see all of the
20 originals produced by Mr. Bryant, including on November 17, 2004 and eventually
21 by sending a letter on December 14, 2004 requesting a <u>Rule</u> 37-1 meet and confer on

22

23
_____

24  [27] <u>Id.</u>, Exh. 5 (at 120:17-18).

25  [28] <u>Id.</u>, Exh. 5 (at 459:19-460:15); Krebs Dec., ¶ 4.

    [29] Corey Dec., Exh. 5 (at 459:19-460:15).

26  [30] <u>Id.</u>, ¶ 10 and Exh. 7. The fax was produced by Bryant on August 12, 2004, as
27  Bates No. BRYANT 00167.

    [31] <u>Id.</u>, Exh. 5 (at 319:15-19).

28  [32] <u>Id.</u>, Exh. 5 (at 320:13-16).

EXHIBIT ___
PAGE ___

EXHIBIT 33
PAGE 1105

JOINT STIPULATION

1   the subject.[33]  Bryant's counsel then agreed, again, to make all original documents

2   available for inspection and photographing, and the inspection was scheduled to

3   begin on December 22, 2004.[34]   Mattel's counsel, with a videographer and

4   photographer, inspected originals on December 22 and on December 23.[35] Yet, at the

5   inspection, Bryant's counsel did not turn over a single original Bratz drawing or

6   sketch[36] and, indeed, did not turn over the majority of the originals of documents that

7   he has produced.[37] Equally troubling, Bryant's counsel claimed not to be able to turn

8   over or locate many of the originals, including the original Bratz drawings that Bryant

9   had brought to the deposition and that reflect defendants' destructive testing on the

10  originals.[38]  During the inspection on December 22 and 23, Bryant's counsel made

11  repeated promises that *all* original documents would be made available for inspection

12  "when found."[39]

13          Over the course of yet another month following the incomplete

14  inspection of documents that Bryant allowed, Mattel made further requests to inspect

15  the remaining original documents, including on January 24,[40] but to no avail.  Bryant

16

17      [33]  Corey Dec., ¶¶ 17 and 20 and Exhs. 14 and 18.

18      [34]  Krebs Dec., ¶ 5.

19      [35]  Id.; Declaration of Shane McKenzie, dated February 9, 2005 and filed concurrently herewith ("McKenzie Dec."), ¶ 2.

20      [36]  The documents for which only copies of Bratz drawings, and not originals, were
21  provided include: CB00957, 00958-976, 00977, 00978-983, 00984, 986-987, 00985, 00988-
    1016, 01018-01048, 01051, 01049-1050, 1052-1053, 01054-1094, 01095-1096, 01097-
22  1119. See McKenzie Dec., ¶¶ 2-4 & Exh. 1.

23      [37]  Id.  A complete listing of the original Bratz drawings, sketches and other
    documents that Bryant's counsel could not account for in any way, even as to their
24  whereabouts, are detailed in Exhibit 1 to the McKenzie Dec.

25      [38]  The original sketches and drawings that Bryant had at his deposition, but did not
26  produce for Mattel's inspection and photographing, include: CB00001-12; CB00175-182,
    184-192, 194-199, 201-213, 215-218, 220, 222-224, 226-227, 229-230, 232-246, 273-275,
27  CB01246-1247 and CB01243.  McKenzie Dec., ¶¶ 3-4 & Exh. 1.

28      [39]  McKenzie Dec., Exh. 1.

        [40]  Corey Dec., ¶ 18 and Exh. 15.

Exhibit

PAGE

**EXHIBIT 33**
**PAGE 1106**

15

1  has not provided any dates on which the inspection can be completed and, moreover,
2  is now refusing to allow the inspection of any originals that have been redacted.[41]
3  Thus, despite Bryant's earlier promises, and more than three months after Mattel
4  began asking for the inspection, Bryant still has failed to turn over for inspection and
5  photographing the majority of the originals in his production.[42] He also has failed to
6  allow the inspection and photographing of *any* of the originals of Bratz drawings in
7  his production.[43] Indeed, the only "originals" of Bratz drawings that Mattel has been
8  allowed to inspect and photograph were, in fact, photocopies.[44]

9            **The Court Should Order Bryant to Make The Original Drawings,**
10           **Documents And Tangible Things Available For Inspection.**

11           There are several reasons why Bryant should be ordered to make his
12  originals and tangible items available for Mattel's inspection and photographing.
13  First, he agreed to it multiple times, including on the record at the Bryant deposition
14  and at a December 15 meet and confer.  Despite the fact that Mattel has spent
15  considerable time and money in reliance on these promises--showing up with
16  attorneys, videographers and photographers on three occasions to inspect documents
17  and other tangible things--Bryant's counsel has not lived up to their agreements.
18  Therefore, this Court should compel Bryant to do so.

19           Second, the plain language of Rule 34 allows Mattel to inspect Bryant's
20  responsive documents. It specifically allows a party requesting documents "*to inspect*
21  and copy, any designated documents"--including "writings" and "*drawings*"--"or *to*
22  *inspect* and copy, test, or sample any tangible things which constitute or contain
23  matters within the scope of Rule 26(b) and which are in the possession, custody or
24  control of the party upon whom the request is served".  Fed. R. Civ. P. 34(a)

---

25  [41] Corey Dec., ¶¶ 18-19. Notably, the multitude of redactions in Bryant's production
26  are not based on privilege. Id., ¶ 19 and Exh. 17.

27  [42] Id., ¶ 21.

28  [43] Id.; McKenzie Dec., ¶ 3 & Exh. 1.
    [44] McKenzie Dec., ¶ 3 & Exh. 1.

EXHIBIT _____

PAGE _____

**EXHIBIT 33**
**PAGE 1107**

16

1   (emphasis added.) This language means what it says. As one court has stated, <u>Rule</u>
2   34 confers "a right to inspect the originals. Possession of copies of documents does
3   not prevent discovery of actual documents so as to avoid possible challenges to the
4   genuineness of copies at the trial." <u>In re Kolinsky</u>, 140 B.R. 79, 87 (S.D.N.Y. 1992)
5   (citing 4 <u>Moore's Federal Practice</u>, § 26-184 (2d ed. 1991)); <u>see also</u> <u>Gielow v.</u>
6   <u>Warner Bros. Pictures</u>, 26 F. Supp. 425 (S.D.N.Y. 1938) (holding originals were
7   "evidence material to any matter involved" within <u>Rule</u> 34 providing for discovery
8   and granting motion to compel).

9          The reasons for this are apparent:  originals often reveal significant
10  information not obtainable from copies. As McCormick has stated, "[i]t has long
11  been observed that the opportunity to inspect original writings may be of substantial
12  importance in the detection of fraud," and "[m]any indicia of putative fraud such as
13  watermarks, types of paper and inks, etc., will not be discernable on the copy."
14  McCormick, <u>Evidence</u> §§  231, 236 (4th ed. 1992). Indeed, the policies seeking to
15  prevent inaccuracy and fraud with respect to documents are what animate <u>Federal</u>
16  <u>Rule of Evidence</u> 1002, which independently requires defendants to produce their
17  originals here. "[W]ritings exhibit a fineness of detail . . . which will often be of
18  critical importance. Prevention of loss of this fine detail through mistransmission is
19  a basic objective of the rule requiring production of documentary originals."
20  McCormick, <u>supra</u>, § 232; <u>see also</u> <u>United States v. Yamin</u>, 868 F.2d 130, 134 (5th
21  Cir. 1989) (explaining purpose of rule requiring production of originals is "to prevent
22  inaccuracy and fraud when attempting to prove the contents of a writing.").

23         Allowing Mattel equal access to the information shown by the originals--
24  which defendants obviously have access to--is particularly appropriate in this case.
25  This case involves numerous drawings, and the ones that Mattel has seen (but not
26  been able to photograph) were created using different kinds and colors of pencils,
27
28

EXHIBIT ___

PAGE ___          **EXHIBIT 33**
                  **PAGE 1108**

17

JOINT STIPULATION

1   inks and markers.[45]  They also have what appears to be different handwriting from
2   different sources made at different times on them, which is a point Bryant confirmed
3   in deposition.[46]  Another witness, a third-party, testified that certain annotations on
4   the copy of a Bryant drawing as produced by defendants here did not appear on the
5   original drawing that Bryant had previously shown to her.[47]  The timing of the
6   creation of these documents and of the various additional matter on them can be
7   critical, as noted above.  Mattel is entitled to know which originals defendants have
8   and is entitled to know the information that is evident only from originals, such as the
9   existence of watermarks or impressions and the use of different inks on particular
10  documents.  Without inspecting and photographing the originals of these drawings,
11  it will be effectively impossible for Mattel to fully understand the evidence and to test
12  any claims that the drawings are authentic.

13          Third, and independently, Mattel is entitled to inspect and photograph
14  the originals because there is evidence of both spoliation and destructive testing by
15  defendants to the originals.  Sedrati v. Allstate Life Insurance Co., 185 F.R.D. 388
16  (M.D. Ga. 1998), illustrates why.  There, defendant's expert had engaged in
17  destructive testing on original documents, without actual, prior notice to the Court or
18  to the other side.  Id. at 391.  Even though the Court found that the destructive testing
19  was not done in bad faith, it ordered the exclusion of defendant's evidence because
20  of defendant's conduct: "Our rules of evidence and procedure, as well as our system
21  of justice generally, demand fairness to all concerned parties throughout the process
22  of discovery.  The Court finds that Defendant's conduct with respect to the handling
23  and testing the subject documents falls far short of that standard."

24          Mattel is entitled to know which originals have been altered, including
25  through testing, and to document defendants' unauthorized actions through inspecting

26

27      [45] E.g., Krebs Dec., ¶ 4.
28      [46] E.g., id.; Corey Dec., Exhs. 5 and 6.
        [47] Corey Dec., Exh. 23.

18

EXHIBIT 33
PAGE 1109

1   and photographing them. Not only is Mattel entitled to do so in connection with any

2   potential motion regarding appropriate remedies for defendants' conduct, but without

3   an inspection Mattel has no way of knowing what drawings and other documents

4   defendants even have originals of and cannot ascertain whether additional testing can

5   potentially be performed.  The chemical composition of certain types of inks and

6   papers, and details such as watermarks and other impressions found only on the

7   originals of the documents, may bear on when a document was created and on when

8   the various writings on them were made.[48]  As noted above, Mattel anticipates that

9   it may seek to have experts examine the documents to determine whether anything

10  on the originals would reveal the true date of their creation.  Such information is

11  relevant in this case because it may either confirm or contradict Bryant's testimony

12  about when he was doing the work on Bratz and/or Angel that he says he did.  But

13  Mattel needs detailed information about the originals before it can ascertain what, if

14  any, type of analysis would be appropriate and furthermore to determine which of the

15  originals are potentially appropriate candidates for testing.  Mattel cannot do so,

16  however, without being able to inspect and photograph the originals.  Indeed,

17  defendants' destructive testing may well have precluded any further effective testing

18  from being conducted.  See, e.g., Sedrati, 185 F.R.D. at 393 ("Clearly, preservation

19  of the documents in their original state is a crucial precondition for conducing

20  accurate forensic tests on them.").  That can be determined only from an inspection

21  of the originals, which is another reason it should be ordered.

22          Finally, Bryant cannot legitimately complain that an order compelling

23  him to make the originals available would be burdensome.  Apart from his prior

24  agreements to make the originals available, Bryant's entire production is only some

25  ─────────────────────

26  [48]  See, e.g., Equal Employment Opportunity Commission v. Ethan Allen, Inc., 259
    F.Supp.2d 625, 626 n.1 (N.D. Ohio 2003) ("Sometimes, the determination of the type of ink

27  used can, by itself, prove conclusively that the claimed date of writing is false.  For example,
    a given ink may:  (1) have been manufactured only during certain years;  and/or (2) contain

28  'tags,' which are chemical components added to the ink for the precise purpose of providing
    a date of manufacture.").

**EXHIBIT 33**
**PAGE 1110**
JOINT STIPULATION

1   1588 pages.[49]  At the prior, limited inspection, Mattel was allowed to inspect 462

2   pages of the "originals" of Bryant's production.[50]  The additional, remaining pages are

3   not an unreasonable amount for Bryant to collect and make available for inspection,

4   especially in light of the fact that the originals he has not produced for inspection are

5   among the most relevant and significant in this case.

6          Mattel respectfully requests that its motion be granted as to Issue No. 1.

7

8          **B.      Bryant's Position**

9   **Mattel Has Had A More Than Reasonable Opportunity To Inspect Bryant's**

10                      **Original Documents And Things**

11         The true issue here is whether Mattel has already had a full and fair

12  opportunity to inspect documents or, in the alternative, whether the Court should

13  issue an order placing a reasonable time limit on Mattel's future inspection of

14  Bryant's documents.  Given the excessive time Mattel has spent performing its

15  "inspection" thus far, Mattel's motion should be denied.  But, if the Court is inclined

16  to grant Mattel one last chance to conduct a further inspection, any such Order must

17  be limited to protect Bryant from further harassment, undue burden, annoyance and

18  expense, *and* it must be mutual.

19         Mattel fails to mention that on the three days during which its attorneys

20  inspected original documents at the offices of Bryant's counsel, it "inspected" an

21  average of just over one hundred pages per day, for a total of about three hundred and

22  fifty (350) pages.[51]  In fact, each of the inspections was concluded by Mattel's

23  counsel at or near the close of business, and not due to a lack of documents to inspect.

24  This was due to the fact that Mattel brought at least one attorney, a videographer and

25

26

27     [49]  E.g., McKenzie Dec., ¶ 3 & Exh. 1.

28     [50]  Id.

       [51]  Jacoby Decl. at Par. 8.

EXHIBIT __

PAGE __

**EXHIBIT 33**
**PAGE 1111**

20

JOINT STIPULATION

1   a still photographer to each inspection.[52] This resulted in a staggering amount of time
2   being spent with each separate document before moving on to the next.  Bryant has
3   been more than accommodating of Mattel's lengthy inspection of his production, but
4   Mattel cannot be heard to complain.  It is Mattel that has failed to make the most
5   efficient use of its time - three days *exclusive* of Bryant's 3-day deposition - to inspect
6   originals.

7            Mattel's portion of this Joint Stipulation also ignores that much of
8   Bryant's 1588-page production[53] consisted of royalty statements and telephone
9   records.  In turn, a large number of those records are redacted to protect confidential,
10  and/or proprietary information.[54]  <u>Permitting Mattel to inspect the originals of</u>
11  <u>documents that were produced in redacted form would obviously render futile</u>
12  <u>Bryant's right to safeguard this protected information - a fact Mattel completely</u>
13  <u>ignores.  Mattel is improperly attempting to gain access to originals of redacted</u>
14  <u>documents through this motion.</u>  For Mattel to claim that Bryant has failed to
15  cooperate in the inspection because he has not permitted it to inspect documents it is
16  not entitled to see is specious and illogical.

17           In the spirit of cooperation, Bryant invited Mattel to meet and confer to
18  determine a way for such an inspection to be conducted without compromising
19  Bryant's rights, but Mattel failed to respond.[55]

20           **<u>A Court Is Required To Place Reasonable Limitations On The</u>**
21           **<u>Inspection Of Documents</u>**

22           The right to inspect documents under Rule 34 is not unfettered.  Rather,
23  it is subject to reasonable limitations, which must be delimited by a court when
24  issuing an order permitting an inspection.  For example, the time, place and manner

---

25       [52] <u>Id.</u>

26       [53] Royalty statements and telephone records comprise over 380 pages, or more than
27  one-fifth his total production.

28       [54] Jacoby Decl. at Par. 6.

