Confidential – Attorneys' Eyes Only

costs associated with Bratz products as a result of my regression analysis to determine whether any of these remaining costs are attributable to Bratz products as a result of the large proportion of Bratz products to total MGA sales. Based on this additional analysis, I determined that an additional $126.3 million of costs are attributable to Bratz products. See Tab B1, Schedule 1.6 for analysis.

### c) Distributions to Shareholders for Income Taxes

MGA, like other Subchapter S Corporations, distributes to its shareholders amounts sufficient to allow the shareholders to pay income taxes on their share of MGA income. I have not been given access to underlying documents and have relied on documents which appear to have been prepared for litigation. Mr. Larian's tax returns would contain evidence regarding the taxes due on income from MGA, Mr. Larian's specific tax rate and whether the distributions were, in fact, made for tax purposes. Absent that data, I have used a shareholders' distribution report for the period of 2001 through 2005 provided by MGA to determine the amount of the distributions made to shareholders for the payment of taxes. To determine these amounts, I have calculated the portion of the tax distributions attributable to the income from Bratz products and reduced MGA's profits by such amounts for 2001 through 2005. Total amount distributed to shareholders for 2001 through 2005 is $130.2 million. See Tab B2, Schedule 6.0 for my analysis.

The following table summarizes MGA's revenues, costs and profits from Bratz for the period of 2001 through October 2007:

---

Supplies, Postage and Delivery Expense and Other Depreciation and Amortization. [Tab B1, Schedule 1.2, footnote (o)]

EXHIBIT 56
PAGE 1858

Confidential – Attorneys' Eyes Only

**Figure 4:  Summary of MGA's Revenue, Costs and Profits from Bratz**



A further breakdown of revenues, costs and profits earned by Bratz into different Bratz doll categories is provided at Tab B1, Schedules 1.1a through 1.1g.

**B.   Isaac Larian's benefit from sales of Bratz Products - $1,023,677,098**[31]

Isaac Larian's benefit from sales of Bratz Products is determined to be Mr. Larian's percentage of the value of Bratz plus MGA's distributions to Mr. Larian in excess of his tax obligations associated with his proportion of MGA's income.

The Larian Trusts own 81.82% of MGA's stock.[32]  As a result of the Bratz products, the value of the stock of MGA has increased significantly since the introduction of Bratz in 2001.  In order to calculate the benefit to Isaac Larian as a result of the sales and licensing of Bratz products, I determined the Bratz contribution to the fair value of the stock currently held by the Larian Trusts.  Since MGA is not a publicly traded company, there is no readily available stock price to use to value Isaac Larian's interest in MGA.  Therefore, I have determined the fair value

---

[31] Tab B2, Schedule 1.0
[32] See Deposition of Lisa Tonnu on January 17, 2008, page 76. [Tab E16]

Confidential – Attorneys' Eyes Only

of MGA stock attributable to the Bratz products. Fair value is the price at which an asset could be exchanged in a current transaction between knowledgeable, unrelated willing parties. Fair value does not include any increment of value resulting from cost savings normally associated with a strategic sale. I considered three generally accepted approaches to determine the fair value of MGA stock attributable to the Bratz products on December 31, 2007. These approaches are income, market and cost. I have assumed no potential cost savings in arriving at my opinion of fair value of Bratz. I will update this analysis if and when I receive full financial data for the entire year of 2007.

The following figure summarizes the results of my analysis and shows the appropriate weights assigned to each individual approach.

#### Figure 5: Value of MGA Stock Owned by Larian Trusts

| | Value | Weight | Weighted Value |
|---|---|---|---|
| Income Approach | $753,627,120 | 70% | $527,538,984 |
| Comparable Companies | $1,504,025,134 | 20% | $300,805,027 |
| Comparable Transactions | $1,166,120,563 | 10% | $116,612,056 |
| Bratz Enterprise Value | | 100% | $944,956,067 |
| 100% Equity Valuation of Bratz- Rounded | | $945,000,000 | |
| % Ownership of MGA Stock by Mr. Larian | | 81.82% | |
| Value of Stock Owned in MGA by Larian Trusts | | $773,199,000 | |

*Source: Tab B2, Schedule 1.0*

In my opinion, the income approach best represents the value of the on-going business as it allows for full consideration of circumstances unique to MGA. At the same time, the market approach in the form of comparable transaction analysis is least relevant because the degree of similarity between MGA and comparable acquisitions is hard to gauge, as every company's financial and business environment is unique. As a result, I have assigned a weight of 70 % to the income approach, 20% to the comparable companies analysis and 10% to the comparable transactions analysis. I also considered the cost approach but did not find it to be an appropriate measure of value of MGA's on-going business.

A 2007 List of Isaac and Angela Larian Assets attaches a value of $1,636,380,000 to his pro-rata share of MGA Entertainment Inc.[33] With Mr. Larian's interest of 81.82% share of MGA,

---

[33] Isaac and Angela Larian List of Assets, 2007 [Tab E81.MGA3787279].

EXHIBIT _

PAGE _____

EXHIBIT 56
PAGE 1860

12

Confidential – Attorneys' Eyes Only

this implies a total company value of $1,999,975,556.[34]  Separating MGA's value into Bratz and non-Bratz based on gross revenues, the implied value of Bratz is $1.1 billion.[35]  This is greater than the $931 million value I derive from my analysis.  Since I was not provided with information regarding the methodology used to calculate the value assigned to MGA Entertainment on Mr. Larian's list of assets, I'm unable to provide any comments with respect to the value or methodology used.

The following section is a discussion of my methodology.

### 1.  Income Approach

#### a)  Summary

I performed a valuation of the Bratz contribution to the value of MGA stock based on the income approach in the form of a discounted cash flow ("DCF") analysis.  To determine the Bratz enterprise value as of December 31, 2007, I forecasted MGA's future cash flows from Bratz and then valued these cash flows as of the date of the valuation by applying an appropriate discount rate.  I also calculated a terminal value at the end of my forecast period.  In my analysis, I relied on MGA's historical and projected financial statements.  In addition, I reviewed historical and projected sales growth for other companies in the toy industry to ensure that MGA's forecast appears reasonable in light of the industry.  Based on my DCF analysis, the fair value of Bratz on December 31, 2007, was $753,627,120[36]

#### b)  Methodology

In determining the value of the Bratz enterprise using the DCF method, I prepared a DCF model that calculates MGA's three year projected cash flows for Bratz from 2008 through 2010 and the Bratz terminal value at December 31, 2010.  These cash flows and terminal value are discounted to the valuation date using a discount rate of 11%[37].  The following is a more detailed description of the methodology and assumptions used in the DCF.

---

[34] [$1,636,380,000/81.82%] = $1,999,975,556
[35] Multiply Total Implied Company Value ($2.0 B) by Percentage Share of Bratz Revenues in 2007 of 57%. [Tab B1, Schedule 2.1].
[36] See Tab B2, Schedule 2.0
[37] See Tab B2, Schedule 3.0 for discount rate.

13

EXHIBIT —    **EXHIBIT 56**
             **PAGE 1861**
PAGE

Confidential -- Attorneys' Eyes Only

### (1) Revenue and Expense Projections

The starting point for the revenue projections is Bratz's 2006 actual revenues since I was only provided with 10 months of data for 2007. I projected the 2007 revenues based on sales decline in Bratz for the 10-months ending October 2007 compared with the 10-months ending October 2006. I projected Bratz forecasted sales growth at 2% each year. I consider these revised projections to be reasonable. I believe the long-term growth rate of Bratz is 2%, as discussed in detail in the Terminal Value section below.

Net Income from Bratz – The net income resulting from the sale of Bratz products is based on revenues less incremental expenses associated with Bratz products. Incremental expenses are generally based on the average of 2005 and 2006 expenses from my analysis of Bratz revenues, expenses and profits, as described above.

I also include distributions to shareholders to derive net income. The amount is based on the historical tax payments as a percentage of net income for 2002 through 2004.

See Tab B2, Schedule 2.1 for detail.

### (2) Adjustments to income to calculate free cash flow

Net income projections described above include non-cash charges incurred by MGA. It is necessary to adjust for such charges in order to determine "free cash flow," or the cash flow that would be available to the owner of the enterprise. Free cash flow is calculated by adding depreciation and amortization back to the net income and subtracting capital expenditures and investment in working capital.

Capital expenditures are projected at a constant rate of 2.6% of sales, which is the average level of capital expenditures to revenue over the previous six year period from 2001 through 2006 for MGA.[38]

Depreciation is assumed to remain constant at 100% of capital expenditures. This is considered reasonable given the rate of depreciation to capital expenditures for 2004 through 2006[39] and that the majority of depreciation expense is related to molds[40] which have a

---

[38] See Tab B2, Schedule 2.2
[39] See Tab B2, Schedule 2.2.
[40] See Tab B1, Schedule 4.2.

EXHIBIT __   **EXHIBIT 56**
**PAGE 1862**

PAGE _____

Confidential – Attorneys' Eyes Only

relatively short depreciable life.  Per review of the MGA Tooling Depreciation[41] report, almost all of the molds developed for Bratz products have an assigned depreciable life of 24 months.

Investment in working capital is calculated by assuming that certain key ratios will remain at their average 2005-2006 levels.  For instance, inventory turnover ratio, account receivable days outstanding, and account payable days outstanding are projected to remain constant.

### (3)  Terminal Value

The terminal value is the value of MGA's cash flows as a result of Bratz revenues beyond 2010 and is determined by capitalizing Bratz's 2010 cash flow.  The formula to perform this calculation is:

Terminal Value = [2010 cash flow x (1+ growth rate)] / (discount rate – growth rate)

I estimate an increase in MGA's cash flows as a result of Bratz of 2% per year (growth rate in above formula) in perpetuity.  This rate is considered reasonable given the historic growth rate in Bratz and per review of the historical and projected growth rates of other companies in the industry.[42]

### (4)  Discount Rate

I used the Capital Asset Pricing Model (CAPM) in order to determine the discount rate to discount future cash flows to the date of valuation.  The CAPM is a common rate used in valuation to determine the equity rate of return.  Since MGA has no debt attributable to Bratz, the equity rate is the discount rate.  In 2006, MGA obtained a $200 million revolving loan of which $150 million was outstanding as of December 31, 2006.[43]  This loan was primarily obtained to finance the acquisition of Little Tykes in 2006.[44]  Therefore, the loan is not related to the ongoing Bratz business and therefore is not considered in the calculation of the discount rate for cash flows from Bratz.  The resulting CAPM of 11% is calculated in Tab B2, Schedule 3.0.

---

[41] MGA Tooling Costs and Depreciation Report [Tab F38.MGA3720189 – Tooling Costs & Depreciation.xls].

[42] See Tab B2, Schedule 12.1.

[43] 2005 and 2006 MGA audited financial statements [Tab E24.MGA0868719].

[44] Lisa Tonnu Deposition, September 24, 2007 [Tab E121, page 102].

EXHIBIT _____

PAGE ___

**EXHIBIT 56
PAGE 1863**

Confidential – Attorneys' Eyes Only

### (5)  Summary of Income Approach

The following table summarizes the annual cash flows for Bratz from 2008 to 2010 plus the terminal value.  These amounts are discounted back to 12/31/2007 to determine Bratz's enterprise value.

