1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 14              Plaintiff, | Consolidated with |
| 15        vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 16  MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 17              Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| 18 | DECLARATION OF TIMOTHY L. |
| 19  AND CONSOLIDATED ACTIONS | ALGER IN SUPPORT OF MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER LIMITING THE TEMPORAL |
| 20 | SCOPE OF ITS PRIVILEGE LOG, OR, IN THE ALTERNATIVE, MOTION |
| 21 | TO COMPEL LOGGING OF PRIVILEGED DOCUMENTS BY |
| 22 | BRYANT AND THE MGA PARTIES |
| 23 | |
| 24 | |
| 25 | **Phase 1:**<br>Discovery Cut-off:      January 28, 2008 |
| 26 | Pre-trial Conference:  May 5, 2008<br>Trial Date:              May 27, 2008. |
| 27 | |
| 28 | |

## DECLARATION OF TIMOTHY L. ALGER

I, Timothy L. Alger, declare as follows:

1.     I am a member of the bar of the State of California and a partner with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2.     On January 31, 2008, I met and conferred with counsel for MGA, Marcus Mumford, regarding MGA's motion to compel the production of "NHB" documents. Although MGA and Bryant had jointly filed the motion at issue, counsel for Bryant failed to participate in the teleconference. During that meet and confer, we also discussed the temporal scope of the parties' privilege logs. I reminded counsel for MGA that it was not Mattel's practice to log all documents protected by the attorney-client privilege or work product doctrine created on or after November 24, 2003. This logging practice was pursuant to the discussions of the parties in the summer of 2006.

3.     In response, Mr. Mumford insisted that Mattel must log all privileged documents created up to the day Mattel filed its complaint against Bryant in April 2004. Further discussions with counsel for defendants about the temporal scope of the privilege log failed to resolve the issue, causing Mattel to file this motion.

4.     During our discussions, I informed Mr. Mumford and, later, Matthew Werdegar, representing Carter Bryant, that any expansion of logging obligations for Mattel would have to be reciprocal – if Mattel was to log all privileged documents leading up to the filing of its complaint, Bryant and MGA would have to do the same for the time periods leading up to their complaints against Mattel. This meant that Bryant would have to log documents leading up to the filing of his Complaint for Declaratory Relief of Copyright Non-Infringement on November 2, 2004, and the MGA parties would have to log documents leading up to

-1-

1  the filing of the Complaint for False Designation of Origin, Affiliation, Association

2  or Sponsorship, Unfair Competition, Dilution, and Unjust Enrichment on April 13,

3  2005.

4       5.    Mattel's in-house and outside lawyers generated a substantial

5  quantity of privileged materials from November 24, 2003 to April 27, 2004 (the

6  "disputed period").  To prepare a detailed privilege log covering the disputed period,

7  Mattel would have to review a large quantity of paper and electronic documents in

8  the files of the Mattel Law Department and outside counsel, compare them with

9  prior productions and Mattel's privilege log, and add the appropriate documents to a

10  supplemental log.  Even under normal circumstances, such an effort would require

11  substantial attorney time and expense.  At this point, such a burden would disrupt

12  the operations of the Mattel Law Department during the time leading up to trial, and

13  divert significant – and precious – attorney and paralegal resources from trial

14  preparation.

15       6.    I am familiar with the materials in question.  All of the

16  documents that Mattel would have to place on a supplemental privilege log for the

17  disputed period were prepared to assist in anticipated or pending litigation or contain

18  information reflecting confidential communications between counsel or counsel's

19  representatives and the client or the client's representatives, for the purpose of

20  facilitating the rendition of legal services to the client.  The authors and recipients of

21  those documents are Mattel employees, members of Mattel's Law Department, and

22  outside counsel for Mattel (including Quinn Emanuel).

23       7.    Attached as Exhibit A is a true and correct copy of a March 10,

24  2008 letter from me to Marcus Mumford and Michael H. Page.

25       8.    Attached as Exhibit B is a true and correct copy of a March 14,

26  2008 letter from Mr. Mumford to me.

27

28

-2-

1    9.    Attached as Exhibit C is a true and correct copy of a March 14,
2    2008 letter from me to Mr. Mumford and Mr. Werdegar.

3    10.    Attached as Exhibit D is a true and correct copy of a March 18,
4    2008 letter from Mr. Werdegar to Mr. Mumford and me.

5    11.    Attached as Exhibit E is a true and correct copy of the
6    Declaration of Michael Moore, submitted in support of Mattel's Opposition to MGA
7    and Bryant's Motion for Partial Summary Judgment, and exhibits 1 and 2 thereto.

8    12.    Attached as Exhibit F is a true and correct copy of the Court's
9    August 27, 2007 Order Denying MGA's Motion for Terminating Sanctions.

10    I declare under penalty of perjury under the laws of the United States of
11    America that the foregoing is true and correct.

12    Executed on April 13, 2008, at Los Angeles, California.

Timothy L. Alger

Exhibit A

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SAN DIEGO
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   March 10, 2008          **NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Marcus R. Mumford, Esq.*<br>Skadden, Arps, Slate, Meagher & Flom LLP | 213.687.5000 | 213.687.5600 |
| *Michael H. Page, Esq.*<br>Keker & Van Nest, LLP | 415.391.5400 | 415.397.7188 |

**FROM:**   Timothy L. Alger

**RE:**   *Mattel, Inc. v. MGA Entertainment, Inc.*



MAR 1 0 2008

**MESSAGE:**

07209/2429626.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | *ALBERT V./10TH FLOOR* | ☐ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ NO   ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

Exhibit A
Page 4

Job number      : 078          *** SEND SUCCESSFUL *?

