KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                Plaintiff,<br><br>    v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO STRIKE THE EXPERT REPORT OF DOUGLAS KIDDER AND TO PRECLUDE HIS TESTIMONY AT TRIAL**<br><br>**[Declaration of Matthew M. Werdegar filed concurrently]**<br><br>Date:<br>Time:<br>Dept:      Courtroom 1<br>Judge:    Hon. Stephen G. Larson<br><br>Date Comp. Filed: April 13, 2005<br>Discovery Cut-Off: Jan. 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

# I.    Introduction

Violating all laws of common sense and procedure, Mattel's latest improper *ex parte* application seeks to punish Carter Bryant severely for *Mattel's* own errors. However, nothing in Mattel's inappropriate and wildly overreaching *ex parte* application excuses Mattel's failure timely to request a deposition of Bryant's damages expert Douglas Kidder, or justifies any relief whatsoever—let alone the drastic sanctions Mattel seeks here.

*First*, by immediately resorting to *ex parte* proceedings to resolve this ordinary discovery dispute, Mattel has once more improperly disregarded the well-established rule (and this Court's repeated admonitions) that *ex parte* applications are only for extraordinary relief, and that discovery disputes like this one are for the Discovery Master to resolve in the first instance.  That fact alone is ample reason to deny Mattel's application.

*Second*, Mattel's improper application also fails on its merits, because Mattel never made any timely request to depose Mr. Kidder—although Mattel plainly knew that it must do so.  In addition to disclosing his intent to rely on experts identified by MGA, Bryant timely disclosed his own, additional rebuttal experts, and served their reports on all parties.  Mattel then promptly requested dates to depose *one* of Bryant's experts, Gary Funck, and Bryant cooperated fully with that request.  However, Mattel never made any such request for Mr. Kidder until several days after the expert discovery period expired two weeks later.  Even Mattel's revisionist account of these events offers no justification for its omission. Nor could it.  As Mattel has often reminded us all, when doing so was to its advantage, parties disregard the Court's scheduling orders and procedural requirements only at their peril.  The Court (and the Discovery Master, who ought to hear this dispute in the first place) should not excuse Mattel's noncompliance here.

*Finally*, even if the Discovery Master were to excuse Mattel's failure to

1   honor the Court's discovery cut-off (which of course he should not), the relief

2   Mattel seeks here would remain grossly improper.  Bryant's good faith insistence

3   that Mattel respect the Court's scheduling order could not justify the extreme

4   penalty of depriving Bryant of Mr. Kidder's essential damages testimony at trial.

5   Exclusion of a witness is a severe sanction, proper only in extreme cases, after

6   lesser remedies have failed.  It is not a proper mechanism to protect Mattel from its

7   own failure to issue timely expert discovery requests (even if *any* such protection

8   were appropriate, which it is not), especially when Mattel has made no effort to

9   seek the lesser relief of compelling Mr. Kidder's deposition.

10      Bryant cannot be held responsible—let alone summarily punished—for

11  Mattel's errors and omissions in this litigation.  Nor should Mattel be rewarded for

12  its persistent abuse of the *ex parte* process and shameless disregard for the Court's

13  procedural requirements.  Thus, Mattel's *ex parte* application must be denied.

14  **A.   Mattel's immediate resort to *ex parte* proceedings before this Court, in
15        flagrant defiance of the Court's repeated instructions, requires denial of
       its application.**

16      In this application, Mattel has once again disregarded the Court's explicit

17  and repeated instruction that (1) the Discovery Master must hear all discovery

18  disputes in the first instance, and (2) only extraordinary circumstances warrant *ex*

19  *parte* proceedings.  Rewarding Mattel's misbehavior by considering this

20  application on its (lack of) merits would only encourage further abuse of the *ex*

21  *parte* process.

