1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 | John B. Quinn (Bar No. 090378)
  | (johnquinn@quinnemanuel.com)
3 | Michael T. Zeller (Bar No. 196417)
  | (michaelzeller@quinnemanuel.com)
4 | Jon D. Corey (Bar No. 185066)
  | (joncorey@quinnemanuel.com)
5 | Timothy L. Alger (Bar No. 160303)
  | (timalger@quinnemanuel.com)
6 | 865 South Figueroa Street, 10th Floor
  | Los Angeles, California 90017-2543
7 | Telephone: (213) 443-3000
  | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**

**[PUBLIC REDACTED]** MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE PRODUCTION OF DOCUMENT BATES NUMBERED MGA 3801819-22; AND

MEMORANDUM OF POINTS AND AUTHORITIES

[Declaration of Timothy L. Alger filed concurrently]

Hearing Date: TBA
Time: TBA
Place: TBA

**Phase 1**
Discovery Cut-Off: January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

00029/2478224.1

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         Please take notice that at a conference before Discovery Master Hon.

3  Edward Infante (Ret.) that will occur on a date and at a time to be determined,

4  plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court for a motion

5  compelling the production of an e-mail bearing Bates numbers MGA 3801819-22,

6  in an unredacted form.

7         This Motion is made pursuant to <u>Federal Rule of Civil Procedure</u>

8  26(c) on the grounds that MGA "clawed-back" the document from its production as

9  allegedly privileged, without justification. The document is not privileged and, if it

10  is, MGA has waived the privilege.

11        This motion is based on this Notice of Motion and Motion, the

12  accompanying Memorandum of Points and Authorities, the Declaration of Timothy

13  L. Alger filed concurrently herewith, the records and files of this Court, and all other

14  matters of which the Court may take judicial notice, and such further argument and

15  evidence which may be presented at or before the hearing.

16

17  DATED: April 18, 2008          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
18

19                                 By_____
20                                    Timothy L. Alger
                                      Attorneys for Mattel, Inc.
21

22

23

24

25

26

27

28

1

## **Certificate Of Compliance With Local Rule 37-1**

2      Mattel and MGA met and conferred regarding the document bearing

3  Bates numbers MGA 3801819-22 on April 1, 2008 and thereafter, but were unable

4  to reach agreement regarding the issues raised in this motion.

5

6  DATED:  April 18, 2008           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

7

8                                   By

9                                      Timothy L. Alger
                                       Attorneys for Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2447663.3

1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 2

ARGUMENT.......................................................................................................... 6

I.    THE LARIAN E-MAIL IS NOT PRIVILEGED ........................................... 6

II.   MGA WAIVED THE PRIVILEGE BY FAILING TO OBJECT TO ITS USE AT DEPOSITION AND AS AN EXHIBIT IN THE SUMMARY JUDGMENT PAPERS ............................................................. 10

III.  THE DISCOVERY MASTER SHOULD REVIEW THE LARIAN E-MAIL IN CAMERA ....................................................................................... 12

CONCLUSION....................................................................................................... 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-i-

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bank Brussels Lambert v. Credit Lyonnais,*
160 F.R.D. 437 (S.D.N.Y. 1995)........................................................................ 11

*Boca Investerings Partnership v. U.S.,*
31 F. Supp. 2d 9 (D.C.D.C. 1998)........................................................................ 9

*Boston Edison Co. v. U.S.,*
75 Fed. Cl. 557 (Fed. Ct. Cl. 2007)..................................................................... 9

*Diversified Group, Inc. v. Daugerdas,*
304 F. Supp. 2d 507 (S.D.N.Y. 2003).............................................................. 11

*F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.,*
184 F.R.D. 64 (D. Md. 1998).............................................................................. 11

*Fisher v. United States,*
425 U.S. 391 (1976)............................................................................................ 7

*Griffith v. Davis,*
161 F.R.D. 687 (C.D. Cal. 1995) .................................................................... 7, 8

*Hardy v. New York News,*
114 F.R.D. 633 (S.D.N.Y. 1987)........................................................................ 10

*Montebello Rose Co. v. Agricultural Labor Relations Bd.,*
119 Cal. App. 3d 1 (1981).................................................................................. 9

*North Am. Mort. Investors v. First Wisc. Nat'l Bank,*
69 F.R.D. 9 (E.D. Wis. 1975)............................................................................. 9

