| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | Proctor Dec., Exh. 75 (Bryant's Angel sketches, Bates-numbered BRYANT 00173-174.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| | Corey Dec., Exh. 20 (Garcia Tr. Vol. 2 at 321:22-322:6.) | No objection. |
| | Proctor Dec., Exh. 76 (Bryant invoice, Bates-numbered MGA 001294-96.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| | Corey Dec., Exh. 21 (Deposition Transcript of Kerri Brode, Percipient, dated August 15, 2007, at 117:18-24).) | No objection. |
| 57.    Bryant targeted Mattel vendors and engaged them to start their work on Bratz before he left Mattel. | Proctor Dec., Exh. 77 (Facsimile from Bryant to Universal Commerce Corp., Bates-numbered BRYANT 01200-03.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)

The cited evidence is also irrelevant in that evidence of Bryant engaging third-party vendors does not tend to make a fact of consequence more probable. (Fed. R. Evid. 401.)

The recitation of the evidence is also argumentative and misleading in its use of the word "targeted." The cited |

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | evidence does not establish that Bryant "targeted" anyone. |
| 4 | | | |
| 5 | | Corey Dec., Exh. 3 (Bryant Tr. Vol. 3 at 680:13-21.) | No objection. |
| 6 | | | |
| 7 | | Proctor Dec., Exh. 78 (Marlow's invoices for 169 hours of work on Bratz beginning as early as September 29, 2000, Bates-numbered MGA 0072161-167.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | The cited evidence is also irrelevant in that evidence of Veronica Marlow engaging third-party vendors does not tend to make a fact of consequence more probable. (Fed. R. Evid. 401.) |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | Corey Dec., Exh. 18 (Garcia Tr. Vol. 4 at 1276:16-21.) | No objection. |
| 17 | | | |
| 18 | | Corey Dec., Exh. 2 (Bryant Tr. Vol. 2 at 341:18-342:11 (testifying about the drawing he gave to Margaret Leahy while he was still at Mattel for her to begin her sculpting work on Bratz).) | The cited testimony has been mischaracterized. Mr. Bryant does not admit that he gave Ms. Leahy the drawing "while he still worked at Mattel." Rather, Mr. Bryant testifies that he is "not exactly sure when [he] gave this to her." |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | Proctor Dec., Exh. 79 (October 12, 2000 e-mail from Liz Hogan to Paula Treantafelles and Carter Bryant, copy to Steve Linker, Bates-numbered SL00001.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) The cited evidence is also inadmissible hearsay. (Fed. |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | | R. Evid. 802.) |
| | Corey Dec. Exh. 9 (Linker Tr. Vol. 1 at 57:7-21, 66:16-67:9.) | No objection. |
| | Proctor Dec., Exh. 80 (October 14, 2000 e-mail from Hogan to Treantafelles copying Linker, Bates-numbered SL00005-7.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) The cited evidence is also inadmissible hearsay. (Fed. R. Evid. 802.) |
| | Corey Dec., Exh. 1 (Bryant Tr. Vol. 1 at 221:21-222:11(noting that before he signed his contract with MGA, he and Garcia met with Steve Linker regarding packaging designs for Bratz).) | No objection. |
| 58.   Bryant created Bratz designs that bore March and April 2000 fax header dates -- six to seven months before his last day at Mattel. | Proctor Dec., Exh. 81 (Bratz designs with March and April 2000 fax headers, Bates-numbered KMW-M 01647-8, MGA HK 0001928, MGA HK 0001935, KMW-M 007726, KMW-M 007729, KMW-M 007734 & BRYANT 00167.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)<br><br>Furthermore, the recitation of the evidence is misleading because the fax header dates do not indicate that the drawings were created while Bryant was at Mattel.<br><br>This evidence is also irrelevant. Mattel offers no evidence that the fax header dates referenced are |

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (F

Exhibit C
Page 83

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| | | | accurate or that the faxes were actually sent on those dates. |
| | | Corey Dec., Exh. 2 (Bryant Tr. Vol. 2 at 317:17-23.) | No objection. |
| | 59.    Paula Treantafelles, the project manager on Bratz, stated in an e-mail dated October 10, 2000 that Bryant worked for MGA for at least 4 hours per day starting weeks before he left Mattel. | Proctor Dec., Exh. 82 (E-mail correspondence between Larian, O'Connor, Dennis Medici and Treantafelles, dated October 10, 2000, Bates-numbered MGA 004717.) | Objection.  Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence.  (Fed. R. Evid. 602.)  Furthermore, the recitation of evidence is misleading as the email is not placed in context. Additional, Paula Treantafellas email is improper lay opinion as she has no basis for her statement. (Fed. R. Evid. 701.)  Additionally, to the extent that Mattel is offering the agreement to prove the truth of the matter asserted, this is impermissible hearsay.  (Fed. R. Evid. 801 and 802.) |
| | | Corey Dec., Exh. 22 (Deposition Transcript of Paula Garcia, Vol. 3, dated October 9, 2007 at 873:25-875:4); | Objection.  The cited testimony has been mischaracterized.  Paula Garcia states that Carter Bryant could not have worked the hours in question in Corey Dec., Exh. 22 (Deposition Transcript of Paula Garcia, Vol. 3, dated October 9, 2007 at 875:16-876:9). |
| | 60.    MGA produced | Proctor Dec., Exh. 83 | Objection.  Lacks |

43

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| an internal MGA e-mail message stating that the first Bratz dolls were created in September 2000. | (E-mail from Nana Ashong to O'Connor, Treantafelles and Martin Hitch, copy to Jackie Bielke, dated September 6, 2001, Bates-numbered MGA0069426-7.) | foundation.  Mr. Proctor lacks personal knowledge of the cited evidence.  (Fed. R. Evid. 602.)  Additionally the email lacks proper authentication.  (Fed. R. Evid. 901.)

To the extent that Mattel is offering the agreement to prove the truth of the matter asserted, this is impermissible hearsay. (Fed. R. Evid. 801 and 802.)

This testimony is also improper lay opinion testimony as Ashong has no personal knowledge of the facts.  (Fed. R. Evid. 701.) |
|  | Corey Dec., Exh. 23 (Deposition Transcript of Nana Ashong Vol. 1, dated January 28, 2008, at 215:23-216:16.) | No objection |
| 61.    Anna Rhee, the face painter of Bratz, testified that invoices dated as early as June 12, 2000 were for work she performed on Bratz for MGA under the "code name" of "Angel." | Proctor Dec., Exh. 84 (Rhee's 2000-2001 invoices to MGA, Bates-numbered AR 0001-0058.) | Objection.  The quoted language is vague and ambiguous, particularly as to "code name", and mischaracterizes testimony.

Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence.  (Fed. R. Evid. 602.) |
|  | Corey Dec., Exh. 24 (Deposition Transcript of | No objection |

44

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | Anna Rhee Non-Confidential, dated February 3, 2005 at 23:13-24:8.) | |
| | **Corey Dec., Exh. 25** (Deposition Transcript of Anna Rhee Confidential, dated February 3, 2005, at 107:16-110:6 (Rhee testifies about AR 0001 and says that the invoice reflects Bratz work she performed for Bryant).) | Objection. The cited testimony has been mischaracterized. |
| 62.    Bryant testified that he informed Isaac Larian and Paula Garcia, MGA's CEO and Product Manager respectively, that he was a Mattel employee at his initial meeting with MGA. Larian, O'Connor and Rachel Harris have each confirmed that they knew he was a Mattel employee when each first met with him. | **Corey Dec., Exh. 1** (Bryant Tr. Vol. 1 at 88:12-13 ("I believe that I told Paula that I was employed by Mattel at my first meeting with her."); Id. at 88:21-89:1 (Bryant testifying that he told Larian he was an employee of Mattel at the September 1, 2000 meeting).) | No objection. |
| | **Corey Dec., Exh. 13** (Larian Tr. Vol. 1 at 77:17-18 (Larian testifies that "[Bryant] said he works at Mattel.").) | No objection. |
| | **Proctor Dec., Exh. 85** (Isaac Larian's testimony in Art Attacks at MGA 0868922.) | No objection. |
| | **Corey Dec., Exh. 14** (O'Connor Tr. at 71:8-17, | No objection. |

