QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>The Honorable Stephen G. Larson<br><br>**NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 15 OF MATTEL, INC. FOR A PRECLUSION ORDER REGARDING MGA'S DISQUALIFIED EXPERT CHRISTINA TOMIYAMA**<br><br>[Declaration of Jon Corey filed concurrently herewith]<br><br>Hearing Date: May 21, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1<br><br>**Phase 1:**<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

**PUBLIC REDACTED**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 21, 2008 at 1:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Stephen G. Larson, in Courtroom 1 of the United States District Court located at 3470 Twelfth Street, Riverside, California 92501, Mattel, Inc. ("Mattel") will, and hereby does, move the Court for an order precluding MGA Entertainment, Inc., MGA Entertainment (HK) Limited, Isaac Larian and Carter Bryant (collectively "defendants"), and their respective counsel and witnesses, from introducing any evidence, argument, or suggestion relating to: (1) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (2) Mattel's methodology for evaluating potential infringement and any determinations made by Mattel regarding infringement in which Christina Tomiyama participated in any respect; and (3) any positions regarding infringement that Mattel took in other litigation, including the <u>Simba</u> litigation, in which Ms. Tomiyama acted as a consultant to Mattel's legal department.

This motion is made pursuant to the Court's April 8, 2008 Order Granting Mattel's Motion to Disqualify MGA Expert Christina Tomiyama and Denying Motion to Disqualify MGA's Counsel and the Court's inherent power, on the grounds that such evidence is based upon Mattel's privileged and confidential information and its use at trial would unfairly disadvantage Mattel and further taint these proceedings.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the concurrently filed Declaration of Jon Corey, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

-2-

**Statement of Local Rule 7-3 Compliance**

This motion is made following the conference of counsel pursuant to Local Rule 7.3, which were held on March 4 and 11, 2008, and April 16, 2008.

DATED: April 21, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By John B. Quinn /s/
John B. Quinn
Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 1

ARGUMENT ............................................................................................................ 3

I. A PRECLUSION ORDER IS APPROPRIATE TO ENSURE THAT MATTEL'S PRIVILEGED INFORMATION IS NOT USED UNFAIRLY BY DEFENDANTS ................................................................. 3

II. DEFENDANTS SHOULD BE PRECLUDED FROM OFFERING ANY ARGUMENT OR EVIDENCE ON THE SUBJECTS ABOUT WHICH IT RECEIVED MATTEL'S PRIVILEGED INFORMATION ......... 6

    A. ████████████████████████████████████ ............ 6

    B. Defendants Should Not Be Permitted To Offer Evidence Of Or Argument On Mattel's Methodology For Evaluating Potential Infringement Or Any Determinations It Made Regarding Infringement .................................................................................... 9

    C. Defendants Cannot Rely On Positions Mattel Has Taken In Other Infringement Litigation ........................................................ 10

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

Page

### Cases

Carrion v. City of New York,
 2002 WL. 31093620 (S.D.N.Y. 2002).................................................................. 4

Fleischer Studios v. Ralph A. Freundlich, Inc.,
 73 F.2d 276 (2d Cir. 1934)..................................................................................... 6

King Features Syndicate v. Fleischer,
 299 F. 533 (2d Cir. 1924)....................................................................................... 6

Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.,
 144 F. Supp. 2d 1147 (D. S.D. 2001)..................................................................... 4

Peat, Marwick, Mitchell & Co. v. Superior Court,
 200 Cal. App. 3d 272 (1988).................................................................................. 4

Shadow Traffic Network v. Superior Court,
 24 Cal. App. 4th 1067 (1994)................................................................................. 5

Sperber v. Washington Heights-West Harlem-Inwood
 Mental Health Council, Inc.,
 1983 WL. 470511 (S.D.N.Y. 1983)....................................................................... 4

UMG Recordings, Inc. v. MySpace, Inc.,
 526 F. Supp. 2d 1046 (C.D. Cal. 2007).................................................................. 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The Court's disqualification of Mattel's former in-house legal consultant, Christina Tomiyama, does not fully remove the taint of MGA's retention of her and her misuse of Mattel's privileged communications. Although they refuse to disclose when they began doing so, MGA and its counsel spent at least eight months consulting with a former employee who was privy to Mattel's counsels' thoughts and opinions about this litigation and who regularly consulted with Mattel's Law Department about key infringement issues raised in this case. While the Court declined to disqualify MGA's counsel, it recognized that additional remedial measures are appropriate to ensure that Mattel's privileged information is not used unfairly and that the appearance of fairness is preserved.

