**Exhibit A**

| From: | Isaac Larian |
|---|---|
| To: | Victoria O'Connor; Dave Malacrida; Aileen Storer; Paula Treantafelles; Margo Chazen; Dianna Eisenberg |
| CC: | Abe Mirza; Julie Mote; Beth Cahill |
| BCC: | |
| Sent Date: | 2002-03-12 12:17:42:953 |
| Received Date: | 2002-03-12 12:17:42:953 |
| Subject: | FW: Hi |
| Attachments: | |

Victoria, Dave: Who gave David Dees info and what he does for us to this Yahoo lady and
why?

This Yahoo lady is giving us too much legal grief even though she does not mean it.

Please DO NOT send any information or reply to her e mails unless you have cleared it with
me.

Redacted

-----Original Message-----
From: Paula Treantafelles
Sent: Monday, March 11, 2002 5:55 PM
To: Isaac Larian; Abe Mirza; Beth Cahill
Subject: FW: Hi

-----Original Message-----
From: David Dees [mailto:davodees@hotmail.com]
Sent: Saturday, March 09, 2002 12:37 PM
To: bryant598@cs.com
Subject: Hi

Hi Carter,

I thought you would enjoy this letter i wrote to the Bratzworld club on
Yahoo. It starts off with the club leader introducing it. Dees.

Hello!

I'm posting a wonderful letter from David Dees- the guy who
does the awesome art we love to look at on the Bratz website
and on posters and wherever Bratz girls are. I just want to post it
to its own message so I can save that as a text file in the David
Dees folder in files so you can read it anytime you like. We've

always liked it that MGA communicates with the Bratz fans and
this takes it even further into VERY COOL land.

Make sure you also check out his portfolio for all the other stuff
he does- you've probably seen lots of it- he's extremely talented!

Okay enough from me- I'll post his letter right after this
:)
snowflakebebe

>Hello my name is Christian (I'm a girl!) and I do a fan list for the Bratz
>dolls and I was wondering if you could post and maybe share some of your
>other Bratz art that we may not have seen (we have lots of it in the files
>section) - or talk about your experience working on the illustrations of
>the
>Bratz. I am in contact with MGA and they have endorsed this "fan club" so
>if
>I need to get permission from them for anything I can ask- but I hope
>you'll
>share some art if you can. We have the link to your portfolio up in our
>files and bookmark section. Come visit sometime :) We love your art. Its
>a
>big part of the fun of the Bratz :)

Hi Christian,

Thanks so much for your letter and interest in the world of Bratz. I talked
to the art director at MGA , and she said that of course i am not the one to
be releasing any Bratz art ahead of time, so i will check and see if i can
post some of that older airbrush art for you. She also said MGA is in the
process of building a new website that is going to be packed to the hilt
with cool art of all the new fashions, and believe me, they are wild and
colorful as i just finished about thirty new pieces of art that will amaze
you.

I work freelance as an illustrator and have my own studio at home where i
paint at my leisure, but if a job comes in you can be sure that it is
usually being rushed. My immediate live-in family consists of two furry
felines. A crosseyed siamese mix named Buddy, and a female red striped tabby
named Goose.

I am swamped right now with colorizing lots of the new wacky funk styles,
and there are new hats and boas and tops that I got a kick out of. However I
can't take credit for creating the Bratz Dolls, or even the first Bratz
illustrations, for that honor would go to a fellow named Carter Bryant*, who
is truly a genius of fashion and the soul and only person who first drew
those great pouty lips and that extreme look that only our heros share. I
have never met him personally, but on the phone and emails he is certainly
the nicest sincere fellow ever, and very optimistic and complementary about
my art in his approach. It felt good early on when he would tell me i was
doing a good job bringing them to life. Can you tell I am a fan of his as

EXHIBIT A
PAGE 5

well?

Let me tell you about MGA. It is located in North Hills, California, at the west end of the beautiful San Fernando Valley, where i lived for many years, but now i live in Salt Lake, where the Olympics just were. Anyway, when you walk into the big, high ceiling lobby there is a real pretty receptionist with reddish brown hair (and that sometimes wears leopard prints), and if you look to the left you will see the stairs wind up to the second floor where all the cool stuff happens. And as you start up them there is, to the right, a little rock garden with plants, and it always has some of the new toys, like robot dogs, insectobots, or baby dolls sitting in there as if they are playing. As you get to the top of the stairs, that is if you can get permission to come up to this top secret place, the first thing you notice to your right is two big doors opening into a spacious office with a fancy glass desk, usually covered with toys, and sitting there working busily away is a great fellow named Isaac, who is the owner, president, and creator of most of the MGA toys. He always seems to leave his doors open and when i stop by to pick up a job i glance in and wave if he happens to look up.

The first big area past there has lots of low partitioned cubicles with all the business people who keep the finances working, but then the next rows are the package and advertising designers, which is sort of the front line of the creativity, and as you continue up the steps there is a silly sign hanging that says Design Farm, and that is the beginning of the art studios. It always freaks me out to go in there because it is a busy beehive of toy ideas and designers flying around like a tornado. It is a big open room with black walls and bright lights shining down spotlighting the work areas, and colorful toys and wacky new ideas and drawings lining the walls. The middle area has a long table work table covered with new toy packages being assembled for the first time, with most of the mocked up packages being created by cutting and pasting by hand, and only after the idea is shown through many approval lines is it mass produced. Sometimes a whole new line of Bratz accessories will be displayed, and i am amazed at the details of the clothes at such a small scale. When i pop in I am usually asked for my opinion about the new toys, such as if i think they will be popular or how to promote them, and i am always happy to put in my two cents. There are about a dozen or so design areas with computers that surround the work table, and at each station is someone with more talent than you can imagine all corraled into one group. That is why they come up with such great stuff. There is also a window on one wall and whenever i look out of it, it is stunning to look down into the warehouse which quite a large expanse of big boxes and lifts carrying them around. I guess that is the tour.

About working on the illustrations, well they are all colored on the computer. The best thing i can say is that i finally figured out a great way to paint their hair that flows great, and looks sort of real. But that is in the last group of art i just finished and it will available to you soon i suppose. If you have any suggestions about any of the art I always welcome your viewpoint.

EXHIBIT A
PAGE 6

Anyway that is about it. I will send in anything that i am allowed to release to you guys, or check my website for new art that i am putting up all the time. Feel free to download any art that you like off my site. See ya. david.

(* You can do a google.com search under Carter Bryant and you can see some things he has done.

-snowflakebebe)

WOW what a cool letter... i have to say again that everyone so far involved with the Bratz company is so cool, and responds personally and actually takes some time.... as for Carter Bryant i searched and searched and came up with nothing. so if any one find his website, can you post the URL.. ;) many thanks...

