1 | QUINN EMANUEL URQUHART
   OLIVER & HEDGES, LLP
2 | John B. Quinn (Bar No. 90378)
   (johnquinn@quinnemanuel.com)
3 | Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
4 | Jon D. Corey (Bar No. 185066)
   (joncorey@quinnemanuel.com)
5 | 865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
6 | Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
7 |
8 | Attorneys for Plaintiff and Counter-Defendant
   Mattel, Inc.

9 |

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12 | EASTERN DIVISION

| | |
|---|---|
| 13 CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| 14       Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| 15       vs. | Hon. Stephen G. Larson |
| 16 MATTEL, INC., a Delaware corporation, | MATTEL INC.'S APPEAL OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER DENYING MATTEL'S APPLICATION TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS; MOTION TO ENFORCE THOSE ORDERS; AND TO COMPEL PRODUCTION OF THE TANGIBLE ITEMS |
| 17       Defendant. | |
| 18 | |
| 19 | |
| 20 AND CONSOLIDATED ACTIONS | |
| 21 | |
| 22 | [Notice of Lodging and Declaration of Diane C. Hutnyan filed concurrently] |
| 23 | |
| 24 | Hearing Date:        TBA Time:                TBA Courtroom:        TBA |
| 25 | |
| 26 | Phase 1 Discovery Cut-off:        Jan 28, 2008 |
| 27 | Pre-trial Conference:        May 5, 2008 Trial Date:                May 27, 2008 |
| 28 | |

07209/2478793.1

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |       PLEASE TAKE NOTICE that as soon as counsel may be heard, in the

3 | Courtroom of the Honorable Stephen G. Larson, located at 3470 Twelfth Street,

4 | Riverside, California 92501, plaintiff and counter-defendant Mattel, Inc. ("Mattel")

5 | will, and hereby does, move the Court to overrule the Discovery April 11, 2008

6 | order.

7 |       Mattel, Inc. submits this appeal of the Discovery Master's April 11,

8 | 2008 Order Denying Mattel's Application to enforce Court Orders compelling

9 | production of tangible items pursuant to <u>Federal Rules of Civil Procedure</u> 72(a) on

10 | the grounds that the Discovery Master's Order was clearly erroneous and contrary to

11 | law.

12 |       Mattel moves the Court for an order  reversing Judge Infante's April 11,

13 | 2008 ruling denying Mattel's application on the erroneous bases that Judge Larson

14 | had ruled on the merits of Mattel's request for production of tangible items pertinent

15 | to the design, development and manufacture of Bratz and Prayer Angel and had

16 | denied it.  To the contrary, Judge Larson had expressed the view that these materials

17 | should be produced, but ultimately left that issue to the Discovery Master to decide

18 | as a discovery matter.

19 |       Mattel also moves the Court for an order (a) enforcing the May 15,

20 | 2007 Order Granting Mattel's Motion To Compel Production of Documents And

21 | Interrogatory Responses By MGA ("May 2007 Order"), the August 13, 2007 Order

22 | Granting In Part And Denying In Part Mattel's Motion To Compel Production Of

23 | Documents by MGA; Denying Request For Monetary Sanctions ("August 2007

24 | Order"), and the June 20, 2006 on-the-record stipulation before the Honorable

25 | Robert N. Block, Magistrate Judge, in which MGA agreed to provide responsive

26 | tangible items for inspection within fifteen days of a request; and (b) compelling

27 | Defendant MGA to make available for immediate inspection, imaging and 3D

28 | scanning all tangible items responsive to Request Nos. 7-13, 26-27, 32-36, 46, 51,

53, 55, 96-100 of Mattel, Inc.'s First Set of Requests For Production Of Documents And Tangible Things To MGA Entertainment, Inc. ("First Set"), originally requested on June 14, 2004, and to Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of Mattel, Inc.'s First Set of Requests For Documents And Things Re Claims Of Unfair Competition To MGA Entertainment, Inc. ("First UC Set")[1], originally requested on December 18, 2006. Mattel's previous *ex parte* motion was brought January 24, 2008 but the requested materials -- tangible items pertinent to the design, development and manufacture of Bratz and Prayer Angel -- which are all highly relevant to the timing and substantial similarity issues that are part of Phase One -- have still not been produced.

Mattel also moves the Court for an order granting a modification of the scheduling order extending time to allow Mattel to inspect, image and 3D scan these tangible items, to take depositions related to the tangible items that were not produced, and to permit its experts to incorporate this new information into their expert reports.

### Statement of Rule 7-3 Compliance

The parties met and conferred regarding the issues raised in this motion on January 3 and January 7, 2008, and again on April 16, 2008, but were unable to resolve their differences.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Diane C. Hutnyan, Notice of Lodging and [Proposed] Order filed concurrently herewith, the records

---

[1]   See Request Nos. 7-13, 26-27, 32-36, 46, 51, 53, 55, 96-100 of the First Set and Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of the First UC Set are collectively referred to herein as "the Compelled Requests" and are attached hereto as Exhs. 1 and 2 to the Declaration of Diane Hutnyan ("Hutnyan Dec.").

