1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2 |   johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3 |   (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5 |   (timalger@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
      Telephone:   (213) 443-3000
7 | Facsimile:   (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 |                    UNITED STATES DISTRICT COURT

10 |                 CENTRAL DISTRICT OF CALIFORNIA

11 |                         EASTERN DIVISION

12 |

13 | CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)

14 |             Plaintiff,                 Consolidated with
                                           Case No. CV 04-09059
           vs.                             Case No. CV 05-02727
15 |
     MATTEL, INC., a Delaware corporation, **DISCOVERY MATTER**
16 |
             Defendant.                    Hon. Edward A. Infante (Ret.)
17 |                                        Discovery Master

18 |   ─────────────────────────────        [PROPOSED] ORDER GRANTING
     AND CONSOLIDATED CASES                 MATTEL, INC.'S MOTION TO
19 |                                         COMPEL BRYANT TO MAKE
                                            ORIGINAL DOCUMENTS
20 |                                        AVAILABLE FOR EXPERT
                                            EXAMINATION AND TESTING
21 |
                                           Date:  August 23, 2007
22 |                                        Time:  9:00 a.m.
                                           Place: Telephonic
23 |
                                           Discovery Cut-Off: October 22, 2007
24 |                                        Pre-Trial Conference: January 14, 2008
                                           Trial Date: February 12, 2008
25 |

26 |

27 |

28 |

07209/2201594.1

                                                        [PROPOSED] ORDER

EXHIBIT _____ 8

PAGE _____ 126

1  Having considered Mattel, Inc.'s Motion To Compel Bryant To Make
2  Original Documents Available For Expert Examination and Testing (the "Motion"),
3  and all other papers and argument submitted in support of or opposition to the
4  Motion, and finding good cause therefore,
5      IT IS HEREBY ORDERED that:
6      1.   Mattel's Motion is GRANTED IN PART, as follows:
7      2.   The following materials were provided to the Discovery Master, at
8  his request, for *in camera* review:  the C.V. of the four experts who will be
9  conducting examination, inspection and testing of the documents; and statements
10 from each of them as to the location and nature of their laboratory facilities, as to
11 their individual practices with regard to the preservation of evidence, and as to their
12 understanding that they are fully accountable for Bryant's original documents while
13 those documents are in their custody.  The Discovery Master has found Mattel's
14 showing with respect to the experts satisfactory.
15     3.   Accordingly, Bryant shall produce to Mattel, within ten (10) Court
16 days of entry of this Order, on the day that Mattel specifies, the original documents
17 listed below for Mattel's experts' examination, testing and/or analysis:

18 - the originals of boxes 1 through 8 inclusive;

19
20 - from box 9: folders "Sugar Planet Spring 2003 Tropical" and "Sugar Planet General 2001-2002?";

21
22
23 - from box 10: folders "Baby Bratz," "F 04 Retro Funk General," "Sugar Planet Butterfly Purse & Character S 04," "Lipstixx 2003," Sugar Planet Candyland Purse: Character S 04" and "Sugar Planet Tropical 2001"

24
25
26
27 - from box 11: folders entitled "Bratz Dollpack Fall 2003," "S04 Girls Night Out," "Bratz New Accessories Etc. 2002," "Bratz Petz S04," "Winter Wonderland F03 Dolls," "Bratz Spring 2002 7.99 molded pieces," "S04 Sweetheart," "Jade Dollpack Spring 2003," "Jade Fall 2002," "Sasha Fall 2002," "Yasmin Fall 2002," "Cloe Fall 2002," "New

28

-1-

EXHIBIT _8_   PROPOSED ORDER

PAGE _127_

1   Girl 2002 Fall," "Bratz $7.99 2002 Spring Break," and "Bratz Spring
2   2002 14.99 segment."

3   ~~If Mattel's experts determine that their analysis would potentially benefit~~
4   ~~from access to other original documents not listed above, Bryant will make those~~
5   ~~originals available to Mattel's counsel or Mattel's expert(s) at Mattel's counsel's~~
6   ~~direction upon five (5) Court days' notice.~~

7   4.   On the day specified, Mattel will pick up the documents listed
8   above from Keker & Van Nest's San Francisco office during normal business hours.
9   The next day after the documents are removed from Keker & Van Nest shall be the
10  first of 35 days that Mattel will have for the expert examination and testing of the
11  materials requested for preparation of its initial expert reports, which time period may
12  be extended upon a showing by Mattel of good cause by further Order of the
13  Discovery Master.  The documents shall be returned to Keker & Van Nest's San
14  Francisco office on the 35th day during normal business hours.

15  5.   The experts' examination, testing and analysis may take place at
16  the experts' laboratories.  Any shipping of the originals will be done by overnight
17  mail, for earliest delivery possible to the destination area, using Federal Express or
18  UPS or a similar service that Bryant selects.

19  6.   If any of Mattel's experts recommends that a form of destructive
20  testing (that is, any testing that would alter the documents' inherent physical status) be
21  conducted, the following procedure shall be used.  First, Mattel will send a request in
22  writing to Bryant and MGA explaining what would be tested and what test or tests
23  would be conducted.  Then Bryant and MGA will have five (5) Court days to object,
24  in which case the parties must meet and confer and, within three (3) more Court days,
25  file a joint statement with Judge Infante to seek resolution of the dispute.  Bryant and
26  MGA may also elect to have their own experts attend for any destructive testing
27  being done, so long as they make this election in writing to Mattel within the five-
28  Court-day objection period, and so long as the testing can take place within ten (10)

PROPOSED ORDER

EXHIBIT _____ 8

PAGE _____ 128

1 | Court days of the original request. If Bryant's or MGA's expert, while he or she is
2 | observing the examination or destructive testing, raises any issues about sampling or
3 | testing being done or any other aspects of the expert's or experts' process, the parties
4 | will seek immediate resolution from this Court so that the sampling, testing or other
5 | activity will not be delayed. If Bryant's counsel or MGA's counsel does not object or
6 | seek attendance by its expert within five days of the request, the proposed destructive
7 | testing shall be deemed as unobjectionable and may be carried out without further
8 | delay.

9       7.    With the exception of alterations resulting from any destructive
10 | testing, which would be conducted in accordance with the protocol above, all the
11 | Bryant documents that are provided for inspection, examination and testing shall be
12 | returned in the same condition, sequence and order in which they were received.

13      **IT IS SO ORDERED.**

15 | DATED: *Aug 30* , 2007

Hon. Edward Infante (Ret.)
Discovery Master

-3-

PROPOSED ORDER

EXHIBIT _____ 8 _____

PAGE _____ 129 _____

07209/2201994.1

1
2  Prepared and respectfully submitted by:
   QUINN EMANUEL URQUHART
3  OLIVER & HEDGES, LLP

4
5  _Diane C. Hutnyan /SBK_
6  Diane C. Hutnyan
   Attorneys for Mattel, Inc.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2201994.1

-4-

PROPOSED ORDER

EXHIBIT ___8___

PAGE ___130___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 30, 2007, I served the attached ORDER GRANTING MATTEL, INC'S MOTION TO COMPEL BRYANT TO MAKE ORIGINAL DOCUMENTS AVAILABLE FOR EXPERT EXAMINATION AND TESTING in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 30, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT _____ 8

PAGE _____ 131



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter   X   JU.. .? 2006
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only



CV 04-9059-SGL (RNBx)                                    June 20, 2006

Mattel, Inc. v. Carter Bryant, et al.

Robert N. Block, United States Magistrate Judge

| Trina DeBose | n/a | SA 06-27, 28 |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                 Attorneys Present for Defendants:

John B. Quinn                                      Dale M. Cendali
Michael T. Zeller                                  Paula E. Ambrosini
                                                   Douglas A. Wickham
DOCKETED ON CM                                     Keith A. Jacoby
JUN 2 3 2006
BY                    024

Proceedings:      (DISCOVERY CONFERENCE)

　　　　Case called.   Counsel make their appearances.   After conferring with counsel
generally about the four pending discovery motions and the protocol to be followed with
respect to future discovery motions (see below), Court directs counsel to meet and confer
further.

　　　　When case is recalled later in the afternoon, counsel apprise the Court that they have
resolved all issues relating to three of the motions.  MGA's counsel then recites for the
record the points of agreement reached which are dispositive of all the issues in dispute with
respect to **MGA's Motion to Compel the Declassification of Certain Documents
Produced by Mattel as "Confidential-Attorneys' Eyes Only"** and **Mattel's Motion to
Compel Inspection of Original Documents and Tangible Things.**  With respect to
**Mattel's Motion to Compel Production of Documents,** counsel will be submitting a
stipulation and order which will be dispositive of all the issues in dispute.

　　　　With respect to **Bryant's Motion to Compel Further Deposition Testimony from
Ann Driskill and Alan Kaye and for the Appointment of a Special Master,** MGA's
counsel recites for the record the points of agreement reached.  Within 7 days of Judge
Larson's ruling on Mattel's pending motion to dismiss, Mattel's counsel will advise Bryant's
counsel of its position on whether Mattel will voluntarily produce either or both of the
witnesses to resume their depositions with respect to the four lines of inquiry identified on
the record.  If there still are any unresolved issues in dispute relating to Bryant's Motion to
Compel, then it will be incumbent on Bryant's counsel to proceed with the preparation of

CV-90 (12/02)                          CIVIL MINUTES - GENERAL                          Page 1 of 2

EXHIBIT ___9___
PAGE ___131___



# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

a Joint Stipulation in strict compliance with Local Rule 37-2.1. Upon its review of the Joint Stipulation, the Court will determine whether the Joint Stipulation complies with Local Rule 37-2.1, and if so whether to set the matter for hearing, or whether to just take the matter under submission and rule on the remaining issues in dispute without oral argument per Local Rule 7-15.

Until further notice, the protocol which will apply to future discovery motions is as follows. No discovery motions may be filed without advance leave of Court, which will not be granted until counsel have met and conferred under the Court's auspices (as they did today). If the parties have a discovery dispute which counsel are unable to resolve between themselves, counsel are ordered to call Judge Block's crd and request a date and time for lead counsel to appear before the Court to meet and confer further. If counsel are unable to even agree on a mutually convenient date, the moving party's counsel should so advise the crd in which event the Court will arbitrarily set a date. If, after meeting and conferring further under the Court's auspices, counsel still are unable to resolve all remaining issues in dispute, but the Court nevertheless is satisfied that counsel indeed have made a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible, the Court will set dates for the preparation and filing of a Joint Stipulation in strict compliance with Local Rule 37-2.1.


cc:   Judge Larson


3 : 00

Initials of
Preparer

EXHIBIT ____9____

PAGE ____132____

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

December 21, 2007

<u>**VIA EMAIL**</u>

Timothy Miller, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center
Suite 3800
San Francisco, CA 94111

Re:    <u>Mattel v. Carter Bryant</u>

Dear Tim,

Pursuant to the June 20, 2006 stipulation on the record before Magistrate Judge Block, Mattel requests that MGA produce, within 15 days, for inspection, photographing and digital scanning, any and all (1) tangible three-dimensional objects that are responsive to any request for production or interrogatory previously served on MGA, its Hong Kong affiliate, or any of its agents, including without limitation, all molds, sculpts, doll heads, prototypes, models, and three-dimensional objects that are in the custody and control of MGA, its Hong Kong affiliate, or any of its agents; and (2) all molds, sculpts, doll heads, prototypes, models, and three-dimensional objects used in the manufacture, design, creation, or production of, or that are otherwise related to, Bratz or Prayer Angel dolls and are in the custody and control of MGA, its Hong Kong affiliate, or any of its agents.

MGA's production should include, <u>but not be limited to,</u> the tangible items depicted in the documents with the following Bates numbers:

1)  MGA0007363 - MGA0007372
2)  MGA0007495 - MGA0007497
3)  MGA0007496
4)  MGA0007613

EXHIBIT ___/O___

PAGE ___/33___

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL. (650) 801-5000 FAX (650) 801-5100

07209/2326496.1

Timothy A. Miller, Esq.
December 21, 2007

5)  MGA0045943 - MGA0045966
6)  MGA0045944 - MGA0045966
7)  MGA0046500
8)  MGA0046567 - MGA0046569
9)  MGA0046691 - MGA0046693
10) MGA004714 - MGA004716
11) MGA0047383- MGA0047388
12) MGA0048013 - MGA0048027
13) MGA0048236 - MGA0048239
14) MGA0048347
15) MGA0048348
16) MGA0049730 - MGA0049732
17) MGA0050174 -MGA00176
18) MGA0050222
19) MGA0050362
20) MGA0050363
21) MGA0050733 - MGA 0050736
22) MGA007346- MGA0047354
23) MGA007496
24) MGA007613
25) MGA009340
26) MGA0834261 - MGA0834270
27) MGA0835311
28) MGA0835315
29) MGA0835474- MGA0835477
30) MGA0836340 - MGA0836346
31) MGA HK 0011155
32) MGA HK 0011156

To the extent MGA is unwilling to produce these tangible items within 15 days, please also
consider this letter a request to meet and confer pursuant to paragraph 5 of the Discovery Master
Stipulation in advance of a motion to compel and request for sanctions, if warranted.

