1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
JOHN B. QUINN (State Bar No. 090378)
2 | MICHAEL T. ZELLER (State Bar No. 196417)
JON D. COREY (State Bar No. 185066)
3 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
4 | Telephone: (213) 443-3000; Facsimile: (213) 443-3100

5 | STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG (State Bar No. 048158)
6 | MICHAEL J. NIBORSKI (State Bar No. 192111)
2029 Century Park East, Suite 1600
7 | Los Angeles, California 90067-3086
Telephone: (310) 556-5800; Facsimile: (310) 556-5959
8 | (lacalendar@stroock.com)

9 | Attorneys for MATTEL, INC.

10

11 | UNITED STATES DISTRICT COURT

12 | CENTRAL DISTRICT OF CALIFORNIA

13 | EASTERN DIVISION

14 | CARTER BRYANT, an individual,

15 | Plaintiff,

16 | vs.

17 | MATTEL, INC., a Delaware corporation,

18 | Defendant.

19

20 | AND CONSOLIDATED ACTIONS

| CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant to Court's Order of December 6, 2006]**

**[PUBLIC REDACTED]** MATTEL'S MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

[Pursuant to the District Court's Order of April 14, 2008]

Hearing Date: TBA
Time: TBA
Place: TBA

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that at a conference before Discovery Master Hon.

3  Edward Infante (Ret.) on a date and at a time to be determined, plaintiff Mattel, Inc.

4  ("Mattel") will, and hereby does, move the Discovery Master to reconsider his

5  February 26, 2008 Order Denying Mattel's Motion to Compel Deposition of

6  Christopher Palmeri.

7       This motion is brought pursuant to the District Court's Order of April 14,

8  2008. This motion is also made pursuant to Federal Rules of Civil Procedure 37 and

9  Local Rule 7-18, on the grounds that new material facts have emerged since the time

10  of the Discovery Master's Order that in the exercise of reasonable diligence could

11  not have been known to Mattel at the time of the Order.

12       This motion is based on this Notice of Motion and Motion, the accompanying

13  Memorandum of Points and Authorities, the Declaration of Michael J. Niborski filed

14  concurrently herewith, and all other matters of which the Court may take judicial

15  notice.

16                    STATEMENT OF RULE 7-3 COMPLIANCE

17       The parties met and conferred regarding this motion on April 15, 2008 and

18  thereafter.

19

20  DATED: April 21, 2008          STROOCK & STROOCK & LAVAN LLP
                                   BARRY B. LANGBERG
21                                 MICHAEL J. NIBORSKI

22

23                                 By /s/ Michael J. Niborski
                                        Michael J. Niborski
24                                 Attorneys for Mattel, Inc.

25

26

27

28

07209/2479542.1
                                         - 1 -

1

## **TABLE OF CONTENTS**

2
Page

3

PRELIMINARY STATEMENT............................................................................ 1

4

FACTUAL BACKGROUND .............................................................................. 3

5

LEGAL STANDARDS APPLICABLE TO THIS MOTION ................................. 6

6

IF THE REPORTER'S PRIVILEGE APPLIES HERE, IT MUST YIELD ............... 7

7
8

    A.    Mattel Has Exhausted All Possible Alternative Sources For The Information Sought............................................................................... 8

9
10

    B.    The Information Sought Is Unique, Vital to Mattel's Claims, and Not Cumulative of Any Other Evidence In This Case ......................... 10

CONCLUSION ................................................................................................ 15

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2479542.1

# TABLE OF AUTHORITIES

Page

### Cases

Branzburg v. Hayes
   408 U.S. 665 (1972) ...................................................................................... 12

Shoen v. Shoen,
   5 F.3d 1289 (9th Cir. 1993) ..................................................................... 1, 6, 12

Shoen v. Shoen,
   48 F.3d 412 (9th Cir. 1995) ................................................................................ 6

Smith v. Massachusetts,
   543 U.S. 462 (2005) .......................................................................................... 5

In re Vmark Software, Inc.,
   1998 WL. 42252 (E.D. Pa. 1998) ..................................................................... 7

### Statutes

Federal Rules of Civil Procedure 54(b) ................................................................... 5

### Other Authorities

Local Rule 7-18(a) ................................................................................................... 5

Local Rule 30(b)(6) .................................................................................... 1, 8, 9, 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Mattel seeks the limited deposition of Christopher Palmeri to obtain admissible evidence that Isaac Larian represented to BusinessWeek – and the world – in July 2003 that he "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers." The Discovery Master denied Mattel's motion to compel this deposition, finding that Mattel did not satisfy the Shoen test for overcoming the reporter's privilege because Mattel had not exhausted other sources of information about the statement.

