# EXHIBIT 1

The Corporation: COMMENTARY
TO REALLY BE A PLAYER, MATTEL NEEDS HOTTER TOYS

By Christopher Palmeri
1,151 words
28 July 2003
BusinessWeek
64
Number 3843
English
(Copyright 2003 McGraw-Hill, Inc.)

The Bratz pack has invaded the Gabriele house. The line of trendy dolls burst on the scene two years ago,
offering girls a hipper alternative to that old standby, Barbie. Think Jennifer Lopez to Barbie's Reese
Witherspoon. Joan Gabriele, a Hollywood (Fla.) mother of two, now has eight Bratz dolls in her home. Her
daughters, ages 6 and 8, rarely touch their Barbies. "Barbie is pretty much a thing of the past," she says.
"They like Bratz better."

That's bad news for Barbie's maker, Mattel Inc. -- and for the three-year-old turnaround efforts of CEO Robert
A. Eckert, the ex-president of Kraft Foods Inc. who replaced the embattled Jill E. Barad. The El Segundo (Calif.)
toy giant counts on Barbie for about one-third of its revenues and more of its profits. But Mattel says U.S. Barbie
sales declined 2% last year and 14% in this year's first quarter. The overall doll category, says market
researcher NPD Group Inc., dropped only 3% in the quarter.

Give Eckert, 48, his due: He pulled Mattel out of its tailspin after its disastrous $3.8 billion acquisition of
Learning Co. He got rid of the money-losing computer-game maker and slashed costs. His goal: to bring the
stability of a consumer-products company to the hit-driven toymaker. And using such practices as computer-
aided design to speed up product development and just-in-time inventory management, he succeeded.

But now it looks like Eckert is learning a valuable lesson: Mattel is selling toys, not soap or cornflakes. Good
brand management goes only so far in a business that caters to children's whims. Like it or not, the key to
success is launching innovative products and promoting the heck out of them. If you don't do it, your
competitors will.

Eckert's strategy has been great for Mattel's bottom line. Profits last year, before special charges, were a

© 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva).

EXHIBIT 1

PAGE 5

healthy $455 million, and the stock has nearly doubled, to $20, since Eckert arrived in May, 2000. But top-line
growth has sputtered. U.S. revenues, $3.4 billion in 2002, have declined marginally in the past few years. Total
2002 sales of $4.9 billion crept up from $4.6 billion in 2000 -- thanks to overseas expansion.

While Eckert continues to build on the massive Barbie franchise that Barad constructed, he now knows that he
needs hot new toys. Recycling old characters like Sesame Street's Elmo just won't be enough. "We need to do
a better job on the top line," he says. "The good news is, it's only spring training, and we have a long season
ahead of us."

To that end, Eckert has begun an ambitious push. Between now and Christmas, he hopes to launch 250 new
toys, including dozens of Hot Wheels models and Flavas, a Bratz-like hip-hop posse with baggy jeans and
serious bling-bling. Originally, half of these toys weren't scheduled until 2004.

That should help boost sales. But it's even more important that Mattel prove it can respond to nimble upstarts
as well as traditional big rivals like Hasbro Inc. After all, it took the company more than a year to launch a
competitor to MGA Entertainment's Bratz. My Scene Barbie didn't hit stores until last October and has yet to
make a dent in Bratz's success. At its Santa Monica (Calif.) store recently, Toy 'R' Us Inc. devoted just a sliver
of the shelf space to My Scene that it did to Bratz. And My Scene dolls were being offered at 2 for 1. "It's not
really catching ground," says Sean P. McGowan, toy industry analyst at Harris Nesbitt Gerard Inc. Mattel will
start tossing in a cell phone with 300 free minutes if you buy four of the $13.99 dolls. It also plans to add
accessories and boy versions -- Hudson, River, and Bryant.

Barbie isn't the only Mattel stalwart under attack. Its Fisher-Price unit, long the king of preschool, is losing sales
to newcomer LeapFrog Enterprises Inc., whose electronic interactive books have captured 19% of the $2.9
billion preschool toy and electronic learning aid markets. Eckert is counting on a successful launch in August for
PowerTouch, Mattel's version of LeapFrog's popular interactive book. PowerTouch is operated by pointing a
finger at an image or a word, instead of the stylus used in LeapFrog's original products. That's key for younger
kids. "It's much easier for her to use," says Christopher Coye, a Los Angeles-area parent whose 4-year-old
tested a PowerTouch. Still, LeapFrog releases a finger-operated system in August, too.

Over the long term, Eckert puts at risk one of the strongest toy companies around if he can't instill innovation
and rapid reaction in his much-lightened organization. To his credit, he is making it crystal clear that he doesn't
want ideas to linger in the pipeline. When Matchbox brand managers mentioned this year that they had
designed a toy firehouse that could be shipped with no assembly required, Eckert told them to get it out by fall.
"Why wait?" he says. "If you've got it, sell it." And not a moment too soon: Sales of Mattel's Hot Wheels and
Matchbox cars fell 6% in the first quarter, thanks to competition for boys' attention from action figures like
Hasbro's resurgent G.I. Joe and Transformers.

    © 2003 Dow Jones Reuters Business Interactive LLC (trading as Factiva).

EXHIBIT ___1___

PAGE ___6___

The question is how much Eckert needs to tweak his model. He probably cut back too much, for instance, on marketing. In 1998, Mattel's advertising and promotional spending totaled $631 million, or 13.8% of sales. By last year, it had fallen to $552 million, or 11.2% of sales. Aggressive television marketing boosted sales of Hot Wheels cars in Spain last year, and a strong new campaign could help Mattel toys here.

Mattel won't live or die on every new toy it develops. But it can't just rely on Barbies, either. "Like they say in business school -- no risk, no reward," says Isaac Larian, CEO of privately held MGA. He should know: He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers. As Eckert is finding out, sometimes the best ideas are right in front of you.

```
First Came Bratz...
MAKER      MGA Entertainment
DEBUT      2001
NAMES      Yasmin, Sasha, Cloe, Jade, and Meygan
MOTTO      The girls with a passion for fashion
HER RIDE   Late-night stretch limo
Data: MGA Entertainment, Mattel
...Then, My Scene Barbie
MAKER      Mattel
DEBUT      2002
NAMES      Barbie, Madison, Chelsea, and Nolee
MOTTO      My city. My style. My scene.
HER RIDE   Vespa motorscooter
Data: MGA Entertainment, Mattel
```

Palmeri covers toys from Los Angeles.

Document bw00000020030724dz7s0001w

 © 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

EXHIBIT __1__

PAGE __7__

# EXHIBIT 2

AO88 (Rev. 12/06) Subpoena in a Civil Ca...

**Issued by the**

# UNITED STATES DISTRICT COURT

<u>Central</u> DISTRICT OF <u>California</u>

MATTEL, INC., a Delaware Corporation

### SUBPOENA IN A CIVIL CASE

V.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number:[1] CV 04-9059 NM (RNBx)
Consolidated with cases
CV 04-9049 and CV 05-2727

TO: Christopher Palmeri c/o Business Week
3333 Wilshire Blvd., Suite 500
Los Angeles, CA 90010

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. Testimony will be recorded stenographically and by videographer.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | September 4. 2007 9:30 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | August 28, 2007 9:30 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff, Mattel, Inc. | July 25, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Timothy L. Alger, QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017    (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

**EXHIBIT** 2

**PAGE** 8

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

| SERVED | | |
|---|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT __2__

PAGE __9__

<u>ATTACHMENT A</u>

<u>Documents To Be Produced</u>

I.   <u>DEFINITIONS</u>

      1.    "YOU" or "YOUR" means Christopher Palmeri, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

      2.    "LARIAN" means Isaac Larian and his representatives and agents.

      3.    "ARTICLE" means the article bearing YOUR byline published in the Business Week edition dated July 28, 2003, bearing the headline, "To Really Be A Player, Mattel Needs Hotter Toys."

      4.    "DOCUMENT" means any "writing" or "recording" as defined in <u>Federal Rule of Civil Procedure</u> 34 or <u>Federal Rule of Evidence</u> 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, optical storage disk, other electronic media, and all other writings and recordings of any kind.

      5.    "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing, constituting, or indicating in any way.

      6.    Wherever used herein, the singular shall include the plural and the plural shall include the singular.

II.   <u>INSTRUCTIONS</u>

      A.    YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

      B.    If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such

07975/2176044.1

- 1 -

ATTACHMENT A

EXHIBIT _2_

PAGE _10_

DOCUMENTS identify each DOCUMENT and provide the following information:

      1.     The privilege or protection that you claim precludes disclosure;

      2.     The subject matter of the DOCUMENT;

      3.     The date, author(s), addressee(s); and

      4.     Any additional facts on which YOU would base YOUR claim of privilege or protection.

      C.     YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

      D.     YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

      E.     Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

III.     **DOCUMENTS TO BE PRODUCED.**

      All DOCUMENTS REFERRING OR RELATING TO statements made to YOU by LARIAN during YOUR research for the ARTICLE.

ATTACHMENT A

EXHIBIT   **2**

PAGE   **11**

AO88. (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 7/25/2007 | 3333 Wilshire Boulevard, #500<br>Los Angeles, CA 90010 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| CHRISTOPHER PALMERI<br>(Witness Fee Paid $49.02) | Personal<br>(Served 7-25-07, 3:57 p.m.) |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Rayn Jerez | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____7/26/2007_____
DATE

SIGNATURE OF SERVER

Now Legal Service, 1301 W. 2nd St., #206, Los
ADDRESS OF SERVER

Angeles, CA 90026, (213) 482-1567, L.A. Cty. #5426

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

[Rule 45 text in two columns, small print]

EXHIBIT 2

PAGE 12

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | CV 04-09049 SGL(RNBx) | Date: January 7, 2008 |
| Title: | CARTER BRYANT -v- MATTEL, INC. | |
| | AND CONSOLIDATED ACTIONS | |

====================================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                          Theresa Lanza
Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  Christa Martine Anderson     John B. Quinn and Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:            ATTORNEY PRESENT FOR CARLOS
Thomas J. Nolan                       GUSTAVO MACHADO GOMEZ:
Carl A. Roth                          Mark E. Overland
Anna Park
                                      ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-             STERN & GOLDBERG: Kien C. Tiet
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND              ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: Larry W.             KAYE SCHOLER, LLP: Bryant S. Delgadillo
McFarland

PROCEEDINGS:   **ORDER GRANTING IN PART AND DENYING IN PART
               MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL
               DISCOVERY (DOCKET #1134)**

               **ORDER GRANTING MOTION TO ENFORCE THE COURT'S
               ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR
               SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90                                  Initials of Deputy Clerk: jh
CIVIL -- GEN                         1           Time: 1/30

EXHIBIT __3__

PAGE __13__

### ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

### ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

### MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)

This motion is **GRANTED IN PART**. Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT 3

PAGE 14

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel. Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13). Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes. Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court DENIES that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant. The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is GRANTED. The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language. Machado must file an affidavit that complies with the

3

EXHIBIT 3
PAGE 15

Case 2:04-cv-09049-SGL-RNB    Document 1504    Filed 01/07/2008    Page 4 of 5

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation. The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

### MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**. The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty. Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him. See Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard <u>prior to</u> the appointment of a special master). Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case. Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

### DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT __3__

PAGE __16__

forth in their moving papers. The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl). To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008. However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT 3

PAGE 17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)
Title:     CARTER BRYANT -v- MATTEL, INC.                    Date: January 9, 2008
           AND CONSOLIDATED ACTIONS
============================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                              N/A
           Courtroom Deputy Clerk                  Court Reporter

PROCEEDINGS:   **ORDER AMENDING COURT'S MINUTE ORDER OF JANUARY 7, 2008**
               **(In Chambers)**

        The Court's Minute Order dated January 7, 2008, incorrectly noted on page 4 that Mattel's motion seeking clarification regarding the Court's Order appointing the Discovery Master (docket #1244) was **DENIED.** That motion, as correctly noted in the caption of the January 7, 2008, Order, was **GRANTED.** Accordingly, the Court **AMENDS** the Court's January 7, 2008, Order as follows:

        Page four:  The sentence "This motion is **DENIED.**" is stricken, and the following sentence is substituted in its place:  "This motion is **GRANTED.**"

        IT IS SO ORDERED.

