1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303
5    (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9            UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13              Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| 14          vs. | **DISCOVERY MATTER** |
| 15  MATTEL, INC., a Delaware corporation, | [To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006] |
| 16              Defendant. | |
| 17 | REPLY TO MGA'S AND CARTER BRYANT'S NON-PRELIMINARY JOINT OPPOSITION AND IN SUPPORT OF MATTEL, INC.'S APPLICATION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING |
| 18  AND CONSOLIDATED ACTIONS | |
| 19 | |
| 20 | |
| 21 | |
| 22 | [Second Supplemental Declaration of Diane C. Hutnyan] |
| 23 | |
| 24 | Hearing Date:        TBD |
| 25 | Time:               TBD  Place:              TBD |
| 26 | **Phase 1** |
| 27 | Discovery Cut-off:     January 28, 2008  Pre-trial Conference:  May 5, 2008  Trial Date:           May 27, 2008 |
| 28 | |

07209/2473373.2

Case No. Case No. CV 04-9049 SGL (RNBx)

SECOND REPLY ISO MATTEL'S APPLICATION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING

1

# **TABLE OF CONTENTS**

2
**Page**

3

4    PRELIMINARY STATEMENT ................................................................................. 1

5    ARGUMENT............................................................................................................. 2

6    I.    MOST OF THE ARGUMENTS IN BRYANT'S AND MGA'S
          SECOND JOINT OPPOSITION HAVE BEEN REJECTED BY THE
7          DISTRICT COURT AND ARE NOT BEFORE THE DISCOVERY
          MASTER........................................................................................................ 2

8    II.   SIMPLE FAIRNESS, AS WELL AS THE FEDERAL RULES'
9          PRESUMPTION IN FAVOR OF BROAD PRE-TRIAL DISCOVERY,
          MILITATES IN FAVOR OF ALLOWING MATTEL'S EXPERTS TO
10         EXAMINE THE QUESTIONED DOCUMENTS ........................................... 4

11   III.  MATTEL HAS DILIGENTLY PURSUED THE TRUTH IN THIS
          ACTION......................................................................................................... 8

12   IV.   MATTEL HAS SHOWN MORE THAN GOOD CAUSE TO HAVE
13         FAIR ACCESS TO THE BRYANT ORIGINALS ......................................... 10

14   CONCLUSION........................................................................................................ 13

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

Abrahamsen v. Trans-State Express, Inc.,
   92 F.3d 425 (6th Cir. 1996)......................................................................... 7

Outley v. City of New York,
   837 F.2d 587 (2d Cir. 1988) ........................................................................ 8

Rivera v. NIBCO, Inc.,
   384 F.3d 822 (9th Cir. 2004)........................................................................ 7

Talbert v. City of Chicago,
   236 F.R.D. 423 (N.D. Ill. 2006) ................................................................. 12

Tenbarge v. Ames Taping tool Systems, Inc.,
   190 F.3d 862 (8th Cir. 1999)...................................................................... 12

## **Statutes**

FRCP 26(a)(2)(D)............................................................................................ 12

FRCP 26(e)(2) ................................................................................................. 12

MATTEL'S REPLY TO MGA'S AND BRYANT'S SECOND OPPOSITION AND ISO MATTEL'S MOTION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING

1

## **Preliminary Statement**

2          During the April 14, 2008 hearing, and in the subsequent minute order,

3   the District Court granted Mattel's Application to supplement its expert reports.[1]  In

4   doing so, the Court considered arguments relating to the scheduling aspects of

5   Mattel's request for access to the Bryant Originals.  He held that in the event that the

6   Discovery Master grants Mattel the right to inspect certain Bryant originals for two

7   weeks, Mattel would subsequently have an additional week to supplement and file

8   its expert reports.  As a result, arguments relating to Mattel's right to supplement its

9   report, or to any scheduling aspect of Mattel's request, have already been dealt with

10  by the District Court.  The only remaining question for the Discovery Master is

11  whether -- aside from any implications to the schedule, which are the District

12  Court's sole concern -- to allow Mattel's experts access to Bryant's originals for

13  inspection and imaging.

