Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:  (415) 774-2611
Facsimile:   (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER DENYING MGA'S MOTION TO COMPEL MATTEL TO PRODUCE EMAIL AND OTHER ELECTRONIC DOCUMENTS; DENYING REQUEST FOR SANCTIONS** |

## I. INTRODUCTION

On January 16, 2008, MGA Entertainment, Inc. ("MGA") submitted a "Motion to Compel Mattel to Produce Email." More specifically, MGA seeks an order compelling Mattel, Inc. ("Mattel") "to certify that it has produced all non-privileged email responsive to MGA's and Bryant's document requests and not withheld any such email based on cost concerns and, in the

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

absence of such a certification, an order requiring Mattel to produce all non-privileged, responsive email." MGA's Motion at p. i. MGA also requests an award of costs pursuant to Rule 37(b)(2)(C), Fed.R.Civ.P. On January 31, 2008, Mattel submitted an opposition, and on February 5, 2008, MGA submitted a reply. The motion was heard on February 11, 2008, at which time the court found that the parties had not satisfied their obligation to meet and confer and directed them to do so. On February 21, 2008, the parties met and conferred. On March 28, 2008, the parties submitted a joint report in which they represented that they had met and conferred regarding this motion. On April 8, 2008, counsel for Mattel submitted a supplemental declaration, and on April 10, 2008, MGA's counsel submitted a declaration in response. The motion was heard on April 11, 2008.

## II. BACKGROUND[1]

On May 22, 2007, the court issued an Order Granting in Part and Denying in Part MGA's Motion to Compel Documents Responsive to First Set of Requests for Production of Documents. As the May 22, 2007 Order reflects, the court considered all of Mattel's objections to each of the requests at issue, including Mattel's objection to searching and producing emails, and granted MGA's motion as to numerous requests. On September 12, 2007, the court issued an Order Granting in Part and Denying in Part MGA's Motion to Compel Mattel to Supplement Responses and Produce Documents Responsive to First Set of Requests for Production of Documents and Things; Denying Request for Sanctions.

After reviewing Mattel's production, MGA determined that the few thousand emails produced appear to have been produced from existing hard copy files rather than from electronic files. MGA also concluded that the number of emails produced by Mattel was exceedingly low when compared to MGA's production of emails. MGA estimates that its production to Mattel consisted of approximately 19,500 email messages and more than 20,000 email attachments.

---

[1] Because the parties are familiar with the procedural history of this motion, the "Background" section set forth herein includes only a brief summary of that history and a brief summary of the parties' main contentions.

1  Therefore, MGA requested to meet and confer with Mattel to understand whether and to what
2  extent Mattel had searched for and produced responsive emails.
3      Dissatisfied with counsel's representations regarding the scope of Mattel's searches for
4  emails, and in particular archived and backed up emails, MGA filed the instant motion. MGA
5  contends that Mattel "should be ordered to certify that it has (i) produced all non-privileged email
6  responsive to all document requests as to which Mattel either agreed to produce responsive
7  documents or has been ordered to produce responsive documents, and (ii) not withheld any such
8  email based on cost concerns." MGA's Motion at p.11. If Mattel cannot provide such a
9  certification, MGA contends that Mattel "should be ordered immediately to produce all non-
10 privileged, responsive email, including archived email and email stored on backup tapes." Id.
11     Mattel contends that it has complied with court orders regarding production of
12 documents, having conducted a "reasonable search" for responsive documents. Mattel represents
13 that it searched various electronic media in its possession that were likely to have responsive
14 documents. Mattel's Opposition at p. 6. Mattel also represents that it has conducted reasonable
15 searches of every electronic data compilation identified by MGA in the instant motion. Mattel,
16 however, acknowledges that it has not searched its e-mail server backup tapes. Id. at p. 1. Mattel
17 contends that the burden and expense of searching its e-mail server backup tapes far outweigh the
18 likely benefit of the search. Mattel also contends that if it is ordered to conduct such a search, the
19 cost should be borne by MGA.
20     In the supplemental declaration submitted on April 10, 2008, MGA outlines a proposal for
21 a search of Mattel's backup tapes. Specifically, MGA proposes that Mattel search email backup
22 tapes of the accounts of all the individuals the parties have listed in their respective initial
23 disclosures, using the keywords MGA, NHB, Bratz, Larian and Bryant. MGA also proposes that
24 Mattel conduct the search at 85 day intervals. Eckles Decl., ¶4.
25     Mattel, however, continues to object to searching its email backup tapes based upon
26 relevancy and burden grounds. Mattel contends that the email backup tapes that still exist at
27 Mattel would not contain documents relevant to the Phase I trial. Supp. Alger Decl. Mattel also
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

