Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California  94111
Telephone:     (415) 774-2611
Facsimile:     (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　　Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER DENYING MGA'S MOTION TO COMPEL DISCOVERY AS TO ISSUES AS TO WHICH MATTEL HAS PURPORTEDLY WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BY CLAIM ASSERTION** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

I. INTRODUCTION

On January 18, 2008, MGA Entertainment, Inc., ("MGA") submitted a "Motion to Compel Discovery as to Issues as to Which Mattel has Waived the Attorney-Client and Work Product Privileges by Claims Assertion."  At issue is whether, under the standards set forth in

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

Hearn v. Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), Mattel has impliedly waived the attorney-client privilege and work product doctrine concerning what it knew or had reason to suspect, prior to November 2003, regarding (a) Carter Bryant's involvement in Bratz, (b) his alleged breach of contract, (c) his work for MGA, and/or (d) Mattel's alleged ownership of Bratz. On January 31, 2008, Mattel, Inc. ("Mattel") submitted an opposition, and on February 5, 2008, Mattel submitted a reply. On April 7, 2008, MGA submitted a twenty-one page supplemental memorandum of points and authorities, the declaration of Lance Etcheverry and the second supplemental declaration of Marcus Mumford. On April 11, 2008, Mattel submitted the declaration of Dylan Proctor. The matter was heard on April 11, 2008.

## II. BACKGROUND

In July of 2007, Mattel filed counterclaims alleging, inter alia, that it was the "true owner of Bratz" pursuant to agreements it had with Carter Bryant ("Bryant"), and that Bryant "conceived, created or reduced to practice" Bratz designs and worked for MGA while employed at Mattel. Mumford Decl., Ex. 1, Second Amended Counterclaim, ¶¶23-27, 29, 34. Mattel alleged that "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz . . . . includ[ing] . . . the fact that Bryant conceived, created, designed and developed Bratz while employed by Mattel, . . . the fact that Bryant worked with and assisted MGA during the time Bryant was employed by Mattel, . . . [and] concealing Bryant's role in Bratz." Id. at ¶35. Further, Mattel alleged that:

> [b]ecause of Bryant's and MGA's acts of concealment. . . Mattel had no reason to suspect that Bryant had worked with MGA, or assisted MGA, while he [sic] still employed by Mattel until approximately November 24, 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's agreement with MGA, which showed that the date of Bryant's agreement with MGA predated Bryant's departure from Mattel. It was then, as a result, that Mattel learned for the first time that Bryant had secretly aided, assisted and worked for and with MGA . . . in violation of his Mattel Employment Agreement.

Id. at ¶¶35-36. Based on the above, Mattel asserted numerous claims against MGA and Bryant, including, inter alia, copyright infringement, civil RICO violations, conspiracy to violate RICO, breach of contract, intentional interference with contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty, aiding and abetting breach of duty of loyalty, conversion, unfair competition, and declaratory relief.

MGA and Bryant denied the allegations in Mattel's counterclaims and pleaded several affirmative defenses, including statute of limitations and laches. MGA and Bryant sought and received discovery relating to these two defenses. More specifically, MGA and Bryant obtained interrogatory responses, documents, admissions, and deposition testimony directed to when, in fact, Mattel first had reason to suspect Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA, and Mattel's alleged true ownership of Bratz.

In response to an interrogatory, Mattel provided the following information relating to when and how Mattel first learned that Bryant performed work for MGA:

> To Mattel's knowledge, Bryant was first confirmed as the Bratz designer in the July 18, 2003 *Wall Street Journal* article, in which Isaac Larian also indicated that Bryant had been involved in some manner with MGA in or about "late 1999."
>
> Subsequently, in November 2003, Mattel obtained a copy of a contract between defendant Carter Bryant and defendant MGA . . . . Through this agreement, Mattel concluded that Bryant . . . worked as a designer for a Mattel competitor, MGA.

Mumford Decl., Ex. 17. Mattel later supplemented its response to state: "[a]fter Bryant left Mattel, but prior to the July 18, 2003 [*Wall Street Journal*] article, there was rumor and innuendo that Bryant may be working with MGA on Bratz." Id., Ex. 3. Mattel's supplemental interrogatory response also includes an assertion that Bryant used several Mattel employees to work on the Bratz dolls so that the Bratz dolls "had been designed and were far along in development during the time that Bryant was employed by Mattel." Id., Ex. 4.

