**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 7**

**EXHIBIT TO**: DECLARATION OF LARRY W. McFARLAND IN SUPPORT OF ANAELISE CLOONAN'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP DISK

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

September 13, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Larry McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, California 90212

Re:     <u>Mattel, Inc. v. Bryant et al.</u>

Dear Mr. McFarland:

I follow-up on our telephone conversation today regarding the protocol for the inspection of computer hard drives and laptop computers. We propose the following:

- The expert will be from the following firm: DataChasers, Inc., Richard L. Albee, CEO, P.O. Box 2861, Riverside, California 92516, phone (877) 328-2392. DataChasers has not, to our knowledge, done any work for Mattel.

- Mattel will bear the costs of the expert.

- The computers shall be made available to the expert for imaging at your offices, but neither your lawyers nor your clients may be present for the imaging. No verbal directions may be given to the expert while he or she is working at your offices.

- The search terms to be used by the expert are attached on Attachment A. The expert will perform the search for responsive documents, including the computer's unallocated and file-slack space. The expert shall provide file- and system-level metadata for all such documents. The expert shall sign the protective order and

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2194393.1

2134433100         PAGE.02

EXHIBIT ___1___
PAGE ___37___

agree to be bound by its confidentiality requirements. Access by the expert to information protected by the attorney-client privilege or work product doctrine shall not constitute a waiver of the privilege.

Once the expert has made the mirror image of the hard drive, he or she will print out all documents and data collected in response to the search terms and Bates stamp the documents. Those documents will be provided to your office to pull for privilege. You will provide us with a privilege log sufficient to show the basis for withholding any documents. Within eleven (11) court days of the time that your office receives the documents and data that he or she has printed out, the expert will provide us with all such documents and data, including native files, except for any such documents or data for which privilege is asserted. You will serve upon us and the expert the privilege log identifying the documents or data, if any, to be withheld on privilege grounds within ten (10) court days of your receipt of the documents and data from the expert.

The expert also will follow the same procedures as set forth above with respect to any documents or data relating to any alteration of the hard drives or data on the hard drives by, for example, providing a listing of all application programs and when they were installed, detailing whether there is any evidence of the presence or use of a data destruction program on the computer, evidence regarding the transfer of relevant documents to or from the computer via media or e-mail, and/or user account information present on the system.

If there is any issue or question regarding the authenticity, correctness, integrity or completeness of any matter, including without limitation any document or data from the computers, this protocol does not foreclose Mattel from seeking production and inspection of any matter, including without limitation the original data, drives or documents.

Please sign below on behalf of your clients, Elise Cloonan and Sarah Halpern, if this is agreeable.

Very truly yours,

Susan Wines

SLW:wp
07209/2194393.1

Larry W. McFarland
Dated: September 27 2007

07209/2194393 1

2

2134433100          PAGE.03

EXHIBIT 1

PAGE 38

## ATTACHMENT A - PROPOSED SEARCH TERMS

MGA Entertainment, Inc.
ABC International Traders, Inc.
MGA Entertainment (HK) Limited
Bandai
Hasbro
Tomy

Carter Bryant and/or family members
Richard Irmen and/or family members
Isaac Larian and/or family members
Farhad Larian and/or family members
Morad Zarabi and/or family members

Ana Elise Cloonan
Paula (Treantafalles) Garcia
Sarah Halpern
Rachel Harris
Rebecca (Becky) Harris
Margaret Hatch-Leahy
Daniel Leahy
Kerri Legg Brode
Barbara Malcolm
Veronica Marlowe
Victoria O'Connor
Maureen Mullen Chianese
Amy Myers
Anna Rhee
Mercedeh Ward

Bratz
Prayer Angels or Angel

EXHIBIT _____ 7

PAGE _____ 39

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
<u>Hon. Stephen G. Larson</u>

# <u>**EXHIBIT 8**</u>

<u>**EXHIBIT TO**</u>:   DECLARATION OF LARRY W. McFARLAND IN SUPPORT OF ANAELISE CLOONAN'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP DISK

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

October 26, 2007

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

VIA FACSIMILE, E-MAIL, AND U.S. MAIL

Michael Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

     Re:    Mattel v. Bryant

Dear Michael,

Pursuant to our agreed upon protocol for inspection of the computer hard drives of Margaret Leahy, Elise Cloonan, and Sarah Halpern, we have reviewed the Bates stamped documents received from Data Chasers, Inc. for privilege.

Our review did not reveal any documents which should be withheld for privilege. However, due to the manner in which the search terms were applied to each hard drive, many non-responsive documents were pulled by Data Chasers, Inc. For example, it appears as though each hard drive was searched using the particular owner's name, which inadvertently pulled many non-responsive documents containing personal emails that are not relevant to this case. For example, Ms. Cloonan's computer was searched for documents that contained her name. The result is that none of the documents located by the expert on Ms. Cloonan's computer relate in any way to the case.

