QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case No. CV 04-09039 Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW; AND |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| | MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Declaration of Christopher Tayback filed concurrently] |
| | Hearing Date: June 16, 2008 Time: 10:00 a.m. Place: Courtroom |
| | **Phase 1** Discovery Cut-Off: January 28, 2008 Pre-Trial Conference: May 5, 2008 Trial Date: May 27, 2008 |

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 | PLEASE TAKE NOTICE that on June 16, 2008, at 10:00 a.m., or as

3 | soon thereafter as counsel may be heard, in the Courtroom of The Honorable

4 | Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501,

5 | plaintiff and counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move

6 | the Court to overrule portions of the Discovery Master's April 11, 2008 Order

7 | Granting in Part and Denying in Part Mattel's Motion to Compel Production of

8 | Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy and

9 | Veronica Marlow.

10 | This Motion is made pursuant to Federal Rules of Civil Procedure

11 | 72(a) and Federal Rule of Evidence 706 on the grounds that the Discovery Master's

12 | Order was clearly erroneous and contrary to law in its ruling denying Mattel's

13 | motion to compel production of Veronica Marlow's and Margaret Hatch-Leahy's

14 | computer hard drives.

15 | This Motion is based on this Notice of Motion and Motion, the

16 | accompanying Memorandum of Points and Authorities, the Declaration of

17 | Christopher Tayback concurrently herewith, and all other matters of which the Court

18 | may take judicial notice.

19

20

21

22

23

24

25

26

27

28

07209/2483459.2

1

## Statement of Rule 37-1 Compliance

2      The parties met and conferred the issues raised on this motion on

3    January 9, 2008 and times thereafter.

4

5    DATED:  April 25, 2008              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
6

7
                                        By_____
8                                           Michael Zeller
                                            Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2483459.2

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND .................................................................................. 3

    A.    Veronica Marlow ................................................................................ 3

    B.    Margert Hatch-Leahy .......................................................................... 6

    C.    Discovery Protocol re Computer Searches ........................................ 7

    D.    Mattel's Motion and the April 11, 2008 Order ................................. 9

ARGUMENT ........................................................................................................ 11

I.    THE BASIS OF THE DISCOVERY MASTER'S ORDER DENYING MATTEL DISCOVERY AS TO MS. HATCH-LEAHY'S COMPUTER HARD DRIVE IS CLEARLY ERRONEOUS ........................ 11

II.    THE BASIS OF THE DISCOVERY MASTER'S ORDER DENYING MATTEL DISCOVERY AS TO MS. MARLOW'S COMPUTER HARD DRIVE IS CLEARLY ERRONEOUS ................................................. 15

III.    MATTEL'S INTEREST IN RELEVANT DISCOVERY OUTWEIGHS ANY CLAIMED PRIVACY INTEREST MS. MARLOW AND MS. HATCH-LEAHY HAVE IN THEIR COMPUTER HARD DRIVES ................................................................................................... 16

CONCLUSION .................................................................................................... 19

07209/2483459.2

# TABLE OF AUTHORITIES

**Page**

## Cases

Foltz v. State Farm Mut. Auto. Ins. Co.,
331 F.3d 1122 (9th Cir. 2003)........................................................................ 17

Humphreys v. Regents of Univ. of Cal.,
2006 WL 335275 (N.D. Cal. 2006)................................................................ 16

Keith H. v. Long Beach Unified School District,
228 F.R.D. 652 (C.D. Cal. 2005) ............................................................ 17, 18

Oakes v. Halvorsen Marine Ltd.,
179 F.R.D. 281 (C.D. Cal. 1998) ................................................................ 17

Peskoff v. Faber,
244 F.R.D. 54 (D.D.C. 2007) ...................................................................... 11

Playboy Enterprises, Inc. v. Welles,
60 F. Supp. 2d 1050 (S.D. Cal. 1999) ..................................................... 11, 12

Reyes v. Red Gold, Inc.,
2006 WL 2729412 (S.D. Tex. 2006)............................................................ 17

Rosa v. Commonwealth of Virginia,
638 S.E.2d 92 (Ct. App. Va. 2006) .............................................................. 13

Superior Consultant Co. v. Bailey,
2000 WL 1279161 (E.D. Mich. Aug. 22, 2000) ......................................... 12

Treppel v. Biovail Corp.,
233 F.R.D. 363 (S.D.N.Y. 2006)................................................................. 11

United States v. Triumph Capital Group, Inc.,
211 F.R.D. 31 (D. Conn. 2002) .................................................................. 13

## Statutes

Fed. R. Civ. P. 34...................................................................................... 11, 12

Fed. R. Evid. 501 ........................................................................................ 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

This Court should order that a complete, good faith and forensically sound search be done of the computers that Veronica Marlow and Margaret Leahy used for their work on Bratz. As the Court is aware, Marlow and Leahy are central MGA witnesses in this case. They worked with Bryant and MGA on Bratz during its early phases, with Leahy working as a sculptor and Marlow working on fashion samples. Nevertheless, as is uncontested, the computer hard drives of these two key witnesses have *never* been searched for *graphical* files relating to Bratz. Indeed, their counsel took the position that keyword searches -- which by definition do not capture machine-readable images or deleted files -- were all that were required. Furthermore, because the work of other Mattel employees on Bratz had been concealed by defendants and Marlow, the keyword search did not include the names of these additional employees.[1]

