QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006]**<br><br>**DECLARATION OF JON D. COREY IN SUPPORT OF MATTEL, INC. 'S OPPOSITION TO MGA ENTERTAINMENT INC. AND MGAE DE MEXICO, S.R.L. DE C.V.'S MOTION FOR PROTECTIVE ORDER FROM MATTEL'S FOURTH NOTICE OF DEPOSITION OF MGA AND NOTICE OF DEPOSITION OF MGA MEXICO PURSUANT TO FEDERAL OF CIVIL PROCEDURE 30(b)(6)**<br><br>Date: TBA<br>Time: TBA<br>Place: TBA<br><br>Phase 1:<br>Discovery Cut-Off: January 28, 2008<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

1            I, Jon D. Corey, declare as follows:

2         1.       I am a member of the bar of the State of California and a partner at

3   Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.

4   ("Mattel"). I make this declaration in support of Mattel's Opposition to MGA

5   Entertainment Inc. and MGAE De Mexico, S.R.L. de C.V.'s Motion For Protective

6   Order From Mattel's Fourth Notice of Deposition of MGA and Notice of Deposition

7   of MGA Mexico Pursuant To Federal of Civil Procedure 30(b)(6). I make this

8   declaration of personal, firsthand knowledge and, if called and sworn as a witness, I

9   could and would testify competently thereto.

10         2.       Attached as Exhibit 1 is a true and correct copy of Mattel's Motion for

11   Leave to Take Additional Discovery and Objections to Discovery Master Order of

12   September 28, 2007, dated November 19, 2007, with Exhibits A and B.

13         3.       Attached as Exhibit 2 is a true and correct copy of MGA's Opposition

14   to Mattel's Motion for Additional Discovery, dated December 24, 2007.

15         4.       Attached as Exhibit 3 is a true and correct copy of Judge Larson's

16   January 7, 2008 Civil Minutes. Notwithstanding Judge Larson's Order allowing

17   Mattel to depose MGA and MGA Mexico, and its clear direction that the

18   depositions go forward in January (or February pursuant to a Court approved

19   stipulation), MGA failed to designate or produce any witnesses for these

20   depositions.

21         5.       Attached as Exhibit 4 is a true and correct copy of the Civil Minutes-

22   General, dated February 4, 2008.

23         6.       Attached as Exhibit 5 is a true and correct copy of excerpts from the

24   February 11, 2008 Hearing Transcript.

25         7.       Attached as Exhibit 6 is a true and correct copy MGA's Notice of

26   Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5,

27   2007.

28

8.     Attached as Exhibit 7 is a true and correct copy of Mattel, Inc.'s Revised Third Set of Interrogatories, dated September 21, 2007.

9.     Attached as Exhibit 8 is a true and correct copy of MGA's Reply Memorandum In Support of Its Motion to Compel Mattel to Produce Witnesses Pursuant to Notice of Deposition Under Rule 30(b)(6), Or, In The Alternative, For Leave To Serve Such Notice, dated January 17, 2008.

## Mattel's Meet and Confer Efforts

10.     Notwithstanding Judge Larson's January 7, 2008 Order allowing Mattel to depose MGA and MGA Mexico, MGA failed to designate or produce any witnesses for these depositions.

11.     In January, 2008, counsel for Mattel and MGA attempted to meet and confer regarding the depositions of MGA and MGA Mexico.  MGA did not raise any objection to the scope of the deposition topics in the meet and confer.

12.     Pursuant to the Discovery Master's ruling on February 11, 2008, the parties met and conferred on February 20 and 21, 2008.  Attached as Exhibit 9 is a true and correct copy of a letter from me to Raoul Kennedy, dated February 26, 2008, documenting this meeting.

13.     The parties continued to meet and confer regarding unresolved deposition Topics.  Attached as Exhibit 10 is a true and correct copy of the Joint Report to Discovery Master Regarding Pending Discovery Motions, dated March 28, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 25, 2008, at Los Angeles, California.

Jon D. Corey

07209/2483494.1

-3-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THIS PAGE INTENTIONALLY LEFT BLANK

07209/2483494.1

# EXHIBIT 1

**CONFORMED**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,                Consolidated with
                                          Case No. CV 04-09059
14      vs.                               Case No. CV 05-02727

15  MATTEL, INC., a Delaware             Hon. Stephen G. Larson
    corporation,
16                                        NOTICE OF MOTION AND MOTION
               Defendant.                 OF MATTEL, INC. FOR LEAVE TO
17                                        TAKE ADDITIONAL DISCOVERY
                                          AND OBJECTIONS TO DISCOVERY
18  AND CONSOLIDATED ACTIONS             MASTER ORDER OF SEPTEMBER
                                          28, 2007; AND
19
                                          MEMORANDUM OF POINTS AND
20                                        AUTHORITIES

21                                        [Declaration of B. Dylan Proctor filed
                                          concurrently]
22
                                          Hearing Date:  January 7, 2008
23                                        Time:          10:00 a.m.
                                          Courtroom:     1
24
                                          Phase 1:
25                                        Discovery Cut-off:    January 28, 2008
                                          Pre-trial Conference: May 5, 2008
26                                        Trial Date:           May 27, 2008

27

28

'209/2299353.1

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on January 7, 2008, at 10:00 a.m., or as soon

3    thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.

4    Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,

5    and hereby does, move the Court, pursuant to <u>Federal Rule of Civil Procedure</u> 26(b)

6    and the Court's February 12, 2007 Scheduling Order, for an order granting Mattel leave

7    to take additional depositions, including <u>Rule</u> 30(b)(6) depositions of defendants MGA

8    Entertainment, Inc., and MGAE de Mexico S.R.L. de C.V., beyond the current limit set

9    by the Court and to serve additional interrogatories on defendants. Pursuant to 28

10   U.S.C. § 636(b)(1), Mattel also seeks an additional 12 hours to depose Carter Bryant, in

11   addition to the seven hours already permitted by Discovery Master Infante.

12        Mattel makes this Motion on the grounds that the breadth and complexity of this

13   case warrant more than the 24 depositions and 50 interrogatories permitted by the

14   Court's Scheduling Order. Mattel further makes this Motion on the grounds that, given

15   Bryant's central role in the hundreds of products that MGA has sued upon in this case,

16   and because both the parties and third-parties have produced many millions of pages of

17   documents since Mr. Bryant's deposition in 2005, seven hours is not enough time to

18   fully depose Mr. Bryant.

19        This Motion is based on this Notice of Motion and Motion, the accompanying

20   Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed

21   concurrently herewith, the records and files of this Court, and all other matters of which

22   the Court may take judicial notice.

23

24

25

26

27

28

EXHIBIT _____ /

PAGE _____ 6

## Statement of Local Rule 7-3 Compliance

The parties met and conferred pursuant to Local Rule 7-3 on October 3, 2007, and times thereafter, but were not able to resolve this motion.

DATED: November 19, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By_____
　　Jon Corey
　　Attorneys for Mattel, Inc.

EXHIBIT _____ 1
PAGE _____ 7

07209/2299353.1

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.................................................................1

STATEMENT OF FACTS ......................................................................3

ARGUMENT ........................................................................................6

I.   THE RULES CONTEMPLATE ADDITIONAL DISCOVERY....................6

   A.   Each Category of Claims Warrants More Depositions .........................8

      1.   The Bratz Claims Require Additional Depositions .....................8

      2.   Mattel's Trade Secret and RICO Claims and MGA's Unfair Competition Claims Require Additional Depositions ...............12

   B.   Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents Is At Issue...............14

   C.   Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative Topics...................................................................15

   D.   Mattel Meets The Requirements for Additional Discovery ................15

II.  THE COURT SHOULD GRANT LEAVE WITH RESPECT TO MATTEL'S INTERROGATORIES.......................................................16

III. THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE BRYANT DEPOSITION .......................................................................20

CONCLUSION ....................................................................................25

EXHIBIT _____ 1

PAGE _____ 8

07209/2299353.1

# TABLE OF AUTHORITIES

**Page**

## Cases

Andamiro v. Konami Amusement of Am.,
   2001 WL 535667 (C.D. Cal. April 26, 2001) ................................................... 8

Bahn v. NME Hosps., Inc.,
   929 F.2d 1404 (9th Cir. 1991) ..................................................... 22

Bromgard v. Montana,
   2007 WL 1101179 (D. Mont. April 11, 2007) ............................................. 11, 18

Collaboration Prop. v. Polycom, Inc.,
   224 F.R.D. 473 (N.D. Cal. 2004) ................................................. 8

Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc.,
   2007 WL 764302  Proctor Dec., Ex. 43 ............................................. 23

Rx USA Wholesale, Inc. v. McKesson Corp.,
   2007 WL 1827335 (E.D.N.Y. June 25, 2007) ..................................... 7, 11, 19

Whittingham  v. Amherst Coll.,
   163 F.R.D. 170 (D. Mass. 1995) ..................................................... 7

## Statutes

Cal. Civ. Code § 3426.1 .......................................................................... 20

Fed. R. Civ. P. 26(b) .......................................................................... 8, 20

Fed. R. Civ. P. 30(a)(2)(A) .................................................................. 7, 20

Fed. R. Civ. P. 33 .......................................................................... 7, 8, 20

Local Rule 7-3 .................................................................................... 3

Fed. R. Civ. P. 30(b)(6) ......................................................... 9, 14, 16, 17

Fed. R. Civ. P. 53(e) ........................................................................ 21

EXHIBIT _____ 1

PAGE _____ 9

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

19/2299353.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

In its Scheduling Order, the Court limited each side to 50 interrogatories and 24 fact depositions. The Court recognized, however, that the case's complexity could require additional depositions or interrogatories and invited motions for additional discovery, if necessary: "I don't want to say they are soft limits [on the number of depositions], but they are limits which the Court would certainly understand or would invite counsel to submit a motion to expand if there's reason to. But I just want to have some parameters placed on this at the outset." Likewise, with respect to the interrogatory limit, the Court stated: "[L]et's try and work within the confines of the 50 interrogatories, and if you need more, again, the Court is going to be forthcoming, if there's a need for it."[1] Mattel respectfully submits that time has come.

Under the Federal Rules, leave to take additional discovery "shall be granted" to the extent consistent with the principles set forth in Rule 26(b)(2). Fed. R. Civ. P. 30(a)(2)(A) & 33(a). The additional discovery Mattel seeks is appropriate under that framework. It is not duplicative of prior discovery; Mattel has not had an adequate opportunity to take discovery on these matters, and the substantial benefits of discovery on these central issues outweigh any burden. MGA has identified many dozens of witnesses with knowledge of the parties' claims or defenses. Mattel has sued MGA for inducing several Mattel employees to misappropriate many thousands of pages of documents containing Mattel trade secrets over an extended period of time. For its part, MGA has accused over 400 Mattel products of infringing the trade dress of more than 200 MGA products. As MGA has proclaimed, it will be seeking "billions" of dollars from Mattel on its claims alone. Additional depositions are warranted given the breadth and complexity of the claims and defenses in this case and the stakes involved.

---

[1]   February 12, 2007 Scheduling Conference Tr. at 22:12-15 and 24:5-7, Exhibit 7 to the Declaration of B. Dylan Proctor, dated November 19, 2007 ("Proctor Dec.").

**EXHIBIT** _____ /

_____ /0

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2299353.1

1    To date, Mattel has taken 18 depositions, which leaves Mattel with six
2  remaining. Mattel has been able to take only one deposition on its counterclaims or
3  defenses to MGA's unfair competition claims, and as of yet, Mattel has been unable to
4  depose any of the individuals actively involved in the theft of Mattel's trade secrets.
5  The specific individuals who Mattel seeks to depose are identified below, along with
6  the justification for each. In addition, Mattel cannot obtain without the Court's leave
7  the corporate testimony of MGA or MGAE de Mexico on the facts related to either
8  MGA's unfair competition claims or Mattel's counterclaims. Mattel seeks leave to
9  serve the First Notice of Deposition of MGAE de Mexico, attached as Exhibit A, and
10  an additional Notice of Deposition of MGA, attached as Exhibit B, on those subjects.

11    Mattel also seeks leave to serve defendants with additional interrogatories.
12  Mattel has served interrogatories seeking MGA's contentions with respect to the
13  creation of Bratz and MGA's unfair competition claims. Mattel's proposed
14  interrogatories, which are attached as Exhibit C, seek information related to Mattel's
15  counterclaims and to MGA's claims against Mattel for alleged unfair competition, as
16  well as certain of defendants' defenses.[2]

17    Finally, Mattel seeks additional time to depose Mr. Bryant. Although Bryant was
18  deposed in 2004, since that time MGA and Bryant have produced millions of pages of
19  documents that they had long withheld until compelled by the Court, and the scope of
20  the claims in these consolidated cases has increased dramatically. Only after Bryant's
21  deposition occurred, MGA asserted its broad unfair competition claims against Mattel.
22  Only after Bryant's deposition occurred, Mattel asserted its counterclaims, including its
23  copyright infringement and RICO counterclaims, against Bryant and other defendants.
24  And, despite the fact that Mattel sought documents relating to the origins of Bratz

---

[2]   Because defendants refuse to answer Mattel's previously served interrogatories based
on spurious claims that they exceed the 50 limit, Mattel seeks leave as to them to avoid
defendants' further quarreling over the counting of interrogatories and thereby obtain
obvious information about defendants' own contentions and other critical subjects.

:09/2299353.1

EXHIBIT ____/____

1  before Bryant's initial deposition, both MGA and Bryant were, unbeknownst to Mattel,

2  withholding such documents at the time of the deposition – this was discovered only

3  after multiple motions to compel brought by Mattel were granted.   Judge Infante

4  recognized that Bryant is the "most knowledge witness with respect to virtually all of

5  the factual issues" and claims in these matters.[3] Judge Infante nevertheless gave Mattel

6  only seven additional hours for Bryant's deposition (on top of two hours previously

7  granted due to Bryant's and his counsel's improper conduct during the prior deposition).

8  That simply is not enough to depose Bryant on MGA's claims, Mattel's counterclaims

9  and all the newly produced evidence that post-dates the 2004 deposition.   Mattel

10  therefore requests that this Court grant additional time of another 12 hours for a total of

11  21 additional hours to question Bryant.

12              **Statement of Facts**

13      **Mattel's Original Complaint.** Mattel filed its initial Complaint on April 27, 2004,

14  alleging that Carter Bryant breached his duties to Mattel by working with and assisting

15  a Mattel competitor, MGA, while he was employed by Mattel.[4]  While at Mattel,

16  Bryant worked on the "Bratz" project.[5]  On December 7, 2004, MGA filed an answer in

17  intervention claiming that the action put at issue MGA's rights to Bratz.[6]

18      **MGA's Complaint.**  MGA filed a complaint against Mattel on April 13, 2005

19  alleging that Mattel engaged in "serial copycatting" of the Bratz dolls.[7] Mattel's action

20  and MGA's action were later consolidated along with a declaratory relief action filed by

21  Bryant, which was later dismissed.[8]

22      **Mattel's Counterclaims.**  On November 19, 2006, Mattel moved for leave to

23  amend its complaint.  The Court granted Mattel's motion, allowing Mattel's new claims

24  _____
[3]  9/27/07 Hearing Tr. at 24:24-25:2, Proctor Dec., Ex 85.

