**EXHIBIT 2**

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:   (213) 687-5600
4  E-mail:       tnolan@skadden.com

5  KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Times Square
   New York, NY 10036
7  Telephone:  (212) 735-3000
   Facsimile:   (212) 735-2000
8  E-mail:       kplevan@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC.,
10 ISAAC LARIAN, MGA
   ENTERTAINMENT (HK) LIMITED,
11 and MGAE de MEXICO S.R.L. de
   C.V.
12

13                UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16 CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)
                                         )
17                   Plaintiff,          )  Consolidated with Case No. 04-9059
                                         )  and Case No. 05-2727
18        v.                             )
                                         )  **MGA DEFENDANTS' (1)**
19 MATTEL, INC., a Delaware              )  **OPPOSITION TO MATTEL,**
   corporation                           )  **INC.'S MOTION FOR LEAVE TO**
20                                       )  **TAKE ADDITIONAL**
                     Defendant.          )  **DISCOVERY AND OBJECTIONS**
21                                       )  **TO DISCOVERY MASTER**
                                         )  **ORDER OF SEPTEMBER 28, 2007,**
22                                       )  **AND (2) JOINDER IN CARTER**
                                         )  **BRYANT'S OPPOSITION TO**
23                                       )  **MATTEL'S MOTION**
                                         )
24                                       )  Honorable Stephen G. Larson
                                         )
25                                       )
   Consolidated with MATTEL, INC. v.     )
26 BRYANT and MGA                        )  Date:  January 7, 2008
   ENTERTAINMENT, INC. v.                )  Time:  10:00 a.m.
27 MATTEL, INC.                          )  Place:  Courtroom 1
                                         )
28

---

EXHIBIT ___2___

PAGE ___78___

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................. iii

I.   PRELIMINARY STATEMENT. ................................................1

II.  STATEMENT OF FACTS. .......................................................3

III. THE COURT SHOULD DENY MATTEL'S MOTION BECAUSE THE COURT HAS ALREADY GIVEN MATTEL A FULL AND FAIR OPPORTUNITY TO TAKE DISCOVERY IN THIS CASE. ..........................................................................5

   A.   The Federal Discovery Rules Do Not Support Mattel's Request for Additional Discovery. ..............................5

   B.   Mattel Is Not Entitled to Any More Depositions. ..................7

        1.   Mattel Has Not Made a Good Faith, Diligent Effort to Adhere to the Court's 24-Deposition Limit. ...............8

        2.   Mattel Has Failed to Make a Particularized Showing as to Why It Needs Its Requested Depositions. .............10

        3.   Granting Mattel Additional Depositions Would Unduly Burden and Prejudice the MGA Defendants and the Various Non-Party Witnesses. ..........................14

        4.   Mattel's Improper Manipulation of Counter-Defendants' Deposition Count Warrants Denial of Mattel's Motion. ..........................................................15

   C.   Mattel Is Not Entitled to Any More Interrogatories.................17

        1.   Mattel Did Not Make a Good Faith, Diligent Attempt to Comply with the Court's Interrogatory Limit. ...................................................................17

        2.   Mattel Has Not Made a Particularized Showing of Necessity with Respect to Each of Its Interrogatories....19

        3.   Mattel's Proposed Interrogatories Are Overly Broad and Would Impose an Undue Burden on Counter-Defendants. .........................................................20

   D.   The Court Should Deny Mattel's Motion in View of Mattel's Unwillingness to Comply with Its Own Discovery Obligations. ................................................21

   E.   Mattel Should Not Be Allowed to Circumvent the Discovery Master by Having this Court Rule on the Validity of Counter-Defendants' Responses and Objections to Mattel's Interrogatories.........................................23

- i -

EXHIBIT ___2___

PAGE    79



IV.   CONCLUSION ...................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT ____ 2

PAGE ____ 80

1

**TABLE OF AUTHORITIES**

2  **Cases**                                                                        Pages

3  *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.,*
4      187 F.R.D. 578 (D. Minn. 1999)...............................................6, 19

5  *In re At Home Corp.,*
       No. C 04-0931 MMC (JL), 2005 WL 289976
6      N.D. Cal. Feb. 4, 2005)..........................................................5, 6, 11

7  *Barrow v. Greenville Independent School District,*
       202 F.R.D. 480 (N.D. Tex. 2001) ...............................................6

8  *Detoy v. City & County of San Francisco,*
9      196 F.R.D. 362 (N.D. Cal. 2000)...............................................16

10 *Dixon v. Certainteed Corp.,*
       164 F.R.D. 685 (D. Kan. 1996)..................................................10

11 *Jackson v. Laureate, Inc.,*
12     186 F.R.D. 605 (E.D. Cal. 1999)...........................................7, 8, 17

13 *Johnson v. Mammoth Recreations, Inc.,*
       975 F.2d 604 (9th Cir. 1992)................................................7, 10, 19

14 *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha,*
15     218 F.R.D. 667 (C.D. Cal. 2003) ...............................................7

16 *Newell v. State of Wis. Teamsters Joint Council No. 39,*
       No. 05-C-552, 2007 WL 3166757 (E.D.Wis. Oct. 25, 2007) .........6, 10, 11, 19

17 *Safeco of Am. v. Rawstron,*
18     181 F.R.D. 441 (C.D. Cal. 1998) ...............................................5

19 *Veranda Beach Club Ltd. Partnership v. Western Surety Co.,*
       936 F.2d 1364 (1st Cir. 1991) ...................................................7

20 *Zivkovic v. Southern California Edison Co.,*
21     302 F.3d 1080 (9th Cir. 2002)..............................................7, 10, 19

**Statutes**

22                                                                              Pages

23 Fed. R. Civ. P. 16(b)..................................................................7

24 Fed. R. Civ. P. 26(b)(2)(C)......................................................6, 11

25 Fed. R. Civ. P. 30(a)(2)...........................................................5, 6

26 Fed. R. Civ. P. 33 ....................................................................5

27 Fed. R. Civ. P. 33(a).................................................................5, 6

28

- iii -

EXHIBIT ___2___

PAGE ___81___

1    Counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA

2 Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively,

3 the "MGA Defendants") hereby submit this opposition to Mattel, Inc.'s Motion for

4 Leave to Take Additional Discovery and Objections to Discovery Master Order of

5 September 28, 2007.  In addition, the MGA Defendants hereby join in Carter

6 Bryant's opposition to Mattel's motion.

7 **I.    PRELIMINARY STATEMENT.**

8    The Court recently granted a motion by Mattel to serve a "supplemental"

9 interrogatory on affirmative defenses that Mattel conceded was the equivalent of 37

10 separate interrogatories. Unwilling to exercise even an ounce of discipline or self-

11 control, Mattel has returned to the Court demanding that it now receive at least fifty

12 additional non-expert depositions, two additional Rule 30(b)(6) depositions covering

13 160 topics, and 19 additional interrogatories.  Having given Mattel considerably

14 more than an inch, the Court must not let Mattel take far more than a mile.

15    When the Court set the deposition and interrogatory limits in February 2007,

16 Mattel was well aware of the issues and witnesses that are the subject of the

17 additional interrogatories and depositions that Mattel now seeks.  In fact, Mattel told

18 the Court at the Rule 16(b) Scheduling Conference that at least "some 70" witnesses

19 had been identified as having relevant knowledge.  (Declaration of Amy S. Park

20 ("Park Decl."), Ex. 1 (2/12/07 Sched. Conf. Tr.) at 10:9-20.)  Nevertheless, the Court

21 limited each side to 24 non-expert depositions with the expectation that this number

22 "would hopefully capture most of the individuals who have some information  to

23 provide in this case."  (*Id.* at 22:19-22.)  The Court also limited interrogatories to

24 fifty per side, which Mattel had proposed and represented would be sufficient to

25 cover *all* issues in the case.  (Park Decl., Ex. 3 at 5.)

26    Despite the Court's admonition that these were not "soft limits," Mattel and its

27 counsel have proceeded with discovery as if they could obtain any number of

28 additional interrogatories and depositions as a matter of right.  With full knowledge

---

- 1 -

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT _____2_____

PAGE _____82_____

1 of the issues and witnesses that Mattel now seeks to take discovery of, Mattel chose

2 to devote its allotted interrogatories and depositions to other matters. Mattel served

3 interrogatories and took depositions indiscriminately and without any regard for

4 whether it would have any interrogatories or depositions left for Phase 2 issues.

5 Indeed, it appears that Mattel deliberately chose to spend most of its allotted

6 discovery tools on Phase 1 issues in order to manufacture the situation in which they

7 now find themselves. Having made that choice, Mattel has only itself to blame for

8 its current predicament.

9       Mattel cannot legitimately assert that it has not had a full and fair opportunity

10 to conduct reasonable discovery. Mattel has used virtually every discovery tool

11 available, frequently using multiple discovery tools to seek the same information.

12 To date, Mattel has taken 21 depositions and served more than fifty interrogatories,

13 more than fifty subpoenas, more than 2,300 document requests, and more than 4,500

14 requests for admissions. (Park Decl., ¶ 1.) If there are relevant areas that Mattel has

15 not yet covered in its "scorched earth" discovery, it is because Mattel has failed to

16 manage discovery properly, not because Mattel has too few discovery requests and

17 depositions at its disposal.

18       In contrast to Mattel's shotgun approach, counter-defendants have used their

19 interrogatories and depositions judiciously to stay within the Court's limits. To date,

20 they have taken only eight of their 24 allotted depositions. Having nearly used up its

21 allotted depositions though, Mattel does not want anyone else to take any more

22 depositions. Mattel now claims for the first time that counter-defendants have only

23 one allotted deposition left based on a newly concocted argument that their prior

24 Rule 30(b)(6) depositions of Mattel now count as multiple depositions, and is

25 refusing to produce witnesses on that basis. (Park Decl., ¶ 25 & Ex. 17 at 2.) Under

26 this new argument, Mattel would be in contempt of the Court's Scheduling Order

27 because it would have exceeded the deposition limit months ago. (Park Decl., ¶ 24.)

28

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT ___2___

PAGE ___83___

1 Mattel's argument is absurd and serves only to highlight its abusive and harassing
2 discovery practices.

3       The Court's discovery limits apply to both sides equally and Mattel must be
4 required to work within those bounds. To hold otherwise would punish counter-
5 defendants for following the rules, but reward Mattel for adopting a strategy that
6 totally disregards the Court's limits. With only 15 court days left in Phase 1
7 discovery when Mattel's motion is to be heard, Mattel should not be allowed to delay
8 and disrupt counter-defendants' efforts to complete discovery with the vast amounts
9 of additional discovery that Mattel now seeks. Mattel's request is without merit and
10 patently unfair. Accordingly, the Court should deny Mattel's motion in its entirety.

11 **II.    STATEMENT OF FACTS.**

12       On February 12, 2007, the Court held a Rule 16(b) Scheduling Conference to
13 schedule relevant dates and set discovery limits. By that time, all of the claims
14 currently at issue in this case were well known to the parties. (Mot. at 3-4.) In
15 addition, well over a hundred potential witnesses had been identified in the parties'
16 Rule 26 initial and supplemental disclosures. (Proctor Decl., Ex. 19 at 3-19.) Indeed,
17 Mattel alone identified *155 witnesses* in its January 5, 2007 disclosures, including
18 the vast majority of the witnesses it now seeks leave to depose. (*Id.*)

19       In preparation for the Scheduling Conference, the parties submitted a Joint
20 Rule 26(f) Report. (Park Decl., Ex. 3.) In the report, Mattel proposed that the Court
21 adopt the following discovery limits. First, Mattel proposed that the Court limit the
22 parties to fifty interrogatories per side to address all issues in the case. (*Id.* at 5.)
23 Second, Mattel proposed that the Court allow the parties forty depositions per side,
24 not including expert depositions or Rule 30(b)(6) depositions. (*Id.*)

25       At the Scheduling Conference, the Court granted Mattel's proposal of fifty
26 interrogatories per side to address all issues. (Proctor Decl., Ex. 6 at 1.) With
27 respect to the deposition limit, Mattel argued that there were at least "some 70"
28 witnesses with relevant knowledge. (Park Decl., Ex. 1 (2/12/07 Sched. Conf.) at

EXHIBIT    2

PAGE    84

10:9-20.) The Court rejected Mattel's proposal of 40 non-expert depositions and unlimited Rule 30(b)(6) depositions, finding Mattel's proposal to be "disconcerting." (*Id.* at 8:23-25.) Instead, the Court limited depositions to 24 per side with the expectation that this "would hopefully capture most of the individuals who have some information to provide in this case." (*Id.* at 22:19-22.) The Court allowed the parties to request additional discovery if necessary, but expressly contemplated that such requests would be limited to small increases. (*Id.* at 23:1-4 ("[I]f you get to the point where you need ... 25 fact witnesses, you can make application to this Court and the Court will consider that ...").)

On September 21, 2007, Mattel filed a motion for leave to consolidate 37 separate interrogatories regarding each of counter-defendants' affirmative defenses into a single "supplemental" interrogatory that would not count against the fifty-interrogatory limit. (Park Decl., Ex. 4.) Mattel argued that it had already served 41 interrogatories and would exceed the limit if it were not allowed to combine the 37 interrogatories. (*Id.* at 7 & 9.) Notably, Mattel did not mention anything in its motion about needing any further expansion of the interrogatory limit. On December 3, 2007, the Court granted Mattel's motion. (Docket Item 1180.)

Mattel has fully exhausted its interrogatory limit and has nearly exhausted its deposition allotment, having taken 21 depositions to date.[1]  Mattel has also taken mountains of other discovery, including more than fifty subpoenas, more than 2,300 document requests, and more than 4,500 requests for admissions. (Park Decl., ¶ 1.)

To date, counter-defendants have taken 8 depositions. (Park Decl., ¶ 24.) On December 20, 2007, however, Mattel informed counter-defendants for the first time that Mattel believed that counter-defendants had taken 17 depositions and, including currently noticed or scheduled depositions, had only one more deposition left. (Park

---

[1] In addition to the 18 witnesses Mattel deposed prior to filing its motion, Mattel has since deposed Margaret Hatch-Leahy, Elise Cloonan and Jeanne Galvano.

---

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT _____ 2

PAGE _____ 85

1   Decl., Ex. 17.)  On that basis, Mattel objected to MGA's ten deposition notices and

2   refused to provide a deposition date for more than one of the ten witnesses. (*Id.* ¶ 24.)

3   Mattel's new theory is based on an argument that during the depositions of many of

4   Mattel's Rule 30(b)(6) designees, counter-defendants purportedly exceeded the

5   scope of the designations and were therefore deposing those designees both as

6   Mattel's representatives and in their individual capacities.  (*Id.*)  Although counter-

7   defendants had been requesting deposition dates for various witnesses from Mattel

8   for weeks, Mattel never mentioned that it believed counter-defendants were at or

9   near their deposition limit, even though counter-defendants told Mattel in mid-

10  November that they still had 18 depositions remaining. (Park Decl., ¶ 24; Exs. 2, 16,

11  18 & 19.)  Under Mattel's new theory of calculating depositions, Mattel has taken 29

12  depositions to date and first violated the Court's 24-deposition limit in October 2007,

13  when it took its twenty-fifth deposition.  (Park Decl., ¶ 24.)

14  **III.   THE COURT SHOULD DENY MATTEL'S MOTION BECAUSE THE**

15  **COURT HAS ALREADY GIVEN MATTEL A FULL AND FAIR**
    **OPPORTUNITY TO TAKE DISCOVERY IN THIS CASE.**

16  **A.   The Federal Discovery Rules Do Not Support Mattel's Request for**

17  **Additional Discovery.**

18       The Federal Rules of Civil Procedure require courts to place appropriate

19  limitations on discovery.  Rules 30 and 33 restrict a party to 10 depositions and 25

20  interrogatories, respectively, absent leave of court.  *See* Fed. R. Civ. P. 30(a)(2)(A)

21  & 33(a).  These numerical limits were enacted to reduce litigation costs and increase

22  efficiency of interrogatory and deposition practice.  *See Safeco of Am. v. Rawstron,*

23  181 F.R.D. 441, 443 (C.D. Cal. 1998) ("The purpose of this revision is to reduce the

24  frequency and increase the efficiency of interrogatory practice."), quoting Fed. R.

