# EXHIBIT 7

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 13           Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 14       vs. | MATTEL, INC.'S REVISED THIRD SET OF INTERROGATORIES |
| 15  MATTEL, INC., a Delaware corporation, | |
| 16           Defendant. | Discovery Cut-off: January 14, 2008 Pre-trial Conference: April 7, 2008 Trial Date: April 29, 2008 |
| 17 | |
| 18  AND CONSOLIDATED ACTIONS | Discovery Cutoff:  March 3, 2008 Final Pretrial Conf.:  June 2, 2008 Trial Date: July 1, 2008 |
| 19 | |

20

21

22  PROPOUNDING PARTY:      Mattel, Inc.

23  RESPONDING PARTIES:     MGA Entertainment, Inc., Isaac Larian, Carter
24                          Bryant, MGA Entertainment (HK) Limited, MGAE
25                          de Mexico S.R.L. de C.V., and Carlos Gustavo
26                          Machado Gomez

27  SET NO.:                THREE

28                                          9-21 EXHIBIT ___7___
                                                         159

07209/2229699.1

1    Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.

2  ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter

3  Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and

4  Carlos Gustavo Machado Gomez (collectively, "the Responding Parties")

5  individually answer the following Interrogatories separately and fully, in writing and

6  under oath, within 30 days after service hereof.  The Responding Parties shall be

7  obligated to supplement their responses to the Interrogatories at such times and to

8  the extent required by the <u>Federal Rules of Civil Procedure</u>.

9

10                          **Definitions**

11    1.    "YOU" and "YOUR" mean each of the Responding Parties.

12    2.    "BRYANT" means Carter Bryant individually.

13    3.    "LARIAN" means Isaac Larian individually.

14    4.    "MGA" means MGA Entertainment, Inc., any of its current or

15  former employees, officers, directors, agents, representatives, attorneys, experts,

16  divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any

17  other PERSON acting on its behalf, pursuant to its authority or subject to its control.

18  Without limiting the foregoing, "MGA" includes the entities known as ABC

19  International Traders or ABC International Traders, Inc.  For purposes of the these

20  Interrogatories, "MGA" does not include BRYANT.

21    5.    "MATTEL" means Mattel, Inc., its current employees, officers,

22  directors, agents, representatives, attorneys, parents, subsidiaries, divisions,

23  AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

24  PERSON acting on its behalf, pursuant to its authority or subject to its control.

25    6.    "AFFILIATES" means any and all corporations, proprietorships,

26  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

27  indirectly, in whole or in part, own or control, are under common ownership or

28  control with, or are owned or controlled by a PERSON, party or entity, including

1  without limitation each parent, subsidiary and joint venture of such PERSON, party

2  or entity.

3           7.      "PERSON" or "PERSONS" means all natural persons,

4  partnerships, corporations, joint ventures and any kind of business, legal or public

5  entity or organization, as well as its, his or her agents, representatives, employees,

6  officers and directors and any one else acting on its, his or her behalf, pursuant to

7  its, his or her authority or subject to its, his or her control.

8           8.      "DESIGN" or "DESIGNS" means any and all representations,

9  whether two-dimensional or three-dimensional, and whether in tangible, digital,

10  electronic or other form, including but not limited to all works, designs, artwork,

11  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

12  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

13  practice, developments, inventions and/or improvements, as well as all other items,

14  things and DOCUMENTS in which any of the foregoing are or have been

15  expressed, embodied, contained, fixed or reflected in any manner, whether in whole

16  or in part.

17          9.      "BRATZ" means any project, product, doll or DESIGN ever

18  known by that name (whether in whole or in part and regardless of what such

19  project, product or doll is or has been also, previously or subsequently called) and

20  any product, doll or DESIGN or any portion thereof that is now or has ever been

21  known as, or sold or marketed under, the name or term "Bratz" (whether in whole or

22  in part and regardless of what such product, doll or DESIGN or portion thereof is or

23  has been also, previously or subsequently called) or that is now or has ever been

24  sold or marketed as part of the "Bratz" line, and each version or iteration of such

25  product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or

26  DESIGN or any portion thereof" also includes without limitation any names,

27  fashions, accessories, artwork, packaging or any other works, materials, matters or

28  items included or associated therewith.  Without limiting the generality of the

EXHIBIT _____ 7

-3-

159

07209/2229699.1

1   foregoing, and contrary to MGA's recent assertions in connection with other Mattel

2   discovery requests, the term "BRATZ" does not and shall not require that there be a

3   doll existing at the time of the event, incident or occurrence that is the subject of, or

4   otherwise relevant or responsive to, the Interrogatories.

5           10.   "BRATZ INVENTION" means any representation, idea,

6   concept, work, process, procedure, plan, improvement, design or other development,

7   whether fixed in tangible form or not, that REFERS OR RELATES TO BRATZ,

8   including but not limited to any DESIGN that REFERS OR RELATES TO BRATZ.

9           11.   "SOLD," "SELL" or "SALE" means to distribute, market,

10  license, sell, offer to sell, or convey or transfer in any way for compensation.

11          12.   "BRATZ DOLL" means any doll that is or has ever been SOLD

12  that REFERS OR RELATES TO BRATZ.

13          13.   "BRATZ MOVIE" means any motion picture or film that is or

14  has ever been SOLD that REFERS OR RELATES TO BRATZ.

15          14.   "BRATZ TELEVISION SHOW" means any production

16  exhibited on television that is or has ever been SOLD that REFERS OR RELATES

17  TO BRATZ.

18          15.   "BRATZ PRODUCT" means any product, whether two-

19  dimensional or three-dimensional, and whether in tangible, digital, electronic or

20  other form, that is or has ever been SOLD that, in whole or in part, REFERS OR

21  RELATES TO BRATZ, including but not limited to any BRATZ DOLL, BRATZ

22  MOVIE, or BRATZ TELEVISION SHOW, and including but not limited to any

23  product that is or has ever been SOLD in any packaging that includes the name

24  "Bratz" or REFERS OR RELATES TO BRATZ.

25          16.   "ANGEL" refers to those projects, products, dolls or DESIGNS,

26  sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has claimed are

27  the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-

28  20, MGA000724-28 and MGA000734.  Without limiting the generality of the

EXHIBIT ____ 7

-4-

MATTEL'S REVISED THIRD SET OF

160

17209/2229699.1

1    foregoing, and contrary to MGA's recent assertions in connection with other Mattel
2    discovery requests, the term "ANGEL" does not require that there be a doll existing
3    at the time of the event, incident or occurrence that is the subject of, or otherwise
4    relevant or responsive to, the Interrogatories.

5         17.   "ACQUIRE" means to acquire, obtain, have vested in, enter into
6    agreement for, buy, purchase, and/or procure in any way, or purport to do any of the
7    same.

8         18.   "TRANSFER" means to sell, license, give away, vest in or
9    transfer in any way, or purport to do any of the same.

10        19.   "DOCUMENT" or "DOCUMENTS" means all "writings" and
11   "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
12   Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not
13   limited to, all writings and records of every type and description including, but not
14   limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,
15   electronic mail ("e-mail"), records of telephone conversations, handwritten and
16   typewritten notes of any kind, statements, reports, minutes, recordings, transcripts
17   and summaries of meetings, voice recordings, pictures, photographs, drawings,
18   computer cards, tapes, discs, printouts and records of all types, studies, instruction
19   manuals, policy manuals and statements, books, pamphlets, invoices, canceled
20   checks and every other device or medium by which or through which information of
21   any type is transmitted, recorded or preserved.  Without any limitation on the
22   foregoing, the term "DOCUMENT" shall include all copies that differ in any respect
23   from the original or other versions of the DOCUMENT, including, but not limited
24   to, all drafts and all copies of such drafts or originals containing initials, comments,
25   notations, insertions, corrections, marginal notes, amendments or any other variation
26   of any kind.

27        20.   "REFER OR RELATE TO" a given subject matter means relate
28   to, refer to, constitute, contain, embody, depict, incorporate, reflect, evidence,

EXHIBIT 7

J7209/2229699.1

-5-

161

1  identify, state, deal with, comment on, respond to, describe, analyze, support, refute,
2  contradict, or in any way pertain to that subject matter, either directly or indirectly.

3       21.   "CREATED" means created, produced, prepared, authored,
4  improved, developed, altered, conceived of or reduced to practice, whether in whole
5  or in part, and whether alone or jointly with others.

6       22.   "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV
7  04-9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated
8  therewith.

9       23.   "INVENTIONS AGREEMENT" means the Confidential
10 Information and Inventions Agreement signed by BRYANT on or about January 4,
11 1999 and produced in this action by MATTEL as M0001596, or any other version
12 of such January 4, 1999 agreement.

13      24.   "COMPLAINT" means Mattel, Inc.'s Complaint in Case No. CV
14 04-9059 SGL (RNBx), filed on April 27, 2004.

15      25.   "COUNTERCLAIMS" means Mattel, Inc.'s Second Amended
16 Answer in Case No. 05-2727 and Counterclaims, filed on July 12, 2007.

17      26.   "DIGITAL INFORMATION" means any information created or
18 stored digitally, including but not limited to electronically, magnetically or optically.

19      27.   "STORAGE DEVICE" means any computer hard drive,
20 memory, USB device, tape, storage array or any other device or medium that allows
21 a user, whether permanently, temporarily or otherwise, to create, generate, transmit,
22 copy, retain, store or maintain DIGITAL INFORMATION.

23      28.   "IDENTIFY" or "IDENTITY" means the following:
24      (a)   with reference to an individual or individuals, means to
25 state, fully and separately as to each, such individual's full name, any known
26 business title, current or last known business affiliation, current or last known
27 residential address, current or last known business address, current or last known
28 relationship to MGA, and current or last known telephone number.

EXHIBIT    7

7209/2229699.1

1      (b)    with reference to an entity or entities, means to state, fully

2   and separately as to each, such entity's full name, state (or country) of incorporation

3   or organization, present or last known address, and present or last known telephone

4   number.

5      (c)    with reference to a BRATZ INVENTION or BRATZ

6   INVENTIONS, means to state, fully and separately as to each, the Bates-number of

7   any DOCUMENT which REFERS OR RELATES TO the BRATZ INVENTION or,

8   if no such DOCUMENT has been produced, a full and complete description of the

9   BRATZ INVENTION and of all DOCUMENTS that REFER OR RELATE to the

10  BRATZ INVENTION; the IDENTITY of the individual author(s) or creator(s) of

11  the BRATZ INVENTION as well as of each other individual who contributed in any

12  manner to the BRATZ INVENTION; the form, material and medium of the BRATZ

13  INVENTION, if any (e.g., preliminary three-dimensional resin sculpture, final

14  three-dimensional wax sculpture, digitized file of final three-dimensional wax

15  sculpture, two-dimensional design drawing on paper); the title or name of the

16  BRATZ INVENTION, if any; the version, modification, revision or iteration

17  number of the BRATZ INVENTION, if any; the current location of the original of

18  the BRATZ INVENTION; the first day and last day on which the BRATZ

19  INVENTION was CREATED; and whether the entire invention was CREATED

20  during the period of time listed in the Interrogatory and, if not, which aspects or

21  portions of the BRATZ INVENTION were CREATED during that period of time,

22  which were CREATED earlier, and which were CREATED later.

23      (d)    with reference to a STORAGE DEVICE, means to state,

24  fully and separately as to each, the individual(s) that use or have used the

25  STORAGE DEVICE; the current location of the STORAGE DEVICE if it presently

26  exists (including the IDENTITY of the PERSON who possesses the STORAGE

27  DEVICE) or, if it no longer exists, the date on which it was destroyed or disposed

28  of; the type of STORAGE DEVICE (e.g., hard drive, USB drive, etc.); whether the

07209/2229699.1

PAGE   163

1   STORAGE DEVICE has ever been copied or imaged and, if so, the current location
2   of each copy or image of the STORAGE DEVICE that has been made (including the
3   IDENTITY of the PERSONS who possess such copies or images) and the date(s) on
4   which such copies or images were made; the manufacturer name, brand, model
5   name, model number and serial number of the STORAGE DEVICE; and the
6   technical specifications and capacities of such STORAGE DEVICE.

7            (e)   with reference to a bank or financial institution account or
8   accounts, means to state, fully and separately as to each account, the name of the
9   bank or financial institution, the location and/or branch of the bank or financial
10  institution, the account number, the name in which the account is or was held, and
11  the time period during which the account is or was open.

12           (f)   with reference to a BRATZ PRODUCT, means to state,
13  fully and separately as to each, the full name of the product; the number of the
14  product; the SKU of the product; any other applicable designation of the product
15  useful for identification; the period of time during which the product was, has been
16  or will be SOLD; and the IDENTITY of each PERSON who has licensed from
17  YOU the right to SELL such BRATZ PRODUCT.

