KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S MOTION IN LIMINE NO. 1 TO EXCLUDE: (1) EVIDENCE OR ARGUMENT THAT BRYANT'S INVENTION ASSIGNMENT AGREEMENTS ARE UNFAIR OR UNCONSCIONABLE; AND (2) EVIDENCE OF OTHER VERSIONS OF MATTEL'S INVENTIONS AGREEMENTS; AND NON-OPPOSITION REGARDING (3) EXPERT TESTIMONY OF D. JAN DUFFY**<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Dept: Courtroom 1<br>Judge: Hon. Stephen G. Larson<br><br>Date Comp. Filed: April 13, 2005<br><br>**Phase 1**<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

416302.02

CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S MOTION IN LIMINE NO. 1
CASE NO. CV 04-09049 SGL (RNBx)

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ............................................................................................................ 2

    A.     The different versions of Mattel's Employee Agreement are admissible and relevant to proper interpretation of the 1999 Bryant-Mattel agreement. ............................................................................ 2

        1.     In California, courts must consider all relevant evidence, including evidence of subsequent conduct and drafting history, and such evidence is admissible if the contract in question is susceptible to the contended interpretation. ............................................................. 2

        2.     Bryant has demonstrated that the key terms of the Employee Agreement is reasonably susceptible to different interpretations, thus making extrinsic evidence (such as variations of this same form contract) admissible. ............................................................. 4

        3.     The Employee Agreements at issue here constitute admissible "course of conduct" evidence. .................................. 6

        4.     Evidence of subsequent contracts is not prejudicial, would not prolong the trial, and would aid the jury in properly interpreting the contract. .............................................. 8

    B.     Bryant and the MGA Parties can properly introduce evidence, suggestions, or arguments related to the unfair or unreasonable interpretation of the Employee Agreement under the canons of contract interpretation. ............................................. 9

    C.     Bryant does not intend to call D. Jan Duffy as a witness at trial, or introduce her expert opinion as evidence at trial ................... 12

III. CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blancha v. Raymark Industries*
972 F.2d 507 (3rd Cir. 1992)...................................................................................8

*City of Oakland v. Harding ESE, Inc.*
2004 WL 2646654 (N.D. Cal. Nov. 17, 2004) ........................................................3

*Clinton Physical Therapy Services, P.C. v. John Deere Health*
714 N.W.2d 603 (Iowa 2006)..................................................................................5

*Fudnerburg v. U.S., Case No. C 02-05461 JW*
2005 WL 6019702 (N.D.Cal. 2005).......................................................................11

*Laborers Health and Welfare Trust Fund for Northern California v.
Kaufman & Broad of Northern California, Inc.*
707 F.2d 412 (9th Cir. 1983)...................................................................................4

*Martin Lane Co. v. U.S.*
432 F.2d 1013 (Ct. Cl. 1970)...................................................................................5

*Obrey v. Johnson*
400 F.3d 691 (9th Cir. 2005)...................................................................................8

*Owens-Brockway Glass Container Inc. v. Seaboard Surety Co.*
Case No. Civ. S-91-1044 DFL, 1992 WL 696961 (E.D. Cal. 1992) .......................4

## STATE CASES

*Atlas Assurance Co. v. McCombs Corp.*
146 Cal. App. 3d 135 (1983)....................................................................................5

*Badie v. Bank of America*
67 Cal. App. 4th 779 (1998).....................................................................................5

*City of Hope National Medical Center v. Genentech, Inc*
Cal. Rptr. 3d ___, 2008 WL 1820916 (April 24, 2008)...........................................5

*Cubic Corp. v. Marty*
185 Cal. App. 3d 438 (1986)..................................................................................10

*Employers Reinsurance Co. v. Superior Court*, Case No. B200959,
___Cal. Rptr. 3d ___ 2008 WL 906644 (April 3, 2008) ..........................................7

*Goddard v. S. Bay Union High School District*
79 Cal. App. 3d 98 (1978).....................................................................................10

