QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

Hon. Stephen G. Larson

**[PUBLIC REDACTED]**
MATTEL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MGA PARTIES' MOTION IN LIMINE NO. 1 TO EXCLUDE ALL EVIDENCE RELATING TO LITIGATION OR OTHER PROCEEDINGS BETWEEN ISAAC LARIAN AND FARHAD LARIAN

[Notice of Lodging and Declarations of Tamar Buchakjian and Stephen Hauss filed concurrently herewith]

Hearing Date: May 21, 2008
Time: 1:00 p.m.
Place: Courtroom 1

**Phase 1:**
Pre-trial Conference: May 19, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 2

A. The *Larian v. Larian* Proceedings Centered Around The Stage Of Development Of Bratz In The Year 2000. ........................................ 2

B. Arbitration Testimony Confirms That The Development Of Bratz In 2000 Was A Central Factual Issue In *Larian v. Larian*............ 5

C. Farhad Larian, While Working For MGA, Willfully Destroyed Much Of The Evidence He Had Gathered Regarding The Development Of Bratz In 2000............................................................. 8

ARGUMENT....................................................................................................... 10

I. *LARIAN V. LARIAN* EVIDENCE IS RELEVANT BECAUSE, LIKE HERE, IT RELATES TO FACTUAL ISSUES ABOUT THE DEVELOPMENT AND CONCEALMENT OF BRATZ IN 2000............... 10

A. *Larian v. Larian* At Its Core Involved Facts About The Stage Of Development Of Bratz In 2000.......................................................... 10

B. *Larian v. Larian* Concealment Evidence Is Relevant.......................... 11

C. A Broad Exclusion Order Would Be Improper. ................................ 14

II. TESTIMONY FROM THE *LARIAN V. LARIAN* ARBITRATION IS NOT *PER SE* INADMISSIBLE HEARSAY................................................. 14

A. Maurus's Testimony May Be Admissible Under Rule 804(b)(1)......... 15

1. Maurus May Not Be Available For Trial. ................................ 15

2. If Maurus Is Unavailable, Her Testimony Is Admissible As To Isaac Larian, MGA, MGA Hong Kong and Bryant Because Isaac Larian Was A "Predecessor In Interest" To MGA, MGA Hong Kong and Bryant. ..................................... 16

B. Whether Or Not Maurus Is Available For Trial, Her Testimony Is Admissible On Numerous Grounds Outside Of *Rule* 804(d)(1). ..... 18

III. RELEVANT *LARIAN V. LARIAN* EVIDENCE IS NOT UNFAIRLY PREJUDICIAL TO THE MGA PARTIES................................................. 20

A. Evidence About The Origins And Development Of Bratz In 2000 Is Not Unfairly Prejudicial Under *Rule* 403. ....................................... 20

B. MGA Chooses A Minuscule And Unrepresentative Subset Of *Larian v. Larian* Evidence To Attempt To Show Prejudice................ 22

CONCLUSION........................................................................................ 23

# TABLE OF AUTHORITIES

**Page**

## Cases

Alvarez v. American Export Lines, Inc., 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978) .......... 17

Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc., 1995 WL. 261407 (N.D. Cal. 1995) .......... 11, 12

Athridge v. Aetna Cas. and Sur. Co., 474 F. Supp. 2d 102 (D.D.C. 2007), reconsideration denied, 2007 WL 509224 .......... 17, 18

Azalea Fleet, Inc. v. Dreyfus Supply & Machinery Corp., 782 F.2d 1455 (8th Cir. 1986) .......... 17

In re Bottone, 209 B.R. 257 (D. Mass 1997) .......... 13

Christians v. C.I.R., 2003 WL. 21000920 (U.S. Tax Ct. 2003) .......... 13

Dykes v. Raymark Industries, Inc., 801 F.2d 810 (6th Cir. 1986), cert. denied, 107 S.Ct. 1975, 481 U.S. 1038, 95 L.Ed.2d 815 .......... 17

Edelson v. C.I.R., 829 F.2d 828 (9th Cir. 1987) .......... 13

Galvan v. Yates, 2008 WL. 650282 (E.D. Cal. 2008) .......... 11

Gise LLC v. Olympia Terrace Corp. , 2003 WL. 25674800 (S.D. Cal. 2003) .......... 10, 11

Gonzalez v. City of Garden Grove, 2006 WL. 5112757 (C.D. Cal. 2006) .......... 10, 11

Green v. Baca, 226 F.R.D. 624 (C.D. Cal. 2005) .......... 20, 21

Gusse v. Damon Corp., 2007 WL. 4440891 (C.D. Cal. 2007) .......... 20

In re IBM Peripheral EDP Devices Antitrust Litigation, 444 F. Supp. 110 (N.D. Cal. 1978) .......... 15, 16, 17

Kakkis v. Provident Mut. Life Ins. Co. of Philadelphia, 2002 WL. 34357203 (C.D. Cal. 2002) .......... 11

Larian v. Larian, 123 Cal. App. 4th 751 (2004) ........ passim

Lego v. Stratos Intern., Inc., 2004 WL. 5518162 (N.D. Cal. 2004) ........ 11

Lloyd v. American Export Lines, Inc., 580 F.2d 1179 (3rd Cir. 1978), cert. denied, ........ 17

Nettles v. Farmers Ins. Exchange & Farmers Group, Inc., 2007 WL. 1417304 (W.D. Wash. 2007) ........ 20

Reynolds Metals Co. v. Alcan, Inc., 2006 WL. 5165236 (W.D. Wash. 2006) ........ 20

Scholle v. Cuban-Venezuelan Oil Voting Trust, 285 F.2d 318 (2d Cir. 1960) ........ 20

