QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>[PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION *IN LIMINE* NO. 5 TO EXCLUDE REFERENCES TO PRIOR LEGAL REPRESENTATION<br><br>[Notice of Lodging and Declarations of Tamar Buchakjian, Stephen Hauss, and Jon D. Corey filed concurrently herewith]<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1
FACTUAL BACKGROUND ................................................................................... 1
    A.    Mattel's Offer to Stipulate ............................................................................. 1
    B.    Prior Counsel's Knowledge of Spoliation ..................................................... 2
        1.    Spoliation on Bryant's Hard Drives .................................................... 2
        2.    Destructive Testing on the Bratz Drawings ....................................... 6
    C.    Patricia Glaser's Knowledge Regarding Defendants' Knowledge of Their Wrongdoing ............................................................................. 9
ARGUMENT ........................................................................................................ 10
I.    SPOLIATION AND DEFENDANTS' KNOWLEDGE OF THEIR WRONGDOING ARE RELEVANT TO MATTEL'S CLAIMS ................... 10
CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

Ebanks v. Great Lakes Dredge & Dock Co.,
  688 F.2d 716 (11th Cir. 1982) .................................................................. 11

Cleaver v. Kemna,
  122 Fed. Appx. 863 (8th Cir. 2004) ......................................................... 12

Glover v. BIC Corp.,
  6 F.3d 1318 (9th Cir. 1993) ...................................................................... 11

Koch v. Koch Indus., Inc.,
  2 F. Supp. 2d 1385 (D. Kan. 1998) .......................................................... 12

Kucala Enterprises, Ltd.,
  2003 WL 21230605 ................................................................................. 11

Leon v. IDX Systems Corp.,
  464 F.3d 951 (9th Cir. 2006) .................................................................... 11

U.S. v. Morris,
  79 F.3d 409 (5th Cir. 1996) ...................................................................... 12

### Statutes

Federal Rules of Civil Procedure

  Rule 30(b)(6) ......................................................................................... 7, 8

  Rule 401 ..................................................................................................... 1

  Rule 403 ......................................................................................... 1, 11, 12

## Preliminary Statement

MGA couches its motion as merely seeking to exclude reference to the withdrawal of its prior counsel, but it is not. MGA's motion would prevent Mattel from examining prior counsel at all, even where they are important fact witnesses.

Mattel offered to stipulate that it would not reference Carter Bryant's or MGA's prior counsel's withdrawal, the reasons for their withdrawal, or the fact that they had prior counsel. Mattel only asked that the stipulation clarify that Mattel would not be prevented from calling prior counsel as percipient witnesses on non-privileged matters, if such testimony were relevant. In particular, Mattel noted that prior counsel may have relevant testimony on the issues of custody and spoliation of Bryant's hard drives and other evidence, and defendants' good faith defense.

By refusing Mattel's stipulation, MGA made clear the true issue here: MGA seeks to prevent Mattel from examining witnesses on relevant topics of information. Because MGA's motion oversteps the bounds of Rules 401 and 403, and seeks relief that would prejudice Mattel, its motion should be denied.

## Factual Background

A.  **Mattel's Offer to Stipulate**

After MGA filed the instant motion *in limine*, Mattel contacted counsel for defendants and offered the following stipulation: (1) Mattel would "not provide any evidence or argument, nor make any other reference at trial to the withdrawal of MGA or Carter Bryant's prior counsel, the reasons for such withdrawal, or the fact that they had prior counsel that are no longer involved in the case."[1] (2) The stipulation would not prevent Mattel from calling prior counsel as witnesses on

---

[1] Email from Jon Corey to Jason Russell and Matthew Werdegar, dated April 23, 2008, attached as Exhibit 1 to the Declaration of Jon D. Corey in Support of Mattel, Inc.'s Opposition to MGA Parties' Motion *In Limine* No. 5 to Exclude References to Prior Legal Representation, filed concurrently herewith ("Corey Dec.").

-1-
MATTEL'S OPPOSITION TO MGA'S MIL NO. 5 RE PRIOR COUNSEL

issues for which they had knowledge, such as spoliation of evidence or defendants' alleged good faith defense. (3) Mattel would be permitted to discuss the issue of prior counsel's withdrawal if it were first raised by MGA.[2] Defense counsel rejected the stipulation.[3]

### B. Prior Counsel's Knowledge of Spoliation

There is evidence that Bryant's prior counsel, Littler Mendelson P.C. ("Littler"), has knowledge of spoliation of evidence on hard drives belonging to Carter Bryant, and of the original Bratz drawings, as recounted below.

