QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059 and<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION *IN LIMINE* NO. 12 TO STRIKE EXPERT LEE LOETZ<br><br>[Notice of Lodging and Declarations of Tamar Buchakjian and Stephen Hauss filed concurrently]<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

SUMMARY OF LOETZ' OPINIONS .........................................................................1

ARGUMENT ..............................................................................................................6

I. LOETZ IS QUALIFIED TO TESTIFY REGARDING "LATER WAVE" BRATZ DOLLS ..................................................................................6

II. THE COURT SHOULD PERMIT LOETZ TO TESTIFY REGARDING THE SCULPT DRAWING AND THE BRATZ DOLLS. ..................8

III. LOETZ MAY OPINE ON THE SIMILARITIES IN CLOTHING, HAIR STYLES AND ACCESSORIES ..............................................................10

CONCLUSION ........................................................................................................14

## TABLE OF AUTHORITIES

**Page**

### Cases

Boyds Collection, Ltd. v. Bearington Collection, Inc.,
  360 F. Supp. 2d 655 (M.D. Pa. 2005)..................................................................11

Boyds Collection, Ltd. v. Bearington Collection, Inc.,
  365 F. Supp. 2d 612 (M.D.Pa. 2005)...................................................................12

Carol Barnhart, Inc. v. Economy Cover Corp.,
  773 F.2d 411 (2d Cir. 1985).................................................................................11

Chosun Int'l, Inc. v. Chrishna Creations, Ltd.,
  413 F.3d 324 (2d Cir. 2005).................................................................................11

Coston v. Product Movers,
  1990 WL 56516 (E.D. Pa., 1990).........................................................................13

Eckard Brandes, Inc. v. Riley,
  338 F.3d 1082 (9th Cir. 2003)..............................................................................14

Fisher-Price Toys v. My-Toy Co.,
  385 F. Supp. 218 (S.D.N.Y. 1974).......................................................................10

Gay Toys, Inc. v. Buddy L Corp.,
  703 F.2d 970 (6th Cir. 1983)................................................................................11

Masquerade Novelty, Inc. v. Unique Indus., Inc.,
  912 F.2d 663 (3d Cir. 1990).................................................................................11

Myers v. Stephens,
  233 Cal. App. 2d 104 (1965)................................................................................14

Newton v. Diamond,
  204 F. Supp. 1244 (C.D. Cal. 2002) ............................................................... 12-13

Norris Industries, Inc. v. Int'l Tel. and Tel. Corp.,
  696 F.2d 918 (11th Cir.), cert. denied, 464 U.S. 818 (1983)................................11

OddzOn Prods., Inc. v. Oman,
  924 F.2d 346 (D.C. Cir. 1991)..............................................................................12

Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,
  932 F. Supp. 220 (N.D. Ill 1996)..........................................................................13

Ruskin v. Sunrise Mgmt., Inc.,
  506 F. Supp. 1284 (D. Colo. 1981).........................................................................9

Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,
  562 F.2d 1157 (9th Cir. 1977).................................................................................7

| | |
|---|---|
| Snepp v. U.S., 444 U.S. 507 (1980) | 13-14 |
| Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 365 F. Supp. 1199 (S.D.N.Y. 1973), rev'd on other grounds, 490 F.2d 1092 (2d Cir. 1974) | 11 |
| Stillman v. Leo Burnett Co., Inc., 720 F. Supp. 1353 (N.D. Ill. 1989) | 13 |
| United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001) | 7 |
| Villeroy & Boch, S.a.r.l. v. THC Sys., Inc., 1989 WL 8936 (S.D.N.Y. Jan. 30 1989) | 10 |
| Webloyalty.com, Inc. v. Consumer Innovations, LLC, 2005 WL 468496 (D. Del. 2005) | 13 |
| Zito v. Steeplechase Films, Inc., 267 F. Supp. 2d 1022 (N.D.Cal. 2001) | 9 |

**Other Authorities**

| | |
|---|---|
| Paul Goldstein, GOLDSTEIN ON COPYRIGHT, § 15.2 | 10 |
| Robert C. Osterberg and Eric C. Osterberg, SUBSTANTIAL SIMILARITY IN COPYRIGHT LAW, § 10:6 | 10 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel's expert Lee Loetz, a toy designer with more than a decade of experience, demonstrated in great detail that there are overwhelming similarities between Carter Bryant's drawings and the Bratz dolls. Unable to rebut Loetz' expert opinions on the merits, defendants seek to prevent the jury from hearing them at all. Defendants' motion in limine is meritless. Defendants' arguments are based on selective quotation, misstatements of evidence, and baseless legal assertions. At best, the arguments go to the weight, not admissibility, of Loetz' opinions. Accordingly, Mattel is entitled to present Loetz' opinions to the jury.

