1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
3  Los Angeles, CA  90071
   Tel.: (213) 687-5000/Fax: (213) 687-5600
4
   RAOUL D. KENNEDY (Bar No. 40892)
5  (rkennedy@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, CA 94111-5974
7  Tel.: (415) 984-6400/ Fax: (415) 984-2698

8  Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian
9

10

11                    UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA

13  CARTER BRYANT, an individual,      )  CASE NO. CV 04-9049 SGL (RNBx)
                                       )
14                       Plaintiff,    )  Consolidated with Case No. CV 04-
                                       )  09039 and Case No. CV 05-02727
15          v.                         )
                                       )  MGA'S NOTICE OF MOTION AND
16  MATTEL, INC., a Delaware           )  MOTION OBJECTING TO
    corporation,                       )  DISCOVERY MASTER'S APRIL 22,
17                                     )  2008 ORDER GRANTING MATTHEW
                         Defendant.    )  BOUSQUETTE'S MOTION TO
18                                     )  QUASH SUBPOENA; AND
                                       )  MEMORANDUM IN SUPPORT
19                                     )
                                       )  [DECLARATION OF ROBERT J.
20                                     )  HERRINGTON FILED UNDER
                                       )  SEPARATE COVER]
21                                     )
                                       )
22  AND CONSOLIDATED ACTIONS           )
                                       )
23                                     )
                                       )  Date:   May 5, 2008
24                                     )  Time:   10:00 a.m.
                                       )  Judge:  Honorable Stephen G. Larson
25                                     )  Place:  Courtroom 1

26

27

28
   ─────────────────────────────────────────────────────
   MGA'S MOTION OBJECTING TO DISCOVERY MASTER 'S APRIL 22, 2008 ORDER GRANTING MATTHEW
              BOUSQUETTE'S MOTION TO QUASH SUBPOENA
                   CASE NO: CV 04-9049 SGL (RNBx)

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on May 5, 2008, at 10:00 a.m., or as

3 soon as the matter may be heard, before the Honorable Stephen G. Larson of the

4 United States District Court for the Central District of California – Eastern Division,

5 located at 3470 Twelfth Street, Riverside, California 92501, MGA Entertainment,

6 Inc. ("MGA"), Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

7 Mexico, S.R.L. de C.V. will and hereby do move, pursuant to Federal Rule of Civil

8 Procedure 72(a), for an order to set aside Discovery Master's April 22, 2008 Order

9 granting Non-Party Matthew Bousquette's Motion To Quash (the "April 22, 2008

10 Order").

11          This motion is made on the ground that the Discovery Master clearly erred in

12 quashing the subpoena served on Matthew Bousquette.  The Discovery Master

13 applied the incorrect legal standard to determine whether Mr. Bousquette's subpoena

14 should be quashed or modified under  Fed. R. Civ. P. 45(c)(3)(A)(ii).  The subpoena

15 was served on Mr. Bousquette a little over one mile from his "personal residence" in

16 Palm Springs, California.  Mr. Bousquette also regularly does business in Palm

17 Springs, California.  Under Rule 45, the subpoena was proper and Mr. Bousquette

18 should be ordered to appear for deposition immediately.

19          This motion is based on this Notice of Motion and Motion, the attached

20 Memorandum of Points and Authorities, the concurrently filed Declaration of Robert

21 Herrington ("Herrington Decl."), the pleadings and records on file in this action, and

22 any further evidence and argument as may be presented to the Court on this motion

23 or for which judicial notice may be taken.

24 DATED:  April 28, 2008

25

26

27

28

1
2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

3
4

By: _Thomas J. Nolan by RA_____

    Thomas J. Nolan

5
6
7

Attorneys for MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................. ii

I.    PRELIMINARY STATEMENT ................................................ 1

II.   STATEMENT OF FACTS .......................................................... 2

   A.   MGA's Attempts To Schedule Mr. Bousquette's Deposition And Mattel's Continual Misrepresentations.............................. 2

   B.   After Promising to Produce Mr. Bousquette, Mattel and Its Counsel Unilaterally Cancelled Mr. Bousquette's Deposition. ........... 4

   C.   MGA Files An *Ex Parte* Application To Compel The Deposition of Mr. Bousquette. ................................................ 5

   D.   Mattel Falsely Represented to the Court that Mr. Bousquette Was Not a California Resident. ..................................... 7

   E.   Despite the False Statements from Mr. Bousquette and Mattel, MGA Tried to Accommodate Mr. Bousquette's Schedule. ................. 9

