# DECL. OF CHRISTOPHER G. CALDWELL

Exhibit 17,
P. 103

# DECLARATION OF CHRISTOPHER G. CALDWELL

I, Christopher G. Caldwell, hereby state and declare as follows:

1.      I am a principal of the law firm of Caldwell Leslie & Proctor, a Professional Corporation.

2.      Since October 2005, I have represented Matthew Bousquette in a variety of matters that pre-date this proceeding.

3.      I have been informed that MGA Entertainment, Inc., a party in the above captioned action, is seeking to compel Mr. Bousquette's deposition and to enforce a deposition subpoena.

4.      Mr. Bousquette currently resides in Chicago, Illinois and works in the suburbs of Chicago.

5.      Mr. Bousquette has not been personally served with a deposition subpoena in connection with this action nor have I accepted service of a deposition on Mr. Bousquette's behalf in connection with this action.

6.      Neither Mr. Bousquette nor I have ever authorized the law firm of Quinn Emanuel Urquhart Oliver & Hedges LLP to accept service of a deposition subpoena on his behalf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 7, 2008, at Los Angeles, California.

CHRISTOPHER G. CALDWELL

CALDWELL
LESLIE &
PROCTOR

082-011Opp to Mtn to Compel
Depo.doc\6

-3-

Exhibit 17,
P. 104

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1000 Wilshire Boulevard, Suite 600, Los Angeles, California 90017-2463.

On March 7, 2008, I served the foregoing document(s) described as:

**OPPOSITION BY NON-PARTY MATTHEW BOUSQUETTE TO MOTION TO COMPEL DEPOSITION; DECLARATION OF CHRISTOPHER G. CALDWELL**

[ on all interested parties in this action.

**SEE ATTACHED SERVICE LIST**

[X]  By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[X]  **BY MAIL**    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]  **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[ ]  **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth on this date.

[X]  **BY PERSONAL SERVICE** I delivered such envelope by hand to the offices of the addressee.

[X]  **BY ELECTRONIC MAIL** I personally served in ".PDF" format, the document(s) described above, with attachments, to the individuals stated on the attached service list to their known email addresses

Executed on March 7, 2008, at Los Angeles, California.

[X ]  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

SONIA L. MEJIA
Type or Print Name                                    Signature

CALDWELL
LESLIE
& PROCTOR

Exhibit 17,
P. 105

1

2  **SERVICE LIST**

| Jon D. Corey<br>Timothy L. Alger<br>QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>joncorey@quinnemanuel.com<br>*Attorneys for Plaintiff and Cross-Defendant Mattel, Inc.*<br>[BY ELECTRONIC EMAIL] | Thomas J. Nolan<br>SKADDEN ARPS SLATE MEAGHER & FLOM, LLP<br>300 S. Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>tnolan@skadden.com<br>*Attorneys for MGA Entertainment, Inc.*<br>[BY PERSONAL SERVICE & ELECTRONIC EMAIL] |
|---|---|
| Michael H. Page<br>KEKER & VAN NEST, LLP<br>710 Sansome Street<br>San Francisco, CA 94111<br>mpage@kvn.com<br>*Attorneys for Carter Bryant*<br>[BY MAIL & ELECTRONIC EMAIL]<br><br>The Honorable Judge Infante<br>c/o Sandra Chan, Case Administrator<br>JAMS<br>Two Embarcadero Center, Suite 1500<br>San Francisco, California 94111<br>schan@jamsadr.com<br>[BY FEDERAL EXPRESS & ELECTRONIC MAIL] | Alexander H. Cote<br>OVERLAND BORENSTEIN SCHEPER & KIM, LLP<br>300 S. Grand Avenue, Suite 2750<br>Los Angeles, CA 90071-3144<br>acote@obsklaw.com<br>*Attorneys for Carlos Gustavo Machado*<br>[BY MAIL & ELECTRONIC EMAIL] |

CALDWELL
LESLIE
& PROCTOR

-2-

# Exhibit 18

03-10-08 Infante Hearing Transcript.txt

```
 1              UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3                  EASTERN DIVISION

 4

 5  CARTER BRYANT, AN INDIVIDUAL, )
                                  )
 6              PLAINTIFF,        )
                                  )
 7      VS.                       ) CASE NO.
                                  )
 8  MATTEL, INC., A DELAWARE      ) CV 04-9049 SGL (RNBX)
    CORPORATION,                  ) [CONSOLIDATED WITH
 9                                ) CASE NO. 04-9059 AND
                DEFENDANT.        ) CASE NO. 05-2727]
10                                )
    _____)
11                                )
    AND CONSOLIDATED ACTION(S).   )
12  _____)

13

14

15      TELEPHONIC TRANSCRIPT OF

16      PROCEEDINGS, TAKEN BEFORE HON.

17      EDWARD A. INFANTE, AT 865 SOUTH

18      FIGUEROA STREET, THIRD FLOOR, LOS

19      ANGELES, CALIFORNIA, COMMENCING

20      AT 8:32 A.M., MONDAY, MARCH 10,

21      2008, BEFORE ANGELA DUPRE, CSR 7804.

22

23

24

25
```

0                                                      2

Page 1

Exhibit _18_,
P. _107_

```
                    03-10-08 Infante Hearing Transcript.txt
 1    APPEARANCES OF COUNSEL:

 2

 3    FOR CARTER BRYANT:

 4        KEKER & VAN NEST, LLP
          BY:  MATTHEW M. WERDEGAR, ESQ.
 5             MICHAEL H. PAGE, ESQ.
          710 SANSOME STREET
 6        SAN FRANCISCO, CALIFORNIA 94111
          (415) 391-5400
 7        (TELEPHONICALLY)

 8    FOR MATTEL, INC.:

 9        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:  TIMOTHY L. ALGER, ESQ.
10             JON D. COREY, ESQ.
               HARRY A. OLIVAR, JR., ESQ.
11             B. DYLAN PROCTOR, ESQ.
               DAVID W. QUINTO, ESQ.
12        865 SOUTH FIGUEROA STREET
          TENTH FLOOR
13        LOS ANGELES, CALIFORNIA 90017-2543
          (213) 443-3000
14

15    FOR MGA ENTERTAINMENT, INC.:

16        SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
          BY:  RAOUL D. KENNEDY, ESQ.
17             JOSE R. ALLEN, ESQ.
               THOMAS J. NOLAN, ESQ.
18             RICHARD J. ZUROMSKI, JR., ESQ.
               PAUL M. ECKLES, ESQ. (NEW YORK OFFICE)
19             MATTHEW E. SLOAN, ESQ. (LOS ANGELES OFFICE)
          FOUR EMBARCADERO CENTER
20        SUITE 3800
          SAN FRANCISCO, CALIFORNIA 94111
21        (415) 984-6400
          (TELEPHONICALLY)
22

23    ALSO PRESENT:

24        HON. EDWARD A. INFANTE (TELEPHONICALLY)

25
```

0                                                              3

```
 1              LOS ANGELES, CALIFORNIA; MONDAY

 2                    MARCH 10, 2008

 3                      8:32 A.M.

                        Page 2
```

