1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6    Los Angeles, California 90017-2543
     Telephone:  (213) 443-3000
7    Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                   EASTERN DIVISION

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 14        Plaintiff, | Consolidated with |
| 15        vs. | Case No. CV 04-09039<br>Case No. CV 05-02727 |
| 16  MATTEL, INC., a Delaware<br>corporation, | [PUBLIC REDACTED] MATTEL,<br>INC.'S NOTICE OF MOTION AND |
| 17 | MOTION OBJECTING TO<br>PORTIONS OF DISCOVERY |
| 18        Defendant. | MASTER'S APRIL 14, 2008 ORDER<br>DENYING MOTION TO COMPEL |
| 19  AND CONSOLIDATED ACTIONS | PRODUCTION IN RESPONSE TO<br>MATTEL'S FIFTH SET OF<br>REQUESTS FOR PRODUCTION; |
| 20 | AND |
| 21 | MEMORANDUM OF POINTS AND |
| 22 | AUTHORITIES |
| 23 | [Notice of Lodging and Declaration of<br>Melissa Grant filed concurrently] |
| 24 | |
| 25 | Hearing Date:      June 16, 2008<br>Time:              10:00 a.m.<br>Place:             Courtroom 1 |
| 26 | |
| 27 | **Phase 1**<br>Pre-trial Conference:   May 19, 2008<br>Trial Date:             May 27, 2008 |
| 28 | |

07209/2486799.1

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE that on June 16, 2008, at 10:00 a.m., or as
3 | soon as counsel may otherwise be heard, in the courtroom of the Honorable Stephen
4 | G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and
5 | counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to
6 | overrule portions of the Discovery Master's April 14, 2008 Order Denying Mattel's
7 | Motion to Compel Production of Documents by MGA in Response to Mattel's Fifth
8 | Set of Requests for Production; Denying MGA's Request for Sanctions.

9 |      This Motion is made pursuant to <u>Federal Rule of Civil Procedure</u> 72(a)
10 | on the grounds that the Discovery Master's Order was clearly erroneous and
11 | contrary to law.  Without waiving its rights as to the remainder of the Order, Mattel
12 | asks that the Court specifically overrule the Order as to Request Nos. 12-22, 30, 40-
13 | 41, and 47.

14 |      This Motion is based on this Notice of Motion and Motion, the
15 | accompanying Memorandum of Points and Authorities, the Notice of Lodging and
16 | attached materials filed concurrently, the Declaration of Melissa Grant and exhibits
17 | filed concurrently, and all other matters of which the Court may take judicial notice.

18 |      Counsel for the parties met and conferred regarding the issues set forth
19 | in this Motion in person on February 21, 2008, thereafter by correspondence and
20 | telephone, and by teleconference on April 24, 2008.

21 |

22 | DATED:  April 28, 2008           QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP
23 |

24 |

25 |                         By /s/ Timothy L. Alger
                           Timothy L. Alger
26 |                            Attorneys for Mattel, Inc.

27 |

28 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 2

ARGUMENT ........................................................................................................ 5

I.     THE DISCOVERY MASTER'S ORDER WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW IN FINDING THAT THE REQUESTS WERE UNDULY BURDENSOME .................................... 5

II.    THE DISCOVERY MASTER'S ORDER WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW IN FINDING THAT MGA HAS ALREADY PRODUCED THE REQUESTED INFORMATION ............................................................................................. 7

       A.   Request Nos. 12-22 Seek Relevant Documents Necessary to Show Larian's Profits as a Result of Bratz ................................................ 7

       B.   Request No. 30 Seeks Relevant Documents Necessary to Show MGA's "Capitalization" ........................................................................ 10

       C.   Request Nos. 40-41, and 47 Seek Relevant Bank Records .................. 12

CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

## Cases

Candle Corp. v. Boole & Babbage, Inc.,
  1985 WL 1087794 (C.D. Cal. 1985)...............................................8

Cram v. Electronic Data Systems Corp.,
  2007 WL 4365516 (S.D. Cal. 2007) ..............................................5

