# EXHIBIT 3

1    Hon. Edward A. Infante (Ret.)
     JAMS
2    Two Embarcadero Center
     Suite 1500
3    San Francisco, California 94111
     Telephone:    (415) 774-2611
4    Facsimile:    (415) 982-5287

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13              Plaintiff,

14         v.                               Consolidated with
                                            Case No. CV 04-09059
15   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                  **ORDER DENYING MATTEL'S
                                            MOTION TO COMPEL PRODUCTION
17                                          OF DOCUMENTS BY MGA IN
                                            RESPONSE TO MATTEL'S FIFTH
18                                          SET OF REQUESTS FOR
                                            DOCUMENTS AND THINGS;
19                                          DENYING MGA'S REQUEST FOR
                                            SANCTIONS**
20
     CONSOLIDATED WITH
21   MATTEL, INC. v. BRYANT and
     MGA ENTERTAINMENT, INC. v. MATTEL,
22   INC.

23

24                          I. INTRODUCTION

25         On January 28, 2008, Mattel, Inc. ("Mattel") submitted a Motion to Compel Production of

26   Documents by MGA Entertainment, Inc. ("MGA") in Response to Mattel's Fifth Set of Requests

27   for Documents and Things.  Mattel's Fifth Set of Requests consists of 47 requests for documents

28

Exhibit 3
Page 108

1   relating to MGA's corporate governance and structure and relating to the financial relationship

2   between MGA and Isaac Larian ("Larian").  On February 7, 2008, MGA submitted an opposition,

3   and on February 15, 2008, Mattel submitted a reply.  On April 11, 2008, at 3:59 a.m., Mattel

4   submitted the declaration of Melissa Grant in further support of its Motion, which attaches 28

5   exhibits and totals well over 800 pages.  The motion was heard on April 11, 2008.  A few hours

6   after the hearing, MGA submitted the declaration of Bernard Shek in response to Mattel's

7   declaration.

8       Mattel contends that the requested documents are relevant to issues of damages, joint and

9   several liability and enforcement of judgments.  Further, Mattel contends that MGA's and Larian's

10  financial document productions are, in many respects, inadequate.  See Grant Decl. submitted

11  April 11, 2008.  Among other things, Mattel contends that the following documents and

12  information are missing from MGA's production:  identity of the preparer or source of

13  information for the lists of assets and liabilities of Larian and his wife for 2006 and 2007, and the

14  underlying source information for the lists; the identity of the preparer or source of information

15  for the list of banks (including the list of Bear Stearns and Merrill Lynch accounts), and the

16  account numbers and addresses for the listed institutions; detailed "general ledgers" for 1999 and

17  2000; underlying documentation for MGA's general ledgers; underlying information for the

18  entries listed on the 1999 and 2000 "Historical Trial Balance Summaries"; Bratz-specific

19  information regarding individual vendor cost incurred and product development; specific bank

20  information, including statements of accounts, cancelled checks, wire transfers, expense reports,

21  receipts, dividend distribution records, payment vouchers, documentation of salary; shareholder

22  records; the identity of the preparer or source of information for the various spreadsheets and

23  "check" rosters, the underlying source data for these documents, the date they were created, and

24  where they were stored; the source and use of the millions of dollars of wire transfers to and from

25  MGA's Union Bank account that are reflected in the bank records produced by Union Bank; the

26  bank records from other banks that appear to have conducted Bratz business with MGA;

27  comprehensive and verifiable unaudited "profit & loss" statements for 1999 through 2004;

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

Exhibit 3
Page 109

1 | information regarding corporate formation, governance, shareholder interests and distributions;
2 | and information regarding the rights and interests that MGA's subsidiaries have in Bratz.  Grant
3 | Decl.

4 |     MGA counters that Mattel has made only generalized assertions of relevancy, which
5 | MGA contends are insufficient to justify each of the requests at issue.  MGA also contends that
6 | the requests at issue are objectionable because they are overbroad, unduly burdensome, and
7 | duplicative or cumulative of other discovery Mattel has already sought and received.

8 | II. DISCUSSION

9 |     Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
10 | discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
11 | party."  Fed.R.Civ.P. 26(b)(1).  The court shall, however, limit the frequency or extent of use of
12 | the discovery methods if the court determines that (i) the discovery sought is unreasonably
13 | cumulative or duplicative, or is obtainable from some other source that is more convenient, less
14 | burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by
15 | discovery in the action to obtain the information sought; or (iii) the burden or expense of the
16 | proposed discovery outweighs its likely benefit, taking into account the needs of the case, the
17 | amount in controversy, the parties' resources, the importance of the issues at stake in the
18 | litigation, and the importance of the proposed discovery in resolving the issues.  Fed.R.Civ.P.
19 | 26(b)(2)(C).

20 |     Mattel's motion is denied as to Request Nos. 1-11 and 23-47.  Although the requests may
21 | encompass relevant documents, they are overbroad and unduly burdensome, taking into
22 | consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.  These requests are
23 | overbroad because, among other things, Mattel defines "YOU," "YOUR" and "MGA" to mean
24 | "all current or former subsidiaries, divisions, AFFILIATES [defined as 'any and all corporations,
25 | proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly
26 | or indirectly, in whole or in part, own or control, are under common ownership or control with, or
27 | are owned or controlled by a PERSON, party, or entity, including without limitation each parent,

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit 3
Page 110

1 | subsidiary and joint venture of such PERSON, party, or entity'], predecessors-in-interest and

2 | successors-in-interest."  Jih Decl., Ex. 1.

3 |   Many requests are also overbroad and unduly burdensome because they seek documents

4 | from before 1999.  See Request Nos. 4-7.  Mattel has made no attempt to place a reasonable

5 | temporal scope on its requests.  Many requests are also cumulative, duplicative, and unduly

6 | burdensome because they seek documents previously requested and received by Mattel.  See e.g.

7 | MGA's Objections and Responses to Mattel's Fifth Set, p. 13.  Although Mattel has identified

8 | some purported deficiencies in MGA's production of financial documents, these purported

9 | deficiencies do not justify the substantial breadth and burden of the discovery Mattel now seeks.

