1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 13 | Plaintiff, | Consolidated with |
| 14 | vs. | Case No. CV 04-09059 Case No. CV 05-02727 |
| 15 | MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 16 | | **[PUBLIC REDACTED]** |
| 17 | Defendant. | MATTEL, INC.'S NOTICE OF MOTION AND MOTION |
| 18 | AND CONSOLIDATED ACTIONS | OBJECTING TO DISCOVERY MASTER'S DENIAL OF MOTION TO COMPEL PRODUCTION OF |
| 19 | | DOCUMENT BATES NUMBERED |
| 20 | | MGA 3801819-22; AND |
| 21 | | MEMORANDUM OF POINTS AND AUTHORITIES |
| 22 | | |
| 23 | | [Notice of Lodging and Declaration of Christopher E. Price filed concurrently] |
| 24 | | [Federal Rule of Civil Procedure 72(a); |
| 25 | | Local Rule 72-2.1] |
| 26 | | Hearing Date: June 16, 2008 |
| 27 | | Time:         10:00 a.m. Place:        Courtroom One |
| 28 | | |

07209/2486793.2

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE that on June 16, 2008, at 10:00 a.m., or as
3 | soon as the matter may otherwise be heard, before the Honorable Stephen G. Larson
4 | of the United States District Court for the Central District of California -- Eastern
5 | Division, located at 3470 Twelfth Street, Riverside, California 92501, Mattel, Inc.
6 | ("Mattel") will and hereby does move, pursuant to Federal Rule of Civil Procedure
7 | 72(a), for an order reversing the Discovery Master's denial of Mattel's Motion To
8 | Compel Production Of Document Bates Numbered MGA 3801819-22, and
9 | compelling MGA to produce an unredacted version of the document Bates
10 | Numbered MGA 3801819-22.

11 |      This motion is made on the ground that the Discovery Master's
12 | April 23, 2008 Order Precluding Parties from Filing any Further Discovery Motions,
13 | which denied Mattel's Motion to Compel the Production of Document Bates
14 | Numbered MGA 3801819-22 ("Motion"), was clearly erroneous and contrary to
15 | law. The denial of the Motion was clearly erroneous and contrary to law because
16 | the document "clawed back" by MGA on a claim of attorney-client privilege is not
17 | privileged and, even if it was privileged, the privilege was waived by MGA's
18 | conduct.

19 |      Moreover, the Discovery Master was required to consider and decide
20 | the Motion under two separate orders of the District Court: (1) the Stipulated
21 | Protective Order, and (2) Stipulation for Appointment of a Discovery Master and
22 | Order. Those orders empower and obligate the Discovery Master to decide
23 | discovery motions in this action until relieved, and to decide disputes about
24 | inadvertently produced documents for which a party claims the attorney-client
25 | privilege.

26 |      Accordingly, the District Court should reverse the Discovery Master's
27 | April 23, 2008 order denying Mattel's Motion to Compel the Production of
28 |

-1-

1  Document Bates Numbered MGA 3801819-22, and order MGA to produce
2  MGA 3801819-22 in an unredacted state.

3  　　　　This motion is based on this Notice of Motion and Motion, the attached
4  Memorandum of Points and Authorities, Mattel's concurrently filed Notice of
5  Lodging and the lodged materials, the concurrently filed Declaration of Christopher
6  E. Price, the pleadings and record on file in this action, and any further evidence and
7  argument as may be presented to the Court on this motion or for which judicial
8  notice may be taken.

9  　　　　This Motion is made following the conference of counsel pursuant to
10 Local Rule 7-3, which took place on April 25, 2008.

12 DATED:  April 28, 2008　　　　QUINN EMANUEL URQUHART OLIVER &
　　　　　　　　　　　　　　　　　HEDGES, LLP

14 　　　　　　　　　　　　　By
15 　　　　　　　　　　　　　　Timothy L. Alger
　　　　　　　　　　　　　　　Attorneys for Mattel, Inc.

1

# **TABLE OF CONTENTS**

2                                                                          **Page**

3

4  MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

5  PRELIMINARY STATEMENT ................................................................................ 1

6  FACTUAL BACKGROUND ..................................................................................... 3

7  ARGUMENT.............................................................................................................. 9

8  I.    THE DISCOVERY MASTER'S DENIAL OF MATTEL'S MOTION
       WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW ................... 9

9
   II.   THE LARIAN E-MAIL IS NOT PRIVILEGED ........................................... 11
10
   III.  MGA WAIVED THE PRIVILEGE BY FAILING TO OBJECT TO
11        ITS USE AT DEPOSITION AND AS AN EXHIBIT IN THE
          SUMMARY JUDGMENT PAPERS ............................................................ 14
12
   IV.   MGA HAS WAIVED THE PRIVILEGE BY RELYING ON IT TO
13        ARGUE THAT MATTEL'S CLAIMS ARE TIME BARRED...................... 17

14 V.    MGA CANNOT BE PERMITTED TO REDACT THE LARIAN E-
          MAIL IN A MANNER THAT WILL MISLEAD THE JURY...................... 18
15
   VI.   THE COURT SHOULD AT LEAST REVIEW THE LARIAN E-
16        MAIL IN CAMERA .................................................................................... 20

17 CONCLUSION......................................................................................................... 21

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

Bank Brussels Lambert v. Credit Lyonnais,
160 F.R.D. 437 (S.D.N.Y. 1995)........................................................ 16

Bittaker v. Woodford,
331 F.3d 715 (9th Cir. 2003)............................................................ 18

Boca Investerings Partnership v. U.S.,
31 F. Supp. 2d 9 (D.C.D.C. 1998)...................................................... 13

Boston Edison Co. v. U.S.,
75 Fed. Cl. 557 (Fed. Ct. Cl. 2007)..................................................... 14

Chevron Corp. v. Pennzoil Co.,
974 F.2d 1156 (9th Cir. 1992)........................................................... 18

