QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**[PUBLIC REDACTED]**
DECLARATION OF CHRISTOPHER E PRICE IN SUPPORT OF MOTION OBJECTING TO DISCOVERY MASTER'S DENIAL OF MOTION TO COMPEL PRODUCTION OF DOCUMENT BATES NUMBERED MGA 3801819-22

Hearing Date: June 16, 2008
Time: 10:00 a.m.
Place: Courtroom 1

**Phase 1**
Pre-Trial Conference: May 19, 2008
Trial Date: May 27, 2008

DECLARATION OF CHRISTOPHER E. PRICE

I, Christopher E. Price, declare as follows:

1. I am a member of the bar of the State of California and am Of Counsel with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2. Attached as Exhibit 1 is a true and correct copy of the Discovery Master's Order, dated April 23, 2008.

3. Attached as Exhibit 2 is a true and correct copy of an e-mail from Timothy Alger to counsel for MGA and Bryant, dated April 24, 2008. As of the filing of this motion, Mattel has received no response to its meet and confer efforts.

4. Attached as Exhibit 3 is a true and correct copy of the Stipulation for Appointment of a Discovery Master and Order, dated December 6, 2006.

5. Attached as Exhibit 4 is a true and correct copy of the Stipulated Protective Order and Order, dated January 4, 2005.

6. Attached as Exhibit 5 is a true and correct copy of the MGA Parties' Reply Memorandum of Points and Authorities in Further Support of their Motion for Partial Summary Judgment.

7. Attached as Exhibit 6 is a true and correct copy of the MGA Parties' Mem. of Points and Authorities in Opposition to Mattel, Inc.'s Motion for Partial Summary Judgment.

8. Attached as Exhibit 7 is a true and correct copy of a February 7, 2002 letter from David Quinto to Isaac Larian.

9. Attached as Exhibit 8 is a true and correct copy of a February 11, 2002 letter from Patricia Glaser to David Quinto.

10. Attached as Exhibit 9 is a true and correct copy of relevant excerpts from the rough transcript of the April 22, 2008 hearing on the parties' motions for partial summary judgment, Volume 1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 28, 2008, at Los Angeles, California.

Christopher E. Price

Exhibit 1

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER PRECLUDING PARTIES FROM FILING ANY FURTHER DISCOVERY MOTIONS AND MATERIALS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

On April 18, 2008, Mattel, Inc. ("Mattel") submitted a Motion to Compel the Production of Document Bates Numbered MGA3801819-22 ("Motion"), which brings the total number of discovery motions brought in this case to well over one hundred. Discovery closed on January 28, 2008. The parties submitted twenty-three discovery motions within the last week of discovery. After the discovery cut-off, the parties submitted an additional twenty-one discovery motions. A pretrial conference is scheduled for May 5, 2008, and trial is scheduled to commence

on May 27, 2008. At this stage in the litigation, the parties should be directing their attention to trial preparation. Therefore, the Discovery Master will not entertain this Motion or any further discovery motions beyond those that were submitted prior to April 16, 2008. Accordingly, the parties shall immediately cease submitting discovery motions and other materials to the JAMS Office absent further order of the Discovery Master.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: April 23, 2008

/s/
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 23, 2008, I served the attached ORDER PRECLUDING PARTIES FROM FILING ANY FURTHER DISCOVERY MOTIONS AND MATERIALS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 23, 2008, at San Francisco, California.

[signature]
Sandra Chan

Exhibit 2

## Christopher Price

**From:** Timothy Alger

**Sent:** Friday, April 25, 2008 8:03 AM

**To:** 'Mumford, Marcus R'; 'Herrington, Robert J (LAC)'; 'mwerdegar@kvn.com'; 'Park, Amy S (PAL)'

**Cc:** Michael T Zeller; Jon Corey; Dylan Proctor; Christopher Price; John Quinn

**Subject:** RE: Judge Infante's Order of April 23, 2008

Marcus, I don't appreciate the name-calling. I have simply asked for someone representing MGA to meet-and-confer, and it would seem that someone on your team can break away for a few minutes today. Your refusal to confer until after 4 p.m. on Monday is quite transparent and is clearly calculated to delay Judge Larson's hearing on the issue by a full week. Such gamesmanship is particularly inappropriate as trial draws closer. Judge Infante's April 23, 2008 ruling requires prompt review by the District Court.

By the stipulation and court order appointing a Discovery Master in this case, the Discovery Master's rulings are treated like those of a Magistrate Judge. Such rulings should be overruled if they are "clearly erroneous or [] contrary to law." Fed. R. Civ. P. 72(a). That is the case here.

First, the Protective Order in this matter requires the parties to seek relief from the Discovery Master if a party opposes the "claw back" of an allegedly privileged document, such as the Larian E-mail. The Protective Order provides:

> If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty. The receiving Party shall promptly return to the producing Party or nonparty the inadvertedly disclosed document and all copies of such document. Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, *nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.*

The Parties agreed, and the Court so ordered, in the Stipulation for Appointment of a Discovery Master and Order, dated December 6, 2006 ("Discovery Master Order"), that Discovery Master Infante would serve as the "Court" to hear all such discovery motions on the "claw back" of privileged documents. Importantly, Judge Infante, in the April 23, 2008 Order, does not dispute that Mattel's Motion was properly in front of him.

Pursuant to the Discovery Master Order:

> Any and all discovery motions and other discovery disputes in [this matter] shall be decided by a master ('Discovery Master') pursuant to Federal Rule of Civil Procedure 53 . . .
>
> Judge Infante shall serve as the Discovery Master *until all issues herein have been finally disposed of or determined, or until he shall withdraw in accordance with applicable law . . .*

By Court Orders, Mattel's only avenue of relief concerning the production of the Larian E-mail is with the Discovery Master.

The Discovery Master's decision not to hear the Motion was erroneous and contrary to the Protective Order and, in particular, the Discovery Master Order. The Discovery Master's reason for refusing to hear the Motion was that

"at this stage in the litigation, the parties should be directing their attention toward trial preparation." Mattel's Motion does just that -- by moving to compel the production of the Larian E-mail, Mattel seeks the discovery of critical information for trial. Further, all issues in this litigation have not been "finally disposed of or determined" and the Discovery Master did not "withdraw in accordance with applicable law."

Marcus, hopefully someone can give me a call today to discuss this. If not, Mattel will inform Judge Larson of our communications with you when it files its motion on Monday.

Best regards,

Tim

---

**From:** Mumford, Marcus R [mailto:Marcus.Mumford@skadden.com]
**Sent:** Thursday, April 24, 2008 8:28 PM
**To:** Timothy Alger; Herrington, Robert J (LAC); mwerdegar@kvn.com; Park, Amy S (PAL)
**Cc:** Michael T Zeller; Jon Corey; Dylan Proctor; Christopher Price; John Quinn
**Subject:** RE: Judge Infante's Order of April 23, 2008

Tim,
Don't be such a peeve, man. You did not request a meet and confer until a few hours ago. As I said, we are not available tomorrow. Instead of making snide and petty asides, please provide the basis and authority you intend to rely on in objecting to Judge Infante's order. We reiterate our availability to meet and confer on this issue Monday afternoon, and look forward to receiving such authority with sufficient lead time so that the parties can meet and confer in good faith.
-Marcus

Marcus R. Mumford
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue | Los Angeles | California | 90071-3144
T: 213.687.5514 | F: 213.621.5514
mmumford@skadden.com

---

**From:** Timothy Alger [mailto:timalger@quinnemanuel.com]
**Sent:** Thursday, April 24, 2008 6:50 PM
**To:** Mumford, Marcus R (LAC); Herrington, Robert J (LAC); 'mwerdegar@kvn.com'; Park, Amy S (PAL)
**Cc:** Michael T Zeller; Jon Corey; Dylan Proctor; Christopher Price; John Quinn
**Subject:** RE: Judge Infante's Order of April 23, 2008

Marcus,

We will be filing the motion on Monday. It would seem that one of the many members on your team -- many of whom were able to spare the day to be spectators in court all day Tuesday -- could take 5 or 10 minutes between now and the close of business on Friday to discuss the anticipated motion. Please let me know what works. If this is impossible, we will simply inform the court when we file the motion.

Best regards,
Tim

---

**From:** Mumford, Marcus R [mailto:Marcus.Mumford@skadden.com]
**Sent:** Thursday, April 24, 2008 6:25 PM
**To:** Timothy Alger; Herrington, Robert J (LAC); mwerdegar@kvn.com; Park, Amy S (PAL)
**Cc:** Michael T Zeller; Jon Corey; Dylan Proctor; Christopher Price; John Quinn
**Subject:** RE: Judge Infante's Order of April 23, 2008

Tim,
Amy and I are unavailable to meet and confer on this issue tomorrow. I can do it Monday afternoon around 4. Or Tuesday morning at 10 or so. Please let me know.
-Marcus

Marcus R. Mumford
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue | Los Angeles | California | 90071-3144
T: 213.687.5514 | F: 213.621.5514
mmumford@skadden.com

---

**From:** Timothy Alger [mailto:timalger@quinnemanuel.com]
**Sent:** Thursday, April 24, 2008 5:06 PM
**To:** Herrington, Robert J (LAC); mwerdegar@kvn.com; Park, Amy S (PAL); Mumford, Marcus R (LAC)
**Cc:** Michael T Zeller; Jon Corey; Dylan Proctor; Christopher Price; John Quinn
**Subject:** Judge Infante's Order of April 23, 2008

Counsel:

Mattel would like to meet-and-confer tomorrow, if possible, preliminary to the filing of objections with the District Court to the Discovery Master's Order of April 23, 2008, in which the Discovery Master declined to consider Mattel's Motion to Compel the Production of Document Bates Numbered MGA 3801819-22. I propose 10 a.m., but would be glad to adjust the specific time to suit your schedules.

Best regards,

Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3223
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: timalger@quinnemanuel.com
Web: www.quinnemanuel.com

------------------------------------------------------------------------------
****************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ******************************************************
****************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided

upon request. ***************************************************

---

*************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ***************************************************
*************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. ***************************************************

# Exhibit 3

ORIGINAL

LODGED

FILED

2006 DEC -6 PM 4:39

CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. RIVERSIDE

Send

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemnauel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

[Additional counsel listed on following page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC., a Delaware corporation,

Defendant.

Case No. CV 04-09049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND ~~[PROPOSED]~~ ORDER

Discovery Cutoff Date: Not Set
Trial Date: Not Set

LITTLER MENDELSON
Robert F. Millman (Bar No. 062152)
Douglas A. Wickham (Bar No. 127268)
Keith A. Jacoby (Bar No. 150233)
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Telephone: (310) 553-0308
Facsimile: (310) 553-5583

Attorneys for Carter Bryant

O'MELVENY & MYERS LLP
Diana M. Torres (Bar No. 162284)
400 S. Hope Street
Los Angeles, California 90017
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

O'MELVENY & MYERS LLP
Dale Cendali
Times Square Tower
7 Times Square
New York, NY 10036

CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
Patricia Glaser (Bar No. 55668)
10250 Constellation Boulevard - 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for MGA Entertainment, Inc.

WHEREAS, the parties are in agreement that a discovery master should be appointed in this matter to resolve any discovery disputes and to minimize the burden on the Court; and

WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante (Ret.), and he has agreed to serve as a discovery master in this matter;

NOW, THEREFORE, to facilitate the fair and efficient completion of pre-trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment, Inc., by and through their respective counsel of record, hereby stipulate and agree as follows:

1. The Discovery Master shall be appointed to assure and provide cost-effective discovery and to minimize the burden of discovery disputes upon the Court. Any and all discovery motions and other discovery disputes in the above captioned action shall be decided by a master ("Discovery Master") pursuant to Federal Rule of Civil Procedure 53. Any motions currently pending before Magistrate Judge Block shall be transferred to the Discovery Master. The moving party shall provide to the Discovery Master all papers associated with each pending motion.

2. The Discovery Master shall be Hon. Edward A. Infante (Ret.). His business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA 94111.

3. Judge Infante shall serve as the Discovery Master until all issues herein have been finally disposed of or determined, or until he shall withdraw in accordance with applicable law. If at any time he becomes unable to serve as the Discovery Master, the parties shall confer to present an alternative agreed-upon designee to the Court. In the event that the parties cannot agree to an alternate designee, then the Court shall appoint a Discovery Master.

