QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>[PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO CARTER BRYANT'S MOTION *IN LIMINE* NO. 14 TO EXCLUDE REFERENCES TO "BORROWING" FROM MATTEL PROJECTS<br><br>[Notice of Lodging and Declarations of Tamar Buchakjian and Stephen Hauss filed concurrently herewith]<br><br>Date:  May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference:      May 19, 2008<br>Trial Date:                     May 27, 2008 |

## **Preliminary Statement**

Defendant Carter Bryant's motion is based on a fundamental misunderstanding of relevance. Bryant argues that his "borrowing" of Mattel's intellectual property is not relevant because it is not actionable as an independent copyright violation. But independent actionability is beside the point. Mattel need not argue that Bryant infringed Mattel's copyright interests in its intellectual property to show that the unauthorized "borrowing" of that intellectual property is highly probative to issues in this case.

The key issue in this case is <u>when</u> Carter Bryant created certain Bratz-related drawings. The fact that Bryant borrowed from Mattel's Toon Teens and aspects of other Mattel projects in creating Bratz is probative on each and every claim in Phase 1 of this case because it goes to show when Bratz was created. While Bryant and MGA claim that Bryant created the Bratz concept in 1998, the evidence that Bryant borrowed key elements of the Bratz concept from Mattel projects from 1999 and 2000 proves this is false. This evidence is also relevant to dispute Bryant's claims relating to what he claims was his inspiration for Bratz.

Defendants' argument that such evidence is barred as improper character evidence under <u>Fed. R. Evid.</u> 404(b) is equally unavailing. Bryant's "borrowing" is not being offered as character evidence, but rather as proof that Bratz was created in 1999 and 2000 when he was a Mattel employee -- an issue that MGA cannot dispute is directly relevant to liability. Such evidence is also admissible as material proof of Bryant's and MGA's intent and lack of mistake with respect to the intentional torts at issue in Phase 1. It is axiomatic that Rule 404(b) does not preclude the introduction of evidence of other acts for these purposes.

Finally, Bryant's "borrowing" of Mattel's intellectual property is highly probative to apportionment of damages, including most notably to refute MGA's arguments that its purported "innovation" was responsible for Bratz's success. MGA

is not entitled to a deduction from Mattel's damages for any purported "contributions" to Bratz that MGA or Bryant took from Mattel.

Bryant's motion should be denied.

## Argument

### I. BRYANT'S BORROWING OF ASPECTS OF MATTEL PROJECTS FROM 1999 AND 2000 TO CREATE BRATZ TENDS TO PROVE THAT HE CREATED BRATZ WHILE EMPLOYED AT MATTEL

Defendants argue that "Mattel has made allegations that Bryant 'borrowed' ideas from Mattel projects, despite repeatedly conceding that its legal claims here are not based on any such copying" (Bryant's Motions in Limine 13-15 ("Bryants MIL 14") at 13), "nor would any such 'borrowing' be actionable conduct within the scope of any of Mattel's claims here."  (Bryant's MIL at 14.)  Defendants thus urge that any conduct that is not actionable by itself is not admissible evidence. That is not the law.  On the contrary, if evidence is relevant, it is admissible unless it falls within a specified exception.  Fed. R. Evid. 402.  "[I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  New Jersey v. T.L.O., 469 U.S. 325, 345, 105 S.Ct. 733, 744, 83 L. Ed. 2d 720 (1985) (quoting Fed.Rule Evid. 401).  See United Mine Workers of America v. Pennington, 381 U.S. 657, 670, 85 S.Ct. 1585, 1593 (1965) ("testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny").

