QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>[PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION IN LIMINE NO. 4 TO EXCLUDE REFERENCE TO AND USE OF MGA'S EMPLOYMENT AGREEMENTS WITH ITS EMPLOYEES; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Notice of Lodging and Declarations of Tamar Buchakjian and Stephen Hauss filed concurrently]<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 2

I. MGA'S ANALOGOUS EMPLOYEE AGREEMENTS ARE RELEVANT ................................................................................................. 2

    A. MGA's Agreements Evidence Its Awareness of Bryant's Obligations to Mattel ........................................................................ 2

    B. Defendants Have Put The Agreements of "Similarly Situated Employers" Such As MGA At Issue ........................................................ 3

    C. MGA's Agreements Evidence Reasonable Expectations At The Time The Mattel/Bryant Agreement Was Formed ................................. 5

II. MGA'S AGREEMENTS ARE NOT UNDULY PREJUDICIAL ....................... 6

CONCLUSION ................................................................................................................ 7

## TABLE OF AUTHORITIES

**Page**

### Cases

IDX Sys. Corp. v. St. John Health Sys.,
  2003 WL 25676069 (E.D. Mich. Mar. 28, 2003)..................................................3

Integrity Technical Services, Inc. v. Holland Management, Inc.,
  2002 WL. 31175271 (Ohio App. Oct. 2, 2002) ..................................................6

London v. Standard Oil Company of California, Inc.,
  417 F.2d 820 (9th Cir. 1969)..................................................................................4

Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.,
  205 Cal. App. 3d 442 (1998)..................................................................................6

Retrofit Partners I, L.P. v. Lucas Industries, Inc.,
  201 F.3d 155 (Conn. 2000) ....................................................................................3

Roy v. Monitor-Patriot Co.,
  112 N.H. 80 (Sup.Ct. N.H. 1972)..........................................................................3

Southern Pacific Communications Co. v. AT&T,
  556 F. Supp. 825 (D.C.D.C. 1982).......................................................................6

Yates v. Keane,
  184 Mich. App. 80 (1990)......................................................................................3

### Statutes

Cal. Civ. Code 1645 ......................................................................................................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Defendants seek to exclude evidence of MGA's own inventions and confidential information agreements with employees other than Bryant, which they contend are irrelevant to interpreting the Mattel/Bryant agreements. The Court's April 25, 2008 summary judgment order that issued following defendants' motion indeed found the Mattel/Bryant inventions agreement was enforceable, unambiguous, and that Bryant had breached it is as a matter of law. Order at 4-6.

Defendants' motion fails to address, however, the relevance of MGA's own agreements to Mattel's claims that MGA aided and abetted Bryant's breaches of his obligations to Mattel and intentionally interfered with Bryant's contract with Mattel. MGA feigns ignorance that Bryant owed any obligations to Mattel that is belied by MGA's own insistence that its employees enter into similar assignment and conflict of interest provisions. The Court specifically found that Mattel has raised a triable issue as to MGA's knowledge of Bryant's obligations to Mattel, Order at 6, and MGA's awareness that employers in the industry--including MGA itself--have agreements containing such provisions directly bears on that issue.

Moreover, although the Court's summary judgment ruling forecloses defendants' arguments about the "reasonable expectations" of an employee like Bryant, to the extent defendants are somehow permitted to continue advancing such arguments, they have directly put MGA's own comparable agreements at issue. For example, if MGA is permitted to argue that the language and administration of the Mattel/Bryant agreements departed from the practices of "similarly situated employers," Mattel is entitled to counter with evidence of the agreements and practices of such employers, which indisputably includes MGA, a direct competitor.

# Argument

## I. MGA'S ANALOGOUS EMPLOYEE AGREEMENTS ARE RELEVANT

### A. MGA's Agreements Evidence Its Awareness of Bryant's Obligations to Mattel

MGA's motion ignores entirely the relevance of MGA's employee agreements to Mattel's claim that MGA aided and abetted Bryant's breach of his duties to Mattel and intentionally interfered with his Mattel contract. The Court's recent summary judgment order found that Bryant breached his contractual duties to Mattel, Order at 5-6, and that triable issues existed as to MGA's knowledge of that contract, Order at 6.

