1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12      Plaintiff, | Consolidated with Case No. CV 04-09059 and |
| 13      vs. | Case No. CV 05-02727 |
| 14  MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 15      Defendant. | [PUBLIC REDACTED] MATTEL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN |
| 16 | OPPOSITION TO DEFENDANTS' |
| 17  AND CONSOLIDATED ACTIONS | MOTION IN LIMINE NO. 7 TO EXCLUDE REFERENCES TO AND |
| 18 | USE OF CERTAIN EXPERT TESTIMONY PROFFERED BY |
| 19 | MATTEL WITNESS MICHAEL J. WAGNER |
| 20 | [Notice of Lodging and Declarations of |
| 21 | Tamar Buchakjian and Stephen Hauss filed concurrently herewith] |
| 22 | Date:  May 21, 2008 |
| 23 | Time:  1:00 p.m. Place:  Courtroom 1 |
| 24 | |
| 25 | **Phase 1** Pre-Trial Conference: May 19, 2008 |
| 26 | Trial Date:           May 27, 2008 |
| 27 | |
| 28 | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ........................................................................................................ 6

I.      MATTEL MAY RECOVER DEFENDANTS' PROFITS, INCLUDING
        THE ENTERPRISE VALUE OF BRATZ ......................................................... 6

        A.      Copyright Infringement .................................................................. 6

        B.      California State Law Claims ........................................................... 10

II.     WAGNER'S ENTERPRISE VALUE ANALYSIS IS NOT
        SPECULATIVE ........................................................................................... 12

III.    MATTEL IS NOT DOUBLE COUNTING ITS DAMAGES ........................... 17

IV.     MATTEL IS ENTITLED TO ALL PROFITS GAINED FROM
        DEFENDANTS' WRONGDOING, INCLUDING PROFITS FROM
        THE SALE OF NON-INFRINGING BRATZ GOODS .................................... 18

V.      MR. WAGNER'S OPINIONS REGARDING MR. LARIAN'S PROFITS
        FROM BRATZ ARE RELEVANT BECAUSE MATTEL'S CLAIMS
        AGAINST MR. LARIAN ARE NOT TIME-BARRED ................................... 21

VI.     WAGNER'S TESTIMONY CONCERNING BRYANT'S PROFITS IS
        ADMISSIBLE ............................................................................................. 21

CONCLUSION .................................................................................................... 23

07209/2486616.1

# TABLE OF AUTHORITIES

**Page**

## Cases

Ajaxo, Inc. v. E'Trade Group, Inc.,
  135 Cal. App. 4th 21 (2005)..................................................................... 10

Andreas v. Volkswagen of America, Inc.,
  336 F.3d 789 (8th Cir. 2003)................................................................... 19

BGJ Associates v. Superior Court,
  75 Cal. App. 4th 952 (1999).................................................................... 11

Bucklew v. Hawkins, Ash, Baptie & Co., ,
  329 F.3d 923 (7th Cir. 2003)................................................................. 6, 7

Business Trends Analysts, Inc. v. Freedonia Group, Inc., ,
  887 F.2d 399 (2d Cir. 1989)............................................................ 7, 9, 10

Caracci v. C.I.R.,
  456 F.3d 444 (5th Cir. 2006)................................................................... 12

Computer Associates Intern., Inc. v. Altai, Inc.,
  775 F. Supp. 544 (E.D.N.Y. 1991)............................................................ 8

Cream Records, Inc. v. Jos. Schlitz Brewing Co.,
  754 F.2d 826 (9th Cir. 1985)................................................................... 17

Cummings Medical Corp. v. Occupational Medical Corporation of America, Inc.,
  10 Cal. App. 4th 1291 (1992)................................................................. 11

Data General Corp. v. Grumman Systems Support Corp.,
  36 F.3d 1147 (1st Cir. 1994) .................................................................. 22

Deltak, Inc. v. Advanced/Systems, Inc.,
  767 F.2d 357 (7th Cir. 1985)................................................................... 17

eBay Inc v. MercExchange, L.L.C.,
  547 U.S. 388 (2006) .............................................................................. 14

Foster Poultry Farms, Inc. v. Suntrust Bank, Slip Copy,
  2008 WL. 160960 (E.D. Cal. 2008) ......................................................... 10

Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,
  772 F.2d 505 (9th Cir. 1985)................................................ 8, 10, 16, 17, 18

Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,
  886 F.2d 1545 (9th Cir. 1989)................................................................ 8, 9

Gold v. Wolpert,
  876 F.2d 1327 (7th Cir. 1989).................................................................. 11

07209/2486616.1

1  Interactive Multimedia Artists, Inc. v. Superior Court,
2    62 Cal. App. 4th 1546 (1998).................................................................. 11

3  In re Iridium Operating LLC,
      373 B.R. 283 (S.D.N.Y. 2007) ............................................................... 12

4  Jarvis v. A & M Records,
      827 F. Supp. 282 (D.N.J., 1993)............................................................... 7
5

6  Kleier Advertising Co., Inc. v. James Miller Chevrolet, Inc.,
      722 F. Supp. 1544 (N.D. Ill. 1989)........................................................... 7

7  Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,
8     592 F.2d 651 (2d Cir. 1978)................................................................... 22

9  Mazzera v. Wolf,
      30 Cal. 2d 531 (1947)............................................................................ 11

10  MCA, Inc. v. Wilson,
       677 F.2d 180 (2d Cir. 1981)................................................................... 17
11

12  Mackie v. Rieser,
       296 F.3d 909 (9th Cir.2002), cert. denied, 537 U.S. 1189 (2003) ........... 19

13  MindGames, Inc. v. Western Pub. Co.,
14     218 F.3d 652 (7th Cir. 2000)................................................................... 16

15  Nelson v. Serwold,
       687 F.2d 278 (9th Cir. 1982)................................................................... 10

16  Okerlund v. U.S.,
17     365 F.3d 1044 (Fed. Cir. 2004)............................................................... 12

18  Olin Corp. v. Certain Underwriters at Lloyd's London,
       468 F.3d 120 (2d Cir. 2006)................................................................... 16

19  In re PWS Holding Corp.,
20     228 F.3d 224 (3rd Cir. 2000)................................................................... 12

21  Pacific Gas & Electric Co. v. Zuckerman,
       189 Cal. App. 3d 1113 (1987)................................................................. 20

22  Pioneer Hi-Bred Intern. v. Holden Foundation Seeds, Inc.,
23     35 F.3d 1226 (8th Cir. 1994).................................................................... 3

24  Robert R. Jones Associates, Inc. v. Nino Homes,
       858 F.2d 274 (6th Cir. 1988)................................................................... 17

25  Roy Expert Co. v. Columbia Broadcasting Systems, Inc.,
26     503 F. Supp. 1137 (S.D.N.Y. 1980)........................................................ 9

27  Softel, Inc. v. Dragon Medical and Scientific Communications, Ltd.,
       891 F. Supp. 935 (S.D.N.Y. 1995)..................................................... 7, 10

