QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>           vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**NOTICE OF MOTION AND MOTION OF MATTEL, INC. FOR AN ORDER GRANTING "ADVERSE INFERENCE" JURY INSTRUCTION**<br><br>[Declaration of Christopher Tayback filed concurrently herewith]<br><br>Hearing Date: June 16, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1<br><br>**Phase I**<br>Pre-trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

07209/2475495.1

MOTION OF MATTEL, INC. FOR AN ORDER GRANTING "ADVERSE INFERENCE" JURY INSTRUCTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 16, 2008, at 10:00 a.m., or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Stephen G. Larson, located at Courtroom 1 of the above-entitled Court, 3470 Twelfth Street, Riverside, CA 92501, plaintiff and counterclaimant Mattel, Inc. will, and hereby does, move the Court for an Order granting an adverse inference jury instruction.

This Motion is made pursuant to the Court's inherent authority to issue an adverse inference jury instruction on the grounds that defendant Carter Bryant knowingly and willfully destroyed relevant evidence from his computers when he ran the "Evidence Eliminator" program, just days before one of those computers was imaged for purposes of this lawsuit. Such conduct amounts to spoliation of evidence, and more than justifies the jury instruction Mattel seeks.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Christopher Tayback filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

DATED: April 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Christopher Tayback
Christopher Tayback
Attorneys for Mattel, Inc.

**Statement of Local Rule 7-3 Compliance**

On April 25, 2008, Mattel notified counsel for Bryant that it intended to file this motion and offered to address the substance thereof. Mattel has filed concurrently an *ex parte* application for relief from the 20-day meet and confer requirement in the *Local Rules* and for an expedited hearing date on this motion of May 21, 2008, at 1:00 p.m.

DATED: April 28, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _____
Christopher Tayback
Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................. 2

I.   BRYANT INTENTIONALLY DESTROYED EVIDENCE ........................... 2

II.  MATTEL IS ENTITLED TO AN ADVERSE INFERENCE JURY INSTRUCTION .................................................................................................. 4

    A.   Bryant Had an Obligation to Preserve Evidence ................................. 5

    B.   Bryant Acted With a Culpable State of Mind ...................................... 7

    C.   The Destroyed Evidence Is Relevant ................................................... 8

III. MATTEL'S PROPOSED ADVERSE INFERENCE INSTRUCTION IS APPROPRIATE ........................................................................................... 10

CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

### Cases

Alexander v. Nat'l Farmers Org.,
   687 F.2d 1173 (8th Cir. 1982) ........................................................................... 9

In re Krause,
   267 B.R. at 769 ................................................................................................ 10

DirecTV, Inc. v. Borow,
   2005 WL. 43261 (N.D. Ill. Jan. 6, 2005) ........................................................... 9

Fujitsu Ltd. v. Fed. Express Corp.,
   247 F.3d 423 (2d Cir. 2001) ............................................................................... 5

Glover v. BIC Corp.,
   6 F.3d 1318 (9th Cir. 1993) ............................................................................... 4

Housing Rights Center v. Sterling,
   2005 WL. 3320739 (C.D. Cal. March 2, 2005) ............................................ 5, 7

In re Krause,
   367 B.R. 740 (D. Kan. 2007) .......................................................................... 2, 8

In re Napster, Inc. Copyright Litigation,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ............................................................. 6

Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,
   2003 WL. 21230605 (N.D. Ill. 2003) ............................................................ 2, 9

Leon v. IDX Sys. Corp.,
   464 F.3d 951 (9th Cir. 2006) ................................................................... 4, 7, 8, 9

Nejo v. Tamaroff Buick Honda Isuzu Nissan,
   2004 WL. 346036 (6th Cir. Feb. 23, 2004) ..................................................... 11

One Beacon Ins. Co.,
   2005 WL. 2077499 ......................................................................................... 11

Pace v. Nat'l Railroad Passenger Corp.,
   291 F. Supp. 2d 93 (D. Conn. 2003) ........................................................... 8, 11

Residential Funding Corp.,
   306 F.3d at 105 (internal citations and quotations omitted) ..................... 5, 7, 8

