1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017–2543
    Telephone:  (213) 443–3000
7   Facsimile:   (213) 443–3100

8   Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12

13   CARTER BRYANT, an individual,          CASE NO. CV 04–9049 SGL (RNBx)

              Plaintiff,                     Consolidated with
14                                           Case No. CV 04–09059
                                             Case No. CV 05–02727
15        vs.

16   MATTEL, INC., a Delaware               **[PUBLIC REDACTED]**
     corporation,                           **DECLARATION OF CHRISTOPHER**
17                                          **TAYBACK IN SUPPORT OF**
              Defendant.                    **MOTION OF MATTEL, INC. FOR**
18                                          **AN ORDER GRANTING "ADVERSE**
                                            **INFERENCE" JURY INSTRUCTION**
19
     AND CONSOLIDATED ACTIONS              Hearing Date:  June 16, 2008
20                                          Time:  10:00 a.m.
                                            Place:  Courtroom 1
21
                                            **Phase I**
22                                          Discovery Cut–off:  January 28, 2008
                                            Pre–trial Conference:  May 5, 2008
23                                          Trial Date:  May 27, 2008

24

25

26

27

28

## DECLARATION OF CHRISTOPHER TAYBACK

I, Christopher Tayback, declare as follows:

1.     I am a member of the bar of the State of California and a partner in Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.     Attached as Exhibit 1 is a true and correct copy of relevant portions of the Transcript of the Deposition of Carter Bryant, Volume 4, dated January 23, 2008.

3.     Attached as Exhibit 2 is a true and correct copy of the Forensic Analysis Report of Mark J. Menz, Number 1, dated February 10, 2008.

4.     Attached as Exhibit 3 is a true and correct copy of relevant portions of the Transcript of the Deposition of Gary Funck, dated April 8, 2008.

5.     Attached as Exhibit 4 is a true and correct copy of relevant portions of the Transcript of the Deposition of Carter Bryant, Volume 1, dated November 4, 2004.

6.     Attached as Exhibit 5 is a true and correct copy of a Circuit City receipt produced by Bryant in discovery and showing Carter Bryant's purchase of a desktop computer on October 21, 2000.

7.     Attached as Exhibit 6 is a true and correct copy of the Forensic Analysis Report of Mark J. Menz, Number 2, dated February 10, 2008.

8.     Attached as Exhibit 7 is a true and correct copy of relevant portions of the Transcript of the Deposition of Mark Menz, dated March 13, 2008.

9.     Attached as Exhibit 8 is a true and correct copy of Mattel's Proprietary Information Checkout, signed by Carter Bryant on October 19, 2000.

1    10.    Attached as Exhibit 9 is a true and correct copy of relevant

2   portions of the Transcript of the Deposition of Janet Bryant, Volume 1, dated

3   September 25, 2007.

4    11.    A review of Carter Bryant's document productions reveals that

5   Bryant has produced only a handful of e-mail messages relating to Bratz from the

6   crucial period of 2000 to 2001, and even fewer from equally crucial period of 2002

7   to 2005.  MGA and various third parties have produced to Mattel e-mail messages

8   that Bryant exchanged with them.  Bryant, however, has not produced those e-mail

9   messages in any form.

10

11    I declare under penalty of perjury under the laws of the United States of

12

13   America that the foregoing is true and correct.

14    Executed this 28th day of April, 2008, at Los Angeles, California.

15

16

17                                                   Christopher Tayback

18

19

20

21

22

23

24

25

26

27

28

# Exhibit  1

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# Exhibit 2

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# Exhibit 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

        Plaintiff,

vs.

No. CV 04-09049 SGL (RNBx)

MATTEL, INC., a Delaware
Corporation,

**CERTIFIED COPY**

        Defendants.

CONSOLIDATED WITH MATTEL, INC.,
v BRYANT and MGA ENTERTAINMENT, INC.,
v MATTEL, INC.

---

DEPOSITION OF GARY FUNCK

San Francisco, California

Tuesday, April 8, 2008

REPORTED BY:
LYNNE LEDANOIS
CSR No. 6811

Job No. 86126

EXHIBIT 3 PAGE 54

1            UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
2                   EASTERN DIVISION

3

4    CARTER BRYANT, an individual,

5                    Plaintiff,

6    vs.                          No. CV 04-09049 SGL (RNBx)

7    MATTEL, INC., a Delaware
     Corporation,
8
                       Defendants.
9
     CONSOLIDATED WITH MATTEL, INC.,
10   v BRYANT and MGA ENTERTAINMENT, INC.,
     v MATTEL, INC.
11

