QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059 and<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**[PUBLIC REDACTED]**<br>MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION *IN LIMINE* NO. 8 TO STRIKE EXPERT REPORT OF KENNETH HOLLANDER AND SECTIONS OF EXPERT REBUTTAL REPORTS OF HEATHER McCOMB, DENISE VAN PATTEN, AND NICHOLAS MIRZOEFF<br><br>[Notice of Lodging and Declarations of Tamar Buchakjian and Stephen Hauss filed concurrently herewith]<br><br>Date:       May 21, 2008<br>Time:       1:00 p.m.<br>Place:      Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference:       May 19, 2008<br>Trial Date:                        May 27, 2008 |

1

# **TABLE OF CONTENTS**

2

**Page**

3

4   PRELIMINARY STATEMENT ................................................................................. 1

5   ARGUMENT ............................................................................................................. 3

6   I.   HOLLANDER'S ANALYSIS OF INTRINSIC SIMILARITY IS
        PROPER HERE BECAUSE IT IS BASED ON A SURVEY OF THE
7        BRATZ DOLLS' HIGHLY SPECIALIZED TARGET AUDIENCE,
        YOUNG GIRLS ............................................................................................... 3

8
    II.  HOLLANDER'S SURVEY IS PROPER REBUTTAL TESTIMONY ........... 6
9
    III. HOLLANDER'S SURVEY IS RELEVANT TO THE ISSUE OF
10       SUBSTANTIAL SIMILARITY UNDER THE INTRINSIC TEST ............... 8

11  IV.  NONE OF DEFENDANTS' OTHER CHALLENGES TO
        HOLLANDER'S SURVEY JUSTIFIES ITS EXCLUSION UNDER
12       *DAUBERT* ..................................................................................................... 10

13       A.   Defendants' Criticisms of Hollander's Survey Go To Weight, Not
             Admissibility ......................................................................................... 10
14
         B.   In Any Event, None of Defendants' Criticisms of the Hollander
15            Survey Has Merit .................................................................................. 12

16  V.   DEFENDANTS' REQUEST THAT THE COURT EXCLUDE
        REFERENCES TO HOLLANDER'S REPORT BY OTHER
17       EXPERTS IS SIMILARLY FLAWED ......................................................... 15

18  VI.  MATTEL'S OTHER EXPERTS DO NOT ADDRESS THE
        INTRINSIC SIMILARITY TEST ................................................................. 15
19
         A.   McComb's Report Is Admissible ......................................................... 15
20
         B.   Van Patten's Testimony Is Admissible ................................................ 17
21
    CONCLUSION ......................................................................................................... 20

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

*A&M Records, Inc. v. Napster,*
5    2000 WL. 1170106 (C.D. Cal. 2000).................................................................... 11

6  *Aliotti v. R. Dakin & Co.,*
    831 F.2d 898 (9th Cir. 1987)................................................................................. 4
7
  *Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.,*
8    684 F.2d 1316 (9th Cir. 1982)........................................................................ 9, 11

9  *Atari, Inc. v. North American Philips Consumer Electronics Corp.,*
    672 F.2d 607 (7th Cir. 1982).............................................................................. 4
10
  *Bach v. Forever Living Products,*
11    473 F. Supp. 2d 1110 (W.D. Wash. 2007)........................................................ 12

12  *CA Marine Supply Co. v. Brunswick Corp.,*
    649 F.2d 1049 (9th Cir. 1981)............................................................................ 14
13
  *Cavalier v. Random House,*
14    297 F.3d 815 (9th Cir. 2002)............................................................................... 9

15  *Classic Foods Intern. Corp. v. Kettle Foods, Inc.,*
    2006 WL. 5187497 (C.D. Cal. 2006)...................................................... 13, 14, 16
16
  *Clicks Billiards Inc. v. Six Shooters, Inc.,*
17    251 F.3d 1252 (9th Cir. 2001)...................................................................... 11, 12

18  *Data East USA, Inc. v. Epyx, Inc.,*
    862 F.2d 204 (9th Cir. 1988)................................................................................ 9
19
  *Dawson v. Hinshaw Music, Inc.,*
20    905 F.2d 731 (4th Cir. 1990)............................................................................... 5

21  *Ideal Toy Corp. v. Fab-Lu, Ltd.,*
    261 F. Supp. 238 (S.D.N.Y. 1966)...................................................................... 4
22
  *In re Intuit Privacy Litigation,*
23    138 F. Supp. 2d 1272 (C.D. Cal. 2001)............................................................... 6

24  *Kohus v. Mariol,*
    328 F.3d 848 (6th Cir. 2003)............................................................................... 5
25
  *Lyons P'ship v. Morris Costumes, Inc.,*
26    243 F.3d 789 (4th Cir. 2001).......................................................................... 4, 5

27  *Olson v. National Broadcasting Corp.,*
    855 F.2d 1446 (9th Cir. 1988).............................................................................. 9

28

-ii-

*Original Appalachian Artworks, Inc. v. Blue Box Factory (USA) Ltd.*,
   577 F. Supp. 625 (S.D.N.Y. 1983).................................................................. 3

*Polaris Pool Systems v. Letro Products, Inc.*,
   914 F. Supp. 375 (C.D. Cal. 1995)............................................................... 13

*Prudential Insurance Co. v. Gibralter Financial Corp.*,
   694 F.2d 1150 (9th Cir. 1982)........................................................... 10, 11, 14

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990)...................................................................... 10

*Sid & Marty Krofft Television Prods. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977)........................................................................ 4

