1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10              EASTERN DIVISION

11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)
12 | Plaintiff, | Consolidated with
   | | Case No. CV 04-09059 and
13 | vs. | Case No. CV 05-02727
14 | MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson
15 | Defendant. | **[PUBLIC REDACTED]** MATTEL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO STRIKE THE EXPERT REPORTS AND TESTIMONY OF RALPH OMAN AND JOHN ALEX
16 | |
17 | AND CONSOLIDATED ACTIONS |
18 | |
19 | | [Notice of Lodging and Declarations of Tamar Buchakjian and Stephen Hauss filed concurrently]
20 | |
21 | | Date: May 21, 2008
22 | | Time: 1:00 p.m.
   | | Place: Courtroom 1
23 | |
   | | **Phase 1**
24 | | Pre-Trial Conference: May 19, 2008
   | | Trial Date: May 27, 2008
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 4

I.      THE INQUIRY ENVISIONED BY RULE 702 IS A FLEXIBLE ONE ........... 4

II.     THE BULK OF PROFESSOR OMAN'S AND MR. ALEX'S
        OPINIONS ARE INDISPUTABLY ADMISSIBLE ........................................ 5

III.    MR. ALEX'S OPINIONS ARE NOT BASED ON MGA'S "INTENT" ........... 7

IV.     PROFESSOR OMAN IS QUALIFIED AS AN EXPERT ON THE
        COPYRIGHT REGISTRATION PROCESS ..................................................... 9

V.      TO THE EXTENT HE HAS DONE SO, PROFESSOR OMAN IS
        ALSO QUALIFIED TO OPINE ON HONG KONG LAW ............................ 11

VI.     PROFESSOR OMAN'S OPINIONS REGARDING BRYANT'S
        DRAWINGS AND THE SUPPLEMENTARY REGISTRATIONS ARE
        BASED ON HIS EXPERIENCE AND WELL WITHIN HIS SCOPE OF
        EXPERTISE .................................................................................................. 14

        1.      It Is Appropriate to Use Language the Jurors Can
                Understand ........................................................................................ 14

        2.      Professor Oman's Experience Qualifies Him to Describe
                How "Sophisticated" Companies Register Copyrights ................ 15

VII.    PROFESSOR OMAN'S OPINIONS ARE NOT BASED ON SAMIR
        KHARE'S TESTIMONY ............................................................................... 16

VIII.   PROFESSOR OMAN'S OPINIONS ARE NOT BASED ON MGA'S
        "INTENT" ...................................................................................................... 18

CONCLUSION ....................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

Andrews v. E.I. Du Pont De Nemours and Co.,
447 F.3d 510 (7th Cir. 2006)...................................................................... 17

Application of Chase Manhattan Bank,
191 F. Supp. 206 (S.D.N.Y. 1961)............................................................ 14

Bailey v. Allgas, Inc.,
148 F. Supp. 2d 1222 (N.D. Ala. 2000) ................................................... 16

Boucher v. U.S. Suzuki Motor Corp.,
73 F.3d 18 (2d Cir. 1996)......................................................................... 17

Carballo-Rodriguez v. Clark Equip. Co.,
147 F. Supp. 2d 66 (D.P.R. 2001)............................................................ 13

Classic Foods Int'l Corp. v. Kettle Foods, Inc.,
No. SACV 04-725 CJC (Ex),
2006 WL 5187497 (C.D. Cal.  March 2, 2006) ........................................ 4

Competitive Techs. v. Fujitsu Ltd.,
286 F. Supp. 2d 1161 (N.D. Cal. 2003) ..................................................... 9

Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co.,
2003, No. CV 00-1693-PA, WL 23715981, at *2 (D. Or. 2003)...........................11

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
43 F.3d 1311 (9th Cir. 1995)..................................................................... 16

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993) ................................................................................... 4

Davis v. Combustion Eng'g, Inc.,
742 F.2d 916 (6th Cir. 1984)...................................................................... 4

Diomed, Inc. v. AngioDynamics, Inc.,
450 F. Supp. 2d 130 (D. Mass. 2006) ...................................................... 11

Dukes v. Wal-Mart, Inc.,
222 F.R.D. 189 (N.D. Cal. 2004)............................................................... 4

Halterman v. Legato Software,
2006 WL 889496 (N.D. Cal. 2006)............................................................ 8

Hammett v. Mayer Yacht Services, Inc.,
No. CIV.A. 98-3277,
1999 WL 638584 (E.D. La. Aug. 19, 1999).............................................. 11

07209/2485783.1

Hangarter v. Paul Revere Life Ins. Co.,
236 F. Supp. 2d 1069 (N.D. Cal. 2002),
*rev'd in part on other grounds*, 373 F.3d 998 (9th Cir. 2004) .......................... 9, 19

In re Initial Public Offering Sec. Litig.,
174 F. Supp. 2d 61 (S.D.N.Y. 2001) ................................................................. 13

Inter Medical Supplies, Ltd. v. EBI Medical Systems, Inc.,
181 F.3d 446 (3d Cir. 1999) .............................................................................. 13

Macaluso v. Herman Miller, Inc.,
No. 01 Civ. 11496(JGK),
2005 WL 563169 (S.D.N.Y. March 10, 2005) ..................................................... 17

Mesfun v. Hagos,
No CV 03-02182 MMM (RNBx),
2005 WL 5956612 (C.D. Cal. Feb. 16, 2005) ............................................ 10, 15, 18

MGA Entm't, Inc. v. Multitoy, Inc. et al.,
Case No. CV04-2524 CBM (CWx) (C.D.Cal. April 12, 2004) .............................. 12

Newell Puerto Rico, Ltd. v. Rubbermaid Inc.,
20 F.3d 15 (1st Cir. 1994) .................................................................................. 4

