QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>————————————————<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>Hon. Stephen G. Larson<br><br>[PUBLIC REDACTED]<br><br>MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION *IN LIMINE* NO. 6 [TO] EXCLUDE REFERENCE TO AND USE OF PHASE TWO EVIDENCE<br><br>Date:  May 21, 2008<br>Time:  1:00 p.m.<br>Place:  Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference:  May 19, 2008<br>Trial Date:  May 27, 2008 |

07209/2486383.2

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    EVIDENCE RELEVANT TO PHASE 2 MAY ALSO BE RELEVANT TO PHASE 1. ................................................................................................ 2

II.   MGA'S HIRING OF MATTEL EMPLOYEES IS DIRECTLY RELEVANT TO PHASE ONE. .................................................................. 3

III.  EVIDENCE THAT "MGA BORROWED MATTEL IDEAS TO CREATE MGA PRODUCTS" IS DIRECTLY RELEVANT TO PHASE ONE. ..................................................................................................... 7

IV.   EVIDENCE THAT "MGA USED MATTEL COMPANY INFORMATION FOR MARKETING AND BRANDING" IS RELEVANT TO REBUT MGA'S DAMAGE APPORTIONMENT ARGUMENT IN PHASE 1B. ............................................................................. 8

    1.    MGA used Mattel's development strategies. ............................... 10

    2.    MGA's development strategies are not better than its competitors' strategies. ................................................................. 12

V.    MATTEL HAS NO PLANS TO INTRODUCE EVIDENCE THAT "MGA LAUNCHED PRODUCTS TO INTERFERE WITH MATTEL'S SUCCESS" IN PHASE ONE. ...................................................................... 16

VI.   EVIDENCE THAT MGA "INDUCED MATTEL EMPLOYEES TO WORK OFF-HOURS FOR MGA" IS DIRECTLY RELEVANT TO PHASE ONE. ..................................................................................................... 16

VII.  MATTEL HAS NO PLANS TO INTRODUCE GENERAL EVIDENCE THAT MGA "DEFAMED MATTEL TO VENDORS AND THE PUBLIC." ............................................................................................... 17

VIII. EVIDENCE PERTAINING TO THE TRUTHFULNESS OF A WITNESS IS ADMISSIBLE REGARDLESS OF THE TRIAL PHASE ....... 18

CONCLUSION .................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Page**

## Cases

Commodity Futures Trading Com'n v. Rosenberg,
  85 F. Supp. 2d 424 (D.N.J. 2000)..................................................................... 4

Contratto v. Ethicon, Inc.,
  227 F.R.D. 304 (N.D. Cal. 2005) .................................................................... 2

Cream Records, Inc. v. Joseph Schlitz Brewing Co.,
  754 F.2d 826 (9th Cir. 1985)........................................................................... 9

Data General Corp. v. Grumman Systems Support Corp.,
  36 F.3d 1147 (1st Cir. 1994) ........................................................................... 9

Donnelly Corp. v. Reitter & Schefenacker USA Ltd. P'ship,
  Case No. 1:00-CV-751, 2002 WL. 31418042 (W.D. Mich. Aug. 13, 2002)......... 10

In re First Alliance Mortgage Co.,
  471 F.3d 977 (9th Cir. 2006)........................................................................... 3

Gold v. Wolpert,
  876 F.2d 1327 (7th Cir. 1989)......................................................................... 2

Green v. Baca,
  226 F.R.D. 624 (C.D.Cal. 2005) .................................................................... 8

Hickman v. Taylor,
  329 U.S. 495 (1947) ...................................................................................... 10

Neilson v. Union Bank of Cal.,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003)............................................................ 3

Nelson-Salabes, Inc. v. Morningside Dev., LLC,
  284 F.3d 505 (4th Cir. 2002)........................................................................... 9

New Jersey v. T.L.O.,
  469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985)..................................... 2

Payne v. Giant Food, Inc.,
  346 F. Supp. 2d 15 (D.D.C. 2004) ................................................................. 2

U.S. v. Curtin,
  489 F.3d 935 (9th Cir. 2007)....................................................................... 4, 5

U.S. v. Mayans,
  17 F.3d 1174 (9th Cir. 1994)........................................................................... 6

U.S. v. Simas,
937 F.2d 459 (9th Cir. 1991)............................................................................. 5

U.S. v. Tan,
254 F.3d 1204 (10th Cir. 2001).......................................................................... 4

United Mine Workers of America v. Pennington,
381 U.S. 657, 85 S. Ct. 1585 (1965) ................................................................. 2

United States v. Mehrmanesh,
689 F.2d 822 (9th Cir. 1982).............................................................................. 4

**Statutes**

17 U.S.C. § 504(b)............................................................................................ 9

Fed. R. Evid. 401 ............................................................................................. 2

Fed. R. Evid. 404(b) .......................................................................................... 4

Fed. R. Evid. 608(a).......................................................................................... 18

Fed. R. Evid. 608(b) ......................................................................................... 18

**Miscellaneous**

Nimmer, § 14.03[D][1] at 14-60 ......................................................................... 9

1   **Preliminary Statement**

2

3          Both sides seek orders precluding the other from relying on Phase Two

4   evidence in Phase One.  But the parties disagree fundamentally on what evidence is

5   relevant to Phase Two and what evidence is relevant to Phase One.  Mattel agrees that

6   evidence that is relevant <u>only</u> to Phase Two is not admissible.  But evidence relevant

7   to <u>both</u> Phase One and Phase Two generally should be admitted during Phase One.  In

8   a cursory but nonetheless broad-based request, MGA seeks the  exclusion of major

9   categories of evidence, including much that is directly relevant to Mattel's claims of

10  ownership in Bratz, its proof of MGA's intent in engaging in the wrongdoing

11  underlying Mattel's Phase One copyright claims, the damages suffered, and the

12  credibility of key witnesses.

