EXHIBIT 76

THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
E-mail: rkennedy@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

CARTER BRYANT, an individual

Plaintiff,

v.

MATTEL, INC., a Delaware corporation

Defendant.

Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC.

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case No. 04-9059 and Case No. 05-2727

**MGA ENTERTAINMENT, INC.'S SUPPLEMENTAL RESPONSES TO MATTEL, INC.'S REVISED THIRD SET OF INTERROGATORIES**

Honorable Stephen G. Larson
Courtroom 1

Discovery Cut-Off: March 3, 2008

**PROPOUNDING PARTY:** **MATTEL, INC. ("MATTEL")**

**RESPONDING PARTY:** **MGA ENTERTAINMENT, INC. ("MGA")**

**SET NUMBER:** **REVISED THIRD**

11-30



EXHIBIT 76
PAGE 133

**PRELIMINARY STATEMENT**

MGA hereby serves its objections to Mattel's Revised Third Set of Interrogatories. MGA is not yet in a position to serve its substantive responses to Mattel's Revised Third Set of Interrogatories, in part due to Mattel's failure to provide meaningful document, deposition and other discovery and also the transition of MGA's representation from prior counsel of record to Skadden, Arps. MGA intends to supplement its objections with substantive responses to the unobjectionable portions of the interrogatories contained in Mattel's Revised Third Set of Interrogatories as soon as it is in a position to do so and after it has concluded meet and confer sessions with Mattel, including with respect to Mattel's outstanding discovery obligations.

The General Response set forth herein applies to all responses that MGA is providing in response to these interrogatories (the "Interrogatories") or may in the future provide in response to any discovery request in this action. The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of MGA's discovery regarding the information that Mattel seeks. Discovery and other investigation or research concerning this litigation are continuing. Mattel has produced almost no documents to date and has produced no documents from its Zeus computer system, and has not provided other discovery responses, including without limitation supplemental responses to its March 7, 2005, responses to MGA's First Set of Interrogatories (which responses were comprised almost entirely of objections). It is

EXHIBIT 76 PAGE 734

anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead MGA to discover other information responsive to these Interrogatories. MGA therefore reserves the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence. MGA does not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatories or any particular request therein, even where MGA has not otherwise objected to a particular interrogatory, or has agreed to provide information responsive to a particular interrogatory.

No incidental or implied admissions are intended by this Response. These responses should not be taken as an admission that MGA accepts or admits the existence of any facts set forth or assumed by any instruction, definition or interrogatory.

**GENERAL OBJECTIONS**

MGA responds to these Interrogatories subject to the following general objections and limitations, each of which is incorporated into each and every response as though fully set forth therein:

1. MGA objects to these Interrogatories to the extent they seek information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

2. MGA objects to these Interrogatories to the extent they seek information not relevant to the claims or defenses of any party to this action and not



EXHIBIT 76
PAGE 735

reasonably calculated to lead to the discovery of admissible evidence.

3. MGA objects to these Interrogatories to the extent they seek information which by reason of public filing or otherwise is already in Mattel's possession or is readily accessible to Mattel.

4. MGA objects to these Interrogatories to the extent they seek the disclosure of information (1) not currently within its possession, custody or control; (2) that MGA cannot locate after a reasonably diligent search; or (3) that refer to persons, entities, or events not known to MGA.

5. MGA objects to these Interrogatories to the extent they are overbroad and unduly burdensome.

6. MGA objects to the definitions and instructions to the extent such definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific term or specific interrogatories on the ground that such enlargement, expansion, or alteration renders such a term or request vague, ambiguous, unintelligible, overly broad, unduly burdensome or uncertain.

7. MGA objects to the following definitions in these Interrogatories:

(a) MGA objects to the definition of the term "BRATZ" (Definitions ¶ 9) as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead and confuse the trier of fact. The definition includes "any project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term 'Bratz' (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been marketed as part of the 'Bratz' line, and each version or iteration of such product, doll or DESIGN or any portion thereof," and it goes on.

EXHIBIT 76
PAGE 736

By incorporating the definition of DESIGN, the overly broad definition of BRATZ includes two-dimensional and three-dimensional representations, including "works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements . . . ." (Definitions, ¶ 8.) These convoluted and multi-part definitions combine to render the interrogatories vague, ambiguous and overly broad, and to include within the term BRATZ things that do not fairly represent the Bratz line of dolls, accessories and related products that are the subject of this case. In responding to these interrogatories, MGA will interpret the term BRATZ to mean the line of dolls introduced by MGA to the market for sale in May or June of 2001 and subsequent dolls, accessories and other products known as Bratz or associated by MGA with the Bratz line of dolls;

(b) MGA objects to the definition of the term "BRATZ DOLL" (Definitions ¶ 12) as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead and confuse the trier of fact. The definition includes any doll that "REFERS OR RELATES TO BRATZ." Mattel's definition of the terms "BRATZ" and "REFERS OR RELATES" renders the definition of "BRATZ DOLL" unintelligible because MGA cannot know, by way of example, what dolls may "deal with, comment on, respond to, . . . or in any way pertain" (Definition ¶ 20) to "BRATZ." In responding to these interrogatories, MGA will interpret the term "BRATZ DOLL" to mean the line of dolls introduced by MGA to the market for sale in May or June of 2001 and subsequent dolls known as Bratz;

(c) MGA objects to the definition of the term "CREATED" (Definitions ¶ 21) as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead and confuse the trier of fact. The definition strays far from the English meaning of the term "created" by including concepts such as "improved," "altered," "conceived of" and "reduced to practice." Thus, by way of example, under

EXHIBIT 76
PAGE 137

Mattel's definition of "CREATED," the jury could be misled into believing that a person "CREATED" a particular thing when that person did not, but only slightly altered or improved the thing. In responding to these interrogatories, MGA will not interpret the term "CREATED," but rather will respond using words contained within the Mattel definition in their normal, accepted meaning;

(d) MGA objects to the definition of the term "INVENTIONS AGREEMENT" (Definitions ¶ 23) as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead and confuse the trier of fact. The definition includes "any other version of such January 4, 1999 agreement." In responding to these interrogatories, MGA will interpret the term "INVENTIONS AGREEMENT" to refer to the document Bates numbered M0001596;

(e) MGA objects to the definition of the term "BRATZ INVENTION" (Definitions ¶ 10) as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead and confuse the trier of fact. The definition strays far from the English meaning of the term "invention" by including concepts such as representation, idea, concept, work, process, procedure, plan, improvement, design and development, none of which necessarily equate to an invention. In responding to these interrogatories, MGA will not interpret the term "BRATZ INVENTION," but rather will respond using words contained within the Mattel definition in their normal, accepted meaning.

(f) MGA objects to the terms "IDENTIFY" or "IDENTITY" (Definitions ¶ 28) as overbroad, unduly burdensome, vague, ambiguous, and oppressive. Mattel's definition of these terms inherently call for answers to multiple discrete questions or subparts to questions. For example, when those terms are used to reference any BRATZ INVENTION, the use of those terms requests at least 10 different and distinct facts: (a) the Bates number of any document that "REFERS OR RELATES TO the BRATZ INVENTION"; (b) the IDENTITY of the individual author or creator of the BRATZ INVENTIONS; (c) the IDENTITY of each other

EXHIBIT 16

PAGE 138

individual who contributed in any manner to the BRATZ INVENTION; (d) the form, material and medium of the BRATZ INVENTION; (e) the title or name of the BRATZ INVENTION; (f) the version, modification, revision or iteration number of the BRATZ INVENTION; (g) the current location of the original of the BRATZ INVENTION; (h) the first day on which the BRATZ INVENTION was created; (i) the last day on which the BRATZ INVENTION was CREATED; (j) whether the entire invention was CREATED during the period of time listed in the Interrogatory (and if not, which portions were created during, earlier, or later than the period of time listed in the Interrogatory.) Therefore, any interrogatory that includes or incorporates the terms "IDENTIFY" or "IDENTITY" are necessarily compound and should be posed as separate interrogatories.

(g) MGA objects to the terms "any" and "REFER OR RELATE TO" on the grounds and to the extent that they are overbroad, unduly burdensome or are vague and ambiguous in the context of the interrogatories as written and as those interrogatories would be plainly understood absent Mattel's definitions.

8. MGA objects to these interrogatories to the extent that they may unfairly seek to restrict the facts on which MGA may rely at trial. Discovery has not been completed and MGA is not yet necessarily in possession of all the facts and documents upon which MGA intends to rely. All of the responses submitted herewith are tendered to Mattel with the reservation that the responses are submitted without limiting the evidence on which MGA may rely to support the contentions and defenses that MGA may assert at the trial of this action and to rebut or impeach the contentions, assertions and evidence that Mattel may present. MGA reserves the right to supplement or amend these responses at a future date.

9. MGA objects to each interrogatory to the extent that it seeks information that will be the subject of expert witness testimony and that is therefore premature.



