EXHIBIT 85

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 86

## DECLARATION OF RALPH OMAN

I, Ralph Oman, declare as follows:

1.     I am the former Register of Copyrights of the United States and a professor of copyright law at the George Washington Law School. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.     From 1985 to 1993 I served as the U.S. Register of Copyrights, the chief government official responsible for administering the U.S. copyright system, and acted as the principal advisor to the United States Department of State on international copyright matters, including drafting, negotiating and implementing international copyright treaties. As part of my responsibilities, I worked closely with the Hong Kong member of the British delegation to the frequent meetings of governmental copyright experts at the World Intellectual Property Organization in Geneva, Switzerland and became familiar with Hong Kong copyright law.

3.     I have subsequently given lectures in Hong Kong and in neighboring Shenzhen regarding Hong Kong copyright law. I have also worked with several of my foreign students on papers regarding comparative analysis of Hong Kong and U.S. copyright law, and I regularly read and review literature involving issues of Hong Kong copyright law.

4.     It is a prerequisite under both Hong Kong and U.S. copyright law that a work must be "original" to be protectible, and courts in both countries apply substantially the same standards in determining whether or not a work is "original." Hong Kong courts accept U.S. copyright registration certificates as valuable evidence of a work's presumptive originality and ownership in copyright infringement suits. Further, Hong Kong law allows suits for copyright infringement

EXHIBIT ____86____

PAGE ____983____                    -1-

DECLARATION OF RALPH OMAN

1   of three-dimensional objects, such as dolls, based on U.S. registration certificates for

2   two-dimensional drawings.

3         I declare under penalty of perjury under the laws of the United States of

4   America that the foregoing is true and correct.

5

6       Executed on April 25, 2008, at Washington, District of Columbia.

7

8                                       Ralph Oman

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___ 86 ___

PAGE ___ 984 ___

2.

DECLARATION OF RALPH OMAN

EXHIBIT 87

RECEIVED

MAR 1 8 2008

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   JOHN E. TRINIDAD - #250468
6  jtrinidad@kvn.com
   AUDREY WALTON-HADLOCK- #250574
7  awaltonhadlock@kvn.com
   710 Sansome Street
8  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
9  Facsimile:  (415) 397-7188

10 Attorneys for Plaintiff
   CARTER BRYANT

11

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

16

17 CARTER BRYANT, an individual,       Case No. CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-
18                       Plaintiff,     2727

19      v.                              **EXPERT REPORT OF GARY
                                        FUNCK**
20 MATTEL, INC. a Delaware
   Corporation,                         Dept:     Courtroom 1
21                                      Judge:    Hon. Stephen G. Larson
                         Defendant.
22                                      Date Comp. Filed:  April 13, 2005

23 CONSOLIDATED WITH MATTEL,            Discovery Cut-Off: Jan. 28, 2008
   INC., v. BRYANT and MGA              Pre-Trial Conference: May 5, 2008
24 ENTERTAINMENT, INC. v.               Trial Date:  May 27, 2008
   MATTEL, INC.
25

26

27

28

3/17

413334.01

EXHIBIT _____ B7

PAGE _____ 985

1      As described in this Microsoft support page,

2   http://support.microsoft.com/kb/314866, this registry key is listed as a "run key", and as

3   the reference states:

4      "Run keys cause programs to automatically run each time that a user logs on."

5

6   EE adds a sub-key named "Evidence Eliminator" to the run key with a string value:

7      `C:\PROGRAM FILES\EVIDENCE ELIMINATOR\ee.exe /m`

8   This will direct Windows to run EE every time a user logs in. The "/m" switch will

9   cause EE to run minimized in the system tray (ref: EE help file). The "system tray" is the

10   small area that is typically in the lower right corner of a Windows screen, where there are

11   various icons that can be used as a quick way to cause various programs to perform

12   various tasks. Upon startup, after the user logs in, that is all Evidence Eliminator does: it

13   places an icon in the system tray, and "wakes up" only when the user clicks on that icon

14   and makes a selection from its menu, or when the user enters a hot-key sequence or right-

15   clicks on a file/folder and selects an EE operation.

16

17      Based upon both our review of product documentation and our research into

18   Evidence Eliminator's behavior we conclude that EE performs its functions only when

19   the user explicitly issues command to the program. Unlike a virus scanning program for

20   example, EE will not silently perform file cleaning and deletion programs in the

21   background.

22

23

24

25

26

27

28

EXPERT REPORT OF GARY FUNCK
CASE NO. CV 04-09049 SGL (RNBx)

413334.01

EXHIBIT _____ 87

PAGE _____ 986

1

2      I found one such backup of the Windows registry files, under the directory

3  _RESTORE\ARCHIVE (Exhibit J). The file is named RG1081300092.CAB, and is

4  dated April 6, 2004. I was able to extract a copy of USER.DAT also dated April 6, 2004

5  and was able to read the contents of this copy of this registry file.

6

7

8  Dated:   March 17, 2008                    _Gary Funck_

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                31
                    EXPERT REPORT OF GARY FUNCK
                    CASE NO. CV 04-09049 SGL (RNBx)

413334.01

EXHIBIT ____ 87

PAGE ____ 987

EXHIBIT 88

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 89

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 90

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 91

# COPYRIGHT JURY INSTRUCTIONS

## PHASE I-B

### (ONLY AFTER PHASE I-A VERDICT)

## INSTRUCTION NO. 1C

### COPYRIGHT – PRELIMINARY INSTRUCTION

As you know, Mattel seeks damages against the defendants, MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA Hong Kong"), Isaac Larian, and Carter Bryant for copyright infringement. The defendants deny that Mattel's copyrights were infringed.

Mattel's 16 copyrights are in certain sketches authored by Carter Bryant prior to his meeting with MGA on September 1, 2000. There have been references to other Carter Bryant sketches, but for purposes of your copyright analyses you may only consider the Bryant sketches covered by a Mattel copyright registration. The copyright law does not permit legal claims made on a work not covered by a copyright registration.

The alleged infringing works are the BRATZ dolls and character art of the BRATZ dolls appearing on the packaging for the BRATZ dolls and on BRATZ licensed products. Mattel asserts that the "first generation" of four BRATZ dolls (Jade, Sasha, Cloe, and Yasmin), introduced by MGA into the market in the summer of 2001, infringe Mattel's copyrights in the 16 Bryant sketches. Mattel further asserts that by virtue of showing infringement in the "first generation" BRATZ dolls it has shown copyright infringement by all subsequent BRATZ dolls.

The defendants deny that there has been any copyright infringement. They assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls. Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and artists who developed the first generation BRATZ dolls used their significant experience and talents to independently create their own original, different and more marketable 3-dimensional doll.

EXHIBIT _____ 9 |

PAGE _____ 1181

The defendants also assert that the Mattel copyrights are very limited in scope because the 16 Bryant sketches portray dolls that are based in large part on non-original elements such as standard features of human anatomy and non-copyrightable elements such as conventional hairstyles, face make-up, shoes and clothing. They assert that because the 16 Bryant sketches are only entitled to limited copyright protection, the "first generation" BRATZ dolls were not "substantially similar" to the "protectible elements" in Bryant sketches owned by Mattel, and do not infringe any limited copyrights in those sketches.

The defendants further assert that subsequent BRATZ dolls had the same and additional dissimilarities, and were even further removed from any "protected expression" in the Bryant sketches, and accordingly also did not infringe copyrights in those sketches. They similarly deny that the BRATZ character art infringes the Bryant sketches.

I just referred to a number of legal terms such as "copying," "substantial similarity," and "protected expression." I will now explain these and other legal terms to you.

Authority: Ninth Circuit Manual of Model Jury Instructions 17.0 (2007).

2

EXHIBIT __9__

PAGE __1182__

## **ALTERNATE: INSTRUCTION NO. 1C**

[Defendants reserve the right to modify all of their proposed instructions relating to copyright issues to conform to the jury's findings in Trial 1A if the jury finds that fewer than 16 of the Bryant sketches are owned by Mattel. The following is an example.]

In the Phase 1A trial Mattel asserted that it owned copyrights in a total of 16 of Carter Bryant's sketches prepared by Bryant prior to September 1, 2000. In Phase 1A, you determined that Mattel owned a total of [XX] of these Bryant sketches, and that Mattel did not own [YY] of the sketches. The [YY] sketches not owned by Mattel were assigned by Bryant to MGA, and thus are owned by MGA.

In assessing Mattel's claims of copyright infringement of the [XX] sketches that you determined it owns, you must also consider the sketches owned by MGA. MGA has every right to use the Bryant sketches it owns, and the expression in those sketches. Thus, if Mattel relies on original expressive elements of one of the Bryant sketches that Mattel owns, but those same elements are also found in one of the sketches owned by MGA, then you must disregard those elements, because they cannot support Mattel's claims of copyright infringement.

The Bryant sketches owned by MGA were created earlier than the Bryant sketches you determined that Mattel owns. Accordingly, as between the two, MGA has superior rights. For this reason, if any Bryant sketch owned by Mattel is substantially similar (I will explain what this means in a few minutes) to a sketch owned by MGA, then Mattel cannot rely on that sketch in connection with its copyright infringement claims against MGA. Mattel thus bears the burden of proving by a preponderance of the evidence that the Bryant sketches it relies on are not substantially similar to the Bryant sketches owned by MGA.

[Include other aspects of 1C above as appropriate based on the Phase 1A verdict.]

