EXHIBIT 105

**Fred Larian**

| | |
|---|---|
| **From:** | Isaac Larian |
| **Sent:** | Friday, May 19, 2000 8:10 AM |
| **To:** | Fred Larian; Eli Makabi |
| **Cc:** | Leon Neman; Russ, August & Kabot - Larry  Russ |
| **Subject:** | RE: CALL OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF |

The shareholder meeting must be properly called for in advance according to the corporate by laws.

Calling the shareholder meetings at 7:23pm of the day before the board of directors meeting is improper and will not be conducted.

-----Original Message-----
**From:**      Fred Larian
**Sent:**      Thursday, May 18, 2000 7:23 PM
**To:**        Eli Makabi; Isaac Larian
**Cc:**        Leon Neman; Russ, August & Kabot - Larry  Russ
**Subject:**   CALL OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF

Since all shareholders will be present tomorrow at the Board meeting Isaac noticed, and we are mandated by the corporate bylaws to hold the annual meeting of the shareholders by May 31, 2000, I suggest that we also hold the annual shareholders meeting at this time.

-----Original Message-----
**From:**      Isaac Larian
**Sent:**      Tuesday, May 16, 2000 6:44 PM
**To:**        Eli Makabi; Fred Larian; Leon Neman; Russ, August & Kabot - Larry  Russ
**Subject:**   CALL OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF
**Importance:** High

Please note that there will be a board of director meeting ( per attached) on Friday May 19th at 9 am at the offices of Larry Russ.

Only Board Members and Larry Russ ( at his discretion as the general counsel for ABC International) will be allowed to participate in this meeting.

## CALL OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF
## ABC INTERNATIONAL TRADERS, INC.
### (A California corporation)

The undersigned, President of ABC INTERNATIONAL TRADERS, INC., pursuant to Section 8 of the Bylaws of ABC INTERNATIONAL TRADERS, INC., hereby calls a special meeting of the Board of Directors of this corporation on May 19 2000 at 9 am., at the offices of Larry Russ at 12424 Wilshire Blvd. Suite 1200 , LA Ca 90025 Tel 310-826-7474  for the following purpose and such business as may properly come before the Board:

    1.  Ratifying Isaac Larian's salary increase from $221,540.80 to

EXHIBIT _____ 105 _____

PAGE _____ 576 _____

**KBK 01294**

$500,000 per annum, as of January 1, 2000, as compensation for his services as CEO and President of this Corporation.

2. Ratify a special bonus of $750,000 for Isaac Larian, based on the performance of the company in 1999.

3. To set up a special bonus of $1,500,000 should the EBIT of the company exceed $8,000,000 in 2000.

4. To Ratify to pay Isaac Larian a royalty of 4% on any new toy ideas he personally develops for MGA'S 2001 line.


Dated: May, 16,2000


Isaac Larian

_____

Signed by: Isaac Larian
President of ABC International Traders, Inc.


F:\Docs\Larian\documents\call of special meeting.doc


**KBK 01295**

EXHIBIT ___105___

PAGE ___1577___

EXHIBIT 106

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 107

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 108

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 109

CONFORMED COPY
LODGED                    FILED

2007 MAY 16  PM 1: 59   2007 MAY 16  PM 2: 00
CLERK U.S. DISTRICT COURT  CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.   CENTRAL DIST. OF CALIF.
        RIVERSIDE                RIVERSIDE
BY                          BY

1 | Hon. Edward A. Infante (Ret.)
  | JAMS
2 | Two Embarcadero Center
  | Suite 1500
3 | San Francisco, California  94111
  | Telephone:     (415) 774-2611
4 | Facsimile:     (415) 982-5287

5

6

7                UNITED STATES DISTRICT COURT

8                CENTRAL DISTRICT OF CALIFORNIA

9                      EASTERN DIVISION

10

11 | CARTER BRYANT, an individual,          | CASE NO. C 04-09049 SGL (RNBx)
   |                                         | JAMS Reference No. 1100049530
12 |          Plaintiff,
13 |     v.                                  | Consolidated with
   |                                         | Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corporation,   | Case No. CV 05-2727
15 |          Defendant.                     | ORDER GRANTING MATTEL'S
   |                                         | MOTION TO COMPEL PRODUCTION
16 |                                         | OF DOCUMENTS AND
   |                                         | INTERROGATORY RESPONSES BY
17 | CONSOLIDATED WITH                       | MGA
   | MATTEL, INC. v. BRYANT and
18 | MGA ENTERTAINMENT, INC. v. MATTEL,
19 | INC.

20                         I. INTRODUCTION

21         On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22 of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24 reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25 submission pending the parties' submission of a proposed protective order, which was received

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___109___

PAGE ___1585___

1    on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2    Mattel's motion to compel is granted.

3                                          II.  BACKGROUND

4        A. Requests for Documents

5        In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6    became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7    categories of documents, to be produced in ten days. MGA filed a motion to quash, which the

8    court granted because of the short amount of time provided for compliance with the subpoena.

9    The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10   some of Mattel's requests. In particular, the parties agreed to limit production to the "first

11   generation" Bratz dolls. On August 12, 2004, MGA produced documents.

12       In 2005, the parties stipulated to supplementing their document productions on May 16,

13   2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14       In September of 2006, MGA made a supplemental production of documents. On February

15   5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16   with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of

17   documents to replace earlier produced documents with legibility problems.

18       Mattel now moves to compel MGA to produce documents responsive to its requests. As a

19   preliminary matter, Mattel contends that MGA's production is deficient because it contains

20   redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with

21   respect to essentially five categories of documents. First, Mattel contends that MGA is

22   withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel

23   believes that MGA's production is incomplete based upon its review of documents that have been

24   produced by third party Steven Linker. According to Mattel, Linker's documents from October

25   of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26   previously represented. Mattel also contends that MGA's responses to the document requests

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                        2

EXHIBIT  104

PAGE  1586

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3    show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs

4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5    Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6    what is or is not being withheld. Mattel also contends that MGA's objections based upon its

7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8    protective order in place. In addition, Mattel contends that MGA's objection to producing

9    documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11        Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes. Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17        Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25   _____

26        [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
     to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___ 109

PAGE ___ 1587

1        Mattel also asserts that MGA is improperly withholding documents relating to products,

2  services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3  Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4  Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5  Inventions Agreement.

6       Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7  payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8  because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9  (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10  damages; and (3) payments may show when and what trade secret information Bryant and other

11  defendants allegedly misappropriated from Mattel.

12      Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13  contends that all agreements between Bryant and MGA are relevant, not just the original

14  September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15  documents relating to MGA and Bryant's alleged joint defense agreement because such

16  information would be relevant to demonstrate bias and lack of credibility.

17      Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18  statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19  information may reveal relevant information about the date of creation of Bryant's Bratz

20  drawings.

21      In response, MGA denies withholding responsive documents and asserts that it has

22  produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23  that it has produced all responsive and relevant documents that it was able to locate in response to

24  request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25  before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26  motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 109

PAGE 1588

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10        MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21        Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT __109__

PAGE __1589__

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's
2  Opposition at 24:9-12.[2]

3        Third, MGA asserts that Mattel is not entitled to review all non-public witness statements
4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has
5  refused to produce similar types of documents.  More significantly, MGA contends that Mattel's
6  requests for non-public witness statements are "a blatant attempt to avoid the discovery
7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations
8  imposed by this Court."  MGA's Opposition at 25:6-7.  MGA explains its position as follows.
9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,
10 Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an
11 attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel
12 abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took
13 the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA
14 was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting
15 foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created
16 a situation in which MGA has been forced to give testimony and provide evidence related to
17 issues in this case that Mattel now seeks to obtain wholesale."  MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family
19 dispute between MGA's chief executive officer and his brother because such documents are in no
20 way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration
21 proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,
22 MGA contends that the brothers were bound by a protective order prohibiting the use of any
23 documents or testimony for any purpose other than the arbitration.

24
25
_____
26    [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.
27
28 Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 109

PAGE 1590

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2 files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3 MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4 in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5 MGA objects to producing documents relating to any testing performed to determine the date that

6 Bratz documents were created. MGA contends that such discovery is premature and should not

7 proceed until experts are designated.

8    B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10 however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11 On May 30, 2006, MGA responded to the interrogatories.

12    Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13 Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14 because they lack substantive information and consist almost entirely of objections. MGA

15 responds that the motion is moot because it is prepared to provide supplemental responses to its

16 interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17 motion to compel responses to interrogatories.

18    III. DISCUSSION

19    A. Rule 26 of the Federal Rules of Civil Procedure

20    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22 party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23 discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24 Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25 unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26 convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7



EXHIBIT   109

PAGE   1591

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6        B.   Document Requests

7           1.   Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8           34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9        The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16       As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                 Design Documents for Unreleased Products

23       MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                             8

EXHIBIT 109

PAGE 1592

1  | to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2  | has been approved and entered as an order of the court. MGA is ordered to produce design

3  | documents for unreleased products that are responsive to Mattel's document requests in

4  | accordance with the terms of the stipulation and order.

5  | Documents from MGA Hong Kong

6  | Documents relating to activities or conduct in foreign countries are relevant and

7  | discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  | Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  | provides reciprocal discovery from its subsidiaries.

10 | Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11 | the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12 | documents from MGA Hong Kong.

13 | Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14 | 64, 69, 96, 97, 98, 99, 100.

15 | 2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16 | 61, 63, 66, 67, 70, 88, 90, 91

17 | Mattel contends that MGA is improperly limiting its document production to the "first

18 | generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19 | generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20 | documents for yet unreleased products.

21 | As stated previously, design documents for yet unreleased products are relevant and

22 | discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23 | all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24 | 59, 61, 63, 66, 67, 70, 88, 90, and 91.

25 | //

26 | //

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 109

PAGE 1593

1          3. <u>MGA's Payments to Bryant (Nos.43, 45)</u>

2        MGA represents that it has already agreed to produce documents related to Bratz, without

3    limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless,

4    Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's

5    motion is granted with respect to request nos. 43 and 45.

6          4. <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

7        MGA represents that it has already agreed to produce non-privileged documents

8    responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9    relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or

10   indemnity agreements between MGA and Bryant .

11       Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12   Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any

13   responsive documents withheld on the basis of a privilege must be properly identified in a

14   privilege log.

15.        5. <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,</u>

16       <u>41,</u>

17       In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18   and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel

19   anticipates that these documents could provide evidence relating to the conception date for Bratz.

20       Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21   date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against

22   alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the

23   arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24   Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25   

26       [3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

27   

28   Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ___109___

PAGE ___1594___

1   that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration.  MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6          6. Documents Regarding Date-Testing (Request No. 92)

7          Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12         The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15         C. Interrogatories

16         Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25         [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
    should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                        11

EXHIBIT 109

PAGE 1095

1        Neither party has cited to any caselaw governing the calculation of the 30-day period

2  when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3  will be treated as timely in order to preserve any valid objections MGA may have asserted.

4        Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5  conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6  tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7  before December 31, 2001, including a description of each person's role and the start and end

8  dates of each person's involvement. In response, MGA asserted numerous objections, but did

9  provide the names of five individuals.

10       The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11  objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12  Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13  for confidential, proprietary or commercially sensitive information, or seeks information

14  protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15  it fails to provide the description of each person's role and the start and end dates of each person's

16  involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17  5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18       Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19  embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20  the reasons previously discussed in connection with Interrogatory No. 5.

21       Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22  December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23  substantive information.

24       MGA's objections are without merit. The interrogatory clearly seeks information relevant

25  to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26  compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28    Bryant v. Mattel, Inc.,                        12
      CV-04-09049 SGL (RNBx)

EXHIBIT $\underline{\phantom{xx}10q\phantom{xx}}$

PAGE $\underline{\phantom{xx}1596\phantom{xx}}$

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4       Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz. In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11      The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits. In response, MGA asserted numerous

18  objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20      Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21  potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                              13

EXHIBIT 109

PAGE 1597

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3   boiler-plate objections.

4       Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7                   IV, CONCLUSION

8       For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10   identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11   for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12   motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13   provide responses to interrogatories consistent with this Order, and produce a privilege log in

14   compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15   sanctions is denied.

16       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17   Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21   Dated: May 15, 2007                                                                     

22                                             HON. EDWARD A. INFANTE (Ret.)

23                                             Discovery Master

24

25

26

27

28

EXHIBIT 109

PAGE 1598

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq, | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT ___109___

PAGE ___1599___

EXHIBIT 110

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 111

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 112

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 113

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 114

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 115

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 116

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 117

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 118

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 119

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 120

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 121

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 122

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 123

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 124

EXHIBIT 125

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 126

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 127

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 128

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13           Plaintiff,

14      v.                                 Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16           Defendant.                    ORDER DENYING MGA'S MOTION
                                           TO COMPEL DISCOVERY AS TO
17                                         ISSUES AS TO WHICH MATTEL HAS
                                           PURPORTEDLY WAIVED THE
18                                         ATTORNEY-CLIENT AND WORK
                                           PRODUCT PRIVILEGES BY CLAIM
19                                         ASSERTION

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23

24                         I. INTRODUCTION

25      On January 18, 2008, MGA Entertainment, Inc., ("MGA") submitted a "Motion to

26  Compel Discovery as to Issues as to Which Mattel has Waived the Attorney-Client and Work

27  Product Privileges by Claims Assertion." At issue is whether, under the standards set forth in

28
    Bryant v. Mattel, Inc.,                                                            1
    CV-04-09049 SGL (RNBx)        EXHIBIT ____ 128
                                  PAGE ____ 1694

1   Hearn v. Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), Mattel has impliedly waived the

2   attorney-client privilege and work product doctrine concerning what it knew or had reason to

3   suspect, prior to November 2003, regarding (a) Carter Bryant's involvement in Bratz, (b) his

4   alleged breach of contract, (c) his work for MGA, and/or (d) Mattel's alleged ownership of Bratz.

