EXHIBIT 148

**CONFORMED COPY**

FILED

1 │ QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  │   John B. Quinn (Bar No. 090378)
2 │   johnquinn@quinnemanuel.com
  │   Michael T. Zeller (Bar No. 196417)
3 │   (michaelzeller@quinnemanuel.com)
  │   Jon D. Corey (Bar No. 185066)
4 │   (joncorey@quinnemanuel.com)
  │   Timothy L. Alger (Bar No. 160303)
5 │   (timalger@quinnemanuel.com)
  │ 865 South Figueroa Street, 10th Floor
6 │ Los Angeles, California 90017-2543
  │ Telephone: (213) 443-3000
7 │ Facsimile:   (213) 443-3100

2007 MAY 18  PM 3: 45

CALENDARED

8 │ Attorneys for Mattel, Inc.

9

10          UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA

12            EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with |
| vs. | Case No. CV 04-09059 |
| | Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | Hon. Edward A. Infante (Ret.) |
| | Discovery Master |
| AND CONSOLIDATED CASES | [~~PROPOSED~~] ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6) |
| | Date: May 15, 2007 |
| | Time: 8:15 a.m. |
| | Place: Telephonic |
| | Discovery Cut-Off: October 22, 2007 |
| | Pre-Trial Conference: January 14, 2008 |
| | Trial Date: February 12, 2008 |

EXHIBIT _148_

PAGE _1908_

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

CS|18|07

07209/2121176:1

1   [PROPOSED] ORDER

2

3      Having considered Mattel, Inc.'s Motion To Compel MGA To Produce

4   Witnesses For Deposition Pursuant To Rule 30(b)(6) (the "Motion"), and all other

5   papers and argument submitted in support of or opposition to the Motion, and finding

6   good cause therefor, Mattel's Motion is GRANTED.

7      IT IS HEREBY ORDERED that:

8      1.    MGA shall make Paula Garcia available for deposition on or before June

9   15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of

10  MGA Pursuant to Rule 30(b)(6) dated February 16, 2005 and in her individual

11  capacity.

12     2.    MGA shall confirm its designees and the dates of the designees'

13  availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's

14  Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the

15  "Second Notice") on or before May 22, 2007.

16     3.    MGA shall make its designees for all Topics in the Second Notice,

17  except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

18     4.    The parties shall meet and confer regarding the timing of the depositions

19  on Topic Nos. 25 and 26 of the Second Notice. Such depositions may take place after

20  June 30, 2007.

21     5.    All of MGA's objections and/or limitations regarding the Topics in

22  Mattel's Rule 30(b)(6) deposition notices are overruled.

23  //

24  //

25  //

26  //

27  //      EXHIBIT _____ 148

28  //      PAGE _____ 1909

07209/2121176.1

-1-

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

1

2    6.    Mattel's request for sanctions is denied.

3

4    **IT IS SO ORDERED.**

5

6    DATED: May 16, , 2007

7

8    _____

Hon. Edward A. Infante (Ret.)
9    Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                    EXHIBIT ___148___

27

28                                    PAGE ___1910___

07209/2121176.1                          -2-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 17,

2007, I served the attached ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL

MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6)

in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rlmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 17, 2007, at San Francisco, California

Anthony R. Sales

EXHIBIT _____ 148

PAGE _____ 1911

EXHIBIT 149

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date:  July 2, 2007

Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS

==================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

     Jim Holmes                                Theresa Lanza
     Courtroom Deputy Clerk                    Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                         John B. Quinn
                                      Brett Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali                       ENTERED
Patricia Glaser                       CLERK, U.S. DISTRICT COURT

                                      JUL - 5 2007         DOCKETED ON CM

PROCEEDINGS:    MINUTE ORDER          CENTRAL DISTRICT OF CALIFORNIA      JUL - 5 2007
                                      EASTERN DIVISION    BY DEPUTY
                                                                         BY _____ 164

     As set forth more fully herein, the Court hereby makes the following ruling regarding matters heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                  Initials of Deputy Clerk ___ Jh
CIVIL – GEN                            1         Time: 01/15

EXHIBIT ___
PAGE ___ 1912  67|c2|c7

regarding date of production of documents (docket #545); and

(4)   The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket
      #508).

(5)   The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)   Motion re Trial Structure (docket #462)

      Previous orders of the Court specified that the claims and counterclaims brought in this
action will be tried in two phases.  The parties have agreed, in large part, to a refinement of the
Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1.  Where
the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases,
with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all
Phase 1 damages being tried after all the other issues.  Phase 1(a) would be limited to issues
surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership
of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred
Bratz products that are potentially derivative of the original drawings.  This approach has the
appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings.  A
finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the
need for Phase 1(b).

      Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS'
PROPOSAL,** as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007.
Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)   MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)   MGA's Ex Parte Application regarding date of production of documents (docket #545).

      The Discovery Master's May 15, 2007, Order compels production of documents regarding
ink, paper, and chemical analysis and documents relating to unreleased MGA products.  The order
required that documents be produced no later than the end of May.

      The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary
to law" standard set forth in Fed. R. Civ. P. 72(a).

      The Discovery Master's order compels the production of only non-privileged documents.
Therefore, MGA's arguments that the Discovery Master's order requires production of documents
in violation of the attorney-client privilege are misplaced.  If the only responsive documents are
privileged, then MGA need not produce them, but must produce a privilege log.

      MGA acknowledges that it has raised an argument before the Court that was not raised

MINUTES FORM 90                                         Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          2                 Time: 01/15

                                                       EXHIBIT _____ 149

                                                       PAGE _____ 1913

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

EXHIBIT _149_

PAGE ____1914_

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the
document production set forth in the Discovery Master's May 15, 2007, order no later than July 31,
2007, with the exception of the documents from MGA Hong Kong, which shall be produced no
later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15,
2007, Order, extending the document production date as set forth above. The Motion is **DENIED**
in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of
documents, extending the document production date as set forth above. The application is
**DENIED** in all other respects.

(4)   MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of
witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical
analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a
> public or private corporation or a partnership or association or governmental agency
> and describe with reasonable particularity the matters on which examination is
> requested. In that event, the organization so named shall designate one or more
> officers, directors, or managing agents, or other persons who consent to testify on its
> behalf, and may set forth, for each person designated, the matters on which the
> person will testify. . . . The persons so designated shall testify as to matters *known*
> *or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create
testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz.
1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District
Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses
> without knowledge within an organization and eliminating 'bandying', which is the
> name given to the practice in which people are deposed in turn but each disclaims
> knowledge of facts that are clearly known to persons in the organization and thereby
> to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes
to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

MINUTES FORM 90
CIVIL – GEN                                    4

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _____*149*_____

PAGE _____*1915*_____

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)    Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT ____ /49

PAGE ____ /9//6

EXHIBIT 150

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:   (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12                                          CASE NO. CV 04-09049 SGL (RNBx)
    CARTER BRYANT, an individual,           JAMS Reference No. 1100049530
13
                                            
14            Plaintiff,
                                            Consolidated with
15        v.                                Case No. CV 04-09059
                                            Case No. CV 05-2727
16  MATTEL, INC., a Delaware corporation,
                                            **ORDER GRANTING IN PART AND**
17            Defendant.                     **DENYING IN PART MATTEL'S**
                                            **MOTION TO ENFORCE COURT'S**
18                                          **DISCOVERY ORDERS AND TO**
                                            **COMPEL; TO OVERRULE**
19                                          **PURPORTEDLY IMPROPER**
                                            **INSTRUCTIONS; AND FOR**
20                                          **SANCTIONS**

21  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
22  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT _____ 150

PAGE _____ 1917

1-9

## I. INTRODUCTION

On December 5, Mattel, Inc. ("Mattel") submitted a "Motion to (1) Enforce Court's Discovery Orders and to Compel; (2) to Overrule Improper Instructions; and (3) for Sanctions." Mattel's motion challenges the sufficiency of the testimony provided by four of MGA Entertainment Inc.'s Rule 30(b)(6) witnesses, Lisa Tonnu, Kenneth Lockhart, Rebecca Harris, and Spencer Woodman, on sixteen separate topics identified in Mattel's Second Notice of Deposition of MGA. MGA submitted an opposition on December 18, 2007. Mattel submitted a reply on December 26, 2007. The matter was heard on January 3, 2008. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is granted in part.

## II. BACKGROUND

On May 16, 2007, MGA was ordered to produce Rule 30(b)(6) designees for all topics identified in Mattel's Second Notice of Deposition of MGA, except Topic Nos. 25 and 26, on or before June 30, 2007. Mattel's Second Notice of Deposition includes many topics relevant to the case, including, *inter alia*, the development of Bratz before it was made available for purchase; when and whom MGA first offered Bratz for sale; who first manufactured, shipped and distributed Bratz; Bratz revenues and profits; MGA's access to Mattel's earlier DIVA STARZ project that allegedly had elements which subsequently appeared in Bratz; the identity of persons who worked on Bratz and payments made to them; fee and indemnification agreements; MGA's testing and handling of original Bratz drawings; MGA's sworn statements pertaining to Bratz's creation and development; and MGA's evidence preservation and collection. On July 2, 2007, the district court rejected MGA's objections to the May 16, 2007 Order.

MGA designated four different witnesses to testify on the topics identified in Mattel's Second Notice of Deposition of MGA. First, MGA designated Kenneth Lockhart to testify on Topic Nos. 38, 39 and 42. He testified on June 14-15, 2007.

Second, MGA designated Lisa Tonnu to testify on Topic Nos. 24-25, 31, 37, 39 (in part), 40 and 41. She testified on July 19, 2007. In the meantime, Mattel moved for an order compelling MGA to produce witnesses for deposition and sanctions because MGA did not

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT ___150___

PAGE___1918___

1   produce witnesses on certain topics as required by the May 16, 2007 Order. On August 14, 2007,

2   Mattel's motion was granted in part and denied in part and MGA was ordered, once again, to

3   produce witnesses to testify on several topics. On September 24-25, 2007, Mattel deposed Ms.

4   Tonnu further on Topic Nos. 21, 24-26, 31, 39, 40 and 41.

5       Third, MGA designated Rebecca Harris to testify on Topic Nos. 11, 13, 14, 19, 22-23 and

6   27-28. Ms. Harris' deposition was scheduled, but unilaterally cancelled by MGA, on two

7   different occasions. MGA ultimately produced Ms. Harris on July 20, 2007.

8       Fourth, MGA designated Spencer Woodman to testify on Topic No. 34. He testified on

9   October 9, 2007.

10      In September of 2007, the parties exchanged several meet and confer letters regarding

11  purported deficiencies in the witnesses' depositions. In mid October, MGA notified Mattel that it

12  had retained new counsel who would be responding to Mattel's letters. After a month-long stay

13  that MGA obtained as a result of its substitution of counsel, the parties met and conferred on

14  November 16, 2007 and again on November 21, 2007. MGA offered to produce Ms. Tonnu

15  again, but only on some of the topics for which she had been designated previously, and only

16  during the second week of January 2008. The parties continued to exchange letters; however,

17  they were apparently unable to resolve any issues before Mattel filed the instant motion on

    December 5, 2007.

