QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                  Plaintiff,<br><br>          vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                  Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 14, 2008 ORDER REGARDING MATTEL'S MOTION TO COMPEL COMMUNICATIONS REGARDING THIS ACTION; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Declaration of Randa Osman filed concurrently]<br><br>Hearing Date:    June 16, 2008<br>Time:              10:00 a.m.<br>Place:             Courtroom 1<br><br>**Phase 1**<br>Discovery Cut-off:    January 28, 2008<br>Pre-trial Conference:  May 19, 2008<br>Trial Date:            May 27, 2008 |

07209/2482827.1

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 14, 2008 ORDER

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 16, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of The Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule portions of the Discovery Master's April 14, 2008 Order Granting in Part Mattel's Motion to Compel Production of Documents Regarding This Action.

This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 26, 34, 37 and 72(a), and on the grounds that the Discovery Master's Order was clearly erroneous and contrary to law in its ruling denying Mattel's motion to compel production of communications regarding this action, insofar as it denied production of such non-privileged communications relating to this action between its counsel and paralegals, on the one hand, and any other person or entity, on the other hand.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Randa Osman filed concurrently herewith, the accompanying Notice of Lodging, and all other matters of which the Court may take judicial notice.

<u>**Statement of Rule 7-3 Compliance**</u>

The parties met and conferred regarding this motion on April 24, 2008.

DATED:  April 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By_____
    Dylan Proctor
    Attorneys for Mattel, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

ARGUMENT ......................................................................................................... 9

I.   THE DISCOVERY MASTER'S ORDER IS CLEARLY ERRONEOUS BECAUSE THE DOCUMENTS SOUGHT ARE RELEVANT TO PHASE I ............................................................................. 9

II.  MGA HAS NOT PRODUCED THE COMMUNICATIONS THAT MATTEL SEEKS ............................................................................. 14

III. PRODUCTION OF THE DOCUMENTS AT ISSUE WOULD NOT BE UNDULY BURDENSOME ....................................................................... 15

CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## Cases

Aiken v. Rimkus Consulting Group, Inc.,
   2007 WL 1101210 (S.D. Miss. Apr. 4, 2007) ....................................................17

Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum &
   Bailey Circus,
   233 F.R.D. 209 (D.D.C. 2006).........................................................................13

Bernstein v. Travelers Ins. Co.,
   447 F. Supp. 2d 1100 (N.D. Cal. 2006) ...........................................................10

Doe v. Dist. of Columbia,
   231 F.R.D. 27 (D.D.C. 2005)...........................................................................16

Steinbach v. Credigy Receivables, Inc.,
   2006 WL 1007272 (E.D. Ky. Apr. 14, 2006) ...................................................17

## Miscellaneous

Fed. R. Civ. Proc. 30(b)(6) ................................................................... 12, 13

Fed. R. Civ. Proc. 72(a) ..............................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA's attorneys and employees have had non-privileged communications with potential witnesses concerning this action. Such communications are indisputably discoverable. Nevertheless, MGA has refused to produce them. And, although the Discovery Master ordered MGA to produce non-privileged communications with others regarding this action as to six specified MGA employees, he refused to require the same of five of MGA's in-house counsel and its outside attorneys. There is no basis for shielding relevant, non-privileged communications from discovery simply because the communications involve counsel. By this Motion, Mattel seeks an order requiring MGA to produce non-privileged communications between its attorneys and others regarding this action .

Non-privileged communications regarding this action are relevant, as they will likely bear on the testimony and credibility of third-party witnesses. For example, Dale Cendali, formerly lead counsel for MGA, exchanged emails with Jacqueline Prince, a Mattel notary who notarized some of Bryant's drawings in August 1999. At Ms. Cendali's request, Ms. Prince emailed pages from her notary book to Ms. Cendali. Forensic examination has since shown that a notation on one of those pages, which purported to state the date of Bryant's drawings as "From 1998 Missouri," was a forgery, and was actually added to Ms. Prince's notary journal after the fact. Ms. Prince's emails with MGA's former counsel—and the state of the notary pages when she emailed—are highly relevant to Mattel's spoliation claims, as well as to claims concerning the creation of Bratz. None of these communications has been produced, however.

Another example involves Christina Tomiyama, a Mattel manager until 2006 and a Mattel consultant through April 2007. Ms Tomiyama, who had consulted on dozens of occasions with Mattel's in-house and outside counsel on this case and others to assist in providing legal advice to Mattel, was privy to Mattel's

lawyers theories and strategies concerning Mattel's claims against Bryant, MGA's claims against Mattel, and other relevant matters. Either while she was a paid Mattel consultant or shortly thereafter, and unbeknownst to Mattel, Tomiyama was contacted by MGA lawyers and started cooperating with them, and continued to do so for months. Yet, their non-privileged communications have not been produced.

