KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727)<br><br>**CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION FOR RELIEF FROM THE TWENTY-DAY MEET AND CONFER REQUIREMENT OF LOCAL RULE 7-3 AND FOR AN EXPEDITED HEARING DATE ON MATTEL'S MOTION FOR "ADVERSE INFERENCE" JURY INSTRUCTION**<br><br>Date:  TBA<br>Time:  TBA<br>Dept:  Courtroom 1<br>Judge:  Hon. Stephen G. Larson<br><br>Date Comp. Filed: April 13, 2005<br><br>Discovery Cut-Off: Jan. 28, 2008<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

416459.01

BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION RE MOTION FOR ADVERSE INFERENCE INSTRUCTION
CASE NO. CV 04-09049 SGL (RNBx)

## I. INTRODUCTION

Through its latest *ex parte* application, Mattel, Inc. ("Mattel") is seeking to throw the Court's established hearing schedule out the window and to obtain an expedited hearing—during what is already an extraordinarily busy week in this case for the Court and the parties alike—on a motion that Mattel could have filed months ago. Mattel is also seeking *post hoc* relief from the Court from the meet and confer requirements of Local Rule 7-3, having already filed its Motion for an "Adverse Inference" Jury Instruction without having made any effort to meet and confer with Bryant in advance. Mattel is seeking all of this extraordinary *ex parte* relief, even though the scheduling "crisis" it is asking the Court to address is entirely of its own making.

Mattel has known of the alleged basis for its Motion for an "Adverse Inference" Jury Instruction [Docket No. 3324] ("Adverse Inference Motion") literally for months. Indeed, Mattel originally raised the very issue that is at the heart of its Adverse Inference Motion in a letter to Bryant's and MGA's counsel on January 18, 2008, but then let the issue drop for more than three months. And Mattel also knew—our should have known, if it had bothered to research the issue—of the need to request permission from the Court for such an instruction, and of the Court's corresponding need to conduct an evidentiary hearing in advance of trial before agreeing to give any form of adverse inference instruction to the jury. Thus, Mattel has not satisfied, and cannot, the required showing to merit any *ex parte* relief. And granting Mattel the relief it seeks on the eve trial would profoundly prejudice Bryant, and could wreak havoc on the existing pre-trial and trial schedule in this matter.

Accordingly, Carter Bryant respectfully requests that the Court deny Mattel's Application in its entirety.

## II. FACTUAL BACKGROUND

Mattel has known of the presence of the computer software program

1

BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION RE MOTION FOR ADVERSE INFERENCE INSTRUCTION
CASE NO. CV 04-09049 SGL (RNBx)

416459.01

Evidence Eliminator ("EE") on two of Bryant's computers (both of which Mattel acknowledges were purchased *after* Bryant left Mattel, and thus could not ever have had any documents or data dating from the critical pre-October 20, 2000 time period) for months. Indeed, complete forensic images of the hard drives of these two computers (a laptop and a desktop) were produced by Bryant to Mattel in one case more than a year ago, and in the other more than six months ago. Declaration of Matthew M. Werdegar ("Werdegar Decl."), ¶ 2. And Mattel has been accusing Bryant of spoliation based on the presence of EE on his computers in countless pleadings since last Fall. Moreover, counsel for Mattel wrote to Bryant and MGA on January 18, 2008, more than three months ago, stating that Mattel was contemplating seeking sanctions against Bryant, including an adverse inference jury instruction, based upon the presence of EE on the computers. *Id.*, ¶ 3; Ex. A. Additionally, Mattel disclosed the expert report of its computer "expert" Mark Menz on February 11, 2008, which sets forth (incorrect) opinions regarding Bryant's computers and the use EE (and likely knew of Mr. Menz's purported findings long before that date). Thus, Mattel has been in possession of all the information upon which it bases its current, eleventh-hour Adverse Inference Motion since at very latest February, and likely much earlier.

Instead of acting on this information, however, Mattel elected to pursue a strategy of simply proposing an adverse inference instruction as part of the ordinary jury instruction process, without first making the detailed evidentiary showing required for such an instruction. Only when it became apparent that Bryant would challenge this improper strategy, and that the law was squarely on Bryant's side, did Mattel decide to switch course and bring the Adverse Inference Motion that it could have filed months ago.

Mattel first announced its intention to file its Adverse Inference Motion and its related *Ex Parte* Application seeking expedited consideration of the Motion on

2
BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION RE MOTION FOR ADVERSE INFERENCE INSTRUCTION
CASE NO. CV 04-09049 SGL (RNBx)

416459.01

Friday, April 25th, at 3:35 p.m.[1] Werdegar Decl., ¶ 4; Ex. B. Bryant responded on Sunday, April 27th, pointing out to Mattel that it had known of the basis for its motion for months, that Mattel's delay in pursuing this issue had prejudiced Bryant, and that Mattel therefore lacked any basis to seek an expedited hearing. *Id.* Mattel never responded to Bryant's correspondence, but instead—despite knowing that counsel for Bryant were fully engaged with mediation and with filing Bryant's oppositions to Mattel's motions *in limine*—simply filed its Adverse Inference Motion on Monday, April 24th, without having obtained relief from Local Rule 7-3. *Id.* ¶ 4.

