1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10          UNITED STATES DISTRICT COURT

11          CENTRAL DISTRICT OF CALIFORNIA

12          EASTERN DIVISION

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14          Plaintiff,                     Consolidated with
                                           Case No. CV 04-09059
15       vs.                               Case No. CV 05-02727

16  MATTEL, INC., a Delaware               **DISCOVERY MATTER**
    corporation,
17                                         **[To Be Heard By Discovery Master
            Defendant.                     Hon. Edward Infante (Ret.)]**
18
                                           MATTEL, INC.'S REPLY IN
19  AND CONSOLIDATED ACTIONS               SUPPORT OF MOTION FOR
                                           PROTECTIVE ORDER LIMITING
20                                         THE TEMPORAL SCOPE OF ITS
                                           PRIVILEGE LOG
21

22                                         **Phase 1:**
23                                         Discovery Cut-off:      January 28, 2008
                                           Pre-trial Conference:   May 19, 2008
24                                         Trial Date:             May 27, 2008

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

I.    THERE IS NO REASON TO DEMAND THAT MATTEL PREPARE
      A PRIVILEGE LOG ON THE EVE OF TRIAL............................................. 3

      A.    MGA Concedes that a Document-by-Document Log Would
            Serve No Purpose.................................................................................. 3

      B.    A Document-by-Document Privilege Log Would Serve No
            Purpose.................................................................................................. 4

II.   MGA'S DEMAND WOULD IMPOSE AN UNDUE BURDEN ON
      THE EVE OF TRIAL ..................................................................................... 5

      A.    The Burden MGA Seeks to Impose is Undue Because It Would
            Require Substantial Time and Expense ................................................ 5

      B.    The Burden MGA Seeks to Impose is Undue -- As Well as
            Prejudicial -- Because it Would Reveal Mattel's Litigation
            Strategy ................................................................................................. 7

III.  MATTEL NEVER AGREED TO LOG PRIVILEGED DOCUMENTS
      FROM THE PERIOD LEADING UP TO THE FILING OF ITS
      COMPLAINT.................................................................................................. 8

IV.   MGA MISREPRESENTS MATTEL'S MOTION ......................................... 12

V.    THE DECLARATIONS OF DEFENDANTS' FORMER COUNSEL
      FAIL TO SUPPORT MGA'S ARGUMENT.................................................. 13

VI.   ALTERNATIVELY, DEFENDANTS SHOULD BE HELD TO THE
      SAME LOGGING REQUIREMENTS AS MATTEL .................................... 14

CONCLUSION.................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

PostX Corp. v. Secure Data Motion
   2004 WL. 2623234 (N.D. Cal. June 9, 2004) ................................................. 4, 7, 8

In re Imperial Corp. of America,
   174 F.R.D. 475 (S.D. Cal. 1997)................................................................. 3, 8

SEC v. Nacchio,
   2007 WL. 21966 (D. Colo. Jan. 25 2007) .................................................... 3

SEC v. Thrasher,
   1996 WL. 125661 (S.D.N.Y. March 20, 1996)................................................ 3, 8

United States v. Gericare Medical Supply Inc.,
   2000 WL. 33156442 (S.D. Ala. Dec. 11 2000)................................................ 3, 8

### **Statutes**

Fed. R. Civ. P.
   Rule 15(c) ................................................................................................ 14
   Rule 26(c) ................................................................................................ 5

1

## **Preliminary Statement**

2      Unable to offer <u>any</u> rationale for the logging of countless documents
3  that are indisputably privileged and completely irrelevant, MGA burdens the
4  Discovery Master with a 29-page digression that mischaracterizes four years of
5  discovery.  Defendants have obviously scoured the record.  What is quite clear is
6  that they have found no evidence that Mattel ever agreed to log privileged
7  documents between the time that it learned it had a claim against Carter Bryant and
8  the filing of its lawsuit.

9      What also is quite clear is that MGA can point to nothing that justifies
10  the burden it seeks to impose on Mattel at this late stage of the litigation.  MGA
11  wants Mattel to embark on a costly and time-consuming logging exercise that
12  provides no legitimate benefit.  Rather, the logging demanded is being sought to
13  give MGA two improper benefits – the disclosure of information about Mattel's
14  research and communications leading up to its complaint, and the interference with
15  Mattel's trial preparation.

