1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12 | CARTER BRYANT, an individual,      | CASE NO. CV 04-9049 SGL (RNBx)
   |                                    | Consolidated with
13 |           Plaintiff,               | Case Nos. CV 04-09059 & CV 05-2727
   |                                    |
14 |      vs.                           | **DISCOVERY MATTER**
   |                                    |
15 | MATTEL, INC., a Delaware           | **[To Be Heard By Hon. Edward**
   | corporation,                       | **Infante (Ret.) Pursuant To Order Of**
16 |                                    | **December 6, 2006]**
   |           Defendant.               |
17 |                                    | DECLARATION OF CHRISTOPHER
   |                                    | E. PRICE IN SUPPORT MATTEL,
18 | AND CONSOLIDATED ACTIONS           | INC.'S REPLY IN SUPPORT OF
   |                                    | MOTION FOR PROTECTIVE ORDER
19 |                                    | LIMITING THE TEMPORAL SCOPE
   |                                    | OF ITS PRIVILEGE LOG
20 |                                    |
   |                                    | Date:  TBA
21 |                                    | Time:  TBA
   |                                    | Place:  TBA
22 |                                    |
   |                                    | **Phase 1**
23 |                                    | Discovery Cut-Off:   January 28, 2008
   |                                    | Pre-Trial Conference: May 19, 2008
24 |                                    | Trial Date:          May 27, 2008

25

26

27

28

DECLARATION OF CHRISTOPHER E. PRICE

## DECLARATION OF CHRISTOPHER E. PRICE

I, Christopher E. Price, declare as follows:

1.     I am a member of the bar of the State of California.  I am Of Counsel with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.     Attached as Exhibit 1 is a true and correct copy of excerpts of the transcript from the parties' May 20, 2005 conference, Vol. III.

3.     Attached as Exhibit 2 is a true and correct copy of the Court's April 8, 2008 Order.

4.     Attached as Exhibit 3 is a true and correct copy of the Court's January 11, 2007 Order.

5.     Attached as Exhibit 4 is a true and correct copy of excerpts of the transcript from the April 7, 2008 hearing regarding Mattel's Motion to Disqualify.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 29, 2008, at Los Angeles, California.

Christopher E. Price

07209/2488125.1

**Page 1**

DECLARATION OF CHRISTOPHER E. PRICE

Exhibit 1

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., A DELAWARE    )
CORPORATION,                )
                            )
        PLAINTIFF,          )
                            )
    VS.                     ) NO. CV 04-9059 NM(RNBX)
                            )
CARTER BRYANT, AN           )
INDIVIDUAL; AND DOES 1      )
THROUGH 10, INCLUSIVE,      )
                            )
        DEFENDANTS.         )
                            )
                            )
AND RELATED COUNTER-CLAIM.  )
_____ )

VOLUME III

TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, MAY 2, 2005

REPORTED BY:

KAREN E. KAY
C.S.R. NO. 3862, R.M.R., C.R.R.

**LUDWIG KLEIN**
REPORTERS & VIDEO, INC.
10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681      FAX 818.508.6326
e-mail: lois@ludwigklein.com

JOB NO.
41936LMF

Exhibit 1
Page 2

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3
     MATTEL, INC., A DELAWARE    )
4    CORPORATION,                )
                                 )
5              PLAINTIFF,        )
                                 )
6         VS.                    )  NO. CV 04-9059 NM(RNBX)
                                 )
7    CARTER BRYANT, AN           )
     INDIVIDUAL; AND DOES 1      )
8    THROUGH 10, INCLUSIVE,      )
                                 )
9              DEFENDANTS.       )
                                 )
10                               )
     CARTER BRYANT, ON BEHALF    )
11   OF HIMSELF, ALL PRESENT     )
     AND FORMER EMPLOYEES OF     )
12   MATTEL, INC., AND THE       )
     GENERAL PUBLIC,             )
13                               )
               COUNTER-CLAIMANT, )
14                               )
          VS.                    )
15                               )
     MATTEL, INC., A DELAWARE    )
16   CORPORATION,                )
                                 )
17             COUNTER-DEFENDANT.)
     _____ )
18

19            TRANSCRIPT OF PROCEEDINGS, VOLUME III, TAKEN ON

20            BEHALF OF DEFENDANTS AT 2049 CENTURY PARK EAST,

21            LOS ANGELES, CALIFORNIA, COMMENCING AT 9:46

22            A.M. ON MONDAY, MAY 2, 2005, BEFORE KAREN E.

23            KAY, C.S.R. NO. 3862, R.M.R., C.R.R., A

24            CERTIFIED SHORTHAND REPORTER IN AND FOR THE

25            COUNTY OF LOS ANGELES, STATE OF CALIFORNIA.

                                                        415
                         VOLUME III
                         Exhibit 1
                         Page 3

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    APPEARANCES:

2         FOR THE PLAINTIFF AND COUNTER-DEFENDANT:

3              QUINN EMANUEL
               BY:  MICHAEL T. ZELLER
4                  ATTORNEY AT LAW
               865 SOUTH FIGUEROA STREET
5              TENTH FLOOR
               LOS ANGELES, CALIFORNIA 90017
6              213.624.7707

7         FOR THE DEFENDANT AND COUNTER-CLAIMANT CARTER BRYANT:

8              LITTLER MENDELSON, P.C.
               BY:  DOUGLAS A. WICKHAM
9                  ATTORNEY AT LAW
               2049 CENTURY PARK EAST
10             FIFTH FLOOR
               LOS ANGELES, CALIFORNIA 90067.3107
11             310.553.0308

12        FOR THE DEFENDANT M.G.A. ENTERTAINMENT, INC.:

13             O'MELVENY & MYERS, L.L.P.
               BY:  PAULA E. AMBROSINI
14                 ATTORNEY AT LAW
                       AND
15                 MATTHEW EASTUS
                   ATTORNEY AT LAW
16             400 SOUTH HOPE STREET
               FIFTEENTH FLOOR
17             LOS ANGELES, CALIFORNIA 90071.2899
               213.430.6000
18

