QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059 and
Case No. CV 05-02727

Hon. Stephen G. Larson

**MATTEL, INC.'S OPPOSITION TO CARTER BRYANT'S MOTION *IN LIMINE* NO. 13**

**[Notice of Lodging and Declarations of Tamar Buchakjian and Stephen Hauss filed concurrently herewith]**

Date: May 21, 2008
Time: 1:00 p.m.
Place: Courtroom 1

**Phase 1**
Pre-Trial Conference: May 19, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 5

I. EVIDENCE OF BRYANT'S DESTRUCTION OF EVIDENCE IS ADMISSIBLE TO SHOW CONSCIOUSNESS OF GUILT ........ 5

A. Bryant's Use of Evidence Eliminator at Any Time Is Relevant ........ 5

B. Evidence of Bryant's Use of Evidence Eliminator is Admissible ........ 7

C. Evidence of Bryant's Destruction of Evidence Is Admissible Without a Prior Sanctions Finding ........ 9

II. MATTEL IS ENTITLED TO A JURY INSTRUCTION CONCERNING BRYANT'S DESTRUCTION OF EVIDENCE WITHOUT A PRIOR SANCTIONS FINDING ........ 11

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page**

## Cases


Alexander v. Nat'l Farmers Org., 687 F.2d 1173 (8th Cir. 1982) .......... 6

DirecTV, Inc. v. Borow, 2005 WL. 43261 (N.D. Ill. Jan. 6, 2005) .......... 7

Glover v. BIC Corp., 6 F.3d 1318 (9th Cir. 1993) .......... 7, 8, 9, 10

Green v. Baca, 226 F.R.D. 624 (C.D. Cal. 2005) .......... 7, 8, 10

In re Hawaiian Airlines, Inc., 2007 WL. 3172642 (Bkrtcy. D. Haw. 2007) .......... 4

In re Krause, 367 B.R. 740 (D. Kan. 2007) .......... 6

Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL. 21230605 (N.D. Ill. 2003) .......... 6

Lakeside v. Oregon, 435 U.S. 333 (1978) .......... 11

Leon v. IDX Sys. Corp., 464 F.3d 951 (9th Cir. 2006) .......... 6

Livingston v. Isuzu Motors, Ltd., 910 F. Supp. 1473 (D. Mont. 1995) .......... 5

Morris v. Union Pacific R.R., 373 F.3d 896 (8th Cir. 2004) .......... 8, 12

Nejo v. Tamaroff Buick Honda Isuzu Nissan, 2004 WL. 346036 (6th Cir. Feb. 23, 2004) .......... 12

One Beacon Ins. Co. v. Broadcast Development Group, Inc., 2005 WL. 2077499 (6th Cir. 2005) .......... 7, 12, 13

Pace v. Nat'l Railroad Passenger Corp., 291 F. Supp. 2d 93 (D. Conn. 2003) .......... 11

In re Parmalat Sec. Litig., 472 F. Supp. 2d 582 (S.D.N.Y. 2007) .......... 5

Regent Ins. Co. v. Candle Corp. of Am., 2004 WL. 2713251 .......... 10

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99 (2d Cir. 2002) .......... 13

Rogers v. T.J. Samson Community Hosp., 276 F.3d 228 (6th Cir. 2002) .......... 13

U.S. v. Akpa, 120 Fed. Appx. 717, 720 (9th Cir. 2005) .......... 9

U.S. v. Blitz, 151 F.3d 1002 (9th Cir. 1998) .......... 9

U.S. v. Van Metre, 150 F.3d 339 (4th Cir. 1998) .......... 5

Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212 (S.D.N.Y. 2003) .......... 12

**Statutes**

*Fed. R. Evid.* 401 .......... 5

*Fed. R. Evid.* 402 .......... 5, 7

*Fed. R. Evid.* 403 .......... 7, 8, 9, 10

**Preliminary Statement**

On July 12, 2004 – months after Mattel filed this lawsuit and just two days before the contents of the laptop computer he had used to do Bratz-related work would be imaged and potentially produced to Mattel in discovery – Carter Bryant ran the "Evidence Eliminator" program that he had installed on his laptop computer. In so doing, Bryant knowingly deleted permanently from his laptop computer records of more than 9,400 file names and other data. Previously, he also knowingly deleted from his desktop computer – which he purchased the day after he left Mattel in October 2000 and used to do Bratz-related work – an unknown amount of information.

