1  CALDWELL LESLIE & PROCTOR, PC
   CHRISTOPHER G. CALDWELL, State Bar No. 106790
2  E-mail: caldwell@caldwell-leslie.com
   SANDRA L. THOLEN, State Bar No. 180518
3  E-mail: tholen@caldwell-leslie.com
   1000 Wilshire Blvd., Suite 600
4  Los Angeles, California 90017-2463
   Telephone: (213) 629-9040
5  Facsimile: (213) 629-9022

6  Attorney for Non-party
   MATTHEW BOUSQUETTE
7

8            UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10                 EASTERN DIVISION

11

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | OPPOSITION TO MGA'S MOTION OBJECTING TO DISCOVERY MASTER'S APRIL 22, 2008 ORDER GRANTING MATTHEW BOUSQUETTE'S MOTION TO QUASH SUBPOENA; DECLARATION OF SANDRA L. THOLEN WITH EXHIBITS |
| Defendant. | |
| | Hearing Date:  May 12, 2008<br>Time:  10:00 a.m.<br>Place:  Courtroom 1 |
| AND CONSOLIDATED ACTIONS. | **Phase I**<br><br>Discovery Cutoff:  January 28, 2008<br>Pretrial Conference: May 5, 2008<br>Trial Date:  May 27, 2008 |

28
CALDWELL
LESLIE &
PROCTOR

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................1

II. FACTUAL BACKGROUND..........................................................................2

III. MGA'S MOTION IGNORES THE COMPLETE FACTUAL
    RECORD ...................................................................................................5

    A.  MGA Mistakenly Claims that Mr. Bousquette Has Attempted to
        Delay His Deposition Since November 2006 ......................................5

    B.  MGA Mischaracterizes Conversations Between Counsel for
        MGA and Counsel for Mr. Bousquette.................................................6

IV. JUDGE INFANTE'S FACTUAL DETERMINATION THAT MR.
    BOUSQUETTE LIVED AND WORKED IN ILLINOIS WAS NOT
    CLEARLY ERRONEOUS ...........................................................................7

    A.  Judge Infante Considered the Evidence and Made a Factual
        Determination that Mr. Bousquette Lives and Works in Illinois
        and Does Not Regularly Transact Business in Person in
        California.............................................................................................7

    B.  Judge Infante's Factual Determinations Were Not Clearly
        Erroneous .............................................................................................8

        1.  Judge Infante's Determination that Mr. Bousquette Does
            Not Reside in California Was Correct and Supported by
            the Evidence..............................................................................9

        2.  Judge Infante's Determination that Mr. Bousquette Does
            Not Regularly Transact Business in Person in California
            Was Also Correct .....................................................................10

V.   THE DISCOVERY MASTER'S ORDER WAS NOT CONTRARY TO LAW .......................................................................................... 11

    A.   MGA's Assumption that Judge Infante Relied on a "Domicile" Standard is Not Supported by Judge Infante's Order ......................... 11

    B.   Even if Judge Infante Had Applied a "Domicile" Standard in Quashing the Subpoena, the Ruling Was Correct ............................... 12

VI.   CONCLUSION ................................................................................................ 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALDWELL
LESLIE &
PROCTOR

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Asselstine v. Boyne USA, Inc.*, Misc. No. 1:07MC33,
    2007 WL 3124619 (W.D.N.C. Oct. 24, 2007)................................................12

*Bostian v. Suhor Industries, Inc.*, No. 07-CV-151-GFK-FHM,
    2007 WL 3005177 (N.D.Okla.2007) ..............................................................10

*Downs v. Comm'r*,
    166 F.2d 504 (9th Cir. 1948)..........................................................................14

*Halliburton Energy Servs., Inc. v. M-I, LLC,* No. H06MC00053,
    2006 WL 2663948 (S.D. Tex. Sept. 15, 2006) ..............................................10

*In re Application for Order Quashing Deposition Subpoenas*, No. M8-85,
    2002 WL 1870084 (S.D.N.Y.2002) ................................................................10

*Lew v. Moss*,
    797 F.2d 747 (9th Cir. 1986).........................................................................14

*Lewis v. United States*, No. C 04-1834 PJH,
    2004 WL 2757931 (N.D. Cal. Dec. 2, 2004) ................................................13

*M'Baye v. New Jersey Sports Production, Inc.*,
    246 F.R.D. 205 (S.D.N.Y. 2007)...................................................................10

*Regents of the Univ. of Cal. v. Kohne*,
    166 F.R.D. 463 (S.D.Cal.1996)......................................................................11

