**CALDWELL DECLARATION**

## DECLARATION OF CHRISTOPHER G. CALDWELL

I, Christopher G. Caldwell, hereby state and declare as follows:

1. I am an attorney duly licensed to practice law in the state of California and a member of the bar of this Court. I am a principal of the law firm of Caldwell Leslie & Proctor, PC, counsel for non-party Matthew Bousquette in this action. I make this declaration in support of the Motion to Quash Subpoena Seeking Deposition of Matthew Bousquette; or, in the Alternative, Motion for a Protective Order. I have personal knowledge of the facts set forth within this declaration and if called upon as a witness, I could and would testify competently thereto.

2. Since October 2005, I have represented Matthew Bousquette in a variety of legal matters that pre-date this proceeding. I also represent Mr. Bousquette in connection with these proceedings.

3. At no time have I authorized the law firm of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP ("Quinn") to accept service of a subpoena or other legal documents or process on Mr. Bousquette's behalf.

4. At no time have I accepted service of a deposition subpoena on Mr. Bousquette's behalf in connection with this matter.

5. When I learned that Mr. Bousquette had purportedly been subpoenaed to testify in Chicago, Illinois, and that the MGA defendants had moved to compel Mr. Bousquette's deposition, my firm filed an opposition to MGA's Motion to Compel. The basis for the Opposition was that Mr. Bousquette had not been properly served and, because the subpoena had been issued in Illinois, any motion to enforce the subpoena must be brought in Illinois.

6. On or about March 12, 2008, I spoke with Thomas Nolan of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), counsel for the MGA Defendants in this matter. I informed him that I represented Mr. Bousquette

and that neither I nor Mr. Bousquette had authorized Quinn to accept service of a subpoena on Mr. Bousquette's behalf. I informed him that Mr. Bousquette now lives and works in Chicago, Illinois. Mr. Nolan asked me if I would accept service of a subpoena on Mr. Bousquette's behalf. I told him that I would take the issue up with Mr. Bousquette, but, in order to advise my client, I would like to see a copy of the order entered by the discovery referee concerning Mr. Bousquette's deposition. Mr. Nolan told me that he did not have a copy of the signed order yet, but that he would send me a copy of the proposed order his firm was submitting. I never received a copy of the order (proposed or otherwise) from Mr. Nolan or his firm, until after I learned that they had served Mr. Bousquette.

7. On March 16, 2008, I learned that Mr. Bousquette had been personally served with a subpoena while visiting in Palm Springs and that the subpoena required him to appear for a deposition in Palm Springs, California, on March 28, 2008. I also learned that the proposed date was not workable for Mr. Bousquette, who had business commitments elsewhere on that date.

8. Accordingly, by letter dated March 17, 2008, I again notified Mr. Nolan that Mr. Bousquette now works and resides in Chicago. (Technically, I understand that Mr. Bousquette resides and works in the Chicago suburb of Itasca, Illinois.) I also informed Mr. Nolan that Mr. Bousquette was not available for a deposition on March 28 and requested that he forward a copy of the subpoena. A true and correct copy of my letter is attached hereto as Exhibit "A."

9. On March 19, 2008, I received a letter from Robert Herrington of the Skadden firm. Mr. Herrington indicated that, notwithstanding Mr. Bousquette's unavailability on March 28, 2008, and without addressing the fact that Mr. Bousquette lives and works in Illinois, the MGA Defendants intended to proceed with Mr. Bousquette's deposition on March 28. Mr. Herrington refused

CALDWELL
LESLIE &
PROCTOR

-2-

041

1  to reschedule the deposition and failed to offer any alternative dates. A true and
2  correct copy of Mr. Herrington's letter is attached hereto as Exhibit "B."

3  10. Because, as I had informed Mr. Nolan in my March 17 letter, I was
4  traveling the remainder of the week, my colleague, Sandra Tholen, responded to
5  Mr. Herrington by letter dated March 21. Ms. Tholen's letter reiterated that
6  Mr. Bousquette was not available for deposition on March 28, and proposed April
7  30, 2008 as an alternative date for the deposition to be taken in Chicago. A true
8  and correct copy of Ms. Tholen's letter is attached hereto as Exhibit "C."

9  11. On March 25, Ms. Tholen and I participated in a conference call with
10 Mr. Herrington in an effort to resolve this dispute without the intervention of the
11 Discovery Master. I informed Mr. Herrington that, under the Federal Rules of
12 Civil Procedure, the deposition subpoena served on Mr. Bousquette on March 17,
13 2008, was ineffective because Mr. Bousquette resided and worked in Illinois, not
14 California. I reiterated that Mr. Bousquette was not available for a deposition on
15 March 28, but that we were willing to consider an alternative date. I again
16 proposed that Mr. Bousquette be deposed on April 30, 2008, in Chicago. Mr.
17 Herrington did not agree to this date because he claimed it was too close to trial. I
18 also invited Mr. Herrington to offer alternative dates. The only other date
19 proposed by Mr. Herrington was Sunday, March 30, 2008, in Palm Springs, a date
20 that was not workable for Mr. Bousquette and me. Mr. Herrington also stated,
21 however, that he would consider rescheduling Mr. Bousquette's deposition only if
22 counsel for Mattel and I both agreed not to change or cancel the rescheduled date
23 for any reason. I told him that I could not speak for Mattel, but that I would
24 consider discussing with Mr. Bousquette whether it was possible for him to cancel
25 or reschedule any of his commitments between now and April 30 if Mattel was
26 willing to agree to the condition set by Mr. Herrington. I also informed
27 Mr. Herrington, however, that if we were unable to reach an agreement concerning

CALDWELL
LESLIE &
PROCTOR

-3-

042

when and where Mr. Bousquette would be deposed, we intended to seek a protective order.

12. On March 26, 2008, I left a voice mail message for Mr. Herrington inquiring whether he had been able to contact Mattel to determine whether they were willing to agree to the condition he proposed. Mr. Herrington responded by voicemail stating that he had not contacted Mattel and considered that to be my responsibility.

13. As of the date of this Declaration, we have been unable to agree on an acceptable date and location for Mr. Bousquette's rescheduled deposition.

14. I hereby certify that despite a good faith effort to confer with the MGA Defendants in an effort to resolve this dispute without intervention, we have been unable to reach a mutually agreeable resolution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 27, 2008, at Los Angeles, California.

_____
CHRISTOPHER G. CALDWELL