# EXHIBIT 3

ORIGINAL

CALDWELL LESLIE & PROCTOR, PC
CHRISTOPHER G. CALDWELL, State Bar No. 106790
E-mail: caldwell@caldwell-leslie.com
SANDRA L. THOLEN, State Bar No. 180518
E-mail: tholen@caldwell-leslie.com
1000 Wilshire Blvd., Suite 600
Los Angeles, California 90017-2463
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorney for Non-party
MATTHEW BOUSQUETTE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

Case No. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**DISCOVERY MATTER**

**[To Be Heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006]**

REPLY TO MOTION TO QUASH THE SUBPOENA SEEKING DEPOSITION OF MATTHEW BOUSQUETTE; OR, IN THE ALTERNATIVE, MOTION FOR A PROTECTIVE ORDER; SUPPLEMENTAL DECLARATION OF CHRISTOPHER G. CALDWELL WITH EXHIBITS

Hearing Date: No Hearing Set
Time:
Place:

**Phase I**

Discovery Cutoff: January 28, 2008
Pretrial Conference: May 5, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. MGA MISREPRESENTS MULTIPLE KEY FACTS TO SUPPORT ITS OPPOSITION ........ 2

A. MGA Mischaracterizes the Facts by Alleging that Mr. Bousquette Has Attempted to Delay His Deposition Since November 2006 ........ 2

B. MGA Mischaracterizes Conversations Between Counsel for MGA and Counsel for Mr. Bousquette ........ 3

C. MGA Mischaracterizes Mr. Bousquette's Representations Concerning His State of Residence ........ 4

III. MGA APPLIED THE INCORRECT LEGAL STANDARD ........ 5

A. Mr. Bousquette Lives and Works in Illinois ........ 5

B. Mr. Bousquette Does Not Regularly Transact Business within 100 Miles of Palm Springs ........ 6

IV. AT MINIMUM, THE COURT SHOULD GRANT MR. BOUSQUETTE'S MOTION FOR PROTECTIVE ORDER ........ 8

V. THERE IS NO BASIS FOR AN AWARD OF FEES TO MGA ........ 9

VI. CONCLUSION ........ 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Asselstine v. Boyne USA, Inc.*, Misc. No. 1:07MC33, 2007 WL 3124619 (W.D.N.C. Oct. 24, 2007) ........ 5

*Bostian v. Suhor Industries, Inc.*, No. 07-CV-151-GFK-FHM, 2007 WL 3005177 (N.D.Okla.2007) ........ 8

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) ........ 10

*Halliburton Energy Servs., Inc. v. M-I, LLC,* No. H06MC00053, 2006 WL 2663948 (S.D. Tex. Sept. 15, 2006) ........ 7

*Hauser v. Farrell*, 14 F.3d 1338 (9th Cir. 1994) ........ 10

*In re Application for Order Quashing Deposition Subpoenas*, No. M8-85, 2002 WL 1870084 (S.D.N.Y.2002) ........ 8

*Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986) ........ 6

*Lewis v. United States*, No. C 04-1834 PJH, 2004 WL 2757931 (N.D. Cal. Dec. 2, 2004) ........ 5

*M'Baye v. New Jersey Sports Production, Inc.*, 246 F.R.D. 205 (S.D.N.Y. 2007) ........ 8

*Regents of the Univ. of Cal. v. Kohne*, 166 F.R.D. 463 (S.D.Cal.1996) ........ 7, 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

Fed. R. Civ. P. 26(c)(1) ........ 9

Fed. R. Civ. P. 37(a)(5) ........ 9

Fed. R. Civ. P. 45(c)(1) ........ 9

Fed. R. Civ. P. 45(a)(2)(B) ........ 5

Fed. R. Civ. P. 45(c)(3)(A)(i) ........ 5

Fed. R. Civ. P. 45(c)(3)(A)(ii) ........ 5, 6, 7, 8

CALDWELL LESLIE & PROCTOR

iii

REPLY TO MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

074

# I. INTRODUCTION

Mr. Bousquette recognizes that the litigation between the parties to this dispute has been contentious and hard-fought. But Mr. Bousquette is not a party in this action; he is a third party witness. And despite the rhetoric and the accusations asserted by MGA in its opposition to Mr. Bousquette's Motion to Quash, or for a Protective Order ("Opposition"), Mr. Bousquette has not attempted to evade service of a valid deposition subpoena. Nor has he sought to unreasonably delay the deposition. He has asked only that he be served in compliance with the Federal Rules and that his deposition be scheduled to minimize the disruption to his existing business and personal commitments.

