KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

|  |  |
|---|---|
| CARTER BRYANT, an individual,<br><br>                         Plaintiff,<br><br>        v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                         Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727)<br><br>**NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) OR FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       June 23, 2008<br>Time:      10:00 a.m.<br>Dept:       Courtroom 1<br>Judge:      Hon. Stephen G. Larson<br><br>Date Comp. Filed: April 13, 2005<br><br>Discovery Cut-Off: Jan. 28, 2008<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

416646.02

# NOTICE OF MOTION AND MOTION

CARTER BRYANT HEREBY GIVES NOTICE to all parties and to their attorneys of record that on June 23, 2008, or as soon as counsel may be heard in the above-captioned Court, located at 3470 Twelfth Street in Riverside, California, he will, and hereby does, move this Court to certify the Court's April 25, 2008 Summary Judgment Order ("the Order") for interlocutory appeal under 28 U.S.C. § 1292(b), or, in the alternative, to reconsider and amend the Order under the Court's inherent power, and to stay all proceedings in this case in the interim.  In a separately filed *ex parte* application, Bryant also asks the Court to expedite the briefing and hearing of this motion and to waive the 20-day meet-and-confer requirement of Local Rule 7-3, setting the hearing for May 12 and ordering Mattel to file an opposition by May 8, 2008.

This motion is based upon the attached memorandum of points and authorities; the Declaration of Christa M. Anderson, filed concurrently; Bryant's separately filed *ex parte* application for certain scheduling relief; the pleadings, records, and papers on file in this action; and such argument and evidence as may be presented to the Court in further related filings or at the hearing on the motion.

## STATEMENT OF LOCAL RULE 7-3 COMPLIANCE

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 2, 2008.

Respectfully submitted,

Dated:  May 2, 2008                          KEKER & VAN NEST, LLP

By:   /s/ Christa M. Anderson
CHRISTA M. ANDERSON
Attorney for Plaintiff
CARTER BRYANT

i

416646.02

# TABLE OF CONTENTS

I.      Introduction ........................................................................................ 1

II.     Argument .......................................................................................... 2

        A.      Certification under 28 U.S.C. § 1292(b) is appropriate
                where, as here, interlocutory review is necessary to ensure
                fair proceedings and efficient use of party and Court
                resources. ......................................................................... 3

        B.      This Court's holding that Bryant had a fiduciary duty to
                Mattel as a matter of law is reversible error, under the
                California Supreme Court's new decision in *City of Hope v.
                Genentech.* ......................................................................... 5

        C.      Entering into a contract with a competitor during
                employment, to compete in the future, did not breach
                Bryant's duty of loyalty or (non-existent) fiduciary duty as a
                matter of law, and hence the Court's ruling to the contrary is
                reversible error ................................................................... 8

        D.      Reversible error also results from the Order's disregard of
                *City of Hope*'s controlling instructions as to what contract
                interpretation questions the Court must submit to a jury. ......... 12

        E.      The Court's holding with respect to California Labor Code §
                2870 also may create reversible error .................................... 17

        F.      Resolving the Order's errors now will serve the interests of
                justice and materially advance the termination of this
                litigation, because any trial tainted by those errors will waste
                tremendous amounts of judicial and party resources and
                irreparably prejudice Bryant ................................................ 20

        G.      Bryant further requests that the Court stay all proceedings in
                this matter during appeal. ................................................... 21

        H.      Alternatively, this Court itself should reconsider its rulings,
                in the exercise of its inherent power ...................................... 22

III.    Conclusion ...................................................................................... 23

i

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28
U.S.C. § 1292(B) OR FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV 04-09049 SGL (RNBx)

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ameripride Services, Inc. v. Valley Industrial Serv.*
No. CIV S-00-113, 2006 WL 2506767 (E.D. Cal. Aug. 29, 2006) ...................... 3, 4

*Cadence Design System, Inc. v. Bhandari*
No. C 07-008223, 2007 WL 3343085 (N.D. Cal. Nov. 8, 2007) ........................... 19

*Eaton v. Siemens*
No. 2:07-cv-315, 2007 WL 2318538 (E.D. Cal. Aug. 10, 2007) ............................4

*Hadjipateras v. Pacifica, S.A.*
290 F.2d 697 (5th Cir. 1961).................................................................... 3, 4

*Iconix, Inc. v. Tokuda*
457 F. Supp. 2d 969 (N.D. Cal. 2006) ................................................... 15, 19

*In re Cement Antitrust Litigation*
673 F.2d 1020 (9th Cir. 1982).................................................................. 3, 4

*In re Cinematronics*
916 F.2d 1444 (9th Cir. 1990)...................................................................... 21

*Kotrous v. Goss-Jewett Co. of N. Cal.*
 No. Civ. S021520, 2005 WL 2452606 (E.D. Cal. Oct. 4, 2005) ...........................4

*United States v. Kennebec Log Driving Co.*
530 F.2d 446 (1st Cir. 1976)..........................................................................3

*United States v. Martin*
226 F.3d 1042 (9th Cir. 2000)...................................................................... 22

*United States v. Woodbury*
263 F.2d 784 (9th Cir. 1959)..................................................................... 3, 4

## STATE CASES

*Bancroft Whitney Co. v. Glen*
64 Cal. 2d 327 (1966)..................................................................................9

*City of Hope National Medical Center v. Genentech, Inc*
___ Cal. Rptr. 3d ___, No. S129463, 2008 WL 1820916 (April 24, 2008) .. passim

*Mirpad, LLC v. Cal. Insurance Guarantee Association*
132 Cal. App. 4th 1058 (2005) ................................................................. 15

*Pac. Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*
69 Cal. 2d 33 (1968)................................................................................ 13

*Stevens v. Marco*
147 Cal. App. 2d 357 (1956)........................................................................5

ii

# TABLE OF AUTHORITIES (cont'd.)

*Wolf v. Superior Court*
107 Cal. App. 4th 25 (2003) ................................................................. 6

*Wolf v. Superior Court*
114 Cal. App. 4th 1343 (2004) ........................................................... 13

## FEDERAL STATUTES

28 U.S.C. § 1292(b) ................................................................. passim

Fed. R. App. P. 5 ............................................................................ 3

Fed. R. Civ. P. 59 ........................................................................ 22

Fed. R. Civ. P. 60 ........................................................................ 22

## STATE STATUTES

Cal. Labor Code § 2870 ........................................................ passim

Cal. Labor Code §§ 2871 ................................................................ 17

Cal. Labor Code § 2872 ................................................. 17, 18, 19

