# EXHIBIT 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

CARTER BRYANT, ET. AL.,   )
                          )
              PLAINTIFFS, )
                          )
     VS.                  )   NO. ED CV 04-09049
                          )   (LEAD LOW NUMBER)
MATTEL, INC., ET. AL.,    )
                          )
              DEFENDANTS. )   MOTIONS FOR PARTIAL
                          )   SUMMARY JUDGEMENT
AND CONSOLIDATED ACTIONS, )
                          )

**CERTIFIED COPY**

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

TUESDAY, APRIL 22, 2008

10:07 A.M.

**VOLUME I**
**PAGES 1-213**

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
951-274-0844
WWW.THERESALANZA.COM

```
 1  APPEARANCES:

 2  ON BEHALF OF CARTER BRYANT:

 3                          KEKER & VAN NEST
                            BY:  CHRISTA M. ANDERSON
 4                          BY:  MATTHEW M. WERDEGAR
                            710 SANSOME STREET
 5                          SAN FRANCISCO, CALIFORNIA  94111-1704
                            415-391-5400
 6

 7  ON BEHALF OF MATTEL:

 8                          QUINN EMANUEL
                            BY:  JOHN B. QUINN
 9                          BY:  B. DYLAN PROCTOR
                            BY:  MICHAEL T. ZELLER
10                          865 S. FIGUEROA STREET,
                            10TH FLOOR
11                          LOS ANGELES, CALIFORNIA  90017
                            213-624-7707
12

13  ON BEHALF OF MGA ENTERTAINMENT:

14                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                            BY:  THOMAS J. NOLAN
15                          BY:  CARL ALAN ROTH
                            BY:  JASON RUSSELL
16                          300 SOUTH GRAND AVENUE
                            LOS ANGELES, CALIFORNIA  90071-3144
17                          213-687-5000

18
    ALSO PRESENT:           AMBASSADOR ROBERT-PIERRE PROSPER,
19                          DAVID BRISTOW, ESQ.

20

21

22

23

24

25
```

1   THEY JUST SIMPLY PUT IT THERE AND ALERT THE MATTEL EMPLOYEE
2   SITTING IN THE ROOM, WHERE ONE OF THEIR EXPERTS, MR. STEIN, HAS
3   DESCRIBED IT AS THE FIRST DAY, IT'S AN ASSAULT ON YOUR SENSES.
4   THERE'S SO MUCH STUFF.  YOU'VE GOT TO FIGURE OUT WHETHER OR NOT
5   YOU'RE GOING TO TAKE DENTAL; AND THEN, ARE YOU GOING TO BE PART
6   OF THE HMO PROGRAM; ARE YOU GOING TO TAKE MEDICAL; WHAT'S YOUR
7   401(K) BENEFITS?  AND THEY HAVE THIS AGREEMENT IN THERE THAT'S,
8   IN TURN, A CONFIDENTIAL AGREEMENT.  AND YOU'RE SITTING THERE
9   TRYING TO THINK, 'ALL RIGHT, WHAT' -- 'I'M COMING HERE; I'M
10  GOING TO BE A DESIGNER; I'VE GOT THAT; I UNDERSTAND THAT.'  I
11  LOOK AT THE CONTRACT.
12           AND YOU AND I BOTH CAN AGREE THAT THOSE TERMS SEEM
13  EMINENTLY REASONABLE AND EMINENTLY CLEAR, EXCEPT AS I'M SITTING
14  THERE AND I'M CARTER BRYANT, AND MY WHOLE LIFE, SINCE I'VE BEEN
15  EIGHT YEARS OLD, I'VE BEEN INTERESTED IN FASHION, NOT
16  BASKETBALL, NOT FOOTBALL, NOTHING LIKE THAT, BUT IDEAS, OF A
17  DREAM.
18           NOWHERE DOES MATTEL SAY THAT BY AFFIXING YOUR
19  SIGNATURE TO THIS CONTRACT, YOU'RE GOING TO CONTRACT AWAY --
20  OH, INVENTIONS AND ALL THAT, I KIND OF GET THAT, BUT NO ONE
21  TELLS CARTER BRYANT THAT IT'S GOING TO BE HIS IDEAS AND HIS
22  DREAMS.
23           **THE COURT:**  LET ME STOP YOU THERE, BECAUSE YOU RAISE
24  AN INTERESTING POINT.  BUT, WOW, IF I WAS THE CARTER BRYANT YOU
25  JUST DESCRIBED AND SOMEONE WAS TELLING ME TO SIGN A CONTRACT

