# Exhibit 7

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144
————
TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 735-2578
DIRECT FAX
(917) 777-2578
EMAIL ADDRESS
PMECKLES@SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 12, 2007

**VIA MESSENGER**

Jon D. Corey, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

RE:     *Mattel, Inc. v. Bryant*

Dear Jon:

We are writing in response to your December 11, 2007 letter. We disagree with your factual account and we will prove Mattel's delay to the Court should that become necessary.

In any event, you still have not provided the requested dates for Ms. Fontanella or Mr. Bousquette. Please provide available dates before the January 28, 2008 discovery cut off immediately.

Your assertion that Mr. Bousquette only has knowledge on Phase II issues is false. Among other things, (a) Mattel's initial disclosures represent that Mr. Bousquette has "knowledge of facts that Mattel may use to support its material allegations and defenses," including "Mattel's business operations and the development and ownership of intellectual property at issue," and (b) Mattel's supplemental interrogatory response filed December 8, 2007, lists Mr. Bousquette as a person with knowledge of facts supporting its contention that it suffered harm as a result of MGA's conduct. Mr. Bousquette's deposition must take place before January 28, 2008.

As to Ms. Ross, given your stated intent to designate her as a Rule 30(b)(6) witness, we will take her deposition in that capacity on January 17, 2008. Please let us know which topics she will be acting as Mattel's designee.

Exhibit  7 ,
P. 104

Jon D. Corey, Esq.
December 12, 2007
Page 2

In Mr. Mumford's December 10, 2007 letter, we confirmed the deposition of Tina Patel for January 8, 2008. Your letter does not address this issue, so we assume that Ms. Patel's deposition is confirmed for that date.

We also again ask that Mattel immediately provide us with dates and the names of its designees on the outstanding 30(b)(6) topics. In addition to the outstanding topics in Carter Bryant's Rule 30(b)(6) notice, we ask that Mattel immediately designate a witness on the following topics identified in MGA's Rule 30(b)(6) notice relating to Phase I issues (topics 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 39, 42, 47, 48, 58, 60, 65, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85).[1]

In addition, we are enclosing deposition notices for the following individuals:

1.   Maureen Tafoya;

2.   Theresa Newcomb;

3.   Tim Kilpin;

4.   Sheila Kyaw;

5.   Kevin Farr;

6.   Jean Gomez;

7.   Hoi Hoffman-Briggs;

8.   Evelyn Viohl;

9.   Roger Simonseau; and

10.   Milt Zablow

MGA believes each of these individuals has knowledge regarding Phase I issues, and these depositions need to be scheduled before the January 28, 2008 discovery cutoff. MGA is uncertain whether the above individuals still are affiliated with Mattel, and if not, whether your firm will be representing these individuals and can accept service. Please provide us with answers to these inquiries.

To expedite the scheduling of these outstanding depositions and to resolve any remaining disputes, we propose to have a meet and confer/scheduling meeting as

---

[1] These are the topics in MGA's notice that relate to Phase I issues. We will schedule Mattel's Rule 30(b)(6) deposition on the remaining topics after the January 28, 2008 discovery cutoff. If Mattel intends to stand on its objection to MGA's Rule 30(b)(6) deposition notice based on the ground that Carter Bryant served a previous Rule 30(b)(6) notice, we propose to discuss this objection at the proposed meet and confer session. Please consider this letter as the notice and request for a meet and confer under Section 5 of the Discovery Master stipulation.

Exhibit  7
P.  105

Jon D. Corey, Esq.
December 12, 2007
Page 3

soon as possible.  I am available all day this Friday, December 14, as well as all day on Monday of next week, and I am available until noon EST on Tuesday.

Please let us know when you are available on these days.  Please also be prepared to discuss all deposition scheduling issues raised in this letter and Mr. Mumford's letter of December 10 at this conference.  Time is running short, and if we are not able to reach an agreement at this conference, we will need to seek appropriate relief from the Court and/or the Discovery Master.

We look forward to hearing from you.

Sincerely,

*Paul Eckles*

Paul M. Eckles

cc:    Matthew Werdeger, Esq.

Enclosures

486002-Los Angeles Server 1A - MSW

Exhibit 7 ,
P. 106

# Exhibit 8

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, roth Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 20, 2007

VIA FACSIMILE AND U.S. MAIL
917.777.2578

Paul Eckles, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, New York 10036

Re:     Bryant v. Mattel, Inc.

Dear Paul:

I write to follow up on our phone conversation of earlier today regarding depositions.

This will confirm that Adrienne Fontanella's deposition will occur on January 16, 2008.

Because your letter did not discuss any reason why Mr. Bousequette would be a Phase 1 witness (save to say that he had information relevant to the consolidated actions), I explained that I did not appreciate what information he may have that relates to the narrow claims in Phase 1. I further explained that MGA has previously taken the position that the parties should focus on Phase 1 discovery. You asked whether Mattel was taking the position that the parties should only be taking exclusively Phase 1 discovery. I told you that was not Mattel's position, but was necessarily part of a discussion of the practicalities of scheduling a busy, third-party witness. You said that he possessed information relevant to Phase 1 because (a) you thought that he was involved in certain employment agreements, and (b) because he has information related to MGA's unclean hands defense that MGA would assert in Phase 1. I reminded you that Judge Larson had asked MGA's counsel at the hearing on Mattel's Motion to Strike MGA's unclean hands defense, among others, what aspects of that defense would be part of Phase 1, and that counsel was not able to provide a strict demarcation. I asked what aspects of the unclean hands

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Exhibit  8
P. 107

defense MGA would prosecute in Phase 1 to determine whether your suggestion that Mr. Bousquette's possessed information related one or more of the many unclean hands allegations that may be asserted in Phase 1. You did not identify any specific allegation, saying that MGA did not have an obligation to do so. I told you that we would try to get in touch with Mr. Bousquette by Friday, December 21, 2007.

I informed you that in light of Judge Infante's ruling that MGA obtained with respect to Mattel's Third Notice of Deposition of MGA, that MGA's Notice of Deposition of MGA is a nullity given that it seeks to depose a person more than once without leave of court in violation of Rule 30. I understand that MGA disagrees with that position and have repeatedly asked Mr. Mumford of your firm for authority supporting its position, but he has not provided me with any. I responded to your request about producing a witness on Phase 1, as opposed to Phase 2 topics, by saying that a discussion of the specific topics was premature. I further informed you that Mattel was taking the same position that MGA had taken with respect to Mattel's recent notice of deposition of MGA pursuant to Rule 30(b)(6) and that MGA forced Mattel to seek leave of court to serve that notice. You told me that MGA would raise the issue with the Court.

I informed you that no Mattel witness would be produced before January 3, 2007, because Mattel is closed between December 24, 2007 and January 2, 2008.

I informed you that, according to Mattel's calculations, MGA and Bryant have two depositions remaining out of the 24 allotted to them under Judge Larson's Scheduling Order. I explained that between the depositions that have been taken and the additional depositions that MGA and Bryant have sought, two remain. I had forgotten during the call that MGA and Bryant also seek the deposition of Mr. Eckert, however, and now calculate that that MGA and Bryant have one deposition remaining.

According to Mattel, MGA and Bryant have taken the following depositions: Kaye, Driskill, Rhee, Park, Martinez, Mattel (Marine, Artavia, Kawashima, Palmer), Ongchango, Freed, Yonemoto, Pratte, Jensen, Pasko, Tcacik, Croom, de Anda, Hudnut and Nordquist. In addition, prior to your letter of December 12, 2007, MGA/Bryant had asked for the depositions of Fontanella, Bousquette, Patel, Hooks, Eckert and Ross, for a total of 23 depositions. As I explained, to the extent that MGA or Bryant exceeded the scope of a designation under a Rule 30(b)(6) witness, then that deposition constitutes deposition of a "person" under Rule 30. As even a cursory review of the deposition transcripts will show, Bryant's counsel and MGA's prior counsel did just that, repeatedly.

I advised you that if MGA wishes to identify the two additional people of the ten identified in your December 12, 2007 letter—Tafoya, Newcomb, Kilpin, Kyaw, Farr, Gomez, Hoffman-Briggs, Viohl, Simoneau and Zablow—that it wished to depose (now one, in light of the fact that I forgot MGA's request for Mr. Eckert's deposition during the call), then Mattel would try to provide a date for that person by the time that we speak tomorrow at 10:00 a.m.

2

Exhibit 8,
P. 108

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon D. Corey

JDC:jcl

cc: Matthew Werdeger, Esq.

3

Exhibit _8_ ,
P. _109_

# Exhibit 9

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11
   CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
12
           Plaintiff,                   Consolidated with
13                                       Case No. CV 04-09059
                                         Case No. CV 05-02727
14        vs.
                                        FOURTH NOTICE OF DEPOSITION
15 MATTEL, INC., a Delaware corporation, OF MGA ENTERTAINMENT, INC.
                                        PURSUANT TO FEDERAL RULE OF
16         Defendant.                   CIVIL PROCEDURE 30(B)(6)

17
18 AND CONSOLIDATED ACTIONS

19
20
21
22
23
24
25
26
27
28
                    Exhibit 9 ,
                    P. 116

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on January 23, 2008, beginning at 9:30 a.m.

3  Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4  MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5  LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to <u>Fed. R.</u>

6  <u>Civ. P.</u> 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7  directors, managing agents or other persons who consent to testify on its behalf

8  concerning each of the topics set forth in Exhibit A hereto.

9         PLEASE TAKE FURTHER NOTICE that the deposition will take place

10  before a duly authorized notary public or other officer authorized to administer oaths at

11  depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12  excepted, until completed.

13         PLEASE TAKE FURTHER NOTICE that, pursuant to <u>Fed. R. Civ.</u>

14  <u>P.</u> 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

15  Livenote or other technology for real-time transcription of the testimony.

16

17  DATED: _January 9, 2008_      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

18

19            By _____

20               Michael T. Zeller
             Attorneys for Mattel, Inc.

21

22

23

24

25

26

27

28

Exhibit _9_,
P. _111_

-1-

FOURTH NOTICE OF DEPOSITION OF MGA

## EXHIBIT A

1.      "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents,     subsidiaries,     divisions,     affiliates,     predecessors-in-interest     and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.      "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

4.      "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence

Exhibit 5 ,
P. 1/2

-2-

1  that is the subject of, or otherwise relevant or responsive to, the Topics of Examination
2  herein.

3       5.     "DESIGN" or "DESIGNS" means any and all representations,
4  whether two-dimensional or three-dimensional, and whether in tangible, digital,
5  electronic or other form, including but not limited to all works, designs, artwork,
6  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
7  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
8  practice, developments, inventions and/or improvements, as well as all other items,
9  things and DOCUMENTS in which any of the foregoing are or have been expressed,
10 embodied, contained, fixed or reflected in any manner, whether in whole or in part.