         [55] <u>Id.</u>

EXHIBIT _____

PAGE _____          **EXHIBIT 33**
                     **PAGE 1112**

21

1   of inspection must be specified in such an order.  <u>Rosenblum v Dingfelder,</u> 1 F.R.D.

2   179 (DC NY 1939).  The place of inspection and the cost of transportation of the

3   documents, if inspection is to be carried out at a location other than where the

4   documents are found, must also be identified.  <u>Id.</u>; See Also <u>Fairwater Transp. Co. v</u>

5   <u>Chris-Craft Corp.,</u> 1 F.R.D. 509 (DC NY 1940).

6          At least one other court has found that a pretrial discovery order under

7   Rule 34 was defective in failing to specify a time and place for the production,

8   inspection and copying of books and papers.  <u>Securities & Exchange Com. v Los</u>

9   <u>Angeles Trust Deed & Mortg. Exchange,</u> 24 FRD 460 (SD Cal. 1959).  Furthermore,

10  even in the absence of a court order, a party is allowed to set reasonable limitations

11  on the inspection of documents.  <u>Federal Sav. & Loan Ins. Corp. v Village Creed</u>

12  <u>Joint Venture,</u> 130 FRD 357 (ND Tex. 1989).

13         Should the Court be inclined to permit Mattel the further opportunity to

14  inspect Bryant's original documents, it should impose clear guidelines: (1) limiting

15  the total amount of time Mattel will be permitted to further inspect Bryant's

16  documents to one court day (seven hours); (2) limiting the inspection to specific

17  documents, referenced by Bates number, that Mattel will be permitted to inspect;

18  (3) limiting the dates(s) and times on which the inspection is to take place (after

19  giving Bryant and his counsel an opportunity to advise as to availability);

20  (4) preventing Mattel from inspecting the originals of documents produced in a

21  redacted form (unless and until Mattel has successfully secured an order compelling

22  production of the document in an unredacted form); and (5) directing Mattel to give

23  Bryant full and complete access to inspect Mattel's original documents (subject to

24  reasonable time, place and manner restrictions consistent with the length and manner

25  of Mattel's inspection of Bryant's documents).  Only in this fashion will Bryant be

26  protected from Mattel's seemingly endless inspection, and the resulting burden,

27  harassment and oppression on Bryant.

28

EXHIBIT

PAGE

**EXHIBIT 33**
**PAGE 1113**

JOINT STIPULATION

## CONCLUSION

Mattel has had ample opportunity to complete its inspection of Bryant's documents and things.  However, should the Court be inclined to permit Mattel additional time to conduct its inspection, Bryant submits that the inspection should be specifically delimited with respect to time, duration and the specific documents to be examined.  The costs of opposing this motion and any additional costs incurred with respect to transporting and/or producing the documents in question (and expenses associated with Bryant's counsel's trip) should be borne by Mattel.  Moreover, Bryant respectfully submits that any order regarding the inspection of his original documents and things should be mutual, with Mattel also being required to produce its documents and things for inspection.

### Issue No. 2

#### Should MGA Be Compelled to Make Available for Inspection the Originals of Documents That It Has Produced?

Set forth below are (A) Mattel's position and (B) MGA's position with respect to Issue No. 2.

### A.    Mattel's Position

There is no question that MGA has both spoliated and been involved in the destructive testing of originals here.  Victoria O'Connor is a former MGA executive who has testified in this case.[56]  According to Ms. O'Connor, Bryant signed his contract with MGA at issue in this suit and faxed the entirety of it to MGA from Mattel.[57]  That faxed contract from Bryant had a fax header that read "Barbie Collectables" and bore the number of the Mattel fax machine, showing that it came

---

[56] Corey Dec., Exh. 19 (O'Connor Dep. Tr. at 16:15-17).

[57] Id. at 18:13-14.

23

PAGE

EXHIBIT 33
PAGE 1114

JOINT STIPULATION

1  from Mattel.[58]  When she brought this to the attention of her boss, Isaac Larian, the

2  CEO and founder of MGA Entertainment, he instructed her to "white-out" the fax

3  header information on all of the pages.[59]  Ms. O'Connor testified that she did, in fact,

4  alter this document at Mr. Larian's direction because it demonstrated Bryant "was still

5  employed at Mattel at the time the contract [between MGA and Bryant] was

6  executed."[60]  The copy of the signed contract that MGA produced in this case did not

7  bear the fax header that MGA's CEO had ordered be whited-out.[61]  Indeed, MGA

8  produced no copy of any Bryant contract that bore fax header information on any

9  pages of the contract at all except for the last page (which also did not include the

10  Mattel fax header that Ms. O'Connor testified about).[62]  Nor, as described further

11  below, has MGA ever allowed Mattel to inspect and photograph any of its originals--

12  including the Bryant contract that it had previously produced as a copy of the

13  supposed "original" of that document.[63]

14            After Ms. O'Connor's testimony, on December 9, 2004, Mattel sent a

15  letter to MGA seeking, among other things, MGA's agreement that Mattel could

16  inspect the original documents, drawings and tangible things responsive to Mattel's

17  discovery requests.[64]  Counsel for MGA did not respond to that letter, and Mattel sent

18  another letter asking for a meet and confer pursuant to Local Rule 37 about the

19  inspection.[65]  On December 15, 2004, counsel for MGA and Mattel held a meeting

20

21  _____

22     [58] Id. at 18:13-18.

       [59] Id. at 18:17-18.

23     [60] Id. at 18:13-18, 19:01-04, 20:8-20.

24     [61] Corey Dec., ¶ 23 and Exh. 21.

25     [62] Id.

26     [63] Id.

       [64] McKenzie Dec., Exh. 2 (letter from S. McKenzie to D. Torres dated December 9,

27  2004).

28     [65] Corey Dec., ¶ 24 and Exh. 22 (letter from J. Corey to D. Torres dated December 13, 2004).

EXHIBIT ____
EXHIBIT 33
PAGE 1115

1   where MGA's counsel declined to agree to provide MGA's originals for inspection
2   and photographing.[66]

3          A meet and confer was held on December 23, 2004.[67]  Although Mattel
4   specifically had requested in advance that MGA provide proposed dates on which it
5   would make available for inspection and photographing the originals of all documents
6   and tangible things that MGA has produced in this matter, MGA did not propose any
7   available dates at the meet and confer.[68]  MGA did agree, however, to provide Mattel
8   with proposed dates for the inspection of all original documents no later than January
9   10, 2005.[69]

10          January 10 came and went without MGA providing any dates for the
11   inspection as promised.   In a letter, MGA instead began to backpedal on its
12   agreement, asserting only that "[t]o the extent MGA has possession of any original
13   artwork and tangible things produced in this matter, it will make such material
14   available for inspection on a mutually convenient date."[70]  Similar to Bryant's claims
15   that he could not locate the originals of the documents he has produced, MGA also
16   stated that it was "in the process of locating original documents, which may be in a
17   variety of locations, and will propose a date of the inspection once it has assembled
18   all such documents."[71]  Moreover, as to the altered document that Victoria O'Connor
19   testified to, MGA claimed it "continues to search for the original and any copy of the
20   purported 2000 facsimile of the Bryant-MGA contract.  Whether you believe it or not,

---

[66]  Krebs Decl. ¶ 6.

[67]  Zeller Dec., ¶ 3 and Exh. 2.

[68]  Id., see Corey Dec., Exh. 22.

[69]  Zeller Dec., Exh. 2 (letter from M. Zeller to A. Meyers dated December 23, 2004).

[70]  Id., Exh. 3 (letter from P. Ambrosini to M. Zeller, dated January 10, 2005).

[71]  Id.

EXHIBIT ___

EXHIBIT 33
PAGE 1116

PAGE ___

25

1    no such document has been located, to date.  In the event that such a document is

2    located, it will be produced and the original will be made available for inspection."[72]

3          After another week had passed, Mattel again requested that MGA

4    propose dates when it would make available for inspection *all* of the originals that it

5    has produced.  In its letter to MGA on January 17, 2005, Mattel pointed out that

6    MGA had failed to propose dates for the inspection on January 10 -- as it had

7    promised to do on December 23 -- and was inappropriately attempting to limit

8    Mattel's right to inspect all of the originals MGA had produced to artwork and

9    tangible things.[73]  Mattel again unambiguously stated: "We have been asking for

10    many weeks now that MGA provide proposed dates on which it will make available

11    for our inspection and photographing the originals of all documents and tangible

12    things that MGA has produced in this matter."[74]  Despite the clarity of Mattel's

13    repeated requests, and seeking to delay the inspection further, MGA professed

14    confusion by claiming that it needed "additional clarification" regarding "the specific

15    documents and things that Mattel wants to inspect in original form."[75]

16          To date, MGA continues with its failure to allow Mattel the right to

17    inspect its originals and, indeed, some two months after Mattel's initial request, still

18    has proposed no dates for any such inspection.[76]  The Court should compel MGA to

19    produce its originals for all of the same reasons that Bryant should be ordered to

20    produce his originals, as discussed above.  Not only did MGA at one point agree to

21    it, but Mattel is clearly entitled to the inspection under Federal Rule of Civil

22    Procedure 34 and the Federal Rules of Evidence, as shown above.  See Issue No. 1,

23    at 16:19-17:22.  The originals sought are also independently discoverable, since

24    Mattel is entitled to the additional information that only originals can show.  In

[72] Id.

[73] Id., Exh. 4 (letter from M. Zeller to P. Ambrosini dated January 17, 2005).

[74] Id.

[75] Id., Exh. 5 (letter from P. Ambrosini to M. Zeller, dated January 24, 2005).

[76] Id., ¶ 8.

EXHIBIT
PAGE

**EXHIBIT 33**
**PAGE 1117**

1    addition, there are serious questions about the authenticity and integrity of MGA's

2    documents here, both in light of Ms. O'Connor's testimony and in light of the

3    unauthorized destructive testing that has been performed.  These facts alone warrant

4    an order that MGA provide its originals for inspection and copying, so that Mattel can

5    ascertain which documents have been altered in advance of a potential motion

6    seeking appropriate remedies for defendants' conduct.  And, as explained above,

7    without inspecting and photographing the originals, Mattel cannot determine what,

8    if any, expert examination or analysis might be appropriate (or even possible at this

9    stage because of defendants' handling of the originals) to determine when documents

10   were created or to test claims about the authenticity of MGA's documents.

11        While MGA has complained about the alleged "time and trouble of

12   identifying and locating originals,"[77] an order compelling MGA to turn over for

13   inspection and photographing the originals will not be burdensome.  MGA's entire

14   production to date is less than 750 pages--filling less than a single box.[78]  Not only

15   has Mattel been crystal clear regarding its request to inspect *all* of the originals of

16   MGA's small production for many weeks now, but it strains credulity to suggest that

17   locating fewer than 750 pages of originals would unduly burden the resources of

18   MGA, which touts itself as a company enjoying revenues in excess of a billion dollars

19   annually,[79] or the resources of its counsel.

20        Mattel respectfully requests that its motion be granted as to Issue No. 2.

21

22

23

24

25

26

---

27   [77] Id., Exh. 5 (letter from P. Ambrosini to M. Zeller dated January 24, 2005).

28   [78] Corey Dec., ¶ 8.

    [79] Id., Exh. 24.

EXHIBIT ___

PAGE ___

**EXHIBIT 33
PAGE 1118**

27

B. **MGA's Position**

1. **MGA Has Agreed to Produce for Inspection Original Artwork and Tangible Things**

Mattel's complaints about MGA's efforts to make original documents and tangibles available for Mattel's inspection are disingenuous, at best, for a myriad of reasons. First and foremost, MGA already agreed to allow MGA to inspect the original artwork, tangibles and invoices that MGA produced. As previously mentioned, the only thing standing in the way of this inspection is Mattel's unreasonable refusal to explain why it contends that this agreement is somehow inadequate.

MGA cannot figure out, on its own, what exactly Mattel wants to inspect from MGA without some clear direction and explanation from Mattel. Other than artwork, tangibles and invoices, the remainder of MGA's production consists of emails and email attachments. Performing an inspection of "original" emails, however, makes no sense. Mattel may, therefore, be expecting to "inspect" original *unredacted* emails. Some emails have been redacted to omit proprietary, confidential and trade secret information that is *wholly irrelevant to this case and non-responsive to any document request*. Mattel, however, has never contended that it is entitled to these emails in unredacted form and it certainly should not be allowed to obtain the properly redacted information through the back-door by demanding to inspect unredacted "originals."

To the extent that Mattel may be expecting to "inspect" the original source material pictured in some of the email attachments – even though Mattel has not requested such originals – identifying and locating this source material would pose an extreme burden on MGA and would provide no additional, relevant information. Most, if not all, of the email attachments are many years old. Indeed, in some instances, MGA could only guess what the pictures are of, and might not even be able to figure out, from the pictures, where the pictured objects might be, if

EXHIBIT
PAGE

**EXHIBIT 33**
**PAGE 1119**

JOINT STIPULATION

1    at all.  Indeed, some of the objects could be overseas, or may no longer exist at all,
2    in which case MGA could perform an endless search and never find them.  In any
3    event, MGA cannot even assess the feasibility of such a search, as well as any
4    additional searches that may be necessary, without knowing what Mattel actually
5    wants.

6            Mattel's request is further disingenuous because Mattel itself has refused
7    to commit to allowing MGA to inspect *any* of Mattel's originals.  (Ambrosini Decl.
8    ¶ 5.)  Mattel can hardly expect to have unfettered access to MGA original documents
9    and things while, at the same time, refusing to allow MGA to inspect Mattel's own
10   originals.  If there is to be any inspection at all, at the very least it should be mutual.[80]
11

12           **2.    The Purported Fax Testified To By Victoria O'Connor**

13           Mattel's charges as to spoliation of evidence are not well-taken, and
14   indeed seem to be nothing more than a contrivance intended to try to inflame and
15   prejudice MGA before the Court.  First, MGA does not dispute that Mr. Bryant
16   signed a contract with MGA while still employed by Mattel (and, by Mr. Bryant's
17   own admission, appears to have faxed that contract from Mattel) – which is the only
18   point on which this purported document could provide evidence.  Second, MGA has
19   made clear on several occasions that it has undertaken substantial efforts to locate this
20   purportedly altered document and simply has not found anything meeting the
21   description of this document, although it *has* found faxes sent by Ms. O'Connor.
22   Indeed, MGA has diligently searched not only its own files, but has also had the
23   attorneys that worked for MGA at the relevant time search their records as well for

24           [80]  Moreover, Mattel's stonewalling as to its own originals is far from an isolated
25   incident of Mattel's egregiously uncooperative discovery behavior.  To cite just one
     example, Mattel has refused to produce even a copy of its own production to MGA unless
26   MGA pays for such production.  It is simply mind-boggling that Mattel would have the
27   audacity to expect MGA to undertake the significant, time-consuming and costly endeavor
     to locate and assemble for production its originals, without even knowing exactly what
28   Mattel wants, and while Mattel will not even assume the expense of producing copies of its
     production to MGA.

1  any version of the contract with the Mattel fax header or that appears to have been in
2  any way altered such as that described by Ms. O'Connor. ***No such document has***
3  ***been found***.

4          Whether Ms. O'Connor's testimony is to be believed or not is an issue
5  in and of itself, but there is no evidence corroborative of her testimony as to this
6  purported altered document.    Moreover, as MGA has made clear in its
7  correspondence on this issue, if MGA locates this purported document, MGA will
8  produce it. (Ex. A to Ambrosini Decl.) Unless and until that day arrives, however,
9  ***MGA cannot produce for inspection a document that it does not have***. Indeed, this
10 is not the first time that Mattel has brought a motion on the basis of its own
11 unquestioned acceptance of the dubious and uncorroborated testimony of third
12 parties. In another Joint Stipulation served the same day as this one, Mattel also
13 moved to compel MGA to produce documents that do not exist based on the
14 incredible, unsubstantiated and false testimony of third-party witness Anna Rhee.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT ____

PAGE ____          **EXHIBIT 33**
                   **PAGE 1121**
30

JOINT STIPULATION

### Issue No. 3

Should Defendants Be Sanctioned?