**Figure 6: Discounted Cash Flow Analysis**

|  | Projected | | | |
|---|---|---|---|---|
|  | 2008 | 2009 | 2010 | Terminal Value |
| Free Cash Flow From Bratz | $ 127,848,486 | $   62,641,277 | $   63,894,102 | $   724,133,157 |
| Period | 0.50 | 1.50 | 2.50 | 3.00 |
| Discount Factor | 0.95 | 0.86 | 0.77 | 0.73 |
| Present Value | $ 121,370,085 | $   53,577,779 | $   49,237,152 | $   529,442,104 |
| | | | Bratz Enterprise Value | $   753,627,120 |

Source:  Tab B2, Schedule 2.0

### 2.  Market Approach

I have used two market approaches in determining the value of MGA stock attributable to Bratz: the comparable trading company approach and the comparable market transaction approach.  While both of these approaches use market information to derive Bratz's value, they use different information as the descriptions suggest.  The comparable trading company approach uses multiples derived from trading activity of public companies that most closely resemble MGA.  The comparable market transaction approach uses multiples derived from transactions that have occurred in MGA's industry.  While no two companies are exactly alike, I have selected companies that I believe to be most similar to MGA.  I have seen numerous documents produced by MGA that use a multiples approach to value MGA and various acquisition targets at different times.  The multiples used in my analysis described below are comparable to the multiples used throughout the analysis provided in the MGA production.  See Tab B1, Schedule 7 for a summary of valuation documents reviewed.  The following sections describe the methodologies I used to derive Bratz's value based on market data.

16

EXHIBIT

PAGE __

EXHIBIT 56
PAGE 1864

Confidential – Attorneys' Eyes Only

### a)   Comparable Trading Company Analysis

#### (1)   Summary

Based on my analysis of comparable publicly traded companies, the fair value of MGA attributable to Bratz on December 31, 2006 was $1,504,025,134, as illustrated in the following figure:

Figure 7:  Comparable Trading Company Analysis

| | BRATZ 2006 Calculated | Multiple Used | Value | Weighting | Weighted Value |
|---|---|---|---|---|---|
| Net Revenue | $675,525,182 | 1.6x | $ 1,060,574,536 | 30% | $   318,172,361 |
| EBITDA | $143,066,846 | 9.1x | $ 1,295,470,293 | 50% | $   647,735,147 |
| EBIT | $127,979,753 | 11.9x | $ 1,516,560,075 | 20% | $   303,312,015 |
| Implied Enterprise Value of Bratz | | | | | $ 1,269,219,522 |
| Control Premium | 2007 Average Across All Industries | | | | 18.5% |
| | | | Bratz Enterprise Value w/ Control Premium | | $ 1,504,025,134 |

*Source:  Tab B2, Schedule 4.0*

I assign this methodology a weight of 20% in my final determination of value.

#### (2)   Methodology

There are no companies that are exactly comparable to MGA and more specifically, the Bratz products in their rapid growth, diversification of products and product lines.  At best, there are companies that compete with MGA and the Bratz products or companies that are similar in that they sell toys.

I have made an independent search for companies most closely resembling MGA. Based on my research, among publicly traded companies, there are six that I would consider to be in some respect comparable to MGA.[45]  All of the companies used in my analysis except for Marvel are taken from Capital IQ's MGA competitor list and Yahoo! Finance's Industry Browser for the Toys & Games Industry[46].  From the list of MGA's public competitors provided by Capital

---

[45] See Tab B2, Schedule 4.0
[46] Source: Yahoo! Finance Industry Browser – Toys and Games.
   http://biz.yahoo.com/p/315conameu.html [Tab E85]

EXHIBIT.

PAGE ___

EXHIBIT 56
PAGE 1865

Confidential – Attorneys' Eyes Only

IQ and Yahoo! Finance, I excluded companies that did not have adequate current data available or were significantly less profitable than MGA. I have included Marvel in the list of comparables since Marvel's business line closely resembles that of MGA. MGA entered into a license agreement for Marvel's Super Hero products in 2006.[47] Two of the companies used in my analysis, Mattel and Hasbro, were also used by MGA in an MGA document titled, "Toy Industry Comparable Companies Analysis" that calculated an estimated enterprise value for MGA using the trading multiples of Mattel and Hasbro.[48]

For each of the six comparable companies used in my analysis, I gathered multiples of enterprise value to revenues, EBITDA and EBIT. I then applied the median of these multiples to corresponding sales, EBITDA and EBIT for the Bratz products for the last full year of data I have, 2006, as calculated in our incremental analysis in Tab B1, Schedule 1.1.

The value resulting from this analysis is the fair market value of a minority interest, and does not reflect the premium a hypothetical buyer would be willing to pay for the controlling interest. To account for this, I apply a "control premium" of 18.5% based on the premiums to unaffected stock price paid in control transaction for all industries during 2007.[49]

See Tab B2, Schedule 4.0 for detailed analysis.

### b) Comparable Transactions Analysis

#### (1) Summary

The comparable transactions analysis uses publicly available information on acquisitions to derive multiples that are then applied to MGA's Bratz results. As with the comparable company trading approach, I consider Revenues, EBIT and EBITDA multiples to be the most appropriate multiples to use in this type of analysis for the valuation of Bratz. This approach has its limitations as it uses actual transactions in the marketplace. If there is limited activity for comparable companies, this approach results in a valuation based on this limited information. While this limitation typically exists, I find it to be a useful approach despite its limitations. This approach results in an estimated enterprise value of Bratz of $1,166,120,563. Based on the

---

[47] Source: MGA Entertainment Press Release dated January 31, 2006. "MGA Entertainment Secures Multi-Year License for Die-Cast Vehicles Based Upon Marvel Super Hero Universe." [Tab E122]
[48] MGA Toy Industry Comparable Companies Analysis [Tab E32.MGA0236491-504].
[49] Source: Mergerstat / BVR Control Premium Study, 2007, All Industries, Mergerstat Control Premium Median Value [Tab E27].

Confidential – Attorneys' Eyes Only

described limitations, I assign this methodology a weight of 10% in my final determination of value.

### (2) Methodology

In summary, the methodology used was to identify relevant transactions that took place between January 1, 2001 and December 31, 2007, to obtain the Revenue, EBITDA and EBIT multiples and apply these multiples to Bratz's corresponding revenue, EBITDA and EBIT for 2006 as calculated in our full allocation analysis at Tab B1, Schedule 1.1.

The list of comparable transactions consists of two sets of M&A transaction searches performed on Capital IQ. All transaction information on Capital IQ is taken from public filings, trade journals, and press releases.[50] First, I performed a search on all transactions that closed on or after January 1, 2001 through December 31, 2007 where the acquirer is one of the six MGA public comparable companies identified above in section (i) Comparable Trading Company Analysis. This search returned 25 M&A transactions. For the second search, I compiled a list of all M&A transactions that closed on or after January 31, 2001 where the target company's primary SIC code was either 3942 (Dolls and Stuffed Toys) or 3944 (Games, Toys and Children's Vehicles). This search was further limited to transactions that included data needed for our comparables analysis. The second search returned an additional 32 transactions over the first search method. See further discussion of search criteria and results at Tab B2, Schedule 8.0 and Schedule 9.0. I also performed searches on Thomson Financial Mergers & Acquisitions and Mergerstat for information missing from Capital IQ.

Based on the two searches described above, I have only used transactions in my analysis where the target company's revenues exceed $100 million but were less than $2 billion for the last twelve month period, 100% of the company was purchased, and adequate information was available for my analysis of transaction multiples. See Tab B2, Schedule 8.0 for description of transactions used in analysis and further discussion of the transactions.

The following table shows the multiples used to calculate Bratz enterprise value.

---

[50] Source: Conversation with Capital IQ Representative

Confidential – Attorneys' Eyes Only

**Figure 8: Comparable Transactions Analysis**

|  | BRATZ 2006 Calculated | Median Multiple | Median Value | Weighting | Weighted Value |
|---|---|---|---|---|---|
| Net Revenue | $675,525,182 | 0.9x | $591,084,534 | 30% | $177,325,360 |
| EBITDA | $143,066,846 | 8.9x | $1,274,725,601 | 50% | $637,362,800 |
| EBIT | $127,979,753 | 13.7x | $1,757,162,011 | 20% | $351,432,402 |
|  |  |  | Implied Enterprise Value of Bratz |  | $1,166,120,563 |

*Source: Tab B2, Schedule 5.0*

See Tab B2, Schedule 5.0 for more detailed analysis of comparable transaction analysis.

### c) Cost Approach

The cost approach is generally not reflective of the value of an on-going business such as MGA and the Bratz products. Therefore, the cost approach was not used.

### 3. Distributions Received in Excess of Tax Payments Due

Per review of the W-2's issued by MGA Entertainment Inc. for the years ending December 31, 2004, 2005 and 2006, Isaac Larian received $1.4 million, $1.5 million and $1.5 million gross pay, respectively.[51] In addition to his wages for these periods, as the majority shareholders of the corporation, Mr. Larian and the Larian Trusts received large distributions from MGA. See Tab B2, Schedule 6.0 for detail of distributions made to shareholders. I have deducted the amount of distributions identified for income taxes from total distributions to determine the distributions made in excess of payments for taxes. I have further reduced the excess distributions received by Mr. Larian by the amount that the distributions are not related to the profits earned by Bratz. Mr. Larian's tax returns have not been provided to me. These tax returns would provide information regarding the taxes due on income from MGA and his specific tax rate. Absent those documents, I have accumulated the amount of the distributions made by MGA that were related to taxes by using the listing of distributions for 2000 through

---

[51] See MGA W-2's issued to Isaac Larian [Tab E123, MGA3787330, MGA3787323, and MGA3787316].

EXHIBIT __

PAGE _____

**EXHIBIT 56
PAGE 1868**

Confidential – Attorneys' Eyes Only

2005 provided by Lisa Tonnu at her deposition.[52]  This document provides an indication of distributions that were made to shareholders for tax purposes.  See Tab B2, Schedule 6.1 for listing of tax distributions.  I have included the value of distributions of $250,478,098[53] received from MGA in excess of tax payments as an additional component of the benefit to Isaac Larian as a result of Bratz.

Furthermore, I noted that there has been a significant increase in salaries and related expenses in 2007 as compared to 2006.  Salaries and related expenses for the full year of 2006 total $64,978,530[54] as compared to July Year to Date 2007 expenses of $62,976,576[55] for a seven month period.  In her deposition, Lisa Tonnu stated that this was likely due to the increase in the number of entities in the MGA corporate structure, including Little Tykes.[56]  However, I noted that salaries and related expenses for Little Tykes equaled approximately $4.7 million[57] in 2006 and $18.1 million[58] in 2007.  Therefore, Little Tykes does not appear to account for all of the rising expense.  I have not been provided with compensation information for Mr. Larian for 2007.  Therefore, I reserve the right to opine on the reasonableness of Mr. Larian's salary for the 2007 time period if presented with additional information.

### C.  Carter Bryant's benefit resulting from payments received from MGA in connection with Bratz is $35,825,449.

The calculation of the benefit to Carter Bryant as a result of Bratz is entirely related to the compensation he received as a consultant on Bratz products.  As discussed above, Carter Bryant had a consulting agreement with MGA for his work on Bratz.  I totaled all payments received by Carter Bryant as a result of the Bratz consulting agreement with MGA.  The total payments received by Carter Bryant beginning in 2000 through the fourth quarter of 2007 were $35,825,449.[59]

---

[52] List of Distributions Tab E34.MGA3787372-391].  Per Lisa Tonnu, this list is meant to capture all dividend distribution information. Deposition of Lisa Tonnu on January 17, 2008, pages 52-53 and 78-79. [Tab E16]

[53] Tab B2, Schedule 6.0.