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

SAN DIEGO
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:      March 10, 2008

NUMBER OF PAGES, INCLUDING COVER:

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| **Marcus R. Mumford, Esq.**<br>Skadden, Arps, Slate, Meagher & Flom LLP | 213.687.5000 | 213.687.5600 |
| **Michael H. Page, Esq.**<br>Keker & Van Nest, LLP | 415.391.5400 | 415.397.7188 |

FROM:      Timothy L. Alger

RE:        *Mattel, Inc. v. MGA Entertainment, Inc.*

MESSAGE:

| 07209/2439626.1 | | | | ☐ CONFIRM FAX |
|---|---|---|---|---|
| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | *ALBERT V./10TH FLOOR* | ☒ INCLUDE CONF. REPORT |
| OPERATOR: | DREAMA | CONFIRMED? | ☐ NO   ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

Group Send Report

Page        : 001
Date & Time: 03-10-2008   18:15
Line 1      : 2134433100
Line 2      :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 078 |
| Date | : | 03-10  18:14 |
| Number of pages | : | 003 |
| Start time | : | 03-10  18:14 |
| End time | : | 03-10  18:15 |

Successful nbrs.

Fax numbers

☎1+12136875600
☎1+14153977188

Unsuccessful nbrs.                                                          Pages sent

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3223

WRITER'S INTERNET ADDRESS
timalger@quinnemanuel.com

March 10, 2008

VIA FACSIMILE AND MAIL

Marcus Mumford, Esq.                    Michael H. Page, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP    Keker & Van Nest, LLP
300 South Grand Ave., Suite 3400        710 Sansome Street
Los Angeles, CA  90071                  San Francisco, CA  94111

Re:  MGA Entertainment, Inc. v. Mattel, Inc.

Dear Counsel:

We have received Judge Infante's Order Directing Mattel to Submit Document Nos. M0199767-68 and M0199769-70 for In Camera Review; Granting Motion to Compel Production of "NHB" Documents ("Order").

To date, and as the Court has noted previously, the parties have not been logging documents falling within the attorney-client privilege and/or work product doctrine during the time period leading up to and subsequent to the filing of the Mattel v. Bryant action in April 2004. MGA and Bryant did not challenge this logging practice (which has been followed by all parties) in the context of the Motion to Compel, and Judge Infante did not reach it. Accordingly, it is Mattel's view that its compliance with today's Order with respect to the logging of privileged documents should be consistent with the parties' past logging practices.

If MGA and Bryant have a different view, please consider this letter a request under the Discovery Master Stipulation and Local Rule 7-3 for a conference of counsel in advance of a motion for reconsideration and/or our filing of objections to the Order. Furthermore, please be advised that should MGA and Bryant take any position that seeks to expand the scope of the logging practice, we will expect MGA and Bryant to adhere to it as well.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FA

07209/2429468.1

**Exhibit A
Page 7**

March 10, 2008
Marcus Mumford, Esq.
Michael Page, Esq.
Page 2

Since the Order sets a March 14 deadline, we would appreciate knowing your position by the end of tomorrow. I look forward to hearing from you.

Very truly yours,

Timothy L. Alger

# Exhibit B

03-14-2008   09:44am   From-SASWF L.                          +2136875281            T-311   P.001/003   F-175

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144

TELEPHONE No.: (213) 687-5000
FACSIMILE No.: (213) 687-5600

## FACSIMILE TRANSMITTAL SHEET

FROM: Marcus Mumford                           DATE: March 14, 2008

DIRECT DIAL: (213)687-5514                      FLOOR/OFFICE No.:

DIRECT FACSIMILE:

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION.  IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE.  WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

IF THIS TRANSMISSION IS UNCLEAR OR INCOMPLETE, PLEASE CONTACT THE FACSIMILE DEPARTMENT AT (213) 687-5443.
WHEN TRANSMITTING TO OUR MACHINES, PLEASE INCLUDE YOUR COVER SHEET AND NUMBER ALL PAGES CONSECUTIVELY.

TOTAL NUMBER OF PAGES INCLUDING COVER(S):   3

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

NAME: Timothy L. Alger, Esq.

CITY: Los Angeles

FACSIMILE No.: (213) 443-3100

FIRM: Quinn, Emanuel, Urquhart, Hedges, LLP

TELEPHONE No.: (213) 443-3000

MESSAGE: Please see attached correspondence.

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5514
DIRECT FAX
(213) 621-5514
EMAIL ADDRESS
MMUMFORD@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

March 14, 2008

## VIA FACSIMILE

Timothy L. Alger, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

RE:   *Mattel, Inc. v. Bryant*

Dear Timothy:

I write in response to your March 10, 2008 letter that purports to excuse
Mattel from its obligations under Judge Infante's recent order to search for and
produce all responsive "NHB" documents or, if privileged, identify all "NHB"
documents on its privilege log no later than March 14, 2008.

As an initial matter, I can confirm our understanding that the parties agreed
not to log privileged documents subsequent to the filing of Mattel's lawsuit on April
27, 2004. This agreement, and our reliance on it in moving to compel documents
from Mattel and compiling our own privilege logs, is reflected, *inter alia*, in a
hearing before the Court on June 20, 2006, and letters from MGA counsel dated
August 14, 2007 and February 8, 2008.

But you incorrectly assert that Mattel is somehow also excused from logging
privileged documents, including purportedly privileged "NHB" documents, falling
within the indeterminate "time period leading up to" the filing of Mattel's lawsuit.
Certainly, MGA never agreed to such a loose exception which, as Mr. Werdegar
pointed out in his letter to you this week, could be read literally to relieve Mattel
from logging any privileged communication pre-dating the April 2004 lawsuit. And
we have not seen any response to his request that you cite where the Court "has
noted" such an exception.