22      The Court has repeatedly made clear that all discovery disputes in this

23  litigation must be presented first to the Discovery Master.  The Court re-

24  emphasized that rule only this week (in the thick of the parties' pre-trial

25  preparations).  *See, e.g.*, February 4, 2008 Minute Order at 3, 4 (Docket No. 1931)

26  (denying Mattel's *ex parte* application, Docket No. 1538, on this basis; repeating

27  that "as previously ordered and reaffirmed by this Court, all discovery matters shall

28  be presented in the first instance to the Discovery Master."); April 14, 2008 Order

2

CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO STRIKE THE
EXPERT REPORT OF DOUGLAS KIDDER AND TO PRECLUDE HIS TESTIMONY AT TRIAL
CASE NO. CV 04-09049 SGL (RNBx)

415683.01

(Docket No. 3086) (referring to the Discovery Master Mattel's request for leave to conduct additional, post-cutoff expert testing).  Even Mattel's misleading account of the relevant facts (corrected below) makes clear that this is at bottom an ordinary discovery dispute over the propriety of conducting an expert deposition. Thus, it is a dispute for the Discovery Master to resolve.

Likewise, "ex parte applications are solely for extraordinary relief," and are inappropriate for discovery disputes.  April 14, 2006 Standing Order at 6 (citing *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)); *Mission Power*, 883 F. Supp. at 490 (commenting on "gamesmanship" inherent in *ex parte* applications like this one, which are "inherently unfair" and "pose a threat to the administration of justice"); February 21, 2007 Scheduling Order (Docket No. 243) at 2:7-8 ("Discovery motions may not be heard on an *ex parte* basis.").  And Mattel has not shown (because it cannot) that *ex parte* relief would be appropriate in any event, even before the Discovery Master: any crisis here is of Mattel's own making, and thus does not warrant *ex parte* relief.  *See Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, 2006 WL 5097404, *1 (C.D. Cal. 2006) (moving party must be "without fault in creating the crisis").

As explained further below, Mattel knew (or should have known) for nearly two weeks before the end of the discovery cut-off that it would want to depose Mr. Kidder—but never timely requested a date to do so.  *See* April 17, 2008 Declaration of Jon D. Corey (Corey Decl.), Ex. 10.  After expert discovery closed, Mattel waited more than a week before finally requesting dates to depose Mr. Kidder.  Then, after Bryant objected to Mattel's belated request for Mr. Kidder's deposition as untimely, Mattel claimed to have made a timely request, which it would re-send "momentarily" (*id.* Ex. 5, at 46 (April 11 Corey email))—but then waited three days and sent Bryant only an old letter concerning *MGA's* experts.  *Id.* Ex. 5, at 45 (April 14 Corey email); *id.* Ex. 2, at 7 (March 6 Corey letter,

CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO STRIKE THE EXPERT REPORT OF DOUGLAS KIDDER AND TO PRECLUDE HIS TESTIMONY AT TRIAL
CASE NO. CV 04-09049 SGL (RNBx)

discussing "MGAs' expert witnesses, including those submitting rebuttal reports").
Mattel has not pursued Mr. Kidder's deposition diligently, despite the looming trial
date and the importance of Mr. Kidder's testimony.  Its belated attempt to escape
the consequences of its carelessness cannot create an emergency for the Court or
anyone but Mattel.

**B.    Mattel made no timely request to depose Bryant's expert Mr. Kidder,
and should not profit from its disregard for the Court's scheduling
order.**

        In addition to its procedural defects, Mattel's *ex parte* application lacks any
substantive merit.  As Mattel itself has counseled, a scheduling order "is not a
frivolous piece of paper, idly entered, which can be cavalierly disregarded by
counsel without peril."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610
(9th Cir. 1992); *see* Mattel's February 14, 2008 *Ex Parte* re Bryant's Motion to
Compel, at 5 (citing *Johnson*).  Yet once the Court corrects for Mattel's convenient
distortions of fact, Mattel's careless disregard for the Court's scheduling orders is
precisely what Mattel asks the Court to excuse here.  Any such relief would be
both improper (because Mattel can give no excuse for its actions) and inequitable
(in light of Mattel's own uncompromising insistence on enforcing the strict letter
of all rules against other parties).

        **1.    Mattel never requested to depose Mr. Kidder until after the
expert discovery deadline.**

        Mattel's entire *ex parte* application rests on the fiction that Mattel requested
Mr. Kidder's deposition before March 31, 2008.  It did not.  Mattel implicitly
concedes, as it must, that before the expert discovery deadline ran on March 31,
Mattel (1) made no specific request to depose Mr. Kidder (2) made no general
request to depose all of Bryant's experts, and (3) received no agreement from
Bryant's counsel allowing Mr. Kidder to be deposed after the deadline.  Those
facts alone should defeat Mattel's application here.