*Palazetti Import/Export, Inc. v. Morson,*
2000 WL. 1015921 (S.D.N.Y. July 21, 2000) ................................................... 11

*In re Rospatch Sec. Litigation,*
1991 WL. 574963 (W.D. Mich., March 14, 1991) ............................................ 10

*S.E.C. v. Cassano,*
189 F.R.D. 83 (S.D.N.Y. 1999)........................................................................... 11

*Southern Film Extruders, Inc. v. Coca-Cola Co.,*
117 F.R.D. 559 (M.D.N.C. 1987)........................................................................ 9

*U.S. v. ChevronTexaco Corp.,*
241 F. Supp. 2d 1065 (N.D. Cal. 2002) ............................................................ 8

*United States v. Martin,*
278 F.3d 988 (9th Cir. 2002)............................................................................. 7

*United States v. Munoz,*
233 F.3d 1117 (9th Cir. 2000).................................................................................. 6

*United States v. Philip Morris Inc.,*
209 F.R.D. 13 (D.D.C. 2002) ................................................................................. 8

*United States v. Zolin,*
491 U.S. 554 (1989) ...................................................................................... 12, 13

## **Miscellaneous**

Federal Rule of Civil Procedure 26(c)........................................................................ ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA produced in discovery an email written by MGA's CEO, Isaac Larian, that showed defendants' intentional effort to conceal and mislead about Carter Bryant's role in the creation of Bratz. Mattel marked this document as a deposition exhibit and questioned a percipient witness on it. Subsequently, in support of its motion for partial summary judgment, and in opposition to defendants' motion, Mattel submitted the e-mail to the Court. Only <u>after</u> the parties filed their summary judgment motions and oppositions, MGA claimed the e-mail was protected by attorney-client privilege and demanded the e-mail's return or destruction under the Protective Order. MGA then produced the document to Mattel again – this time in a form that, conveniently for MGA, redacted the information showing Larian's complicity in the attempted cover-up of Bryant's role as creator of Bratz.

MGA should be compelled to produce the e-mail, Bates numbered MGA 380189-22 (the "Larian E-mail"), in unredacted form. It simply is not a privileged communication. The Larian E-mail meets none of the elements for attorney-client privilege. Although two members of MGA's legal staff were among the e-mail's many recipients, it is obvious from the document that they were not acting in any capacity as legal advisers. Rather, confirming that the portion now belatedly redacted by MGA merely gives a <u>business direction</u>, the email instructs <u>MGA's chief operating officer</u>, along with the two members of MGA's legal staff, ■

■ No legal advice is sought.

As demonstrated by the unredacted version of the e-mail and the testimony of Rachel Harris, an ex-MGA employee, Larian sent the e-mail and the redacted business instruction as part of a scheme to conceal MGA and Bryant's wrongdoing from Mattel. Larian's instructions to his employees are evidence of

1 | defendants' guilty knowledge of Mattel's ownership of Bratz. They were designed
2 | to conceal the true origins of Bratz from Mattel.

3 |      Moreover, even if the privilege applied, MGA waived it by allowing
4 | the e-mail to be used, without objection, at deposition and on summary judgment
5 | before purporting to claw it back. Two months after MGA produced the Larian E-
6 | mail, Mattel introduced it at Ms. Harris' deposition. Mattel questioned Ms. Harris at
7 | length about the e-mail. Although MGA was represented at the deposition by two
8 | attorneys, neither clawed it back under the Protective Order. Nor did they make any
9 | objection on the basis of attorney-client privilege. Mattel then submitted the Larian
10 | E-mail in support of its motion for partial summary judgment. MGA did not claw it
11 | back then either or even file objections to the document on privilege grounds. MGA
12 | did not assert the privilege until after Mattel cited to the document *again* in support
13 | of its opposition to MGA's motion for partial summary judgment. Clearly, the only
14 | reason MGA asserted the attorney-client privilege is to prevent Judge Larson from
15 | considering the e-mail in deciding the summary judgment motions.

16 |      MGA should be compelled to produce the Larian E-mail in unredacted
17 | form.