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | (O'Connor testifies that Bryant mentioned he was employed by Mattel and that he was a designer for Barbie Collectibles).) | |
| 63.    Bryant testified that he told Larian that he was a Mattel employee the first time that he met Larian.  In addition, MGA's Rachel Harris testified that MGA knew Bryant was a Mattel employee at the time Bryant presented his drawings to MGA. | Corey Dec., Exh. 1 (Bryant Tr. Vol. 1 at 88:21-89:3.) | No objection |
| | Corey Dec., Exh. 16 (Rachel Harris Tr. Vol. 1 at 41:10-42:10, 166:1-168:8.) | Objection.  The cited testimony has been mischaracterized to the extent that Ms. Harris testifies as to her, not MGA's, purported knowledge. |
| 64.    Bryant told MGA's counsel that he had signed a confidentiality agreement with Mattel. | Proctor Dec., Exh. 86 (Facsimile from Bryant to David Rosenbaum, Bates-numbered MGA007337-40.) | No objection. |
| | Corey Dec., Exh. 4 (Bryant Tr. Vol. 4 at 772:18-773:15.) | No objection. |
| | Corey Dec., Exh. 3 (Bryant Tr. Vol. 3 at 585:17 - 587:17 (Bryant testifying that he had informed MGA that he had signed a | No objection. |

46

Exhibit C
Page 87

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | confidentiality agreement).) | |
| 65.    MGA specifically paid Bryant for work performed and expenses that he incurred on behalf of MGA while Bryant was still working for Mattel. | Proctor Dec., Exh. 76 (Bryant's invoice dated August 31, 2000 and marked as Exhibit 593 in this action);. | Objection. Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)  The statement also mischaracterizes the evidence in that Bryant was not "paid," but rather reimbursed for his expenses. |
| | Corey Dec., Exh. 21 (Brode Percipient Tr. at 117:10-118:6.) | No objection. |
| | Proctor Dec., Exh 89 (Internal MGA e-mail regarding setting Bryant up as a vendor, Bates-numbered MGA 001291.) | Objection. Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)  Furthermore, the evidence does not support the statement that Carter Bryant was "paid" "for work performed".  The evidence is also hearsay in that Mattel uses the document to establish that Bryant was a "vendor". (Fed. R. Evid. 802.) |
| | Corey Dec., Exh. 26 (Deposition Transcript of MGA Designee Kerri Brode ("Brode Designee Tr.") dated January 19, 2007, at 53:6-14.) | No objection. |
| | Proctor Dec., Exh. 111 (Bryant's actual expense report, receipts, and MGA's payment to Bryant for his Bratz expenses, Bates- | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | numbered MGA 3786749-60.) | |
| 66.    Bratz has been a very successful product for MGA and Larian. | Corey Dec., Exh. 27 (Deposition Transcript of Lisa Tonnu, Vol. 2, dated September 24, 2007, at 380:21-381:19.) | No objection. |
| | Proctor Dec., Exh. 4 (Bratz Sales from 2001-2006 spreadsheet, Bates-numbered MGA 0868723-865, marked as Exhibit 660 in this action.) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)  The evidence is also irrelevant.  (Fed. R. Evid. 401.)<br><br>The statement mischaracterizes the evidence in that the document does not use the term "very successful".  The statement is also argumentative. |
| 67.    The Inventions Agreement states at the outset that the agreement "is designed to make clear that ... inventions that I create will be owned by the Company," and concluding with the capitalized, bold-faced statement that "**THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND** | Proctor Dec., Exh. 5 (Inventions Agreement) | Objection.  The quoted language is taken out of context and mischaracterizes the evidence.  The language is also vague and ambiguous as to "inventions", "obligations", "trust", and "during his or her employment". |

48

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RN)

Exhibit C
Page 89

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| 1 2 | | | |
| 3 4 5 6 7 | **AFFECTS THE EMPLOYEE'S RIGHT TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT."** | | |
| 8 9 10 11 12 13 14 15 16 17 | 68.    The Bratz project manager at MGA admitted that the Bratz dolls are based on Bryant's drawings.  An MGA <u>Rule</u> 30(b)(6) designee likewise admitted that the drawing started the "concept" from which the dolls "evolved[.]" | **Proctor Dec., Exh. 110** (E-mail interview of Paula Treantafelles for "Dolls Magazine", dated April 25, 2001 and May 1, 2001, Bates-numbered MGA 0051255-7, at MGA 0051256 ("The four girls were already concepted [sic] when presented by the inventor during our first meeting.  I thought they were incredible and I tried to stay true [to] this inventor/creator's vision.").) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)  The quoted language is taken out of context and mischaracterizes the evidence.  Ms. Garcia did not testify that the BRATZ Dolls are "based" on Bryant's drawings.  The language is also vague and ambiguous as to "concepted" and "inventor". |
| 18 19 20 21 22 | | **Corey Dec., Exh. 10** (Rebecca Harris Vol. 2 at 490:15-17 ("His drawings start a concept, you know, and from the concept they evolved into what they are.").) | Objection.  The quoted language is taken out of context and mischaracterizes the evidence.  The language is also vague and ambiguous as to "concept" and "evolved". |
| 23 24 25 26 27 28 | 69.    Bryant departed from Mattel on October 19, 2000. | **Proctor Dec., Exh. 90** (Mattel Exit Interview Form.) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)  The cited evidence is mischaracterized in that it does not establish Bryant's departure date, only |

49
MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (l

Exhibit C
Page 90

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | | that he signed the document on October 19, 2000. |
| | **Proctor Dec., Exh. 7** (Proprietary Information Checkout) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)<br><br>Furthermore, the evidence is irrelevant. (Fed. R. Evid. 401.) |
| 70.    On April 27, 2004, Mattel filed its original complaint in California state court against Bryant in <u>Mattel, Inc. v. Bryant</u>, Case No. BC314398. Mattel brought claims for breach of contract and breach of duty of loyalty. | **Proctor Dec., Exh. 91** (Mattel's Complaint in <u>Mattel, Inc. v. Bryant</u>, Case No. BC314398 at 5-9.) | No objection. |
| 71.    On May 13, 2005, Mattel filed its answer to MGA's complaint in <u>MGA Entertainment, Inc. v. Mattel, Inc.</u>, Case No. CV 05-2727 SGL (RNBx.) | **Proctor Dec., Exh. 92** (Mattel's answer to MGA's complaint in <u>MGA Entertainment, Inc. v. Mattel, Inc.</u>, Case No. CV 05-2727 SGL (RNBx), dated May 13, 2005.) | No objection. |
| 72.    On November 20, 2006, Mattel moved to amend its complaint against MGA and Bryant. Mattel added a claim for copyright infringement against Bryant when it moved | **Proctor Dec., Exh. 93** (Mattel's Notice of Motion and Motion for Leave to File Amended Complaint at 1-3, 14, filed November 20, 2006.) | No objection. |

Exhibit C Page 91

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| to amend. | | |
| 73.     The Court has previously ruled that, "November 24, 2003[] marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant | Proctor Dec., Exh. 94 (Court's Order Denying MGA's Motion for Terminating Sanctions, dated August 27, 2007, at 3.) | Objection. References to prior orders of this or any other court speak for themselves and do not belong in Mattel's separate statement of undisputed facts.  Furthermore, Mattel mischaracterizes the Court's Order. |

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RNE

Exhibit C
Page 92

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| before November 2003." | | |
| 74.    The Court ruled that Mattel could file its Amended Complaint in Case No. 04-9059 as an Amended Answer in Case No. 05-2727 instead. | Proctor Dec., Exh. 95 (Court's Order Regarding Mattel's Motion for Leave to Amend, dated January 11, 2007, at 22:13-15.) | Objection. References to prior orders of this or any other court speak for themselves and do not belong in Mattel's separate statement of undisputed facts. Furthermore, Mattel mischaracterizes the Court's Order. |
| 75.    The Court previously found that, "By MGA's own admission Mattel's copyright claim arises out of the same conduct or transaction contained in the original complaint filed in April, 2004 ." | Proctor Dec., Exh. 95 (Court's Order Regarding Mattel's Motion for Leave to Amend, dated January 11, 2007, at 13.) | Objection. References to prior orders of this or any other court speak for themselves and do not belong in Mattel's separate statement of undisputed facts. Furthermore, Mattel mischaracterizes the Court's Order. |
| 76.    Bryant alleged in an Interrogatory Response that Mattel knew "he was going to perform work for a Mattel competitor," but "waited and said nothing while the [Bratz] dolls were successfully (and at great cost) developed, manufactured and sold, and only filed suit years later." | Proctor Dec., Exh. 96 (Carter Bryant's Responses to Mattel, Inc's Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses ("Bryant's Responses") at §§ B, E.) | No objection. |
| 77.    In the Inventions Agreement, Bryant acknowledged that his | Proctor Dec., Exh. 5 (Inventions Agreement at ¶ 4(a).) | Objection. The quoted language is taken out of context and mischaracterizes |