Allowing defendants to take advantage of Tomiyama's disclosures would be fundamentally unfair; even the risk that they would have an unfair advantage because of MGA's consultation with Tomiyama taints this proceeding. Defendants should be precluded from offering argument or evidence related to those subjects on which Mattel's privileged information was improperly disclosed by Ms. Tomiyama. Mattel asks the Court to preclude defendants from offering: (1) [REDACTED]; (2) any evidence or argument regarding Mattel's methodology for evaluating potential infringement or any infringement determinations Mattel has made in which Ms. Tomiyama participated; and (3) any evidence or argument about positions regarding infringement that Mattel took in other litigation, including the <u>Simba</u> litigation, in which Ms. Tomiyama acted as a consultant to Mattel's Law Department.

### Background

MGA and its counsel engaged as an expert witness a former Mattel employee, Christina Tomiyama, who had worked extensively with Mattel's Law Department

-1-

and outside counsel on matters directly relevant to this litigation.[1] In connection with Mattel's motion to disqualify Ms. Tomiyama and MGA's counsel, the Court found that Ms. Tomiyama divulged Mattel's privileged information, and breached her contractual obligations to Mattel.

At the hearing, the Court found that Ms. Tomiyama was "deeply involved" in Mattel's prosecution and defense of this case and that she unequivocally had been privy to privileged Mattel information that was highly relevant to this action.[2] Specifically, the Court found:

- "Ms. Tomiyama was deeply involved in Mattel's investigations of Carter Bryant's activities and was privy to counsel's analysis, thoughts, and impressions about issues directly related to Phase One of this trial."[3]

- "Ms. Tomiyama was extensively involved in issues regarding the claims and defenses implicated by MGA's complaint against Mattel . . . [and] was privy to counsel's analysis, thoughts, and impressions relating to comparisons of the 'My Scene' dolls and the Bratz dolls."[4]

- Ms. Tomiyama "had been consulted . . . by Mattel's legal counsel, to compare Mattel's dolls with other companies' dolls and to provide to counsel an analysis of her comparison for the purpose of assisting counsel to advise Mattel on legal issues regarding the dolls."[5]

- Ms. Tomiyama "was engaged by Skadden Arps on behalf of MGA to perform the same type of analysis and that she did, in fact, provide such an analysis . . . related to the comparisons of the face paintings."[6]

---

[1] To avoid unnecessarily burdening the Court, Mattel will not repeat here the extensive facts set forth in Mattel's prior Motion to Disqualify MGA Entertainment, Inc.'s Counsel Skadden Arps and Expert Christina Tomiyama and its supporting submissions.

[2] See Transcript of April 7, 2008 Hearing ("Hearing Tr.") at 13:4-6, 13:10-14, 17:21, Corey Dec., Ex. 1.

[3] Hearing Tr. at 13:11-14. These findings were incorporated into the Court's April 8, 2008 Order Granting Motion to Disqualify Expert and Denying Motion to Disqualify Counsel ("Order"), Corey Dec., Ex. 2.

[4] Hearing Tr. at 13:1-6.

[5] Hearing Tr. at 10:21-25.

[6] Hearing Tr. at 11:1-5.

-2-

MATTEL'S MOTION IN LIMINE NO. 15

On April 8, 2008, the Court granted Mattel's disqualification motion as to Ms. Tomiyama, but denied it with regard to MGA's counsel.[7] The Court found, however, that Ms. Tomiyama "carries with her a taint" and stated that "something needs to be done" in addition to disqualifying her.[8] The Court invited Mattel to submit a motion *in limine*, including to "preclude MGA from presenting its legal argument based on the ramifications of comparing two-dimensional drawing of Bratz dolls with the three dimensional products."[9]

## Argument

### I. A PRECLUSION ORDER IS APPROPRIATE TO ENSURE THAT MATTEL'S PRIVILEGED INFORMATION IS NOT USED UNFAIRLY BY DEFENDANTS

MGA has acknowledged the propriety of a preclusion order to remedy the taint created by its retention of Tomiyama. In arguing against disqualification of its counsel, MGA asked the Court to fashion a remedy that ensured that MGA would "not be[] able to use that report, not be[] able to use her as a witness, [and be] forbid[en] [] from making any reference to the methodology employed by Mattel in other cases, [or] comparing face paint to face paint on infringing product."[10] While stating that such a preclusion order could be a "significant impediment," MGA itself argued that it was appropriate to "ensure[] the integrity of the process going forward" and would "properly put[] into balance the need for assurance that [MGA's] counsel are trying a case without a benefit."[11]