Pink Glitter
>>Vayne<<
xxx

---

Get your FREE download of MSN Explorer at http://explorer.msn.com/intl.asp.

EXHIBIT A
PAGE 7

**Exhibit B**



**Corporate Office:**
16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel 818.894.2525
Fax 818.894.8094

April 4, 2000

Ms. Paula Treantafelles

Redacted

Dear Paula:

We are pleased to extend to you an offer of employment for the position of **Associate Product Manager** at MGA Entertainment.

Your compensation package will be as follows:

1. **Base Salary:** **$50,000** per year, paid biweekly

2. **Bonus:** Management Bonus Program:  Up to **a maximum of 15%** of your base of $50,000.  Your 2000 bonus is described in the attachment.

3. **Annual Review:** You will be reviewed in January 2001.

4. **401(k) Plan:** Will be eligible for enrollment in 401(k) Plan in January 2001.  Company match to your contribution is 25% up to 5%.

5. **Business Travel:** The Company will pay for coach class tickets for both international and domestic travel.

6. **Health Benefits:** <u>Health Insurance:</u>  There is no charge for you under HMO and a monthly fee for you and your dependents under the indemnity plan (see attachment).

**Hong Kong Office:**
Unit 707-8 Multifield Plaza
3-7A Prat Ave., TST,
Kowloon, Hong Kong

**Hong Kong Showroom:**
11 Canton Road, Suite 1015
TST, Kowloon
Tel  852.2926.8008




**EXHIBIT** _B_
**PAGE 8**

Confidential - Attorney's Eyes Only

MGA 0876578

Dental Plan:  There is no charge for you under DMO and a monthly fee for you and your dependents under the indemnity plan (see attachment).

Life Insurance:  1 x annual income, premium paid by Company.

Accidental Death & Dismemberment:  Up to 1x annual income, premium paid by Company.

7. **Vacation:**       Two weeks paid vacation per year

8. **Employee Handbook:**       MGA requires all employees to sign an Employee Handbook, which includes a Confidentiality Agreement, an "At Will Clause/Statement", and a Mutual Agreement to Arbitrate and Mediate.  These will be presented to you for your signature upon the commencement of your employment.

This agreement is binding upon Paula Treantafelles and ABC International Traders, Inc. and their respective heirs, successors, assignees, fiduciaries or other legal representatives.

I trust this offer letter addresses all open issues and look forward to an ongoing, productive relationship.

Sincerely,

*Mary Claire Tiffany*

Mary Claire Tiffany
Human Resources Manager

Enclosures

EXHIBIT B
PAGE 9

Confidential - Attorney's Eyes Only                                    MGA 0876579

## CONFIDE... TIALITY AND INVENTIONS ASS. GNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int' Traders, Inc. ("Company") and ~~PAMIA TRANA FELIES~~ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses phone numbers, names, specific characteristics of suppliers and customers and thei respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; informatior regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending project; or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply the applicable prices and discounts, and the applicable product specifications; new product; or inventions developed or under development by the Company; formulas, patterns compilations, programs, devises, methods, techniques, processes, pictures, contracts, files methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application o the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only fo the purpose of conducting the Company's business. Employee agrees to never discuss o disclose such trade secrets, confidential information or property, either directly or indirectly with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees tha information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance writter permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company al

Confidential - Attorney's Eyes Only

**EXHIBIT** $\mathcal{B}$
**PAGE 10**

MGA 0876580

papers, records, electronic copies, and documents in employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

**EXHIBIT B
PAGE 11**

Confidential - Attorney's Eyes Only

MGA 0876581

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or service from any supplier or vendor who supplies products or services to the Company.

## INVENTIONS ASSIGNMENT:

1. ASSIGNMENT OF INTEREST: Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable idea and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment supplies, facilities, or trade secret information of Company, unless such invention or idea: (1 relates to the business of company or to Company's actual or anticipated research of development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. DISCLOSURE OF IDEAS OR INVENTIONS: Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence

3. WRITTEN DISCLOSURE OF PRIOR INVENTIONS: Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| 04·17·00 | _Paula Tuanhatang_ | _Paula Tranhatchs_ |
|---|---|---|
| Date | Employee Signature | Employee Name (printed) |
| | | _Eve Johnson-Frcl_ |
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

MGA 0876582

## MUTUAL AGREEMENT TO MEDIATE AND/OR ARBITRATE

We recognize that differences may arise between us. Through this mutual agreement to mediate and/or arbitrate("Agreement"), _____ ("Employee"), and ABC Int'l Traders Inc. ("Company") expect to gain the benefits of a speedy, economical, impartial dispute resolution procedure. This Agreement provides as follows:

This Agreement shall apply to all disputes or controversies, whether or not arising out of Employee's employment (or termination of that employment), that the Company may have against Employee, or that employee may have against the Company or against its officers, directors, employees, or agents("Claims"). The Claims include, but are not limited to, controversies relating to: compensation or benefits, breach of any contract, torts, discrimination under state, federal or local law, and violation of any federal, state or other governmental law, statute, regulation or ordinance. However, this Agreement shall not apply to any claim: (a) by the employee for workers' compensation or unemployment benefits; or (b) by the Company for injunctive and/or other equitable relief; including, but not limited to, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. With respect to matters referred to in sub-paragraph (b) above, the company may seek and obtain injunctive relief in court, and then proceed with arbitration under the Agreement.

<u>EACH PARTY WAIVES THE RIGHT TO A JURY TRIAL OR COURT TRIAL. THE SOLE AND EXCLUSIVE METHOD TO RESOLVE ANY CLAIM IS MEDIATION AND/OR ARBITRATION AS PROVIDED IN THIS AGREEMENT.</u> The parties each waive their right to commence an action in any court to resolve a Claim. Neither party shall initiate or prosecute any lawsuit in any way related to any claim covered by this Agreement.

Any Claim by employee or the company must be processed in the manner set forth below. Otherwise, the Claim shall be void and deemed waived even if there is a federal or state statute of limitations which would allow more time to pursue the Claim.

An Employee Claim must initially be raised verbally by Employee to the person(s) involved. If the issue cannot be resolved, the matter must be presented to the Employee's immediate supervisor within one year after you initially knew or should have known of the facts that gave rise to the Claim. The supervisor will answer the Claim within fifteen (15) days from the date the Claim was presented. If the supervisor fails to respond, then it will be considered a denial of your Claim.