1  and files of this Court, and all other matters of which the Court may take judicial

2  notice.

3

4  DATED:  April 21, 2008                    QUINN EMANUEL URQUHART OLIVER &
                                             HEDGES, LLP
5

6                                            By
7                                               Diane C. Hutnyan
                                                Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ....................................................................................... 2

    **A.**   **Factual History** ......................................................... 2

    **B.**   **Procedural History** ................................................... 9

ARGUMENT ........................................................................................... 11

I.   THE DISCOVERY MASTER SHOULD HAVE RULED ON MATTEL'S EX PARTE APPLICATION PURSUANT TO THE COURT'S FEBRUARY 4, 2008 MINUTE ORDER ...................................... 11

II.  MGA SHOULD BE COMPELLED TO PROVIDE ALL TANGIBLES RELATED TO THE ORIGIN, CREATION, DESIGN, DEVELOPMENT, AND MANUFACTURE OF BRATZ AND PRAYER ANGEL FOR IMMEDIATE INSPECTION, IMAGING AND 3D SCANNING .................................................................. 14

CONCLUSION ........................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

In re Genetically Modified Rice Litigation,
   2007 WL. 1655757 (E.D. Mo. 2007) ................................................................. 17

LG Phillips LCD Co., Ltd. v. Tatung Co.,
   2007 WL. 2908183 (D. Del. 2007) ................................................................. 17

## Statutes

Fed. R. Civ. P. 26.................................................................................................. 17

Fed. R. Civ. P. 34........................................................................................ 2, 16, 17

Fed. R. Civ. P. 34(a) ............................................................................................. 17

Fed. R. Evid. 1001 ........................................................................................ 2, 3, 17

## Other Authorities

Black's Law Dictionary, 8th Ed. 2004................................................................. 17

1

## PRELIMINARY STATEMENT

2        The requested discovery at issue here -- which has never been produced
3 despite previous Court Orders requiring it -- goes directly to the timing and
4 substantial similarity issues that MGA has put at the forefront of Phase I.  MGA has
5 failed to produce numerous tangible items pertaining to the origin, design,
6 development and manufacture of the Bratz dolls, including the preliminary tooling
7 that MGA's own documents show existed as early as December 2000.  The only
8 manufacturing molds Mattel has been allowed to see have dates of December 2002
9 on them.

10        Back in February, this Court recognized the fact that the tangible items
11 sought had been requested, had not been produced, and needed to be produced:  "I
12 think Mattel is right on that these are certainly within the ambit of several of the
13 document requests; so there's no question that they need to be produced.  They've
14 been asked for."  The Court went on to discuss *some* tangible items that MGA had
15 belatedly agreed to produce in Hong Kong and China that were the subject of the
16 cost-shifting request that was part of Mattel's motion, indicating that MGA should
17 cooperate to avoid the imposition of costs; and it granted Mattel's request to modify
18 the scheduling order as to follow-on discovery relating to any late-produced tangible
19 items.  The other issue raised by Mattel's motion -- the request that the Court
20 enforce its prior orders and order the immediate production of tangible items --  was
21 a discovery matter that was left for the Discovery Master to decide.

22        Mattel re-noticed this portion of the motion for hearing before Judge
23 Infante, but rather than ruling on it, the Discovery Master concluded on April 11,
24 2008 that the District Court had already ruled on this discovery issue and had *denied*
25 it.  Not only was there no indication in Judge Larson's Order that he had denied
26 anything -- the subsequent minute order indicates only "granted in part," but his
27 comments at the hearing show that had the Court ruled on it, its inclination was to
28 grant the requested relief.

-1-

1    As this Court recognized, the tangible items requested should have

2    been produced long ago.  There is no question that they haven't been, and no

3    question that Mattel has suffered prejudice from MGA's failure to produce them to

4    date.  The Discovery Master's denial of Mattel's motion seeking MGA's production

5    of the critical tangible items should be reversed and MGA should be compelled to

6    produce them immediately.

7

8                              **BACKGROUND**

9        A.    **Factual History**

10            *Mattel's Requests Clearly Called For The Tangibles:*  Each of the

11   Compelled Requests seeks tangible items relating to the origin, creation, design,

12   development and/or manufacture of Bratz or other relevant products in this case.