I look forward to hearing from you.

EXHIBIT ___10___

PAGE ___134___

Timothy A. Miller, Esq.
December 21, 2007

Sincerely,

Diane C. Hutnyan

07209/2326496.1
cc:     Michael Page, Esq.

3

EXHIBIT _____ *10*

PAGE _____ *135*

**RECEIVED**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

JAN 1 0 2008

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301-1908

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4624
DIRECT FAX
888.329.2993
EMAIL ADDRESS
ATEMKIN@SKADDEN.COM

January 7, 2008

**By Email and U.S. Mail**

Diane C. Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017

RE:    Carter Bryant v. Mattel Meet and Confer re: Inspection of
Tangible Objects

Dear Ms. Hutnyan:

This will confirm our January 3, 2008 meet-and-confer concerning your
December 21, 2007 letter regarding Mattel's inspection of tangible objects.

As we discussed, your letter mischaracterizes MGA's obligation to
produce tangible items, in particular construing MGA's obligation more broadly than
the actual language of Mattel's discovery requests. You asked us to specify where your
letter was incorrect and we informed you that, among other things, Mattel's requests do
not call for molds used in conjunction with the manufacture of dolls or other tangible
items. Accordingly, MGA will make available for further inspection, photography and
digital scanning, only those items that were or will be produced consistent with its
responses to Mattel's requests for production.

With respect to the nearly 800 objects that Mattel has already inspected,
we offered to make available for your re-inspection, photographing and/or digital
scanning any of those tangible objects you identify to us. You refused to identify items,
instead demanding that we make available all 800 tangible objects for Mattel to inspect
despite our explanation that transporting all 800 items was burdensome and that you
could easily provide us with a list of the items, particularly given that Mattel has already
catalogued these items. In order to advance the meet and confer, we agreed that the re-
inspection of all the items, with the exception of the objects in Hong Kong, could
commence at Skadden Arps' Los Angeles office during the week of January 7. Due to
the necessity of transporting the 800 items from secured storage to a conference room

EXHIBIT ____11____

PAGE ____136____

Diane C. Hutnyan, Esq.
January 7, 2008
Page 2

for inspection (and the return each evening), we will make items available on those days when Mattel can inspect on complete days.[1]

With respect to the items identified in your letter by Bates range, we explained that MGA produced these photographs as documents, not as tangible items. In any event, following a reasonably diligent search for the items depicted in these photographs, MGA has been unable to locate these items and we understand that they may have ceased to exist prior to the commencement of this litigation due in large part to the nature of the design and manufacture process.

Finally, we informed you that Bates number MGA 0046500 and MGA 004714- MGA 004716 are not photographs of tangible items.

Consistent with the foregoing, please confirm which full days you will proceed with the inspection and processing.

Very truly yours,

Andrew C. Temkin

---

[1] As we have discussed in email correspondence following the January 3 meet and confer, due to the volume of items and the need to transfer them from their secure storage to the conference room for inspection, MGA will make portions of the approximately 800 items available in batches for Mattel to select those items it wishes to further inspect, digitally- scan, and photograph.

EXHIBIT ___//___

PAGE ___/37___

RECEIVED
JAN 1 4 2008

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 10, 2008

**By Email and U.S. Mail**

Diane Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017

RE:   *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Diane:

I am writing in response to your January 9 letter and to memorialize our telephone conversation this afternoon regarding tangible items. I will address the matters in the order that you addressed them in your letter.

I explained to you during our call that there are approximately 16 items located in Hong Kong. These consist of Bratz doll heads, body parts, shoes and deco masks. In my January 2 and January 4 letters, I offered to make these items available for your inspection on January 5, 8, 9 and 10, but you did not respond to that offer until yesterday, January 9, when you demanded instead that we make the items available next week. In our call, I told that we will make the items available for your inspection in the office of MGA's Hong Kong counsel on January 17, the afternoon of January 18, and the morning of January 19. You stated that you no longer know if a date next week will work for you.

We also discussed the undertaking that prevents the items in Hong Kong from being taken out of that country. As I wrote in my letters of December 26 and January 2, in other email correspondence to Scott Kidman, and as I told you today on the call, all of the items located in the office of MGA's Hong Kong counsel are subject to the undertaking, which prevents their shipment to the United States without court approval. Thus, contrary to your repeated assertion, MGA has not refused to make the items available in the United States. Nor has MGA asserted any "privilege" or "immunity," as you claim, from any order requiring MGA to make the items available

EXHIBIT _____ 12

PAGE _____ 138

Diane Hutnyan
January 10, 2008
Page 2

for Mattel's inspection. MGA is *precluded* from removing the items from Hong Kong
by the express terms of the undertaking given to the Hong Kong court. As I have told
you repeatedly, MGA has sought modification of the undertaking to allow the items to
be shipped here. In the meantime, MGA has made the items available for your
inspection, as the Discovery Master ordered, and it has done so in a manner that allows
MGA to comply with the undertaking given to the Hong Kong court. Thus, there is no
basis for any claim by you that MGA should bear the costs of your inspection in Hong
Kong.

In our call, you demanded that I identify for you the specific legal action
in Hong Kong to which the undertaking relates and that I provide you a copy of the
undertaking so that you could determine for yourself whether it truly prevents the items
from being shipped here. I told you in our call, and I wrote previously, that MGA will
not provide that material to you. If, however, you proceed with motion practice
regarding this matter, MGA will provide the undertaking to Judge Infante *in camera*.
You said that MGA is not entitled to do that. I disagreed.

I also told you in our call that I was informed by Hong Kong counsel this
morning that the Hong Kong court has scheduled a hearing for tomorrow to consider the
application to vary the undertaking and permit Hong Kong counsel to ship the items to
the United States. If the application is granted, we will ship the items to the United
States for your inspection here as well. You asked me if it would be possible, in the
meantime, to email you photographs of the items located in Hong Kong so you could
determine whether you want to go to Hong Kong to inspect the items. Since our call, I
have confirmed that we can email you photographs of the items. I will email them to
you tomorrow.

Regarding molds, I told you that, contrary to your assertion, MGA has
never "acknowledged that it is in deliberate violation of Court Orders" for failing to
produce molds or any other items. I also told you that the issue of whether molds are
called for by your requests is debatable. In addition, I told you that I am not aware of
any communications from your office before the end of December in which you
asserted that molds are responsive to your requests. Nevertheless, I told you that MGA
is willing to make molds and tooling available for your inspection to the extent that it
has those items in its possession, custody or control and can locate them following a
reasonably diligent search. I also told you that following a diligent search, MGA has
recently located approximately 12 Bratz molds in Shenzhen, China. I am informed that
the molds were created in February 2001, and are molds of various Bratz body parts,
including the torso, arms and legs.

You demanded that MGA make the molds available immediately in the
United States. I explained to you that the molds are large and made of steel and are thus
quite heavy. Shipping them would be expensive and could potentially damage them.
Moreover, I told you that I have been informed that shipping the molds to the United

EXHIBIT _____ 12

PAGE _____ 139

Diane Hutnyan
January 10, 2008
Page 3

States would require submission of an application to customs in both China and the
United States, which I understand could potentially take several weeks. Accordingly, I
told you that MGA will make the molds available for your inspection in Shenzhen,
which is just across the river from Hong Kong. I told you that we are in the process of
confirming dates with our contacts in China and will let you know as soon as possible
when you may inspect the molds. In the meantime, you asked if we would provide you
with photographs of the molds so that you could determine whether you want to go to
China to inspect them. Since our call, I have confirmed that we can email you
photographs of the molds. I will email them to you tomorrow.

In your January 9 letter and in our call, you repeatedly insisted that MGA
is withholding tangible items "relating to the origin, creation, design or development of
Bratz," which you claim violates the June 20, 2006 stipulation and MGA's prior
counsel's promises to produce items responsive to Mattel's requests. You also insisted
that requests calling for "documents" also call for tangible items. I reject both of those
assertions. Your assertion that a request specifically calling for "documents" calls for
other tangible items is inconsistent with the Federal Rules and Mattel's own practice.
Under the Federal Rules cited in your letter, "documents" consist of writings and
recordings – *i.e.*, words or images that have been recorded in or reduced to hard copy
form. Mattel itself has acknowledged the distinction between documents and other
tangible items (such as dolls and doll parts, for example) by clearly requesting the latter
when it sought such material. *See, e.g.*, Requests 96 – 99 of Mattel's First Set of
Requests for Production to MGA.

In any event, I told you that MGA believes that, with the nearly 800
items it has already made available, plus the items in Hong Kong and the molds in
China, it has substantially completed its production of tangible items in response to the
requests that you characterized as calling for tangible items "relating to the origin,
creation, design or development of Bratz." I stated that MGA is not knowingly or
intentionally withholding responsive items in violation of any stipulation, so-called
promise or otherwise. As I explained to you, tangible items relating to the origin,
creation, design and development of Bratz are, in many instances, several years old.
Thus, it is not surprising that items that were years old before your requests were even
served have not been located and produced in the volume that you would deem
sufficient. I reiterated, however, that discovery is ongoing and that, consistent with
MGA's discovery obligations, if MGA identifies additional responsive items, we will
promptly make them available to you. I also told you that with respect to tangible items
that our experts identify as ones they plan to rely on, we would produce them by
February 11 – to the extent they have not already been produced – in accordance with
the date set by Judge Larson as the due date for expert reports and in accordance with
our obligations under the Federal Rules. In light of the foregoing, your claim that
Mattel has suffered some undefined "prejudice" is meritless.

EXHIBIT ____ /2
PAGE ____ /4o

Diane Hutnyan
January 10, 2008
Page 4

      In your January 9 letter, you assert that MGA has failed to produce tangible items with sample tags. That is false. MGA has produced several items with sample tags. *See, e.g.*, MGA-TI-000474, MGA-TI-000479, MGA-TI-000485, MGA-TI-000482, MGA-TI-000198, MGA-TI-000200, MGA-TI-000205, MGA-TI-000206, MGA-TI-000025 and MGA-TI-000026.

      We also discussed MGA's production of items in response to Request No. 2 of Mattel's Request for Production Re: Unfair Competition. I reiterated that MGA will be making three-dimensional displays available for your inspection tomorrow at MGA's facility in Rialto – an offer I made in my January 4 letter. I explained that there are approximately eight displays, which relate to a Bratz sewing machine, the Bratz Movie, Bratz Little Angels, Holiday Bratz, Bratz Passion For Fashion, Bratz Birthday, Itsy Bitsy Bratz and Bratz Kids. You asked if I would email you photographs of the displays before you go to Rialto tomorrow. At your request, I emailed you those photographs today and provided the address of the Rialto facility in the email.

      I also told you, as I wrote in my January 4 letter, that we have color print-outs of other displays that are no longer available in three-dimensional form. As I explained previously, those print-outs will be available for your inspection tomorrow at Skadden's Los Angeles office at the same time you have requested to inspect the original documents referenced in correspondence with Andrew Temkin. You asked me in our call today to produce those print-outs on a CD. We are in the process of doing so. In the meantime, the print-outs will be available tomorrow, as promised. In light of the foregoing, your assertions that MGA has refused to cooperate, has somehow been discourteous, wasted your time or increased your costs with respect to these matters is without basis.

      Lastly, we discussed the approximately 50 tangible items that MGA recently identified as items on which it may rely in this action. In my January 4 letter, I offered to make them available at a mutually convenient day and time this week. Upon receiving your letter yesterday requesting MGA to make the items available for your inspection at the same time you are conducting other inspection in Skadden's Los Angeles office, I emailed you. In the email, I told you that you were welcome to inspect the items today and tomorrow and asked you whether you would like to scan them too, in which case I offered to put them in the lower plaza space you have been using for scanning. I also told you that you were welcome to scan every day next week, except Tuesday. (The building has informed us that the plaza space in unavailable on Tuesday.) You confirmed that you will be sending people tomorrow to inspect the

EXHIBIT _____12_____

PAGE _____141_____

Diane Hutnyan
January 10, 2008
Page 5

items, but stated that you will not be scanning, and told me that you will get back to me
as to when you wish to inspect and scan next week. I look forward to hearing from you.