Since the Discovery Master's order, Mattel has deposed Larian (who had, yet again, flatly refused to appear until ordered to do so). Mattel asked Larian whether he made the statements reported in BusinessWeek. Larian testified that he did not recall the BusinessWeek interview or his statements to Mr. Palmeri. Moreover, David Malacrida (MGA's spokesman) and a Rule 30(b)(6) witness designated by MGA to testify about the BusinessWeek article had no information, and they confirmed that the only participants in the interview were Larian and Palmeri. Mattel has clearly exhausted alternative sources for the testimony it seeks from Mr. Palmeri.

Larian was deposed on March 26, 2008, after the Discovery Master's ruling and while Mattel's objections to the ruling were being briefed before Judge Larson. Mattel submitted the testimony of Larian, along with that of Malacrida and the MGA Rule 30(b)(6) witness, to Judge Larson. At oral argument, Judge Larson expressed the view that Mattel had exhausted alternative sources. The Court observed, "I don't know what more [Mattel] can do to try to ascertain the particular information related to the intentional concealment issue." The Court found, however, that the issue should now be presented to the Discovery Master on a motion for reconsideration.

07209/2479542.1

- 1 -

1 | Larian's testimony confirmed that no source other than Mr. Palmeri is
2 | available to establish that Larian asserted to Mr. Palmeri and the readers of
3 | BusinessWeek (which publishes 900,000 copies per week) that Larian "got the idea
4 | for Bratz after seeing his own kids run around in navel-baring tops and hip-
5 | huggers." No one else has knowledge regarding this statement because, as MGA's
6 | witnesses have confirmed, only Larian and Palmeri attended the interview. Palmeri
7 | is the only witness to a false representation by Larian about the origins of Bratz that
8 | was read by hundreds of thousands of people throughout the world and is <u>central</u> to
9 | this lawsuit.

10 | Moreover, even if Larian made similar statements about Bratz to others, those
11 | witnesses would <u>not</u> be alternative sources, and Mr. Palmeri's testimony is not
12 | cumulative or merely impeachment. The fact that Larian made the statements <u>to the</u>
13 | <u>world</u> – through Mr. Palmeri – makes those particular statements unique.
14 | Testimony by others who did not hear what Larian said to Mr. Palmeri cannot
15 | establish that Larian was publicly insisting at that time that he (Larian) was the
16 | creator of Bratz – when the truth was that Carter Bryant invented Bratz.

17 | Larian's false statements to Mr. Palmeri also show a deliberate plan to cover
18 | up Bryant's involvement because Larian and MGA <u>knew</u> that <u>Mattel</u> owned Bratz.
19 | Each false statement therefore is independently relevant and goes directly to MGA's
20 | guilty knowledge. The jury is entitled to learn about all of Larian's statements
21 | because they collectively establish that these assertions were intentionally made
22 | (and the reporters and others did not misunderstand or misquote Larian) to hide the
23 | fact that Bratz were created by a Mattel employee.

24 | Thus, Mr. Palmeri has unique possession of evidence for trial that is critical to
25 | Mattel's affirmative claim of ownership and Larian, Bryant and MGA's statute of
26 | limitations and laches defenses. Indeed, even as the Wall Street Journal was
27 | reporting that Bryant created Bratz as part of a contest at MGA in 1999 (while
28 | Bryant was employed by Mattel), Larian was telling BusinessWeek something

1  completely different – that he invented Bratz, inspired by his own children.  The
2  only person who can provide admissible evidence of Larian's false claim is
3  Mr. Palmeri.  Larian has now confirmed this, and Mattel respectfully requests that
4  the Discovery Master reconsider his ruling of February 26, 2008.