MINUTES FORM 90                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                         1

EXHIBIT __3__

PAGE __18__

# EXHIBIT 4

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12                                          | CASE NO. CV 04-09049 SGL (RNBx)
                                            | JAMS Reference No. 1100049530
13   CARTER BRYANT, an individual,
                                            |
14           Plaintiff,                     |
                                            | Consolidated with
15        v.                                | Case No. CV 04-09059
                                            | Case No. CV 05-2727
16   MATTEL, INC., a Delaware corporation,  |
                                            | **ORDER DENYING MATTEL'S**
17           Defendant.                     | **MOTION TO COMPEL DEPOSITION**
                                            | **OF CHRISTOPHER PALMERI**
18   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
19   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
20

21

22                        I. INTRODUCTION

23        On January 22, 2008, Mattel, Inc. ("Mattel") submitted a motion to compel the deposition

24   of Christopher Palmeri ("Palmeri"), a non-party reporter who authored an article for Business

25   Week that refers to Isaac Larian ("Larian"), MGA and Bratz.  On January 29, 2008, Palmeri

26   submitted an opposition and on February 15, 2008, Mattel submitted a reply.  At issue is whether

27   the testimony Mattel seeks from Palmeri is protected by the federal journalist's privilege.

28
     Bryant v. Mattel, Inc.,                                    EXHIBIT ___4___
     CV-04-09049 SGL (RNBx)
                                                                PAGE ___19___
                                                                                        1

## II. BACKGROUND

In July 2003, Business Week published an article authored by Palmeri entitled "To Really Be A Player, Mattel Needs Hotter Toys." Of particular interest to Mattel is the portion of the article referring to MGA, Larian and Bratz as follows:

> Mattel won't live or die on every new toy it develops. But it can't just rely on
> Barbies, either. "Like they say in business school – no risk, no reward," says
> Isaac Larian, CEO of privately held MGA. He should know: He got the idea for
> Bratz after seeing his own kids run around in navel-baring tops and hip-huggers.

Niborski Decl., Ex. 1 (Article). In Mattel's view, the Article conveys that Larian told Palmeri that the Bratz dolls were Larian's idea and that the source of that idea was Larian's observation of "his own kids run[ning] around in navel-baring tops and hip huggers." Mattel seeks testimony from Palmeri to confirm what Mattel characterizes as Larian's "published" statements about the origins of Bratz.[1]

Mattel contends that the federal journalist's privilege does not apply because Mattel is seeking only "published" information, not "unpublished" information. Moreover, Mattel contends that even if the privilege applies, the privilege is qualified and yields when the litigant's need for the information sought outweighs any public interest in non-disclosure. Mattel contends that there is no public policy rationale for Palmeri's refusal to confirm under oath that Larian made the statements about the origins in Bratz that appear in the Article. In contrast, Mattel contends that it needs Palmeri's testimony to develop what it considers crucial evidence to establish that Carter Bryant ("Bryant") and Larian, among others at MGA, made inconsistent statements concerning the origins of Bratz and engaged in a scheme to conceal the product's true origins. More specifically, Mattel contends that Palmeri's anticipated testimony will provide direct proof that Larian --who has since acknowledged under oath that Bryant brought him the Bratz idea – falsely

---

[1] During the meet and confer process, Mattel offered to limit the time of questioning and to conduct the deposition at a time and place of Palmeri's choosing. Mattel also offered to discuss the prospective line of questioning in advance of the deposition with Palmeri's counsel.

1  claimed that he was the creator of Bratz. Mattel contends that Larian's false claim was part of a

2  scheme to conceal the truth about the origins of Bratz from the public and Mattel.

3          Mattel further contends that the evidence of concealment it seeks will show "guilty

4  knowledge by Larian and MGA that Bryant developed Bratz while an employee of Mattel, in

5  violation of his employment agreement with Mattel, and an awareness by Larian and MGA that

6  Bryant's inventions during his employment at Mattel belong to Mattel." Mattel's Motion at p.3.

7  Mattel contends that the evidence it seeks is also relevant to rebut MGA's statute of limitations

8  defense.

9          Palmeri raises four main arguments in opposition to Mattel's motion. First, Palmeri

10 contends that Mattel relies on decisions from circuits that are inconsistent with the journalist's

11 privilege recognized by the Ninth Circuit in Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993), and

12 Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995) . Second, Palmeri contends that the information

13 Mattel seeks is "unpublished," and therefore the journalist's privilege applies. Palmeri reasons

14 that nothing within the four corners of the Article reveals the source of the information about the

15 origins of Bratz dolls. Even assuming for the sake of argument that the information Mattel seeks

16 is "published," Palmeri contends that the journalist's privilege applies to preclude compelled

17 disclosure of a journalist's professional news gathering efforts and results, whether published or

18 not. Third, Palmeri contends that Mattel has failed to make the requisite showing to overcome the

19 privilege, namely that the information Mattel seeks is "clearly relevant to an important issue in the

20 case," that it is "non-cumulative," and that it is "unavailable despite exhaustion of all reasonable

21 alternative sources." Shoen, 48 F.3d at 416. Fourth, Palmeri contends that Mattel ignores his

22 rights under California's state constitutional shield law.

23                          III. DISCUSSION

24         Rooted in the First Amendment, the journalist's privilege protects non-party reporters

25 against being compelled to disclose information that they acquire in the course of their

26 newsgathering. Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995) ("Shoen II"); Shoen v. Shoen, 5 F.3d

27 1289, 1293 (9th Cir. 1993) ("Shoen I"). "[T]he journalist's privilege applies to a journalist's

28

Bryant v. Mattel, Inc.,                                                     3
CV-04-09049 SGL (RNBx)

EXHIBIT  4

PAGE  21

1   resource materials even in the absence of the element of confidentiality." <u>Shoen I</u>, 5 F.3d at 1295-

2   196.

3          The journalist's privilege is a qualified one. "[T]he process of deciding whether the

4   privilege is overcome requires that 'the claimed First Amendment privilege and the opposing need

5   for disclosure be judicially weighed in light of the surrounding facts, and a balance struck to

6   determine where lies the paramount interest.'" <u>Shoen I</u>, 5 F.3d at 1292-1293 (quoting <u>Farr v.</u>

7   <u>Pitchess</u>, 522 F.2d 464, 468 (9th Cir. 1975). To overcome the privilege when the information

8   sought is not confidential, a litigant must demonstrate that the requested evidence is: "(1)

9   unavailable despite the exhaustion of all reasonable alternative sources; (2) non-cumulative; and

10  (3) clearly relevant to an important issue in the case." <u>Shoen II</u>, 48 F.3d at 416. This test is

11  intended to "ensure that compelled disclosure is the exception, not the rule." <u>Id</u>.

12          Because Mattel cannot satisfy any, let alone all, of these three factors, Mattel is not

13  entitled to depose Palmeri.

14          <u>1. The Information Sought is Not Clearly Relevant to an Important Issue</u>

15          The information sought by Mattel is not clearly relevant to an important issue in the case.

16  Mattel's claims are predicated upon an allegation that Carter Bryant created Bratz while still

17  employed by Mattel. Whether or not Larian made any statements to Palmeri about Larian's

18  children "run[ning] around in navel-baring tops and hip huggers" is not relevant to that central

19  issue.

20          Nor is the requested information "clearly relevant" to determine when Mattel was put on

21  notice of its claims for purposes of the statute of limitations. As to this issue, the requested

22  information would be superfluous. What is relevant is that the Article was published and that as

23  of the date of its publication, this public account of the dolls' origin did not mention, much less

24  credit Carter Bryant as the creator of the dolls. For purposes of the statute of limitations, the

25  information published within the four corners of the Article is relevant, regardless of who was the

26  source of the information.

27          Nor can Mattel satisfy the "clearly relevant" standard by claiming that the information it

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT ___4___

PAGE ___22___

1   seeks will demonstrate that Larian "made inconsistent statements concerning the origins of

2   Bratz." The Ninth Circuit's Shoen II decision is on point. There, the plaintiffs argued that the

3   journalist's tapes and notes of an interview with the defendant might provide valuable

4   impeachment material. Shoen, 48 F.3d at 418. The Ninth Circuit concluded that "to the extent

5   the requested materials would demonstrate that [defendant] was less than candid during his

6   deposition, they do not relate to an important issue in the case." Id. Although the requested

7   information is relevant to Larian's credibility, a greater showing is required under Shoen I, supra,

8   to tip the balance of competing interests in favor of compelling disclosure of information

9   protected by the journalist's privilege.

10                              2. The Information Mattel Seeks is Cumulative

11          Mattel contends that the information it seeks from Palmeri is not cumulative because no

12   one else has testified about any communications between Palmeri and Larian. Mattel's focus,

13   however, is unreasonably narrow. The issue is not whether other witnesses have testified

14   specifically about the substance of the communications between Palmeri and Larian, but whether

15   the information Mattel seeks is cumulative.

16          As discussed previously, Mattel is essentially seeking evidence of Larian's allegedly

17   inconsistent statements regarding the origins of Bratz. In its motion papers, Mattel acknowledges

18   that it obtained testimony from two other reporters (Ms.Tkacik and Ms. O'Neal) who "wrote

19   articles for their respective publications that contain statements attributed to Larian regarding the

20   origins of Bratz which were inconsistent with Larian's, MGA's and Bryant's subsequent claims in

21   this case." Mattel's Motion at p.4. Any testimony that Palmeri might provide on the same subject

22   would be cumulative impeachment evidence.

23                         3. Information Sought is Available From Another Source

24          Finally, the information Mattel seeks from Palmeri is clearly available from another

25   source. In Shoen I, supra, the Ninth Circuit refused to compel disclosure of a non-party reporter's

26   tapes and notes of his communications with the defendant unless and until plaintiffs deposed

27   defendant and specifically questioned him about those communications. The Ninth Circuit

28

1  described the defendant as "an obvious alternative source for discovering what he said to [the

2  reporter] in their communications." Shoen I, 5 F.3d at 1296. Even though the plaintiffs served

3  the defendant with interrogatories asking about his communications with the reporter and the

4  defendant responded that he could not recall the specific content of his meetings or conversations

5  with the reporter, the court found that the plaintiffs could not claim to have exhausted alternative

6  sources until they "plumb[ed] the depths" of the defendant's recollection in deposition. Id. at

7  1297. Like the plaintiffs in Shoen I, Mattel cannot claim to have exhausted alternative sources

8  unless and until Mattel deposes Larian and exhausts Larian's recollection of his communications

9  with Palmeri. Moreover, Larian is not the only alternative source of information that must be

10  exhausted before Mattel can overcome the journalist's privilege. There may be other witnesses

11  with whom Larian may have discussed the origins of Bratz dolls, such as co-workers, publicists or

12  industry analysts. Yet, Mattel does not claim to have questioned or deposed those witnesses

13  about any such statements.

14  V. CONCLUSION

15      Because Mattel has not satisfied any of the three factors set forth in Shoen II, Mattel's

16  motion to compel the deposition of Christopher Palmeri is denied.[2] Pursuant to Paragraph 6 of

17  the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order

18  with the Clerk of Court forthwith.

19

20  Dated: February 26, 2008

                                                _Edward A. Infante_

21                                  HON. EDWARD A. INFANTE (Ret.)

22                                        Discovery Master

23

24

25

26  _____

27      [2] Because the federal journalist's privilege is dispositive of the motion, it is unnecessary to address Palmeri's alternative argument under the California shield law.

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                       6

EXHIBIT 4

PAGE 24

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 26, 2008, I

served the attached ORDER DENYING MATTEL'S MOTION TO COMPEL DEPOSITION OF

CHRISTOPHER PALMERI in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Alonzo Wickers IV, Esq. | Davis Wright Tremaine LLP | alonzowickers@dwt.com |
| Robyn Aronson, Esq. | Davis Wright Tremaine LLP | robynaronson@dwt.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on February 26, 2008, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT __4__