14          Despite Defendants' multiple oppositions and continuing protestations,

15  Mattel has a right to continuing fair access to the key evidence in this case.

16  Allowing Defendants to lock the evidence away where only Defendants and their

17  experts have access to it would be an anathema to the broad discovery provisions of

18  the Federal Rules and the role of the Court as the gatekeeper of the facts necessary

19  for the jury to arrive a fair and just verdict based on all of the available facts.  What

20  Mattel is asking for is basic, core discovery that cannot be denied without

21  substantial prejudice to Mattel and to a fair trial -- discovery that MGA and Bryant

22  seek to block in the absence of any showing that prejudice would result from

23  granting Mattel's request, and that they seek to block for reasons that are belied by

24  their substantial efforts to delay the adjudication of this application and by their own

25

26

27  [1]   See April 14, 2008 Minute Order attached as Exh. 1 to the Second
      Supplemental of Diane Hutnyan ("Second Supplemental Dec.").

28

1  request for a much more extensive battery of destructive testing that, if granted,

2  would have a far greater effect on scheduling than anything proposed by Mattel.[2]

3  This Court should promote the truth by allowing the requested access to Bryant's

4  drawings so that it may perform the necessary examinations and supplement its

5  reports forthwith.

6  <u>**Argument**</u>

7  **I.   MOST OF THE ARGUMENTS IN BRYANT'S AND MGA'S SECOND**

8  **JOINT OPPOSITION HAVE BEEN REJECTED BY THE DISTRICT**

9  **COURT AND ARE NOT BEFORE THE DISCOVERY MASTER**

10  Mattel filed two motions concerning the Bryant originals in question.

11  One concerned Mattel's right to have continuing access to these documents -- a

12  discovery issue -- and one concerned Mattel's request to supplement its expert

13  reports -- a scheduling issue.  Currently pending before the Discovery Master is the

14  instant Application for access to certain Bryant originals for expert examination.  In

15  this application, Mattel asks the Discovery Master to allow two of Mattel's experts

16  access to already discovered documents for examination and imaging.

17  The District Court already granted the other application in question,

18  Mattel's request for a week extension to supplement its expert reports.  Of course,

19  Mattel will only be able to supplement its reports in the event that the Discovery

20  Master grants Mattel's application for access to Bryant's original documents.  But in

21

22  [2]   Also, it should be noted that although Mattel proposed a way that MGA could
conduct destructive sampling this week sufficient to replicate Dr. Aginsky's ink
23  tests, MGA has completely ignored the offer, showing that its concern for the
24  scheduling implications of forensic testing at this time extends only to Mattel's
simple request for fair access but not to its own request for destructive testing that it
25  knows is likely to reinforce Mattel's expert's findings.  MGA has no concern for the
26  schedule in that instance because it hopes to exclude Dr. Aginsky's findings on the
false basis that Mattel would not allow reasonable testing.  Second Supplemental
27  Dec at ¶ 15.

28

1  making this ruling, the District Court necessarily took into account Defendants'
2  many arguments relating to the scheduling aspects of Mattel's requests.  Rethinking
3  the District Court's scheduling decision is not before the Discovery Master; the only
4  issue before the Discovery Master is the discovery issue -- i.e., may Mattel's experts
5  have continuing access to key evidence in this case.

6        Yet Defendants' primary argument is that Mattel's application should be
7  denied because it failed to show good cause to amend the scheduling order.  See
8  Defendants' Joint Opposition, dated April 17, 2008, at 12-24.  This argument is
9  particularly ironic because in Defendants' "Joint Preliminary Opposition" argued
10 that the Discovery Master not only lacked the authority to decide any issues related
11 to scheduling, but could not rule even on the merits of Mattel's request for access
12 until the scheduling decisions had been made by the District Court.  In any event,
13 Defendants' current argument is moot.  In granting Mattel's application to
14 supplement its expert reports, the District Court already considered Defendants'
15 scheduling-related arguments, and decided to reject them in favor of amending its
16 scheduling order.