contends that the terms MGA, Bratz and Larian are likely to draw many thousands of false "hits." Mattel further contends that a search based on terms such as MGA, Bratz and Larian would sweep up a far broader universe of documents than has ever been ordered in the case.

### III. STANDARDS

In general, parties may obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense. Fed.R.Civ.P. 26(b)(1). The Federal Rules of Civil Procedure, however, impose specific limitations on discovery of electronically stored information. "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed.R.Civ.P. 26(b)(2)(B). "On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." Id.

According to the Advisory Committee Notes to the 2006 Amendments to Rule 26, "[t]the decision whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case." The Advisory Committee Notes suggest that courts consider the following: "(1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources." Advisory Comm. Notes to 2006 Amend. to Rule 26.

Further, all discovery "is subject to the limitations imposed by Rule 26(b)(2)(C)."

Fed.R.Civ.P. 26(b)(1). Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court must limit the frequency or extent of use of discovery otherwise allowed by the Federal Rules of Civil Procedure or by local rule if the court determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C).

Rule 34, Fed.R.Civ.P., was also amended to take into account developments in information storage and technology, and now provides that a party may serve a request for electronically stored information. Thus, emails are no less subject to discovery than paper documents. See e.g. Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 317 (S.D. N.Y. 2003) ("[E]lectronic documents are no less subject to disclosure than paper records. [citation omitted] This is true not only of electronic documents that are currently in use, but also of documents that may have been deleted and now reside only on backup disks.").

## IV. DISCUSSION

The searches Mattel has conducted to date for electronic information are adequate to discharge its obligation under Rule 34. Mattel represents that it has searched electronic data compilations including, but not limited to: (a) over 130 hard drives used or potentially used at Mattel's El Segundo headquarters and at Mattel's Design Center during the relevant period, referred to in Exhibit C to Michael Moore's Affidavit in Support of Mattel's Opposition to MGA's Motion for Terminating Sanctions ("Moore Affidavit"); (b) the archived e-mail in the form of Outlook archive or "pst" files of 38 Mattel employees who may have sent e-mail messages to Carter Bryant or other messages related to this litigation, identified in Exhibit B to the Moore Affidavit; (c) the hard drives and mailboxes of many former and current Mattel employees whose names have appeared in the litigation, including Lily Martinez, Sharon Zuckerman, April Walker,

1  Ronnie Ruggeri, Juan Rodriguez, Cassidy Beal-Park, Jill Nordquist, Bill Martinez, Rita Liu, Erica
2  Kane, Katiana Jiminez, Hoi Hoffman, Kitti Hammons, Ei Fong, Ann Driskill, Patricia Chan,
3  Robert Best, Kelly Matheny, Vived Gonzalez, Carmen Monteagudo, Megan Sepanik, Elizabeth
4  Arriola, Ariana Sarinana, Tina Tomiyama, Michael Hebden, Desiree Rouquillo, Ivy Palijo, James
5  Mills-Winkler, Mina Mirkazemi, V. Karpio, J. Holmes, and Daniel Leahy; (d) the e-mail
6  messages received by Mattel employees from specific locations relevant to this litigation on the
7  Internet, including "mgae.com"; (e) more than 184 gigabytes of e-mail messages and attachments
8  gathered by Mattel's automated security tool that monitored e-mail messages coming into and
9  going out of Mattel for certain keywords relating to Bratz, MGA and related issues; (f) the
10 mailboxes and hard drives of many employees who left Mattel after May 2, 2005; and (g) the
11 information on the SYMM used by Mattel for network storage in El Segundo prior to 2003.
12 Mattel also represents that it has produced over 9,900 e-mails to date.