In the instant motion, MGA contends that Mattel has impliedly waived the attorney-client and work product privileges concerning what Mattel knew or had reason to suspect, prior to November 2003, regarding (a) Bryant's involvement in Bratz, (b) his alleged breach of contract, (c) his work for MGA, and/or (d) Mattel's alleged true ownership of Bratz. MGA reasons that in order to avoid the statute of limitations and laches doctrine, Mattel affirmatively injected into this litigation the issue of what it knew or had reason to suspect prior to November 2003 regarding these subjects, and that Mattel has denied MGA access to information vital to its defenses by asserting the attorney-client privilege and work product doctrine. MGA contends that fairness dictates that MGA be given access to all evidence that might show what Mattel knew or had

reason to suspect concerning these subjects, including attorney-client communications and work product. MGA further contends that, based upon the discovery it has received to date, there is good reason to believe that at least as early as the summer of 2001, when Bratz was first released, Mattel suspected or had reason to suspect that Bryant was involved in Bratz and that he also worked for MGA while a Mattel employee. See MGA's Motion at pp. 2-5. MGA seeks an order (1) finding that Mattel has waived the attorney-client privilege and work product doctrine concerning what Mattel knew or had reason to suspect prior to November 2003 regarding Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA, and/or Mattel's alleged true ownership of Bratz, and (2) compelling Mattel to supplement its pertinent discovery responses and document productions accordingly.

Mattel contends that there is no basis for finding a waiver because Mattel has not affirmatively placed its privileged communications at issue. Mattel draws a clear distinction between pleading fraudulent concealment and relying on privileged information to support that pleading. Mattel contends that under Ninth Circuit precedent, merely pleading fraudulent concealment does not place privileged information at issue, and therefore cannot support a finding of waiver. Mattel reasons that if this were the rule, the privilege would be waived any time a party asserts fraudulent concealment simply because privileged information may be probative of what a party knew.

In Mattel's view, the Ninth Circuit has only found that a party affirmatively put privileged information at issue in two situations: (1) where a party relies on privileged information to support a claim or defense, and (2) where the only evidence available to assess the truthfulness of a party's claim or defense consists of privileged information. Mattel contends neither situation is present here. Mattel contends that it has not relied upon any privileged information to support its fraudulent concealment allegation, and that the evidence related to its fraudulent concealment allegations is not solely privileged. Mattel also denies shielding any of the facts of when and how it learned that Bryant allegedly worked for MGA while he was employed by Mattel. Furthermore, Mattel contends that in view of the substantial non-privileged information that exists and has been produced, MGA cannot show that Mattel's claims of privilege have denied MGA

1   information critical to its defenses.

2   ### III. DISCUSSION

3   In Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), the court established a three-part test

4   for determining whether a party has impliedly waived the attorney-client privilege and work

5   product privileges as to subject matter the party has placed at issue. The Hearn test for finding an

6   implied waiver requires that:

7   > (1) assertion of the privilege was a result of some affirmative act, such as filing
> suit, by the asserting party; (2) through this affirmative act, the asserting party put
> the protected information at issue by making it relevant to the case; and (3)
8   > application of the privilege would have denied the opposing party access to
> information vital to his defense.

9   Hearn, 68 F.R.D. at 581, see also Home Indem. Co v. Lane Powell Moss and Miller, 43 F.3d

10  1322, 1326 (9th Cir. 1995) (adopting the Hearn test in the Ninth Circuit); United States v. Amlani,

11  169 F.3d 1189, 1195 (9th Cir. 1999). In the instant case, the second and third element of the

12  Hearn test are not satisfied, and therefore a finding of implied waiver is unwarranted.

13  Because the parties dispute the meaning of the second element of the Hearn test, the facts

14  in Hearn require careful scrutiny. In Hearn, an inmate brought a civil rights action against prison

15  officials complaining of his confinement at a state penitentiary and sought discovery of

16  information to negate the defense that the prison officials acted in good faith and were therefore

17  immune from suit for damages. The Hearn court found that defendants had impliedly waived the

18  attorney-client privilege. With respect to the second element, the court reasoned that defendants

19  had placed privileged information at issue, "for the legal advice they received is germane to the

20  qualified immunity defense they raised." Hearn, 68 F.R.D. at 851. Despite the court's use of the

21  term "germane," it is apparent later in the decision that the court's holding was based upon a

22  finding that the privileged information was more than merely "germane" to the defense raised.