Pursuant to the protocol, Data Chasers, Inc. will be providing you with all the documents and data, including the native files. I believe that after your review, you will agree that many of the documents are non-responsive and should be removed from the production accordingly. Please contact me to discuss this matter as soon as you have had a chance to review the documents. Please note though that all of these documents should be classified as **CONFIDENTIAL – ATTORNEYS' EYES ONLY.**

Very truly yours,

Larry W. McFarland
KEATS McFARLAND & WILSON LLP

LWM/ccd
cc: Rick Albee

EXHIBIT ___ 8
PAGE ___ 40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 9**

**EXHIBIT TO**:   DECLARATION OF LARRY W. McFARLAND IN SUPPORT OF ANAELISE CLOONAN'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP DISK

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

November 21, 2007

VIA FACSIMILE, VIA HAND DELIVERY

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    Mattel v. Bryant

Dear Dylan:

I am writing in response to your letter dated November 15, 2007.

With respect to the document control numbers listed on the first two pages of your letter, I can confirm that this is a complete list of all the documents produced to date by Ms. Leahy, Ms. Marlow, Ms. Cloonan and Ms. Halpern that were assigned document control numbers.[1][2] The reason that I am making this distinction is that, as you know, Ms. Leahy and Ms. Marlow have produced sculpts and other three-dimensional objects that your firm has photographed and/or videotaped. In order to avoid any confusion, I propose that we make photocopies of each of these produced sculpts and three-dimensional objects and assign each photocopy a bates number. Please let me know if you agree with this proposal. Also, with respect to the photographs taken and the videotapes made by your firm of these sculpts and three-dimensional objects, I previously asked Ms. Wines for copies of these photographs and videotapes. She refused to provide me with copies and told me that it was your firm's position that the photographs and videotapes are work product and that your firm does not intend to use them at any of the depositions or at trial. Please confirm that Ms. Wines' statement is correct and that you will not be using any of these photographs or videotapes at the depositions of any of my clients or at trial.

With respect to your question involving whether the production of documents is complete, I can confirm that Ms. Halpern has produced all responsive documents in her possession, custody and control. With respect to Ms. Marlow, we are delivering to you with this

---

[1] For documents KMW-M 00667 through KMW-M 03040, your notation of the production date as August 29, 2007 does not reflect that an attorney from your office inspected the documents on August 24, 2007.
[2] For documents ACFR000364 through ACFR000390 and SHFR000225 through SHFR000364, your notation of the receipt date as October 29, 2007 does not reflect my letter dated October 26, 2007 to Mr. Zeller and Data Chasers, releasing the documents.

EXHIBIT 2
PAGE 4

B. Dylan Procter, Esq.
November 21, 2007
Page 2

letter document control numbers KMW-M 006695 through KMW-M 007643. In addition, we received some three-dimensional objects from Ms. Marlow for your review. Please let me know when someone from your office is available to inspect them. Regarding Ms. Leahy, she has located some additional three-dimensional objects which are available for your review. Please let me know when someone from your office is available to review these items. With respect to Ms. Cloonan, we noticed that your computer expert did not pick up a computer disk with Ms. Cloonan's computer. I suggest that we provide this disk to Data Chasers pursuant to the terms of our agreement as set forth in the letter from Ms. Wines dated September 13, 2007. In addition, in order to speed things up, we will agree to review anything found by Data Chasers within five court days of receipt from Data Chasers rather than the ten court days set forth in Ms. Wine's letter. Please let me know if this is acceptable. With the production of these last remaining items, I believe that the production from Ms. Marlow, Ms. Leahy, Ms. Halpern and Ms. Cloonan is complete.

Regarding the withholding of documents based on privilege grounds, it is our position that the fee agreements between our clients and their attorneys, as well as all correspondence between our clients and their attorneys, are privileged.

Regarding your statements with respect to redactions, your assertion that our clients have improperly redacted documents is incorrect. In addition, you continue to cite the previously redacted pages from Ms. Leahy's day planner, even though, as you know, additional pages from that day planner were produced pursuant to our agreement with Ms. Wines. (See my letter to you dated November 14, 2007.) I am not aware of any order from Judge Infante that precludes third parties from redacting irrelevant information. If there are any such orders, please provide copies to me. In addition, as I have previously stated, it is our position that any discovery disputes with our third party clients will be heard by Magistrate Judge Block. However, in an effort to try to avoid unnecessary motion practice, we are re-reviewing all of the documents that were redacted, and if there are any errors, we will provide corrected documents to you.

With respect to your request regarding whether Ms. Leahy, Ms. Marlow, Ms. Halpern or Ms. Cloonan have fee agreements with MGA, written or otherwise, without admitting that any such documents exist, it is our position that the request seeks the production of privileged information. Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure. California statutory authority provides that "[a] written fee contract shall be deemed to be a confidential communication within the meaning of [Cal. Bus. & Prof. Code § 6068(e)] and of [Cal. Evid. Code § 952]." Section 6068(e)(1) affirms that "[i]t is the duty of an attorney to ... maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Therefore, the requested fee agreements are confidential communications protected under the attorney-client privilege. If you have any authority to the contrary, please let me know. Finally, in response to your assertions in the November 15, 2007 letter, I am not aware of Judge Infante ruling on this issue with respect to any third party. If I am mistaken, please inform me of any such ruling.