Despite the facial incompleteness of the review of these important hard drives, Marlow and Leahy's counsel -- who is a long-standing MGA lawyer and is paid by MGA -- refused any review of the drives other than by way of this incomplete keyword search. Mattel then filed a motion with the Discovery Master to obtain a complete examination of these drives for responsive information. The Discovery Master denied that portion of Mattel's motion, principally on privacy

---

[1]   After evading deposition for months, and only after Mattel was forced to bring a motion to compel, Marlow appeared for deposition in late December 2007. At deposition, she identified for the first time, three other Mattel employees who worked for MGA on Bratz while they were employed by Mattel, in addition to Bryant. These other Mattel employees were Ana Cabrera, Beatriz Morales and Maria Salazar. Although Marlow did not disclose it at deposition, Mattel separately discovered that Marlow had sought to conceal the work of these other Mattel employees on Bratz by paying them under false names and fake social security numbers.

1  grounds and on the grounds that keyword search was sufficient to locate relevant
2  documents.[2]

3        The Order denying that portion of Mattel's motion was clearly
4  erroneous and contrary to law and deprives Mattel of highly relevant, discoverable
5  evidence from third-parties who worked with MGA and Carter Bryant on the early
6  development of Bratz, including evidence bearing on when, where and how Carter
7  Bryant created "Bratz" and identifying those who assisted him.  Under black letter
8  law, Marlow and Leahy were required to affirmatively search their available
9  electronic data for responsive information.  It was, and remains, undisputed,
10 however, that no search for *graphical* files was ever conducted on the hard drives
11 used for Bratz work.  It also was, and remains, undisputed that no search -- even by
12 keyword search -- for documents relating to other Mattel employees who worked on
13 Bratz while employed by Mattel was ever conducted either.

14       Indeed, there is no evidence that Marlow's hard drives were ever
15 searched at all, by keywords or otherwise.  The Discovery Master instead relied on
16 Marlow's self-serving statement at deposition that she "had searched" for and
17 produced documents related to Bratz.  She did not testify, however, that her
18 computers were searched for relevant documents.  Equally tellingly, in opposing
19 Mattel's motion, neither Marlow nor her counsel submitted a declaration stating that
20 they were searched.  This was not surprising.  Marlow did not submit evidence that
21 the relevant drives had been searched because it was her counsel's position that she
22 was not obligated to even look, not that her review and production was complete.

23
24

25    [2]  The Discovery Master did grant Mattel's motion to conduct a forensic
26 computer examination of the computer and a separate "zip" disk in the possession of
27 Elise Cloonan.  That aspect of the Discovery Master's April 11, 2008 order is not the
   subject of this appeal.
28

1         Mattel respectfully requests that this Court overrule the clearly

2 erroneous portions of the Discovery Master's April 11, 2008 Order and allow Mattel

3 the opportunity to conduct meaningful discovery of the witnesses' computer hard

4 drives.

5

6                              **Factual Background**

7

8      **A.**    **Veronica Marlow**

9         Veronica Marlow met Carter Bryant in or about 1996 while they both

10 worked at Mattel.[3]  She later left Mattel to became a freelance designer and, she

11 claims, began performing freelance work for MGA in or about April or May of

12 2000.[4]  Both Ms. Marlow and Paula Garcia, MGA's Bratz project manager, have

13 testified that it was Veronica Marlow who first brought Bryant to MGA's attention

14 and that Ms. Marlow was present at Bryant's pitch meeting for Bratz with MGA

15 while he was a Mattel employee.[5]  Ms. Marlow has since received millions of

16 dollars from Bryant and MGA as an alleged finder's fee.[6]  Ms. Marlow also worked

17 on MGA's Bratz product line through 2005.  She was involved with the

18 development of Bratz from its inception and is one of the few people to whom

19

20

21 _____

22   [3]   Deposition Tr. of Veronica Marlow, dated December 28, 2007 ("Marlow

23 Depo."), at 18:1-10. [Tayback Dec. Exh 1].
    [4]  Id. at 37:14-18.

24   [5]  Id. at 115:10-122:3; Deposition Tr. of Paula Garcia, Vol. 1 ("Garcia Depo."),

25 dated May 24, 2007, at 186:19-187:16; 242:19-243:17; 264:21-266:20; 270:22-
271:1. [Tayback Dec. Exh. 2].

26   [6]  Marlow Depo. at 113:10-114:3, 115:10-122:3, [Tayback Dec., Exh. 1]

27 Transcript of the Deposition of Carter Bryant dated November 4, 2004 ("Bryant
Depo.") at 157:18-158:3, [Tayback Dec., Exh. 3].