25  [4]  Proctor Dec., Ex. 1.

   [5]  Id. ¶¶ 12-13.

26  [6]  Proctor Dec., Ex. 2.

27  [7]  Proctor Dec., Ex. 3.

28  [8]  Minute Order Re Consolidation (June 19, 2006), Proctor Dec., Ex. 4.

209/2299353.1

                                    -3-

EXHIBIT ___/___

/2

1    to be alleged as counterclaims to MGA's complaint.[9] Mattel filed its Second Amended

2    Answer and Counterclaims on July 12, 2007.  Mattel's counterclaims against MGA

3    Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L.

4    de C.V. include claims for copyright infringement, violation of RICO, conspiracy to

5    violate RICO, misappropriation of trade secrets, intentional interference with contract,

6    aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of

7    loyalty, conversion and unfair competition.[10]  MGA's current amended answer to

8    Mattel's counterclaims asserts twenty-two affirmative defenses.[11]

9        Scheduling Conference.  At the February 12, 2007, and as reflected in a Minute

10   Order, the Court limited depositions to 24 per side and interrogatories to 50 per side.[12]

11   The Court recognized that the parties might need more depositions or interrogatories:

12           I don't want to say they are soft limits [on the number of
             depositions], but they are limits which the Court would
13           certainly understand or would invite counsel to submit a
             motion to expand if there's reason to. But I just want to have
14           some parameters placed on this at the outset.
15
                . . .
16           [L]et's try and work within the confines of the 50
             interrogatories, and if you need more, again, the Court is
17           going to be forthcoming, if there's a need for it.[13]
18

19       Mattel's Interrogatories.  To date, Mattel has propounded 50 interrogatories.[14]  In

20   June 2007, Mattel propounded 19 interrogatories on MGA, MGA Hong Kong, Larian

21

22   [9]   1/11/07 Order Re Mattel's Motion for Leave to Amend, Proctor Dec., Ex. 5.
     [10]  See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
23   dated July 12, 2007 ("Mattel's Counterclaims"), Proctor Dec., Ex. 16.
     [11]  See MGA's Amended Answer and Affirmative Defenses ("MGA's Amended
24   Answer"), Proctor Dec., Ex. 46.  MGA had filed its original answer on August 13, 2007.
     Proctor Dec., Ex. 17.  After meeting and conferring, MGA acknowledged deficiencies in
25   its defenses and served its amended answer on September 19, 2007.
     [12]  2/12/07 Scheduling Order, at 1, Proctor Dec., Ex. 6.
26   [13]  2/12/07 Scheduling Conference Tr., at 22:12-15 and 24:5-7, Proctor Dec., Ex. 7.
27   [14]  See Proctor Dec., Exs. 8-12, 15, 64-68.
28

f209/2299353.1

EXHIBIT ____/____

____/3____

1   and Bryant, seeking information about Bratz development, their affirmative defenses to
2   Mattel's claims, defendants' contentions regarding unfair competition claims and
3   MGA's benefit from Bratz.[15]  Defendants claimed they exceeded the interrogatory limit,
4   and on September 5, 2007, Judge Infante ruled that identical interrogatories served on
5   multiple parties, as well as interrogatories asking defendants to "state all facts"
6   supporting a particular contention, "identify all persons with knowledge of such facts,"
7   and "identify all documents" relevant to such facts, would each count as only one
8   interrogatory.[16]  However, an interrogatory asking a party to state facts supporting
9   different affirmative defenses would count as a different interrogatory per defense.[17]  In
10  accordance with that ruling, on September 21, 2007, Mattel served revised sets of
11  fifteen interrogatories.[18]  Defendants nevertheless still refuse to substantively answer
12  these interrogatories, including because they allegedly exceed the number permitted.[19]

13          Mattel Depositions.  To date, Mattel has taken 18 depositions.  Mattel has had
14  good cause for each of those depositions.  They include:

15      • Carter Bryant – defendant

16      • Victoria O'Connor – former MGA executive with knowledge of MGA's and Larian's spoliation of evidence
17

18      • Jaqueline Prince – witness allegedly supporting Bryant's Bratz creation story

19      • Isaac Larian – defendant

20      • Steve Linker – third party with knowledge of work on Bratz before Bryant left Mattel
21

22      • Paula Garcia – Bratz project manager from the start who worked on Bratz with Bryant before he left Mattel

23      • Brooke Gilbert – Bryant's niece with knowledge of Bryant's computer on which Bryant installed and used "Evidence Eliminator"
24

25  [15]  Proctor Dec., Ex. 13.
26  [16]  9/5/07 Order Re Mattel's Interrogatories, at 5-6, Proctor Dec., Ex. 14.
    [17]  See id. at 7.
27  [18]  Proctor Dec., Ex. 45.
    [19]  See Proctor Dec., Exs. 73-74.
28

**EXHIBIT** _____1_____

**PAGE** _____14_____

07209/2299353.1

- Kerri Brode – MGA employee with knowledge of Bryant's work on Bratz while at Mattel

- Dave Malacrida – MGA public relations employee with knowledge regarding early Bratz design and marketing

- Janet Bryant – Bryant's mother and relied upon by Bryant to establish alleged date of Bratz creation

- Thomas Bryant – Bryant's father and relied upon by Bryant to establish alleged date of Bratz creation

- Sarah Chui – worked on Bratz in 2000 for MGA Hong Kong

- Richard Irmen – Bryant's partner and relied upon by Bryant to establish alleged date of Bratz creation

- Maureen Tkacik – *Wall Street Journal* reporter to whom Larian stated, in an interview, that he chose Mr. Bryant's idea for the Bratz over several others after holding "a sort of fashion-doll design contest in late 1999" -- a time during which Bryant was employed by Mattel and months before MGA and Bryant now say they first were introduced

- MGA Entertainment, Inc. – defendant

- MGA Entertainment (HK) Limited – defendant

- Schyler Bacon – MGA employee who recruited Mattel employees who stole trade secrets

- Denise O'Neal – *Chicago Sun Times* reporter to whom Larian made prior inconsistent statements, including that MGA's creative team decided to use the "Brats" name but to change the "s" to a "z"

## Argument

### I. THE RULES CONTEMPLATE ADDITIONAL DISCOVERY

The Federal Rules require that a party obtain leave before serving interrogatories or taking depositions beyond the limits established by the Court. See Fed. R. Civ. P. 33(a) (interrogatories); id. 30(a)(2)(A) (depositions). The purpose of these limits is to allow the Court to "maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of [w]ide ranging discovery". Rx USA Wholesale, Inc. v. McKesson Corp., 2007 WL 1827335, at *2-3 (E.D.N.Y. June 25, 2007) (quoting Whittingham v. Amherst Coll., 163 F.R.D. 170, 171-72 (D. Mass. 1995)). The limits, however, are not intended to "prevent needed discovery," and courts have "broad[] discretion" to allow

**EXHIBIT** _____ /

/5

1  additional discovery "based on the complexity" of the case at hand. Notes of the

2  Advisory Committee (1993) to Fed. R. Civ. P. 26(b) & 33. Leave to take additional

3  discovery "shall be granted" to the extent consistent with the principles set forth in Rule

4  26(b)(2). Fed. R. Civ. P. 30(a)(2)(A), & 33(a). Courts permit additional interrogatories

5  or depositions after considering whether:

6      (1) the discovery sought is unreasonably cumulative or duplicative, or is
7      obtainable from some other source that is more convenient, less
       burdensome, or less expensive; (2) the party seeking discovery has [had]
8      ample opportunity obtain the information sought; or (3) the burden or
9      expense of the proposed discovery outweighs its likely benefit, taking into
       account the needs of the case, the amount in controversy, the party's
10     resources, and the importance of the proposed discovery in resolving the
11     issues.

12  Andamiro v. Konami Amusement of Am., 2001 WL 535667, at *2 (C.D. Cal. April

13  26, 2001) (depositions); see also Collaboration Prop. v. Polycom, Inc., 224 F.R.D.

14  473, 475 (N.D. Cal. 2004) (interrogatories).

15  **II.   MATTEL SHOULD BE GRANTED ADDITIONAL DEPOSITIONS**

16      Mattel should be permitted to take more than 24 depositions in these

17  consolidated cases. This action contains three broad categories of significant claims,

18  each of which necessitates additional depositions:  Mattel's Bratz-related claims,

19  MGA's unfair competition claims, and Mattel's trade secret theft and RICO claims.

20  MGA's supplemental initial disclosures identified 86 witnesses with knowledge of

21  MGA's claims and defenses, 62 of whom are not Mattel employees.[20]  Mattel's

22  supplemental disclosures contain nearly double the number of witnesses with

23  knowledge, only 43 of whom are Mattel employees.[21] Based on the million-and-a-half

24  pages that MGA has recently produced, Mattel is preparing third supplemental

25  _____

26  [20]   See MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment
    (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Larian's Initial Disclosures Under
27  Rule 26(a)(1), dated September 21, 2007, at 1-16, Proctor Dec., Ex. 18.
    [21]   See Proctor Dec., Ex. 19, at 3-19.

28

EXHIBIT _____/_____

PAGE _____16_____

1  disclosures which will name additional witnesses.  Mattel can rely on <u>Rule</u> 30(b)(6) to

2  obtain some information, but Mattel cannot effectively prosecute or defend these cases

3  with only 24 depositions.

    A.  <u>Each Category of Claims Warrants More Depositions</u>

      1.  <u>The Bratz Claims Require Additional Depositions</u>

6        The number of witnesses involved with the creation of Bratz or with knowledge

7  of Bryant's purported story about when he created – and the inconsistent stories that

8  MGA spun in the media – justify additional depositions.  For example, Bryant claims

9  that he created Bratz when he was not a Mattel employee.[22]  He initially identified three

10  people who he claimed could corroborate this story:  Tom and Janet Bryant (his

11  parents) and Richard Irmen (his partner).  Bryant's mother for the first time in this case

12  recently identified a fourth:  her friend, Jeanne Galvano.  Bryant will introduce their

13  testimony to vouch for his story, so Mattel obviously needs and is entitled to depose

14  them.  Similarly, Isaac Larian has repeatedly made conflicting, inconsistent statements

15  about Bratz's creation to the press, among others.[23]  Mattel thus far has deposed two of

16  the journalists who wrote those stories – depositions where Mattel's questioning lasted

17  far less than an hour.  Bryant's "alibi" witnesses and the reporters alone use up one-third

18  of Mattel's originally allotted 24 depositions.

19        In addition, at the time of the Scheduling Order, Bryant and MGA had said only

20  a handful of people worked directly on Bratz prior to 2002:  Bryant, Anna Rhee,

21  Mercedeh Ward, Margaret Leahy, Paula Garcia and unidentified people in Hong

22  Kong.[24]  In a recent supplemental interrogatory response, MGA identified 11 more

23  people who worked on the first Bratz dolls, including Sarah Halpern, Veronica Marlow,

---

[22]  Bryant Dep. Tr. at 140:9-141:8, Proctor Dec., Ex. 20.
[23]  Proctor Dec., Ex. 21.
[24]  <u>See</u> Bryant's Objections and Responses to Second Set of Interrogatories
Propounded by Mattel, Inc., at 4, Proctor Dec., Ex. 22; MGA's Response to Mattel's
Second Set of Interrogatories, at 4:17-20, Proctor Dec., Ex. 23.

EXHIBIT _____/

07209/2299353.1

PAGE ____/7____

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1 | Cecilia Kwok, David Dees, Stephen Tarmichael, Edmond Lee, Franki Tsang, Samuel
2 | Wong, Stephen Lee, William Ragsdale and Wendy Ragsdale (and Mattel now knows
3 | that even this list is incomplete).[25] This list does not include anyone involved in early
4 | sales, marketing, product testing or advertising of Bratz.

5 |     When a deponent possesses unique information, courts generally grant leave for
6 | additional depositions because they do not undermine the key purpose of the limits –
7 | preventing duplicative discovery. See, e.g., Bromgard v. Montana, 2007 WL 1101179,
8 | at *2 (D. Mont. April 11, 2007). Courts deny additional depositions when deponents
9 | are likely to have common, interchangeable information. And, even in such instances,
10 | courts may allow a limited number or sequential depositions to proceed. See, e.g., Rx
11 | USA, 2007 WL 1827335, at *3 (allowing additional deposition testimony on one but
12 | not both individuals with generalized information).

13 |     Here, Mattel seeks depositions of witnesses who each have specific, unique
14 | personal knowledge of the Bratz claims as well as about other claims in the case. All of
15 | them are third parties:

16 | • Sarah Halpern – worked on the patterns for the first Bratz dolls

17 | • Margaret Leahy – sculpted the first Bratz dolls and 4-Ever Best Friends

18 | • Veronica Marlow – worked on the first Bratz doll fashions as well on
19 | products at issue in MGA's claims

19 | • Elise Cloonan – worked with Bryant on his Bratz pitch to MGA while both
20 | were employed by Mattel

21 | • Jesse Ramirez – worked on molds for Bratz

22 | • Jeanne Galvano – alleged witness Bryant's mother recently claimed can
23 | verify facts relating to Bratz's creation

23 | • Stephen Lee – Managing Director of MGA Hong Kong during development
24 | of Bratz and other products at issue

---

[25] MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, at
4:1-6:3, Proctor Dec., Ex. 24; see Linker Dep. Tr. at 59:22-64:9, Proctor Dec., Ex. 25
(testifying that Paula (Treantafelles) Garcia and Bryant approached him and his partner,
Liz Hogan, before Bryant left Mattel to work on Bratz).

EXHIBIT _____ 1 _____

PAGE _____ 18 _____

07209/2299353.1

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

- Cecilia Kwok – MGA Hong Kong employee principally involved with first Bratz dolls

- Farhad Larian – brother of Isaac Larian, who sued Isaac Larian and alleged, inter alia, that MGA was working on Bratz by early 2000 (months before MGA and Bryant claim to have met) when he was a part owner of MGA[26]

- Certain as yet unidentified attorneys who represented parties to disputes between Isaac Larian and Farhad Larian in which the creation of and value of Bratz was at issue

- Sandra Bilotto – sculptor who worked on Prayer Angel dolls at issue[27]

- Anne Wang – represented Bryant in negotiations with MGA while he was a Mattel employee that led to the agreement dated "as of September 18, 2000"[28]

- David Rosenbaum – represented MGA in negotiations with Bryant's first agreement with MGA[29]

- Christensen Glaser LLP – firm to which Victoria O'Connor faxed the MGA/Bryant agreement that Isaac Larian had ordered her to alter[30]

- Lucy Arant – lawyer with knowledge of MGA's first use of Bratz

- Mitchell Kamarck – former MGA counsel who responsible for patent applications, including those in which Isaac Larian had claimed to be the inventor of Bratz features that Bryant has since testified he created[31]

- Carol Witschell – lawyer who worked on MGA trademark applications and other trademark matters at issue

- Nana Ashong – former MGA employee who stated Bratz was created during Bryant's employment by Mattel[32]

- Larry McFarland – wrote MGA copyright registrations that stated the Bratz dolls were created during 2000 and that, after this suit was filed, MGA claimed were incorrect

- Eric Yip – MGA Hong Kong Sales Administrator in 2000 and 2001, when Bratz were created and first shipped to Bandai in Spain[33]

---

[26] See Larian Dep. Tr. at 159:17-160:14, Proctor Dec. Ex. 54.
[27] Brode Dep. Tr. at 303:9-316:16, Proctor Dec. Ex. 55; Dep. Exhs. 607, 608, 609, Proctor Dec., Ex. 56.
[28] See Bryant Tr. at 39:6-42:18, Proctor Dec. Ex. 60.
[29] See O'Connor Dep. Tr. at 94:1-95:21, Proctor Dec., Ex. 61.
[30] See O'Connor Tr. 17:3-19:19, Proctor Dec., Ex 75.
[31] See Armstrong Dep. Tr. at 10:7-12, 26:16-23, 244:18-21, Proctor Dec. Ex. 62.
[32] See Brode Tr. at 87:13-88:11, Proctor Dec., Ex. 55.
[33] See Harris Dep. Tr. at 121:16-122:17, Proctor Dec. Ex. 63.