25  Civ. P. 33, Advisory Comm. Notes to 1993 Amendment; *In re At Home Corp.*, No. C

26  04-0931 MMC (JL), 2005 WL 289976, at *3 (N.D. Cal. Feb. 4, 2005) ("Rule 30 is

27  designed to reduce litigation costs and delay of discovery by setting a limit on the

28  number of depositions, which is one of the more expensive forms of discovery.").

EXHIBIT _____2_____

PAGE _____86_____

1  In addition, Rule 26(b)(2) provides that discovery "shall be limited by the
2  court" if it finds any of the following:

3    (i) the discovery sought is unreasonably cumulative or duplicative, or
4    can be obtained from some other source that is more convenient, less
     burdensome, or less expensive;

5    (ii) the party seeking discovery has had ample opportunity to obtain the
6    information by discovery in the action; or

7    (iii) the burden or expense of the proposed discovery outweighs its
     likely benefit, considering the needs of the case, the amount in
8    controversy, the parties' resources, the importance of the issues at stake
     in the action, and the importance of the discovery in resolving the issues.

9  Fed. R. Civ. P. 26(b)(2)(C). Thus, absent agreement of the parties, a court may only
10 expand the limits on interrogatories and depositions "to the extent consistent with the
11 principles stated in Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2) & 33(a).

12   Any request for additional depositions or interrogatories must be supported by
13 a "particularized showing of why the discovery is necessary." *At Home*, 2005 WL
14 289976, at *3 (internal quotations and citation omitted); *Archer Daniels Midland Co.*
15 *v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 586 (D. Minn. 1999). The party
16 seeking additional discovery must "at an irreducible minimum" show that each
17 deposition or interrogatory "concern[s] an issue material to the case and [is] not
18 unreasonably cumulative or duplicative." *Barrow v. Greenville Indep. Sch. Dist.*,
19 202 F.R.D. 480, 483-84 (N.D. Tex,. 2001). *See also At Home*, 2005 WL 289976, at
20 *3 (denying request for 21 depositions where "many of [the witnesses] may
21 duplicate each other's testimony"). This showing must be made "for not only the
22 additional depositions [or interrogatories] but also the depositions [or interrogatories]
23 already taken. ... Absent such a rule, ... a party could circumvent the cap by taking
24 ten deposition[s] of questionable relevance first and leave the most crucial
25 depositions for the end, confident in the belief that leave of the court shall not be
26 denied." *Newell v. State of Wis. Teamsters Joint Council No. 39*, No. 05-C-552,
27 2007 WL 3166757, at *1 (E.D.Wis. Oct. 25, 2007), citing *Barrow*, 202 F.R.D. at
28 482-483.

EXHIBIT ____2____

PAGE ____87____

1    Moreover, where, as here, a court has set discovery limits as part of its Rule

2  16(b) scheduling order, those limits shall not be modified except upon a showing of

3  good cause. Fed. R. Civ. P. 16(b). "This 'good cause' standard 'primarily considers

4  the diligence of the party seeking the amendment.'" *Matrix Motor Co. v. Toyota*

5  *Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003), quoting *Johnson v.*

6  *Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

> Because "[g]ood-faith compliance with [ ] Rule 16 plays an important role in this process," *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1371 (1st Cir.1991), not only must parties participate from the outset in creating a workable Rule 16 scheduling order but *they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation.* ...Accordingly, to demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, ...; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, ...; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order, ....

15  *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (emphasis added,

16  citations omitted). "If the party seeking the modification 'was not diligent, the

17  inquiry should end' and the motion to modify should not be granted." *Zivkovic v. So.*

18  *Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002), quoting *Johnson*, 975 F.2d at

19  609.

20    Applying the foregoing principles in this case, it is clear that Mattel has failed

21  to show the diligence and need required to support its request for more discovery.

22    **B.    Mattel Is Not Entitled to Any More Depositions.**

23    Mattel's request to take at least fifty additional depositions and two additional

24  Rule 30(b)(6) depositions covering 160 topics is untenable because Mattel has not

25  acted diligently, has failed to demonstrate sufficient need, and has made its request

26  for the purpose of harassing and unduly burdening the MGA Defendants, and the

27  non-party witnesses.

28

1      1.      **Mattel Has Not Made a Good Faith, Diligent Effort to Adhere to the Court's 24-Deposition Limit.**

2

3      When the Court imposed the 24-deposition limit, it was Mattel and its

4    counsel's obligation to make a good faith, diligent effort to adhere to that limit. *See*

5    *Jackson*, 186 F.R.D. at 608. This is particularly true because the Court made clear at

6    the Scheduling Conference that it was not going to allow a substantially greater

7    number of depositions. Despite Mattel's assertion that there were at least "some 70"

8    witnesses with relevant knowledge, the Court imposed the 24-deposition limit with

9    the expectation that this number "would hopefully capture most of the individuals

10   who have some information to provide in this case." (Park Decl., Ex. 1 (2/12/07

11   Sched. Conf.) at 10:9-20 & 22:19-22.) Notably, in setting the 24-deposition limit,

12   the Court rejected Mattel's proposal of forty non-expert depositions and unlimited

13   Rule 30(b)(6) depositions, finding Mattel's proposal to be "disconcerting." (Park

14   Decl., Ex. 1 (2/12/07 Sched. Conf. Tr.) at 8:23-25.)

15   Despite its duty to act diligently and in good faith, Mattel and its counsel have

16   made little effort to adhere to the 24-deposition limit. Rather than apportion its 24

17   depositions among the different claims and issues in this case, Mattel has used

18   almost all of its allotted depositions on Phase 1 witnesses. To date, Mattel has taken

19   21 depositions, although this number jumps to 29 applying Mattel's newly devised

20   counting technique. As Mattel concedes, only one of those depositions has been

21   directed at non-Phase 1 issues. (Mot. at 2.) Indeed, although Mattel knew before

22   February 2007 of the Phase 2 witnesses it now seeks to depose (*see* Proctor Decl., Ex.

23   19 at 3-19), Mattel did not reserve any of its 24 depositions for those witnesses.

24   In reviewing the list of witnesses whom Mattel has deposed, it is also clear

25   that Mattel has made no attempt to prioritize its depositions. Instead, Mattel has

26   used numerous depositions on matters that are duplicative of discovery Mattel has

27   already taken or on witnesses who have little or no relevant information.

28

- 8 -

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY    2.

PAGE ___ 89

1  For example, Mattel used two depositions to examine reporters Denise O'Neal

2  and Maureen Tkacik about whether quoted statements attributed to Isaac Larian in

3  articles they wrote were exact quotes. (Park Decl., Ex. 5 (O'Neal Dep.) at 9:1-14:4;

4  Ex. 6 (Tkacik Dep.) at 8:25-10:5.)  Mattel also subpoenaed two other reporters—

5  Christopher Palmeri and Jeff Weiss—for deposition, presumably to ask them similar

6  questions about articles they wrote, and, but for scheduling issues, would have taken

7  those depositions by now. (Proctor Decl., Ex. 21.)  Mattel used another deposition to

8  examine Bryant's 26-year-old niece solely because Bryant had given her one of his

9  computers as a gift, even though Mattel already had a copy of that computer's hard

10  drive from the relevant time period and already deposed Bryant about the computer.

11  (Park Decl., Exs. 7 & 8.)  Mattel also deposed Dave Malacrida because they

12  mistakenly believed that he was an "MGA public relations employee with

13  knowledge regarding early Bratz design and marketing" (Mot. at 6), despite the fact

14  that Mattel included those same topics in its previously served Rule 30(b)(6)

15  deposition notice to MGA. (Proctor Decl., Ex. 38 at 6-7 (Topic Nos. 1 and 11).)

16  Mattel has only itself to blame for its lack of diligence in trying to adhere to

17  the Court's deposition limit.  Most of the additional witnesses Mattel seeks to depose

18  were known to Mattel prior to the February 2007 Scheduling Conference, as were

19  the areas of knowledge that Mattel ascribes to them. (*See* Proctor Decl., Ex. 19 at 3-

20  19; Mot. at 10 n.26, n.28, n. 29, n.30.)  Indeed, Mattel identified the vast majority of

21  those witnesses, including all but one of the Phase 2 witnesses, in its Rule 26

22  disclosures in January 2007. (Proctor Decl., Ex. 19 at 3-19.)  Thus, Mattel cannot

23  blame any unforeseen or unanticipated developments following the Scheduling

24  Conference for Mattel's failure to allocate some of its depositions to witnesses who

25  were clearly known to Mattel at that time.  Nor is anyone other than Mattel

26  responsible for Mattel's decision to use its depositions to examine tangential or

27  duplicative witnesses instead of, for example, any of the Phase 2 witnesses that

28  Mattel now seeks leave to depose.

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT ___2___

PAGE ___90___

1       There is also no reason why Mattel could not have brought its motion for

2  additional discovery earlier.  Mattel has known for many months about most of the

3  additional witnesses it wants to depose.  In addition, since even before the February

4  2007 Scheduling Conference, Mattel has known that counter-defendants would not

5  agree to a deposition limit substantially greater than 24 because they had already

6  rejected Mattel's proposed limit of 40.  (Park Decl., Ex. 3 at 6.)  Indeed, even after

7  Mattel's counsel told the Court at the October 31, 2007 Status Conference that it

8  would be filing shortly a motion for additional discovery (Park Decl., Ex. 9

9  (10/31/07 Status Conf.) at 36:14-37:9), Mattel inexplicably waited another three

10  weeks before filing its motion.  This delay alone caused the hearing on Mattel's

11  motion to be delayed by a month.  (Park Decl., Ex 10 (showing that Mattel's motion

12  could have been heard on December 10, 2007, if filed by November 5, 2007).

13       Mattel has proceeded with discovery in this case as if the Court's deposition

14  limit were nonexistent.  To the contrary, the deposition limit is an order of the Court

15  to which Mattel must make a diligent, good faith effort to adhere.  Mattel has failed

16  to do so and its request for more depositions therefore should be denied.  *See*

17  *Zivkovic*, 302 F.3d at 1087, quoting *Johnson*, 975 F.2d at 609 ("If the party seeking

18  the modification 'was not diligent, the inquiry should end' and the motion to modify

19  should not be granted.").

20       2.   **Mattel Has Failed to Make a Particularized Showing as to**

21             **Why It Needs Its Requested Depositions.**

22       By its motion, Mattel essentially seeks to depose almost every non-Mattel

23  employee or witness who has been identified as potentially having some knowledge

24  of relevant information in this case.  However, "[t]he mere fact that many individuals

25  may have discoverable information does not necessarily entitle a party to depose

26  each such individual."  *Newell*, 2007 WL 3166757, at *1, quoting *Dixon v.*

27  *Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996).

28

---

1    Rather, Mattel must make a particularized showing that each deposition it has

2  taken and wants to take is necessary (e.g., that the information sought in the

3  deposition is relevant, not duplicative of other discovery, and not available through

4  other sources). *See* Fed. R. Civ. P. 26(b)(2)(C); *Newell*, 2007 WL 3166757, at *1.

5  Given that Mattel waited until three weeks before the close of Phase 1 discovery to

6  have its motion heard, the Court also should more closely scrutinize Mattel's

7  assertion of need with respect to each Phase 1 witness since there would be little time

8  left in which to conduct any additional Phase 1 depositions.

9    Mattel's argument is essentially that it needs more depositions because there

10  are many more than 24 potential witnesses with knowledge of relevant facts.

11  However, "[t]he number of potential witnesses does not justify deposing every one."

12  *At Home*, 2005 WL 289976, at *3. Moreover, this argument is the same argument

13  that Mattel unsuccessfully advanced at the February 2007 Scheduling Conference in

14  support of its proposed 40 non-expert depositions and unlimited Rule 30(b)(6)

15  depositions. (Park Decl., Ex. 1 (2/12/07 Sched. Conf.) at 10:9-20 (arguing that at

16  least "some 70" fact witnesses had been identified).) The Court was not persuaded

17  by Mattel's argument and rejected Mattel's proposal as "disconcerting." (*Id.* at 8:19-

18  25 & 22:19-22.) Far more disconcerting is Mattel's proposal, which would bring its

19  total non-expert depositions to more than 70, including two more Rule 30(b)(6)

20  depositions on 160 topics.

21    Mattel fails to make the particularized showing necessary to justify its

22  troubling proposal. With respect to witnesses Mattel has already deposed, Mattel

23  does nothing more than make a conclusory assertion that it "has had good cause for

24  each of those depositions" and then briefly identify each of those deponents. (Mot.

25  at 5-6.) Such a cursory discussion hardly constitutes the particularized showing that

26  Mattel is required to make. Moreover, it is clear that Mattel cannot make a

27  particularized showing for each witness it has already deposed because, as discussed

28

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT        2

PAGE        92

1    above, Mattel has taken numerous depositions that either are duplicative of other

2    discovery or do not bear meaningfully on the issues to be tried in this case.

3          As to the additional witnesses Mattel wants to depose, Mattel's showing of

4    necessity is also lacking.  Mattel seeks leave to depose at least 37 additional Phase 1

5    witnesses and 13 additional Phase 2 witnesses, although Mattel indicates that these

6    numbers represent the minimum numbers of additional depositions that it seeks.

7    (Mot. at 13-14.)  Mattel, however, does not demonstrate how each witness's

8    knowledge is relevant to the specific issues in this case, why such information is not

9    duplicative or cumulative, or why Mattel cannot obtain such information from other

10   sources or through less burdensome means. For example, Mattel identifies three

11   MGA HK employees that it seeks to depose—Stephen Lee, Cecilia Kwok and Eric

12   Yip—but fails to show why their testimony would not be duplicative of each other or

13   of the Rule 30(b)(6) deposition notice that Mattel served on MGA HK.

14         Similarly, Mattel asserts that it needs two additional Rule 30(b)(6) depositions

15   covering 160 Phase 2 topics but fails to adequately demonstrate that each of the

16   proposed topics is relevant to Phase 2 issues and is not duplicative of other discovery.

17   For example, although Mattel claims that the proposed topics address only Phase 2

18   issues, several of the topics specifically relate to Bratz. (*See, e.g.,* Mot., Ex. A at 11-

19   12 (Topics Nos. 38-46); Ex. B at 23-24 (Topics Nos. 85-87).)  Mattel's proposed

20   Rule 30(b)(6) topics also include topics directed at the factual bases of Defendants'

21   affirmative defenses.  (Mot. Ex. A at 11 (Topic No. 37); Ex. B at 24 (Topic No. 88).)

22   These topics are plainly duplicative of the "supplemental" interrogatory regarding

23   affirmative defenses that the Court recently allowed.  Moreover, Mattel has stated its

24   belief that Rule 30(b)(6) depositions "are far inferior" to a contention interrogatory

25   for gathering full and complete information about affirmative defenses.  (Park Decl.,

26   Ex. 4 at 9.)  Thus, Mattel does not need depositions on these topics.

27         Moreover, it is clear from Mattel's list of witnesses that Mattel's primary

28   objective in seeking to additional depositions is to harass and intimidate the MGA

1   Defendants through these non-party witnesses. For example, Mattel claims that it

2   wants to depose Moss Adams, Mr. Larian's tax accounting firm, and Wachovia, one

3   of MGA's lenders, because they allegedly have knowledge of MGA's profits, net

4   worth, and payments to Mr. Larian. (Mot. at 11.) These non-parties, however, are

5   hardly material witnesses and have no meaningful, non-duplicative information to

6   provide. Indeed, whatever relevant information about MGA's finances that these

7   non-parties might have would have come from the MGA Defendants, from whom

8   Mattel has already sought and obtained discovery on these subjects. (*See, e.g.,*

9   Proctor Decl., Ex. 38 at 9 (identifying as topics for Mattel's Rule 30(b)(6) deposition

10  of MGA "YOUR revenues and profits from BRATZ..." and "YOUR net worth"); Ex.

11  39 at 8 (identifying as topic for Mattel's Rule 30(b)(6) deposition of MGA

12  "[p]ayments of money ... that YOU have made to ...Isaac Larian..."). Such

13  discovery obtained by Mattel has included numerous financial documents and

14  information, as well as the depositions of Mr. Larian and a MGA Rule 30(b)(6)

15  witness designated to testify about MGA's Bratz-related revenue and MGA's net

16  worth. (Park Decl., ¶ 4.)