18           (g)   with reference to any other DOCUMENT or
19  DOCUMENTS, means to describe each DOCUMENT by Bates number.  In the
20  event that a DOCUMENT does not have a Bates number, IDENTIFY means, with
21  respect to each such DOCUMENT, to provide a complete description of it such that
22  it may be the subject of a request for the production of documents, including by
23  stating the date, identity of the author, addressee(s), signatories, parties, or other
24  PERSONS identified therein, its present location or custodian and a description of
25  its contents.

26       29.   "Any" as used in these interrogatories includes the word "all,"
27  and the word "all" as used in these interrogatories includes the word "any."

28

EXHIBIT _____ 7

PAGE _____ 164

J7209/2229699.1

30.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of documents or information.

**Instructions**

A.    When an interrogatory requests that YOU provide information, YOU are required to supply all information known by or available to YOU or YOUR employees, officers, directors, agents, representatives, attorneys and experts. If YOU cannot completely answer the interrogatory after making diligent efforts to do so, please so state. Then describe in detail all efforts made to answer the interrogatory; identify every PERSON involved in such efforts; and state the additional information YOU need, if any, to respond completely to the interrogatory.

**Interrogatories**

INTERROGATORY NO. 27:

IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ INVENTION so identified state all facts that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

EXHIBIT _____ 7

PAGE _____ 165

J7209/2229699.1

1  INTERROGATORY NO. 28:

2          IDENTIFY each and every BRATZ INVENTION YOU contend was

3  CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and

4  for each BRATZ INVENTION so identified state all FACTS that support YOUR

5  contention that such BRATZ INVENTION (or aspects or portions thereof) was

6  CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all

7  PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR

8  RELATE TO such facts.

9

10  INTERROGATORY NO. 29:

11          IDENTIFY each and every BRATZ INVENTION that was CREATED,

12  in whole or in part, after January 3, 1999 and before October 21, 2000, and for each

13  BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO

14  the timing of the creation of such BRATZ INVENTION and IDENTIFY all

15  PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR

16  RELATE TO such facts.

17

18  INTERROGATORY NO. 30:

19          State all facts that support YOUR contention, if YOU so contend, that,

20  assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL

21  pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over

22  and/or has superior rights to MATTEL as to such BRATZ INVENTION, and

23  IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that

24  REFER OR RELATE TO such facts.

25

26  INTERROGATORY NO. 31:

27          State all facts that support YOUR contention, if YOU so contend, that

28  the INVENTIONS AGREEMENT is not valid and enforceable, and IDENTIFY all

07209/2229699.1

1 PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

2 RELATE TO such facts.

3

4 <u>INTERROGATORY NO. 32:</u>

5          State all facts that support YOUR contention, if YOU so contend, that

6 MATTEL is not or would not be entitled to injunctive relief as requested in its

7 COMPLAINT and/or COUNTERCLAIMS if it is ultimately determined that

8 MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all

9 PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

10 RELATE TO such facts.

11

12 <u>INTERROGATORY NO. 33:</u>

13          State all facts that support YOUR contention, if YOU so contend, that

14 MATTEL is not entitled to an award of punitive or exemplary damages against

15 YOU, and IDENTIFY all PERSONS with knowledge of such facts and all

16 DOCUMENTS that REFER OR RELATE TO such facts.

17

18 <u>INTERROGATORY NO. 34:</u>

19          State all facts that support YOUR contention, if YOU so contend, that

20 YOU did not intentionally interfere with the INVENTIONS AGREEMENT when

21 BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to

22 BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all

23 DOCUMENTS that REFER OR RELATE TO such facts.

24

25 <u>INTERROGATORY NO. 35:</u>

26          State all facts that support YOUR contention, if YOU so contend, that

27 YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by

28 BRYANT to MATTEL when BRYANT performed work or services with or for

EXHIBIT _____ 7

167

1  MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS
2  with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
3  such facts.

4

5  <u>INTERROGATORY NO. 36:</u>

6          State all facts that support YOUR contention, if YOU so contend, that
7  YOU acted with an innocent state of mind or reasonably believed that MATTEL did
8  not own any rights in any BRATZ INVENTION when BRYANT purported to
9  TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY
10  all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
11  RELATE TO such facts.

12

13  <u>INTERROGATORY NO. 37:</u>

14          State all facts that support YOUR contention, if YOU so contend, that
15  BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT
16  purported to TRANSFER rights to BRATZ to MGA, and IDENTIFY all PERSONS
17  with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
18  such facts.

19

20  <u>INTERROGATORY NO. 38:</u>

21          State all facts that support YOUR contention, if YOU so contend, that
22  BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to
23  MATTEL when BRYANT performed work or services with or for MGA while
24  BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
25  knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such
26  facts.

27

28

EXHIBIT ____ 7

1   <u>INTERROGATORY NO. 39:</u>

2          IDENTIFY each and every bank or financial institution account that

3   REFERS OR RELATES TO YOU, including accounts in YOUR name or for

4   YOUR benefit, since January 1, 1999.

5

6   <u>INTERROGATORY NO. 40:</u>

7          IDENTIFY each and every STORAGE DEVICE that YOU have used

8   for any purpose which contains or contained DIGITAL INFORMATION that

9   REFERS OR RELATES TO BRATZ prior to January 1, 2002.

10

11  <u>INTERROGATORY NO. 41:</u>

12         IDENTIFY all PERSONS who at any time have been employed by or

13  under contract with MATTEL who are now or have been employed by or under

14  contract with YOU since January 1, 1999, and, for each such PERSON, state his or

15  her name, date of hire or effective date of contract, the date on which YOU first had

16  contact with such PERSON regarding potential employment or contracting, the

17  date(s) on which such PERSON was interviewed for possible employment or

18  contracting, each title (if any) such PERSON has held while employed by or under

19  contract with YOU, and the date of termination (if applicable).

20

21  DATED:  September 21, 2007        QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
22

23

24  By_____
                                       B. Dylan Proctor
25                                     Attorneys for Plaintiff
                                       Mattel, Inc.
26

27

28

37209/2229699.1

EXHIBIT ___ 7

169

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On September 21, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S REVISED THIRD SET OF INTERROGATORIES** on the parties in this action as follows:

Diana M. Torres, Esq.
**O'MELVENY & MYERS, LLP**
400 S. Hope Street
Los Angeles, CA 90071
*Attorneys for MGA ENTERTAINMENT, INC.*

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
*Attorneys for Carter Bryant*

Patricia Glaser, Esq.
**Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP**
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
*Attorney for MGA Entertainment*

James Spertus
**Law Offices of James W. Spertus**
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 21, 2007, at Los Angeles, California.

NOW LEGAL -- Dave Quintana

EXHIBIT _____ 7

PAGE _____ 170

# EXHIBIT 8

1    THOMAS J. NOLAN (Bar No. 66992)
     (tnolan@skadden.com)
2    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     300 South Grand Avenue
3    Los Angeles, CA  90071-3144
     Tel.: (213) 687-5000/Fax: (213) 687-5600
4

5    RAOUL D. KENNEDY (Bar No. 40892)
     (rkennedy@skadden.com)
6    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     4 Embarcadero Center, 38th Floor
     San Francisco, CA  94111-5974
7    Tel.: (415) 984-6400 / Fax: (415) 984-2698

8    Attorneys for MGA Entertainment, Inc.

9

10             UNITED STATED DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|           Plaintiff, | **DISCOVERY MATTER** |
|     v. | MGA'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL MATTEL TO PRODUCE WITNESSES PURSUANT TO NOTICE OF DEPOSITION UNDER RULE 30(b)(6), OR, IN THE ALTERNATIVE, FOR LEAVE TO SERVE SUCH NOTICE |
| MATTEL, INC., a Delaware corporation, | |
|           Defendant. | |
| AND CONSOLIDATED ACTIONS | [To be heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to Court Order of December 6, 2006] |
| | Hearing Date: TBD<br>Time: TBD |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1-17

MGA'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES

EXHIBIT _____ 8

PAGE _____ 171

1   INTRODUCTION ..................................................................................................1

2   ARGUMENT...........................................................................................................2

3      I.   The Court Should Compel Mattel to Produce Witnesses Pursuant
4            to MGA's Notice of Deposition. ...........................................................2

5          A.   Mattel Categorically Refused to Discuss MGA's 30(b)(6)
6               Notice. .................................................................................2

7          B.   Mattel Has Been Given Leave to Serve Two Additional
               30(b)(6) Deposition Notices Since MGA's Moving Papers
8               Were Filed, and Has Now Served *Six* to MGA's *Zero*. ............3

9          C.   Mattel Seeks to Establish a Double Standard of Discovery. .......4

10             1.   Mattel Flouts the Meet and Confer Process, Then
                    Seeks to Use it as a Weapon Against MGA. ...................4

11             2.   Mattel Seeks to Apply a Different Set of Rules to
12                  MGA than to Its Own Offensive Discovery. ...................5

13          D.   The Breadth, Burden and Potential for Duplicative
               Discovery of MGA's 47 Deposition Topics Is Less Than
14               that Imposed by the 291 Topics Served by Mattel on MGA,
               MGA Mexico and MGA HK. ...................................................6

15             1.   Topics Containing "Including, but Not Limited To"
16                  or Similar Language.......................................................6

17             2.   Purportedly "Burdensome" Topics................................6

18             3.   Purportedly "Duplicative" Topics. ................................8

19              4.   Topics Purportedly Similar to Contention
                    Interrogatories.............................................................10

20          E.   Mattel's Objection to Certain of MGA's Statute of
                Limitations-Related Topics as "Duplicative" of Other
21               Discovery *It Had Refused to Provide* at the Time MGA's
22               Motion Was Filed Is Misleading. ............................................11

      CONCLUSION ...................................................................................................11
23

24

25

26

27

28

## INTRODUCTION

Mattel's opposition brief raises for the first time, including in the parties' meet-and-confer correspondence and discussions, Mattel's concerns regarding the scope and specificity of MGA's 30(b)(6) notices.  As stated in MGA's moving papers, during the meet-and-confer process, Mattel refused to undertake any discussion of the depositions themselves, insisting simply that MGA's notice was "a nullity" and that discussion of specific deposition topics was "premature."  Having refused even to discuss deposition topics with MGA, Mattel may not now in good faith use those topics – much less the Court's meet-and-confer requirements – to seek denial of MGA's request for relief.  The Court should reject Mattel's arguments on this basis alone.  Further, Mattel espoused its absolutist position despite having served three 30(b)(6) notices on MGA, a fourth served on MGA Hong Kong affiliate, and having prevailed on the same arguments now made by MGA.

Mattel's opposition brief ("Opp.") also neglects to mention that, in the time since MGA's moving papers were filed, Judge Larson has given Mattel leave to serve two more notices of 30(b)(6) depositions on MGA, bringing the running total of 30(b)(6) notices served by Mattel to six, including 291 separate topics.  In light of the enormous breadth and burden of discovery sought by Mattel, its protestations against MGA's notice in this regard ring hollow.  Indeed, as demonstrated below, many of MGA's requests are functionally no different from Mattel's.

Mattel devotes the considerable bulk of its opposition papers to arguing that the 30(b)(6) deposition topics that MGA has served on Mattel are unduly burdensome, overbroad, duplicative or otherwise improper.  These objections are not well taken in light of the history of discovery in the present case, and in particular Mattel's own conduct in serving 30(b)(6) deposition notices on MGA.  As demonstrated below, the 291 deposition topics that Mattel has served on MGA are at least equally burdensome, broad and duplicative.

-1-

1     Moreover, at the time MGA's moving papers were filed, Mattel

2 continued to object to all topics served by Bryant relating to defendants' statute of

3 limitations and laches defenses. As a result, Mattel can hardly be heard to complain

4 that discovery to which it refused to consent renders MGA's request "duplicative."

5 Mattel's objections have now been overruled, and no deposition on "duplicative"

6 topics will be necessary. MGA has always been and remains willing to discuss with

7 Mattel a reasonable narrowing of issues. However, when MGA sought to do so, it

8 was rebuffed by Mattel's counsel.

9     In the context and history of this litigation, Mattel's opposition to

10 MGA's first[1] notice of deposition pursuant to Rule 30(b)(6) represents an improper

11 attempt by Mattel to impose a double-standard under which Mattel is permitted to

12 notice hundreds of far-ranging deposition topics while MGA may notice none.[2] The

13 Court should reject Mattel's gambit and grant the requested relief, with costs.

14

**ARGUMENT**

15 I.   **The Court Should Compel Mattel to Produce Witnesses Pursuant to**

16      **MGA's Notice of Deposition.**

17    A.   **Mattel Categorically Refused to Discuss MGA's 30(b)(6) Notice.**

18     In its opposition papers, Mattel argues that it extended "repeated

19 invitations" to "meet and confer ... regarding good cause" for MGA to notice Mattel

20 under Rule 30(b)(6).[3] This claim is not only false, but directly contradicted by

21 Mattel's own meet-and-confer correspondence summarizing the parties' positions.

22 On December 20, 2007, Mattel's lawyer Jon Corey, Esq. wrote a letter to MGA's

23

24 [1] Mattel's representation that "[a]t issue here is MGA's third notice of deposition of

25 Mattel pursuant to Rule 30(b)(6)" (Opp. at 2 (emphasis added)), is unsupported and simply false. MGA has served only one such notice, the one at issue in this motion.