*Graham v. Scissor-Tail*
28 Cal. 3d 807 (1981)............................................................................................10

*Montrose Chemical Corp. v. Admiral Insurance Co.*
10 Cal. 4th 645 (1995)........................................................................................4, 7

*Pac. Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*
69 Cal. 2d 33 (1968) ...................................................................................... 2, 3, 9

*Parsons v. Bristol Development Co.*
62 Cal. 2d 861 (1995) .............................................................................................. 3

*People v. Shelton*
37 Cal. 4th 759 (2006) ............................................................................................ 3

*S. Cal. Edison Co. v. Superior Court of Los Angeles*
37 Cal. App. 4th 839 (1995) ......................................................................... 3, 4, 7, 9

*S. Pac. Transport Co. v. Santa Fe Pac. Pipelines, Inc.*
74 Cal. App. 4th 1232 (1999) ............................................................................... 6, 7

*Spott Electrical Co. v. Industrial Indemnity Co.*
30 Cal. App. 3d 797 (1973) .................................................................................... 3

*Western Medical Enterprises, Inc. v. Albers*
166 Cal. App. 3d 383 (1985) .................................................................................. 3

# FEDERAL STATUTES

28 U.S.C. § 1292 ..................................................................................................... 1

Fed. R. Civ. P. 7(b)(1) ............................................................................................. 2

Fed R. Evid. 403 ..................................................................................................... 8

# STATE STATUES

Cal. Civil Code § 1654 ........................................................................................... 1

# I. INTRODUCTION

Mattel seeks to prevent Carter Bryant and MGA from introducing evidence relevant to proper contract interpretation.[1] By so doing, Mattel hopes to convince the jury to adopt its interpretation of an adhesive form contract that it drafted. The Court should not permit Mattel to hide such critically relevant evidence from the jury. Specifically, if the Court declines to adopt Bryant's interpretation of "inventions" and "during my employment" (as set forth in Bryant's motion for partial summary judgment), interpretation of those terms needs to go to the jury. Further, pursuant to the canons of contract interpretation in California, the jury must hear evidence argument regarding Mattel's prior and subsequent revisions to the form contract, as well as evidence and argument precluding the jury from adopting an unfair or unconscionable interpretation of any of those terms.

Therefore, Bryant respectfully requests that Mattel's Motion in Limine No. 1 be DENIED as it pertains to the introduction of evidence, arguments, or suggestions regarding (1) prior and subsequent versions of the Employee Agreement and (2) the unfairness or unreasonableness of Bryant's Employee Agreement (or any other alleged "agreement").[2]

---

[1] Bryant is aware that the Court's April 25, 2008 Order Granting In Part, and Denying In Part, and Deferring In Part the Parties' Motions for Partial Summary Judgment (hereinafter "April 25 Order") includes certain decisions regarding the Employee Agreement's interpretation and enforceability which may limit some of the arguments available to Bryant in opposing Mattel's Motion In Limine No. 1. However, because Bryant intends to file a Motion for Reconsideration, and/or a request for certification under 28 U.S.C. § 1292, Bryant will present all arguments available to him until the Court rules on Bryant's Motion for Reconsideration and for certification under Section 1292. Further, in filing this Opposition, Bryant does not concede his arguments set forth in his motion for partial summary judgment – i.e., that the Court can and should interpret key terms of the Employee Agreement in the fashion set forth in Bryant's motion for partial summary judgment, that those terms cannot be interpreted on summary judgment in the fashion urged by Mattel, and that at a minimum the jury would have to interpret those terms utilizing the evidence that Mattel seeks to exclude by this motion in limine.

[2] As stated below, Bryant does not oppose Mattel's Motion in Limine No. 1 in regards to the expert report or testimony of D. Jan Duffy.