U.S. v. Lambinus, 747 F.2d 592 (10th Cir. 1984) ........ 20

U.S. v. Swarek, 656 F.2d 331 (8th Cir. 1981) ........ 13

U.S. v. Vargas, 933 F.2d 701 (9th Cir. 1991) ........ 15

U.S. v. Yida, 498 F.3d 945 (9th Cir. 2007) ........ 15

U.S. v. Allen, 341 F.3d 870 (9th Cir. 2003) ........ 21

Ward v. Estaleiro Itajai S/A, 2008 WL. 1749475 (S.D. Fla. 2008) ........ 11, 15

White v. Ford Motor Co., 2003 WL. 23353600 (D. Nev. 2003) ........ 11

**Statutes**

Cal. Civ. Code § 1542 ........ 2

Fed. R. Evid. 403 ........ 2, 20, 21, 23

Fed. R. Evid. 607 ........ 22

Fed. R. Evid. 801 ........ 18

Fed. R. Evid. 801(d)(1)(A) ........ 18

Fed. R. Evid. 801(d)(1)(B) ........ 18

Fed. R. Evid. 803(3) ........ 18

Fed. R. Evid. 803(5) .......... 18

Fed. R. Evid. 804(b)(1) .......... 2, 15, 16, 17, 18

**Other Authorities**

Comments to 1974 Enactment of Fed. R. Evid. 804 .......... 17

Fed. R. Evid. 403 (Advisory Committee Notes) .......... 21

Senate Comments to 1974 Enactment of Rule 804 .......... 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

With one broad stroke, the MGA parties seek to exclude an entire body of evidence that goes to the heart of factual issues in this action. In the Larian v. Larian proceedings, Farhad Larian claimed that Isaac Larian fraudulently bought him out of MGA in December 2000 because the appraised value of MGA did not account for Bratz. Farhad Larian's claim depended on proving that Bratz originated in 1999 or 2000 and that MGA took important steps in the development of Bratz throughout 2000. Farhad Larian also had to prove that Isaac Larian concealed Bratz from him throughout that time. It is only the concealment element of Farhad Larian's claims to which MGA clings to try to exclude ***all*** Larian v. Larian evidence.

Yet, in the more than three years that Farhad Larian investigated, gathered and offered facts in support of his claims, evidence about Bratz going well beyond concealment surfaced. For example, the evidence Mattel intends to offer at trial includes that: (i) in 1999, a Wal-Mart representative told Isaac Larian that Wal-Mart would purchase from MGA a fashion doll that could compete with Barbie; (ii) in April 2000, even as Isaac Larian complained that MGA needed to save money, he requested from the Board an unprecedented 4% royalty for any product he "personally" developed for the 2001 line; (iii) Bratz was an unprecedented product for MGA in that the company tried to acquire ownership of Bratz, rather than just its normal practice of licensing the product; (iv) [REDACTED] ; (v) [REDACTED] ; (vi) [REDACTED] ; (vi) by October 2000, MGA already had sculpts of Bratz heads done; and (vii) the stage of development of Bratz by the end of 2000 appears to have justified a 25% revenue growth rate projection for an MGA appraisal.

Much of this evidence starkly contradicts statements MGA has made throughout this litigation. Not surprisingly, then, MGA now seeks to exclude all

such evidence under the pretense that it is irrelevant. MGA also attempts to exclude an entire transcript of testimony damaging to it by assuming that Mattel only intends to rely on Federal Rule of Evidence 804(b)(1) for its admission. Finally, MGA introduces three documents to attempt to argue that the entire body of evidence from Larian v. Larian unfairly prejudices it. MGA ignores that evidence that is damaging to its case and to issues that it has raised, without more, is not "unfairly" prejudicial under Rule 403.

**Background**

**A. The *Larian v. Larian* Proceedings Centered Around The Stage Of Development Of Bratz In The Year 2000.**

Since the inception of MGA in 1979 until December 2000, Isaac Larian, a defendant herein and MGA's CEO, and his brother Farhad Larian shared ownership and management of MGA.[1] By approximately 2000, the brothers apparently had irreconcilable differences in how to run MGA.[2] [REDACTED] [3]

On September 28, 2000, ten days after the alleged effective date of Carter Bryant's contract purporting to assign rights to Bratz to MGA, Isaac Larian convinced Farhad Larian that they should have their uncle Morad Zarabi listen to their differences, decide a fair value for MGA, and decide which brother should sell

---

1 Verified Complaint in Larian v. Larian, L.A. Sup. Ct. Case no. BC301371, at ¶¶ 6-12, attached as Exh. 1 to the Declaration of Tamar Buchakjian filed concurrently ("Buchakjian Dec."). MGA was formerly known as ABC International Traders, Inc. The brothers each had a forty-five percent interest in the company in early 2000. Id. at ¶¶ 8, 9.

2 Id. at ¶¶ 10-12.

3 Id., Exh. 2 at ¶ 1 (Ltr. from I. Larian to F. Larian dated March 30, 2000). The draft agreement included a waiver of California Civil Code § 1542, purporting to prevent Farhad Larian from bringing claims against Isaac Larian arising from facts of which he was unaware (such as MGA's involvement with Bratz). Id. at ¶ 5.

his ownership interest to the other.[4] Farhad Larian alleged that Isaac Larian did not tell him about the contract with Bryant.[5] By December 4, 2000, Zarabi concluded that Farhad Larian should sell his ownership interest to Isaac Larian, and the brothers entered into an Agreement for Sale of Stock by which Farhad Larian sold his interest to Isaac Larian for $8.775 million.[6] Ernest Dutcher, the appraiser Zarabi retained to value MGA, valued MGA based on "the period ending December 31, 1999."[7] There, Dutcher forecast a 3.5% growth rate for MGA revenues in 2001.[8]

In the Summer of 2002, Farhad Larian complained to Zarabi that Isaac Larian fraudulently concealed Bratz during their negotiations in 2000 that led to Farhad Larian's sale of stock.[9] In or around February 2003, Zarabi responded to Farhad Larian's complaint about Bratz and oversaw another appraisal of MGA "based upon information [he] gathered in 2002."[10] Dutcher produced an appraisal on February 13, 2003 that ***valued MGA as of December 31, 2000*** and now projected a twenty-five percent (25%) growth rate for MGA revenues in 2001.[11] By Dutcher's own account, he projected such a large growth rate only when "hot products that

---

[4] Id., Exhs. 1 at FL 6491-92 (Agr. to Arbitrate and Selection of Arbitrator attached to Larian v. Larian Complaint); 3 at ¶ 4 (Dec. of Farhad Larian dated November 7, 2003).