#### 1. Spoliation on Bryant's Hard Drives

In November 2004, Littler represented that it had located Bryant's desktop hard drive, but that it did not contain any responsive documents.[4] Littler reiterated this claim in response to Mattel's January 2005 motion to compel the production of the drive, stating that counsel had "extensively" examined the Desktop and spent "scores of attorney hours" searching for responsive documents, but found none.[5] Again, in January 2007, Littler represented to the court that it had searched

---

[2] Id.

[3] Email from Jason Russell to Jon Corey and Matthew Werdegar, dated April 24, 2008, Corey Dec., Exh. 2; Corey Dec., ¶ 3.

[4] Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John Quinn and Michael Zeller, counsel for Mattel, at p. 2, attached as Exhibit 49 to the Declaration of Tamar Buchakjian in Support of Mattel, Inc.'s Oppositions to the MGA Parties' Motions In Limine Nos. 1-14 ("Buchakjian Dec.") ("Regarding [Mattel's] requests to inspect Mr. Bryant's home computer, I have made further inquir[i]es on that subject to Mr. Bryant and my colleagues. Mr. Bryant did not own a home computer during his time at Mattel. He later purchased a computer, which he used for a time, and then gave away to his niece. That computer has been retrieved and searched for responsive documents, and none have been located. Mr. Bryant declines to produce his hard drive for inspection for the reasons articulated in his response to Mattel's document request.").

[5] Joint Stipulation Re: Mattel's Motion to Compel Production of Documents, filed on January 6, 2005 (excerpts) ("Joint Stipulation") at 62:2-13, 18-20,
    (footnote continued)

the Desktop hard drive, but did not find "any responsive documents or relevant information" on it.[6] It also represented that the only hard drive that could be located was the Desktop hard drive.[7]

The Discovery Master ordered Bryant to produce his hard drives.[8] Shortly before the deadline for production, Littler asked Mattel for an extension of time to comply with the Discovery Order, because (i) the quantity of responsive documents "may be significant" and (ii) because Bryant would be traveling.[9] Mattel agreed to the request.[10] Four days later, Littler asserted a new reason for failing to produce the hard drives: that the hard drive contained some unspecified "███████ ███████" and seeking "████████████" on that issue.[11] Again,

---

Buchakjian Dec., Exh. 50; [Redacted] Declaration of Keith A. Jacoby in Support of Defendant and Cross-Claimant Carter Bryant's Portion of Joint Stipulation (excerpted and without exhibits) ("2005 Jacoby Dec.") at ¶¶ 23, 24, Buchakjian Dec., Exh. 51.

[6] Declaration of Keith A. Jacoby in Support of Carter Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of Documents, dated January 11, 2007 (excerpted and without exhibits) ("2007 Jacoby Dec."), at ¶ 31, Buchakjian Dec., Exh. 53.

[7] Separate Statement of Defendant Carter Bryant in Opposition to Mattel's Motion to Compel, filed on January 11, 2007 ("Bryant's 2007 Separate Statement") at 39, Buchakjian Dec., Exh. 52; 2007 Jacoby Dec. at ¶ 31, Buchakjian Dec., Exh. 53.

[8] Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25, 2007 at 17, Buchakjian Dec., Exh. 54.

[9] Stipulation and Order re: Request to Extend Deadline Within Which Carter Bryant Must Comply with the Discovery master's January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents dated February 23, 2007, Buchakjian Dec., Exh. 55.

[10] Id.

[11] E-mail dated February 27, 2007, from Douglas Wickham to John Quinn and Michael Zeller, Buchakjian Dec., Exh. 56.