## Summary of Loetz' Opinions

Mr. Loetz has worked with companies throughout the toy industry and has prepared artwork and designs that have been implemented in countless toys.[1] Among other materials, Loetz reviewed dozens of Bratz dolls and/or high-quality photographs of the dolls, including more than 50 dolls and photographs thereof.[2] Loetz offers opinions on several topics. First, as pertinent to the extrinsic test for substantial similarity, Loetz explains that important similarities between Carter Bryant's drawings and the first wave of the Bratz dolls exist on every level, including:

- **Body Proportions**. Comparing a picture of an unclothed Bratz doll with Bryant's sculpt drawing shows that each major anatomical component -- including chin, shoulders, waists, crotch, knees, and ankles -- lines up exactly. A side-by-side comparison from a three-quarter view confirms the similarities.[3]

---

[1] A copy of Lee Loetz' report is Exhibit 58 to the Declaration of B. Dylan Proctor In Support Of Mattel Inc.'s Motions in Limine Nos. 1-13.
[2] Id., Exh. A at 2-13
[3] Id., (Loetz Report at 3-4).



Exhibit 37

- **Facial Features**. The proportional placement of the eyes, hair, and lips also match nearly identically as between the drawings and the dolls. The eyes are a similar distance apart, as are the eyebrows. The cheek color application is in the same place. The faces have a similar shape, from the brow, to the eye socket, to the outward curve of the cheek.[4]

---

[4] Id., (Loetz Report at 5-6).

- **The Eyes**. Bryant's drawings include oversized almond shaped-eyes, with heavy lids, outlined with makeup. The Bratz dolls' eyes share this almond shape, which is angled upward at its outside edge. The pupils are also placed in a similar location on the horizontal as well as vertical plane. And the eyebrows share the same distance from the eye, the same angular shape, and cover fifty percent of the pupils.[5]
- **Eye Makeup**. The makeup on the eyes in Bryant's drawings matches that of the doll. In the dolls and in the drawings, the characters' eyes have three eyelashes. There are similarities in placement and design of the eye makeup. The eyeliner design is similar in its painterly thickness and sweeping upward curves.[6]
- **Lips**. The lips in Bryant's drawings and the dolls also match: they are large, over-inflated, and outlined with lip gloss.[7]
- **Hair Styling**. The dolls and drawings share braided hairstyles on a dark-haired character, and pig tails and similar bangs on another character.[8]

---

[5] Id., (Loetz Report at 6).
[6] Id.
[7] Id., (Loetz Report at 7).
[8] Id.



- **Clothing**. The dolls and drawings share urban fashions of short skirts, layered tops, and high-heeled shoes. Where pants are worn, the dolls and drawings share a flared style with wide cuffs and striped details. The dolls and drawings also share knit hats, striped shirts, and cropped shirts.[9]
- **Accessories**. The accessories in both the dolls and the drawings are youthful and funky, especially in the use of colorful backpacks that display the same graphic motifs, such as a bunny with the words "Hip Hop."[10]

---

[9] Id., (Loetz Report at 8).
[10] Id., (Loetz Report at 8-9).

- **Footwear**. There are extensive similarities in the shoe design, including in the execution of sneaker style and design, high heels, open toes, and belt straps. Shoes in both the drawings and on the dolls are oversized.[11]



Boot Design Detail & Color

Exhibit 11

- **Postures**. In Bryant's drawings, the Bratz figures are posed with an angular waist, knock-knees, pigeon toes, and hands upturned at the wrist. The Bratz dolls match this posture.[12]

Based on these extensive similarities, which he documents in the exhibits to his report, Loetz opines that the first wave Bratz dolls are "faithful executions" of, and "virtually identical" to, Bryant's drawings.[13]

---

[11] Id., (Loetz Report at 9).
[12] Id., (Loetz Report at 4-5).

Second, Loetz opines that that "[t]he later waves of the dolls also appear to be based on Carter Bryant's concept drawings and the first wave of the dolls" and that "[t]here is a visual consistency from Carter Bryant's sketches, to the first wave of dolls, up through the later waves of Bratz dolls."[14] This is based on his expert visual analysis of dolls and/or photographs of the later wave dolls.