   F.   Mattel and Mr. Bousquette File Motions For Protective Order and Motion To Quash Deposition Subpoena Respectively. ........... 10

   G.   The Discovery Master Grants Mr. Bousquette's Motion To Quash. . .......................................................... 11

III.  ARGUMENT ....................................................................... 12

   A.   The Court Should Set Aside The Discovery Master's April 22, 2008 Order. ..................................................... 12

   B.   Because The Discovery Master Applied The Incorrect Legal Standard, The Order Should Be Set Aside. .......................... 12

   C.   Even Under The "Domicile Standard," Mr. Bousquette's Deposition Should Proceed. ........................................ 15

IV.   CONCLUSION ................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Arley v. United Pacific Insurance Co.*,
   379 F.2d 183 (9th Cir. 1967).................................................. 13

*Halliburton Energy Services, Inc. v. M-I, LLC*,
   No. H06MC00053, 2006 WL 2663948 (S.D. Tex. Sept. 15, 2006) .................. 14

*Lew v. Moss*,
   797 F.2d 747 (9th Cir. 1986)................................................ 15, 16

*Lewis v. United States*,
   No. C. 04-1834 PJH, 2004 WL 2757931 (N.D. Cal. Dec. 2, 2004) ................ 13

*Stacher v. United States*,
   258 F.2d 112 (9th Cir. 1958)................................................ 13

## STATUTES

Fed. R. Civ. P. 45(c)(3)(A)(ii)................................................ 13

Fed. R. Civ. P. 72(a)......................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

The Court should overrule the Discovery Master's decision quashing MGA's subpoena to Mathew Bousquette.  Under Federal Rule of Civil Procedure 45, an individual can be subpoenaed to provide deposition testimony within 100 miles of the person's residence or where the person regularly conducts business.  Mr. Bousquette has represented to the State of California that his primary residence is in Palm Springs, California.  Mr. Bousquette also owns and operates a real estate investment business located in Palm Springs.  Based on these contacts, MGA personally served Mr. Bousquette with a deposition subpoena while he was eating breakfast at a restaurant just over a mile from his residence in Palm Springs.

In quashing the subpoena to Mr. Bousquette, the Discovery Master committed clear error by applying a "domicile standard" rather than the "residence standard" adopted by the Ninth Circuit for subpoenas issued under Federal Rule of Civil Procedure 45.  Applying the wrong standard led the Discovery Master to improperly accept Mr. Bousquette's conclusory and self-serving declaration that he supposedly "intends" to make his permanent residence in Chicago, Illinois, notwithstanding his numerous, continuing contacts with California.  Under the correct standard, Mr. Bousquette's supposed "intent" is irrelevant.  The facts establish that his primary residence is in California, that he regularly conducts business in California, and that he was physically present in California when served with his deposition subpoena.  The Discovery Master committed clear error in quashing the subpoena.

Time is of the essence.  MGA has been seeking to depose Mr. Bousquette since November 2006, and Mattel has used every trick in the book to block that deposition, including, as found by the Discovery Master, misleading MGA as to who represented Mr. Bousquette.  Mr. Bousquette has critical information regarding

1  Phase I of this case, a fact that Mattel has acknowledged by listing Mr. Bousquette

2  on its witness list for the Phase I trial.  The Court should put an end to Mattel's game

3  playing and order Mr. Bousquette's deposition immediately.

4  **II.    STATEMENT OF FACTS**

5      **A.    MGA's Attempts To Schedule Mr. Bousquette's Deposition And Mattel's Continual Misrepresentations.**

6

7      On November 22, 2006, MGA served a subpoena and notice of deposition for

8  Mr. Bousquette, a former Mattel executive who was the head of Mattel's Girl

9  Division from Feb/March 2003 to October 2005.[1]  On December 6, 2006, Mattel <u>and</u>

10  Mr. Bousquette responded to the subpoena and notice of deposition with "Objections

11  and Responses."[2]  Mattel's counsel, Quinn Emanuel, represented Mr. Bousquette and

12  served responses on his behalf.  In those responses, neither Mattel nor Mr.