Exhibit _18_,
P. _108_

03-10-08 Infante Hearing Transcript.txt

1  MAKING THE INTERROGATORY A CONTENTION

2  INTERROGATORY.

3          FURTHER, IT IS CLEAR FROM THE CONTEXT OF

4  THE ORDER THAT MATTEL WAS PERMITTED TO DISCOVER THE

5  INFORMATION BY INTERROGATORY.  IT WOULD NOT MAKE

6  SENSE TO ATTEMPT TO DISCOVER SUCH INFORMATION FOR A

7  SEVEN-YEAR PERIOD BY CONTENTION INTERROGATORY.

8          THIRD, IN CAUSING MATTEL'S EFFORT TO

9  COMPEL COMPLIANCE WITH THE 30(B)(6) DEPOSITION

10 NOTICE, MGA ASKED THAT MATTEL BE LIMITED TO

11 OBTAINING THE INFORMATION BY INTERROGATORY.  THE

12 DISCOVERY MASTER PRESUMABLY INTENDED TO GIVE MGA

13 THE RELIEF IT HAD REQUESTED, AND NOT MORE.  THUS,

14 IT IS CLEAR THAT MATTEL WAS PERMITTED TO PROPOUND

15 AN INTERROGATORY REQUIRING MGA TO SET FORTH FACTS.

16         THAT IS DISPOSITIVE OF THIS MOTION.  MGA

17 SHOULD NOT BE HEARD TO ARGUE THAT IT DOES NOT

18 CONTEND THAT IT ASKED CARTER BRYANT TO WORK ON A

19 TEST PROJECT WHILE HE WAS EMPLOYED BY MATTEL.

20         FIRST, THE DISCOVERY MASTER HAS RULED

21 THAT MATTEL IS ENTITLED TO THAT INFORMATION.

22 THERE'S NO BASIS TO RECONSIDER THAT RULING NOW, IN

23 THE LIGHT OF AN EVASIVE RESPONSE TO AN

24 INTERROGATORY.

25         SECOND, MGA HAS ENGAGED IN SEMANTICS.

0                                                66

1  ALTHOUGH IT MAY NOT BE MAKING A LEGAL CONTENTION

2  THAT IT ASKED BRYANT TO WORK ON A TEST PROJECT, IT

3  DOES NOT DENY THAT IT, IN FACT, DID SO.  INDEED,

Page 59

Exhibit 18 ,
P. 109

03-10-08 Infante Hearing Transcript.txt

4   PAULA GARCIA ADMITTED IN HER DEPOSITION THAT BRYANT

5   WAS PAID BY MGA FOR HIS WORK ON THE PRAYER ANGELS.

6   THERE'S NO DISPUTE THAT REGARDLESS OF WHAT

7   CONTENTION MGA MAY OR MAY NOT BE MAKING, BRYANT HAS

8   CONTENDED THAT HE WAS ASKED TO WORK ON A TEST

9   PROJECT.

10           THE INFORMATION REQUESTED WILL BEAR ON

11  BRYANT'S EXPLANATION FOR WHY HE WORKED FOR MGA

12  WHILE EMPLOYED BY MATTEL, AND THAT -- THAT IS

13  CERTAINLY A PLAUSIBLE AND SUFFICIENT REASON TO

14  COMPEL A RESPONSE TO THE INTERROGATORY; THAT, AFTER

15  ALL, IS WHY YOUR HONOR FOUND THAT MATTEL WAS

16  ENTITLED TO THE DISCOVERY IN THE FIRST INSTANCE.

17           THE OBJECTIONS ASSERTED NOW BY MGA ARE

18  MERITLESS.  FIRST, THE SPECIAL MASTER HAS ALREADY

19  SAID THAT MATTEL IS ENTITLED TO THE INFORMATION

20  REQUESTED.  SO IT'S WATER UNDER THE BRIDGE.

21           SECOND, MATTEL DOES NOT HAVE ANY PRIVACY

22  RIGHT THAT IT WOULD ENTITLE IT TO WITHHOLD THE

23  INFORMATION SOUGHT.

24           THIRD, THE OBJECTION THAT THE INFORMATION

25  SEEKS INFORMATION NOT REASONABLY CALCULATED TO LEAD

0                                                    67

1   TO THE DISCOVERY OF ADMISSIBLE EVIDENCE, HAS

2   ALREADY BEEN REJECTED.

3           FOURTH, THE OBJECTION THAT AN

4   INTERROGATORY IS COMPOUND, IF IT POTENTIALLY SEEKS

5   TO REQUIRE DISCLOSURE OF MORE THAN ONE FACT, IS

6   SIMPLY ABSURD.

Page 60

Exhibit _18_,
P. _110_

03-10-08 Infante Hearing Transcript.txt

7       YOUR HONOR, THERE IS NO REASON THAT MGA

8   SHOULD NOT BE COMPELLED TO RESPOND TO THE

9   SUPPLEMENTAL INTERROGATORY, WHICH IS THE

10  INTERROGATORY THAT LAST SEPTEMBER IT ASKED THIS

11  COURT TO GRANT LEAVE TO MATTEL TO PROPOUND IN

12  EXCHANGE FOR NOT HAVING TO PRODUCE A 30(B)(6)

13  WITNESS.

14       THEY'VE ASKED FOR THE INTERROGATORY, THEY

15  GOT THE INTERROGATORY.  THEY SHOULD BE REQUIRED TO

16  RESPOND TO IT, YOUR HONOR.

17  JUDGE INFANTE:  THANK YOU.

18  MR. KENNEDY:  YOUR HONOR, RAOUL KENNEDY.

19       IN DISCOVERY, IT HAS HAZING -- THERE IS A

20  12-WORD ANSWER IN MR. BRYANT'S DEPOSITION THAT HE

21  DID SORT OF A TRY-OUT KIND OF PROJECT FOR THEM.

22  WE'VE SAID THAT WASN'T OUR UNDERSTANDING.

23       MATTEL HAS ITS ARGUMENT THAT THERE IS A

24  DIFFERENCE IN UNDERSTANDING AS TO WHAT THESE TWO

25  PARTIES WANT.  AND THEY'RE TRYING TO USE THAT NOW

0                                               68

1   TO GET US TO SPIN OUR WHEELS, TO GO TRY TO TRACK

2   DOWN EVERY OCCASION, GOING BACK TO WHATEVER IT IS,

3   1995, WHEN ANYBODY AT MGA EVER DISCUSSED WITH A

4   PROSPECTIVE APPLICANT, WHETHER WE EVER CAME TO HIRE

5   THAT PERSON OR NOT, DOING ANY KIND OF PROVISIONAL

6   OR EXPERIMENTAL WORK OF ANY KIND, HOWEVER CASUAL.

7   NEEDLESS TO SAY, THERE IS NO FILE DOWN AT MGA

8   LABELED "TEST PROJECTS RESULTS."

9       NOW, ON THE BURDEN BENEFIT ANALYSIS -- I

Page 61

Exhibit 18 ,
P. 111

03-10-08 Infante Hearing Transcript.txt

10    MEAN, THIS ONE IS JUST SO FAR OUT.   UNLESS YOUR

11    HONOR HAS QUESTIONS, I'M PREPARED TO SUBMIT ON THE

12    PAPERS.

13        MR. QUINTO:   YOUR HONOR, I THINK MR. KENNEDY

14    MISSPOKE.   HE SAID THAT MATTEL WAS SEEKING

15    INFORMATION GOING BACK TO 1995.   OF COURSE THAT'S

16    NOT TRUE.   YOUR HONOR LIMITED MATTEL TO SEEKING

17    INFORMATION GOING BACK TO 1998.   AND THAT'S WHAT

18    THE SUPPLEMENTAL INTERROGATORY SEEKS.

19        MR. KENNEDY:   I STAND CORRECTED, YOUR HONOR.

20    IT'S ONLY A DECADE OF WORK THAT WOULD BE INVOLVED,

21    NOT 13 YEARS.

22        MR. QUINTO:   IT'S ACTUALLY SEVEN YEARS.

23        JUDGE INFANTE:   I'VE CONSIDERED THE MOTION.

24    THE MOTION IS DENIED, UNDER RULE 26(B)(2).   I WILL

25    ISSUE AN ORDER TODAY.

0                                                    69


1          WE HAVE A MOTION NOW BY MGA, WITH RESPECT

2    TO COMPELLING THE DEPOSITION TESTIMONY OF MATTHEW

3    BOUSQUETTE, AND THE DEPOSITION OF TINA PATEL.

4          YOU MAY PROCEED.

5        MR. KENNEDY:   THANK YOU, YOUR HONOR.   RAOUL

6    KENNEDY, AGAIN.

7          QUITE A BIT HAPPENED WITH REGARD TO THIS

8    MOTION ON FRIDAY.   I ANTICIPATE THIS IS ONE YOUR

9    HONOR MAY WANT TO TAKE UNDER SUBMISSION, BECAUSE

10   YOU WERE HIT WITH A LOT OF PAPER.   AND LET ME TAKE

11   JUST A BIT LONGER THAN I MIGHT ORDINARILY TO PUT

12   THINGS IN CONTEXT.

Page 62

Exhibit 18,
P. 112

03-10-08 Infante Hearing Transcript.txt

13    MR. BOUSQUETTE HAS BEEN UNDER SUBPOENA

14    SINCE BACK IN NOVEMBER OF 2006.  MATTEL, THROUGH

15    QUINN, OBJECTED TO THAT SUBPOENA, SOLELY ON THE

16    BASIS THERE HADN'T BEEN A SUFFICIENT RULE 26(A)

17    DISCLOSURE.  YOUR HONOR RULED THAT THE DEPOSITION

18    OUGHT TO BE DEFERRED UNTIL THERE HAD BEEN

19    SUBSTANTIAL OR COMPLETE DOCUMENT PRODUCTION, AS TO

20    MR. BOUSQUETTE.  BUT WE WENT AHEAD NEGOTIATED, GOT

21    DATES FOR HIS DEPOSITION, AND THEN THAT WAS

22    SUMMARILY CANCELED BY MATTEL ON THE BASIS OF

23    RELEVANCY TO PHASE I DISCOVERY.

24         WE WENT IN ON AN EX PARTE BEFORE JUDGE

25    LARSON, WHOSE OPPOSITION WAS, "YOU'RE IN THE WRONG

0                                                      70

1     COURTHOUSE, GENTLEMEN.  THIS IS SOMETHING THAT

2     BELONGS IN FRONT OF THE DISCOVERY MASTER IN THIS

3     CASE."  JUDGE LARSON AGREED, AND WE SOUGHT LEAVE TO

4     HAVE YOUR HONOR HEAR IT.

5          AGAINST THAT BACKGROUND, ON FRIDAY, WE

6     GOT OPPOSITION FROM MATTEL THAT SAYS, WE'RE STILL

7     IN THE WRONG COURTHOUSE.  THIS MATTER REALLY

8     BELONGS IN THE NORTHERN DISTRICT OF ILLINOIS.  AND

9     YOUR HONOR IS WITHOUT JURISDICTION OVER THE MATTER,

10    AND ONCE MORE, MATTEL AND QUINN HAVE NO AUTHORITY

11    TO SPEAK FOR MR. BOUSQUETTE.  HE HAS HIS OWN

12    LAWYER.

13         AND THEN LATER ON FRIDAY, SOMEBODY NAMED

14    CALDWELL FILED A DECLARATION SAYING, "SINCE 2005,

15    I'VE BEEN MR. BOUSQUETTE'S ATTORNEY, AND NOBODY HAS

Page 63

Exhibit 18 ,
P. 113

03-10-08 Infante Hearing Transcript.txt

16    NEGOTIATED WITH ME, OR GIVEN MY PERMISSION TO HAVE

17    HIM APPEAR FOR DEPOSITION."

18         AGAINST THAT BACKGROUND, WE THEN FILED A

19    SUPPLEMENTAL DECLARATION REAFFIRMING WHAT WE

20    THOUGHT HAD BEEN SOME FAIRLY SETTLED EVENTS.

21         AGAINST THAT, WE OBVIOUSLY SUBMIT THAT

22    THERE'S BEEN A BIT OF TARDINESS HERE IN DISCOVERING

23    THAT MR. BOUSQUETTE REALLY ISN'T SUBJECT TO THE

24    JURISDICTION OF THE COURT, AND REALLY IS

25    REPRESENTED BY SOMEBODY ELSE.

0                                                        71


1          WE'D REQUEST THAT THE MOTION BE GRANTED;

2     THAT HE BE ORDERED TO APPEAR FOR DEPOSITION.

3     ALTERNATIVELY, AT MINIMUM, WE REQUEST THAT WE BE

4     GIVEN DISPENSATION FROM THE JANUARY 28TH DISCOVERY

5     CUTOFF DATE AND GIVEN A REASONABLE OPPORTUNITY TO

6     GO INTO THE NORTHERN DISTRICT OF ILLINOIS AND

7     APPARENTLY TO BATTLE WITH MR. CALDWELL OVER GETTING

8     A SUBPOENA FOR HIM.

9          AS FAR AS THE SUBSTITUTE RELEVANCY -- WE

10    HAVE TWO DEPOSITIONS HERE, BOTH OF MR. BOUSQUETTE

11    AND PATEL.  AND JUST SUMMARIZING VERY BRIEFLY, EVEN

12    THOUGH MR. BOUSQUETTE MAY NOT HAVE BEEN AROUND IN

13    2000 AND 2001, HE WAS THE CHAIR OR LEADER OF THE

14    MATTEL COMMITTEE, WHICH IN 2004 RADICALLY AMENDED

15    THE EMPLOYEE AGREEMENTS TO SUBSTANTIALLY INCREASE

16    WHAT THEY COVERED OVER WHAT THEY COVERED AT THE

17    TIME MR. BRYANT WAS THERE.  PLUS YOU HAVE YOUR

18    SUBSEQUENT REPAIRS CASE, WHY DID YOU CHANGE THOSE

Page 64

Exhibit 18 ,
P. 114

03-10-08 Infante Hearing Transcript.txt

19   WORDS, AND WHAT WAS THE PURPOSE FOR IT?

20          AND THEN MS. PATEL IS ACTUALLY A FORMER

21   MGA EMPLOYEE, WHO HAS ENORMOUS KNOWLEDGE CONCERNING

22   WHAT IT TAKES FOR A SUCCESSFUL PRODUCT AND HAS

23   WORKED AT BOTH MGA AND MATTEL, CLEARLY PHASE I

24   ISSUES.

25          THERE IS A LOT THERE AND A LOT HAS

0                                                          72

1   HAPPENED RECENTLY.  IF YOUR HONOR HAS ANY

2   QUESTIONS, PLEASE LET ME KNOW.

3       JUDGE INFANTE:  GO AHEAD.  YES.

4     MR. COREY:  YOUR HONOR, THIS IS JON COREY.

5          THERE WAS SOME PAPER THAT WAS SUBMITTED

6   TO THE DISCOVERY MASTER ON -- ON FRIDAY.  AND I

7   DON'T KNOW IF THE DISCOVERY MASTER HAS HAD AN

8   OPPORTUNITY TO LOOK AT THAT OR NOT.

9          BUT YOU'LL FIND TWO THINGS CONSPICUOUSLY

10  ABSENT FROM ANY OF THIS:  NUMBER ONE IS A PROOF OF

11  SERVICE OF A DEPOSITION FOR MR. BOUSQUETTE FROM THE

12  NORTHERN DISTRICT OF ILLINOIS, WHERE HE NOW

13  RESIDES, AND WHERE HE HAS RESIDED FOR QUITE A

14  WHILE; AND NOR WILL YOU FIND ANY -- EITHER REQUESTS

15  OR RESPONSE, ON BEHALF OF QUINN EMANUEL, SUGGESTING

16  THAT WE WERE -- THAT MY FIRM WAS ENTITLED -- OR

17  AUTHORIZED TO ACCEPT SERVICE OF A SUBPOENA ON

18  BEHALF OF MR. BOUSQUETTE.

19          AND WE'VE PUT IN OUR PAPERS, AND WE'VE

20  MADE THIS VERY CLEAR REPEATEDLY TO COUNSEL FOR MGA,

21  BOTH CURRENT COUNSEL AND PRIOR COUNSEL, IF THEY

Page 65

Exhibit 18 ,
P. 115

03-10-08 Infante Hearing Transcript.txt

22   WANTED TO SERVE A DEPOSITION SUBPOENA ON A FORMER

23   EXECUTIVE, THEY WOULD ASK AND -- THEY WOULD ASK US

24   AND WE WOULD FIND OUT IF WE WERE ABLE TO DO THAT.

25          NO SUCH REQUEST WAS EVER MADE WITH

0                                                73

1   RESPECT TO MR. BOUSQUETTE.  AND I THINK THAT,

2   REALLY, WITH RESPECT TO MR. BOUSQUETTE IS AS FAR AS

3   THE DISCOVERY MASTER NEEDS TO GO ON THIS PARTICULAR

4   MOTION.

5          IF THERE IS AN ISSUE -- IF MGA CAN SHOW

6   THAT THE DEPOSITION SUBPOENA WAS PROPERLY SERVED,

7   THEY CAN TAKE THAT IN FRONT OF A MAGISTRATE JUDGE

8   IN THE NORTHERN DISTRICT OF ILLINOIS AND CAN COMPEL

9   IT THERE.

10          IT'S NOT AN ISSUE FOR -- IT'S NOT AN

11   ISSUE THAT EITHER JUDGE LARSON OR YOUR HONOR HAS

12   THE JURISDICTION TO RULE UPON.

13          WITH RESPECT TO THE SUBJECT MATTER -- OR

14   THE ISSUES REGARDING WHETHER MR. BOUSQUETTE AND

15   MS. PATEL FALL WITHIN THE SCOPE OF PHASE I OR

16   PHASE II, WE'VE IDENTIFIED IN -- ON PAGES 6 AND 7

17   OF OUR BRIEF, EXACTLY WHAT MGA THOUGHT, AS OF A

18   COUPLE MONTHS AGO, WHAT INFORMATION MS. PATEL AND

19   MR. BOUSQUETTE HAD.

20          IT'S EXCLUSIVELY RELATED TO PHASE II.  IT

21   RELATES SPECIFICALLY TO THE UNFAIR COMPETITION AND

22   UNCLEAN HANDS CLAIM -- UNCLEAN HANDS DEFENSE.  AND

23   THE UNCLEAN HANDS DEFENSE, I BELIEVE THE DISCOVERY

24   MASTER IS AWARE MGA HAS WITHDRAWN THAT, WITH

Page 66

Exhibit 18
P. 116

03-10-08 Infante Hearing Transcript.txt
25    RESPECT TO ALL OF THE PHASE I CLAIMS THAT MATTEL IS

0                                                                    74

1    ASSERTING.

2              AND SO WHAT WE HAVE IS, MGA HAVING

3    SUCCESSFULLY PERSUADED THE -- JUDGE LARSON TO STAY

4    PHASE II DISCOVERY, NOW IS LOOKING FOR WIGGLE ROOM

5    TO TRY TO GET THEMSELVES OUT FROM THE BOX THAT THEY

6    PUT THEMSELVES IN WITH RESPECT TO THESE TWO

7    WITNESSES.

8              WITH RESPECT TO MS. PATEL, PARTICULARLY,

9    THEY IDENTIFY -- MGA IDENTIFIES ONLY ONE DOCUMENT

10   THAT THEY THINK IS -- THAT THEY WOULD LIKE TO ASK

11   HER QUESTIONS ABOUT.  THAT DOCUMENT WAS CREATED

12   FOUR YEARS AFTER CARTER BRYANT LEFT MATTEL, AND

13   RELATES TO MATTEL'S COMPETITIVE RESPONSE TO BRATZ,

14   WHICH COULD NOT BE MORE CLEARLY A PHASE II ISSUE.

15             WITH RESPECT TO MR. BOUSQUETTE, THE SAME

16   THING, THEY -- THEY -- THEY'RE -- MGA IS NIBBLING

17   AROUND THE MARGINS LOOKING FOR AN EXCEPTION TO TRY

18   TO GET HIS -- HIS DEPOSITION TO FALL WITHIN

19   PHASE I.

20             IT REALLY IS AN EXERCISE IN OVERREACHING,

21   BECAUSE IF YOU LOOK AT THE BRIEFS, YOU'LL SEE THAT

22   WITH RESPECT TO MR. BOUSQUETTE, HE HAD NOTHING TO

23   DO WITH THE CREATION OF BRATZ, WITH -- WITH -- OR

24   WITH CARTER BRYANT'S EMPLOYMENT AT MATTEL.  HE

25   WORKED IN COMPLETELY DIFFERENT DIVISION, THE BOYS

0                                                                    75

Page 67

Exhibit 18
P. 117

03-10-08 Infante Hearing Transcript.txt

1    DIVISION AT THAT TIME.

2            UNLESS THE COURT HAS ANY QUESTIONS, I'LL

3    SUBMIT.

4      MR. KENNEDY:  YOUR HONOR, RAOUL KENNEDY.  IF I

5    CAN RESPOND TO THAT BRIEFLY.

6            AGAIN, I THINK YOUR HONOR MAY WANT TO

7    TAKE A LOOK AT THE PAPERS, GIVEN THE ENORMITY OF

8    WHAT'S HAPPENED HERE.  WE'VE BEEN NEGOTIATING SINCE

9    NOVEMBER OF 2006 FOR A DEPO DATE FOR THIS GUY.

10           WE WERE IN FRONT OF JUDGE LARSON ON

11   FEBRUARY 25, NOT A WORD ABOUT THE NORTHERN DISTRICT

12   OF ILLINOIS, OR THAT QUINN LACKED AUTHORITY OR

13   ANYTHING ELSE TO THE CONTRARY.  IT WAS, NO, NO,

14   YOU'VE GOT TO GET THIS IN FRONT OF JUDGE INFANTE.

15   AND AGAIN, IT'S IN ALL THE PAPERS THAT CAME UP.

16           AND WITH REGARD TO THAT FEBRUARY 25TH

17   HEARING IN FRONT OF JUDGE LARSON, THE TRANSCRIPT IS

18   APPENDED TO THE SECOND SUPPLEMENTAL ROB HARRINGTON

19   DECLARATION IN THIS CASE.  IT'S EXHIBIT 2.  AND

20   PAGES 8 AND 9 OF THAT -- OF THAT EXHIBIT FROM THE

21   TRANSCRIPT, JUDGE LARSON LOOKS AT THE NOTICE AND

22   SAYS, THERE ARE ISSUES HERE THAT PERTAIN TO

23   PHASE II, BUT THERE ARE ALSO ISSUES THAT PERTAIN TO

24   PHASE I.

25           SO IF THERE'S ANY DOUBT AS TO WHETHER

                                                    76

0

1    MR. BOUSQUETTE DOES OR DOESN'T COME IN, I URGE THE

2    COURT TO PLEASE LOOK TO JUDGE LARSON FOR GUIDANCE

                         Page 68

Exhibit 18 ,
P. 118

ANTSEGMENT

03-10-08 Infante Hearing Transcript.txt

3  AT THAT PARTICULAR SECTION.

4        OTHER THAN THAT, WE TOO ARE PREPARED TO

5  SUBMIT, YOUR HONOR.

6    JUDGE INFANTE:  OKAY.  THANK YOU.

7        WITH RESPECT TO TINA PATEL, THE MOTION IS

8  GRANTED.  HER TESTIMONY MAY BE RELEVANT AS TO BOTH

9  PHASE I AND PHASE II, BUT THE DEPOSITION MAY

10  PROCEED.

11        WITH RESPECT TO MR. BOUSQUETTE, I DO NOT

12  BELIEVE THAT THE COURT OR THE SPECIAL MASTER IN

13  THIS CENTRAL DISTRICT OF CALIFORNIA HAS

14  JURISDICTION.  UNDER RULE 45, I BELIEVE YOU WOULD

15  NEED TO PROCEED IN THE DISTRICT IN WHICH

16  MR. BOUSQUETTE LIVES.

17        I WILL GRANT YOU AN ORDER ALLOWING YOU TO

18  PROCEED IN PURSUING MR. BOUSQUETTE'S DEPOSITION.

19  ON THE DISCOVERY CUTOFF DATE OF JANUARY, I FEEL

20  YOU'VE SHOWN GOOD CAUSE, GIVEN THE FACT THAT YOU'VE

21  BEEN -- WERE MISLED AS TO WHO REPRESENTED

22  MR. BOUSQUETTE.

23        AND FOR ALL THOSE REASONS THAT YOU HAVE

24  STATED IN YOUR PAPERS AND TODAY, YOU ARE GRANTED

25  RELIEF, WITH RESPECT TO THE DISCOVERY CUTOFF DATE

0                                              77

1  AS TO MR. BOUSQUETTE.

2        I TAKE NO FURTHER ACTION, THOUGH, WITH

3  RESPECT TO YOUR MOTION TO COMPEL BOUSQUETTE.

4        YOU MAY PREPARE THAT ORDER, MR. KENNEDY.

5    MR. KENNEDY:  YES, YOUR HONOR.  WE'LL DO SO.
Page 69

Exhibit 18,
P. 119

03-10-08 Infante Hearing Transcript.txt

6      THANK YOU VERY MUCH.

7          JUDGE INFANTE:  ALL RIGHT.  THAT BRINGS US TO

8      MATTEL'S MOTION TO COMPEL DOCUMENTS ONLY PORTIONS

9      OF WHICH ARE ALLEGEDLY PRIVILEGED.

10             YOU MAY PROCEED.

11         MR. OLIVAR:  YES, YOUR HONOR.  HARRY OLIVAR,

12     FOR MATTEL.

13             THIS MOTION HAS SOME COMMONALITY WITH THE

14     OTHER TWO, SO SOME OF WHAT I SAY MAY HAVE TO DO

15     WITH THOSE MOTIONS ALSO.

16             WE HAVE BEEN RECEIVING -- I BELIEVE THAT

17     MGA WAS ORDERED TO PRODUCE ALL PRIVILEGE LOGS BY

18     THE END OF JULY 2007, AND YET WE'VE BEEN RECEIVING

19     VOLUMINOUS PRIVILEGE LOGS COMING IN, IN AUGUST,

20     SEPTEMBER, NOVEMBER, JANUARY 15TH, JANUARY 23RD,

21     JANUARY 28TH, JANUARY 30TH, AND NOW WE'VE EVEN GOT

22     ONE MARCH 7TH, WHICH CAME IN AT 7:00 P.M., ON

23     FRIDAY.

24             IT'S CLEAR FROM THESE LOGS -- I MEAN, BY

25     THE TIME -- BY AUGUST 2007, THERE HAVE BEEN

0                                                          78

1      SOMETHING LIKE 100 DOCUMENTS CLAIMED TO BE

2      PRIVILEGED.  NOW IT'S AT 10,000, AND WE'VE SEEN IN

3      MGA'S STATEMENTS ABOUT HOW THE CONTRACT LAWYERS ARE

4      SCRAMBLING TO GET THESE THINGS DONE.  A FEW OF THE

5      LOGS ARE VERY POOR QUALITY.  AND YOU CAN SEE THAT

6      EVEN FROM MGA'S PAPERS, WHERE THEY ARE CONSTANTLY

7      REPRESENTING THAT THEY'RE REVIEWING THINGS AND

8      CHANGING THINGS AND PRODUCING HUNDREDS OF DOCUMENTS
                          Page 70

Exhibit 18 ,
P. 120

03-10-08 Infante Hearing Transcript.txt

9    THAT THEY PREVIOUSLY CLAIMED WERE PRIVILEGED.

10         WE'VE QUESTIONED ABOUT 1,200 SPECIFIC

11   ENTRIES IN THESE MOTIONS. AND SOME OF THEM WE

12   WEREN'T ABLE TO RAISE UNTIL WE GOT THE LOGS, AND

13   THOSE WERE THE ONES COMING IN DAYS BEFORE AND DAYS

14   AFTER THE DISCOVERY CUTOFF. BUT WE HAVE MADE -- WE

15   HAVE RAISED LEGITIMATE QUESTIONS AS TO WHETHER

16   1,200 CLAIMS OF PRIVILEGE OR SO ARE FAIRLY CLAIMED.