Goodman v. U.S.,
  369 F.2d 166 (9th Cir. 1966)..........................................................6

Needham v. Roho Group,
  2006 WL 517622 (E.D. Mich. 2006) ............................................7

Neilson v. Union Bank of California, N.A.,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003)..........................................8

Oakes v. Halvorsen Marine Ltd.,
  179 F.R.D. 281 (C.D. Cal. 1998) ...................................................5

Rivera v. NIBCO, Inc.,
  364 F.3d 1057 (9th Cir. 2004).........................................................6

U.S. v. Uptergrove,
  2008 WL 652119 (E.D. Cal. 2008) ................................................5

Woodfin Suite Hotels, LLC v. City of Emeryville,
  2007 WL 81911 (N.D. Cal. 2007)..................................................11

## Statutes

Fed. R. Civ. Proc. 72(a) .......................................................................5

Fed. R. Evid. 201 .................................................................................11

## Other Authorities

9th Cir. Civ. Jury Instr. 17.21 (2007) ..................................................8

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

In November 2007, Mattel served MGA with document requests seeking important categories of financial documents, including records of payments by MGA to its CEO, Isaac Larian, who has taken hundreds of millions of dollars out of the company. MGA refused to produce a single scrap of paper in response to these requests. Mattel moved to compel MGA to comply with the requests. In opposing the motion, MGA asserted to the Discovery Master that it had already produced documents providing the same information—but MGA did not identify them. In response, Mattel submitted detailed information showing exactly what MGA had produced so far, and how it was deficient.

Relying in part on MGA's representations, the Discovery Master denied Mattel's motion to compel. Judge Infante found that the requests sought relevant information, but he held that they were cumulative and duplicative of some unidentified documents MGA had already produced. Judge Infante also found that Mattel was not entitled to more documents from MGA because the requests were overbroad and burdensome. The Discovery Master's reliance on MGA's representations and failure to seriously consider the submission by Mattel establishing that MGA's assertions were false was clearly erroneous and contrary to law. Mattel asks that this Court overrule the Discovery Master's order, and to order that MGA produce the critical financial information sought by Request Nos. 12-22, 30, 40-41, and 47.

1

## Factual Background

2    The Motion to Compel.  Mattel served its Fifth Set of Requests for

3 Documents and Things on MGA on November 27, 2007 ("Requests").[1]  These

4 Requests sought, among other things, documents relating to MGA's

5 capitalization[2]—which can help establish the dates of creation and first use of Bratz

6 by MGA—and documents relating to the financial interplay between MGA and

7 Larian.[3]  On December 27, 2007, MGA served its written responses.  It objected to

8 each and every request, and refused to produce documents in response to any of

9 them.[4]

10    On the basis of the written responses, Mattel moved to compel

11 production on January 28, 2008.[5]  MGA opposed the motion on February 7, 2008.[6]

12 In its opposition, MGA alleged that the requests were cumulative and duplicative

13 because MGA had produced "tens of thousands of pages of financial documents and

14 Mr. Larian recently produced more than 50,000 pages of documents, including

15 documents showing Mr. Larian's net worth, gross income and its sources, and

16

17    [1]   Mattel, Inc.'s Fifth Set of Requests for Documents and Things to MGA

18 Entertainment, Inc., dated November 27, 2007 ("Fifth Set of Requests"), attached as

19 Exhibit 1 to the Supplemental Declaration of Melissa Grant, filed concurrently herewith.

20    [2]   Id. at e.g., Request Nos. 29-30.

    [3]   Id. at e.g., Request Nos. 12-22, 41.

21    [4]   MGA's Objections and Responses to Mattel's Fifth Set of Requests for

22 Documents and Things to MGA, dated December 27, 2007, Supp. Grant Dec., Exh.

23 2.

    [5]   Mattel Inc.'s Notice of Motion and Motion to Compel Production of

24 Documents by MGA in Response to Mattel's Fifth Set of Requests for Documents

25 and Things to MGA, dated January 28, 2008, attached as Exhibit A to the Notice of

    Lodging filed concurrently herewith.