10 |   Mattel's motion is also denied as to Request Nos. 12-22.  Although these requests seek

11 | relevant financial documents relating to Larian, they are overbroad and unduly burdensome.

12 | Furthermore, Mattel has already propounded and received substantial discovery seeking the same

13 | or similar information.  See MGA's Objections and Responses to Mattel's Fifth Set, p. 44.  By

14 | MGA's estimation, MGA has produced tens of thousands of pages of documents, including

15 | documents showing Larian's net worth, gross income and its sources, and pertinent banking

16 | information.  Although Mattel has identified some purported deficiencies in the production of

17 | Larian's financial documents, these purported deficiencies do not justify the broad discovery

18 | Mattel now seeks.

19 |          III. CONCLUSION

20 |   For the reasons set forth above, Mattel's motion to compel is denied.  MGA's request for

21 | sanctions is denied.  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a

22 | Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

23 |

24 | Dated: April 14, 2008

25 |            HON. EDWARD A. INFANTE (Ret.)

             Discovery Master

26 |

27 |

28 |

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 14, 2008, I served the attached: (1) ORDER GRANTING IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION; (2) ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS BY MGA ENTERTAINMENT, INC.; DENYING REQUEST FOR SANCTIONS; AND (3) ORDER DENYING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MAGA IN RESPONSE TO MATTEL'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS; DENYING MGA'S REQUEST FOR SANCTIONS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Larry W. McFarland | Keats, McFarland & Wilson | lmcfarland@kmwlaw.com |
| Christian Dowell | Keats, McFarland & Wilson | cdowell@kmwlaw.com |
| Cheryl Plambeck, Esq. | Davis & Gilbert LLP | cplambeck@dglaw.com |

Exhibit 3
Page 112

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 14, 2008, at San Francisco, California.

Sandra Chan

Exhibit 3
Page 113

# EXHIBIT 4

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato—ku, Tokyo 107-0052, Japan
+813 5561-1711
Facsimik: +81 3 5561-1712

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**    April 22, 2008

**NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Amy Park, Esq.* <br> Skadden, Arps, Slate, Meagher & Flom LLP (PAO) | 650.470.4511 | 888.329.6334 |
| *cc: Mark E. Overland, Esq* <br> Overland Borenstein Scheper & Kim, LLP | 213.613.4655 | 213.613.4656 |
| *cc: Michael H. Page, Esq.* <br> Keker & Van Nest, LLP | 415.391.5400 | 415.397.7188 |

**FROM:**     Timothy L. Alger
213.443.3223
timalger@quinnemanuel.com

**RE:**    *Mattel, Inc. v Bryant, et al.*

FAXED
APR 2 2 2008

**MESSAGE:**

| 07209/2442763.1 | | | | |
|---|---|---|---|---|
| CLIENT # | 7209 | ROUTE/ RETURN TO: | *ALBERT VILLAMIL/10TH FLOOR* | ☐ CONFIRM FAX <br> ☒ INCLUDE CONF. REPORT |
| OPERATOR: | *Misalla* | | CONFIRMED? | ☐ NO  ☐ YES: |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

Exhibit 4
Page 114

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

**Group Send Report**

Page       : 001
Date & Time: 04-22-2008   15:23
Line 1     : 2134433100
Line 2     :
Machine ID : QUINN EMANUEL

Job number        :   622

Date              :   04-22  15:21

Number of pages   :   002

Start time        :   04-22  15:21

End time          :   04-22  15:23

Successful nbrs.

   Fax numbers

                   ☎1+18883296334
                   ☎1+12136134656
                   ☎1+14153977188

Unsuccessful nbrs.                                              Pages sent

Exhibit 4
Page 115

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor. Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3223

WRITER'S INTERNET ADDRESS
timalger@quinnemanuel.com

April 22, 2008

**VIA FACSIMILE AND U.S. MAIL**

Amy S. Park, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, CA 94301

Re:   Mattel, Inc. v. MGA Entertainment, Inc.

Dear Amy:

I write to request a meet and confer pursuant to Local Rule 7-3 on the Discovery Master's Order dated April 14, 2008, denying Mattel's motion to compel production of documents in response to Mattel's Fifth Set of Requests for Production. Mattel contemplates appealing from the Order to Judge Larson. Please let me know when you are available to discuss this matter. I would prefer Thursday, if that fits in your schedule.

Very truly yours,

Timothy L. Alger

cc:  Michael H. Page, Esq.
     Mark E. Overland, Esq.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

07209/2480107.1

Exhibit 4
Page 116

# EXHIBIT 5

## Cyrus Naim

**From:**    Shek, Bernard [Bernard.Shek@skadden.com]
**Sent:**    Friday, April 25, 2008 5:31 PM
**To:**      Timothy Alger; Randa Osman
**Cc:**      Park, Amy S (PAL)
**Subject:** Bryant v. Mattel - Discovery Master orders

Tim & Randa:

I am following up on our telephone conversations yesterday regarding the Discovery Master's orders re Mattel's request for communications re this action and the Fifth Set of Requests for Production. We have conferred with our client and are comfortable with the Discovery Master's rulings on those matters. Accordingly, we do not agree to your proposals. Please feel free to contact Amy or me if you would like to discuss the matter further.

Regards,
Bernard

------------------------------------------------
Bernard Shek
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
Tel: 650-470-4513
Fax: 888-329-9592

------------------------------------------------------------------------------
*************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
***************************************************
*************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
***************************************************

Exhibit 5
Page 117

# EXHIBIT 6

SKADDEN, ARPS, SLATE, MEAGHER·& FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

MAR 2 6 2008

TEL: (650) 470·4500
FAX: (650) 470·4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

March 24, 2008

**By Email and U.S. Mail**

Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

> RE:  *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
> Case No. CV 04-9049 SGL (RNBx) (consolidated with
> Cases Nos. CV 04-09059 and CV 05-02727)

Dear Tim:

I am writing to follow up on our meet-and-confer discussion on February 21, 2008, regarding Mattel's motion to compel MGA to produce documents in response to Mattel's fifth set of requests for production. Although we agreed to talk further once you had an opportunity to look again at the requests and consider the information we provided you at the February 21 meeting, we have not heard back from you in response to our requests to conclude our discussion. Accordingly, I am writing to set forth our position with respect to the matters about which we did not conclude our discussion.