Diversified Group, Inc. v. Daugerdas,
304 F. Supp. 2d 507 (S.D.N.Y. 2003).................................................. 15

F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.,
184 F.R.D. 64 (D. Md. 1998)............................................................. 16

Fisher v. United States,
425 U.S. 391 (1976) ....................................................................... 11

Griffith v. Davis,
161 F.R.D. 687 (C.D. Cal. 1995) .................................................. 11, 12

Hardy v. New York News,
114 F.R.D. 633 (S.D.N.Y. 1987)........................................................ 14

Montebello Rose Co. v. Agricultural Labor Relations Bd.,
119 Cal. App. 3d 1 (1981)................................................................ 14

North Am. Mort. Investors v. First Wisc. Nat'l Bank,
69 F.R.D. 9 (E.D. Wis. 1975)............................................................ 13

Palazetti Import/Export, Inc. v. Morson,
2000 WL. 1015921 (S.D.N.Y. July 21, 2000) ....................................... 15

In re Rospatch Sec. Litigation,
1991 WL. 574963 (W.D. Mich. March 14, 1991) ................................... 14

S.E.C. v. Cassano,
189 F.R.D. 83 (S.D.N.Y. 1999).......................................................... 16

Southern Film Extruders, Inc. v. Coca-Cola Co.,
117 F.R.D. 559 (M.D.N.C. 1987)....................................................... 14

1  U.S. v. ChevronTexaco Corp.,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) ............................................................... 12

2  United States v. Martin,
3  278 F.3d 988 (9th Cir. 2002) ............................................................................... 11

4  United States v. Munoz,
   233 F.3d 1117 (9th Cir. 2000) ............................................................................. 11

5  United States v. Philip Morris Inc.,
6  209 F.R.D. 13 (D.D.C. 2002) .............................................................................. 13

7  United States v. St. Pierre,
   132 F.2d 837 ......................................................................................................... 18

8  United States v. Zolin,
9  491 U.S. 554 (1989) ............................................................................................ 20

### Statutes

Fed. R. Civ. P. 72(a) ............................................................................................. 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### Preliminary Statement

3    Mattel appeals an order by the Discovery Master in which he arbitrarily

4  denied a timely and proper motion seeking the production of an unredacted copy of

5  an e-mail written by MGA CEO Isaac Larian in March 2002.  That e-mail was

6  affirmatively used by MGA and Larian in the parties' motions for summary

7  judgment. The e-mail bears directly on Larian's efforts to hide Carter Bryant's

8  involvement in Bratz.

9    After Mattel submitted the e-mail as evidence of Larian's concealment

10  of the true origins of Bratz, in the motions for summary judgment, MGA demanded

11  the document's return, claiming that a portion was protected by attorney-client

12  privilege.  MGA then produced to Mattel a redacted version that hides critical

13  information that is not privileged.  MGA followed this by presenting the redacted e-

14  mail to the Court as evidence that MGA was not trying to conceal Bryant's work on

15  Bratz – even though the unredacted e-mail contradicts MGA's interpretation of the

16  document.

17    MGA's "claw back" of the document occurred on March 24, 2008 –

18  long after the discovery cutoff.  After the parties met-and-conferred about MGA's

19  redaction, Mattel sought relief from the Discovery Master.  Mattel's motion could

20  not have been brought earlier in the litigation, and its need for an order compelling

21  production of the intact e-mail arose only after MGA demanded its return and

22  redaction during the summary judgment briefing.  Nevertheless, the Discovery

23  Master denied Mattel's motion by including it in his Order Precluding Parties from

24  Filing any Further Discovery Motions ("April 23, 2008 Order").

25    The Discovery Master's denial of Mattel's Motion to Compel

26  Production of Document Bates Numbered MGA 3801819-22 ("Larian E-Mail

27  Motion"), in the April 23, 2008 Order, was clearly erroneous and contrary to law.

28  This Court appointed the Discovery Master to resolve all discovery disputes in this

1   matter, including those that relate to inadvertently produced documents for which a
2   party claims the attorney-client privilege.  If MGA's assertion of privilege is allowed
3   to stand, Mattel will be denied a vital piece of evidence showing that Larian and
4   MGA engaged in a calculated effort to cover up Bryant's involvement in Bratz –
5   which, in turn, shows defendants' guilty knowledge that Mattel, not MGA, owned
6   Bratz.

7           Further, if defendants are permitted to use the e-mail in its redacted
8   state, the jury will be misled about the meaning and purpose of the document.  MGA
9   has asserted that the e-mail was designed to avoid a trademark dispute with Mattel –
10  a position that is contradicted by the portion that MGA has redacted.  The true
11  meaning and purpose of the document is evident only in its unredacted state.
12  Whether MGA's redaction is proper must be decided now, prior to trial.

13          The e-mail is simply <u>not</u> a privileged communication.  It meets none of
14  the elements for attorney-client privilege.  Although two members of MGA's legal
15  staff were among the e-mail's many recipients, it is obvious from the document that
16  they were not acting in any capacity as legal advisers.  Rather, the portion redacted
17  by MGA merely gives a <u>business direction</u>, by instructing <u>MGA's chief operating
18  officer</u>, along with the two members of MGA's legal staff, ▇▇▇▇▇▇▇▇▇▇
19  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  No legal advice is sought.

20          Even if the privilege applied, MGA waived it by allowing the e-mail to
21  be used, without objection, at deposition <u>and</u> on summary judgment before
22  purporting to claw it back.  Two months after MGA produced the e-mail, Mattel
23  introduced it at Rachel Harris' deposition, and questioned her about it at length.
24  Although MGA was represented at the deposition by two attorneys, neither clawed
25  it back under the Protective Order.  Nor did they make any objection on the basis of
26  attorney-client privilege.  When Mattel submitted the e-mail in conjunction with its
27  summary judgment motion, MGA did not claw it back or even file objections to the
28  document on privilege grounds.  MGA did not assert the privilege until after Mattel

1   cited to the document <u>again</u> in support of its opposition to MGA's motion for partial
2   summary judgment.