4. The Discovery Master shall have the authority to set the date, time, and place for all hearings determined by the Discovery Master to be necessary; to

preside over hearings (whether telephonic or in-person); to take evidence in connection with discovery disputes; to issue orders resolving discovery motions submitted to the Discovery Master; to conduct telephonic conferences to resolve discovery disputes arising during depositions; to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorney's fees, as provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and recommendations, as appropriate.

5. All discovery disputes shall be resolved by motion (except those arising during a deposition which the Discovery Master determines can be resolved by telephonic conference during the deposition). The moving party shall first identify each dispute, state the relief sought, and identify the authority supporting the requested relief in a meet and confer letter that shall be served on all parties by facsimile or electronic mail. The parties shall have five court days from the date of service of that letter to conduct an in-person conference to attempt to resolve the dispute. If the dispute has not been resolved within five court days after such service, the moving party may seek relief from the Discovery Master by formal motion or letter brief, at the moving party's option. The opposing party shall have five court days from the date of service of the motion or letter brief to submit a formal opposition or response. Any reply brief or letter brief shall be served within three court days from the date of service of a formal opposition or response. The hearing on the motion shall take place within five court days of the service of any reply brief or letter unless (a) the parties agree to another hearing date or agree that no hearing is necessary; (b) the Discovery Master determines that no hearing is necessary; or (c) the Discovery Master is not available, in which case the hearing shall take place on the Discovery Master's first available date. The foregoing shall not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from seeking the Discovery Master's immediate resolution of a dispute or resolution of a dispute upon shortened time upon a showing of good cause why a party would be

prejudiced absent prompt resolution. Service of any document by fax or electronic mail prior to 6:00 p.m. shall constitute service on that day.

6. The Discovery Master's orders resolving discovery disputes, reports, or recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a Magistrate Judge of the United States District Court. The Discovery Master shall file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve the parties within five court days of his/her decision on a matter.

7. A court reporter shall transcribe any hearing or other proceeding before the Discovery Master.

8. The cost of any proceeding before the Discovery Master, including the fees of the Discovery Master, the fees of court reporters who transcribe hearings or other proceedings before the Discovery Master, and the fees of any other person necessary to the efficient administration of the proceeding before the Discovery Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment, Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure, the Discovery Master Orders otherwise. By agreeing to share costs among the parties, no party waives its right to seek recovery or reimbursement for such costs from any other party.

9. The Discovery Master shall be compensated according to his regular hourly rate of $750.

10. Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery Master shall proceed with all reasonable diligence.

11. Based on an affidavit filed by Hon. Edward A. Infante pursuant to 28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not aware that he has a relationship to the parties, to counsel, to the action, or to the Court that would require disqualification of a judge under 28 U.S.C. § 455, and based thereon the parties expressly waive any ground for disqualification disclosed therein of Hon. Edward A. Infante to serve as master in these proceedings.

12. The Discovery Master shall not have ex parte communications with ~~the Court~~, a party or counsel.

13. The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master. These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14. The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

15. All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November 29, 2006

O'MELVENY & MYERS LLP

By: [signature]
Diana Torres
Attorneys for MGA Entertainment, Inc.

Dated: November 29, 2006

LITTLER MENDELSON

By: [signature]
Douglas A. Wickham
Attorneys for Carter Bryant

Dated: ~~November~~ December 4, 2006

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: Jon D. Corey
Jon D. Corey
Attorneys for Mattel, Inc.

## ORDER

The foregoing Stipulation for Appointment of a Discovery Master is SO ORDERED as modified.

Dated: 12-6-06.

Hon. Stephen G. Larson
United States District Court Judge

## CONSENT OF DISCOVERY MASTER

If appointed by the Court, I, the undersigned, consent to serve as Discovery Master in the above referenced proceeding consistent with this Order.

Dated: 12-5-06

Edward A. Infante
Hon. Edward A. Infante (Ret.)

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.

**Keith A. Jacoby, Esq.**
**Douglas Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
**Fax: 310-553-5583**

**Diana M. Torres, Esq.**
**O'Melveney & Meyers**
400 S. Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
**Fax: 213-430-6407**

[ ] By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[X] **BY MAIL**

[ ] I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ] **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 5, 2006, at Los Angeles, California.

[ ] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Cheri Hatch
Print Name

[signature]
Signature

# Exhibit 4

COPY

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
Michael T. Zeller (Bar No. 196417)
Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

FILED
CLERK, U.S. DISTRICT COURT
JAN - 4 2005
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

LODGED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation,

Plaintiff,

v.

CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,

Defendants.

---

CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,

Counter-Claimant,

v.

MATTEL, INC., a Delaware Corporation,

Counter-Defendant.

CASE NO. CV 04-9059 NM (RNBx)

STIPULATED PROTECTIVE ORDER; AND

~~[PROPOSED]~~ ORDER

[Discovery Matter]

1-4

GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1) Personnel files and other private or confidential employment, contractor or vendor information;

(2) The specific terms of agreements with, and information received from, third parties that a Party is required to disclose only under conditions of confidentiality;

(3) Personal or private financial information, and confidential financial data that is not known generally to the trade or to competitors, including financial data relating to specific sales, cost and profit information for specific products and product lines; and

(4) Business plans and product information that are not known generally to the trade or to competitors, including non-public information relating to product development and design.

WHEREFORE, believing that good cause exists, the Parties HEREBY STIPULATE that, subject to the Court's approval, the following procedures shall be followed in this Action to facilitate the orderly and efficient discovery of relevant information while minimizing the potential for unauthorized disclosure or use of confidential or proprietary information:

SCOPE OF THIS ORDER

1. This Protective Order shall apply to trade secret, confidential and proprietary information, documents and things that are produced or disclosed in any form during the course of the Action by any Party or any nonparty:

(a) through discovery;

(b) in any pleading, document or other writing; or

(c) in testimony given at a deposition.

(The foregoing information, documents and things shall be referred to hereinafter collectively as "Litigation Materials.")    

CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2.     Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.   The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.   The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.      Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

MANNER OF DESIGNATION OF MATERIALS

3.     A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a)   Documents or Things.    "CONFIDENTIAL"   or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" on the particular document or thing.

(b) Interrogatory Answers and Responses to Requests for Admissions. In answering any interrogatory or request for admission, or any part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" answers shall be made on separate pages from any other answers or portions thereof that are not designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

(c) Deposition Testimony. Any Party or nonparty giving deposition testimony in this Action may obtain "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by designating, during the course of that testimony, for which "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired, the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," or alternatively by designating the entire testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," subject to a good faith obligation to identify any non-confidential portions of the testimony (and/or any lesser "CONFIDENTIAL" portions in the event that the entire testimony is designated "CONFIDENTIAL -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after receipt of the transcript of the testimony. The reporter shall separately transcribe and bind the testimony so designated as "CONFIDENTIAL" and "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face of the separate bound transcript containing such testimony with the term "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given. Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

accordance with the terms of this Protective Order. In addition, the provisions of Paragraph 3(e) for later designating transcripts or exhibits shall apply after the expiration of the fourteen (14) calendar day period described in this Paragraph 3(c).

(d) Typing or stamping the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a collection of Litigation Materials which are bound together shall have the effect of designating such collection in its entirety as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks, tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling, stamping or marking the outside of such disk, tape, CD-ROM, DVD or other medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire contents of such disk, tape, CD-ROM, DVD or other medium or device, and all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," as the case may be.

(e) Except as otherwise provided in Paragraph 3(c) of this Protective Order, the receiving Party shall not reveal any information produced for a period of seven (7) calendar days following receipt. Failure to designate a document, thing or other information as CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this Protective Order shall not preclude any Party or nonparty desiring to so designate the document, thing or information from so designating thereafter; provided that the Party or nonparty proceeds promptly after discovery of any omission of marking, in good faith marks the document, thing or other information and requests, in writing, that each receiving Party so mark and treat the document, thing or other information in accordance with this Protective Order. Thereafter, the document, thing or other information shall

be fully subject to this Protective Order. No Party shall incur liability for any disclosures made prior to notice of such designation, except to the extent that any such disclosures occurred prior to the seven (7) day period described above or prior to such other time periods as are provided by this Protective Order, including without limitation such time periods as are provided in Paragraph 3(c) above.

RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

4. Any Litigation Materials produced or disclosed in this Action, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such information for purposes of litigation and not for any other purpose, including without limitation for any business or trade purpose. As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in connection with any mediation or other alternative dispute resolution procedure that this or any other court may order or that the Parties may agree to.

5. Subject to Paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be disclosed to any person other than:

(a) the attorneys for the Parties and their partners, shareholders, associates, document clerks and paralegals who are necessary to assist such attorneys;

(b) secretaries, stenographers and other office or clerical personnel employed by said attorneys and who are necessary to assist such attorneys;

(c)  a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)  the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)  such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)  outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)  professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)  independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)  non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

6.    Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)    the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys. For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)    secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)    the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)    such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)    outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)    independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

(g) professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators.

7. None of the following is bound by or obligated under this Order in any respect and specifically are not bound or obligated to treat information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in any particular manner: The Court hearing this Action (including the Court having jurisdiction of any appeal), Court personnel, court reporters working for the Court, translators working for the Court, or any jury impaneled in this Action.

8. Other than those identified in Paragraph 7 above, each person to whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this Protective Order and agree to be bound by it before disclosure to such persons of any such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall not have access to either "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, as the case may be, until they have certified that they have read this Protective Order and have manifested their assent to be bound thereby by signing a copy of the Assurance of Compliance attached hereto as Exhibit A. Once a person has executed such an Assurance of Compliance, it shall not be necessary for that person to sign a separate Assurance of Compliance each time that person is subsequently given access to confidential material. Any person who signed an Assurance of Compliance in connection with the Stipulation for Protection of Confidential Information and Protective Order filed September 16, 2004 in Mattel Inc. v. Bryant, Case No. BC 314398, pending in Los Angeles County Superior Court, need not re-sign the Assurance of Compliance attached hereto but shall, by virtue of his or her prior signature, be deemed to have signed the attached Assurance of Compliance.

9.      The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.     If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.     Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.     The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

13. If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty. The receiving Party shall promptly return to the producing Party or nonparty the inadvertently disclosed document and all copies of such document. Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14. Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the Federal Rules of Civil Procedure and the Local Rules. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

FILING AND USE IN COURT OF DESIGNATED MATERIALS

15. Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in Local Rule 79-5.1, as such

Rule may be amended from time to time. Prior to the time that a Party receiving the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information from any other Party files with the Court an application and the other materials required by Local Rule 79-5.1, as such Rule may be amended from time to time, to seal the producing Party's confidential information, the receiving Party shall consult with the producing Party's attorney to determine whether the producing Party will re-designate the previously designated confidential information so as to avoid the need for the request to file such information under the seal. Upon the default of a Party to seek the Court's approval to file a document containing "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any Party may subsequently seek the approval of the Court to file that document under seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule may be amended from time to time.

THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

16. If any Party or nonparty receives a subpoena or document request from a third party which purports to require the production of materials in that Party's possession which have previously been designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty, the Party or nonparty receiving such subpoena or document request (a) shall object and refuse to produce documents absent a Court Order or the consent of the Party or nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request, and (c) shall not oppose any effort by the Party or nonparty which designated the material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

ONLY" to quash the subpoena or obtain a protective order limiting discovery of such material.

DISCOVERY FROM NONPARTIES

17. Discovery of nonparties may involve receipt of information, documents, things or testimony which include or contain "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information. A nonparty producing such material in this case may designate as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it produces in the same manner provided for in this Protective Order with respect to material furnished by or on behalf of the Parties. Any Party may also designate as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any materials or information produced by a nonparty that constitute "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating Party under Paragraph 2 of this Protective Order, regardless of whether the producing nonparty has also so designated. In addition, a nonparty may also designate as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any materials or information produced by a Party that constitute "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such nonparty under Paragraph 2 of this Protective Order, regardless of whether the producing Party has also so designated. In either such an event, the designation providing for the greater level of protection for the material information shall control, subject to Paragraph 10 of this Protective Order. Nonparty materials designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a nonparty or Party shall be governed by the terms of this Protective Order.

CONCLUSION OF LITIGATION

18. Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession. In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties. Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order. This Protective Order shall continue to be binding after the conclusion of this Action.

AMENDMENT OF THIS AGREEMENT

19. The provisions of this Stipulation and Protective Order may be modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this

Stipulation and Protective Order pursuant to a motion brought in accordance with the rules of the Court.

**IT IS SO STIPULATED.**

DATED: December 22, 2004

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
Jon Corey
Attorneys for Plaintiff
Mattel, Inc.