Defendants' arguments ignore Mattel's specific allegations relating to the timing of Bryant's development of Bratz.  As discussed below in further detail,

Bryant's "borrowing" in creating Bratz from Mattel's Toon Teens, DIVA STARZ and Swan projects tends to prove that Bratz was created while Bryant was employed by Mattel and not in 1998, as he claims.  Instead, the evidence of "borrowing" shows that Bratz was influenced by elements of Mattel projects that were created only in 1999 and 2000 -- squarely during the time of Bryant's Mattel employment -- and that did not exist in 1998.  Because the similarities between Bratz and aspects of Mattel projects tend to show Bryant created Bratz during his Mattel employment in 1999 and 2000, they are directly relevant to Mattel's claims of ownership in Bratz.[1]

Defendants' claim that this "borrowing" evidence is not relevant also ignores their *own* evidence related to Bryant's inspiration for Bratz.  Bryant and MGA argue that Bryant was "inspired by" everything he was exposed to -- with the conspicuous, and implausible, exception of even a single product he worked on or was exposed to over the course of his many years at Mattel.[2]  Thus, by this motion Bryant seeks to prevent Mattel from putting on evidence that contradicts or impeaches his creation story.  That this evidence does not conform with his creation story does not make it confusing to the jury, any more than any inconsistency between two witnesses would.  Rather, this evidence will be useful to a jury in determining the credibility of defendants' Bratz creation story.

---

[1]   The Court has ruled that Mattel owns any Bratz-related inventions created while Bryant was employed by Mattel.  See Order on Parties' Motions for Partial Summary Judgment at 5.

[2]   See e.g., MGA HK Third Supp. Resp. to Mattel's Amended Fourth Set of Interrogatories, dated January 28, 2008, No. 42 at 17:18-25 ("███████████████████████████████████████████████████████████████████████████████████████████████████████"), attached as Exhibit 36 to the Declaration of Tamar Buchakjian, dated April 28, 2008 ("Buchakjian Dec.").

Bryant and MGA cannot legitimately argue that this relevant evidence should be excluded by reason of any exception, because there is no applicable exception.  Rule 403 -- governing the exclusion of relevant evidence where it is substantially more prejudicial than probative -- does not apply.  Bryant asserts that "allowing Mattel to present its 'borrowing' allegations would inevitably result in a series of mini-trials as to the various projects from which Mattel claims Bryant 'borrowed' . . . Any time and resources spent on these irrelevant issues would prejudice Bryant by wasting time at trial, confusing the jury as to the nature of the issues to be decided, and distracting the jury from the important and probative evidence presented on the claims actually at issue."  (Bryant MIL 14 at 16)  However, a detailed examination of the inspiration for Bratz is clearly not a waste of time as it goes to the key issue in dispute:  the timing of Bryant's creation.  Indeed, defendants have specifically argued that Bryant was inspired by other materials in order to bolster their view of the creation date.  While it is true that this evidence will prejudice Defendants' case because it will show that Defendants are lying about timing and inspiration, it will not *unfairly* prejudice defendants -- the relevant inquiry under Rule 403.  See Green v. Baca, 226 F.R.D. 624, 634 (C.D.Cal. 2005) (allowing evidence of other acts where "the evidence of other acts offered by plaintiff may be prejudicial to defendant [, but] it will not be unfairly prejudicial").  Evidence is unfairly prejudicial if it tends to suggest decision on an improper basis, particularly an emotional one. See United States v. Allen, 341 F.3d 870, 886 (9th Cir.2003) (" 'Unfair prejudice' ... means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one' "); Fed.R.Evid. 403 (Advisory Committee Notes).  This evidence is not unfairly prejudicial, but rather, will be useful to a jury in determining the timing of and inspiration for the creation of Bratz.

### A. <u>Toon Teens</u>

In June 1999, Lily Martinez, a Mattel designer, worked on a project called Toon Teens.[3]  Aspects of the Toon Teens drawings Ms. Martinez did in 1999 bear strong resemblances to Bratz design drawings created by Bryant.[4]  Bryant unquestionably had access to these drawings.  Not only were the drawings displayed in Ms. Martinez's cubicle for a period of time,[5] but Bryant saw Ms. Martinez's Toon Teens project on at least one occasion and commented that " ███████████████ ███████████████ "[6]  In addition, another Mattel employee, Elise Cloonan, worked on the Mattel "Toon Teens" project.[7]  Ms. Cloonan was Bryant's roommate in 1999-2000.[8]  Bryant's exposure to Toon Teens designs and the similarities between the Toon Teens drawings and Bryant's Bratz drawings tends to establish that Bryant created Bratz works while he was a Mattel employee during the 1999 and 2000 time period, and not in 1998 as he claims.