MGA's inventions assignment and confidentiality agreements with its own employees directly bear on this issue. Although MGA concedes it knew Bryant was employed by Mattel when he presented his drawings to MGA, it contends it ▓▓▓▓▓▓▓▓▓▓ and thus is not responsible for intentional interference or aiding and abetting Bryant's breaches.[1] However, MGA's own insistence on an inventions assignment provision in its agreements with its own employees tends to show MGA knew or should have known Bryant likely had similar obligations to Mattel, whether or not MGA knew the "specifics" of those contractual duties.

Similarly, MGA attempts to shield its culpability by noting it ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[2] If Mattel can demonstrate that MGA and other similar employers typically required such inventions assignment and conflict of interest

---

[1] Memorandum of Points and Authorities in Support of MGA Parties' Corrected Motion for Summary Judgment, dated March 7, 2008 ("MGA MSJ"), at 47:25-27, Declaration of Tamar Buchakjian, dated April 28, 2008 ("Buchakjian Dec."), Exh. 27.
[2] Id. at 48:7-8, Buchakjian Dec., Exh. 27.

provisions, a jury could conclude MGA could not be willfully blind to Bryant's probable commitments to Mattel, notwithstanding Bryant's warranty to the contrary.

MGA's agreements with its employees are circumstantial evidence of its knowledge and intent of Bryant's theft of Bratz from Mattel. These agreements are therefore admissible because Mattel "is entitled to the benefit of all competent evidence to support [its] contentions." Roy v. Monitor-Patriot Co., 112 N.H. 80, 82 (N.H. 1972) (holding that exclusion of indemnity agreement between defendant distributor and non-party columnist was reversible error because agreement was relevant to defendant's malice and recklessness); Yates v. Keane, 184 Mich.App. 80, 83 (1990) (contracts with non-parties "to which defendants were a party [were] relevant to show the intent element" of fraud because "[t]ransactions with third persons not immediately connected with the alleged fraud can be probative of defendants' knowledge"); see also Retrofit Partners I, L.P. v. Lucas Industries, Inc., 201 F.3d 155, 163 (2d Cir. 2000) (holding that statement made by party in contract was relevant to that party's intent in fraud action).

### B. Defendants Have Put The Agreements of "Similarly Situated Employers" Such As MGA At Issue

The Court also ruled at summary judgment that Bryant's inventions agreement with Mattel was enforceable, unambiguous, and fell within Bryant's reasonable expectations. Order at 4-5. Thus, other agreements are irrelevant to interpreting the Mattel/Bryant inventions agreement.[3] Nonetheless, should

---

[3] Defendants unsuccessfully attempt to distinguish the MGA agreements they seek to exclude and the post-1999 Mattel agreements they seek to admit. The two sets of documents are distinguishable, but not for the reasons MGA suggests. As set forth in Mattel's Motion in Limine No. 1, later versions of Mattel's own agreements do not bear on the parties' intent in entering their 1999 agreement. Defendants' own authority recognizes this principle. Motion at 3:17-19 (citing IDX Sys. Corp. v. St. John Health Sys., 2003 WL 25676069, at *10 (E.D. Mich. Mar. 28, 2003) ("The focus is this contract at issue and not other contracts by IDX with other customers. Those are collateral matters.")). However, MGA's 1999-era agreements do bear on whether the (footnote continued)

1  defendants somehow be permitted to continue advancing their arguments concerning
2  the enforceability and interpretation of the Mattel/Bryant agreements, those
3  arguments directly put the MGA agreements at issue.
4        For example, MGA's expert D. Jan Duffy opines in her rebuttal report
5  that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[4]
9  Similarly, Ms. Duffy contends that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮[5]
12       By contending the language of Mattel's agreements departed from that of
13 "similarly situated employers' agreements," defendants have opened the door for other
14 evidence of industry practice during the relevant period, including the form and
15 administration of MGA's comparable agreements. <u>See, e.g., London v. Standard Oil</u>
16 <u>Company of California, Inc.</u>, 417 F.2d 820, 825 (9th Cir. 1969) (plaintiff who elicited
17 testimony from investigator concerning appearance of spark plugs following a crash
18 could not object to conflicting testimony from defendant's investigator).
19       Indeed, comparing the two companies' agreements shows why it would be
20 unfair to preclude Mattel from challenging Duffy's statements without reference to the
21 MGA agreements. Duffy's initial expert report opines, for example, that ▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮[6]

---

Mattel/Bryant agreement compared to those of the "similarly situated employers" MGA's expert has tried to put at issue.
  [4] D. Jan Duffy Rebuttal Report dated March 17, 2008, Buchakjian Dec., Exh 28.
  [5] Id.
  [6] Expert Report of D. Jan Duffy, dated February 11, 2008, at 19-20, attached as Exhibit 4 to the Declaration of B. Dylan Proctor in Support of Mattel's Motions in (footnote continued)