28  Spectravest, Inc. v. Mervyn's Inc.,
       673 F. Supp. 1486 (N.D.Cal. 1987).......................................................... 17

1 | St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.,
     No. Civ.A. 03-241 JJF, 2004 WL 2213562,
2    2004 U.S. Dist. LEXIS 19475 (D. Del. Sept. 28, 2004) ........................................... 3

3 | Stutzman v. CRST, Inc.,
     997 F.2d 291 (7th Cir. 1993) ................................................................................. 16
4
   U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc.,
5    781 F. Supp. 412 (M.D.N.C. 1991) ......................................................................... 7

6 | U.S. v. Cooper,
     277 F.2d 857 (5th Cir. 1960) ................................................................................. 20
7
   U.S. v. Eden Memorial Park Ass'n,
8    350 F.2d 933 (9th Cir. 1965) ................................................................................. 12

9 | Vossler v. Richards Mfg.Co., Inc.,
     143 Cal. App. 3d 952 (1983) ................................................................................. 11
10
   Warren v. Merrill,
11   143 Cal. App. 4th 96 (2006) ................................................................................. 11

12 | Zinn v. Ex-Cell-O Corp.,
      24 Cal. 2d 290 (1944) ........................................................................................... 16
13
    Zippertubing Co v Teleflex Inc,
14    757 F.2d 1401 (3rd Cir. 1985) ............................................................................... 10

15

16 |                              **Statutes**

17   17 U.S.C. § 504(b) ................................................................................. 6, 7, 9, 22

18   Cal. Civ. Code
       § 2223 ................................................................................................................ 11
       § 2224 ................................................................................................................ 11
19
20   Fed. R. Evid. 702, Advisory Committee Notes (2000 Amendments) ......................... 20

21 |                          **Other Authorities**

22   3 Witkin, California Procedure, § 174 ................................................................. 15, 16

23   David L. Faigman,
       Modern Scientific Evidence: The Law and Science of Expert Testimony,
24     § 43:16 (2007) ..................................................................................................... 20

25   H.R. Rep. No. 1476, 94th Cong., 2d Sess. 161 ......................................................... 7

26   Melville B. Nimmer & David Nimmer, Nimmer on Copyright (2008),
       § 14.03[B][2][a] ................................................................................................... 19
27     § 14.03[D][1] ....................................................................................................... 22

28   Notes of Committee on the Judiciary, House Report No. 94-1476 (1976 Act) ............ 7

MATTEL'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Defendants seek to exclude expert testimony establishing the phenomenal amount of profits they have received from their misconduct. Mattel's expert, Michael Wagner, will testify concerning the profits that MGA, Isaac Larian and Carter Bryant received from Bratz. Defendants' motion to exclude those opinions is based on fundamental misconceptions of the law, Mr. Wagner's analysis and Mattel's damages claims. It should be denied.

First, Wagner opines that Larian's profits consist of two components: (i) the cash distributions he received from MGA due to Bratz; and (ii) the increase in the value of his holdings in MGA due to Bratz. Larian seeks to exclude the second component, the increase in the value of his holdings, because it is allegedly "██████████ ██████████████████████." But the Copyright Act provides that Mattel is entitled to recover all of the profits of each infringer and the increase in the value of Larian's stock is certainly part of the profits he received. Moreover, defendants ignore that Mattel has claims for relief other than copyright infringement. In particular, Mattel has claims for several common law torts and for punitive damages based thereon. Accordingly, defendants' argument that their benefits are not recoverable under Mattel's copyright claim is not only wrong, but Mattel may recover those benefits under other claims as well.

Second, defendants attack Wagner's analysis because he does not apportion their profits between infringing and non-infringing products. However, the Copyright Act provides that Mattel's has the burden <u>only</u> to introduce evidence of defendants' "gross revenues;" it is defendants' burden to establish the proper apportionment.

Third, while Mattel seeks damages from each infringer, it is not "double-counting." Of course, each infringer's profits come from the same source -- MGA's revenues from sales of Bratz. But like many cases in which two or more defendants

1   violate the law, the defendants here are severally liable to Mattel. "Double counting"
2   in the copyright context involves recovery of both plaintiff's lost profits and
3   defendants' profits. Here, Mattel does not seek to recover damages measured by its
4   lost profits. Accordingly, the issue is not Mattel's "double counting," it is the
5   defendants' several liability. Each defendant is liable for its or his profits.

6          Fourth, defendants argue that Wagner did not account in his opinion for
7   the contingency of a permanent injunction if Mattel prevails. But damages are
8   calculated as of the time of the jury verdict. Whether a permanent injunction
9   subsequently will be granted, as well as the specific terms of an injunction, are
10  speculative. Indeed, Mattel may not obtain a permanent injunction even if it prevails
11  before the jury (defendants have asserted a slew of defenses to Mattel's request for
12  injunctive relief). Wagner's failure to consider speculative events that may or may
13  not occur after the jury has rendered a verdict does not render his testimony
14  inadmissible.

15         Wagner is a qualified, experienced expert who has used generally
16  accepted accounting and business valuation methods to calculate Larian's and
17  Bryant's profits relating to Bratz. Defendants may not like his conclusions and may
18  cross-examine Wagner concerning his opinions or present contrary opinions, but
19  Wagner's testimony is admissible. Therefore, defendants' motion should be denied.

20                          **Statement of Facts**
21  **Mattel's Claims Against Larian and Bryant**

22         Mattel has asserted a number of claims for relief against Larian and
23  Bryant, including claims against Bryant for breach of contract, breach of fiduciary
24  duty, breach of duty of loyalty, and conversion, and claims against Larian for
25  intentional interference with contract, aiding and abetting breach of fiduciary duty,
26  aiding and abetting breach of duty of loyalty, and declaratory relief. Mattel has
27  requested that Larian and Bryant be ordered to disgorge all profits and other benefits
28  derived or obtained as a result of the conduct alleged, as well as an award of punitive

1  damages.[1]  In addition, Mattel has requested an injunction enjoining further

2  infringement of Mattel's copyrights.[2]

3  **The Expert Report of Michael Wagner**

4        Mattel retained Michael Wagner to provide expert testimony regarding

5  MGA's, Larian's and Bryant's profits from the sale, distribution and licensing of Bratz

6  products.  Wagner is an expert in accounting and business valuation who is senior

7  consultant at CRA International, a firm that provides economic, financial, and

8  business management consulting services to law firms, accounting firms, businesses

9  and governments around the world.  Wagner has both J.D. and M.B.A. degrees and

10  has authored a number of publications in the area of business valuation and damages.