State of Idaho Potato Commission v. G & T Terminal Packaging, Inc.,
   425 F.3d 708 (9th Cir. 2005) ............................................................................. 5

World Courier v. Barone,
   2007 WL. 1119196 (N.D. Cal. April 16, 2007) ................................................ 4

Zubulake v. UBS Warburg LLC,
   220 F.R.D. 212 (S.D.N.Y. 2003).................................................................................... 7

**Statutes**

Federal Rule of Evidence 401 ........................................................................................... 8

## Preliminary Statement

On July 12, 2004 – months after Mattel filed this lawsuit and just two days before the contents of the laptop computer he had used to do Bratz-related work would be imaged for purposes of this lawsuit – Carter Bryant ran the "Evidence Eliminator" program that he had installed on his laptop computer. In so doing, Bryant knowingly deleted permanently from his laptop computer records of more than 9,400 file names and other data. Previously, he also knowingly deleted from his desktop computer – which he purchased the day after he left Mattel in October 2000 and used to do Bratz-related work – an unknown amount of information.

In light of Bryant's misconduct, Mattel has requested the Court to instruct the jury that "*if* [it finds] that relevant evidence that was within the defendants' control is missing or has been destroyed and that the evidence is missing because of the defendants' bad faith or negligent, unjustified or careless actions or inaction, [it] *may* infer that such evidence, if available now, would have been favorable to Mattel and adverse to the defendants."

In his Motion *in Limine* No. 13, Bryant urges that this "adverse inference" instruction is improper because Mattel has not previously sought, nor obtained, a judicial finding that Bryant has spoliated evidence and sanctions based on such conduct. Accordingly, in an abundance of caution, Mattel brings this motion to place Bryant's misconduct squarely before the Court and request the issuance of an instruction that allows the jury to evaluate whether Bryant wrongfully destroyed evidence that could have been favorable to Mattel. Given the nature of Bryant's misconduct, such instruction is more than justified.

## Argument

### I. BRYANT INTENTIONALLY DESTROYED EVIDENCE

Putting aside the "hard slogging" techno-speak Bryant repeatedly has tried to use to distract from the issue at hand, the simple, undisputed facts are that on July 12, 2004, two days before his attorneys were to image his computers for purposes of this lawsuit, Bryant ran the Evidence Eliminator program on his laptop computer to delete information from that computer, and he previously had used that program to delete information from both his laptop and a desktop computer.

The purpose of the Evidence Eliminator program is no mystery. Its manufacturer has described it as "data destruction technology," and it "touts its product as 'protection . . .' that will . . . delete or 'clean' computer hard drives of 'deadly evidence' that may have been deleted by the user, but still remain[s] embedded in the computer's memory.'" *See Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.*, 2003 WL 21230605, at *2 (N.D. Ill. 2003) (citing "www.evidence-eliminator.com" website).

Evidence Eliminator has given rise to spoliation claims before. The *Kucala Enterprises* court concluded that "[a]ny reasonable person can deduce, if not from the name of the product itself, then by reading the website, that Evidence Eliminator is a product used to circumvent discovery." *Id.* at *2 (holding use of Evidence Eliminator to "clean" a hard drive to be willful destruction of electronic evidence warranting sanctions); *see In re Krause*, 367 B.R. 740, 771 (D. Kan. 2007) (finding debtor's use of the "Ghostsurf" software, nominally an Internet security program but designed to wipe out and permanently eradicate files, violated his duty to preserve electronic evidence and constituted willful and intentional spoliation warranting sanction of entry of partial default judgment and contempt).