12   _____

13

14

15

16      Deposition of GARY FUNCK, taken on behalf of

17   Defendant, at 50 California Street, 21st Floor, San

18   Francisco, California, beginning at 10:01 a.m. and

19   ending at 2:25 p.m. on Tuesday, April 8, 2008, before

20   LYNNE LEDANOIS, CSR 6811.

21

22

23

24

25

EXHIBIT __3__ PAGE _55_

2

GARY FUNCK                                    04/08/08

| | |
|---|---|
| 12:00:48 1 | Q 2007. Correct? |
| 12:00:48 2 | A Correct. |
| 12:00:49 3 | Q When I refer then to the image of the HP |
| 12:00:53 4 | Pavilion or the desktop image, from now on I'm going to |
| 12:00:57 5 | be focused on that, the July 13th, 2004 image that you |
| 12:01:02 6 | performed your analysis of. Okay? |
| 12:01:05 7 | A Yes. |
| 12:01:05 8 | Q Is it your opinion that the Evidence Eliminator |
| 12:01:12 9 | was never run on the desktop? |
| 12:01:16 10 | A No. |
| 12:01:18 11 | Q Is it your opinion that it was run on the |
| 12:01:20 12 | desktop? |
| 12:01:21 13 | A No. |
| 12:01:23 14 | Q Did you look to determine whether it was ever |
| 12:01:25 15 | run on the desktop? |
| 12:01:27 16 | A I want to be clear we're talking about the |
| 12:01:29 17 | version -- the definition of run that we've agreed upon, |
| 12:01:31 18 | meaning the user ran it to invoke its functions? |
| 12:01:35 19 | Q Yes. |
| 12:01:36 20 | A Okay. Now, please repeat your question. |
| 12:01:39 21 | Q Is that how you answered the last two |
| 12:01:42 22 | questions, using that interpretation? |
| 12:01:44 23 | A Yes. |
| 12:01:48 24 | Q Did you look at the desktop to determine |
| 12:01:51 25 | whether or not Evidence Eliminator had ever been run? |

EXHIBIT 3 PAGE 56

92

**GARY FUNCK**                                      04/08/08

| | | |
|---|---|---|
| 12:01:57 | 1 | A   I think we looked generally at the image and -- |
| 12:02:05 | 2 | but we did not look particularly at that question. |
| 12:02:07 | 3 | Q   Is there something you could have done in your |
| 12:02:10 | 4 | analysis to determine whether it had ever been run? |
| 12:02:24 | 5 | A   Yes. |
| 12:02:25 | 6 | Q   What could you have done? |
| 12:02:29 | 7 | A   We could have run tests on Evidence Eliminator |
| 12:02:32 | 8 | having been run under the Windows ME operating system |
| 12:02:38 | 9 | which was present on that system and on a hard drive |
| 12:02:44 | 10 | that has the FAT32 format which is present in that |
| 12:02:49 | 11 | image.  From those tests, we could determine, perhaps, |
| 12:02:58 | 12 | indicia of Evidence Eliminator having been run on that |
| 12:03:01 | 13 | sort of system. |
| 12:03:10 | 14 | Q   Why didn't you do that? |
| 12:03:14 | 15 | A   There were many tasks that we had to perform. |
| 12:03:17 | 16 | When we prioritized them, that didn't seem to be |
| 12:03:22 | 17 | important.  And it was also, obviously, time-consuming. |
| 12:03:33 | 18 | Q   Is it possible that Evidence Eliminator was run |
| 12:03:36 | 19 | on the desktop in 2002? |
| 12:03:44 | 20 | A   It's possible. |
| 12:03:46 | 21 | Q   Is it possible that it was run in 2003? |
| 12:03:50 | 22 | A   Run by the user to perform its functions? |
| 12:03:53 | 23 | Q   Using the definition -- |
| 12:03:55 | 24 | A   Based upon -- as I concluded in my report, we |
| 12:04:00 | 25 | don't see -- we see indications that would imply or |

EXHIBIT 2 PAGE 57

93

GARY FUNCH                                    04/08/08

| | |
|---|---|
| 12:04:05 | 1 |

state that it was not run past a certain date in 2002.

12:04:16  2      Q   But you cannot say that it was not run at

12:04:20  3  that -- on that date in 2002 or anytime before that?

12:04:27  4      A   We can't say is a double negative, so I'm not

12:04:31  5  sure how to answer.

12:04:32  6          MR. PAGE:  Object as compound.

12:04:34  7          MR. TAYBACK:  Sure.  That was unclear.

12:04:35  8  BY MR. TAYBACK:

12:04:36  9      Q   But it's not your opinion that it was not

12:04:38  10  run -- withdraw that.

12:04:42  11          MR. PAGE:  We're going to go for a triple

12:04:43  12  negative this time with a half-turn.