*Sid & Marty Krofft Television Productions, Inc. v. McDonalds, Corp.*,
   F.2d 1157 (9th Cir. 1977)............................................................................. 10

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997).............................................................. 8, 10, 11

*Stuhlbarg International Sales Co. v. John D. Brush and Co.*,
   240 F.3d 832 (9th Cir. 2001)......................................................................... 11

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004)........................................................................ 19

*Warner Bros. Inc. v. Am. Broad. Cos.*,
   720 F.2d 231 (2d Cir. 1983)....................................................................... 3, 6

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*,
   210 F. Supp. 2d 147 (E.D.N.Y. 2002)............................................................. 6

**Miscellaneous**

J. Thomas McCarthy, 6 <u>McCarthy on Trademarks and Unfair Competition</u> § 32:187
   (4th ed 2008)............................................................................................ 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Kenneth Hollander has conducted a survey that is damning. Conducting his survey consistent with all expert guidelines, Hollander found that a net of more than 91% of young girls—the intended audience for the Bratz dolls— recognized Bryant's drawings as the Bratz dolls. Defendants now move to exclude that survey based on misstatements of basic copyright law. Far from being inadmissible, this well-conducted survey is powerful, admissible evidence that deflates defendants' contentions. There is no reason to exclude it.

First, defendants contend that the Court should exclude Hollander's survey because it pertains to the intrinsic (i.e., "ordinary observer") test for copyright infringement and expert testimony purportedly is not admissible under the intrinsic test. It is well established, however, that expert testimony on intrinsic similarity *is* admissible *where the infringing work is directed at a specialized audience*. Here, it is undisputed that the Bratz dolls are marketed to and used by a specialized audience, young girls. A jury of adults cannot step into the shoes of young girls in evaluating the Bratz dolls' similarity to Bryant's drawings. Because Hollander's survey was directed to this relevant and specialized audience, it is both admissible and highly relevant.

Defendants' argument that the Hollander survey does not address a relevant issue because the survey respondents were not asked to make a side-by-side comparison of Bryant's drawings and the Bratz dolls also lacks merit. That a net of over 91% of the respondents were able to correctly identify Bryant's drawings as Bratz dolls without the benefit of simultaneously viewing a Bratz doll hardly renders the survey irrelevant. If anything, these unaided responses are even more compelling evidence of substantial similarity under the ordinary observer test. Had Bratz dolls also been shown to the respondents, as defendants now demand, defendants undoubtedly would have complained the survey was leading.

1          Defendants also seek to exclude Hollander's survey based on alleged
2  methodological flaws. None of the challenges has merit. More to the point though,
3  under long established Ninth Circuit precedent, those challenges go to the weight to
4  be accorded the survey, not its admissibility. The issues defendants raise may be
5  proper for cross-examination, but they are not a basis for excluding the survey itself.
6  Because the Hollander survey is relevant and admissible, the Court should also deny
7  defendants' derivative request to exclude the portions of the reports to Heather
8  McComb and Nicholas Mirzoeff that refer to the survey.

9          Last, defendants isolate and seek to exclude a few discrete phrases from
10  the reports of two Mattel experts--Heather McComb and Denise Van Patten--on the
11  grounds that those phrases purportedly constitute improper opinion regarding the
12  intrinsic similarity of two works. But these opinions directly rebut opinions of
13  defendants' own experts that go to such issues as (1) the apportionment of damages
14  and (2) the claim that Bryant was a relatively small contributor to the ultimate Bratz
15  doll product. They do not pertain to the similarity of Bratz dolls to Bryant's
16  drawings under the intrinsic test. Moreover, to the extent McComb and Van Patten
17  engage in an analysis of the similarity of the dolls to the drawings, it is an objective
18  analysis that examines discrete protectible elements of the works and therefore
19  pertains to the extrinsic test for substantial similarity, not the intrinsic test.
20  Defendants do not -- and cannot -- dispute that such expert testimony is admissible
21  under the extrinsic test.

22

23

24

25

26

27

28

1

**Argument**

2

3  I.    HOLLANDER'S ANALYSIS OF INTRINSIC SIMILARITY IS PROPER

4        HERE BECAUSE IT IS BASED ON A SURVEY OF THE BRATZ DOLLS'

5        HIGHLY SPECIALIZED TARGET AUDIENCE, YOUNG GIRLS

6

7                Defendants misstate the law when they argue that Hollander's survey

8  may not properly address the intrinsic similarity of Carter Bryant's drawings and

9  Bratz dolls.  Defendants misleadingly argue that courts have "questioned" the use of

10  surveys in copyright cases to determine the similarity of the works, when in reality,

11  the authority defendants cite *declined* to answer the question.  See Warner Bros. Inc.

12  v. Am. Broad. Cos., 720 F.2d 231, 245 (2d Cir. 1983) (excluding plaintiff's expert

13  but stating in dicta that "[w]e need not and do not decide whether survey evidence of

14  the sort tendered in this case would be admissible to aid a jury in resolving a claim

15  of substantial similarity that lies within the range of reasonable factual dispute."  Id.

16  (Motion at 8:3-9.)  The court in Warner Bros. ruled only that, "when a trial judge

17  has correctly ruled that two works are not substantially similar as a matter of law,

18  that conclusion is not to be altered by the availability of survey evidence indicating

19  that some people applying some standard of their own were reminded by one work

20  of the other."  Id.[1]  As explained below, expect testimony under the intrinsic test is

21  admissible -- and is often necessary -- when the infringing work is directed at a

22  specialized audience, here, young girls.