Ratliff v. Schiber Truck Co.,
150 F.3d 949 (8th Cir. 1998) ............................................................................. 4

Stutzman v. CRST, Inc.,
997 F.2d 291 (7th Cir. 1993) ............................................................................. 4

Trull v. Volkswagen of Am.,
187 F.3d 88 (1st Cir. 1999) ............................................................................... 13

United States v. Chang,
207 F.3d 1169 (9th Cir. 2000) ........................................................................... 13

United States v. Cordoba,
194 F.3d 1053 (9th Cir. 1999) .................................................................... 10, 15, 18

United States v. Nacchio,
519 F.3d 1140 (10th Cir. 2008) .................................................................... 7, 13, 15

United Statess v. Schiff,
Crim. No. 06-406 (FSH),
2008 WL 726897 (D.N.J. March 19, 2008) ................................................... 7, 13, 15

**Statutes**

Fed. R. Evid. 402 ........................................................................................... 14

Fed. R. Evid. 702 ............................................................................... 4, 7-10, 13, 15

Fed. R. Civ. Proc. 44.1 .................................................................................... 13

1    Defendant and Counterclaimant Mattel, Inc. ("Mattel") hereby responds

2    to the MGA Parties' Motion *in Limine* No. 9 to Strike the Expert Reports and

3    Testimony of Ralph Oman and John Alex.

4

5    **Preliminary Statement**

6    Lacking any grounds to attack the substance of Professor Oman's

7    opinions or his expert qualifications as the former head of the United States

8    Copyright Office, MGA seeks to exclude his entire report claiming he: (1) improperly

9    opines as to Hong Kong law; (2) occasionally used such descriptive terms as

10   "wholly," "largely," and "sophisticated"; and (3) opined that it is anomalous for

11   sophisticated companies to (i) register the packaging before registering the underlying

12   works that go into the packaging, or (ii) submit multiple supplementary registrations

13   correcting dates in prior copyright filings. Each of MGA's grounds for exclusion is

14   either legally meritless or factually meritless.

15   First, Professor Oman is eminently qualified to opine on the specific

16   issues of Hong Kong law, to the extent he has done so. As part of his responsibilities

17   while Register of Copyrights, Professor Oman worked closely with the Hong Kong

18   member of the British delegation to the World Intellectual Property Organization and

19   is familiar with Hong Kong copyright law. He has given lectures in Hong Kong and

20   elsewhere regarding Hong Kong copyright law, worked on papers regarding

21   comparative analysis of Hong Kong and U.S. copyright law, and regularly reviews

22   literature involving issues of Hong Kong copyright law. Based on his knowledge of

23   Hong Kong copyright law, including that it is a prerequisite that a work must be

24   "original" to be protectable, Professor Oman is qualified to explain to the jury that the

25   sworn statements made by MGA officers in MGA's Hong Kong copyright suits about

26   originality have significance in this case. Indeed, only MGA has itself to blame for

27   its predicament, since it has signaled its intention to attempt to mislead the jury into

28   believing that its repeated representations to courts (and the Copyright Office) that

07209/2485783.1

1 | the Bryant drawings at issue in this case are original, and that the dolls were
2 | derivative of those drawings and were infringed by three-dimensional dolls, are all
3 | essentially meaningless, including under Hong Kong law. Professor Oman's opinions
4 | are well within his scope of expertise as the former Register and principal adviser to
5 | the United States Department of State on international copyright matters.

6 |       Second, the attempt to strike Professor Oman's entire report because he
7 | occasionally uses descriptive terms such as "wholly," "largely," and "sophisticated"
8 | finds no basis in law. Under MGA's erroneous reasoning, any testimony using a
9 | word that is not a term of art in the law would have to be stricken because it might
10 | confuse the jury. Professor Oman, however, does not purport to assign legal value or
11 | importance to the terms "wholly original" work and "largely non-original" work. Just
12 | because he is an expert does not mean Professor Oman is precluded from using
13 | ordinary English words in their everyday, lay sense. Nor does he opine that
14 | "sophisticated" companies should be held to a higher legal standard. Instead, he
15 | simply notes, based on his *experience* working in the Copyright Office, that
16 | "sophisticated" companies such as MGA rarely make the type of mistakes in their
17 | copyright applications that MGA claims were made. That is notable, because it
18 | deflates MGA's claims that it just made a "mistake" when it told the Copyright Office
19 | that, for example, the BRATZ dolls were completed in 2000 -- a fact highly
20 | significant to the timing of Bratz's creation -- an admission which it later "corrected"
21 | to 2001.

22 |       Third, Professor Oman's opinion that it is anomalous for sophisticated
23 | companies to register the packaging before the underlying works or to
24 | submit multiple supplementary registrations correcting dates in prior filings is not
25 | based on MGA's "intent," but on his many years of *experience* as the Register of
26 | Copyrights, a proper basis for expert testimony. This opinion would also be helpful
27 | to the jury because it deflates MGA's claim that when it registered the Bratz doll
28 |

1  design drawings it was intending only to register the packaging for Bratz, not the
2  dolls themselves, and that the dolls are not "derivative" of the drawings.

3        MGA does not challenge the bulk of Professor Oman's opinion regarding
4  the practices and procedures of the Copyright Office.  These are reliable opinions and
5  will be helpful to the jury because the Copyright Office procedures and rules will
6  shed light on MGA's Bratz-related filings which, when understood, are telling
7  admissions.  For example, MGA swore to the Copyright Office, under oath, that the
8  Bratz dolls are "derivative" of Bryant's Bratz drawings, which means that the dolls
9  were "substantially copied" from the drawings.