13         Without identifying specific evidence, MGA requests a blanket ruling

14  excluding as "Phase Two evidence"  evidence that (1) MGA stole Mattel employees,

15  (2) borrowed Mattel ideas to create MGA products, (3) used Mattel company

16  information for marketing and branding, (4) launched products to interfere with

17  Mattel's success, (5) induced Mattel employees to work off-hours for MGA, and (6)

18  defamed Mattel to vendors or the public.  Mattel needs and is entitled to evidence in

19  Phase One to prove MGA's knowledge and malice; to counter MGA's

20  Phase One damages assessment; and, potentially, to impeach witnesses.

21         Of course, evidence that is only relevant to Phase Two should not be admitted

22  in Phase One.  But evidence that is relevant to Phase One should not be excluded

23  because it is also relevant to Phase Two.  Only by a detailed analysis of each of

24  MGA's proposed categories of exclusion can the necessary lines be drawn.  But,

25  MGA virtually provides no such analysis in its moving papers and identifies no

26

27

28

1 evidence it seeks to be excluded.  For this reason alone, MGA's motion should be
2 denied.[1]

3 **Argument**

4

5 **I.    EVIDENCE RELEVANT TO PHASE 2 MAY ALSO BE RELEVANT TO**
6 **PHASE 1.**

7

8        Defendants' argument rests on the incorrect assumption that any conduct that is
9 actionable in Phase Two cannot be relevant to any issue in Phase One.  Evidence,
10 however, may serve multiple purposes; "[I]t is universally recognized that evidence,
11 to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but
12 only have 'any tendency to make the existence of any fact that is of consequence to
13 the determination of the action more probable or less probable than it would be
14 without the evidence.'" New Jersey v. T.L.O., 469 U.S. 325, 345, 105 S.Ct. 733, 744,
15 83 L.Ed.2d 720 (1985), quoting Fed.Rule Evid. 401. See United Mine Workers of
16 America v. Pennington, 381 U.S. 657, 670, 85 S.Ct. 1585, 1593 (1965) ("testimony
17 of prior or subsequent transactions, which for some reason are barred from forming
18 the basis for a suit, may nevertheless be introduced if it tends reasonably to show the
19 purpose and character of the particular transactions under scrutiny").  Examining each
20 of the categories proposed by MGA makes clear that each one of them includes some
21 combination of admissible and inadmissible evidence, and none can be  the subject of

22

---

23 [1]   As the Court has ordered, parties are not permitted to present evidence with its reply to
support its motion.  Reply-only evidence and argument is improper.  See Contratto v.
24 Ethicon, Inc., 227 F.R.D. 304, 308 n.5 (N.D. Cal. 2005) ("Defendants' attempt to introduce
new evidence in connection with their reply papers is improper.") (citing Gold v. Wolpert,
25 876 F.2d 1327, 1331 n.6 (7th Cir. 1989) ("It is well settled that new arguments cannot be
made for the first time in reply.  This goes for new facts too.");  Payne v. Giant Food, Inc.,
26 346 F. Supp. 2d 15, 21 n.4 (D.D.C. 2004) ("These facts were raised for the first time in reply
27 . . . petitioner's effort to meet his burden comes too late.") (additional citations omitted)).

28

1   the broad-based exclusionary order MGA seeks.  The correct rule is that "Phase Two

2   only" evidence should be excluded.

3

4   **II.    MGA'S HIRING OF MATTEL EMPLOYEES IS DIRECTLY**

5   **RELEVANT TO PHASE ONE.**

6

7          MGA characterizes this issue by claiming that Mattel will seek to prove in

8   Phase One that "███████████████████."  It is not clear what evidence falls

9   within such a dramatically labeled category.  What is clear is that Mattel employees

10  are free to move where they like, but they are bound by their contractual obligations

11  to Mattel.