EXHIBIT 16
PAGE 739

10. MGA objects to each interrogatory to the extent that it seeks the disclosure of confidential, proprietary, or trade-secret information.

11. MGA objects to each interrogatory to the extent that it calls for a legal conclusion.

12. MGA reserves the right to object on any ground at any time to such other and supplemental discovery requests as Mattel may propound involving or relating to the same subject matter of these interrogatories.

13. The responses below shall not be construed as an admission as to the relevance or admissibility of any statement or characterization contained in any interrogatory. MGA reserves all objections, including without limitation objections as to competency, relevance, materiality, privilege, authenticity, or admissibility.

14. Consistent with Rule 33(d) of the Federal Rules of Civil Procedure, MGA objects to providing responses to interrogatories that can be derived from documents that have or will be produced (when requested in compliance with Rule 26) and where the burden to derive such information is substantially the same for Mattel as it is for MGA.

15. In responding to these Interrogatories, MGA has not and will not comply with any instructions or definitions that seek to impose requirements in addition to those imposed by the Federal Rules of Civil Procedure and any applicable local rule.

16. To the extent MGA responds to an interrogatory, it does so without waiving or intending to waive but rather, on the contrary, preserving and intending to preserve, its contention that anything Mr. Bryant did on weekends, evenings, vacation and any other time outside ordinary business hours was not done while he was working for Mattel. MGA's response may not be taken as an admission that the information it provides in its response in any way reflects or evidences work performed by Mr. Bryant while he was working for Mattel or that MGA adopts or agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's

interrogatory.

17. MGA objects to each of Mattel's interrogatories because Mattel has propounded more than 50 interrogatories, including discrete subparts. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

**SPECIFIC OBJECTIONS AND RESPONSES**

Without waiving or departing from its General Response and General Objections, and specifically incorporating them in its response to each Interrogatory below, MGA makes the following additional objections and responses to specific Interrogatories:

**INTERROGATORY NO. 27:**

IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ INVENTION so identified state all facts that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 27:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding the Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTION, CREATED, IDENTIFY and REFER OR RELATES TO. MGA further objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad and unduly burdensome, as Mattel's definition of this term calls for responses to multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory would require MGA to provide a

EXHIBIT 76

PAGE 741

multitude of discrete responses for each BRATZ INVENTION, including:

(a) the Bates number of any document that "REFERS OR RELATES TO the BRATZ INVENTION;"

(b) the IDENTITY of the individual author or creator of the BRATZ INVENTION;

(c) the IDENTITY of each other individual who contributed in any manner to the BRATZ INVENTION;

(d) the form, material and medium of the BRATZ INVENTION;

(e) the title or name of the BRATZ INVENTION;

(f) the version, modification, revision or iteration number of the BRATZ INVENTION;

(g) the current location of the original of the BRATZ INVENTION;

(h) the first day on which the BRATZ INVENTION was CREATED;

(i) the last day on which the BRATZ INVENTION was CREATED;

(j) whether the entire invention was CREATED during the period of time listed in the Interrogatory (and if not, which portions were created during, earlier, or later than the period of time listed in the Interrogatory).

This interrogatory is further compounded by Mattel's definition of IDENTITY, which purports to require MGA to provide the following information for each of the individuals Mattel is requesting that MGA identify with respect to each BRATZ INVENTION: (a) the individual's name; (b) any known business title; (c) the current or last known business affiliation; (d) current or last known residential address; (e) current or last known business address; (f) current or last known relationship to MGA; and (g) current or last known telephone number.

MGA further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED, DESIGN and REFER OR RELATES TO. In particular, the term BRATZ

EXHIBIT 16
PAGE 742

INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR RELATES TO, is so broad and over-inclusive that it could be read to include each and every thought, idea and conversation that anyone may have had about BRATZ during the time period at issue.

MGA further objects to the extent that this interrogatory seeks information that is outside of MGA's knowledge and is not in MGA's possession, custody or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all* DOCUMENTS" (emphasis added).

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First

EXHIBIT 70
PAGE 743

Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 27:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding the Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTION, CREATED, IDENTIFY and REFER OR RELATES TO. MGA further objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad and unduly burdensome, as Mattel's definition of this term calls for responses to multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory would require MGA to provide a multitude of discrete responses for each BRATZ INVENTION, including:

(a) the Bates number of any document that "REFERS OR RELATES TO the BRATZ INVENTION;"

(b) the IDENTITY of the individual author or creator of the BRATZ INVENTION;

(c) the IDENTITY of each other individual who contributed in any manner to the BRATZ INVENTION;

(d) the form, material and medium of the BRATZ INVENTION;

(e) the title or name of the BRATZ INVENTION;

(f) the version, modification, revision or iteration number of the BRATZ INVENTION;

(g) the current location of the original of the BRATZ INVENTION;

(h) the first day on which the BRATZ INVENTION was CREATED;

(i) the last day on which the BRATZ INVENTION was CREATED;

(j) whether the entire invention was CREATED during the period of time listed in the Interrogatory (and if not, which portions were created during,

EXHIBIT 76
PAGE 744

earlier, or later than the period of time listed in the Interrogatory).

This interrogatory is further compounded by Mattel's definition of IDENTITY, which purports to require MGA to provide the following information for each of the individuals Mattel is requesting that MGA identify with respect to each BRATZ INVENTION: (a) the individual's name; (b) any known business title; (c) the current or last known business affiliation; (d) current or last known residential address; (e) current or last known business address; (f) current or last known relationship to MGA; and (g) current or last known telephone number.

MGA further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED, DESIGN and REFER OR RELATES TO. In particular, the term BRATZ INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR RELATES TO, is so broad and over-inclusive that it could be read to include each and every thought, idea and conversation that anyone may have had about BRATZ during the time period at issue.

MGA further objects to the extent that this interrogatory seeks information that is outside of MGA's knowledge and is not in MGA's possession, custody or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all* DOCUMENTS" (emphasis added).

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory on the ground that it is premature because the invention, creation, conception, or reduction

EXHIBIT 76
PAGE 745

to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

Subject to and without waiving the foregoing objections, MGA responds as follows:

With respect to "inventions" as that term is used in utility patent law, MGA does not make any affirmative contentions as to whether there were any such inventions, except that MGA contends that the conception and/or reduction to practice of any such invention occurred before January 1999 and/or after October 20, 2000. With respect to design patents, in August or September of 1998, Carter Bryant, inspired by images he was exposed to, including in the August 1998 issue of *Seventeen Magazine*, the appearance of teenagers, as well as other images in the public domain, conceived of an idea for a line of dolls he named Bratz. At the same time, Bryant sketched a series of drawings to illustrate his idea. To the extent said idea contained elements covered by design patent law, no such invention was "reduced to practice" until after October 20, 2000. Nor did it fall within the scope of the term "inventions" as used in the "INVENTIONS AGREEMENT."

The following persons have knowledge of the facts and circumstances surrounding Bryant's conception and his illustrative drawings that he named Bratz: Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas Bryant; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince.

The following documents may be relevant to these facts: the sketches drawn by Bryant in August or September of 1998; publicly available materials that Bryant identified in his deposition testimony as inspiring his conception of a line of dolls in August or September of 1998, including but not limited to the August 1998 issue of *Seventeen Magazine*; and other documents shown to Bryant at his November

EXHIBIT 76

PAGE 7410

2004 deposition.

**INTERROGATORY NO. 28:**

IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 28:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding the Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTION, CREATED, IDENTIFY, and REFER OR RELATED TO. MGA further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the term BRATZ INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR RELATES TO, is so broad and over-inclusive that it could be read to include each and every thought, idea and conversation that anyone may have had about BRATZ during the time period at issue.

MGA further objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad and unduly burdensome, as Mattel's definition of this term calls for responses to multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory would require MGA to provide a multitude of discrete responses for each BRATZ INVENTION, including:

EXHIBIT 76

PAGE 741

(a) the Bates number of any document that "REFERS OR RELATES TO the BRATZ INVENTION;"

(b) the IDENTITY of the individual author or creator of the BRATZ INVENTION;

(c) the IDENTITY of each other individual who contributed in any manner to the BRATZ INVENTION;

(d) the form, material and medium of the BRATZ INVENTION;

(e) the title or name of the BRATZ INVENTION;

(f) the version, modification, revision or iteration number of the BRATZ INVENTION;

(g) the current location of the original of the BRATZ INVENTION;

(h) the first day on which the BRATZ INVENTION was CREATED;

(i) the last day on which the BRATZ INVENTION was CREATED;

(j) whether the entire invention was CREATED during the period of time listed in the Interrogatory (and if not, which portions were created during, earlier, or later than the period of time listed in the Interrogatory).

This interrogatory is further compounded by Mattel's definition of IDENTITY, which purports to require MGA to provide the following information for each of the individuals Mattel is requesting that MGA identify with respect to each BRATZ INVENTION: (a) the individual's name (b) any known business title; (c) the current or last known business affiliation; (d) current or last known residential address; (e) current or last known business address; (f) current or last known relationship to MGA; and (g) current or last known telephone number.