3

EXHIBIT ____91____

PAGE____1183____

**INSTRUCTION NO. 2C**

COPYRIGHT – DEFINED

Copyright is the exclusive right to copy. This right to copy includes the exclusive right to:

      1.    Authorize or make additional copies, or otherwise reproduce the copyrighted work;

      2.    Recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

      3.    Distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

      4.    Display publicly a copyrighted pictorial work or graphic work.

It is the owner of a copyright who may exercise these exclusive rights. [Here, in the Phase I-A trial, it was determined that Mattel is the "owner" of the Bryant sketches as a result of the transfer provisions of Bryant's employment agreement.]

In general, copyright law protects against reproduction, adaptation, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in a lawsuit for copyright infringement.

Mere possession of a copyrighted work does not constitute infringement. That Carter Bryant and MGA had possession of Mr. Bryant's physical sketches, and made reference to them, is not copyright infringement, just like a person who possesses a book has not infringed the copyright of the book's publisher or author. [Lapham v. Porach, 2007 U.S. Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).]

Authority: Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106; 2-8 Nimmer on Copyright §§ 8.01–8.20; 3 Patry on Copyright §§ 8:1, 9:2.

4

EXHIBIT     91

PAGE     1184

## INSTRUCTION NO. 3C

### COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION

Copyright law allows the author of an original work to prevent others from copying the tangible expression the author used to express the ideas in the author's work. Only the particular original expression of an idea can be copyrighted, and the right to exclude others applies only to this original expression. An author cannot prevent others from copying or using aspects of his work which were derived from other sources, such as the work of other artists.

Copyright law protection does not extend to any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied. Particularly relevant here is the limitation that an author cannot prevent others from copying or using ideas or concepts contained or reflected in the work or that inspired the work; to do so would inhibit full and free exchange of information and hinder, rather than promote the creation of new works of authorship, which is the goal of the copyright system.

The right to exclude others from copying also extends only to the particular way the author expressed the ideas in the copyrighted work.

Common or standard treatments of the subject matter are also not protected by copyright. Even though they are forms of expression, they lack sufficient originality to be protected. These are often referred to in copyright law as "scenes a faire," taken loosely from the French for "things which must be done." In other words, basic ideas or treatments "remain forever the common property of artistic mankind." [Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th Cir. 1985).]

Let me give you an example from the world of T.V. screen-plays. A television show about a police station in a high crime area will inevitably have standard stock features, such as a precinct house, various levels of police employees from a captain down to the beat officers, criminal suspects who are apprehended, defense lawyers, prosecutors, etc. Such standard plot lines and features may be thought of as creative expression, but no one can claim ownership or exclusive rights to them, and no one T.V. show can accuse another of violating a copyright by allegedly copying and using such standard features in a second show. [Walker v. Time Life. Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986).]

5

EXHIBIT ___91___

PAGE ___1185___

As another example, in the world of theatre, devices that are standard plot lines, and are therefore not protectible, include the controlling mother-in-law, the lipstick stained handkerchief, and the butler bent on murder. All authors can use these common plot devices.

Also unprotected is expression in the copyrighted work that reflects expression already in the public domain, and therefore free for all to use.

To give one illustration in the context of a doll, "[a]n upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll face," and this idea does not belong to any one company but rather is in the public domain. [Mattel, Inc. v. Goldberger Doll Manufacturing Co., 365 F.3d 133, 136 (2d Cir. 2004).]

For another illustration, a 5 ½ inch Warlord doll does not infringe upon a 5 ½ inch Masters of the Universe doll because, though the dolls look remarkably similar, the similarities are all attributable to the unprotectible idea of a superhuman muscleman crouching in a traditional fighting pose. [Mattel, Inc. v. Azrak-Hamway Int'l Inc., 724 F.2d 357, 360 (2d Cir. 1983).]

These unprotected elements of a work, ideas and concepts, scenes a faire, and unoriginal material, often overlap and are not always easy to separate into categories. Nevertheless, they are not protected by copyright, and must be disregarded when comparisons between the Bryant sketches and the BRATZ dolls are made.

To state it another way, your analysis must be limited to expressive elements in the 16 sketches covered by Mattel's copyrights that were originally contributed solely by Carter Bryant.

Authority: Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); 4-13 Nimmer on Copyright § 13.03[B]; Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir. 1994); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988); see also Mattel v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129 (C.D. Cal. 2001).

6

EXHIBIT _____ 9 1

PAGE _____ 1186

**INSTRUCTION NO. 4C**

COPYRIGHT INTERESTS – AUTHORSHIP

The creator of an original work is called the author of that work. An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being. In this case, Carter Bryant is the author of the 16 sketches, [and Mattel is the owner of the copyright in those sketches by assignment, as was decided in the Phase I-A trial.]

Authority: Ninth Circuit Manual of Model Jury Instructions 17.6 (2007).

7

EXHIBIT _____ 91

PAGE _____ 1187

## INSTRUCTION NO. 5C

COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION

In this lawsuit, it is not disputed that portions of the 16 Bryant sketches contain sufficient original elements to be protected by copyright. However, I must caution you that the amount of creative expression that is required for copyright protection is extremely low.

In addition, the Copyright Office does not investigate the originality or uniqueness of a work and it does not determine the validity of the claim to copyright protection in issuing a Certificate of Registration for a work. Accordingly, the mere fact that the Bryant sketches were accepted by the Copyright Office for registration does not determine the degree, scope, or amount of original, protected expression in the sketches. In addition, the protection afforded by the registration is limited to the specific protectible expression included in the material deposited with the Copyright Office, in this case the Bryant sketches.

Finally, a Certificate of Registration obtained more than 5 years after the first publication of the work covered by that registration is not entitled to a presumption either of copyright protection or that the registration is valid.

Authority: Feist Publications, Inc. v. Rural Telephone Services, Inc., 499 U.S. 340, 346 (1991) ("a modicum of creativity"); see also Expert Report of Ralph Oman, dated Feb. 25, 2005, in Team Play, Inc. v. Boyer, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); Ninth Circuit Manual of Model Jury Instructions 17.5 (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii).

8

EXHIBIT _____91_____

PAGE _____1188_____

**INSTRUCTION NO. 6C**

COPYRIGHT INFRINGEMENT – COPYING

In order to prevail on its claim of copyright infringement, Mattel has the burden of proving both of the following by a preponderance of the evidence:

      1.    "Factual copying" — that in creating the BRATZ dolls, MGA actually copied the Bryant drawings in the BRATZ dolls.

      2.    "Legal copying" — that even if copied, the amount of protected expression taken from the Bryant drawings and found in the BRATZ dolls satisfies the legal standards necessary to show copyright infringement. This requires proof by Mattel of what is called "substantial similarity" to the level of "virtual identity."

      3.    If you find that Mattel has proven both of these elements, your verdict should be for Mattel on the issue of copyright infringement. If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants on the issue of copyright infringement.

Authority: BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007); 4-13 Nimmer on Copyright §§ 13.03[A] & [D] (2008).

9

EXHIBIT     91

PAGE     1189

## INSTRUCTION NO. 7C

### COPYRIGHT INFRINGEMENT – FACTUAL COPYING

"Factual copying" means that the defendant did not independently create the challenged work.

Where as here the defendants assert independent creation, the plaintiff can establish factual copying:

      —    through direct evidence of copying; or

      —    by showing that the defendant had access to the plaintiff's work and that the works have a high degree of similarity, referred to as "probative similarity."

Here, MGA does not dispute that it had access to the Bryant sketches when it began to develop the BRATZ dolls. However, defendants do dispute that there was copying, and they dispute that there is sufficient "probative similarity" to establish factual copying.

Mattel asserts that there is evidence that MGA directly and intentionally copied the Bryant sketches.

Defendants deny this and they assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls. Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and artists who developed the first generation BRATZ dolls used their significant experience and talents to independently create their own original, different and more marketable 3-dimensional doll. The defendants further assert that the designs of the subsequent BRATZ dolls were also independently created and were even further removed from any "protected expression" in the Bryant sketches.

In determining factual copying, you should weigh all the evidence keeping in mind that Mattel bears the burden of proving that MGA copied the Carter Bryant sketches in the BRATZ dolls.

10

EXHIBIT ___ 91

PAGE ___ 1190.

Authority: BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. Lexis 60544 at \*\*8–10 (S.D. Cal. Aug. 16, 2007); Sobhani v. @radical.media, Inc., 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003); Miller v. Miramax Film Corp., 2001 U.S. Dist. LEXIS 25967, at \*\*31–32 (C.D. Cal. Sept. 26, 2001); 4-13 Nimmer on Copyright § 13.03[D] (2008).

11

EXHIBIT _____ 9 1

PAGE _____ 1191

**INSTRUCTION NO. 8C**

COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY

If you conclude that Mattel did not meet its burden of proving factual copying, you must find for defendants on the issue of copyright infringement. If you conclude that Mattel has met its burden of proving factual copying, then you must move on to the next element of copyright infringement, "legal copying."

Mattel must prove that MGA copied sufficient original and protectible elements from Bryant's sketches to establish "legal copying." As I will explain shortly, using what are known as the "extrinsic" and "intrinsic" tests, you must determine what, if any, protectible expression is present in each of the Bryant sketches and compare the protected expression in a particular sketch to the BRATZ dolls. Unless a sufficient amount of protected expression from a sketch was copied in the BRATZ dolls, Mattel's claim of copyright infringement fails.

In other words, legal copying is an essential element of copyright infringement independent of factual copying. To go back the T.V. screenplay example, the creators of "Law and Order" could have intended to copy certain features of "Hill Street Blues," "N.Y.P.D. Blue," or "Perry Mason," and certainly their access to these earlier shows would be easy to establish. But, unless a sufficient amount of protected expression was copied (i.e., expression that is original to one of these shows, and is not ideas, concepts, scenes a faire or public domain expression), there would be no copyright infringement.