5   On January 31, 2008, Mattel, Inc. ("Mattel") submitted an opposition, and on February 5, 2008,

6   Mattel submitted a reply. On April 7, 2008, MGA submitted a twenty-one page supplemental

7   memorandum of points and authorities, the declaration of Lance Etcheverry and the second

8   supplemental declaration of Marcus Mumford. On April 11, 2008, Mattel submitted the

9   declaration of Dylan Proctor. The matter was heard on April 11, 2008.

## II. BACKGROUND

10      In July of 2007, Mattel filed counterclaims alleging, inter alia, that it was the "true owner

11   of Bratz" pursuant to agreements it had with Carter Bryant ("Bryant"), and that Bryant

12   "conceived, created or reduced to practice" Bratz designs and worked for MGA while employed

13   at Mattel. Mumford Decl., Ex. 1, Second Amended Counterclaim, ¶¶23-27, 29, 34. Mattel

14   alleged that "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel

15   to suspect or to know that it was the true owner of Bratz . . . . includ[ing] . . . the fact that Bryant

16   conceived, created, designed and developed Bratz while employed by Mattel, . . . the fact that

17   Bryant worked with and assisted MGA during the time Bryant was employed by Mattel, . . . [and]

18   concealing Bryant's role in Bratz." Id. at ¶35. Further, Mattel alleged that:

19        [b]ecause of Bryant's and MGA's acts of concealment. . . Mattel had no reason to
         suspect that Bryant had worked with MGA, or assisted MGA, while he [sic] still

20        employed by Mattel until approximately November 24, 2003, when Mattel
         received, through an unrelated legal action, a copy of Bryant's agreement with

21        MGA, which showed that the date of Bryant's agreement with MGA predated
         Bryant's departure from Mattel. It was then, as a result, that Mattel learned for the

22        first time that Bryant had secretly aided, assisted and worked for and with MGA .
         . . in violation of his Mattel Employment Agreement.

23

24   Id. at ¶¶35-36. Based on the above, Mattel asserted numerous claims against MGA and Bryant,

25   including, inter alia, copyright infringement, civil RICO violations, conspiracy to violate RICO,

26   breach of contract, intentional interference with contract, breach of fiduciary duty, aiding and

27   abetting breach of fiduciary duty, breach of duty of loyalty, aiding and abetting breach of duty of

28   loyalty, conversion, unfair competition, and declaratory relief.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 12B

PAGE _____ 1695

2

1    MGA and Bryant denied the allegations in Mattel's counterclaims and pleaded several

2    affirmative defenses, including statute of limitations and laches. MGA and Bryant sought and

3    received discovery relating to these two defenses. More specifically, MGA and Bryant obtained

4    interrogatory responses, documents, admissions, and deposition testimony directed to when, in

5    fact, Mattel first had reason to suspect Bryant's involvement in Bratz, his alleged breach of

6    contract, his work for MGA, and Mattel's alleged true ownership of Bratz.

7        In response to an interrogatory, Mattel provided the following information relating to

8    when and how Mattel first learned that Bryant performed work for MGA:

9        To Mattel's knowledge, Bryant was first confirmed as the Bratz designer in the
         July 18, 2003 *Wall Street Journal* article, in which Isaac Larian also indicated that
         Bryant had been involved in some manner with MGA in or about "late 1999."
10

11       Subsequently, in November 2003, Mattel obtained a copy of a contract between
         defendant Carter Bryant and defendant MGA . . . . Through this agreement,
12       Mattel concluded that Bryant . . . worked as a designer for a Mattel competitor,
         MGA.

13

14   Mumford Decl., Ex. 17. Mattel later supplemented its response to state: "[a]fter Bryant left

15   Mattel, but prior to the July 18, 2003 [*Wall Street Journal*] article, there was rumor and innuendo

16   that Bryant may be working with MGA on Bratz." Id., Ex. 3. Mattel's supplemental interrogatory

17   response also includes an assertion that Bryant used several Mattel employees to work on the

     Bratz dolls so that the Bratz dolls "had been designed and were far along in development during
18
     the time that Bryant was employed by Mattel." Id., Ex. 4.
19
         In the instant motion, MGA contends that Mattel has impliedly waived the attorney-client
20
     and work product privileges concerning what Mattel knew or had reason to suspect, prior to
21
     November 2003, regarding (a) Bryant's involvement in Bratz, (b) his alleged breach of contract,
22
     (c) his work for MGA, and/or (d) Mattel's alleged true ownership of Bratz. MGA reasons that in
23
     order to avoid the statute of limitations and laches doctrine, Mattel affirmatively injected into this
24
     litigation the issue of what it knew or had reason to suspect prior to November 2003 regarding
25
     these subjects, and that Mattel has denied MGA access to information vital to its defenses by
26
     asserting the attorney-client privilege and work product doctrine. MGA contends that fairness
27
     dictates that MGA be given access to all evidence that might show what Mattel knew or had
28

Bryant v. Mattel, Inc.,                                                                              3
CV-04-09049 SGL (RNBx)           EXHIBIT _____ 128

                                 PAGE _____ 1696

1  reason to suspect concerning these subjects, including attorney-client communications and work

2  product. MGA further contends that, based upon the discovery it has received to date, there is

3  good reason to believe that at least as early as the summer of 2001, when Bratz was first released,

4  Mattel suspected or had reason to suspect that Bryant was involved in Bratz and that he also

5  worked for MGA while a Mattel employee. See MGA's Motion at pp. 2-5. MGA seeks an order

6  (1) finding that Mattel has waived the attorney-client privilege and work product doctrine

7  concerning what Mattel knew or had reason to suspect prior to November 2003 regarding Bryant's

8  involvement in Bratz, his alleged breach of contract, his work for MGA, and/or Mattel's alleged

9  true ownership of Bratz, and (2) compelling Mattel to supplement its pertinent discovery

10  responses and document productions accordingly.

   Mattel contends that there is no basis for finding a waiver because Mattel has not

11  affirmatively placed its privileged communications at issue. Mattel draws a clear distinction

12  between pleading fraudulent concealment and relying on privileged information to support that

13  pleading. Mattel contends that under Ninth Circuit precedent, merely pleading fraudulent

14  concealment does not place privileged information at issue, and therefore cannot support a finding

15  of waiver. Mattel reasons that if this were the rule, the privilege would be waived any time a

16  party asserts fraudulent concealment simply because privileged information may be probative of

17  what a party knew.

18   In Mattel's view, the Ninth Circuit has only found that a party affirmatively put privileged

19  information at issue in two situations: (1) where a party relies on privileged information to

20  support a claim or defense, and (2) where the only evidence available to assess the truthfulness of

21  a party's claim or defense consists of privileged information. Mattel contends neither situation is

22  present here. Mattel contends that it has not relied upon any privileged information to support its

23  fraudulent concealment allegation, and that the evidence related to its fraudulent concealment

24  allegations is not solely privileged. Mattel also denies shielding any of the facts of when and how

25  it learned that Bryant allegedly worked for MGA while he was employed by Mattel.

26  Furthermore, Mattel contends that in view of the substantial non-privileged information that exists

27  and has been produced, MGA cannot show that Mattel's claims of privilege have denied MGA

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____ 20

PAGE _____ 1697

4

1   information critical to its defenses.

2                             III. DISCUSSION

3       In Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), the court established a three-part test

4   for determining whether a party has impliedly waived the attorney-client privilege and work

5   product privileges as to subject matter the party has placed at issue. The Hearn test for finding an

6   implied waiver requires that:

7         (1) assertion of the privilege was a result of some affirmative act, such as filing
        suit, by the asserting party; (2) through this affirmative act, the asserting party put

8         the protected information at issue by making it relevant to the case; and (3)
        application of the privilege would have denied the opposing party access to

9         information vital to his defense.

10   Hearn, 68 F.R.D. at 581, see also Home Indem. Co v. Lane Powell Moss and Miller, 43 F.3d

11   1322, 1326 (9th Cir. 1995) (adopting the Hearn test in the Ninth Circuit); United States v. Amlani,

12   169 F.3d 1189, 1195 (9th Cir. 1999). In the instant case, the second and third element of the

13   Hearn test are not satisfied, and therefore a finding of implied waiver is unwarranted.

14       Because the parties dispute the meaning of the second element of the Hearn test, the facts

15   in Hearn require careful scrutiny. In Hearn, an inmate brought a civil rights action against prison

16   officials complaining of his confinement at a state penitentiary and sought discovery of

17   information to negate the defense that the prison officials acted in good faith and were therefore

18   immune from suit for damages. The Hearn court found that defendants had impliedly waived the

19   attorney-client privilege. With respect to the second element, the court reasoned that defendants

20   had placed privileged information at issue, "for the legal advice they received is germane to the

21   qualified immunity defense they raised." Hearn, 68 F.R.D. at 851. Despite the court's use of the

22   term "germane," it is apparent later in the decision that the court's holding was based upon a

23   finding that the privileged information was more than merely "germane" to the defense raised.

24   The court stated that defendants' communications with their attorney were "inextricably merged

25   with the elements of plaintiff's case and defendants' affirmative defense." Id. at 582. The court

26   also emphasized that "[t]hese communications are not incidental to the case; they inhere in the

27   controversy itself, and to deny access to them would preclude the court from a fair and just

28   determination of the issues." Id.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___1㋐___

PAGE ___1098___

5

1    Other cases applying Hearn make clear that it is not enough that the privileged

2 information be merely germane or relevant to an issue asserted in the case in order to satisfy the

3 second element of the Hearn test. See U.S. v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999)

4 ("[p]rivileged communications do not become discoverable simply because they are related to

5 issues raised in the litigation"). Rather, courts have found that a party affirmatively puts at issue

6 privileged information when that party relies on privileged communications or work product in

7 support of its claims or defenses. See e.g. Chevron Corp. v. Pennzoil Co., 974 F.2d 1156 (9th Cir.

8 1992) (finding implied waiver where defendant asserted advice of counsel defense).

9 Alternatively, courts have found that a party affirmatively puts at issue privileged information

 when the only evidence available to assess a party's claim or defenses consists of privileged

10 information. See e.g. U.S. v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (finding implied

11 waiver where the only evidence of an essential element of plaintiff's attorney disparagement claim

12 was privileged communications); Holmgren v. Sate Farm Mutual Automobile Ins. Co., 976 F.2d

13 573, 577 (9th Cir. 1992) (in an action for bad faith claim settlement practices, finding implied

14 waiver of work product regarding insurer's counsel's handling of a claim).

15    Indeed, two of the cases cited by MGA in support of waiver were predicated upon a party

16 putting at issue privileged information by relying on such information to defeat a statute of

17 limitations defense. For example, in In re Imperial Corp. of Amer., 179 F.R.D. 286 (S.D. Cal.

18 1998), the court found implied waiver where the plaintiff contended that it learned it had a claim

19 for legal malpractice by means of counsel's investigation. The plaintiff in that case testified "that

20 he relied on his attorney's advice and investigation regarding overcoming [defendant's] statute of

21 limitations defense." Id. at 288. Similarly, in Titan Corp. v. M/A-Com, Inc., 1994 WL

22 16001739, at *1 (S.D. Cal. 1994), the plaintiff indicated in discovery and elsewhere that it had no

23 actual knowledge of any alleged fraud by defendant until an investigation was conducted by its

24 counsel. The Titan court held that the "plaintiff put the alleged protected information in issue by

25 relying on its counsel's investigation in order to overcome the statute of limitations bar." Id. at *2.