18      Mattel essentially contends that MGA's witnesses were not sufficiently knowledgeable to

19  provide complete testimony on the 30(b)(6) topics at issue, and furthermore, that MGA's counsel

20  obstructed the depositions by making improper objections and instructing witnesses not to

21  answer. Accordingly, Mattel seeks the following eight categories of relief: (1) an order enforcing

22  the May 16, 2007 and August 14, 2007 Orders and compelling MGA to comply therewith by

23  designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25,

24  27, 28, 31, 34 and 39-41 in Mattel's Second Notice of Deposition of MGA on dates of Mattel's

25  selection; (2) an order overruling each of the purportedly improper instructions not to answer

26  questions interposed at the deposition of MGA designees Spencer Woodman and compelling

27  Woodman or other such person selected by MGA as its designee to provide complete testimony

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _____ 150

PAGE _____ 1919

1    on Topic No. 34; (3) an order compelling MGA to produce documents that MGA designee

2    Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed

3    and relied upon to refresh his recollection in preparation for his deposition; (4) an order

4    overruling each of the purportedly improper instructions not to answer questions interposed at the

5    deposition of MGA designee Lisa Tonnu; (5) an order reopening the deposition of MGA designee

6    Lisa Tonnu based on a purported "complete reversal of testimony" made through written

7    "changes" to her deposition transcript; (6) an order compelling Rebecca Harris to sit for the

8    completion of her deposition and/or compelling such person selected by MGA as its designee to

9    complete the testimony on topics for which Harris was previously designated; (7) an order

10    imposing monetary sanctions ($10,000) for MGA's alleged willful violations of the May 16, 2007

11    and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition

12    questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the

13    September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of

14    Spencer Woodman; and (8) a report and recommendation to Judge Stephen G. Larson that

15    recommends the imposition of preclusion sanctions, that certain facts related to the topics

16    compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly
    willful and repeated violations of the Orders.

17         MGA opposes the motion, contending that it substantially complied with its obligation to

18    produce witnesses knowledgeable on each of the topics at issue and that Mattel has had a full and

19    fair opportunity to conduct its examinations. According to MGA's calculations, the four

20    witnesses testified intelligently for nearly 36 hours over five deposition days. MGA also explains

21    that its counsel instructed witnesses not to answer two types of questions, namely questions that

22    invaded MGA's work product protection or attorney-client privilege, and questions that exceeded

23    the scope of Topic No. 34. MGA also contends that Mattel is not entitled to additional time to

24    depose Ms. Harris in particular because Mattel's counsel wasted time and badgered the witness.

25    MGA acknowledges, however, that Ms. Tonnu did change her testimony and that there are some

26    deficiencies in its witnesses' testimony that justify additional deposition time. Indeed, MGA

27    points out that prior to the filing of the instant motion, MGA agreed to produce witnesses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT ____150____

PAGE ____1920____

1    provide additional testimony on Topic Nos. 21, 24, 25, 31, 34 and 40. Further, after the filing of

2    the motion, MGA agreed to produce witnesses to provide additional testimony on Topic No. 39.

3    MGA contends that Mattel's motion to compel additional testimony with respect to topics on

4    which MGA has already agreed to provide additional testimony is premature and should be

5    denied.

6                                    III. STANDARDS

7          Depositions of a corporation are governed by Rule 30(b)(6) of the Federal Rules of Civil

8    Procedure, which provides in pertinent part that:

9              In its notice or subpoena, a party may name as the deponent a public or
             private corporation, a partnership, an association, a governmental agency, or other
             entity and must describe with reasonable particularity the matters for examination.
10           The named organization must then designate one or more officers, directors, or
             managing agents, or designate other persons who consent to testify on its behalf;
11           and it may set out the matters on which each person designated will testify. . . .
             The persons designated must testify about information known or reasonably
12           available to the organization.

13    Fed.R.Civ.P. 30(b)(6) (effective Dec. 1, 2007). Rule 30 also provides that the examination and

14    cross-examination of a deponent proceed as they would at trial under the Federal Rules of

15    Evidence. Fed.R.Civ.P. 30(c)(1). Further, "[a]n objection at the time of the examination--

16    whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking

17    the deposition, or to any other aspect of the deposition--must be noted on the record, but the

18    examination still proceeds; the testimony is taken subject to any objection." Fed.R.Civ.P.

19    30(c)(2). "An objection must be stated concisely in a nonargumentative and nonsuggestive

20    manner. A person may instruct a deponent not to answer only when necessary to preserve a

21    privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

22    30(d)(3)." Id.

23          Rule 30(d)(1), Fed.R.Civ.P., provides that a deposition is limited to one day of seven

24    hours, unless otherwise stipulated or ordered by the court. "The court must allow additional time

25    consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    5

EXHIBIT _____150

PAGE _____1921

1 | person, or any other circumstance impedes or delays the examination."[1]  Fed.R.Civ.P. 30(d)(1).

2 | Furthermore, sanctions may be imposed --including the reasonable expenses and attorney's fees

3 | incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the

4 | deponent.  Fed.R.Civ.P. 30(d)(2).

## IV. DISCUSSION

A. Mattel's Request for Relief No. 1:  Mattel seeks an order enforcing the May 16, 2007 and August 14, 2007 Orders and compelling MGA to comply therewith by designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25, 27, 28, 31, 34 and 39-41 in Mattel's Second Notice of Deposition of MGA on dates of Mattel's selection.

Mattel contends that MGA's witnesses were inadequately prepared and failed to provide sufficient testimony on sixteen of the topics identified in the Second Notice of Deposition of MGA.  Each of the sixteen 30(b)(6) topics at issue is addressed separately below.

**Topic No. 11**:  The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

Mattel contends that Ms. Harris lacked sufficient knowledge on this topic.  In particular, Mattel contends that Ms. Harris could not confirm what form of Bratz or Bratz design ("sculpts") was first exhibited to third parties prior to June 30, 2001.

MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on this topic.  More specifically, MGA contends that Ms. Harris testified about the first exhibition, sale and distribution of Bratz, including presentations to Target stores, and the first sale, distribution and shipment of Bratz under an agreement with Bandai in Spain.  MGA contends that it is not reasonable to expect MGA to have investigated specifically what type of Bratz "sculpts" were shown at particular exhibitions.

---

[1] Rule 26(b)(2), Fed.R.Civ.P., provides that the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

1    Furthermore, MGA points out that Mattel has taken the deposition of MGA HK on the

2    subject of the initial manufacture of Bratz. More specifically, MGA contends that Mattel took the

3    deposition of the head of MGA's Hong Kong operations, Edmond Lee, for two full days, and

4    questioned him about the first manufacture of Bratz by Early Light. Therefore, MGA contends

5    that Mattel has had a full and fair opportunity to examine MGA regarding the first manufacture of

6    Bratz.

7    A review of the transcript confirms that Ms. Harris was not reasonably prepared for her

8    deposition, especially in light of the importance of the timing of the creation of Bratz. For

9    example, she could not specify what was shown to retailers during the year 2000. She testified

10    that MGA used "boards" (i.e. sketched drawings) to show retailers Bratz during the year 2000

11    based upon a telephone conversation she had with Paula Garcia during a break. Mattel is entitled

12    to delve into more detail about these "boards," and such information should be reasonably

13    available to MGA. Ms. Harris testified that Julie Chemo likely attended presentations during the

14    year 2000. Therefore, Mattel is entitled to an order compelling MGA to produce a witness to

15    provide complete testimony on Topic No. 11.

16    **Topic No. 13:** COMMUNICATIONS prior to June 30, 2001 between YOU and any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or any BRATZ DESIGN.

18    Mattel contends that Ms. Harris' testimony was wholly inadequate. In particular, Mattel

19    contends that Ms. Harris had no knowledge concerning early MGA communications with Bandai,

20    which distributed Bratz in the first market in which it was allegedly sold. Ms. Harris did not have

21    any knowledge or information as to when MGA and Bandai first had any type of contact or

22    communication regarding Bratz. Similarly, Ms. Harris did not have any knowledge or

23    information as to when MGA first had contact with a company called J.H.N. regarding the sale of

24    Bratz in Australia.

25    MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

26    Topic No. 13, as described above in connection with Topic No. 11. Accordingly, MGA objects to

27    any further examination on Topic No. 13.

28    A review of the deposition transcript confirms that Ms. Harris provided significant

EXHIBIT _____ 150

PAGE _____ 1923

1   testimony on Topic No. 13. However, as Mattel points out, her testimony lacked many details

2   relevant to when Bratz was developed. For example, Ms. Harris was unable to testify as to any

3   communications or negotiations between MGA and Bandai leading up to the execution of written

4   agreements. Indeed, Ms. Harris did not know when MGA and Bandia first had any contact

5   regarding Bratz. Furthermore, MGA did not conduct a reasonable investigation to prepare Ms.

6   Harris for Topic No. 13. Among other things, MGA made no effort to determine whether the

7   former MGA HK employee known to have been directly involved in the first discussions with

8   Bandai (Martin Hitch) had retained any documents responsive to this topic. Nor did Ms. Harris

9   speak to Isaac Larian and Jim Olmstead, both of whom authored emails referencing existing

10  distributorship deals in Europe and Australia. Therefore, Ms. Harris did not fulfill MGA's duty to

11  produce a witness to testify on information known or reasonably available to MGA. Mattel is

12  entitled to an order compelling MGA to produce a witness to provide complete testimony on

    Topic No. 13.

13      **Topic No. 14:** When and where BRATZ was first manufactured, shipped, distributed and
14      sold, and the IDENTITIES and roles of PERSONS involved therein.

15      Mattel contends that Ms. Harris did not have any knowledge regarding the identity or role

16  of any person who was involved in the first manufacture of Bratz dolls by Early Light. Mattel

17  also contends that Ms. Harris had no knowledge as to the date when manufacturing began for the

18  first Bratz dolls. Furthermore, Mattel contends that MGA should not be permitted to rely on the

19  testimony given by MGA HK's corporate designee to evade providing testimony on this topic

20  because that designee's testimony was deficient.

21      MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

22  Topic No. 14, as described above in connection with Topic No. 11. Accordingly, MGA objects to

23  any further examination on Topic No. 14.

24      A review of the deposition transcript confirms that Ms. Harris did not have any knowledge

25  regarding the identity or role of any person at MGA who first had contact with Early Light, the

26  first manufacturer of Bratz dolls. Nor did she know the identity of any person at MGA or at Early

27  Light who was involved in the first manufacture of Bratz dolls. Furthermore, Ms. Harris stated

28  that she did not undertake any investigation to uncover these facts. Ms. Harris also had no

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___150___

PAGE ___1929___

1   information or knowledge regarding the date when manufacturing began for the first Bratz dolls.

2   Ms. Harris testified that personnel in MGA's Hong Kong affiliate coordinated with Early Light.

3   Thus, the information sought by Mattel is reasonably available to MGA. That Mattel also seeks

4   testimony from MGA's Hong Kong affiliate does not excuse MGA from producing a witness

5   sufficiently knowledgeable on Topic No. 14. Therefore, Mattel is entitled to an order compelling

6   MGA to produce a witness to provide complete testimony on Topic No. 14.

7       **Topic No. 21:** YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ
        project-information and DESIGNS prior to June 30, 2001.

8       Mattel contends that Ms. Tonnu was not sufficiently prepared to provide testimony, as

9   evidenced by the fact that two other MGA employees, Paula Garcia and Margaret Leahy, testified

10  that they had "access" to non-public DIVA STARZ information.

11      MGA contends that Ms. Tonnu prepared for her deposition by speaking with five MGA

12  employees, including Paula Garcia. Based upon that investigation, Ms. Harris testified that the

13  five employees did not work on DIVA STARZ. MGA explains that Ms. Garcia merely testified

14  that when she was at Mattel she often spoke to co-workers at Mattel who happened to work on the

15  DIVA STARZ, that those co-workers may have mentioned the existence of the project and that

16  they told Ms. Garcia it was confidential. MGA contends that Ms. Garcia's testimony does not

17  establish "access to" DIVA STARZ information, but the opposite – that the employees did not

18  share details with Ms. Garcia and told her the project was confidential. MGA acknowledges,

19  however, that Ms. Garcia testified that on one occasion she saw a sketch of a DIVA STARZ

20  character.

21      Nevertheless, MGA represents that during the meet and confer process MGA designated

22  Ms. Tonnu to provide further testimony on Topic No. 21, and that she will be deposed on January

23  9, 2008. MGA represents that Ms. Tonnu will be prepared to testify whether each former Mattel

24  employee now employed by MGA had "access to" DIVA STARZ information while employed by

25  Mattel.

26      A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

27  prepared to testify on Topic No. 21. Ms. Tonnu did not know what DIVA STARZ was.