MGA's counsel's communications with these and other third party witnesses concerning this action are plainly discoverable. Communications with witnesses concerning their testimony or evidence in this action are relevant to the issues in this action, including, most notably, witness credibility and spoliation of evidence. Request Number 48, which required MGA to produce such non-privileged communications between MGA and others concerning this action, is intended to get at precisely these kinds of communications. Despite its relevance, MGA objected and refused to produce any documents. When Mattel moved to compel, the Discovery Master denied the motion in part, finding that the burden of producing the documents outweighed the benefit to be obtained.

This overlooks, however, the crucial importance of the evidence sought and the substantial steps Mattel took to limit any alleged burden on MGA. Rather than seek all communications regarding this action as originally requested, Mattel limited the Request upon MGA's objections and in briefing before the Discovery Master to non-privileged communications relating to this action involving either one of 23 named MGA employees or its counsel. Recognizing the appropriateness of this, the Discovery Master ordered the production of responsive documents as to six of the named individuals, and did not as to twelve others only because their communications related to Phase 2. However, the Discovery Master also denied the Request as to five MGA in-house lawyers and paralegals and MGA's outside counsel, offering no explanation for distinguishing them from the six named MGA employees for whom he did order production.

The Discovery Master's Order is clearly erroneous and contrary to law in so far as it denies Mattel discovery of the non-privileged communications between witnesses and MGA attorneys relating to this case.

**Factual Background**

MGA's Counsel Has Non-Privileged Communications With Third Parties Concerning This Action.  MGA's counsel has exchanged directly relevant, non-privileged communications with third party witnesses or potential witnesses concerning this action.  For example, Jacqueline Prince was a Mattel notary who notarized certain Bryant's drawings at issue in this case in August 1999, while Bryant was employed by Mattel.  She testified at deposition that she exchanged emails with Dale Cendali, formerly lead counsel for MGA.[1]  At Ms. Cendali's request, Ms. Prince scanned and emailed to Ms. Cendali two pages from her notary journal.[2]  The notary journal currently contains a notation that purportedly states that Bryant's drawings were made in Missouri in 1998.[3]  However, forensic examination has shown that "the notation 'From 1998 Missouri' was written . . . at a later time compared to the rest of the 8/26/99 entry written on pages 11 and 12" of Ms. Prince's notary journal.[4]  Thus, the evidence shows that the notation, "From 1998

---

[1]   Deposition Transcript of Jacqueline Prince, dated Dec. 21, 2004 ("Prince Depo. Tr.") at 188:1-189:23, attached as Exhibit 2 to the previously-filed Supplemental Declaration of B. Dylan Proctor, dated February 14, 2008 ("Supp. Proctor Dec.").  For the Court's convenience, a copy of the Supp. Proctor Dec. is attached as Exhibit B to the concurrently filed Notice of Lodging.

[2]   Id.

[3]   Report of Valery N. Aginsky, dated Feb. 8, 2008, at 1, Supp. Proctor Dec., Exh. 3.

[4]   Id. at 8.

1   Missouri," is a forgery.  Counsel for Mattel requested those emails,[5] but Mattel still

2   has not received them today.[6]

3           To take another example, the evidence shows that Carter Bryant ran a

4   program called Evidence Eliminator, a software tool used to "wipe" evidence from a

5   hard drive, on his laptop computer on July 12, 2004.[7]  "At this time at least 9400+

6   filenames and/or folder names were overwritten as well as an undetermined amount

7   of data on the drive."[8]  The timing of Bryant's destruction of evidence is particularly

8   significant.  Bryant's attorneys created a digital image of Bryant's computer two

9   days later, on July 14, 2004.[9]

10          Third-party Farhad Larian testified that he knowingly erased emails and

11  files from a USB drive, erased files and emails from his laptop computer and

12  discarded hard copy documents in boxes.[10]  No doubt MGA will deny it knew of

13  this spoliation; the non-privileged communications that Mattel now seeks could

14  prove otherwise.

15          In another example, Mattel learned from Veronica Marlow, a former

16  MGA vendor, that Ana Cabrera, Beatriz Morales and Maria Salazar secretly worked

17  on Bratz for years while they were all employed by Mattel.[11]  Marlow concealed the

18  payments she made to these Mattel employees by paying them in cash and in other

19

20

21

22

    [5]   Prince Depo. Tr. at 189:13-14, Supp. Proctor Dec., Exh. 2.

23  [6]   Supp. Proctor Dec. ¶ 3.