As the Court is well aware, there is less than three weeks until the Final Pretrial Conference and the commencement of jury selection, and only four weeks until trial itself begins. Moreover, additional summary judgment issues still need to be argued and decided, dozens of disputed jury instructions still need to be addressed, a total of 29 separate motions *in limine* are pending, and the parties' respective objections to the more than 8,000 proposed trial exhibits and lengthy deposition designations from numerous witnesses need to be ruled on. There are also numerous motions objecting to orders of the Discovery Master to be briefed, argued, and decided, most of which have been filed by Mattel (for which Mattel also is seeking expedited review). There is simply no room in the Court's schedule for additional issues to be thoroughly addressed by the parties and considered by the Court on an expedited basis. This is particularly true for the serious issues raised in Mattel's Adverse Inference Motion, which require the Court to engage in a detailed evaluation of complex, technical evidence.

---

[1] Not counting Mattel's original January 18th sanctions letter, which, for more than three months, it never re-raised. Werdegar Decl. ¶ 3.

3
BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION RE
MOTION FOR ADVERSE INFERENCE INSTRUCTION
CASE NO. CV 04-09049 SGL (RNBx)

416459.01

## III. ARGUMENT

### A. *Ex parte* applications are subject to heightened scrutiny and *ex parte* relief is rarely justified.

Courts in the Central District have long held that *ex parte* applications are potentially abusive and are in fact commonly abused by litigants. *See, e.g., Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995). "This abuse is detrimental to the administration of just and, unless moderated, will increasingly erode the quality of litigation and present ever-increasing problems ...." *Id.* Consequently, "[e]x parte motions are rarely justified," *id.* at 490, and "are nearly always improper." *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 192 (C.D. Cal. 1989). Indeed, as the Court's Standing Order makes clear, "*ex parte* applications are solely for extraordinary relief." Apr. 14, 2006 Standing Order [Docket No. 33], at 6 (*citing Mission Power*, 833 F. Supp. 488).

Because of the urgency that attends *ex parte* applications, and the disruption they cause in the parties' and the Court's schedules, courts hold such requests and those who file them to greater scrutiny than in the case of regularly filed motions. *See, e.g., Mission Power*, 833 F. Supp. at 492 ("Lawyers must understand that filing an *ex parte* motion ... is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'. There had better be a fire."). Therefore, "ex parte relief will only be granted upon a showing that: (1) the 'moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures;' (2) 'the moving party is without fault in creating the crisis that requires ex parte relief;' *and* (3) that the proposed motion has a likelihood of success on the merits. *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. 05-8493 PA (SHx), 2006 WL 5097404, at * 1 (C.D. Cal. Jun. 15, 2006) (quoting *Mission Power*, 883 F. Supp. at 492-93). The fact that trial is fast approaching, by itself, does not justify *ex parte* relief. *Mission Power*, 883 F.

4

BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION RE MOTION FOR ADVERSE INFERENCE INSTRUCTION
CASE NO. CV 04-09049 SGL (RNBx)

416459.01

Supp. at 493.

Mattel has not even attempted to satisfy any of the prongs of three-part test set forth in *Samsung* and *Mission Power*, much less successfully met its burden of doing so.

**B.   Mattel is solely to blame for its claimed need to have its Adverse Inference Motion heard on an expedited basis.**

Notably, Mattel does not even mention *Mission Power* or any other case law discussing the standards governing *ex parte* relief in its Application. It does not because it cannot satisfy the standards for such relief repeatedly articulated by courts in the Central District. In particular, Mattel cannot show that the "crisis" precipitating its Application is not of its own creation. To the contrary, it is entirely Mattel's doing. As discussed above, Mattel has known of the purported basis for its Adverse Inference Motion since at least February. Yet despite being in possession of all the information necessary to bring its Motion for more than two months, and despite having announced its intention to seek an adverse inference instruction more than three months ago, Mattel needlessly chose to wait until the eve of trial to actually file its Adverse Inference Motion. Mattel claims that it waited to do so because Bryant has taken the position that such a motion is required. Mattel's Appl., at 1. But Bryant's position should not have been in any way surprising to Mattel, since it simply reflects established law within the Ninth Circuit. Mattel would have known of the need to bring the present motion had it simply done its legal homework. Mattel's failure to do so does not in any way justify the *ex parte* relief it is seeking, especially where, as here, Mattel's delay has prejudiced Bryant. To the contrary, it forecloses such relief.