16      MGA fails to explain the necessity of a document-by-document
17  privilege log from the period after Mattel learned of the basis for its claims against
18  Bryant up to the filing of its complaint (the "Disputed Period").  Indeed, MGA
19  boldly claims that it is irrelevant whether such a log would serve any purpose.
20  Every case that has addressed the issue, however, has found that a key consideration
21  in determining the scope of a privilege log is whether the log would provide a
22  "material benefit" to the party demanding it.  Where, as here, there is no material
23  benefit, there is no need for a document-by-document log.

24      MGA also unsuccessfully asserts that the creation of a detailed log for
25  the Disputed Period on the eve of trial would not impose an undue burden on Mattel.
26  A burden that would serve no purpose, however, is per se undue.  Moreover, the
27  nature of the task itself and the Declaration of Timothy L. Alger both establish that
28  the burden MGA seeks to impose would be substantial.  The Disputed Period covers

1 | Mattel's counsel's work to initiate the present action. The logging of all of these
2 | documents would be a substantial task which would serve no purpose other than to
3 | harass and burden Mattel, reveal aspects of Mattel's litigation strategy, and distract
4 | its counsel from trial preparations. Moreover, discovery closed more than two
5 | months ago.

6 |       The bulk of MGA's Opposition, however, argues that Mattel agreed to
7 | log all privileged documents created prior to the filing of the present action. Despite
8 | the volume of space it devotes to this argument, <u>MGA fails to offer a single</u>
9 | <u>statement by any Mattel representative agreeing to undertake such a burden.</u>
10 | Instead, MGA contends again and again that the parties agreed not to log privileged
11 | documents created after the filing of Mattel's complaint against Bryant. While
12 | Mattel agrees that the parties agreed to such a practice, it does not help MGA's
13 | argument. An agreement about what to do after the lawsuit was filed is not an
14 | agreement about what to do in the period leading up to the lawsuit and as to the
15 | November 2003 time period, Mattel does not dispute it had notice of the claims it
16 | asserted against Bryant in April 2004. MGA also erroneously claims that Mattel
17 | "explicitly admits" that it was obligated to log all documents until the filing of its
18 | complaint. What Mattel actually stated in its brief, however, was that "Defendants
19 | are likely" to make such an argument. And so they have. But they have failed to
20 | offer any evidence that Mattel entered into such an agreement.

21 |       Finally, MGA offers the declarations of defendants' former counsel to
22 | "refute" the declaration of Michael T. Zeller. In fact, their declarations confirm that
23 | the parties engaged in discussions about the privilege log in the Summer of 2006
24 | and that they <u>never reached an agreement</u> on pre-filing logging practices.
25 | Defendants' former lawyers cannot even keep their story straight, and disagree as to
26 | whether Mattel informed them of its position that it should not be required to log
27 | documents leading up to the filing of its complaint. One denies the subject was ever
28 | discussed, whereas the other concedes Mattel stated its position on the issue.

-2-

1  Notably, neither declaration offers any evidence that Mattel made any statement
2  agreeing to log documents after November 2003 and in the period leading up to the
3  filing of its complaint.

4          Accordingly, because a document-by-document privilege log would
5  provide no material benefit to Defendants but would impose an onerous burden on
6  Mattel on the eve of trial, the Discovery Master should grant Mattel's Motion and
7  limit its log to privileged documents created before November 24, 2003.

8

9  **I.**     **THERE IS NO REASON TO DEMAND THAT MATTEL PREPARE A**
10        **PRIVILEGE LOG ON THE EVE OF TRIAL**

11     **A.**     **MGA Concedes that a Document-by-Document Log Would**
12         **Serve No Purpose**

13         Despite submitting a 30-page opposition, three supporting declarations,
14 evidentiary objections, and over 150 pages of exhibits, MGA fails to explain what
15 purpose a document-by-document privilege log for the Disputed Period would
16 serve. Indeed, in a footnote MGA contends that it is <u>irrelevant</u> whether it has any
17 justification for demanding such a log. (Opp., at 27:22-24).