19

20

21

22

23

24

25

                                                      416
                        VOLUME III

Exhibit 1
Page 4

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1     PRODUCE IN RELIANCE UPON.  I MEAN THERE'S NOTHING THAT'S

2     BEING WITHHELD, YOU KNOW, WITH RESPECT TO THE CATEGORIES

3     AND, YOU KNOW, TO THE EXTENT WE SAID WE WERE GOING TO

4     PRODUCE SOMETHING THAT'S BEING WITHHELD BECAUSE IT'S

5     CONFIDENTIAL.  BUT, OF COURSE, WE'RE PRODUCING IT

6     SUBJECT TO AND IN RELIANCE UPON THE PROTECTIVE ORDER.

7     AND IF FOR WHATEVER REASON WHEN WE DID THE RESPONSES,

8     THE PROTECTIVE ORDER HADN'T BEEN ENTERED YET, YOU KNOW,

9     I'M GLAD AND HAPPY TO CLARIFY.

10           MR. WICKHAM:  OKAY.  WHEN HE GETS DOWN, WE'LL

11    GET COPIES RUN OF THAT.

12           WHAT ABOUT THE PRIVILEGE ISSUE?

13           MR. ZELLER:  WELL, I THINK THE SAME COMMENTS

14    APPLY TO THAT.  CERTAINLY TO THE EXTENT THERE'S A

15    PRIVILEGED DOCUMENT THAT WOULD OTHERWISE BE RESPONSIVE,

16    YOU KNOW, TO THE REQUESTS, AGAIN, SUBJECT TO, YOU KNOW,

17    THE STATEMENTS THAT WE'VE MADE AND, YOU KNOW, TO THE

18    EXTENT WE'RE SAYING WE'RE PRODUCING SOMETHING, IT WOULD

19    CERTAINLY BE REFLECTED IN THE PRIVILEGE LOG.  THAT'S AT

20    LEAST THE INTENT.  I MEAN I GUESS ONE THING WE NEED TO

21    PROBABLY DISCUSS IS A MORE GENERAL PROPOSITION ON THAT

22    PARTICULAR ISSUE OF WHETHER WE'RE GOING TO PUT ANY

23    PARTICULAR TIME PARAMETERS ON, YOU KNOW, THE PRIVILEGE

24    LOG.

25           MR. WICKHAM:  THE TIMING OF PUTTING THINGS ON

419

VOLUME III

Exhibit 1
Page 5

LUDWIG KLEIN REPORTERS & VIDEO, INC.  800.540.0681

1    THE PRIVILEGE LOG?

2             MR. ZELLER:  NO.  I'M SORRY.  WHETHER OR NOT

3    THERE'S SOME CUTOFF DATE FOR THINGS THAT WOULD BE ON THE

4    PRIVILEGE LOG.  I MEAN CERTAINLY JUST AS A GENERAL

5    CUSTOMARY MATTER, MOST PEOPLE, OF COURSE, DON'T PUT ON

6    THE PRIVILEGE LOG, YOU KNOW, THINGS, YOU KNOW, AFTER THE

7    LAWSUIT IS COMMENCED.  YOU KNOW, I DON'T KNOW THAT WE'VE

8    EVER HAD AN EXPRESS OR EXPLICIT DISCUSSION ABOUT WHAT

9    UNDERSTANDING, IF ANY, THE PARTIES HAVE BEEN PROCEEDING

10   ON IN TERMS OF THAT.

11             MR. WICKHAM:  CERTAINLY MY NORMAL PRACTICE IS

12   THAT FROM THE DATE THAT THE ACTION IS FILED, I WOULD NOT

13   BE PUTTING THINGS ON THE PRIVILEGE LOG BECAUSE TO DO

14   OTHERWISE WOULD REQUIRE ME TO LIST MY ENTIRE LITIGATION

15   FILE.

16             MR. ZELLER:  RIGHT.

17             MR. WICKHAM:  SO AT LEAST IN TERMS OF MY

18   OPERATING PRESUMPTION, THAT'S WHERE I'VE BEEN GOING ON

19   THIS.

20             MR. ZELLER:  MY UNDERSTANDING IS THAT WE'VE

21   BEEN DOING THE SAME ON THAT, JUST SO WE'RE CLEAR ON

22   THAT.

23             MR. WICKHAM:  I MEAN FOR OUR PART, THE

24   SENSITIVITY TO THE ISSUE IS ONE THAT RELATES TO THE

25   OBJECTIONS THAT WE WERE EXPERIENCING DURING ALLAN KAY'S

Exhibit 1
Page 6

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    DEPOSITION AND OTHER DEPOSITIONS WHERE QUESTIONS WERE

2    ASKED CONCERNING THE INVESTIGATION, AND THOSE QUESTIONS

3    WERE BEING MET WITH PRIVILEGE-TYPE OBJECTIONS.  AND ANY

4    INVESTIGATION WOULD HAVE TAKEN PLACE IF IT WAS PROMPTED

5    BY THE ANONYMOUS LETTER GOING TO MR. ECKERT.  THE

6    INVESTIGATIONS PRESUMABLY WOULD HAVE TAKEN PLACE IN

7    2002, WHICH CERTAINLY IS WELL BEFORE THE ACTION WAS

8    COMMENCED.

9            MR. ZELLER:  RIGHT.  THAT WOULDN'T BE AN ISSUE

10   THERE.  I DON'T HAVE OUR PRIVILEGE LOG, SO I DON'T KNOW

11   TO WHAT DEGREE THAT SORT OF THING IS ALREADY ON THERE.

12           MR. WICKHAM:  WE DIDN'T SEE ANYTHING ON THERE

13   THAT MET THE CATEGORIES IN THESE REQUESTS.

14           MR. ZELLER:  WHICH REQUESTS?

15           MR. WICKHAM:  WELL, IT'S 1 THROUGH 4.  I

16   SUPPOSE THERE'S ALSO ANOTHER SHADING OF THE RESPONSE

17   WITH THE QUALIFICATION THAT MATTEL'S PRODUCED DOCUMENTS

18   WHICH ARE CURRENTLY KNOWN BY MATTEL TO BE RESPONSIVE AT

19   THE TIME THE DOCUMENT REQUESTS WERE SERVED AND AT THE

20   TIME THEY WERE RESPONDED TO, MATTEL, IN OUR VIEW, WAS

21   TAKING A PARTICULAR VIEW AS TO THE SCOPE OR THE BREADTH

22   OF THE CASE.  THERE HAS BEEN SUBSEQUENT DISCOVERY ON

23   THESE ISSUES.  THERE HAVE BEEN SUBSEQUENT DOCUMENT

24   PRODUCTIONS ON THOSE ISSUES.  AND WE ALSO, YOU KNOW,

25   CERTAINLY HAVE THE BENEFIT OF JUDGE MANILLA'S OPINION ON

1    THE MOTION FOR REMAND.  I GUESS FOR OUR PART, I MEAN IF

2    MATTEL HAS DOCUMENTS THAT ARE RESPONSIVE TO THE REQUEST,

3    EITHER THEY ARE OR THEY'RE NOT, THE SHADING OF THE

4    RESPONSE BY SAYING THAT THEY'RE CURRENTLY KNOWN BY

5    MATTEL TO BE RESPONSIVE COULD BE ONE THAT IS LIKE, WELL,

6    MATTEL DOESN'T KNOW WHAT THIS CASE IS ABOUT.  MATTEL

7    DOESN'T KNOW WHAT ITS DAMAGES ARE ABOUT.  AND SO AS A

8    CONSEQUENCE, IT COULD PROVIDE FOR THE ABILITY TO SAY,

9    YOU KNOW, GEEZ, WE DIDN'T THINK THAT IT WAS RESPONSIVE

10   THEN, BUT WE DO NOW, AND SO WE'RE GOING TO TAKE THIS OUT

11   TWO WEEKS BEFORE TRIAL AND USE THIS.

12           MR. ZELLER:  I DON'T THINK THAT'S WHAT WE'RE

13   SAYING THERE.  MAYBE THERE'S SOME MORE NUANCE, YOU KNOW,

14   POINT OF VIEW I CAN TRY AND PUT ACROSS ONCE WE HAVE THE

15   COPIES BACK HERE WITH THE OBJECTIONS.  BUT I CAN SORT OF

16   SAY THAT FUNDAMENTALLY THERE ARE A COUPLE THINGS GOING

17   ON WITH THESE REQUESTS, MORE WITH RESPECT TO REQUEST

18   NOS. 4 AND 5 AS OPPOSED TO 1, 2, AND 3.  BECAUSE I MEAN

19   WITH RESPECT TO 1, 2, AND 3, SUBJECT TO THAT KIND OF

20   STATEMENT, YOU KNOW, WE'VE SAID WE WOULD PRODUCE

21   ANYTHING ABOUT BRYANT THAT WE CAN FIND OR WE HAVE THAT

22   CERTAINLY PERTAINS TO, YOU KNOW, BRATZ OR WORK HE DID

23   FOR MATTEL, AND WE'VE LISTED THOSE THINGS.  IN GENERAL,

24   THAT'S A PRETTY EASY CATEGORY OF THINGS TO DEAL WITH;

25   HOWEVER, ONE REASON WHY SOME OF THESE RESPONSES ARE

422

VOLUME III

Exhibit 1
Page 8

```
 1                          REPORTER'S CERTIFICATE

 2

 3

 4              I, KAREN E. KAY, CSR. NO. 3862, A CERTIFIED

 5    SHORTHAND REPORTER IN AND FOR THE STATE OF CALIFORNIA,

 6    DO HEREBY CERTIFY:

 7              THAT SAID PROCEEDINGS WERE TAKEN BY ME IN

 8    SHORTHAND AT THE TIME AND PLACE HEREIN NAMED AND WERE

 9    THEREAFTER TRANSCRIBED INTO TYPEWRITING UNDER MY

10    DIRECTION, SAID TRANSCRIPT BEING A TRUE AND CORRECT

11    TRANSCRIPTION OF MY SHORTHAND NOTES:

12              I FURTHER CERTIFY THAT I HAVE NO INTEREST IN

13    THE OUTCOME OF THIS ACTION.

14

15

16        MAY 10, 2005      _____
                            KAREN E.  KAY
17                          CSR NO. 3862

18

19

20

21

22

23

24

25
```

542

Exhibit 1
Page 9

Exhibit 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date:  April 8, 2008

Title:    **CARTER BRYANT -v- MATTEL, INC.**

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

PROCEEDINGS
(issued in chambers):       **ORDER GRANTING MOTION TO DISQUALIFY EXPERT**
                            **ORDER DENYING MOTION TO DISQUALIFY COUNSEL**

        Based on the findings of fact set forth on the record, and for the reasons stated therein, the Court **GRANTS** the motion to disqualify the expert, Christina Tomiyama.

        Toward that end, the Court **ORDERS** the following:

                Counsel for MGA, including in-house counsel, shall have no further contact with Ms. Tomiyama regarding this litigation except as necessary to effectuate the Court's orders.

                All counsel for MGA and Ms. Tomiyama, and any persons subject to their authority or control, or those acting in concert with them, are **ORDERED** to refrain from using, disclosing, or otherwise disseminating any of Mattel's privileged communications or attorney work product for any purpose.

                All counsel for MGA and Ms. Tomiyama, and any persons

MINUTES FORM 90                                             Initials of Deputy Clerk: jh
CIVIL -- GEN                          Page 1

Exhibit 2
Page 10

subject to their authority or control or those acting in concert with them, are **ORDERED** to return to Mattel and/or destroy all of Mattel's privileged and work-product materials.

Counsel for MGA is **ORDERED** to file under seal the original Tomiyama expert report, and to destroy all other copies thereof. If the original report has been destroyed, a copy of the report shall be so filed, along with a declaration of trial counsel regarding the original's destruction.

Counsel for MGA are **ORDERED** to arrange for a copy of this Order to be personally served on Ms. Tomiyama and shall file a proof of service with an accompanying declaration of the process server.

Should Ms. Tomiyama wish to serve in the future as an expert witness in any unrelated litigation, she is **ORDERED** to provide to counsel for all parties in that litigation a copy of this Order before entering into an agreement to provide expert witness opinions, reports, or testimony.