Mattel intends to present at trial evidence and argument that Bryant intentionally used Evidence Eliminator to "eliminate evidence" about the timing and circumstances under which he developed Bratz. It is classic evidence of a guilty mind. Of course, Bryant may attempt to rebut such showing by presenting evidence that he did not improperly destroy unfavorable evidence (if he can). Ultimately, the significance of Bryant's conduct will be an issue for the jury to determine. But if the jury finds Bryant did destroy evidence with the intent to conceal it, it is entitled to infer that his actions concerning Bratz were wrongful. And, if the jury finds Bryant destroyed relevant evidence after he was on notice of Mattel's potential claims, it also is entitled to infer that such evidence would have been favorable to Mattel and unfavorable to Bryant.

Bryant's Motion *in Limine* No. 13 seeks preemptively to exclude from trial evidence and argument regarding Bryant's destruction of evidence and to preclude Mattel's requested jury instruction concerning such evidence. Bryant contends that the admission of such evidence and the issuance of such instruction would be an "extreme" sanction that is unauthorized here because Bryant disputes

some aspects of the pertinent facts and because Mattel has not previously brought a motion for sanctions based on evidence spoliation.

Those arguments are misplaced. Relevant evidence is admissible – even if it is disputed. Indeed, it is the jury's role to resolve such disputes. And Mattel is not required to bring a motion for sanctions to secure the admissibility of relevant evidence or the issuance of the instruction it seeks. Bryant cites to no authority holding otherwise. Rather, the Court has full authority to allow Mattel to present evidence of Bryant's destruction of evidence and to instruct the jury that it may draw *its own* conclusions about how such conduct affects Bryant's credibility. This is especially true where the instruction Mattel proposes does not seek to present to the jury a judicial finding that Bryant engaged in wrongful evidence spoliation, but rather merely would inform the jury of the potential inference it is permitted to draw *if* it finds such misconduct.

The Court should deny Motion *in Limine* No. 13.

**Statement of Facts**

The evidence Mattel seeks to introduce regarding Bryant's use of Evidence Eliminator is largely undisputed. Mattel filed this lawsuit on April 27, 2004. On July 12, 2004, someone (Mattel will argue Bryant) ran Evidence Eliminator on Bryant's laptop computer,[1] causing more than 9,400 previously deleted file or folder names to be overwritten, and untold amounts of data – including the

[1] *See* Declaration of Tamar Buchakjian ("Buchakjian Decl."), ¶ 90, Exh 89 (Forensic Analysis Report of Mark J. Menz ("Menz Report"), No. 1, at 1, 13). As Bryant's own expert, Gary Funck, made clear in his report, Evidence Eliminator runs only if a user specifically engages it. *Id.* at ¶ 88, Ex. 87 (Expert Report of Gary Funck ("Funck Report"), at 13) ("[W]e conclude that EE performs its functions only when the user explicitly issues command to the program.").

remnants of previously deleted files found in unallocated space within the drive – to be overwritten and rendered forever unrecoverable.[2] On July 13 and 14, 2004, Bryant's attorneys at the time created images of two of Bryant's computer hard drives, including the laptop, for purposes of this litigation.[3]

Evidence Eliminator was also present on another of Bryant's computers, a desktop computer, though it is unknown precisely when and how much data was potentially overwritten on that drive. Bryant bought that computer on October 21, 2000, the day after he resigned from Mattel.[4] Bryant and his expert admit that Bryant installed Evidence Eliminator on the desktop computer in 2002 and used that program to delete information from that computer before that drive was imaged. (Motion, at 4).[5] Bryant, of course, knew in 2002, and before then, that Bratz was invented while he worked for Mattel and therefore that it was subject to his inventorship agreement with Mattel. Thus, Mattel will argue, Bryant had every reason to try to conceal evidence of the timing and circumstances of his invention of Bratz, even before Mattel filed this lawsuit. Further, a forensic examination of Bryant's desktop computer has revealed serious concerns regarding whether Bryant overwrote or