*Stacher v. United States*,
    258 F.2d 112 (9th Cir. 1958)..................................................................7, 13

*Wolpin v. Philip Morris Inc.*,
    189 F.R.D. 418 (C.D. Cal. 1999) ...................................................................8

CALDWELL
LESLIE &
PROCTOR

iii

# TABLE OF AUTHORITIES
## (continued)

**CASES**                                                                      **Page(s)**

*Zaitsev v. State Farm Fire & Cas. Co.*, No. 05-CV-2098 (ILG),
    2005 WL 3088326 (E.D.N.Y. 2005) ............................................................12

**STATUTES**

28 U.S.C. § 1391(b) .......................................................................................13

Fed. R. Civ. P. 37(a)(2) ...................................................................................2

Fed. R. Civ. P. 45(b) .......................................................................................2

Fed. R. Civ. Proc. 45(c)(3)(A) ......................................................................12

Fed. R. Civ. Proc. 45(c)(3)(A)(i) ....................................................................7

Fed. R. Civ. Proc. 45(c)(3)(A)(ii) ..................................................... 7, 8, 10, 11

Fed. R. Civ. P. 72(a) ........................................................................................8

**OTHER AUTHORITIES**

David D. Siegel, Practice Commentaries,
    Fed. R. Civ. P. 45, at C45-21 (2007)............................................................14

CALDWELL
LESLIE &
PROCTOR

OPPOSITION TO MOTION OBJECTING TO
DISCOVERY MASTER'S APRIL 22, 2008 ORDER

## I.    INTRODUCTION

Sitting as discovery master in compliance with the Parties' stipulation and the Court's Order, the Honorable Edward A. Infante (Ret.), carefully considered the evidence submitted in support of and in opposition to third party witness Matthew Bousquette's Motion to Quash the subpoena served by MGA and made certain factual determinations:  Judge Infante determined that the evidence established that Mr. Bousquette lived and worked in Itasca, Illinois, that Mr. Bousquette considered Illinois his home and intended to maintain his residence there, and that Mr. Bousquette did not regularly conduct business in person in California.  Judge Infante further concluded that the "evidence" submitted by MGA was consistent with Mr. Bousquette's sworn declaration and that, under Federal Rule of Civil Procedure 45, Mr. Bousquette could not be compelled to appear for a deposition in Palm Springs.

Relying on factual mischaracterizations about MGA's efforts to depose Mr. Bousquette, unfounded assumptions about the legal basis for Judge Infante's ruling, and misstatements of the law, the MGA Defendants[1] now seek to overturn Judge Infante's factual determinations and order Mr. Bousquette, a third party witness who has never been properly served with a deposition subpoena in this case, to "immediately" travel thousands of miles from where he lives and works so that he can be deposed by MGA.

Ironically, during the meet and confer process more than a month ago, Mr. Bousquette volunteered to appear for his deposition in Chicago on April 30, the first date on which he did not have prior business commitments.  MGA rejected that offer, choosing instead to force Mr. Bousquette to file a motion to quash.  Had

---

[1] The Motion Objecting to Discovery Master's April 22, 2008 Order Granting Matthew Bousquette's Motion to Quash Subpoena ("Motion") is brought by MGA Entertainment, Inc.; Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico, S.R.L. de C.V. (collectively "MGA").  *See* Notice of Motion at 1.

1  MGA been willing to work with Mr. Bousquette, his deposition would have

2  already been completed.  Having chosen to forego that offer in favor of strong-arm

3  tactics, MGA should not be allowed to force Mr. Bousquette to turn his busy

4  schedule on its head so that he can accommodate an "emergency" of MGA's own

5  making.

## II.    FACTUAL BACKGROUND

7          Although this action has been pending for more than four years, MGA first

8  moved to compel Mr. Bousquette's deposition approximately six weeks ago.  MGA

9  had attempted to notice Mr. Bousquette's deposition pursuant to a deposition

10  subpoena issued by the Northern District of Illinois, but rather than personally

11  serving the deposition subpoena on Mr. Bousquette in compliance with Rule 45(b),

12  MGA served the subpoena on Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP

13  ("Quinn Emanuel"), counsel for Mattel, Inc.  Quinn Emanuel, however, did not

14  represent Mr. Bousquette, and neither Mr. Bousquette nor his counsel, had

15  authorized Quinn to accept service of the subpoena or other legal process on Mr.

16  Bousquette's behalf.  Declaration of Sandra L. Tholen ("Tholen Decl."), Exh. 2;

17  (Bousquette Decl.) ¶ 6; Exh. 2 (Caldwell Declaration) ¶ 3.