Mr. Bousquette lives and works in Itasca, Illinois, a suburb of Chicago. He does not live in Palm Springs. He owns property in Palm Springs, but he does not work in Palm Springs nor does he transact business in Palm Springs in person on a regular basis. Despite having been informed of these facts and despite having previously sought to depose Mr. Bousquette in Chicago, Illinois, MGA served Mr. Bousquette with a deposition subpoena that would require him to appear for his deposition in Palm Springs, California. Under Federal Rules of Civil Procedure 45 and 26, the subpoena *must* be quashed or modified.

MGA, however, has apparently lost patience with the process and now seeks to take its frustrations out on Mr. Bousquette. Thus, in an effort to avoid responsibility for its own failure to properly serve the subpoena on Mr. Bousquette, MGA mischaracterizes the facts and relies on assumptions that are not supported by the facts. But MGA's frustration does not trump the protections afforded third-party witnesses under the Federal Rules of Civil Procedure.

Mr. Bousquette remains willing to work with MGA in a good faith effort to identify a date on which his deposition can be taken in compliance with the Federal Rules and without unnecessarily disrupting his existing professional and personal

commitments. But he cannot, and should not, be forced to appear for a deposition on a date or in a location that violates the Federal Rules.

## II. MGA MISREPRESENTS MULTIPLE KEY FACTS TO SUPPORT ITS OPPOSITION

### *A. MGA Mischaracterizes the Facts by Alleging that Mr. Bousquette Has Attempted to Delay His Deposition Since November 2006*

In its Opposition, MGA asserts that Mr. Bousquette has attempted to avoid service and delay his deposition since November 2006. *See* Opp'n at 3 (asserting that Mr. Bousquette knew that he was served in November 2006 and failed to "raise[] any objection"); *see also* Opp'n at 14 ("Mr. Bousquette . . . does not dispute that Quinn was acting as his counsel throughout 2006 and 2007.").

MGA is well aware, however, that Mr. Bousquette was not personally served in November 2006. MGA is also aware that Mr. Bousquette and his counsel have both asserted, in sworn declarations, that neither authorized the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") to accept service of a subpoena or other legal documents or process on Mr. Bousquette's behalf. *See* Motion to Quash, Bousquette Decl. ¶ 6; Caldwell Decl. ¶ 3. In fact, there is absolutely *no evidence* to support MGA's assertion that Mr. Bousquette was responsible for any delay in scheduling his deposition.

Indeed, elsewhere in its brief, MGA implicitly recognizes that, even if others allegedly tried to delay his deposition, Mr. Bousquette himself had no role in such efforts. *See* Opp'n at 14 ("Mattel and its counsel have systematically delayed Mr. Bousquette's deposition since November 2006 . . . .").

Clearly, MGA would like to blame Mr. Bousquette for MGA's failure to properly and timely serve him with a deposition subpoena. But the fault does not lie with Mr. Bousquette and Mr. Bousquette cannot be charged with MGA's omissions.

### *B. MGA Mischaracterizes Conversations Between Counsel for MGA and Counsel for Mr. Bousquette*

MGA also seeks to blame Mr. Bousquette for MGA's failure to negotiate in good faith to identify a mutually agreeable date for Mr. Bousquette's deposition. MGA asserts that

> "[o]n March 12, 2008, MGA's counsel contacted Mr. Caldwell and asked whether he would accept service of a subpoena for Mr. Bousquette. Mr. Caldwell stated that he needed to speak with his client, but would call MGA's counsel back. He never called back."

Opp'n at 7 (footnotes omitted); *see* Nolan Decl. ¶ 1.

MGA's description of these events, however, excludes a critical fact: MGA's counsel had agreed, during the March 12 telephone call, to provide Mr. Caldwell with a copy of the Court's order concerning Mr. Bousquette's deposition so that Mr. Caldwell could review it and advise his client appropriately. *See* Motion to Quash, Caldwell Decl. ¶ 6. Instead of providing a copy of the order or a draft of the order as he agreed, MGA's counsel preemptively served Mr. Bousquette with the subpoena – a day before the order was even entered by the Court. *See* Motion, Caldwell Decl. ¶¶ 6, 7; Opp'n Ex. 28. Neither MGA's Opposition nor MGA's counsel's declaration makes any reference to Mr. Caldwell's detailed declaration regarding the March 12 telephone call. Nor does MGA or its counsel deny that this request was made. *See* Opp'n at 7; Nolan Decl. ¶ 1. Instead, MGA simply ignores this key part of the conversation.