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Bryant respectfully moves the Court to certify its April 25, 2008 Summary Judgment Order (the "Order") for interlocutory appeal under 28 U.S.C. § 1292(b), or to reconsider portions of that Order, and to stay further proceedings in this matter pending resolution of that appeal.  This immediate relief is necessary because the Order contains holdings constituting serious reversible error, which will taint all further proceedings in this case until and unless they are corrected. The Order's fundamental errors on issues at the heart of this complex and protracted litigation will infect the entire trial and impose overwhelming, unfair burdens on Bryant.  The Order's erroneous rulings include (but are not limited to) the following:

- failure to apply new California Supreme Court authority governing the existence of fiduciary duty, which rejects the basic premise on which the Court found a fiduciary duty here;

- erroneous interpretation of controlling California law defining breach of duty of loyalty and breach of fiduciary duty, which do not support the Court's analysis finding breach as a matter of law;

- erroneous interpretation of controlling California contract principles governing construction of the Inventions Agreement, including fundamental error as to the nature of ambiguity under California law; and

- potential errors, depending on how one construes the Order, resulting from erroneous interpretation of California Labor Code § 2870.

Requiring Bryant to proceed to trial under these erroneous rulings would be unjust. In addition to the enormous prejudice Bryant will suffer throughout the trial from the effect of the Court's Order, the crushing burden of litigation expenses during that tainted trial may cause him severe harm not curable by any later appeal. Indeed, the same financial burden may effectively deny him any ability to seek review of this erroneous Order.

As set forth below, each of the issues identified above independently justifies immediate interlocutory review of the Order under 28 U.S.C. § 1292(b),

1

and a stay of further proceedings pending that review.  In the alternative, the Court has the inherent power to reconsider and amend its Order to reflect correctly the law and facts presented in this matter.[1]

Because of the serious prejudice the Order will cause Bryant in all pre-trial and trial proceedings going forward, Bryant's separate *ex parte* application regarding this motion requests that the Court consider this motion on an expedited briefing and hearing schedule, with a hearing on May 12.  Jury selection is set to begin on May 20, and the Court will hear argument on numerous important issues on May 19 (and later that week).  Thus, an expedited hearing *before* the week of May 19 is necessary to limit as much as possible the unnecessary waste of the parties' and the Court's resources in further pre-trial preparation tainted by the erroneous Order.[2]

## II.   ARGUMENT

As explained below, the Order's errors on controlling legal issues crucial to this litigation meet the standard for § 1292(b) certification, and an immediate appeal is necessary to avoid the waste and prejudice of an expensive and protracted trial tainted by those fundamental errors.  In particular, certification is needed as to the Order's core errors on California law regarding the nature of fiduciary duties, breach of the duty of loyalty and fiduciary duty, and contract interpretation (including errors flowing from misinterpretation of the nature of ambiguity, and the implications of California Labor Code § 2870).  Because Bryant will suffer severe, immediate and continuing harm from further proceedings tainted by these errors, Bryant also asks the Court to stay all proceedings pending interlocutory

---

[1] The Order's other errors, including its misapplication of the summary judgment standard, will also require correction; although Bryant does not discuss those flaws in detail here, Bryant and MGA's summary judgment briefing sets forth the appropriate standard and establishes numerous material and disputed facts precluding summary judgment in Mattel's favor.  *See* Bryant's Motion for Partial Summary Judgment (Docket No. 2506); Bryant's Opposition (Docket No. 2776); Bryant's Reply (Docket No. 2964).

[2] Although Mattel would not agree to a May 12 hearing, Mattel does not oppose an expedited hearing of the motion during the week of May 19.  *See* Anderson Decl. ¶ 2.

2

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) OR FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES CASE NO. CV 04-09049 SGL (RNBx)

416646.02

1    appeal.  Alternatively, Bryant requests that the Court reconsider and amend the

2    Order to correct its errors.

**A.    Certification under 28 U.S.C. § 1292(b) is appropriate where, as here, interlocutory review is necessary to ensure fair proceedings and efficient use of party and Court resources.**

5        Under 28 U.S.C. § 1292(b), parties are afforded an avenue to seek

6    certification of a decision for interlocutory review by the Ninth Circuit.

7    Certification of partial summary judgment decisions for interlocutory review is an

8    essential remedy that both preserves resources and prevents injustice when, as

9    here, it will permit prompt correction of errors on core legal issues in protracted

10   and expensive litigation.  *See United States v. Kennebec Log Driving Co.*, 530 F.2d

11   446, 448 (1st Cir. 1976) (reviewing grant of partial summary judgment on

12   liability); *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702-703 (5th Cir. 1961)

13   (counseling flexible, pragmatic approach to § 1292(b)).  Certification is

14   appropriate where an order "involves a controlling question of law as to which

15   there is substantial ground for difference of opinion and . . . an immediate appeal

16   from the order may materially advance the ultimate termination of the litigation."

17   28 U.S.C. § 1292(b); *see In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th

18   Cir. 1982).[3]

19       Under Ninth Circuit law, "all that must be shown in order for a question to

20   be 'controlling' is that resolution of the issue on appeal could materially affect the

21   outcome of litigation in the district court."  *In re Cement*, 673 F.3d at 1026.  Thus,

22   the issue "need not be 'dispositive of the lawsuit in order to be regarded as

23   controlling.'"  *Ameripride Servs., Inc. v. Valley Indus. Serv.*, No. CIV S-00-113,

24   2006 WL 2506767 (E.D. Cal. Aug. 29, 2006) (quoting *United States v. Woodbury*,

---

26   [3] Where an order does not initially contain this § 1292(b) certification, Federal Rule of
27   Appellate Procedure 5 permits the Court to amend the order to include the required
     express certification of these elements, either *sua sponte* or on a party's motion.  28
28   U.S.C. § 1292(b) (requiring express written certification of these elements in the written
     order certified for appeal); Fed. R. App. P. 5.

1    263 F.2d 784, 787 (9th Cir. 1959). Further, a determination that a question is

2    "controlling" is particularly appropriate in a "large, complicated" case like this one

3    "involving hundreds of pages of briefs and supporting evidence," where a §

4    1292(b) appeal of the question "would avoid protracted and expensive litigation."

5    *Ameripride*, 2006 WL 2506767 at *3 (citing *In re Cement*, 673 F.2d at 1026).