1  SAYING THAT THEY HAVE RIGHTS NOW TO MY IDEAS, MY THOUGHTS -- I
2  DON'T THINK THAT'S WHAT ANYONE IS CLAIMING OR ANYONE WOULD
3  CLAIM.  IT'S NOT THE IDEA IN THE HEAD; IT'S WHEN YOU TAKE THAT
4  IDEA AND YOU MAKE SOMETHING OF IT.  THAT'S WHAT HE'S BEING
5  HIRED BY MATTEL TO DO, AND THAT'S WHAT ONE READING OF THIS
6  AGREEMENT WOULD BE, IS THAT MATTEL IS SAYING, 'WHEN YOU TAKE
7  THAT FROM AN IDEA AND MAKE SOMETHING OUT OF IT, THEN IT BECOMES
8  A DISCOVERY, AN IMPROVEMENT, A PROCESS, A DEVELOPMENT, A
9  DESIGN, ET CETERA, ET CETERA.  THAT'S WHEN IT BECOMES OURS.'
10          I DON'T THINK ANYONE WOULD WANT TO TURN TO AN ARTIST
11 OF ANY TYPE AND SAY, 'WE NOW OWN YOUR IDEAS.'  THAT SEEMS TO BE
12 A LITTLE MUCH.
13          **MR. NOLAN:**  DOESN'T IT?  IT DOES.  I AGREE.
14          CAN I HAVE THE CHART UP, THOUGH, ON THE CONTRACTS
15 HERE.
16          WHAT'S INTERESTING ABOUT IT IS -- I WANT YOU TO TAKE
17 A LOOK AT THREE FORM CONTRACTS USED BY MATTEL AT THREE
18 DIFFERENT STAGES.  THE FIRST CONTRACT THAT I'M GOING TO SHOW
19 YOU IS FROM THE EARLY 1990'S.  THE SECOND ONE WE'RE GOING TO
20 SHOW YOU, IN THE MIDDLE, IS THE ACTUAL ONE THAT CARTER SIGNED.
21 AND THEN THE THIRD ONE IS THE 2004 CONTRACT, WHICH IS THE
22 CONTRACT VERSION THAT MS. ANDERSON HAD UP AFTERWARDS.
23          THE FIRST ONE, YOUR HONOR, HAS MATTEL SAYING -- AND
24 WE HAVE TAKEN THESE OUT; THESE ARE ALL PART OF THE RECORD --
25 'MY INTEREST IN' -- AND THIS IS, OF COURSE, THE INVENTIONS