11      6.     "THE BRATZ PITCH MATERIALS" means each and every
12 BRATZ WORK which was displayed, shown, provided, or offered to YOU on or
13 before the date on which YOU executed the BRYANT/MGA AGREEMENT.

14      7.     "BRYANT/MGA AGREEMENT" means the written agreement
15 between CARTER BRYANT and MGA dated as of September 18, 2000, produced as
16 BRYANT 00794-00799, and any other version or versions thereof.

17      8.     "CREATE OR IMPROVE" or "CREATED OR IMPROVED," in
18 the context of a BRATZ WORK or BRATZ WORKS, means to create, improve,
19 develop, modify, alter, conceive, reduce to practice, or otherwise work on the BRATZ
20 WORK or BRATZ WORKS.

21      9.     "IDENTIFY" or "IDENTITY" means the following:

22           (a)    With reference to an individual, means such individual's
23 name, current or last known business title, current or last known business affiliation,
24 current or last known relationship to YOU, current or last known residential and
25 business address, and current or last known telephone number.

26           (b)    With reference to an entity or governmental organization,
27 means such entity's or organization's name, present or last-known address, and present

28                              Exhibit  5 ,
                                P. 12
07209/2254636.1                    -3-
                              FOURTH NOTICE OF DEPOSITION OF MGA

1  or last-known telephone number and the IDENTITY of each individual who has served
2  or participated as a contact for or on behalf of such entity or organization.

3         (c)    With reference to an account with a bank or financial
4  institution, means the name and address of the bank or financial institution, the account
5  number(s) for or otherwise associated with such account and the name of each holder,
6  including without limitation each beneficial holder, of each such account.

7         (d)    With reference to a STORAGE DEVICE, means the
8  manufacturer name, brand, model name and number, serial number and all other
9  manufacturer identifiers, and the technical specifications and capacities of such
10 STORAGE DEVICE.

11      10.    "DIGITAL INFORMATION" means any information created or
12 stored digitally, including but not limited to electronically, magnetically or optically.

13      11.    "STORAGE DEVICE" means any computer hard drive, memory,
14 USB device, tape, storage array or any other device or medium that allows a user,
15 whether permanently, temporarily or otherwise, to create, generate, transmit, copy,
16 retain, store or maintain DIGITAL INFORMATION.

17      12.    "GLASER LETTER" means the letter sent from Patricia L. Glaser
18 to John B. Quinn, dated July 5, 2007.

19      13.    "RELATING TO" or "REFER OR RELATE TO" means
20 constituting, embodying, containing, referring to, commenting on, evidencing,
21 regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to,
22 concerning, supporting, contradicting, negating, revoking or otherwise relating to in
23 any manner.

24      14.    "COMMUNICATION," in the plural as well as the singular, means
25 any transmittal and/or receipt of information, whether such was oral or written, and
26 whether such was by chance, prearranged, formal or informal, and specifically includes,
27 but is not limited to, conversations in person, telephone conversations, electronic mail
28 (including instant messages and text messages), voicemail, letters, memoranda,

Exhibit _7_,
P. _114_

-4-

1  statements, media releases, magazine and newspaper articles, and video and audio

2  transmissions.

3       15.   "EMBODIMENT" means any representation of the identified

4  product or its retail packaging, whether two-dimensional or three-dimensional, and

5  whether in tangible, digital, electronic or other form, including but not limited to all

6  works, designs, artwork, sketches, drawings, illustrations, representations, depictions,

7  blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

8  reductions to practice, developments, inventions and/or improvements, as well as all

9  other items, things and DOCUMENTS in which any of the foregoing are or have been

10  expressed, embodied, contained, fixed or reflected in any manner, whether in whole or

11  in part.

12       16.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as

13  those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and

14  Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings

15  and records of every type and description including, but not limited to, contracts,

16  agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),

17  records of telephone conversations, handwritten and typewritten notes of any kind,

18  statements, reports, minutes, recordings, transcripts and summaries of meetings, voice

19  recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and

20  records of all types, studies, instruction manuals, policy manuals and statements, books,

21  pamphlets, invoices, canceled checks and every other device or medium by which or

22  through which information of any type is transmitted, recorded or preserved.  Without

23  any limitation on the foregoing, the term "DOCUMENT" shall include all copies that

24  differ in any respect from the original or other versions of the DOCUMENT, including,

25  but not limited to, all drafts and all copies of such drafts or originals containing initials,

26  comments, notations, insertions, corrections, marginal notes, amendments or any other

27  variation of any kind.

28                       Exhibit _9_ ,
                     P. _115_

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

1    17.   "PERSON" or "PERSONS" means all natural persons, partnerships,

2  corporations, joint ventures and any kind of business, legal or public entity or

3  organization, as well as its, his or her agents, representatives, employees, officers and

4  directors and any one else acting on its, his or her behalf, pursuant to its, his or her

5  authority or subject to its, his or her control.

6    18.   "CONTESTED MGA PRODUCTS" means the CONTESTED

7  BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the

8  CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED

9  4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY'S LITTLE

10  DOLL PRODUCTS, and the CONTESTED ALIENRACERS PRODUCTS, and any

11  other doll, product, toy, packaging, advertisement or other matter that, in whole or in

12  part, provides a basis for any claim or defense by YOU against MATTEL.

13    19.   "CONTESTED BRATZ DOLLS PRODUCTS" means any of the

14  following that provides a basis for any claim by YOU against MATTEL:  (i) any

15  EMBODIMENT or project ever known by the name "Bratz" or any derivative thereof

16  (whether in whole or in part and regardless of what such EMBODIMENT or project is

17  or has been also, previously or subsequently called) and any doll or any portion thereof

18  that is now or has ever been known as, or sold, offered for sale, licensed, offered for

19  license or marketed under, the name or term "Bratz" or any derivative thereof (whether

20  in whole or in part and regardless of what such doll is or has been also, previously or

21  subsequently called), and all prototypes, models, samples and versions of such

22  EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU

23  distribute under the name "Bratz" or any derivative thereof; and/or (iii) any and all

24  other goods, product packaging, advertisements, promotional materials or other thing or

25  item or material manufactured, produced, printed, ordered, marketed, advertised,

26  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

27  license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz" or

28  any derivative thereof.         Exhibit _7_,
                                     P. _116_

FOURTH NOTICE OF DEPOSITION OF MGA

1         20.    "CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD"

2  means any of the following that provides a basis for any claim by YOU against

3  MATTEL: (i) any EMBODIMENT or project ever known by the name "Bratz Funky

4  Fashion Makeover Head" or any derivative thereof (whether in whole or in part and

5  regardless of what such EMBODIMENT or project is or has been also, previously or

6  subsequently called) and any styling head or any portion thereof that is now or has ever

7  been known as, or sold, offered for sale, licensed, offered for license or marketed under,

8  the name or term "Bratz" or any derivative thereof (whether in whole or in part and

9  regardless of what such styling head is or has been also, previously or subsequently

10  called), and all prototypes, models, samples and versions of such EMBODIMENT,

11  styling head or any portion thereof; (ii) any accessory that YOU distribute under the

12  name "Bratz Funky Fashion Makeover Head" or any derivative thereof; and/or (iii) any

13  and all other goods, product packaging, advertisements, promotional materials or other

14  thing or item or material manufactured, produced, printed, ordered, marketed,

15  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

16  offered for license, sold or offered for sale by YOU or on YOUR behalf under the name

17  "Bratz Funky Fashion Makeover Head" or any derivative thereof.

18         21.    "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means any

19  of the following that provides a basis for any claim by YOU against MATTEL: (i) any

20  EMBODIMENT or project ever known by the name "4-ever Best Friends" or any

21  derivative thereof (whether in whole or in part and regardless of what such

22  EMBODIMENT or project is or has been also, previously or subsequently called) and

23  any doll or any portion thereof that is now or has ever been known as, or sold, offered

24  for sale, licensed, offered for license or marketed under, the name or term "4-ever Best

25  Friends" or any derivative thereof (whether in whole or in part and regardless of what

26  such doll is or has been also, previously or subsequently called), and all prototypes,

27  models, samples and versions of such EMBODIMENT, doll or any portion thereof;

28  (ii) any playset and accessory that YOU distribute under the name "4-ever Best

Exhibit _9_,
P. _117_

-7-

FOURTH NOTICE OF DEPOSITION OF MGA

1 | Friends" or any derivative thereof; and/or (iii) any and all other goods, product
2 | packaging, advertisements, promotional materials or other thing or item or material
3 | manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
4 | distributed, shipped, imported, exported, licensed, offered for license, sold or offered
5 | for sale by YOU or on YOUR behalf under the name "4-ever Best Friends" or any
6 | derivative thereof.

7 |    22. "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS" means
8 | any of the following that provides a basis for any claim by YOU against MATTEL:
9 | (i) any EMBODIMENT or project ever known by the name "Mommy's Little Patient"
10 | or similar name or any derivative thereof (whether in whole or in part and regardless of
11 | what such EMBODIMENT or project is or has been also, previously or subsequently
12 | called) and any doll or any portion thereof that is now or has ever been known as, or
13 | sold, offered for sale, licensed, offered for license or marketed under, the name or term
14 | "Mommy's Little Patient" or similar name or any derivative thereof (whether in whole
15 | or in part and regardless of what such doll is or has been also, previously or
16 | subsequently called), and all prototypes, models, samples and versions of such
17 | EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU
18 | distribute under the name "Mommy's Little Patient" or similar name or any derivative
19 | thereof; and/or (iii) any and all other goods, product packaging, advertisements,
20 | promotional materials or other thing or item or material manufactured, produced,
21 | printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,
22 | imported, exported, licensed, offered for license, sold or offered for sale by YOU or on
23 | YOUR behalf under the name "Mommy's Little Patient" or similar name or any
24 | derivative thereof.

25 |    23. "CONTESTED ALIENRACERS PRODUCTS" means any of the
26 | following that provides a basis for any claim by YOU against MATTEL:  (i) any
27 | EMBODIMENT or project ever known by the name "Alienracers" or any derivative
28 | thereof (whether in whole or in part and regardless of what such EMBODIMENT or

07209/2254636.1

Exhibit _7_,
P. _118_

-8-

1    project is or has been also, previously or subsequently called) and any toy vehicle,

2    character, or any portion thereof that is now or has ever been known as, or sold, offered

3    for sale, licensed, offered for license or marketed under, the name or term "Alienracers"

4    or any derivative thereof (whether in whole or in part and regardless of what such toy is

5    or has been also, previously or subsequently called), and all prototypes, models,

6    samples and versions of such EMBODIMENT, toy vehicle, character, or any portion

7    thereof; (ii) any playset and accessory that YOU distribute under the name

8    "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product

9    packaging, advertisements, promotional materials or other thing or item or material

10   manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11   distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12   for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative

13   thereof.