Set forth below are (A) Mattel's position, (B) Bryant's position and (C) MGA's position with respect to Issue No. 3.

### A.   **Mattel's Position**

Rule 37(a)(4) of the <u>Federal Rules of Civil Procedure</u> provides that a party bringing a motion to compel is entitled to the "reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust." <u>Fed. R. Civ. P.</u> 37(a)(4).  The burden of establishing substantial justification is on the party being sanctioned.  <u>Hyde & Drath v. Baker</u>, 24 F.3d 1162, 1171 (9th Cir. 1994).  Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  <u>RTC v. Dabney</u>, 73 F.3d 262, 265 (10th Cir. 1995) (citing <u>Braley v. Campbell</u>, 832 F.2d 1504, 1512 (10th Cir. 1987)).

Here, there is no legitimate excuse for defendants' failures to produce the originals for inspection and photographing.  They agreed to do it, but then failed to abide by their promises, despite having had literally months to do so.  Nor, in any event, is there any substantial or good faith basis for defendants' long-standing failures.  It is more than obvious that Mattel is entitled to inspect and photograph the

EXHIBIT ___

31   PAGE ___

EXHIBIT 33
PAGE 1122

1  originals and gave defendants more than an ample, reasonable time to collect them

2  and make them available. Indeed, Mattel gave Bryant over three months and MGA

3  some two months to allow the inspection. Instead, Mattel got the run-around and thus

4  was forced to burden this Court with this motion as a result of defendants' lack of

5  cooperation.

6         Defendants should be sanctioned for the fees and costs that they have

7  forced Mattel to expend as a result of their evasion and lack of a good faith

8  justification for withholding the originals. Mattel therefore requests that defendants

9  be ordered to pay $4200 as partial reimbursement for the fees and costs that Mattel

10  has incurred on this motion.[81]

11

12       **B.     Bryant's Position**

13         Mattel requests sanctions against Bryant for failing to produce original

14  documents for inspection despite the fact that he has diligently complied with

15  Mattel's numerous inspection requests - to the point of having original documents

16  sent to Missouri on the eve of his deposition and incurring significant inconvenience

17  and expense in the process. As Mattel acknowledges, Bryant *agreed* to and actually

18  did produce original documents and tangible things for inspection. Mattel, on the

19  other hand, has repeatedly abused its Rule 34 inspections in a manner designed solely

20  to improperly delay the proceedings, increase litigation costs *and* harass Bryant.

21  Mattel's intent to gain an improper advantage in the litigation is all the more apparent

22  by its failure to provide its own original documents for inspection, despite Bryant's

23  request.

24         Sanctions against Mattel, not Bryant, are warranted here.

25         Under 28 U.S.C. section 1927, the same section ironically cited by

26  Mattel in support of its sanctions request against Bryant, "[a]ny attorney ... who so

27  multiplies the proceedings in any case unreasonably and vexatiously may be required

28

[81] Corey Dec., ¶ 27.

EXHIBIT 33
PAGE 1123

32

JOINT STIPULATION

1 by the court to satisfy personally the excess costs, expenses, and attorneys' fees
2 reasonably incurred because of such conduct." Furthermore, under F.R.C.P.
3 37(a)(4)(B), if a discovery motion is denied, the court "shall, after affording an
4 opportunity to be heard, require the moving party or the attorney filing the motion or
5 both of them to pay the party or deponent who opposed the motion the reasonable
6 expenses incurred in opposing the motion, including attorneys' fees, unless the court
7 finds that the making of the motion was substantially justified or that other
8 circumstances make an award of expenses unjust."

9        Bryant's counsel has spent more than five hours preparing this Joint
10 Stipulation, and anticipates spending additional time preparing a supplemental brief
11 in this matter and attending the hearing. Counsel's hourly rate in $295 per hour. See
12 Messiha Declaration at Par 2. Accordingly, Bryant requests sanctions in the amount
13 of at least $1475.00 for the costs expended in defending this application.

14        Bryant respectfully submits that he has ample justification in opposing
15 Mattel's motion, and that Mattel's request for sanctions should therefore be denied.

16

17    **C.    MGA's Position**

18        If anyone is to be sanctioned here, it should be Mattel for two main
19 reasons. First, Mattel has brought a needless motion that could have been avoided
20 had it but made an honest, good faith effort to cooperate with MGA. Second, Mattel
21 has refused to provide MGA with the declarations and exhibits that Mattel refers to
22 in its portion of the Joint Stipulation until *after* the stipulation is signed and filed and
23 *after* it is too late for MGA to respond to whatever it is that Mattel is withholding.[82]

24

25

26

---

27        [82] In addition, Mattel omitted this Issue Three from the portion of the Joint
28 Stipulation it provided on February 9, 2005. Only after much debate did Mr. Zeller relent
and give Defendants the five days required under the Local Rules to draft their portions for
Issue Three. (Ambrosini Decl. ¶ 9 & Exs. E, F.)

**EXHIBIT 33**
**PAGE 1124**

33

1    **1.    This Motion Was Completely Unnecessary, and Mattel Failed
2         to Make an Honest, Good Faith Effort to Resolve the Issues
          Without Court Intervention.**

3         This motion was wholly unnecessary and serves only to "unreasonably

4    and vexatiously" multiply the proceedings in this case in violation of 28 U.S.C.

5    § 1927 ("Any attorney . . . who so multiplies the proceedings in any case

6    unreasonably and vexatiously may be required by the court to satisfy personally the

7    excess costs, expenses, and attorneys' fees reasonably incurred because of such

8    conduct."). *MGA agreed to cooperate with Mattel's request to inspect originals.*

9    MGA simply could not – and still cannot – understand what more Mattel wants to see

10   besides the original artwork, tangibles and invoices that MGA agreed to make

11   available. Although MGA explained this to Mattel, and tried to resolve the issue

12   without burdening the Court, Mattel was apparently eager to bring a motion on even

13   the slightest pretext. Ignoring MGA's questions entirely, it served this Joint

14   Stipulation instead. (Ambrosini Decl. ¶ 6 & Ex. C.)

15        *Mattel's actions exemplify the sort of unreasonable litigation tactics*

16   *that the Federal and Local Rules are designed to avoid, and which the Court*

17   *should not reward.* Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d

18   180, 186-87 (3d Cir. 2003) (reversing sanctions awarded to plaintiff, and noting that

19   "plaintiff's counsel, in its zeal, at times proliferated and complicated the discovery

20   disputes through numerous and lengthy submissions and with an approach

21   best-characterized as 'shoot first and find out later'") (additional quotation marks

22   omitted); Soto v. City of Concord, 162 F.R.D. 603, 623 (N.D. Cal. 1995) (denying

23   motion for sanctions because plaintiff failed to adequately confer, and stating that

24   "sending a letter to the opposing party demanding compliance with a discovery

25   request is not what this Court regards as an earnest attempt to 'meet and confer' on

26   the issues. Rather, a lively exchange of ideas and opinions is required."). Good faith

27   under Rule 37 "contemplates, among other things, honesty in one's purpose to

28   meaningfully discuss the discovery dispute . . . and faithfulness to one's obligation to

34

**EXHIBIT 33**
**PAGE 1125**

JOINT STIPULATION

1   secure information with court action." *In re Lane*, 302 B.R. 75, 79-80 (D. Idaho
2   2003). In other words, good faith "mandates a *genuine attempt* to resolve the
3   discovery dispute through non-judicial means." *Id.* (emphasis added). Mattel's
4   conduct does not evidence any genuine attempt to resolve the issue at all and does not
5   comply with the requirements of the Rule, or meet its policy and purpose.

6          Indeed, Mattel still refuses to explain what more it wants, even in its
7   motion. It appears, therefore, that Mattel's request is a thinly veiled attempt to obtain
8   access to irrelevant (but competitively sensitive) information that MGA legitimately
9   redacted. Mattel does not, and cannot, contest the propriety of the redactions and so,
10  instead, has simply disguised its effort by calling it a request to inspect originals.
11  Alternatively, if this is not Mattel's goal, the only other additional things that Mattel
12  could be asking for are the originals of a variety of tangible things that are pictured
13  in e-mail attachments from many years ago. If it were even possible for MGA to
14  identify and locate the pictured objects – some or all of which may not even exist –
15  Mattel has not shown that its supposed need to view them justifies the immense
16  burden and expense that it would place on MGA to perform the search. While MGA
17  attempted, in good faith, to conduct a meaningful discussion with Mattel to try to
18  reach an amicable solution, MGA's efforts were for naught. Mattel ignored MGA's
19  efforts entirely and should be sanctioned for its lack of good faith compliance with
20  the Rules.

21

22          **2.    Mattel Will Not Permit MGA to See the Declarations and
23          Exhibits that Mattel Has Referenced in its Portion of the
                Joint Stipulation.**

24          Mattel should also be sanctioned because it refuses to permit MGA to
25  see the Declarations and Exhibits that Mattel has referenced in its portion of the Joint
26  Stipulation. Indeed, this is the *second* time that Mattel has served MGA with an
27  unfinished Joint Stipulation containing references such as "Zeller Decl. ¶ __," with
28  blanks in place of citations, and unaccompanied by the declarations or exhibits that

**EXHIBIT 33**
**PAGE 1126**

1  are incorporated by reference. (Ambrosini Decl. ¶¶ 6-7 & Ex. D.) Mattel steadfastly

2  maintains that it is allowed to refer to and cite declarations and exhibits in its Joint

3  Stipulation without telling MGA what those declarations say, without telling MGA

4  what those exhibits are, and without providing MGA with the declarations and

5  exhibits, until *after* MGA responds to Joint Stipulation, signs the Joint Stipulation

6  and Mattel files the Joint Stipulation. (Ambrosini Decl. ¶ 8 & Exs. F, G, & H.)

7          This has forced MGA to draft its response based on incomplete

8  information. For example, at note 32 of Ex. D to the Ambrosini Declaration, Mattel

9  cites a declaration that purportedly lists a range of Bates-numbered documents that

10  are neither identified in the Joint Stipulation itself nor provided as an exhibit. MGA

11  is left to guess what those unidentified Bates-numbered documents might be. Worse

12  yet, under Mattel's procedure, MGA will not know this information until *after* the

13  Joint Stipulation is sent to the court, which is then too late for MGA to take the

14  information into account in its response. That leaves MGA at a distinct disadvantage

15  because MGA is forced to respond to incomplete information. Further, it will not

16  have an opportunity to respond in the Joint Stipulation once Mattel has completed and

17  filed the Stipulation, its declarations and exhibits. MGA has now begun to reference

18  this problem when it signs the Joint Stipulations.

19          The Local Rules surely do not condone this practice. On the contrary,

20  the Local Rules require the moving party to provide its "portion of the stipulation,"

21  not a rough draft of that portion or an incomplete version thereof. *See* C.D. Cal. Loc.

22  R. 37-2.2. Certainly, Mattel's undisclosed declarations and exhibits are part of the

23  Joint Stipulation and must accompany it when Mattel's portion is served. That is

24  clearly the tone of the rule and, indeed, is the only interpretation that makes logical

25  sense. Otherwise, MGA does not have a fair opportunity to respond to Mattel's

26  positions, because it is not fully informed of what those positions are. Worse yet,

27  Mattel has an unfair opportunity to put whatever it wants in its declarations, after it

28

EXHIBIT

PAGE

**EXHIBIT 33**
**PAGE 1127**

JOINT STIPULATION

1   receives MGA's papers and after MGA's opportunity to address the issue in the Joint
2   Stipulation has passed.

3        Mattel's gamesmanship should not be tolerated. *Marchand v. Mercy*
4   *Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994) (stating that parties "should focus on the
5   goal of the Rules, full and efficient discovery, not evasion and word play"). This
6   motion is but one more example of Mattel's scorched earth and patently unreasonable
7   discovery practices in this case to date. Perhaps Mattel is trying to create issues
8   where there are none, in the hope that the Court will simply get tired of its tactics and
9   ignore the discovery disputes, thereby giving Mattel free reign to engage in even
10  more unreasonable and unacceptable tactics with impunity. The Court should not
11  reward Mattel for its behavior by permitting this to occur. MGA respectfully requests
12  that the Court deny Mattel's request for sanctions[83] and, instead, impose sanctions on
13  Mattel's counsel for bringing a frivolous motion and unreasonably multiplying the
14  proceedings in this case. 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the
15  proceedings in any case unreasonably and vexatiously may be required by the court
16  to satisfy personally the excess costs, expenses, and attorneys' fees reasonably
17  incurred because of such conduct.").

18       MGA also requests that Mattel be ordered to pay the fees and expenses
19  that MGA reasonably incurred in responding to Mattel's frivolous motion, in the
20  amount of $5,000. (Ambrosini Decl. ¶ 13.)

21
22
23

**EXHIBIT 33**
**PAGE 1128**

---

24   [83] Mattel has come nowhere near showing that MGA acted "recklessly or in bad
25   faith" to justify its requests for sanction against MGA under 28 U.S.C. § 1927. *See In re*
*Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co.*, No. C00-4035 MMC(BZ), 2002
26   WL 532122, at *1 (N.D. Cal. Apr. 5, 2002) (sanctions under § 1927 "requires a finding that
27   a party acted recklessly or in bad faith") (citing *Pacific Harbor Capital, Inc. v. Carnival*
*Airlines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). Mattel's request for sanctions under
28   Rule 37(a)(4) is similarly unauthorized because Mattel failed to make "a good faith effort
to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(4)(A).

37

1   DATED: February 17, 2005          QUINN EMANUEL URQUHART
                                      OLIVER & HEDGES, LLP
2

3                                     By  Jon D. Corey/ars
                                         Jon D. Corey
4                                        Attorneys for Plaintiff/Counter-Defendant
                                         Mattel, Inc.
5

6   DATED: February __, 2005          LITTLER MENDELSON, P.C.

7

8                                     By
                                         Keith A. Jacoby
9                                        Attorneys for Defendant and Counter-
                                         Claimant Carter Bryant

10
    DATED: February __, 2005          O'MELVENY & MYERS, LLP
11

12                                    By
                                         Paula Ambrosini
13                                       Attorneys for Defendant
                                         MGA Entertainment Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                         EXHIBIT

                                                      **EXHIBIT 33**
                                           PAGE       **PAGE 1129**
                                 38
                                           JOINT STIPULATION

Received:   2/17/05  2:30PI          310 653 5583 -> JetFax   20;  Page 2
FEB-17-2005 14:26 FROM:LITTLER MENDELSON    310 553 5583         TO:12136240643        P.2/2

1  DATED: February __, 2005          QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
2

3                                    By_____
                                        Jon D. Corey
4                                       Attorneys for Plaintiff/Counter-Defendant
                                        Mattel, Inc.
5

6  DATED: February ɪ7, 2005          LITTLER MENDELSON, P.C.

7
                                     By  _____ D. Wickle_____
8                                       ~~Keith A. Jacoby~~ Douglas A. Wickle
                                        Attorneys for Defendant and Counter-
9                                       Claimant Carter Bryant

10
   DATED: February __, 2005          O'MELVENY & MYERS, LLP
11

12                                   By_____
                                        Paula Ambrosini
13                                      Attorneys for Defendant
                                        MGA Entertainment Inc.
14

15

16

17

18

19

20

21

22

23

24

25
                                     Joint stipulation Re
26                                   Mattel's motion to
27                                   compel production of
                                     originals
28
        EXHIBIT_____                   **EXHIBIT 33**
                                                  **PAGE 1130**
        PAGE_____
                                     38           JOINT STIPULATION

1     DATED: February ___, 2005    QUINN EMANUEL URQUHART
2                                  OLIVER & HEDGES, LLP

3

4                                  By:_____

5                                       Jon D. Corey
                                        Attorneys for Plaintiff/Counter-Defendant
6                                       Mattel, Inc.