[54] 2006 Consolidated Statement of Operations [Tab F1.MGA3710834 – 2006 Consolidated Statement of Operations.xls].

[55] July 2007 Year to Date Consolidated Statement of Operations [Tab F2.MGA3713507 – 2007 YTD Consolidated Statement of Operations.xls].

[56] January 24, 2008 Deposition of Lisa Tonnu, page 160 [Tab E120].

[57] 2006 Consolidated Statement of Operations [Tab F1.MGA3710834 – 2006 Consolidated Statement of Operations.xls].

[58] July 2007 Year to Date Consolidated Statement of Operations [Tab F2.MGA3713507 – 2007 YTD Consolidated Statement of Operations.xls].

[59] Tab B1, Schedule 7.2.

Confidential – Attorneys' Eyes Only

**D. Prejudgment interest on MGA's profits earned on the production, sales and licensing of Bratz:**

The following is the methodology I will use to calculate pre-judgment interest when asked.

1. Interest should be calculated based on MGA's cash flows from its infringing activities.

2. The appropriate prejudgment interest rate to apply to MGA's profits from Bratz is MGA's unsecured borrowing rate. Since MGA does not have any unsecured borrowings,[60] I assume MGA's unsecured borrowing rate is the prime rate.

3. Interest should be compounded monthly.

**E. Prejudgment interest on Isaac Larian's distributions received in excess of tax payments due:**

The following is the methodology I will use to calculate pre-judgment interest when asked.

1. Interest should be calculated based on Isaac Larian's cash flows from his infringing activities.

2. The appropriate prejudgment interest rate to apply to Isaac Larian's distributions received is his unsecured borrowing rate. However, since I have not been provided with Mr. Larian's unsecured borrowing rate, I assume his unsecured borrowing rate is the prime rate.

3. Interest should be compounded monthly.

**F. Prejudgment interest on Carter Bryant's payments received in connection with Bratz:**

The following is the methodology I will use to calculate pre-judgment interest when asked.

1. Interest should be calculated based on Carter Bryant's cash flows from his infringing activities.

---

[60] 2005 and 2006 Year End MGA Financial Statements [Tab E24.MGA0568710 and MGA0868719].

22

EXHIBIT ___

PAGE ___

EXHIBIT 56
PAGE 1870

Confidential – Attorneys' Eyes Only

2. The appropriate prejudgment interest rate to apply to Carter Bryant's payments received is his unsecured borrowing rate. However, since I have not been provided with Mr. Bryant's unsecured borrowing rate, I assume his unsecured borrowing rate is the prime rate.

3. Interest should be compounded monthly.

### G. Net Worth of MGA

I have been asked by counsel to calculate MGA's Net Worth had it not made the distributions to shareholders in excess of taxes due by shareholders on MGA's profits. Net worth, adjusting for distributions to shareholders in excess of taxes due by shareholders on MGA's profits, as of December 31, 2006 is $438,338,137.[61]

### H. Net Worth of Isaac Larian

MGA produced a document titled "Isaac and Angela Larian, List of Assets, 2007."[62] In this document, total assets less total liabilities equal $1,917,438,215. I have not been provided with adequate information to form an opinion regarding this value.

### I. Net Worth of Carter Bryant

Carter Bryant has testified that his net worth is approximately $23 million.[63] I have not bee provided with adequate information to form an opinion regarding this value.

### IV. Documents, Data and Other Information Considered

Volume 1, Tab C contains a complete list of documents I considered in forming my opinions. In addition, I have also had a discussion with Chuck Scothon, General Manager of Mattel's Girls Division.

### V. Potential Additional Analyses to Perform

My opinions are based on the information received as of the date of my report. I plan on updating my analysis with the most current data produced as of the date of my testimony. I understand that discovery is continuing and I may consider other data produced through discovery to determine whether such other data impact my opinions. I will consider any

---

[61] See Tab B2, Schedule 13.0

[62] Isaac and Angela Larian, List of Assets, 2007 [E81.MGA3787279].

[63] January 24, 2008 Deposition of Carter Bryant [Tab E96, page 1100].

23

EXHIBIT ___

PAGE ___

**EXHIBIT 56**
**PAGE 1871**

Confidential – Attorneys' Eyes Only

criticisms of my opinions or bases for my opinions brought to my attention at my deposition or offered by experts retained by counter-defendants. Any of this additional information or work may cause me to change my opinions.

I have not provided an opinion regarding the future damages that will be incurred by Mattel in the event that the court does not grant an injunction against MGA with regards to the copyrights in this case. If it is determined that I should provide such an analysis, I will supplement this report at the time the court requires this analysis to be relevant.

I have not addressed the issue of apportionment of the profits from Bratz as I understand that MGA has the burden of proof on that issue. I will comment upon MGA's apportionment of the profits from Bratz if they make such a calculation, at the appropriate time.

## VI.   Qualifications

Volume 1, Tab D contains my *curriculum vitae* which details my qualifications, including a listing of all my publications and testimony.

## VII.   Compensation

My current billing rate is $695 per hour.

## VIII.   Signature and Date

*Michael J Wagner*
_____

Michael J. Wagner
February 11, 2008

24

EXHIBIT _

PAGE

**EXHIBIT 56**
**PAGE 1872**

EXHIBIT 57

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 58

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 59

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 60

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 61

CALENDARED
RECEIVED

FEB 1 3 2008

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   JOHN E. TRINIDAD - #250468
6  jtrinidad@kvn.com
   AUDREY WALTON-HADLOCK- #250574
7  awaltonhadlock@kvn.com
   710 Sansome Street
8  San Francisco, CA  94111-1704
   Telephone: (415) 391-5400
9  Facsimile: (415) 397-7188

10 Attorneys for Plaintiff
   CARTER BRYANT
11

12             UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                   EASTERN DIVISION

15

16
   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
17                                       (consolidated with CV 04-9059 & 05-
                         Plaintiff,      2727
18
        v.                              CARTER BRYANT'S NOTICE OF
19                                      EXPERT DISCLOSURES
   MATTEL, INC. a Delaware              PURSUANT TO FED. R. CIV. P. 26
20 Corporation,

21                       Defendant.

22
   CONSOLIDATED WITH MATTEL,            Date Comp. Filed:  April 13, 2005
23 INC. v. BRYANT and MGA
   ENTERTAINMENT, INC. v.               Discovery Cut-Off:  Jan. 28, 2008
24 MATTEL, INC.                         Pre-Trial Conference: May 5, 2008
                                        Trial Date: May 27, 2008
25

26

27

28
                            2-1/06
                CARTER BRYANT'S NOTICE OF EXPERT DISCLOSURES
410489.02            PURSUANT TO FED. R. CIV. P. 26
                     CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 61
PAGE 2113

1    Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Carter Bryant

2  hereby discloses the following expert witnesses, as Bryant may offer these expert

3  witnesses at trial to present evidence under Federal Rules of Evidence 702, 703,

4  and/or 705.

5

6    Professor Mary Bergstein, Ph.D.
     Division of Liberal Arts
7    Rhode Island School of Design

8
     D. Jan Duffy
9    Management Practices Group

10
     Erich Joachimsthaler, Ph.D.
11   Vivaldi Partners

12
     Professor Peter Menell
13   Professor of Law
14   U.C. Berkeley - Boalt Hall School of Law

15   Paul K. Meyer
     Navigant Consulting
16

17   Debora Middleton
     Director of Creative Development
18   MGA Entertainment, Inc.

19
     Christina Tomiyama
20

21   Robert Tonner
     Tonner Doll Co.
22

23    The initial written reports of each of the foregoing expert witnesses

24  accompanying this disclosure are being concurrently served on Mattel's counsel by

25  MGA Entertainment, Inc.

26    Carter Bryant reserves the right to present evidence at trial through any

27  expert disclosed by any other party, without waiving any objections thereto.  Mr.

28  Bryant also reserves the right to name additional rebuttal experts.  Additionally,

1

410489.02

EXHIBIT 61
PAGE 2114

1  should other parties be permitted to identify any additional experts, Mr. Bryant

2  further reserves the right to notice further experts for the purpose of rebutting the

3  evidence presented by said additional experts. Finally, Mr. Bryant reserves the

4  right to identify additional experts as permitted by the Court.

5

6  Dated: February 11, 2008                          KEKER & VAN NEST, LLP

7

8

9                                          By: _____

MATTHEW M. WERDEGAR
Attorneys for Plaintiff
CARTER BRYANT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

410489.02

EXHIBIT 61
PAGE 2115

1

## PROOF OF SERVICE

2

3   I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

4

5

6   On February 11, 2008, I served the following document(s):

7

## CARTER BRYANT'S NOTICE OF EXPERT DISCLOSURES PURSUANT TO FED. R. CIV. P. 26

8

9   by E-MAIL VIA PDF FILE, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

10

11

12

John B. Quinn                                    Thomas J. Nolan
13   Michael T. Zeller                            Skadden Arps Slate Meagher & Flom
Quinn Emanuel Urquhart Oliver &                  300 South Grand Avenue, Suite 3400
14   Hedges, LLP                                  Los Angeles, CA 90071-3144
15   865 South Figueroa Street, 10th Floor        Tel:   213/687-5000
Los Angeles, CA 90017-2543                       Fax:   213/687-5600
16   Tel:   213/443-3000                          tnolan@skadden.com
17   Fax:   213/443-3100
johnquinn@quinnemanuel.com
18   michaelzeller@quinnemanuel.com

19

Alexander H. Cote
20   Overland Borenstein Scheper & Kim LLP
21   300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
22   Tel:   213/613-4660
23   Fax:   213/613-4656
acote@obsklaw.com
24

25   Executed on February 11, 2008, at San Francisco, California.

26   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
27

28                                          _Julie Selby_
                                            JULIE A. SELBY

EXHIBIT 61
PAGE 2116

1

## PROOF OF SERVICE

2

I am employed in the City and County of San Francisco, State of California

3 in the office of a member of the bar of this court at whose direction the following

service was made. I am over the age of eighteen years and not a party to the within

4 action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San

5 Francisco, California 94111.

6 On February 12, 2008, I served the following document(s):

7

## CARTER BRYANT'S NOTICE OF EXPERT DISCLOSURES

8 PURSUANT TO FED. R. CIV. P. 26

9 by **COURIER**, by placing a true and correct copy in a sealed envelope addressed

10 as shown below, and dispatching a messenger from Nationwide Legal, Inc. whose

address is 316 W. Second Street, Suite 705, Los Angeles, CA 90012, with

11 instructions to hand-carry the above and make delivery to the following during

12 normal business hours, by leaving the package with the person whose name is

shown or the person authorized to accept courier deliveries on behalf of the

13 addressee.