03-14-2008  08:45am  From-SASMF LA                    +2136875291           T-311  P.003/003  F-175

Timothy L. Alger, Esq.
March 14, 2008
Page 2

Nor is it correct to suggest that we somehow acquiesced to this practice in the context of the "NHB" motion. In fact, in our meet and confer after MGA and Bryant filed the "NHB" motion, I disputed the notion that Mattel need not log any privileged documents post-November 2003 and requested that you cite any such agreement if Mattel intended to rely on it in opposition to the motion. (*See* 2/4/08 Ltr. from Mumford to Alger at 2-3.) You did not provide any documentation or any further information concerning such an alleged agreement.

In a conference of counsel held May 2, 2005, your colleague Michael Zeller represented that Mattel was logging documents on its privilege log up to the date the April 2004 action was filed. (5/2/05 Conf. Tr. at 419:25-420:22.) Judge Infante's order should be read consistent with Mattel's previous representations, and the parties' reliance on them, to require that it log any privileged "NHB" documents up to April 27, 2004.

Finally, the last paragraph of your March 10 letter appears to raise something other than Mattel's compliance with Judge Infante's ruling on the "NHB" issue. To the extent you intended to set up additional privilege log motion practice, we are unaware of those issues or Mattel's basis for raising them.

Sincerely,

*Marcus R. Mumford /@*

Marcus R. Mumford

cc: Matthew Werdeger, Esq.

The attached fax was received from +2136875291 on 3/14/2008 at 9:43:53 AM

JobID: 102261

Exhibit C

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**    March 14, 2008            **NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Matthew M. Werdegar, Esq.*<br>Keker & Van Nest, LLP | 415.391.5400 | 415.397.7188 |
| *Marcus R. Mumford, Esq.*<br>Skadden, Arps, Slate, Meagher & Flom LLP | 213.687.5000 | 213.687.5600 |

**FROM:**    Timothy L. Alger

**RE:**    *Mattel, Inc. v. MGA Entertainment, Inc.*

**MESSAGE:**



FAXED
MAR 1 4 2008

07209/2429626.1

| | | ROUTE/ | | ☐ CONFIRM FAX |
|---|---|---|---|---|
| CLIENT # | 7209 | RETURN TO: | ***ALBERT V./10TH FLOOR*** | ☒ INCLUDE CONF. REPORT |
| OPERATOR: | *Dennis* | | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

Exhibit C
Page 13

Job number      : 137          *** SEND SUCCESSFUL *

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**    March 14, 2008          **NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Matthew M. Werdegar, Esq.<br>Keker & Van Nest, LLP | 415.391.5400 | 415.397.7188 |
| Marcus R. Mumford, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP | 213.687.5000 | 213.687.5600 |

**FROM:**    Timothy L. Alger

**RE:**    *Mattel, Inc. v. MGA Entertainment, Inc.*

**MESSAGE:**

| 07209/2429644.1 | ROUTE/<br>RETURN TO: | ALGER, T./10TH FLOOR | ☐ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|
| CLIENT #    : 7209 | | | |
| OPERATOR: | | CONFIRMED?    ☐ NO    ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product.
The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or
the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution
or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by
telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

Exhibit C
Page 14

## Group Send Report

Page        : 001
Date & Time: 03-14-2008   14:17
Line 1      : 2134433100
Line 2      :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 137 |
| Date | : | 03-14  14:16 |
| Number of pages | : | 003 |
| Start time | : | 03-14  14:16 |
| End time | : | 03-14  14:17 |

Successful nbrs.

Fax numbers

☎1*14153977188
☎1*12136875600

Unsuccessful nbrs.                                                                        Pages sent

Exhibit C
Page 15

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3223

WRITER'S INTERNET ADDRESS
timalger@quinnemanuel.com

March 14, 2008

VIA FACSIMILE AND MAIL

Matthew M. Werdegar, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111

Re:  MGA Entertainment, Inc. v. Mattel, Inc.

Dear Matt:

This letter confirms our telephone conversation on Wednesday, March 12, which followed from my letter of March 10, 2008 and your letter of March 12, 2008.  We discussed the parties' inclusion of documents in privilege logs, in light of your request for clarification of what I meant in my letter when I referenced documents "leading up to" the filing of the Mattel v. Bryant action.

I recounted for you a conversation among John Quinn, Michael Zeller, Diana Torres and Dale Cendali in the summer of 2006, when the parties were meeting and conferring regarding MGA's First Set of Document Requests.  John made clear in that conversation that Mattel would not make a practice of logging documents protected by attorney-client privilege or the attorney work product doctrine leading up to its suit against Carter Bryant.  John also made clear that if defendants had any different view, Mattel would insist that Bryant and MGA log all privileged and work product documents up to the date in which they filed their respective lawsuits against Mattel, *i.e.*, November 2, 2004 (Bryant declaratory relief complaint) and April 13, 2005 (MGA unfair competition complaint).  Diana and Dale said they would think about the issue.  They did not communicate about this with Mattel again.

Mattel's practice has been repeatedly stated to counsel for defendants in meet-and-confers since then, including, most recently, when Marcus Mumford and I met and conferred regarding the Motion to Compel Production of "NHB" Documents.  I must note that neither MGA nor Bryant raised the temporal scope of the parties' logs with Judge Infante in conjunction with the NHB

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 76-
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-551

**Exhibit C
Page 16**

March 14, 2008
Matthew M. Werdegar, Esq.
Page 2

motion, even though Mattel made quite clear that "NHB" was used by Mattel lawyers for privileged communications and attorney work product.