        However, Mattel now claims (with exactly the "transparent gamesmanship"

1   of which Mattel wantonly accuses Bryant, *see* Mattel's *Ex Parte* at 1:18) that an

2   unrelated letter about *MGA's* experts constituted a request to depose Mr. Kidder.

3   Not so.  Even Mattel recognizes this fatal weakness, seeking to obscure it with a

4   misleading and inaccurate footnote.[1]  *See* Mattel's *Ex Parte* at 2:17-22 (n. 1).  Until

5   it realized that it had neglected timely to request Mr. Kidder's deposition, Mattel

6   recognized all along that Bryant's experts were his own (not MGA's) and required

7   separate document and deposition requests.

8        In fact, after Bryant timely served his supplemental expert disclosures on

9   March 17, 2007, Mattel acknowledged that it needed to request dates to depose

10  Bryant's experts (separate from its previous request to depose *MGA's* experts)

11  when it specifically requested dates to depose only Bryant's other expert, Gary

12  Funck.  Werdegar Decl. Ex. 1.  Bryant promptly accommodated Mattel's March 18

13  request for dates to depose Mr. Funck, which was timely made, and also expressly

14  agreed to schedule Mr. Funck's deposition after the expert discovery deadline.  *Id.*

15  Ex. 1.  Had Mattel also timely requested dates to depose Mr. Kidder, Bryant would

16  of course have cooperated, and would have considered a request to waive the

17  deadline.  (Bryant's cooperation regarding Mr. Funck also further belies Mattel's

18  somewhat hysterical claims that Bryant is improperly refusing to honor his

19  legitimate discovery obligations.[2])  However, Bryant had no obligation to remind

20

21  [1] Mattel suggests that because Bryant's expert disclosures identified MGA's experts as
    experts on whom Bryant would *also* rely, the MGA parties and Bryant "jointly proffered
22  all experts," and "Mattel anticipated that they would do so with rebuttal experts, which
    they did."  Mattel's *Ex Parte* at 2 n.1.  In fact, as the very email exchanges Mattel points
23  to make clear (*e.g.*, Corey Decl. Ex. 1), MGA provided its experts' reports and arranged
    for and defended their depositions.  Bryant did the same for his expert, Gary Funck,
24  whom Mattel did request to depose.  *Id.* Ex. 10 at 72:16-18; Werdegar Decl. Ex. 1.
    Bryant's expert disclosures (*not* made jointly with MGA) clearly identified MGA's
25  experts as such (noting that *MGA*, not Bryant, would serve their reports), *see* Corey Decl.
    Ex. 9, at 66:23-25; Ex. 10, at 72:19-21.  Also, further belying Mattel's account, Bryant's
26  supplemental expert disclosures expressly identified Mr. Funck and Mr. Kidder as
    experts whose reports Bryant would serve.  *Id.* Ex. 10, at 72:16-18.

27  [2] For example, Mattel inexplicably faults Bryant because, after receiving Mattel's March
    6 letter about MGA's expert witnesses, Bryant "did not say that this request was
28  insufficient" to request dates for Bryant's rebuttal witnesses including Mr. Kidder.
    Mattel's *Ex Parte* at 4:12-13.  However, Bryant did nothing wrong by taking Mattel's

5

1   Mattel that it might also like to depose his other expert, Mr. Kidder, or to

2   spontaneously volunteer dates for such a deposition.  When Mattel failed to request

3   Mr. Kidder's deposition before March 31, Bryant could only conclude that Mattel

4   had chosen not to depose him.  (A reasonable conclusion, given the overwhelming

5   pressure of other urgent discovery and pretrial obligations, and in light of Mattel's

6   apparent focus on MGA as its primary financial target in this litigation.  *See*

7   Declaration of Jason D. Russell in Support of MGA Parties' Motions in Limine

8   Nos. 1-12, Ex. 41 at 21 (report of Mattel's damages expert, mentioning Bryant

9   only in a few brief lines without any real analysis).)