18 |
19 | **Factual Background**

20 |      <u>MGA's Production of the Larian E-mail</u>. In December 2007, MGA
21 | produced a document bearing Bates numbered MGA 3801819-22.[1] The document
22 | is a March 2002 e-mail from defendant Isaac Larian to nine MGA employees that
23 | references, discusses, and incorporates a non-privileged e-mail from David Dees.
24 | Dees was a vendor working on Bratz for MGA. ▆▆▆▆▆▆▆▆▆
25 | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
26 |

27 | [1] Declaration of Timothy Alger ("Alger Dec."), ¶ 2. A redacted version of this document is attached to the Alger Dec. as Exh. A.
28 |

-2-

MATTEL'S MOTION FOR COMPEL

1    ████████████████████████████████████████████████████

2    █████████████████████████████ Dees forwarded a copy of his e-mail to Carter

3    Bryant, and it was then forwarded by MGA's Paula Treantafelles to Larian.

4    Larian responded by sending an e-mail (with the Dees e-mail ████

5    ████████) to nine MGA employees.  The primary recipients of the Larian e-mail

6    are Victoria O'Connor, a licensing executive at MGA, and Dave Malacrida, MGA's

7    spokesman.[3]  In the e-mail, Larian ████████████████████████████████████

8    ████████████████████████████████████████████████ Among the

9    "cc's" of the e-mail are two members of the in-house legal department, Julie Mote

10   (an attorney) and Beth Cahill (a paralegal).  Larian concludes the e-mail by giving <u>a</u>

11   <u>business instruction</u> to Abe Mirza, the company's COO, and Ms. Mote and Ms.

12   Cahill, ████████████████████████████████████████████████

13   It is that business instruction that MGA later redacted from the Larian E-mail on a

14   claim of attorney-client privilege.[5]

15       <u>MGA Does Not Object to the Use of the Larian E-mail at the</u>

16   <u>Deposition of Rachael Harris</u>.  On February 26, 2008, Mattel introduced the Larian

17   E-mail at the deposition of Rachel Harris.[6]  MGA was represented at Ms. Harris'

18   deposition by two attorneys.  Neither clawed back the Larian E-mail or even

19   objected to its introduction at the deposition.[7]  Counsel for Mattel questioned Ms.

20   Harris about the document, ████████████████████████████████████

21

22

23    [2]   Exh. A to the Alger Dec.; Alger Dec., ¶ 2.
      [3]   Exh. A to the Alger Dec.; Alger Dec., ¶ 3.

24    [4]   Exh. A to the Alger Dec.

25    [5]   Alger Dec., ¶ 4.  ████████████████████████
         (February 26, 2008 Deposition Transcript of Rachel Harris ("Harris

26   Tr."), at 261:8-267:11, Exh. B to the Alger Dec.
      [6]   Alger Dec., ¶ 5; Harris Tr., at 261:8-267:11, Exh. B to the Alger Dec.

27    [7]   Harris Tr., at 261:8-267:11, Exh. B to the Alger Dec.

28

1  ████████████████  Neither MGA attorney objected to or instructed on these

2  questions on the basis of the attorney-client privilege.[8]

3      When asked about Dees' e-mail to the fan website, Ms. Harris testified

4  that ███████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ██████████████████████

8      The e-mail was part of a broader MGA effort to conceal Bryant's

9  involvement in Bratz.  Ms. Harris testified that ████████████████████

10  ████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ███████████████

15            ████████████████████████████████████

16            ████████████████████████████████████

17            ████████████████████████████████████

18            ████████████████████████████████████

19            ████████████████████████████████████

20            ████████████████████████████████████

21            ███████████████████████████

22

23

24

---

[8] Id.
[9] Id. at 262:16-17.
[10] Id. at 265:19-266:18.
[11] Id. at 263:1-4.
[12] Id. at 264:3-11, Exh. B to the Alger Dec. (emphasis added).

1    As Ms. Harris explained at her deposition, █████████████████

2    ███████████████████████████████████ And, indeed, before

3 this suit was filed, Larian was quoted in various news reports as claiming he created

4 Bratz after being inspired by his children, without any mention that Bryant was

5 actually the inventor of Bratz.[14]

6          <u>Mattel Uses the Larian E-mail in its Motion for Summary Judgment</u>.