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| "obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company." | | the evidence. The language is also vague and ambiguous as to "objections". |
| 78.    During his exit interview, Bryant claimed that he was leaving to start his own freelancing business and work for himself doing design and development. | **Corey Dec., Exh. 1** (Bryant Tr. Vol. 1. at 208:22-24.) | No objection. |
| 79.    Had Mattel been aware that Bryant was going to a competitor, it would have followed its policy of expelling that employee the same day of his announced resignation. | **Corey Dec., Exh. 28** (Deposition Transcript of Sandra Yonemoto, Confidential, Vol. 1, dated May 30, 2007, at 67:16-19.) | Objection. The statement mischaracterizes the testimony in that Ms. Yonemoto testifies "[i[n 2000 when Mattel learned that en employee was going to a competitor, then that employee was exited the day of his or her notice". Moreover, the cited testimony contains speculation. |
| 80.    On January 4, 1999, Bryant executed a Conflict of Interest Questionnaire ("Conflict Questionnaire"), in which he certified that, other than as disclosed, he had not worked for any competitor of Mattel in the prior | **Proctor Dec., Exh. 91** (Mattel's Complaint at Exh. B.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) The cited evidence is also irrelevant. (Fed. R. Evid. 401). |

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RN

Exhibit C
Page 94

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest. | | |
| 81.  Bryant did not notify Mattel that he was working on Bratz. | Corey Dec., Exh. 4 (Bryant Tr. Vol. 4 at 885:3-18.) | Objection. The statement mischaracterizes the testimony. The testimony is vague and ambiguous as to "anyone at Mattel".<br><br>This evidence is also irrelevant. Mattel offers no evidence that Bryant was under any obligation to notify Mattel that he was working on BRATZ -- before he joined Mattel or while he worked there. |
| 82.  In an e-mail dated March 12, 2002, from Isaac Larian to MGA personnel, regarding inquiries about Bratz, Larian stated that:"[t]here must be no mention about Mattel or any of their properties, Carter, any MGA Bratz arts, etc." | Proctor Dec., Exh. 97 (E-mail from Isaac Larian dated March 12, 2002 instructing MGA personnel, Bates-numbered MGA 3801819-22.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) Furthermore, the quoted language is misleading, as the email responds to a Mattel cease-and-desist letter.<br><br>The e-mail is also inadmissible hearsay. (Fed. R. Evid. 802.) |
| 83.  In response to an e-mail from Larian proposing development of a collectible Bratz | Proctor Dec., Exh. 98 (E-mail from Isaac Larian to Dee Dee Valencia dated February 6, 2003, Bates- | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. |

54
MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RN

Exhibit C
Page 95

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| 3 | doll, Dee Dee Valencia proposed creating a limited edition model that would create a marketing "frenzy." However, she raised the question: "Signed by....????? I know we want to keep Carter under wraps." | numbered MGA 3801558-9. | Evid. 602.)  Furthermore, the quoted language is misleading in that the quote refers to internal MGA understanding that Mattel had sent a cease-and-desist letter to MGA.  The e-mail is also inadmissible hearsay. (Fed. R. Evid. 802.) |
| 10 | 84.   Lee Loetz is a toy designer with more than ten years of experience in the toy industry.  He has worked with companies throughout the industry and has prepared artwork and designs that have been implemented in numerous toys and children's products. | Loetz Dec., Exh. 1 ¶ | Objection.  The cited evidence constitutes improper expert testimony. (Fed. R. Evid. 701, 704.) |
| 19 | 85.   In public statements, Larian identified himself, not Bryant, as the creator of Bratz. | Proctor Dec., Exh. 99 (Affidavit of Isaac Larian in MGA v. Metson at p. 2, ¶ 8, Bates-numbered MGA 0868039-91 (Larian claiming he "was the inspiration behind the Bratz dolls.").) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence.  (Fed. R. Evid. 602.)  This statement also mischaracterizes the evidence in that Larian does not say he was the "creator," he says he was the "inspiration," which is both ambiguous and denoting a totally different meaning. |
| 27 | | Corey Dec., Exh. 17 (Woodman Tr. Vol. 1 at | No objection. |

Exhibit C
Page 96

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | 218:1-21.) | |
| | **Proctor Dec., Exh. 100** (Business Week article discussing Mattel and Bratz, Bates-numbered M 0074054-6, ("[Larian] got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers." | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) Moreover, the cited evidence constitutes hearsay (Fed. R. Evid. 802) in that the statement relies on language written by the article's author to establish the truth of the fact. |
| | San Fernando Valley Business Journal article discussing Larian, (Larian states "It was Jason's idea for Bratz.").) | Objection. The quoted language is vague and ambiguous as to "idea for Bratz" and, in any event, does not support the factual statement. Moreover, the cited evidence constitutes hearsay (Fed. R. Evid. 802) in that the statement relies on language written by the article's author to establish the truth of the fact. |
| | **Proctor Dec., Exh. 101** (Similarly, Larian represented to the U.S. Patent and Trademark Office that he had created the Bratz feet and packaging: U.S. patent application for Bratz feet marked as Exhibit 500 in this action.) | Objection. The cited evidence is irrelevant as to who created the idea of BRATZ. Furthermore, lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| | **Proctor Dec., Exh. 102** (Amendment to U.S. patent application for Bratz feet | Objection. The cited evidence is irrelevant as to who created the idea of |

56

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RNBx)

Exhibit C
Page 97

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | marked as Exhibit 548 in this action.) | BRATZ. Furthermore, lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| | **Proctor Dec., Exh. 103** (Patent for trapezoidal packaging marked as Exhibit 552 in this action.) | Objection. The cited evidence is irrelevant as to who created the idea of BRATZ. Furthermore, lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| | **Proctor Dec., Exh. 104** (Patent application for trapezoidal packaging marked as Exhibit 615 in this action.) | Objection. The cited evidence is irrelevant as to who created the idea of BRATZ. Furthermore, lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| | **Proctor Dec., Exh. 97** (E-mail from Isaac Larian dated March 12, 2002 instructing MGA personnel, Bates-numbered MGA 3801819-22 (Larian demanded that a Bratz website make no reference to Mattel).) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) Furthermore, the referenced language is misleading, as the email responds to a Mattel cease-and-desist letter. The e-mail is also inadmissible hearsay. (Fed. R. Evid. 802.) |
| 86. The Inventions Agreement provides "Any waiver by the | **Proctor Dec., Exh. 5** (Inventions Agreement at ¶ 4(a).) | Objection. The quoted language is taken out of context and mischaracterizes |

57

Exhibit C
Page 98

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach." | | the evidence. The language is also vague and ambiguous as to "waiver", "subsequent breach", "construed", and "provision." |
| 87.    Paragraph 1(c) of the Inventions Agreement required Bryant to "not disclose or use at any time either during or after my employment with the Company any Proprietary information except for the exclusive benefit of the Company." | Proctor Dec., Exh. 5 (Inventions Agreement at 1(c).) | Objection. The quoted language is taken out of context and mischaracterizes the evidence. The language is also vague and ambiguous as to "Proprietary Information." |
| 88.    Paragraph 3(a) of the Inventions Agreement states "I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company." | Proctor Dec., Exh. 5 (Inventions Agreement at 3(a).) | Objection. The quoted language is taken out of context and mischaracterizes the evidence. The language is also vague and ambiguous as to "engage". This evidence is also irrelevant. On its face, this provision clearly violates California public policy, as it is an unending limit on an individual's right to compete with his former employer, with no time or location limitations whatsoever. |
| 89.    Assuming Mattel employees were moonlighting as | Proctor Dec., Exh. 96 (Bryant's Responses at 35 (Joni Pratte's volleyball and | Objection. Lacks foundation as to whether the referenced moonlighting |