---

[7] See Order at 1-2.
[8] Hearing Tr. at 17:24, 22:16-17.
[9] See Order at 2. The Court also invited Mattel to bring a motion *in limine* to exclude Ms. Tomiyama as a fact witness. Id. The parties have reached an agreement restricting any factual testimony from Ms. Tomiyama on the topics regarding which she divulged Mattel's privileged information. See Corey Dec. ¶ 2.
[10] Hearing Tr. at 96:15-19.
[11] Hearing Tr. at 96:19-23.

The Court has the inherent authority to impose issue-related sanctions to level the playing field after one party gains an unfair advantage. UMG Recordings, Inc. v. MySpace, Inc., 526 F. Supp. 2d 1046, 1048 (C.D. Cal. 2007). Where, as here, a party has gained access to an adversary's privileged information, preclusion is an appropriate remedial measure, especially if the Court has determined that the balance of hardships otherwise weighs against disqualification of counsel. For example, in Sperber v. Washington Heights-West Harlem-Inwood Mental Health Council, Inc., the court declined to disqualify counsel based on its improper *ex parte* contacts. 1983 WL 470511, at *3 (S.D.N.Y. 1983). Nevertheless, the court noted that, "[p]reclusion is a less severe sanction than is disqualification" and was appropriate to prevent one party from unfairly benefiting. Id. at 1983 WL 470511, at *4.[12] The court excluded both the evidence obtained in those conversations and the fruits of that information. Id.

Disqualifying Ms. Tomiyama, alone, does not ensure that the privileged information she conveyed to MGA will not be used unfairly—even unwittingly so—against Mattel. Ms. Tomiyama was privy to substantial privileged Mattel information directly relevant to this case.[13] She discussed such matters with MGA and its attorneys.[14] As the Court recognized, this information has given MGA an unfair benefit which must be remedied:

---

[12] See also Carrion v. City of New York, 2002 WL 31093620, at *4 (S.D.N.Y. 2002) (declining to disqualify counsel for improper receipt of medically privileged information but ordering preclusion sanction); Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., 144 F. Supp. 2d 1147, 1160 (D. S.D. 2001) (excluding evidence obtained by improper *ex parte* contacts and any evidence flowing from those contacts); Peat, Marwick, Mitchell & Co. v. Superior Court, 200 Cal. App. 3d 272, 287 (1988) (affirming trial court's order precluding defendant from offering any evidence as to two of five elements of plaintiff's cause of action).

[13] Hearing Tr. at 10:21-25, 11:1-5, 13:1-6, 21:18-25.

[14] See Deposition Transcript of Christina Tomiyama ("Tomiyama Tr."), April 7, 2008, at 224:8-12, 238:5-239:21, 246:3-7, Corey Dec., Ex. 4. The prejudice resulting from MGA's access to Tomiyama is exacerbated by her clear inability to
(footnote continued)

> "Even absent any finding of bad faith on the part of the counsel, MGA had the benefit of consulting with a long-term employee of Mattel, whose expertise in applying her analysis to legal claims and defenses was developed under the direction of Mattel's attorneys, and who was exposed to the thoughts and, theories, analysis, and impressions of those various same attorneys in the years leading up to this case and involving this particular case."[15]

Excluding Ms. Tomiyama's expert testimony does not eliminate that unfair benefit completely. Ms. Tomiyama's primary contact with MGA, Mr. Plevan, was "involved in every significant meeting" MGA's counsel had regarding this litigation,[16] and MGA's lead trial counsel, Mr. Nolan, acknowledged that he received drafts of her expert report.[17] As the Shadow Traffic court recognized, even where an party's privileged information is not actually transmitted from an expert or former employee to an adversary, the adversary may still obtain the benefit of the privileged information, because either "consciously or unconsciously" the privileged information could "shape or affect the analysis and advice" the expert rendered. Shadow Traffic Network v. Superior Court, 24 Cal. App. 4th 1067, 1086 (1994).