If Employee is not satisfied with the supervisor's answer, or the nature of the Claim is such that Employee does not wish to present it to his supervisor, the Employee may obtain the assistance of the President, who will discuss the Claim with Employee and assist, if Employee desires assistance, in presenting the Claim in written form to the Company. Employee must present the Claim in writing to the President within fifteen (15) working days after Employee receives the supervisor's answer. However, if Employee decides not to present the Claim to his or her supervisor, Employee must present the Claim to the President, in writing, within one year after Employee initially knew or should have known of the facts that gave rise to the Claim. If Employee does not present the Claim in writing to the President within 15 days or one year, whichever is applicable, then Employee will be deemed to have accepted the Company's last stated position on the Claim and waived the right to further contest the Claim.

The President will consider Employee's written presentation, and any other information that Employee deems relevant. The President will render a written decision within fifteen (15) working

Confidential - Attorney's Eyes Only

MGA 0876583

days. This decision will be mailed to Employee's address, as it appears in the Company's records. If the Company fails to respond, it will be deemed a denial of your Claim.

If Employee is not satisfied with the President's decision, Employee may request a voluntary, non-binding mediation. If mediation is selected, Employee and the Company agree to utilize mediation in good faith with the goal of resolving the Claim. If the parties cannot mutually agree on the mediator, they will utilize the American Arbitration Association ("AAA") mediation dispute resolution procedures. The mediation shall take place in or near the city in which Employee resided when last employed by the Company. If mediation does not result in a settlement of the Claim, either party may serve written notice to the other party of its intention to proceed to arbitrate within fifteen (15) days from the termination of the mediation.

If Employee does not desire to mediate the Claim, then he or she may present the Claim for resolution by final and binding arbitration. Employee must serve written notice on the Company of his or her intention to arbitrate within ninety (90) days from the mailing of the President's final decision.

If the Company desires to initiate arbitration to resolve a Claim against Employee, it must serve written notice on Employee within one year after it initially knew or should have know of the facts that gave rise to its Claim.

The written notice of desire to arbitrate shall describe the factual basis of all Claims asserted, and shall be served on the other party by certified mail, return receipt requested. Written notice to Employee will be mailed to his or her address as it appears in the Company's records. Written notice to the Company, or its officers, directors, employees or agents, shall be sent to the President at the Company's principal place of business. If written notice of desire to arbitrate is not served within the applicable time period, the party who failed to timely serve notice will be deemed to have waived the right to further contest the Claim and will be deemed to have accepted the other party's last stated position on the Claim.

The arbitration shall be conducted in accordance with the then-current Model Employment Arbitration Procedures of the AAA before a single arbitrator. The Arbitrator shall be selected in the following manner. The AAA shall give each party a list of 11 arbitrators drawn from its panel of labor of employment arbitrators. Each side may strike all names on the list it deems unacceptable. If only one common name remains on the list of all parties, that individual shall be the Arbitrator. If more than one common name remains on the list of all parties, the parties shall strike names alternately, in a telephone conference no more than five days after the parties receive notice that more than one acceptable arbitrator remains, until only one remains. If no common name remains on the list of all parties, the AAA shall furnish one additional list, and the above procedures will be utilized. If no arbitrator is designated from the second list, the procedures of the AAA rules will be used to select the Arbitrator.

Either party may be represented by an attorney or other representative selected by the party. The parties waive the provision of California Code of Civil Procedure Section 1283.05. Each party shall have the right to take the deposition of one individual from, any expert witness designated by, and the other party. Each party also shall have the right to make requests for production of documents to any party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. All issues related to discovery will be resolved by the Arbitrator.

The Arbitrator will have no authority to: (i) adopt new Company policies or procedures, (ii) modify the Agreement or existing Company policies, procedures, wages or benefits, or (iii) hear or decide any matter that was not processed in accordance with this Agreement. The Arbitrator shall have exclusive authority to resolve any Claim, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, or any contention that all or any part of this Agreement is void or voidable. The Arbitrator will have the authority to award any form or remedy or damages that would be available in a court.

Employee and the Company each agree to pay one half of the reasonable and necessary fees of the AAA and the mediator and/or Arbitrator. The parties will pay their own attorneys' fees and expenses associated with the mediation and/or arbitration. Either party, in its sole discretion, may, in writing, waive, in whole or in part, the other's failure to follow any time limit or other requirement set forth in the Agreement.

To the extent permitted by law, Employee agrees not to initiate or prosecute against the Company any administrative action (including an administrative charge of discrimination to the extent permitted by law) in any way related to any Claim covered by this Agreement.

The mediation and/or arbitration will be conducted in private, and will not be open to the public or the media. The testimony and other evidence presented, and the results of the mediation and/or arbitration, unless otherwise agreed to by both parties, is confidential and may not be disclosed, made public or reported to any person or entity, including, but not limited to, any legal or news agency, publisher or service, except pursuant to a court order, provided that the Company or Employee gives sufficient prior written notice of any judicial proceeding at which a court order is being sought, to enable the other to seek a protective order before disclosure occurs.

The Arbitrator shall render a written decision and the award (the "Award" ) shall set forth the facts and reasons that support the Award. The Award shall be final and binding on both you and the Company. This Agreement shall survive the termination of your employment, and can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify the Agreement. This is the complete agreement of the parties on the subject of dispute resolution, mediation or arbitration of disputes.

**NOTICE: BY SIGNING THE AGREEMENT, YOU ARE AGREEING THAT ALL CLAIMS WILL BE DECIDED BY NEUTRAL MEDIATION AND/OR ARBITRATION, AND YOU ARE GIVING UP YOUR RIGHT TO A JURY TRIAL OR COURT TRIAL.**

| 04·17·00 | _Paula Treantafelles_ | Paula Treantafelles |
|---|---|---|
| Date | Employee Signature | Employee Name (printed) |

| | | Eric Johnson-Ford |
|---|---|---|
| Date | Employer Signature | Name (printed) |

EXHIBIT _b_
PAGE 15

MGA 0876585

**Exhibit  C**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3             EASTERN DIVISION                **Certified Copy**

4

5    ------------------------------

6    MATTEL, INC., a Delaware        )

7    Corporation,                    )

8              Plaintiff,            )

9              vs.                   ) No. CV 04-9059

10   CARTER BRYANT, an individual;   ) NM (RNBx)

11   and DOES 1 through 10,          ) VOLUME I

12   Inclusive,                      )

13             Defendants.           )

14   ------------------------------  )

15   (COMPLETE CAPTION ON NEXT PAGE.)