13   Some of the requests focus directly on tangible items, such as Request No. 96 of the

14   First Set ("[a]ll doll heads, sculpts, prototypes, models, samples and tangible items

15   that were created, prepared or made, whether in whole or in part, prior to January 1,

16   2001 that REFER OR RELATE TO BRATZ") or Request No. 99 of the First Set

17   ("[a]ll doll heads, sculpts, prototypes, models, samples and tangible items that

18   REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys that

19   BRYANT produced, created, authored, conceived of or reduced to practice, whether

20   alone or jointly with others, prior to January 1, 2001").[2]

21            Some of the requests even call specifically for Bratz molds and tooling,

22   such as Request No. 53 of the First Set, which seeks "[a]ll DOCUMENTS[3] that

23   _____

24      [2]  See Exh. 1 to the Hutnyan Dec. (First Set) at 25, 26.
         [3]  In both sets of requests, "DOCUMENT" was defined to include that term's
25   meaning under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence
26   1001 of all writings and recordings, which "consist of letters, words, or numbers, or
     their equivalent, . . . or other form of data compilation." Exh. 1 at 2. The stated
27   definition of "DOCUMENTS" in the First Set also specifically included "every
28        (footnote continued)

1  REFER OR RELATE TO the procurement, fabrication, preparation and production

2  of each and every mold for BRATZ (including without limitation for any model,

3  prototype, or sample thereof) prior [to] June 1, 2001 . . . ."; Request No. 51 of the

4  First Set, which seeks "[a]ll DOCUMENTS that REFER OR RELATE TO each and

5  every sculpt of BRATZ (including without limitation any model, prototype or

6  sample thereof) prior to June 1, 2001" and Request No. 17 of the First UC Set,

7  which seeks "[a]ll DOCUMENTS RELATING TO the tooling for any of the

8  CONTESTED BRATZ DOLLS PRODUCTS . . . including but not limited to all

9  DOCUMENTS relating to the engineering, preparation, fabrication and creation of

10  the molds and face paint masks used in connection therewith and to the film and/or

11  digital files used in connection with the packaging therefore."[4]

12      Previously, Judge Infante had compelled MGA to produce all items

13  responsive to these and the other Compelled Requests.  He ordered production as to

14  the Compelled Requests from the First Set by May 31, 2007.[5]  He ordered

15

16  other device or medium by which or through which information of any type is
    transmitted, recorded or preserved."  Id. The stated definition of "DOCUMENTS" in
17  the First UC Set also specifically included "every other means of recording upon
    any tangible thing, any form of communication or representation, and any record
18  thereby created, regardless of the manner in which the record has been stored."
19  [4]  See Exh. 1, at 17.  Mattel also propounded several other broader requests that
20  encompass molds, tooling and other tangible items related to the creation, design
    and development of Bratz, including Request No. 5 of the First UC Set ("[a]ll
21  DOCUMENTS RELATING TO the invention, creation, origin, conception,
22  authorship, and ownership of the CONTESTED MGA PRODUCTS"); Request
    No. 32 of the First Set ("[a]ll DOCUMENTS prepared, written, transmitted or
23  received (whether in whole or in part) prior to January 1, 2001 that REFER OR
24  RELATE TO BRATZ"); Request No. 33 of the First Set ("[a]ll DOCUMENTS that
    REFER OR RELATE TO BRATZ that REFER OR RELATE TO any time prior to
25  January 1, 2001 . . . ."); and Request No. 36 of the First Set ("[a]ll DOCUMENTS
26  that REFER OR RELATE TO the origin(s), conception or creation of
    BRATZ . . . .").  Id., Exh. 1 (First Set) at 7, 13, 14.
27  [5]  See Order dated May 15, 2007, attached as Exh. 7 to the Hutnyan Dec, at 14.
28

1   production as to the Compelled Requests from the First UC Set by August 30,

2   2007.[6]  On December 21, 2007, Mattel again requested, pursuant to the parties'

3   June 20, 2006 on-the-record stipulation before Judge Block, to inspect and image all

4   tangibles responsive to its requests within fifteen days.[7]

5          *MGA Refused To Produce Tangibles Relating To The Origin, Creation,*

6   *Design, Development And Manufacture of Bratz and Prayer Angels On The Basis*

7   *That They Are Not Responsive To The Requests:*  MGA's limitations on Mattel's

8   requests were revealed as the result of that December 21, 2007 request.  To ensure

9   there was no confusion about what was requested, Mattel had asked for "any and all

10  (1) tangible three-dimensional objects that are responsive to any request for

11  production or interrogatory previously served on MGA, its Hong Kong affiliate, or

12  any of its agents, *including without limitation, all molds, sculpts, doll heads,*

13  *prototypes, models, and three-dimensional objects that are in the custody and*

14  *control of MGA, its Hong Kong affiliate, or any of its agents; and (2) all molds,*

15  *sculpts, doll heads, prototypes, models, and three-dimensional objects used in the*

16  *manufacture, design or creation, or production of, or that are otherwise related to,*

17  *Bratz or Prayer Angel dolls and are in the custody and control of MGA, its Hong*

18  *Kong affiliate, or any of its agents.*"[8]

19         On a telephonic meet-and-confer that took place on January 3, 2008,

20  counsel for MGA stated that he believed Mattel's letter request was broader than the

21  scope of Mattel's requests for production, and specifically requested that Mattel

22  agree to narrow its letter request to what was responsive to its document requests by

23  removing the language after the first occurrence of "agents" -- the italicized

24

25    [6]  <u>See</u> Order dated August 30, 2007 attached as Exh. 8 to the Hutnyan Dec.