Sincerely,

Amy S. Park

EXHIBIT _____ 12

PAGE _____ 142

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3666

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

January 14, 2008

**VIA E-MAIL AND FACSIMILE**

Amy S. Park and Andrew Temkin
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, C 94301

Re:     Carter Bryant v. Mattel, Inc. (and consolidated cases)

Dear Amy and Andrew:

I write in response to your January 10, 2008 letter and the emails you sent with further
information about MGA's tangible items.

First, you told us on Thursday that there was to be a hearing on Friday on the subject of whether
the items might be shipped to the United States. What was its outcome? Please send us a copy
of any pertinent written order or ruling. Please also let us know what steps you are taking to
expedite arrival of the items in the U.S. and when we can expect to view the items.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT 13

PAGE 143

Amy S. Park and Andrew Temkin
January 14, 2008

Second, you stated in your letter that there were "*approximately* 16 items" located in Hong Kong, and sent us pictures showing 16 items. We would appreciate your informing us whether there are more items and, if so, what they are.[1]

Third, how many other items are subject to the purported undertaking besides the sixteen you have identified? How many of those items are related to Bratz, as broadly defined by us and the Discovery Master? In light of the dispute over the scope of our requests, please advise us as to how many other items subject to the undertaking relate to Bratz and which items you will not be producing to us.

Thank you for sending photographs of the items you indicated are in Shenzhen, China. However, it is difficult to make out the contours of these items; only one side is shown; and there is an item at the top of each picture which seems to be further obscuring a portion of these items, or information that would help identify them. Please send photographs that do not obscure the molds in any way, and that show each of their surfaces.

One thing clear from the pictures is that molds have identifying numbers or letters on them that record information, ensuring that these items fall squarely within Mattel's requests for "documents," as well as for other relevant tangible items. The Court has already compelled the production of these articles, and did so months ago. Please let us know whether MGA will produce these and other responsive items immediately in the U.S.

As for the broader issue of MGA's failure to produce tangible items on the basis that they are not called for by our requests, we are discouraged by MGA's position that the responsiveness of such basic items as molds is "debatable," or "questionable," and that the answer to our questions about what MGA looked for in searching for "responsive" items is completely circular: that MGA has "substantially completed its production of tangible items in response to the requests that [we] characterized as calling for tangible items 'relating to the origin, creation, design or development of Bratz.'" Your inability to describe any other specific categories of items that you had searched for does not bode well either.

---

[1]   Thank you for providing photographs of some of the items available in Hong Kong and some times and dates upon which these items may be viewed. Please continue to hold January 17, the afternoon of January 18, and the morning of January 19 pending the resolution of these outstanding issues.

EXHIBIT 13
PAGE 144

Amy S. Park and Andrew Temkin
January 14, 2008

Generally speaking, for each doll developed, MGA should have a clay sculpt; a mold taken of the clay (might be of rubber; might be multiple iterations of these); closures and documentation and tooling related to their design; a resin or fastcast sculpt from the mold of the clay; the metal molds relating to all the body parts, including the head (notably, there was no mold for a head included in the pictures you sent); a vinyl super master of the head; multiple masters of the head; a paint master; and face paint masks. Also, for every plastic piece that comes with a doll, there should be a mold or molds for those items; and there should be equipment, such as printing plates, for the packaging. There should be a great deal of documentation related to all of this, including schematics, engineering drawings, and communications within the manufacturer about how the parts should fit together.

MGA has produced nothing from before or after February of 2001 (if one accepts the representation that the metal molds in the photographs are from that month). Notably, MGA has not produced either any of the mock-up development tooling and documentation that was transferred from Wah Sing to Early Light on or around December 8, 2000. As evidenced in MGA 0065414-15, there was at least a "roto head skin-master" in existence at that time. MGA has produced none of the other items that would be needed to produce the roto head skin-master, or that would be needed to produce the metal molds in the photographs you sent.

We have been asking for these items for months and have obtained Court orders compelling their production. We then learned, only recently, that MGA has been withholding such basic items as molds from production. Further, we have asked you what other categories of such items in my December 21 letter MGA believes are not within the scope of the requests and have received no response.

Please let me know today whether MGA will produce for our inspection each of the items identified above and all other items related to the origin, creation, development and/or manufacture of Bratz (as we have defined it in our requests that were compelled by the Court) that are responsive to our requests and whether it is willing to produce them immediately here in the United States. Absent immediate and full compliance, we will bring the motion referred to on page 4 of my January 9, 2008 letter. I look forward to hearing from you.

Very truly yours,

Diane C. Hutnyan

3

EXHIBIT _____ 13

PAGE _____ 145

# MGA Entertainment

NAME: PLAYING ANGEL

TOOL #: 272732-001-01

WEIGHT: ____ ▪ 49 ▪ ____ ▪ kg

DATE: DEC 03

EXHIBIT 14 PAGE



MGA Entertainment

| | |
|---|---|
| NAME: | BRATZ DOLL |
| TOOL #: | 248597 002.02 |
| WEIGHT: | 172 |
| REF: | DECH2 TG-017 kg |

EXHIBIT

MGA Entertainment

NAME: BRATZ 2021
TOOL #: 249584-11&1-121
WEIGHT: 14
DATE: 51&11   10-17-11   -16



EXHIBIT 14 PA 150

## Tiffany Garcia

| | |
|---|---|
| **From:** | Diane Hutnyan |
| **Sent:** | Friday, January 11, 2008 12:39 PM |
| **To:** | MGA / Bryant Team |
| **Subject:** | FW: MGA/Mattel -- additional photos |
| **Attachments:** | Photos.zip |

these are of displays in Rialto

---

**From:** Park, Amy S [mailto:Amy.Park@skadden.com]
**Sent:** Friday, January 11, 2008 12:31 PM
**To:** Diane Hutnyan
**Subject:** MGA/Mattel -- additional photos

Diane,

Further to your request of yesterday, I am attaching photos of the two additional displays that are available for your inspection and for which I did not have photos yesterday to send a long with the others I emailed you. Please note that these are photos of dsplays for Bratz Kidz and Bratz Babyz. My letter of yesterday mistakenly referred to a display for Itsy Bitsy Bratz -- it should have said Bratz Babyz.

I have confirmed that you may inspect these and the other displays in Rialto any day next week. Please let me know how you would like to proceed, and keep in mind that we need 24 hours notice.

Thank you.

**Amy S. Park**
**Skadden, Arps, Slate, Meagher & Flom LLP**
525 University Avenue | Suite 1100 | Palo Alto, CA 94301
T: 650.470.4511 | F: 888.329.6334 | E: apark@skadden.com

**Brenda Fry, Assistant to Amy S. Park**
T: 650.470.4567 | E: bfry@skadden.com

--------------------------------------------------------------------------
*************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. *************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. ***************************************************

EXHIBIT _____ 15

PAGE _____ 151

1/11/2008

EXHIBIT _____ 15
PAGE _____ 152



1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                 - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7  CARTER BRYANT, ET. AL.,          )
                                    )
8                    PLAINTIFFS,    )
                                    )
9          VS.                      )   NO. ED CV 04-09049
                                    )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,          )
                                    )
11                   DEFENDANTS.    )   EX-PARTE APPLICATIONS
                                    )   RE:  DISCOVERY
12  AND CONSOLIDATED ACTIONS,       )
                                    )

13

14

15      REPORTER'S TRANSCRIPT OF PROCEEDINGS

16         RIVERSIDE, CALIFORNIA

17       MONDAY, FEBRUARY 4, 2008

18           10:15 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
         FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
         RIVERSIDE, CALIFORNIA  92501
25             951-274-0844
            CSR11457@SBCGLOBAL.NET

**CERTIFIED COPY**

26

1    WITHDRAWN, BUT THEY'RE SIMPLY GOING TO BE HANDLED AFTER THE

2    PHASE ONE TRIAL.

3            SECONDLY, TO THE EXTENT THAT MOTIONS TO QUASH OR

4    CHALLENGES TO THE SERVICE HAVE BEEN BROUGHT BEFORE

5    JUDGE INFANTE, JUDGE INFANTE HAS TO RULE ON THOSE.                    10:44

6            MATTEL BROUGHT AN EX-PARTE APPLICATION FOR A

7    CLARIFICATION REGARDING THE DISCOVERY MASTER ORDER, AND THEY

8    ASKED THE COURT TO MAKE A VERY FIRM STATEMENT THAT ALL

9    DISCOVERY MATTERS, THE FIRST IMPRESSION, GO TO THE DISCOVERY

10   MASTER; AND I GRANTED THAT APPLICATION.                               10:44

11           I COULD NOT HAVE USED, I DON'T THINK, CLEARER

12   LANGUAGE THAT DISCOVERY DISPUTES IN THE FIRST INSTANCE NEED TO

13   GO TO THE DISCOVERY MASTER AND NOT COME TO THIS COURT BY WAY OF

14   EX-PARTE APPLICATION.

15           SO WHAT'S GOOD FOR ONE SIDE IS GOOD FOR THE OTHER,           10:45

16   AND I THINK THAT THOSE MOTIONS TO QUASH -- LEAVE WAS AFFORDED

17   TO TAKE THE DEPOSITIONS, BUT THAT DOESN'T EVISCERATE THE NEED

18   TO PROPERLY SERVE AND PROPERLY NOTICE THOSE DEPOSITIONS.

19   THAT'S WHAT'S BEING CHALLENGED.

20           I'M NOT PASSING ANY JUDGMENT AS TO WHETHER OR NOT ONE       10:45

21   SIDE IS RIGHT OR THE OTHER SIDE IS WRONG.  BUT I THINK IF I GET

22   INTO THE BUSINESS OF DECIDING SOME OF THESE AND TAKING SOME OF

23   THEM BACK FROM JUDGE INFANTE, IT JUST CREATES A MESS, QUITE

24   FRANKLY.  AND I KNOW THERE'S A TREMENDOUS BURDEN ON

25   JUDGE INFANTE.  JUDGE INFANTE IS RECEIVING, I THINK, ADEQUATE        10:45

27

1    COMPENSATION FOR THE BURDEN THAT'S BEING PLACED ON HIM, AND I

2    THINK HE'S DOING A FABULOUS JOB OF MANAGING THIS.  I WILL CALL

3    HIM THIS AFTERNOON AND LET HIM KNOW THAT ANY MATTER RELATED TO

4    PHASE TWO DOES NOT NEED TO BE RESOLVED RIGHT NOW.  TO THE

5    EXTENT THAT THERE HAVE BEEN CHALLENGES MADE TO PHASE TWO         10:45

6    DEPONENTS, YOU CAN PUT THAT OFF.  THAT'S NOT TO SAY THAT HE'S

7    NOT GOING TO HAVE TO CROSS THAT BRIDGE AT SOME TIME; HE

8    CERTAINLY WILL; BUT I THINK THAT WILL FREE UP THE TIME TO

9    ADDRESS THOSE MATTERS THAT RELATE TO PHASE ONE.

10            AND THEN TO THE EXTENT THAT MATTEL OR MGA OR            10:46

11   CARTER BRYANT OR ANYBODY ELSE DISAGREES WITH THE DECISION MADE

12   BY JUDGE INFANTE, THEN THAT CAN BE BROUGHT BEFORE THIS COURT,

13   AND I WOULD CERTAINLY DO ALL THAT I CAN TO HEAR THAT ON AN

14   EXPEDITED BASIS.

15            WHAT I DON'T THINK IS PROPER FOR THIS COURT TO DO IS    10:46

16   TO START ISSUING DISCOVERY ORDERS THAT MAY OR MAY NOT CONFLICT

17   WITH EARLIER POSITIONS THAT JUDGE INFANTE HAS TAKEN.  I THINK

18   THAT JUST MAKES A MESS OF THE WHOLE THING.

19            SO THAT'S KIND OF THE TWO-PRONGED APPROACH THAT I

20   THOUGHT WE WOULD TAKE THROUGH THIS TO HOPEFULLY KEEP THIS        10:46

21   GOING.

22            AS FAR AS, HOWEVER, THE DEPOSITIONS THAT I'VE GIVEN

23   LEAVE TO TAKE THAT ARE PHASE ONE DEPOSITIONS, I GUESS A THIRD

24   ASPECT OF THE ORDER WOULD BE THAT, YES, PLAINTIFF DOES HAVE

25   LEAVE TO TAKE THOSE, EVEN IF THAT MEANS TAKING THEM IN          10:46

FEBRUARY 4, 2008   EXHIBIT __16__      ED CV 04-9059-SGL

PAGE __155__

1    AMONGST YOURSELVES.

2         I'M CERTAINLY GOING TO AGREE TO ANY STIPULATION THAT

3    YOU REACH, AS LONG AS YOU GIVE ME ONE FULL WEEKEND TO GET READY

4    FOR THE MONDAY HEARING; THAT'S ALL I'M ASKING FOR.

5         **MR. PAGE:**  THANK YOU, YOUR HONOR.                    11:37

6         **THE COURT:**  THE NEXT EX PARTE IS MATTEL'S EX PARTE TO

7    ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS.