5  ## FACTUAL BACKGROUND

6       Mr. Palmeri is a reporter for BusinessWeek.  In July 2003, he authored an
7  article entitled "To Really Be A Player, Mattel Needs Hotter Toys" (the "Article").
8  The Article contains several statements by Isaac Larian, including the following:

9
10            Mattel won't live or die on every new toy it develops.  But
              it can't just rely on Barbies, either.  "Like they say in
              business school – no risk, no reward," says Isaac Larian,
11            CEO of privately held MGA.  He should know:  He got the
              idea for Bratz after seeing his own kids run around in
12            navel-baring tops and hip-huggers.[1]

13
14       Mattel served Mr. Palmeri with a deposition subpoena on July 25, 2007, in
15  order to obtain testimony about Larian's statements in the Article.[2]  Although Mattel
    offered to limit the deposition's scope and agree to a convenient location for the
16  deposition, counsel for Mr. Palmeri and BusinessWeek refused to make Mr. Palmeri
17  available for deposition under any circumstances.[3]
18
19       On January 7, 2008, the Court granted Mattel's Motion for Leave to Take
20  Additional Discovery in this action, expressly finding that Mattel was entitled to
21
22
23
   _____
24  [1]  Declaration of Michael J. Niborski, dated April 21, 2008 ("Niborski Dec."),
    ¶ 2, Ex. 1 (Article), filed concurrently herewith.
25  [2]  Niborski Dec., Ex. 2 (Subpoena in a Civil Case, dated July 25, 2007).
26  [3]  The events leading up to the initial motion are described in the Declaration of
27  Michael J. Niborski, dated January 20, 2008, which is attached to the Niborski Dec.
    as Exhibit 17.
28

1  take Mr. Palmeri's deposition.[4]  Mr. Palmeri continued to refuse to appear for
2  deposition.  Mattel filed a motion to compel the deposition with the Discovery
3  Master on January 21, 2008.  Mattel argued that the qualified federal reporter's
4  privilege did not apply to the statements regarding which Mattel sought testimony
5  and, even if it did, the privilege must yield in these particular circumstances.[5]

6      On February 26, 2008, without oral argument, the Discovery Master entered
7  an order denying Mattel's motion to compel.  The Discovery Master applied the
8  federal reporter's privilege and found that Mattel had not satisfied the factors
9  necessary to overcome that privilege.[6]

10     On March 11, 2008, Mattel filed a Motion Objecting to Discovery Master's
11 February 26, 2008 Order Denying Mattel's Motion to Compel Deposition of
12 Christopher Palmeri.  On March 26, 2008, while that motion was being briefed,
13 Mattel deposed Larian for a second day, and asked him a series of questions about
14 the BusinessWeek interview and the statements in the article.[7]  Larian said he did
15 not recall the interview or his statements to Mr. Palmeri.[8]

16

17

18  [4]  Niborski Dec., Ex. 3 (Order Granting In Part And Denying In Part Mattel's
    Motion For Leave To Take Additional Discovery, dated January 7, 2008; Order
19  Amending Court's Minute Order of January 7, 2008).

20  [5]  Niborski Dec., Ex. 18 (Motion to Compel Deposition of Christopher Palmeri).

21  [6]  Niborski Dec., Ex. 4 (Discovery Master's February 26, 2008 Order Denying
    Mattel's Motion to Compel Deposition of Christopher Palmeri ("February 26
22  Order")), at 4.

23  [7]  The delay in this deposition until after the February 26, 2008 Order was not of
24  Mattel's doing.  Larian was made available for deposition in late March 2008 only
    after Mattel brought and won a motion to compel before the Discovery Master.  See
25  Niborski Dec. Ex. 19 (Order Granting in Part Mattel's Motion to Compel the
26  Continued Deposition of Isaac Larian).

27  [8]  Niborski Dec., Ex. 7 (Larian Depo. Tr., at 265:12-268:22; 271:8-273:5; 274:9-
    275:6).