PAGE __25__

# EXHIBIT 5

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

```
CARTER BRYANT, ET. AL.,          )
                                 )
                 PLAINTIFFS,     )
                                 )
           VS.                   )   NO. ED CV 04-09049
                                 )   (LEAD LOW NUMBER)
MATTEL, INC., ET. AL.,           )
                                 )
                 DEFENDANTS.     )
_____)   HEARING
AND RELATED ACTIONS,             )
                                 )
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY, APRIL 14, 2008

10:14 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
(951) 274-0844
WWW.THERESALANZA.COM

EXHIBIT 5

PAGE 26

## Page 2

1  APPEARANCES:
2
3  ON BEHALF OF MATTEL, INC.:
4
5      QUINN EMANUEL
       BY: TIMOTHY L. ALGER
6      865 S. FIGUEROA STREET,
       10TH FLOOR
7      LOS ANGELES, CALIFORNIA  90017
       (213) 624-7707
8
9  ON BEHALF OF MOVING PARTY, MATTEL, INC.:
10     STROOCK & STROOCK & LAVAN, LLP
       BY:  MICHAEL J. NIBORSKI
11     2029 CENTURY PARK EAST
       LOS ANGELES, CA 90067-3086
12     310-556-5800
13
14 ON BEHALF OF NON-PARTY CHRISTOPHER PALMERI:
15     DAVIS WRIGHT TREMAINE LLP
       BY:  ALONZO WICKERS IV
16     865 SOUTH FIGUEROA STREET,
       SUITE 2400
17     LOS ANGELES, CALIFORNIA  90017-2566
       213-633-6865
18
19 ON BEHALF OF MGA ENTERTAINMENT:
20     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
       BY:  ROBERT JAMES HERRINGTON
21     300 SOUTH GRAND AVENUE
       LOS ANGELES, CALIFORNIA 90071-3144
22     213-687-5000
23
24
25

## Page 3

1              I N D E X
2                            PAGE
3     MOTION............................  4
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 4

1      RIVERSIDE, CALIFORNIA; MONDAY, APRIL 14, 2008; 10:14 A.M.
2                    -oOo-
3      THE COURT:  COUNSEL, WHY DON'T YOU GO AHEAD AND MAKE
4  YOUR APPEARANCES WHILE WE'RE WAITING.
5      MR. ALGER:  TIMOTHY ALGER FROM QUINN EMANUEL ON
6  BEHALF OF MATTEL.  AND WITH ME TODAY IS MICHAEL NIBORSKI, WHO'S
7  CO-COUNSELING WITH US ON THIS MOTION.
8      THE COURT:  VERY WELL.
9      MR. HERRINGTON:  ROBERT HERRINGTON FROM SKADDEN ARPS
10 ON BEHALF OF MGA AND MR. LARIAN.
11     MR. WICKERS:  AL WICKERS, DAVIS WRIGHT & TREMAINE, ON
12 BEHALF OF NONPARTY REPORTER, CHRIS PALMERI.
13     THE COURT:  GOOD MORNING, COUNSEL.
14     THERE ARE ACTUALLY THREE MATTERS THE COURT IS GOING
15 TO TAKE UP THIS MORNING.
16     THE FIRST ONE, JUST FOR THE RECORD, THE COURT DID
17 RECEIVE THE STIPULATION FROM THE PARTIES CONCERNING THE
18 SCREENING OF THE JURY PANEL.  WE'RE GOING TO SCREEN PRIOR TO
19 THE VOIR DIRE PROCESS FOR TWO-MONTH AVAILABILITY, JUST SO THAT
20 WE'RE NOT DEALING WITH THAT DURING THE COURSE OF THE SELECTION
21 OF THE JURY ITSELF.  THE COURT IS SHOOTING TO HAVE ABOUT 60 TO
22 75 INDIVIDUALS IN OUR PANEL, IN OUR VENIRE PANEL, THAT ARE ABLE
23 TO SIT FOR APPROXIMATELY A TWO-MONTH TRIAL.
24     THE SECOND MATTER IS, I HAVE AN EX-PARTE APPLICATION
25 BROUGHT BY MATTEL, REQUESTING, ESSENTIALLY, A SURREBUTTAL

## Page 5

1  REPORT TO SUPPLEMENT THEIR PREVIOUSLY-SUBMITTED EXPERT REPORTS
2  BY WILLIAM TWINN AND LLOYD CUNNINGHAM REGARDING CERTAIN BRYANT
3  ORIGINALS.  THE COURT RECEIVED THAT AND THE OPPOSITION LATE
4  LAST WEEK.  I HAVE SOME QUESTIONS CONCERNING THAT.
5      AND THEN I HAVE A MOTION, ALSO ON CALENDAR,
6  CONSIDERING THE APPEAL OF THE DISCOVERY MASTER'S FEBRUARY 26,
7  2008 ORDER DENYING MATTEL'S MOTION TO COMPEL THE DEPOSITION OF
8  MR. CHRISTOPHER PALMERI.  WE DO HAVE COUNSEL FOR
9  CHRISTOPHER PALMERI HERE.
10     I MADE REFERENCE TO THE FIRST MATTER, AND THAT IS THE
11 JURY ISSUE.  I APPRECIATE THE PROMPT ATTENTION TO THAT
12 STIPULATION SO THAT WE CAN START SENDING OUT, AS OF TODAY,
13 SUMMONS AND LETTERS TO POTENTIAL JURY MEMBERS.
14     LET ME TAKE UP THE MOTION SECOND, AND THAT IS THE
15 MOTION INVOLVING CHRISTOPHER PALMERI.  LET ME BEGIN WITH
16 MATTEL.  I WANT TO GET A BETTER SENSE OF EXACTLY WHAT IT IS
17 THAT YOU NEED THE DEPOSITION FOR.  AS I UNDERSTAND IT, NUMBER
18 ONE, YOU NEED IT FOR YOUR STATUTE OF LIMITATIONS ARGUMENT WHICH
19 YOU HAVE RAISED IN THE MOTION FOR SUMMARY JUDGMENT AND IN
20 OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT; THAT IS ONE
21 PURPOSE.
22     IT ALSO GOES TO A CONCEALMENT ISSUE IN PHASE TWO, A
23 FRAUDULENT CONCEALMENT ISSUE.
24     WHAT ELSE DOES IT GO TO?
25     MR. NIBORSKI:  I THINK IT GOES ALSO, YOUR HONOR, TO

### Page 6

1 THE LATCHES DEFENSE RAISED BY MGA.

2     THE COURT: EXPLAIN.

3     MR. NIBORSKI: THERE'S A LOT OF OVERLAP BETWEEN THESE

4 ISSUES.

5     ESSENTIALLY, WHAT YOU HAVE HERE IS, YOU HAVE, IN THE

6 SUMMER OF 2003, TWO INTERVIEWS BEING GIVEN TO ARGUABLY THE TWO

7 MOST IMPORTANT BUSINESS JOURNALS IN THE COUNTRY. ONE OF THE

8 REASONS THAT WE'RE HERE IS BECAUSE WE'RE DEALING WITH

9 BUSINESSWEEK MAGAZINE. WE'RE NOT DEALING WITH A SMALL

10 PUBLICATION. WE'RE DEALING WITH THE WALL STREET JOURNAL, AND

11 WE'RE DEALING WITH BUSINESSWEEK. AND THE FACT THAT MR. LARIAN

12 CHOSE TO GIVE AN INTERVIEW TO BUSINESSWEEK AND TO MAKE AN

13 AFFIRMATIVE STATEMENT ABOUT THE ORIGIN OF BRATZ, WHILE THEN

14 SUBSEQUENTLY IN THIS LITIGATION, MAKING A VERY BIG POINT ABOUT

15 THE FACT THAT WHAT WAS IN THE WALL STREET JOURNAL ARTICLE PUT

16 US ON NOTICE OF CERTAIN FACTS AND THAT OUR FAILURE TO PROSECUTE

17 THE CASE EARLIER SUBJECTS US TO A LATCHES DEFENSE.

18     OUR PURPOSE HERE IS IN NO WAY TO IMPINGE ON THE

19 NEWS-GATHERING PROCESS. IF WE WERE DEALING WITH UNPUBLISHED

20 INFORMATION –

21     THE COURT: LET ME STOP YOU THERE.

22     IF THAT'S YOUR UNDERSTANDING OF LATCHES, THEN IT HAS

23 THE SAME RESPONSE AS THE STATUTE OF LIMITATIONS.

24     IF IT'S ABOUT PUTTING YOU ON NOTICE, ALL THAT WOULD

25 HAVE PUT YOU ON NOTICE – I'M NOT SAYING IT'S NOT SIGNIFICANT,

### Page 7

1 BECAUSE IT MAY VERY WELL BE SIGNIFICANT; IT MAY VERY WELL BE

2 DISPOSITIVE – BUT WHATEVER PUTS YOU ON NOTICE WAS THIS ARTICLE

3 AS IT APPEARED BACK IN 2003.

4     MR. NIBORSKI: YES.

5     THE COURT: YOU CERTAINLY DIDN'T HAVE, IN 2003,

6 ACCESS TO THE REPORTER OR THE REPORTER'S SOURCES OR ADDITIONAL

7 NOTES OF THE REPORTER THAT WERE NOT PUT INTO THE ARTICLE. ALL

8 YOU WOULD HAVE, ALL THAT'S OUT THERE IN THE PUBLIC, ALL THAT

9 WOULD HAVE TOLLED THE STATUTE OF LIMITATIONS, ALL THAT WOULD

10 HAVE COME INTO PLAY IN TERMS OF WHAT WAS GOING ON PUBLICLY, IS

11 WHAT IS IN THE ARTICLE. AND ASSUMING THAT THE ARTICLE COMES IN

12 FOR SUMMARY JUDGMENT PURPOSES, AS I THINK IT DOES AS A

13 SELF-AUTHENTICATING DOCUMENT FOR PURPOSES OF SUMMARY

14 JUDGMENT – NOT NECESSARILY FOR TRIAL, BUT I THINK THESE ISSUES

15 COME UP AT THE SUMMARY JUDGMENT STAGE – I DON'T SEE WHAT MORE

16 YOU GET BY GETTING TO THE REPORTER AND HOW THAT'S REALLY

17 RELEVANT TO A LATCHES.

18     NOW, I COULD SEE HOW, PERHAPS, THE REPORTER MAY HAVE

19 EVIDENCE RELATING TO THE FRAUDULENT CONCEALMENT, BUT THAT WOULD

20 BE A PHASE TWO ISSUE AND I DON'T THINK I NEED TO GET TO THAT AT

21 THIS POINT.

22     MR. NIBORSKI: WELL, THAT'S EXACTLY RIGHT, YOUR

23 HONOR.

24     THE FRAUDULENT CONCEALMENT ISSUE – I MEAN, OUR POINT

25 IS THAT IF IT'S RELEVANT TO BOTH THE FRAUDULENT CONCEALMENT

### Page 8

1 ISSUE, AS WELL AS THE STATUTE OF LIMITATIONS AND LATCHES

2 DEFENSES – AND WHAT WE'RE ESSENTIALLY SEEKING IS TESTIMONY TO

3 CONFIRM A PUBLISHED STATEMENT IN AN ARTICLE IN A, PERHAPS, 20-

4 TO 30-MINUTE DEPOSITION – IT MAKES PERFECT SENSE TO DO THAT

5 ALL AT ONCE.

6     THE COURT: BUT DO YOU UNDERSTAND THE COURT'S POINT,

7 THOUGH, ABOUT WHY – FOR PURPOSES OF THE STATUTE OF LIMITATIONS

8 AND THOSE ARGUMENTS, WHAT YOU'RE GOING TO BE RELYING UPON IS

9 WHAT WAS ACTUALLY PUBLISHED IN THE ARTICLE, NOT WHAT'S BENEATH

10 IT?

11     MR. NIBORSKI: CORRECT.

12     THE COURT: I MEAN, YOU ALLUDE TO VERIFICATION HERE.

13 THIS IS NOT A QUOTE. UNLIKE THE SENTENCE BEFORE IT, WHERE

14 THERE'S A QUOTE, THIS WAS JUST A STATEMENT.

15     I WOULD CONCEDE THAT IT IS LOGICAL TO ASSUME THAT THE

16 SOURCE OF THAT INFORMATION WAS PROBABLY MR. LARIAN. BUT IT MAY

17 NOT HAVE BEEN. I MEAN, THE REPORTER MAY HAVE GOTTEN THAT FROM

18 SOMEPLACE ELSE; AND THAT'S WHY IT RAISES THE WHOLE ISSUE THAT

19 YOU'RE REALLY TRYING TO GET TO THE SOURCE, A CONFIDENTIAL

20 SOURCE IN THE SENSE THAT IT WASN'T DISCLOSED IN THE ARTICLE,