17       Defendants further argue that allowing Mattel's experts access to
18 Bryant originals and then additional time to supplement their reports would have a
19 deleterious effect on the trial schedule.  Once again, this is an issue for the District
20 Court, one that Judge Larson already ruled on.  In granting Mattel's motion to
21 supplement its expert reports, the District Court necessarily assumed that three
22 additional weeks (two weeks for inspection and one week to file the supplemental
23 reports), plus whatever time that the Discovery Master took to grant Mattel's request
24 for access, was acceptable to the Court, thus implicitly rejecting Defendants'
25 argument.  If the District Court thought that these three additional weeks, plus
26 whatever time it might take the Discovery Master to rule on Mattel's application,

27

28

1 | would have a negative effect on its trial schedule, it would have denied Mattel's
2 | application or made a more qualified ruling.

3 |       Defendants also argue that Mattel's request should be denied because it
4 | cannot establish good cause for "sur-rebuttal" reports, which it argues Mattel seeks
5 | to submit instead of supplemental reports. This also is not a question before the
6 | Discovery Master. The District Court dealt with, and granted, Mattel's request to
7 | file supplemental reports; if Mattel submits something other than a supplemental
8 | report, MGA and Bryant can take up that issue then. But their current argument --
9 | and that is all it is, as it is completely contrary to the facts -- is not germane to
10 | whether Mattel should be allowed to have access to the Bryant originals.

11 |       In sum, the majority of Defendants' opposition, including nearly every
12 | case cited, is moot because it relates to the scheduling aspects of Mattel's request,
13 | which the District Court has already decided. If the Discovery Master were to
14 | consider these scheduling arguments, he would be invading the province of the
15 | District Court.

16 | **II.**   **SIMPLE FAIRNESS, AS WELL AS THE FEDERAL RULES'**
17 |     **PRESUMPTION IN FAVOR OF BROAD PRE-TRIAL DISCOVERY,**
18 |     **MILITATES IN FAVOR OF ALLOWING MATTEL'S EXPERTS TO**
19 |     **EXAMINE THE QUESTIONED DOCUMENTS**

20 |       Notably absent from Defendants' opposition is any assertion that
21 | allowing Mattel's experts to examine these documents would in any way prejudice
22 | Defendants. If Defendants are so sure of the accuracy and importance of their
23 | experts' findings, it is unclear why they are going to such great lengths, filing
24 | essentially four oppositions (three before the Discovery Master and one before the
25
26
27
28

07209/2473373.2

-4-

Case No. Case No. CV 04-9049 SGL (RNBx)

MATTEL'S REPLY TO MGA'S AND BRYANT'S SECOND OPPOSITION AND ISO MATTEL'S MOTION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING

1  District Court)[3], to prevent Mattel from having the ability to perform *the same*
2  analysis.  If Defendants were sincere about their concern that allowing Mattel to
3  inspect the documents and supplement the reports would delay their pre-trial
4  preparation, they could have permitted Mattel's experts to inspect the documents
5  when Mattel originally asked on April 2, 2007, and the process would have been
6  complete by now.

7          Instead, Defendants have opted to fight Mattel's attempts to examine
8  these documents at every turn.  They vigorously opposed the appointment of a
9  neutral expert.[4]  Then, they opposed Mattel's counsel's multiple attempts to inspect
10  and photograph these documents, delaying these basic inspections for more than 4
11  months.[5]  Next, they opposed Mattel's request to have its experts examine the
12  documents, seeking (contrary to their representations now that the Discovery Master
13  agreed with them) to limit Mattel's experts to the examination of no more than 50
14  individual drawings that were identified to and cleared by Bryant in advance.[6]  They
15  also sought to impose several other inappropriate conditions and restrictions
16  designed to substantially hinder or even preclude Mattel's experts' examination and