13       In response to the instant motion, Mattel has shown that the electronic information MGA
14 now seeks is not reasonably accessible because of undue burden and cost. Mattel contends that a
15 search of the backup tapes from its El Segundo e-mail servers would be prohibitively expensive.
16 Mattel estimates that the necessary hardware and software to perform a search would cost at least
17 $25,000 and $15,000, respectively. Further, there are hundreds of terabytes of data on Mattel's
18 email server backup tapes. Mattel estimates that the restoration of just one nightly backup tape
19 from the e-mail servers would cost approximately $1400 in flat fees and take at least fifteen man
20 hours at a cost of $5,000. In addition, Mattel estimates that the cost of extracting the data from
21 just one nightly backup tape, searching it, and then reviewing it would take at least 80 man hours,
22 at a cost of at least $30,000. Based upon these figures, Mattel estimates that the total cost for
23 restoring and searching all of its backup tapes would cost tens of millions of dollars. These
24 estimates do not include the cost of a paralegal or attorney reviewing the electronic information.

25       MGA has not shown the requisite good cause to justify compelling Mattel to search for
26 and produce the requested electronic information, taking into consideration the circumstances of
27 this case. The number of potentially relevant emails is likely to be modest relative to the number

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

of non-responsive and irrelevant emails in the backup tapes. Furthermore, the likelihood of identifying and producing potentially relevant emails beyond the emails that have already been produced by Mattel is small based upon Mattel's representations that "(i) with respect to the claims relating to origin and ownership of Bratz, aside from e-mails voluntarily saved by employees and already searched and produced by Mattel, e-mails from before mid-December 2004 (including the key, year 2000 time period) have long been deleted from Mattel servers and cannot be found on the back-up tapes," and "(ii) with respect to the other claims at issue in this litigation, Mattel has already interviewed dozens of employees and had collected electronic files bearing on these claims from those witnesses, as well as thousands of electronic documents from the SYMM and Zeus servers relating to the unfair competition claims made by MGA, including, but not limited to, marketing and design documents for MY SCENE, WEE THREE, ACCELERACERS, and LITTLE MOMMY." Mattel's Opposition at pp.17-18.

Furthermore, it bears emphasizing that the parties have pursued extraordinarily extensive discovery in this case. The parties have propounded hundreds of document requests, interrogatories and requests for admission directed at every conceivable issue encompassed in Phase 1. The document production has been exceedingly voluminous. The parties have also taken several hundreds of hours of deposition testimony, if not more. Thus, MGA has had ample opportunity to obtain discovery in this action, and the discovery MGA now seeks is unreasonably cumulative and duplicative. Furthermore, the burden and expense of requiring Mattel to produce the requested electronic discovery substantially outweigh the likely benefit of the discovery sought, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

## V. CONCLUSION

For the reasons set forth above, MGA's motion to produce email and other electronic documents is denied pursuant to Rules 26(b)(2)(B) and 26(b)(2)(C) of the Federal Rules of Civil Procedure. MGA's request for an award of costs pursuant to Rule 37(b)(2)(C), Fed.R.Civ.P, is

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

1 | also denied.

2 | Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: April 24, 2008

_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 24 2008, I served the attached ORDER DENYING MGA'S MOTION TO COMPEL MATTEL TO PRODUCE EMAIL AND OTHER ELECTRONIC DOCUMENTS; DENYING REQUEST FOR SANCTIONS in the within action by email addressed as follows:

| Name | Firm | Email |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 24, 08, at San Francisco, California.

_____
Sandra Chan