23  The court stated that defendants' communications with their attorney were "inextricably merged

24  with the elements of plaintiff's case and defendants' affirmative defense." Id. at 582. The court

25  also emphasized that "[t]hese communications are not incidental to the case; they inhere in the

26  controversy itself, and to deny access to them would preclude the court from a fair and just

27  determination of the issues." Id.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

1    Other cases applying <u>Hearn</u> make clear that it is not enough that the privileged

2  information be merely germane or relevant to an issue asserted in the case in order to satisfy the

3  second element of the <u>Hearn</u> test.  <u>See</u> U.S. v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999)

4  ("[p]rivileged communications do not become discoverable simply because they are related to

5  issues raised in the litigation").  Rather, courts have found that a party affirmatively puts at issue

6  privileged information when that party relies on privileged communications or work product in

7  support of its claims or defenses.  <u>See e.g.</u> Chevron Corp. v. Pennzoil Co., 974 F.2d 1156 (9th Cir.

8  1992) (finding implied waiver where defendant asserted advice of counsel defense).

9  Alternatively, courts have found that a party affirmatively puts at issue privileged information

10  when the only evidence available to assess a party's claim or defenses consists of privileged

11  information.  <u>See e.g.</u> U.S. v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (finding implied

12  waiver where the only evidence of an essential element of plaintiff's attorney disparagement claim

13  was privileged communications); <u>Holmgren v. Sate Farm Mutual Automobile Ins. Co.</u>, 976 F.2d

14  573, 577 (9th Cir. 1992) (in an action for bad faith claim settlement practices, finding implied

15  waiver of work product regarding insurer's counsel's handling of a claim).

16    Indeed, two of the cases cited by MGA in support of waiver were predicated upon a party

17  putting at issue privileged information by relying on such information to defeat a statute of

18  limitations defense.  For example, in <u>In re Imperial Corp. of Amer.</u>, 179 F.R.D. 286 (S.D. Cal.

19  1998), the court found implied waiver where the plaintiff contended that it learned it had a claim

20  for legal malpractice by means of counsel's investigation.  The plaintiff in that case testified "that

21  he relied on his attorney's advice and investigation regarding overcoming [defendant's] statute of

22  limitations defense."  <u>Id.</u> at 288.  Similarly, in <u>Titan Corp. v. M/A-Com, Inc.</u>, 1994 WL

23  16001739, at *1 (S.D. Cal. 1994), the plaintiff indicated in discovery and elsewhere that it had no

24  actual knowledge of any alleged fraud by defendant until an investigation was conducted by its

25  counsel.  The <u>Titan</u> court held that the "plaintiff put the alleged protected information in issue by

26  relying on its counsel's investigation in order to overcome the statute of limitations bar."  <u>Id.</u> at *2.

27    A third case relied upon by MGA, <u>Aloe Vera of America, Inc. v. United States</u>, No. CV

28  99-1794 PHX JAT, 2003 WL 22429082 (D. Ariz. 2003), did not involve direct reliance on

privileged information.  In <u>Aloe Vera</u>, the plaintiffs brought suit against the Internal Revenue Service for an allegedly unauthorized disclosure of information to Japan's National Tax Authority ("NTA").  Plaintiffs alleged that they first became aware of the basis of its claim when the government provided information in response to its Freedom of Information Act ("FOIA") complaint demanding release of documents.  Plaintiffs attempted to avoid discovery of privileged documents relating to the "date of discovery" issue by arguing that their Second Amended Complaint made no affirmative reference to their attorneys' investigations as to the accrual of a cause of action.  The court rejected plaintiffs' argument because the evidence in the record demonstrated, among other things, that plaintiffs' retained counsel filed the FOIA request, received a partial response to their FOIA request, and wrote a letter to the IRS stating that IRS conclusions were erroneous and that these conclusions were communicated to the NTA.  The court also noted that plaintiffs claimed in their Second Amended Complaint that several years before suit was filed, their "representatives" (whom the court suspected were plaintiffs' attorneys) were threatened by an NTA official with a press leak to coerce Plaintiffs into accepting their audit proposal.  Therefore, the court concluded that plaintiffs' attorneys' involvement in plaintiffs' alleged date of discovery had been placed "at issue" in the case.[1]

In the instant case, Mattel has not affirmatively put at issue privileged information in support of its claim or defense.  Mattel's complaint does not refer directly or indirectly to any attorney investigation or attorney involvement in Mattel's alleged discovery of the basis of its claims.  Nor has Mattel alleged that it learned the basis of its claims by means of privileged attorney-client communications or work product.  Mattel's discovery responses also make clear that Mattel is not relying on any privileged information to support its allegations of fraudulent concealment.  Instead, Mattel has disclosed that it first learned of the basis of its claims when it received a copy of Bryant's agreement with MGA in unrelated litigation.  Therefore, the second element of the <u>Hearn</u> test has not been satisfied.