EXHIBIT 2
PAGE 42

B. Dylan Procter, Esq.
November 21, 2007
Page 3

Regarding bank accounts used by Ms. Marlow in connection with her work with MGA, as I stated in my letters to Ms. Wines dated July 23, 2007 and September 21, 2007, we have not received any documents from Wells Fargo in response to your subpoena. In addition, we have not yet received any documents from Bank of America. As soon as we receive these documents, we will comply with the review procedure as set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Finally, with respect to your question whether Ms. Marlow has used any additional bank accounts in connection with her work for MGA, I will provide you this information on the condition that you agree to comply with the protocol set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Please let me know if you agree to this protocol.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

cc:  Thomas J. Nolan
     Michael Page

Enclosures (KMW-M 006695 through KMW-M 007643)

EXHIBIT 2
PAGE 43

1

**Carter Bryant v. Mattel Inc.**

2

Case No.: CV 04 – 09049 SGL (RNBx)

3

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

4

<u>Hon. Stephen G. Larson</u>

5

6

# **<u>EXHIBIT 10</u>**

7

8

**<u>EXHIBIT TO</u>:**   DECLARATION OF LARRY W. McFARLAND IN SUPPORT OF

9

ANAELISE CLOONAN'S NOTICE OF MOTION AND MOTION

10

OBJECTING TO PORTIONS OF DISCOVERY MASTER'S
APRIL 11, 2008 ORDER REGARDING A FURTHER

11

EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP

12

DISK

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017   TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

November 28, 2007

VIA FACSIMILE AND U.S. MAIL

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:    Mattel, Inc. v. Bryant

Dear Larry:

I write in response to your letter of November 21, 2007.

First, your proposal to make photocopies of the three dimensional objects your clients have made available for inspection and to produce those photocopies with Bates numbers is acceptable. Please provide these photocopies once they have been made. You are correct in your assertion that the photographs and videotapes we have taken of these objects are protected work product in our view. However, you are incorrect in asserting that Mattel has agreed not to use these photographs or videotapes at trial. Mattel did not agree to that in the past, and is not willing to so agree now. We are not presently in a position, or required, to disclose our trial exhibits. Nor do we understand why your clients, all third parties, would have any legitimate interest in delimiting Mattel's trial exhibit list.

Second, regarding the three-dimensional objects you received from Ms. Marlow and Ms. Leahy, we will send someone from our office to review them this Friday, November 30 at 9:30 a.m. Please let us know if this date and time does not work for you for any reason, and we will reschedule.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2302513 1

Third, regarding Ms. Cloonan's computer disk or drive, we would ask that you please provide the drive to Data Chasers as you suggest. We will agree to follow the protocol outlined in our September 13, 2007 letter, with the understanding set forth in your letter that you will review anything found by Data Chasers within 5 court days of receipt and provide the same to us. We expect you will proceed with appropriate expedition to ensure that Ms. Cloonan's documents are produced to Mattel sufficiently in advance of her deposition to enable Mattel to examine her on them as needed.

Fourth, as we stated in our letters of June 25, 2007 and November 15, 2007, Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged. See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4. Copies of these orders are attached for your reference. As the Court has held, the Business and Professions Code's privilege provisions do not apply in this federal question case, which is governed by federal privilege law. Nevertheless, we understand from your letter that your clients have withheld fee agreements without listing them on any privilege log. We hereby ask once again that they be produced. Please let us know if you are willing to do so. If not, we will plan to address the issue to the Court.

Fifth, and again as we stated in our letter of November 15, 2007, we believe we are entitled to unredacted copies of all documents that have been produced by your clients. You do not assert that the redactions to your clients' documents were made on the basis of privilege, and redactions on any other basis are improper. In fact, in Orders dated January 25, 2007 and May 15, 2007, Judge Infante expressly held that redactions on grounds other than privilege are improper given the protective order in place in this case, which fully addresses any perceived confidentiality or privacy concerns. See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 14; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 11, n. 4. Copies of these orders are attached for your reference. We hereby request again that you produce your clients' documents in unredacted form. Please let us know if you are willing to do so. If not, we will plan to address the issue to the Court. Please understand, however, that if Mattel is not able to examine your clients on redacted or other withheld information because you have withheld it at the time of their depositions, Mattel reserves its right to question your clients on such information in the future at a renewed deposition, once Mattel obtains access to the withheld information.

Last, please provide the information regarding additional bank accounts used by Ms. Marlow in connection with her work at MGA. We will agree to abide by the protocol outlined in the September 13, 2007 and November 2, 2007 letters regarding documents that are obtained from additional accounts.

07209/2302513.1

2

EXHIBIT 10
PAGE 45

In our letter of November 15, 2007, we requested a meet and confer on a contemplated motion to compel and for sanctions. If you wish to discuss these matters, please let me know when you are available to meet and confer this week. I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

Enclosures

EXHIBIT 10
PAGE 46

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 11**

**EXHIBIT TO**:   DECLARATION OF LARRY W. McFARLAND IN SUPPORT OF ANAELISE CLOONAN'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP DISK

## Larry W. McFarland

**From:**        Matt Albee [matt@datachasers.com]
**Sent:**        Friday, November 30, 2007 11:15 AM
**To:**          Larry W. McFarland
**Cc:**          'Rick Albee'
**Subject:**     Mattel v. Bryant - Item 5 Search Hit

**Attachments:** Item 5 search hit.pdf

Per our phone conversation, I have attached the text associated with the one search hit from the media described as "Item 5 – Zip Disk."