28

1   Carter Bryant claims he showed his Bratz illustrations prior to presenting them to
2   MGA.[7]

3           On December 28, 2007, after months of delay that forced Mattel to
4   bring an *ex parte* application to compel her appearance, Marlow appeared for
5   deposition and testified for the first time at her deposition that, in addition to Carter
6   Bryant, three more Mattel employees secretly worked on Bratz for *years* and were
7   paid for their work while employed by Mattel.[8]  These employees included Ana
8   Cabrera, a long-time employee, whom Mattel had trusted and promoted to a
9   supervisory position, Beatriz Morales, and Maria Salazar.[9]

10          Until this testimony, defendants had constantly sworn under oath that
11  Bryant was the only one who worked on Bratz while still a Mattel employee.
12  Indeed, Bryant and MGA concealed the identity of the other employees by
13  providing false, blanket denials under oath in response to specific discovery
14  questions seeking identification of Mattel employees who worked on Bratz or for
15  MGA.[10]  For example, Carter Bryant denied being aware of any other Mattel
16  employee working for MGA while he or she was employed by Mattel.[11]  MGA's
17  Rule 30(b)(6) designee on this topic, Lisa Tonnu, identified no one as having
18  performed work or services for MGA while also employed by Mattel at any time
19  since 1998.[12]  MGA's interrogatory responses entirely failed to name either

20

21      [7]  Bryant Depo. at 46:22-47:8, [Tayback Dec., Exh. 3].
22      [8]  Marlow Depo. Tr. at 306:14-308:1, 363:15-365:21, [Tayback Dec., Exh. 1].
        [9]  Id.
23      [10]  See e.g., Bryant Depo. Tr. at 286:25-287:5, [Tayback Dec., Exh. 3];
24  Transcript of the Deposition of Lisa Tonnu dated September 24, 2008 ("Tonnu
    Depo.") at 301:2-17, [Tayback Dec., Exh. 4]; MGA's Supplemental Responses to
25  Mattel's Revised Third Set of Interrogatories, dated November 30, 2007, at 64-70,
26  [Tayback Dec., Exh. 5].
        [11]  Bryant Depo. Tr. at 286:25-287:5, [Tayback Dec., Exh. 3].
27      [12]  Tonnu Depo. Tr. at 301:2-17, [Tayback Dec., Exh. 4].
28

1   Ms. Cabrera or Ms. Morales as ever having worked on Bratz and falsely claimed

2   that Ms. Salazar, who subsequently became an MGA employee, did not work on

3   Bratz until more than two years after she left Mattel.[13]

4           After these facts came to light, two Mattel representatives, one from

5   Human Resources and another from Security, interviewed Ms. Cabrera and

6   Ms. Morales to determine whether Marlow's allegations were true.  Ms. Cabrera

7   admitted to having worked on more than *70* Bratz doll products while a Mattel

8   employee; Ms. Morales to working on *50*.[14]  Both admitted knowing this was

9   wrong.[15]  Ms. Cabrera and Ms. Morales continued to simultaneously work for

10   Mattel and on Bratz even after learning about the present litigation involving Carter

11   Bryant's work with MGA while he was employed by Mattel.[16]  Perhaps most

12   troubling, Marlow concealed the employment of Ms. Cabrera and Ms. Morales by

13   paying them in false names using fake social security numbers.[17]  Tellingly, Marlow

14   did not disclose her fraudulent payment scheme at her deposition.

15           During her recent interview with Mattel, Ms. Cabrera provided Mattel

16   with time sheets and payment records for her work on Bratz while a Mattel

17   employee.[18]  These receipts show Ms. Cabrera received payments in excess of

18   $100,000 for her work on Bratz.[19]  During her interview, Ms. Cabrera also produced

19

---

20   [13]  MGA's Supplemental Responses to Mattel's Revised Third Set of

21   Interrogatories at 64-70, [Tayback Dec., Exh. 5].

  [14]  Transcript of the interview of Ana Cabrera, dated January 2, 2008 ("Cabrera

22   Tr. Vol. I"), [Tayback Dec., Exh. 6]; transcript of the interview of Beatriz Morales,

23   dated January 14, 2008 ("Morales Tr."), [Tayback Dec., Exh. 7].

  [15]  Cabrera Tr. Vol. I at 117:10-118:8, Tayback Dec., Exh. 6; Morales Tr. at

24   24:14-25:14, 27:11-17,  [Tayback Dec., Exh. 7].

25   [16]  Cabrera Tr. Vol. I at 39:25-40:20, 46:3-22, [Tayback Dec., Exh. 6].

  [17]  Cabrera Tr. Vol. I at 118:3-119:23, [Tayback Dec., Exh. 6]; Morales Tr. at

26   115:2-20, [Tayback Dec., Exh. 7].

27   [18]  Cabrera Tr. Vol. II, 2:11-17, [Tayback Dec., Exh. 6].

  [19]  Cabrera Tr. Vol. II, 2:11-17, 27:6 - 30:2, [Tayback Dec., Exh. 6].