EXHIBIT _____ 1

PAGE _____ 19

07209/2299353.1

- Gentle Giant Studios – created relevant moldings and casts while Bryant was still employed at Mattel[34]

- Christopher Palmeri – *Business Week* reporter who wrote that Larian purportedly "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers"[35]

- Jeff Weiss – *San Fernando Valley Business Journal* reporter who quoted another inconsistent Larian statement concerning the origin of Bratz[36]

- Kickapoo High School – where Bryant allegedly found inspiration for Bratz and author of documents refuting that claim

- LA Focus – conducted Bratz focus groups, including focus groups that MGA denies occured

- Joyce Ng – independent contractor who moderated Bratz focus groups

- Rachel Harris – former MGA employee who worked on initial Bratz packaging as well as on other packaging which MGA's claims rest on

- Peter Marlow – spouse of Veronica Marlow who negotiated millions of dollars in payments for Bratz from Bryant on her behalf

- Andreas Koch – former MGA manager who has knowledge of Bryant's initial contacts with MGA

- Kami Gillmour – former Mattel and MGA employee who has knowledge regarding Paula Garcia's employment with MGA, confidential information taken from Mattel and MGA's projects at issue

- Mercedeh Ward – engineer on initial Bratz dolls and author of emails reflecting the use of Mattel property in its creation

- Moss Adams – accounting firm with knowledge of MGA's profits and distributions thereof to Larian (who owns 90% of MGA's shares)

- Wachovia Bank – bank identified as being involved in early Bratz financing and knowledgeable about MGA's net worth or value

- Amy Myers – formerly with MGA and has knowledge of Prayer Angels project that MGA has raised as a defense

- Two or three parties MGA sued for infringement of Bratz and whose identities are not yet known to Mattel – they will have knowledge of the dolls and other properties MGA has sued on in the past, which is relevant to refuting MGA's current claims that earlier iterations of Bratz products look nothing like subsequent iteration of Bratz products

---

[34] See Proctor Dec., Ex 72.
[35] Proctor Dec. Ex. 52.
[36] Proctor Dec. Ex. 53.

EXHIBIT ____1____
PAGE ____20____

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2293353.1

Further, many of these same witnesses are also knowledgeable as to MGA's claims of unfair competition and Mattel's trade secret and RICO claims, as they continued to work with MGA in later years. For example, MGA has already identified Halpern, Kwok, Leahy, Marlow, Lee, Ward and Yip as individuals involved with the products at issue.[37]  Likewise, Ramirez continued working on molds for subsequent Bratz dolls through at least 2005,[38] while  Kamarck,[39] Witschell,[40] Arant, and McFarland[41] were involved in subsequent Bratz-related intellectual property matters. As such, testimony from these witnesses is essential for both phases of trial.

### 2.    Mattel's Trade Secret and RICO Claims and MGA's Unfair Competition Claims Require Additional Depositions

Mattel has sued MGA for misappropriating Mattel trade secrets and RICO violations by, among other things, stealing thousands of pages of Mattel confidential information in the United States, Canada and Mexico.[42]  Mattel identified Ron Brawer, Janine Brisbois, Gustavo Machado, Mariana Trueba Almada and Pablo Vargas as individuals who misappropriated Mattel trade secrets. The only person Mattel has been able to depose on its counterclaims is Ms. Bacon, who coordinated MGA's recruiting of

---

[37]  See MGA's Fourth Supp. Response to Interrogatory No. 1 of Mattel's First Set of Interrogatories Re Claims of Unfair Competition, at 10-12, 18, 19, Proctor Dec., Ex. 27.
[38]  See, e.g., Proctor Dec., Ex. 69 (showing various Bratz-related work in 2005).
[39]  See, e.g., Armstrong Tr. 26:5-23, Proctor Dec., Ex. 62 (discussing involvement in Bratz-related patent applications through 2004).
[40]  See, e.g., Proctor Dec., Ex. 70 (discussing involvement with Bratz registrations).
[41]  See, e.g., Proctor Dec., Ex. 71 (discussing involvement with Bratz licensing).
[42]  Mattel's Counterclaims ¶¶ 37-54, 70-76, Proctor Dec., Ex 16.

EXHIBIT _____ /

PAGE _____ 21

1  Mattel employees.[43]  Accordingly, Mattel seeks leave to take the depositions of the
2  following witnesses on such claims:[44]

3  • Ron Brawer – has knowledge of stolen Mattel trade secrets in the U.S.
4  • Janine Brisbois – former Mattel employee who stole Mattel trade secrets
5  • Gustavo Machado – former Mattel employee who stole Mattel trade secrets
6  • Mariana Trueba – former Mattel employee who stole Mattel trade secrets
7  • Pablo Vargas – former Mattel employee who stole Mattel trade secrets
8  • Ricardo Abundis – has knowledge of stolen Mattel trade secrets in Mexico
9  • Jorge Castilla – believed to have stolen Mattel trade secrets in the U.S.
10  • Nic Contreras – believed to have knowledge of stolen Mattel trade secrets
11  • Dan Cooney – believed to have knowledge of stolen Mattel trade secrets
12  • Susan Kuemmerle – believed to have knowledge regarding stolen Mattel
13    trade secrets in Mexico
14  • Shirin Salemnia – believed to have knowledge of stolen Mattel trade secrets
15  • MGAE de Mexico – defendant to trade secret theft and RICO claims
16  • MGA Entertainment, Inc. – defendant

17  Further, MGA has accused Mattel of trade dress infringement and dilution and
18  unfair competition in connection with more than 440 products.[45]  MGA has identified

19

20  [43]  Bacon Dep. Tr. at 12:12-13, 51:22-52:17, 86:8-12, and 114:19-116:9, Proctor Dec.,
21  Ex. 28.  And even with respect to Ms. Bacon's deposition, MGA attempted to prevent her
    from testifying on the grounds that Mattel had not noticed her deposition individually, but
22  only as a Rule 30(b)(6) designee. See Proctor Dec., Ex. 29.
23  [44]  These are those who Mattel has identified to date. Mattel anticipates that there may
    be more who will need to be deposed in connection with MGA's unfair competition claims
24  and Mattel's counterclaims because (a) it continues to review the over one-and-a-half
    million pages of documents that MGA produced in the past month and (b) MGA, to date,
25  has failed to identify how it anticipates defending Mattel's counterclaims or which
    documents or witnesses it will rely upon to do so, including by its ongoing failures to
26  answer Mattel contention interrogatories related to its defenses to Mattel's counterclaims.
27  [45]  MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of
    Interrogatories Re Claims of Unfair Competition, at 5-19, Proctor Dec., Ex. 26.
28

EXHIBIT _____ /

07209/2299353.1

117 witnesses with knowledge of the creation or promotion of those products,[46] including many of the persons listed above. Mattel has taken the depositions of only six of those 117 named individuals, and has not yet been able to depose two of them, Bryant or Larian, regarding the unfair competition allegations.

**B.  Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents Is At Issue**

Mattel also is entitled to inquire about MGA's and Bryant's preservation and production of evidence. For example, as MGA's designee on document preservation testified, MGA had only obtained off-site documents as of the summer of 2007 and had searched none of these documents for responsive documents, even though the Court had ordered MGA to produce them and MGA had previously represented that its production was complete.[47] Further, MGA's designee on MGA's electronic document preservation and collection testified that MGA's only search of such information was a single search of Isaac Larian's e-mails in 2005, nothing more.[48] MGA's designee repeatedly testified that Joe Tiongco, who Mattel seeks to depose, has more knowledge.[49] In the same vein, Mattel seeks to depose Daphne Gronich, who provided the preservation declaration on MGA's behalf.[50] In addition, there are serious issues about Bryant's hard drives, including because of Bryant's prior counsel's conflicting representations about their collection and preservation – and indeed even their existence. Mattel therefore seeks testimony on these subjects.[51] Bryant's belated revelation that he installed and used the "Evidence Eliminator" program on these drives

---

[46]  MGA's Fourth Supp. Resp. Unfair Comp. No. 1, at 5-16, Proctor Dec., Ex. 27.
[47]  9/24/07 Stip. and Order, Proctor Dec., Ex. 30; Tonnu Dep. Tr. at 612:13-612:15, 620:14-621:21, Proctor Dec., Ex. 31; 8/13/07 Order, at 14:18-22, Proctor Dec., Ex. 32.
[48]  See Lockhart Deposition Tr. at 265:1-11, Proctor Dec., Ex. 33.
[49]  Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.
[50]  See Dec. of Daphne Gronich in Response to Court's Request for Information Regarding Document Preservation, dated September 10, 2007, Proctor Dec., Ex. 34.
[51]  Notice of Deposition of Littler Mendelson Pursuant to Federal Rule of Procedure 30(b)(6), dated September 6, 2007, Proctor Dec., Ex. 35.

EXHIBIT _____1_____

PAGE    23

07209/2299353.1

1 underscores all the more the legitimacy of full and fair discovery into the integrity of

2 his drives.

### C. **Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative Topics**

5 MGA objected, and the Discovery Master has ruled, that a corporate party who

6 has been deposed pursuant to a <u>Rule</u> 30(b)(6) notice cannot be deposed pursuant to a

7 subsequent notice absent Court leave.[52] Mattel has not propounded a <u>Rule</u> 30(b)(6)

8 Notice of Deposition on MGA or MGAE de Mexico related to either MGA's unfair

9 competition claims or Mattel's counterclaims. Mattel's Notices of Deposition—

10 attached as Exhibits A and B—contain topics of testimony which relate to those

11 claims.[53] Mattel has not previously served any <u>Rule</u> 30(b)(6) Notice on MGAE de

12 Mexico at all, and the topics in the additional Notice to MGA are not duplicative of

13 those in Mattel's prior Notices to MGA.[54] Mattel respectfully submits that it should be

14 granted leave to proceed with those depositions.

### D. **Mattel Meets The Requirements for Additional Discovery**

16 When a deponent possess unique information, courts will generally allow leave

17 for additional depositions because they do not undermine the key purpose of the

---

18

19 [52] 9/25/07 Order Re Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under 30(b)(6), Proctor Dec., Ex. 36.

20 [53] <u>See</u> Exhibits A & B. Mattel's Fourth Notice of Deposition is far less than
21 burdensome compared to MGA's recently served Notice of Deposition, which contains more than 80 topics, each of which has many sub-parts. <u>See</u> MGA Entertainment, Inc.'s
22 Notice of Deposition of Mattel, dated September 5, 2007, Proctor Dec., Ex. 40.
[54] Mattel's First Notice of Deposition was narrowly tailored to obtain information
23 related to MGA's contentions that Bryant and Anna Rhee had worked on Prayer Angels, not Bratz, while Bryant employed by Mattel. Proctor Dec., Ex. 37. Mattel's Second
24 Notice sought information related to Bratz, including Bratz revenues, costs and profits, and
25 evidence preservation and collection. Proctor Dec., Ex. 38. Mattel's Third Notice sought follow-up information on matters that had arisen in discovery, including with respect to
26 specific electronic evidence, specific individuals who worked on the first Bratz dolls, payments made to witnesses or parties, and statements to reporters related to Bratz's
27 creation and inspiration. Proctor Dec., Ex. 39.

28

EXHIBIT _____ /

24

1   limits—preventing duplicative discovery. <u>See, e.g.,</u> <u>Bromgard,</u> 2007 WL 1101179, at

2   *2 (D. Mont. April 11, 2007).   As explained above, Mattel seeks depositions of

3   individuals who each have specific, unique knowledge of the underlying events.

4       Without additional depositions, Mattel cannot discover the full extent of MGA's

5   wrongdoing or adequately prepare to defend against MGA's claims.   Mattel seeks a

6   declaration of ownership of Bratz works that Bryant created during his Mattel

7   employment and their derivatives – property that MGA and Bryant have claimed are

8   worth hundreds of millions of dollars and perhaps more.   Mattel has accused MGA of

9   stealing thousands of pages of Mattel's most valuable trade secrets, including product

10   lines, and strategic plans.   MGA has accused Mattel of infringing hundreds of MGA

11   products, alleging "billions" of dollars in damages.   In light of the magnitude of this

12   case, the burden or additional expense of these depositions pales in comparison to

13   Mattel's need to fully prepare to try this case.   As set forth above, the depositions that

14   Mattel seeks by this motion are not collateral, but go to the heart of its claims and

15   defenses.   <u>See, e.g.,</u> <u>Rx USA,</u> 2007 WL 1827335, at *2-3 (additional depositions

16   warranted in a dispute between large corporations, given the complexity of the issues

17   and the parties' resources).