17       Mattel also contends that it needs to depose several of MGA's current and

18  former attorneys regarding MGA's patent and trademark applications and copyright

19  registrations. (Mot. at 10.) Mattel, however, has already sought and obtained

20  deposition testimony and other information regarding these subjects from the MGA

21  Defendants. (Proctor Decl., Ex. 38 at 10 (identifying as topic for Mattel's Rule

22  30(b)(6) deposition of MGA "[t]he applications for registration and the registrations

23  for copyright, patent, trademark or any other right that REFER OR RELATE TO

24  BRATZ or BRATZ DESIGNS sought, made or obtained by, for or on behalf of

25  YOU or BRYANT, including without limitation COMMUNICATIONS pertaining

26  thereto").) Indeed, MGA already produced two Rule 30(b)(6) witnesses on these

27  subjects for two days of deposition by Mattel and has even agreed to produce one of

28  its Rule 30(b)(6) witnesses for some follow-up examination. (Park Decl., ¶¶ 2 & 3.)

EXHIBIT 2

PAGE 94

1  Given the ample discovery that Mattel has already taken on issues such as MGA's
2  profits and its applications for intellectual property protections, Mattel does not
3  "need" to depose witnesses such as Moss Adams, Wachovia or MGA's current and
4  former attorneys.

5      Having failed to make a particularized showing of need with respect to each
6  witness that Mattel has deposed and seeks leave to depose, Mattel's motion for
7  additional depositions is unwarranted and must be denied.

8      3.  **Granting Mattel Additional Depositions Would Unduly Burden and Prejudice the MGA Defendants and the Various Non-Party Witnesses.**

10     Glaringly absent from Mattel's motion is any discussion of the negative
11  impact that its requested expansion of the Court's deposition limit would have on the
12  other parties, the non-party witnesses, as well as the Court's schedule.  It is not
13  surprising, however, that Mattel would want to avoid discussing this issue because
14  the impact of allowing Mattel to have all, or even a small portion, of the additional
15  depositions it seeks would be severe.

16     Because Mattel waited until late November to file its motion, only three weeks
17  of Phase 1 discovery will remain when Mattel's motion is heard.  Mattel, however,
18  seeks at last fifty additional deponents, including at least 37 Phase 1 witnesses and
19  two more Rule 30(b)(6) depositions on 160 topics.  Conservatively assuming that
20  Mattel could cover one witness or five Rule 30(b)(6) topics per day, *it would take*
21  *nearly four months to complete all of the depositions Mattel has requested.*  It
22  would be impossible under the current schedule for the MGA Defendants and their
23  respective counsel to finish taking their Phase 1 discovery, complete their responses
24  to Mattel's continual stream of new discovery requests, and prepare for and
25  participate in Mattel's additional depositions.  Similarly, it would be unreasonable to
26  impose such a compressed schedule on the non-party witnesses.

27     Modifying the current schedule or allowing only some additional Phase 2
28  depositions is not the solution; denying Mattel's motion in its entirety is the solution.

1  After litigating this case for nearly four years, Mattel should not be allowed to extend
2  the schedule at the eleventh hour so that it may engage in essentially limitless
3  discovery. Mattel has had ample opportunity to take discovery regarding the issues
4  in this case. In addition to its exhausted allotment of interrogatories and depositions,
5  Mattel has served thousands of requests for production and thousands of requests for
6  admissions. The time has come for Mattel to wrap up its discovery, not continue to
7  ramp it up.

8       Even granting Mattel only additional Phase 2 witnesses would also unduly
9  burden the MGA Defendants. Because Phase 2 discovery is proceeding concurrently
10 with the Phase 1 litigation, if Mattel obtains additional Phase 2 depositions, counter-
11 defendants would likely have to interrupt their preparation of Phase 1 summary
12 judgment motions and trial preparation to prepare for and participate in these
13 additional Phase 2 depositions. Moreover, Mattel's requested Phase 2 depositions
14 include Rule 30(b)(6) depositions of MGA and MGA Mexico covering 160 topics.
15 The amount of time and resources required to identify witnesses on each of these 160
16 topics and prepare for and participate in the depositions of each of those witnesses
17 would be enormous. The MGA Defendants should not be forced to disrupt their case
18 preparation because of Mattel's failure to abide by the Court's discovery limits.

19      Because Mattel's request for scores of additional depositions would unduly
20 burden and unfairly prejudice counter-defendants and the non-party witnesses, the
21 Court should deny Mattel's motion.

22      4.   **Mattel's Improper Manipulation of Counter-Defendants'**
23           **Deposition Count Warrants Denial of Mattel's Motion.**

24      Mattel's recent attempt to deny counter-defendants even the 24 depositions
25 allowed under the Court's current order exemplifies Mattel's abusive discovery
26 tactics and underscores the importance of denying Mattel's request for additional
27 discovery.

28

EXHIBIT  2

PAGE  96

1    Until December 20, 2007, one of the few undisputed issues in this case was
2  how to count depositions.  Each separately noticed deposition of a witness counted
3  as one deposition.  A deposition noticed under Rule 30(b)(6) also counted as one
4  deposition, regardless of the number of designated witnesses who testified.  This
5  approach is consistent with how courts count Rule 30(b)(6) witnesses.  *See Detoy v.*
6  *City & County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) ("Nor should
7  one witness count as two depositions for purposes of the Local Rules' limit on the
8  number of depositions to be taken by each party.  Such a rule would encourage
9  defending counsel to take a hard line and force an opponent to expend its deposition
10  allotment.").  Under this approved methodology, Mattel has taken 21 depositions to
11  date and counter-defendants have taken 8 depositions to date.
12    On December 20, however, after MGA had been trying for weeks to secure
13  deposition dates for numerous Mattel witnesses (Park Decl., Exs. 2, 16, 18 & 19),
14  Mattel took the position for the first time that if a Rule 30(b)(6) witness testified
15  outside the scope of his designation at his deposition, that deposition would count as
16  two depositions.  (Park Decl., Ex. 17.)  Under this methodology, Mattel argued that
17  counter-defendants could depose only one of the ten witnesses that counter-
18  defendants had asked to depose.  (*Id.*)  Mattel has now objected to producing any of
19  the ten witnesses for deposition until MGA identifies which *one* it wants.  (*Id.* ¶ 24.)
20    Not only is Mattel's new position contrary to the law, it also exemplifies the
21  abusive tactics that Mattel has employed in this litigation.  It is clear that Mattel has
22  taken this position at the eleventh hour to put counter-defendants in the same
23  predicament in which Mattel currently sits with respect to the deposition limit in
24  order to increase Mattel's chances of obtaining additional depositions.  In effect,
25  Mattel is trying to extort additional depositions from counter-defendants.  Had
26  Mattel genuinely believed that its methodology was the appropriate way to count
27  depositions, it would have stopped taking depositions in early October when it
28  reached 24 depositions to avoid being in contempt of the Court's Rule 16(b)

- 16 -

EXHIBIT ___2___

PAGE ___97___

1   Scheduling Order. (Park Decl., ¶ 24.) The Court should not condone Mattel's

2   improper tactics, which are solely intended to unfairly prejudice counter-defendants.

3        Accordingly, the Court should deny Mattel's request for additional depositions.

4   **C.   Mattel Is Not Entitled to Any More Interrogatories.**

5        The same principles that weigh in favor of denying Mattel's request for

6   additional depositions also support denial of Mattel's request for 19 additional

7   interrogatories. Specifically, Mattel is not entitled to additional interrogatories for

8   each of the following reasons: Mattel did not act diligently to try to comply with the

9   Court's interrogatory limit; Mattel has not made a particularized showing of

10   necessity with respect to each of its prior interrogatories and proposed interrogatories;

11   and Mattel's request for additional interrogatories would unduly burden and

12   prejudice the MGA Defendants.

13        1.   **Mattel Did Not Make a Good Faith, Diligent Attempt to**

14        **Comply with the Court's Interrogatory Limit.**

15        In arguing to exceed the 50-interrogatory limit, Mattel conveniently omits the

16   fact that it was Mattel that originally proposed that limit to cover all issues in the

17   case: "Mattel proposes that discovery should be taken on all issues, including

18   liability, damages and affirmatives defenses … Mattel further proposes that each

19   side be permitted to propound 50 interrogatories." (Park Decl., Ex. 3 (Joint Rule

20   26(f) Report) at 5.) Because the Court adopted Mattel's proposal as part of its Rule

21   16(b) Scheduling Order, Mattel is obligated to act diligently to comply with that

22   interrogatory limit. *See Jackson*, 186 F.R.D. at 608. Mattel has not done so.

23        Tellingly, Mattel offers no explanation as to why it was not able to stay within

24   the limit. Since Mattel was the party that proposed fifty interrogatories, Mattel

25   should have had no problem complying with the limit. All of the issues for which

26   Mattel now seeks leave to serve additional interrogatories were known to Mattel

27   when the limit was imposed and therefore could have been included in Mattel's

28   interrogatories. In short, nothing prevented Mattel from including some or all of its

- 17 -
MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT _____ 2

PAGE _____ 98

1  proposed additional interrogatories among its fifty allotted interrogatories.

2  Nevertheless, rather than use any of its allotted interrogatories to address these issues,

3  Mattel used numerous interrogatories to address issues that were already the subject

4  of prior interrogatories or other discovery requests.

5      For example, Mattel served an interrogatory asking MGA to identify each

6  Bratz product sold and for each product, the number of units sold, the revenue

7  received, the costs incurred, and the gross and net profits. (Proctor Decl., Ex. 67 at 7

8  (Interrogatory No. 45).) Mattel, however, requested precisely the same information

9  in its Second Set of Document Requests to MGA. (Park Decl., Ex. 12 at 7-8

10  (Requests Nos. 3-7).)

11      In June 2007, Mattel served three interrogatories asking MGA to identify

12  every "BRATZ INVENTION" created prior June 1, 2001. (Proctor Decl., Ex. 13 at

13  8-9 (Interrogatories Nos. 12-14). Two years earlier though, Mattel had served an

14  interrogatory covering the same issue: "IDENTIFY, fully and separately, each and

15  every EMBODIMENT of BRATZ prior to December 31, 2001." (Proctor Decl., Ex.

16  10 at 7 (Interrogatory No. 7).) Mattel's use of its allotted interrogatories to duplicate

17  other discovery requests plainly demonstrates that Mattel has not acted diligently to

18  comply with the interrogatory limit.

19      In addition, Mattel did not act diligently in filing its motion for additional

20  interrogatories because Mattel clearly could have raised this issue earlier. At the

21  time of the February 2007 Scheduling Conference, Mattel knew that it had used up

22  24 interrogatories (which the Discovery Master later held were actually 26

23  interrogatories) and was well aware of all the issues for which Mattel now seeks

24  additional interrogatories. Thus, if Mattel believed it needed to address all of these

25  issues in its interrogatories, Mattel necessarily knew that fifty interrogatories would

26  not be enough at the time it proposed that limit to the Court.

27      Mattel also could have raised this issue in conjunction with its motion for

28  leave to file a "supplemental" interrogatory regarding affirmative defenses. By its

EXHIBIT _____ 2

PAGE _____ 99

1 | own count, Mattel had used 41 of its allotted interrogatories by the time it filed its

2 | motion in September 2007. (Park Decl., Ex. 4 at 7.) Yet, other than the

3 | "supplemental" interrogatory, Mattel did not mention any need or desire to go

4 | beyond the fifty-interrogatory limit. As discussed above with respect to Mattel's

5 | request for additional depositions, Mattel also inexplicably waited three weeks to file

6 | its motion for additional discovery after informing the Court at the October 31, 2007

7 | Status Conference that it would be filing the motion shortly.

8 |     Because Mattel was not diligent with regard to the interrogatory limit, "'the

9 | inquiry should end' and [Mattel's] motion to modify [the interrogatory limit] should

10 | not be granted." *Zivkovic*, 302 F.3d at 1087, quoting *Johnson*, 975 F.2d at 609.

11 |         **2.    Mattel Has Not Made a Particularized Showing of Necessity
     with Respect to Each of Its Interrogatories.**

13 |     As with its request for more depositions, Mattel's request for additional

14 | interrogatories must be supported by a "particularized showing of why the discovery

15 | is necessary." *Archer Daniels*, 187 F.R.D. at 586. That showing must be made for

16 | each interrogatory that Mattel seeks leave to serve and for each interrogatory that

17 | Mattel has already taken. *See Newell*, 2007 WL 3166757, at *1. Mattel, however,

18 | has failed to make the necessary showing with respect to both sets of interrogatories.

19 |     As to interrogatories it has previously served, Mattel does not assert any were

20 | necessary. Instead, Mattel simply identifies the issues to which they related. (Mot.

21 | at 17-18.) That Mattel's prior interrogatories may have generally related to relevant

22 | issues does not come close to showing that each interrogatory was necessary. Indeed,

23 | Mattel cannot make such a showing because, as discussed above, Mattel served

24 | numerous interrogatories that were duplicative of other discovery requests served by

25 | Mattel. Mattel also served interrogatories that sought irrelevant or tangential

26 | information. For example, after the MGA Defendants' current counsel substituted in,

27 | Mattel used one of its allotted interrogatories to try to find out why the MGA

28 | Defendants' prior attorneys withdrew. (Proctor Decl., Ex. 65 at 9.) If Mattel wants

EXHIBIT _2_

PAGE _100_

1  to use its allotted interrogatories to embark on such fishing expeditions rather than to
2  take relevant, non-duplicative discovery, it should not be allowed to assert later that
3  it did not have enough interrogatories to address all of the parties' claims.

4      Mattel also has not made the necessary showing with respect to the additional
5  interrogatories it seeks leave to propound.  For example, Mattel has failed to
6  demonstrate that its proposed interrogatories are not duplicative of interrogatories
7  and other discovery requests that it previously served.  Proposed Interrogatories Nos.
8  68 and 69 request the MGA Defendants to identify all payments by MGA to former
9  Mattel employees. (Mot., Ex. C at 17.)  Mattel, however, previously served a
10 document request covering the same information: "All DOCUMENTS REFERRING
11 OR RELATING TO any bonuses, monetary incentives or payments other than as
12 part of base salary received by any of the FORMER MATTEL EMPLOYEES while
13 employed by YOU, including without limitation all DOCUMENTS REFERRING
14 OR RELATING TO the reasons therefor."  (Park Decl., Ex. 13 at Request 74.)  Even
15 assuming such information were relevant, it is not necessary to request the same
16 information in both a document request and two interrogatories.  Because Mattel has
17 not shown the requisite need with respect to the interrogatories it has served and
18 seeks leave to serve, Mattel's request for additional interrogatories should be denied.

19          **3.    Mattel's Proposed Interrogatories Are Overly Broad and
20                 Would Impose an Undue Burden on Counter-Defendants.**

21      The Court also should deny Mattel's request for additional interrogatories
22 because Mattel's proposed interrogatories are extremely overbroad and would
23 require the MGA Defendants to incur substantial burden and expense in responding
24 to them.  Many of Mattel's proposed interrogatories are not properly limited in time
25 or scope.  Proposed Interrogatory No. 56 exemplifies Mattel's overly expansive
26 interrogatories.  That interrogatory requests the identity of "all MATTEL
27 DOCUMENTS that MGA has obtained, received, reviewed, copied, reproduced,
28 transmitted, requested or used at any time since January 1, 1999." (Mot. Ex. C at 14.)

- 20 -
MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY

EXHIBIT       2

PAGE ____ 101

1 Mattel broadly defines "MATTEL DOCUMENTS" to include "any document[s] …
2 obtained … from MATTEL by any PERSON." (*Id.* at 7.) As written, proposed
3 Interrogatory No. 56 demands that MGA search through every paper and electronic
4 file over the past nine years for anything that might appear to relate to Mattel and
5 then try to trace the transfer history of each of those documents to determine whether
6 it came from anyone at Mattel. Such an undertaking would be enormous and would
7 impose a burden and expense that far outweighs any probative value of the
8 information sought. (*See also* Mot., Ex. C at 15 (Interrogatory No. 57: "IDENTIFY
9 all DOCUMENTS that REFER OR RELATE TO any MATTEL product or plan that
10 any of the FORMER MATTEL EMPLOYEES provided, transmitted or disclosed to,
11 shared with or used on behalf of MGA at any time since January 1, 1999…") & 16
12 (Proposed Interrogatory No. 64: "…state all facts which support YOUR claims
13 against Mattel in THIS ACTION…").)