26 [2] Emblematic of Mattel's approach to this litigation is the fact that, while it was unwilling to devote any time to meet and confer on the appropriate scope of MGA's

27 30(b)(6) depositions, it has now deluged the Court with a brief exceeding the Court's page limitations and many hundreds of pages of exhibits and other supporting

28 documents.

[3] Opp. at 5.

-2-

MGA'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES

EXHIBIT _____ 8

174

1   counsel summarizing the meet and confer conference that had taken place earlier that

2   day.[4]  Mr. Corey's letter reiterated Mattel's position that

3

4   > MGA's Notice of Deposition of [Mattel] is a nullity given that it seeks to depose a person more than once without leave of court in violation of Rule 30. [...] I responded to your request about producing a witness on Phase 1, as opposed to Phase 2 topics, by saying that a discussion of the specific topics was premature.

5

6

7   Far from "repeated[ly] invit[ing]" MGA to discuss specific deposition topics, Mattel

8   in fact refused to do so, and rebuffed MGA's attempt to discuss a narrower scope of

9   topics, even after MGA had unilaterally narrowed the number of topics on which it

10  sought to depose Mattel from 86 to 47.[6]  Mr. Corey's attestation that "Mattel ...

11  invited MGA to show good cause why MGA was entitled to testimony on any of the

12  topics"[7] is thus belied by his own letter.  Nothing of the kind took place.[8]

13       **B.   Mattel Has Been Given Leave to Serve Two Additional 30(b)(6) Deposition Notices Since MGA's Moving Papers Were Filed, and Has Now Served *Six* to MGA's *Zero*.**

14

15             Studiously overlooked in Mattel's 26 pages of briefing and hundreds of

16  pages of supporting documents is any reference to the fact that – in addition to the

17  three 30(b)(6) notices that had already been served by Mattel on MGA – since the

18  present motion was filed, Mattel has served two additional 30(b)(6) notices: a fourth

19  notice upon MGA, and a further notice on MGAE de Mexico, S.R.L. DE C.V

20  ("MGA Mexico").[9]  These new notices of deposition contain a total of 160 additional

21

22  _____
    [4] Mumford Decl., Ex. 13.

23  [5] *Id.* at 2 (emphasis added).
    [6] *See* Mumford Decl., Ex. 12.

24  [7] Corey Decl. ¶ 8.

25  [8] Declaration of Thomas E. Haroldson in Further Support of MGA's Motion To Compel Production of 30(b)(6) Witnesses ("Haroldson Decl.") ¶¶ 1-3; Declaration of

26  Paul Eckles in Further Support of MGA's Motion To Compel Production of 30(b)(6) Witnesses ("Eckles Decl.") ¶¶ 1-3.

27  [9] Attached as Exhibit 15 to the Second Mumford Declaration, is Judge Larson's January 7, 2008 Order.  That Order, among other things, grants Mattel leave to serve

28  two additional 30(b)(6) deposition notices.  *Id.* at 3.  Exhibits 16 and 17 to the 2nd Mumford Decl. are these two new deposition notices, served on MGA and MGA

                                        -3-

deposition topics.[10]  In addition, Mattel had already served 61 topics under Rule 30(b)(6) on MGA Entertainment (HK) Ltd. ("MGA HK").[11]  Thus, Mattel has now served six separate notices of deposition under Rule 30(b)(6) on MGA and its affiliates, containing a total of 291 topics.[12]  In contrast, Mattel refuses to acknowledge a single such notice or deposition topic served by MGA.  Indeed, there is not a single one of MGA's 47 deposition topics to which Mattel does not specifically object in its voluminous opposition papers.  MGA also notes that Mattel's assertion in its brief that MGA has served three notices of deposition pursuant to Rule 30(b)(6)[13] is unsupported and simply false.

C.   **Mattel Seeks to Establish a Double Standard of Discovery.**

   1.   Mattel Flouts the Meet and Confer Process, Then Seeks to Use it as a Weapon Against MGA.

   Incongruously, having *refused to discuss* "specific topics" set forth in MGA's notice of deposition, Mattel now *opposes* MGA's motion on the basis of the Court's meet-and-confer requirements, insisting that MGA demonstrate to the Discovery Master what Mattel refused to discuss:  the particulars of why MGA needs the 30(b)(6) deposition it has served on Mattel.[14]  Mattel's intransigence on this issue has compelled MGA to bring this motion, and forced the Discovery Master to deal with an issue more properly agreed upon – or at least discussed – between the parties.  Mattel should not be rewarded for its refusal to meet-and-confer on the topics set forth in MGA's notice and subsequent meet-and-confer request.[15]

---

Mexico respectively.  Exhibits to the 2d Mumford Decl. are numbered in sequence to the exhibits attached to the Mumford Declaration filed with MGA's moving papers.
[10] *See* 2d Mumford Decl., Exs. 16, 17.
[11] 2d Mumford Decl., Ex. 18.
[12] *See* 2d Mumford Decl., Exs. 16-18; Mumford Decl., Exs. 3, 6, 7.
[13] Opp. at 2.
[14] *Id*. at 5.
[15] *See* Mumford Decl., Ex. 12.

-4-

EXHIBIT _____ 8

176

2.    <u>Mattel Seeks to Apply a Different Set of Rules to MGA than to Its Own Offensive Discovery.</u>

As discussed in MGA's moving papers, Mattel's opposition represents a complete about-face from its prior legal position on 30(b)(6) notices.  When Mattel sought to notice its <u>third</u> set of 30(b)(6) deposition topics on MGA, Mattel argued that "<u>Rule 30(a)(2)(B)'s requirement to obtain leave of Court prior to deposing a person for a second [sic] time does <em>not</em> apply to 30(b)(6) depositions.</u>"[16]  Contrary to Mattel's contention that it "lost" on this issue,[17] the Discovery Master declined to reach it.[18]  Now that MGA seeks depositions on 47 topics to Mattel's 291, Mattel argues the opposite position: that MGA, although it has not previously served a single notice of deposition on Mattel, must nonetheless seek leave of court, because "<u>[a] different rule does not apply for Rule 30(b)(6) depositions.</u>"[19]

Moreover, Mattel's assertion that "MGA has provided no authority suggesting an exception [to the one-deposition rule] for depositions of corporations"[20] is false.  Not only did MGA provide such authority,[21] Mattel itself relied on the same authority when it argued in support of its Third Notice of Deposition on MGA: <em>Quality Aero Tech., Inc. v. Telemetrie Elektronik</em>, 212 F.R.D. 313, 319 (E.D.N.C. 2002).

With considerable success, Mattel has fought at every turn in this case to expand the scope of its offensive discovery.  For example, of the "more than four

---

[16] Mumford Decl., Ex. 9, Mattel's Reply Brief in Support of Motion to Compel MGA to Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for Sanctions, at 4 (underlining added, italics in original).

[17] Opp. at 1.

[18] Mumford Decl., Ex. 10, Order Granting in Part and Denying in Part Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6), at 266.

[19] Opp. at 2 (emphasis added).

[20] <em>Id.</em>

[21] MGA's Motion to Compel Mattel to Produce Witnesses Pursuant to Notice of Deposition Under Rule 30(b)(6), or, in the Alternative, for Leave to Serve Such Notice, at 5, n.18.

-5-
MGA'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES

1  million pages of documents in this case to date," cited by Mattel,[22] more than <u>3.5</u>

2  <u>million</u> have been produced by MGA, at very considerable effort and expense.[23] In

3  the context and history of discovery in this case, including the 291 30(b)(6)

4  deposition topics it has already served on MGA, MGA Mexico and MGA HK,

5  Mattel's protestations of over-breadth, burden, and potentially duplicative discovery

6  improperly seek to apply a double standard, under which Mattel would have the

7  Court deny to MGA precisely the sort of discovery that Mattel itself has already

8  succeeded in imposing on MGA.

9

   **D.    <u>The Breadth, Burden and Potential for Duplicative Discovery of
10         MGA's 47 Deposition Topics Is Less Than that Imposed by the 291
           Topics Served by Mattel on MGA, MGA Mexico and MGA HK.</u>**

11

           1.    <u>Topics Containing "Including, but Not Limited To" or Similar
12               Language.</u>

13         Mattel complains that 21 of MGA's 47 topics contain the language

14  "included [sic], but not limited to."[24]  Mattel does not mention that it has itself

15  <u>already noticed 83 topics</u> on MGA and MGA Mexico that include one or more uses

16  of the phrase "including but not limited to" or "including without limitation."[25]

17  Mattel's strident objections to a form <u>it has already used in nearly four times as many</u>

18  <u>topics</u> is typical of the double standard Mattel seeks to apply on this issue.

19         2.    <u>Purportedly "Burdensome" Topics.</u>

20         Mattel complains that some of the 47 topics for which MGA seeks

21  testimony would be unduly burdensome, but in the context of this case, and

22  particularly in light of the discovery burden already imposed on MGA by Mattel's

23  topics, Mattel cannot show that the burden of MGA's deposition notice is either

24  disproportionate or unwarranted by the complexity of the case.

25

---

26  [22] Corey Decl. ¶ 3.

27  [23] Haroldson Decl. ¶ 4.

    [24] Opp. at 17.
28  [25] *See* Mumford Decl. Exs. 3, 6, 7; 2d Mumford Decl., Exs. 16, 17.

MGA'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES

EXHIBIT _____ 8

PAGE _____ 178

1

2    For example, Mattel objects to MGA's topic relating to infringement

3    actions regarding "My Scene" or "Diva Starz," (Topic 42), and testimony relating to

4    those products and "Barbie" (Topic 47).[26]  Yet Mattel has recently noticed similar,

5    yet far broader discovery:

6          20. Any complaints or dissatisfaction concerning the
           CONTESTED MGA PRODUCTS, including but not
7          limited to the returns of, or the number of or rate of defects
           for, such products.[27]

8    This topic covers the overwhelming majority of "complaints" or expressions of

9    "dissatisfaction" (whatever that may mean) that MGA has ever received.  This is

10   particularly true given that the "CONTESTED MGA PRODUCTS" are defined to

11   include

12         CONTESTED BRATZ DOLLS PRODUCTS, the
           CONTESTED BRATZ PETZ PRODUCTS, the
13         CONTESTED BRATZ FUNKY FASHION MAKEOVER
           HEAD, the CONTESTED 4-EVER BEST FRIENDS
14         PRODUCTS, the CONTESTED MOMMY'S LITTLE
           DOLL PRODUCTS, and the CONTESTED
15         ALIENRACERS PRODUCTS, and any other doll product,
           toy, packaging, advertisement or other matter that, in whole
16         or in part, provides a basis for any claim or defense by
           YOU against MATTEL.[28]

17
     Each capitalized term in this definition is in turn defined in broad terms, such that
18
     complaints or "dissatisfaction" from suppliers, sculptors, distributors, radio talk
19
     show hosts, etc. – any entity that ever comes into contact with or has anything to say
20
     about any of these products at any stage – are covered by the topic.
21
           Continuing with Mattel's objection to "testimony," (MGA's topic 47),
22
     Mattel has noticed the following deposition on MGA with nearly the same phrasing,
23
     but relating to BRATZ rather than Mattel products:
24
           95. Except for deposition testimony provided in this
25         ACTION, the testimony, transcripts, declarations,
           affidavits and other sworn written statements of any other
26

27   _____
     [26] Mumford Decl., Ex. 1 at A-22-23.
28   [27] 2d Mumford Decl., Ex. 16 at 16 (emphasis added).
     [28] Id. at 6.

-7-

EXHIBIT _____ 8

179

1    type by or from YOU or made on YOUR behalf that a
REFER OR RELATE TO BRATZ and that REFER OR
2    RELATE TO the time period prior to June 30, 2001
(regardless of when such testimony or sworn statement was
3    taken, given, signed, made or filed).[29]

4          3.    Purportedly "Duplicative" Topics.