---

1

CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S MOTION IN LIMINE NO. 1
CASE NO. CV 04-09049 SGL (RNBx)

416302.02

## II. ARGUMENT

**A. The different versions of Mattel's Employee Agreement are admissible and relevant to proper interpretation of the 1999 Bryant-Mattel agreement.[3]**

    **1. In California, courts must consider all relevant evidence, including evidence of subsequent conduct and drafting history, and such evidence is admissible if the contract in question is susceptible to the contended interpretation.**

Evidence of the parties' subsequent conduct and the drafting history of a form contract are relevant and admissible under California law governing contract interpretation. Bryant requests that the court apply these established procedures of California law and admit evidence of the different versions of Mattel's form employee contract, as such evidence is relevant to and helpful towards properly interpreting the contract at issue.

In California, the test for admissibility of extrinsic evidence "is not whether [the contract] appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968) (citations omitted).

Courts follow a two step process to determine admissibility of extrinsic evidence. <u>First,</u> courts weigh *all* available evidence in order to answer one

---

[3] Mattel also asks the court to prevent Bryant from introducing all *prior* forms of the Employee Agreement, but makes no argument as to why the prior agreements should be barred. Compare MIL No. 1 at 1 ("Mattel further requests that the Court exclude any evidence or argument relating to Mattel's subsequently adopted (or prior) inventions agreements that Mattel used with employees other than Bryant.") and at 4 ("Later Versions of Mattel's Inventions Agreement are Irrelevant and Unfairly Prejudicial."). Mattel has not met their burden of proof, nor complied with Federal Rule of Civil Procedure 7(b)(1) (written motions must "state with particularity the grounds for seeking the order."); *see also* Local Rule 7-5(requiring a "brief but *complete* memorandum in support" of the motion) (emphasis added) and Local Rule 7-4 (courts may decline to consider a motion unless it meets the requirements of L.R. 7-5). Mattel made no legal or factual arguments as to why "prior" agreements should not be introduced at trial, and Mattel is barred from raising any such arguments on reply. As such, their motion is deficient as to "prior" Employee Agreements, and should not be considered. While this brief primarily addresses the subsequent agreements, the cases cited in this brief regarding the admissibility of the drafting history of form agreements provides ample support for the introduction of "prior" versions of the Employee Agreement.

question: is the contract reasonably susceptible to more than one interpretation. *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d at 39-40; *S. Cal. Edison Co. v. Superior Court of Los Angeles*, 37 Cal. App. 4th 839, 847-48 (1995); *see also Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861; 865-66 (1965). Courts must consider all available evidence of the parties' intent *including extrinsic evidence* in making that determination. *Pac. Gas & Elec.*, 69 Cal. 2d at 39-40 ("[R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties."). This includes consideration of "objective manifestations of the parties' intent" such as "the subsequent conduct of the parties." *People v. Shelton,* 37 Cal. 4th 759, 767 (2006) (citations omitted); *Spott Electrical Co. v. Industrial Indemnity Co.*, 30 Cal. App. 3d 797, 808 (1973) (subsequent conduct "may be, in effect, a practical construction of what [the parties] intended."). <u>Second</u>, "in light of all the circumstances," courts determine if the contract is fairly susceptible to one of the contended interpretations. *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d at 40. If the answer is "yes" (i.e., the contract is indeed susceptible to the offered interpretation), then the extrinsic evidence is admissible. *Id.* at 40-41.[4]

Time and again, courts applying California law hold that the subsequent conduct of parties is relevant and admissible evidence in contract interpretation. *City of Oakland v. Harding ESE, Inc.*, 2004 WL 2646654, at *4 (N.D. Cal. Nov. 17, 2004) ("The Court may consider subsequent conduct of the parties to determine their contractual intent."); *Western Medical Enterprises, Inc. v. Albers*, 166 Cal.App. 3d 383, 391 (1985) ("The rule is well settled that where a contract is