[5] Id., Exh. 3 at ¶ 5 (Nov. 7, 2003 F. Larian Dec.).

[6] Id., Exhs. 4 at ¶ 5 (Morad Zarabi Dec. dated September 14, 2004); 1 at FL 6493 et seq. (Agr. for Sale of Stock dated December 4 2000 attached to Larian v. Larian Complaint).

[7] Id. Exh. 5 at ¶¶ 5-6 and Exh. B attached thereto (E. Dutcher Dec. dated January 9, 2007 and Nov. 2000 Appraisal).

[8] Id. at Exh. B, p. 20 therein (Nov. 2000 Appraisal attached to Dutcher Dec.).

[9] Id., Exh. 4 at ¶ 6 (Sep. 14, 2004 Zarabi Dec.).

[10] Id. at ¶¶ 7-8.

[11] Id., Exh. 5 at ¶¶ 8-9 and Exh. C, p.20 attached thereto (Jan. 9, 2005 Dutcher Dec. and Feb. 2003 Appraisal).

came along" justified it.[12] Zarabi's and Dutcher's counsel noted that Dutcher's appraisals as of December 31, 2000 accounted for Bratz.[13]

Evidence from the Larian v. Larian proceedings confirms that MGA had unique expansionary plans in 2000 compared to the prior four years. MGA's current liabilities jumped from $6.6 million in 1999 to $24.2 million 2000, including $11.3 million of long-term debt obligations, compared to similar debt of about $112,000 during the prior four years combined.[14] "Intangible assets" jumped from $15 million in 1999 to $36.9 million in 2000.[15] Inventory jumped from $5.8 million in 1999 to $14.3 million in 2000.[16] Expenses on "Molds" jumped from $0 from 1996-1998 to $508,000 in 1999 and $750,000 in 2000.[17] That MGA obtained an important loan in 2000, seemingly at least in part related to development of Bratz, is confirmed by Farhad Larian's subpoena on Wachovia Corporation seeking documents related to the loan; Wachovia confirmed it had three boxes of responsive loan documents.[18]

Unable to resolve his disputes through Zarabi, Farhad Larian filed a verified complaint against Isaac Larian alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA "became aware" of a new product line called "Bratz," (b) in "early" 2000, Isaac Larian held a meeting with others at MGA to discuss the new Bratz product line; (c) starting in early 2000 and throughout 2000, Isaac Larian and MGA devised plans to develop and distribute Bratz, and

---

[12] Id., Exh. 6 at pp. 18:14-19:12 (Cert. Copy of Tr. of Audiotaped Meeting w/ E. Dutcher dated Sep. 10, 2003).

[13] Id., Exh. 7 (A. Goldberg Memo Re Oct. 19, 2004 Mtg w/ E. Dutcher).

[14] Id., Exh. 5, at Exh. C, p.15 therein (Feb. 2003 Appraisal attached to Dutcher Dec.).

[15] Compare id., Exh. B, p.18 (Nov. 2000 Appraisal attached to Dutcher Dec.) to id., Exh. C, p.18 (Feb. 2003 Appraisal attached to Dutcher Dec.).

[16] Id., Exh. C, p.14.

[17] Id., Exh. C, p.16.

[18] Id., Exh. 8 (Ltrs. from Wachovia to F. Larian counsel dated Nov. 15, 2005).

(d) Isaac Larian concealed the plans for Bratz from Farhad Larian and Zarabi in order to keep the valuation of MGA artificially low.[19] As the Court knows, these are time periods during which Bryant was a Mattel employee and are well before MGA and Bryant now claim they were even introduced to one another in late August or September 2000. On February 28, 2005, Farhad Larian also brought suit against Zarabi alleging the same facts regarding the origins of Bratz, but this time alleging that Zarabi conspired with Isaac Larian to conceal those facts.[20]

In response to Farhad Larian's suit, Isaac Larian moved to compel arbitration and won at the appellate level.[21] On or around February 8, 2005, Zarabi declined to arbitrate the dispute.[22] The parties could not agree to an arbitrator, and the court appointed one.[23] The arbitration finally started on November 16, 2005.[24] Two days into it, Farhad Larian abruptly dismissed his claims.[25] Farhad Larian declared that he did so in hopes of reconciling with his brother.[26] Isaac Larian went after Farhad Larian to recover attorneys' fees and won an award in excess of $1 million.[27]

### B. <u>Arbitration Testimony Confirms That The Development Of Bratz In 2000 Was A Central Factual Issue In *Larian v. Larian*.</u>

Not surprisingly in light of Farhad Larian's allegations about Bratz, testimony in the <u>Larian v. Larian</u> arbitration focused on the origins of Bratz and the stages of the dolls' development throughout 2000. Thus, Isaac Larian testified about the following topics:

---

[19] <u>Id.</u>, Exh. 1 at ¶¶ 13-23 (<u>Larian v. Larian</u> Complaint).
[20] <u>Id.</u>, Exh. 15 at ¶¶ 14-18 (<u>Larian v. Zarabi</u> Complaint dated Feb. 28, 2005).
[21] <u>Id.</u>, Exh. 16 (<u>Larian v. Larian</u>, 123 Cal. App. 4th 751, 756-758 (2004)).
[22] <u>Id.</u>, Exh. 17 (Ltr. from M. Zarabi to I. Larian, F. Larian dated Feb. 8, 2005).
[23] <u>Id.</u>, Exh. 18 (<u>Larian v. Larian</u> Court Order dated May 4, 2005).
[24] <u>Id.</u>, Exh. 19 (Final Arbitration Award dated Nov. 28, 2005).
[25] <u>Id.</u>
[26] <u>Id.</u>, Exh. 20 at ¶¶ 6-7 (F. Larian Dec. dated Jan. 20, 2006).
[27] <u>Id.</u>, Exh. 21 (Final Arbitration Amendment dated Feb. 3, 2006).