Mattel's counsel agreed to extend the deadline for production, and in return Littler agreed to provide a log of the ▮▮▮▮▮ at issue.[12] It never did.[13]

Instead, Littler then claimed that it could not locate the Desktop drive, and that it was "not sure" about the accuracy of its prior representations—that the Desktop drive had been retrieved—and that Littler's prior representations may have been "wrong."[14] In addition, it stated for the first time—years into this litigation—that it had in its possession images of other computer hard drives, including the laptop drive, that had been made in 2004 after this suit was filed, despite its prior representations to the Court that it had searched for and found only one hard drive, from the Desktop.[15]

Mattel then moved to enforce the Court Order requiring production of Bryant's drives.[16] The day before Littler's Opposition was due, it reversed course without explanation, and stated that it had found the Desktop drive and would make it available for inspection and imaging,[17] which it did.[18] Shortly after, Littler

---

[12] Letter dated March 2, 2007 from Douglas Wickham to Michael Zeller, Buchakjian Dec., Exh. 57; letter dated March 16, 2007 from Douglas Wickham to Michael Zeller, Buchakjian Dec., Exh. 58; letter dated March 27, 2007 from Douglas Wickham to Michael Zeller, Buchakjian Dec., Exh. 60.

[13] Letter dated March 26, 2007 from Michael Zeller to Douglas Wickham, Buchakjian Dec., Exh. 59.

[14] Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Buchakjian Dec., Exh. 61; [Public Redacted] Declaration of Michael T. Zeller in support of Mattel, Inc.'s Motion to Compel Deposition of Littler Mendelson, P.C. Pursuant to Subpoena, dated December 13, 2007 (without exhibits) ("Zeller Dec."), at ¶ 25, Buchakjian Dec., Exh. 142.

[15] Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Buchakjian Dec., Exh. 61.

[16] See Notice of Motion and Motion of Mattel, Inc. for an Order to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive, dated April 10, 2007, Buchakjian Dec., Exh. 62.

[17] Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller. Buchakjian Dec., Exh. 63.

withdrew as counsel and was replaced by Bryant's current counsel, Keker & Van Nest.[19] Keker subsequently produced the laptop drive and an image of it made in 2004.

Upon reviewing the drives, Mattel discovered that a software program called "Evidence Eliminator" had been installed and run on them.[20] That program had been run on the laptop computer drive on July 12, 2004,[21] almost three months after this suit was filed and two days before the imaging of Mr. Bryant's hard drive by his counsel. It caused more than 9,400 previously deleted file or folder names to be overwritten, and untold amounts of data—including the remnants of previously deleted files found in unallocated space within the drive—to be overwritten and rendered forever unrecoverable.[22] Evidence Eliminator was also present on the Desktop, though it is unknown when and how much data was potentially overwritten on that drive. Bryant and his expert have admitted that ▓▓▓▓▓▓▓▓

---

[18] Mattel, Inc.'s Notice of Withdrawal Without Prejudice of Motion for an Order to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive, Buchakjian Dec., Exh. 64.
[19] Request for Approval of Substitution of Attorney, dated May 18, 2007, Buchakjian Dec., Exh. 65.
[20] Forensic Analysis Report 1 of Mark J. Menz, dated February 10, 2008, at 1, 13, Buchakjian Dec., Exh. 89.
[21] Id.
[22] Transcript of Deposition of Mark Menz at 28:4-14, attached as Exhibit 17 to the Declaration of Stephen Hauss in Support of Mattel, Inc.'s Oppositions to the MGA Parties' Motions In Limine Nos. 1-14, filed concurrently herewith ("Hauss Dec."); Transcript of Deposition of Gary Funck at 123:22-25, 134:4-8, 136:21-24, 142:3-7, 145:14-21, 148:1-9, Hauss Dec., Exh. 7; Transcript of Deposition of Carter Bryant, Vol. 4, at 739:24-740:5, Hauss Dec., Exh. 4; Transcript of the Deposition of Carter Bryant, Vol. 5, at 1150:9-13, Hauss Dec., Exh. 5 (stating he both installed and ran Evidence Eliminator on his laptop computer).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████.[23]

### 2. Destructive Testing on the Bratz Drawings

This was not the first instance in which Mattel was aware of damage done to evidence in this case while in the possession of Littler. Indeed, destructive testing was conducted by defendants on the original Bratz drawings without notice to the Court or Mattel.[24]