Third, in his rebuttal report, Loetz opines that a 1998 issue of Seventeen magazine is not the only possible source of the artistic elements -- such as oversized heads and feet -- by which Bryant claims to have been inspired. Loetz explains that these elements were also present in 1999 issues of that magazine. Loetz also concludes that Bryant's drawings share important similarities with Toon Teens, a confidential Mattel project to which Bryant had access while employed there. Loetz also opines that the packaging art for Bratz dolls is based on Bryant's initial drawings, and did not change significantly over the years.[15]

Defendants do not challenge most of these opinions. Rather, their challenges are limited to three discrete issues discussed below.

## Argument

### I. LOETZ IS QUALIFIED TO TESTIFY REGARDING "LATER WAVE" BRATZ DOLLS

Defendants claim that Loetz' opinions regarding the waves of Bratz dolls that followed the first wave are based on speculation because Loetz has not examined these dolls. This argument fails for several reasons. First, defendants simply misstate the evidence. Loetz' report states that he "examined dolls and/or images of the later

---

[13] Id., (Loetz Report at 2, 9).
[14] Id., (Loetz Report at 10).
[15] Declaration of Tamar Buchakjian In Support of Mattel Inc.'s Oppositions to the MGA Parties' Motions In Limine Nos. 1-14, Exh. 151, *passim*.

waves of the Bratz dolls.[16] Defendants offer no evidence for their erroneous assertion that Loetz has not examined "later wave" Bratz dolls. Indeed, the evidence is to the contrary.[17]

Second, defendants misstate Loetz' opinions regarding the "later wave" Bratz dolls in seeking to exclude them. According to defendants, Loetz stated that he needed to examine the dolls to opine on "virtual identity" or "faithful execution." But Loetz <u>did not opine</u> that "later wave" dolls are "virtually identical" to or a "faithful execution" of Bryant's drawings. He opined only that "[t]he later waves of the dolls also appear to be based on Carter Bryant's concept drawings and the first wave of the dolls" and that "[t]here is a visual consistency from Carter Bryant's sketches, to the first wave of dolls, up through the later waves of Bratz dolls."[18] There is neither evidence nor legal authority suggesting that Loetz could not properly find a "visual consistency," as he did, from examining some later wave dolls and some high-quality photographs of the later wave dolls.[19]

---

[16] Declaration of B. Dylan Proctor In Support Of Mattel Inc.'s Motions in Limine Nos. 1-13, Exh. 58 (Loetz Report, at p. 10).

[17] Actually, defendants quote Loetz' testimony out of context. At deposition, MGA's counsel asked Loetz to perform on-the-spot substantial similarity analysis between a Bryant drawing and various photographs of discrete elements of dolls. Loetz responded that as to that <u>particular</u> drawing and those <u>specific</u> photographs, he would prefer to examine the dolls themselves. Specifically, in response to a question "So it does not show you enough information to determine whether or not the dolls <u>that are shown here</u> are virtually identical to the sketch?," Loetz answered "I don't believe so. <u>Not this image does</u>. No." Declaration of Jason D. Russell In Support of Defendants' Motion in Limine, Exh. 68, (Loetz Depo. Tr., at 318:6-13 (emphasis added)).

[18] Declaration of B. Dylan Proctor In Support Of Mattel Inc.'s Motions in Limine Nos. 1-13, Exh. 58 (Loetz Report, at p. 10).

[19] Of course, "virtual identity" is not the proper legal standard for infringement. In copyright cases, the standard for a finding of infringement is much lower: "substantial similarity." <u>See, e.g., Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.</u>, 562 F.2d 1157, 1162-64 (9th Cir. 1977). Thus, even if it were difficult to (footnote continued)

In any event, these issues go only to the weight, not the admissibility, of Loetz' expert opinions. For instance, in <u>United States v. Vallejo</u>, 237 F.3d 1008 (9th Cir. 2001), the Ninth Circuit reversed the district court's exclusion of an expert on the ground that the expert did not interview the defendant, but rather only reviewed his case history. The court explained "the Government could have cross-examined the school psychologist regarding his failure to physically examine Vallejo, a fact which goes to the weight--not the admissibility--of the evidence." <u>Id</u>., at 1021.