13  Bousquette raised any objection regarding service.

14      On January 9, 2007, Quinn Emanuel attorney Timothy Alger sent a letter

15  discussing the deposition of Mr. Bousquette, stating that "the parties would select

16  new dates convenient for the witnesses [including Mr. Bousquette] and sufficiently

17  <u>after</u> MGA's initial disclosures to allow a fair review of the materials."[3]  Mr. Alger's

18  letter contains no suggestion that he did not represent Mr. Bousquette.  To the

19  contrary, on January 16, 2007, Quinn Emanuel attorney Timothy Alger sent another

20  letter regarding the deposition of Mr. Bousquette, stating that "Mr. Bousquette and

21  Ms. Ross will be made available on dates convenient for the witnesses after MGA

22  _____
  [1]    Herrington Decl., Ex. 1: Matthew Bousquette's Notice of Deposition, dated
23  November 22, 2006.

24    [2]    Herrington Decl., Ex. 2: Mattel's and Matthew Bousquette's Objections and Responses To MGA Entertainment, Inc.'s Notice of Deposition and Subpoena for
25  Production of Documents To Matt Bousquette, dated December 6, 2006.

26    [3]    Herrington Decl., Ex. 3: Letter from Timothy Alger to James Jenal, dated
27  January 9, 2007, at 2.

28

1  makes initial disclosures in compliance with <u>Rule</u> 26(a)...."[4]  Nowhere in the letter

2  did Mr. Alger suggest that he did not represent Mr. Bousquette.  To the contrary, on

3  January 18, 2007, Mattel filed a motion to compel Rule 26(a) disclosures from MGA,

4  which the Discovery Master denied on February 13, 2007.[5]  At the end of the

5  February 13 hearing, Mattel's counsel raised an issue, which had not been briefed,

6  regarding the timing of Mr. Bousquette's deposition in relation to MGA's document

7  production.  The Discovery Master stated, "I think the deposition should not take

8  place until the document discovery is substantially completed, with respect to that

9  witness."[6]

10      Between February and October 2007, MGA produced more than 4 million

11  pages of documents in this action, including hundreds of thousands of pages relating

12  to MGA's unfair competition claims.[7]  In November 2007, after a stay of discovery,

13  MGA began pressing counsel for Mattel for the deposition of Mr. Bousquette.

14  Mattel requested only that MGA confirm that their unfair competition document

15  production was substantially complete.  In a letter dated December 10, 2007, MGA's

16  new counsel confirmed that MGA's unfair competition document production was

17  substantially complete, and again requested dates for Mr. Bousquette's deposition.[8]

18      On December 11, 2007, Jon Corey of Quinn, Emanuel, Urquhart, Oliver &

19  Hedges, LLP sent a letter stating that his firm "represents" Mr. Bousquette and

20

21

---

22  [4]      Herrington Decl., Ex. 4: Letter from Timothy Alger to James Jenal, dated

23  January 16, 2007, at 4.

24  [5]      Herrington Decl., Ex. 5: February 13, 2007 Hr. Tr. at 33:9-15.

     [6]      *Id.* at 34:15-18.

25  [7]      Herrington Decl. ¶ 6.

26  [8]      Herrington Decl., Ex. 6: Letter from Marcus Mumford to Jon Corey, dated

     December 10, 2007, at 2.

27

would produce him for deposition.[9]  Three weeks later, on January 2, 2008, after several further requests from MGA to provide a deposition date for Mr. Bousquette, Mattel's counsel faxed a letter to MGA's counsel, stating that Mr. Bousquette was available to be deposed on February 12 or February 13 in Chicago, Illinois.[10] Nowhere did Mattel's counsel indicate that they did not represent Mr. Bousquette. To the contrary, on January 9, 2008, MGA faxed a letter to Mattel's counsel reminding them that in light of the Court's Order requiring the parties to complete all depositions prior to the discovery cut-off of January 28, 2008, Mr. Bousquette's deposition would have to be conducted prior to that date.[11]  MGA informed Mattel that if the deposition could not be conducted in Los Angeles or Chicago, MGA was willing to make the "necessary arrangements" to conduct the deposition wherever Mattel designated.[12]  In a subsequent telephone conference, Mattel's counsel also notified MGA's counsel that they would produce Mr. Bousquette for deposition on February 15.

### B. After Promising to Produce Mr. Bousquette, Mattel and Its Counsel Unilaterally Cancelled Mr. Bousquette's Deposition.

Acting as counsel for Mr. Bousquette, Mattel cancelled Mr. Bousquette's deposition just four days prior to the deposition date, asserting only that, in light of the Court's Order staying Phase II discovery, Mr. Bousquette's deposition would not go forward until after the Phase I trial.[13]  MGA responded the same day explaining

---

[9]     Herrington Decl., Ex. 7: Letter from Jon Corey to Marcus Mumford, dated December 11, 2007.