17         AND THEY FALL INTO THE THREE CATEGORIES

18   OF DOCUMENTS WHERE WE THINK MAYBE ONLY A PORTION IS

19   PRIVILEGED BASED ON THE -- ON THE LOG. THE LOG

20   CERTAINLY DOESN'T SUPPORT THAT THE ENTIRE DOCUMENT

21   IS PRIVILEGED, WE'VE LISTED THOSE; THE TRADEMARK

22   SEARCHES; AND THE THIRD-PARTY COMMUNICATIONS.

23         YOUR HONOR HAS SOME EXTENSIVE DISCUSSION

24   OF THE ISSUES IN THE PAPERS, AND UNLESS THERE ARE

25   ANY QUESTIONS, I'D BE PLEASED TO SUBMIT ON THE

0                                                        79

1    PAPERS.

2        JUDGE INFANTE: OKAY. THANK YOU, VERY MUCH.

3        MR. ALLEN: YOUR HONOR, JOSE ALLEN, ON BEHALF

4    OF ISAAC LARIAN AND MGA.

5          YOUR HONOR, WE COVERED QUITE EXTENSIVELY

6    IN THE PAPERS THE BACKGROUND RELATING TO THE

7    VARIOUS LOGS, SO I'M NOT GOING TO SPEND A LOT OF

8    TIME GOING THROUGH THAT.

9          I WOULD LIKE TO MENTION VERY BRIEFLY,

10   THOUGH, THAT THERE ARE REALLY THREE DIFFERENT SETS

11   OF LOGS THAT WE ARE INVOLVED WITH HERE. ALL OF
                Page 71

Exhibit 18 ,
P. 121

03-10-08 Infante Hearing Transcript.txt

12   THEM RAISE DIFFERENT KINDS OF ISSUES.

13        THERE'S WHAT WE REFER TO AS THE AUGUST

14   AND SEPTEMBER 2007 LOGS.  THESE WERE LOGS THAT WERE

15   PREPARED BY MGA'S PRIOR COUNSEL.  AND IN DECEMBER

16   OF 2007, AFTER MATTEL HAD HAD THOSE LOGS FOR QUITE

17   SOME PERIOD OF TIME, THEY CAME TO US AND SAID, WE

18   THINK THERE IS A PROBLEM IN THE WAY THESE LOGS WERE

19   PREPARED; MAINLY, THOSE LOGS FAIL SEPARATELY TO

20   LIST ATTACHMENTS TO DOCUMENTS, AND WE THINK THAT

21   THE DOCUMENTS NEED TO BE SEPARATELY LISTED.  AND WE

22   WANT YOU -- WE WANT YOU TO DO THAT.

23        TO SHORT-CIRCUIT THE PROCESS AND TO TRY

24   TO AVOID A BACK AND FORTH OVER WHO SAID WHAT, OVER

25   HOW THE LOGS HAVE BEEN PREPARED, WE AGREED, YOUR

0                                                        80

1   HONOR, TO GO BACK AND LOOK AT THE AUGUST AND

2   SEPTEMBER LOGS, WHICH HAD LIKE 4,000 DOCUMENTS ON

3   THEM, AND ADVISE THE QUINN'S FIRM THAT MGA WOULD

4   ISSUE REVISED LOGS FOR AUGUST AND SEPTEMBER 2007

5   THAT SEPARATELY LISTED OUT THE ATTACHMENTS TO THE

6   TOP LEVEL DOCUMENT, WHERE WE BELIEVE THAT THE

7   ATTACHMENT WAS ALSO PRIVILEGED.

8        AND WE HAVE BEEN ENGAGED IN THAT EFFORT.

9   AND PURSUANT TO MATTEL'S REQUEST, WE HAVE PROVIDED

10   THOSE REVISED LOGS TO THEM ON A ROLLING BASIS.

11   MOST RECENTLY, WE GAVE THEM A REVISED INSTALLMENT,

12   ON FRIDAY.  WE'VE GIVEN THEM AN INSTALLMENT PRIOR

13   TO THAT.  WE EXPECT TO BE DONE WITH BOTH THE AUGUST

14   AND SEPTEMBER 2000 [SIC] REVISED LOGS BY THE END OF

Page 72

Exhibit 18 ,
P. 122

03-10-08 Infante Hearing Transcript.txt

15   THIS WEEK.

16          SO THAT DEALS WITH THE AUGUST LOGS, WHICH

17   HAVE BEEN AGREED UPON TO BE REVISED; THEY HAVE BEEN

18   PROVIDED, AND ARE IN THE PROCESS OF BEING PROVIDED

19   TO QUINN.

20          AND IT SEEMS THAT ISSUE REALLY WITH

21   RESPECT TO THE AUGUST AND SEPTEMBER LOGS, IN TERMS

22   OF WHAT'S LEFT NOW, IS WHETHER MATTEL SHOULD BE

23   ALLOWED TO FILE A MOTION TO COMPEL WITH RESPECT TO

24   ANY ENTRIES THAT APPEAR ON THOSE AUGUST AND

25   SEPTEMBER LOGS.

0                                                            81



1          OUR VIEW IS THAT AT SOME POINT WE NEED TO

2   MOVE OFF THE ISSUE OF THE LOGS.  THESE LOGS ARE NOW

3   THE SUBJECT OF FOUR DIFFERENT MOTIONS TO COMPEL,

4   AND WE JUST NEED TO MOVE FORWARD.

5          LET ME TURN TO THE NEXT CATEGORY OF -- OF

6   LOGS, WHICH ARE THE SO-CALLED NOVEMBER 2007 LOG,

7   AND THEN A SERIES OF LOGS IN JANUARY OF 2008, WHICH

8   WERE THE SUBJECT OF MATTEL'S INITIAL MOTION TO

9   COMPEL, AND THEN A SERIES OF SUBSEQUENT

10   SUPPLEMENTAL MOTIONS.

11          THE NOVEMBER LOG COVERED A PRODUCTION OF

12   DOCUMENTS THAT HAD OCCURRED SOME MONTHS PRIOR.  AND

13   WE ADVISED MATTEL AT THE TIME THAT WE PRODUCED THE

14   NOVEMBER LOG, THAT THE NOVEMBER LOG SIMPLY LISTED

15   DOCUMENTS THAT WE HAD DETERMINED SHOULD BE WITHHELD

16   IN THEIR ENTIRETY, AND WE WOULD SUBMIT A SUBSEQUENT

17   LOG THAT LISTED DOCUMENTS WHICH HAD BEEN PRODUCED

Page 73

Exhibit _18_,
P. _123_

03-10-08 Infante Hearing Transcript.txt

18   IN REDACTED FORM.  WE GAVE THAT NOVEMBER LOG TO

19   MATTEL.

20          WE ALSO, IN JANUARY, PROVIDED TO THEM, A

21   LOG LISTING DOCUMENTS THAT HAD BEEN WITHHELD OR

22   PRODUCED IN REDACTED FORM.  AND AFTER THEY GOT THAT

23   LOG, THEY NOW RAISE NEW QUESTIONS ABOUT THE ENTRY

24   IN THAT LOG, AND IT LOOKED LIKE WE HAD NOT, IN

25   FACT, PRODUCED DOCUMENTS IN REDACTED FORM.

0                                                      82


1          BUT I BELIEVE IF YOUR HONOR REVIEWS THE

2    RECORD AND THE DECLARATIONS YOU'LL SEE THAT, IN

3    FACT, DOCUMENTS HAVE BEEN PRODUCED TO MATTEL IN

4    REDACTED FORM, AS WE HAVE REPRESENTED.

5          FINALLY, THERE'S THE LATER CATEGORY OF

6    JANUARY LOGS THAT RELATE TO PRODUCTIONS ARISING OUT

7    OF ORDERS TO PRODUCE DOCUMENTS BY MR. ISAAC LARIAN,

8    AND HIS INITIAL MGA PRODUCTION.

9          THOSE PRODUCTIONS HAVE OCCURRED; WE'VE

10   PRODUCED THE LOGS ACCOMPANYING THOSE PRODUCTIONS.

11   AND IN THOSE INSTANCES, AGAIN, WE'VE PRODUCED TWO

12   SETS OF LOGS, WITH RESPECT TO EACH PRODUCTION.

13   WE'VE PRODUCED THE LOG THAT HAVE IDENTIFIED

14   DOCUMENTS THAT HAVE BEEN WITHHELD IN THEIR

15   ENTIRETY, AND WE'VE IDENTIFIED -- WE PREPARED A

16   SEPARATE LOG THAT IDENTIFIED DOCUMENTS THAT HAVE

17   BEEN PRODUCED IN REDACTED FORM.

18          SO THE MATTEL SUGGESTION THAT WE HAVE

19   DISCRIMINATELY WITHHELD, ACROSS THE BOARD,

20   DOCUMENTS, ONLY PORTIONS OF WHICH HAVE BEEN

Page 74

Exhibit 18
P. 124

03-10-08 Infante Hearing Transcript.txt

7      MR. COREY:  THANK YOU, YOUR HONOR.

8            (DISCUSSION HELD OFF THE RECORD.)

9      MR. WERDEGAR:  WILL YOU PLEASE PUT IN A REQUEST

10   FOR US TO PLEASE GET A COPY OF TODAY'S TRANSCRIPT.

11      MR. COREY:  OF COURSE.

12      MR. KENNEDY:  RAOUL KENNEDY, SAME REQUEST.

13      MR. COREY:  OF COURSE.

14

15            (WHEREUPON, AT THE HOUR OF

16             9:46 A.M., THE PROCEEDINGS

17                WERE CONCLUDED.)

18                  -oOo-

19

20

21

22

23

24

25

                                                    89

0

1    STATE OF CALIFORNIA      )
                             )  SS.
2    COUNTY OF LOS ANGELES    )

3

4          I,    ANGELA DUPRE   , CERTIFIED

5    SHORTHAND REPORTER, CERTIFICATE NUMBER 7804, FOR

6    THE STATE OF CALIFORNIA, HEREBY CERTIFY:

7          THE PROCEEDINGS WERE RECORDED

8    STENOGRAPHICALLY BY ME AND WERE TRANSCRIBED TO THE

9    BEST OF MY ABILITY;

                    Page 80

Exhibit 18 ,
P. 125

03-10-08 Infante Hearing Transcript.txt

10      THE FOREGOING TRANSCRIPT IS A TRUE AND

11   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

12           I FURTHER CERTIFY THAT I AM NEITHER

13   COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

14   NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

15           IN WITNESS WHEREOF, I HAVE HEREUNTO

16   SUBSCRIBED MY NAME THIS_____DAY OF

17   _____, 2008.

18

19

20

21           _____

22

23

24

25

                                            90

Page 81

Exhibit 18 ,
P. 126

**Exhibit 19**

THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]**<br><br>DECLARATION OF THOMAS J. NOLAN IN SUPPORT OF MGA'S OPPOSITION TO MATTHEW BOUSQUETTE AND MATTEL'S MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER<br><br>Hearing Date:<br>Time:<br>Place: JAMS<br>Two Embarcadero Center,<br>Suite 1500, San Francisco, CA 94111<br><br>**Phase 1**<br>Discovery Cut-off: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

DECLARATION OF THOMAS NOLAN IN SUPPORT OF MGA'S OPPOSITION TO MATTHEW BOUSQUETTE AND
MATTEL'S MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER
Case No. CV 04-9049 SGL (RNBx)

-1-

Exhibit 19,
P. 127

I, Thomas J. Nolan, declare and state as follows:

I am an attorney with Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), counsel of record for MGA Entertainment, Inc. ("MGA"), and Isaac Larian. I am submitting this Declaration in support of MGA's Opposition to Matthew Bousquette and Mattel's Motion to Quash or for a Protective Order.

1.    On March 12, 2008, I had a telephone conversation with Christopher Caldwell during which I asked him to accept service of a subpoena for Mr. Bousquette. Mr. Caldwell stated that he was not authorized to accept service, needed to speak with his client, and would call me back one way or the other. Mr. Caldwell did not call me back.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on April 3, 2008, at Los Angeles, California.

By: _____
       Thomas J. Nolan

DECLARATION OF THOMAS NOLAN IN SUPPORT OF MGA'S OPPOSITION TO MATTHEW BOUSQUETTE AND MATTEL'S MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER
Case No. CV 04-9049 SGL (RNBx)
-2-

501156-Los Angeles Server 1A - MSW

Exhibit 19,
P. 128

**Exhibit 20**

## DECLARATION OF WAYNE SHERMAN

I, Wayne Sherman, declare that I am over 18 years of age and not a party to this action, and if called to testify, I could and would competently do so as to the facts stated herein. I am a licensed Private Investigator in the State of California, and an independent contractor for First Legal Investigations PI 24171. My business address is 18375 Ventura Blvd., #506, Tarzana, CA  91356, with telephone number (213) 305-0485 and I supervised the following efforts:

1.    On March 12, 2008 I received a request by the law firm of Skadden, Arps, Slate, Meagher & Flom LLP to serve two subpoenas, one for deposition and one for trial on Matt Bousquette in a case before the United States District Court-Central District entitled Carter Bryant, an individual vs. Mattel, Inc., a Delaware corporation, And Consolidated Actions with case number CV 04-09049 SGL (RNBx), Consolidated with Case Nos. CV 04-9059 and CV 05-2727.  The last address we were given by our client for the subject was 844 North Mission Road, Palm Springs, CA  92262.

2.    I conducted a preliminary database search based on tax assessor records for the subject to determine whether the 844 North Mission Road address appeared current, and found title to be held under the name Matthew Charles Bousquette since April 13, 1984 with him currently appearing to claim a homeowner's exemption there.  A neighboring residential parcel one lot to the north of his home, at 375 W. Hermosa Place, Palm Springs, CA

Exhibit 20
P. 124

92262 is owned by "MCB Prop" in the database records I viewed, with the mailing address listed for tax assessor purposes c/o Matthew C. Bousquette at the 844 N. Mission Road, Palm Springs, CA 92262.

3.    MCB Prop, and/or MCB Properties LLC own commercial properties in Riverside County as follows: 1090 N. Palm Canyon Drive, Palm Springs, CA 92262; 390 N. Palm Canyon Drive, Palm Springs, CA 92262; and 254 N. Palm Canyon Drive, Palm Springs, CA 92262.  In each case the mailing address is listed for tax assessor purposes at the 844 N. Mission Road, Palm Springs, CA 92262 address.  Two other multi-family residential properties were found in Los Angeles County with title held by MCB Properties LLC as follows:  1160 Hacienda Place, West Hollywood, CA 90069, with Matthew C. Bousquette listed as the previous owner; and 734 N. Edinburgh Avenue, Los Angeles, CA 90046. Both list an address at 8538 Hollywood Blvd., Los Angeles, CA 90069 for tax assessor purposes.

4.    The California Secretary of State lists MCB Properties LLC as an active limited liability company formed May 3, 2000 with Matthew C. Bousquette as Agent for Service of Process at the 844 Mission Road, Palm Springs, CA 92262 address.  The latest update I received shows a filing with the California Secretary of State's office on April 6, 2006 which lists the subject both as Agent and Officer at the 844 N. Mission Rd., Palm Springs, CA 92262 address.

5.    Another database search indicating addresses appearing for the subject for credit reporting purposes shows a most

Exhibit 20,
P. 136

current address at 17900 Von Karman Avenue, Suite 200, Irvine, CA 92614 from February 2003 through February 2008. Additionally, and among other previously reported addresses is the above mentioned 8538 Hollywood Blvd., Los Angeles, CA 90069 address which was listed for the subject from October 1989 through March 2004. Since the year 2000, there were only addresses appearing in: Beverly Hills, CA; Medford, OR; Irvine, CA; Los Angeles, CA; and West Hollywood, CA.

6.    On service attempts at the 844 North Mission Road, Palm Springs, CA 92262 address on March 12, 2008, at least two vehicles were seen there that we later determined through the California Department of Motor Vehicles to be currently registered as follows: vehicle plate 4YCN525, a 2002 Jeep, registered April 10, 2007 and expiring May 26, 2008 with the registered owner listed as Matthew C. Bousquette; and vehicle plate 4UDA469, a 2002 Mercedes Benz, registered July 6, 2007 and expiring August 20, 2008 with the registered owner listed as Matthew Charles Bousquette. Another vehicle seen also on March 12, 2008 and again on March 16, 2008 when the subject was seen driving it and when he was subsequently served, with vehicle plates 5EPD794 was found to be registered September 8, 2007 and expiring September 28, 2008 with MCB Properties being listed as the registered owner.

7.    During the service attempt on March 12, 2008 by Steven Childs, a private investigator I contracted with, he informed me that a female staff member at the home told him that the subject was out of town and that he would be returning the following

Exhibit 20,
P. 131

evening.  On another service attempt the following evening by this same private investigator, he told me that the same female staff member now told him the subject had changed his plans, and would not be returning there for another two weeks.

8.   The subject was served three days later, on March 16, 2008 at 10:02 a.m. by Bradley Blankenship, a registered process server after he determined the subject was actually in town currently, and he observed the subject exiting the residence at 844 North Mission Road, Palm Springs, CA 92262.  The location of service was at IHOP Restaurant at 471 South Indian Canyon Drive, Palm Springs, CA 92262, where the subject was with another adult male and three children.  The adult male with the subject, upon realizing the subject was being served, laughed and said "ah, process server, eh" or words to that effect.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.  Executed on the 2nd day of April 2008, at Los Angeles, California.

Wayne Sherman

Exhibit 20,
P. 132

# Exhibit 21

1    THOMAS J. NOLAN (Bar No. 066992)
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2    300 South Grand Avenue
     Los Angeles, California 90071-3144
3    Telephone: (213) 687-5000
     Facsimile: (213) 687-5600
4    E-mail: tnolan@skadden.com

5
     RAOUL D. KENNEDY (Bar No. 40892)
6    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     4 Embarcadero Center, 38th Floor
7    San Francisco, CA 94111-5974
     Telephone: (415) 984-6400
8    Facsimile: (415) 984-2698
     Email: rkennedy@skadden.com

9

10   Attorneys for Counter-Defendants.
     MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
11   (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14                          EASTERN DIVISION

15   CARTER BRYANT, an individual        )   CASE NO. CV 04-9049 SGL (RNBx)
                                         )
16                  Plaintiff,           )   Consolidated with Case No. 04-9059
                                         )   and Case No. 05-2727
17         v.                            )
                                         )   AMENDED NOTICE OF
18   MATTEL, INC., a Delaware            )   DEPOSITION AND SERVICE OF
     corporation                         )   SUBPOENA TO MATT
19                                       )   BOUSQUETTE
                                         )
20                  Defendant.           )
                                         )
21                                       )
                                         )
22                                       )
                                         )
23                                       )
                                         )
24                                       )
                                         )
25   Consolidated with MATTEL, INC. v.   )
     BRYANT and MGA                      )
26   ENTERTAINMENT, INC. v.              )
     MATTEL, INC.                        )
27                                       )

28

Exhibit 21 ,
P. 133

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, MGA Entertainment, Inc., by its attorneys, Skadden, Arps, Slate, Meagher & Flom, LLP, will take the deposition of Matt Bousquette. The depositions will take place on oral examination before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Saturdays, Sundays and legal holidays excepted until completed.

PLEASE TAKE FURTHER NOTICE that the examination of **Matt Bousquette** will commence at 10:00 a.m. on March 28, 2008 at the Hyatt Regency Suites, 285 N. Palm Canyon Drive, Palm Springs, CA 92262, or at such other places and on such other dates as agreed upon by counsel for all interested parties.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the depositions will be videotaped. MGA also reserves the right to use Livenote or other technology for real-time transcription of the testimony.

DATED: March 17, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
Robert J. Herrington
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.

2

Exhibit 21,
P. 134

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

CENTRAL    DISTRICT OF    CALIFORNIA

CARTER BRYANT, an individual, Plaintiff,

v.