26    [6]   MGA's Memorandum of Points and Authorities in Opposition to Mattel's

27 Motion to Compel Production of Documents by MGA in Response to Mattel's Fifth

    Set of Requests for Documents and Things to MGA, dated February 7, 2008

28 ("Opposition"), Notice of Lodging, Exh. B.

07209/2486799.1

-2-

1  pertinent banking information."  MGA also asserted that it had produced "audited

2  and unaudited quarterly and annual profit and loss statements, audited and unaudited

3  quarterly and annual statements, annual reports, general ledgers, and various other

4  MGA financial reports."[7]  In support of these assertions, MGA provided a

5  declaration by an attorney, Philip Marsh.  Mr. Marsh did not identify the produced

6  documents by Bates number, nor did he provide any other means of identifying

7  them.[8]

8          Mattel filed its Reply on February 15, 2008.[9]  In its Reply, Mattel noted

9  that MGA had not asserted that it had produced <u>all</u> responsive documents, but only

10  that it had produced <u>some</u>.[10]

11          <u>MGA's Production of Documents, and the Declaration in Support of</u>

12  <u>Mattel's Motion.</u>  MGA has produced over four million pages of documents to date,

13  over 500,000 of which were produced in 2008 alone—and virtually all of these after

14  the January 28, 2008 fact discovery cutoff.[11]  Of the nearly three million pages of

15  spreadsheets produced by MGA, about 50 percent were voluminous retailer and

16  inventory reports listing products and prices, and another 30 percent were

17  manufacturing reports.[12]  On April 11, 2008, Mattel filed a declaration by Melissa

18  Grant describing what MGA had produced so far, and how it did not respond to the

19

20     [7]  <u>Id.</u> at 13.

21     [8]  Declaration of Philip W. Marsh in Support of MGA's Memorandum of Points and Authorities in Opposition to Mattel's Motion to Compel Production of

22  Documents by MGA in Response to Mattel's Fifth Set of Requests for Documents and Things to MGA, dated February 7, 2008 (without exhibits), at ¶ 1, Notice of

23  Lodging, Exh. C.

24     [9]  Reply Memorandum of Points and Authorities in Support of Motion to Compel Production of Documents by MGA in Response to Mattel's Fifth Set of

25  Requests for Documents and Things to MGA, dated February 15, 2008, Notice of

26  Lodging, Exh. D.

   [10]  <u>Id.</u> at 10-11.

27     [11]  Supp. Grant Dec., ¶ 4.

28     [12]  Supp. Grant Dec., ¶ 5.

1 | Requests at issue.[13]  The Grant Declaration was supported by 1,300 pages of

2 | exhibits.  The same day, MGA filed a declaration in response.[14]

3 |         The April 14, 2008 Order.  On April 14, 2008, the Discovery Master

4 | issued an Order denying Mattel's Motion to Compel ("Order").[15]  The Discovery

5 | Master found that documents sought by Mattel are relevant.  (See Order at 3, 4

6 | (holding that Requests Nos. 1-11 and 23-47 "may encompass relevant documents,"

7 | and that Request Nos. 12-22 "seek relevant financial documents relating to

8 | Larian")).  Nevertheless, the Discovery Master refused to compel production on two

9 | bases.  First, the Discovery Master held that the Requests were overbroad and

10 | unduly burdensome, in part because they sought documents prior to 1999.[16]  Second,

11 | the Discovery Master ruled that the Requests were "cumulative" and "duplicative"

12 | because MGA provided numerous documents containing the same information to

13 | Mattel.[17]