**A.   MGA's Financial Statements and Tax Returns (Request Nos. 4-7)**

**1.   Requests Nos. 4-5 (seeking various MGA financial statements from incorporation to 1999)**

As set forth in MGA's opposition to Mattel's motion to compel, Mattel's requests demanding financial statements since MGA's incorporation are overly broad, excessive and seek documents that are irrelevant to this litigation. (MGA's Opp. (Docket Item 1993) at 8-14.) During the parties' February 21 meeting, we explained that MGA has already produced vast amounts of historical financial information,

Exhibit 6
Page 118

Timothy L. Alger, Esq.
March 24, 2008
Page 2

including audited financial statements since 1999 (MGA 7341 – MGA 7362,
MGA 0868693 – MGA 0868722, MGA 0869492 – MGA 0869505 & MGA 0869508 –
MGA 0869518) and historical trial balances since 1996 (MGA 0060841 –
MGA 0061924, MGA 3765665 – MGA 3765746, MGA 3709872 – MGA 3717412).
We also refer you to Exhibit C to the report of your expert, Michael J. Wagner, which
identifies these and additional financial documents produced by MGA. Despite the
foregoing, Mattel has refused to withdraw its motion with respect to these requests or to
engage in any further meet and confer discussions.

> ### 2. Request No. 6 (seeking MGA's general ledgers from incorporation to 1999)

MGA informed Mattel at the February 21 meeting that it has already
produced responsive documents. Specifically, MGA told Mattel that MGA has
produced its historical trial balances for 1996 through 1999, as well as the 2000 trial
balance (which Mattel incorrectly suggested in its reply brief had not been produced).
These documents are Bates labeled MGA 3765665 – MGA 3765746. We also refer you
to Exhibit C to the expert report of your expert, Michael J. Wagner, which identifies
these and additional financial documents produced by MGA. Despite the foregoing,
Mattel has refused to withdraw its motion with respect to this request or to engage in
any further meet and confer discussions.

> ### 3. Request No. 7 (seeking MGA's tax returns from incorporation to the present)

At the February 21 meeting, MGA reminded Mattel that the Discovery
Master has already held that the parties' tax returns are not discoverable, and that MGA
has already produced numerous financial documents showing MGA's revenue,
expenses and other relevant financial items. Such documents include audited financial
statements since 1999 (MGA 7341 – MGA 7362, MGA 0868693 – MGA 0868722,
MGA 0869492 – MGA 0869505 & MGA 0869508 – MGA 0869518) and historical
trial balances since 1996 (MGA 0060841 – MGA 0061924, MGA 3765665 –
MGA 3765746, MGA 3709872 – MGA 3717412). We also refer you to Exhibit C to
the report of your expert, Michael J. Wagner, which identifies these and additional
financial documents produced by MGA. Despite the foregoing, Mattel has refused to
withdraw its motion with respect to this request or to engage in any further meet and
confer discussions.

> ### B. Corporate Formation and Governance Documents (Request Nos. 1-3, 8-11, 23-30 & 33)

At the February 21 meeting, Mattel generally asserted that all of the
requested documents regarding MGA's corporate formation, governance and ownership

Exhibit 6
Page 119

Timothy L. Alger, Esq.
March 24, 2008
Page 3

are relevant to establish alter ego liability. Mattel based its assertion on (1) its allegation that Mr. Larian caused MGA's directors to grant him a higher salary and bonus in April 2000, and (2) Mattel's allegation that Mr. Larian used MGA's funds to pay off a personal debt to Farhad Larian in connection with Mr. Larian's acquisition of Farhad Larian's shares of MGA stock. (*See* Mattel's Reply at 4 & 8.)

Mattel's assertions of relevance do not justify the expansive discovery it seeks. Alter ego liability is an equitable doctrine that requires proof that "(1) there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist, and (2) failure to disregard the corporate entity would sanction a fraud or promote injustice." *Communist Party of the United States v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 993 (1995). The issue is "whether in the particular case presented, justice and equity can best be accomplished and fraud and unfairness defeated by disregarding the distinct entity of the corporate form." *Id.*

Moreover, where, as here, the issue concerns a corporate defendant's ability to satisfy any potential judgment, discovery relating to a plaintiff's alter ego allegations should be taken, if at all, after there has been a finding that the corporate defendant is liable and is unable to satisfy the judgment. *See Higgins v. Journal Register*, No. 3:06-CV-1446(AVC), 2007 U.S. Dist. LEXIS 78761 at *4-5 (D. Conn. October 23, 2007) ("The court concludes that the issue of alter ego or single employer status, as a basis for piercing the corporate veil, need not be resolved at this stage. When and if any defendant is shown to be liable for the violations alleged in the complaint, and is unable to satisfy any judgment rendered, the court can, if necessary, reopen the issue of piercing the corporate veil for further discovery at that time.").

Despite having received many thousands of financial documents from MGA, Mattel has offered no evidence showing that MGA's assets have been so depleted by Mr. Larian that MGA would be unable to satisfy any potential judgment in this case *if* MGA were found liable. Mattel's allegations about increases in Mr. Larian's salary or the payment of Mr. Larian's obligations to his brother provide no indication that Mr. Larian has somehow placed MGA's ability to satisfy a judgment at risk. Moreover, even if Mattel were entitled to some discovery relating to its assertions, Mattel's conjecture does not entitle it to discover every document regarding MGA's corporate formation, corporate governance and stock ownership.

> **1.   Request Nos. 1-3 & 8-11 (seeking all articles of incorporation, notices of incorporation, bylaws and all minutes from every Board or shareholder meeting since MGA's incorporation)**

As set forth in MGA's opposition to Mattel's motion to compel, Mattel's requests seeking overly broad categories of corporate formation and governance

Exhibit 6
Page 120

Timothy L. Alger, Esq.
March 24, 2008
Page 4

documents from MGA's formation to the present are improper, are not reasonably
tailored or tethered to any claim or defense in this action and seek irrelevant
information. (MGA's Opp. (Docket Item 1993) at 8-14.) At the February 21 meeting,
Mattel refused to narrow the scope of these requests.