3          MGA also waived the privilege by affirmatively relying on the e-mail
4   as evidence that Mattel's claims are time-barred. MGA contends that the e-mail
5   establishes that Mattel knew about Bryant's invention of Bratz in March 2002. The
6   redacted portion, however, shows an effort by Larian to conceal Bryant. MGA
7   seeks to use the redacted document as a sword against Mattel while using the
8   privilege as a shield that prevents Mattel from establishing the true meaning and
9   purpose of the communication. The redaction is clearly designed to hide the fact
10  that the e-mail was sent as part of a cover up of Bryant's role in creating Bratz.

11         The Discovery Master's denial of Mattel's Motion in the April 23, 2008
12  Order should be reversed, and MGA should be compelled to produce the e-mail in
13  unredacted form.

14

15                              **Factual Background**

16         In his April 23, 2008 Order, the Discovery Master observed that well
17  over 100 discovery motions had been filed in this litigation, and he noted that 23
18  motions were brought within the last week of discovery, and an additional 21
19  motions were filed after the discovery cutoff. The Discovery Master, in refusing to
20  hear any motions filed after April 16, 2008, stated, "At this state in the litigation, the
21  parties should be directing their attention to trial preparation." The Motion at issue
22  here was filed on April 18, 2008.

23         The Discovery Master's rationale for refusing to hear further motions
24  does not apply to <u>this</u> Motion. Mattel could not have sought relief from the Court
25  earlier – MGA did not claw the document back, and make an improper redaction,
26  until March 24, 2008 – long after discovery closed. Moreover, the Larian E-Mail is
27  a critical piece of <u>trial</u> evidence – as shown by both sides' use of the document in
28  their summary judgment papers and at oral argument. Given these important facts,

1  the Court should reverse the April 23, 2008 Order's denial of the Motion, and order

2  the production of an unredacted copy of MGA 380189-22.

3         <u>MGA's Production of the Larian E-mail</u>.  In December 2007, MGA

4  produced a document bearing Bates numbered MGA 3801819-22 ("Larian E-

5  Mail").[1]  The document is a March 2002 e-mail from defendant Isaac Larian to nine

6  MGA employees that references, discusses, and incorporates a non-privileged e-

7  mail from David Dees.  Dees was a vendor working on Bratz for MGA.  In response

8  to a fan question on the Yahoo "Bratzworld" site, Dees apparently sent an e-mail

9  stating that Bryant was " ████████████████████████

10 ████████████████████████████████████  Dees forwarded a copy of

11 his e-mail to Carter Bryant, and it was then forwarded by MGA's Paula

12 Treantafelles to Larian.

13        Larian responded by sending an e-mail (with the Dees e-mail to the fan

14 site attached) to nine MGA employees.  The primary recipients of the Larian e-mail

15 are Victoria O'Connor, a licensing executive at MGA, and Dave Malacrida, MGA's

16 spokesman.[3]  In the e-mail, Larian directs that ████████████████████

17 ████████████████████████████████████  Among the

18 "cc's" of the e-mail are two members of the in-house legal department, Julie Mote

19 (an attorney) and Beth Cahill (a paralegal).  Larian concludes the e-mail by giving <u>a</u>

20 <u>business instruction</u> to Abe Mirza, the company's COO, and Ms. Mote and Ms.

21 Cahill, to ████████████████████████████████.

22

23

24   [1]  Declaration of Timothy Alger  ("Alger Dec."), ¶ 2.  The Alger Dec. is Exhibit

25 B to the Notice of Lodging.  A redacted version of this document is attached to the Alger Dec. as Exh. A.

26   [2]  Exh. A to the Alger Dec.; Alger Dec., ¶ 2.

27   [3]  Exh. A to the Alger Dec.; Alger Dec., ¶ 3.

  [4]  Exh. A to the Alger Dec.

28

-4-

1   It is that business instruction that MGA later redacted from the Larian E-mail on a

2   claim of attorney-client privilege.[5]

3                    MGA Does Not Object to the Use of the Larian E-mail at the

4   Deposition of Rachael Harris.  On February 26, 2008, Mattel introduced the Larian

5   E-mail at the deposition of Rachel Harris.[6]  MGA was represented at Ms. Harris'

6   deposition by two attorneys.  Neither clawed back the Larian E-mail or even

7   objected to its introduction at the deposition.[7]  Counsel for Mattel questioned Ms.

8   Harris about the document, including Larian's response upon learning of Dees' e-

9   mail to the fan website.  Neither MGA attorney objected to or instructed on these

10  questions on the basis of the attorney-client privilege.[8]

11                   When asked about Dees' e-mail to the fan website, Ms. Harris testified

12  that ███████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████

14  ███████[9]  Ms. Harris testified ██████████████████████████████

15  ████████████████.[10]

16                   The Larian E-mail was part of a broader MGA effort to conceal

17  Bryant's involvement in Bratz.  Ms. Harris testified that ████████████████

18  ███████████████████████████████████████████████████████████

19  ████████████████████████████████[11]  Ms. Harris further testified

20  that ███████████████████████████████████████████████████

21

22  ─────────────────
     [5]  Alger Dec., ¶ 4. Larian then fired Dees for mentioning Bryant in his email
23  comments. February 26, 2008 Deposition Transcript of Rachel Harris ("Harris
     Tr."), at 261:8-267:11, Exh. B to the Alger Dec.
24   [6]  Alger Dec., ¶ 5; Harris Tr., at 261:8-267:11, Exh. B to the Alger Dec.
     [7]  Harris Tr., at 261:8-267:11, Exh. B to the Alger Dec.
25   [8]  Id.
     [9]  Id. at 262:16-17.
26  [10]  Id. at 265:19-266:18.
27  [11]  Id. at 263:1-4.