DATED: December __, 2004

LITTLER MENDELSON

By ______________________
Douglas A. Wickham
Attorneys for Defendant
Carter Bryant

DATED: December __, 2004

O'MELVENY & MEYERS, LLP

By ______________________
Diana M. Torres
Attorneys for Intervenor-Defendant
MGA Entertainment, Inc.

**IT IS SO ORDERED.**

DATED: 1/4/05

ROBERT N. BLOCK
THE HONORABLE ROBERT N. BLOCK
United States Magistrate Judge

Stipulation and Protective Order pursuant to a motion brought in accordance with the rules of the Court.

**IT IS SO STIPULATED.**

DATED: December __, 2004

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By ______________________
Jon Corey
Attorneys for Plaintiff
Mattel, Inc.

DATED: December 21, 2004

LITTLER MENDELSON

By ______________________
Douglas A. Wickham
Attorneys for Defendant
Carter Bryant

DATED: December __, 2004

O'MELVENY & MEYERS, LLP

By ______________________
Diana M. Torres
Attorneys for Intervenor-Defendant
MGA Entertainment, Inc.

**IT IS SO ORDERED.**

DATED: ______________

______________________
THE HONORABLE ROBERT N. BLOCK
United States Magistrate Judge

Stipulation and Protective Order pursuant to a motion brought in accordance with the rules of the Court.

**IT IS SO STIPULATED.**

DATED: December __, 2004

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By ______________________
Jon Corey
Attorneys for Plaintiff
Mattel, Inc.

DATED: December __, 2004

LITTLER MENDELSON

By ______________________
Douglas A. Wickham
Attorneys for Defendant
Carter Bryant

DATED: December __, 2004

O'MELVENY & MEYERS, LLP

By ______________________
Diana M. Torres
Attorneys for Intervenor-Defendant
MGA Entertainment, Inc.

**IT IS SO ORDERED.**

DATED: ______________

______________________
THE HONORABLE ROBERT N. BLOCK
United States Magistrate Judge

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 22, 2004, I served the foregoing document described as

**STIPULATED PROTECTIVE ORDER; AND [PROPOSED] ORDER**

on all interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[ ] By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ] **BY MAIL**

[ ] I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ] **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on December 22, 2004, at Los Angeles, California.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Ivana Maiorano
Print Name

[signature]
Signature

**Robert F. Millman, Esq.**
**Douglas A. Wickham, Esq.**
**Keith A. Jacoby, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
**Fax: 310-553-5583**

**Diana M. Torres, Esq.**
**O'Melveney & Meyers**
400 S. Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
**Fax: 213-430-6407**

**Daniel J. Warren, Esq.**
**Sutherland, Asbill & Brennan**
999 Peachtree Street NE
Atlanta, GA 30309-3996
Phone: 404-853-8698
**Fax: 404-853-8806**

**EXHIBIT 5 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 6 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

# Exhibit 7

quinn emanuel los angeles
865 South Figueroa Street, 10th Floor | Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

writer's direct dial no.

February 7, 2002

Isaac Larian
President
MGA Entertainment
16730 Schoenborn Street
North Hills, California 91343-6122

Trademark Infringement

Dear Mr. Larian:

We are counsel to Mattel, Inc. We are writing to request that MGA Entertainment immediately and permanently cease infringing Mattel's BARBIE and DIVA STARZ trademarks.

The marks are being infringed by the Bratz Yahoo! discussion group Web sites. Enclosed is a copy of the home page from one such site. The "keywords"--designated by MGA--include "Barbie" and "Divastar." Thus, when Internet users search Yahoo! for discussion groups related to Mattel's BARBIE and DIVA STARZ dolls, the Bratz discussion group sites are identified.

The courts have not hesitated to enjoin the use of a competitor's mark to divert Internet users from finding a competitor's Web site or to drive traffic to the infringer's site. For example, in Brookfield Communications, Inc. v. West Coast Entertainment, 174 F.3d 1036 (9th Cir. 1999), the Ninth Circuit held that a mark owner was entitled to an injunction prohibiting the defendant from using terms buried in code on its Web site that were confusingly similar to the plaintiff's registered mark. The court found that even though an Internet user diverted to the defendant's Web site would presumably realize in short order that he or she had found the wrong site, the

quinn emanuel urquhart oliver & hedges, llp
san francisco | palo alto | indian wells
201 Sansome Street, 6th Floor, San Francisco, California 94104, TEL 415-986-5700 FAX 415-986-5707
2479 East Bayshore Road, Suite 809, Palo Alto, California 94303, TEL 650-494-3900 FAX 650-494-3928
45-025 Manitou Drive, Suite 8, Indian Wells, California 92210, TEL 760-345-4757 FAX 760-345-2414

improper use of the plaintiff's marks in the defendant's code could result in improper initial interest confusion. Id. at 1062. Similarly, in Playboy Enterprises, Inc. v. AsiaFocus International, Inc., No. CIV. A. 97-734-A, 1998 WL 724000 at *6-*9 (E.D. Va. 1998), the court found that the defendant's use of the PLAYBOY and PLAYMATE marks in its HTML code misled viewers into believing that its Web site was connected with, or sponsored by, Playboy. The court awarded over $3 million in damages and attorneys' fees. To similar effect is Playboy Enterprises v. Calvin Designer Label, 985 F. Supp. 1220 (N.D. Cal. 1997), enjoining the defendants from using the plaintiff's marks in buried code so at to create a likelihood of confusion, mistake or deception.

Accordingly, Mattel must request that MGA Entertainment provide written confirmation within one week that all keywords on Bratz sites that consist of terms identical or confusingly similar to Mattel marks have been removed and that MGA Entertainment will not again use Mattel's marks in such manner. Absent such confirmation, Mattel will not hesitate to pursue its legal remedies. Please let us hear from you promptly.

Very truly yours,

David W. Quinto

DWQ:ok
08730/399415.1

cc: Michele McShane, Esq.
Adrian M. Pruetz, Esq.



Welcome, Guest

- Already a member? Sign in to Yahoo!
- Not a member? Join This Group!

Home
Messages
Chat
Files
Photos
Bookmarks
Database
Polls
Calendar
Promote

★ = Owner
☆ = Moderator
◎ = Online

Description | Category: Dolls

Bratz World- for all you Bratz and Bratz doll lovers. Stories, art, fun stuff,-make up Bratz adventures, who are you, what do you want to be, talk about your world. Check in for all the updates and new stuff about the BRATZ! Check the press releases in the files section for updates and pictures on cool new Bratz stuff. Go check out some fab pictures in the photo sections, make and add your own Bratz Pix, polls and bookmarks, talk with other Bratz fans. Go and have fun at the cool official interactive site too: www.BratzPack.com

Group Info
Members: 406
Founded: Oct 19,
Language: English

Group Settings
- Listed in directory
- Open membership
- All messages require approval.
- All members may post
- Archives for members only
- Email attachments are permitted

Make sure you join the BratzWorldPix site too for more albums we couldn't fit here :)

http://groups.yahoo.com/group/BratzWorldPix

KEYWORDS, Bratz, Barbie, Dawn, Gene, Blythe, Little Big Eyes, Divastar, Britney, doll club, doll collecting, fashion dolls, toy collecting, modern dolls, doll stories, girl's club, doll art, funky dolls, collectibles, contemporary dolls, fun fashion, funky, teen lifestyle, cool club

All custom pictures in Yahoo photo album (c)2001-2002CSM (you will also see these in use throughout the group), please make sure you mark your own creations :) Not affiliated with bratzworld.com, that web address is not doll related.

(sorry to have to write this- apparently the copyright warning up already wasn't clear enough to some:) DO NOT USE PEOPLE's PERSONAL BRATZ PICTURES FROM HERE ON EBAY or anywhere else. (You might be polite and ask first if you really want to but if they say NO and you do it anyway-) YOU WILL BE

REPORTED. These are private creations not for public auctions and general use and not to be used without permission. Uncopyright and copyright w/permission pictures are collected from Ebay for info purposes, but the private creative works of people here are not for free use on Ebay, etc. Be creative and HONEST- make your own images.

**Most Recent Messages**

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2002 | 393 | | | | | | | | | | | |
| 2001 | | | | | | | | | | 35 | 207 | 277 |

**Group Email Addresses**

For more information: http://www.bratzpack.com
Post message: BratzWorld@yahoogroups.com
Subscribe: BratzWorld-subscribe@yahoogroups.com
Unsubscribe: BratzWorld-unsubscribe@yahoogroups.com
List owner: BratzWorld-owner@yahoogroups.com

Copyright © 2002 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Guidelines - Help

Exhibit 8

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067-5010
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
310-282-6217
EMAIL: PGLASER@CHRISGLAW.COM

February 11, 2002

**REDACTED**

VIA FACSIMILE AND U.S. MAIL

David W. Quinto, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re: MGA Entertainment

Dear Mr. Quinto:

We represent MGA Entertainment ("MGA"). We are responding to your letter of February 7, 2002, sent to Isaac Larian at MGA regarding alleged infringement of Mattel's BARBIE and DIVA STARZ trademarks on the Bratz Yahoo! discussion group web sites.

Please be advised that MGA possesses no ownership or control of the above-referenced web sites. Therefore, it cannot accommodate your request that it remove keywords from those web sites. However, MGA would be pleased to cooperate in Mattel's efforts to end any alleged infringement. Please contact me or my associate, Caroline Mankey, to discuss any ways in which we can be of assistance on behalf of MGA.

This letter is not a complete statement of our client's position and is written without waiver or prejudice to any of its rights and remedies, all of which are reserved.

Very truly yours,

Patricia L. Glaser
of CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP

PG:ps
cc: Isaac Larian

260974.1

Exhibit 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
- - -
HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING
- - -

CARTER BRYANT, ET. AL., PLAINTIFFS,

VS.

MATTEL, INC., ET. AL., DEFENDANTS.

AND CONSOLIDATED ACTIONS.

NO. ED CV 04-09049 (LEAD LOW NUMBER)

MOTIONS FOR PARTIAL SUMMARY JUDGEMENT

REPORTER'S TRANSCRIPT OF PROCEEDINGS
RIVERSIDE, CALIFORNIA
TUESDAY, APRIL 22, 2008
10:07 A.M.

VOLUME I
PAGES 1-213

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA 92501
951-274-0844
WWW.THERESALANZA.COM

APPEARANCES:

ON BEHALF OF CARTER BRYANT:
KEKER & VAN NEST
BY: CHRISTA M. ANDERSON
BY: MATTHEW M. WERDEGAR
710 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111-1704
415-391-5400

ON BEHALF OF MATTEL:
QUINN EMANUEL
BY: JOHN B. QUINN
BY: B. DYLAN PROCTOR
BY: MICHAEL T. ZELLER
865 S. FIGUEROA STREET,
10TH FLOOR
LOS ANGELES, CALIFORNIA 90017
213-624-7707

ON BEHALF OF MGA ENTERTAINMENT:
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
BY: THOMAS J. NOLAN
BY: CARL ALAN ROTH
BY: JASON RUSSELL
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144
213-687-5000

ALSO PRESENT: AMBASSADOR ROBERT-PIERRE PROSPER,
DAVID BRISTOW, ESQ.

I N D E X

PAGE
MOTIONS........................................ 5

RIVERSIDE, CALIFORNIA; TUESDAY, APRIL 22, 2008; 10:07 A.M.

-OOO-

THE CLERK: CALLING THE MATTER OF CARTER BRYANT VERSUS MATTEL, CASE NUMBER CV 04-9049, AND RELATED ACTIONS.

MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE YOUR APPEARANCES FOR THE RECORD.

MR. QUINN: JOHN QUINN, MIKE ZELLER, DYLAN PROCTOR FOR MATTEL.

MR. NOLAN: TOM NOLAN, JASON RUSSELL, ON BEHALF OF MGA AND ISAAC LARIAN.

MS. ANDERSON: CHRISTA ANDERSON, MATTHEW WERDEGAR, AND AUDREY WALTON-HADLOCK ON BEHALF OF CARTER BRYANT.

THE COURT: GOOD MORNING TO YOU ALL.

COUNSEL, WE'RE ON CALENDAR THIS MORNING, OF COURSE, FOR THE VARIOUS MOTIONS FOR PARTIAL SUMMARY JUDGMENT. THE COURT HAS RECEIVED AND REVIEWED THE EXTENSIVE FILINGS MADE ON BOTH SIDES, AND I LOOK FORWARD TO DEDICATING TODAY TO HEARING ORAL ARGUMENT ON THESE MOTIONS.