---

[3]  Deposition Transcript of Liliana Martinez, dated May 20, 2005 ("Martinez Tr. Vol. 1") at 271:23-272:4, attached as Exhibit 26 to the Declaration of Stephen Hauss, dated April 28, 2008, ("Hauss Dec.").

[4]  Compare Bryant's Bratz drawings Bated-numbered M 0001489A-0001505, attached as Exhibit 88, 89 to the Declaration of B. Dylan Proctor in Support of Mattel, Inc.'s Motions in Limine Nos. 1-13 ("Proctor Dec."), lodged in connection with this brief., and Martinez's Toon Teen drawings Bates-numbered M 12566-12571, attached as Exhibit 110 to the Buchakjian Dec.

[5]  Martinez Tr. Vol. 1, at 270:24-271:2, Hauss Dec. Exh. 26.

[6]  Martinez Tr. Vol. 1 at 193:7-13, Hauss Dec. Exh. 26.

[7]  Deposition Transcript of Elise Cloonan Vol. 1, dated December 14, 2007 ("Cloonan Tr. Vol. 1"), at 72:10-13, attached as Exhibit 6 to the Hauss Dec.

[8]  Deposition Transcript of Carter Bryant Vol. 1, dated November 4, 2004 ("Bryant Tr. Vol. 1"), at 48:7-11, attached as Exhibit 1 to the Hauss Dec.  <u>See also</u> Deposition Transcript of Carter Bryant Vol. 2, dated November 5, 2004 ("Bryant Tr. Vol. 2"), at 302:1-19, attached as Exhibit 2 to the Hauss Dec. (claiming Ms. Cloonan assisted Bryant in preparing his Bratz pitch for MGA).

## B.   __DIVA STARZ__

The timing of certain aspects of Mattel's DIVA STARZ project also tends to establish that Bryant created Bratz while at Mattel.  Paula Garcia, MGA's Bratz project manager, was a Mattel employee who had access to, and admitting seeing, aspects of DIVA STARZ before she left Mattel in April 2000.[9]  As a Mattel design employee, Bryant also had access to DIVA STARZ designs and drawings in the Mattel Design Center.[10]  Bryant's Bratz project shares certain elements with the DIVA STARZ project that were developed in late 1999 and 2000 and that pre-date the release of Bratz.[11]  For example, names internally considered at Mattel in late 1999 and into 2000 for the DIVA STARZ project included "Brats," "Mall Brats" and variations thereon, "Brat Pack," "Boyz" and "Petz."[12]  Ms. Garcia acknowledged that

---

[9]   Deposition Transcript of Paula Garcia Vol. 1, dated May 24, 2007 ("Garcia Tr. Vol. 1"), at 205:12-17, attached as Exhibit 8 to the Hauss Dec.; Garcia Tr. Vol. 4 at 1099:3-21, Exh. 11 to the Hauss Dec.; E-mail correspondence between Larian, O'Connor, Dennis Medici and Treantafelles, dated October 10, 2000, attached as Exhibit 138 to the Buchakjian Dec.; Deposition Transcript of Paula Garcia, Vol. 3, dated October 9, 2007 ("Garcia Tr. Vol. 3"), at 873:25-875:4, attached as Exhibit 10 to the Hauss Dec.