███████████████. Yet MGA--also a toy company that employs creative design personnel--used an inventions agreement in 1999 that refers only to patentable inventions with no references to copyrights. Ms. Duffy also suggests ████████████ ████████████████████████████████████████████████████████████[7] However, MGA's agreement from the same year contains no definition of "inventions" at all, let alone provides examples of the kind Ms. Duffy suggests.[8] Defendants cannot be permitted to proffer an expert who makes such assertions about the practices of "similarly situated employers" without allowing Mattel to rebut with evidence of such employers, including most importantly MGA itself.

### C. MGA's Agreements Evidence Reasonable Expectations At The Time The Mattel/Bryant Agreement Was Formed

Similarly, the Court ruled at summary judgment that the Mattel/Bryant inventions agreement "is not outside the scope of the parties' expectations," Order at 5, thus foreclosing defendants' contention that agreement "cannot be interpreted to encompass Bratz, because that result would be outside of an employee's reasonable expectations."[9] Defendants characterize the agreement as a ████████████ ████████████████████████████████████████████████[10]████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████[11] So far as defendants are permitted to continue to make some form of this argument

---

Limine Nos. 1-13, dated April 14, 2008 ("Proctor Dec."), and lodged concurrently herewith.
[7] Id. at 19.
[8] MGA 1999 Confidentiality and Inventions Assignment Agreement, Buchakjian Dec., Exh. 29.
[9] Memorandum in Support of Carter Bryant's Motion for Partial Summary Judgment, dated March 7, 2008 ("Bryant MSJ"), at 31 (heading), Proctor Dec., Exh. 41.
[10] Bryant MSJ, at 33:23-34:6, Proctor Dec., Exh. 41.
[11] Id., at 33:13-18, Proctor Dec., Exh. 41.

following the summary judgment order (and they should not be), they have put at issue the assignment terms used by similarly situated employers at the time, including MGA.

Provisions from contracts of other employers in the relevant industry--such as MGA's--have consistently been held to inform the jury of employees' reasonable expectations by evidencing relevant industry practices. See <u>Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.</u>, 205 Cal.App.3d 442, 451 (1998) ("The industry practice becomes part of the contract, and evidence of such customs is admissible . . . if it does not alter or vary the terms of the contract"); <u>Integrity Technical Services, Inc. v. Holland Management, Inc.</u>, 2002 WL 31175271, at *3-4 (Ohio App. Oct. 2, 2002) (upholding inclusion of similar provisions from other contracts from the relevant industry in interpreting contract as evidence of customs and practice); <u>Southern Pacific Communications Co. v. AT&T</u>, 556 F.Supp. 825, 1003 (D.C.D.C. 1982) ("the Court understands this was the practice in the industry in general, as it is evident from the fact that independent telephone companies . . . had similar provisions in their contracts"). <u>Cf.</u> Cal. Civ. Code 1645 ("Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense.")

That the agreements are between MGA and non-parties does not effect their admissibility. <u>Midwest Television</u>, 205 Cal. App.3d at 451 ("The prevailing industry custom binds those engaged in the business even though there is no specific proof that the particular party to the litigation knew of the custom").

## II. <u>MGA'S AGREEMENTS ARE NOT UNDULY PREJUDICIAL</u>

Defendants' concern that ███████████████████████████████████████████████████████ is misplaced. <u>See</u> Motion at 1:22-23. To the extent the MGA contracts "color" the jury's interpretation of the Mattel/Bryant agreements, it is only because

defendants and their expert have invited the jury to do just that. Nor have defendants shown any concern for "mini-trials," as they seek to admit evidence of Mattel's post-1999 business practices and non-party employment agreements. Indeed, because those post-1999 Mattel agreements are of no relevance in interpreting the parties' obligations under the 1999 agreements, defendants' professed concern that presenting contracts dealing with similar subject matter ▮▮▮▮▮▮▮▮ id. at 3:22-3, is more acute with respect to evidence of Mattel's non-party employment agreements.

The evidence at issue is discrete and consists primarily of a handful of short contracts. There is no risk of waste of time, confusion, or any other reason that would justify exclusion.

## Conclusion

For the foregoing reasons, defendants Motion in Limine No. 4 should be denied in its entirety.

DATED: April 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John Quinn
    John Quinn
    Attorneys for Mattel, Inc.