11  He has given expert testimony in more than 100 cases, including cases in which his

12  opinion on damages was based upon a business valuation or an analysis of

13  defendants' profits.[3]  Numerous courts have relied on his expert analysis.[4]

14        Wagner prepared an Expert Report.[5]  With respect to MGA, Wagner

15  determined that for the period from 2001 through October 2007, MGA received

16  revenue from Bratz of approximately $2.9 billion and incurred costs of approximately

17

18  [1]  Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, Prayer For Relief ¶¶ 9, 11, attached as Ex. 12 to the Declaration

19  of B. Dylan Proctor, dated April 14, 2008, lodged concurrently herewith ("Proctor

20  Dec.").

21  [2]  Id., Prayer For Relief ¶ 3.
[3]  Wagner Curriculum Vitae, attached as Ex. 75 to the Declaration of Tamar

22  Buchakjian, dated April 28, 2008 ("Buchakjian Dec.").

23  [4]  See e.g., Pioneer Hi-Bred Intern. v. Holden Foundation Seeds, Inc., 35 F.3d 1226, 1244 (8th Cir. 1994) (affirming district court's damages award, which was

24  based on Wagner's lost profits analysis); St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc., No. Civ.A. 03-241 JJF, 2004 WL 2213562, 2004 U.S. Dist.

25  LEXIS 19475 (D. Del. Sept. 28, 2004) (concluding Wagner's expert opinions using

26  the book of wisdom method to determine a reasonable royalty were reliable and admissible).

27  [5]  Expert Report of Michael J. Wagner, dated February 11, 2008 ("Wagner

28  Report"), attached as Ex. 56 to Proctor Dec.

1   $2.3 billion, resulting in net profits, after tax, of about $600 million.[6] Wagner's
2   opinion concerning MGA's direct profits from Bratz is not a subject of MGA's
3   motion.

4               With respect to Larian, Wagner concluded that there were two
5   components of profits from the sale, distribution and license of Bratz products:
6   (i) MGA's distributions to Larian as they relate to Bratz; and (ii) the value of Larian's
7   ownership of MGA as it relates to Bratz. Wagner determined that the amount of
8   MGA's distributions to Larian for Bratz (exclusive of MGA's distributions for tax
9   payments on Larian's share of MGA's profits) is $250,478,098. Defendants do not
10  challenge the calculation of Larian's profits from these cash distributions.

11              As to Larian's profits from his ownership interest in MGA, Wagner first
12  showed that Larian and his wife (personally and through certain family trusts)
13  beneficially own 81.82% of MGA's stock.[7] Wagner then determined the Bratz
14  contribution to the fair value of that stock.[8] He used three generally accepted
15  approaches to determine that fair value, an income approach and two market
16  approaches.

17              The income approach involves a discounted cash flow analysis. Based
18  on MGA's historical and projected financial statements,[9] Wagner calculated MGA's
19  expected future cash flow from the sale of Bratz products for 2008 through 2010 and
20  a terminal value at the end of 2010.[10] He then valued the cash flow as of the date of

21

22
23      [6]   Id., at 2, 11.
        [7]   Id., at 5-6, 11.
24      [8]   "Fair value" is "the price at which an asset could be exchanged in a current
        transaction between knowledgeable, unrelated willing parties." Id., at 1
25      [9]   Wagner reviewed the historical and projected sales growth for other companies
26  in the toy industry to ensure that MGA's forecasts were reasonable. Id., at 13.
        [10]  The "terminal value" is the value of MGA's cash flows as a result of Bratz
27  revenues beyond 2010 and is determined by capitalizing Bratz's 2010 cash flow. See
28  id., at 15.

1  the valuation by applying a discount rate of 11%.  Wagner calculated an enterprise

2  value for Bratz using this discounted cash flow analysis in the amount of

3  $753,627,120.[11]

4        The first market approach employed to value Bratz, the "comparable

5  trading company" analysis, used multiples derived from trading activity of publicly

6  held companies that most closely resemble MGA.  For each of the companies,

7  Wagner derived multiples of enterprise value to revenues and earnings, and applied

8  the median of the multiples to corresponding revenues and earnings data for the Bratz

9  products.[12]  The resulting value is the fair market value of a minority interest;

10  accordingly, Wagner applied a "control premium" and thereby calculated an

11  enterprise value of $1,504,025.[13]

12        The second market approach, the "comparable transactions" analysis,

13  used publicly available information on M&A transactions where the target company

14  closely resembles MGA.  Wagner used the same comparable companies that MGA

15  used in its own company valuations.[14]  Wagner then derived multiples of the

16  acquisition prices to revenues and earnings and applied them to MGA's revenues and

17  earnings for Bratz.  Using this comparable transactions analysis, Wagner calculated

18  an enterprise value for Bratz of $1,166,120.[15]

19        Wagner then weighted the three approaches, giving the most weight to

20  the income approach (which had the lowest value) and calculated a valuation for the

21  enterprise value of Bratz of $945,000,000 and a value for Larian's 81.82% of

---

23  [11]  Id., at 16.

24  [12]  Wagner notes that he has seen a number of documents produced by MGA that

25  use a multiples approach to value MGA and various acquisition targets.  Id., at 16.

  [13]  Id., at 17-18.

26  [14]  See MGA Toy Industry Comparable Company Analysis, in which MGA

27  compares itself to Mattel and Hasbro (MGA0236491-504, attached as Ex. 74 to

Buchakjian Dec.).

28  [15]  Wagner Report, at 18-20, attached as Ex. 56 to Proctor Dec.

-5-

1  $773,199,000.[16]  Significantly, Wagner also analyzed a 2007 list of Larian's assets

2  which valued Larian's share of MGA at $1,636,380,000.  Wagner separated that value

3  into Bratz and non-Bratz components based on the gross revenues of MGA, and

4  calculated a value for Bratz of $1,100,000,000, which is substantially higher than the

5  value Wagner had derived of $945,000,000.  Thus, although defendants write that

6  Wagner "          " his valuation, his valuation is over $150 million <u>less</u> than

7  Larian's own valuation.[17]

8         Finally, with respect to Bryant, Wagner's analysis of profits earned from

9  Bratz is based on the compensation Bryant received under his consulting agreement

10  with MGA.  Wagner calculated the total amount of the payments Bryant received

11  from MGA between 2000 through the fourth quarter of 2007 that are attributable to

12  Bryant's work on Bratz to be $35,825,449.[18]

13

14                              **Argument**

15  I.    **MATTEL MAY RECOVER DEFENDANTS' PROFITS, INCLUDING**

16        **THE ENTERPRISE VALUE OF BRATZ**

17        A.    **Copyright Infringement**

18         In a copyright infringement action, the copyright owner is entitled to

19  recover "any profits of the infringer that are attributable to the infringement."

20  17 U.S.C. § 504(b).  "The purpose of allowing the recovery of profits "is to make the

21

22  ─────────────────

23  [16]  <u>Id.</u>, at 12.  Defendants' motion in limine falsely asserts that Mattel "seeks
    nearly $1 billion in future damages" from Larian by quantifying the future value of

24  the Bratz product line to Larian.  Defendants' Motion in Limine No. 7 to Exclude
    References to and Use of Certain Expert Testimony Proffered by Mattel Witness

25  Michael J. Wagner ("Motion"), at 1.  In fact, Wagner simply calculates the value of

26  Larian's ownership interest in MGA that is attributable to Bratz and values it at
    $773,199,000.

27  [17]  <u>See</u> Wagner Report, at 12-13, attached as Ex. 56 to Proctor Dec.