The pertinent facts regarding Bryant's use of Evidence Eliminator are clear and largely undisputed. Bryant acquired the laptop computer in 2001 and used it to do

Bratz-related work, including to send e-mails.[1] He installed Evidence Eliminator on his laptop computer in 2002.[2] He knows that Evidence Eliminator causes the deletion of data from his computers' hard drives.[3] Bryant ran Evidence Eliminator on his laptop on July 12, 2004.[4] By using Evidence Eliminator (on July 12, 2004 and at times before), Bryant overwrote at least 9,400 file names and/or folder names as well as an undetermined amount of data.[5] The information that Bryant overwrote cannot be recovered.[6]

Evidence Eliminator was also present on another of Bryant's computers, a desktop, though it is unknown precisely when and how much data was potentially overwritten on that drive. Bryant bought that computer on October 21, 2000, the day after he resigned from Mattel.[7] Bryant admits he installed Evidence Eliminator on that computer in 2002.[8] Bryant's own expert admits that Bryant may have run Evidence Eliminator on the desktop in 2002, before that drive was imaged.[9] Bryant, of course, knew in 2002, and before then, that Bratz was invented while he worked for Mattel and therefore that it was subject to his inventorship agreement with Mattel. Thus, Mattel will argue, Bryant had every reason to try to conceal evidence of the timing and

---

[1] *See* Declaration of Christopher Tayback in Support of Motion for Adverse Inference Jury Instruction ("Tayback Decl."), ¶ 2, Exh. 1 (Transcript of Deposition of Carter Bryant ("Bryant Tr."), Vol. 4, at 751:6-20, 753:3-5).
[2] *Id.* (Bryant Tr., Vol. 4, at 739:24-740:5, 741:6-9); *id.* at ¶ 3, Exh. 2 (Forensic Analysis Report of Mark J. Menz ("Menz Report"), No. 1, at 1); *id.* at ¶ 4, Exh. 3 (Transcript of Deposition of Gary Funck ("Funck Tr."), at 149:15-18).
[3] *Id.* at ¶ 2, Exh. 1 (Bryant Tr., Vol. 4, at 742:10-24).
[4] *Id.* at ¶ 3, Exh. 2 (Menz Report, No. 1 at 1, 13).
[5] *Id.* (Menz Report, Vol. 1, at 1, 13); *id.* at ¶ 9, Exh. 8 (Transcript of Deposition of Mark Menz ("Menz Tr."), at 28:4-14); *id.* at ¶ 4, Exh. 3 (Funck Tr., at 123:22-25, 134:4-8).
[6] *Id.* at ¶ 4, Exh. 3 (Funk Tr., at 136:21-24, 145:14-21, 148:1-9).
[7] *Id.* at ¶ 5, Exh. 4 (Bryant Tr., Vol. 1, at 246:3-5); *id.* at ¶ 6, Exh. 5 (Circuit City receipt showing Bryant's purchase of desktop computer).
[8] *See id.* at ¶ 7, Exh. 6 (Bryant Tr., Vol. 4 at 739:24-740:5, 741:6-9, 742:10-24).
[9] *See id* at ¶ 4, Exh. 3 (Funck Tr., at 93:18-22); *id.* at ¶ 2, Exh. 1 (Bryant Tr., Vol. 4 at 742:10-24).

circumstances of his invention of Bratz, even before Mattel filed this lawsuit. A forensic examination of Bryant's desktop computer also has revealed serious concerns regarding whether Bryant overwrote or deleted information from his desktop when he created a "new user registry" on that drive on or about April 28, 2004, just *one day* after Mattel filed this lawsuit.[10]

The evidence establishes that Bryant knew the purpose of Evidence Eliminator and knowingly engaged it to permanently delete file names and other information from his hard drives – to conceal that evidence – and, in the case of the laptop, he did so in the days before that computer was imaged for purposes of discovery in this lawsuit.

## II. MATTEL IS ENTITLED TO AN ADVERSE INFERENCE JURY INSTRUCTION

It is well-established that the "Court may issue [an adverse inference jury] instruction under its inherent authority." *World Courier v. Barone*, 2007 WL 1119196, at *1 (N.D. Cal. April 16, 2007); *Leon v. IDX Sys. Corp.*, 464 F. 3d 951, 958 (9th Cir. 2006) ("a district court can sanction a party who has despoiled evidence" pursuant to "the inherent power of federal courts to levy sanctions in response to abusive litigation practices"); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("trial court . . . has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior.").