12:04:46  13  BY MR. TAYBACK:

12:04:47  14      Q   You have no opinion -- it's correct that you

12:04:49  15  have no opinion as to whether or not it was run in 2002?

12:04:53  16      A   That's correct.

12:05:11  17          MR. PAGE:  Let me belatedly object to that as

12:05:13  18  vague and ambiguous.

12:05:14  19  BY MR. TAYBACK:

12:05:15  20      Q   In your opinion, what is the latest date on

12:05:19  21  which Evidence Eliminator could have been run on the

12:05:24  22  desktop?

12:05:53  23      A   July 29th, 2002.

12:06:25  24      Q   July 29th, 2002 is a date after it was

12:06:28  25  originally installed?

EXHIBIT __3__ PAGE 58

94

GARY FUNCK                                    04/08/08

01:29:41  1    application log.

01:29:43  2        Q    What is that?

01:29:44  3        A    Actually, I don't remember at the moment.

01:29:46  4        Q    Is it something that you can look at on this

01:29:49  5    desktop, for example, an application log somewhere?

01:29:55  6        A    I don't know.

01:29:58  7        Q    Would you -- maybe you can't answer this

01:30:01  8    question either, given your last answer, but would it be

01:30:04  9    unusual to see an empty application log?

01:30:10  10       A    I can't answer.

01:30:17  11       Q    Did you notice on the computer that there

01:30:22  12   appeared to be what I think you might have just

01:30:22  13   described as a gap, inactivity on the desktop?

01:30:27  14       A    I did not look at that specifically.

01:30:30  15       Q    Did you notice that there was -- did you

01:30:33  16   notice, whether you looked at it specifically or not,

01:30:34  17   any kind of a gap reflecting no activity between

01:30:38  18   September of 2002 and October of 2003?

01:30:42  19       A    I did not notice.

01:30:44  20       Q    Would that affect your opinion in any way if

01:30:49  21   that was the case?

01:30:50  22            MR. PAGE:  Objection, vague and ambiguous.

01:30:51  23            THE WITNESS:  You know, I think it would depend

01:30:54  24   upon the particulars.

01:30:54  25   BY MR. TAYBACK:

EXHIBIT __3__ PAGE 59

GARY FUNCK                                        04/08/08

| | | |
|---|---|---|
| 01:30:55 | 1 | Q   Assume that you looked at the computer, the |
| 01:30:58 | 2 | desktop, and it showed that there was no activity from |
| 01:31:02 | 3 | September of 2002 to October of 2003.  Would that affect |
| 01:31:05 | 4 | your opinion in any way? |
| 01:31:07 | 5 | MR. PAGE:  Objection, vague and ambiguous. |
| 01:31:08 | 6 | Which opinion? |
| 01:31:08 | 7 | BY MR. TAYBACK: |
| 01:31:09 | 8 | Q   Any of your opinions. |
| 01:31:13 | 9 | A   I have to think about that.  There's a lot of |
| 01:31:15 | 10 | opinions. |
| 01:31:28 | 11 | No, I don't think so. |
| 01:31:33 | 12 | Q   What is a setup log? |
| 01:31:36 | 13 | A   That's another one of those logs that I am not |
| 01:31:39 | 14 | sure what it is at the moment. |
| 01:31:42 | 15 | Q   Did you notice that the setup log was dated |
| 01:31:45 | 16 | January of 2004? |
| 01:31:47 | 17 | A   No, I did not. |
| 01:31:49 | 18 | Q   Is that significant at all to anything that you |
| 01:31:51 | 19 | did with respect to your analysis? |
| 01:31:54 | 20 | A   It's -- it did not affect my analysis. |
| 01:32:28 | 21 | Q   Let me ask you -- let me turn to the laptop. |
| 01:32:37 | 22 | You agreed with Mr. Menz that the hard drive |
| 01:32:46 | 23 | for the laptop reflects approximately 9400 files or file |
| 01:32:53 | 24 | names were overwritten? |
| 01:32:56 | 25 | A   File names or folder names were overwritten. |