23

24      [1]   Defendants' citation to Original Appalachian Artworks, Inc. v. Blue Box Factory
        (USA) Ltd., 577 F. Supp. 625, 630 (S.D.N.Y. 1983), an out of circuit district court case, is
25      also unhelpful to defendants.  Original Appalachian Artworks relies entirely on Warner
        Bros. for the proposition that surveys are of "limited utility" in establishing substantial
26      similarity.  Moreover, Original Appalachian Artworks did not exclude the survey on that
        basis.  Rather, the court excluded the survey for methodological flaws, including the lack
27      of a control group, which Hollander's survey has.

28

1         The Ninth Circuit has long held that the intrinsic -- i.e., "ordinary

2   observer" -- test for copyright infringement must be evaluated from the perspective

3   of the infringing work's intended audience.  Resolving copyright cases involving

4   works directed at children "demands an even more intrinsic determination" because

5   the analysis must account for "the particular factual issue of the impact of the

6   respective works upon the minds and imaginations of young people."  Sid & Marty

7   Krofft Television Prods. v. McDonald's Corp., 562 F.2d 1157, 1166 (9th Cir. 1977)

8   (superseded by statute on other grounds).  The Ninth Circuit re-affirmed this

9   approach in Aliotti v. R. Dakin & Co., 831 F.2d 898 (9th Cir. 1987), explaining that

10  "[because] children are the intended market for the dolls, we must filter the intrinsic

11  inquiry through the perception of children."  Id. at 902.

12        Indeed, courts hold consistently that the adult-oriented "ordinary

13  observer" test is not appropriate where the infringing work is directed at children

14  because [i]n [the youngsters'] enthusiasm to acquire . . . [the toys] they are certainly

15  not bent upon 'detecting disparities' or even readily observing upon inspection such

16  fine details . . ."  Ideal Toy Corp. v. Fab-Lu, Ltd., 261 F. Supp. 238 (S.D.N.Y.

17  1966).  See also Atari, Inc. v. North American Philips Consumer Electronics Corp.,

18  672 F.2d 607 (7th Cir. 1982) (superseded on other grounds in Scandia Dawn Corp.

19  v. Euroquilt, Inc., 772 F.2d 1423 (7th Cir. 1985)) (differences in characters'

20  appearance in a videogame directed at children were irrelevant because "[v]ideo

21  games . . .appeal to [children,] an audience that is fairly undiscriminating insofar as

22  their concern about more subtle differences in artistic expression"); Lyons P'ship v.

23  Morris Costumes, Inc., 243 F.3d 789, 803 (4th Cir. 2001) ("by considering the

24  perspectives of young children in the substantial-similarity analysis, the potential

25  liability for infringement might tend to broaden, given the reduced ability of young

26  children to distinguish between objectively different items and concepts.")

27        Where, as here, the ordinary observer test does not apply to an intrinsic

28  analysis of the similarity of works because they are directed at specialized

1   audiences, an expert can testify with respect to the intrinsic test.  For instance, in

2   Lyons P'ship., 243 F.3d at 803, the court reversed a trial court's finding of no

3   copyright infringement after a bench trial on grounds the trial court improperly

4   discounted evidence that the target audience -- children -- found the works highly

5   similar.  Likewise, in Kohus v. Mariol, 328 F.3d 848 (6th Cir. 2003), the court held

6   "in cases where the audience for the work possesses specialized expertise that is

7   relevant to the purchasing decision and lacking in the lay observer, the trier of fact

8   should make the substantial similarity determination from the perspective of the

9   intended audience.  Expert testimony will usually be necessary to educate the trier of

10   fact in those elements for which the specialist will look."  Similarly, Dawson v.

11   Hinshaw Music, Inc. 905 F.2d 731, 736 (4th Cir. 1990) reversed judgment for

12   plaintiff after a bench trial and remanded the case for a determination whether "the

13   intended audience . . . possesses specialized expertise, relevant to the purchasing

14   decision, that lay people would lack."  The Dawson court explained that, if the target

15   audience is not represented by the lay public, then the trial court's inquiry "may

16   include, and no doubt in many cases will require, admission of testimony from

17   members of the intended audience or, possibly, from those who possess expertise

18   with reference to the tastes and perceptions of the intended audience."  Id. See also

19   Robert C. Osterberg and Eric C. Osterberg, SUBSTANTIAL SIMILARITY IN COPYRIGHT

20   LAW, § 16:1 (courts have "allowed experts to present opinions concerning

21   substantial similarity when the works at issue involve specialized or complex

22   subject matter."); cf. id. at § 16:2 (present sense impressions of ordinary observers

23   may be admissible on the issue of substantial similarity).

24            Here, it is undisputed that the Bratz dolls are marketed predominately,

25   if not exclusively, to 8- to 13-year old girls.  (Buchakjian Decl.[2], Ex. 14

26

27        [2]   All citations to the "Buchakjian Decl." refer to the Declaration of Tamar Buchakjian
     dated April 28, 2008 filed concurrently herewith.

28

1  (Defendants' Copyright Jury Instructions, Phase I-B, Instruction 9C, stating that "the

2  'intrinsic' test considers whether a reasonable person (or in this case, a discerning 8-

3  12 year-old girl) would perceive a substantial similarity in the 'total concept and feel'

4  of each work.").)  An ordinary juror -- who, to state the obvious, will not be a young

5  girl -- may either focus improperly on minor details that are irrelevant to children or

6  may not perceive the differences or similarities that would be obvious to the Bratz

7  dolls' target customers.  See Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp., 210

8  F. Supp. 2d 147 (E.D.N.Y. 2002) ("[A]n ordinary 80 year old judge is bound to see

9  a 48 inch rag doll somewhat differently than an ordinary 8 year old child. . . . [O]ne

10  need not speculate unduly to conclude that the ordinary youngster would name each

11  of the dolls, see in their faces and postures very different personalities, and have no

12  difficulty at all in pointing to differences he or she perceived to be significant. Or,

13  alternatively, one could imagine the child being even less discerning than adults.").