10        MGA also seeks to strike John Alex's report on the purported basis that
11  Mr. Alex opines that both Carter Bryant and Isaac Larian submitted false declarations
12  to the United States Patent and Trademark Office ("PTO").  MGA claims that this is
13  improper intent opinion.   At the outset, Mr. Alex repeatedly made clear at his
14  deposition that his opinion is not one of "intent." Rather, his opinion, based on his
15  many decades of patent prosecution experience, is that (a) Larian was not, as he
16  represented to the PTO, the sole inventor of Bratz removable feet; (b) as the PTO
17  found and contrary to Larian and Bryant's sworn statements to the PTO, the claims in
18  the patent application were equally applicable to both the first wave of Bratz dolls
19  and the second wave; and (c) Larian and Bryant had a duty of honesty and candor to
20  the PTO that was violated by the above misrepresentations.

21        Because Mr. Alex is indisputably an expert on patent application process
22  and rules, including the duty of honesty owed in submitting patent applications -- not
23  on intentional falsity, as MGA wrongly claims --his opinion is admissible.  Indeed, at
24  bottom, his opinion will establish that, like Larian's statements to the press and others,
25  he represented to the PTO that he (and not Bryant) was the sole inventor of Bratz
26  features that Bryant himself now admits he alone invented.  Such matters are relevant
27  to MGA's, Larian's and Bryant's long-standing pattern of misrepresentations that
28  concealed Bryant's role as the creator of  Bratz, which in turn is relevant to the timing

1   of Bratz's creation, intent and fraudulent concealment, among other matters.  And, in
2   any case, MGA does not challenge those portions of Mr. Alex's opinion regarding
3   the: (1) patent application process; (2) old or obvious inventions; (3) patent claims
4   and negotiations process; or (4) the duty of honesty to the PTO.  Because PTO
5   procedures are notoriously complex, and the meaning of the patent application file
6   wrapper is not self-evident to lay jurors, the opinions of Mr. Alex on these subjects
7   are relevant and would be helpful to the jury.

9                                    **Argument**

11   **I.      THE INQUIRY ENVISIONED BY RULE 702 IS A FLEXIBLE ONE**

12              Federal Rule of Evidence 702 must be interpreted broadly on the basis of
13   whether the use of expert testimony will assist the trier of fact, and any "inquiry
14   envisioned  by  Rule  702 ...  is  a  flexible  one."      Daubert v. Merrell  Dow
15   Pharmaceuticals, Inc., 509 U.S. 579, 591-592, 594 (1993); Davis v. Combustion
16   Eng'g, Inc., 742 F.2d 916, 919 (6th Cir. 1984) (same).  The Court's gatekeeper
17   function is not a substitute for the opposing party's right to test the assumptions
18   underlying the expert witness' testimony on cross-examination.  See, e.g., Ratliff v.
19   Schiber Truck Co., 150 F.3d 949, 955 (8th Cir. 1998) (holding that "the rules of
20   evidence place the full burden of exploration of facts and assumptions underlying the
21   testimony of an expert witness squarely on the shoulders of opposing counsel's cross-
22   examination"); Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 20 (1st Cir.
23   1994) (same).

24              So long as the reasoning and methodology underlying the expert's
25   testimony is reliable, challenges to the expert's skill or knowledge should go to the
26   weight to be accorded the expert's testimony rather than to its admissibility.  See
27   Stutzman v. CRST, Inc., 997 F.2d 291, 296 (7th Cir. 1993); Dukes v. Wal-Mart, Inc.,
28   222 F.R.D. 189, 191-192 (N.D. Cal. 2004); Classic Foods Int'l Corp. v. Kettle

07209/2485783.1

-4-

1 | Foods, Inc., No. SACV 04-725 CJC (Ex), 2006 WL 5187497, at *1, 3-7 (C.D. Cal.
2 | Mar. 2, 2006) (rejecting motion to exclude expert report because any flaws in the
3 | analysis "go to its weight rather than its admissibility") (Cormac, J.).

4

5 | **II.    THE BULK OF PROFESSOR OMAN'S AND MR. ALEX'S OPINIONS**
6 | **ARE INDISPUTABLY ADMISSIBLE**

7 | MGA does not challenge the admissibility of the bulk of Professor
8 | Oman's opinion regarding the practices and procedures of the Copyright Office
9 | relating to: (1) the registration of pictorial, graphic, and sculptural works;[1] (2)
10 | application requirements, including the applicant's obligation to identify the: (i)
11 | nature of the work, (ii) nature of authorship, (iii) date of publication, (iv) copyright
12 | ownership, (v) prior registrations, (vi) whether the work is derivative, and (vii)
13 | certification;[2] (3) deposit requirements;[3] (4) the examination process;[4] (5) the nature
14 | of supplementary registrations;[5] or (6) the meaning or significance of registration
15 | certificates.[6]  Similarly, MGA does not challenge the admissibility of those portions
16 | of Mr. Alex's opinion regarding the: (1) patent application process;[7] (2) old or

17

18

19

20

21 | [1]   Expert Report of Ralph Oman, dated February 11, 2008 ("Oman Report"), at 5,
22 | attached as Exhibit 79 to the concurrently filed Declaration of Tamar Buchakjian
      | ("Buchakjian Dec.").
23 | [2]   Oman Report at 5-13.
      | [3]   Oman Report at 13.
24 | [4]   Oman Report at 13-16.
25 | [5]   Oman Report at 16-17.
      | [6]   Oman Report at 17-18.
26 | [7]   Report of John Alex, dated February 11, 2008 ("Alex Report"), at 5, Buchakjian
27 | Dec. Exh. 80.