12          Regardless, Mattel does contend that MGA's knowledge of Mattel employees'

13  obligations is central to the claims at issue in Phase One, and evidence relating to

14  MGA's dealings with Mattel employees other than Bryant goes directly to MGA's

15  knowledge and intent in interfering with Bryant's contract with Mattel and aiding and

16  abetting his breaches of his duties of loyalty and his fiduciary duty, as well as MGA's

17  infringement of the copyrights belonging to Mattel as a result of the Inventions

18  Agreement Bryant signed with Mattel.  Mattel has claimed that MGA and Larian

19  gave substantial assistance or encouragement to Carter Bryant to breach his duties to

20  Mattel.  Neilson v. Union Bank of Cal., 290 F. Supp. 2d 1101, 1118, 1127 28 (C.D.

21  Cal. 2003); In re First Alliance Mortgage Co., 471 F.3d 977, 994 95 (9th Cir. 2006).

22  Mattel also seeks punitive damages on its intentional interference and aiding and

23  abetting claims and therefore must show that MGA and Larian acted with malice,

24  oppression or fraud.  See CACI No. 3947.  MGA's dealings with other Mattel

25  employees are directly relevant to proof of its knowledge, and its malice, its hiring

26  and contracting with Bryant.  These dealing show both that MGA knew the content of

27  Bryant's agreements with Mallet (since employees who left Mattel for MGA also

28

1 | signed such agreements) and that MGA's interference with Bryant's obligations to

2 | Mattel was done knowingly and intentionally.

3 |     Rule 404(b) permits introduction of evidence to prove a person's "motive,

4 | opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

5 | accident." Fed. R. Evid. 404(b).  Admissible evidence includes "other acts" by a

6 | witness, "not just other crimes or wrongs, but also explicitly 'other acts' - if the 'other'

7 | acts are relevant to the purposes specified in the rule such as intent, motive,

8 | preparation, knowledge, etc." U.S. v. Curtin, 489 F.3d 935, 943 n. 3 (9th Cir. 2007).

9 | Because it is difficult to prove malice, oppression and fraudulent intent, evidence of

10 | similar bad conduct is admissible for the proper purpose of proving intent.  See U.S.

11 | v. Tan, 254 F.3d 1204, 1211 (10th Cir. 2001) (defendant's prior drunk driving

12 | convictions offered to prove malice component of second degree murder charge

13 | resulting from alcohol related vehicular homicide were offered for proper purpose,

14 | and not for improper purpose of proving character to show action in conformity

15 | therewith, where defendant's intent was sole issue in case, and there were no

16 | alternative means of proving malice).  The Ninth Circuit has consistently held that

17 | "the rule is one of inclusion and that other acts evidence is admissible whenever

18 | relevant to an issue other than the defendant's criminal propensity." United States v.

19 | Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982). See also, Commodity Futures

20 | Trading Com'n v. Rosenberg, 85 F. Supp. 2d 424, 437 (D.N.J. 2000) ("Applicable in

21 | both the civil and criminal contexts, Rule 404(b) is a rule of inclusion").

22 |     There are dozens of Mattel employees, who had signed inventions agreements

23 | with Mattel and left Mattel for MGA; Maria Veronica Marlow, Margaret Leahy,

24 | Paula Treantafalles (Garcia), and Mercedeh Ward worked at or with MGA in 2000

25

26

27

28

1   and were core personnel involved in the development of Bratz.[2]  Mattel will introduce

2   evidence of these individuals' agreements with Mattel.  But this evidence is not

3   submitted to prove these individuals were "stolen" but to establish MGA's

4   knowledge of Mattel agreements relevant to its dealings with Bryant, to disprove any

5   claim by MGA of its ignorance of Mattel's practice of requiring employees to sign

6   Inventions Agreements and to show MGA's intent to ignore the known terms of such

7   agreements.  See U.S. v. Simas, 937 F.2d 459 (9th Cir. 1991) (evidence of other

8   instances in which defendant used items purchased at his employer's expense for his

9   personal use was relevant to mail fraud counts because it was probative of intent to

10  defraud his employer, and, thus, evidence was admissible even though damaging,

11  absent showing that evidence resulted in unfair prejudice).  MGA admits it knew

12  Bryant was employed by Mattel but claims it did not know of its obligations to

13  Mattel; this evidence disproves that.  MGA's state of mind is an issue and its hiring

14  Mattel employees is relevant to its knowledge.  See U.S. v. Curtin, 489 F.3d at 945

15  ("[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a

16  disputed issue, *especially when that issue involves the actor's state of mind*")

17  (emphasis in original).

18      For example,  Paula Garcia ("Garcia"), MGA's Bratz project manager, had

19  worked for Mattel and had signed her own Inventions Agreement with Mattel in July

20  1997.[3]  Ms. Garcia recruited Mr. Bryant to leave Mattel in 2000 along with Veronica

21  Marlow (also a former Mattel employee).   Her knowledge of Mattel's practice of

22  having Inventions Agreements with employees is knowledge that can be imputed to

23  MGA, and serve as a basis both for liability and punitive damages.  To limit Mattel's

24  

---

[2]   See Invention Agreements for Maria Veronica Marlow, Buchakjian Dec., Ex. 30, Margaret Leahy, Buchakjian Dec., Ex. 31, Paula Treantafalles, Buchakjian Dec., Ex. 34, and Mercedeh Ward, Buchakjian Dec., Ex. 48.

[3]   Deposition Transcript of Paula Garcia Vol. 1 ("Garcia Tr. Vol. 1") at 205:12-17, Hauss Dec., Ex. 8.