MGA further objects to the extent that this interrogatory seeks information that is outside of MGA's knowledge and is not in MGA's possession, custody or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all* DOCUMENTS" (emphasis added).

EXHIBIT 10
PAGE 748

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

MGA further objects to the interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules. MGA further objects to the interrogatory as unduly burdensome, on the grounds that it would require MGA to identify numerous documents that have already been produced and are readily available to Mattel.

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 28:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding the Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTION, CREATED,

EXHIBIT 16
PAGE 749

IDENTIFY, and REFER OR RELATED TO. MGA further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the term BRATZ INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR RELATES TO, is so broad and over-inclusive that it could be read to include each and every thought, idea and conversation that anyone may have had about BRATZ during the time period at issue.

MGA further objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad and unduly burdensome, as Mattel's definition of this term calls for responses to multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory would require MGA to provide a multitude of discrete responses for each BRATZ INVENTION, including:

(a) the Bates number of any document that "REFERS OR RELATES TO the BRATZ INVENTION;"

(b) the IDENTITY of the individual author or creator of the BRATZ INVENTION;

(c) the IDENTITY of each other individual who contributed in any manner to the BRATZ INVENTION;

(d) the form, material and medium of the BRATZ INVENTION;

(e) the title or name of the BRATZ INVENTION;

(f) the version, modification, revision or iteration number of the BRATZ INVENTION;

(g) the current location of the original of the BRATZ INVENTION;

(h) the first day on which the BRATZ INVENTION was CREATED;

(i) the last day on which the BRATZ INVENTION was CREATED;

(j) whether the entire invention was CREATED during the period of

time listed in the Interrogatory (and if not, which portions were created during, earlier, or later than the period of time listed in the Interrogatory).

This interrogatory is further compounded by Mattel's definition of IDENTITY, which purports to require MGA to provide the following information for each of the individuals Mattel is requesting that MGA identify with respect to each BRATZ INVENTION: (a) the individual's name (b) any known business title; (c) the current or last known business affiliation; (d) current or last known residential address; (e) current or last known business address; (f) current or last known relationship to MGA; and (g) current or last known telephone number.

MGA further objects to the extent that this interrogatory seeks information that is outside of MGA's knowledge and is not in MGA's possession, custody or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all* DOCUMENTS" (emphasis added).

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

MGA further objects to the interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules. MGA further objects to the interrogatory as unduly burdensome, on the grounds that it would require MGA to identify numerous documents that have already been produced and

EXHIBIT 76
PAGE 751

are readily available to Mattel.

Subject to and without waiving the foregoing objections, MGA responds as follows:

With respect to Bratz dolls and accessories, as concerns the term "inventions" as that is used in utility patent law, and/or in the "INVENTIONS AGREEMENT," MGA does not make any affirmative contentions as to whether there were any such inventions, except that MGA contends the conception and/or reduction to practice of any such invention occurred before January 1999 and/or after October 20, 2000. With respect to package design for Bratz products, MGA contends that certain aspects of said designs qualified as design patents. With respect to design patents, to the extent that the Bratz line of dolls, first marketed by MGA in 2001, contained features covered by design patent law, said inventions were "reduced to practice" by MGA after October 20, 2000 and before June 1, 2001.

The following persons have knowledge of the facts and circumstances regarding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Sam Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Rachel Harris; Maggie Siu; Ben Ton; Samuel Wong; Ray Wong; Steffan Smith; and Samir Khare.

The following documents may be relevant to these facts: all "DOCUMENTS" that refer to or evidence the work performed by MGA employees and freelancers toward the reduction to practice of the first generation of Bratz dolls during the period after October 19, 2000 through June 1, 2001, including but not limited to: (i) documents showing the development of the first generation of Bratz dolls; (ii) documents showing exchanges with the Hong Kong factory regarding the development of the first generation of Bratz dolls; (iii) documents showing the timing of the development of packaging, fashion, and accessories for the first

EXHIBIT 76

PAGE 152

generation of Bratz dolls; (iv) documents related to the January 2001 Hong Kong toy fair; (v) documents related to the February 2001 New York toy fair; (vi) polyurethane samples of prototypes; (vii) rotocasts and sculpts in Hong Kong; and (viii) invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria O'Connor, and other invoices submitted by freelancers for work performed on the Bratz project. The documents evidencing this work are too numerous to identify individually.

**INTERROGATORY NO. 29:**

IDENTIFY each and every BRATZ INVENTION that was CREATED, in whole or in part, after January 3, 1999 and before October 21, 2000, and for each BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO the timing of the creation of such BRATZ INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 29:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTION, CREATED, REFER OR RELATE TO, and IDENTIFY. MGA further objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad and unduly burdensome, as Mattel's definition of this term calls for responses to multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory would require MGA to provide a multitude of discrete responses for each BRATZ INVENTION, including:

(a) the Bates number of any document that "REFERS OR RELATES TO the BRATZ INVENTION;"

(b) the IDENTITY of the individual author or creator of the BRATZ INVENTION;

(c) the IDENTITY of each other individual who contributed in any manner to the BRATZ INVENTION;

(d) the form, material and medium of the BRATZ INVENTION;

(e) the title or name of the BRATZ INVENTION;

(f) the version, modification, revision or iteration number of the BRATZ INVENTION;

(g) the current location of the original of the BRATZ INVENTION;

(h) the first day on which the BRATZ INVENTION was CREATED;

(i) the last day on which the BRATZ INVENTION was CREATED;

(j) whether the entire invention was CREATED during the period of time listed in the Interrogatory (and if not, which portions were created during, earlier, or later than the period of time listed in the Interrogatory).

This interrogatory is further compounded by Mattel's definition of IDENTITY, which purports to require MGA to provide the following information for each of the individuals Mattel is requesting that MGA identify with respect to each BRATZ INVENTION: (a) the individual's name (b) any known business title; (c) the current or last known business affiliation; (d) current or last known residential address; (e) current or last known business address; (f) current or last known relationship to MGA; and (g) current or last known telephone number.

MGA further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED, DESIGN and REFER OR RELATES TO. In particular, the term BRATZ INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR RELATES TO, is so broad and over-inclusive that it could be read to include each and every thought, idea and conversation that anyone may have had about BRATZ

during the time period at issue.

MGA further objects to the extent that this interrogatory seeks information that is outside of MGA's knowledge and is not in MGA's possession, custody or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all* DOCUMENTS" (emphasis added).

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

MGA further objects to the interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules. MGA further objects to the interrogatory as unduly burdensome, on the grounds that it would require MGA to identify numerous documents that have already been produced and are readily available to Mattel.

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First

Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 29:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTION, CREATED, REFER OR RELATE TO, and IDENTIFY. MGA further objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad and unduly burdensome, as Mattel's definition of this term calls for responses to multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory would require MGA to provide a multitude of discrete responses for each BRATZ INVENTION, including:

(a) the Bates number of any document that "REFERS OR RELATES TO the BRATZ INVENTION;"

(b) the IDENTITY of the individual author or creator of the BRATZ INVENTION;

(c) the IDENTITY of each other individual who contributed in any manner to the BRATZ INVENTION;

(d) the form, material and medium of the BRATZ INVENTION;

(e) the title or name of the BRATZ INVENTION;

(f) the version, modification, revision or iteration number of the BRATZ INVENTION;

(g) the current location of the original of the BRATZ INVENTION;

(h) the first day on which the BRATZ INVENTION was CREATED;

(i) the last day on which the BRATZ INVENTION was CREATED;

(j) whether the entire invention was CREATED during the period of time listed in the Interrogatory (and if not, which portions were created during,

EXHIBIT 16

PAGE 756

earlier, or later than the period of time listed in the Interrogatory).

This interrogatory is further compounded by Mattel's definition of IDENTITY, which purports to require MGA to provide the following information for each of the individuals Mattel is requesting that MGA identify with respect to each BRATZ INVENTION: (a) the individual's name (b) any known business title; (c) the current or last known business affiliation; (d) current or last known residential address; (e) current or last known business address; (f) current or last known relationship to MGA; and (g) current or last known telephone number.

MGA further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED, DESIGN and REFER OR RELATES TO. In particular, the term BRATZ INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR RELATES TO, is so broad and over-inclusive that it could be read to include each and every thought, idea and conversation that anyone may have had about BRATZ during the time period at issue.

MGA further objects to the extent that this interrogatory seeks information that is outside of MGA's knowledge and is not in MGA's possession, custody or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all* DOCUMENTS" (emphasis added).

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

MGA further objects to the interrogatory on the ground that it is

premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules. MGA further objects to the interrogatory as unduly burdensome, on the grounds that it would require MGA to identify numerous documents that have already been produced and are readily available to Mattel.