Authority: Ninth Circuit Manual of Model Jury Instructions 17.15 (2007); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Bensbargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).

12

EXHIBIT _____ 91

PAGE _____ 1192

**INSTRUCTION NO. 9C**

COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST

To determine whether the BRATZ dolls infringe Mattel's copyrights in the Bryant sketches, you must engage in a two-step analysis. The first step is called the "extrinsic" test. If necessary, this is followed by the second step of the analysis, which is called the "intrinsic" test. [Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001).]

Stated generally, the "extrinsic" test considers whether two works share substantial similarity of ideas and expression as measured by external, objective criteria, while the "intrinsic" test considers whether a reasonable person (or in this case, a discerning 8-12 year old girl) would perceive a substantial similarity in the "total concept and feel" of each work, bearing in mind that ideas and concepts and general stylistic features are not protectible under copyright law. [Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (N.D. Cal. 2007) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442–43 (9th Cir. 1994)).]

You should keep in mind that what is required to find infringement is not simply general "similarity" of the works but "substantial similarity" of protected elements of those works. [Id.; Berkic v Crichton, 761 F.2d 1289, 1293–94 (9th Cir 1985).]

I will explain each of these tests in turn.

EXTRINSIC TEST

The "extrinsic" test removes from the analysis of infringement those elements of the copyrighted work that are not entitled to copyright protection. The party claiming infringement cannot rely on any similarity in expression resulting from unprotectible elements. [Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).]

As I have already explained, the following elements of an original copyrighted work are not entitled to protection under copyright law:

      —   Ideas and concepts.

13

EXHIBIT ___9 1___

PAGE____1193

- Common features that are standard or essential to the expression of a given idea, called "scenes a faire."

- Expression that is not original to the author (in this case Mr. Bryant), such as pre-existing expression that influenced the author consciously or even subconsciously.

This is a general list of the common unprotected categories.

The process of applying the extrinsic test is referred to as "analytic dissection" because you need to isolate the elements of the copyrighted work and analyze each one separately, excluding the other elements present in the work and the combination of elements. [See, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997); Lanard Toys, 511 F. Supp. 2d at 1037–38.] It is also referred to as "filtering" because you need to filter out all of the unprotected elements. [See, e.g., Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007); Brookhaven Typesetting Servs. v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at *22 (N.D. Cal. Aug. 24, 2007).]

You should apply the extrinsic test as follows:

*First,* identify those elements in the Bryant sketches that Mattel claims are the expression copied by MGA in the BRATZ dolls. Mattel has the burden of identifying which specific elements of its works have been copied.

*Second,* you should determine which of those elements are entitled to copyright protection and which are not. In other words, you must filter out from each of the 16 Bryant sketches all ideas, all scenes a faire, and all public domain expression that was not original to Mr. Bryant. Mattel has the burden of proving which elements in each of the Bryant sketches are entitled to protection.

I will give you a few examples to illustrate the process of filtering.

It goes without saying that common physical features of a teenage girl are not protectible, as they are the features found in real-life teenage girls and depictions thereof. Such features could be considered an idea, or even a fact, and therefore they must be filtered out. This would apply to things found in nature such as the presence of heads, 2 ears, lips, hair, 2 arms, legs, standard body proportions, etc. in the sketches. While the particular expression and unique arrangement of all of

14

EXHIBIT _____ 9/

PAGE _____ 1194

these features can be protected by copyright, the mere presence of those features as found in nature cannot.

That the figures in the sketches display fashions, shoes and accessories, by itself, is not protected because the use of fashions, shoes and accessories are "scenes a faire," or standard or common features, in the genre of fashion dolls. Also, the "style" or general "look" of fashion dolls are not copyrightable. Nor are conventional cosmetic techniques and looks. Moreover, the design of particular clothing as used on fashion dolls is not protectible by copyright.
This is another similarity that cannot be counted, so the BRATZ dolls have to be compared to the Bryant sketches without considering the dolls' clothes. Similarly, hair, hair styles and hairdos cannot be protected because on these fashion dolls the hair is meant to be played with and changed by the target consumers.

MGA asserts that Carter Bryant's sketches show a group of four contemporary "sassy" or "bratty" teenage friends of diverse ethnic backgrounds and a "funky urban hip" attitude and style as the basis for a line of fashion dolls. MGA asserts that all of this is a concept or idea, and is thus not protected by copyright. If you agree with MGA's position, then the idea and concept of such a line of fashion dolls must be filtered out of any subsequent analysis of claimed similarities.

MGA also asserts that the oversized heads, eyes, feet and lips in the sketches are not forms of expression original to Carter Bryant's sketches, but rather simply reflected common expression that can be found in other dolls, fashion advertisements, and artwork. If you agree with that contention, then you must "filter out" these elements in connection with your subsequent analysis regarding substantial similarity, because the use of oversized heads, eyes, feet and lips in the sketches was not original to Mr. Bryant.

The parties and their witnesses and experts will point to many other such issues, asserting that features or elements should, or should not, be filtered out. You are to determine which, if any, of these features and elements should properly be filtered out in connection with your subsequent analysis regarding substantial similarity.

Once you have dissected and filtered the Bryant sketches, you are ready to compare the individual elements remaining in a particular sketch that you determine to be protectible with the corresponding elements in the BRATZ dolls. As the parties disagree with what are, and what are not, the similarities between the two, you must next determine what those similarities are.

15

EXHIBIT ___9l___

PAGE ___1195___

The burden is on Mattel to show by a preponderance of evidence the similarity of each element in the sketches you determine to be protectible. In considering the extrinsic test, you may take into account the testimony of experts called by each party.

Now comparing the items in the BRATZ dolls that you find to be similar to the protected elements of expression in a particular Bryant sketch owned by Mattel, you should determine whether Mattel has shown by a preponderance of the evidence that the two works are substantially similar. If you do not so find, then you must find for MGA and Bryant on the claim of copyright infringement.

If you do find substantial similarity under the extrinsic test, then you turn to the next step of the analysis, the "intrinsic" test.

## BROAD OR THIN PROTECTION

Before proceeding to apply the "intrinsic" test, you must make an important preliminary determination: the correct standard to apply. The appropriate standard for the intrinsic test depends on the scope of copyright protection in a work. In this case, you must determine the scope of copyright protection in each of Mr. Bryant's sketches asserted by Mattel against MGA.

The analytic dissection and filtration you previously performed in connection with the extrinsic test also allows you to determine whether the sketches are entitled to "broad" or "thin" copyright protection. The sketches will be entitled to "broad" protection if you find that they are highly original and reflect a high degree of artistic judgment in a medium offering a broad range of creative choice. The threshold for infringement in such works is substantial similarity of original protected expression.

On the other hand, if you find that the sketches include only a few protectible elements, or are in a medium in which the effective range of creative expression is limited, then the sketches are only entitled to "thin" protection. In that case, you can find infringement only if the dolls are virtually identical to original protected expression in any protected sketch examined as a whole. [Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1084 (C.D. Cal. 2006) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994)).]

16

EXHIBIT ___9/___

PAGE ___119b___

The burden of proving that the Bryant sketches are entitled to broad protection is on Mattel.

## INTRINSIC TEST

The second step of the infringement analysis, the "intrinsic" test, involves a subjective comparison of the protectible aspects of the "works as a whole." [Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994).]

In this evaluation, you should not consider the unprotectible elements that you filtered out as part of the extrinsic test analysis. [Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); Robert C. Lind, Copyright Law (3d ed. 2006) at 173.]

The intrinsic test is determined from the perspective of an ordinary, reasonable observer. [Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).] Because girls of the age 8-12 are the core intended market for the BRATZ dolls, you should consider such consumers as the ordinary, reasonable observers. [Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir. 1987).] In other words, you should perform the intrinsic test through the eyes of a discerning 8-12 year old girl who would be a likely user of BRATZ dolls.

The testimony of experts is not to be considered in your evaluation of the intrinsic test.

The appropriate standard for the intrinsic test depends on the scope of copyright protection in a work. If you determine that the Bryant sketches are highly original and are entitled to "broad" copyright protection, infringement under the "intrinsic" test may be found if the ordinary, reasonable person (the 8-12 year old girl) would find the "total concept and feel" of the two separate works to be substantially similar, bearing in mind that ideas, concepts, and style are not protectible. However, if you determine that the Bryant sketches are entitled only to "thin" copyright protection because a large amount of expression has been filtered out as a result of the application of the extrinsic test, MGA may only be found liable for infringement if you determine that the sketches and dolls are "virtually identical" to original protected expression of any protected sketch viewed as a whole. [Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003).]

17

EXHIBIT _____ 91

PAGE _____ 1197

Mattel bears the burden of proving by a preponderance of the evidence that the Bryant sketches are entitled to broad protection under the intrinsic test. If Mattel should fail to meet that burden, you must apply the "virtual identity" test for "thinly protected" works. The "virtual identity" test means just what it says: the BRATZ dolls must be virtually identical with respect to any elements that you find to be protectible in a particular Bryant sketch for there to be infringement under the intrinsic test.

Then, applying one of these two tests – substantial similarity for broad works, or virtual identity for thin works – you will determine if Mattel has met its burden of proving infringement under the "intrinsic" test. If Mattel has not met its burden under the intrinsic test, then you must find for the defendants on the copyright infringement claims.

Authority: Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Apple Computer, Inc. v. Microsoft Corporation, 35 F.3d 1435, 1447 (9th Cir. 1994); Frybarger v. Int'l Bus. Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Idema v. Dreamworks, Inc., 162 F. Supp.2d 1129, 1176 (C.D. Cal. 2001).