26    A third case relied upon by MGA, Aloe Vera of America, Inc. v. United States, No. CV

27 99-1794 PHX JAT, 2003 WL 22429082 (D. Ariz. 2003), did not involve direct reliance on

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx) EXHIBIT ____ 28

     PAGE 1099

                        6

1  privileged information. In <u>Aloe Vera</u>, the plaintiffs brought suit against the Internal Revenue
2  Service for an allegedly unauthorized disclosure of information to Japan's National Tax Authority
3  ("NTA"). Plaintiffs alleged that they first became aware of the basis of its claim when the
4  government provided information in response to its Freedom of Information Act ("FOIA")
5  complaint demanding release of documents. Plaintiffs attempted to avoid discovery of privileged
6  documents relating to the "date of discovery" issue by arguing that their Second Amended
7  Complaint made no affirmative reference to their attorneys' investigations as to the accrual of a
8  cause of action. The court rejected plaintiffs' argument because the evidence in the record
9  demonstrated, among other things, that plaintiffs' retained counsel filed the FOIA request,
10 received a partial response to their FOIA request, and wrote a letter to the IRS stating that IRS
11 conclusions were erroneous and that these conclusions were communicated to the NTA. The
12 court also noted that plaintiffs claimed in their Second Amended Complaint that several years
13 before suit was filed, their "representatives" (whom the court suspected were plaintiffs' attorneys)
14 were threatened by an NTA official with a press leak to coerce Plaintiffs into accepting their audit
15 proposal. Therefore, the court concluded that plaintiffs' attorneys' involvement in plaintiffs'
16 alleged date of discovery had been placed "at issue" in the case.[1]

17      In the instant case, Mattel has not affirmatively put at issue privileged information in
18 support of its claim or defense. Mattel's complaint does not refer directly or indirectly to any
19 attorney investigation or attorney involvement in Mattel's alleged discovery of the basis of its
20 claims. Nor has Mattel alleged that it learned the basis of its claims by means of privileged
21 attorney-client communications or work product. Mattel's discovery responses also make clear
22 that Mattel is not relying on any privileged information to support its allegations of fraudulent
23 concealment. Instead, Mattel has disclosed that it first learned of the basis of its claims when it
24 received a copy of Bryant's agreement with MGA in unrelated litigation. Therefore, the second
   element of the <u>Hearn</u> test has not been satisfied.

---

[1] This court declines to follow <u>Rambus Inc. v. Samsung Electronics Co., Ltd.</u>, 2007 WL 344376 (N.D. Cal. Nov. 3, 2007), as it appears to be inconsistent with the cases discussed immediately above.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____ 1 __

PAGE ____ 1700 ____

7

1        Furthermore, the third element of the Hearn test is clearly dispositive in this case because

2   MGA cannot show that application of the privilege would deny it access to information "vital" to

3   its defense. Courts applying Hearn in the Ninth Circuit and elsewhere have construed "vital" to

4   mean that the information sought is not available from other sources. See Amlani, 169 F.3d at

5   1195 ("When the sought-after evidence is "only 'one of several forms of indirect evidence' about

6   an issue," the privilege has not been waived.") (citing Hamilton v. Lumsden (In re Geothermal

7   Resources Int'l, Inc.), 93 F.3d 648, 653 (9th Cir. 1996); see also 1st Sec. Bank of Wash. v. Eriksen,

8   2007 WL 188881, at *3 (W.D. Wash 2007) ("[u]nder Hearn, the information sought must be

9   'vital' to defendants' case, meaning that the information is available from no other source").

10        In the instant case, there are many other means of proof available to MGA to support its

11   statute of limitations and laches defenses. Mattel has produced hundreds of pages of non-

12   privileged documents regarding its investigations relating to Bryant and/or MGA, including the

13   2002 investigations regarding the "anonymous letter" and potential copyright infringement of

14   Mattel's Toon Teens. In addition, MGA took the deposition of Richard De Anda, Mattel's head of

15   security, who testified regarding how and when Mattel first investigated Bryant and MGA. Mr.

16   De Anda confirmed that he had not even heard of MGA, Bryant or Bratz before March 2002.

17   Mattel has also provided interrogatory responses explaining its investigations of Bryant and

18   MGA, and how and when it first learned of Bryant's allegedly wrongful conduct that forms the

19   basis for Mattel's claims. Significantly, Mattel provided the following information:

> Mattel conducted an investigation in Spring 2002 based on allegations that
> Bryant may have plagiarized "Toon Teens" and created Bratz dolls for MGA, and
> later in August 2002 based on an anonymous letter sent to Mattel. The letter's
> author (whoever it was) offered no evidence for his or her allegations. The
> potential claims investigated in 2002 have not been asserted in this case. In
> March 2002, Mattel investigated allegations of possible copyright infringement of
> "Toon Teens" designs, not whether Mr. Bryant created Bratz or worked with
> MGA during his Mattel employment. The potential claims investigated in 2002
> did not give Mattel any knowledge, or even reason to believe, that Bryant worked
> for MGA and/or conceived of Bratz while a Mattel employee.
>
> Subsequently, on November 24, 2003, Mattel obtained a copy of a
> contract between defendant Carter Bryant and defendant MGA. That contract –
> which Bryant and MGA had entered into while Bryant was employed by Mattel –
> required Bryant to provide design services to MGA on a "top priority" basis, in
> conflict with his then-existing obligations to Mattel. It also purported to grant
> MGA ownership of works produced by Bryant both before and after the
> agreement's effective date, in further contravention of his obligations to Mattel.

1
2

> Through this agreement, Mattel first determined that it was likely that Bryant worked as a designer for a Mattel competitor, MGA, while being employed and paid by Mattel for his exclusive services as a designer.

3   Supp. Responses to MGA's First Set of Interrogatories at p. 13, attached as Ex. 3 to Mumford

4   Decl. MGA has also had the opportunity to question Mattel's in-house lawyer, Michael Moore,

5   during an evidentiary hearing conducted by the district court.

6          In addition, MGA recently took the deposition of Mattel's 30(b)(6) designee on several

7   topics relevant to MGA's defenses, including all acts, omissions, circumstances and/or evidence

8   showing, or tending to show (1) when Mattel first became aware of any alleged wrongful conduct

9   of Bryant, (2) the manner and mode by which Mattel first became aware of any alleged wrongful

10  conduct of Bryant, (3) when Mattel first became aware that Bryant was involved in the

11  conception, creation, design and/or reduction to practice of Bratz, (4) how Mattel first became

12  aware that Bryant was involved in the conception, creation, design and/or reduction to practice of

13  Bratz, and (5) all actions taken by Mattel, including but not limited to all circumstances

14  surrounding any investigations Mattel has undertaken, relating to Bratz after Mattel learned that

    Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

15         MGA contends, however, that Mattel "deliberately under-prepared the 30(b)(6) witness on

16  statute of limitations and laches topics so that she would testify that nothing Mattel's Legal

17  Department or Security Department investigated prior to November 2003 could possibly have put

18  the company on notice of the facts underlying its claims in this litigation." MGA's Supplemental

19  Submission at p.1. MGA contends further that "[b]ecause the witness was shielded during her

20  preparation from critical facts that might show otherwise, it was tantamount to Mattel making a

21  privilege assertion before-the-fact rather than at the deposition itself." Id. at pp. 1-2. In

22  particular, MGA contends that the witness was not given access to Mattel's Legal Department's

23  file or redacted portions of Mattel's Security Department's files, or spoke to anyone about those

24  files, to ascertain what underlying facts had been disclosed or uncovered by Mattel in any of its

25  pre-November 2003 investigations. Id. at p.2.

26         A review of the deposition transcript, however, reveals that Mattel's 30(b)(6) witness

27  provided substantial testimony relevant to MGA's defense. Over the course of a ten hour day,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 28

PAGE _____ 1702

9

1    Mattel's corporate designee gave over three hundred pages of testimony and freely answered all

2    but a handful of questions posed to her on this subject. The transcript shows that the witness fully

3    cooperated and gave responses to the best of her ability. Mattel's counsel did not obstruct MGA's

4    questioning of the witness. Nor did Mattel's counsel object to any questions based upon the

5    attorney-client privilege. The witness provided significant factual evidence related to how and

6    when Mattel first learned that Bryant was working for MGA while he was employed by Mattel.

7    Indeed, MGA has not pointed to any significant deficiencies in the witness' preparedness, other

8    than the witness' lack of knowledge concerning the contents of Mattel's Legal Department files

9    and Security Department investigation files. It is unclear, however, whether the witness' failure to

10   review the contents of Mattel's Legal Department and Security Department files materially

11   affected MGA's ability to obtain full and complete testimony because the witness was

12   knowledgeable about the scope of investigations conducted by both departments. In any event,

13   MGA's remedy lies in resumption of the deposition, and not the expansive subject matter waiver

     of privileged information MGA now seeks.

14        MGA next contends that the privileged information it seeks is vital because Mattel, in an

15   effort to defeat MGA's summary judgment motion, submitted the declaration of its in-house

16   counsel, Michael Moore, attesting that "Mattel knew nothing that could remotely put it on notice

17   of the facts underlying this lawsuit until November 24, 2003." MGA's Supp. Submission at p.2,

18   Second Supp. Mumford Decl., Ex. 2. Although Mattel's recent submission might arguably affect

19   the analysis under the second element of the Hearn test, it does not change the analysis under the

20   third prong. As previously discussed, Mattel has already produced substantial evidence related to

21   MGA's statute of limitations and laches defenses. MGA has not been denied factual evidence

22   related to how and when Mattel first learned that Bryant was working for MGA while he was

23   employed by Mattel. Therefore, the confidential information MGA now seeks is not "vital" to its

24   defense.

25                              IV. CONCLUSION

26        For the reasons set forth above, MGA's motion to compel discovery of information

27   protected by the attorney-client privilege and work product immunity based on waiver by claim

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

     EXHIBIT _____ 120

     PAGE _____ 703

     10

1   assertion is DENIED.

2        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3   Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5   Dated: April 25, 2008                           / s /

                                                      HON. EDWARD A. INFANTE (Ret.)

6                                                           Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 128

PAGE _____ 1704

11

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 25, 2008, I served the
attached ORDER DENYING MGA'S MOTION TO COMPEL DISCOVERY AS TO ISSUES AS TO WHICH
MATTEL HAS PURPORTEDLY WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT
PRIVILEGES BY CLAIM ASSERTION in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true
and correct.

Executed on April 25, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT _____128.____

PAGE _____1705____

EXHIBIT 129

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 130

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 131

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 132

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 133

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 134

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 135

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 136

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 137

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 138

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 139

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 140

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 141

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 142

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:   (213) 443-3100

8   Attorneys for Mattel, Inc.

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

              Plaintiff,                 Consolidated with
13                                       Case No. CV 04-09059
                                         Case No. CV 05-02727
14      vs.

15                                       **DISCOVERY MATTER**

16  MATTEL, INC., a Delaware             **[To Be Heard By Discovery Master**
    corporation,                         **Hon. Edward Infante (Ret.) Pursuant**
                                         **to Court's Order of December 6,**
17            Defendant.                 **2006]**

18  ──────────────────────────           [PUBLIC REDACTED]
    AND CONSOLIDATED ACTIONS             DECLARATION OF MICHAEL T.
19                                       ZELLER IN SUPPORT OF MATTEL,
                                         INC.'S MOTION TO COMPEL
20                                       DEPOSITION OF LITTLER
                                         MENDELSON, P.C. PURSUANT TO
21                                       SUBPOENA

22                                       Hearing Date:  January 4, 2008
                                         Time:  TBA
23                                       Place:  Telephonic

24                                       **Phase 1**
                                         Discovery Cut-off:       January 28, 2008
25                                       Pre-trial Conference:   April 21, 2008
                                         Trial Date:                 May 27, 2008
26
        EXHIBIT ____142____
27
        PAGE ____1840____
28
                                    12-13
                                    -1-

07209/2317254.1
              ZELLER DEC. IN SUPPORT OF MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER

1     <u>DECLARATION OF MICHAEL T. ZELLER</u>

2        I, Michael T. Zeller, declare as follows:

3       1.     I am a member of the bars of the States of California, New York

4 and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP,

5 attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this

6 declaration of personal, firsthand knowledge and, if called and sworn as a witness, I

7 could and would testify competently thereto.

8       2.     Attached as Exhibit 1 is a true and correct copy of a letter dated

9 November 17, 2004 from Kirk Garey, counsel for Mattel, to Keith A. Jacoby.

10       3.     Attached as Exhibit 2 is a true and correct copy of the Circuit

11 City receipt dated October 21, 2000, and produced in this case by Bryant.

12       4.     Attached hereto as Exhibit 3 is a true and correct copy of

13 excerpts of the deposition of Carter Bryant, taken on November 4 and 5, 2004.

14       5.     Attached as Exhibit 4 is a true and correct copy of the letter from

15 Keith Jacoby, counsel for Bryant, dated November 1, 2004 to John Quinn.

16       6.     Attached as Exhibit 5 is a true and correct copy of excerpts of the

17 Un-redacted Joint Stipulation Re: Mattel's Motion to Compel Production of

18 Documents, filed on January 6, 2005.

19       7.     Attached as Exhibit 6 is a true and correct copy of excerpts of the

20 [Redacted] Declaration of Keith A. Jacoby in Support of Defendant and Cross-

21 Claimant Carter Bryant's Portion of Joint Stipulation (without exhibits).

22       8.     Mattel's original motion to compel the Desktop filed in January

23 2005 was not ruled upon because discovery was stayed before it was resolved.

24 After the stay was lifted and the Discovery Master was appointed, Mattel renewed

25 its motion to compel Bryant's computer hard drives in early January 2007 and again

26 specifically sought production of the Desktop hard drive.