28  Furthermore, she was not sufficiently informed of the identities of the MGA employees and

9

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

150

EXHIBIT

PAGE        1925

1   contractors who had access to or worked on DIVA STARZ. For example, Ms. Tonnu was

2   uninformed of Ms. Garcia's and Ms. Leahy's knowledge and access to DIVA STARZ

3   information while employed by Mattel. Such information was known or reasonably available to

4   MGA. Therefore, Mattel is entitled to an order compelling MGA to produce a knowledgeable

5   witness to provide complete testimony on Topic No. 21.

6       **Topic No. 24:** Any indemnification and fee arrangement that YOU and/or BRYANT has

7   sought proposed, requested or obtained in connection with this ACTION.

8       Mattel contends that MGA's designee, Lisa Tonnu, was not sufficiently prepared to

9   testify, despite having been produced twice to testify on this topic. For example, Mattel points

10  out that Ms. Tonnu did not know why MGA agreed to pay Carter Bryant's attorneys' fees or how

11  much MGA had paid or whether Littler Mendelson's fees had been paid in full. Mattel's Motion

12  at pp. 14-15. Furthermore, Mattel points out that Ms. Tonnu did not make any effort to find out

13  the answers to these questions.

14      MGA contends that Ms. Tonnu substantially discharged MGA's obligation to provide

15  testimony in response to this topic. MGA contends that Ms. Tonnu reviewed responsive

16  documents and was able to identify the agreements in her deposition. Further, MGA contends

17  that Ms. Tonnu spoke to MGA's in-house counsel about the agreements and was able to identify

    the individuals involved in the negotiations of those agreements.

18      MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the

19  specifics of those negotiations or the terms of those agreements. MGA represents that prior to the

20  filing of this motion, it designated in-house counsel Sam Khare to provide additional testimony on

21  this topic and that Mattel will depose him on January 8, 2008.

22      A review of the deposition transcript confirms that Ms. Tonnu was not prepared to testify

23  as to information known or reasonably available to MGA. For example, Ms. Tonnu did not know

24  why MGA agreed to pay Bryant's fees, did not know how much MGA had paid in fees, and did

25  not know whether MGA had paid Littler Mendelson's fees in full. Accordingly, Mattel is entitled

26  to an order compelling MGA to produce a knowledgeable witness to provide complete testimony

27  on Topic No. 24.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___150___

PAGE ___1926___

1    **Topic No. 25:** YOUR revenues and profits from BRATZ, including without limitation, YOUR gross and net profits, and YOUR costs associated therewith.

2

3    Mattel contends that Ms. Tonnu lacked the most basic information called for by this topic.

     For example, Mattel contends that Ms. Tonnu testified that: she did not recall nor could she
4
     provide an estimate of how much distribution revenue MGA derived from the Bratz brand
5
     between 2001 and the end of 2006; she did not know and could not provide a best estimate for the
6
     episodic costs or production costs associated with the distribution revenue; she did not know who
7
     in the company could provide this information; she did not know and could not provide a range
8
     for how much licensing revenue MGA had received for licensing anything associated with the
9
     Bratz brand between 2001 and the end of 2006; she did not know and could not estimate how
10   much revenue the Bratz movie generated; she did not know how much revenue MGA had earned
11   from the Bratz brand; and she did not know how much profit MGA had generated from the Bratz
12   brand.

13       MGA contends that it substantially discharged its obligation to provide testimony on this
14   topic. More specifically, MGA contends that Ms. Tonnu testified with the aid of Exhibit 660, a
15   143-page report summarizing the units sold from 2001 to 2006 organized by "stock-keeping-unit"
16   or "SKU." MGA contends that Ms. Tonnu prepared for her deposition by speaking with MGA's
17   Director of Finance, Anisse Evans, regarding Exhibit 660.

18       In the meet and confer process, MGA's counsel offered to provide Mattel with source
19   information from which the profitability of Bratz products at the SKU level could be derived and
20   to produce Ms. Tonnu for follow-up testimony regarding that source financial information so that
21   Mattel's experts would be in a position to draw their own conclusions and opinions as to MGA's
22   profits from Bratz. MGA represents that Mattel has agreed to depose Tonnu on this topic on
23   January 9, 2008. MGA also represents that it has produced more than 27,700 pages of source
24   financial information that will be the "starting point" from which MGA's and Mattel's experts
25   will analyze the profitability of Bratz products. MGA represents that Ms. Tonnu will be prepared
     to discuss the source financial information produced to Mattel at her continued deposition.
26       A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently
27   prepared to provide testimony on Topic No. 25. Ms. Tonnu could not identify, generally or by

28
                                                                                              11
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)
                                          EXHIBIT ___150___

                                          PAGE ___1927___

1  product, Bratz revenues, costs, or gross or net profits. Furthermore, MGA has failed to provide

2  any explanation for why Ms. Tonnu was not educated on the source financial information before

3  her deposition. Accordingly, Mattel is entitled to an order compelling MGA to produce a

4  knowledgeable witness to provide complete testimony on Topic No. 25.

5        **Topic No. 27:** The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or

6  received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefore.

7

8        Ms. Cloonan was Carter Bryant's roommate at some point. Bryant testified that he

9  showed her early drawings prior to showing them to MGA. She is not and never has been an

10  employee of MGA.

11        Mattel contends that Ms. Harris' testimony was incomplete because she only searched for

12  evidence of payment by reviewing vendor files and MGA's electronic purchase order files, and

13  did not review the individual documents within each account payable vendor file. Mattel also

14  contends that Ms. Harris was not sufficiently prepared because she had no knowledge or

15  information as to who was paying her legal fees in this case.

16        MGA contends that it discharged its obligation to testify on Topic No. 27, emphasizing

17  that Ms. Harris unequivocally represented on behalf of MGA that MGA made no payments to,

18  had no agreements with and had no communications with Elise Cloonan. Furthermore, MGA

19  points out that Mattel took the deposition of Elise Cloonan on December 14, 2007, and she

20  confirmed that she had received no payments from and had no communications with MGA.

21        A review of the transcript confirms that Ms. Harris' preparation for and testimony

22  regarding Topic No. 27 was adequate. Furthermore, the burden and expense of conducting a

23  deposition on this topic substantially outweigh the potential relevance of the testimony sought.

24  Mattel's motion is denied with respect to Topic No. 27.

25        **Topic No. 28:** COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including

26  DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

27        Mattel contends that Ms. Harris's testimony was insufficient because she admitted she did

28  not have any knowledge or information as to what systems or hard drives in MGA were searched

12

Bryant v. Mattel, Inc.,
CV-04-09049 SOL (RNBx)

EXHIBIT ____ /50

PAGE ____ 1928

for e-mails referencing Elise Cloonan.

MGA contends that Mattel is not entitled to further examination on Topic No. 28 because Ms. Harris substantially discharged MGA's obligation to testify on the topic, as described above in reference to Topic No. 27 above.

A review of the transcript confirms that Ms. Harris' preparation for and testimony regarding Topic No. 28 was adequate. Furthermore, the burden and expense of conducting a deposition on this topic substantially outweigh the potential relevance of the testimony sought. Mattel's motion is denied with respect to Topic No. 28.

> **Topic No. 31:** The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services and the amount(s) paid by YOU to each such PERSON.

Mattel contends that the first time MGA produced Ms. Tonnu to testify, she lacked any personal knowledge regarding this topic and that MGA failed to educate her properly on the topic. Ms. Tonnu testified that she spoke to an accounts payable clerk, Ms. Brooks, who had "a list of vendors and the dates in which they were either employed or freelancing with Mattel, and she cross-referenced that in her research." Tonnu Tr. at 147:5-148:20. Mattel points out, however, that Ms. Tonnu testified that she did not know who prepared the list; did not see the criteria used to prepare the list; did not know who the vendors or freelance people were on the list; and did not know whether the list included all former Mattel employees who were working at MGA. MGA produced Ms. Tonnu for a second time regarding Topic No. 31, however, Mattel contends that she was still unprepared.

MGA contends that it has substantially discharged its obligation to provide testimony on this topic. MGA explains that Ms. Tonnu testified on this topic based on a review of MGA business records. MGA explains that to prepare for the deposition, it prepared a list of MGA employees who were former Mattel employees, including the dates each person was employed by Mattel. Next, Ms. Brooks searched MGA's accounting records reflecting payments to outside vendors for any evidence of a payment to a former Mattel employee on the list during the period of that person's Mattel employment, or with respect to work or services performed during that period. MGA contends that Ms. Tonnu testified about this search and the results of the search

1    leading to the identification of three instances of payments to former Mattel employees while the

2    employee was still at Mattel.

3          Nevertheless, MGA represents that prior to the filing of this motion, it designated Ms.

4    Tonnu to provide additional testimony on this topic. Specifically, MGA is prepared to produce

5    Ms. Tonnu to testify regarding whether former Mattel employees may have performed work or

6    services for MGA during their employment with Mattel without being paid for those services.

7    Ms. Tonnu's deposition is scheduled for January 9, 2008.

8          A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

9    prepared to testify on Topic No. 31. Notably, Ms. Tonnu admitted that she did not know whether

10   any person has at any time since 1998 performed work or services for MGA while that person

11   was a Mattel employee. Further, she testified that she did not speak with or ask any of the former

12   Mattel employees who were working at MGA whether they had provided work or services for

13   MGA while they were Mattel employees. Instead, Ms. Tonnu only knew whether or not

14   payments were made to the former Mattel employees while they were still employees of Mattel.

15   Furthermore, the list of former Mattel employees provided by Ms. Brooks was incomplete

16   because it did not include twelve former Mattel employees. Accordingly, Mattel is entitled to an

17   order compelling MGA to produce a witness to provide complete testimony on Topic No. 31.

18         **Topic No. 34:** Other than those previously filed and served in this ACTION or in which
     Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts,
19   declarations, affidavits and other sworn written statements of any other type by or from
     YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER
20   OR RELATE TO the time period prior to June 30, 2001 (regardless of when such
     testimony or sworn statement was taken, given, signed, made or filed).

21         Mattel contends that Mr. Woodman had not been adequately prepared for his deposition

22   and lacked the most basic knowledge on the topic. Mattel points out that Mr. Woodman had been

23   employed with MGA for less than one year and that his responsibilities had been limited to the

24   administration of licensing contracts and royalties. Further, Mattel contends that in preparation

25   for his deposition, Mr. Woodman "did no more than review a selection of sworn statements

26   previously made by others, review transcripts of Carter Bryant's deposition testimony, and speak

27   'for a few minutes' with one other person besides counsel." Mattel's Consolidated Separate

28   Statement, p.130.

                                                                          14

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                              EXHIBIT _____ 150

                              PAGE _____ 1930

1    Mattel also contends that Mr. Woodman was not sufficiently prepared to testify regarding

2    "sworn statements in MGA's many submissions to the Copyright Office or Patent and Trademark

3    Office," and sworn testimony from the "Art Attacks" trial. Id. Further, Mattel contends that

4    MGA's counsel improperly instructed Mr. Woodman not to answer certain questions on the basis

5    that Topic No. 34 did not include sworn statements made in connection with the "Art Attacks"

6    matter or statements made in various submissions to the Copyright Office or Patent and

7    Trademark Office. Counsel also instructed Mr. Woodman not to answer certain questions about

8    sworn statements that related to Topic No. 33 and statements that MGA believed did not

9    sufficiently relate to conduct prior to June 30, 2001. Topic No. 33 seeks testimony on

10   applications for registration and the registrations for copyright, patent, trademark or any other

11   right that refer or relate to Bratz or Bratz designs, sought, made or obtained by, for or on behalf of

     MGA or Bryant, including communications pertaining thereto.