    [7]   Report of Mark Menz, dated Feb. 10, 2008, at 1, Supp. Proctor Dec., Exh. 4.

24  [8]   Id.

25  [9]   Id.

26  [10]   Deposition Transcript of Farhad Larian, dated February 4, 2008 ("Larian
    Depo. Tr.") at 92:20-25, Supp. Proctor Dec., Exh. 5.

27  [11]   Deposition Transcript of Veronica Marlow, dated December 27, 2007

28  ("Marlow Depo. Tr.") at 306:14-308:1, 363:15-365:17, Supp. Proctor Dec., Exh. 1.

people's names and using false social security numbers.[12]  Cabrera's and Morales's attorneys are now in communication with MGA's attorneys.[13]  Mattel is entitled to discover any non-privileged communications between and among them relating to this action.

As a final example, in October 1991, Christina Tomiyama, formerly the Manager of Mattel's Face Design Group,[14] testified in deposition that MGA's prior lawyers, O'Melveny & Myers, first contacted her sometime in 2007.[15]  At some point in 2007, Ms. Tomiyama also met in-person with O'Melveny lawyers and others, including MGA's in-house counsel, Craig Holden.[16]  Skadden later contacted Tomiyama to retain her as an expert.[17]  When Skadden retained her, Tomiyama "fished out and reread [her] Separation Agreement" and told Skadden that she was concerned that acting as an expert for MGA would conflict with her obligations to Mattel.[18]  Tomiyama testified that Skadden advised her that she did not need to comply with the plain language of this agreement.  [19]

Although clearly relevant, none of these communications between MGA's in house and outside lawyers and witnesses have been produced.

Mattel's Request for Production No. 48.  On March 14, 2005, Mattel propounded its First Set of Requests for Production of Documents and Tangible

---

[12]   Transcript of interview of Ana Cabrera, dated Jan. 2, 2008, at 118:3-25, Supp. Proctor Dec., Exh. 7; Transcript of interview of Beatriz Morales, dated Jan. 14, 2008, at 115:2-20, Supp. Proctor Dec., Exh. 8.

[13]   Letter from Maria Diaz to Michael Zeller, dated Jan. 22, 2008, Supp. Proctor Dec., Exh. 9 (copying counsel for defendants).

[14]   Transcript of Deposition of Christina Tomiyama, February 27, 2008 ("Tomiyama Tr.") at 196:20-22, attached as Ex. B to the concurrently-filed Declaration of Randa Osman dated April 28, 2008 ("Osman Dec.").

[15]   Tomiyama Tr. at 131:5-15, Osman Dec., Ex. B.

[16]   Id. at 132:17-133:12, Osman Dec., Ex. B.

[17]   Tomiyama Tr. at 127:2-10, Osman Dec., Ex. B.

[18]   Tomiyama Tr. at 361:21-362:21, Osman Dec., Ex. B.

[19]   Id. at 356:18-23; 357:9-12, Osman Dec., Ex. B.

1  Things to MGA Entertainment Inc. (the "Requests").[20]  Request for Production

2  No. 48, included within the Requests, seeks "[a]ll non-privileged

3  COMMUNICATIONS between YOU and any PERSON that REFER or RELATE

4  TO this action" (the "Request").[21]

5          In its Response to this Request, MGA objected and refused to produce

6  any documents, objecting that the Request purportedly seeks documents that are not

7  relevant and is overbroad, unduly burdensome and oppressive.[22]

8          Mattel's Attempts to Resolve the Dispute.  On January 10, 2008, Mattel

9  wrote to MGA to request a conference on Request No. 48, in part to determine

10  whether MGA continued to withhold documents responsive to that Request.[23]

11  Mattel made clear to MGA that it had no desire to obtain duplicates of documents

12  that MGA had already produced  pursuant to the Court's Orders regarding other

13  requests.[24]

14          During several conferences of counsel, MGA confirmed that it was

15  withholding responsive documents.  MGA objected that the Request purportedly is

16  overbroad and unduly burdensome, but did not voice any other objections to the

17  Request or dispute the relevance of responsive communications.[25]

18

19  _____

20      [20]  Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment Inc., dated March 14, 2005, attached to the

21  previously-filed Declaration of B. Dylan Proctor dated February 4, 2008 ("Proctor Dec.") as Exh. 1.  For the Court's convenience, the Proctor Dec. is attached as Ex. A

22  to the concurrently-filed Notice of Lodging.

23      [21]  Id.
    [22]  MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of Requests

24  for Production of Documents and Tangible Things, dated April 13, 2005, Proctor

25  Dec., Exh. 2.

26      [23]  Letter from Dylan Proctor to Timothy Miller, dated Jan. 10, 2008, Proctor Dec., Exh. 3.