**C.   Mattel's Adverse Inference Motion does not have a likelihood of success on the merits, and Mattel will not be "irreparably prejudiced" if the Motion is not heard prior to trial.**

Mattel also has not satisfied, and cannot, the other two required elements for *ex parte* relief. As set forth in detail in Bryant's Motion *in Limine* No. 13 [Docket

5
BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION RE MOTION FOR ADVERSE INFERENCE INSTRUCTION
CASE NO. CV 04-09049 SGL (RNBx)

416459.01

No. 3065] and the pleadings and declarations cited therein, Mattel's claims of alleged spoliation by Bryant are factually incorrect and highly speculative at best. EE is a lawful computer program that is widely-marketed as a way of protecting the user against identity theft and malicious internet cookies and speeding up the user's internet connection. Its purpose is not just to "eliminate evidence", despite its unfortunate name. And its presence on Bryant's computers, by itself, is not evidence of any misconduct. Mattel and its expert concede that Bryant installed the program two years *before* this litigation began. And as Mattel's own expert witness has confirmed, there is no evidence whatsoever that Bryant ever intentionally deleted from his computers any documents relevant to this litigation at any time when he was under an obligation to preserve evidence. Indeed, there is no evidence that he ever deleted any relevant documents at any point in time, either before or after the lawsuit was filed. Consequently, Mattel's Adverse Inference Motion is unlikely to succeed on the merits. The Motion is factually flawed and exceedingly speculative, and Mattel cannot hope to meet the strict standards imposed by courts in the Ninth Circuit before agreeing to give an adverse inference instruction.

For the same reasons, Mattel will not be "irreparably prejudiced" if the Court does not grant its Application. The worst that will happen is that Mattel will not be able to argue its speculative, and highly-prejudicial to Bryant, spoliation claims to the jury. Mattel will still be able to argue the merits of its substantive claims—which is what the trial case properly should be about; not mini-trials on peripheral issues. In contrast, Bryant will be significantly prejudiced if Mattel's Application is granted. As noted, the calendar between now and the beginning of trial is extremely crowded, and Bryant, an individual litigant defending himself against the claims of a billion dollar company, and his counsel are already stretched thin in responding to the numerous currently pending motions and preparing for trial. *See Mission Power*, 883 F. Supp. at 490-491 (recognizing that

6

BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION RE MOTION FOR ADVERSE INFERENCE INSTRUCTION
CASE NO. CV 04-09049 SGL (RNBx)

416459.01

in filing *ex parte* applications, "[t]he goal often appears to be to surprise opposing counsel or at least form him or her to drop all other work to respond on short notice …. All of this detracts from a fundamental purpose of the adversary system, namely, to give the court the best possibly presentation of the merits and demerits of the case on each side."); *In re Intermagnetics*, 101 B.R. at 193 ("Ex parte applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason.").

In sum, the giving of an adverse inference instruction is an "extreme" sanction that is usually employed only "where the facts of the case are extreme, such as where the destroyed evidence was the very automobile that was the subject of the products liability action." *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("the adverse inference instruction is an extreme sanction and should not be given lightly"). Because of its extreme nature, Bryant needs the time and the opportunity to fully rebut Mattel's spurious allegations, and the Court cannot rush its consideration of this issue. Indeed, Courts usually hold detailed evidentiary hearings, lasting days, before concluding that an adverse inference instruction is permissible. *See Regent Ins. Co. v. Candle Corp. of Am.*, No. Civ. 04-2593 RKH/AJB, 2004 WL 2713251, at *2 n.4 (D. Minn. Nov. 24, 2004) (whether to impose sanctions for spoliation usually determined through a pre-trial evidentiary hearing); *see also Morris v. Union Pacific R.R.*, 373 F.3d 901, 903 (8th Cir. 2004) (noting that district court conducted four days of "sanctions hearings" concerning the defendant's alleged destruction of documents); *Stevenson v. Union Pacific R.R. Co.*, 354 F.3d 739, 743 (8th Cir. 2004) (noting that the district court granted plaintiff's motion for sanctions after a three-day evidentiary hearing). That there is no longer time for this type of detailed consideration is

7
BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION RE MOTION FOR ADVERSE INFERENCE INSTRUCTION
CASE NO. CV 04-09049 SGL (RNBx)

416459.01

entirely Mattel's fault. Mattel should not be rewarded for its own delays, to Bryant's prejudice.

## IV. CONCLUSION

For all the foregoing reasons, the Court should deny Mattel's *Ex Parte* Application in its entirety.

Dated: April 29, 2008

Respectfully submitted,

KEKER & VAN NEST, LLP

By: /s/ Matthew M. Werdegar
MATTHEW M. WERDEGAR
Attorneys for Plaintiff
CARTER BRYANT

8

BRYANT'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION RE MOTION FOR ADVERSE INFERENCE INSTRUCTION
CASE NO. CV 04-09049 SGL (RNBx)

416459.01