18         The law is to the contrary. One of the key considerations in cases
19 addressing the scope of privilege logs is whether a document-by-document log
20 would provide a "material benefit" to the party demanding it. <u>See</u> <u>United States v.</u>
21 <u>Gericare Medical Supply Inc.</u>, 2000 WL 33156442, at * 4 (S.D. Ala. Dec. 11 2000)
22 (limiting scope of privilege log because document-by-document log would provide
23 no "material benefit" on party); <u>In re Imperial Corp. of America</u>, 174 F.R.D. 475,
24 478 (S.D. Cal. 1997) (focusing on whether detailed privilege log would provide
25 "material benefit" to party); <u>SEC v. Thrasher</u>, 1996 WL 125661, at * 1 (S.D.N.Y.
26 March 20, 1996). The demanding party cannot simply assert that the log would be
27 of "material benefit," but must make a "particularized showing of need." <u>SEC v.</u>
28 <u>Nacchio</u>, 2007 WL 21966, at *11 (D. Colo. Jan. 25 2007) (granting protective order

-3-

1 | because opposing party failed to make a "particularized showing of need" for
2 | detailed log).

3 | Indeed, the case MGA relies on affirms that whether a document-by-
4 | document privilege log would provide a "material benefit" is highly relevant. In
5 | PostX Corp. v. Secure Data Motion, the district court affirmed that "it may be
6 | appropriate for the Court to permit the holder of withheld documents to provide
7 | summaries of the documents by category or otherwise limit the extent of its
8 | disclosure." 2004 WL 2623434, at *1 (N.D. Cal. June 9, 2004). The dispositive
9 | issue was whether preparation of a detailed log "would be of material benefit" to the
10 | party demanding it. Id. In PostX, a detailed log was of material benefit because it
11 | would have be highly relevant to the demanding party's claims. Here, MGA has not
12 | explained, much less proven, why a log for the Disputed Period would be relevant.[1]
13 | This is a tacit admission that the preparation of a detailed log would serve no
14 | purpose other than to harass and burden Mattel. This is the very definition of undue
15 | burden and standing alone is sufficient reason to grant Mattel's Motion.

16 | **B.   A Document-by-Document Privilege Log Would Serve No**
17 | **Purpose**

18 | MGA's failure to explain any material benefit a detailed log would
19 | provide is dispositive, but any such explanation would have failed because a
20 | document-by-document log of the Disputed Period would serve no purpose.
21 | Discovery closed more than two months ago, except for depositions that the Court
22 | granted Mattel leave to take. The trial is less than one month away. The parties
23 | should be focusing on pre-trial preparations, not pointless, time consuming tasks of
24 | no benefit.

25 |

26 | [1]   MGA cites to cases which hold that blanket assertions of privilege are not
27 | generally acceptable. None of the cases, however, involved a request to narrow the
temporal scope of a privilege log. Other than PostX, MGA simply ignores the many
28 | cases addressing this issue.

-4-

1    When push came to shove, MGA conceded by its silence that a detailed
2  privilege log would serve no purpose.  The only <u>possible</u> purpose a detailed
3  privilege log might serve is if it were relevant to MGA's statute of limitations
4  arguments.  But as explained in Mattel's Motion, the parties and the Court agree that
5  Mattel was on notice of its claims by November 24, 2003.[2]  As a result, no statute of
6  limitation issue remains for the Disputed Period.  Notably, MGA does not contest
7  the irrelevance of such a log to its statute of limitations defense.  Thus, a document-
8  by-document privilege log for the period from November 24, 2003 to April 27, 2004
9  would serve no purpose and provide no material benefit to MGA.

10

11  **II.    MGA'S DEMAND WOULD IMPOSE AN UNDUE BURDEN ON THE**
12  **EVE OF TRIAL**

13    MGA contends that Mattel has not offered "a single shred of evidence"
14  that logging documents from the Disputed Period will be "overly burdensome."
15  (Opp., at 23:16-17).  As an initial matter, the question is whether the burden MGA
16  seeks to impose on Mattel is <u>undue</u>.  <u>Fed. R. Civ. P.</u> 26(c) (protective order should
17  be granted to prevent "undue burden").  Where – as here – the burden the opposing
18  party seeks to impose would serve no purpose, it is per se undue.  On this basis
19  alone, the Discovery Master should grant Mattel's motion.