The Court **DENIES** the motion to disqualify counsel. Given the nature of the attorney-client privileged material and attorney work product possessed by Ms. Tomiyama and the particular circumstances of this case, this Court finds that it was incumbent upon Mattel to seek a protective order once she was no longer employed by Mattel. See Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp., 6 Cal.App.4th 1256, 1264 (1992) ("[I]t is incumbent upon a party who knows that its former employees . . . possess privileged information to seek a protective order."). Moreover, a careful consideration of the relative burdens and costs to each party and to the Court does not warrant disqualification. See City of Santa Barbara v. Superior Court, 122 Cal.App.4th 17, 23 (2004) (noting that motions for disqualification should be "examined carefully" because attorney disqualification "imposes heavy burdens on both the clients and courts [because] clients are deprived of their chosen counsel, litigation costs inevitably increase and delays inevitably occur.").

Nevertheless, in addition to the steps taken in the injunction set forth above, in order to further limit any inadvertent disclosure of privilege, at the appropriate time, the Court will consider both a motion in limine to preclude Ms. Tomiyama from testifying as a fact witness and a motion in limine to preclude MGA from presenting its legal argument based on the ramifications of comparing two-dimensional drawings of Bratz dolls with the three-dimensional products.

The Court **DENIES** Mattel's request for attorney fees.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                    Page 2                    Initials of Deputy Clerk: jh

Exhibit 2
Page 11

# NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of April 8, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9ᵗʰ Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service - Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

Exhibit 2
Page 12

00029/2369479.1

Exhibit 3

P.Send



ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

FILED

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, | |
| Plaintiff, | CASE NO. CV-04-9049-SGL |
| | (Consolidated with cases CV-04-9059 and CV-05-2727) |
| v. | |
| MATTEL, INC., | ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND |
| Defendant. | |
| and related actions. | |

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

Exhibit 3
Page 13

1   resources in creating and/or developing the BRATZ dolls or whether he continued
2   to develop his BRATZ design while still working in Mattel's employ. In either event,
3   the rights to the BRATZ dolls could become the property of Mattel, either through
4   infringement or through operation of the agreements noted above. The case was
5   later removed to this Court and was assigned the case number CV-04-9059. MGA
6   Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
7   protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.
8   Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
9   significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
10  property, i.e., the Bratz creations, were decided in the absence of MGA").

11      In the interim, Bryant filed a declaratory judgment action in this Court,
12  seeking for the Court to declare that his BRATZ doll creations did not infringe
13  Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at
14  3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
15  products,' . . . the substance of his allegations all address the product 'Toon
16  Teens'"). The declaratory judgment action was assigned the case number CV-04-
17  9049.

18      MGA then filed an action against Mattel in this Court broadening the scope
19  of the controversy beyond that concerned with the ownership rights to the BRATZ
20  doll line. MGA's complaint asserted various Lanham Act claims and their California
21  state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
22  competition-by-intimidation and serial copycatting of MGA's products." (Compl.
23  ¶ 7). In essence, although the prior actions were concerned with ownership in the
24  rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
25  had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
26  MGA's complaint did make mention of other products that were affected by Mattel's
27  alleged predatory business practices, but by far the largest portion of its complaint
28  concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2

Exhibit 3
Page 14

1  line of BRATZ dolls.[1]

2      By Order dated June 19, 2006, the Court consolidated all three cases "for all

3  purposes" as they "involve[d] a number of common issues of law and fact." As the

4  Court later noted in its August 10, 2006, Order: "At its heart, this case asks the

5  question: Who owns the rights to the Bratz dolls?" Resolution of this question lies

6  at the heart of or, at the very least, affects many of the other claims set forth in

7  each of the three respective cases. For instance, even though the allegations in

8  05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ

9  dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot

10  many of those allegations. It is hard to imagine how it is unlawful for a company to

11  thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel

12  owned the rights to the BRATZ dolls, many of the allegations in the 05-2727

13  complaint would become moot. That said, such consolidation did not do away with

14  the distinctions that do exist between the three cases. As the Court highlighted in

15  its consolidation order, when either party files a pleading in the case, "the first

16  paragraph of [that] document . . . shall inform the Court to which case(s) the

17  document relates."

18      On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,

19  04-9049, finding there existed no reasonable apprehension of an imminent

20  copyright infringement claim being filed against him by Mattel based on Mattel's

21  Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The

22  Court's Order was predicated entirely upon counsel for Mattel's representation

23  during oral argument that it "will not maintain that Bratz infringes the copyright in

24  Toon Teens." Owing to this representation, the Court, in dismissing the declaratory

25  judgment action, made clear that any future "claim by Mattel of copyright

26

27      [1] That the marketing of the BRATZ dolls lies at the heart of the issues
between the rival doll makers in the 05-2727 case is best illustrated by the Court's
28  discussion of those allegations in its August 26, 2005, Order, Granting in Part and
Denying Part Mattel's Motion to Strike portions of MGA's complaint.

3

Exhibit 3
Page 15

1  infringement based on the Toon Teens product is barred by counsel's

2  representation."  July 18, 2006, Order at 4.

3  Presently before the Court is Mattel's request for leave to file an amended

4  complaint in the 04-9059 action.  The complaint broadens considerably the nature

5  of the action from its genesis in state court.  Whereas before the complaint simply

6  sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7  employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8  claim to the BRATZ doll line), the amended complaint adds five more defendants

9  and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries.  For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19  Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23  Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

4

Exhibit 3
Page 16

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.    ANALYSIS

5       Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10 complaint is gauged by looking to the familiar formulation of factors set forth by the

11 Supreme Court in Forman v. Davis:

> In the absence of any apparent or declared
> reason—such as undue delay, bad faith or dilatory
> motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment,
> etc.—the leave sought should, as the rules require, be
> 'freely given.' Of course, the grant or denial of an
> opportunity to amend is within the discretion of the
> District Court, but outright refusal to grant the leave
> without any justifying reason appearing for the denial is
> not an exercise of discretion; it is merely abuse of that
> discretion and inconsistent with the spirit of the Federal
> Rules.

20 371 U.S. 178, 182 (1962).

21      MGA and Bryant offer the following reasons for denying Mattel leave to

22 amend: (1) Mattel has long known of the factual predicates underlying its copyright

23 and intentional interference claims but delayed in asserting them; (2) the proposed

24 amendment to add the copyright claim and the intentional interference claims

25 (against the new defendants) are futile because they are barred by the applicable

26 statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27 because of its prior public disavowal of an intent to assert such a claim; and (4)

28 MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

Exhibit 3
Page 17

1  suit because of alleged spoilation of evidence issues involving Mattel's ZEUS
2  computer system used by doll designers at Mattel and its e-mail system. None of
3  these arguments are persuasive.

4      1.   Awareness of Factual Predicate for Copyright and Intentional
5          Interference Claims

6      MGA argues that Mattel has long known about the factual predicate for its
7  recently added copyright claim, observing that, "[o]ver four years ago, in August
8  2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant
9  created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'
10 that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA
11 argues that Mattel has long known of the factual predicate for its intentional
12 interference claim with respect to Bryant's contract given that, "[b]y Mattel's own
13 admission, it learned in November 2003 — more than three years ago — that
14 Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at
15 Mattel." (MGA Opp. at 11-12).

16     At the outset it must be observed that "[m]ere delay in proffering an
17 amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.
18 of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,
19 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon
20 this point of law, Mattel argues that "only in . . . cases" when "granting leave would
21 require discovery to be reopened after summary judgment motions have been filed"
22 has the Ninth Circuit found the denial of leave "justified" based on the passage of
23 time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases
24 from the Ninth Circuit finding that, if a "party seeking amendment knows or should
25 know of the facts underlying the amendment when the original complaint is filed,
26 the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan
27 v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the
28 Ninth Circuit upheld the denial of leave to amend based on the passage of time

6

Exhibit 3
Page 18

1   even though the requested leave to amend was tendered <u>before</u> the time, as set
2   forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.
3   <u>See AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).
4   The Ninth Circuit observed that, even when a request for leave to amend is timely
5   under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless
6   still deny the request based on any of the <u>Forman</u> factors. <u>Id</u>. at 951-52. The Ninth
7   Circuit then noted that the issue of untimeliness (regardless of whether the
8   amendment is tendered "within the period of time allotted by the district court in a
9   Rule 16 scheduling order") in seeking to amend can constitute a justification for
10  denying leave to amend if "the moving party knew or should have known the facts
11  and theories raised by the amendment in the original pleading." <u>Id</u>. at 953.
12  Toward that end, the Ninth Circuit observed that "an eight month delay between the
13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."
14  <u>Id</u>. In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,
15  even though the moving party had known of the facts prompting the amendment for
16  a long period of time, there still remained eight more months of discovery for the
17  parties to marshal facts against the allegations raised by the amended pleading:
18  "Even though eight months of discovery remained, requiring the parties to scramble
19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was
20  tainted, would have unfairly imposed potentially high, additional litigation costs on
21  Dialysist West that could have easily been avoided had AmerisourceBergen
22  pursued its 'tainted product' theory in its original complaint or reply." <u>Id</u>. Thus,
23  absent "a satisfactory explanation" for the delay in amending the complaint, the
24  Court is well within its rights to deny leave to amend. <u>Id</u>.

25      Mattel proffers the following reasons for taking the time that it did before
26  presenting its amended complaint: (1) Acting out of an abundance of caution to its
27  obligations under Rule 11 to present "factual contentions [that] have evidentiary
28  support," Mattel waited until its claims were better supported by evidence

7

Exhibit 3
Page 19

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-
2  long stay and the parties' prior jurisdictional disputes" have left the case still in its
3  "nascent stage." (Reply to MGA Opp. at 2, 4).