---

[2] *See* Declaration of Stephen Hauss ("Hauss Decl."), at ¶ 18, Exh. 17 (Transcript of Deposition of Mark Menz ("Menz Tr."), at 28:4-14); *id.* at ¶ 8, Exh. 7 (Transcript of Deposition of Gary Funck ("Funck Tr."), at 123:22-25, 134:4-8, 136:21-24, 142:3-7, 145:14-21, 148:1-9); *id.* ¶ 5, Exh. 4 (Transcript of Deposition of Carter Bryant ("Bryant Tr."), Vol. 4, at 739:24-740:5, and Vol. 5, at 1150:9-13) (stating he both installed and ran Evidence Eliminator on his laptop computer)).

[3] *See* Buchakjian Decl., at ¶ 90, Exh. 89 (Menz Report, No. 1, at 1); Hauss Decl., at ¶ 8, Exh. 7 (Funck Tr., 91:16-19).

[4] *Id.* at ¶ 2, Exh. 1 (Bryant Tr., Vol. 1, at 246:3-5); Buchakjian Decl., at ¶ 146, Exh. 145 (Circuit City receipt showing Bryant's purchase of desktop computer).

[5] *See* Hauss Decl, at ¶ 5, Exh. 4 (Bryant Tr., Vol. 4, at 739:24-740:5, 741:6-9, 742:10-24); *id.* at ¶ 8, Exh. 7 (Funck Tr., at 93:18-22); Buchakjian Decl., at ¶ 88, Exh. 87 (Funck Report, at 2).

deleted information from his desktop when he created a "new user registry" on that drive on or about April 28, 2004, just *one day* after Mattel filed this lawsuit.[6]

The purpose of Evidence Eliminator program is no mystery. Its manufacturer has described it as "data destruction technology" and "touts its product as 'protection . . .' that will . . . delete or 'clean' computer hard drives of 'deadly evidence' that may have been deleted by the user, but still remain[s] embedded in the computer's memory.'" *See Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.*, 2003 WL 21230605, at *2 (N.D. Ill. 2003) (citing "www.evidence-eliminator.com" website, and noting that "[a]ny reasonable person can deduce, if not from the name of the product itself, then by reading the website, that Evidence Eliminator is a product used to circumvent discovery"); *see also In re Hawaiian Airlines, Inc.*, 2007 WL 3172642, at *2 (Bkrtcy. D. Haw. 2007) ("Disk wiping programs . . . render deleted files unrecoverable by writing meaningless data (usually repeated strings of hexadecimal characters) to the unallocated space of the disk, permanently eliminating the residue of previously deleted files.").

Bryant admits he downloaded Evidence Eliminator from its website.[7] As the *Kucala Enterprises* court recognized, that website clearly explains that the purpose of the product is to delete "deadly evidence." The evidence therefore reasonably tends to establish that Bryant knew the purpose of Evidence Eliminator and knowingly used it to permanently delete information from his laptop, and likely from his desktop as well, to prevent such information from ever being recovered.

---

6 *See* Buchakjian Decl., at ¶ 91, Exh. 90 (Menz Report, No. 2, at 1) (stating that creation of new user registry "is significant because it is in the registry that configuration data as well as information on mapped drives, attached USB thumb drives, installed software and automatic processes are stored. Creating a new USER registry file could overwrite the old file and effectively erase any prior data preventing recovery of that data.").

## Argument

### I. EVIDENCE OF BRYANT'S DESTRUCTION OF EVIDENCE IS ADMISSIBLE TO SHOW CONSCIOUSNESS OF GUILT

#### A. Bryant's Use of Evidence Eliminator at Any Time Is Relevant

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fed. R. Evid.* 401. "All relevant evidence is admissible" unless otherwise specifically stated by statute or rule. *Fed. R. Evid.* 402.