18          Although the subpoena had been issued in the Northern District of Illinois,

19  MGA chose to ignore Rule 37(a)(2) and moved to compel Mr. Bousquette's

20  deposition in this Court.  Mr. Bousquette opposed the motion, noting that he had

21  not been served with the subpoena and – because Mr. Bousquette lived in Illinois

22  and the subpoena had been issued in the Northern District of Illinois – the motion

23  should have been brought in the Northern District of Illinois.  *Id.*, Exh. 1

24  (Bousquette's Opposition to MGA's Motion to Compel) at 1-2; *see* Exh. 2

25  (Caldwell Decl.) ¶¶ 5-6; *see also* Fed. R. Civ. P. 45(b) ("Serving a subpoena

26  requires delivering a copy to the named person"); Fed. R. Civ. P. 37(a)(2)

27  (application to compel discovery from a non-party must be made in the district

28  where the discovery is to be taken).

CALDWELL
LESLIE &
PROCTOR

OPPOSITION TO MOTION OBJECTING
TO DISCOVERY MASTER'S APRIL 22, 2008 ORDER

1    On March 10, 2008, Judge Infante held that MGA was required to proceed in
2    the district in which Mr. Bousquette lives and from which the subpoena had been
3    issued and that he thus lacked jurisdiction to compel Mr. Bousquette's deposition.
4    Herrington Decl.[2], Exh. 18 (transcript of March 10, 2008, hearing) at p. 119.  Judge
5    Infante granted an exception to the January 28, 2008, discovery cut-off for Phase I
6    discovery, however, and granted MGA "leave to proceed to pursue Mr.
7    Bousquette's deposition before the Phase I trial."  *Id.*

8    On March 16, 2008 – the day before Judge Infante entered his written order
9    and with knowledge that Mr. Bousquette lived and worked in Illinois – MGA
10   personally served Mr. Bousquette in Palm Springs with a deposition subpoena
11   issued by the Central District of California.  Tholen Decl., Exh. 2 (Bousquette
12   Decl. ¶ 7); Exh. 2 (Caldwell Decl.) ¶ 7, Exh. "A".  Although MGA knew that Mr.
13   Bousquette was represented by Mr. Caldwell, MGA made no effort to coordinate
14   dates with Mr. Caldwell or Mr. Bousquette and unilaterally set the date for the
15   deposition for March 28, 2008, in Palm Springs, California.  Tholen Decl., Exh. 2
16   (Caldwell Decl. ¶ 7).

17   As MGA had been informed, however, Mr. Bousquette does not live or work
18   in California.  And although Mr. Bousquette owns property in California, his
19   primary residence (and domicile) is in Itasca, Illinois, a suburb of Chicago.  *Id.*
20   ¶¶ 2-3.  His business, which requires him to travel extensively, is also
21   headquartered in Itasca.  *Id.* ¶¶ 2, 4.  And Mr. Bousquette had long-standing
22   business commitments that would have been seriously disrupted if he was required
23   to appear for deposition in California on March 28, 2008.  *Id.* ¶¶ 4, 9.

24   Accordingly, the first business day after Mr. Bousquette was served with the
25   subpoena, Mr. Caldwell wrote to counsel for MGA, reminded him that Mr.

26

27

28
CALDWELL
LESLIE &
PROCTOR

---

[2] The Declaration of Robert J. Herrington was submitted by MGA in support of this Motion.

-3-

1  Bousquette lived and worked in Illinois and informed him that Mr. Bousquette was
2  not available for deposition on March 28. Tholen Decl., Exh. 2 (Caldwell Decl.
3  ¶ 8, Exh. "A"). MGA responded by letter on March 19, indicating that,
4  notwithstanding Mr. Bousquette's unavailability, and without addressing the fact
5  that Mr. Bousquette lives and works in Illinois, MGA intended to proceed with Mr.
6  Bousquette's deposition on March 28. *Id.* ¶ 9, Exh. "B." The only accommodation
7  MGA offered was that the deposition be conducted in Los Angeles rather than
8  Palm Springs. *Id.*