MGA's counsel also states that the March 12 telephone call concerned whether Mr. Caldwell could accept service for Mr. Bousquette, as opposed to a discussion of possible deposition dates. *See* Nolan Decl. ¶ 1. Yet MGA insinuates that Mr. Caldwell had an obligation to provide deposition dates following the March 12 telephone call. *See* Opp'n at 8 ("When Mr. Caldwell failed to provide deposition

dates . . . ."). Mr. Caldwell had no such obligation, and was reasonably waiting to review the Court's order concerning Mr. Bousquette's deposition before conferring with Mr. Bousquette regarding service and scheduling.

### *C. MGA Mischaracterizes Mr. Bousquette's Representations Concerning His State of Residence*

MGA also repeatedly mischaracterizes Mr. Bousquette's declaration regarding his property ownership. MGA asserts that, "contrary to . . . Mr. Caldwell's representations, Mr. Bousquette owned a home in Palm Springs, California." Opp'n at 8. But Mr. Bousquette has never denied that he owns property in Palm Springs or elsewhere in California. Indeed, in his declaration in support of the Motion to Quash, Mr. Bousquette readily acknowledged that he "own[ed] several properties in California" and that he visit[ed] California regularly."

Whether Mr. Bousquette owns property in Palm Springs or visits California, however, is not the issue. The issue raised by Mr. Bousquette's Motion, is whether the Motion should be quashed because it was issued by the Central District of California and requires him to appear for deposition in Palm Springs despite the fact that Mr. Bousquette's primary residence is in Itasca, Illinois, his business is located in Itasca, Illinois and he does not regularly transact business in California in person.[1] *See* Bousquette Decl. ¶¶ 2-4.

---

[1] Indeed, although Mr. Bousquette has acknowledged that he owns property in California, MGA's "evidence" of such ownership is of little or no evidentiary value. MGA purports to rely on the Declaration of Wayne Sherman [attached as Exhibit 31 to the Declaration of Robert Herrington] as evidence of Mr. Bousquette's property ownership and business operations. MGA fails, however, to attach copies of *any* of the documents on which Mr. Sherman purports to have relied. Moreover, the "facts" asserted in the declaration are not based on personal knowledge, lack foundation, constitute inadmissible hearsay (or in some cases, double hearsay), violate the best evidence rule and are largely irrelevant.

MGA also takes liberties with the facts. For example, MGA cites to Mr. Bousquette's Declaration in Support of the Motion for the assertion that Mr. Bousquette is registered to vote in Riverside County. Opp. at 9. Mr. Bousquette acknowledged that he had not yet changed his voter registration, but never mentioned where he was registered to vote. Bousquette Decl. ¶ 3. Similarly, MGA cites to paragraph 2 of Mr. Sherman's Declaration for the proposition that "Mr. Bousquette owns and operates a business in California called 'MCB Prop' or

## III. MGA APPLIED THE INCORRECT LEGAL STANDARD

A deposition subpoena must issue from the court for the district where the deposition is to be taken. Fed. R. Civ. Proc. 45(a)(2)(B). Under the Federal Rules of Civil Procedure, the Court *must* quash or modify a subpoena that does not provide a reasonable time to comply or "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." *Id.* 45(c)(3)(A)(i), (ii).

Because the subpoena was not issued by the Northern District of Illinois and would require Mr. Bousquette to travel more than 100 miles from where he currently lives, works, or regularly conducts business in person, the subpoena must be quashed.

### *A. Mr. Bousquette Lives and Works in Illinois*

MGA claims that Mr. Bousquette "is applying the wrong legal standard" when he asserts that Rule 45(c)(3)(A)(ii) refers to a non-party witness's state of domicile, rather than mere residence. To be clear, it is not Mr. Bousquette's standard, but the standard applied by at least one district court and MGA cites no relevant authority to the contrary. *See Asselstine v. Boyne USA, Inc.*, Misc. No. 1:07MC33, 2007 WL 3124619 (W.D.N.C. Oct. 24, 2007).

MGA relies on *Lewis v. United States*, No. C 04-1834 PJH, 2004 WL 2757931 (N.D. Cal. Dec. 2, 2004) for the proposition that the terms "domicile" and "residence" are not synonymous when used in the context of interpreting a venue statute. *See* Opp'n at 12. *Lewis*, however, is wholly inapposite. In *Lewis*, the court was reviewing a unique aspect of a venue provision concerning admiralty law—the Public Vessels Act ("PVA"). The court distinguished its analysis by explaining that:

'MCB Properties LLC.'" But Mr. Sherman's Declaration says only that he conducted a tax assessor database search and identified two parcels in Palm Springs, one allegedly held under the name of Matthew Charles Bousquette and one allegedly held in the name "MCB Prop," with Mr. Bousquette identified in the mailing address. *See* Herrington Decl., Exh. 31 at ¶ 2.