6        Certification is also appropriate in such large and complicated cases where,

7    as here, resolution by interlocutory appeal of controlling issues before trial will

8    materially advance the ultimate termination of the litigation by ensuring that an

9    expensive and lengthy trial does not proceed under the taint of the issues to be

10   certified. *See Hadjipateras*, 290 F.2d at 702-703 (explaining that § 1292(b)

11   permits interlocutory appeals where "as a practical matter orderly administration is

12   frustrated by the necessity of a waste of precious judicial time while the case

13   grinds through to a final judgment as the sole medium through which to test the

14   correctness of some isolated identifiable point of fact, of law, of substance or

15   procedure, upon which in a realistic way the whole case or defense will turn"); *In*

16   *re Cement*, 673 F.2d at 1026 (explaining that certification proper where allowing

17   interlocutory appeal would "avoid protracted and expensive litigation").

18       Finally, certification under § 1292(b) requires only "substantial grounds for

19   difference of opinion" with the order under review. 28 U.S.C. § 1292(b).

20   "Substantial grounds" supporting interlocutory review exist wherever a legal

21   standard is "not completely clear." *Ameripride*, 2006 WL 2506767 at *3. Each of

22   the issues raised here more than meets this standard because (as demonstrated in

23   the parties' summary judgment briefing) any basis in the precedent for the Court's

24   rulings "is by no means unambiguous"—to the extent any basis exists at all. *See*

25   *Kotrous v. Goss-Jewett Co. of N. Cal.*, No. Civ. S021520, 2005 WL 2452606 (E.D.

26   Cal. Oct. 4, 2005) (granting § 1292(b) appeal). The need for § 1292(b) review is

27   even more compelling where, as here, there are no "substantial grounds" for

28   *agreement* with the court's erroneous rulings. *See Eaton v. Siemens*, No. 2:07-cv-

4

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28
U.S.C. § 1292(B) OR FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV 04-09049 SGL (RNBx)

1    315, 2007 WL 2318538 (E.D. Cal. Aug. 10, 2007).

2    In the sections that follow, Bryant discusses fundamental errors in the Order

3    that support § 1292(b) certification, as well as the nature and scope of the harms

4    that an immediate appeal and stay of proceedings would avoid.

5    **B.    This Court's holding that Bryant had a fiduciary duty to Mattel as a matter of law is reversible error, under the California Supreme Court's new decision in *City of Hope v. Genentech*.**

7    Bryant requests that the Court certify for interlocutory appeal (or reconsider)

8    its ruling that, as a matter of law, Bryant owed a fiduciary duty to Mattel.  This

9    Court's ruling that Bryant owed Mattel a fiduciary duty cannot survive the

10   California Supreme Court's decision in *City of Hope National Medical Center v.*

11   *Genentech, Inc.*, No. S129463, ___ Cal. Rptr. 3d ___, 2008 WL 1820916 (April

12   24, 2008), decided just before this Court's Order issued.  Bryant filed a Notice of

13   Supplemental Authority late in the day that the *City of Hope* decision issued,

14   alerting the Court to the California Supreme Court's decision.  Docket No. 3283.

15   *City of Hope* expressly rejected the precise legal theories and precedent on which

16   Mattel relied here, including specifically *Stevens v. Marco*, 147 Cal. App. 2d 357

17   (1956).  However, it appears that this Court issued its Order without considering

18   this new controlling authority, based on the timing of the Court's decision (shortly

19   after noon the day after *City of Hope* issued) and the Court's failure to discuss *City*

20   *of Hope* or to follow its guidance.  *City of Hope* will compel reversal in this case

21   for at least three reasons.

22   First, *City of Hope* compels reversal of this Court's holding that "Bryant also

23   owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the

24   Inventions Agreement."  Order at 5 (relying on language stating that "the value of

25   [Mattel's] Proprietary Information depends on it remaining confidential.  The

26   company depends on me to maintain that confidentiality, and I accept that position

27   of trust.").  The California Supreme Court confirmed in *City of Hope* that—

28   contrary to *Stevens*—the entrusting of secret or confidential information to another

5

"does ***not*** compel the imposition of fiduciary duties by operation of law," although it may be considered by the trier of fact in deciding whether a fiduciary relationship exists. *City of Hope*, 2008 WL 1820916 at *11 (emphasis added); *see also* Bryant Opposition, at 21-22 (Docket No. 2776). *City of Hope* expressly disapproved the "overbroad language" of *Stevens* suggesting this incorrect rule, on which Mattel's arguments here relied. *City of Hope*, 2008 WL 1820916 at *8. Similarly, *City of Hope* also ***expressly*** rejected imposition of a fiduciary duty based on the fact that a contract reposed "trust and confidence" in the purported fiduciary; because "trust and confidence" are simply an ordinary part of *any* contract, their presence cannot support the loftier burdens of a fiduciary relationship. *Id.* at *9; *Wolf v. Superior Court,* 107 Cal. App. 4th 25, 31 (2003) (reposing trust and confidence in the party to a contract does not create a fiduciary relationship but rather affords redress for breach of contract). Thus, to the extent that the Court based its holding that Bryant owed Mattel a fiduciary duty as a matter of law on the fact that the Inventions Agreement or Mattel entrusted Proprietary Information to Bryant in confidence, Bryant respectfully requests the Court either to certify this ruling for interlocutory review by the Ninth Circuit or to reconsider it.[4]

Second, *City of Hope* confirms that the Court erred in finding that Bryant was a fiduciary by virtue of a "superior position" to Mattel simply "because he was in the best position, arguably the only one in a position, to know or and police his actions." *See* Order at 6. This type of narrow vulnerability "vis-à-vis the duty imposed" (*id.*) is not enough to give rise to a fiduciary duty: *City of Hope*

---

[4] The Court's factual finding of breach is also erroneous because it is logically inconsistent with the nature of the fiduciary duty the Court found. Even if the Court could find Bryant had a narrow fiduciary duty to protect Mattel's confidential information, Bryant could not have breached such a duty merely by entering into a contract with a competitor. Simply entering into a contract does not compromise in any way the confidentiality of Mattel information—but that is the sole fact on which the Court relied in finding a breach of fiduciary duty.

6

416646.02

1  confirmed that mere vulnerability of one party, and the superior position of the

2  other, cannot alone "necessarily warrant recognition of a fiduciary duty." *City of*

3  *Hope*, 2008 WL 1820916 at *9. *City of Hope* explained that "[i]t is not at all

4  unusual for a party to enter into a contract for the very purpose of obtaining the

5  superior knowledge or expertise of the other party," but that "[s]tanding alone, that

6  circumstance would not necessarily create fiduciary obligations." *Id.* Instead,

7  fiduciary obligations exist "when one party's vulnerability is so substantial as to

8  give rise to equitable concerns underlying the protection afforded by the law

9  governing fiduciaries." *Id.* (cites omitted). *City of Hope* makes clear that no

10  fiduciary obligations arise in ordinary contractual relationships merely because one

11  party can articulate some narrow area of vulnerability or dependence on the other:

12  to impose the stringent duties of a fiduciary, the law requires some vulnerability

13  that is deeper and more equitably troubling than just depending on a contract party

14  to fulfill his obligations. *Id.* at *8 (explaining absence of fiduciary duties in

15  numerous situations where one party depends on the other and becomes

16  "vulnerable" by doing so). Mattel plainly had no deep vulnerability of the kind

17  required to support a fiduciary duty under *City of Hope*. To the contrary, as the

18  Court's Order acknowledged (and no evidence disputes), *Mattel* enjoyed a

19  generally superior bargaining position over Bryant. Order at 6.