1  AGREEMENT AND WHAT YOU'RE SIGNING IS PART OF THE EMPLOYMENT
2  AGREEMENT.  WHAT I'VE TRIED TO DO IS REPLICATE THE THREE OUT
3  WITH PARAGRAPHS.  'MY INTEREST IN ANY AND ALL INVENTIONS,
4  IMPROVEMENTS, AND IDEAS,' WHETHER OR NOT PATENTABLE.
5          SO NOW LET'S GO TO CARTER BRYANT'S CONTRACT THAT HE
6  SIGNS.  AGAIN, THAT'S THE MIDDLE ONE, YOUR HONOR.  AND I KNOW
7  THE PRINT IS SMALL.  BUT NOW THEY'VE DROPPED OUT THE WORD
8  "IDEAS" FROM CARTER BRYANT.
9          NOW GO BACK TO THE NEXT VERSION OF THIS CONTRACT, IN
10  MARCH OF 2004.  LET ME SET THE STAGE.  IN MARCH OF 2004,
11  MATT BOUSQUETTE, A GENTLEMAN WHO WE'VE YET BEEN ABLE TO DEPOSE,
12  DESPITE ALL OF THE MOTIONS AND ALL OF THE EFFORTS TO DO SO --
13  MATT BOUSQUETTE SUMMONS ALMOST ALL OF THE EMPLOYEES INTO A
14  LARGE CONFERENCE ROOM AT MATTEL'S HEADQUARTERS, AND HE ASKS ALL
15  OF THE EMPLOYEES, INCLUDING THOSE THAT ARE STILL THERE FROM
16  CARTER BRYANT'S ERA, AND SAYS, 'WE HAVE A NEW AGREEMENT; WE
17  WANT YOU TO SIGN IT; AND HERE IT IS.'
18          AND IT'S ALMOST LIKE A HIGH SCHOOL ASSEMBLY IN A
19  SENSE.  AND THEY ALL SIGN IT.
20          NOW LOOK WHAT'S IN THIS VERSION:  "I WILL PROMPTLY
21  DISCLOSE IN CONFIDENCE TO MATTEL ALL INVENTIONS, DISCOVERIES,
22  IMPROVEMENTS, DEVELOPMENTS, DESIGN WORKS, ORIGINAL WORKS OF
23  AUTHORSHIP, IDEAS."
24          **THE COURT:**  IT'S PRETTY REMARKABLE.
25          BUT I'M NOT BEING CALLED UPON IN THIS CASE TO PASS

```
 1  UPON THIS PARTICULAR CONTRACT.  BUT THE NOTION OF REQUIRING
 2  SOMEONE TO DISCLOSE ALL THEIR IDEAS, THAT'S --
 3          MR. NOLAN:  IT'S BREATHTAKING.
 4          THE COURT:  THAT IS BREATHTAKING, FROM MY VIEW.
 5          MR. NOLAN:  SO JUST BEAR WITH ME FOR A MOMENT.
 6          THAT, IN ESSENCE, YOUR HONOR, IS WHAT THEY'RE
 7  CLAIMING HERE.
 8          DESPITE THE ARGUMENT THIS MORNING THAT MR. --
 9          THE COURT:  WAIT A SECOND.
10          HOW ARE THEY ASKING FOR IT?
11          THEY SEEM TO BE LIMITING IT TO PRECISELY WHEN WE
12  REDUCE THOSE THINGS TO A DRAWING OR CREATE A MODEL.
13          MR. NOLAN:  RIGHT.
14          HERE IS WHAT'S HAPPENING, YOUR HONOR, IS THAT THE
15  IDEA THAT CARTER BRYANT HAS IS NOT TO DRAW FOUR HIP
16  MULTI-ETHNIC GIRLS WITH ATTITUDE.  HIS IDEA IS TO DEVELOP A
17  FASHION DOLL.  IT'S THE IDEA OF A FASHION DOLL.
18          THE COURT:  AND WE DON'T KNOW WHEN THAT IDEA WAS
19  CONCEIVED BY HIM.  MR. QUINN ADMITTED AS MUCH.
20          MR. NOLAN:  THAT'S ONE OF THE ISSUES.  BUT MY
21  QUESTION -- AND I THINK WHAT'S REALLY POSED IN THIS MOTION --
22  ACTUALLY, IT'S POSED IN THE AFFIRMATIVE MOTION BROUGHT BY
23  CARTER BRYANT -- IS THAT EVEN MATTEL CAN'T OWN MY DREAMS OR MY
24  IDEAS.
25          RIGHT?
```