14       24.   "CONTESTED MATTEL PRODUCTS" means the CONTESTED

15   MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY

16   SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING

17   HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED

18   MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL

19   ACCELERACERS PRODUCTS, and any other MATTEL doll, product, toy,

20   packaging, advertisement or other matter that, in whole or in part, provides a basis for

21   any claim or defense by YOU against MATTEL.

22       25.   "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

23   means any of the following that provides a basis for any claim by YOU against

24   MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene" or

25   any derivative thereof (whether in whole or in part and regardless of what such

26   EMBODIMENT or project is or has been also, previously or subsequently called) and

27   any doll or any portion thereof that is now or has ever been known as, or sold, offered

28   for sale, licensed, offered for license or marketed under, the name or term "My Scene"

1  or any derivative thereof (whether in whole or in part and regardless of what such doll

2  is or has been also, previously or subsequently called), and all prototypes, models,

3  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

4  playset and accessory that MATTEL distributes under the name "My Scene" or any

5  derivative thereof; and/or (iii) any and all other goods, product packaging,

6  advertisements, promotional materials or other thing or item or material manufactured,

7  produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

8  shipped, imported, exported, licensed, offered for license, sold or offered for sale by

9  MATTEL under the name "My Scene" or any derivative thereof.

10        26.    "CONTESTED MATTEL MY SCENE PETS PRODUCTS" means

11  any of the following that provides a basis for any claim by YOU against MATTEL:

12  (i) any EMBODIMENT or project ever known by the name "My Scene Pets" or any

13  derivative thereof (whether in whole or in part and regardless of what such

14  EMBODIMENT or project is or has been also, previously or subsequently called) and

15  any toy pet or any portion thereof that is now or has ever been known as, or sold,

16  offered for sale, licensed, offered for license or marketed under, the name or term "My

17  Scene" or any derivative thereof (whether in whole or in part and regardless of what

18  such toy pet is or has been also, previously or subsequently called), and all prototypes,

19  models, samples and versions of such EMBODIMENT, toy pet or any portion thereof;

20  (ii) any playset and accessory that MATTEL distributes under the name "My Scene

21  Pets" or any derivative thereof; and/or (iii) any and all other goods, product packaging,

22  advertisements, promotional materials or other thing or item or material manufactured,

23  produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

24  shipped, imported, exported, licensed, offered for license, sold or offered for

25        27.    "CONTESTED MATTEL MY SCENE STYLING HEAD" means

26  any of the following that provides a basis for any claim by YOU against MATTEL:

27  (i) any EMBODIMENT or project ever known by the name "My Scene Styling Head"

28  or any derivative thereof (whether in whole or in part and regardless of what such

Exhibit __9__,
P. _120_

-10-

FOURTH NOTICE OF DEPOSITION OF MGA

1  EMBODIMENT or project is or has been also, previously or subsequently called) and

2  any styling head or any portion thereof that is now or has ever been known as, or sold,

3  offered for sale, licensed, offered for license or marketed under, the name or term "My

4  Scene" or any derivative thereof (whether in whole or in part and regardless of what

5  such styling head is or has been also, previously or subsequently called), and all

6  prototypes, models, samples and versions of such EMBODIMENT, styling head or any

7  portion thereof; (ii) any accessory that MATTEL distributes under the name "My Scene

8  Styling Head" or any derivative thereof; and/or (iii) any and all other goods, product

9  packaging, advertisements, promotional materials or other thing or item or material

10 manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11 distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12 for sale by MATTEL under the name "My Scene Styling Head" or any derivative

13 thereof.

14       28.   "CONTESTED MATTEL WEE-3 PRODUCTS" means any of the

15 following that provides a basis for any claim by YOU against MATTEL:  (i) any

16 EMBODIMENT or project ever known by the name "Wee-3" or any derivative thereof

17 (whether in whole or in part and regardless of what such EMBODIMENT or project is

18 or has been also, previously or subsequently called) and any doll or any portion thereof

19 that is now or has ever been known as, or sold, offered for sale, licensed, offered for

20 license or marketed under, the name or term "Wee-3" or any derivative thereof

21 (whether in whole or in part and regardless of what such doll is or has been also,

22 previously or subsequently called), and all prototypes, models, samples and versions of

23 such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that

24 MATTEL distributes under the name "Wee-3" or any derivative thereof; and/or (iii) any

25 and all other goods, product packaging, advertisements, promotional materials or other

26 thing or item or material manufactured, produced, printed, ordered, marketed,

27 advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

28

Exhibit _7_,
P. _121_

-11-

FOURTH NOTICE OF DEPOSITION OF MGA

1 │ offered for license, sold or offered for sale by MATTEL under the name "Wee-3" or

2 │ any derivative thereof.

3 │         29.   "CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS"

4 │ means any of the following that provides a basis for any claim by YOU against

5 │ MATTEL:  (i) any EMBODIMENT or project ever known by the name "Little

6 │ Mommy" or any derivative thereof (whether in whole or in part and regardless of what

7 │ such EMBODIMENT or project is or has been also, previously or subsequently called)

8 │ and any doll or any portion thereof that is now or has ever been known as, or sold,

9 │ offered for sale, licensed, offered for license or marketed under, the name or term

10 │ "Little Mommy" or any derivative thereof (whether in whole or in part and regardless

11 │ of what such doll is or has been also, previously or subsequently called), and all

12 │ prototypes, models, samples and versions of such EMBODIMENT, doll or any portion

13 │ thereof; (ii) any playset and accessory that MATTEL distributes under the name "Little

14 │ Mommy" or any derivative thereof; and/or (iii) any and all other goods, product

15 │ packaging, advertisements, promotional materials or other thing or item or material

16 │ manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

17 │ distributed, shipped, imported, exported, licensed, offered for license, sold or offered

18 │ for sale by MATTEL under the name "Little Mommy" or any derivative thereof.

19 │         30.   "CONTESTED MATTEL ACCELERACERS PRODUCTS" means

20 │ any of the following that provides a basis for any claim by YOU against MATTEL:

21 │ (i) any EMBODIMENT or project ever known by the name "AcceleRacers" or any

22 │ derivative thereof (whether in whole or in part and regardless of what such

23 │ EMBODIMENT or project is or has been also, previously or subsequently called) and

24 │ any toy vehicle, character, or any portion thereof that is now or has ever been known as,

25 │ or sold, offered for sale, licensed, offered for license or marketed under, the name or

26 │ term "AcceleRacers" or any derivative thereof (whether in whole or in part and

27 │ regardless of what such toy is or has been also, previously or subsequently called), and

28 │ all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

1 | character, or any portion thereof; (ii) any playset and accessory that MATTEL
2 | distributes under the name "AcceleRacers" or any derivative thereof ; and/or (iii) any
3 | and all other goods, product packaging, advertisements, promotional materials or other
4 | thing or item or material manufactured, produced, printed, ordered, marketed,
5 | advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,
6 | offered for license, sold or offered for sale by MATTEL under the name
7 | "AcceleRacers" or any derivative thereof.

8 |       31.   "FORMER MATTEL EMPLOYEES" means any former Mattel
9 | employee who left MATTEL to join YOU, including but not limited to Janine Brisbois,
10 | Ron Brawer, Jorge Castilla, Nic Contreras, Dan Cooney, Carlos Gustavo Machado,
11 | Mariana Trueba Almada, Pablo Vargas San Jose and Shirin Salemnia.

12 |       32.   "COMPLAINT" means the Complaint for False Designation of
13 | Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair
14 | Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 et seq. and
15 | California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code
16 | § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or
17 | about April 13, 2005.

18 |       33.   The singular form of a noun or pronoun includes within its meaning
19 | the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine
20 | form of a pronoun also includes within its meaning the feminine form of the pronoun so
21 | used, and *vice versa*; the use of any tense of any verb includes also within its meaning
22 | all other tenses of the verb so used, whenever such construction results in a broader
23 | request for information; and "and" includes "or" and *vice versa*, whenever such
24 | construction results in a broader disclosure of documents or information.

25 |
26 | **Topics of Examination**

27 |       1.   The invention, creation, origin, conception, authorship, design and
28 | development of the CONTESTED MGA PRODUCTS, including without limitation the

1   circumstances under which and the date(s) on which each occurred and the IDENTITY
2   and role(s) of each PERSON involved.
3          2.     Any revisions, modifications or changes made to any of the
4   CONTESTED MGA PRODUCTS, including without limitation any proposed
5   alternatives, modifications or changes (whether or not implemented) to such
6   CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications
7   or changes were made or proposed and the reasons for their implementation or non-
8   implementation.
9          3.     The development of YOUR 2005 product line, including the
10  IDENTITY of each PERSON who participated in the decision making leading up to
11  YOUR 2005 product line and any changes or modifications thereto, and the invention,
12  creation, origin, conception, authorship, design, development, manufacture, distribution
13  and sale of products therein.
14         4.     The development of YOUR 2006 product line, including the
15  IDENTITY of each PERSON who participated in the decision making leading up to
16  YOUR 2005 product line and any changes or modifications thereto, and the invention,
17  creation, origin, conception, authorship, design, development, manufacture, distribution
18  and sale of products therein.
19         5.     The    content,    meaning,    authenticity    and    source    of
20  COMMUNICATIONS, advertisements, and/or promotional statements that provide a
21  basis for any claim by YOU against MATTEL.
22         6.     COMMUNICATIONS between YOU and any PERSON, including
23  without limitation any retailer or distributor, that REFER OR RELATE TO the
24  CONTESTED MATTEL PRODUCTS.
25         7.     The first date of manufacture, shipment and availability for
26  distribution and retail sale of each of the CONTESTED MGA PRODUCTS.
27
28
                              Exhibit _7_,
                              P. _123_

07209/2254636.1

                                  -14-

                                          FOURTH NOTICE OF DEPOSITION OF MGA

8.     The first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form, and the IDENTITY of each PERSON involved therein.

9.     The sculptures, including all preliminary sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS.

10.     The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.

11.     The marketing, advertising, promotion and licensing of the CONTESTED MGA PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including the identity of the channels in which such have been or are disseminated or distributed.

12.     The ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

13.     Any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA PRODUCTS, including but not limited to all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits, correspondence, notes and other DOCUMENTS relating thereto.

14.     The display, exhibition, publication, circulation, or other dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers, licensees, the media, or the public, including but not limited to toy and trade shows and conventions and the date(s) on which such occurred.

15.   YOUR expenditures in advertising or promoting the CONTESTED MGA PRODUCTS, including by year and by medium.

16.   Any contracts or licenses entered into, negotiated, proposed, or requested RELATING TO any of the CONTESTED MGA PRODUCTS.