7     DATED: February ___, 2005    LITTLER MENDELSON, P.C.

8

9                                  By:_____

10                                     Keith A. Jacoby
                                      Attorneys for Defendant and Counter-
11                                     Claimant Carter Bryant

12    DATED: February 17, 2005    O'MELVENY & MYERS, LLP

13

14                                 By: _____

15                                      Paula Ambrosini
                                        Attorneys for Defendant
16                                     MGA Entertainment Inc.*

17    *Signed with the caveat that because Mattel has refused to provide MGA with the
18    declarations and exhibits referenced in Mattel's portion of this Joint Stipulation,
      MGA's portion of the Joint Stipulation cannot and does not take into consideration
19    or respond to any such material. MGA signs this Joint Stipulation, therefore,
      reserving the right to respond to any material it has not yet been able to review or
20    consider, and to move to strike such material as appropriate.

21

22

23

24

25

26

27

28

                                    -38-
                                                        JOINT STIPULATION

EXHIBIT

PAGE

EXHIBIT 33
PAGE 1131

EXHIBIT 34

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
3  Los Angeles, CA 90071-3144
   Tel.: (213) 687-5000/Fax: (213) 687-5600
4
   KENNETH PLEVAN (admitted *pro hac vice*)
5  (kplevan@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Times Square, New York, NY 10046
   Tel.: (212) 735-3000 / Fax: (212) 735-2000
7
   Attorneys for Counter-Defendants
8  MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED,
   MGAE DE MEXICO, S.R.L. DE C.V., AND ISAAC LARIAN
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12  CARTER BRYANT, an individual,     ) CASE NO. CV 04-9049 SGL (RNBx)
                                       ) Consolidated with Case No. 04-9059
13          Plaintiff,                 ) and Case No. 05-2727
                                       )
14          v.                         ) **MGA DEFENDANTS' AND
                                       ) CARTER BRYANT'S JOINT
15  MATTEL, INC., a Delaware           ) NOTICE OF SERVICE OF
    corporation,                       ) EXHIBIT LIST AND DEPOSITION
16                                     ) DESIGNATIONS
            Defendant.                 )
17                                     )
                                       )
18                                     )
                                       )
19                                     )
                                       ) **Phase 1**
20  AND CONSOLIDATED ACTIONS           ) Discovery Cut-off: January 28, 2008
                                       ) Pre-Trial Conference: May 5, 2008
21                                     ) Trial Date: May 27, 2008
                                       )
22                                     )

23

24

25

26

27                              EXHIBIT _____

28                                          PAGE ___   **EXHIBIT 34
                        04-01                           PAGE 1132**

───────────────────────────────────────────
MGA DEFENDANTS' NOTICE OF SERVICE OF EXHIBIT LIST AND DEPOSITION DESIGNATIONS
Case No. CV 04-9049 SGL (RNBx)

1 | included in Exhibit A and/or deposition testimony designated in Exhibit B, if Mattel
2 | attempts to offer such evidence.

3

4 | DATED:  April 1, 2008

5 | Respectfully submitted,

6 | SKADDEN, ARPS, SLATE, MEAGHER &
7 | FLOM, LLP

8 | By: _____
9 | Robert J. Herrington
   | Attorneys for Counter-Defendants,
10 | MGA ENTERTAINMENT, INC., MGA
   | ENTERTAINMENT (HK) LIMITED,
11 | MGAE de MEXICO S.R.L. de C.V., and
   | ISAAC LARIAN

12

13

14 | KEKER & VAN NEST, LLP

15 | By: _____
16 | Matthew M. Werdegar
17 | Attorneys for Plaintiff
   | CARTER BRYANT

18

19

20

21

22

23

24

25

26 | EXHIBIT _____

27 | PAGE _____   **EXHIBIT 34**
   |              **PAGE 1133**

28

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. Proc. 26(a)(3)(A),

3 | Local Rule 16-2, the Court's Standing Scheduling Order, and the Court's March 11,

4 | 2008 Order Regarding Pretrial Deadlines, counter-defendants MGA Entertainment,

5 | Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L.

6 | de C.V. (collectively, the "MGA Defendants" or "MGA") and Carter Bryant are

7 | serving the following joint pre-trial disclosures on counsel for Mattel, Inc.:

8 |     1.    An initial list of Trial Exhibits (*Exhibit A*); and

9 |     2.    An initial list of Deposition Designations (*Exhibit B*).

10 |     MGA and Bryant expressly reserve the right to supplement and/or amend the

11 | lists of Trial Exhibits and Deposition Designations at any time before trial.

12 |     In light of the fact that the Court has not yet ruled on the parties' motions for

13 | partial summary judgment or motions *in limine*, MGA's and Bryant's  inclusion of

14 | any document Exhibit A and/or designation of any deposition testimony as set forth

15 | in Exhibit B is not, and should not be interpreted as, a waiver of any argument that

16 | certain evidence should be excluded from trial.

17 |     Although MGA and Bryant are submitting these initial lists jointly, certain

18 | Trial Exhibits included in Exhibit A and/or deposition testimony designated in

19 | Exhibit B may only be relevant to claims asserted against, and/or affirmative

20 | defenses asserted by, MGA or Bryant, but not both.  Such Trial Exhibits or

21 | deposition testimony will only be offered into evidence by the party for whom they

22 | are relevant.

23 |     Some of the Trial Exhibits included in Exhibit A and/or deposition testimony

24 | designated in Exhibit B may be admissible if offered by Bryant and/or MGA, but

25 | inadmissible if offered by Mattel. MGA and Bryant are not waiving any hearsay or

26 | other evidentiary objections they may have with respect to any of the Trial Exhibits

27 |

28 |

EXHIBIT

PAGE __

**EXHIBIT 34**
**PAGE 1134**

A

EXHIBIT _____

PAGE ___          **EXHIBIT 34**
                  **PAGE 1135**          –

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| 1156 | BRYANT0000013 | BRYANT0000137 | 10-01-1998 | |
| 1158 | BRYANT0000116 | BRYANT0000116 | | |
| 1158 | BRYANT0000118 | BRYANT0000118 | | |
| 1159 | BRYANT0000119 | BRYANT0000119 | | |
| 1160 | BRYANT0000121 | BRYANT0000121 | | |
| 1161 | BRYANT0000123 | BRYANT0000123 | | |
| 1162 | BRYANT0000124 | BRYANT0000124 | | |
| 1163 | BRYANT0000127 | BRYANT0000127 | | |
| 1164 | BRYANT0000131 | BRYANT0000131 | | |
| 1165 | BRYANT0000132 | BRYANT0000132 | | |
| 1166 | BRYANT0000133 | BRYANT0000133 | | |
| 1168 | BRYANT0000134 | BRYANT0000134 | | |
| 1169 | BRYANT0000136 | BRYANT0000136 | | |
| 0005 | BRYANT0000138 | BRYANT0000351 | | |
| | BRYANT0000139 | BRYANT0000139 | | |
| | BRYANT0000140 | BRYANT0000140 | | |
| 0712 | BRYANT0000163 | BRYANT0000163 | | |
| 0713 | BRYANT0000164 | BRYANT0000164 | | |
| | BRYANT0000168 | BRYANT0000168 | | |
| | BRYANT0000170 | BRYANT0000170 | | |
| | BRYANT0000171 | BRYANT0000171 | | |
| | BRYANT0000172 | BRYANT0000172 | | |
| 0393; 0202 | BRYANT0000173 | BRYANT0000174 | | |
| 0757 | BRYANT0000175 | BRYANT0000175 | | |
| 0701; 0702 | BRYANT0000176 | BRYANT0000176 | | |
| 0703 | BRYANT0000177 | BRYANT0000177 | | |
| 0762 | BRYANT0000178 | BRYANT0000178 | | |
| 0523; 0751 | BRYANT0000179 | BRYANT0000179 | | |
| 0753 | BRYANT0000180 | BRYANT0000180 | | |
| 0755 | BRYANT0000181 | BRYANT0000181 | | |
| 0756 | BRYANT0000182 | BRYANT0000182 | | |
| 0709 | BRYANT0000183 | BRYANT0000183 | | |
| 0710 | BRYANT0000186 | BRYANT0000186 | | |
| 0704 | BRYANT0000189 | BRYANT0000189 | | |
| 0705 | BRYANT0000190 | BRYANT0000190 | | |
| 1660; 0624 | BRYANT0000192 | BRYANT0000192 | | |
| 0062 | BRYANT0000192 | BRYANT0001243 | 08-26-1999 | |

EXHIBIT
PAGE ___

EXHIBIT 34
PAGE 1136

4/1/2008

Page 1

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | BRYANT0000193 | BRYANT0000193 | | |
| 0774; 0620 | BRYANT0000194 | BRYANT0000194 | 08-26-1999 | |
| 1747 | BRYANT0000195 | BRYANT0000195 | 08-26-1999 | |
| | BRYANT0000196 | BRYANT0000196 | 08-26-1999 | |
| 0776 | BRYANT0000197 | BRYANT0000197 | 08-27-1999 | |
| | BRYANT0000198 | BRYANT0000198 | | |
| 0739 | BRYANT0000199 | BRYANT0000199 | | |
| 0761 | BRYANT0000200 | BRYANT0000200 | | |
| 1748 | BRYANT0000201 | BRYANT0000201 | 08-26-1999 | |
| 0796 | BRYANT0000201 | BRYANT0000290 | 08-26-1999 | |
| 0621; 0767 | BRYANT0000202 | BRYANT0000202 | 08-26-1999 | |
| 0758 | BRYANT0000203 | BRYANT0000203 | | |
| 0618; 0795; 1750 | BRYANT0000204 | BRYANT0000204 | 08-26-1999 | |
| | BRYANT0000205 | BRYANT0000205 | | |
| | BRYANT0000206 | BRYANT0000206 | | |
| 0794 | BRYANT0000207 | BRYANT0000207 | 08-26-1999 | |
| 1751; 0781; 0617 | BRYANT0000208 | BRYANT0000208 | 08-26-1999 | |
| | BRYANT0000209 | BRYANT0000209 | | |
| 0623 | BRYANT0000210 | BRYANT0000210 | 08-26-1999 | |
| 0622; 1752; 0769 | BRYANT0000211 | BRYANT0000211 | 08-26-1999 | |
| | BRYANT0000212 | BRYANT0000212 | | |
| 0741 | BRYANT0000213 | BRYANT0000213 | | |
| | BRYANT0000214 | BRYANT0000214 | 08-26-1999 | |
| | BRYANT0000215 | BRYANT0000215 | 08-26-1999 | |
| 0706 | BRYANT0000216 | BRYANT0000216 | | |
| 0707 | BRYANT0000217 | BRYANT0000217 | | |
| | BRYANT0000218 | BRYANT0000218 | | |
| | BRYANT0000219 | BRYANT0000219 | 10-26-2000 | |
| 0787 | BRYANT0000220 | BRYANT0000220 | 08-00-1998 | |
| 0721 | BRYANT0000221 | BRYANT0000221 | | |
| 0003; 0779; 1784 | BRYANT0000222 | BRYANT0000234 | 08-00-1998 | |

EXHIBIT
PAGE

EXHIBIT 34
PAGE 1137

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| 0726 | BRYANT0000223 | BRYANT0000223 | 08-00-1998 | |
| | BRYANT0000224 | BRYANT0000224 | 08-00-1998 | |
| | BRYANT0000225 | BRYANT0000225 | | |
| 0791 | BRYANT0000226 | BRYANT0000226 | 08-00-1998 | |
| | BRYANT0000227 | BRYANT0000227 | 08-00-1998 | |
| 0718 | BRYANT0000228 | BRYANT0000228 | | |
| 0789 | BRYANT0000229 | BRYANT0000229 | 08-00-1998 | |
| 0788 | BRYANT0000230 | BRYANT0000230 | 08-00-1998 | |
| 0735 | BRYANT0000231 | BRYANT0000231 | | |
| 0714 | BRYANT0000232 | BRYANT0000232 | | |
| 0792 | BRYANT0000233 | BRYANT0000233 | 08-00-1998 | |
| 0793 | BRYANT0000234 | BRYANT0000234 | 08-00-1998 | |
| 0720 | BRYANT0000235 | BRYANT0000235 | | |
| 0715 | BRYANT0000236 | BRYANT0000236 | | |
| 0723 | BRYANT0000237 | BRYANT0000237 | | |
| 0004 | BRYANT0000238 | BRYANT0000261 | | |
| | BRYANT0000239 | BRYANT0000239 | | |
| | BRYANT0000240 | BRYANT0000240 | | |
| | BRYANT0000241 | BRYANT0000241 | | |
| | BRYANT0000242 | BRYANT0000242 | | |
| | BRYANT0000243 | BRYANT0000243 | | |
| | BRYANT0000244 | BRYANT0000244 | | |
| | BRYANT0000245 | BRYANT0000245 | | |
| | BRYANT0000246 | BRYANT0000246 | | |
| | BRYANT0000253 | BRYANT0000253 | | |
| 0001; 4551 | BRYANT0000262 | BRYANT0000272 | | |
| 0716 | BRYANT0000273 | BRYANT0000273 | | |
| 0035 | BRYANT0000277 | BRYANT0000277 | | |
| | BRYANT0000278 | BRYANT0000278 | | |
| | BRYANT0000280 | BRYANT0000280 | 11-02-2000 | |
| | BRYANT0000281 | BRYANT0000281 | 11-02-2000 | |
| | BRYANT0000282 | BRYANT0000282 | 11-01-2000 | |
| | BRYANT0000290 | BRYANT0000290 | | |
| | BRYANT0000291 | BRYANT0000291 | | |
| | BRYANT0000292 | BRYANT0000292 | | |
| | BRYANT0000293 | BRYANT0000293 | | |
| | BRYANT0000294 | BRYANT0000294 | | |
| | BRYANT0000295 | BRYANT0000295 | | |
| | BRYANT0000296 | BRYANT0000296 | | |
| 0724 | BRYANT0000297 | BRYANT0000297 | | |