14

15 John B. Quinn                              Thomas J. Nolan  (via Fed Ex)

Michael T. Zeller                          Skadden Arps Slate Meagher & Flom

16 Quinn Emanuel Urquhart Oliver &           300 South Grand Avenue, Suite 3400

17 Hedges, LLP                               Los Angeles, CA 90071-3144

865 South Figueroa Street, 10th Floor      Tel:   213/687-5000

18 Los Angeles, CA  90017-2543              Fax:  213/687-5600

19 Tel:   213/443-3000                       tnolan@skadden.com

Fax:   213/443-3100

20 johnquinn@quinnemanuel.com

21 michaelzeller@quinnemanuel.com

22

Alexander H. Cote  (via Fed Ex)

23 Overland Borenstein Scheper & Kim LLP

300 S. Grand Avenue, Suite 2750

24 Los Angeles, California 90071

25 Tel:   213/613-4660

Fax:   213/613-4656

26 acote@obsklaw.com

27

Executed on February 12, 2008, at San Francisco, California.

28

410578.01

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 61
PAGE 2117**



1      I declare under penalty of perjury under the laws of the State of California

2 that the above is true and correct.

3                      JULIE A. SELBY

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

410578.01

EXHIBIT 61
PAGE 2118

EXHIBIT 62

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 63

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 64

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8                   UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

12           Plaintiff,                Consolidated with
                                       Case No. CV 04-09059
13                                     Case No. CV 05-02727
         vs.
14                                     THIRD NOTICE OF DEPOSITION OF
15  MATTEL, INC., a Delaware           MGA ENTERTAINMENT, INC.
    corporation,                       PURSUANT TO FEDERAL RULE OF
16                                     CIVIL PROCEDURE 30(B)(6)
             Defendant.
17                                     Discovery Cut-Off: October 22, 2007
                                       Pre-Trial Conference: January 14, 2008
18  AND CONSOLIDATED ACTIONS           Trial Date: February 12, 2008

19

20

21

22

23

24

25

26

27

28
                                       06|05|c7

07209/2048031.1
                                       THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT 64
PAGE 2240

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped. Mattel also reserves the right to use Livenote or other technology for real-time transcription of the testimony.

DATED: June 5, 2007            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
   Michael T. Zeller
   Attorneys for Mattel, Inc.

**EXHIBIT 64**
**PAGE 2241**

07209/2048031.

-1-

THIRD NOTICE OF DEPOSITION OF MGA

1

## **EXHIBIT A**

2

3    1.    "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any

4    of its current or former employees, officers, directors, agents, representatives, attorneys,

5    parents,    subsidiaries,    divisions,    affiliates,    predecessors-in-interest    and

6    successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

7    authority or subject to its control.

8    2.    "BRYANT" means Carter Bryant, any of his current or former

9    agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-

10   interest and successors-in-interest, and any other PERSON acting on his behalf,

11   pursuant to his authority or subject to his control.

12   3.    "BRATZ" means any project, product, doll or DESIGN ever known

13   by that name (whether in whole or in part and regardless of what such project, product

14   or doll is or has been also, previously or subsequently called) and any product, doll or

15   DESIGN or any portion thereof that is now or has ever been known as, or sold or

16   marketed under, the name or term "Bratz" (whether in whole or in part and regardless

17   of what such product, doll or DESIGN or portion thereof is or has been also, previously

18   or subsequently called) or that is now or has ever been sold or marketed as part of the

19   "Bratz" line, and each version or iteration of such product, doll or DESIGN or any

20   portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof"

21   also includes without limitation any names, fashions, accessories, artwork, packaging

22   or any other works, materials, matters or items included or associated therewith.

23   Without limiting the generality of the foregoing, and contrary to MGA's recent

24   assertions in connection with other Mattel discovery requests, the term "BRATZ" does

25   not and shall not require that there be a doll existing at the time of the event, incident or

26   occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of

27   Examination herein.

28

**EXHIBIT 64**
**PAGE 2242**

07209/2048031.

-2-

THIRD NOTICE OF DEPOSITION OF MGA

4.     "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.     "ANGEL" refers to those projects, products, dolls or DESIGNS, sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has claimed are the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734.  Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "ANGEL" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

6.     "IDENTIFY" or "IDENTITY" means the following:

(a)     With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)     With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)     With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account

EXHIBIT 64
PAGE 2243

THIRD NOTICE OF DEPOSITION OF MGA

number(s) for or otherwise associated with such account and the name of each holder, including without limitation each beneficial holder, of each such account.

(d) With reference to a STORAGE DEVICE, means the manufacturer name, brand, model name and number, serial number and all other manufacturer identifiers, and the technical specifications and capacities of such STORAGE DEVICE.

7. "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

8. "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

9. "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store or maintain DIGITAL INFORMATION.

10. "EMPLOYEE AGREEMENT" or "EMPLOYEE AGREEMENTS" means any agreement or contract between YOU and any of YOUR employees that purports to assign to, convey to or vest in YOU in any manner, whether in whole or in part, and whether expressly or by implication or in effect, any right, title or interest in any such employee's inventions, works, work product, ideas, concepts, discoveries, improvements, processes, developments, DESIGNS, know-how, data and/or formulae.

11. "FAMILY MEMBER" means any PERSON who at any time is, was or has been a parent, spouse, or child of another PERSON.

12. "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing,

**EXHIBIT 64**
**PAGE 2244**

THIRD NOTICE OF DEPOSITION OF MGA

07209/2048031.

mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

13.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

14.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

15.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning

EXHIBIT 64
PAGE 2245

THIRD NOTICE OF DEPOSITION OF MGA

07209/2048031.

all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1.    The IDENTITY, current or last known location, and disposition of each STORAGE DEVICE that each of the following PERSONS has used to create, generate, prepare, draft, send and/or receive any DOCUMENT or DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL at any time since January 1, 1999, including without limitation the date of acquisition and the date of disposition of each such STORAGE DEVICE:

> Isaac Larian
>
> Farhad Larian
>
> Paula Garcia
>
> BRYANT
>
> Kami Gillmour
>
> Veronica Marlow
>
> Mercedeh Ward
>
> Margaret Hatch-Leahy
>
> Jennifer Maurus
>
> Judy Rich
>
> Ninette Pembleton
>
> Kerri Brode
>
> Victoria O'Connor
>
> Aileen Storer
>
> Charles O'Connor
>
> Helene Bartels
>
> Colleen O'Higgins

**EXHIBIT 64**
**PAGE 2246**

THIRD NOTICE OF DEPOSITION OF MGA

1    Vivian Matt

2    Maureen Mullen

3    Rachel Harris

4    Barbara Malcolm

5    David Dees

6    Ben Ton

7    Dave Malacrida

8    2.    The IDENTITY, current or last known location, and disposition of

9    each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this

10   Notice, including without limitation the date of creation and the date of disposition of

11   each such backup or copy.

12   3.    YOUR search for and production of DOCUMENTS and DIGITAL

13   INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

14   4.    Each of YOUR EMPLOYEE AGREEMENTS since January 1,

15   1995, including without limitation the meaning, validity and enforcement of such

16   EMPLOYEE AGREEMENTS.

17   5.    Any requirement or practice by YOU, at any time since January 1,

18   1995, that YOUR employees sign or execute EMPLOYEE AGREEMENTS.

19   6.    YOUR statements to Christopher Palmeri in connection with the

20   *Business Week* article entitled "To Really Be A Player, Mattel Needs Hotter Toys,"

21   published on or about July 28, 2003, including without limitation in connection with the

22   statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around

23   in navel-bearing tops and hip-huggers."

24   7.    YOUR statements to Denise I. O'Neal in connection with the

25   *Chicago Sun-Times* article entitled "Bratz Packers Are What's Cool in Doll World,"

26   published on or about March 5, 2004, including without limitation in connection with

27   the statements that MGA's "creative team decided the name should be catchy and not

28

**EXHIBIT 64**
**PAGE 2247**

THIRD NOTICE OF DEPOSITION OF MGA

1  have more than six letters. Keeping with today's trend of making names more 'cool' by
2  changing the spelling, MGA executives decided to replace the 's' with a 'z.'"

3        8.    YOUR statements to Jeff Weiss in connection with the *San*
4  *Fernando Valley Business Journal* article entitled "Immigrant's Creative Company
5  Shakes Up Toy Industry," published on or about March 29, 2004, including without
6  limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

7        9.    The IDENTITY of each PERSON who YOU had perform, or who
8  YOU requested, asked or solicited to perform, any "test project" in advance of or in
9  consideration of employment by YOU since January 1, 1995, including without
10 limitation the IDENTITY of each such PERSON who was a MATTEL employee at the
11 time.

12       10.    YOUR relationship with Stephen Lee since April 1, 2004, including
13 without limitation any agreements or contracts between YOU and Stephen Lee.

14       11.    Payments of money or any other item of value that YOU have made
15 to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac Larian since
16 January 1, 1999, including without limitation (a) the amounts of such payment and the
17 equivalent dollar value of each of item of value, (b) the dates of such payment, (c) the
18 IDENTITY of each recipient of such payment, (d) the IDENTITY of each bank or
19 financial institution account to which such payment was made and (e) the reasons for
20 each such payment.

21       12.    Payments of money or any other item of value that YOU have made
22 to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad Larian since
23 January 1, 1999, including without limitation (a) the amounts of each such payment and
24 the equivalent dollar value of each of item of value, (b) the timing of each such
25 payment, (c) the IDENTITY of each recipient of each such payment, (d) the
26 IDENTITY of each bank or financial institution account to which such payment was
27 made and (e) the reasons for each such payment.

28

**EXHIBIT 64**
**PAGE 2248**

07209/2048031.

-8-

THIRD NOTICE OF DEPOSITION OF MGA

1          13.    Payments of money or any other item of value that YOU have made

2  to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad Zarabi since

3  January 1, 1999, including without limitation (a) the amounts of each such payment and

4  the equivalent dollar value of each of item of value, (b) the timing of each such

5  payment, (c) the IDENTITY of each recipient of each such payment, (d) the

6  IDENTITY of each bank or financial institution account to which such payment was

7  made and (e) the reasons for each such payment.

8          14.    The nature, extent and timing of work and services that Veronica

9  Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees provided to, or

10  were requested, solicited or proposed by, YOU at any time from January 1, 1999

11  through December 31, 2001, inclusive.

12          15.    Payments of money or any other item of value that YOU have made

13  to Veronica Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees

14  since January 1, 1999, including without limitation (a) the amounts of each such

15  payment and the equivalent dollar value of each of item of value, (b) the timing of each

16  such payment, (c) the IDENTITY of each recipient of each such payment, (d) the

17  IDENTITY of each bank or financial institution account to which such payment was

18  made and (e) the reasons for each such payment.

19          16.    The IDENTITY of each PERSON who is not, as of June 5, 2007, an

20  MGA employee and for whom or on behalf of whom YOU are paying, have paid or

21  have offered, promised or agreed to pay fees or costs in connection with this ACTION,

22  any contracts, agreements or other DOCUMENTS between YOU and such PERSON

23  pertaining thereto, the amounts YOU have so paid or agreed to pay to such PERSON

24  and the dates on which such payments were made.

25

26

27

28

**EXHIBIT 64**
**PAGE 2249**

EXHIBIT 65

# CONFORMED COPY

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:     (415) 774-2611
4   Facsimile:     (415) 982-5287

5

6

7

8

9

**FILED**

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

2007 SEP 26 PM 2: 28

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

10

11   CARTER BRYANT, an individual,

12        Plaintiff,

13        v.

14   MATTEL, INC., a Delaware corporation,

15        Defendant.

16

17

18

19   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
20   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.