In order to resolve any ambiguity, Mattel will log documents that it has agreed or been ordered to produce up to November 24, 2003, when Mattel learned of Bryant's disloyalty. In return, Mattel will expect defendants to log all privileged or work product materials up to the point where they admit they were on notice of their claims against Mattel.

I further informed you during our telephone conversation that if MGA and Bryant had a different view of the parties' logging obligations, they should immediately inform me of this, and Mattel will promptly seek relief by way of motion and ask the court to order MGA and Bryant to supplement their logs to include all privileged and work product documents up to the dates that they filed their respective complaints against Mattel.

I look forward to hearing from you and MGA on this issue.

Very truly yours,

Timothy L. Alger

cc:     Marcus Mumford, Esq.

Exhibit C
Page 17

# Exhibit D

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

March 18, 2008

| To | Telephone | Facsimile |
|---|---|---|
| Timothy L. Alger | 213/443-3000 | 213/443-3100 |
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | | |
| | | |
| Marcus R. Mumford | 213/687-5000 | 213/687-5600 |
| Skadden Arps Slate Meagher & Flom | | |

| From | Telephone | Code |
|---|---|---|
| Matthew Werdegar | 415-391-5400 | 6647/mls |

Re   Bryant v. Mattel:  (ED) 2:04-cv-09049-SGL-RNB

### Number of Pages (including Cover): 3

### COMMENTS

Please see attached.

Operator _____                         Time Sent _____

### IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

383005.01

LAW OFFICES

# KEKER & VAN NEST
**LLP**

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

MATTHEW M. WERDEGAR
NWERDEGAR@KVN.COM

March 18, 2008

## VIA FACSIMILE & U.S. MAIL

Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

Re:    Mattel v. Bryant, et al.

Dear Tim:

I am writing in response to your letter dated March 14, 2008 regarding the parties'
agreement with respect to the logging of privileged documents.

You are correct that the parties have long-agreed that privileged documents created
subsequent to the filing of Mattel's lawsuit on April 27, 2004 need not be logged. However, for
all the reasons set forth in Marcus Mumford's letter to you dated March 14, 2008, we do not
agree with your assertion that Mattel is excused from logging privileged documents created
between November 24, 2003 and April 27, 2004. Indeed, this assertion is directly contrary to
multiple prior representations of Mattel's counsel. As Mr. Mumford noted in his letter, your
colleague Michael Zeller expressly represented to Mr. Bryant's counsel in May 2005 that Mattel
was logging documents on its privilege log up to the date the April 2004 action was filed.
(5/2/05 Conf. Tr., at 419:25-420:22). Furthermore, John Quinn repeated this representation a
year later at the May 20, 2006 meet and confer session before Magistrate Judge Block. (6/20/06
Tr. of Proceedings, at 35:3-41:9). The only possible exception articulated by Mr. Quinn was
documents, if any, actually in the files of Quinn Emanuel, as opposed to any documents in
Mattel's possession, custody or control. (Id. at 38:11-17; 40:21-41:9). I have not found any
transcript or correspondence supporting your claim that "John made clear ... that Mattel would
not make a practice of logging documents ... leading up to its suit against Carter Bryant." If I
have overlooked something, please let me know and provide a specific citation supporting your
claim.

As for your repeated threat that if MGA and Mr. Bryant insist that Mattel abide by its
prior agreement to log all privileged documents up to the filing of its suit against Bryant, Mattel
will file a retaliatory motion to force MGA and Bryant to log documents up to the dates that they

Timothy L. Alger, Esq.
March 18, 2008
Page 2

filed their respective claims, the premise of your threat is fundamentally flawed for at least two
reasons. First, as discussed above, the parties long ago agreed that they would log documents up
to April 27, 2004, and not after that date. Indeed, Mr. Zeller's comment on the record on May 2,
2005 was prompted by a representation by Mr. Bryant's counsel that Mr. Bryant was logging
documents only up to that date. Mr. Zeller did not express any concern with that approach;
rather, he agreed that Mattel was adopting the same practice. Consequently, it is far too late for
Mattel to seek to renege on its prior agreements and seek to force Bryant and MGA to log
additional documents.

Second, if Bryant is were obliged to log privileged documents up to the time that he filed
his complaint against MGA in November 2004, notwithstanding the commencement of litigation
between the parties, then by the same logic Mattel should be obliged to log privileged documents
up to the time that it first filed its claims against MGA and Isaac Larian in 2006. There is no
reason that Mattel's filing of these subsequent claims should be treated any differently. I do not
think that you are agreeing that Mattel will undertake this task, but if I am mistaken please let me
know.

In sum, your letter does not accurately reflect the long-standing agreement and practice of
the parties with respect to the logging of privileged documents, and your threat to file yet another
discovery motion if Mr. Bryant and MGA require Mattel to live up to its prior agreements is
based on faulty facts and faulty logic. We expect Mattel to log all responsive privileged
documents, including all allegedly privileged "NHB" documents, consistent with the prior
representations of its counsel.