10          Then, after the close of expert discovery, Mattel discovered (or remembered)

11   that it did in fact want to depose Mr. Kidder.  Although Mattel still made no

12   express request for dates, Mattel finally observed on April 3 that it did not have a

13   date to depose Mr. Kidder—who Mattel acknowledged was "one of Mr. Bryant's

14   experts" (*not* MGA's)—in an email discussing deposition dates for numerous other

15   experts.  Corey Decl. Ex. 4 at 42 ("We still do not have a date for Mr. Kidder, who

16   I believe is one of Mr. Bryant's experts.").  Mattel then waited another *week* before

17   finally requesting dates to depose Mr. Kidder.  *Id.* Ex. 5 at 47 (April 10 Corey

18   email: "I still do not have dates for Kidder.  Please let me know when he is

19   available.").  After Bryant objected to Mattel's belated request for Mr. Kidder's

20   deposition as untimely (*id.* Ex. 5 at 46 – April 11 response), Mattel claimed to have

21   made a timely request, which it would re-send "momentarily" (*id.* Ex. 5 at 46 –

22   April 11 Corey email)—but then waited another three days and sent Bryant only an

23   old letter about *MGA's* expert witnesses (*id.* Ex. 5 at 45 – April 14 Corey email; *id.*

24

25   letter at its word, to refer only to MGA's experts—nor could Bryant have known whether
     Mattel's purported request to depose Mr. Kidder was "insufficient" without assuming that
26   Mattel would issue no other expert deposition requests and later seek to distort the plain
     language of the March 6 letter.  And in fact, any such assumption would have been
27   unwarranted, because (once Bryant served his separate, rebuttal expert disclosures, nearly
     two weeks after the March 6 letter) Mattel promptly issued a specific request to depose
28   Bryant's expert Mr. Funck.

Ex. 2 at 7 – March 6, Corey letter referring to "MGAs' expert witnesses, including those submitting rebuttal reports").  Although even Mattel admits that this letter refers only to "MGA's expert witnesses" (Mattel ex parte at 2 n. 1; Ex. 2 at 7), the very next day (without any further efforts to resolve the issue in a more moderate way) Mattel threatened to file this *ex parte* application seeking to strike Mr. Kidder's report and preclude his testimony at trial.  (Even after Bryant opposed this entirely improper attempt to excuse Mattel's untimely deposition request in *ex parte* proceedings, Ex. 7 at 59, Mattel waited another day and a half before filing this application at 10:45 p.m. last night.)

**2.    Nothing excuses Mattel's disregard for the expert discovery deadline ordered by the Court.**

Mattel must bear the consequences of its failure to honor the expert discovery deadline.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).  Mattel's sole argument to support its belated efforts to depose Mr. Kidder is that "[i]t would prejudice Mattel" to enforce the Court's scheduling order here.  Mattel's *Ex Parte* at 4.  But litigation errors naturally cause "prejudice" to those who make them, and Mattel cites no authority that the Court must (or should) protect Mattel from the effects of its own carelessness.[3]  Nor could it.  Ninth Circuit authority makes clear that parties *must* comply with a court's scheduling order, or suffer the consequences.  *Johnson*, 975 F.2d at 610.  Good cause is required to support any modification of such an order, let alone to excuse *post hoc* a party's failure to comply.  *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 957 (9th Cir. 2006) (good cause required); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003) (diligence of moving party required); *Core Projects v. Aviation Servs., Inc.*, 2006 WL 2827383 (E.D. Cal. Oct. 2, 2006) ("Carelessness is not a basis for granting

---

[3] The only case Mattel *does* cite, from the Fifth Circuit, is inapposite.

CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO STRIKE THE EXPERT REPORT OF DOUGLAS KIDDER AND TO PRECLUDE HIS TESTIMONY AT TRIAL CASE NO. CV 04-09049 SGL (RNBx)

relief.").  Although Mattel may now wish it had timely requested Mr. Kidder's deposition, all its tears will not alter a word of the requests it in fact made, which did not include Mr. Kidder until long after the expert discovery cut-off, nor of the Court's scheduling order.

In addition, Mattel's argument is especially ill-taken now, when the parties are thoroughly engaged in overwhelming and intensive preparations for a trial less than six weeks away.  The purpose of a discovery cut-off is to allow counsel the time needed to prepare for trial.  That will not happen, and the trial will not be fair, if Mattel is permitted to continue raising additional (and unfounded) discovery disputes to the very eve of trial.