7 Even after Ms. Harris' deposition, MGA did not claw-back or make any assertion of

8 privilege as to the Larian E-mail. On March 7, 2008, Mattel submitted the Larian E-

9 mail in support of its Motion for Partial Summary Judgment, as evidence that MGA

10 and Larian aided and abetted Bryant's breach of his duties, among other claims.[15]

11 Mattel also cited to the Larian E-mail in opposition to the summary judgment

12 motions of MGA and Bryant, in response to defendants' contention that Mattel's

13 claims are barred by the statute of limitations.[16]  Although defendants filed

14 objections to Mattel's summary judgment evidence, they did not raise any objection

15 to the Larian E-mail on grounds of privilege and made no effort to claw it back.[17]

16          <u>MGA Claims it Inadvertently Produced the Larian E-mail</u>.  On March

17 24, 2008, MGA for the first time claimed that it had inadvertently produced the

18 Larian E-mail and that it was protected by attorney-client privilege.[18]  MGA

19 demanded that Mattel destroy or return all copies of the Larian e-mail under the

20 claw-back provision of the Protective Order.  MGA subsequently produced a

21

    [13]   Harris Tr., at 264:22-265:2, Exh. B to the Alger Dec.

22     [14]   <u>E.g.</u>, March 5, 2004 Chicago Sun-Times article, Exh. G to the Alger Dec.;

23 March 29, 2004 San Fernando Valley Business Journal Article, Exh. H to the Alger Dec.; July 28, 2003 BusinessWeek article, Exh. I to the Alger Dec.

24     [15]   Alger Dec., ¶ 6.

    [16]   <u>Id</u>.

25     [17]   <u>Id</u>.; MGA's Evidentiary Objections to Mattel, Inc.'s Motion for Partial

26 Summary Judgment ("Evidentiary Objections"), at 54, Exh. C to the Alger Dec.

    [18]   Alger Dec., ¶ 7; March 24, 2008 letter from Amy Park to Timothy L. Alger,

27 Exh. D to the Alger Dec.

28

1  redacted version of the e-mail.[19]  Mattel complied with MGA's demand, but

2  indicated that it would contest the claim of privilege.[20]

3  <u>Larian Denies Under Oath That He</u> ███████████████████

4  ████████████  On March 26, 2008, Mattel deposed Isaac Larian for a second

5  day.  During the deposition, Larian ████████████████████████

6  ██████████████████████

7  ███████████████████████████████

8  ███████████████████████████████

9  ██████████████████████████

10  ████████████████

11  ████████████████████████████████████████

12  ████████████████████████████████████████

13  ██████

14

15                    <u>**Argument**</u>

16  **I.    <u>THE LARIAN E-MAIL IS NOT PRIVILEGED</u>**

17          The burden is on MGA to establish that the Larian E-mail is protected

18  by attorney-client privilege.  <u>United States v. Munoz</u>, 233 F.3d 1117, 1128 (9th Cir.

19  2000).  The Ninth Circuit defines attorney-client privilege to include the following

20  elements: "(1) When legal advice of any kind is sought (2) from a professional legal

21  adviser in his or her capacity as such, (3) the communications relating to that

22  ─────────────────────

23  [19]  Exh. A to the Alger Dec.
     [20]  March 24, 2008 letter from Timothy L. Alger to Amy Park, Exh. E to the

24  Alger Dec.
     [21]  March 26, 2008 Deposition Transcript of Isaac Larian, at 275:8-11, Exh. F to

25  the Alger Dec.

26  [22]  Isaac Larian e-mail, dated 2-6-03, Exh. J to the Alger Dec.  In an email from
     Dee Dee Valencia to Isaac Larian, she states, ███████████████

27  ████████████████████

28

                                                                MATTEL'S MOTION FOR COMPEL

1   purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance,

2   permanently protected (7) from disclosure by the client or by the legal adviser (8)

3   unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th

4   Cir. 2002). MGA thus is not entitled to redact the Larian e-mail unless the redacted

5   material meets each of the elements of privilege. Attorney-client privilege only

6   protects communications "necessary to obtain informed legal advice-which might

7   not have been made absent the privilege." Griffith v. Davis, 161 F.R.D. 687, 694

8   (C.D. Cal. 1995)(quoting Fisher v. United States, 425 U.S. 391, 403 (1976)).