Exhibit C
Page 99

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| defendants suggest, such work, based on defendants' <u>own description</u>, was completely unrelated to Mattel's core line of business. | basketball books; Lori Sipos' puppets; Veronica Marlow's handbags; other employees' weekend nail and hair salon work).) | examples are "related to" Mattel's business. Moreover, the quoted language is taken out of context and mischaracterizes the evidence. The factual statement is also vague and ambiguous as to "defendants" as only Mr. Bryant's discovery response is cited. |
| 90.   The MGA Defendants' Answer and Affirmative Defenses state simply, "Mattel has abandoned any interest it may have had in the alleged copyrighted works." | **Proctor Dec., Exh. 105** (Amended Answer and Affirmative Defenses of MGA Entertainment, Inc. MGA Entertainment (HK) Limited, and MGAE De Mexico S.R.L. De C.V. To Mattel, Inc's Second Amended Answer and Counterclaims ("MGA's Answer"), dated September 19, 2007 at 24.) | Objection.  The factual statement mischaracterizes the cited evidence. |
| 91.   MGA's Answer argues that MGA allegedly "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA Defendants was valid and permissible." | **Proctor Dec., Exh. 105** (MGA's Answer at 22:12-15.) | Objection.  The factual statement mischaracterizes the cited evidence. |
| 92.   MGA admitted that it did not record its copyright assignment. | **Proctor Dec., Exh. 106** (MGA's Responses to Mattel's Third Set of Requests for Admission | No objection. |

Exhibit C
Page 100

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| | Nos. 241-44, 249-52.) | |
| 93.    MGA's complaint in MGA Entertainment, Inc. v. Mattel, Inc., Case No. CV 05-2727 SGL (RNBx), emphasizes the uniqueness of Bratz: "At approximately 9.5 to 10 inches tall, the 'BRATZ' dolls were intentionally shorter than 'Barbie' dolls and looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet (to emphasize shoe fashion and to stand on their own, unlike 'Barbie' which requires a stand), and up-to-date fashions." | Proctor Dec., Exh. 107 (MGA's complaint in MGA Entertainment, Inc. v. Mattel, Inc., Case No. CV 05-2727 SGL (RNBx).) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) The quoted language is taken out of context and mischaracterizes the evidence. |
| 94.    The sum total of MGA's attorney David Rosenbaum's investigation of Mattel's preexisting rights to Bratz was a brief telephone conversation with Bryant's attorney, Anne Wang. Wang purportedly said that Bryant created Bratz before commencing employment at Mattel. | Corey Dec., Exh. 29 (Deposition Transcript of David Rosenbaum, dated January 25, 2008, at 78:21-88:18 & 218:18-220:3.) | Objection. The factual statement is argumentative and mischaracterizes nature of Mr. Rosenbaum's conversations with Anne Wang. The cited testimony also contains hearsay (Fed. R. Evid. 802) because Mr. Rosenbaum relates what Ms. Wang told him about Bryant. |

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 11 12 13 | Rosenbaum asked no questions about what investigation Wang had done to reach that conclusion.  He did not ask any specific questions about the time, manner or place Bryant allegedly developed the concept, whether it was expressed then in any tangible form, or whether Bryant could otherwise document ownership. | | |
| 14 15 16 17 18 19 20 | 95.     On September 14, 2000, Rosenbaum received a fax from Bryant, from the fax machine at Barbie Collectibles -- stating that Bryant could not look into his agreements with Mattel further without risking suspicion. | Proctor Dec., Exh. 86 (Facsimile from Bryant to David Rosenbaum, Bates-numbered MGA007337-40.) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)  The quoted language is taken out of context and mischaracterizes the evidence. |
| 21 22 23 24 25 26 27 28 | 96.     Rosenbaum testified based on his knowledge of "customary practice" in the industry, "[h]is assumption was that as an employee of Mattel, the work that [Bryant] did for Mattel as an employee of Mattel would be owned by | Corey Dec., Exh. 29 (Rosenbaum Tr. at 88:19-90:24.) | Objection.  The testimony cited contains speculation by Mr. Rosenbaum as to Mattel's practices.  Also, the testimony contains an improper lay opinion. (Fed. R. Evid. 701.)  The quoted language also is also taken out of context and mischaracterized. |

Exhibit C
Page 102

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| Mattel."  MGA itself used Inventions Agreement substantially similar to Mattel's. | | |
| | Proctor Dec., Exh. 87 (Mercedeh Ward's Inventions Agreement with MGA, Bates-numbered MGA001470-2.) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)  Furthermore, the evidence is irrelevant.  (Fed. R. Evid. 401.)  Lastly, the factual statement is misleading as to the MGA and Mattel agreements.  The MGA and Mattel inventions agreements contain numerous distinct terms and fall far short of being "substantially similar". |
| 97.    The Bryant-MGA Agreement drafted by MGA prohibits Bryant from providing services "to any person, firm or corporation engaged in the design, development and manufacture or sale of dolls or similar products" during the term of the Agreement. | Proctor Dec., Exh. 71 (Bryant-MGA Agreement at ¶ 2.) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)  Furthermore, the evidence is irrelevant.  (Fed. R. Evid. 401.) |
| 98.    The Bryant-MGA Agreement | Proctor Dec., Exh. 71 (Bryant-MGA Agreement at | Objection.  Lacks foundation.  Mr. Proctor |

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | drafted by MGA assigns "[a]ll results and proceeds of the services provided by Bryant" under the Agreement, "including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral" to MGA "exclusively, throughout the world, and in perpetuity[.]" | ¶ 3(a).) | lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)<br><br>Furthermore, the evidence is irrelevant. (Fed. R. Evid. 401.) |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | 99.    Paragraph 3.2 of Bryant and MGA's Modification of 2000 Agreement "confirms" assignment of "all work done by Bryant prior to September 18, 2000, which became known as the Bratz property, including without limitation the drawings which are the subject of Copyright Registration Nos. VA 1-218-487, VA 1-218-488, VA 1-218-489, VA 1-218-490 and VA 1-218-491 (and the characters that are now referred to as CLOE, JADE, SASHA and YASMIN)[.]" | Proctor Dec., Exh. 72 (Modification of 2000 Agreement at § 3.2, Bates-numbered MGA000429-434.) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)<br><br>Furthermore, the evidence is irrelevant. (Fed. R. Evid. 401.) |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | 100.   Bryant testified | Corey Dec., Exh. 1 | Objection.  The factual |

Exhibit C
Page 104

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| that he had seen only the Steve Madden and Paris Blues ads before creating the Bratz drawings. | (Bryant Tr. Vol. 1 at 140:21-141:6.) | statement is misleading and mischaracterizes the testimony. Nothing in the testimony cited by Mattel suggests that Madden and Paris Blues were Bryant's "only" inspirations for the BRATZ drawings. |
| | Proctor Dec., Exh. 108 (Expert Report of Peter S. Menell, dated February 11, 2008, at 17-20, (Spice Girls dolls, Japanese anime-style cartoons, the "Blythe" line of dolls, Margaret Keene's "Ladies in Waiting" illustrations, the Lara Croft character, print advertisements by Steve Madden, Cover Girl, Paris Blue and Coca Cola).) | No objection. |
| 101.   When Bryant left Mattel's employ in October 2000, he lied about where he was going, telling Mattel employees that he was not going to work for a freelancer. | Corey Dec., Exh. 1 (Bryant Tr. Vol. 1 at 209:16-17 ("I did tell Mattel people what I was going to do, which was to go create my own business and be a freelance designer..") | Objection.  Lacks foundation as to whether Bryant "lied".  Furthermore, the factual statement mischaracterizes the testimony.  Indeed, Mr. Bryant disclosed that he was going to "be a freelance designer," which is what Bryant became after leaving Mattel. |
| | Corey Dec., Exh. 30 (Deposition Transcript of Jill Nordquist, dated July 31, 2007, at 145:1-9 (Nordquist testified that "[I asked] him if he was going to a | Objection.  Lacks foundation as to whether Bryant "lied".  Furthermore, the factual statement mischaracterizes the testimony.  Indeed, Mr. |