It would be plainly unacceptable if MGA, having developed arguments with the assistance of Ms. Tomiyama, could simply avoid the consequences of her disqualification by working backward to identify alternate "sources" of such information. That is why an order that merely precluded MGA from using Ms. Tomiyama, but left it free to develop the same arguments with other witnesses, would be inadequate. It would be essentially impossible to determine conclusively

---

distinguish between privileged and non-privileged information. Hearing Tr. at 11:23-12:4, 21:18-25.
[15] Hearing Tr. at 16:16-23.
[16] Hearing Tr. at 6:21-23.
[17] Hearing Tr. at 54:22.

whether the alternative "sourcing" was truly independent, or had its genesis in the Ms. Tomiyama's improper disclosures. Accordingly, the only meaningful remedy is to preclude defendants from advancing such arguments altogether.

Here, the Court has found that Ms. Tomiyama divulged at least some privileged information and that the purpose of her engagement was to "perform the same type of analysis" for MGA which she had previously done for Mattel's Law Department.[18] Exclusion of her report or testimony alone is accordingly insufficient. Defendants must be precluded from offering argument or evidence on the subjects about which it received Mattel's privileged information—namely, Mattel's methodology for evaluating potential infringement and the scope of Mattel's protectable interests in its products (as understood by Mattel's attorneys, and conveyed through Ms. Tomiyama to MGA and its attorneys). Unless the Court issues an appropriate preclusion order, the taint she carries will infect the trial.

## II. DEFENDANTS SHOULD BE PRECLUDED FROM OFFERING ANY ARGUMENT OR EVIDENCE ON THE SUBJECTS ABOUT WHICH IT RECEIVED MATTEL'S PRIVILEGED INFORMATION

[redacted]

---

[18] Hearing Tr. at 11:2-3, 90:12-15.

[19] MGA Parties' Opposition to Mattel's Motion for Partial Summary Judgment, at 10, Corey Dec., Ex. 3. As a matter of law, this is simply incorrect: courts have long held that a two-dimensional drawing may be infringed by a three-dimensional
(footnote continued)

-6-

1   In support of this position, Ms. Tomiyama opined █████

2-10 ████████████████████████████████

11   Moreover, despite Tomiyama's assertion that █████

12-15 ████████████████████████████████ Ms.

16 Tomiyama circulated a comparison of the Bryant drawings of Bratz to the Bratz

17 dolls to MGA lawyers and its other experts at a January 3, 2008 meeting at Skadden

18 Arps' offices in Los Angeles.[20]  This information appears in a number of MGA's

---

toy. See King Features Syndicate v. Fleischer, 299 F. 533, 534, 538 (2d Cir. 1924) (copryrighted comic book character infringed dolls); Fleischer Studios v. Ralph A. Freudlich, Inc., 73 F.2d 276, 278 (2d Cir. 1934) (drawings of Betty Boop character infringed by a substantially similar doll).

[20] MGA's expert Robert Tonner testified that in addition to █████ at the meeting, Ms. Tomiyama handed that chart out at the meeting. See Deposition Transcript of Robert Tonner, March 21, 2008, at 93:9-94:4, Corey Dec., Ex. 5. Another MGA expert, Mary Bergstein, testified that she used Tomiyama's comparison to █████ her opinion. See Deposition Transcript of Mary Bergstein, April 7, 2008, at 24:11-25:19, Corey Dec., Ex. 6.

1 expert reports and arguments.[21] Thus, even though Ms. Tomiyama's report —which this Court found was "inescapably . . . predicated upon [Mattel's] attorney work product"[22]—has been excluded, the information she provided continues to taint this proceeding, including through other MGA experts' reliance on it.

MGA has tried to suggest that Tomiyama's disclosure of privileged information about ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[23] That is not at all clear. MGA and its counsel have refused to state when MGA's prior counsel first spoke with Ms. Tomiyama.[24] She testified that she first spoke to MGA representatives by approximately July 2007.[25] MGA's lawyers claimed that Mr. Khare, an MGA attorney, offered as a 30(b)(6) witness on certain deposition topics, was a source of this argument.[26] At deposition, Mr. Khare made a comment about whether the Bryant Bratz drawings were ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[27] The two-line statement in Mr. Khare's deposition to which MGA points occurred in late September 2007, well after Ms. Tomiyama had spoken to MGA—at least as early as July 2007. It is at least possible, if not probable, that Ms. Tomiyama's prior conversations with MGA's lawyers prompted this observation by another of MGA's lawyers.