16

17      CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19      Videotaped Deposition of ADRIENNE FONTANELLA,

20      taken at 300 South Grand Street, Los Angeles,

21      California, commencing at 9:10 A.M.,

22      Wednesday, January 16, 2008, before

23      Wendy S. Schreiber, CSR No. 3558, RPR, CLR.

24

25   PAGES 1 - 260

1

EXHIBIT C
PAGE 16

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 5            BY:  MICHAEL ZELLER, ESQ.

 6            865 South Figueroa Street, Tenth Floor
              Los Angeles, California 90017
 7            (213) 443-3000
              mzeller@quinnemanuel.com

 8

 9        FOR THE DEFENDANT AND COUNTERCLAIMANT

10        CARTER BRYANT:

11            KEKER & VAN NEST LLP

12            BY:  AUDREY WALTON-HADLOCK, ESQ.

13            710 Sansome Street
              San Francisco, California 94111-1704
14            (415) 391-5400
15            awaltonhadlock@kvn.com

16

17        FOR DEFENDANT MGA ENTERTAINMENT, INC.:

18            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

19            BY:  KENNETH PLEVAN, ESQ.

20                MICHELLE M. CAMPANA, ESQ.
              Four Times Square
21            New York, New York 10036-6522
              (212) 735-3000
22            kplevan@skadden.com
              micampan@skadden.com

23

24        ALSO PRESENT:
              Video Operator - David West
25

                                                    3
```



EXHIBIT C
PAGE 17

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    the licensing side of the business?

2          MR. PLEVAN:  Yes.  That was what the intent

3    of the question was.

4          THE WITNESS:  Yeah.

5    Q.    When you became President of Girls, what was   09:37AM

6    happening in terms of the sales of Barbie dolls?

7    A.    I came in in February of '99 so the plan had

8    already been done and I vaguely remember Barbie was

9    doing about $1.8 billion in sales.

10   Q.    And over the next several years?                09:38AM

11   A.    When I left in 2003, I think worldwide sales

12   were $2.1 billion or $2.2 billion.

13   Q.    Now, did the $2.1 billion, $2.2 billion did

14   that include a line called My Scene?

15   A.    Yes.                                            09:38AM

16   Q.    And do you recall what portion of the $2.1

17   billion to $2.2 billion worldwide --

18          MR. ZELLER:  I'm sorry, this is as of the

19   time she left?

20          MR. PLEVAN:  Yes.                              09:39AM

21   Q.    -- was accounted for by My Scene?

22   A.    It was not very big.

23   Q.    You referred to the Design Center.  I think

24   you indicated Ms. Ivy Ross was in charge of the

25   Design Center.                                        09:39AM
                                                          25

EXHIBIT C
PAGE 18

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.    Yes.

2    Q.    What is the -- what is the Design Center?

3    A.    The Design Center for Mattel at the time was

4  a separate building and there was -- there were both

5  Girls and Boys division designers, sculptors,          09:39AM

6  Packaging, Planning, I think Electronics, Modeling.

7  There were a number of departments.

8    Q.    Approximately how many employees were there

9  in the Design Center when you were at Girls?

10   A.    In excess of 200.                               09:40AM

11   Q.    When you went to Mattel in 19 -- what did we

12  agree, '96 --

13   A.    Yes.

14   Q.    -- did you sign an employment agreement?

15   A.    Yes.                                            09:40AM

16   Q.    And what -- what did that consist of?

17   A.    I remember maybe three things. I had a

18  contract.  I signed a form employee inventors kind

19  of confidentiality agreement and then maybe another

20  form document.                                         09:41AM

21   Q.    The contract was a specific employment

22  contract related to you personally and your salary?

23   A.    I'm trying to think did I have a contract.

24  I think -- I believe, yes.

25   Q.    Did you -- well, let me withdraw that.          09:41AM
                                                                26

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              You referred to a form employee inventors
 2   kind of confidentiality agreement.
 3        A.    Uh-huh.
 4        Q.    What did that look like?  Do you recall?
 5        A.    I just remember that I disclosed -- it asked   09:42AM
 6   and talked about whatever happened at Mattel Mattel
 7   owned and you weren't able to do anything else while
 8   you were working at Mattel.  And I disclosed that I
 9   had a company January Productions, Inc. and
10   basically wanted to keep it -- did not want to close   09:42AM
11   it and wanted to make sure that there was no problem
12   with the agreement and the fact that I had this
13   company.  So it was disclosed.  It was up to Mattel
14   to determine if it was competitive or contradicted
15   the document at all.                                   09:43AM
16        Q.    And did someone eventually get back to you
17   on that point?
18        A.    Oh, absolutely.  Absolutely.
19        Q.    Who was that?
20        A.    It was reviewed by many people.  Jean       09:43AM
21   McKenzie, it was reviewed by Human Resource, it was
22   reviewed by -- I mean, it was -- yes.  It was
23   reviewed by a number of people.
24        Q.    Who got back to you and said it was okay?
25        A.    Generally things came through the Human     09:43AM
                                                                27
```

EXHIBIT C
PAGE 20

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    Resource department but I believe it was both Jean

 2    McKenzie and whoever I was dealing with in the Human

 3    Resource department.

 4         Q.  Do you remember the actual time you received

 5    what you referred to as the form agreements for      09:44AM

 6    signature?