26    [7]  <u>See</u> June 20, 2006 Stipulation attached as Exh. 9 to the Hutnyan Dec.

27    [8]  See Letter from Diane Hutnyan to Timothy Miller, dated December 21, 2007, attached as Exh. 10 to the Hutnyan Dec. (emphasis added).

28

1   language above.[9]  Mattel's counsel pointed out that all the items listed in the

2   questioned portion of the request were responsive to its requests and requested

3   clarification as to which items MGA contended were not within the scope of the

4   requests.[10]  MGA's counsel responded that "*among other things*, **Mattel's requests**

5   **do not call for molds used in conjunction with the manufacture of dolls or other**

6   **tangible items.**"[11]

7          When Mattel requested other specific tangible items related to the

8   origin and development of Bratz, MGA declined to state whether it had searched for

9   those tangible items and merely stated that it had "substantially completed its

10  production of tangible items in response to the requests that you characterized as

11  calling for tangible items 'relating to the origin, creation, design or development of

12  Bratz.'"[12]  It refused to elaborate as to what it believed was "responsive" and again

13  argued that tangibles were not called for by Mattel's requests.[13]  And MGA to date

14  has refused to identify what "other things" in Mattel's December 21 letter it has

15  unilaterally concluded Mattel's requests do not call for.[14]  It is clear now that MGA

16  has been interpreting the requests in such a way as to exclude clay sculpts, rubber

17  and metal molds for various stages of production and for doll accessories, face paint

18

19  _____

20     [9]  Id., at ¶ 3.

21     [10]  Id., at ¶ 4 and Letter from Andrew Temkin to Diane Hutnyan dated January 7, 2008 attached as Exh. 11 to the Hutnyan Dec. ("you asked us to specify where your

22  letter was incorrect. . .").

23     [11]  See Letter from Amy Park to Diane Hutnyan dated January 10, 2008, attached as Exh. 12 to the Hutnyan Dec. ("whether molds are called for by your

24  requests is debatable").

25     [12]  See id.

26     [13]  See Exh. 12, at 3 ("Your assertion that a request specifically calling for "documents" calls for other tangible items is inconsistent with the Federal Rules and

27  Mattel's own practice").

     [14]  See id.

28

masks, "master" heads, documentation dating these items, and many other items related to design, development and manufacture.

*MGA Has No Explanation For The Significant Gap In Tangibles In Its Production:* Missing from MGA's production are most of the tangible items pertaining to the origins, creation, design, development and manufacture of the early Bratz and Prayer Angel dolls:

- clay sculpts for each doll developed;
- mold(s) taken of the clay, perhaps of rubber, perhaps in multiple versions;
- closures and documentation and tooling related to the design of the closures;
- resin or fastcast sculpts from the mold of the clay;
- metal molds relating to all the body parts, including the head;
- vinyl super master of the head;
- multiple masters of the head;
- paint master;
- face paint masks;
- molds for all plastic accessories coming with the dolls;
- printing plates for packaging;
- documentation including schematics, engineering drawings and communications with the manufacturer about machining, tolerances, dimensions, or assembly of the dolls; and
- anything purportedly dating from before or after February 2001.

While MGA's witnesses have testified about different aspects of the origin and development of the Bratz and Prayer Angels dolls, MGA's failure to produce the items relating to these issues have prevented Mattel from testing that testimony, as well as from asking questions about the physical items themselves. Having avoided

1  discovery of a whole category of materials, MGA has been permitted to tell its own

2  selective story, avoiding the parts it would rather not talk about.

3       There is no question that many tangible items have never been seen.  For

4  example, MGA has provided no explanation as to the mock-up development tooling

5  and documentation that was transferred from MGA vendor Wah Sing to MGA

6  vendor Early Light at MGA's direction on or around December 8, 2000.  This

7  included the "roto head skin-master" that was referenced in an email produced by

8  MGA bates-numbered MGA 0065414-15.[15]  The earliest molds Mattel has seen

9  were the molds MGA produced in Shenzhen, China, each of which had the date

10  "Dec 02" stamped in the metal.[16]  (Before Mattel sent someone to China to look at

11  them, MGA's counsel had represented these as being from February 2001, but it

12  now refuses to provide a declaration to that effect.)[17]

13       MGA's counsel refuses to answer whether it has searched for any of

14  these items, and continues to assert its position that molds and other tangible items

15  relating to the origin and development of Bratz are not in within the scope of

16  Mattel's requests.[18]  MGA will only state that it has "substantially completed its

17  production of tangible items in response to the requests that you characterized as

18  calling for tangible items 'relating to the origin, creation, design or development of

19

20

21

22

---

23  [15]  See Letter from Diane Hutnyan to Amy Park dated January 14, 2008, at 2-3
attached as Exh. 13 to the Hutnyan Dec.

24  [16]  See photographs taken by Mattel's Expert, Frank Keiser, attached as Exh. 14
to the Hutnyan Dec.