8    THESE RELATE TO THESE 12 MOLDS THAT ARE OVER IN CHINA.

9         SO, MR. NOLAN, LET ME BEGIN WITH YOU.

10        I AM A LITTLE -- THERE'S THIS REPEATED REPRESENTATION   11:38

11   THAT NO ONE DELIBERATELY DID ANYTHING, AND I GUESS I'M NOT

12   CONCERNED ABOUT WHAT PEOPLE DELIBERATELY DID OR DIDN'T DO; I'M

13   MORE CONCERNED ABOUT WHY THESE THINGS WERE NOT IDENTIFIED

14   SOONER.  AND I GUESS I DON'T HAVE A REAL CLEAR ANSWER TO THAT.

15        **MR. NOLAN:**  YOUR HONOR, ALL I CAN SAY --            11:38

16        **THE COURT:**  -- GIVEN -- LET ME SAY THIS -- GIVEN THE

17   REPRESENTATIONS THAT WERE MADE ABOUT THE DILIGENCE UPON WHICH

18   SEARCHES WERE DONE PURSUANT TO DOCUMENT REQUESTS.

19        THERE'S NO DISPUTE THAT THESE ARE COVERED BY THE

20   DOCUMENT REQUESTS.  JUDGE INFANTE HAS FOUND SUCH, ESSENTIALLY;  11:38

21   AND I -- READING THE DOCUMENT REQUESTS, I THINK MATTEL IS RIGHT

22   ON THAT THESE ARE CERTAINLY WITHIN THE AMBIT OF SEVERAL OF THE

23   DOCUMENT REQUESTS; SO THERE'S NO QUESTION THAT THEY NEED TO BE

24   PRODUCED.  THEY'VE BEEN ASKED FOR.

25        I'M SOMEWHAT CONCERNED AS TO WHY THEY WERE JUST          11:38

FEBRUARY 4, 2008   EXHIBIT __16__        ED CV 04-9059-SGL

PAGE __156__

80

```
 1    ORDER.
 2              MY SENSE ON THIS EX-PARTE APPLICATION IS THAT THIS IS
 3    SOMETHING WHICH IS PROPERLY BEFORE JUDGE INFANTE.  IT'S NOT
 4    CLEAR TO ME WHY THIS SHOULD NOT BE, AS OTHER DISPUTES OVER
 5    PROVIDING THE ELECTRONIC MEDIA -- WHY IT IS NOT BEFORE
 6    JUDGE INFANTE.
 7              SO I'D LIKE TO HEAR FROM THE PLAINTIFF, FROM MATTEL,
 8    ON THIS.
 9              IN FACT, MR. NOLAN ACTUALLY MAKES THE ACCUSATION THAT
10    YOU'RE DOING A BIT OF FORUM SHOPPING IN THIS; THAT YOU GOT AN
11    ADVERSE RULING ON THIS BEFORE JUDGE INFANTE ON AN UNRELATED
12    WITNESS AND THAT'S WHY YOU'RE BEFORE THE COURT HERE ON THIS.
13              IS JUST NOT CLEAR TO ME, MR. COREY, WHY THIS IS
14    BEFORE THIS COURT AND NOT BEFORE JUDGE INFANTE.
15              MR. COREY:  THE REASON THIS APPLICATION IS BEFORE
16    THIS COURT IS THE SAME AS THE OTHER APPLICATION.  ONLY YOUR
17    HONOR HAS THE ABILITY TO ENSURE THAT WE CAN EITHER GET RELIEF
18    FROM THE EXPERT CUTOFF -- FROM THE FILING OF THE EXPERT CUTOFF
19    DATE, BUT BY RELYING ON INFORMATION THAT IS THE SUBJECT OF THIS
20    EX-PARTE APPLICATION THAT WE WILL UNDOUBTEDLY RECEIVE AFTER THE
21    CLOSE OF DISCOVERY.
22              THE COURT:  AND THAT'S FAIR ENOUGH.  AND I WILL
23    CERTAINLY GIVE ANY PARTY LEAVE TO COME BACK TO THE COURT AFTER
24    A RULING BY JUDGE INFANTE THAT APPARENTLY HAS AN EFFECT OR IS
25    MAKING THE SCHEDULING ORDER UNMANAGEABLE OR NEEDS RELIEF TO
```

11:55

11:56

11:56

11:56

11:56

FEBRUARY 4, 2008   EXHIBIT _____ _16_ _____ ED CV 04-9059-SGL

PAGE _____ _57_

81

1   FILE A SUPPLEMENTAL EXPERT REPORT, OR WHATEVER IT MIGHT BE.

2   BUT IN THE FIRST INSTANCE, I THINK THIS ISSUE SHOULD BE DECIDED

3   BY JUDGE INFANTE.  I DON'T WANT TO HAVE ME DECIDING SOME OF

4   THESE ISSUES AND JUDGE INFANTE DECIDING OTHER ONES.

5        **MR. COREY:**  WE'LL PUT THIS IN FRONT OF JUDGE INFANTE,   11:57

6   YOUR HONOR.

7        **THE COURT:**  VERY WELL.

8        SO THIS EX-PARTE APPLICATION IS DENIED.

9        I THINK THAT TAKES CARE OF ALL OF IT.  I'M GOING TO

10  ISSUE AN ORDER THIS AFTERNOON WHICH WILL SPELL THIS OUT AS   11:57

11  CLEARLY AS I CAN.  IF THERE ARE ANY QUESTIONS ABOUT IT, COME

12  BACK EARLY AS OPPOSED TO LATER.

13       AND MR. QUINN...

14       **MR. QUINN:**  YOUR HONOR, JUST ONE THING THAT HAD

15  OCCURRED TO ME ABOUT PUTTING PHASE TWO DEPOSITIONS OFF.  THERE   11:57

16  IS ONE IN LONDON THIS WEEK.  OUR LAWYER IS ALREADY ON AN

17  AIRPLANE TO GET OVER THERE; THAT'S MR. BRAUR.

18       I DON'T KNOW IF THAT'S GOING TO BE A PROBLEM.

19       **MR. NOLAN:**  NO ISSUE.  WE'LL AGREE.

20       MR. DICANIO, WHO'S OVER IN LONDON, WILL KILL ME IF HE   11:57

21  COMES HOME WITHOUT HAVING BEEN DEPOSED.  WE MADE HIM AVAILABLE

22  ONE DAY IN LONDON AND --

23       **THE COURT:**  SOUNDS GOOD.

24       **MR. QUINN:**  THEN, YOUR HONOR, WE'RE THINKING AHEAD TO

25  SUMMARY JUDGMENT MOTIONS.  I KNOW WE ALL ARE LOOKING AT THIS   11:58

FEBRUARY 4, 2008  EXHIBIT _____ 16
                                        ED CV 04-9059-SGL
                  PAGE _____ 158

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12   | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
13   | Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
14   | vs. | |
15   | MATTEL, INC., a Delaware corporation | Hon. Stephen G. Larson |
16   | Defendant. | MATTEL, INC.'S *EX PARTE*<br>APPLICATION TO ENFORCE |
17   | AND CONSOLIDATED ACTIONS | COURT ORDERS COMPELLING<br>PRODUCTION OF TANGIBLE |
18   | | ITEMS; AND FOR MODIFICATION<br>OF SCHEDULING ORDER |
19
20   Hearing Date: TBA
     Time:        TBA
21   Place:       TBA

22   Phase 1:
     Discovery Cut-Off: January 28, 2008
23   Pre-Trial Conference: May 5, 2008
     Trial Date: May 27, 2008
24
25   **[Declaration of Diane C. Hutnyan;**
     **Notice of Lodging; and Proposed**
26   **Order filed concurrently herewith]**

27   EXHIBIT ___17___

28   PAGE ___159___

07209/2364489.1

1 | TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2 |       Pursuant to Local Rule 7-19, Mattel, Inc. ("Mattel") respectfully seeks

3 | *ex parte* relief for an order (1) enforcing the May 15, 2007 Order Granting Mattel's

4 | Motion To Compel Production of Documents And Interrogatory Responses By

5 | MGA ("May 2007 Order"), the August 13, 2007 Order Granting In Part And

6 | Denying In Part Mattel's Motion To Compel Production Of Documents by MGA

7 | ("August 2007 Order"), and the June 20, 2006 on-the-record stipulation before the

8 | Honorable Robert N. Block, Magistrate Judge, in which MGA agreed to provide

9 | responsive tangible items for inspection within fifteen days of a request; (2)

10 | compelling Defendant MGA to make available for immediate inspection, imaging

11 | and 3D scanning all tangible items responsive to Request Nos. 7-13, 26-27, 32-36,

12 | 46, 51, 53, 55, 96-100 of Mattel, Inc.'s First Set of Requests For Production Of

13 | Documents And Tangible Things To MGA Entertainment, Inc. ("First Set") and to

14 | Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of Mattel, Inc.'s First Set of

15 | Requests For Documents And Things Re Claims Of Unfair Competition To MGA

16 | Entertainment, Inc. ("First UC Set")[1]; and (3) granting cost-shifting for the

17 | inspections in Hong Kong and Shenzhen, China which have become necessary due

18 | to MGA's failure to produce the items earlier in the U.S.; and (4) modifying the

19 | scheduling order extending time to allow Mattel to inspect, image and 3D scan these

20 | tangible items, to take depositions and other discovery related to the tangible items

21 | that were not produced (or even revealed until recently), and to permit its experts to

22 | incorporate this new information into their initial expert reports.

23 |       Mattel makes this application on the grounds that, as MGA has just

24 | recently disclosed, it deliberately interpreted the scope of the compelled requests to

25 |

26 |   [1] Request Nos. 7-13, 26-27, 32-36, 46, 51, 53, 55, 96-100 of the First Set and

27 | Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of the First UC Set are

28 | collectively referred to herein as "the Compelled Requests."

EXHIBIT _____ 17

PAGE _____ 160

MATTEL'S EX PARTE APP. TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLES

1   exclude and withhold from Mattel highly relevant tangible items -- notably, those

2   items pertinent to the design, development and manufacture of Bratz and Prayer

3   Angel, such as sculpts, rubber and metal molds for various stages of production and

4   for doll accessories, face paint masks, "master" heads, and documentation dating

5   these items -- from production.   Since this revelation, MGA has begrudgingly

6   identified a few doll heads and bodies in the last couple of weeks and allowed

7   inspection, imaging and scanning of some of them in Los Angeles.   However, the

8   majority of the items relevant to Bratz's origins and development that MGA is now

9   willing to produce -- 16 metal Bratz molds, 4 decor-master Bratz heads, 12 Bratz

10  polyurethane samples, and 3 metal molds relating to the production of Prayer Angel

11  (another MGA product whose production is relevant to the Bryant-Bratz

12  chronology) -- are only being made available for inspection in Shenzhen, China or

13  in Hong Kong.   MGA also refuses to either produce the rest of the tangible items or

14  to state that it has produced the rest of the tangible items responsive to the requests,

15  instead taking the position that tangible items are not responsive to the requests and

16  stating that it has made a substantial production of all "responsive" items.   Further,

17  MGA's delay in producing these items has prejudiced Mattel by preventing it from

18  taking related discovery before the January 28, 2008 fact discovery cut-off, and by

19  preventing Mattel's experts from being able to finish their analyses and prepare their

20  initial reports by February 11, 2008.