28

- 4 -

1    Given that Mattel's objections to the February 26, 2008 Order were pending

2  before Judge Larson, Mattel submitted to Judge Larson the transcript of Larian's

3  testimony, and the testimony of two other MGA witnesses, MGA spokesman David

4  Malacrida and its <u>Rule</u> 30(b)(6) designee, Sam Khare.[9]

5    At the hearing on Mattel's objections, on April 14, 2008, Judge Larson

6  considered what efforts Mattel had made to exhaust all available resources to verify

7  the statements made to Mr. Palmeri:

8        You know, part of what Judge Infante found was, and kind
         of the bottom line was – I think the phrase he used was
9        that Mattel had not "plumbed the depths." And to think
10       that anybody has not plumbed the depths in this case is
         somewhat – causes one to pause.
11

12       But, fair enough, they had not plumbed the depths at that
         point, and I think that may have been a valid contention or
13       finding by Judge Infante in February. <u>But we do have</u>
14       <u>subsequent information, subsequent efforts, by Mattel.</u>
         <u>I don't know what more they can do to try to ascertain the</u>
15       <u>particular information related to the intentional</u>
16       <u>concealment issue.</u>[10]

17    Judge Larson asked Mr. Palmeri's counsel to identify what more Mattel

18  should be required to do to "plumb the depths." Mr. Palmeri's counsel did not

19  dispute that Mattel had deposed everyone at MGA who might have knowledge of

20  that particular statement. He suggested that Mattel should be required to depose

21

22    [9] Mattel informed Palmeri's counsel of this additional submission in advance,
23  and the parties met-and-conferred again, without success. <u>See</u> Niborski Dec., Ex. 21
    (Second Supplemental Declaration of Michael J. Niborski in Support of Mattel,
24  Inc.'s Notice of Motion and Motion Objecting to Discovery Master's February 26,
25  2008 Order Denying Mattel's Motion to Compel Deposition of Christopher Palmeri,
    dated April 3, 2008).
26
    [10] Niborski Dec., Ex. 5 (April 14, 2008 Reporter's Transcript of Proceedings,
27  Hearing, at 12:10-21) (emphasis added).

28

1  toy industry analysts, investors and publicists to see whether Larian had made
2  similar statements to them.[11]

3      In an order entered after the hearing, Judge Larson denied the motion and
4  instructed Mattel to bring the question back to the Discovery Master:

> The Discovery Master's order was not contrary to law or clearly erroneous at the time it was entered. Mattel has subsequently produced new evidence and new theories for why deposition of Mr. Palmeri is warranted, none of which were presented to the Discovery Master prior to his ruling. Rather than allowing Mattel to call into question the correctness of the Discovery Master's order by submitting newly discovered information that was not presented to him, the Court finds the better practice is to require Mattel to first present that newly discovered information to the Discovery Master in the form of a motion for reconsideration.[12]

    Accordingly, Mattel seeks reconsideration of the Discovery Master's February 26, 2008 order and requests that the Discovery Master order that Mr. Palmeri submit to deposition.

## LEGAL STANDARDS APPLICABLE TO THIS MOTION

    The Discovery Master is empowered by the District Court to decide matters falling within the Stipulation for Appointment of a Discovery Master, and therefore may reconsider or modify his February 26, 2008 Order. See Smith v. Massachusetts, 543 U.S. 462, 475 (2005) ("'[A] district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment.'"); see also Fed. R. Civ. P. 54(b) ("any order or other form of decision . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties"); Local Rule 7-18(a) (reconsideration is an appropriate remedy where there is "a material difference in fact or law from that

---

[11] Id., at 13:14-14:21.

1 | presented to the Court before such decision that in the exercise of reasonable
2 | diligence could not have been known to the party moving for reconsideration at the
3 | time of such decision.").

4 | **IF THE REPORTER'S PRIVILEGE APPLIES HERE, IT MUST YIELD**

5 | A limited deposition to authenticate a published statement does not
6 | undermine the integrity of the newsgathering process or inhibit the free flow of
7 | information to the public. The instances in which the Ninth Circuit has held that the
8 | privilege applies – to protect non-public information – stand in stark contrast to the
9 | limited deposition Mattel seeks here. While a reporter might be hampered in his or
10 | her ability to gather information if forced to reveal the identity of confidential
11 | sources or research materials, that is not what Mattel seeks here. Mattel simply
12 | seeks Mr. Palmeri's confirmation under oath of important statements by Larian that
13 | were disseminated to the world.