21 AND NOT SIMPLY A VERIFICATION OF A QUOTE.

22     I MEAN, IF THIS WAS SIMPLY A VERIFICATION OF A QUOTE,

23 THE JOURNALIST'S PRIVILEGE ANALYSIS MIGHT BE DIFFERENT,

24 ALTHOUGH THERE'S DISPUTE IN THE CASES THAT I WAS READING THIS

25 WEEKEND. SOME SUGGEST THAT THEY'RE TREATED THE SAME; SOME

### Page 9

1 SUGGEST THEY'RE TREATED DIFFERENTLY. BUT I DON'T THINK WE EVEN

2 REALLY NEED TO ADDRESS THAT BECAUSE THIS ISN'T A QUOTE.

3 THERE'S NO QUESTION THAT THIS IS A STATEMENT.

4     MR. NIBORSKI: I THINK THAT'S A FAIR POINT, YOUR

5 HONOR. BUT I THINK THAT WE ARE AS CLOSE AS HUMANLY POSSIBLE TO

6 A QUOTE, WITHOUT THE LITTLE ACTUAL MARKINGS AND A 'LARIAN SAID'

7 ON EITHER SIDE OF THE STATEMENT.

8     PRESUMABLY, IF MR. LARIAN WAS NOT THE SOURCE OF THE

9 STATEMENT, WHEN WE BEGAN MEETING AND CONFERRING WITH COUNSEL,

10 YOU KNOW, NINE MONTHS AGO, A STATEMENT TO THAT EFFECT WOULD

11 HAVE BEEN TAKEN ON FACE VALUE, AND WE WOULD HAVE LET THE ISSUE

12 LIE.

13     THE COURT: BUT INSTEAD, MR. LARIAN DOESN'T REALLY

14 REMEMBER WHAT HAPPENED OR WHAT HE SAID.

15     MR. NIBORSKI: RIGHT.

16     AND JUST TO SEGUE INTO ONE OF THE OTHER ISSUES IN

17 THIS MOTION, YOU KNOW, JUDGE INFANTE DID NOT HAVE THE BENEFIT,

18 WHEN THIS WAS FIRST BRIEFED BEFORE HIM, OF THE SECOND SESSION

19 OF MR. LARIAN'S DEPOSITION, WHICH, AS YOUR HONOR KNOWS, WE HAD

20 TO GO THROUGH SOME HOOPS TO GET TO. AND IT WAS PRETTY CLEAR

21 MR. LARIAN HAD THE SUFFICIENT LACK OF RECOLLECTION TO MAKE HIM

22 A VIABLE ALTERNATIVE SOURCE.

23     AND WE ALSO CORROBORATED THE FACT THAT THERE REALLY

24 ARE ONLY TWO PEOPLE ON THE FACE OF THE EARTH WITH THIS

25 INFORMATION: MR. LARIAN AND MR. PALMERI.

JULY 24, 2006

EXHIBIT 5

PAGE 28

3 (Pages 6 to 9)

ED CV 04-09049

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

## Page 10

1   TO CIRCLE BACK TO THE CONCEALMENT ISSUE, ONE OF OUR
2   POINTS IS THAT THIS IS NOT JUST THAT MR. LARIAN TOLD A FRIEND
3   OR A COLLEAGUE, 'HERE'S WHERE I GOT THE IDEA FOR BRATZ.' THE
4   FACT THAT HE ACTIVELY CHOSE TO PUT THIS INFORMATION OUT TO THE
5   LARGEST BUSINESS MAGAZINE IN THE WORLD, AND SUBSEQUENT TO THAT,
6   RECEIVED AN E-MAIL TO CONFIRM THOSE TYPES OF FACTS AND THE
7   ARTICLE WENT TO PRINT, TO US THAT'S A VERY, VERY SIGNIFICANT
8   POINT.
9   THE COURT: I TRUST THERE WAS NO RESPONSE. THAT
10  E-MAIL WAS RATHER INTERESTING, BECAUSE IT DID LAY IT OUT. IN
11  THE E-MAIL, THERE WAS -- I DIDN'T SEE A RESPONSE.
12  MR. NIBORSKI: AS FAR AS I KNOW, THERE WAS NO
13  RESPONSIVE DOCUMENT ANYWHERE IN THE PRODUCTION THAT WE
14  RECEIVED. I DON'T KNOW WHETHER THERE WAS. MR. LARIAN, AS YOU
15  MAY HAVE READ FROM THE DEPOSITION, DIDN'T RECALL THE SUBSTANCE
16  OF THAT INFORMATION.
17  THE COURT: OKAY. LET ME HEAR FROM THE DEFENSE, FROM
18  COUNSEL FOR THE REPORTER.
19  MR. WICKERS: THANK YOU, YOUR HONOR.
20  ADDRESSING BRIEFLY A COUPLE OF POINTS THAT COUNSEL
21  TALKED ABOUT.
22  WE WOULD AGREE WITH THE COURT, FIRST OF ALL, THAT AS
23  TO LATCHES AND STATUTE OF LIMITATIONS ISSUES, THE PUBLICATION
24  OF THE ARTICLE IS MORE THAN ADEQUATE TO SERVE THE PURPOSES THAT
25  MATTEL SEEKS MR. PALMERI'S DEPOSITION.

## Page 11

1   WITH RESPECT TO THE OTHER ISSUE THAT THE COURT
2   RAISED, HOWEVER, I WANTED TO START AT THE VERY BEGINNING WITH,
3   WE ARE DEALING WITH A DISCOVERY MASTER'S RULING THAT IS
4   ENTITLED TO SUBSTANTIAL DEFERENCE HERE AND SHOULD BE REVERSED
5   ONLY IF IT'S CLEARLY ERRONEOUS OR CONTRARY TO LAW. I WOULD
6   RATHER NOT GO DOWN THE LENGTHY DISCUSSION OF THE PUBLISHED
7   VERSUS UNPUBLISHED DISTINCTIONS, BECAUSE CANDIDLY, I DON'T
8   BELIEVE IT MATTERS HERE; IT'S KIND OF A RED HERRING ARGUMENT.
9   THERE WERE 11 CASES CITED BETWEEN THE VARIOUS PARTIES
10  DEALING WITH WHAT MIGHT BE TERMED "AUTHENTICATION." TEN OF
11  THEM WENT THROUGH A PRIVILEGE ANALYSIS. SIX OF THEM RULED IN
12  FAVOR OF THE REPORTER; FOUR RULED AGAINST THE REPORTER. BUT I
13  DON'T THINK THAT'S REALLY THE RELEVANT DISTINCTION HERE.
14  I THINK WHAT IS MOST IMPORTANT IS THAT THE DISCOVERY
15  MASTER FOUND ON ALL THREE POINTS -- RELEVANCE, CUMULATIVENESS,
16  AND EXHAUSTION -- THAT MATTEL HAD FAILED TO MEET ITS BURDEN.
17  SO TO REVERSE JUDGE INFANTE'S DECISION, THIS COURT WOULD HAVE
18  TO FIND THAT JUDGE INFANTE'S RULING WAS CLEARLY ERRONEOUS OR
19  CONTRARY TO LAW ON ALL THREE OF THOSE ISSUES. AND WE DON'T
20  BELIEVE THAT MATTEL CAN DO THAT.
21  SKIPPING OVER THE STATUTE OF LIMITATIONS, LATCHES,
22  AND IMPEACHMENT ARGUMENTS THAT WERE RAISED BY MATTEL IN ITS
23  BRIEFING BEFORE JUDGE INFANTE, AND MOVING DIRECTLY TO THE
24  GUILTY MIND THEORY, TO CALL IT THAT, I THINK IT IS INACCURATE
25  TO SUGGEST THAT JUDGE INFANTE DID NOT CONSIDER THAT ARGUMENT.

## Page 12

1   IT'S CLEAR FROM HIS ORDER, IN FACT, THAT HE DID. TWICE HE
2   MENTIONS THIS GUILTY KNOWLEDGE OR GUILTY MIND ARGUMENT THAT WAS
3   RAISED BY MATTEL WITH RESPECT TO THE CLEAR RELEVANCE ISSUE, AND
4   HE CLEARLY FOUND THAT IT DID NOT RISE TO THAT LEVEL.
5   I THINK THERE'S A TELLING FACT. MR. LARIAN HAD BEEN
6   DEPOSED BEFORE THIS MOTION PRACTICE OVER THE DEPOSITION
7   SUBPOENA TO MR. PALMERI, AND MR. LARIAN WAS QUESTIONED BRIEFLY
8   BY MATTEL'S LAWYERS ABOUT HIS STATEMENTS TO REPORTERS.
9   THE COURT: HE WAS.
10  YOU KNOW, PART OF WHAT JUDGE INFANTE FOUND WAS, AND
11  KIND OF THE BOTTOM LINE WAS -- I THINK THE PHRASE HE USED WAS
12  THAT MATTEL HAD NOT 'PLUMBED THE DEPTHS.' AND TO THINK THAT
13  ANYBODY HAS NOT PLUMBED THE DEPTHS IN THIS CASE IS SOMEWHAT --
14  CAUSES ONE TO PAUSE.
15  BUT, FAIR ENOUGH, THEY HAD NOT PLUMBED THE DEPTHS AT
16  THAT POINT. AND I THINK THAT MAY HAVE BEEN A VALID CONTENTION
17  OR FINDING BY JUDGE INFANTE IN FEBRUARY. BUT WE DO HAVE
18  SUBSEQUENT INFORMATION, SUBSEQUENT EFFORTS, BY MATTEL.
19  I DON'T KNOW WHAT MORE THEY CAN DO TO TRY TO
20  ASCERTAIN THE PARTICULAR INFORMATION RELATED TO THE INTENTIONAL
21  CONCEALMENT ISSUE. AS I INDICATED, I FEEL FAIRLY CONFIDENT
22  THAT MATTEL CAN PROCEED IN THEIR MOTION FOR SUMMARY JUDGMENT
23  WITH THIS ARTICLE AND USE IT FOR WHATEVER EFFECT THEY WANT TO
24  USE IT FOR IN THAT MOTION. I DON'T THINK THERE'S ANYTHING MORE
25  TO BE GAINED, BECAUSE ANYTHING ELSE WOULD HAVE NOT BEEN PUBLIC;

## Page 13

1   THEY WOULD NOT HAVE KNOWN ABOUT IT BACK IN 2003; SO IT PROBABLY
2   WOULD NOT BE RELEVANT.
3   BUT THE INTENTIONAL CONCEALMENT ARGUMENT, I CAN SEE
4   THE RELEVANCE THERE, PERHAPS, ALTHOUGH IT'S A PHASE-TWO ISSUE
5   AND IT MAY NOT BE A BRIDGE THAT WE NEED TO CROSS AT THIS POINT.
6   IT MAY BE PREMATURE TO BE ADDRESSING THIS, PARTICULARLY GIVEN
7   THE FACT THAT EVERYONE, I'M SURE, HAS OTHER THINGS THAT THEY
8   NEED TO BE PAYING ATTENTION TO RIGHT NOW.
9   BUT IN TERMS OF THE ACTUAL CORRECTNESS OF
10  JUDGE INFANTE'S ORDER -- AND THIS IS THE POINT I'D LIKE YOU TO
11  ADDRESS IS -- YOU CALLED UPON MATTEL TO PLUMB THE DEPTHS. THEY
12  SEEMED TO HAVE DONE THAT, OR AT LEAST THAT'S PART OF THEIR
13  ARGUMENT.
14  WHAT MORE, FROM YOUR PERSPECTIVE, COULD THEY DO,
15  SHORT OF THE DEPOSITION OF YOUR CLIENT?
16  MR. WICKERS: WELL, I THINK THAT ACTUALLY TOUCHES ON
17  ALL THREE PRONGS OF THE TEST; AND I'LL TAKE THEM IN REVERSE
18  ORDER, SO TO SPEAK.
19  ON EXHAUSTION FIRST, THERE ARE OTHERS WHO MATTEL
20  COULD DEPOSE ABOUT WHETHER OR NOT MR. LARIAN SUPPOSEDLY MADE
21  INCONSISTENT STATEMENTS OR VARYING STATEMENTS ABOUT THE ORIGINS
22  OF BRATZ AND HOW THEY WERE CREATED AND WHO WAS INVOLVED IN THE
23  CREATION.
24  THE COURT: WHO?
25  MR. WICKERS: TOY INDUSTRY ANALYSTS, INVESTORS,

JULY 24, 2006

EXHIBIT 5

PAGE 29

4 (Pages 10 to 13)

ED CV 04-09049

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

## Page 14

1 PUBLICISTS.

2     IF THERE WERE SOME KIND OF CONSPIRACY OR SOME KIND OF

3 GRAND SCHEME TO CONCEAL THIS, PRESUMABLY HE MIGHT HAVE SPOKEN

4 TO THOSE PEOPLE AS WELL.

5     THERE'S BEEN NO SHOWING THAT MATTEL ATTEMPTED TO

6 DEPOSE ANYBODY BESIDES THE INDIVIDUALS WHO ARRANGED FOR THIS

7 INTERVIEW, I THINK THE MGA PUBLICIST AND A RULE 30(B)(6)

8 DEPONENT; AND THEY FINALLY ASKED MR. LARIAN THIS QUESTION IN

9 HIS SUBSEQUENT DEPOSITION.

10    THE COURT: BESIDES THOSE THREE, THE PUBLICIST, THE

11 30(B)(6), AND MR. LARIAN, WHO ELSE FROM MGA WOULD HAVE THIS

12 INFORMATION?

13    MR. WICKERS: IT'S NOT LIMITED SOLELY TO MGA. THAT'S

14 WHAT, I THINK, JUDGE INFANTE CORRECTLY POINTED OUT.

15    THE ISSUE IS NOT SIMPLY WHETHER THEY'VE TALKED TO