17

18          [3]  Mattel continues to maintain its position that allowing Defendants to file
19  multiple oppositions to its *ex parte* application is procedurally incorrect and that all
20  arguments not raised by Defendants in their "preliminary" joint opposition have
    been waived.
21          [4]  See MGA and Bryant's Joint Opposition to Mattel's Motion for Appointment
22  of Expert Witnesses, dated June 26, 2006, attached as Exh. 2 to the Second
    Supplemental Declaration.
23          [5]  See Mattel, Inc.'s Motion to Compel Bryant To Make Original Documents
24  Available For Expert Examination and Testing And For Sanctions, dated January
    23, 2007, attached as Exh. 9 to the Second Supplemental Dec.
25          [6]  Had this particular restriction been accepted by the Discovery Master, Bryant
26  and MGA would have used it to completely block Mattel's access to the notary book
    they contend corroborates Bryant's story, a story which the forensic testing has
27  shown is not true.

28

07209/2473373.2

-5-          Case No. Case No. CV 04-9049 SGL (RNBx)
MATTEL'S REPLY TO MGA'S AND BRYANT'S SECOND OPPOSITION AND ISO MATTEL'S MOTION FOR
ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND
IMAGING

1  analysis of the originals.[7]  Even when it became clear that the Discovery Master was
2  going to grant Mattel's request for expert examination, Defendants fought
3  vigorously to reduce the amount of time the experts could spend with the documents
4  from 60 days to 35 days.[8]  Now, Defendants have filed in response to Mattel's *ex*
5  *parte* application a "preliminary" opposition before the Discovery Master, an
6  opposition before the District Court, that same opposition before the Discovery
7  Master, and finally another "omnibus" opposition before the Discovery Master.  It is
8  clear that it is Defendants who are delaying these proceedings, not Mattel.

9          On the other hand, refusing to allow Mattel fair access to these
10 documents would cause it irreparable harm at trial.[9]  Defendants hope to be able to
11 present their one-sided evidence at trial having denied Mattel the ability to perform
12 the same tests.  Such gamesmanship is improper.  Granting Mattel's request for
13 access to the originals to allow more extensive testing will help to level the playing
14 field, and provide the trier of fact a more complete analysis of these key documents.

15

16    [7]  Among them: that Mattel's experts (whose identity was work product at that
17 point, according to MGA's own arguments seeking to avoid Mattel's discovery about
18 of the unauthorized testing conducted by Speckin) had to be identified in advance;
   that the originals had to stay in the custody of Mattel's law firm and could not be
19 sent to the experts' laboratories; that Mattel had to share its access time with Bryant,
20 who already had unlimited access to his own documents. See Mattel, Inc.'s Motion
   to Compel Bryant To Make Original Documents Available For Expert Examination
21 and Testing And For Sanctions, dated January 23, 2007, attached as Exh. 9 to the
22 Second Supplemental Dec., at 1, 8-9.
   [8]  See Carter Bryant's Opposition To Mattel, Inc.'s Motion to Compel Bryant To
23 Make Original Documents Available For Expert Examination and Testing And For
24 Sanctions, dated July 16, 2007, attached as Exh. 3 to the Second Supplemental Dec.,
   at 1, 8-9.
25    [9]  See MGA's Opposition to Mattel, Inc.'s *Ex Parte* Application For Protective
26 Order Preventing MGA's Destructive Sampling of The Prince Notary Book, dated
   March 12, 2008) at 1 ("[t]he denial of the opportunity to test and challenge evidence
27 imposes irreparable prejudice") attached as Exh. 4 to the Second Supplemental Dec.
28

1    Defendants' contention that MGA's request to destructively test the
2    Prince notary book is dissimilar to Mattel's current request because MGA's request
3    occurred before the discovery cut-off is disingenuous. As stated in its previous
4    filings, Mattel did not, and could not have known about the importance MGA placed
5    on the pencil lines until March 31, 2008, the same day as the discovery cutoff. The
6    suggestion that Mattel's experts mis-tested the questioned documents or failed to
7    perform vital tests is pure argument, unsupported by any factual showing.