---

[1] This court declines to follow <u>Rambus Inc. v. Samsung Electronics Co., Ltd.</u>, 2007 WL 344376 (N.D. Cal. Nov. 3, 2007), as it appears to be inconsistent with the cases discussed immediately above.

Furthermore, the third element of the <u>Hearn</u> test is clearly dispositive in this case because MGA cannot show that application of the privilege would deny it access to information "vital" to its defense. Courts applying <u>Hearn</u> in the Ninth Circuit and elsewhere have construed "vital" to mean that the information sought is not available from other sources. See <u>Amlani</u>, 169 F.3d at 1195 ("When the sought-after evidence is "only 'one of several forms of indirect evidence' about an issue," the privilege has not been waived.") (citing <u>Hamilton v. Lumsden (In re Geothermal Resources Int'l, Inc.)</u>, 93 F.3d 648, 653 (9th Cir. 1996); <u>see also</u> 1st Sec. Bank of Wash. v. Eriksen, 2007 WL 188881, at *3 (W.D. Wash 2007) ("[u]nder <u>Hearn</u>, the information sought must be 'vital' to defendants' case, meaning that the information is available from no other source").

In the instant case, there are many other means of proof available to MGA to support its statute of limitations and laches defenses. Mattel has produced hundreds of pages of non-privileged documents regarding its investigations relating to Bryant and/or MGA, including the 2002 investigations regarding the "anonymous letter" and potential copyright infringement of Mattel's Toon Teens. In addition, MGA took the deposition of Richard De Anda, Mattel's head of security, who testified regarding how and when Mattel first investigated Bryant and MGA. Mr. De Anda confirmed that he had not even heard of MGA, Bryant or Bratz before March 2002. Mattel has also provided interrogatory responses explaining its investigations of Bryant and MGA, and how and when it first learned of Bryant's allegedly wrongful conduct that forms the basis for Mattel's claims. Significantly, Mattel provided the following information:

> Mattel conducted an investigation in Spring 2002 based on allegations that Bryant may have plagiarized "Toon Teens" and created Bratz dolls for MGA, and later in August 2002 based on an anonymous letter sent to Mattel. The letter's author (whoever it was) offered no evidence for his or her allegations. The potential claims investigated in 2002 have not been asserted in this case. In March 2002, Mattel investigated allegations of possible copyright infringement of "Toon Teens" designs, not whether Mr. Bryant created Bratz or worked with MGA during his Mattel employment. The potential claims investigated in 2002 did not give Mattel any knowledge, or even reason to believe, that Bryant worked for MGA and/or conceived of Bratz while a Mattel employee.

> Subsequently, on November 24, 2003, Mattel obtained a copy of a contract between defendant Carter Bryant and defendant MGA. That contract – which Bryant and MGA had entered into while Bryant was employed by Mattel – required Bryant to provide design services to MGA on a "top priority" basis, in conflict with his then-existing obligations to Mattel. It also purported to grant MGA ownership of works produced by Bryant both before and after the agreement's effective date, in further contravention of his obligations to Mattel.

1          Through this agreement, Mattel first determined that it was likely that Bryant
           worked as a designer for a Mattel competitor, MGA, while being employed and
2          paid by Mattel for his exclusive services as a designer.

3    Supp. Responses to MGA's First Set of Interrogatories at p. 13, attached as Ex. 3 to Mumford

4    Decl.  MGA has also had the opportunity to question Mattel's in-house lawyer, Michael Moore,

5    during an evidentiary hearing conducted by the district court.