If you should have any questions, please don't hesitate to contact me on my cell phone – 951-534-6294.

Thanks,
Matt

---

Matthew Albee, CFCE EnCE SCERS          |          DataChasers, Inc.
Senior Examiner/Project Manager          |          www.DataChasers.com
matt@datachasers.com          Office: 951.780.7892          Toll Free: 877.DataExam

NOTE: This communication is privileged & confidential to the intended recipient.
DataChasers (R) is a registered trademark of DataChasers, Inc. CDCA Lic. PI-20551

---

EXHIBIT __11__
PAGE __47__

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 12**

**EXHIBIT TO:**   DECLARATION OF LARRY W. McFARLAND IN SUPPORT OF ANAELISE CLOONAN'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP DISK

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

December 17, 2007

VIA FACSIMILE
AND U.S. MAIL

Rick Albee
DataChasers, Inc.
PO Box 2861
Riverside, CA 92516-2861

FAX (951) 780-9199

Re:   Mattel v. Bryant

Dear Rick,

I am writing to confirm that the forensic review of the computer belonging to Ms. Halpern, the computer and zip disk belonging to Ms. Cloonan, and the two hard disk drives belonging to Ms. Leahy (my client's "Property") is complete pursuant to the agreed upon protocol as set forth and agreed to in the letter from Ms. Wines dated September 13, 2007, a copy of which was previously provided to you.

This letter also confirms our telephone conversation this evening and serves to put you on written notice that you are not authorized to conduct any further examination of my clients' Property or to access, analyze or review my clients' Property in any manner.

Please contact me immediately to confirm your receipt of this letter.

Very truly yours,

Larry W. McFarland
KEATS McFARLAND & WILSON LLP

LWM/ccd
cc:   Dylan Proctor
      Chris Tayback

EXHIBIT __12__
PAGE __48__

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 13**

**EXHIBIT TO**: DECLARATION OF LARRY W. McFARLAND IN SUPPORT OF ANAELISE CLOONAN'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP DISK

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750
WRITER'S EMAIL

lmcfarland@kmwlaw.com

December 18, 2007

<u>VIA FACSIMILE</u>
<u>AND U.S. MAIL</u>

Rick Albee
DataChasers, Inc.
PO Box 2861
Riverside, CA 92516-2861

FAX (951) 780-9199

Re:   <u>Mattel v. Bryant</u>

Dear Rick,

I am following up with my letter yesterday regarding the zip disk belonging to Ms. Cloonan. I have conferred with Mr. Tayback and request that you make a color photocopy of the front and the back of the zip disk and email the photocopies to me, with a copy to Mr. Tayback, so that I can put Bates numbers on the two pages.

Beyond this request, my instructions in my letter of December 17, 2007 remain the same. You are not authorized to conduct any further examination of the computer belonging to Ms. Halpern, the computer and zip disk belonging to Ms. Cloonan, and the two hard disk drives belonging to Ms. Leahy (my client's "Property"), or to access, analyze or review my clients' Property in any manner, other than to take the color photocopies as instructed in this letter.

Please contact me immediately to confirm your receipt of this letter.

Very truly yours,

Larry W. McFarland
KEATS McFARLAND & WILSON LLP

LWM/ccd
cc:   Dylan Proctor
      Chris Tayback

EXHIBIT __13__
PAGE __49__

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
<u>Hon. Stephen G. Larson</u>

# **<u>EXHIBIT 14</u>**

**<u>EXHIBIT TO</u>**:   DECLARATION OF LARRY W. McFARLAND IN SUPPORT OF ANAELISE CLOONAN'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP DISK

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

January 16, 2008

VIA FACSIMILE and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:    Mattel v. Bryant

Dear Dylan:

I am writing with regard to several outstanding issues discussed during our meetings of counsel held on January 9 and January 11, 2008, and with respect to the correspondence noted below.

### Lucy Arant

Responding to your letter dated January 10, 2008, in which you asked me to confirm that Ms. Arant is not withholding any non-logged documents, as we discussed during our meeting of counsel on January 9, 2007, I provided you with amended responses and objections to Mattel's document request that day. I also provided you with an amended privilege log.

With regard to documents responsive to Request No. 28 of Mattel's subpoena for the production of documents, I can confirm that our position is set out in the response to the same in Arant's amended objections and responses dated January 8, 2008. I reiterate that the filed intent-to-use trademark applications and any related statements of use fully satisfy Mattel's request that Arant produce:

DOCUMENTS sufficient to show each instance in which YOU have filed or caused to be filed an intent-to-use application for a name, mark, designation or source identifier, or any contemplated, proposed, considered, putative or formative name, mark, designation or

EXHIBIT 14

PAGE 50

B. Dylan Procter, Esq.
January 16, 2008
Page 2

source identifier, that had been used or was in use prior to the time such application was
filed or caused to be filed.

In addition, these documents are as readily available to Mattel as they are to Arant, including
without limitation by accessing the public records hosted on the Trademark Office web site at
www.uspto.gov. Moreover, as you know, Ms. Arant filed a revised declaration which did not
contain the statement regarding filing intent-to-use applications which you refer to in your
Request No. 28.