28

1  boxes of materials and documents relating to her work on Bratz doll fashions.[20]

2  Among these items Ms. Cabrera provided was a bag of torn-up documents that

3  appears to include Bratz drawings done by Carter Bryant.[21]  Cabrera stated that the

4  materials were left by Ms. Marlow.[22]  Consequently, it appears that in addition to

5  concealing these witnesses employment through fraudulent records, Marlow

6  attempted to conceal relevant documents by tearing them up and leaving them in the

7  possession of Ms. Cabrera.[23]

8  ## B.  Margaret Hatch-Leahy

9       Margaret Hatch-Leahy is a doll sculptor and was a Mattel employee

10  until September 2000.[24]  While she was employed by Mattel, Bryant solicited

11  Ms. Hatch-Leahy to sculpt the Bratz dolls.[25]  He also introduced her to MGA, which

12  became her employer. [26]  Ms. Hatch-Leahy created the first Bratz sculpt and,

13  according to recently obtained testimony of Ms. Garcia, was the sole person to work

14

---

15    [20]  Cabrera Tr. Vol. I at 59:3-23, [Tayback Dec., Exh. 6].

16    [21]  Cabrera Tr. Vol. I at 109:16-110:25, [Tayback Dec., Exh. 6].

17    [22]  Cabrera Tr. Vol. I at 109:9-110:3, [Tayback Dec., Exh. 6].

  [23]  As this Court is aware, the history of this case is replete with evidence of

18  spoliation by both defendants and witnesses affiliated with them. For example,

19  Carter Bryant installed a software program called "Evidence Eliminator" on his
computers in 2002, and used the program to permanently destroy data so as to make

20  it unrecoverable by even the most rigorous forensic examination. He used this

21  program, causing the overwriting of over 9400 file and folder names and whatever
remnants of the data they once contained, three months after this lawsuit was filed,

22  and just two days before his computer was imaged by his attorneys in July 2004.

23  See Summary of Findings of Forensic Analysis Report 1 of Mark J. Menz, dated
February 10, 2008, at 1, [Tayback Dec., Exh. 8]. As another example, Isaac Larian

24  ordered an MGA executive to white out Mattel fax headers from Carter Bryant's

25  contract with MGA. Tr. of Victoria O'Connor Depo. at 18:13-18, [Tayback Dec.,
Exh. 9.]

26    [24]  Ms. Hatch-Leahy's Application for Employment [Tayback Dec. Exh. 10].

27    [25]  Bryant Depo. at 70:24-71:13. [Tayback Dec. Exh. 3]
  [26]  Id.

28

1  on the first Bratz sculptures in the key time-period of 2000.[27]  She also worked on

2  the first Bratz samples exhibited at the Hong Kong Toy Fair in January 2001 and the

3  New York Toy Fair in February 2001.[28]

4        Mattel was also forced to bring an *ex parte* application to compel

5  Ms. Hatch-Leahy deposition, which finally occurred on December 12, 2007.  Her

6  deposition testimony ultimately revealed that she concealed evidence during the

7  discovery process.  Specifically, Ms. Hatch-Leahy produced a redacted day planner

8  for the important 2000 time period with numerous redactions.[29]  Mid-way through

9  her deposition, Ms. Hatch-Leahy's counsel -- Larry McFarland (a long-standing

10  outside MGA lawyer who also represents Ms. Cloonan, Ms. Marlow and several

11  other witnesses) -- finally produced a version of the day planner that showed the

12  redacted entries contained highly relevant information regarding Mattel and Bratz.

13  For example, the redactions concealed Ms. Hatch-Leahy's conversations with Mattel

14  employees at the time she was secretly working on Bratz, as well as references to

15  "Angel," Bryant's and MGA's code name for Bratz.[30]  In addition, Ms. Hatch-Leahy

16  admitted for the first time at her deposition that, like Bryant, she had worked for

17  Mattel's competitors while working for Mattel, in knowing violation of her

18  employment agreements.[31]

19      **C.**   **Discovery Protocol re Computer Searches**

20        Prior to Ms. Hatch-Leahy's deposition, Mattel entered into a computer

21  document review "protocol" for the search of her (and several other witnesses')

22

23

24  [27]  Garcia Depo., at 255:1-17; 629:6-18, [Tayback Dec., Exh. 2].

25  [28]  Id. at 481:20-482:1; 489:5-11. [Tayback Dec., Exh. 2].

    [29]  Redacted planner produced by Hatch-Leahy [Tayback Dec., Exh. 11].

26  [30]  Second redacted planner produced by Hatch-Leahy [Tayback Dec., Exh. 12].

27  [31]  Deposition Tr. of Margaret Hatch-Leahy, dated December 12, 2007 ("Hatch-Leahy Depo."), at 180:1-181:18. [Tayback Dec. Exh. 13].

28

1 computer hard drives. The protocol was never applied to Ms. Marlow's computer
2 hard drives.