## III.   THE COURT SHOULD GRANT LEAVE WITH RESPECT TO MATTEL'S INTERROGATORIES

20       Two categories of interrogatories are involved here:   first, Mattel's proposed

21   additional interrogatories that it seeks leave to serve; and, second, interrogatories which

22   Mattel has already served on defendants.

### A.   Mattel Should Be Allowed To Propound Additional Interrogatories

24       Mattel seeks leave to propound additional interrogatories related to MGA's unfair

25   competition claims and Mattel's counterclaims, and MGA's evidence collection and

26   preservation.   To properly prepare for trial, Mattel seeks leave to serve interrogatories

27   requiring defendants to identify the facts, documents and witnesses it will use to prove

28   its claims, defenses and damages.   Mattel's proposed interrogatories thus seek to

07209/2299353.1

EXHIBIT _____

PAGE _____ 25

1  identify which specific Mattel designs or products defendants allege infringe on

2  defendants' designs[55] and trade dress[56] and the facts supporting those legal claims.[57]

3  Additionally, Mattel seeks to determine defendants' position regarding their

4  misappropriation of Mattel documents, including whether defendants contend that no

5  such documents were obtained improperly,[58] that the information contained therein has

6  no value as a trade secret,[59] that the information had been publicly disclosed,[60] that

7  defendants did not use or disclose such information,[61] that any such disclosure neither

8  benefited defendants nor harmed Mattel,[62] and that defendants have a right to possess,

9  use or disclose any such documents in their possession.[63] These are essential elements

10 of the trade secret theft claim. See Cal. Civ. Code § 3426.1. Finally, Mattel seeks

11 information related to MGA's efforts to collect and preserve evidence relevant or

12 potentially relevant to this action.[64]

13     The proposed interrogatories are consistent with the factors set out in Rule 26(b)

14 and should be permitted. They seek disclosure of specific relevant facts regarding

15 topics which have not been the subject of prior interrogatories. The majority of Mattel's

16 prior interrogatories focused on issues related to creation and ownership of Bratz.[65]

17 Only Mattel's set of interrogatories relating to MGA's unfair competition claims could

18

19

20  [55] See Mattel's Proposed Interrogatory No. 51.
21  [56] See Mattel's Proposed Interrogatory No. 52.
     [57] See Mattel's Proposed Interrogatories Nos. 53, 54, 55.
22  [58] See Mattel's Proposed Interrogatory No. 56.
     [59] See Mattel's Proposed Interrogatory No. 57.
23  [60] See Mattel's Proposed Interrogatory No. 58.
     [61] See Mattel's Proposed Interrogatory No. 59.
24  [62] See Mattel's Proposed Interrogatory No. 60.
     [63] See Mattel's Proposed Interrogatory No. 61.
25  [64] See Mattel's Proposed Interrogatories Nos. 63-64.
26  [65] See First Set to Bryant, Proctor Dec., Ex 8; First Set to MGA, Proctor Dec., Ex. 9;
27 Second Set to Bryant, Proctor Dec., Ex. 11; Second Set to MGA, Proctor Dec., Ex. 10;
    Third Set Revised, Proctor Dec., Ex. 45.
28

07209/2299353.1

EXHIBIT _____ /

1 conceivably overlap with the proposed interrogatories.[66]  However, the interrogatories
2 already propounded focused on issues distinct from the proposed interrogatories—
3 specifically, facts relating to MGA employees involved with certain MGA products,[67]
4 MGA's alleged injuries,[68] MGA's allegations regarding Mattel's conduct with certain
5 third-parties in the industry[69] and MGA's allegations of product confusion.[70]  These are
6 not duplicated in the interrogatories which Mattel is proposing.

7       Finally, the benefits of the proposed interrogatories outweigh any added burden,
8 as these type of facts are properly revealed through interrogatories, and the information
9 sought by the interrogatories will advance this litigation and avoid surprise at trial.

10  **B.    The Court Should Grant Leave With Respect To Mattel's**
11         **Outstanding Interrogatories That Defendants Will Not Answer**

12       To date, Mattel has served 50 interrogatories on the defendants.  Yet, by
13 objecting to some of those previously served interrogatories served as being compound,
14 defendants refuse to answer on the purported ground that they exceed the Court's
15 limit.[71]  Although defendants are wrong, the Court should eliminate further delay and
16 quarreling by defendants by simply granting Mattel leave to serve them regardless of
17 how they are counted.

18       Mattel has been seeking answers to these basic interrogatories for over five
19 months now.  To justify their wholesale refusal to answer them, defendants claimed
20 they exceeded the Court's limit on the number of interrogatories.  Mattel moved to
21 compel, defendants moved for a protective order, and in a September 5, 2007 Order
22 Judge Infante provided guidance on the counting of the interrogatories.  Mattel then

---

23
24  [66] See First Set Re Unfair Comp., Proctor Dec., Ex. 12.
    [67] See id. No. 1.
25  [68] See id. No. 4.
    [69] See id. Nos. 5, 8, 9, and 10.
26  [70] See id. No. 7.
27  [71] See Bryant's Objections to Revised Third Set, Proctor Dec., Ex. 73; Bryant's
    Objections to Amended Fourth Set, Proctor Dec., Ex. 74.
28

EXHIBIT _____ /

PAGE _____ 27

propounded revised interrogatories that were consistent with the Discovery Master's Order.

Defendants nevertheless claim, once again, that Mattel exceeds its 50 allotted interrogatories. Not only is this without merit,[72] but it is clear that defendants rehash this objection for no other reason than to obstruct. Bryant refuses to answer any interrogatory past No. 27 because "Mattel has propounded more than 50 interrogatories."[73] And, even the minimal answers he gave to others amply confirms that he continues to stonewall on even basic discovery in this case. MGA makes essentially the same objection.[74] Accordingly, through nothing more than creatively

---

[72] The essence of the defendants' objection is that Mattel's revised interrogatories are compound interrogatories because they improperly require them to respond to individual interrogatories with "different and distinct facts." See Bryant's Objections to Revised Third Set, at 18; Bryant's Objections to Amended Fourth Set, at 4. For example, defendants frivolously object to having to identify both the name of a product and its corresponding product number. But Judge Infante ruled on this matter, explaining that interrogatories "'containing subparts directed at eliciting details concerning [a] common theme should be considered a single question,'" while interrogatories on "discrete issues" should be treated as multiple interrogatories. Order re Mattel's Interrogs., at 5 (quoting 8A Wright & Miller, Federal Practice & Procedure § 2168.1 (2d ed. 1994)); see also id. at 7. The scope of Mattel's revised interrogatories is no different than those which Judge Infante ruled were permissible, as in both instances the "subparts are related and directed to the underlying details of a specifically identified" subject. See id. Judge Infante specifically observed that under the Advisory Committee notes, interrogatories which required distinct factual answers relating to the same subject—e.g., the time, place, persons present, and contents of a particular communication—should be treated as a single interrogatory. See id. Mattel's revised interrogatories are not compound, and defendants' arguments to the contrary are groundless: the fact that an interrogatory answer requires *different facts* does not convert it into a compound interrogatory on *different issues*.

[73] Bryant's Objections to Revised Third Set, at 7. Bryant then makes the same objection to the remaining 23 interrogatories.

[74] See MGA's Objections to Revised Third Set, at 8, Proctor Dec., Ex. 76; MGA (HK) Ltd.'s Objections to Revised Third Set, at 17, Proctor Dec., Ex. 77; MGAE de Mexico's Objections to Revised Third Set, at 8, Proctor Dec., Ex. 78; Larian's Objections to Revised Third, at 8, Proctor Dec., Ex. 79; MGA's Objections Amended Fourth Set, at 7, Proctor Dec., Ex. 80; MGA (HK) Ltd.'S Objections to Amended Fourth Set, at 7-8, Proctor Dec., Ex. 81; MGAE de Mexico's Objections to Amended Fourth Set, at 8, Proctor Dec., Ex. 82; Larian's Objections to Amended Fourth Set, at 7, Proctor Dec., Ex. 83.

07209/2299353.1

EXHIBIT ____/

-19-

28

1    counting a few interrogatories as a multitude, defendants manufacture grounds to delay
2    yet more and refuse obviously appropriate discovery.  To the extent that defendants
3    have substantive objections to specific interrogatories, these issues may be properly
4    heard before the Discovery Master.  But defendants should not be permitted to serially
5    raise the same objection to a few specific interrogatories in order to delay for yet more
6    months in responding to the bulk of Mattel's interrogatories.  Mattel requests that this
7    Court cut through this issue by granting Mattel leave, to the extent needed, to serve
8    each of the interrogatories that have been served to date regardless of how they are
9    counted.

10   **IV.    THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE**
11   **BRYANT DEPOSITION**

12        On September 28, 2007, the Discovery Master issued an Order Granting in Part
13   Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes,
14   granting Mattel seven additional hours to depose Bryant (in addition to 2 hours
15   previously granted based on counsel's dozens of improper instructions not to answer at
16   the Bryant deposition), but denying Mattel the 21 hours that it sought.[75]  Mattel
17   respectfully submits that the facts, as determined by the Discovery Master, justify far
18   more than seven additional hours, and the Court should grant additional time.

19        Mattel does not contest the Discovery Master's factual findings in any way.  To
20   the contrary, the underlying factual findings were plainly correct.  As Judge Infante
21   noted, Mattel's deposition of Bryant in 2004 took place before MGA even brought its
22   unfair competition claims and before Mattel filed its counterclaims, and Mattel had no
23   opportunity to depose Bryant on either.[76]  Thus, as Judge Infante justifiably found:

24        •    The new claims and defenses that were added to the case after Bryant's
25              deposition justify additional deposition time. . . . Without question,

26   ───────────────
     [75] Order Granting in Part Mattel's Motion for Additional Time to Depose Carter
     Bryant for All Purposes (Sept. 28, 2007) ("Order re Additional Time"), at 8:7-13, Proctor
27   Dec., Ex. 43.
     [76] Id. at 5:2-10.
28

07209/2299353.1

EXHIBIT _____ 1

PAGE _____ 29

- Bryant is a critical witness regarding MGA's unfair competition claims and Mattel has not had an opportunity to depose him on such claims.[77]

- In addition, Mattel filed a counterclaim against Bryant, MGA, and other defendants in 2007, asserting thirteen different claims . . . . Bryant filed an answer asserting over twenty affirmative defenses. Mattel has not had an opportunity to depose Bryant on any of these claims or defenses.[78]

- Bryant is the central figure in this litigation and arguably the most important witness *for virtually every claim in the case.* No other witness in the case has his depth and breadth of relevant information.[79]

Bryant and MGA cannot dispute any of this. In interrogatory responses, MGA lists Bryant as a person directly involved with and knowledgeable about the allegedly infringed MGA products that MGA has put at issue.[80]  MGA's responses to Mattel's interrogatories also state that the entire Bratz line is the subject of MGA's claims, and an MGA witness has declared that there are more than 200 Bratz products.[81] Moreover, Paula Garcia, MGA's Vice President of Product Design and Development, has declared that she and  Bryant are "the *only* people who know what the concept is and who see the early product drawings" with respect to many Bratz products.[82]  That is particularly important because many of both Mattel's *and* MGA's claims will turn on the source and timing of these products at issue.  As the Court knows, Mattel's defenses to MGA's infringement claims rest, in part, on the fact that it was MGA which stole and copied Mattel products through its trade secret thefts.  Testimony on the origins of those MGA products and when they were created is indispensable.

---

[77]  Id. at 5:4-5.
[78]  Id. at 5:6-10.
[79]  Id. at 5:15-17 (emphasis added).
[80]  MGA's Responses to Mattel's First Set of Interrogatories Re Claims of Unfair Competition, dated January 19, 2007, Response No. 1, at 6:9, Proctor Dec., Ex. 57.
[81]  See Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, dated May 25, 2007, at ¶ 2, Proctor Dec., Ex. 58; MGA Sup. Resp. Unfair Comp. No. 2, Proctor Dec., Ex. 26.
[82]  Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), Proctor Dec., Ex. 59.

EXHIBIT _____ /

07209/2299353.1

1   Bryant is also obviously a crucial witness on Mattel's copyright infringement,
2   RICO and other counterclaims, which raise a host of new issues Bryant has not been
3   deposed on. According to MGA, Mattel's copyright infringement claim against Bryant
4   alone relates to "*hundreds* of products."[83]  Bryant was also personally involved, either
5   as sender or recipient, in approximately 100 of the predicate acts of mail and wire fraud
6   alleged by Mattel.[84]  Mattel is entitled to question Bryant about these and all the other
7   issues presented for the first time by Mattel's counterclaims and Bryant's answer.

8   Moreover, as Judge Infante found, "new evidence justifies additional time to
9   depose Bryant."[85]  Judge Infante noted that Bryant's deposition took place before "98
10  percent of Bryant's and MGA's collective document production took place"[86] — and that
11  did not even reflect the more than a million-and-a-half pages, that MGA has produced
12  in recent weeks.[87]  In truth, *99.9% of defendants' production in this case has occurred
13  only after Bryant's 2004 deposition.*  Thus, Mattel has had no opportunity to examine
14  Bryant on the vast bulk of the evidence, whether relevant to new claims or the original
15  ones.  This includes, for example:

16      •   Bryant's fee agreements with MGA, which reflect that MGA is paying
          Bryant's legal fees at its discretion, and which were withheld by Bryant
17        even in the face of prior court orders;

18      •   Bratz design drawings produced by Bryant for the first time this year,
          only after being ordered, which bear handwritten dates of September
19        19, 1999, at time when Bryant was employed by Mattel;

20      •   Bryant's desktop hard drive, which reveals his use of "Evidence
          Eliminator" software, which was not produced until compelled this
21        year.

22  _____

23  [83]  See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz
    Ownership in Phase One at 3:12-19.
24  [84]  See Mattel's Second Amended Answer & Counterclaims, Exhibit C.
    [85]  Order re Additional Time at 5:20 (font altered), Proctor Dec., Ex. 43.
25  [86]  Id. at 5:24-27, Proctor Dec., Ex. 43.  Notably, Judge Infante calculated the 98
26  percent number based on MGA's production of 157,000 pages of documents as of the close
    of briefing in late August.  Since that time MGA has produced over a million-and-a-half
27  pages of documents.  See Proctor Dec. ¶ 45.
    [87]  See Proctor Dec. ¶ 45.
28

EXHIBIT _____ /

07209/2299353.1

PAGE _____ 31
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

- Original Bratz drawings, which Bryant did not make available for inspection until this summer, after being ordered to do so, notwithstanding his promise that he would produce such documents at the 2004 deposition.

- A fax from Bryant to David Rosenbaum, outside counsel for MGA, dated September 14, 2000, wherein Bryant stated that he could not ask Mattel's Human Resources any more questions about his contract with Mattel "without risking suspicion."

- October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and Paula Garcia (formerly Treantafelles), reflecting that Bryant worked on Bratz with MGA "on average about 4 hours a day," starting at least six weeks before he left Mattel.

- Invoices showing that Veronica Marlow, a key third party, billed MGA for 169 hours of development services on Bratz that were performed before Bryant left Mattel.

The list of new evidence that was requested by Mattel before Bryant's deposition but first produced by defendants only later literally goes on and on. As Judge Infante ruled, "a witness may be re-deposed with respect to . . . new developments" in a case, including new documents such as these, as well as new claims.[88]

Despite his factual findings, Judge Infante ruled that Mattel is only entitled to an additional seven hours of deposition. Previously Judge Infante had gave Mattel two additional hours as a result of the improper instructions and objections by counsel at Bryant's deposition.[89] So, under Judge Infante's ruling, Mattel has been limited to only seven hours to depose Bryant – the "most important witness for virtually every claim in the case"[90] – on MGA's claims, Mattel's counterclaims, the hundreds of MGA and Mattel products now at issue about which Bryant has unique knowledge, and the vast amounts of recently produced new evidence. This is unfair. The ruling that Mattel be

---

[88]    Order re Additional Time at 4:20-24 (quoting Fresenius Med. Care Hldgs. Inc. v. Roxane Labs., Inc., 2007 WL 764302 (S.D. Ohio 2007)), Proctor Dec., Ex. 43.

[89]    Order re Additional Time at 7:24-25, Proctor Dec., Ex. 43; see Order Granting In Part And Denying In Part Mattel's Motion To Overrule Instructions Not To Answer During The Deposition Of Carter Bryant (March 7, 2007), Proctor Dec., Ex. 44.