14      In addition, as with Mattel's request for additional depositions, granting
15 Mattel's request for 19 more interrogatories would unfairly prejudice counter-
16 defendants by rewarding Mattel for disregarding the Court's discovery limits. While
17 counter-defendants have diligently and in good faith worked to stay within the
18 Court's discovery limits, Mattel has blown through both the limits as if they did not
19 exist. Mattel's conduct with regard to the interrogatories should be particularly
20 disconcerting to the Court since it was Mattel that proposed the fifty-interrogatory
21 limit. Counter-defendants should not have to incur the added burden and expense of
22 responding to additional interrogatories that were only "necessitated" by Mattel's
23 unwillingness to comply with the court-ordered discovery limits.

24      Accordingly, the Court should deny Mattel's request for more interrogatories.

25  D.   **The Court Should Deny Mattel's Motion in View of Mattel's**
26       **Unwillingness to Comply with Its Own Discovery Obligations.**

27      Mattel also should not be allowed additional depositions or interrogatories
28 because Mattel has failed to fulfill its discovery obligations to counter-defendants in

- 21 -

EXHIBIT     2

PAGE     102

1  a reasonable or timely manner.  For months, the MGA Defendants have tried to
2  schedule depositions of numerous Mattel employees and non-parties represented by
3  Mattel's counsel before the end of Phase 1 discovery.  (Park Decl., Exs. 2, 16 & 19.)
4  Mattel has responded by either completely refusing to schedule the depositions or by
5  unreasonably delaying in scheduling witnesses.  (*Id.*, Exs. 2, 16, 17 & 19.)  For
6  example, although Mattel identified its CEO Robert Eckert as having personal
7  knowledge of "Mattel's business operations and the development and ownership of
8  intellectual property at issue" (Proctor Decl., Ex. 19 at 6), Mattel has refused to
9  permit counter-defendants to depose Mr. Eckert for any meaningful length of time.

10       Mattel has taken a similar approach with Rule 30(b)(6) designees, refusing to
11  designate witnesses or trying to limit improperly the depositions of designated
12  witnesses.  (Park Decl., Ex. 2 & 16.)

13       Moreover, Mattel has refused even to provide dates for the depositions of any
14  of the following ten witnesses based on their recently concocted counting scheme
15  that is designed to falsely inflate the number of depositions that counter-defendants
16  have taken:  Milt Zablow (former Mattel head of sales), Theresa Newcomb (former
17  Mattel corporate staffing employee), Roger Simoneau (Mattel investigator who
18  investigated Bryant in 2002), Evelyn Viohl (Mattel Vice President of Product Design
19  For Girls Dolls Plush Group), Hoi Hoffman-Briggs (pattern maker in Mattel's Collector
20  Group), Jean Gomez (Mattel Brand Manager of My Scene), Kevin Farr (Mattel Chief
21  Financial Officer), Tim Kilpin (Mattel Senior Vice President of Girls Marketing), Sheila
22  Kyaw (employee in Mattel Design Department) and Maureen Tafoya (Mattel Human
23  Resources Department, Manager of Corporate Staffing).  (Park Decl. ¶ 24.)  It is
24  apparent that Mattel's refusal to cooperate in the scheduling of depositions is
25  designed to run out the clock on Phase 1 discovery.

26       The same is true of Mattel's motion for additional discovery, which seeks to
27  depose at least another 37 Phase 1 witnesses.  If Mattel's motion were granted,
28  Mattel would be able to use the additional depositions to disrupt and delay counter-

1   defendants' efforts to complete Phase 1 discovery on time. Because Mattel's

2   discovery practices have been abusive and improper, Mattel is not entitled to the vast

3   amounts of additional discovery it now seeks.

4       **E.**  **Mattel Should Not Be Allowed to Circumvent the Discovery Master**
5           **by Having this Court Rule on the Validity of Counter-Defendants'**
        **Responses and Objections to Mattel's Interrogatories.**

6        In addition to the 19 interrogatories that Mattel seeks leave to serve, Mattel

7   has also requested that the Court order counter-defendants to respond to numerous

8   interrogatories previously served by Mattel that counter-defendants have objected to

9   as exceeding the fifty-interrogatory limit. Mattel's request, however, is improper

10  because the Discovery Master must decide such issues in the first instance and, in

11  fact, Mattel has already filed motions regarding counter-defendants' interrogatory

12  objections and responses with the Discovery Master. Accordingly, there is no

13  reason for the Court to address this issue.

14       When Mattel filed its motion for additional discovery, the parties were still

15  meeting and conferring regarding whether and to what extent counter-defendants

16  would supplement their responses to Mattel's interrogatories. (Proctor Decl., Ex. 76

17  at 1; Park Decl., Ex. 14.) Indeed, after the filing of Mattel's motion, Mr. Bryant

18  agreed to supplement his responses and the MGA Defendants served supplemental

19  interrogatory responses. (Park Decl., Exs. 14 & 15.) Recently, Mattel filed with the

20  Discovery Master two motions to compel counter-defendants' further responses to

21  these interrogatories. (Park Decl., ¶ 26.) In short, Mattel has now brought the same

22  discovery issue—whether counter-defendants must respond further to Mattel's

23  previously served interrogatories—before both the Discovery Master and the Court

24  in the hope that at least one judge will find in its favor.

25       Mattel's approach violates the Discovery Master Order, which explicitly

26  provides that "[a]ny and all discovery motions and other discovery disputes in [this]

27  action shall be decided by a master ("Discovery Master") ...." (Docket Item 107

28  (December 6, 2006 Stipulation and Order), ¶ 1.) In an attempt to "minimize the

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT _____2_____

PAGE _____104_____

1  burden of discovery disputes upon the Court," the Court appointed the Honorable
2  Edward Infante to be the Discovery Master and laid out clear steps for bringing a
3  motion before him. (*Id.*, ¶¶ 2, 5.)  In addition, the Court granted the parties the right
4  to object or move to modify orders issued by the Discovery Master under Fed. R.
5  Civ. P. 53. (*See Id.*, ¶ 6 ("The Discovery Master's orders resolving discovery
6  disputes, reports, or recommendations pursuant to Rule 53(e) or (f) shall be treated
7  as rulings made by a Magistrate Judge of the United States District Court.").)  Thus,
8  whether counter-defendants must respond further to Mattel's interrogatories must be
9  decided by the Discovery Master in the first instance.  This Court should only
10  consider the substance of that dispute if and only if a party objects to or seeks
11  modification of the Discovery Master's ruling.
12     That Mattel wants to avoid Judge Infante is not surprising since Judge Infante
13  previously held that other interrogatories served by Mattel exceeded the fifty-
14  interrogatory limit because they were "compound," contained multiple "discrete
15  subparts," and covered "multiple legal theories." (September 5, 2007 Order at 7-9
16  (granting defendant's joint motion for protective order and denying Mattel's motion
17  to compel interrogatory responses).)  An adverse ruling, however, does not entitle
18  Mattel to circumvent the procedures set forth in the Discovery Master Order or to
19  pursue motions regarding the same issue before both the Discovery Master and the
20  Court.  Accordingly, the Court should deny Mattel's request to compel counter-
21  defendants to respond further to any of its previously served interrogatories.
22
23
24
25
26
27
28

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADD'L DISCOVERY

EXHIBIT   2

PAGE   105

IV.    **CONCLUSION**

For the foregoing reasons, the MGA Defendants respectfully request that the Court deny Mattel's motion for additional discovery in its entirety.

DATED:  December 24, 2007

> SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
>
>
> By:  /s/ Thomas J. Nolan
> _____
>      Thomas J. Nolan
>
> Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

MGA DEFENDANTS' OPP. TO MATTEL'S MOTION FOR LEAVE TO TAKE ADDL DISCOVERY

EXHIBIT    2

106

# EXHIBIT 3

Case 2:04-cv-09049-DOC-RNB   Document 3291-3   Filed 04/25/08   Page 32 of 84   Page ID
#:55444
Case 2:04-cv-09049-SGL-RNB   Document 1504   Filed 01/07/2008   Page 1 of 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

| | |
|---|---|
| Case No. | CV 04-09049 SGL(RNBx) |
| Title: | CARTER BRYANT -v- MATTEL, INC. |
| | AND CONSOLIDATED ACTIONS |

Date: January 7, 2008

===============================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes
Courtroom Deputy Clerk

Theresa Lanza
Court Reporter

ATTORNEYS PRESENT FOR CARTER
BRYANT:  **Christa Martine Anderson**

ATTORNEYS PRESENT FOR MATTEL:
**John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:
**Thomas J. Nolan**
**Carl A. Roth**
**Anna Park**

ATTORNEY PRESENT FOR CARLOS
GUSTAVO MACHADO GOMEZ:
**Mark E. Overland**

ATTORNEY PRESENT FOR NON-
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND
VERONICA MARLOW: **Larry W.**
**McFarland**

ATTORNEY PRESENT FOR NON-PARTY
STERN & GOLDBERG: **Kien C. Tiet**

ATTORNEY PRESENT FOR NON-PARTY
KAYE SCHOLER, LLP: **Bryant S. Delgadillo**

PROCEEDINGS:   **ORDER GRANTING IN PART AND DENYING IN PART**
**MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL**
**DISCOVERY (DOCKET #1134)**

**ORDER GRANTING MOTION TO ENFORCE THE COURT'S**
**ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR**
**SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90
CIVIL -- GEN

1

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____3_____

PAGE _____107_____

## ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

## ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

## MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)

This motion is **GRANTED IN PART**. Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT ___3___

PAGE ___108___

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel. Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13). Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes. Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant. The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**. The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language. Machado must file an affidavit that complies with the

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____3_____

PAGE _____109_____

Case 2:04-cv-09049-DOC-RNB   Document 3291-3   Filed 04/25/08   Page 35 of 84   Page ID
#:55447
Case 2:04-cv-09049-SGL-RNB   Document 1504   Filed 01/07/2008   Page 4 of 5

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation. The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

## MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**. The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty. Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him. See Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard prior to the appointment of a special master). Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case. Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

## DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90
CIVIL -- GEN

4

EXHIBIT _____3_____

PAGE _____110_____

forth in their moving papers.  The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl).  To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008.  However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____ 3 _____

PAGE _____ · /// _____

# EXHIBIT 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

| | | |
|---|---|---|
| Case No. | CV 04-09049 SGL(RNBx) | Date: February 4, 2008 |
| Title: | CARTER BRYANT -v- MATTEL, INC. | |
| | AND CONSOLIDATED ACTIONS | |

========================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                              Theresa Lanza
Courtroom Deputy Clerk                  Court Reporter

**ATTORNEYS PRESENT FOR CARTER**          **ATTORNEYS PRESENT FOR MATTEL:**
**BRYANT:**

Michael Page                              John Quinn
                                          Jon D. Corey

**ATTORNEYS PRESENT FOR MGA:**            **ATTORNEY PRESENT FOR CARLOS**
                                          **GUSTAVO MACHADO GOMEZ:**
Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

**ATTORNEYS PRESENT FOR THIRD-**
**PARTY WITNESSES**

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo


Alexander H. Cote


MINUTES FORM 90
CIVIL -- GEN

1

Initials of Deputy Clerk ___jh ___
Time: 1/45

EXHIBIT _____4_____

PAGE _____112_____

Case 2:04-cv-09049-DOC-RNB   Document 3291-3   Filed 04/25/08   Page 39 of 84   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1931   Filed 02/04/2008   Page 2 of 7
#:53451

PROCEEDINGS:

### HEARING ON EX PARTE APPLICATIONS:

**1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods**

**1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.**

**1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing**

**1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow**

**1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items**

**1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel**

### ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

### EX PARTE APPLICATIONS REGARDING DEPOSITIONS (DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE

These applications are DENIED IN PART, subject to the following rulings:

(1)     The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)     The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT ___4___

PAGE ___113___

McFarland, who represents certain third-party witnesses. Mattel submits that Mr. McFarland has been deliberately evading service of a notice of deposition on him and his clients – serious allegations when made by an officer of the Court against another officer of the Court. Accordingly, Mr. McFarland is **ORDERED TO SHOW CAUSE** why he and his clients should not be ordered to appear for deposition. A written response to this OSC must be filed no later than February 11, 2008. Other parties may file written replies no later than February 19, 2008. The Court will hear the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-referenced Court.

(3)   Phase 1 depositions that have been scheduled past the discovery deadline for the convenience of the witnesses or pursuant to the stipulation of the parties and/or witnesses may proceed as scheduled.

(4)   All discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)   As previously ordered and reaffirmed by this Court, all discovery matters shall be presented in the first instance to the Discovery Master. The fact that the Discovery Master's ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure. For instance, motions to compel, motions to quash, or motions challenging service as to existing discovery requests shall be brought before the Discovery Master. So, too, must objections based on burdensomeness, relevancy, or privilege. In general, and on the matters touched upon herein, the Court expresses no opinion as to these issues, and instead leaves those issues to the Discovery Master to decide in the first instance.

(6)   To the extent that certain challenged depositions are within the scope of the Court's January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and Phase 2), said deposition may proceed subject to the challenges set forth in the previous paragraph. To the extent that the depositions are related to Phase 2, they are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)   The parties' arguments require the Court to resolve an internal inconsistency in the Court's January 7, 2008, Order. The Court's Order was meant to grant all parts of Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the relief sought as to the deposition of Carter Bryant. The Court amends its 01.07.08 Order as follows:

Delete: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO

EXHIBIT ____4____
PAGE ____114____

Case 2:04-cv-09049-DOC-RNB   Document 3291-3   Filed 04/25/08   Page 41 of 84   Page ID
#:55453
Case 2:04-cv-09049-SGL-RNB   Document 1931   Filed 02/04/2008   Page 4 of 7

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11), relating to the trade secret and RICO claims (set forth in the moving papers at 13), and relating to document preservation (set forth in the moving papers at 14 (Joe Tiongco and Daphne Gronich)).>

(8)   The Court's January 7, 2008, Order granted leave to take additional discovery over and above the previously allocated 24 depositions per side. Nevertheless, as to all other depositions, how to "count" the previously allocated depositions is left to the discretion of the Discovery Master.

(9)   At the hearing, counsel for Christensen, Glaser requested that the Court clarify that its January 7, 2008, ruling granted leave to depose it on only one issue. That is not the case, and the request is DENIED. Mattel has been granted relief from the numerical limitations that previously restricted its ability to depose those individuals and entities addressed by the Court's January 7, 2008, Order, including its ability to depose Christensen, Glaser. Unless otherwise restricted by the Discovery Master upon proper presentation of the issue to him, Mattel may depose Christensen, Glaser on any relevant, non-privileged matter.

### MACHADO GOMEZ'S EX PARTE APPLICATION RE
### JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED. As noted above, Phase 2 discovery is STAYED until further order of the Court. The Court will address Phase 2 discovery, motions, pretrial, and trial dates after the conclusion of Phase 1 of the trial.

### MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF
### ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED. This matter must be addressed in the first instance by the Discovery Master.

### MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS
### COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART. Counsel for MGA shall employ its best efforts to arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in the

MINUTES FORM 90
CIVIL -- GEN                           4

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT ____4_____

PAGE ____115_____

Case 2:04-cv-09049-DOC-RNB   Document 3291-3   Filed 04/25/08   Page 42 of 84   Page ID
#:55454
Case 2:04-cv-09049-SGL-RNB   Document 1931   Filed 02/04/2008   Page 5 of 7

arrangements for inspection in both Hong Kong and the PRC.   Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports.  Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

## MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART.  The Court sets the motion for hearing on February 11, 2008.  Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008.  The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

**IT IS SO ORDERED.**

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____4_____
PAGE _____116_____

## NOTICE PARTY SERVICE LIST

Case No. __CV 04-09049 SGL(RNBx)__    Case Title __Carter Bryant v. Mattel, Inc.__

Title of Document __Minute Order of February 4, 2008__

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service - Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

✓ **ADD NEW NOTICE PARTY**
(if sending by fax, mailing address must also be provided)

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103
Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |

Initials of Deputy Clerk __jh__

EXHIBIT _____4_____

PAGE _____117_____

# NOTICE PARTY SERVICE LIST

Case No. __CV 04-09049 SGL(RNBx)__   Case Title __Carter Bryant v. Mattel, Inc.__

Title of Document __Minute Order of February 4, 2008__

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | *ADD NEW NOTICE PARTY* (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (include suite or floor): Two Embarcadero Center, Suite 1500, San Francisco, CA 94111

*E-mail:

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |

Initials of Deputy Clerk __jh__

EXHIBIT _____ 4

PAGE _____ 118

# EXHIBIT 5

**CERTIFIED COPY**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
         PLAINTIFF, )
)      CASE NO.
    V. )      CV 04-9040 SGL (RNBX)
)
MATTEL, INC., A DELAWARE )      CONSOLIDATED WITH
CORPORATION, )      CASE NO. 04-9059
)
      DEFENDANTS. )      CASE NO.  05-2727
————————————————— )
)
AND CONSOLIDATED ACTION (S). )
————————————————— )

# TELEPHONIC TRANSCRIPT OF PROCEEDINGS

# FEBRUARY 11, 2008

REPORTED BY:
ANGELA DUPRE
CSR NO. 7804
JOB NO. 08AD008

EXHIBIT _____ 5
PAGE _____ 119

**AᴳＥ**
**COURT REPORTERS**

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

1   A FEW THIS MORNING.  I'VE TAKEN A COUPLE UNDER

2   SUBMISSION.

3            I REALLY THINK THAT THERE NEEDS TO BE A

4   BETTER EFFORT WITH RESPECT TO MEETING AND

5   CONFERRING.  I AM HEREBY ORDERING THE PARTIES, IN

6   PERSON, AN IN-PERSON MEETING, TO MEET AND CONFER

7   WITH RESPECT TO ALL PENDING MOTIONS.

8            A LOT OF THESE MOTIONS GOT FILED ON THE

9   VERY LAST DAY OF DISCOVERY IN JANUARY.  THERE ARE A

10  NUMBER OF THINGS THAT ARE MOVING TARGETS, BECAUSE

11  AS WE SAW THIS MORNING, JUDGE LARSON HAS STAYED THE

12  DISCOVERY AS TO PHASE II, AND I BELIEVE THAT I'M

13  HEREBY ORDERING YOU, PURSUANT TO RULE 37, FEDERAL

14  RULES OF CIVIL PROCEDURE AND LOCAL RULES OF THE

15  MUNICIPAL OF CALIFORNIA, TO CONDUCT AN IN-DEPTH

16  MEET AND CONFER SESSION, IN PERSON, REMAINING ALL

17  PENDING MOTIONS, AND REPORT BACK TO ME EITHER BY

18  JOINT LETTERS OR INDIVIDUAL LETTERS, THE

19  DISPOSITION OF ANY MOTION.

20           WHEN I RECEIVE THAT, I'LL BE GLAD TO GIVE

21  YOU A HEARING.  AND I'D LIKE TO KNOW CLEARLY WHAT

22  REMAINS IN ISSUE AT THAT POINT.

23           ARE THERE ANY QUESTIONS REGARDING THAT?

24      MR. KENNEDY:  NOT HERE, YOUR HONOR.

25       MR. ALGER:  YOUR HONOR, TIM ALGER, FOR MATTEL.

EXHIBIT _____5_____

PAGE _____120_____

56

1    STATE OF CALIFORNIA        )
                                    )   SS.

2    COUNTY OF LOS ANGELES    )

3

4          I,    ANGELA DUPRE   , CERTIFIED

5    SHORTHAND REPORTER, CERTIFICATE NUMBER 7804, FOR

6    THE STATE OF CALIFORNIA, HEREBY CERTIFY:

7          THE PROCEEDINGS WERE RECORDED

8    STENOGRAPHICALLY BY ME AND WERE TRANSCRIBED TO THE

9    BEST OF MY ABILITY;

10          THE FOREGOING TRANSCRIPT IS A TRUE AND

11    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

12          I FURTHER CERTIFY THAT I AM NEITHER

13    COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

14    NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

15          IN WITNESS WHEREOF, I HAVE HEREUNTO

16    SUBSCRIBED MY NAME THIS _14th_ DAY OF

17    _FEBRUARY_____, 2008.

18

19

20

21                    _____

22

23

24

25                       EXHIBIT _____5_____
                                PAGE _____121_____

59

# EXHIBIT 6

RECEIVED

SEP 0 5 2007

1  DALE M. CENDALI (admitted *pro hac vice*)
   DAVID I. HURWITZ (S.B. #174632)
2  O'MELVENY & MYERS LLP
   400 South Hope Street
3  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
4  Facsimile:   (213) 430-6407
   Email:       dhurwitz@omm.com
5
   PATRICIA GLASER (S.B. #55668)
6  CHRISTENSEN, GLASER, FINK,
   JACOBS, WEIL & SHAPIRO, LLP
7  10250 Constellation Boulevard, 19th Floor
   Los Angeles, CA  90067
8  Telephone:  (310) 553-3000
   Facsimile:   (310) 557-9815
9
   Attorneys for MGA Entertainment, Inc.
10
11          UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
12                  EASTERN DIVISION
13
14
15  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)
16          Plaintiff,
                                         **MGA ENTERTAINMENT, INC.'S**
17     v.                                **NOTICE OF DEPOSITION OF**
                                         **MATTEL, INC. PURSUANT TO**
18  MATTEL, INC., a Delaware             **FED. R. CIV. P. 30(b)(6)**
    Corporation,
19
            Defendant.
20
    CONSOLIDATED WITH
21
    MATTEL, INC. v. BRYANT and           Judge:  Hon. Stephen G. Larson
22
    MGA ENTERTAINMENT, INC. v.           Date:                 September 19, 2007
23  MATTEL, INC.                         Discovery Cut-Off:  March 3, 2008
                                         Pretrial Conference: June 2, 2008
24                                       Trial Date:           July 1, 2008
25
26
27                                       EXHIBIT _____ 6
28                                       PAGE _____ 122

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2        PLEASE TAKE NOTICE that pursuant to the provisions of Federal Rule of

3    Civil Procedure 30(b)(6), MGA Entertainment, Inc. ("MGA") will take the

4    deposition upon oral examination of Mattel, Inc. ("Mattel") regarding the matters

5    described below beginning on September 19, 2007, at 9:30 a.m., and continuing

6    from day to day thereafter, excluding weekends and holidays, or as otherwise

7    agreed by counsel, until completed.

8        The deposition will be held at the offices of O'Melveny & Myers LLP, 400

9    South Hope Street, Los Angeles, California 90071, telephone: (213) 430-6000.  The

10   deposition will be taken before a notary public or other officer authorized to

11   administer oaths and will be recorded by stenographic, sound and visual means.

12   The stenographic recordation method may provide for the instant visual display of

13   the testimony at deposition.  MATTEL shall designate one or more officers,

14   directors, managing agents or other PERSONS who consent to testify on

15   MATTEL's behalf, who shall testify as to matters known or reasonably available to

16   MATTEL relating to the topics listed in Attachment A.

17

18   Dated:  September 5, 2007

19                                          O'MELVENY & MYERS LLP

20

21                                          By

22                                            David Hurwitz
                                            Attorneys for Plaintiff MGA
23                                          Entertainment, Inc.

24

25

26

27                                          EXHIBIT _____ 6

28                                          PAGE _____ 123

                                            MGA'S 30(b)(6) DEPOSITION NOTICE
                                            CASE NO. CV 04-09049 SGL (RNBx)

ATTACHMENT A

EXHIBIT _____ 6
PAGE _____ 124

**ATTACHMENT A**

**DEFINITIONS**

1.   "ACCELERACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "AcceleRacerS," "Acceleracers," or "Accelleracers."

2.   "ACTION" shall mean this action consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entm't, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

3.   "ADVERTISEMENT" means a commercial message or advertisement in any medium, including without limitation, television, radio, movies, magazines, newspapers, the Internet, signage, and billboards.

4.   "ALIEN RACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Alien Racers."

5.   "BARBIE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Barbie."

6.   "BRATZ" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known

1    as, or sold and marketed under the name, "Bratz."

2        7.    "BRAWER" means Ron Brawer.

3        8.    "BRISBOIS" means Janine Brisbois.

4        9.    "BRYANT" means Carter Bryant.

5        10.    "CARU" shall mean and refer to the Children's Advertising Review

6    Unit of the Council of Better Business Bureaus, Inc. and any of its past or present

7    principals, directors, officers, agents, employees, representatives, consultants,

8    attorneys, entities and persons acting in joint-venture or partnership relationships

9    and all others acting on its behalf, pursuant to its authority or subject to its control.

10        11.    "COMMUNICATIONS" means any disclosure, transfer or exchange

11    of information between two or more PERSONS, whether orally or in writing,

12    including without limitation any conversation or discussion by means of meeting,

13    letter, telephone, note, memorandum, telex, telecopier, electronic mail, or any other

14    electronic or other medium.

15        12.    "COUNTERCLAIM[S]" means Mattel's Second Amended Answer in

16    Case No. 05-02727 and Counterclaims for: 1. Copyright Infringement; 2. Violation

17    of the Racketeer Influenced and Corrupt Organizations Act; 3. Conspiracy to

18    Violate the Racketeer Influenced and Corrupt Organizations Act; 4.

19    Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional

20    Interference with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting

21    Breach of Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting

22    Breach of Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13.

23    Declaratory Relief filed July 12, 2007.

24        13.    "COUNTER-DEFENDANTS" means MGA, LARIAN, BRYANT,

25    MGA HK, MGA MEXICO, MACHADO, and Does 4 through 10.

26        14.    "DIVA STARZ" means and refers to each image, character, logo, doll,

27    styling head, plush toy, toy, accessory, product, packaging or other thing or matter

28    that is or has ever been manufactured, marketed or sold by MATTEL, or others

EXHIBIT _____ 6

A-2

PAGE _____ 126

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1    under license by MATTEL, as part of a line of goods or merchandise commonly

2    known as, or sold and marketed under the name, "Diva Starz."

3        15.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

4    Civil Procedure 24, and shall be construed in the broadest sense to mean any and all

5    writings, tangible things and property, of any kind, that are now or that have been in

6    YOUR actual or constructive possession, custody or control, including, but not

7    limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

8    punched, copied, recorded, transcribed, graphic or photographic matter of any kind

9    or nature, in, through, or from which information may be embodied, translated,

10   conveyed or stored, whether an original, a draft or copy, however produced or

11   reproduced, whether sent or received or neither, including, but not limited to, notes,

12   memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

13   inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

14   records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

15   estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

16   telephone records, telegrams, telexes, literature, invoices, contracts, purchase

17   orders, estimates, recordings, transcriptions of recordings, records, books,

18   pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio

19   and digital recordings, television commercials, story boards, website or other spot

20   advertisements, movies, movie trailers, prototypes, samples, products, diaries,

21   calendars, charts, drawings, sketches, messages, photographs and data contained in

22   or accessible through any electronic data processing system, including, but not

23   limited to, computer databases, data sheets, data processing cards, computer files

24   and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche,

25   electronic mail, website and web pages and transcriptions thereof and all other

26   memorializations of any conversations, meetings and conference, by telephone or

27   otherwise.  The term DOCUMENT also means every copy of a DOCUMENT,

28   where such copy is not an identical duplicate of the original, whether because of

EXHIBIT _____ A-3  6
127

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1  deletions, underlinings, showing of blind copies, initialing, signatures, receipt

2  stamps, comments, notations, differences in stationery or any other difference or

3  modification of any kind.

4      16.    "ELECTRONIC RECORDS" means electronic documents, data or

5  electronically stored information — including writings, drawings, graphs, charts,

6  photographs, sound recordings, images, and other data or data compilations stored

7  in any medium from which information can be obtained, including but not limited

8  to emails (Outlook, Exchange, etc.), word processing files (Word, WordPerfect,

9  etc.), spreadsheets (Excel, etc.), databases (Access, SQL, etc.), presentations

10  (PowerPoint, etc.), picture files (gif, tif, jpg, etc.), graphic files (DWG, PCX, EPS,

11  high or multi-dimension, etc.), audio files (wav, snd, rmp, etc.), video files (mpg,

12  mov, etc.), or any other compilation of data used by YOU.

13      17.    "FLAVAS" means and refers to each image, character, logo, doll,

14  styling head, plush toy, toy, accessory, product, packaging or other thing or matter

15  that is or has ever been manufactured, marketed or sold by MATTEL, or others

16  under license by MATTEL, as part of a line of goods or merchandise commonly

17  known as, or sold and marketed under the name, "Flavas."

18      18.    "4-EVER BEST FRIENDS" means and refers to each image,

19  character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or

20  other thing or matter that is or has ever been manufactured, marketed or sold by

21  MGA, or others under license by MGA, as part of a line of goods or merchandise

22  commonly known as, or sold and marketed under the name, "4-Ever Best Friends."

23      19.    "INITIAL DISCLOSURE WITNESS(ES)" means and refers to each

24  person listed in YOUR Consolidated Initial Disclosures, served on January 5, 2007.

25      20.    "LARIAN" means MGA's Chief Executive Officer, Isaac Larian.

26      21.    "LITTLE MOMMY" means and refers to each image, character, logo,

27  doll, styling head, plush toy, toy, accessory, product, packaging or other thing or

28  matter that is or has ever been manufactured, marketed or sold by MATTEL, or

A-4

PAGE    128

1   others under license by MATTEL, as part of a line of goods or merchandise

2   commonly known as, or sold and marketed under the name, "Little Mommy."

3       22.    "MACHADO" means Carlos Gustavo Machado Gomez.

4       23.    "MATTEL," "YOU" and "YOUR" shall mean and refer to defendant

5   Mattel, Inc. and any of its past or present officers, directors, agents, employees,

6   representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

7   predecessors-in-interest and successors-in-interest, entities and persons acting in

8   joint venture or partnership relationships with MATTEL and any others acting on

9   MATTEL's behalf, pursuant to its authority or subject to its control.

10       24.    "MGA" shall mean and refer to plaintiff MGA Entertainment, Inc. and

11   any of its past or present officers, directors, agents, employees, representatives,

12   consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

13   interest (including ABC International Traders, Inc. and Micro Games of America,

14   Inc.) and successors-in-interest, entities and persons acting in joint venture or

15   partnership relationships with MGA and any others acting on MGA's behalf,

16   pursuant to its authority or subject to its control.

17       25.    MGA HK shall mean counter-defendant MGA Entertainment (HK)

18   Ltd. and any of its past or present officers, managers, agents, employees,

19   representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

20   and successors-in-interest, entities and persons acting in joint venture or partnership

21   relationships with MGA HK and any others acting on MGA HK's behalf, pursuant

22   to its authority or subject to its control.

23       26.    MGA MEXICO shall mean counter-defendant MGAE de Mexico,

24   S.R.L. de C.V. and any of its past or present officers, managers, agents, employees,

25   representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

26   and successors-in-interest, entities and persons acting in joint venture or partnership

27   relationships with MGA MEXICO and any others acting on MGA MEXICO's

28   behalf, pursuant to its authority or subject to its control.

1    27.    "MOMMY'S LITTLE…" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the names beginning with, "Mommy's Little…," including but not limited to the phrase "Mommy's Little Patient."

7    28.    "MY SCENE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "My Scene."

12    29.    "MY SCENE THEMES" means and refers to the following themes for MY SCENE products: "Chillin Out!," "Night on the Town," "Jammin' in Jamaica," and "My Bling Bling."

15    30.    "NPD" shall mean and refer to The NPD Group, Inc. and NPD Funworld, and any of their past or present principals, directors, officers, agents, employees, representatives, consultants, attorneys, entities and persons acting in joint-venture or partnership relationships and all others acting on their behalf, pursuant to its authority or subject to its control.

20    31.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

25    32.    "POLLY POCKET" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

1    merchandise commonly known as, or sold and marketed under the name, "Polly

2    Pocket."

3        33.    The terms "RELATE TO" and "REFER TO" should each be construed

4    in the broadest possible sense to mean concerning, consisting of, referring to,

5    describing, discussing, constituting, evidencing, containing, reflecting, mentioning,

6    pertaining to, citing, summarizing, analyzing or bearing any logical or factual

7    connection with the matter discussed.

8        34.    "RELEVANT TIME PERIOD" means the period from January 1,

9    1998 through the present.