5         Mattel complains that some MGA topics are "duplicative" of topics

6  previously noticed by Bryant, yet Mattel's own Fourth Notice of 30(b)(6) deposition

7  on MGA includes a number of topics that duplicate Mattel's own previously-noticed

8  topics. For example, Topic 95 from Mattel's Fourth Notice, quoted on the preceding

9  page, is duplicative of Topic 34 in Mattel's Second Notice:

10       34.  Other than those previously filed and served in this
ACTION or in which Mattel, Inc.'s counsel in this
11      ACTION was in attendance, the testimony, transcripts,
declarations, affidavits and other sworn written statements
12      of any other type by or from YOU or made on YOUR
behalf that REFER OR RELATE TO BRATZ THAT
13      REFER OR RELATE TO the time period prior to June 30,
2001 (regardless of when such testimony or sworn
14      statement was taken, given, signed, made or filed).[30]

15         To take another example, Mattel's Fourth Notice includes the following

16  topic:

17       13.  Any copyright, patent, design right or any other
registration or application for registration of the
18      CONTESTED MGA PRODUCTS, including but not
limited to all COMMUNICATIONS relating thereto, and
19      all filings, declarations, affidavits, correspondence, notes
and other DOCUMENTS relating thereto.[31]
20

21  Similarly, Topic 33 from Mattel's Second Notice on MGA states:

22       33.  The applications for registration and the registrations
for copyright, patent, trademark or any other right that
23      REFER OR RELATE TO BRATZ or BRATZ DESIGNS
sought, made or obtained by, for or on behalf of YOU or
24      BRYANT, including without limitation
COMMUNICATIONS pertaining thereto.[32]

25

26  [29] *Id.* at 24-25.

27  [30] Mumford Decl., Ex. 6 at 10.

28  [31] 2d Mumford Decl., Ex. 16 at 15 (emphasis added).
[32] Mumford Decl., Ex. 6 at 10 (emphasis added).

-8-

EXHIBIT _____ 8

PAGE _____ 180

To take a third example, Topic 10 from Mattel's Fourth Notice states:

10. The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.[33]

This duplicates topics 7, 12 and 13 from Mattel's Second Notice:

7. The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN [of Carter Bryant].

12. The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without limitation the timing thereof and the IDENTITY of each manufacturer and potential manufacturer used, proposed or considered.

13. COMMUNICATIONS prior to June 30, 2001 between YOU and any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or any BRATZ DESIGN.[34]

In the same vein, here is topic 7 from Mattel's Fourth Notice:

7. The first date of manufacture, shipment and availability for distribution and retail sale of each of the CONTESTED MGA PRODUCTS.[35]

... which is highly similar to Topic 14 from Mattel's Second Notice:

14. When and where BRATZ was first manufactured, shipped, distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.[36]

---

[33] 2d Mumford Decl., Ex. 16 at 15 (emphasis added).

[34] Mumford Decl., Ex. 6 at 7-8 (emphasis added).

[35] 2d Mumford Decl., Ex. 16 at 14.

[36] Mumford Decl., Ex. 6 at 8.

MGA'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES

EXHIBIT _____ 8

181

While this is not an exhaustive list of Mattel's duplicative 30(b)(6) deposition topics, it is sufficient to demonstrate the double standard Mattel seeks to apply in opposing MGA's notice.

    4.    <u>Topics Purportedly Similar to Contention Interrogatories.</u>

Mattel also bemoans that some of MGA's topics "ask for testimony related to the bases for the claims and defenses in this case."[37] Mattel cites <u>eight</u> of MGA's topics in this regard.[38] Yet, as with Mattel's protest against MGA's use of the phrase "including but not limited to," Mattel has in fact used the same approach to a far greater degree than MGA. In Mattel's Fourth Notice, there are <u>twelve</u> topics that begin, "[t]he basis for YOUR claim" or "[t]he factual basis for YOUR claim" or similar language.[39] Similarly, Mattel's Fourth Notice contains an additional <u>ten</u> topics regarding Mattel's "alleged" or "purported" behavior, which also seek testimony regarding the basis for MGA's allegations.[40]

Several of Mattel's topics solicit testimony regarding "the bases for the claims and defenses in this case" so broadly that they do not even reference any particular issue, claim or defense. For example, Topic 88 in Mattel's Fourth Notice asks for:

88. The factual bases for YOUR affirmative defenses.[41]

That is the entirety of Topic 88. Topic 26 is even more sweepingly vague:

> 26. To the extent not disclosed in response to any other Topic, all other facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.[42]

---

[37] Opp. at 23.

[38] *Id.* at 24, n.55.

[39] 2d Mumford Decl., Ex. 16 at 20-21,23-24 (Topics 49, 50, 52, 53, 55, 56, 58, 59, 84, 85, 88, 90).

[40] *Id.* at 17, 21-22 (Topics 25, 64-68, 72, 74, 76, 77).

[41] 2d Mumford Decl., Ex. 16 at 24.

[42] *Id.* at 17.

EXHIBIT _____ 8

182

This topic apparently solicits testimony encompassing "all …facts RELATING TO …the CONTESTED MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof."[43]   Having noticed these types of deposition topics on MGA, Mattel's objections are, at best, disingenuous.

**E.**   **Mattel's Objection to Certain of MGA's Statute of Limitations-Related Topics as "Duplicative" of Other Discovery *It Had Refused to Provide* at the Time MGA's Motion Was Filed Is Misleading.**

Mattel argues that MGA's 30(b)(6) deposition topics relating to MGA's statute of limitations and laches defenses are duplicative.[44]   Mattel neglects to mention, however, that at the time MGA filed its motion, Mattel had refused to assent to any discovery on these issues.   Mattel can hardly be heard to object that a deposition topic is "duplicative" of testimony that has never taken place.   Since this motion was filed, the Discovery Master has ordered Mattel to produce witnesses as to Bryant's noticed topics relating to these defenses.

MGA does not seek duplicative testimony, but a reasonable discovery plan that will allow both parties – not just Mattel – to develop their respective cases. MGA, now as ever, is prepared to discuss with Mattel a reasonable narrowing of issues, on both sides, that will allow such discovery to be taken.   In the absence of any cooperation from Mattel on this issue, however, MGA is compelled to seek from the Court the relief requested by the present motion.

## CONCLUSION

For the foregoing reasons, MGA respectfully requests this Court to issue an order compelling Mattel to produce witnesses responsive to MGA's notice, with costs.  Alternatively, MGA respectfully requests leave to serve its Notice of

---

[43] Without belaboring the issue, MGA notes that most, if not all, of Mattel's contention-related deposition topics would fall under Mattel's category of testimony likely to be in possession of the requesting party. *See* Opp. at 22-23.
[44] Opp. at 5-7.

EXHIBIT _____ 8

1   Deposition of Mattel Pursuant to Fed. R. Civ. P. 30(b)(6),[45] together with MGA's
2   costs of seeking leave.
3   DATED:  January 17, 2008
4
5                              SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM, LLP
6
7                              By:
8                                   Raoul D. Kennedy
                                    Attorney  for  MGA  ENTERTAINMENT,
9                                   INC.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28   [45] Mumford Decl., Ex. 1.

-12-

MGA'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES
489751-Los Angeles Server 1A - MSW

EXHIBIT   8
PAGE   184

# EXHIBIT 9

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

TOKYO
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

FAXED
FEB 2 6 2008

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**   February 26, 2008

**NUMBER OF PAGES, INCLUDING COVER:**   17

| NAME/COMPANY | PHONE NO. | FAX NO. |
| --- | --- | --- |
| Raoul Kennedy, Esq./Skadden Arps Slate Meagher & Flom LLP | 415/984-6400 | 415/984-2698 |
| John Trinidad, Esq./Keker & Van Nest, LLP | 415/391-5400 | 415/397-7188 |
| Amy Park, Esq./Skadden Arps Slate Meagher & Flom LLP | 650/470-4500 | 650/470-4570 |
| Timothy Miller, Esq./Skadden Arps Slate Meagher & Flom LLP | 415/984-6400 | 415/984-2698 |
| Paul M. Eckles, Esq./Skadden Arps Slate Meagher & Flom LLP | 212/735-3000 | 212/735-2000 |

**FROM:**   Jon D. Corey

**RE:**   Mattel v. Bryant, et al.

**MESSAGE:**

| CLIENT # | 07209 | ROUTE/ RETURN TO: | Tiffany Garcia | ☑ CONFIRM FAX ☑ INCLUDE CONF. REPORT |
| --- | --- | --- | --- | --- |
| OPERATOR: | | CONFIRMED? | ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ 9

185

Job number      : 890          *** SEND SUCCESSFUL **

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 845-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**     February 26, 2008

**NUMBER OF PAGES, INCLUDING COVER:** 17

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Raoul Kennedy, Esq./Skadden Arps Slate Meagher & Flom LLP | 415/984-6400 | 415/984-2698 |
| John Trinidad, Esq./Keker & Van Nest, LLP | 415/391-5400 | 415/397-7188 |
| Amy Park, Esq./Skadden Arps Slate Meagher & Flom LLP | 650/470-4500 | 650/470-4570 |
| Timothy Miller, Esq./Skadden Arps Slate Meagher & Flom LLP | 415/984-6400 | 415/984-2698 |
| Paul M. Eckles, Esq./Skadden Arps Slate Meagher & Flom LLP | 212/735-3000 | 212/735-2000 |

**FROM:**     Jon D. Corey

**RE:**     Mattel v. Bryant, et al.

**MESSAGE:**

| CLIENT #: | 97209 | ROUTE/RETURN TO: | Kimmy Garcia | ☑ CONFIRM FAX ☑ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | cwh | CONFIRMED? | ☐ No  ☐ Yes: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ 9

PAGE _____ 186

## Group Send Report

```
Page        : 001
Date & Time: 02-26-2008   18:58
Line 1      : 2134433100
Line 2      :
Machine ID  : QUINN EMANUEL
```

Job number          :   890

Date                :   02-26  18:39

Number of pages     :   017

Start time          :   02-26  18:39

End time            :   02-26  18:58

Successful nbrs.

  Fax numbers

            ☎1*14159842698
            ☎1*14153977188
            ☎1*16504704570
            ☎1*14159842698
            ☎1*12127352000

Unsuccessful nbrs.                                              Pages sent

EXHIBIT _____ 9

PAGE _____ 187

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 26, 2008

**VIA FACSIMILE AND U.S. MAIL**

Raoul Kennedy, Esq.
Skadden Arps Slate Meagher & Flom, LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111

John Trinidad, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, California 94111

Re:  Mattel v. Bryant

Dear Raoul:

I write regarding the parties' meeting of counsel on February 20 and 21, 2008, at which we discussed many of the pending discovery motions, and to memorialize certain agreements. The following is Mattel's understanding of where things currently stand:

1.   **Mattel's motion to compel (1) deposition of Carlos Gustavo Machado Gomez; and (2) consent to production of electronic mail messages.**

Mattel indicated that, because Mr. Machado's deposition pertains to Phase Two, Mattel is willing to take this motion off the Court's calendar, provided the parties stipulate that Mr. Machado will appear in Los Angeles for his deposition two weeks after the Phase Two stay is lifted. Mattel will contact Mr. Machado's counsel to raise this matter with him as well.

2.   **MGA's motion to compel Mattel to produce documents responsive to MGA's RFPs 526 and 528.**

MGA confirmed that this motion has been withdrawn until Phase Two discovery commences.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

07209/2411230.1

EXHIBIT _____ 9

PAGE _____ 188

3.    **Mattel's motion to compel deposition of Littler Mendelson.**

The parties discussed the possibility that Littler Mendelson will submit a declaration in place of sitting for deposition. Mattel will prepare an initial draft of the declaration, and send it to counsel for Bryant for review. If no agreement is reached regarding a declaration, Mattel will make a supplemental submission to Judge Infante and ask for a ruling on its pending motion.

4.    **Mattel's motion to enforce the 5/15/07 order of the Discovery Master re production of Larian v. Larian documents and for sanctions.**

In light of Isaac Larian's recent production of Larian v. Larian documents, Mattel suggested that it might be willing to withdraw this motion. As I told you, however, Mattel has a few remaining questions on this subject. You indicated that I should talk to your colleague, Jose Allen, regarding these questions.

5.    **MGA, MGA HK, MGA Mexico and Isaac Larian's motion to quash subpoenas or, in the alternative, for protective order [re Mattel's subpoenas to ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia, and Wells Fargo] and Mattel's countermotion to compel production.**

MGA proposed that the parties work together to redraft the document requests in Mattel's subpoenas, so that the requests are limited to only those documents that Judge Infante has expressly ruled on, but which MGA has not produced to date. As examples of documents falling into this category, MGA cited (1) documents sufficient to show Larian's gross income and sources of income for 2007, as well as (2) documents sufficient to show Larian's net worth from 1999-2004. Mattel indicated that it would consider this approach for the Wells Fargo subpoena, but indicated that the other subpoenas at issue in this motion have additional issues that need to be addressed:

(a) ConsumerQuest: As Mattel explained, this request should not be limited solely to Larian's and MGA's financial information. Rather, ConsumerQuest has other information -- such as information pertaining to focus groups -- which Judge Infante has ruled relevant to this action and to which Mattel is entitled. Thus, while Mattel is willing to work with defendants to remove any exclusively Phase Two materials from the ConsumerQuest subpoena, Mattel does not believe the subpoena should be otherwise narrowed as it relates to Phase One. You agreed to speak to your clients to see whether they are willing to proceed with the ConsumerQuest subpoena in its current state, minus the Phase Two materials.