---

[4] Bryant is aware the Court's April 25 Order states that "The interpretation advanced by Bryant is . . . not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials." Order at 4. However, Bryant intends to move for reconsideration and/or Section 1292 certification of this order, and therefore continues to assert the reasonableness of his interpretation, and the ambiguity of the agreement at issue pending the Court's ruling on Bryant's motion for reconsideration. Furthermore, Bryant preserves all of his rights with respect to the April 25, 2008 Order, including any and all rights on appeal.

ambiguous, the court may consider the subsequent conduct of the parties for the purpose of discovering their intent in entering into a contract."); 1 B.E. Witkin, Summary of California Law, Contracts § 749 (10th ed. 2007). Courts give "great weight" to such conduct in determining the parties' intent. *Laborers Health and Welfare Trust Fund for Northern California v. Kaufman & Broad of Northern California, Inc.*, 707 F.2d 412, 418 (9th Cir. 1983). The introduction of "subsequent conduct" is not limited to situations in which the parties act jointly: "[T]he conduct of one party is relevant to show that the contract is reasonably susceptible to the meaning evidenced by the party's conduct." *S. Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 851 (1995) (internal citations omitted). In addition, the drafting history of standardized forms or policies is relevant and admissible. *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 670 (1995) (drafting history of standardized form policy was relevant to interpreting meaning of contract); *Owens-Brockway Glass Container Inc. v. Seaboard Surety Co.*, Case No.. Civ. S-91-1044 DFL, 1992 WL 696961 (E.D. Cal. 1992) (finding considerable California case law permitting introduction of extrinsic evidence of drafting history as evidence of intent of the drafter.).

2. **Bryant has demonstrated that the key terms of the Employee Agreement is reasonably susceptible to different interpretations, thus making extrinsic evidence (such as variations of this same form contract) admissible.**

Here, Bryant has submitted evidence sufficient to show that his interpretation of the contract is reasonable, a fact that even Mattel's own counsel admitted during the April 22, 2008 hearing on the motions for summary judgment.[5] In short, the Employee Agreement is a contract of adhesion, drafted by Mattel's lawyers, which Mattel requires all Design Center employees to sign in order to be employed at Mattel.[6] Any ambiguity in such a contract must be decided against

---

[5] Trinidad Decl., Exh. 1 (Excerpts from Transcript of April 22, 2008 Hearing) at 41:3-18.

[6] *See* Proctor Decl. at Exh. 7 (Employee Confidential Information and Inventions Agreement signed by Carter Bryant, dated January 4, 1999); Trinidad Decl., Exh. 6 (Mattel's Corrected

4

1 the drafter. *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998). Mattel's lawyers substantially rewrote and expanded its form agreement in 2004 to (i) refer expressly to "works, original works of authorship," "copyrights," "mask works," and "other intellectual property rights"; (ii) add a sub-section specifically discussing "works made for hire . . . as that term is defined the United States Copyright Act"; and (iii) broaden the "whether patentable or unpatentable" language to instead state "whether or not patentable, copyrightable, or protectible as trade secret."[7] Those amendments are critical evidence that the jury should hear in considering the proper interpretation of the agreement signed by Bryant, as it shows that Mattel knew how to draft clearer and broader language when it chose to do so – it simply chose not to in the version of the contract signed by Bryant.[8] Under California's test of admissibility, Mattel's prior and subsequent versions of the Employee Agreement are relevant and admissible.

None of the cases to which Mattel cites supports its contention that prior and subsequent versions of a form contract are inadmissible under California law. Two of the cases cited by Mattel (*Clinton Physical Therapy Services, P.C. v. John Deere Health*, 714 N.W. 2d 603 (Iowa 2006) and *Martin Lane Co. v. U.S.*, 432 F.2d 1013, 1021 (Ct. Cl. 1970)) are from courts in other states or from the U.S. Court of Claims, and their non-binding holdings are inconsistent with binding California authority cited by Bryant. Further, *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 143 (1983), provides no support for Mattel's

---

Statement of Genuine Issues Regarding Bryant's Separate Statement of Uncontested Facts [Document No. 2823]) at ¶ 6 ("A prospective employee has the option of signing the on-boarding paperwork if he or she wishes to become a Mattel employee. The prospective employee is free not to join Mattel and not sign the Paperwork.").