During the arbitration, Jennifer Maurus – an MGA sales manager who pitched Bratz to major retailers in 2000 – also testified extensively about the development of Bratz in 2000:



---

[28] Declaration of Stephen Hauss ("Hauss Dec.") filed concurrently, Exh. 25 at pp. 161:15-162:25 (Tr. of Larian v. Larian arbitration, I. Larian testimony).

[29] Id. at pp. 163:13-165:12; 186:6-16.

[30] Id. at pp. 165:13-166:24; 168:21-170:16; 186:3-187:8; 190:15-22.

[31] Id. at pp. 169:22-171:4; 190:15-22; 192:9-193:16.

[32] Id. at pp. 195:13-16; 196:8-14.

[33] Id. at pp. 227:10-229:3 (Larian v. Larian J. Maurus testimony).

[34] Id. at pp. 229:22-233:11.

[35] Id. at pp. 233:12-234:2; 241:19-25; 242:12-243:1.

[36] Id. at pp. 234:3-239:20; 271:12-272:7; 276:6-277:6; 311:21-312:14.

Much of this testimony contradicts MGA's claims in this case. For example, MGA [redacted] and has not produced any documents related to these focus groups.[37]

During the arbitration [redacted] the $9 million Isaac Larian agreed to pay for Farhad Larian's share of MGA in December 2000. But then, ignoring the arbitrator's advice to consult with his attorneys first, Farhad Larian abruptly dropped the arbitration.[39] Shortly before Farhad Larian did so, [redacted]

Farhad Larian later declared that he dropped the arbitration in an effort to reconcile with Isaac Larian, and reaffirmed that he brought his claims because he believed them to be true.[43] After Farhad Larian dismissed his claims, [redacted]

---

[37] Buchakjian Dec., Exh. 11 at pp. 39-40, Response to RFA No. 37 (MGA's Objs. and Resp. to Mattel's First Set of Requests for Admission dated Feb. 4, 2008).

[38] Hauss Dec., Exh. 24 at pp. 112:4-22; 114:24-115:6 (Feb. 4, 2008 F. Larian Depo.).

[39] Id., Exh. 25 at pp. 314:12 - 319:3 (Tr. of Larian v. Larian arbitration).

[40] One of Isaac Larian's attorneys during the arbitration.

[41] One of Farhad Larian's attorneys during the arbitration.

[42] Id., Exh. 25 at pp. 314:19-315:1 (Tr. of Larian v. Larian arbitration).

[43] Buchakjian Dec., Exh. 20 at ¶¶ 4-7 (Jan. 20, 2006 F. Larian Dec.).

[44] Hauss Dec., Exh. 25 at p. 323:9-13. (Tr. of Larian v. Larian arbitration).

**C. Farhad Larian, While Working For MGA, Willfully Destroyed Much Of The Evidence He Had Gathered Regarding The Development Of Bratz In 2000.**

As the evidence above shows, since at least the Summer of 2002 until the November 2005 arbitration, Farhad Larian collected evidence regarding the stages of development of Bratz in 2000. Throughout much or all of that time, Farhad Larian remained on MGA's payroll, [redacted][48] This came after Farhad Larian had asked Isaac Larian in an e-mail if there was "anything" he could do to help MGA in the Mattel litigation.[49] Mattel also sent Farhad Larian's counsel a document preservation letter on November 28, 2005, [redacted][50]

---

[45] Buchakjian Dec., Exh. 1 at FL 6515 (Consulting Agr. attached to Larian v. Larian Complaint, showing MGA agreed to pay Farhad Larian for consulting services until December 31, 2005); Hauss Dec., Exh. 24 at pp. 74:4-76:8; 88:24-89:13 (Feb. 4. 2008 F. Larian Depo.).

[46] Hauss Dec., Exh. 24 at pp. 56:9-58:11; 65:21-67:2; 170:10-174:5 (Feb. 4. 2008 F. Larian Depo.).

[47] Id. at pp. 56:22-58:11; 59:9-17.

[48] Id. at pp. 53:17-54:17; 70:5-71:18; 170:10-174:5.

[49] Buchakjian Dec., Exh. 22 (May 4, 2004 E-mail from F. Larian to I. Larian).

[50] Id., Exh. 10 (Nov. 28, 2005 Ltr. from Krebs to Wilson).



Isaac Larian's Larian v. Larian testimony makes clear that [redacted] MGA also knew at least since the Summer of 2005 that Farhad Larian possessed evidence directly relevant to this action. On August 19, 2005, Daphne Gronich, MGA's general counsel, [redacted] Farhad Larian's response to Ms. Gornich – refusing to return the documents – made clear that such documents included information about the development of Bratz.[53] [redacted] Still, it appears that neither Isaac Larian nor MGA ever instructed Farhad Larian that he had an obligation to preserve documents for this action.[55] To the contrary, it appears that MGA's attorneys actually told Farhad Larian – MGA's former 45% owner, director and at the time a paid MGA consultant whom Mattel had identified as a witness – that he ***had no obligation*** to preserve the evidence: [redacted]

---

[51] Hauss Dec., Exh. 25 at pp. 159:13-160:9 (Larian v. Larian I. Larian testimony).

[52] Buchakjian Dec., Exh. 23 (Aug. 19, 2005 Ltr. from Gronich to Kremer).

[53] Id., Exh. 24 (Sep. 7, 2005 Ltr. from Kremer to Gronich).

[54] Hauss Dec., Exh. 25 at pp. 4, 176 (Tr. of Larian v. Larian arbitration).

[55] Buchakjian Dec., Exh. 12 at ¶ 4 (Sep. 10, 2007 Gronich Dec.).

[56] Hauss Dec., Exh. 24 at pp. 98:11-99:2 (Feb. 4. 2008 F. Larian Depo.).

[redacted] Id., Exh. 25 at pp. 318:20-319:3 (Tr. of Larian v. Larian arbitration).

## Argument

### I. *LARIAN V. LARIAN* EVIDENCE IS RELEVANT BECAUSE, LIKE HERE, IT RELATES TO FACTUAL ISSUES ABOUT THE DEVELOPMENT AND CONCEALMENT OF BRATZ IN 2000.