Littler agreed to produce all of Bryant's original Bratz drawings at his deposition in November 2004.[25] Despite these promises, Bryant brought only a few of his original drawings to the deposition.[26] Some of these drawings had holes in them, indicating that samples had been extracted for ink and/or paper chemical dating analysis.[27] Bryant testified that his drawings did not have holes in them when he turned them over to defendants' counsel and that he was unaware of the origin of the holes.[28] Appearances notwithstanding, defendants' counsel at first denied that anyone engaged in destructive sampling or analysis of Bryant's original drawings.[29] Only after Mattel filed a motion asking the Court to appoint an expert witness did defendants finally reverse course and admit that destructive sampling had been

---

[23] Bryant Tr., Vol. 4, at 739:24-740:5, 741:6-9, 742:10-24, Hauss Dec., Exh. 4; Funck Tr. at 93:18-22, Hauss Dec., Exh. 7.
[24] Court's Order Denying Appointment of Expert Witnesses ("Expert Witnesses Order"), dated August 11, 2006, at 4:19-7:3, Buchakjian Dec., Exh. 66.
[25] Buchakjian Dec., Exhs. 67 & 68.
[26] Zeller Dec., ¶ 37, Buchakjian Dec., Exh. 142.
[27] Zeller Dec., ¶ 38, Buchakjian Dec., Exh. 142; Bryant Deposition, Vol. 2, at 459:13-460:16, Hauss Dec., Exh. 2.
[28] Bryant Deposition, Vol. 2, at 460:2-16, Hauss Dec., Exh. 2.
[29] Declaration of Keith Jacoby in support of Bryant's portion of Joint Stipulation Re: Mattel, Inc.'s Motion to Compel Inspection of Original Documents and Tangible Things, filed February 18, 2005, ¶ 11, Buchakjian Dec., Exh. 69.

performed on these documents."[30] In ruling on that motion, the Court recognized that defendants' handling of these "critical documents" raises "serious questions . . . [which cause] the Court much concern about whether the truth seeking functions of the adversarial system have been fundamentally compromised in this case."[31]

Since then, Mattel has repeatedly attempted—and failed—to get information regarding this testing from witnesses other than former counsel. In an effort to discern which documents were tested, how many holes were removed from them, and what other damage may have been caused, Mattel sought Rule 30(b)(6) testimony from MGA. Topic No. 41 of Mattel's Notice requested that MGA provide a Rule 30(b)(6) witness with knowledge of "the testing of or sampling from documents that refer or relate to Bratz."[32] MGA at first refused to produce any witness in response to Topic No. 41, asserting that the results of testing by its alleged expert were protected by attorney work product and privilege.[33] The Discovery Master and then the District Court overruled MGA's objections.[34] MGA then presented Lisa Tonnu on this topic twice, but her testimony was found to be inadequate,[35] and the Discovery Master found MGA had waived its privilege as to

---

[30] Declaration of Erich J. Speckin, dated July 21, 2006, ¶¶ 8, 13, Buchakjian Dec., Exh. 70.
[31] Expert Witnesses Order at 11:10-13, Buchakjian Dec., Exh. __.
[32] Mattel's Second Notice of Deposition of MGA Entertainment, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated February 1, 2007, at Topic No. 41, Buchakjian Dec., Exh. 66.
[33] MGA Entertainment Inc.'s Opposition to Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6) and for Sanctions, dated April 26, 2007, at 9-10, Buchakjian Dec., Exh. __.
[34] Order Granting Mattel Inc.'s Motion to Compel MGA To Produce Witnesses For Deposition Pursuant To Rule 30(b)(6), dated May 16, 2007, ¶ 5, Buchakjian Dec., Exh. 148; Judge Larson's Minute Order dated July 2, 2007, Buchakjian Dec., Exh. 149.
[35] Order Granting in Part Mattel's Motion to Enforce the Court's Order of May 16, 2007, to Compel MGA to Produce Witnesses For Deposition Pursuant to Rule
(footnote continued)

the handling of the documents and ordered MGA to "produce a witness to testify fully on Topic No. 41."[36]

Again, MGA designated Ms. Tonnu. In her first session of the continued deposition in January 2008, Ms. Tonnu could not identify a single document that had been tested.[37] In her last session of deposition, taken January 24, 2008, Ms. Tonnu identified exactly six pages that had plugs removed for ink aging and ink comparison testing, but could not identify any of the other 10 pages with inexplicable holes in them.[38] When asked about three of those other pages, Ms. Tonnu testified that MGA's expert did not make those microplug holes.[39] With respect to a fourth microplugged Bratz sketch, Ms. Tonnu testified that the document was plugged at the time it was examined by MGA's expert in 2004, but that he had not done the microplugging.[40] Thus, Mattel remains in the dark regarding how these holes were put in these vital pieces of evidence. Despite several Court Orders, MGA refused to provide a responsive 30(b)(6) witness on this topic.