## II. THE COURT SHOULD PERMIT LOETZ TO TESTIFY REGARDING THE SCULPT DRAWING AND THE BRATZ DOLLS.

Defendants argue that Loetz' opinions regarding the similarities between Bryant's sculpt drawing and the Bratz dolls should be excluded because Loetz assumed incorrectly that the dolls were based on the drawing. Specifically, defendants point to Margaret Leahy's testimony that, for some reason, Bryant's sculpt drawing was copied <u>by</u> Bryant <u>from</u> a preliminary sculpt of a Bratz doll. Motion, 7:8-12. Disingenuously, however, defendants do not mention that <u>Bryant himself contradicted</u> Leahy's version of the events, testifying that Leahy sculpt was based <u>on</u> his drawing, not vice versa.

> Q. [L]ast Friday, and you told me that -- that image there
> [i.e., the scupt drawing] was used in creating the second
> sculpt for the Bratz. Do you recall that?
>
> A   Yes.
>
> Q   And I think you told me that's something that you wrote
> and that you then gave to Margaret Leahy?
>
> A   I illustrated this, yes. . . .

---

perform a "virtual identity" analysis based only on a photograph of the infringing work, there is no such barrier with respect to analysis under the proper "substantial similarity" test.

```
 1        Q  Okay. But the drawing of the figure there is -- that's
 2     something you drew?
 3        A  Yes.
 4        Q  And to guide her in her sculpting?
 5        A  Yes.
 6        Q  And that became the -- that was used for the second
 7     sculpt of Bratz?
 8        A  Yes.
 9        Q  Which became the final sculpt? . . .
10        A  This was the closest drawing that I had done to what
11     became the final sculpt, yes.
12        Q  I mean, the sculpt that was created from this drawing,
13     did that become the final sculpt?
14        A  To the best of my knowledge.
15        Q  It did?
16        A  Yes.[20]
```

Bryant's testimony is thus consistent with Loetz' opinions. This apparent conflict in the evidence does not affect the admissibility of Loetz' opinions.

Defendants also argue that Loetz may not testify regarding the sculpt drawing and its infringement by the Bratz dolls because the sculpt drawing has not been registered with the Copyright Office. Motion, 8:2-13.[21] Defendants' own authority

---

[20] Declaration of Stephen Hauss In Support of Mattel Inc.'s Oppositions to the MGA Parties' Motions In Limine Nos. 1-14, Exh. 3 (Bryant Depo. Tr., 527:19-528:20).

[21] Defendants do not contest that the drawing was created during Bryant's employment at Mattel. Nor can they, as Steven Linker testified that he received it before Bryant left Mattel. Declaration of Stephen Hauss In Support of Mattel Inc.'s Oppositions to the MGA Parties' Motions In Limine Nos. 1-14, Exh. 15. Pursuant to (footnote continued)

1  defeats their argument. In <u>Zito v. Steeplechase Films, Inc.</u>, 267 F. Supp. 2d 1022,
2  1025 (N.D.Cal. 2001), the defendant moved to dismiss on the grounds that the
3  plaintiff brought a copyright infringement action based upon an unregistered work.
4  In response to the motion, the plaintiff registered the work. The court denied the
5  motion to dismiss, holding "a failure to allege registration can be cured if the plaintiff
6  registers the copyright and files an amended complaint including an allegation that
7  the copyrighted work is registered." <u>Id</u>. So here. Mattel may cure the purported
8  defect at any time by registering the "sculpt drawing" with the Copyright Office.
9  This technicality is not a proper basis to exclude Loetz' opinions before trial under
10 <u>Daubert</u>.[22]

12 III.  <u>LOETZ MAY OPINE ON THE SIMILARITIES IN CLOTHING, HAIR
13       STYLES AND ACCESSORIES</u>
14       Defendants' final argument is that Loetz cannot opine on similarities between
15 the dolls' and drawings' hair styles, accessories, and clothing because they
16 purportedly are not copyrightable. Defendants are wrong. Courts routinely consider

---

the Court's recent Order on the motions for partial summary judgment, Mattel thus owns this drawing.