[10]     Herrington Decl., Ex. 8: Letter from Jon Corey to Thomas J. Nolan and Michael Page, dated January 2, 2008.

[11]     Herrington Decl., Ex. 9:  Letter from Marcus Mumford to Jon Corey, dated January 9, 2008.

[12]     *Id.*

[13]     Herrington Decl., Ex. 10:  Letter from Michael Zeller to Michael Page and Thomas Nolan, dated February 11, 2008.

1  that Mr. Bousquette is a Phase 1 witness because he has knowledge relevant to both
2  the merits and damages portions of Phase 1A and 1B.[14]

3      Instead of confirming these deposition dates, Mattel's counsel demanded that
4  MGA prove that Mr. Bousquette was a Phase I witness.[15]   MGA responded on
5  February 13, 2008, providing Mattel with evidence demonstrating the relevance of
6  Mr. Bousquette to Phase 1.[16]  Without addressing the substance of MGA's evidence,
7  Mattel rejected MGA's position and informed MGA that it would not produce Mr.
8  Bousquette for Phase I.[17]

9      **C.    MGA Files An *Ex Parte* Application To Compel The Deposition of Mr. Bousquette.**
10

11     Based on Mattel's conduct, MGA filed an *ex parte* application on February 21,
12  2008 with this Court seeking to immediately compel the deposition of Mr.
13  Bousquette.  On February 25, this Court held a hearing on the application, during
14  which Mattel argued for the first time that Mr. Bousquette was separately
15  represented and was a resident of Chicago, Illinois, not California.  However, the
16  Court questioned Mattel's counsel as to why it had cancelled Mr. Bousquette's
17  deposition given that it was now claiming it did not "control" Mr. Bousquette and
18  that he had "his own separate counsel."[18]  Without giving the Court a direct answer,
19  Mattel's counsel stated that it had informed Mr. Bousquette's counsel that Mr.
20  Bousquette did not have to appear because he was a Phase II witness and the Court

---

[14]     Herrington Decl., Ex. 11:  Letter from Thomas Nolan to Michael Zeller, dated February 11, 2008, at 1.
[15]     Herrington Decl., Ex. 12: Letter from Michael Zeller to Thomas Nolan and Michael Page, dated February 12, 2008.
[16]     Herrington, Decl., Ex. 13:  Letter from Thomas Nolan to Michael Zeller, dated February 13, 2008.
[17]     Herrington, Decl., Ex. 14:  Letter from Michael Zeller to Thomas Nolan, dated February 14, 2008.
[18]     Herrington Decl., Ex. 15: February 25, 2008 Hr. Tr. 32:1-4.

1  had stayed discovery as to Phase II.[19]  The Court admonished Mattel's counsel to "be

2  careful."[20]  During the hearing, Mattel argued that Mr. Bousquette should not be

3  deposed because he was a Phase II witness.[21]  The Court made it clear, however, that

4  this was not Mattel's "call to make."[22]  The Court further stated to both parties that if

5  they are unable to work out whether a witness is a Phase I or Phase II witness, then

6  "just take the deposition and . . . move forward."[23]  Ultimately, the Court directed

7  MGA to present this matter first to the Discovery Master, because it involved a

8  discovery issue.[24]

9         On February 28, 2008, MGA submitted the parties' briefing relating to Mr.

10  Bousquette's deposition to the Discovery Master.  On March 7, Mattel submitted a

11  further opposition asserting that Mr. Bousquette had no knowledge regarding Phase I

12  issues and that Mr. Bousquette was not a resident of California.[25]  Mr. Bousquette

13  did not file a declaration in support of Mattel's opposition.  On March 10, the

14  Discovery Master heard MGA's motion.  Notably, Mr. Caldwell did not appear at

15  the hearing to represent Mr. Bousquette.  Rather, Mattel's counsel argued the motion

16  on Mr. Bousquette's behalf.  At the hearing, the Discovery Master granted MGA an

17  order allowing it to proceed in pursuing Mr. Bousquette's deposition based on the

18  fact that the Discovery Master had found that MGA had shown good cause "given

---

19  [19]    *Id.* at 33:1-3.

20  [20]    *Id.* at 33:4.

21  [21]    *Id.* at 8:8-25.

22  [22]    *Id.* at 8:2-7, 9:1-3.

23  [23]    *Id.* at 9:4-14.

24  [24]    *Id.* at 5:2-5; Herrington Decl., Ex. 16: Minute Order, dated February 25, 2008, at 2.