MATTEL, INC., a Delaware corporation, Defendant

AND CONSOLIDATED ACTIONS

TO:

MATT BOUSQUETTE - 844 North Mission Road, Palm Springs, CA 92262

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] CV 04-09049 SGL (RNBx)
Consolidated with Case Nos. CV 04-9059 and
CV 05-2727

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.   The deposition will be recorded by videotape and stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Hyatt Regency Suites, 285 N. Palm Canyon Drive, Palm Springs, CA 92262 | March 28, 2008 - 10:00 AM |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Atty for Counter Defendant MGA Ent. et al. | March 11, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Robert Herrington, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Los Angeles, CA 90071-3144 (213) 687-5000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit 21,
P. 135

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
           DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it:

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit 21
P. 136

Mar 17 08 12:05p    First Legal Investigation                     (714)550-1374           p.3

| *Attorney or Party without Attorney:*<br>ROBERT J. HERRINGTON, ESQ., Bar #234417<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>300 SOUTH GRAND AVENUE<br>SUITE 3400<br>LOS ANGELES, CA 90071<br>*Telephone No:* 213-687-5000    *FAX No.:* 213-687-5600 | *For Court Use Only* |
|---|---|
| *Attorney for:* Defendant | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>United States District Court, Central District Of California | |

*Ref. No. or File No.:*

*Plaintiff:* CARTER BRYANT, ETC.
*Defendant:* MATTEL, INC., ETC.

| PROOF OF SERVICE<br>SUBPOENA IN A CIVIL | *Hearing Date:*<br>Fri, Mar. 28, 2008 | *Time:*<br>10:00AM | *Dept/Div:* | *Case Number:*<br>CV04-09049 SGL (RNBX) |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUBPOENA IN A CIVIL CASE

3. *a. Party served:*                              MATT BOUSQUETTE

4. *Address where the party was served:*      471 S. INDIAN CANYON DRIVE
                                               SERVED AT IHOP
                                               PALM SPRINGS, CA 92262

5. *I served the party:*
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Sun., Mar. 16, 2008 (2) at: 10:02AM
   b. I received this subpena for service on:    Friday, March 14, 2008

6. *Witness fees were offered or demanded, and paid:*      $45.00

7. *Person Who Served Papers:*                              Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. Brad  Blankenship                         d. *The Fee for Service was:*
   b. FIRST LEGAL INVESTIGATIONS               e. I am: (3) registered California process server
      301 Civic Center Drive West                  (i)  Independent Contractor
      SANTA ANA, CA 92702                          (ii) Registration No.:    4052
   c. (714) 550-1375                               (iii) County:            Los Angeles

8. *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States Of America that the foregoing is true and correct.*
   Date: Mon, Mar. 17, 2008

Rule 982.9.(a)&(b) Rev January 1, 2007    *Judicial Council Form*    PROOF OF SERVICE<br>SUBPOENA IN A CIVIL           (Brad Blankenship)    216361.robher.179869

Exhibit 21,
P. 137

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On **March 17, 2008**, I served the foregoing document described as:

### AMENDED NOTICE OF DEPOSITION AND SERVICE OF SUBPOENA TO MATT BOUSQUETTE

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

[X]   **(BY PERSONAL SERVICE)** ☐       By personally delivering copies to the person served. (FEDERAL) (As Noted.)

                                [X]   I caused such documents to be hand delivered to the office of the addressee. (FEDERAL) (As Noted.)

[X]   **(BY FEDERAL EXPRESS)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with Federal Express and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. (As Noted.)

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on **March 17, 2008** at Los Angeles, California.

Cecilia Reyes
PRINT NAME                          SIGNATURE

1

PROOF OF SERVICE                                    NO. CV 04-9049 SGL (RNBx)

Exhibit 21,
P. 138

SERVICE LIST

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

Attorneys for Mattel, Inc.
[Personal Service]

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (Fax)

Attorneys for Carter Bryant
[Federal Express]

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David C. Scheper, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
(213) 613-4655
(213) 613-4656 (Fax)

Attorneys for Carlos Gustavo Machado Gomez
[Federal Express]

PROOF OF SERVICE

2

NO. CV 04-9049 SGL (RNBx)

Exhibit 21,
P. 139

# Exhibit 22

HOME   HELP CENTER   SITE MAP   EN ESPAÑOL                    SEARCH



**E-Services | Forms | FAQs | About Us**

## Frequently Asked Questions - Exemptions And In-Lieu Fees

1. What is the homeowners' exemption?
2. Are there any property tax exemptions for veterans?
3. Is a vehicle subject to registration, but in a non-operating condition, subject to assessment?

Back to Top of Page

### 1. What is the homeowners' exemption?

The California Constitution provides a $7,000 reduction in the taxable value for a qualifying owner-occupied home. The home must have been the principal place of residence of the owner on the lien date, January 1st. To claim the exemption the homeowner must make a timely filing of a simple form with the county assessor. A partial 80% exemption may be granted for homeowners who file a late affidavit and claim for exemption with the assessor between February 16th and December 10th.

Homeowners' exemption claimants are responsible for notifying the assessor when they are no longer eligible for the exemption. December 10th is the last day to terminate the homeowners' exemption without penalty; the assessor should receive notice of ineligibility by that date.

Back to Top of Page

### 2. Are there any property tax exemptions for veterans?

There are exemptions for veterans, both in the State Constitution and in the statutes enacted by the Legislature. The Constitution provides an exemption, currently a $4,000 exemption, for most honorably discharged veterans or, in some cases, the spouse or parent of a deceased honorably discharged veteran. However, a person who owns property valued at $5,000 or more ($10,000 or more for a married person and his or her spouse) is ineligible for this exemption. Also, the same dwelling may not receive both the homeowners' exemption and the veterans' exemption.

Pursuant to the Constitution also, the Legislature has provided exemptions (in amounts ranging from $100,000 to $150,000 effective January 1, 2001) for the home of a disabled veteran or a disabled veteran's spouse, if the veteran, because of an injury incurred in military service, is blind in both eyes, has lost the use of two or more limbs, or is totally disabled. An unmarried surviving spouse may also be eligible if the service person died as the result of a service-connected injury or disease while on active duty in the military. As above, the home may not receive the exemption if it is receiving another real property exemption.

Please note that issues regarding these exemptions are complex, and the authorizations are specific; the assessor's office should be consulted for detailed requirements regarding these exemptions.

Back to Top of Page

### 3. Is a vehicle subject to registration, but in a non-operating condition, subject to assessment?

**Programs**
Assessment Practices Survey
Private Railroad Car Tax
State-Assessed Property
Tax Area Services
Timber Yield Tax
Training
Legal Entity Ownership Program
Welfare & Veterans' Organization Exemptions

**Quick Links**
Assessors' Handbook
Frequently Asked Questions
Letters To Assessors
Listing of County Assessors
Property Tax Committee Projects
Propositions 60/90
Proposition 110
Propositions 58/193
Valuation Factor Studies

**Other Useful Links**
Contact Us
Homeowner/Renter Assistance
Legislation
Property Tax Postponement
Taxpayers' Rights Advocate

Last modified: 10/05/06

Exhibit 22
P. 140

Frequently Asked Questions - Exemptions And In-Lieu Fees - Board of Equalization

No. A vehicle subject to registration under the Vehicle Code is exempt from all taxes according to value other than vehicle license fees, whether or not that vehicle is registered. So, although a taxpayer may obtain a Certificate of Planned Non-Operation from the California Department of Motor Vehicles for a relatively small fee, the vehicle is still of a type subject to registration under the Vehicle Code and is, therefore, not subject to assessment.

Disclaimer | Privacy Notice | Report Problems with Web Site    | ADA Policy    | Conditions of Use    | Privacy Policy

© 2006 State of California

http://www.boe.ca.gov/proptaxes/faqs/exmpinlieufees.htm

4/2/2008

Exhibit 22,
P. 141

**505.0000 HOMEOWNERS' EXEMPTION**
*See Mobilehome*

505.0001 **Claims.**

1.  An unsigned exemption claim may not be allowed.

2.  The exemption may be denied to any owner-occupant refusing to disclose his social security number on the exemption claim. LTA 3/23/82 (No. 82/50).

505.0002 **Claims.**

1.  If a husband and wife occupy a home that is wholly owned by either spouse, the social security numbers of both must be listed on the claim form, but only the owner may sign the claim.

2.  If two or more related or unrelated coowner-occupants of a home file a claim, all names and social security numbers may be listed on the claim form; however, only one name and social security number must be reported to the Board, unless the coowner is a spouse, in which case the spouse's social security number must also be reported.

3.  The signature of one spouse who is a co-owning occupant with the other spouse will be valid for both spouses so long as one or both of them continues to reside on the property as their principal place of residence. Thus, if either spouse dies, the claim remains in effect during the life of the remaining owner-occupant spouse. Property Tax Rule 135(a)(3) does, however, permit the assessor to require the refilling of the claim by the non-signing spouse who signed the claim has died.

4.  If a claim has the social security numbers of both spouses, but only the signature of one spouse, and they separate but remain legally married, the claim will remain in effect during the occupancy of the property by one spouse as a principal place of residence.

5.  If a claim has the social security numbers of both spouses, but only the signature of one spouse, and they divorce, the claim will no longer be valid if the signing spouse moves. Unless and until the non-signing spouse files a claim for the exemption and meets all of the requirements for exemption, the property would no longer receive the exemption. C 11/27/2001.

505.0005 **Condominiums.**

1.  The exemption is allowable where an owner's deed grants to him a percentage interest in the property and the right to the exclusive occupancy of a particular apartment even though the interest is not separately assessed, as it should be.

2.  A leasehold or subleasehold condominium does not qualify for the exemption.

3.  The exemption may be allowed on a condominium where a portion of the improvement is owned in fee but the land is leased. LTA 3/23/82 (No. 82/50).

505.0010 **Conservator or Guardian.** The exemption may be claimed by the conservator or guardian of a homeowner eligible for the exemption but incompetent to make the claim. C 2/10/69; LTA 3/23/82 (No. 82/50).

505.0015 **Cooperative Mobilehome Park.** The occupants of a cooperative mobilehome park are entitled to the exemption on their respective portions of the land occupied as their principal places of residence. The corporation must annually file the prescribed Form SBE-ASD 266D, and each shareholder occupying a space as a principal place of residence must

file a homeowners' claim for the land on which his place of abode is situated. The exemption is to be allowed against the market value of each site. C 3/7/78.

505.0017 **Corporate Ownership.** Property eligible for the homeowners' exemption becomes ineligible when it is transferred by a husband and wife as joint tenants to a corporation which they own. If their ownership interests remain unchanged after the transfer, Revenue and Taxation Code section 62(a)(2) would exclude the transfer from change in ownership, but that exclusion is separate and apart from exemption considerations and would not enable them to continue receiving the homeowners' exemption. C 12/29/80.

505.0019 **Disaster Impact.** Temporary absence from a dwelling for repairs made necessary by a natural disaster, such as a flood or fire, will not result in the loss of the homeowners' exemption, provided the owner demonstrates that he or she returned to the dwelling when possible to do so. When a dwelling has been totally destroyed, however, the exemption is not applicable until the structure has been replaced and is occupied as a dwelling, except as provided subdivisions (d), (e), and (f) of Revenue and Taxation Code section 218. There is no federal or state law that exempts privately-owned dwellings in the course of construction from property taxation. C 3/20/92; LTA 11/24/2004 (No. 2004/069).

505.0020 **Double Exemption Claims.** A husband and wife may not claim two exemptions for separately located houses, each of which is occupied on the lien date by one of them. Where a husband and wife have more than one residence, their principal residence is the residence at the place at which they intend to live permanently. C 7/25/79.

505.0025 **Equitable Title Holder.** Under a contractual agreement for sale and purchase of real property, an equitable owner of real property may qualify as an owner for purposes of receiving the exemption, assuming all the requirements therefor are met. C 9/21/78.

505.0030 **Escape Assessments.** Where property sold on or after March 1 but before July 2 has improperly received the exemption, an escape assessment should be entered on the secured roll but interest and penalties should be forgiven. C 7/24/79.

505.0035 **Escrow, Recordation, Title.**

1. The exemption may be claimed for a property which is in escrow on the lien date if the purchaser has occupied it on February 28 and all conditions precedent to a binding contract of sale have been fulfilled.

2. The exemption is allowable for property held in the name of a business if the claimant is the sole owner of the business and all other conditions necessary for the exemption are met.

3. The exemption is not allowable for property held in the name of a corporation.

4. A person whose interest in property is evidenced by a "deposit receipt" is not eligible for the exemption. LTA 3/23/82 (No. 82/50).

505.0040 **Estates, Trusts, Power of Attorney, Guardian.**

1. An occupant of property who owns a life estate therein may receive the exemption. An occupant remainderman (the person acquiring the property after the death of the life estate owner) may not receive the exemption while a life estate interest exists.

2. The exemption is allowable to an occupant who has a life estate in his home but it does not extend to land not included in the life estate.

3. The exemption is allowable to an occupant who is a trustor under a revocable "living trust."

4.  The exemption is allowable to an occupant who is a trustor under an irrevocable trust.

5.  The exemption is allowable to an occupant who is the beneficiary of a trust even though legal title is held in trust by a third party.

6.  A spouse, inheriting and occupying property as his/her principal place of residence may receive the exemption even though the property is in probate.

7.  The exemption is not automatically extended to a joint tenant who is not a widow or widower.  A new exemption claim must be filed by the survivor.

8.  A person holding a power of attorney may execute the exemption claim form for a qualified owner-occupant.

9.  The conservator or guardian of a qualified owner-occupant may execute the exemption claim where the owner-occupant is a minor or an incompetent.  LTA 3/23/82 (No. 82/50).

505.0050  **Executor.**  The exemption may be claimed by the executor of an estate when the deceased owned and occupied his dwelling on March 1 of the year for which exemption is claimed.  It is immaterial whether the dwelling is presently occupied or that the dwelling was willed to a specified individual.  C 2/10/69;  LTA 3/23/82 (No. 82/50).

505.0055  **Failure to File.**  The homeowner has the ultimate responsibility to file the claim for exemption.  Failure to receive the claim form shall not excuse a homeowner from timely filing of a claim.  C 5/31/78; C 9/18/78.

505.0060  **Failure to Mail Claim.**  If a claim for exemption was not mailed to a person acquiring and recording title as required by Revenue and Taxation Code section 255.3, mailing and receipt of the tax bill disclosing that no exemption has been allowed satisfies the notice requirement of section 255.3, and the homeowner may file a claim for exemption on or before December 1 and receive the entire exemption rather than partial exemption.  Failure to claim the exemption on or before December 1 results in a waiver of the exemption.  C 11/3/82; C 8/15/97.

505.0063  **Limited Liability Company.**  For property tax exemption law purposes, limited liability companies are, like corporations, separate entities.  There is no authority for disregarding a limited liability company's separate entity status for purposes of ownership of property and determining eligibility for the homeowners' exemption.  Thus, a claim for exemption should not be allowed for property owned by a limited liability company.  C 11/27/2001.

505.0065  **Mobilehome.**  A mobilehome owned by its occupant is eligible for the homeowners' exemption if it is otherwise subject to property tax, but the leased land on which it is situated is not, even if the lease is for a period of 83 years.  While the execution of a lease for 35 years or more is cause for a reappraisal for change in ownership purposes, a lessee is not an owner for exemption purposes.  C 3/6/89.

505.0070  **Occupied by the Owner.**  Property is not "occupied by the owner" for purposes of claiming the exemption if it is rented to another person on the lien date.  Property occupied by the owner on the lien date but thereafter rented during a temporary absence can remain eligible for the exemption.  C 6/19/78.

505.0072  **Personal Lifetime Right of Occupancy.**  Father and Mother transferred their home to their son but retained the right to continue living in the home.  A personal and exclusive lifetime right to occupy the home is equivalent to a life estate if that right provides that the transferors are responsible for mortgage payments, taxes, utilities, maintenance and other



Exhibit 22
P. 144

expenses associated with the upkeep of the home.  Under such terms, the property remains eligible for the homeowners' exemption.  C 5/13/2005.

**505.0074  Possessory Interest—Leasehold Estate.**  Homeowners who sold their residence to a redevelopment agency and immediately leased it back acquired a taxable possessory interest in the residence.  As a leasehold estate, the homeowners' interest in the property is not eligible for the exemption.  C 3/10/98.

**505.0075  Possessory Interest Life Estate.**  The exemption is allowable to an occupant of property owning a life estate interest in public tax-exempt property.  C 8/15/80.

**505.0078  Principal Residence.**  Whether a dwelling located in California is a person's principal place of residence is a question of fact.  To qualify for the exemption, a dwelling must be the person's true, fixed and permanent home and principal establishment to which he/she, whenever absent, intends to return.   In-state presence, vehicle registration, voter registration, bank accounts, and state income tax filings are among the matters to be considered in determining residency, which, for exemption purposes, is equivalent to domicile.  C 11/20/84.

**505.0080  Probate Homestead.**  The exemption is allowable to an occupant of property pursuant to an order of probate homestead, which conveys the exclusive use, possession, and enjoyment of the property much the same as an estate for life.  C 6/18/82.

**505.0085  Property Encumbered by a Trust.**  The exemption is available for property encumbered by a trust agreement where:

1.  A deed absolute on its face is subject to an unrecorded trust agreement between a grantor and a grantee which grants a life estate and a right of revocation in the grantor; or

2.  The trustor has created a revocable living trust and presently occupies the dwelling; or

3.  The trustor has created an irrevocable trust and presently occupies the dwelling; or

4.  The property is occupied by a beneficiary of the trust even though legal title may be held in trust by a bank.  C 4/21/78.

**505.0090  Rented Mobilehome on Owned Land.**  The exemption is not available to a person occupying a rented mobilehome on land he owns and with respect to which mobilehome he has claimed a renter's credit.  C 6/16/78.

**505.0095  Restoration of Exemption.**  An exemption terminated in error may be restored to the roll and the homeowner may claim a refund and obtain a reduction in taxes as the result of the restoration of the exemption where:

1.  A valid exemption claim has been on file;

2.  There has been no further verification upon receipt of a returned Advice of Termination notice;

3.  The homeowner has not cancelled the exemption; and

4.  The homeowner can establish his eligibility for exemption for the year or years in question.  C 5/30/78; C 11/3/78.

**505.0098  Roll Correction.**  Revenue and Taxation Code section 4831 permits corrections of a clerical or formal nature so that the roll actually reflects the intent of the assessor when compiling it.  The section cannot be used to allow a homeowners' exemption where the



Exhibit 22
P. 145

assessor failed to mail a claim form to the homeowner and the homeowner did not file a claim for the exemption. C 8/15/97.

505.0100  **Social Security Numbers.**  Although federal law prohibits any state or local governmental entity from denying to any person any right, benefit, or privilege provided by law because of such person's refusal to disclose his or her social security number (5 U.S.C. section 552a), it permits states and local governmental entities to continue to require such information if they had previously maintained a system of records employing the numbers pursuant to a statute or regulation adopted prior to December 31, 1974.  Record systems maintained by counties for verifying the eligibilities of claimants for the exemption under Revenue and Taxation Code section 218.5 and Property Tax Rule 135 are within this exception, and assessors may continue to require disclosure of social security numbers in conjunction with claims for the exemption. LTA 2/25/75 (No. 75/33).

505.0101  **Social Security Numbers.**  Failure to disclose social security numbers in conjunction with a claim for exemption will result in disallowance of the exemption.  C 4/17/78; C 11/14/78.

505.0105  **Temporary Absence.**

1.  A temporary absence from one's principal residence does not disqualify one for the exemption so long as the property is not leased or rented on the lien date. An absence of more than one year would raise considerable doubt that a residence is a principal residence.

2.  Hospitalization in a convalescent home does not disqualify one for the exemption if the claimant expects to return to the dwelling and the property is not leased or rented.

3.  An absence for training or employment or a temporary exchange of dwellings with no rentals paid does not disqualify one for the exemption. LTA 3/23/82 (No. 82/50).