14 |

---

15 | [13]  Declaration of Melissa Grant in Support of Mattel, Inc.'s Motion to Compel
16 | Production of Documents by MGA in Response to Mattel's Fifth Set of Requests for
17 | Documents and Things, dated April 11, 2008 ("Grant Dec."), Notice of Lodging, Exh. E.
18 | [14]  Declaration of Bernard Shek in Response to Declaration of Melissa Grant and
19 | in Support of MGA Defendants' Opposition to Mattel's Motion to Compel
Production of Documents in Response to Mattel's Fifth Set of Requests for
20 | Production of Documents and Things, dated April 11, 2008, Notice of Lodging, Exh. F.
21 | [15]  Order Denying Mattel's Motion to Compel Production of Documents by
22 | MGA in Response to Mattel's Fifth Set of Requests for Documents and Things;
Denying MGA's Request for Sanctions, dated April 14, 2008, Supp. Grant Dec.,
23 | Exh. 3.
24 | [16]  Order at 4, Supp. Grant Dec., Exh. 3.
[17]  Id.  After receiving this ruling, Mattel notified MGA of its intention to appeal
25 | the Order, and asked to meet and confer on the issue.  Supp. Grant Dec., Exh. 4.  At
26 | that meeting of counsel, Mattel informed MGA that it would appeal only as to
certain identified requests, and offered to narrow those requests in the hope that an
27 | appeal could be avoided.  Mattel made specific proposals for narrowing, and asked
28 | MGA for a response.  MGA rejected those proposals by e-mail on April 25, 2008.
    (footnote continued)

07209/2486799.1

1

**Argument**

2  **I.   THE DISCOVERY MASTER'S ORDER WAS CLEARLY**

3  **ERRONEOUS AND CONTRARY TO LAW IN FINDING THAT THE**

4  **REQUESTS WERE UNDULY BURDENSOME**

5        By the Stipulation and Order appointing the Discovery Master, the

6  Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings

7  should be overruled if they are "clearly erroneous or [] contrary to law." <u>Fed. R. Civ.</u>

8  <u>Proc.</u> 72(a).

9        At the threshold, the Discovery Master's Order is clearly erroneous and

10  contrary to law in that it found the Requests unduly burdensome.  MGA did not

11  establish that compliance would impose any burden at all.  For this reason alone, the

12  Order must be overturned.

13        In its opposition, MGA argued, and the Discovery Master apparently

14  accepted, that it was Mattel's obligation to show that the Requests are <u>not</u> unduly

15  burdensome.[18]  This was clearly erroneous and contrary to law.  As the Discovery

16  Master has previously held in this case, the party claiming undue burden is required

17  to prove it.[19]  This is consistent with well-settled law.  <u>See</u> <u>Oakes v. Halvorsen</u>

18  <u>Marine Ltd.</u>, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ("The party who resists

19  discovery has the burden to show that discovery should not be allowed, and has the

20  burden of clarifying, explaining, and supporting its objections."); <u>U.S. v.</u>

21  <u>Uptergrove</u>, 2008 WL 652119, *6 (E.D. Cal. 2008) (same); <u>Cram v. Electronic Data</u>

22  <u>Systems Corp.</u>, 2007 WL 4365516, *2 (S.D. Cal. 2007) (same); <u>see also</u> <u>Rivera v.</u>

23  _____

24  Supp. Grant Dec., ¶¶ 8-9; email from Bernard Shek to Timothy Alger and Randa

25  Osman, dated April 25, 2008, Supp. Grant Dec., Exh. 5.
   [18]   Opposition at 10, Notice of Lodging, Exh. B.

26  [19]   <u>See, e.g.</u>, Order Granting Mattel's Motion To Compel Production Of

27  Documents And Interrogatory Responses By MGA, dated May 16, 2007 at 12-13,
   Supp. Grant Dec., Exh. 17 ("Nor has MGA carried its burden of establishing that the

28  interrogatory is unduly burdensome . . . ").

1  NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004) (holding that it is burden of party
2  seeking protective order to "demonstrat[e] harm or prejudice that will result from
3  the discovery"); Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) ("The burden
4  of showing that a subpoena is unreasonable and oppressive is upon the party to
5  whom it is directed.").