> **2.      Request No. 23-25 (seeking documents sufficient to identify
> total outstanding MGA shares from incorporation to the
> present and every MGA shareholder from incorporation to
> the present, including number of shares owned, date acquired
> and consideration paid)**

At the February 21 meeting, MGA informed Mattel that MGA and Mr.
Larian have already produced numerous documents identifying MGA's shareholders
and their ownership interests in the company. Such documents include at least the
following documents:  MGA 3787275 – MGA 3787284.  MGA also reminded Mattel
that it already obtained deposition testimony from one of MGA's Rule 30(b)(6)
witnesses on this subject. (*See, e.g.,* Tonnu Dep. at 814:24-816:24.) Despite the
foregoing, Mattel has refused to withdraw its motion with respect to these requests or to
engage in any further meet and confer discussions.

> **3.      Request Nos. 26-30 (seeking all documents, including
> communications, regarding issuance of stock certificates or
> stock acquisitions from incorporation to the present, as well
> as all documents relating to how MGA has been capitalized
> since its inception)**

As set forth in MGA's opposition to Mattel's motion to compel, Mattel's
requests seeking overly broad categories of corporate formation and governance
documents are improper, are not reasonably tailored and seek irrelevant information.
(MGA's Opp. (Docket Item 1993) at 8-14.) At the February 21 meeting, Mattel refused
to reasonably limit the scope of these requests.

> **C.     Documents Showing Payments, Loans or Gifts by MGA to Mr.
> Larian (Request Nos. 12-20)**

At the February 21 meeting, MGA informed Mattel that MGA has
already produced documents showing payments, including shareholder distributions, by
MGA to, among others, Mr. Larian, the Larian Trusts, Jahangir Makabi, and Mr.
Larian's family members from 1997 through 2007. Such materials include at least the
following documents:  MGA 3787275 to MGA 3787284, MGA 3787315 –
MGA 3787853, MGA 3787372 – MGA 3787397, MGA 3787400 – MGA 3787426, and
MGA 3865982 – MGA 3866029. MGA also reminded Mattel that it had already

Exhibit 6
Page 121

Timothy L. Alger, Esq.
March 24, 2008
Page 5

obtained deposition testimony from MGA's Rule 30(b)(6) witness regarding MGA's
payments to Mr. Larian. (*See, e.g.,* Tonnu Dep. at 852:15-855:15.)

In addition, with regard to gifts and loans, MGA explained that the
payment information that MGA has already produced would include information
regarding gifts or loans by MGA to Mr. Larian to the extent any such gifts or loans were
made. MGA also reiterated its belief that Mattel's requests for such documents are
overly broad because, for example, they would cover gifts of any kind or value from
any person at MGA to Mr. Larian.

Despite the foregoing, Mattel has refused to withdraw its motion with
respect to these requests or to engage in any further meet and confer discussions.

   D.   **Documents Showing Payments, Loans or Gifts by MGA to Officers,
        Directors or Shareholders (Request Nos. 31, 32 & 34-44, 47)**

      1.   **Request Nos. 31, 32, 34-39 & 42-44 (seeking documents
           showing all payments, loans or gifts by MGA to its officers,
           directors and shareholders, as well as any of their family
           members)**

At the February 21 conference of counsel, MGA informed Mattel that it
has already produced numerous documents showing or otherwise reflecting payments to
officers, directors and shareholders. These documents include historical trial balance
reports, W-2s, shareholder distribution reports, audited financial statements and other
documents listing payments made by MGA to others. (*See, e.g.,* MGA 0060841 –
MGA 0061924, MGA 3765665 – MGA 3765746, MGA 3709872 – MGA 3717412,
MGA 3787315 – MGA 3787853, MGA 3787372 – MGA 3787397, MGA 3787400 –
MGA 3787426, MGA 7341 – MGA 7362, MGA 0868693 – MGA 0868722,
MGA 0869492 – MGA 0869505 & MGA 0869508 – MGA 0869518 and
MGA 3865982 – MGA 3866029.) We also refer you to Exhibit C to the report of your
expert, Michael J. Wagner, which identifies these and additional financial documents
produced by MGA. Nevertheless, Mattel has refused to withdraw its motion with
respect to these requests or to engage in any further meet and confer discussions.

Exhibit 6
Page 122

Timothy L. Alger, Esq.
March 24, 2008
Page 6

        **2.**     **Request Nos. 40, 41 & 47 (seeking all monthly bank
statements; bank statements showing payments to any
director, officer or shareholder, or any family member of
such person; and documents identifying MGA's authorized
signatories)[1]**

At the February 21 meeting, MGA reiterated its position that these
requests are overly broad and seek irrelevant categories of information. (*See also*
MGA's Opp. (Docket Item 1993) at 8-14.) MGA also reminded Mattel that the
Discovery Master previously rejected a similar discovery request. (*See* 2/15/08
Discovery Master Order at 14-15 (denying Mattel's motion to compel response to.
Interrogatory No. 39, which requested MGA to identify all of its bank accounts).) In
addition, as discussed in the preceding section, MGA has already produced numerous
documents reflecting payments to officers, directors and shareholders. Nevertheless,
Mattel has refused to withdraw its motion with respect to these requests or to engage in
any further meet and confer discussions.

        3.     **Request No. 33 (seeking documents identifying all of MGA's
directors and officers from 1999 to the present)**

MGA has agreed to produce documents sufficient to identify every
person who has served as a director or officer of MGA, including each person's position
and dates of service, from 1999 to the present.

Please let us know whether you have reconsidered your position with
respect to any of the foregoing requests and whether Mattel will withdraw its motion as
to any of those requests.