28



As Ms. Harris explained at her deposition, [REDACTED]

[REDACTED][13]   And, indeed, before this suit was filed, Larian was quoted in various news reports as claiming he created Bratz after being inspired by his children, without any mention that Bryant was actually the inventor of Bratz.[14]

Mattel Uses the Larian E-mail in its Motion for Summary Judgment.

Even after Ms. Harris' deposition, MGA did not claw back or make any assertion of privilege as to the Larian E-mail.  On March 7, 2008, Mattel submitted the Larian E-mail in support of its Motion for Partial Summary Judgment, as evidence that MGA and Larian aided and abetted Bryant's breach of his duties, among other claims.[15]  Mattel also cited to the Larian E-mail in opposition to the summary judgment motions of MGA and Bryant, in response to defendants' contention that Mattel's

[12]   Id. at 264:3-11, Exh. B to the Alger Dec. (emphasis added).
[13]   Harris Tr., at 264:22-265:2, Exh. B to the Alger Dec.
[14]   E.g., March 5, 2004 Chicago Sun-Times article, Exh. G to the Alger Dec.; March 29, 2004 San Fernando Valley Business Journal Article, Exh. H to the Alger Dec.; July 28, 2003 BusinessWeek article, Exh. I to the Alger Dec.
[15]   Alger Dec., ¶ 6.

1  claims are barred by the statute of limitations.[16]  Although defendants filed

2  objections to Mattel's summary judgment evidence, they did not raise any objection

3  to the Larian E-mail on grounds of privilege and made no effort to claw it back.[17]

4         <u>MGA Claims it Inadvertently Produced the Larian E-mail</u>.  On March

5  24, 2008, MGA for the first time claimed that it had inadvertently produced the

6  Larian E-mail and that it was protected by attorney-client privilege.[18]  MGA

7  demanded that Mattel destroy or return all copies of the Larian E-mail under the

8  claw-back provision of the Protective Order.  MGA subsequently produced a

9  redacted version of the e-mail.[19]  Mattel complied with MGA's demand, but

10  indicated that it would contest the claim of privilege.[20]

11         <u>Larian Denies Under Oath That He Attempted to Conceal Bryant's Role</u>

12  <u>in Creating Bratz</u>.  On March 26, 2008, Mattel deposed Isaac Larian for a second

13  day.  During the deposition, Larian denied that he or anyone at MGA had ever

14  attempted to



[21]

16    <u>Id</u>.

17    <u>Id</u>.; MGA's Evidentiary Objections to Mattel, Inc.'s Motion for Partial Summary Judgment ("Evidentiary Objections"), at 54, Exh. C to the Alger Dec.

18    Alger Dec., ¶ 7; March 24, 2008 letter from Amy Park to Timothy L. Alger, Exh. D to the Alger Dec.

19    Exh. A to the Alger Dec.

20    March 24, 2008 letter from Timothy L. Alger to Amy Park, Exh. E to the Alger Dec.

21    March 26, 2008 Deposition Transcript of Isaac Larian, at 275:8-11, Exh. F to the Alger Dec.

1  Larian made this denial in the face of another MGA email – addressed to him –
2  stating that the MGA employee understood ████████████████████████
3  ████████[22]

4      <u>The Discovery Master Denies Mattel's Motion Without Considering It.</u>
5  On April 18, 2008, Mattel timely filed its Motion to Compel the Production of
6  Document Bates Numbered MGA 3801919-22 (the "Motion").[23]  On April 23, 2008,
7  the Discovery Master issued his Order Precluding the Parties from Filing Any
8  Further Discovery Motions and Materials (the "April 23, 2008 Order").[24]  The April
9  23, 2008 Order stated that the Discovery Master would not entertain the Motion, or
10  any other discovery motions "beyond those submitted prior to April 16, 2008."[25]

11      <u>Mattel's Meet and Confer Efforts.</u>  On April 24, 2008, Mattel requested
12  a meeting of counsel to discuss the filing of objections with the District Court to the
13  April 23, 2008 Order.[26]  MGA declined to meet prior to the filing of this motion.
14  Mattel forwarded the basis for the motion in writing to counsel for MGA on April
15  25, 2008, and again requested a meeting.[27]  Mattel had received no response as of
16  the filing of the motion.[28]

17
18
19

---

20  [22]  Isaac Larian e-mail, dated 2-6-03, Exh. J to the Alger Dec.  In an e-mail from
21  Dee Dee Valencia to Isaac Larian, she states, ████████████████████████
     ████████████████████████
22  [23]  Exhibit A to the Notice of Lodging.
     [24]  Order Precluding the Parties from Filing Any Further Discovery Motions and
23  Materials, dated April 23, 2008, attached as Exhibit 1 to the Declaration of
24  Christopher E. Price ("Price Dec.").
25  [25]  <u>Id.</u> at 2:2-3.
     [26]  <u>See</u> E-mail from Timothy Alger to counsel for MGA and Bryant, dated April
26  24, 2008, attached to the Price Dec., Exh. 2.
27  [27]  <u>Id.</u>
     [28]  Price Dec. ¶ 3.
28

1

**Argument**

2   **I.   THE DISCOVERY MASTER'S DENIAL OF MATTEL'S MOTION**

3        **WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW**

4        The Discovery Master's denial of the Motion must be reversed, and

5   production of the unredacted Larian E-Mail must be compelled, because the

6   Discovery Master's April 23, 2008 Order was "clearly erroneous or [] contrary to

7   law." <u>Fed. R. Civ. P.</u> 72(a).  The Discovery Master was obligated to hear and decide

8   the Motion under two Orders of the District Court.