WHAT I'D LIKE TO DO IS BEGIN NOW AND GO THROUGH THE LUNCH HOUR. WE WILL THEN RESUME AT 1:30 AND GO THROUGH 4:30; SO THAT'S THE TIME I'M SETTING ASIDE. USE YOUR TIME WISELY.

I HAVE SEVERAL QUESTIONS THAT I WILL HAVE THROUGHOUT THE DAY ON THE VARIOUS MOTIONS, AND I TRUST THAT YOU ALL WILL HAVE A FEW POINTS TO MAKE OR EMPHASIZE AS WELL. I'LL CERTAINLY ALLOW YOU TO USE YOUR TIME AS YOU THINK IT'S BEST TO USE IT.

I'LL BEGIN WITH PLAINTIFFS, MATTEL, AND GO THROUGH THEIR MOTIONS THIS MORNING. WE'LL THEN PICK UP WITH MGA AND CARTER BRYANT, UNLESS THERE'S A STRONG REASON TO USE SOME OTHER ORDER.

WITH RESPECT TO MATTEL, IF YOU WANT TO BEGIN, YOU MAY.

MR. QUINN: THANK YOU, YOUR HONOR.

IF IT'S ACCEPTABLE TO THE COURT, WE HAD DIVIDED UP THE ARGUMENT BETWEEN MR. ZELLER AND MYSELF ON MATTEL'S MOTIONS.

THE COURT: VERY WELL.

MR. QUINN: I WILL ADDRESS THE MOTION DIRECTED TO MATTEL'S CLAIMS AGAINST THE COUNTER DEFENDANTS, I GUESS IS THE APPROPRIATE POSTURE; AND MR. ZELLER WILL ADDRESS THE MOTIONS DIRECTED TO THE COUNTER DEFENDANT'S AFFIRMATIVE DEFENSES.

THE COURT: SO I'LL BEGIN WITH YOU, THEN.

I'LL CHOOSE MY WORDS CAREFULLY HERE.

AS YOU WOULD UNDERSTAND IT, IT'S THE INVENTIONS AGREEMENT. AS THE DEFENSE WOULD UNDERSTAND IT, IT'S THE EMPLOYMENT AGREEMENT. I'M JUST GOING TO REFER TO IT AS "THE AGREEMENT," SO AS TO NOT INDICATE THAT I FIND FOR ANY ONE SIDE'S UNDERSTANDING.

MR. QUINN: THE AGREEMENT, WHICH, DEPENDENT UPON WHO'S TALKING, MAY OR MAY NOT INCLUDE A QUESTIONNAIRE.

THE COURT: IT'S ALL RELATIVE, I SUPPOSE, AT THIS POINT.

BUT ANYWAY, WE'LL BEGIN WITH THE ENFORCEABILITY OF THE AGREEMENT AND THEN WHETHER, UNDER THE AGREEMENT, THE COURT IS IN A POSITION, AS A MATTER OF LAW, TO FIND ANY OF THE BREACHES, ET CETERA, THAT YOU SUGGEST.

MR. QUINN: YES, YOUR HONOR.

I BEGIN WITH WHAT I TAKE IS AN UNDISPUTED PROPOSITION THAT THE CONSTRUCTION OF A WRITTEN AGREEMENT IS A QUESTION OF LAW FOR THE COURT. SO I SUBMIT, YOUR HONOR, THAT WE ARE PROPERLY BEFORE THE COURT, ASKING THE COURT TO CONSTRUE THE INVENTIONS AGREEMENT TO INCLUDE THESE BRATZ-RELATED MATERIALS THAT WERE CREATED DURING THE COURSE OF MR. BRYANT'S EMPLOYMENT.

NOW, THE DEFENSE POSITION ON THIS HAS TO BE, AND IS, THAT EVEN THOUGH THE INVENTIONS AGREEMENT USES WORDS LIKE -- IT INCLUDES PATENTABLE AND UNPATENTABLE INVENTIONS; IT SPECIFICALLY REFERS TO THE TERM "DESIGNS"; REFERS TWICE TO THE CONCEPT OF COPYRIGHTS AND COOPERATION IN SECURING COPYRIGHTS -- THE DEFENSE POSITION HAS TO BE THAT THE INVENTIONS AGREEMENT ONLY COVERS SORT OF TECHNICAL PATENTABLE-TYPE MATERIALS.

I SUBMIT THAT GIVEN THE PLAIN LANGUAGE OF THE AGREEMENT THAT I JUST REFERRED TO, YOUR HONOR, THAT'S A VERY SURPRISING CONCLUSION AND A VERY, VERY DIFFICULT CONCLUSION TO REACH IN THE TEETH OF THE EXPLICIT REFERENCES TO PATENTABLE, UNPATENTABLE COPYRIGHTS AND DESIGNS.

THE COURT: ALONG THOSE LINES, COULD YOU POINT TO ANY SPECIFIC REFERENCES THAT ARE NOT MADE IN THE CONTEXT OF PATENT

OR PATENT LAW?

MR. QUINN: WELL, I WOULD SAY, YOUR HONOR, THAT THE REFERENCE TO COPYRIGHTS -- AND COPYRIGHTS ARE, BY DEFINITION, SOMETHING THAT'S COPYRIGHTABLE; IT'S NOT PATENTABLE. THERE'S A SPECIFIC REFERENCE TO DESIGNS. I SUPPOSE DESIGNS, IN SOME SENSE, UNDER SOME CIRCUMSTANCES, COULD BE CONSTRUED TO INCLUDE MATERIAL THAT MIGHT BE PATENTABLE.

BUT I THINK A MORE COMMON MEANING THERE, SORT OF EVERYDAY MEANING OF IT, IS THE DESIGN IS MORE EASILY FIT INTO THE CONTEXT OF COPYRIGHT.

THE COURT: THAT'S THE QUESTION THAT I HAVE.

SHOULD I BE USING THE EVERYDAY MEANING OF DESIGN OR THE MEANING OF DESIGN IN THE CONTEXT OF PATENT LAW?

MR. QUINN: I THINK THE ORDINARY MEANING, I THINK, YOUR HONOR, WOULD BE THE APPROPRIATE MEANING TO BE LOOKING AT HERE. THIS IS AN AGREEMENT NOT TO BE SIGNED BY A PATENT AGENT, AND IT DOESN'T REQUIRE THAT WE RESORT TO TECHNICAL, SPECIALIZED TYPES OF MEANINGS IN ORDER TO UNDERSTAND THE AGREEMENT.

THIS IS AN INDIVIDUAL, MR. BRYANT, WHO, I THINK EVERYONE AGREES, WAS NEVER INVOLVED, WAS NOT INTENDED TO BE INVOLVED, AND, IN FACT, NEVER WAS INVOLVED IN INVENTING, IF YOU WILL, ANYTHING OF A TECHNICAL NATURE OR SOMETHING THAT WOULD BE PATENTABLE OR SUBMITTED FOR PATENT PROTECTION. I MEAN, HE WAS HIRED AND ENTERED INTO THIS AGREEMENT WITH THE EXPECTATION THAT HE WOULD BE WORKING ON DOLL DESIGNS, WHICH WE ALL KNOW IS

EXACTLY WHAT HE DID; SO IT WOULD BE SURPRISING IF THE OBLIGATIONS THAT HE UNDERTOOK PURSUANT TO THE AGREEMENT, THAT HE WAS REQUESTED TO SIGN OR REQUIRED TO SIGN AT THE TIME THAT HE STARTED HIS EMPLOYMENT WITH MATTEL, COVERED THINGS THAT NOBODY EVER EXPECTED THAT HE WOULD BE DOING, AND, IN FACT, THINGS THAT HE NEVER DID.

MOREOVER, YOUR HONOR, INVENTION IS A WORD THAT'S USED IN THE CONTEXT OF COPYRIGHT LAW, ALSO TO REFER TO COPYRIGHTABLE MATERIAL. AND WE'VE CITED THE COURT TO SOME AUTHORITIES FOR THAT AT PAGE 5 OF OUR MOVING PAPER.

THE DEFENSE IS FORCED TO TAKE THE POSITION THAT SECTION 2870, WHICH IS EMBRACED BY -- THERE'S THE LANGUAGE OF 2870 THE CARVE OUT, WHICH IS EXPLICITLY TRACKED AND EMBRACED BY THE OPINION -- THE DEFENSE IS FORCED TO ULTIMATELY TAKE THE POSITION THAT 2870 PROVIDES NO PROTECTION FOR EMPLOYEES WHO CREATE COPYRIGHTABLE INVENTIONS, OR CREATE COPYRIGHTABLE MATERIAL, WHICH I THINK IS SORT OF A SURPRISING RESULT TO THINK THAT THE LEGISLATURE PROTECTED EMPLOYEES WHO CREATED THINGS WHICH ARE PATENTABLE, BUT CREATED NO PROTECTION FOR MATERIAL WHICH CAN BE COPYRIGHTED.

AND, IN FACT, IT'S ONE COURT THAT ADDRESSED THAT; THE ICONIX COURT REACHED JUST THAT OPPOSITE CONCLUSION; AND, IN FACT, IT COVERS COPYRIGHTED MATERIAL.

THE LANGUAGE OF THE AGREEMENT SAYS THAT "ALL SUCH INVENTIONS ARE ASSIGNED TO THE FULLEST EXTENT OF THE LAW, ALL

WASN'T SENDING ANYTHING BACK, CERTAINLY THEY WERE GETTING PICTURES, BECAUSE HERE, AS PART OF THE EXHIBITS THAT WE SUBMITTED, IS AN E-MAIL; AND HERE IS AN ACTUAL SHOT. AND THIS, AGAIN, YOUR HONOR, IS IN THE FEBRUARY/MARCH OF 2001 TIME PERIOD THAT IT'S BRATZ THAT THEY'RE FOCUSED ON; AND THEY'RE SENDING IT BACK TO MATTEL.

QUERY: WHY?

WE'RE GOING TO HAVE TO CONTINUE TO SPECULATE FOR JUST A MOMENT.

BUT NOW LET'S GET TO JUNE 2001. NOW I'M IN JUNE OF 2001. WHAT'S HAPPENING IN JUNE OF 2001? BRATZ HAS HIT THE MARKET IN SPAIN.

IS CARTER BRYANT CONNECTED TO BRATZ? AND WHEN DOES THAT HAPPEN?

THEY WANT YOU TO BELIEVE, FROM THEIR OWN PAPERS, THAT IT'S NOT SO MUCH LATER.

LET ME PLAY YOU THE TESTIMONY AGAIN OF JILL NORDQUIST, AND THEN I'LL GO RIGHT ON TO ELISE CLOONAN, BOTH OF WHOM WORKED IN THE BARBIE MAINLINE WHERE THEY WERE HEARING RUMORS THAT CARTER BRYANT WAS INVOLVED WITH BRATZ.

FIRST START WITH JILL NORDQUIST, PLEASE.

(VIDEOTAPED DEPOSITION PLAYS.)

MR. NOLAN: NOW ELISE CLOONAN.

(VIDEOTAPED DEPOSITION PLAYS.)

MR. NOLAN: SO NOW WE'RE IN THE SUMMER OF 2001. YOU



HAVE -- THAT LAST TAG LINE IS POWERFUL, OF VP CASSIDY PARK. WE NEED TO REMEMBER THAT NAME. SHE KNEW AS WELL. IT WAS WIDELY KNOWN THAT CARTER WAS CONNECTED TO BRATZ.

BUT HERE'S THE OTHER POINT, YOUR HONOR: WHEN I WAS TALKING ABOUT THE TOY FAIR SHOWS, WHAT I FORGOT TO MENTION, WHICH IS CRITICAL, IS THAT THERE WERE TRADE PRESS ARTICLES COMING OUT. THEY CITED TO MY DECLARATION IN SUPPORT OF THE SUMMARY JUDGMENT, NOTING BRATZ. THE FIRST ONE, I BELIEVE, YOUR HONOR, IS -- ONE OF BRATZ'S DRAWINGS THAT WERE EXHIBITED AT THE NEW YORK TOY FAIR WAS PUBLISHED IN DSN RETAILING, WHICH IS A TOY TRADE JOURNAL, ON MARCH 5, 2001; THAT'S EXHIBIT 113 TO MY DECLARATION.