[10]   Deposition of Carter Bryant Vol. 4, dated January 23, 2008 ("Bryant Tr. Vol. 4"), at 828:11-830:15, attached as Exhibit 4 to the Hauss Dec.  Again, other MGA employees also had access to DIVA STARZ while they were Mattel employees, but their "borrowing" is not the subject of this Motion.  __See, e.g.__, Garcia Tr. Vol. 4 at 1099:3-21 and 1109:14-18, Buchakjian Dec. Exh. 11 (Paula Garcia's and other MGA employee's access).

[11]   DIVA STARZ drawings Bates-numbered M 0016504, M 0016474-77 and 0016501; M 0016495-96; M 0016595-96; M 0016816-824; TP 0012-17; TP 0109-118, attached as Exhibit 111-117 to the Buchakjian Dec.

[12]   Email from Liz Hogan to Joni Pratte and Sue Davis, dated January 7, 2000, Buchakjian Dec. Exh. 117; Illustrator Computer Pictures Bates-numbered M 0016806-811; TP 008-011; M 0016482, Exhibit 118 to the Buchakjian Dec.; DIVA STARZ Script dated July 19, 2000, Bates-numbered M 0040931-951, attached as Exhibit 121 to the Buchakjian Dec.  There are many other instances of MGA's "borrowing" from DIVA STARZ.  __See, e.g.__, Deposition Transcript of Steve Linker Vol. 1, dated September 13, 2006 ("Linker Tr. Vol. 1"), at 43:23-44:22, attached as Exhibit 15 to the Hauss Dec. (design work that Steve Linker did for "Mini Diva Starz" at Mattel's behest in early 2000 (footnote continued)

1  "Brats" spelled with an "s" was considered as a name for the "Bratz" dolls.[13]  A

2  November 2000 marketing document prepared for MGA by Ayzenberg lists "Mall

3  Brats" as a name for the dolls as well[14] -- which, as just noted, is another name that

4  was identical to one Mattel was considering in the 1999-2000 time period as part of

5  the DIVA STARZ project.  Garcia's and Bryant's exposure to aspects of the DIVA

6  STARZ projects that were similar to elements of the Bratz project Bryant claims to

7  have created in 1998 tends to establish that Bryant created Bratz and conceived of the

8  name "Bratz" while he was a Mattel employee.

9

10      **C.**      **Swan**

11          Bryant's work on a Mattel doll called "Swan" in 1999 also tends to

12  establish that he created Bratz in 1999 while he was working for Mattel.  The Swan

13  sketches Bryant had done in August and September of 1999 bear strong resemblances

14  to Bryant's initial Bratz design drawings[15] and thus further corroborate that Bryant

15  created Bratz in 1999.

16

17  **II.**   **THE "BORROWING" FROM MATTEL'S PROJECTS IS PROOF OF**

18      **INTENT AND ABSENCE OF MISTAKE**

19          Bryant claims that "Mattel's 'borrowing' allegations have no probative

20  value unless used to support an improper and prejudicial inference of bad character."

21

22  bear similarities to the Bratz dolls and, indeed, Ms. Garcia later contacted him in the
    summer of 2000 to solicit his involvement with Bryant and Bratz).

23  [13]  Deposition Transcript of Paula Garcia Vol. 4, dated October 10, 2007 ("Garcia Tr.

24  Vol. 4"), at 1080:22-1081:9, attached as Exhibit 11 to the Hauss Dec.

25  [14]  See "Ayzenberg" MGA Entertainment Style Squad Pitch, November 13, 2000,
    bates-numbered MGA 3779227-250, attached as Exhibit 143 to the Buchakjian Dec.

26  [15]  Compare Bryant Bratz drawings Bates-numbered M 0001489A-0001505, Proctor

27  Dec. Exh. 88, 89, with Swan sketches Bates-numbered Bryant 00883 and 00886,
    attached as Exhibit 154 to the Buchakjian Dec.