28  [18]  <u>Id.</u>, at 21.

1   infringement worthless to the infringer." Bucklew v. Hawkins, Ash, Baptie & Co.,
2   329 F.3d 923, 933 (7th Cir. 2003) (emphasis added). Thus, profits are awarded to
3   prevent infringers from benefiting in any way from their acts. "According to
4   H.R. Rep. No. 1476, 94th Cong., 2d Sess. 161, the 1976 Act was passed in order to
5   reimburse copyright owners for losses, *and* to disgorge infringers of any benefit
6   derived from their infringement." Kleier Advertising Co., Inc. v. James Miller
7   Chevrolet, Inc., 722 F. Supp. 1544, 1545 (N.D. Ill. 1989) (original italics; underline
8   added)[19]. See also U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc.,
9   781 F. Supp. 412, 413 (M.D.N.C. 1991) (recovery of profits "designed to ensure that
10  infringers are not able to retain some benefit").

11          Although defendants suggest that profits in this context are limited to
12  monetary payments from the sale, distribution, and licensing of copyrighted works,
13  they cite no authority to support that notion. In fact, the Copyright Act covers "any
14  profits" and infringers must disgorge "any benefit" from the infringement. Bucklew,
15  329 F.3d at 933; Kleir, 722 F. Supp. at 1545. Logically and legally, profits and
16  benefits may include an increase in the value of property, the value of the use of the
17  copyrighted work to the infringer,[20] and even an increase in good will: "an increase in
18  defendants' good will resulting from their infringement may be considered a 'profit'
19  for which the plaintiff is entitled to damages under Section 504(b)." Softel, Inc. v.
20  Dragon Medical and Scientific Communications, Ltd., 891 F. Supp. 935, 942

21

22  _____

23  [19]  Notes of Committee on the Judiciary, House Report No. 94-1476 (1976 Act)
      ("profits are awarded to prevent the infringer from unfairly benefiting from a
24  wrongful act").
      [20]  Jarvis v. A & M Records, 827 F. Supp. 282, 295-296 (D.N.J., 1993) ("The
25  Copyright Act provides that the defendants are entitled to prove that certain elements
26  of the profits are 'attributable to factors other than the copyrighted work.' 17 U.S.C.
      § 504(b). The infringer bears the burden of proving the existence of these other
27  elements. The method of apportionment must be fair in that it must clearly take into
28  account the value to the infringer of the plaintiff's work . . .") (emphasis added).

-7-

1  (S.D.N.Y. 1995); see also Business Trends Analysts, Inc. v. Freedonia Group, Inc.,

2  887 F.2d 399, 404 (2d Cir. 1989) (enhanced good will and market recognition may be

3  treated as profit); Computer Associates Intern., Inc. v. Altai, Inc., 775 F. Supp. 544,

4  570 (E.D.N.Y. 1991) (proper measure of value of infringer's enhanced good will is

5  the difference between preinfringement value and postinfringement value).

6        Thus, Mattel is entitled to recover, and defendants must disgorge, all of

7  defendants' profits and benefits from the copyright infringement.  Nevertheless,

8  defendants argue that Mattel may not recover Larian's percentage of the enterprise

9  value of Bratz because it is allegedly an "████████████████████" that has not

10  been "██████" by the defendants, citing Frank Music Corp. v. Metro-Goldwyn-

11  Mayer, Inc., 886 F.2d 1545 (9th Cir. 1989) ("Frank Music II").  But that is not what

12  Frank Music II holds.

13        In Frank Music, the defendants used several of plaintiffs' copyrighted

14  songs in a musical revue staged at the MGM Grand Hotel.  The district court awarded

15  plaintiffs a portion of the profits from the revue, but it declined to award any portion

16  of MGM Grand Hotel's earnings on hotel and gaming operations as profits.  In its first

17  opinion in the case, the Ninth Circuit reversed, holding that the "indirect profits from

18  the hotel and gaming operations, as well as direct profits from the show itself, are

19  recoverable if ascertainable."  Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,

20  772 F.2d 505, 517 (9th Cir. 1985) ("Frank Music I") (emphasis added).

21        On remand, the district court awarded the plaintiffs a portion of MGM

22  Grand's hotel and gaming profits.  The Ninth Circuit affirmed that part of the

23  judgment.  Frank Music II, 886 F.2d at 1550.  However, plaintiffs also sought profits

24  from MGM Grand's parent company, MGM, Inc., on the theory that there was a rise

25  in the parent's stock value attributable, in part, to the success of the revue staged at its

26  subsidiary.  The Ninth Circuit did not find, as defendants suggest, that a plaintiff may

27  not recover profits in the form of an increased value of stock; in fact, it specifically

28  referred to the increased value of MGM's stock as "profits."  Id., at 1554.  Rather, it

1   simply held that, on the facts of the case, "the relationship between such profits [the

2   increased value of the parent company stock] and the infringement [in a review

3   staged by a subsidiary] [was] too attenuated to justify the award of additional

4   damages based on any profits received by MGM, Inc." Id.

5          Similarly, defendants rely on <u>Business Trends Analysts, Inc. v.</u>

6   <u>Freedonia Group, Inc.</u>, 887 F.2d 399 (2d Cir. 1989), for the proposition that the court

7   rejected a claim for the infringer's benefits of good will and market recognition.  But

8   the Second Circuit did <u>not</u> hold that good will and market recognition are not

9   recoverable as profits under the Copyright Act; to the contrary, it held:

10              The parties have sacrificed some trees and much ink over the
                issue of whether enhanced good will and market recognition
11              may be treated as a profit under Section 504(b).  The
                gravamen of [defendant's] argument is that such an award is
12              impermissible because it is always nonquantifiable.
                However, <u>we see no legal barrier to such an award</u> under
13              <u>Section 504(b)</u> so long as the amount of the award is based
                on a factual basis rather than "undue speculation."

14
    <u>Id.</u>, at 404 (emphasis added).
15
           Defendants claim that <u>Roy Expert Co. v. Columbia Broadcasting</u>
16
    <u>Systems, Inc.</u>, 503 F. Supp. 1137 (S.D.N.Y. 1980) supports their position that
17
    increased good will is an intangible benefit that cannot be measured, and therefore
18
    cannot be awarded.  In fact, the court merely stated that an award of statutory
19
    damages was appropriate because it could not ascertain the value of CBS's profits
20
    from its infringement because it included increased audience viewership, goodwill
21
    with affiliates, and prestige with competitors. <u>Id.</u>, at 1156-1157.
22
           The recoverable "profits" under the Copyright Act that Mattel seeks to
23
    measure is not appreciation in the value of affiliates; rather, it is the increase in the
24
    enterprise value of MGA (and the resulting increase in the value of Larian's interest in
25
    MGA) attributable to sales of infringing Bratz dolls.  Like the increase in stock price
26

27

28

1   in <u>Frank Music</u> and goodwill in <u>Softel</u> and <u>Business Trends</u>, this is a form of profit.[21]

2   The issue is whether Wagner's analysis of that value is so speculative as to be

3   inadmissible. As demonstrated in Section II below, Wagner's analysis is not

4   speculative.