District courts in California apply a three-part test formulated by the Second Circuit to evaluate whether a requested adverse inference instruction is

---

[10] *See id.* at ¶ 7, Exh. 6 (Menz Report, No. 2, at 1) (stating that creation of new user registry "is significant because it is in the registry that configuration data as well as information on mapped drives, attached USB thumb drives, installed software and automatic processes are stored. Creating a new USER registry file could overwrite the old file and effectively erase any prior data preventing recovery of that data.").

appropriate based on a claim of spoliation. *See World Courier*, 2007 WL 1119196, at *1 (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F. 3d 99, 105 (2d Cir. 2002)). Under that test, a party is entitled to an adverse inference instruction if it establishes "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F. 3d at 105 (internal citations and quotations omitted).

Each of the required elements is met, and Mattel is entitled to the adverse inference instruction it seeks.

### A. Bryant Had an Obligation to Preserve Evidence

A party is obligated to preserve evidence when the party "has notice that the evidence is relevant to litigation" or when it "should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *State of Idaho Potato Commission v. G & T Terminal Packaging, Inc.*, 425 F. 3d 708, 720 (9th Cir. 2005) (generally approving the principle that a party to litigation bears a general obligation to preserve evidence).

Bryant was on notice of the potential relevance of evidence contained on his laptop computer since, at the latest, April 2004, when Mattel filed its complaint against him. *See Housing Rights Center v. Sterling*, 2005 WL 3320739, at *7 (C.D. Cal. March 2, 2005) (plaintiffs "had an obligation to preserve" documents that were "destroyed while the litigation was ongoing"). In fact, Bryant admitted that he "understood" that after this lawsuit was filed, he was required to retain e-mails and documents and "anything related to the Bratz."[11]

---

[11] *Id.* at ¶ 2, Exh. 1 (Bryant Tr., Vol. 4 at 763:2-18).

Moreover, Bryant was obligated to preserve evidence much earlier, for two reasons. First, Bryant has been contractually obligated to preserve Mattel property – including Bratz and related information – since the day he left Mattel on October 19, 2000. Bryant knew that Bratz-related documents and electronic communications stored on any of his hard drives might belong to Mattel. Bryant had assigned to Mattel all rights, title, and interest in the "inventions" that he conceived or created during his employment.[12] When Bryant left, he had an obligation to preserve that which he had conceived or created while a Mattel employee, including any Bratz-related materials. Those materials belonged to Mattel.[13]

Second, Bryant knew that designs he created while he was under contract with Mattel belonged to Mattel.[14] Bryant therefore knew when he left Mattel to take his Bratz designs to MGA that his conduct was improper and that Mattel, were it to discover Bryant's misconduct, had, at the least, "probable claims" against him. *See In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (litigation hold attaches where claims are "probable"). Thus, long before this lawsuit was filed, Bryant was under an obligation to preserve Bratz-related documents.[15]

---

[12] *Id.* at ¶ 9, Exh. 8 (Mattel's Proprietary Information Checkout, signed by Carter Bryant on October 19, 2000).

[13] *Id.* Pursuant to the Proprietary Information Checkout form, Bryant reaffirmed that any and all designs, inventions, ideas, or improvements that he made or conceived at any time during his employment with Mattel was the "exclusive property" ("Proprietary Subject Matter") of Mattel. *Id.* He also agreed, among other things, "to make full and prompt disclosure in writing" to Mattel of all such Proprietary Subject Matter and, at Mattel's request, "to provide additional information to more fully define the specific structure of the disclosed subject matter and to present support documents evidencing [his] conception and development of the subject matter." *Id.*

[14] *Id.* at ¶ 9, Exh. 8 (Mattel's Proprietary Information Checkout, signed by Carter Bryant on October 19, 2000); *id.* at ¶ 10, Exh. 9 (Transcript of Deposition of Janet Bryant, at 86:1-14).