123

**GARY FUNCK**                                    04/08/08

| | | |
|---|---|---|
| 01:32:59 | 1 | Q   On July 12th, 2004? |
| 01:33:02 | 2 | A   Correct. |
| 01:33:13 | 3 | Q   Do you know who ran Evidence Eliminator on July |
| 01:33:17 | 4 | 12th, 2004? |
| 01:33:18 | 5 | A   No, I do not. |
| 01:33:20 | 6 | Q   Did you inquire about that? |
| 01:33:22 | 7 | A   No, I did not. |
| 01:33:25 | 8 | Q   Do you have any reason to believe it was Lee |
| 01:33:27 | 9 | Curtis? |
| 01:33:28 | 10 | MR. PAGE:  Objection, calls for speculation. |
| 01:33:34 | 11 | THE WITNESS:  Only the fact that he seemed to |
| 01:33:35 | 12 | show up to do the image two days later, so I guess his |
| 01:33:40 | 13 | name would be in play if you were trying to determine |
| 01:33:44 | 14 | that. |
| 01:33:44 | 15 | BY MR. TAYBACK: |
| 01:33:44 | 16 | Q   Do you know whether it was Carter Bryant? |
| 01:33:47 | 17 | A   I think I already answered, I don't know. |
| 01:33:49 | 18 | Q   Do you have any understanding as to in whose |
| 01:33:53 | 19 | custody the laptop was in on July 12th, 2004? |
| 01:33:57 | 20 | A   I don't know. |
| 01:33:58 | 21 | Q   Did you make any effort to determine that? |
| 01:34:00 | 22 | A   I did not. |
| 01:34:05 | 23 | Q   As you, I believe, just alluded to, the image |
| 01:34:09 | 24 | that you reviewed was made two days after Internet -- |
| 01:34:14 | 25 | Evidence Eliminator was run; correct? |

124

| | | |
|---|---|---|
| 01:44:41 | 1 | was hard was the first part. |
| 01:44:50 | 2 | Q   Do you have any understanding as to what |
| 01:44:51 | 3 | Evidence Eliminator does, if anything, to make recovery |
| 01:44:56 | 4 | of those recipes themselves, in my example, more |
| 01:45:00 | 5 | difficult? |
| 01:45:06 | 6 | A   Yes. |
| 01:45:06 | 7 | Q   What? |
| 01:45:11 | 8 | A   If the data were still present, then it might |
| 01:45:16 | 9 | overwrite the data. |
| 01:45:17 | 10 | However, I just want to say that when you look |
| 01:45:19 | 11 | at the data on the drive and you think about the time |
| 01:45:22 | 12 | frames involved, for example in our particular example, |
| 01:45:24 | 13 | then this hypothetical might not apply. |
| 01:45:28 | 14 | Q   Put aside the specifics right now.  I guess I |
| 01:45:31 | 15 | want to understand what your understanding is of how |
| 01:45:33 | 16 | Evidence Eliminator would overwrite the data itself. |
| 01:45:41 | 17 | A   It probably -- I think we know from the |
| 01:45:44 | 18 | description that it would probably overwrite the |
| 01:45:46 | 19 | unallocated space. |
| 01:45:48 | 20 | Q   And did you look to see whether that -- any |
| 01:45:52 | 21 | unallocated space had been overwritten in the laptop? |
| 01:45:59 | 22 | A   We did not look specifically. |
| 01:46:00 | 23 | Q   When you say you did not look specifically -- |
| 01:46:02 | 24 | A   I mean, we looked at a lot of things, and from |
| 01:46:05 | 25 | what I recall, we did not look for that specific |

EXHIBIT  3  PAGE 122

133

GARY FUNCK                                                          04/08/08

01:46:07  1    indication.

01:46:16  2         Q    Is there something you would look for since

01:46:18  3    here the Evidence Eliminator was run -- withdraw that.

01:46:26  4              The 9400 plus file names and file folders that

01:46:33  5    were overwritten, do you have any way of knowing how

01:46:36  6    much data, if ever, was contained in any of those files

01:46:39  7    or folders?

01:46:44  8         A    No.

01:46:44  9         Q    Is there any way to recover that, to your

01:46:47  10   knowledge?

01:46:53  11        A    No.

01:46:57  12        Q    Is it your understanding that that's part of

01:46:59  13   the purpose of Evidence Eliminator?

01:47:01  14             MR. PAGE:  Objection, calls for speculation.

01:47:06  15             THE WITNESS:  I think part of the purpose of

01:47:08  16   Evidence Eliminator is to perform some of these cleaning

01:47:13  17   functions that we just talked about.

01:47:15  18   BY MR. TAYBACK:

01:47:15  19        Q    And is one effect of Evidence Eliminator, in

01:47:18  20   your understanding, that it makes it impossible to know

01:47:21  21   how much data was ever contained in any of the 9400 plus

01:47:27  22   file names and file folders overwritten by Evidence

01:47:29  23   Eliminator?

01:47:30  24             MR. PAGE:  Objection, vague and ambiguous.

01:47:33  25             THE WITNESS:  Did you say file and folder names

134

**GARY FUNCK**                                           04/08/08

01:47:35  1    or did you say files and folders?

01:47:37  2    BY MR. TAYBACK:

01:47:37  3        Q    The data contained in the files and folder

01:47:40  4    names overwritten by Evidence Eliminator.

01:47:44  5        MR. PAGE:  Same objection.