14  As such, the Court should admit Hollander's opinions, which contain an analysis of

15  the intrinsic similarity of Bryant's drawings and Bratz dolls from the unique

16  perspective of young girls.[3]

17

18  II.    HOLLANDER'S SURVEY IS PROPER REBUTTAL TESTIMONY

19

20        Independently, Hollander's survey is admissible to rebut defendants'

21  expert's testimony.  Defendants assert in the preliminary statement that Hollander's

22  report is improper rebuttal, but they do not make any such argument or provide any

23  support for that assertion in the body of the motion, and no further argument is

24  permitted on reply.  (Corey Dec., Ex. 35 (Order re Motions Heard on June 11, 2007, at

25  31, n. 7 (citing and quoting In re Intuit Privacy Litigation, 138 F. Supp. 2d 1272, 1275 n.3

26  ─────────────────────

27  [3]   Warner Bros. Inc. v. Amer. Broad. Cos., Inc., 720 F.2d 231, 245 (2d Cir. 1983),
cited by defendants, is easily distinguishable because it did not involve infringing works

28  (footnote continued)

1   (C.D. Cal. 2001) ("this court does not consider arguments raised anew for the first time in

2   a reply brief as to do so would unfairly deny the non-moving party an opportunity to

3   respond.").)  Further, any such suggestion, were it to be made, would be incorrect.

4   Hollander's survey is admissible because it is proper rebuttal to the reports

5   submitted by defendants' experts Mary Bergstein and Robert Tonner.  Bergstein and

6   Tonner's reports contend that Bryant's drawings are not substantially similar to the

7   Bratz dolls and that the drawings contain only a part of the artistic expression of the

8   dolls.  (Proctor decl.,[4] Ex. 55 (Bergstein Report) at 23 (stating that Bratz ████████

9   ████████████████████████████████████████████████████████████████

10  ████████████████████████████████); Proctor Decl., Ex. 52

11  (Tonner Report) at 12-14, 19 (stating that, ████████████████████████

12  ████████████████████████████████████ and ████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████).

15        Hollander's survey rebuts these opinions by demonstrating that the

16  works are highly similar, as shown by the fact that a net of more than 91% of the

17  respondents (92.1% overall) shown Bryant's drawings identified them as looking

18  like Bratz dolls.

19

20

21

22

23

24

25

26  directed predominately, if not exclusively, toward children.

27        [4]   All citations to the "Proctor decl." refer to the Declaration of B. Dylan Proctor filed April 14, 2008 in support of Mattel's motions in limine.

28

III.   HOLLANDER'S SURVEY IS RELEVANT TO THE ISSUE OF
      SUBSTANTIAL SIMILARITY UNDER THE INTRINSIC TEST

Defendants argue, without citing any authority, that Hollander's survey does not address a relevant issue because the participants were not asked to make a side-by-side comparison of Bryant's drawings and Bratz dolls.[5]  (Motion at 6:24-26.)

However, the participants in Hollander's survey had all the information they needed to respond properly.  They all saw the Bryant drawings in the survey and they all resided in a household in which a Bratz doll had been purchased in the year preceding the survey.  A net of 91.1% of all respondents (92.1% overall) identified Bryant's drawings as looking like Bratz dolls.  If anything, the respondents' unaided recognition of Carter Bryant's drawings as Bratz dolls is more relevant to the issue of substantial similarity under the ordinary observer test than a side-by-side comparison, which could be challenged as leading.  To the extent defendants contend otherwise, that is an issue for the jury.

Second, defendants criticize Hollander's use of the term "looks like" in the question the children were asked to respond to rather than the legal terminology "substantially similar in their total concept and feel."  (Motion at 7:1-17.) Defendants cite no case holding that the language of survey questions must be identical to the language of the legal standard.  Courts routinely admit surveys on legal issues such as likelihood of confusion and secondary meaning without using those legal terms in the questions asked.  See Southland Sod Farms v. Stover Seed

---

[5]  Defendants even suggest that Hollander did not show Bryant's drawings to the survey participants.  (Motion at 6:26-7:1.)  Defendants know better.  The Bryant drawings used in the Hollander survey are among the Bryant drawings to which Mattel asserts copyright protection.  (Zeller Decl. Ex. 94 (color copy of Hollander report with pictures); Zeller Decl. Ex. 95 (copies of Bryant's drawings submitted to copyright office with related copyright certificates).

1  Co., 108 F.3d 1134, 1143 (9th Cir. 1997) ("the multiple choice question asking
2  whether or not Bonsai is preferable to other turfgrass products is probative on
3  whether the advertisements influenced consumers' purchasing decisions."); Anti-
4  Monopoly, Inc. v. General Mills Fun Group, Inc., 684 F.2d 1316, 1324 (9th Cir.
5  1982) (rejecting argument that "the design of the questions . . . (focused) on
6  supplying the inquirer a 'name,' without regard to whether the principal significance
7  of the name supplied was 'its indication of the nature or class of an article, rather
8  than an indication of its origin.'").  To be sure, if Hollander had used such legal
9  terminology in his survey questions, defendants would have objected to it on those
10 very grounds.  If there is any difference between the two phrases, it is that the
11 question Hollander did use is understandable to 8- to 13-year-old girls (the
12 demographic of the survey participants) whereas the question that defendants
13 propose would be likely be unintelligible to the children participating in the survey.
14 In any event, defendants' argument goes to the weight, not admissibility, of
15 Hollander's survey.