28

07209/2485783.1

1    obvious inventions;[8] (3) patent claims and negotiations process;[9] or (4) the duty of
2    honesty and candor to the PTO.[10]

3           Without question, Professor Oman's and Mr. Alex's opinions on these
4    subjects of Copyright Office and PTO procedures are relevant and would be helpful
5    to the jury. For example, Professor Oman's testimony is intended to explain to the
6    jury the significance of registering a work with the Copyright Office, which
7    necessarily entails a representation by MGA that the works are original.[11] This is a
8    fact that may not be self-evident to lay persons, especially given MGA's *post hoc*
9    denials that the registrations mean anything relevant, and warrants expert assistance
10   to be understood and put in context. It is also crucial because it highlights the
11   significance of MGA's registration of Bryant's drawings with the Copyright Office
12   and that MGA did not list any preexisting works on those registrations. Notably,
13   MGA did list Bryant's drawings as preexisting works on its Bratz dolls registrations
14   and represented that the dolls are "derivative" of the drawings, which it now plans to
15   deny to the jury.[12]

16          As another example, Professor Oman's explanation that the proper
17   Copyright Office procedure for registering "packaging" is to submit "the actual
18   packaging or photographs of the packaging,"[13] refutes MGA's claim that when it
19   registered the doll design drawings of Bratz it was merely referencing the packaging
20   for the dolls, but not the dolls themselves.[14]

21

22   _____

23   [8]   Alex Report at 5.
     [9]   Alex Report at 5-6.
24   [10]  Alex Report at 6-7.
     [11]  Oman Report at 17-19.
25   [12]  See Declaration of B. Dylan Proctor in support of Mattel's Motions *in Limine*
26   Nos. 1-13, dated April 14, 2008 ("Proctor Dec."), Vol. VI, Exh. 85, attached as
     Exhibit 7 to the concurrently filed Notice of Lodging.
27   [13]  Oman Report at 21.
28   [14]  Oman Report at 21.

1    Similarly, Mr. Alex's opinion is intended to explain the importance of
2  the "duty of honesty" in the PTO application process, because patents take inventions
3  out of the public domain and '

4                                                  This is crucial because it shows the
5  significance of Isaac Larian's sworn statements to the PTO that he was the original,
6  first, and *sole* inventor of the changeable feet for Bratz.

7    It is well established that expert testimony is admissible if it may "assist
8  the trier of fact to understand the facts already in the record, even if all it does is put
9  those facts in context." United States v. Nacchio, 519 F.3d 1140, 1155 (10th Cir.
10  2008); see also United Statess v. Schiff, Crim. No. 06-406 (FSH), 2008 WL 726897,
11  at *18, n. 26 (D.N.J. Mar. 19, 2008) (same); Fed. R. Evid. 702. Here, the opinions of
12  Mr. Alex would be helpful to the jury by putting the facts regarding representations
13  made by Larian, MGA and Bryant to the PTO into context. Accordingly, they should
14  be admitted.

15

16  **III.   MR. ALEX'S OPINIONS ARE NOT BASED ON MGA'S "INTENT"**

17    Contrary to MGA's contention, Mr. Alex does not purport to divine
18  MGA's and Larian's *intent* in making demonstrably false statements in patent
19  applications. At his deposition, Mr. Alex explicitly stated that he did not base his
20  opinion on MGA's intent and that he is "not making a judgment" as to intent.[16]

21

22

23    [15]   Alex Report at 6.
24    [16]   See Deposition of John Alex, dated April 9, 2008, at 56:3-11, 76:15-77:9,
     128:12-22, attached as Exhibit 27 to the concurrently filed Declaration of Stephen
25    Hauss ("Hauss Dec."). Similarly, when asked whether he knew what was in Bryant's
26    head (*i.e.*, his intent) when he signed the patent application, Mr. Alex responded:

27        The answer is I don't know what he had in his mind when he signed
         the application. But I do know that the examiner referred in the prior
28        art discussion to the doll you have in front of you. And I do know that
         (footnote continued)

1   Instead, Mr. Alex's report discusses the "The Patent Application Process," the "Duty
2   of Honesty to the PTO," and the significance of the statements made by Isaac Larian
3   and Carter Bryant to the PTO as part of Larian's patent application for Bratz's
4   changeable footgear. These are all appropriate topics for expert opinion because they
5   are based on facts.

6           For example, Mr. Alex notes that: (1) Carter Bryant submitted a
7   declaration to the PTO stating that the BRATZ dolls were not released until 2002,
8   even though these dolls were released in 2001; and (2) Isaac Larian submitted a
9   sworn statement to the PTO declaring that he was the                    _

10  :                                                     even though the drawings for the
11  dolls depicting that feature were created by Bryant.[17]  It is permissible for an expert to
12  opine that a party was aware of certain facts, as long as that opinion is supported by
13  reliable data. See, e.g., Halterman v. Legato Software, No. C 04-02660 JW, 2006
14  WL 889496, at *2 (N.D. Cal. April 5, 2006) (allowing expert opinion into evidence
15  because it was supported by reliable data); see also Fed. R. Evid. 702.

16          Notably, MGA does not dispute that the data underlying Mr. Alex's
17  opinions is relevant and reliable. Instead, MGA seeks to strike the report because the
18  facts cited by Mr. Alex purportedly "require an inference regarding Mr. Larian's and
19  Mr. Bryant's intent."[18]  But whether a statement is false is a factual observation and
20  does not depend upon the declarant's intent. Based on the undisputed underlying
21  facts, and on his many decades of experience in patent prosecution (which MGA does
22  not challenge), Mr. Alex opines that Bryant's and Larian's declarations contained
23  false statements, and that Bryant and Larian therefore did not satisfy their duty of

24
25          that was not introduced as late as Mr. Bryant said. It was in the first
26          wave or the first introduction of the Bratz doll.
27  Id. at 129:12-22.
        [17]   Alex Report at 8-10.
28      [18]   Motion at 14:2-3.