-5-

1   ability to establish evidence of MGA's established pattern of hiring Mattel employees

2   bound by similar agreements is to invite MGA to claim -- falsely -- innocent

3   ignorance.  See U.S. v. Mayans, 17 F.3d 1174, 1181 -1182 (9th Cir. 1994) (when

4   knowledge is at issue evidence may be admissible when there is a logical connection

5   "between the knowledge gained as a result of the commission of the prior act and the

6   knowledge at issue").

7       Moreover, MGA's  practice of hiring Mattel employees to develop Bratz in

8   2000 is relevant to Mattel's claim that MGA acted maliciously.  The evidence that

9   MGA encouraged other employees to breach their obligations to Mattel in 2000 by

10  working on Bratz while employed by Mattel is relevant to proving that it willfully

11  encouraged Bryant as well.

12      For example, one Mattel employee, Isabel Ana Cabrera, admitted to having

13  worked on more than *70* Bratz doll products while a Mattel employee.[4]  A second

14  Mattel employee, Beatriz Morales worked on *50*.[5]  Both admitted knowing this was

15  wrong in 2000 and yet MGA continued to employ them while they still worked at

16  Mattel even after the present litigation commenced.[6]  Both admitted that they tried to

17  cover their tracks by receiving cash payments under false names and false social

18  security numbers.[7]  Ms. Cabrera alone received over $100,000 for her work on Bratz.

19  Ms. Cabrera provided Mattel with time sheets and payment receipts for her work on

20  Bratz, some of which showed payments had falsely been made in the name and social

21

22

---

23  [4]  Transcript of the interview of Ana Cabrera, dated January 2, 2008 ("Cabrera Tr. Vol. I") at 117:10-118:8, Hauss Dec., Ex. 32.

24  [5]  Transcript of the interview of Beatriz Morales, dated January 14, 2008 ("Morales Tr.") at 24:14-25:14, 27:11-17, Hauss Dec., Ex. 34.

25

26  [6]  Cabrera Tr. Vol. I at 118:3-119:23, Hauss Dec., Ex. 32; Morales Dep. Tr. at 115:2-20, Hauss Dec., Ex. 34.

27  [7]  Id.

28

1  security number of her sister-in-law, Rosalba Cabrera.[8]  Maria Elena Salazar

2  submitted a 2003 employment application to MGA that her prior duties included

3  "████████████████████████████" - while she was employed at Mattel.[9]

4      MGA should not be permitted to suppress evidence relevant to its willful intent

5  to hire Bryant and induce him to breach his obligations to Mattel merely by

6  mischaracterizing it as a claim to steal employees and because such evidence could

7  also be relevant to Phase 2.

8

9  **III.  EVIDENCE THAT "MGA BORROWED MATTEL IDEAS TO CREATE**

10       **MGA PRODUCTS" IS DIRECTLY RELEVANT TO PHASE ONE.**

11

12      In moving to exclude evidence that MGA "borrowed" from Mattel, MGA does

13  not specify what "ideas" are included.  Presumably it includes the theft of the ideas

14  that constitute "Bratz."  That is obviously proper evidence to introduce.  Moreover, as

15  discussed fully in Mattel's Opposition to Motion in Limine Number 14, Mattel will

16  show that Bryant "borrowed" from Mattel's Toon Teens, DIVA STARZ, Teen

17  Skipper and Swan, indicating both that Bratz had sources of inspiration other than

18  those identified by Bryant and that Bratz was created while Bryant was employed by

19  Mattel.  This evidence of "borrowing" is relevant to Phase 1 because it shows that

20  Bryant did not create Bratz in 1998, as he claims.  Quite the contrary, the evidence of

21  "borrowing" shows that Bratz was influenced by Mattel projects that did <u>not</u> exist in

22  1998.  The similarities between Bratz and Mattel's Toon Teens, Diva Starz, Teen

23  Skipper and Swan projects tend to establish that Bryant created Bratz while he was

24  exposed to these projects during his Mattel employment in 1999 and 2000.

25  _____

26  [8]  Transcript of the interview of Ana Cabrera, dated January 3, 2008 ("Cabrera Tr. Vol. II"), at 28:8-30:2.

27  [9]  Salazar employment application, Buchakjian Dec., Ex. 35.

28

-7-

MGA and Bryant argue that evidence of "borrowed" ideas should be prohibited because it is more prejudicial than probative.  Examination of the inspiration for Bratz goes to the key issue in dispute: the timing of Bryant's creation.  Defendants have not only conceded the relevance of this issue -- as they must -- but have presented numerous theories relating to Bryant's inspiration for Bratz, thus putting his inspiration at issue.[10]  The "prejudice" to MGA created by evidence that Defendants are lying about timing and inspiration of Bratz is hardly the sort of *unfair* prejudice which Rule 403 is intended to limit, and the probative value of this evidence of borrowing clearly outweighs any prejudicial effect.  See Green v. Baca, 226 F.R.D. 624, 634 (C.D.Cal. 2005) (allowing evidence of other acts where "the evidence of other acts offered by plaintiff may be prejudicial to defendant [, but] it will not be unfairly prejudicial").  This particularized evidence of "borrowing" will be useful to a jury in determining the timing of and inspiration for the creation of Bratz -- issues central to Phase 1.