Subject to and without waiving the foregoing objections, MGA responds as follows:

There were no inventions related to Bratz after January 3, 1999 and before October 21, 2000.

**INTERROGATORY NO. 30:**

State all facts that support YOUR contention, if YOU so contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over and/or has superior rights to MATTEL as to such BRATZ INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 30:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTION, INVENTIONS AGREEMENT, IDENTIFY and REFER OR RELATE TO. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all



EXHIBIT 16
PAGE 158

other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to this interrogatory to the extent it calls for a legal conclusion. MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests MGA to "state *all facts* . . . *and* IDENTIFY all PERSONS . . . and *all* DOCUMENTS" (emphasis added).

MGA further objects to the interrogatory on the grounds that it is vague, ambiguous and threatens to mislead the trier of fact in that it is stated in the hypothetical and therefore proceeds from the false premise that Bryant assigned rights in the Bratz line of dolls to Mattel and that all terms of the INVENTIONS AGREEMENT are binding and enforceable. *See e.g., Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention interrogatories directed at hypothetical scenarios). Any response to this interrogatory depends on, among other factual and legal factors, specifically which BRATZ INVENTION it is hypothetically assumed that Bryant assigned rights in to MGA and which rights he assigned, which information is not provided in the incomplete hypothetical scenario posited in this interrogatory.

MGA further objects to the interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA further objects on the grounds that the interrogatory seeks information not relevant to any claim or defense in the action and is not reasonably calculated to the discovery of admissible evidence because MGA denies that Bryant assigned any such rights to Mattel.

MGA objects to this interrogatory because Mattel has propounded more

EXHIBIT 70
PAGE 759

than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are to be limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 30:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTION, INVENTIONS AGREEMENT, IDENTIFY and REFER OR RELATE TO. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to this interrogatory to the extent it calls for a legal conclusion. MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests MGA to "state *all facts* . . . *and* IDENTIFY all PERSONS . . . and *all* DOCUMENTS" (emphasis added).

MGA further objects to the interrogatory on the grounds that it is vague, ambiguous and threatens to mislead the trier of fact in that it is stated in the hypothetical and therefore proceeds from the false premise that Bryant assigned rights in the Bratz line of dolls to Mattel and that all terms of the INVENTIONS AGREEMENT are binding and enforceable. *See e.g., Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention interrogatories directed at hypothetical scenarios). Any response to this interrogatory depends on, among other factual and legal factors, specifically which BRATZ

EXHIBIT 76

PAGE 760

INVENTION it is hypothetically assumed that Bryant assigned rights in to MGA and which rights he assigned, which information is not provided in the incomplete hypothetical scenario posited in this interrogatory.

MGA further objects to the interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA further objects on the grounds that the interrogatory seeks information not relevant to any claim or defense in the action and is not reasonably calculated to the discovery of admissible evidence because MGA denies that Bryant assigned any such rights to Mattel.

Subject to and without waiving the foregoing objections, MGA responds as follows:

MGA incorporates by reference its supplemental responses to Interrogatory Nos. 27, 28, 29 and 31 as though fully set forth herein, and responds further that, assuming Bryant assigned rights to inventions related to Bratz pursuant to the "INVENTIONS AGREEMENT," (i.e. under the terms of said Agreement and for inventions conceived of and/or reduced to practice during the period of Bryant's employment with Mattel to which said Agreement relates), MGA would have superior rights in the Bratz dolls because: (i) there were no "inventions" related to Bratz covered by the "INVENTIONS AGREEMENT;" (ii) the Bratz dolls were neither substantially similar to, nor a copy of, nor derivative of, Mattel's hypothetical rights; and (iii) Mattel waived any rights it may have had due to laches and the statute of limitations.

**INTERROGATORY NO. 31:**

State all facts that support YOUR contention, if YOU so contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR



EXHIBIT 76
PAGE 761

RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 31:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY and REFER OR RELATE TO. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA also objects to this interrogatory to the extent that it calls for a legal conclusion.

MGA objects that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless"). MGA further objects to the extent that this interrogatory seeks information outside of MGA's personal knowledge and is not in MGA's possession, custody or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS" (emphasis added).

MGA objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

EXHIBIT 16 PAGE 762

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 31:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY and REFER OR RELATE TO. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA also objects to this interrogatory to the extent that it calls for a legal conclusion.

MGA objects that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless"). MGA further objects to the extent that this interrogatory seeks information outside of MGA's personal knowledge and is not in MGA's possession, custody or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS" (emphasis added).

Subject to and without waiving the foregoing objections, MGA

EXHIBIT 16

PAGE 763

responds as follows:

MGA contends that Paragraph 3-a of the "INVENTIONS AGREEMENT" is unenforceable based on the equitable doctrine of laches, and the statute of limitations, in that Mattel intentionally delayed in taking legal action against MGA or Carter Bryant for several years in the belief that Mattel would be able to drive Bratz out of the marketplace through the introduction of a copycat line of My Scene Barbie dolls. Mattel only took legal action well after MGA had invested substantial amounts of capital and creative and innovative human effort in the Bratz line of dolls and had experienced enormous success in the market place, changing the fashion doll business forever. In addition, many Mattel employees knew following the introduction of the first generation of Bratz dolls to the market that Carter Bryant was the originator of the idea that led to the first generation of Bratz dolls.

The "INVENTIONS AGREEMENT" is also invalid and unenforceable insofar as it purports to prohibit Bryant from engaging in good faith and reasonable efforts to seek professional opportunities with Mattel competitors while still employed by Mattel.

These contentions are based on the following facts and circumstances: MGA is informed and believes that it was common knowledge at Mattel that many Mattel employees employed in the Mattel design center worked on a freelance basis for third parties, including Mattel competitors. Despite knowledge of this activity, Mattel rarely, if ever, enforced any rights it may have had to prohibit such freelancing. Mattel has therefore waived any right it may have had to enforce Paragraph 3-a of the "INVENTIONS AGREEMENT" against Carter Bryant by virtue of course-of-conduct contract law principles.

The following persons have knowledge of the facts and circumstances supporting this contention: current and former members of Mattel management, current and former members of Mattel's legal department, current and former

EXHIBIT 76
PAGE 704

employees in Mattel's Design Center, including, Robert Eckert, Alan Kaye, Matt Bousquette, Adrienne Fontanella, Richard De Anda, Ivy Ross and Margaret Leahy.

The following documents may be relevant to these facts: the "INVENTIONS AGREEMENT;" Mattel documents referring or relating to Mattel's enforcement, or lack thereof, of the provisions of similar agreements between Mattel and its employees; Mattel documents referring or relating to Mattel's knowledge or investigation of suspected violations of similar agreements between Mattel and its employees; Mattel's internal emails that have not been produced; documents from Mattel's Zeus computer systems; documents referring or relating to Mattel's market research; documents referring or relating to Mattel's public relations efforts; documents referring or relating to Mattel's advertising and advertising strategies. Mattel has produced very few documents in this action in response to MGA's outstanding requests. MGA recently served additional requests for production of documents. MGA reserves the right to supplement this response and all of its other responses after Mattel has completed its production.

This response is without prejudice to MGA's position that the "INVENTIONS AGREEMENT" as a whole is invalid and unenforceable as a violation of public policy.

**INTERROGATORY NO. 32:**

State all facts that support YOUR contention, if YOU so contend, that MATTEL is not or would not be entitled to injunctive relief as requested in its COMPLAINT and/or COUNTERCLAIMS if it is ultimately determined that MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 32:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates

EXHIBIT 14
PAGE 765

General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTIONS, IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, MATTEL. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory on the ground that it is premature because matters affecting Mattel's ability to obtain injunctive relief may be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA notes that the issue of injunctive relief will be decided by the Court after the conclusion of all jury deliberation relevant to the issue. MGA believes accordingly that the Court's review of injunctive relief issue will not occur until the conclusion of Phase 2.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks

EXHIBIT 76 PAGE 766

information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

MGA further objects to this interrogatory as it asks MGA to assume facts contrary to evidence, and further asks it to base any response on an incomplete and incomprehensible hypothetical scenario. *See, e.g., Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention interrogatories directed at hypothetical scenarios). Whether or not Mattel is or would or would not be "entitled to injunctive relief" depends on, among other factual and legal factors, which specific "BRATZ INVENTION" Mattel is hypothetically found to own, and whether and/or to what extent it is determined that any Bratz products that have been produced and sold are derivative works of any such BRATZ INVENTIONS, which information is not provided in the incomplete hypothetical scenario posited in this interrogatory. MGA also objects to this interrogatory on the grounds that Mattel – not MGA – bears the burden of proof to show that it is entitled to injunctive relief, it if is ultimately determined that Mattel owns one or more BRATZ INVENTIONS.

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 32:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTIONS, IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is

EXHIBIT 76 PAGE 1077

overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, MATTEL. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory on the ground that it is premature because matters affecting Mattel's ability to obtain injunctive relief may be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA notes that the issue of injunctive relief will be decided by the Court after the conclusion of all jury deliberation relevant to the issue. MGA believes accordingly that the Court's review of injunctive relief issue will not occur until the conclusion of Phase 2.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

EXHIBIT 76

PAGE 768

DOCUMENTS" (emphasis added).