EXHIBIT ___91___

PAGE ___1198___

## INSTRUCTION NO. 10C

### COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK

The Bryant sketches are 2-dimensional works, while the BRATZ dolls are 3-dimensional works. While those facts may complicate your analysis under the extrinsic and intrinsic tests, the copyright in a 2-dimensional work can be infringed by a 3-dimensional work. However, the copyright in a 2-dimensional work only covers what is shown on the face of the work. For example, if a Bryant sketch only shows the front view of a figure, the copyright does not cover the rear or side view of that figure, or anything else that is not specifically visible in that particular sketch. Whether in this case the BRATZ dolls (3-dimensional works) infringe the Bryant sketches (2-dimensional works), is for you to decide, using the two-part analyses already described.

Authority: 1-2 Nimmer on Copyright § 2.08(C)(2).

19

EXHIBIT _____ 91
PAGE _____ 199

## INSTRUCTIONS NO. 11C

### COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION

Even if Mattel proves that MGA had access to the 16 Bryant sketches and that particular Bratz dolls are substantially similar to certain of these sketches, this only creates a presumption of illegal copying. MGA may rebut that presumption with evidence that the Bratz dolls are the product of independent creation, and were not copied from the 16 Bryant sketches. If MGA presents evidence of independent creation, then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches.

Authority: Moore v. Kulicke & Soffa Industries, Inc. 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311 (E.D. Pa. 2000).

20

EXHIBIT ___9 1___

PAGE ___1200___

## INSTRUCTION NO. 12C

### COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS

Mattel has based its copyright claims on 16 separate copyright registrations, each one registering a different Carter Bryant sketch. Each of these sketches is only entitled to copyright protection for the original expression contained in the particular sketch. Mattel cannot extend or enhance its rights by treating two or more of the sketches as a compilation or as a unified work. In other words, Mattel cannot pick and choose characteristics from more than one of these sketches to search for alleged similarities with a single BRATZ doll. Each individual sketch must be judged based on its own protectible content in a comparison with a particular one of the allegedly infringing BRATZ dolls.

This means that in determining whether Mattel has met its burden of proving infringement, you must separately analyze each of the 16 sketches covered by a Mattel copyright under both the extrinsic and intrinsic tests. As an example, you may not combine the design of facial features from one Bryant sketch with the body proportions from another Bryant sketch, and then evaluate whether the BRATZ dolls are substantially similar to this combination.

Authority: Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); see also Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995) (unpublished) ("Plaintiff cannot pick and choose characteristics from any number of characters in his work to search for alleged similarities with a single character in defendants' work."); 9 Patry on Copyright § 9:66 (2008).

21

EXHIBIT _____ 9.1

PAGE _____ 201

**INSTRUCTION NO. 14C**

DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induces that infringing activity.

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant sketches, you may proceed to consider Mattel's claims that Isaac Larian and Carter Bryant contributorily infringed those copyrights. To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence with respect to each of them:

        1.    That Mr. Larian or Mr. Bryant knew or had reason to know of the infringing activity of MGA or MGA Hong Kong; and

        2.    That Mr. Larian or Mr. Bryant intentionally induced MGA or MGA Hong Kong's infringing activity

If you find that MGA or MGA Hong Kong infringed Mattel's copyright, and you also find that Mattel has proved both of these elements as to the individual defendant, your verdict should be for the Mattel. If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for Mr. Larian or Mr. Bryant, or both of them.

Authority: Ninth Circuit Manual of Model Jury Instructions 17.21 (2007).

23

EXHIBIT _____ 91

PAGE _____ 1203

EXHIBIT 92

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 93

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 94

# EXPERT REBUTTAL REPORT OF
# KENNETH HOLLANDER

**March, 2008**

**Kenneth Hollander Associates**
**45431 Greenling Circle Mendocino, CA 95460**
**(707) 962-1648  www.kharesearch.com**

EXHIBIT ___94___

PAGE ___1234___

# TABLE OF CONTENTS

Rule 26(a)(2)(B) Disclosure ................................................................................................ 1

Purpose .............................................................................................................................. 2

Findings ............................................................................................................................. 3

Design Principles and Standards ....................................................................................... 4

Proper Universe ................................................................................................................. 5

Sample of Respondents ..................................................................................................... 6

Protocol .............................................................................................................................. 8

Screener and Questionnaire ............................................................................................... 9

Period of Interviewing ...................................................................................................... 13

"Double Blind" Procedures ............................................................................................... 13

Recapitulation of Survey Neutrality ................................................................................. 14

Detailed Findings .............................................................................................................. 15

Appendices

A: Resume of Kenneth A. Hollander

B: Questionnaires and Images

C: Computer Tabular Output

EXHIBIT _____ 94

PAGE _____ 1235

**RULE 26(A)(2)(B) DISCLOSURE**

1. Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, this report states opinions Kenneth Hollander will express in the matter of CARTER BRYANT v. MATTEL, INC. Case # CV 04-9049 SGL (RNBx).

2. The sources considered by Kenneth Hollander in forming these opinions include the information contained in the Complaint for False Designation of Origin, Affiliation, Association, or Sponsorship, Unfair Competition, Dilution, and Unjust Enrichment; Mattel, Inc.'s Second Amended Answer in Case No, 05-2727 and Counterclaims; the Reference Manual on Scientific Evidence, Second Edition; The Manual for Complex Litigation, Third Edition; and the results of the interviews, which are the basis for this report.

3. Mr. Hollander's qualifications are found in Appendix A. I have not authored any publications in the past ten years. Although all invoices for cost components of the study reported herein have not yet been received, it is estimated that the total cost for the conduct of this study will be approximately $59,200. His fee for testimony is $450 an hour.

4. These fees are not contingent upon the outcome of either this study or of the litigation.

EXHIBIT _____ _au_

PAGE _____ 1236



**PURPOSE**

5. Mattel's outside attorneys, Quinn Emanuel Urquhart Oliver & Hedges, LLP, asked the firm of Kenneth Hollander Associates to respond to certain portions of the expert reports of Robert Tonner and Mary Bergstein dated February 11, 2008, regarding purported differences between certain Carter Bryant drawings and Bratz dolls.

6. Specifically Kenneth Hollander Associates was asked to conduct survey research to determine the extent to which, if any, girls aged 8-13 recognize certain Carter Bryant drawings as looking like Bratz dolls.

7. The results of this survey are discussed in detail on the following pages where, it will be noted, every effort was made to be objective by recognizing potential, albeit inadvertent, biases and accounting for each of them beforehand.

EXHIBIT _____ 94

PAGE _____ 1237

---



8. The results of this survey are that a net nine out of ten respondents (91.1%) identified the Bryant drawings as Bratz dolls.

9. These results were obtained under neutral conditions: (a) neither the respondents nor the interviewers knew the purpose of the survey; (b) only non-leading questions were asked; (c) there was neither stimulus bias nor question bias; and (d) experimental controls were used to account for any anomalous influences.

10. The basis for my opining about these findings are my qualifications and experience, which include conducting or critiquing more than 100 intellectual property surveys.


_____          3 · 17 · ı 8
Kenneth A. Hollander                       **Date**

EXHIBIT ___94___

PAGE ___1238___

## DESIGN PRINCIPLES AND STANDARDS

11. The present survey was designed and conducted in accordance with the principles and standards delineated in the <u>Manual for Complex Litigation,Third Edition</u>, 1995, prepared for the Federal Judicial Center. These principles provide the best assurance that the data collected are valid and can be relied upon to draw conclusions regarding consumers' opinions. The principles provide that:

- The proper universe(s) be identified and examined.

- A representative sample be drawn from each such universe.

- The plan for selecting the samples be prepared in accordance with generally accepted standards of procedure in the field.

- The questionnaire for gathering this relevant information be prepared in accordance with generally accepted standards of procedure.

- The persons designing and conducting the investigation be qualified to perform their tasks.

- The interviewers be well trained and have no knowledge of the pending litigation or purposes for which the data would be used.

- The interviewing be conducted in accordance with generally accepted standards of procedure in the field.

- The questioning of respondents be correct and unbiased.

- Once gathered, the data be accurately analyzed and reported.

EXHIBIT _____ 94

PAGE _____ 1239

---

Kenneth Hollander Associates                    Page 4                    March 17, 2008

## PROPER UNIVERSE

12. The Reference Manual on Complex Litigation, Second Edition, West Group, St. Paul, MN, 2000, prepared for the Federal Judicial Center, states on page 239, "One of the first steps in designing a survey or in deciding whether an existing survey is relevant is to identify the target population (or universe). The target population consists of all elements (i.e., objects, individuals, or other social units) whose characteristics or perceptions the survey is intended to represent."

13. With respect to this issue, we understand that an intended audience for Bratz dolls is females aged 8-13.

14. Accordingly, we have defined the proper universe for this survey as follows:

    A. Females aged 8-13,

    B. Residing in the United States,

    C. Who have had a Bratz doll (among others) bought for them within the past 12 months.

    D. And, to avoid their knowledge base and opinions being influenced, no member of their immediate household works for:

        (1) A marketing or marketing research firm

        (2) An advertising or public relations agency

        (3) A law firm

        (4) A newspaper, radio or TV station

        (5) A manufacturer, distributor, or retailer of children's dolls

EXHIBIT _____ 94

PAGE _____ 1240

## SAMPLE OF RESPONDENTS

15. The Reference Manual also states on page 240 that "The surveyor's job generally is easier if a complete list of every eligible member of the population is available...so that the sampling frame lists the identity of all members of the target population." A sample drawn at random from such a list would be a true probability sample.

16. A complete list of all members of this proper universe was not available, which means that a true probability sample was not possible. Therefore, a non-probability sample was used for this investigation.

17. Non-probability samples are and have been used to make consequential academic and business decisions and are also accepted into evidence in Federal Courts throughout the country.