27 EXHIBIT ___ 142

28 PAGE ___ 1841

-2-

ZELLER DEC. IN SUPPORT OF MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER

1    9.    Attached as Exhibit 7 is a true and correct copy of excerpts of the
2 Separate Statement of Mattel, Inc. in Support of Motion to Compel Production of
3 Documents by Carter Bryant, filed on January 4, 2007.

4    10.    Attached as Exhibit 8 is a true and correct copy of the
5 Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion to Compel
6 Production of Documents by Carter Bryant filed January 4, 2007 (without exhibits).

7    11.    Attached as Exhibit 9 is a true and correct copy of excerpts of the
8 Separate Statement of Defendant Carter Bryant in Opposition to Mattel's Motion to
9 Compel, filed on January 11, 2007.

10    12.    Attached as Exhibit 10 is a true and correct copy of excerpts of
11 the Declaration of Keith A. Jacoby in Support of Carter Bryant's Opposition to
12 Mattel, Inc.'s Motion to Compel Production of Documents (without exhibits).

13    13.    Attached as Exhibit 11 is a true and correct copy of the Order of
14 the Discovery Master Hon. Edward Infante (Ret.) dated January 25, 2007.

15    14.    Attached as Exhibit 12 is a true and correct copy of the
16 Stipulation and Order re: Request to Extend Deadline Within Which Carter Bryant
17 Must Comply with the Discovery Master's January 25, 2007 Order Granting Mattel's
18 Motion to Compel Production of Documents dated February 23, 2007.

19    15.    Attached as Exhibit 13 is a true and correct copy of an e-mail
20 dated February 27, 2007, from Douglas Wickham, counsel for Bryant, to me and my
21 colleague John Quinn.

22    16.    Attached as Exhibit 14 is a true and correct copy of a letter dated
23 March 2, 2007 from Douglas Wickham to me.

24    17.    Attached as Exhibit 15 is a true and correct copy of a letter dated
25 March 16, 2007 from Douglas Wickham to me.

26    18.    Attached as Exhibit 16 is a true and correct copy of a letter dated
27 March 26, 2007 that I sent to Douglas Wickham.

28

07209/2317254.1

-3-

ZELLER DEC. IN SUPPORT OF MATTEL'S MOTION TO COMPEL DEPOSITION OF LITTLER

142

1        19.    Attached as Exhibit 17 is a true and correct copy of a letter dated

2 March 26, 2007 from Douglas Wickham to me.

3        20.    Attached as Exhibit 18 is a true and correct copy of a letter dated

4 March 27, 2007 that I sent to Douglas Wickham.

5        21.    Attached as Exhibit 19 is a true and correct copy of a letter dated

6 March 27, 2007 from Douglas Wickham to me.

7        22.    Attached as Exhibit 20 is a true and correct copy of a letter dated

8 March 29, 2007 that I sent to Douglas Wickham.

9        23.    Attached as Exhibit 21 is a true and correct copy of a letter dated

10 April 6, 2007 that I sent to Douglas Wickham.

11        24.    Attached as Exhibit 22 is a true and correct copy of an e-mail

12 exchange between me, Keith A. Jacoby, and Douglas Wickham on April 9, 2007.

13        25.    During the meet and confer process leading up to Mattel's

14 Motion for an Order to Enforce Court's January 25, 2007 Order Compelling Bryant

15 to Produce Desktop Computer Hard Drive, I asked, both orally and in writing, for

16 further clarification about the status of the Desktop hard drive and requested that

17 Bryant provide the factual particulars regarding its non-production. Neither

18 Douglas Wickham nor Keith A. Jacoby had definitively told me whether Bryant or

19 his counsel had the Desktop, or, if they did not have it, the facts and circumstances

20 surrounding its non-production.

21        26.    Attached as Exhibit 23 is a true and correct copy of a Notice of

22 Motion and Motion of Mattel, Inc. for an Order to Enforce Court's January 25, 2007

23 Order Compelling Bryant to Produce Desktop Computer Hard Drive.

24        27.    Attached as Exhibit 24 is a true and correct copy of a letter dated

25 April 23, 2007, from Keith A. Jacoby to me.

26        28.    Attached as Exhibit 25 is a true and correct copy of Mattel, Inc.'s

27 Notice of Withdrawal Without Prejudice of Motion for an Order to Enforce Court's

28

142

EXHIBIT

PAGE 1843

1 | January 25, 2007 Order Compelling Bryant to Produce Desk Top Computer Hard
2 | Drive, dated May 2, 2007.

3 |      29.    Attached as Exhibit 26 is a true and correct copy of a Request for
4 | Approval of Substitution of Attorney, dated May 18, 2007.

5 |      30.    Examination of the images of Bryant's desktop and laptop hard
6 | drives has revealed that it had a software program titled "Evidence Eliminator" had
7 | been installed and run in 2002. Attached as Exhibit 27 is a true and correct copy of
8 | the Evidence Eliminator website homepage, available at http://www.evidence-
9 | eliminator.com/product.d2w, reflecting that the creators of the program have stated
10 | that its purpose is to permanently destroy data and render it unrecoverable.

11 |      31.    Attached as Exhibit 28 is a true and correct copy of a subpoena
12 | for production of documents served on Littler Mendelson, P.C., on August 3, 2007.

13 |      32.    Attached as Exhibit 29 is a true and correct copy of a subpoena
14 | for deposition testimony served on Littler Mendelson, P.C., on September 5, 2007.

15 |      33.    Attached as Exhibit 30 is a true and correct copy of a letter from
16 | Christa M. Anderson sent to my colleague, James J. Webster, on December 3, 2007.

17 |      34.    Attached as Exhibit 31 is a true and correct copy of the Court's
18 | Order Denying Appointment of Expert Witnesses, dated August 11, 2006.

19 |      35.    Attached as Exhibit 32 is a true and correct copy of my colleague
20 | Jon Corey's letter to Keith Jacoby, dated November 1, 2004 and faxed on
21 | November 2, 2004, requesting that Mr. Bryant have his originals available at his
22 | deposition in Missouri.

23 |      36.    Attached as Exhibit 33 is a true and correct copy of an e-mail
24 | message from Keith Jacoby dated November 3, 2004 in which he stated that "we
25 | will have the originals sent to Missouri."

26 |      37.    Despite the promises made by Bryant's counsel, Bryant brought
27 | only the originals of documents bearing the Bates numbers BRYANT 00001-12,
28 | 00175-182, 184-192, 194-199, 201-213, 215-218, 220, 222-224, 226-227, 229-230,

-5-

EXHIBIT _____142____

PAGE _____1844____

1 │ 232-246, 273-275, 1116-18, 1243, 1246-1247. These originals are but a small
2 │ fraction of the documents produced by Bryant in his initial production.

3 │        38.    Some of the original drawings that Bryant brought with him to
4 │ his deposition, including documents bearing the Bates numbers BRYANT 192 and
5 │ BRYANT 210, had holes in them, indicating that samples had been extracted for ink
6 │ and/or paper chemical dating analysis. This is reflected in Carter Bryant's
7 │ deposition testimony as well. See Exhibit 3 (Transcript of Deposition of Carter
8 │ Bryant, 459:13-460:16).

9 │        39.    Attached as Exhibit 34 is a true and correct copy of the
10 │ Declaration of Keith Jacoby, without exhibits, that was filed in support of Bryant's
11 │ portion of a Joint Stipulation Re: Mattel, Inc's Motion to Compel Inspection of
12 │ Original Documents and Tangible Things, filed with the Court on February 18,
13 │ 2005.

14 │        40.    Attached as Exhibit 35 is a true and correct copy of the
15 │ Declaration of Erich J. Speckin, dated July 21, 2006.

16 │        41.    Attached as Exhibit 36 is a true and correct copy of Mattel, Inc.'s
17 │ Second Amended Answer In Case No. 05-2727, dated July 12, 2007, with exhibits
18 │ omitted.

19 │        42.    Attached as Exhibit 37 is a true and correct copy of the Order
20 │ Denying Motion For Terminating Sanctions; Order Denying Request For
21 │ Interlocutory Appeal; Order Requiring Filing Of Affidavits Re Evidence
22 │ Preservation, dated August 29, 2007.

23 │        I declare under penalty of perjury under the laws of the United States of
24 │ America that the foregoing is true and correct.

25 │        Executed this 13th day of December, 2007, at Los Angeles, California.

26 │

27 │                                 _Michael T. Zeller_
                                  Michael T. Zeller
28 │

EXHIBIT _____142_____

PAGE _____1845_____

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On April 28, 2008, I served true copies of the following document(s) described as **DECLARATION OF STEPHEN HAUSS IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTIONS IN LIMINE NOS. 1-14 (with exhibits)** on the parties in this action as follows:

Thomas J. Nolan
**Skadden, Arps, Slate, Meageher & Flom LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071

Mark E. Overland
David C. Scheper
Alexander H. Cote
**Overland Borenstein Scheper & Kim LLP**
601 West Fifth Street, 12th Floor
Los Angeles, CA 90017

On April 28, 2008, I served true copies of the following document(s) described as **DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTIONS IN LIMINE NOS. 1-14 (without exhibits)** on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 28, 2008, at Los Angeles, California.

Dave Quintana
NOW LEGAL -- Dave Quintana

07209/2485896.1

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
3  Street, 10th Floor, Los Angeles, California 90017-2543.

4      On April 28, 2008, I served true copies of the following document(s) described as
**DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S**
5  **OPPOSITION TO THE MGA PARTIES' MOTIONS IN LIMINE NOS. 1-14 (with exhibits)**
on the parties in this action as follows:

6

John W. Keker, Esq.
7  Michael H. Page, Esq.
Christina M. Anderson, Esq.
8  **Keker & Van Nest, LLP**
710 Sansome Street
9  San Francisco, CA 94111

10 **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
11 postage thereon fully prepaid.

12      I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.

13

Executed on April 28, 2008, at Los Angeles, California.

14

15

16                                    Andrea Hoeven

17

18

19

20

21

22

23

24

25

26

27

28

07209/2485896.1                          -2-

EXHIBIT 143

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 144

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 145

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 146

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,

13                                        SECOND NOTICE OF DEPOSITION
                                          OF MGA ENTERTAINMENT, INC.
14      vs.                               PURSUANT TO FEDERAL RULE OF
                                          CIVIL PROCEDURE 30(B)(6)
15
   MATTEL, INC., a Delaware
16 corporation,                           Discovery Cut-off: None Set
            Defendant.                    Pre-trial Conference: None Set
17                                        Trial Date: None Set

18 ─────────────────────────────
   AND CONSOLIDATED ACTIONS
19

20

21

22

23

24

25

26                                        EXHIBIT ___146___

27                                        PAGE ___1876___

28                                                ___2-1___

07209/2048031.1
─────────────────────────────────────────────────────────
                           NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on February 15, 2007 beginning on 9:30

3   a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4   MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5   LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R.

6   Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7   directors, managing agents or other persons who consent to testify on its behalf

8   concerning each of the topics set forth in Exhibit A hereto.

9       PLEASE TAKE FURTHER NOTICE that the deposition will take place

10  before a duly authorized notary public or other officer authorized to administer oaths at

11  depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12  excepted, until completed.

13      PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14  P. 30(b)(2), the deposition will be videotaped.

15

16  DATED:  February 1, 2007      QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP

17

18                              By  _Michael T. Zeller_
                                    Michael T. Zeller
19                                  Attorneys for Mattel, Inc.

20

21

22

23

24

25

26                              EXHIBIT __146__

27                              PAGE __1877__

28

07209/2048031.

-1-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT _____ 146

PAGE _____ 1878

**Exhibit A**

1

2

## EXHIBIT A

3

4     1.     "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any

of its current or former employees, officers, directors, agents, representatives, attorneys,

5     parents, subsidiaries, divisions, affiliates, predecessors-in-interest and

6     successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

7     authority or subject to its control.

8     2.     "BRYANT" means Carter Bryant, any of his current or former

9     agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-

10    interest and successors-in-interest, and any other PERSON acting on his behalf,

11    pursuant to his authority or subject to his control.

12    3.     "BRATZ" means any project ever known by that name (whether in

13    whole or in part and regardless of what such project is or has been also, previously or

14    subsequently called) and any product or doll or any portion thereof that is now or has

15    ever been known as, or sold or marketed under, the name or term "Bratz" (whether in

16    whole or in part and regardless of what such product or doll or portion thereof is or has

17    been also, previously or subsequently called) or that is now or has ever been sold or

18    marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any

19    portion thereof.  As used herein, "product or doll or any portion thereof" also includes

20    without limitation any names, fashions, accessories, artwork, packaging or any other

21    works, materials, matters or items included or associated therewith.

22    4.     "DESIGN" or "DESIGNS" means any and all works, designs,

23    artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

24    schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions

25    to practice, developments, know-how, ideas, concepts, inventions and/or

26    improvements, as well as all other items, things and DOCUMENTS in which any of the

27

EXHIBIT _____ 146

28

PAGE _____ 1879

07209/2048031.