12   MGA contends that Mattel is not entitled to any further testimony on this topic. MGA

13   explains that Mr. Woodman reviewed 30-50 sworn statements, read the transcript of the

14   depositions of Carter Bryant and Victoria O'Connor, MGA's former Vice President of Licensing,

15   and interviewed Leon Djiguerian in MGA's Product Development. MGA further asserts that Mr.

16   Woodman answered questions as to the completeness or incorrectness of many factual statements

17   contained in the sworn statements placed in front of him by Mattel's counsel. Thus, MGA

18   contends that Mattel obtained exactly the testimony it sought. In MGA's view, Mr. Woodman's

19   testimony regarding the correctness or incorrectness of factual statements identified from the

20   sworn statements is binding on MGA. MGA also contends that Mr. Woodman was not required

21   to investigate the preparation, review and approval of MGA's various sworn statements because

22   such information would be protected from disclosure by the attorney-client privilege and work

23   product doctrine.

24   MGA next contends that most of the documents shown to Mr. Woodman were not "sworn

25   statements," but rather (i) copyright registrations and certificates that include a statement that the

26   application is "correct to the best of my knowledge," (ii) certificates of registration issued by the

27   USPTO, and (iii) an office action summary by the USPTO. Nevertheless, MGA implicitly

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT ____150____

PAGE ____1931____

1    acknowledges that Mr. Woodman did not provide sufficient testimony as to certain applications

2    for registrations containing declarations by Isaac Larian documents (Exhibits 580-584, 590), a

3    declaration by Bryant (Exhibit 502), and an application and amendment referred to in the Bryant

4    declaration (Exhibits 500, 548), and one additional declaration by Isaac Larian, by agreeing to

5    produce Sam Khare to testify regarding these documents. Mattel is scheduled to depose Mr.

6    Khare on January 8, 2008.

7         MGA contends that prior counsel properly objected to certain questions as outside the

8    scope of Topic No. 34. In particular, MGA contends that questions directed at statements that did

9    not refer or relate to the time period prior to June 30, 2001 are outside the scope of Topic No. 34.

10    Further, MGA contends that where a sworn statement relates in part to the time period before

11    June 30, 2001, and in part to other time periods, the scope of Topic No. 34 is limited by its own

12    terms to that portion of the statement that relates to the specified time period. MGA also contends

13    that sworn testimony taken at the Art Attacks trial is outside the scope of Topic No. 34 because

14    Mattel's counsel was present at that trial.

15         MGA represents that its present counsel does not condone the instructions not to answer

16    made by prior counsel, and will not attempt to justify those instructions. Nevertheless, MGA

17    contends that Mattel was not deprived of any discoverable testimony by those instructions

18    because the disputed questions sought information outside the scope of Topic No. 34. More

19    specifically, MGA represents that each exhibit that was excluded from Mr. Woodman's testimony

20    on the grounds that it was not a "sworn statement" was the subject of examination of MGA's

21    designees on Topic No. 33, Bryan Armstrong and Sam Khare. MGA also contends that

22    resumption of a deposition on Topic No. 34 beyond what MGA has agreed to provide is

23    unwarranted because Mattel obtained two full days of 30(b)(6) testimony on Topic No. 33.

24         A review of the deposition transcript confirms that Mr. Woodman was not sufficiently

25    prepared to provide testimony on Topic No. 34. Mr. Woodman did no more than review the

26    sworn statements made by others and the transcripts of Carter Bryant's deposition. For the sworn

27    statements he did review, Mr. Woodman offered little information beyond what was apparent on

28    the face of the documents. For example, Mr. Woodman did not know who authorized submitting

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT ___150___

PAGE ___1932___

1    the sworn statement. Ultimately, Mr. Woodman only testified as to whether or not a particular

2    sworn statement was consistent with deposition testimony of Carter Bryant. Furthermore, Mr.

3    Woodman admitted that the testimony he gave had nothing to do with MGA's current beliefs, was

4    not based on any investigation, and had nothing to do with the actual correctness or incorrectness

5    of any of the sworn statements. Mr. Woodman admitted that no matter what inconsistencies

6    existed between Carter Bryant's testimony and MGA's sworn statements, Mr. Woodman always

7    presented Carter Bryant's testimony as to the facts as "true." Thus, Mr. Woodman failed to

8    testify as to information known or reasonably available to MGA. Mr. Woodman's lack of

9    preparedness alone justifies re-opening Topic No. 34. Furthermore, MGA cannot rely on blanket

     claims of privilege to preclude testimony on Topic No. 34.

10        A further deposition on Topic No. 34 is also justified in light of the admittedly improper

11   instructions not to answer, and MGA's acknowledgement that Mr. Woodman did not provide

12   testimony as to Exhibits 500, 502, 548, 580-584, 590. MGA shall abide by its agreement to

13   produce a witness to testify on these exhibits.

14        MGA's interpretation of Topic No. 34 as excluding statements not made under oath or

15   penalty of perjury, and as excluding any portion of a statement under oath that does not refer or

16   relate to the time period prior to June 30, 2001, is overly technical. There is, however, a clear

17   overlap between Topic No. 34 and Topic No. 33, which is not at issue in this motion. When the

18   deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide

19   further testimony on statements that were the subject of examination of MGA's designees on

20   Topic No. 33.

21        MGA's interpretation of Topic No. 34 as excluding testimony from the Art Attacks trial is

22   appropriate. Mattel does not contest that its counsel attended the Art Attacks trial. Topic No. 34

23   clearly excludes any proceeding attended by Mattel's counsel. When the deposition on Topic No.

24   34 is resumed, MGA's corporate designee is not required to provide further testimony with

25   respect to the Art Attacks trial.

26        **Topic No. 39:** The preservation, collection, destruction, removal, transfer, loss or
     impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with
27   the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

28                                                                                          17

EXHIBIT ___150___

PAGE ___1933___

1        MGA designated two individuals to testify on this topic:  Kenneth Lockhart to testify on

2   electronic evidence; and Lisa Tonnu, to testify on documentary evidence.  Mattel contends that

3   both designees were unable to provide substantive testimony.

4        Mattel points out that Mr. Lockhart did not know whether the MGA's "PST files" had

5   been searched; whether e-mails had been deleted from the exchange mailbox between late 2004

6   and the present; whether MGA's "snap servers" had been searched; whether keywords were used

7   to search "PST" files; and what user files were searched.  Further, Mattel contends that Mr.

8   Lockhart was not aware of the location of any hard drive or any image of any hard drive that had

9   been preserved for litigation purposes.

10        MGA contends that Mr. Lockhart substantially discharged MGA's obligation on Topic 39

11   with respect to electronic documents.  MGA represents that Mr. Lockhart prepared extensively for

12   his testimony by speaking with various individuals and that he testified at length about the

13   configuration of MGA's computer systems and MGA's policies, practices and procedures for the

   retention and preservation of electronic documents.

14        Nevertheless, MGA is willing to produce a witness to testify on its behalf regarding the

15   collection of electronic documents in connection with this action in order to shore up the one area

16   of Mr. Lockhart's testimony that MGA agrees was lacking.

17        As for Ms. Tonnu, Mattel contends that MGA made no discernible effort to educate her

18   concerning the topic.  Ms. Tonnu testified that she did not know whether MGA has a document

19   retention policy.  Mattel also contends that MGA's counsel instructed Ms. Tonnu not to answer

20   any questions about MGA's preservation and collection of documents based upon unfounded

21   claims of attorney-client privilege.[2]

22        MGA produced Ms. Tonnu a second time to testify on Topic No. 39, however Mattel

23   contends that her testimony remained deficient.  For example, Ms. Tonnu testified that she

24   prepared for the deposition by speaking with Rich Daniels, MGA's counsel, and by reviewing a

25   //

26

27      [2] The instructions not to answer are discussed in a separate section of this Order.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT _____ 150 _____

PAGE _____ 1934 _____

1   declaration prepared by Daphne Gronich, MGA's General Counsel on the subject of document

2   preservation. Mattel points out, however, that Ms. Tonnu never spoke with Ms. Gronich, and

3   therefore was unable to provide any information beyond what was stated in the four corners of the

4   declaration. In particular, Mattel contends that Ms. Tonnu did not know whether any documents

5   at the MGA campus had been searched for responsive documents. Nor did Ms. Tonnu know what

6   documents were stored at MGA's three off-site facilities and could not confirm whether they had

7   been searched for documents responsive to Mattel's requests.

8         MGA contends that Ms. Tonnu testified fully and completely regarding MGA's

9   preservation of documents in connection with this action. Indeed, MGA contends that the

10   Gronich declaration, which had already been provided to Mattel, contains detailed information

11   regarding MGA's document preservation efforts. MGA also points out that Tonnu testified,

12   based on her investigation and MGA's general policy (that documents generated by employees in

13   the ordinary course of business should not be destroyed and the wide distribution of document

14   preservation notices to MGA employees), that MGA did not knowingly destroy any documents

    potentially relevant to this action.

15         MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the actual

16   collection of documents for production in this action. MGA represents that it is willing to

17   produce an additional witness to discuss the collection of hard copy and electronic documents in

18   connection with this action.

19         A review of the deposition transcripts confirms that MGA's witnesses provided a

20   significant amount of testimony on this topic, and in particular regarding document preservation.

21   The one area where they were glaringly deficient was regarding document "collection."

22   Accordingly, MGA is ordered to abide by its agreement to produce a witness to testify further

23   with respect to the "collection" of hard copy and electronic documents. In all other respects,

24   MGA is in substantial compliance with Topic No. 39, and the burden and expense of re-opening a

25   deposition on the entirety of Topic No. 39 outweighs the likely benefit of the testimony Mattel

26   seeks.

27       **Topic No. 40:** The preservation, collection, destruction, removal, transfer, loss or

28

EXHIBIT _____ 150

PAGE _____ 1935

1   impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that

2   REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan

3   or information) that YOU received in any manner from any PERSON who was at the time an

4   employee of MATTEL or who had previously been an employee of MATTEL.

5       This topic appears to be based, at least in part, upon Mattel's allegations that former

6   Mattel employee Ron Brawer, former Mattel employees in Mattel's offices in Mexico; and a

7   former Mattel employee located in Canada improperly provided MGA with documents containing

8   Mattel trade secrets.

9       Mattel contends that MGA made no discernible effort to educate Ms. Tonnu on Topic No.

10  40, and therefore she was unable to answer whether MGA has or has had in its possession any (1)

11  Mattel strategic plans, (2) any sales or profit information of Mattel, (3) any documents related to

12  Mattel's advertising strategy, (4) any documents relating to the results of Mattel's advertising, (5)

13  documents related to Mattel's pre-release line lists, and (6) documents related to Mattel's strategy

14  with respect to specific customers. MGA produced Ms. Tonnu a second time, however, Mattel

15  contends that her testimony remained deficient. In particular, Mattel complains that MGA spoke

16  with only two former employees about the documents described above, when there are many

17  more former Mattel employees working at MGA.

18      MGA contends that Ms. Tonnu spoke with the three individuals at MGA who would be

19  most knowledgeable about the allegations against MGA and testified as to any documents they

20  brought with them from Mattel: Ron Brawer, Susana Kuemmerle and Janine Brisbois. MGA

    contends that Ms. Tonnu's preparation to testify on Topic 40 was reasonable.

21      Nevertheless, MGA represents that it has agreed to provide additional testimony through

22  Ms. Tonnu to address Mattel's concerns, and that her deposition will take place on January 9,

23  2008.

24      A review of the deposition transcript indicates that Ms. Tonnu did not prepare sufficiently

25  for her testimony. Ms. Tonnu spoke to only three individuals. Clearly, there are far more sources

26  of information reasonably available to MGA, namely the many more former Mattel employees

27  now employed at MGA. MGA made no effort to determine what Mattel documents, if any, these

28

                                                                                    20

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 150

PAGE _____ 1936

1   individuals possess. Therefore, Mattel is entitled to an order compelling MGA to produce a

2   witness to provide complete testimony on Topic No. 40.