27      [24]  Id.

28      [25]  Id. ¶ 5.

The parties also discussed the scope of Request No. 48.[26]  In the interest of resolving the parties' dispute, Mattel offered to limit the scope of the Request to communications that refer or relate to this action that (i) involve at least one MGA employee who holds or held a position of manager or higher; (ii) involve MGA's outside agents and/or attorneys acting on MGA's behalf; or (iii) involve a former Mattel employee who communicated about this action while employed by MGA, regardless of title.[27]  Because MGA would not agree,[28] Mattel sought relief.

Pursuant to a further Court ordered meet and confer that occurred before the motion was heard, the parties narrowed their differences further.  As to the first and third categories -- communications relating to this action involving senior MGA personnel and former Mattel employees -- MGA offered to produce such communications as to any 10 individuals whose files would need to be searched.  In response, after whittling its list substantially, Mattel offered to limit its request as to the first and third categories to 23 individuals whose files would need to be searched.  MGA refused.[29]  In a further effort to compromise, Mattel inquired whether MGA would agree to honor Mattel's request as to 10 individuals for Phase 1 of the litigation, with the understanding that Mattel's motion would be held in abeyance for specified individuals whose communications are more likely pertinent to Phase 2.  MGA again refused.[30]  Mattel also questioned whether MGA would

---

[26]  Id.
[27]  Proctor Dec., ¶ 7.
[28]  MGA did agree to search for and produce the first category of documents -- communications by its employees who held the position of managers or higher regarding this action -- if Mattel would pay its costs.  Proctor Dec., ¶ 8.  It estimated the cost at between $20,000 to $45,000.  Id.
[29]  Second Supp. Proctor Dec., ¶ 4.
[30]  Second Supp. Proctor Dec., ¶ 5.

1  produce its documents as to all 23 requested individuals if Mattel would agree to

2  split the cost of doing so.  MGA refused this as well.[31]

3      <u>Discovery Master's Order Granting in Part Mattel's Motion to Compel</u>

4  <u>Communications Regarding This Action</u>.  On April 14, 2008, the Discovery Master

5  issued an Order granting in part Mattel's motion.  Specifically, Judge Infante

6  granted Mattel's motion with respect to communications involving 6 of the 23

7  individuals Mattel had identified in the Supplemental Declaration of Dylan Proctor

8  (Isaac Larian, Paula Garcia, Maria Elena Salazar, Margaret Leahy, Mercedeh Ward,

9  and David Malacrida).[32]  However, the Discovery Master denied the motion as to all

10  other MGA employees, agents and attorneys.[33]  As to some, this was because the

11  witnesses' communications were likely to be relevant only as to Phase 2.[34]

12  However, the Discovery Master appears to have denied them as to five in-house

13  MGA lawyers and paralegals -- Daphne Gronich, Craig Holden, Jeanine Posini,

14  Bryan Armstrong and Samir Khare -- and to its outside counsel only by virtue of

15  their status as lawyers.

16      <u>Mattel's Further Efforts to Resolve The Matter</u>.  On April 24, 2007,

17  before filing this Motion, counsel for Mattel met and conferred with counsel for

18  MGA in yet another attempt to resolve this matter informally.  During this meet and

19  confer, Mattel offered to restrict the Request to just non-privileged communications

20

21

22

23     [31]  Second Supp. Proctor Dec., ¶ 5.  As to the second category of documents, MGA would not budge.  MGA steadfastly refused to produce its counsel's non-

24  privileged communications with third-parties relating to this action, and refused to conduct any search for them.  Second Supp. Proctor Dec., at ¶ 3.

25     [32]  Order Granting In Part Mattel's Motion To Compel MGA To Produce

26  Communications Regarding This Action dated April 14, 2008 (the "Order"), at 6:11-14 Osman Dec., Ex. C.

27     [33]  Order, at 5:23-6:10, Osman Dec., Ex. C

28     [34]  Order, at 5:23-6:6 , Osman Dec., Ex. C.

1  between MGA's counsel or paralegals and others concerning this action.  MGA

2  rejected Mattel's offer to further limit this Request.[35]

### Argument

4          By Stipulation and Court Order appointing the Discovery Master, the

5  Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings

6  should be overruled if they are "clearly erroneous" or "contrary to law."  Fed. R.