20    **A.    The Burden MGA Seeks to Impose is Undue Because It**
21    **Would Require Substantial Time and Expense**

22    MGA's assertion that the logging of documents would not impose a
23  significant burden ignores the nature of the task it seeks to impose on Mattel.  MGA
24  downplays the importance of the time period at issue by dismissing it as a "short
25  five-month period." (Opp., at 24:9.)  But those five months are the period from the
26  date on which Mattel learned that it may have claims against Bryant up to the filing
27

28    [2]   Motion, at 7:4-12.

1    of Mattel's complaint.  It spans Mattel's counsel's investigation into the basis of

2    Mattel's potential claims, the legal analysis of the facts and claims, consultation with

3    potential witnesses and experts, and the preparation of the complaint itself.

4    Obviously, this was a busy time and resulted in the generation of a substantial

5    quantity of material, including investigative materials, the exchange of letters and

6    memos between Mattel and its lawyers, and the preparation and exchange of drafts

7    of the complaint and comments on the drafts.  Notably, MGA's demand

8    encompasses not only material in Mattel's legal files, but those of Mattel's litigation

9    counsel.  Such documents are especially sensitive and itemizing them on a privilege

10   log would be especially problematic.

11          Furthermore, the severity of the burden MGA seeks to impose is

12   established by the Declaration of Timothy L. Alger.  Mr. Alger has supervised

13   Mattel's production efforts and the preparation of the Mattel's privilege log in this

14   matter.  He is well placed to evaluate the burden the logging of all privileged

15   documents created in the months leading up to the filing of Mattel's complaint.  His

16   assessment that the task would require substantial attorney time and disrupt trial

17   preparations is uncontested.[3]

18          Finally, the preparation of a document-by-document privilege log for

19   the Disputed Period would not occur in a vacuum.  As MGA acknowledges, it

20   would impose the burden on the very eve of trial.  (Opp., at 24:12 20.)

21   Nevertheless, MGA argues that the proximity to trial is irrelevant because Mattel

22   agreed to log these documents years ago.  But, as discussed below, Mattel never

23   represented that it would log all documents leading up to the filing of its complaint.

24   MGA has failed to offer any evidence supporting its assertion, and its mantra-like

25   repetition of this contention does not make it true.

26

27

_____

28   [3] Alger Dec., ¶ 5.

1    The declaration of MGA's former counsel concedes Mattel informed-
2  Defendants in the summer of 2006 that Mattel did not believe it was obligated to log
3  documents leading up to the filing of its complaint.[4]  And it is undisputed that
4  counsel for Mattel informed defendants again in January 2008 that it was not
5  Mattel's practice to log documents leading up to the filing of its complaint.[5]
6  Nevertheless, MGA did nothing for over a year-and-a-half, undoubtedly in
7  recognition that MGA and Bryant did not want to log their privileged documents in
8  the periods immediately preceding the filings of their own complaints.

9    **B.**    **The Burden MGA Seeks to Impose is Undue -- As Well as**
10    **Prejudicial -- Because it Would Reveal Mattel's Litigation**
11    **Strategy**

12    MGA does not dispute that the production of a document-by-document
13  privilege log would reveal aspects of Mattel's litigation strategy on the eve of trial.
14  Instead, MGA argues that such prejudice is irrelevant.  The only authority MGA
15  cites is PostX.  As discussed above, the dispositive issue in PostX was that a
16  document-by-document privilege log was highly relevant to the demanding party's
17  claims and would therefore be of material benefit.  Here, the log demanded would
18  serve no proper purpose.  To the contrary, it would disclose to defendants Mattel's
19  research preparatory to suing Bryant and Mattel's litigation strategy.  This, of
20  course, is not legitimate discovery.  In PostX the possibility of revealing litigation
21  strategy was only vaguely articulated.  Here, it is a very real threat:  MGA seeks
22  disclosure of Mattel's sources of information and what it did to build its case against
23  defendants.  The period to be logged is a crucial one, as Mattel was drafting its

24

25    [4] Declaration of Diana M. Torres, ¶ 3.  Diana Torres' characterization of the
     conversation as a "request" by Mattel that MGA "rejected" is mere "spin."  If MGA
26  did not like Mattel's views about the scope of the privilege log, MGA could have
     sought a Court order.  Mattel made no "request" and Ms. Torres was in no position
27  to "reject" it.
28    [5] Alger Dec., ¶ 2.