4      The first reason is not well-founded. Rule 11 specifically allows parties to
5  aver factual allegations that "are likely to have evidentiary support after a
6  reasonable opportunity for further investigation or discovery" so long as the party
7  makes clear in its pleading that its factual contentions on those points are with the
8  caveat that they are based on a good faith belief that further discovery would
9  unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule
10 11 did not stand in the way of Mattel averring the factual contentions it now claims it
11 "merely suspected" as being the case based on the limited information before it.
12 Mattel could have gone ahead and made such suspected factual allegations so
13 long as it caveated those claims with the declaration that it reasonably believed that
14 those allegations would be borne out by further discovery. Perhaps the time by
15 which Mattel could have reasonably believed such allegations would be borne out
16 by further discovery occurred after the dates noted by MGA, but it is hard to fathom
17 that such materialization took three or four years to occur.

18      The second reason would have some merit to it but for the fact that the
19 information that alerted (or should have alerted) Mattel to the existence of its now
20 asserted copyright and intentional interference claims was brought to Mattel's
21 attention well before the case was stayed on May 20, 2005. The stay, therefore,
22 did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the
23 stay does not explain why Mattel waited nearly six months after the stay was lifted
24 on May 16, 2006, to present those claims now.

25      All of that being said, the one thing that gives the Court pause in denying
26 leave based on the tardiness in Mattel's presentation is the lack of any evidence
27 that MGA or Bryant have been prejudiced by the delay. Delay unconnected to
28 some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

Exhibit 3
Page 20

1   management of the case, does not suffice to deny granting leave to amend.  The

2   Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3   in an amendment to a complaint, there is no serious prejudice to defendant in

4   allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5   Indeed, the denial of leave was proper in the Dialysist case not simply because of

6   the length of the delay, but because the delay itself was "detrimental" in that it

7   would entail the opposing party to have "unfairly" incurred "potentially high,

8   additional litigation costs" that could have been avoided if the moving party had

9   made clear its intentions earlier.  465 F.3d at 953.

10      Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11   pleadings filed by MGA and Bryant in this case that both have been aware for some

12   time of the factual predicates now underlying Mattel's copyright claim and

13   intentional interference claim.  (See MGA Opp. at 5 ("As Bryant and MGA

14   suspected at the time of filing — and Mattel now concedes by conduct — those

15   deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16   along")(emphasis added)).  The parties have engaged in meaningful discovery

17   regarding many of the facts touched upon by these new claims, be it tracking down

18   experts in various forensic fields or taking depositions of various of the key players

19   to those claims.  In point of fact, in their papers filed with this Court before this

20   present motion, both Bryant and MGA have made it abundantly clear that they have

21   long suspected that a copyright infringement claim was in the offing as evidenced

22   by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23   05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24   have been on notice to the facts comprising the interference claim concerning

25   Bryant's contract as evidenced by the identity of the individuals who have been

26   deposed by Mattel, as well as the nature of the questions posed and the testimony

27   proffered at those depositions.  MGA's argument that, with the amendments, it

28   faces the prospect of defending "against stale claims" owing to faded memories and

9

Exhibit 3
Page 21

1   loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),
2   is diminished by the fact that (no doubt owing to the sophistication of all counsel
3   involved) discovery on these very issues have been proceeding apace by both
4   sides long before Mattel filed its proposed amendments. This is simply not a case
5   where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by
6   allowing the proposed amendments; much of those costs have already been borne
7   by the parties for some time.

8           2.    Spoliation of Evidence

9           MGA next argues that Mattel's delay in bringing the amended complaint has
10  caused it prejudice as, in the interim, critical pieces of evidence have been or are
11  suspected of having become lost. For instance, MGA asserts that Mattel's Rule
12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,
13  "although Mattel identified and segregated its most relevant backup tapes available
14  for Zeus, Mattel allowed its tape backup system to expire the database for those
15  backup tapes, thereby eliminating all information about what was actually stored on
16  those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer
17  system is critical because of Mattel's assertion that part of its copyright claim rests
18  on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)).
19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design
20  center personnel are stored on Zeus. Thus, the electronic documents stored on
21  Zeus – which should include the metadata showing who created, edited and
22  accessed Mattel's concept drawings and designs – during the time Bryant worked
23  in the design center at Mattel is vitally important to defending against Mattel's
24  claims." (MGA Opp. at 14). MGA's argument is neither an accurate
25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure
26  claim.

27          Ms. Marine did not testify that the information on the backup tapes (some
28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

Exhibit 3
Page 22

1  that could restore the information still found on those tapes:

2          Q.    So if you wanted to restore that 2002 backup
                  tape[s] then, how would you go about doing that?

3

                  . . . .

4

5          A.    You need the hardware so if we don't have the
                  hardware — if [the technology used by the tape
                  is] DLT we don't have the hardware and you've
6                    got to buy it and – well, first you have to find a
                  place to put it with adequate power which we
7                    don't have in the design center. You need to
                  have a tape library. You need to have the tape
8                    drives that carried those tapes. You need a
                  server that has the capability to – that's big
9                    enough to handle all of the hardware. You need
                  the software – the license for the backup
10                   software[, Net Backup]. You need the disk space
                  to restore it to and then you have to start reading
11                   in all those tapes.

12         Q.    You said that you don't have that in the design
                  center. Do you have that hardware anywhere
13                   else in the company?

14         A.    DLT? No, no.

15         Q. ·   At what point did you get rid of the hardware?

16         A.    Once the last backups — DLT backups expired
                  so it would have been a couple years ago
17                   probably.

18 (Decl. Diana Torres, Ex. K at 118-119).

19      The above testimony clearly denotes the difficulty in restoring what was on

20 Mattel's Zeus computer system during the relevant time frame, but it certainly does

21 not demonstrate that the information on those backup tapes has been "eliminated"

22 or forever lost. Undoubtedly it will be a costly endeavor to recover that information

23 (not to mention to later search and sort through it); but to argue, as MGA does, that

24 the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25 plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26 information on the Zeus backup tapes has been present for some time (maybe

27 since 2004 or perhaps even earlier). This is important because it undermines

28 MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

1  it to suffer prejudice it otherwise would not have faced if the amendments were

2  brought sooner. Such prejudice has been present for years, and Mattel's failure to

3  bring its amended complaint sooner would not have changed this situation.

4        Similarly, MGA's point that access to what was on the Zeus computer

5  system is vital in demonstrating that Bryant was not exposed to or otherwise did not

6  hack the system to steal other designers work is diminshed to some extent by the

7  fact that Bryant himself testified that he did not use the Zeus computer system and

8  was "pretty much computer illiterate" while employed at Mattel. Admittedly, the

9  ability to point to information on the Zeus system backup tapes to prove that Bryant

10  did not access other designers drawings or to prove the date those drawings were

11  created by those other designers would be useful evidence to negate Mattel's

12  factual claims. Nonetheless, such evidence still would not discount other avenues

13  outside of the Zeus computer system by which Mattel could seek to prove that

14  Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant

15  saw drawings of the same posted on other designers' cubicles.

16        MGA next surmises that Mattel's e-mail records have disappeared, not

17  because it has any proof on that point, but simply because Mattel has postponed

18  the deposition of the individual most knowledgeable of Mattel's e-mail records until

19  after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).

20  Speculation of spoilation does not suffice. That MGA's argumentation on this point

21  is nothing more than speculation is best exhibited by the evidence it has proffered

22  in support of its argument: "[I]f the sole retained backup for Zeus is no longer

23  available, it is not hard to imagine that Mattel's electronic mail archives are similarly

24  out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a

25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his

26  inbox would be automatically deleted if they had remained there for more than a

27  certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this

28  acknowledgment that Mattel has an "automatic email deletion system" that has

Exhibit 3
Page 24

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2   Noticeably absent from MGA's argument is any evidence that the e-mails so

3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4   whether such information remains or is otherwise archived on some backup file on

5   Mattel's computer system. Absent concrete proof that spoilation has occurred,

6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7   amend.

8           3.      Statute of Limitations

9           MGA next argues that Mattel's copyright and intentional interference claims

10  are futile as both are barred by the applicable statute of limitations. This argument

11  was pressed emphatically at oral argument. With respect to the copyright claim,

12  MGA argues that the applicable statute of limitations is three years, with the

13  limitations period accruing from when a party has knowledge of a violation or when

14  a reasonably diligent person would have been put on inquiry of the infringement.

15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

16  1994)). MGA argues that Mattel was put on notice about its copyright claim in

17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18  had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,

19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20  current copyright claim stale.

21          The problem with MGA's analysis is it fails to take into account the relations-

22  back principles found in Rule 15(c), which provides that "[a]n amendment of a

23  pleading relates back to the date of the original pleading when "the claim . . . in the

24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25  in the original pleading," or if such relation back is otherwise permissible by the

26  state "law that provides the statute of limitations applicable to the action." By

27  MGA's own admission Mattel's copyright claim arises out of the same conduct or

28  transaction contained in the original complaint filed in April, 2004, well within the

13

Exhibit 3
Page 25

1 applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations
2 [contained in the original complaint] underlie the copyright infringement and
3 intentional interference contract claims Mattel now seeks to allege against MGA,
4 Mr. Larian and Bryant")).