Even without knowing the contents of the deleted files and data, evidence of Bryant's destruction of such information is relevant, and compelling, evidence of Bryant's consciousness of guilt. *See In re Parmalat Sec. Litig.*, 472 F. Supp. 2d 582, 584 -85 (S.D.N.Y. 2007) ("The destruction of evidence by the Parmalat insiders is evidence of consciousness of guilt, which is relevant to . . . liability. . . ."); *Livingston v. Isuzu Motors, Ltd.*, 910 F. Supp. 1473, 1494 (D. Mont. 1995) (holding evidence of destruction of test data was "properly admitted" at trial because the destruction was relevant and "defendants knew or should have known of the importance of preserving the [evidence]"); *U.S. v. Van Metre*, 150 F. 3d 339, 352 (4th Cir. 1998) ("spoliation evidence is generally admissible to show the defendant's consciousness of guilt. . . .").

Other evidence in the record also suggests that the information Bryant destroyed was relevant to this case. Bryant admits he acquired his desktop computer in October 2000 and the laptop in 2001, and that he used both to do a variety of

---

[7] *See* Hauss Decl., at ¶ 5, Exh. 4 (Bryant Tr., Vol. 4 at 743:8-13).

Bratz-related work, including sending e-mails and scanning images.[8] But Bryant has produced only a handful of e-mail messages related to Bratz and his communications with MGA or others from 2000 to 2001, and even fewer e-mail messages from 2002 through 2005.[9] In contrast, MGA and various third parties have produced e-mail messages that Bryant exchanged with them that Bryant has not produced in any form.[10]

A reasonable inference from such circumstances is that e-mails, and other relevant information, were contained on, and deleted from, Bryant's computers. *See Leon v. IDX Sys. Corp.*, 464 F. 3d 951, 958 (9th Cir. 2006) (affirming dismissal sanction for spoliation where "any number of the 2,200 [deleted] files could have been relevant to [defendant's] claims or defenses, although it is impossible to identify which files and how they might have been used"); *Kucala*, 2003 WL 21230605, at *5 -*6 (even where there was no evidence that Evidence Eliminator actually deleted relevant information, but there was evidence that over 14,000 files had been deleted, "the possibility that relevant documents were included in [such a] mass deletion is something [a] Court cannot overlook"); *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982) (because "the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist," a spoliating party "can hardly assert any presumption of irrelevance as to the destroyed documents").

---

[8] *See* Hauss Decl., at ¶ 5, Exh. 4 (Bryant Tr., Vol. 4, at 751:6-20, 753:3-5, 755:18-756:2).

[9] *See* Buchakjian Decl., at ¶ 89, Exh. 88 (Supplemental Declaration of Melissa Grant In Support of Motion of Mattel, Inc. for an Order Enforcing Court's January 25, 2007 Order Compelling Bryant to Produce Computer Hard Drives and for Sanctions, dated February 15, 2008 ("Supplemental Grant Declaration"), ¶ 7, Exh. 6 (E-mail messages produced by Bryant from 2000 through 2005)).

[10] *Id.* (Supplemental Grant Declaration, ¶ 8, Exh. 7 (E-mail messages produced by MGA and others from 2000 through 2001)).

The timing of Bryant's destruction of information on his laptop computer – just two days before his attorneys imaged that computer – also supports a finding that such information was relevant to this case, and likely adverse to Bryant. *See In re Krause*, 367 B.R. 740, 768-772 (D. Kan. 2007) ("To the Court, the timing of the installation of Ghostsurf is not as crucial as the fact that Krause ran Ghostsurf, purging his electronic data and files immediately prior to turning over his computers and after learning that the Court was ordering their production."); *DirecTV, Inc. v. Borow*, 2005 WL 43261 at *6 (N.D. Ill. Jan. 6, 2005) ("The fact that [defendant] deleted certain files on his computer only five weeks after the start of this litigation creates an inference that he destroyed evidence that would have been harmful to his defense.").