9      In an effort to resolve the impasse, by letter dated March 21, 2008, counsel
10  for Mr. Bousquette proposed that Mr. Bousquette's deposition be conducted in
11  Chicago on April 30, 2008. *Id.* ¶ 10, Exh. "C." MGA refused. *Id.* ¶ 11. The only
12  other date MGA offered was during a conference call on March 25, 2008, when
13  MGA's counsel offered to conduct the deposition on the following Sunday, March
14  30,[3] a date that did not work for either Mr. Bousquette or Mr. Caldwell. *Id.* Over
15  the next few days, the parties continued to meet and confer in an effort to resolve
16  this dispute without the intervention of the Court. *Id.* ¶¶ 11 & 12. Despite these
17  efforts, MGA refused to compromise on the date or location for Mr. Bousquette's
18  deposition. *Id.*

19      MGA's unwillingness to cure the defects in the subpoena or to accommodate
20  Mr. Bousquette's reasonable requests to modify the time and place of his
21  deposition forced Mr. Bousquette to move to quash the subpoena. MGA's
22  response was to attack Mr. Bousquette, accusing him of evading service,
23  concealing his ownership of property in California, and misrepresenting the state in
24  which he lives and works. MGA's opposition was based primarily, however, on
25  incompetent hearsay "evidence" from its private investigator that established only
26
27

[3] Contrary to MGA's assertions, MGA did not suggest Saturday, March 29, as an option. *See* Motion at 9; Caldwell Decl. ¶ 11.

28

-4-

1   that Mr. Bousquette owns property in California and continues to have connections

2   to California. *See* Herrington Decl., Exhs. 20, 24 (Declaration, Supplemental

3   Declaration of Wayne Sherman). After considering all of the evidence, Judge

4   Infante credited Mr. Bousquette's declaration and concluded that MGA's

5   "evidence" was not inconsistent with Mr. Bousquette's declaration. Accordingly,

6   Judge Infante granted the motion to quash. *Id.*, Exh. 30 (Judge Infante's Order

7   dated April 22, 2008) at 3.

8   **III.   MGA'S MOTION IGNORES THE COMPLETE FACTUAL RECORD**

9         ***A.   MGA Mistakenly Claims that Mr. Bousquette Has Attempted to***

10         ***Delay His Deposition Since November 2006***

11         In its Motion, MGA asserts, as it did unsuccessfully before Judge Infante,

12   that Mr. Bousquette has attempted to evade service and delay his deposition since

13   November 2006. *See* Motion at 2 (asserting that Mr. Bousquette knew that he was

14   served in November 2006 and failed to "raise[] any objection"). MGA is well

15   aware, however, that Mr. Bousquette was *not* personally served in November 2006.

16   Instead, MGA served Mattel's counsel, even though neither Mr. Bousquette nor his

17   counsel had authorized Quinn Emanuel to accept service of a subpoena on

18   Mr. Bousquette's behalf. *See* Tholen Decl., Exh. 2 (Bousquette Decl.) ¶ 6; Exh. 2

19   (Caldwell Decl.) ¶ 3. In fact, there is *no evidence* to support MGA's assertion that

20   Mr. Bousquette was responsible for any delay in scheduling his deposition. Indeed,

21   MGA implicitly recognizes that, while others allegedly attempted to delay his

22   deposition, Mr. Bousquette himself played no role in such efforts. *See* Motion at 1

23   ("Mattel has used every trick in the book to block that deposition . . . ."). Thus,

24   although MGA would like to blame Mr. Bousquette for its failure to properly and

25   timely serve him, the fault does not lie with Mr. Bousquette and he cannot be

26   charged with MGA's omissions.

27

28

CALDWELL
LESLIE &
PROCTOR

OPPOSITION TO MOTION OBJECTING
TO DISCOVERY MASTER'S APRIL 22, 2008 ORDER

1   **B.    MGA Mischaracterizes Conversations Between Counsel for MGA**
2          **and Counsel for Mr. Bousquette**

3          MGA also seeks to blame Mr. Bousquette's counsel for MGA's failure to

4   negotiate in good faith to identify a mutually agreeable date for Mr. Bousquette's

5   deposition.  MGA asserts that:

6                 [o]n March 12, 2008, MGA's counsel . . . asked

7                 whether [Mr. Caldwell] would accept service of a

8                 subpoena for [Mr. Bousquette].  Mr. Caldwell stated

9                 that he needed to speak with his client, but would

10                call MGA's counsel back.  He never called back.