> Public policy supports a looser residency requirement for the PVA as well. The PVA is a mechanism for suit against the federal government which is likely to be used by individuals who spend a large amount of time at sea and have no permanent domicile. For that reason, equating "residence" with "domicile" for the purposes of the PVA's venue provision could exclude a large part of the population likely to bring suit under the PVA.

*Lewis*, at *2.

Mr. Bousquette has never disputed that he owns property in California and he has admitted that he has yet to transfer his voter registration to Illinois. Bousquette Decl. ¶¶ 2, 3. But what matters for purposes of this Motion is the fact that Mr. Bousquette considers his permanent residence to be Itasca, Illinois, he will be paying his 2007 taxes as a resident of Illinois, and his business is located in Itasca.[2] *Id.* ¶ 2.

Under the standards set forth in *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986), Mr. Bousquette is domiciled in Illinois and a deposition subpoena requiring him to attend a deposition in Palm Springs, California must be quashed or modified by the Court. *See* Rule 45(c)(3)(A)(ii); Opp'n, Ex. 25 (Transcript of Hearing on Mar. 10, 2008) at 69:11-16 (concluding that the Central District did not have jurisdiction over Mr. Bousquette since he does not live there).

***B. Mr. Bousquette Does Not Regularly Transact Business within 100 Miles of Palm Springs***

MGA also asserts that Mr. Bousquette was properly served with a subpoena to appear in Palm Springs because he "conducts business in Palm Springs." Opp'n at

---

[2] MGA's protestations that they were unable to locate any address for Mr. Bousquette in Illinois is unconvincing. Indeed, a two-minute Google search was all that was necessary to identify Mr. Bousquette's business address in Itasca, Illinois. *See* Supplemental Caldwell Decl. ¶ 3, Exh. "B."

11. This, however, is not the standard under Rule 45. In order for the subpoena to be proper, a non-party witness must "regularly transact[] business in person" within 100 miles of the locations set for the deposition. Rule 45(c)(3)(A)(ii). MGA summarily asserts that because Mr. Bousquette is a member of an LLC that owns property in California, the subpoena issued to Mr. Bousquette to attend a deposition in Palm Springs was consistent with the Rule 45 requirements. In support of its argument, MGA cites *Halliburton Energy Servs., Inc. v. M-I, LLC,* No. H06MC00053, 2006 WL 2663948 (S.D. Tex. Sept. 15, 2006). In *Halliburton*, an employee of a German company that co-developed technology with a Texas company traveled to Texas on average four times a year expressly for business, staying for approximately ten days on each trip. *See id.*, at *1. The facts here bear no resemblance to the facts of *Halliburton.*

In this case, Mr. Bousquette's trips to a second home he owns in the resort community of Palm Springs were not taken for the purpose of conducting business, and therefore do not constitute regularly transacting business pursuant to Rule 45. Furthermore, Mr. Bousquette has declared, under oath, that his business is headquartered in Itasca, Illinois and that he does not "regularly transact business in person within 100 miles of Palm Springs, California." Motion, Bousquette Decl. ¶ 7. As one district court has acknowledged, requiring Mr. Bousquette to prove that he does not regularly transact business within 100 miles of Palm Springs would require him to "prove a negative." *See Regents of the Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 465 (S.D.Cal.1996). Therefore, "even a conclusory affidavit by [the third-party witness] providing factual information from which to make [a determination of whether the witness regularly transacts business in the 100-mile radius] would suffice to shift the burden of production to the opposing party to prove the falsity of this claim." *Id.*

Here, other than asserting that Mr. Bousquette owns various properties through an LLC in California,[3] MGA has offered no proof that Mr. Bousquette regularly transacts business within 100 miles of Palm Springs.

Indeed, even if Mr. Bousquette were to make periodic trips to conduct business within 100 miles of Palm Springs, it would still be appropriate for the Court to quash or modify the deposition subpoena. *See M'Baye v. New Jersey Sports Production, Inc.*, 246 F.R.D. 205, 208 (S.D.N.Y. 2007) ("[T]raveling to an area within a 100-mile radius for fourteen to eighteen days in two years is insufficient to render a person amenable to a subpoena."); *Bostian v. Suhor Industries, Inc.*, No. 07-CV-151-GFK-FHM, 2007 WL 3005177, at *1 (N.D.Okla.2007) ("twice yearly visits to Oklahoma to conduct business . . . [does] not qualify as regularly transacting business"); *In re Application for Order Quashing Deposition Subpoenas*, No. M8-85, 2002 WL 1870084, at *3 (S.D.N.Y.2002) (a person who comes to New York for business four times within five years "does not 'regularly transact [ ] business in person' in New York to the extent contemplated by Rule 45(c)(3)(A)(ii)"); *Kohne*, 166 F.R.D. at 465 ("'regularity' does not mean ten times in seven years").