20      Third, *City of Hope* clarifies that even if Mattel could prove both the

21  elements discussed above (which it cannot), *plus* the others discussed in Bryant's

22  summary judgment briefing, a fiduciary relationship would still not arise as a

23  matter of law. *City of Hope*, 2008 WL 1820916 at 7-8. *City of Hope* rejected the

24  view that a fiduciary obligation arises whenever "(1) one party entrusts its affairs,

25  interest or property to another; (2) there is a grant of broad discretion to another,

26  generally because of a disparity in expertise or knowledge; (3) the two parties

27  have an 'asymmetrical access to information,' meaning one party has little ability

28  to monitor the other and must rely on the truth of the other party's representations;

1   and (4) one party is vulnerable and dependent upon the other." *Id.*; Bryant

2   Opposition at 19-20, 23; Bryant's Motion at 13-17 (Docket No. 2506). These

3   characteristics "are common in many a contractual arrangement" that does not

4   create any fiduciary obligations. *City of Hope*, 2008 WL 1820916 at *8 (providing

5   examples). As Bryant has already explained, Mattel cannot satisfy these four

6   elements; *City of Hope* establishes that even if Mattel could do so, a fiduciary duty

7   would *still* not arise as a matter of law. In addition, *City of Hope* clarifies and

8   confirms that, as Bryant argued, there must be a factual showing from which a jury

9   could find that a party knowingly undertook the obligations of a fiduciary, that is to

10   act primarily for the benefit of the other party. *Id.* at *6; Bryant Opposition at 22-

11   23. The Court has found no such showing, nor would such a finding be proper on

12   this summary judgment record.

13          For all these reasons, Bryant respectfully requests that the Court certify for

14   interlocutory appeal or reconsider its holding that Mattel has made an undisputed

15   factual showing establishing a confidential relationship giving rise to fiduciary

16   duties as a matter of law. This ruling meets all the requirements of § 1292(b),

17   because it "involves a controlling question of law" which the Court has resolved

18   contrary to the controlling authority of *City of Hope* and the other relevant

19   decisions cited in Bryant's Motion and Opposition. As explained in Section II.F

20   below, resolving this error now will materially advance the ultimate termination of

21   the litigation.

22   **C.**   **Entering into a contract with a competitor during employment, to compete in the future, did not breach Bryant's duty of loyalty or (non-existent) fiduciary duty as a matter of law, and hence the Court's ruling to the contrary is reversible error.**

23

24

25          Bryant also respectfully requests that the Court certify for interlocutory

26   appeal (or reconsider) its ruling that Mattel has set forth undisputed facts

27   establishing as a matter of law that Bryant breached his duty of loyalty and his

28   alleged fiduciary duty "by entering into a contract with Mattel's competitor, while

1    still employed by Mattel, to produce a line of fashion dolls to be marketed in direct

2    competition with Mattel's products."  Order at 5; *see also id.* at 6 ("[T]he

3    undisputed facts establish that Bryant breached his fiduciary duty to communicate

4    his inventions to Mattel when, rather than doing so, he secretly entered into a

5    contract with Mattel's competitor, while still employed by Mattel, to produce a line

6    of fashion dolls to be marketed in direct competition with Mattel's products.").

7    The Ninth Circuit should reverse the Court's ruling on this issue for at least the

8    following three reasons,[5] and a correct resolution of this critical issue before trial

9    will materially advance the ultimate termination of this litigation.

10        First, the facts on which the Order relies—that Bryant "secretly entered into

11   a contract with Mattel's competitor, while still employed at Mattel, to produce a

12   line of fashion dolls to be marketed in direct competition with Mattel's

13   products"—are insufficient to establish "direct competition" with Mattel and thus

14   to establish a breach of Bryant's duty of loyalty and alleged fiduciary duty.  A host

15   of authority offers *at the very least* substantial grounds to differ with the Order's

16   interpretation of the preparation to compete doctrine: California law, the

17   Restatement, and out of state authority all recognize that employees are legally

18   permitted to engage in preparations to compete that go far beyond entering into a

19   contract to compete in the future.  *See Bancroft Whitney Co. v. Glen*, 64 Cal. 2d

20   327 (1966); Bryant Opposition at 23-33.

21

22   [5] Bryant contended in his summary judgment briefing (which he incorporates here by
     reference) that a trier of fact, viewing the evidence in the light most favorable to Bryant,
23   could conclude his actions went no further than lawful preparations to compete.  The
     Court's Order includes its rejection of this argument both in its discussion related to
24   breach of the duty of loyalty and alleged fiduciary duty, and (more explicitly) in its
     section entitled "Inventions Agreement."  *See* Order at 5-6.  The "Inventions Agreement"
25   section addresses the Court's interpretation of the term "inventions."  The Court's
     reference to the preparation to compete doctrine within the discussion of Court's
26   interpretation of the term "inventions"  refers to Bryant's argument that the Court, as a
     matter of contract interpretation, cannot interpret the Inventions Agreement to bar
27   conduct that is lawful under the preparation to compete doctrine.  To the extent the
     Court's rejection of this contract interpretation argument is dependent on its erroneous
28   legal and factual findings that Bryant went beyond lawful preparations to compete, this
     portion of the Order also should be certified or reconsidered.

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28
U.S.C. § 1292(B) OR FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV 04-09049 SGL (RNBx)

416646.02

1    Given that legal context, the Order's sole cited fact cannot prove any breach.

2    The Court's acknowledgement that the fashion dolls were only "to be marketed" in

3    the future confirms that Mattel has shown no direct competition while Bryant was

4    still employed—such as sales of a competing product, bidding for the same

5    contracts, or use of an employer's trademark.  Order at 5; Bryant Opposition at 27-

6    28.  In addition, entering into a contract with MGA is no different than (in fact far

7    less than) the extensive efforts to establish a competing business that have been

8    found to constitute lawful preparations to compete.  Bryant Opposition, pp. 25-27.