1  **THE COURT:** UNTIL YOU ACTUALLY REDUCE THEM TO WRITING
2  IN THE COURSE OF YOUR EMPLOYMENT.
3  **MR. NOLAN:** NO. NO. I DON'T THINK SO, YOUR HONOR.
4  ONLY IF IN THE COURSE OF YOUR EMPLOYMENT -- AND WE COULD GO
5  THROUGH SOME OF THOSE OTHER TERMS --
6  **THE COURT:** I KNOW.
7  **MR. NOLAN:** SO THERE'S AN AMBIGUITY RIGHT THERE,
8  BECAUSE THERE IS NO DISPUTE THAT CARTER BRYANT IS AN
9  ILLUSTRATOR. HE'S AN ILLUSTRATOR. WHAT HE DOES LATER IS
10 CONTRIBUTE TO, BY GIVING AN EXPRESSION AND AN IDEA TO MGA, AND
11 THEY REDUCE TO PRACTICE THE ACTUAL DOLL. CARTER'S DRAWINGS ARE
12 MERELY AN EXPRESSION OF AN IDEA THAT HE HAS.
13 NOW, MATTEL WANTS YOU TO BELIEVE THAT THIS CASE IS
14 REALLY ABOUT AN IDEA FOR A DRAWING, A REDUCTION TO PRACTICE IS
15 THE DRAWING ITSELF, AND THAT'S WHAT THEY WANT. THAT'S NOT
16 TRUE. WE KNOW THAT'S NOT THE CASE, BECAUSE WE KNOW THE
17 EVIDENCE WILL LATER SHOW THAT THE DRAWINGS ARE ACTUALLY SET
18 ASIDE BY THE SCULPTORS AT SOME POINT IN TIME IN THE PROCESS AND
19 THEY DEVELOP BRATZ.
20 THE IDEA THAT CARTER BRYANT HAD WAS FOR A FASHION
21 DOLL. IT'S THE SAME IDEA THAT ISAAC LARIAN HAD AND
22 PAULA GARCIA HAD. IT ALL CAME TOGETHER THAT THEY MADE A
23 FASHION DOLL. THAT WAS THE IDEA. THAT'S NOT PROTECTED.
24 NOW, THE LAST POINT I WANT TO MAKE, YOUR HONOR, IS --
25 AND LET ME JUST ROUND THIS ONE OFF -- THAT HAD MATTEL WANTED TO

```
 1   EMPLOYEES, ONE WHO CERTAINLY GETS PAID A LOT MORE; BUT
 2   CARTER BRYANT AND TIM KILPIN, COMING TO WORK, AND THEY WANT TO
 3   KNOW WHETHER OR NOT THEIR IDEAS AND DREAMS ARE GOING TO BE
 4   COVERED.
 5           THE OTHER THING I WOULD SAY, YOUR HONOR, IS THAT THE
 6   WHOLE IDEA HERE IS THAT HE'S BEEN DESCRIBED -- AND WHAT THEY'RE
 7   GOING AFTER AND WHAT THEY'RE ALLEGING AS THE CORE OF THIS CASE
 8   IS THAT HE CONCEIVED OF THE IDEA OF A FASHION DOLL, NOT OF A
 9   DRAWING, OF A FASHION DOLL LINE.  AND THAT'S NOT COVERED IN
10   THIS.  IT MIGHT HAVE BEEN, YOUR HONOR, COVERED IN THE 2004
11   AGREEMENT.  I WOULD TELL YOU THAT I WOULDN'T MAKE THESE
12   COMMENTS IF WE WERE DEALING WITH THE 2004 AGREEMENT.  BUT I
13   WILL SAY THIS:  WHEN MATTEL WANTED TO COVER IDEAS, THEY KNEW
14   HOW TO PUT IT IN THERE.
15           I WILL COME BACK TO THIS POINT VERY BRIEFLY IN THE
16   STATUTE OF LIMITATIONS ARGUMENT.  YOU MIGHT THINK, 'HOW IN THE
17   WORLD IS HE GOING TO PULL THIS IN ON THIS ONE?'  IN THE STATUTE
18   OF LIMITATIONS ARGUMENT, YOUR HONOR, I WILL SHOW YOU AN E-MAIL
19   THAT'S BEEN REDACTED BECAUSE OF THE ATTORNEY-CLIENT PRIVILEGE,
20   WHICH WE -- I RESPECTFULLY BELIEVE -- AND THE MATTER IS BEFORE
21   JUDGE INFANTE NOW ON WHETHER OR NOT THEY WAIVED THE
22   ATTORNEY-CLIENT PRIVILEGE ON USING IT BOTH AS A SWORD AND A
23   SHIELD -- WE BELIEVE THAT THE INVESTIGATION THAT WAS CONDUCTED
24   IN 2002 DECIDED NOT TO BRING A CHARGE FOR THAT SIMPLE REASON;
25   THAT ACCORDING -- IT SAYS, ACCORDING TO OUTSIDE COUNSEL, THEY
```

```
 1  COULDN'T BRING THIS ACTION.
 2          THEY COULDN'T BRING THE ACTION BECAUSE THE 2004
 3  CONTRACT DOES NOT INCLUDE IDEAS; AND THAT'S WHY THEY PUT IT IN
 4  THE 2004 VERSION OF THE NEW CONTRACT.
 5          THANK YOU VERY MUCH.
 6          THE COURT:  THANK YOU, COUNSEL.
 7          THE COURT HAS HEARD FROM ALL OF YOU ON THE
 8  ENFORCEABILITY.
 9          MR. QUINN, I'D LIKE TO MOVE IN TO THE NEXT PHASE OF
10  THIS, ASSUMING THERE IS AN ENFORCEABLE AGREEMENT, WHETHER UNDER
11  THE AGREEMENT THERE'S ANY CONSEQUENCES OR ANY LEGAL CONCLUSIONS