17.   The target market or potential target market, and the demographics of any actual, potential or prospective consumers, customers, purchasers or licensees of the CONTESTED MGA PRODUCTS.

18.   The number of units of the CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in inventory, imported, exported, shipped, sold, or offered for sale by any PERSON, including but not limited to YOU.

19.   YOUR revenues, costs and profits for each of the CONTESTED MGA PRODUCTS, including but not limited to YOUR per-unit cost, and YOUR gross, incremental and net profits for each of the CONTESTED MGA PRODUCTS.

20.   Any complaints or dissatisfaction concerning the CONTESTED MGA PRODUCTS, including but not limited to the returns of, or the number of or rate of defects for, such products.

21.   Any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

22.   Any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS that you are aware of, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

23. Any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS, included but not limited to YOUR knowledge of the reasons why consumers purchase any of the CONTESTED MGA PRODUCTS or any of the CONTESTED MATTEL PRODUCTS.

24. Marketing studies, marketing plans, sales plans, sales forecasts, strategies and analyses that REFER OR RELATE TO THE CONTESTED MATTEL PRODUCTS.

25. MATTEL's alleged copying, infringement or dilution of the CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof.

26. To the extent not disclosed in response to any other Topic, all other facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.

27. COMMUNICATIONS between YOU and MATTEL RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

28. Any damage, loss, injury or unjust enrichment that YOU claim has been sustained by reason of any act or omission by MATTEL, including but not limited to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue, price erosion, or consequential or incidental damage, including but not limited to the causation for any such alleged unjust enrichment, damage, loss, or injury and the amounts of all such damage, loss, injury or unjust enrichment.

29. When, and under what circumstances, YOU became aware that Mattel had created, designed, developed, sold, offered for sale or licensed the CONTESTED MATTEL PRODUCTS.

30. The copying, reproduction or use of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf since January 1, 1999.

Exhibit  9 ,
P. 126

07209/2254636.1

-17-

FOURTH NOTICE OF DEPOSITION OF MGA

1    31.    Any similarity or dissimilarity between any of the CONTESTED

2  MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

3    32.    The hiring, engagement, or retention by YOU of any current or

4  former MATTEL employee or contractor since January 1, 1999, including but not

5  limited to the terms of all employment agreements and agreements RELATING TO

6  confidentiality or the invention, authorship, or ownership of any concept or product.

7    33.    YOUR receipt, reproduction, copying, storage, transmission,

8  transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or

9  information, including but not limited to any compilation of information, that was

10  prepared, made, created, generated, assembled or compiled by or for MATTEL and that

11  was not publicly available at the time of YOUR receipt of such DOCUMENT, data

12  and/or information.

13    34.    YOUR knowledge of any MATTEL product prior to the time that

14  such product had been announced or disclosed by MATTEL to retailers or the public,

15  including but not limited to the CONTESTED MATTEL PRODUCTS.

16    35.    YOUR receipt, reproduction, copying, storage, transmission,

17  transfer, retention, destruction, deletion or use of any MATTEL line list or other

18  DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,

19  design or development phase.

20    36.    The search and seizure of DOCUMENTS by Mexican authorities

21  from MGA's office in Mexico City, Mexico, and all COMMUNICATIONS that

22  REFER OR RELATE thereto.

23    37.    All payments of money or any item of value made by YOU, directly

24  or indirectly, or offered, proposed, promised, requested or solicited by or from YOU,

25  directly or indirectly, in connection criminal proceedings or potential or prospective

26  criminal proceedings against YOU or any of YOUR employees, including without

27  limitation Gustavo Machado, and including without limitation YOUR payment or

28  reimbursement of legal fees for or on behalf of any PERSON.

1    38.    COMMUNICATIONS between YOU and any PERSON
2  RELATING TO the resignation or departure of any FORMER MATTEL
3  EMPLOYEES from Mattel.

4    39.    The compensation, money or any other item of value paid to any
5  FORMER MATTEL EMPLOYEE, whether directly or indirectly, by YOU.

6    40.    The identity of DOCUMENTS RELATING TO any MATTEL
7  product or plan that any FORMER MATTEL EMPLOYEE provide or disclosed to or
8  shared with YOU, directly or indirectly.

9    41.    COMMUNICATIONS with any PERSON, RELATING TO YOUR
10 receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,
11 deletion or use of any DOCUMENTS, data and/or information, including but not
12 limited to any compilation of information, that was prepared, made, created, generated,
13 assembled or compiled by or for MATTEL and that YOU received, directly or
14 indirectly, from any FORMER MATTEL EMPLOYEE.

15   42.    The content, authenticity, accuracy and meaning of each personnel
16 file maintained or created by YOU RELATING TO any FORMER MATTEL
17 EMPLOYEE.

18   43.    COMMUNICATIONS between YOU and Pablo Vargas San Jose
19 prior to April 20, 2004.

20   44.    COMMUNICATIONS between YOU and Janine Brisbois prior to
21 September 27, 2005.

22   45.    COMMUNICATIONS between YOU and Ron Brawer prior to
23 October 2, 2004.

24   46.    COMMUNICATIONS between YOU and Carlos Gustavo Machado
25 Gomez ("Machado") prior to April 20, 2004.

26   47.    COMMUNICATIONS between YOU and Mariana Trueba Almada
27 ("Trueba") prior to April 20, 2004.

28

Exhibit _9_ ,
P. _128_

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

1         48.    The existence or extent of competition or substitution between any

2  of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL

3  PRODUCTS.

4         49.    The factual basis for YOUR claim that any of the CONTESTED

5  MGA PRODUCTS have acquired secondary meaning or are famous.

6         50.    The factual basis for YOUR claim that any of MATTEL's actions

7  have caused actual dilution.

8         51.    Mattel's alleged intimidation, coercion or threats to retailers,

9  licensees, suppliers and others in the industry."

10        52.    The factual basis for YOUR claim that Mattel "serially imitated and

11  copy-catted [*sic*] the look of MGA products, trade dress, trademarks, themes, ideas,

12  advertising and packaging."

13        53.    The basis for YOUR claim that the Bratz dolls launched in 2001

14  were "unique and distinctive."

15        54.    The identification of YOUR alleged trade dress in connection with

16  the CONTESTED MGA PRODUCTS, including without limitation with respect to

17  "themes," and the factual bases for YOUR claim that YOU have any legally protected

18  interest in such trade dress.

19        55.    The factual basis for YOUR allegation that advertising executives

20  have expressed concern about "Bratz" and Mattel's "My Scene," what concerns they

21  expressed and the IDENTITY of each such executive.

22        56.    The factual basis for YOUR allegation that the press confused

23  YOUR products with MATTEL products and "has taken notice" of alleged confusion

24  between "Bratz" and "My Scene."

25        57.    All COMMUNICATIONS relating to customers who have allegedly

26  contacted YOU to purchase Mattel's "My Scene" dolls or any of the CONTESTED

27  MATTEL PRODUCTS.

28

Exhibit _7_ ,
P. _129_

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

1    58.    The factual basis for YOUR claim that MATTEL has infringed,

2    diluted or otherwise violated any trade dress that YOU contend YOU own in the

3    CONTESTED MGA PRODUCTS.

4    59.    The factual basis for YOUR claim that MATTEL has engaged in

5    "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

6    60.    COMMUNICATIONS   between   YOU   and   any   PERSON

7    RELATING TO the departure from MATTEL of any current or FORMER MATTEL

8    EMPLOYEE or MATTEL contractor.

9    61.    COMMUNICATIONS   between   YOU   and   any   PERSON

10   RELATING TO the obligations to MATTEL, including the duty of confidentiality, of

11   any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

12   62.    COMMUNICATIONS between YOU and any current or FORMER

13   MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of

14   any idea, concept, design, or product.

15   63.    COMMUNICATIONS   between   YOU   and   any   PERSON

16   RELATING TO the retention, destruction, transfer, or use of any information or

17   DOCUMENTS known to or possessed by any current or former MATTEL employee or

18   contractor.

19   64.    Mattel's alleged "warnings," "threats" or "intimidation" that are the

20   subject of YOUR claims, including but not limited to all COMMUNICATIONS with

21   any present or former licensees of MATTEL and any present or former distributors and

22   retailers of MGA and MATTEL products.

23   65.    MATTEL's alleged responsibility for "shortage of doll hair in

24   October 2002."

25   66.    MATTEL's alleged "manipulation of the retail market," including by

26   its alleged tampering with MGA's retail displays.

27   67.    MATTEL's alleged false statements about YOU or YOUR business

28   practices.

Exhibit _9_,
P. _130_

-21-

07209/2254636.1

1      68.    MATTEL's alleged violation of any rules or restrictions relating to

2 data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

3      69.    COMMUNICATIONS between YOU and NPD, other than periodic

4 reports transmitted by NPD or information made available to YOU by NPD, between

5 January 1, 2000 and the present.

6      70.    YOUR contracts and agreements with NPD since January 1, 1999,

7 including without limitation any allegation by NPD that YOU were or have been in

8 breach or violation thereof.

9      71.    The status of YOUR NPD subscription between January 1, 1999 and

10 the present.

11      72.    MATTEL's alleged inducement of CARU to place onerous

12 restrictions on MGA advertisements, and require MGA to amend aspects of

13 commercials that have gone unchallenged in other parties' commercials.

14      73.    COMMUNICATIONS between YOU and CARU between

15 January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA

16 PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or

17 matter that YOU are relying upon in this ACTION.

18      74.    MATTEL's allegedly improper influence with or within TIA,

19 including but not limited to the procedures for and manner in which the Toy of the Year

20 was selected for 2003.

21      75.    YOUR COMMUNICATIONS with TIA RELATING TO Toy of the

22 Year since January 1, 2000 or any other subject or matter on which YOU base any

23 claim.

24      76.    MATTEL's purported power, influence and intimidation to threaten

25 retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to

26 limit or prevent MGA from doing business.

27      77.    MATTEL's alleged intimidation of or threats against MGA's current

28 and potential employees.

Exhibit 9 ,
P. 131

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

1    78.    YOUR monthly, quarterly and annual financial reports, including
2    financial statements (both audited and unaudited) for the years 1998 through the
3    present, inclusive.

4    79.    The identity of DOCUMENTS that YOU have reason to believe
5    were created by or originated from MATTEL (excluding MATTEL products that YOU
6    purchased at retail) at any time since January 1, 1998.

7    80.    The destruction of any DOCUMENT RELATING TO the
8    CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

9    81.    COMMUNICATIONS with, or inquiry or investigation by, any
10   government entity, industry organization, safety compliance, or consumer organization
11   RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL
12   PRODUCTS.

13   82.    YOUR understanding or belief of whether the BRYANT/MGA
14   AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and
15   COMMUNICATIONS related thereto.