EXHIBIT
PAGE

EXHIBIT 34
PAGE 1138

4/1/2008

Page 3

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| 0708 | BRYANT0000300 | BRYANT0000300 | | |
| | BRYANT0000301 | BRYANT0000301 | 08-26-1999 | |
| 0002 | BRYANT0000310 | BRYANT0000319 | | |
| | BRYANT0000311 | BRYANT0000311 | | |
| | BRYANT0000312 | BRYANT0000312 | | |
| 0737 | BRYANT0000313 | BRYANT0000313 | | |
| 0729 | BRYANT0000314 | BRYANT0000314 | | |
| 0745 | BRYANT0000315 | BRYANT0000315 | | |
| | BRYANT0000316 | BRYANT0000316 | | |
| | BRYANT0000317 | BRYANT0000317 | | |
| 0743 | BRYANT0000318 | BRYANT0000318 | | |
| 0733 | BRYANT0000319 | BRYANT0000319 | | |
| | BRYANT0000340 | BRYANT0000340 | | |
| 0711 | BRYANT0000341 | BRYANT0000341 | | |
| | BRYANT0000345 | BRYANT0000345 | | |
| 0006 | BRYANT0000358 | BRYANT0000361 | 00-00-2001 | |
| | BRYANT0000359 | BRYANT0000359 | 09-30-2001 | |
| | BRYANT0000376 | BRYANT0000376 | 01-20-2001 | |
| | BRYANT0000377 | BRYANT0000377 | 07-14-1998 | |
| | BRYANT0000683 | BRYANT0000698 | | |
| | BRYANT0000699 | BRYANT0000699 | | |
| | BRYANT0000700 | BRYANT0000700 | | |
| | BRYANT0000728 | BRYANT0000744 | 02-25-2002 | |
| 0015 | BRYANT0000794 | BRYANT0000799 | 09-18-2000 | |
| | BRYANT0000861 | BRYANT0000861 | 02-11-1998 | |
| | BRYANT0000862 | BRYANT0000862 | 02-11-1998 | |
| | BRYANT0000863 | BRYANT0000863 | | |
| | BRYANT0000864 | BRYANT0000864 | | |
| 0007 | BRYANT0000869 | BRYANT0000869 | 00-00-2001 | |
| | BRYANT0000870 | BRYANT0000870 | | |
| | BRYANT0000871 | BRYANT0000871 | | |
| | BRYANT0000872 | BRYANT0000872 | | |
| 1658 | BRYANT0000883 | BRYANT0000883 | | |
| 1659 | BRYANT0000886 | BRYANT0000886 | | |
| | BRYANT0000911 | BRYANT0000911 | | |
| | BRYANT0000928 | BRYANT0000928 | 08-26-1999 | |
| | BRYANT0000929 | BRYANT0000929 | | |
| | BRYANT0000960 | BRYANT0000960 | | |
| | BRYANT0000961 | BRYANT0000961 | | |
| | BRYANT0000962 | BRYANT0000962 | | |
| | BRYANT0000963 | BRYANT0000963 | | |

EXHIBIT
PAGE

**EXHIBIT 34**
**PAGE 1139**

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | BRYANT0000964 | BRYANT0000964 | | |
| | BRYANT0000965 | BRYANT0000965 | | |
| | BRYANT0000966 | BRYANT0000966 | | |
| | BRYANT0000967 | BRYANT0000967 | | |
| | BRYANT0000968 | BRYANT0000968 | | |
| | BRYANT0000969 | BRYANT0000969 | | |
| | BRYANT0000970 | BRYANT0000970 | | |
| | BRYANT0000977 | BRYANT0000977 | | |
| | BRYANT0000986 | BRYANT0000986 | | |
| | BRYANT0000987 | BRYANT0000987 | | |
| | BRYANT0001014 | BRYANT0001014 | | |
| | BRYANT0001015 | BRYANT0001015 | | |
| | BRYANT0001016 | BRYANT0001016 | | |
| 0730 | BRYANT0001049 | BRYANT0001049 | | |
| | BRYANT0001098 | BRYANT0001098 | | |
| | BRYANT0001100 | BRYANT0001100 | | |
| 0747 | BRYANT0001110 | BRYANT0001110 | | |
| 0732 | BRYANT0001111 | BRYANT0001111 | | |
| 0749 | BRYANT0001112 | BRYANT0001112 | | |
| | BRYANT0001113 | BRYANT0001113 | | |
| | BRYANT0001114 | BRYANT0001114 | | |
| 0772 | BRYANT0001115 | BRYANT0001115 | | |
| | BRYANT0001116 | BRYANT0001116 | | |
| | BRYANT0001117 | BRYANT0001117 | | |
| | BRYANT0001118 | BRYANT0001118 | | |
| | BRYANT0001122 | BRYANT0001122 | | |
| | BRYANT0001123 | BRYANT0001123 | | |
| | BRYANT0001124 | BRYANT0001124 | | |
| | BRYANT0001125 | BRYANT0001125 | | |
| | BRYANT0001126 | BRYANT0001126 | | |
| | BRYANT0001189 | BRYANT0001189 | | |
| | BRYANT0001192 | BRYANT0001192 | | |
| | BRYANT0001193 | BRYANT0001193 | 11-17-2000 | |
| | BRYANT0001194 | BRYANT0001194 | 08-01-2001 | |
| | BRYANT0001195 | BRYANT0001195 | 06-08-2001 | |
| | BRYANT0001196 | BRYANT0001196 | 09-14-2001 | |
| | BRYANT0001197 | BRYANT0001197 | 12-14-2001 | |
| 0014 | BRYANT0001198 | BRYANT0001199 | 12-08-1998 | |
| | BRYANT0001199 | BRYANT0001199 | | |
| | BRYANT0001204 | BRYANT0001204 | 09-21-2000 | |
| | BRYANT0001205 | BRYANT0001205 | | |

EXHIBIT
PAGE

EXHIBIT 34
PAGE 1140

4/1/2008

Page 5

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | BRYANT0001206 | BRYANT0001206 | | |
| | BRYANT0001207 | BRYANT0001207 | 11-06-2000 | |
| | BRYANT0001208 | BRYANT0001208 | | |
| | BRYANT0001209 | BRYANT0001209 | 10-30-2000 | |
| | BRYANT0001210 | BRYANT0001210 | 10-20-2000 | |
| | BRYANT0001211 | BRYANT0001211 | 10-05-2000 | |
| | BRYANT0001212 | BRYANT0001212 | | |
| | BRYANT0001213 | BRYANT0001213 | 04-15-1998 | |
| | BRYANT0001213 | BRYANT0001219 | | |
| | BRYANT0001214 | BRYANT0001214 | | |
| | BRYANT0001215 | BRYANT0001215 | | |
| | BRYANT0001220 | BRYANT0001220 | 06-21-1998 | |
| | BRYANT0001231 | BRYANT0001231 | | |
| 0029 | BRYANT0001231 | BRYANT0001231 | 08-10-1998 | |
| 0016 | BRYANT0001232 | BRYANT0001233 | 04-1-2001 | |
| | BRYANT0001234 | BRYANT0001235 | 09-19-2000 | |
| | BRYANT0001236 | BRYANT0001236 | 02-08-2001 | |
| | BRYANT0001238 | BRYANT0001238 | 02-08-2001 | |
| | BRYANT0001239 | BRYANT0001239 | 02-08-2001 | |
| | BRYANT0001240 | BRYANT0001240 | 02-08-2001 | |
| | BRYANT0001241 | BRYANT0001241 | 02-08-2001 | |
| | BRYANT0001242 | BRYANT0001242 | 02-08-2001 | |
| 1152 | BRYANT0001244 | BRYANT0000224 | 08-26-1999 | |
| | BRYANT0001246 | BRYANT0001246 | | |
| 0766 | BRYANT0001247 | BRYANT0001247 | | |
| 1310 | BRYANT0001588 | BRYANT0001588 | 08-25-2000 | |
| 1153;1313 | BRYANT0001589 | BRYANT0001624 | | |
| 1155 | BRYANT0001625 | BRYANT0000351 | | |
| | BRYANT0001625 | BRYANT0001665 | | |
| | BRYANT0001666 | BRYANT0001666 | 03-20-2003 | |
| | BRYANT0001802 | BRYANT0001924 | 08-01-2001 | |
| | BRYANT0001964 | BRYANT0001972 | 12-29-2001 | |
| 1327 | BRYANT0001975 | BRYANT0001975 | 09-19-1999 | |
| 1328 | BRYANT0001976 | BRYANT0001976 | 09-19-1999 | |
| | BRYANT0002472 | BRYANT0002478 | | |
| | BRYANT0002479 | BRYANT0002482 | 00-00-2001 | |
| | BRYANT0002692 | BRYANT0002692 | | |
| | BRYANT0002694 | BRYANT0002694 | | |
| | BRYANT0002714 | BRYANT0002715 | | |
| | BRYANT0002732 | BRYANT0002732 | | |
| | BRYANT0002742 | BRYANT0002743 | | |

EXHIBIT __

PAGE

EXHIBIT 34
PAGE 1141

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| 0771 | BRYANT0002746 | BRYANT0002746 | | |
| | BRYANT0002775 | BRYANT0002775 | | |
| | BRYANT0002786 | BRYANT0002789 | | |
| | BRYANT0002786 | BRYANT0002803 | | |
| | BRYANT0002790 | BRYANT0002794 | | |
| | BRYANT0002957 | BRYANT0002968 | | |
| | BRYANT0002957 | BRYANT0002968 | 08-07-1998 | |
| 1167 | BRYANT0002862 | BRYANT0002862 | | |
| | BRYANT0002976 | BRYANT0002976 | 06-01-2001 | |
| | BRYANT0003015 | BRYANT0003015 | 03-20-2003 | |
| | BRYANT0003017 | BRYANT0003017 | | |
| | BRYANT0003018 | BRYANT0003018 | 09-09-2002 | |
| | BRYANT0003035 | BRYANT0003043 | 11-02-2001 | |
| | BRYANT0003116 | BRYANT0003117 | 12-09-1998 | |
| | BRYANT0003494 | BRYANT0003494 | 09-24-2003 | |
| | BRYANT0003501 | BRYANT0003657 | | |
| | BRYANT0003850 | BRYANT0004417 | 06-22-2004 | |
| | BRYANT0004421 | BRYANT0004421 | 09-21-2000 | |
| | BRYANT0004423 | BRYANT0004424 | | |
| | BRYANT0004449 | BRYANT0004457 | 04-04-1999 | |
| | BRYANT0004572 | BRYANT0004677 | 08-07-1998 | |
| | BRYANT0004656 | BRYANT0004656 | | |
| | BRYANT0004671 | BRYANT0004671 | | |
| | BRYANT0004675 | BRYANT0004675 | 05-27-1998 | |
| | BRYANT0004841 | BRYANT0004854 | | |
| | BRYANT0004849 | BRYANT0004849 | 07-13-1998 | |
| | BRYANT0004850 | BRYANT0004850 | | |
| 1157 | BRYANT0004859 | BRYANT0004859 | 02-01-2002 | |
| | BRYANT0004862 | BRYANT0004862 | 05-16-2002 | |
| | BRYANT0004877 | BRYANT0004879 | 07-13-1999 | |
| | BRYANT0005002 | BRYANT0005021 | | |
| | BRYANT0005025 | BRYANT0005025 | | |
| | BRYANT0007673 | BRYANT0007923 | 03-31-2002 | |
| | BRYANT0008664 | BRYANT0008685 | 06-23-1905 | |
| | BRYANT0009408 | BRYANT0009450 | 06-27-1905 | |
| | BRYANT0009513 | BRYANT0009558 | 09-30-2004 | |
| | BRYANT0009756 | BRYANT0008757 | 12-09-2003 | |
| | BRYANT0010831 | BRYANT0010866 | 06-28-2004 | |
| | BRYANT0011132 | BRYANT0011178 | 03-31-2004 | |
| | BRYANT0011509 | BRYANT0011580 | 01-01-2003 | |
| | BRYANT0011581 | BRYANT0011582 | 07-22-2002 | |

EXHIBIT

PAGE

EXHIBIT 34
PAGE 1142

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
|  | BRYANT0011767 | BRYANT0011785 | 07-15-2003 |  |
|  | BRYANT0012171 | BRYANT0012172 | 12-08-2000 |  |
|  | BRYANT0012257 | BRYANT0012261 | 01-13-2003 |  |
|  | BRYANT0012514 | BRYANT0012515 | 07-12-2002 |  |
|  | BRYANT0012548 | BRYANT0012548 | 11-08-2002 |  |
|  | BRYANT0012561 | BRYANT0012561 | 10-26-2001 |  |
|  | BRYANT0012906 | BRYANT0012912 | 06-28-1905 |  |
|  | BRYANT0012981 | BRYANT0012989 | 09-30-2006 |  |
|  | BRYANT0013154 | BRYANT0013158A | 08-24-2005 |  |
|  | BRYANT0013166 | BRYANT0013168 | 11-15-2005 |  |
|  | BRYANT0015602 | BRYANT0015602 | 08-26-1905 |  |
|  | BRYANT0017031 | BRYANT0017355 | 04-27-2006 |  |
|  | BRYANT0019226 | BRYANT0019374 | 05-09-2002 |  |
|  | DR0000017 | DR0000018 |  |  |
| 2203 | DR0000019 | DR0000026 | 09-18-2000 |  |
|  | DR0000028 | DR0000028 |  |  |
| 2201 | DR0000029 | DR0000032 | 09-14-2000 |  |
|  | DR0000033 | DR0000034 |  |  |
| 2209 | DR0000035 | DR0000044 | 09-18-2000 |  |
| 2208 | DR0000045 | DR0000057 | 09-18-2000 |  |
| 4548 | GG0000003 | GG0000003 | ct-01-26 O |  |
| 4527 | GG0000005 | GG0000005 |  |  |
| 4549 | GG0000007 | GG0000007 | ct-01-30 O |  |
| 4526 | GG0000015 | GG0000015 | 10-09-2000 |  |
|  | GG0000015; GG0000094; GG0000020; GG0000009; GG0000023; GG0000097; GG0000088; GG0000093; GG0000033; GG0000026; GG0000012; GG0000004; GG0000006; GG0000003 |  |  |  |
| 4551 | GG0000016 | GG0000016 | ct-00-11 O |  |
|  | GG0000016; KMW-L0000425; GG0000018; GG0000021; GG0000010; GG0000024; GG0000089; GG0000032; GG0000091; GG0000007; GG0000013 |  |  |  |
| 4534 | GG0000017 | GG0000017 | 01-03-2008 |  |
| 4552 | GG0000018 | GG0000018 | ct-00-23 O |  |
| 4536 | GG0000019 | GG0000019 | ct-00-23 O |  |

EXHIBIT __

PAGE __

EXHIBIT 34
PAGE 1143

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | GG0000019; GG0000017; GG0000022; GG0000011; GG0000025; GG0000090; GG0000092; GG0000008; GG0000014; | | | |
| 4528 | GG0000020 | GG0000020 | 11-07-2000 | |
| 4529 | GG0000021 | GG0000021 | | |
| 4529 | GG0000021 | GG0000021 | 11-16-2000 | |
| 4535 | GG0000022 | GG0000022 | ec-00-18 D | |
| 4545 | GG0000026 | GG0000026 | ep-01-10 S | |
| | GG0000027; GG0000028 | | | |
| 4547 | GG0000032 | GG0000032 | ep-01-26 S | |
| 4550 | GG0000042 | GG0000044 | ct-00-17 O | |
| 4553 | GG0000042 | GG0000052 | ct-00-17 O | |
| 4538 | GG0000056 | GG0000056 | | |
| 4540 | GG0000057 | GG0000059 | ep-01-06 S | |
| 4537 | GG0000069 | GG0000064 | ug-01-29 A | |
| 4531 | GG0000087 | GG0000087 | 01-03-2008 | |
| 4546 | GG0000093 | GG0000093 | ep-01-11 S | |
| 4532 | GG0000095 | GG0000095 | 01-03-2008 | |
| 4533 | GG0000096 | GG0000096 | 01-03-2008 | |
| 1176 | JG0000012B | JG0000001B | 00-00-1997 | |
| 1177 | JG0000012B | JG0000013B | 00-00-1998 | |
| 1178 | JG0000022B | JG0000022B | 04-00-1998 | |
| 1179 | JG0000030B | JG0000030B | 00-00-1999 | |
| 1134 | KMW-L0000425 | KMW-L0000425 | 10-01-2000 | |
| 1140 | KMW-L0000582 | KMW-L0000587 | | |
| | KMW-M0001646 | KMW-M0001652 | | |
| | KMW-M0001932 | KMW-M0001937 | | |
| | KMW-M0001948 | KMW-M0001951 | | |
| | KMW-M0002816 | KMW-M0002826 | | |
| | KMW-M0002830 | KMW-M0002843 | | |
| | KMW-M0002851 | KMW-M0002851 | | |
| | KMW-M0002909 | KMW-M0002909 | | |
| 1232 | KMW-M0005712 | KMW-M0005730 | 12-18-2000 | |
| 1235 | KMW-M0007645 | KMW-M0007647 | 11-07-2000 | |
| | KMW-M0007724 | KMW-M0007724 | | |
| | KMW-M0007725 | KMW-M0007725 | | |
| | KMW-M0007726 | KMW-M0007726 | | |
| | KMW-M0007728 | KMW-M0007728 | | |
| | KMW-M0007734 | KMW-M0007734 | | |