21

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART AND
DENYING IN PART MATTEL'S
MOTION TO COMPEL MGA TO
PRODUCE WITNESSES PURSUANT
TO THIRD NOTICE OF DEPOSITION
UNDER RULE 30(b)(6); DENYING
REQUEST FOR SANCTIONS**

22

23                    ## I. INTRODUCTION

24        On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25   Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26   Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27   to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

28   
                                                                                           1

**EXHIBIT 65
PAGE 2250**

1  July 31, 2007, MGA submitted an opposition brief.  On August 6, 2007, Mattel submitted a reply

2  brief.  The matter was heard on September 24, 2007.  Having considered the motion papers and

3  the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4  sanctions is denied.

5  II. BACKGROUND

6      Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7  which specified eight topics for deposition.  Mattel served a Second Notice of Deposition of

8  MGA in February of 2007, which specified forty-six topics for deposition.  On June 5, 2007,

9  Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10  the present motion to compel.  The Third Notice specifies sixteen topics for deposition.  On June

11  29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12  conferred.  The parties were not able to resolve their disputes regarding four subject matters: hard

13  drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14  8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15  and Morad Zarabi (Topic 11-13).  The topics at issue are set forth below.

16  Hard Drives and Other Storage Devices

17      1.   The IDENTITY, current or last known location, and disposition of

18  each STORAGE DEVICE that each of the following PERSONS has used to

19  create, generate, prepare, draft, send and/or receive any DOCUMENT or

20  DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21  ANGEL at any time since January 1, 1999, including without limitation the date

22  of acquisition and the date of disposition of each STORAGE DEVICE:  Isaac

23  Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24  Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25  Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26  O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27  Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28

EXHIBIT 65
PAGE 2251

2.      The IDENTITY, current or last known location, and disposition of
each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of
this Notice, including without limitation the date of creation and the date of
disposition of each such backup or copy.

3.      YOUR search for and production of DOCUMENTS and DIGITAL
INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this
Notice.

### Prior Inconsistent Statements to the Press

6.      YOUR statements to Christopher Palmeri in connection with the
Business Week article entitled "To Really Be A Player, Mattel Needs Hotter
Toys," published on or about July 28, 2003, including without limitation in
connection with the statement that Isaac Larian "got the idea for Bratz after seeing
his own kids run around in navel-bearing tops and hip-huggers."

7.      YOUR statements to Denise I. O'Neal in connection with the
Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll
World," published on or about March 5, 2004, including without limitation in
connection with the statements that MGA's "creative team decided the name
should be catchy and not have more than six letters. Keeping with today's trend
of making names more 'cool' by changing the spelling, MGA executives decided
to replace the 's' with a 'z'"

8.      YOUR statements to Jeff Weiss in connection with the San
Fernando Valley Business Journal article entitled "Immigrant's Creative
Company Shakes Up Toy Industry," published on or about March 29, 2004,
including without limitation in connection with the statement that "[i]t was
Jason's idea for Bratz."

### "Test Projects" for MGA

9.      The IDENTITY of each PERSON who YOU had perform, or who

EXHIBIT 65
PAGE 2252

1  YOU requested, asked or solicited to perform, any "test project" in advance of or

2  in consideration of employment by YOU since January 1, 1995, including without

3  limitation the IDENTITY of each such PERSON who was a MATTEL employee

4  at the time.

5      Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi

6      11.    Payments of money or any other item of value that YOU have

7  made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8  Larian since January 1, 1999, including without limitation (a) the amounts of such

9  payment and the equivalent dollar value of each of item of value, (b) the dates of

10  such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11  IDENTITY of each bank or financial institution account to which such payment

12  was made and (e) the reasons for each such payment.

13     12.    Payments of money or any other item of value that YOU have

14  made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15  Larian since January 1, 1999, including without limitation (a) the amounts of each

16  such payment and the equivalent dollar value of each of item of value, (b) the

17  timing of each such payment, (c) the IDENTITY of each recipient of each such

18  payment, (d) the IDENTITY of each bank or financial institution account to

19  which such payment was made and (e) the reasons for each such payment.

20     13.    Payments of money or any other item of value that YOU have

21  made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22  Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23  such payment and the equivalent dollar value of each item of value, (b) the timing

24  of each such payment, (c) the IDENTITY of each recipient of each such payment,

25  (d) the IDENTITY of each bank or financial institution account to which such

26  payment was made and (e) the reasons for each such payment.

27  Zeller Decl., Ex. 23.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 65
PAGE 2253

1       Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2   9 and 11-13, and overruling all of MGA's objections and limitations. Mattel contends that the

3   testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4   cumulative or duplicative of any other deposition testimony already given in the case.

5       MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6   of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7   MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8   examining MGA any further. MGA further contends that Mattel has not established the requisite

9   good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10  its objections to the Third Notice. Lastly, MGA contends that Mattel has had many opportunities

11  to obtain, and in many cases has already obtained, the information it now moves to compel.

12                                 **III. STANDARDS**

13      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

16  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17      Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18  use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19  cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20  burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21  discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22  proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23  amount in controversy, the parties' resources, the importance of the issues at stake in the

24  litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25  26(b)(2)(C).

26      Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27  a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

**EXHIBIT 65**
**PAGE 2254**

1   30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2   court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3   Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P.

4   30(a)(2)(B).

5                                    IV. DISCUSSION

6          As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7   to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each

8   party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9   Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10  Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11  Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12  Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13  leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14  N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For

15  purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16  because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's

17  motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18  additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to

19  demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20  Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21  Fed.R.Civ.P.

22              Hard Drives and Other Storage Devices (Topics 1-3)

23          Topic 1 seeks information regarding the location and disposition of computer hard drives

24  or other storage devices used by specified MGA employees or contractors that contain or

25  contained documents related to the Bratz or Angel projects.  Topic 2 seeks the identification and

26  last known location of any backup, copy or image of the hard drives or storage devices identified

27  in Topic 1.  Topic 3 seeks information regarding MGA's search for and production of documents

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    6

EXHIBIT 65
PAGE 2255

1   and digital information from the hard drives and storage devices referenced in Topic 1.

2       MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3   irrelevant, and not reasonably calculated to lead to admissible evidence. MGA also objected to

4   Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5   less burdensome and less expensive means. Lastly, MGA objected to Topics 1-3 as unreasonably

6   cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7   Chief Information Officer for MGA.

8       Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9   26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10  privileged, that is relevant to the claim or defense of any party, including "the existence,

11  description, nature, custody, condition, and location of any books, documents or other things." A

12  portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13  information already provided by Mr. Lockhart. MGA designated Mr. Lockhart as a 30(b)(6)

14  witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15  information systems and application software, employees' electronic messaging systems, and

16  MGA's policies regarding the use of transportable media. Mr. Lockhart testified about the

17  location and disposition of MGA employees' hard drives and storage devices in general.

18      Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19  testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20  locations and dispositions of hard drives used by 24 named individuals. Mattel contends that the

21  testimony it seeks will enable it to assess MGA's production, including whether any documents

22  requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23  to Mattel. Mattel's Reply at p.7.

24      Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25  legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26  circumstances of this case. Mattel has accused MGA of obstructing discovery, and in particular

27  withholding Bryant's computer. There is no evidence, however, to suggest that MGA has refused

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 65
PAGE 2256

1  or failed to search for and produce responsive documents located on the hard drives of the other

2  individuals named in Topic 1. It is burdensome and expensive to prepare a witness to testify

3  about the locations and dispositions of hard drives used for 24 different individuals. The likely

4  benefit of undergoing such a burden and expense is doubtful. Furthermore, there are other less

5  burdensome and less expensive means of assessing whether MGA has complied with its

6  discovery obligations, including for example, document requests and interrogatories. Therefore,

7  Mattel's motion is denied as to Topics 1-3.

8  <u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

9  Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10  regarding who conceived of Bratz. MGA objected to Topics 6-8 as irrelevant and not reasonably

11  calculated to lead to admissible evidence. MGA also objected to Topics 6-8 to the extent that the

12  information sought is obtainable through other more convenient, less burdensome and less

13  expensive means. Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14  duplicative of information already provided by MGA and/or Carter Bryant. MGA also objected

15  to a deposition on these Topics "to the extent that the statements referenced above were not made

16  by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17  designation." Zeller Decl., Ex. 24.

18  Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19  because each of the statements identified therein was made by MGA's Chief Executive Officer,

20  Isaac Larian. Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21  articles identified in Topics 6-8, but contends that it is not attempting to re-depose him. Rather,

22  Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23  not be "sandbagged" at trial. Mattel's Reply at p.6.

24  MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25  Larian is the person who should be, and already has been, deposed about the statements identified

26  in Topics 6-8. MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27  one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT 65
PAGE 2257

1   MGA now. MGA also contends that Mattel could avail itself of other discovery methods, such as

2   interrogatories or requests for admission, to obtain further information about the publications

3   identified in Topics 6-8.

4          Topics 6-8 seek information relevant to the central issue in the case: who conceived of

5   Bratz. Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6   bind the corporation. The testimony Mattel now seeks is not unreasonably cumulative or

7   duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8   questioned Isaac Larian about only one of the articles identified in Topics 6-8. Further, the likely

9   benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10  6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11  seeks. Mattel's motion is granted as to Topics 6-8.

12                          "Test Projects" for MGA (Topic 9)

13         In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14  requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15  employment by MGA since January 1, 1995. MGA objected to Topic 9 as irrelevant, not

16  reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17  burdensome, and unreasonably cumulative and duplicative. MGA also objected to Topic 9 as

18  vague and ambiguous, particularly with respect to the term "test project." MGA also objected to

19  Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20  less burdensome and less expensive means. MGA also objected to Topic 9 as seeking

21  confidential, proprietary, and commercially sensitive information with no relevance to the

22  litigation.

23         When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24  of a project for" MGA. Zeller Decl., Ex. 29 at 9:19-20. He also referred to this "tryout" project

25  as a "test assignment." Id. at 515-516. In light of Bryant's testimony, Mattel's stated purpose of

26  Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27  working for MGA while employed by Mattel was no different than a supposedly standard

28

EXHIBIT 65
PAGE 2258

1  industry practice of having candidates for creative positions make artwork as part of the job
2  interview." Mattel's Motion at p.22.

3      MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in
4  its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains
5  objectionable as overbroad, reasoning that it would require MGA to provide information "with
6  regard to how it proceeded with hiring virtually every single employee hired since 1995."
7  MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require
8  MGA to have a designee review and potentially memorize information about every single person
9  who has applied for a job at MGA since 1995, particularly when Bryant only began working for
10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)
11  deposition to obtain the information called for in Topic 9.

12      Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their
13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard
14  industry practice of having candidates for creative positions make artwork as part of the job
15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In
16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin
17  working at MGA until the year 2000. Topic 9 is also objectionable because the information
18  sought is more appropriately obtained through a contention interrogatory, which would be
19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's
20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is
21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998
22  through 2004.

23      <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)</u>

24      In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac
25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to
26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible
27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 65
PAGE 2259

1    also objected to Topics 11-13 to the extent that the information sought is obtainable through

2    other, more convenient, less burdensome and less expensive means. MGA also objected to

3    Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4    relevance to the litigation.