Very truly yours,

Matthew Werdeg

MMW/mls

cc:     Marcus R. Mumford

Exhibit E

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6    Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
7    Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10                UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

| 13 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 14 | Plaintiff, | Consolidated with |
| 15 | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 16 | MATTEL, INC., a Delaware corporation, | DECLARATION OF MICHAEL MOORE IN SUPPORT OF MATTEL, |
| 17 | | INC.'S CONSOLIDATED OPPOSITION TO DEFENDANTS' |
| 18 | Defendant. | MOTIONS FOR PARTIAL SUMMARY JUDGMENT |
| 19 | AND CONSOLIDATED ACTIONS | |
| 20 | | Date:   April 22, 2008<br>Time:   10:00 a.m.<br>Place:  Courtroom 1 |
| 21 | | |
| 22 | | **Phase 1**<br>Discovery Cut-Off:     Jan. 28, 2008 |
| 23 | | Pre-Trial Conference:  May 5, 2008<br>Trial Date:               May 27, 2008 |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

## DECLARATION OF MICHAEL MOORE

I, Michael Moore, declare as follows:

1. I have been an employee of Mattel, Inc. since December 2000. I am currently Expert Counsel in Mattel's Law Department. I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. By making this declaration, as Mattel's legal counsel, I hereby expressly reserve all rights, duties and privileges on behalf of Mattel and my own under the applicable law of California and federal law, including, but not limited to, California Evidence Code sections 950-962, Federal Rule of Evidence 501 and California Business Professions Code section 6068(e), which requires that I "maintain inviolate the confidence, and at every peril to [me], to preserve the secrets of [my] client."

3. I met with Cityworld's counsel Danny Yu and George Kesserling on November 24, 2003, at the offices of Bird & Bird in Hong Kong. At this meeting I received documents from Cityworld's counsel, including a copy of a contract between MGA Entertainment, Inc. and Carter Bryant dated as of September 18, 2000. To my knowledge Mattel had not received this document prior to that date. Attached as Exhibit 1 is a true and correct copy of the contract that I received from Cityworld on November 24, 2003, and which Mattel has produced in this action as Bates number M 0001547-52.

4. Also among the documents I received was the Affirmation of Lee Shiu Cheung, which, according to the Affirmation, attached copies of "17 initial concept and [d]esign drawings of the Bratz Dolls made by [Carter] Bryant in the year 2000." To my knowledge, Mattel had not received these drawings prior to that date. Attached as Exhibit 2 is a true and correct copy of the Affirmation of Lee Shiu Cheung with exhibit "LSC-3," which are attached drawings, as I received them from

2

1  Cityworld on November 24, 2003, which Mattel has produced in this action as Bates

2  number M 0001570-M 0001581 and M 0001489A-1505.

3

4       I declare under penalty of perjury under the laws of the United States of

5  America that the foregoing is true and correct.

6       Executed on March 24, 2008, at Venice, California.

7

8  Michael Moore

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**MGA ENTERTAINMENT**
16730 Schoenborn Street
North Hills, California  91343

Dated as of September 18, 2000

Mr. Carter Bryant
1319 West 160ᵗʰ Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.      Retention as Consultant/Services: MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.      Term/Exclusivity: The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.      Ownership:

(a)      All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

1

EXHIBIT ___1___

PAGE ___4___

M 0001547

...ents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, and deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)    Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.    **Compensation/Costs:**

(a)    For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)    MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

{00006552.DOC/2 / 1904/2000  33:05 PM}

2

EXHIBIT ___1___

PAGE ___5___

M 0001548

...ing on Bryant, shall constitute an account stated, and shall not be subject to any question for ...eason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to ...SA within two (2) years after the date rendered.  No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)      All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent.  In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations.  Reimbursement shall be at the actual cost of such item without any mark-up.

(d)      Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis.  Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable).  MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)      MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales.  MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell.  Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant.  Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.      Warranties and Indemnity:  Bryant represents, warrants and agrees that:

(a)      he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)      neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)      the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

[C0006662.DOC/2 / 10/04/2000  03:05 PM]

3

EXHIBIT ___1___

PAGE ____6____

M 0001549

...opyrights, mask-work rights, trade secrets, rights of privacy and other intellectual property.

(d)    he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)    he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.    Default/Termination:

(a)    In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)    Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.    Confidentiality:

(a)    Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)    Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)    Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

EXHIBIT ___1___

PAGE ___7___

M 0001550

ↄ equitable relief in the nature of injunction and to all other available relief, at law and/or in

8.    **Notices:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.    Independent Contractor/No Partnership/Third Party Beneficiary: Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10.    Services Rendered Deemed Special, etc.: Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.    General Provisions:

    (a).    This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law. Any such assignment shall not relieve such Party of its obligations hereunder.

    (b)    The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

    (c)    A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

    (d)    Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

[CC006562.DOC/2 / 10/04/2000  C3:C5 PM]

5

EXHIBIT ___1___

PAGE ___8___

M 0001551

(e)     This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)     This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained.  No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)     Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

_____
CARTER BRYANT

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
Social Security Number

EXHIBIT  1

PAGE  9

M 0001552

# EXHIBIT 2



HCA 2152/2002

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
CIVIL ACTION NO. 2152 OF 2002

BETWEEN

ABC INTERNATIONAL TRADERS, INC.
doing business as MGA ENTERTAINMENT                    Plaintiff

and

(1) TOYS & TRENDS (HONG KONG) LIMITED

(2) CITYWORLD LIMITED

(3) JURG WILLI KESSELRING                              Defendants

AFFIRMATION OF LEE SHIU CHEUNG

I, Lee Shiu Cheung of Room 1001, Empire Centre, 68 Mody Road, Tsimshatsui East, Kowloon, Hong Kong do solemnly, sincerely and truly affirm and say as follows: -

1.    I am the Managing Director of MGA (HK) Entertainment Ltd. (hereinafter referred to as "MGAHK"), an affiliate of ABC International Traders Inc, doing business as MGA Entertainment, the Plaintiff herein (hereinafter referred to as "MGA") and duly authorised by MGA to make this affirmation on its behalf. Unless otherwise stated, the facts and matters contained herein are true and they are either within my own personal knowledge or gleaned from books and records of MGAHK to which I have free access or supplied or related to me by Isaac Larain, the CEO of MGA. Insofar as facts and matters that do not fall within the aforesaid category, they are related to me by the respective sources stated hereinafter and are true to the best of my information and belief.