Nor can Mattel claim any equitable rights to leniency.  Mattel has fought tooth and nail in this litigation (often with similarly abusive *ex parte* applications) to enforce far more trivial rules.  *See, e.g.*, Mattel's March 4, 2008 Opposition to Bryant's Motion to Compel Discovery Responses (Docket No. 2468) (resisting discovery purely because service was by FedEx and email instead of U.S. Mail, despite admitted lack of prejudice and failure to object to prior history of such service); Mattel's *Ex Parte* Application dated February 12, 2008; Mattel's *Ex Parte* Application dated February 12, 2008 (seeking to strike Bryant's motion to compel discovery responses); February 25, 2008 Order Denying February 12, 2008 *Ex Parte*; Werdegar Decl. ¶ 1 (threatening to move to strike MGA's summary judgment brief for failure to double-space block quotes).  Mattel has no equitable claim to anything but the intensely combative and hyper-technical litigation rules it routinely forces on others.  *See, e.g.*, *Mattel v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (affirming grant of sanctions for Mattel's abusive discovery methods).

**C.   Mattel improperly seeks the drastic sanction of excluding Mr. Kidder entirely, without making any effort to seek a lesser remedy.**

Finally, even if Mattel could justify some relief from the Court's expert

discovery deadline (which it cannot), Mattel has requested entirely the wrong form of relief:  Mattel makes no effort to justify its efforts to impose the extreme sanction of barring Mr. Kidder at trial on the facts presented here.  At most, on a proper motion (a motion to re-open discovery and to compel) before the proper judicial officer (the Discovery Master), with a proper excuse for its carelessness, Mattel could seek to compel Mr. Kidder's deposition.

Mattel itself implicitly acknowledged as much when it first threatened these *ex parte* proceedings.  When Bryant rejected Mattel's untimely April 10 request to depose Mr. Kidder, Mattel at first notified Bryant only that it would seek "an order compelling Mr. Kidder to appear for deposition."  Corey Decl. Ex. 5 at 46 (Corey email to Bryant's counsel dated April 11, 2008).  Mattel's April 15 letter changed the threat, without further ado, to the much broader one presented here: excluding Mr. Kidder's testimony and expert report from trial entirely.  *Id.* Ex. 6.

No authority supports Mattel's efforts to sanction Bryant in any way (let alone so harshly) for his efforts to hold Mattel to the Court's expert discovery deadline.  Mattel cites no authority imposing sanctions in such a case, presumably because there is none: even the out-of-circuit and unpublished authority Mattel does offer all involves egregious situations where a party or expert had refused to comply with *prior* court orders or warnings to appear for properly noticed or agreed-upon depositions.  There has been no such order or warning here, and there was no agreement.  Even if the Discovery Master were to conclude that Bryant's position in this dispute is mistaken, the remedy would be simply an order requiring Mr. Kidder's deposition to proceed (with which Bryant would promptly comply).

Mattel neglects to mention that, as courts in this Circuit have consistently recognized, preclusion of evidence is "among the most severe" sanctions possible under Rule 37 or the court's inherent power, often tantamount to dismissal.  It is thus improper absent proof by the moving party of undue prejudice from willful or bad faith misbehavior by the opposing party.  *Qualcomm Inc. v. Broadcom Corp.*,

9

2007 WL 935617, *2 (S.D. Cal. 2007); *In re Diamond Benefits Life Ins. Co.*, 2006 WL 616625, *6 (D. Ariz. 2006).  This judicial caution is necessary because "due process is a limitation upon the application of sanctions" in discovery, as in any other situation.  *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783 (9th Cir. 1983).  Imposing preclusion sanctions would be grossly improper here.  Mr. Kidder's testimony (not duplicated by any other expert) will be essential to Bryant's defense against Mattel's overreaching damages claims.  Barring Mr. Kidder's testimony at trial here would thus severely prejudice Bryant's defense, based not on any wrongdoing, but solely on his good faith efforts to enforce the Court's expert discovery deadline—essentially, for his failure to cede complete control of this case to Mattel.

In sum, no law or logic supports Mattel's absurd effort to sanction Bryant for Mattel's own errors in discovery.

## II.   Conclusion

For all the foregoing reasons, Bryant respectfully asks that the Court deny in its entirety Mattel's *ex parte* application to strike Mr. Kidder's expert report and to preclude his testimony at trial.

Respectfully submitted,

Dated:  April 18, 2008

KEKER & VAN NEST, LLP

By: */s/ Matthew M. Werdegar*
MATTHEW M. WERDEGAR
Attorneys for Plaintiff
CARTER BRYANT

415683.01