9            The Larian e-mail satisfies none of the required elements:

10           Larian Did Not Seek Legal Advice. The Larian E-mail was sent in

11   March 2002.[23] At that time, there was no pending or threatened litigation involving

12   MGA, Bryant and Bratz. Even more importantly, no legal advice was requested in

13   the e-mail. Rather, Mr. Larian issued a simple business instruction to the company's

14   COO, Mr. Mirza, and two members of the legal department that could have been

15   carried out by any employee.[24] This is shown by Mr. Larian's instruction itself,

16   ███████████████████████████████████████████████████

17   ████████████████████████ Indeed, that Mr. Mirza, a non-lawyer, was one of

18   the three persons to whom the identical instruction was given establishes that there

19   was nothing "legal" about the instruction. Nor does anything in the instruction itself

20   suggest that its purpose was to elicit or provide the basis for legal advice – and

21   certainly the email itself makes no request for legal advice.

22           A communication to an in-house attorney is not automatically cloaked

23   in privilege:

24           In order to show that a communication relates to legal

25           advice, the proponent of the privilege must demonstrate

26   _____

27   [23] Exh. A to the Alger Dec.
     [24] Alger Dec., ¶ 4.

28

1           that the "primary purpose" of the communication was

2           securing legal advice.  Extending protection to

3           communications primarily and sufficiently animated by

4           some other purpose would not be necessary to encourage

5           forthright disclosures by clients to lawyers – so such

6           communications should not be privileged.

7 U.S. v. ChevronTexaco Corp., 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002); accord

8 Griffith v. Davis, 161 F.R.D. 687, 697 (C.D. Cal. 1995) (party claiming privilege

9 must "prove that all of the communications it seeks to protect were made primarily

10 for the purpose of generating legal advice").  Larian's request that his employees

11 carry out a business task – ██████████████████████████████████████

12 ████████████████ – lacked the goal of securing legal advice.  The redacted portion

13 of the email is not privileged.

14           <u>The Attorney Recipient Was Not Acting in their Capacity as Such</u>.

15 Although an attorney was among the recipients of the Larian E-mail, the

16 communication provides no indication that it was related to her role as attorney.

17 Anyone employed at MGA could carry out the task requested.  As the e-mail itself

18 reflects, whether Mr. Mirza (the COO), or Mote or Cahill carried out the task did not

19 matter.  Nothing about it required the skills or knowledge of a lawyer.  The

20 communication was of a purely business nature.[25]  See United States v. Philip

21 Morris Inc., 209 F.R.D. 13, 17 (D.D.C. 2002) (ordering depositions of in-house

22 attorneys who had substantial non-legal responsibilities, including corporate,

23 business, managerial, public relations, and advertising duties).

24           [C]ommunications made by and to the . . . in-house lawyer

25           with respect to business matters, management decisions or

26           business advice are not protected by the privilege.

27     [25]  Id.

28

1      (Citations.)  "The possession of a law degree and

2      admission to the bar is not enough to establish a person as

3      an attorney for purposes of determining whether the

4      attorney-client privilege applies. . . . [T]he lawyer must not

5      only be functioning as an advisor, but the advice given

6      must be predominately legal, as opposed to business, in

7      nature."

8 Boca Investerings Partnership v. U.S., 31 F. Supp. 2d 9, 11-12 (D.C.D.C. 1998)

9 (quoting North Am. Mort. Investors v. First Wisc. Nat'l Bank, 69 F.R.D. 9, 11 (E.D.

10 Wis. 1975)); accord Boston Edison Co. v. U.S., 75 Fed. Cl. 557, 563 (Fed. Ct. Cl.

11 2007) (attorney who served as consultant subject to deposition); Southern Film

12 Extruders, Inc. v. Coca-Cola Co., 117 F.R.D. 559, 561-62 (M.D.N.C. 1987)

13 (allowing deposition of attorneys who prepared proxy statement); Montebello Rose

14 Co. v. Agricultural Labor Relations Bd., 119 Cal. App. 3d 1, 32 (1981)

15 (communications of an attorney acting as negotiator were not privileged because the

16 task could have been carried out by a non-attorney).

17      The Redacted Portion of the Larian E-mail Was Not Made in

18 Confidence or Permanently Protected.  Larian did not keep the communication in

19 confidence.  As Ms. Harris testified, ███████████████████████

20 ███████████████████████████████████████████████████

21 ███████████████████████████████████████████████████

22 ███████████████████████████[26]  Also, the redacted portion of the Larian E-

23 Mail was mixed with other information that was clearly non-privileged, and MGA

24 concedes this by redacting only the portion ████████████████████

25 ████████ See Hardy v. New York News, 114 F.R.D. 633, 644 (S.D.N.Y. 1987)

26 (failure to keep legal communications segregated suggests that they are not

27 ──────────────

   [26] Harris Tr., at 262:11-265:2, Exh. B to the Alger Dec.