64

Exhibit C
Page 105

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RNBx)

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| 1 2 | | | |
| 3 4 5 6 7 | | competitor -- competitive doll company, to which he responded no"); id. at 127:22-128:9 (when asked whether Bryant was going to a competitive doll company, Bryant responded "I'm not saying.").) | Bryant disclosed that he was going to "be a freelance designer." |
| 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 | | Corey Dec., Exh. 31 (Deposition Transcript of Ivy Ross, dated January 17, 2008, at 87:5-23 ("He told me he was going to have more time on his hands, be able to sit at home and with his dog on his side and do drawings and spend more quality time at home, and it's just something he felt he really needed to do at this point in his life, and I asked if he was going to a competitor, and he said no, it was not a competitor. . . ."); id. at 88:17-19 (noting what Bryant described "felt like it was some free-lance-type-situation or part-time job"); id. at 220:5-12 (Ross explains that Ron Longsdorf suggested "[Bryant] had gotten a great opportunity where he was going to be doing something that gave him a lot of freedom and a different lifestyle and it appeared that he couldn't be convinced otherwise").) | Objection. Lacks foundation as to whether Bryant "lied". Furthermore, the factual statement mischaracterizes the testimony. Indeed, Mr. Bryant disclosed that he was going to "be a freelance designer." |
| 28 | | | |

65

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (R.

Exhibit C
Page 106

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| 102. | Larian directed a subordinate to conceal a fax header from Bryant's signed contract signature page before sending the page to Particia Glaser, Larian's attorney. The concealed fax header would have shown that the page was faxed from "Barbie Collectibles." | Corey Dec., Exh. 14 (O'Connor Conf. Tr. at 18:13-18.) | Objection. The cited testimony is mischaracterized by the factual statement. Ms. O'Connor does not use the term "conceal". Moreover the factual statement mischaracterizes the testimony to the extent it is offered to show Larian's state of mind as to Bryant's employment status with Mattel. |
| 103. | Farhad Larian, a former MGA executive and Isaac Larian's brother, has stated in court pleadings that Bryant brought Bratz to MGA by February 2000 -- and that they attempted to conceal it. | Proctor Dec., Exh. 109 ([Proposed] First Amended Verified Complaint in Larian v. Larian at ¶16, Bates-numbered FL 10569-621.) | Objection. The cited evidence is hearsay because it is being offered to prove the truth of the factual statement. (Fed. R. Evid. 802.)

Also, the cited evidence lacks foundation, and Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)

Lastly, Mattel mischaracterizes the cited evidence, which only uses the term "conceal" in reference to Farhad Larian, not Mattel or the general public. |
| 104. | Both MGA and Larian admitted they knew Bryant was a Mattel employee at the | Proctor Dec., Exh. 106 (Response to Request for Admission No. 140 in MGA's Responses to | No objection. |

66
MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RNBx)

Exhibit C
Page 107

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| time Bryant presented his drawings to MGA. | Mattel's Third Set of Requests for Admission to MGA.) | |
| | Corey Dec., Exh. 16 (Rachel Harris Tr. Vol. 1 at 41:10-42:10, 166:1-168:8.) | Objection. Mattel mischaracterizes the Rebecca Harris testimony, which does not support Mattel's proposition here. |
| 105.    Bryant told MGA that he had signed a confidentiality agreement with Mattel. | Corey Dec., Exh. 3 (Bryant Tr. Vol. 3 at 585:17 - 587:17.) | Objection.  Misstates the testimony in that Bryant did not testify that when he signed the agreement, he knew it was a confidentiality agreement. |
| | Proctor Dec., Exh. 86 (Facsimile from Bryant to David Rosenbaum, Bates-numbered MGA007337-40.) | Objection. Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| 106.    MGA itself requires strict confidentiality from its own employees in jobs such as Bryant's. | Proctor Dec., Exh. 87 (Mercedeh Ward's Inventions Agreement with MGA, Bates-number MGA 001470-2.) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.)

Furthermore, the evidence is irrelevant.  (Fed. R. Evid. 401.) |
| 107.    MGA has produced a document that shows Bryant's end date at Mattel and start date at MGA as "don't ask." | Proctor Dec., Exh. 112 (MGA spreadsheet listing former Mattel employees, Bates-numbered MGA 1134723-30, at 26.) | Objection.  Lacks foundation.  Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| 108.    MGA admits that no public statement even recognizing Bryant as Bratz's | Proctor Dec., Exh. 113 (MGA Entertainment, Inc.'s Supplemental and Amended Responses to Mattel, Inc.'s | Objection.  Mattel mischaracterizes the cited evidence to the extent it suggests Mattel was not on |

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| 1 2 | | | |
| 3 4 5 6 7 8 9 10 11 | creator was issued until July 18, 2003, when the Wall Street Journal published an article with that information. | Third Set of Requests for Admission to MGA Entertainment, Inc.) | notice of its claims against Carter Bryant and the MGA Parties before July 2003.  Moreover, MGA Parties objected to Request for Admission No. 183 on the ground that it is vague and ambiguous, particularly in its use of the phrase "identified BRYANT as the creator of BRATZ" and "press release." |
| 12 13 14 15 16 17 18 | | | Additionally, MGA Parties objected to Request for Admission No. 184 on the ground that it is vague and ambiguous, particularly in its use of the phrase "identified BRYANT as the creator of BRATZ," "press report" and "publication." |
| 19 20 21 22 23 24 | | | Finally, MGA Parties objected to Request for Admission No. 184 on the ground that it is vague and ambiguous, particularly in its use of the phrase "identified BRYANT as the creator of BRATZ," "press report" and "publication." |
| 25 26 27 28 | 109.   Defendants have not and cannot present any evidence that Mattel had notice of its claims against Bryant | Defendants have no evidence genuinely disputing this fact. | N/A |

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (R.

Exhibit C
Page 109

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| before April 27, 2001. | | |
| 110.   Defendants can proffer no evidence that Mattel consented to their employees' moonlighting activity. | Defendants have no evidence genuinely disputing this fact. | N/A |
| 111.   Defendants cannot present any evidence that suggests Mattel intended or acted in a manner that would allow its employees to believe they could violate their legal obligations with impunity. | Defendants have no evidence genuinely disputing this fact. | N/A |
| 112.   Defendants have not presented any evidence to show that they would have behaved differently had Mattel filed suit earlier, as they have continued manufacturing the infringing dolls both before and after Mattel's filing of this action. | Defendants have no evidence genuinely disputing this fact. | N/A |
| 113.   In its Eighth Affirmative Defense, MGA contends that "Mattel's damages, if any, were not caused by MGA Defendants and are not attributable to any acts or omissions of MGA defendants." | **Proctor Dec., Exh. 105** (MGA's Answer at 23:5-6.) | No objection. |
| 114.   MGA defendants | **Proctor Dec., Exh. 105** | No objection. |

| | Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|---|
| 1 2 3 4 5 6 7 8 | have asserted the following affirmative defenses that fall under the rubric of good faith: bona fide purchaser for value, 17 U.S.C. § 205(d), lawful competition, and good faith. | (MGA's Answer at 22, 25.) | |
| 9 10 11 | 115.   Bryant initially asserted a good faith defense, but withdrew it in his amended answer. | **Proctor Dec., Exh. 114** (Bryant's Amended Reply to Mattel's Counterclaims, dated September 12, 2007.) | No objection. |
| 12 13 14 15 | 116.   Bryant did not seek reconsideration of the August 27, 2007 Court's Order Denying MGA's Motion for Terminating Sanctions. | There is no evidence genuinely disputing this fact. | N/A |
| 16 17 18 19 20 21 | 117.   The Court ruled in the January 11, 2007 Order that the relation back principle applies to MGA even though it was not named a defendant in Mattel's complaint. | **Proctor Dec., Exh. 95** (Court's Order Regarding Mattel's Motion for Leave to Amend, dated January 11, 2007, at 12-15.) | Objection.  References to prior orders of this or any other court speak for themselves and do not belong in Mattel's separate statement of undisputed facts.  Furthermore, Mattel mischaracterizes the Court's Order. |
| 22 23 24 25 26 27 | 118.   The Court noted, "Again, the relations back principle would seem to render [Mattel's] claim timely if it were filed as an amended answer . . . in the 05-2727 case.") | **Proctor Dec., Exh. 95** (Court's Order Regarding Mattel's Motion for Leave to Amend, dated January 11, 2007, at 15, 22.) | Objection.  References to prior orders of this or any other court speak for themselves and do not belong in Mattel's separate statement of undisputed facts.  Furthermore, Mattel mischaracterizes the Court's Order. |
| 28 | | | |