MGA's argument ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is also beside the point. MGA cannot insulate itself from the taint of having received

---

[21] See, e.g., Expert Report of Peter S. Menell ¶¶ 43, 49, Corey Dec., Ex. 7 (discussing Tomiyama's conclusions and engaging in similar analysis); MGA Parties Opposition to Mattel's Motion for Partial Summary Judgment, at 10, Corey Dec., Ex. 4 (arguing that the drawings ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬).
[22] Hearing Tr. at 90:12-15.
[23] Hearing Tr. at 94:1-5.
[24] See Reply in Support of Mattel's Motion to Disqualify at 8 n.18.
[25] Tomiyama Tr. 131:11-14. Ms. Tomiyama testified that the initial contact might have been even earlier, possibly in June 2007. Id.
[26] Hearing Tr. at 94:1-5.
[27] See Deposition Transcript of Samir Khare, September 20, 2007, at 258:15-16, Corey Dec., Ex. 8.

-8-

1  Mattel's privileged information by claiming that it would have come up with the
2  same argument even if it had not received Mattel's privileged information. While it
3  might have done so, it cannot be denied it received a "benefit [by] consulting with a
4  long-term Mattel employee, whose expertise in applying her analysis to legal claims
5  and defenses was developed under the direction of Mattel's attorneys."[28]
6  Independent sourcing can never be definitively established.

[REDACTED][29] Moreover, MGA should be precluded from advancing the arguments Ms. Tomiyama made as to why the Bratz dolls do not infringe the Bryant Bratz drawings. This includes, specifically, MGA's argument that [REDACTED]

### B. Defendants Should Not Be Permitted To Offer Evidence Of Or Argument On Mattel's Methodology For Evaluating Potential Infringement Or Any Determinations It Made Regarding Infringement

A key component of Ms. Tomiyama's expert report related to the work that she had done to evaluate potentially infringing products. The requests that Mattel's lawyers made—and did not make—in evaluating infringement are pregnant with legal opinions and strategies. Tomiyama's discussions with MGA's counsel on

---

[28] Hearing Tr. at 16:17-20.
[29] This instruction is set forth in Mattel's Proposed Jury Instruction, at 137, Corey Dec., Ex. 9.

these subjects unquestionably revealed privileged information.[30] Likewise, determinations Mattel made about infringement would be reflective of attorneys' evaluations about what is and is not protectable. As the Court noted, by offering her report on these issues, Ms. Tomiyama "inescapably" conveyed to MGA privileged Mattel information.[31] Plainly, defendants cannot be permitted to make arguments based on evidence about how Mattel did or did not evaluate potentially infringing products and infringement determinations it made, whether directly or indirectly.

### C. Defendants Cannot Rely On Positions Mattel Has Taken In Other Infringement Litigation

Defendants must also be precluded from offering any evidence or argument regarding any infringement positions that Mattel took in other litigation in which Ms. Tomiyama acted as a consultant to Mattel's Law Department. As this Court stated, Tomiyama's work was for the "purpose of assisting counsel to advise Mattel on legal issues regarding the dolls."[32] She received Mattel's privileged information (e.g., Exhibit A). As the Court recognized, she "could not have done that regular task" without being exposed to Mattel's counsels' "thoughts and impressions" regarding the scope of Mattel's protectable interests.[33] Allowing defendants to use such information would be fundamentally unfair. Since there is no way to ensure that MGA does not use that information short of preclusion, defendants should be precluded from making such arguments to the jury.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court order that defendants be precluded from offering any evidence, testimony, or argument

---

[30] Hearing Tr. at 13:24-14:1 (concluding Exhibit A is privileged); 16:19-20 (recognizing that Ms. Tomiyama's analysis was developed under the direction of Mattel's counsel).
[31] Hearing Tr. at 90:12-15.
[32] Hearing Tr. at 11:2-4.
[33] Hearing Tr. at 53:20-54:10.

1 | regarding whether: (1) █████████████████████████████
2 | ████████████████████████████████ (2) Mattel's methodology for
3 | evaluating potential infringement and any determinations made by Mattel regarding
4 | infringement in which Ms. Tomiyama participated in any respect; and (3) any
5 | positions regarding infringement that Mattel took in other litigation, including the
6 | <u>Simba</u> litigation, in which Ms. Tomiyama acted as a consultant to Mattel's legal
7 | department.
8 |
9 | DATED: April 21, 2008             QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10 |
11 |
12 |                                  By John B. Quinn /s/
                                         John B. Quinn
                                         Attorneys for Mattel, Inc.