 7         A.  No.

 8         Q.  Was this something you received for your

 9    review prior to actually moving to California?   I

10    take it you moved to California when you started at  09:44AM

11    Mattel?

12         A.  I didn't.

13         Q.  Did not?

14         A.  I did not.

15         Q.  Let me ask you, where do you live today?    09:44AM

16         A.  Today I live in California.

17         Q.  What's your home address?

18         A.        Redacted

19         Q.  I'm sorry, maybe someone else knows that

20    but --                                              09:44AM

21         A.        Redacted          :

22

23         Q.  And how long have you lived there?

24         A.  Since June of 2002.

25         Q.  And where did you live prior to that?      09:44AM
                                                              28
```

EXHIBIT  C
PAGE 21

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1     A.   I lived in Marina Del Rey.  I don't

2  remember -- on Privateer Street.

3     Q.   And before that?

4     A.   I lived on 200 East 90th Street.

5     Q.   At what point did you move to California?     09:45AM

6     A.   In November of 1999.  November of 1999.

7     Q.   Do you recall whether or not you received

8  those form agreements prior to your becoming an

9  employee of Mattel?

10     A.   I don't recall but I would assume that I     09:45AM

11  did.

12     Q.   This was part of the negotiations relating

13  to accepting the position?

14     A.   Yes.

15     Q.   Did you review those form agreements with     09:45AM

16  your -- with an attorney?

17     A.   They were pretty clear to me.  I don't think

18  so.  I mean, my attorney was really more involved in

19  my contract.  I think that -- I don't recall exactly

20  but I believe that it was pretty explicit to me and     09:46AM

21  I just disclosed January Productions and that was

22  the end of it.

23     Q.   Who were you represented by at the time?

24     A.   I really wasn't represented.  Again, it was

25  just a very simple, simple, simple, simple employee     09:46AM

                                                         29

EXHIBIT C
PAGE 22

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    I declare under penalty of perjury

2    under the laws of the State of California

3    that the foregoing is true and correct.

4        Executed on _March 5, 2008_,

5    2008, at _____,

6    California.

7

8

9        _signature_

10   ADRIENNE FONTANELLA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                             253

EXHIBIT C
PAGE 23

**Exhibit  D**

*final*

MGA ENTERTAINMENT
16730 Schoenborn Street
North Hills, California 91343

Dated as of September 18, 2000

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.      Retention as Consultant/Services: MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.      Term/Exclusivity: The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.      Ownership:

(a)      All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire", and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

[00006662.DOC/2 / 10/04/2000  03:05 PM]

1

ATTORNEY'S EYES
ONLY

BRYANT 00794



DEPOSITION
EXHIBIT
15
11-5-04          SH

EXHIBIT __D__
PAGE 24

patents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents.  If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)     Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.     Compensation/Costs:

(a)     For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)     MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

(00006562.DOC/27 10/04/2009  03:05 PM)

2

ATTORNEY'S EYES ONLY

BRYANT 00795

**EXHIBIT D**
**PAGE 25**

and binding on Bryant, shall constitute an account stated, and shall not be subject to any question for any reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to MGA within two (2) years after the date rendered. No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)     All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent. In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)     Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis. Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable). MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)     MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales. MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell. Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant. Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.     <u>Warranties and Indemnity</u>:  Bryant represents, warrants and agrees that:

(a)     he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)     neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)     the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

{00006662.DOC/2 / 10/04/2000  03:05 PM}

3

ATTORNEY'S EYES
ONLY                          BRYANT 00796

patents, copyrights, mask-work rights, trade secrets, rights of privacy and other intellectual property rights;

(d)    he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)    he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.    **Default/Termination:**

(a)    In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)    Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.    **Confidentiality:**

(a)    Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)    Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)    Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

{00006862.DOC/2 / 10/04/2000  03:05 PM}

4

ATTORNEY'S EYES ONLY

BRYANT 00797

EXHIBIT $O$
PAGE 27

entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

8.   **Notices:**  All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.   **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor.  Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name.  Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties.  In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship.  Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10.   **Services Rendered Deemed Special, etc.:**  Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.   **General Provisions:**

(a)   This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law.  Any such assignment shall not relieve such Party of its obligations hereunder.

(b)   The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

(c)   A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof.  All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

(d)   Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

{00006662.DOC/2 / 10/04/2000  03:05 PM}

5

ATTORNEY'S EYES ONLY                          BRYANT 00798

OCT 04 '00 16:51                                                                                  818894894↓      PAGE.01

(e)     This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)     This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained.  No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)     Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

_____
CARTER BRYANT

**Redacted**
Social Security Number

[00006592.DOC/2 / 10/04/2000  03:05 PM]

6

** TOTAL PAGE.04 **

ATTORNEY'S EYES
ONLY

818894894↓                              mga entertainment         Oct 04 00 04:38p

BRYANT 00799

EXHIBIT D
PAGE 29

**Exhibit E**

**10575**

ABC INTERNATIONAL TRADERS, INC.
ABC International Traders, Inc                                                    10575

| ‹VENDOR ID | NAME | PAYMENT NUMBER | CHECK DATE | | | | |
|---|---|---|---|---|---|---|---|
| BRYANT | CARTER H. BRYANT | 012246 | 10/13/00 | | | | |
| OUR VOUCHER NUMBER | YOUR VOUCHER NUMBER | DATE | AMOUNT | AMOUNT PAID | DISCOUNT | WRITE-OFF | NET |
| 025539 | EXP 09/23-10/11/00 | 10/11/00 | $1,031.23 | $1,031.23 | $0.00 | $0.00 | $1,031.23 |
| | | | $1,031.23 | $1,031.23 | $0.00 | $0.00 | $1,031.23 |

COMMENT

SFMS01042-1                          TO REORDER, CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 323-838-6696                          M975F004796
Safeguard® LITHO USA  SFEL2M  CK7503112M (1/99)

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT *E*
PAGE 30

MGA 3786749

```
Kinko's                    (310) 297-6850
5201 W. Rosecrans
Hawthorne,        CA 90250

QTY/LIST    DISC    PRICE    AMOUNT
25    PC SS WRK STATION TIME/MIN
      0.20    0.00    0.20      5.00
13    COMP RENT LTR.LGL. B&W PRNT
      0.49    0.00    0.49      6.37
26    ES B&W S/S WHITE STD
      0.07    0.00    0.07      1.82
2     ES COLOR S/S 11 X 17
      1.98    0.00    1.98      3.96

SUB   17.15  TX   1.00   TOT   18.15
                        Visa   18.15
                        CHG    0.00

              Redacted
I agree to pay the above amount
according to the card issuer agreement.
Sign Here:  X_____

CW 86 TR   327520 RG 5  10/11/00 03:26
      Visit us @ http://www.kinkos.com
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 31

MGA 3786750



CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3786751

```
             HOT TOPIC, INC.
            GLENDALE GALLERIA.
10/06/00
SALESPERSON ERICK
    1271154 BLUE GLITTER BELT
                                    13.68
     MARKED DOWN FROM   15.99
119598000 PINK ANGEL BACKPACK
                                    16.15
     MARKED DOWN FROM   18.99
1339316 TEASE DENIM PRAYER
                                     3.40
     MARKED DOWN FROM    3.99
108576000 FIRE FACEPLATE 5100
                                    12.75
     MARKED DOWN FROM   14.99
108565000 FLAME SWIRL FACEPLAT
                                    12.75
     MARKED DOWN FROM   14.99
1262898 36PC SPARKL RUBRBNDS
                                     1.70
     MARKED DOWN FROM    2.00
1348929 PC-ASSRT METEOR
                                     1.07
     MARKED DOWN FROM    1.25
1217397 CPHONE CASE LEOP PNK
                                     6.80
     MARKED DOWN FROM    8.00
1184431 PRINCESS HOSPITL BND
                                     2.55
     MARKED DOWN FROM    2.99
1338094 WOMENS BOTTOMS
                                    35.70
     MARKED DOWN FROM   42.00
1306273 RED PLAID TIE SKIRT
                                    25.50
     MARKED DOWN FROM   30.00
1348942 MENS TOP
                                    27.20
     MARKED DOWN FROM   32.00
1301043 PNK PLAID PLEAT SKRT
                                    25.50
     MARKED DOWN FROM   30.00
1252329 32 SAUCER CARGO PANT
                                    45.90
     MARKED DOWN FROM   54.00
1287671 32 KNEE CRGO PNT
                                    46.75
     MARKED DOWN FROM   55.00
1207838 50 DROP CARGO DENIM
                                    52.70
     MARKED DOWN FROM   62.00
1317346 AST.PK/BU SPARKLE PT
                                    59.99
1317346 AST.PK/BU SPARKLE PT
                  VOID             59.99
1317346 AST.PK/BU SPARKLE PT
                                    51.00
     MARKED DOWN FROM   59.99
     SUBTOTAL.                    381.02

     SALES TAX                     31.43
     TOTAL                        412.45
     VISA                         412.45

THANKS FOR SHOPPING AT HOT TOPIC
Please fill out a comment card.

  Check us out on the WEB!
    www.hottopic.com
REGISTER#6 R0006 10/06/00 15:32 #15059
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 33

MGA 3786752



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.

**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to...

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 34

MGA 3786753