25  [17]  See Hutnyan Dec. at ¶ 11.

26  [18]  Id. at 3 (rejecting assertion that MGA is withholding tangibles); see also letter

27  from Amy Park to Diane Hutnyan dated January 15, 2008 attached a Exh. 8 to the
Hutnyan Dec., at 2 ("our position has not changed").

28

Bratz',"[19] that it "continues to conduct a reasonable, good faith search for documents and tangible items,"[20] and that "some of the material you are seeking is several years old and much of it may have ceased to exist before this action was filed."[21]

This belated and ambiguous suggestion that MGA destroyed Bratz-related documents, molds, castings, dolls, prototypes, models, printing plates and other tangible items contradicts MGA's representation that it preserves everything, a point that Judge Larson noted during the February 4 hearing:

> There's this repeated representation that no one deliberately did anything, and I guess I'm not concerned about what people deliberately did or didn't do; *I'm more concerned about why these things were not identified sooner. And I guess I don't have a real clear answer on that . . . given -- let me say this -- given the representations that were made about the diligence upon which searches were done pursuant to document requests.*[22]

During the meet-and-confer process that took place before the previous *ex parte* application was filed, MGA identified a few items that had never been produced in the case. But to this day, MGA refuses either to produce the rest of the tangible items or to state that it has produced the rest of the tangible items responsive to the requests, instead taking the position that tangible items are not responsive to the requests and stating that it has made a substantial production of all

---

[19]   Id., Exh. 12, at 3; see also Email from Amy Park to D. Hutnyan dated January 11, 2008, attaching photographs of the molds, attached as Exh. 15 to the Hutnyan Dec.
[20]   Id., Exh. 15, at 3.
[21]   Id., Exh. 15, at 2.
[22]   See Hearing Transcript, dated February 4, 2008, attached as Exh. 16 to the Hutnyan Dec., at 66:10-18.

1   "responsive" items, whatever MGA means by that.  MGA's delay in producing these
2   items has already prejudiced Mattel by preventing it from taking related discovery
3   before the January 28, 2008 fact discovery cut-off, and by preventing Mattel's
4   experts from being able to finish their analyses.

5   **B.**   **Procedural History**

6          Mattel's previous *ex parte* application to enforce court orders
7   compelling certain tangibles was filed on January 25, 2008 before the District Court.
8   Along with this application, Mattel also sought relief from the expert witness cut-off
9   date dictated by Judge Larson's Scheduling Order.

10          On February 4, 2008, the Court issued an order "GRANT[ING] IN
11   PART Mattel's application and resolving the question of relief from the expert
12   witness cut-off date and a related dispute about certain items that MGA had agreed
13   to produce only for inspection and scanning in Hong Kong and Shenzhen, China.[23]
14   This Court further ruled:

15          As previously ordered and reaffirmed by this Court, all
16          discovery matters should be presented in the first instance to the
17          Discovery Master.  The fact that the Discovery Master's ruling
18          might impact upon the Court's scheduling procedure does not
19          relieve the parties of following this procedure.  For instance,
20          motions to compel, motions to quash, or motions challenging
21          service as to existing discovery requests shall be brought before
22          the Discovery Master. . . .   In general, and ***on the matters***
23          ***touched upon herein, the Court expresses no opinion as to***

24
25
26
27   [23]   See Order dated February 4, 2008 attached as Exh. 3 to the Hutnyan Dec.
28

1    *these issues, and instead leaves those issues to the Discovery*
2    *Master to decide in the first instance.*[24]

3          Pursuant to the Court's direction, Mattel submitted the discovery issue
4    in its motion -- the production of the previously ordered but missing tangible items
5    -- to the Discovery Master for adjudication.[25]  MGA opposed the Notice of
6    Rehearing with a brief contending that this Court had already ruled on the discovery
7    issue and had denied the requested relief.[26]

8          Mattel responded with a brief showing that this Court had "GRANTED
9    IN PART;" had not ruled on, much less denied, Mattel's motion as it related to the
10   main discovery issue; and had ordered it to be put before the Discovery Master.

11         Two months later, on April 11, 2008, Judge Infante issued an Order
12   denying Mattel's Application on the grounds that the Application had been decided
13   in full by Judge Larson in the February 4, 2008 hearing:

14         The Application was heard and decided in full by Judge Larson
15         on February 4, 2008, as evidenced by the transcript of the
16         proceedings and the Civil Minute Order filed the same day. . . .
17         *Contrary to Mattel's assertion, at no time during the February*
18         *4, 2008 hearing or in its February 4, 2008 Civil Minute Order*
19         *did the court state or even intimate that it was only deciding a*
20         *portion of Mattel's Application.  Nor did the Court direct or*
21         *even suggest that Mattel present any portion of its Application*
22         *to the undersigned Discovery Master for determination.  If the*

23   _____

24   [24]   See Exh. 3 at ¶ 5 (emphasis added).
25   [25]   See Mattel's Notice of Change of Hearing on Tangibles Application, dated
      February 19, 2008, attached as Exh. 4 to the Hutnyan Dec.
26   [26]   See MGA's Opposition to Mattel's Notice of Change of Hearing on Tangibles
27   Application, dated February 20, 2008, attached as Exh. 5 to the Hutnyan Dec.