21         Pursuant to Local Rule 7-19, on January 22, 2008, counsel for MGA

22  Entertainment, Inc. ("MGA"), Amy Park of Skadden, Arps, Slate, Meagher & Flom

23  LLP (telephone: 650-470-4511; address: 525 University Avenue, Palo Alto, CA

24  94301) was given notice of this *ex parte* application.   MGA has informed Mattel

25  that it opposes this *ex parte* application.[2]

26

27  _____
    [2]   Previous efforts to resolve the issue (including two meet-and-confer telephone
28  conversations and detailed correspondence) were unsuccessful. / Declaration of
    (footnote continued)

1       This application is based on this Application, the accompanying

2 Memorandum of Points and Authorities, the Declaration of Diane C. Hutnyan dated

3 January 24, 2008, the pleadings and orders lodged concurrently herewith, the

4 pleadings and other papers on file in this action, such matters of which the Court

5 may take judicial notice, and such further argument and evidence which may be

6 presented at or before the hearing.

7 DATED:  January 24, 2008       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

8

9                 By _____

10                    Diane C. Hutnyan
                   Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 Diane C. Hutnyan In Support Of Mattel, Inc.'s Ex Parte Application To Enforce Court Orders Compelling Production Of Tangible Materials; And For Modification

26 of Scheduling Order ("Hutnyan Dec."), dated January 24, 2008 and filed

27 concurrently herewith, ¶ 1 and Exh. 1 (Email exchange between D. Hutnyan and A. Park, dated January 22, 2008).

28

EXHIBIT _____ *17*

PAGE _____ *162*

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Three orders compelled MGA to produce to Mattel the molds, control and engineering drawings, sculpts, casts, prototypes and other things that Bryant and MGA used to create, design, develop and manufacture Bratz and Prayer Angels. Mattel learned in just the last couple of weeks that MGA has such items in China and had concealed them from Mattel in violation of these Orders. Now, a week from the Phase One discovery cut-off, Mattel must seek another order compelling a complete production and relief from the discovery cut-off for these tangible items.

MGA's secret limitations on Mattel's requests were revealed as the result of a December 21, 2007 request to produce certain tangible items for inspection, photographing and digital scanning within 15 days pursuant to the June 20, 2006 on-the-record stipulation before Judge Block. To make sure there was no confusion about what was requested, Mattel asked for "any and all (1) tangible three-dimensional objects that are responsive to any request for production or interrogatory previously served on MGA, its Hong Kong affiliate, or any of its agents, *including without limitation, all molds, sculpts, doll heads, prototypes, models, and three-dimensional objects that are in the custody and control of MGA, its Hong Kong affiliate, or any of its agents; and (2) all molds, sculpts, doll heads, prototypes, models, and three-dimensional objects used in the manufacture, design or creation, or production of, or that are otherwise related to, Bratz or Prayer Angel dolls and are in the custody and control of MGA, its Hong Kong affiliate, or any of its agents.*"[3]

On a telephonic meet-and-confer that took place on January 3, 2008, counsel for MGA stated that he believed Mattel's letter request was broader than the

---

[3] *Id.*, Exh. 2 (Letter from D. Hutnyan to T. Miller, dated December 21, 2007) (emphasis added).

EXHIBIT _____ 17

PAGE _____ 163

1    scope of Mattel's requests for production, and specifically requested that Mattel

2    agree to narrow its letter request to what was allegedly responsive to its document

3    requests by removing the language after the first occurrence of "agents" -- the

4    italicized language above.[4]  Mattel's counsel pointed out that all the items listed in

5    the questioned portion of the request were responsive to its requests and requested

6    clarification as to which items MGA contended were not within the scope of the

7    requests.[5]  MGA's counsel responded that "*among other things*, **Mattel's requests**

8    **do not call for molds used in conjunction with the manufacture of dolls or other**

9    **tangible items.**"[6]

10          When in subsequent discussions and correspondence, Mattel's counsel

11   pointed out at least nine specific requests for production that called for molds (and

12   as to which production had previously been compelled by Judge Infante),[7] MGA

13   would not agree that molds were responsive,[8] but identified 12 molds and related

14   items that had never before been produced and purportedly were "recently located"

15   by MGA.[9]  As to these items, MGA said it would take "several weeks" to get them

16

17

18

19          [4] *Id.*, at ¶ 3.

20          [5] *Id.*, at ¶ 4 and Exh. 3 (Letter from A. Temkin to D. Hutnyan dated January 7,
     2008), at 1 ("you asked us to specify where your letter was incorrect. . .").

21          [6] *Id.*, Exh. 3, at 1 (emphasis added).

22          [7] *Id.*, Exh. 4 (Letter from D. Hutnyan to A. Temkin and A. S. Park dated January

23   9, 2008), at 2-3 (listing nine requests).

24          [8] *Id.*, Exh. 5 (Letter from A. S. Park to D. Hutnyan dated January 10, 2008), at 2
     ("whether molds are called for by your requests is debatable").

25          [9] *Id.*, Exh. 5, at 2 ("MGA has recently located approximately 12 Bratz molds in

26   Shenzhen, China"); Exh. 6 (Email from A. S. Park to D. Hutnyan dated January 11,
     2008, attaching photographs of the molds); Exh. 8 (Letter from A. S. Park to D.

27   Hutnyan dated January 15, 2008, with new photographs of the Bratz molds and
     additional molds of Prayer Angel which "MGA also has located").    EXHIBIT __17__

28

PAGE __164__

1  to the United States and so Mattel would have to send people to the People's

2  Republic of China just to inspect them.[10]

3        When Mattel requested other specific tangible items related to the

4  origin and development of Bratz, MGA also declined to state whether it had

5  searched for those tangible items and merely stated that it had "substantially

6  completed its production of tangible items in response to the requests that you

7  characterized as calling for tangible items 'relating to the origin, creation, design or

8  development of Bratz.'"[11]   It refused to elaborate as to what it believed was

9  "responsive" and again argued that tangibles were not called for by Mattel's

10  requests.[12]  And MGA to date has refused to identify what "other things" in Mattel's

11  December 21 letter it has unilaterally concluded Mattel's requests do not call for.[13]

12  It seems clear now that MGA has been interpreting the requests in such a way as to

13  exclude clay sculpts, rubber and metal molds for various stages of production and

14  for doll accessories, face paint masks, "master" heads, documentation dating these

15  items, and many other items related to design, development and manufacture.

16        Mattel now knows from a belatedly produced MGA document that

17  Bratz head molds and other mock-up development items existed as early as 2000.[14]

18  Indeed, Rebecca Harris, MGA's <u>Rule</u> 30(b)(6) designee on the early manufacture of

19  Bratz, confirmed that as of December 8, 2000, MGA vendor Wah Shing had

20  completed or at least was in the process of preparing a roto skin-master -- which is a

---

21    [10] *Id.*, Exh. 5, at 2-3 ("shipping the molds to the United States would require

22  submission of an application to customs in both China and the United States, which

23  I understand could potentially take several weeks.  Accordingly, I told you that MGA will make the molds available for your inspection in Shenzhen . . .").

24    [11] *Id.*, Exh. 5, at 3.

25    [12] *Id.*, Exh. 5, at 3 ("Your assertion that a request specifically calling for

26  "documents" calls for other tangible items is inconsistent with the Federal Rules and Mattel's own practice").

27    [13] *Id.*, ¶ 4.

28    [14] *Id.*, Exh. 20.

EXHIBIT _____ 17

PAGE _____ 165

MATTEL'S EX PARTE APP. TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLES

1 metal head mold -- for Bratz.[15]  Ms. Harris further testified that Early Light had
2 prepared mold control drawings with respect to final production molds it had
3 developed.[16]  Yet MGA has produced no Bratz head molds and no mold control
4 drawings.[17]  This is plainly improper.

5         MGA's failure to produce all items responsive to Mattel's requests
6 relating to the origin, design, development and manufacture of Bratz throughout this
7 litigation has deprived Mattel of opportunities to obtain pertinent testimony and has
8 prevented its experts from incorporating this information into their initial expert
9 reports.  The parties' June 2006 stipulation and the May 2007 and August 2007
10 Court Orders should be enforced and MGA should be compelled to make available
11 for immediate inspection, photographing and scanning all tangibles related to the
12 origin, creation, design, development and manufacture of Bratz and Angel, and any
13 other items responsive to Mattel's compelled requests that have not already been
14 produced.

15                          **Factual Background**

16         <u>Mattel's Requests</u>.   Each of the Compelled Requests seeks tangible
17 items relating to the origin, creation, design, development and/or manufacture of
18 Bratz or other relevant products in this case.  Some of the requests focus directly on
19 tangible items.  These include Request No. 96 of the First Set, seeking "[a]ll doll
20 heads, sculpts, prototypes, models, samples and tangible items that were created,
21 prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER
22 OR RELATE TO BRATZ", and Request No. 99 of the First Set, seeking "[a]ll doll
23 heads, sculpts, prototypes, models, samples and tangible items that REFER OR

---

24
25 [15] *Id.*, Exh. 26 (Rough Transcript of the Deposition of Rebecca Harris, dated January 22, 2008), at 107:17-22.
26 [16] *Id.*, at 132:21-134:19.
27 [17] Ms. Harris could not confirm that the final production molds she had seen were those being made available in China. *Id.*, at 103:25-104:25.   EXHIBIT _17_
28

1  RELATE TO DESIGNS for dolls, doll accessories or toys that BRYANT produced,
2  created, authored, conceived of or reduced to practice, whether alone or jointly with
3  others, prior to January 1, 2001."[18]

4         Some of the requests even call specifically for Bratz molds and tooling.
5  Request No. 53 of the First Set seeks "[a]ll DOCUMENTS[[19]] that REFER OR
6  RELATE TO the procurement, fabrication, preparation and production of each and
7  every mold for BRATZ (including without limitation for any model, prototype, or
8  sample thereof) prior [to] June 1, 2001 . . . ." Request No. 51 of the First Set seeks
9  "[a]ll DOCUMENTS that REFER OR RELATE TO each and every sculpt of
10 BRATZ (including without limitation any model, prototype or sample thereof) prior
11 to June 1, 2001." Request No. 17 of the First UC Set seeks "[a]ll DOCUMENTS
12 RELATING TO the tooling for any of the CONTESTED BRATZ DOLLS
13 PRODUCTS . . . including but not limited to all DOCUMENTS relating to the
14 engineering, preparation, fabrication and creation of the molds and face paint masks
15 used in connection therewith and to the film and/or digital files used in connection
16 with the packaging therefor."[20]

17

18     [18] *Id.*, Exh. 9 (First Set) at 25, 26.
19     [19] In both sets of requests, "DOCUMENT" was defined to include that term's
   meaning under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence
20 1001 of all writings and recordings, which "consist of letters, words, or numbers, or
   their equivalent, . . . or other form of data compilation." *Id.*, Exh. 9, at 2; and Exh.
21 10 (First UC Set), at 2. The stated definition of "DOCUMENTS" in the First Set
22 also specifically included "every other device or medium by which or through which
   information of any type is transmitted, recorded or preserved." *Id.*, Exh. 9, at 2.
23 The stated definition of "DOCUMENTS" in the First UC Set also specifically
24 included "every other means of recording upon any tangible thing, any form of
   communication or representation, and any record thereby created, regardless of the
25 manner in which the record has been stored." *Id.*, Exh. 10, at 2.
26     [20] *Id.*, Exh. 9, at 17; and Exh. 10, at 17. Mattel also propounded several other
27 broader requests that encompass molds, tooling and other tangible items related to
   the creation, design and development of Bratz, including Request No. 5 of the First
28     (footnote continued)

EXHIBIT __17__
PAGE __167__

1    Judge Infante compelled MGA to produce all items responsive to these
2 and the other Compelled Requests.  He ordered production as to the Compelled
3 Requests from the First Set by May 31, 2007.[21]  He ordered production as to the
4 Compelled Requests from the First UC Set by August 30, 2007.[22]  On December 21,
5 2007, Mattel again requested, pursuant to the parties' June 20, 2006 on-the-record
6 stipulation before Judge Block, to inspect and image all tangibles within fifteen
7 days.[23]

8    MGA's Production.  MGA has produced very few tangible items
9 relating to the origin, creation, design, development or manufacture of Bratz.  Up
10 until Mattel's December 21, 2007 request, it had produced a few doll bodies and doll
11 heads, but no molds, face paint masks, or other tooling at all.[24]

12    Items in Hong Kong.  MGA has claimed that more than half of MGA's
13 production of tangible items relating to the origin, design, development or
14 manufacture of Bratz is available for inspection and 3D scanning only in Hong
15 Kong.[25]  What appears to be twelve polyurethane samples of the head, body and

16

17 ——————————————

18 UC Set ("[a]ll DOCUMENTS RELATING TO the invention, creation, origin,
19 conception, authorship, and ownership of the CONTESTED MGA PRODUCTS");
   Request No. 32 of the First Set ("[a]ll DOCUMENTS prepared, written, transmitted
20 or received (whether in whole or in part) prior to January 1, 2001 that REFER OR
   RELATE TO BRATZ"); Request No. 33 of the First Set ("[a]ll DOCUMENTS that
21 REFER OR RELATE TO BRATZ that REFER OR RELATE TO any time prior to
22 January 1, 2001 . . . ."); and Request No. 36 of the First Set ("[a]ll DOCUMENTS
   that REFER OR RELATE TO the origin(s), conception or creation of BRATZ . . .
23 ."). *Id.*, Exh. 9 (First Set) at 7, 13, 14.