14 | Under <u>Shoen v. Shoen</u>, 5 F.3d 1289 (9th Cir. 1993), ("<u>Shoen I</u>") and <u>Shoen v.</u>
15 | <u>Shoen</u>, 48 F.3d 412 (9th Cir. 1995) ("<u>Shoen II</u>"), the qualified federal journalist's
16 | privilege yields where the requested evidence is: "(1) unavailable despite the
17 | exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly
18 | relevant to an important issue in the case." <u>Schoen II</u>, 48 F.3d at 416.[13] Since the
19 | Discovery Master's February 26, 2008 Order, the state of the evidence has changed
20 | and Mattel now meets the <u>Shoen</u> standard.

---

21 | [12] Niborski Dec., Ex. 6 (Civil Minutes, April 14, 2008), at 2 (original emphasis).
22 | [13] Mattel maintains that the journalist's privilege does not apply at all to the
23 | statements by Larian in BusinessWeek, and is unavailable to Mr. Palmeri, because
   | Mattel is seeking verification of published information. The plain language of the
24 | Article and the context of the words used make clear that Larian told Mr. Palmeri
25 | that he (Larian) "got the idea for Bratz after seeing his own kids run around in
   | navel-baring tops and hip-huggers." This statement follows immediately from a
26 | direct quote of Larian. Solely for this motion, Mattel does not challenge the
27 | (footnote continued)

28 |

1     **A.     Mattel Has Exhausted All Possible Alternative Sources For The**
2             **Information Sought**

3         The Discovery Master previously found that Mattel was not entitled to depose
4   Mr. Palmeri because it had not exhausted all reasonable alternative sources and
5   could obtain the information sought by deposing Larian and exhausting Larian's
6   recollection of his communications with Palmeri.[14]  Since the Discovery Master's
7   February 26, 2008 Ruling, Mattel has deposed Larian about his statements to
8   Mr. Palmeri.[15]

9         Larian testified that he did not recall making the statements in
10  BusinessWeek.[16]  Larian did not deny that he might have made the statements.  This
11  is consistent with defendants' evasive responses throughout discovery in this case
12  regarding the statements in the Article.  Only Mr. Palmeri can provide the objective,
13  credible testimony that Mattel needs regarding Larian's statements in July 2003.  See
14  In re Vmark Software, Inc., 1998 WL 42252 at *2 (E.D. Pa. 1998) (where plaintiff
15  sought deposition testimony and documents from a reporter regarding a published
16  interview with the defendant, the reporter was "the only access to this information").

17        The Discovery Master also noted that "[t]here may be other witnesses with
18  whom Larian may have discussed the origins of Bratz dolls, such as co-workers,

19

20  ─────────────────────────────────────────────
    Discovery Master's implicit holding in the February 26, 2008 Order that the
21  qualified privilege is available to Mr. Palmeri in this context.
       [14]  Niborski Dec., Ex. 4 (February 26, 2008 Order, at 6).
22

23     [15]  Mattel's inability to depose Larian earlier on the full scope of the allegations
    now being made in this case was attributable solely to MGA's refusal to produce
24  him.  Mattel had to file yet another motion to compel against Larian.  After Mattel
25  won, MGA belatedly made Larian available on March 26, 2008.  See Niborski Dec.,
    Ex. 19 (Order Granting in Part Mattel's Motion to Compel the Continued Deposition
26  of Isaac Larian).

27     [16]  Niborski Dec., Ex. 7 (Larian Depo. Tr. at 268:4-17).

28

1  publicists or industry analysts."[17]  However, Mattel does not seek to authenticate the
2  statement Larian made to Palmeri simply to show that Larian discussed the origins
3  of Bratz with people, or even that he gave similar false statements about Bratz in
4  other circumstances.[18]  Rather, Larian's statement to <u>Palmeri</u> is unique evidence of
5  defendants' deliberate concealment of "Bryant's role in Bratz by falsely claiming
6  publicly that Larian and others were the creators of Bratz" – which is the subject of
7  specific allegations in Mattel's claims in this case.[19]  This concealment included a
8  false claim that Larian made <u>to the world</u> in July 2003 – with the assistance of the
9  largest business magazine in the country.  MGA's designated witness testified that
10  no one else was present for the interview.[20]  Given that Larian professes that he does
11  not remember his statements to Mr. Palmeri, and MGA cannot confirm them, the
12  only witness who can verify Larian's statements to BusinessWeek is Mr. Palmeri.