16 EVERYBODY WHO MAY HAVE BEEN PRESENT FOR THAT CONVERSATION. THE

17 QUESTION IS WHETHER THEY'VE EXHAUSTED ALTERNATIVE SOURCES OF

18 THE INFORMATION ABOUT THE SUBJECT MATTER THAT THEY PROFESS TO

19 WANT TO COVER WITH MR. PALMERI; AND THAT IS, SUPPOSEDLY,

20 VARYING AND INCONSISTENT STATEMENTS THAT MR. LARIAN MADE TO

21 OUTSIDERS OR OTHERS ABOUT THE CREATION OF THE BRATZ DOLLS.

22    AND BECAUSE THE NINTH CIRCUIT HAS MADE CLEAR THAT

23 REPORTERS ARE SUPPOSED TO BE THE PLACE OF LAST RESORT FOR CIVIL

24 LITIGANTS UNDER THESE KIND OF CIRCUMSTANCES. AND IF ONE WERE

25 ALWAYS TO SAY THAT IF THE INTERVIEWED SUBJECT, ASSUMING THAT HE

## Page 15

1 WAS THE SOURCE OF THIS INFORMATION, WHICH IT'S NOT REVEALED IN

2 THE STORY, BUT EVEN IF YOU ASSUME THAT FOR PURPOSES OF ARGUMENT

3 TODAY, IF ALL YOU HAD TO DO WAS ASK THE SUBJECT AND THE SUBJECT

4 SAID, 'I DON'T RECALL,' OR 'NO, I DIDN'T SAY THAT,' THEN YOU

5 COULD ALWAYS GET TO THE REPORTER; AND THAT WOULD RENDER

6 EXHAUSTION A RELATIVELY MEANINGLESS STANDARD.

7     WE DON'T SUGGEST, AS MATTEL PUT WORDS IN OUR MOUTH IN

8 THEIR REPLY BRIEF, THAT THEY MUST DEPOSE 60 PEOPLE. WE CITED

9 THAT CASE THAT SAID IT MIGHT NOT BE UNREASONABLE TO REQUIRE

10 THAT MANY SIMPLY TO SHOW THAT THIS IS AN ONEROUS BURDEN AND

11 MATTEL CAN'T SIMPLY TURN TO MR. PALMERI BECAUSE HE MAY BE A

12 MORE CONVENIENT WITNESS FOR THIS TYPE OF INFORMATION.

13    BUT THE SAME ISSUE ALSO TOUCHES ON CUMULATIVENESS AND

14 ON RELEVANCE; AND WE WOULD SUBMIT THAT IF THIS ISSUE OF

15 MR. LARIAN'S STATEMENTS TO MR. PALMERI WERE, IN FACT, VITAL TO

16 MATTEL'S CASE, AS MATTEL SETS FORTH IN ITS PAPERS, THEN

17 MATTEL'S COUNSEL WOULD HAVE SPECIFICALLY ASKED MR. LARIAN ABOUT

18 THOSE STATEMENTS IN HIS FIRST ROUND OF DEPOSITIONS. AND THEY

19 DIDN'T. THEY ASKED KIND OF VERY GENERAL QUESTIONS ABOUT HIS

20 STATEMENTS TO REPORTERS. HE MADE SOME STATEMENT ABOUT

21 'REPORTERS DON'T ALWAYS ACCURATELY REFLECT WHAT IT IS I SAY TO

22 THEM.'

23    THE COURT: I AGREE THAT THE FIRST ROUND WAS

24 INADEQUATE, AND I THINK JUDGE INFANTE RIGHTLY NOTED THAT.

25    THE QUESTION IS, SINCE THAT TIME, THOUGH...

## Page 16

1     MR. WICKERS: THAT'S ON THE EXHAUSTION ISSUE. BUT

2 ACTUALLY, I THINK ALSO THAT WHAT WAS COVERED IN HIS FIRST

3 DEPOSITION, I ALSO BELIEVE, IS RELEVANT, YOUR HONOR, TO THE

4 RELEVANCE QUESTION. BECAUSE IF, IN FACT, THIS COMMUNICATION,

5 ALLEGED COMMUNICATION, BETWEEN MR. LARIAN AND MR. PALMERI WERE

6 AS VITAL TO MATTEL'S CASE AS MATTEL REPRESENTS IN ITS BRIEFS, I

7 BELIEVE MATTEL'S LAWYERS WOULD HAVE ASKED MR. PALMERI THOSE

8 QUESTIONS IN HIS FIRST ROUND OF DEPOSITIONS. IF IT IS SO

9 IMPORTANT --

10    THE COURT: THAT'S INTERESTING.

11    RELEVANCY IS NOT GOING TO BE DETERMINED BY THE VIGOR

12 OR ZEALOUSNESS WHICH COUNSEL PURSUES AN ISSUE, BECAUSE

13 SOMETIMES COUNSEL WILL PURSUE ISSUES VIGOROUSLY THAT ARE NOT

14 RELEVANT. THAT CAN'T BE THE STANDARD.

15    MR. WICKERS: NO.

16    HOWEVER, YOUR HONOR, I WOULD SUBMIT THAT IN THIS

17 CASE, WITH SUCH ABLE COUNSEL ON ALL SIDES, IF AN ISSUE WERE, IN

18 FACT, SO HIGHLY RELEVANT, IT WOULD HAVE BEEN COVERED.

19    IT ALSO GOES TO THE CUMULATIVENESS PRONG OF THE TEST,

20 BECAUSE AS MATTEL ADMITS, AND AS JUDGE INFANTE POINTED OUT IN

21 HIS ORDER, THEY HAVE HAD VOLUNTARY DEPOSITION TESTIMONY FROM

22 TWO REPORTERS ALREADY WHO HAVE TESTIFIED ABOUT VARYING

23 STATEMENTS THAT MR. LARIAN SUPPOSEDLY MADE TO THEM ABOUT THE

24 ORIGINS OF THE BRATZ DOLLS. THAT WAS A CHICAGO SUN TIMES

25 REPORTER AND A FORMER WALL STREET JOURNAL REPORTER. AND I

## Page 17

1 INFORMED THAT SINCE OUR LAST ROUND OF BRIEFING BEFORE THE

2 DISCOVERY MASTER, THAT MATTEL DEPOSED ANOTHER REPORTER WHO

3 VOLUNTARILY TESTIFIED. I BELIEVE MR. NIBORSKI TOLD ME THAT THE

4 REPORTER HAD BEEN WITH THE SAN FERNANDO BUSINESS JOURNAL AND

5 THAT THESE ISSUES WERE COVERED THERE.

6     SO WE WOULD SUBMIT THAT IF, AS JUDGE INFANTE FOUND,

7 HAVING TESTIMONY FROM TWO REPORTERS ON THAT ISSUE WERE

8 CUMULATIVE, IT'S ONLY MORE CUMULATIVE NOW THAT THEY HAVE

9 TESTIMONY FROM THREE REPORTERS ON THIS TOPIC.

10    THE COURT: THANK YOU, COUNSEL.

11    MR. WICKERS: THANK YOU, YOUR HONOR.

12    THE COURT: I'LL CERTAINLY GIVE THE MOVING PARTY THE

13 LAST OPPORTUNITY, BUT IS THERE ANYTHING FROM MGA BEFORE I HEAR

14 BACK FROM THE PLAINTIFFS?

15    MR. HERRINGTON: VERY BRIEFLY, YOUR HONOR.

16    THE COURT'S QUESTION, I THINK, WAS A GOOD ONE, AND I

17 JUST WANTED TO POINT OUT THAT SINCE THAT TIME, AS THE COURT'S

18 AWARE, MR. LARIAN HAS, INDEED, BEEN DEPOSED AGAIN REGARDING

19 THIS EXACT STATEMENT AND THIS EXACT ARTICLE. I THINK THERE'S

20 BEEN CHARACTERIZATIONS OF MR. LARIAN'S KNOWLEDGE REGARDING THIS

21 ARTICLE. BUT AT BOTTOM, HE DOES NOT DENY THAT THE STATEMENT

22 WAS MADE; IT MAY HAVE BEEN HIM.

23    HE SAYS, 'SO YOU'RE NOT SURE ONE WAY OR THE OTHER.'

24    HE SAYS, 'I DON'T RECALL. I MIGHT HAVE SAID IT.'

25    HE SAYS, 'YOU'RE NOT DENYING IT?'

---

JULY 24, 2006

**EXHIBIT** 5

**PAGE** 30

5 (Pages 14 to 17)

ED CV 04-09049

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

Page 18

1    'NO.'
2    AND THEN THEY GO ON TO ASK HIM, 'IS THE STATEMENT
3    TRUE?'
4    AND HE SAYS, 'IT'S PARTIALLY TRUE.' AND THEN HE
5    EXPLAINS THE BASIS FOR THE STATEMENT: 'BECAUSE THAT'S WHAT MY
6    KIDS WERE WEARING AT THAT TIME. THEY WERE YOUNG; THEY WERE
7    WEARING CLOTHES LIKE THAT; AND THE BRATZ CONCEPT THAT WE SAW,
8    THAT'S WHAT WE HAD IN MIND.'
9    AND THEN THEY GO ON TO ASK MR. LARIAN, 'WHEN? WHEN
10   DID YOU HAVE THAT?' HE SAYS, 'DID YOU HAVE THIS IDEA FOR DOLLS
11   THAT HAD THAT TYPE OF CLOTHING BEFORE OR AFTER YOU FIRST MET
12   CARTER BRYANT?'
13   'AFTER.'
14   'CAN YOU PUT THE TIME PERIOD APPROXIMATELY WHEN YOU
15   HAD THAT IDEA?'
16   'I CAN'T.'
17   SO BOTTOM LINE, YOUR HONOR, HE —
18   THE COURT: HE USES THE ROYAL 'WE,' THOUGH.
19   MR. HERRINGTON: SAY THAT ONE MORE TIME.
20   THE COURT: HE USES THE ROYAL 'WE.' 'WE HAD THAT.'
21   MR. HERRINGTON: HE DOES. HE DOES USE THAT PHRASE.
22   THE COURT: WHO'S HE TALKING ABOUT? HIMSELF?
23   WHO'S THE 'WE?
24   MR. HERRINGTON: I DO NOT KNOW, YOUR HONOR.
25   THE COURT: OKAY.

Page 19

1    MR. HERRINGTON: ALTHOUGH, THAT QUESTION, CERTAINLY
2    MATTEL HAD THE OPPORTUNITY TO ASK THEM TO POINT OUT THAT
3    AMBIGUITY.
4    THE COURT: I KNOW.
5    MR. ALGER: YOUR HONOR, TIM ALGER AGAIN.
6    AND I WANT TO TAKE THE COURT'S TIME BECAUSE I HAVE
7    GREATER DEPTH OF KNOWLEDGE ABOUT THE CASE THAN MR. NIBORSKI.
8    THE COURT MENTIONED THAT THIS MIGHT BE A PHASE-TWO
9    ISSUE. I DON'T THINK IT'S A PHASE-TWO ISSUE AT ALL. I THINK
10   IT'S A PHASE-ONE ISSUE.
11   THE COURT: EXPLAIN.
12   MR. ALGER: THERE'S A CLAIM OF OWNERSHIP MADE BY
13   MR. LARIAN TO THE WORLD HERE. 900,000 COPIES OF BUSINESSWEEK
14   ARE CIRCULATED EACH WEEK. I CAN'T THINK OF A MORE EFFECTIVE
15   WAY FOR MR. LARIAN TO GET OUT TO THE BUSINESS COMMUNITY AND THE
16   WORLD THAT HE WAS CLAIMING TO OWN BRATZ; AND THIS WAS PART OF A
17   CONSISTENT DISSEMINATION OF INFORMATION BY MGA OVER THE COURSE
18   OF YEARS, WHICH WILL BE ESTABLISHED AT TRIAL.
19   THE COURT: HOLD ON A SECOND.
20   HOW IS THAT EVIDENCE THAT YOU WOULD WANT TO BE
21   RELYING UPON IN YOUR PHASE-ONE CLAIMS?
22   MR. ALGER: BECAUSE, YOUR HONOR, IT SHOWS GUILTY
23   KNOWLEDGE AND THAT MR. LARIAN WAS HIDING —
24   THE COURT: GUILTY KNOWLEDGE OF WHAT?
25   MR. ALGER: THAT MATTEL TRULY OWNED THESE DRAWINGS.

Page 20

1    THE COURT: BECAUSE MR. LARIAN IS CLAIMING OWNERSHIP
2    FOR THE DOLL, THAT SHOWS THAT MATTEL OWNS THE DOLL?
3    MR. ALGER: THERE WILL BE ESTABLISHED AT TRIAL —
4    THERE'S A CONSISTENT COURSE OF CONDUCT BY MGA, INCLUDING
5    INTERNAL COMMUNICATIONS, INCLUDING PUBLIC STATEMENTS, ABOUT
6    BRATZ AND ALWAYS ATTRIBUTING THE SOURCE OF BRATZ TO SOMETHING
7    ELSE OTHER THAN CARTER BRYANT. AND IT'S ACKNOWLEDGED IN THE
8    DISCOVERY BY MGA THAT THEY NEVER — IT WAS NEVER PUBLISHED
9    PRIOR TO THE JULY 2003 ARTICLE IN THE WALL STREET JOURNAL THAT
10   BRYANT WAS THE CREATOR OF BRATZ.
11   THIS IS ALMOST THREE YEARS LATER.
12   MGA DID ITS BEST TO COVER UP THE TRUE ORIGINS OF
13   BRATZ THROUGHOUT THAT PERIOD OF TIME, AND MR. LARIAN WAS
14   CONTINUING TO DO THAT RIGHT UP AND THROUGH THE SUMMER OF 2003
15   WHEN HE TALKED TO MR. PALMERI.
16   THE COURT: I UNDERSTAND THOSE ALLEGATIONS, AND I