8    Defendants' assertion that Mattel's experts' failure to focus on the pencil
9    lines or recognize their purported importance is a valid reason to deny Mattel's
10   request is illogical. Under that theory, a defendant's rebuttal expert would be free to
11   fabricate evidence, and the plaintiff would be unable to counter. For example, in
12   this case, Defendants rebuttal experts could say "we performed xyz test" that
13   conclusively shows that this paper was manufactured in "April 1999 and only April
14   1999." Under Defendants' theory, the plaintiff would be unable to challenge the
15   veracity of this contention at trial because its expert did not choose to perform the
16   same test during the short time frame in which they had access to these documents.

17   The purpose of discovery is to arrive at the truth. In fact, the purpose
18   of a trial is to arrive at the truth. Rivera v. NIBCO, Inc., 384 F.3d 822, 824 (9th Cir.
19   2004) ("The Federal Rules authorize broad pretrial discovery based on the general
20   principle that litigants have a right to 'every man's evidence,' and that wide access to
21   relevant facts serves the integrity and fairness of the judicial process by promoting
22   the search for the truth."). Allowing one party unlimited access to key evidence
23   while restricting the other party's access prevents the jury from hearing the whole
24   truth, and results in an unbalanced, unfair trial. See Abrahamsen v. Trans-State
25   Express, Inc., 92 F. 3d 425, 428-9 (6th Cir. 1996) ("Our system of discovery was
26   designed to increase the likelihood that justice will be served in each case, not to
27   promote principles of gamesmanship and deception in which the person who hides

28

                                                                    -7-         Case No. Case No. CV 04-9049 SGL (RNBx)

1  the ball most effectively wins the case"); <u>Outley v. City of New York</u>, 837 F.2d 587,

2  590 (2d Cir. 1988) ("The rules of discovery were not designed to encourage

3  procedural gamesmanship, with lawyers seizing upon mistakes made by their

4  counterparts in order to gain some advantage").

## III.  MATTEL HAS DILIGENTLY PURSUED THE TRUTH IN THIS ACTION

7  Defendants' contention that Mattel has wanted to re-test the Bryant

8  originals since "last fall" is inaccurate.  In fact, Mattel believes its expert reports are

9  complete and accurate.  However, MGA recently raised the significance of

10  purported pencil lines in some of the Bryant originals in its expert reports (which are

11  eerily similar) and subsequently at the depositions of Mattel's two experts.  Less

12  than two days after Mattel learned about the significance Defendants attribute to the

13  purported[10] presence of the faint pencil lines in some of Bryant's drawings, it

14  requested access to the Bryant originals in question to test the veracity of

15  Defendants' claims.[11]  When meet and confer sessions failed to bring about a

16  resolution, Mattel expeditiously moved for access to the documents a mere five days

17  later.

18  To accept MGA and Bryant's arguments that Mattel's experts'

19  examinations were negligently done, the Discovery Master would have to

20  improperly assume that the evidence presented by MGA's experts is valid.  There

---

22  [10]  As explained in Mattel's Application, some of the obscured or faint pencil

23  lines were detected but there were others apparently were not.

24  [11]  <u>See</u> Letter from Diane Hutnyan to Matthew Sloan and Matthew Werdegar
dated April 2, 2008, attached as Exh. 5 to the Second Supplemental Hutnyan Dec.

25  By the time Mattel's expert, Mr. Cunningham, was deposed on March 31, 2008,

26  MGA's position on the supposed significance of the pencil lines was clear, and
Mattel requested the right to file supplemental reports less than 2 days later on April

27  2, 2008.

07209/2473373.2

-8-  Case No. Case No. CV 04-9049 SGL (RNBx)
MATTEL'S REPLY TO MGA'S AND BRYANT'S SECOND OPPOSITION AND ISO MATTEL'S MOTION FOR
ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND
IMAGING

1  has been no showing, and the proper way to deal with the issue is to allow Mattel

2  fair access so that it can ferret out the truth.