6          In addition, MGA recently took the deposition of Mattel's 30(b)(6) designee on several

7    topics relevant to MGA's defenses, including all acts, omissions, circumstances and/or evidence

8    showing, or tending to show (1) when Mattel first became aware of any alleged wrongful conduct

9    of Bryant, (2) the manner and mode by which Mattel first became aware of any alleged wrongful

10   conduct of Bryant, (3) when Mattel first became aware that Bryant was involved in the

11   conception, creation, design and/or reduction to practice of Bratz, (4) how Mattel first became

12   aware that Bryant was involved in the conception, creation, design and/or reduction to practice of

13   Bratz, and (5) all actions taken by Mattel, including but not limited to all circumstances

14   surrounding any investigations Mattel has undertaken, relating to Bratz after Mattel learned that

     Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

15         MGA contends, however, that Mattel "deliberately under-prepared the 30(b)(6) witness on

16   statute of limitations and laches topics so that she would testify that nothing Mattel's Legal

17   Department or Security Department investigated prior to November 2003 could possibly have put

18   the company on notice of the facts underlying its claims in this litigation."  MGA's Supplemental

19   Submission at p.1.  MGA contends further that "[b]ecause the witness was shielded during her

20   preparation from critical facts that might show otherwise, it was tantamount to Mattel making a

21   privilege assertion before-the-fact rather than at the deposition itself."  Id. at pp. 1-2.  In

22   particular, MGA contends that the witness was not given access to Mattel's Legal Department's

23   file or redacted portions of Mattel's Security Department's files, or spoke to anyone about those

24   files, to ascertain what underlying facts had been disclosed or uncovered by Mattel in any of its

25   pre-November 2003 investigations.  Id. at p.2.

26         A review of the deposition transcript, however, reveals that Mattel's 30(b)(6) witness

27   provided substantial testimony relevant to MGA's defense.  Over the course of a ten hour day,

28

1    Mattel's corporate designee gave over three hundred pages of testimony and freely answered all

2    but a handful of questions posed to her on this subject.  The transcript shows that the witness fully

3    cooperated and gave responses to the best of her ability.  Mattel's counsel did not obstruct MGA's

4    questioning of the witness.  Nor did Mattel's counsel object to any questions based upon the

5    attorney-client privilege.  The witness provided significant factual evidence related to how and

6    when Mattel first learned that Bryant was working for MGA while he was employed by Mattel.

7    Indeed, MGA has not pointed to any significant deficiencies in the witness' preparedness, other

8    than the witness' lack of knowledge concerning the contents of Mattel's Legal Department files

9    and Security Department investigation files.  It is unclear, however, whether the witness' failure to

10   review the contents of Mattel's Legal Department and Security Department files materially

11   affected MGA's ability to obtain full and complete testimony because the witness was

12   knowledgeable about the scope of investigations conducted by both departments.  In any event,

13   MGA's remedy lies in resumption of the deposition, and not the expansive subject matter waiver

     of privileged information MGA now seeks.

14          MGA next contends that the privileged information it seeks is vital because Mattel, in an

15   effort to defeat MGA's summary judgment motion, submitted the declaration of its in-house

16   counsel, Michael Moore, attesting that "Mattel knew nothing that could remotely put it on notice

17   of the facts underlying this lawsuit until November 24, 2003."  MGA's Supp. Submission at p.2,

18   Second Supp. Mumford Decl., Ex. 2.  Although Mattel's recent submission might arguably affect

19   the analysis under the second element of the <u>Hearn</u> test, it does not change the analysis under the

20   third prong.  As previously discussed, Mattel has already produced substantial evidence related to

21   MGA's statute of limitations and laches defenses.  MGA has not been denied factual evidence

22   related to how and when Mattel first learned that Bryant was working for MGA while he was

23   employed by Mattel.  Therefore, the confidential information MGA now seeks is not "vital" to its

24   defense.

                                   IV. CONCLUSION

25          For the reasons set forth above, MGA's motion to compel discovery of information

26   protected by the attorney-client privilege and work product immunity based on waiver by claim

27

28

1    assertion is DENIED.

2         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: April 25, 2008                              /s/
                                          _____
6                                             HON. EDWARD A. INFANTE (Ret.)
                                                     Discovery Master
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,                                              11
     CV-04-09049 SGL (RNBx)

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 25, 2008, I served the attached ORDER DENYING MGA'S MOTION TO COMPEL DISCOVERY AS TO ISSUES AS TO WHICH MATTEL HAS PURPORTEDLY WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BY CLAIM ASSERTION in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 25, 2008, at San Francisco, California.

Sandra Chan