Additionally, we do not believe that any privileged documents have been withheld, other
than as set forth on the privilege log. However, we are reviewing the documents again to confirm
that everything is included in the privilege log. If we locate any additional relevant documents
that are being withheld for privilege, we will provide you with an amended privilege log by
Friday, January 18, 2008.

### Photographs and Videos Used During Depositions

I write in response to your last letter of January 11, 2008. As I set forth fully in my letter
of December 18, 2008, you have waived the work product protection with respect to the
photographs and videotapes of the three-dimensional objects which we produced for inspection,
by using some of these photographs at Ms. Leahy's deposition. In furtherance of my follow-up
letters of January 2, 2008, and January 11, 2008, I again request that these documents be
produced in their entirety. It is clear under the relevant authority that your use of the photographs
during a deposition has resulted in a waiver of the work product protection which you have
claimed in those items. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 512-13 (S.D. Cal.
2003). In my letter of January 11, 2008, I presented further legal authority in support of my
position. You have failed to provide any relevant legal authority contrary to this position.
Indeed, the citations in your January 11, 2008, letter do not support your conclusion that the
photographs constitute opinion work product rather than factual work product, but instead simply
reiterate the general rule that opinion work product is treated differently than fact work product
with respect to waiver. This may be true, but it is not relevant here because the photos and video
do not constitute opinion work product. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4
(8th Cir. 1998) ("Ordinary work product includes such items as photographs and raw
information.").

However, I see that you have agreed in your letter dated January 11, 2008, to provide us
copies of all of the photographs and videos taken of the three-dimensional items if I agree to do
the same. I would point your attention to my letter of December 18, 2007, in which I clearly
stated that we had provided you with copies of all of our photos on December 11, 2007. I also
reminded you of this during our telephonic meeting of counsel on January 9, 2008.

EXHIBIT 14

PAGE 5

B. Dylan Procter, Esq.
January 16, 2008
Page 3

Unfortunately, you have made MGA's agreement a condition of Mattel's agreement to produce these photographs and videotapes. That is an issue that you need to raise with MGA's attorneys. I request that you reconsider your position and agree to provide us with all of the photographs and videos that you have taken of the three-dimensional objects produced by my clients and remind you again that my clients have already done the same.

### Computers

With regard to your request that I agree to a new protocol as set forth in Mr. Tayback's email dated January 9, 2008, for the review of the computers, hard disk drives, and zip disk (the "Computers") belonging to Ms. Leahy and Ms. Cloonan, as you know, these Computers have already been reviewed pursuant to the protocol that your partner, Susan Wines, and I agreed to several months ago. Moreover, all of the documents located by the expert's search pursuant to the agreed to protocol have already been produced and both Ms. Leahy and Ms. Cloonan have already been deposed. We are, therefore, not willing at this late date to agree to a new protocol.

As you know, Ms. Wines and I spent a considerable amount of time meeting and conferring with respect to a protocol for the review of the Computers. The result of these discussions was the protocol set forth in Ms. Wines' letter dated September 13, 2007. Both Mattel and I agreed to be bound by this protocol. In addition, as I have repeatedly stated, one of the most important issues for me was that this protocol be agreed to and all documents located pursuant to the protocol be produced prior to the depositions of my witnesses. As you know, this was accomplished. Now that the depositions of Ms. Leahy and Ms. Cloonan have been taken, you are attempting to re-review the Computers pursuant to a new protocol. This is not acceptable and you have presented no basis to justify your attempt to change the protocol. In the email dated January 9, 2008, from Mr. Tayback, he stated that "the testimony of the witnesses makes clear that there are graphical (and perhaps other) files on the Cloonan and Leahy hard drives that are relevant, responsive, non-privileged documents but which were either not produced by you or not identified by the prior search protocol." However, the fact that there could be graphical files on the Computers is not new information. As you know, Mr. Bryant testified during his deposition that he and/or Ms. Cloonan may have utilized the computer belonging to Ms. Cloonan to create graphics for Bratz. Unfortunately, it appears as though this effort to alter the protocol previously agreed upon is simply part of a larger strategy to never commit to an agreement and/or conclude a deposition.

With regard to the computers belonging to Ms. Marlow, as I stated during our conference on January 9, 2008, in response to the subpoena, we produced all relevant and responsive documents in Ms. Marlow's possession, custody or control, which included emails residing on her computers. Accordingly, Ms. Marlow has fully complied with her discovery obligations. It is both unreasonable and beyond the scope of Mattel's discovery rights to require Ms. Marlow to

EXHIBIT 14
PAGE 12

B. Dylan Procter, Esq.
January 16, 2008
Page 4

produce her actual computer hard drives to Mattel. Ms. Marlow has fully complied with her
discovery obligations by searching her hard drives and producing all relevant documents in
response to Mattel's requests. As you know, when a party is obligated to produce electronically-
stored documents in response to discovery requests, it is the responding party's obligation to
conduct the search and review its own documents. *See Peskoff v. Faber*, 240 F.R.D. 26, 31
(D.D.C. 2007) ("[T]he producing party has the obligation to search available electronic systems
for the information demanded."), *quoting McPeek v. Ashcroft*, 202 F.R.D. 31, 32 (D.D.C. 2001)).
The mere fact that a requesting party is skeptical that a responding party has produced copies of
all relevant and non-privileged documents does not warrant compelling production of the
responding party's computer hard drives. *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9
Fed. Appx. 822, 831 (10th Cir. 2001). *See also Ameriwood Indus., Inc. v. Liberman*, No. 4-
06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not inspect
the physical hard drives of a computer merely because the party wants to search for additional
documents responsive to the party's document requests."). Ms. Marlow is not required to go
above and beyond the requirements placed on a party and produce her computer hard drives to
Mattel.