3          The protocol was an agreement by Mattel that "initial" searches of the
4 computer hard drives could be done by "keyword searches." The protocol, however,
5 *specifically allowed* Mattel to seek further discovery into the original data and drives
6 for analysis. It stated: "If there is any issue or question regarding the authenticity,
7 correctness, integrity or completeness of any matter, including without limitation to
8 any document or date from the computers, this protocol does not foreclose Mattel
9 from seeking production and inspection of any matter, including without limitation
10 the original data, drives or documents."[32]

11          The witnesses' later deposition testimony revealed the limits of the
12 keyword searches to identify relevant, responsive evidence. For example, the
13 keyword searches did not capture "graphical" files. Indeed, after Ms. Hatch-Leahy
14 admitted that sculpting of the Bratz dolls was her primary task, it became apparent
15 that additional discovery would have to be conducted to ascertain what relevant
16 documents existed on Ms. Hatch-Leahy's computer. Similarly, the search terms
17 themselves did not include the names of co-conspirators Pedro Salazar, Maria
18 Salazar, Ana Isabela Cabrera, and Beatriz Morales because their secret work on
19 Bratz while employees had not been revealed until Marlow's deposition on
20 December 28, 2007.

21          Finally, the keyword searches could not prove the absence of
22 documents on the computer hard drives that witnesses testified at deposition should
23 have been located on their respective hard drives but which were not produced. For
24 example, documents deleted may often be recovered by forensic examination unless
25 (as is the case with Bryant himself) a data destruction program was used. Only a

26 _____
27 [32] Signed protocol letter to Larry McFarland, dated September 13, 2000
      [Tayback Dec., Exh. 14 ].
28

                                    -8-

1  forensic computer examination of the hard drives can determine whether such
2  documents are present or were deleted and can be recovered.

3  Subsequently, in light of the foregoing, Mattel sought an agreement
4  from counsel for Ms. Hatch-Leahy to conduct additional searches.[33]  Mr. McFarland
5  refused.[34]

6  As noted above, the protocol was never applied to Ms. Marlow.  Thus,
7  there is no record of what, if anything she or her lawyer did to actually search her
8  computer for responsive documents, except her bare statement at deposition that she
9  "searched for" and produced all responsive documents.[35]  Furthermore,
10  Ms. Marlow's lawyer has never confirmed whether he took any measures to ensure
11  that she produced all responsive documents.

12

13  **D.  Mattel's Motion and the April 11, 2008 Order**

14  On January 23, 2008, Mattel moved *ex parte* to this Court to extend the
15  expert witness discovery deadline and to compel the production of the witnesses'
16  computer hard drives for forensic examination by an expert.  In particular, Mattel
17  sought the right to examine the drives for documents related to the newly identified
18  co-conspirators of Bryant, graphical files not locatable by keyword searches, and
19  data that may have been deleted manually (with or without the use of an electronic
20  data destruction software program, such as the one used by Bryant).[36]  The Court

21

22

23  [33]  December 20,2007 - January 17, 2008 Correspondence [Tayback Dec.
24  Exhibits 15, 16, 17, 18, 19, 20, 21]
    [34]  Email to Larry McFarland, dated January 9, 2007 [Tayback Dec. ¶ 21,
25  Exh. 20.
26  [35]  See Declaration of Larry McFarland in Support of Opposition to Mattel's Ex
27  Parte Application, para. 8 and Exh. 8; Opposition Brief ("Opp.") at 15:11-13.
    [36]  See fn. 21, supra
28

1 converted the ex parte application into a motion to compel, and referred the matter
2 to the Discovery Master.

3       In Opposition, Marlow and Hatch-Leahy argued that the motion was
4 procedurally improper in a number of respects and, ultimately, that they should not
5 have to produce relevant documents because Mattel had not shown improper
6 conduct sufficient to justify production and that they had privacy interests that
7 would be impinged by production.[37]

8       On April 11, 2008, the Discovery Master denied Mattel's motion with
9 respect to Marlow on the following grounds: (1) "Ms. Marlow testified. . . .  that she
10 searched for and turned over all of her Bratz-related documents to her counsel;"
11 (2) "that she has never thrown away, shredded or destroyed any documents related
12 to Bratz;" (3) "[i]n light of Ms. Marlow's unequivocal testimony and substantial
13 document production, Mattel's concerns over the completeness of the production
14 and potential document destruction are unfounded;" and (4) "Mattel's attempt to
15 justify production of Ms. Marlow's computers based upon the identification these
16 individuals [Pedro Salazar, Maria Salazar, Ana Isabela Cabrera, and Beatriz
17 Morales] at her deposition is without merit."[38]  In light of these findings, the
18 Discovery Master found that the Ms. Marlow's privacy interests outweighed Mattel's
19 need for the evidence.[39]

20       The Discovery Master also denied Mattel's motion with respect to
21 Hatch-Leahy on the following grounds: (1)". . . .Ms. Hatch-Leahy's computer was
22 subject to the parties negotiated protocol, and none of Mattel's proffered justification
23

24     [37]  See Opp. at 1-4.
25     [38]  Discovery Master's Order Granting in Part and Denying in Part Mattel's
Motion to Compel Production of Electronic Media from Third Parties Elise
26 Cloonan, Margaret Hatch-Leahy and Veronica Marlow, ("Discovery Master's
Order"), at 6 [Tayback Dec., Exh. 22].
27     [39]  Id. at 6-7.
28

-10-

1   for another search has merit;"[40] there was (2) "no evidence to suggest that the

2   independent expert failed to apply or was not able to apply the key word searches to

3   graphical computer files;"[41] and (3) Mattel had not provided any citation to

4   Ms. Hatch-Leahy's deposition transcript to support the assertion that her deposition

5   testimony revealed  information that should have been found on her computer hard

6   drive but that was not found under the protocol.[42]  In light of these findings, the

7   Discovery Master found that the Ms. Marlow's privacy interests outweighed Mattel's

8   need for the evidence.[43]

9

10                              **Argument**

11         By the Stipulation and Order appointing the Discovery Master, the

12   Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings

13   should be overruled if they are "clearly erroneous" or "contrary to law."  <u>Fed. R.</u>

14   <u>Civ. Proc.</u> 72(a).