[90]    Id. at 5:15-17.

EXHIBIT ___/___

PAGE ___32___

07209/2299353.1

1  granted only seven additional hours is clearly erroneous given Bryant's singular

2  importance, the magnitude of this case and the tectonic shift of claims.

3      Also, based on <u>Rule</u> 30's "presumptive one day, seven-hour limitation on

4  depositions," Judge Infante awarded Mattel a total of 7 hours to depose Bryant on all of

5  MGA's claims and all of Mattel's counterclaims.[91] It is simply impossible to conduct a

6  deposition on those claims – which had not even been filed when Bryant was first

7  deposed – in that amount of time. Judge Infante apparently awarded Mattel no

8  additional time based on new evidence, even though 99.9% of defendants' production

9  has taken place since the 2004 deposition. That effectively punishes Mattel for

10  defendants' discovery misconduct. Mattel requested defendants' documents before the

11  deposition took place; defendants withheld them at their own peril, not at Mattel's.[92]

12  Mattel is entitled to a fair amount of time to depose the key witness in the case on the

13  new claims and evidence he has not been deposed on. The Court should afford that,

14  and grant Mattel a total of 21 hours for the deposition.[93]

15

16

---

17  [91]  <u>Id.</u> at 8:10-13.

18  [92]  <u>See, e.g.</u>, <u>Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.</u>, 2007 WL 764302, at *2 (S.D. Ohio 2007) (originally cited by Bryant to Judge Infante) (allowing

19  second deposition because defendant failed to produce requested documents prior to first deposition); <u>Robins v. Scholastic Book Fairs</u>, 928 F. Supp. 1027, 1036 (D. Or. 1996) ("the

20  second set of depositions of these individuals was necessary because they had to be

21  questioned about additional documents that Defendant produced after the first set of depositions"); <u>Ritchie v. U.S.</u>, 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further

22  evidence linking [witness to the project in dispute] subsequently came to light this court permitted plaintiff to depose [the witness] a second time").

23  [93]  In the alternative, the Court should excercise its discretion to enlarge Mattel's time

24  to depose Bryant. The Court previously extended MGA's deadlines to produce documents that it was compelled to produce even though Judge Infante had specifically *rejected*

25  MGA's request for additional time to comply and despite MGA's failure to show there was

26  any error in that ruling. Here, there can be no dispute that the Court has the right to ensure that the parties receive fair discovery, proportionate to the magnitude and complexity of

27  the case, and that trial in this matter is conducted without undue surprises which will cause prejudice and waste the time of the Court and the jury.

28

EXHIBIT _____ 1

_____ 33

07209/2299353.1

1

## Conclusion

2   For the foregoing reasons, Mattel respectfully requests that the Court grant

3   Mattel's motion for leave.

4   DATED: November 19, 2007    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6

7   By Jon Corey /s/

    Jon Corey
    Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2299353.1

EXHIBIT _____ /

PAGE _____ 34

**Exhibit A**

EXHIBIT _____ /_____

PAGE _____ 35_____

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:   (213) 443-3100

8   Attorneys for Mattel, Inc.

9                 UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

            Plaintiff,
14                                          Consolidated with
                                            Case No. CV 04-09059
15      vs.                                 Case No. CV 05-02727

16  MATTEL, INC., a Delaware corporation,   NOTICE OF DEPOSITION OF MGAE
                                            DE MEXICO, S.R.L. DE C.V.
17          Defendant.                      PURSUANT TO FEDERAL RULE OF
                                            CIVIL PROCEDURE 30(B)(6)
18

19  AND CONSOLIDATED ACTIONS

20

21

22

23

24

25

26

27

28                                          EXHIBIT _____ 1

                                            PAGE _____ 36
    7975/2280277.2
           NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2            PLEASE TAKE NOTICE that on _____, 200_ beginning at

3    9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of

4    defendant MGAE de Mexico, S.R.L. de C.V. at the offices of Quinn Emanuel

5    Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles,

6    CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGAE de Mexico, S.R.L. de C.V.

7    shall designate one or more officers, directors, managing agents or other persons

8    who consent to testify on its behalf concerning each of the topics set forth in

9    Exhibit A hereto.

10           PLEASE TAKE FURTHER NOTICE that the deposition will take

11   place before a duly authorized notary public or other officer authorized to administer

12   oaths at depositions, and will continue from day to day, Sundays, Saturdays and

13   legal holidays excepted, until completed.

14           PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

15   P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

16   Livenote or other technology for real-time transcription of the testimony.

17

18   DATED:  December___, 2007        QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
19

20                                   By_____
21                                      Jon Corey
                                        Attorneys for Mattel, Inc.
22

23

24

25

26

27

28

EXHIBIT _____ /

37

## EXHIBIT A

1.      "YOU," "YOUR" or "MGA" means MGAE de Mexico, S.R.L. de C.V., any of its current or former employees (including but not limited to MACHADO, TRUEBA and VARGAS) , officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

3.      "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

EXHIBIT _____ 1

PAGE 38

975/2280277.2

1     4.     "DESIGN" or "DESIGNS" means any and all representations,

2   whether two-dimensional or three-dimensional, and whether in tangible, digital,

3   electronic or other form, including but not limited to all works, designs, artwork,

4   sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

5   diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

6   practice, developments, inventions and/or improvements, as well as all other items,

7   things and DOCUMENTS in which any of the foregoing are or have been

8   expressed, embodied, contained, fixed or reflected in any manner, whether in whole

9   or in part.

10     5.     "BRATZ DOLL" means any doll that is or has ever been

11   distributed, marketed, sold or offered for sale under the name "Bratz" or as part of

12   the "Bratz" line.

13     6.     "BRATZ PRODUCT" means any product, whether two-

14   dimensional or three-dimensional, and whether in tangible, digital, electronic or

15   other form: (i) that is or has ever been distributed, marketed or sold under the name

16   "Bratz" or as part of the "Bratz" line; (ii) depicts, incorporates, embodies, consists of

17   or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been

18   distributed, marketed or sold in any packaging that includes the name "Bratz" or

19   depicts, incorporates, embodies, consists of or REFERS OR RELATES TO

20   BRATZ.

21     7.     "BRATZ LICENSE" means any license that REFERS OR

22   RELATES TO any BRATZ PRODUCT.

23     8.     "SYSTEM" or "SYSTEMS" means any computer or network of

24   computers or other network devices that allow a two or more computers to share

25   information and equipment, including but not limited to local area networks, wide area

26   networks, storage area networks, client-server networks or peer-to-peer networks. The

27   use of the term "SYSTEM" or "SYSTEMS" also includes the brand, model number,

28

975/2280277.2

EXHIBIT _____ 1

PAGE  39

1  technical specifications, and capacities of the computers who are part of each such
2  SYSTEM.

3      9.    "DIGITAL INFORMATION" means any information created or
4  stored digitally, including but not limited to electronically, magnetically or optically.

5      10.    "ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-
6  9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated
7  therewith.

8      11.    "IDENTITY" means the following:

9          (a)    with reference to an individual or individuals, means to
10  state, fully and separately as to each, such individual's full name, any known
11  business title, current or last known business affiliation, current or last known
12  residential address, current or last known business address, current or last known
13  relationship to MGA, and current or last known telephone number.

14          (b)    with reference to an entity or entities, means to state, fully
15  and separately as to each, such entity's full name, state (or country) of incorporation
16  or organization, present or last known address, and present or last known telephone
17  number.

18          (c)    with reference to any other DOCUMENT or
19  DOCUMENTS, means to describe each DOCUMENT by Bates number.  In the
20  event that a DOCUMENT does not have a Bates number, IDENTITY means, with
21  respect to each such DOCUMENT, to provide a complete description of it such that
22  it may be the subject of a request for the production of documents, including by
23  stating the date, IDENTITY of the author, addressee(s), signatories, parties, or other
24  PERSONS identified therein, its present location or custodian and a description of
25  its contents.

26      12.    "RELATING TO" or "REFERS OR RELATES TO" means
27  constituting, embodying, containing, referring to, commenting on, evidencing,
28  regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to,

**EXHIBIT**                                                    *1*

-4-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

PAGE   40

975/2280277.2

1   concerning, supporting, contradicting, negating, revoking or otherwise relating to in

2   any manner.

3       13.   "COMMUNICATION," in the plural as well as the singular,

4   means any transmittal and/or receipt of information, whether such was oral or

5   written, and whether such was by chance, prearranged, formal or informal, and

6   specifically includes, but is not limited to, conversations in person, telephone

7   conversations, electronic mail (including instant messages and text messages),

8   voicemail, letters, memoranda, statements, media releases, magazine and newspaper

9   articles, and video and audio transmissions.

10      14.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS"

11  as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and

12  Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all

13  writings and records of every type and description including, but not limited to,

14  contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic

15  mail ("e-mail"), records of telephone conversations, handwritten and typewritten

16  notes of any kind, statements, reports, minutes, recordings, transcripts and

17  summaries of meetings, voice recordings, pictures, photographs, drawings,

18  computer cards, tapes, discs, printouts and records of all types, studies, instruction

19  manuals, policy manuals and statements, books, pamphlets, invoices, canceled

20  checks and every other device or medium by which or through which information of

21  any type is transmitted, recorded or preserved.  Without any limitation on the

22  foregoing, the term "DOCUMENT" shall include all copies that differ in any respect

23  from the original or other versions of the DOCUMENT, including, but not limited

24  to, all drafts and all copies of such drafts or originals containing initials, comments,

25  notations, insertions, corrections, marginal notes, amendments or any other variation

26  of any kind.

27      15.   "PERSON" or "PERSONS" means all natural persons,

28  partnerships, corporations, joint ventures and any kind of business, legal or public

1975/2280277.2

-5-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

EXHIBIT _____/

PAGE _____ 41

1  entity or organization, as well as its, his or her agents, representatives, employees,

2  officers and directors and any one else acting on its, his or her behalf, pursuant to

3  its, his or her authority or subject to its, his or her control.

4      16.    "LARIAN" means Isaac Larian, and all of his past or present

5  employees, officers, agents, representatives, attorneys, consultants, independent

6  contractors, any predecessors or successors in interest, and any other PERSON

7  acting on his behalf, pursuant to his authority or subject to his control.

8      17.    "MACHADO" means Carlos Gustavo Machado Gomez, and all

9  of his current or former employees, agents, representatives, attorneys, accountants,

10  vendors, consultants, independent contractors, predecessors-in-interest and

11  successors-in-interest, and any other PERSON acting on his behalf, pursuant to his

12  authority or subject to his control.

13      18.    "TRUEBA" means Mariana Trueba Almada, and all of her

14  current or former employees, agents, representatives, attorneys, accountants,

15  vendors, consultants, independent contractors, predecessors-in-interest and

16  successors-in-interest, and any other PERSON acting on her behalf, pursuant to her

17  authority or subject to her control.

18      19.    "VARGAS" means Pablo Vargas San Jose, and all of his current

19  or former employees, agents, representatives, attorneys, accountants, vendors,

20  consultants, independent contractors, predecessors-in-interest and successors-in-

21  interest, and any other PERSON acting on his behalf, pursuant to his authority or

22  subject to his control.

23      20.    "FORMER MATTEL EMPLOYEES" means any former

24  MATTEL employee who left MATTEL to join YOU, including but not limited to

25  MACHADO, TRUEBA and VARGAS.

26      21.    The singular form of a noun or pronoun includes within its

27  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of

28  the masculine form of a pronoun also includes within its meaning the feminine form

-6-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

7975/2280277.2

EXHIBIT ____ /

PAGE ____ 42

1   of the pronoun so used, and *vice versa*; the use of any tense of any verb includes
2   also within its meaning all other tenses of the verb so used, whenever such
3   construction results in a broader request for information; and "and" includes "or"
4   and *vice versa*, whenever such construction results in a broader disclosure of
5   documents or information.

**Topics of Examination**

6
7        1.      YOUR knowledge of any MATTEL product prior to the time
8   that such product had been announced or disclosed by MATTEL to retailers or the
9   public.

10       2.      YOUR receipt, reproduction, copying, storage, transmission,
11  transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or
12  information, including but not limited to any compilation of information, that was
13  prepared, made, created, generated, assembled or compiled by or for MATTEL and
14  that was not publicly available at the time of YOUR receipt of such DOCUMENT,
15  data and/or information.

16       3.      YOUR receipt, reproduction, copying, storage, transmission,
17  transfer, retention, destruction, deletion or use of any MATTEL line list or other
18  DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,
19  design or development phase.

20       4.      The hiring, engagement or retention by YOU of any current or
21  former MATTEL employee or contractor, including but not limited to the terms of
22  all employment agreements and agreements RELATING TO confidentiality or the
23  invention, authorship, or ownership of any concept or product.

24       5.      The seizure of DOCUMENTS by Mexican authorities from
25  YOUR office in Mexico City, Mexico, including but not limited to the IDENTITY
26  of such DOCUMENTS and YOUR PRESERVATION of any MATTEL authored
27  DOCUMENT after the execution of the search warrant by Mexican authorities.

28

EXHIBIT _____ / 1

7975/2280277.2

6.   COMMUNICATIONS RELATING TO the search of YOUR office in Mexico City, Mexico that was conducted by Mexican authorities.

7.   The IDENTITY of all DOCUMENTS received by YOU, directly or indirectly, from any FORMER MATTEL EMPLOYEE authored by or for the benefit of MATTEL, or RELATING TO MATTEL or any MATTEL product, plan, client, customer, current or former MATTEL employee, sales, advertising, marketing, analysis, tool or procedure.

8.   COMMUNICATIONS with any PERSON RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

9.   COMMUNICATIONS between YOU and any of the FORMER MATTEL EMPLOYEES prior to April 20, 2004, including without limitation any and all DOCUMENTS any of the FORMER MATTEL EMPLOYEES transmitted to or shared with YOU prior to April 20, 2004.

10.   COMMUNICATIONS between YOU and any of the FORMER MATTEL EMPLOYEES RELATING TO MATTEL or any MATTEL product, potential product, business plan, line list, DOCUMENT or pricing.

11.   COMMUNICATIONS between any of the FORMER MATTEL EMPLOYEES and LARIAN, Thomas Park and/or Susanna Kuemmerle prior to April 20, 2004.

12.   Travel to Los Angeles, California by any of the FORMER MATTEL EMPLOYEES between January 1, 2004 and April 20, 2004.

13.   The content, meaning and authenticity of e-mail messages, including attachments and metadata, sent from or received by YOU to or from the e-mail address <plot04@aol.com>.

EXHIBIT _____ 1

PAGE 44

f975/2280277.2

14.    The content, meaning and authenticity of e-mail messages, including attachments and metadata, sent from or received at the e-mail address <argentrade@aol.com> to or from the e-mail address <plot04@aol.com>.

15.    The content, meaning and authenticity of e-mail messages, including attachments and metadata, sent from or received at the e-mail address <argentrade@aol.com> to or from any of the FORMER MATTEL EMPLOYEES.