10        35.    "TIA" shall mean and refer to the Toy Industry Association, Inc., and

11    any of its past or present principals, directors, officers, agents, employees,

12    representatives, consultants, attorneys, entities and persons acting in joint-venture

13    or partnership relationships and all others acting on its behalf, pursuant to its

14    authority or subject to its control.

15        36.    "TREANTAFELLES" means Paula (Treantafelles) Garcia, currently

16    MGA's Vice President of Product Design and Development.

17        37.    "TRUEBA" means Mariana Trueba Alamada.

18        38.    "VARGAS" means Pablo Vargas San Jose.

19        39.    "WEE 3 FRIENDS" means and refers to each image, character, logo,

20    doll, styling head, plush toy, toy, accessory, product, packaging or other thing or

21    matter that is or has ever been manufactured, marketed or sold by MATTEL, or

22    others under license by MATTEL, as part of a line of goods or merchandise

23    commonly known as, or sold and marketed under the name, "Wee 3 Friends."

24        40.    "WSJ REPORTERS" means and refers to any current or former

25    reporters for the *Wall Street Journal* (including, but not limited to, Maureen

26    Tkacik) and any of their agents, assistants, investigators, employees, or

27    representatives.

28        41.    "WSJ STATEMENTS" means and refers to any and all of the

EXHIBIT _____

A-7

PAGE _____ *131*

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

following statements that appeared in the *Wall Street Journal* article, dated July 18, 2003, entitled "Dolled Up: To Lure Older Girls, Mattel Brings in Hip-Hop Crowd":

> ....Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998....

> Mr. Bryant didn't work on the line that Mattel scrapped, according to former and current Mattel designers. But most Barbie designers had seen the prototypes, his former colleagues say. ...

> The Mattel doll line that was scrapped wasn't exactly like the Bratz, says a longtime Mattel designer who worked on the project. But the Bratz's oversized heads -- with their pursed lips and cartoonish eyes -- are "virtually identical" to the heads of the dolls her team created, says the designer, who left Mattel in 2001.

> Lily Martinez, a designer who still works at Mattel, came up with the idea for the big doll heads for Mattel, colleagues say. ... She even posted her sketch on her cubicle, colleagues say. "Anyone who passed by her cubicle would see the picture up on the wall," says another designer who also left Mattel in 2001. "The big heads, the big eyes, the big feet -- they were all the same" as the Bratz.

> The Mattel dolls were scrapped in testing, current and former designers say, because Mattel had strict quotas that allowed only one "flanker brand" -- that is, a brand that would compete with Barbie for shelf space -- on the market at a time. At the time, Mattel chose a product called "What's Her Face" -- a doll with a blank face on which kids could draw expressions. ...

## EXAMINATION TOPICS

1.    MGA's and MGA MEXICO's alleged theft and use of, or direction of others to steal and use on MGA's or MGA MEXICO's behalf, MATTEL's trade secrets in Mexico as alleged in paragraphs 37-54 of YOUR COUNTERCLAIMS, including but not limited to (a) any trade secrets or confidential or proprietary information of MATTEL stolen or used by MGA or MGA MEXICO; (b) MGA and LARIAN's alleged enticement and direction of MACHADO, VARGAS or TRUEBA to steal MATTEL's trade secrets; (c) the specific DOCUMENTS and data allegedly copied, taken, accessed or modified by MACHADO, VARGAS, or TRUEBA; (d) YOUR policies and procedures for protecting the confidentiality of

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1   the DOCUMENTS and data YOU contend were improperly taken by MACHADO,

2   TRUEBA or VARGAS; (e) the factual basis of YOUR information and belief that

3   MACHADO, TRUEBA or VARGAS delivered an internal line list to LARIAN or

4   another MGA officer as alleged in paragraph 49 of YOUR COUNTERCLAIMS;

5   (f) YOUR knowledge of any use of the allegedly misappropriated information by

6   MGA for unfair advantage in the United States and Mexico as alleged in paragraph

7   50 of YOUR COUNTERCLAIMS; (g) alleged efforts by MACHADO, TRUEBA

8   and VARGAS to conceal their alleged theft as alleged in paragraph 51 of YOUR

9   COUNTERCLAIMS; (h) YOUR investigation of facts and circumstances

10  concerning the departure of MACHADO, VARGAS or TRUEBA from MATTEL

11  and the alleged theft and use, including any proof of actual use by them or MGA

12  MEXICO, of MATTEL trade secrets in Mexico; (i) when YOU first learned the

13  facts and circumstances alleged in paragraphs 37-54 of YOUR

14  COUNTERCLAIMS; (j) YOUR and YOUR agents' and attorneys' roles in,

15  participation in or knowledge of any and all investigations by Mexican government

16  authorities as alleged in paragraph 53 of YOUR COUNTERCLAIMS; and (n)

17  YOUR knowledge of COMMUNICATIONS between MGA, LARIAN, or other

18  MGA or MGA MEXICO employees or agents on the one hand and MACHADO,

19  VARGAS or TRUEBA on the other hand, including but not limited to the

20  recruitment and hiring MACHADO, VARGAS or TRUEBA and the use of "Plot

21  04" email account.

22      2.      MGA's alleged hiring of BRAWER to facilitate its theft and use,

23  including any proof of actual use, of MATTEL's business methods and practices as

24  alleged in paragraphs 55-69 of YOUR COUNTERCLAIMS, including but not

25  limited to (a) the specific confidential and proprietary information YOU contend

26  that BRAWER took from MATTEL as alleged in 68-69 of YOUR

27  COUNTERCLAIMS; (b) BRAWER's Employee Invention and Trade Secret

28  Agreement with Tyco; (c) BRAWER's access to confidential information about

1   Mattel and its business; (d) YOUR COMMUNICATIONS with BRAWER

2   concerning MATTEL's Code of Conduct and protecting MATTEL's confidential

3   and proprietary business information; (e) the contents of the cardboard box

4   allegedly carried by BRAWER out of MATTEL's offices on September 15, 2004

5   as alleged in paragraph 62 of YOUR COUNTERCLAIMS; (f) the taking by

6   BRAWER of the 2004 sales plan for one of MATTEL's significant customers as

7   alleged in paragraph 62 of YOUR COUNTERCLAIMS; (g) YOUR

8   COMMUNICATIONS with BRAWER during his exit interview; (h) when YOU

9   first learned the facts and circumstances alleged in paragraphs 55-69 of YOUR

10   COUNTERCLAIMS; (i) YOUR investigation of facts and circumstances

11   concerning BRAWER's departure from MATTEL and BRAWER's alleged theft

12   and use of MATTEL's highly valuable business methods and practices; and (j)

13   BRAWER's alleged targeting of and COMMUNICATIONS with MATTEL

14   employees in an effort to induce them to join MGA and misappropriate confidential

15   MATTEL information as alleged in paragraph 69 of YOUR COUNTERCLAIMS,

16   including the IDENTITIES of the MATTEL employees contacted by BRAWER

17   and YOUR knowledge of the substance of those COMMUNICATIONS.

18        3.      MGA's alleged theft and actual use of, or direction of others to steal

19   and use on MGA's behalf, MATTEL's trade secrets in Canada as alleged in

20   paragraphs 70-76 of YOUR COUNTERCLAIMS, including (a) the specific

21   DOCUMENTS and data allegedly copied, taken, accessed or modified by

22   BRISBOIS; (b) when YOU first learned the facts and circumstances alleged in

23   paragraphs 70-76 of YOUR COUNTERCLAIMS; and (c) YOUR investigation of

24   facts and circumstances concerning BRISBOIS's departure from MATTEL and

25   alleged theft and use of, including any proof of actual use by MGA of, MATTEL

26   trade secrets in Canada, including MATTEL's participation in any investigation by

27   Canadian government authorities.

28

4.    Any other instances where YOU contend that MGA misappropriated or attempted to misappropriate MATTEL trade secrets for the benefit of MGA, or persuaded MATTEL employees to join MGA to misappropriate MATTEL trade secrets as alleged in paragraph 77 of YOUR COUNTERCLAIMS, including (a) the IDENTITY of all former MATTEL employees who allegedly copied, took, accessed, modified or actually used MATTEL confidential information; (b) confidential information or trade secrets allegedly copied and taken from MATTEL; (c) MATTEL confidential information or trade secrets allegedly disclosed to and used by MGA; (d) when each theft occurred; (e) when MATTEL first learned of each theft or attempted theft; and (f) what MATTEL did in response to each theft or attempted theft.

5.    The IDENTITY, origin, source, meaning and authenticity of all materials YOU contend were MATTEL trade secrets improperly taken by employees of MGA, including M0019162-M0032318, M0059836-M0059836, M0074952-M0074961, and M0075253-M0076446 and YOUR policies and procedures for protecting the confidentiality of the DOCUMENTS YOU contend were MATTEL trade secrets improperly taken by employees of MGA.

6.    LARIAN's alleged misrepresentations to retailers about MATTEL's and MGA's products, as alleged in paragraphs 78-81 of YOUR COUNTERCLAIMS, including (a) the customers and retailers to whom YOU allege LARIAN made false representations; (b) the retailer who cancelled and subsequently reinstated its order for 75,000 units of MY SCENE BLING BLING product; (c) the alleged false and misleading press releases; and (d) YOUR COMMUNICATIONS with any retailers concerning the alleged statements by LARIAN.

7.    YOUR knowledge of all acts YOU contend are the predicate acts constituting a pattern of racketeering activity in violation of RICO as alleged in

EXHIBIT _____ 6
PAGE _____ A-11
         135

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1  paragraph 93 of YOUR COUNTERCLAIMS and Exhibit C to YOUR

2  COUNTERCLAIMS.

3      8.    Any injury or damages suffered by MATTEL resulting from the acts

4  alleged in MATTEL's COUNTERCLAIMS.

5      9.    MGA's alleged theft of "BRATZ" from YOU, including but not

6  limited to (a) MGA's showing of BRATZ prototypes or products to focus groups

7  and retailers in November 2000 as alleged in paragraph 29 of YOUR

8  COUNTERCLAIMS; (b) MGA's and LARIAN's alleged encouragement, aiding,

9  and financing of BRYANT to develop BRATZ while he was a MATTEL employee

10  as alleged in paragraph 33 of YOUR COUNTERCLAIMS; and (c) BRYANT's and

11  MGA's alleged concealment of facts that prevented MATTEL from discovering

12  that MATTEL allegedly was the true owner of BRATZ as alleged in paragraph 35

13  of YOUR COUNTERCLAIMS.

14      10.    COMMUNICATIONS between YOU (including YOUR agents and

15  attorneys) and law enforcement authorities in Mexico, Canada or the United States,

16  including but not limited to the United States Attorney's Office, the Department of

17  Justice and any national, federal, regional, state, provincial, or local authorities,

18  concerning any of the allegations in YOUR COUNTERCLAIMS or any other

19  alleged taking of confidential MATTEL information by MGA or persons currently

20  or formerly employed by MGA, including MACHADO, VARGAS, TRUEBA,

21  BRISBOIS, and Jorge Castilla, and DOCUMENTS YOU or YOUR agents or

22  attorneys provided to such law enforcement authorities.

23      11.    MATTEL's knowledge or information about the involvement of

24  BRYANT or any person then employed by MATTEL (directly or via a temporary

25  employment agency), in the origin, creation, design or and development of BRATZ,

26  including, but not limited to (a) when MATTEL first learned about BRYANT's

27  involvement with the origin and development of BRATZ; and (b) who at MATTEL

28  knew about the involvement of BRYANT or any person then employed by

1   MATTEL with the origin, creation, design or development of BRATZ, and when

2   and how each individual came to possess such knowledge or information.

3       12.   The use of any MATTEL materials, property or resources by

4   BRYANT or any person then employed by MATTEL (directly or via a temporary

5   employment agency) in connection with creation, design, or development of the

6   original or first wave of BRATZ fashion dolls and accessories introduced in the

7   U.S. in the summer of 2001, including, without limitation (a) PERSONS allegedly

8   involved in putting together the three dimensional dummy used by BRYANT in

9   meeting with MGA; and (b) the specific MATTEL materials, property or resources

10  allegedly used in putting together the three dimensional dummy used by BRYANT

11  in meeting with MGA.

12      13.   MATTEL's knowledge about BRYANT's performance of services for

13  MGA, including, without limitation (a) when and how MATTEL first learned about

14  BRYANT's performance of any services for MGA; (b) when and how MATTEL

15  first learned about the first instance of BRYANT's performance of services for

16  MGA; and (c) who at MATTEL knew about BRYANT's performance of any

17  services for MGA.

18      14.   MATTEL's knowledge about BRYANT's contacts with MGA,

19  including, without limitation (a) when and how MATTEL first learned of any

20  contacts BRYANT had with MGA; (b) when and how MATTEL first learned of the

21  first contact BRYANT had with MGA; and (c) who at MATTEL knew about

22  BRYANT's contacts with MGA.

23      15.   MATTEL's knowledge of BRYANT's contract with MGA, including

24  without limitation (a) when, how and who at MATTEL first became aware of its

25  existence; (b) when MATTEL first became aware of its terms; and (c) when

26  MATTEL or its agents first obtained a copy of the contract.

27      16.   The WSJ STATEMENTS, including, but not limited to (a) YOUR

28  knowledge of who made the WSJ STATEMENTS, or provided any of the

1   information contained in the WSJ STATEMENTS, to any WSJ REPORTERS;

2   (b) the identity of all fashion doll or doll designers who left MATTEL in 2001;

3   (c) any efforts by YOU to facilitate the publication of the WSJ STATEMENTS,

4   including, but not limited to, assisting a WSJ REPORTER to obtain the WSJ

5   STATEMENTS or the information contained in the WSJ STATEMENTS, to

6   identify people for WSJ REPORTERS to contact and interview, and to verify the

7   WSJ STATEMENTS or the information contained in the WSJ STATEMENTS;

8   (d) when YOU first learned or became aware of the WSJ STATEMENTS;

9   (e) YOUR response or reaction to the WSJ STATEMENTS after YOU first learned

10  or became aware of them; (f) any actions taken by YOU (including, but not limited

11  to, any investigation or interviews) in response to the WSJ STATEMENTS; and

12  (g) COMMUNICATIONS among MATTEL employees regarding the WSJ

13  STATEMENTS.

14      17.   MATTEL's internal and external investigations of the facts related to

15  this ACTION, including, but not limited to (a) investigations of or concerning

16  BRYANT, Richard Irmen, BRYANT's family, LARIAN, LARIAN's family,

17  MGA, MGA's current and former officers and employees; BRAWER, Farhad

18  (Fred) Larian, Shirin Larian Makabi; Shirin Salemnia, Holly Stinnett, Tina Patel,

19  Mercedeh Ward, Anna Rhee, Veronica Marlowe, Margaret Leahy, Thomas Park,

20  and Jahangir Makabi; (b) surveillance of BRYANT, Richard Irmen, BRYANT's

21  family, LARIAN, LARIAN's family, MGA, MGA's current and former officers

22  and employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin

23  Salemnia, Holly Stinnett, Tina Patel, Mercedeh Ward, Anna Rhee, Veronica

24  Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi, including the dates

25  and times of surveillance, and the identities of the persons who conducted such

26  surveillance; (c) written or recorded statements; (d) the origin, source, meaning and