(b) The Larian Trusts and Moss Adams: MGA represented that it had made an attempt to obtain compelled documents from the Trusts and Moss Adams, as both possess unique documents. MGA agreed to follow up to determine whether these documents were subsequently produced to Mattel. Mattel emphasized that it is looking to obtain the Trust formation documents, and any separate Trust financial statements, sought in the subpoena as well. As to Moss Adams, Mattel noted that

EXHIBIT _____ 9

PAGE _____ 189

documents from Moss Adams are in Larian's possession, custody and control, and Larian should have reviewed those records for documents that Judge Infante compelled Larian to produce. For example, Moss Adams likely has distribution amounts for Larian for years 2006-2007, which MGA's designee testified had not been produced to her. MGA agreed to identify, by Bates number, the 2006 and 2007 distribution information if it had been produced.

(c) Wachovia: Mattel noted that Wachovia has already identified a set of documents related to the early loan MGA used to fund the first production of Bratz. While MGA disputed Mattel's characterization of this loan, MGA stated that it is agreeable to having Wachovia produce loan documents from years 1999-2001. Mattel responded that it is entitled to not only the loan documents themselves, but also all documents relating to the financing agreement between MGA and Wachovia. In particular, Mattel is seeking the three boxes of documents Wachovia collected pursuant to Farhad Larian's request in a prior proceeding. You agreed to present this issue to your clients and promised to get back to us.

Mattel also stated that it is seeking documents pertaining to any other loan transactions between MGA and Wachovia-- including documents pertaining to the 2006 transactions regarding Little Tykes. As I explained during the meet and confer, this information is relevant to Mattel's Phase One damages claims. Again, you agreed to follow up with your clients on this matter.

(d) Deloitte & Touche and Ernst & Young: Mattel indicated that with respect to these subpoenas, it is seeking information necessary to test the validity of certain printouts that MGA has produced from its accounting system.

Additionally, Mattel seeks financial statements and MGA's general ledger for the year 2000, which Mattel believes may be in Deloitte's possession. MGA responded that there is no MGA general ledger *per se*, but that there are statements showing historical trial balances. MGA represented that it has already produced these trial balances, and indicated that it will attempt to get Mattel the relevant Bates numbers. Mattel is aware of only excerpts.

MGA agreed to get back to Mattel with answers on each of these issues by Monday, February 25, 2008.

6.     **MGA's motion to compel Mattel to produce witnesses pursuant to notice of deposition under Rule 30(b)(6), or in the alternative, for leave to serve such notice.**

MGA acknowledged that Topic Nos. 11, 21-23, 48 and 71-85 in its Rule 30(b)(6) Notice are duplicative of topics in Carter Bryant's Notice of Deposition of Mattel, Inc. Mattel further identified Topic Nos. 9(c), 12-17 and 39 (to the extent it pertains to copying) as duplicative. MGA indicated that, provided it has an opportunity to ask questions on these topics at Bryant's

EXHIBIT _____ 9

PAGE _____ 190

30(b)(6) deposition, MGA may be willing to withdraw these duplicative topics. The parties agreed to discuss these topics further following the deposition on Bryant's 30(b)(6) topics.

As to Topic Nos. 9(a) and (b) -- which pertain to MGA's showing of Bratz to focus groups and retailers in November 2000 [9(a)] and MGA's and Larian's encouragement, aiding and financing of Bryant to develop Bratz while he was a Mattel employee [9(b)] -- Mattel indicated that any responsive information it may have was obtained through discovery in this case and is thus designated "Attorney's Eyes Only." As such, Mattel cannot produce a knowledgeable witness on these topics. MGA responded that it is nonetheless entitled to a have a witness produced so that it may determine for itself whether Mattel possesses any relevant information outside of what has been produced in this litigation. In an effort to resolve this issue, Mattel offered to stipulate that it will not present a witness at trial to testify on this subject. MGA agreed to consider this proposal.

MGA stated that it will limit Topic No. 18 to information regarding Mattel's policies and practices in connection with employees who leave Mattel to work for competitors, and that it will not question Mattel's 30(b)(6) designee regarding specific employees.

For Topic No. 19, regarding Bryant's relationship or contacts with Paula Treantafelles during the time they were both employed at Mattel, Mattel noted that any information responsive to this topic would be in the possession of Bryant or Treantafelles -- not Mattel. Accordingly, Mattel will not designate a witness on this topic.

Mattel is also unwilling to designate a witness for Topic No. 20, regarding the floor plan and seating chart for Mattel's office in El Segundo, California in 1999 and 2000, as MGA has already received copies of the Mattel design center floor plan and seating chart, and several witnesses have already testified on this subject. Mattel will consider designating the testimony of those witnesses.

For Topic No. 26, MGA indicated that it is willing to limit this topic consistent with Judge Infante's February 11, 2008 Order on Mattel's motion for reconsideration. Specifically, MGA will limit Topic No. 26 to people employed in the Mattel design center from 1995 to the present.

As to Topic No. 27 -- the circumstances under which Bryant testified in September 2003 in the lawsuit brought by Gunther Wahl against Mattel -- Mattel informed MGA that it will have to consider whether there is anyone knowledgeable on this subject.

Mattel explained to MGA that, as stated in Mattel's RFA responses, Mattel is not seeking lost profits as Phase One damages. As such, Topic Nos. 28 and 29 are not relevant and Mattel will not produce witnesses on these topics. Nor will Mattel provide a witness on Topic No. 30, as Mattel is not seeking damages in Phase One for the devaluation of Barbie. MGA agreed to consult with its damages expert to determine whether it has all of the information it needs as to these topics and to review Mattel's responses to its requests for admission, and indicated that it might be willing to withdraw them.

EXHIBIT _____ 9

____ 191

Mattel informed MGA that it will not produce witnesses on Topic Nos. 31 or 58, as they are grossly overbroad.

Further, Mattel will not designate witnesses on Topic Nos. 32 or 60, as they appear to relate exclusively to Phase Two issues.

MGA recognized that to the extent Topic No. 39 pertains to trade secrets, it is a Phase Two matter, and thus agreed to withdraw that portion of No. 39 until the Phase Two discovery stay is lifted.

MGA stated that it is willing to limit Topic Nos. 42 and 47 to information pertaining to Diva Starz, and will withdraw the balance of these topics until Phase Two discovery commences.

Given its recent withdrawal of its unclean hands defense from the Phase One trial, MGA indicated that it would hold Topic No. 65 in abeyance until Phase Two.

For Topic No. 69, relating to the relationship between Fred Larian and Mattel, I informed you that I do not believe Mattel has any responsive information, as communications with Fred Larian were handled exclusively by Mattel's outside counsel. I agreed to follow up on this, and get back to you by Monday, February 25, 2008.

As to Topic No. 70, Mattel's communications internally or to third-parties concerning claims or potential claims against MGA or MGA products, MGA agreed to limit the topic to just communications with third-parties.

Finally, I agreed to go back through MGA's Rule 30(b)(6) Notice and to review several of the topics we discussed. I promised to get back to you by Monday, to let you know whether Mattel is willing to produce witnesses for any of these topics.

7.   **Mattel's motion for reconsideration of portions of Discovery Master's 12/31/07 Order [to require production of communications between Isaac Larian and Mattel employees from 1999 through the present].**

Mattel expressed its view that Judge Infante's December 31, 2007 Order granting Mattel's Request for Production No. 198 is unduly narrow, in that it is limited to communications between Isaac Larian and Mattel employees from 1999 to 2005. This date limitation is inconsistent with the allegations in Mattel's Second Amended Answer and Counterclaims, and in Mattel's Supplemental Responses to MGA's First Set of Interrogatories. You indicated that you would get back to us to let us know who we should talk to about this issue.

8.   **MGA's motion to compel Mattel to produce email.**

Mattel indicated that it appears that the electronic materials that MGA is seeking are related exclusively to Phase Two issues. As Mattel explained, any e-mails in electronic form that it possesses are either located on an exchange server that only retains files for 90 days, or on back-

EXHIBIT ........ 9
192

up tapes which go back to April 2005. Given this date limitation, it is unclear how any of the electronic files MGA is requesting can be relevant to Phase One.

Mattel then noted that even assuming there are files relevant to Phase One, MGA's request for e-mail nonetheless poses a serious practical problem, given the vast number of back-up tapes that would have to be searched, and the unmanageable number of hits that would undoubtedly be returned. Further, Mattel has not received from MGA or Bryant any concrete proposal regarding (1) how the search is to be conducted (such as a reasonable list of keywords), and (2) how the costs of the search should be shifted to defendants.

Please let me know if you have a proposal for conducting this e-mail search and for shifting of costs. We look forward to discussing it with you.

In the course of discussing this motion, MGA also raised an issue not set forth in the motion as to whether Mattel had separately retained electronic documents related to other litigation — specifically relating to Simba and Diva Starz. Mattel reminded MGA that it has already produced a substantial amount of documents to defendants regarding Simba and Diva Starz, but will look into the matter further.

9.   **MGA and MGA Mexico's motion for protective order from Mattel's fourth notice of deposition of MGA and notice of deposition of MGA Mexico.**

Mattel noted that the topics directed at MGA Mexico pertain to Phase Two discovery, and will therefore be put on hold until Phase Two discovery commences. As to the topics relevant to MGA, Mattel identified the following which pertain, at least in part, to Phase One: Topic Nos. 7-14, 82, 84-87, 89-95, 97, 98 and 102.

MGA disputed that Topic Nos. 7-14, 97 and 98 relate to Phase One, contending that because they refer to the "contested MGA products" they are, by definition, exclusive to Phase Two. Mattel responded that these topics are relevant to Phase One to the extent they relate to early Bratz development, but agreed to go back and reconsider them.

MGA contended that Topic No. 102 is duplicative of the financial information for which Lisa Tonnu was designated. Mattel responded that documents relevant to this topic were put in front of Ms. Tonnu at her first deposition, but that she did not have any knowledge or information regarding them. Thereafter, Ms. Tonnu was ordered to appear for further deposition. At the request of your colleague, Carl Roth, Mattel provided MGA with copies of the documents that had previously been presented to Ms. Tonnu. Mr. Roth indicated that he would inform Mattel if Ms. Tonnu was to be designated on this topic at the further deposition. Mr. Roth never so indicated. Accordingly, Mattel is now entitled to a witness on this topic.

MGA conceded that Topic Nos. 82, 84-87 and 94 are relevant to Phase One, but argued that they are duplicative of MGA's interrogatory responses.

EXHIBIT ____9___

PAGE ___193___

MGA argued that Topic 95 is identical to Topic 34 in Mattel's Second Notice of Deposition Pursuant to Rule 30(b)(6) to MGA, which Judge Infante previously excluded.

As to Topic Nos. 89-93, which all pertain to Fred Larian, MGA has agreed to produce a witness, though was unable to identify who the witness will be or when that witness will be available. MGA did confirm, however, that it will be a single witness.

Finally, the parties recognized that Mattel has not yet filed an opposition to this motion. As you know, when Mattel requested additional time for the opposition, MGA indicated that Mattel can take as much time as it needs, provided that MGA is permitted 10 days thereafter to reply. The parties agreed that Mattel will file an opposition pertaining to the narrow issues of Topics 82-87, 94 and 95, and possibly 7-14, 97 and 98. The parties further agreed to put the remaining issues in this motion off until the Phase Two stay is lifted.

**10.   Mattel's motion to (1) enforce the Court's 8/13/07 Order and to compel; and (2) for award of monetary sanctions.**

The parties agreed that this is a Phase Two motion and thus should be put off until Phase Two. However, Mattel noted that this motion may be withdrawn entirely if MGA can answer the questions raised in Mattel's January 31 and February 4, 2008 letters to your colleague, Andrew Temkin. MGA agreed to look into this issue and get back to Mattel.

**11.   Carter Bryant's Motion to Quash Mattel Inc.'s Subpoena Issued to People's Bank of the Ozarks or in the Alternative, for Protective Order.**

Mattel expressed its view that the notice arguments raised in Bryant's papers are moot, as Bryant has not suffered any prejudice. Bryant disagreed.

In an attempt to resolve this motion without further motion practice, Mattel proposed that the parties apply the same agreement they had reached as to the Foothill subpoena to the subpoena at issue here. Bryant agreed to consider this offer, but contacted Mattel following the meet and confer to reject this offer.

As such, this motion will be submitted to the Discovery Master for consideration.

**12.   Mattel's motion to compel production of documents improperly withheld as privileged by MGA, Isaac Larian and third party David Rosenbaum.**

Mattel noted that it has withdrawn that portion of its motion relating to MGA's waiver of privilege. The parties were unable to discuss the few outstanding issues in this motion, as you indicated that you had not yet had a chance to review Mattel's reply brief. You stated that you would look into this matter and get back to Mattel. We look forward to hearing from you.