[7] Compare Proctor Decl., Exh. 7 (1999 Employee Agreement) with *id.*, Exh. 8 (Mattel Employee Confidential and Inventions Agreement, dated March 22, 2004).

[8] Bryant disagrees with Mattel's inaccurate comparison of the 1999 and 2004 agreement, in which Mattel argues that the latter was merely "adding specificity" to the earlier agreements. Nonsense – the 2004 agreement added new and additional terms that were not present in the 1998 Employee Agreement. Regardless, it is the trier of fact's province to determine inferences that arise from changes to the agreement. *City of Hope National Medical Center v. Genentech,*

1  argument. In *Atlas*, Defendant McCombs argued that the insurance policy it
2  entered into with Atlas was ambiguous, and submitted extrinsic evidence in the
3  form of a recently signed declaration, stating the defendant's interpretation of the
4  contract provision at issue. *Id.* at 143. The Court "provisionally accept[ed]" the
5  declaration in order to determine if the contract was susceptible to the offered
6  interpretation. *Id.* However, after determining that the insurance policy was not
7  "reasonably susceptible" to such interpretation, the court excluded defendant's
8  declaration as irrelevant. *Id.* at 144.

9  Here, however, Bryant *has* presented a reasonable interpretation of the
10 contract, and Mattel concedes that point.[9] In addition, Mattel's subsequent conduct
11 in substantially rewriting and expanding the scope of the March 2004 Agreement
12 provides relevant evidence that Mattel understood that the term "inventions" (as
13 used in the 1999 Agreement) to be narrower then its current overly broad
14 interpretation. Moreover, Bryant here provides evidence of Mattel's conduct prior
15 to any controversy over the contract's terms,[10] whereas defendant McCombs
16 presented a post-dispute declaration. *See S. Pac. Transportation Co.*, 74 Cal. App.
17 4th at 1242 ("[T]he acts and conduct of the parties with knowledge of its terms,
18 and before any controversy arises as to its meaning, is relevant on the issues of the
19 parties' intent."). Because the Employee Agreement is susceptible to Bryant's
20 interpretation, extrinsic evidence (including subsequent conduct of the parties and
21 drafting history of a form contract) is admissible and relevant to understanding the
22 parties intent.

23 **3.    The Employee Agreements at issue here constitute admissible "course of conduct" evidence.**

25 Furthermore, contrary to Mattel's argument, Mattel's decision to adopt

---

26 *Inc.*, ___ Cal. Rptr. 3d ___, 2008 WL 1820916, at *13 (April 24, 2008),
27 [9] Trinidad Decl., Exh. 1 at 41:3-18.
28 [10] *See* Proctor Decl. Exh. 8 (March 22, 2004 dated Mattel Employee Confidential and Inventions Agreement, dated March 22, 2004); *id.*, Exh. 14 (Mattel's Complaint in *Mattel v. Bryant*, Case

changes to the new agreement in 2004 constitutes relevant and admissible "course of conduct" evidence. As described above, California law overwhelmingly favors the introduction of extrinsic evidence in determining contract interpretation and the parties understanding or intent. This includes acts or conduct of either party *after* the contract was entered into, but before any dispute arose. *S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.* 74 Cal. App. 4th 1232, 1242 (1999); *S. Cal. Edison Co.*, 37 Cal. App. at 851. In addition, in cases involving form policies or contracts, Courts have considered the drafting history of that form in order to understand the parties' intent. *See Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 670 (1995). The Employee Agreement at issue here is a form contract drafted by Mattel, and that Mattel requires all Design Center employees to sign.[11] It is a non negotiable contract of adhesion between Mattel and each Mattel employee.[12] The drafting history of that agreement is relevant to a proper understanding of that agreement. Moreover, Mattel's revisions embodied in the 2004 Agreement (revisions that were made *prior* to Mattel filing suit against Bryant)[13], constitute relevant subsequent conduct. Such evidence cannot be barred because it arose prior to a dispute.[14]

---

No. BC314398, dated April 27, 2004).