#### A. *Larian v. Larian* At Its Core Involved Facts About The Stage Of Development Of Bratz In 2000.

MGA argues that the Larian v. Larian proceedings are irrelevant because Farhad Larian's allegations about what Isaac Larian concealed from him have no bearing on this litigation.[57] MGA ignores that Farhad Larian's claims of concealment and MGA's true value in December 2000 by necessity involved factual issues about the origins of Bratz and the dolls' stage of development in 2000. When the arbitration between the Larians commenced, the testimony focused almost exclusively on "how far along" MGA had come with Bratz at different periods throughout 2000.[58] The Discovery Master compelled Larian v. Larian discovery because the conception of Bratz was at issue in those proceedings.[59]

The origins and development of Bratz in 2000 are, of course, also central factual issues here. Yet, with one broad and conclusory motion in limine, MGA attempts to prevent an entire category of evidence on this topic from entering the record. Federal courts routinely reject such overbroad requests regarding prior litigation with common issues. See, e.g., Gonzalez v. City of Garden Grove, 2006 WL 5112757 at *1-2 (C.D. Cal. 2006) (denying motion in limine seeking to exclude all evidence of prior litigation involving prior or subsequent acts similar to those at issue in current litigation); Gise LLC v. Olympia Terrace Corp., 2003 WL 25674800, at *5-7 (S.D. Cal. 2003) (denying motion in limine to exclude evidence from prior litigation where ownership of trademark was at issue in both lawsuits);

---

[57] MGA MIL No. 1 at p. 1:9-12.

[58] See supra, Background § B.

[59] Buchakjian Dec., Exh. 109 at pp. 10-11 (May 15, 2007 Order).

Ward v. Estaleiro Itajai S/A, 2008 WL 1749475, at *1 (S.D. Fla. 2008) ("Defendants will be permitted to introduce evidence touching on Plaintiff's prior experience in contracts or agreements similar to the subject of the above-styled cause. Moreover, Defendants are of course free to use testimony given in prior litigation to impeach or refresh recollection or for other uses contemplated by the Federal Rules of Evidence."). See also Galvan v. Yates, 2008 WL 650282, at *2 ¶¶ G, I (E.D. Cal. 2008) (denying as overbroad motions in limine to exclude ***all*** evidence of "incidents" or "family history" prior to a certain date); Lego v. Stratos Intern., Inc., 2004 WL 5518162, at *1 (N.D. Cal. 2004) (denying as overbroad motion in limine to exclude all evidence about defendant's financial condition and board of director meetings); White v. Ford Motor Co., 2003 WL 23353600, at *16 (D. Nev. 2003) ("preclusion of all argument related to non-parties, even regarding potentially similar conduct that occurred inside Nevada - is both dramatically overbroad and unsupported by law.").

**B. *Larian v. Larian* Concealment Evidence Is Relevant.**

MGA's primary argument to show that Larian v. Larian is irrelevant seems to be that, unlike Farhad Larian, Mattel does not assert causes of action related to good faith and fair dealing or Isaac Larian's fraud and deceit.[60] First, that legal causes of action are different does not make Larian v. Larian irrelevant because the two proceedings have substantial factual issues in common. See, e.g., Gise LLC, 2003 WL at *5-7 (ownership of trademark at issue in both lawsuits); Gonzalez, 2006 WL at *1-2 (evidence of similar acts in prior litigation admissible to establish policy or practice); Kakkis v. Provident Mut. Life Ins. Co. of Philadelphia, 2002 WL 34357203, at *1 (C.D. Cal. 2002) ("any inconsistent statements or inconsistent positions of the plaintiff in the prior litigation are relevant."); Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc., 1995 WL

[60] MGA MIL No. 1 at p. 3.

261407, at *7 (N.D. Cal. 1995) (refusing to grant in limine request to exclude all evidence of prior litigation where expert testimony from prior litigation relevant to current litigation).

Second, Mattel does allege defendants' fraudulent concealment of Bryant's involvement with Bratz. Among other acts of concealment, Mattel alleges that (i) Bryant and MGA concealed that Bryant worked with and assisted MGA while he worked for Mattel and was compensated for that assistance; (ii) MGA concealed from the public that Bryant was the creator of Bratz; and (iii) MGA concealed the true ownership of Bratz by filing fraudulent registrations and/or amendments to registrations with the United States Copyright Office.[61] Mattel intends to prove, for example, that Larian directed a subordinate to conceal a fax header from Bryant's signed contract signature page. Mattel will also show that Bryant was required to but did not inform Mattel when he left in October 2000 that he had already been working on Bratz for the benefit of MGA.[62]

Third, evidence of fraudulent concealment undermines several of MGA's affirmative defenses. MGA claims that laches and statutes of limitations bar Mattel's claims because Mattel knew that Bryant had created Bratz while at Mattel long before it filed suit.[63] MGA also asserts that it acquired the rights to Bratz from Bryant with a "good faith" belief that Bryant owned the rights to Bratz.[64] Evidence of Isaac Larian's concealment of Bratz throughout 2000 discredits these defenses.

As discussed above, there is ample such evidence. Far from consisting of "posturing," as MGA would have the Court believe, Larian v. Larian evidence

---

[61] Declaration of B. Dylan Proctor dated Apr. 14, 2008 lodged concurrently hereto ("Proctor Dec."), Exh. 12, ¶ 35 (Mattel's Second Amended Answer and Counterclaims).

[62] Buchakjian Dec., Exh. 26 at ¶¶ 80, 81, 102 (Mattel's [Corrected] Sep. Stmt. of Uncontested Facts and Conclusions of Law).

[63] Proctor Dec., Exh. 29 at pp. 21-22 (Third and Forth Affirmative Defenses in MGA's Amended Answer and Affirmative Defenses).