---

30(b)(6), and Granting Request for Sanctions, dated August 14, 2007, Buchakjian Dec., Exh. 153; Order Granting In Part And Denying In Part Mattel's Motion To Enforce Court's Discovery Orders And To Compel; To Overrule Purportedly Improper Instructions; And For Sanctions, at 21-22, dated January 9, 2008, Buchakjian Dec., Exh. 150.
[36] Order Granting In Part And Denying In Part Mattel's Motion To Enforce Court's Discovery Orders And To Compel; To Overrule Purportedly Improper Instructions; And For Sanctions, dated January 9, 2008, Buchakjian Dec., Exh. 150.
[37] Deposition Transcript of Lisa Tonnu, dated January 17, 2008, at 929:2-25, Hauss Dec., Exh. 36.
[38] Deposition Transcript of Lisa Tonnu, dated January 24, 2008, at 1267:22-1268:5, Hauss Dec., Exh. 37.
[39] Id. at 1269:13-19; 1270:19-1271:8; 1272:4-1273:21; 1273:22-1275:1.
[40] Id. at 1277:20-1280:7.

MATTEL'S OPPOSITION TO MGA'S MIL NO. 5 RE PRIOR COUNSEL

## C. Patricia Glaser's Knowledge Regarding Defendants' Knowledge of Their Wrongdoing

Similarly, Patricia Glaser has knowledge regarding Isaac Larian's and MGA's knowledge of their wrongdoing, which relates to defendants' "good faith" defense, and to the knowledge elements of Mattel's claims for intentional interference with contract, and aiding and abetting breach of the fiduciary duty and duty of loyalty. Defendants have argued that they did not know Carter Bryant had transferred the rights to Bratz to Mattel, and Isaac Larian has testified that he cannot recall whether he was worried that Mattel would sue MGA when he first met with Carter Bryant.[41] Yet evidence and testimony show Mr. Larian had communicated with Ms. Glaser regarding possible litigation with Mattel as early as June of 2001.[42]

Moreover, Ms. Glaser has percipient knowledge of Larian's efforts to conceal Bryant's involvement with MGA. This is relevant to the knowledge element of Mattel's interference and aiding and abetting claims, and directly contradicts defendants' arguments that Larian acted in good faith in acquiring Bratz.

Victoria O'Connor is a former MGA executive. She worked for MGA when Bryant and MGA signed what they claim is their first Bratz-related agreement (the "Bryant/MGA Contract").[43] According to Ms. O'Connor, ███████████████████████████████████████████████[44]███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[41] Deposition Transcript of Isaac Larian, dated March 26, 2008 ("Larian Depo. Tr."), at 438:12-18, Hauss Dec., Exh. 14.
[42] See excerpts of MGA Privilege Log (Revised), dated January 23, 2008, at Nos. 374-375, 549-550, Buchakjian Dec., Exh. 71; Larian Depo. Tr. at 480:12-482:22, Hauss Dec., Exh. 14.
[43] Deposition Transcript of Victoria O'Connor, dated December 6, 2004 ("O'Connor Depo. Tr."), at 13:2-9, Hauss Dec., Exh. 19.
[44] Id. at 18:13-18.

1  ███████████████████████████████████████████
2  ████████████[45]████████████████████████████
3  ███████████████████████████████████████████
4  ██████████████████████████████[46]█████████
5  ███████████████████████████████████████████
6  ███████████████████████████████████████████
7  ██████████████████████████████████[47] Moreover, Ms.
8  O'Connor testified that ████████████████████
9  ████████████████████████[48]

       These facts are entirely legitimate topics of questioning, and are separate and distinct from Ms. Glaser's subsequent involvement in the current litigation, or the reasons for her withdrawal.