[22] Such a registration would not affect the timeliness of Mattel's copyright claim as it pertains to the sculpt drawing. <u>See</u> e.g., <u>Ruskin v. Sunrise Mgmt., Inc.</u>, 506 F. Supp. 1284, 1289 (D. Colo. 1981) ("Upon amendment [to allege recordation of copyright transfer], the copyright claim would relate back, for statute of limitation purposes, to the original filing date of the complaint."); <u>Villeroy & Boch, S.a.r.l. v. THC Sys., Inc.</u>, 1989 WL 8936, at * 2 (S.D.N.Y. Jan. 30 1989) (denying defendant's motion for summary judgment that argued the Court lacked subject matter jurisdiction because the plaintiff did not record his copyright transfer, and granting leave to amend complaint so that "supplemental complaint relates back to the filing date of the initial complaint for statute of limitations purposes."); PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT, § 15.2 at p. 15:11 ("[C]ourts have allowed the plaintiff's subsequent compliance with the registration . . . requirements to relate back to the (footnote continued)

dolls' clothing in copyright cases. For instance, in <u>Fisher-Price Toys v. My-Toy Co.</u>, 385 F. Supp. 218, 220-21 (S.D.N.Y. 1974), the court considered actionable similarities in the dolls' clothing: "They are both representations of blond-haired little girls appearing to be the same age, dressed in removable red and white checked gingham dresses with puffed sleeves. White aprons cover the front of each dress. Under each dress is a body suit or pajama outfit made of the same material as the dress, with white lace extending from the pants' leg. Both dolls also have simple vinyl hands, booty-like feet, and white fabric legs." <u>See also</u> Robert C. Osterberg and Eric C. Osterberg, SUBSTANTIAL SIMILARITY IN COPYRIGHT LAW, § 10:6. ("Some of the particular characteristics courts consider when comparing dolls [for purposes of infringement analysis] are facial features, facial expression, size, body and limb type, stance or pose, <u>hair, clothing and accessories</u>, age, and gaze.") (emphasis added).

Defendants have not presented any authority that dolls' clothing is not copyrightable. The only authority defendants cite, <u>Chosun Int'l, Inc. v. Chrishna Creations, Ltd.</u>, 413 F.3d 324, 328 (2d Cir. 2005), stands for the unexceptional proposition that clothing <u>for people</u> may be an uncopyrightable utilitarian article. But <u>dolls'</u> clothing serves no utilitarian purpose. Indeed, courts have consistently rejected arguments that toy treatments of utilitarian articles are not copyrightable. See <u>Boyds Collection, Ltd. v. Bearington Collection, Inc.</u>, 360 F. Supp. 2d 655, 661 (M.D. Pa. 2005) ("Clothing on a [teddy] bear replicates the form but not the function of clothing on a person. It does not constitute a 'useful article' excluded from copyright protection."); <u>Masquerade Novelty, Inc. v. Unique Indus., Inc.</u>, 912 F.2d 663, 670 (3d Cir. 1990) (masks portraying animals); <u>Gay Toys, Inc. v. Buddy L Corp.</u>, 703 F.2d 970, 973 (6th Cir. 1983) (toy airplanes). So here. Although dolls' clothing resembles human clothing, it does not serve any utilitarian function (<u>e.g.</u>, it does not keep the

___

date the lawsuit was filed, thus preserving claims that might otherwise have been barred by the statute of limitations.") (citations omitted).

dolls warm). The same is true of hair styles and accessories, such as hair combs. Therefore, copyright protection can and does apply.

Defendants also point to a letter from the Copyright Office stating that the Bratz dolls' clothing is not copyrightable. But statements by the Copyright Office are not entitled to res judicata effect in infringement litigation. See Carol Barnhart, Inc. v. Economy Cover Corp., 773 F. 2d 411, 414 (2d Cir. 1985) ("While the expertise of the Copyright Office is in interpretation of the law and its application to the facts presented by the copyright application, it is permissible for the district court itself to consider how the copyright law applies to the articles under consideration.") (citation and quotation marks omitted); Norris Industries, Inc. v. Int'l Tel. & Tel. Corp., 696 F.2d 918, 922 (11th Cir.) (the court should not "simply accept the Register's decision without question ...."); Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 365 F. Supp. 1199, 1200 (S.D.N.Y. 1973), rev'd on other grounds, 490 F.2d 1092 (2d Cir. 1974) ("The Courts have long held that any finding of fact or conclusion of law by the Register of Copyrights is not binding on the Courts"); see also OddzOn Prods., Inc. v. Oman, 924 F. 2d 346, 347-50 (D.C. Cir. 1991) (affirming the Copyright Office's denial of copyright registration, but noting that "neither our decision, nor that of the district court, in any way precludes a determination, in an infringement action, that the KOOSH ball is indeed copyrightable."). Indeed, in Boyds Collection, Ltd. v. Bearington Collection, Inc., 365 F. Supp. 2d 612 (M.D.Pa. 2005), a case that is directly on point, the court refused to reconsider its prior finding that teddy bears' clothing was copyrightable based upon letters from the Copyright Office that took a contrary position. The court explained