25  [25]    Herrington Decl., Ex. 17: Opposition By Non-Party Matthew Bousquette To Motion To Compel Deposition; Declaration of Christopher Caldwell, filed on March 7, 2008.

1  the fact that [MGA had] been – were misled as to who represented Mr.

2  Bousquette."[26]

3  ### D.   Mattel Falsely Represented to the Court that Mr. Bousquette Was Not a California Resident.

4

5  On March 12, 2008 MGA's counsel informed Mr. Caldwell that the Discovery

6  Master had granted explicit leave to seek Mr. Bousquette's deposition and asked

7  whether he would accept service of a subpoena for his client.[27]  Mr. Caldwell stated

8  that he needed to speak with his client, but would call MGA's counsel back.[28]  He

9  never called back.[29]

10  When Mr. Caldwell failed to provide deposition dates, MGA began trying to

11  locate Mr. Bousquette in Chicago so a subpoena could be served.  Searches revealed

12  no listings for Mr. Bousquette in or near Chicago, but showed that, contrary to

13  Mattel and Mr. Caldwell's representations, Mr. Bousquette owned a home in Palm

14  Springs, California.  Based on this discovery, MGA retained an investigator to search

15  for information regarding Mr. Bousquette and attempt to serve him at his residence

16  in Palm Springs.[30]

17  On March 16, 2008, a process server witnessed Mr. Bousquette leaving his

18  home at 844 North Mission Road, Palm Springs, California and driving with another

19  man and three children to the International House of Pancakes ("IHOP"), just a

20  couple miles away.[31]  Mr. Bousquette was then personally served with a deposition

21  [26]    Herrington Decl., Ex. 18: March 10, 2008 Hr. Tr. at 77:17-22.

22  [27]    Herrington Decl., Ex. 19: Declaration of Thomas Nolan In Support Of MGA's Opposition To Matthew Bousquette's And Mattel's Motion To Quash And Motion

23  For Protective Order, dated April 3, 2008.

24  [28]    *Id.*

   [29]    *Id.*

25  [30]    Herrington Decl., Ex. 20: Declaration of Wayne Sherman, dated April 2, 2008,

26  ¶ 1.

   [31]    *Id.* ¶ 8.

27

28

1  subpoena at the IHOP.[32]  The subpoena called for Mr. Bousquette to appear for

2  deposition on March 28, 2008, at a Palm Springs location less than one mile from his

3  residence.[33]

4         MGA's investigators also discovered that, in addition to having his residence

5  in Palm Springs, Mr. Bousquette has numerous other connections to California

6  which include the following:

7         • Mr. Bousquette claims a "homeowners exemption" from property taxes

8  for the residence he owns at 844 North Mission Road in Palm Springs.[34]

9  According to the website of the California Board of Equalization, a

10  homeowners exemption is available *only* if the home is the owner's "principal

11  place of residence," and the owner has an obligation to notify the State if he

12  becomes ineligible to claim the exemption.[35]

13         • Mr. Bousquette is registered to vote in Riverside County.[36]

14         • Mr. Bousquette owns and operates a business in California called

15  "MCB Prop" or "MCB Properties LLC."[37]  Mr. Bousquette is the registered

16  agent and lists his business as 844 N. Mission Road, Palm Springs.[38]

17         • MCB Properties owns several properties in Palm Springs and Los

18  Angeles, including:  (i) a residence located at 375 W. Hermosa Place, Palm

19

20  [32]    *Id.*
21  [33]    Herrington Decl., Ex. 21: Notice of Deposition and Service of Subpoena To
    Matthew Bousquette.
22  [34]    Herrington Decl., Ex. 20, ¶ 2.
23  [35]    Herrington Decl., Ex. 22: Internet printout from Board of Equalization website
    regarding California's Homeowner's Exemption.
24  [36]    Herrington Decl., Ex. 23: Bousquette Declaration In Support of Motion To
    Quash The Subpoena Seeking Deposition of Matthew Bousquette; Or In The
25  Alternative Motion For Protective Order, dated March 27, 2008 ¶ 3.
26  [37]    Herrington Decl., Ex. 20, ¶¶ 2-3.
    [38]    *Id.* ¶¶ 3-4.
27

Springs, CA; (ii) commercial properties located at 1090 Palm Canyon Drive, Palm Spring, CA, 390 N. Palm Canyon Drive, Palm Springs, CA, and 254 N. Palm Canyon Drive, Palm Springs, CA; and (iii) multi-residential properties at 1160 Hacienda Place, West Hollywood, CA and 734 N. Edinburgh Avenue, Los Angeles, CA.[39]

- Mr. Bousquette or his business are listed as the owners of at least three vehicles registered in California as recently as April 2007, July 2007, and September 2007.[40]

- Mr. Bousquette recently renewed his California drivers license.[41]

These facts establish that Mr. Bousquette is a resident of California and is operating a business in California.