505.0110  **Trailer Coach.**  The exemption applies to a trailer coach and parcel on which it is located if owner-occupied on the lien date and listed on the assessment roll, and to appurtenant structures, e.g., cabana, storage shed, etc., owned by the trailer coach owner. Where a person resides in a licensed trailer coach on his own land, the exemption applies only to the parcel on which the trailer coach is located. LTA 3/23/82 (No. 82/50).

505.0115  **Transferability.**  The exemption is not transferable from one property owned and occupied by the claimant on the lien date to another property to which the claimant has subsequently moved. LTA 3/23/82 (No. 82/50).

505.0120  **Trust.**  A dwelling placed in trust by a husband and wife, the husband being the trustee and the wife the trust beneficiary, and occupied on the lien date as their principal residence, is eligible for the exemption.

A dwelling placed in trust, a bank being the trustee under an inter vivos or testamentary trust, and occupied by the trust beneficiary on the lien date as his principal residence, is eligible for the exemption.  The bank, on behalf of the trust beneficiary, could claim the exemption.

A life beneficiary under a trust instrument is eligible for the exemption, if the beneficiary is occupying the dwelling on the lien date as his principal residence. C 2/10/69; C 10/23/70; LTA 3/23/82 (No. 82/50).

505.0130  **Types of Property.**  An owner-occupant of any of the following types of property may qualify for the exemption with respect to that portion of the property occupied:

1.  A rooming house.

Exhibit 22
P. 146

2. A duplex.  If owned by a two-member partnership where each side is a principal residence, each side would qualify.

3. A multiple-family residential property.

4. A motel.

5.  An apartment in a structure owned by nonprofit corporation or cooperative housing corporation. LTA 3/23/82 (No. 82/50).

505.0135  **Under Construction.**  The exemption should not be allowed on a dwelling under construction if the owner lives elsewhere and plans to move into it when completed. However, if the owner actually occupies the dwelling as his principal place of residence, he may receive the exemption.  If the owner does not occupy the dwelling under construction but lives in a trailer coach or other abode on the property, no part of the exemption may be applied to the dwelling under construction.  The exemption may be applied to the abode or to the land on which the abode is located.  If the owner is occupying an existing dwelling and is remodeling or adding to it, the exemption should be allowed on the assessed value of the entire property. LTA 3/23/82 (No. 82/50).

505.0140  **Vessel.**  While Revenue and Taxation Code section 218 permits the application of the homeowners' exemption to personal property, there is nothing in its language to indicate that a vessel qualified for the documented vessel exemption contained in Revenue and Taxation Code section 227 may qualify for both exemptions at the same time.  The vessel owner must elect and properly claim one of the exemptions.  C 4/18/77.

Exhibit 22
P. 147

**Exhibit 23**

## DECLARATION OF MATTHEW BOUSQUETTE

I, Matthew Bousquette, hereby state and declare as follows:

1.      I am not a party to the above-referenced litigation. I make this declaration in support of the Motion to Quash Subpoena Seeking Deposition of Matthew Bousquette; or, in the Alternative, Motion for a Protective Order. I have personal knowledge of the facts set forth within this declaration and if called upon as a witness, I could and would testify competently thereto.

2.      I currently reside and work in Itasca, Illinois, a suburb of Chicago, Illinois. I have maintained my permanent residence in Itasca for more than a year and intend to file my 2007 federal and state tax returns as a resident of Illinois. I presently have no intention to change my residence and expect to remain a resident of Illinois indefinitely as that is where my business is located.

3.      Although I own several properties in California and visit California regularly, my primary residence is now in Illinois. In the past twelve months, I have spent more time in Itasca than in any other place, including any place in California. While I continue to have some legal ties to California (such as my voter registration), this is primarily because I have not had time to transfer these matters to Illinois. I frequently work seven days a week and am on the road for business travel much of the time.

4.      I serve as the chairman of a company that operates in the gifts industry. The company's headquarters are located in Itasca. In the course of my work, I travel regularly, both domestically and internationally. I typically schedule business-related trips months in advance.

5.      Since October 2005, I have been represented by Christopher G. Caldwell in legal matters that pre-date and are unrelated to this proceeding. Mr. Caldwell is also now representing me in connection with this matter.

CALDWELL
LESLIE &
PROCTOR

6.    At no time have I authorized the law firm of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP to accept service of a subpoena or other legal documents or process on my behalf.

7.    On March 17, 2008, while I was visiting in Palm Springs, I was personally served with a subpoena that would require my attendance at a deposition in Palm Springs on March 28, 2008. I do not reside or regularly transact business in person within 100 miles of Palm Springs, California.

8.    Prior to March 17, 2008, I had not been served with a subpoena related to this proceeding.

9.    It would seriously disrupt my business plans if I were required to appear for a deposition in California on March 28, 2008.

10.    I have carefully reviewed my current work and travel schedule to identify alternate dates on which I would be available for deposition, working on the assumption that I would need to have some time available on the prior day to meet with my lawyer to prepare for the deposition. The first date on which I would be available for deposition is April 30, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 27, 2008, at Itasca, Illinois.

MATTHEW BOUSQUETTE

Exhibit 23,
P. 199

**Exhibit 24**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(213) 687-5250
EMAIL ADDRESS
TNOLAN@SKADDEN.COM

April 11, 2008

**VIA EMAIL AND MESSENGER**

Hon. Edward Infante (Ret.)
Discovery Master
c/o Sandra Chan
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, California  94111

RE:     <u>Bryant v. Mattel, Inc.</u>
        <u>JAMS Ref. 1100049530</u>

Dear Judge Infante:

          We are writing to request that the motions for protective order relating to the deposition of Matthew Bousquette (filed by Mattel and Mr. Bousquette) be taken under submission and decided on the papers as soon as is convenient for the Discovery Master.

          As the Court may recall, MGA has been trying to depose Mr. Bousquette since November 2006 and this issue already has been before Judge Larson and the Discovery Master.  At the hearing on March 10, 2008, the Discovery Master declined to order Mr. Bousquette's deposition based on the representations of Mattel's counsel that Mr. Bousquette was a resident of Chicago, and not California. The Discovery Master, however, concluded that MGA's counsel had been misled regarding who represented Mr. Bousquette and granted leave from the discovery cutoff date to serve a deposition subpoena on Mr. Bousquette.

          Since the hearing, MGA has learned that, contrary to the representations of Mattel's counsel, Mr. Bousquette actually resides in Palm Springs, California.  MGA also has learned that Mr. Bousquette owns a business in Palm Springs.  Based on this information, MGA served Mr. Bousquette with a deposition

Exhibit 24,
P. 150

Hon. Edward Infante (Ret.)
April 11 2008
Page 2

subpoena in Palm Springs, requiring his appearance less than a mile from his Palm Springs residence on March 28, 2008.  On March 27, 2008, Mattel and Mr. Bousquette filed motions seeking to block that deposition, and Mr. Bousquette did not appear on March 28.

   Briefing on Mattel and Mr. Bousquette's motions is complete.  With this letter, we are submitting one supplemental declaration from Wayne Sherman attesting to the fact that Mr. Bousquette recently renewed his drivers license in California.  Given that the summary judgment hearing before Judge Larson is on April 22 and the final pretrial conference is set for May 5, MGA respectfully requests that the Discovery Master decide these motions on the papers as soon as is convenient for the Court.

   Respectfully submitted,

   Thomas J. Nolan

Enclosure (supplemental Declaration of Wayne Sherman)
cc:  Counsel

Exhibit 24,
P. 151

SUPPLEMENTAL DECLARATION OF WAYNE SHERMAN

I, Wayne Sherman, declare that I am over 18 years of age and not a party to this action, and if called to testify, I could and would competently do so as to the facts stated herein. I am a licensed Private Investigator in the State of California, and an independent contractor for First Legal Investigations PI 24171. My business address is 18375 Ventura Blvd., #506, Tarzana, CA 91356, with telephone number (213) 305-0485 and I supervised the following efforts:

1. On March 12, 2008 I received a request by the law firm of Skadden, Arps, Slate, Meagher & Flom LLP to serve two subpoenas, one for deposition and one for trial on Matt Bousquette in a case before the United States District Court- Central District entitled Carter Bryant, an individual vs. Mattel, Inc., a Delaware corporation, And Consolidated Actions with case number CV 04-09049 SGL (RNBx), Consolidated with Case Nos. CV 04-9059 and CV 05-2727. The last address we were given by our client for the subject was 844 North Mission Road, Palm Springs, CA 92262.

2. On April 3, 2008 I conducted a search of the California Department of Motor Vehicles (DMV) for any license information concerning Matthew Charles Bousquette with a date of birth of December 4, 1958 which I determined from other sources to be the birth date of the subject.

3. I received a record from the DMV on April 4, 2008, for the subject for license number A2181658 which listed him as

**Exhibit 24,**
**P. 152**

Matthew Charles Bousquette, with a class C California Driver's
license issued November 21, 2007 and expiring December 4, 2012.
The license was first issued in approximately 1986 per DMV
records, and appears currently valid with no accidents or
violations reported.  No address appears on the records we have
access to, as DMV will not release that information without a
subpoena.  The subject is described as 49 years of age, 6'3",
200lbs, blond hair, blue eyes.

I declare, under penalty of perjury under the laws of the
United States of America, that the foregoing is true and
correct.  Executed on the 8th day of April 2008, at Los Angeles,
California.

_____
Wayne Sherman

# Exhibit 25

03/17/2008 13:23 FAX  213 629 5584        CLN & P                              ☑002/002

# Caldwell Leslie

Caldwell Leslie & Proctor, PC
1000 Wilshire Boulevard, Suite 600  Los Angeles, CA  90017-2463   Tel 213.629.9040  Fax 213.629.9022  www.caldwell-leslie.com

**BY TELECOPIER AND**                        **CHRISTOPHER G. CALDWELL**
**FIRST-CLASS MAIL**                          caldwell@caldwell-leslie.com

March 17, 2008

Thomas J. Nolan
Skadden Arps
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071

Re:   *Matthew Bousquette*

Dear Tom:

When we spoke last Wednesday, I understood that you would be sending me a copy of
the Judge's Order relating to Matt Bousquette's deposition.  I still have not seen any
Order.  Instead, I understand that you had a subpoena served on Matt this past weekend.

While I have not seen the subpoena, I understand that it seeks Matt's testimony on
March 28, 2007, in Palm Springs, California.  As I have told you before, Matt works and
resides in Chicago now.  In addition, March 28, 2007 is not an available date for Matt.
As I told you when we spoke last week, Matt has a very extensive travel schedule.

Could you please extend me the courtesy of sending me a copy of the subpoena?  Once I
have had a chance to review it, I will get back to you concerning the deposition.

I will be traveling the rest of this week, so I ask that you provide your response by email
to the address above.  Thank you.

Very truly yours,

CHRISTOPHER G. CALDWELL

cc.    Jon Corey (by telecopier)
       Michael H. Page (by telecopier)

Exhibit 25,
P. 154

**Exhibit 26**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5388
DIRECT FAX
(213) 621-5388
EMAIL ADDRESS
RHERRINO@SKADDEN.COM

FIRM/AFFILIATE OFFICES
——
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

March 27, 2008

**VIA EMAIL & U.S. MAIL**

Mr. Christopher G. Caldwell
Caldwell Leslie
1000 Wilshire Boulevard, Suite 600
Los Angeles, California 90017-2683

RE:    *Mattel v. Bryant*

Mr. Caldwell:

I am writing to confirm our discussions this week regarding the deposition of Matt Bousquette. When we spoke on Tuesday, I explained that Mr. Bousquette had been served with a valid subpoena, pursuant to court order. Service was effected approximately one mile from Mr. Bousquette's residence in Palm Springs, California and requires his attendance at a deposition on Friday, March 28, 2008 at a location less than one mile from his residence. You stated that you believed Mr. Bousquette was a resident of Chicago, Illinois. I then discussed with you all of the reasons Mr. Bousquette is a resident of Palm Springs, California, including the numerous homes and properties he owns in California, the numerous vehicles he has registered in his name in California, and the homeowner's exemption he claims in California, among other reasons. You did not have a response, other than to restate your belief that Mr. Bousquette is a resident of Chicago.

You then asked that Mr. Bousquette's deposition be taken on April 30, 2008. I told you that this was far too long to wait for the deposition, particularly given the May 2008 trial date, the length of time we have been seeking this deposition, and the Discovery Master's finding that Mattel's counsel had affirmatively misled MGA regarding Mr. Bousquette's deposition. I told you that we may be willing to consider a date other than March 28, 2008 if that date was during the first week of April 2008 and you obtained an agreement from Mattel and Mr. Bousquette that the deposition would proceed on that date. We also offered to take the deposition this weekend. You stated that you would not produce Mr. Bousquette this weekend. You also stated that you would attempt to obtain an additional date and would call me back.

Exhibit 26,
P. 155

Mr. Christopher G. Caldwell
March 27, 2008
Page 2

Yesterday, I received a voice mail from you stating that you did not have any other date to offer for Mr. Bousquette's deposition. You also stated that you had spoken with Mattel and that Mattel planned to file a motion for protective order relating to Mr. Bousquette's deposition. As I mentioned in my voice mail to you yesterday, Mattel has made no effort to meet and confer with MGA regarding Mr. Bousquette's deposition. Any motion by Mattel would violate the Discovery Master stipulation in this case and be null and void.

Because Mr. Bousquette has been served with a valid subpoena seeking his deposition less than a mile from his California residence, and because there is no court order quashing or otherwise modifying the subpoena, we intend to proceed with Mr. Bousquette's deposition on March 28, 2008, in accordance with the subpoena. If Mr. Bousquette does not comply with the subpoena, we will consider him in contempt of court and pursue all appropriate remedies.

Sincerely,

Robert J. Herrington

RJH:nl

Exhibit 26,
P. 156

# Confirmation Report - Memory Send

Time      : 03-27-2008   12:29pm
Tel line  : +2136877808
Name      :

| | | |
|---|---|---|
| Job number | : | 817 |
| Date | : | 03-27  12:28pm |
| To | : | 96299022 |
| Document pages | : | 003 |
| Start time | : | 03-27  12:28pm |
| End time | : | 03-27  12:29pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 817          *** SEND SUCCESSFUL ***

---

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
### 300 SOUTH GRAND AVENUE
### LOS ANGELES, CALIFORNIA 90071-3144

Telephone No.: (213) 687-5000
Facsimile No.: (213) 687-5600
Email: rherring@skadden.com

### FACSIMILE TRANSMITTAL SHEET

FROM: Robert J. Herrington                              DATE: March 27, 2008
DIRECT DIAL: (213) 687-5368                             FLOOR/OFFICE NO.:
DIRECT FACSIMILE: (213) 621-5368                        REFERENCE NO: 112040-1

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

IF THIS TRANSMISSION IS UNCLEAR OR INCOMPLETE, PLEASE CONTACT THE FACSIMILE DEPARTMENT AT (213) 687-5368. WHEN TRANSMITTING TO OUR MACHINES, PLEASE INCLUDE YOUR COVER SHEET AND NUMBER ALL PAGES CONSECUTIVELY.

TOTAL NUMBER OF PAGES INCLUDING COVER(S):   3

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

1.  NAME:  Mr. Christopher G. Caldwell          FIRM:  Caldwell Leslie
    CITY:  Los Angeles                          TELEPHONE NO.:  (213) 629-9040
    FACSIMILE NO.:  (213) 629-9022

MESSAGE:  Please see attached.

SUD180.01-Los Angeles Server 1A - MSW

Exhibit 26,
P. 157

# Exhibit 27

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,               Consolidated with
                                       Case No. CV 04-09059
13       vs.                           Case No. CV 05-02727

14  MATTEL, INC., a Delaware           **DISCOVERY MATTER**
    corporation,
15                                     **[To Be Heard By Discovery Master
              Defendant.               Hon. Edward Infante (Ret.) Pursuant
16                                     To The Court's Order Of December 6,
                                       2006]**
17  AND CONSOLIDATED ACTIONS
                                       MATTEL, INC.'S NOTICE OF
18                                     MOTION AND MOTION FOR
                                       PROTECTIVE ORDER RE:
19                                     MATTHEW BOUSQUETTE;

20                                     AND MEMORANDUM OF POINTS
                                       AND AUTHORITIES
21
                                       [Declaration of B. Dylan Proctor filed
22                                     concurrently herewith]

23                                     Hearing Date: TBA
                                       Time:         TBA
24                                     Place:        Telephonic

25                                     **Phase 1**
                                       Discovery Cut-Off:    January 28, 2008
26                                     Pre-Trial Conference: May 5, 2008
                                       Trial Date:           May 27, 2008
27

28

07209/2448175.1

                              MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

                    Exhibit 27,
                    P. 158

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a telephonic conference before Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time to be determined by Judge Infante, Mattel, Inc. ("Mattel") will, and hereby does, move the Court for a protective order postponing the deposition of third party Matthew Bousquette until MGA's unfair competition document production is substantially complete.

This Motion is made pursuant to <u>Federal Rule of Civil Procedure</u> 26(c) and the Order appointing the Discovery Master on the grounds that the Discovery Master previously ruled that Mr. Bousquette's deposition should not take place until MGA's unfair competition document production is substantially complete. It is not.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

### Statement of Rule 37-1 Compliance

The parties met and conferred regarding these issues on November 21, 2007 and times thereafter.

DATED: March 27, 2008            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ B. Dylan Proctor
   B. Dylan Proctor
   Attorneys for Mattel, Inc.

i
MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

Exhibit 27
P. 159

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel respectfully seeks a protective order postponing the deposition of third party Matthew Bousquette until MGA's unfair competition document production is substantially complete, or in the alternative that the deposition of Matt Bousquette be limited to two hours, with the remaining five hours to occur only after MGA's unfair competition document production is substantially complete.

The Discovery Master previously ruled that Mr. Bousquette's deposition should not take place until MGA's unfair competition document production is substantially complete. It is not. To persuade Mattel to produce Mr. Bousquette, MGA represented that its production was substantially complete on December 10, 2007. The truth turned out to be far different. Since December 10, 2007, MGA has produced more than 600,000 pages of documents. If that were not enough, MGA's counsel recently acknowledged that MGA owed Mattel "a bunch of discovery" regarding its unclean hands defense, which incorporates all of MGA's unfair competition claims. This "debt" of discovery owed to Mattel caused MGA to withdraw its unclean hands defense to Mattel's Phase 1 claims, which incorporates all of MGA's unfair competition claims. Mattel respectfully requests that its motion as to Mr. Bousquette be granted.

### Argument

Federal Rule of Civil Procedure 26(c) provides that "the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that certain matters not be inquired into, that the scope of the disclosure or discovery be limited to certain matters, or that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed

Exhibit 27,
P. 160

1  only in a designated way." <u>Fed. R. Civ. P.</u> 26(c).  The Court should exercise its

2  authority under <u>Rule</u> 26(c) and the Order appointing a Discovery Master[1] to

3  postpone the deposition of third-party Matthew Bousquette until MGA's unfair

4  competition document production is substantially complete.