6          Nor could MGA sustain its burden.  In most cases, Mattel did not ask
7  for all documents that refer or relate to a given topic.  Instead, Mattel asked for
8  documents "sufficient to show" the requested information.[20]  Thus, for example,
9  Mattel asked for documents sufficient to show the total salary that MGA has paid to
10 Isaac Larian,[21] or dividends paid to Isaac Larian.[22]  In those cases where Mattel
11 asked for all documents, rather than documents sufficient to show, the categories at
12 issue were narrow and appropriate.  Thus, Mattel asked for MGA's articles of
13 incorporation, or for its by-laws and amendments.[23]  Such limited categories were
14 not overbroad or unduly burdensome.

15         In any case, the fact that Mattel's requests were thorough does not give
16 MGA a "free pass" to ignore legitimate document discovery.  In effect, the
17 Discovery Master simply accepted the unsubstantiated notion that the Requests
18 would result in a lot of work for MGA, and this made them overbroad and
19 burdensome.  Of course, Mattel is in no position to know how much work would be
20 required—and that is why the law requires the responding party to establish undue
21 burden.

22         As MGA failed to make any showing on burden, the Discovery
23 Master's Order finding that such burden existed was clearly erroneous and contrary

24

25  [20] See Request Nos. 12-25, 30-46, Fifth Set of Requests, Supp. Grant Dec., Exh.
26  1.
    [21] Id. at Request No. 12.
27  [22] Id. at Request No. 15.
28  [23] Id. at Request Nos. 1-2.

1 | to law.  For this reason alone, the Discovery Master's Order should be reversed, and
2 | MGA should be ordered to produce documents responsive to the Requests.

3 | **II.     THE DISCOVERY MASTER'S ORDER WAS CLEARLY**
4 | **ERRONEOUS AND CONTRARY TO LAW IN FINDING THAT MGA**
5 | **HAS ALREADY PRODUCED THE REQUESTED INFORMATION**

6 | The Discovery Master also erred in holding that MGA had produced
7 | documents containing the information at issue, and that the Requests were therefore
8 | cumulative and duplicative.  See Needham v. Roho Group, 2006 WL 517622, *1
9 | (E.D. Mich. 2006) (overruling magistrate's order as clearly erroneous, where order
10 | incorrectly found discovery was duplicative).

11 | **A.     Request Nos. 12-22 Seek Relevant Documents Necessary to Show**
12 | **Larian's Profits as a Result of Bratz**

13 | Request Nos. 12-22 seek documents sufficient to show all forms of
14 | income that Larian or any of his family members received from MGA, including
15 | when they were made, the amounts, and the recipients.  Mattel has agreed to limit
16 | these Requests to only seek information relating to such income from 1999 to
17 | present.

18 | The Discovery Master determined that these Requests seek "relevant
19 | financial documents relating to Larian." (Order at 4.)  Indeed, there can be no
20 | dispute that these documents are relevant to multiple issues in the case.  They are
21 | necessary to show Larian's profits as a result of Bratz, a basic element of Mattel's
22 | damages claim.  Larian is a defendant in this action and subject to liability
23 | separately from MGA.  Mattel requires discovery as to his assets, in order to
24 | effectuate its right to disgorgement and punitive damages.

25 | Further, these documents are relevant to establish the knowledge
26 | element or the benefit element of Mattel's claims for Larian's aiding and abetting
27 |
28 |