Sincerely,

Amy S. Park

---

[1] In its reply brief in support of its motion to compel regarding the fifth set of requests
for production, Mattel asserted that Mr. Larian also had not produced his bank
statements and canceled checks. However, the fifth set does not request any such
documents. Nor was Mr. Larian ever ordered to produce such documents. In addition,
as MGA explained to Mattel at the February 21 meeting, Mr. Larian already produced
documents showing all financial institutions where he held an account from 1999 to the
present, as well as documents showing account numbers for all accounts from 2003
through 2007.

Exhibit 6
Page 123

# EXHIBIT 7

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 8

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 9

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 10

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 11

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 12

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 13

Doll wars | The San Diego Union-Tribune                    http://www.signonsandiego.com/uniontrib/20050605/news_1c05doll.html

**SignOnSanDiego.com**
BY THE UNION-TRIBUNE

Weather | Traffic | Surf | Maps | Webcam

Sunday, Apr. 27, 2008

Home | Today's Paper | Sports | Careers | Homes | Autos | Entertainment | Forums | Services | Travel | Visitors Guide

SEARCH          All of SignOnSanDiego   GO!

**Sunday**
**»Next Story»**
**News**
**Local News**
**Insight**
**Business**
**Sports**
**Sunday Currents**
**Arts**
**Travel**
**Homes**
**Homescape**
**Books**
**Passages**
**The Last Week**
**Sunday**
**Monday**
**Tuesday**
**Wednesday**
**Thursday**
**Friday**
**Saturday**
**Weekly Sections**
**Books | UT-Books**
**Family**
**Food**
**Health**
**Home**
**Homescape**
**Dialog**
**InStyle**
**Night & Day**
**Sunday Arts**
**Travel**
**Quest**
**Wheels**

**Subscribe to the UT**
Union-Tribune

## The San Diego Union-Tribune.

SAVE THIS   EMAIL THIS   PRINT THIS   MOST POPULAR

# Doll wars

## Makers of Barbie and rival Bratz not playing nice in battle for supremacy

**By Norma Meyer**
COPLEY NEWS SERVICE

**June 5, 2005**

LOS ANGELES – Inside the security-guarded Bratz think tank, a hairstylist uses teensy rollers to coif dozens of decapitated doll heads staring back with made-up faces. Skewered onto sticks, they look like Bratz-kabobs. At another desk, an artist delicately paints more Lilliputian test noggins with dramatically shadowed bedroom eyes, lip-lined pouts and occasional beauty marks.

The bustling Bratz design center seems like it's all for child's play. But this is base camp for one side in the adult-driven vicious Doll Wars.



CAROL KRON / Copley News Service
Rivals Bratz (left) and My Scene Barbie are duking it out in the playroom and in court. The edgy fashion dolls with wowing wardrobes are aimed at 'tweens.

The edgy hipster hit Bratz doll and cultural icon Barbie are tearing out each other's hair – which apparently can be in demand. MGA Entertainment, the makers of Bratz, claim in court papers that Barbie parent Mattel once bought up all the doll hair from the two main suppliers in hopes the Bratz would go bald.

That's just for starters. Later on, even Hokey Pokey Elmo figures into the Barbie/Bratz brawl.

The toyland tussle began in mid-2001, when the sassy, big-headed Bratz fashionistas– with their multiethnic urban look, Angelina Jolie bee-stung lips and Britney Spears bare midriffs – debuted for 'tweens and suddenly threatened to push the perennial plastic princess off her pink perch.

As Bratz sales soared, Barbie, who at 46 has been everything from an Army medic in Desert Storm to a presidential candidate, was not about to take her ball, let alone her 43 pets, Vespa scooter and Bob Mackie gowns, and go home.

After all, 'tweens account for billions in spending. They're the wannabe teens who are into MTV as much as toys with bendable arms. No wonder

Exhibit 13
Page 231

Doll wars | The San Diego Union-Tribune                    http://www.signonsandiego.com/uniontrib/20050605/news_1c05doll.html



the two doll makers aren't playing around.

First, in a high-stakes ongoing case, Mattel sued Bratz creator Carter Bryant, a former Barbie designer, claiming he was a traitor who got the Bratz idea when he was on Barbie's payroll. Bryant counter-sued, arguing the world's largest toy company is trying to hijack his "brainchild anyway it can." Then, hard-driving Business Executive Barbie slapped a lawsuit on a high-level manager who defected to MGA allegedly with "trade secrets" (a judge booted that case in January).

Now, the Bratz have put down their mini cappuccino cups to battle back. In a biting, recently filed, multimillion-dollar federal lawsuit, MGA accuses Barbie of being "the playground bully" and Mattel of "serial copycatting." MGA contends the desperate, vindictive toy titan made a knockoff of Bratz, the My Scene Barbie, to confuse consumers and "muscle MGA out of business."

"It's a rip-off," says MGA founder Isaac Larian, surrounded in his Van Nuys office by his 10-inch babes, such as Pretty 'N' Punk Jade, in skintight leather pants and jet-black hair streaked with neon blue.

Sultry Bratz was once the anti-Barbie. Now, Larian says, "The pictures speak 1,000 words."

He is referring to side-by-side photos in the lawsuit, which purport to show how the "stale" traditional busty blonde, Barbie Millicent Roberts from Willows, Wis., had an extreme makeover into My Scene Barbie in fall 2002 – with oversized head and feet and almond-shaped eyes like Bratz – and underwent touch-up surgery last year to become more of a Bratz clone with thickly lined heavy eyelids, similar packaging and themes.

Barbie's handlers won't comment on specifics of MGA's lawsuit. But in a written statement, El Segundo-based Mattel said MGA got involved in Bryant's case because "its interest in the Bratz doll line could be at risk. In our opinion, MGA's recently filed suit against Mattel is part of its overall litigation strategy in relation to Mattel's suit against Mr. Bryant.

"Apparently MGA has become concerned enough that it feels compelled to make an offensive strike against Mattel."

The accessorized, long-haired dueling divas, aimed at 8-to 11-year-olds, have this in common: 'tude, primping, skimpy clothes, shop-til-you-drop and guys. (They also have plenty of parent critics, who've bashed them as everything from "all sluts" to "hookers-in-training.")