9        First, the Protective Order in this matter requires the parties to seek

10  relief from the Discovery Master if a party opposes the "claw back" of an allegedly

11  privileged document, such as the Larian E-mail.  The Protective Order provides as

12  follows:

13            If a Party or nonparty through inadvertence produces or

14            provides discovery that it, he or she believes is subject to a

15            claim of attorney-client privilege or work product

16            immunity, the producing Party or nonparty may give

17            written notice to the receiving Party that the document is

18            subject to a claim of attorney-client privilege or work

19            product immunity and request that the document be

20            returned to the producing Party or nonparty.  The

21            receiving Party shall promptly return to the producing

22            Party or nonparty the inadvertently disclosed document and

23            all copies of such document.  Return of the document by

24            the receiving Party shall not constitute an admission or

25            concession, or permit any inference, that the returned

26            document is, in fact, properly subject to a claim of

27            attorney-client privilege or work product immunity, <u>nor</u>

28            <u>shall it foreclose any Party from moving the Court for an</u>

1    <u>Order that such document has been improperly designated</u>

2    <u>or should be producible for reasons other than a waiver</u>

3    <u>caused by the inadvertent production.</u>[29]

4          Further, the parties agreed, and the Court so ordered, in the Stipulation

5    for Appointment of a Discovery Master and Order, dated December 6, 2006

6    ("Discovery Master Order"), that Judge Infante would serve as the "Court" to hear

7    all such discovery motions on the "claw back" of privileged documents.[30]

8          Pursuant to the Discovery Master Order:

9          Any and all discovery motions and other discovery

10         disputes in [this matter] shall be decided by a master

11         ('Discovery Master') pursuant to Federal Rule of Civil

12         Procedure 53 . . .

13         Judge Infante shall serve as the Discovery Master <u>until all</u>

14         <u>issues herein have been finally disposed of or determined,</u>

15         <u>or until he shall withdraw in accordance with applicable</u>

16         <u>law</u> . . . .[31]

17         Thus, by court orders, Mattel must take any dispute over MGA's

18    redaction of the Larian E-mail, in the first instance, to the Discovery Master.

19    Importantly, Judge Infante does not dispute in the April 23, 2008 Order that the

20    Larian E-Mail Motion was properly before him.

21         Accordingly, the Discovery Master's decision not to hear the Motion

22    was erroneous and contrary to the Protective Order and, in particular, the Discovery

23    Master Order.   All issues in this litigation have not been "finally disposed of or

24    _____

25    [29]  Stipulated Protective Order and Order, dated January 4, 2005 (emphasis added), attached to the Price Dec., Exh. 4.

26    [30]  See Stipulation for Appointment of a Discovery Master and Order, dated December 6, 2006, attached to the Price Dec., Exh. 3.

27    [31]  Id. at 3:12-14, 21-23 (emphasis added).

28

1 │ determined" and the Discovery Master did not "withdraw in accordance with
2 │ applicable law."  The Discovery Master therefore erred in including the Larian
3 │ E-mail Motion among the discovery motions that he declined to hear in the April 23,
4 │ 2008 order.

5 │      The Court should reverse the April 23, 2008 Order's denial of the
6 │ Larian E-mail Motion, and order the production by MGA of an unredacted copy of
7 │ MGA 3801819-22.

8 │

9 │ **II.    THE LARIAN E-MAIL IS NOT PRIVILEGED**

10 │      The burden is on MGA to establish that the Larian E-mail is protected
11 │ by attorney-client privilege.  United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir.
12 │ 2000).  The Ninth Circuit defines attorney-client privilege to include the following
13 │ elements: "(1) When legal advice of any kind is sought (2) from a professional legal
14 │ adviser in his or her capacity as such, (3) the communications relating to that
15 │ purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance,
16 │ permanently protected (7) from disclosure by the client or by the legal adviser (8)
17 │ unless the protection be waived."  United States v. Martin, 278 F.3d 988, 999 (9th
18 │ Cir. 2002).  MGA thus is not entitled to redact the Larian e-mail unless the redacted
19 │ material meets each of the elements of privilege.  Attorney-client privilege only
20 │ protects communications "necessary to obtain informed legal advice-which might
21 │ not have been made absent the privilege."  Griffith v. Davis, 161 F.R.D. 687, 694
22 │ (C.D. Cal. 1995)(quoting Fisher v. United States, 425 U.S. 391, 403 (1976)).

23 │      The Larian E-mail satisfies none of the required elements:

24 │      Larian Did Not Seek Legal Advice.  The Larian E-mail was sent in
25 │ March 2002.[32]  At that time, there was no pending or threatened litigation involving
26 │ MGA, Bryant and Bratz.  Even more importantly, no legal advice was requested in

27 │ ──────────────
   [32]  Exh. A to the Alger Dec.

28 │

1 | the e-mail.  Rather, Mr. Larian issued a simple business instruction to the company's
2 | COO, Mr. Mirza, and two members of the legal department <u>that could have been</u>
3 | <u>carried out by any employee.</u>[33]  This is shown by Mr. Larian's instruction itself,
4 | which directed them to ██████████████████████████
5 | ██████████████████.  Indeed, that Mr. Mirza, a non-lawyer, was one of
6 | the three persons to whom the identical instruction was given establishes that there
7 | was nothing "legal" about the instruction.  Nor does anything in the instruction itself
8 | suggest that its purpose was to elicit or provide the basis for legal advice – and
9 | certainly the e-mail itself makes no request for legal advice.
10 |         A communication to an in-house attorney is not automatically cloaked
11 | in privilege:
12 |         In order to show that a communication relates to legal
13 |         advice, the proponent of the privilege must demonstrate
14 |         that the "primary purpose" of the communication was
15 |         securing legal advice.  Extending protection to
16 |         communications primarily and sufficiently animated by
17 |         some other purpose would not be necessary to encourage
18 |         forthright disclosures by clients to lawyers – so such
19 |         communications should not be privileged.
20 | <u>U.S. v. ChevronTexaco Corp.</u>, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002); <u>accord</u>
21 | <u>Griffith v. Davis</u>, 161 F.R.D. 687, 697 (C.D. Cal. 1995) (party claiming privilege
22 | must "prove that all of the communications it seeks to protect were made primarily
23 | for the purpose of generating legal advice").  Larian's request that his employees
24 | carry out a business task – ████████████████████████
25 | ███████████ – lacked the goal of securing legal advice.  The redacted portion
26 | of the email is not privileged.
27 | ――――――――――――――
[33]  Alger Dec., ¶ 4.
28 |

1    The Attorney Recipient Was Not Acting in their Capacity as Such.

2    Although an attorney was among the recipients of the Larian E-mail, the

3    communication provides no indication that it was related to her role as attorney.