MOREOVER, YOUR HONOR, THERE WERE -- AND WE'VE CITED THIS IN OUR PAPERS, THAT THE BUSINESS WIRE ARTICLE -- THIS IS EXHIBIT NUMBER 47 TO RUSSELL'S DECLARATION -- IT WAS A BUSINESS WIRE ARTICLE, FEBRUARY 6, 2001, IDENTIFYING LARIAN AS CONNECTED WITH BRATZ.

WE HAVE PUBLICATIONS AT THIS POINT IN TIME WHERE IT'S BEING DESCRIBED AS A KNOCKOFF OF DIVA STARZ. THAT CITATION, YOUR HONOR, LET ME GO ON TO THAT. THE ALLEGED SIMILARITIES WERE APPARENT TO MATTEL EXECUTIVES AS SOON AS THEY SAW THE BRATZ. THAT IS UNDISPUTED.

LET'S GO TO THE RUSSELL DECLARATION, EXHIBIT 8. AND THIS IS FONTANELLA. WE WON'T PLAY FONTANELLA. BUT THIS IS AT PAGE 93 THROUGH 13, 94 THROUGH 22. THIS IS HER QUOTE: "I



REMEMBER MY REACTION WAS 'THIS LOOKS JUST LIKE DIVA STARZ'."

SO, AGAIN, PROPRIETARY -- WELL, DIVA STARZ WAS OUT IN THE PUBLIC.

THE COURT: AS COUNSEL POINTED OUT, THAT'S NOT THE BASIS FOR THE COMPLAINT IN APRIL OF 2004. IT'S WHETHER OR NOT CARTER BRYANT HAD DEVELOPED BRATZ.

MR. NOLAN: ACTUALLY, YOUR HONOR, WHEN I SHOWED YOU THE SUPPLEMENTAL RESPONSE TO THE INTERROGATORY, THAT'S NOT TRUE.

WHAT THEY CLAIM IS THAT CARTER HAD ACCESS TO VARIOUS PRODUCTS OF MATTEL, INCLUDING ACCESS TO DIVA STARZ. AND WE'RE GOING TO SEE HERE IN JUST A MINUTE TOON TEENS. IN OTHER WORDS, WHEN WE CITED IN OUR PAPERS, YOUR HONOR, THE HOOD DECISION, WHICH IS THE CASE WHERE THE COURT SAID THAT, 'LISTEN, IF YOU HAVE REASONABLE SUSPICION TO BELIEVE THAT SOME OF YOUR PROPRIETARY INFORMATION IS BEING COMPROMISED, THAT PUTS YOU ON NOTICE, REASONABLE INQUIRY, TO DO AN INVESTIGATION.'

NOW, ALL I'M SAYING, YOUR HONOR, IS, KEEP IT BUILDING AND KEEP IT ROLLING. WHAT DO THEY KNOW? WHEN DO THEY KNOW IT? WHAT DID THEY DO WITH IT? AND THAT'S THE POINT OF THESE PUBLICATIONS. THE FACT NOW THAT THEY ALL KNOW IN THE SUMMER OF 2001 -- IT IS UNDISPUTABLE -- IN THE SUMMER OF 2001, WIDESPREAD RUMOR, INCLUDING UP TO A VP IN DESIGN, THAT CARTER IS BEHIND BRATZ. YOU HAVE NEWSPAPER COVERAGE, TRADE JOURNALS, SAYING THAT BRATZ RESEMBLES MATTEL PRODUCT. YOU HAVE MATTEL KNOWING



THE LAUNCH DATE OF BRATZ IN JANUARY, BECAUSE THEY'RE AT THE TOY SHOW AND THEY'RE THROWING THE VIDEOS BACK. THEY KNOW IN THEIR HEAD THAT BECAUSE IT TAKES SO LONG, 'X' MONTHS, TO PRODUCE BRATZ -- THAT PUTS IT SQUARELY IN THE POSITION OF KNOWING THAT CARTER BRYANT WAS EMPLOYED AT MATTEL WHEN BRATZ CAME OUT.

DOES IT GIVE THEM PERFECT KNOWLEDGE?

NO. I'M NOT SAYING THAT, YOUR HONOR. BUT IT GIVES YOU, UNDER SOLIMAN AND JOLLY, ENOUGH TO ACT; AND THAT'S WHEN THEY COULD HAVE TAKEN STEPS. WE TALKED ABOUT IT IN TERMS OF LATCHES AND EVERYTHING ELSE. THEY COULD HAVE MADE SOME INQUIRIES.

WHAT DID THEY DO? THEY DO CONDUCT AN INVESTIGATION. WE KNOW THAT. WE'RE GOING TO GET TO THAT IN JUST A MOMENT. BUT I WANT TO MAKE ABSOLUTELY CLEAR, BEFORE I LEAVE THE SUMMER OF 2001, THAT THEY ARE WELL AWARE THAT A FORMER EMPLOYEE WHO THEY DIDN'T BELIEVE WHEN THEY WERE LEAVING, WHO THEY KNEW HAD LIED, WHO THEY HAD ACCESS TO HIS TELEPHONE RECORDS AND HAD GONE TO A COMPETITOR, AND THAT COMPETITOR WAS LAUNCHING A DOLL THAT'S ALLEGED TO HAVE BEEN SIMILAR TO DIVA STARZ, THE BELLS ARE STARTING TO GO OFF AT MATTEL.

THE COURT: SO THEY START THEIR INVESTIGATION.

MR. NOLAN: NO, NOT YET.

AT LEAST WE DON'T THINK SO.

THEY DON'T START THEIR INVESTIGATION, NOW, UNTIL MARCH -- LET ME MOVE ON. LET ME MOVE VERY QUICKLY NOW TO

FEBRUARY OF 2002.

IT'S BEEN IN THE MARKETPLACE FOR A PERIOD OF TIME; AND, AGAIN, I GO BACK -- YOU CAN LOOK IN THE PAPERS; YOUR STAFF CAN LOOK IN THE PAPERS. THERE'S A NUMBER OF TIMES THAT MATTEL HAS TOLD YOU THAT THEY DIDN'T KNOW ABOUT CARTER BRYANT.

THE EVIDENCE IS THAT THEY WERE MONITORING OUR WEBSITE, OUR FAN WEBSITE. AND ON THE WEBSITE, A VENDOR DISCLOSES, FOR THE FIRST TIME PUBLICLY, THAT CARTER BRYANT HAS BEHIND BRATZ.

NOW, THAT COMES OUT IN FEBRUARY.

DO YOU HAVE THAT, AARON? DO YOU HAVE THE WEB SITE?

THANK YOU.

THIS IS AN E-MAIL, YOUR HONOR. THIS IS EXHIBIT 95. AND THIS IS ACTUALLY A DOWNLOAD FROM A LETTER THAT'S POSTED ON A FAN SITE. AND THIS GENTLEMAN IS REFERRING TO IT, AND HE SAYS, "HI, CHRISTIAN," AND HE'S GIVING YOU ALL THE BACKGROUND AND SAYS, "HOWEVER, I CAN'T TAKE CREDIT FOR CREATING THE BRATZ DOLLS, OR EVEN THE FIRST BRATZ ILLUSTRATIONS, FOR THAT HONOR WOULD GO TO A FELLOW NAMED CARTER BRYANT."

NOW, HOW DO WE KNOW THAT MATTEL IS AWARE OF THIS?

YOUR HONOR, WE KNOW THAT BECAUSE THIS IS IN FEBRUARY. THEY ARE MONITORING. THIS IS THE SAME FAN SITE THAT CAUSES THEM, IN FEBRUARY 2002, TO SEND A CEASE AND DESIST LETTER TO MGA AND ISAAC LARIAN ABOUT MAKING NO REFERENCE TO DIVA STARZ.

NOW WE'RE IN FEBRUARY OF 2002. THIS IS SIGNIFICANT

ENOUGH THAT THEY NOW WRITE A LETTER TO ISAAC LARIAN. THEY HAVE HIS ADDRESS. THEY KNOW HE'S AFFILIATED WITH MGA ENTERTAINMENT. TRADEMARK INFRINGEMENT. AND THEY TALK ABOUT DIVA STARZ TRADEMARKS ON THE WEBSITE IN CONNECTION WITH BRATZ.

NOW, WE WOULD SUBMIT, YOUR HONOR, AT THIS POINT IN TIME, THEY ARE ALSO ON NOTICE, BECAUSE ON THE FAN SITE, IT'S BEEN DISCLOSED THAT IT'S CARTER BRYANT.

WHAT HAPPENS AFTER THIS LETTER IS VERY INTERESTING, BECAUSE YOU'LL SEE A LOT OF ALLEGED CONCEALMENT GOING ON WITHIN MGA. THEY SAY THERE WERE EFFORTS TO CONCEAL THE TRUE NATURE OF BRATZ AND CARTER BRYANT. ACTUALLY, YOUR HONOR, ALL OF THOSE STEPS ARE TAKEN IN RESPONSE BY ISAAC LARIAN RECEIVING THIS THREATENING LETTER FROM, AS JASON RUSSELL SAYS, THE TOY INFRINGER PLAINTIFF. HE KNOWS HE'S GOT A TARGET ON HIS BACK. HE'S TELLING EVERYBODY, 'I DON'T WANT TO BE SUED BY MATTEL. PLEASE TAKE THIS DOWN. WE DIDN'T STEAL THIS FROM MATTEL. WE MADE IT."

SO WHAT HAPPENS NEXT IS MOST INTERESTING, AND MOST TROUBLING AT THE SAME TIME. LET'S NOW GO TO MARCH OF 2002. AND I THINK YOU SAW THIS IN CONNECTION WITH THE TERMINATION SANCTIONS MOTION, AND THAT IS THE INVESTIGATIVE FILE.

NOW, YOUR HONOR, JUST SO THAT WE KNOW, THIS IS AN INVESTIGATIVE FILE, MARCH OF 2002. AND REMEMBER, THEY'VE TAKEN THIS POSITION THAT THEY'RE NOT ON NOTICE OR ANYTHING UNTIL MUCH LATER. BUT LET'S LOOK AT THIS -- LET'S GO TO THE OPENING PAGE.

THIS IS DONE BY -- I KNOW YOU'RE A FORMER ASSISTANT U.S. ATTORNEY. I AM AS WELL. THIS IS TYPICAL. MR. DE ANDA AND MR. SIMONEAU ARE BOTH FORMER LA PD'S, SO THEY WRITE IT UP. IT'S KIND OF A POLICE REPORT; WHAT WE WOULD HAVE SEEN, OR A CASE AGENT REPORT THAT WOULD HAVE BEEN SENT TO US. CATEGORY: THEFT. SUBCATEGORY: PROPRIETARY INFORMATION. CURRENT DATE: MARCH 15, 2002. REPORT IS TAKEN BY BOB SIMONEAU. INCIDENT NARRATIVE: INFORMATION RECEIVED FROM DESIGN CENTER STAFF, EVELYN VIOLA AND IVY ROSS, THAT MGA ENTERTAINMENT, HEADED BY A PERSON KNOWN AS ISAAC LARIAN, HAS RECENTLY HIRED A NUMBER OF FORMER MATTEL EMPLOYEES AND IS MANUFACTURING PRODUCTS THAT APPEAR TO BE MATTEL DESIGNS.

NOW, THAT IS SUFFICIENT TO HAVE THEM OPEN UP AND LAUNCH AN INVESTIGATION. AND WHAT'S INTERESTING ABOUT THIS, YOUR HONOR, IS THAT, IF YOU LOOK AT THE LOG SHEET -- LET'S GO TO THE LOG PAGE FOR JUST A MOMENT -- WHAT HAPPENS IS THAT MR. SIMONEAU CONDUCTS AN INTERVIEW ON MARCH 28TH OF 2002. THIS IS EXHIBIT NUMBER 29, AND I THINK IT'S PAGE 444. THESE ARE THE HANDWRITTEN LOGS, CHRONOLOGICAL RECORDS; AND YOU'LL SEE THE FIRST ONE IS 3-15-02: RECEIVED CASE INFORMATION. AND THEN MARCH 28TH, THE ENTRY HERE IS FASCINATING: MET WITH CASSIDY PARK.

CASSIDY PARK IS THE VP THAT WE JUST HEARD MENTIONED THAT KNOWS ABOUT THIS IN THE SUMMER OF 2001. CASSIDY PARK, HE MEETS WITH CASSIDY PARK TO GET MORE INFORMATION ON AN MGA

ISSUE.

WE DON'T KNOW WHAT THE ISSUE IS, ALTHOUGH IT'S THEFT AND PROPRIETARY INFORMATION, SIMILAR TO WHAT THEY'RE SAYING IN THEIR INTERROGATORY; THAT WE HAD ACCESS TO PROPRIETARY INFORMATION, PRODUCTS, RESOURCES, THAT TYPE THING.