28

1   (Bryant MIL 14 at 15.)  However, as just shown, the evidence of borrowing is

2   directly relevant to the issue of liability -- namely, when Bryant created Bratz.  As

3   such, the evidence is not being offered to prove bad character any more than Bryant's

4   claim to have been inspired by the Steve Madden or Paris Blues ads proves his bad

5   character.  Rule 404(b) has no application here.  See United States v. Hadley, 918

6   F.2d 848, 850 (9th Cir. 1990) ("[W]e have held that Rule 404(b) is an 'inclusionary

7   rule,' under which evidence is inadmissible 'only when it proves nothing but the

8   defendant's criminal propensities' ").

9           Furthermore, Rule 404(b) permits introduction of evidence to prove

10  "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

11  mistake or accident."  Fed. R. Evid. 404(b).  The Ninth Circuit has held that "the rule

12  is one of inclusion and that other acts evidence is admissible whenever relevant to an

13  issue other than the defendant's criminal propensity."  United States v. Mehrmanesh,

14  689 F. 2d 822, 830 (9th Cir. 1982).  See also Commodity Futures Trading Com'n v.

15  Rosenberg, 85 F. Supp. 2d 424, 437 (D.N.J. 2000) ("Applicable in both the civil and

16  criminal contexts, Rule 404(b) is a rule of inclusion").  Thus, the "borrowing" from

17  Mattel projects for Bratz is not only admissible as evidence of liability, but it is also

18  admissible to prove intent and lack of mistake on the part of Bryant and MGA.

19

20      **A.    The "Borrowing" Is Proof Of Intent.**

21          Evidence that Bryant "borrowed" aspects of Mattel's projects without

22  permission for use in a competing doll line that he sold to Mattel's competitor is

23  directly and highly relevant to show that he acted with malice, oppression, or fraud

24  and therefore, that Mattel is entitled to punitive damages.  To show "malice," Mattel

25  must prove that Bryant "acted with intent to cause injury" or that he acted with "a

26  willful and knowing disregard of the rights" of Mattel.  See CACI No. 3947.  To

27  show "oppression," Mattel must prove that Bryant's conduct was despicable and

28  subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.  Id.

1    To show "fraud," Mattel must prove that Bryant intentionally misrepresented or

2    concealed a material fact and did so intending to harm Mattel.  Id.; Fed. R.Evid.

3    404(b).  Evidence that Bryant engaged in a scheme to steal secretly and repeatedly

4    Mattel's ideas and sell them to his employer's competitor proves that his conduct was

5    not accidental, but rather was deliberate and done with the intention to cause injury to

6    Mattel in knowing disregard of Mattel's rights.

7            Bryant's "borrowing" is relevant to show that he intentionally engaged in

8    unfair competition with Mattel.  In order to prevail on its statutory unfair competition

9    claim, Mattel will show that Bryant intentionally engaged in unlawful conduct to

10   unfairly compete with Mattel.  See Cal. Bus. & Prof. Code § 17200 ("As used in this

11   chapter, unfair competition shall mean and include unlawful, unfair or fraudulent

12   business practice . . .") (emphasis added).  When MGA paid Bryant to steal from

13   Mattel, they both intentionally committed commercial bribery and, thus, are liable to

14   Mattel under California's unfair competition law.  See Cal.Penal Code § 641.3(a),

15   (d)(3).[16]  Evidence of Bryant's pattern of misconduct against Mattel in 1999 and 2000

16   is relevant to show his intent to defraud Mattel by using his position at Mattel to gain

17   access to valuable confidential information that he then used for his own benefit and

18   the benefit of MGA.  See U.S. v. Simas, 937 F.2d 459 (9th Cir. 1991) (evidence of

19   _____

20       [16]  See Cal.Penal Code § 641.3(a) ("Any employee who solicits, accepts, or agrees to

21   accept money or any thing of value from a person other than his or her employer, other
     than in trust for the employer, corruptly and without the knowledge or consent of the

22   employer, in return for using or agreeing to use his or her position for the benefit of that
     other person, and any person who offers or gives an employee money or any thing of

23   value under those circumstances, is guilty of commercial bribery); Cal.Penal Code §