5          **B.**    **California State Law Claims**

6          Mattel is also entitled to recover the benefits received by Larian and

7   Bryant from their conduct under its common law claims. A variety of damages are

8   available for each of these causes of action, including restitution. "The purpose of

9   restitution is . . . to deny the fraudulent party any benefits, whether or not for seeable,

10  which derive from his wrongful act. Thus, where a person with knowledge of the

11  facts wrongfully disposes of or acquires property of another and makes a profit

12  thereby he is accountable for those profits." <u>Nelson v. Serwold</u>, 687 F.2d 278, 281

13  (9th Cir. 1982) (citations omitted).

14         Furthermore, under California law, "disgorgement of improperly

15  obtained profits is a remedy for breach of a contract protecting trade secrets and

16  proprietary confidential information," such as Bryant's agreement. <u>Foster Poultry</u>

17  <u>Farms, Inc. v. Suntrust Bank</u>, Slip Copy, 2008 WL 160960, *49-50 (E.D. Cal. 2008);

18  <u>Ajaxo, Inc. v. E'Trade Group, Inc.</u>, 135 Cal. App. 4th 21, 56-57 (2005).

19  Disgorgement of profits is also available for interference with prospective economic

20  advantage. <u>See</u> <u>Zippertubing Co v Teleflex Inc</u>, 757 F.2d 1401, 1412 (3rd Cir. 1985)

21  (where amount of defendant's profit as a result of interference was greater than

22  plaintiff's expected benefit from the contract, plaintiff was entitled to recover an

23  amount equal to the defendant's profits plus interest, rather than the plaintiff's original

24  expectancy, to prevent defendant from profiting from wrongful conduct).

25  _____

26    [21] Defendants pejoratively refer to the enterprise value of Bratz as a "█████

27  ████" However, it cannot seriously be questioned that Bratz adds value to MGA
    and, therefore, to Larian by virtue of his ownership interest in the company. There is

28  nothing "hypothetical" about it. The only question is the amount of that value.

-10-

1   Under its aiding and abetting breach of fiduciary duty and duty of
2   loyalty claims, Mattel may seek a constructive trust on all amounts defendants have
3   obtained from their wrongdoing to prevent unjust enrichment.  Cal. Civ. Code
4   §§ 2223, 2224; BGJ Associates v. Superior Court, 75 Cal. App. 4th 952, 967 (1999)
5   (imposing constructive trust for breach of fiduciary duty); Interactive Multimedia
6   Artists, Inc. v. Superior Court, 62 Cal. App. 4th 1546, 1553 (1998); Warren v.
7   Merrill, 143 Cal. App. 4th 96, 113 (2006) ("'A constructive trust may be imposed
8   when a party has acquired property to which he is not justly entitled, if it was
9   obtained by . . . constructive fraud through the violation of some fiduciary or
10  confidential relationship'") (quoting Mazzera v. Wolf, 30 Cal. 2d 531, 535 (1947)).

11  Furthermore, Mattel has claims for punitive damages against Larian and
12  Bryant under various common law claims.  Their benefits from Bratz, whether
13  copyright "profits" or not, are integral to the calculation of their respective net worths.
14  And the defendants' net worths are the basis for any punitive damages claim.[22]  See
15  Cummings Medical Corp. v. Occupational Medical Corporation of America, Inc.,
16  10 Cal. App. 4th 1291, 1299-1300 (1992) (defendants profits are "appropriate" as
17  basis for punitive damages); Vossler v. Richards Mfg.Co., Inc., 143 Cal. App. 3d 952,
18  967-968 (1983) ("Net, not gross, figures are the best yardstick to be used in
19  determining punitive damages. . . . Evidence of gross sales figures are relevant, even
20  if entitled to less weight than net profit.").

21  Defendants elected not to discuss any of these claims or remedies in
22  their moving papers and should not be permitted to sandbag Mattel by raising
23  arguments about them in their reply.  See Gold v. Wolpert, 876 F.2d 1327, 1331 n.6
24  (7th Cir. 1989) ("It is well settled that new arguments cannot be made for the first
25  time in reply.  This goes for new facts too.").

26

27  [22]  Wagner refers in his report to evidence of the net worth of both Larian and
28  Bryant.  Wagner Report, at 23, attached as Ex. 56 to Proctor Dec.

1  **II.    WAGNER'S ENTERPRISE VALUE ANALYSIS IS NOT SPECULATIVE**

2          Defendants argue that Wagner's opinions as to the enterprise value of

3  Bratz are speculative, relying on authorities stating that expert testimony may be

4  rejected as speculative where there is "no rational basis" for the opinion.  Wagner's

5  opinions, however, are based on accepted accounting and business valuation methods

6  and unquestioned research, analysis and calculations.  In fact, defendants' attack is

7  limited to two narrow arguments, neither of which is based on the law or the

8  evidence.

9          Initially, it is important to establish what defendants do not question in

10  their motion.  Defendants do not take issue with Wagner's valuation of the historical

11  revenues generated by the infringing Bratz products, only his calculation of the

12  enterprise value of Bratz.  Defendants do not criticize Wagner's use of the three

13  approaches to determine the fair value of the Bratz enterprise or suggest that there is

14  any other approach that is more commonly used or accepted to value a business or an

15  aspect of a business.  Nor can they reasonably -- numerous courts have expressly

16  approved of the use of these approaches.[23]

17

18  [23]  See e.g., Okerlund v. U.S., 365 F.3d 1044, 1048-1050 (Fed. Cir. 2004) ("The
19  Income Approach stems from the well-accepted proposition that the value of a
    corporation is given by a risk-adjusted discounted cash flow analysis of its future
20  profit streams.") (affirming the Court of Federal Claims use of "Market Approach"
    and "Income Approach" as appropriate standards for valuation); In re PWS Holding
21  Corp., 228 F.3d 224, 233-234, 241 (3rd Cir. 2000) (upholding District's reliance on
    expert's business enterprise evaluation based on three separate analyses: a comparable
22  public company analysis, a comparable acquisitions analysis, and a discounted cash
    flow analysis); U.S. v. Eden Memorial Park Ass'n, 350 F.2d 933, 935 (9th Cir. 1965)
23  (finding the district court properly admitted evidence using the "income approach" or
    "capitalization of projected income" to establish the value of the property taken);
24  Caracci v. C.I.R., 456 F.3d 444, 451 (5th Cir. 2006) ("A market approach tries to
    establish the market value of a company, usually by comparing sales or transfers of
25  similar companies."); In re Iridium Operating LLC, 373 B.R. 283, 344 (S.D.N.Y.
26  2007) ("Courts generally look at a combination of valuation methodologies to
    determine valuation, including:  (a) actual sale price, (b) discounted cash flow
27  method, commonly referred to as DCF, (c) adjusted balance sheet method, (d) market
    multiple approach, (e) comparable transactions analysis, and (f) market
28  capitalization").