[15] Bryant can hardly dispute this point. He and the MGA defendants argued at length in their Motion for Terminating Sanctions that even Mattel – which, unlike (footnote continued)

1  Bryant was obligated – both contractually and by law because he knew
2  claims were probable – to preserve Bratz-related evidence. He knew that destroying
3  such evidence before this lawsuit would wrongfully deprive Mattel of its property and
4  destroying it afterwards would wrongfully deprive Mattel of evidence potentially
5  critical to its claims and defenses. Accordingly, Bryant was obligated to preserve
6  evidence long before he destroyed such evidence in July 2004, and even before he
7  installed and used Evidence Eliminator on both his computers in 2002. *See Leon*, 464
8  F.3d at 959 (party to lawsuit had "ample notice . . . that the files he destroyed . . . were
9  potentially relevant to the litigation" when he deleted computer files and overwrote
10 deleted documents "well after" lawsuit had been filed).

### B. Bryant Acted With a Culpable State of Mind

"[T]he culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." *Residential Funding Corp.*, 306 F.3d at 108 (internal citations and quotations omitted). "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003); *see Housing Rights Center*, 2005 WL 3320739 at *8 ("Destruction of documents during ongoing litigation was, at a minimum, negligent.").

As shown above, Bryant's duty to preserve evidence attached as early as October 2000, when he left Mattel, and certainly no later than the filing of this lawsuit in April 2004. Nonetheless, it is undisputed that Bryant ran the Evidence Eliminator program on his laptop computer two days before his attorneys imaged that computer for

---

Bryant, did *not* know of Bryant's disloyalty – was "on notice of the very claims it brings here at least as early as March, 2002 when it began investigating allegations that Mr. Bryant had stolen Mattel designs and given them to MGA to manufacture and produce 'Bratz' dolls . . . [such that] Mattel has had a duty to preserve evidence – whether helpful or not – since at least March 2002." *See* MGA's Motion for Terminating Sanctions, dated July 23, 2007, at 16-17.

purposes of discovery in this lawsuit on July 12, 2004 (and possibly many times before then), and that he had installed and used the program in 2002 on the desktop computer he purchased just after he departed from Mattel. Because Bryant destroyed evidence while he was under a duty to preserve such evidence, his destruction of such evidence was, at a minimum, negligent. *See Pace v. Nat'l Railroad Passenger Corp.*, 291 F.Supp. 2d 93, 99 (D. Conn. 2003) (adverse inference instruction appropriate where destruction of documents occurred at time when "the litigation was reasonably foreseeable"). Bryant therefore destroyed evidence with the requisite culpable state of mind.

### C. The Destroyed Evidence Is Relevant

In the context of a spoliation claim, "relevant . . . means something more than sufficiently probative to satisfy *Rule* 401 of the *Federal Rules of Evidence*. Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." *Residential Funding Corp.*, 306 F. 3d at 108-09 (internal citations and quotations omitted). "Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." *Id*. at 109.

The timing of Bryant's destruction of electronic data is sufficient to demonstrate that he acted in bad faith. Bryant ran Evidence Eliminator on his laptop months after this lawsuit was filed and two days before Bryant's counsel created the forensic images of the drive. Such conduct is clear evidence of willful and bad faith spoliation of evidence. *See Leon*, 464 F.3d at 959 (defendant's "deletion and 'wiping' of 2,200 files," after lawsuit had been filed, "acts that were indisputably intentional, amounted to willful spoliation of relevant evidence"); *In re Krause*, 367 B.R. 740, 768-772 (D. Kan. 2007) ("To the Court, the timing of the installation of Ghostsurf is not as

crucial as the fact that Krause ran Ghostsurf, purging his electronic data and files immediately prior to turning over his computers and after learning that the Court was ordering their production."); *DirecTV, Inc. v. Borow*, 2005 WL 43261 at *6 (N.D. Ill. Jan. 6, 2005) ("The fact that [defendant] deleted certain files on his computer only five weeks after the start of this litigation creates an inference that he destroyed evidence that would have been harmful to his defense."). Bryant's bad faith alone satisfies the relevance inquiry.

Moreover, at a minimum, a reasonable fact finder could infer in these circumstances that the destroyed evidence would have been relevant to this case. Bryant has produced only a handful of e-mail messages related to Bratz and his communications with MGA or others from 2000 to 2001, and even fewer e-mail messages from 2002 through 2005.[16] MGA and various third parties have produced e-mail messages that Bryant exchanged with them that Bryant has not produced in any form.[17] A reasonable inference from such circumstances is that those e-mails could have been contained on, and deleted from, Bryant's laptop or desktop computers. That there is no longer any way to confirm that inference does not defeat the reasonableness thereof. *See Leon*, 464 F. 3d at 958 (affirming dismissal sanction for spoliation where "any number of the 2,200 [deleted] files could have been relevant to [defendant's] claims or defenses, although it is impossible to identify which files and how they might have been used").