01:47:45  6        THE WITNESS:  The difficulty in answering that

01:47:46  7    question is that you can have a lot of leftover file and

01:47:48  8    folder names and no data at all corresponding to them.

01:47:51  9    BY MR. TAYBACK:

01:47:51  10       Q    I understand what you could have, but I'm

01:47:54  11   saying, the ability to go back and figure out whether

01:47:56  12   there was -- what data, if any, was in any given file

01:47:59  13   folder or name, is it your understanding that Evidence

01:48:01  14   Eliminator makes it impossible to go back and figure

01:48:04  15   that out?

01:48:05  16       MR. PAGE:  Same objection.

01:48:08  17       THE WITNESS:  The name does not have the file

01:48:10  18   data, so I can't answer the question as asked.

01:48:13  19   BY MR. TAYBACK:

01:48:15  20       Q    In the absence of Evidence Eliminator in this

01:48:18  21   case, could you do anything to determine whether any of

01:48:21  22   the file names or file folders that are represented by

01:48:27  23   the 9400 plus overwritten file names had data in them?

01:48:34  24       MR. PAGE:  Objection, vague and ambiguous,

01:48:35  25   incoherent.

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855
EXHIBIT  3  PAGE 64

01:48:38  1          THE WITNESS:  They did not have data because

01:48:39  2     they were already deleted.

01:48:41  3     BY MR. TAYBACK:

01:48:42  4          Q    In the absence of Evidence Eliminator, is there

01:48:45  5     anything you could do to determine whether the data that

01:48:48  6     once was in those file names or folders was still on the

01:48:52  7     computer?

01:48:53  8          MR. PAGE:  Same objection.

01:49:00  9          THE WITNESS:  I would say no.

01:49:01 10     BY MR. TAYBACK:

01:49:12 11          Q    By eliminating the file names and folder names,

01:49:15 12     what is the -- if you have any understanding, what's

01:49:20 13     the -- withdraw that.

01:49:23 14          In your analysis of this particular -- withdraw

01:49:33 15     that.

01:49:34 16          Do you know why whoever ran Evidence Eliminator

01:49:36 17     on July 12th, 2004 ran it?

01:49:39 18          MR. PAGE:  Objection, calls for speculation.

01:49:44 19          THE WITNESS:  I have no clue.

01:49:44 20     BY MR. TAYBACK:

01:49:44 21          Q    Is there any way to recover the file names or

01:49:50 22     folder names that were overwritten on July 12th, 2004,

01:49:55 23     to your knowledge?

01:49:55 24          A    No.

01:49:56 25          Q    And is that an effect of Evidence Eliminator?

EXHIBIT ___3___ PAGE 65

136

GARY FUN...                                                    04/08/08

| | | |
|---|---|---|
| 01:50:00 | 1 | A    Yes. |
| 01:50:01 | 2 | MR. PAGE:  Objection, calls for speculation. |
| 01:50:04 | 3 | THE WITNESS:  It seems so. |
| 01:50:05 | 4 | BY MR. TAYBACK: |
| 01:50:05 | 5 | Q    If Evidence Eliminator had not been run on July |
| 01:50:08 | 6 | 12th, 2004, could one recover the 9400 plus file names |
| 01:50:12 | 7 | and folder names that were overwritten? |
| 01:50:14 | 8 | MR. PAGE:  Objection, calls for speculation. |
| 01:50:24 | 9 | THE WITNESS:  Yes. |
| 01:50:25 | 10 | BY MR. TAYBACK: |
| 01:50:27 | 11 | Q    How? |
| 01:50:43 | 12 | A    I suppose by looking at the information that's |
| 01:50:45 | 13 | on the disk drive. |
| 01:50:47 | 14 | Q    Where would you look exactly? |
| 01:50:49 | 15 | A    In the MFT. |
| 01:51:03 | 16 | Q    Can you tell me how many times Evidence |
| 01:51:04 | 17 | Eliminator was run prior to July 12th, 2004 -- |
| 01:51:11 | 18 | MR. PAGE:  Objection, vague and ambiguous. |
| 01:51:12 | 19 | BY MR. TAYBACK: |
| 01:51:12 | 20 | Q    -- on the laptop?  Sorry. |
| 01:51:15 | 21 | A    No. |
| 01:51:17 | 22 | Q    Why not? |
| 01:51:21 | 23 | A    Well, I think if you look for indications -- we |
| 01:51:25 | 24 | talked before, if you looked at the dates and times of |
| 01:51:27 | 25 | the configuration files that it accesses, then there's |