16        Third, defendants criticize Hollander for failing to filter
17 "noncopyrightable elements" analyzing the similarity of Bryant's drawings to the
18 Bratz dolls.  (Motion at 6:23-7:17.)  Defendants incorrectly cite Cavalier v. Random
19 House, 297 F.3d 815, 825 (9th Cir. 2002), for the proposition that an unfiltered
20 intrinsic analysis is improper.  To the contrary, Cavalier and other well-established
21 Ninth Circuit authority all approve an "unfiltered" intrinsic analysis.  Id.
22 ("[U]nprotectible elements should not be considered when applying the *extrinsic* test
23 to art work. 'This does not mean that at the end of the day, when the works are
24 considered under the intrinsic test, they should not be compared as a whole.'")
25 (emphasis added); see also Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 208
26 (9th Cir. 1988) ("Analytic dissection ... is not appropriate under [the intrinsic] test
27 because it distracts a reasonable observer from a comparison of the total concept and
28 feel of the works"); Olson v. National Broadcasting Corp., 855 F.2d 1446, 1449 (9th

1  Cir. 1988) ("Although analytic dissection and expert testimony are appropriate
2  under the extrinsic test, they are not appropriate under the intrinsic test.");[6] Sid &
3  Marty Krofft Television Productions, Inc. v. McDonalds, Corp., F.2d 1157, 1164
4  (9th Cir. 1977) (under the intrinsic test  "analytic dissection [is] not appropriate");
5  cf. Shaw v. Lindheim, 919 F.2d 1353, 1357 (9th Cir. 1990) (the intrinsic test is no
6  more than the visceral reaction of the lay observer, and as such is "virtually devoid
7  of analysis.").  In addition, as defendants know, Mattel contends that each and every
8  element of the Bratz drawings is protected.  That defendants may contend otherwise
9  is not a basis for excluding Hollander's survey.

10

11  IV.    NONE OF DEFENDANTS' OTHER CHALLENGES TO HOLLANDER'S
12         SURVEY JUSTIFIES ITS EXCLUSION UNDER _DAUBERT_

13

14         A.    Defendants' Criticisms of Hollander's Survey Go To Weight, Not
15               Admissibility

16               Defendants' remaining challenges to the Hollander survey relate to
17  purported flaws in methodology.  As discussed below, none of defendants' criticisms
18  are meritorious.  Moreover, in the Ninth Circuit, such criticisms are irrelevant at this
19  procedural juncture.  That is because the Ninth Circuit has long held that survey
20  evidence generally should not be excluded on the basis of alleged methodological
21  flaws.  Even if such flaws exist, the Ninth Circuit holds that "[u]nlike novel
22  scientific theories, a jury should be able to determine whether asserted technical
23  deficiencies undermine a survey's probative value."  Southland Sod Farms, 108 F.3d
24  at 1143 n.8; Prudential Insurance Co. v. Gibralter Financial Corp., 694 F.2d 1150,

25

26         [6] As explained above, expert testimony with respect to the intrinsic test is
27  appropriate here because the Bratz dolls are directed at a highly specialized
    audience.
28

1   1156 (9th Cir. 1982) ("technical unreliability goes to weight accorded a survey, not

2   its admissibility").

3        A long line of cases in the Ninth Circuit has endorsed the rule that

4   claimed methodological flaws in a survey go to weight, not admissibility. See

5   Stuhlbarg International Sales Co. v. John D. Brush and Co., 240 F.3d 832, 840 (9th

6   Cir. 2001) (survey that failed to explain its design, questions or methodology

7   admitted); Anti Monopoly, Inc., 684 F.2d at 1325, cert. denied, 459 U.S. 1227

8   (1983) (district court's exclusion of survey because it was "overwhelming prone to

9   errors of subjective grading and other methodological deficiencies abound"

10   overturned); A&M Records, Inc. v. Napster, 2000 WL 1170106 at 7-8, (C.D. Cal.

11   2000), reversed in part on other grounds, 293 F.3d 1004 (9th Cir. 2001) (refusing to

12   exclude survey that was of "dubious reliability and value" and explaining that "the

13   Ninth Circuit has expressed confidence in a jury's ability to decide whether asserted

14   technical deficiencies undermine the probative value of non scientific expert

15   studies"); Southland Sod Farms, 108 F.3d at 1143 (survey with methodological

16   flaws such as leading questions admitted).

17        The Ninth Circuit has rejected attempts to introduce different rules

18   regarding survey evidence from other circuits for nearly 20 years. In Prudential Ins.

19   Co. of Am., 694 F.2d at 1156, the court explicitly rejected a contrary rule from the

20   Second Circuit. The defendants in A&M Records v. Napster, like defendants here,

21   argued that alleged technical flaws should result in exclusion of a survey. The court

22   held that this "misreads Ninth Circuit case law on the impact of Daubert on

23   methodological flaws in surveys." The court reiterated the Ninth Circuit rule that

24   challenges to methodology go to weight, not admissibility. See A & M Records,

25   2000 WL 1170106 at *3.