1   honesty to the PTO.  Because Mr. Alex's opinions are both reliable and helpful to the
2   trier of fact, they should be admitted.[19]

3          Further, at least one District Court in California has allowed expert
4   testimony regarding the intent and motives of defendants under circumstances such as
5   here.  See Hangarter v. Paul Revere Life Ins. Co., 236 F. Supp. 2d 1069, 1089 (N.D.
6   Cal. 2002) (cite omitted), rev'd in part on other grounds, 373 F.3d 998 (9th Cir.
7   2004). ("We can conceive of many ways in which a lay jury, in assessing the conduct
8   and motives of an insurance company in denying coverage under its policy, could
9   benefit from the opinion of one who by profession and experience, was peculiarly
10  equipped to evaluate such matters in the context of similar disputes.").  Here, in
11  assessing  Larian's and Bryant's false sworn statements to the PTO, the jury could
12  likewise benefit from the opinion of one, who by profession and experience, is
13  particularly able to evaluate such matters in the context of the thousands of other
14  patent applications that he has prosecuted and supervised.  MGA fails to cite any
15  authority from within the Ninth Circuit to the contrary.  Accordingly, even if
16  Mr. Alex's opinions were based on defendants' "intent," they would still be
17  admissible.

18

19  **IV.   PROFESSOR OMAN IS QUALIFIED AS AN EXPERT ON THE**
20          **COPYRIGHT REGISTRATION PROCESS**

21          Rule 702 permits an expert witness "qualified . . . by knowledge, skill,
22  experience, training, or education" to testify "when specialized knowledge will assist
23  the trier of fact to understand the evidence or determine a fact in issue."   Id.

24

---

25   [19]  Courts commonly allow expert testimony to explain claim construction.  See,
26   e.g., Competitive Techs. v. Fujitsu Ltd., 286 F. Supp. 2d 1161, 1169 (N.D. Cal.
27   2003).  MGA fails to cite any case to the contrary.  Any challenges to the accuracy of
     Alex's claim construction must go the "weight' of his testimony, not its admissibility.
28   See Classic Foods Int'l Corp., 2006 WL 5187497, at *1, 3-7.

1  Professor Oman served for eight years as the Register of Copyrights -- the chief
2  United States government official responsible for administering the United States
3  copyright system.  Among his responsibilities, Professor Oman: (1) supervised the
4  work of the corps of examiners and ruled on the copyrightability of works;
5  (2) supervised the revision of official Copyright Office publications that set forth the
6  registration and deposit procedures for works of the visual arts, including drawings
7  and dolls; (3) acted as the principal advisor to the United States Congress on
8  copyright legislation; and (4) helped draft the Copyright Revision Act of 1976 -- the
9  current copyright statute.[20]

10      Clearly, his many years of experience as Register of Copyrights are
11  alone sufficient to qualify him as an expert with respect to the United States
12  Copyright Office practices and procedures, the copyright registration process, and
13  any anomalies therein.  See, e.g., United States v. Cordoba, 194 F.3d 1053, 1060 (9th
14  Cir. 1999) (finding witness qualified based purely on his experience); Mesfun v.
15  Hagos, No CV 03-02182 MMM (RNBx), 2005 WL 5956612, at *4 (C.D. Cal. Feb.
16  16, 2005) (cite omitted) (holding that experience is "one among the five different
17  ways to demonstrate an expert is qualified"); see also Rule 702.  In fact, MGA admits
18  that Professor Oman's area of expertise includes "U.S. Copyright Office practice and
19  procedure."[21]  There is, thus, no dispute that Professor Oman is qualified to render the
20  opinions offered in his report concerning U.S. Copyright Office practices and
21  procedures.

22

23

24

25

26

27

28

[20]  Oman Report at 1-2.
[21]  Motion at 1:2-4.

## V.     TO THE EXTENT HE HAS DONE SO, PROFESSOR OMAN IS ALSO QUALIFIED TO OPINE ON HONG KONG LAW

While Professor Oman was the Register of Copyrights, he acted as the principal advisor to the United States Department of State on international copyright matters, including drafting, negotiating and implementing international copyright treaties.[22]  As part of those responsibilities, Professor Oman worked closely with the Hong Kong member of the British delegation to the World Intellectual Property Organization and became familiar with Hong Kong copyright law.[23]   He has subsequently: (1) given lectures in Hong Kong and elsewhere regarding Hong Kong copyright law; (2) worked on papers regarding comparative analysis of Hong Kong and U.S. copyright law; and (3) regularly reviews literature involving issues of Hong Kong copyright law.[24]  Accordingly, Professor Oman is qualified to testify regarding Hong Kong copyright law.[25]

---

[22]   Oman Report at 1-2.

[23]   See Declaration of Ralph Oman, dated April 25, 2008 ("Oman Dec."), ¶ 2, Buchakjian Dec. Exh. 86.

[24]   Oman Dec., ¶ 3.