## IV.   EVIDENCE THAT "MGA USED MATTEL COMPANY INFORMATION FOR MARKETING AND BRANDING" IS RELEVANT TO REBUT MGA'S DAMAGE APPORTIONMENT ARGUMENT IN PHASE 1B.

A significant portion of MGA's and Bryant's expert reports relate to the attempted identification of "elements of [the infringer's] profit attributable to factors

---

[10]   See e.g., MGA HK Third Supp. Resp. to Mattel's Amended Fourth Set of Interrogatories, No. 42, at 16:17-24 ("sources of inspiration specifically identified by Carter Bryant [include] Steve Madden advertisements and Paris Blues advertisements . . . Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca and Barbie dolls; Mattel's Liddle Kiddles; Margaret Keene artwork; Betty Boop; Little Miss No Name; Hello Kitty; Coca-cola advertisements; anime, including for e.g. Sailor Moon and manga."), Buchakjian Dec., Ex. 36.

1  other than the copyrighted work."[11]  17 U.S.C. § 504(b).  In other words, MGA will

2  argue that the success of Bratz owed as much or more to such factors as packaging

3  and marketing – factors unrelated to the infringement – as it did to the wrongful

4  conduct subject to determination in Phase 1A.  Mattel seeks no more than the right to

5  rebut this effort to apportion damages, by demonstrating that it was the doll, not

6  MGA's branding and marketing, that accounted for the bulk of MGA's profits.

7      All gross revenues are "presumed" to be profits attributable to the

8  infringement, subject to the infringer proving costs and apportionment.  Data General

9  Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1173-1174 (1st Cir. 1994).

10  See also Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 512, n.9 (4th

11  Cir. 2002).  The infringer has the burden of proving that the profits are attributable to

12  factors other from the copyrighted work.  See Cream Records, Inc. v. Joseph Schlitz

13  Brewing Co., 754 F.2d 826, 828–29 (9th Cir. 1985).  Nimmer, § 14.03[D][1] at 14-

14  60. The infringer's "burden under the apportionment provision of Section 504(b) is

15  primarily to demonstrate the absence of a causal link between the infringement and

16  all or part of the profits claimed by the plaintiff." Data General Corp., supra, 36 F.3d

17  at 1171.

18      According to MGA, the lion's share of MGA's profits from Bratz were not

19  from Bryant's contributions -- creation, conception, drawings, reduction to practice,

20  and assurance that the dolls reflected his drawings -- but from MGA's contributions.

21  In support of this approach, MGA will present testimony from its expert,  Mr. Paul

22  Meyer, that MGA profited from its brand development strategies, advertising,

23  marketing, themes, fashions, accessories and characters aside from the strength of the

24

25  [11]  This is set forth in more detail in MGA's Expert Report of Paul K. Meyer, dated

26  February 11, 2008, at 5-7, Proctor Dec., Ex. 23; [Rebuttal] Expert Report of Paul K. Meyer,
   dated March 17, 2008, at 4-12, Proctor Dec., Ex. 59; Rebuttal Expert Report of Douglas

27  Kidder at 10-12, 19, Proctor Dec., Ex. 60.

28

1   Bratz product itself.[12]  Likewise, MGA will rely on the opinion of Dr. Joachimsthaler

2   that Bratz was successful not because of the appearance of the doll, but because of

3   MGA's branding efforts.[13]  Dr. Joachimsthaler opines that the price premium the

4   Bratz brand can realize over an unbranded equivalent ranges from 50%-70%, and

5   attributes MGA's brand development success to "█████████████████

6   ████████████████████████████████████████

7   ████████████."[14]

8        If MGA is permitted to present this evidence during Phase 1B, Mattel should

9   be able to present rebuttal evidence proving both (1) that MGA should not be able to

10  reduce the damages Mattel is entitled to recover based on supposedly "innovative"

11  marketing and branding that it stole from Mattel; and (2) that whatever their source,

12  MGA's contributions were no more innovative than the industry standard, and

13  therefore that MGA is entitled to keep no more than industry standard profits in

14  apportioning the share of the profits owing to the infringement (the doll) as opposed

15  to its marketing, branding, packaging, etc.[15]

16        **1.    MGA used Mattel's development strategies.**

17        Even though discovery into these issues has been stayed, the evidence Mattel

18  has obtained shows that MGA stole much of its development strategy from Mattel --

19  making any reduction in Mattel's damages improper.[16]  For example, MGA's expert

20

---

21  [12]  Expert Report of Paul K. Meyer, dated February 11, 2008, at 38-42, Proctor Dec., Ex. 23 at 19-42.

22  
23  [13]  See, e.g., Expert Report of Dr. Erich Joachimsthaler, dated February 11, 2008, at 25-27, 29-34, 36-39, Proctor Dec., Ex. 22.

24  [14]  Id. at 51, 66, Proctor Dec., Ex. 22.

25  [15]  Deposition Transcript of Michael Wagner at 9:8-25, Hauss Dec., Ex. 23.