MGA further objects to this interrogatory as it asks MGA to assume facts contrary to evidence, and further asks it to base any response on an incomplete and incomprehensible hypothetical scenario. *See, e.g., Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention interrogatories directed at hypothetical scenarios). Whether or not Mattel is or would or would not be "entitled to injunctive relief" depends on, among other factual and legal factors, which specific "BRATZ INVENTION" Mattel is hypothetically found to own, and whether and/or to what extent it is determined that any Bratz products that have been produced and sold are derivative works of any such BRATZ INVENTIONS, which information is not provided in the incomplete hypothetical scenario posited in this interrogatory. MGA also objects to this interrogatory on the grounds that Mattel – not MGA – bears the burden of proof to show that it is entitled to injunctive relief, it if is ultimately determined that Mattel owns one or more BRATZ INVENTIONS.

Subject to and without waiving the foregoing objections, MGA responds as follows:

Mattel is not entitled to injunctive relief for the following reasons:

(a) Mattel is not entitled to injunctive relief in accordance with the principles established by the United States Supreme Court in eBay v. MercExchange, 126 S. Ct. 1837 (2006).

(b) The original concepts contributed by Bryant to the creation of the Bratz dolls represent only one of the many factors that combined to make Bratz one of the most successful fashion dolls on the market. The contributions made by MGA to the Bratz dolls far outweigh any contributions made by Bryant prior to October 21, 2000 in terms of the overall factors that contributed to the commercial success of Bratz.

(c) Mattel played no role in the creation and/or selection of the Bratz

EXHIBIT 16
PAGE 764

slogan, "The Girls with a Passion for Fashion!" or the brand name "Bratz."

(d) Mattel played no role in the development of the Bratz line of dolls' innovative and trend-setting packaging.

(e) Mattel played no role in MGA's improvements, enhancements and changes to the Bratz dolls in the months and years on and/or after October 21, 2000.

(f) Mattel played no role in MGA's development of the fashions for the Bratz dolls.

(g) Mattel played no role in the development of Bratz Kidz, Bratz Petz, Bratz Babyz and other successful additions to the Bratz doll family.

(h) Mattel played no role in the development of the myriad of accessories for the Bratz dolls.

(i) Mattel played no role in the development of the successful themes that have enhanced the popularity of the Bratz dolls.

(j) Mattel played no role in the development of the Bratz animated TV series, Bratz TV commercials, or Bratz the movie.

(k) Mattel played no role in the development of the Bratz brand.

(l) If in 2000 Mattel had been presented with the opportunity to develop Bryant's idea for a line of fashion dolls, Mattel would not have pursued said opportunity because of a perceived threat to Mattel's Barbie franchise.

(m) Mattel's inequitable conduct through years of efforts to eliminate competition to its lines of fashion dolls.

(n) Mattel's inequitable conduct through specific acts of unfair competition, as previously set forth in MGA's Responses and Supplemental Responses to Mattel's First Set of Interrogatories Re: Claims of Unfair Competition Nos. 5, 6, 8, 9 and 10.

(o) The equitable doctrine of laches, in that Mattel intentionally delayed in taking legal action against MGA or Carter Bryant for several years in the

EXHIBIT 16
PAGE 770

belief that Mattel would be able to drive Bratz out of the marketplace through the introduction of a copycat line of My Scene Barbie dolls. Mattel only took legal action well after MGA had invested substantial amounts of capital and creative and innovative human effort in the Bratz line of dolls and had experienced enormous success in the marketplace, changing the fashion doll business forever.

(p) The statute of limitations.

The persons who have knowledge of the facts and circumstances supporting these contentions of inequitable conduct by Mattel have already been provided in MGA's supplemental responses to Interrogatory Nos. 27, 28, and 31.

To the extent that Mattel's interrogatory could be interpreted to require MGA to identify all documents that "REFER OR RELATE TO" substantially all facets of MGA's business, these documents are too numerous to identify individually without undue burden to MGA. The following categories of documents may be relevant to these facts: Mattel's Brand Directional Outlines; analyses and assessments of Mattel's marketing strategies prepared and/or produced by Young and Rubicam Brands; Mattel's Marketing Department assessments of Mattel's advertising and branding strategies; Mattel's Creative Briefs; and publicly available documents evidencing MGA's trademarks, patents, and copyrights.

**INTERROGATORY NO. 33:**

State all facts that support YOUR contention, if YOU so contend, that MATTEL is not entitled to an award of punitive or exemplary damages against YOU, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 33:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

EXHIBIT 16
PAGE 771

and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, and MATTEL. In particular, by way of example, the term YOU as defined by Mattel could be read to require MGA to state all facts supporting why Mattel is not entitled to an award of punitive damages against each of the responding parties in this litigation, thereby rendering the interrogatory impermissibly compound. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

MGA also objects to this interrogatory on the grounds that Mattel – not MGA – bears the burden of proof to show that it is entitled to an award of punitive or exemplary damages.

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 33:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, and MATTEL. In particular, by way of example, the term YOU as defined by Mattel could be read to require MGA to state all facts supporting why Mattel is not entitled to an award of punitive damages against each of the responding parties in this litigation, thereby rendering the interrogatory impermissibly compound. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for

EXHIBIT 10
PAGE 173

"all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

MGA also objects to this interrogatory on the grounds that Mattel – not MGA – bears the burden of proof to show that it is entitled to an award of punitive or exemplary damages.

Subject to and without waiving the foregoing objections, MGA responds as follows:

Mattel is not entitled to an award of punitive or exemplary damages against MGA because: (i) Mattel does not own any rights in the Bratz dolls; (ii) MGA has not violated or infringed any rights of Mattel with respect to the Bratz dolls; (iii) Mattel has not shown that MGA acted in bad faith; and (iv) Mattel has not presented any evidence to support the requirements for such an award against MGA.

**INTERROGATORY NO. 34:**

State all facts that support YOUR contention, if YOU so contend, that YOU did not intentionally interfere with the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 34:**

MGA incorporates by reference its General Response and General

Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, BRYANT, MGA, TRANSFER and ACQUIRE. In particular, by way of example, the term YOU as defined by Mattel could be read to require MGA to state all facts supporting why each of the responding parties did not "intentionally interfere with the INVENTIONS AGREEMENT," thereby rendering the interrogatory impermissibly compound. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

EXHIBIT 16

PAGE 775

DOCUMENTS" (emphasis added).

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 34:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, BRYANT, MGA, TRANSFER and ACQUIRE. In particular, by way of example, the term YOU as defined by Mattel could be read to require MGA to state all facts supporting why each of the responding parties did not "intentionally interfere with the INVENTIONS AGREEMENT," thereby rendering the interrogatory impermissibly compound. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

EXHIBIT 76

PAGE 776

requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

Subject to and without waiving the foregoing objections, MGA responds as follows:

MGA incorporates by reference its supplemental responses to Interrogatory No. 33 as though fully set forth herein, and further responds that MGA did not know, despite fair inquiry, that Carter Bryant had entered into the "INVENTIONS AGREEMENT." MGA responds further that MGA did not intentionally induce Bryant to breach any agreement (known or unknown) with Mattel, but instead it was Bryant who, through an intermediary, approached MGA, and pitched the Bratz concept to MGA. In addition, MGA does not believe that Bryant has breached the "INVENTIONS AGREEMENT" or any other agreement with Mattel, or breached any duties or obligations to Mattel.

The persons who have knowledge of the facts and circumstances supporting this contention that MGA did not intentionally interfere with the INVENTIONS AGREEMENT when Bryant transferred his rights in Bratz to MGA have already been identified in the supplemental responses to Interrogatory Nos. 27, 28, and 31.

Documents responsive to this interrogatory are protected by the attorney-client privileged or work product doctrine. MGA previously offered to stipulate to a limited waiver of these privileges and protections to permit inspection of such documents, but Mattel refused. Subject to these objections, MGA responds

that the following documents may be relevant to these facts: all documents showing Bryant's work on his "pitch" materials; documents evidencing Bryant's desire to be a freelance artist; documents evidencing Bryant's interactions with MGA prior to the execution of the October 4, 2000 agreement between Bryant and MGA; and the October 4, 2000 agreement between Bryant and MGA.

**INTERROGATORY NO. 35:**

State all facts that support YOUR contention, if YOU so contend, that YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 35:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOU, BRYANT, MGA and MATTEL. In particular, by way of example, the term YOU as defined by Mattel could be read to require MGA to state all facts supporting why each of the responding parties "did not aid or abet any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL," thereby rendering the interrogatory impermissibly compound. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the

EXHIBIT 76
PAGE 778

United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 35:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOU, BRYANT, MGA and MATTEL. In particular, by way of example, the term YOU as defined by Mattel could be read to require MGA to state all facts supporting why each of the responding parties "did not aid or abet any breach of

fiduciary duty or duty of loyalty owed by BRYANT to MATTEL," thereby rendering the interrogatory impermissibly compound. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

Subject to and without waiving the foregoing objections, MGA responds as follows:

MGA incorporates by reference its supplemental responses to Interrogatory Nos. 34 and 38 as though fully set forth herein. In addition, MGA denies that Bryant was a fiduciary with respect to his efforts to become a freelance artist.