18. In this case, the Internet was used as the preferred interviewing medium, not only because it has fewer drawbacks than the alternatives but also because it has significant advantages, such that it is fast becoming the preferred medium whenever appropriate. In fact, according to the leading marketing research publication, "Inside Research," one-third of all survey research in 2006 was conducted via the Internet and this percentage will continue to increase.

19. Given such widespread adoption, the use of the Internet as an interviewing medium affords the opportunity to (a) locate and interview a representative sample of the proper universe in a timely and efficient manner, (b) eliminate any potential

EXHIBIT _____ 94

PAGE _____ 1241

interviewer biases, (c) expose the exact same stimuli to specific respondents in exactly the same manner, and (d) allow respondents to complete a survey at a time and place of their choosing and, thus, to do so in a more thoughtful manner than if it were a time and place of the researcher's choosing.

20. With these considerations in mind, the sample for this survey comprised females aged 8-13 living in households recruited by the Internet interviewing firm of Greenfield Online; all met the screening requirements previously discussed.

21. Greenfield Online is America's largest exclusive Internet interviewing company, is widely respected, and has been used before by Kenneth Hollander Associates.

22. We therefore assert that the beliefs of the Greenfield Online respondents meeting this survey's screening requirements are reasonably representative of all USA respondents meeting these same requirements.

23. The protocol for this survey was to recruit and interview 410 female respondents aged 8-13: 203 were exposed to certain Bryant drawings and another 207 were exposed to certain uncontested drawings.

24. The rationale for this survey design is explained in the following section of the report headed, "Protocol."

EXHIBIT _____ 94

PAGE _____ 1242

**PROTOCOL**

25. This survey employed a Test and Control protocol in order to account for what survey researchers refer to as "noise," that is, any exogenous and unmeasureable respondent issues such as going-in knowledge and/or preconceived opinions. The way around these potentially confounding influences is to use a control group.

26. The Test Group saw two different screens of Bryant drawings: one screen displayed a different drawing in each quadrant of the screen (the "Quadrant" screen); the second screen displayed a group drawing (the "Group" screen). The Control Group saw two analogous screens except the Quadrant and Group screens were non-contested "Cherry Merry Muffin" drawings.

27. Respondents were assigned either to the Test Group or the Control Group on an every-other-interview basis. The respondents in both the Test Group and the Control Group were asked identical questions in an identical order.

28. This protocol ensures that if there are different "Bratz" answers for the Test and Control Groups, they are not caused by "noise," or by differences between the respondents themselves, or by the questions asked of these respondents.

EXHIBIT _____ 94

PAGE _____ 1243

**SCREENER AND QUESTIONNAIRE**

29. The "screening" questionnaire established that: no one in the household worked for a prohibited firm (Question A); there was a girl aged 8-13 living in the household (Questions B and C); a Bratz doll had been bought in the past 12 months for a girl aged 8-13 living in the household (Questions D and E); and a girl aged 8-13 for whom a doll had been bought in the past 12 months was available to take the survey (Questions F1 and F2).

*SCREENER [COMPLETED BY THE ADULT PANEL MEMBER]*
*A.  Do you yourself or does any member of your immediate household work for....*

|  | Yes | No |  |
|---|---|---|---|
| *A manufacturer of children's apparel* | O | O |  |
| *A marketing or marketing research firm* | O | O | *IF "YES" TERMINATE* |
| *An advertising or public relations agency* | O | O | *IF "YES" TERMINATE* |
| *A law firm* | O | O | *IF "YES" TERMINATE* |
| *A newspaper, radio or TV station* | O | O | *IF "YES" TERMINATE* |
| *A manufacturer, distributor, or retailer of children's dolls* | O | O | *IF "YES" TERMINATE* |
| *A manufacturer, distributor, or retailer of children's toys or games* | O | O |  |

*B.  Do you currently have children living in your home?*

    O  *Yes  [CONTINUE]*
    O  *No  [TERMINATE]*

EXHIBIT _____ 94
PAGE _____ 1244

C. *How many of the children currently living in your home are:*

| Girls | 0 | 1 | 2 | 3 or more |
|---|---|---|---|---|
| Under 8 yrs. old | O | O | O | O |
| 8-13 yrs. old | O | O | O | O |
| 14-18 yrs. old | O | O | O | O |
| Boys | 0 | 1 | 2 | 3 or more |
| Under 8 yrs. old | O | O | O | O |
| 8-13 yrs. old | O | O | O | O |
| 14-18 yrs. old | O | O | O | O |

**[TERMINATE IF GIRLS 8-13 YRS. OLD IS '0']**

D. *In the past 12 months, which of the following items (if any) have you or anyone in your immediate household bought for an 8-13 year-old girl currently living in your home? (please select all that apply) [ROTATE LIST ITEMS]*

   ☐ *A doll [TERMINATE IF NOT SELECTED]*
   ☐ *A dress*
   ☐ *Shoes*
   ☐ *Athletic equipment*
   ☐ *An electronic game*
   ☐ *None of the above*

E. *In the past 12 months, what brand or brands of dolls were bought for an 8-13 year-old girl currently living in your home?*

**[QT=OE]**
**[FIVE OPEN END TEXT BOXES; RESPONDENT CAN ONLY CONTINUE IF ONE OF THE QUALIFYING VARIATIONS OF "BRATZ SPELLING" IS INCLUDED]**

   *Qualifying variations of BRATZ DOLL (not case sensitive):*
   • *Bratz*
   • *Brats*
   • *Brat*
   • *Braz*
   • *Bras*
   • *Bratt*
   • *Brattz*
   • *Bratts*
   • *Brazz*
   • *Brass*

EXHIBIT ___94___

PAGE ___1245___

- *Bratz Doll*
- *Brats Doll*
- *Brat Doll*
- *Braz Doll*
- *Bras Doll*
- *Bratt Doll*
- *Bratiz Doll*
- *Bratts Doll*
- *Brazz Doll*
- *Brass Doll*

*F1. Is the 8-13 year old girl for whom a doll was purchased available to participate in the study?*

     O *Yes [SHOW INFO NODE G2]*
     O *No [TERMINATE]*

*F2. Please invite the 8-13 year old girl for whom a doll was purchased to join you at the computer and have **her** answer the following questions. [CONTINUE TO MAIN QUESTIONNAIRE]*

30. The girl aged 8-13 completed the Main Questionnaire:

*MAIN QUESTIONNAIRE*

*Hello!*

*Thank you for participating in our study.*

*How old are you?*
     O *Age 8*
     O *Age 9*
     O *Age 10*
     O *Age 11*
     O *Age 12*
     O *Age 13*

*As soon as you are ready to begin, click the >> button.*

*[ON AN EVERY-OTHER BASIS, ASSIGN RESPONDENT TO ONE OF THE FOLLOWING CELLS]*

O *Cell M*
O *Cell N*

EXHIBIT ____ 94

PAGE ____ 1246

*H1. We're going to show you some drawings and ask you a few questions about them. If you don't know an answer, it's okay. There are no right or wrong answers, so you won't need to guess.*

*H2. Please look at the drawings on the following two screens. Take as much time as you wish looking at each. When you're finished looking at each screen, click the "NEXT" button.*

**IMAGE 1**
IF CELL=M, IMAGE = m1.jpg
IF CELL=N, IMAGE = n1.jpg

**IMAGE 2**
IF CELL=M, IMAGE = m2.jpg
IF CELL=N, IMAGE = n2.jpg

*You just saw two screens of drawings. What, if anything, do these drawings look like to you?*

☐ *Angie dolls*
☐ *Barbie dolls*
☐ *Bratz dolls*
☐ *Cabbage Patch dolls*
☐ *Cherry Merry Muffin dolls*
☐ *Madam Alexander dolls*
☐ *Strawberry Shortcake dolls*
☐ *None of the above*
☐ *Don't know*

*[1. ROTATE 1ST 7 RESPONSES (Angie - Strawberry Shortcake dolls)*
*2. ANCHOR LAST 2 RESPONSES ("None of the above" & "Don't know")*
*3. ALLOW MULTIPLE RESPONSES (EXCEPT "None of the above" and "Don't know")]*

EXHIBIT _____ 9U

PAGE _____ 1247



## PERIOD OF INTERVIEWING

31. Interviewing was conducted from March 4 to March 7, 2008. Given the nature of Internet interviewing, respondents completed their interview at a time and place convenient to them, which means that they had no constraints of either time or place to interfere with their giving considered answers to the questions.

## DOUBLE BLIND PROCEDURES

32. Because of the way the questions were crafted, neither the survey programmer nor the respondents knew the purpose of this survey.  That is, no question suggested the survey's sponsor or purpose.

33. Thus, neither the programmer nor the respondents could either advertently or inadvertently influence the results.

EXHIBIT ___ 9U

PAGE ___ 1248

## E. RECAPITULATION OF SURVEY NEUTRALITY

34. All nine of the Design Principles and Standards delineated in Paragraph 11 were observed in this survey and have been referenced in the discussion of each applicable issue. Furthermore, the following additional five safeguards were observed:

   A. Respondents were told that it was permissible to have no opinion about a subject, and thus that they shouldn't feel the need to guess at an answer.

   B. The Test and Control protocol accounted for any unknown and, therefore, unmeasureable "noise" factors.

   C. Answers that included names were rotated on an every-other-interview basis to eliminate position bias.

   D. Adults who themselves had potentially atypical knowledge because of their profession, or who had family members with such atypical knowledge, were excluded from the survey.

   E. Finally, neither the survey company nor the respondents knew the sponsor or the purpose of the study; thus, neither could attempt to influence the results.