-2-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

1  foregoing are or have been expressed, embodied, contained, fixed or reflected in any
2  manner, whether in whole or in part.

3      5.      "EMBODIMENT" means any representation, whether two-
4  dimensional or three-dimensional, and whether in tangible, digital, electronic or other
5  form, including but not limited to all works, designs, artwork, sketches, drawings,
6  illustrations, representations, depictions, blueprints, schematics, diagrams, images,
7  sculptures, prototypes, models, samples, reductions to practice, developments,
8  inventions and/or improvements, as well as all other items, things and DOCUMENTS
9  in which any of the foregoing are or have been expressed, embodied, contained, fixed
10  or reflected in any manner, whether in whole or in part.

11      6.      The DRAWINGS means those documents produced as Bates Nos.
12  MGA000053-57,     MGA000392-395,     MGA000435-439,     MGA000455-481
13  MGA004606,   MGA004608,   MGA004640,   MGA005065,   MGA006423-6426,
14  MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

15      7.      "BASED ON" means copied or reproduced from, substantially
16  similar to, based on or derived from in any manner, whether in whole or in part.

17      8.      "CREATED" means produced, prepared, created, authored,
18  conceived of or reduced to practice, whether in whole or in part and whether alone or
19  jointly with others.

20      9.      "IDENTIFY" or "IDENTITY" means the following:

21          (a)      With reference to an individual, means such individual's
22  name, current or last known business title, current or last known business affiliation,
23  current or last known relationship to YOU, current or last known residential and
24  business address, and current or last known telephone number.

25          (b)      With reference to an entity or governmental organization,
26  means such entity's or organization's name, present or last-known address, and present
27

28

EXHIBIT _____ 146

-3-      PAGE _____ 1880

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.

1  or last-known telephone number and the IDENTITY of each individual who has served

2  or participated as a contact for or on behalf of such entity or organization.

3  (c)  With reference to an EMBODIMENT, means the IDENTITY

4  of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other

5  individual who contributed in any manner to the EMBODIMENT; the form, material

6  and medium of the EMBODIMENT (e.g., preliminary three-dimensional resin

7  sculpture, final three-dimensional wax sculpture, digitized file of final three-

8  dimensional wax sculpture, two-dimensional design drawing on paper); each title or

9  name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's

10  creation or preparation; and the current location of the EMBODIMENT.

11  10.  "COMMUNICATION" or "COMMUNICATIONS" means and

12  includes any disclosure, transfer or exchange of information between two or more

13  PERSONS, whether orally or in writing, including, without limitation, any conversation

14  or discussion by means of meeting, letter, telephone, note, memorandum, telegraph,

15  telex, telecopier, electronic mail, or any other electronic or other medium, including

16  without limitation in written, audio or video form.

17  11.  "ACTION" shall mean this action now consolidated under Case

18  No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first

19  filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA*

20  *Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses

21  therein.

22  12.  "DIGITAL INFORMATION" shall mean any information created

23  or stored digitally, including but not limited to electronically, magnetically or optically.

24  13.  "SYSTEM" or "SYSTEMS" shall mean any computer or network

25  of computers or other network devices that allow a two or more computers to share

26  information and equipment, including but not limited to local area networks, wide area

27  networks, storage area networks, client-server networks or peer-to-peer networks. The

28

EXHIBIT _____

PAGE _____ 1881

07209/2048031.

-4-

1  use of the term "SYSTEM" or "SYSTEMS" shall also include the brand, model

2  number, technical specifications, and capacities of the computers who are part of each

3  such SYSTEM.

4       14.  "REFER OR RELATE TO" means constituting, embodying,

5  containing, referring to, commenting on, evidencing, regarding, discussing, describing,

6  mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting,

7  negating, revoking or otherwise relating to in any manner.

8       15.  "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as

9  those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and

10  Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings

11  and records of every type and description including, but not limited to, contracts,

12  agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),

13  records of telephone conversations, handwritten and typewritten notes of any kind,

14  statements, reports, minutes, recordings, transcripts and summaries of meetings, voice

15  recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and

16  records of all types, studies, instruction manuals, policy manuals and statements, books,

17  pamphlets, invoices, canceled checks and every other device or medium by which or

18  through which information of any type is transmitted, recorded or preserved. Without

19  any limitation on the foregoing, the term "DOCUMENT" shall include all copies that

20  differ in any respect from the original or other versions of the DOCUMENT, including,

21  but not limited to, all drafts and all copies of such drafts or originals containing initials,

22  comments, notations, insertions, corrections, marginal notes, amendments or any other

23  variation of any kind.

24       16.  "PERSON" or "PERSONS" means all natural persons, partnerships,

25  corporations, joint ventures and any kind of business, legal or public entity or

26  organization, as well as its, his or her agents, representatives, employees, officers and

27

28       EXHIBIT _____ 146

07209/2048031.

     PAGE _____ 1882

-5-

1  directors and any one else acting on its, his or her behalf, pursuant to its, his or her

2  authority or subject to its, his or her control.

3      17.    The singular form of a noun or pronoun includes within its meaning

4  the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine

5  form of a pronoun also includes within its meaning the feminine form of the pronoun so

6  used, and *vice versa*; the use of any tense of any verb includes also within its meaning

7  all other tenses of the verb so used, whenever such construction results in a broader

8  request for information; and "and" includes "or" and *vice versa*, whenever such

9  construction results in a broader disclosure of documents or information.

10                        **Topics of Examination**

11     1.    The origin, conception, creation, design, sculpting, development,

12  engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS

13  CREATED prior to June 30, 2001 (regardless of when or whether such was released in

14  any form to the public), including without limitation the timing thereof, the IDENTITY

15  of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved

16  therein, and the nature, extent and time period(s) of each such PERSON's involvement.

17     2.    The circumstances under which BRATZ or any BRATZ DESIGN

18  first came to YOUR attention, including without limitation the timing, method and

19  manner thereof and the IDENTITY of each PERSON with knowledge thereof.

20     3.    The identity of each doll, product, work or item produced,

21  developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR

22  behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

23     4.    To the extent not covered by Topic 3, each EMBODIMENT of any

24  doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

25     5.    The work, activities and/or services that BRYANT performed for or

26  with YOU or on YOUR behalf prior to June 30, 2001.

27

28

EXHIBIT _____ *140*

PAGE _____ *1883*

-6-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

1   6.   The origin, conception and creation of DESIGNS that BRYANT

2   CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever

3   claimed to have, any right, title or interest (whether in whole or in part).

4   7.   The identity of, and the design, development, sculpting,

5   development, engineering, rotocasting, modeling, prototyping and first sale of, any doll,

6   product, work or item that has been produced, developed, manufactured, licensed, sold

7   or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN

8   referenced in Topic 6.

9   8.   Each EMBODIMENT of BRATZ that was CREATED prior to June

10   30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was

11   CREATED prior to June 30, 2001.

12   9.   The DRAWINGS, including without limitation the authorship,

13   creation, dissemination and use thereof and the source, meaning, authenticity and

14   timing of any dates thereon.

15   10.   The IDENTITY of each vendor or third party who performed or

16   contributed, or who was considered, solicited, requested, proposed or contemplated by

17   YOU or BRYANT to perform or contribute, any activities, work or services in

18   connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR

19   COMMUNICATIONS therewith, and the nature, extent and timing of such activities,

20   work or services.

21   11.   The exhibition, or proposed, offered, contemplated or requested

22   exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30,

23   2001, including without limitation each instance in which BRATZ or any BRATZ

24   DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise

25   discussed with or communicated to, any retailer, wholesaler or distributor and the

26   DOCUMENTS that REFER OR RELATE thereto.

27   12.   The actual, proposed, requested or contemplated manufacture,

28   fabrication or tooling (including the production of molds) of BRATZ, including without

07209/2048031.

-7-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

146

EXHIBIT

PAGE _____ 1884

1 limitation the timing thereof and the IDENTITY of each manufacturer and potential
2 manufacturer used, proposed or considered.

3      13.   COMMUNICATIONS prior to June 30, 2001 between YOU and
4 any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or
5 potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE
6 TO BRATZ or any BRATZ DESIGN.

7      14.   When and where BRATZ was first manufactured, shipped,
8 distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9      15.   The licensing, including without limitation the proposed or
10 requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,
11 including without limitation the timing thereof, the IDENTITY of each such licensee or
12 proposed or requested licensee and the product(s) or proposed product(s) involved.

13      16.   COMMUNICATIONS between YOU and BRYANT prior to
14 January 1, 2001, including without limitation the content, means and timing of such
15 COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and
16 the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17      17.   COMMUNICATIONS that BRYANT made for YOU or on YOUR
18 behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior
19 to June 30, 2001.

20      18.   YOUR agreements and contracts with BRYANT, including without
21 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
22 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23      19.   Each agreement or contract between YOU and any PERSON other
24 than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that
25 REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of
26 when such agreement or contract was negotiated or executed), including without
27 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
28 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

07209/2048031.

-8-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

*146*

EXHIBIT

PAGE _____ *1885*

1      20.    YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts

2 and agreements with, and his obligations to, MATTEL.

3      21.    YOUR knowledge of, and access to, non-public MATTEL DIVA

4 STARZ project information and DESIGNS prior to June 30, 2001.

5      22.    The payment of money or anything of value by or for YOU or on

6 YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work,

7 services or activities performed by BRYANT prior to January 1, 2001 (regardless of

8 when such payment was actually made), (b) for DESIGNS CREATED by BRYANT

9 prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in

10 connection with BRATZ or any BRATZ DESIGN at any time, including without

11 limitation the timing, manner and amount(s) thereof and the reasons therefor.

12      23.    The payment of royalties to, for or on behalf of BRYANT made by

13 or for YOU or on YOUR behalf, including the timing, manner and amounts of such

14 payments and the reasons therefor.

15      24.    Any indemnification and fee arrangement that YOU and/or

16 BRYANT has sought, proposed, requested or obtained in connection with this

17 ACTION.

18      25.    YOUR revenues and profits from BRATZ, including without

19 limitation YOUR gross and net profits, and YOUR costs associated therewith.

20      26.    YOUR net worth.

21      27.    The payment of money or anything of value that YOU have made or

22 offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought

23 or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s)

24 and reasons therefor.

25      28.    COMMUNICATIONS between YOU and Elise Cloonan that

26 REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including

27 the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

28

EXHIBIT ___146___

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.
PAGE ___1886___

1        29.    COMMUNICATIONS made by, for or on behalf of YOU, whether

2  directly or indirectly, with Anna Rhee, including without limitation since February

3  2005 (but not including any such COMMUNICATIONS with her legal counsel).

4        30.    COMMUNICATIONS between YOU and Veronica Marlow,

5  Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah

6  Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO

7  BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all

8  DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

9        31.    The IDENTITY of each PERSON who, at any time since January 1,

10  1998, has performed any work or services for, by or on behalf of YOU while such

11  PERSON was employed by MATTEL, the nature and timing of each such PERSON's

12  work or services and the amount(s) paid by YOU to each such PERSON.

13        32.    COMMUNICATIONS between YOU and BRYANT that REFER

14  OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was

15  prepared, authored or created by MATTEL that BRYANT has ever provided to, shown,

16  described to, communicated to or disclosed in any manner to YOU.

17        33.    The applications for registration and the registrations for copyright,

18  patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ

19  DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT,

20  including without limitation COMMUNICATIONS pertaining thereto.

21        34.    Other than those previously filed and served in this ACTION or in

22  which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,

23  transcripts, declarations, affidavits and other sworn written statements of any other type

24  by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ

25  THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of

26  when such testimony or sworn statement was taken, given, signed, made or filed).

27        35.    COMMUNICATIONS between YOU and Universal Commerce

28  Corp., Ltd. prior to June 30, 2001.

EXHIBIT _____ 146

1887

-10-

PAGE _____

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

1        36.    The source, meaning and authenticity of SL00013-14, including

2 without limitation the timing of its creation and the handwriting thereon.

3        37.    YOUR corporate structure since January 1, 1999, including without

4 limitation the relationship between MGA Entertainment, Inc. and any of its

5 predecessors, affiliates and subsidiaries.

6        38.    The retention or destruction policies, procedures and practices for

7 YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO

8 BRATZ since January 1, 1999, including without limitation the retention or destruction

9 of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,

10 modified or upgraded and (b) when PERSONS leave YOUR employ.

11        39.    The preservation, collection, destruction, removal, transfer, loss or

12 impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection

13 with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

14        40.    The preservation, collection, destruction, removal, transfer, loss or

15 impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,

16 1999 that REFER OR RELATE TO MATTEL (including without limitation to any

17 MATTEL product, plan or information) that YOU received in any manner from any

18 PERSON who was at the time an employee of MATTEL or who had previously been

19 an employee of MATTEL.

20        41.    The testing of or sampling from DOCUMENTS that REFER OR

21 RELATE TO BRATZ or BRYANT, including without limitation such testing or

22 sampling in connection with any ink, paper or chemical analysis performed or

23 attempted to be performed to date, any DOCUMENTS that REFER OR RELATE

24 thereto and all results and reports relating thereto.