3       **Topic No. 41:** The testing or sampling from DOCUMENTS that REFER OR RELATE
        TO BRATZ or BRYANT, including without limitation such testing or sampling in
4       connection with any ink, paper or chemical analysis performed or attempted to be
        performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results
5       and reports relating thereto.

6       Mattel deposed Ms. Tonnu on this topic on two separate occasions. Mattel contends that

7   in each instance, she was unprepared to given any meaningful testimony regarding any ink, paper

8   or chemistry testing performed on Bratz documents. In particular, Mattel contends that Ms.

9   Tonnu's preparation for her deposition was inadequate because she did not speak to the MGA

10  litigation consultant who performed the testing, Mr. Speckin, but merely read his declaration.

11      Furthermore, Mattel contends that MGA's counsel improperly instructed Ms. Tonnu not to

12  answer questions based upon unfounded claims of work product protection. Mattel explains that

13  it is not seeking information concerning Mr. Speckin's opinions or the results of his test on Bratz

14  documents. Instead, Mattel contends that it is seeking factual information concerning the

15  handling and shipment of original Bratz documents, as well as the specific documents that were

16  tested. In Mattel's view, the factual circumstances surrounding Mr. Speckin's testing are not

17  protected from discovery by the work-product doctrine.

18      Moreover, Mattel contends that MGA provided Mattel's counsel with a list identifying the

19  documents that Mr. Speckin tested and allowed Ms. Tonnu to testify about the identification of

20  documents, thereby waiving any work product protection with respect to the identification of

21  documents. Mattel also contends that Mr. Speckin's declaration, which was submitted in the

22  case, already discloses the types of tests conducted and therefore any privilege that may have

23  applied has been waived with respect to this subject.

24      MGA contends that it complied with this topic and that Mattel is not entitled to any further

25  examination because further questioning about the testing performed by Mr. Speckin would

26  violate MGA's attorney work product protection. Mr. Speckin is one of MGA's non-testifying

27  experts. MGA objects to any further questioning regarding Mr. Speckin's selection of which

28  documents to test, how the documents were handled, which tests were performed on the

21

EXHIBIT ___150___

PAGE ___1937___

documents, how they were shipped and how they were stored. MGA contends that further questioning on these subjects would necessarily reveal the mental impressions, legal theories, and conclusions of MGA's counsel and its non-testifying experts formed in anticipation of litigation with Mattel. Further, MGA contends that Mattel has not carried its heavy burden to demonstrate the "exceptional circumstances" required to invade MGA's work product.

A review of the deposition transcript confirms that Ms. Tonnu was not reasonably prepared to testify on Topic No. 41. Ms. Tonnu did not speak with Mr. Speckin or anyone involved in the testing. She had only read Mr. Speckin's declaration. Therefore, she clearly was not in a position to testify as to information known or reasonably available to MGA. On this basis alone, Mattel is entitled to an order compelling MGA to produce a witness to testify fully on Topic No. 41.

As for MGA's claims of work production protection, Judge Larson has already indicated that questions of privilege regarding the testing of the Bratz documents must be handled on a question-by-question basis. The questions at issue are set forth in Mattel's Separate Statement No. 2, and are discussed below in connection with Mattel's Request for Relief No. 4.

B. Mattel's Request for Relief No. 2: Mattel seeks an order overruling each of the purportedly improper instructions not to answer questions interposed at the deposition of MGA designees Spencer Woodman (Instruction Nos. 46-57) and compelling Woodman or other such person selected by MGA as its designee to provide complete testimony on Topic No. 34.

Mattel identifies each instance of allegedly improper instructions in its Separate Statement No. 2. In each instance identified by Mattel, MGA's counsel instructed the witness not to answer questions about matters that counsel believed exceeded the scope of the deposition. The instructions not to answer were not based upon a claim of privilege, and therefore were clearly improper.

Furthermore, as stated previously, MGA has acknowledged that some questions fell within the scope of Topic No. 34 and should be answered. To that end, MGA has agreed to produce a corporate designee to provide supplemental testimony as to Exhibits 500, 502, 548, 580-584, 590. MGA shall abide by its agreement to produce a witness to testify on these exhibits.

Nevertheless, many of the questions identified in the Separate Statement No. 2 for which

22

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___ 150
PAGE ___ 1938

1  an improper instruction not to answer was given clearly exceeded the scope of the deposition

2  notice. MGA is not required to provide further testimony as to those questions. For example, the

3  question regarding the Art Attacks trial that Mattel's counsel attended (Instruction No. 46) exceed

4  the scope of Topic No. 34, and do not require any further testimony. MGA is also not required to

5  provide further testimony as to documents that have been the subject of questioning during the

6  30(b)(6) deposition on Topic No. 33.[3]

7  C. Mattel's Request for Relief No. 3: Mattel seeks an order compelling MGA to produce
   documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition
8  as documents which he reviewed and relied upon to refresh his recollection in preparation for his
   deposition.

9       Mattel seeks an order compelling MGA to produce documents that Mr. Lockhart

10  identified during his deposition as documents which he reviewed and relied upon to refresh his

11  recollection in preparation for his deposition.

12      MGA contends that the documents Mattel seeks are privileged e-mail communications

13  from MGA's General Counsel to MGA employees regarding their document preservation

14  obligations in light of the present action. MGA contends that its privilege log demonstrates that

15  the documents are protected by both the attorney-client privilege and the work product doctrine.

16  Furthermore, MGA contends that Mr. Lockhart was required to review the privileged emails

17  because they related to MGA's preservation of documents in connection with this action and they

18  were reasonably available to MGA.

19      Moreover, MGA contends that waiver of the attorney-client privilege and work product

20  doctrine is not automatic where a witness refreshes his recollection with privileged prior to a

21  deposition. In re Managed Care Litig., 415 F.Supp.2d 1378 (S.D. Fla. 2006); Medtronic Xomed,

22  Inc. v. Gyrus ENT LLC, 2006 WL 786425, at *1, 3, 6-7 (M.D. Fla. March 27, 2006).

23      MGA's bare bones privilege log, unaccompanied by any supporting declarations, is

24  insufficient to establish the attorney-client privilege and the work product doctrine. Further,

25  although there appears to be a split in authority, the weight of authority supports a finding of

26

27  [3] MGA represents that virtually all of the questioning quoted in Mattel's Separate Statement No. 2 at
    Instruction Nos. 47-57 was covered in the deposition on Topic No. 33. However, MGA's representation cannot be
    confirmed by the excerpts of the deposition transcript submitted in connection with this motion.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

23

EXHIBIT _____ 150

PAGE _____ 1939

1   waiver.  See e.g. United States ex rel. Bagley v. TRW Inc., 212 F.R.D. 554, 565-566 (C.D. Cal.

2   2003) (requiring disclosure of documents reviewed by relator in preparing for his deposition

3   based upon waiver of work product protection); U.S. v. 22.80 Acres of Land, 107 F.R.D. 25-26

4   (N.D. Cal. 1985) (work product waived where deponents used documents to refresh recollection);

5   Ehrlich v. Howe, 848 F.Supp. 482, 493 (S.D. N.Y. 1994) ("when [c]onfronted with the conflict

6   between the command of Rule 612 to disclose materials used to refresh recollection and the

7   protection afforded by the attorney-client privilege . . . the weight of the authority holds that the

8   privilege is waived."); Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D. D.C.

9   1980) ("[I]t is apparent that once a document is used to refresh the recollection of a witness,

10  privileges as to that document have been waived.").

11          Furthermore, the interests of justice compel production of the e-mail documents used by

12  Mr. Lockhart to refresh his recollection.  MGA acknowledges that Mr. Lockhart was required to

13  review the e-mails because they related to MGA's preservation of documents.  Mr. Lockart

14  testified that the e-mails refreshed his recollection as to what MGA employees had been requested

15  to preserve.  Accordingly, MGA is ordered to produce the e-mails reference in Mr. Lockhart's

    deposition.

16  D. Mattel's Request for Relief No. 4.  Mattel seeks an order overruling each of the purportedly
    improper instructions not to answer questions interposed at the deposition of MGA designee Lisa
17  Tonmu.

18          In Mattel's Separate Statement No. 2, Mattel identifies each purported instance of

19  improper objections and/or instructions not to answer for which it seeks a ruling.  Each instance

20  of allegedly improper conduct is discussed below.

21

22                                  Instruction Nos. 1-5

23          Mattel's counsel posed a series of questions regarding Mr. Larian's trusts.  In each

24  instance, MGA's counsel instructed Ms. Tonnu not to answer.  MGA's counsel objected to the

25  question on privilege and privacy grounds, and objected that the question exceeded the scope of

26  deposition.

27          The privilege objections are overruled because MGA has failed to establish the requisite

28                                                                                          24

EXHIBIT ____ 150

PAGE ____ 1940

1   elements of any applicable privilege. The privacy objections are overruled since there is a

2   protective order in place to address Mr. Larian's privacy concerns regarding his personal finances.

3   The remaining objections do not justify an instruction not to answer. See Fed.R.Civ.P. 30(c)(2)

4   (an objection must be noted on the record, but the examination still proceeds and the testimony is

5   taken subject to any objection). Accordingly, MGA shall produce a knowledgeable 30(b)(6)

6   designee to provide complete responses to the questions identified in Mattel's Separate Statement

7   No. 2 as Instruction Nos. 1-5.

### Instruction No. 6

8   In this excerpt, the witness wanted to clarify her testimony regarding voucher payments,

9   which prompted Mattel's counsel to ask a series of questions about what prompted her make the

10  clarification, including "that's what counsel told you at the break?"; "[h]ow was your recollection

11  refreshed"; and "[d]id Mr. Jenal tell you what the dates were?" MGA's counsel objected on

12  privilege grounds and instructed the witness not to answer.

13      The objections are overruled. The attorney-client privilege protects an attorney's

14  communication of legal advice to his client, as well as the client's communication of information

15  to the attorney "to enable him to give sound and informed advice." Upjohn Co. v. United States,

16  449 U.S. 383, 390 (1981). In this instance, the question posed did not require the witness to

17  disclose the substance of an attorney-client communication. Instead, the questions posed called

18  for the disclosure of underlying facts to which Mattel is entitled. See Upjohn, supra at 395

19  (finding that the attorney-client privilege does not preclude disclosure of factual information and

20  that the privilege does not protect facts communicated to an attorney).

21      Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

22  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 6.

### Instruction Nos. 7-20 and 23

23  In each of these excerpts, Mattel's counsel posed questions regarding testing performed on

24  Bratz drawings. MGA's counsel objected to the questions based upon the work product doctrine

25  and instructed the witness not to answer.

26      The work product objections are overruled. The work product doctrine, now codified in

27

28

25

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___150___

PAGE ___1941___

1   part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection for

2   materials prepared by or at the behest of counsel in anticipation of litigation or for trial.  The party

3   claiming work product immunity has the burden of establishing its elements by competent

4   evidence.  In re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D. N.Y. 1996).

5        In the instant case, all of the questions posed to the witness take one of four forms: "do

6   you know whether" or "do you know who" or "do you know what" or "do you know why."  The

7   questions thus call for a simple "yes" or "no" response that did not require divulging any

8   information protected by the work product doctrine.

9        Even if the questions are construed to require substantive responses beyond "yes" or "no,"

10  the information sought is factual (what test was conducted, how documents were stored, whether

11  the documents were handled with cotton or latex gloves, who was with the expert when he

12  performed his tests, what precautions he took).  The questions do not require the witness to

13  divulge the mental impressions, the legal theories, or conclusions of Mr. Speckin.