7  Civ. Proc. 72(a).

8  **I.      THE DISCOVERY MASTER'S ORDER IS CLEARLY ERRONEOUS**

9  **        AND CONTRARY TO LAW BECAUSE THE DOCUMENTS SOUGHT**

10  **        ARE RELEVANT TO PHASE I**

11          The Discovery Master's Order requires MGA to produce non-privileged

12  communications regarding this action involving any of six named employees,

13  including Isaac Larian, and any other person or entity.  Despite recognizing the

14  relevance and importance of such documents, even if the face of MGA's claims of

15  undue burden and expense, the Discovery Master denied Mattel's request to have

16  MGA's attorneys produce precisely the same type of non-privileged

17  communications regarding this action.  It is not clear why.  Such non-privileged

18  communications are clearly relevant, and they do not become any less so because

19  they involve attorneys.  Indeed, such non-privileged communications between

20  MGA's attorneys and third parties are even more likely to reveal valuable

21  impeachment evidence and reveal witnesses' biases, and they could present valuable

22  admissions relevant to liability issues.

23          For example, communications between MGA's former counsel and

24  third parties about their prospective testimony or knowledge or documents they

25  possess are obviously relevant.  Notes of a conversation taken by an attorney may be

26  work product, but communications *between* MGA's counsel and third parties about

27  ───────────────

28  [35]  Osman Dec., at ¶¶ 2-3.

this case generally will not be privileged.  Yet they could be hugely important.  For example, if a third party who Mattel has subpoenaed admitted to MGA that it knows where documents sought by Mattel can be found, Mattel is entitled to know that.  If the communications reflect the substance of the witness's knowledge, Mattel is entitled to know that as well.  Again, there are any number of ways in which responsive communications could be relevant.

Communications that relate to a witness's testimony, a witness's knowledge or information relevant to this action, document collection, document destruction or spoliation of evidence relating to this action, payments or requests for payments relating to this action and the like are all clearly discoverable.  There are numerous ways in which Mattel will be able "to use [these communications] . . . either as evidence or to help find evidence."  Bernstein v. Travelers Ins. Co., 447 F. Supp. 2d 1100, 1105 (N.D. Cal. 2006).  At a minimum these categories are fertile ground for discovering whether defendants have collected and produced all relevant evidence; whether witnesses have suppressed, modified or coordinated their testimony; whether witnesses are providing truthful testimony; whether witnesses have destroyed or concealed evidence, as Farhad Larian, for example, recently admitted; and MGA's knowledge of the same.

Many of the examples described above (see pp. 2 - 5, *supra*) show how non-privileged communications relating to this action by MGA's counsel are likely to be relevant.  For example, Mattel is entitled to discover communications that will bear on the testimony of third-party witnesses, whether these non-privileged communications involve counsel or an MGA employee.  As explained above, MGA's former counsel requested and received from Jacqueline Prince, a Mattel notary who notarized some of Bryant's drawings at issue in this case, two pages from her notary journal.  Forensic examination has since shown that one of the entries in the journal purporting to state the date of the Bratz drawings was a forgery, and was added after the fact.  Ms. Prince's emails with MGA's former

1 counsel are highly relevant because will show the content of Ms. Prince's journal

2 pages in 2004 and thus may contain critical information about the forgery.  Despite

3 Mattel's request for the emails, they have never been produced.[36]  And, if the

4 Discovery Master's Order is upheld, the jury, Mattel and the Court will never know

5 what light those email may shed on critical issues about this key evidence that goes

6 to the heart of Bratz's creation and timing.

7           As explained above, what is now at issue are the communications of

8 five named in-house attorneys and paralegals employed by MGA, and those of

9 outside counsel.  Each of these individuals is likely to have highly relevant

10 responsive documents.[37]  For example, Daphne Gronich is MGA's former General

11 Counsel.  She filed a declaration in this case attesting to MGA's evidence

12 preservation efforts.  She also has filed affidavits in Hong Kong actions regarding

13 the early development of Bratz.[38]  In 2004, one month after this action was filed,

14 Ms. Gronich signed a modification of Carter Bryant's 2000 agreement on behalf of

15 MGA.[39]  Ms. Gronich recently left MGA.  Her non-privileged communications

16 about this action are very likely to be relevant to Mattel's claims.

17           Craig Holden is an attorney employed by MGA.[40]  Mr. Holden

18 negotiated the terms of the agreement between Carter Bryant and Keker & Van

19

20

21

22 [36]   Prince Depo. Tr. at 189:13-14; Supp. Proctor Dec. ¶ 3 and Exh. 2.
   [37]   See Second Supp. Proctor Dec., at pp. 6-8.

23 [38]   See Exhibits 13 and 14 to the previously-filed Second Supplemental

24 Declaration Of B. Dylan Proctor In Support Of Mattel, Inc.'s Motion To Compel MGA To Produce Communications Regarding This Action dated April 9, 2008

25 ("Second Supp. Proctor Dec.").  For the Court's convenience, a copy of the Second

26 Supp. Proctor Dec. is attached as Ex. C to the concurrently filed Notice of Lodging.
   [39]   Ex. 15 to Second Supp. Proctor Dec.