1  complaint, conducting legal analysis and investigating the underlying facts, all in
2  preparation of initiating this action.

3          Several courts have found that the preparation of a document-by-
4  document privilege log carries with it the very real threat of revealing litigation
5  strategy.  See, e.g., United States v. Gericare Medical Supply Inc., 2000 WL
6  33156442 (S.D. Ala. Dec. 11, 2000) (detailed privilege log "would have revealed
7  the identity of each person interviewed, information that itself would reveal
8  plaintiffs' strategy and mental processes"); In re Imperial Corp. of America,
9  174 F.R.D. at 478 (granting protective order in part because "disclosure of the
10 pattern of their counsel's consultants and communications might reveal aspects of
11 their litigation strategy"); Thrasher, 1996 WL 125661, *1 (granting protective order
12 because "disclosure of the pattern of [] attorney's consultations with other counsel
13 might reveal some aspects of his litigation strategy").  Indeed, even PostX states that
14 the revelation of litigation strategy is a factor that weighs against production of a
15 document-by-document privilege log.  2004 WL 2623234, at *1.[6]

16          Accordingly, the Discovery Master should grant Mattel's motion for a
17 protective order limiting the temporal scope of its privilege log.

18

19 **III.   MATTEL NEVER AGREED TO LOG PRIVILEGED DOCUMENTS**
20 **FROM THE PERIOD LEADING UP TO THE FILING OF ITS**
21 **COMPLAINT**

22          MGA asserts that Mattel agreed to log all privileged documents created
23 prior to April 27, 2004, but offers no evidence that actually supports that claim.

24 _____
25   [6]  MGA also claims that Mattel's production of over 900,000 pages of
   documents in this matter is "paltry" and complains that Mattel has served discovery
26 requests on third parties.  (Opp., at 26:4-27:4.)  None of this is relevant to the issue
   before the Discovery Master and Mattel therefore will not burden the Discovery
27 Master by re-litigating the parties' discovery disputes.  This Motion should be
28 decided on its own merits.

                                            -8-

1  Instead, MGA points again and again to the parties' agreement that they need not log
2  documents created after Mattel filed its complaint.  Mattel does not dispute that
3  agreement.  Indeed, Mattel stated in its Motion that "[t]he parties have already
4  agreed that privileged documents created after April 27, 2004 . . . need not be placed
5  on their respective logs." (Motion, 6:8-10.)  However, Mattel never agreed to log all
6  privileged documents created in the period leading up to the filing of its complaint.
7  The periods are distinct.

8              Attempting to confuse the issue, MGA compiles a compendium of
9  transcripts, letters, declarations, and other exhibits which it claims demonstrates the
10  existence of an agreement by Mattel that it would log privileged documents leading
11  up to the filing of its April 27, 2004 complaint.  Not one of these documents
12  establishes that Mattel agreed to log all privileged documents after the discovery of
13  its claim in November 2003.

14              • The May 2, 2005 Transcript.  The subject of the meet and confer
15  recorded in this transcript was discovery related to an alleged inquiry by Mattel into
16  an anonymous letter received by Mattel in 2002.  MGA's expressed concern over
17  logging was based on its desire to identify documents relevant to its statute of
18  limitations defense.  The parties' general logging practices were not at issue.  The
19  limited scope of the discussions about privilege logs at the May 2005 conference
20  would be obvious from the transcript – except that MGA conveniently truncated the
21  portions submitted to the Discovery Master.  Had MGA included one more page of
22  the transcript in its exhibit, it would have revealed that MGA's concern of the
23  discussions of a log were related to "the investigations [that] presumably would
24  have taken place in 2002, which is certainly well before the action was
25  commenced."[7]  Counsel were not discussing the logging of privileged documents
26  leading up to the filing of Mattel's Complaint against Bryant on April 27, 2004.  It

27  [7]  5-20-05 Transcript, at 420:23-421:8, Exh. 1 to the Declaration of
28  Christopher E. Price (Price Dec.").

1   was part of MGA's efforts to buttress its statute of limitations defense, which MGA
2   concedes is not the case for any log for the Disputed Period.