5     MGA's statute of limitations argument with respect to the intentional
6 interference claims fares no better. According to MGA, the applicable statute of
7 limitations is two years for an intentional interference with contract claim and Mattel
8 was aware of the facts alerting it to this claim (insofar as Bryant's contract is
9 concerned) on November 24, 2003, when it learned "that Bryant worked with MGA
10 to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,
11 prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18
12 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) . Such a time line
13 would, according to MGA, mean that the applicable limitations period expired on
14 Mattel's interference with Bryant's contract claim on November 24, 2005, well
15 before Mattel sought leave to file its amended complaint. (Id). The problem again
16 with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional
17 interference claim would relate back to when it filed its original complaint in April,

18

19

20     [2] The same would appear to be true — that the amendments would be timely
21 — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
    MGA's complaint in the 05-2727 case.
22

23     [3] With respect to Mattel's interference with contract claim as to one of its
    former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim
24 on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
    for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from
25 that simple event — Brawer's declaration of his intent to leave — in any way would
    apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct
26 (the stealing of proprietary information) causing Brawer to breach his contract with
    Mattel that he would not do anything to help a competitor while working for them.
27 MGA's contention that Mattel must have known of those misdeeds in mid-September
    is nothing more than speculation. Futility cannot be founded on what might or might
28 not be the case; either a claim is futile to bring or it is not.

14

Exhibit 3
Page 26

1    2004, well before the limitations period expired.[4]

2        Accordingly, MGA's futility argument is not well-founded.

3        4.    Prior Disavowals of Asserting a Copyright Claim

4        Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5    this case as to whether or not it is asserting a copyright infringement claim against

6    it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7    bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8    been subjected to Mattel's overly vague statements on this point, but in the end

9    nothing in those statements has ever foreclosed the possibility that such a claim

10   may be in the offing. Indeed, during the oral argument on Mattel's motion to

11   dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12   to whether it would assert such a copyright claim against Bryant as it is currently

13   seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14   not assert a copyright claim against Bryant based on Mattel's copyright rights in

15   TOON TEENS. At that point, the Court directed the parties to engage in a meet

16   and confer based on counsel for Mattel's representation and to provide a report to

17   the Court based on those discussions. The report submitted to the Court made

18   clear that, although Mattel was willing to accede that it would not bring a copyright

19   claim based on TOON TEENS, it refused to accede to Bryant's broader request

20   that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21   to any claim that Mattel has or ever will assert against Bryant." This by itself should

22   have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23   prior statements had foreclosed any potential copyright claim against them.[5]

24

25       [4] Again the relations-back principle would also seem to render its claim timely

26   if it were filed as an amended answer (the original having been filed in May, 2005) in the 05-2727 case.

27       [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac

28   Larian, for the "Doe" defendants listed in its original complaint is improper because Mattel knew of their identity when it filed the original complaint. The argument is

Exhibit 3
Page 27

1    That said, Mattel's allegation in the amended complaint as to how it is

2   seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,

3   subsection a, in the amended complaint alleges that Bryant "misappropriated and

4   misused Mattel property" by "using his exposure to Mattel development programs to

5   create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such

6   "exposure" could include Bryant misappropriating the Mattel design concept in

7   TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's

8   copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9   dismissing Bryant's declaratory judgment action. Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS. With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13       5.    Judicial Economy Considerations

14       In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint: Who owns the rights to the

18  BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21  ────────────────────────────

22  misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a
    defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or

23  ignorant of the basis for liability at the time the complaint was filed. See Miller v.
    Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention

24  but at oral argument disputed that Mattel did not know the basis for liability against
    itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in

25  the original complaint and those now proffered against the two in the amended
    complaint. Specifically, MGA notes that the original complaint spoke of Bryant

26  working for one of Mattel's competitiors and of that employee's theft of Mattel's
    intellectual property before leaving to work for that competitior. At most, all this

27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.
    Larian encouraged Bryant's alleged unlawful behavior recited in the original

28  complaint.

16

Exhibit 3
Page 28

1  what Mattel has always claimed was a straightforward employment action against
2  an individual defendant into a global commercial dispute against Mattel's primary
3  competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns
4  BRATZ.[6]  (Bryant Opp. at 2).  Mattel argues that "the law does not deny leave to
5  amend because claims are 'tangential'" and then reiterates its point that some
6  showing of prejudice, namely, seeking leave after expiration of discovery, is
7  necessary. (Reply to Bryant Opp. at 3).  That is not entirely correct.

8       As noted previously, the Ninth Circuit recently upheld a denial for leave to
9  amend because the amendment would have "drastically changed" the litigation,
10  even though the leave request was tendered <u>before</u> the time, as set forth in a Rule
11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well
12  before the discovery cut-off.  <u>See AmerisourceBergen Corp. v. Dialysist West, Inc.</u>,
13  465 F.3d 946, 953 (9th Cir. 2006).  In justifying its reasoning the Ninth Circuit cited
14  approvingly to the following statement from a well-respected treatise: "If an
15  amendment substantially changes the theory on which the case has been
16  proceeding and is proposed late enough so that the opponent would be required to
17  engage in significant new preparation, the court may deem it prejudicial."  Id. at 953
18  n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
19  FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)).  Thus, <u>Dialysist</u>
20  recognized that the introduction of "different legal theories" and/or proof of
21  materially different facts well into the litigation can itself be a basis for finding
22  prejudice regardless of whether the period for discovery has expired (or is even
23  close to expiring) or the parties have already filed summary judgment motions.  <u>Id.</u>
24  at 953-54.

25       Although the parties can safely be said to be at this point well into the
26
27  ───────────────
        [6]  Bryant also brings intricate legal arguments about the sufficiency of the
28  allegations Mattel has averred in building its RICO claims against him.  Such
    considerations are best left to be resolved on a properly filed motion to dismiss.

17

Exhibit 3
Page 29

1  litigation in this consolidated action (as evidenced by the protracted discovery
2  disputes contained in the docket sheet that the parties have had before the
3  magistrate judge and now the special master, and the litigation of motions to
4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel
5  has made painfully clear in its papers, no scheduling order has been entered in this
6  case.[7] This takes away somewhat from the prejudice Dialysist found to exist when
7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the
8  litigation process.  Id. at 953.  Simply put, without a schedule for the filing of pre-trial
9  motions and other matters (e.g., discovery cutoff), the parties have been given free
10  reign in how to conduct the litigation in this case.

11      That the delay in bringing the proposed amendments and the relative length
12  of time into the litigation when those amendments were brought may not neatly fold
13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.
14  The 04-9059 action, as it is presently constituted, is not a complex one.  It asks a
15  rather narrow and straightforward question — Did anything from Bryant's
16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to
17  the BRATZ doll line?  The proposed amendments would radically alter the litigation
18  in that case to include far ranging disputes involving multiple parties and concerning
19  events not connected with the BRATZ ownership issue.  That the original action
20  was a relatively simple and straight-forward matter raises another point beyond the
21  change in the action's litigation posture — whether entangling the rival doll makers'
22  other commercial disputes into this particular case would serve to muddy the waters
23  and make the matter that much more difficult to manage from the Court's
24  perspective.

25

----

26  [7]  Mattel's repeated refrain that the matter is in its nascent stage as evidenced
      by the fact that the parties only just recently exchanged in initial disclosures is
27  misleading.  The exchange of initial disclosures referred to by Mattel is in the 05-
      2727 case.  With respect to the 04-9059 case it appears that such initial disclosures
28  were completed long ago as evidenced by the fact that discovery disputes appeared
      in that case as far back as January, 2005.

18

Exhibit 3
Page 30

1       As has long been recognized, equally important in determining whether to

2 grant such leave is what impact such amendments would have on the court's ability

3 to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4 § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5 economy and its ability to manage the case. . . . The court should also temper the

6 policy favoring freely granting leave to amend with consideration of the ability of the

7 district court to manage the case adequately if amendment is allowed"). As Judge

8 Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9 the court should consider judicial economy and whether the amendments would

10 lead to expeditious disposition of the merits of the litigation. Finally, the court

11 should consider whether the amendment adds substance to the original allegations,

12 and whether it is germane to the original case of action." Chitimacha Tribe of

13 Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14 Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15 1987)("General considerations of judicial economy also justify allowing the

16 amendments. The violations included in the proposed amendment relate to the

17 same subject matter as the original complaint. Allowing the amendment will further

18 the federal policy of 'wrapping in one bundle all matters concerning the same

19 subject matter.'").

20       Mattel's amendments do not add substance to the claims contained in its

21 original complaint. Rather, they would expand the universe of claims and

22 defendants stretching well-beyond the questions raised in the original complaint

23 over whether Bryant's conduct while in the employ of Mattel subjected his later

24 attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25 Agreement or otherwise rendered his creation subject to an infringement action.