Mattel has established, at a minimum, genuine questions regarding the relevance of evidence of Bryant's use of Evidence Eliminator. That Bryant may wish to present his own countervailing account and argue that he had an innocuous reason to delete information from his computer only highlights that the evidence is relevant and the jury should be permitted to make its own inference about why Bryant used Evidence Eliminator when he did. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1332 (9th Cir. 1993) ("The district court properly submitted all the evidence to the jury concerning the alleged spoliation of evidence."); *see also One Beacon Ins. Co. v. Broadcast Development Group, Inc.*, 2005 WL 2077499, at *5 (6th Cir. 2005) ("When a genuine question exists as to whether a party's loss or destruction of evidence was negligent (or worse), it is appropriate to defer that question to the jury.").

**B. Evidence of Bryant's Use of Evidence Eliminator is Admissible**

Given the relevance of evidence of Bryant's destruction of evidence, such evidence "is admissible" unless otherwise specifically stated by statute or rule. *See Fed. R. Evid.* 402. Bryant makes only a passing attempt to argue that the Court

should exclude this evidence under *Rule* 403 for being "substantially" more prejudicial to Bryant than probative of issues in dispute. (Motion, at 4-5).

The cases Bryant cites do not support his argument. In *Green v. Baca*, 226 F.R.D. 624 (C.D. Cal. 2005), the court excluded, in part under *Rule* 403, evidence of the defendant's "discovery disputes and initial failures to produce documents." *Id.* at 642-43. *Green* held that such violations "do not constitute admissible evidence of consciousness of wrongdoing or efforts to conceal relevant evidence," and noted that, in any event, it "presently ha[d] no evidence before it that defendant intentionally failed to produce documents in order to conceal them from plaintiff or that defendant destroyed documents that were responsive to plaintiff's document requests." *Id.* at 643 "Absent such evidence," the record was not "sufficiently strong to support the inference of wrongdoing" that the plaintiff sought to draw through the introduction of such evidence. *Id.*

In contrast here, Mattel has adduced admissible, and largely undisputed, evidence of Bryant's destruction of relevant evidence, and such conduct is far more egregious – and thus more probative of a guilty consciousness – than the discovery disputed at issue in *Green*.

The other case on which Bryant relies, *Morris v. Union Pacific R.R.*, 373 F. 3d 896 (8th Cir. 2004), does not address *Rule* 403 and is similarly inapposite. *Morris* ordered a new trial where the trial court had instructed the jury that *it had previously found* that a party had destroyed evidence. *Id.* at 900-01. *Morris* held that this "adverse inference" instruction was improper because the trial court had not found "intentional destruction indicating a desire to suppress the truth," as is required in the Eighth Circuit to support an adverse inference instruction. *Id.* at 901. Not only does *Morris* have nothing to do with the admission of evidence or the applicability of Rule 403, but the substantive standards the court applied are not the standards in this Circuit. *Compare Morris*, 373 F. 3d at 901 (a finding of bad intent is "required to impose the sanction of an adverse inference instruction"), *with Glover*, 6 F. 3d at

1329 ("a finding of 'bad faith' is not a prerequisite to" an adverse inference instruction).

Moreover, any "prejudice" that Bryant would suffer from the introduction of evidence of his destruction of evidence is not "unfair" prejudice, which is the type of prejudice against which *Rule* 403 protects. *See Fed. R. Evid.* 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice"); *see U.S. v. Blitz*, 151 F. 3d 1002, 1009 (9th Cir. 1998) ("[E]ven if [evidence of party's plan to engage in insurance scheme] resulted in some prejudice (as all unfavorable evidence about a defendant does), it was not 'unfair prejudice' and did not 'substantially outweigh' the high probative value of the evidence."); *U.S. v. Akpa*, 120 Fed. Appx. 717, 720 (9th Cir. 2005) ("Not everything that hurts is unfairly prejudicial."). Bryant cannot preclude the introduction of evidence of his misconduct merely because he fears the consequences.

Bryant has failed to show that evidence of his use of Evidence Eliminator and his likely destruction of relevant evidence is inadmissible under *Rule* 403 or otherwise. Such evidence is relevant of Bryant's consciousness of guilt and is admissible.