11  Motion at 7 (footnotes omitted); *see* Nolan Decl. ¶ 1.

12         MGA's description of these events excludes a critical fact: MGA's counsel

13  had agreed, during the March 12 telephone call, to provide Mr. Caldwell with a

14  copy of Judge Infante's order concerning Mr. Bousquette's deposition so that

15  Mr. Caldwell could review it and advise his client appropriately before making any

16  commitment.  *See* Tholen Decl., Exh. 2 (Caldwell Decl.) ¶ 6.  Without that order,

17  Mr. Bousquette's counsel had no way of knowing what Judge Infante had ordered

18  about if, when or where the deposition would proceed.  Instead of providing a copy

19  of the order or a draft of the order as he had agreed, MGA's counsel decided to

20  preemptively serve Mr. Bousquette with a subpoena in Palm Springs – a day before

21  the order had even been entered by Judge Infante.  *See id.* ¶¶ 6, 7.  Inexplicably,

22  MGA chose to issue a subpoena from the Central District of California, even

23  though MGA then knew that Mr. Bousquette's lived and worked in Illinois and

24  even though the prior subpoena that MGA sent to Mattel's counsel had (correctly)

25  been issued from the Northern District of Illinois.

26         MGA's Motion and its counsel's declaration ignore the agreement by

27  MGA's counsel to provide a copy of Judge Infante's order to Mr. Bousquette's

28  counsel.  MGA, however, does not deny that this agreement was made, choosing

CALDWELL
LESLIE &
PROCTOR

-6-

instead to simply ignore this key part of the conversation.  Thus, contrary to the insinuations in MGA's Motion, *id.* at 7 ("When Mr. Caldwell failed to provide deposition dates . . . ."), Mr. Caldwell had no obligation to provide dates and was reasonably waiting to review the Court's order before conferring with Mr. Bousquette regarding service and scheduling.

## IV.   JUDGE INFANTE'S FACTUAL DETERMINATION THAT MR. BOUSQUETTE LIVED AND WORKED IN ILLINOIS WAS NOT CLEARLY ERRONEOUS

### A.   *Judge Infante Considered the Evidence and Made a Factual Determination that Mr. Bousquette Lives and Works in Illinois and Does Not Regularly Transact Business in Person in California*

Under the Federal Rules of Civil Procedure, the Court *must* quash or modify a subpoena that does not provide a reasonable time to comply or "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. Proc. 45(c)(3)(A)(i), (ii).  Determining residency is a question of fact. *Stacher v. United States*, 258 F.2d 112, 116-19 (9th Cir. 1958).

In support of his Motion to Quash, Mr. Bousquette submitted a declaration attesting, in writing and under oath, that, for more than a year, he has made his home in Itasca, Illinois, a suburb of Chicago.  Tholen Decl., Exh. 2 (Bousquette Decl.) ¶ 2.  Although he travels extensively in connection with his business, in the past year, he has spent more time in Itasca than in any other place.  *Id.* ¶¶ 3-4.  His 2007 federal and state tax returns will be filed as a resident of Illinois and, because his business is also headquartered in Itasca, he intends to maintain his permanent residence in Illinois indefinitely.  *Id.* ¶¶ 2-4.  He acknowledged that he owns property in California and visits California regularly, but affirmed that his current and permanent residence is in Illinois.  *Id.*  Thus, although he continues to have some legal ties to California, this is primarily because he frequently works seven

OPPOSITION TO MOTION OBJECTING TO DISCOVERY MASTER'S APRIL 22, 2008 ORDER

1   days a week, travels extensively and has not had time to transfer these matters to

2   Illinois.  *Id.* ¶ 3.

3          MGA countered with a declaration from its "private investigator" that was

4   not based on personal knowledge, lacked foundation, constituted inadmissible

5   hearsay (or in most cases, double hearsay), violated the best evidence rule and was

6   largely irrelevant.  Even crediting the "evidence" submitted by MGA, however,

7   Judge Infante concluded that "the information MGA collected regarding

8   Bousquette's various ties to California is not necessarily inconsistent with and does

9   not discredit the representations made by Bousquette."  Order at 2-3.

10          Thus, after carefully reviewing the evidence submitted by both parties, Judge

11   Infante made a factual determination that Mr. Bousquette lived and worked in

12   Illinois, was not a resident of California, and did not regularly conduct business in

13   person within 100 miles of Palm Springs.  Having made that determination, Judge

14   Infante properly quashed the subpoena as required by Federal Rule of Civil

15   Procedure 45(c)(3)(A)(ii).  In compliance with the Parties' stipulation, that

16   determination may be disturbed only if it was "clearly erroneous" or "contrary to

17   law."  *See* Herrington Decl., Exh. 31 (Stipulation) ¶ 6; *see also* Fed. R. Civ. P.

18   72(a).