## IV. AT MINIMUM, THE COURT SHOULD GRANT MR. BOUSQUETTE'S MOTION FOR PROTECTIVE ORDER

At minimum, Mr. Bousquette is entitled to a protective order that would allow the deposition to go forward without imposing an undue burden or unnecessary expense on Mr. Bousquette. Mr. Bousquette will continue to negotiate in good faith to determine a time that MGA can depose Mr. Bousquette in Chicago. But

[3] MGA reports that public databases list an additional address for Mr. Bousquette at 17900 Von Karman Avenue, Suite 200, Irvine, CA, and that this date is "current through at least February 2008." Opp'n at 9. Again, a simple Internet search would have revealed that the address cited above is neither Mr. Bousquette's home nor his business. *See* Supp. Caldwell Decl., ¶ 2, Exh. "A." In fact, it is the address of The Ayco Company, L.P., a Goldman Sachs Company that acts as a financial adviser for Mr. Bousquette. Mr. Bousquette neither owns Goldman Sachs nor lives at The Ayco Company.

Mr. Bousquette "frequently work[s] seven days a week and [is] on the road for business travel much of the time." Motion, Bousquette Decl. ¶ 3. To expect Mr. Bousquette, a third-party witness, to cancel multiple business appointments on short notice in order to fly to California to prepare for and attend a deposition in Palm Springs is inconsistent with the clear intention of Rules 45(c)(1) and 26(c)(1).

Despite MGA's assertion that Mr. Bousquette has not operated in good faith, it is MGA that has mischaracterized the parties' discussions and has been completely inflexible in finding a mutually agreeable time for Mr. Bousquette, as a third-party witness, to attend his deposition. MGA's only proffered rationale for failing to offer any reasonable alternatives is that "Mattel and its counsel have systematically delayed Mr. Bousquette's deposition since November 2006." Opp'n at 14. As explained above, however, Mr. Bousquette did not seek to evade service nor has he tried to unreasonably delay his deposition. Mr. Bousquette should not be held responsible for MGA's failure to properly serve him.

## V. THERE IS NO BASIS FOR AN AWARD OF FEES TO MGA

MGA claims that it is entitled to recover $25,000 in attorneys' fees and costs "incurred in connection with seeking to compel Mr. Bousquette's deposition."[4] Opp'n at 17. MGA alleges that Mr. Bousquette acted in bad faith by "represent[ing] to this Court that Mr. Bousquette was not a resident of California, while a [sic] the same time failing to disclose all of the connections Mr. Bousquette has with California, including his principal residence and his business." Opp'n at 18.

As set forth in detail above, however, this assertion is patently false: Mr. Bousquette affirmatively acknowledged that he owned "several properties" in California and that he had not yet switched his voter registration from California to Illinois. Motion, Bousquette Decl. ¶ 3. There is no evidence that Mr. Bousquette

[4] Notably, MGA does not explain the basis for its claim that it is entitled to $25,000 for preparing its opposition. *See* Fed. R. Civ. P. 37(a)(5) (authorizing an award of fees *incurred in making the motion*).

misrepresented to the Court or to MGA that he was not a resident of California or that he owned properties in California.

In fact, this Motion was necessitated by MGA's failure to serve Mr. Bousquette with a deposition subpoena pursuant to the Federal Rules of Civil Procedure and its unwillingness to work with Mr. Bousquette – a third party witness in this case – to identify a date that worked for all parties and minimized the disruption to Mr. Bousquette's pre-existing business obligations. *See Hauser v. Farrell*, 14 F.3d 1338, 1344 (9th Cir. 1994). There is no evidence of bad faith on Mr. Bousquette's part and no basis for an award of fees or costs to MGA. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

## VI. CONCLUSION

For the foregoing reasons, Matthew Bousquette respectfully requests that the Court enter an Order quashing the deposition subpoena served by MGA. In the alternative, Mr. Bousquette requests that the Court enter a protective order requiring that his deposition be conducted in Chicago on a date that is mutually convenient for the parties.

DATED: April 8, 2008

Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC
CHRISTOPHER G. CALDWELL
SANDRA L. THOLEN

By [signature]
SANDRA L. THOLEN
Attorney for Non-party
MATTHEW BOUSQUETTE