9    Further, the undisputed fact that the dolls were in fact *not* marketed until months

10   after Bryant left Mattel's employ also shows that Mattel suffered no harm from

11   Bryant's entering into a contract to develop a competing line of dolls *while* Bryant

12   was still employed—again a prerequisite to establishing direct competition and

13   thus a breach of Bryant's duties to Mattel.  Bryant Opposition at 26-28 & n. 24.

14        Second, the Court's reliance on the alleged "secrecy" of Bryant's agreement

15   with MGA to support its finding of breach is both factually and legally incorrect.

16   Bryant set forth facts showing that, on the very day he signed his agreement with

17   MGA, *he gave notice to Mattel and advised Mattel that he was leaving to seek to*

18   *develop his own line of dolls*—facts that the Court must view in the light most

19   favorable to Bryant.[6]  Regardless of these disputed facts, however, an employee

20   such as Bryant is *not* legally required to disclose his preparations to compete,

21   because to require disclosure would render meaningless an at-will employee's

22   unquestionable right to seek new employment and to prepare to compete with his

23   employer.  Bryant Opposition at 28-30.

24        Third, the Court erred by finding a breach without considering (or rather,

25

26   [6] Bryant will not repeat them here, but incorporates by reference, his summary judgment
     briefing and supporting submissions that set forth (1) the proper summary judgment
27   standard, as it applies to Mattel's affirmative motion on its claims, and (2) the material
     disputes of fact on Bryant's alleged breaches of duty and all other issues presented on
28   summary judgment.

416646.02

permitting the *jury* to consider) all of the disputed factual circumstances surrounding Bryant's signing of the contract with MGA. A reasonable trier of fact could conclude from those disputed facts that Bryant's actions were merely lawful preparations to compete. *See* Order at 5. As set forth in Bryant's Opposition, the question of breach is highly fact-specific, in part because it turns on questions of intent. Bryant Opposition at 23-24. Thus, to determine whether Bryant's actions were in breach or were lawful preparations to compete, the Court must consider *all* the facts and surrounding circumstances Bryant has offered in the light most favorable to Bryant.[7]  *Id.*

For example, the Court must accept that the scope of Bryant's alleged duties was relatively narrow (much narrower than the duties of an officer, or than Mattel claims). His job was that of an ordinary employee, with no managerial or supervisory authority; that he was employed to design fashions for the collectible Barbie line; and that he was not employed to design dolls generally. Bryant Opposition at 25 & n. 23. In addition, as noted above, the Court must accept Bryant's evidence that the day he signed the contract with MGA, he gave notice to Mattel and informed both colleagues and managers that he was leaving to work on his own doll line. Bryant Opposition at 28-30. As set forth in Bryant's Opposition, Bryant's notice to Mattel more than complies with California law, which does not require an employee—particularly an at-will employee—to disclose his preparations to compete. *Id.* The Court also must consider Bryant's evidence that Bryant acted simply with the intention of obtaining a new job, *i.e.*, independently pursuing his own idea for a line of fashion dolls, as he told Mattel

---

[7] In deciding Mattel's motion for summary judgment, the Court should have applied this standard in Bryant and MGA's favor. On this issue, as on many others, the Court has failed to do so, instead accepting Mattel's views of disputed facts and ignoring material factual disputes. Indeed, the Court has declined to address objections to evidence, apparently and summarily sustaining all Mattel's objections while denying all Bryant's. Order at 1-2. Bryant will not reiterate here all of the disputed facts and issues precluding summary judgment in Mattel's favor, which already appear in his (and MGA's) summary judgment briefing and supporting papers.

11
NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28
U.S.C. § 1292(B) OR FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV 04-09049 SGL (RNBx)

416646.02

1    he would be doing.  *Id.* at 4-5, 24-25.

2         For the reasons set forth above (as well as those set forth in Bryant's

3    summary judgment briefing), Bryant respectfully contends that the Court should

4    certify its Order under § 1292(b) because the Court's rulings relating to breach of

5    the duty of loyalty and alleged fiduciary duty present issues that "involve[]. . .

6    controlling question[s] of law as to which there is substantial ground for difference

7    of opinion" under the relevant California and other authority cited in Bryant's

8    Opposition.  A trial in which the Court *incorrectly* instructs the jury that Bryant

9    breached legal duties to Mattel as a matter of law would severely and unfairly

10   prejudice Bryant by inviting a decision against him on breach as well as all other

11   issues presented at trial.  To avoid that severe prejudice, a correct resolution of this

12   issue now is essential to serve the interests of justice in this case.  (In the

13   alternative, Bryant requests that the Court reconsider its Order and deny Mattel's

14   motion for partial summary judgment on the issues of breach.)

15   **D.    Reversible error also results from the Order's disregard of *City of***
16   ***Hope*'s controlling instructions as to what contract interpretation**
     **questions the Court must submit to a jury.**

17        The Court has committed independent, reversible error on controlling legal

18   issues by finding for Mattel as a matter of law on "the issue of applicability of the

19   Inventions Agreement to any Bratz-related 'inventions' (including any designs,

20   improvements, ideas, concepts, and copyrightable subject matter) that he is found

21   to have created during the period of his employment with Mattel."  Order at 5.  No

22   substantial grounds exist under California law for the approach the Court has taken

23   to contract interpretation, providing another source of reversible error that will

24   taint any further proceedings guided by the Order.

25        First, the ruling fails to apply well-established principles of California

26   contract law that the California Supreme Court has just re-confirmed and clarified

27   in *City of Hope*.  Those principles establish beyond question that, where disputed

28   factual evidence potentially supports more than one reading of a contract term,

12

416646.02

1    contract interpretation is properly an issue for the jury. *City of Hope*, 2008 WL

2    1820916 at *13 ("Interpretation of a written instrument becomes solely a judicial

3    function only when it is based on the words of the instrument alone, when there is

4    no conflict in the extrinsic evidence, or a determination was made based on

5    incompetent evidence."). Although other states may apply different rules, a court

6    applying California law must *first* consider all extrinsic evidence offered to show

7    an ambiguity, before determining whether or not a contract term is ambiguous. *See*

8    Bryant's Motion for Partial Summary Judgment ("Bryant's Motion") at 18.[8] This

9    rule applies even if a contract on its face appears to be unambiguous. *Id.*; *Pac. Gas*

10   *& Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37, 39-40

11   (1968) (explaining this rule); *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351

12   & 1356 (2004). Where extrinsic evidence presents disputed factual questions,

13   particularly questions of credibility, the fact-finder—the jury—must evaluate those

14   disputes. *See City of Hope*, 2008 WL 1820916 at *13.