12  THE COURT CAN REACH NOW ABOUT BREACH, ET CETERA.
13          IF YOU WANT TO BRIEFLY RESPOND TO ANY OF THE POINTS
14  MADE, YOU MAY DO SO; BUT LET'S TRY TO MOVE FORWARD NOW INTO THE
15  NEXT MOVEMENT HERE, IF WE COULD.
16          MR. QUINN:  JUST A COUPLE OF BRIEF RESPONSES,
17  YOUR HONOR.
18          I DON'T THINK THAT BY PROFFERING AN UNREASONABLE
19  INTERPRETATION, ONE CAN CREATE AMBIGUITY.  AND WE SUBMIT THAT
20  THE ONLY REASONABLE INTERPRETATION IS NOT THE ONE THAT'S BEEN
21  ADVANCED THAT IT ONLY COVERS PATENTS.
22          THERE'S NO MYSTERY ABOUT WHERE THE LANGUAGE OF THIS
23  CONTRACT CAME FROM.  WHOEVER WROTE THIS -- I'M ASSUMING --
24  LET'S ASSUME --
25          THE COURT:  I'M SORRY.  MAYBE I'M NOT UNDERSTANDING
```

```
 1   WHAT YOU'RE SAYING THERE, SO LET ME ASK.
 2           WOULD YOU CONCEDE THAT IF THERE ARE TWO REASONABLE
 3   INTERPRETATIONS, TWO DIFFERENT REASONABLE INTERPRETATIONS WHICH
 4   LED TO TWO DIFFERENT CONCLUSIONS, THEN THERE WOULD BE
 5   AMBIGUITY?
 6           MR. QUINN:  I WOULD AGREE WITH THAT --
 7           THE COURT:  OKAY.
 8           MR. QUINN:  -- IF THERE ARE TWO EQUALLY REASONABLE
 9   INTERPRETATIONS.
10           THE COURT:  SO IF YOUR INTERPRETATION IS REASONABLE
11   AND CARTER BRYANT'S INTERPRETATION IS REASONABLE, THEN I HAVE
12   AN AMBIGUOUS CONTRACT.
13           MR. QUINN:  I WOULD SAY IF THEY'RE BOTH EQUALLY
14   REASONABLE.
15           YOUR HONOR, THE REASON MAY BE A CONTINUUM.
16   OBVIOUSLY, THESE ARE REASONABLE LAWYERS SITTING OVER HERE TO MY
17   LEFT, AND INVENTIVE LAWYERS, IF I MAY USE THE TERM, AND THEY'VE
18   COME UP WITH AN ARGUMENT WITH -- I SUBMIT, THERE'S SOME GAPS IN
19   THE LOGIC, BUT I'M NOT PREPARED TO SAY THERE'S NO REASON
20   WHATSOEVER TO THE ARGUMENT.
21           BUT I DO NOT THINK THAT THE PROFFERED INTERPRETATION
22   THAT THIS CONTRACT ONLY COVERS PATENTABLE MATERIAL IS A
23   REASONABLE INTERPRETATION, OR IS AT LEAST AS REASONABLE AS THE
24   ONE THAT WE'VE ADVANCED THAT IT ALSO COVERS COPYRIGHTABLE
25   MATERIAL.
```

```
 1             I DON'T KNOW IF I'VE MADE MYSELF CLEAR ON THAT POINT,
 2   YOUR HONOR.
 3             THE COURT:  WELL, YOU SEEM TO BE MAKING TWO DIFFERENT
 4   POINTS.  THE FORMER PART OF THAT POINT IS THAT YOU DON'T THINK
 5   THAT THEIR INTERPRETATION IS REASONABLE TO LIMIT IT SIMPLY TO
 6   PATENTABLE.
 7             MR. QUINN:  RIGHT.
 8             THE COURT:  BUT IF YOU'RE SUGGESTING THAT, PERHAPS,
 9   THAT IS A REASONABLE INTERPRETATION, BUT THAT YOURS IS SIMPLY
10   MORE REASONABLE, I DON'T KNOW IF THE LAW REQUIRES THE COURT TO
11   JUST TRY TO FIGURE OUT THE MOST REASONABLE INTERPRETATION OF A
12   CONTRACT, IF THE COURT DOES, IN FACT, HAVE TWO INTERPRETATIONS
13   THAT CROSS THE THRESHOLD OF REASONABLENESS.
14             MR. QUINN:  RIGHT.
15             THE COURT:  I HOPE YOU UNDERSTAND WHAT I'M SAYING.
16             MR. QUINN:  I THINK THEIR INTERPRETATION CAN BE
17   ARTICULATED IN A REASONABLE SOUNDING WAY.  THAT'S WHAT I MEANT
18   TO SAY.  I BELIEVE THERE ARE LOGICAL GAPS IN IT.  BECAUSE,
19   AMONG OTHER THINGS, IT LEADS TO THE CONCLUSION -- AND THIS IS
20   THE POINT I'M ABOUT TO MAKE, YOUR HONOR:  THERE'S NO MYSTERY
21   WHERE THIS LANGUAGE CAME FROM.  WHOEVER WROTE THIS -- AND I
22   ASSUME IT WAS A LAWYER -- HAD OPEN BEFORE THEM THE LANGUAGE OF
23   SECTION 2870, WHERE ALL OF THIS LANGUAGE APPEARS, INCLUDING
24   "REDUCED TO PRACTICE."  IT APPEARS IN THE LANGUAGE OF THE
25   STATUTE.  AND WHOEVER WAS WRITING THIS WAS CLEARLY TRYING TO
```