16   83.    The public perception of the CONTESTED MGA PRODUCTS,
17   including without limitation with respect to the appropriateness or suitability of Bratz
18   for children.

19   84.    The factual basis for YOUR alleged belief that YOU had the right to
20   market products developed as a result of the BRYANT/MGA AGREEMENT and to the
21   lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the
22   execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and
23   COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

24   85.    The factual basis for YOUR contention that YOU believed at the
25   time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for
26   YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the
27   DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU
28   entered into the BRYANT/MGA AGREEMENT.

Exhibit 9 ,
P. 132

-23-

FOURTH NOTICE OF DEPOSITION OF MGA

1       86.    YOUR belief or non-belief that BRYANT created or improved any

2 of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the

3 DOCUMENTS and COMMUNICATIONS YOU so relied upon.

4       87.    Any investigation or inquiry YOU conducted to confirm the timing

5 of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including

6 but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

7       88.    The factual bases for YOUR affirmative defenses.

8       89.    The IDENTITY of all DOCUMENTS that were in the possession of

9 Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver &

10 Hedges LLP at any time prior to January 1, 2007.

11       90.    The factual bases for YOUR allegations in the GLASER LETTER,

12 including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and

13 reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly

14 privileged and confidential.

15       91.    Any services Farhad Larian has provided to YOU since January 1,

16 2005, including any litigation consulting services.

17       92.    The IDENTITY of DOCUMENTS that Farhad Larian was provided

18 with or had access to, including YOUR allegedly privileged and confidential

19 DOCUMENTS, since January 1, 2001.

20       93.    The terms of any contracts or agreements, including any

21 confidentiality agreements, between YOU and Farhad Larian.

22       94.    The identity of each doll, accessory, product, work or item

23 produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or

24 on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative

25 of any BRATZ DESIGN.

26       95.    Except for deposition testimony provided in this ACTION, the

27 testimony, transcripts, declarations, affidavits and other sworn written statements of any

28 other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

Exhibit 9 ,    -24-
P. 133    FOURTH NOTICE OF DEPOSITION OF MGA

1  BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001

2  (regardless of when such testimony or sworn statement was taken, given, signed, made

3  or filed).

4      96.    The authenticity, content, timing, meaning, and truth and accuracy

5  of YOUR COMMUNICATIONS with any PERSON, including without limitation any

6  retailer and the media, that REFER OR RELATE TO the National Labor Committee

7  dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz"

8  or the Hau Tai K4 factory.

9      97.    The identity of each doll, product, packaging or other matter that

10 YOU have accused of infringing, diluting or otherwise violating YOUR purported

11 rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each

12 manufacturer of each doll, product, packaging or other matter and the specific aspects

13 of each such doll, product, packaging or other matter that YOU have claimed was

14 confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

15     98.    The identity, and outcome and resolution, of each lawsuit that YOU

16 have brought or cease and desist letter YOU have sent each doll, product, packaging or

17 other matter that YOU have accused of infringing, diluting or otherwise violating

18 YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

19     99.    The job responsibilities of each FORMER MATTEL EMPLOYEE

20 in the first six months after each joined MGA.

21     100.   YOUR scheduling, planning, inventory, shipping, distribution or

22 forecasting software since January 1, 2005, including but not limited to any and all

23 changes, improvements, acquisitions, upgrades and purchases.

24     101.   DOCUMENTS created by each of the FORMER MATTEL

25 EMPLOYEES in the first six months after each joined MGA

26     102.   The make-up, source, calculation and purpose of the amounts

27 presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and

28 MGA 08185789 (Exhibit 662).

Exhibit _9_,
P. _133A_

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On January 9, 2008, I served true copies of the following documents described as:

**1.  FOURTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

**2.  NOTICE OF DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>  Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071<br>Telephone:  213.687.5000<br>Facsimile:  213.687.5600 | **Attorneys for *MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Isaac Larian and MGAE de Mexico, S.R.L. de C.V.*** |
| Overland Borenstein Scheper & Kim, LLP<br>  Mark E. Overland, Esq.<br>  David C. Scheper, Esq.<br>  Alexander H. Cote, Esq.<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071<br>Telephone:  213.613.4655<br>Facsimile:  213.613.4656 | **Attorneys for *Carlos Gustavo Machado Gomez*** |

[√]   **[PERSONAL]** by personally delivering the document listed above to the person(s) at the address(es) set forth above.

Exhibit  *9* ,
P. *134*

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

1  I declare that I am employed in the office of a member of the bar of this court at

2  whose direction the service was made

3      Executed on January 9, 2008, at Los Angeles, California.

4

5

6      David Quintana

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit** _9_ ,
**P.** _135_

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On January 9, 2008, I served true copies of the following documents described as:

**1. FOURTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

**2. NOTICE OF DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

on the parties in this action as follows:

| | |
|---|---|
| Keker & Van Nest, LLP<br>  John W. Keker, Esq.<br>  Michael H. Page, Esq.<br>  Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111<br>Telephone: 415.391.5400<br>Facsimile: 415.397.7188 | **Attorneys for *Carter Bryant*** |

[√]    **[MAIL]** As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business, addressed as set forth below.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Exhibit  9 ,
P. 136

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

1     I declare that I am employed in the office of a member of the bar of this court

2 at whose direction the service was made

3     Executed on January 9, 2008, at Los Angeles, California.

Tiffany Garcia

Exhibit 5 ,
P. 137

# Exhibit 10



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
   (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
   (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
   (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>NOTICE OF DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| AND CONSOLIDATED ACTIONS | |

Exhibit _15_,
P. _138_

07975/2280277.2

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on January 23, 2008 beginning at

3  9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of

4  defendant MGAE de Mexico, S.R.L. de C.V. at the offices of Quinn Emanuel

5  Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles,

6  CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGAE de Mexico, S.R.L. de C.V.

7  shall designate one or more officers, directors, managing agents or other persons

8  who consent to testify on its behalf concerning each of the topics set forth in

9  Exhibit A hereto.

10       PLEASE TAKE FURTHER NOTICE that the deposition will take

11  place before a duly authorized notary public or other officer authorized to administer

12  oaths at depositions, and will continue from day to day, Sundays, Saturdays and

13  legal holidays excepted, until completed.

14       PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

15  P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

16  Livenote or other technology for real-time transcription of the testimony.

17

18  DATED:  January 9, 2008      QUINN EMANUEL URQUHART OLIVER &
                      HEDGES, LLP

19

20                        By _____

21                          Michael T. Zeller
                        Attorneys for Mattel, Inc.

22

23

24

25

26

27

28                Exhibit 10 ,
              P. 139

-1-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

# **EXHIBIT A**

1.      "YOU," "YOUR" or "MGA" means MGAE de Mexico, S.R.L. de C.V., any of its current or former employees (including but not limited to MACHADO, TRUEBA and VARGAS) , officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

3.      "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

07975/2280277.2

Exhibit _16_ ,
P. _140_

-2-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1        4.    "DESIGN" or "DESIGNS" means any and all representations,

2    whether two-dimensional or three-dimensional, and whether in tangible, digital,

3    electronic or other form, including but not limited to all works, designs, artwork,

4    sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

5    diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

6    practice, developments, inventions and/or improvements, as well as all other items,

7    things and DOCUMENTS in which any of the foregoing are or have been

8    expressed, embodied, contained, fixed or reflected in any manner, whether in whole

9    or in part.

10        5.    "BRATZ DOLL" means any doll that is or has ever been

11    distributed, marketed, sold or offered for sale under the name "Bratz" or as part of

12    the "Bratz" line.

13        6.    "BRATZ PRODUCT" means any product, whether two-

14    dimensional or three-dimensional, and whether in tangible, digital, electronic or

15    other form: (i) that is or has ever been distributed, marketed or sold under the name

16    "Bratz" or as part of the "Bratz" line; (ii) depicts, incorporates, embodies, consists of

17    or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been

18    distributed, marketed or sold in any packaging that includes the name "Bratz" or

19    depicts, incorporates, embodies, consists of or REFERS OR RELATES TO

20    BRATZ.

21        7.    "BRATZ LICENSE" means any license that REFERS OR

22    RELATES TO any BRATZ PRODUCT.

23        8.    "SYSTEM" or "SYSTEMS" means any computer or network of

24    computers or other network devices that allow a two or more computers to share

25    information and equipment, including but not limited to local area networks, wide area

26    networks, storage area networks, client-server networks or peer-to-peer networks. The

27    use of the term "SYSTEM" or "SYSTEMS" also includes the brand, model number,

28     

Exhibit 16 ,
P. 141
-3-

1   technical specifications, and capacities of the computers who are part of each such
2   SYSTEM.

3       9.      "DIGITAL INFORMATION" means any information created or
4   stored digitally, including but not limited to electronically, magnetically or optically.

5       10.     "ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-
6   9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated
7   therewith.

8       11.     "IDENTITY" means the following:

9            (a)   with reference to an individual or individuals, means to
10  state, fully and separately as to each, such individual's full name, any known
11  business title, current or last known business affiliation, current or last known
12  residential address, current or last known business address, current or last known
13  relationship to MGA, and current or last known telephone number.

14           (b)   with reference to an entity or entities, means to state, fully
15  and separately as to each, such entity's full name, state (or country) of incorporation
16  or organization, present or last known address, and present or last known telephone
17  number.

18           (c)   with reference to any other DOCUMENT or
19  DOCUMENTS, means to describe each DOCUMENT by Bates number.  In the
20  event that a DOCUMENT does not have a Bates number, IDENTITY means, with
21  respect to each such DOCUMENT, to provide a complete description of it such that
22  it may be the subject of a request for the production of documents, including by
23  stating the date, IDENTITY of the author, addressee(s), signatories, parties, or other
24  PERSONS identified therein, its present location or custodian and a description of
25  its contents.

26      12.     "RELATING TO" or "REFERS OR RELATES TO" means
27  constituting, embodying, containing, referring to, commenting on, evidencing,
28  regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to,

Exhibit 10 ,
P. 142

-4-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1    concerning, supporting, contradicting, negating, revoking or otherwise relating to in

2    any manner.

3            13.    "COMMUNICATION," in the plural as well as the singular,

4    means any transmittal and/or receipt of information, whether such was oral or

5    written, and whether such was by chance, prearranged, formal or informal, and

6    specifically includes, but is not limited to, conversations in person, telephone

7    conversations, electronic mail (including instant messages and text messages),

8    voicemail, letters, memoranda, statements, media releases, magazine and newspaper

9    articles, and video and audio transmissions.