EXHIBIT
PAGE

**EXHIBIT 34**
**PAGE 1144**

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | KMW-M0007747 | KMW-M0007747 | | |
| | KMW-M0007764 | KMW-M0007764 | | |
| | KMW-M0007766 | KMW-M0007766 | | |
| | KMW-M0007788 | KMW-M0007788 | | |
| 1141 | KMW-M0007901 | KMW-M0007919 | | |
| | KS0006542 | KS0006569 | 00-00-2001 | |
| | M0000001 | M0000001 | 01-28-1998 | |
| 1329 | M0000125 | M0001171 | | |
| 0475 | M0000127 | M0000127 | 09-01-1998 | |
| | M0001438 | M0001441 | 11-00-1995 | |
| 0063 | M0001489 | M0001501 | 09-18-2000 | |
| 0010 | M0001489A | M0001505 | 06-18-2002 | |
| 0025 | M0001596 | M0001596 | 01-04-1999 | |
| 0416 | M0001600 | M0001601 | 10-12-2000 | |
| 0052 | M0001601 | M0001601 | 09-02-2002 | |
| 0027 | M0001604 | M0001604 | 10-19-2000 | |
| 0415 | M0001606 | M0001606 | 06-22-1989 | |
| | M0001607 | M0001607 | 07-05-1996 | |
| | M0001609 | M0001609 | 12-26-1998 | |
| 0013 | M0001613 | M0001614 | 12-11-1998 | |
| 0020 | M0001615 | M0001616 | 11-18-1998 | |
| 0026; 1505 | M0001621 | M0001621 | 01-04-1998 | |
| 0046 | M0001622 | M0001622 | 01-04-1999 | |
| 0414 | M0001627 | M0001627 | 06-19-1997 | |
| | M0001631 | M0001631 | 08-05-1996 | |
| 0024 | M0001636 | M0001637 | 11-06-1995 | |
| 1510; 2660 | M0001638 | M0001639 | 11-06-1995 | |
| | M0001645 | M0001645 | 03-05-1997 | |
| 0021 | M0001648 | M0001648 | | |
| 1502; 0022 | M0001649 | M0001650 | 10-23-1995 | |
| | M0001653 | M0001653 | 06-28-2000 | |
| 0034; 2652 | M0001654 | M0001655 | 10-19-2000 | |
| 1503 | M0001664 | M0001665 | 12-09-1998 | |
| 0028 | M0001666 | M0001666 | | |
| 0418 | M0001667 | M0001668 | 08-02-2004 | |
| 0353 | M0001714 | M0001738 | 03-21-1998 | |
| | M0001739 | M0001824 | 03-06-1999 | |

EXHIBIT _

PAGE _

**EXHIBIT 34**
**PAGE 1145**

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| 0049; 0472 | M0001808 | M0001824 | | |
| 0363 | M0001820 | M0001823 | | |
| 0011 | M0012536 | M0012539 | 07-18-2003 | |
| 0047 | M0012564 | M0012565 | 11-28-2003 | |
| 0048; 0262 | M0012566 | M0012566 | 06-00-1999 | |
| 0260 | M0012572 | M0012578 | 00-00-1999 | |
| 0273 | M0012579 | M0012586 | | |
| 0041 | M0012588 | M0012589 | 07-00-2000 | |
| 0250 | M0012700;M0012702 | M 0012700;M0012702 | 09-15-1995 | |
| | M0013211 | M0013217 | 08-30-2004 | |
| 0476 | M0013365 | M0013365 | | |
| 0356 | M0013392 | M0013393 | 07-31-2000 | |
| 0354 | M0013520 | M0013521 | 08-12-1999 | |
| 0361 | M0013654 | M0013654 | 04-07-2000 | |
| 0355 | M0013785 | M0013797 | 02-15-2000 | |
| 0274 | M0013834 | M0013839 | | |
| 0360 | M0013932 | M0013932 | 00-00-1997 | |
| 0352 | M0014007 | M0014007 | 02-28-1997 | |
| 0358 | M0014120 | M0014120 | 07-22-1996 | |
| 0351 | M0014218 | M0014221 | 00-00-1997 | |
| 0283 | M0014259 | M0014263 | 10-25-1999 | |
| 0286 | M0014264 | M0014272 | 11-17-1999 | |
| | M0014273 | M0014277 | 11-04-1999 | |
| 0256 | M0014279 | M0014282 | 11-04-1999 | |
| 0284 | M0014287 | M0014294 | | |
| 0285 | M0014303 | M0014321 | 11-02-1999 | |
| 0292 | M0014325 | M0014328 | 05-19-2000 | |
| 1148 | M0014331 | M0014331 | 08-14-2001 | |
| 0362 | M0014332 | M0014342 | 07-06-2000 | |
| | M0014344 | M0014347 | 07-07-2000 | |
| | M0014352 | M0014356 | 05-25-2000 | |
| | M0014367 | M0014368 | 01-00-1999 | |
| | M0014377 | M0014377 | 07-12-1999 | |
| 0295 | M0014778 | M0014778 | 04-16-1996 | |
| 0359 | M0015459 | M0015462 | 02-09-2001 | |
| 0294 | M0016567 | M0016583 | 07-18-2000 | |
| | M0016587 | M0016594 | 02-10-2000 | |
| 0446 | M0016613 | M0016509 | 10-15-1999 | |
| 0422 | M0016816 | M0016824 | 04-21-2000 | |

EXHIBIT _____
PAGE _____

EXHIBIT 34
PAGE 1146

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0016908 | M0016908 | | |
| 1302 | M0017262 | M0016981 | 10-18-2000 | |
| 0545 | M0019162;M0030839 | M0019365;M0030841 | 03-26-2007 | |
| | M0031292 | M0031380 | 03-04-2004 | |
| | M0032505 | M0032505 | 00-00-2000 | |
| | M0032506 | M0032506 | 00-00-2000 | |
| | M0032507 | M0032507 | 00-00-2000 | |
| | M0032508 | M0032508 | 00-00-2000 | |
| | M0032529 | M0032529 | 00-00-2001 | |
| | M0032530 | M0032530 | 00-00-2001 | |
| | M0032531 | M0032531 | 00-00-2001 | |
| | M0032532 | M0032532 | 00-00-2001 | |
| | M0032533 | M0032533 | 00-00-2001 | |
| 0388 | M0032796 | M0032811 | 00-00-2001 | |
| 0441 | M0032812 | M0032914 | 05-21-2000 | |
| | M0033386 | M0033386 | 03-01-1999 | |
| | M0033433 | M0033434 | 00-00-2000 | |
| | M0033531 | M0033531 | 00-00-2001 | |
| | M0033534 | M0033534 | 00-00-2001 | |
| | M0033535 | M0033535 | 00-00-2001 | |
| | M0033536 | M0033536 | 00-00-2001 | |
| | M0033537 | M0033537 | 00-00-2001 | |
| | M0033538 | M0033538 | 00-00-2001 | |
| | M0033539 | M0033539 | 00-00-2001 | |
| 0442 | M0033597 | M0033597 | | |
| 0428 | M0033683 | M0033796 | 01-12-2000 | |
| 0445 | M0033808 | M0033813 | | |
| 0427 | M0034338 | M0034342 | 02-22-1999 | |
| 0429 | M0034343 | M0034350 | 00-00-2001 | |
| 0436 | M0034363 | M0034363 | | |
| 0430 | M0034366 | M0034421 | 03-24-2000 | |
| | M0038234 | M0038234 | | |
| | M0038712 | M0038720 | 08-08-2000 | |
| 0439 | M0038914 | M0038916 | | |
| 0437 | M0038919 | M0038919 | 01-05-1999 | |
| 0440 | M0038920 | M0038921 | | |
| 0426; 0435 | M0038924 | M0038938 | | |
| 0438 | M0038951 | M0038951 | | |
| 0444 | M0038952 | M0038956 | | |
| | M0041024 | M0041024 | 10-04-2000 | |

EXHIBIT ___
PAGE ___

EXHIBIT 34
PAGE 1147

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| 0431 | M0041036 | M0041037 | 12-14-2000 | |
| | M0041352 | M0041388 | 03-12-2001 | |
| 0544 | M0041479 | M0041479 | 00-00-2004 | |
| 1293 | M0041531 | M0041595 | 12-15-2003 | |
| | M0042828 | M0042829 | 04-26-2005 | |
| | M0042931 | M0042933 | 09-12-2002 | |
| | M0043147 | M0043156 | 05-12-2005 | |
| | M0043818 | M0043819 | 09-30-2003 | |
| 4583A | M0045646 | M0045707 | 12-15-2003 | |
| | M0045868 | M0045868 | 00-00-2004 | |
| | M0046065 | M0046067 | 05-03-2005 | |
| | M0046392 | M0046396 | 10-17-2002 | |
| | M0046397 | M0046466 | 01-09-2004 | |
| | M0046929 | M0046954 | 09-30-1997 | |
| | M0047682 | M0047684 | 10-16-2001 | |
| | M0047716 | M0047716 | | |
| | M0048021 | M0048045 | 06-27-2002 | |
| 1291 | M0048064 | M0048064 | 04-07-2003 | |
| | M0048251 | M0048257 | 09-30-2005 | |
| | M0048261 | M0048281 | 00-00-2005 | |
| 1656 | M0049126 | M0049126 | 12-07-1999 | |
| 1657 | M0049129 | M0049129 | 11-02-1999 | |
| | M0049421 | M0049455 | 03-17-2004 | |
| | M0049752 | M0049796 | | |
| | M0049880 | M0049907 | 08-10-2004 | |
| | M0050054 | M0050126 | 03-10-2004 | |
| 1650 | M0052985 | M0052991 | 10-28-2004 | |
| | M0053574 | M0053577 | 06-09-2005 | |
| | M0054125 | M0054131 | 12-06-2004 | |
| | M0055002 | M0055003 | 05-20-2006 | |
| | M0055319 | M0055319 | 04-27-2004 | |
| | M0055362 | M0055364 | 07-30-2003 | |
| | M0057464 | M0057468 | 01-30-2003 | |
| | M0057469 | M0057470 | | |
| | M0057471 | M0057472 | | |
| | M0057478 | M0057481 | | |
| | M0057520 | M0057524 | 06-02-2004 | |
| | M0059001 | M0059193 | 00-00-1987 | |
| | M0059194 | M0059385 | 06-20-1905 | |
| | M0059386 | M0059578 | 06-21-1905 | |
| | M0059579 | M0059580 | 10-30-2006 | |

EXHIBIT
PAGE

EXHIBIT 34
PAGE 1148

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0059581 | M0059582 | 10-30-2006 | |
| | M0059583 | M0059584 | 10-30-2006 | |
| | M0059585 | M0059586 | 10-30-2006 | |
| | M0059587 | M0059588 | 10-30-2006 | |
| | M0059589 | M0059590 | 10-30-2006 | |
| | M0059591 | M0059592 | 10-30-2006 | |
| | M0059593 | M0059594 | 10-30-2006 | |
| | M0059595 | M0059596 | 10-30-2006 | |
| | M0059597 | M0059598 | 10-30-2006 | |
| | M0059599 | M0059600 | 10-30-2006 | |
| | M0059601 | M0059602 | 10-30-2006 | |
| | M0059603 | M0059604 | 10-30-2006 | |
| | M0059605 | M0059606 | 10-30-2006 | |
| | M0059607 | M0059608 | 10-30-2006 | |
| | M0059685 | M0059685 | 01-04-1999 | |
| | M0059691 | M0059692 | 11-07-2006 | |
| | M0059693 | M0059693 | 01-04-1999 | |
| | M0061968 | M0062032 | 06-20-2001 | |
| | M0062339 | M0062345 | 03-15-2003 | |
| 4587 | M0065305 | M0065305 | | |
| | M0065366 | M0065433 | 03-07-2005 | |
| | | M00065438 | | |
| | M0065491 | M0065538 | | |
| | M0065497 | M0065538 | 00-00-2004 | |
| | M0065557 | M0065558 | 07-19-2004 | |
| | M0065871 | M0065892 | 04-30-2004 | |
| | M0065903 | M0065927 | 02-04-2004 | |
| 1279 | M0066042 | M0066044 | 07-15-2002 | |
| | M0066048 | M0066050 | 12-1-2002 | |
| | M0066121 | M0066148 | 08-11-2004 | |
| | M0066490 | M0066493 | 11-01-2004 | |
| | M0066897 | M0066911 | 06-02-2005 | |
| 1655 | M0067056 | M0067057 | 08-17-1999 | |
| 2115 | M0067071 | M0067071 | 12-14-2003 | |
| | M0067072 | M0067074 | 12-03-2003 | |
| | M0067172 | M0067228 | 09-28-2005 | |
| | M0067287 | M0067304 | 04-13-2005 | |
| | M0067431 | M0067449 | 03-18-2004 | |
| 2304 | M0067480 | M0067486 | 06-29-2004 | |
| 1623 | M0067487 | M0067492 | 06-25-2004 | |
| | M0069084 | M0069086 | | |

EXHIBIT ___
PAGE ___

EXHIBIT 34
PAGE 1149

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0069538 | M0069540 | 05-10-2005 | |
| | M0069583 | M0069586 | 05-00-2003 | |
| 1614 | M0069671 | M0069671 | 07-07-2005 | |
| 1615 | M0069672 | M0069672 | 07-07-2005 | |
| | M0069734 | M0069735 | 07-18-2005 | |
| | M0069736 | M0069736 | 12-01-2005 | |
| | M0069833 | M0069861 | 03-22-2005 | |
| | M0070385 | M0070386 | 02-17-2002 | |
| | M0070798 | M0070804 | 05-10-2005 | |
| | M0070847 | M0070881 | | |
| 1612 | M0071073 | M0071097 | 03-24-2003 | |
| 4586 | M0072014 | M0072060 | 08-27-2003 | |
| | M0072449 | M0072450 | 01-21-2005 | |
| | M0073814 | M0073815 | 04-14-2005 | |
| 1274 | M0073997 | M0073998 | 12-02-2002 | |
| | M0074131 | M0074132 | 04-21-2004 | |
| 1195, 4429 | M0074307 | M0074396 | | |
| | M0074373 | M0074382 | | |
| 6302 | M0074397 | M0074402 | 09-09-2003 | |
| | M0074398 | M0074399 | 09-09-2003 | |
| 1194 | M0074400 | M0074400 | | |
| | M0074401 | M0074402 | 08-05-2002 | |
| | M0074421 | M0074421 | 06-10-2003 | |
| | M0074429 | M0074429 | | |
| | M0074509 | M0074510 | 07-08-2003 | |
| | M0074513 | M0074514 | 07-08-2003 | |
| | M0074517 | M0074521 | 07-07-2003 | |
| | M0074534 | M0074535 | 07-08-2003 | |
| 0474 | M0074538 | M0074551 | 08-01-2003 | |
| 1301 | M0074601 | M0074601 | 07-23-2003 | |
| | M0074634 | M0074636 | | |
| | M0074697 | M0074697 | 12-06-2000 | |
| | M0075007 | M0075008 | 09-17-2004 | |
| | M0075096 | M0075100 | 09-21-2004 | |
| | M0075108 | M0075110 | 09-21-2004 | |
| | M0077580 | M0077580 | 04-12-2005 | |
| | M0077581 | M0077583 | 07-29-2005 | |
| | M0077584 | M0077586 | 12-12-2005 | |
| | M0077587 | M0077589 | 08-09-2005 | |
| | M0077590 | M0077595 | 07-19-2005 | |