5          Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6    Larian that involved the timing of the creation of Bratz. More specifically, Farhad Larian claimed

7    that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8    alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9    Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10   therefore seeks information that may establish their bias. Mattel also emphasizes that Isaac

11   Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12   claim for punitive damages, and may be used as impeachment evidence. Lastly, although Mattel

13   acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14   contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15         MGA contends that Topics 11-13 are not relevant to this lawsuit. In particular, MGA

16   objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17   parties nor witnesses in this action, and whose only connection is knowing people involved in the

18   lawsuit." MGA's Opposition at p. 13. With regard to payments to Isaac Larian, MGA contends

19   that Mattel already had the opportunity to ask him about payments during his deposition. MGA

20   also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21   this time. Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22   made to him would not establish his net worth because they represent only one of many sources

23   of income and do not account for his other assets and liabilities.

24         MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25   defenses in the case. Payments to Isaac Larian and Farhad Larian may also show possible bias

26   and be used for impeachment purposes. Moreover, MGA's payments to Isaac Larian may be

27   relevant to Mattel's claim for punitive damages. Payments to Isaac Larian are a component of his

28

EXHIBIT 65
PAGE 2260

1  net worth, even if they represent one source of income. The burden of producing such information

2  does not outweigh its relevance, taking into consideration the circumstances of this case.

3  Furthermore, there is no stay on discovery pertaining to punitive damages.  Accordingly, Mattel's

4  motion is granted as to Topics 11 and 12.

5       In contrast, MGA's payments to Morad Zarabi are irrelevant.  His only connection to this

6  litigation appears to be with the arbitration proceedings.  Any potential relevance of MGA's

7  payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8  affairs.  Mattel's motion is denied as to Topic 13.

9                              V. CONCLUSION

10       For the reasons set forth above, it is hereby ordered as follows:

11       1.     Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12       2.     Mattel's motion to compel is denied as to Topics 1-3, 9 and 13.  In lieu of taking a

13  deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14  regarding Topic 9 that is limited to the years 1998 through 2004.

15       3. Mattel's request for sanctions is denied.

16  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17  Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20  Dated: September _25_, 2007

21                              HON. EDWARD A. INFANTE (Ret.)
                                    Discovery Master

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    12

EXHIBIT 65
PAGE 2261

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

_____
Sandra Chan

EXHIBIT 65
PAGE 2262

EXHIBIT 66

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9                 UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 13  Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 14  vs. | |
| 15  MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S SUPPLEMENTAL INTERROGATORY PURSUANT TO ORDER DATED SEPTEMBER 25, |
| 16  | 2007 |
| 17  Defendant. | Discovery Cut-off: January 14, 2008 |
| 18  AND CONSOLIDATED ACTIONS | Pre-trial Conference: April 7, 2008 Trial Date: April 29, 2008 |
| 19  | Discovery Cutoff: March 3, 2008 |
| 20  | Final Pretrial Conf.: June 2, 2008 Trial Date: July 1, 2008 |
| 21  | |
| 22  | |

23  PROPOUNDING PARTY:    Mattel, Inc.

24  RESPONDING PARTIES:    MGA Entertainment, Inc.

25  SET NO.:    SUPPLEMENTAL

26

27

28

                         10-19

                              MATTEL'S SUPPLEMENTAL INTERROGATORY

EXHIBIT 66
PAGE 2263

1    Pursuant to <u>Federal Rule of Civil Procedure</u> 33 and the Court's Order dated

2  September 25, 2007, plaintiff Mattel, Inc. ("Mattel") hereby requests that MGA

3  Entertainment, Inc. answer the following Interrogatory separately and fully, in writing

4  and under oath, within 30 days after service hereof. MGA Entertainment, Inc. shall be

5  obligated to supplement its response to the Interrogatory at such times and to the extent

6  required by the <u>Federal Rules of Civil Procedure</u>.

7

8                          **Definitions**

9    1.    "MGA," "YOU" and "YOUR" means MGA Entertainment, Inc.,

10 any of its current or former employees, officers, directors, agents, representatives,

11 attorneys, experts, divisions, AFFILIATES (including without limitation MGA

12 Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V.), predecessors-in-

13 interest and successors-in-interest, and any other PERSON acting on its behalf,

14 pursuant to its authority or subject to its control. Without limiting the foregoing,

15 "MGA" includes the entities known as ABC International Traders or ABC International

16 Traders, Inc. For purposes of the these Interrogatories, "MGA" does not include

17 BRYANT.

18    2.    "MATTEL" means Mattel, Inc., its current employees, officers,

19 directors, agents, representatives, attorneys, parents, subsidiaries, divisions,

20 AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

21 PERSON acting on its behalf, pursuant to its authority or subject to its control.

22    3.    "AFFILIATES" means any and all corporations, proprietorships,

23 d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

24 indirectly, in whole or in part, own or control, are under common ownership or control

25 with, or are owned or controlled by a PERSON, party or entity, including without

26 limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

27    4.    "PERSON" or "PERSONS" means all natural persons, partnerships,

28 corporations, joint ventures and any kind of business, legal or public entity or

-2-

MATTEL'S SUPPLEMENTAL INTERROGATORY

**EXHIBIT 66
PAGE 2264**

1 | organization, as well as its, his or her agents, representatives, employees, officers and
2 | directors and any one else acting on its, his or her behalf, pursuant to its, his or her
3 | authority or subject to its, his or her control.

4 |      5.   "DESIGN" or "DESIGNS" means any and all representations,
5 | whether two-dimensional or three-dimensional, and whether in tangible, digital,
6 | electronic or other form, including but not limited to all works, designs, artwork,
7 | sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
8 | diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
9 | practice, developments, inventions and/or improvements, as well as all other items,
10 | things and DOCUMENTS in which any of the foregoing are or have been expressed,
11 | embodied, contained, fixed or reflected in any manner, whether in whole or in part.

12 |      6.   "DOCUMENT" or "DOCUMENTS" means all "writings" and
13 | "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
14 | Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited
15 | to, all writings and records of every type and description including, but not limited to,
16 | contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail
17 | ("e-mail"), records of telephone conversations, handwritten and typewritten notes of
18 | any kind, statements, reports, minutes, recordings, transcripts and summaries of
19 | meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,
20 | discs, printouts and records of all types, studies, instruction manuals, policy manuals
21 | and statements, books, pamphlets, invoices, canceled checks and every other device or
22 | medium by which or through which information of any type is transmitted, recorded or
23 | preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall
24 | include all copies that differ in any respect from the original or other versions of the
25 | DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or
26 | originals containing initials, comments, notations, insertions, corrections, marginal
27 | notes, amendments or any other variation of any kind.

28 |

07209/2254170.1

-3-

MATTEL'S SUPPLEMENTAL INTERROGATORY

EXHIBIT 66
PAGE 2265

7. "REFER OR RELATE TO" a given subject matter means relate to, refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify, state, deal with, comment on, respond to, describe, analyze, support, refute, contradict, or in any way pertain to that subject matter, either directly or indirectly.

8. "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

9. "TEST PROJECT" means any DESIGN, project, assignment or other work of any kind created, developed, improved upon or performed by any candidate, interviewee, applicant or prospective or potential employee or independent contractor in advance of, in consideration of, or otherwise as part of or in connection with any interview or interviewing process for, employment or contracting or potential employment or contracting of any kind.

10. "IDENTIFY" or "IDENTITY" means the following:

(a) with reference to an individual or individuals, means to state, fully and separately as to each, such individual's full name, any known business title, current or last known business affiliation, current or last known residential address, current or last known business address, current or last known relationship to MGA, and current or last known telephone number.

(b) with reference to an entity or entities, means to state, fully and separately as to each, such entity's full name, state (or country) of incorporation or organization, present or last known address, and present or last known telephone number.

(c) with reference to any other DOCUMENT or DOCUMENTS, means to describe each DOCUMENT by Bates number. In the event that a

07209/2254170.1

-4-

MATTEL'S SUPPLEMENTAL INTERROGATORY

EXHIBIT 66
PAGE 2266

1 DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each

2 such DOCUMENT, to provide a complete description of it such that it may be the

3 subject of a request for the production of documents, including by stating the date,

4 identity of the author, addressee(s), signatories, parties, or other PERSONS identified

5 therein, its present location or custodian and a description of its contents.

6       (d)     with reference to a TEST PROJECT, means to IDENTIFY

7 the individual who performed, or was requested, asked or solicited to perform, the

8 TEST PROJECT, including without limitation by stating whether the individual was a

9 MATTEL employee at the time; to IDENTIFY the individual who requested, asked for

10 or solicited the TEST PROJECT or caused the TEST PROJECT to be performed; to

11 provide a detailed, full and complete description of the DESIGN, project, assignment or

12 other work that was performed or that was requested, asked or solicited to be

13 performed; and to state the date(s) on which the TEST PROJECT was performed or

14 was requested, asked or solicited to be performed.

15       11.    "Any" as used in these interrogatories includes the word "all," and

16 the word "all" as used in these interrogatories includes the word "any." The singular

17 form of a noun or pronoun includes within its meaning the plural form of the noun or

18 pronoun so used, and vice versa; the use of the masculine form of a pronoun also

19 includes within its meaning the feminine form of the pronoun so used, and vice versa;

20 the use of any tense of any verb includes also within its meaning all other tenses of the

21 verb so used, whenever such construction results in a broader request for information;

22 and "and" includes "or" and vice versa, whenever such construction results in a broader

23 disclosure of documents or information.

24

25

26

27

28

**EXHIBIT 66**
**PAGE 2267**

MATTEL'S SUPPLEMENTAL INTERROGATORY

1

## Instructions

2

3       A.      When    an    interrogatory    requests    disclosure    of    a
4   COMMUNICATION or other information as to which YOU claim any privilege or
5   protection as a ground for nondisclosure, identify each PERSON who participated in or
6   had knowledge of the COMMUNICATION or other information and provide the
7   following:

8              (i)     the privilege or protection that YOU claim precludes disclosure;
9              (ii)    the subject matter of the COMMUNICATION or information
10                     (without revealing the content as to which the privilege is claimed);
11                     and
12             (iii)   any additional facts or grounds on which YOU base YOUR claim
13                     of privilege or protection.

14      B.      When an interrogatory requests that YOU provide information,
15  YOU are required to supply all information known by or available to YOU or YOUR
16  employees, officers, directors, agents, representatives, attorneys and experts. If YOU
17  cannot completely answer the interrogatory after making diligent efforts to do so,
18  please so state. Then describe in detail all efforts made to answer the interrogatory;
19  identify every PERSON involved in such efforts; and state the additional information
20  YOU need, if any, to respond completely to the interrogatory.

21

22

23

24

25

26

27

28

**EXHIBIT 66**
**PAGE 2268**

07209/2254170.1

-6-

MATTEL'S SUPPLEMENTAL INTERROGATORY

1                                    **Interrogatory**

2

3   <u>SUPPLEMENTAL INTERROGATORY</u>:

4             IDENTIFY, fully and completely, each and every TEST PROJECT  that

5   YOU caused, had, requested, asked or solicited any PERSON to perform during the

6   time period January 1, 1998 through December 31, 2004, inclusive, and IDENTIFY all

7   PERSONS with knowledge thereof and all DOCUMENTS that REFER OR RELATE

8   TO such TEST PROJECT.

9

10   DATED:  October 19, 2007        QUINN EMANUEL URQUHART OLIVER &
                                             HEDGES, LLP

11

12                               By _____

13                                   B. Dylan Proctor

                                        Attorneys for Plaintiff

14                                         Mattel, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2254170.1

**EXHIBIT 66**
**PAGE 2269**

MATTEL'S SUPPLEMENTAL INTERROGATORY

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California. I am over the age of
eighteen years and not a party to the within action; my business address is Now Legal Service,
3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4      On October 19, 2007, I served true copies of the following document(s) described as

5  1.      MATTEL, INC.'S SUPPLEMENTAL INTERROGATORY PURSUANT TO
ORDER DATED SEPTEMBER 25, 2007
6
       on the parties in this action as follows:
7
       Thomas Nolan, Esq.                    Mark E. Overland, Esq.
8      **SKADDEN ARPS SLATE MEAGHER**       David C. Scheper, Esq.
       **& FLOM, LLP**                      Alexander H. Cote
9      300 South Grand Avenue, Suite 3400   **OVERLAND BORENSTEIN**
       Los Angeles, CA 90071                **SCHEPER & KIM LLP**
10                                          300 South Grand Avenue, Suite 2750
                                            Los Angeles, CA 90071-3144
11

12

13

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s)
14  being served.