Exhibit 941
E. Lee
10.5 /07 12
Angela Dupre, CSR 7804

M 0001570

EXHIBIT 2

PAGE 10

Exhibit E
Page 32

2.    MGA was originally founded in 1979 as a consumer electronics business. However, in 1987 MGA obtained exclusive rights to sell Nintendo hand held LCD games (Game Boy) in the USA and naturally, Game Boy was an instant success which paved the way for MGA to enter the toy business. MGA obtained licenses to deal with a series of action figures known as Power Rangers back in the 1990s which was again another mega success worldwide. This year MGA added Spider-Man: The Movie to its already existing collection of licences. Thus one can see that MGA is a reputable company in the toy business with substantial goodwill by successfully acquiring the aforesaid licences of these "mega hits". MGA holds a total of 17 licences and others include Hello Kitty and Coca Cola. Now produced and shown to me marked "LSC-1" is a copy of the corporate profile of MGA downloaded from its website.

3.    Since 1987 MGA has primarily concentrated and focused its efforts in the toy industry and as at the date hereof, MGA has 8 product categories and they are smart toys, interactive dolls, handheld games, fashion dolls, youth electronics, music, licensed products and small dolls. In the years 2000 and 2001, MGA's revenue exceeded US$93 million and US$98 million respectively. The projected revenue for the year 2002 is US$250 million due to the success of a range of dolls known as BRATZ which is the subject matter of this action and will be dealt with in detail hereinafter. For the year 2001, the sale of BRATZ dolls, accessories and income from licence fees accounted for 22% of the total revenue of US$160 million. MGA forecasts that the sale of BRATZ dolls, accessories and income from licence fees for the year 2002 will account for 50% of the revenue for that year.

4.    Toys designed and marketed by MGA have been the subject of numerous awards and prizes. However, the most successful toy designed and marketed by MGA must be the BRATZ dolls. In the year 2001, BRATZ dolls won the

2

M 0001571

EXHIBIT ___2___

PAGE ___11___      941-2

following awards in the USA, namely, Toy of the Year Award (Winner) and People's Choice Toy of the Year (Winner).

**BRATZ DOLLS**

5.  On 18 September 2000, MGA entered into an agreement to commission Mr. Carter Bryant (hereinafter referred to as "Mr. Bryant") to design and develop a line of dolls known as BRATZ (hereinafter referred to as "the Agreement"). Mr. Bryant was a graduate of Ottis College in fashion and toy design. Although BRATZ is a misspelling of the word "brats", the former was coined by MGA not to denote naughty or spoilt children but to denote hip and cool young adolescent or teenage girls. This idea of hip and cool is born out in the design of the BRATZ dolls.

6.  Now produced and shown to me marked "LSC-2" is a copy of the Agreement. I crave leave to draw this Court's attention to clause 3 of the Agreement whereby all intellectual property right including copyright subsisting in the works generated by Mr. Bryant shall be owned by MGA. Pursuant and prior to the Agreement and commission, Mr. Bryant did design a range of 4 dolls known as BRATZ and did make original design drawings of the BRATZ dolls. At all material times, Mr. Bryant is a resident of and domiciled in the USA.

7.  Now produced and shown to me marked "LSC-3" are copies of 17 initial concept and design drawings of the BRATZ dolls made by Mr. Bryant in the year 2000 pursuant to the Agreement. Now produced and shown to me marked "LSC-4" is a copy of a sheet of paper setting out the initial concept and idea of the BRATZ dolls by Mr. Bryant. The 4 dolls represent 4 best friends in high school who love to trade clothes, shoes and hairdos. Since these accessories are interchangeable, the 4 dolls can look different every day. And furthermore, there would be a lucrative business of supplying accessories to the owners of BRATZ dolls thus ensuring a steady stream of revenue.

3

M 0001572

EXHIBIT _____ 2 _____

PAGE _____ 12 _____          942-3

8.  Each of the 4 BRATZ dolls was given a name and a different ethnic origin so they could appeal to everyone in the targeted age group of girls between 5 to 14 years old. Chloe is Caucasian, Sasha is black, Yasmin is Hispanic and Jade is Oriental.

9.  The BRATZ dolls are the subject matter of copyright protection in the United States and copies of their registration certificates are now produced and shown to me marked "LSC-5". Samples of each of the 4 dolls in their original packaging are now produced and shown to me marked "LSC-6a to d".

10.  The BRATZ dolls and accessories are marketed and sold in the following packs: -

    a)  BRATZ dolls, Beach Party doll and micro BRATZ doll- BRATZ dolls are those exhibited as "IL-6a to d", Beach Party dolls are BRATZ dolls wearing beach apparel and micro BRATZ dolls are smaller versions of BRATZ dolls. The total sales of the Bratz dolls and Micro Bratz dolls for 2001 was over US$22 million. The 1st quarter sales (FOB) for dolls this year has so far been over US$17 Million. Now produced and shown to me marked "LSC-7" is a sample of 1 micro BRATZ doll.

    b)  BRATZ fashion pack- These are separately sold apparel so that the dolls could have a wider selection of new clothing. The total sales value (FOB) of the fashion packs for the year 2001 was over US$940,000. The first quarter sales(FOB) for the said fashion packs this year has so far been over US$1.5 million. Now produced and shown to me marked "LSC-8" is a sample of a BRATZ fashion pack.

    c)  BRATZ shoe pack- These are additional shoes of different styles sold in separate packs. The total sales value (FOB) of the shoe packs for the year 2001 was over US$140,000.