28

1  privileged); In re Rospatch Sec. Litigation, 1991 WL 574963, *7-8 (W.D. Mich.,

2  March 14, 1991) (same).  Thus, the statement was not made in confidence or

3  permanently protected as such.

4            Accordingly, the Larian E-mail is not privileged, and MGA should be

5  compelled to produce the document in unredacted form.

6

7  **II.     MGA WAIVED THE PRIVILEGE BY FAILING TO OBJECT TO ITS**

8           **USE AT DEPOSITION AND AS AN EXHIBIT IN THE SUMMARY**

9           **JUDGMENT PAPERS**

10           Even if the redacted portion of the Larian E-mail could be considered

11  privileged, the privilege was waived by MGA by its failure to seek return of the

12  document until after its extensive use at deposition and as an exhibit in support of

13  Mattel's motion for partial summary judgment and in opposition to defendants'

14  motions for partial summary judgment.  The combination of these two events

15  establishes waiver.

16           Two months after its production, Mattel introduced the Larian E-mail at

17  the February 26, 2008 deposition of Rachel Harris.[27]  Ms. Harris was questioned at

18  length regarding its contents.[28]  Although two attorneys represented MGA at the

19  deposition, neither of them clawed back the e-mail or objected to the use of the

20  document on the basis of the attorney-client privilege.  Indeed, they made no

21  objection whatsoever to the document.  This is a clear waiver of the attorney-client

22  privilege.  Diversified Group, Inc. v. Daugerdas, 304 F. Supp. 2d 507, 515

23  (S.D.N.Y. 2003) (failure to object at a deposition waives attorney-client privilege);

24  Palazetti Import/Export, Inc. v. Morson, 2000 WL 1015921, * 1 (S.D.N.Y. July 21,

25  2000).

26

27  [27]  Harris Tr., at 261:8-267:11, Exh. B to the Alger Dec.
    [28]  Id.

28

1  During the meet and confer process, MGA claimed that it did not waive

2  the privilege because Ms. Harris lacked authority to do so.[29]  This misses the point.

3  MGA's attorneys were present at the deposition when the Larian E-mail was

4  introduced and discussed.  Mattel provided them with copies of the Larian E-mail,

5  and they were present as counsel for Mattel questioned the witness regarding its

6  contents.[30]

7  Nor did MGA object to Mattel's reliance on the Larian E-mail in its

8  summary judgment motion – despite the fact that the motion described it as perhaps

9  the most damning evidence of MGA's liability.[31]  Mattel certainly cast a spotlight on

10  the document.  MGA filed objections to Mattel's evidence, including the Larian E-

11  Mail, but did not utter a word about attorney-client privilege.[32]  MGA also failed to

12  demand the document's return until three weeks after Mattel filed its summary

13  judgment motion.  See S.E.C. v. Cassano, 189 F.R.D. 83, 86 (S.D.N.Y. 1999)

14  (excusable neglect must demonstrate reasonable efforts to discovery and correct

15  disclosure); F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A., 184 F.R.D. 64, 75 (D. Md.

16  1998) (burden is on privilege holder to demonstrate inadvertence).

17  Finally, MGA's claim of inadvertent production should be rejected

18  because it will prejudice Mattel.  Bank Brussels Lambert v. Credit Lyonnais, 160

19  F.R.D. 437, 446 (S.D.N.Y. 1995) (unfairness to receiving party grounds for finding

20  waiver).  Mattel has used the document as a key part of its case – without any

21  objection from MGA until the ship had left the dock.  Indeed, MGA demanded that

22  Mattel "expunge" the document from its summary judgment papers, by extracting it

23  from the exhibits and redacting all references from the briefs, separate statements,

24  and other papers filed with the Court.  To require such abridgment of dispositive

25  [29]  Alger Dec., ¶ 8.

26  [30]  Harris Tr., at 261:8-267:11, Exh. B to the Alger Dec.

27  [31]  Alger Dec., ¶ 6.

[32]  Evidentiary Objections, at 54, Exh. C to the Alger Dec.