70

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RNl

Exhibit C
Page 111

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| 119.   The nature of the underlying claim is to establish that Defendants have no interest in Bratz. | Proctor Dec., Exh. 115 (Mattel's Second Amended Answer in Case No. 05-2727, dated July 12, 2007, at ¶ 169.) | No objection. |
| 120.   Defendants were not prejudiced because they did not rely on Mattel's alleged delay; rather, they proceeded with developing and producing Bratz dolls both before and after Mattel brought suit. | Corey Dec., Exh. 27 (Tonnu Vol. 2 at 380:21-381:19.) | Objection.  Improper legal conclusion.  In addition, the cited testimony does not establish that MGA did not suffered prejudice or that they did not rely on Mattel's delay in filing suit. |
|  | Proctor Dec., Exh. 4 (Bratz Sales from 2001-2006 spreadsheet, Bates-numbered MGA 0868723-865, marked as Exhibit 660 in this action.) | Objection.  BRATZ sales are irrelevant in that they do not tend to make a fact of consequence more probable. (Fed. R. Evid. 401.) |
| 121.   No authorized Mattel executive ever provided Bryant with written consent to this assignment of Bratz to MGA, or permitted him to work for MGA while in Mattel's employ. | Defendants have no evidence genuinely disputing this fact. | Objection. Irrelevant.  (Fed. R. Evid. 401.) |
| 122.   Bryant asserts that "Mattel believed from the time that Bryant left Mattel's employ that he was going to perform work for a Mattel competitor." | Proctor Dec., Exh. 96 (Bryant's Responses at 32.) | No objection. |
| 123.   Defendants assert that waiver applies | Proctor Dec., Exh. 96 (Bryant's Responses at 32.) | Objection.  The factual statement mischaracterizes |

71

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RNB

Exhibit C
Page 112

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| because Mattel "tolerated conduct by other employees similar to the alleged conduct by Bryant." | | the cited evidence. The cited evidence is also vague and ambiguous as to "tolerated", "conduct", and "similar." |
| 124. As shown, Mattel did not "know the facts" regarding defendants' waiver and consent defenses. | Defendants have no evidence genuinely disputing this fact. | N/A |
| 125. "Designs," as that term is well understood in the toy industry, undoubtedly include drawings. | Corey Dec., Exh. 10 (Rebecca Harris Vol. 2 at 490:15-17 ("His drawings start a concept, you know, and from the concept they evolved into what they are.").) | Objection. The factual statement mischaracterizes the cited testimony. To the extent the testimony is being used to characterize the standard understanding in the industry of "designs", it constitutes improper lay witness testimony. (Fed. R. Evid. 701.) |
| | Corey Dec., Exh. 20 (Paula Garcia Vol. 2 at 318:19-320:13 (discussing need for "I-designs" for Prayer Angels and receiving drawings from Bryant).) | Objection. The factual statement mischaracterizes the cited testimony. To the extent the testimony is being used to characterize the standard understanding in the industry of "designs", it constitutes improper lay witness testimony. (Fed. R. Evid. 701.) |
| 126. Mattel's in-house counsel learned on November 24, 2003 through discovery in another action that Bryant had entered a contract with MGA while still employed by | [Declaration] of Michael Moore, dated March 7, 2008, at ¶ 3, Exh. 1. | Objection. Lacks foundation. Mr. Moore also lacks personal knowledge as to whether Mattel knew of the agreement in question prior to the cited date. The cited evidence is also vague and ambiguous as to |

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| Mattel. | | "learned" (see MGA Parties' Opposition to Mattel, Inc.'s Separate Statement of Uncontroverted Facts and Conclusions of Law, at ¶ 126). |
| 127.   The Court has previously held "None of the substantive concerns raised by MGA and Bryant to the present amended complaint, e.g., statutes of limitations, would appear to be affected if the new claims and defendants were brought as defenses and counterclaims in the 05-2727 case as opposed to the 04-9059 one." | Proctor Dec., Exh. 95 (Court's Order Regarding Mattel's Motion for Leave to Amend at 22.) | Objection. References to prior orders of this or any other court speak for themselves and do not belong in Mattel's separate statement of undisputed facts. Furthermore, Mattel mischaracterizes the Court's Order. |
| 128.   Mattel recorded Bryant's Inventions Agreement with the U.S. Copyright Office on November 6, 2006. | Proctor Dec., Exhs. 116-118 (Certificates of Recordation recorded by Mattel with the Copyright Office.) | Objection. Lacks foundation. Mr. Proctor lacks personal knowledge of the cited evidence. (Fed. R. Evid. 602.) |
| 129.   A Hong Kong court found on summary judgment that three-dimensional dolls and products infringed MGA's copyright in Bryant's initial concept drawings. "The substantial similarity between the plaintiff's drawings and the dolls | Request for Judicial Notice, Exh. A (Judgment of Deputy High Court of the Hong Kong Special Administrative Region in MGA Entertainment, Inc. v. Double Grand Corp. Ltd., Action No. 1883 of 2003, dated February 24, 2006 at ¶ 11.) | Objection. References to prior orders of this or any other court speak for themselves and do not belong in Mattel's separate statement of undisputed facts. Furthermore, Mattel mischaracterizes the Court's Order.  The referenced opinion is |

Exhibit C
Page 114

| Mattel's Fact | Mattel's Evidentiary Support | MGA Parties' Objections |
|---|---|---|
| produced from them, and the defendant's dolls are obvious on inspection." | | also irrelevant to this litigation. (Fed. R. Evid. 401.)<br><br>The referenced evidence also constitutes impermissible hearsay to the extent that Mattel offers finding of the Hong Kong court for the truth of those findings. (Fed. R. Evid. 802.) Courts may take judicial notice of foreign court proceedings for the fact that they exist, but not for the truth of the matters stated therein. (See MGA Parties' Opposition to Mattel, Inc.'s Request for Judicial Notice, filed concurrently herewith.) |
| 130. The Questionnaire required Bryant to notify Mattel if he became engaged in any business venture with a Mattel competitor that could be construed as a conflict of interest. | Proctor Dec., Exh. 91 (Mattel's Complaint in Mattel, Inc. v. Bryant, Case No. BC314398 at Exh. B.) | Objection. Lack of foundation and authenticity. Mattel's pleadings are not evidence, nor are attachments to them that are not properly authenticated. Mattel's statement mischaracterizes the questionnaire.<br><br>The Questionnaire is also vague and ambiguous and cannot be construed without parol evidence and evidence of the parties' course of conduct. |

74

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (1 ____,)

Exhibit C
Page 115

1 | DATED: March 24, 2008

2                           SKADDEN, ARPS, SLATE, MEAGHER &
                          FLOM, LLP

3

                          By: _____

4                                  Marina V. Bogorad

                          Attorneys for MGA Entertainment, Inc.,

5                           MGA Entertainment (HK) Limited, MGAE de
                          Mexico, S.R.L. de C.V., and Isaac Larian

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit C
Page 116

MGA Parties' Evidentiary Objections To Mattel, Inc.'s
Motion For Partial Summary Judgment - Case No. CV 04-9049 SGL (RNBx)

# Exhibit D

RECEIVED

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP  MAR 2 6 2008

525 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301

FIRM/AFFILIATE OFFICES

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

March 24, 2008

**By Email and U.S. Mail**

Timothy Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017

RE:  *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Tim:

It has come to our attention that documents bearing the following Bates
numbers were inadvertently produced:  MGA 1755935 – MGA 1755939,
MGA 1755948 – MGA 1755952, and MGA 3801819 – MGA 3801822.  Please be
advised that MGA 1755935 – MGA 1755939 and MGA 1755948 – MGA 1755952
reflect both confidential attorney-client privileged communications and attorney work
product, and MGA 3801819 – MGA 3801822 reflects confidential MGA attorney-client
privileged communications in part.  Because MGA 3801819 – MGA 3801822 is
privileged in part, we will be providing a replacement redacted version of the document
to you later today.  In addition, we will be listing the foregoing documents on a
privilege log.  In the meantime, pursuant to paragraph 13 of the Stipulated Protective
Order, please immediately destroy or return to us all hard copies and delete all
electronic copies of MGA 1755935 – MGA 1755939, MGA 1755948 – MGA 1755952,
and MGA 3801819 – MGA 3801822 in your or Mattel's possession, custody or control,
and please certify in writing that you have done so.