```
                   HOT TOPIC, INC.
                GLENDALE GALLERIA
10/06/00
SALESPERSON ERICK
    1130012 UNISEX COMBAT BOOT
                                       47.99
    1338904 BETTY PAGE PUMP
                                       24.99
    1300667 RED RUBY SLIPPER
                                       39.99
    1241140 LT BLU MJ JOGGER
                                       36.99
    1314103 FUSHCIA/PINK JOGGER
                                       36.99
    1232693 SILVER CLUBKID SHOE
                                       29.99
    1242957 BEAR BLINKY
                                        2.99
    152879000 ST-SHAG KITTY
                                        1.99
    152879000 ST-SHAG KITTY
                                        1.99
    1116177 PC-BLU WINDOW HOLOGR.
                                        2.50
    1317015 PC-MINI WINDW/JEWEL
                                        2.50
    1316991 PC-HEALIGHT HOLOGRMS
                                        2.50
    119440000 PC-ASSRT METEOR
                                        1.25
    1317015 PC-MINI WINDW/JEWEL
                                        2.50
    1316991 PC-HEALIGHT HOLOGRMS
                                        2.50
    1316967 PC-BIG WINDW HOL #2
                                        2.50
    119441000 PC-ASSRT SUPER NOVA
                                        1.25
    1286079 PC-AST CATS EYE HOLG
                                        1.25
    1286095 PC-ASRT  CRCLE HOL
                                        1.25
    1286095 PC-ASRT  CRCLE HOL
                                        1.25
    1286087 PC-ASRT BOX HOLGRM
                                        1.25
    1316934 PC-SIL/RAIN B.FLY HO
                                        3.50
    113456000 PC-AST BOA HOLGRAM
                                        4.50
    113456000 PC-AST BOA HOLGRAM
                                        4.50
    113456000 PC-AST BOA HOLGRAM
                                        4.50
    113456000 PC-AST BOA HOLGRAM
                                        4.50
    303514000 MYSTRY MACH LUGGAGE
                                       36.99
              SUBTOTAL             304.90
              SALES TAX             25.15
              TOTAL               330.05
              VISA                330.05
    THANKS FOR SHOPPING AT HOT TOPIC
    Please fill out a comment card.

         Check us out on the WEB!
             www.hottopic.com

REGISTER#6 R0006 10/06/00 15:26 #15058
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 35

MGA 3786754

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange 't.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT *E*
PAGE 36

MGA 3786755

IT HAS BEEN A PLEASURE SERVING YOU!
YOUR CASHIER, ALETA

## TOYS "Я" US

5622/17  1874:1  14426  1  SALE

FASHIONS MARYKATE &    068228      9.99
SCHOOL SET   MARY-KA  023871      32.99

                 SUBTOTAL        42.98
                 8.25% TAX        3.55
                 TOTAL           46.53
        **Redacted**            46.53

CHANGE                            .00

09/23/00    16:50

ITEM COUNT  2

THANK YOU FOR SHOPPING AT TOYS 'R' US
QUESTIONS? CALL (310) 540-2727. CHECK OUT
OUR EXCITING NEW WEBSITE, WWW.TOYSRUS.COM