28

1    *Court had intended to refer certain issues raised in the*

2    *Application to the Discovery Master for determination, the*

3    *Court would have done so expressly*, as it did with Mattel's Ex

4    Parte Application re Motion To Compel Production of

5    Electronic Media From Third Parties . . . .[27]

6

7    **ARGUMENT**

8  I.   **THE DISCOVERY MASTER SHOULD HAVE RULED ON**

9    **MATTEL'S EX PARTE APPLICATION PURSUANT TO THE**

10    **COURT'S FEBRUARY 4, 2008 MINUTE ORDER**

11    Contrary to Judge Infante's Order, Mattel's Application to Enforce

12  Court Orders Compelling Production of Tangible Items was not "heard and decided

13  in full by Judge Larson on February 4, 2008."[28] Rather, the Court directed Mattel

14  that the issue of the relevant tangible items had to be taken up with the Discovery

15  Master.

16    At the February 4 hearing, the Court was clear that discovery issues go

17  first to the Discovery Master.  On page 26 of the transcript, Judge Larson stated:

18    I could not have used, I don't think, clearer language that

19    discovery disputes in the first instance need to go to the

20    discovery master and not come to this court by way of ex-

21    parte application.[29]

22

23    The Court further stated its view that it would be wrong for it to decide

24  some of these discovery issues while leaving others for the Discovery Master:

25    [27]  See Discovery Master's Order dated April 11, 2008, attached as Exh. 6 to the

26  Hutnyan Dec.

27    [28]  See Exh. 6 at 2.

28

-11-

I think if I get into the business of deciding some of these and taking some of them back from Judge Infante, it just creates a mess, quite frankly. . . . What I don't think is proper for this Court to do is to start issuing discovery orders that may or may not conflict with earlier positions that Judge Infante has taken.  I think that just makes a mess of the whole thing.[30]

When Mattel explained at the hearing that another *Ex Parte* Application, like the *Ex Parte* on Tangibles that remains unresolved, was before him because only Judge Larson can grant relief from the expert discovery cut-off if additional time were needed to deal with discovery materials produced for the first time after the close of discovery,[31] the Court responded:

And that's fair enough.  And I will certainly give any party leave to come back to the Court after a ruling by Judge Infante that apparently has an effect or is making the scheduling order unmanageable or needs relief to file a supplemental expert report, or whatever it might be.  But in the first instance, I think this issue should be decided by Judge Infante.  I don't want to have me deciding some of these issues and Judge Infante deciding other ones.[32]

There is just nothing in the February 4 hearing or Minute Order suggested that Judge Larson made an exception on the Tangibles Motion and rule on

---

[29] See Exh. 16 at 26:11-14.
[30] Id., at 26:21-24 and 27:15-18.
[31] Id. at 80:15-21.
[32] Id., at 80:22-81:4.

1  whether MGA had to produce the missing tangibles.  Mattel had four requests for

2  relief:

3              (1) an order enforcing the May 2007 and August 2007 orders and the

4              June 2006 on-the-record stipulation before Judge Block;

5

6              (2) an order compelling MGA to make available "all tangible items

7              responsive to Request Nos. 7-13, 26-27, 32-36, 46, 51, 53, 55, 96-100

8              of Mattel, Inc.'s First Set of Requests For Production Of Documents

9              And Tangible Things To MGA Entertainment, Inc. . . . and to Request

10             Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of Mattel, Inc.'s First Set of

11             Requests For Documents And Things Re Claims Of Unfair

12             Competition To MGA Entertainment, Inc.";

13

14             (3) an order "granting cost-shifting for the inspections in Hong Kong

15             and Shenzhen, China which have become necessary"; *and*

16

17             (4) an order "granting a modification of the scheduling order . . . ."[33]

18  Judge Larson clearly ruled on Mattel's third and fourth requests for relief and left the

19  first two up to Judge Infante.  The Court's Order accurately reflects this:  "Mattel's

20  Ex Parte Application to Enforce Court Orders Compelling Production of Tangible

21  Items: This application is granted in part. . ."[34]  Nowhere in this Order did the Court

22  state that Mattel's Application was also "Denied in Part . . ."  or reflect any ruling on

23  the merits of the discovery dispute.  Had this Court ruled upon and denied Mattel's

---

25  [33]   See Mattel's *Ex Parte* Application to Enforce Court Orders Compelling
26  Production of Tangible Items, dated January 24, 2008, attached as Exh., 17 to the
    Hutnyan Dec., at 1.