24    [21] May 2007 Order, lodged concurrently herewith, at 14.
      [22] August 2007 Order, lodged concurrently herewith, at 14.
25    [23] Hutnyan Dec., Exh. 2.
26    [24] *Id.*, ¶ 10.
      [25] *Id.*, Exh. 11 (Letter from A. S. Park to S. Kidman dated December 26, 2007),
27 at 1 ("various items . . . 'are subject to an undertaking given to the Hong Kong court
28    (footnote continued)

EXHIBIT ___ 17
PAGE ___ 168

07209/2364489.1

-9-

1   shoes of Bratz and four hand painted decor-masters on 4 rubber head sculpts of

2   Bratz were purportedly subject to an undertaking prohibiting their shipment out of

3   the country.[26]   Pictures of these items provided by MGA show a striking

4   resemblance to items which, according to MGA in sworn statements made in Hong

5   Kong proceedings, were made "between the Years 2000 and 2001" in California.[27]

6          Meanwhile, MGA has refused to produce the undertaking, to identify

7   the Court or dispute from which it issued, to identify when the undertaking was put

8   into effect, or to share any information about its supposed efforts to gain the

9   temporary release of these items so they can be inspected and scanned in the United

10  States.[28]   MGA has further failed to provide any authority suggesting that the

11

12  _____

13  that prevents the items from being sent to the United States absent relief from the court'").

14  [26] *Id.*, Exh. 11, at 1; Exh. 6 (enclosing photographs of items located in Hong

15  Kong); Exh. 12 (Letter from A. S. Park to D. Hutnyan dated January 2, 2008), at 1
    (stating that the undertaking prevents shipment of the subject items to the U.S.);

16  Exh. 8 (stating that MGA's purported request to vary the undertaking was denied by

17  the Hong Kong court).

18  [27] *Compare* photographs of bates-numbered Hong Kong items MGA-TI-000785-
    800 in Hutnyan Dec., Exh. 6 and Hutnyan Dec., Exh. 13 (Affidavit of Daphne

19  Gronich in Hunglam Toys case, MGA 0883230-40), at 0883232 and 0883236 ("the
    PU Samples between the Years 2000 and 2001 in the State of California"); Exh. 14

20  (Exhibit to Affidavit of Daphne Gronich, MGA 0883260-61 and photograph of the

21  original) (depicting "the PU Samples"); Exh. 15 (Affidavit of Daphne Grohnich in
    CityWorld case, MGA 0883304-12), at 0883306, 0883310 and 0883311 ("the

22  Decor-Masters [were] between the Years 2000 and 2001 in the state of California");

23  Exh. 16 (Exhibit to Affidavit of Daphne Gronich, MGA 0883346-47 and
    photograph of the original) (depicting "the Decor-Masters").

24  [28] *Id.*, Exh. 11, at 2 ("I have no obligation to provide you any details regarding

25  the litigation in Hong Kong"); Exh. 12 ("MGA . . . will not provide that information
    to you"); Exh. 5 ("MGA will not provide . . . a copy of the undertaking so that you

26  could determine for yourself whether it truly prevents the items from being shipped

27  here"); *see also* Exh. 17 (Letter from S. Kidman to A. S. Park dated December 23,
    2007) and Exh. 19 (Letter from D. Hutnyan to A. S. Park dated January 2, 2008)

28     (footnote continued)                          EXHIBIT _____ *17*

1  unidentified Hong Kong undertaking provides a privilege or immunity from the

2  orders of a U.S. federal court to produce discoverable items.[29]  If such a prohibition

3  existed, then MGA was obligated to (a) raise an objection to the requests; (b) seek

4  reconsideration of the Orders; or (c) make a timely appeal of the Orders to this

5  Court.  MGA did none of these.  Instead, it did nothing to comply with the Court's

6  orders, forcing upon Mattel the onus of challenging MGA's apparently knowing

7  disregard of the Discovery Master's Orders.

8     *Items in Shenzhen.*  On January 10, 2008, the very day after Mattel's

9  counsel pointed out nine separate requests that called for molds and tooling, MGA's

10  counsel announced for the first time that "following a diligent search, MGA has

11  recently located approximately 12 Bratz molds in Shenzhen, China" that were

12  "created in February 2001, and are molds of various Bratz body parts, including the

13

14

15

16  (both memorializing MGA's refusal to provide any information about the

17  undertaking).

  Meanwhile, MGA contends -- having cited no facts or law that would support

18  its position -- that it has the right to submit the undertaking *in camera* in opposition

19  to this motion.  *Id.*, Exh. 12 ("MGA is prepared to provide copies of the Hong Kong

applications and information regarding the litigation to Judge Infante *in camera*");

20  Exh. 5 ("MGA will provide the undertaking to Judge Infante *in camera"*).  Mattel

21  respectfully submits that MGA cannot have it both ways; since Mattel has been

22  deprived of basic information about the undertaking that would allow it to assess or

test its applicability, then MGA cannot use the undertaking to excuse its failure to

23  produce the items in the United States.  Mattel asks the Court to disregard any *in

camera* submission concerning the undertaking unless the purpose of such a review

24  is explained and Mattel has been given an opportunity to respond.  *See United States

25  v. Hall,* 854 F.2d 1036, 1042 (7th Cir.1988) (describing "adversarial safeguards"

necessary for the "properly limited use of *in camera* review" as giving appropriate

26  notice of the purpose for the *in camera* review to the opposing party, giving it an

27  opportunity to respond before *in camera* review is granted).

 [29] *Id.*, ¶ 18.

28

EXHIBIT _____ 17

PAGE _____ 170

-11-

07209/2364489.1

1 | torso, arms and legs."[30]  MGA refuses to bring these items to the United States also,

2 | suggesting that it could take a long time to clear customs in both countries,[31] but has

3 | provided no explanation as to why it did not start this process when the requests

4 | were first served, in March of 2005 or December of 2006; or to comply with the

5 | Discovery Master's Order in May 2007; or to comply with the Discovery Master's

6 | Order in August 2007.  To Mattel's knowledge, MGA has made no move to bring

7 | itself into compliance with these Orders even today.[32]

8 |         On January 15, 2008, MGA's counsel announced that it had located

9 | molds relating to Prayer Angel as well, and they also would be available for

10 | inspection only in the People's Republic of China.[33]

11 |         *The Remaining Tangibles.*  Finally aware of MGA's selective

12 | interpretation of "tangible items" and "documents," and of the existence of the

13 | Shenzhen molds, Mattel's counsel inquired as to specific other items encompassed

14 | within its requests  but seemingly missing from MGA's production:

15 | • clay sculpts for each doll developed;

16 | • mold(s) taken of the clay, perhaps of rubber, perhaps in multiple versions;

17 | • closures and documentation and tooling related to the design of the

18 |     closures;

19 | • resin or fastcast sculpts from the mold of the clay;

20 | • metal molds relating to all the body parts, including the head;

21 |

22 | [30] *Id.*, Exh. 5, at 2; and Exh. 6 (photographs of the 12 molds in China); Exh. 8

23 | (new photographs of the Bratz and Prayer Angel molds in China).
   [31] *Id.*, Exh. 5, at 3 ("*could potentially* take several weeks") (emphasis added).

24 | [32] According to MGA, shipping the steel molds is "neither practical nor

25 | reasonable" (*Id.*, Exh. 8, at 2) because they are expensive to ship, and because
   shipping might cause unspecified damage to the items. *Id.*, Exh. 5, at 2. But MGA

26 | does not explain why it could not properly pack the molds up and send them in a

27 | cost-effective manner when it was first ordered to produce them.
   [33] *Id.*, Exh. 8, at 2.

EXHIBIT _____ 17

28 |

072Q9/2364489.1

MATTEL'S EX PARTE APP. TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLES

1  • vinyl super master of the head;

2  • multiple masters of the head;

3  • paint master;

4  • face paint masks;

5  • molds for all plastic accessories coming with the dolls;

6  • printing plates for packaging;

7  • documentation including schematics, control and engineering drawings

8     and communications with the manufacturer about machining, tolerances,

9     dimensions, or assembly of the dolls;

10 • anything purportedly dating from before or after February 2001; and

11 • anything relating to the mock-up development tooling and documentation

12    that was transferred from MGA vendor Wah Shing to MGA vendor Early

13    Light at MGA's direction on or around December 8, 2000, such as the

14    "roto head skin-master" -- which is a Bratz head mold -- that was

15    referenced in an email produced by MGA bates-numbered MGA 0065414-

16    15 and confirmed by MGA's 30(b)(6) designee.[34]

17        MGA's counsel has refused to disclose whether it has searched for any

18 of these items, and continues to assert its position that molds and other tangible

19 items relating to the origin and development of Bratz are not in within the scope of

20 Mattel's requests.[35]   MGA will only state that it has "substantially completed its

21 production of tangible items in response to the requests that you characterized as

22 calling for tangible items 'relating to the origin, creation, design or development of

23 _____

   [34] *Id.*, Exh. 19  (Letter from D. Hutnyan to A. Park dated January 14, 2008), at 2-
24 3; *see also* Exh. 20 (MGA 0065414-15 email regarding transfer of tooling from Wah
25 Shing to Early Light); Exh. 26 (Rough Transcript of the Deposition of Rebecca
   Harris, dated January 22, 2008), at 107:17-22..
26 [35] *Id.*, Exh. 3, at 1 ("your letter mischaracterizes MGA's obligation to produce
27 tangible items"); Exh. 5, at 3 (rejecting assertion that MGA is withholding
   tangibles); Exh. 8, at 2 ("our position has not changed").   EXHIBIT _____ *17*
28

1   Bratz',"[36] that it "continues to conduct a reasonable, good faith search for documents
2   and tangible items,"[37] and that "some of the material you are seeking is several years
3   old and much of it may have ceased to exist before this action was filed."[38]   This
4   belated and ambiguous suggestion that MGA destroyed Bratz-related documents,
5   molds, castings, dolls, prototypes, models, printing plates and other tangible items
6   contradicts MGA's repeated representation that it preserves everything.[39]

<u>**Argument**</u>

7
8   I.   <u>**MGA Should Be Compelled To Provide All Tangibles Related To The**</u>
9        <u>**Origin, Creation, Design, Development And Manufacture of Bratz and**</u>
10       <u>**Prayer Angel For Immediate Inspection, Imaging and 3D Scanning**</u>
11       MGA has concealed from Mattel molds, tooling and other tangible
12   objects relevant to Bratz design and development.   While providing access to
13   hundreds of packaged Bratz dolls (falsely suggesting that it was being forthcoming
14   with production of tangible items related to Bratz) and repeating that MGA believed
15   its production was "substantially complete,"[40] MGA was, now admittedly, omitting
16   almost all tangibles relating to the development and first manufacture of Bratz --
17   producing no metal molds, no clays, no rubber molds, no closures, no face paint
18   masks, no supermasters or paintmasters, etc.[41]

19
20
21       [36] *Id.*, Exh. 5, at 3; *see also* Exh. 8, at 2.
         [37] *Id.*, Exh. 8, at 3.
22       [38] *Id.*, Exh. 8, at 2.
23       [39] *E.g., id.*, Exh. 21 (Tonnu Tr., dated September 25, 2007), at 656:9-22 (Q. "Do
     you know whether all of the Bratz design documents from 2000 and 2001 have been
24   preserved?  . . . So as far as you are aware, they've all been preserved?" A. "Yes");
     *see also* Exh. 21, 645:15-646:6; 686:3-24; 710:4-13; 715:20-716:7.
25
         [40] *Id.*, Exh. 11, at 3; Exh. 12, at 2-3; Exh. 5, at 3; and Exh. 8, at 2 (representing
26   on December 26, 2007, and January 2, 10, and 15, 2008 that MGA believes
27   production to be "substantially complete").
         [41] *Id.*, ¶ 10.
28

EXHIBIT _____ 17
PAGE _____ 173

07209/2364489.1

-14-

1    It was only when Mattel discovered that MGA had secretly interpreted
2  its requests to exclude all molds, and started asking pointed questions, did any of
3  these kinds of tangibles appear at all (but even then only a few items related to
4  molds and tooling):

5    • January 4, 2008:  MGA discovers "3-dimensional" displays and
6      "additional items on which [MGA] may rely"[42]

7    • January 10, 2008:  MGA discovers Bratz molds in China[43]

8    • January 15, 2008:  MGA discovers Prayer Angel molds[44]

9    • January 17, 2008:  MGA discovers a "binder of material relating
10     to the development of Bratz"[45]

11   • January 21, 2008: MGA discovers "additional tangible items" for
12     inspection in Los Angeles.[46]

13   MGA has no basis for reading out of the Discovery Master's Orders an
14  obligation to find and produce molds and tangible items.  The requests sought and
15  orders compelled their production.