13  _____

[17]  Niborski Dec., Ex. 4 (February 26 Order, at 6).

[18]  Mattel is not required to depose countless unknown witnesses on the off-
chance that Larian said something similar to what he told Palmeri.  First, whether
Larian made the same or similar statements to other people is not the fact Mattel
seeks to establish.  Mattel needs to obtain admissible evidence that Larian made that
particular statement to Mr. Palmeri, as a BusinessWeek reporter, with the
understanding that the statement would be publicly reported.  Mattel is aware of no
case requiring a litigant to depose numerous persons to determine if a similar
statement had been made to <u>other</u> people.

[19]  Niborski Dec., Ex. 8 (Mattel, Inc.'s Second Amended Answer in Case No. 05-
2727 and Counterclaims, dated July 12, 2007, ¶ 35).

[20]  MGA designated and Mattel deposed a <u>Rule</u> 30(b)(6) witness on the
statements in Mr. Palmeri's article.  MGA's designee testified that he did not know
who provided the information to Mr. Palmeri, but that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮" Niborski Dec., Ex. 9 (Khare
Depo. Tr. at 718:24-719:20).  According to MGA's <u>Rule</u> 30(b)(6) designee,
Malacrida was not present when statements were made to Mr. Palmeri.  <u>Id.</u> at 719:8-
719:20.  Malacrida confirmed this at his deposition, and testified that he spoke with
(footnote continued)

28

1 │ Therefore, Mattel should be permitted to obtain admissible, critical evidence from
2 │ the only person who has it:  Mr. Palmeri.

3 │ **B.**   **The Information Sought Is Unique, Vital to Mattel's Claims, and**
4 │ **Not Cumulative of Any Other Evidence In This Case**

5 │        Larian's statement that "[h]e got the idea for Bratz after seeing his own kids
6 │ run around in navel-baring tops and hip-huggers" is critical to Mattel's allegation
7 │ that Larian affirmatively covered up Bryant's involvement by telling a reporter for
8 │ the nation's most popular business magazine in July 2003 – when the Wall Street
9 │ Journal was reporting something completely different[21] – that he (Larian) invented
10 │ Bratz.

11 │        The concealment of Bryant in the BusinessWeek article is <u>not</u> cumulative of
12 │ any other evidence in the case.[22]  No one else has ever testified about Larian's public
13 │ claim that he was inspired to create Bratz by seeing "his own kids run around in
14 │ navel-baring tops and hip-huggers" – rather than obtaining Bratz from a Mattel
15 │ employee, Carter Bryant.  Mattel is unaware of any other similar published
16 │ statement – and neither Mr. Palmeri nor the defendants have identified one to the
17 │ Court.

18 │        Mattel's primary purpose in obtaining Mr. Palmeri's testimony is not for
19 │ impeachment evidence of Larian's inconsistent statements regarding the origins of
20 │ Bratz.  Mattel is seeking Mr. Palmeri's testimony because verification that Larian
21 │ made the statement in the Article regarding the origins of Bratz is relevant to both

22 │ ────────────────
Mr. Palmeri only to arrange the interview of Larian.  Niborski Dec., Ex. 10
23 │ (Malacrida Depo. Tr. at 194:20-196:24).
24 │    [21] <u>See</u> Niborski Dec., Ex. 11 (Wall Street Journal Article, dated July 18, 2003).
25 │    [22] And Larian's assertion to Mr. Palmeri that he invented Bratz after watching
his children is far different than the claims made to other reporters, such as Denise
26 │ O'Neal of the Chicago Sun-Times, who reported in March 2004 about Larian's shift
27 │ (footnote continued)
28 │

1  the concealment of the true origins of Bratz, as well as defendant's contention that
2  Bryant's involvement in Bratz was publicly acknowledged no later than the Wall
3  Street Journal article of July 18, 2003. This is relevant to defendants' guilty
4  knowledge and intent, which are elements of Mattel claims against MGA, and to
5  MGA's fraudulent concealment, which is relevant to MGA's statute of limitations
6  defense. Indeed, as noted above, defendants' deliberate concealment of "Bryant's
7  role in Bratz by falsely claiming publicly that Larian and others were the creators of
8  Bratz" is itself the subject of specific allegations in Mattel's claims in this case.