17   UNDERSTAND HOW THOSE ALLEGATIONS FIGURE PROMINENTLY IN WHAT WE
18   CALL THE PHASE-TWO COMPLAINT. I GUESS YOU'RE GOING TO HAVE TO
19   EXPLAIN TO ME HOW THEY PLAY INTO THE NARROW ISSUES THAT THE
20   COURT HAS SPECIFIED FOR PHASE ONE.
21   MR. ALGER: YOUR HONOR, MR. LARIAN'S CONDUCT, HIS
22   STATEMENTS, WERE MADE FOR THE PURPOSE OF COVERING UP THE TRUE
23   OWNERSHIP OF THESE DRAWINGS.
24   HE KNEW THAT MATTEL OWNED THE DRAWINGS. HE KNEW THAT
25   THERE WAS A PROBLEM RELATED TO MR. BRYANT'S DEVELOPMENT OF THE

Page 21

1    DRAWINGS WHILE HE WAS EMPLOYED BY MATTEL. HE WENT OUT OF HIS
2    WAY TO MAKE SURE THAT IT WAS NOT DISSEMINATED THAT MR. BRYANT
3    WAS THE INVENTOR OF BRATZ. THAT'S GUILTY KNOWLEDGE, AND IT'S
4    VERY PERSUASIVE TO THE JURY. IT'S GOING TO BE A CRITICAL PART
5    OF THE PHASE-ONE TRIAL HERE, YOUR HONOR. I DON'T WANT THERE TO
6    BE ANY MISUNDERSTANDING ABOUT THAT. MATTEL'S VIEW IS THAT THIS
7    IS VITAL TO THE PHASE-ONE CASE. MR. LARIAN'S CONDUCT IN
8    COVERING UP THE TRUE ORIGINS OF BRATZ AND MR. BRYANT'S
9    INVOLVEMENT IN BRATZ, PARTICULARLY DURING THE PERIOD OF TIME
10   WHEN HE WAS EMPLOYED BY MATTEL, GOES DIRECTLY TO THE ISSUE OF
11   WHETHER MGA KNEW THAT THEY WERE PURCHASING, FROM MR. BRYANT,
12   PROPERTY THAT BELONGED TO MATTEL. IT'S CRITICAL TO PHASE ONE,
13   AND I DON'T WANT THERE TO BE ANY MISUNDERSTANDING ABOUT THAT.
14   SO WHAT WE HAVE HERE IS A COURSE OF CONDUCT. THIS
15   STATEMENT TO MR. PALMERI, IT'S NOT CUMULATIVE BECAUSE IT'S PART
16   OF A COURSE OF CONDUCT. IT'S ALSO UNIQUE IN THAT IT WAS MADE
17   TO THE WORLD. IT WASN'T JUST MADE TO SOMEONE OVER LUNCH.
18   THE COURT: I'M SORRY, I DON'T UNDERSTAND WHAT YOU
19   JUST SAID THERE.
20   IT'S NOT CUMULATIVE BECAUSE IT WAS PART OF THE COURSE
21   OF CONDUCT?
22   MR. ALGER: IT'S NOT CUMULATIVE FOR TWO MAJOR
23   REASONS, YOUR HONOR; AND THIS IS WHERE, I THINK —
24   THE COURT: WELL, YOU SAID BECAUSE OF THE COURSE OF
25   CONDUCT. I DON'T UNDERSTAND THE —

## Page 22

1  MR. ALGER: I THINK THERE'S –

2  THE COURT: DON'T SPEAK OVER ME.

3  THERE'S NOBODY ELSE IN THE COURTROOM. WE'VE GOT ALL

4  MORNING. SLOW DOWN.

5  MR. ALGER: YOUR HONOR, I THINK THERE'S TWO THINGS

6  THAT WILL MAKE THIS DIFFERENT THAN THE SITUATION THAT

7  MR. WICKERS HAS DESCRIBED.

8  ONE, THE STATEMENTS THAT MR. LARIAN MADE TO PALMERI

9  ARE UNIQUE IN THAT THEY WERE MADE TO A REPORTER THAT WAS GOING

10  TO SEND THIS OUT TO THE WORLD. THAT DISTINGUISHES IT FROM

11  MR. LARIAN TALKING TO SOMEONE IN THE OFFICE, TALKING TO SOMEONE

12  OVER LUNCH, OR EVEN TALKING TO SOMEONE ON THE STREET CORNER AND

13  SHOUTING IT FROM THE CORNER OF FIGUEROA AND EIGHTH IN DOWNTOWN

14  LOS ANGELES. HE WAS SENDING IT OUT TO THE WORLD, TO A

15  BUSINESSWEEK REPORTER WHO WAS FAMILIAR WITH THE TOY INDUSTRY,

16  WHO HAD BEEN WRITING AND CONTINUES TO WRITE ABOUT THE TOY

17  INDUSTRY THAT'S FOLLOWED ON WALL STREET. HE WAS SENDING OUT

18  THE INFORMATION. SO THAT MAKES IT UNIQUE RIGHT THERE.

19  EVEN IF MR. LARIAN HAD SAID THE EXACT SAME WORDS TO

20  SOMEONE ELSE, IT DOESN'T MAKE THIS CUMULATIVE. IT'S UNIQUE

21  BECAUSE IT WAS SENT OUT PURPOSELY AND INTENTIONALLY TO THE

22  WORLD.

23  SECOND, IT'S NOT CUMULATIVE, BECAUSE IT'S PART OF A

24  COURSE OF CONDUCT. IT SHOWS THAT THERE WAS INTENTIONALITY ON

25  THE PART OF MGA. IT SHOWS THAT THIS WAS NOT JUST A MISTAKE, A

## Page 23

1  REPORTER MISSTATING SOMETHING, MISQUOTING SOMETHING, SOMETHING

2  BEING MISUNDERSTOOD. IT SHOWS, OVER THE COURSE OF THREE TO

3  FOUR YEARS, MGA CONSISTENTLY SENDING OUT DIFFERENT STORIES,

4  OTHER THAN BRYANT'S INVOLVEMENT, TO THE WORLD. AND WHETHER HE

5  SAID IT TO THIS PERSON ON DAY ONE AND ANOTHER PERSON ON DAY

6  TWO, ANOTHER PERSON ON DAY THREE, IT'S ALL PART OF THE COURSE

7  OF CONDUCT AND INTENTIONALITY.

8  AND ALSO, BECAUSE AGAIN, BECAUSE I HAVE A GREATER

9  DEPTH OF KNOWLEDGE ON THIS, I WANTED TO POINT OUT THAT IN THE

10  CASE OF THE WALL STREET JOURNAL REPORTER, MGA CHALLENGED THAT

11  REPORTER'S RECOLLECTION OF THE COMMUNICATIONS WITH MR. LARIAN.

12  AND, FOR EXAMPLE, MGA'S COUNSEL SAID TO MAUREEN TKACIK, THE

13  WALL STREET JOURNAL REPORTER, THEY SAID 'WELL, MR. LARIAN, YOU

14  KNOW THAT ENGLISH IS HIS SECOND LANGUAGE, RIGHT? DID YOU

15  REALLY UNDERSTAND HIM?'

16  AND MAUREEN TKACIK SAID, 'I UNDERSTOOD HIM VERY WELL.

17  I DIDN'T HAVE A PROBLEM.'

18  THEN THEY SAID, 'WELL, YOU KNOW MR. LARIAN WAS ON A

19  CELL PHONE WHEN HE TALKED TO YOU, MS. TKACIK. DIDN'T IT CUT

20  OUT? DIDN'T YOU HAVE PROBLEMS WITH THE CONNECTION?'

21  AND MS. TKACIK SAID, 'THERE WASN'T A PROBLEM. IT WAS

22  QUITE CLEAR WHEN I TALKED TO MR. LARIAN, WHEN HE TOLD ME THAT

23  THERE WAS A DOLL DESIGN CONTEST IN 1999.'

24  SO MGA IS GOING TO BE HEARD TO ARGUE TO THIS JURY IN

25  A COUPLE OF MONTHS THAT THE REPORTERS HEARD IT WRONG; THAT

## Page 24

1  THERE WAS SOME AMBIGUITY. AND WITH ALL DUE RESPECT TO

2  MR. HERRINGTON, WHEN HE TALKS ABOUT MR. LARIAN AT THE SECOND

3  DEPOSITION SAYING, 'OH, I'M NOT DENYING IT,' THE FACT OF THE

4  MATTER IS, THEY WANT – MGA AND BRYANT WANT TO CREATE AMBIGUITY

5  ABOUT THIS. AND MATTEL IS ENTITLED TO GET THE EVIDENCE

6  NECESSARY TO PRESENT TO THE JURY THAT THERE'S NO QUESTION ABOUT

7  THIS; THAT IT WAS AN INTENTIONAL, DELIBERATE, CONSISTENT COURSE

8  OF CONDUCT BY MGA TO COVER UP THE TRUE ORIGINS OF BRATZ AND

9  MR. BRYANT'S INVOLVEMENT, BECAUSE THEY KNEW IT AND THEY KNEW

10  THAT MATTEL OWNED THAT PROPERTY.

11  THIS IS ALL VERY CRITICAL TO PHASE ONE. IT'S AN

12  IMPORTANT PART OF THE CASE. AND THAT NEEDS TO BE CONSIDERED,

13  YOUR HONOR.

14  THE COURT: THANK YOU, COUNSEL.

15  MR. ALGER: THANK YOU.

16  THE COURT: ANYTHING FURTHER?

17  MR. HERRINGTON: BRIEFLY, YOUR HONOR.

18  THE COURT: YOU MAY.

19  MR. HERRINGTON: JUST FOR THE RECORD AND THAT IT'S

20  CLEAR, MGA AND MR. LARIAN OBVIOUSLY CHALLENGE THE STATEMENTS

21  THAT WERE JUST RENDERED BY MATTEL'S COUNSEL REGARDING NOT ONLY

22  THE RELEVANCE, BUT THE STATE OF MIND AND INTENTIONALITY SOME

23  SEEK TO COVER UP.

24  I THINK THE RECORD THAT YOUR HONOR HAS IN FRONT OF

25  HIM ON SUMMARY JUDGMENT WILL REFLECT THAT THERE WERE OTHER

## Page 25

1  PUBLISHED STATEMENTS THAT WERE ACTUALLY IN MATTEL'S POSSESSION

2  REGARDING CARTER BRYANT'S INVOLVEMENT, AT LEAST AS EARLY AS

3  2002, IF NOT EARLIER, INCLUDING STATEMENTS ON THE YAHOO!

4  WEBSITE THAT WERE PRESENTED –

5  THE COURT REPORTER: I'M SORRY. I CAN'T HEAR YOU

6  VERY WELL.

7  MR. HERRINGTON: I'M SORRY.

8  I WAS JUST REFERENCING, YOUR HONOR, THE STATEMENTS

9  THAT ARE IN THE SUMMARY JUDGMENT RECORD REGARDING

10  CARTER BRYANT'S INVOLVEMENT THAT, I BELIEVE, ARE AT LEAST AS

11  EARLY AS EARLY 2002 IN CARTER BRYANT'S INVOLVEMENT IN BRATZ.

12  THE COURT: WE'LL EXPLORE THIS MORE IN DETAIL NEXT

13  TUESDAY –

14  MR. HERRINGTON: SURE.

15  THE COURT: – WHEN I HEAR ON THE MOTIONS FOR SUMMARY

16  JUDGMENT. I MEAN, THERE'S NO QUESTION THAT THERE ARE

17  STATEMENTS, BUT THEN THERE'S OTHER STATEMENTS. THE QUESTION IS

18  WHETHER OR NOT – YOU KNOW, WHAT A REASONABLE PERSON MIGHT BE

19  ON NOTICE FOR AND WHEN THEY WERE ON NOTICE. BUT WE'LL GET INTO

20  THAT NEXT.

21  MR. HERRINGTON: THAT WAS JUST THE ONE POINT I WANTED

22  TO...

23  THE COURT: AND THERE'S NO QUESTION THAT, I THINK,

24  THIS BUSINESSWEEK ARTICLE FIGURES INTO THAT CALCULUS. I'M NOT

25  EXACTLY SURE AT THIS POINT HOW IT DOES, AND I'LL HEAR ARGUMENT

JULY 24, 2006

EXHIBIT **5**

PAGE **32**

7 (Pages 22 to 25)

ED CV 04-09049

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

Page 26

1 ON THAT NEXT TUESDAY.
2     I KNOW YOU'RE OBJECTING TO THE RELEVANCE OF THIS
3 GUILTY KNOWLEDGE ARGUMENT IN PHASE ONE.
4     DO YOU CARE TO ELABORATE ON THAT, COUNSEL, AS TO WHY
5 YOU VIEW THAT IT'S NOT VERY RELEVANT?
6     MR. HERRINGTON: ACTUALLY, NO, YOUR HONOR, WE'RE NOT
7 GOING TO ARGUE THAT IT'S NOT RELEVANT. IT'S CLEARLY PART OF
8 MATTEL'S CASE IN TERMS OF WHY THEY ARE ARGUING IN PHASE ONE
9 THAT SOMEHOW THE STATUTE OF LIMITATIONS OR LATCHES DOESN'T
10 APPLY. LATCHES IS AN EQUITABLE DEFENSE, SO I'M NOT –
11     THE COURT: BEYOND THAT. I THINK HE'S ARGUING THAT
12 IN ADDITION TO THE STATUTE OF LIMITATIONS AND LATCHES, THAT
13 THERE IS SOMETHING FURTHER – WHAT I JUST HEARD WAS THAT
14 THERE'S A FURTHER RELEVANCY TO THE ACTUAL SUBSTANTIVE ISSUES IN
15 PHASE ONE.
16     MR. HERRINGTON: BEYOND THE LATCHES –