3          Further, both Mattel's experts and MGA's experts *agree* that the time in

4  which Mattel's experts had to examine the documents was insufficient to explore

5  fully every facet of each of the 2000 questioned documents. MGA's purported

6  expert, Mr. Kullman, admitted that it would take him an "extended period of time"

7  for him to do a basic examination of the seven boxes, and that with three helpers, he

8  alone spent from 50-100 work hours just processing the small subset of documents

9  (approximately 200) that were the subject of Mr. Flynn's initial report.[12]  Kullman's

10 testimony establishes that it would be extremely difficult, if not impossible, for a

11 forensic document examiner to run the full spectrum of tests on all seven boxes of

12 documents during in an 8-day period, much less the 3-day period that Mr. Flynn, the

13 primary expert whose analysis MGA's experts are trying to rebut as to this aspect of

14 the tracing issue, had.[13]  Kullman also admitted that it is common for an examiner

15

16   [12]  See Deposition Transcript of Robert Kullman dated April 8, 2008, attached as

17  Exh. 6 to the Second Supplemental Dec., at 205:24-205:23.

18   [13]  Despite MGA's contentions otherwise, Mattel's first expert, Mr. Lloyd
    Cunningham, had only eight days to examine the documents. See deposition

19  transcript of Lloyd Cunningham, dated March 31, 2008, at 32:17-33:17, attached as

20  Exh. 7 to the Second Supplemental Hutnyan Dec. Mattel's other expert, Mr.
    William Flynn, had only three working days to examine the documents. See

21  deposition transcript of William Flynn, dated March 27, 2008, at 18:22-19:7,

22  attached as Exh. 8 to the Second Supplemental Hutnyan Dec. Mattel did not have
    40 days to examine the document as Defendants contend; rather they had 35 days to

23  examine them during which they had to shuttle the documents between 4 experts

24  located in vastly different parts of the country. The stipulation for four days of
    paper testing by Mr. Rantanen only contemplated sampling of 200 documents; the

25  balance of the documents were sent because MGA and Bryant insisted on keeping

26  all the documents in their original order at all times. See Second Supplemental Dec.
    at ¶ 16. At least they insisted on *Mattel's experts* keeping the documents in their

27  original order. Mr Kullman admitted that he found that procedure too time

28          (footnote continued)

1  not to determine the need for a particular test or examination, or the need to see the
2  documents once again, until after making other findings.[14]

3           Contrary to the Defendants' Joint Opposition, this is not a complex
4  issue, or at least it should not be, and any supposed complexities can be addressed
5  by granting immediate access and allowing the truth to come out without further
6  delay.  Defendants want to nickel and dime Mattel on every minute with the
7  documents but there is simply no competition.  Defendants have had continuing
8  access to these documents -- documents they admit are "key" -- for over four years.
9  Mattel has had access to them for mere days.  And the record shows that time and
10 time again, from Mattel's very first request to view these documents several years
11 ago to the instant request, Defendants have hampered Mattel's right to access with
12 unnecessary motion practice and other delay tactics.  Here Defendants have not even
13 articulated a reason why parting with the documents for two weeks would cause
14 prejudice, yet they again have blocked access for almost three weeks.  There is a
15 disturbing pattern here, one the Court, as gatekeeper, should not tolerate.

16

17 **IV.   MATTEL HAS SHOWN MORE THAN GOOD CAUSE TO HAVE**
18      **FAIR ACCESS TO THE BRYANT ORIGINALS**

19           In its role as gatekeeper, the Court has an obligation to allow the jury to
20 arrive at the truth by weighing *all* of the available facts.  Allowing MGA to hoard
21 the evidence will not allow all the facts to come to light.  Each party deserves equal
22 access to the vital evidence in this case.  That is good cause alone, especially where,

23

24 _____

25 consuming and so he reorganized them and in fact departed from his normal practice
26 of keeping a record of the original order of the documents, losing that evidence in
   the process. See Exh. 6 at 180:1-181:12.
27   [14]  See Exh. 6 at 214:15-215:16.

28

1  as here, the party opposing access cannot show any prejudice that would ensue from
2  granting such access.

3         MGA's request to destructively test the Prince notary book shows the
4  weakness of MGA's arguments blocking access here. If anything, MGA's request
5  will cause more delay than Mattel's request. Also, MGA seeks to have uncertified[15]
6  experts perform destructive testing on a document that none of its experts opined on
7  in their initial report despite having free access to that document.[16] Whereas here,
8  Mattel seeks to have its experts -- both of which are certified as forensic document
9  examiners[17] -- nondestructively examine evidence as to which it has had very
10 limited access. If MGA is entitled, as it contends, to destructive testing of the notary
11 book, Mattel is certainly entitled to the minimal request it is making.