Finally, your claim that you just now learned during her deposition that Ms. Marlow
occasionally used computers is inaccurate. You have known for quite some time that Ms.
Marlow sent and received email because we produced such relevant emails well prior to her
deposition and I believe that MGA has also produced emails which were sent to Ms. Marlow.
With respect to your allegation that I had "previously represented to Mattel that Ms. Marlow does
not have any hard drives which she used for work relating to Bratz," I am unaware of making any
such representation. Because you insist that I have, please advise as to when and where I made
the alleged representation.

### Bank Records

I write further in response to your latest letter on this subject dated January 11, 2008.
With regard to the Wells Fargo documents belonging to Ms. Marlow that were produced directly
to you in violation of our agreed upon protocol, you stated in your letter dated January 10, 2008,
that you would consider my request that you purge yourself of those documents and return them
to me so that they may be reviewed pursuant to the protocol. In your letter of January 11, 2008,
you proposed supplementing the review protocol for all bank records produced and to be
produced by adding documents referring to the following:

(1)    Isabel Ana Cabrera

(2)    Beatriz Morales

(3)    Maria Elena Salazar

(4)    Payments made to, or work or services performed by, any other Mattel employee

EXHIBIT __14__

PAGE __53__

B. Dylan Procter, Esq.
January 16, 2008
Page 5

    (5)     Payments made by, or any services performed for, any competitors of Mattel,
including any company involved in the sale of dolls or toys, while your clients
were employed at Mattel

    (6)     The dates on which any entities with which your clients are affiliated were
established, including but not limited to payments to the Franchise Tax Board or
other tax entities.

With regard to items (1), (2), (3), and (6), I agree to amend the protocol for review of the
bank records. However, item (4) is too vague and should be qualified to read "while such person
was an employee of Mattel." Item (5) is also too vague and should be amended to read that
competitors of Mattel are defined as any company involved in the sale of dolls or toys, not
simply "including any company involved in the sale of dolls or toys," as you have drafted it. If
you are amenable to these changes, please advise us accordingly.

### Retainer Letters

With regard to your request that I produce any retainer letters signed by my clients, you
have taken the position that various orders entered by Judge Infante with respect to Mr. Bryant
are controlling as to my non-party clients. As you know, I was not involved with the motions
ruled on by Judge Infante, but your firm obviously was. As I pointed out in my letter dated
December 18, 2007:

> Regarding the fee agreements, I am at a loss to understand how you can contend that
> "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests
> for production are irrelevant here." The point is simple. Mattel is taking the position
> with respect to my clients that Judge Infante's orders require the production of retainer
> letters, while at the same time, Mattel has continued to object to the production of retainer
> letters after the entry of Judge Infante's order. Your silence with respect to my request in
> my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden
> or any third party, please provide me with a copy of that document," says everything. You
> have not provided me with any such retainer letters and, therefore, I can only assume that
> you have continued to refuse to produce them.

As I told you during our meet and confer on Friday, January 11, 2008, if Mattel agrees that the
orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-
parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer
letters for my third party clients. With respect to your statement during our call on January 11,
2008, that the two situations were like "apples and oranges," I request that you reconsider your

EXHIBIT 14
PAGE 54

B. Dylan Procter, Esq.
January 16, 2008
Page 6

position. The issue is simple – what is Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties.

As far as whether I will be providing a privilege log as you propose in your letter of January 10, 2008, I reiterate my previous statement that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. Rule 26 lays out the purpose of providing a privilege log as being to "expressly make the claim" of privilege and to "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." F.R.C.P. 26(b)(5). In this case, the purpose of the privilege log has been fully satisfied – I have told you that I am not producing the retainer letters between my clients and their attorneys. (Nor am I producing the correspondence between my clients and their attorneys.) You are aware of the claim of privilege and what is not being produced. I can also confirm that these retainer letters were not copied or addressed to other parties or third parties.

### Additional Deposition Dates

With respect to your request that my clients be made available for additional deposition dates, as I have repeatedly stated, this request is unreasonable. I have made my clients available for the full seven hours (and beyond in some instances) as required by the federal rules and believe that demanding additional time of these non-party witnesses is not warranted. In particular, I write in response to the issues raised in the letter from Mr. Zeller dated January 4, 2008, and his mischaracterization of why he believes he did not have enough time to question Ms. Marlow. As a preliminary matter, with regard to Mr. Zeller's belief that he did not have time to question Ms. Marlow regarding other Mattel employees she has worked with, documents identifying the other Mattel employees Ms. Marlow worked with were produced well prior to the deposition and Mr. Zeller had plenty of time to review these documents prior to the deposition and did in fact question her extensively about these individuals during the deposition.