15

16   **I.    THE BASIS OF THE DISCOVERY MASTER'S ORDER DENYING**

17         **MATTEL DISCOVERY AS TO MS. HATCH-LEAHY'S COMPUTER**

18         **HARD DRIVE IS CLEARLY ERRONEOUS**

19         The obligation to search for and produce discovery in litigation extends

20   to an affirmative search of available electronic systems for relevant information.

21   <u>Peskoff v. Faber</u>, 244 F.R.D. 54, 63 (D.D.C. 2007); <u>Treppel v. Biovail Corp.</u>, 233

22   F.R.D. 363, 374 (S.D.N.Y. 2006).  A request for "documents" under <u>Rule</u> 34

23   operates as a request for documents stored in electronic form.  <u>See</u> <u>Playboy</u>

24

---

25   [40]  <u>Id</u>. at 4-5.

26   [41]  <u>Id</u>. at 5

27   [42]  <u>Id</u>. at 5.

28   [43]  <u>Id</u>. at 5-6.

1   Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); Fed. R. Civ.

2   P. 34, adv. comm. note.  Parties may also obtain computer hard drives for testing

3   pursuant to a Rule 34 request.  See, e.g., Superior Consultant Co. v. Bailey, 2000

4   WL 1279161, at *13 (E.D. Mich. Aug. 22, 2000) (ordering defendants to "create and

5   produce to defense counsel a backup file of defendant Bailey's laptop computer, and

6   a backup file of any personal computer hard-drive to which defendant Bailey has

7   had access at any time").

8           Mattel's motion sought Ms. Hatch-Leahy's computer on that grounds

9   that the previous search of her hard drive was facially and indisputably inadequate.

10  It was never subject to any search other than the keyword search.  This search thus

11  failed to capture, for example, (a) graphical files, (b) deleted files and (c) any types

12  of files relating to Cabrera, Morales, Salazar or other Mattel employees who

13  defendants had previously concealed despite their work on Bratz.  Indeed, it was

14  confirmed during the meet and confer that graphical files were not searched for at

15  all.[44]

16          In essentially holding that the search of Ms. Leahy's drive was adequate

17  despite the failure to search for graphical files, the Discovery Master's Order was

18  clearly erroneous and contrary to law.  First, the Discovery Master based his

19  decision at least in part on the fact that Ms. Hatch-Leahy's "computer was subject to

20  the parties negotiated protocol, and none of Mattel's proffered justifications for

21  another search has merit."[45]  By its terms, however, the protocol *specifically allows*

22

23

24

25

---

26  [44]  Email correspondence between counsel dated January 9,2008 and January 17,

27  2008 [Tayback Dec. Exhibits 20, 21]
    [45]  Discovery Master's Order, [Tayback Dec., Exh. 22].

28

1  Mattel the opportunity to obtain original data and drives for analysis if the

2  completeness of the preliminary search, as is the case here, is in question.[46]

3        Second, the Discovery Master based his decision in part on his

4  conclusion that the keyword search was sufficient to locate "graphical computer

5  files" and other responsive information. This is plainly in error. The very nature of

6  graphical or image files is that their contents are not composed of searchable text.

7  Keyword searches capture neither such graphical files nor graphical files using file

8  names that do not contain the keywords. This has not only been a matter of record

9  in this case,[47] but courts also have recognized this self-evident proposition: "An

10 image file is not susceptible to a keyword search". <u>United States v. Triumph Capital

11 Group, Inc.</u>, 211 F.R.D. 31, 46 n. 11 (D. Conn. 2002); <u>see also id.</u> at 50 ("Keyword

12 searches are also limited because they cannot be conducted on all files, such as

13 image files that contain scanned documents or faxes."); <u>Rosa v. Commonwealth of

14 Virginia</u>, 638 S.E.2d 92, 96 (Ct. App. Va. 2006) ("any text saved in a picture file

15 would not be found simply by using a word search"). Nor do keyword searches

16 reliably uncover deleted files. "Searching deleted files and free and slack space

17 using keywords can be particularly problematic because when a file is deleted, its

18 name is altered by the FAT thereby rendering it unresponsive to a keyword search.

19 In addition, a keyword search may locate a portion of a deleted file, but not other

20 portions of the file unless they also contain keywords." <u>Triumph Capital</u>, 211

21 F.R.D. at 50.

22       Thus, for example, a file containing a drawing, photograph or scanned

23 image of Bratz, made using a graphical drawing or image program, would not have

24

25   [46]  Signed protocol letter to Larry McFarland, dated September 13, 2000

26 [Tayback Dec., Exh. 14 ].