16.    COMMUNICATIONS RELATING TO YOUR market planning and product development RELATING TO the toy market in Mexico prepared, created, sent or transmitted, whether in whole or in part, by MACHADO, TRUEBA and/or VARGAS at any time prior to April 30, 2005.

17.    COMMUNICATIONS between YOU and any PERSON RELATING TO the departure or resignation from MATTEL of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

18.    The job responsibilities of each FORMER MATTEL EMPLOYEE in the first six months after each joined MGA.

19.    The content, meaning and authenticity of each personnel file maintained or created by YOU RELATING TO any FORMER MATTEL EMPLOYEE.

20.    Any and all agreements between YOU and any of the FORMER MATTEL EMPLOYEES, including all drafts of such agreements and COMMUNICATIONS related thereto.

21.    Compensation, money or any other item of value paid by YOU to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, or paid to any PERSON for the benefit of or RELATING TO any FORMER MATTEL EMPLOYEE.

22.    Any promotions, raises, bonuses, monetary incentives, payments, awards, transfers, warnings, admonishment, discipline, reprimands, demotions or

EXHIBIT _____ 1

f975/2280277.2

1  terminations of or received by any of the FORMER MATTEL EMPLOYEES while
2  employed by YOU.

3        23.    Any agreements, contracts, offers, promises, proposals or requests
4  RELATING TO the indemnification of or by any of the FORMER MATTEL
5  EMPLOYEES or the payment of legal fees by or for any of the FORMER MATTEL
6  EMPLOYEES.

7        24.    COMMUNICATIONS between YOU and any PERSON
8  RELATING TO the obligations to MATTEL, including the duty of confidentiality,
9  of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

10        25.    COMMUNICATIONS between YOU and any current or
11  FORMER MATTEL EMPLOYEE or MATTEL contractor RELATING TO the
12  ownership of, or any right, title or interest in, any idea, concept, design, or product.

13        26.    COMMUNICATIONS between YOU and any PERSON
14  RELATING TO the retention, destruction, transfer, or use of any information or
15  DOCUMENTS known to or possessed by any current or former MATTEL
16  employee or contractor.

17        27.    The IDENTITY of DOCUMENTS that YOU have reason to
18  believe were created by or originated from MATTEL, other than MATTEL products
19  that YOU purchased at retail at any time since January 1, 2004.

20        28.    The development of MGA's 2005 product line, including the
21  IDENTITY of each person who participated in the decision making leading up to
22  such product line.

23        29.    The development of MGA's 2006 product line, including the
24  IDENTITY of each person who participated in the decision making leading up to
25  such product line.

26        30.    Any warning, admonition, discipline or other adverse
27  employment action by YOU RELATING TO any of YOUR current or former

28

EXHIBIT _____ 1

PAGE _____ 46

I975/2280277.2

1  employees for using a competitor's confidential or proprietary information, trade

2  secrets or intellectual property.

3        31.    YOUR policies or procedures regarding the use or prohibition of

4  use of an competitor's confidential or proprietary information, trade secrets or

5  intellectual property.

6        32.    YOUR efforts to maintain the secrecy of YOUR claimed trade

7  secrets and the date YOU started such efforts.

8        33.    Any failures to comply with YOUR efforts to maintain the

9  secrecy of YOUR trade secrets, and any violations of YOUR policies or procedures

10  with respect to the maintenance of the secrecy of YOUR trade secrets.

11        34.    The IDENTITY of each individual who has failed to comply with or

12  violated YOUR policies and procedures to maintain the secrecy of YOUR trade secrets.

13        35.    Any alleged failures of MATTEL to maintain the secrecy of its trade

14  secrets.

15        36.    COMMUNICATIONS between YOU and any individual while

16  the individual was employed by MATTEL.

17        37.    The factual bases for YOUR affirmative defenses.

18        38.    The product name, product number and SKU of each BRATZ

19  PRODUCT, including without limitation each BRATZ DOLL, sold by YOU or

20  YOUR licensees, and the number of units of each sold by YOU or YOUR licensees.

21        39.    YOUR cost of goods sold, unit cost and other costs for each

22  BRATZ PRODUCT, including without limitation BRATZ DOLLS, sold by YOU or

23  YOUR licensees.

24        40.    YOUR revenues and profits, including gross, net and incremental

25  profits, from the sale of each BRATZ PRODUCT sold by YOU or YOUR licensees.

26        41.    The number of units of each BRATZ PRODUCT sold by YOU

27  or YOUR licensees, the identity of each customer to whom YOU or YOUR

28        EXHIBIT _____     /

PAGE _____     47

I7975/2280277.2

1  licensees have ever sold any BRATZ PRODUCT, and the revenues and profits that

2  YOU have earned therefrom by customer.

3       42.    Customer returns to YOU of BRATZ PRODUCTS, including

4  without limitation BRATZ DOLLS, sold or distributed by YOU or YOUR licensees.

5       43.    Customer rebates or credits given by YOU or YOUR licensees to

6  customers in connection with BRATZ PRODUCTS, including without limitation

7  BRATZ DOLLS.

8       44.    YOUR cost allocation procedures.

9       45.    YOUR sales, profit and cash flow projections or forecasts for

10  BRATZ PRODUCTS, including without limitation BRATZ DOLLS.

11       46.    The BRATZ DOLLS' share of the fashion doll market in Mexico

12  including, without limitation, the extent to which BRATZ has been or is gaining or

13  losing market share in the Mexico fashion doll market.

14       47.    YOUR net worth on a yearly basis from January 1, 2004 to the

15  present.

16       48.    YOUR monthly, quarterly and annual financial reports, including

17  financial statements (both audited and unaudited) from January 1, 2004 through the

18  present, inclusive.

19       49.    YOUR tax returns from January 1, 2004 to the present, including

20  all schedules and work papers RELATING TO their preparation and filing.

21       50.    YOUR corporate structure since January 1, 2004, including without

22  limitation YOUR relationship with MGA Entertainment, Inc., to MGA Entertainment

23  Mexico, Inc. and the IDENTITY of YOUR officers, directors, shareholders and

24  employees.

25       51.    The retention or destruction policies, procedures and practices for

26  YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO

27  BRATZ since January 1, 2004, including without limitation the retention or destruction

28

EXHIBIT _____ 1

7975/2280277.2

1  of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced, modified or upgraded and (b) when PERSONS leave YOUR employ.

2

3  52.   The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

4

5

6  53.   The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 2004 that REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan or information) that YOU received in any manner from any PERSON who was at the time an employee of MATTEL or who had previously been an employee of MATTEL.

7

8

9

10

11

12  54.   YOUR DIGITAL INFORMATION data backup policies, practices and procedures from January 1, 2004 to the present, including without limitation the location and specifications of any media used to preserve YOUR DIGITAL INFORMATION and the software, if any, used to preserve YOUR DIGITAL INFORMATION.

13

14

15

16

17  55.   The DIGITAL INFORMATION SYSTEMS and the application software that YOU have used since January 1, 2004 that REFER OR RELATE TO design, development, planning, inventory, manufacturing, sales, shipping and accounting, including without limitation the common or shared storage for such DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL INFORMATION SYSTEMS, and any changes, modifications or upgrades to such DIGITAL INFORMATION SYSTEMS or application software.

18

19

20

21

22

23

24  56.   The IDENTITY of PERSONS, including without limitation vendors, who since January 1, 2004 have been responsible for or supported YOUR DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of such PERSON who serviced or provided hardware for YOUR DIGITAL INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL

25

26

27

28

0975/2280277.2

EXHIBIT

1

-13-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

44

1 INFORMATION, including but not limited to internet service providers, and provided

2 analytical, training or implementation services with respect to YOUR DIGITAL

3 INFORMATION SYSTEMS.

4     57.   The electronic messaging SYSTEMS used by YOUR employees

5 within the scope of their employment between January 1, 2004 and the present,

6 including but not limited to electronic mail, instant messenger, telephone or voice-mail,

7 and the routing of such electronic messages to, from or within MGA.

8     58.   YOUR policies, practices and procedures regarding the use of

9 transportable media that contain or are capable of containing DIGITAL

10 INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB

11 drives, portable hard drives, digital cameras and personal digital assistants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _____ 1

PAGE _____ 50

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

975/2280277.2

**Exhibit B**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, Plaintiff, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13 | Consolidated with |
| 14  vs. | Case No. CV 04-09059 Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware corporation, Defendant. | FOURTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| 16 | |
| 17 | Discovery Cut-off: January 14, 2008 |
| 18  AND CONSOLIDATED ACTIONS | Pre-trial Conference: April 7, 2008 Trial Date: April 29, 2008 |

19

20

21

22

23

24

25

26

27

28

EXHIBIT ____/____

PAGE ____52____

FOURTH NOTICE OF DEPOSITION OF MGA

09/2254636.1

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on _____, beginning at 9:30 a.m.

3  Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4  MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5  LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R.

6  Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7  directors, managing agents or other persons who consent to testify on its behalf

8  concerning each of the topics set forth in Exhibit A hereto.

9          PLEASE TAKE FURTHER NOTICE that the deposition will take place

10  before a duly authorized notary public or other officer authorized to administer oaths at

11  depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12  excepted, until completed.

13          PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14  P. 30(b)(2), the deposition will be videotaped. Mattel also reserves the right to use

15  Livenote or other technology for real-time transcription of the testimony.

16

17  DATED: _____     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

18

19                               By_____

20                               Jon Corey
                                 Attorneys for Mattel, Inc.

21

22

23

24

25

26

27

28

EXHIBIT _____1_____

FOURTH NOTICE OF DEPOSITION OF MGA

t09/2254636.1

**EXHIBIT A**

1.   "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.   "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.   "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

4.   "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence

1209/2254636.1

1   that is the subject of, or otherwise relevant or responsive to, the Topics of Examination
2   herein.

3        5.    "DESIGN" or "DESIGNS" means any and all representations,
4   whether two-dimensional or three-dimensional, and whether in tangible, digital,
5   electronic or other form, including but not limited to all works, designs, artwork,
6   sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
7   diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
8   practice, developments, inventions and/or improvements, as well as all other items,
9   things and DOCUMENTS in which any of the foregoing are or have been expressed,
10  embodied, contained, fixed or reflected in any manner, whether in whole or in part.

11       6.    "THE BRATZ PITCH MATERIALS" means each and every
12  BRATZ WORK which was displayed, shown, provided, or offered to YOU on or
13  before the date on which YOU executed the BRYANT/MGA AGREEMENT.

14       7.    "BRYANT/MGA AGREEMENT" means the written agreement
15  between CARTER BRYANT and MGA dated as of September 18, 2000, produced as
16  BRYANT 00794-00799, and any other version or versions thereof.

17       8.    "CREATE OR IMPROVE" or "CREATED OR IMPROVED," in
18  the context of a BRATZ WORK or BRATZ WORKS, means to create, improve,
19  develop, modify, alter, conceive, reduce to practice, or otherwise work on the BRATZ
20  WORK or BRATZ WORKS.

21       9.    "IDENTIFY" or "IDENTITY" means the following:

22       (a)    With reference to an individual, means such individual's
23  name, current or last known business title, current or last known business affiliation,
24  current or last known relationship to YOU, current or last known residential and
25  business address, and current or last known telephone number.

26       (b)    With reference to an entity or governmental organization,
27  means such entity's or organization's name, present or last-known address, and present

28

EXHIBIT ___1___

PAGE ___55___

1  or last-known telephone number and the IDENTITY of each individual who has served
2  or participated as a contact for or on behalf of such entity or organization.

3        (c)    With reference to an account with a bank or financial
4  institution, means the name and address of the bank or financial institution, the account
5  number(s) for or otherwise associated with such account and the name of each holder,
6  including without limitation each beneficial holder, of each such account.

7        (d)    With reference to a STORAGE DEVICE, means the
8  manufacturer name, brand, model name and number, serial number and all other
9  manufacturer identifiers, and the technical specifications and capacities of such
10 STORAGE DEVICE.

11       10.   "DIGITAL INFORMATION" means any information created or
12 stored digitally, including but not limited to electronically, magnetically or optically.

13       11.   "STORAGE DEVICE" means any computer hard drive, memory,
14 USB device, tape, storage array or any other device or medium that allows a user,
15 whether permanently, temporarily or otherwise, to create, generate, transmit, copy,
16 retain, store or maintain DIGITAL INFORMATION.

17       12.   "GLASER LETTER" means the letter sent from Patricia L. Glaser
18 to John B. Quinn, dated July 5, 2007.

19       13.   "REFER OR RELATE TO" means constituting, embodying,
20 containing, referring to, commenting on, evidencing, regarding, discussing, describing,
21 mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting,
22 negating, revoking or otherwise relating to in any manner.

23       14.   "COMMUNICATION," in the plural as well as the singular, means
24 any transmittal and/or receipt of information, whether such was oral or written, and
25 whether such was by chance, prearranged, formal or informal, and specifically includes,
26 but is not limited to, conversations in person, telephone conversations, electronic mail
27 (including instant messages and text messages), voicemail, letters, memoranda,

28

EXHIBIT _____ /

PAGE _____ 56

-4-

FOURTH NOTICE OF DEPOSITION OF MGA

1  statements, media releases, magazine and newspaper articles, and video and audio
2  transmissions.

3       15.   "EMBODIMENT" means any representation of the identified
4  product or its retail packaging, whether two-dimensional or three-dimensional, and
5  whether in tangible, digital, electronic or other form, including but not limited to all
6  works, designs, artwork, sketches, drawings, illustrations, representations, depictions,
7  blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,
8  reductions to practice, developments, inventions and/or improvements, as well as all
9  other items, things and DOCUMENTS in which any of the foregoing are or have been
10  expressed, embodied, contained, fixed or reflected in any manner, whether in whole or
11  in part.

12       16.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as
13  those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and
14  Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings
15  and records of every type and description including, but not limited to, contracts,
16  agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),
17  records of telephone conversations, handwritten and typewritten notes of any kind,
18  statements, reports, minutes, recordings, transcripts and summaries of meetings, voice
19  recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and
20  records of all types, studies, instruction manuals, policy manuals and statements, books,
21  pamphlets, invoices, canceled checks and every other device or medium by which or
22  through which information of any type is transmitted, recorded or preserved. Without
23  any limitation on the foregoing, the term "DOCUMENT" shall include all copies that
24  differ in any respect from the original or other versions of the DOCUMENT, including,
25  but not limited to, all drafts and all copies of such drafts or originals containing initials,
26  comments, notations, insertions, corrections, marginal notes, amendments or any other
27  variation of any kind.

28

EXHIBIT _____ 1

PAGE _____ 57

FOURTH NOTICE OF DEPOSITION OF MGA

1     17.    "PERSON" or "PERSONS" means all natural persons, partnerships,

2  corporations, joint ventures and any kind of business, legal or public entity or

3  organization, as well as its, his or her agents, representatives, employees, officers and

4  directors and any one else acting on its, his or her behalf, pursuant to its, his or her

5  authority or subject to its, his or her control.