27  authenticity of DOCUMENTS produced in this ACTION from YOUR Global

28  Security department files.

EXHIBIT _____ 6

PAGE _____

A-14   138

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

18.   YOUR policies and practices concerning interviews and investigations of employees who leave MATTEL to work for competitors, including but not limited to MGA, and YOUR knowledge of the reason(s) why each of your employees, including but not limited to the following former employees or contractors ceased working for MATTEL or a MATTEL subsidiary to work for MGA or an MGA subsidiary as employees or contractors, including what YOU learned through exit interviews: BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Eve Bennett; Kami Gilmour; Sarah Halpern; Margaret Leahy; Veronica Marlowe; Maureen Mullen; Amy Myer; Anna Rhee; TREANTAFELLES; Odette Vandenburg; Mercedeh Ward; Daniel Cooney; Janet Han; Steve Chang; Lui Domingo; Pui Pootipong; Ellen Komatsu; Shirin Salemnia; Joe Feldman; Ricardo Abundis; Ian Bate; Nanette Black; John E. Bloodworth III; Kevin Bloomfield; Jorge Castilla; Suzy Chang; Steve Cheng; Gerry Cody Jr.; Nick Contreras; Maria De La Cruz; Karen Dixon; Greg Paul Dominguez; Craig Forrest; Mia Garcia; Eduardo Gonzalez; Tracy Hall; Melody Hansen; Todd Hansen; Jill Hatch; Michael Hinh; Janet Hsu; Alice Kao; Ken Kaufman; Pamela Keller; Alejandro Gabriel Keossian; Joyce Kim (Lee); Young Ran Kim; Kristen Kirst; Jill Larson; Adrian (Chi Shing) Law; Bo Lumabao; Dorothy Marks; Raymond John Martin; Aye Aye Min; Yumi Nakamura; Marvin Natareno; Christine Nigoghossian; Amelia Ivy Arafiles Palijo; Danny Pestonji; Denise Phelan; Michael Pickard; Ronald Rae; Leland Ratleff; Desiree Elisabeth Ronquillo; Micaela Ruiz; Natasha Sasic-Koetsier; Maria Elena Salazar; Harvey Scott; Steffen J. Smith; Jier Su; Dennis Soai; Marla Thompson; Chau Ngoc Tran; Esteban Umana; Gail Upshaw; Chang-Chin Wang; Lance Ward; Dawn Whittaker; Jenny Wong; Troy Augborne; Carter Bryant; Reyna Zetino; Daryoush Aryapour; Janet Blaser; Mari Joanne Bower Violette; Lilia Brown; Gabriella Burlando; Fabienne Chonavel; Christine Dailey; Steve Feicht; Christopher Hardouin; Martin Hitch; Jeff Ho; James Huntley; Randi Kagan; Andreas Koch; Lyn Carol Mayer; Susan McBride; Frank Mils; Xuanlan Nguyen;

1   Gary Thomas O'Brien; Jose Otero; Dan Owen; Nicolletta Parasole; Ana Mancia

2   Parkinson; Roger Rambeau; Wendy Reed; Scot Anthony Reyes; Lon Ross; Dena

3   Schwartz; Brandi Shaver; Holly Stinnett; Lisa Tawil; Gord Terry; Joseph Whitaker;

4   Patrick Williams; Tong Wong; Cherrise Wright; Dave Zbojniewicz; Lourdes

5   Aguilar; Juan Carlos Virrueta Camacho; Alejandro Gurza Romay; Lidia Ivete

6   Montero Leyva; Laura Ochoa; Andrea Ramirez.

7       19.    BRYANT's relationship or contacts with TREANTAFELLES during

8   the time they were both employed at MATTEL, including, but not limited to: (a)

9   YOUR knowledge of whether BRYANT's workspace was next to or near

10   TREANTAFELLES' workspace, and, if so, exactly when and for how long; (b)

11   YOUR knowledge of whether BRYANT and TREANTAFELLES worked together

12   on any projects for MATTEL and, if so, during what time period(s) and specific

13   projects; (c) YOUR knowledge of whether BRYANT and TREANTAFELLES

14   were social acquaintances and, if so, during what time period(s); and (d) any

15   evidence that supports YOUR contention that BRYANT and TREANTAFELLES

16   knew each other during the time they were both employed at MATTEL (including,

17   but not limited to, that they had workspaces near or next to each other, worked on

18   projects together, and/or were social acquaintances), including, but not limited to,

19   any documentary evidence and potential witnesses.

20       20.    The floor plan and seating chart for MATTEL's offices in El Segundo,

21   California in 1999 and 2000, specifically the Design Center and the work spaces of

22   BRYANT, including the origin, source, authenticity, meaning and use of

23   DOCUMENTS produced by MATTEL as M13361-M13368, including M13365A,

24   and the physical proximity of the work spaces of BRYANT and other MATTEL

25   current or former employees, contract workers or PERSONS working for or at

26   MATTEL, including without limitation TREANTAFELLES, Rene Pasko, Lily

27   Martinez, Kislap Ongchangko, Joni Pratt, Barbara Miller, Maureen Mullen and any

28   other PERSON MATTEL claims had confidential information accessed by Bryant

1   or MGA (including any current or former employees who were employees, contract

2   workers or vendors of MATTEL at the relevant time).

3       21.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

4   YOUR behalf with Anna Rhee that refer or relate to BRATZ, MGA, BRYANT or

5   Elise Cloonan, including the COMMUNICATIONS with Anna Rhee's counsel and

6   YOUR contacts with Anna Rhee, including but not limited to when she began

7   working for or with MATTEL, what projects she worked on for MATTEL and the

8   dates of such work, and payments made by MATTEL to her.

9       22.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

10  YOUR behalf with Steve Linker that refer or relate to BRATZ, MGA, BRYANT,

11  this ACTION or the asserted or potential allegations or defenses therein, any

12  witnesses in this ACTION, and DOCUMENTS that refer or pertain to any of the

13  above subjects, and YOUR contacts with Steve Linker, including but not limited to

14  when he began working for or with MATTEL, the projects on which he worked for

15  MATTEL and the dates of such work, and payments made by MATTEL to him,

16  and DOCUMENTS that refer or pertain to any of the above subjects.

17      23.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

18  YOUR behalf with Matt Bousquette, Elise Cloonan, David Dees, Sara Halpern,

19  Margaret Hatch aka Margaret Leahy, Rachel Harris, Liz Hogan, Andreas Koch,

20  Steve Linker, Kris Lynch, Veronica Marlowe, Len Mazzocco, Maureen Mullen

21  Chianese, Billy Ragsdale, Wendy Ragsdale, Brian Schmidt, Cassidy Park, Pam

22  Peretz, Jesse Ramirez and Ivy Ross, or any current or former MGA employee or

23  person you know or believe to be a current or former MGA freelancer, where the

24  COMMUNICATIONS refer or relate to BRATZ, MGA, BRYANT, this ACTION

25  or the asserted or potential allegations or defenses therein, any witnesses in this

26  ACTION, and DOCUMENTS that refer or pertain to any of the above subjects.

27

28

EXHIBIT _____ 6
A-17
PAGE _____ 141

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

24.   The process(es) by which MATTEL evaluates and approves ideas for new fashion dolls, including, but not limited to, any changes to such process(es) after BRATZ dolls were released in 2001.

25.   MATTEL'S hiring and recruiting practices, including its practices of recruiting and hiring PERSONS who have been employed by MATTEL competitors, including, but not limited to, MGA, Hasbro, Leap Frog, Jakks Pacific, Maui Toys, Malibu Toys, Galoob Toys, the number of such people MATTEL has hired since 1998, and YOUR efforts to ensure that new employees did not bring confidential information from their former employers.

26.   For each and every agreement requested by MATTEL concerning confidentiality, ownership of intellectual property, and/or any post-employment restrictions or obligations to MATTEL, the number, percentage, and identity of MATTEL employees who have refused to sign such agreement(s) since 1998.

27.   The circumstances under which BRYANT testified in September 2003 in the lawsuit brought by Gunther Wahl against MATTEL, including when and what any individual, including MATTEL'S in-house and outside counsel with direct or supervisory responsibility for this litigation, knew of BRYANT'S anticipated appearance and testimony and the role that appearance and testimony played in the timing of MATTEL'S lawsuit against BRYANT.

28.   The identity of, and the sales, revenues, and profits of, any MATTEL product(s) MATTEL contends have been impacted by BRATZ, including, but not limited to, BARBIE, DIVA STARZ, FLAVAS and MY SCENE, and any accessories, and licensed products, from 1990 to the present.

29.   The impact BRATZ has had, if any, on the sales and sales revenues of any Mattel product(s), including but not limited to BARBIE, DIVA STARZ, FLAVAS, any accessories and licensed products, and any product not listed herein that Mattel claims have been impacted by BRATZ.

EXHIBIT _____ 6
A-18
PAGE _____ 142

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

30.     The net worth or value of MATTEL'S "BARBIE" brand, including, but not limited to, its "My Scene" "Barbie" line of products, from 1990 to the present.

31.     The INITIAL DISCLOSURE WITNESSES, including, but not limited to: (a) the specific knowledge or information relevant to YOUR allegations and defenses that YOU believe each INITIAL DISCLOSURE WITNESS possesses; (b) YOUR COMMUNICATIONS with each INITIAL DISCLOSURE WITNESS about the subject matters YOU identified in YOUR Consolidated Initial Disclosures; (c) YOUR COMMUNICATIONS with any PERSON concerning each INITIAL DISCLOSURE WITNESS' knowledge of the subject matters YOU identified in YOUR Consolidated Initial Disclosures; and (d) any DOCUMENTS pertaining to information known by each INITIAL DISCLOSURE WITNESS about the subject matters YOU identified in YOUR Consolidated Initial Disclosures.

32.     YOUR awareness of and response to "BRATZ," including, but not limited to: (a) YOUR reaction to "BRATZ" fashion dolls when they were first released in 2001; (b) when and why YOU first began to consider "BRATZ" a competitive threat to YOUR business; (c) YOUR strategies and efforts to compete with "BRATZ" since its release in 2001, including, but not limited to, (i) the creation, development, and release of "FLAVAS"; (ii) the redesign of "DIVA STARZ"; (iii) the creation, development, and release of "MY SCENE"; (iv) the origin, source, meaning and authenticity of the "Bratz Brief" produced in this ACTION at M 0079765-71; (v) the origin, source, meaning and authenticity of the Wal-Mart Hotline Report produced at M0080622-23; and (vi) the origin, source, meaning and authenticity of the "WWBD: What Would Brawer Do?" document produced at M0047508; (vii) the origin, source, meaning and authenticity of notes produced at PMH 2273, 2379-83, 1303-07, 2122-27, 2242-59, 2147-49 and any meeting(s) at which these notes were taken; and (viii) the origin, source, meaning

1    and authenticity of Board of Directors Update, dated September 2005, produced at

2    M0093291-93314; and (d) the extent to which "BRATZ" products are present at

3    YOUR offices, including, but not limited to, (i) the current and former MATTEL

4    employees who have or have had "BRATZ" products in their offices or

5    workspaces; and (ii) whether or not YOU have a room or area in YOUR offices

6    dedicated to "BRATZ" products.

7        33.   "MY SCENE," including, but not limited to: (a) the origins or sources

8    of inspiration of the "MY SCENE" female fashion dolls and packaging, including,

9    without limitation, (i) the purpose for which "MY SCENE" fashion dolls and

10   packaging were created; and (ii) the extent to which "BRATZ" fashion dolls and

11   packaging were an inspiration or factor in the development of "MY SCENE"

12   fashion dolls and packaging; (b) any changes to the appearance of the "MY

13   SCENE" female fashion dolls and packaging (including, but not limited to, any

14   changes to the head sculpts, facial features, or face painting) since their initial

15   release; (c) "MyScene Platypus" and the origin, source, meaning and authenticity of

16   the document produced at M0086367-M0086428; (d) the origins or sources of

17   inspiration for the MY SCENE THEMES and the extent to which any "BRATZ"

18   themes were an inspiration or factor in their development; (e) the origins or sources

19   of inspiration for the "MY SCENE" styling heads and the extent to which any

20   "BRATZ" "Funky Fashion Makeover Heads" were an inspiration or factor in their

21   development; (f) the origins or sources of inspiration for the "MY SCENE" plush

22   pets and packaging and the extent to which any "BRATZ PETZ" and packaging

23   was an inspiration or factor in their development; (g) marketing strategies and

24   consumer demographics for "MY SCENE"; and (h) the selection, approval process,

25   design and development of "MY SCENE" products and themes (including timing

26   and release dates).

27       34.   "WEE 3 FRIENDS," including, but not limited to (a) the origins or

28   sources of inspiration of "WEE 3 FRIENDS" and the extent to which "4-EVER

1  BEST FRIENDS" was an inspiration or factor in the development; and

2  (b) marketing strategies and consumer demographics for "WEE 3 FRIENDS"; and

3  (c) the selection, approval process, design and development of "WEE 3 FRIENDS"

4  (including timing and release dates).

5      35.   "LITTLE MOMMY," including but not limited to (a) the origins or

6  sources of inspiration of "LITTLE MOMMY" and the extent to which

7  "MOMMY'S LITTLE..." was an inspiration or factor in the development of

8  "LITTLE MOMMY"; (b) marketing strategies and consumer demographics for

9  "LITTLE MOMMY"; and (c) the selection, approval process, design and

10  development of "LITTLE MOMMY" (including timing and release dates).

11      36.   "ACCELERACERS," including, but not limited to (a) the origins or

12  sources of inspiration of "ACCELERACERS" and whether "ALIEN RACERS"

13  was a source of inspiration for or factor in the development of ACCELERACERS;

14  (b) YOUR decision re-brand one of YOUR "Hot Wheels" toy lines

15  "ACCELERACERS"; (c) marketing strategies and consumer demographics for

16  "ACCELERACERS"; and (d) the selection, approval process, design and

17  development of "ACCELERACERS" (including timing and release dates).

18      37.   "DIVA STARZ," including, but not limited to (a) the origins or

19  sources of inspiration of YOUR tag line "Do you have a passion for fashion?" and

20  the extent to which MGA's tag line "The Girls with a Passion for Fashion" was an

21  inspiration or factor; (b) the origins or sources of inspiration of the redesign of

22  "DIVA STARZ" fashion dolls including, without limitation, (i) the purpose for

23  which the redesigned "DIVA STARZ" products were created; and (ii) the extent to

24  which "BRATZ" was an inspiration or factor in the development of the redesigned

25  "DIVA STARZ"; (c) marketing strategies and consumer demographics for "DIVA

26  STARZ"; and (d) the selection, approval process, design and development of

27  "DIVA STARZ" (including timing and release dates).

28      38.   "FLAVAS," including, but not limited to (a) the origins or sources of

145

1    inspiration of "FLAVAS" and the extent to which "BRATZ" was an inspiration or

2    factor in the development of "FLAVAS"; (b) marketing strategies and consumer

3    demographics for "FLAVAS"; and (c) the selection, approval process, design and

4    development of "FLAVAS" (including timing and release dates).

5         39.    To the extent not covered by any of the topics above, the identity of

6    any product, project or concept that YOU contend MGA copied or infringed or

7    about which YOU contend that MGA misappropriated MATTEL's trade secrets or

8    other confidential information, and, for each such product, project or concept, (a)

9    all facts concerning its origin, creation, design and development; and (b) any facts

10   underlying YOUR claim or contention that MGA copied or infringed such product,

11   project or concept; and (c) MGA's use of MATTEL'S intellectual property,

12   confidential information or trade secret information in connection therewith.

13        40.    MATTEL's advertising, promotion, and licensing of MY SCENE,

14   BARBIE and DIVA STARZ, including but not limited to any direction or

15   information provided by or from any MATTEL employee to any MATTEL

16   advertising firm, public relations or publicity firm, or licensee concerning any

17   MGA products or advertising.

18        41.    The names, locations, job descriptions and length of employment of

19   current and former MATTEL employees and independent contractors responsible

20   for, who contributed to or who were involved in any aspect of the creation,

21   marketing, sales, design, and development of "MY SCENE," "WEE 3 FRIENDS,"

22   "LITTLE MOMMY," "ACCELERACERS," "DIVA STARZ," and "FLAVAS."

23        42.    Legal actions and claims regarding "MY SCENE" and/or "DIVA

24   STARZ," including, without limitation, any lawsuits, claims, or cease and desist

25   letters that (a) YOU have asserted against any PERSON regarding such PERSON's

26   alleged infringement of "MY SCENE" or "DIVA STARZ" or (b) any PERSON has

27   asserted against YOU that "MY SCENE" or "DIVA STARZ" infringes such

28   PERSON's intellectual property rights.

43.   YOUR claimed intellectual property rights in "MY SCENE" and "DIVA STARZ," including, without limitation, (a) any applications for registration and registration for copyright, patent, trademark, or any other right sought or obtained by YOU, and any COMMUNICATIONS pertaining thereto; and (b) any trademark searches performed in connection with the selection of the "MY SCENE" or "DIVA STARZ" names.

44.   Any evidence of confusion among consumers, retailers, licensees, suppliers, wholesalers, members of the press, or any other PERSONS between any MATTEL product or packaging on the one hand, and any MGA product or packaging, including, but not limited, to "MY SCENE" and "BRATZ" on the other, and the origin, source, meaning and authenticity the document produced at M0079817-39.