EXHIBIT ____ 9

PAGE ____ 194

13.    **Mattel's motion to compel deposition of MGA Hong Kong and for sanctions.**

MGA offered to provide a witness for an additional 7 hours of deposition, with such witness to be educated on 20 topics of Mattel's choosing. Pursuant to this proposal, the witness will only be responsible for prepping on the 20 specified topics. MGA indicated, however, that to the extent Mattel asks questions outside of those 20 topics, the witness will be permitted to answer as to his or her personal knowledge. That is, MGA will object to such questions as beyond the scope of the deposition, but will not instruct the witness not to answer.

Mattel will respond to this offer under separate cover.

14.    **Mattel's motion to enforce the Court's 5/15/07 Order, to compel MGA to produce compelled calendars, and for sanctions.**

In its reply to this motion, Mattel identified certain calendars and planners which it believed that MGA had failed to produce. MGA informed Mattel that it had in fact produced these materials, and provided the relevant Bates numbers. Thank you for identifying these calendars and planners. We are investigating MGA's claims in this regard.

MGA also confirmed that it has now produced to Mattel all year 2000 calendars and planners in its possession, both electronic and hard copy. MGA explained that many of the year 2000 calendars and planners no longer exist.

Mattel raised two issues with respect to Isaac Larian's calendar. First, Mattel noted that the produced copy of Larian's calendar has text which has been cut-off. MGA responded that the copy with portions cut-off is the only version in its possession. MGA further noted that it only has this calendar in hardcopy -- not the full electronic version. Mattel noted that this is inconsistent with MGA's repeated representations in this case that it preserves *all* electronic documents. MGA was unable to explain why the electronic version of Larian's 2000 calendar purportedly does not exist.

Second, Mattel pointed out that MGA has only produced Larian's calendar from October 1999 through 2000, and has omitted all entries that pre-date October 1999. Mattel also pointed out that MGA has not produced year 1999 calendars for any other individuals either. As we told you at the meet and confer, we have previously discussed with your colleague Mr. Temkin that Mattel's requests, on which MGA was ordered, seek all pre-2001 -- including 1999 -- calendars relating to Bratz. Indeed, it appears that late 1999 Larian calendar pages were produced for this reason. MGA responded that Bratz purportedly did not exist in 1999, and thus that 1999 calendars cannot possibly contain any materials which are responsive to Mattel's requests. However, as Mattel responded, there is no indication that MGA has even searched for 1999 calendars (other than the few months of Larian's calendar it has produced), so it is unclear how MGA could know that there will not be any responsive material in these earlier entries. Moreover, as you know, Mr. Larian's prior statements suggest MGA was involved with Bratz in 1999.

07209/2411230.1                                              8

EXHIBIT ............ 9

·· ·· ·· ·· ·                                              195

MGA agreed to look into the issue of whether the pre-October 1999 materials were searched. Mattel indicated that if MGA did in fact search for these materials, and has produced all responsive materials in its possession from both 1999 and 2000, Mattel will consider taking this motion off of the Court's calendar.

### 15. Mattel's motion to compel production of documents by MGA in response to Mattel's fifth set of requests for documents and things to MGA.

Prior to our meeting on February 21, MGA had not made any response to these requests, and had only objected. However, MGA provided the following information at our conference:

MGA represented that it does not have a general ledger, but stated that it has produced historical trial balances for the period from 1996 to October 2007 -- including the year 2000.

MGA claimed that it has produced documents showing MGA payments to Larian and others, and identified these documents by Bates numbers. MGA further stated that Lisa Tonnu has testified on this subject.

MGA stated that to the extent any documents showing any gifts or loans from MGA to Isaac Larian exist, they are covered by the materials that MGA has already produced and identified in this case.

MGA stated that it is not willing to produce MGA's and Larian's bank records, given that Judge Infante recently rejected an interrogatory which sought similar information. MGA further noted that it has already produced documents identifying the financial institutions where Larian's and MGA's accounts are located.

As to the requests seeking salary and payment information, MGA stated that it has already produced audited financial documents and trial balances which it claims cover these requests. MGA acknowledged that these produced materials are not broken down by person, but indicated that it is not willing to produce any further documents pursuant to these requests.

With respect to Request Nos. 40-47, MGA indicated that it will not produce the requested documents, on the grounds that these requests are purportedly overbroad.

As to Mattel's requests pertaining to corporate governance documents, MGA indicated that there are only two categories for which it is willing to produce any documents. MGA offered to produce the minutes for board of directors and shareholder meetings, insofar as they refer or relate to Carter Bryant or Bratz and are from the period 1999 to May 2001. Mattel responded that to the extent documents exist from the 1999 to 2001 period which refer or relate to Bratz, they should *already* have been produced pursuant to the Court's Order.

MGA agreed to produce all documents responsive to Mattel's Request No. 33 -- which seeks documents sufficient to identify MGA's officers and directors, including all relevant positions and dates, from 1999 to 2007.

EXHIBIT   9

PAGE   146

As to the remaining requests in Mattel's Fifth Set, MGA indicated that it will be standing on its objections.

Mattel will consider the information provided by MGA and respond shortly.

16. **MGA defendants' motion to quash subpoena to Bank of America or, in the alternative, for protective order.**

Mattel indicated that it would consider MGA's proposal that the parties work together to narrow Mattel's requests to those documents which Judge Infante has ordered produced, but which MGA has not yet produced to date.

17. **Mattel's motion to compel MGA to produce communications regarding this action [re RFP No. 48 in Mattel's first set of RFPs].**

MGA offered that if Mattel narrows its request insofar as it relates to MGA employees to a list of approximately 5-10 specifically identified employees, MGA will conduct a search and produce those individuals' communications that refer or relate to this action. The parties have engaged in follow up discussions on this issue since the meet and confer, and Mattel is hopeful we will be able to reach resolution.

MGA reiterated that it will not conduct such a search with respect to outside counsel or agents of MGA in any circumstances. Accordingly, this portion of the motion will need to go forward one way or another.

18. **Mattel's motion to compel MGA, MGA Hong Kong, Isaac Larian, and Carter Bryant to respond to Mattel's first set of RFAs propounded to MGA, Carter Bryant, MGA Hong Kong and Isaac Larian.**

Bryant has served supplemental responses and met and conferred with Mattel regarding those responses. As Mattel has separately advised, it is willing to withdraw the motion as to Bryant.

As to MGA, Mattel noted that it had just received MGA's supplemental responses to Mattel's First Set of Requests for Admission on the morning of February 21, 2008. While Mattel acknowledged that these supplemental responses are an improvement over MGA's initial responses, it stated that they nonetheless remain deficient. As Mattel explained, these supplemental responses are improper in that, for every request for admission, MGA denies both the positive and negative proposition. Mattel stated that unless MGA further supplements its responses to correct this issue, Mattel is unwilling to withdraw this motion as to MGA. Moreover, MGA has not supplemental some of the RFAs at issue in Mattel's motion at all.

The parties also discussed MGA's failure to timely file a substantive opposition to this motion, or to otherwise seek an extension, as Carter Bryant did. Notwithstanding the untimeliness of MGA's contemplated opposition, the parties agreed that MGA will be permitted to file it if it

EXHIBIT _____ 9

PAGE _____ 197

does so promptly. MGA confirmed that in light of Mattel's willingness to meet and confer on MGA's supplemental responses, MGA will not argue in any opposition it chooses to file that Mattel's motion should be denied because it purportedly failed to meet and confer as to the initial responses.

19.   **Carter Bryant's motion to compel responses to discovery requests [re ROG No. 20 of second set; first and second sets of RFAs; RFP Nos. 10, 21-32 of fourth set].**

Mattel reiterated its position, as reflected in its *ex parte* application to strike Bryant's motion to compel, that Bryant's motion -- which was filed after the close of Phase One discovery -- was untimely, and that Mattel should therefore not be required to file any substantive response to it. The Discovery Master ruled on this issue yesterday.

In order to alleviate the burden on the Discovery Master, Mattel suggested that the parties work together to find a way to present to Judge Infante Mattel's argument that Bryant's discovery requests were not properly served (as well as its untimeliness argument) before the Discovery Master considers Bryant's motion to compel. As Mattel noted, if the Discovery Master were to rule in Mattel's favor on either the timeliness or service issue, then Bryant's motion is moot. Conversely, if the Discovery Master were to reject both of Mattel's arguments, then Mattel would serve supplemental responses to many of Bryant's discovery requests, and the parties could work to narrow their disputes as to any remaining requests, alleviating the burden on the Discovery Master (Bryant's motion relates to more than 300 separate discovery requests). Bryant rejected this proposal.

20.   **Mattel's motion to compel production of documents and things by MGA and for award of monetary sanctions [re 3rd Set RFPs, including Nos. 1-88].**

For Mattel's Request Nos. 1-30, seeking documents pertaining to other Bratz lawsuits, MGA complained that it has already produced more than 20,000 pages of documents with respect to other litigation, including sworn statements in connection with Requests Nos. 37 and 38 of Mattel's First Set of RFPs, and Requests Nos. 19-20 of Mattel's RFPs regarding unfair competition. Accordingly, MGA indicated that it is unwilling to produce any further documents.

Mattel responded that the documents MGA produced in response to Nos. 37 and 38 of Mattel's First Set were limited to sworn statements. Here, Mattel is not limited to just sworn statements, but rather is entitled to a broader set of responsive materials. In order to ameliorate MGA's concern that producing further documents would be unduly burdensome, Mattel offered to start with the following: MGA will identify the relevant counsel, and Mattel will send someone to go through the non-privileged files. MGA agreed to consider this proposal.

With respect to Mattel's Request No. 31, seeking documents relating to the use of the term "Jade," MGA offered to provide responsive documents through May 2001. Mattel requested that MGA provide documents through September 2001. You agreed to present this request to your clients.

EXHIBIT _____ 9

PAGE _____ 198

As to Request Nos. 32 and 33, which seek documents regarding when Sandra Bilotto first came to MGA's attention and was first hired by MGA, MGA argued that even if these requests are relevant, they pertain to Phase Two.

For Request Nos. 34, 35, 37 and 39, MGA represented that it has already produced all documents and materials responsive to these requests in connection with other discovery requests, and that these productions were not limited by MGA's objections.

MGA contended that Request Nos. 36 and 38 are exclusively Phase Two issues.

For Request No. 40, pertaining to payments made by MGA to Bilotto, MGA offered to produce responsive materials through May 31, 2001. Mattel requested that MGA produce documents through September 2001, and that MGA use not the payment date as the relevant trigger, but rather the date the payment was requested. MGA agreed to consider this.

For Request No. 41, MGA represented that it has produced responsive materials up to January 1, 2001 and proposed to supplement this production with materials that refer or relate to Bryant or Bratz (though not Mattel products) through May 2001. Mattel again asked that the production be through September 2001, which you agreed to present to your clients.

For Request No. 42, communications between Larian and Paula Garcia, MGA indicated that it would be willing to search for and produce communications between Larian and Garcia, which refer or relate to Bryant or Bratz, through May 2001. MGA agreed to consider producing such communications through September 2001. MGA also noted that it may have already produced communications between Larian and Garica that post-date January 2001, in connection with other discovery requests. MGA agreed to confirm this.

As to Request No. 76; payments from MGA to Garcia, MGA represented that it has already produced any materials that pre-date January 1, 2001, but not those that post-date it. MGA agreed to produce such materials, through May 2001. After Mattel requested that MGA produce documents through September 2001, MGA agreed to consider it.

With respect to Mattel's requests seeking documents pertaining to Scooter Samantha and Space Babes, MGA contended that the requests are only relevant to Phase Two. Mattel responded however that the Scooter Samantha requests are relevant to Phase One, in that these requests go to Garcia's credibility.

For Request Nos. 78-86, which seek vendor and personnel files for various MGA employees and vendors, MGA represented that it had searched for and produced responsive materials from vendor files pre-dating January 1, 2001. MGA offered to supplement this production with materials through May 2001, and agreed to consider supplementing through September 2001. MGA also indicated that it would have to double check whether these individuals' personnel files had been searched in addition to their vendor files.

EXHIBIT ____ 9

PAGE ____ 199

Request Nos. 87 and 88 ask for personnel and vendor files for MGA employees or vendors who previously worked for Mattel. MGA contended that these requests are limited to Phase Two. Mattel responded, however, that to the extent MGA identified former Mattel employees in its interrogatory responses who later worked on Bratz, these individuals are plainly relevant to Phase One. Mattel further stated that as to these people, Mattel wants their entire vendor and personnel files. To facilitate this process, Mattel agreed to get back to MGA with a list of people who fall into this category.

21.    **MGA's motion to overrule Mattel's and Richard De Anda's objections to subpoena and to compel discovery.**

With respect to MGA's requests regarding investigations conducted by Mr. De Anda, Mattel has previously represented to MGA that Mr. De Anda does not possess any responsive documents. MGA asked us to confirm that this representation is not limited to Mr. De Anda's personal files, but also includes his company's files. We confirmed that he does not possess responsive investigation materials in either his personal or company's records.