[11] *See* Proctor Decl. at Exh. 7; Trinidad Decl., Exh. 6 at ¶ 6 ("A prospective employee has the option of signing the on-boarding paperwork if he or she wishes to become a Mattel employee. The prospective employee is free not to join Mattel and not sign the Paperwork."); Trinidad Decl., Exh. 2 (Excerpts from Deposition of Maureen Tafoya) at 31:19-32:11; *id.*, Exh. 3 (Excerpts from Deposition of Teresa Newcomb) at 43:17-20, 113:12-19, 114:7-12; *id.*, Exh. 4 (Excerpts from Deposition of Kathleen Simpson-Taylor) at 65:4-14, 52:17-53:25.

[12] *Id.*

[13] *See* Proctor Decl. Exh. 8 (March 22, 2004 dated Mattel Employee Confidential and Inventions Agreement, dated March 22, 2004); *id.*, Exh. 14 (Mattel's Complaint in *Mattel v. Bryant,* Case No. BC314398, dated April 27, 2004).

[14] In *Employers Reinsurance Co. v. Superior Court*, Case No. B200959, ___ Cal. Rptr. 3d ___, 2008 WL 906644 (April 3, 2008), cited by Mattel, the Court concluded that "course of conduct" evidence is admissible and relevant "in ascertaining the meaning of the parties' agreement," and that it may also "supplement or qualify the terms of the agreement" and also "show a waiver or modification of any term inconsistent with the course of conduct." *Id.* at *7 (citations omitted). The court in that case found certain evidence irrelevant to the interpretation of insurance policy, where the parties had entered into a subsequent contract—an agreement which specifically stated

### 4. Evidence of subsequent contracts is not prejudicial, would not prolong the trial, and would aid the jury in properly interpreting the contract.

Mattel is seeking an astronomical amount of money in damages in this case, and the Court has allotted ample time to each party to present relevant evidence to the jury. Given the extent of damages in this case, and the critical importance and relevance of this evidence, Mattel's claims that the evidence would "needlessly prolong" the trial are insupportable. See Mattel MIL No. 1 at 6. It will take little time to introduce evidence of the changes to Mattel's subsequent Employee Agreements. More importantly, any additional time it would take at trial to discuss Mattel's subsequent conduct pales in comparison to the prejudice Bryant would suffer from not being able to properly defend himself with all relevant evidence, especially given the overwhelming California case law in favor of the admissibility of such evidence. *See Obrey v. Johnson*, 400 F.3d 691, 698-99 (9th Cir. 2005) (finding trial court error in excluding relevant evidence under FRE 403 for waste of time or undue delay).

Nor is there any merit to Mattel's argument that the probative value of this evidence is "substantially outweighed" by risk of confusion of the issues. Here, and as discussed above, the evidence of subsequent changes to the Employee Agreement is highly probative as to contract interpretation – a central issue in the case. Moreover, there is no risk that the evidence of subsequent contracts would somehow mislead the jury by giving undue weight to the subsequent contracts. The jury is capable of realizing that the contract at issue is the 1999 agreement between Mattel and Bryant, and that subsequent contracts are meant only so as to clarify the parties' understanding and intent. Subsequent (and prior) versions of the form Employee Agreement is relevant, admissible, and non-prejudicial, and

---

that "it shall not be used in any Court or Arbitration to create, prove or interpret the obligations under general liability or other liability policies." Id. at *2. While *Employers Reinsurance* involved two separate and distinct agreements, Bryant asks only for the introduction of different versions of the same agreement as relevant "subsequent conduct" and "course of conduct"

should not be barred under Fed R. Evid. 403. *See Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3rd Cir. 1992) ("Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative. ... The balance under the rule should be struck in favor of admissibility.") (internal citations omitted).