[64] Id. at pp. 22, 25 (Fifth, Sixth and Eighteenth Affirmative Defenses).

encompasses sworn statements and observations about concealment.[65] These come not only from Farhad Larian, but also from Zarabi, the arbitrator, and Dutcher, the appraiser.[66] All three are potential witnesses in this action.[67] Though Larian v. Larian did not address concealment from Mattel, evidence about Isaac Larian concealing Bratz is relevant and admissible here. See, e.g., Edelson v. C.I.R., 829 F.2d 828, 832 (9th Cir. 1987) (court may infer fraudulent intent from circumstantial evidence of concealment); U.S. v. Swarek, 656 F.2d 331, 336-337 (8th Cir. 1981) (circumstantial evidence that is part of establishing a pattern of deceit admissible); Christians v. C.I.R., 2003 WL 21000920, at * 6 (U.S. Tax Ct. 2003) (a pattern of conduct may establish, by inference, the intent to conceal or mislead); In re Bottone, 209 B.R. 257, 262-263 (D. Mass 1997) (acts of concealment occurring more than one year before bankruptcy filing were relevant circumstantial evidence of acts of concealment less than one year before filing).[68]

---

[65] Farhad Larian chose to file a verified complaint alleging concealment of Bratz. Buchakjian Dec., Exh. 1 (Larian v. Larian Complaint). He also later swore to his observations about concealment. Id., Exh. 3 at ¶¶ 5, 7, 9, 11 (Nov. 7, 2003 F. Larian Dec.). Ernest Dutcher, the appraiser, also declared that he was not given some information about Bratz. Id., Exh. 5 at ¶ 8 (Jan. 9, 2005 Dutcher Dec.).

[66] Id., Exhs. 4 at ¶¶ 5-7 (Sep. 14, 2004 Zarabi Dec.) (stating that he looked into the issue of Bratz's value in 2000 only after Farhad Larian brought it to his attention in the Summer of 2002); 5 at ¶ 8 (Dutcher Dec.).

[67] Id., Exh. 13 (Witness Nos. 12, 101, 115 in Mattel's Corrected Phase I Witness List dated Apr. 1, 2008).

[68] MGA's suggestion that the arbitration testimony makes it "abundantly clear" that "there was no concealment of Bratz" by Isaac Larian is conclusory and erroneous.[68] It ignores (i) Isaac Larian's testimony that [REDACTED] (Hauss Dec., Exh. 25 at pp. 164:21-165:4 (Tr. of Larian v. Larian arbitration); (ii) Maurus's testimony that [REDACTED], a time when Farhad Larian was a 45% owner and director of MGA (id. at p. 243:2-14); and (iii) other evidence that relates to concealment, such as Dutcher's declaration. Buchakjian Dec., Exh. 5 at ¶ 8 (Jan. 9, 2005 Dutcher Dec.).

Finally, MGA asserts incorrectly that the arbitrator's dismissal of Farhad Larian's claims as "meritless" renders all evidence from *Larian v. Larian* irrelevant. Preliminarily, neither Farhad Larian nor the arbitrator ever attacked Maurus's testimony about the development of Bratz in 2000. Further, despite the arbitrator's advice not to do so, Farhad Larian dismissed his claims under mysterious circumstances without consulting his attorneys first and after he had offered to help his brother in his litigation against Mattel, i.e., this litigation.[69] [REDACTED] Farhad Larian also declared under oath that he dismissed the claims in order to reconcile with his brother, but that he believed his claims to be true.[70]

**C. A Broad Exclusion Order Would Be Improper.**

In any case, MGA is not entitled to the broad order it seeks. The jury must learn some background about the Larian v. Larian arbitration to understand the import of, among other things, [REDACTED]; after asking Isaac Larian if there was anything he could do to help in the case against Mattel; and around the same time Mattel sent Farhad Larian a document preservation letter.[71] This clearly relevant information cannot be explained without reference to the arbitration. Such evidence and reference must be allowed on this ground alone.

## II. TESTIMONY FROM THE *LARIAN V. LARIAN* ARBITRATION IS NOT *PER SE* INADMISSIBLE HEARSAY.

In opposing the admission of Maurus' testimony, MGA blithely assumes that Mattel intends to rely solely on Federal Rule of Evidence 804(b)(1) to

---

[69] See supra, Background § A.

[70] Id., Exh. 20 at ¶¶ 4-6 (Jan. 20, 2006 F. Larian Dec.).

[71] See supra, Background § C.

offer Maurus's testimony into evidence. This assumption is erroneous because Mattel has several grounds on which to seek the admission of Maurus' testimony, and those grounds would not constitute hearsay or inadmissible hearsay. As the district court in Ward, supra, put it, Mattel is "of course free to use testimony given in prior litigation to impeach or refresh recollection or for other uses contemplated by the Federal Rules of Evidence." 2008 WL 1749475, at *1. Moreover, there is no basis to assume that Maurus will be available to testify at trial, and it would unduly prejudice Mattel to wholly exclude relevant testimony simply based on MGA's erroneous assumption.

**A. Maurus's Testimony May Be Admissible Under Rule 804(b)(1).**

1. Maurus May Not Be Available For Trial.

At present, Mattel does not know whether or not Maurus will be available to testify at trial. Mattel intends to use process and other reasonable efforts to have Maurus appear as a witness. At this point in time, however, Mattel has no indication that Maurus will be able and available to appear.

Under these circumstances, the timing and breadth of MGA's request to exclude Maurus's testimony based on her supposed availability is inappropriate. In each case on which MGA relies to support its availability argument, the availability of the witness and the reliance on Rule 804(b)(1) as the basis for admissibility were established. In U.S. v. Yida, 498 F.3d 945 (9th Cir. 2007), the government – ***the party proposing to introduce the prior testimony*** – moved in limine to admit it and expressly relied only on Rule 804(b)(1). Id. at 949. The court deemed the prior testimony inadmissible where the government knew but failed to disclose to the other party and the Court that the witness could become unavailable. Id. at 948. Accord U.S. v. Vargas, 933 F.2d 701, 705 (9th Cir. 1991) (finding error in admitting prior testimony where the trial court failed to instruct the jury that it could consider the testimony only for impeachment, not as substantive evidence, because the witness was available); In re IBM Peripheral EDP Devices Antitrust Litigation,

444 F. Supp. 110, 112 (N.D. Cal 1978) (proponent of evidence expressly relied on Rule 804(b)(1) and failed to show unavailability of witness).