## Argument

### I. SPOLIATION AND DEFENDANTS' KNOWLEDGE OF THEIR WRONGDOING ARE RELEVANT TO MATTEL'S CLAIMS

       Throughout its motion, MGA asserts that the withdrawal of prior counsel is not relevant to any issue in the case. Mattel does not quarrel with that narrow proposition, and Mattel will—and has offered to—stipulate to that relief. Defendants' counsel rejected Mattel's request that the stipulation be without prejudice to Mattel calling prior counsel as fact witnesses on relevant issues. MGA hopes to prevent Mattel from examining witnesses with relevant knowledge at trial, under the pretext of preventing unfair prejudice to itself.

---

[45] Id.
[46] Id.
[47] Id. at 19:1-4, 20:8-21:17.
[48] Id. at 23:4-23; 25:22-26:9.

In fact, it is *Mattel* that would be prejudiced if MGA succeeds in its motion. Defendants' prior counsel can provide important testimony on the issues of spoliation and defendants' knowledge of their own wrongdoing.

As MGA argued in its motion for terminating sanctions, one possible result of spoliation could be a directed verdict in Mattel's favor. See, e.g., Leon v. IDX Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006) (affirming dismissal of action for deletion of files from computer hard drive); Kucala Enterprises, Ltd., 2003 WL 21230605 at *6 (dismissing action for use of Evidence Eliminator software to delete computer files). But at the least, such spoliation would entitle Mattel at trial to an adverse inference instruction.[49] See, e.g., Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). There can thus be no dispute that spoliation is an important subject of testimony at trial.

Similarly, the relevance of defendants' knowledge of their wrongdoing is directly relevant to Mattel's claims and MGA's defenses. Defendants' knowledge of the existence of Bryant's obligations and contracts with Mattel is relevant to Mattel's intentional interference with contract claim, its claim for aiding and abetting breach of fiduciary duty, and for aiding and abetting breach of duty of loyalty. It is also directly relevant to MGA's good faith defense, which argues that MGA had no idea that Bryant had already transferred the rights to Bratz to Mattel before it acquired them. In order for Mattel to counter this defense, it must be permitted to provide evidence and testimony to dispute it. Whatever prejudice MGA argues might arise from the mere mention of the fact that MGA had other counsel is outweighed by Mattel's right to present evidence on its claims and on a defense MGA chose to raise. See, e.g., Ebanks v. Great Lakes Dredge & Dock Co., 688 F.2d 716, 722 (11th Cir. 1982) ("Rule 403 is to be very sparingly used for the

---

[49] See Mattel's Proposed Jury Instructions at 53, Buchakjian Dec., Exh. 14.

1 | purpose of ruling out otherwise relevant evidence."); U.S. v. Morris, 79 F.3d 409,
2 | 412 (5th Cir. 1996) ("Because Rule 403 requires the exclusion of relevant evidence,
3 | it is an extraordinary measure that should be used sparingly.").
4 |       Indeed, MGA's own cases support this conclusion. Though Koch v.
5 | Koch Indus., Inc., 2 F. Supp. 2d 1385, 1409 (D. Kan. 1998), granted a motion *in*
6 | *limine* to exclude evidence of withdrawal, it made an exception to this rule where
7 | the fact of withdrawal was relevant. "[T]he court orders that all parties and counsel
8 | are precluding from presenting evidence or referring to . . . [t]he plaintiffs' counsel
9 | or experts who have withdrawn or been replaced during this litigation, ***except for***
10 | ***showing witness bias through evidence of what prior counsel may have instructed***
11 | ***and paid expert witnesses***." Id. (emphasis added). Similarly, in Cleaver v. Kemna,
12 | 122 Fed. Appx. 863, 865 (8th Cir. 2004), the court upheld the exclusion of reference
13 | to prior counsel's withdrawal only because it found that plaintiff had failed to show
14 | any prejudice as a result. Such would not be true here, where MGA's motion is a
15 | clear attempt to prevent Mattel from introducing witnesses on relevant topics.
16 |       Because MGA seeks to exclude witnesses on relevant topics, and
17 | because Mattel merely seeks to question witnesses about directly relevant
18 | information bearing on claims and defenses, MGA's motion *in limine* should be
19 | denied.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that MGA's Motion *In Limine* No. 5 be denied.

DATED: April 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
   John B. Quinn
   Attorneys for Mattel, Inc.