> the interpretation proposed in the letters "fatally conflicts with the plain meaning of the statutory definition of '"useful article,"' as applied in this case . . . [The letters at issue] do not have "force of law." . . . The clothing for the Boyds bears does not serve to protect the bears from exterior

| | |
|---|---|
| 1 | elements. It does not serve to cover indecent aspects of the |
| 2 | bears. It does not serve any purpose except appearance |
| 3 | differentiation. It has no independent "utilitarian function" |
| 4 | and is not a "useful article." The agency's contrary |
| 5 | interpretation cannot trump the plain meaning of the |
| 6 | governing statute. [23] |

7   Moreover, the Copyright Office's statements regarding copyrightability of doll
8 clothing were made with respect to Bratz <u>dolls</u>, not clothing depicted in Bryant's
9 <u>drawings</u>, which Mattel contends it owns and were infringed. It is the
10 copyrightability of Bryant's drawings that is at issue here.

11   The Court should reject defendants' argument that dolls' clothing is an
12 uncopyrightable useful article. It is well settled that protectability under the
13 Copyright Act is a question of law for the Court. <u>See</u>, <u>e.g.</u>, <u>Newton v. Diamond</u>, 204
14 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a
15 copyrighted work is a question of law."); <u>Stillman v. Leo Burnett Co., Inc.</u>, 720 F.
16 Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve
17 findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.");
18 <u>Coston v. Product Movers</u>, 1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of
19 which aspects of plaintiffs' work are protectible expression as opposed to
20 unprotectible idea is an issue of law."); <u>Webloyalty.com, Inc. v. Consumer
21 Innovations, LLC</u>, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a
22 finding of copyright infringement may involve questions of fact, the protectability of
23 copyrighted material is a question of law); <u>Pivot Point Int'l, Inc. v. Charlene Prods.</u>,
24 Inc., 932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is
25 "copyrightable is a question of law," and the "jury has nothing to do with this
26 subject."). As explained above, doll clothing, and doll clothing depicted in two-

---

[23] <u>Id.</u>, at 616-17 (citations omitted).

07209/2477597.2

-13-

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 12

1  dimensional form, is plainly copyrightable as a matter of law. Accordingly, the Court
2  should permit Loetz to testify regarding the similarities between the clothing and
3  accessories in Bryant's drawings and the Bratz dolls, as this is relevant to Mattel's
4  claim for copyright infringement.
5       In any case, Loetz' opinions are highly relevant to Mattel's state-law claims,
6  and admissible for this reason as well. Even assuming <u>arguendo</u> that Bryant's
7  drawings of doll clothes and accessories are not copyrightable, the similarities
8  between these features of Bryant's drawings (which Mattel contends it owns) and the
9  Bratz dolls would provide damning evidence that the Bratz dolls are the result of
10 Bryant's and MGA's tortious misconduct. Further, to the extent that defendants
11 reaped the benefit of Bryant's wrongdoing by exploiting the fashions and accessories
12 depicted in Bryant's drawings, the similarities that Loetz describes are relevant to the
13 scope of disgorgement of Bratz revenues to which Mattel is entitled. <u>See, e.g.</u>, <u>Snepp
14 v. U.S.</u> (1980) 444 U.S. 507, 514-516 (court imposing constructive trust on profits
15 obtained as a result of breach of fiduciary duty); <u>Eckard Brandes, Inc. v. Riley</u>, 338
16 F.3d 1082, 1086 (9th Cir. 2003) ("employees [are required] to turn over profits
17 received as a result of breaching their duty of loyalty.") (citations omitted); <u>Myers v.
18 Stephens</u>, 233 Cal. App. 2d 104 (1965) (the plaintiff was entitled to the disgorgement
19 of the defendant's profit from the sale of converted property).

## Conclusion

21      For all the foregoing reasons, Mattel respectfully requests that the Court deny
22 defendants' motion *in limine* No. 12 in its entirety.

23 DATED: April 28, 2008    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By_____
John B. Quinn
Attorneys for Plaintiff Mattel, Inc.