**E.    Despite the False Statements From Mr. Bousquette and Mattel, MGA Tried to Accommodate Mr. Bousquette's Schedule.**

On March 17, 2008, Mr. Caldwell sent a letter contending that Mr. Bousquette was not available for deposition until April 30, 2008.[42]  MGA conferred with Mr. Caldwell during the period from March 18 to March 25.  During those discussions, MGA's counsel offered to accommodate Mr. Bousquette's travel schedule by conducting the depositions over the weekend on March 29 or 30.  Mr. Caldwell rejected this suggestion. MGA also offered to take the deposition during the first week of April 2008, provided that Mattel and Mr. Bousquette agreed that the deposition would proceed on that date.[43]  Mr. Caldwell indicated he would speak

---

[39]    *Id.* ¶ 3.
[40]    *Id.* ¶ 6.
[41]    Herrington Decl., Ex. 24: Supplemental Declaration of Wayne Sherman.
[42]    Herrington Decl., Ex. 25: Letter from Christopher Caldwell to Thomas Nolan, dated March 17, 2008.
[43]    Herrington Decl., Ex. 26: Letter from Robert Herrington to Christopher Caldwell, dated March 27, 2008, at 1.

1    with Mattel, try to obtain additional dates from Mr. Bousquette, and call MGA's

2    counsel back.[44]  He never did so.  Instead, MGA's counsel received a voice message

3    from Mr. Caldwell on March 27 stating that Mr. Bousquette and Mattel would be

4    filing motions for protective order.[45]

## F.    Mattel and Mr. Bousquette File Motions For Protective Order and Motion To Quash Deposition Subpoena Respectively.

In its motion for protective order, Mattel sought to postpone Mr. Bousquette's

deposition solely on the basis that MGA's unfair competition document was not

substantially complete, and as a result Mr. Bousquette's deposition could not take

place.[46]  Nowhere in its motion for protective order does Mattel argue that Mr.

Bousquette should not be deposed because he does not "reside" in California.  Mr.

Bousquette, on the other hand, argued in his motion to quash the deposition

subpoena and motion for protective order that he is not a resident of California and

does not regularly conduct business "in person" in California.[47]  Mr. Bousquette

claimed that he "does not live in Palm Springs, is not employed in Palm Springs, and

does not regularly transact business within 100 miles of Palm Springs,"[48] and falsely

asserted that MGA "has made no effort to attempt to accommodate Mr. Bousquette's

schedule."[49]  Mr. Bousquette argued that his deposition should take place in

Illinois.[50]

---

[44]    *Id.*

[45]    *Id.* at 2.

[46]    Herrington Decl., Ex. 27: Mattel, Inc.'s Notice of Motion and Motion For Protective Order Re: Matthew Bousquette, filed on March 27, 2008, at 1-2.

[47]    Herrington Decl., Ex. 28: Notice of Motion And Motion To Quash The Subpoena Seeking Deposition Of Matthew Bousquette; Or In The Alternative, Motion For A Protective Order, filed on March 27, 2008, at 1.

[48]    *Id.* at 4-5.

[49]    *Id.* at 7.

[50]    *Id.* at 7-8.

1   Subsequently, on April 1, 2008, Mattel contradicted its prior assertions that Mr.

2   Bousquette had no knowledge regarding Phase I issues by including him in its Rule

3   16 disclosures for the Phase I trial.[51]

4   **G.   The Discovery Master Grants Mr. Bousquette's Motion To Quash.**

5   On April 22, 2008, the Discovery Master issued an order granting Mr.

6   Bousquette's motion to quash.[52]  The Discovery Master bases his ruling on Mr.

7   Bousquette's representations that "he lives and works in Illinois."[53]  The Discovery

8   Master relied on Mr. Bousquette's self-serving assertions that he has "maintained his

9   permanent residence in Itasca [, Illinois] for more than a year and intends to file his

10  2007 federal and state tax returns as a resident of Illinois," that "he presently has no

11  intention of changing his residence and expects to remain a resident of Illinois

12  indefinitely," and that although Mr. Bousquette owns several properties in California