5       The Discovery Master has instructed that Bousquette's deposition

6  "should not take place until [MGA's] document discovery is substantially

7  completed" as to him.[2]  MGA's document production with respect to Mr. Bousquette

8  is not substantially complete.  MGA's efforts to depose Mr. Bousquette prior to the

9  substantial completion of its document production contravenes the Discovery

10 Master's direction and should therefore be rejected.

11      MGA represented that its unfair competition document production was

12 substantially complete on December 10, 2007.[3]  Since December 10, 2007, belying

13 that representation, MGA has produced more than 600,000 pages of documents.[4]  In

14 its Reply in support of its *Ex Parte* Application to Compel the Depositions of

15 Matthew Bousquette and Tina Patel, MGA argued that those documents relate to

16 Mattel's trade secrets and RICO claims and therefore are not related to Bousquette

17 or MGA's unfair competition claims.[5]  As the Court has repeatedly ruled, however,

18 the opposite is true and MGA's unfair competition claims are intertwined with the

19

20 _____

21  [1]  <u>See</u> Order For Appointment Of A Discovery Master, dated December 6, 2006
    ("Order"), attached as Exhibit 3 to the Declaration of B. Dylan Proctor, dated March

22 27, 2008 ("Proctor Dec.").  Under the Order, the Discovery Master is authorized to
    resolve disputes regarding third-party subpoenas.  <u>See</u> Order at 3-4.

23  [2]  February 13, 2007 Hearing Transcript, at 34:15 - 34:18, Proctor Dec., Exh. 4.

24  [3]  Letter from Jon Corey to Marcus Mumford, dated December 11, 2007, at p. 2,
    Proctor Dec., Exh. 2.

25  [4]  Proctor Dec., ¶ 4.

26  [5]  Reply in support of MGA Defendants' *Ex Parte* Application to Compel the
    Depositions of Matthew Bousquette and Tina Patel, dated February 24, 2008, at 3,

27 Proctor Dec., Exh. 5.

28

07209/2448175.1

-2-

Exhibit 27,
P. 161

1    trade secret claims.[6] Indeed, it is MGA's trade secret thefts that show MGA was

2    copying Mattel, and not the other way around as MGA's unfair competition claims

3    allege.

4            MGA's argument that its relevant discovery is substantially complete --

5    shown to be false by its actions since December 2007 -- is also belied by MGA's

6    own statements.   MGA's counsel recently admitted that the representation of

7    completeness is wrong.  During a meeting of counsel on February 15, 2008, counsel

8    for MGA conceded that if MGA were to proceed in Phase 1 with its unclean hands

9    defense, which incorporates all of MGA's unfair competition claims, then MGA

10   owed Mattel "a bunch of discovery."[7]  MGA has now submitted two briefs on this

11   issue since Mattel filed its opposition, but has not disputed this.[8]  Rather than cough

12   up this "bunch of discovery," MGA withdrew unclean hands as a Phase 1 defense to

13   Mattel's Phase 1 claims (while purporting to maintain it as a Phase 2 defense).[9]  So,

14   despite MGA's previous representation, it has not substantially completed its

15   document production as to Mr. Bousquette (or unfair competition or unclean hands).

16   Until MGA can credibly represent that it has complied with the Discovery Master's

17

18
_____

19       [6]  See Order Regarding Mattel's Motion for Leave to Amend, date January 11,
20   2007, at 19:20-21:6, Proctor Dec., Exh. 6; Scheduling Orders, dated February 22,
     2007, Proctor Dec., Exh. 7; Court's July 2, 2007 Minute Order, Proctor Dec., Exh. 8;
21   and Mattel's Memorandum Regarding Trial Structure, dated June 20, 2007, Proctor
22   Dec., Exh. 9.
         [7]  Proctor Dec., ¶ 3.
23       [8]  See Reply in support of MGA Defendants' Ex Parte Application to Compel
24   the Depositions of Matthew Bousquette and Tina Patel, dated February 24, 2008,
     Proctor Dec., Exh. 5; MGA's Application and Request for Hearing Regarding the
25   Already Briefed Motion to Compel the Deposition Testimony of Matthew
26   Bousquette and Tina Patel, dated February 28, 2008, Proctor Dec., Exh. 10.
         [9]  MGA's Notice of Withdrawal of Unclean Hands Affirmative Defense as it
27   Pertains to Phase 1, dated February 15, 2008, Proctor Dec., Exh. 1.
28

Exhibit 27 ,
P. 162

1    prior direction, it should not be permitted to proceed with Mr. Bousquette's

2    deposition.

3         In light of the deficiencies in MGA's unfair competition document

4    production, Mattel respectfully requests that the Court issue a protective order to

5    postpone the deposition of third-party Matthew Bousquette until such production is

6    substantially complete.  Alternatively, Mattel requests that any deposition of Mr.

7    Bousquette that occurs prior to the conclusion of Phase 1 of these consolidated cases

8    should be limited to two hours, with the balance of the time after the conclusion of

9    Phase 1.

10

11   DATED:  March 27, 2008          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
12

13                                   By /s/ B. Dylan Proctor
14                                      B. Dylan Proctor
                                        Attorneys for Mattel, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2448175.1

-4-

Exhibit 27,
P. 163

**Exhibit 28**



1  CALDWELL LESLIE & PROCTOR, PC
   CHRISTOPHER G. CALDWELL, State Bar No. 106790
2  1000 Wilshire Blvd., Suite 600
   Los Angeles, California  90017-2463
3  Telephone:  (213) 629-9040
   Facsimile:  (213) 629-9022
4
   Attorney for Non-Party
5  MATTHEW BOUSQUETTE

6

7              UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA

9                   EASTERN DIVISION

10  CARTER BRYANT, an individual,      | Case No. CV 04-9049 SGL (RNBx)

11                                     | Consolidated with
          Plaintiff,                   | Case No. CV 04-09059
12                                     | Case No. CV 05-2727

13        v.                           | **DISCOVERY MATTER**

14  MATTEL, INC., a Delaware           | **[To Be Heard by Discovery Master**
    corporation,                       | **Hon. Edward Infante (Ret.) Pursuant**
15                                     | **to the Court's Order of December 6,**
                                       | **2006]**
16
                                       | **NOTICE OF MOTION AND**
17        Defendant.                   | **MOTION TO QUASH THE**
                                       | **SUBPOENA SEEKING**
18                                     | **DEPOSITION OF MATTHEW**
                                       | **BOUSQUETTE; OR, IN THE**
19                                     | **ALTERNATIVE, MOTION FOR A**
                                       | **PROTECTIVE ORDER;**
20                                     | **MEMORANDUM OF POINTS &**
                                       | **AUTHORITIES; DECLARATIONS**
21                                     | **OF MATTHEW BOUSQUETTE**
                                       | **AND CHRISTOPHER G.**
22                                     | **CALDWELL WITH EXHIBITS**

23

24                                     | Hearing Date:
                                       | Time:
25                                     | Place:

26  AND CONSOLIDATED ACTIONS           | **Phase I**

27                                     | Discovery Cutoff:    January 28, 2008
                                       | Pretrial Conference: May 5, 2008
28                                     | Trial Date:          May 27, 2008

CALDWELL
LESLIE &
PROCTOR

---

MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER

Exhibit 28
P. 164

PLEASE TAKE NOTICE that, on a date and at a time to be set by the Discovery Master pursuant to the Court's Order of December 6, 2006, non-party Matthew Bousquette will and hereby does, move to quash the deposition subpoena served on him by MGA Entertainment, Inc.; Isaac Larian; MGA Entertainment (HK) Limited; and MGAE de Mexico S.R.L. de C.V. (collectively "MGA"). In the alternative, Mr. Bousquette moves for a protective order to modify the time and location of the deposition.

This Motion is brought pursuant to Federal Rules of Civil Procedure 45(a)(2), 45(c)(3)(A)(i), (ii) and 26(c)(1) on the grounds that the subpoena should be quashed or modified because (1) it would require Mr. Bousquette to travel more than 100 miles from where he resides, is employed, or regularly transacts business in person; and (2) good cause exists to issue a protective order because the date unilaterally set by MGA would require Mr. Bousquette to cancel longstanding business commitments that would seriously disrupt his business and force him to travel from Chicago to Palm Springs on eleven days notice.

This Motion is based upon this Notice of Motion as well as the accompanying Memorandum of Points and Authorities, the attached declarations of Matthew Bousquette and Christopher G. Caldwell with exhibits, the pleadings, records and files in this action, and upon such other and further evidence as may be presented at the time of the hearing on the Motion.

CALDWELL
LESLIE &
PROCTOR

-1-

MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Exhibit 2-8 ,
P. 165

1        This Motion is made pursuant to the Order re Appointment of Discovery

2   Master, following the exchange of correspondence and telephone conferences

3   between counsel for Mr. Bousquette and MGA which took place on March 12,

4   March 17, March 19, March 21, and March 25, 2008.

5

6   DATED:  March 27, 2008                    Respectfully submitted,

7

8                                            CALDWELL LESLIE & PROCTOR, PC

9

10                                           By

11                                           CHRISTOPHER G. CALDWELL

12                                           Attorney for Non-Party
                                             MATTHEW BOUSQUETTE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

-2-

Exhibit 28,
P. 166

## I.   INTRODUCTION

Matthew Bousquette is not a party to this litigation.  He is an independent businessman who lives and works in Itasca, Illinois, a suburb of Chicago.  Just over a week ago, without consultation with Mr. Bousquette or his counsel, MGA Entertainment, Inc.; Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively "MGA") served Mr. Bousquette with a deposition subpoena unilaterally demanding that he appear for deposition in Palm Springs on March 28, 2008.  This was the first time that Mr. Bousquette had been served with a subpoena in this matter.

Mr. Bousquette is not a resident of California, his business is not in California and he does not regularly conduct business in person in California.  The subpoena "must," therefore, be quashed or modified under Federal Rule of Civil Procedure 45(c)(3)(A)(ii).  At minimum, a protective order is appropriate to ensure that the deposition is conducted at a time and in a location that will not unreasonably and unnecessarily inconvenience Mr. Bousquette or disrupt his existing business commitments.

Mr. Bousquette is not seeking to evade service or to avoid sitting for his deposition.  He has expressed his willingness to consider alternate dates and has offered to sit for his deposition in Chicago on April 30, 2008.  MGA has refused that offer, contending that it is too close to the current trial date.  Any timing issues that MGA faces, however, are of its own making.  This litigation has been pending for almost four years, yet MGA waited until the eleventh hour to serve Mr. Bousquette with a deposition subpoena that does not comport with the federal rules.  Accordingly, the subpoena must be quashed.

At minimum, a protective order should be entered modifying the date and location of the deposition so that it may be conducted on April 30, 2008, in Chicago, Illinois, as proposed by Mr. Bousquette.  Mr. Bousquette should not be

28
CALDWELL
LESLIE &
PROCTOR

MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Exhibit 28
P. 167

1   forced to disrupt his business and abandon his obligations because of MGA's lack
2   of diligence.

3   **II.     FACTUAL BACKGROUND**

4           This action has been pending for more than four years. Approximately two
5   weeks ago, the Court considered a motion brought by MGA to compel Mr.
6   Bousquette's deposition. *See Ex Parte* Application to Compel the Deposition of
7   Matthew Bousquette and Tina Patel ("Motion to Compel"). Pursuant to a
8   deposition subpoena issued by the Northern District of Illinois, MGA had
9   attempted to notice Mr. Bousquette's deposition in Chicago. Rather than
10  personally serving the deposition subpoena on Mr. Bousquette, however, MGA
11  served the subpoena on Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
12  ("Quinn"), counsel for Mattel, Inc. in this matter. Quinn, however, did not
13  represent Mr. Bousquette and neither Mr. Bousquette nor his counsel, Christopher
14  Caldwell, had authorized service of the subpoena on Quinn. Bousquette Decl. ¶ 6;
15  Caldwell Decl. ¶ 3.

16          Mr. Bousquette thus opposed the motion on the grounds that he had not
17  been properly served and – because Mr. Bousquette lived in Illinois and the
18  subpoena had been issued in the Northern District of Illinois – the motion should
19  have been brought in the Northern District of Illinois. Opposition to Motion to
20  Compel ("Opp'n") at 1-2; *see* Declaration of Christopher G. Caldwell in Support
21  of Opposition ¶¶ 5-6; *see also* Fed. R. Civ. P. 45(b) ("Serving a subpoena requires
22  delivering a copy to the named person"); Fed. R. Civ. P. 37(a)(2) (application to
23  compel discovery from a non-party must be made in the district where the
24  discovery is to be taken).

25          On March 18, 2008, the Discovery Master entered a written Order granting
26  MGA an exception to the January 28, 2008, discovery cut-off date for Phase I
27  discovery and granting MGA "leave to proceed to pursue Mr. Bousquette's
28  deposition before the Phase I trial." Order at 1. The Discovery Master did not

CALDWELL
LESLIE &
PROCTOR

MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Exhibit 28,
P. 168

1   compel Mr. Bousquette to appear for his deposition nor did it set a date by which

2   his deposition was to be completed. *Id.*

3       On March 17, 2008 – the day before the Discovery Master entered his

4   written order and after MGA had been informed that Mr. Bousquette lived and

5   worked in Illinois – MGA personally served Mr. Bousquette in Palm Springs with

6   a deposition subpoena issued by the Central District of California. Bousquette

7   Decl. ¶ 7; Caldwell Decl. ¶ 7, *see* Exh. "A." Although MGA knew that Mr.

8   Bousquette was represented by Mr. Caldwell in this matter, MGA made no effort

9   to coordinate dates with Mr. Caldwell or Mr. Bousquette and unilaterally set the

10  date for the deposition for March 28, 2008, in Palm Springs, California. Caldwell

11  Decl. ¶ 7.

12      Mr. Bousquette, however, does not live or work in California and he is not

13  available for deposition on March 28, 2008. Bousquette Decl. ¶ 9. Although Mr.

14  Bousquette owns property in California, his primary residence (and domicile) is in

15  Itasca, Illinois, a suburb of Chicago. *Id.* ¶¶ 2-3. His business, which requires him

16  to travel extensively, is also headquartered in Itasca. *Id.* ¶¶ 2, 4. Mr. Bousquette

17  has long-standing business commitments that would be seriously disrupted if he

18  were required to appear for deposition on March 28, 2008. *Id.* ¶¶ 4, 9.

19      Accordingly, the same day that Mr. Bousquette was served with the

20  subpoena, Mr. Caldwell wrote to counsel for MGA, reminded him that Mr.

21  Bousquette lived and worked in Illinois and informed him that Mr. Bousquette

22  was not available for deposition on March 28. Caldwell Decl. ¶ 8, Exh. "A."

23  MGA responded by letter on March 19, indicating that, notwithstanding Mr.

24  Bousquette's unavailability on March 28, and without addressing the fact that Mr.

25  Bousquette lives and works in Illinois, MGA intended to proceed with Mr.

26  Bousquette's deposition on March 28. *Id.* ¶ 9, Exh. "B." The only change that

27  MGA offered was that the deposition be conducted in Los Angeles instead of

28  Palm Springs. *Id.*

CALDWELL
LESLIE &
PROCTOR

MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Exhibit 28 ,
P. 169

In an effort to resolve the impasse, by letter dated March 21, 2008, counsel for Mr. Bousquette proposed that Mr. Bousquette's deposition be conducted on April 30, 2008. Caldwell Decl. ¶ 10, Exh. "C." MGA refused. *Id.* ¶¶ 11. The most MGA was willing to offer was that the deposition be conducted on Sunday, March 30, a date that did not work for either Mr. Bousquette or Mr. Caldwell. *Id.* ¶ 11. Over the next few days, the parties continued to meet and confer in an effort to resolve this dispute without the intervention of the Court. *Id.* ¶¶ 11 & 12. Despite these efforts, MGA refused to compromise on the date or location for Mr. Bousquette's deposition. *Id.*

MGA's failure to cure the defects in the subpoena or to accommodate, in any way, Mr. Bousquette's reasonable requests to modify the time and place of his deposition necessitated the filing of this Motion.

### III. THE DEPOSITION SUBPOENA MUST BE QUASHED OR MODIFIED BECAUSE IT DOES NOT COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE

Under the Federal Rules of Civil Procedure, the Court *must* quash or modify a subpoena that does not provide a reasonable time to comply or "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. Proc. 45(c)(3)(A)(i), (ii). "[I]t is of course the nonparty whose convenience Rule 45 is most concerned about protecting." David D. Siegel, Practice Commentaries, Fed. R. Civ. P. 45, at C45-21 (2007). In this case, MGA personally served Mr. Bousquette with a deposition subpoena that would require him to appear for his deposition in Palm Springs, California – thousands of miles from where he lives and works – on eleven days notice.

Mr. Bousquette is not a party to this litigation. Bousquette Decl. ¶ 1. He is not an officer of any party to this litigation. *Id.* He does not live in Palm Springs, is not employed in Palm Springs, and does not regularly transact business within

1   100 miles of Palm Springs. *Id.* ¶¶ 2-4, 7.  Accordingly, under Rule 45 of the Rules

2   of Civil Procedure, the deposition subpoena served on Mr. Bousquette – which

3   demands that he appear for deposition in Palm Springs on eleven days notice –

4   must be quashed.

5          For more than a year, Mr. Bousquette has made his home in Itasca, Illinois,

6   a suburb of Chicago.. *Id.* ¶ 2.  Although he travels extensively in connection with

7   his business, in the past year, he has spent more time in Itasca than in any other

8   place. *Id.* ¶¶ 3-4.  His 2007 federal and state tax returns will be filed as a resident

9   of Illinois and, because his business is also headquartered in Itasca, his intent is to

10  maintain his permanent residence in Illinois indefinitely. *Id.* ¶¶ 2-4.

11         The fact that he also owns several properties in California and visits

12  California regularly does not make him a resident of California for purposes of

13  Rule 45.  When determining whether a subpoena requires its recipient to travel

14  more than 100 miles from where the recipient resides, courts have looked to where

15  the recipient is domiciled, not merely where the recipient owns a residence. "[A]

16  person is 'domiciled' in a location where he or she has established a fixed

17  habitation or abode in a particular place, *and [intends] to remain there*

18  *permanently or indefinitely*." *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986)

19  (emphasis added and internal quotation marks omitted).