1 │ Bryant's breach of fiduciary duty and duty of loyalty.[24]  Courts have held that where
2 │ a defendant has benefited as a result of another's breach, this serves as evidence that
3 │ the defendant knew of, and assisted, that breach of duty.  See Neilson v. Union Bank
4 │ of California, N.A., 290 F. Supp. 2d 1101, 1127-1128 (C.D. Cal. 2003) (noting that
5 │ in California, financial gain serves "as evidence that the aider and abettor knew of
6 │ and substantially assisted the primary violator's breach of fiduciary duty").  The
7 │ documents also are relevant to Mattel's claims for vicarious infringement, which
8 │ requires that Mattel show that Larian profited directly from the infringing activity of
9 │ MGA.[25]  See 9th Cir. Civ. Jury Instr. 17.21 (2007).  And they are more broadly
10 │ relevant to issues of bias and credibility.  Candle Corp. v. Boole & Babbage, Inc.,
11 │ 1985 WL 1087794, *7 (C.D. Cal. 1985) (finding evidence of position and
12 │ compensation of chief executive and sole shareholder of party corporation as
13 │ relevant to issue of credibility).  That is especially so since Larian falsely testified to
14 │ a federal jury in San Diego that he had earned only about $500,000 a year at MGA,
15 │ and ploughed MGA's profits back into the company.[26]

16 │         The Discovery Master refused to compel production in response to
17 │ these Requests based on MGA's conclusory assertion that it had "produced
18 │ thousands of pages of documents . . . showing Larian's net worth, gross income and
19 │ its sources, and pertinent banking information." (Order at 4.)  This was simply not
20 │ true.  In a letter from MGA's counsel, MGA identified only four spreadsheets
21 │ providing this information, W-2 forms for Larian, and several tables purporting to
22 │
23 │
24 │
───────────────
25 │  [24]  Mattel, Inc.'s Second Amended Answer and Counterclaims, dated July 12,
26 │ 2007, at 69-70, Supp. Grant Dec., Exh. 21.
   │  [25]  Id. at 53-54, Supp. Grant Dec., Exh. 21.
27 │  [26]  Excerpts of the transcript of trial in Art Attacks Ink, LLC v. MGA
28 │ Entertainment, Inc., dated May 1, 2007, at 23:1-26:5, Supp. Grant Dec., Exh. 18.

1  state the income of Isaac and Angela Larian.[27]  These spreadsheets and tables are
2  wholly inadequate.

3          For example, MGA's counsel represented that documents Bates
4  numbered MGA 3787275 – MGA 3787284 contained unidentified "banking"
5  records that sufficient to show Larian's net worth.  Those documents consist of two
6  typed lists of assets and liabilities of Isaac and Angela Larian for 2006 and 2007,
7  respectively, and a list of the name of banks without accounts or addresses and a list
8  of Bear Stearns and Merrill Lynch accounts, organized by year.[28]  The documents do
9  not indicate who created the lists and do not identify the sources of information.[29]
10  In some cases, they are illegible.  Several spreadsheets have replaced dates with
11  "#####" in many rows.[30]

12          Significantly, when Larian was asked in deposition about these
13  documents and whether he could verify them, he testified that he could not.  He
14  claimed to have not seen them before and professed not to know if they were
15  accurate.[31]  In previous deposition testimony, MGA's Rule 30(b)(6) witness, Lisa
16  Tonnu, testified that she did not handle Mr. Larian's personal finances and taxes,
17  and that she simply sends financial documents to Larian's personal accountants at
18  Moss Adams.[32]  So, neither Larian nor MGA have confirmed the source, accuracy,

19

20

---

21  [27]  Letter from Amy S. Park to Timothy L. Alger, dated March 24, 2008, at 4,
22  Supp. Grant Dec., Exh. 6. Ms. Park's letter also cited to a bates range including the
23  partial transcript of what appears to be a foreign proceeding.  Mattel assumes this
    citation was made in error.
24  [28]  Supp. Grant Dec. at ¶ 11, Exh. 7.
25  [29]  Id.
    [30]  See, e.g., MGA 4045123, MGA 4045337-4045347, Supp. Grant Dec., Exh. 8.
26  [31]  Excerpts of the Deposition Transcript of Isaac Larian, dated March 26, 2008
    ("Larian Depo. Tr.") at 498:11-509:10, Supp. Grant Dec., Exh. 9.
27  [32]  Excerpts of the Deposition Transcript of Lisa Tonnu, dated January 17, 2008
28  ("Tonnu Depo. Tr.") at 808:4-20, Supp. Grant Dec., Exh. 10.