The 10 Bratz Pack girls, who include Yasmin, Sasha and Cloe, party with the five Bratz Boyz, among them Koby, whose nickname is " 'The Panther' –because I'm always on the prowl!" They cavort in the Flashback Fever Party Bus with the real working Jacuzzi, and the revolving Tokyo A Go-Go Sushi Lounge with the sliced sashimi and karaoke stage. The celebrity architectural firm that did homes for Eddie Murphy and Rod Stewart designed their chic, three-story Bratz Pad ($229.99 on toysRus.com).

My Scene's "tribe" includes 11 1/2-inch tall Barbie, whose hangout, according to her blog, is the "day spa," and whose "fave" pastime is "chatting with cuties!" Gal pal Madison's fave pastime is "getting manis and pedis," and her perfect date is "dinner and dancing with a hottie!" One hottie for retail sale is Hudson, who likes "fun, flirty" girls. This summer, they'll kick it with "Mean Girls" star Lindsay Lohan (shrunk as a My Scene doll).

Exhibit 13
Page 232

Larian, an Iranian immigrant, used to pass by the old Mattel headquarters in Hawthorne on his way to work as a dishwasher at a Spire's coffee shop. "I came here at the age of 17 with $350 and a blanket and a one-way ticket," the 51-year-old CEO recalls.

He says he later sold mail-order brass giftware, got a civil engineering degree from California State University Los Angeles, and started a consumer electronics business by buying a Nintendo license for hand-held computer games.

That company turned into MGA, which bills itself as the world's largest privately owned toy company, with about 65 percent of its business Bratz. MGA employs some 600 people worldwide, half of whom work in the San Fernando Valley headquarters, where the motto "Fortune Favors the Bold" is plastered on interior doors.

Larian says 80 million Bratz have been sold in 65 countries; in Britain and Australia, it's the No. 1 fashion doll. MGA won't reveal its income, but an industry magazine reported the Bratz brand last year raked in $1.1 billion worldwide.

Publicly traded Mattel, with more than 20,000 global employees, insists the tiny-waisted queen is still the world's reigning doll. More than a billion Barbies have been sold since her birth in 1959, says Mattel, and if put head to toe, she and her friends would circle Earth seven times.

The Barbie brand is a $3-billion-a-year biz. Still, Barbie's had the blues — sales worldwide fell 15 percent for the first quarter of 2005.

"Oh my God! Barbie is so here to stay!" exclaims Russell Arons, Barbie's v.p. of marketing.

True, the golden girl isn't relinquishing her crown. But "Bratz represents a level of competition that Barbie has never seen before," observes Sean McGowan, a toy-industry analyst with the investment firm Harris Nesbitt.

Mattel co-founder Ruth Handler named Barbie after her daughter. Larian named the first Bratz doll, Yasmin, after his daughter. He says the breathing, preteen Yasmin was at his office when she saw Bryant's drawings that inspired Bratz and thought they were cool.

In its lawsuit, Mattel alleges that Bryant, while their employee, stole ideas and "secretly aided, assisted and worked for" a competitor, MGA. But Bryant, who designed the 2001 collector-edition prim-and-proper Grand Entrance Barbie in the taffeta ball gown, says in his countersuit he was between stints at Mattel and home in Missouri when the Bratz bulb blinked. Driving back from his job at an Old Navy clothing store, he passed a high school, noticed the "bratty" attitude and trendy outfits and "had a 'eureka' moment."

Barbie's 43-year beau Ken was a pawn in the doll dust-up, according to Bryant's suit. (Bryant declined an interview through MGA.) Barbie allegedly "dumped" Ken last year in a "publicity stunt to revive Barbie in the face of the Bratz success."

"That was something I had been wanting to do for years," counters Mattel's Arons. "Let's be honest. Ken was a goon. It was time."

"And he had commitment issues," chimes in David Stamper, a Mattel spokesman.

Exhibit 13
Page 233

Obviously, it's a doll-eat-doll world.

"The industry is very cutthroat," says Bradley Justice, a longtime Barbie collector and North Carolina-based regional director of the United Federation of Doll Clubs. "There are spies everywhere. It's almost like an espionage novel."

In fact, MGA's lawsuit alleges "monkey-see monkey-do" Mattel also copied the funky-looking plush Bratz Petz and other toys. The suit contends Mattel threatened its licensees with retribution if they bought Bratz, and tampered with Bratz displays at stores, relocating Barbie's nemesis to the back shelves.

"Barbie does not 'play nice' with others (particularly her competitors)," MGA's suit charges.

MGA also claims Mattel strong-armed trade organizations, including the Toy Industry Association, which gave the People's Choice Toy of the Year Award – sort of like toy town's Oscar – to Bratz for 2001 and 2002 by consumer vote. But then an executive of Fisher-Price, a Mattel subsidiary, orchestrated a rule change in 2003 so the award was chosen by industry members and "not surprisingly," the lawsuit complains, Hokey Pokey Elmo by Fisher-Price beat out Bratz Formal Funk Super Stylin' Runway Disco.

The toy association declined comment on the alleged "fix."

With all the subterfuge, its no wonder paranoid people inhabit Barbie's Dream House. Court papers in Mattel's failed lawsuit against former exec Ron Brawer, who left for MGA, include "Mattel's Code of Conduct." Employees were not to discuss confidential info in public places "such as planes, restaurants and elevators" in case operatives lurked.

Litigious Barbie has dragged her own alleged copycatters into court. Hasbro had to give its European Sindy doll a face-lift in 1992 after Mattel claimed it looked like Barbie's twin. The same year, Mattel forced Kenner Products to alter two of its Miss America doll heads.

There are more than skull molds involved this go-around. MGA has offshoots like Bratz Babyz and a slew of related merchandise, such as the Bratz Electric Funk Chill-Out Fridge for a girl's room. Mattel is coming out with a My Scene Nokia cell phone. Twentieth Century Fox is producing a Bratz live-action feature film; Barbie stars in an upcoming animated DVD, "My Scene Goes Hollywood."