4    Anyone employed at MGA could carry out the task requested.  As the e-mail itself

5    reflects, whether Mr. Mirza (the COO), or Ms. Mote carried out the task did not

6    matter.  Nothing about it required the skills or knowledge of a lawyer.  The

7    communication was of a purely business nature.[34]  See United States v. Philip

8    Morris Inc., 209 F.R.D. 13, 17 (D.D.C. 2002) (ordering depositions of in-house

9    attorneys who had substantial non-legal responsibilities, including corporate,

10   business, managerial, public relations, and advertising duties).

11             [C]ommunications made by and to the . . . in-house lawyer

12             with respect to business matters, management decisions or

13             business advice are not protected by the privilege.

14             (Citations.) "The possession of a law degree and

15             admission to the bar is not enough to establish a person as

16             an attorney for purposes of determining whether the

17             attorney-client privilege applies. . . . [T]he lawyer must not

18             only be functioning as an advisor, but the advice given

19             must be predominately legal, as opposed to business, in

20             nature."

21   Boca Investerings Partnership v. U.S., 31 F. Supp. 2d 9, 11-12 (D.C.D.C. 1998)

22   (quoting North Am. Mort. Investors v. First Wisc. Nat'l Bank, 69 F.R.D. 9, 11 (E.D.

23   Wis. 1975)); accord Boston Edison Co. v. U.S., 75 Fed. Cl. 557, 563 (Fed. Ct. Cl.

24   2007) (attorney who served as consultant subject to deposition); Southern Film

25   Extruders, Inc. v. Coca-Cola Co., 117 F.R.D. 559, 561-62 (M.D.N.C. 1987)

26   (allowing deposition of attorneys who prepared proxy statement); Montebello Rose

27   _____
     [34]  Id.

28

1   Co. v. Agricultural Labor Relations Bd., 119 Cal. App. 3d 1, 32 (1981)

2   (communications of an attorney acting as negotiator were not privileged because the

3   task could have been carried out by a non-attorney).

4                The Redacted Portion of the Larian E-mail Was Not Made in

5   Confidence or Permanently Protected. Larian did not keep the communication in

6   confidence. As Ms. Harris testified, ████████████████████████

7   ████████████████████████████. Larian himself had instructed ███

8   ████████████████████████████████████████████████████

9   ████████████████████.[35] Also, the redacted portion of the Larian E-

10  Mail was mixed with other information that was clearly non-privileged, and MGA

11  concedes this by redacting only the portion giving the instruction about ████████

12  ████████. The e-mail went to nine employees, eight of them non-lawyers, and

13  there is nothing in the communication indicating a desire by Larian to keep its

14  contents confidential. See Hardy v. New York News, 114 F.R.D. 633, 644

15  (S.D.N.Y. 1987) (failure to keep legal communications segregated suggests that they

16  are not privileged); In re Rospatch Sec. Litigation, 1991 WL 574963, *7-8 (W.D.

17  Mich. March 14, 1991) (same). Thus, the statement was not made in confidence or

18  permanently protected as such.

19                Accordingly, the Larian E-mail is not privileged, and MGA should be

20  compelled to produce the document in unredacted form.

21

22  **III.   MGA WAIVED THE PRIVILEGE BY FAILING TO OBJECT TO ITS**

23         **USE AT DEPOSITION AND AS AN EXHIBIT IN THE SUMMARY**

24         **JUDGMENT PAPERS**

25                Even if the redacted portion of the Larian E-mail could be considered

26  privileged, the privilege was waived by MGA by its failure to seek return of the

27  ───────────────
    [35]   Harris Tr., at 262:11-265:2, Exh. B to the Alger Dec.

28

1  document until after its extensive use at deposition <u>and</u> as an exhibit in support of

2  Mattel's motion for partial summary judgment and in opposition to defendants'

3  motions for partial summary judgment.  The combination of these two events

4  establishes waiver.

5         Two months after its production, Mattel introduced the Larian E-mail at

6  the February 26, 2008 deposition of Rachel Harris.[36]  Ms. Harris was questioned at

7  length regarding its contents.[37]  Although two attorneys represented MGA at the

8  deposition, neither of them clawed back the e-mail or objected to the use of the

9  document on the basis of the attorney-client privilege.  Indeed, they made no

10 objection whatsoever to the document.  This is a clear waiver of the attorney-client

11 privilege.  <u>Diversified Group, Inc. v. Daugerdas</u>, 304 F. Supp. 2d 507, 515

12 (S.D.N.Y. 2003) (failure to object at a deposition waives attorney-client privilege);

13 <u>accord Palazetti Import/Export, Inc. v. Morson</u>, 2000 WL 1015921, * 1 (S.D.N.Y.

14 July 21, 2000).

15        During the meet and confer process, MGA claimed that it did not waive

16 the privilege because Ms. Harris lacked authority to do so.[38]  This misses the point.