AND THEN HE GOES ON: SHE SUGGESTS CARTER BRYANT AS ILLUSTRATOR/FORMER EMPLOYEE WHO MAY HAVE PLAGIARIZED DESIGNS OF LILY MARTINEZ AND CREATED BRATZ DOLLS FOR MGA.

SO THEY HAVE CASSIDY PARK, WHO'S A VICE PRESIDENT IN 2002, TELLING THEM, 'CARTER BRYANT CREATED BRATZ, AND YOU SHOULD INVESTIGATE HIM FOR PLAGIARIZING MATTEL'S DESIGNS.'

NOW, THEN WHAT THEY DO NEXT IS, THEY GO AND THEY CHECK SCHOENBORN FOR LEADS. NEGATIVE.

AND WE TOOK THE DEPOSITION OF MR. SIMONEAU. WHAT THAT MEANS, YOUR HONOR, IS THAT ON THOSE DATES, BASED ON THAT INFORMATION, THEY START SURVEILLING MGA, GOING TO THE PHYSICAL PLANT, I THINK, PRESUMABLY TO SEE IF CARTER BRYANT IS THERE, BECAUSE RIGHT ABOVE THAT, THEY'VE ASKED, AT 3:00 IN THE AFTERNOON: "CHECKED WITH HR FOR BRYANT'S FILE. TERMINATION DATE IS OCTOBER 20TH."

SO THEY KNOW IMMEDIATELY TO GET THE INTERNAL FILES OF CARTER BRYANT AND GET THEM HERE.

NOW, AGAIN, YOUR HONOR, THIS INFORMATION IS ALL BUILDING CARTER TO BRATZ. AND I STARTED OFF WITH THIS ARGUMENT BECAUSE IT'S VERY CRITICAL; HOW LONG DOES IT TAKE TO BRING A

THE COURT: COUNSEL, YOU MAY CONTINUE.

MR. ZELLER: THE POINT I WAS MAKING BEFORE THE BREAK WAS IN RESPONSE TO MGA'S CLAIM, THIS LINCHPIN CLAIM, THAT MATTEL WAS ON NOTICE OR HAD TO HAVE KNOWN THAT CARTER BRYANT WAS WORKING ON BRATZ WHILE EMPLOYED BY MATTEL BECAUSE OF THE SHORT DEVELOPMENT TIME FRAME WITH RESPECT TO BRATZ AND ITS SHOWING AT THE HONG KONG TOY FAIR IN JANUARY OF 2001.

AS I NOTED, THE EVIDENCE THAT THEY SUPPORT, SUPPOSEDLY FROM MATTEL, DOES NOT SUPPORT. CONVERSELY, THEIR OWN EXPERT -- AND IF WE COULD BRING UP PAGE 16 OF THE TONNER REPORT; THIS IS THEIR EXPERT, RICHARD TONNER -- ROBERT TONNER, RATHER; HE'S A DOLL EXPERT THEY HAD PUT FORTH AS AN EXPERT IN THIS CASE. AND YOU'LL SEE IN THE BRACKETED PART:

"I UNDERSTAND THAT IN THIS CASE, THERE'S SOME QUESTION ABOUT MGA BEING ABLE TO DEVELOP A NEW DOLL IN A SHORT AMOUNT OF TIME --

THE COURT: COUNSEL, SLOW DOWN.

MR. ZELLER: I'M SORRY.

THE COURT: SHE'S FAST, BUT...

MR. ZELLER: I WAS DOING GOOD THERE FOR A WHILE.

"IN THE SHORT AMOUNT OF TIME, FROM EARLY OCTOBER 2000, AND HAVE IT READY TO SHOW AT THE HONG KONG TOY FAIR IN JANUARY OF 2001. WAS IT POSSIBLE? THE ANSWER IS ABSOLUTELY YES."

AND THEN YOU'LL DROP DOWN A LITTLE BIT FURTHER THERE,

AND YOU'LL SEE THAT IT SAYS, "WITH TALENTED, PROFESSIONAL PEOPLE,' WHICH MGA CERTAINLY HAD, 'A NEW PRODUCT PROTOTYPE CAN COME TOGETHER PRETTY QUICKLY, AND CERTAINLY WITHIN THREE TO FOUR MONTHS. IT WOULD BE A TIGHT SCHEDULE, BUT ABSOLUTELY DOABLE.'

SO THIS VERY CRITICAL CLAIM THAT THEY MAKE THAT SOMEHOW MATTEL SHOULD HAVE INFERRED OR SHOULD HAVE KNOWN FROM THE DEVELOPMENT CHRONOLOGY ITSELF, JUST FROM WHEN CARTER BRYANT LEFT TO THE HONG KONG TOY FAIR, DOES NOT WITHSTAND SCRUTINY. IT'S NOT SUPPORTED BY THE EVIDENCE.

MOREOVER, YOU'LL NOTICE THAT WHEN THEY PLAYED THE CLIP FROM JILL NORDQUIST, HER TESTIMONY WAS ACTUALLY VERY SPECIFIC. SHE DIDN'T SAY, 'I THOUGHT HE WAS THE CREATOR,' OR 'I HEARD HE WAS THE CREATOR OF BRATZ.' SHE HEARD HE HAD SOME INVOLVEMENT.

THAT IS NOT, OF COURSE, EXCLUSIVE OF THE IDEA THAT SOMEONE LEAVES A COMPANY LIKE MATTEL AND GOES AND WORKS SOMEWHERE ELSE EVENTUALLY. THAT DOES NOT ADD UP TO A CLAIM. IN FACT, THEY'VE ARGUED THROUGHOUT TODAY, AND IN THEIR BRIEFS, THAT THAT KIND OF THING IS COMPLETELY NOT ACTIONABLE; SO THERE'S NOTHING REMARKABLE ABOUT THIS FACT THAT CARTER BRYANT EVENTUALLY -- PEOPLE BELIEVE, OR THERE'S RUMOR OR SUSPICION, THAT HE HAS SOMETHING TO DO WITH BRATZ.

THERE IS NO EVIDENCE WHATSOEVER THAT ANYONE AT MATTEL, IN THAT TIME FRAME, OR EVEN LATER, AS I'LL GET INTO

HERE IN MINUTE, KNEW FOR A FACT THAT CARTER BRYANT -- OR EVEN REALLY STRONGLY SUSPECTED, THAT CARTER BRYANT WAS, QUOTE, "THE CREATOR OF BRATZ."

AND THAT'S ANOTHER INDISPENSABLE FACT, REALLY, HERE IN THEIR CHRONOLOGY THAT YOU WOULD HAVE TO KNOW IN ORDER TO SORT OF ADD ALL OF THESE 14 THINGS TOGETHER TO SAY, 'WELL, PERHAPS YOU SHOULD HAVE KNOWN.'

WHAT I'D LIKE TO DO, THEN, IS TALK IN PARTICULAR ABOUT MGA'S ARGUMENT, THEIR ASSERTION, THAT IT WAS PUBLICLY KNOWN THAT CARTER BRYANT WAS THE CREATOR OF BRATZ AS EARLY AS 2002. AND THAT WAS EXHIBIT 95 THAT THEY PUT UP ON THE SCREEN, THAT IS THE DAVID DEES E-MAIL.

FIRST OF ALL, THAT IS AN E-MAIL. IT'S NOT A WEBSITE. THERE IS NO EVIDENCE THAT E-MAIL WAS EVER POSTED ON THE WEBSITE THAT WAS THE SUBJECT OF THE CEASE AND DESIST LETTER THAT MATTEL SENT. THAT'S JUST PURE SPECULATION THAT IT, IN FACT, SHOWED UP ON THERE. AND, IN FACT, WHAT THIS E-MAIL ESTABLISHES IS FRAUDULENT CONCEALMENT BY MGA.

ISAAC LARIAN'S RESPONSE TO THIS WAS THERE SHOULD BE NO MENTION OF BRYANT. THERE SHOULD BE NO MENTION, NOT JUST SIMPLY OF MATTEL OR DIVA STARZ OR ANY OF THE THINGS THAT THEY TRY AND ARGUE WAS SOMEHOW THE SUBJECT OF MATTEL'S LETTER. IT IS ABOUT BRYANT, AND CONCEALING BRYANT.

THERE'S OTHER, OF COURSE, EVIDENCE IN THE CASE THAT THE COURT IS AWARE OF. THERE'S AN E-MAIL FROM AN MGA EMPLOYEE

TO ISAAC LARIAN SAYING, 'I KNOW WE HAVE TO KEEP CARTER BRYANT UNDER WRAPS.' THERE'S THE DOCUMENT THAT MR. QUINN HAS MENTIONED PREVIOUSLY, WHICH IS DATES OF MATTEL EMPLOYMENT; DON'T ASK -- I'M SORRY, FOR MGA.

NOW, ALSO, OF COURSE, THIS WHOLE NOTION THAT SOMEHOW IT WAS A PUBLIC FACT AS OF 2002 THAT CARTER BRYANT WAS THE CREATOR OF BRATZ. THAT IS ACTUALLY CONTRADICTED BY THEIR OWN RFA RESPONSES IN THIS CASE. IN FACT, THEY ACCUSE US, IN THEIR BRIEFS, OF MISREPRESENTING TO THE COURT THEIR ANSWERS TO THESE RFA'S.

I THINK IT'S WORTH QUOTING HERE, ON PAGE 8 OF THEIR REPLY, THAT, QUOTE, "AND NEITHER DOES MATTEL'S OUTRIGHT DECEPTION THAT MGA PURPORTEDLY ADMITTED THAT NO PUBLIC STATEMENT, EVEN RECOGNIZING BRYANT AS BRATZ'S CREATOR, WAS ISSUED UNTIL JULY 18, 2003 WHEN THE WALL STREET JOURNAL PUBLISHED AN ARTICLE WITH THAT INFORMATION. ONE LOOK AT MGA'S RESPONSES, CITED IN SUPPORT OF THIS ASSERTION, CONFIRMS THAT THE REQUESTS FOR ADMISSION IN QUESTION WERE ACTUALLY DENIED," END QUOTE.

NOW, IF WE CAN PULL UP THEIR RFA RESPONSES.

REQUEST FOR ADMISSION 183. "ADMIT THAT PRIOR TO JULY 1, 2003, MGA HAD NOT ISSUED ANY PRESS RELEASE THAT IDENTIFIED BRYANT AS THE CREATOR OF BRATZ."

YOU'LL SEE, THEN, DOWN BELOW, THERE ARE SOME OBJECTIONS, GENERAL OBJECTIONS, AND IT SAYS, "MGA ADMITS THE

REQUEST."

FURTHER DOWN, 184, "ADMIT THAT MGA IS NOT AWARE OF ANY PRESS REPORT OR PUBLICATION THAT IDENTIFIED BRYANT AS THE CREATOR OF BRATZ PRIOR TO JULY 15, 2003."

THE RESPONSE HERE IS, AFTER THE OBJECTIONS, "MGA ADMITS THE REQUEST."

REQUEST FOR ADMISSION 185, "ADMIT THAT THE FIRST PRESS REPORT OR PUBLICATION THAT IDENTIFIED BRYANT AS THE CREATOR OF BRATZ WAS THE WALL STREET JOURNAL ARTICLE ENTITLED 'DOLLED UP TO LURE OLDER GIRLS, MATTEL BRINGS IN HIP-HOP CROWD.' AND PUBLISHED ON JULY 18, 2003."

AFTER THE OBJECTIONS, "MGA ADMITS THE REQUEST."

SO THIS NOTION, TOO, THAT IN PIECING TOGETHER THEIR CHRONOLOGY, THAT SOMEHOW IT WAS PUBLICLY CONFIRMED, PUBLICLY KNOWN, AND SOMEHOW DISCLOSED BY MGA THAT CARTER BRYANT WAS THE CREATOR OF BRATZ, IS CONTRADICTED BY THE RECORD.

NOW, ALL OF THIS IS IMPORTANT, TOO, FOR PURPOSES OF THE FRAUDULENT CONCEALMENT. THE FACT IS THAT THEY HAVE ATTEMPTED TO EXCUSE ISAAC LARIAN'S STATEMENTS TO THE PRESS; TO THE COURT'S; TO THE TRADEMARK OFFICE, THE PATENT OFFICE, BY THIS IDEA THAT SOMEHOW IT WAS ALL THE RESULT OF RECEIVING A CEASE AND DESIST LETTER FROM MATTEL ABOUT DIVA STARZ AND THAT, OBVIOUSLY, THIS DOES NOT ACCOUNT FOR ANYTHING.