24   641.3(d)(3) (" 'Corruptly' means that the person specifically intends to injure or defraud
     (A) his or her employer, (B) the employer of the person to whom he or she offers, gives,

25   or agrees to give the money or a thing of value, (C) the employer of the person from
     whom he or she requests, receives, or agrees to receive the money or a thing of value, or

26   (D) a competitor of any such employer).  In addition, Mattel will seek punitive damages

27   (footnote continued)

28

other instances in which defendant used items purchased at his employer's expense for his personal use was relevant to mail fraud counts as it was probative of intent to defraud his employer, and, thus, evidence was admissible even though damaging, absent showing that evidence resulted in unfair prejudice).  <u>See also</u> <u>Morganroth & Morganroth v. DeLorean</u>, 123 F.3d 374 (6th Cir. 1997) (other bad acts relevant to prove element of intent to defraud).

### **B.** **Evidence Of "Borrowing" is Material Proof That MGA and Larian Intended to Interfere with Bryant's Contracts with Mattel and Aid and Abet his Breaches**

The evidence of "borrowing" is also relevant to show the intent of MGA and Larian, which is relevant to prove that MGA and Larian aided and abetted Carter Bryant's breaches of fiduciary duty and breaches of the duty of loyalty.  Mattel must establish that MGA and Larian gave substantial assistance or encouragement to Bryant to breach his duties.  <u>Neilson v. Union Bank of Cal.</u>, 290 F. Supp. 2d 1101, 1118, 1127 28 (C.D. Cal. 2003); <u>In re First Alliance Mortgage Co.</u>, 471 F.3d 977, 994 95 (9th Cir. 2006).  Mattel also seeks punitive damages on its intentional interference and aiding and abetting claims and, therefore, must show that MGA and Larian acted with malice, oppression or fraud.  <u>See</u> CACI No. 3947.

As explained above, Garcia and Bryant had access to DIVA STARZ, and similarities between Bratz and DIVA STARZ tends to establish that Bryant created Bratz while at Mattel and that MGA, including through Garcia, knew it.  This conduct shows that MGA and Larian "acted with intent to cause injury" to Mattel and with "a willful and knowing disregard of the rights" of Mattel.  <u>See</u> CACI No. 3947.

---

relating to its statutory and common law unfair competition violations and therefore, must prove that Bryant acted with malice, oppression or fraud.  <u>See</u> CACI No. 3947.

1  Financial gain and self-interested profit on the part of MGA or Mr. Larian can

2  corroborate the knowledge and substantial assistance elements of aiding and abetting

3  Mr. Bryant's breach or breaches of any duty owed to Mattel.  Neilson v. Union Bank

4  of Cal., 290 F. Supp. 2d 1101, 1118, 1127 28 (C.D. Cal. 2003); In re First Alliance

5  Mortgage Co., 471 F.3d 977, 994 95 (9th Cir. 2006).  This same evidence likewise

6  refutes MGA's claims that it acted innocently and in good faith when it aided and

7  abetted Bryant.

8

9  **III.  THE BORROWING OF MATTEL'S INTELLECTUAL PROPERTY IS**

10  **RELEVANT TO MGA'S DAMAGES THEORIES.**

11

12          Mattel is entitled to profits attributable to defendants' copyright

13  infringement.  See 9th Cir. Civ. Jury Instr. 17.24 (2007).  As part of MGA's defense

14  to Mattel's damages claims, it will argue its profits should be apportioned.  MGA

15  plans to present evidence that Bratz's profits are attributable not to Bryant's creation --

16  Bratz -- or his input, but to MGA's so-called "innovation."[17]  Evidence showing that

17  Bryant and MGA "borrowed" from Mattel refutes MGA's self-serving

18  characterizations of its supposed "innovations" and MGA's claim that it was not

19  Bryant, but the purported "talent" of other MGA employees that was the driving force

20  behind Bratz's success.  Furthermore, because MGA is not entitled to apportion any

21  profits generated from elements it took from Mattel, MGA's and Bryant's borrowing

22  is directly relevant here.