-12-

1          With respect to the income approach, defendants do not question

2   Wagner's use of the financial statements, his application of a discount rate or his

3   calculations.  With respect to the comparable trading company analysis, defendants

4   do not critique Wagner's determination of the companies that resemble MGA, his

5   derivation of multiples of enterprise value to revenues and earnings, his application of

6   the multiples to corresponding revenues and earnings data for the Bratz products or

7   his use of a "control premium."  With respect to the comparable transactions analysis,

8   defendants do not fault Wagner's determination of which target companies resemble

9   MGA, his derivation of multiples of acquisition prices to revenues and earnings or his

10  application of those multiples to MGA.  Defendants do not cite any flaw in Wagner's

11  weighting of the three approaches or his calculation of value based thereon.

12         Defendants also do not challenge Wagner's calculation of Larian's profits

13  from the cash distributions he received from MGA for Bratz.  Thus, in short, both

14  Wagner's methodology and his calculations are unquestioned.[24]

15         Defendants' first attack on Wagner's valuation is that it does not account

16  for the possibility that MGA may be enjoined from selling Bratz products or that it

17  may be forced to pay Mattel a royalty.  They point out that Mattel's counterclaim

18  indicates that Mattel "███████" to enjoin MGA and its discovery responses "█████

19  ██████████████████████████████████████████████████."[25]  From this,

20  defendants conclude that if there is <u>any</u> finding of liability, the value of Larian's

21

22

23

---

24     [24]  Defendants do not even mention Wagner's use of Larian's own list of assets

25  with its valuation for Bratz that is substantially higher than Wagner's valuation.
Based on value Larian attaches to his share of MGA, the implied value of his interest

26  in Bratz is $1,100,000, whereas Wagner only values his interest in Bratz at
$931,000,000.  <u>See</u> Isaac and Angela Larian List of Assets, 2007 (MGA3787279),

27  attached as Ex. 73 to Buchakjian Dec.; Wagner Report, at 12-13, attached as Ex. 56
to Proctor Dec.

28     [25]  Motion, at 12:13-19 (emphasis added).

-13-

MATTEL'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 7

1  interest in Bratz future cash flows becomes "█" or "██████████" and

2  Wagner's valuation, therefore, has no rational basis.[26]

3       However, because the jury will decide the amount of "profits"

4  wrongfully earned by defendants, the amount of profits is measured at the time of the

5  jury verdict.[27] Defendants urge that Wagner should have factored into the current

6  value of Bratz an injunction that has not occurred -- and which may not occur.

7  Although Mattel may seek a permanent injunction, it cannot be assumed that the

8  Court will grant such an injunction or, if granted, what its terms will be. In fact,

9  defendants have raised 16 defenses to the entry of an injunction.[28] Moreover, as the

10  Supreme Court stated in eBay Inc v. MercExchange, L.L.C., 547 U.S. 388, 392-393

11  (2006), "this Court has consistently rejected invitations to replace traditional

12  equitable considerations with a rule that an injunction automatically follows a

13  determination that a copyright has been infringed." Based on the challenges Mattel

14  faces in obtaining an injunction, such a future event is too conjectural for Wagner to

15  consider.

16       Furthermore, Defendants concerns with Wagner's failure to factor in the

17  effect of an injunction on MGA ignores the fact that, if Mattel's requested remedies

18  conflict with one another, Mattel may elect its remedy at the appropriate time. See

19  3 Witkin, California Procedure, § 174 ("at some time before judgment he may be

20  _____

21  [26] Id., at 13.
    [27] The relevant time for determining the value of a company is at the time the case

22  is given to the jury for decision. For example, when a jury awards substantial
compensatory damages against defendant and finds that it has acted with malice,

23  oppression or fraud, the value of defendant's net worth at that moment is less than it
was before the verdict. Yet, an expert's testimony as to a defendant's net worth is not

24  speculative or inadmissible simply because he or she does not factor in the amount of
compensatory damages or the effect of those damages on the company's net worth

25  (which is unknown at the time of the expert's analysis). Likewise, there is no reason
to exclude Mr. Wagner's testimony because he does not factor in the possibility of an

26  injunction.
    [28] MGA Entertainment, Inc.'s Supplemental Responses to Mattel Inc.'s Revised

27  Third Set of Interrogatories, dated November 30, 2007, Response to Interrogatory

28  No. 32, at 32-34, attached as Ex. 76 to the Buchakjian Dec.

-14-

MATTEL'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 7

1  required to elect one or another remedy"), § 370 ("the doctrine of election of remedies
2  applies only where more than one remedy is sought and the remedies are mutually
3  exclusive").

4         Moreover, even if Mattel were to lose on copyright infringement, and no
5  injunction were granted, Wagner's opinions are still relevant to Mattel's non-federal
6  law claims, its requests that Larian and Bryant be required to return all benefits they
7  have received from their wrongful conduct and its claims for punitive damages.
8  Those issues are for the jury to decide.  While the court may determine Mattel's
9  entitlement to an injunction at a different time, Mattel has no doubt that the court will
10 not permit an unjust result to occur by awarding Mattel conflicting or duplicative
11 remedies.

12        Defendants' only other attack is that Wagner projects an average 2%
13 growth in Bratz sales over the term of his projected cash flow.  Defendants assert that
14 consumer preferences are sometimes unpredictable and some industry analysis expect
15 a 3% decline in the overall toy industry over the next five years.  Defendants then
16 argue that Wagner projects that Bratz will be "▮▮▮▮▮▮" to trends and shifts in
17 consumer demand and is, therefore, speculative.  Of course, that is not true.  Wagner's
18 projection of 2% annual growth is an average over a period of time, not an absolute
19 fixed annual increase that is "▮▮▮▮▮" to market trends.

20        Wagner derived the 2% average growth by looking at what analysts are
21 estimating for other companies that are most comparable to MGA.  In fact, these
22 analysts project significantly higher growth rates, but Wagner used more conservative
23 numbers.[29]  He testified that this approach is more appropriate than looking at an
24 overall industry projection because he is measuring comparable companies that have
25 similar characteristics to MGA rather than an industry average that includes

26

27 [29]  Deposition of Michael J. Wagner ("Wagner Depo."), dated March 21, 2008, at
28 134:20-135:6, attached as Ex. 23 to the Declaration of Stephen Hauss ("Hauss Dec.").