Indeed, no one will ever know what was on Bryant's computers before he engaged Evidence Eliminator. In such circumstances, "the possibility that relevant documents were included in [such a] mass deletion is something [a] Court cannot overlook." *Kucala*, 2003 WL 21230605, at *5 -*6 (so stating where there was no evidence that Evidence Eliminator actually deleted relevant information, but there was evidence that over 14,000 files had been deleted by running the program); *see*

---

[16] *See* Tayback Decl., at ¶ 11.

1  *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982) (because "the
2  relevance of . . . [destroyed] documents cannot be clearly ascertained because the
3  documents no longer exist," a spoliating party "can hardly assert any presumption of
4  irrelevance as to the destroyed documents"). *Cf. In re Krause*, 267 B.R. at 769
5  (inferring that lost electronic evidence was relevant where the e-mail messages that
6  were produced showed the debtor used his computers as a "nerve center" for the
7  business interests at issue in the adversary proceeding).

8         In sum, when Bryant ran the Evidence Eliminator program on his
9  computers, he was under an obligation to preserve evidence, he acted negligently, at
10 best, and he destroyed relevant evidence that could be adverse to his claims and
11 defenses. Bryant therefore engaged in improper evidence spoliation, and Mattel is
12 entitled to the adverse inference instruction it seeks.

## III. MATTEL'S PROPOSED ADVERSE INFERENCE INSTRUCTION IS APPROPRIATE

16        Mattel has requested the Court to read the following jury instruction:
17 The plaintiff, Mattel, contends that the defendants, including Carter
18 Bryant, MGA, Isaac Larian and MGA Hong Kong, did not take
19 appropriate steps to preserve relevant evidence and destroyed such
20 evidence. The defendants deny that contention. If you find that
21 relevant evidence that was within the defendants' control is missing or
22 has been destroyed and that the evidence is missing because of the
23 defendants' bad faith or negligent, unjustified or careless actions or
24 inaction, you may infer that such evidence, if available now, would
25 have been favorable to Mattel and adverse to the defendants.
26 Defendants' destruction of evidence was negligent, unjustified or

---

[17] *Id.*

careless if they had notice that the evidence might be relevant to this litigation when they destroyed the evidence or made the evidence unavailable. A person is under a duty to preserve evidence that he or she knows, or reasonably should know, could be relevant to a case.

Thus, Mattel requests only that the jury be given the right to conclude that *if* it finds spoliation, it *may* draw an adverse inference. Given the strong evidence of spoliation, that permissive instruction is more than appropriate. *See Pace v. Nat'l Railroad Passenger Corp.*, 291 F. Supp. 2d 93, 99 (D. Conn. 2003) (denying motion for new trial where "instruction given by this court . . . merely allowed the jury to draw an adverse inference."); *One Beacon Ins. Co.*, 2005 WL 2077499, at *5 (where genuine question exists as to whether destruction of evidence was negligent or worse, "it is appropriate to defer that question to the jury, by instructing jurors that *if they find* that the spoliation of evidence was at least negligent, *they may infer* that the missing evidence would favor the non-spoliating party") (emphasis added); *Nejo v. Tamaroff Buick Honda Isuzu Nissan*, 2004 WL 346036, at *8 (6th Cir. Feb. 23, 2004) (instruction that "jury 'may' infer that the missing evidence would have been adverse to the plaintiff 'if' it believes that plaintiff has provided 'no reasonable excuse' for the absence" properly "recognize[s] the existence of a fact issue, and did not foreclose the jury from considering [defendant's] excuse").

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant this motion and issue the adverse inference jury instruction as proposed by Mattel.

DATED: April 28, 2008        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _____
Christopher Tayback
Attorneys for Mattel, Inc.