**GARY FUNCK**                                    **04/08/08**

| | | |
|---|---|---|
| 02:03:54 | 1 | BY MR. TAYBACK: |
| 02:03:54 | 2 | Q   Evidence Eliminator being run on July 12th, |
| 02:03:59 | 3 | 2004 makes recovery of the previously-deleted file names |
| 02:04:06 | 4 | impossible; correct? |
| 02:04:08 | 5 | MR. PAGE:  Objection, misstates his previous |
| 02:04:10 | 6 | testimony and calls for speculation. |
| 02:04:17 | 7 | THE WITNESS:  We've already talked about the |
| 02:04:18 | 8 | file names and the previous file names.  So can you ask |
| 02:04:22 | 9 | me a specific question? |
| 02:04:23 | 10 | BY MR. TAYBACK: |
| 02:04:24 | 11 | Q   I thought that was a specific question. |
| 02:04:27 | 12 | The running of Evidence Eliminator on July |
| 02:04:31 | 13 | 12th, 2004 makes recovery of the previously-deleted file |
| 02:04:38 | 14 | or folder names impossible; correct? |
| 02:04:43 | 15 | MR. PAGE:  Objection, calls for speculation and |
| 02:04:45 | 16 | misstates his prior testimony. |
| 02:04:49 | 17 | BY MR. TAYBACK: |
| 02:04:50 | 18 | Q   If you're saying no because it could have been |
| 02:04:52 | 19 | run before and that would have previously deleted it, is |
| 02:04:55 | 20 | that why -- |
| 02:04:55 | 21 | A   No. |
| 02:04:56 | 22 | Q   -- or is there something else that I am |
| 02:04:58 | 23 | missing?  Okay. |
| 02:05:00 | 24 | What is wrong with my example?  I don't want to |
| 02:05:02 | 25 | misstate your testimony; I want to understand it. |

. GARY FUNCK                                        04/08/08

| | | |
|---|---|---|
| 02:05:05 | 1 | MR. PAGE:  For the record, that was the basis |
| 02:05:07 | 2 | of my objection. |
| 02:05:08 | 3 | MR. TAYBACK:  All right. |
| 02:05:17 | 4 | THE WITNESS:  Actually, I think now I'm |
| 02:05:19 | 5 | confused. |
| 02:05:19 | 6 | So if -- the problem I'm having with this is |
| 02:05:31 | 7 | that in this scenario there, these original file names, |
| 02:05:35 | 8 | okay, and then there's the possibility of Evidence |
| 02:05:39 | 9 | Eliminator having run and then those are new file names. |
| 02:05:42 | 10 | BY MR. TAYBACK: |
| 02:05:43 | 11 | Q   Sure.  Whatever the last existing file names |
| 02:05:45 | 12 | were of deleted files. |
| 02:05:47 | 13 | A   All right. |
| 02:05:47 | 14 | Q   The running of Evidence Eliminator on July |
| 02:05:50 | 15 | 12th, 2004 made recovery of those previously-deleted |
| 02:05:54 | 16 | file names impossible to recover? |
| 02:05:56 | 17 | A   And that includes the file names that might |
| 02:05:59 | 18 | have been overwritten by a prior run of Evidence |
| 02:06:02 | 19 | Eliminator? |
| 02:06:03 | 20 | Q   Yes? |
| 02:06:03 | 21 | A   Yes. |
| 02:06:06 | 22 | Q   And by the same token, the running of Evidence |
| 02:06:09 | 23 | Eliminator on July 12th, 2004 on the laptop made |
| 02:06:14 | 24 | recovery of whatever remnants of previously-deleted data |
| 02:06:18 | 25 | may have existed in unallocated space unrecoverable? |

EXHIBIT ___3___ PAGE 68

145

| | | |
|---|---|---|
| 02:06:33 | 1 | MR. PAGE:  I object that it assumes facts. |
| 02:07:10 | 2 | THE WITNESS:  So the answer is that if you go |
| 02:07:12 | 3 | back again to Evidence Eliminator having been run |
| 02:07:15 | 4 | before, it also affects the data, okay, which means that |
| 02:07:19 | 5 | it cleaned the data, which means that that -- at that |
| 02:07:24 | 6 | point in time, then there's -- you know, then whatever |
| 02:07:27 | 7 | data you see is just the result of its cleaning. |
| 02:07:31 | 8 | Okay, that can be a lot of data, because on |
| 02:07:37 | 9 | this hard drive, only about -- only like 4 gigs out of, |
| 02:07:38 | 10 | say, 20 are actually in use.  So there's a lot of it |
| 02:07:42 | 11 | that's not in use.  Okay. |
| 02:07:44 | 12 | Thus, when you combine that effect with the |
| 02:07:47 | 13 | idea that the operating system is also reusing data, |
| 02:07:51 | 14 | there could be a lot of data that is not recoverable |
| 02:07:58 | 15 | because of the prior run of Evidence Eliminator.  It |
| 02:08:01 | 16 | could have been as far back as 2002, 2003.  It's -- |
| 02:08:04 | 17 | because the drive is mainly empty, you know, it depends |
| 02:08:07 | 18 | upon the activity level. |
| 02:08:08 | 19 | BY MR. TAYBACK: |
| 02:08:11 | 20 | Q    Assume that Evidence Eliminator had not been |
| 02:08:14 | 21 | run prior to July 12th, 2004.  Okay. |
| 02:08:19 | 22 | The running of Evidence Eliminator on July |
| 02:08:23 | 23 | 12th, 2004 made the recovery of previously-deleted data |
| 02:08:27 | 24 | that still existed in unallocated space as of July 11th, |
| 02:08:32 | 25 | 2004 unrecoverable; correct? |