26        This rule was reaffirmed by the Ninth Circuit in Clicks Billiards Inc. v.

27   Six Shooters, Inc., 251 F.3d 1252, 1262-1264 (9th Cir. 2001). In that case, the

28   Ninth Circuit held, based primarily on the survey presented by the plaintiff, that

1  "Clicks introduced substantial evidence tending to show that the trade dress of its
2  pool halls had attained secondary meaning." Id. at 1262. The Court made clear in
3  so holding that "[s]uch surveys while often subject to criticism and varying
4  interpretations, are a routine and well established feature of trade mark practice" and
5  that "'[t]echnical unreliability'" as well as "issues of methodology, survey design,
6  reliability, the experience and reputation of the expert, critique of conclusions, and
7  the like" all factors that "go to the weight of the survey rather than its
8  admissibility." Id. (quoting Prudential, 694 F.2d 1150, 1156).

9       Defendants' criticisms of the Hollander survey are exactly the types of
10  challenges that the Ninth Circuit has held are to be the province of the jury. They
11  are not a basis for excluding it.

12       B.    In Any Event, None of Defendants' Criticisms of the Hollander Survey
13              Has Merit

14       Defendants criticize the Hollander survey on the grounds that it was
15  conducted "on-line with no mechanism to verify that the respondents actually fit the
16  purported [demographic] profile" of girls 8- to 13-year-old girls. (Motion at 8:15-
17  25.) In fact, however, the survey employed extensive screening procedures and the
18  respondents were recruited by a respected Internet interviewing firm, Greenfield
19  Online, which has been used by Mr. Hollander on many occasions. See Buchakjian
20  decl., Ex. 94 (Hollander Report) at ¶¶ 20-22.) Moreover, defendants fail to cite to a
21  single case in the Ninth Circuit in which a survey was excluded based on a
22  purported lack of validation of survey responses. In fact, in Bach v. Forever Living
23  Products, 473 F. Supp. 2d 1110 (W.D. Wash. 2007), the court accepted an Internet
24  survey conducted by the same survey expert defendants seek to exclude here, Mr.
25  Hollander, and specifically held that defendant's objection to Hollander's purported
26  lack of "validation" did not preclude admission of the survey. Id. at 1115-16.

27       Defendants also quarrel with the control used in the Hollander survey,
28  claiming that the fact that only 9.2% of the control group correctly identified the

1  control drawings as Cherry Merry Muffin dolls shows that there was "something" --

2  though they fail to indicate what -- was fundamentally wrong with the design of the

3  survey. (Motion at 8:26-9:9). Defendants misconstrue the purpose of a control.

4  The purpose of the control group is to determine whether Bratz doll responses in the

5  test group are the result of so-called "noise" such as guessing or simply giving the

6  name of a well known brand. See J. Thomas McCarthy, 6 McCarthy on Trademarks

7  and Unfair Competition § 32:187 (4th ed 2008) ("The amount of noise can usually

8  only be determined by asking control questions which form a basis for comparison

9  to key questions."). The significance of the control group is not how many

10  respondents correctly identified Cherry Merry Muffin drawings as Cherry Merry

11  Muffin dolls but rather how many of the respondents incorrectly identified them as

12  Bratz dolls. Here, only 1% of the control group respondents identified the Cherry

13  Merry Muffin drawings as Bratz dolls.[7]

14         In any event, defendants fail to cite any case in the Ninth Circuit, where

15  survey evidence was excluded based on criticisms regarding the selection of a

16  proper control. To the contrary, in Classic Foods Intern. Corp. v. Kettle Foods, Inc.,

17  2006 WL 5187497 at *4 (C.D. Cal. 2006), the court rejected the defendant's

18  argument that a survey was inadmissible because it had an improper control group.

19  See also Polaris Pool Systems v. Letro Products, Inc., 914 F. Supp. 375, 377-78

20  (C.D. Cal. 1995) (court admitted confusion survey even though it failed to take steps

21  to "insure that only confusion triggered by similarities to plaintiff's *protectible*

22  material" was measured because any potential deficiency only went to the weight of

23  the evidence).

24

25

26     [7]  In addition to being not relevant, the number of control group respondents who failed to correctly identify the Cherry Merry Muffin drawings as Cherry Merry Muffin

27  dolls is not particularly surprising given that respondents were (appropriately) not screened for purchases of or familiarity with Cherry Merry Muffin dolls.

28

1    Defendants argue that the survey was also "highly leading" because
2  Hollander "gives no assurance that the list of dolls provided for respondents to
3  choose from contained any doll brands that look anything like BRATZ, or are even
4  currently available and marketed to the same types of consumers as the BRATZ
5  dolls." (Motion at 9:10-13.) Defendants fail to explain how the list of seven dolls
6  that respondents were given to choose from, which included Barbie dolls as well as
7  the options "none of the above" and "don't know," rendered the survey "highly
8  leading." (Zeller Decl., Ex. 94 (Hollander Report) at 12.) Furthermore, the Ninth
9  Circuit has long held that any purported shortcomings in "the format of the question
10  or the manner in which . . . the survey was taken" bear only "on the weight of the
11  evidence, not its admissibility." CA Marine Supply Co. v. Brunswick Corp., 649
12  F.2d 1049, 1055 n.10 (9th Cir. 1981). See also Prudential Insurance Co. 694 F.2d at
13  1156 (rejecting complaints about the "self serving" questions asked in the survey,
14  and adopting the "majority view" that the evidence should be admitted in such
15  matters considered, if at all, only in assessing weight); Classic Foods Intern. Corp.,
16  2006 WL 5187497 at *4 (denying motion in limine to exclude survey based on
17  purported methodological flaws including improper control group).