[25]   Professor Oman's report made crystal clear that he was opining on the significance and meaning of statements that MGA had made in Hong Kong litigation. MGA cannot now seek to strike Oman's report based on its lack of discussion of his qualifications as expert on Hong Kong copyright law because MGA has suffered no prejudice and, indeed, it had every opportunity to explore Professor Oman's qualifications during his deposition, yet it never asked him about his expertise in Hong Kong copyright law.  Instead, it made the tactical decision to assert that challenge via motion, without first doing its homework.  MGA also will have a full month to prepare to challenge Oman's qualifications at trial, should it wish to do so. See, e.g., Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co., 2003, No. CV 00-1693-PA, WL 23715981, at *2 (D. Or. Jan. 21, 2003) ("permitting plaintiffs to file supplemental report after discovery deadline when the "supplemental expert testimony was generated in direct response to" attacks made after the discovery deadline "upon the original expert reports"); Diomed, Inc. v. AngioDynamics, Inc., 450 F. Supp. 2d 130, 138 (D. Mass. 2006) (allowing expert witness to submit expert report after discovery deadline because defendants could not (footnote continued)

1    Under Hong Kong law, a work must be "original" to be protectable, and
2    Hong Kong courts apply substantially the same standards in determining whether a
3    work is "original" as U.S. courts.[26]  Further, Hong Kong courts accept U.S. copyright
4    registration certificates as valuable evidence of a work's presumptive originality and
5    ownership in copyright infringement suits, and Hong Kong law allows suits for
6    copyright infringement of three-dimensional objects, such as dolls, based on U.S.
7    registration certificates for two-dimensional drawings.[27]

8    Based on his knowledge of Hong Kong copyright law, Professor Oman
9    has opined that registration certificates for two-dimensional drawings of dolls (such
10   as Bryant's drawings) are important because they can serve as a legal basis for
11   claiming infringement of three-dimensional dolls under both U.S. and Hong Kong
12   copyright regimes.[28]  He then observed that MGA, in the words of its own Chief
13   Executive Officer (Isaac Larian), relied on that principle in suing for copyright
14   infringement in Hong Kong. Professor Oman has also opined that MGA's decision to
15   register Bryant's drawings as "original" works and failure to disclose any pre-existing
16   works *in its U.S. registrations* is significant *under U.S. law*.  Again, he observed that
17   MGA had earlier claimed in a Hong Kong proceeding that Bryant's drawings were
18   "original."  By doing so, he called attention to the fact that before the commencement
19   of this litigation, MGA had taken consistent positions having legal significance.[29]

20

21

22   show "prejudice"); Hammett v. Mayer Yacht Servs., Inc., No. CIV.A. 98-3277, 1999
     WL 638584, at *2 (E.D. La. Aug. 19, 1999) (accord).
23   [26]   Oman Dec. ¶ 4.
24   [27]   Oman Dec. ¶ 4.
     [28]   Oman Report at 17-19, see also Oman Dec., ¶¶ 2-4.
25   [29]   Oman Report at 18-19.  MGA has also previously claimed that a competitor's
26   dolls  infringed the copyrights in Carter Bryant's two dimensional BRATZ drawings
     in this very district.  See MGA Entm't, Inc. v. Multitoy, Inc. et al., Case No. CV04-
27   2524 CBM (CWx) (C.D. Cal. filed April 12, 2004), MGA's Complaint, ¶¶ 7, 32-35,
28   Buchakjian Dec. Exh. 104.

07209/2485783.1

1    Further, MGA's sworn statements in the Hong Kong litigation are
2  relevant facts that Professor Oman could consider because MGA has since taken
3  contrary positions.   For example, MGA no longer touts Bryant's drawings as
4  "original" but argues, instead, that his drawings are entitled to very limited or no
5  protection because they were based on prior works of art and that, "[a]t best, there is
6  only modest protection for a few details and perhaps the compilation of elements."[30]
7  It is well established that evidence that a party took contrary positions in other
8  litigations is relevant and admissible.   See, e.g., Trull v. Volkswagen of Am.,
9  187 F.3d 88, 99 (1st Cir. 1999) (affirming decision to admit contradictory evidence
10  provided by a party in prior litigation); Carballo-Rodriguez v. Clark Equip. Co.,
11  147 F. Supp. 2d 66, 75 (D.P.R. 2001) (same).

12    Professor Oman's testimony is intended to explain to the jury the
13  significance of copyright registrations and registering the work as "original," which
14  will not be self-evident to lay persons.   As discussed above, Professor Oman will
15  testify that a work must be "original" to be protectable, and that a copyright
16  registration certificate creates a presumption of the work's originality and ownership
17  in copyright infringement suits.   Accordingly, claiming that a work is "original" in a
18  copyright application is highly significant under both U.S. and Hong Kong laws.
19  This is a fact that requires expert assistance to be understood and put in context.
20  Professor Oman's testimony regarding this issue would thus be helpful to the jury and
21  is admissible under Rule 702.   See, e.g., Nacchio, 519 F.3d at 1155 ("expert
22  testimony may "assist the trier of fact to understand the facts already in the record,
23  even if all it does is put those facts in context"); Schiff, 2008 WL 726897, at *18, n.
24  26 (same).

25    Further, it is well established that the Court may consider expert
26  testimony to determine foreign law See, e.g., Inter Med. Supplies, Ltd. v. EBI Med.

27  ───────────────

28  [30]   Expert Report of Peter S. Menell, ¶ 51, Proctor Dec., Exh. 69.

1  Sys., Inc., 181 F.3d 446, 459 (3d Cir. 1999) ("[E]xpert testimony is the most common

2  way to determine foreign law. . . ."); In re Initial Public Offering Sec. Litig., 174 F.

3  Supp. 2d 61, 65 (S.D.N.Y. 2001) (same); see also Fed. R. Civ. Proc. 44.1 ("the court,

4  in determining foreign law, may consider any relevant material or source, including

5  testimony, whether or not submitted by a party or admissible under the Federal Rules

6  of Evidence").

7         The cases offered by MGA to the contrary are inapposite. United States

8  v. Chang, 207 F.3d 1169 (9th Cir. 2000), merely stands for the truism that an expert

9  cannot offer opinions outside the scope of his expertise. Here, Professor Oman is

10 clearly qualified to opine on Hong Kong copyright law.[31]  Application of Chase

11 Manhattan Bank, 191 F. Supp. 206, 209-210 (S.D.N.Y. 1961), disallowed testimony

12 regarding foreign law because it was offered by a party's lawyers, not an expert, and

13 there was no supporting affidavit. The court also specifically noted that testimony

14 regarding foreign law "may be done by sworn affidavits." Id. at 210. Here, the

15 evidence regarding foreign law is being offered by an expert, not Mattel's lawyers;

16 and it is being offered via sworn affidavit.[32] Accordingly, this case actually weighs in

17 favor of admitting Professor Oman's testimony.