26  [16]  As set forth in Mattel's Motion in Limine to Exclude Phase 1(B) Evidence in the Phase 1(A) Trial and Phase 2 Evidence in the Phase 1 Trials, Or, In the Alternative, To Permit

27  Expedited Phase 2 Discovery, dated April 12, 2008, if the Court permits MGA to present evidence on apportionment of damages, then the Court should lift the discovery stay and

28  (footnote continued)

07209/2486383.2

-10-

1   claims that the damages owed to Mattel should be reduced because of the value of the

2   themes MGA developed for Bratz.[17]  In response, Mattel should be permitted to

3   introduce evidence that MGA stole themes for its Bratz dolls when Mr. Machado, Mr.

4   Vargas and Ms. Trueba stole from Mattel and delivered to MGA one of the earliest

5   versions of Mattel's confidential preliminary product line list that identified all of the

6   themes that Mattel would be using approximately 18 months later.[18]  Further, MGA

7   claims that it should be given credit (and Mattel's damages accordingly reduced) for

8   its advertising and marketing.[19]  However, Machado, Vargas or Trueba have

9   misappropriated documents relating to advertising and marketing Mattel's products

10  that Mattel believes were used for Bratz.[20]

11         MGA also claims that it should be given credit for its brand development and

12  expansion.[21]  But MGA hired away Jorge Castilla, who—despite representing that he

13

14  permit Mattel to complete its Phase Two discovery on an expedited basis to the extent necessary to rebut MGA's claims of apportionment.  See, e.g., Hickman v. Taylor, 329 U.S.

15  495, 507 (1947) ("Mutual knowledge of all relevant facts is essential to proper litigation."); Donnelly Corp. v. Reitter & Schefenacker USA Ltd. P'ship, Case No. 1:00-CV-751, 2002

16  WL 31418042 at *8 (W.D. Mich. Aug. 13, 2002) (denying discovery stay on later phase

17  issues because danger of precluding discovery of evidence ultimately relevant to earlier phase could create unfair prejudice incapable of remedy).

18  [17]  See, e.g., Expert Report of Paul K. Meyer, dated February 11, 2008, at 19-24, Proctor

19  Dec., Ex. 23.

20  [18]  Barbie 2005 Preliminary Line List, attached as Exhibit 1 to the Declaration of Bridget A. Hauler, dated April 14, 2008 ("Hauler Dec."); Supplemental Response to MGA

21  Interrogatory No. 1, dated December 7, 2007, at 33, Proctor Dec., Ex. 14.

22  [19]  See, e.g., Expert Report of Paul K. Meyer, dated February 11, 2008, at 38-42, Proctor

23  Dec., Ex. 23.

    [20]  See, e.g., Mattel's Spring 2005 Barbie Executive Summary, Hauler Dec. Ex. 2;
24  Advertising and Promotion Budget Chart for Mattel Mexico, Hauler Dec. Ex. 3; Mattel

25  Mexico President's Review, Hauler Dec. Ex. 4; Mattel's Strategic Plan Meetings International Overview, dated September 20, 2005, Hauler Dec. Ex. 5.

26  [21]  See, e.g., Expert Report of Dr. Erich Joachimsthaler, dated February 11, 2008, at 17-51,

27  Proctor Dec., Ex. 22; Expert Report of Paul K. Meyer, dated February 11, 2008, at 38-42, Proctor Dec., Ex. 23.

28

07209/2486383.2

-11-

had complied with his confidentiality and employment agreement—left Mattel for MGA with a collection of Mattel confidential sales and planning documents in a folder labeled " ████ ."[22] Mr. Castilla obtained unauthorized access to Mattel's International Strategic Plan, included in this " ████ " folder, and took it with him when he left.[23] With the stay of Phase 2 discovery, Mattel has not been able to depose Mr. Castilla to determine exactly how these documents contributed to the marketing of Bratz, but their relevance is clear.

### 2.   MGA's development strategies are not better than its competitors' strategies.

In any case, Mattel must have the opportunity to present evidence that MGA's profits are not a result of its "innovative" development strategies, whatever their source, but are indeed the result of the doll.[24] This is the gist of the analysis that has been offered by Mattel's damages expert. He opines that a proper apportionment analysis, if any, is done by considering the normal rate of return for three companies: Hasbro, Mattel and Jakks. "[████████████████████████████ ████████████████████████████████████████ ████████████████████" He then ████████████████ ████████████ to determine the amount that is attributable to the copyrights.[25]

To undermine this explanation, MGA will attempt to show that its profits from marketing, advertising and the like are greater that the industry averages. Mattel must be permitted to present rebuttal evidence that MGA uses the <u>same</u> strategies as

---

[22] Supplemental Response to MGA Interrogatory No. 1, dated December 7, 2007, at 38-44, Proctor Dec., Ex. 14.

[23] <u>Id.</u>, Proctor Dec., Ex. 14.

[24] MGA's own expert opines that "MGA Entertainment engaged in the <u>classic</u> brand-building activities." Expert Report of Dr. Erich Joachmsthaler, pg. 47, ¶ 87, Proctor Dec., Ex. 22.

[25] Deposition Transcript of Michael Wagner at 198:1-18, Hauss Dec., Ex. 23.