**INTERROGATORY NO. 36:**

State all facts that support YOUR contention, if YOU so contend, that





EXHIBIT 16
PAGE 780

YOU acted with an innocent state of mind or reasonably believed that MATTEL did not own any rights in any BRATZ INVENTION when BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 36:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of BRATZ INVENTION, IDENTIFY and REFER OR RELATE TO, and further objects on the grounds that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOU, BRYANT, MGA, TRANSFER, MATTEL and ACQUIRE. In particular, by way of example, the term YOU as defined by Mattel could be read to require MGA to state all facts supporting why each of the responding parties "acted with an innocent state of mind," thereby rendering the interrogatory impermissibly compound. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 36:**

MGA incorporates by reference its General Response and General

EXHIBIT 76
PAGE 781

Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of BRATZ INVENTION, IDENTIFY and REFER OR RELATE TO, and further objects on the grounds that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOU, BRYANT, MGA, TRANSFER, MATTEL and ACQUIRE. In particular, by way of example, the term YOU as defined by Mattel could be read to require MGA to state all facts supporting why each of the responding parties "acted with an innocent state of mind," thereby rendering the interrogatory impermissibly compound. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

Subject to and without waiving the foregoing objections, MGA responds as follows:

Mattel cannot show that MGA acted in bad faith when Bryant transferred and MGA acquired all rights to the Bratz concept on October 4, 2000, because of the following facts of which MGA was aware in the September to October 2000 time period: (i) Bryant had an idea in August or September of 1998, when he was not employed by Mattel, for a series of characters that he named Bratz that could be used to create, among other things, a line of fashion dolls; (ii) at the same time, Bryant sketched a series of drawings to illustrate his conception; (iii) Bryant was the rightful owner of the concepts reflected in his drawings and other representations of his ideas and of his drawings; (iv) Bryant and his counsel represented and warranted to MGA that he was the exclusive originator and owner of his Bratz ideas and drawing and that no third party had any interest or rights in the

EXHIBIT 76

PAGE 782

drawings or the ideas reflected in the drawings; (v) Bryant came recommended by Veronica Marlow, a trusted freelancer who had worked for MGA in the past; (vi) immediately upon entering into a written freelance agreement with Bryant, Isaac Larian, the CEO of MGA, instructed Bryant to immediately resign from Mattel; (vii) MGA employees and freelance artists had made substantial original and creative contributions to the creation of what ultimately was marketed as Bratz dolls; and (viii) assuming some part of the Bratz concept was a feature that could have been protected by a design patent, any such invention was not "reduced to practice" prior to October 20, 2000.

The following persons have knowledge of these facts: Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas Bryant; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Rachel Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong.

The following documents may be relevant to these facts: MGA's agreement with Carter Bryant; and documents that refer to or evidence the work performed by MGA employees and freelancers toward the reduction to practice of the Bratz line of dolls. Documents responsive to this interrogatory are protected by the attorney-client privilege and work product doctrine. MGA previously offered to stipulate to a limited waiver of these privileges and protections to permit inspection of such documents, but Mattel refused.

**INTERROGATORY NO. 37:**

State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER rights to BRATZ to MGA, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

EXHIBIT 16
PAGE 783

such facts.

**RESPONSE TO INTERROGATORY NO. 37:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, BRYANT, MGA and TRANSFER. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion. MGA further objects to the interrogatory on the ground that Mattel – not MGA – bears the burden of proof to show that Bryant breached the INVENTIONS AGREEMENT.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless"). MGA further objects on the ground that it is an abuse of the discovery process to effectively ask a Party to prove his, her or its entire case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No.

EXHIBIT 76

PAGE 784

03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling that interrogatory that asks defendant to "plead and prove its entire case, and to marshal all evidence, in response to one interrogatory" is overbroad and "constitutes an abuse of the discovery process").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all* DOCUMENTS" (emphasis added). In responding to this interrogatory, MGA undertakes only to make a good faith, reasonable effort to summarize facts currently known to it, and reserves the right to supplement its response.

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 37:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, BRYANT, MGA and TRANSFER. MGA also objects to this interrogatory to the extent it seeks



EXHIBIT 16
PAGE 785

information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion. MGA further objects to the interrogatory on the ground that Mattel – not MGA – bears the burden of proof to show that Bryant breached the INVENTIONS AGREEMENT.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless"). MGA further objects on the ground that it is an abuse of the discovery process to effectively ask a Party to prove his, her or its entire case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling that interrogatory that asks defendant to "plead and prove its entire case, and to marshal all evidence, in response to one interrogatory" is overbroad and "constitutes an abuse of the discovery process").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added). In responding to this interrogatory, MGA

EXHIBIT 16
PAGE 786

undertakes only to make a good faith, reasonable effort to summarize facts currently known to it, and reserves the right to supplement its response.

Subject to and without waiving the foregoing objections, MGA responds as follows:

In August or September of 1998, Carter Bryant, inspired by images he was exposed to, including in the August 1998 issue of *Seventeen Magazine*, the appearance of teenagers as well as other images in the public domain, had an idea for a line of fashion dolls that he named Bratz. At the same time, Bryant sketched a series of drawings to illustrate his conception. To the extent that some aspect of Bryant's idea would have been protectible under patent law, there was neither a conception nor reduction to practice during the period of Bryant's unemployment with Mattel. In addition, Bryant's idea for a unique approach to fashion dolls was not covered by the "INVENTIONS AGREEMENT."

**INTERROGATORY NO. 38:**

State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 38:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ. MGA also objects to this interrogatory to the extent it seeks information that is not subject to

EXHIBIT 76
PAGE 787

disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion. MGA further objects to the interrogatory on the ground that Mattel – not MGA – bears the burden of proof to show that Bryant breached any duties, fiduciary or otherwise, to Mattel.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless"). MGA further objects on the ground that it is an abuse of the discovery process to effectively ask a Party to prove his, her or its entire case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling that interrogatory that asks defendant to "plead and prove its entire case, and to marshal all evidence, in response to one interrogatory" is overbroad and "constitutes an abuse of the discovery process").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state all facts ... and IDENTIFY all PERSONS...and all DOCUMENTS" (emphasis added). In responding to this interrogatory, MGA undertakes only to make a good faith, reasonable effort to summarize facts currently

EXHIBIT 76
PAGE 767

known to it, and reserves the right to supplement its response.

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 38:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion. MGA further objects to the interrogatory on the ground that Mattel – not MGA – bears the burden of proof to show that Bryant breached any duties, fiduciary or otherwise, to Mattel.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for

EXHIBIT 16

PAGE 788

"all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless"). MGA further objects on the ground that it is an abuse of the discovery process to effectively ask a Party to prove his, her or its entire case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling that interrogatory that asks defendant to "plead and prove its entire case, and to marshal all evidence, in response to one interrogatory" is overbroad and "constitutes an abuse of the discovery process").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state all facts ... and IDENTIFY all PERSONS...and all DOCUMENTS" (emphasis added). In responding to this interrogatory, MGA undertakes only to make a good faith, reasonable effort to summarize facts currently known to it, and reserves the right to supplement its response.

Subject to and without waiving the foregoing objections, MGA responds as follows:

Bryant was not a fiduciary of Mattel. Bryant was not an officer or director of Mattel. Mattel has not proven any facts that would support its claim that Bryant was a fiduciary of Mattel. MGA responds further that Bryant did not perform any services for MGA prior to signing his agreement with MGA on October 4, 2000. Bryant's activities with respect to the Bratz concept prior to October 4, 2000, were directed to securing a commercially beneficial relationship with MGA, i.e., Bryant "pitched" the concept of Bratz to MGA. In addition, Bryant's employment with

EXHIBIT 76 PAGE 789

Mattel was at will, and Bryant had the right to leave Mattel to join a competitor, or to work for a competitor, at any time. Any work that Bryant performed relating to his Bratz ideas during the time period that he was still employed by Mattel constituted lawful steps by Bryant to prepare to embark upon a new career. Isaac Larian instructed Bryant to leave Mattel immediately upon executing his contract with MGA. During the period from October 4, 2000, through October 20, 2000, Bryant contributed very little to the development of what later became the first generation of Bratz dolls.

The following persons have knowledge of the facts and circumstances supporting this contention: Isaac Larian, Carter Bryant, Victoria O'Connor, Margaret Leahy, Aileen Storer, Veronica Marlow, Paula Garcia, and Anne Wang.