EXHIBIT ___94___

PAGE ___1249___

## DETAILED FINDINGS

35. The table below shows that a net of 91.1% identified the Bryant drawings as Bratz dolls. Statistically, this result could occur by chance only once in 100 occurrences; that is, the result is "statistically significant" at the 99% confidence level.

### Drawings Look Like...

| Base=Total in Each Group.......... | Test Group (200) % | Control Group (200) % |
|---|---|---|
| Angie dolls only | 0.0 | 0.0 |
| Barbie dolls only | 0.5 | 0.0 |
| **Bratz dolls only** | 92.1† | 1.0 |
| Cabbage Patch dolls only | 0.0 | 1.9 |
| Cherry Merry Muffin dolls only | 0.0 | 9.2 |
| Madam Alexander dolls only | 0.5 | 1.0 |
| Strawberry Shortcake dolls only | 0.0 | 55.6 |
| More than one doll | 4.4 | 26.6 |
| None of the above | 2.0 | 2.4 |
| Don't know | 0.5 | 2.4 |
| | 100.0 | 100.0 |

*Q. What, if anything, do these drawings look like to you?*

†Significantly higher than Control Group at 99% confidence level

EXHIBIT _____ 94

PAGE _____ 1250

**APPENDIX A**
Resume of Kenneth A. Hollander

EXHIBIT ____ 94

PAGE ____ 125)

# BIOGRAPHICAL MATERIAL

### -Kenneth A. Hollander-

## CAREER
- *Procter & Gamble, Cincinnati*
  - Research Brand Manager

- *Hallmark Cards, Kansas City*
  - Associate Research Director

- *Young & Rubicam, Chicago*
  - Research Director

- *Interpublic Group of Companies, Atlanta*
  - Vice President, Director of Communications Planning Group

- *Kenneth Hollander Associates*
  - Chief Executive Officer

## ACADEMIC INVOLVEMENT
- *University of Georgia Graduate School of Business*
  - Lecturer
  - Chairman, Board of Advisors, Masters of Marketing Research Program
  - Distinguished Practitioner, Department of Marketing

- *Emory University Graduate School of Business*
  - Lecturer

- *Stanford University Graduate School of Business*
  - Lecturer

## PUBLICATION
- Contributing Editor, <u>Advertising</u>, McGraw Hill

## SPEAKER
- *American Marketing Association*
- *Association of National Advertisers*
- *Advertising Research Foundation*
- *Marketing Research Association*

## EDUCATION
- *B.S.*    *The Ohio State University*
- *MBA*    *The University of Missouri*

EXHIBIT 94

PAGE 1252

## Kenneth Hollander Deposition and/or Trial Testimony: 2003-2007

2003
US District Court of Nevada. Hartl Crushek LLP v, Erin Systems, Hartl Anlagerbau GmbH. CV:S-02-0379-LDG-LRL

US District Court of South Florida. Nitro Leisure Products v. Acushnet Company. CV:02-14008-CIV Middlebrooks/Lynch

US District Court Southern District of Texas—Houston Division. TXU v. Encore Bank. CV:H-02-3463

US District Court of South Florida—Miami Division. Doral Golf Resort & Spa v. International Doral Miami, CV:01-23425

2004
US District Court Southern District of Florida—Fort Lauderdale Division. Bank of America v. Nations Mortgage and Investments, Inc. 03-62037 CIV-ZLOCH

2005
US District Court of Nevada. R&R Partners v. Dorothy Tovar. CV-N-04-0145-LRH-VPC

US District Court Southern District of California. Votivo v. Archieligo. CV03-230L

2006
US District Court for Western District of Washington. Richard Bach and Russell v. Forever Living Products U.S., Inc., C05-0970P

US District Court Central District of California, Southern Division, Lamoon, Inc. v. Lamour Nail Products, Inc., SAV05-191 AHS (ANx).

US District Court of South Florida, Miami Division. Manpower Software v. Manpower, Inc., 04-22997.

US District Court of Nevada. Hansen Beverage v. Rockstar, Inc. CV 2:06-cv-00733

U.S. District Court for the Eastern District of North Carolina Western Division. Georgia-Pacific Corporation v. Von Drehle Corporation, 5-05-CV-478-BO(1)

2007
U. S. District Court for Central District of California Western Division. Nissan Motor Co. Ltd. and Nissan North America, Inc. v. Nissan Computer Corporation and The Internet Center, Inc., CV 99-12980 DDP (Mcx).

U.S. District Court District of New Jersey. IDT Telecom Inc. and Union Telecard Alliance, LLC v. CVT Prepaid Solutions, Inc. CV 07-1076

U.S. District Court Central District of California. TrafficSchool.Com, Inc. v. Edriver, Inc. CV06-7561 PA (Cwx)

U.S. District Court Southern District of California. Brighton Collectibles, Inc. v. Renaissance Group International and Ralph's Grocery Company, CV-06-1115 H POR

U.S. District Court Northern District of Illinois Eastern Division, Luster Products v. Intimate Beauty Corporation and V. Secret Catalogue, Inc, CV05C-4527

EXHIBIT _____ 94

PAGE _____ 1253

# APPENDIX B
## Questionnaires & Images

EXHIBIT _____ 9 4

PAGE _____ 1254

## GIRLS DOLL STUDY

### SCREENER (TO BE COMPLETED BY THE PARENT)

A. Do you yourself or does any member of your immediate household work for....

|  | Yes | No |  |
|---|---|---|---|
| A manufacturer of children's apparel | O | O |  |
| A marketing or marketing research firm | O | O | IF "YES" T&T |
| An advertising or public relations agency | O | O | IF "YES" T&T |
| A law firm | O | O | IF "YES" T&T |
| A newspaper, radio or TV station | O | O | IF "YES" T&T |
| A manufacturer, distributor, or retailer of children's dolls | O | O | IF "YES" T&T |
| A manufacturer, distributor, or retailer of children's toys or games | O | O |  |

B. Do you currently have children living in your home?

    O  Yes  [CONTINUE]
    O  No  [T&T]

C. How many of the children currently living in your home are:

| Girls | 0 | 1 | 2 | 3 or more |
|---|---|---|---|---|
| Under 8 yrs. old | O | O | O | O |
| 8-13 yrs. old | O | O | O | O |
| 14-18 yrs. old | O | O | O | O |

| Boys | 0 | 1 | 2 | 3 or more |
|---|---|---|---|---|
| Under 8 yrs. old | O | O | O | O |
| 8-13 yrs. old | O | O | O | O |
| 14-18 yrs. old | O | O | O | O |

[IF GIRLS 8-13 YRS. OLD IS '0' T&T]

D. In the past 12 months, which of the following items (if any) have you or anyone in your immediate household bought for an 8-13 year-old girl currently living in your home? (please select all that apply) [ROTATE LIST ITEMS]

    ☐  A doll [IF NOT SELECTED, T&T]
    ☐  A dress
    ☐  Shoes
    ☐  Athletic equipment
    ☐  An electronic game
    ☐  None of the above

EXHIBIT _____ 24

PAGE _____ 1255

E. In the past 12 months, what brand or brands of dolls were bought <u>for an 8-13 year-old girl</u>
currently living in your home?

[QT=OE]
[include 5 open end text boxes; respondent can only continue if one of the qualifying variations
of "Bratz spelling" is included]

Qualifying variations of BRATZ DOLL (not case sensitive):
- Bratz
- Brats
- Brat
- Braz
- Bras
- Bratt
- Brattz
- Bratts
- Brazz
- Brass
- Bratz Doll
- Brats Doll
- Brat Doll
- Braz Doll
- Bras Doll
- Bratt Doll
- Brattz Doll
- Bratts Doll
- Brazz Doll
- Brass Doll

F.1. Is the 8-13 year old girl for whom a doll was purchased available to participate in the study?

O   Yes [show info node G2]
O   No [TERMINATE]

F2. Please invite the 8-13 year old girl for whom a doll was purchased to join you at the
computer and have *__her__* answer the following questions. [continue to main questionnaire]

**[PAGE BREAK]**

Hello!

Thank you for participating in our study.

EXHIBIT _____ 94

PAGE _____ 1256

How old are you?

- O   Age 8
- O   Age 9
- O   Age 10
- O   Age 11
- O   Age 12
- O   Age 13

As soon as you are ready to begin, click the >> button.

EXHIBIT _____ 94

PAGE _____ 1257

MAIN QUESTIONNAIRE

ON AN EVERY-OTHER BASIS, ASSIGN RESPONDENT TO ONE OF THE FOLLOWING CELLS

O Cell M
O Cell N

H1. We're going to show you some drawings and ask you a few questions about them. If you don't know an answer, it's okay. There are no right or wrong answers, so you won't need to guess.

H2. Please look at the drawings on the following two screens. Take as much time as you wish looking at each. When you're finished looking at each screen, click the "NEXT" button.

**IMAGE 1**
IF CELL=M, IMAGE = m1.jpg
IF CELL=N, IMAGE = n1.jpg

**IMAGE 2**
IF CELL=M, IMAGE = m2.jpg
IF CELL=N, IMAGE = n2.jpg

You just saw two screens of drawings. What, if anything, do these drawings look like to you?