25        42.    YOUR DIGITAL INFORMATION data backup policies, practices

26 and procedures from January 1, 1999 to the present, including without limitation the

27 location and specifications of any media used to preserve YOUR DIGITAL

28

EXHIBIT _____ 146

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.

1  INFORMATION and the software, if any, used to preserve YOUR DIGITAL
2  INFORMATION.

3      43.    The DIGITAL INFORMATION SYSTEMS and the application
4  software that YOU have used since January 1, 1999 that REFER OR RELATE TO
5  design, development, planning, inventory, manufacturing, sales, shipping and
6  accounting, including without limitation the common or shared storage for such
7  DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
8  INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
9  DIGITAL INFORMATION SYSTEMS or application software.

10     44.    The IDENTITY of PERSONS, including without limitation
11  vendors, who since January 1, 1999 have been responsible for or supported YOUR
12  DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
13  such PERSON who serviced or provided hardware for YOUR DIGITAL
14  INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL
15  INFORMATION, including but not limited to internet service providers, and provided
16  analytical, training or implementation services with respect to YOUR DIGITAL
17  INFORMATION SYSTEMS.

18     45.    The electronic messaging SYSTEMS used by YOUR employees
19  within the scope of their employment between January 1, 1999 and the present,
20  including but not limited to electronic mail, instant messenger, telephone or voice-mail,
21  and the routing of such electronic messages to, from or within MGA.

22     46.    YOUR policies, practices and procedures regarding the use of
23  transportable media that contain or are capable of containing DIGITAL
24  INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB
25  drives, portable hard drives, digital cameras and personal digital assistants.

26
27
28

EXHIBIT ____ /46____

PAGE ____ /889____

07209/2048031.

-12-

1        **PROOF OF SERVICE**

2            I am employed in the County of Los Angeles, State of California. I am over the age of
   eighteen years and not a party to the within action; my business address is 865 South Figueroa
3    Street, 10th Floor, Los Angeles, California 90017-2543.

4            On February 1, 2007, I served true copies of the following document(s) described as
   **SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT**
5    **TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as
   follows:

6
   **BY MAIL TO:**
7
   Keith A. Jacoby, Esq.
8    Littler Mendelson
   2049 Century Park East, 5th Floor
9    Los Angeles, CA 90067-3107
   Telephone: (310) 553-0308
10   Facsimile: (310) 553-5583

11   I enclosed the foregoing as well as a **COURTESY COPY** into sealed envelope(s) addressed as
   shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The
12   envelope was mailed with postage thereon fully prepaid. (Courtesy copy

13   **BY PERSONAL SERVICE ON:**

14   Diana M. Torres, Esq.
   O'Melveny & Meyers
15   400 So. Hope Street
   Los Angeles, CA 90071
16   Telephone: (213) 430-6000
   **Facsimile: (213) 430-6407**
17
   I delivered such envelope(s) **(COURTESY COPY INCLUDED)** by hand to the office of the
18   person(s) being served.

19

20    I declare that I am employed in the office of a member of the bar of this Court at whose direction
   the service was made.
21
            Executed on February 1, 2007, at Los Angeles, California.
22

23

24                                    Mia Albert

25

26                                    Dave Quintana
27

28
                                    EXHIBIT _____ 146

   07209/2049386.1                    PAGE _____ 1890

EXHIBIT 147

RECEIVED

APR 3 0 2007

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. # 180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA  90071-2899
4   Telephone:   (213) 430-6000
    Facsimile:   (213) 430-6407
5   Email:       jjenal@omm.com

6
    PATRICIA GLASER (S.B. #55668)
7   CHRISTENSEN, GLASER, FINK, JACOBS,
    WEIL & SHAPIRO, LLP
8   10250 Constellation Boulevard, 19th Floor
    Los Angeles, CA  90067
9   Telephone:   (310) 553-3000
    Facsimile:   (310) 557-9815
10
    Attorneys for MGA Entertainment, Inc.
11

12

13

14              UNITED STATES DISTRICT COURT
15              CENTRAL DISTRICT OF CALIFORNIA
                     EASTERN DIVISION
16

17  CARTER BRYANT, an individual,     Case No.  CV 04-09049 SGL (RNBx)
                                       (consolidated with CV 04-9059 & 05-2727)
18                    Plaintiff,
                                       **DISCOVERY MATTER**
19          v.
    MATTEL, INC., a Delaware           **MGA ENTERTAINMENT INC.'S**
20  Corporation,                       **OPPOSITION TO MATTEL, INC.'S**
                                       **MOTION TO COMPEL MGA TO**
21                    Defendant.       **PRODUCE WITNESSES FOR**
                                       **DEPOSITION PURSUANT TO RULE**
22                                     **30(B)(6) AND FOR SANCTIONS**

23                                     [To be heard by Discovery Master Hon.
                                       Edward Infante (Ret.) Pursuant to the
24                                     Court's Order of December 6, 2006]

25  CONSOLIDATED WITH                  Hearing Date:   T.B.D.
    MATTEL, INC. v. BRYANT and         Time:           T.B.D.
26  MGA ENTERTAINMENT, INC. v.         Location:       T.B.D.
    MATTEL, INC.
27

28

!A2:829382.1

EXHIBIT _____147_____

PAGE _____1891_____

1
2

# TABLE OF CONTENTS

                                                                                    Page

3   I.     INTRODUCTION ............................................................................. 1

4   II.    FACTUAL BACKGROUND........................................................... 1

    III.   ARGUMENT .................................................................................... 3

5          A.   Mattel's Motion To Compel Should Be Denied As Moot
6               Because MGA Has Already Designated Or Offered To
                Designate Witnesses For 46 of Mattel's 54 Topics Of
7               Deposition Testimony .......................................................... 4

           B.   Mattel's Motion To Compel For The Few Remaining Topics
8               Should Also Be Denied ......................................................... 5

9               1.   Mattel's Motion to Compel on Topic 24, Regarding Any
                     Fee Agreements Between MGA And Bryant, Seeks
10                   Information That is Privileged And Should Be Denied.............. 5

11              2.   Mattel's Motion to Compel on Topic 25, Related to
                     MGA's Revenue And Profit Information, Should Also Be
                     Denied ............................................................................... 6

12              3.   Mattel's Motion to Compel Testimony on MGA's Net
13                   Worth and Expert Analysis (Topics 26 and 41) Should Be
                     Denied As Premature Because It Seeks Testimony That is
14                   Properly The Subject of Expert Discovery ............................. 7

15              4.   Mattel's Motion to Compel on Topics 31 and 33, Related
                     to Prior Work By Unidentified Individuals and Patents,
16                   Should Be Denied Because Such Information is Not
                     Relevant To This Action ...................................................... 10

17              5.   Mattel's Motion to Compel Testimony on Topic 34,
                     Which Relates to Prior Testimony of Unidentified
18                   Individuals, Should Also Be Denied ..................................... 11

19         C.   Mattel's Arguments Regarding Application of Section 2019.210
                Are Improper As This Issue Is Currently Pending Before Judge
20              Larson .............................................................................. 12

           D.   Mattel's Requests For Sanctions Should Be Denied.......................... 14

21  IV.    CONCLUSION............................................................................... 14

22
23
24
25
26
27
28

EXHIBIT _____ *147*

PAGE _____ *1892*

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4

*Advanced Modular Sputtering, Inc. v. Superior Court,*
   132 Cal. App. 4th 826 (2d Dist. 2005)..................................................... 13

5

*Cobb v. Superior Court,*
   99 Cal. App. 3d 543 (1980) .....................................................................8

6

*Computer Economics Inc. v. Gartner Group Inc.,*
   50 F. Supp. 2d 980 (S.D. Cal. 1999)............................................... 13, 14

7

*Covington v. Semones,*
   2007 WL 1052460 (W.D. Va. 2007) ...................................................... 12

8

*Diodes, Inc. v. Franzen et al.,*
   260 Cal. App. 2d 244 (2d Dist. 1968)..................................................... 13

9

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc,*
   2007 WL 273949 (E.D. Cal. 2007)......................................................... 13

10

*KL Group v. Case, Kay & Lynch*
   829 F.2d 909 (9th Cir. 1987).....................................................................6

11

*Rupe v. Fourman,*
   532 F. Supp. 344 (S.D. Ohio 1981) ..........................................................8

12

*Star Editorial, Inc. v. U.S. Dist. Ct. for the Central Dist. of California,*
   7 F. 3d 856 (9th Cir. 1993).......................................................................6

13

*Vermont Microsystems, Inc. v. Autodesk, Inc.,*
   88 F.3d 142 (2d Cir. 1996)...................................................................... 13

## STATUTES

Federal Rule of Civil Procedure 26(a)(2)(C) ..............................................9

Cal. Bus. & Prof. Code § 6149 ...................................................................6

Cal. Civ. Code § 3295(c).............................................................................8

Cal. Code Civ. Proc. § 2019.210............................................................... 13

## RULES

Federal Rule of Civil Procedure 26(a)(2)(C) ............................................ 10

Federal Rule of Evidence 501 ....................................................................7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _____ 147

-ii-

PAGE _____ 1893

**INTRODUCTION**

Mattel, Inc.'s ("Mattel") 80-page motion and approximately 575 pages of accompanying declarations and exhibits, is an attempt to give the misleading impression to the Court, through volume, rather than substance, that MGA Entertainment, Inc. ("MGA") is refusing to offer witnesses in response to Mattel's overreaching 30(b)(6) notices. Contrary to Mattel's insinuation, however, MGA has designated and provided deposition dates for all but a few objectionable topics on which the parties disagree, or where Mattel had agreed to provide additional information so that MGA could designate an appropriate witness. When MGA pointed this out to Mattel and asked Mattel to withdraw its motion as to everything but the few topics on which the parties genuinely disagree, so as to avoid burdening the Court with these issues, however, Mattel refused.

For the reasons discussed herein, Mattel's motion to compel and for sanctions should be denied.

**FACTUAL BACKGROUND**

On March 15 and 16, 2007, counsel for MGA met and conferred with Mattel regarding Mattel's First Rule 30(b)(6) Notice ("First Notice") and Second Rule 30(b)(6) Notices ("Second Notice") of Deposition. During the conference of counsel MGA attempted to reach agreement with regard to the topics the parties disagreed on, as well as to seek clarification on issues related to various other topics. (*See* Declaration of Yvonne L. Garcia ("Garcia Decl.") filed concurrently, ¶ 2.) MGA repeatedly requested that Mattel consider the concerns raised by MGA, but Mattel, even with respect to the issues that it had explicitly agreed to contemplate further, never responded. (*Id.* ¶ 6.)

Thereafter, on March 21, 2007, the parties discussed the upcoming deposition of Paula Garcia. In particular, MGA informed Mattel that very few documents had been produced by Mattel related to work Mattel claims Ms. Garcia

LA2:829382.1

- 1 -

EXHIBIT ___147___

PAGE ___1894___

1  did while at Mattel in connection with "Diva Starz," and that MGA has not seen

2  any such documents other than a few produced in unrelated litigation. (*See*

3  Declaration of Diana M. Torres ("Torres Decl.") filed concurrently, ¶ 2.) MGA

4  also stated that although the Protective Order in this case allows the parties to show

5  a witness any document that she would have seen in the ordinary course of

6  business, many of the "Diva Starz" documents produced by Mattel were drawings

7  marked "Attorney's Eyes Only" and did not indicate to whom they were circulated.

8  Thus, MGA could not properly prepare Ms. Garcia for her deposition with regard to

9  this topic. (*Id.*) Mattel, thus volunteered to produce any "Diva Starz" documents

10 reflecting work by Ms. Garcia and to identify the documents that Mattel contends

11 Ms. Garcia saw or otherwise had access to so that MGA could prepare her for

12 deposition. (*Id.*)

13     Thereafter, on April 5, 2007, MGA sent a letter to Mattel in follow up to the

14 conversation between the parties on March 21. MGA again inquired as to Mattel's

15 agreement to identify documents it contends Ms. Garcia saw or to which she had

16 access at Mattel related to "Diva Starz," as Mattel had not yet produced or

17 identified such additional documents. (*Id.* ¶ 3 & Ex. 1.) MGA also requested that

18 the parties move Ms. Garcia's deposition to some time during the week of May 9 -

19 May 17, 2007, because her current deposition date posed a conflict for Bryant's

20 counsel. (*Id.*) MGA also noted that this would allow Mattel further time to provide

21 the documents or Bates numbers for documents related to "Diva Starz" as it had

22 previously agreed. (*Id.*) Mattel thereafter disputed that it had agreed to identify the

23 documents it contends Ms. Garcia saw or had access to at Mattel related to "Diva

24 Starz," but on April 12, 2007, the date on which Ms. Garcia's deposition was

25 previously scheduled, Mattel agreed to allow MGA to show Ms. Garcia any of the

26 documents produced by Mattel related to "Diva Starz" in preparing her for

27 deposition. (*Id.* ¶¶ 4-5 & Exs. 2 & 3.)