14       Moreover, Rule 26(b)(4)(B), Fed.R.Civ.P., provides that a party may discover facts known

15  or opinions held by an non-testifying expert upon a showing of exceptional circumstances under

16  which it is impracticable for the party seeking discovery to obtain facts or opinions on the same

17  subject by other means.  In the instant case, there is no other practicable means for Mattel to

18  obtain information about the handling, shipping and testing of original Bratz documents while in

19  Mr. Speckin's possession.  Mr. Speckin is a non-testifying expert.  The manner in which Mr.

20  Speckin transported, analyzed, tested or otherwise used the original Bratz drawings is uniquely

21  within his knowledge and plainly relevant.  The original Bratz drawings are a key piece of

22  evidence in this case.  Mattel needs information concerning what, if any, changes, damage, or

23  other alterations were made to the original Bratz drawings.  Mattel is not seeking information

24  regarding Mr. Speckin's opinions or the results of his tests.  Rather, Mattel is seeking only

25  information regarding the handling of the original Bratz documents and more precise

26  identification information for the specific documents that were handled by Mr. Speckin.

27       MGA objects to providing information concerning Mr. Speckin's testing, the testing

28  conditions, the selection of which drawings to test and other logistics.  MGA, however, has

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

26

PAGE _____  150
                   1942

1   already disclosed the types of tests performed by Mr. Speckin in a declaration submitted to the

2   court, and has provided Mattel with a list identifying the documents that Mr. Speckin tested,

3   although the list did not identify the documents by Bates numbers. Therefore, MGA has waived

4   any work product protection to which it may have been entitled with respect to the identification

5   of the original Bratz drawings that were subjected to testing and which tests were performed.

6       Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

7   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 7-

8   20 and 23.

                            Instruction Nos. 21-22

9

10      In these excerpts, Mattel's counsel asked Ms. Tonnu whether she could identify or

11  describe any of the documents that were tested by Mr. Speckin. MGA's counsel objected to the

12  questions based upon the work product doctrine and instructed the witness not to answer

13  The objections are overruled. As discussed immediately above, the questions call for factual

14  information that is not protected by the work product doctrine. Even if the work product doctrine

15  applied, the protection has been waived. Furthermore, this case presents exceptional

16  circumstances under which it is impracticable for Mattel to obtain the information sought by other

17  means. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

18  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 21-
    22.

19
                            Instruction Nos. 24-26

20      In these excerpts, Mattel's counsel asked the witness (1) what Ms. Garcia told her about

21  Diva Starz and (2) whether Ms. Garcia told the witness she had access to Diva Starz information

22  while she was at Mattel. MGA's counsel objected to the questions to the extent the witness'

23  conversations with Ms. Garcia occurred in the presence of counsel and instructed the witness not

24  to answer.

25      The objections are overruled. The questions do not require the witness to divulge the

26  substance of any privileged communication. Instead, the questions call for factual information to

27  which Mattel is entitled.

28
                                                                        27
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

    EXHIBIT _____ 180

    PAGE _____ 1943

1   Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

2   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 24-

3   26.

4                                  Instruction No. 27

5       In this excerpt, Mattel's counsel asked the witness twice whether MGA had access to

6   Mattel internal information regarding Diva Starz prior to February 1st, 2000. MGA's counsel

7   made a speaking objection, which clearly violated Rule 30(c)(2), Fed.R.Civ.P. However, the

8   questions do not need to be repeated because the witness provided responses.

                                   Instruction No. 28
9
10      In this excerpt, Mattel's counsel asked, "MGA is denying that it had access to internal

11  information about Mattel's Diva Starz project prior to September 1st, 2000?" MGA's counsel

12  objected on the grounds that the question calls for a legal conclusion, calls for the disclosure of

13  privileged information, and exceeds the scope of the deposition. Counsel also instructed the

    witness not to answer.
14
15      The objections are overruled. The question does not call for a legal conclusion and MGA

    has failed to establish the elements of the attorney-client privilege.
16
17      Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

18  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 28.

                                  Instruction Nos. 29-34
19
20      In these excerpts, Mattel's counsel asked as series of questions regarding whether MGA

21  knew Mattel was considering using the name "Brats" and "Boyz" in connection with the Diva

22  Starz project and whether MGA knew Mr. Linker worked on the project. MGA's counsel made

23  several objections including the following: assumes facts not in evidence; misstates the witness'

24  prior testimony; compound; outside the scope of the deposition; improper as to form; lacks

25  foundation; vague and ambiguous; calls for speculation; argumentative; and asked and answered.

26  MGA's counsel objected to one question (Instruction No. 30) on the additional ground that it may

27  call for attorney-client communications. MGA's counsel also instructed the witness not to

28  answer.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

28

EXHIBIT _____150_____

PAGE _____1944_____

1    The repeated instructions not to answer were clearly improper. Accordingly, MGA shall

2  produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

3  identified in Mattel's Separate Statement No. 2 as Instruction Nos. 29-34.

### Instruction No. 35

4

5    In this excerpt, the witness indicated that she did not know whether Mr. Linker worked on

6  the Bratz project. Mattel's counsel then asked, "But you don't know one way or the other?"

7  MGA's counsel objected to the question, asserting that it had been asked and answered and was

8  argumentative. MGA's counsel also instructed the witness not to answer.

9    The instruction not to answer was clearly improper. Accordingly, MGA shall produce a

10  knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in

11  Mattel's Separate Statement No. 2 as Instruction No. 35.

### Instruction No. 36

12    In this excerpt, Mattel's counsel asked, "Did you have a conversation with Mr. Jenal about

13  the net worth or the valuation of the company?" MGA's counsel objected on privilege grounds

14  and instructed the witness not to answer.

15    The objection is overruled. The question calls for a "yes" or "no" answer and does not

16  require the witness to divulge the substance of a privileged communication.

17    Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

18  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 36.

### Instruction No. 37

19

20    In this excerpt, Mattel's counsel asked, "What did Mr. Daniels tell you about the net worth

21  or valuation of the company?" MGA's counsel objected on privilege grounds.

22    The objection is sustained. As phrased, the question potentially calls for the disclosure of

23  the substance of a privileged communication.

### Instruction Nos. 38-40

24

25    In these excerpts, MGA's counsel instructed the witness not to answer. The instruction

26  was not based upon a claim of privilege, and therefore was improper. MGA's counsel also made

27  an improper speaking objection. Accordingly, MGA shall produce a knowledgeable 30(b)(6)

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

29

EXHIBIT ___150___

PAGE ___1945___

1  designee to provide complete responses to the questions identified in Mattel's Separate Statement

2  No. 2 as Instruction Nos. 38-40.

3  <div align="center">Instruction No. 41</div>

4  In this excerpt, Mattel's counsel asked the witness to identify the litigation for which

5  Exhibit 660 was prepared. MGA's counsel objected to the question as calling for work product

6  and instructed the witness not to answer.

7  The work product objection is overruled. The question calls for the disclosure of facts, not

8  work product. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide

9  complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction

10  No. 41.

11  <div align="center">Instruction Nos. 42-44</div>

12  In these excerpts, Mattel's counsel posed more questions about the litigation for which

13  Exhibit 660 was prepared, including the identity of the parties to the litigation and whether the

14  litigation was ongoing. MGA's counsel objected on privilege and work product grounds.

15  The objections are overruled. The questions call for the disclosure of facts, not work

16  product. Further, MGA has failed to establish that the questions require the witness to disclose

17  the substance of a privileged communication. Accordingly, MGA shall produce a knowledgeable

18  30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate

19  Statement No. 2 as Instruction Nos. 42-44.

20  <div align="center">Instruction No. 45</div>

21  In this excerpt, Mattel's counsel asked whether an attorney by the name of Mr. Daniels

22  wrote a document. The work product objection by MGA's counsel is overruled. The "yes" or

23  "no" question calls for the disclosure of facts, not work product. Accordingly, MGA shall

24  produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

25  identified in Mattel's Separate Statement No. 2 as Instruction No. 45.

E. Mattel's Request for Relief No. 5: Mattel seeks an order reopening the deposition of MGA designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written "changes" to her deposition transcript.

26  Ms. Tonnu made changes to her deposition transcript after her deposition was completed.

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

30

EXHIBIT    150

PAGE    1946

1   Counsel asked Ms. Tonnu whether any documents had been collected from MGA's Filenet

2   storage facility, to which she responded "no"; whether Mr. Daniels told her that he was going to

3   collect documents from Filenet, to which she responded "yes"; and whether the documents at

4   Filenet contained any documents responsive to Mattel's request, to which she responded "no."

5   Later, Ms. Tonnu revised her deposition transcript and reversed each of her answers.

6       Mattel contends that Ms. Tonnu's initial answers in the negative precluded a line of

7   questioning into, for example, who collected documents, which documents were collected and

8   how.

9       MGA contends that the changes Ms. Tonnu made do not justify re-opening a deposition.

10  Nevertheless, MGA has no objection to follow-up questions about Ms. Tonnu's revision when she

11  is deposed again in January.

12      In light of MGA's lack of opposition, MGA shall make Ms. Tonnu available for follow-up

13  questioning regarding the revisions to her deposition testimony.

14  F. Mattel's Request for Relief No. 6:  Mattel seeks an order compelling Rebecca Harris to sit for
    the completion of her deposition and/or compelling such person selected by MGA as its designee
    to complete the testimony on topics for which Harris was previously designated.

15      Mattel seeks an additional day to depose Ms. Harris.  Mattel contends that it needs more

16  than the 7-hours it has already deposed Ms. Harris to complete its questioning on all topics for

17  which she was designated.  Mattel emphasizes that Ms. Harris is designated to testify on nine

18  separate topics, each of which pertains to issues at the heart of the litigation, including the origin,

19  creation, design and development of Bratz prior to June 30, 2001; relevant contracts concerning

20  Carter Bryant and Bratz; payments made to Bryant and other financial information relating to

21  Bratz; and third parties who were involved in or otherwise have knowledge about the creation,

22  design and development of Bratz.

23      In addition to the topics already discussed above in Section "A" to this Order, Mattel

24  contends that it did not have sufficient time to depose Ms. Harris on Topic Nos. 19, 22 and 23,

25  which are set forth below:

26      **Topic No. 19:** Each agreement or contract between YOU and any PERSON other than
        BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that REFERS
27      OR RELATES to the time period prior to December 31, 2001 (regardless of when such
        agreement or contract was negotiated or executed), including without limitation the timing
28      thereof, the negotiations, drafts and COMMUNICATIONS that REFER OR RELATE

31

EXHIBIT _____ 150

PAGE _____ 1947

1    thereto, and any actual or proposed amendments thereto.

2    **Topic No. 22:** The payment of money or anything of value by or for YOU or on YOUR
     behalf that has been made to, for or on behalf of BRYANT (a) for work, services or
3    activities performed by BRYANT prior to January 1, 2001 (regardless of when such
     payment was actually made), (2) for DESIGNS CREATED by BRYANT prior to January
4    1, 2001 (regardless of when such payment was actually made) or (c) in connection with
     BRATZ or any BRATZ DESIGN at any time, including amount(s) thereof and the reasons
5    therefore,

6    **Topic No. 23:** The payment of royalties to, for or on behalf or BRYANT made by or for
     YOU or on YOUR behalf, including the timing, manner and amounts of such payments
7    and the reasons therefore.

8    MGA contends that Mattel has not made the required showing that additional time is "needed to

9    fairly examine the deponent" or that "the deponent, another person, or any other circumstance

10   impedes or delays the examination." Fed.R.Civ.P. 30(d)(1). Furthermore, MGA contends that

11   Mattel wasted much of the 7-hours with Ms. Harris by asking questions outside the topics for

12   which she was designated and badgering the witness.

13       As discussed already above, Ms. Harris was not sufficiently prepared to testify on several

14   topics and did not discharge MGA's duty to produce a witness to testify as to information known

15   or reasonably available to MGA. Her lack of preparedness alone justifies additional deposition

16   time. The relatively large number of topics for which Ms. Harris was designated (Topic Nos. 11,

17   13, 14, 19, 21, 22, 23, 27 and 28), also justifies additional deposition time to enable Mattel to

18   fairly examine the deponent. Many of the topics for which Ms. Harris was designated are highly

19   relevant to the case. Mattel has identified a few instances where Mattel was inefficient in

20   conducting her deposition; however, the deposition generally proceeded at a reasonable pace.