27 [40]   See Deposition Transcript of Nick Contreras, dated January 28, 2008 at

28 92:19-93:4, Ex. 17 to Second Supp. Proctor Dec.

Nest.[41]  Mr. Holden also negotiated an agreement with Mr. Machado for MGA to cover his legal fees.[42]  Mr. Holden also has been involved in contacting potential witnesses on behalf of MGA.  For example, he had early contacts with Ms. Tomiyama.[43]  Given Mr. Holden's apparent role in contacting third party witnesses on behalf of MGA,[44] his communications with third parties are very likely to be relevant.

Bryan Armstrong is a paralegal at MGA who works on MGA's copyright and trademark applications.  Mr. Armstrong was part of the effort to file ostensible correction forms with the U.S. Copyright Office in or about July 2007. These correction forms pertained to copyright registrations that MGA had previously filed for several Bratz style guides, in which MGA provided allegedly "incorrect" pre-existing work information.[45]  Mr. Armstrong was proffered by MGA as a Rule 30(b)(6) witness on at least two topics of Mattel's Second Notice of Deposition of MGA Entertainment, Inc.  Thereafter, on September 4, 2007, Armstrong purported to make several pages of written changes to his deposition testimony that directly contradicted his sworn testimony at the deposition.[46]  For example, Armstrong testified that MGA's style guides with respect to Bratz are

---

[41]   See Deposition Transcript of Lisa Tonnu, dated September 24, 2007 at 474:5-12, Ex. 18 to Second Supp. Proctor Dec.

[42]   Id. at 474:19-475:12.

[43]   See Court's Minute Order Granting Motion to Disqualify Expert, dated April 8, 2008, Ex. 19 to Second Supp. Proctor Dec.

[44]   See, e.g., Tomiyama Tr. at 132:17-133:12, Ex. 20 to Second Supp. Proctor Dec.

[45]   See Depo Tr. of Bryan Armstrong, Volume 2, dated August 1, 2007 at 376:1-8, 388:16-389:1, Ex. 21 to Second Supp. Proctor Dec.

[46]   See Deposition Correction Sheet of Bryan Armstrong, dated September 4, 2007, Ex. 22 to Second Supp. Proctor Dec.

based on the dolls.[47]  Thereafter, he altered his testimony to indicate that "the style guides do not come from the dolls."[48]  To take another example, Armstrong testified that the listed creation date of 1998 for a copyright registration for a "Jade" drawing that MGA obtained from the U.S. Copyright Office was incorrect, and that the drawing was in fact created in 2000.[49]  Armstrong then purported to change his testimony to state that the 1998 creation date was correct.  See Deposition Correction Sheet of Bryan Armstrong, dated September 4, 2007, Exhibit 22. Clearly, any non-privileged communications Armstrong may have had about this case are relevant.

Finally, Samir Khare is an in-house counsel at MGA.[50]  One of Mr. Khare's primary functions at MGA is to support the intellectual property needs of MGA's Product Development Group, which includes working on clearance of trademarks or potential trademarks for MGA.[51]  Mr. Khare was designated by MGA as a Rule 30(b)(6) witness on 12 topics of Mattel's Second and Third Notices of Deposition of MGA Entertainment, Inc., and one topic of Mattel's Notice of Deposition of MGA Hong Kong Ltd.  Among the topics on which Khare was designated was Topic No. 33 of Mattel's Second Notice of Deposition of MGA Entertainment, Inc., regarding MGA's copyright registrations relating to Bratz. Khare was designated on this topic only after Bryan Armstrong testified as MGA's

---

[47]  See Deposition Transcript of Bryan Armstrong, Volume 1, dated July 18, 2007 at 164:9-19, Ex. 23 to Second Supp. Proctor Dec.
[48]  Deposition Correction Sheet of Bryan Armstrong, dated September 4, 2007, Ex. 22 to Second Supp. Proctor Dec.
[49]  Armstrong Tr. at 261:7-23, Ex. 23 to Second Supp. Proctor Dec.
[50]  See Deposition Transcript of Samir Khare, dated August 20, 2007 ("Khare Tr.") at 8:12-9:6, Ex. 24 to Second Supp. Proctor Dec.
[51]  Id. at 30:11-18, 34:21-24.

1  Rule 30(b)(6) designee on the subject; Khare then purported to contradict

2  Armstrong's testimony on the topic.[52]

3       Mattel is entitled to discover these individuals' non-privileged

4  communications relating to this action.  Likewise, Mattel is entitled to discover

5  outside counsel's non-privileged communications regarding this action, such as

6  communications with witnesses about the case.  Responsive documents in the

7  possession of MGA's agents, including its attorneys, are relevant and discoverable.