3          Moreover, the meet-and-confer was part of an ongoing discussion.[8]  No
4   agreement was reached at the conference and counsel for Mattel did not state that
5   Mattel would log all privileged documents leading up to the filing of the complaint.
6   There was no stipulation or Court order on the topic.  Counsel for Mattel simply
7   noted that it was customary that parties were not required to log documents created
8   after the filing of the complaint and said it "wouldn't be an issue" to log the 2002
9   documents mentioned by counsel for MGA.[9]

10          • The June 20, 2006 Transcript.  The subject of this hearing was again
11  discovery related to the alleged 2002 inquiry into an anonymous letter received by
12  Mattel.  As before, this was at issue because of its asserted relevance to MGA's
13  statute of limitation and laches defenses.  As conceded by Dale Cendali – then
14  counsel for MGA – "the issue here is that to the extent that they're claiming in
15  particular a work product anticipation of litigation in 2002, that is very relevant to
16  their statute of limitations defense."[10]  Even as to the 2002 documents, however,
17  counsel for Mattel raised concerns over the logging of any documents from Quinn
18  Emanuel's own files.  No agreement was reached, and the parties discussed the issue
19  further during July and August 2006.[11]

20          • Correspondence Regarding Logging.  MGA refers to various letters
21  the parties exchanged that refer to the logging of privileged documents.  Without
22  exception, every letter from counsel for Mattel correctly recounts the parties'
23  agreement that documents created after the filing of Mattel's complaint need not be
24  logged.  The issue of Mattel's logging of documents created during the Disputed
25

26     [8]  Id., Zeller Dec., ¶¶ 2-3.
        [9]  5-20-05 Transcript, at 421:9-10, Exh. 1 to the Price Dec.
27     [10]  6-20-06 Transcript, at 40:6-9, Exh. 3 to the Marsh Dec. (emphasis added).
28     [11]  Zeller Dec., ¶¶ 2-4.

-10-

REPLY ISO MOTION FOR PROTECTIVE ORDER

1   Period was not at issue in these circumstances.  For example, MGA and Mattel
2   exchanged letters about MGA's request that it be permitted to remove documents
3   from its privilege log that post-dated the filing of Mattel's complaint.[12]  The situation
4   involved MGA's log, not Mattel's.  Moreover, the documents fell within the parties'
5   agreement that documents created after the filing of Mattel's complaint need not be
6   logged.  Mattel's obligation regarding the logging of privileged documents created
7   in the period leading up to the filing of its complaint was not discussed.

8            • <u>April 7, 2008 Transcript</u>.  The issue at this hearing was Mattel's
9   motion to disqualify Skadden Arps and one of MGA's experts, Christina Tomiyama.
10  The basis for Mattel's motion to disqualify, which Judge Lawson agreed with,[13] was
11  that Ms. Tomiyama had previously worked for Mattel and was privy to privileged
12  communications and discussions with Mattel's counsel about this lawsuit.  MGA
13  nevertheless retained her, discussed her work while at Mattel, and designated her as
14  an expert.[14]  As part of its opposition to the disqualification motion, MGA argued
15  that Ms. Tomiyama had not been privy to any privileged communications while at
16  Mattel.  The basis for MGA's argument was that no such communications were on
17  Mattel's privilege log.  As counsel for Mattel pointed out, however, the reason no
18  such communications were logged was because Ms. Tomiyama began working with
19  Mattel's counsel on this litigation "after the lawsuit was filed" and the parties had an
20  agreement not to log such documents.[15]  As with the correspondence mentioned
21  above, the issue of Mattel's obligations to file pre-filing documents was not at issue
22  and was not addressed.

23

24   _____
25   [12]   Exh. 7 to the Marsh Dec.
     [13]   April 8, 2008 Order re: Motion for Disqualification, at 1-2, Exh. 2 to the
26   Price Dec.
     [14]   April 7, 2008 Hearing Transcript re: Mattel's Motion to Disqualify, at 10:1-
27   14:1, Exh. 4 to the Price Dec.
28   [15]   April 7, 2008 Transcript, at 78:2-6, Exh. 1 to the Marsh Dec.