26 Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27 the narrowness of the allegations contained in its original complaint. In fact, the

28 precise opposite is true. Mattel acknowledges that its proposed amendments bear

Exhibit 3
Page 31

1 more congruity to the allegations leveled against it in MGA's Lanham Act case than

2 to those in the action to which it seeks to add them:

3

4       [M]any of the matters raised by Mattel's proposed
Amended Complaint are and will remain at issue

5     because of MGA's Complaint, whether or not leave to
amend is granted. MGA's claims allege that a broad

6     array of purported Mattel conduct across the globe,
starting at least as early as 1999, has violated the

7     Lanham Act and unfair competition law. This includes
Mattel's alleged infringement of Bratz and other MGA

8     products. As a result, <u>issues in the proposed Amended
Complaint are already part and parcel of Mattel's</u>

9     <u>defenses to MGA's unfair competition claims</u>, including
because they show that MGA and Bryant, and not

10     Mattel, are ones who stole the products and other
properties involved.

11 (Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this

12 discongruity unimportant because "all of these matters have been consolidated with

13 the Bryant case." (Id. at 7). As noted earlier, the fact that the cases have been

14 consolidated does not mean that the parties can ignore the distinctions that still

15 exist between them. If, as Mattel acknowledges, the present amendments are

16 nothing more than re-formulated defenses and counterclaims it presently has to

17 MGA's complaint against it in the 05-2727 case, then such amendments should be

18 brought in the form of an amended answer and counterclaim in that case.

19     Consideration of the distinctions between the two cases is wise as it serves

20 as a useful tool in providing the Court a better means to manage the cases now

21 that they have been consolidated. The proverbial dog (ownership in BRATZ)

22 should be wagging the proverbial tail (the remaining commercial disputes), not the

23 other way around. Admittedly, the dog's tail has grown in size both by MGA's filing

24 of its complaint in the 05-2727 action and Mattel's response thereto through its

25 proposed amendments. Nonetheless, it is readily apparent to the Court that the

26 crown jewel in this action still remains the ownership rights to the BRATZ dolls. The

27 parties have engaged in extensive and undoubtedly expensive discovery on this

28 very issue (from hiring world-renowned experts to test the age of Bryant's design

20

Exhibit 3
Page 32

1  drawings to technically complex discovery of what is on each other's computers).

2  Indeed the separateness of the two matters is reflected in how the cases are

3  currently structured, namely, the narrowness of the issue involved in 04-9059 and

4  the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court

5  believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6  off and trial date are set well-ahead of those in 05-2727 makes the most sense. As

7  noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8  the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to

9  the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10  "development programs" or by way of the Inventions Agreement because he

11  continued to work on his designs while at Mattel), then large portions of MGA's

12  Lanham Act infringement claims may become moot. By the same token, if Mattel

13  does not own rights to BRATZ, then some of the defenses and counterclaims set

14  forth as independent claims in the present amended complaint may become moot,

15  including Mattel's copyright infringement claim as well as portions of its remaining

16  RICO, misappropriation, and aiding and abetting claims. If, however, the Court

17  were to allow the amended complaint to be filed in the 04-9059 action, such case

18  management would be difficult, if not impossible as many of the issues being

19  litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20  amendment. Due to this substantial overlap in claims and facts, a two-track

21  scheduling order utilizing the case number distinctions would be impossible to craft.

22  When pressed by the Court at oral argument as to which of its proposed claims it

23  believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24  Mattel cited to its copyright and RICO claims. However, upon further questioning

25  by the Court, counsel for Mattel acknowledged that much of those claims were, like

26  the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27  In light of the burden allowing Mattel's amendment to proceed would have on

28  this Court's ability to efficiently manage these consolidated matters denial of

21

Exhibit 3
Page 33

1   Mattel's request to amend its complaint in the 04-9059 matter is justified.  See
2   Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial
3   system can justify a denial of a motion to amend 'even if the amendment would
4   cause no hardship at all to the opposing party'").  Buttressing the Court's decision is
5   the fact that, even with such a denial, Mattel may file (and the Court provides leave
6   to Mattel to so file) an amended answer and counterclaim in the 05-2727 case
7   raising all the new claims and defendants presently sought to be achieved through
8   amendment of its complaint in the 04-9059 action.  None of the substantive
9   concerns raised by MGA and Bryant to the present amended complaint, e.g.,
10  statutes of limitations, would appear to be affected if the new claims and
11  defendants were brought as defenses and counterclaims in the 05-2727 case as
12  opposed to the 04-9059 one.

13      Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed
14  amendments, but only insofar as they are pled in the form of an amended answer
15  and counterclaim in the 05-2727 case.

16      Finally, the lack of a scheduling order in this case is problematic; one should
17  have been entered long ago.  See Fed. R. Civ. P. 16(b)(noting that a scheduling
18  "order shall issue as soon as practicable but in any event within 90 days after the
19  appearance of a defendant and within 120 days after the complaint has been
20  served on a defendant").  In light of the fact that entry of a scheduling order is
21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)
22  scheduling conference be held in this consolidated matter on February 12, 2007, at
23  1:30 p.m. in Courtroom One.  The parties are directed to file a Joint Rule 26(f)
24  report with the Court by February 5, 2007.

25      IT IS SO ORDERED.
26  DATE:  /-//-07

27

28  STEPHEN G. LARSON
    UNITED STATES DISTRICT JUDGE

22

Exhibit 3
Page 34

Exhibit 4

1

1      UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA

3      EASTERN DIVISION

4      - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6      - - -

7  CARTER BRYANT, ET. AL.,          )

8                      PLAINTIFFS,  )

9          VS.                      )   NO. ED CV 04-09049
                                    )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,          )

11                     DEFENDANTS.  )   HEARING
                                    )
12  AND CONSOLIDATED ACTIONS,       )
                                    )
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17               MONDAY, APRIL 7TH, 2008

18               11:34 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
          FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
          RIVERSIDE, CALIFORNIA  92501
25               951-274-0844
               WWW.THERESALANZA.COM

2

```
 1   APPEARANCES:

 2
     ON BEHALF OF CARTER BRYANT:
 3                        KEKER & VAN NEST
                          BY:  CHRISTA ANDERSON
 4                        710 SANSOME STREET
                          SAN FRANCISCO, CALIFORNIA  94111-1704
 5                        415-391-5400

 6

 7   ON BEHALF OF MATTEL:

 8                        QUINN EMANUEL
                          BY:   JOHN QUINN
 9                        BY:   MICHAEL T. ZELLER
                          865 S. FIGUEROA STREET,
10                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
11                        213-624-7707

12

13   ON BEHALF OF MGA ENTERTAINMENT AND ISAAC LARIAN:

14                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
15                        BY:   CARL ALAN ROTH
                          BY:   KENNETH PLEVAN
16                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
17                        213-687-5000

18

19

20

21

22

23

24

25
```

3

1                                I N D E X

2                                                              PAGE

3      HEARING.......................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

APRIL 7TH, 2008                          BRYANT V. MATTEL

Exhibit 4
Page 37

```
1          THE COURT:  YES.

2          MR. NOLAN:  I'M SORRY.

3     VERY INVOLVED IN THAT SENSE.

4          THE COURT:  THAT'S MY SENSE.

5          MR. NOLAN:  UP UNTIL RECENTLY, WHEN JEANINE PISONI     11:41

6  WAS HIRED AS THE GENERAL COUNSEL -- AND SHE IS PRESENT FOR MGA

7  THIS MORNING -- MR. HOLDEN WAS THE PRIMARY LAWYER WITHIN MGA

8  THAT WE WOULD DEAL WITH IF WE NEEDED TO GET INFORMATION.

9          THE COURT:  VERY GOOD.

10     WELL, THOSE WERE SOME PRELIMINARY QUESTIONS.          11:41

11          AS I INDICATED, WHAT I WANTED TO DO WAS GIVE YOU MY

12  SENSE, HAVING GONE THROUGH THE EXPERT REPORT, THE DECLARATIONS

13  THAT HAVE BEEN SUBMITTED, BOTH ON THE RECORD, BY BOTH SIDES, AS

14  WELL AS THE DECLARATIONS SUBMITTED IN-CAMERA --

15          YOU KNOW, I SHOULD SAY AT THE OUTSET, I UNDERSTAND     11:42

16  THAT IT'S A VERY AWKWARD SITUATION WHEN THE COURT MUST CONSIDER

17  A DECLARATION THAT'S SUBMITTED IN-CAMERA, BECAUSE IT DOES NOT

18  HAVE THE ABILITY TO HAVE THAT DECLARATION TESTED, OF COURSE, BY

19  THE OTHER SIDE AND THROUGH THE ADVERSARIAL PROCESS; SO TO A

20  CERTAIN EXTENT, THE COURT HAS TO ENGAGE IN ITS OWN TESTING,     11:42

21  VIS-À-VIS THE OTHER DEPOSITIONS THAT HAVE BEEN SUBMITTED AND

22  THE OTHER KNOWN PUBLIC -- OR AT LEAST WITHIN THE CONTEXT OF THE

23  PROCEEDINGS, WHAT IS KNOWN TO THE ATTORNEYS.  AND I HAVE TO DO

24  THAT WEIGHING MYSELF.  IT'S NOT AN EASY PROCESS, AND THE COURT

25  DOES NOT TAKE THAT RESPONSIBILITY LIGHTLY AT ALL.          11:42
```