### C. Evidence of Bryant's Destruction of Evidence Is Admissible Without a Prior Sanctions Finding

Bryant attempts to distract from the relevance and admissiblity of evidence of his destruction of evidence by arguing (based on inapposite and out-of-Circuit authority) that the admission of such evidence would be an "extreme" sanction authorized only if the Court issues sanctions following an evidentiary hearing. (Motion, at 6-7 (arguing "[u]ntil and unless a party satisfies its burden of demonstrating spoliation to the Court, and the Court concludes that some sanction is warranted, evidence and argument should not be presented to the jury, as such

evidence is irrelevant and prejudicial."). No such prerequisites to the mere admissiblity of evidence exist.

Rather, it is well-established that "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover*, 6 F. 3d at 1329. Such power allows a trial court to exclude evidence of tampered-with evidence, admit the introduction of the circumstances of the destruction of evidence, or permit the jury to draw an adverse inference from the destruction of evidence. *Id.*

Mattel has found no case, and Bryant cites none either, that requires the Court to hold an evidentiary hearing and issue sanctions before simply *admitting evidence* of a party's destruction of evidence. At best, as Bryant acknowledges, the cases he cites show that a court *may* conduct an evidentiary hearing before deciding *to impose sanctions*. (*See* Motion, at 7 (citing, *e.g.*, *Regent Ins. Co. v. Candle Corp. of Am.*, 2004 WL 2713251, at * 2 n.4 ("Courts *often* hold evidentiary hearings to determine the facts relevant *to the imposition of sanctions*.") (emphasis added) (citing *Morris*, 373 F. 3d at 901)). But what courts have chosen to do in other contexts does not a requirement make.

Notably, in one of the only cases on which Bryant relies from within this Circuit, the court, as here, evaluated the admissiblity of evidence of discovery violations at the *in limine* stage. *See Green*, 226 F.R.D. at 643 (evaluating motion *in limine* to exclude evidence of discovery disputes). As noted above, although *Green* ultimately excluded such evidence, in part under *Rule* 403, the alleged discovery violations in that case are far less egregious than here and there was nary a record of such misconduct. *See id.* The nature of Bryant's misconduct and the strength of the evidentiary record here make this case very different than *Green*. But the essential point here is that the *in limine* procedure is an appropriate context to evaluate the admissiblity of evidence of Bryant's destruction of evidence, even though the Court has not previously found spoliation or issued other sanctions.

In sum, because the record amply reflects that Bryant destroyed relevant evidence, Mattel should be permitted to present such evidence to the jury, and Bryant's motion *in limine* should be denied.

## II. MATTEL IS ENTITLED TO A JURY INSTRUCTION CONCERNING BRYANT'S DESTRUCTION OF EVIDENCE WITHOUT A PRIOR SANCTIONS FINDING

Bryant conflates the issues in this motion by arguing – simultaneously and relying on the same authority – that (1) Mattel should not be permitted to introduce evidence of Bryant's destruction of evidence and (2) the Court should reject Mattel's proposed jury instruction based on Bryant's destruction of evidence. Those are distinct questions and should be analyzed separately.

First, for the reasons set forth above, Mattel is entitled to introduce evidence of Bryant's destruction of evidence. Second, because Mattel is entitled to present to the jury evidence of Bryant's evidence destruction and argument based thereon, Mattel also is entitled to an appropriately-framed instruction advising the jury as to the significance of such evidence and how it may impact the relevant legal determinations. *See Lakeside v. Oregon*, 435 U.S. 333, 340 (1978) ("The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood, such as reasonable doubt and burden of proof.").

Bryant cites to no authority, and fails to even argue, that the *specific* instruction Mattel proposes is improper. To be clear, Mattel's proposed instruction would advise the jury only that "***if*** [it finds] that relevant evidence that was within the defendants' control is missing or has been destroyed and that the evidence is missing because of the defendants' bad faith or negligent, unjustified or careless actions or inaction, [it] ***may*** infer that such evidence, if available now, would have been favorable to Mattel and adverse to the defendants."