19   **B.      *Judge Infante's Factual Determinations Were Not Clearly***

20            ***Erroneous***

21          Because Judge Infante made a factual determination that Mr. Bousquette was

22   not a resident of California, did not work or live in California, and did not regularly

23   transact business in person within 100 miles of Palm Springs, MGA must show that

24   the Judge Infante's findings were clearly erroneous.  *See* Herrington Decl., Exh. 31

25   (Stipulation) ¶ 6; Fed. R. Civ. P. 72(a).  "To conclude that a magistrate judge's

26   decision is clearly erroneous, the District Court must arrive at a definite and firm

27   conviction that a mistake has been committed."  *Wolpin v. Philip Morris Inc.*, 189

28   F.R.D. 418, 422 (C.D. Cal. 1999).  MGA cannot satisfy this standard.

CALDWELL
LESLIE &
PROCTOR

-8-

1

### 1. Judge Infante's Determination that Mr. Bousquette Does Not Reside in California Was Correct and Supported by the Evidence

In a futile attempt to demonstrate that Judge Infante's factual determinations were clearly erroneous, MGA mischaracterizes Judge Infante's conclusions. Thus, MGA asserts that "Judge Infante granted Mr. Bousquette's motion to quash *solely on the basis* of Mr. Bousquette's representations that his primary residence is Illinois and that he has no 'intention of changing his residence and expects to remain a resident of Illinois indefinitely.'" Motion at 14 (emphasis added). MGA also contends that "[Judge Infante] gave no weight to the undisputed fact that Mr. Bousquette owns several properties in California, including one property that he admits is his 'principal place of residence' and visits California on a regular basis." *Id.* at 14. As an initial matter, Mr. Bousquette has never "admit[ted] that his 'principal place of residence' is in California, and MGA cites to no evidence to support this assertion. Nor has Mr. Bousquette denied that he owns several properties in California or that he regularly travels to California and elsewhere. *See* Tholen Decl., Exh. 2 (Bousquette Decl.) at 3.

Moreover, Judge Infante's order makes clear that he carefully considered all of the evidence submitted by both sides. Judge Infante credited Mr. Bousquette's declaration and, after considering the evidence submitted by MGA, concluded that "[t]he information collected regarding Bousquette's ties to California is not necessarily inconsistent with and does not discredit the representations made by Bousquette." Herrington Decl., Exh. 30 (Order) at 2-3. That determination – based on a careful consideration of the evidence submitted – was absolutely correct, and certainly was *not* clearly erroneous.

OPPOSITION TO MOTION OBJECTING TO DISCOVERY MASTER'S APRIL 22, 2008 ORDER

## 2. Judge Infante's Determination that Mr. Bousquette Does Not Regularly Transact Business in Person in California Was Also Correct

MGA makes only a half-hearted attempt to challenge Judge Infante's factual determination that Mr. Bousquette does not regularly transact business within 100 miles of Palm Springs, asserting in conclusory terms that the evidence establishes that Mr. Bousquette "conducts business in Palm Springs."[4] Motion at 13. That, however, is not the standard. Under Rule 45(c)(3)(A)(ii), a subpoena must be quashed unless an individual lives, works or *regularly transacts business in person*" within 100 miles of the location set for the deposition.

In this case, Mr. Bousquette travels extensively in the course of his business. Some of those trips may bring him to California and he also travels to a home he owns in the resort community of Palm Springs. These visits, however, are not sufficient to satisfy the standards set by Rule 45, and MGA offers no evidence to the contrary. *See M'Baye v. New Jersey Sports Production, Inc.*, 246 F.R.D. 205, 208 (S.D.N.Y. 2007) ("[T]raveling to an area within a 100-mile radius for fourteen to eighteen days in two years is insufficient to render a person amenable to a subpoena."); *Bostian v. Suhor Industries, Inc.*, No. 07-CV-151-GFK-FHM, 2007 WL 3005177, at *1 (N.D.Okla.2007) ("twice yearly visits to Oklahoma to conduct business . . . [do] not qualify as regularly transacting business"); *In re Application for Order Quashing Deposition Subpoenas*, No. M8-85, 2002 WL 1870084, at *3 (S.D.N.Y.2002) (a person who comes to New York for business four times within five years "does not 'regularly transact [ ] business in person' in New York to the

---

[4] MGA's reliance on *Halliburton Energy Servs., Inc. v. M-I, LLC,* an opinion out of the Southern District of Texas is misplaced. No. H06MC00053, 2006 WL 2663948, (S.D. Tex. Sept. 15, 2006). In *Halliburton*, an employee of a German company that co-developed technology with a Texas company traveled to Texas on average four times a year expressly for business, staying for approximately ten days on each trip. *Id.* at *1. *Halliburton* bears little resemblance to the facts of this case.