15            Here, the Court disregarded all of Bryant's substantial extrinsic evidence

16   demonstrating that the term "inventions" (even if *also* on its face susceptible to

17   constructions other than Bryant's) was at a minimum ambiguous as used in the

18   Inventions Agreements at Mattel. Instead, the Court apparently found (contrary to

19   established law) that extrinsic evidence cannot render ambiguous a term that the

20   Court finds to be clear looking at the contract alone. Moreover, the Court found

21   (again contrary to canons of contract interpretation) that a contract invoking

22   quintessential terms of art from patent law (including the phrase "conceived and

23   reduced to practice," which is a requisite modifier for any "invention" under the

24   Inventions Agreement) is not even *reasonably susceptible* to any technologically-

25   oriented meaning. *See* Order at 4-5. At the same time, however, the Order itself

26

27   [8] Again, Bryant refers the Court to his complete summary judgment briefing on these
     contract issues for a more detailed discussion of California contract principles and how
28   they apply here.

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28
U.S.C. § 1292(B) OR FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV 04-09049 SGL (RNBx)

416646.02

1    reveals that the Court did not find the agreement's use of the term "inventions"

2    truly unambiguous on its face:  the Order relies on the extrinsic fact that "Bryant

3    was a fashion designer."[9]  Order at 4.

4         Second, the Order erred because it entirely failed to address Bryant's actual

5    proposed meaning and ambiguities in the term "inventions" and related contract

6    provisions, and instead rejected a far more restricted meaning that Bryant never

7    asserted.  The Order asserts that Bryant contended that the agreement was

8    ambiguous on "the issue of whether it covered anything other than 'inventions' as

9    that term is used in patent law."  Order at 4.  But Bryant's arguments were not so

10   limited.  *See* Bryant Opposition at 21:20.  In fact, Bryant argued that "inventions"

11   is ambiguous because it is reasonably susceptible to more than one interpretation,

12   and not all of the possible reasonable interpretations would encompass an idea or a

13   sketch of a doll character.  No part of the Court's analysis addresses the

14   reasonableness of finding this more subtle ambiguity, which Mattel has never

15   attempted to dispute.[10]

16        And in fact, Bryant did not argue that the term "inventions" was limited

17   purely to patentable "inventions" (as Mattel has misled the Court to believe).

18   Rather, he argued that the technical terms in the agreement—which are drawn from

19   patent law (*not* terms of art from copyright law or other distinct areas of

20   intellectual property)—are at the very least reasonably susceptible to a definition of

21   inventions limited to *technological* innovations.  The agreement's limited

22   references to "copyright" are also consistent with this technological view, because

---

[9] Had the Court in fact considered *all* of the extrinsic evidence, as it was required to do to evaluate ambiguity, summary judgment for Mattel would be impossible: weighing and evaluating that evidence would require the Court to confront hotly-contested questions of credibility and intent, which only the jury can decide.  *See* Bryant Motion at 21-28.

[10] In fact, Mattel admitted at oral argument that even the more patent-oriented definition the Court proposed had at least a reasonable sound to it.  Anderson Decl. Ex. 2 at 41:17.  Mattel also failed to contest Bryant's statement during oral argument that Mattel had conceded that the contract was at least reasonably susceptible to the definitions provided in Bryant's briefing—which is all the law requires for a finding of ambiguity.  *See id.* at 199:14-20.

14

416646.02

1   certain intricacies and limitations of patent law mean that *even* technological

2   innovations are in some cases subject to copyright protection instead of patent

3   protection. *See Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 989-90 (N.D. Cal.

4   2006) (discussing source code for a website—a type of technological innovation

5   subject to copyright protection, not patent protection).

6          Bryant's definition does not contradict any of the plain terms of the

7   agreement, but rather respects the drafter's deliberate choice to use highly

8   technical terms of patent law (with limited reference to copyright, only to the

9   extent necessary in certain cases to capture *all* types of technological advances).

10  Moreover, even if any one of the technical terms used *could* also have a non-

11  technical meaning in another context, the Court must consider all of the terms

12  together – taking into account Mattel's consistent and pervasive choice of terms

13  used as technical terms of art in patent law, throughout the contract – to determine

14  whether those terms, as actually used in the contract, are reasonably susceptible to

15  their technical meanings. *See Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132 Cal.

16  App. 4th 1058, 1069 (2005); Bryant's Motion at 22-25; Bryant Reply at 10-11.

17         Bryant's technological definition of inventions is reasonable, because even

18  though Bryant was a fashion designer not likely to create such inventions, Mattel

19  forced *thousands* of its employees to sign the same agreement (without any

20  apparent regard to whether the employee might actually have any "inventions" to

21  assign, since low-level seamstresses also signed the same agreement). *See* Bryant

22  Motion at 25-27; Bryant Reply at 12-15 (Docket No. 2964). Also, Mattel does

23  develop dolls and toys with technological aspects (such as the original, electronic

24  talking Diva Starz dolls), so protection for that type of work would be far from

25  meaningless to the company. *Id.* at 14.

26         In addition, and without any explanation or basis in the record, the Court

27  construed the term "inventions" to include "ideas." Order at 5. However, even

28  setting aside all other disputes about ambiguity, at a minimum it is clear that the

15

416646.02

term "inventions" does *not* unambiguously include "ideas." At oral argument on summary judgment, the Court itself noted that it was not only "a little much," but "breathtaking" to think that an employer would claim all of an employee's ideas. Anderson Decl. Ex. 2 at 31:12, 33:4. However, that is exactly what the Court's sweepingly broad reading of "inventions" permits Mattel to do here. And even if that sweeping definition could in some situations be a permissible definition of "inventions" (if, as other Mattel contracts did, a contract expressly defined "inventions" to include "ideas"), it is certainly *not* the only possible meaning for the term. Because the term "inventions" is at least reasonably susceptible to other, narrower meanings, it must be given that narrower effect when used in an adhesive form contract like the agreement at issue here.

Finally, because of the Order's erroneous approach to the question of ambiguity, the Order incorrectly applied California's other contract interpretation principles, resulting in a ruling that will inevitable taint the trial in this matter with reversible error. For example, the Court failed to consider important extrinsic evidence (including, but not limited to subsequent contract changes, and the broader language used in Mattel's Checkout form). The Court also failed to apply California's strong *contra preferentem* rule for adhesion contracts like this one which flatly requires construction of the ambiguities against Mattel. The Court failed to address the fact that Section 204(a) of the Copyright Act precludes its finding that the Inventions Agreement effected a transfer of copyrights. The Court also failed properly to consider the significance of California Labor Code § 2870, with its purpose and history reflecting a technologically-oriented definition of inventions. The Court similarly failed to properly reserve for the jury resolution of disputed extrinsic evidence supporting competing interpretations. All of these errors (and more) flowing from the Court's initial mistaken approach to ambiguity will provide additional, independent grounds for reversal on appeal, for all the reasons Bryant has already explained in his summary judgment briefing.