1  WRITE AN AGREEMENT THAT WOULD BE ENFORCEABLE UNDER THAT
2  SECTION.
3            WE HAVE THE <u>ICONIX</u> CASE, WHICH SAYS THAT PROTECTS
4  PEOPLE WHO WRITE COPYRIGHTABLE MATERIALS.
5            ON THE EXTRINSIC EVIDENCE, THERE REALLY ISN'T -- NO
6  EXTRINSIC EVIDENCE HAS EVER BEEN OFFERED THAT MR. BRYANT, AT
7  ANY TIME, UNDERSTOOD THIS TO ONLY REFER TO PATENTABLE
8  MATERIALS.  THE ONLY EVIDENCE ON THAT IS THAT HE KNEW IT
9  COVERED HIS DESIGNS; HIS RESPONSE TO HIS MOTHER.
10           WITH RESPECT TO LATER CHANGES TO THE AGREEMENT, OR
11 EARLIER AGREEMENTS, WE'RE NOT TALKING ABOUT THOSE AGREEMENTS.
12 AND THERE'S A CASE THAT WE'VE CITED, YOUR HONOR, <u>BAMERY V.</u>
13 <u>GREIF</u>, 949 F. SUPP. 523, WHICH SAYS THAT IT'S NOT APPROPRIATE
14 TO LOOK AT THOSE OTHER VERSIONS OF AN AGREEMENT.
15           THE SUBSEQUENT AGREEMENT THAT WAS ENTERED INTO, THIS
16 WAS NOT JUST A MINOR TWEAKING OF SOME LANGUAGE.  THAT GREW TO
17 BECOME A FIVE-PAGE AGREEMENT INSTEAD OF A ONE-PAGE AGREEMENT.
18           SO I THINK IT'S NOT APPROPRIATE TO SORT OF ISOLATE
19 ONE LANGUAGE -- YOU KNOW, ONE TERM IN THERE, AND SAY, 'WELL,
20 THIS IS' -- 'OBVIOUSLY, THEY MUST HAVE RECOGNIZED SOMETHING WAS
21 WRONG.'
22           **THE COURT:**  LET'S PUT THAT ASIDE.  FAIR ENOUGH.
23 BECAUSE YOU ARE CORRECT IN THE CASE YOU CITE.
24           BUT WHAT ABOUT THE SUBSTANCE OF MR. NOLAN'S ARGUMENT
25 THAT THIS CONCEPT OF AN IDEA WAS LACKING; AND WHETHER IT CAME

```
 1  IN IN ANOTHER AGREEMENT OR NOT, PERHAPS THAT MIGHT BE
 2  IRRELEVANT.  BUT THAT PHRASE, OR THAT CONCEPT, HOWEVER YOU WANT
 3  TO DEFINE IT, HE ARGUES, IS NOT PRESENT.
 4          MR. QUINN:  WELL, IT SAYS "CONCEIVED OF," OR "REDUCED
 5  TO PRACTICE."  AND THAT'S ALSO THE LANGUAGE IN THE STATUTE.
 6  AND I SUBMIT, "CONCEIVED OF" PICKS UP IDEAS.  SO IF YOU COME UP
 7  WITH AN IDEA RELATING TO A TOY WHILE YOU WORK FOR US, YES, WE
 8  OWN THAT, TO THE EXTENT THE LAW PERMITS THAT.
 9          THE COURT:  LET'S MOVE ON TO, ASSUMING THERE IS AN
10  AGREEMENT HERE THAT'S ENFORCEABLE, THE CONSEQUENCES THEREOF.
11          MR. NOLAN:  YOUR HONOR, MAY I JUST GIVE A CITE ON
12  THIS POINT.
13          I'M JUST POINTING OUT THAT THE DISTINCTION WE WERE
14  MAKING BETWEEN DRAWINGS AND DESIGNS AND IDEAS AND THAT THEY'RE
15  ONLY CLAIMING IT'S THE DRAWING, I WANTED TO CITE TO MATTEL'S
16  CORRECTED OPPOSITION TO THE MGA PARTIES IN CARTER BRYANT'S
17  MOTION FOR PARTIAL SUMMARY JUDGMENT AT PAGE 71, AND I'M QUOTING
18  FROM LINE 21.  IT SAYS, "AS EXPLAINED IN MATTEL'S MOTION AT
19  PAGES 6 TO 10, MATTEL OWNS THE INTANGIBLE BRATZ IDEAS AND
20  CONCEPTS PURSUANT TO THE INVENTIONS AGREEMENT.  ACCORDING TO
21  THE INVENTIONS AGREEMENT, IT CREATES A PROTECTED PROPERTY
22  INTEREST IN THE IDEAS AND CONCEPTS BRYANT CREATED OR CONCEIVED
23  WHILE EMPLOYED AT MATTEL."
24          THANK YOU.
25          THE COURT:  THANK YOU, COUNSEL.
```