10           14.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS"

11    as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and

12    Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all

13    writings and records of every type and description including, but not limited to,

14    contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic

15    mail ("e-mail"), records of telephone conversations, handwritten and typewritten

16    notes of any kind, statements, reports, minutes, recordings, transcripts and

17    summaries of meetings, voice recordings, pictures, photographs, drawings,

18    computer cards, tapes, discs, printouts and records of all types, studies, instruction

19    manuals, policy manuals and statements, books, pamphlets, invoices, canceled

20    checks and every other device or medium by which or through which information of

21    any type is transmitted, recorded or preserved.  Without any limitation on the

22    foregoing, the term "DOCUMENT" shall include all copies that differ in any respect

23    from the original or other versions of the DOCUMENT, including, but not limited

24    to, all drafts and all copies of such drafts or originals containing initials, comments,

25    notations, insertions, corrections, marginal notes, amendments or any other variation

26    of any kind.

27           15.    "PERSON" or "PERSONS" means all natural persons,

28    partnerships, corporations, joint ventures and any kind of business, legal or public

07975/2280277.2

Exhibit 10,
P. 142

-5-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  entity or organization, as well as its, his or her agents, representatives, employees,

2  officers and directors and any one else acting on its, his or her behalf, pursuant to

3  its, his or her authority or subject to its, his or her control.

4      16.   "LARIAN" means Isaac Larian, and all of his past or present

5  employees, officers, agents, representatives, attorneys, consultants, independent

6  contractors, any predecessors or successors in interest, and any other PERSON

7  acting on his behalf, pursuant to his authority or subject to his control.

8      17.   "MACHADO" means Carlos Gustavo Machado Gomez, and all

9  of his current or former employees, agents, representatives, attorneys, accountants,

10  vendors, consultants, independent contractors, predecessors-in-interest and

11  successors-in-interest, and any other PERSON acting on his behalf, pursuant to his

12  authority or subject to his control.

13      18.   "TRUEBA" means Mariana Trueba Almada, and all of her

14  current or former employees, agents, representatives, attorneys, accountants,

15  vendors, consultants, independent contractors, predecessors-in-interest and

16  successors-in-interest, and any other PERSON acting on her behalf, pursuant to her

17  authority or subject to her control.

18      19.   "VARGAS" means Pablo Vargas San Jose, and all of his current

19  or former employees, agents, representatives, attorneys, accountants, vendors,

20  consultants, independent contractors, predecessors-in-interest and successors-in-

21  interest, and any other PERSON acting on his behalf, pursuant to his authority or

22  subject to his control.

23      20.   "FORMER MATTEL EMPLOYEES" means any former

24  MATTEL employee who left MATTEL to join YOU, including but not limited to

25  MACHADO, TRUEBA and VARGAS.

26      21.   The singular form of a noun or pronoun includes within its

27  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of

28  the masculine form of a pronoun also includes within its meaning the feminine form

07975/2280277.2

Exhibit _10_,
P. _144_

-6-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  of the pronoun so used, and *vice versa*; the use of any tense of any verb includes
2  also within its meaning all other tenses of the verb so used, whenever such
3  construction results in a broader request for information; and "and" includes "or"
4  and *vice versa*, whenever such construction results in a broader disclosure of
5  documents or information.

6  ### Topics of Examination

7      1.    YOUR knowledge of any MATTEL product prior to the time
8  that such product had been announced or disclosed by MATTEL to retailers or the
9  public.

10     2.    YOUR receipt, reproduction, copying, storage, transmission,
11  transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or
12  information, including but not limited to any compilation of information, that was
13  prepared, made, created, generated, assembled or compiled by or for MATTEL and
14  that was not publicly available at the time of YOUR receipt of such DOCUMENT,
15  data and/or information.

16     3.    YOUR receipt, reproduction, copying, storage, transmission,
17  transfer, retention, destruction, deletion or use of any MATTEL line list or other
18  DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,
19  design or development phase.

20     4.    The hiring, engagement or retention by YOU of any current or
21  former MATTEL employee or contractor, including but not limited to the terms of
22  all employment agreements and agreements RELATING TO confidentiality or the
23  invention, authorship, or ownership of any concept or product.

24     5.    The seizure of DOCUMENTS by Mexican authorities from
25  YOUR office in Mexico City, Mexico, including but not limited to the IDENTITY
26  of such DOCUMENTS and YOUR PRESERVATION of any MATTEL authored
27  DOCUMENT after the execution of the search warrant by Mexican authorities.

28

Exhibit _10_ ,
P. _145_

07975/2280277.2

-7-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1       6.    COMMUNICATIONS RELATING TO the search of YOUR

2  office in Mexico City, Mexico that was conducted by Mexican authorities.

3       7.    The IDENTITY of all DOCUMENTS received by YOU, directly

4  or indirectly, from any FORMER MATTEL EMPLOYEE authored by or for the

5  benefit of MATTEL, or RELATING TO MATTEL or any MATTEL product, plan,

6  client, customer, current or former MATTEL employee, sales, advertising,

7  marketing, analysis, tool or procedure.

8       8.    COMMUNICATIONS with any PERSON RELATING TO

9  YOUR receipt, reproduction, copying, storage, transmission, transfer, retention,

10  destruction, deletion or use of any DOCUMENTS, data and/or information,

11  including but not limited to any compilation of information, that was prepared,

12  made, created, generated, assembled or compiled by or for MATTEL and that YOU

13  received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

14       9.    COMMUNICATIONS between YOU and any of the FORMER

15  MATTEL EMPLOYEES prior to April 20, 2004, including without limitation any

16  and all DOCUMENTS any of the FORMER MATTEL EMPLOYEES transmitted

17  to or shared with YOU prior to April 20, 2004.

18       10.   COMMUNICATIONS between YOU and any of the FORMER

19  MATTEL EMPLOYEES RELATING TO MATTEL or any MATTEL product,

20  potential product, business plan, line list, DOCUMENT or pricing.

21       11.   COMMUNICATIONS between any of the FORMER MATTEL

22  EMPLOYEES and LARIAN, Thomas Park and/or Susanna Kuemmerle prior to

23  April 20, 2004.

24       12.   Travel to Los Angeles, California by any of the FORMER

25  MATTEL EMPLOYEES between January 1, 2004 and April 20, 2004.

26       13.   The content, meaning and authenticity of e-mail messages,

27  including attachments and metadata, sent from or received by YOU to or from the e-

28  mail address <plot04@aol.com>.    **Exhibit** 10 ,

                                             **P.** 146

-8-

1        14.    The content, meaning and authenticity of e-mail messages,

2  including attachments and metadata, sent from or received at the e-mail address

3  <argentrade@aol.com> to or from the e-mail address <plot04@aol.com>.

4        15.    The content, meaning and authenticity of e-mail messages,

5  including attachments and metadata, sent from or received at the e-mail address

6  <argentrade@aol.com> to or from any of the FORMER MATTEL EMPLOYEES.

7        16.    COMMUNICATIONS RELATING TO YOUR market planning

8  and product development RELATING TO the toy market in Mexico prepared,

9  created, sent or transmitted, whether in whole or in part, by MACHADO, TRUEBA

10  and/or VARGAS at any time prior to April 30, 2005.

11        17.    COMMUNICATIONS between YOU and any PERSON

12  RELATING TO the departure or resignation from MATTEL of any current or

13  FORMER MATTEL EMPLOYEE or MATTEL contractor.

14        18.    The job responsibilities of each FORMER MATTEL

15  EMPLOYEE in the first six months after each joined MGA.

16        19.    The content, meaning and authenticity of each personnel file

17  maintained or created by YOU RELATING TO any FORMER MATTEL

18  EMPLOYEE.

19        20.    Any and all agreements between YOU and any of the FORMER

20  MATTEL EMPLOYEES, including all drafts of such agreements and

21  COMMUNICATIONS related thereto.

22        21.    Compensation, money or any other item of value paid by YOU

23  to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, or paid to

24  any PERSON for the benefit of or RELATING TO any FORMER MATTEL

25  EMPLOYEE.

26        22.    Any promotions, raises, bonuses, monetary incentives, payments,

27  awards, transfers, warnings, admonishment, discipline, reprimands, demotions or

28

Exhibit _16_ ,
P. _147_

-9-

07975/2280277.2

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1   terminations of or received by any of the FORMER MATTEL EMPLOYEES while

2   employed by YOU.

3         23.   Any agreements, contracts, offers, promises, proposals or requests

4   RELATING TO the indemnification of or by any of the FORMER MATTEL

5   EMPLOYEES or the payment of legal fees by or for any of the FORMER MATTEL

6   EMPLOYEES.

7         24.   COMMUNICATIONS between YOU and any PERSON

8   RELATING TO the obligations to MATTEL, including the duty of confidentiality,

9   of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

10        25.   COMMUNICATIONS between YOU and any current or

11  FORMER MATTEL EMPLOYEE or MATTEL contractor RELATING TO the

12  ownership of, or any right, title or interest in, any idea, concept, design, or product.

13        26.   COMMUNICATIONS between YOU and any PERSON

14  RELATING TO the retention, destruction, transfer, or use of any information or

15  DOCUMENTS known to or possessed by any current or former MATTEL

16  employee or contractor.

17        27.   The IDENTITY of DOCUMENTS that YOU have reason to

18  believe were created by or originated from MATTEL, other than MATTEL products

19  that YOU purchased at retail at any time since January 1, 2004.

20        28.   The development of MGA's 2005 product line, including the

21  IDENTITY of each person who participated in the decision making leading up to

22  such product line.

23        29.   The development of MGA's 2006 product line, including the

24  IDENTITY of each person who participated in the decision making leading up to

25  such product line.

26        30.   Any warning, admonition, discipline or other adverse

27  employment action by YOU RELATING TO any of YOUR current or former

28

Exhibit 10 ,
P. 148

-10-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

07975/2280277.2

1   employees for using a competitor's confidential or proprietary information, trade

2   secrets or intellectual property.

3       31.   YOUR policies or procedures regarding the use or prohibition of

4   use of a competitor's confidential or proprietary information, trade secrets or

5   intellectual property.

6       32.   YOUR efforts to maintain the secrecy of YOUR claimed trade

7   secrets and the date YOU started such efforts.

8       33.   Any failures to comply with YOUR efforts to maintain the

9   secrecy of YOUR trade secrets, and any violations of YOUR policies or procedures

10   with respect to the maintenance of the secrecy of YOUR trade secrets.

11       34.   The IDENTITY of each individual who has failed to comply with or

12   violated YOUR policies and procedures to maintain the secrecy of YOUR trade secrets.

13       35.   Any alleged failures of MATTEL to maintain the secrecy of its trade

14   secrets.

15       36.   COMMUNICATIONS between YOU and any individual while

16   the individual was employed by MATTEL.

17       37.   The factual bases for YOUR affirmative defenses.