EXHIBIT ___

PAGE ___

**EXHIBIT 34**
**PAGE 1150**

4/1/2008

Page 15

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0078109 | M0078169 | 00-00-2005 | |
| 4582; 1811 | M0078511 | M0078512 | | |
| | M0078518 | M0078519 | 12-15-2003 | |
| | M0079065 | M0079066 | 11-28-2004 | |
| 0443 | M0079182 | M0079182 | 09-14-1998 | |
| | M0079199 | M0079200 | 07-04-1997 | |
| | M0079201 | M0079202 | 07-04-1997 | |
| | M0079231.03029 | M0079231.03029 | 03-23-2004 | |
| | M0079231.03224 | M0079231.03224 | 05-13-2004 | |
| | M0079231.03225 | M0079231.03226 | 05-11-2004 | |
| 0389 | M0079340 | M0079359 | 03-31-2004 | |
| | M0079342 | M0079343 | | |
| | M0079351 | M0079357 | 05-20-2006 | |
| 1303 | M0079358 | M0079358 | 03-24-2003 | |
| | M0079359 | M0079359 | 12-00-2004 | |
| | M0079495 | M0079504 | 03-01-2003 | |
| | M0079634 | M0079634 | 04-15-2004 | |
| 1610 | M0079672 | M0079675 | 03-06-2003 | |
| | M0079709 | M0079710 | | |
| 1619; 2102; 2517; 2301; 1807; 4593 | M0079731 | M0079758 | 04-15-2004 | |
| | M0079759 | M0079759 | 10-24-2002 | |
| | M0079760 | M0079760 | 10-24-2002 | |
| 1272 | M0079761 | M0079764 | 08-16-2002 | |
| 2109; 1805; 4582 | M0079765 | M0079771 | 11-14-2003 | |
| 1601; 1286 | M0079797 | M0079797 | 04-05-2002 | |
| | M0079806 | M0079806 | 08-12-2005 | |
| | M0079807 | M0079807 | 08-03-2005 | |
| 1808; 4591; 2103 | M0079846 | M0079847 | 04-02-2004 | |
| 2101; 1806 | M0079848 | M0079855 | 03-16-2004 | |

EXHIBIT ___
PAGE ___

EXHIBIT 34
PAGE 1151

Case 2:04-cv-09049-DOC-RNB   Document 3090-6   Filed 04/14/08   Page 105 of 115   Page ID #:52830

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| 1813; 1611 | M0079856 | M0079863 | 03-15-2003 | 03-15-2003 |
|  | M0079871 | M0079874 | 09-25-2002 |  |
|  | M0079957 | M0079962 | 03-16-2004 |  |
|  | M0079991 | M0080018 | 08-07-2002 |  |
| 2105 | M0080055 | M0080065 | 02-08-2004 |  |
|  | M0080091 | M0080100 | 07-07-2005 |  |
| 4584 | M0080101 | M0080110 | 12-22-2004 |  |
|  | M0080111 | M0080120 | 06-10-2005 |  |
|  | M0080136 | M0080136 | 03-29-2005 |  |
|  | M0080249 | M0080258 | 11-03-2004 |  |
|  | M0080259 | M0080268 | 03-04-2005 |  |
| 1620 | M0080269 | M0080274 | 07-15-2004 |  |
|  | M0080275 | M0080309 | 07-14-2004 |  |
|  | M0080379 | M0080388 | 03-04-2005 |  |
| 1819 | M0080471 | M0080472 | 10-06-2004 |  |
|  | M0080491 | M0080492 | 06-19-2003 |  |
|  | M0080504 | M0080505 | 09-19-2003 |  |
|  | M0080507 | M0080508 | 02-05-2004 |  |
| 4588 | M0082011 | M0082018 | 10-26-2003 |  |
| 2107 | M0082020 | M0082021 | 10-12-2004 |  |
| 1816 | M0082027 | M0082028 | 12-05-2003 |  |
| 2114 | M0082032 | M0082032 | 12-07-2003 |  |
| 1820 | M0082033 | M0082033 |  |  |
|  | M0082064 | M0082064 | 11-05-2004 |  |
| 4585 | M0082065 | M0082065 | 09-24-2005 |  |
| 1815 | M0082066 | M0082067 | 03-04-2005 |  |
| 4583B | M0082090 | M0082099 | 10-20-2004 |  |
|  | M0082100 | M0082110 | 10-20-2004 |  |
|  | M0082111 | M0082120 | 08-25-2004 |  |
|  | M0082121 | M0082137 | 03-09-2004 |  |
| 1285; 1812 | M0082139 | M0082146 | 08-11-2003 |  |
| 1277 | M0082147 | M0082153 | 01-09-2002 |  |
|  | M0082169 | M0082179 | 10-20-2004 |  |
|  | M0082200 | M0082218 | 03-09-2004 |  |
|  | M0082217 | M0082226 | 12-22-2004 |  |
|  | M0082259 | M0082288 | 12-22-2004 |  |
|  | M0082296 | M0082306 | 10-20-2004 |  |
|  | M0082317 | M0082326 | 11-03-2004 |  |
|  | M0082391 | M0082393 | 02-05-2004 |  |

EXHIBIT ___
PAGE

EXHIBIT 34
PAGE 1152

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0082409 | M0082409 | 02-01-2005 | |
| | M0086053 | M0086071 | 10-15-2003 | |
| | M0086193 | M0086200 | 09-25-2003 | |
| 1624; 4558; 1809 | M0086591 | M0086592 | 09-25-2003 | |
| 1810 | M0086622 | M0086623 | | |
| 1812A | M0086631 | M0086676 | 08-11-2003 | |
| | M0087509 | M0087514 | 09-25-2003 | |
| | M0087515 | M0087575 | 00-00-2005 | |
| 1622 | M0087625 | M0087671 | 08-27-2003 | |
| | M0087936 | M0087939 | 09-25-2002 | |
| | M0088196 | M0088197 | 06-05-2002 | |
| 1278 | M0088292 | M0088293 | 07-29-2003 | |
| | M0088797 | M0088803 | 01-09-2002 | |
| | M0088827 | M0088833 | 07-28-2005 | |
| | M0089130 | M0089134 | 01-31-2003 | |
| | M0089462 | M0089464 | 01-30-2003 | |
| | M0089467 | M0089469 | 10-31-2002 | |
| | M0089605 | M0089624 | 08-02-2004 | |
| | M0089798 | M0089812 | 00-00-2004 | |
| | M0089848 | M0089848 | 06-13-2003 | |
| | M0089849 | M0089849 | 08-30-2003 | |
| | M0090302 | M0090303 | 09-15-2003 | |
| | M0090482 | M0090482 | 07-11-2003 | |
| | M0090650 | M0090652 | 12-17-2002 | |
| | M0090656 | M0090659 | 02-06-2003 | |
| | M0090660 | M0090661 | 10-01-2002 | |
| | M0090662 | M0090664 | 11-14-2002 | |
| | M0090686 | M0090697 | 09-04-2003 | |
| | M0091077 | M0091078 | 11-00-2002 | |
| | M0091569 | M0091587 | 00-00-2002 | |
| | M0093289 | M0093314 | 09-00-2005 | |
| | M0094684 | M0094706 | 01-03-2005 | |
| | M0094789 | M0095031 | 06-01-2002 | |
| | M0095227 | M0095233 | 05-14-2004 | |
| | M0095674 | M0095763 | 07-08-2003 | |
| | M0095764 | M0095788 | 00-00-2004 | |
| 1818 | M0095772 | M0095772 | 04-16-2004 | |
| 1275 | M0095814 | M0095817 | 01-09-2003 | |
| | M0096007 | M0096008 | 06-20-2002 | |

EXHIBIT
PAGE

EXHIBIT 34
PAGE 1153

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| 1270 | M0098008 | M0098007 | 06-20-2002 | |
| | M0098009 | M0098010 | 04-08-2004 | |
| 0419 | M0096210 | M0096211 | 04-06-2000 | |
| | M0096935 | M0096937 | 10-13-2003 | |
| 2663 | M0096936 | M0096937 | 11-13-1989 | |
| | M0096983 | M0096984 | 10-10-2003 | |
| | M0096986 | M0096987 | 10-10-2003 | |
| | M0097010 | M0097012 | 10-10-2003 | |
| | M0097413 | M0097414 | 11-13-1989 | |
| | M0097964 | M0097964 | | |
| | M0097983 | M0097983 | 08-12-2002 | |
| | M0097984 | M0097984 | 08-12-2002 | |
| | M0097991 | M0097991 | 08-21-2006 | |
| | M0097993 | M0097998 | 08-23-2006 | |
| | M0098006 | M0098006 | 03-31-2004 | |
| | M0098009 | M0098010 | 06-26-1994 | |
| | M0098011 | M0098012 | 06-26-1994 | |
| | M0098014 | M0098017 | 03-05-2004 | |
| | M0098020 | M0098020 | 03-23-2001 | |
| | M0098034 | M0098034 | 08-16-2004 | |
| 1513 | M0098035 | M0098035 | 01-19-1999 | |
| | M0098037 | M0098037 | 01-19-1999 | |
| | M0098038 | M0098038 | 01-19-1999 | |
| | M0098039 | M0098039 | 09-24-1999 | |
| | M0098040 | M0098040 | 09-26-1999 | |
| | M0098058 | M0098059 | 01-05-2004 | |
| | M0098060 | M0098061 | 01-05-2004 | |
| | M0098063 | M0098064 | 10-16-2001 | |
| | M0098065 | M0098065 | 10-21-2001 | |
| | M0098066 | M0098066 | 10-21-2001 | |
| | M0098079 | M0098081 | 03-22-2004 | |
| | M0098086 | M0098086 | 05-26-1992 | |
| | M0098088 | M0098089 | 05-26-1992 | |
| | M0098094 | M0098095 | 05-11-1992 | |
| | M0098101 | M0098101 | 05-17-1999 | |
| | M0098102 | M0098102 | 05-17-1999 | |
| | M0098106 | M0098113 | 02-04-2002 | |
| | M0098116 | M0098116 | 04-03-2000 | |
| | M0098118 | M0098118 | 04-03-2000 | |
| | M0098123 | M0098124 | | |
| | M0098125 | M0098126 | 05-20-1997 | |

EXHIBIT _

PAGE

EXHIBIT 34
PAGE 1154

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0098132 | M0098133 | 03-08-2004 | |
| | M0098205 | M0098205 | 10-29-1999 | |
| | M0098238 | M0098239 | 09-14-1990 | |
| | M0098240 | M0098241 | 09-14-1990 | |
| | M0098250 | M0098251 | 10-14-1999 | |
| | M0098252 | M0098253 | 03-11-1985 | |
| 2662; 1512 | M0098265 | M0098270 | 03-18-2004 | |
| | M0098266 | M0098270 | 03-22-2004 | |
| | M0098271 | M0098271 | 11-05-1998 | |
| | M0098272 | M0098272 | 11-05-1998 | |
| | M0098287 | M0098288 | 04-22-1996 | |
| | M0098318 | M0098319 | 03-30-1998 | |
| 1284 | M0098354 | M0098644 | 08-00-1998 | |
| | M0098476 | M 0098476 | 04-00-1999 | |
| | M0101146 | M0101146 | | |
| | M0101213 | M0101213 | | |
| | M0102349 | M 0102349 | 08-00-1999 | |
| 1602; 1281 | M0102778 | M0102809 | 08-07-2002 | |
| | M0108233 | M0108236 | 09-25-2002 | |
| | M0109194 | M0109196 | 11-02-2002 | |
| | M0109197 | M0109198 | 02-04-2002 | |
| | M0109199 | M0109200 | 02-18-2002 | |
| | M0109201 | M0109202 | 03-03-2002 | |
| | M0109203 | M0109204 | 03-15-2002 | |
| | M0109205 | M0109206 | 04-08-2002 | |
| | M0109207 | M0109208 | 04-08-2002 | |
| | M0109209 | M0109210 | 04-22-2002 | |
| | M0109211 | M0109212 | 04-21-2002 | |
| | M0109213 | M0109214 | 04-20-2002 | |
| | M0109215 | M0109216 | 05-06-2002 | |
| | M0109217 | M0109220 | 05-05-2002 | |
| | M0109221 | M0109222 | 05-17-2002 | |
| | M0109223 | M0109224 | 05-17-2002 | |
| | M0109225 | M0109226 | 05-22-2002 | |
| | M0109227 | M0109230 | 05-19-2002 | |
| | M0109233 | M0109235 | 06-03-2002 | |
| | M0109236 | M0109236 | 06-17-2002 | |
| | M0109237 | M0109238 | 06-17-2002 | |
| | M0109239 | M0109239 | 06-16-2002 | |

EXHIBIT

PAGE

EXHIBIT 34
PAGE 1155

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0109240 | M0109242 | 09-09-2002 | |
| | M0109243 | M0109244 | 09-09-2002 | |
| | M0109245 | M0109246 | 09-23-2002 | |
| | M0109247 | M0109248 | 09-23-2002 | |
| | M0109249 | M0109251 | 04-21-2002 | |
| | M0109252 | M0109253 | 03-15-2002 | |
| | M0109361 | M0109362 | 10-16-2003 | |
| | M0109707 | M0109719 | 07-30-2003 | |
| | M0109795 | M0109796 | 02-16-2004 | |
| | M0109800 | M0109801 | 04-19-2004 | |
| 0557 | M0110155 | M0110159 | 06-18-2001 | |
| 0559 | M0110160 | M0110164 | 06-18-2001 | |
| 0561 | M0110165 | M0110169 | 06-18-2001 | |
| 0565 | M0110174 | M0110178 | 03-25-2002 | |
| 0507 | M0110184 | M0110187 | 12-22-2003 | |
| 0513 | M0110188 | M0110192 | 12-22-2003 | |
| 0509 | M0110193 | M0110197 | 12-22-2003 | |
| 0511 | M0110198 | M0110202 | 12-22-2003 | |
| 0575 | M0110203 | M0110204 | 02-02-2004 | |
| 0574 | M0110205 | M0110206 | 03-01-2004 | |
| 0514 | M0110207 | M0110208 | 03-28-2005 | |
| 0506 | M0110209 | M0110210 | 03-28-2005 | |
| 0510 | M0110213 | M0110214 | 03-28-2005 | |
| 0512 | M0110215 | M0110216 | 03-28-2005 | |
| 0558 | M0110217 | M0110218 | 03-28-2005 | |
| 0560 | M0110219 | M0110220 | 03-28-2005 | |
| 0562 | M0110221 | M0110222 | 03-28-2005 | |
| 0564 | M0110223 | M0110224 | 03-28-2005 | |
| 0566 | M0110225 | M0110226 | 03-28-2005 | |
| 0572 | M0110227 | M0110228 | 02-01-2006 | |
| 0573 | M0110229 | M0110230 | 02-01-2006 | |
| 0567 | M0110231 | M0110232 | 01-25-2006 | |
| 0568 | M0110233 | M0110234 | 01-25-2006 | |
| 0569 | M0110235 | M0110236 | 01-25-2006 | |
| 0570 | M0110237 | M0110238 | 01-25-2006 | |
| 0571 | M0110239 | M0110240 | 01-25-2006 | |
| | M0110299 | M0110306 | 03-27-2000 | |
| | M0110365 | M0110372 | 02-23-2000 | |
| | M0110609 | M0110611 | 03-13-2000 | |
| 0477 | M0110639 | M0110642 | 06-18-2001 | |
| 0563 | M0128332 | M0128337 | 01-02-2001 | |