15      I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.
16
       Executed on October 19, 2007, at Los Angeles, California.
17

18                                          _____
19                                          NOW LEGAL -- Dave Quintana

20

21

22

23

24

25

26

27

28

07209/2261472.1                     -1-

EXHIBIT 66
PAGE 2270

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California. I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
3   Street, 10th Floor, Los Angeles, California 90017-2543.

4   On October 19, 2007, I served true copies of the following document(s) described as **MATTEL,
INC.'S SUPPLEMENTAL INTERROGATORY PURSUANT TO ORDER DATED**
5   **SEPTEMBER 25, 2007** on the parties in this action as follows:

6          Michael H. Page, Esq.
           **KEKER & VAN NEST, LLP**
7          710 Sansome Street
           San Francisco, CA 94111
8

9

10   **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with
11   postage thereon fully prepaid.

12      I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.
13

14      Executed on October 19, 2007, at Los Angeles, California.

15

16                                              _____
                                                Charlene Ho
17

18

19

20

21

22

23

24

25

26

27

28

07209/2261487.1

**EXHIBIT 66**
**PAGE 2271**

EXHIBIT 67

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:      tnolan@skadden.com

5  KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Times Square
   New York, NY 10036
7  Telephone:  (212) 735-3000
   Facsimile:  (212) 735-2000
8  E-mail:      kplevan@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                   EASTERN DIVISION

| | |
|---|---|
| 14  CARTER BRYANT, an individual ) | CASE NO. CV 04-9049 SGL (RNBx) |
| 15              Plaintiff, ) | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 16      v. ) | **MGA ENTERTAINMENT INC.'S OBJECTIONS AND RESPONSES TO MATTEL INC.'S SUPPLEMENTAL SET OF INTERROGATORIES** |
| 17  MATTEL, INC., a Delaware corporation ) | |
| 18              Defendant. ) | |
| 19              ) | |
| 20              ) | Honorable Stephen G. Larson Courtroom 1 |
| 21              ) | |
| 22  Consolidated with MATTEL, INC. v. ) BRYANT and MGA | Discovery Cut-Off:  March 3, 2008 |
| 23  ENTERTAINMENT, INC. v. ) MATTEL, INC. ) | |
| 24              ) | |

25  **PROPOUNDING PARTY:    MATTEL, INC.**

26  **RESPONDING PARTY:    MGA ENTERTAINMENT, INC.**

27  **SET NUMBER:        SUPPLEMENTAL**

28

                          11-19

EXHIBIT 67
PAGE 2272

# PRELIMINARY STATEMENT

The General Response set forth herein applies to all responses that MGA is providing in response to these interrogatories or may in the future provide in response to any discovery request in this action.  The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving:  (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of MGA's discovery regarding the information that Mattel seeks.  Discovery and other investigation or research concerning this litigation are continuing.  It is anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead MGA to discover other information responsive to these interrogatories.  MGA therefore reserves the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence.  MGA does not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatories or any particular request therein, even where MGA has not otherwise objected to a particular interrogatory, or has agreed to provide information responsive to a particular interrogatory.

No incidental or implied admissions are intended by this Response.  These responses should not be taken as an admission that MGA accepts or admits the

1

EXHIBIT 67
PAGE 2273

1 | existence of any facts set forth or assumed by any instruction, definition or
2 | interrogatory.

3 | ## GENERAL OBJECTIONS

4 | MGA responds to these interrogatories subject to the following general
5 | objections and limitations, each of which is incorporated into each and every
6 | response as though fully set forth therein:

7 | 1. MGA objects to these interrogatories to the extent they seek
8 | information that is not subject to disclosure under any applicable privilege, doctrine
9 | or immunity, including without limitation the attorney-client privilege, the work
10 | product doctrine, the right of privacy, and all other privileges recognized under the
11 | constitutional, statutory or decisional law of the United States of America, the State
12 | of California or any other applicable jurisdiction.

13 | 2. MGA objects to these interrogatories to the extent they seek
14 | information not relevant to the claims or defenses of any party to this action and not
15 | reasonably calculated to lead to the discovery of admissible evidence.

16 | 3. MGA objects to these interrogatories to the extent they seek
17 | information which by reason of public filing or otherwise is already in Mattel's
18 | possession or is readily accessible to Mattel.

19 | 4. MGA objects to these interrogatories to the extent they seek the
20 | disclosure of information (1) not currently within its possession, custody or control;
21 | (2) that MGA cannot locate after a reasonably diligent search; or (3) that refer to
22 | persons, entities, or events not known to MGA. Such instructions, definitions, or
23 | requests are objectionable where they seek to require more of MGA than any
24 | obligation imposed by the Federal Rules of Civil Procedure; subject MGA to
25 | unreasonable and undue annoyance, oppression, burden, and expense; and/or seek to
26 | impose upon MGA an obligation to investigate or discover information or materials
27 | from sources equally accessible to Mattel.

28 |

2

**EXHIBIT 67**
**PAGE 2274**

5.    MGA objects to these interrogatories to the extent they are overbroad and unduly burdensome.

6.    MGA objects to the definitions and instructions to the extent such definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific term or specific interrogatories on the ground that such enlargement, expansion, or alteration renders such a term or request vague, ambiguous, unintelligible, overbroad, unduly burdensome, and/or uncertain.

7.    MGA objects to the following definitions in these interrogatories:

(a)    MGA objects to the definition of the terms "DESIGN" and "DESIGNS" as vague, ambiguous, overly broad and unduly burdensome.  The definition strays far from the English meaning of "design" by including "all representations whether two-dimensional or three-dimensional," including "works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements . . . ."  (Definitions ¶ 5.)  In responding to these interrogatories, MGA will interpret the terms "DESIGN" and "DESIGNS" consistent with their ordinary accepted meaning.

(b)    MGA objects to the definition of the terms "IDENTIFY" and "IDENTITY" as overbroad, unduly burdensome, vague and ambiguous, and oppressive.  Mattel's definition of these terms inherently calls for answers to multiple discrete questions or subparts to questions.  For example, as those terms are used with reference to a "TEST PROJECT" (Definitions ¶ 9) the use of those terms request at least four different and distinct facts:  (a) the identity of the individual who performed, or was requested, asked or solicited to perform, the TEST PROJECT, including without limitation by stating whether the individual was a MATTEL employee at the time; (b) the identity of the individual who requested, asked for or solicited the TEST PROJECT or caused the TEST PROJECT to be performed; (c) a

3

EXHIBIT 67
PAGE 2275

1   detailed, full and complete description of the DESIGN, project, assignment or other

2   work that was performed or that was requested, asked or solicited to be performed;

3   and (d) the date(s) on which the TEST PROJECT was performed or was requested,

4   asked or solicited to be performed. Therefore, any interrogatory that includes or

5   incorporates the terms "IDENTIFY" or "IDENTITY" are necessarily compound, and

6   should be posed as separate interrogatories. MGA will interpret the terms

7   "IDENTIFY" or "IDENTITY" when used in these interrogatories with reference to a

8   "SOURCE OF INFORMATION" as requesting MGA to identify the "SOURCE OF

9   INFORMATION" searched for the referenced documents with reasonable

10   particularity so as to distinguish it from other sources of information searched for

11   those documents.

12         (c)    MGA also objects to the terms "any" (Definitions ¶ 11) and

13   "REFER OR RELATE TO" (Definitions ¶ 7) on the grounds and to the extent they

14   are overbroad, unduly burdensome, and/or are vague and ambiguous in the context

15   of the interrogatories as written and as those interrogatories would be plainly

16   understood absent Mattel's definitions.

17         8.    MGA objects to these interrogatories to the extent they may

18   unfairly seek to restrict the facts on which MGA may rely at trial. Discovery has not

19   been completed and MGA is not yet necessarily in possession of all the facts and

20   documents upon which MGA intends to rely. All of the responses submitted

21   herewith are tendered to Mattel with the reservation that the responses are submitted

22   without limiting the evidence on which MGA may rely to support the contentions

23   and defenses that MGA may assert at the trial of this action and to rebut or impeach

24   the contentions, assertions and evidence that Mattel may present. MGA reserves the

25   right to supplement or amend these responses at a future date.

26         9.    MGA objects to each interrogatory to the extent it seeks

27   information that will be the subject of expert witness testimony and that is therefore

28   premature.

4

**EXHIBIT 67**
**PAGE 2276**

10.    MGA objects to each interrogatory to the extent it calls for a legal conclusion.

11.    MGA objects to each interrogatory to the extent it seeks the disclosure of confidential, proprietary, or trade-secret information.

12.    MGA reserves the right to object on any ground at any time to such other supplemental discovery requests as Mattel may propound involving or relating to the same subject matter of these interrogatories.

13.    In responding to these interrogatories, MGA has not and will not comply with any instructions or definitions that seek to impose requirements in addition to those imposed by the Federal Rules of Civil Procedure, the local rules of this Court, any orders entered by the Court in this action, or other applicable law.

14.    Consistent with Rule 33(d) of the Federal Rules of Civil Procedure, MGA objects to providing responses to interrogatories that can be derived from documents that have or will be produced (when requested in compliance with Rule 26) and where the burden to derive such information is substantially the same for Mattel as it is for MGA.

15.    MGA objects to the definitions, instructions, and interrogatories to the extent they seek information that was prepared in anticipation of litigation, constitutes attorney work product, discloses mental impressions, conclusions, opinions or legal theories of any attorney for or otherwise representative of MGA, contains privileged attorney-client communications, or is otherwise protected from disclosure by any privileges, laws or rules. MGA shall not produce such information in response to Mattel's interrogatories. Any disclosure of such protected or privileged information is inadvertent and shall not be construed as a waiver of those privileges or protections. MGA reserves the right to correct the record with regard to any such inadvertent disclosure, as provided for in the Protective Order governing this case.

5

EXHIBIT 67
PAGE 2277

1    16.    MGA objects to each of Mattel's interrogatories because Mattel

2  has propounded more than 50 interrogatories, including discrete subparts.  Under

3  Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each

4  side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

5    17.    The responses below shall not be construed as an admission as to

6  the relevance or admissibility of any statement or characterization contained in any

7  interrogatory.  MGA reserves all objections, including without limitation, objections

8  as to competency, relevance, materiality, privilege, authenticity, or admissibility.

9    18.    To the extent MGA responds to an interrogatory, it does so

10  without waiving or intending to waive but rather, on the contrary, preserving and

11  intending to preserve, its contention that anything Mr. Bryant did on weekends,

12  evenings, vacation and any other time outside ordinary business hours was not done

13  while he was working for Mattel.  MGA's response may not be taken as an admission

14  that the information it provides in its response in any way reflects or evidences work

15  performed by Mr. Bryant while he was working for Mattel or that MGA adopts or

16  agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's

17  interrogatory.