4

M 0001573

EXHIBIT  2

PAGE  13

941-4

Exhibit E
Page 35

11.  The BRATZ dolls and accessories are marketed and sold in the European Union, the Americas, Australia, New Zealand, Philippines, Indonesia, Israel, Japan and Switzerland.

12.  The BRATZ dolls have their own website at www.bratzpack.com. The site also maintains a fan club known as BRATZ pack which maintains a list of its members. The aim of this fan club is to notify its members of new fashion trends that the BRATZ dolls will wear themselves and the launch and marketing thereof. Now produced and shown to me marked "LSC-9" are downloaded copies from the said website.

13.  So far MGA has spent a total of US$7.5 million in advertising and promotion expenses in USA alone. A further sum of US$5 million has been spent in MGA's other markets worldwide as listed hereinabove.

14.  As mentioned hereinbefore, the BRATZ dolls have become an instant success and they have become collectibles. Considerable media coverage have been given to these dolls and now produced and shown to me marked "LSC-10" is a selection of press cuttings and celebrity photos of the BRATZ pack.

15.  Another major source of revenue generated by the BRATZ dolls is income derived from merchandising rights by granting non-exclusive licences to other companies worldwide. So far, 27 merchandise licence agreements have been granted in respect of a wide range of products including paper napkins, girls clothing, jewelry, bedding, home furnishing, stationery, toiletries, video games and footwear etc. Now produced and shown to me marked "LSC-11" is a sample of a merchandise licence agreement.

16.  Furthermore, MGA has granted exclusive distribution rights of the BRATZ dolls and accessories to Bandai Inc. for a term of 3 years starting from 1 April 2001 in France, Belgium, Germany, Austria, Switzerland, Spain, UK, Portugal, Ireland, Luxembourg and Netherlands.

5

M 0001574

EXHIBIT _____2_____

PAGE _____14_____

941-5

Exhibit E
Page 36

17.

18.

19.

20.

6 ·

M 0001575

EXHIBIT _____2_____

PAGE _____15_____

941-6

Exhibit E
Page 37

21.

22.

23.

24.

7

M 0001576

EXHIBIT ___2___

PAGE ___16___

941-7



25.

26.

27.

28.

29.

8

M 0001577

EXHIBIT ___2___

PAGE ___17___

9418



30.

31.

32.

9

M 0001578

941-9

EXHIBIT     2

PAGE        18

33.

34.

35.

10

EXHIBIT _____ 2 _____

PAGE _____ 19 _____

M 0001579

94**2**-10



36.

37.

38.

11

M 0001580

EXHIBIT 2
PAGE 70

941-11

39.   Finally, I state that this affidavit is made on behalf of MGA, the owner of the copyright subsisting in the artistic works exhibited as "LSC-3" herein and: -

a)   The said artistic works were made on divers dates between 1998 and 2000 in the USA;

b)   The author of the said artistic works is one Carter Bryant and at all material times he was a resident of and domiciled in the USA;

c)   Copies of the said artistic works exhibited as "IL-3" are true copies of the said artistic works.

Affirmed at the office of Messrs. )
C.L. Chow & Macksion Chan, )
Rooms 501-502, 5Ft. Hang )
Seng Bldg, 77 Des Voeux )
Road Central, H.K. )
this 18th day of June   2002 )

Before me,

Chau Yin Chee
Solicitor, Hong Kong SAR
C.L. Chow & Macksion Chan, Solicitors

Solicitor
This affirmation is filed on behalf of the Plaintiff.

12

M 0001581

941-12

EXHIBIT _____2_____

PAGE _____81_____

Exhibit E
Page 43



HCA 2152/2002

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 2152 OF 2002

BETWEEN

ABC INTERNATIONAL TRADERS, INC.        Plaintiff
doing business as MGA ENTERTAINMENT

and

(1)  TOYS & TRENDS (HONG KONG) LIMITED

(2)  CITYWORLD LIMITED

(3)  JURG WILLI KESSELRING        Defendants

This is the exhibit marked "LSC-3" referred to in the Affirmation of Lee Shiu Cheung dated the 18th day of June 2002.

| Description of document | Date | No. of pages |
|---|---|---|
| Copies of 17 initial concept and Design drawings of the BRATZ Dolls made by Mr. Bryant in the year 2000 | divers | 17 |

Before me,

*Chong Shee*

Solicitor, HKSAR

Chan Yin Chee
Solicitor, Hong Kong SAR
CL Chow & Macbien Chan, Solicitors

M 0001489A

DEPOSITION EXHIBIT

EXHIBIT 2

PAGE 22



All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

June 2, 2003
Contract date  9/18/2000

M 0001489

**EXHIBIT** _____ 7

**PAGE** _____ 23



8/1998

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT ____2____

PAGE ____24____

Exhibit E
Page 46

M 0001490



EXHIBIT _____ 2

PAGE _____ 25

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date eligib.