28

1  papers that were the result of many weeks of work and substantial legal fees would
2  be grossly unfair and prejudicial to Mattel.[33]  Mattel chose which arguments to make
3  and which evidence to present and emphasize in reliance on MGA's production of,
4  and failure to object to, the Larian E-mail.  Nothing about the document put Mattel
5  on notice that it was privileged – as discussed above, it contains a mere business
6  instruction, and the fact that an attorney and a paralegal were among nine employee
7  recipients does not make the communication privileged.

8         MGA cannot now belatedly delete from the record a critical piece of
9  evidence.

10

11  **III.    THE DISCOVERY MASTER SHOULD REVIEW THE LARIAN**
12  **E-MAIL IN CAMERA**

13         At the very least, the Discovery Master should conduct an *in camera*
14  review of the Larian E-mail.  That review will confirm the non-privileged nature of
15  the document.

16         The Supreme Court has "approved of the practice of requiring parties
17  who seek to avoid disclosure of document to make the documents available for in
18  camera inspection and the practice is well established in federal courts."  United
19  States v. Zolin, 491 U.S. 554, 569 (1989).  The only threshold that must be met is
20  "evidence sufficient to support a reasonable belief that in camera review may yield
21  evidence that establishes the exception's applicability."  Id. at 574.  Here, ample
22  evidence has been provided to justify *in camera* review.

23

24

25

26

27  ───────────────
     [33]   Alger Dec., ¶ 8.
28

07209/2447663.3

-12-

1

## Conclusion

2       For the foregoing reasons, the Discovery Master should compel the

3   production of the Larian E-mail in an unredacted form.

4

5   DATED:  April 18, 2008             QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
6

7                                       By
8                                          Timothy L. Alger
                                           Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2447663.3

-13-

1 **PROOF OF SERVICE**

2    I am employed in the County of Los Angeles, State of California. I am over the age of

3 eighteen years and not a party to the within action; my business address is 865 South Figueroa

4 Street, 10th Floor, Los Angeles, California 90017.

5    On April 18, 2008, I served true copies of the following documents described as:

6 **MATTEL INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE**

7 **PRODUCTION OF DOCUMENT BATES NUMBERED MGA 3801819-22; AND**

8 **MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

| Keker & Van Nest, LLP<br>John W. Keker, Esq.<br>Michael H. Page, Esq.<br>Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111 | |

13    [√]    **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart

14 Oliver & Hedges for collecting and processing correspondence for mailing with the United States

15 Postal Service. Under that practice, it would be deposited with the United States Postal Service

16 that same day in the ordinary course of business. I enclosed the foregoing in sealed envelope(s)

17 addressed as shown above, and such envelope(s) were placed for collection and mailing with

18 postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary

19 business practices.

20    [√]    **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other

21 facility regularly maintained by the overnight service carrier, or delivered such document(s) to a

22 courier or driver authorized by the overnight service carrier to receive documents, in sealed

23 envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or

24 provided for, addressed to the person(s) being served.

25    I declare that I am employed in the office of a member of the bar of this court at whose

26 direction the service was made.

27    Executed on April 18, 2008, at Los Angeles, California.

28

Kelly Velazquez

07209/2476889.1

1  **PROOF OF SERVICE**

2    I am employed in the County of Los Angeles, State of California. I am over the age of

3  eighteen years and not a party to the within action; my business address is 865 South Figueroa

4  Street, 10th Floor, Los Angeles, California 90017.

5    On April 18, 2008, I served true copies of the following documents described as:

6  **MATTEL INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE**

7  **PRODUCTION OF DOCUMENT BATES NUMBERED MGA 3801819-22; AND**

8  **MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

| 9<br>10<br>11<br>12 | Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | Overland Borenstein Scheper & Kim LLP<br>Mark E. Overland, Esq.<br>David C. Scheper Esq<br>Alexander H. Cote Esq<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071 |
| --- | --- | --- |

13

14    [√]    **[PERSONAL]** by personally delivering the document listed above to the person(s)

15  at the address(es) set forth above.

16    I declare that I am employed in the office of a member of the bar of this court at whose

17  direction the service was made.

18    Executed on April 18, 2008, at Los Angeles, California.

19

20

21    Dave Quintana

22

23

24

25

26

27

28

07209/2476889.1