Sincerely,

Amy S. Park

# Exhibit E

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3223**

WRITER'S INTERNET ADDRESS
**timalger@quinnemanuel.com**

March 24, 2008

**VIA FACSIMILE AND U.S. MAIL**

Amy S. Park, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, CA 94301

Re:     Mattel, Inc. v. MGA Entertainment, Inc.

Dear Amy:

I received your letter of today requesting the return or destruction of several documents,
including MGA 3801819-3801822. We are in the process of searching for the requested
documents, for the purpose of complying with Paragraph 13 the Stipulated Protective Order.
However, I must inform you that MGA 3801819-3801822 does not fall within the scope of
attorney-client privilege or the work product doctrine, and Mattel intends to challenge any such
claim by MGA with the Discovery Master. Further, MGA 3801819-3801822 was introduced as
an exhibit at the deposition of Rachel Harris, without objection, and I must note that MGA has
taken the position in relation to Mattel's request for the return of M 0073472 that such use at
deposition constitutes waiver.

Accordingly, we request that you provide a time when we can meet and confer pursuant to
Section 5 of the Stipulation for Appointment of Discovery Master.

Very truly yours,

Timothy L. Alger

cc: Michael H. Page, Esq.
     Mark E. Overland, Esq.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

07209/2445305.1

# EXHIBIT F REMOVED

# PURSUANT TO PROTECTIVE ORDER

Exhibit G

Copyright 2004 Chicago Sun-Times, Inc.
Chicago Sun-Times

March 5, 2004 Friday, North City

SECTION: WEEKEND PLUS; NEWS; Pg. 55

LENGTH: 843 words

HEADLINE: Bratz packers are what's cool in doll world

BYLINE: Denise I. O'Neal

BODY:

Bratz dolls are leaving America's sweetheart — Barbie -- eating their dust.

Who are these fly girls with the funky wardrobe and devoted tween following?

In 2001, MGA Entertainment introduced Cloe, Sasha, Yasmin and Jade. The fashion divas have since skyrocketed to success. Four boy Bratz have been added to the line: Dylan, Eitan, Koby and Cameron. New friends on occasion will appear in exclusive themed sets.

Isaac Larian, CEO of MGA Entertainment, explains why he decided to have dolls make brief appearances in the line.

"Just like in any neighborhood, new friends arrive and others move on," he says. "Children have to adjust to old friends exiting and new friends arriving in their lives."

More than a fad product imitating life through the eyes of tweens, Larian wanted to incorporate aspects of real life and values associated with the real world in his dolls.

"We wanted a respectable product that reflected the lifestyle of schoolgirls and fashionable trends, but also one that represented clean fun with learning values," he says.

The Bratz are moving into another medium this year, starring in their first direct-to-DVD movie titled, "The Bratz Go Hollywood." The movie is set for a late-summer release. The dolls also will star in an animated feature film, which is expected to be released in late 2005.

Doll products new for 2004 include Bratz Petz cats Brigitte, Kendall, Jolie and Daphne; Bratz Wild Life, an exclusive set featuring Nevra, Meyghan and Fianna; Bratz Girls Nite Out, with Cloe, Sasha, Yasmin, Jade and Dana preparing for Saturday night fun; Sun-kissed Summer, with Cloe, Yasmin, Sasha, Jade and Dana dressed in beach attire; Best Friends Beach Party, with friends Calista and Noelle spending a day at the beach; Best Friends Pajama Party, with Brianne and Zana in a themed slumber party setting, and Flower Fairies, featuring Rose, Daisy and Sunflower, a trio of scented dolls.

Larian, along with his brother and brother-in-law, founded ABC Electronics, a trading company dealing in consumer electronics, in 1982. In the late '80s, the company began focusing primarily on hand-held electronic games

Ex. 927
OC
10-3-07

Bratz packers are what's cool in doll world Chicago Sun-Times March 5, 2004 Friday, North City

and changed its name to Micro Games of America.

When Larian's daughter was 7, he noticed she had become bored with Barbie dolls. He decided to again change the focus of his company, wanting to create a doll product for girls ages 7 to 13. The dolls would have to be urban dolls representing America's multi-ethnicity. They also had to reflect the trends and attitudes of the tween generation.

"We were looking for a new toy to challenge Barbie. Something that would span girls' interest in dolls for a few more years," says Larian.

Larian began shopping around for interested vendors. Getting negative response because of the company name, Larian once again changed the company's name, shortening it to MGA Entertainment. That done, Larian needed a name for his dolls.

His creative team decided the name should be catchy and not have more than six letters. When looking at sketches and pitching ideas, someone said the dolls look like little brats. Keeping with today's trend of making names more "cool" by changing the spelling, MGA executives decided to replace the "s" with a "z."

The Bratz were born and have been making big strides in the doll world ever since. A team of more than 15 designers are responsible for making certain the dolls always sport the latest fashions, accessories and hair styles.

For Larian and his creative team, not only have they struck gold with their product but they are having fun with the dolls as well.

"We are like children in a candy store -- everything is exciting," says Larian. "We don't have plans laid out for the Bratz. We come up with new ideas as we go along and we are having fun doing it."

To keep on top of what tweens are interested in, MGA polls children in the dolls' targeted age group. That formula, along with the company's strong sense of ethics and responsibility to children, have turned the Bratz into one of the best-selling products worldwide.

Larian also is compelled to produce a product that is affordable for all.

"I think children are very precious gifts, and it's our job in the toy industry to look beyond pricing to create products to stretch children's imagination and to not cheat any child out of the opportunity to be able to enjoy products," says Larian.

Bratz dolls are available in most toy stores. The company's Web site also has a free Bratz Fan Club that children can join. For more information, visit *www.bratzpack.com*

EVENTS: The Winnetka Antiques Fair takes place this weekend at the Winnetka Community House. Fifty dealers from across the country will showcase their wares. Dealers from England and Portugal also will be on hand. Hours for the event are 10 a.m. to 8 p.m. today, 10 a.m. to 6 p.m. Saturday and 11 a.m. to 5 p.m. Sunday. Admission is $12, good for all three days. The Winnetka Community House is at 620 Lincoln, Winnetka. For more information, call (847) 446-0537.

GRAPHIC: The popular line of Bratz dolls include Cloe, Yasmin, Jade, Dana and Sasha.

LOAD-DATE: March 5, 2004

Exhibit G
Page 128

Exhibit H

Immigrant's Creative Company Shakes Up Toy Industry

By JEFF WEISS; Contributing Reporter
1,098 words
29 March 2004
San Fernando Valley Business Journal
English
2004 San Fernando Valley Business Journal.  All rights reserved.

Large Business Award - MGA Entertainment, North Hills

Only 16 years old, with a mere $750 in his pocket, and with parents across the globe in Iran, Isaac Larian never expected to eventually be the founder of one of the fastest growing toy companies in the world.

Initially undecided whether to emigrate to the United States or to Israel, Larian opted to pursue the American dream. The Business Journal's recipient of the family business Best Large Company award, MGA Entertainment, is the end product of Larian's hard work, determination, and foresight in capitalizing upon opportunity.

Yet before becoming a toy mogul, Larian set out to forge a career in the civil engineering industry before realizing his true talents lay elsewhere.