*356221718746663*

CONFIDENTIAL − ATTORNEYS' EYES ONLY

EXHIBIT _E_
PAGE 37

MGA 3786756



CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 38

MGA 3786757

```
                    CHARLOTTE RUSSE
                    GLENDALE GALERIA
            2229 GLENDALE GALLERIA, GLENDALE, CA 91210
                     (818) 545-0486

        SALE.                 12965 1 00001 08068
                         0035 10/06/00  05:38 PM


        ASSOCIATE NUMBER     16394
        1  401602826119 THONGS              4.00
        2  401190898017 STRG BIK            4.00
        3  401190898017 STRG BIK            4.00
        4  401190898017 STRG BIK            4.00
        ITEM CORRECT       Line * 4
              1 @ 4.00                     -4.00
        5  401602826119 THONGS              4.00
        6  401190898017 STRG BIK            4.00
        7  401456006118 THONGS              2.99
        8  401420817016 BODY GLTTR
              1 @ 2/7.00                     3.50
        9  401420816118 BODY GLTTR
              1 @ 2/7.00                     3.50
        10 401606536113 WATCHES            18.00
        11 401606535215 WATCHES            18.00
        12 401890169318 STUFANIMAL          6.00
        13 401630619011 STUFANIMAL          6.00
        ASSOCIATE NUMBER     12965
        14 401610719014 STUFANIMAL          6.00
        ASSOCIATE NUMBER     12965
        15 401620639012 STUFANIMAL          6.00
        ASSOCIATE NUMBER     12965
        16 401916062715 HEADBAND
              1 @ 2/7.00                     3.50
        ASSOCIATE NUMBER     12965
        17 401916065815 HEADBAND
              1 @ 2/7.00                     3.50
        ASSOCIATE NUMBER     12965
        18 401923040911 MINICLAWCP
              1 @ 2/7.00                     3.50
        ASSOCIATE NUMBER     12965
        19 401571039213 MINICLAWCP
              1 @ 2/7.00                     3.50
        ASSOCIATE NUMBER     12965
        20 401454090812 MINICLAWCP
              1 @ 2/7.00                     3.50
        ASSOCIATE NUMBER     12965
        21 401454095817 MINICLAWCP
              1 @ 2/7.00                     3.50
        ASSOCIATE NUMBER     12965
        22 401708460316 METAL BELT         14.00
        ASSOCIATE NUMBER     12965
        23 401370626119 HOUSEWARES         16.00
        ASSOCIATE NUMBER     12965
        24 401620462818 HOUSEWARES         16.00
        25 401398026717 HEADBAND            5.00
        26 401396024418 SLIPPERS            8.00
        27 401652086044 NVTYKNITOP         19.99
        28 401610506836 NVTYKNITOP         16.99
            SUB TOTAL                      206.97
        8.25%                               17.08
            TOTAL                         $224.05
                                          224.05
        ACCOUNT NUMBER
                                    Redacted
        EXPIRATION DATE
        AUTHORIZATION NUMBER  175924
        REFERENCE *          3258802 -0


                    www.charlotte-russe.com
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT $E$
PAGE 39

MGA 3786758

REFUNDS/EXCHANGES in 30 days with receipt and tags attached.

SALE MERCHANDISE is exchangeable only.

SPECIAL OCCASION merchandise is NOT RETURNABLE.

GIFT CERTIFICATES/CREDIT SLIPS are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

LAYAWAYS will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

REFUNDS/EXCHANGES in 30 days with receipt and tags attached.

SALE MERCHANDISE is exchangeable only.

SPECIAL OCCASION merchandise is NOT RETURNABLE.

GIFT CERTIFICATES/CREDIT SLIPS are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

LAYAWAYS will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

REFUNDS/EXCHANGES in 30 days with receipt and tags attached.

SALE MERCHANDISE is exchangeable only.

SPECIAL OCCASION merchandise is NOT RETURNABLE.

GIFT CERTIFICATES/CREDIT SLIPS are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

LAYAWAYS will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

REFUNDS/EXCHANGES in 30 days with receipt and tags attached.

SALE MERCHANDISE is exchangeable only.

SPECIAL OCCASION merchandise is NOT RETURNABLE.

GIFT CERTIFICATES/CREDIT SLIPS are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

LAYAWAYS will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

REFUNDS/EXCHANGES in 30 days with receipt and tags attached.

SALE MERCHANDISE is exchangeable only.

SPECIAL OCCASION merchandise is NOT RETURNABLE.

GIFT CERTIFICATES/CREDIT SLIPS are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

LAYAWAYS will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

REFUNDS/EXCHANGES in 30 days with receipt and tags attached.

SALE MERCHANDISE is exchangeable only.

SPECIAL OCCASION merchandise is NOT RETURNABLE.

GIFT CERTIFICATES/CREDIT SLIPS are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

LAYAWAYS will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

REFUNDS/EXCHANGES in 30 days with receipt and tags attached.

SALE MERCHANDISE is exchangeable only.

SPECIAL OCCASION merchandise is NOT RETURNABLE.

GIFT CERTIFICATES/CREDIT SLIPS are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

LAYAWAYS will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

REFUNDS/EXCHANGES in 30 days with receipt and tags attached.

SALE MERCHANDISE is exchangeable only.

EXHIBIT E
PAGE 40

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3786759

## MGA EXPENSE REPORT FORM

**Department:** Marketing

Travel Ending: _125524_

| Date | Hotel 8110-400 | Air/Rail 8100-400 | Rental/Customer 8170-400 | Taxi 8110-400 | Auto Expense 8190-400 | Business Meals 8140-400 | | Phone 7240-400 | Cell Phone 7240-400 | Entertainment 8140-400 | Samples 8300-400 | Trade Show 8400-400 | Supplies 7000-400 | Auto 8100-400 | Misc. Expense | Daily Total |
|------|------|---------|-------------|------|-------------|--------------|---|-------|-----------|-------------|---------|-----------|----------|------|------|-------------|
| | | | | | | Breakfast | Lunch | Dinner | | | | | | | | | |
| 9/23 | | | | | | | | | | | 146.63 | | | | | $0.00 |
| 10/24 | | | | | | | | | | | 330.08 | | | | | $0.00 |
| 10/05 | | | | | | | | | | | 44.45 | | | | | $0.00 |
| 10/06 | | | | | | | | | | | 257.05 | | 18.15 | | | $0.00 |
| 10/11 | | | | | | | | | | | | | | | | $0.00 |

GRAND TOTAL: 1031.23

Itemized Entertainment & Business Meals

| Date | Who Attended | Place | Amount | Purpose |
|------|--------------|-------|--------|---------|

Itemized Automobile & Miscellaneous Expenses

| Date | Itemized Miscellaneous Expenses | | |
|------|------|------|------|
| | Date | Items | Amount |

Purpose of Travel: _____

Method of Reimbursement:
___ Deduction Advance
___ AMEX   ___ Mastercard ___ Visa ___ Other ___

Employee Signature: _____

Supervisor Signature: _____

CARTER BRYANT
1319 W. 160th ST.
GARDENA, CA
90247
310-538-3615

*Carter Bryant (signature)*

Hi MARIE—

THESE IMAGES ARE FOR THE "BRATZ" PROJECT ON WHICH I AM THE DESIGNER. IF THIS COULD BE SUPER EXPEDITED AS PER OUR DISCUSSION, IT WOULD BE GREATLY APPRECIATED.

Thank You.

*Carter Bryant (signature)*

OCT 10 '00 14:23          818 894 1666          PAGE.01

EXHIBIT E
PAGE 41

CONFIDENTIAL - ATTORNEYS' EYES ONLY          MGA 3786760

**Exhibit F**

# EMPLOYMENT APPLICATION

Mattel is an equal opportunity and affirmative action employer. It is our policy to develop and promote solely on the basis of ability.

**GENERAL DATA**

*BRYANT, CARTER H.*                    Redacted              *01/01/99*

Name (Last, First, M.I.)                Social Security Number        Date of Application