1   request, as MGA and Judge Infante suggest, Mattel respectfully submits that the
2   Court would have expressly stated that it was making a special ruling on this issue
3   that was contrary to the other statements about all discovery disputes being decided
4   by the Discovery Master[35], and/or at least stated *something* evidencing an actual
5   ruling on the issue.[36]

6          Judge Infante's ruling, denying the relief requested solely on the basis
7   that it had previously been denied by this Court, was clearly erroneous and contrary
8   to the law. Mattel respectfully requests that the Court reverse the April 11, 2008
9   Discovery Master Order and, as discussed further below, grant Mattel's underlying
10  motion by compelling the immediate production of MGA's remaining tangibles.

11

12  **II.    MGA SHOULD BE COMPELLED TO PROVIDE ALL TANGIBLES**
13  **RELATED TO THE ORIGIN, CREATION, DESIGN,**
14  **DEVELOPMENT, AND MANUFACTURE OF BRATZ AND PRAYER**
15  **ANGEL FOR IMMEDIATE INSPECTION, IMAGING AND 3D**
16  **SCANNING**

17          MGA has omitted from its production molds, tooling and other tangible
18  objects relevant to Bratz design and development. While providing access to
19  hundreds of packaged Bratz dolls (falsely suggesting that it was being forthcoming
20  with production of tangible items related to Bratz) and repeating the slogan at every
21  stage that MGA has produced all "responsive" materials and that its production is

22  _____

23  [34]  See Court's Minute Order dated February 4, 2008, attached as Exh. 18 to the
24  Hutnyan Dec., at 4.
25  [35]  See Exh. 9 at 2.
26  [36]  Though Judge Infante's Order states that the transcript of the Court hearing
    showed Judge Larson had denied Mattel's request for the tangibles, it does not
27  explain how this interpretation squares with Judge Larson's statements that the items
    definitely were requested and needed to be produced. See Exh. 6.
28

"substantially complete,"[37] MGA has admittedly omitted almost all tangibles relating to the early development and first manufacture of Bratz -- producing no clays, no rubber molds, no closures, no face paint masks, no supermasters or paintmasters, etc.[38] Metal molds are extremely important to producing doll parts, yet the only metal molds produced were dated December 2002 and indeed MGA's own documents show that there were metal molds -- even head molds -- made at least two years earlier that MGA has never produced.[39]

It was only after Mattel discovered that MGA had secretly interpreted its requests to exclude all molds, and started asking pointed questions, did any of these kinds of tangibles appear at all (but even then only a few items related to molds and tooling):

- January 4, 2008:  MGA discovers "3-dimensional" displays and "additional items on which [MGA] may rely."[40]

- January 10, 2008:  MGA discovers December 2002 Bratz molds in China.[41]

- January 15, 2008:  MGA discovers December 2002 Prayer Angel molds.[42]

- January 17, 2008:  MGA discovers a "binder of material relating to the development of Bratz."[43]

---

[37] See Exh. 12.
[38] Id., at ¶ 10.
[39] See Hutnyan Dec. at ¶ 12.
[40] See Letter from Amy Park to Diane Hutnyan, dated January 4, 2008, attached As Exh. 19 to the Hutnyan Dec., at 1.
[41] See Exh. 13, at 2.
[42] See Letter from Amy Park to Diane Hutnyan dated January 15, 2008, with new photographs of the Bratz molds and additional molds of Prayer Angel which "MGA also has located," attached as Exh. 20 to the Hutnyan Dec.

1      •      January 21, 2008:  MGA discovers "additional tangible items" for

2              inspection in Los Angeles.[44]

3   The "discoveries" and supplemental productions ceased the moment that Mattel's

4   original application was filed, and no additional items have been produced since.

5              MGA has no legitimate basis for secretly reading out of the prior Court

6   Orders an obligation to find and produce molds and tangible items.  The requests

7   and order compel their production specifically.

8              MGA has tried to justify its withholding of molds and other tangible

9   items associated with the creation, design, development and manufacture of Bratz

10  on the purported basis that Mattel sought and the Discovery Master compelled

11  production of only "documents."[45]  But the definition of "DOCUMENT" in Mattel's

12  Compelled Requests specifically included "tangible items." Also, it is untenable to

13  suggest, as MGA has, that requests that directly seek DOCUMENTS (including

14  tangible things) that "REFERS OR RELATES TO" molds do not call for the

15  production or inspection of the molds themselves.  To the contrary, Mattel's

16  requests, including those MGA was compelled on, defined "REFERS OR

17  RELATES" to as encompassing matters that embody or evidence a given matter. [46]

18  (And even if MGA were right, that does not excuse its failure to produce the

19  engineering drawings for the final Bratz doll used create the molds or the

20  engineering drawings for the molds themselves.)

21              The requests also defined "DOCUMENTS" to include all "writings"

22  and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil

23  _____

24  [43]  See Letter from Amy Park to Diane Hutnyan dated January 17, 2008 attached

25  as Exh. 21 to the Hutnyan Dec.

     [44]  See Letter from Amy Park to Diane Hutnyan dated January 21, 2008 attached

26  as Exh. 22 to the Hutnyan Dec.