16   MGA may try to justify its withholding of molds and other tangible
17  items associated with the creation, design, development and manufacture of Bratz
18  on the basis that Mattel sought and the Discovery Master compelled production of
19  only "documents."[47]  But the definition of "DOCUMENT" in Mattel's Compelled
20  Requests specifically included "tangible items." Also, it is untenable to suggest, as
21  MGA has, that requests that directly seek DOCUMENTS (including tangible things)
22  that "REFERS OR RELATES TO" molds do not call for the production or

---

[42] *Id.*, Exh. 22 (Letter from A. S. Park to D. Hutnyan dated January 4, 2008), at
1; *see also* Exh. 23 (January 10, 2008 email with photographs of displays).
[43] *Id.*, Exh. 5, at 2.
[44] *Id.*, Exh. 8, at 2.
[45] *Id.*, Exh. 24 (Letter from A. S. Park to D. Hutnyan dated January 17, 2008).
[46] *Id.*, Exh. 25 (Letter from A. S. Park to D. Hutnyan dated January 21, 2008).
[47] *Id.*, Exh. 9 and 10.

EXHIBIT _____ 17

PAGE _____ 174

07209/2364489.1

MATTEL'S EX PARTE APP. TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLES

1    inspection of the molds themselves.  To the contrary, Mattel's requests, including

2    those MGA was compelled on, defined "REFERS OR RELATES" to as

3    encompassing matters that embody or evidence a given matter.[48]   (And even if

4    MGA were right, that does not excuse its failure to produce the control and

5    engineering drawings used to create the molds or for Bratz dolls themselves.

6           Third, the requests also defined "DOCUMENTS" to include all

7    "writings" and "recordings" as those terms are defined in Rule 34 of the Federal

8    Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence.[49]   Rule

9    1001 provides that "'writings' and 'recordings' consist of letters, words, or numbers,

10   or their equivalent, set down by handwriting, typewriting, printing, photostating,

11   photographing, magnetic impulse, mechanical or electronic recording, or other form

12   of data compilation."   Thus, in Federal Court, "documents" clearly includes

13   "tangible items."  See LG Phillips LCD Co., Ltd. v. Tatung Co., 2007 WL 2908183

14   (D. Del. 2007) (defining "document" as being used "in its customarily broad sense

15   pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of

16   Evidence 1001" and expressly including "things," which it defined as "any tangible

17   item"); In re Genetically Modified Rice Litigation, 2007 WL 1655757 (E.D. Mo.

18   2007) (defining "document" as being "synonymous and equal in scope to usage of

19   this term in Fed. R. Civ. P. 34(a) and to the terms . . . in Fed. R. Evid. 1001" and

20   including within it "writings of every kind and description that are fixed in any

21   medium upon which intelligence or information can be recorded or retrieved"); see

22   also Black's Law Dictionary (8th Ed. 2004) (defining "document" as "something

23   tangible on which words, symbols or marks are recorded").   Even MGA has

---

[48] Id., Exh. 9 and 10.
[49] Id., Exh. 9 and 10.

EXHIBIT ___17___

175

1  admitted that "documents" includes "word or *images that have been recorded in or*
2  *reduced to hard copy form.*"[50]

3  Molds constitute "records" of the design, development and/or
4  manufacture of the dolls; indeed, that is one of the reasons they are highly relevant.
5  As is clear from the photographs provided by MGA, the Bratz and Prayer Angel
6  molds in China each feature images of the doll that have been recorded in the steel;[51]
7  and they all have identifying numbers or letters or other characters on them,
8  showing their correspondence to certain products.  They are "documents" -- even
9  under MGA's own narrow definition.  The same is true of the paintmasters and other
10  items, which all have identifying characters on them, which feature images that have
11  been recorded in their media, and which in and of themselves are records of the
12  design, development and manufacture of Bratz.

13  For all these reasons, MGA's refusal to recognize these items as
14  responsive and continuing failure to produce them (or its failure to preserve them, if
15  it is true that these items no longer exist) can only be considered willful.

16  The tangible items and the information they reflect are without question
17  highly relevant to the timing and chronology of Bratz and Prayer Angels.  MGA
18  should be compelled to make a production of all of the items listed above, and all of
19  the other tangible items relating to the creation, design, development and/or
20  manufacture of Bratz or Prayer Angel without further delay or equivocation.

21  As for the items in Hong Kong and Shenzhen (or in other locations
22  where inspection and scanning in the U.S. is no longer feasible under the case
23  schedule because of MGA's defiance of Court Orders), MGA should bear the costs
24  resulting from its failure to timely produce the items.  One might infer from MGA's
25

26  [50] *Id.*, Exh. 5, at 3 (emphasis added).
27  [51] *Id.*, Exh. 6 and Exh. 8 (showing photographs of the molds and tooling in
China).
28

EXHIBIT ___17___

PAGE ___176___

-17-

MATTEL'S EX PARTE APP. TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLES

07209/2364489.1

1    unexplained refusal to share the supposed undertaking upon which it is relying with

2    Mattel that the items in Hong Kong could have been shipped to the U.S. before it

3    took effect; and MGA offers no reason the items in Shenzhen could not have been

4    shipped over at any time in the last two years.[52]  But MGA concealed these items,

5    preventing Mattel and its experts from getting this crucial evidence at a time when

6    follow-up discovery could have been taken within the fact discovery period.  Now

7    that the fact discovery cut-off is upon us, and the only practical solution is to

8    conduct the inspections in Hong Kong and Shenzhen, MGA should be compelled to

9    provide access for inspection and scanning in both locations at times selected by

10   Mattel, and to pay the costs which must be incurred due to the necessity of

11   conducting the inspection and scanning in Asia.

12   **II.    The Scheduling Order Should Be Modified To Accommodate MGA's**

13   **Late Production and Mattel's Need For Further Discovery And Analysis**

14   **Related To The New Items Produced**

15          There is no question that the Bratz and Prayer Angels molds, tooling,

16   control and engineering drawings, casts, sculpts, etc. are clearly relevant and should

17   have been produced a long time ago, as the Discovery Master ordered by May 2007,

18   and then again by August 2007.  MGA's failure to comply has deprived Mattel of

19   the opportunity to take depositions on these items, and to have its experts develop

20   analyses and opinions relating to these items and the record of design and

21   development they constitute.

22

23

---

24   [52] Very belated promises of "home office inspection," such as these MGA has
25   offered in Asia, especially when production could have been made at the
     propounding party's location months or years before, are properly viewed as a
26   "defense strategy" rather than a legitimate attempt to comply with discovery
27   obligations. *Compagnie Des Bauxites De Guinea v. Insurance Company of North
     America*, 651 F.2d 877, 883-84 (3d. Cir. 1981).    EXHIBIT _____ *17*

28

                                                              PAGE _____ *177*

1         Such a scheme cannot be condoned by the Court.   The inspection,

2   imaging and 3D scanning of all the responsive items should take place without

3   further delay and the scheduling order should be modified to allow Mattel two

4   weeks after the inspection, imaging and scanning is complete for completion of fact

5   discovery relating to or relying upon these items; and four weeks after the

6   inspection, imaging and scanning is complete for preparation of its experts' initial

7   reports relating to or relying upon these items.

8   **Conclusion**

9         For all of the foregoing reasons, Mattel respectfully requests that the

10   Court grant an order (1) enforcing the May 2007 and August 2007 Orders, and the

11   June 2006 stipulation, specifically with regard to the Compelled Requests, (2)

12   compelling MGA (a) to make all of the requested items available for inspection,

13   imaging and 3D scanning at times chosen by Mattel, by February 7, 2008 in Los

14   Angeles, or elsewhere if inspection cannot be done in Los Angeles in that

15   timeframe, and (b) to reimburse Mattel for the costs of inspection and scanning of

16   any items that cannot be produced in Los Angeles; and (3) modifying the scheduling

17   order to accommodate the fact discovery and expert analysis relating to these items.

18   DATED:  January 24, 2008       QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

19

20                     By _____

21                        Diane C. Hutnyan
                                    Attorneys for Plaintiff and Cross-Defendant

22                        Mattel, Inc.

23

24

25

26

27                               EXHIBIT _____ 17

28                               PAGE _____ 178

07209/2364489.1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES – GENERAL

Case No.     CV 04-09049 SGL(RNBx)                    Date: February 4, 2008
Title:         CARTER BRYANT -v- MATTEL, INC.
                AND CONSOLIDATED ACTIONS
=================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         Jim Holmes                              Theresa Lanza
         Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael Page                              John Quinn
                                          Jon D. Corey

ATTORNEYS PRESENT FOR MGA:             ATTORNEY PRESENT FOR CARLOS
                                       GUSTAVO MACHADO GOMEZ:
Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo


Alexander H. Cote


MINUTES FORM 90                        Initials of Deputy Clerk __jh_
CIVIL – GEN                            Time: 1/45
                          1

EXHIBIT _____ 18
PAGE _____ 179

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

**1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods**

**1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.**

**1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing**

**1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow**

**1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items**

**1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel**

**ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND**

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

**EX PARTE APPLICATIONS REGARDING DEPOSITIONS (DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE**

These applications are DENIED IN PART, subject to the following rulings:

(1)   The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)   The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

MINUTES FORM 90
CIVIL — GEN

2

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____ 18

PAGE _____ 180

McFarland, who represents certain third-party witnesses. Mattel submits that Mr.
McFarland has been deliberately evading service of a notice of deposition on him
and his clients -- serious allegations when made by an officer of the Court against
another officer of the Court.  Accordingly, Mr. McFarland is **ORDERED TO SHOW
CAUSE** why he and his clients should not be ordered to appear for deposition.  A
written response to this OSC must be filed no later than February 11, 2008. Other
parties may file written replies no later than February 19, 2008.  The Court will hear
the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-
referenced Court.

(3)    Phase 1 depositions that have been scheduled past the discovery deadline for the
       convenience of the witnesses or pursuant to the stipulation of the parties and/or
       witnesses may proceed as scheduled.

(4)    All discovery related to Phase 2, other than certain individual depositions that may be
       related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)    As previously ordered and reaffirmed by this Court, all discovery matters shall be
       presented in the first instance to the Discovery Master.  The fact that the Discovery
       Master's ruling might impact upon the Court's scheduling order does not relieve the
       parties of following this procedure.   For instance, motions to compel, motions to
       quash, or motions challenging service as to existing discovery requests shall be
       brought before the Discovery Master.  So, too, must objections based on
       burdensomeness, relevancy, or privilege.  In general, and on the matters touched
       upon herein, the Court expresses no opinion as to these issues, and instead leaves
       those issues to the Discovery Master to decide in the first instance.