9      Mr. Palmeri's testimony goes to the very heart of Mattel's case and cannot be
10  replaced by any other available evidence. Mattel alleges that "Bryant and MGA
11  _deliberately and intentionally_ concealed facts sufficient for Mattel to suspect or to
12  know that it was the true owner of Bratz," including by "concealing Bryant's role in
13  Bratz by falsely claiming that Larian and others were the creators of Bratz."[23]
14  Larian's statements to the press, asserting how and when "he" came up with Bratz, is
15  highly relevant to demonstrate defendants' intent to deceive the world and Mattel
16  about the true origin of Bratz, and Bryant as creator. Larian and MGA did not want
17  Mattel to learn that Bryant had come up with Bratz or investigate the timing of
18  Bryant's creation of Bratz _because defendants knew they had stolen Bratz from_
19  _Mattel_. Larian was making false statements to the press because he knew Mattel
20  owned Bratz, and he did not want the world, and Mattel, to know the truth.

21      The statements that Larian made to Mr. Palermi are unique in that they were
22  made to a reporter who was going to send these statements out to the world. They
23  are not equivalent to statements Larian might have made to someone else, or even if
24  he shouted the very same words on a crowded street corner.

25  _____
26  of MGA's product focus and the source of the "Bratz" name. Niborski Dec., Ex. 12
    (O'Neal Depo. Tr. at 9:22-12:11).
27
28

1       Further, the statements to Mr. Palmeri are not cumulative because they were
2   part of a course of conduct that is central Mattel's claims in this lawsuit.  That Larian
3   made these statements to Mr. Palmeri (and other false statements to others) shows
4   that they were not a mistake, or a misunderstanding, or a misquotation.  The
5   statements (including those made to BusinessWeek) show that defendants
6   consistently sent out to the world a variety of stories about Bratz origins over the
7   course of several years, none of which made mention of Bryant.  The statements
8   made to Mr. Palmeri – statements that only Mr. Palmeri can verify – are direct and
9   highly persuasive evidence of intentional, deliberate, consistent conduct calculated
10  to hide Bryant's involvement in Bratz.

11      To prove this at trial, Mattel must obtain admissible evidence (not hearsay)
12  that Larian did in fact make the statements Mr. Palmeri included in his article.
13  MGA undoubtedly will take the position that Mattel cannot simply introduce the
14  BusinessWeek article at trial to establish the truth of its contents – i.e., that Larian
15  told Palmeri that he (Larian) got the "idea for Bratz" by watching his children.
16  Moreover, Mattel must present strong and unequivocal evidence – which only
17  Mr. Palmeri can provide.  Defendants want to create ambiguity and cast doubt on
18  the accuracy of the media reports, which they previously sought to do by attacking
19  the Wall Street Journal reporter's ability to understand Mr. Larian's English.[24]

20      The content of the BusinessWeek article, which appeared in the July 28, 2003
21  edition, is particularly important because Larian's statements contradict defendants'
22  assertion in this litigation that the Wall Street Journal article conclusively
23  established Mattel's knowledge of a contract-based claim against Bryant.  (The
24  BusinessWeek article appeared within a few days of the Wall Street Journal article,

25
26
_____
[23]  Niborski Dec., Ex. 8 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶ 35) (emphasis added).

27
28

1  given that weekly magazines are distributed at least one week before their cover
2  date.)