17     THE COURT: THIS GOES TO THE EVIDENCE OF THE
18 OWNERSHIP OF THE BRATZ DOLLS.
19     MR. HERRINGTON: THAT, WE DO NOT SEE, YOUR HONOR.
20 IT'S BEYOND LATCHES –
21     THE COURT: I'M INVITING YOU TO ELABORATE ON –
22     MR. HERRINGTON: NO. ABSOLUTELY.
23     I MEAN, THE ISSUE BEFORE THE COURT IN TERMS OF THE
24 OWNERSHIP OF BRATZ WILL BE ONE OF CONTRACTUAL INTERPRETATION,
25 AND THEN LOOKING AT THE FACTS SURROUNDING THE DEVELOPMENT OF

Page 27

1 BRATZ PRODUCTS AND THE DRAWINGS THAT BRYANT CREATED.
2     THE COURT: COUNSEL JUST SAID THAT THIS IS PART OF
3 THE FACTS SURROUNDING THE DEVELOPMENT OF BRATZ.
4     MR. HERRINGTON: UNDERSTOOD, YOUR HONOR. AND I GUESS
5 I HAVE JUST A LITTLE BIT OF A HARD TIME BELIEVING THAT,
6 CONSIDERING THAT THIS ARTICLE COMES OUT IN THE 2003 TIME FRAME
7 AND THE DEVELOPMENT OF BRATZ OCCURS BETWEEN LATE OCTOBER OF
8 2000 AND THEN IS FIRST RELEASED – THE FIRST PRODUCTION START
9 DATE IS IN MAY OF 2001.
10     THE COURT: RIGHT. BUT THE STATEMENT IN 2003 IS
11 REFERENCING BACK IN TIME TO THIS PERIOD OF WHEN BRATZ WAS
12 DEVELOPED. IT'S ISAAC LARIAN, ALLEGEDLY. WE DON'T KNOW FOR
13 SURE BECAUSE WE DON'T KNOW EXACTLY WHAT THE SOURCE OF THE
14 REPORTER IS. HE'S TALKING ABOUT THAT TIME PERIOD THAT YOU JUST
15 REFERENCED, WHEN BRATZ WAS CREATED.
16     MR. HERRINGTON: ABSOLUTELY, YOUR HONOR.
17     AND, OBVIOUSLY – AND MR. LARIAN WILL BE ON THE STAND
18 AND HE CAN TESTIFY EXACTLY WHAT HE INTENDED BY THAT STATEMENT
19 BEYOND –
20     THE COURT: HE SAID HE DOESN'T RECALL IT.
21     MR. HERRINGTON: HE DOESN'T DENY MAKING IT. HE WAS
22 ASKED IF THE STATEMENT WAS TRUE, AND HE SAYS, 'IT'S PARTIALLY
23 TRUE.' HE SAYS, 'I SAW MY KIDS AROUND IN HIP-HUGGERS, AND THAT
24 WAS PART OF THE BASIS WHEN WE WERE DEVELOPING BRATZ; THAT WAS
25 PART OF WHAT WE LOOKED AT,' WHICH IS PERFECTLY CONSISTENT.

Page 28

1     THE COURT: HE WAS ASKED, QUOTE, 'DID YOU EVER SAY
2 THAT TO ANYBODY?' HE WAS SHOWN THE ARTICLE; HE SAYS, ANSWER:
3 'IT'S POSSIBLE I DID. I DON'T RECALL.'
4     MR. HERRINGTON: AND THEN THE NEXT STATEMENT IS, 'ARE
5 YOU DENYING YOU SAID IT?
6     AND HE SAYS, 'NO, I AM NOT.'
7     THE COURT: WELL, NO. THE NEXT STATEMENT IS,
8     QUESTION: 'SO YOU'RE NOT SURE ONE WAY OR THE OTHER.'
9     ANSWER: 'I DON'T RECALL IT. I MIGHT HAVE SAID IT.'
10     QUESTION: 'YOU'RE NOT DENYING IT?'
11     'NO.'
12     MR. HERRINGTON: THAT'S RIGHT. AND THEN HE'S ASKED
13 ABOUT THE TRUTH OF THE STATEMENT ON THE NEXT PAGE.
14     THE COURT: AND THEN HE SAYS, 'PARTIALLY.'
15     MR. HERRINGTON: THAT'S RIGHT. AND THEN HE GOES ON
16 TO EXPLAIN WHAT HE MEANT.
17     THE COURT: THAT'S WHEN HE USES THE ROYAL 'WE.'
18     OKAY. ALL RIGHT. I THINK I HAVE A PRETTY GOOD SENSE
19 OF COUNSELS' ARGUMENTS ON THIS, AND I'LL ISSUE A RULING ON THAT
20 SHORTLY.
21     THE LAST ISSUE I WANTED TO TAKE UP, I RECEIVED LAST
22 WEEK THIS EX-PARTE APPLICATION TO FILE SUPPLEMENTAL EXPERT
23 REPORTS. THIS WAS FILED BY MATTEL IN ANTICIPATION OF THE
24 ISSUE – THE DISCOVERY ISSUE BEING RESOLVED BY JUDGE INFANTE AS
25 TO WHETHER OR NOT TO PERMIT FURTHER TESTING OF BRYANT DOCUMENTS

Page 29

1 AND THE CREATION OF, ESSENTIALLY, A SURREBUTTAL EXPERT REPORT.
2 BUT SINCE WE'RE PAST THE EXPERT CUTOFF DATE OF MARCH 31ST, THEY
3 WANTED TO GET LEAVE – OR THEY'RE SEEKING LEAVE TO HAVE SEVEN
4 DAYS AFTER THE DISCOVERY MASTER'S ORDER, ASSUMING THAT IT'S IN
5 THEIR FAVOR, TO FILE A REPORT.
6     IN READING THROUGH THIS, IT STRIKES THE COURT AS
7 ESSENTIALLY SEEKING AN ADVISORY OPINION, BECAUSE WE CERTAINLY
8 DON'T KNOW HOW THE DISCOVERY MASTER IS GOING TO RULE. THE ONLY
9 PROBLEM I HAVE WITH THAT – AND THIS WAS NOTED IN A FOOTNOTE IN
10 THE MATTEL APPLICATION AND THEN EXPANDED UPON IN THE REPLY – I
11 GAVE SIMILAR RELIEF TO MGA LAST MONTH WHEN THEY ASKED TO HAVE
12 AN EXTRA 14 DAYS AFTER THE DISCOVERY MASTER RULED ON CERTAIN
13 MATTERS. I SUPPOSE THE ONLY DISTINCTION THAT I SEE IN MY MIND
14 IS AT LEAST WE WERE STILL WITHIN THE EXPERT DISCOVERY PERIOD.
15 THAT HAS NOW SINCE EXPIRED. BUT I WANT TO MAKE SURE THAT I'M
16 TREATING BOTH SIDES FAIRLY IN THIS MATTER.
17     MGA REALLY DIDN'T RESPOND TO THIS MUCH AT ALL IN THE
18 COURSE OF THEIR OPPOSITION. ADMITTEDLY, IT WAS ONLY RAISED IN
19 A FOOTNOTE IN THE INITIAL APPLICATION. BUT I WANTED TO GIVE
20 MGA THE FIRST OPPORTUNITY THAT I HAD HERE TO RESPOND, IF THEY
21 WOULD.
22     MR. HERRINGTON: JUST BRIEFLY, YOUR HONOR.
23     I THINK THERE'S A BIT OF A DISTINCTION BETWEEN THE
24 TWO SITUATIONS THAT ARE BEING IDENTIFIED HERE. IN THE INSTANCE
25 OF MGA AND THE 14 DAYS THAT YOUR HONOR DID PROVIDE TO US, THAT

EXHIBIT 5
PAGE 33

8 (Pages 26 to 29)

JULY 24, 2006

ED CV 04-09049

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

## Page 30

1   WAS IN A SITUATION WHERE WE WERE -- FOR THE FIRST TIME, WE HAD
2   RECEIVED AN EXPERT REPORT THAT HAD TESTED CERTAIN MATERIALS.
3   WE HAD SOUGHT ACCESS TO THOSE MATERIALS FOR OUR TESTING.  AND
4   THEN THAT WAS AN ISSUE THAT WAS BROUGHT BEFORE THE DISCOVERY
5   MASTER, AND THEN WE CAME TO YOUR HONOR FOR AN EXTENSION OF TIME
6   SO THAT ONCE THE DISCOVERY MASTER RULED, WE COULD THEN OBTAIN
7   THOSE MATERIALS, ASSUMING IT'S ALLOWED, DO OUR TESTING, AND
8   PREPARE THE REPORT.
9       HERE WE HAVE A SITUATION WHERE -- IT'S ACTUALLY SORT
10  OF IRONIC -- WE HAVE -- MATTEL DID THE TESTING ALREADY ON THESE
11  MATERIALS.  MATTEL SUBMITTED THE EXPERT REPORT ON THOSE
12  MATERIALS.  WE THEN EXAMINED THOSE MATERIALS, OR OUR EXPERTS
13  DID; PROVIDED REBUTTAL REPORTS.  AND THOSE REBUTTAL REPORTS
14  SHOWED THAT MATTEL HAD MISTESTED AND MISSED SOME THINGS IN
15  DOING THE TESTING.
16      NOW WE HAVE A SITUATION WHERE MATTEL IS BASICALLY
17  SEEKING A DO-OVER ON THE EXPERT REPORTS.
18      THE COURT:  THAT SOUNDS LIKE A GOOD ARGUMENT,
19  PERHAPS, THAT YOU MIGHT WANT TO MAKE TO JUDGE INFANTE AS TO WHY
20  NOT TO ALLOW THEM TO DO THAT.  BUT IF JUDGE INFANTE DOES ALLOW
21  THEM TO DO THAT IN ADDRESSING THE MERITS OF THE DISCOVERY --
22  WHICH THIS COURT DOES NOT WANT TO OFFER ANY OPINION OR
23  INTERFERE; I'VE TRIED TO MAKE THAT CONSISTENTLY CLEAR THE LAST
24  THREE OR FOUR MONTHS, THAT ALL DISCOVERY MATTERS GO TO JUDGE
25  INFANTE AS A MATTER OF FIRST IMPRESSION.

## Page 31

1       WHY SHOULD I NOT, ASSUMING THAT HE DOES DECIDE WITH
2   MATTEL, GIVE THEM LEAVE TO FILE A SURREBUTTAL REPORT, AS I DID
3   IN YOUR CASE?
4       MR. HERRINGTON:  YOUR HONOR, LET ME MAKE SURE I
5   UNDERSTAND WHAT YOU'RE ASKING ME.
6       IT IS ASSUMING THAT ON THE MERITS, THE DISCOVERY
7   MASTER AGREES WITH MATTEL'S ARGUMENT THAT THEY SHOULD BE
8   PERMITTED LEAVE TO FILE A SURREBUTTAL?
9       THE COURT:  RIGHT.  THAT'S ALL THEY'RE BASICALLY
10  ASKING FOR, AT LEAST AS EXPLAINED IN THEIR REPLY.  THEY'RE
11  SIMPLY ASKING -- THEY DON'T WANT TO BE WASTING THEIR TIME
12  BEFORE JUDGE INFANTE.  AND IF JUDGE INFANTE RULES IN YOUR
13  FAVOR, FOR THE REASON THAT YOU JUST STATED OR FOR ANY OTHER
14  REASON, THEN THIS IS ALL A MOOT POINT AND NOTHING'S GETTING
15  FILED.  THEY JUST WANT TO KNOW THAT IF JUDGE INFANTE DOES FIND
16  IN THEIR FAVOR, THAT THEY SHOULD BE ABLE TO FILE A SURREBUTTAL.
17  THEY DON'T WANT TO HAVE THE COURT'S CASE MANAGEMENT CALENDAR
18  SOMEHOW PRECLUDING JUDGE INFANTE FROM RULING IN THEIR FAVOR.
19  THEY WANT A RULING ON THE MERITS, AS OPPOSED TO A PROCEDURAL
20  CONCERN THAT SOMEHOW EXPERT DISCOVERY IS CLOSED.
21      MR. HERRINGTON:  UNDERSTOOD, YOUR HONOR.
22      I GUESS I DID NOT UNDERSTAND YOUR QUESTION THE FIRST
23  TIME.
24      IN TERMS OF THAT SPECIFIC QUESTION, SHOULD MATTEL, IN
25  FAIRNESS, BE ALLOWED, ASSUMING THEY WIN BEFORE JUDGE INFANTE, I

## Page 32

1   DON'T THINK WE'RE GOING TO OPPOSE THAT, THAT QUESTION.  THE
2   CONCERN, IN MY MIND, IS SIMPLY ONE OF TIMING AT THAT POINT, IF
3   WE GET TO THE POINT WHERE THE DISCOVERY MASTER HAS RULED THAT,
4   YES, A REBUTTAL REPORT CAN BE PREPARED AND FILED.
5       IN OTHER WORDS, THE DISCOVERY MASTER FINDS GOOD CAUSE
6   AND GRANTS THEM LEAVE.
7       THE COURT:  RIGHT.
8       MR. HERRINGTON:  AND WHERE ARE WE, THEN, IN THAT
9   SITUATION?
10      IF THAT HAPPENS QUICKLY, THEN WE PROBABLY HAVE NO
11  ISSUE.  IF THAT HAPPENS MUCH, MUCH CLOSER TO TRIAL, I HAVE SOME
12  CONCERNS; WE HAVE SOME CONCERNS; THE AMBIGUOUS 'WE'; MR. NOLAN
13  WILL HAVE SOME CONCERNS, JUST ABOUT THE TIMING OF THAT AND
14  MAKING SURE THAT WE AREN'T PREJUDICED IN OUR ABILITY TO RESPOND
15  TO THAT REBUTTAL.