12        Further, there is no legitimate concern that granting access would
13 extend the scheduling order into the distant future. If Mattel's experts are granted
14 two weeks' access, they then will have one short week in which to quickly amend
15 their reports. Any follow-on discovery allowed[18] could be scheduled to take place

16

17

---

18  [15] See Rough Deposition Transcript of Dr. Albert Lyter attached as Exh. 10 to
     the Second Supplemental Dec. at 33:9-15 ("Q.    Do you have the credentials for
19   membership in SWAT T as a question document examiner?    A.    No, I don't do
     handwriting analysis.    Q.    So you've never applied for membership in SWAT T?
20   A.    I can't I don't do handwriting analysis, so I don't meet their qualifications.").
     See also Exh. 6 at 31:16-34:15. (Kullman is not a member of the American Society
21   if Questioned Document Examiners because he did not pass its admittance test.)
22   [16] Indeed, the notary book was taken from Ms. Prince in July 2004 and was in
     Bryant's counsel's possession from that time at least until her deposition in
23   December of that year. See Deposition Transcript of Jacqueline Prince at 140-143
24   and Exh. 61 at her deposition, attached as Exh. 13 to the Second Supplemental Dec.
     [17] See CVs of Messrs. Cunningham and Flynn attached as Exhs. 11 and 12 to
25   the Second Supplemental Dec, respectively.
26   [18] Mattel disagrees with Defendants' assumption that they are entitled to an
27   endless chain of rebuttal, but that is a discovery issue.

28

1    quickly thereafter.  The schedule would be affected no more than it would be if

2    Defendants gain the right to access for testing of the Prince notary book.

3            The "sur-rebuttal" issue is a red herring.  Mattel has shown that it seeks

4    to quickly serve a supplement to one or two of its existing expert reports in order to

5    clarify or correct, if necessary, their findings with respect to several of Bryant's

6    drawings.  This is clearly supplemental matter within the scope of Rule 26(e)(2).

7    (MGA's contention that such a report would constitute a sur-rebuttal is purely

8    speculative, given that Mattel's experts have not yet submitted their supplemental

9    reports; It is currently impossible to tell what type of information they will contain

10    and therefore it would be improper for the Court to conclude now that the reports

11    are necessarily sur-rebuttal.)

12            Given the new evidence proffered by MGA's experts, Mattel is actually

13    under a duty to supplement its expert reports to ensure the reports' completeness.

14    See FRCP 26(a)(2)(D),(e)(2); Tenbarge v. Ames Taping tool Systems, Inc., 190

15    F.3d 862,865 (8th Cir. 1999) (failure to supplement expert reports leads to new

16    trial).  In this case, in order to be complete, Mattel's experts need to be able to

17    examine the documents again to see if they can detect the presence of these pencil

18    lines and weigh their significance, if any.  See Talbert v. City of Chicago, 236

19    F.R.D. 423 (N.D. Ill. 2006) (Federal Rules do not prohibit using supplementation of

20    an expert report as an opportunity to improve on it).

21            Mattel is not trying to re-open discovery, find new documents, or

22    otherwise extend the discovery process.  It is simply asking for very limited

23    continuing access to key evidence in this case -- not even equal access -- so that it

24    may be afforded an opportunity to fully challenge MGA's experts and their

25    purportedly significant evidence.

26

27

28

## **Conclusion**

1

2     For the foregoing reasons, Mattel's *Ex Parte* Application for Access to

3     Certain Bryant Originals for Expert Examination and Imaging should be granted.

4

5     DATED:  April 22, 2008             QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
6

7                                   By_____
8                                      Diane C. Hutnyan
                                       Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S REPLY TO MGA'S AND BRYANT'S SECOND OPPOSITION AND ISO MATTEL'S MOTION FOR
ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND
IMAGING