In addition, the assertions by Mr. Zeller in the third and fourth paragraphs of his letter that Mattel lacked sufficient time to depose Ms. Marlow regarding Mr. Bryant's drawings and the Prayer Angels project are simply untrue. All of these topics were covered in great detail during the deposition. With regard to the several pages of additional documents produced on the day before the deposition, I have difficulty understanding how those might have adversely affected Mr. Zeller's ability to question Ms. Marlow regarding them. Mr. Zeller stated at the deposition that all these documents except one had been previously produced by MGA or Bryant. With respect to the one new document, Mr. Zeller had seven hours to question Ms. Marlow regarding this document, but he chose not to do so.

EXHIBIT 14
PAGE 55

B. Dylan Procter, Esq.
January 16, 2008
Page 7

Finally, with regard to the specific instructions Mr. Zeller has taken issue with, he claims
that at Marlow Depo. Tr 174:4 – 177:3, my objections were "suggestive" and "obstructionist." I
reject this assertion, and believe that my objections and those of counsel for Bryant and MGA
were well within the federal rules. Furthermore, I will point out again that his line of questioning
was an attempt to put words in Ms. Marlow's mouth to support your purported legal conclusion
that the drawings at issue were "substantially similar" to the final Bratz product, when in fact Ms.
Marlow repeatedly disagreed with your conclusion, stating that:

Q: Are they – are they more different or are they more similar?

A: They're more different.

Not satisfied with Ms. Marlow's answer, Mr. Zeller repeatedly asked the same question over and
over in different formats in a failed attempt to get Ms. Marlow to answer the question to his
pleasing. If Mr. Zeller had instead asked direct questions and not wasted time forcing Ms.
Marlow to repeat herself multiple times, he would have had more than enough time available to
him to ask all of the questions that he believes he needed to.

Mr. Zeller also complains about Ms. Marlow's testimony at 87:8 – 13, as follows:

Q: Did you have some legal questions in your mind at that time prior to the time that
you talked to Mr. Contopolous?

This question was part of an improper line of questioning regarding Ms. Marlow's
communications with her attorney, Mr. Contopolous. Prior to this question, Ms. Marlow had
testified that she was seeking legal representation from Mr. Contopolous regarding this litigation.
See *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir.1996) ("A client is entitled to hire a
lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

In addition, Ms. Marlow fully answered Mr. Zeller's questions with respect to what
questions were in her mind prior to the time that she spoke to Mr. Contopolous as follows:

Mr. McFarland: Why don't we read it back.

(The record was read by the court reporter as follows:

"Q: Did you have some questions in your mind at that time prior to the time that you
talked to Mr. Contopolous?")

EXHIBIT 14
PAGE 56

B. Dylan Procter, Esq.
January 16, 2008
Page 8

Mr. McFarland:          Objection, she's asked and answered your questions or mine
                        regarding this litigation.  She talked to Mr. Contopolous.

By Mr. Zeller:

Q:      You can go ahead and answer.

A:      I don't have anything to say about that.

Q:      You're refusing to answer the question?

Mr. McFarland:          No, she's already answered your question.

By Mr. Zeller:

Q:      What was it specifically about – tell me everything it was about the litigation
        between Carter Bryant and Mattel that you had on your mind prior to the time that
        you spoke with Mr. Contopolous?

Mr. McFarland:          She's asked and answered the question.

Did you have anything else in your mind other than what you've said?

The Witness:            No.

By Mr. Zeller:

Q:      So it was just that there was litigation and nothing else?

A:      Yes.

Q:      There was nothing in particular?

Mr. McFarland:          She's –

The Witness:  No.

Mr. McFarland:          -- answered the question.  You have answered the question.

The Witness:  I answered the question.

By Mr. Zeller:

Q:      There was nothing in particular; right?

A:      Right.


## Marital Privilege Instructions

    With respect to the marital privilege issue, I am both surprised and confused by your
continued attempts to limit the marital privilege to criminal cases.  As explained in my January 2,
2008, letter to you:

    Federal common law recognizes two distinct forms of marital privilege.  The first is the
    privilege against adverse spousal testimony, which invests in the testifying witness the

EXHIBIT 14
PAGE 87

B. Dylan Procter, Esq.
January 16, 2008
Page 9

> privilege of not being compelled to testify against one's spouse. Trammel v. United
> States, 445 U.S. 40 (1980). The second is the confidential marital communications
> privilege, which provides that "[c]ommunications between the spouses, privately made,
> are generally assumed to have been intended to be confidential, and hence they are
> privileged," and which may be asserted by either spouse to bar the testimony of the other
> regarding marital communications made in confidence. Wolfe v. United States, 291 U.S.
> 7, 14 (1934)....

As I further provided, courts have held that the confidential marital communications privilege
"may be asserted by either spouse in both civil and criminal proceedings, while the testimonial
privilege ... is recognized only in criminal proceedings." 281 Syosset Woodbury, 862 F. Supp.
847, 852 (E.D.N.Y. 1994); see also Englemann v. Nat'l Broad. Co., Inc., No. 94 Civ,
5616(MBM)(AJP), 1995 WL 214500, at *2 *(S.D.N.Y. Apr. 10, 1995) ("The second of the two
federal marital privileges, the spousal confidential communications privilege ... applies in both
criminal and civil cases.").