27   [47]  <u>E.g.</u>, Dec. of Sergio Hernandez, ¶ 5 (noting that content of graphical files
   "cannot be searched by keywords.") [Tayback Dec., Exh. 25].

28

1  any searchable text associated with the file aside from the file name. Likewise, the
2  keyword searches were not sufficient to reliably locate relevant deleted files. As a
3  result, whether additional relevant evidence is still located on or has been removed
4  from the witnesses' hard drives cannot be determined without obtaining the hard
5  drives and searching for the graphical files. The Discovery Master's decision to
6  deny Mattel's motion based on his finding regarding the purported sufficiency of the
7  protocol search to obtain graphical files is clearly erroneous and contrary to law.

8         The keyword search did not discharge Ms. Leahy's obligations to make
9  a complete, good faith search of her computer hard drive for an additional reason.
10  The keywords themselves turned out to be incomplete because of defendants and
11  Ms. Marlow's concealment of evidence. The protocol search did not include as
12  keywords the names of Pedro Salazar, Maria Salazar, Ana Isabela Cabrera, and
13  Beatriz Morales because Mattel did not learn of their roles until December 28, 2007.
14  That alone is itself sufficient justification to--at a minimum--rerun the keyword
15  searches with their names on Ms. Hatch-Leahy's computer.

16         Given the plain language of the protocol and the deficiencies in the
17  keyword search, the Discovery Master's decision to deny Mattel's motion based on
18  his finding that Ms. Hatch-Leahy's computer was previously subject to a keyword
19  examination is clearly erroneous.

20         The Discovery Master's final basis for denying Mattel's Motion was his
21  conclusion that Mattel had not provided any citation to Ms. Hatch-Leahy's
22  deposition transcript to support the assertion that her deposition testimony revealed
23  information that should have been found on her computer hard drive and that was
24  not found under the protocol.[48] This overlooks, however, that a basis for Mattel's
25  motion was the failure to conduct a reasonable search for files that related to Bratz,

26

27  [48]  Discovery Master's Order, at 6 [Tayback Dec., Exh. 22].

28

1  including graphical files. Furthermore, the deposition evidence is that which was

2  undisputed by Hatch-Leahy herself. She sculpted the original Bratz doll for Bryant:

3  her work was graphical, rather than textual.[49] No such computerized graphics or

4  graphics files were produced because none were even searched for.

5

6  **II.  THE BASIS OF THE DISCOVERY MASTER'S ORDER DENYING**

7  **MATTEL DISCOVERY AS TO MS. MARLOW'S COMPUTER HARD**

8  **DRIVE IS CLEARLY ERRONEOUS**

9  Mattel's motion to compel relevant, discoverable evidence from

10  Ms. Marlow's hard drives should have been granted. The Discovery Master

11  concluded that her computer drives had been properly searched based on

12  Ms. Marlow's conclusory, self-serving statement at deposition that she "turned over

13  all of her Bratz-related documents to her counsel, and that she has never thrown

14  away, shredded or destroyed any documents related to Bratz".[50] This was clearly

15  erroneous.

16  At the outset, it is undisputed that Ms. Marlow's computers were never

17  subject to even the keyword protocol. Moreover, she *never* said in her testimony

18  that she in fact looked for documents *on any of her computers*. Nor has her counsel

19  or anyone else. Her failure to submit a declaration in opposition to Mattel's motion

20  below stating that she searched her computer is telling. Moreover, whatever search

21  she made certainly did not include a search for any deleted material that might be

22  recoverable from her computer by forensic examination. Indeed, it is undisputed

23  that she did *not* produce any computer documents regarding her payments to Pedro

24  Salazar, Maria Salazar, Ana Isabela Cabrera, and Beatriz Morales -- under whatever

25  phony names and ID numbers she paid them -- for their work on Bratz.

26

27  [49] See fns. 25-32, supra.

28  [50] Discovery Master's Order, at 5.

07209/2483459.2

-15-

1    Reliance on Ms. Marlow's conclusory and inapposite testimony was
2  particularly erroneous for additional reasons. Like Ms. Leahy, Ms. Marlow is a key
3  witness who is closely affiliated with MGA and Bryant, and Ms. Marlow has
4  received millions of dollars from Bryant and MGA as an alleged finder's fee. She is
5  an interested witness with powerful incentives to withhold the facts. All of this is
6  compounded by her efforts to avoid deposition, her direct involvement with a
7  fraudulent scheme to pay Mattel employees to assist her and Bryant on Bratz
8  through the use of false names and social security numbers and her concealment
9  even at deposition of the scope of that scheme. The Discovery Master's Order as to
10  Ms. Marlow is clearly erroneous and must be overruled.