6     18.    "CONTESTED MGA PRODUCTS" means the CONTESTED

7  BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the

8  CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED

9  4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY'S LITTLE

10  DOLL PRODUCTS, and the CONTESTED ALIENRACERS PRODUCTS, and any

11  other doll, product, toy, packaging, advertisement or other matter that, in whole or in

12  part, provides a basis for any claim or defense by YOU against MATTEL.

13     19.    "CONTESTED BRATZ DOLLS PRODUCTS" means any of the

14  following that provides a basis for any claim by YOU against MATTEL:  (i) any

15  EMBODIMENT or project ever known by the name "Bratz" or any derivative thereof

16  (whether in whole or in part and regardless of what such EMBODIMENT or project is

17  or has been also, previously or subsequently called) and any doll or any portion thereof

18  that is now or has ever been known as, or sold, offered for sale, licensed, offered for

19  license or marketed under, the name or term "Bratz" or any derivative thereof (whether

20  in whole or in part and regardless of what such doll is or has been also, previously or

21  subsequently called), and all prototypes, models, samples and versions of such

22  EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU

23  distribute under the name "Bratz" or any derivative thereof; and/or (iii) any and all

24  other goods, product packaging, advertisements, promotional materials or other thing or

25  item or material manufactured, produced, printed, ordered, marketed, advertised,

26  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

27  license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz" or

28  any derivative thereof.

EXHIBIT _____ 1

20.   "CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any styling head or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such styling head is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that YOU distribute under the name "Bratz Funky Fashion Makeover Head" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky Fashion Makeover Head" or any derivative thereof.

21.   "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "4-ever Best Friends" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "4-ever Best

-7-

I209/2254636.1

EXHIBIT _____   /

FOURTH NOTICE OF DEPOSITION OF MGA
PAGE   59

1  Friends" or any derivative thereof; and/or (iii) any and all other goods, product
2  packaging, advertisements, promotional materials or other thing or item or material
3  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
4  distributed, shipped, imported, exported, licensed, offered for license, sold or offered
5  for sale by YOU or on YOUR behalf under the name "4-ever Best Friends" or any
6  derivative thereof.

7      22.   "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS" means
8  any of the following that provides a basis for any claim by YOU against MATTEL:
9  (i) any EMBODIMENT or project ever known by the name "Mommy's Little Patient"
10  or similar name or any derivative thereof (whether in whole or in part and regardless of
11  what such EMBODIMENT or project is or has been also, previously or subsequently
12  called) and any doll or any portion thereof that is now or has ever been known as, or
13  sold, offered for sale, licensed, offered for license or marketed under, the name or term
14  "Mommy's Little Patient" or similar name or any derivative thereof (whether in whole
15  or in part and regardless of what such doll is or has been also, previously or
16  subsequently called), and all prototypes, models, samples and versions of such
17  EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU
18  distribute under the name "Mommy's Little Patient" or similar name or any derivative
19  thereof; and/or (iii) any and all other goods, product packaging, advertisements,
20  promotional materials or other thing or item or material manufactured, produced,
21  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,
22  imported, exported, licensed, offered for license, sold or offered for sale by YOU or on
23  YOUR behalf under the name "Mommy's Little Patient" or similar name or any
24  derivative thereof.

25      23.   "CONTESTED ALIENRACERS PRODUCTS" means any of the
26  following that provides a basis for any claim by YOU against MATTEL:  (i) any
27  EMBODIMENT or project ever known by the name "Alienracers" or any derivative
28  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

f209/2254636.1

EXHIBIT ____

PAGE ____

FOURTH NOTICE OF DEPOSITION OF MGA

1

60

1  project is or has been also, previously or subsequently called) and any toy vehicle,
2  character, or any portion thereof that is now or has ever been known as, or sold, offered
3  for sale, licensed, offered for license or marketed under, the name or term "Alienracers"
4  or any derivative thereof (whether in whole or in part and regardless of what such toy is
5  or has been also, previously or subsequently called), and all prototypes, models,
6  samples and versions of such EMBODIMENT, toy vehicle, character, or any portion
7  thereof; (ii) any playset and accessory that YOU distribute under the name
8  "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product
9  packaging, advertisements, promotional materials or other thing or item or material
10 manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
11 distributed, shipped, imported, exported, licensed, offered for license, sold or offered
12 for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative
13 thereof.

14      24.    "CONTESTED MATTEL PRODUCTS" means the CONTESTED
15 MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY
16 SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING
17 HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED
18 MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL
19 ACCELERACERS PRODUCTS, and any other MATTEL doll, product, toy,
20 packaging, advertisement or other matter that, in whole or in part, provides a basis for
21 any claim or defense by YOU against MATTEL.

22      25.    "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"
23 means any of the following that provides a basis for any claim by YOU against
24 MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene" or
25 any derivative thereof (whether in whole or in part and regardless of what such
26 EMBODIMENT or project is or has been also, previously or subsequently called) and
27 any doll or any portion thereof that is now or has ever been known as, or sold, offered
28 for sale, licensed, offered for license or marketed under, the name or term "My Scene"

'209/2254636.1

EXHIBIT _____ /
PAGE _____ 61

1  or any derivative thereof (whether in whole or in part and regardless of what such doll

2  is or has been also, previously or subsequently called), and all prototypes, models,

3  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

4  playset and accessory that MATTEL distributes under the name "My Scene" or any

5  derivative thereof; and/or (iii) any and all other goods, product packaging,

6  advertisements, promotional materials or other thing or item or material manufactured,

7  produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

8  shipped, imported, exported, licensed, offered for license, sold or offered for sale by

9  MATTEL under the name "My Scene" or any derivative thereof.

10       26.    "CONTESTED MATTEL MY SCENE PETS PRODUCTS" means

11  any of the following that provides a basis for any claim by YOU against MATTEL:

12  (i) any EMBODIMENT or project ever known by the name "My Scene Pets" or any

13  derivative thereof (whether in whole or in part and regardless of what such

14  EMBODIMENT or project is or has been also, previously or subsequently called) and

15  any toy pet or any portion thereof that is now or has ever been known as, or sold,

16  offered for sale, licensed, offered for license or marketed under, the name or term "My

17  Scene" or any derivative thereof (whether in whole or in part and regardless of what

18  such toy pet is or has been also, previously or subsequently called), and all prototypes,

19  models, samples and versions of such EMBODIMENT, toy pet or any portion thereof;

20  (ii) any playset and accessory that MATTEL distributes under the name "My Scene

21  Pets" or any derivative thereof; and/or (iii) any and all other goods, product packaging,

22  advertisements, promotional materials or other thing or item or material manufactured,

23  produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

24  shipped, imported, exported, licensed, offered for license, sold or offered for

25       27.    "CONTESTED MATTEL MY SCENE STYLING HEAD" means

26  any of the following that provides a basis for any claim by YOU against MATTEL:

27  (i) any EMBODIMENT or project ever known by the name "My Scene Styling Head"

28  or any derivative thereof (whether in whole or in part and regardless of what such

EXHIBIT _____ /

PAGE _____ 62

1    EMBODIMENT or project is or has been also, previously or subsequently called) and

2    any styling head or any portion thereof that is now or has ever been known as, or sold,

3    offered for sale, licensed, offered for license or marketed under, the name or term "My

4    Scene" or any derivative thereof (whether in whole or in part and regardless of what

5    such styling head is or has been also, previously or subsequently called), and all

6    prototypes, models, samples and versions of such EMBODIMENT, styling head or any

7    portion thereof; (ii) any accessory that MATTEL distributes under the name "My Scene

8    Styling Head" or any derivative thereof; and/or (iii) any and all other goods, product

9    packaging, advertisements, promotional materials or other thing or item or material

10   manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11   distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12   for sale by MATTEL under the name "My Scene Styling Head" or any derivative

13   thereof.

14        28.    "CONTESTED MATTEL WEE-3 PRODUCTS" means any of the

15   following that provides a basis for any claim by YOU against MATTEL:  (i) any

16   EMBODIMENT or project ever known by the name "Wee-3" or any derivative thereof

17   (whether in whole or in part and regardless of what such EMBODIMENT or project is

18   or has been also, previously or subsequently called) and any doll or any portion thereof

19   that is now or has ever been known as, or sold, offered for sale, licensed, offered for

20   license or marketed under, the name or term "Wee-3" or any derivative thereof

21   (whether in whole or in part and regardless of what such doll is or has been also,

22   previously or subsequently called), and all prototypes, models, samples and versions of

23   such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that

24   MATTEL distributes under the name "Wee-3" or any derivative thereof; and/or (iii) any

25   and all other goods, product packaging, advertisements, promotional materials or other

26   thing or item or material manufactured, produced, printed, ordered, marketed,

27   advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

28

7209/2254636.1

-11-

1  offered for license, sold or offered for sale by MATTEL under the name "Wee-3" or
2  any derivative thereof.

3       29.   "CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS"
4  means any of the following that provides a basis for any claim by YOU against
5  MATTEL:   (i) any EMBODIMENT or project ever known by the name "Little
6  Mommy" or any derivative thereof (whether in whole or in part and regardless of what
7  such EMBODIMENT or project is or has been also, previously or subsequently called)
8  and any doll or any portion thereof that is now or has ever been known as, or sold,
9  offered for sale, licensed, offered for license or marketed under, the name or term
10  "Little Mommy" or any derivative thereof (whether in whole or in part and regardless
11  of what such doll is or has been also, previously or subsequently called), and all
12  prototypes, models, samples and versions of such EMBODIMENT, doll or any portion
13  thereof; (ii) any playset and accessory that MATTEL distributes under the name "Little
14  Mommy" or any derivative thereof; and/or (iii) any and all other goods, product
15  packaging, advertisements, promotional materials or other thing or item or material
16  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
17  distributed, shipped, imported, exported, licensed, offered for license, sold or offered
18  for sale by MATTEL under the name "Little Mommy" or any derivative thereof.

19       30.   "CONTESTED MATTEL ACCELERACERS PRODUCTS" means
20  any of the following that provides a basis for any claim by YOU against MATTEL:
21  (i) any EMBODIMENT or project ever known by the name "AcceleRacers" or any
22  derivative thereof (whether in whole or in part and regardless of what such
23  EMBODIMENT or project is or has been also, previously or subsequently called) and
24  any toy vehicle, character, or any portion thereof that is now or has ever been known as,
25  or sold, offered for sale, licensed, offered for license or marketed under, the name or
26  term "AcceleRacers" or any derivative thereof (whether in whole or in part and
27  regardless of what such toy is or has been also, previously or subsequently called), and
28  all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

209/2254636.1

-12-

EXHIBIT ___1___

PAGE __64__

1  character, or any portion thereof; (ii) any playset and accessory that MATTEL
2  distributes under the name "AcceleRacers" or any derivative thereof ; and/or (iii) any
3  and all other goods, product packaging, advertisements, promotional materials or other
4  thing or item or material manufactured, produced, printed, ordered, marketed,
5  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,
6  offered for license, sold or offered for sale by MATTEL under the name
7  "AcceleRacers" or any derivative thereof.

8      31.   "FORMER MATTEL EMPLOYEES" means any former Mattel
9  employee who left MATTEL to join YOU, including but not limited to Janine Brisbois,
10 Ron Brawer, Jorge Castilla, Nic Contreras, Dan Cooney, Carlos Gustavo Machado,
11 Mariana Trueba Almada, Pablo Vargas San Jose and Shirin Salemnia.

12     32.   "COMPLAINT" means the Complaint for False Designation of
13 Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair
14 Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 et seq. and
15 California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code
16 § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or
17 about April 13, 2005.

18     33.   The singular form of a noun or pronoun includes within its meaning
19 the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine
20 form of a pronoun also includes within its meaning the feminine form of the pronoun so
21 used, and *vice versa*; the use of any tense of any verb includes also within its meaning
22 all other tenses of the verb so used, whenever such construction results in a broader
23 request for information; and "and" includes "or" and *vice versa*, whenever such
24 construction results in a broader disclosure of documents or information.

25
26
                          **Topics of Examination**
27     1.   The invention, creation, origin, conception, authorship, design and
28 development of the CONTESTED MGA PRODUCTS, including without limitation the

EXHIBIT _____ /

-13-

FOURTH NOTICE OF DEPOSITION OF MGA
PAGE _____ 65

209/2254636.1

1   circumstances under which and the date(s) on which each occurred and the IDENTITY

2   and role(s) of each PERSON involved.

3       2.    Any revisions, modifications or changes made to any of the

4   CONTESTED MGA PRODUCTS, including without limitation any proposed

5   alternatives, modifications or changes (whether or not implemented) to such

6   CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications

7   or changes were made or proposed and the reasons for their implementation or non-

8   implementation.

9       3.    The development of YOUR 2005 product line, including the

10  IDENTITY of each PERSON who participated in the decision making leading up to

11  YOUR 2005 product line and any changes or modifications thereto, and the invention,

12  creation, origin, conception, authorship, design, development, manufacture, distribution

13  and sale of products therein.

14      4.    The development of YOUR 2006 product line, including the

15  IDENTITY of each PERSON who participated in the decision making leading up to

16  YOUR 2005 product line and any changes or modifications thereto, and the invention,

17  creation, origin, conception, authorship, design, development, manufacture, distribution

18  and sale of products therein.

19      5.    The content, meaning, authenticity and source of

20  COMMUNICATIONS, advertisements, and/or promotional statements that provide a

21  basis for any claim by YOU against MATTEL.

22      6.    COMMUNICATIONS between YOU and any PERSON, including

23  without limitation any retailer or distributor, that REFER OR RELATE TO the

24  CONTESTED MATTEL PRODUCTS.

25      7.    The first date of manufacture, shipment and availability for

26  distribution and retail sale of each of the CONTESTED MGA PRODUCTS.

27

28

EXHIBIT _____ _1_

PAGE _____ _66_

FOURTH NOTICE OF DEPOSITION OF MGA

209/2254636.1

8.    The first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form, and the IDENTITY of each PERSON involved therein.

9.    The sculptures, including all preliminary sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS.

10.    The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.

11.    The marketing, advertising, promotion and licensing of the CONTESTED MGA PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including the identity of the channels in which such have been or are disseminated or distributed.

12.    The ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

13.    Any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA PRODUCTS, including but not limited to all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits, correspondence, notes and other DOCUMENTS relating thereto.

14.    The display, exhibition, publication, circulation, or other dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers, licensees, the media, or the public, including but not limited to toy and trade shows and conventions and the date(s) on which such occurred.

EXHIBIT _____ 1

PAGE _____ 67

FOURTH NOTICE OF DEPOSITION OF MGA

209/2254636.1

1      15.    YOUR expenditures in advertising or promoting the CONTESTED

2  MGA PRODUCTS, including by year and by medium.

3      16.    Any contracts or licenses entered into, negotiated, proposed, or

4  requested RELATING TO any of the CONTESTED MGA PRODUCTS.

5      17.    The target market or potential target market, and the demographics

6  of any actual, potential or prospective consumers, customers, purchasers or licensees of

7  the CONTESTED MGA PRODUCTS.

8      18.    The number of units of the CONTESTED MGA PRODUCTS

9  manufactured, produced, ordered, stored in inventory, imported, exported, shipped,

10  sold, or offered for sale by any PERSON, including but not limited to YOU.