45.   Any statements or comments by any PERSON that a MATTEL product, packaging or ADVERTISEMENT is a copy or "knock off" of an MGA product, packaging or ADVERTISEMENT, including, but not limited, to such comments reflected in YOUR Wal-Mart Fall 2004 Toy Fair Recap (M0080055-65).

46.   Efforts by MATTEL to copy and imitate MGA's ADVERTISEMENTS, including, without limitation, the extent to which ADVERTISEMENTS for "BRATZ" or "ALIEN RACERS" were an inspiration or factor in the development of ADVERTISEMENTS for "MY SCENE" or "ACCELERACERS."

47.   Other than those previously filed and served in this ACTION or in which MGA's counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER or RELATE TO DIVA STARZ, MY SCENE, FLAVAS, and BARBIE that REFER OR RELATE TO the RELEVANT TIME PERIOD (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

48. All COMMUNICATIONS between MATTEL on the one hand and present or former employees or contractors of MGA on the other.

49. The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO DIVA STARZ, MY SCENE, FLAVAS, BARBIE, ACCELERACERS, LITTLE MOMMY, WEE 3 FRIENDS and POLLY POCKET, or their designs RELATING thereto, sought, made or obtained by, for or on behalf of YOU, including without limitation COMMUNICATIONS pertaining thereto.

50. MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with distributors and retailers (including, but not limited to, Wal-Mart, Target, Toys 'R Us, Zellers, Bandai, Jumbo, and Woolworth U.K.); including, but not limited to (a) pressuring or influencing distributors or retailers not buy, sell or distribute "BRATZ" or other MGA products, to reduce shelf and display space for "BRATZ" or other MGA products, or to place "BRATZ" or other MGA products in unfavorable locations at retail outlets; and (b) COMMUNICATIONS with retailers or distributors RELATING TO whether MGA is providing below-market pricing or discontinuing a product line.

51. MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere, modify, tamper with or alter MGA's retail product displays, including, but not limited to, COMMUNICATIONS between YOU (including, but not limited to, Erika Ashbrook and Connie Hibbert) and any current or former employee or representative of Wal-Mart (including, but not limited to, Heather Hocut and Barb Lubestine) regarding interfering, modifying, tampering with or altering MGA's retail product displays at Wal-Mart.

52. MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with a licensee or licensing agent (including, but not limited to, Smith & Brooks, Zeon, Gemma International,

1   MV Sports, Hart Concepts, Random House, Egmont, Euromic, Character Licensing

2   and Marketing, JNH Israel, SuperRTL, Candide, and Rose Art Industries) and/or to

3   decline to renew a licensing agreement based in whole or in part on that licensee's

4   or licensing agent's relationship (or proposed relationship) with MGA.

5       53.    MATTEL's efforts, or knowledge of any efforts by any PERSON,

6   worldwide to interfere with or inhibit MGA's business with suppliers, factories, or

7   manufacturing facilities, including, but not limited to, Asahi Kasei Life & Living

8   Corporation, L.A.M.P. S.p.A. (a.k.a. Filo), Jetta Company Ltd., Early Light

9   Industrial Co. Ltd., Kaneka Corp., and Universal Commerce Corporation Limited.

10      54.    MATTEL's efforts, or knowledge of any efforts by any PERSON,

11  worldwide to interfere with or inhibit MGA's business, including, without

12  limitation (a) any threats or attempts to reduce advertising spending if a publication

13  reported on MGA, "BRATZ" or other MGA products; (b) any threats, directions or

14  instructions to market research firms (including, but not limited to,

15  ConsumerQuest) not to work with MGA; (c) any efforts to prevent or influence

16  former MATTEL employees or independent contractors (including, but not limited

17  to, Charlotte Broussard, Margo Eldridge, and Andrew Gallerani) from or against

18  working for, with, or on behalf of MGA; (d) COMMUNICATIONS with

19  Nickelodeon regarding MGA's proposed sponsorship of the "Kids' Choice

20  Awards" and MGA's ability to advertise on Nickelodeon; (e) YOUR efforts to

21  pressure or influence 4Kids Entertainment to cancel or discontinue "Bratz"

22  programming; (f) YOUR efforts to interfere with MGA's investment in or

23  acquisition of Zapf Creation AG; and (g) YOUR plans, attempts, efforts or intent to

24  interfere with business dealings or contractual relations between MGA and Smoby

25  Group, including, but not limited to, YOUR plans to acquire the "Majorette" brand.

26      55.    YOUR COMMUNICATIONS with any PERSON, including, but not

27  limited to, any supplier, factory manufacturer, distributor, retailer, licensee,

28  licensing agent, market research firm, and independent contractor, REFERRING

EXHIBIT _____ A-25   6

PAGE                149

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1   OR RELATING TO such PERSON'S business with MGA, including, but not

2   limited to, any efforts by MATTEL to persuade that PERSON (a) to cease doing

3   business with MGA; (b) to limit or reduce its business with MGA; or (c) increase

4   such PERSON'S business with MATTEL at the expense of that PERSON'S

5   business with MGA.

6          56.    YOUR knowledge of MGA's non-public information (regardless of

7   the source) and YOUR efforts worldwide to monitor, "spy on" or gain knowledge

8   of MGA's activities, unreleased products, and product creation, design and

9   development, including, but not limited to (a) contacts with MGA's current or

10  former employees about MGA or its business; (b) use or attempt to use confidential

11  informants, spies, or moles within MGA; (c) knowledge of any MGA product

12  before its release to the public; (d) the origin, source, meaning and authenticity of

13  the document produced at M0065557-58; (e) instances of obtaining access to MGA

14  showrooms, including obtaining access on false pretenses; (f) access to MGA's

15  products or showroom at any Toy Fair; (g) access to retailer's Plan-o-Grams or

16  merchandising display plans or display areas; and (h) access to MGA's confidential

17  product and pricing information through "competitive management agreements" or

18  "category management agreements" with retailers.

19         57.    MATTEL's efforts, or knowledge of any efforts by any PERSON,

20  worldwide to unfairly compete with MGA by eroding or damaging its goodwill,

21  including, but not limited to (a) efforts to generate negative publicity or consumer

22  comments about MGA, LARIAN, "BRATZ" or other MGA products;

23  (b) COMMUNICATIONS with any PERSON concerning whether "BRATZ" are

24  too sexy or otherwise inappropriate for girls; (c) any publicly-released studies or

25  market research about "BRATZ" or MGA products commissioned by or funded by

26  MATTEL; and (d) efforts to provide negative information about MGA to financial

27  or investment analysts (including, but not limited, to J.P. Morgan) regarding MGA

28  or MGA products.

EXHIBIT _____6_____
A-26

PAGE _____150_____

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1    58.    YOUR COMMUNICATIONS with former MATTEL employees who
2 now work (or subsequently worked) for MGA, including but not limited to letters
3 sent to former MATTEL employees warning them not to disclose information
4 about MATTEL.

5    59.    YOUR hiring of, or consideration of hiring, former MGA employees,
6 including, without limitation, any procedures YOU have adopted to ensure that
7 MGA's confidential proprietary information is protected.

8    60.    The magnitude and scope of layoffs of MATTEL employees during
9 the RELEVANT PERIOD.

10    61.    NPD, including, but not limited to, (a) YOUR payments to NPD,
11 (b) COMMUNICATIONS with NPD regarding MGA's alleged misuse of NPD
12 data; (c) YOUR involvement with and knowledge of NPD's decision to terminate
13 MGA's subscription; (d) YOUR use and misuse of NPD data since 2001; and (e)
14 YOUR efforts to pressure, convince, or request that NPD change product
15 classifications categories involving "BRATZ" or other MGA products and whether
16 such efforts were successful.

17    62.    CARU, including, but not limited to (a) COMMUNICATIONS with
18 CARU regarding MGA's ADVERTISEMENTS, amendments to MGA
19 ADVERTISEMENTS, or MGA's website, including, but not limited to, restrictions
20 placed or suggested to be placed on the foregoing; (b) any formal or informal
21 complaints to CARU regarding MGA's ADVERTISEMENTS or MGA's website;
22 and (c) subsidies given to CARU by MATTEL.

23    63.    TIA, including, but not limited to (a) MATTEL's role in planning, its
24 participation in, or involvement with TIA's Toy-of-the-Year Awards since 2001;
25 and (b) the change in the voting procedures of "Toy of the Year" award from a
26 "people's choice" award to an award based on votes from retailers, the media, and
27 based on NPD data.

28

EXHIBIT _____ 6

A-27

PAGE _____ 151

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

64.   The facts supporting each of the Affirmative Defenses in YOUR Second Amended Answer in Case No. 05-2727, dated July 12, 2007.

65.   The facts REFERRING OR RELATING to MGA's Third Affirmative Defense of Unclean Hands in MGA's Answer and Affirmative Defenses dated August 13, 2007, including, but not limited to (a) MATTEL'S efforts to undermine MGA's business and to "kill" Bratz at any cost, including but not limited to Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products MY SCENE, DIVA STARZ, WEE 3 FRIENDS, ACCELERACERS, and POLLY POCKET) and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against MATTEL; (b) MATTEL'S efforts to create negative publicity or press about MGA, MGA products, BRYANT, LARIAN, or MGA employees; (c) MATTEL'S efforts to fund or commission market research or studies that portray BRATZ or MGA products negatively; (d) MATTEL'S efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; (e) MATTEL'S efforts to include negative references to MGA or BRATZ on MATTEL's "We Believe in Girls" website; (f) MATTEL'S efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; (g) influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; (h) assisting parties in lawsuits against MGA; (i) monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and/or product development; (j) gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; (k) wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; (l) inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; (m) covertly investigating MGA, its officers and employees,

EXHIBIT ___ A-28 __ 6

PAGE ___ 152

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1    and their family members; (n) contacting persons under false pretense in order to

2    interrogate them about BRATZ and this litigation; (o) coercing MATTEL

3    employees to accept restrictive covenants (right before massive layoffs) and non-

4    compete clauses and other efforts to prevent prospective MGA employees from

5    accepting offers of employment; (p) MATTEL'S delay in suing BRYANT because,

6    *inter alia*, MATTEL wanted BRYANT to testify in an unrelated MATTEL case;

7    (q) falsely inflating its BARBIE sales figures in an effort to mislead the public and

8    retailers; and (r) taking all measures to conceal its bad acts, including the willful

9    non-retention and destruction of documents.

10        66.    The name, address and telephone number of each PERSON or entity

11   with whom MATTEL has communicated regarding this ACTION or the facts and

12   circumstances giving rise to this ACTION; the facts and circumstances surrounding

13   each such COMMUNICATION, including, without limitation, the date, nature and

14   substance of each such COMMUNICATION; and the name, address and telephone

15   number of each PERSON or entity that may have discoverable knowledge,

16   information or DOCUMENTS.

17        67.    All efforts made by MATTEL, directly or indirectly, to contact or

18   communicate with BRYANT since the commencement of the ACTION regarding

19   any subject, whether or not related to or involving the ACTION, and MATTEL's

20   knowledge of any efforts by third-parties or its counsel to contact or communicate

21   with BRYANT since the commencement of the ACTION.

22        68.    The existence, nature and extent of any third-party funding or

23   reimbursement of fees and costs incurred by MATTEL in prosecuting or defending

24   this ACTION, the sharing with any third-party in the financial outcome of this

25   litigation, and the nature and extent of any insurance, indemnification, or similar

26   agreement or arrangement to fund, pay for or reimburse MATTEL for any potential

27   liability it may incur in connection with this ACTION, and the fee arrangement

28   between MATTEL and Quinn Emanuel Urquhart Oliver & Hedges LLP.

EXHIBIT ___A-29___ 6

PAGE ___153___

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

69.    The relationship between Farhad (Fred) Larian and MATTEL, including, but not limited to (a) COMMUNICATIONS between Farhad (Fred) Larian and MATTEL's counsel; (b) the identity of any DOCUMENTS that Farhad (Fred) Larian has provided to or made available for inspection by MATTEL (including MATTEL's counsel); (c) the identity of any DOCUMENTS that MATTEL (including its counsel) has provided to or made available for inspection by Farhad (Fred) Larian; and (d) MATTEL's efforts to hire Farhad (Fred) Larian as a consultant or expert.

70.    MATTEL's COMMUNICATIONS internally or to third-parties, or assistance to third parties, concerning claims or potential claims against MGA, or relating to MGA products, either directly or indirectly, including COMMUNICATIONS with Art Attacks Ink, LLC; Hasbro; Toys & Trends (Hong Kong) Limited; Cityworld Limited; Jurg Willi Kesselring; UbiSoft Entertainment, S.A.; and Dyscom Corp. dba FilmBratz Productions and Hans Dys.

71.    YOUR policies, practices and procedures, written or otherwise, regarding management, preservation and/or destruction of ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

72.    The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS relevant to the design, development, sales and marketing of YOUR accused products, as identified in the COMPLAINT.

73.    The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS created or stored by BRYANT; TREANTAFELLES; BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Richard de Anda and any person working with him in Mattel's Global Security department involved in any way in investigating BRYANT, Cassidy Park, Ann Driskill, MGA, LARIAN or any current or former MGA employee; Tim Kilpin; Matthew Bousquette; Robert Eckert; Chuck Scothon; Kislip Ongchanko; Jill Nordquist; Rob Hudnut; Ivy Ross; Alan Kaye; Rene Pasko; Adrienne Fontanella; Tina Patel; Julia Jensen; Julia

EXHIBIT ___ A-30 ___ 6

PAGE                         154

1   Marine; Fred Kawashima; Evelyn Viohl; Anna Rhee; and any other person who
2   currently works or previously worked for MATTEL who MATTEL knows or has
3   reason to believe has knowledge or information concerning the claims or defenses
4   in this litigation or the facts underlying them.

5      74.    YOUR policies, practices and procedures, written or otherwise,
6   regarding employee use of company computers and ELECTRONIC RECORDS
7   during the RELEVANT TIME PERIOD, including but not limited to (a) Desktop
8   computers; (b) Laptop computers; (c) Home-based computers used for company
9   business or communication purposes; (d) Removable media (e.g., USB drives); and
10   (e) PDAs (Personal Digital Assistants).

11      75.    Computers currently in use and computers no longer in use by YOU
12   during the RELEVANT TIME PERIOD, including (a) Number, types and
13   locations; (b) Operating systems with versions and dates of use; and (c) Application
14   software with versions and dates of use.

15      76.    YOUR policies, practices and procedures, written or otherwise,
16   regarding the processing of YOUR computers after an employee leaves YOUR
17   employ.

18      77.    YOUR network architecture during the RELEVANT TIME PERIOD,
19   including (a) Network topology; (b) File-naming conventions; (c) Access
20   authorization; and (d) Remote access.

21      78.    Document management systems used by YOU during the
22   RELEVANT TIME PERIOD.

23      79.    Email systems used by YOU during the RELEVANT TIME PERIOD.

24      80.    Instant messaging systems used by YOU during the RELEVANT
25   TIME PERIOD.

26      81.    YOUR intranets deployed during the RELEVANT TIME PERIOD.

27      82.    YOUR archival systems and procedures, including to/from disk, tape,
28   or other media during the RELEVANT TIME PERIOD.

EXHIBIT   6
A-31
PAGE   155
MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

83.   YOUR backup procedures, inventories and schedules, including tape reuse cycles for ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

84.   YOUR efforts to identify and preserve potentially physical and ELECTRONIC RECORDS potentially relevant to the claims and defenses in this ACTION, the dates and circumstances of each and every such efforts, the circumstances surrounding such efforts, and whether such efforts were in anticipation of litigation involving YOU, BRYANT, and/or MGA.

85.   YOUR policies, practices and procedures, written or otherwise, regarding monitoring or reviewing of employee-created ELECTRONIC RECORDS by any technical means or by or at the direction of any department at MATTEL, including but not limited to Information Technology, Human Resources and/or "Global Security" or "Worldwide Security" during the RELEVANT TIME PERIOD.

86.   YOUR COMMUNICATIONS with American Greetings regarding BRATZ and competing with BRATZ, including by using research and dolls such as Holly Hobby.

1697009

EXHIBIT _____ A-32 _____ 6

156