As to the balance of MGA's motion, MGA indicated that it is willing to narrow it to Request Nos. 5, 6 and 11. For Request No. 11, MGA stated that it is seeking any employment agreements between MGA and Mr. De Anda, as well as any documents related to such agreements. I informed you that my colleague Tim Alger would be meeting with Rob Herrington of your firm, to meet and confer regarding a broader discovery request that would encompass Request No. 11. I therefore suggested that the discussion regarding this request be wrapped into Tim's and Rob's discussions.

With respect to Request Nos. 5 and 6, MGA indicated that it is seeking documents sufficient to show (1) how much time Mr. De Anda has been devoting to his business, and (2) what type of work he has been doing in connection with his business. I responded that Mr. De Anda has previously testified that he does not devote much time to his business. Nevertheless, I agreed to follow up with Mr. De Anda to determine whether he maintains time records or possesses any other information responsive to these requests.

MGA stated that in producing materials responsive to Requests Nos. 5 and 6, Mr. De Anda is free to redact any private information pertaining to client identification.

22.    **MGA and Carter Bryant's joint motion to compel an unredacted version of M0074400, Mattel's Investigative File 02-299 and the further deposition of Richard De Anda.**

Mattel informed you that it is unwilling to produce Mr. De Anda for any further deposition, given the fact that MGA wasted the entire morning during his previous deposition. Mattel also informed you that it has submitted both the unredacted version of M0074400 and Mattel's Investigate File 02-299 to Judge Infante *in camera*, for his consideration.

EXHIBIT _____ 9

PAGE _____ 200

23.    **MGA's motion to overrule Mattel's relevance objection and compel discovery relevant to statute of limitations and laches defenses.**

With respect to MGA's Requests for Production, Mattel represented that it has not asserted relevance objections to Request Nos. 186-188 and 190. Mattel further noted that although it did assert a relevance objection to Request No. 189, that objection has nothing to do with MGA's statute of limitations or laches defenses. And, while it has raised relevance objections to Request Nos. 191-194, Mattel represented that it has not withheld any documents responsive to these requests on relevance grounds. Mattel offered to supplement its responses to MGA's Requests for Production to reflect this.

Mattel also represented that as to its responses to MGA's interrogatories, Mattel is not withholding responsive information on relevance grounds. MGA nonetheless contended that Mattel has purportedly failed to provide full and complete answers to Interrogatory Nos. 5, 9, 10 and 11. Mattel responded that its interrogatory responses are sufficient under the standard previously advocated by defendants and recently adopted by Judge Infante, which provides that interrogatory responses need only set forth "principal facts." Accordingly, Mattel indicated that it will not provide any further responses to MGA's interrogatories.

Mattel also stated that it will not supplement its answers to MGA's Requests for Admission, as the requests are defective on their face. Specifically, Mattel noted that MGA's requests are improperly compound.

24.    **Mattel's motion to compel the continued deposition of Isaac Larian and to overrule instructions not to answer.**

MGA stated that it would be amenable to producing Mr. Larian for a few additional hours of deposition, but that the examination would be limited to Phase Two topics and that the deposition would not take place until Phase Two. Mattel informed you that this proposal is unacceptable, as Mattel is entitled to examine Mr. Larian further on Phase One issues. Accordingly, this motion will have to be resolved by Judge Infante.

25.    **MGA Defendants' motion to quash deposition subpoenas [re non-parties Mel Woods, Daphne Gronich, Joe Tiongco, NPD Group, Inc., Ana Isabel Cabrera, Beatriz Morales, Moss Adams, and Wachovia Corp.; and Maria Elena Salazar].**

Mattel expressed its view that the Court's February 4, 2008 Order provides that depositions for which Judge Larson granted leave do not count toward the 24 deposition limit imposed by the Court. MGA disagreed, contending that the Court merely granted Mattel relief from the 24 deposition limit, but left open the question of whether those depositions count toward the limit.

Mattel informed MGA that it intends to proceed with its third-party depositions, notwithstanding MGA's erroneous reading of the Court's Order.

EXHIBIT _____ 9

PAGE _____ 201

Additionally, Mattel stated its position that the February 4 Order granted Mattel leave to take the depositions of Joe Tiongco and Daphne Gronich regarding document preservation. MGA again disputed Mattel's reading, arguing that the document preservation issue is likewise an open issue to be decided by the Discovery Master.

26.    **MGA's and Carter Bryant's joint motion to compel production of improperly withheld Mattel documents showing Mattel's investigation of MGA and Carter Bryant prior to November 2003 and to compel production of all "NHB" documents.**

Mattel agreed to submit the two "NHB" documents at issue in this motion to Judge Infante *in camera* for his consideration. The parties were unable, however, to reach an agreement on MGA's and Bryant's demand that Mattel conduct a new search for all documents using "NHB."

Defendants reiterated their position that they are entitled to a new search for all "NHB" documents, but defendants were unable to articulate a basis for such a search, given that Mattel has represented that it has not withheld any unprivileged document that falls into a category that Mattel has agreed or been ordered to produce on the basis that it uses "NHB."

Indeed, as Mattel noted, the fact that Mattel inadvertently produced the two "NHB" documents at issue here, and its production of other, non-privileged "NHB" documents, demonstrates that Mattel has not withheld unprivileged "NHB" documents.

27.    **Mattel's motion to compel a complete response to Mattel's supplemental interrogatory re Test Projects.**

The parties were unable to reach any resolution on this matter. Accordingly, the motion will be submitted to Judge Infante.

28.    **Mattel's motion for order enforcing Court's 1/25/07 Order compelling Bryant to produce computer hard drives and for sanctions.**

The parties were unable to reach any resolution on this matter as well. Accordingly, the motion will also be submitted to Judge Infante.

29.    **Mattel's (I) motion to compel documents only portions of which are allegedly privileged; (II) motion for order compelling production of withheld MGA (1) trademark search results, (2) date of first use information, and (3) factual data communicated for the purpose of filing trademark or other intellectual property applications; and (III) motion compelling production of third party communications improperly withheld under a claim of "common interest" privilege.**

MGA reiterated its prior positions on these motions and stated that it would not be offering any compromises. MGA explained that it was still working on re-producing documents on its August and September logs in redacted form but did not offer further guidance as to when Mattel can expect to receive such documents. Mattel reiterated that it would not object to these

EXHIBIT ___9___

PAGE ___202___

revisions being produced on a "rolling basis."  MGA also confirmed that it would not reproduce any documents on its November or later logs in redacted form.

As to the second motion, MGA reiterated its position that because the communications at issue involved attorney-client communications, any factual information, including date of first use information and trademark search results, are shielded from disclosure.  Mattel reiterated that it is not seeking any privileged advice, and that the documents containing date of first use information, trademark search results and the like can be produced in redacted form.

As to the third motion, MGA reiterated its position that its relationship with Bandai and other third parties entitles it to assert the common interest doctrine to avoid waiver of the underlying privilege.  Mattel reiterated the reasons why it disagrees.  Thus, this motion as well will have to be decided.

As to all the motions, MGA indicated that its position is that only the August and September logs are properly at issue.  Specifically, although the deficiencies raised in each of Mattel's motions are common across all of MGA's logs, MGA stated that only the August and September logs had been the subject of Mattel's initial meet and confer letter.  However, as Mattel stated, the lengthy meet and confer process was not limited to any specific logs, and the deficiencies in the later logs had been properly raised during the meet and confer process.  Mattel offered to discuss on an entry-by-entry basis the specific entries from MGA's November and January logs raised in Mattel's pending motions.  MGA refused to discuss any of these specific entries as "untimely."  MGA also refused to discuss the specific entries raised in Mattel's letter of February 6, 2008 as "untimely."  However, MGA did reiterate that its legal positions are the same as to all the logs.

MGA confirmed that, with the exception of the revised August and September logs it has promised to serve, the MGA parties and Larian have served all outstanding privilege logs.

Please let me know if you have any questions regarding the foregoing.  I look forward to hearing from you soon.

Respectfully submitted,

*Jon D. Corey* /SH

Jon D. Corey

cc:   Amy Park, Esq.
      Tim Miller, Esq.
      Paul M. Eckles, Esq.

07209/2411230.1                              16

EXHIBIT ____9____

PAGE ____203____

# EXHIBIT 10

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2       (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3       (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4       (joncorey@quinnemnauel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8   [Additional Counsel Listed On Following Page]

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 13 | Plaintiff, | Consolidated with |
| 14 | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15 | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 16 | | **JOINT REPORT TO DISCOVERY** |
| 17 | Defendant. | **MASTER REGARDING PENDING**<br>**DISCOVERY MOTIONS** |
| 18 | CONSOLIDATED ACTIONS | **Phase 1:** |
| 19 | | Discovery Cut-off:        January 28, 2008<br>Pre-trial Conference:   May 5, 2008 |
| 20 | | Trial Date:                   May 27, 2008 |

21

22

23

24

25

26

27

28

EXHIBIT _____ 10

2-28-08

PAGE _____ 204

1 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    Thomas J. Nolan (Bar No. 066992)
2 | 300 South Grand Avenue
    Los Angeles, California 90071-3144
3 | Telephone:  (213) 687-5000
    Facsimile:  (213) 687-5600
4 | E-mail:  tnolan@skadden.com

5 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    Raoul D. Kennedy (Bar No. 40892)
6 | Four Embarcadero Center, Suite 3800
    San Francisco, California 94111
7 | Telephone:  (415) 984-6400
    Facsimile:  (415) 984-2698
8 | E-mail:  rkennedy@skadden.com

9 | Attorneys for MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V.

10 |

11 | KEKER & VAN NEST, LLP
    John W. Keker (Bar No. 49092)
12 |  Michael H. Page (Bar No. 154913)
    Christa M. Anderson (Bar No. 184325)
13 | 710 Sansome Street
    San Francisco, California 94111

14 |

Attorneys for Carter Bryant

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

EXHIBIT ___ _10_

1       Pursuant to the Discovery Master's request, Carter Bryant, MGA

2   Entertainment, Inc., Isaac Larian and Mattel have met and conferred regarding the

3   currently pending discovery motions.  The parties have agreed as follows:

4

5   **Motions That Have Been Resolved**

6

7       Mattel's Motion to Enforce the 5/15/07 Order of the Discovery Master

8       Re Production of Larian v. Larian Documents and for Sanctions (filed

9       12/21/07)

10

11          Mattel will agree to withdraw this motion without prejudice.

12

13      Mattel's Motion to Compel Deposition of MGA Hong Kong and for

14      Sanctions (filed 1/28/08)

15

16          This Motion will be resolved by stipulation.

17

18      Mattel's Motion to Enforce the Court's 5/15/07 Order, to Compel MGA

19      to Produce Compelled Calendars, and for Sanctions (filed 1/28/08)

20

21          Mattel will agree to withdraw this motion without prejudice.

22

23      Mattel's Motion to Compel Production of Fee Agreements and

24      Privilege Logs from Leahy, Cloonan, Halpern and Marlow (filed

25      1/28/08)

26

27

28

EXHIBIT _____ _10_

PAGE _206_

1      Mattel will agree to withdraw this motion without prejudice upon

2      receipt of the fee agreements and certain representations

3      regarding documents being withheld.