**B.  Bryant and the MGA Parties can properly introduce evidence, suggestions, or arguments related to the unfair or unreasonable interpretation of the Employee Agreement under the canons of contract interpretation.[15]**

Mattel's request to bar "all argument, evidence or suggestion that Bryant's agreements with Mattel" are "unfair or unconscionable" is overly broad, and would exclude proper and relevant evidence necessary in order to properly interpret the contract. Neither the Court's July 18, 2006 order nor Bryant's decision to drop the affirmative defense of unconscionability warrants the exclusion of such a broad swath of evidence. In short, while Bryant will not seek to argue the unconscionability of the entire contract (as that argument was rejected by the Court's July 2006 Order), the canons of contract interpretation require that the jury (in assessing the proper interpretation of the contract) be aware that a contract of adhesion such as this cannot be interpreted in a fashion that is unfair or unreasonable.

First, the evidence that Mattel attempts to exclude is relevant to the interpretation of the contract, a point which Mattel has not disputed. As discussed above, California law generally favors the introduction of extrinsic evidence to determine whether or not a contract is ambiguous, and also allows such evidence in

---

evidence.

[15] Bryant is aware that the Court's April 25, 2008 Order regarding the parties' motions for partial summary judgment states, "The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations." Order at 5. As stated earlier, Bryant intends to move for reconsideration, and/or certification, and, accordingly, continues to assert the admissibility of the disputed evidence at issue in this motion. Furthermore, Bryant preserves all of his rights with respect to the April 25, 2008 Order, including any and all rights on appeal.

contract interpretation. *Pac. Gas & Elec.*, 69 Cal. 2d at 39-40; *S. Cal. Edison Co. v. Superior Court of Los Angeles*, 37 Cal. App. 4th 839, 847-48 (1995).

Moreover, courts are particularly careful in interpreting contracts of adhesion, such as the Employee Agreement. Because of the adhesive nature of this agreement, courts find it improper to interpret the contract in a way that is outside of the reasonable expectations of the employee, or is oppressive and unfairly on-sided. *Graham v. Scissor-Tail*, 28 Cal. 3d 807, 819-20 (1981); *Cubic Corp. v. Marty*, 185 Cal. App. 3d 438 (1986). Courts have found that a contract of adhesion exist when "the party with superior bargaining power permits the other party to adhere to the contract or reject it, but does not permit an opportunity to bargain over its terms." *Goddard v. S. Bay Union High Sch. Dist.*, 79 Cal. App. 3d 98, 105 (1978); *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981). Mattel concedes that Bryant had no choice but to sign the agreement if he wanted to work at Mattel.[16] And Bryant was not given any opportunity to negotiate that instrument.[17] Mattel, therefore, cannot enforce an improper or unreasonable interpretation of the Employee Agreement against Bryant. Nothing in the July 18 Order addresses this aspect of Mattel's proffered contract interpretation, and therefore, the order does not prevent Bryant from submitting evidence that the interpretation urged by Mattel is unreasonable, oppressive, or unfairly one-sided as a matter of contract interpretation.

Second, the July 18 Order does not prevent Bryant from introducing evidence and arguments regarding the unreasonableness or unfair aspects of Mattel's current *interpretation* of certain terms in the Employee Agreement. Quite

---

[16] Mattel's Corrected Statement of Genuine Issues Regarding Bryant's Separate Statement of Uncontested Facts [Document No. 2823] at ¶ 6 ("A prospective employee has the option of signing the on-boarding paperwork if he or she wishes to become a Mattel employee. The prospective employee is free not to join Mattel and not sign the Paperwork."); Trinidad Decl., Exh. 2 (Excerpts from Deposition of Maureen Tafoya) at 31:19-32:11; *id.*, Exh. 3 (Excerpts from Deposition of Teresa Newcomb) at 43:17-20, 113:12-19, 114:7-12; *id.*, Exh. 4 (Excerpts from Deposition of Kathleen Simpson-Taylor) at 65:4-14, 52:17-53:25.