2. If Maurus Is Unavailable, Her Testimony Is Admissible As To Isaac Larian, MGA, MGA Hong Kong and Bryant Because Isaac Larian Was A "Predecessor In Interest" To MGA, MGA Hong Kong and Bryant.

If Maurus is not available at trial, MGA does not dispute that her testimony is available at least as to Larian as a defendant under Federal Rule of Evidence 804(b)(1).[72] MGA erroneously argues that the testimony is not admissible against MGA and Bryant because Larian was not a "predecessor-in-interest" to MGA and Bryant in Larian v. Larian.[73] For prior testimony to be admissible under Federal Rule of Evidence 804(b)(1), the party ***or*** a "predecessor-in-interest" must have had "an opportunity and similar motive" to develop the testimony by direct, cross, or redirect examination. Fed. R. Evid. 804(b)(1). MGA does not dispute that Isaac Larian had an opportunity and similar motive as MGA and Bryant would here to question Maurus.[74]

Instead, MGA argues that Isaac Larian by law does not fit the definition of "predecessor in interest" for MGA and Bryant. MGA cites ***one*** 1978 case from the Northern District of California for the proposition that ***all*** California federal courts interpret "predecessor-in-interest" to mean only a predecessor that has privity in property with the current party.[75] According to MGA's proposed definition, a predecessor would encompass, for example, a company that sold its assets to MGA.

Such a reading is unduly narrow and contrary to the legislative intent of the language in Rule 804(b)(1). The House of Representatives first added the

72 MGA MIL No. 1 at pp. 5-6.

73 Id.

74 Id.

75 Id. at p. 6.

"predecessor-in-interest" language in 1974. Comments to 1974 Enactment of Fed. R. Evid. 804. Prior to this addition, the Supreme Court had interpreted Rule 804(b)(1) to allow prior testimony as long as a party in the prior action – whether or not the same party now contesting admissibility – had a similar or identical motive as the current party seeking to exclude the testimony. Id.; see also In re IBM Peripheral at 113. In adopting the House's proposed language, the United States Senate expressly commented that it accepted the House's addition only because the Senate "concluded that the difference between the [Supreme Court's and the House's'] versions is not great." Senate Comments to 1974 Enactment of Rule 804.

While Mattel has not found any Ninth Circuit decision addressing the meaning of "predecessor-in-interest" under Rule 804(b)(1), numerous sister circuits have expressly rejected the unduly narrow definition that MGA proposes, including in reliance on the Senate's interpretation of the language. Under this cases, all that is required is an adequate opportunity and a similar motive, even if the predecessor in interest does not have a legal relationship to the current party seeking to exclude the testimony. See, e.g., Dykes v. Raymark Industries, Inc. 801 F.2d 810, 815-816 (6th Cir. 1986), cert. denied, 107 S.Ct. 1975, 481 U.S. 1038, 95 L.Ed.2d 815 (fact of being a predecessor in interest is not limited to a legal relationship, but is also to be determined by the previous party having had an opportunity and similar motive to develop the testimony by cross-examination); Azalea Fleet, Inc. v. Dreyfus Supply & Machinery Corp., 782 F.2d 1455, 1460-61 (8th Cir. 1986) (accord); Lloyd v. American Export Lines, Inc., 580 F.2d 1179, 1186-87 (3rd Cir. 1978), cert. denied Alvarez v. American Export Lines, Inc., 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978) (same nucleus of operative facts sufficed for finding that party not in privity with current party was predecessor in interest); Athridge v. Aetna Cas. and Sur. Co., 474 F. Supp. 2d 102, 115-116 (D.D.C. 2007), reconsideration denied, 2007 WL 509224 (accord).

In Larian v. Larian, Isaac Larian had the exact same interest that he, MGA, MGA Hong Kong and Bryant have here to develop Maurus's testimony. As with the Defendants herein, Isaac Larian's motive in Larian v. Larian was to discredit Maurus on her observations of how far advanced Bratz was by late 2000 and that she first saw Bryant and Bratz at MGA in the "early" summer of 2000. From Isaac Larian's perspective at the time, successfully contradicting Maurus's testimony on these topics would mean that Farhad Larian would lose his case because he would have no basis to argue that Bratz should have been included in a year 2000 appraisal of MGA. Further, even under MGA's proposed narrow definition of predecessor-in-interest, it begs reason to suggest that Isaac Larian does not have privity with MGA with respect to the property at issue here – Bratz. Thus, if Maurus is unavailable, Maurus's testimony will be admissible under Rule 804(b)(1) as to all Defendants, and not just Larian.

**B. Whether Or Not Maurus Is Available For Trial, Her Testimony Is Admissible On Numerous Grounds Outside Of *Rule* 804(d)(1).**

If Maurus is available at trial, Mattel can use any of her testimony for the non-hearsay purposes of impeachment (Fed. R. Evid. 801(d)(1)(A)) or rehabilitation if MGA accuses her of recent fabrication or improper influence. Fed. R. Evid. 801(d)(1)(B). Mattel can also offer her testimony as a recorded recollection of matters that she already testified about. Fed. R. Evid. 803(5).

Further, whether or not Maurus is available, Mattel can offer some of her testimony, not for the truth of the statements, but for non hearsay purposes. The mere fact that Maurus made the statements is independently relevant. For example, Maurus's testimony is relevant to establish Isaac Larian's, MGA's and Farhad Larian's state of mind with respect to [redacted] [redacted]. Fed. R. Evid. 801, 803(3). [redacted] [redacted] [redacted]. They listened to Maurus testify



that [76] They listened to Maurus testify that . By the end of Maurus's testimony, Then, suddenly, Farhad Larian dropped the arbitration without consulting his attorneys, allegedly in an attempt to reconcile with his brother.

This litigation was already pending when Maurus gave her testimony. Any trier of fact could reasonably conclude that Maurus's testimony harms MGA in this litigation, and that MGA and Isaac Larian would be concerned about Maurus's testimony and other evidence from Larian v. Larian on the development of Bratz surfacing here. after offering Isaac Larian to help in this case, and possibly after Mattel had sent him a document preservation letter.