13  and visits California regularly, "his primary residence is now Illinois."[54]  The

14  Discovery Master noted that all the information collected by MGA regarding Mr.

15  Bousquette's various ties to California such as his residence in Palm Springs,

16  California; his ownership of several properties and a business in California; his

17  ownership of at least three vehicles registered in California in 2007; and his voter

18  registration in California were not "necessarily inconsistent" with Mr. Bousquette's

19  representations.[55]

20

21

22  _____

    [51]   Herrington Decl., Ex. 29: Mattel's List of Phase One Witnesses (served
23  4/1/08).
    [52]   Herrington Decl., Ex. 30: April 22, 2008 Order Granting Third-Party Matthew
24  Bousquette's Motion To Quash Subpoena.
25  [53]   *Id.* at 2.
    [54]   *Id.* at 3.
26  [55]   *Id.* at 2-3.
27

1   **III.**   <u>**ARGUMENT**</u>

2      **A.**   **The Court Should Set Aside The Discovery Master's April 22, 2008 Order.**

3

4      Orders issued by the Discovery Master in this case are treated as rulings by a

Magistrate Judge.[56] Accordingly, such orders are subject to Federal Rule of Civil

5

Procedure 72 and should be set aside or modified if they are "clearly erroneous or . . .

6

contrary to law." Fed. R. Civ. P. 72(a). As is shown below, the Discovery Master's

7

April 22, 2008 Order is clearly erroneous, contrary to law, and should be set aside.

8      **B.**   **Because The Discovery Master Applied The Incorrect Legal Standard, The Order Should Be Set Aside.**

9

10      The Discovery Master's application of the "domicile standard" to analyze and

11 interpret Federal Rule of Civil Procedure 45(c)(3)(A)(ii) was clear error. Under Rule

12 45(c)(3)(A)(ii), a court must quash a subpoena if it requires a non-party to travel

13 more than 100 miles from where that person "**resides, is employed, or regularly**

14 **transacts business in person.**" Fed. R. Civ. P. 45(c)(3)(A)(ii) (emphasis added).

15 The key word here is "resides." Nowhere does the rule use the term "domicile," and

16 much less "intent."

17      The Ninth Circuit has explained that "domicile" and "residence" are <u>not</u>

18 synonymous. *Lewis v. United States*, No. C 04-1834 PJH, 2004 WL 2757931, at * 2

19 (N.D. Cal. Dec. 2, 2004) ("the Ninth Circuit has ruled that the term 'residence' does

20 not connote 'domicile' for the purpose of the general venue statute.") (citing *Arley v.*

21 *United Pac. Ins. Co.*, 379 F.2d 183, 185 (9th Cir. 1967).) The term "residence" and

22 its derivatives refer to a person's physical presence. *See Arley*, 379 F.2d at 185 n. 1

23 (term "residence" included individual's second home in Oregon). Rule 45 uses the

24 term "resides," which reflects the intention that a non-party should be required to sit

25 ————————————

26 [56]   Herrington Decl., Ex. 31: Stipulation for Appointment of a Discovery Master and Order ¶ 6.

27

28

1   for a deposition wherever that individual is "physically present," so long as the
2   individual is not required to travel more than 100 miles.  *See Stacher v. United States*,
3   258 F.2d 112, 116-119 (9th Cir. 1958) (in construing 28 U.S.C. section 1391(b)
4   which used the term "reside" the Ninth Circuit noted that there is an "essential
5   difference" between "'domicile' which generally involves intent, and 'residence'
6   which generally involves an actual place of abode."  The Court, therefore, stated that
7   it was not concerned with the appellant's "intent").

8        Mr. Bousquette was physically present in California and personally served less
9   than a mile from his home in Palm Springs.  Mr. Bousquette has a large home in
10  Palm Springs, which he has owned since 1984.[57]  He claims a homeowners
11  exemption on that property, which means Mr. Bousquette has represented to the
12  State of California that his Palm Springs home is his "principal place of residence."[58]
13  Mr. Bousquette is registered to vote in Riverside County.[59]  He owns numerous
14  vehicles that he registered just last year in California.[60]  And he owns and operates a
15  business, "MCP Properties LLC," in California, which itself owns numerous
16  residential and commercial properties in Palm Springs and Los Angeles.[61]  These
17  facts compel the conclusion that Mr. Bousquette "resides" in Palm Springs and
18  conducts business in Palm Springs.  *See Halliburton Energy Servs., Inc. v. M-I, LLC*,
19  No. H06MC00053, 2006 WL 2663948, at *2 (S.D. Tex Sept. 15, 2006) (denying
20  motion to quash deposition subpoena under Rule 45 based on finding that movant's
21  regular trips to Texas placed him in the category of regularly transacting business in
22