20         In *Asselstine v. Boyne USA, Inc.*, Misc. No. 1:07MC33, 2007 WL 3124619

21  (W.D.N.C. Oct. 24, 2007), the court considered the validity of a subpoena that was

22  served at the deponent's residence in Burnsville, North Carolina, requiring the

23  individual to testify at a courthouse less than 100 miles away. *Id.*  The court

24  concluded, however, that the recipient of the subpoena "reside[d] principally in

25  Florida and [wa]s employed there."  Thus, although he "maintain[ed] a second

26  home in Burnsville, North Carolina," the Court was required to quash the

27  subpoena under Rule 45(c)(3)(A). *Id.*; *see also Zaitsev v. State Farm Fire & Cas.*

28  *Co.*, No. 05-CV-2098 (ILG), 2005 WL 3088326, at *4 (E.D.N.Y. 2005)

CALDWELL
LESLIE &
PROCTOR

-5-

Exhibit ⟨2⟩,
P. ⟨17⟩

1  (considering whether potential witnesses were "domiciled within a 100-mile

2  radius" of the court in evaluating whether to grant a motion to transfer venue).

3       Thus, the fact that Mr. Bousquette owns property in California does not

4  make him subject to deposition in California. *See* Bousquette Decl. ¶ 3.  Indeed,

5  the original deposition subpoena – which sought Mr. Bousquette's deposition in

6  Chicago but was never properly served on Mr. Bousquette – was issued from the

7  Northern District of Illinois.[1]  Inexplicably, after obtaining approval to pursue Mr.

8  Bousquette's deposition and to conduct Mr. Bousquette's deposition after the

9  January 28, 2008, discovery cut-off date for Phase I discovery, MGA abandoned

10 its efforts to depose Mr. Bousquette in Illinois – where he lives and works – and

11 noticed his deposition for Palm Springs California.  Caldwell Decl. ¶ 7.

12      Under the Federal Rules of Civil Procedure, Mr. Bousquette cannot be

13 compelled to appear for his deposition in Palm Springs.  Because he neither

14 works, is employed, nor conducts business within 100 miles of Palm Springs, the

15 deposition subpoena must be quashed or modified.  Fed. R. Civ. Proc.

16 45(c)(3)(A)(ii).

17 **IV.  AT MINIMUM, A PROTECTIVE ORDER IS APPROPRIATE TO**

18 **AVOID IMPOSING AN UNDUE BURDEN AND UNNECESSARY**

19 **EXPENSE ON MR. BOUSQUETTE**

20      Federal Rule of Civil Procedure 45(c)(1) provides that "[a] party or attorney

21 responsible for issuing and serving a subpoena must take reasonable steps to avoid

22 imposing undue burden or expense on a person subject to the subpoena."  Rule

23 26(c)(1) provides that:

24

25      [1] As set forth above, Mr. Bousquette opposed MGA's Motion to Compel his
   deposition pursuant to the Illinois subpoena, but not on the grounds that it was
26 invalid because it had been issued by the Northern District of Illinois or that his
   deposition should be conducted in California.  Mr. Bousquette asserted that he had
27 not been properly served with the subpoena at issue and, because the subpoena
   had been issued out of Illinois, any motion to compel should have been brought in
28 Illinois.  Opp'n at 1-2; Bousquette Decl. ¶¶ 6-8; Caldwell Decl. ¶ 5.

CALDWELL
LESLIE &
PROCTOR

MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Exhibit 12 ,
P. 172

1  A party or any person from whom discovery is sought may

2  move for a protective order where the action is pending . .

3  . . The court may, for good cause, issue an order to protect

4  a party or person from annoyance . . . or undue burden or

5  expense, including: . . . (B) specifying terms, including

6  time and place, for the disclosure of discovery.

7  In this case, MGA has taken the uncompromising position that Mr.

8  Bousquette, a third party to this litigation, is required to cancel his pre-existing

9  business commitments and travel from his home in Illinois to attend a deposition

10  in California on eleven days notice. Bousquette Decl. ¶¶ 4, 9. MGA has made no

11  effort to avoid imposing undue burden or expense on Mr. Bousquette and has

12  made no effort to attempt to accommodate Mr. Bousquette's schedule. Mr.

13  Bousquette has offered an alternate date on which he is willing to be deposed in

14  Chicago, a date that MGA has rejected out of hand without offering any

15  reasonable alternative. *Id.* ¶ 10. MGA's intransigence is inconsistent with the

16  intent and purpose of the federal rules.

17  In *Hauser v. Farrell*, 14 F.3d 1338 (9th Cir. 1994) *overruled on other*

18  *grounds by Central Bank v. First Interstate Bank*, 511 U.S. 164, 173 (1994), the

19  deponent's counsel sought to delay a scheduled deposition because the scheduled

20  date was a legal holiday and deponent's counsel had a trial starting on the

21  following day. Deponent's counsel offered numerous alternative dates for the

22  deposition. *See id.* at 1344. Because the attorney seeking the deposition refused

23  to attempt to accommodate the deponent's request, the magistrate judge not only

24  granted a protective order, but also ordered opposing counsel to pay the

25  deponent's legal fees in seeking the protective order. *See id.*

26  In this case, Mr. Bousquette does not seek to reschedule or relocate the

27  deposition because the date is inconvenient for his counsel. Mr. Bousquette seeks

28  to reschedule and relocate the deposition to Illinois because he has longstanding

CALDWELL
LESLIE &
PROCTOR

-7-

Exhibit 12 ,
P. 173

1  business commitments that he would have to cancel, rearrange and/or reschedule
2  at great disruption to his business in order to attend the deposition as scheduled on
3  March 28.  Bousquette Decl. ¶ 9.  If the deposition is to be held in California, as
4  currently scheduled, he would also have to allow for an additional two days of
5  travel time to and from the deposition.  Yet MGA has refused to agree to
6  reschedule the deposition to accommodate Mr. Bousquette's schedule.

7      Mr. Bousquette has offered to make himself available for deposition in
8  Illinois on the earliest date that he is available. *Id.* ¶ 10.  MGA has refused to
9  consider any other reasonable alternative.  As the Ninth Circuit has observed,
10  "[o]bstructive refusal to make reasonable accommodation, such as plaintiff
11  exhibited, not only impairs the civility of our profession and the pleasures of the
12  practice of law, but also needlessly increases litigation expense to clients." *Id.*

13      MGA's only explanation for its unwillingness to accommodate Mr.
14  Bousquette's schedule is that the proposed April 30th date is only a month before
15  the date currently set for trial.  Caldwell Decl. ¶ 11.  But a month should be more
16  than sufficient to provide MGA with ample opportunity to review Mr.
17  Bousquette's deposition testimony and to prepare MGA's case for trial.

18      In any event, the time issues that MGA now faces are not of Mr.
19  Bousquette's making.  This matter has been pending for almost four years.  Yet
20  MGA waited until the eve of trial to notice Mr. Bousquette's deposition.  MGA
21  cannot now be heard to argue that Mr. Bousquette must bear the brunt of MGA's
22  own lack of diligence and that Mr. Bousquette must bear the expense and burden
23  of rearranging his schedule to accommodate MGA's.

24      Nor must Mr. Bousquette be tagged with the inconvenience and expense of
25  traveling to California so that MGA may conduct his deposition in California. *See*
26  *Truswal Sys. Corp. v. Hydro Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)
27  (although Rule 26 and Rule 45 apply to nonparties, the fact of nonparty status may
28  be considered by the court in weighing the burden imposed in the circumstances).

CALDWELL
LESLIE &
PROCTOR

-8-

MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Exhibit 12,
P. 174

1  Any cost to the parties associated with taking Mr. Bousquette's deposition in

2  Chicago is *de minimis* relative to the litigation costs already incurred in this action.

3  Mr. Bousquette is a non-party to this proceeding, has long-standing business

4  commitments through the end of April, and was given extremely short notice to

5  block out sufficient time in his schedule for this deposition.  Accordingly, a

6  protective order is particularly appropriate and the Court should enter an order

7  requiring that the deposition go forward in Chicago on April 30, 2008, or at

8  another date that is mutually agreeable to the parties.  *See Hyde & Drath v. Baker,*

9  24 F.3d 1162, 1166 (9th Cir. 1994) ("A district court has wide discretion to

10  establish the time and place of depositions.").

11  **V.    CONCLUSION**

12         For the foregoing reasons, Matthew Bousquette respectfully requests an

13  Order quashing the deposition subpoena served by MGA, or, in the alternative, a

14  protective order requiring that his deposition be conducted in Chicago on April 30,

15  2008, or on a date that is otherwise mutually convenient for the parties.

16

17

18  DATED:  March 27, 2008            Respectfully submitted,

19                                    CALDWELL LESLIE & PROCTOR, PC

20

21                                    By _____
                                          CHRISTOPHER G. CALDWELL
22                                        Attorney for Non-Party
                                          MATTHEW BOUSQUETTE
23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

-9-

Exhibit 28,
P. 175

**Exhibit 29**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>Hon. Stephen G. Larson<br><br>MATTEL, INC.'S CORRECTED PHASE ONE WITNESS LIST<br><br>**Phase 1:**<br>Discovery Cut-Off:    January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:               May 27, 2008 |

-1-

MATTEL, INC.'S PHASE ONE WITNESS LIST

Exhibit 29
P. 176

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2              Mattel, Inc. ("Mattel") hereby identifies the following witnesses that it

3    intends at this time to call at trial, other than those witnesses contemplated for

4    impeachment or rebuttal.  Mattel reserves the right to present these witnesses'

5    testimony through prior deposition or other testimony to the extent a witness is

6    unavailable to provide live testimony at trial or such testimony is otherwise

7    admissible.  Mattel reserves the right to call any witnesses included in the witness

8    lists of other parties to this action and any amendments thereto, including any expert

9    witnesses.  Mattel reserves the right to supplement or amend its designation of

10   witnesses and their testimony.

11

12          **Witnesses Mattel Intends to Call In Its Case In Chief**

13       1.    Nana Ashong

14       2.    Kerri Brode

15       3.    Carter Bryant

16       4.    Ana Isabel Cabrera

17       5.    Beatriz Morales

18       6.    Elise Cloonan

19       7.    Mel Woods

20       8.    Robert Eckert

21       9.    Lissa Freed

22       10.   Rachel Harris

23       11.   Andreas Koch

24       12.   Farhad Larian

25       13.   Isaac Larian

26       14.   Steven Linker

27       15.   Maria Veronica de Souza Marlow

28       16.   Liliana Martinez

-2-

MATTEL, INC.'S PHASE ONE WITNESS LIST

Exhibit 29 ,
P. 177

|    |     |                                         |
|----|-----|-----------------------------------------|
| 1  | 17. | Jennifer Maurus                         |
| 2  | 18. | Carl Meyer                              |
| 3  | 19. | Victoria O'Connor                       |
| 4  | 20. | Sarah Odom                              |
| 5  | 21. | Denise O'Neal                           |
| 6  | 22. | Jeff Weiss                              |
| 7  | 23. | Jacqueline Ramona Prince                |
| 8  | 24. | Anna Rhee                               |
| 9  | 25. | David Rosenbaum                         |
| 10 | 26. | Maria Elena Salazar                     |
| 11 | 27. | Maureen Tkacik                          |
| 12 | 28. | Lisa Tonnu                              |
| 13 | 29. | Paula Dianthe Treantafelles (Garcia)    |
| 14 | 30. | Anne Wang                               |
| 15 | 31. | Sandy Yonemoto                          |
| 16 | 32. | Kitty Hammons                           |
| 17 | 33. | Ivy Ross                                |
| 18 | 34. | Cassidy Park                            |
| 19 | 35. | Bryan Armstrong                         |
| 20 | 36. | Margaret Hatch-Leahy                    |
| 21 | 37. | Samir Khare                             |
| 22 | 38. | Sheila Kyaw                             |
| 23 | 39. | Edmond Lee                              |
| 24 | 40. | Mark Menz                               |
| 25 | 41. | Valery Aginsky                          |
| 26 | 42. | Lloyd Cunningham                        |
| 27 | 43. | William Flynn                           |
| 28 | 44. | Frank Keiser                            |

07209/2441845.7

MATTEL, INC.'S PHASE ONE WITNESS LIST

Exhibit 29,
P. 178

| | | |
|---|---|---|
| 1 | 45. | Lee Loetz |
| 2 | 46. | Ralph Oman |
| 3 | 47. | Walter Rantanen |
| 4 | 48. | Carol Scott |
| 5 | 49. | Michael Wagner |
| 6 | 50. | John Alex |
| 7 | 51. | Bruce Stein |
| 8 | 52. | Kenneth Hollander |
| 9 | 53. | Angel Gomez |
| 10 | 54. | Robert C. Lind |
| 11 | 55. | Heather McComb |
| 12 | 56. | Nicholas Mirzoeff |
| 13 | 57. | Denise Van Patten |
| 14 | 58. | Ginger McRae |
| 15 | 59. | Christopher Palmeri |
| 16 | 60. | Jill Nordquist |
| 17 | 61. | Arnold Artavia |

**18**      <u>**Witnesses Mattel May Call In Its Case In Chief**</u>

| | | |
|---|---|---|
| 19 | 62. | Joan Gaynor |
| 20 | 63. | Rene Pasko |
| 21 | 64. | Pedro Salazar |
| 22 | 65. | Rodney Palmer |
| 23 | 66. | Richard De Anda |
| 24 | 67. | Kami Gillmore-Bryant |
| 25 | 68. | Robert Hudnut |
| 26 | 69. | Cynthia Pierce |
| 27 | 70. | David Dees |
| 28 | 71. | Wendy Feinburg |

07209/2441845.7

-4-

MATTEL, INC.'S PHASE ONE WITNESS LIST

Exhibit 29,
P. 179

| | | |
|---|---|---|
| 1 | 72. | Schuyler Bacon |
| 2 | 73. | Robert Best |
| 3 | 74. | Sandra Bilotto |
| 4 | 75. | Ann Driskill |
| 5 | 76. | Brooke Gilbert |
| 6 | 77. | Daphne Gronich |
| 7 | 78. | Sarah Halpern |
| 8 | 79. | Rebecca Harris |
| 9 | 80. | Martin Hitch |
| 10 | 81. | Hoi Hoffman-Briggs |
| 11 | 82. | Don Howarth |
| 12 | 83. | Julia Jensen |
| 13 | 84. | Fred Kawashima |
| 14 | 85. | Cecelia Kwok |
| 15 | 86. | Steven Lee |
| 16 | 87. | Victor Lee |
| 17 | 88. | David Malacrida |
| 18 | 89. | Dennis Medici |
| 19 | 90. | Amy Myers |
| 20 | 91. | Joyce Ng |
| 21 | 92. | Charles O'Connor |
| 22 | 93. | Kislap Ongchango |
| 23 | 94. | Joni Pratte |
| 24 | 95. | William Ragsdale |
| 25 | 96. | Wendy Ragsdale |
| 26 | 97. | Lon P. Ross |
| 27 | 98. | Ellis Stern |
| 28 | 99. | Maureen Tafoya |

MATTEL, INC.'S PHASE ONE WITNESS LIST

Exhibit 24,
P. 186

| | | |
|---|---|---|
| 1 | 100. | Frankie Tsang |
| 2 | 101. | Morad Zarabi |
| 3 | 102. | Chris Sesto |
| 4 | 103. | Patrica Glaser |
| 5 | 104. | Scott Gizer |
| 6 | 105. | Alisa Morganthaler-Lever |
| 7 | 106. | Douglas Wickham |
| 8 | 107. | Keith Jacoby |
| 9 | 108. | Kenneth Lockhart |
| 10 | 109. | Carmen Monteagudo |
| 11 | 110. | Jessie Ramirez |
| 12 | 111. | Neil Friedman |
| 13 | 112. | Lucy Arant |
| 14 | 113. | Michael Moore |
| 15 | 114. | Debora Middleton |
| 16 | 115. | Ernest Dutcher |
| 17 | 116. | Robert G. Wilson |
| 18 | 117. | Alan N. Goldgberg |
| 19 | 118. | William Conkle |
| 20 | 119. | Mark Kremer |
| 21 | 120. | Bryant Delgadillo |
| 22 | 121. | Larry Feldman |
| 23 | 122. | Robert Turner |
| 24 | 123. | Richard Kellner |
| 25 | 124. | Ronald Brawer |
| 26 | 125. | Carlos Gustavo Machado |
| 27 | 126. | Nick Armando Contreras |
| 28 | 127. | Mariana Trueba Almada |

MATTEL, INC.'S PHASE ONE WITNESS LIST

Exhibit 29
P. 181

| | | |
|---|---|---|
| 1 | 128. | Janine Brisbois |
| 2 | 129. | Daniel Cooney |
| 3 | 130. | Susana Kuemmerle |
| 4 | 131. | Jean Gomez |
| 5 | 132. | Janet Bryant |
| 6 | 133. | Thomas Bryant |
| 7 | 134. | Jeanne Galvano |
| 8 | 135. | Richard Irmen |
| 9 | 136. | Charnayne Brooks |
| 10 | 137. | Sarah Choi |
| 11 | 138. | Mei Wah (Sarah) Chui |
| 12 | 139. | Larry Clayton |
| 13 | 140. | Adrienne Fontenella |
| 14 | 141. | Mitchell Kamarck |
| 15 | 142. | Yim Chong Lo |
| 16 | 143. | Ron Longsdorf |
| 17 | 144. | Eli Makabi |
| 18 | 145. | Susan G. McBride |
| 19 | 146. | Colleen O'Higgins |
| 20 | 147. | Kumi Croom |
| 21 | 148. | Julia Marine |
| 22 | 149. | Shirin Salemnia |
| 23 | 150. | Richard Sandham |
| 24 | 151. | Aileen Storer |
| 25 | 152. | Stephen Tarmichael |
| 26 | 153. | Ben Ton |
| 27 | 154. | Evelyn Viohl |
| 28 | 155. | Spencer Woodman |

MATTEL, INC.'S PHASE ONE WITNESS LIST

Exhibit 29,
P. 182

| | | |
|---|---|---|
| 1 | 156. | Milton Zablow |
| 2 | 157. | Joe Franke |
| 3 | 158. | Larry McFarland |
| 4 | 159. | Maureen Mullen Chianese |
| 5 | 160. | Tina Patel |
| 6 | 161. | Matt Bousquette |
| 7 | 162. | Joe Tiongco |
| 8 | 163. | Mercedeh Ward |
| 9 | 164. | Alan Kaye |
| 10 | 165. | Theresa Newcomb |
| 11 | 166. | Paul Warner |
| 12 | 167. | Helene Bartels |
| 13 | 168. | Traci Feldman |
| 14 | 169. | Michael Hebden |

DATED:  April 1, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: Jon D. Corey  JB
Jon D. Corey
Attorneys for Plaintiff Mattel, Inc.