1 | or completeness of the documents.  MGA and Larian are trying to hide the ball
2 | while misleading the Discovery Master as to what they did in discovery.

3 | Moreover, these documents conflict with each other and appear to be
4 | incomplete.  For example, two of the spreadsheets cited by MGA show that Larian
5 | ███████████████████████████████████.[33]  Yet another document
6 | purporting to provide Larian's income for the year shows ████████████
7 | █████████.[34]  Though these documents should provide the same or similar
8 | numbers for Larian's income, they vary by more than ████████████████
9 | ██████████.

10 | Given that the documents produced by MGA and Larian are unverified,
11 | un-audited, and un-sourced, and the fact that Larian himself refuses to confirm their
12 | accuracy and completeness, they are wholly insufficient to provide the information
13 | Mattel seeks – and which the Discovery Master has ruled is relevant and
14 | discoverable.  The Discovery Master's Order should be overruled, and MGA ordered
15 | to produce documents in response to Requests Nos. 12-22.

16 | **B.** **Request No. 30 Seeks Relevant Documents Necessary to Show**
17 | **MGA's "Capitalization"**

18 | Request No. 30 seeks documents sufficient to show how MGA has
19 | been capitalized.[35]  Mattel has agreed to further limit this Request to seek only
20 | information regarding capitalization upon incorporation, and later capitalization for
21 | the purposes of the creation, development, launch, licensing, marketing and sale of
22 | Bratz, and only from MGA Entertainment, Inc. and MGA Hong Kong from 1999 to
23 | 2002.

24 |

25 | [33] Supp. Grant Dec., ¶ 17, Exhs. 11, 12.
26 | [34] Supp. Grant Dec., ¶ 17, Exh. 7.
27 | [35] Capitalization is the process by which a corporation receives an initial
contribution of cash or other assets, and includes the value of the assets that remain
28 | in the company at the end of the year.

1          These documents are important to show the investments MGA made in

2 the creation and development of Bratz.  MGA was a small company before it began

3 making Bratz, and the manufacturing of these dolls and accessories was, according

4 to MGA, a massive undertaking.[36]  The dates by which MGA was capitalized with

5 extra income to produce the Bratz line will help establish when preparations were

6 being made for production of the dolls, which in turn can show when MGA and

7 Bryant began working together on Bratz—a key issue for trial.

8          Moreover, documents showing how MGA was originally incorporated

9 are relevant as impeachment evidence.  At trial, Mattel expects defendants to

10 attempt to argue that Mattel is a large corporation using its economic might to stifle

11 competition, while MGA is a small company that thrived solely as a result of the

12 hard work of its owner, Isaac Larian, who arrived here as an immigrant with no

13 money.  Indeed, Isaac Larian has already made such claims to newspapers: "I came

14 here at the age of 17 with $350 and a blanket and a one-way ticket."[37]  Documents

15 showing how MGA was capitalized can refute this claim, and show that Larian

16 started MGA with outside help, as his brother Farhad Larian has testified.[38]  They

17 are thus valuable evidence that will allow Mattel to prevent defendants from

18 creating a false narrative at trial.

19

20

---

21  [36] See, e.g., Expert Report of Paul K. Meyer, dated February 11, 2008, at 12,

22 Supp. Grant Dec., Exh. 19 (citing conversations with MGA representatives).

    [37] Norma Meyer, Doll wars, Makers of Barbie and rival Bratz not playing nice

23 in battle for supremacy, San Diego Union Tribune, June 5, 2005, available at

24 http://www.signonsandiego.com/uniontrib/20050605/news_1c05doll.html, Supp.

    Grant Dec., Exh. 13.  This article was also produced by MGA at Bates number

25 MGA 0071557.  The Court may take judicial notice of this article pursuant to Fed.

26 R. Evid. 201.  See Woodfin Suite Hotels, LLC v. City of Emeryville, 2007 WL

    81911, *3 (N.D. Cal. 2007).

27  [38] Deposition Transcript of Farhad Larian, dated February 4, 2008, at 202:18-

28 204:2, Supp. Grant Dec., Exh. 20.