Babs collector Justice, 35, says My Scene was "definitely inspired by the Bratz doll." And no, he's not upset that the onetime pediatrician, police officer, paleontologist and astronaut is now a party girl. Barbie has always reflected our culture.

"Look at Paris Hilton," Justice emphasizes. "Do you think she wants to be an astronaut?"

Barbie morphed because market research indicates 8-year-olds are influenced by movies and TV, want to drive a car and long to be a teen, Arons says. That's why there's American Idol Barbie and tanned Cali Barbie, whose boy-toy is surfer-dude Blaine.

And there's also Halle Berry Catwoman Barbie, whose claws are surely sharpened for the cat fight with Bratz.

»Next Story»

Exhibit 13
Page 234

Doll wars | The San Diego Union-Tribune                    http://www.signonsandiego.com/uniontrib/20050605/news_1c05doll.html

Contact Us | Site Index | About Us | Advertise on SignOnSanDiego | Make us your homepage
Frequently Asked Questions | UTads.com | About the Union-Tribune | Contact the Union-Tribune
© Copyright 2005 Union-Tribune Publishing Co.

Exhibit 13
Page 235

# EXHIBIT 14

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 15

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 16

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 17

**CONFORMED COPY**
LODGED                                    FILED

2007 MAY 16  PM 1: 59   2007 MAY 16  PM 2: 00

CLERK U.S. DISTRICT COURT  CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.    CENTRAL DIST. OF CALIF.
RIVERSIDE                  RIVERSIDE

BY_____   BY_____

1  | Hon. Edward A. Infante (Ret.)
   | JAMS
2  | Two Embarcadero Center
   | Suite 1500
3  | San Francisco, California 94111
   | Telephone:   (415) 774-2611
4  | Facsimile:   (415) 982-5287

5

6

7               UNITED STATES DISTRICT COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                       EASTERN DIVISION

10

11  | CARTER BRYANT, an individual,        | CASE NO. C 04-09049 SGL (RNBx)
    |                                      | JAMS Reference No. 1100049530
12  |              Plaintiff,              |
    |                                      |
13  |        v.                            | Consolidated with
    |                                      | Case No. CV 04-09059
14  | MATTEL, INC., a Delaware corporation,| Case No. CV 05-2727
    |                                      |
15  |              Defendant.              | **ORDER GRANTING MATTEL'S**
    |                                      | **MOTION TO COMPEL PRODUCTION**
16  |                                      | **OF DOCUMENTS AND**
    |                                      | **INTERROGATORY RESPONSES BY**
17  | CONSOLIDATED WITH                    | **MGA**
    | MATTEL, INC. v. BRYANT and           |
18  | MGA ENTERTAINMENT, INC. v. MATTEL,   |
    | INC.                                 |
19  |                                      |

20                     I. INTRODUCTION

21      On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA"). On February

23  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24  reply brief. The matter was heard on March 5, 2007. Thereafter the motion was taken under

25  submission pending the parties' submission of a proposed protective order, which was received

26

27

28  | Bryant v. Mattel, Inc.,
    | CV-04-09049 SGL (RNBx)

                                                                      1

Exhibit 17
Page 254

1    on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2    Mattel's motion to compel is granted.

3    ## II. BACKGROUND

4    A. Requests for Documents

5    In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6    became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7    categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8    court granted because of the short amount of time provided for compliance with the subpoena.

9    The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10   some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11   generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12   In 2005, the parties stipulated to supplementing their document productions on May 16,

13   2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14   In September of 2006, MGA made a supplemental production of documents.  On February

15   5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16   with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17   documents to replace earlier produced documents with legibility problems.

18   Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19   preliminary matter, Mattel contends that MGA's production is deficient because it contains

20   redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21   respect to essentially five categories of documents.  First, Mattel contends that MGA is

22   withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23   believes that MGA's production is incomplete based upon its review of documents that have been

24   produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25   of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26   previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

Exhibit 17
Page 255

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3   show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5   Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6   what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8   protective order in place.  In addition, Mattel contends that MGA's objection to producing

9   documents relating to activities or conduct in foreign countries is wholly improper because those

10  documents may contain information relevant to Mattel's claims.

11      Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12  such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14  discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16  a Bratz doll released at a particular time.[1]

17      Mattel next contends that MGA is improperly withholding documents about designs

18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19  be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20  explore whether such works and the profits from Bratz dolls other than the "first generation"

21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22  and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24  information as well as MGA's unfair competition claims.

25  _____

26      [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
to compel Bryant to produce documents.

27

28

1       Mattel also asserts that MGA is improperly withholding documents relating to products,

2  services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3  Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4  Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5  Inventions Agreement.

6       Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7  payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8  because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9  (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10  damages; and (3) payments may show when and what trade secret information Bryant and other

11  defendants allegedly misappropriated from Mattel.

12      Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13  contends that all agreements between Bryant and MGA are relevant, not just the original

14  September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15  documents relating to MGA and Bryant's alleged joint defense agreement because such

16  information would be relevant to demonstrate bias and lack of credibility.

17      Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18  statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19  information may reveal relevant information about the date of creation of Bryant's Bratz

20  drawings.

21      In response, MGA denies withholding responsive documents and asserts that it has

22  produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23  that it has produced all responsive and relevant documents that it was able to locate in response to

24  request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25  before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26  motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Exhibit 17
Page 257

1 | to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,
2 | 49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100. MGA represents that it informed
3 | Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that
4 | have been released on the market. In addition, MGA represents that it has agreed to produce
5 | documents relevant to Bratz or Prayer Angels that it received from Union Bank. More
6 | specifically, MGA represents that it agreed to review and produce documents provided to it by
7 | Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for
8 | Bratz or Prayer Angels. MGA also represents that it has agreed to produce royalty statements.
9 | Therefore, MGA views the motion as unnecessary.

10 |      MGA next contends that Mattel's motion should be denied for the following additional
11 | reasons. First, MGA contends that Mattel is not entitled to MGA's product design documents for
12 | unreleased products. MGA asserts that its product design documents for its unreleased toy
13 | concepts are among its most highly valuable trade secrets. Furthermore, MGA contends that
14 | designs and drawings for products currently under development, over six years after Bryant first
15 | created his original Bratz drawings, have no relevance to any of Mattel's claims. In the event that
16 | documents relating to unreleased products are ordered produced, MGA requests a protective order
17 | under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically
18 | than the current protective order provides. In the alternative, MGA requests that any order
19 | compelling production of documents relating to unreleased products should essentially be stayed
20 | until after MGA's products are publicly released.