17 MGA's attorneys were present at the deposition when the Larian E-mail was

18 introduced and discussed.  Mattel provided them with copies of the Larian E-mail,

19 and they were present as counsel for Mattel questioned the witness regarding its

20 contents.[39]

21        Nor did MGA object to Mattel's reliance on the Larian E-mail in its

22 summary judgment motion – despite the fact that the motion described it as perhaps

23 the most damning evidence of MGA's liability.[40]  Mattel certainly cast a spotlight on

24

25  [36]  Harris Tr., at 261:8-267:11, Exh. B to the Alger Dec.
    [37]  <u>Id</u>.
26  [38]  Alger Dec., ¶ 8.
    [39]  Harris Tr., at 261:8-267:11, Exh. B to the Alger Dec.
27  [40]  Alger Dec., ¶ 6.

28

1  the document. MGA filed objections to Mattel's evidence, including the Larian E-

2  Mail, but did not utter a word about attorney-client privilege.[41] MGA failed to

3  demand the document's return until three weeks after Mattel filed its summary

4  judgment motion. See S.E.C. v. Cassano, 189 F.R.D. 83, 86 (S.D.N.Y. 1999)

5  (excusable neglect must demonstrate reasonable efforts to discovery and correct

6  disclosure); F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A., 184 F.R.D. 64, 75 (D. Md.

7  1998) (burden is on privilege holder to demonstrate inadvertence).

8          MGA's claim of inadvertent production also should be rejected because

9  it will prejudice Mattel, given the state of the proceedings. Bank Brussels Lambert

10  v. Credit Lyonnais, 160 F.R.D. 437, 446 (S.D.N.Y. 1995) (unfairness to receiving

11  party grounds for finding waiver). Mattel has used the document as a key part of its

12  case – without any objection from MGA until the ship had left the dock. Indeed,

13  MGA demanded that Mattel "expunge" the document from its summary judgment

14  papers, by extracting it from the exhibits and redacting all references from the

15  briefs, separate statements, and other papers filed with the Court. To require such

16  abridgment of dispositive papers that were the result of many weeks of work and

17  substantial legal fees would be grossly unfair and prejudicial to Mattel.[42] Mattel

18  chose which arguments to make and which evidence to present and emphasize in

19  reliance on MGA's production of, and failure to object to, the Larian E-mail.

20  Nothing about the document put Mattel on notice that it was privileged – as

21  discussed above, it contains a mere business instruction, and the fact that an attorney

22  happened to be among nine employee recipients does not make the communication

23  privileged.

24

25

26

---

27  [41]  Evidentiary Objections, at 54, Exh. C to the Alger Dec.
   [42]  Alger Dec., ¶ 8.

28

1      MGA cannot now belatedly delete from the record a critical piece of

2  evidence.  The Court should order the production of the Larian E-Mail in an

3  unredacted state.

4

5  **IV.**   **MGA HAS WAIVED THE PRIVILEGE BY RELYING ON IT TO**

6        **ARGUE THAT MATTEL'S CLAIMS ARE TIME BARRED**

7      MGA also waived attorney-client privilege by affirmatively relying on

8  the Larian E-mail in support of its own motion for partial summary judgment and in

9  opposition to Mattel's motion for partial summary judgment.  Mattel submitted the

10  Larian E-mail as evidence that MGA was covering up Bryant's role in creating

11  Bratz.[43]  But MGA also relies on the Larian E-mail – and not just in response to

12  Mattel's argument.  Rather, MGA uses the e-mail to argue that Mattel's claims are

13  time-barred because ███████████████████████████████████████████

14  ████████████████████████████████"[44]  MGA goes on to

15  contend that ███████████████████████████████████████████████

16  ███████████████████████████████.[45]

17      According to MGA, the Larian E-mail shows that Mattel should have

18  known about Bryant's role because ███████████████████████████.

19  MGA has therefore placed the Larian E-Mail at issue, and is using it to obtain

20  summary judgment against Mattel on statute-of-limitations grounds.  In these

21  circumstances, a litigant cannot merely disclose those portions of a document that it

22

23  [43]  Alger Dec., ¶ 6.

24  [44]  MGA Parties' Reply Memorandum of Points and Authorities in Further Support of their Motion for Partial Summary Judgment, 4:11-12; 6:17-7:12, Exh. 5 to the Price Dec.  See also Mem. of Points and Authorities in Opposition to Mattel,

25  Inc.'s Motion for Partial Summary Judgment, at 19:9-11; 24:1-7, Exh. 6 to the Price

26  Dec.

27  [45]  April 22, 2008 Hearing Transcript, at 145:13-146:17 (Nolan argument); see also id. at 171:8-173:23 (Zeller argument).

28

-17-

1 believes helps its case, while hiding a critical passage that hurts it – a passage that,
2 as discussed below, actually contradicts MGA's interpretation of the document.

3          It is clear that a party cannot use the attorney-client privilege "as both a
4 shield and a sword."  Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003).  In
5 Bittaker, the court found that "parties in litigation may not abuse the privilege by
6 asserting claims the opposing party cannot adequately dispute unless it has access to
7 the privileged materials."  In such circumstances, the party abusing the privilege "is
8 said to have implicitly waived the privilege."  Id.  See also Chevron Corp. v.
9 Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992) (privilege waived when it "raises
10 a claim which in fairness requires disclosure of the protected communications");
11 United States v. St. Pierre, 132 F.2d 837, 840 (2d Cir. 1942 (Judge Learned Hand
12 finding waiver of Fifth Amendment Privilege because it "should not furnish one side
13 with what may be false evidence and deprive the other of any means of detecting the
14 imposition").

15          MGA's affirmative use of the Larian E-mail constitutes waiver.  For
16 this additional reason, MGA should be compelled to produce an unredacted version
17 of the e-mail.