THERE'S NO EVIDENCE OF THAT; AND CHRONOLOGICALLY, IT MAKES NO SENSE.

RACHEL HARRIS, WHO WAS AN MGA EMPLOYEE IN 2000, TESTIFIED QUITE SPECIFICALLY AND REPEATEDLY THAT THE INSTRUCTION BY MR. LARIAN TO CONCEAL MR. BRYANT'S ROLE AND THAT HE HIMSELF, MR. LARIAN, WOULD BE FALSELY TAKING CREDIT FOR THE CREATION OF BRATZ STARTED IN 2000, TWO YEARS BEFORE THE CEASE AND DESIST LETTER THAT THEY NOW TRY AND RELY UPON AS SOMEHOW BEING EVIDENCE OF -- OR REALLY AN EXCUSE FOR THOSE STATEMENTS THAT MR. LARIAN HAD MADE OVER AND OVER OVER THE YEARS.

AND IT, OBVIOUSLY, JUST DOES NOT ACCOUNT IN ANY WAY AS TO WHY MR. LARIAN WOULD BE TAKING CREDIT -- INCORRECTLY, FALSELY, AS HE HAD TO HAVE KNOWN -- FOR THE CREATION OF BRATZ TO BUSINESSWEEK IN JULY OF 2003, RIGHT AROUND THE SAME TIME AS THAT WALL STREET JOURNAL ARTICLE CAME OUT.

THE COURT: VERY GOOD, COUNSEL. I THINK I HAVE A PRETTY GOOD UNDERSTANDING OF YOUR POSITION ON THIS.

I DO WANT TO MOVE ALONG. IT'S 4:20, SO WE DO NEED TO MOVE ALONG.

ARE THERE ANY OTHER CRITICAL POINTS THAT YOU NEED TO ADDRESS?

MR. ZELLER: THERE ARE CERTAINLY OTHER STATEMENTS I COULD CORRECT, BUT I'LL LEAVE IT FOR NOW, YOUR HONOR.

THE COURT: VERY WELL.

MR. NOLAN, VERY BRIEFLY.

MR. NOLAN: I KNOW. BUT....

YES, I UNDERSTAND.

YOUR HONOR, MR. ZELLER COMMENTED ABOUT MY SPECULATION ON THE PRIVILEGE ISSUE, IF YOU'LL RECALL THAT. MR. ZELLER, IN HIS ARGUMENT, JUST QUOTED FROM AN E-MAIL, A PORTION OF AN E-MAIL, THAT IS THE SUBJECT OF A MOTION BEFORE YOU ON CLAWBACK. IT IS A COMMUNICATION BY ISAAC LARIAN TO HIS ATTORNEY. MR. ZELLER KNOWS THAT. WE'VE ASKED THEM, UNDER THE PROTECTIVE ORDER, TO RETURN IT TO US. THEY'VE REFUSED. WE ASKED THEM TO REDACT IT OUT OF THEIR BRIEF. THEY REFUSED. WE HAD TO FILE A MOTION IN FRONT OF YOU; AND NEVERTHELESS, HE GOES THROUGH THE STOP SIGN.

THE RULES HAVE TO APPLY BOTH WAYS EQUALLY.

ALSO, REAL QUICKLY, YOUR HONOR, THEY GO TO, INTERESTINGLY, OUR EXPERT, TONNER, TO GO TO THIS CORE ISSUE THAT THEY IDENTIFY AS BEING THE TIME TO DELIVER A FASHION DOLL TO THE MARKET. IT'S NOT TONNER'S IMPRESSION OF THAT THAT COUNTS. WE DIDN'T HIRE HIM UNTIL 2008.

A ONE-MINUTE CLIP, I'D LIKE TO PLAY; KEVIN FARR, MATTEL'S CFO, ON THE VERY ISSUE; AND IT'S HIS STATE OF MIND AT MATTEL THAT COUNTS FOR YOU. THIS IS KEVIN FARR.

(VIDEOTAPE DEPOSITION PLAYS.)

MR. NOLAN: YOUR HONOR, MR. ZELLER SAID THIS WHOLE THING ABOUT STATUTE OF LIMITATIONS. I GOT TO TAKE THE DEPOSITIONS OF CASSIDY PARK AND RICHARD DE ANDA. I WANT TO PLAY THIS QUICK CLIP FROM CASSIDY PARK.

REMEMBER, CASSIDY PARK WAS THE ONE THAT WAS THE VICE

PRESIDENT AND KNEW IN 2001, AND ALSO WAS INTERVIEWED BY MR. DE ANDA. THIS IS WHY THE STATUTE OF LIMITATIONS IS IMPORTANT.

PLEASE PLAY CASSIDY PARK.

THIS IS AT PAGE 107. AND WE'LL SUBMIT THESE, YOUR HONOR, AS PART OF THE RECORD, SO THE COURT REPORTER DOESN'T HAVE TO DO IT.

CASSIDY PARK.

(VIDEOTAPED DEPOSITION PLAYS.)

MR. NOLAN: SHE'S EITHER FORGETFUL -- BUT WE SURE WISH THIS LAWSUIT HAD BEEN FILED EARLIER, AND WE WOULD HAVE BEEN ASKING THOSE QUESTIONS EARLIER, BECAUSE SHE'S FORGOTTEN IT. BUT I'VE, APPARENTLY, HAD COMPLETE ACCESS TO CASSIDY PARK.

RICHARD DE ANDA, WE TOOK HIS DEPOSITION. YOU'RE ABSOLUTELY RIGHT, I DID. MR. DE ANDA ANSWERED, FOR A TOTAL OF 213 TIMES, THAT HE COULD NOT RECALL, INCLUDING COULD NOT RECALL WITH SPECIFICITY WHAT SHE TOLD HIM.

YOUR HONOR, THE POINT IN THIS CASE -- AND WE SUBMITTED ON FRIDAY AFTERNOON A SUPPLEMENTAL CITATION TO THE APRIL 15TH DECISION.

THE COURT: THERE WERE SEVERAL SUPPLEMENTAL DOCUMENTS THAT CAME IN ON FRIDAY AFTERNOON.

MR. NOLAN: YEAH. THIS ONE WAS REALLY GOOD, THOUGH.

THE COURT: I WON'T MAKE ANY FURTHER EDITORIAL COMMENTS; BUT GO AHEAD, COUNSEL.

CREATES A PRESUMPTION OF ORIGINALITY. THAT'S ALL STUFF THEY DID. IN THEIR PAPERS, THEY REALLY DIDN'T HAVE A RESPONSE TO THAT.

WE'RE ENTITLED TO PROTECTION FOR THE CREATIVE VARIATION AS WELL AS THE CREATIVE COMPILATION THAT'S REPRESENTED IN THE WORKS. AND THEY APPLY THIS FILTRATION ANALYSIS, WHICH IS KIND OF INTERESTING, YOUR HONOR.

MR. MENELL'S OPINION -- I DON'T KNOW IF THE COURT WADED THAT DEEPLY INTO THE PAPERS -- BUT HE GOES BACK AND -- YOU KNOW, IT'S LIKE ECCLESIASTES; THERE'S NOTHING NEW UNDER THE SUN. "ALLY MCBEAL WAS ALMOST A LIVE FASHION DOLL. THAT COULD APPEAL TO YOUNG GIRLS ALIKE. SHE WAS ALSO CLOSELY ASSOCIATED WITH SASSY FEMALE SUPPORTING ACTRESSES. SEX IN THE CITY BROUGHT THE FEMALE BOND TO A NEW LEVEL. IT ALSO REVEALED ASSERTIVENESS AND SEXUALITY NEVER BEFORE SEEN IN TELEVISION. IN THE MUSIC FIELD, THE SPICE GIRLS WERE A MAJOR NEW INFLUENCE. THEY BROUGHT THE MULTI-RACIAL --

THE COURT: COUNSEL, SLOW DOWN.

MR. QUINN: I'M SORRY.

I'LL SUBMIT WHAT I JUST READ IN WRITING. IT SAYS THE STEVE MADDEN, MADDEN ADVERTISEMENT, CAPTURES THE ATTITUDE, LARGE FEET, AND OUT-THRUST HIPS.

AND THEN THESE ARE THE THINGS THAT HE FINDS SINCE SUMERIA THAT'S OUT THERE IN POPULAR CULTURE. THEN HE RUNS IT THROUGH HIS COLATER, TO THE FILTRATION ANALYSIS, AND OUT COMES

THE IDEA OF A GIRL GROUP; OUT COMES THE IDEA OF A MULTI-RACIAL GROUP; OUT COMES THE IDEA OF LARGE FEET; OUT COMES THE IDEA OF A LARGE HEAD. THIS IS NOT A FILTER; IT'S A PLUG, OR A STOPPER. NOTHING GETS THROUGH THIS COLATER. THERE'S NOTHING THAT HASN'T EXISTED BEFORE.

WE'RE ENTITLED TO PROTECTION ON THESE DRAWINGS OF THE PARTICULAR EXPRESSIONS REPRESENTED IN THESE DRAWINGS. I'D REFER THE COURT TO THAT WELL-KNOWN CASE OF MATTEL V. GOLDBERGER, WHICH IS QUOTED IN THE PAPERS, WHERE THE COURT SAID, 'LOOK, THERE'S A LOT OF DIFFERENT WAYS OF MAKING UP-TURNED NOSES, BOWED LIPS, AND WIDELY-SPACED EYES.

JUST THE IDEA OF BOWED LIPS OR WIDELY-SPACED EYES, OR LARGE FEET, OR LARGE HEADS, THAT'S NOT WHAT'S PROTECTABLE. THAT'S THE PROBLEM WITH THE FILTRATION ANALYSIS HERE. THE VARIATIONS OF EACH OF THOSE ARE WHAT'S PROTECTABLE.

THE COURT: THERE IS AN ISSUE WITH RESPECT TO TRANSLATING THE TWO-DIMENSIONAL DRAWING, THOUGH, INTO A THREE-DIMENSIONAL DOLL.

MR. QUINN: I DON'T THINK THERE IS, YOUR HONOR. YOU GET, THEN, TO SUBSTANTIAL SIMILARITY, WHICH IS THE SECOND HALF OF IT.

I WOULD JUST SAY, BEFORE I LEAVE PROTECTION, MR. BRYANT HAS SUBMITTED A DECLARATION. HE NEVER SAYS HE COPIED ANYTHING. HE HAS ALWAYS CLAIMED THAT THESE WERE ORIGINAL DRAWINGS IN THE THINGS THAT HE SIGNED. AND THEY

HAVEN'T IDENTIFIED ANYTHING THAT PREEXISTED THESE DRAWINGS THAT'S IDENTICAL. I MEAN, SPICE GIRLS, THE STEVE MADDEN AD, ALL THE REST OF IT. THERE'S NOTHING IDENTICAL THERE; I.E., DIFFERENT FORMS OF -- THIS IS JUST LIKE DIFFERENT FORMS OF BOWED LIPS, DIFFERENT FORMS OF WIDELY-SPACED EYES. THESE ARE ORIGINAL CREATIONS. THEY HAVEN'T IDENTIFIED ANYTHING TO THE COURT THAT INDICATES THAT THEY ARE.

AS TO SUBSTANTIAL SIMILARITY, IF WE COULD PUT UP PAGE 16, FROM OUR BRIEF, WE PUT UP, SIDE-BY-SIDE, A BRATZ DOLL AND ONE OF CARTER BRYANT'S DRAWINGS. YOUR HONOR, THIS ALSO -- I'M REALLY OF TWO MINDS ABOUT WHETHER I WANT TO WIN ON THIS PART OF THE MOTION, BECAUSE I ALMOST THINK IF THEY WANT TO GET UP AND TELL THE JURY THAT THESE AREN'T -- IT'S LIKE A CLINT EASTWOOD MOMENT.

THE COURT: I'VE GOT TO LAUGH. AND I DON'T WANT TO BETRAY ANY SECRETS FROM CHAMBERS, COUNSEL, BUT I HAD THE SAME REACTION.

MR. QUINN: THERE WE HAVE TWO THINGS WE HAVE TO DO, THE EXTRINSIC ANALYSIS, YOUR HONOR -- I'M SORRY, THAT ONE IS FOR YOU ALSO. THAT'S FOR THE COURT, WHERE YOU LOOK AT AN OBJECTIVE COMPARISON OF THE ELEMENTS, 2-D VERSUS 3-D.