23          More specifically, MGA claims that damages should be reduced on the

24  theory that much of MGA's success is based not on the Bratz doll, but on the

25

26  _____

27  [17]   See e.g., Expert Report of Dr. Erich Joachimsthaler, dated February 11, 2008, at 74, attached as Exh. 22 to Proctor Dec.

28

1  company's self-proclaimed "███████"[18] and its "███████████

2  ██████" that operated "███████████████████████" where "███

3  ███████████."[19]  Relatedly, MGA claims that Bryant's only contribution

4  to the doll's form was to give MGA's doll sculptor, Margaret Hatch-Leahy, a Steve

5  Madden advertisement from the August 1998 issue of Seventeen Magazine.[20]

6          However, MGA's contributions to the development of Bratz were not

7  MGA's innovations -- they were Mattel's.  The SKIPPER doll body is but one

8  example.  According to MGA's own emails, much of Mattel's SKIPPER body was

9  used for the Bratz doll:  the head, the arms, the hips, and the knees.[21]  To state the

10  obvious, MGA's strategies were not the result of its innovation but rather the result of

11  its theft.  The "borrowing" of this Mattel intellectual property is also directly is

----

18  Id.

19  Deposition Transcript of Dr. Erich Joachimsthaler Vol. 1, dated March 26, 2008 ("Joachimsthaler Tr. Vol. 1"), at 168:15-169:7, attached as Exhibit 12 to the Hauss Dec.

20 See e.g., Deposition of Margaret Leahy Vol. 1, dated December 12, 2007 ("Leahy Tr. Vol. 1"), at 133:9-14, attached as Exhibit 38 to the Hauss Dec.; MGA HK Third Supp. Resp. to Mattel's Amended Fourth Set of Interrogatories, dated January 28, 2008, No. 42, at 16:17-24 ("████████████████████████████████████████████

████████████████████████████████████████████████"), at 17:3-6 ("

████████████████████████████████████████████████████"), and at 17:18-25 ("

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████"), attached as Exhibit 36 to the Buchakjian Dec.

21 In working with MGA Hong Kong to develop the Bratz body, MGA stated that "█

████████████████████████████████████████████████████████████

████████████████████████████████████"  Email from M. Ward to C. Kwok, dated October 30, 2000, attached as Exhibit 126 to the Buchakjian Dec.  See also, MGA internal e-mail chain dated November 2, 2000, Bates-numbered MGA0009407 B- 9409 B, ; MGA000422, attached as Exhibit 123 to the Buchakjian Dec.

relevant to MGA's speed of development and how quickly MGA was able to go from the conception of Bratz to putting Bratz on store shelves, an issue that MGA claims is relevant to the timing of Bratz's creation and statute of limitations.

Further, evidence relating to the SKIPPER body refutes MGA's claim that Bryant's contribution to the Bratz doll was minimal and that Margaret Leahy, the doll's sculptor, created it from a Seventeen magazine ad.  Bryant has claimed he had significant experience working on the SKIPPER body[22] and had been credited with successfully re-designing the SKIPPER body during employment at Mattel.[23] Bryant's experience with the design of SKIPPER at Mattel coupled with the fact that MGA used that body as the basis for its Bratz doll tends to show that Bryant was far more involved with the development of Bratz than simply handing the sculptor a torn out page from Seventeen Magazine.  Indeed, it tends to refute that the Bratz sculpt came from this advertisement as MGA claims.

Finally, under 17 U.S.C. § 504(b), a "copyright owner is entitled to recover . . . any profits of the infringer that are attributable to the infringement . . . .". All gross revenues are "presumed" to be profits attributable to the infringement,

---

[22]   Bryant Resume, Bates-numbered M 0001615-16, attached as Exhibit 122 to the Buchakjian Dec.; Deposition of Carter Bryant Vol. 3, dated November 8, 2004 ("Bryant Tr. Vol. 3"), at 544:8-10, attached as Exhibit 3 to the Hauss Dec.