1 dissimilar unsuccessful companies as well as successful companies.[30]  In fact,

2 Wagner factored in MGA's decline in cash flow for the first ten months of 2007, and

3 projected growth at an inflation rate from that low point (which actually is no real

4 growth at all).[31]

5         Accordingly, there is a "rational basis" for Wagner's opinion.

6 Defendants may disagree and present a different opinion from one of its experts, but

7 their criticisms go to the weight of the testimony rather than admissibility.

8 Defendants may be able to cross-examine Wagner on these issues, but this is no

9 reason to exclude his testimony.  See Olin Corp. v. Certain Underwriters at Lloyd's

10 London, 468 F.3d 120, 134 (2d Cir. 2006) (weaknesses in testimony went to weight

11 rather than admissibility and could be tested on cross-examination); Stutzman v.

12 CRST, Inc., 997 F.2d 291, 296 (7th Cir. 1993) (lack of absolute certainty regarding

13 expert opinion goes to weight, not admissibility).

14         Finally, it is important to note that "some degree of speculation is

15 permissible in computing damages, because reasonable doubts as to remedy ought to

16 be resolved against the wrongdoer."  MindGames, Inc. v. Western Pub. Co., 218 F.3d

17 652, 658 (7th Cir. 2000).  "Any doubt as to the computation of costs or profits is to be

18 resolved in favor of the plaintiff."  Frank Music, 772 F.2d at 514; Zinn v. Ex-Cell-O

19 Corp., 24 Cal. 2d 290, 297-298 (1944) ("One whose wrongful conduct has rendered

20 difficult the ascertainment of the damages cannot escape liability because the

21 damages could not be measured with exactness").

22         Thus, although the enterprise value of Bratz cannot be calculated with

23 absolute certainty, absolute certainty is not the standard.  Wagner's opinion has a

24 rational basis and is therefore admissible.

25

26

27   [30] Id., at 141:16-142:4.

28   [31] Id., at 135:7-20.

1    **III.    MATTEL IS NOT DOUBLE COUNTING ITS DAMAGES**

2              Wagner has calculated each defendant's profits, but does not express an

3    opinion concerning what Mattel should recover from any of them.  Mattel does not

4    seek any double recovery; rather, it seeks several liability against each defendant

5    found to have infringed its copyrights or otherwise violated its rights.

6              A copyright owner is entitled to recover its actual damages plus any

7    profits of the infringer that were not taken into account in computing its actual

8    damages for copyright infringement.  Spectravest, Inc. v. Mervyn's Inc., 673 F. Supp.

9    1486, 1492 (N.D.Cal. 1987).  There is no double counting so long as the profits are

10   not duplicative of the copyright owner's actual damages.  Deltak, Inc. v. Advanced/

11   Systems, Inc., 767 F.2d 357, 363 (7th Cir. 1985) (copyright owner is not allowed to

12   recover its own lost sales and the infringer's profits that result in double-counting of

13   the same economic transaction); Robert R. Jones Associates, Inc. v. Nino Homes,

14   858 F.2d 274, 281 (6th Cir. 1988).  Here, Mattel does not seek actual damages for its

15   own lost sales or profits; it seeks only the recovery of the defendants' profits.

16   Therefore, there is no "double counting."

17             The real issue Larian and Bryant are concerned with is several liability.

18   "When a copyright is infringed, . . . each defendant is severally liable for his or its

19   own illegal profit. . . . "  Frank Music, 772 F.2d at 519; MCA, Inc. v. Wilson,

20   677 F.2d 180, 186 (2d Cir. 1981) (in copyright infringement action, "[i]nsofar as

21   there is liability for illegal profit, the liability is several"); see Cream Records, Inc. v.

22   Jos. Schlitz Brewing Co., 754 F.2d 826, 829 (9th Cir. 1985) (where brewing company

23   and advertising agency both benefited from unlawful use of plaintiff's copyrighted

24   music, damages award against brewery is not sufficient to prevent unjust enrichment

25   of advertising agency; the district court must assess a separate award of damages

26   against the advertising agency by making a reasonable approximation of the portion

27   of the agency's profits due to the use of the infringing music).

28

MATTEL'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 7

Each of MGA, MGA Hong Kong, Larian and Bryant may be found to be severally liable to Mattel. As in many cases with multiple defendants, Mattel is entitled to a judgment against each defendant for the full amount of its or his liability, so that it can collect the full amount it is due. Of course, that does not mean that it will collect more than it is due in total. For example, it is possible that only one of these defendants will be found liable. Mattel is entitled to present to the jury the appropriate amount of each defendant's liability so that it can obtain appropriate relief even if it only obtains a judgment against one of them. If Larian and Bryant's earnings for Bratz were paid by MGA out of its profits from Bratz, MGA may seek to establish that the amounts paid to Larian and Bryant should be deducted as costs from the total profits it has earned attributable to Bratz.

Mattel also should be allowed to collect a judgment against any of the wrongdoers that have the resources to pay the judgment. If MGA is not able to pay the judgment because it has distributed over $460 million to its shareholders through the end of 2006,[32] Mattel may need to collect the judgment from Larian who has beneficial ownership of over 82% of MGA. Wagner simply analyses the profits for which each defendant may be liable. There is nothing improper in presenting that evidence to the jury.

## IV. MATTEL IS ENTITLED TO ALL PROFITS GAINED FROM DEFENDANTS' WRONGDOING, INCLUDING PROFITS FROM THE SALE OF NON-INFRINGING BRATZ GOODS

A copyright owner may recover infringers' "indirect profits" as well as "direct profits" attributable to copyright infringement. See Frank Music I, supra. "Indirect profits" are those realized from the sale of non-infringing products. See Melville B. Nimmer & David Nimmer, Nimmer on Copyright ("Nimmer") §14.03[B][2][a] (2008). In Andreas v. Volkswagen of America, Inc., 336 F.3d 789

---

[32] Wagner Report, Tab B2, Schedule 6, attached as Ex. 72 to Buchakjian Dec.

-18-

1   (8th Cir. 2003), the Court explained that for both direct and indirect profits, "[t]he

2   infringer's profits are awarded to the copyright holder to prevent the infringer from

3   unfairly benefiting from a wrongful act." Id., at 795-96 (internal citations and

4   quotation marks omitted).

5           The law does not require Mattel to look at each Bratz-related product

6   sold to identify which bears infringing images and only disgorge the profits from the

7   sale of those products, leaving defendants to enjoy the fruits of the sale of products

8   that would not have sold but for the sale of the infringing dolls. See Mackie v.

9   Rieser, 296 F.3d 909, 914 (9th Cir.2002) ("On its face, § 504(b) does not differentiate

10  between 'direct profits' . . . and 'indirect profits'"), cert. denied, 537 U.S. 1189

11  (2003). Mattel is only required to establish a "causal nexus" between infringement

12  and the indirect profits, i.e. that the infringement "partially caused" the sale of non-

13  infringing products. Id., at 911. Defendants then have the burden of proving

14  apportionment. See Section VI, infra.