EXHIBIT ___2___ PAGE 69

146

GARY FUNCK                                                    04/08/08

| | | |
|---|---|---|
| 02:09:51 | 1 | If there is any data to recover that exists as |
| 02:09:57 | 2 | remnants of previously-deleted files in unallocated |
| 02:10:01 | 3 | space on July 11th, 2004, would the running of Evidence |
| 02:10:06 | 4 | Eliminator on July 12th, 2004 have prevented the |
| 02:10:16 | 5 | recovery of that -- those remnants, whatever they might |
| 02:10:16 | 6 | have been? |
| 02:10:17 | 7 | MR. PAGE:  Object, assumes facts. |
| 02:10:23 | 8 | THE WITNESS:  Given the hypothetical, I would |
| 02:10:25 | 9 | say yes. |
| 02:10:27 | 10 | BY MR. TAYBACK: |
| 02:10:32 | 11 | Q   Do you know as you sit here now whether there |
| 02:10:35 | 12 | was any data in that unallocated space that relates to |
| 02:10:41 | 13 | the issues in this lawsuit on July 11th, 2004? |
| 02:10:47 | 14 | A   No. |
| 02:10:47 | 15 | Q   You have no way of knowing one way or the |
| 02:10:49 | 16 | other; correct? |
| 02:10:50 | 17 | A   I don't even know what the data is that relates |
| 02:10:53 | 18 | to the lawsuit. |
| 02:10:54 | 19 | Q   And, in fact -- |
| 02:10:56 | 20 | MR. PAGE:  Objection.  Excellent point. |
| 02:10:57 | 21 | BY MR. TAYBACK: |
| 02:10:58 | 22 | Q   And, in fact, you have no way of knowing what |
| 02:11:01 | 23 | data, if anything, existed in that unallocated space on |
| 02:11:04 | 24 | July 11th, 2004? |
| 02:11:06 | 25 | A   That's true. |

EXHIBIT ___3___ PAGE 71

1

2

3

4

5

6

7

8

9        I, GARY FUNCK, do hereby declare under penalty

10   of perjury that I have read the foregoing transcript;

11   that I have made any corrections as appear noted, in

12   ink, initialed by me; that my testimony as contained

13   herein, as corrected, is true and correct.

14        EXECUTED this _____ day of _____,

15   20__, at _____, _____.
                        (City)              (State)

16

17

18        _____

19        GARY FUNCK

20

21

22

23

24

25   EXHIBIT __3__ PAGE __73__

157

1    I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3    That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10  testimony given.

11    Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [   ] was [ X ] was not requested.

15    I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18    IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated: _____ APR 2 1 2008 _____

22

23

24  LYNNE MARIE LEDANOIS
    CSR No. 6811

25  EXHIBIT __3__ PAGE **74**

# Exhibit 4

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# Exhibit 5

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# Exhibit 6

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

Exhibit 7

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4     - - - - - - - - - - - - - - - - - - -        **Certified Copy**

5     CARTER BRYANT, an                )

6     individual,                      )

7                    Plaintiff,        )

8         vs.                          )  No. CV 04-9049 SGL

9     MATTEL, INC., a                  )      (RNBx)

10    Delaware corporation,            )

11                   Defendant.        )

12                                     )

13    Consolidated with               )

14    MATTEL, INC. V. BRYANT          )

15    & MGA ENTERTAINMENT,            )