18    Finally, defendants argue that "nothing in the survey allowed Hollander
19  to know whether the participants who checked off the entry for 'Bratz' were thinking
20  of the BRATZ dolls themselves." This criticism fails because the list respondents
21  were given to choose from included "Bratz dolls," not simply "Bratz." (Zeller Decl.,
22  Ex. 94 (Hollander Report) at 12.) If defendants wish to contend that respondents
23  may have had something other than Bratz dolls in mind, they can argue that to the
24  jury. It is not a basis for excluding the survey all together. In addition, even if, as
25  defendants may seek to argue, any respondents were thinking of Bratz character art
26  when responding to the survey, the survey would be relevant evidence that the
27  packaging art itself is substantially similar to and therefore infringes Bryant's
28  drawings.

-14-

1  V.    DEFENDANTS' REQUEST THAT THE COURT EXCLUDE
2        REFERENCES TO HOLLANDER'S REPORT BY OTHER EXPERTS IS
3        SIMILARLY FLAWED
4
5        Defendants' request to exclude references to the Hollander survey by
6  two of Mattel's experts, Nicholas Mirzoeff and Heather McComb, derives from the
7  argument that Hollander's survey is inadmissible.  For the same reasons that
8  Hollander's survey is admissible, the Court should permit other experts or witnesses
9  testifying in this case to cite to Hollander's survey.
10
11 VI.   MATTEL'S OTHER EXPERTS DO NOT ADDRESS THE INTRINSIC
12       SIMILARITY TEST
13
14       Defendants also seek to exclude portions of the opinions of Mattel
15 experts Denise Van Patten and Heather McComb on the grounds that those experts
16 purportedly analyze the intrinsic similarity of Bryant's drawings and Bratz dolls.
17 McComb and Van Patten, however, do not conduct an analysis of intrinsic
18 similarity.
19
20       A.    McComb's Report Is Admissible
21       Defendants' five lines addressing McComb's report fail to show that
22 McComb's analysis falls under the intrinsic test.   Defendants omit the context of the
23 McComb report.
24       McComb rebuts the report of defendants' experts Robert Tonner and
25 Mary Bergstein.  Specifically, Tonner opines that Bryant's drawings contributed
26 only minimally to the design of the Bratz dolls and that other MGA employees
27 contributed significantly to the look of the doll.  Similarly, Bergstein opines that
28 Bratz were developed with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Proctor

1  Decl., Ex. 55 (Bergstein Report).)  McComb, however, concludes that the Bratz doll

2  ████████████████████████████████████████████████████████

3  (Buchakjian Decl., Ex. 93 (McComb Report) at 3.

4     McComb begins her analysis by stating that MGA telegraphed a desire

5  to faithfully execute Bryant's drawings by its actions in the Fall of 2000.  (*Id.* at 4-5)

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10  McCombs adds that this is a typical approach that a company will take when it

11  comes across a toy design that has "Toy Magic" that the company wants to re-create

12  in the form of a toy.  (*Id.* at 3.)  McComb discusses the elements of doll design and

13  development, including the sculpting and the engineering & tooling.  McComb

14  contends, based on the development process, that ████████████████████

15  ████████████████████████████████ and that Bryant's contributions to them

16  were of the utmost importance.  (*Id.* at 9-10.)

17     The opinions do not relate to the issue of copyright infringement per se,

18  but rather one that relates to damages.  Defendants use Tonner's opinion that Bryant

19  is responsible for only a small part of the Bratz design to support their argument

20  regarding the apportionment of profits from the sale of Bratz products.  Specifically,

21  defendants' damages expert, Paul Meyer, relies on Tonner's opinions regarding

22  Bryant's relative contribution to the design of Bratz dolls in forming his opinion

23  regarding the apportionment of profits attributable to the infringement of the Bryant

24  drawings.  (Proctor Decl., Ex. 23 (Meyer Report) at ¶¶ 32-36, 158-59 (explaining

25  portion of Bratz he attributes to Bryant's work and explaining measures of profits

26  based on that apportionment).)  Because McComb's report rebuts defendants'

27  arguments regarding Bryant's relative contribution to the design of Bratz dolls (and

28  the apportionment of profits), rather than defendants' arguments regarding copyright

1  infringement, the intrinsic/extrinsic framework does not apply and the Court should

2  allow Mattel to introduce McComb's testimony in its entirety.[8]

3          Defendants take issue with a phrase in McComb's report stating that the

4  two works are "strikingly similar." Defendants claim that McComb "could only be

5  misunderstood by the jury as addressing the 'intrinsic' analysis." (Motion at 5:10-

6  12.) But the jury will readily understand that McComb's conclusion is based on the

7  rest of her analysis. The Court should not strike McComb's two-word conclusion.

8          In any case, if the Court finds that any part of McComb's opinion

9  should be excluded because it constitutes an improper analysis of the similarity of

10  the two works under the intrinsic test (a premise Mattel strongly disputes), then the

11  Court must necessarily find that the portions of Tonner's opinions that McComb

12  rebuts are similarly inadmissible. Therefore, the Court should admit McComb's

13  opinions, but if it does not, it should also exclude the Bergstein and Tonner opinions

14  that she rebuts as well. It would be unfair and prejudicial to permit only defendants

15  to offer expert evidence on those topics.