18

19 **VI.   PROFESSOR   OMAN'S   OPINIONS   REGARDING   BRYANT'S**

20 **DRAWINGS AND THE SUPPLEMENTARY REGISTRATIONS ARE**

21 **BASED ON HIS EXPERIENCE AND WELL WITHIN HIS SCOPE OF**

22 **EXPERTISE**

23         1.   It Is Appropriate to Use Language the Jurors Can Understand

24         MGA's effort to exclude Professor Oman's entire Report because he uses

25 descriptive terms such as "wholly" original and "largely" non-original in one

26

27 [31] See generally Oman Dec.

28 [32] See id.

1   paragraph of his 22-page opinion is unfounded. Professor Oman does not assign any
2   value or importance to the terms "wholly original" or "largely non-original." Nor
3   does he base his opinion on some distinction between a "wholly original" work and a
4   "largely non-original" work. Instead, Professor Oman explains that "it is common
5   sense that because the drawings were registered as 'original' works of art, MGA's
6   registrations of the drawings reflect that MGA believes that the drawings are
7   original."[33] Under MGA's unsupported reasoning, any word used by an expert that is
8   not in Black's Law Dictionary would have to be stricken. That cannot be. <u>Rule</u> 402
9   provides that "[a]ll relevant evidence is admissible," except as otherwise provided by
10   law. MGA has failed to overcome that presumption.

11   Further, expert testimony is admissible if it "will assist the trier of fact to
12   understand the evidence or to determine a fact in issue." <u>Fed. R. Evid.</u> 702; <u>see also</u>
13   <u>Nacchio</u>, 519 F.3d at 1155 ("expert testimony may "assist the trier of fact to
14   understand the facts already in the record, even if all it does is put those facts in
15   context"); <u>Schiff</u>, 2008 WL 726897, at *18, n. 26 (same). Here, Professor Oman's
16   testimony would be helpful to the jury by putting the facts regarding the BRATZ
17   copyright registrations and MGA's "originality" representations to the Copyright
18   Office into context, and explaining their significance.

19              2.   <u>Professor Oman's Experience Qualifies Him to Describe How</u>
20                   <u>"Sophisticated" Companies Register Copyrights</u>

21   Similarly, Professor Oman describes MGA as a "sophisticated" company
22   because it is a manner of describing business entities "that have teams of legal experts
23   or legal technicians who know the system, know the law and do these things [*i.e.*,
24   copyright registrations] on a daily basis."[34]   It is undisputed that MGA is such a
25
26   _____
27   [33] Oman Report at 19.
     [34] Deposition of Ralph Oman, dated March 31, 2008 ("Oman Depo."), at
28   31:14-17, Hauss Dec., Exh. 20.

1   corporation.    Significantly, Professor Oman nowhere opines that sophisticated

2   companies *should* be held to a higher legal standard, as MGA contends. Instead, he

3   simply describes his 8 years' experience with what "sophisticated" companies actually

4   do when registering claims of copyright.[35]   Experience is appropriate grounds to

5   support an expert opinion. See, e.g., Cordoba, 194 F.3d at 1060 (finding witness

6   qualified based purely on his experience); Mesfun, 2005 WL 5956612, at *4 (holding

7   that experience is "one among the five different ways to demonstrate an expert is

8   qualified"); see also Rule 702.

9           The two cases that MGA cites in support of its argument do not require

10  that Professor Oman's Report be stricken. Both Daubert v. Merrell Dow

11  Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995), and Bailey v. Allgas, Inc., 148 F.

12  Supp. 2d 1222 (N.D. Ala. 2000), merely stand for the truisms that an expert's opinion

13  must fit the facts of the case and cannot be based on legal standards contrary to law.

14  See Daubert at 1320-22; Bailey at 1236-37. Here, Professor Oman's opinions "fit the

15  facts" and are based on his experience. Accordingly, these cases are not relevant.

16          MGA's straw argument that the law does not support a "heightened

17  burden" is thus beside the point. No one argued otherwise.[36]

18

19  **VII.   PROFESSOR OMAN'S OPINIONS ARE NOT BASED ON SAMIR**

20  **KHARE'S TESTIMONY**

21          MGA's argument that Professor Oman's report must be stricken because

22  of one paragraph within his 22-page opinion that purportedly miscites Khare's

23  deposition testimony is far fetched.[37]   First, Professor Oman correctly interprets

24  Khare's statements. While being asked about the Bratz drawing registrations, Khare

25

26  [35]  Oman Report at 20 ("I note that *in my experience* sophisticated companies such
    as MGA . . .") (emphasis added).

27  [36]  Motion at 8.

28  [37]  Motion at 9-11.

1  testified that it is impossible to go from a two-dimensional drawing to a three-

2  dimensional doll and that, therefore, the Bratz drawings could only have been used

3  for the Bratz packaging artwork, not for the dolls themselves.[38]   Based on that

4  testimony, Professor Oman noted that Khare was incorrect to say that the drawings

5  can only have been intended to register the packaging.[39]

6         Second, Professor Oman's opinions are not based on Khare's testimony.

7  In a section headed "Derivative Works," Professor Oman explains Copyright Office

8  procedures with respect to the registration of derivative works and opines that two-

9  dimensional drawings are proper deposit for three-dimensional dolls.[40]   Based on that

10  opinion, Professor Oman notes that Khare was incorrect to say that two-dimensional

11  drawings could not have been used to register three-dimensional dolls.