MATTEL'S OPP. TO MGA'S MIL NO. 6 [TO] EXCLUDE REFERENCE TO AND USE OF PHASE TWO EVIDENCE

the other industry leaders, of which Mattel is one, and therefore that the profits attributable to marketing, packaging and themes are no different for MGA's Bratz than for the other products sold by industry leaders.   The evidence to this effect is extensive, and it is critical to Mattel's ability to rebut MGA's efforts to apportion the damages owed by claiming extraordinary strategies leading to reduced damages.

For example, such evidence includes that after the initial launch of Bratz, MGA spent a <u>smaller</u> percentage of money from sales for sales and marketing than its competitors.[26] "███████████████████████████████ ████████████████████," which "██████████ ██████" <u>without</u> the benefit of advertising.[27]

Such evidence also includes that MGA copied its competition's development strategies in countless endeavors. thus undercutting MGA's claim of "superior" strategic abilities:

- When Isaac Larian was informed that the clothing styles for his western style Bratz doll were "████" he retorted ███████████████ ████,"[28]

- Paula Garcia wrote employees in Hong Kong product development to make sure they included "████████████████████████" because "██████████████,"[29]

- In an email to colleagues, Paula Garcia reported on a meeting with Isaac Larian in which Larian insisted that the packaging for the Bratz line

---

[26]   Expert Rebuttal Report of Michael J. Wagner, March 17, 2008 pgs. 15-16, Buchakjian Dec., Ex. 36.

[27]   <u>Id.</u>

[28]   Email from Isaac Larian to Carter Bryant and Paula Garcia, dated December 15, 2004, Buchakjian Dec., Ex. 38.

[29]   Email from Paula Garcia to Dennis Soai and Elaine Yip, dated January 31, 2007, Buchakjian Dec., Ex. 39.

1    must have "████████████████████████████

2    ███████████████████████████" and ████████████████████

3    ██████,"[30]

4    • The MGA "████████" for week ending August 1, 2003, states that

5    "███████████████████████████████████████████████

6    ████████████████████████████████████████████████

7    ████████████████████████████,"[31]

8    • Paula Garcia directed another MGA employee to "████████████████

9    ████████████████████████████████," which

10    included a list of themed Barbie dolls. Mr. Bryant replied, "███████

11    ███████████████████████,"[32]

12    MGA's "innovative" techniques also include emulating the competition by

13 hiring Mattel's employees, precisely because they set the industry standard for

14 marketing and development. MGA's contention that its efforts were in a different

15 league than Mattel's and its others is belied by its own approach to hiring.

16    • Paula Treantafelles provided Mr. Larian and a colleague "██████

17    ██████████████████████████████████████████████████

18    ████████████████,"[33] Mr. Larian responded ████████████████████

19    ██████████████████████████,"[34]

---

[30]   Email from Paula Garcia to Elaine Yip, Aileen Storer, Dennis Soai, Mia Garcia, Desiree Ronquillo, Ana Parkinson, Ione Jefferies, Jessica Wei, Kathleen Suh, Jier Su, Ninette Pimbleton, dated September 12, 2006, Buchakjian Dec., Ex. 40.

[31]   Attachment to email from Summer Wells to Isaac Larian, dated August 3, 2003, Buchakjian Dec., Ex. 41.

[32]   Email chain from Paula Garcia to Carter Bryant, dated June 28, 2006, Buchakjian Dec., Ex. 42.

[33]   Email chain from Paula Treantafalles to Eve Johnson and Isaac Larian, dated January 29, 2002, Buchakjian Dec., 43.

[34]   Id.

1    • In an email dated October 17, 2000, Paula Treantafelles asked Maureen

2       Mullen, another former Mattel employee who worked on Diva Starz,

3       ███████████████████████████████████████████

4       ████████████████ and

5    • MGA hired Mercedeh Ward, a senior engineer, away from Mattel in

6       October 2000;[35] and

7    • Carter Bryant made a list of Mattel employees that MGA could

8       potentially hire away in response to Mr. Larian's request for names of

9       "██████████████████████████████████████████

10      ████████████████████████████████ "[36].

11          MGA, not Mattel, has put at issue just how "innovative" its development

12   strategies really were.  It is MGA's experts who are taking the position that MGA was

13   in a league of its own when it came to marketing and branding.  To rebut this claim,

14   Mattel must be able to prove that MGA's "innovative" strategies were nothing more

15   than attempts to mimic the competition and get its competitors' employees -- Mattel

16   employees -- to come to MGA to do the same job for MGA, because Mattel

17   employees are the "███."  Such evidence is critical for the jury to evaluate MGA's

18   apportionment argument; Mattel must be able to present this evidence to the jury.

19

20

21

22

23

24

25   [35]  Email from Mercedeh Ward to Isaac Larian, dated October 3, 2000, Buchakjian Dec.,
26   Ex. 44.

     [36]  Email chain between Carter Bryant and Isaac Larian, dated February 15, 2002,
27   Buchakjian Dec., Ex. 46.

28

## V.   MATTEL HAS NO PLANS TO INTRODUCE EVIDENCE THAT "MGA LAUNCHED PRODUCTS TO INTERFERE WITH MATTEL'S SUCCESS" IN PHASE ONE.