**INTERROGATORY NO. 39:**

IDENTIFY each and every bank or financial institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or for YOUR benefit, since January 1, 1999.

**RESPONSE TO INTERROGATORY NO. 39:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY and REFERS OR RELATES TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOU and YOUR. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to this

EXHIBIT 16

790

interrogatory as premature asset discovery under Federal Rule of Civil Procedure 69(a), as there is presently no judgment for the payment of money pending against MGA. MGA further objects on the grounds that it is overbroad, not relevant to the claims or defenses of any party to the action and not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 40:**

IDENTIFY each and every STORAGE DEVICE that YOU have used for any purpose which contains or contained DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ prior to January 1, 2002.

**RESPONSE TO INTERROGATORY NO. 40:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO and BRATZ, and further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL INFORMATION. MGA further objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, MGA objects to the terms IDENTIFY and STORAGE DEVICE as overbroad and unduly burdensome, as Mattel's definition of this term calls for responses to multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory would require MGA to provide numerous discrete facts for each STORAGE DEVICE, including:

(a) the individual(s) that use or have used the STORAGE DEVICE;

(b) the current location of the STORAGE DEVICE;

(c) the IDENTITY of the PERSON who possesses the STORAGE DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;

EXHIBIT 76

PAGE 791

(d) the type of STORAGE DEVICE;

(e) whether the STORAGE DEVICE has ever been copied or imaged (and if so, the current location of each copy or image and the IDENTITY of the PERSONS who possess such copies or image);

(f) the date(s) on which such copies or images were made;

(g) the manufacturer name, brand, model name, model number, and serial number of the STORAGE DEVICE;

(h) the technical specifications and capacities of such STORAGE DEVICE.

In addition, Mattel's definition of YOU could be read to require MGA to provide the foregoing information about STORAGE DEVICES belonging to each of the responding parties.

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules. MGA further objects to the extent that this interrogatory seeks information that is outside of MGA's knowledge and is not in MGA's possession, custody or control.

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February

EXHIBIT 76
PAGE 792

22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 40:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO and BRATZ, and further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL INFORMATION. MGA further objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, MGA objects to the terms IDENTIFY and STORAGE DEVICE as overbroad and unduly burdensome, as Mattel's definition of this term calls for responses to multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory would require MGA to provide numerous discrete facts for each STORAGE DEVICE, including:

(a) the individual(s) that use or have used the STORAGE DEVICE;

(b) the current location of the STORAGE DEVICE;

(c) the IDENTITY of the PERSON who possesses the STORAGE DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;

(d) the type of STORAGE DEVICE;

(e) whether the STORAGE DEVICE has ever been copied or imaged (and if so, the current location of each copy or image and the IDENTITY of the

EXHIBIT 16
PAGE 793

PERSONS who possess such copies or image);

(f) the date(s) on which such copies or images were made;

(g) the manufacturer name, brand, model name, model number, and serial number of the STORAGE DEVICE;

(h) the technical specifications and capacities of such STORAGE DEVICE.

In addition, Mattel's definition of YOU could be read to require MGA to provide the foregoing information about STORAGE DEVICES belonging to each of the responding parties.

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules. MGA further objects to the extent that this interrogatory seeks information that is outside of MGA's knowledge and is not in MGA's possession, custody or control.

Subject to and without waiving the foregoing objections, MGA responds as follows:

With respect to North America prior to January 1, 2002, MGA maintained several Snap servers in Los Angeles containing mostly graphic art files. The servers are no longer in service but are currently archived at MGA's Southern

EXHIBIT 76
PAGE 794

California facility. MGA Art Department personnel also used Macintosh desktops and laptops that linked to the snap servers which may have contained files referring to Bratz. Files created with accounting and other back office software applications were saved on sequel servers located in Los Angeles via an application called "Great Plains." MGA personnel's emails were located on an exchange server, also housed in Los Angeles. MGA employees save all company related work files on a file server called the "U Drive," which is also used by MGA Entertainment (HK) Ltd. ("MGA Hong Kong") employees. This Drive is still in production and has been upgraded to a Netapp Storage System.

With respect to MGA's offices in Hong Kong prior to January 1, 2002, MGA Hong Kong Art Department personnel utilized Macintosh desktops that linked to a few file servers housed in Hong Kong to store graphic files. MGA Hong Kong personnel connected to the "Great Plains" sequel server located in Southern California. MGA Hong Kong maintained its own exchange server in Hong Kong for emails to and from MGA Hong Kong employees.

**INTERROGATORY NO. 41:**

IDENTIFY all PERSONS who at any time have been employed by or under contract with MATTEL who are now or have been employed by or under contract with YOU since January 1, 1999, and, for each such PERSON, state his or her name, date of hire or effective date of contract, the date on which YOU first had contact with such PERSON regarding potential employment or contracting, the date(s) on which such PERSON was interviewed for possible employment or contracting, each title (if any) such PERSON has held while employed by or under contract with YOU, and the date of termination (if applicable).

**RESPONSE TO INTERROGATORY NO. 41:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its

EXHIBIT 16 PAGE 795

California facility. MGA Art Department personnel also used Macintosh desktops and laptops that linked to the snap servers which may have contained files referring to Bratz. Files created with accounting and other back office software applications were saved on sequel servers located in Los Angeles via an application called "Great Plains." MGA personnel's emails were located on an exchange server, also housed in Los Angeles. MGA employees save all company related work files on a file server called the "U Drive," which is also used by MGA Entertainment (HK) Ltd. ("MGA Hong Kong") employees. This Drive is still in production and has been upgraded to a Netapp Storage System.

With respect to MGA's offices in Hong Kong prior to January 1, 2002, MGA Hong Kong Art Department personnel utilized Macintosh desktops that linked to a few file servers housed in Hong Kong to store graphic files. MGA Hong Kong personnel connected to the "Great Plains" sequel server located in Southern California. MGA Hong Kong maintained its own exchange server in Hong Kong for emails to and from MGA Hong Kong employees.

**INTERROGATORY NO. 41:**

IDENTIFY all PERSONS who at any time have been employed by or under contract with MATTEL who are now or have been employed by or under contract with YOU since January 1, 1999, and, for each such PERSON, state his or her name, date of hire or effective date of contract, the date on which YOU first had contact with such PERSON regarding potential employment or contracting, the date(s) on which such PERSON was interviewed for possible employment or contracting, each title (if any) such PERSON has held while employed by or under contract with YOU, and the date of termination (if applicable).

**RESPONSE TO INTERROGATORY NO. 41:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its

EXHIBIT 16 PAGE 795

objections to the definitions of the term IDENTIFY and further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOU. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 41:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the term IDENTIFY and further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOU. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

Subject to and without waiving the foregoing objections, MGA responds as follows: the following is a list of all former Mattel employees who have been employed by MGA, MGA Hong Kong or MGAE de MEXICO S.R.L. de C.V. since January 1, 1999:

EXHIBIT 76
PAGE 796

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Abundis, Ricardo | Dir. of Inventory/Customer Finance | 12/01/04-Present |
| Bate, Ian | Quality Assurance Mgr. | 7/31/06-Present |
| Black, Nanette | SVP, HR | 2/12/07 - Present |
| Bloodworth III, John E. | Prod. Mgr., Games | 08/21/06-Present |
| Bloomfield, Kevin | Sr. Designer | 11/25/02-Present |
| Brawer, Ron | President, Sales, Marketing & Strategic Planning | 10/05/04-Present |
| Brisbois, Janine (CANADA) | VP Nat'l Accts. | 10/04/05-Present |
| Castilla, Jorge | Mgr. Sales Planning | 04/03/06-Present |
| Chang, Suzy | Sr. Development Designer | 08/28/06-Present |
| Cheng, Steve | Sr. Designer | 04/08/02-Present |
| Cody Jr, Gerry | Sr. Designer - Boys Toys | 11/20/06-Present |
| Contreras, Nick | VP Customer Marketing | 11/29/04-Present |
| Cooney Jr., Daniel | VP National Account Mgr. | 05/15/06-Present |
| De La Cruz, Maria | Fashion Design Mgr., Style Guides | 2/12/07 - Present |
| Dixon, Karen | Sr. Producer | 2/19/07 - Present |
| Domingo, Luisito H | Sr. Prelim Dolls Designer | 07/07/03-Present |
| Dominguez, Greg Paul | Prod. Designer | 04/01/02-Present |
| Feldman, Joe | Design Engineer | 12/08/04-Present |
| Forrest, Craig | Prod. Mgr., Games | 5/15/06-Present |
| Garcia, Mia | Dev. Designer | 2/23/05-Present |
| Garcia, Paula | VP Girls Toy Prod. Dev. | 04/17/00-Present |