- ☐ Angie dolls
- ☐ Barbie dolls
- ☐ Bratz dolls
- ☐ Cabbage Patch dolls
- ☐ Cherry Merry Muffin dolls
- ☐ Madam Alexander dolls
- ☐ Strawberry Shortcake dolls
- ☐ None of the above
- ☐ Don't know

[1. ROTATE 1ST 7 RESPONSES (Angie - Strawberry Shortcake dolls)
2. ANCHOR LAST 2 RESPONSES ("None of the above"& "Don't know")
3. ALLOW MULTIPLE RESPONSES (EXCEPT "None of the above" and "Don't know")]

EXHIBIT ___94___

PAGE ___1258___

# Test Group Images
# (Cell M)

EXHIBIT _____ 94

PAGE _____ 1259





94

1261

# Control Group Images
## (Cell N)

EXHIBIT _____ 94

PAGE _____ 1262



EXHIBIT _____ 94

PAGE _____ 1263



EXHIBIT _____ 94

PAGE _____ 1264

# APPENDIX C
## Computer Tabular Output

EXHIBIT _____ 94

PAGE _____ 1265

|                                | Test Group | Control Group |
|--------------------------------|-----------:|--------------:|
| Base=Total in Each Group......... | 203 | 207 |
| Angie dolls only | 0.0 | 0.0 |
| Barbie dolls only | 0.5 | 0.0 |
| Bratz dolls only | 92.1 | 1.0 |
| Cabbage Patch dolls only | 0.0 | 1.9 |
| Cherry Merry Muffin dolls only | 0.0 | 9.2 |
| Madam Alexander dolls only | 0.5 | 1.0 |
| Strawberry Shortcake dolls only | 0.0 | 55.6 |
| More than one doll | 4.4 | 26.6 |
| None of the above | 2.0 | 2.4 |
| Don't know | 0.5 | 2.4 |
|  | 100.0 | 100.0 |

EXHIBIT _____ 94

PAGE _____ 1266

1

## PROOF OF SERVICE

2

    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

3

4

    On March 17, 2008, I served true copies of the following document(s) described as **EXPERT REBUTTAL REPORT OF KENNETH HOLLANDER** on the parties in this action as follows:

5

6

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote
**Overland Borenstein Scheper & Kim LLP**
300 South Grand Avenue
Suite 2750
Los Angeles, CA 90071-3144

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest LLP**
710 Sansome Street
San Francisco, CA 94111

7

8

9

10

11

Thomas J. Nolan, Esq.
Carl Roth, Esq.
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

12

13

14

15

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

16

    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17

18

    Executed on March 17, 2008, at Los Angeles, California.

19

20

                                                   _____

21

                                        NOW LEGAL -- Dave Quintana

22

23

24

25

26

27

28

EXHIBIT _____ 94

PAGE _____ 1267

EXHIBIT 95

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

_____

VA _____ VAU _____
EFFECTIVE DATE OF REGISTRATION

_____

Month _____ Day _____ Year _____

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

Title of This Work ▼
drawing of Doll No. 1

NATURE OF THIS WORK ▼ See Instructions
drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼ | Number ▼ | Issue Date ▼ | On Pages ▼

---

**2**

**a**

NAME OF AUTHOR ▼
Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼  Year Died ▼
1968

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____ USA
{ Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map            ☐ Technical drawing
☑ 2-Dimensional artwork      ☐ Photograph     ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design  ☐ Architectural work

**b**

Name of Author ▼

Dates of Birth and Death
Year Born ▼  Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____
{ Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map            ☐ Technical drawing
☐ 2-Dimensional artwork      ☐ Photograph     ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design  ☐ Architectural work

---

**3**

**a**

Year in Which Creation of This Work Was Completed
2000
This information must be given Year in all cases.

**b**

Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month Early 2001, USA
Day _____ Year _____
Nation

---

**4**

See instructions before completing this space.

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Mattel, Inc.
333 Continental Blvd.
El Segundo, CA 90245 - 5012

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

Assignment

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

07209/1985444.1

DO NOT WRITE HERE
Page 1 of _____ pages

---

EXHIBIT _____95_____

PAGE _____1268_____

M 0059698

| EXAMINED BY | FORM VA |
| --- | --- |
| CHECKED BY | |

CORRESPONDENCE
☐ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼     Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

a

See instructions
before completing
this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼     Account Number ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼
Robert D. Walsh
Mattel, Inc. MI-1220
333 Continental Blvd.
El Segundo, CA 90245 - 5012

b

Area code and daytime telephone number     ( 310 ) 252-6650     Fax number     ( 310 ) 252-4991
Email

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
☐ author
☐ other copyright claimant
check only one ▶   ☐ owner of exclusive right(s)
☑ authorized agent of  Mattel, Inc.
                      Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Robert D. Walsh                                     Date  October 27, 2006

Handwritten signature (X) ▼
X   Robert D. Walsh

| Certificate will be mailed in window envelope to this address: | Name ▼  Robert D. Walsh  Mattel, Inc.  MI -1220 |
| --- | --- |
| | Number/Street/Apt ▼  333 Continental Blvd. |
| | City/State/ZIP ▼  El Segundo, CA 90245 -5012 |

• Complete all necessary spaces
• Sign your application in space 8.
SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
MAIL TO
Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000

**9**

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form VA   Rev: 07/2006   Print: 07/2006—30,000   Printed on recycled paper

U.S. Government Printing Office: 2004-520-952/00,125-

EXHIBIT     95
PAGE     1269

M 0059699

EXHIBIT _____ 95

PAGE _____ 120

M 0059700

EXHIBIT ___ 95

PAGE ___ 121

M 0059701

Date: 22/01/08
Time: 16:03:34
Production Number: M 0059702-1-4

EXHIBIT ___95___

PAGE ___1272___

Copyright Office fees are subject to change.
For current fees, check the Copyright Office
website at *www.copyright.gov*, write the Copy-
right Office, or call (202) 707-3000.

**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

_____

VA _____ VAU _____
EFFECTIVE DATE OF REGISTRATION

Month _____ Day _____ Year _____

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

Title of This Work ▼

drawing of Doll No. 2

NATURE OF THIS WORK ▼ See Instructions

drawing

Previous or Alternative Titles ▼

Publication as a Contribution  If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give:  Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**

**a**

NAME OF AUTHOR ▼

Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼
1968

**NOTE**

Under the law,
the "author" of
a "work made
for hire" is
generally the
employer, not
the employee
(see instruc-
tions). For any
part of this
work that was
"made for hire"
check "Yes" in
the space
provided, give
the employer
(or other
person for
whom the work
was prepared)
as "Author" of
that part, and
leave the
space for dates
of birth and
death blank.

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____ USA
{ Domiciled in _____

Was This Contribution to the Work
Anonymous?    ☐ Yes   ☑ No
Pseudonymous?  ☐ Yes   ☑ No

If the answer to either
of these questions is
"Yes," see detailed
instructions.

Nature of Authorship  Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☑ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**b**

Name of Author ▼

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____
{ Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes   ☐ No
Pseudonymous?  ☐ Yes   ☐ No

If the answer to either
of these questions is
"Yes," see detailed
instructions.

Nature of Authorship  Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**3**

**a**

Year in Which Creation of This Work Was
Completed    2000
This information
must be given
Year in all cases.

**b**

Date and Nation of First Publication of This Particular Work
Complete this information
ONLY if this work
has been published.
Month _____ Early 2001, USA    Day _____ Year _____
Nation

**4**

See Instructions
before completing
this space.

COPYRIGHT CLAIMANT(S)  Name and address must be given even if the claimant is the same as the
author given in space 2. ▼

Mattel, Inc.
333 Continental Blvd.
El Segundo, CA 90245 - 5012

Transfer  If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a
brief statement of how the claimant(s) obtained ownership of the copyright. ▼

Assignment

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

07209/1985444.1

EXHIBIT _____ 95

PAGE _____ 1273

M 0059702

| EXAMINED BY | | FORM VA |
|---|---|---|
| CHECKED BY | | |
| CORRESPONDENCE ☐ Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼       **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

See instructions before completing this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**6**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼       **Account Number** ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

Robert D. Walsh
Mattel, Inc. MI-1220
333 Continental Blvd.
El Segundo, CA 90245 - 5012

**b**

**7**

Area code and daytime telephone number  ( 310 ) 252-6650       Fax number  ( 310 ) 252-4991

Email

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  Mattel, Inc.
                        Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Robert D. Walsh                                    Date  October 27, 2006

Handwritten signature (X) ▼

x  _Robert D. Walsh_

| Certificate will be mailed in window envelope to this address: | **Name** ▼ Robert D. Walsh Mattel, Inc.  MI -1220 | • Complete all necessary spaces • Sign your application in space 8. |
|---|---|---|
| | **Number/Street/Apt** ▼ 333 Continental Blvd. | 1. Application form 2. Nonrefundable filing fee in check or money order payable to Register of Copyrights 3. Deposit material |
| | **City/State/ZIP** ▼ El Segundo, CA 90245 -5012 | Library of Congress Copyright Office 101 Independence Avenue SE Washington, DC 20559-6000 |

**9**

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form VA  Rev: 07/2006  Web 07/2006   00/00   Printed on recycled paper       U.S. Government Printing Office: 2004-300-954/00,108

EXHIBIT ___95___

PAGE ___1274___

M 0059703



EXHIBIT 95

PAGE 1275

M 0059704

EXHIBIT ___95___

PAGE ___1276___

M 0059705

Date: 22/01/08
Time: 16:03:34
Production Number: M 0059706-1-4

PAGE 1277

EXHIBIT 96

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

VA _____ VAU _____
EFFECTIVE DATE OF REGISTRATION

Month _____ Day _____ Year _____

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

Title of This Work ▼
group drawing of dolls

NATURE OF THIS WORK ▼ See instructions
drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼ ___ Number ▼ ___ Issue Date ▼ ___ On Pages ▼ ___

**2**

**a** NAME OF AUTHOR ▼
Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼ 1968    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ___ USA
Domiciled in ___

Was This Author's Contribution to the Work
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture
☑ 2-Dimensional artwork
☐ Reproduction of work of art
☐ Map
☐ Photograph
☐ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** Name of Author ▼

Dates of Birth and Death
Year Born ▼ ___ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ___
Domiciled in ___

Was This Author's Contribution to the Work
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture
☐ 2-Dimensional artwork
☐ Reproduction of work of art
☐ Map
☐ Photograph
☐ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

**3**

**a** Year in Which Creation of This Work Was Completed
2000 Year
This information must be given in all cases.

**b** Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month Early 2001, USA Day ___ Year ___ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Mattel, Inc.
333 Continental Blvd.
El Segundo, CA 90245 - 5012

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
Assignment

APPLICATION RECEIVED
ONE DEPOSIT RECEIVED
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

See instructions before completing this space.