28     During the meeting on April 12, MGA and Mattel also conferred regarding

LA2:829382.1                                    -2-

EXHIBIT _____ *147*

PAGE _____ *1895*

1   MGA's designation of witnesses in response to Mattel's First and Second Notices.

2   In particular, MGA's counsel informed Mattel that a letter had already been drafted

3   providing witness designations with respect to the majority of categories in Mattel's

4   Notices. (*Id.* ¶ 6.) MGA thus asked Mattel to notify MGA if the letter sent to

5   Mattel the following morning designating its witnesses was inadequate and Mattel

6   needed a further response before filing a motion. (*Id.*) The following morning,

7   April 13, 2007, MGA provided Mattel with designees on the majority of topics

8   Mattel had noticed for deposition and indicated that it would be designating prior

9   deposition testimony for a few other categories, as the parties agreed. (*Id.* ¶ 7 &

10   Ex. 4.) (Pursuant to the Discovery Master's order, the date for designating prior

11   testimony is not until May 15, 2007). In addition, MGA indicated that it would

12   notify Mattel the following business day of the identities of any remaining

13   designees. (*Id.*) In response, Mattel filed the instant motion, as if none of the meet

14   and confer process had ever occurred.

15        Thereafter, on Monday, April 16, 2007, MGA sent another letter to Mattel,

16   with a small number of additional designations for the topics in Mattel's Second

17   Notice on which the parties agreed, and provided deposition dates for the witnesses

18   for which no dates had previously been offered. (*Id.* ¶ 8 & Ex. 5.) MGA also

19   offered to designate Ms. Garcia as to the remaining topics in Mattel's First Notice

20   and to produce Ms. Garcia for two days of deposition, if Mattel agreed to allow

21   MGA to depose one of its similarly situated 30(b)(6) designees. (*Id.* ¶ 8, Ex. 5.)

22   Believing the matter to now be moot, MGA asked Mattel to withdraw its motion as

23   to the topics for which it had designated a witness, so as to avoid burdening the

24   Court. Mattel refused. (*Id.* ¶ 8 & Ex. 6.)

25   **ARGUMENT**

26        Contrary to Mattel's motion, MGA has already designated witnesses for all

27   but a few topics on which the parties disagree, or on which MGA has been awaiting

28   clarification from Mattel to enable MGA to designate an appropriate witness. For

EXHIBIT _____ 147

PAGE _____ 1896

1    the reasons set forth below, Mattel's motion to compel should be denied.

2    A.    **Mattel's Motion To Compel Should Be Denied As Moot Because**

3          **MGA Has Already Designated Or Offered To Designate Witnesses**

4          **For 46 Of Mattel's 54 Topics Of Deposition Testimony**

5          As Mattel is well aware, MGA designated or offered to designate witnesses

6    and provide deposition dates for all eight topics noticed in Mattel's First Notice and

7    all but a few of the 46 topics in Mattel's Second Notice on which the parties

8    disagree or where MGA was waiting for Mattel to provide clarification.

9          On the Morning of Friday, April 13, 2007, prior to Mattel filing its 80-page

10   motion, MGA provided Mattel with designees on the majority of topics Mattel had

11   noticed for deposition. In particular, MGA designated witnesses on topic numbers:

12   1-8, 10, 12-15, 22-23, 29-30, 36, 38-40 and 42-46. MGA also stated that it would

13   designate prior testimony as to a variety of topics, including: 9, 11, 16-18, 20 and

14   35. In addition, MGA stated that it would notify Mattel by Monday, April 16,

15   2007, who, if anyone, MGA would be designating for the remaining topics, as well

16   as whether Ms. Garcia would be designated on the remaining topics set forth in

17   Mattel's First Notice. (*See* Torres Decl. ¶ 7 & Ex. 4.)

18         The following Monday, as promised, MGA designated witnesses and

19   provided deposition dates for all of the remaining topics on which the parties

20   agreed. In particular, MGA offered to designate Ms. Garcia on the remaining

21   topics in Mattel's First Notice, subject to an agreement with respect to the amount

22   of time for the deposition, and designated several witnesses on the remaining topics

23   in Mattel's Second Notice, including topics: 19, 21, 25,[1] 27-28, 33,[2] and 37. MGA

24   ―――――――――――――――――――――――――――――――――――――

     [1] MGA designated Eric Villete as MGA's 30(b)(6) witness for topic number 25 for

25   revenues and costs from "Bratz" prior to December 31, 2001. With regard to MGA's
     profits from "Bratz," MGA stated that such information has not yet been calculated and is

26   a subject of expert testimony, not percipient witness testimony. Additionally, with regard
     to MGA's revenues or costs for "Bratz" after December 31, 2001, MGA stated that this

27   topic is premature and requested to meet and confer to negotiate the timing of questioning
     as to this subject, which Mattel itself agreed was appropriate during the meet and confer.

28   (*See* Torres Decl., ¶ 8 & Ex. 5).
     [2] MGA designated Bryan Armstrong as its 30(b)(6) witness for topic 33 as to trademarks

EXHIBIT _____ 147

PAGE _____ 1897

1   further stated that it would be designating prior testimony for topic 32. (*Id.*)

2   Finally, MGA provided deposition dates for the witnesses it had designated for

3   Mattel's First and Second Notices, to the extent they had not been provided

4   previously. (*Id.*) The only topics on which MGA declined to designate a witness

5   were Topics 24, 26, 31, 34 and 41.

6       Although MGA had already designated witnesses as to the vast majority of

7   Mattel's topics, and had stated that it would provide additional designees the

8   following business day, Mattel nonetheless filed the instant motion, claiming that

9   MGA had refused wholesale to provide witnesses for deposition. Moreover, even

10   though MGA provided additional designations and dates the following business

11   day, Mattel refused to withdraw any portion of its motion.

12       In sum, of the 54 topics noticed by Mattel, the only topics as to which no

13   witness has been designated and no dates have been offered are topics 24, 26, 31,

14   34 and 41. Accordingly, with respect to the topics for which MGA has designated

15   a witness and provided dates for deposition, Mattel's motion to compel is improper

16   and should be denied as moot.

17   **B.   Mattel's Motion To Compel For The Few Remaining Topics**

18         **Should Also Be Denied**

19       The remaining topics for which MGA has not agreed to provide witnesses

20   seek testimony that is privileged, not relevant to the present litigation, or is properly

21   the subject of expert testimony and is thus premature. Accordingly, Mattel's

22   motion to compel should be denied.

23           **1.   Mattel's Motion to Compel on Topic 24, Regarding Any Fee**

24              **Agreements Between MGA And Bryant, Seeks Information**

25              **That is Privileged And Should Be Denied**

    Mattel's Topic 24 seeks testimony related to any indemnification or fee

26   arrangements between MGA and Bryant. In support of its request, Mattel argues

27

28   and copyrights only. (*Id.*)

LA2:829382.1           - 5 -

EXHIBIT ___147___

PAGE ___1898___

1    that such information is relevant to show bias, and that the Discovery Master

2    already determined such information was relevant.  As this Court is well aware,

3    Bryant was ordered to produce all *non-privileged* documents related to its fee

4    arrangements.[3]  As MGA has repeatedly informed Mattel, the only non-privileged

5    agreement responsive to Topic 24 is the original contract between Bryant and

6    MGA, signed on October 4, 2000, and dated "as of" September 18, 2000.  Notably,

7    MGA has already stated that it intends to designate prior deposition testimony for

8    Topic 18, which relates to Bryant's agreements and contracts with MGA.  Bryant's

9    fee agreements, however, are privileged under California law, which is applicable

10   to this diversity action.[4]  Moreover, such information is not relevant to any claim or

11   defense in this litigation and has no bearing on any potential "bias" because there is

12   no dispute that Bryant's interests in this case are aligned with those of MGA, and

13   that Bryant is "biased" in that sense.  In fact, as MGA previously informed the

14   Discovery Master, MGA and Bryant previously offered to stipulate to that "bias."[5]

15   Accordingly, Mattel's motion to compel as to Topic 24 should be denied.

16          **2.      Mattel's Motion to Compel on Topic 25, Related to MGA's**

17          **Revenue And Profit Information, Should Also Be Denied**

18          Mattel's motion to compel designation of a witness for Topic 25 concerning

19   MGA's revenues and profits is surprising given that Mattel and MGA already

20   agreed to postpone designation for that topic until a later date.  Mattel's instant

21   motion is an attempt to go back on that agreement.  During the conference of

22

23   [3] *See* Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 12.

24   [4] *See* Cal. Bus. & Prof. Code § 6149; *Star Editorial, Inc. v. U.S. Dist. Ct. for the Central

25   *Dist. of California*, 7 F. 3d 856, 859 (9th Cir. 1993) (citing Federal Rule of Evidence 501 for the proposition that state law on privilege applied where a state law action was removed to federal court based on diversity of citizenship); *KL Group v. Case, Kay &*

26   *Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) ("The availability of the attorney-client privilege in a diversity case is governed by state law.")

27   [5] *See* Declaration of Diana M. Torres filed in Support of MGA's Opposition to Mattel's Motion to Compel Production of Documents and Interrogatory Answers, dated February

28   20, 2007, ¶ 14.

EXHIBIT _____147_____

PAGE _____1899_____

1   counsel on March 15 and 16, 2007, MGA explained that it has compiled revenue
2   and profit information regarding first-generation "Bratz," but that it has yet to
3   compile such information regarding the other products at issue in the litigation
4   because MGA does not keep such information in the normal course of business.
5   (*See* Garcia Decl. ¶ 3.)  MGA assured Mattel, however, that it is currently in the
6   process of compiling the remaining revenue and profit information.  (*Id.*)  MGA
7   offered to designate a witness to testify regarding the revenue and profit
8   information for first-generation "Bratz," and then designate a witness to testify
9   regarding the revenue and profit information for subsequent products once that
10  information became available.  (*Id.*)  Mattel declined MGA's proposal, but agreed
11  instead to allow MGA to designate a witness for Topic 25 at a later date.  (*Id.*)

12      Now, after MGA has already relied upon Mattel's representations during the
13  meet and confer, Mattel asks the Discovery Master to compel MGA to designate a
14  witness for Topic 25, while failing to mention the agreement previously reached.
15  Mattel's decision to move on this topic, if granted, would render moot the entire
16  meet and confer process.  Mattel should not be rewarded for this tactic and its
17  motion as to Topic 25 should be denied.

18              **3.    Mattel's Motion to Compel Testimony on MGA's Net Worth
19                      and Expert Analysis (Topics 26 and 41) Should Be Denied
20                      As Premature Because It Seeks Testimony That is Properly
                        The Subject of Expert Discovery**

21      Mattel argues that MGA should be compelled to produce witnesses to testify
22  as to topics that are properly the subject of expert discovery, and on which Mattel
23  has itself refused to provide discovery on the grounds that such discovery is
24  premature.  Mattel should not be allowed to have it both ways.

25      Mattel first argues that MGA should be compelled to designate a witness for
26  Topic 26, which seeks testimony as to MGA's net worth.  In support of its
27  argument, Mattel claims that information related to MGA's net worth is relevant to
28

EXHIBIT _____ 147

PAGE _____ 1900

1   its claim for punitive damages. Mattel's request is clearly premature. As this Court

2   is no doubt aware, the ownership phase of this case is set to go to trial in February

3   2008, the outcome of which the District Court has already indicated will likely

4   affect the contours of this case.[6] Notably, Mattel has not asserted a claim for

5   punitive damages against MGA for its claims based on Bryant's alleged breach of

6   contract, breach of fiduciary duty and breach of the duty of loyalty. Rather,

7   Mattel's claim for punitive damages is only relevant to the second phase of the

8   litigation between the parties, which is scheduled for trial in July 2008. Similar to

9   cases where a court orders bifurcation, requiring MGA to designate a witness

10  regarding its net worth at this stage of the litigation is premature.[7] There will be

11  ample time after the determination as to ownership of "Bratz" in the first trial for

12  Mattel to take discovery on MGA's net worth.

13      Moreover, MGA is a private company and has no reporting requirements

14  which would require it to gather and disclose information on its net worth, and does

15  not compile such information in the ordinary course of business. Because MGA

16  does not calculate its net worth in the ordinary course of business, it does not know

17  its net worth and thus has no percipient witness who can testify on this topic. *If*

18  MGA decides to calculate its net worth, it will do so *only* in connection with expert

19  discovery, for which the time has not yet arrived. Accordingly, Mattel's motion to

20  compel MGA to produce a witness to testify as to its net worth is premature and

21

22  [6] Torres Decl., ¶ 9, Ex. 7 (Order Regarding Mattel's Motion For Leave to Amend, dated January 12, 2007, at 3).