21   Accordingly, Mattel is granted an additional four hours to complete the deposition of Ms. Harris

22   on all of the topics for which she was designated, except Topic Nos. 27 and 28 which were

     discussed previously.

23   G.  Mattel's Request for Relief No. 7:  Mattel seeks an order imposing sanctions for MGA's
     alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly
24   improper instructions not to answer deposition questions and for MGA's alleged improper
     coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa
25   Tonnu and at the October 9, 2007 deposition of Spencer Woodman in the amount of $10,000.

26       Sanctions are appropriate based upon MGA's failure to produce 30(b)(6) designees who

27   were reasonably prepared to testify on seven out of the sixteen topics at issue, namely Topic Nos.

28                                                                                              32

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 150

PAGE _____ 1948

1   21, 24, 25, 31, 34, 39 and 40.  By agreeing to provide supplemental testimony on these topics,

2   MGA implicitly acknowledges that the witnesses provided insufficient testimony.  Further,

3   MGA's counsel also repeatedly flouted Rule 30(c)(2), Fed.R.Civ.P., and prior orders prohibiting

4   instructions not to answer for reasons other than privilege.  Accordingly, pursuant to Rule

5   30(d)(2) and 37(b), Fed.R.Civ.P., sanctions are imposed in the amount of $6,000.

6   H.  Mattel's Request for Relief No. 8:  Mattel seeks a report and recommendation to Judge
    Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts
7   related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for
    MGA's allegedly willful and repeated violations of the Orders.

8          As previously stated at the December 14, 2007 hearing, it is premature to consider

9   preclusion sanctions and contempt at this time.  If Mattel intends to pursue such sanctions, it may

10  do so only after the close of Phase 1 discovery.

11                                    V. CONCLUSION

12         For the reasons set forth above, it is hereby ordered as follows:

13         1.     No later than January 30, 2008, MGA shall produce witnesses who are prepared to

14  testify about information known or reasonably available to MGA in accordance with Rule

15  30(b)(6), Fed.R.Civ.P., and to provide complete testimony on the following topics as specified

16  herein:  Topic Nos. 11, 13, 14, 19, 21-25, 31, 34 (with limitations noted herein) 39 (with

17  limitations noted herein), 40 and 41.  Mattel's motion is denied as to Topic Nos. 27 and 28.

18         2.     MGA's 30(b)(6) designee Spencer Woodman shall provide full and complete

19  responses to each of the questions identified in Mattel's Separate Statement No. 2 that are

20  identified herein as requiring a further response because the objections have been overruled

21  and/or the instructions not to answer have been found improper, and the question seeks relevant

22  and privileged information to which Mattel is entitled.

23         3.     MGA shall produce the e-mails that MGA designee Kenneth Lockhart identified

24  during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh

25  his recollection in preparation for his deposition.  Mattel is also permitted to conduct reasonable

    follow-up questioning regarding those documents.

26         4.     MGA's 30(b)(6) designee Lisa Tonnu shall provide full and complete responses to

27  each of the questions identified in Mattel's Separate Statement No. 2 that are identified herein as

28                                                                                    33

    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ____150____

PAGE ____1949____

1   requiring a further response because the objections have been overruled and/or the instructions
2   not to answer have been found improper, and the question seeks relevant information to which
3   Mattel is entitled.
4        5.      In addition to the deposition testimony authorized above, Mattel is granted leave to
5   depose Ms. Tonnu regarding the changes she made to her deposition transcript.
6        6.      Mattel is granted additional time to complete a full and fair examination of Ms.
7   Harris on all of the topics for which she was designated, except Topic Nos. 27 and 28. The
8   deposition of Ms. Harris shall not exceed four (4) hours.
9        7.      Mattel's request for monetary sanctions is granted in part pursuant to Fed.R.Civ.P.
10  37(b). MGA shall pay sanctions in the amount of $6,000 no later than February 11, 2008.
11       8.      Mattel's request for preclusion sanctions and/or a finding of contempt is denied
12  without prejudice.
13       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
14  Master, Mattel shall file this Order with the Clerk of Court forthwith.
15
16  Dated: January 8, 2008
17
                              HON. EDWARD A. INFANTE (Ret.)
                                    Discovery Master
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT ___150___

PAGE ___1950___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 9, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; TO OVERRULE PURPORTEDLY IMPROPER INSTRUCTIONS; AND FOR SANCTIONS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 9, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT _____ 152

PAGE _____ 1951

EXHIBIT 151

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 152

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 153

## CONFORMED COPY



1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7                       UNITED STATES DISTRICT COURT

8                       CENTRAL DISTRICT OF CALIFORNIA

9                              EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12         Plaintiff,

13     v.                                  Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15         Defendant.                      ORDER GRANTING IN PART
                                           MATTEL'S MOTION TO ENFORCE
16                                         THE COURT'S ORDER OF MAY 16,
                                           2007, TO COMPEL MGA TO
17                                         PRODUCE WITNESSES FOR
                                           DEPOSITION PURSUANT TO RULE
18                                         30(b)(6), AND GRANTING REQUEST
                                           FOR SANCTIONS
19

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23

24

25                           I. INTRODUCTION

26      On June 29, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Enforce The Court's

27  Order of May 16, 2007, To Compel MGA To Produce Witnesses For Deposition Pursuant To

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                    8/15

                          EXHIBIT _____153_____

                          PAGE _____1928_____

1   Rule 30(b)(6), And For Sanctions."[1]  On July 9, 2007, MGA Entertainment, Inc. ("MGA")

2   submitted an opposition brief, and on July 12, 2007, Mattel submitted a reply brief.  The matter

3   was heard on August 13, 2007.  Although the scope of Mattel's motion was broader[2], during the

4   hearing, Mattel requested an order compelling MGA to designate and produce witnesses on Topic

5   Nos. 21, 25, 26, and 34 and imposing sanctions for MGA's alleged non-compliance with the May

6   16, 2007 Order, particularly with respect to Topic Nos. 25, 26, 34, 39, 40 and 41.  Having

7   considered the motion papers and the comments of counsel at the hearing, Mattel's motion is

8   granted in part.

## II. BACKGROUND

9

10  On May 16, 2007, the undersigned issued an order granting Mattel's Motion to Compel

11  MGA To Produce Witnesses Pursuant To Rule 30(b)(6) (hereinafter the "May 16, 2007 Order")
    which provided, in pertinent part:

12      2.      MGA shall confirm its designees and the dates of the designees' availability for

13          deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of

14          MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the "Second Notice") on or

15          before May 22, 2007.

16      3.      MGA shall make its designees for all Topics in the Second Notice, except Topics

17          Nos. 25 and 26, available for deposition on or before June 30, 2007.

18      4.      The parties shall meet and confer regarding the timing of the depositions on Topic

19          Nos. 25 and 26 of the Second Notice.  Such depositions may take place after June 30,

20          2007.

21      5.      All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule

22          30(b)(6) deposition notices are overruled.

23

24      [1]  Mattel seeks $3,000 in sanctions.

25      [2]  In its opening brief, Mattel focused on Topic Nos. 25, 26, 34, 39, 40 and 41 and requested an order requiring MGA to designate and produce witnesses on all Topics in Mattel's Second Notice of Deposition of MGA.

26  In its reply brief, Mattel requested an order requiring MGA to produce witnesses on Topic Nos. 11, 13, 14, 19, 21-28, 31, 34, 37 and 39-41.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

2

EXHIBIT  153

PAGE  1979

1    Proctor Decl., Ex. 1. The parties later agreed to extend the May 22, 2007 deadline for designating
2    witnesses to May 29, 2007.

3         After the May 16, 2007 Order was issued MGA designated and offered dates for some
4    Rule 30(b)(6) witnesses. Mattel accepted the dates, however, in the first week of June MGA
5    canceled the depositions of three designees. On June 7 and again on June 15, 2007, Mattel
6    requested that MGA provide new dates for the three designees.

7         The parties met and conferred on June 22, 2007. MGA offered designees and deposition
8    dates for 14 of the outstanding Topics. Although all but one of the dates that MGA proposed
9    were after the June 30, 2007 deadline, Mattel accepted MGA's schedule. MGA did not, however,
10   identify or produce witnesses to testify on Topics 25, 26, 34 and 39-41, which are the subject of
     the instant motion. These Topics are set forth below.

11        Topic 25: YOUR revenues and profits from BRATZ, including without limitation
12        YOUR gross and net profits, and YOUR costs associated therewith.

13        Topic 26: YOUR net worth.

14        Topic 34: Other than those previously filed and served in this ACTION or in
15        which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,
16        transcripts, declarations, affidavits and other sworn written statements of any
17        other type by or from YOU or made on YOUR behalf that REFER OR RELATE
18        TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30,
19        2001 (regardless of when such testimony or sworn statement was taken, given,
20        signed, made or filed).

21        Topic 39: The preservation, collection, destruction, removal, transfer, loss or
22        impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in
23        connection with the ACTION and/or any DOCUMENTS requested by MATTEL
24        in the ACTION.

25        Topic 40: The preservation, collection, destruction, removal, transfer, loss or
26        impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since
27        January 1, 1999 that REFER OR RELATE TO MATTEL (including without

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 153 [3]

PAGE _____ 1980

1    limitation any MATTEL product, plan or information) that YOU received in any

2    manner from any PERSON who was at the time an employee of MATTEL or who

3    had previously been an employee of MATTEL.

4    Topic 41: The testing of or sampling from DOCUMENTS that REFER OR

5    RELATE TO BRATZ or BRYANT, including without limitation such testing or

6    sampling in connection with any ink, paper or chemical analysis performed or

7    attempted to be performed to date, any DOCUMENTS that REFER OR RELATE

8    thereto and all results and reports relating thereto.

9  Mattel's Second Notice of Deposition, dated February 1, 2007, Proctor Decl., Ex. 6. During the

10  hearing, Mattel also requested an order compelling MGA to designate a witness and schedule a

11  deposition on Topic No. 21, which seeks:

12    Topic No. 21: YOUR knowledge of, and access to, non-public MATTEL DIVA

13    STARTZ project information and DESIGNS prior to June 30, 2001.

14  Mattel's Second Notice of Deposition, dated February 1, 2007, Proctor Decl., Ex. 6.

15    MGA indicated that Lisa Tonnu would "likely" be its designee on Topic Nos. 25 and 26,

16  but did not offer a date for her deposition because it was awaiting a ruling from Judge Larson

17  regarding the phasing of trials. MGA also did not designate a witness on Topic Nos. 26, 34 and

18  41 because it was in the process of appealing the May 16, 2007 Order as it pertained to these

19  topics to Judge Larson.[3] MGA similarly did not designate a witness on Topic No. 40 because it

20  was awaiting a ruling from Judge Larson on its pending motion to dismiss Mattel's counterclaims.

21  MGA's motion to dismiss was based, in part, on Mattel's purported failure to comply with

22  California Code of Civil Procedure §2019.210. Apparently, MGA thought that the need for

23  discovery on Topic No. 40 might be obviated if it prevailed on its motion to dismiss.

24

25

26    _____

      [3] MGA filed its Objection to the May 16, 2007 Order on May 31, 2007.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT _____ 153[4]

PAGE _____ 1981

1   MGA also did not designate a witness on the entirety of Topic No. 39. Earlier in June

2   MGA produced Kenneth Lockhart to testify on Topic No. 39. At the deposition, however,

3   Lockhart testified that he had no knowledge regarding MGA's collection of non-electronic

4   documents, a subject within the scope of Topic No. 39. Mattel asked MGA to identify another

5   witness to testify regarding the collection of non-electronic documents. MGA apparently refused

6   to do so because it believed Mattel had agreed to limit Topic No. 39 to exclude that issue.