8  See, e.g., Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. &

9  Barnum & Bailey Circus, 233 F.R.D. 209, 212, 215 (D.D.C. 2006).  There is no

10 basis for distinguishing, as the Discovery Master apparently did, relevant non-

11 privileged communications with attorneys and potential witnesses from those

12 involving MGA employees and potential witnesses.  To do so would provide

13 attorneys with a cloak of secrecy that runs counter to the purposes behind the rules

14 governing discovery.  To do so would also provide witnesses and counsel with a

15 free pass to improperly withhold facts and evidence, in derogation of the truth-

16 finding function of this proceeding.

17

18 **II.    MGA HAS NOT PRODUCED THE COMMUNICATIONS THAT**

19      **MATTEL SEEKS**

20      It is beyond dispute that MGA has not produced the communications

21 that Mattel seeks in this motion.  Indeed, during conferences of counsel, MGA

22 stated that it had produced communications responsive to other requests, but

23 acknowledged that did not include much of what Mattel seeks here.[53]

24      MGA did at one point claim that this Request is "duplicative" and

25 "cumulative" requests for which "the MGA Defendants have already produced

26 _____

27  [52]  Second Supp. Proctor Dec., at ¶ 6.

28  [53]  Proctor Dec., ¶ 6.

07209/2482827.1

-14-

responsive documents."[54]  However, even a cursory review of the table MGA included in its brief (Opp., at pp. 16-18) shows the request now at issue is far from cumulative or moot---nearly all responsive documents would <u>not</u> be produced in response to those other topics.  Notably, MGA has not identified even a single responsive document it claims was produced in response to other requests.  Moreover, MGA admitted during conferences with Mattel's counsel that MGA has not produced much of what Mattel seeks in this Motion.[55]  Thus, it did not sustain its burden of proving that the requests are unreasonably duplicative or cummulative.

## III.   <u>PRODUCTION OF THE DOCUMENTS AT ISSUE WOULD NOT BE UNDULY BURDENSOME</u>

The Discovery Master found that Mattel's request was, even as narrowed, unduly burdensome.  In light of the obvious relevance of the documents MGA refuses to produce, it is not.  MGA's arguments in this regard were spurious, and it was error for the Discovery Master to accept them.

First, MGA remarkably argued that the request is overbroad because it seeks documents that "refer" or "relate" to a topic.[56]  That is specious.  The Discovery Master has consistently upheld requests--like the one at issue here--that seek documents that "refer" or "relate to" a topic.[57]

---

[54]   MGA's Memorandum of Points and Authorities In Opposition to Mattel's Motion To Compel MGA to Produce Communications Regarding This Action dated February 11, 2008 (the "Opp.") at 16-18.

[55]   See Proctor Dec., ¶ 6.

[56]   Opp., at 8-9.

[57]   <u>See, e.g.</u>, Order of Discovery Master dated May 15, 2007 (compelling MGA to produce documents in response to approximately 40 requests including "refer" and/or "relate to" language), attached as Exhibit F to the Declaration of Amy S. Park in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 11,
(footnote continued)

1          Indeed, MGA itself has been requesting documents "REFERRING OR

2   RELATING TO" a topic or else "mentioning, referring or relating" to a topic for

3   years now.  For example, MGA's First Set of Requests for the Production of

4   Documents and Things, served on January 31, 2005, included numerous requests

5   seeking documents "mentioning, referring or relating" to a particular topic.[58]

6   MGA's Second, Third, Fourth, Fifth, Sixth and Eighth Set of Set of Requests for the

7   Production of Documents and Things also include hundreds of requests seeking

8   documents that refer or relate to a topic.  MGA expressly defines "REFERRING OR

9   RELATING TO" to "be construed in the broadest possible sense to mean

10   concerning, consisting of, referring to, relating to, describing discussing,

11   constituting, evidencing, containing, reflecting, mentioning, pertaining to, citing,

12   summarizing, analyzing or bearing any logical or factual connection with the matter

13   discussed."[59]  This definition is broader than Mattel's.[60]

14          Second, MGA contended that its counsel should not have to perform

15   the "impossible" task of reviewing all litigation files regarding this case for

16   responsive documents.[61]  That is a red herring.  The second category of

17   communications requested by Mattel includes only communications between

18   MGA's attorneys and agents and third parties, not between MGA's attorneys and

19   _____

20   2008 ("Park Dec."); Order of Discovery Master dated December 31, 2007

21   (compelling Larian to produce documents in response to 5 requests including "refer" and/or "relate to" language), Park Dec., Exh. J.

22     [58]  MGA's First Set of Requests for the Production of Documents and Things, dated Jan. 31, 2005, Supp. Proctor Dec., Exh. 10

23     [59]  MGA's Eighth Set of Requests for the Production of Documents and Things

24   in Case No. 05-2727, dated Dec. 28, 2007, at 6, Supp. Proctor Dec., Exh. 6

25     [60]  Mattel's definition of "REFER OR RELATE TO" is:  "constituting, embodying, containing, referring to, commenting on, evidencing, regarding,

26   discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning,

27   supporting, contradicting, negating, revoking or otherwise relating to in any manner."  Opp. at 4.

28     [61]  Id. at 13.

1   MGA employees.  For example, Mattel seeks MGA's attorneys' communications

2   with Ms. Prince regarding key documents that have been forged and that go to the

3   most central issues in this litigation.  A reasonable search for such third party

4   communications would not encompass all litigation files, and would not require

5   MGA to search through counsel's emails.  All that Mattel seeks is for counsel to

6   review its files for non-privileged communications with others regarding this action.

7   Given the amounts at stake in this action and the materiality of such

8   communications, this can hardly be considered unduly burdensome.

9          The same is true of the communications regarding this action by the six

10  in house attorneys and paralegals identified by Mattel.  Searches of their files will be

11  no more burdensome than those of the non-lawyer employees whose

12  communications the Discovery Master compelled.  There is simply no reason why

13  their non-privileged communications regarding this case should not be produced.

14         MGA failed to meet its burden of showing why discovery should not be

15  permitted.  See Doe v. Dist. of Columbia, 231 F.R.D. 27, 30 (D.D.C. 2005) ("Once a

16  party has established relevance, if the other party wishes to object to discovery, the

17  objecting party bears the burden of showing why discovery should not be

18  allowed.").  MGA instead simply argued that where records of an attorney are

19  concerned, a burden may be presumed because of the difficulty of sorting out

20  privileged communications from non-privileged communications.  (Opp., at 12.)

21  This is unpersuasive.  As a preliminary matter, Ryan v. Nat'l Union Fire Ins. Co.,

22  No. 3:03-CV-00644, 2006 U.S. Dist. LEXIS 7366, *29 (D. Conn. Feb. 28, 2006)

23  the case relied on by MGA, involved a request for communications between the

24  attorney and the client before the action was commenced and after the action was

25  commenced.   The court found that in that situation, privileged communications

26  would likely be entangled with non-privileged communications.  Id.  That is a far

27  cry from what Mattel is seeking here.  Mattel's request specifically seeks only non-

28  privileged communications between counsel and others -- it does not ask for

communications between attorney and client.  In any event, whenever documents are produced, privileged documents must be sorted from non-privileged documents. That counsel's files are likely to contain more privileged as opposed to non-privileged communications does not in change the nature of the exercise -- all documents must still be reviewed and analyzed for privilege.  Although it would pose a greater burden on MGA if it had to prepare a privileged log for the privileged communications that it withheld from production, Mattel has never requested this as to Request No. 48.  Further, any purported presumption of burden in reviewing counsel's files falls by the wayside in light of the overwhelming evidence of relevance of the non-privileged communications between counsel and potential witnesses that was presented by Mattel.

Finally, MGA failed to meaningfully distinguish Mattel's cited authorities, which hold requests such as Mattel's to be appropriate.  See, e.g., Steinbach v. Credigy Receivables, Inc., 2006 WL 1007272, at *9 (E.D. Ky. Apr. 14, 2006) (overruling defendants' objections to requests for production for all "internal communications with respect to Plaintiff, . . . [the] lawsuit, or the claims in [the] [Amended] Complaint"); Aiken v. Rimkus Consulting Group, Inc., 2007 WL 1101210, at *1-2 (S.D. Miss. Apr. 4, 2007) (permitting plaintiff to discover all "communications" and "correspondence" relating to its claim against defendant). Thus, MGA has failed to demonstrate undue burden, and the Discovery Master's Order otherwise was clearly erroneous and contrary to law.

1                                        **Conclusion**

2         For the foregoing reasons, Mattel respectfully requests that the Court

3 overrule the Discovery Master's order of April 14, 2008 in part, and order MGA to

4 promptly search for and produce all communications regarding this action made by

5 any of its outside counsel or Daphne Gronich, Craig Holden, Jeanine Posini, Bryan

6 Armstrong and Samir Khare.

7

8 DATED:  April 28, 2008              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

9

10                                       By_____

11                                         Dylan Proctor
                                        Attorneys for Mattel, Inc.