1  **IV.   MGA MISREPRESENTS MATTEL'S MOTION**

2            In addition to misrepresenting the parties' agreement about logging,

3  MGA mischaracterizes Mattel's motion by claiming that it concedes that Mattel

4  "was obligated to log all privileged documents leading up to the filing of the

5  complaint." (Opp., at 5:10-13.) The footnote on which MGA relies explicitly

6  denies what MGA claims it states. The note states that "no agreement" about

7  logging for the Disputed Period "was reached in the earlier discussions." (Motion,

8  at 6:25 (emphasis added).) The selectively parsed language MGA quotes is part of a

9  sentence which anticipates what MGA will argue in opposing this motion and then

10 expressly refutes that argument:

11       Defendants are likely to assert in opposition to this Motion that

12       discussions about logging prior to the conference of counsel in the

13       summer of 2006, when the parties discussed MGA's first set of

14       Document Requests, confirm that Mattel was obligated to log all

15       privileged documents up to the filing of the complaint. Earlier

16       discussions focused on the logging of privileged documents relating to

17       Mattel's investigation of Bryant and MGA in 2002. No agreement was

18       reached in the earlier discussions. Moreover, no agreement was

19       reached as to general logging practices when the parties met-and-

20       conferred about the document requests in the summer of 2006.

21 (Motion, at 6 n. 10 (citations omitted) (emphasis added).)

22            Clearly, Mattel was not conceding any agreement about pre-filing

23 logging practices was reached, but instead was merely anticipating MGA's argument

24 to the contrary.

25

26

27

28

07209/2488380.1

-12-

REPLY ISO MOTION FOR PROTECTIVE ORDER

## V.   THE DECLARATIONS OF DEFENDANTS' FORMER COUNSEL FAIL TO SUPPORT MGA'S ARGUMENT

MGA also claims that the Declaration of Michael Zeller has been "completely refuted" by the declarations of Defendants' former counsel, Diane M. Torres and Douglas A. Wickham. (Opp., at 22:17.) Tellingly, MGA submits no declaration from Ms. Cendali, with whom Mr. Quinn and Mr. Zeller most directly discussed the issues. Although Torres and Wickham assert that Mr. Zeller's declaration is "inaccurate," they confirm Mr. Zeller on key points. Both agree with Mr. Zeller that the parties engaged in a series of meet and confer sessions in the summer of 2006.[16] Both agree with Mr. Zeller that the parties did not reach an agreement about the logging of pre-filing privileged documents.[17] As Mr. Zeller states in his declaration, "Various proposals were discussed, but ultimately no resolution was reached."[18]

As to whether Mattel stated its position that it was not obligated to log privileged documents leading up to the filing of the complaint, Torres and Wickham contradict one another. Wickham insists that counsel for Mattel never "proposed any date earlier than April 27, 2004 after which the parties would not be required to log privilege documents."[19] Torres, on the other hand, concedes that counsel for Mattel argued that Mattel should "be allowed to forego logging documents between Mattel and its outside counsel for a short period of time preceding the filing of Mattel's complaint.[20] Thus, far from refuting Mattel's account, Ms. Torres confirms it.[21]

---

[16] Wickham Dec., ¶ 5; Torres Dec., ¶ 3.
[17] Wickham Dec., ¶¶ 4-6; Torres Dec., ¶ 3.
[18] Zeller Dec., ¶ 4.
[19] Wickham Dec., ¶ 6.
[20] Torres Dec., ¶ 3.
[21] Torres' further assertion that she nevertheless had no reason to believe that Mattel would not be logging privileged documents leading up to the filing of the complaint is not credible. That would have been obvious from the privilege log itself, which contains only a limited number of post-November 2003 documents that (footnote continued)

**VI.   ALTERNATIVELY, DEFENDANTS SHOULD BE HELD TO THE SAME LOGGING REQUIREMENTS AS MATTEL**

MGA also fails to explain why it should be subject to a different standard than Mattel for the logging of privileged documents.  If Mattel is required to log documents leading up to the filing of its complaint in April 2004, Bryant should be required to log all allegedly privileged documents up to the filing of his complaint against Mattel in November 2004, and MGA should be required to log all allegedly privileged documents up to the filing of its complaint against Mattel in April 2005.  There's nothing "retaliatory" about this – it is a matter of fairness.  In consolidating the three actions, the Court did not relieve defendants of discovery obligations they would have had if the actions had remained separate.

Indeed, MGA does not even argue that such logging by defendants until the filing of the defendants' complaints would be burdensome.  If defendants do not consider the logging of documents up until the filing of their complaints to be an undue burden or an interference in their trial preparations, they should readily agree to the same logging standards as they seek to impose on Mattel.

Finally, MGA's argument that Mattel should log up until the filing of their counterclaims in MGA's unfair competition case does not withstand any scrutiny.  The District Court has ruled that the counterclaims "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading," i.e., the Mattel complaint filed in April 2004, under the relations-back principles in Rule 15(c).[22]  Thus, as a matter of law under Judge Larson's rulings, Mattel's privileged

---

were the subject of court orders or agreements of the parties relating to production and/or specific logging.  The absence of documents in the log relating to Mattel's development of its case and drafting of a complaint between November 2003 and April 2004 certainly confirmed to defendants what Mattel's counsel had already stated.  As Mr. Zeller's Declaration attests, Mattel stated its position but that the parties did reach a resolution of logging practices, and neither Torres or Wickham point to any statement by counsel for Mattel agreeing to log documents from leading up to the filing of its complaint.
[22]   January 11, 2007 Order, Exh. 3 to the Price Dec.

1   documents relating to the time period leading up to that filing could have no

2   relevance to statute of limitations or laches, either

3

4                                    **Conclusion**

5           For all of the foregoing reasons, Mattel respectfully requests that the

6   Discovery Master grant this Motion and enter an order limiting the temporal scope

7   of Mattel's privilege log to documents created before November 24, 2003.

8

9   DATED:  April 29, 2008            QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
10

11                                   By
12                                      Timothy L. Alger
                                        Attorneys for Mattel, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over the age of

3   eighteen years and not a party to the within action; my business address is 865 South Figueroa

4   Street, 10th Floor, Los Angeles, California 90017.

5      On April 29, 2008, I served true copies of the following documents described as:

6   **MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

7   **LIMITING THE TEMPORAL SCOPE OF ITS PRIVILEGE LOG** on the parties in this

8   action as follows:

| | |
|---|---|
| 9<br>10<br>11 | Keker & Van Nest, LLP<br>John W. Keker, Esq./Michael H. Page, Esq.<br>Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111 | |

12      [√]      **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart

13   Oliver & Hedges for collecting and processing correspondence for mailing with the United States

14   Postal Service.  Under that practice, it would be deposited with the United States Postal Service

15   that same day in the ordinary course of business.  I enclosed the foregoing in sealed envelope(s)

16   addressed as shown above, and such envelope(s) were placed for collection and mailing with

17   postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary

18   business practices.

19      [√]      **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other

20   facility regularly maintained by the overnight service carrier, or delivered such document(s) to a

21   courier or driver authorized by the overnight service carrier to receive documents, in sealed

22   envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or

23   provided for, addressed to the person(s) being served.

24      I declare that I am employed in the office of a member of the bar of this court at whose

25   direction the service was made.

26      Executed on April 29, 2008, at Los Angeles, California.

27

28                                                                   Kelly Velázquez

07209/2459122.1

1

## PROOF OF SERVICE

2        I am employed in the County of Los Angeles, State of California.  I am over the age of

3   eighteen years and not a party to the within action; my business address is 865 South Figueroa

4   Street, 10th Floor, Los Angeles, California 90017.

5        On April 29, 2008, I served true copies of the following documents described as:

6   **MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

7   **LIMITING THE TEMPORAL SCOPE OF ITS PRIVILEGE LOG** on the parties in this

8   action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071 | Overland Borenstein Scheper & Kim LLP<br>Mark E. Overland, Esq/David C. Scheper Esq<br>Alexander H. Cote Esq<br>601 West Fifth Street, 12th Floor<br>Los Angeles, CA  90071-2025 |

12        [√]    **[PERSONAL]** by personally delivering the document listed above to the person(s)

13   at the address(es) set forth above.

14

15        I declare that I am employed in the office of a member of the bar of this court at whose

16   direction the service was made.

17        Executed on April 29, 2008, at Los Angeles, California.

18

19

20                                                    _____

21                                                    Dave Quintana

22

23

24

25

26

27

28

07209/2459122.1