10

```
 1            I ALSO SHOULD NOTE THAT I'VE KIND OF BROKEN THIS DOWN
 2     INTO TWO MOTIONS.  I'M CONSIDERING THE MOTION TO DISQUALIFY THE
 3     EXPERT, AND THEN THE MOTION TO DISQUALIFY COUNSEL, IN KIND OF A
 4     SEPARATE ANALYSIS ON BOTH.
 5            LET ME BEGIN WITH THE FINDINGS OF FACT THAT THE COURT       11:43
 6     IS TENTATIVELY MAKING.  AND THIS IS TENTATIVE SUBJECT TO
 7     ARGUMENTATION.  WE'RE APPROACHING THE NOON LUNCH HOUR.  I DO
 8     INTEND TO TAKE A BREAK FOR LUNCH AND RESUME THIS IN THE
 9     AFTERNOON.  I DO NOT WANT THIS RUSHED.  AS MR. NOLAN JUST
10     ALLUDED TO A MOMENT AGO, OBVIOUSLY THIS IS A SERIOUS MATTER       11:43
11     THAT THE COURT TAKES SERIOUSLY.  I DON'T WANT ANYONE TO BE
12     RUSHED.  I WANT EVERYONE TO HAVE AN OPPORTUNITY TO SAY WHAT
13     THEY NEED TO SAY.  BUT PERHAPS I COULD BEGIN BY GIVING THIS
14     TENTATIVE, AND THEN WE CAN TAKE A BREAK AND RESUME WITH
15     ARGUMENT AT THAT TIME.                                           11:43
16            BASED ON THE EVIDENCE AVAILABLE TO ALL OF THE
17     PARTIES, THOUGH -- THIS IS NOT CONSIDERING AT ALL THE
18     IN-CAMERA -- THIS IS WHAT I THINK IS UNCONTROVERTED:
19            FIRST OF ALL, IT IS UNCONTROVERTED THAT MGA
20     UNDERSTOOD THAT MS. TOMIYAMA, A FORMER EMPLOYEE, WHO HAD BEEN     11:44
21     MATTEL'S EMPLOYEE FOR 15 YEARS, HAD BEEN CONSULTED, WHILE SO
22     EMPLOYED BY MATTEL'S LEGAL COUNSEL, TO COMPARE MATTEL'S DOLLS
23     WITH OTHER COMPANIES' DOLLS AND PROVIDE TO COUNSEL AN ANALYSIS
24     OF HER COMPARISON FOR THE PURPOSE OF ASSISTING COUNSEL TO
25     ADVISE MATTEL ON LEGAL ISSUES REGARDING THE DOLLS.               11:44
```

APRIL 7TH, 2008                    BRYANT V. MATTEL

Exhibit 4
Page 39

1      IT IS UNCONTROVERTED THAT SHE WAS ENGAGED BY

2  SKADDEN ARPS ON BEHALF OF MGA TO PERFORM THE SAME TYPE OF

3  ANALYSIS AND THAT SHE DID, IN FACT, PROVIDE SUCH AN ANALYSIS.

4  THIS IS THE ANALYSIS RELATED TO THE COMPARISONS OF THE FACE

5  PAINTINGS.                                                    11:44

6      IT IS UNCONTROVERTED THAT SHE WAS EMPLOYED BY MATTEL

7  DURING THE TIME PERIOD THAT MGA FILED ITS COMPLAINT AGAINST

8  MATTEL IN THE CASE PENDING BEFORE THIS COURT; THAT'S

9  CV-05-2727.

10     IT IS NOT DISPUTED THAT SHE WAS SHOWN THE COMPLAINT   11:45

11  IN THAT CASE BY MATTEL ATTORNEYS AND DISCUSSED THE CONTENTS, AT

12  LEAST IN PASSING, ON THAT COMPLAINT.

13     IT IS NOT CONTROVERTED THAT MS. TOMIYAMA WAS SUBJECT

14  TO A SEPARATION AGREEMENT THAT REQUIRED HER TO GIVE NOTICE TO

15  MATTEL BEFORE PROVIDING SERVICES TO A COMPETITOR, AND THAT BY   11:45

16  THE TERMS OF THAT AGREEMENT, THAT REQUIREMENT CONTINUES TO THIS

17  DAY.

18     IT'S NOT DISPUTED THAT MS. TOMIYAMA DID NOT GIVE SUCH

19  NOTICE, NOR IS IT DISPUTED THAT MS. TOMIYAMA SHOWED A COPY OF

20  THE AGREEMENT TO AND WAS ADVISED BY A SKADDEN ARPS ATTORNEY   11:45

21  THAT SHE WAS UNDER NO OBLIGATION TO COMPLY WITH IT, DESPITE THE

22  LANGUAGE SET FORTH IN THE AGREEMENT.

23     IT IS NOT CONTROVERTED THAT MS. TOMIYAMA IS UNABLE TO

24  DISTINGUISH BETWEEN PRIVILEGED AND UNPRIVILEGED DOCUMENTS.

25  THIS WAS CLEAR TO THE COURT IN REVIEWING HER ANSWERS TO HER   11:45

1  DEPOSITION.  SHE ADMITTED AS MUCH IN HER DEPOSITION, AND

2  THERE'S A NUMBER OF EXAMPLES IN HER DEPOSITION WHICH

3  DEMONSTRATE THAT INABILITY TO DISTINGUISH BETWEEN PRIVILEGED

4  AND UNPRIVILEGED COMMUNICATIONS.

5       IT IS NOT DISPUTED, AS SET FORTH IN HER EXPERT                11:46

6  REPORT, EXPRESSLY IN HER REPORT, THAT SHE'S UNABLE TO

7  DISTINGUISH BETWEEN FACT TESTIMONY AND EXPERT TESTIMONY.  SHE

8  STATES AS MUCH.

9       SO THOSE ARE KIND OF A LIST OF FACTS THAT I THINK ARE

10  NOT DISPUTED, JUST BASED ON MY READING OF THE DEPOSITIONS AND    11:46

11  TRANSCRIPTS AND DECLARATIONS THAT ARE SET FORTH ON THE RECORD.

12       I THEN HAVE THE IN-CAMERA FILING MADE BY MATTEL.  AND

13  AS I INDICATED, I NEED TO TEMPER MY OBSERVATIONS REGARDING THE

14  ENGAGEMENT OF MS. TOMIYAMA AS AN EXPERT, WITH THE UNDERSTANDING

15  THAT NEITHER MGA NOR THE ATTORNEYS OF SKADDEN ARPS HAVE BEEN     11:46

16  ABLE TO REVIEW THE IN-CAMERA MATERIAL THAT PURPORTEDLY REVEALS

17  THE EXTENT OF MS. TOMIYAMA'S INVOLVEMENT ON BEHALF OF MATTEL IN

18  THESE CONSOLIDATED CASES.

19       I HAVE NO REASON NOT TO ACCEPT THOSE REPRESENTATIONS,

20  BUT I AM MINDFUL OF THE FACT THAT THEY ARE BEING SUBMITTED       11:47

21  IN-CAMERA.

22       BUT WHEN I COMPARE THE IN-CAMERA DECLARATION TO

23  MS. TOMIYAMA'S DEPOSITION, SPECIFICALLY HERE, I HAVE IN MY

24  NOTES, PAGES 262 TO 263 -- WHEREIN SHE CANNOT MERELY NOT RECALL

25  BUT CANNOT DENY ANALYZING BRATZ DOLLS FOR MATTEL'S LAWYERS.  IT  11:47

1   IS ALSO UNCONTROVERTED THAT MS. TOMIYAMA WAS EXTENSIVELY

2   INVOLVED IN ISSUES REGARDING THE CLAIMS AND DEFENSES IMPLICATED

3   BY MGA'S COMPLAINT AGAINST MATTEL IN CASE 05-2727 BEFORE THIS

4   COURT.  SHE WAS PRIVY TO COUNSEL'S ANALYSIS, THOUGHTS, AND

5   IMPRESSIONS RELATING TO COMPARISONS OF THE "MY SCENE" DOLLS AND    11:47

6   THE BRATZ DOLLS.

7        ALSO COMPARING THE IN-CAMERA DECLARATIONS TO

8   MS. TOMIYAMA'S DEPOSITION AT PAGES 266 TO 268, WHERE, AGAIN,

9   SHE MERELY CANNOT RECALL BUT DOES NOT DENY ASSISTING COUNSEL'S

10  INVESTIGATION OF CARTER BRYANT'S ACTIVITIES AT MATTEL.  IT IS      11:48

11  UNCONTROVERTED THAT MS. TOMIYAMA WAS DEEPLY INVOLVED IN

12  MATTEL'S INVESTIGATIONS OF CARTER BRYANT'S ACTIVITIES AND WAS

13  PRIVY TO COUNSEL'S ANALYSIS, THOUGHTS, AND IMPRESSIONS ABOUT

14  ISSUES DIRECTLY RELATED TO PHASE ONE OF THIS TRIAL.

15       IT'S SOMEWHAT DISTURBING, THE SERIES OF 'I DON'T             11:48

16  RECALLS,' 'I DON'T RECALLS' FROM MS. TOMIYAMA, BUT IT'S

17  SIGNIFICANT THAT SHE DOES NOT DENY THAT ANALYSIS, AND WHEN

18  COMBINED WITH THE INFORMATION SET FORTH IN THE IN-CAMERA

19  DECLARATION, THE COURT MAKES THE FINDINGS THAT IT DOES.

20       THE THIRD COMPARISON I WOULD DO IS MAKING THE               11:48

21  COMPARISON BETWEEN THE IN-CAMERA DECLARATIONS TO MS. TOMIYAMA'S

22  DEPOSITION AT PAGES 246 TO 248, WHERE SHE DISCUSSES THE

23  DOCUMENT ATTACHED AS EXHIBIT A TO HER EXPERT REPORT, THE SIMBA

24  VERSUS BARBIE PHOTO MONTAGE.  THE COURT CONCLUDES THAT THE

25  DOCUMENT IS BOTH ATTORNEY WORK-PRODUCT AND PROTECTED BY THE       11:48

1   ATTORNEY-CLIENT PRIVILEGE.

2          WITH THIS RECORD IN MIND, I'LL SET FORTH THE COURT'S

3   LEGAL ANALYSIS.  I BEGIN BY LOOKING TO STENCEL V. FAIRCHILD

4   CORPORATION, 174 F. SUPP. 2D 1080, A CENTRAL DISTRICT CASE.

5   THE COURT MUST CONSIDER THREE FACTORS, AND DOES SO AS FOLLOWS,          11:49

6   AT LEAST TENTATIVELY:

7          THE FIRST IS THAT MATTEL MUST PROVE THAT IT WAS

8   OBJECTIVELY REASONABLE TO BELIEVE THAT A CONFIDENTIAL

9   RELATIONSHIP EXISTED BETWEEN MS. TOMIYAMA AND MATTEL.  AT THIS

10  POINT, IT'S UNQUESTIONABLE THAT BASED ON THE IN-CAMERA          11:49

11  DECLARATIONS, AS WELL AS THE DEPOSITION TESTIMONY OF

12  MS. TOMIYAMA AND THE EXPERT REPORT, THAT MATTEL HAS ESTABLISHED

13  A CONFIDENTIAL RELATIONSHIP WITH MS. TOMIYAMA.

14          ACCORDING TO HER OWN TESTIMONY DURING THE LAST TWO

15  YEARS OF HER EMPLOYMENT, MATTEL'S LEGAL DEPARTMENT CONSULTED          11:49

16  WITH HER REGULARLY, ABOUT ONCE PER MONTH, REGARDING LITIGATION

17  ISSUES INVOLVING COMPARISONS OF MATTEL'S PRODUCTS WITH

18  COMPETITORS' PRODUCTS.  THE IN-CAMERA DECLARATIONS GO ON TO

19  PROVIDE A MORE IN-DEPTH DETAILED ANALYSIS OF THESE

20  CONSULTATIONS; BUT, AGAIN, FROM HER OWN TESTIMONY ITSELF, IT'S          11:50

21  QUITE CLEAR THAT SHE HAD THOSE TYPES OF CONSULTATIONS AT LEAST

22  ONCE A MONTH.

23          THE SECOND FACTOR IS THAT MATTEL MUST ESTABLISH THAT

24  IT IN FACT DISCLOSED CONFIDENTIAL INFORMATION TO THE EXPERT.

25  THE COURT TENTATIVELY FINDS THIS HAS BEEN MET BY VIRTUE OF THE          11:50

1   IN-CAMERA DECLARATIONS.

2           A THIRD INQUIRY MADE BY THE STENCEL CASE INVOLVES

3   POLICY CONSIDERATIONS.  IT CAUTIONS STRONGLY AGAINST THE

4   TACTICAL USE OF MOTIONS TO DISQUALIFY EXPERTS, CONSIDERS THE

5   ABILITY OF EXPERTS TO PURSUE THEIR TRADE, AND WEIGHS THE                 11:50

6   IMPORTANCE OF ALLOWING PARTIES TO SELECT THEIR OWN EXPERTS.

7   THESE CONSIDERATIONS ARE WEIGHED AGAINST POTENTIAL PREJUDICE TO

8   THE MOVING PARTY IF THE EXPERT IS NOT DISQUALIFIED.

9           THE COURT HAS CAREFULLY CONSIDERED EACH ONE OF THESE

10  THREE ISSUES.  FROM MY REVIEW OF THE RECORD, THE PRESENT MOTION         11:51

11  DOES NOT STRIKE ME AS ONE THAT'S BEING BROUGHT FOR TACTICAL

12  REASONS, NOTWITHSTANDING COUNSEL'S ARGUMENT TO THE CONTRARY.

13  MGA DOES TAKE ISSUE WITH MATTEL'S TIMING, BUT THE COURT

14  DISCERNS NO DELAY IN THE BRINGING OF THE PRESENT MOTION.

15          THE COURT DRAFTED UP A CHRONOLOGY, AND GIVEN THE                 11:51

16  DISCLOSURE OF THE EXPERT REPORT, MATTEL, TWO DAYS LATER, SERVES

17  A SUBPOENA ON MS. TOMIYAMA, RECOGNIZING HER STATUS AS A

18  DESIGNATED EXPERT; THAT'S ON FEBRUARY 17TH.  THE DEPOSITION

19  GOES FORWARD ON MARCH 22ND, AND THEN SOMETIME IN THE VERY EARLY

20  PART OF MARCH, A FEW DAYS LATER, MATTEL CONTACTS BOTH                    11:51

21  SKADDEN ARPS AND CARTER BRYANT'S ATTORNEYS REGARDING THE

22  DISCLOSURE OF PRIVILEGED INFORMATION, AND THEN THE PRESENT

23  MOTION IS FILED, I BELIEVE, ON MARCH 18TH.  SO THERE DOESN'T

24  SEEM TO BE A TACTICAL DELAY.  THIS ISN'T A SITUATION WHERE THE

25  EXPERT DEPOSITION TOOK PLACE MONTHS AGO AND THERE WAS A BIG             11:52

105

1   GET THROUGH THIS THIS AFTERNOON.  I WANTED TO MAKE SURE

2   EVERYONE HAD AN OPPORTUNITY TO ADDRESS THE COURT.

3           I WILL GET AN ORDER OUT ON THIS AS SOON AS POSSIBLE.

4   I'LL ALSO TAKE UP THAT DISCOVERY MATTER WITH THOSE DEPOSITIONS

5   WHICH SEEM TO BE GOING ON AND ON.  I'VE SEEN THOSE NAMES          03:11

6   BEFORE.  BUT I'LL TAKE A CLOSE LOOK AT THAT, AND WE'LL TRY TO

7   GET AN ORDER OUT.

8           THE CLERK:  COURT IS IN RECESS.

9

10

11

12

13

14

15

16                            CERTIFICATE

17

18  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
19  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
20  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.
21

22  _____          4-17-08
    THERESA A. LANZA, CCSR, RPR                    DATE
23  FEDERAL OFFICIAL COURT REPORTER

24

25

APRIL 7TH, 2008        **Exhibit 4**        BRYANT V. MATTEL
                       **Page 45**

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California. I am over the age of

3 eighteen years and not a party to the within action; my business address is 865 South Figueroa

4 Street, 10th Floor, Los Angeles, California 90017.

5      On April 28, 2008, I served true copies of the following documents described as:

6 **DECLARATION OF CHRISTOPHER E. PRICE IN SUPPORT MATTEL, INC.'S REPLY**

7 **IN SUPPORT OF MOTION FOR PROTECTIVE ORDER LIMITING THE TEMPORAL**

8 **SCOPE OF ITS PRIVILEGE LOG** on the parties in this action as follows:

| | |
|---|---|
| Keker & Van Nest, LLP<br>John W. Keker, Esq./Michael H. Page, Esq.<br>Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111 | |

12      [√]      **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart

13 Oliver & Hedges for collecting and processing correspondence for mailing with the United States

14 Postal Service. Under that practice, it would be deposited with the United States Postal Service

15 that same day in the ordinary course of business. I enclosed the foregoing in sealed envelope(s)

16 addressed as shown above, and such envelope(s) were placed for collection and mailing with

17 postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary

18 business practices.

19      [√]      **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other

20 facility regularly maintained by the overnight service carrier, or delivered such document(s) to a

21 courier or driver authorized by the overnight service carrier to receive documents, in sealed

22 envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or

23 provided for, addressed to the person(s) being served.

24      I declare that I am employed in the office of a member of the bar of this court at whose

25 direction the service was made.

26      Executed on April 29, 2008, at Los Angeles, California.

27

28                                    Kelly Velazquez

07209/2459122.1

1

## PROOF OF SERVICE

2    I am employed in the County of Los Angeles, State of California.  I am over the age of

3 eighteen years and not a party to the within action; my business address is 865 South Figueroa

4 Street, 10th Floor, Los Angeles, California 90017.

5    On April 29, 2008, I served true copies of the following documents described as:

6 **DECLARATION OF CHRISTOPHER E. PRICE IN SUPPORT MATTEL, INC.'S REPLY**

7 **IN SUPPORT OF MOTION FOR PROTECTIVE ORDER LIMITING THE TEMPORAL**

8 **SCOPE OF ITS PRIVILEGE LOG** on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071 | Overland Borenstein Scheper & Kim LLP<br>Mark E. Overland, Esq/David C. Scheper Esq<br>Alexander H. Cote Esq<br>601 West Fifth Street, 12th Floor<br>Los Angeles, CA  90071-2025 |

12

13    [√ ]    **[PERSONAL]** by personally delivering the document listed above to the person(s)

14    at the address(es) set forth above.

15

16    I declare that I am employed in the office of a member of the bar of this court at whose

17 direction the service was made.

    Executed on April 29, 2008, at Los Angeles, California.

18

19

20                                    _____
                                            Dave Quintana
21

22

23

24

25

26

27

28

07209/2459122.1