That instruction is proper based on the evidence Mattel expects to adduce at trial and is appropriately limited in that it does not impose upon the jury any finding regarding the evidence; it merely allows the jury to make such finding. *See Pace v. Nat'l Railroad Passenger Corp.*, 291 F. Supp. 2d 93, 99 (D. Conn. 2003) (denying motion for new trial where "instruction given by this court . . . merely allowed the jury to draw an adverse inference."); *One Beacon Ins. Co.*, 2005 WL 2077499, at *5 (where genuine question exists to whether destruction of evidence was negligent or worse, "it is appropriate to defer that question to the jury, by instructing jurors that *if they find* that the spoliation of evidence was at least negligent, *they may infer* that the missing evidence would favor the non-spoliating party") (emphasis added); *Nejo v. Tamaroff Buick Honda Isuzu Nissan*, 2004 WL 346036, at *8 (6th Cir. Feb. 23, 2004) (instruction that "jury 'may' infer that the missing evidence would have been adverse to the plaintiff 'if' it believes that plaintiff has provided 'no reasonable excuse' for the absence" properly "recognize[s] the existence of a fact issue, and did not foreclose the jury from considering [defendant's] excuse").

Again, Bryant cites a number of inapposite cases that analyze the appropriateness of "adverse inference" instructions made *after* the court had found discovery misconduct. *See Morris*, 373 F. 3d at 903 (ordering new trial where trial court instructed jury that it *had* previously found that party destroyed evidence); *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 219-20 (S.D.N.Y. 2003) (as a sanction for spoliation, jury instructed that evidence *had* been destroyed and that it may "infer that the party who destroyed potentially relevant evidence did so 'out of a realization that the [evidence was] unfavorable'") (alteration in original). Mattel does not dispute that before the Court can instruct the jury on what it has determined as a matter of law, it must first have made that determination. It therefore would be improper here (at least at this stage) for the Court to instruct the jury that Bryant *has spoliated evidence* and that the jury may infer that such *spoliated evidence* was

favorable to Mattel. But that is not the instruction Mattel seeks. Mattel proposes a much more limited instruction that would assist the jury in understanding the purpose of some of the evidence the parties presented, and allow it to determine first whether Bryant did indeed destroy relevant evidence, and second, if so, whether such evidence would have been favorable to Mattel.

No hearing or prior sanctions finding is needed for the Court to issue such a permissive inference instruction. *See Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 234 (6th Cir. 2002) (adverse inference jury instruction should be given where "[s]ufficient evidence exists to permit a jury to determine the factual predicate" underlying a claim of spoliation); *One Beacon Ins. Co.*, 2005 WL 2077499 at *5-*6 (affirming, without evidentiary hearing, permissive spoliation jury instruction that "simply ensured that *if* the jury believed that the fault for destroying the evidence lay at the door [of One Beacon], it was permitted, if it chose, to infer that the missing [evidence supported defendant's case]").

Finally, even to the extent Mattel's proposed instruction is considered to be an "adverse inference" instruction, it nonetheless is proper. In an abundance of caution, Mattel brings herewith a Motion for Adverse Inference Jury Instruction. As set forth in detail in that motion, Mattel is entitled to the instruction it seeks because (1) Bryant had an obligation to preserve evidence at the time he ran Evidence Eliminator; (2) Bryant acted with the requisite culpable state of mind – which exists wherever a party to litigation destroys evidence while the litigation is pending; and (3) the destroyed evidence was relevant. *See* Motion for Adverse Jury Instruction, at 5-10 (incorporated herein by reference); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F. 3d 99, 105 (2d Cir. 2002) (setting forth standards applied in this Circuit for issuance of adverse inference instruction based on spoliation of evidence).

Accordingly, the Court should adopt Mattel's proposed jury instruction regarding Bryant's destruction of evidence.

**Conclusion**

For all the foregoing reasons, Mattel respectfully requests that the Court deny Bryant's Motion *in Limine* No. 13 in its entirety.

DATED: April 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
John B. Quinn
Attorneys for Mattel, Inc.