1   extent contemplated by Rule 45(c)(3)(A)(ii)"); *Kohne*, 166 F.R.D. at 465

2   ("'regularity does not mean ten times in seven years").

3        Mr. Bousquette's business is headquartered in Itasca, Illinois, and although

4   he owns properties in California, he has stated, under penalty of perjury, that he

5   does not "regularly transact business in person within 100 miles of Palm Springs,

6   California."[5]  Bousquette Decl. ¶ 7.  He can do no more.  As one district court has

7   recognized, requiring Mr. Bousquette to prove that he does not regularly transact

8   business within 100 miles of Palm Springs would require him to "prove a

9   negative."  *See Regents of the Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 465

10  (S.D.Cal.1996).  Therefore, "even a conclusory affidavit by [the third-party

11  witness] providing factual information from which to make [a determination of

12  whether the witness regularly transacts business in the 100-mile radius] would

13  suffice to shift the burden of production to the opposing party to prove the falsity

14  of this claim."  *Id.*

15       MGA offers no evidence to justify disturbing Judge Infante's unquestionably

16  correct ruling on this issue.

17  **V.   THE DISCOVERY MASTER'S ORDER WAS NOT CONTRARY TO**

18  **LAW**

19       *A.   MGA's Assumption that Judge Infante Relied on a "Domicile"*

20       *Standard is Not Supported by Judge Infante's Order*

21       In an effort to manufacture a "legal" issue from a factual one, MGA contends

22  that Judge Infante improperly applied a domicile standard in determining Mr.

23  Bousquette's residency.  Motion at 12-13.  In fact, however, Judge Infante's order

24  quashing the subpoena never mentions the word "domicile."  Judge Infante simply

25

26       [5] MGA's assertion that it was unable to locate a business or residence address
    for Mr. Bousquette in Illinois is not convincing.  Motion at 7.  As set forth in the
27  Supplemental Caldwell Declaration, a simple Internet search was sufficient to
    obtain Mr. Bousquette's business address and phone number in Itasca, Illinois
28  within minutes.  Tholen Decl., Exh. 3 (Supplemental Caldwell Declaration ¶ 3)

CALDWELL
LESLIE &
PROCTOR

-11-

1   reviewed the evidence submitted by both sides, credited Mr. Bousquette's
2   representations under oath and, based on those representations concluded that Mr.
3   Bousquette "lives and works in Illinois" and does not regularly transact business in
4   person within 100 miles of Palm Springs. Under either standard, Judge Infante's
5   determination was correct.

6   **B.    Even if Judge Infante Had Applied a "Domicile" Standard in**
7   **Quashing the Subpoena, the Ruling Was Correct**

8   MGA nonetheless contends that Judge Infante erred by applying a
9   "domicile" standard in ruling on Mr. Bousquette's motion to quash, rather than the
10  less stringent "residence" standard. Even if this were true – and Judge Infante's
11  ruling does not support this conclusion – MGA has offered no authority to support
12  the conclusion that applying a "domicile" standard was contrary to law.

13  In the only case cited by either party that considered the distinction between
14  residence and domicile in the context of Rule 45, the Western District of North
15  Carolina held that a "domicile" standard should be applied in determining whether
16  a deposition subpoena to a third-party witness should be quashed. *See Asselstine v.*
17  *Boyne USA, Inc.*, Misc. No. 1:07MC33, 2007 WL 3124619 (W.D.N.C. Oct. 24,
18  2007). In *Asseltine*, the court considered the validity of a subpoena that was served
19  at the deponent's residence in Burnsville, North Carolina, requiring the individual
20  to testify at a courthouse less than 100 miles away. *Id.* The court concluded that
21  the recipient of the subpoena "reside[d] principally in Florida and [wa]s employed
22  there." Thus, although he "maintain[ed] a second home in Burnsville, North
23  Carolina," the court was required to quash the subpoena under Rule 45(c)(3)(A).
24  *Id.*; *see also Zaitsev v. State Farm Fire & Cas. Co.*, No. 05-CV-2098 (ILG), 2005
25  WL 3088326, at *4 (E.D.N.Y. 2005) (considering whether potential witnesses were
26  "domiciled within a 100-mile radius" of the court in evaluating whether to grant a
27  motion to transfer venue).

28

CALDWELL
LESLIE &
PROCTOR

-12-

1    Ignoring this authority, MGA cites to *Lewis v. United States*, No. C 04-1834
2  PJH, 2004 WL 2757931 (N.D. Cal. Dec. 2, 2004), for the proposition that the terms
3  "domicile" and "residence" are not synonymous when used in the context of
4  interpreting a venue statute. *See* Motion at 2. *Lewis*, however, is inapposite. In
5  *Lewis*, the court was reviewing a unique aspect of a venue provision concerning
6  admiralty law—the Public Vessels Act ("PVA"). The court distinguished its
7  analysis by explaining that:

8              Public policy supports a looser residency requirement for
9              the PVA as well. The PVA is a mechanism for suit against
10             the federal government which is likely to be used by
11             individuals who spend a large amount of time at sea and
12             have no permanent domicile. For that reason, equating
13             "residence" with "domicile" for the purposes of the PVA's
14             venue provision could exclude a large part of the population
15             likely to bring suit under the PVA.

16  *Lewis*, at *2. These considerations simply do not apply to a motion to quash under
17  Rule 45(c)(3)(A).

18    MGA's reliance on *Stacher*, 258 F.2d 112 is likewise misplaced. *See* Motion
19  at 13. In *Stacher*, the issue was whether the district court had jurisdiction over an
20  action to revoke a naturalization order. Interpreting 28 U.S.C. § 1391(b), the court
21  noted, in dicta, that there was a "difference between 'domicile,' which generally
22  involves intent and 'residence' which generally involves an actual place of abode."
23  *Id.* at 116. Because the parties did not dispute this issue and because there was
24  substantial evidence in the record to support the trial court's finding that the
25  defendant resided in California on the date at issue, however, the issue was not
26  directly before the court. *Id.* at 116-17.

27    As these cases indicate and as the Ninth Circuit has recognized, "[d]omicile
28  and residence have been variously defined. The meaning of the word 'resident' is

CALDWELL
LESLIE &
PROCTOR

-13-

OPPOSITION TO MOTION OBJECTING
TO DISCOVERY MASTER'S APRIL 22, 2008 ORDER

1   not always exactly the same, and its true meaning in a statute must be understood in
2   connection with its context and with the legislative purpose." *Downs v. Comm'r*,
3   166 F.2d 504, 507 (9th Cir. 1948). Thus, the fact that Rule 45 uses the term
4   "resides" does not support the conclusion that it should be interpreted consistent
5   with the use of the term in other statutes. Rather, the Court must consider the
6   context and legislative purpose of Rule 45, which  was specifically drafted to limit
7   the inconvenience imposed on non-party witnesses. *See* David D. Siegel, Practice
8   Commentaries, Fed. R. Civ. P. 45, at C45-21 (2007) ("[I]t is of course the nonparty
9   whose convenience Rule 45 is most concerned about protecting.").

10         Thus, MGA's contention that a non-party witness's mere "physical presence"
11   is sufficient to issue a deposition subpoena for that location, *see* Motion at 13-14, is
12   inconsistent with both the context and legislative purpose of Rule 45. Accordingly,
13   even if Judge Infante had applied a domicile standard in concluding that MGA's
14   subpoena should be quashed, his application of the domicile standard would not
15   have been contrary to law.

16         In addition, Judge Infante's factual findings with respect to Mr. Bousquette's
17   residence are equally applicable under the domicile standard and likewise support
18   Judge Infante's conclusion that MGA's subpoena should be quashed. As discussed
19   above in Section IV.A, Judge Infante carefully considered the facts presented by
20   both Mr. Bousquette and MGA and concluded, consistent with the standards for
21   determining domicile set forth in *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir.
22   1986), that MGA's subpoena of Mr. Bousquette was properly quashed under Rule
23   45(c)(3)(A).

24   **VI.   CONCLUSION**

25         Because Mr. Bousquette lives and works in Illinois, he cannot – and should
26   not – be forced to travel thousands of miles so that he can be deposed by MGA in
27   California immediately simply because MGA waited months to seek his deposition
28   and then refused dates offered by Mr. Bousquette's counsel in an effort to resolve

CALDWELL
LESLIE &
PROCTOR

-14-

this dispute cooperatively.  Judge Infante properly granted Mr. Bousquette's motion to quash and there is no basis for disturbing that ruling.

For all of the foregoing reasons, Matthew Bousquette respectfully requests the Court deny MGA's Motion Objecting to Judge Infante's April 22, 2008 Order.

DATED:  May 2, 2008

Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC


By _____/s/_____
SANDRA L. THOLEN
Attorney for Non-Party
MATTHEW BOUSQUETTE

CALDWELL
LESLIE &
PROCTOR

-15-