1    Any one of these fundamental, controlling errors—let alone all of them

2    together—is reversible on appeal.  An immediate corrected ruling on these

3    controlling issues of law would materially advance the termination of this litigation

4    because it would confirm the scope of the claims and issues that should properly be

5    presented to the jury. *See infra* Section II.F.

6    **E.     The Court's holding with respect to California Labor Code § 2870 also may create reversible error.**

7

8    In addition, the Court's precise holding regarding application of California

9    Labor Code § 2870 to the Inventions agreement appears unclear.  However, to the

10   extent that the Court intended to hold that a contract which incorporates § 2870

11   *automatically* assigns all inventions to the full extent permitted by that law,

12   regardless of the contract's specific language, that holding is also independent,

13   reversible error tainting the Court's contract interpretation.

14   Any such holding would rely on a mistaken understanding of California

15   Labor Code § 2870.  Section 2870 and its companion provisions protect

16   independent employee inventions that meet certain criteria from forced assignment

17   to employers, by invalidating invention assignment agreements that claim those

18   protected inventions.  Cal. Labor Code §§ 2870-2872.  If the Court intended to find

19   that, because Mattel's Inventions Agreement *incorporates* § 2870, it automatically

20   claimed for Mattel all inventions not within the statute's protection, that expansive

21   interpretation of § 2870 is reversible error because it ignores the statutory context,

22   purpose, and function of the provision. [11]  Order at 4-5.  That interpretation (if it is

23

---

[11] Even under this erroneous interpretation of § 2870, however, Bryant notes that important questions of interpretation remain as to related matters—not raised on summary judgment—including what it means for an invention to be "conceived" or "reduced to practice," as those terms are used in both the Inventions Agreement and § 2870.  *See* Cal. Labor Code § 2870(a)(1) (permitting assignments of inventions that "[r]elate at the time of *conception or reduction to practice* of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer" (emphasis added)).  In other words, even if one erroneously were to adopt Mattel's interpretation, the Court still must consider important questions concerning precisely what types of "inventions" the contract assigns to Mattel.

what the Court intended) would prevent the Court from properly considering the scope of the actual, ambiguous language in Mattel's Inventions Agreement defining the scope of assignment of "inventions," under California's principles of contract interpretation. *See id.* at 5. The Ninth Circuit would almost certainly find reversible error in such a sweeping view of § 2870, for at least the following reasons.

First, Labor Code § 2872 requires any contract that claims any employee inventions to inform employees that the contract does not apply to inventions protected under Labor Code § 2870. *See* Labor Code § 2872 ("If an employment agreement entered into after January 1, 1980, contains a provision requiring the employee to assign or offer to assign any[12] of his or her rights in any invention to his or her employer, the employer must also, at the time the agreement is made provide a written notification to the employee that the agreement does not apply to an invention which qualifies fully under the provisions of Section 2870."). The fact that an inventions agreement follows this rule by referencing § 2870 only shows compliance with § 2872, not the intended scope of the assignment provision.

Second, the history and purpose of § 2870 conflict fundamentally with any finding that § 2870 is a pro-*employer* provision under which all California workplace invention agreements incorporating § 2870 (regardless of their actual language) automatically claim all employee inventions to the full extent permissible under the law. No court has seriously considered this issue: the few cases that have applied the statute so broadly have done so only based on contract language that clearly and *expressly* indicated that the employer in those cases in fact claimed all inventions to the full extent permissible by law. *See Iconix v.*

---

[12] Note that the statute refers to "any" rights—not "all" rights. Thus, the statute itself contemplates the possibility of an agreement assigning *less* than all rights falling outside of § 2870's protection, a result not permitted under the Court's interpretation.

*Tokuda*, 457 F. Supp. 2d 969, 988 (N.D. Cal. 2006); Bryant Opposition at 11.  A single, unpublished Northern District decision has unreasonably extended this result to a contract without this type of expressly expansive language—but offered no discussion or analysis supporting that decision.  *Cadence Design Sys., Inc. v. Bhandari*, No. C 07-008223, 2007 WL 3343085 (N.D. Cal. Nov. 8, 2007).  *Cadence* is the only case even Mattel can offer to support that unreasonably broad approach.  *See* Order at 4-5.  Here, Mattel's contract with Bryant contains *no express language* claiming inventions for Mattel to the full extent permitted by law (in particular, to the extent not protected by § 2870).  No court has expressly considered whether the broad *Iconix* result (which, like similar decisions, depended on the actual, specific language of the contract at issue in that case) should apply as a general rule to any contract incorporating § 2870.  In fact, a careful look at this issue—including related statutory requirements and the history of § 2870—reveals that it should not.  *See* Bryant Opposition at 8-13.

Finally, adopting such a rule would entirely eliminate employers' ability to draft more nuanced, generous contracts (by claiming *less* than the legal maximum scope of employee inventions): all employers claiming employee inventions are required to reference and explain § 2870 when doing so, and under the erroneous *Cadence* approach such a reference automatically—without regard to the actual language used—claims all employee inventions to the full extent the law permits.  However, the code refers to and governs assignments of "any" rights—not "all" rights.  *See* Labor Code § 2872.  Thus, the statute itself contemplates the possibility of an agreement assigning *less* than all rights falling outside of § 2870's protection, a result not permitted under the *Cadence* interpretation.

To the extent that the Court intended to adopt this erroneous interpretation of the Inventions Agreement premised on misapplication of Labor Code § 2870, that interpretation presents strong and compelling grounds for interlocutory review on this critical issue.

1    And, as with the Order's other contract interpretation errors, such a

2    fundamental error would taint the entire trial and unfairly prejudice Bryant.  An

3    immediate corrected ruling on these controlling issues of law would materially

4    advance the termination of this litigation because it would confirm the scope of the

5    claims and issues that should properly be presented to the jury.

6    **F.    Resolving the Order's errors now will serve the interests of justice and**
       **materially advance the termination of this litigation, because any trial**
7      **tainted by those errors will waste tremendous amounts of judicial and**
       **party resources and irreparably prejudice Bryant.**
8

9    Any one of the Order's many errors would support certification of the Order

10   under § 1292(b),[13] because the taint of those errors on core issues will infect the

11   entire trial.  Bryant asks that the Court certify the Order now to prevent the gross

12   waste of judicial and party resources and the severe prejudice to Bryant that

13   proceeding with such a tainted trial would cause.

14   Specifically, a trial premised on the Order would address issues surrounding

15   the history and timing of Bryant's Bratz idea and the beginning of his work with

16   MGA.  Because of the Order, though, that trial would not fully address important

17   factual issues such as those related to contract interpretation or the true nature of

18   Bryant's role and duties at Mattel.  Even Phase 1 of this erroneously streamlined

19   trial may still last up to two months.  Phase 2 of the trial, for which no dates are

20   set, may well be longer.  All told, the trial may require presentation of many

21   dozens of witnesses and thousands of documents—and months of work by dozens

22   of costly attorneys.

23   Without an interlocutory appeal now, all of that effort will be tainted by the

24   Order's errors, severely prejudicing Bryant.  The Ninth Circuit would almost

25   certainly reverse any judgment against Bryant resulting from a tainted trial

26

27   [13] In addition, because the remaining summary-judgment issues to be resolved also
     present similarly important controlling questions of law, appropriate for interlocutory
28   review, Bryant also requests that the Court include the elements of § 1292(b) certification
     in any further summary-judgment orders it may issue.

20

416646.02

1  premised on the Order, requiring a second trial of all the same issues now to be

2  tried, plus all of the omitted related matters discussed above (and other issues

3  removed from trial by the Court's erroneous Order).  However, the enormous

4  financial burden of the tainted trial would severely tax Bryant's resources and

5  leave him potentially unable to vindicate his rights in a second trial on remand, or

6  even on appeal.  This harm would be especially severe for Bryant who, as a lone

7  individual, lacks the corporate resources necessary to engage in this sort of

8  protracted corporate warfare.  Allowing a prompt resolution of the controlling

9  issues presented here,[14] instead of proceeding with this deeply flawed, unnecessary

10 and extremely burdensome trial, will thus materially advance the ultimate

11 termination of the litigation and serve the interests of justice.

12 **G.    Bryant further requests that the Court stay all proceedings in this matter during appeal.**

13

14       To protect Bryant from the irreparable prejudice of proceeding to trial under

15 the Court's erroneous rulings, Bryant respectfully requests that the Court stay

16 further proceedings in this matter until this interlocutory appeal can be heard and

17 resolved by the Ninth Circuit.  Granting this stay is proper under 28 U.S.C. §

18 1292(b).  The statute does not make a stay during appeal automatic, but expressly

19 authorizes the district to order such a stay.  28 U.S.C. § 1292(b).

20       Here, as explained above, an immediate appeal will eliminate the need for a

21 lengthy, complex trial that will heavily burden the parties, the witnesses, and the

22 Court—and that will invite only reversal on appeal after such a costly trial.  An

23 immediate appeal will also protect Bryant from the crushing financial and personal

24

25 _____

26 [14] In an interlocutory appeal, the Ninth Circuit could also choose to review other issues raised on summary judgment but not specifically discussed here or certified under § 1292(b).  Ninth Circuit precedent makes clear that "the appeals [§ 1292(b)] authorizes are from orders not questions."  *In re Cinematronics*, 916 F.2d 1444, 1449 (9th Cir. 1990).

27 Accordingly, a reviewing court may properly consider all "issues *material* to the order from which appeal has been taken," not solely the questions certified.  *Id.* (emphasis

28 original).

416646.02

1   burden of proceedings tainted by these errors, which would also endanger his

2   ability to gain any true relief even on appeal.  As a mere individual who is grossly

3   out-gunned in this scorched-earth corporate war, Bryant urgently needs the

4   protection of an interlocutory appeal if he is to receive anything like justice in this

5   case.  An interlocutory appeal can secure that justice only if the Court issues a stay

6   of further proceedings in the meantime.

7   **H.  Alternatively, this Court itself should reconsider its rulings, in the exercise of its inherent power.**

8

9   In the alternative, Bryant respectfully requests that the Court reconsider its

10  erroneous rulings and amend the Order, in the exercise of its inherent power and

11  pursuant to Local Rule 7-18 governing motions for reconsideration.  *See United*

12  *States v. Martin*, 226 F.3d 1042, 1048 & n.8 (9th Cir. 2000) (holding motions to

13  reconsider non-final orders proper under inherent power and local rules, though not

14  subject to Fed. R. Civ. P. 59 or 60).  Local Rule 7-18 authorizes motions for

15  reconsideration based on either "the emergence of new material facts or a change

16  of law occurring after [a] decision" or "a manifest showing of a failure to consider

17  material facts presented to the Court before [the] decision."  L.R. 7-18(b)-(c).  The

18  same rule prohibits parties from repeating arguments made in connection with the

19  original motion at issue.  L.R. 7-18.

20  The same issues that justify § 1292(b) certification here, set forth above, also

21  support reconsideration by this Court.  In particular, reconsideration is warranted

22  based on (1) the Court's "manifest . . . failure" to consider numerous material and

23  disputed facts that Bryant and the MGA Parties presented to the Court, and (2) the

24  new California Supreme Court authority discussed above, which appeared after all

25  briefing and argument was completed and materially clarifies important issues, but

26  which the Court's rulings failed to consider.  *See* Local Rule 17-18.  The Order

27  also contains numerous other errors for which Bryant has not sought § 1292(b)

28  certification, but which the Court may wish to reconsider.  Likewise, Bryant's

22

416646.02

1 additional arguments on related issues in his (and MGA's) extensive summary-

2 judgment briefing also support reconsideration of all of the Order's rulings against

3 Bryant, because the Court has disregarded Bryant's showings of material disputed

4 facts, instead adopting Mattel's disputed versions of those facts.  In keeping with

5 Local Rule 7-18, Bryant does not repeat their previous arguments regarding those

6 disputed facts here.  However, those arguments and the § 1292(b) matters stated

7 above demonstrate that the Court should reconsider its Order for many reasons

8 falling with the scope of Local Rule 7-18.

9 ## III.   CONCLUSION

10     For all the foregoing reasons, Bryant respectfully requests that the Court set

11 an expedited briefing schedule for this motion, with a hearing date of May 12, and

12 either (1) certify the Order for interlocutory appeal under 28 U.S.C. § 12929(b),

13 based on the errors described above and the Order's other errors, and stay

14 proceedings in this Court during that appeal, or (2) reconsider and amend the

15 erroneous portions of the Order in the exercise of the Court's inherent power to

16 modify its non-final orders.

17                                     Respectfully submitted,

18 Dated:  May 2, 2008                 KEKER & VAN NEST, LLP

19

20

21                          By:   /s/ Christa M. Anderson
                                 CHRISTA M. ANDERSON
22                               Attorney for Plaintiff
                                 CARTER BRYANT
23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28
U.S.C. § 1292(B) OR FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV 04-09049 SGL (RNBx)

416646.02