1           **MR. RUSSELL:** THAT'S IT.

2           **THE COURT:** VERY GOOD.

3       ANYTHING FURTHER FROM CARTER BRYANT?

4           **MS. ANDERSON:** NOT ON THE PREEMPTION, YOUR HONOR.

5           **THE COURT:** VERY WELL.

6       WE'VE COVERED MORE THAN PREEMPTION AT THIS POINT.

7       ANYTHING FURTHER ON ANYTHING THAT'S BEEN DISCUSSED

8  HERE?

9           **MS. ANDERSON:** AT ALL?

10       I DO HAVE A FEW CLOSING POINTS I'D LIKE TO RAISE,

11 YOUR HONOR.

12          **THE COURT:** WHY DON'T YOU DO THAT.

13       LET'S GIVE CARTER BRYANT A CHANCE.

14       THEN, MR. ZELLER, I'LL ALLOW YOU TO RESPOND TO THE

15 ENTIRE...

16       I'VE EXTENDED THIS A HALF HOUR PAST 4:30 BECAUSE I

17 DID HAVE THOSE MATTERS I TOOK IN AFTER LUNCH; BUT WE ARE

18 GETTING CLOSE TO THE END OF THE DAY HERE.

19          **MS. ANDERSON:** THANK YOU, YOUR HONOR. I'M GOING TO

20 MAKE IT VERY, VERY BRIEF.

21       FIRST, BECAUSE OF THE LENGTH OF THIS HEARING, THERE'S

22 OBVIOUSLY NO TIME OR OPPORTUNITY TO ADDRESS EVIDENTIARY

23 OBJECTIONS. WE JUST WANT TO STATE FOR THE RECORD WE DID ASSERT

24 THEM. WE REASSERT THEM DURING THE HEARING AND REQUEST A RULING

25 ON THEM, TO THE EXTENT RELEVANT TO YOUR HONOR'S RULINGS, AND

1  ADDRESS THEM FOR THE RECORD.

2         AND BECAUSE OF THE TIME LIMITATIONS, YOUR HONOR,

3  OBVIOUSLY, WE'RE NOT IN A POSITION TO ADDRESS EVERY SINGLE

4  POINT THAT HAS BEEN RAISED OR REFUTE EVERY FACTUAL ASSERTION

5  THAT HAS BEEN MADE BY MATTEL'S COUNSEL.

6         **THE COURT:**  COUNSEL, YOU HAVE HAD SUFFICIENT TIME TO

7  RAISE ALL OF THESE ISSUES IN THE EXTENSIVE BRIEFINGS.

8         **MS. ANDERSON:**  IN THE BRIEFINGS, YES.  THAT'S WHAT I

9  WANTED TO SAY, YOUR HONOR.  MEANING, DURING THE HEARING, I

10 DIDN'T WANT TO INTERRUPT THE FLOW OF THE DAY.  BUT THERE'S BEEN

11 STATEMENTS MADE ABOUT THINGS THAT SOME WITNESSES HAVE SAID MY

12 CLIENT HAS SAID AND ASSERTIONS THAT MY CLIENT IS A LIAR.  HE IS

13 NOT.  HE TESTIFIED TRUTHFULLY IN DEPOSITION AND TESTIFIED THAT

14 HE TOLD MATTEL WHEN HE LEFT HE WAS GOING TO WORK ON A NEW DOLL

15 LINE; STILL GIVES THE SAME NOTICE TO MATTEL ON THE STATUTE

16 ISSUES.  BUT I JUST WANTED TO MAKE THAT CLARITY FOR THE RECORD.

17        SECOND, FOR THE ARGUMENTS THAT MR. BRYANT RAISED IN

18 HIS AFFIRMATIVE SUMMARY JUDGMENT MOTION THAT WERE ADDRESSED IN

19 FULL IN OUR BRIEFS, WE ALSO RELIED ON MGA'S COUNSEL FOR SOME OF

20 THEIR ARGUMENTS AS WELL, BUT ON OUR ARGUMENTS, WE NOTE THAT

21 MATTEL'S COUNSEL HAS SUBMITTED A 56(F) DECLARATION.

22        FOR THE ARGUMENTS THAT WE MADE IN OUR BRIEF, THERE IS

23 NO BASIS FOR 56(F) RELIEF.  THERE ARE NO FURTHER FACTS REQUIRED

24 TO ENTER SUMMARY JUDGMENT IN MR. BRYANT'S FAVOR ON THE

25 ARGUMENTS THAT WE ADDRESSED AT LENGTH IN OUR BRIEF.

1          LASTLY, I JUST WANT TO CLARIFY FOR THE COURT, TO MAKE
2   SURE THERE'S NO CONFUSION ON THE ISSUE, WE HAVE NOT MOVED ON
3   THE QUESTION OF ENFORCEABILITY OF THIS CONTRACT; SO THE WHOLE
4   INQUIRY ABOUT WHETHER THE CONTRACT IS, AS A WHOLE,
5   UNENFORCEABLE OR UNCONSCIONABLE, THAT'S NOT WHAT WE'RE HERE
6   ASKING THE COURT --
7          **THE COURT:**  I UNDERSTAND.  YOUR ISSUES ARE ON THE
8   INFRINGEMENT CLAIM, FIDUCIARY DUTY, WHICH WE'VE DISCUSSED AT
9   LENGTH, THE BREACH OF CONTRACT; NOT THE ENFORCEABILITY, BUT THE
10  BREACH ASPECT OF IT.
11         **MS. ANDERSON:**  AND ON OUR MOTION, MOST IMPORTANTLY,
12  THE PROPER INTERPRETATION OF THAT CONTRACT.
13         **THE COURT:**  RIGHT.
14         **MS. ANDERSON:**  BECAUSE WE SAY THOSE TERMS, AT BEST,
15  ARE AMBIGUOUS.  AND EVEN MATTEL'S COUNSEL CONCEDES THAT THE
16  TERMS ARE REASONABLY SUSCEPTIBLE TO THE DEFINITIONS WE HAVE
17  PROVIDED IN OUR BRIEF.  AND UNDER THE <u>WOLF</u> CASE, THAT MEANS
18  THEY'RE AMBIGUOUS.  BECAUSE IT'S AN UNDISPUTED CONTRACT OF
19  ADHESION, THAT AMBIGUITY MUST BE RESOLVED IN MR. BRYANT'S
20  FAVOR.
21         **THE COURT:**  YOU ALSO RAISE UNJUST ENRICHMENT,
22  CONVERSION, AND UNFAIR COMPETITION.
23         WE'VE COVERED THOSE -- THE LAST CLAIM -- THE LAST
24  GROUND YOU MOVED ON WAS ON THE DECLARATORY RELIEF.
25         IS THERE ANYTHING FURTHER YOU WANT TO ELABORATE ON

1  THAT?

2  **MS. ANDERSON:** I THINK IT'S BEEN COVERED ADEQUATELY
3  IN THE BRIEF.

4  **THE COURT:** VERY WELL.

5  **MS. ANDERSON:** AND WE JOINED IN MANY ARGUMENTS OF
6  MGA'S COUNSEL AS WELL.

7  **THE COURT:** VERY GOOD.

8  THANK YOU VERY MUCH, COUNSEL.

9  MR. ZELLER.

10  **MR. ZELLER:** WITH RESPECT TO THE ALLEGED PREEMPTION
11  OF THE CONVERSION CLAIM, THERE CONTINUES TO BE THIS ASSERTION
12  THAT WHAT MR. BRYANT TOOK, EVEN OUT OF MATTEL, WITH RESPECT TO
13  THE SO-CALLED DUMMY, WAS NOTHING BUT TRASH.

14  BUT, NUMBER ONE, HE HAD ANOTHER MATTEL EMPLOYEE MAKE
15  UP THE HAIR FOR IT; ANOTHER MATTEL EMPLOYEE PUT FACE PAINT ON
16  IT. HE PAID THEM MONEY TO DO THIS. SO THE IDEA THAT HE JUST
17  TOOK SOME SCRAP OUT OF THE TRASH, OUT OF MATTEL, IS JUST SIMPLY
18  NOT EVEN A FAIR CHARACTERIZATION OF MR. BRYANT'S OWN TESTIMONY.

19  AND, OF COURSE, I HEARD THAT I NEEDED TO RISE TO THE
20  CHALLENGE TO REFUTE THIS. THE FACT IS, THE RECORD,
21  MR. BRYANT'S OWN TESTIMONY, DOESN'T SUPPORT THE IDEA THAT IT
22  WAS NOTHING BUT A NAKED HEAD THAT WAS A PIECE OF TRASH THAT HE
23  TOOK AWAY FROM MATTEL.

24  **THE COURT:** WHAT ABOUT THIS ARGUMENT THAT THE
25  DRAWINGS ARE NOTHING MORE THAN BASICALLY AN EXPRESSION OR A

```
 1                          CERTIFICATE
 2
 3  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
 4  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
 5  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.
 6
 7  _____        _____5-1-08_____
    THERESA A. LANZA, CSR, RPR                          DATE
 8  FEDERAL OFFICIAL COURT REPORTER
 9
10
...
25
```