18       38.   The product name, product number and SKU of each BRATZ

19   PRODUCT, including without limitation each BRATZ DOLL, sold by YOU or

20   YOUR licensees, and the number of units of each sold by YOU or YOUR licensees.

21       39.   YOUR cost of goods sold, unit cost and other costs for each

22   BRATZ PRODUCT, including without limitation BRATZ DOLLS, sold by YOU or

23   YOUR licensees.

24       40.   YOUR revenues and profits, including gross, net and incremental

25   profits, from the sale of each BRATZ PRODUCT sold by YOU or YOUR licensees.

26       41.   The number of units of each BRATZ PRODUCT sold by YOU

27   or YOUR licensees, the identity of each customer to whom YOU or YOUR

28

Exhibit _10_ ,
P. _149_

-11-

1  licensees have ever sold any BRATZ PRODUCT, and the revenues and profits that

2  YOU have earned therefrom by customer.

3      42.   Customer returns to YOU of BRATZ PRODUCTS, including

4  without limitation BRATZ DOLLS, sold or distributed by YOU or YOUR licensees.

5      43.   Customer rebates or credits given by YOU or YOUR licensees to

6  customers in connection with BRATZ PRODUCTS, including without limitation

7  BRATZ DOLLS.

8      44.   YOUR cost allocation procedures.

9      45.   YOUR sales, profit and cash flow projections or forecasts for

10  BRATZ PRODUCTS, including without limitation BRATZ DOLLS.

11      46.   The BRATZ DOLLS' share of the fashion doll market in Mexico

12  including, without limitation, the extent to which BRATZ has been or is gaining or

13  losing market share in the Mexico fashion doll market.

14      47.   YOUR net worth on a yearly basis from January 1, 2004 to the

15  present.

16      48.   YOUR monthly, quarterly and annual financial reports, including

17  financial statements (both audited and unaudited) from January 1, 2004 through the

18  present, inclusive.

19      49.   YOUR tax returns from January 1, 2004 to the present, including

20  all schedules and work papers RELATING TO their preparation and filing.

21      50.   YOUR corporate structure since January 1, 2004, including without

22  limitation YOUR relationship with MGA Entertainment, Inc., to MGA Entertainment

23  Mexico, Inc. and the IDENTITY of YOUR officers, directors, shareholders and

24  employees.

25      51.   The factual bases for YOUR affirmative defenses.

26      52.   The retention or destruction policies, procedures and practices for

27  YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO

28  BRATZ since January 1, 2004, including without limitation the retention or destruction

07975/2280277.2       Exhibit 10 ,
P. 150     -12-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1 | of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,
2 | modified or upgraded and (b) when PERSONS leave YOUR employ.

3 |      53.   The preservation, collection, destruction, removal, transfer, loss or
4 | impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection
5 | with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

6 |      54.   The preservation, collection, destruction, removal, transfer, loss or
7 | impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,
8 | 2004 that REFER OR RELATE TO MATTEL (including without limitation to any
9 | MATTEL product, plan or information) that YOU received in any manner from any
10 | PERSON who was at the time an employee of MATTEL or who had previously been
11 | an employee of MATTEL.

12 |      55.   YOUR DIGITAL INFORMATION data backup policies, practices
13 | and procedures from January 1, 2004 to the present, including without limitation the
14 | location and specifications of any media used to preserve YOUR DIGITAL
15 | INFORMATION and the software, if any, used to preserve YOUR DIGITAL
16 | INFORMATION.

17 |      56.   The DIGITAL INFORMATION SYSTEMS and the application
18 | software that YOU have used since January 1, 2004 that REFER OR RELATE TO
19 | design, development, planning, inventory, manufacturing, sales, shipping and
20 | accounting, including without limitation the common or shared storage for such
21 | DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
22 | INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
23 | DIGITAL INFORMATION SYSTEMS or application software.

24 |      57.   The IDENTITY of PERSONS, including without limitation
25 | vendors, who since January 1, 2004 have been responsible for or supported YOUR
26 | DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
27 | such PERSON who serviced or provided hardware for YOUR DIGITAL
28 | INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL

Exhibit 10,
P. 151

-13-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  INFORMATION, including but not limited to internet service providers, and provided

2  analytical, training or implementation services with respect to YOUR DIGITAL

3  INFORMATION SYSTEMS.

4        58.    The electronic messaging SYSTEMS used by YOUR employees

5  within the scope of their employment between January 1, 2004 and the present,

6  including but not limited to electronic mail, instant messenger, telephone or voice-mail,

7  and the routing of such electronic messages to, from or within MGA.

8        59.    YOUR policies, practices and procedures regarding the use of

9  transportable media that contain or are capable of containing DIGITAL

10  INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB

11  drives, portable hard drives, digital cameras and personal digital assistants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 10 ,**
**P. 152**

-14-

07975/2280277.2

# Exhibit 11

**RECEIVED**

DEC 2 1 2004

1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   KEITH A. JACOBY, Bar No. 150233
    LITTLER MENDELSON
3   A Professional Corporation
    2049 Century Park East, 5th Floor
4   Los Angeles, CA 90067.3107
    Telephone:   310.553.0308
5   Facsimile:   310.553.5583

6   Attorneys for Defendant and Counter-Claimant
    CARTER BRYANT
7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                    HON. NORA M. MANELLA
                 Plaintiff,
13                                    **NOTICE OF DEPOSITION OF
         v.                           PLAINTIFF AND COUNTER-
14                                    DEFENDANT MATTEL, INC.**
    CARTER BRYANT, an individual;
15  and DOES 1 through 10, inclusive, **[F.R.C.P. 30(b)(6)]**

16               Defendant.          Date:      January 20, 2005
                                     Time:      9:30 a.m.
17                                   Place:     Littler Mendelson, PC
                                                2049 Century Park East
18                                              Suite 500, Los Angeles
                                                California 90067
19  CARTER BRYANT, on behalf of
    himself, all present and former
20  employees of Mattel, Inc., and the
    general public,
21
                 Counter-Claimant,
22
         v.
23
    MATTEL, INC., a Delaware
24  Corporation,

25               Counter-Defendant.

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Exhibit _11_,
P. _153_

EXHIBIT _____ PAGE _____

**TO PLAINTIFF MATTEL INC. AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant and Counter-Claimant Carter Bryant ("Bryant") in the above-captioned matter shall take the deposition of the Person(s) Most Knowledgeable from Plaintiff and Counter-Defendant Mattel, Inc. ("Plaintiff" or "Mattel") at the offices of Littler Mendelson, 2049 Century Park East, Fifth Floor, Los Angeles, California 90067, beginning at 9:30 a.m. on January 20, 2005. The deposition shall continue from day to day excluding Saturdays, Sundays and holidays, until completed. The deposition will be taken before an officer or other person duly authorized to administer oaths and shall be recorded by stenographic, sound and visual (videotape), and real-time transcription means.

Pursuant to Rule 30(b)(6), the deponent is directed to designate one or more officers, directors, managing agents or other individuals able to fully and completely testify on its behalf concerning the matters listed in Exhibit "A" attached hereto.

Dated: December 21, 2004

Respectfully submitted,

ROBERT F. MILLMAN
DOUGLAS A. WICKHAM
KEITH A. JACOBY

DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
and Counter-Claimant
CARTER BRYANT

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0303

1.

Exhibit 11,
P. 154

EXHIBIT _____ PAGE _____

EXHIBIT A

Exhibit  ()
P.  155

EXHIBIT _____ PAGE _____

## EXHIBIT A

### Definitions

1.     "You," "Your" and "Mattel" refer to Plaintiff Mattel, Inc. and its officers, directors, agents, employees and all individuals acting under its direction or control or on its behalf.

2.     "Complaint" means the complaint filed by Mattel against Bryant in the Superior Court of the State of California for the County of Los Angeles dated April 27, 2004.

3.     "Communication" means any oral or written transmittal or receipt of words or information, by whatever manner or means, and regardless of how or by whom the communication was initiated and shall include any contact between two or more persons, including but not limited to written contact by such means as letter, memorandum, telegram, telex, email, facsimile or any Document, and oral contact by such means as face-to-face meeting or telephone.

4.     "Concerning" means relating to, referring to, describing, discussing, mentioning, evidencing, or constituting.

5.     "Contract" and/or "Agreement" mean the contract or agreement itself, and any drafts thereof, together with all schedules, exhibits, attachments or addenda thereto and any amendments of the foregoing.

6.     "Document(s)" means all "WRITINGS" and "RECORDINGS," including, but not limited to, writings and records of every type and description including, but not limited to, notes (including notes made contemporaneously with meetings or conversations or thereafter), books, records, letters, telegrams, memoranda, electronic mail messages (including electronic mail messages stored on network or individual servers, hard drives, back up tapes or other storage media, collectively referred to as "e-mail"), reports, studies, speeches, calendars or diary entries, tabulations, data compilations, drawings, designs, sketches, paintings, artwork, graphs, charts, photographs, computer disks, backup tapes and diskettes and

2.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Exhibit 11 ,
P. 156

EXHIBIT _____  PAGE _____

1  other data compilations from which information can be obtained or tabulated through

2  detection devices into reasonably usable forms. "Document" also includes

3  reproductions or film impressions of any of the aforementioned documents, tape

4  recordings and copies of documents, which are not identical duplicates of the originals

5  and copies of all documents of which the originals are not in the possession, custody

6  or control of Mattel.

7       7.    "Relate To" and "Relating To" mean in any way directly or

8  indirectly, concerning, referring to, pertaining to, mentioning, discussing, describing,

9  disclosing, confirming, supporting, evidencing, representing, or being connected with

10  a stated subject matter or any aspect thereof.

11       8.    "And" and "Or" mean either the conjunctive or the disjunctive as context

12  may require so that the meaning of the term is inclusive rather than exclusive.

13       9.    "Person" or "Persons" means any or all entities including, without

14  limitation, any or all individuals, single proprietorships, associations, companies,

15  firms, partnerships, joint ventures, corporations, employees or former employees, or

16  any other business, governmental or labor entity, and any division, departments or

17  other units thereof.

18       10.   "MGA" means and refers to MGA Entertainment, Inc., formerly known

19  as ABC International Traders, Inc. dba MGA Entertainment and Micro Games of

20  America, Inc., and each of its officers, directors, agents, and employees or any other

21  person acting on its behalf.

22       11.   "Bryant" means and refers to Defendant Carter Bryant and each of his

23  agents, employees or any other person acting on his behalf.

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

3.

Exhibit  ||  ,
P. 157

EXHIBIT _____ PAGE _____

## DESIGNATED SUBJECTS OF TESTIMONY AT PERSONS MOST
## KNOWLEDGEABLE DEPOSITION

1.     Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion and destruction (including with respect to electronic documents and e-mail), including without limitation, e-mail backup policies, procedures and practices in effect or use; location of saved or backed-up e-mails, procedures for accessing saved or backed-up e-mails; policies, procedures and practices in effect or use regarding deletion of e-mails; and policies, procedures and practices in effect or use regarding retention of e-mails.

2.     All hardware and software used by Mattel at any time from January 1, 1998 to the present for Mattel's e-mail systems including, without limitation, all on-site and off-site back-up computer systems and files, exchange servers and computer storage space.

3.     The ability of Mattel to retrieve e-mail messages from any server, disk, drive, archive disk, tape, server or drive, storage disk, tape server or drive, individual computer hard drive, or any hard drive or server networked to any Mattel computer network, at any time from January 1, 1998 to the present.

4.     Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) when Mattel is aware of a potential claim or lawsuit in which it may be involved.

5.     Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began considering or analyzing any potential claim or lawsuit against MGA or Bryant regarding "Bratz" or other claim of any nature.

6.     Mattel's policies, procedures and practices in effect or use, at any time

4.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA. 90067.3107
310.552.0130

Exhibit ||,
P. 157

EXHIBIT _____ PAGE _____

1    from January 1, 1998 to the present, regarding Document retention, deletion or

2    destruction (including with respect to e-mails and other electronic documents) after

3    Mattel began investigating facts pertaining to Bryant's involvement with MGA or

4    "Bratz" or any claim of any nature, actual or potential, against Bryant.

5         7.     Mattel's policies, procedures and practices in effect or use, at any time

6    from January 1, 1998 to the present, regarding Document retention, deletion or

7    destruction  including with respect to e-mails and other electronic documents) after

8    Mattel began investigating facts pertaining to the relationship, if any, between

9    Bryant's involvement with MGA or "Bratz" and work or projects that Bryant may

10    have seen during his employment with Mattel.

11         8.     Files (including human resources and legal files and files kept or

12    maintained at business locations and personal residences), locations, offices,

13    computers (including business, lap top and residence computers), warehouses, records

14    centers, file rooms, archives, servers, storage facilities, back up or storage tapes, and

15    any and other method and/or location for maintaining or storing Documents that were

16    searched or reviewed by Mattel when searching for Documents responsive to Bryant's

17    Request For Identification And Production Of Documents And Tangible Things (Set

18    One, federal court) including, without limitation, all efforts made and steps undertaken

19    when searching for and producing Documents in a tangible, electronic, magnetic or

20    any other form.

21         9.     Files (including human resources and legal files and files kept or

22    maintained at business locations and personal residences), locations, offices,

23    computers (including business, lap top and residence computers), warehouses,

24    records centers, file rooms, archives, servers, storage facilities, back up or storage

25    tapes, and any and other method and/or location for maintaining or storing

26    Documents that were searched or reviewed by Mattel when searching for Documents

27    responsive to Defendant Carter Bryant's First Request For Production Of Documents

28    And Tangible Things Propounded To Plaintiff Mattel, Inc. (Set One, state court)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Exhibit ⁣  ⁣ ,
P. ⁣ 

EXHIBIT _____ PAGE _____

1  including, without limitation, all efforts made and steps undertaken when searching

2  for and producing Documents in a tangible, electronic, magnetic or any other form.

3

4

5

6

7  Los_Angeles:388365.1 028307.1010

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

6.

Exhibit  11  ,
P. 160

EXHIBIT _____ PAGE _____

1

## PROOF OF SERVICE BY MESSENGER

2      I am employed in Los Angeles County, California.  I am over the age of

3   eighteen years and not a party to the within-entitled action.  My business address is

4   Allstar Messenger Service, 345 South Figueroa Street, Suite 305, Los Angeles,

5   California 90071.  On December 21, 2004, I personally served:

6      **NOTICE OF DEPOSITION OF PLAINTIFF AND**
       **COUNTER DEFENDANT MATTEL, INC.**
7

8      by delivering copies thereof to:

9   Michael T. Zeller, Esq.              Diana M. Torres, Esq.
    Quinn Emanuel Urquhart Oliver &      O'Melveny & Myers LLP
10  Hedges LLP                           400 S. Hope Street, 10th Floor
    865 S. Figueroa Street, 10th Floor   Los Angeles, CA 90071
11  Los Angeles, CA 90017

12     I declare under penalty of perjury under the laws of the State of

13  California that the above is true and correct.

14     Executed on December 21, 2004, at Los Angeles, California.

15

16

17

18  Los_Angeles:388357.1 028307.1010                  MARCUS ROBINSON

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

PROOF OF SERVICE

Exhibit __11__ ,
P. __161__

EXHIBIT _____ PAGE _____

# Exhibit 12



1

```
 1        UNITED STATES DISTRICT COURT
          CENTRAL DISTRICT OF CALIFORNIA
 2              EASTERN DIVISION
 3   CARTER BRYANT, an
     Individual,
 4
          Plaintiff,
 5
          vs.          No. CV 04-9049 SGL
 6                        (RNBx)
     MATTEL, INC., a Delaware
 7   corporation,
 8        Defendants.
 9
10   _____
     Consolidated with MATTEL, INC. v.
11   BRYANT and MGA ENTERTAINMENT, INC.
     v. MATTEL, INC.
12   _____
13
14   HEARING BEFORE THE HONORABLE EDWARD A. INFANTE
15        San Francisco, California
16        Thursday, January 3, 2008
17
18
19
20
21   Reported by:
     DANA M. FREED
22   CSR No. 10602
23   JOB No. 79867
24
25
```

Exhibit 12,
P. 162

2



1       UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA
2           EASTERN DIVISION
3   CARTER BRYANT, an
    Individual,
4
          Plaintiff,
5
        vs.        No. CV 04-9049 SGL
6                  (RNBx)
    MATTEL, INC., a Delaware
7   corporation,
8         Defendants.
9
10  _____
    Consolidated with MATTEL, INC. v.
11  BRYANT and MGA ENTERTAINMENT, INC.
    v. MATTEL, INC.
12  _____
13
14       Hearing before the Honorable EDWARD A. INFANTE,
15  at JAMS, Two Embarcadero Center, Suite 1500, San Francisco,
16  California, beginning at 1:30 p.m. and ending at 4:05 p.m.
17  on Thursday, January 3, 2008, before DANA M. FREED,
18  Certified Shorthand Reporter No. 10602.
19
20
21
22
23
24
25

Exhibit 12,
P. 163

Transcript of Proceedings [Infante]   1/3/2008  11:05:00 AM

3

```
1    APPEARANCES:
2
3    For the Plaintiff CARTER BRYANT, an individual:
4       KEKER & VAN NEST LLP
        BY:  MATTHEW M. WERDEGAR
            JOHN TRINIDAD
5        Attorneys at Law
6        710 Sansome Street
        San Francisco, California 94111-1704
7        415.391.5400
8    For the Defendant MATTEL, INC., a Delaware
     corporation:
9
        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10       BY:  JON COREY
            TIMOTHY L. ALGER
11           B. DYLAN PROCTOR
        Attorneys at Law
12       865 Figueroa Street, 10th Floor
        Los Angeles, California 90017
13       213.443.3000
14   For the Defendants MGA Entertainment, Inc., MGA
     Entertainment (HK) Limited, and Isaac Larian:
15
        SKADDEN ARPS SLATE MEAGHER & FLOM LLP
16       BY:  RAOUL D. KENNEDY
            AMY S. PARK
17       Attorneys at Law
        Four Embarcadero Center, 38th Floor
18       San Francisco, California 94111-5974
        415.984.6400
19
     Also Present:
20
        MAUREEN McCUAIG
21
22
23
24
25
```

Exhibit 12 ,
P. 164

MGA v. Mattel-OMM Hearing Transcripts          Unsigned                              Page  3

82

1      MR. COREY: Yes, that's correct, Your Honor

2      MR. TRINIDAD: Right.

3      JUDGE INFANTE: And you know, I read that.

4  And she's the one who first contacted the reporter.

5  You know, I'm inclined not to grant your 41 or Zeus.

6  I am inclined to grant you -- now that I've heard

7  Mr. Corey's arguments, I am inclined to grant the rest

8  of the motion.

9      So here's what I'll do. I find, reading all

10  of the testimony of Mr. Hudnut, Ms. Newquist,

11  Mr. Ong Changco, O-n-g C-h-a-n-g-c-o, Ms. Pasko,

12  Ms. Pratte, P-r-a-t-t-e, and Ms. Yamamoto, Ms. Jensen

13  and Ms. Marine. I've taken the time to read all of

14  that, and I do not feel that you adequately prepared

15  these witnesses in the spirit of Rule 30(b)(6) on

16  behalf of the corporation.

17      For the most part, these witnesses' testimony

18  was limited to their open percipient knowledge. You

19  were operating on the notion that that was okay,

20  because of prior agreements of the parties which they

21  deny they ever made. I've read that entire record.

22      And my judgment is to grant the motion and

23  compel Mattel to produce, at your own expense,

24  properly educated and adequately prepared 30(b)(6)

25  witnesses to testify competently as to Mattel's

83

1  knowledge on topics 2 through 8, 11 through 13, and

2  24.

3      Mattel shall produce no more than one

4  competent witness on any one topic. Normally, you

5  have discretion on that point to produce one or more

6  witnesses. But I believe there's been an abuse here,

7  de-facto not necessarily intentional. And therefore,

8  my order says you shall produce no more than one

9  competent witness on any one topic.

10      You shall comply with this order by

11  January 28th of '08. Failure to comply with this

12  order may result in preclusion of evidence orders at

13  trial pursuant to Rule 37.

14      MGA's motion for $32,000 in attorney time,

15  plus fees for bringing this motion, is denied.

16  Because it would be unjust, under the circumstances of

17  all the history leading up to this deposition, to

18  grant such motions. I mean, such sanctions. The only

19  penalty I'm putting you under is the deposition shall

20  be at your expense. Meaning court reporter fees,

21  et cetera.

22      MR. COREY: Correct. That's what I understood.

23  If I may ask one question.

24      JUDGE INFANTE: Sure.

25      MR. COREY: The --

Exhibit 12,
P. 165

97

1        I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby

3    certify:

4        That the foregoing proceedings were taken

5    before me at the time and place herein set forth; that

6    any witnesses in the foregoing proceedings, prior to

7    testifying, were duly sworn; that a record of the

8    proceedings was made by me using machine shorthand

9    which was thereafter transcribed under my direction;

10   that the foregoing transcript is a true record of the

11   testimony given.

12       Further, that if the foregoing pertains to

13   the original transcript of a deposition in a Federal

14   Case, before completion of the proceedings, review of

15   the transcript [ ] was [ ] was not requested.

16       I further certify that I am neither

17   financially interested in the action nor a relative or

18   employee of any attorney or party to this action.

19       IN WITNESS WHEREOF, I have this date

20   subscribed my name.

21

22   Dated:

23

24       _____

         DANA FREED

25       CSR No. 10602

**Exhibit** _12_ ,
**P.** _166_