EXHIBIT
PAGE

EXHIBIT 34
PAGE 1156

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0128422 | M0128425 | 01-09-2003 | |
| | M0128452 | M0128457 | 12-22-2000 | |
| | M0130763 | M 0130763 | 09-00-1999 | |
| | M0130949 | M 0130949 | 11-00-1999 | |
| | M0131173 | M 0131173 | 12-00-1999 | |
| | M0131435 | M 0131435 | 03-00-2000 | |
| | M0131650 | M 0131650 | 04-00-2000 | |
| | M0131937 | M 0131937 | 05-00-2000 | |
| | M0132204 | M 0132204 | 06-00-2000 | |
| | M0132416 | M 0132416 | 08-00-2000 | |
| | M0132672 | M 0132672 | 09-00-2000 | |
| | M0132904 | M 0132904 | 11-00-2000 | |
| | M0133082 | M 0133082 | 12-00-2000 | |
| | M0133373 | M 0133373 | 03-00-2001 | |
| | M0133643 | M 0133643 | 04-00-2001 | |
| | M0133866 | M 0133866 | 08-00-2001 | |
| | M0134130 | M 0134130 | 12-00-2001 | |
| | M0134386 | M 0134386 | 09-00-2001 | |
| | M0145087 | M0145107 | 01-25-2005 | |
| 1271 | M0146971 | M0147019 | 07-00-2002 | |
| | M0147096 | M0147098 | 07-24-2002 | |
| | M0147099 | M0147120 | 07-08-2002 | |
| | M0147307 | M0147307 | 02-16-2001 | |
| 1273 | M0147530 | M0147533 | 09-18-2002 | |
| | M0147798 | M0147799 | 12-17-2002 | |
| | M0147808 | M0147809 | 10-01-2002 | |
| | M0147984 | M0147985 | 06-05-2002 | |
| | M0149028 | M0149028 | 11-21-2002 | |
| | M0149044 | M0149044 | | |
| | M0151168 | M0151206 | 04-01-2004 | |
| | M0151207 | M0151245 | 04-01-2004 | |
| | M0151246 | M0151284 | 04-01-2004 | |
| | M0151285 | M0151321 | 01-01-2007 | |
| | M0151322 | M0151341 | 04-01-2004 | |
| | M0151342 | M0151380 | 04-01-2004 | |
| | M0151381 | M0151418 | 01-01-2007 | |
| | M0151423 | M0151459 | 01-01-2007 | |
| | M0151463 | M0151500 | 11-22-2006 | |
| | M0151503 | M0151542 | 04-01-2004 | |
| | M0151504 | M0151504 | 04-01-2004 | |
| | M0151505 | M0151505 | | |

EXHIBIT
PAGE

EXHIBIT 34
PAGE 1157

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|--------|-------------|------------|------|------|
| | M0151506 | M0151506 | | |
| | M0151507 | M0151507 | | |
| | M0151508 | M0151508 | | |
| | M0151509 | M0151509 | | |
| | M0151510 | M0151510 | | |
| | M0151511 | M0151511 | | |
| | M0151512 | M0151512 | | |
| | M0151513 | M0151513 | | |
| | M0151514 | M0151514 | | |
| | M0151515 | M0151515 | | |
| | M0151516 | M0151516 | | |
| | M0151517 | M0151517 | | |
| | M0151518 | M0151518 | | |
| | M0151519 | M0151519 | | |
| | M0151520 | M0151520 | | |
| | M0151521 | M0151521 | | |
| | M0151522 | M0151522 | | |
| | M0151523 | M0151523 | | |
| | M0151524 | M0151524 | | |
| | M0151525 | M0151525 | | |
| | M0151526 | M0151526 | | |
| | M0151527 | M0151527 | | |
| | M0151528 | M0151528 | | |
| | M0151529 | M0151529 | | |
| | M0151530 | M0151530 | | |
| | M0151531 | M0151531 | | |
| | M0151532 | M0151532 | | |
| | M0151533 | M0151533 | | |
| | M0151534 | M0151534 | | |
| | M0151535 | M0151535 | | |
| | M0151536 | M0151536 | | |
| | M0151537 | M0151537 | | |
| | M0151538 | M0151538 | | |
| | M0151539 | M0151539 | | |
| | M0151540 | M0151540 | | |
| | M0151541 | M0151541 | | |
| | M0151542 | M0151542 | | |
| | M0151623 | M0151622 | 04-01-2004 | |
| | M0151655 | M0151654 | 01-01-2006 | |
| | M0151677 | M0151676 | 01-01-2006 | |
| | | M0151707 | 01-01-2006 | |

EXHIBIT

PAGE

**EXHIBIT 34**
**PAGE 1158**

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0151708 | M0151749 | 01-01-2007 | |
| 1703 | M0151750 | M0151762 | 09-26-2002 | |
| | M0151751 | M0151751 | 09-26-2002 | |
| | M0151752 | M0151752 | 09-26-2002 | |
| | M0151753 | M0151753 | 09-26-2002 | |
| | M0152472 | M0152472 | 06-27-2003 | |
| | M0152505 | M0152505 | 09-12-2005 | |
| | M0152726 | M0152726 | | |
| 2104 | M0152762 | M0152763 | 03-31-2004 | |
| | M0153000 | M0153000 | 06-24-2006 | |
| | M0153041 | M0153042 | | |
| | M0153045 | M0153046 | | |
| | M0163049 | M0153050 | | |
| | M0153113 | M0153113 | 09-17-2002 | |
| | M0153114 | M0153114 | 08-08-2002 | |
| | M0153511 | M0153744 | | |
| | M0155800 | M0155810 | 11-14-2001 | |
| | M0155938 | M0155938 | 08-15-2003 | |
| | M0155943 | M0155945 | 10-17-2002 | |
| | M0155946 | M0155947 | 10-24-2002 | |
| 1605 | M0156560 | M0156563 | 08-08-2002 | |
| | M0157430 | M0157442 | 10-06-2003 | |
| | M0158893 | M0158893 | | |
| 1609 | M0159261 | M0159316 | 03-00-2003 | |
| | M0159418 | M0159421 | 09-01-2004 | |
| | M0159422 | M0159425 | 09-01-2004 | |
| | M0159427 | M0159429 | 08-31-2004 | |
| | M0159538 | M0159540 | 12-14-2004 | |
| | M0163209 | M0163217 | 00-00-2000 | |
| | M0163785 | M0163788 | 02-17-2005 | |
| | M0163844 | M0163845 | 03-08-2004 | |
| | M0163846 | M0163848 | 03-08-2004 | |
| | M0163851 | M0163852 | 08-21-2004 | |
| | M0163853 | M0163854 | 06-21-2004 | |
| | M0163855 | M0163857 | 06-21-2004 | |
| | M0163858 | M0163860 | 08-23-2004 | |
| | M0163861 | M0163863 | 09-13-2004 | |
| | M0163864 | M0163866 | 11-13-2006 | |
| | M0163867 | M0163869 | 10-04-2004 | |
| | M0163870 | M0163872 | 01-31-2005 | |
| | M0163873 | M0163874 | 10-10-2005 | |

EXHIBIT ___
PAGE ___

EXHIBIT 34
PAGE 1159

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
|  | M0163875 | M0163876 | 10-31-2005 |  |
|  | M0163877 | M0163879 | 03-14-2005 |  |
|  | M0163880 | M0163882 | 04-25-2005 |  |
|  | M0163883 | M0163885 | 05-16-2005 |  |
|  | M0163886 | M0163888 | 09-26-2005 |  |
|  | M0163889 | M0163890 | 07-25-2005 |  |
|  | M0163891 | M0163892 | 09-26-2005 |  |
|  | M0163893 | M0163895 | 02-21-2005 |  |
|  | M0163896 | M0163898 | 11-13-2006 |  |
|  | M0163899 | M0163900 | 11-13-2006 |  |
|  | M0163901 | M0163904 | 06-27-2005 |  |
|  | M0163905 | M0163907 | 11-13-2006 |  |
|  | M0163908 | M0163910 | 11-13-2006 |  |
|  | M0163911 | M0163914 | 07-25-2005 |  |
|  | M0163915 | M0163918 | 08-29-2005 |  |
|  | M0163919 | M0163922 | 11-13-2006 |  |
|  | M0163923 | M0163926 | 01-31-2005 |  |
|  | M0163927 | M0163928 | 10-10-2005 |  |
|  | M0163929 | M0163931 | 02-21-2005 |  |
|  | M0163932 | M0163934 | 03-14-2005 |  |
|  | M0163935 | M0163937 | 04-04-2005 |  |
|  | M0163938 | M0163939 | 05-16-2005 |  |
|  | M0163940 | M0163942 | 06-27-2005 |  |
|  | M0163943 | M0163945 | 06-06-2005 |  |
|  | M0163946 | M0163949 | 07-25-2005 |  |
|  | M0163950 | M0163965 | 08-29-2005 |  |
|  | M0163956 | M0163958 | 09-26-2005 |  |
|  | M0163959 | M0163961 | 10-31-2005 |  |
|  | M0163962 | M0163963 | 02-20-2006 |  |
|  | M0163964 | M0163968 | 03-20-2006 |  |
|  | M0163969 | M0163973 | 03-27-2006 |  |
|  | M0163974 | M0163975 | 04-03-2006 |  |
|  | M0163976 | M0163977 | 04-18-2006 |  |
|  | M0163978 | M0163980 | 05-01-2006 |  |
|  | M0163981 | M0163982 | 10-23-2006 |  |
|  | M0163983 | M0163984 | 11-06-2006 |  |
|  | M0163985 | M0163987 | 08-28-2006 |  |
|  | M0163988 | M0163990 | 09-25-2006 |  |
|  | M0163991 | M0163992 | 09-25-2006 |  |
|  | M0163993 | M0163996 | 10-09-2006 |  |
|  | M0163997 | M0163999 | 09-11-2006 |  |

EXHIBIT

PAGE

**EXHIBIT 34**
**PAGE 1160**

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0164000 | M0164002 | 03-20-2006 | |
| | M0164003 | M0164004 | 03-06-2006 | |
| | M0164005 | M0164007 | 05-01-2006 | |
| | M0164008 | M0164009 | 07-31-2006 | |
| | M0164010 | M0164011 | 10-09-2006 | |
| | M0164012 | M0164014 | 11-06-2006 | |
| | M0164015 | M0164016 | 08-28-2006 | |
| | M0164017 | M0164019 | 09-11-2006 | |
| | M0164020 | M0164025 | 07-31-2006 | |
| | M0164026 | M0164030 | 03-06-2006 | |
| | M0164031 | M0164033 | 04-19-2006 | |
| | M0164034 | M0164038 | 03-20-2006 | |
| | M0164039 | M0164042 | 03-27-2006 | |
| | M0164043 | M0164045 | 04-10-2006 | |
| | M0164046 | M0164048 | 08-19-2006 | |
| | M0164049 | M0164050 | 07-05-2006 | |
| | M0164051 | M0164055 | 08-14-2006 | |
| | M0164056 | M0164058 | 04-03-2006 | |
| | M0164059 | M0164062 | 08-14-2006 | |
| | M0164063 | M0164066 | 03-13-2006 | |
| | M0164067 | M0164070 | 03-20-2006 | |
| | M0164071 | M0164073 | 04-03-2006 | |
| | M0164074 | M0164077 | 04-18-2006 | |
| | M0164078 | M0164079 | 06-19-2006 | |
| | M0164080 | M0164083 | 10-23-2006 | |
| | M0164084 | M0164087 | 08-28-2006 | |
| | M0164088 | M0164090 | 09-11-2006 | |
| | M0164091 | M0164093 | 07-31-2006 | |
| | M0164094 | M0164098 | 10-09-2006 | |
| | M0164199 | M0164227 | 11-11-2004 | |
| | M0164228 | M0164231 | 09-00-2004 | |
| | M0164260 | M0164263 | | |
| | M0164264 | M0164271 | 03-22-2004 | |
| | M0164272 | M0164272 | 03-05-2004 | |
| | M0164277 | M0164278 | 04-22-1996 | |
| | M0164310 | M0164310 | | |
| | M0167168 | M0167217 | 06-10-2004 | |
| | M0169569 | M0169569 | 08-12-2004 | |
| | M0177395 | M0177395 | 09-12-2004 | |
| | M0181694 | M0181694 | 02-20-2001 | |
| | M0181695 | M0181696 | 10-21-2002 | |

EXHIBIT

PAGE

EXHIBIT 34
PAGE 1161

4/1/2008

MGA/Bryant Preliminary Exhibit List

| Dep Ex | Bates Start | Bates Stop | Date | Desc |
|---|---|---|---|---|
| | M0181697 | M0181698 | 10-21-2002 | |
| | M0181699 | M0181701 | 10-21-2002 | |
| | M0181702 | M0181704 | 10-18-2002 | |
| | M0181705 | M0181705 | 10-06-2002 | |
| | M0181706 | M0181707 | 10-07-2002 | |
| | M0181708 | M0181710 | 10-04-2002 | |
| | M0181711 | M0181712 | 11-04-2002 | |
| | M0181713 | M0181715 | 11-03-2002 | |
| | M0181716 | M0181718 | 11-04-2002 | |
| | M0181719 | M0181721 | 02-04-2002 | |
| | M0181722 | M0181726 | 02-03-2002 | |
| | M0181727 | M0181728 | 02-15-2002 | |
| | M0181729 | M0181731 | 02-17-2002 | |
| | M0181732 | M0181733 | 03-04-2002 | |
| | M0181734 | M0181735 | 03-01-2002 | |
| | M0181736 | M0181739 | 03-03-2002 | |
| | M0181740 | M0181741 | 03-18-2002 | |
| | M0181742 | M0181743 | 03-18-2002 | |
| | M0181744 | M0181746 | 03-17-2002 | |
| | M0181747 | M0181748 | 04-08-2002 | |
| | M0181749 | M0181752 | 04-07-2002 | |
| | M0181753 | M0181756 | 04-21-2002 | |
| | M0181757 | M0181758 | 05-06-2002 | |
| | M0181759 | M0181760 | 05-08-2002 | |
| | M0181761 | M0181762 | 06-03-2002 | |
| | M0181763 | M0181764 | 08-12-2002 | |
| | M0181765 | M0181767 | 08-09-2002 | |
| | M0181768 | M0181768 | 08-09-2002 | |
| | M0181769 | M0181771 | 08-12-2002 | |
| | M0181772 | M0181773 | 08-26-2002 | |
| | M0181774 | M0181775 | 08-26-2002 | |
| | M0181776 | M0181777 | 08-26-2002 | |
| | M0181778 | M0181780 | 08-26-2002 | |
| | M0181781 | M0181782 | 09-05-2002 | |
| | M0181783 | M0181785 | 09-09-2002 | |
| | M0181786 | M0181788 | 09-23-2002 | |
| | M0181789 | M0181791 | 09-23-2002 | |
| | M0181792 | M0181793 | 10-07-2002 | |
| | M0181794 | M0181796 | 11-03-2002 | |
| | M0181797 | M0181800 | 02-04-2002 | |
| | M0181801 | M0181802 | 08-09-2002 | |

EXHIBIT

PAGE

EXHIBIT 34
PAGE 1162