18  **OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

19    Without waiving or departing from its General Response and General

20  Objections, and specifically incorporating them in its response to each interrogatory

21  below, MGA makes the following additional objections and responses to specific

22  interrogatories:

23  **SUPPLEMENTAL INTERROGATORY:**

24    IDENTIFY, fully and completely, each and every TEST PROJECT that

25  YOU caused, had, requested, asked or solicited any PERSON to perform during the

26  time period January 1, 1998 through December 31, 2004, inclusive, and IDENTIFY

27  all PERSONS with knowledge thereof and all DOCUMENTS that REFER OR

28  RELATE TO such TEST PROJECT.

6

**EXHIBIT 67
PAGE 2278**

**RESPONSE TO SUPPLEMENTAL INTERROGATORY:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms "TEST PROJECT," "IDENTIFY" and "REFER OR RELATES TO." MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

MGA also objects to the extent this interrogatory requests that MGA "IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS" (emphasis added). MGA further objects to this interrogatory as oppressive and harassing in that it seeks information not relevant to the claims or defenses of any party to this action and not reasonably calculated to lead to the discovery of admissible evidence. MGA further objects to this interrogatory as it appears to be directed at other parties to the litigation and not to MGA.

MGA objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, Mattel's definitions of the terms "IDENTIFY" and "TEST PROJECT" require MGA to provide separate, distinct, and multiple responses. For example, Mattel's definition of the term "IDENTIFY" in the context of this interrogatory purports to require MGA to provide a multitude of discrete facts for each "TEST PROJECT," including: (a) the identity of the individual who performed, or was requested, asked or solicited to perform, the TEST PROJECT, including without limitation by stating whether the individual was a MATTEL employee at the time; (b) the identity of the individual who requested, asked for or solicited the TEST PROJECT or caused the

7

EXHIBIT 67
PAGE 2279

1 | TEST PROJECT to be performed; (c) a detailed, full and complete description of the
2 | DESIGN, project, assignment or other work that was performed or that was
3 | requested, asked or solicited to be performed; and (d) the date(s) on which the TEST
4 | PROJECT was performed or was requested, asked or solicited to be performed.  This
5 | interrogatory is further compounded by Mattel's definition of "IDENTITY," which
6 | purports to require MGA to provide the following information for each of the
7 | "natural persons" requested to be identified as part of Mattel's definition of
8 | "IDENTIFY," above:  (1) the individual's name; (2) any known business title; (3) the
9 | current or last known business affiliation; (4) the current or last known residential
10 | address; (5) the current or last known business address; (6) the current or last known
11 | relationship to MGA; and (7) the current or last known telephone number.
12 | Additionally, through Mattel's definition of "YOU," this interrogatory asks for all of
13 | the foregoing information about each "TEST PROJECT" relating to, and performed
14 | by, each of the multiple separate responding parties in this litigation.

15 | MGA further objects to this interrogatory on the grounds that, as
16 | phrased, it fails to comply with Judge Infante's Order Granting in Part and Denying
17 | in Part Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third
18 | Notice of Deposition Under Rule 30(b)(6), dated September 25, 2007 (the
19 | "September 25 Order").  In the September 25 Order, Judge Infante sustained MGA's
20 | objections to Topic 9 of Mattel's Third Notice of Deposition under Rule 30(b)(6) to
21 | MGA, which sought testimony as to "the identity of each person MGA had perform
22 | or who MGA requested, asked or solicited to perform, any 'test project' in advance of
23 | or in consideration of employment by MGA since January 1, 1995."  Based on the
24 | representations of Mattel's counsel that Mattel sought in Topic 9 to "'obtain
25 | information that will refute MGA and Bryant's assertions that Bryant's working for
26 | MGA while employed by Mattel was no different than a supposedly standard
27 | industry practice of having candidates for creative positions make artwork as part of
28 | the job interview'" (September 25 Order at 9-10), Judge Infante held that Topic 9

8

**EXHIBIT 67
PAGE 2280**

1  sought "information relevant to one of MGA and Bryant's defenses, namely their
2  claim that Bryant's work for MGA while employed by Mattel was no different than a
3  standard industry practice of having candidates for creative positions make artwork
4  as part of the job interview." Judge Infante sustained MGA's objection because
5  Topic 9 was overbroad and burdensome, and "because the information sought is
6  more appropriately obtained through a *contention* interrogatory." (9/25/07 Infante
7  Order at 10) (emphasis added). MGA objects to Mattel's supplemental interrogatory
8  as propounded because it is not a contention interrogatory. In accordance with Judge
9  Infante's September 25 Order and subject to and without waiving the foregoing
10  objections, Mattel will interpret Mattel's Supplemental Interrogatory as asking first
11  whether MGA contends that MGA caused, had, requested, asked or solicited Bryant
12  to perform a TEST PROJECT and, if MGA so contends, to "IDENTIFY, fully and
13  completely, each and every TEST PROJECT that YOU caused, had, requested,
14  asked or solicited any PERSON to perform during the time period January 1, 1998
15  through December 31, 2004, inclusive, and IDENTIFY all PERSONS with
16  knowledge thereof and all DOCUMENTS that REFER OR RELATE TO such TEST
17  PROJECT."

18      MGA further objects to Mattel's Supplemental Interrogatory on the
19  ground that it seeks information that is not relevant to the claims or defenses in this
20  action and is not reasonably calculated to lead to the discovery of admissible
21  evidence to the extent it asks MGA to IDENTIFY every TEST PROJECT that it
22  asked any PERSON to perform during the time period January 1, 1998 through
23  December 31, 2004, even if MGA does not contend that MGA caused, had,
24  requested, asked or solicited Bryant to perform a TEST PROJECT.

25
26
27
28

9

EXHIBIT 67
PAGE 2281

1          Subject to and without waiving the foregoing objections, MGA

2 responds as follows:

3          MGA does not contend that it caused, had, requested, asked or solicited

4 Bryant to perform a TEST PROJECT.

5

6 DATED: November 19, 2007

7                          SKADDEN, ARPS, SLATE, MEAGHER &
                         FLOM LLP

8

9                          By: _____

                               Thomas J. Nolan

10                          Attorneys for Counter-Defendants, MGA
                         ENTERTAINMENT, INC., ISAAC LARIAN,

11                          MGA ENTERTAINMENT (HK) LIMITED,
                         AND MGAE de MEXICO S.R.L. de C.V.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

MGA'S RESPONSES TO MATTEL INC.'S SUPPLEMENTAL SET OF INTERROGATORIES     NO. CV 04-9049 SGL (RNBx)

EXHIBIT 67
PAGE 2282

EXHIBIT 68

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 69

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 70

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049.SGL(RNBx)                    Date: April 8, 2008

Title:    **CARTER BRYANT -v- MATTEL, INC.**

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=============================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes
        Courtroom Deputy Clerk

PROCEEDINGS
(issued in chambers):        **ORDER GRANTING MOTION TO DISQUALIFY EXPERT**
                             **ORDER DENYING MOTION TO DISQUALIFY COUNSEL**

     Based on the findings of fact set forth on the record, and for the reasons stated therein, the Court **GRANTS** the motion to disqualify the expert, Christina Tomiyama.

     Toward that end, the Court **ORDERS** the following:

        Counsel for MGA, including in-house counsel, shall have no further contact with Ms. Tomiyama regarding this litigation except as necessary to effectuate the Court's orders.

        All counsel for MGA and Ms. Tomiyama, and any persons subject to their authority or control, or those acting in concert with them, are **ORDERED** to refrain from using, disclosing, or otherwise disseminating any of Mattel's privileged communications or attorney work product for any purpose.

        All counsel for MGA and Ms. Tomiyama, and any persons

MINUTES FORM 90                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                    Page 1

EXHIBIT _
PAGE ____

**EXHIBIT 70**
**PAGE 2485**

subject to their authority or control or those acting in concert with them,
are **ORDERED** to return to Mattel and/or destroy all of Mattel's
privileged and work-product materials.

Counsel for MGA is **ORDERED** to file under seal the original
Tomiyama expert report, and to destroy all other copies thereof.  If the
original report has been destroyed, a copy of the report shall be so
filed, along with a declaration of trial counsel regarding the original's
destruction.

Counsel for MGA are **ORDERED** to arrange for a copy of this
Order to be personally served on Ms. Tomiyama and shall file a proof
of service with an accompanying declaration of the process server.

Should Ms. Tomiyama wish to serve in the future as an expert
witness in any unrelated litigation, she is **ORDERED** to provide to
counsel for all parties in that litigation a copy of this Order before
entering into an agreement to provide expert witness opinions, reports,
or testimony.

The Court **DENIES** the motion to disqualify counsel.  Given the nature of the attorney-client
privileged material and attorney work product possessed by Ms. Tomiyama and the particular
circumstances of this case, this Court finds that it was incumbent upon Mattel to seek a protective
order once she was no longer employed by Mattel.  See Nalian Truck Lines, Inc. v. Nakano
Warehouse & Transportation Corp., 6 Cal.App.4th 1256, 1264 (1992) ("[I]t is incumbent upon a
party who knows that its former employees . . . possess privileged information to seek a protective
order.").  Moreover, a careful consideration of the relative burdens and costs to each party and to
the Court does not warrant disqualification.  See City of Santa Barbara v. Superior Court, 122
Cal.App.4th 17, 23 (2004) (noting that motions for disqualification should be "examined carefully"
because attorney disqualification "imposes heavy burdens on both the clients and courts [because]
clients are deprived of their chosen counsel, litigation costs inevitably increase and delays
inevitably occur.").

Nevertheless, in addition to the steps taken in the injunction set forth above, in order to
further limit any inadvertent disclosure of privilege, at the appropriate time, the Court will consider
both a motion in limine to preclude Ms. Tomiyama from testifying as a fact witness and a motion in
limine to preclude MGA from presenting its legal argument based on the ramifications of
comparing two-dimensional drawings of Bratz dolls with the three-dimensional products.

The Court **DENIES** Mattel's request for attorney fees.

**IT IS SO ORDERED.**

EXHIBIT _

PAGE _

**EXHIBIT 70
PAGE 2486**

Case 2:04-cv-09049-SGL-RNB    Document 3003    Filed 04/08/2008    Page 3 of 3

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of April 8, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA – Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT

PAGE

**EXHIBIT 70
PAGE 2487**

EXHIBIT 71



**EXHIBIT 71**
**PAGE 2488**

**M 0110183**

EXHIBIT 72





**EXHIBIT 72**
**PAGE 2489**

M 0110187

EXHIBIT 73





8/1998

**EXHIBIT 73**
**PAGE 2490**

**M 0110197**

EXHIBIT 74





8/1998

**EXHIBIT 74**
**PAGE 2491**

**M 0110202**

EXHIBIT 75



EXHIBIT 75
PAGE 2492

M 0110192

EXHIBIT 76

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 77

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 78

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 79

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 80



**EXHIBIT 80**
**PAGE 2524**

M 0059704

EXHIBIT 81



EXHIBIT 81
PAGE 2525

M 0059708

EXHIBIT 82



**EXHIBIT 82**
**PAGE 2526**

M 0059712

EXHIBIT 83



**EXHIBIT 83**
**PAGE 2527**

M 0059716