M 0001491

Exhibit E
Page 47



EXHIBIT _____ 7

PAGE _____ 7u

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment

Isaac Larian, CEO

Exhibit E
Page 48

M 0001492



© 1998

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Current date 9/11/00

EXHIBIT 2

PAGE 27

Exhibit E
Page 49

M 0001493



EXHIBIT _____ γ

PAGE _____ γ0

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date.   9.18.loc

M 0001494



8/1998

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT ___ *γ*

PAGE ___ *γ⁴*

**Exhibit E**
**Page 51**

M 0001495



All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT _____ 2

PAGE _____ 30

M 0001496



8/1/98

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00

M 0001497

EXHIBIT ___2___

PAGE ___31___

**Exhibit E**
**Page 53**



EXHIBIT _____ 2

PAGE _____ 32

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

M 0001498



EXHIBIT _____ 2

PAGE _____ 33

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 4/18/00

M 0001499

All Rights Assigned to ABC International Traders
f/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT ___2___
PAGE ___34___

M 0001500



EXHIBIT ___2___

PAGE ___35___

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract Code.  9/1/01

M 0001501



DOLL PIECE COUNT*

HAIRSTYLE #1

LONG TEE

SHORT TEE

JEANS

SNEAKERS

HAIRSTYLE #2

MARY JANES

TOTAL PIECES*

- LONG SLEEVED TEE SHIRT
- CUFFED "JEANS"
- SHORT SLEEVED TEE SHIRT
- SKIRT
- POP-ON/OFF SNEAKERS
- POP-ON/OFF MARY JANES
- BACKPACK
- LONG HAIRSTYLE "WIG" (POP-ON/OFF)
- SHORT HAIRSTYLE "WIG" (POP-ON/OFF)
- DOLL BODY/HEAD

* DESIGN SUBJECT TO CHANGE

DRAWINGS NOT TO ACTUAL SIZE

EXHIBIT ___2___

PAGE ___36___

M 0001502



BODY

NOT ACTUAL
SIZE

ACTUAL DOLL
HEIGHT (WITH HEAD)
APPX. 9½" - 10"

M 0001503

EXHIBIT ___2___

- PAGE ___37___



To give Zoe a whole new look for night, change her short dark brown hairstyle (included), change her pants to a skirt (also included) and change her sneakers to platform sandals (you get those too)

M 0001504

EXHIBIT _2_

PAGE _38_



M 0001505

EXHIBIT 2

PAGE 39

# Exhibit F

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority _____  Send _____
Entered _____  Closed _____
JS-5/JS-6 _____  JS-2/JS-3 _____
Scan Only _____  Docketed on CM _____
_____ THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)

8/29/07

EASTERN DIVISION
BY _____ DEPUTY

# PRIORITY SEND
## & ENTERED

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
#### CIVIL MINUTES – GENERAL

Case No.   CV 04-09049 SGL (RNBx)                     Date: August 27, 2007

Title:   CARTER BRYANT -v- MATTEL, INC.
         AND CONSOLIDATED ACTIONS
=============================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Gina L. Guzman                          Theresa Lanza
Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER            ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                     John B. Quinn, Esq.
(morning session only)                  Michael T. Zeller, Esq.
                                        Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:   **ORDER DENYING MOTION FOR TERMINATING SANCTIONS;
               ORDER DENYING REQUEST FOR INTERLOCUTORY
               APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE
               EVIDENCE PRESERVATION**

This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating
Sanctions, filed on July 24, 2007 (docket #689). This matter was heard on August 27, 2007, at
which time it was taken under submission. The Court has considered the moving, opposition, and
reply briefs, as well as the many declarations and other evidence presented by the parties. The

MINUTES FORM 90                                    Initials of Deputy Clerk _glg_
CIVIL -- GEN                                       Time: 02/52
                              1                    **Docket No. 895**

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1]  As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006). Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995). However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper." Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where evidence were destroyed in the routine course of business)). Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence. However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard. Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled. As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1]  By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order. See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed). The Court's ruling on that matter appears infra.

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney
. . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation. Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control. Emails not otherwise archived from the relevant time period – mostly September and October, 2000 – had already been deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel. At that time, all Mattel employees were instructed to maintain any evidence potentially relevant to the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004. They retain these backup tapes to this day. MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate. The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90                                    Initials of Deputy Clerk __glg_____
CIVIL -- GEN                                       Time: 02/52
                              3                    Docket No. 895

information dating back to all relevant time period in this case may be accessed from it.
Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it
can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence
that anyone has deleted anything from the Zeus system. Although production issues may still
remain with respect to these data, preservation of this data, in the Court's view, is simply not an
issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating
sanctions in this case. No motions to compel were brought to compel these witnesses's
depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them
for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation.
Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of
the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante
Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of
October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence
presented by Mattel, especially phone records produced by Bryant that show he was in contact
with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no
evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule
30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any
instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness,
fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at
958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's
failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less
than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric
laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6)
depositions, and the destruction of Bryant's October, 2000, phone records and time records, are
nothing more than sheer speculation, unsupported by evidence. Although counsel impressed
upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as
witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court **DENIES** MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order
for interlocutory appeal. That request is **DENIED**. Permissive interlocutory appeals are governed
by 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise

MINUTES FORM 90                                        Initials of Deputy Clerk __glg_____
CIVIL -- GEN                                           Time: 02/52

                               4                       Docket No. 895

appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

_Id._ Here, there is no "controlling question of law" in controversy. The law is quite settled. Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court **ORDERS** all parties to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation on or before September 10, 2007.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk ___glg_____
Time: 02/52

5

Docket No. 895

'RightFAX        8/30/2007 2:34    PAGE 001/006    Fax Server

**From:**    Name:    United States District Court
                  312 North Spring Street
                  Los Angeles, CA 90012
        Voice Phone:   (213) 894-5474

**To:**    Name:    Michael Zeller
        Company:

                  865 S Figueroa St, 10th Fl,
        City/State:    Los Angeles, CA 90017-2543
        Fax Number:   213-624-0643

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**



## Automated Document Delivery Service

*Notice pursuant to Rule 77(d) FRCiv.P
The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**Fax Notes:**

Case 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov
Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov
Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!
To switch, complete and submit
Optical Scanning Enrollment / Update form G-76.
Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:       Thursday, August 30, 2007 2:34:04 PM
Number of pages including this cover sheet:   06

8|29