"I came here to get a civil engineering degree because I thought I'd be a civil engineer and go back to Iran and build infrastructure," Larian said. "I graduated in 1978 from Cal State Los Angeles but I never worked as an engineer. Shortly after graduating, the (Iranian) revolution broke out and I discovered that engineering wasn't for me. I was more of an entrepreneur."

The following year Larian and his brother Farhad founded MGA as a consumer electronics company. Their first foray into the toy industry didn't come until 1987 when Isaac saw the opportunity to manufacture Nintendo's hand-held electronic games.

"I'm an entrepreneur and in 1987 I saw an opportunity to become the distributor for Nintendo's hand-held games. I just saw opportunity. Most entrepreneurs do that," Larian said.

After two years in the hand-held video game industry, MGA left the toy game and returned to consumer

M 0101133

electronics. Returning in 1993 to produce Mighty Morphin Power Rangers accessories, MGA never left the toy industry, having its first breakthrough item with 1997's wildly successful Singing Bouncing Baby Doll.

"Singing Bouncing Baby was our first doll and it was a huge hit," Larian said. "We ended up winning Family Fun Toy of the Year which is the Oscars of the toy industry. We ended up doing in excess of a million pieces," said Larian.

Introducing Bratz

But MGA's greatest success came later, with the introduction of 2001's Bratz dolls. Against all odds, Larian pioneered a line of dolls able to undercut the success of Barbie, the only company to do so since Barbie's 1959 debut.

However, the modest Larian is quick to acknowledge others for contributing to the company's success. A close knit family, Larian's sister, Shirin Makabi, is the company's director of travel and expenses. Shirin's husband, Eli Makabi, is MGA's vice-president in charge of traffic in sales. In addition, the Makabis co-own the business with Larian. But Larian family involvement does not stop there; Larian's children have played a crucial role in MGA's development.

"My oldest son, 17-year-old Jason, is very creative and a music writer. He has come up with some of our popular toys," Larian said. "He came up with Commandobot—a robot that was the first ever robot toy to work on voice recognition. It was a fantastic seller that was featured in Wired magazine. It was Jason's idea for Bratz."

Larian's other children have also been key to product development.

"Yasmin, my 15-year-old daughter, is involved in the business as well. She's particularly interested in fashion and focus groups. One of the Bratz is named after her," Larian said. "My 10-year-old son, Cameron, is also the namesake for one of the boy Bratz. Cameron comes up with different product ideas. One of our best ideas was a winter wonderland Bratz line. We were on a family ski vacation and he said 'Dad, you should do a Bratz winter break.' So we did it and it sold wonderfully."

Thanking the employees

Larian also credits the company's 430 employees for much of MGA's success.

"Our success is due to the passion of the people we have working for us. Each one has contributed to our success because they are passionate about the company and winning."

Page 230     © 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

M 0101134

With business booming, a Bratz licensing deal with 20th Century Fox has been inked. A Bratz DVD and a Bratz feature film are soon on the way.

"The Bratz are a true phenomenon that has taken the toy/doll industry by storm," Jim Gianopulos, chairman of Fox Filmed Entertainment, said. "They are more than just toys; they reflect the cultural diversity and contemporary style that kids relate to. That kind of success and impact on young people make the company a natural in a major motion picture, and we look forward to turning the Bratz figures into major motion picture stars."

MGA's projected revenue for 2004 is $1 billion and the company has openings for 110 employees in a variety of positions. Although MGA's success is now assured, there were obstacles along the way.

"I noticed some discrimination when I first got into the business world. I think that after living here for 33 years, there is unfortunately discrimination whether you're Jewish, Persian, black or whatever," Larian said. "But it made me stronger to go out and fight. People become resilient and they get angry and they need to turn that anger into positive energy."

Larian has certainly come a great distance from being a teenager with inclinations towards civil engineering and less than a thousand dollars in his pocket. Thanks to MGA, Barbie's pedestal seems a little less secure.

"I'm having a lot of fun and enjoying what I'm doing here right now and I think as long as you have fun at your job, it's a great thing," Larian said. "I believe that in life you have to have passion for what you do and if you lose that passion you shouldn't do it. My vision is for MGA to become a multibillion-dollar entertainment company and specialize in other things besides just toys."

Looking back on the whirlwind rise of MGA, Larian still seems a bit surprised by the amount of success he's encountered.

"My life is proof that dreams come true. You can't give up. They were definitely moments of self-doubt. I just didn't want to fail, I always had that desire to win," Larian said. "We've made history by unseating Barbie and for a small San Fernando Valley company to do that is a miracle."

Document SFVBJ00020041020e03t0003p

 © 2005  Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

M 0101135

# EXHIBIT I REMOVED

# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT J REMOVED

# PURSUANT TO PROTECTIVE ORDER

# Exhibit K

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

April 9, 2008

**By Email and U.S. Mail**

Timothy Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Tim:

I am writing to follow up on our meet-and-confer discussions regarding the handling of clawed back document MGA 3803839-MGA 3801922. Based on those discussions, we understand that: (1) Mattel will stipulate in connection with the joint submission re: de-designation to be filed on April 18 that the document and all summary judgment papers that reference or attach the document should remain designated as "Confidential Attorneys Eyes Only;" (2) the parties will not to refer to the privileged portion of the document at the summary judgment hearing; (3) Mattel has sequestered all copies of the document and will not use or otherwise disclose the privileged portion of the document pending resolution of its anticipated motion to compel production of the document; and (4) Mattel will not argue that the continued presence of the document in the court files pending resolution of the anticipated motion to compel constitutes a waiver of MGA's asserted privilege. Please let me know if this does not reflect your understanding. Please also let me know if Mattel still intends to file a motion to compel production of the document.

Sincerely,

*Amy S. Park*

Amy S. Park

1

## PROOF OF SERVICE

2          I am employed in the County of Los Angeles, State of California.  I am over the age of

3   eighteen years and not a party to the within action; my business address is 865 South Figueroa

4   Street, 10th Floor, Los Angeles, California 90017.

5          On April 18, 2008, I served true copies of the following documents described as:

6   **DECLARATION OF TIMOTHY L. ALGER IN SUPPORT OF MATTEL, INC.'S**

7   **MOTION TO COMPEL THE PRODUCTION OF DOCUMENT BATES NUMBERED**

8   **MGA 3801819-22** on the parties in this action as follows:

| | |
|---|---|
| Keker & Van Nest, LLP<br>John W. Keker, Esq.<br>Michael H. Page, Esq.<br>Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111 | |

9
10
11
12

13          [√]     **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart

14   Oliver & Hedges for collecting and processing correspondence for mailing with the United States

15   Postal Service.  Under that practice, it would be deposited with the United States Postal Service

16   that same day in the ordinary course of business.  I enclosed the foregoing in sealed envelope(s)

17   addressed as shown above, and such envelope(s) were placed for collection and mailing with

18   postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary

19   business practices.

20          [√]     **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other

21   facility regularly maintained by the overnight service carrier, or delivered such document(s) to a

22   courier or driver authorized by the overnight service carrier to receive documents, in sealed

23   envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or

24   provided for, addressed to the person(s) being served.

25          I declare that I am employed in the office of a member of the bar of this court at whose

26   direction the service was made.

27          Executed on April 18, 2008, at Los Angeles, California.

28

Kelly Velazquez

07209/2476889.1

1    **PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California.  I am over the age of

3    eighteen years and not a party to the within action; my business address is 865 South Figueroa

4    Street, 10th Floor, Los Angeles, California 90017.

5        On April 18, 2008, I served true copies of the following documents described as:

6    **DECLARATION OF TIMOTHY L. ALGER IN SUPPORT OF MATTEL, INC.'S**

7    **MOTION TO COMPEL THE PRODUCTION OF DOCUMENT BATES NUMBERED**

8    **MGA 3801819-22** on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | Overland Borenstein Scheper & Kim LLP<br>Mark E. Overland, Esq.<br>David C. Scheper Esq<br>Alexander H. Cote Esq<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071 |

14    [√]    **[PERSONAL]** by personally delivering the document listed above to the person(s)

15    at the address(es) set forth above.

16        I declare that I am employed in the office of a member of the bar of this court at whose

17    direction the service was made.

18        Executed on April 18, 2008, at Los Angeles, California.

21                                    Dave Quintana

07209/2476889.1