Address                                 Telephone Number              Pager Number

City, State, Zip Code

Are you legally authorized to work in the U.S.? Legal documentation proving identity and work authorization must be presented after any employment offer and before beginning work. Persons without proper documentation may not begin work. ● YES ○ NO

*PROJECT DESIGNER*        ● YES ○ NO                *11/95 — 04/98*
Position desired                Have you ever been employed by Mattel?        If yes, when?

Are there any reasons that would prevent you from:    Working Overtime ○ YES ● NO        Overnight Travel ○ YES ● NO

Will you accept part time work? ○ YES ● NO    Are you available for all shifts? ● YES ○ NO

Desired salary *60K*    How did you learn of job openings at Mattel? ○ Newspaper ○ Mattel Employee ○ Agency _____ ○ Other_____
                                                        *N/A*

**MILITARY (if applicable)**

Branch of U.S. Military Service        Date of Discharge                Nature of Discharge

If dishonorable, then explain

**MEDICAL**

Are you able to perform the essential functions of the position for which you are applying? ● YES ○ NO

If applicable, what reasonable accommodations do you request?

**CIVIL STATUS**

Have you ever been convicted of any offense other than a traffic violation (exclude those for which the record has been judicially expunged, sealed or eradicated)?
(Marijuana offenses over 2 years old may be omitted) ○ YES ● NO

If yes, please explain

*Conviction of a crime is not an automatic bar from employment. All circumstances such as age in time of offense and nature of violation will be considered.*

**EDUCATION**

*APPLE VALLEY HIGH, APPLE VALLEY, CA        1983–1987*
High School                        Address

*OTIS COLLEGE OF ART/DESIGN        LOS ANGELES, CA*        *FASHION DESIGN*
College                            Address                        Degree earned and major

College                            Address                        Degree earned and major

Graduate School                    Address                        Degree earned and major

Other (include special or technical training and military courses completed)

Special Training, Skills, Activities, Foreign Language Capabilities

For administrative positions:

Typing speed (wpm)        Shorthand (wpm)        Software Applications

CONFIDENTIAL-
ATTORNEYS' EYES ONLY

M 0001611

**EMPLOYMENT HISTORY** Starting with the present, list all jobs during the past ten years. Account for all periods of unemployment and military service.

| | | | |
|---|---|---|---|
| MATTEL | 333 CONTINENTAL BLVD EL SEGUNDO CA 90245 | | (310) 252-2000 |
| Company Name | Address (Street, City, State, Zip Code) | | Telephone Number |
| 11/95 - 04/98 | DESIGNER | 45K | ● YES ○ NO |
| Date Started to Date Ended | Job Title | Final Salary | Eligible for Rehire? |
| FREELANCING | | CASSIDY PARK | SENIOR STAFF DESIGNER |
| Reason for leaving | | Supervisor Name | Title |
| BARBIE PRELIM DESIGNER | | | |
| Description of Job Duties | | | |

| | | | |
|---|---|---|---|
| CHESBRO MUSIC CO. 327 BROADWAY | IDAHO FALLS, ID 83404 | | ( ) |
| Company Name | Address (Street, City, State, Zip Code) | | Telephone Number |
| 01/93 - 11/93 | SALES | $5.75 HRLY | ● YES ○ NO |
| Date Started to Date Ended | Job Title | Final Salary | Eligible for Rehire? |
| ATTENDED COLLEGE | | DALE | |
| Reason for leaving | | Supervisor Name | Title |
| SET-UP OF GUITARS FOR RESALE, ALSO MUSIC FLOOR SALES | | | |
| Description of Job Duties | | | |

| | | | |
|---|---|---|---|
| CINEMARK | 2210 E. PALMDALE BLVD | PALMDALE CA 93550 | ( ) |
| Company Name | Address (Street, City, State, Zip Code) | | Telephone Number |
| 10/90 - 07/92 | BOX ATTENDANT | $5.25 HR | ● YES ○ NO |
| Date Started to Date Ended | Job Title | Final Salary | Eligible for Rehire? |
| MOVED WITH FAMILY TO IDAHO | | TERRI | MANAGER |
| Reason for leaving | | Supervisor Name | Title |
| SALES OF THEATRE TICKETS | | | |
| Description of Job Duties | | | |

| | | | |
|---|---|---|---|
| FEDERAL EXPRESS | WOODLEY AVE, VAN NUYS, | | ( ) |
| Company Name | Address (Street, City, State, Zip Code) | | Telephone Number |
| 03-90 - 09/90 | COURIER | $6.80 HR | ● YES ○ NO |
| Date Started to Date Ended | Job Title | Final Salary | Eligible for Rehire? |
| COULD NO LONGER COMMUTE | | ? DON'T RECALL | |
| Reason for leaving | | Supervisor Name | Title |
| ORGANIZE & DELIVER DAILY PACKAGE DELIVERY ROUTE | | | |
| Description of Job Duties | | | |

**BUSINESS REFERENCE** List three individuals for whom you have worked that we may contact as business references.

May we contact your current employer? ○ YES ● NO N/A

| | | | |
|---|---|---|---|
| CASSIDY PARK | MATTEL INC | 333 CONTINENTAL BLVD EL SEGUNDO CA 90245 | (310) 252-3451 |
| Name | Company | Address | Telephone Number |
| PATRICIA JANSON | MATTEL INC | 333 CONTINENTAL BLVD EL SEGUNDO CA 90245 | (310) 252-4832 |
| Name | Company | Address | Telephone Number |
| DIANA PENA | | 1920 PINE AVE MANHATTAN BEACH, CA 90266 | ( ) |
| Name | Company | Address | Telephone Number |

**IMPORTANT INFORMATION: DO NOT SIGN THIS FORM UNLESS YOU ARE WILLING TO AGREE TO THE FOLLOWING TERMS AND LIMITATIONS:**

1. I authorize investigation of all statements contained in this application and I certify that this information is true and correct. I release Mattel, and my former employers, and all others, from any liability for damage which may result from such investigation. Any falsification or omission of material information from this application or in any other employment documents, may result in a denial of an offer or, if the individual is hired, termination of employment.

2. I acknowledge that my answer with respect to citizenship is given under penalty of perjury pursuant to section 16209 .3 of the Regulations under the California Labor Code.

3. Following receipt of a job offer, and upon request at any time during the course of my employment, I will submit to medical evaluation(s) by a Company-designated physician or medical clinic. I shall further consent to the release of any medical evaluation results to the Company for purposes of ascertaining my fitness for duty.

4. I agree, if employed, to conform to the guidelines and regulations of Mattel, as revised from time to time, and agree that those guidelines and regulations do not constitute an employment contract.

5. Apart from the above mentioned guidelines and regulations, I understand and agree that either Mattel or I may terminate my employment at any time and that I can be demoted, reassigned or transferred by the Company, with or without notice, for any reason and with or without cause. Mattel and I hereby acknowledge there are no oral or written sole agreements concerning this term of my employment. Mattel and I further agree that neither of us has made any representations contrary to this term of my employment. Mattel and I agree, and intend that, this paragraph be the final and complete expression of the agreement between us regarding the circumstances under which my employment may be terminated. Mattel and I agree that the provisions of this paragraph may not be modified by either party acting alone, nor may they be modified orally, by implied agreement or by course of conduct, but rather only through an express written agreement signed by me and the Chief Executive Officer of Mattel.

| | |
|---|---|
| _(signature)_ | 01/04/99 |
| Signature | Date |

CONFIDENTIAL-
ATTORNEYS' EYES ONLY

M 0001612

EXHIBIT F
PAGE 43