     [45]  See Exhs. 1 and 2.

27  [46]  Id.

28

1 | Procedure and Rule 1001 of the Federal Rules of Evidence.[47] Rule 1001 provides
2 | that "'writings' and 'recordings' consist of letters, words, or numbers, or their
3 | equivalent, set down by handwriting, typewriting, printing, photostating,
4 | photographing, magnetic impulse, mechanical or electronic recording, or other form
5 | of data compilation." Thus, in federal court, "documents" clearly includes "tangible
6 | items." See LG Phillips LCD Co., Ltd. v. Tatung Co., 2007 WL 2908183 (D. Del.
7 | 2007) (defining "document" as being used "in its customarily broad sense pursuant
8 | to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001"
9 | and expressly including "things," which it defined as "any tangible item"); In re
10 | Genetically Modified Rice Litigation, 2007 WL 1655757 (E.D. Mo. 2007) (defining
11 | "document" as being "synonymous and equal in scope to usage of this term in Fed.
12 | R. Civ. P. 34(a) and to the terms . . . in Fed. R. Evid. 1001" and including within it
13 | "writings of every kind and description that are fixed in any medium upon which
14 | intelligence or information can be recorded or retrieved"); see also Black's Law
15 | Dictionary, (8th Ed. 2004) (defining "document" as "something tangible on which
16 | words, symbols or marks are recorded"). Even MGA has admitted that "documents"
17 | includes "word or images that have been recorded in or reduced to hard copy
18 | form."[48]

19 |        The molds in question themselves constitute "records" of the design,
20 | development and/or manufacture of the dolls; indeed, that is one of the reasons they
21 | are highly relevant. As is clear from the photographs provided by MGA, the Bratz
22 | and Prayer Angel molds in China each feature images of the doll that have been
23 | recorded in metal labels bolted to the steel;[49] and they all have identifying numbers
24 | or letters or other characters on them, showing their correspondence to certain

---

[47] Id.
[48] See Exh. 12, at 3.
[49] See Exh. 15 (showing photographs of the molds and tooling in China).

1    products.  They are "documents" -- even under MGA's own narrow definition.  The

2    same is true of the paintmasters and other items, which all would have identifying

3    characters on them, which feature images that have been recorded in their media,

4    and which in and of themselves are records of the design, development and

5    manufacture of Bratz.

6          For all these reasons, MGA's refusal to recognize these items as

7    responsive and its continuing failure to produce them (or its failure to preserve them,

8    if it is true that these items no longer exist) are without merit.[50]  MGA should be

9    compelled to make an immediate and diligent search for all of the items listed

10   above, and all of the other tangible items relating to the creation, design,

11   development and/or manufacture of Bratz or Prayer Angel, and to produce whatever

12   it finds without further delay.

13

14                              **CONCLUSION**

15          The Court should reverse the Discovery Master's April 11, 2008 order

16   and issue an Order:

17          (1) enforcing the May 15, 2007 Order Granting Mattel's Motion To

18   Compel Production of Documents And Interrogatory Responses By MGA ("May

19   2007 Order"), the August 13, 2007 Order Granting In Part And Denying In Part

20   Mattel's Motion To Compel Production Of Documents by MGA; Denying Request

21   For Monetary Sanctions ("August 2007 Order"), and the June 20, 2006 on-the-

22   record stipulation before the Honorable Robert N. Block, Magistrate Judge, in which

23   MGA agreed to provide responsive tangible items for inspection within fifteen days

24   of a request; and

25   _____

26   [50]   Because the molds and other items are often used as a record of what was

27   made, it would be unusual for a vendor to discard the items, or the substantial
     documentation that generally goes with them.

28

1             (2) compelling Defendant MGA to make available for immediate

2   inspection, imaging and 3D scanning all tangible items responsive to Request Nos.

3   7-13, 26-27, 32-36, 46, 51, 53, 55, 96-100 of Mattel, Inc.'s First Set of Requests For

4   Production Of Documents And Tangible Things To MGA Entertainment, Inc.

5   ("First Set") and to Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of Mattel,

6   Inc.'s First Set of Requests For Documents And Things Re Claims Of Unfair

7   Competition To MGA Entertainment, Inc. ("First UC Set"), including but not

8   limited to all tangible items relating to the origin, creation, design, development

9   and/or manufacturer of Bratz and Prayer Angels; and

10             (3) granting a modification of the scheduling order extending time to

11   allow Mattel to inspect, image and 3D scan these tangible items, to take depositions

12   related to the tangible items that were not produced, and to permit its experts to

13   incorporate this new information into their expert reports.

14

15   DATED:  April 21, 2008            QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP

16

17

18                       By

19                          Diane C. Hutnyan
                                            Attorneys for Mattel, Inc.

20

21

22

23

24

25

26

27

28

MATTEL'S APPEAL OF APR. 11, 2008 ORDER; MOTION TO ENFORCE ORDERS COMPELLING
PRODUCTION OF TANGIBLE ITEMS