(6)    To the extent that certain challenged depositions are within the scope of the Court's
       January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given
       deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and
       Phase 2), said deposition may proceed subject to the challenges set forth in the
       previous paragraph.  To the extent that the depositions are related to Phase 2, they
       are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)    The parties' arguments require the Court to resolve an internal inconsistency in the
       Court's January 7, 2008, Order.  The Court's Order was meant to grant all parts of
       Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the
       relief sought as to the deposition of Carter Bryant.  The Court amends its 01.07.08
       Order as follows:

               Delete: <Specifically, the Court grants Mattel's request to take the
               individual depositions relating to the Bratz claims (set forth in the
               moving papers at 9-11) and relating to the trade secret and RICO

EXHIBIT _____18_____

PAGE _____81_____

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11), relating to the trade secret and RICO claims (set forth in the moving papers at 13), and relating to document preservation (set forth in the moving papers at 14 (Joe Tiongco and Daphne Gronich)).>

(8)    The Court's January 7, 2008, Order granted leave to take additional discovery over and above the previously allocated 24 depositions per side. Nevertheless, as to all other depositions, how to "count" the previously allocated depositions is left to the discretion of the Discovery Master.

(9)    At the hearing, counsel for Christensen, Glaser requested that the Court clarify that its January 7, 2008, ruling granted leave to depose it on only one issue. That is not the case, and the request is DENIED. Mattel has been granted relief from the numerical limitations that previously restricted its ability to depose those individuals and entities addressed by the Court's January 7, 2008, Order, including its ability to depose Christensen, Glaser. Unless otherwise restricted by the Discovery Master upon proper presentation of the issue to him, Mattel may depose Christensen, Glaser on any relevant, non-privileged matter.

## MACHADO GOMEZ'S EX PARTE APPLICATION RE JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED. As noted above, Phase 2 discovery is STAYED until further order of the Court. The Court will address Phase 2 discovery, motions, pretrial, and trial dates after the conclusion of Phase 1 of the trial.

## MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED. This matter must be addressed in the first instance by the Discovery Master.

## MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART. Counsel for MGA shall employ its best efforts to arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in the

EXHIBIT _____18_____

PAGE _____182_____

arrangements for inspection in both Hong Kong and the PRC.   Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports.  Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

### MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART.  The Court sets the motion for hearing on February 11, 2008.  Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008.  The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                5                Initials of Deputy Clerk __jh_____
                                                            Time: 1/45

EXHIBIT _____ _18_

PAGE _____ _183_

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of February 4, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk  jh

EXHIBIT _____18_____

PAGE _____184_____

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of February 4, 2008

| | | | |
|---|---|---|---|
| | Atty Sttlmnt Officer Panel Coordinator | | US Attorneys Office - Civil Division -L.A. |
| | BAP (Bankruptcy Appellate Panel) | | US Attorneys Office - Civil Division - S.A. |
| | Beck, Michael J (Clerk, MDL Panel) | | US Attorneys Office - Criminal Division -L.A. |
| | BOP (Bureau of Prisons) | | US Attorneys Office - Criminal Division -S.A. |
| | CA St Pub Defender (Calif. State PD) | | US Bankruptcy Court |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | | US Marshal Service - Los Angeles (USMLA) |
| | Case Asgmt Admin (Case Assignment Administrator) | | US Marshal Service - Riverside (USMED) |
| | Catterson, Cathy (9th Circuit Court of Appeal) | | US Marshal Service -Santa Ana (USMSA) |
| | Chief Deputy Admin | | US Probation Office (USPO) |
| | Chief Deputy Ops | | US Trustee's Office |
| | Clerk of Court | | Warden, San Quentin State Prison, CA |

| | |
|---|---|
| ✓ | **ADD NEW NOTICE PARTY** (If sending by fax, mailing address must also be provided) |
| | Name: Hon. Edward A. Infante (Ret.) |
| | Firm: |
| | Address (include suite or floor):  Two Embarcadero |
| | Center, Suite 1500, San Francisco, CA  94111 |
| | |
| | *E-mail: |
| | *Fax No.: |

| | |
|---|---|
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So  Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

\* For CIVIL cases only

| |
|---|
| **JUDGE / MAGISTRATE JUDGE (list below):** |
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT _____ 18

PAGE _____ 105

RECEIVED

JAN 0 7 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301
———
TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 4, 2008

**By Email and U.S. Mail**

Diane Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
      Case No. CV 04-9049 SGL (RNBx) (consolidated with
      Cases Nos. CV 04-09059 and CV 05-02727)

Dear Diane:

        I am writing to follow up on my January 2 letter regarding Mattel's demands to inspect certain tangible items in response to various requests for production of documents.

        In my January 2 letter, I wrote that I would provide you with further information by today regarding the status of MGA's production in response to Request Nos. 2 and 16 to Mattel's First Set of Requests For Production Re: Claims for Unfair Competition. That information is as follows: MGA has reviewed the nearly 800 items made available thus far for Mattel's inspection and believes that it has substantially completed its production in response to Request No. 16 and has therefore complied with the Discovery Master's August 13, 2007 order. Of course, consistent with its obligations, should MGA identify additional items in the course of ongoing discovery that are responsive to Request No. 16, MGA will promptly make them available for your inspection.

        With respect to Request No. 2, MGA has located additional three-dimensional and two-dimensional responsive items. The three-dimensional items are quite large and extremely difficult to transport and deliver for set up in a downtown Los Angeles office building. Accordingly, we will make those items available for your inspection at MGA's facility in Rialto, California, at a mutually convenient date and time at the end of next week or the following week. We will need to provide the facility at least 48 hours advance notice before you inspect. With respect to the two-

EXHIBIT ____19____

PAGE ____186____

Diane Hutnyan
January 4, 2008
Page 2

dimensional items, we will make those available for your inspection at Skadden's Los Angeles office at a mutually convenient date and time at the end of next week or the following week.

I have not heard back from you regarding the items available for Mattel's inspection in Hong Kong. Accordingly, I understand that you will not be inspecting on January 5, as we offered. As I'm sure you can imagine, MGA's Hong Kong counsel have busy schedules that are filling quickly. Thus, if we do not hear from you soon, we cannot guarantee that counsel's schedule will permit an inspection on January 8, 9 or 10. If you still wish to inspect the items in Hong Kong, please let me know so that we may make appropriate arrangements with Hong Kong counsel.

Lastly, MGA has identified additional items on which it may rely in this action, which may therefore be responsive to Request 166 to Mattel's First Set of Requests For Production to MGA. MGA will make those items available for your inspection and photographing at Skadden's Los Angeles office at a mutually convenient date and time next week. Regarding your inspection of items that our experts intend to rely on, I did not hear back from you regarding my January 2 offer to meet and confer today between 11 a.m. and 4 p.m. I therefore understand that you no longer disagree with MGA's position that such items will be produced before February 11 and that a meet and confer is thus unnecessary. To the extent that my understanding is incorrect, please let me know your availability to meet and confer about the matter next week. As of now, I am available on Tuesday afternoon, January 8, from 3:30 to 5 p.m. I am also generally available on Wednesday, January 9, between 10 a.m. and 5 p.m.

Sincerely,

Amy S. Park

EXHIBIT _____ 19

PAGE _____ 187

**RECEIVED**

**JAN 18 2008**

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500

FAX: (650) 470-4570

www.skadden.com

DIRECT DIAL
650.470.4511

DIRECT FAX
888.329.6334

EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 15, 2008

**By Email and U.S. Mail**

Diane Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:     *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Diane:

This responds to your January 14 letter to Andrew Temkin and me.

With respect to the 16 items in the office's of Hong Kong counsel, we have been informed that a hearing was held last week on MGA's summons to vary the undertaking so that the items may be shipped to the United States. We also have been informed by Hong Kong counsel that the Hong Kong court declined to grant the application at that time and proposed to transfer the matter to the High Court Judges. We understand that if the judges require further information, MGA may be required to be heard again before the judges rule. We are told that the summons judges who handle matters of this type sit every Friday. As I am sure you understand, MGA does not control the speed with which the judges will rule. I have assured you in the past and reiterate now that if the Hong Kong court grants MGA's request to vary the undertaking, MGA will promptly ship all permitted items to the United States for your inspection.

In the meantime, as we have previously and repeatedly offered, you are welcome to inspect the items in the offices of MGA's Hong Kong counsel. We will continue to hold open January 17, the afternoon of January 18 and the morning of January 19 for your inspection, should you choose to perform one. In addition, Hong Kong counsel has advised that you are also welcome to inspect the items on the afternoon of January 23, the morning of January 24 and the afternoon of January 25.

EXHIBIT _____20_____

PAGE _____188_____

Diane Hutnyan
January 15, 2008
Page 2

Please let us know as soon as possible if and when you plan to go to Hong Kong so that we may advise Hong Kong counsel.[1]

With respect to the Bratz molds in Shenzhen, China, further to your request, I am attaching additional images showing the molds from various angles. MGA also has located Prayer Angels molds in Shenzhen. I am attaching images of those items as well so that you can determine whether you would like to inspect them. The images have been Bates labeled as MGA 3787285 through MGA 3787314 and have been stamped "CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Protective Order.

As I explained to you in my January 10 letter, it is neither practical nor reasonable to ship the molds to the United States and doing so would be burdensome. Accordingly, MGA has offered to make the molds available for your inspection in Shenzhen, which is just across the river from Hong Kong. In my email of Sunday, I advised you that MGA would make the Bratz molds available for your inspection on January 15, 16, 17, 21, 23 and 24. You are, of course, welcome to inspect the Prayer Angels molds at the same time. Given the proximity of Shenzhen to Hong Kong, I would suggest that it would be expeditious to conduct your inspections in both places in one trip. Please let us know as soon as possible if and when you plan to go to Shenzhen so that we may advise our colleagues overseas.

Your letter asserts that MGA has not produced a sufficient volume of documents and tangible items or particular items responsive to Mattel's requests that you characterize as calling for documents and tangible items "relating to the origin, creation, design or development of Bratz." In particular, you claim that "MGA has produced nothing from before or after February of 2001." Thus, you suggest that MGA must be knowingly or intentionally withholding those documents and items. That is not the case. I have addressed the completeness of MGA's production in prior correspondence and our position has not changed. MGA has made a diligent, good faith search for documents and tangible items in response to Mattel's various requests. Contrary to your assertion, MGA has produced approximately 3.7 million pages of documents and nearly 800 tangible items, including documents and items dating back to 2000 and 2001. As I have explained to you, some of the material you are seeking is several years old and much of it may have ceased to exist before this action was filed. In light of the foregoing, it is not surprising that the volume of MGA's production of material that you characterize as "relating to the origin, creation, design or development

---

[1] To clarify my January 10 letter, I am informed by Hong Kong counsel that there are 16 items available for your inspection in Hong Kong. All of the items are depicted in the photographs I emailed to you last week (specifically Bratz doll heads, body parts, shoes and deco masks). I am not aware of any other Bratz items subject to an undertaking that are not duplicative of items that have already produced in this case, but will confirm with Hong Kong counsel.

EXHIBIT _____ 20

PAGE _____ 189

Diane Hutnyan
January 15, 2008
Page 3

of Bratz." is not what you would deem to be sufficient.  In any event, MGA continues to conduct a reasonable, good faith search for documents and tangible items, and will continue to produce responsive, non-privileged documents and tangible items as they are located.

As you know, we made print-outs of displays and point-of-sale materials (MGA 3772037 through MGA 3772203) available for your review in Skadden's Los Angeles office last week, and further to your request, we delivered a CD containing those images to your office this afternoon.  We have not heard from you as to whether you would like to inspect the three-dimensional displays that we made available for your inspection in Rialto last week.  I understand from your silence that you are no longer interested in inspecting those items.  Please let me know if I am mistaken.

Lastly, we are continuing to rent the space on the lower plaza of our Los Angeles office building for the remainder of the week for your three-dimensional scanning of items.  Please let us know whether you would like us to attempt to hold that space or whether you have completed your scanning.

Sincerely

Amy S. Park

Attachments (by email only)

EXHIBIT _____ 20
PAGE _____ 190

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 17, 2008

**By Email and U.S. Mail**

Diane Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Diane:

Further to my letter of January 15, we have identified a binder of
material relating to the development of Bratz. You are welcome to come tomorrow and
any day next week to inspect it. Please let me know how you'd like to proceed.

Sincerely,

Amy S. Park

EXHIBIT _____ 20
PAGE _____ 191

JAN 23 2008

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

———

TEL: (650) 470-4500

FAX: (650) 470-4570

www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 21, 2008

**By Email and U.S. Mail**

Diane Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Diane:

MGA has located additional tangible items that are available for your inspection in Skadden's Los Angeles office. You are welcome to come any day this week to inspect them. Please let me know how you would like to proceed.

Sincerely,

Amy S. Park

EXHIBIT 20

PAGE 192