3       Throughout this litigation, MGA has claimed that the Wall Street Journal
4  article is important evidence demonstrating that Mattel had knowledge of its claims
5  at least as early as July 2003.  For example, in opposition to Mattel's motion to
6  remand, MGA argued that the article proved that by July 2003 Mattel believed
7  Carter Bryant had copied a Mattel product in creating Bratz.[25]  In a May 17, 2006
8  letter sent to Mattel's counsel, MGA again stressed the purported importance of the
9  Wall Street Journal article in "foreshadowing Mattel's belief with regard to its core
10  contention in this case."[26]  And, in a motion to compel, MGA claimed that Mattel's
11  knowledge regarding the Wall Street Journal article "is vital to Defendants' laches
12  defense."[27]  Indeed, the Wall Street Journal article is so important to MGA and
13  Bryant that they insisted that Mattel provide a witness about the article under <u>Rule</u>
14  <u>30(b)(6)</u>.[28]

15       What Larian was telling Palmeri (and the public) in the summer of 2003 about
16  the invention of Bratz is no less important to Mattel's claims than the Wall Street
17  Journal article is to the defenses asserted by MGA and Bryant.

18  _____

19  [24]  Niborski Dec., Ex. 20 (Deposition of Maureen Tkacik, dated September 28, 2007, at 37:12-38:2).

20  [25]  Niborski Dec., Ex. 13 (Defendant Carter Bryant's Opposition to Plaintiff
21  Mattel, Inc.'s Motion to Remand, dated December 22, 2004, at 3-5); Niborski Dec.,
   Ex. 14 (Defendant in Intervention MGA Entertainment, Inc.'s Joinder in Defendant
22  Carter Bryant's Opposition to Plaintiff Mattel, Inc.'s Motion to Remand, dated
23  December 22, 2004).

24  [26]  Niborski Dec., Ex. 15 (Letter from Ambrosini to Zeller, dated May 17, 2006, at p. 4).

25  [27]  Niborski Dec., Ex. 16 (MGA Entertainment, Inc.'s and Carter Bryant's Joint
26  Notice of Motion to Compel Re: Mattel's Bandying of 30(b)(6) Witnesses, dated
   September 6, 2007, at p. 12).

27  [28]  <u>Id.</u>

28

1    The importance of Larian's public claim to be the inventor of Bratz nearly
2  three years after Bryant brought Bratz to MGA from Mattel cannot be overstated. It
3  bears directly on Mattel's claims that defendants concealed Bryant's disloyalty and
4  defendants' theft, as well as MGA and Bryant's statute of limitations and laches
5  defenses – issues that are central to this case and were heavily briefed in the parties'
6  pending motions for summary judgment.

7    Mr. Palmeri reported what Larian told him, and admissible evidence of that
8  statement is necessary for fair consideration by the jury of whether defendants
9  endeavored to conceal the origins of Bratz. In this situation, where no privileged
10  information is being sought by Mattel, Palmeri's testimony falls within the "broad
11  right of discovery . . . based on the general principle that litigants have a right to
12  'every man's evidence.'" Shoen I, 5 F.3d at 1292 (quoting United States v. Bryan,
13  339 U.S. 323, 331 (1950)).

14    In his deciding concurrence, Justice Powell in Branzburg v. Hayes made clear
15  that a claim by a journalist of privilege must always be evaluated in light of the
16  surrounding facts. There is no blanket protection that permits a reporter to refuse to
17  testify. "The balance of these vital constitutional and societal interests on a case-by-
18  case basis accords with the tried and traditional way of adjudicating such questions."
19  408 U.S. 665, 709-10 (1972) (Powell, J., concurring). The scale here requires
20  Mr. Palmeri to submit to the very limited deposition sought by Mattel. Mattel's
21  need for admissible evidence of Larian's statements far outweighs any interest Mr.
22  Palmeri might claim in not confirming, in a half-hour deposition, the accuracy of
23  published statements by Larian about the origins of Bratz.

24  / / /
25  / / /
26  / / /
27
28

1   ## CONCLUSION

2   For the foregoing reasons, Mattel respectfully requests that the Discovery

3   Master reconsider his February 26, 2008 Order and compel Christopher Palmeri to

4   appear for deposition.

5   DATED:  April 21, 2008          STROOCK & STROOCK & LAVAN LLP
6                                   BARRY B. LANGBERG
                                    MICHAEL J. NIBORSKI
7

8                                   By /s/ Michael J. Niborski
9                                         Michael J. Niborski
10                                  Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -
MATTEL'S MOTION FOR RECONSIDERATION OF ORDER RE PALMERI DEPOSITION