16      THE COURT:  OKAY.  VERY WELL.  IF THAT'S YOUR
17  POSITION, THEN, IN LIGHT OF MY CONFIDENCE THAT JUDGE INFANTE
18  WILL ADDRESS THIS PROMPTLY, THE COURT WILL GRANT MATTEL'S
19  MOTION FOR THE --
20      YOU'RE ONLY ASKING FOR SEVEN DAYS, AS I UNDERSTAND
21  IT; CORRECT?
22      MR. ALGER:  THAT'S CORRECT, YOUR HONOR.  I HAVEN'T
23  REVIEWED THE PAPERS RECENTLY, BUT I BELIEVE THAT'S CORRECT.
24      THE COURT:  I'LL GRANT SEVEN DAYS FROM THE TIME THAT
25  JUDGE INFANTE RULES ON THAT MOTION.

## Page 33

1       I'M GOING TO MAKE IT CLEAR THAT THE COURT'S GRANTING
2   OF THIS MOTION IN NO WAY SUGGESTS THAT THE MOTION BEFORE JUDGE
3   INFANTE HAS OR DOES NOT HAVE ANY MERITS.  I'M SIMPLY
4   SUGGESTING, AS A MATTER OF CASE MANAGEMENT, THAT SHOULD JUDGE
5   INFANTE FIND GOOD CAUSE FOR WHAT MATTEL IS SEEKING, THAT I WILL
6   AFFORD THEM THE OPPORTUNITY TO SUBMIT THE SURREBUTTAL REPORT.
7       IF HE DOES NOT FIND GOOD CAUSE, THEN, OF COURSE,
8   MATTEL HAS THE AVENUE TO APPEAL THAT MATTER TO THIS COURT.  BUT
9   SHORT OF THAT, NOTHING IS HAPPENING.
10      COUNSEL?
11      MR. ALGER:  YOUR HONOR, COULD I ASK ONE HOUSEKEEPING
12  QUESTION?
13      THE COURT:  SURE.
14      MR. ALGER:  ONE OF MY AREAS OF RESPONSIBILITY IN THIS
15  CASE IS SOME OF THE LOGISTICAL ISSUES, INCLUDING HOUSING OUT
16  HERE IN RIVERSIDE DURING THE TWO-MONTH PERIOD WE'RE GOING TO BE
17  IN TRIAL.
18      WE'VE BEEN CHECKING AT THE HOTELS, AND WE LEARNED
19  LAST WEEK THAT THE MISSION INN HAS BEEN BOOKED BY OUR
20  OPPOSITION, AND THEY MADE MISSION INN PROMISE NOT TO MAKE ANY
21  ROOMS AVAILABLE TO MATTEL.
22      THE COURT:  THIS HAPPENS.  THIS IS THE SECOND TIME
23  THIS HAS HAPPENED THIS YEAR.
24      MR. ALGER:  WE DO THINK IT'S IMPROPER, AND THAT'S WHY
25  I WANTED TO BRING IT UP TO THE COURT.

JULY 24, 2006

EXHIBIT  5
PAGE  34

9  (Pages 30 to 33)

ED CV 04-09049

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

## Page 34

1    THE COURT: WOW.

2    MR. ALGER: ALTHOUGH THERE ARE OTHER HOTELS IN THE

3 INLAND EMPIRE, IT CERTAINLY PUTS US AT A DISADVANTAGE; AND I

4 JUST DON'T THINK IT'S A CIVIL WAY OF DEALING WITH THE

5 SITUATION.

6    THE COURT: I REALLY DON'T KNOW IF I HAVE

7 JURISDICTION OVER THE MISSION INN'S RESERVATION POLICY.

8    MR. ALGER: BUT CERTAINLY, YOU COULD ADMONISH MGA TO

9 CORRECT THE MISSION INN'S UNDERSTANDING OF WHO THEY CAN RENT

10 TO.

11    MR. HERRINGTON: MAY I?

12    THE COURT: PLEASE, BY ALL MEANS. THIS IS AN

13 INTERESTING ISSUE.

14    MR. HERRINGTON: YOUR HONOR, ONE THING THAT I WOULD

15 EXPRESS SOMEWHAT SURPRISE AT IS, I DON'T BELIEVE WE'VE BEEN

16 CONTACTED BY COUNSEL FOR MATTEL TO DISCUSS THIS ISSUE PRIOR TO

17 THEM RAISING IT WITH YOUR HONOR.

18    THE COURT: THEN WHY DON'T YOU DO THAT. WHY DON'T

19 YOU HAVE A DISCUSSION AMONGST YOURSELVES. I THINK THAT'S A

20 FAIR THING TO DO.

21    IT SOUNDS LIKE MGA IS OPEN TO DISCUSSING THIS ISSUE;

22 SO WHY DON'T YOU TAKE THAT INVITATION AND PROCEED ACCORDINGLY,

23 COUNSEL.

24    MR. ALGER: BASED ON PREVIOUS DISCUSSIONS ABOUT MANY

25 THINGS IN THIS CASE, I DON'T HAVE A HIGH CONFIDENCE LEVEL.

## Page 35

1 THAT'S WHY I BRING IT UP.

2    THE COURT: I APPRECIATE THAT, BUT I THINK THIS MIGHT

3 BE PRECISELY THE TYPE OF THING -- THE TYPE OF NONLEGAL ISSUE

4 THAT, PERHAPS, THERE CAN BE SOME ACCOMMODATION, SO TO SPEAK.

5    MR. ALGER: THANK YOU, YOUR HONOR.

6    THE COURT: ALL RIGHT. VERY WELL.

7    THE MISSION INN IS PROBABLY THE NICEST HOTEL WE HAVE

8 OUT HERE, SO I CAN UNDERSTAND WHY THERE'S A DESIRE. IT'S A BIG

9 ENOUGH HOTEL THAT MAYBE SOMETHING COULD BE SET UP WHERE ONE

10 SIDE HAS ONE WING AND THE OTHER SIDE HAS A SEPARATE WING; AND

11 ONE WEEK SOMEONE COULD EAT AT DUANE'S AND THE NEXT

12 WEEK SOMEBODY ELSE COULD EAT AT DUANE'S. I DON'T KNOW. I

13 WOULD HOPE THAT YOU WOULD BE ABLE TO FIGURE THAT OUT.

14    BUT I'LL ISSUE AN ORDER ON THE REPORTER ISSUE.

15    AND I'VE RULED ON THE EX-PARTE APPLICATION.

16    I DON'T THINK THERE'S ANYTHING ELSE PENDING BEFORE

17 THE COURT UNTIL NEXT TUESDAY, SO I'LL SEE YOU ALL THEN.

18    MR. ALGER: THANK YOU.

19    MR. WICKERS: THANK YOU, YOUR HONOR.

20    MR. HERRINGTON: THANK YOU.

21

22

23

24 / / /

25 / / /

## Page 36

1    CERTIFICATE

2

3 I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED

  STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF

4 THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE

  ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

5 CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

  THE UNITED STATES.

6

7

8 THERESA A. LANZA, RPR, CSR         DATE

  OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

10  (Pages 34 to 36)

# EXHIBIT 6

Case 2:04-cv-09049-DOC-RNB   Document 3243-3   Filed 04/22/08   Page 38 of 42   Page ID
#:54697
Case 2:04-cv-09049-SGL-RNB   Document 3086   Filed 04/14/2008   Page 1 of 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                              Date:  April 14, 2008

Title:   CARTER BRYANT -v- MATTEL, INC.

<u>Consolidated With Related Actions</u>:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
==================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         Jim Holmes                              Theresa Lanza
         Courtroom Deputy Clerk                  Court Reporter

<u>ATTORNEYS PRESENT FOR CARTER BRYANT</u>:      <u>ATTORNEYS PRESENT FOR MATTEL</u>:
None present                                  Timothy L. Alger
                                              Michael J. Niborski

<u>ATTORNEYS PRESENT FOR MGA</u>               <u>Attorney for Non-Party Chris Palmeri</u>
Robert J. Herrington                        Alonzo Wickers, IV

PROCEEDINGS:     Mattel's Motion Objecting to Discovery Master's February 26, 2008, Denying
                 Mattel's Motion to Compel Deposition of Christopher Palmeri. (See Docket
                 2859); Mattel's Ex Parte Application to file Supplemental Expert Reports

      The Court adopts the parties joint stipulation regarding pre-voir dire screening of the
prospective jury pool.

      The Court also **GRANTS** Mattel's <u>ex parte</u> application to file supplemental expert reports by
William Flynn and Lloyd Cunningham regarding certain Bryant originals within seven (7) days of
the completion of testing, <u>provided</u> that the Discovery Master authorizes said testing beforehand.
Nothing in this Order shall be construed as indicating whether or not there is cause to authorize
said testing; such a determination shall be made in the first instance by the Discovery Master.

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                    Page 1                       Time:  0/40

EXHIBIT __6__

PAGE __36__

Case 2:04-cv-09049-DOC-RNB   Document 3243-3   Filed 04/22/08   Page 39 of 42   Page ID
#:54698
Case 2:04-cv-09049-SGL-RNB      Document 3086      Filed 04/14/2008      Page 2 of 3

Finally, the Court **DENIES** Mattel's Motion Objecting to the Discovery Master's February 26, 2008, Order Denying Mattel's Motion to Compel the Deposition of Christopher Palmeri. The Discovery Master's order was not contrary to law or clearly erroneous <u>at the time</u> it was entered. Mattel has subsequently produced <u>new</u> evidence and <u>new</u> theories for why deposition of Mr. Palmeri is warranted, none of which were presented to the Discovery Master prior to his ruling. Rather than allowing Mattel to call into question the correctness of the Discovery Master's order by submitting newly discovered information that was not presented to him, the Court finds the better practice is to require Mattel to first present that newly discovered information to the Discovery Master in the form of a motion for reconsideration.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Page 2

Initials of Deputy Clerk:  jh
Time:  0/40

EXHIBIT ___6___

PAGE ___37___

# NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of April 14, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

✓ **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided)

Name: Ambassador Pierre-Richard Prosper
Firm:
Address (include suite or floor): P.O. Box 581103
Salt Lake City, UT 84158

*E-mail: Prosper.Pierre@Arentfox.com
*Fax No.:
* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

Initials of Deputy Clerk jh

EXHIBIT 6

PAGE 38

# EXHIBIT 7

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**