Nevertheless, you continue to allege that I "have not offered any authority supporting the
proposition that the marital privilege applies in civil cases." To the contrary, I believe that is
exactly what I did and that it is you that have failed to offer any authority supporting the
proposition that confidential marital communications, the one form of the privilege that is
relevant here, applies only in criminal cases. Instead, you merely re-assert your claim that marital
privilege does not apply here and cite to cases which address only the first form of marital
privilege, the privilege against adverse spousal testimony. Specifically, your most recent
reference to Ryan v. Commissioner of Internal Revenue, 568 F.2d 531, 542 (7th Cir. 1977)
demonstrates my point exactly. In your January 11, 2008, letter, you cite Ryan to argue that
marital privilege is "only applicable in criminal cases." However, like 281 Syosset Woodbury,
Ryan actually supports my position that only the privilege against adverse spousal testimony is
limited to criminal cases. In Ryan, the Seventh Circuit affirmed the Tax Court's rejection of "the
Ryans' claim of marital privilege because the privilege against *adverse spousal testimony* is only
applicable in criminal proceedings." Id. at 537(emphasis added), 542 ("The Tax Court held that
the privilege against *adverse spousal testimony* was only available in criminal cases and therefore
was not applicable in civil tax proceedings.") (emphasis added).

Moreover, your claim that the three Supreme Court and Ninth Circuit cases cited in my
January 2, 2008, letter "each addressed marital privilege within the context of criminal matters,
not civil litigation," is misleading. Indeed, while these cases involved criminal proceedings, two
of the three addressed the privilege against adverse spousal testimony. Although the third, Wolfe
v. United States, 291 U.S. 7, 14 (1934), addressed the confidential marital communications
privilege, the Court actually acknowledged that the two forms of marital privilege are in fact
distinct. Id. ("Hence it is that the privilege with respect to communications extends to the
testimony of husband or wife even though the different privilege, excluding the testimony of one
against the other, is not involved."). Thus, you have once again failed to show that the
confidential marital communications privilege is limited to criminal cases.

EXHIBIT 14
PAGE 58

B. Dylan Procter, Esq.
January 16, 2008
Page 10

My responses to the testimony set forth in your letter of January 11, 2008, are set forth below:

Ms. Cloonan's testimony at 38:6-17:

    Q:      Other than Mr. McFarland here, have you discussed the lawsuit with anybody?
    A.:     Not much more than to tell people that I was involved in it; my father, my
            stepmother, my family, my husband.

This question was answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 06:23 – 108:9; see 108:2:

    Q:      What did you and he discuss on that subject?
    A:      I don't recall.

This question was also answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 108:11 – 14:

    Q:      Have you discussed this lawsuit with your husband?
    A:      I'm not going to answer that.
    Q:      You can't tell me one way or the other?
    A:      Do I have to?  If I have to, I will.
    Mr. McFarland: Well, first of all, it's asked and answered.  She's already told you she
            mentioned to her husband and other people.

As I stated on the record, I reiterate that this question was answered previously in the deposition as set forth above, regardless of any instruction.

Ms. Cloonan's testimony at 109: 1 – 8; see 109:15 – 18:

    Q:      Prior to Christmas of last year, did you discuss this lawsuit with your husband, Mr.
            Sandham, your current husband?

EXHIBIT 14
PAGE 59

B. Dylan Procter, Esq.
January 16, 2008
Page 11

     A:    I don't know.

Even assuming that the confidential marriage communications privilege does not apply to domestic partners who subsequently marry, you have failed to meet your burden to establish that this conversation occurred prior to marriage and that it, therefore, may not be protected by the marriage privilege. "When encountering a privilege objection at deposition, examining counsel should insist on making a record that will permit meaningful judicial evaluation of the privilege claim." 7 *Moore's Federal Practice* § 30.43[2] (Matthew Bender 3d ed.). Ms. Cloonan answered that she did not know whether this conversation occurred before or after she was married to her husband. It was Mr. Zeller's responsibility to make the showing that the instruction was improper, and he failed to do so.

### Attorney-Client Privilege Instructions

In your letter dated January 11, 2008, you also claim that Ms. Cloonan was improperly instructed regarding facts disclosed during her conversations with counsel. I am unaware of any ruling by Judge Infante so limiting the attorney client communication privilege. Please provide me with the order you are referring to.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc:  Thomas J. Nolan
     Michael Page

EXHIBIT 14
PAGE 60

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 15**

**EXHIBIT TO**:   DECLARATION OF LARRY W. McFARLAND IN SUPPORT OF ANAELISE CLOONAN'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP DISK

## Larry W. McFarland

**From:**     Christopher Tayback [christayback@quinnemanuel.com]

**Sent:**     Thursday, January 17, 2008 10:11 PM

**To:**       Larry W. McFarland

**Cc:**       Dylan Proctor

**Subject:**  Cloonan, Leahy and Marlow computer hard drive images and the "zip disk".

Larry—

Dylan informed me that you rejected all of my requests at our meet and confer. This is to advise you that we will
be filing an ex parte application next week to compel the production of the imaged hard drives mentioned above
and the zip disk, as we previously discussed, or in the alternative to modify the scheduling order to allow sufficient
time for expert examination of such items and disclosure of an expert report in the event the Court requires us to
proceed by noticed motion. Please advise if you intend to oppose such an application.

Regards,

Chris Tayback

EXHIBIT 15

PAGE 61