11

12  **III.  MATTEL'S INTEREST IN RELEVANT DISCOVERY OUTWEIGHS**
13  **ANY CLAIMED PRIVACY INTEREST MS. MARLOW AND**
14  **MS. HATCH-LEAHY HAVE IN THEIR COMPUTER HARD DRIVES**

15    The Discovery Master's Order erroneously concluded that
16  Ms. Marlow's and Ms. Hatch-Leahy's privacy interests outweigh Mattel's discovery
17  rights. As shown above, the predicates for the Discovery Master's rulings were
18  incorrect. Moreover, neither witnesses' privacy rights--which have only been
19  vaguely asserted in any event--outweigh Matte's need for the evidence sought.

20    This Court consistently allows discovery over non-party privacy
21  objections where there is a protective order and a need for the discovery. In general,
22  federal law does not recognize a right to privacy that entitles a party to withhold
23  documents from discovery. See Humphreys v. Regents of Univ. of Cal., 2006 WL
24  335275, *1 (N.D. Cal. 2006) (under Federal Rule of Evidence 501, "federal law
25  determines the evidentiary privileges that apply," and "there is no federal analog to
26  the California privacy rights that [defendant] seeks to invoke"). While courts can
27  consider privacy concerns, "courts have frequently found that a party's need for
28  information may outweigh whatever privacy rights, if any, another party may have."

07209/2483459.2
-16-

1  Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998); see
2  Reyes v. Red Gold, Inc. 2006 WL 2729412, at *3 (S.D. Tex. 2006) (identity of third
3  parties is not "sufficiently private" to obstruct discovery). The "[r]esolution of a
4  privacy objection . . . requires a balancing of the need for the information sought
5  against the privacy right asserted."   Keith H. v. Long Beach Unified School
6  District, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (granting motion to compel even
7  where "plaintiff's document requests indisputably implicate significant privacy
8  rights of minors who are not parties to this litigation . . . [because] the information
9  sought *could* help support plaintiff's claim . . . [and] '[p]laintiff's need for the
10 requested [information] is great [since it] is unlikely to be available from any other
11 source than [d]efendant's files'") (quotations omitted, emphasis added). Ms. Marlow
12 and Ms. Hatch-Leahy's status as non-parties does not relieve them of their obligation
13 to produce relevant, responsive information even where a privacy interest may be
14 implicated since there is a strong protective order in place. Keith H., 228 F.R.D. at
15 657 ("'[A] carefully drafted protective order [can] minimize the impact of this
16 disclosure.'") (quotations omitted).

17         Even if Ms. Marlow and Ms. Hatch-Leahy have legitimate privacy
18 interests in their computer hard drives, these interests can be safeguarded by the
19 protective order in this case. In an analogous setting -- the enforcement of
20 protective orders -- courts require that the party seeking to shield information must
21 show the privacy interest implicated with particularity. Thus, in the context of
22 protective orders, the Ninth Circuit has held that a party must show "for each
23 particular document" that "specific prejudice or harm will result if no protective
24 order is granted." See Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130
25 (9th Cir. 2003) (internal cites omitted). And, even then, where third-party parties
26 show *specific* privacy interests (which the witnesses here have not done), this Court
27 still balances the privacy interest with the moving parties' need for discovery.
28 Accordingly, even where "indisputably ... significant privacy rights" of non-party

07209/2483459.2

-17-

1  minors are implicated, relevant discovery should be ordered. Keith H., 228 F.R.D.

2  at 657-8 (internal cites omitted).

3  Notably, neither Ms. Marlow, nor Ms. Hatch-Leahy has identified any

4  specific private information that will be unfairly disclosed through the requested

5  inspection process of their computers. In addition, Ms. Hatch-Leahy privacy

6  concerns are minimized by that fact that she *previously* produced ostensibly

7  "private" information from her computer (which was identified by key word search)

8  and that her interests were adequately protected by the existing protective order.[51]

9  There is nothing that suggests that her privacy concerns could not be similarly

10  protected again. However, without access to the computer hard drives, Mattel may

11  be unable to prove its claims for the simple reason that it has been denied access to

12  the very items it needs in order to do so.

13  Mattel is entitled to relevant, responsive evidence about the creation,

14  origin and development of Bratz. Ms. Marlow and Ms. Hatch-Leahy are key

15  witnesses. MGA identified each as "possess[ing] information relevant to the

16  conception, creation, design and development of 'Bratz.'"[52] Each has computer data

17  that contains evidence relevant to the origin, creation and development of Bratz.

18  Just as important, however, is what evidence is *no longer* on those drives. It was

19  clearly erroneous and contrary to law for the Discovery Master to rule that Mattel's

20  rights to and need for such directly relevant matters was outweighed by these

21  individual's alleged privacy interests.

22

23

24

25

26

---

07209/2483459.2

[51]  Letter to Michael Zeller, dated October 26, 2007 [Tayback Dec., Exh. 24].

[52]  MGA's Rule 26(a) Disclosures ¶¶ 4-6. [Tayback Dec. Exh. 23].

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court overrule those portions of the Discovery Master's April 11, 2008 Order Denying in Part Mattel's Motion to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow and further requests that the Motion to Compel be granted in its entirety.

DATED:  April 25, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _Michael T. Zeller_
Michael Zeller
Attorneys for Mattel, Inc.