11      19.    YOUR revenues, costs and profits for each of the CONTESTED

12  MGA PRODUCTS, including but not limited to YOUR per-unit cost, and YOUR gross,

13  incremental and net profits for each of the CONTESTED MGA PRODUCTS.

14      20.    Any complaints or dissatisfaction concerning the CONTESTED

15  MGA PRODUCTS, including but not limited to the returns of, or the number of or rate

16  of defects for, such products.

17      21.    Any potential or actual confusion, any potential or actual mistake or

18  any potential or actual deception of any PERSON as to the origin, affiliation,

19  sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED

20  MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies,

21  surveys, interviews, reports and COMMUNICATIONS regarding any such confusion,

22  mistake or deception.

23      22.    Any potential or actual confusion, any potential or actual mistake or

24  any potential or actual deception of any PERSON as to the origin, affiliation,

25  sponsorship or association of the CONTESTED MATTEL PRODUCTS that you are

26  aware of, including but not limited to all studies, surveys, interviews, reports and

27  COMMUNICATIONS regarding any such confusion, mistake or deception.

28

EXHIBIT _____ /

1    23.    Any consumer studies, reports, surveys, interviews or reports
2  regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL
3  PRODUCTS, included but not limited to YOUR knowledge of the reasons why
4  consumers purchase any of the CONTESTED MGA PRODUCTS or any of the
5  CONTESTED MATTEL PRODUCTS.
6    24.    Marketing studies, marketing plans, sales plans, sales forecasts,
7  strategies and analyses that REFER OR RELATE TO THE CONTESTED MATTEL
8  PRODUCTS.
9    25.    MATTEL's alleged copying, infringement or dilution of the
10  CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof.
11    26.    To the extent not disclosed in response to any other Topic, all other
12  facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED
13  MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.
14    27.    COMMUNICATIONS between YOU and MATTEL RELATING
15  TO  the  CONTESTED  MGA  PRODUCTS  or  the  CONTESTED  MATTEL
16  PRODUCTS.
17    28.    Any damage, loss, injury or unjust enrichment that YOU claim has
18  been sustained by reason of any act or omission by MATTEL, including but not limited
19  to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue,
20  price erosion, or consequential or incidental damage, including but not limited to the
21  causation for any such alleged unjust enrichment, damage, loss, or injury and the
22  amounts of all such damage, loss, injury or unjust enrichment.
23    29.    When, and under what circumstances, YOU became aware that
24  Mattel had created, designed, developed, sold, offered for sale or licensed the
25  CONTESTED MATTEL PRODUCTS.
26    30.    The copying, reproduction or use of any MATTEL work, product,
27  or EMBODIMENT by YOU or on YOUR behalf since January 1, 1999.
28

EXHIBIT _____ /

PAGE _____ 69

FOURTH NOTICE OF DEPOSITION OF MGA

7209/2254636.1

1   31.   Any similarity or dissimilarity between any of the CONTESTED
2   MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.
3   32.   The hiring, engagement, or retention by YOU of any current or
4   former MATTEL employee or contractor since January 1, 1999, including but not
5   limited to the terms of all employment agreements and agreements RELATING TO
6   confidentiality or the invention, authorship, or ownership of any concept or product.
7   33.   YOUR receipt, reproduction, copying, storage, transmission,
8   transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or
9   information, including but not limited to any compilation of information, that was
10  prepared, made, created, generated, assembled or compiled by or for MATTEL and that
11  was not publicly available at the time of YOUR receipt of such DOCUMENT, data
12  and/or information.
13  34.   YOUR knowledge of any MATTEL product prior to the time that
14  such product had been announced or disclosed by MATTEL to retailers or the public,
15  including but not limited to the CONTESTED MATTEL PRODUCTS.
16  35.   YOUR receipt, reproduction, copying, storage, transmission,
17  transfer, retention, destruction, deletion or use of any MATTEL line list or other
18  DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,
19  design or development phase.
20  36.   The search and seizure of DOCUMENTS by Mexican authorities
21  from MGA's office in Mexico City, Mexico, and all COMMUNICATIONS that
22  REFER OR RELATE thereto.
23  37.   All payments of money or any item of value made by YOU, directly
24  or indirectly, or offered, proposed, promised, requested or solicited by or from YOU,
25  directly or indirectly, in connection criminal proceedings or potential or prospective
26  criminal proceedings against YOU or any of YOUR employees, including without
27  limitation Gustavo Machado, and including without limitation YOUR payment or
28  reimbursement of legal fees for or on behalf of any PERSON.   EXHIBIT _____

'209/2254636.1

-18-

FOURTH NOTICE OF DEPOSITION OF MGA

PAGE

70

1   38.   COMMUNICATIONS between YOU and any PERSON
2   RELATING TO the resignation or departure of any FORMER MATTEL
3   EMPLOYEES from Mattel.

4   39.   The compensation, money or any other item of value paid to any
5   FORMER MATTEL EMPLOYEE, whether directly or indirectly, by YOU.

6   40.   The identity of DOCUMENTS RELATING TO any MATTEL
7   product or plan that any FORMER MATTEL EMPLOYEE provide or disclosed to or
8   shared with YOU, directly or indirectly.

9   41.   COMMUNICATIONS with any PERSON, RELATING TO YOUR
10  receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,
11  deletion or use of any DOCUMENTS, data and/or information, including but not
12  limited to any compilation of information, that was prepared, made, created, generated,
13  assembled or compiled by or for MATTEL and that YOU received, directly or
14  indirectly, from any FORMER MATTEL EMPLOYEE.

15  42.   The content, authenticity, accuracy and meaning of each personnel
16  file maintained or created by YOU RELATING TO any FORMER MATTEL
17  EMPLOYEE.

18  43.   COMMUNICATIONS between YOU and Pablo Vargas San Jose
19  prior to April 20, 2004.

20  44.   COMMUNICATIONS between YOU and Janine Brisbois prior to
21  September 27, 2005.

22  45.   COMMUNICATIONS between YOU and Ron Brawer prior to
23  October 2, 2004.

24  46.   COMMUNICATIONS between YOU and Carlos Gustavo Machado
25  Gomez ("Machado") prior to April 20, 2004.

26  47.   COMMUNICATIONS between YOU and Mariana Trueba Almada
27  ("Trueba") prior to April 20, 2004.

28

EXHIBIT _____ / 

PAGE _____ 7/ 

FOURTH NOTICE OF DEPOSITION OF MGA

f209/2254636.1

48.     The existence or extent of competition or substitution between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

49.     The factual basis for YOUR claim that any of the CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

50.     The factual basis for YOUR claim that any of MATTEL's actions have caused actual dilution.

51.     Mattel's alleged intimidation, coercion or threats to retailers, licensees, suppliers and others in the industry."

52.     The factual basis for YOUR claim that Mattel "serially imitated and copy-catted [sic] the look of MGA products, trade dress, trademarks, themes, ideas, advertising and packaging."

53.     The basis for YOUR claim that the Bratz dolls launched in 2001 were "unique and distinctive."

54.     The identification of YOUR alleged trade dress in connection with the CONTESTED MGA PRODUCTS, including without limitation with respect to "themes," and the factual bases for YOUR claim that YOU have any legally protected interest in such trade dress.

55.     The factual basis for YOUR allegation that advertising executives have expressed concern about "Bratz" and Mattel's "My Scene," what concerns they expressed and the IDENTITY of each such executive.

56.     The factual basis for YOUR allegation that the press confused YOUR products with MATTEL products and "has taken notice" of alleged confusion between "Bratz" and "My Scene."

57.     All COMMUNICATIONS relating to customers who have allegedly contacted YOU to purchase Mattel's "My Scene" dolls or any of the CONTESTED MATTEL PRODUCTS.

EXHIBIT _____ 1

PAGE 72

1   58.   The factual basis for YOUR claim that MATTEL has infringed,
2   diluted or otherwise violated any trade dress that YOU contend YOU own in the
3   CONTESTED MGA PRODUCTS.

4   59.   The factual basis for YOUR claim that MATTEL has engaged in
5   "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

6   60.   COMMUNICATIONS   between   YOU   and   any   PERSON
7   RELATING TO the departure from MATTEL of any current or FORMER MATTEL
8   EMPLOYEE or MATTEL contractor.

9   61.   COMMUNICATIONS   between   YOU   and   any   PERSON
10  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of
11  any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

12  62.   COMMUNICATIONS between YOU and any current or FORMER
13  MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of
14  any idea, concept, design, or product.

15  63.   COMMUNICATIONS   between   YOU   and   any   PERSON
16  RELATING TO the retention, destruction, transfer, or use of any information or
17  DOCUMENTS known to or possessed by any current or former MATTEL employee or
18  contractor.

19  64.   Mattel's alleged "warnings," "threats" or "intimidation" that are the
20  subject of YOUR claims, including but not limited to all COMMUNICATIONS with
21  any present or former licensees of MATTEL and any present or former distributors and
22  retailers of MGA and MATTEL products.

23  65.   MATTEL's alleged responsibility for "shortage of doll hair in
24  October 2002."

25  66.   MATTEL's alleged "manipulation of the retail market," including by
26  its alleged tampering with MGA's retail displays.

27  67.   MATTEL's alleged false statements about YOU or YOUR business
28  practices.

EXHIBIT ____/

68.   MATTEL's alleged violation of any rules or restrictions relating to data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

69.   COMMUNICATIONS between YOU and NPD, other than periodic reports transmitted by NPD or information made available to YOU by NPD, between January 1, 2000 and the present.

70.   YOUR contracts and agreements with NPD since January 1, 1999, including without limitation any allegation by NPD that YOU were or have been in breach or violation thereof.

71.   The status of YOUR NPD subscription between January 1, 1999 and the present.

72.   MATTEL's alleged inducement of CARU to place onerous restrictions on MGA advertisements, and require MGA to amend aspects of commercials that have gone unchallenged in other parties' commercials.

73.   COMMUNICATIONS between YOU and CARU between January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or matter that YOU are relying upon in this ACTION.

74.   MATTEL's allegedly improper influence with or within TIA, including but not limited to the procedures for and manner in which the Toy of the Year was selected for 2003.

75.   YOUR COMMUNICATIONS with TIA RELATING TO Toy of the Year since January 1, 2000 or any other subject or matter on which YOU base any claim.

76.   MATTEL's purported power, influence and intimidation to threaten retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to limit or prevent MGA from doing business.

77.   MATTEL's alleged intimidation of or threats against MGA's current and potential employees.

EXHIBIT ____ / ____

PAGE ____ 74 ____

FOURTH NOTICE OF DEPOSITION OF MGA

7209/2254636.1

1       78.    YOUR monthly, quarterly and annual financial reports, including
2   financial statements (both audited and unaudited) for the years 1998 through the
3   present, inclusive.

4       79.    The identity of DOCUMENTS that YOU have reason to believe
5   were created by or originated from MATTEL (excluding MATTEL products that YOU
6   purchased at retail) at any time since January 1, 1998.

7       80.    The destruction of any DOCUMENT RELATING TO the
8   CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

9       81.    COMMUNICATIONS with, or inquiry or investigation by, any
10  government entity, industry organization, safety compliance, or consumer organization
11  RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL
12  PRODUCTS.

13      82.    YOUR understanding or belief of whether the BRYANT/MGA
14  AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and
15  COMMUNICATIONS related thereto.

16      83.    The public perception of the CONTESTED MGA PRODUCTS,
17  including without limitation with respect to the appropriateness or suitability of Bratz
18  for children.

19      84.    The factual basis for YOUR alleged belief that YOU had the right to
20  market products developed as a result of the BRYANT/MGA AGREEMENT and to the
21  lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the
22  execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and
23  COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

24      85.    The factual basis for YOUR contention that YOU believed at the
25  time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for
26  YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the
27  DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU
28  entered into the BRYANT/MGA AGREEMENT.            EXHIBIT _____/

7209/2254636.1

-23-

FOURTH NOTICE OF DEPOSITION OF MGA

PAGE    75

1      86.    YOUR belief or non-belief that BRYANT created or improved any

2  of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the

3  DOCUMENTS and COMMUNICATIONS YOU so relied upon.

4      87.    Any investigation or inquiry YOU conducted to confirm the timing

5  of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including

6  but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

7      88.    The factual bases for YOUR affirmative defenses.

8      89.    The IDENTITY of all DOCUMENTS that were in the possession of

9  Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver &

10  Hedges LLP at any time prior to January 1, 2007.

11      90.    The factual bases for YOUR allegations in the GLASER LETTER,

12  including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and

13  reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly

14  privileged and confidential.

15      91.    Any services Farhad Larian has provided to YOU since January 1,

16  2005, including any litigation consulting services.

17      92.    The IDENTITY of DOCUMENTS that Farhad Larian was provided

18  with or had access to, including YOUR allegedly privileged and confidential

19  DOCUMENTS, since January 1, 2001.

20      93.    The terms of any contracts or agreements, including any

21  confidentiality agreements, between YOU and Farhad Larian.

22      94.    The identity of each doll, accessory, product, work or item

23  produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or

24  on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative

25  of any BRATZ DESIGN.

26      95.    Except for deposition testimony provided in this ACTION, the

27  testimony, transcripts, declarations, affidavits and other sworn written statements of any

28  other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

7289/2254636.1

EXHIBIT _____/

FOURTH NOTICE OF DEPOSITION OF MGA

PAGE _____76

1   BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001
2   (regardless of when such testimony or sworn statement was taken, given, signed, made
3   or filed).

4           96.     The authenticity, content, timing, meaning, and truth and accuracy
5   of YOUR COMMUNICATIONS with any PERSON, including without limitation any
6   retailer and the media, that REFER OR RELATE TO the National Labor Committee
7   dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz"
8   or the Hau Tai K4 factory.

9           97.     The identity of each doll, product, packaging or other matter that
10  YOU have accused of infringing, diluting or otherwise violating YOUR purported
11  rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each
12  manufacturer of each doll, product, packaging or other matter and the specific aspects
13  of each such doll, product, packaging or other matter that YOU have claimed was
14  confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

15          98.     The identity, and outcome and resolution, of each lawsuit that YOU
16  have brought or cease and desist letter YOU have sent each doll, product, packaging or
17  other matter that YOU have accused of infringing, diluting or otherwise violating
18  YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

19          99.     The job responsibilities of each FORMER MATTEL EMPLOYEE
20  in the first six months after each joined MGA.

21          100.    YOUR scheduling, planning, inventory, shipping, distribution or
22  forecasting software since January 1, 2005, including but not limited to any and all
23  changes, improvements, acquisitions, upgrades and purchases.

24          101.    DOCUMENTS created by each of the FORMER MATTEL
25  EMPLOYEES in the first six months after each joined MGA

26          102.    The make-up, source, calculation and purpose of the amounts
27  presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and
28  MGA 08185789 (Exhibit 662).

7209/2254636.1

EXHIBIT _____/

PAGE _____77

-25-

FOURTH NOTICE OF DEPOSITION OF MGA