4

5    Mattel's Motion for Leave to Obtain Discovery After the Phase 1

6    Discovery Cut-Off in Response to Subpoenas Served on Doll Bag, Inc.,

7    Veronica Marlow, Inc., Marlow Techno-Logic, Inc., People's Bank of

8    the Ozarks and Washington Mutual Bank (1/28/08)

9

10      This Motion will be resolved by stipulation.

11

12    Non-Party Veronica Marlow's Motion to Compel Mattel to Purge Itself

13    of Private Bank Records (filed 1/28/08)

14

15      This Motion will be resolved by stipulation.

16

17  **Motions To Be Taken Off Calendar Because They Relate Exclusively to Phase**

18  **2 Issues**

19

20    Mattel's Motion to Compel: 1) Deposition of Carlos Gustavo Machado

21    Gomez; and 2) Consent to Production of Electronic Mail Messages

22    (filed 11/15/07)

23

24    MGA's Motion to Compel Mattel to Produce Documents Responses to

25    MGA's Requests for Production Nos. 526 and 528 (filed 1/16/08)

26

27    Mattel's Motion to: 1) Enforce the Court's 8/13/07 Order and to

28    Compel; and 2) for an Award of Monetary Sanctions (filed 1/22/08)

EXHIBIT _____ _10_

**Motions That The Parties Have Been Unable To Resolve Or Narrow And Should Be Decided In Their Entirety**

MGA's Motion to Compel Mattel to Produce E-Mail (filed 1/16/08)

MGA, MGA HK, MGA Mexico and Isaac Larian's Motion to Quash Subpoenas or, in the Alternative, for Protective Order [re Mattel's subpoenas to ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia, and Wells Fargo] and Mattel's Countermotion to Compel Production (motion filed 12/21/07; counter motion filed 1/18/08);

Mattel's Motion for Reconsideration of Portions of Discovery Master's 12/31/07 Order (filed 1/16/08)

Mattel's Motion to Compel Production of Documents and Things by MGA and for Award of Monetary Sanctions [Mattel's Third Set of Requests for Production] (filed 1/28/08)

Mattel's Motion to Compel Production of Documents by MGA in Response to Mattel's Fifth Set of Requests for Documents and Things to MGA (filed 1/28/08)

Mattel's Motion to Compel Further Deposition of Margaret Hatch-Leahy and to Overrule Instructions Not to Answer (filed 1/28/08)

EXHIBIT _____ 10

PAGE _____ 208

1  MGA Defendants' Motion to Quash Subpoena to Bank of America or,
2  in the alternative, for Protective Order (filed 1/29/08)

3

4  Mattel's Motion to Compel MGA to Produce Communications
5  Regarding this Action (filed 2/5/08)

6

7  Mattel's Motion to Compel Production of Electronic Media From Third
8  Parties Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow (ex
9  parte briefing filed 2/6/08)

10

11  Mattel's Application to Enforce Court Orders Compelling Production of
12  Tangible Items (notice of change of hearing filed 2/20/08)

13

14  Mattel's Motion to Compel MGA and Carter Bryant to Return
15  Privileged Documents and for Protective Order (filed 2/28/08)

16

17  Mattel's Motion to Compel Deposition and Production of Documents of
18  Christensen Glaser Fink Jacobs Weil & Shapiro LLP (filed 2/29/08)

19

20  Motion of MGA Parties for Clarification re Portions of 2/15/08 Order
21  Granting in Part and Denying in Part Mattel's Motion to Compel
22  Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties
23  (filed 3/3/08)

24

25  MGAs' Motion to Compel Production of Documents from Third Party
26  Rights Management Consultants, Inc. (filed 3/10/08)

27

28

EXHIBIT _10_

PAGE _204_.

Mattel's Ex Parte Application For Protective Order Preventing MGA's Unauthorized Destructive Sampling Of The Prince Notary Book (filed 3/10/08)

MGA Defendants' Motion To Quash Larry Mcfarland's Deposition Subpoena (filed 3/17/08)

MGA Defendants' Motion For Protective Order From Mattel's Notice Of Deposition Of Lucy Arant (filed    3/17/08)

Third-Party Matthew Bousquette's Motion to Quash Subpoena Seeking the Deposition or, alternatively, Motion for Protective Order (filed 3/27/08)

Mattel's Motion for Protective Order re: Matthew Bousquette (filed 3/27/08)

**Motions That The Parties Have Been Able To Narrow And Are Now Ripe For Decision**

MGA's Motion to Compel Mattel to Produce Witnesses Pursuant to Notice of Deposition Under Rule 30(b)(6), or in the Alternative, for Leave to Serve Such Notice (filed 12/21/07)

<u>Requests No Longer at Issue (without prejudice to MGA's right to seek testimony on these topics in Phase 2)</u>

EXHIBIT _____ 10

PAGE 210

1  MGA withdraws its request as to Topics 21-23, 48, 60, 65,

2  and 71-85.

3  Requests that remain at issue as drafted:

4  Topics 8-9, 12-17, 19-20, 24, 27-32, 48, 58, 69

5  Requests that remain at issue but that have been narrowed

6  (without prejudice to MGA's right to seek further

7  testimony on these topics in Phase 2):

8  Topic 18:  MGA limits its request to testimony regarding Mattel's

9  policies and practices (as opposed to questions regarding specific

10  employees).

11  Topic 26:  MGA limits its request to people employed in the Mattel

12  design center from 1995 to the present (consistent with Judge

13  Infante's February 11, 2008 Order on Mattel's motion for

14  reconsideration).

15  Topic 39:  MGA limits its request to copying or infringement issues (as

16  opposed to theft of trade secrets issues).

17  Topics 42 & 47:  MGA limits its request to DIVA STARZ.

18  Topic 70:  MGA limits its request as to communications with third-

19  parties.

20

21  MGA's Motion to Overrule Mattel's Relevance Objection and Compel

22  Discovery Relevant to Statute of Limitations and Laches Defenses

23  (filed 1/17/08)

24

25  By this Motion, MGA seeks to compel Mattel to

26  supplement certain discovery responses based on the

27  Court's January 9, 2008 order overruling Mattel's

28

EXHIBIT 10

07209/2445768.1                    -8-                    PAGE 211

1    relevance objection to discovery relating to MGA's statute

2    of limitations and laches defenses.

3    <u>Requests No Longer at Issue</u>

4    During the meet and confer, Mattel represented that it has

5    not withheld any documents based on its relevance

6    objection.  Based on Mattel's representation, MGA

7    withdraws its motion as to the documents requests.

8

9    Mattel also represented that its response to Interrogatory

10   No. 5 is complete and that it will supplement its response

11   if it receives additional responsive information.  Based on

12   Mattel's representation, MGA withdraws its motion as to

13   Interrogatory No. 5.

14   <u>Requests Still at Issue</u>

15   Mattel's responses to Interrogatories Nos. 9-11 and

16   Requests for Admission No. 241, 243 and 245 remain at

17   issue.

18

19   Mattel's Motion to Compel Production of Documents Improperly

20   Withheld as Privileged by MGA, Isaac Larian and Third-Party David

21   Rosenbaum (filed 1/28/08)

22

23   MGA has agreed to produce some of the withheld

24   documents originally at issue in this motion.  Mattel has

25   withdrawn the motion as to others.  However, the parties

26   continue to dispute whether certain documents are

27   privileged.

28

EXHIBIT _____ 10

1    Mattel's Motion to Compel Production of Documents by Anne Wang
2    (filed (1/28/08)

3

4         Post-filing, the parties resolved all aspects of this motion
5         except as to one document withheld by Wang on a claim
6         of privilege.  The opposition and reply papers address this
7         document specifically.

8

9    Mattel's Motion to Compel Additional Deposition Testimony and
10   Production of Documents by Veronica Marlow (filed 1/28/08)

11

12        The documents aspect of this motion will be resolved by
13        stipulation.  The deposition aspect of the Motion, however,
14        will need to be resolved by the Discovery Master.

15

16   MGA's Motion to Overrule Mattel's and Richard De Anda's Objections
17   to Subpoena and to Compel Discovery (filed 1/28/08)

18

19        MGA has narrowed its motion to Request Nos. 5, 6 and
20        11.  With respect to Request Nos 5 and 6, MGA is seeking
21        documents sufficient to show (1) how much time Mr. De
22        Anda has been devoting to his business, and (2) what type
23        of work he has been doing in connection with his business.
24        MGA agrees that Mr. De Anda may redact any private
25        information pertaining to client identification.  With
26        respect to Request No. 11, MGA is seeking any
27        employment agreements between MGA and Mr. De Anda.

28

EXHIBIT _____ 10

1   Mattel's Motion to Compel MGA, MGA Hong Kong, Isaac Larian, and
2   Carter Bryant to Respond to Mattel's First Set of Requests for
3   Admission Propounded to MGA, Carter Bryant, MGA Hong Kong and
4   Isaac Larian (filed 2/7/08)

5

6        Mattel has withdrawn this motion as to Carter Bryant,
7        based on his supplemental responses.  The motion remains
8        at issue as to MGA, MGA Hong Kong and Isaac Larian.
9        They have also served supplemental responses, but the
10       parties disagree whether those responses are adequate.

11

12   **Motions About Which The Parties Are Continuing To Meet And Confer**

13   Mattel's Motion to Compel Deposition of Littler Mendelson (filed
14   12/14/07)

15

16   MGA and MGA Mexico's Motion for Protective Order from Mattel's
17   Fourth Notice of Deposition of MGA and Notice of Deposition of
18   MGA Mexico (filed 1/18/08)
19

20   Mattel's Motion to Compel Documents Only Portions of Which Are
21   Allegedly Privileged (1/22/08)
22

23   Mattel's Motion for Order Compelling Production of Withheld MGA
24   (1) Trademark Search Results, (2) Date of First Use Information, and
25   (3) Factual Data Communicated for the Purpose of Filing Trademark or
26   Other Intellectual Property Applications (filed 1/23/08)
27

28

EXHIBIT _____ 10

1   Mattel's Motion Compelling Production of Third-Party

2   Communications Improperly Withheld Under Claim of "Common

3   Interest" Privilege (filed 1/23/08)

4       For the convenience of the Discovery Master, counsel have attached as

5   Exhibit A a document setting forth the parties' desired order of priority for the

6   motions to be heard.

7

8   Respectfully submitted.

9

10  Dated: March 28, 2008

11  _____

    Michael Page

12  Keker & Van Nest, LLP

13  Attorneys For CARTER BRYANT

14

15  Dated: March 28, 2008

16  _____

    Paul Eckles

17  Skadden Arps Slate Meagher & Flom, LLP

    Attorneys For MGA ENTERTAINMENT, INC.;

18  ISAAC LARIAN; MGA ENTERTAINMENT (HK),

19  LIMITED; AND MGA DE MEXICO S.R.L. DE

    C.V.

20

21  Dated: March 28, 2008

22  _____

    Jon D. Corey

23  Quinn Emanuel Urquhart Oliver & Hedges, LLP

24  Attorneys for MATTEL, INC.

25

26

27

28

EXHIBIT ____ 10

215

# EXHIBIT A

EXHIBIT _____ 10

PAGE _____ 216

1

**Exhibit A**

1.   Mattel's Motion to Compel Production of Electronic Media From Third Parties Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow (ex parte briefing filed 2/6/08)

2.   MGA's Motion to Compel Mattel to Produce E-Mail (filed 1/16/08)

3.   Mattel's Application to Enforce Court Orders Compelling Production of Tangible Items (notice of change of hearing filed 2/20/08)

4.   MGA's Motion to Compel Discovery as to Issues as to Which Mattel has Waived the Attorney-Client and Work Product Privileges by Claims Assertion (filed 1/18/08)

5.   Mattel's Motion to Compel Production of Documents and Things by MGA and for Award of Monetary Sanctions [Mattel's Third Set of Requests for Production] (filed 1/28/08)

6.   MGA's Motion to Compel Mattel to Produce Witnesses Pursuant to Notice of Deposition Under Rule 30(b)(6), or in the Alternative, for Leave to Serve Such Notice (filed 12/21/07)

7.   Mattel's Motion to Compel Production of Documents by MGA in Response to Mattel's Fifth Set of Requests for Documents and Things to MGA (filed 1/28/08)

8.   MGA's Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Statute of Limitations and Laches Defenses (filed 1/17/08)

9.   Mattel's Motion to Compel MGA to Produce Communications Regarding this Action (filed 2/5/08)

10.  MGAs' Motion to Compel Production of Documents from Third Party Rights Management Consultants, Inc. (filed 3/10/08)

11.  Mattel's Motion to Compel Additional Deposition Testimony and Production of Documents by Veronica Marlow (filed 1/28/08)

EXHIBIT _____ 10

PAGE _____ 217

12. MGA's Motion to Overrule Mattel's and Richard De Anda's Objections to Subpoena and to Compel Discovery (filed 1/28/08)

13. Mattel's Motion to Compel Further Deposition of Margaret Hatch-Leahy and to Overrule Instructions Not to Answer (filed 1/28/08)

14. MGA's and Carter Bryant's Motion to Compel An Unredacted Version Of M0074400, Mattel's Investigative File 02-299 And The Further Deposition Of Richard De Anda (filed 1/4/08)

15. Mattel's Motion to Compel Deposition and Production of Documents of Christensen Glaser Fink Jacobs Weil & Shapiro LLP (filed 2/29/08)

16. MGA Defendants' Motion to Quash Subpoena to Bank of America or, in the alternative, for Protective Order (filed 1/29/08)

17. MGA, MGA HK, MGA Mexico and Isaac Larian's Motion to Quash Subpoenas or, in the Alternative, for Protective Order [re Mattel's subpoenas to ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia, and Wells Fargo] and Mattel's Countermotion to Compel Production (motion filed 12/21/07; counter motion filed 1/18/08);

18. Motion of MGA Parties for Clarification re Portions of 2/15/08 Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties (filed 3/3/08)

19. MGA and MGA Mexico's Motion for Protective Order from Mattel's Fourth Notice of Deposition of MGA and Notice of Deposition of MGA Mexico (filed 1/18/08)

20. MGA Defendants' Motion For Protective Order From Mattel's Notice Of Deposition Of Lucy Arant (filed 3/17/08)

21. MGA Defendants' Motion To Quash Larry Mcfarland's Deposition Subpoena (filed 3/17/08)

22. Third-Party Matthew Bousquette's Motion to Quash Subpoena Seeking the Deposition or, alternatively, Motion for Protective Order (filed 3/27/08)

23. Mattel's Motion for Protective Order re: Matthew Bousquette (filed 3/27/08)

EXHIBIT _____ 10