[17] *Id.*

to the contrary, Bryant has consistently asserted that the July 18 Order was decided on the narrow basis of substantive unconscionability of the Employee Agreement.[18] The July 18 Order did not consider whether certain terms of the Employee Agreement, when given the interpretation proffered by Mattel in this litigation, are unreasonable, or unfair. Thus, it does not bar Bryant from introducing such evidence.

Third, Mattel's Motion in Limine should be rejected as overly broad in that it seeks to prevent introduction of evidence related to "agreements" that were not discussed in the July 18 Order. *See generally Fudnerburg v. U.S.*, Case No. C 02-05461 JW, 2005 WL 6019702 at *1 (N.D.Cal. 2005) (denying motion in limine as overbroad). In that order, the Court, looking only at the four corners of the Employee Agreement, stated that "upon examination of the *terms of the Employment Agreement*, the Court is unable to conclude that the element of substantive unconscionability has been met." July 18 Order at 14 (emphasis added).[19] Now Mattel seeks to exclude all evidence, argument or suggestion of unfairness, unreasonableness, or unconscionability as to any "agreement" that may have existed between Mattel and Bryant. *See* Mattel's MIL No. 1 at 16 (discussing "Bryant's agreements").[20] Because such a request is legally unfounded and overbroad, it should be denied.

Fourth, Mattel's additional arguments regarding Bryant's waiver of the affirmative defense of unconscionability are equally unsupported. Bryant's waiver of an affirmative defense does not bar him from introducing evidence and arguments about the unreasonableness or oppressiveness of Mattel's urged

---

[18] Bryant does not concede that the agreement fell within Bryant's reasonable expectations or that the Court's order rejected his claims of procedural and substantive unconscionability.

[19] Bryant preserves all of his rights with respect to the Court's July 18, 2006 Order dismissing Bryant's counterclaims pertaining to the validity and enforceability of the Employee Agreement, including any and all rights on appeal.

[20] Mattel claims that Bryant had multiple agreements in place with Mattel, including the Conflict of Interest Questionnaire. *See* Trinidad Decl., Exh. 5 (Mattel, Inc.'s Second Amended Answer

interpretation as relevant evidence for contract interpretation purposes. An affirmative defense is a narrow vehicle which, if successful, bars enforcement of the contract at issue. Nothing more. While Bryant may be barred from raising evidence or argument that the contract as a whole should not be enforced due to unconscionability, that does not mean that he can or should be barred form raising such evidence (or relying on standard cannons of contract interpretation) to aid the Court in contract interpretation.

In short, Mattel's request here is overly broad in that it seeks to prevent Bryant from raising evidence regarding alleged agreements that were not considered in the Court's July 18 Order, and tries to prevent Bryant from raising proper and relevant evidence regarding contract interpretation. Nor has Mattel presented any support for its claim that a waiver of the affirmative defense of unconscionability bars the introduction of evidence related to the question of contract interpretation. As such, Mattel's motion should be denied.

**C.  Bryant does not intend to call D. Jan Duffy as a witness at trial, or introduce her expert opinion as evidence at trial.**

In light of the Court's April 25 Order (and without waiving rights on appeal), Bryant does not contest Mattel's Motion In Limine to the extent that it seeks to preclude the introduction of the expert report and/or testimony of D. Jan Duffy at trial.

### III.  CONCLUSION

For all the foregoing reasons, Bryant respectfully requests that the Court DENY the relief sought in Mattel's Motion In Limine Number, except as to its request to bar the testimony of Jan Duffy.

---

and Counterclaims) at ¶118.

| | | |
|---|---|---|
| 1 | Dated: April 28, 2008 | KEKER & VAN NEST, LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ Matthew M. Werdegar <br> MATTHEW M. WERDEGAR <br> Attorneys for Plaintiff <br> CARTER BRYANT |

13

CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S MOTION IN LIMINE NO. 1
CASE NO. CV 04-09049 SGL (RNBx)

416302.02