By then, It knew that Farhad Larian possessed evidence relevant to this litigation. It knew that Mattel had already identified Farhad Larian as a witness. Yet, MGA's and Isaac Larian's state of mind after listening to Maurus's testimony are relevant to show their non-compliance with their preservation obligations and spoliation. See, e.g., Scholle v. Cuban-Venezuelan Oil Voting Trust, 285 F. 2d 318, 321 (2d Cir. 1960) (hearsay rule does not bar admission of statements used

[76] See supra note 37 and accompanying text.

circumstantially, since, when so used, primary focus of inquiry is whatever inferences can be drawn from fact that words were spoken and not truth of what was said); U.S. v. Lambinus, 747 F. 2d 592, 597 (10th Cir. 1984) (effect on listener is a proper non hearsay purpose).

In short, summarily excluding Maurus's entire testimony based on MGA's assumption about how Mattel will use the testimony would prevent Mattel from properly presenting its case in chief. At a minimum, the Court should address admissibility of any portion of Maurus's testimony on a case-by-case basis and once the parties and the Court have more information about her availability. See, e.g., Gusse v. Damon Corp., 2007 WL 4440891, at * 3 (C.D. Cal. 2007) (denying motion in limine where it could not make admissibility determination "in the abstract"); Nettles v. Farmers Ins. Exchange & Farmers Group, Inc., 2007 WL 1417304, at *1 (W.D. Wash. 2007) (denying motion in limine where court could better determine relevance when offered at trial); Reynolds Metals Co. v. Alcan, Inc., 2006 WL 5165236, at *3 (W.D. Wash. 2006) (same).

## III. RELEVANT *LARIAN V. LARIAN* EVIDENCE IS NOT UNFAIRLY PREJUDICIAL TO THE MGA PARTIES.

### A. Evidence About The Origins And Development Of Bratz In 2000 Is Not Unfairly Prejudicial Under *Rule* 403.

In light of its central relevance to this action, Larian v. Larian evidence about the origins, conception and development of Bratz cannot be excluded under Rule 403. Certainly, the couple of examples MGA uses to supposedly demonstrate prejudice do not come close to justifying exclusion of ***all*** Larian v. Larian evidence.

While it is true that the Larian v. Larian evidence Mattel intends to offer hurts MGA and Bryant's case because it will show that they have repeatedly lied about the origins and early development of Bratz, that does not equate with "unfair" prejudice. See Green v. Baca, 226 F.R.D. 624, 634 (C.D. Cal. 2005) (allowing evidence of other acts where "the evidence of other acts offered by

plaintiff may be prejudicial to defendant [, but] it will not be unfairly prejudicial"). Evidence is unfairly prejudicial if it tends to suggest decision on an improper basis, particularly an emotional one. See U.S. v. Allen, 341 F.3d 870, 886 (9th Cir. 2003) ("'Unfair prejudice' . . . means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one' "); Fed. R. Evid. 403 (Advisory Committee Notes).

There is no such danger of an emotional reaction here. Preliminarily, the brothers are no longer disputing and there is no question Farhad Larian is wholly committed to helping MGA's case here. [REDACTED] If anything, that Farhad Larian may have been emotional or greedy when he sued his brother could help MGA's cause if it helps discredit the evidence Farhad Larian found.

More importantly, the evidence Mattel intends to offer at trial from Larian v. Larian primarily deals with cold facts about the development of Bratz in 2000. For example, there is no rational basis to assume that a trier of fact cannot separate Maurus's testimony [REDACTED], from the fact that the evidence surfaced in a dispute between siblings. Maurus's black and white testimony is not "unfairly prejudicial" for purposes of Rule 403. As another example, Dutcher's appraisals – projecting a 25% growth rate for MGA once he accounted for a "hot product" in development in 2000 – and Dutcher's attorney's account that such appraisal included Bratz, do not "unfairly prejudice" MGA. Any drama between the Larians is far removed from this important evidence that surfaced in Larian v. Larian.

**B. MGA Chooses A Minuscule And Unrepresentative Subset Of *Larian v. Larian* Evidence To Attempt To Show Prejudice.**

MGA relies on three documents to argue that ***all*** Larian v. Larian evidence unfairly prejudices it.[77] As shown above, Mattel seeks to introduce evidence from Larian v. Larian about the development of Bratz in 2000 that may harm MGA's case but does not prejudice it. Even as to two of the three documents still at issue,[78] any prejudice to Larian and MGA does not come close to "substantially outweighing" the probative value of the evidence.

First, MGA describes a letter Farhad Larian wrote Isaac Larian in 2003 as a "23-page harangue" and assumes that Farhad Larian wrote it in the "heat of anger."[79] Yet, the letter contains things [REDACTED][80] Of course, evidence that goes to Isaac and Farhad Larian's credibility is relevant and admissible. Fed. R. Evid. 607.

Second, MGA attempts to downplay the significance of Isaac Larian's testimony that [REDACTED][81] As detailed above, [REDACTED] Spoliation of evidence is directly at issue in this action.[82] [REDACTED]

---

77 MGA MIL No. 1 at pp. 7-8; Russell Dec., Exhs. 6, 10 and 11.

78 Mattel's revised exhibit list does not include Exh. 11 to the Russel Dec.

79 MGA MIL No. 1 at p. 7.

80 Russel Dec., Exh. 10 at pp. 143, 148, 150, 153, 154, 157.

81 MGA MIL No. 1 at pp. 7-8.

82 Buchakjian Dec., Exh. 14 (Mattel's Proposed Jury Instructions Re Spoliation).

[redacted] goes to his state of mind about MGA's decision to instruct or not instruct Farhad Larian to preserve documents in this litigation. This testimony may harm MGA's case on spoliation, but it does not prejudice it under Rule 403.

**Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court deny MGA's Motion *In Limine* No. 1 in its entirety.

DATED: April 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /for
John B. Quinn
Attorneys for Mattel, Inc.