23  [57]    Herrington Decl., Ex. 20, ¶ 2.
24  [58]    Herrington Decl., Ex. 22: Internet printout from Board of Equalization website regarding California's Homeowner's Exemption.
25  [59]    Herrington Decl., Ex. 23, ¶ 3.
26  [60]    Herrington Decl., Ex. 20, ¶ 6.
    [61]    *Id.* ¶¶ 2-3.
27

28

person).  In *Halliburton*, the district court refused to quash the deposition subpoena where the deponents made regular trips to the forum state.  Here, Mr. Bousquette not only visits California regularly, but owns several properties, residences, and even a business in California.  This evidence – which is more than provided in *Halliburton* – surely proves that Mr. Bousquette "resides" and regularly does business in California.

The Discovery Master granted Mr. Bousquette's motion to quash solely on the basis of Mr. Bousquette's representations that his primary residence is Illinois and that he has no "intention of changing his residence and expects to remain a resident of Illinois indefinitely."[62]  The Discovery Master gave no weight to the undisputed fact that Mr. Bousquette owns several properties in California, including one property that he admits is his "principal place of residence" and visits California on a regular basis.  The Discovery Master's focus on Mr. Bousquette's intention to remain in Illinois was misplaced.  The Discovery Master should have analyzed the objective evidence presented to determine whether Mr. Bousquette's residence is in California (which it admittedly is) or whether he regularly does business in California (which he admittedly does).  The unambiguous wording of the Rule does not contemplate a decision based on an individual's purported "intentions," as opposed to the objective facts presented to the Court regarding the person's contacts with California.  The Discovery Master's failure to apply the correct legal standard compel this Court to set aside the Discovery Master's April 22, 2008 Order and order the immediate deposition of Mr. Bousquette.

---

[62]    Herrington Decl., Ex. 30 at 3.

### C.  Even Under The "Domicile Standard," Mr. Bousquette's Deposition Should Proceed.

Assuming, solely for the sake of argument, that this Court were to accept the Discovery Master's application of the "domicile standard," the Discovery Master's April 22, 2008 Order should still be set aside because Mr. Bousquette's domicile is California and not Illinois.  As Mr. Bousquette's own motion to quash cases explain, domicile is determined by considering a number of factors, including:  "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes."  *Lew v. Moss*, 797 F.2d 747, 750-51 (9th Cir. 1986) ("courts have created a presumption in favor of an established domicile as against a newly acquired one.").  The Discovery Master failed to consider these factors, and for this reason alone the decision should be overruled.

If the Discovery Master had considered these factors, only one conclusion is possible – Mr. Bousquette "resides" in California and regularly does business here. He owns a residence in Palm springs, owns several real properties in California, and claims a homeowners exemption for the property taxes he pays in California.  In addition, Mr. Bousquette owns a business based in California, has at least three cars registered in California, is currently registered to vote in California, recently renewed his California driver's license, and was personally served in California.

Despite all of this evidence, the Discovery Master erroneously relied on Mr. Bousquette's conclusory, self-serving statements that he "intends" to remain a resident of Illinois indefinitely and that he "intends" to file his 2007 federal and state

tax returns as a resident of Illinois.[63] Mr. Bousquette's intentions to make his residence in Illinois are irrelevant and, under controlling legal authority, should have been afforded little, if any, weight. *See Lew*, 797 F.2d at 750 ("domicile is evaluated in terms of 'objective facts,' and that statements of intent are entitled to little weight when in conflict with facts.") (citations omitted).

The Discovery Master's April 22, 2008 Order was clearly erroneous and should be set aside. Mr. Bousquette should be ordered to sit for a deposition in California immediately.

## IV.    CONCLUSION

For the foregoing reasons, MGA respectfully requests that the Court grant its motion objecting to the Discovery Master's April 22, 2008 Order. MGA further requests that the Court order Mr. Bousquette to appear for deposition in Palm Springs within five days of the Court's Order.

DATED:  April 28, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By:  _Thomas J. Nolan by RA_

Thomas J. Nolan
Attorneys for MGA Entertainment, Inc.,
Isaac Larian, MGA Entertainment (HK)
Limited, and MGAE de Mexico S.R.L. de
C.V.

---

[63] *Id.*