MATTEL, INC.'S PHASE ONE WITNESS LIST

07209/2441845.7

Exhibit 29,
P. 183

# PROOF OF SERVICE

1         I am employed in the County of Los Angeles, State of California.  I am over

the age of eighteen years and not a party to the within action; my business address is

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

        On April 1, 2008, I served true copies of the following documents described

as: **MATTEL, INC.'S CORRECTED PHASE ONE WITNESS LIST** on the

parties in this action as follows:

| | |
|---|---|
| Thomas J. Nolan, Esq. | Mark E. Overland, Esq. |
| **Skadden, Arps, Slate, Meagher & Flom LLP** | David C. Scheper, Esq. |
| 300 South Grand Avenue, Suite 3400 | Alexander H. Cote, Esq. |
| Los Angeles, CA 90071 | **Overland Borenstein Scheper & Kim, LLP** |
| 'tnolan@skadden.com' | 300 South Grand Avenue, Suite 2750 |
| | Los Angeles, CA 90071 |
| | |
| John W. Keker, Esq. | 'moverland@obsklaw.com' |
| Michael H. Page, Esq. | |
| Christa M. Anderson, Esq. | |
| **Keker & Van Nest, LLP** | |
| 710 Sansome Street | |
| San Francisco, CA 94111 | |
| | |
| 'MWerdegar@kvn.com' | |

      **[X]  BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from monicaascarrunz@quinnemanuel.com on April 1, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es).  The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

      Executed on April 1, 2008, at Los Angeles, California.

                       Tamar Buchakjian

07209/2456597.1761892

471320.2

-3-

Case No. CV 04-9049 SGL (RNBx)

PROOF OF SERVICE

Exhibit 29 ,
P. 184

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On April 1, 2008, I served true copies of the following documents described as: **MATTEL, INC.'S CORRECTED PHASE ONE WITNESS LIST** on the parties in this action as follows:

Thomas J. Nolan, Esq.
**Skadden, Arps, Slate,**
**Meagher & Flom LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071

[X]    **PERSONAL:**  By personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on April 1, 2008, at Los Angeles, California.

_BRIAN SHORE_

07209/2456597.1761897
47320.2

-2-

Case No. CV 04-9049 SGL (RNBx)

PROOF OF SERVICE

Exhibit 29,
P. 185

**Exhibit 30**

1 | Hon. Edward A. Infante (Ret.)
JAMS
2 | Two Embarcadero Center
Suite 1500
3 | San Francisco, California 94111
Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,

CASE NO. CV 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

13 |

14 | Plaintiff,

15 | v.

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

16 | MATTEL, INC., a Delaware corporation,

17 | Defendant.

**ORDER GRANTING THIRD-PARTY
MATTHEW BOUSQUETTE'S
MOTION TO QUASH SUBPOENA;
DEEMING MOOT MATTEL'S
MOTION FOR PROTECTIVE ORDER
RE: MATTHEW BOUSQUETTE**

18 |

19 | CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and

20 | MGA ENTERTAINMENT, INC. v. MATTEL,
INC.

21 |

22

23

24 | On March 27, 2008, non-party Matthew Bousquette ("Bousquette") submitted a "Motion

25 | to Quash the Subpoena Seeking Deposition of Matthew Bousquette; or, in the Alternative, Motion

26 | for a Protective Order."  That same day, Mattel, Inc. ("Mattel") submitted a separate "Motion for

27 | Protective Order re: Matthew Bousquette."  On April 3, 2008, MGA Entertainment, Inc., Isaac

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit 30,
P. 186

1

1   Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively

2   "MGA") submitted a joint opposition to both motions.  On April 8, 2008, Bousquette and Mattel

3   submitted separate reply briefs.  Pursuant to Paragraph 5 of the Stipulation and Order for

4   Appointment of a Discovery Master, the Discovery Master finds it appropriate to decide the

5   motions without oral argument.

6           On March 16, 2008, MGA's process server personally served Bousquette in Palm Springs.

7   The subpoena, which was issued by the Central District of California, called for Bousquette to

8   appear for deposition on March 28, 2008, in Palm Springs, California.

9           Bousquette claims that he lives and works in Illinois, and therefore the subpoena must be

10  quashed or modified under Rule 45(c)(3)(A)(ii), Fed.R.Civ.P.  Alternatively, Bousquette seeks a

11  protective order pursuant to Rules 26(c), 45(c)(1) and 45(c)(3)(A)(i), Fed.R.Civ.P., to ensure that

12  his deposition proceeds at a time and a location that will not cause him unreasonable and

13  unnecessary inconvenience.  Mattel contends that Bousquette's deposition should not proceed

14  unless and until MGA's unfair competition document production is substantially complete.

15          MGA disputes whether Bousquette resides and works in Illinois based upon the following:

16  Bousquette owns a residence in Palm Springs; Bousquette claims a "homeowners exemption"

17  from property taxes for a residence he owns in Palm Springs; Bousquette is registered to vote in

18  Riverside County, California; Bousquette owns and operates a business in California called

19  "MCB Prop" or "MCB Properties LLC";  MCB Properties owns several properties in Palm

20  Springs and Los Angeles; other publicly available databases list an additional address for

21  Bousquette in Irvine, California, indicating that it is current through at least February 2008; and

22  Bousquette or his business are listed as the owners of at least three vehicles registered in

23  California in 2007.  In response to Mattel's motion, MGA contends that its document production

24  with respect to Bousquette is substantially complete, and therefore there is no basis for postponing

25  Bousquette's deposition.  Lastly, MGA requests that the court impose $25,000 in sanctions against

26  Bousquette, Mattel and their counsel for purportedly making false statements to the court.

27          Rule 45 of the Federal Rules of Civil Procedure provides, in pertinent part, that the court

28

1   must quash or modify a subpoena that "requires a person who is neither a party nor a party's

2   officer to travel more than 100 miles from where that person resides, is employed, or regularly

3   transacts business in person." Fed.R.Civ.P. 45(c)(3)(A)(ii). In this case, Bousquette submitted a

4   declaration under penalty of perjury in which he states unequivocally that he resides and works in

5   Itasca, Illinois. Bousquette Decl., ¶2. Bousquette explains that he has maintained his permanent

6   residence in Itasca for more than a year and intends to file his 2007 federal and state tax returns as

7   a resident of Illinois. Id. He also states that he presently has no intention of changing his

8   residence and expects to remain a resident of Illinois indefinitely. Id. Further, Bousquette

9   explains that although he owns several properties in California and visits California regularly, his

10  primary residence is now Illinois. Bousquette also states, "I do not reside or regularly transact

11  business in person within 100 miles of Palm Springs, California." Id. at ¶7. The information

12  MGA collected regarding Bousquette's various ties to California is not necessarily inconsistent

13  with and does not discredit the representations made by Bousquette.

14       Based upon Bousquette's representations that he lives and works in Illinois, Bousquette's

15  motion to quash the subpoena pursuant to Rule 45(c)(3)(A)(ii), Fed.R.Civ.P., is granted. Mattel's

16  motion for a protective order is deemed moot. MGA's request for sanctions is denied.[1]

17       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

18  Master, Mattel shall file this Order with the Clerk of Court forthwith.

19

20

21  Dated: April 22, 2008

22                                   HON. EDWARD A. INFANTE (Ret.)
                                     Discovery Master
23

24

25

26

27  [1] Nothing in this Order is intended to preclude MGA from seeking Bousquette's deposition during Phase 2
    discovery, if appropriate.

28

Bryant v. Mattel, Inc.,                      Exhibit 30 ,                                   3
CV-04-09049 SGL (RNBx)                        P. 198

# Exhibit 31

12-08-2006   02:58pm   From-QUINN EMANUEL                    2136240643              T-707   P.003/010   F-346

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
       Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
       Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemnauel.com)
   865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100
7   Attorneys for Mattel, Inc.
8   [Additional counsel listed on following page]

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12   CARTER BRYANT, an individual,         )   Case No. CV 04-09049 SGL (RNBx)
                                           )
13                    Plaintiff,           )   Consolidated with
                                           )   Case No. CV 04-09059
14          v.                             )   Case No. CV 05-02727
                                           )
15   MATTEL, INC., a Delaware              )   STIPULATION FOR APPOINTMENT
   corporation,                            )   OF A DISCOVERY MASTER; AND
16                                         )
                      Defendant.           )   [PROPOSED] ORDER
17                                         )
                                           )   Discovery Cutoff Date:  Not Set
18                                         )   Trial Date:  Not Set

19

20

21

22

23

24

25

26

27

28

Exhibit 31 ,
P. 189

Case No. CV 04-09049 SGL (RNBx)
STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1  LITTLER MENDELSON
       Robert F. Millman (Bar No. 062152)
2      Douglas A. Wickham (Bar No. 127268)
       Keith A. Jacoby (Bar No. 150233)
3  2049 Century Park East, 5th Floor
   Los Angeles, California 90067-3107
4  Telephone:  (310) 553-0308
   Facsimile:  (310) 553-5583
5
6  Attorneys for Carter Bryant

   O'MELVENY & MYERS LLP
7      Diana M. Torres (Bar No. 162284)
   400 S. Hope Street
8  Los Angeles, California 90017
   Telephone:  (213) 430-6000
9  Facsimile:  (213) 430-6407

10  O'MELVENY & MYERS LLP
       Dale Cendali
11  Times Square Tower
   7 Times Square
12  New York, NY 10036

13  CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
       Patricia Glaser (Bar No. 55668)
14  10250 Constellation Boulevard - 19th Floor
   Los Angeles, CA 90067
15  Telephone: (310) 553-3000
   Facsimile: (310) 556-2920
16
17  Attorneys for MGA Entertainment, Inc.

18

19

20

21

22

23

24

25

26

27

28
                    Exhibit  31 ,
                    P. 190

1      WHEREAS, the parties are in agreement that a discovery master should be

2   appointed in this matter to resolve any discovery disputes and to minimize the

3   burden on the Court; and

4      WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante

5   (Ret.), and he has agreed to serve as a discovery master in this matter;

6      NOW, THEREFORE, to facilitate the fair and efficient completion of pre-

7   trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,

8   Inc., by and through their respective counsel of record, hereby stipulate and agree as

9   follows:

10      1.    The Discovery Master shall be appointed to assure and provide cost-

11   effective discovery and to minimize the burden of discovery disputes upon the

12   Court.  Any and all discovery motions and other discovery disputes in the above

13   captioned action shall be decided by a master ("Discovery Master") pursuant to

14   Federal Rule of Civil Procedure 53.  Any motions currently pending before

15   Magistrate Judge Block shall be transferred to the Discovery Master.  The moving

16   party shall provide to the Discovery Master all papers associated with each pending

17   motion.

18      2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His

19   business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA

20   94111.

21      3.    Judge Infante shall serve as the Discovery Master until all issues herein

22   have been finally disposed of or determined, or until he shall withdraw in

23   accordance with applicable law.  If at any time he becomes unable to serve as the

24   Discovery Master, the parties shall confer to present an alternative agreed-upon

25   designee to the Court.  In the event that the parties cannot agree to an alternate

26   designee, then the Court shall appoint a Discovery Master.

27      4.    The Discovery Master shall have the authority to set the date, time, and

28   place for all hearings determined by the Discovery Master to be necessary; to

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

Exhibit 31

12-08-2006   02:58pm   From-QUINN EMANUEL                    2136240643            T-707   P.006/010   F-346

1  preside over hearings (whether telephonic or in-person); to take evidence in
2  connection with discovery disputes; to issue orders resolving discovery motions
3  submitted to the Discovery Master; to conduct telephonic conferences to resolve
4  discovery disputes arising during depositions; to issue orders awarding non-
5  contempt sanctions, including, without limitation, the award of attorney's fees, as
6  provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and
7  recommendations, as appropriate.
8       5.     All discovery disputes shall be resolved by motion (except those arising
9  during a deposition which the Discovery Master determines can be resolved by
10 telephonic conference during the deposition).  The moving party shall first identify
11 each dispute, state the relief sought, and identify the authority supporting the
12 requested relief in a meet and confer letter that shall be served on all parties by
13 facsimile or electronic mail.  The parties shall have five court days from the date of
14 service of that letter to conduct an in-person conference to attempt to resolve the
15 dispute.  If the dispute has not been resolved within five court days after such
16 service, the moving party may seek relief from the Discovery Master by formal
17 motion or letter brief, at the moving party's option.  The opposing party shall have
18 five court days from the date of service of the motion or letter brief to submit a
19 formal opposition or response.  Any reply brief or letter brief shall be served within
20 three court days from the date of service of a formal opposition or response.  The
21 hearing on the motion shall take place within five court days of the service of any
22 reply brief or letter unless (a) the parties agree to another hearing date or agree that
23 no hearing is necessary; (b) the Discovery Master determines that no hearing is
24 necessary; or (c) the Discovery Master is not available, in which case the hearing
25 shall take place on the Discovery Master's first available date.  The foregoing shall
26 not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from
27 seeking the Discovery Master's immediate resolution of a dispute or resolution of a
28 dispute upon shortened time upon a showing of good cause why a party would be

Exhibit  31

1 | prejudiced absent prompt resolution. Service of any document by fax or electronic

2 | mail prior to 6:00 p.m. shall constitute service on that day.

3 |      6.     The Discovery Master's orders resolving discovery disputes, reports, or

4 | recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a

5 | Magistrate Judge of the United States District Court. The Discovery Master shall

6 | file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve

7 | the parties within five court days of his/her decision on a matter.

8 |      7.     A court reporter shall transcribe any hearing or other proceeding before

9 | the Discovery Master.

10 |      8.     The cost of any proceeding before the Discovery Master, including the

11 | fees of the Discovery Master, the fees of court reporters who transcribe hearings or

12 | other proceedings before the Discovery Master, and the fees of any other person

13 | necessary to the efficient administration of the proceeding before the Discovery

14 | Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,

15 | Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,

16 | the Discovery Master Orders otherwise. By agreeing to share costs among the

17 | parties, no party waives its right to seek recovery or reimbursement for such costs

18 | from any other party.

19 |      9.     The Discovery Master shall be compensated according to his regular

20 | hourly rate of $750.

21 |      10.    Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery

22 | Master shall proceed with all reasonable diligence.

23 |      11.    Based on an affidavit filed by Hon. Edward A. Infante pursuant to

24 | 28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not

25 | aware that he has a relationship to the parties, to counsel, to the action, or to the

26 | Court that would require disqualification of a judge under 28 U.S.C. § 455, and

27 | based thereon the parties expressly waive any ground for disqualification disclosed

28 | therein of Hon. Edward A. Infante to serve as master in these proceedings.

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

Exhibit 31

12-08-2006  02:59pm  From-QUINN EMANUEL                2136240643              T-707  P.006/010  F-346

12.   The Discovery Master shall not have ex parte communications with ~~the~~
~~Court,~~ a party or counsel.

13.   The Discovery Master shall preserve and maintain all documents and
materials submitted by the parties as well as all orders, reports, and
recommendations issued by the Discovery Master.  These documents, materials,
orders, reports and recommendations shall be the record of the Discovery Master's
activities, and shall be maintained in chronological order until the Discovery Master
is informed by the parties that all issues herein have been finally disposed of and
determined.

14.   The Discovery Master is hereby authorized to receive and consider
information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-
ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective
Order.  The Discovery Master agrees to be bound by the January 4, 2005 Order.

15.   All third parties subject to discovery requests or deposition in this
litigation shall be bound by the terms of this Stipulation and Order.

Dated: November 20, 2006              O'MELVENY & MYERS LLP

                                      By: _____
                                           Diana Torres
                                           Attorneys for MGA Entertainment, Inc.

Dated: November 29, 2006              LITTLER MENDELSON

                                      By: _____
                                           Douglas A. Wickham
                                           Attorneys for Carter Bryant

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

-6-

Exhibit 31,
P. 194

1    Dated: ~~November~~ December 4, 2006          QUINN EMANUEL URQUHART
                                                   OLIVER & HEDGES, LLP
2

3                                          By: _Jon D. Corey_
                                               Jon D. Corey
4                                              Attorneys for Mattel, Inc.

5

6                                        **ORDER**

7        The foregoing Stipulation for Appointment of a Discovery Master is SO

8    ORDERED *as modified.*

9

10   Dated:  _12-6-06._              _S G Larson_

11                                   Hon. Stephen G. Larson
                                     United States District Court Judge
12

13

14                       **CONSENT OF DISCOVERY MASTER**

15       If appointed by the Court, I, the undersigned, consent to serve as Discovery

16   Master in the above referenced proceeding consistent with this Order.

17

18   Dated:  _12-5-06_              _Edward A. Infante_

19                                  Hon. Edward A. Infante (Ret.)

20

21

22

23

24

25

26

27

28

                                         STIPULATION FOR APPOINTMENT OF A DISCOVERY
                                         MASTER AND [PROPOSED] ORDER

Exhibit _31_,
P. _195_

12-08-2006   03:00pm   From-QUINN EMANUEL                    2196240643                    T-707   P.010/010   F-346

## PROOF OF SERVICE
1013A(3) CCP Revised 5/1/88

1  STATE OF CALIFORNIA )
2  COUNTY OF LOS ANGELES )

3      I am employed in the county of Los Angeles State of California. I am over the age of 18
   and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor,
4  Los Angeles, CA 90012.

5      On December 5, 2006, I served the foregoing document described as STIPULATION
   FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER on all
   interested parties in this action.
6

7  Keith A. Jacoby, Esq.                    Diana M. Torres, Esq.
   Douglas Wickham, Esq.                    O'Melveney & Meyers
   Littler Mendelson                        400 S. Hope Street
8  A Professional Corporation               Los Angeles, CA 90071
   2049 Century Park East, 5th Floor        Phone: 213-430-6000
9  Los Angeles, California 90067-3107       Fax: 213-430-6407
   Phone: 310-553-0308
10 Fax: 310-553-5583

11

12 [ ]    By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed
          as follows:
13

14 [X]    BY MAIL

15 [ ]    I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed
          with postage thereon fully prepaid.

16 [ ]    As follows: I am "readily familiar" with the firm's practice of collection and processing
          correspondence for mailing. Under that practice it would be deposited with U.S. postal
17        service on that same day with postage thereon fully prepaid at Los Angeles, California in the
          ordinary course of business. I am aware that on motion of the party served, service is
18        presumed invalid if postal cancellation date or postage meter date is more than one day after
          date of deposit for mailing in affidavit.

19 [ ]    BY TELECOPIER By transmitting the above listed document(s) to the fax number(s)
          set forth above on this date.
20

21 [ ]    BY PERSONAL SERVICE I delivered such envelope by hand to the addressee.

22 Executed on December 5, 2006, at Los Angeles, California.

23 [ ]    (State) I declare under penalty of perjury under the laws of the State of California that the
          above is true and correct.
24 [X]    (Federal) I declare that I am employed in the office of a member of the bar of this court at
          whose direction the service was made.
25

26   Cheri Hatch
27   Print Name                            Signature
28

Exhibit 31 ,
P. 196