1           MGA has not produced <u>any</u> documents in response to this Request.

2   MGA conceded this fact in a letter from counsel, which said that the Request was

3   purportedly improper, and refused to produce on that basis.[39]  The Discovery Master

4   therefore erred in denying Mattel's motion as to Request No. 30.

5         **C.**    <u>**Request Nos. 40-41 and 47 Seek Relevant Bank Records**</u>

6           Request Nos. 40-41 and 47 seek bank statements for accounts owned

7   by MGA.  Mattel has agreed to limit these Requests to those bank accounts which

8   were used for Bratz business from 1999 to the present.

9           Such bank statements can show when MGA took particular steps in the

10  creation and development of Bratz, including helping to show when MGA first

11  started work on Bratz.  They are also important for Mattel's damages claims, to

12  show MGA's revenues and profits from Bratz.  Finally, these documents are

13  necessary because they were created by an independent third party and can serve to

14  verify, refute, or expand upon the information provided in MGA's own records.

15          As discussed above, MGA's records are wholly inadequate.  Indeed,

16  Mattel's investigation to date shows that ███████████████████████████

17  ████████████████████████████████.[40]  Yet those spreadsheets

18  referenced by MGA, Exhibits 1354 and 1364, only show ████████████

19  █████████████████████████.[41]  They do not provide records

20  regarding any of the other accounts, including ████████████████████

21  ████████████████████████████████████████████, and

22  would be a source to confirm MGA's costs of production for Bratz.  Similarly,

23  Larian testified at his deposition in the <u>Art Attacks</u> litigation that ████████

24

25     [39]   Letter from Amy S. Park to Timothy L. Alger, dated March 24, 2008, at 4,

26  Supp. Grant Dec., Exh. 6.  Ms. Park's letter also cited to a Bates range including the

27  partial transcript of what appears to be a foreign proceeding.
   [40]   Supp. Grant Dec., ¶ 20, Exhs. 14-15.

28     [41]   <u>See</u> Supp. Grant Dec., Exhs. 11-12.

-12-

1     ███████████████████████████████,[42] but MGA's records make

2 no reference to ███████████.

3         MGA has not produced bank statements, and as discussed above, has

4 not provided any documents containing the information Mattel seeks. MGA

5 conceded this fact in a letter from counsel, which stated that the requested

6 documents sought irrelevant categories of information.[43] Thus, again, the Discovery

7 Master erred in holding that these Requests were duplicative or cumulative. MGA

8 has not produced documents responsive to these requests at all.

9                              **Conclusion**

10         For the foregoing reasons, Mattel respectfully requests that its Motion

11 be granted in its entirety, and that MGA be ordered to produce the following

12 documents:

13            •     All documents responsive to Request Nos. 12-22, limited to the

14                 years 1999 to the present.

15            •     All documents responsive to Request No. 30, limited to

16                 capitalization upon incorporation, and later capitalization for the

17                 purposes of the creation, development, launch, licensing,

18                 marketing and sale of Bratz, and only from MGA Entertainment,

19                 Inc. and MGA Hong Kong, from 1999 to 2002.

20

21

22

23

24

25     [42]    Excerpts of the deposition of Isaac Larian in <u>Art Attacks LLC v. MGA</u>

26 <u>Entertainment, Inc.</u>, dated December 15, 2005, at 184:19-185:14, Supp. Grant Dec., Exh. 16.

27     [43]    Letter from Amy S. Park to Timothy L. Alger, dated March 24, 2008, at 6,

28 Supp. Grant Dec., Exh. 6.

1       •   All documents responsive to Request Nos. 40-41, and 47, for

2         those bank accounts which were used for Bratz business from

3         1999 to the present.

4

5   DATED:  April 28, 2008        QUINN EMANUEL URQUHART OLIVER &
                               HEDGES, LLP

6

7                            By /s/ Timothy L. Alger

8                              Timothy L. Alger
                             Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28