21 |      Second, MGA contends that Mattel is not entitled to information concerning Bryant's
22 | attorneys' fees because the information is privileged. Furthermore, MGA contends that the
23 | information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests
24 |
25 |
26 |
27 |
28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

Exhibit 17
Page 258

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3        Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10 Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11 attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12 abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13 the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14 was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15 foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16 a situation in which MGA has been forced to give testimony and provide evidence related to

17 issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19 dispute between MGA's chief executive officer and his brother because such documents are in no

20 way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21 proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22 MGA contends that the brothers were bound by a protective order prohibiting the use of any

23 documents or testimony for any purpose other than the arbitration.

24

25 _____

26    [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the
request.

27

28

1     Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2  files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3  MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4  in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5  MGA objects to producing documents relating to any testing performed to determine the date that

6  Bratz documents were created. MGA contends that such discovery is premature and should not

7  proceed until experts are designated.

8     B. Interrogatories

9     On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10  however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11  On May 30, 2006, MGA responded to the interrogatories.

12     Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13  Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14  because they lack substantive information and consist almost entirely of objections. MGA

15  responds that the motion is moot because it is prepared to provide supplemental responses to its

16  interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17  motion to compel responses to interrogatories.

18                      III. DISCUSSION

19     A. Rule 26 of the Federal Rules of Civil Procedure

20     Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7.

Exhibit 17
Page 260

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6       B.  Document Requests

7           1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8               34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9           The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16          As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                              Design Documents for Unreleased Products

23          MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

Exhibit 17
Page 261

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2   has been approved and entered as an order of the court. MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                     Documents from MGA Hong Kong

6        Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10       Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11   the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12   documents from MGA Hong Kong.

13       Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14   64, 69, 96, 97, 98, 99, 100.

15          2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16             61, 63, 66, 67, 70, 88, 90, 91

17       Mattel contends that MGA is improperly limiting its document production to the "first

18   generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19   generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20   documents for yet unreleased products.

21       As stated previously, design documents for yet unreleased products are relevant and

22   discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23   all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24   59, 61, 63, 66, 67, 70, 88, 90, and 91.

25       //

26       //

27

28
     Bryant v. Mattel, Inc.,                                          9
     CV-04-09049 SGL (RNBx)

Exhibit 17
Page 262

1          3. <u>MGA's Payments to Bryant (Nos.43, 45)</u>

2          MGA represents that it has already agreed to produce documents related to Bratz, without

3     limiting its production to "first generation" Bratz.  MGA's motion at 13:7-14:3.  Nevertheless,

4     Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's

5     motion is granted with respect to request nos. 43 and 45.

6          4. <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

7          MGA represents that it has already agreed to produce non-privileged documents

8     responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9     relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or

10    indemnity agreements between MGA and Bryant .

11         Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12    Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any

13    responsive documents withheld on the basis of a privilege must be properly identified in a

14    privilege log.

15         5. <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,</u>

16         <u>41,</u>

17         In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18    and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel

19    anticipates that these documents could provide evidence relating to the conception date for Bratz.

20         Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21    date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against

22    alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the

23    arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24    Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25    ───────────────

26    [3]  Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

27

28

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6          6. Documents Regarding Date-Testing (Request No. 92)

7          Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12          The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16          Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25          [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
    should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                11

Exhibit 17
Page 264

1        Neither party has cited to any caselaw governing the calculation of the 30-day period

2  when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3  will be treated as timely in order to preserve any valid objections MGA may have asserted.

4        Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5  conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6  tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7  before December 31, 2001, including a description of each person's role and the start and end

8  dates of each person's involvement. In response, MGA asserted numerous objections, but did

9  provide the names of five individuals.

10       The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11  objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12  Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13  for confidential, proprietary or commercially sensitive information, or seeks information

14  protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15  it fails to provide the description of each person's role and the start and end dates of each person's

16  involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17  5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18       Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19  embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20  the reasons previously discussed in connection with Interrogatory No. 5.

21       Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22  December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23  substantive information.

24       MGA's objections are without merit. The interrogatory clearly seeks information relevant

25  to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26  compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

Exhibit 17
Page 265

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4       Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz. In response, MGA asserted numerous objections and did not provide any

10   substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12   Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is

13   ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15   was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16   which each such instance occurred, the location of each show or exhibit, and the identity of

17   persons with knowledge of the shows or exhibits. In response, MGA asserted numerous

18   objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or

19   about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21   potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22   incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered

23   to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25   including without limitation each office, home and cell phone number, in the name of, for the

26   benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

13

1 | January 1, 1998 through the present, and IDENTIFY each and every carrier (including without
2 | limitation any long-distance carrier) for each such number. In response, MGA asserted numerous
3 | boiler-plate objections.

4 |     Once again, MGA has failed to substantiate any of its objections with supporting
5 | declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to
6 | provide a full response to Interrogatory No. 11.

7 | IV. CONCLUSION

8 |     For the reasons set forth above, Mattel's motion to compel production of documents is
9 | granted. MGA shall produce all non-privileged documents that are responsive to the requests
10 | identified in this Order. Further, MGA shall produce all documents in un-redacted form, except
11 | for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's
12 | motion to compel interrogatory answers is also granted. MGA shall produce documents and
13 | provide responses to interrogatories consistent with this Order, and produce a privilege log in
14 | compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for
15 | sanctions is denied.

16 |     Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
17 | Master, Mattel shall file this Order with the Clerk of Court forthwith.

18
19
20
21 | Dated: May 5, 2007
22 | HON. EDWARD A. INFANTE (Ret.)
22 | Discovery Master
23
24
25
26
27
28

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| Name | Firm | Email |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

Exhibit 17
Page 268

# EXHIBIT 18

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 19

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 20

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**