18

19 **V.      MGA CANNOT BE PERMITTED TO REDACT THE LARIAN**
20 **         E-MAIL IN A MANNER THAT WILL MISLEAD THE JURY**

21          MGA's redaction of the Larian E-Mail also must be rejected because it
22 is a transparent attempt by defendants to mislead the jury about the meaning and
23 purpose of the e-mail.  MGA has argued that the Larian E-Mail was part of an
24 attempt to respond to Mattel's cease-and-desist letter regarding the use of Mattel
25 trademarks in connection with the Bratz fan website.[46]  The redacted portion of the
26

27 _____
    [46]  Id.
28

1  e-mail demands ████████████████████████, █████████████

2  ████. Mattel's cease-and-desist letter did not reference Bryant at all.[47]

3  Thus, if permitted, the redaction will hide the truth about Larian's

4  communication to his employees about the website, and enable MGA to mislead the

5  jury. Larian was not concerned about Mattel trademarks when he wrote the e-mail;

6  rather, he was angry about Dees' ████████████████████████████

7  ████████████████████████████████████████.

8  In February 2002, counsel for Mattel sent a cease and desist letter to

9  MGA about the use of the Mattel trademarks BARBIE and DIVA STARZ as

10 keywords for a fan website.[48] In response, counsel for MGA wrote that "MGA

11 possesses no ownership or control of the above-referenced websites."[49] Neither

12 letter made mention of Bratz or Bryant. While MGA now claims that the Larian E-

13 mail was a response to the cease-and-desist letter, it is obvious from the <u>unredacted</u>

14 e-mail that the two are unrelated. Larian's instructions to his employees were

15 clearly a reaction to Dees' ████████████████████████ – not a response to

16 a letter written more than a month earlier about use of BARBIE and DIVA STARZ

17 as search keywords.

18 Furthermore, the redacted portion of the e-mail directs MGA

19 employees to make sure ████████████████████████.

20 Because the Mattel cease-and-desist letter was unrelated to Bryant, the only possible

21 reason for this instruction was to carry out defendants' scheme to hide Bryant's role

22 in creating Bratz. MGA will argue to the jury – as it did to the Court at the hearing

23 on the motions for summary judgment – that Larian's concern over the ████████"

24

25 ─────────────
   [47] February 7, 2002 David Quinto letter to Isaac Larian, Exh. 7 to the Price Dec.
26 [48] <u>Id.</u>
   [49] February 11, 2002 Patricia Glaser letter to David Quinto, Exh. 8 to the Price
27 Dec.

28

1  the fan site was giving MGA was its use of BARBIE and DIVA STARZ.  The
2  redacted portion of the Larian E-mail contradicts this interpretation.

3          Use of attorney-client privilege to engage in evidentiary
4  gamesmanship, with the goal of misleading jurors, should not be permitted.  The
5  redacted portion of the e-mail – disclosing Larian's concern about public mention of
6  Bryant – must be disclosed to the jury.  Only in this way will the jury fully
7  understand the document's meaning and purpose.

8          Accordingly, the Court should compel the disclosure of an unredacted
9  version of the Larian E-mail.

10

11  **VI.  THE COURT SHOULD AT LEAST REVIEW THE LARIAN**
12  **E-MAIL IN CAMERA**

13          At the very least, the Court should conduct an in camera review of the
14  Larian E-mail.  That review will confirm the non-privileged nature of the document.

15          The Supreme Court has "approved of the practice of requiring parties
16  who seek to avoid disclosure of document to make the documents available for in
17  camera inspection and the practice is well established in federal courts."  United
18  States v. Zolin, 491 U.S. 554, 569 (1989).  The only threshold that must be met is
19  "evidence sufficient to support a reasonable belief that in camera review may yield
20  evidence that establishes the exception's applicability."  Id. at 574.  Here, ample
21  evidence has been provided to justify in camera review.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Conclusion**

For the foregoing reasons, the Court should reverse the decision of the

Discovery Master and compel the production of the Larian E-mail in an unredacted

state.

DATED:  April 28, 2008                    QUINN EMANUEL URQUHART OLIVER &
                                          HEDGES, LLP


By_____
      Timothy L. Alger
      Attorneys for Mattel, Inc.

07209/2485655.1

-21-

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On April 28, 2008, I served true copies of the following documents described as:

**CONFIDENTIAL – MATTEL, INC.'S NOTICE OF MOTION AND MOTION OBJECTING TO DISCOVERY MASTER'S DENIAL OF MOTION TO COMPEL PRODUCTION OF DOCUMENT BATES NUMBERED MGA 3801819-22; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

| Keker & Van Nest, LLP<br>John W. Keker, Esq./Michael H. Page, Esq.<br>Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111 | |
|---|---|

[√]     **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart Oliver & Hedges for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. I enclosed the foregoing in sealed envelope(s) addressed as shown above, and such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

[√]     **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in sealed envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) being served.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 28, 2008, at Los Angeles, California.

Kelly Velazquez

07209/2459122.1

1

## PROOF OF SERVICE

2    I am employed in the County of Los Angeles, State of California.  I am over the age of

3    eighteen years and not a party to the within action; my business address is 865 South Figueroa

4    Street, 10th Floor, Los Angeles, California 90017.

5    On April 28, 2008, I served true copies of the following documents described as:

6    **CONFIDENTIAL - MATTEL, INC.'S NOTICE OF MOTION AND MOTION**

7    **OBJECTING TO DISCOVERY MASTER'S DENIAL OF MOTION TO COMPEL**

8    **PRODUCTION OF DOCUMENT BATES NUMBERED MGA 3801819-22; AND**

9    **MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071 | Overland Borenstein Scheper & Kim LLP<br>Mark E. Overland, Esq/David C. Scheper Esq<br>Alexander H. Cote Esq<br>601 West Fifth Street, 12th Floor<br>Los Angeles, CA  90071-2025 |

13

14    [√ ]    **[PERSONAL]** by personally delivering the document listed above to the person(s)

15    at the address(es) set forth above.

16

17    I declare that I am employed in the office of a member of the bar of this court at whose

direction the service was made.

18

19    Executed on April 28, 2008, at Los Angeles, California.

20

21    _____

Dave Quintana

22

23

24

25

26

27

28

07209/2459122.1