I DON'T THINK IT'S A PROBLEM HERE.

INTRINSIC. TOUGHER TO WIN ON SUMMARY JUDGMENT. IF YOU GET TO THE LEVEL THAT NO REASONABLE JUROR COULD CONCLUDE THAT INTRINSICALLY, THE OVERALL LOOK AND FEEL, WHICH IS THE

TEST, IS THE SAME, I THINK WE'RE THERE, YOUR HONOR. I MEAN, WE DID THAT SURVEY WE SUBMITTED. 92 PERCENT OF, LIKE, EIGHT-YEAR-OLDS IN GALLERIAS SHOWN THIS DRAWING SAY "BRATZ."

THANK YOU, YOUR HONOR.

THE COURT: IT IS A PRETTY COMPELLING -- THESE SERIES OF PICTURES ARE PRETTY COMPELLING, COUNSEL.

MR. NOLAN: YOUR HONOR, IF THAT WAS THE TEST, I MIGHT AGREE WITH YOU. BUT THAT'S NOT NINTH CIRCUIT LAW; THAT'S NOT HOW YOU ARE, I RESPECTFULLY SUBMIT, TO LOOK AT THIS.

THE COURT: BUT HOW IS A JURY TO LOOK AT IT?

MR. NOLAN: WELL, YOUR HONOR, I THINK WHAT MATTEL HAS DONE, CLEVERLY ON FRIDAY, IS TO SUBMIT A SUPPLEMENTAL PRESENTATION TO YOU, SAYING 'NOW IT'S YOUR DECISION TO MAKE,' AND THEY SUGGEST THAT THERE'S ENOUGH RECORD EVIDENCE.

THIS HAS ABSOLUTELY NO ANALYTICAL DISSECTION OF WHAT'S PROTECTABLE. THAT'S THE FIRST ANALYSIS, YOUR HONOR.

THE COURT: THERE WAS SOME ANALYTICAL -- WHAT DO YOU MEAN BY "ANALYTICAL DISSECTION"?

MR. NOLAN: LET'S TAKE A LOOK AT THIS.

THE COURT: I DID REVIEW THE EXHIBITS AND THE REPORT THAT HAD THE COMPARISONS BY LINES.

MR. NOLAN: YOUR HONOR, IF I COULD HAVE THAT UP REAL QUICK JUST FOR A MOMENT, I'LL SHOW YOU SOMETHING; AND I'LL COME BACK TO THIS.

THE COURT: THAT'S PROBABLY MORE THAN I WANTED TO

SEE.

MR. NOLAN: I APOLOGIZE.

THE COURT: THAT'S QUITE ALL RIGHT.

MR. NOLAN: YOUR HONOR, WHAT'S INTERESTING ABOUT THIS IS THAT THE DRAWING ON THE LEFT IS NOT THE CARTER BRYANT/BRATZ DRAWING. THE EVIDENCE IN THIS CASE IS THAT THE DRAWING ON THE LEFT SIDE IS FROM -- I BELIEVE IT'S THE THIRD VERSION OF THE SCULPT ITSELF. MARGARET LEAHY HAS TESTIFIED THAT IS SIGNIFICANTLY DIFFERENT THAN CARTER'S DRAWINGS; SO HAVE EXPERTS SUCH AS ROBERT TONNER, GLENN VILPPU. AND IF YOU HAD A COMPARISON OF THERE, YOU WOULD BE ABLE TO SEE IT. THERE WERE A LOT OF CHANGES THAT WERE MADE.

NOW, WE'RE TALKING ABOUT A DOLL; SO WHAT YOU AND I MIGHT, TO THE NAKED EYE, THINK MAY NOT BE A SIGNIFICANT CHANGE, TO THE DESIGNER, TO THE SCULPTOR, THEY ARE HUGE. BUT YOU KNOW WHAT WAS INTERESTING, YOUR HONOR? MR. LUTZ, IN HIS DEPOSITION, WAS TOLD, 'BY THE WAY, DID YOU KNOW THAT THE DRAWING ON THE LEFT IS NOT CARTER'S DRAWING; THAT HE ACTUALLY COPIED IT FROM THE SCULPT?' MR. LUTZ DIDN'T KNOW THAT.

REMARKABLY, WHAT THEY'RE SAYING HERE FOR YOUR HONOR IS THAT THERE ARE SUBSTANTIAL SIMILARITIES BETWEEN THESE TWO; AND I WOULD SUBMIT, THERE PROBABLY IS, BECAUSE IT'S TAKEN FROM A SCULPT RATHER THAN THE DRAWING ITSELF, FROM THE 3-D DOLL.

THE COURT: LET'S GO BACK TO THE PREVIOUS --

MR. NOLAN: ALL RIGHT. NOW, LET'S GO BACK TO THIS

ONE, BECAUSE I UNDERSTAND THIS.

WHAT'S INTERESTING ABOUT THIS COMMENT THAT MR. QUINN MADE ABOUT THE EXPERT REPORT, ABOUT THE SURVEY THAT THEY PUT IN, THEY WERE COMPARING THESE DRAWINGS NOT TO DOLLS SUCH AS MY SCENE AND THINGS LIKE THAT, THEY WERE REFERRING THEM TO A CABBAGE PATCH DOLL, TO CHERRY MUFFIN DOLLS AND STUFF LIKE THAT. WE HAVE A MOTION, A DAUBERT MOTION, TO STRIKE THAT SURVEY.

BUT TO COME BACK TO THIS PICTURE, YOUR HONOR, WHAT I BELIEVE THE LAW REQUIRES YOU TO DO IN THE FIRST INSTANCE IS TO SAY, 'ALL RIGHT, I HAVE TO TAKE OUT OF THIS WHAT IS NOT SUBJECT TO PROTECTION. WHAT AM I GOING TO ANALYTICALLY DISSECT OUT OF IT?'

AND I'LL GIVE YOU A COUPLE OF EXAMPLES: BIG FEET, BIG HEADS, SNOW CAPS; THE FASHIONS. THE FASHIONS AREN'T PROTECTABLE. SO I THINK WHAT MR. QUINN IS FAILING TO DO, AND IS MAYBE HOPING THAT YOU WILL OVERLOOK THIS IMPORTANT STEP. BUT --

THE COURT: WHAT WOULD YOU SAY IS PROTECTABLE?

MR. NOLAN: OH, VERY LITTLE. AND I'LL TELL YOU WHY. THE BACKPACKS, FOR INSTANCE; THE FASHION --

DID YOU ASK ME WHAT'S PROTECTABLE?

THE COURT: WHAT IS PROTECTABLE?

MR. NOLAN: VERY, VERY, VERY LITTLE HERE.

THE COURT: WHAT?

MR. NOLAN: MAYBE THE EYES. MAYBE THE EYES. MAYBE

THE EYES ARE SIGNIFICANT AND STYLISH AND SUCH THAT THEY MAY BE ABLE TO -- BUT A HAT? A FASHION HAT? NO. THE HAIR? NO.

COPYRIGHT OFFICE SAYS YOU CAN'T PROTECT THAT KIND OF STUFF. THAT HAS TO BE TAKEN OUT. THIS IS WHAT MENELL TALKS ABOUT; THIS IS WHAT VILPPU TALKS ABOUT; THE FASHION SWEATER, CROPPED TOP.

MR. LUTZ, WITH RESPECT TO THE FASHION IN THESE LOOKS, TESTIFIED AT HIS DEPOSITION -- AND PART OF OUR PROBLEM IS, YOUR HONOR -- YOU KNOW, THIS RECORD EVIDENCE NEEDS TO BE, I GUESS, SUPPLEMENTED. AND THAT'S WHY WE DON'T THINK IT'S SUBJECT TO SUMMARY JUDGMENT -- MR. LUTZ, THEIR OWN EXPERT, LOOKING AT THIS, SAID, 'YOU KNOW WHAT? JUST GO OUTSIDE STAPLES CENTER. YOU'LL SEE PEOPLE LIKE THIS ALL OVER.'

THE COURT: WE HAD A YOUNG LADY FROM BLYTHE WHO CAME IN HERE AT THE BEGINNING OF THE CASE. YOU WEREN'T INVOLVED IN THE CASE AT THAT TIME, I DON'T THINK; BUT THERE WAS AN INTERVENER THAT TRIED TO COME IN THAT CLAIMED THAT THE WHOLE THING WAS HER IDEA. SHE DRESSED THE PART WHEN SHE CAME INTO COURT.

MR. NOLAN: WELL, MAYBE SHE WAS ON HER WAY TO THE LAKER GAME.

THE COURT: AS LONG AS SHE'S NOT ON THE JURY, WE'RE FINE.

MR. NOLAN: BUT, YOUR HONOR, HERE'S THE POINT: YOU DON'T HAVE ANY EVIDENCE FROM THEM BY WHICH YOU NEED TO

ANALYTICALLY DISSECT THESE DRAWINGS TO THEN MAKE AN APPROPRIATE COMPARISON. WHAT THEY'RE HOPING YOU'LL DO IS EXACTLY THAT. EXACTLY THAT. AND THERE WILL BE EXPERT TESTIMONY WITH RESPECT TO THAT. AND MR. VILPPU GOES THROUGH IT IN GREAT DETAIL, YOUR HONOR. BUT THAT'S NOT THE TEST IN THE NINTH CIRCUIT.

YOU HAVE TO ANALYTICALLY DISSECT OUT WHAT'S PROTECTABLE AND WHAT'S NOT PROTECTABLE; AND THEN BASED ON THAT, MAKE A DETERMINATION AS TO WHETHER OR NOT THERE IS A BROAD OR A THIN PROTECTION. AND THEN IF IT'S BROAD OR THIN, DEPENDING ON HOW YOU COME OUT ON THAT, IT HAS TO BE VIRTUALLY IDENTICAL OR SUBSTANTIALLY SIMILAR. OUR EXPERTS GO THROUGH THIS IN GREAT DETAIL.

BUT, YOUR HONOR, WHAT'S INTERESTING AND WHAT WAS SO STRIKING ABOUT THIS ARGUMENT, THE SUBMISSION THAT WAS MADE ON FRIDAY -- THAT, FRANKLY, CHANGED THE COURSE OF HISTORY; AND I RESPECTFULLY SUBMIT IT WAS AN 180-DEGREE CHANGE IN THEIR VIEW -- WAS THEIR ASKING YOU NOW TO MAKE THIS ANALYSIS, BECAUSE THEIR OWN EXPERTS OVERLOOKED THAT STEP. YOU HAVE NO EVIDENCE BEFORE YOU FROM THEM WHERE THEY'VE IDENTIFIED THE ELEMENTS THAT THEY BELIEVE ARE SUBJECT TO PROTECTION. AND THAT'S A CRITICAL STEP.

(BRIEF RECESS TAKEN TO SWITCH COURT REPORTERS.)

(THIS CONCLUDES VOLUME I OF 4-22-08)

/ / /

/ / /

CERTIFICATE

I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

______________________ ______________

THERESA A. LANZA, CSR, RPR DATE

FEDERAL OFFICIAL COURT REPORTER

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On April 28, 2008, I served true copies of the following documents described as: **CONFIDENTIAL - DECLARATION OF CHRISTOPHER E. PRICE IN SUPPORT OF MOTION OBJECTING TO DISCOVERY MASTER'S DENIAL OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS BATES NUMBERED MGA 3801819-22** on the parties in this action as follows:

| Keker & Van Nest, LLP<br>John W. Keker, Esq./Michael H. Page, Esq.<br>Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111 | |
|---|---|

[√] **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart Oliver & Hedges for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. I enclosed the foregoing in sealed envelope(s) addressed as shown above, and such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

[√] **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in sealed envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) being served.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 28, 2008, at Los Angeles, California.

Kelly Velazquez

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On April 28, 2008, I served true copies of the following documents described as: **CONFIDENTIAL - DECLARATION OF CHRISTOPHER E. PRICE IN SUPPORT OF MOTION OBJECTING TO DISCOVERY MASTER'S DENIAL OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS BATES NUMBERED MGA 3801819-22** on the parties in this action as follows:

| Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | Overland Borenstein Scheper & Kim LLP<br>Mark E. Overland, Esq/David C. Scheper Esq<br>Alexander H. Cote Esq<br>601 West Fifth Street, 12th Floor<br>Los Angeles, CA 90071-2025 |
|---|---|

[√] **[PERSONAL]** by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 28, 2008, at Los Angeles, California.

Dave Quintana