[23]   News article about Teen Skipper, Bates-numbered BRYANT 00943-4 (noting Bryant at BRYANT 00944), attached as Exhibit 161 to the Buchakjian Dec.  See also Bryant's cover letter to Hasbro, dated July 14, 1998, Bates-numbered BRYANT 00377 (where Bryant writes "I feel would be a beneficial employee at your company, having accomplished several milestones for Mattel and Barbie including . . . designing the Teen Skipper lines."), Buchakjian Dec., Exh. 157; Bryant's Resume, Bates-numbered M 0001615-16, (Bryant's Special Accomplishments section of his resumes lists him as "███████████████████████"), attached as Exhibit 122 to the Buchakjian Dec.; Bryant's Cover Letter to Hasbro, Bates-numbered BRYANT 04647 (indicating that his experience at Mattel "███████████████████████████

(footnote continued)

1  subject to the infringer proving costs and  apportionment.  <u>Data General Corp. v.</u>

2  <u>Grumman Systems Support Corp.</u>, 36 F.3d 1147, 1173-1174 (1st Cir. 1994).  <u>See also</u>

3  <u>Nelson-Salabes, Inc. v. Morningside Dev., LLC</u>, 284 F.3d 505, 512, n.9 (4th Cir.

4  2002).  The infringer has the burden of proving that the profits are attributable to

5  factors other from the copyrighted work.  <u>Nimmer</u>, § 14.03[D][1] at 14-60. The

6  infringer's "burden under the apportionment provision of Section 504(b) is primarily

7  to demonstrate the absence of a causal link between the infringement and all or part

8  of the profits claimed by the plaintiff." <u>Data General Corp.</u>, <u>supra</u>, 36 F.3d at 1171.

9  Accordingly, in this case, MGA and Bryant have the burden of proving that some

10 portion of their profits from the Bratz line of products is not attributable to their

11 infringement of the copyrighted works, <u>i.e.</u> apportionment.

12      MGA is not entitled to a deduction from Mattel's damages for its

13 "contributions" and other "inputs" taken from Mattel.  In fact, MGA and Bryant are

14 not entitled to apportion profits based on "contributions" made by Bryant during his

15 Mattel employment because, as this Court held in ruling on cross-motions for

16 summary judgment, all such contributions are owned by Mattel under the Inventions

17 Agreement.  Order on Parties' Motions for Partial Summary Judgment at 5.  And,

18 without the Bratz dolls and their concomitant success, MGA would not have made

19 the rate of return it did.[24]  Therefore, even assuming that defendants are allowed to

20 apportion their damages, MGA may apportion only an amount of profit based on the

21 _____

22 ████████████████████████"), attached as Exhibit 158 to the Buchakjian Dec.

23 [24]   This conclusion finds support in MGA's own statements, as one employee remarked that extension opportunities would not materialize if the "████████████

24 ████████████████" <u>i.e.</u>, if the Bratz dolls were not successful, there would be no follow-on products and revenues. MGA March 2001 Business Plan, Bates-numbered MGA

25 4033288-4033310 at 4033303, attached as Exhibit 159 to the Buchakjian Dec.; <u>see also</u>

26 Report Bates-numbered MGA 0883923 ("████████████████████████

27 (footnote continued)

28

1  industry average rate of return, not the rate of return that the unique Bratz property

2  garnered.  That property -- and that profit -- belongs to Mattel.

3

4  <u>**Conclusion**</u>

5

6        For all the foregoing reasons, Mattel respectfully requests that the Court

7  deny Bryant's Motion *in Limine* No. 14 in its entirety.

8

9  DATED:  April 28, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

10

11        By_____

12          John Quinn
        Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27  ██████████████████████████████████████████████████ "), attached as Exhibit 160 to the Buchakjian Dec.

28