15          Significantly, the causal nexus is established by MGA's own experts.

16  MGA's damages expert, Paul Meyer, testified that without the sale of Bratz dolls,

17  MGA would not sell Bratz fashions or accessories.[33] Moreover, another MGA

18  expert, Erich Joachimsthaler, testified that the sale of Bratz-related products

19  strengthens the Bratz brand and interest in the dolls themselves -- increasing the

20  profits from infringing and non-infringing works.[34]

21

22  _____

23  [33] Deposition of Paul Meyer, dated March 31, 2008, at 231:2-17, attached as
    Ex. 18 to the Hauss Dec.
24  [34] See Expert Report of Dr. Erich Joachimsthaler, dated February 11, 2008, at 14,
    ¶¶ 27-28, attached as Ex. 22 to Proctor Dec.

25

26

27

28

    (footnote continued)

1             Nevertheless, MGA argues that Wagner's testimony should be excluded

2   because he does not personally establish the causal connection between the

3   infringement and the indirect profits but, instead, relies on another Mattel expert,

4   Carol Scott, whose testimony is subject to another MGA motion in limine.  In cases

5   where the "question of the causal link is not subject to economic or financial expertise

6   and analysis, . . . the link between the allegedly unlawful conduct of the defendant

7   and economic harm to the plaintiff can be appropriately assumed by the economist or

8   financial analyst calculating damages."  David L. Faigman, Modern Scientific

9   Evidence: The Law and Science of Expert Testimony, § 43:16 (2007).  A damages

10   expert's testimony is not inadmissible simply because he assumes that causation has

11   been established by others.  See U.S. v. Cooper, 277 F.2d 857, 860 (5th Cir. 1960)

12   ("An expert witness may give his opinion based on assumptions stated by him.");

13   Pacific Gas & Electric Co. v. Zuckerman, 189 Cal. App. 3d 1113, 1135-1136 (1987)

14   (expert's conclusions have evidentiary value where based upon assumptions

15   supported by the record); Fed. R. Evid. 702, Advisory Committee Notes (2000

16   Amendments) (Rule 702 "requires that expert testimony be based on sufficient

17   underlying "facts or data." The term "data" is intended to encompass the reliable

18   opinions of other experts. . . .The language "facts or data" is broad enough to allow

19   an expert to rely on hypothetical facts that are supported by the evidence.").

20             Obviously, if Mattel cannot prove causation, it is not entitled to damages.

21   However, Mattel will present ample evidence of a causal nexus at trial from a variety

22   of sources.  For the reasons stated in opposition to that motion, Dr. Scott's testimony

23   regarding causation is admissible.  Moreover, the jury may find that but for the sale

24   of Bratz dolls, there would be no market for Bratz-related products based on logic,

25   experience, the results of MGA research evaluating what causes people to buy Bratz-

26

27   _____

28   ███████████████ ").

1  related products or MGA's own experts, Paul Meyer and Erich Joachimsthaler.

2  Therefore, Mr. Wagner's opinions regarding the amount of profits derived by Larian

3  and Bryant from the sale of these products are admissible.

4  **V.    MR. WAGNER'S OPINIONS REGARDING MR. LARIAN'S PROFITS**

5  **FROM BRATZ ARE RELEVANT BECAUSE MATTEL'S CLAIMS**

6  **AGAINST MR. LARIAN ARE NOT TIME-BARRED**

7         As discussed at length in Mattel's Opposition to Defendants' Motions for

8  Partial Summary Judgment,[35] the claims against Larian are not time-barred.  In any

9  event, this issue is not properly the subject of a motion in limine.  The Court will

10  decide whether Mattel's claims are time barred after a further hearing on the parties

11  motions for summary adjudication on May 19, 2008.[36]  Obviously, Mattel will not be

12  seeking to disgorge profits from Larian and Bryant if its claims against them are

13  dismissed.

14  **VI.   WAGNER'S TESTIMONY CONCERNING BRYANT'S PROFITS IS**

15  **ADMISSIBLE**

16         Wagner's testimony with respect to Bryant's profits is simple.  Bryant

17  was compensated by MGA for his work on Bratz products, which included his acts of

18  copyright infringement.  Bryant was paid pursuant to a consulting agreement with

19  MGA, which provided Bryant with a percentage of all Bratz-related income.  Wagner

20  calculated the amount of all payments made to Bryant by MGA from 2000 through

21  October 2007, totaling $35,825,449.[37]  Defendants assert that this testimony should

22  be excluded because Wagner does not distinguish between compensation to Bryant

23  _____

24  [35]  Mattel Inc.'s Opposition to the MGA Parties' and Carter Bryant's Motions for
    Partial Summary Judgment, dated March 24, 2008, at 21-51, attached as Ex. 77 to
25  Buchakjian Dec.

26  [36]  Order Granting in Part, Denying in Part, and Deferring in Part the Parties'
    Motions for Partial Summary Judgment (In Chambers), dated April 25, 2008 at 8,
27  attached as Ex. 78 to Buchakjian Dec.

28  [37]  Wagner Report, at 21, attached as Ex. 56 to Proctor Dec.

1 | for the Bratz concept and his original drawings, as opposed to compensation
2 | allegedly paid for his consulting work on Bratz.[38]  Defendants are wrong.

3 |       The Copyright Act expressly states that plaintiff "is required to present
4 | proof only of the infringer's gross revenue, and the infringer is required to prove his
5 | or her deductible expenses and the elements of profit attributable to factors other than
6 | the copyrighted work."  17 U.S.C. § 504(b).  All gross revenues are "presumed" to be
7 | profits attributable to the infringement, subject to the infringer proving costs and
8 | apportionment.  Data General Corp. v. Grumman Systems Support Corp., 36 F.3d
9 | 1147, 1173-1174 (1st Cir. 1994).  Accordingly, Bryant -- not Wagner -- has the
10 | burden of proving what portion of his compensation is not causally linked to his bad
11 | acts.  Id., 36 F.3d at 1171; Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,
12 | 592 F.2d 651 (2d Cir. 1978).  See also Nimmer, § 14.03[D][1] at 14-60.

13 |       Here, Bryant ignores that Mattel has sued him for both direct and
14 | contributory copyright infringement and for common law claims.  Bryant must
15 | restore all profits he earned from providing MGA with the original sketches and
16 | concept, and from his work in developing the concept.  To the extent that Bryant
17 | performed work for MGA for which he was compensated that did not relate to Bratz,
18 | he has the burden of establishing the amount of those non-Bratz earnings at trial.

19 |       Wagner's testimony is not made inadmissible because he does not satisfy
20 | Bryant's burden of proving apportionment.

---

[38] Motion, at 17-18.

07209/2486616.1

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court deny defendants' motion in limine no. 7.

DATED:  April 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _John B Quinn JR_

John B. Quinn
Attorneys for Mattel, Inc.