16    INC. V. MATTEL, INC.            )

17    - - - - - - - - - - - - - - - - - - -

18        Videotaped Deposition of MARK MENZ,

19        taken at 400 Capitol Mall, 30th Floor,

20        Sacramento, California, commencing

21        at 9:58 a.m., Thursday, March 13,

22        2008, before WENDY E. ARLEN,

23        CSR No. 4355, RMR, CRR.

24                                    EXHIBIT _7_

25    Pages 1 - 163                   PAGE _121_

                                                                1

```
 1      Are you familiar with the safe shutdown procedure

 2      in Evidence Eliminator?

 3           A.    Yes.

 4           Q.    Okay.  Under that procedure, when one

 5      does a safe shutdown of one's computer, Evidence       10:27AM

 6      Eliminator goes out and looks on the hard drive

 7      for any previously deleted files, correct?

 8           A.    Correct.

 9           Q.    Regardless of when they were deleted

10      and not at the time they were deleted, correct?        10:27AM

11           A.    Correct.

12           Q.    And for each one it finds, it

13      overwrites the file name, correct?

14           A.    Correct.

15           Q.    Okay.  How do I cause Evidence               10:28AM

16      Eliminator to do that physically?

17           A.    At that moment?

18           Q.    Any time I want to.  Suppose I have

19      it running on my computer, running in background.

20      How do I tell Evidence Eliminator go find all the      10:28AM

21      deleted files and overwrite them?

22           A.    By setting up the configuration --

23           Q.    No.

24           A.    -- of Evidence Eliminator.

25      Physically you don't have to do anything.  The         10:28AM
                                                                    28
```

1               REPORTER'S CERTIFICATE

2

3            I certify that the witness in the

4     foregoing deposition,

5                    MARK MENZ,

6     was by me duly sworn to testify in the

7     within-entitled cause; that said deposition was

8     taken at the time and place therein named; that

9     the testimony of said witness was reported by

10    me, a duly Certified Shorthand Reporter of the

11    State of California authorized to administer

12    oaths and affirmations, and said testimony was

13    thereafter transcribed into typewriting.

14            I further certify that I am not of

15    counsel or attorney for either or any of the

16    parties to said deposition, nor in any way

17    interested in the outcome of the cause named in

18    said deposition.

19            IN WITNESS WHEREOF, I have hereunto

20    set my hand this 14th day of March, 2008.

21

22

23    _____
      WENDY E. ARLEN
      Certified shorthand Reporter
24    State of California
      Certificate No. 4355
25

                                                    160

EXHIBIT 7

PAGE 124

# Exhibit 8

 **Mattel**

PROPRIETARY INFORMATION CHECKOUT   MAT-4125-B

Each terminating employee should be aware that, in his Employee's Agreement, he has agreed to transfer all inventions made or conceived during the period of his employment to Mattel and to do all acts necessary to secure patent protection for such inventions for Mattel.

Each employee should also be aware that he has agreed to protect the proprietary information of Mattel. More particularly, he has agreed essentially as follows:

"In consideration of my employment by MATTEL, INC., or any of its subsidiaries or affiliated companies now or hereafter existing (hereinafter referred to individually and collectively as 'MATTEL'), I hereby covenant and agree that:

My interest in (a) any and all inventions, improvements and ideas (whether or not patentable) which I have made or conceived, or may make or conceive at any time during the period of my employment with the Company, either solely or jointly with others and in (b) any suggestions, designs, trademarks, copyright subject matter, literary or artistic works which I have made or conceived, or may make or conceive at any time during the period of my employment which relate or are applicable directly or indirectly to any phase of the Company's business shall be the exclusive property of the Company, its successors, assignees or nominees. (The items defined in (a) and (b) above will hereinafter be referred to collectively as 'Proprietary Subject Matter'.)

I shall make full and prompt disclosure in writing to an officer or official of the Company, or to anyone designated for that purpose by the Company, of all Proprietary Subject Matter made or conceived during the term of my employment. I agree, at the request of Mattel's Patent counsel, to provide additional information to more fully define the specific structure of the disclosed subject matter and to present support documents evidencing my conception and development of the subject matter.

Since the work for which I am employed upon which I shall be engaged will include Company knowledge and information of a private, confidential, or secret nature, I shall not, except as required in the conduct of the Company's business or as authorized in writing by the Company, during the course of my employment or thereafter, publish, disclose, or make use of, or authorize anyone else to publish, disclose or otherwise make use of any such knowledge or information, of a confidential nature to and the secret property of the Company or the design, construction, manufacture or sale of the Company's products or services. This obligation shall apply even to Company information created by me.

All documents, written information and other items including, but not limited to, notes, sketches, manuals, blueprints, notebooks, products, tools, fixtures, records and information relating to the business of the Company, made or obtained by me while employed by the Company shall be the exclusive property of the Company and shall be delivered by me to the Company on termination of my employment or at any time as requested by the Company".

Please acknowledge the above by signing and dating in the spaces provided below.

after Expy a 14

SIGNATURE

WITNESS

DATE   10/19/00

DATE   10/19/00

M 0001604

EXHIBIT ___8___

PAGE ___125___

DEPOSITION EXHIBIT
27
11-9-04   SH

# Exhibit 9

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**