16

17      **B.**    <u>Van Patten's Testimony Is Admissible</u>

18          Defendants' conclusory analysis of Denise Van Patten's expert report

19  fares no better. Defendants give a one-sentence excerpt of Van Patten's report,

20  which states that, "[t]he unique look and concept of Bratz clearly can be seen in the

21  Carter Bryant drawings." (Motion at 5:12-15.) That opinion directly rebuts the

22  conclusions of one of MGA's experts, Mary Bergstein. For example, Bergstein

23  opines that the Bratz doll have an "inter-ethnic aesthetic" that was ██████████

24  ████████████████████████████████ and that ██████████

25  ────────────────────────────────────────

26  [8]  Notably, defendants' motion only addresses the conclusion in McComb's
report that the Bratz doll "is <u>strikingly similar</u> to Mr. Bryant's original Bratz

27  (footnote continued)

28

1 ███████████████ (Proctor Decl., Ex. 55 (Bergstein Report) at 15.  Bergstein

2 also opines that there were a number of other inspirations for Bratz.  (Id. at 15-22

3 (referring to various elements of popular culture including television shows and

4 other media).)  The crux of Van Patten's opinion is that at the time of their release,

5 while various features of Bratz dolls were reflective of influences already present in

6 the world at large, in the doll world, the Bratz dolls and their unique features were

7 quite a departure from other dolls available at that time.  (Compare Buchakjian

8 Decl., Ex. 92 (Van Patten Report) 6-7 with Proctor Decl., Ex. 55 (Bergstein Report

9 at 14 ███████████████████████████████████

10 ███████████████████████████████████████

11 ████████████████████████████████████

12 ████████████████████████ Thus, Van Patten's report meets

13 Bergstein's head-on.  Van Patten first agrees that "multi-ethnicity" is one of the key

14 features of the Bratz doll and then adds -- in contrast to Bergstein -- that Bryant's

15 drawings ████████████████████ (Buchakjian Decl., Ex. 92 (Van

16 Patten Report) at 7-8.)  In sum, Bergstein opines that Bratz (unlike Bryant's

17 drawings) look like real people of the current era or at least collection of features

18 pulled out of popular culture, whereas Van Patten opines that the Bratz dolls have a

19 distinct collection of features that were present in the drawings that were made by

20 Bryant in the course of designing them.  (Id. at 7-8.)

21 Thus, contrary to the slim description in defendants' motion, Van

22 Patten's report is an analysis of the extrinsic similarity of Bryant's drawings and the

23 Bratz dolls and is proper rebuttal.  The analysis relates to extrinsic similarity

24 because it focuses on nine unique defining expressive characteristics of the Bratz

25 doll that she opines are the characteristics that make Bratz a landmark doll.  The

26 _____

27 drawings."  (Motion at 5:6-10 (emphasis in motion, not in report.)  All the rest of her
proffered testimony is not challenged.

28

1  characteristics are: (a) very large heads; (b) Large, oversized eyes and lips &
2  minimized nose; (c) tiny torso; (d) long legs; (e) large, snap-off feet; (f) multi-
3  ethnicity; (g) attitude; (h) flashy lifestyle; and (i) urban, trendy, edgy clothing. (Id.
4  at 7 (capitalization omitted).) Van Patten's analysis of these nine characteristics
5  exemplifies the extrinsic similarity test.

6       Indeed, defendants' own case authority reveals that courts will permit
7  an expert to state a view that two artistic works are similar when that view is based
8  on the expert's objective analysis of the two works' characteristics. See Swirsky v.
9  Carey, 376 F.3d 841, 847-49 (9th Cir. 2004) (reversing summary judgment on
10  grounds district court improperly excluded testimony of plaintiff's expert
11  musicologist where expert conducted objective, elemental analysis). Swirsky found
12  that the testimony of plaintiff's expert was proper even though the court also
13  acknowledged that the expert's methodology "does concentrate on how the two
14  choruses sound to his expert ears" as well as the musical elements of the two
15  choruses Id. at 847.

16       Defendants ignore Van Patten's 9-factor test and focus only on
17  Van Patten's conclusion from her analysis that "[t]he unique look and concept of
18  Bratz clearly can be seen in the Carter Bryant drawings." Neither the word "look"
19  nor the word "concept" refer to anything outside the bounds of the nine
20  characteristics Van Patten enumerates and objectively evaluates. The jury will
21  understand that Van Patten's conclusion regarding the similarity of the drawings and
22  the dolls is based on the objective elemental analysis throughout her report.

23       In any event, Van Patten's report is highly relevant to another highly
24  contested issue in this case: the proper scope of protection that the Copyright Act
25  affords to Bryant's drawings and the Bratz dolls. The parties briefed this issue at
26  length upon Mattel's motion for partial summary judgment. In brief, Mattel
27  contends that Bryant's drawings receive full protection of the Copyright Act. MGA
28  contends -- contrary to its prior representations to numerous judicial tribunals -- that

1  Bryant's drawings are entitled only to "thin" protection because they are merely a

2  compilation of elements of pre-existing works. (Buchakjian Decl., Ex. 99 (Menell

3  Report) at ¶ 35.)  Van Patten's opinions that no other doll or drawing had previously

4  featured the specific original combination of various elements, thus rebut

5  defendants' contention that Bryant's drawings are not fully protectible.  To the extent

6  this issue is left for the jury, Van Patten can testify to it.[9]

7

8                           **Conclusion**

9               For all the foregoing reasons, Mattel respectfully requests that the

10  Court deny in its entirety defendants' Motion *in limine* No. 8 to Strike Expert Report

11  of Kenneth Hollander and Sections of Expert Rebuttal Reports of Heather McComb,

12  Denise Van Patten, and Nicholas Mirzoeff.

13

14  DATED:  April 28, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

15

16                            By_____

17                               John B. Quinn
                                 Attorneys for Plaintiff
18                               Mattel, Inc.

19

20

21

22

23

24

25

26  [9]  To the extent the Court finds that Van Patten analyzed intrinsic similarity and must
27  be excluded, the Court must exclude the corresponding portions of the Bergstein and
     Tonner reports for similar reasons.
28

MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 8