12         MGA does not challenge Professor Oman's opinion that two-

13  dimensional drawings are proper deposit for three-dimensional dolls, which is the

14  central thesis of the "Derivative Works" section.  Nor does it challenge any statement

15  in that section other than the few sentences referencing Khare.  Accordingly, even if

16  all references to Khare were stricken, that still would give no grounds to invalidate

17  any other part of the "Derivative Works" section, much less the rest of Professor

18  Oman's report.

19         The cases MGA offers in support of its argument are inapposite.   In

20  Macaluso v. Herman Miller, Inc., No. 01 Civ. 11496(JGK), 2005 WL 563169

21  (S.D.N.Y. Mar. 10, 2005), the court excluded the expert's opinion because the

22  "incorrect factual assumptions render[ed] all of his subsequent conclusions purely

23  speculative."  Id. at *8.  As evidenced above, that is not the case here.  Similarly, in

24  both Andrews v. E.I. Du Pont De Nemours and Co., 447 F.3d 510 (7th Cir. 2006),

25

26  _____

27  [38]  Khare Depo. at 258:9-259:15, 260:4-13, Hauss Dec., Exh. 13.
   [39]  Oman Report at 11.

28  [40]  Oman Report at 8-12.

1   and <u>Boucher v. U.S. Suzuki Motor Corp.</u>, 73 F.3d 18 (2d Cir. 1996), the "theory of

2   the case" was based on the expert's wrong calculations. <u>See</u> <u>Andrews</u> at 513; <u>Boucher</u>

3   at 21-23.   Here, Mattel's theory of the case is clearly not based upon Professor

4   Oman's isolated, purported miscitation of Khare's testimony.

## VIII. <u>PROFESSOR OMAN'S OPINIONS ARE NOT BASED ON MGA'S "INTENT"</u>

8   MGA argues that Professor Oman's opinion regarding anomalies in

9   MGA's filings with the Copyright Office must be stricken because he "purports to

10  infer improper intent from documents."[41]  However, Professor Oman's opinion that it

11  is it is anomalous for sophisticated companies to register the packaging before the

12  underlying works that go into the packaging or to submit multiple supplementary

13  registrations correcting dates in prior filings is not based on MGA's "intent," but on

14  his many years of *experience* as the Register of Copyrights, which is a proper basis

15  for expert testimony.   <u>See</u>, <u>e.g.</u>, <u>Cordoba</u>, 194 F.3d at 1060; <u>Mesfun</u>, 2005 WL

16  5956612, at *4; <u>Rule</u> 702.

17  For example, Professor Oman notes that, in his "long experience with

18  the registration process," he has never seen a sophisticated company register the

19  packaging for a product before registering the product itself.[42]  This opinion will be

20  helpful to the jury because it rebuts MGA's claim that when it submitted the design

21  drawings for Bratz it intended only to register the Bratz packaging (as opposed to the

22  Bratz dolls) and that the dolls are not "derivative" of the drawings.   Similarly,

23  Professor Oman notes that, in his experience, it is highly unusual to submit "drawings

24  of the item that is supposed to go in the packaging" when a company is purporting to

25  seek to register the packaging itself.  He then explains that the Copyright Office will

---

[41]  Motion at 11:26-27.

[42]  Oman Report at 21.

generally not accept a substitute deposit in place of the actual item being registered and that, if MGA were seeking to register the "packaging," the proper procedure would have been to submit "the actual packaging or photographs of the packaging,"[43] not drawings of the dolls as MGA did. Oman also notes, again in his *experience*, that sophisticated companies such as MGA, "which maintains a deposit account at the Copyright Office," do not proceed in the manner that MGA claims it did before the Copyright Office: "I have long experience with the registration process, and I have never encountered a similar contention."[44]

Based on his experience, Oman further notes that filing multiple supplementary registrations to correct the dates on the initial registrations is also "anomalous."[45] This opinion will be helpful to the jury because it refutes MGA's claims that it just made a "mistake" when it told the Copyright Office that, for example, the Bratz dolls were completed in 2000, which it later "corrected" to 2001.

In any event, it would not matter if Professor Oman *did* offer an opinion based on defendants' motive and intent. As discussed above, such opinions are permissible in circumstances such as those found here. See Hangarter, 236 F. Supp. 2d at 108 (allowing expert testimony regarding conduct and motives). Here, in assessing MGA's filing of multiple supplementary registrations, the jury could likewise benefit from the opinion of an expert who is able to evaluate such matters in the context of the thousands of other copyright registrations that he has supervised.

---

[43]   Oman Report at 21.
[44]   Oman Report at 21. MGA's objection to Oman's use of the term "sophisticated" fails for the same reasons as above. See supra at 15-16.
[45]   Oman Report at 22.

1

## **Conclusion**

2         For the foregoing reasons, Mattel respectfully requests that the Court

3    deny MGA's Motion *in Limine* No. 9 in its entirety.

4

5    DATED:  April 28, 2008              QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP
6

7                                        By  John Quinn   OS,
                                         _____
8                                            John B. Quinn
                                             Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On April 28, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION** *IN LIMINE* **NO. 9 TO STRIKE THE EXPERT REPORTS AND TESTIMONY OF RALPH OMAN AND JOHN ALEX** on the parties in this action as follows:

Thomas J. Nolan
**Skadden, Arps, Slate, Meageher & Flom LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071

Mark E. Overland
David C. Scheper
Alexander H. Cote
**Overland Borenstein Scheper & Kim LLP**
601 West Fifth Street, 12th Floor
Los Angeles, CA 90017

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 28, 2008, at Los Angeles, California.

NOW LEGAL -- Dave Quintana

07209/2442344 1