MGA's motion frankly does not specify what it means by its request that Mattel be barred from presenting evidence in Phase One that "MGA launched products to interfere with Mattel's success." Obviously, evidence relating to Bratz is directly relevant to Phase One. As to evidence of other products launched by MGA to interfere with Mattel's success, Mattel reserves the right to rebut any argument, of which it is now simply unaware, and which MGA's cursory motion and memorandum fail to detail, that would open the door to such evidence in Phase One. Beyond that, and consistent with Mattel's own Motion in Limine as to Phase Two evidence, MGA and Mattel product launches that are independent of and unrelated to the issues in Phase One should be excluded from Phase One.

## VI.   EVIDENCE THAT MGA "INDUCED MATTEL EMPLOYEES TO WORK OFF-HOURS FOR MGA" IS DIRECTLY RELEVANT TO PHASE ONE.

As detailed above, see section I supra, MGA is apparently seeking to exclude all evidence relating to its dealings with other Mattel employees, even those who it hired specifically to work on Bratz including in 2000, in obvious and clear violation of their obligations to Mattel: such conduct evidences MGA's disregard for Mattel's rights and the malice with which it sought to aid Bryant in breaching his own duties to Mattel and assigning interests that were not his.

Throughout the discovery in this action, the MGA defendants repeatedly denied that any other Mattel employees had worked on Bratz, let alone in 2000. It was not until the December 2007 deposition of Veronica Marlow that Mattel learned

1  that three Mattel employees -- Isabel Ana Cabrera, Beatriz Morales and Maria Elena

2  Salazar -- all worked on Bratz for several years, some commencing in 2000.[37]  Ms.

3  Cabrera even worked in the same department with Bryant;[38]  Ms. Salazar submitted a

4  2003 employment application to MGA that included as  one of her prior duties –

5  while employed by Mattel -- "███████████████████████████"[39]  Having

6  succeeded until the eleventh hour in trying to block Mattel from discovering this

7  critical evidence, it simply adds insult to injury for MGA now to claim that,

8  notwithstanding its direct and obvious relevance to the issues raised in Phase One, the

9  jury should be blocked from learning that Bryant was not the only Mattel employee

10  MGA induced to work for it on Bratz while employed by Mattel.

## VII.  **MATTEL HAS NO PLANS TO INTRODUCE GENERAL EVIDENCE THAT MGA "DEFAMED MATTEL TO VENDORS AND THE PUBLIC."**

16      MGA's motion does not specify what it means by its request that Mattel be

17  barred from presenting evidence in Phase One that "MGA defamed Mattel to vendors

18  and the public."  Evidence of false statements made by the MGA defendants to the

19  press, public, or others  with respect to the origin, development, creation or

20  ownership of Bratz, however, are clearly relevant and admissible to prove the

21  defendants' motive, intent and plan.  Subject to this reservation, Mattel's own Motion

22  in Limine would exclude as to Phase One evidence  of wrongdoing, including

23  defamation, that is not relevant to the issues raised by Phase One.

---

[37]  See Marlow Dep. Tr., at 306:8-25, 363:15-21, 288:8-289:21, 307:8-308:1, Hauss Dec., Ex. 16.

[38]  Id. at 296:18-24.

[39]  Salazar employment application, Buchakjian Dec., Ex. 35.

## VIII.  <u>EVIDENCE PERTAINING TO THE TRUTHFULNESS OF A WITNESS IS ADMISSIBLE REGARDLESS OF THE TRIAL PHASE</u>

Federal Rule of Evidence 608 permits a party to introduce evidence relating to the truthfulness of a witness.  "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation" that relates to truthfulness.  <u>Fed. R. Evid.</u> 608(a).  "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness" may "be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."  <u>Fed. R. Evid.</u> 608(b).  The subject of the examination is irrelevant so long as it relates to the truthfulness of a witness.  There is no basis for excluding impeachment testimony of witnesses in Phase One merely MGA's witnesses' lies may also go to issues in Phase Two.   Mattel should be permitted to introduce evidence -- regardless of the Phase to which it relates --  to impeach the credibility of MGA's witnesses.

### <u>Conclusion</u>

For the foregoing reasons, Mattel respectfully opposes MGA's Motion to Exclude MGA Parties' Motion in Limine No. 6 [to] Exclude Reference To and Use Of Phase Two Evidence to the extent that MGA requests a blanket ruling excluding any Phase Two evidence.  "Phase Two" evidence  should be admissible in Phase One (1) if it is relevant to the timing or creation of Bratz, including MGA's hiring of Mr. Bryant and  its intent, plan, or motive in committing any of the wrongful acts at issue in Phase One; (2) as rebuttal evidence, <u>if</u> MGA is permitted to present evidence of its

1  claims for apportionment of profits "attributable to factors other than the copyrighted

2  work" during Phase One; and (3) for impeachment purposes.

3

4

5  DATED:  April 28, 2008            QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP

6                                    By  John B. Quinn / RLF

7                                         John B. Quinn

8                                         Attorneys for Plaintiff
                                          Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2486383.2

-19-