EXHIBIT 76
PAGE 787

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Gonzalez, Eduardo | Sr. Dir. of Quality Assurance;<br><br>Quality Assurance Mgr. | 10/16/06-Present;<br><br>1/3/05-8/18/05 |
| Hall, Tracy | Sr. Dir. of Prod. Dev., CE/YE | 08/07/06 - Present |
| Hansen, Melody | Face Painter | 03/13/06-Present |
| Hansen, Todd | Packaging Engineer | 5/2/05-Present |
| Hatch, Jill | Sr. Dir., National Sales | 09/18/06 - Present |
| Hinh, Michael | Mgr. Category Adv. | 6/28/05-Present |
| Hsu, Janet | SVP Non Toys Prod. Dev. & Licensing | 3/9/05-Present |
| Kao, Alice | Cust. Marketing Mgr. - Hong Kong Office | 2/21/05-Present |
| Kaufman, Ken | Advertising Exec. | 01/03/05-Present |
| Keller, Pamela E | VP Supply Chain & Operations | 09/25/06 - Present |
| Keossian, Alejandro Gabriel | Gr. Designer | 08/11/03-Present |
| Kim (Lee), Joyce | Sr. Playset Designer | 2/23/05-Present |
| Kim, Young Ran | Sample Maker Specialist | 01/15/04-Present |
| Kirst, Kristen | Hair Designer | 03/31/03-Present |
| Komatsu, Ellen | Sr. Prelim Dolls Designer | 08/25/03-Present |
| Larson, Jill | Sales Associate | 12/20/06-Present |
| Law, Adrian (Chi Shing) | Dev. Design Mgr. | 05/01/06-Present |
| Lumabao, Bo | Prod. Mgr. | 2/14/05-Present |
| Marks, Dorothy | Sample Maker Specialist | 07/26/05-Present |
| Martin, Raymond John | Prod. Mgr. of Consumer Electronics | 02/23/04-Present |
| Min, Aye Aye | Hair Designer | 04/17/06-Present |

EXHIBIT 76
PAGE 790

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Nakamura, Yumi | Mgr. of Style Guides | 1/22/07-Present |
| Natareno, Marvin | Jr. Project Analyst | 01/03/07-Present |
| Nigoghossian, Christine | Sr. Doll Designer | 04/25/05-Present |
| Ochoa, Laura | Trade Marketing Mgr. | 09/01/04-Present |
| Palijo, Amelia Ivy Arafiles | Sr. Sculptress | 02/23/04-Present |
| Pestonji, Danny | Dir. Prod. Dev. Preschool | 06/01/04-Present |
| Phelan, Denise | Sample Maker Specialist | 01/18/05-Present |
| Phoosopha, Poottipong | Face Painter | 12/08/03-Present |
| Pickard, Michael | Sr. Project Packaging Engineer | 03/22/04-Present |
| Rae, Ronald | SVP, National Account Sales | 03/12/07-Present |
| Ratleff, Leland | Sr. HR Dir. | 12/04/06-Present |
| Ronquillo, Desiree Elisabeth | Sr. Dev. Designer | 05/03/04-Present |
| Ruiz, Micaela | Sample Maker Specialist | 2/13/06-Present |
| Sasic-Koetsier, Natasha | Illustrator | 06/01/04-Present |
| Salazar, Maria Elena | Sample Maker Supervisor | 03/31/03-Present |
| Salemnia, Shirin | Research Mgr. | 02/17/03-Present |
| Scott, Harvey | Sample Maker Specialist | 08/01/05-Present |
| Smith, Steffen J. | Dir. of Package Dev. | 10/13/03-Present |
| Su, Jier | Dir. of Prod. Planning | 8/16/05-Present |
| Soai, Dennis | Dolls Dev. Design Mgr. | 03/04/02-Present |
| Thompson, Marla | Sample Sourcing & Procurement Mgr. | 04/04/05-Present |
| Tran, Chau Ngoc | Sample Maker Specialist | 05/10/04-Present |
| Trueba, Mariana | Marketing Mgr. | 04/26/04-Present |

EXHIBIT 70
PAGE 799

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Umana, Esteban | Quality Engineer | 03/19/07-Present |
| Upshaw, Gail | Sample Maker Specialist | 5/23/05-Present |
| Vargas, Pablo | Dir. Sales | 04/26/04-Present |
| Wang, Chang-Chin | Assoc. Face Designer | 05/03/04-Present |
| Ward, Lance | Structural Engineer | 08/02/04-Present |
| Whittaker, Dawn | Sr. Prod. Designer | 12/06/04-Present |
| Wong, Jenny | Sr. Gr. Designer | 09/09/02-Present |

| CURRENT MGA INDEPENDENT CONTRACTORS/FREELANCERS/TEMPS | MGA POSITION | DATES |
|---|---|---|
| Augborne, Troy | Structural Engineer (Temp) | 2/26/07 – 3/2/07, 4/16/07 – Present |
| Bryant, Carter | Prod. Designer/Independent Contractor | |
| Zetino, Reyna | Samplemaker, Temp Assignment | 04/13/07 – Present |

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Aryapour, Daryoush | Creative Ser. Dir. | 10/25/99-04/14/00 |
| Aguilar, Lourdes | Brand Mgr. | 9/01/04-6/11/06 |
| Blaser, Janet | Dev. Designer | 06/14/04-09/10/04 |
| Bower Violette, Mari Joanne | Prod. Mgr. | 10/13/03-03/10/06 |
| Brown, Lilia | Gr. Designer | 03/31/03-05/05/05 |
| Burlando, Gabriella | Prod. Mgr. | 03/5/02-06/27/06 |
| Chonavel, Fabienne | Marketing Mgr. | 04/10/02-08/23/02 |
| Dailey, Christine | VP Prod. Dev. | 05/07/01-11/22/02 |
| Feicht, Steve | Artist/Jr. Designer Freelancer | 07/18/02-Unknown |



EXHIBIT 76
PAGE 808

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Gillmour, Kami | VP Marketing | 05/24/99-07/14/00 |
| Hardouin, Christopher | Project Mgr. | 06/04/01-07/23/04 |
| Hitch, Martin | VP Int'l Sales | 01/04/01-06/04/02 |
| Ho, Jeff | Sr. Prod. Artist Freelancer | Unknown-10/04 |
| Huntley, James | Independent Contractor – Miuchiz;<br><br>VP Marketing | 08/17/06 – Unknown;<br><br>5/23/05-08/16/06 |
| Kagan, Randi | Marketing Dir. | 09/23/02-07/22/03 |
| Koch, Andreas | Prod. Mgr. | 10/18/99-01/11/01 |
| Leahy, Margaret | Sr. Sculptor | Temp To Perm. Eff. 4/4/05 - 03/06/07 |
| Mayer, Lyn Carol | Fabric Artist | 07/21/03-05/05/05 |
| McBride, Susan | Prod. Dir., Games | 06/03/02-01/25/07 |
| Mils, Frank | Mgr. of Quality Assurance | 03/20/06-07/07/06 |
| Nguyen, Xuanlan T | Pattern Maker | 05/19/03-01/03/05 |
| O'Brien, Gary Thomas | Field Sales Dir. | 05/10/04-07/22/04 |
| Otero, Jose | Web Designer | 08/11/03-2/1/06 |
| Owen, Dan | Sr. Playset Mgr. | 08/23/04-12/13/05 |
| Parasole, Nicolletta | Gr. Designer | 01/05/04-6/27/05 |
| Parkinson, Ana Mancia | Dev. Designer | 05/10/04-01/03/07 |
| Rambeau, Roger | VP Operations | 05/13/96-04/03/98 |
| Ramirez, Andrea | Key Account Mgr. | 04/05/05-12/12/06 |
| Reed, Wendy | Soft Goods Spec. | 11/06/00-01/12/01 |

EXHIBIT 76
PAGE 801

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Reyes, Scot Anthony | Sm. Doll Designer | 05/23/04-3/11/05 |
| Rhee, Anna | Doll Face Design Freelancer | 1/4/07 - 2/13/07 |
| Ross, Lon | Marketing Dir. | 11/13/00-08/03/01 |
| Schwartz, Dena | Sr. Prod. Mgr. | 05/21/01-04/08/02 |
| Shaver, Brandi | Gr. Designer | 05/03/04-06/30/06 |
| Stinnett, Holly | Sr. Brand Mgr. | 07/21/03-1/12/05 |
| Tawil, Lisa | Licensing Coord. | 04/08/02-07/18/03 |
| Terry, Gord | Dir. of Sales | 10/01/01-06/06/02 |
| Ward, Mercedeh | Sr. Prod. Designer | 10/00-1/01; 3/7/05-8/5/05 |
| Whitaker, Joseph | Consultant | 11/05/96-03/97 |
| Williams, Patrick | SVP Sales | 01/07/01-05/29/01 |
| Wong, Tong | Dev. Designer | 03/10/03-05/16/03 |
| Wright, Cherrise | Soft Goods Mgr. | 05/03/04-8/24/05 |
| Zbojniewicz, Dave | Dir. Bus. Planning/Independent Contractor | 04/04-09/04 |

DATED: November 30, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: ______________________
Thomas J. Nolan
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

EXHIBIT 76
PAGE 802