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

07209/1985444.1

EXHIBIT _____ 95
PAGE _____ 1278

M 0059706

| EXAMINED BY | FORM VA |
|---|---|
| CHECKED BY | |
| □ CORRESPONDENCE Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
□ Yes  □ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. □ This is the first published edition of a work previously registered in unpublished form.
b. □ This is the first application submitted by this author as copyright claimant.
c. □ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

**6**

See instructions before completing this space.

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼          Account Number ▼

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼
Robert D. Walsh
Mattel, Inc. MI-1220
333 Continental Blvd.
El Segundo, CA 90245 -5012

**b**

Area code and daytime telephone number  ( 310 ) 252-6650          Fax number  ( 310 ) 252-4991

Email

**CERTIFICATION** I, the undersigned, hereby certify that I am the

check only one ▶
□ author
□ other copyright claimant
□ owner of exclusive rights(s)
☑ authorized agent of  Mattel, Inc.
       Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Robert D. Walsh                                    Date  October 27, 2006

Handwritten signature (X) ▼
x   Robert D. Walsh

| Certificate will be mailed in window envelope to this address: | Name ▼ Robert D. Walsh  Mattel, Inc.  MI -1220 |
|---|---|
| | Number/Street/Apt ▼ 333 Continental Blvd. |
| | City/State/ZIP ▼ El Segundo, CA 90245 -5012 |

• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000

**9**

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form VA  Rev: 07/2006  Print: 07/2006—30,000   Printed on recycled paper          U.S. Government Printing Office: 2004-320-950/60,109

07209/15854471

EXHIBIT _____95_____

PAGE _____1279_____

M 0059707



EXHIBIT ____95____

PAGE ____1280____

M 0059708



EXHIBIT 95

PAGE 1281

M 0059709

Date: 02/01/08
Time: 16:03:34
Production Number: M 0059714-1-4

EXHIBIT ___95___

PAGE ___1282___

Copyright Office fees are subject to change.
For current fees, check the Copyright Office
website at *www.copyright.gov*, write the Copy-
right Office, or call (202) 707-3000.

**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

_____

VA                    VAU

EFFECTIVE DATE OF REGISTRATION

_____

Month          Day          Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

Title of This Work ▼

drawing of Doll No. 4

NATURE OF THIS WORK ▼ See Instructions

drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼          Number ▼          Issue Date ▼          On Pages ▼

---

**2**

**a**

NAME OF AUTHOR ▼

Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼          Year Died ▼
1968

**NOTE**

Under the law,
the "author" of
a "work made
for hire" is
generally the
employer, not
the employee
(see Instruc-
tions). For any
part of this
work that was
"made for hire"
check "Yes" in
the space
provided, give
the employer
(or other
person for
whom the work
was prepared)
as "Author" of
that part, and
leave the
space for dates
of birth and
death blank.

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR ⎰ Citizen of ___ USA
    ⎱ Domiciled in ___

Was This Author's Contribution to the Work
Anonymous?       ☐ Yes   ☑ No
Pseudonymous?   ☐ Yes   ☑ No

If the answer to either
of these questions is
"Yes," see detailed
instructions.

Nature of Authorship Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture          ☐ Map                  ☐ Technical drawing
☑ 2-Dimensional artwork            ☐ Photograph       ☐ Text
☐ Reproduction of work of art     ☐ Jewelry design   ☐ Architectural work

**b**

Name of Author ▼

Dates of Birth and Death
Year Born ▼          Year Died ▼

Was this contribution to the work a
"work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR ⎰ Citizen of ___
    ⎱ Domiciled in ___

Was This Author's Contribution to the Work
Anonymous?       ☐ Yes   ☐ No
Pseudonymous?   ☐ Yes   ☐ No

If the answer to either
of these questions is
"Yes," see detailed
instructions.

Nature of Authorship Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture          ☐ Map                  ☐ Technical drawing
☐ 2-Dimensional artwork            ☐ Photograph       ☐ Text
☑ Reproduction of work of art     ☐ Jewelry design   ☐ Architectural work

---

**3**

**a**

Year in Which Creation of This Work Was
Completed          2000          This information
                                 must be given
                                 Year In all cases.

**b**

Date and Nation of First Publication of This Particular Work
Complete this information   Month ___ Day ___ Year ___
ONLY if this work            Early 2001, USA
has been published.                                      Nation

---

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Mattel, Inc.
333 Continental Blvd.
El Segundo, CA 90245 - 5012

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

Assignment

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.          • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

07209/1985444.1

EXHIBIT ___95___

PAGE ___1283___

M 0059714

EXAMINED BY

CHECKED BY

CORRESPONDENCE
☐ Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes   ☑ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**
a

See instructions
before completing
this space.

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                   Account Number ▼

**7**
a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼
Robert D. Walsh
Mattel, Inc. MI-1220
333 Continental Blvd.
El Segundo, CA 90245 - 5012

b

Area code and daytime telephone number    ( 310 ) 252-6650                    Fax number    ( 310 ) 252-4991
Email

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of   Mattel, Inc.
       Name of author or other copyright claimant, or owner of exclusive right(s) ▲

check only one ▶

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Robert D. Walsh                                                          Date   October 27, 2006

Handwritten signature (X) ▼
X        _Robert D. Walsh_

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Robert D. Walsh  Mattel, Inc.  MI-1220

Number/Street/Apt ▼
333 Continental Blvd.

City/State/ZIP ▼
El Segundo, CA 90245 -5012

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable filing fee in check or money
   order payable to Register of Copyrights
3. Deposit material

Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000

**9**

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form VA   Rev: 07/2006   Print: 07/2006—30,000  Printed on recycled paper          U.S. Government Printing Office: 2004-330-945/60,126

872091985447.1

EXHIBIT  95

PAGE  1284

M 0059715



EXHIBIT ___95___

PAGE___1285____

M 0059716

EXHIBIT 95

PAGE 1286

M 0059717

Date: 12/04/08
Time: 16:03:35
Production Number: M 0059738-1-4

EXHIBIT    95
PAGE   1287

Copyright Office fees are subject to change.
For current fees, check the Copyright Office
website at *www.copyright.gov*, write the Copy-
right Office, or call (202) 707-3000.

**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

VA                    VAU
EFFECTIVE DATE OF REGISTRATION

Month          Day          Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**
Title of This Work ▼
drawing of Doll No. 10

NATURE OF THIS WORK ▼ See Instructions
drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼          Number ▼          Issue Date ▼          On Pages ▼

**2**
**a**
NAME OF AUTHOR ▼
Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼          Year Died ▼
1968

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____ USA
     { Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?     ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Nature of Authorship Check appropriate box(es). See instructions
☐ 3-Dimensional sculpture      ☐ Map              ☐ Technical drawing
☑ 2-Dimensional artwork        ☐ Photograph       ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design   ☐ Architectural work

**b**
Name of Author ▼

Dates of Birth and Death
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____
     { Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See instructions
☐ 3-Dimensional sculpture      ☐ Map              ☐ Technical drawing
☐ 2-Dimensional artwork        ☐ Photograph       ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design   ☐ Architectural work

**3**
**a**
Year in Which Creation of This Work Was Completed
2000
This information must be given ONLY in all cases.

**b**
Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month  Early 2001, USA    Day _____  Year _____          Nation

**4**
COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Mattel, Inc.
333 Continental Blvd.
El Segundo, CA 90245 - 5012

See instructions before completing this space.

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
Assignment

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
                • See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

07/09/1985444.1

EXHIBIT _____ 95
PAGE _____ 1288

M 0059738

| EXAMINED BY | | FORM VA |
|---|---|---|
| CHECKED BY | | |
| | CORRESPONDENCE ☐ Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number ▼**          **Year of Registration ▼**

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**
a

See instructions before completing this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name ▼**          **Account Number ▼**

**7**
a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼
Robert D. Walsh
Mattel, Inc. MI-1220
333 Continental Blvd.
El Segundo, CA 90245 - 5012

b

Area code and daytime telephone number  (310) 252-6650          Fax number  (310) 252-4991
Email

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  Mattel, Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Robert D. Walsh          Date October 27, 2006

Handwritten signature (X) ▼
X  *Robert D. Walsh*

| Certificate will be mailed in window envelope to this address: | **Name ▼** Robert D. Walsh Mattel, Inc. MI-1220 | • Complete all necessary spaces • Sign your application in space 8 |
|---|---|---|
| | **Number/Street/Apt ▼** 333 Continental Blvd. | 1. Application form 2. Nonrefundable filing fee in check or money order payable to Register of Copyrights 3. Deposit material |
| | **City/State/ZIP ▼** El Segundo, CA 90245 -5012 | Library of Congress Copyright Office 101 Independence Avenue SE Washington, DC 20559-6000 |

**9**

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form VA   Rev: 07/2006   Print: 07/2006—30,000   Printed on recycled paper          U.S. Government Printing Office: 2004-330-968/60,129

EXHIBIT ____95____

PAGE ____1289____

M 0059739

EXHIBIT _____ 95

PAGE _____ 1290

M 0059740

EXHIBIT ___95___

PAGE ___1291___

M 0059741