23  [7] *See Rupe v. Fourman*, 532 F. Supp. 344, 350-51 (S.D. Ohio 1981) (holding that

24  discovery on punitive damages was premature and unnecessary until liability was established); *see also Cobb v. Superior Court*, 99 Cal. App. 3d 543, 548-50 (1980)

25  (explaining that "[i]t would seldom seem necessary to the integrity of discovery proceedings that extensive discovery be permitted over objection into financial affairs of a defendant ahead of discovery on the merits of the underlying cause of action" and that in

26  such cases, the court should "consider the advisability of requiring a prima facie showing into the right to punitive damages."); Cal. Civ. Code § 3295(c) (precluding pretrial

27  discovery on a defendant's financial condition unless so ordered by the court after a finding that the plaintiff has established a substantial probability that punitive damages

28  will be awarded).

LA2:829382.1                              - 8 -

EXHIBIT _____ 147

PAGE _____ 1901

1 should be denied.

2     Mattel's motion to compel MGA to produce a witness to testify for Topic 41,

3 regarding testing performed by MGA's expert, is similarly premature. The time for

4 designating experts has not yet arrived, thus MGA cannot be required to disclose at

5 this time whom it will be designating as its testifying experts in this litigation.

6 Under Federal Rule of Civil Procedure 26(a)(2)(C), the deadline for the disclosure

7 of expert testimony is 90 days before the trial date. This case is set for trial on

8 February 12, 2008. Requiring MGA to designate an expert witness at this early

9 stage of the proceedings is premature and inappropriate.

10     In June 2006, Mattel made the belated request that the District Court appoint

11 one document expert to test all documents in this case, to be used jointly by the

12 parties. In support of that argument, Mattel implied in its motion papers that MGA

13 and/or Bryant had destroyed evidence by making holes in certain "Bratz"

14 drawings.[8] Mattel's insinuation in its papers was so strong that Judge Larson issued

15 an order to show cause as to why the Court should not appoint an expert. At

16 argument, however, Mattel's counsel was forced to concede that *no evidence had*

17 *been* comprised.[9] In fact, as Judge Larson later found, MGA and Bryant did the

18 appropriate thing -- very shortly after Mattel filed its complaint, MGA and Bryant

19 date-tested certain original "Bratz" drawings while Mattel waited until the

20 documents were too old to be dated and therefore too old to confirm the merits of

21 MGA and Bryant's defenses.[10] To convince Judge Larson of the complete

22 inaccuracy of Mattel's accusations, however, MGA and Bryant were forced to

23 explain in general terms the testing procedures they had used.[11] They did not, at

24

25 [8] *See* Torres Decl., ¶ 10, Ex. 8 (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006).

26 [9] *Id.* (Order Denying Motion For Appointment of Expert Witnesses, at 13).
    [10] *Id.* (Order Denying Motion For Appointment of Expert Witnesses, at 14).

27 [11] *See* Declaration of B. Jennifer Glad filed concurrently, ¶ 2, Ex. 1 (Response of Bryant

28 and MGA to the Order to Show Cause Regarding the Appointment of Expert Witness(es), dated July 21, 2006, at 5).

LA2:829382.1      -9-      EXHIBIT _____147_____

    PAGE _____1902_____

1    that time or at any time since, designate a testifying expert in this area to disclose

2    the results of the expert's work. Mattel should not be allowed to benefit from its

3    false and unsubstantiated accusations that required MGA and Bryant even to

4    acknowledge the fact that they had performed expert analysis on a consulting basis.

5        Contrary to Mattel's suggestion, the issue is not whether the consulting

6    expert's analysis is "reasonably available," as that would be true as to any

7    consulting expert. But rather, unless and until MGA designates a testifying expert,

8    these analyses are protected as MGA's work product and privileged from

9    disclosure. MGA will be prepared to identify its experts, and produce expert

10   reports, as required by the Federal Rules of Civil Procedure, at the appropriate time.

11   In addition, Mattel has itself refused to produce discovery related to its document

12   experts on the grounds that such information is protected from disclosure by the

13   attorney-client privilege, the attorney work product doctrine, and the non-

14   designated expert consultant privilege.[12] Mattel's motion on this topic should be

15   denied.

16       **4.**    **Mattel's Motion to Compel on Topics 31 and 33, Related to**

17           **Prior Work By Unidentified Individuals and Patents, Should**

18           **Be Denied Because Such Information is Not Relevant To**

        **This Action**

19       Mattel's motion to compel on Topics 31 and 33 should be denied because

20   they seek information not relevant to this litigation. First, Topic 31 seeks testimony

21   related to the identities of persons, to the extent any exist, that have performed work

22   for MGA while the person was employed by Mattel. Because Mattel has asserted

23   no claim of this nature with respect to anyone other than Bryant, such information

24   is not relevant to this litigation, and, as this Court recently noted, discovery is not a

25   fishing expedition for new claims.[13] Indeed, it is impossible to prepare a witness on

26   [12] *See* Torres Decl., ¶ 11, Ex. 9 (Objections of Mattel and Timothy James Lider to MGA's

27   Subpoena for Production of Documents, Response to Request No. 6).

[13] *See* Order Granting in Part and Denying in Part Mattel's Motion For Protective Order

28   Regarding "Polly Pocket" Documents, at 5.

EXHIBIT _____ *147*

PAGE _____ *1903*

1    this topic without knowing all of Mattel's past and present employees and their

2    dates of employment. In an attempt to compromise, however, MGA stated that it

3    would be willing to consider designating a 30(b)(6) witness to testify on this topic if

4    Mattel was willing to narrow it. (*See* Garcia Decl. ¶ 4.) Mattel, however, refused.

5    (*Id.*) Mattel should not now be heard to complain that MGA has failed to meet its

6    discovery obligations by not designating a witness as to this topic.

7         Mattel's motion with regard to Topic 33, which seeks information related to

8    any trademarks, copyrights and patents, similarly seeks irrelevant information. As

9    discussed herein, MGA designated a witness for Topic 33 with regard to trademarks

10   and copyrights only. MGA should not be required to provide a witness to testify as

11   to MGA's patents and patent applications, to the extent any exist, as Mattel has

12   asserted no patent claims in this litigation and provided no rationale as to how any

13   MGA patent or patent application is conceivably relevant to the claims or defenses

14   in this litigation. Accordingly, Mattel's motion to compel should be denied.

15              **5.    Mattel's Motion to Compel Testimony on Topic 34, Which**
16                     **Relates to Prior Testimony of Unidentified Individuals,**
                       **Should Also Be Denied**
17

18        Mattel's motion to compel testimony from MGA on Topic 34 seeks to have

19   the Discovery Master require MGA to prepare and produce a corporate witness to

20   testify about prior declarations and deposition testimony of various individuals, all

21   but two of whom are unidentified.[14] In essence, Mattel seeks to have MGA prepare

22   a witness to testify about statements by other witnesses, rather than simply depose

23   those witnesses from whom it wants testimony. Mattel has cited no authority for

24   such an inappropriate topic of corporate testimony, and MGA has found none.

25        Such testimony is not only inappropriate for a corporate designee, but it is

26   _____

[14] During the meet and confer, MGA requested that Mattel more adequately define Topic
27   34, which relates to testimony and sworn statements prior to June 30, 2001. (*See* Garcia
     Decl., ¶ 5.) With this request still pending, Mattel filed the instant motion, in which it
     identifies for the first time two of the declarations which it apparently had in mind all
28   along, but had previously refused to identify for MGA.

LA2:829382.1                              - 11 -

EXHIBIT _____ 147

PAGE _____ 1904

1   impracticable to require MGA to prepare a witness to testify as to the prior

2   testimony of individuals, including individuals who are not employed by MGA. In

3   *Covington v. Semones,* plaintiffs served a Rule 30(b)(6) notice on one entity, a

4   town, in order to obtain information about another entity, the county attorney's

5   office. The court held that the town had no duty to inquire into or provide

6   information about the knowledge of the county attorney's office, stating that such a

7   practice would be "neither practicable nor efficient." 2007 WL 1052460, *2 (W.D.

8   Va. 2007) ("[t]here is no duty imposed to inquire into the knowledge of another

9   entity"). It is just as impracticable and inefficient to require MGA to designate a

10  corporate witness to testify about the knowledge of any individuals, let alone

11  witnesses not employed by MGA, especially where Mattel has refused to identify

12  the declarants or deponents and can easily depose individuals it believes to have

13  relevant information. Moreover, Mattel has cited no authority, and MGA is aware

14  of none, that would permit Mattel to question MGA's 30(b)(6) witness about the

15  prior testimony of other individuals. Accordingly, Mattel's motion to compel

16  MGA to produce a 30(b)(6) witness to testify as to prior sworn testimony and

17  statements should be denied.

18
19       C.   **Mattel's Arguments Regarding Application of Section 2019.210 Are Improper As This Issue Is Currently Pending Before Judge Larson**

20
21       Mattel's argument regarding MGA's objections based on Mattel's failure to

22   identify its alleged trade secrets is an attempt to do an end run around MGA's

23   motion to dismiss. As Mattel is well aware, MGA argued in its motion to dismiss

24   that Mattel should not be allowed to proceed with its claims based on the alleged

25   misappropriation of trade secrets because Mattel has failed to identify its allegedly

26   misappropriated trade secrets with the required specificity.[15] MGA's motion to

27   _____

28   [15] *See* Torres Decl., ¶ 12, Ex. 10 (MGA and Isaac Larian's Joint Motion to Dismiss Mattel's Amended Answer and Counterclaims, at 15-19).

LA2:829382.1                                  - 12 -

EXHIBIT _____ 142

PAGE _____ 1905

1  dismiss is currently pending before Judge Larson, and is scheduled for oral

2  argument on May 21, 2007. Mattel's efforts to have the Discovery Master resolve

3  this issue in an attempt to undermine MGA's motion before the District Court is

4  improper and should not be condoned.

5        As discussed in MGA's motion to dismiss, all of Mattel's claims against

6  MGA proceed from the foundational allegation that MGA misappropriated Mattel's

7  purported trade secrets. Under California law, when a claim is premised on trade

8  secret misappropriation, a plaintiff must disclose the trade secret with "reasonable

9  particularity" before proceeding with discovery on any of those claims.[16] This rule

10 is not merely procedural, as Mattel suggests, but substantive in that it protects a

11 defendant from spending time, money and effort defending against baseless

12 claims.[17] Thus, contrary to Mattel's assertion, section 2019.210 applies in federal

13 proceedings.[18]

14        Moreover, Mattel's reliance on the unpublished opinion in *Funcat Leisure*

15 *Craft*[19] is particularly unpersuasive, as it dismisses the substantive nature of

16 California's statutory protection from baseless trade secret claims without even

17 considering the origin and purpose of the law. *Computer Economics*, cited by

18 MGA in its motion to dismiss, is the more closely reasoned case, and addresses the

19 purpose of section 2019.210, namely to: promote well-investigated claims, dissuade

20 the filing of meritless trade secret complaints, and protect against expending money

21

22 [16] *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (2d Dist. 2005); Cal. Code Civ. Proc. § 2019.210.

23 [17] *See Computer Economics Inc. v. Gartner Group Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999); *see also Diodes, Inc. v. Franzen et al.*, 260 Cal. App. 2d 244, 252 (2d Dist.

24 1968) (purpose of rule is to substantively protect against having to answer to and defend against baseless claims).

25 [18] *See Computer Economics*, 50 F. Supp. 2d at 985 (establishing the applicability of California's statutory provision to federal cases, including cases where pendent

26 jurisdiction applies to state law claims, under the *Erie* doctrine); *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142 (2d Cir. 1996) (applying California trade secret law and

27 specifically this provision without dispute or need for discussion).

28 [19] *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949 (E.D. Cal. 2007).

EXHIBIT ___14 8___

PAGE ___1906___

1    and time on false claims - not just to control the timing of discovery.[20]

2         In any event, until such time as the District Court rules on this issue as part of

3    MGA's motion to dismiss, Mattel should be precluded from pursuing further

4    discovery on this issue.

5    **D.    Mattel's Requests For Sanctions Should Be Denied**

6         Finally, Mattel argues that it is entitled to sanctions.  As set forth at length

7    above, and contrary to Mattel's assertions, MGA has designated witnesses for all

8    but the few topics on which the parties disagree, or as to which Mattel agreed to

9    provide further clarification so that MGA could designate the appropriate witness.

10   Moreover, MGA's refusal to provide witnesses as to the remaining topics was in

11   good faith given that the topics sought testimony that was privileged, not relevant to

12   the claims in the litigation, or else was properly the subject of expert testimony and

13   was, thus, premature.  Accordingly, Mattel's motion for sanctions should be denied.

14   **CONCLUSION**

15        For the reasons set forth above, the Court should deny Mattel's Motion to

16   Compel and for Sanctions in its entirety.

17

18        Dated: April 26, 2007                O'MELVENY & MYERS LLP

19

20                                             By:  James P. Jenal
21                                             Attorneys for MGA Entertainment, Inc.

22

23

24

25

26

27   [20] *See Computer Economics*, 50 F. Supp. 2d at 985-88; Torres Decl., ¶ 12, Ex. 10 (MGA
     and Isaac Larian's Joint Motion to Dismiss Mattel's Amended Answer and
28   Counterclaims, at 15-19).

LA2:829382.1                          - 14 -

EXHIBIT       147

PAGE          1907