7       By the end of June 2007, MGA had made only two Rule 30(b)(6) witnesses available for

8   deposition pursuant to the May 16, 2007 Order: Kenneth Lockhart and Paula Garcia. Mattel's

9   Motion at p.3.[4]

10      On June 26, 2007, Judge Larson issued a Minute Order scheduling MGA's appeal of the

11  May 16, 2007 Order for hearing on July 2, 2007. On June 27, 2007, Judge Larson issued an order

12  denying MGA's motion to dismiss, and Mattel renewed its request that MGA produce a witness

13  to testify on Topic No. 40. The next day MGA responded that it intended to identify a designee

14  and dates for a deposition by the end of the week.

15      On June 29, 2007, Mattel filed the instant motion. On July 5, 2007, Judge Larson issued

16  an order affirming the May 16, 2007 Order. That same day MGA confirmed the date and its

17  designation of a witness on Topic Nos. 39 and 40. MGA also confirmed that it would produce

18  witnesses on Topic Nos. 34 and 41. On July 9, 2007, MGA provided designations and dates for

19  deposition for Topic Nos. 34 and 41.

20      In this motion, Mattel contends that MGA has refused to designate and/or to produce

21  witnesses on Topic Nos. 21, 25, 26, 34, 39, 40 and 41, even though the May 16, 2007 Order

22  required it to make all of its Rule 30(b)(6) witnesses (except on Topic Nos. 25 and 26) available

23  by the end of June. Mattel also contends that MGA has refused to meet and confer in good faith

24

25      _____

26      [4] A third deposition was scheduled for June, however, it did not take place. According to Mattel, MGA
        unilaterally cancelled the deposition the day before it was scheduled to commence. Mattel Motion at p.4. According
        to MGA, Mattel agreed to defer the deposition.

27

28
    Bryant v. Mattel, Inc.,                                                                    5
    CV-04-09049 SGL (RNBx)

                                            EXHIBIT ___153___

                                            PAGE ___1982___

1   to schedule the deposition of witnesses on Topic Nos. 25 and 26, in violation of the May 16, 2007
2   Order. Lastly, Mattel contends that MGA's stated justifications for refusing to comply with the
3   May 16, 2007 Order all lack merit.

4       MGA contends that Mattel's motion is premature and unnecessary, and is now moot.
5   MGA explains that after the June 22, 2007 meet and confer, there were only four topics open:
6   "one of which (40) was subject to a ruling anticipated to be coming from Judge Larson any day
7   and which was received before Mattel's motion was filed; two of which (34 and 41) were the
8   express subject of an appeal pending before Judge Larson; and the last was simply the result of an
9   honest disagreement between the parties as to the actual intended scope of the topic (39)."
10  MGA's Opposition at p.2. MGA denies ever refusing to provide witnesses on these topics, and
11  instead, asserts that it was entitled to receive Judge Larson's rulings before scheduling
12  depositions. MGA further contends that it identified witnesses and deposition dates soon after
13  Judge Larson issued his orders.

<center>III. DISCUSSION</center>

15  **Topic Nos. 25 and 26**

16      The May 16, 2007 Order required the parties to meet and confer "regarding the timing of
17  the depositions on Topic Nos. 25 and 26." Proctor Decl., Ex. 1. During the June 22, 2007 meet
18  and confer session, MGA indicated that it was likely to designate Lisa Tonnu for these topics;
19  however, it did not offer a date for the deposition because it was awaiting Judge Larson's ruling
20  on the phasing of trials.

21      Mattel contends that MGA's purported justification for failing to schedule the depositions
22  is without merit because discovery in this case has not been phased. Further, Mattel contends that
23  depositions on these two topics cannot be delayed any longer because under the current schedule,
24  expert reports are due in late August.

25      MGA contends that it fulfilled its meet and confer obligations regarding Topic Nos. 25
26  and 26 and took the position that the depositions shouldn't be scheduled until Judge Larson issued
27  a ruling on the phasing of trials.

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ___153___
PAGE ___1982___

1    MGA is not technically in violation of the May 16, 2007 Order with respect to Topic Nos.

2    25 and 26 because it fulfilled its obligation to meet and confer regarding the timing of the

3    depositions. Therefore, Mattel's motion to enforce the May 16, 2007 Order and request for

4    sanctions are denied as to Topic Nos. 25 and 26. Nevertheless, MGA's purported justification for

5    delaying scheduling depositions on Topic Nos. 25 and 26 is no longer valid in light of Judge

6    Larson's ruling on the phasing of trials and Mattel is entitled to a date certain for the depositions.

7    **Topic No. 39**

8    The May 16, 2007 Order required MGA to designate a witness on Topic No. 39 by May

9    22, 2007, and to produce its designee for deposition by June 30, 2007. MGA met these deadlines

10   by designating Kenneth Lockhart on Topic No. 39 and producing him for deposition on June 14

11   and 15, 2007. Mr. Lockhart, however, was unable to testify regarding the collection of non-

12   electronic documents. During the parties' subsequent meet and confer, MGA acknowledged that

13   Mr. Lockhart was not proffered regarding the collection of non-electronic documents, but claimed

     that Mattel had previously agreed to limit Topic No. 39 to electronic documents.

14   Mattel denies ever agreeing to so limit Topic No. 39 and contends that "it is preposterous

15   to think that Mattel would agree to such a limitation." Mattel's Motion at p.10. Mattel points out

16   that the Topic clearly encompasses both electronic and non-electronic documents, and that the

17   May 16, 2007 Order compels MGA to produce a witness on the Topic as written.

18   In contrast, MGA contends that it designated Mr. Lockhart, Chief Information Officer, on

19   Topic No. 39 "based on its good faith belief that the topic was intended to cover the retention of

20   electronic documents and other 'digital information.'" MGA's Opposition at p.6. Nevertheless,

21   on July 5, 2007, MGA designated Lisa Tonnu to testify on Topic No. 39 and indicated that she

22   was available on July 19, 2007.

23   MGA is in substantial compliance with the May 16, 2007 Order, having produced Mr.

24   Lockhart by the June 30th deadline and by offering Lisa Tonnu to testify regarding the remainder

25   of Topic No. 39 after the apparent misunderstanding came to light. Therefore, Mattel's motion to

26   enforce the May 16, 2007 Order is denied with respect to Topic No. 39.

27   //

28

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 153

PAGE _____ 1984

**Topic No. 40**

The May 16, 2007 Order required MGA to designate a witness on Topic No. 40 by May 22, 2007, and to make the witness available for deposition no later than June 30, 2007. At the June 22, 2007 meet and confer session, MGA did not designate or produce a witness on Topic No. 40 because it was awaiting the resolution of its motion to dismiss. On June 27, 2007, Judge Larson denied MGA's motion to dismiss and held that Mattel had already complied with §2019.210. The next day MGA notified Mattel that it would identify a witness on Topic No. 40 and potential dates for deposition by the end of the week. On July 5, 2007, MGA confirmed that Lisa Tonnu would testify on Topic No. 40 and would be available for deposition on July 19, 2007.

Mattel contends that MGA violated the May 16, 2007 without any legitimate basis because Topic No. 40 was not the subject of any appeal. In contrast, MGA contends that it completed its designation and provided available dates promptly after Judge Larson issued his order.

MGA clearly violated the May 16, 2007 by failing to identify a witness to testify on Topic No. 40 and to make the witness available for deposition by June 30th. MGA's non-compliance was willful and inexcusable. MGA could have but failed to request any extension of time to designate and produce a witness on Topic No. 40. MGA has not cited any precedent that excuses a litigant from complying with deadlines imposed by a discovery order, without leave of court, simply because the claim to which the discovery is directed is the subject of a pending motion to dismiss. Mattel's motion is granted as to Topic No. 40 and sanctions are warranted pursuant to Rule 37(b)(2), Fed.R.Civ.P.

**Topic Nos. 34 and 41**

The May 16, 2007 Order required MGA to designate a witness on Topic Nos. 34 and 41 by May 22, 2007 and to produce its designee(s) for deposition by June 30, 2007. At the June 22, 2007 meet and confer session, MGA did not offer any designees or deposition dates for Topic Nos. 34 and 41 because it was in the process of appealing the May 16, 2007 Order to Judge Larson with respect to these topics.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT _____ 153

PAGE _____ 1985

1    On May 31, 2007, MGA appealed the May 16, 2007 Order compelling it to produce
2  designees on Topic Nos. 34 and 41.[5]  MGA sought a stay of the May 16, 2007 Order as to these
3  Topics pending appeal.  On June 21, 2007, the Discovery Master denied the requested stay.  On
4  June 22, 2007, MGA filed an "emergency *ex parte*" application with Judge Larson seeking review
5  of the June 21, 2007 Order denying the requested stay.  On June 26, 2007, Judge Larson issued a
6  Minute Order scheduling MGA's appeal of the May 16, 2007 Order for hearing on July 2, 2007.
7  A few days after the hearing, Judge Larson issued an order upholding the May 16, 2007 Order.
8  That same day MGA confirmed that it would produce witnesses on Topic Nos. 34 and 41.  On
9  July 9, 2007, MGA identified Renato Dionisio to testify on Topic No. 34 and indicated that the
10  witness was available on any one of the following days: August 21-23 or 28-30.  MGA identified
11  Lisa Tonnu to testify on Topic No. 41 and indicated that she was available to testify on July 19.
12    Mattel contends that MGA willfully failed to comply with the May 16, 2007 Order, even
13  after its request for a stay was denied.  MGA contends that the instant motion was unnecessary
14  and a waste of judicial resources because Mattel knew before it filed the motion that Judge Larson
15  had moved up the hearing on MGA's appeals and a ruling would be forthcoming.
16    MGA violated the May 16, 2007 Order by failing to designate and produce a witness to
17  testify on Topic Nos. 34 and 41 by the June 30th deadline.  The violation was particularly
18  egregious because MGA's request for a stay was denied on June 21, 2007, which still left a few
19  days for MGA to at least designate a witness and propose dates for a deposition, even if the
20  deposition was scheduled beyond the June 30th deadline.  Instead, MGA chose to persist in its
21  refusal to comply with the May 16, 2007 Order and gambled that Judge Larson would grant it
22  "emergency" *ex parte* relief.  MGA's clear and flagrant violation of a court order warrants
sanctions under Rule 37(b)(2), Fed.R.Civ.P.

### IV. CONCLUSION

For the reasons set forth above, Mattel's motion is granted in part and denied in part.  To
the extent MGA has not already done so, MGA shall promptly confirm its designees on Topic

---

[5]  MGA also appealed the May 16, 2007 Order with respect to Topic No. 26.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

153
9
PAGE    1986

1 │ Nos. 21, 25, 26 and 34 by August 22, 2007, and make them available for deposition no later than

2 │ September 27, 2007.

3 │     Mattel's request for sanctions is granted based upon MGA's willful violation of the May

4 │ 16, 2007 Order by failing to identify witnesses and dates for deposition for Topic Nos. 34, 40 and

5 │ 41 by the designated deadlines. MGA shall reimburse Mattel in the amount of $1,000 in

6 │ monetary sanctions pursuant to Rule 37(b)(2), Fed.R.Civ.P., no later than August 22, 2007.

7 │     Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

8 │ Master, Mattel shall file this Order with the Clerk of Court forthwith.

9

10 │ Dated: August 14, 2007

                                HON. EDWARD A. INFANTE (Ret.)

11 │                                     Discovery Master

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 153

PAGE _____ 1987

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 14, 2007, I served the attached ORDER GRANTING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 16, 2007, TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(b)(6), AND GRANTING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | Jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 14, 2007, at San Francisco, California.

_____
Sandra Chan

EXHIBIT ___153___

PAGE ___1988___

EXHIBIT 154

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 155

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 156

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 157

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 158

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 159

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 160

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 161

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER