**Exhibit 1**

1
DALE M. CENDALI (admitted *pro hac vice*)
DAVID I. HURWITZ (S.B. #174632)

2
O'MELVENY & MYERS LLP
400 South Hope Street

3
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000

4
Facsimile: (213) 430-6407
Email: dhurwitz@omm.com

5

6
PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO, LLP

7
19250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

8
Telephone: (310) 553-3000
Facsimile: (310) 557-9815

9

Attorneys for MGA Entertainment, Inc.

10

11
**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

12
**EASTERN DIVISION**

13

14

15
CARTER BRYANT, an individual,

Plaintiff,

16

17
v.

MATTEL, INC., a Delaware

18
Corporation,

19
Defendant.

20
CONSOLIDATED WITH

21
MATTEL, INC. v. BRYANT and

22
MGA ENTERTAINMENT, INC. v.

23
MATTEL, INC.

Case No. CV 04-09049 SGL (RNBx)

**MGA ENTERTAINMENT, INC.'S NOTICE OF DEPOSITION OF MATTEL, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**

Judge: Hon. Stephen G. Larson

Date: September 19, 2007
Discovery Cut-Off: March 3, 2008
Pretrial Conference: June 2, 2008
Trial Date: July 1, 2008

24

25

26

27

28

Exhibit _1_,
P. _4_

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to the provisions of Federal Rule of Civil Procedure 30(b)(6), MGA Entertainment, Inc. ("MGA") will take the deposition upon oral examination of Mattel, Inc. ("Mattel") regarding the matters described below beginning on September 19, 2007, at 9:30 a.m., and continuing from day to day thereafter, excluding weekends and holidays, or as otherwise agreed by counsel, until completed.

The deposition will be held at the offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071, telephone: (213) 430-6000. The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound and visual means. The stenographic recordation method may provide for the instant visual display of the testimony at deposition. MATTEL shall designate one or more officers, directors, managing agents or other PERSONS who consent to testify on MATTEL's behalf, who shall testify as to matters known or reasonably available to MATTEL relating to the topics listed in Attachment A.

Dated:  September 5, 2007

O'MELVENY & MYERS LLP

By _____
David Hurwitz
Attorneys for Plaintiff MGA
Entertainment, Inc.

Exhibit ___/___,
P. ___5___

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**ATTACHMENT A**

**DEFINITIONS**

1.      "ACCELERACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "AcceleRacerS," "Acceleracers," or "Accelleracers."

2.      "ACTION" shall mean this action consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entm't, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

3.      "ADVERTISEMENT" means a commercial message or advertisement in any medium, including without limitation, television, radio, movies, magazines, newspapers, the Internet, signage, and billboards.

4.      "ALIEN RACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Alien Racers."

5.      "BARBIE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Barbie."

6.      "BRATZ" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known

Exhibit __1__,
P. __6__

1  as, or sold and marketed under the name, "Bratz."

2      7.    "BRAWER" means Ron Brawer.

3      8.    "BRISBOIS" means Janine Brisbois.

4      9.    "BRYANT" means Carter Bryant.

5      10.   "CARU" shall mean and refer to the Children's Advertising Review

6  Unit of the Council of Better Business Bureaus, Inc. and any of its past or present

7  principals, directors, officers, agents, employees, representatives, consultants,

8  attorneys, entities and persons acting in joint-venture or partnership relationships

9  and all others acting on its behalf, pursuant to its authority or subject to its control.

10     11.   "COMMUNICATIONS" means any disclosure, transfer or exchange

11 of information between two or more PERSONS, whether orally or in writing,

12 including without limitation any conversation or discussion by means of meeting,

13 letter, telephone, note, memorandum, telex, telecopier, electronic mail, or any other

14 electronic or other medium.

15     12.   "COUNTERCLAIM[S]" means Mattel's Second Amended Answer in

16 Case No. 05-02727 and Counterclaims for: 1. Copyright Infringement; 2. Violation

17 of the Racketeer Influenced and Corrupt Organizations Act; 3. Conspiracy to

18 Violate the Racketeer Influenced and Corrupt Organizations Act; 4.

19 Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional

20 Interference with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting

21 Breach of Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting

22 Breach of Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13.

23 Declaratory Relief filed July 12, 2007.

24     13.   "COUNTER-DEFENDANTS" means MGA, LARIAN, BRYANT,

25 MGA HK, MGA MEXICO, MACHADO, and Does 4 through 10.

26     14.   "DIVA STARZ" means and refers to each image, character, logo, doll,

27 styling head, plush toy, toy, accessory, product, packaging or other thing or matter

28 that is or has ever been manufactured, marketed or sold by MATTEL, or others

1  under license by MATTEL, as part of a line of goods or merchandise commonly

2  known as, or sold and marketed under the name, "Diva Starz."

3      15.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

4  Civil Procedure 24, and shall be construed in the broadest sense to mean any and all

5  writings, tangible things and property, of any kind, that are now or that have been in

6  YOUR actual or constructive possession, custody or control, including, but not

7  limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

8  punched, copied, recorded, transcribed, graphic or photographic matter of any kind

9  or nature, in, through, or from which information may be embodied, translated,

10  conveyed or stored, whether an original, a draft or copy, however produced or

11  reproduced, whether sent or received or neither, including, but not limited to, notes,

12  memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

13  inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

14  records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

15  estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

16  telephone records, telegrams, telexes, literature, invoices, contracts, purchase

17  orders, estimates, recordings, transcriptions of recordings, records, books,

18  pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio

19  and digital recordings, television commercials, story boards, website or other spot

20  advertisements, movies, movie trailers, prototypes, samples, products, diaries,

21  calendars, charts, drawings, sketches, messages, photographs and data contained in

22  or accessible through any electronic data processing system, including, but not

23  limited to, computer databases, data sheets, data processing cards, computer files

24  and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche,

25  electronic mail, website and web pages and transcriptions thereof and all other

26  memorializations of any conversations, meetings and conference, by telephone or

27  otherwise.  The term DOCUMENT also means every copy of a DOCUMENT,

28  where such copy is not an identical duplicate of the original, whether because of

1  deletions, underlinings, showing of blind copies, initialing, signatures, receipt
2  stamps, comments, notations, differences in stationery or any other difference or
3  modification of any kind.

4      16.    "ELECTRONIC RECORDS" means electronic documents, data or
5  electronically stored information — including writings, drawings, graphs, charts,
6  photographs, sound recordings, images, and other data or data compilations stored
7  in any medium from which information can be obtained, including but not limited
8  to emails (Outlook, Exchange, etc.), word processing files (Word, WordPerfect,
9  etc.), spreadsheets (Excel, etc.), databases (Access, SQL, etc.), presentations
10  (PowerPoint, etc.), picture files (gif, tif, jpg, etc.), graphic files (DWG, PCX, EPS,
11  high or multi-dimension, etc.), audio files (wav, snd, rmp, etc.), video files (mpg,
12  mov, etc.),  or any other compilation of data used by YOU.

13      17.    "FLAVAS" means and refers to each image, character, logo, doll,
14  styling head, plush toy, toy, accessory, product, packaging or other thing or matter
15  that is or has ever been manufactured, marketed or sold by MATTEL, or others
16  under license by MATTEL, as part of a line of goods or merchandise commonly
17  known as, or sold and marketed under the name, "Flavas."

18      18.    "4-EVER BEST FRIENDS" means and refers to each image,
19  character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or
20  other thing or matter that is or has ever been manufactured, marketed or sold by
21  MGA, or others under license by MGA, as part of a line of goods or merchandise
22  commonly known as, or sold and marketed under the name, "4-Ever Best Friends."

23      19.    "INITIAL DISCLOSURE WITNESS(ES)" means and refers to each
24  person listed in YOUR Consolidated Initial Disclosures, served on January 5, 2007.

25      20.    "LARIAN" means MGA's Chief Executive Officer, Isaac Larian.

26      21.    "LITTLE MOMMY" means and refers to each image, character, logo,
27  doll, styling head, plush toy, toy, accessory, product, packaging or other thing or
28  matter that is or has ever been manufactured, marketed or sold by MATTEL, or

1    others under license by MATTEL, as part of a line of goods or merchandise

2    commonly known as, or sold and marketed under the name, "Little Mommy."

3        22.    "MACHADO" means Carlos Gustavo Machado Gomez.

4        23.    "MATTEL," "YOU" and "YOUR" shall mean and refer to defendant

5    Mattel, Inc. and any of its past or present officers, directors, agents, employees,

6    representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

7    predecessors-in-interest and successors-in-interest, entities and persons acting in

8    joint venture or partnership relationships with MATTEL and any others acting on

9    MATTEL's behalf, pursuant to its authority or subject to its control.

10       24.    "MGA" shall mean and refer to plaintiff MGA Entertainment, Inc. and

11   any of its past or present officers, directors, agents, employees, representatives,

12   consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

13   interest (including ABC International Traders, Inc. and Micro Games of America,

14   Inc.) and successors-in-interest, entities and persons acting in joint venture or

15   partnership relationships with MGA and any others acting on MGA's behalf,

16   pursuant to its authority or subject to its control.

17       25.    MGA HK shall mean counter-defendant MGA Entertainment (HK)

18   Ltd. and any of its past or present officers, managers, agents, employees,

19   representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

20   and successors-in-interest, entities and persons acting in joint venture or partnership

21   relationships with MGA HK and any others acting on MGA HK's behalf, pursuant

22   to its authority or subject to its control.

23       26.    MGA MEXICO shall mean counter-defendant MGAE de Mexico,

24   S.R.L. de C.V. and any of its past or present officers, managers, agents, employees,

25   representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

26   and successors-in-interest, entities and persons acting in joint venture or partnership

27   relationships with MGA MEXICO and any others acting on MGA MEXICO's

28   behalf, pursuant to its authority or subject to its control.

A-5

Exhibit __/__,
P. __/6__

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1    27.    "MOMMY'S LITTLE..." means and refers to each image, character,

2    logo, doll, styling head, plush toy, toy, accessory, product, packaging or other thing

3    or matter that is or has ever been manufactured, marketed or sold by MGA, or

4    others under license by MGA, as part of a line of goods or merchandise commonly

5    known as, or sold and marketed under the names beginning with, "Mommy's

6    Little...," including but not limited to the phrase "Mommy's Little Patient."

7    28.    "MY SCENE" means and refers to each image, character, logo, doll,

8    styling head, plush toy, toy, accessory, product, theme, packaging or other thing or

9    matter that is or has ever been manufactured, marketed or sold by MATTEL, or

10   others under license by MATTEL, as part of a line of goods or merchandise

11   commonly known as, or sold and marketed under the name, "My Scene."

12   29.    "MY SCENE THEMES" means and refers to the following themes for

13   MY SCENE products: "Chillin Out!," "Night on the Town," "Jammin' in Jamaica,"

14   and "My Bling Bling."

15   30.    "NPD" shall mean and refer to The NPD Group, Inc. and NPD

16   Funworld, and any of their past or present principals, directors, officers, agents,

17   employees, representatives, consultants, attorneys, entities and persons acting in

18   joint-venture or partnership relationships and all others acting on their behalf,

19   pursuant to its authority or subject to its control.

20   31.    "PERSON" or "PERSONS" means all natural persons, partnerships,

21   corporations, joint ventures and any kind of business, legal or public entity or

22   organization, as well as its, his or her agents, representatives, employees, officers

23   and directors and any one else acting on its, his or her behalf, pursuant to its, his or

24   her authority or subject to its, his or her control.

25   32.    "POLLY POCKET" means and refers to each image, character, logo,

26   doll, styling head, plush toy, toy, accessory, product, theme, packaging or other

27   thing or matter that is or has ever been manufactured, marketed or sold by

28   MATTEL, or others under license by MATTEL, as part of a line of goods or

A-6

Exhibit  1  ,
P.  11

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1    merchandise commonly known as, or sold and marketed under the name, "Polly

2    Pocket."

3        33.    The terms "RELATE TO" and "REFER TO" should each be construed

4    in the broadest possible sense to mean concerning, consisting of, referring to,

5    describing, discussing, constituting, evidencing, containing, reflecting, mentioning,

6    pertaining to, citing, summarizing, analyzing or bearing any logical or factual

7    connection with the matter discussed.

8        34.    "RELEVANT TIME PERIOD" means the period from January 1,

9    1998 through the present.

10       35.    "TIA" shall mean and refer to the Toy Industry Association, Inc., and

11   any of its past or present principals, directors, officers, agents, employees,

12   representatives, consultants, attorneys, entities and persons acting in joint-venture

13   or partnership relationships and all others acting on its behalf, pursuant to its

14   authority or subject to its control.

15       36.    "TREANTAFELLES" means Paula (Treantafelles) Garcia, currently

16   MGA's Vice President of Product Design and Development.

17       37.    "TRUEBA" means Mariana Trueba Alamada.

18       38.    "VARGAS" means Pablo Vargas San Jose.

19       39.    "WEE 3 FRIENDS" means and refers to each image, character, logo,

20   doll, styling head, plush toy, toy, accessory, product, packaging or other thing or

21   matter that is or has ever been manufactured, marketed or sold by MATTEL, or

22   others under license by MATTEL, as part of a line of goods or merchandise

23   commonly known as, or sold and marketed under the name, "Wee 3 Friends."

24       40.    "WSJ REPORTERS" means and refers to any current or former

25   reporters for the *Wall Street Journal* (including, but not limited to, Maureen

26   Tkacik) and any of their agents, assistants, investigators, employees, or

27   representatives.

28       41.    "WSJ STATEMENTS" means and refers to any and all of the

following statements that appeared in the *Wall Street Journal* article, dated July 18, 2003, entitled "Dolled Up: To Lure Older Girls, Mattel Brings in Hip-Hop Crowd":

....Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998....

Mr. Bryant didn't work on the line that Mattel scrapped, according to former and current Mattel designers. But most Barbie designers had seen the prototypes, his former colleagues say. ...

The Mattel doll line that was scrapped wasn't exactly like the Bratz, says a longtime Mattel designer who worked on the project. But the Bratz's oversized heads -- with their pursed lips and cartoonish eyes -- are "virtually identical" to the heads of the dolls her team created, says the designer, who left Mattel in 2001.

Lily Martinez, a designer who still works at Mattel, came up with the idea for the big doll heads for Mattel, colleagues say. ... She even posted her sketch on her cubicle, colleagues say. "Anyone who passed by her cubicle would see the picture up on the wall," says another designer who also left Mattel in 2001. "The big heads, the big eyes, the big feet -- they were all the same" as the Bratz.

The Mattel dolls were scrapped in testing, current and former designers say, because Mattel had strict quotas that allowed only one "flanker brand" -- that is, a brand that would compete with Barbie for shelf space -- on the market at a time. At the time, Mattel chose a product called "What's Her Face" -- a doll with a blank face on which kids could draw expressions. ...

## EXAMINATION TOPICS

1.      MGA's and MGA MEXICO's alleged theft and use of, or direction of others to steal and use on MGA's or MGA MEXICO's behalf, MATTEL's trade secrets in Mexico as alleged in paragraphs 37-54 of YOUR COUNTERCLAIMS, including but not limited to (a) any trade secrets or confidential or proprietary information of MATTEL stolen or used by MGA or MGA MEXICO; (b) MGA and LARIAN's alleged enticement and direction of MACHADO, VARGAS or TRUEBA to steal MATTEL's trade secrets; (c) the specific DOCUMENTS and data allegedly copied, taken, accessed or modified by MACHADO, VARGAS, or TRUEBA; (d) YOUR policies and procedures for protecting the confidentiality of

A-8

Exhibit __1__,
P. __13__

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1  the DOCUMENTS and data YOU contend were improperly taken by MACHADO,
2  TRUEBA or VARGAS; (e) the factual basis of YOUR information and belief that
3  MACHADO, TRUEBA or VARGAS delivered an internal line list to LARIAN or
4  another MGA officer as alleged in paragraph 49 of YOUR COUNTERCLAIMS;
5  (f) YOUR knowledge of any use of the allegedly misappropriated information by
6  MGA for unfair advantage in the United States and Mexico as alleged in paragraph
7  50 of YOUR COUNTERCLAIMS; (g) alleged efforts by MACHADO, TRUEBA
8  and VARGAS to conceal their alleged theft as alleged in paragraph 51 of YOUR
9  COUNTERCLAIMS; (h) YOUR investigation of facts and circumstances
10 concerning the departure of MACHADO, VARGAS or TRUEBA from MATTEL
11 and the alleged theft and use, including any proof of actual use by them or MGA
12 MEXICO, of MATTEL trade secrets in Mexico; (i) when YOU first learned the
13 facts and circumstances alleged in paragraphs 37-54 of YOUR
14 COUNTERCLAIMS; (j) YOUR and YOUR agents' and attorneys' roles in,
15 participation in or knowledge of any and all investigations by Mexican government
16 authorities as alleged in paragraph 53 of YOUR COUNTERCLAIMS; and (n)
17 YOUR knowledge of COMMUNICATIONS between MGA, LARIAN, or other
18 MGA or MGA MEXICO employees or agents on the one hand and MACHADO,
19 VARGAS or TRUEBA on the other hand, including but not limited to the
20 recruitment and hiring MACHADO, VARGAS or TRUEBA and the use of "Plot
21 04" email account.

22        2.    MGA's alleged hiring of BRAWER to facilitate its theft and use,
23 including any proof of actual use, of MATTEL's business methods and practices as
24 alleged in paragraphs 55-69 of YOUR COUNTERCLAIMS, including but not
25 limited to (a) the specific confidential and proprietary information YOU contend
26 that BRAWER took from MATTEL as alleged in 68-69 of YOUR
27 COUNTERCLAIMS; (b) BRAWER's Employee Invention and Trade Secret
28 Agreement with Tyco; (c) BRAWER's access to confidential information about

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit __1__,
P. __14__

1    Mattel and its business; (d) YOUR COMMUNICATIONS with BRAWER

2    concerning MATTEL's Code of Conduct and protecting MATTEL's confidential

3    and proprietary business information; (e) the contents of the cardboard box

4    allegedly carried by BRAWER out of MATTEL's offices on September 15, 2004

5    as alleged in paragraph 62 of YOUR COUNTERCLAIMS; (f) the taking by

6    BRAWER of the 2004 sales plan for one of MATTEL's significant customers as

7    alleged in paragraph 62 of YOUR COUNTERCLAIMS; (g) YOUR

8    COMMUNICATIONS with BRAWER during his exit interview; (h) when YOU

9    first learned the facts and circumstances alleged in paragraphs 55-69 of YOUR

10   COUNTERCLAIMS; (i) YOUR investigation of facts and circumstances

11   concerning BRAWER's departure from MATTEL and BRAWER's alleged theft

12   and use of MATTEL's highly valuable business methods and practices; and (j)

13   BRAWER's alleged targeting of and COMMUNICATIONS with MATTEL

14   employees in an effort to induce them to join MGA and misappropriate confidential

15   MATTEL information as alleged in paragraph 69 of YOUR COUNTERCLAIMS,

16   including the IDENTITIES of the MATTEL employees contacted by BRAWER

17   and YOUR knowledge of the substance of those COMMUNICATIONS.

18         3.     MGA's alleged theft and actual use of, or direction of others to steal

19   and use on MGA's behalf, MATTEL's trade secrets in Canada as alleged in

20   paragraphs 70-76 of YOUR COUNTERCLAIMS, including (a) the specific

21   DOCUMENTS and data allegedly copied, taken, accessed or modified by

22   BRISBOIS; (b) when YOU first learned the facts and circumstances alleged in

23   paragraphs 70-76 of YOUR COUNTERCLAIMS; and (c) YOUR investigation of

24   facts and circumstances concerning BRISBOIS's departure from MATTEL and

25   alleged theft and use of, including any proof of actual use by MGA of, MATTEL

26   trade secrets in Canada, including MATTEL's participation in any investigation by

27   Canadian government authorities.

28

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1        4.     Any other instances where YOU contend that MGA misappropriated

2    or attempted to misappropriate MATTEL trade secrets for the benefit of MGA, or

3    persuaded MATTEL employees to join MGA to misappropriate MATTEL trade

4    secrets as alleged in paragraph 77 of YOUR COUNTERCLAIMS, including (a) the

5    IDENTITY of all former MATTEL employees who allegedly copied, took,

6    accessed, modified or actually used MATTEL confidential information; (b)

7    confidential information or trade secrets allegedly copied and taken from

8    MATTEL; (c) MATTEL confidential information or trade secrets allegedly

9    disclosed to and used by MGA; (d) when each theft occurred; (e) when MATTEL

10   first learned of each theft or attempted theft; and (f) what MATTEL did in response

11   to each theft or attempted theft.

12       5.     The IDENTITY, origin, source, meaning and authenticity of all

13   materials YOU contend were MATTEL trade secrets improperly taken by

14   employees of MGA, including M0019162-M0032318, M0059836-M0059836,

15   M0074952-M0074961, and M0075253-M0076446 and YOUR policies and

16   procedures for protecting the confidentiality of the DOCUMENTS YOU contend

17   were MATTEL trade secrets improperly taken by employees of MGA.

18       6.     LARIAN's alleged misrepresentations to retailers about MATTEL's

19   and MGA's products, as alleged in paragraphs 78-81 of YOUR

20   COUNTERCLAIMS, including (a) the customers and retailers to whom YOU

21   allege LARIAN made false representations; (b) the retailer who cancelled and

22   subsequently reinstated its order for 75,000 units of MY SCENE BLING BLING

23   product; (c) the alleged false and misleading press releases; and (d) YOUR

24   COMMUNICATIONS with any retailers concerning the alleged statements by

25   LARIAN.

26       7.     YOUR knowledge of all acts YOU contend are the predicate acts

27   constituting a pattern of racketeering activity in violation of RICO as alleged in

28

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1   paragraph 93 of YOUR COUNTERCLAIMS and Exhibit C to YOUR
2   COUNTERCLAIMS.
3       8.    Any injury or damages suffered by MATTEL resulting from the acts
4   alleged in MATTEL's COUNTERCLAIMS.
5       9.    MGA's alleged theft of "BRATZ" from YOU,  including but not
6   limited to (a) MGA's showing of BRATZ prototypes or products to focus groups
7   and retailers in November 2000 as alleged in paragraph 29 of YOUR
8   COUNTERCLAIMS; (b) MGA's and LARIAN's alleged encouragement, aiding,
9   and financing of BRYANT to develop BRATZ while he was a MATTEL employee
10  as alleged in paragraph 33 of YOUR COUNTERCLAIMS; and (c) BRYANT's and
11  MGA's alleged concealment of facts that prevented MATTEL from discovering
12  that MATTEL allegedly was the true owner of BRATZ as alleged in paragraph 35
13  of YOUR COUNTERCLAIMS.
14      10.    COMMUNICATIONS between YOU (including YOUR agents and
15  attorneys) and law enforcement authorities in Mexico, Canada or the United States,
16  including but not limited to the United States Attorney's Office, the Department of
17  Justice and any national, federal, regional, state, provincial, or local authorities,
18  concerning any of the allegations in YOUR COUNTERCLAIMS or any other
19  alleged taking of confidential MATTEL information by MGA or persons currently
20  or formerly employed by MGA, including MACHADO, VARGAS, TRUEBA,
21  BRISBOIS, and Jorge Castilla, and DOCUMENTS YOU or YOUR agents or
22  attorneys provided to such law enforcement authorities.
23      11.    MATTEL's knowledge or information about the involvement of
24  BRYANT or any person then employed by MATTEL (directly or via a temporary
25  employment agency), in the origin, creation, design or and development of BRATZ,
26  including, but not limited to (a) when MATTEL first learned about BRYANT's
27  involvement with the origin and development of BRATZ; and (b) who at MATTEL
28  knew about the involvement of BRYANT or any person then employed by

A-12

Exhibit _1_,
P. _17_

1   MATTEL with the origin, creation, design or development of BRATZ, and when

2   and how each individual came to possess such knowledge or information.

3       12.    The use of any MATTEL materials, property or resources by

4   BRYANT or any person then employed by MATTEL (directly or via a temporary

5   employment agency) in connection with creation, design, or development of the

6   original or first wave of BRATZ fashion dolls and accessories introduced in the

7   U.S. in the summer of 2001, including, without limitation (a) PERSONS allegedly

8   involved in putting together the three dimensional dummy used by BRYANT in

9   meeting with MGA; and (b) the specific MATTEL materials, property or resources

10   allegedly used in putting together the three dimensional dummy used by BRYANT

11   in meeting with MGA.

12       13.    MATTEL's knowledge about BRYANT's performance of services for

13   MGA, including, without limitation (a) when and how MATTEL first learned about

14   BRYANT's performance of any services for MGA; (b) when and how MATTEL

15   first learned about the first instance of BRYANT's performance of services for

16   MGA; and (c) who at MATTEL knew about BRYANT's performance of any

17   services for MGA.

18       14.    MATTEL's knowledge about BRYANT's contacts with MGA,

19   including, without limitation (a) when and how MATTEL first learned of any

20   contacts BRYANT had with MGA; (b) when and how MATTEL first learned of the

21   first contact BRYANT had with MGA; and (c) who at MATTEL knew about

22   BRYANT's contacts with MGA.

23       15.    MATTEL's knowledge of BRYANT's contract with MGA, including

24   without limitation (a) when, how and who at MATTEL first became aware of its

25   existence; (b) when MATTEL first became aware of its terms; and (c) when

26   MATTEL or its agents first obtained a copy of the contract.

27       16.    The WSJ STATEMENTS, including, but not limited to (a) YOUR

28   knowledge of who made the WSJ STATEMENTS, or provided any of the

1  information contained in the WSJ STATEMENTS, to any WSJ REPORTERS;
2  (b) the identity of all fashion doll or doll designers who left MATTEL in 2001;
3  (c) any efforts by YOU to facilitate the publication of the WSJ STATEMENTS,
4  including, but not limited to, assisting a WSJ REPORTER to obtain the WSJ
5  STATEMENTS or the information contained in the WSJ STATEMENTS, to
6  identify people for WSJ REPORTERS to contact and interview, and to verify the
7  WSJ STATEMENTS or the information contained in the WSJ STATEMENTS;
8  (d) when YOU first learned or became aware of the WSJ STATEMENTS;
9  (e) YOUR response or reaction to the WSJ STATEMENTS after YOU first learned
10  or became aware of them; (f) any actions taken by YOU (including, but not limited
11  to, any investigation or interviews) in response to the WSJ STATEMENTS; and
12  (g) COMMUNICATIONS among MATTEL employees regarding the WSJ
13  STATEMENTS.
14          17.    MATTEL's internal and external investigations of the facts related to
15  this ACTION, including, but not limited to (a) investigations of or concerning
16  BRYANT, Richard Irmen, BRYANT's family, LARIAN, LARIAN's family,
17  MGA, MGA's current and former officers and employees, BRAWER, Farhad
18  (Fred) Larian, Shirin Larian Makabi; Shirin Salemnia, Holly Stinnett, Tina Patel,
19  Mercedeh Ward, Anna Rhee, Veronica Marlowe, Margaret Leahy, Thomas Park,
20  and Jahangir Makabi; (b) surveillance of BRYANT, Richard Irmen, BRYANT's
21  family, LARIAN, LARIAN's family, MGA, MGA's current and former officers
22  and employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin
23  Salemnia, Holly Stinnett, Tina Patel, Mercedeh Ward, Anna Rhee, Veronica
24  Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi, including the dates
25  and times of surveillance, and the identities of the persons who conducted such
26  surveillance; (c) written or recorded statements; (d) the origin, source, meaning and
27  authenticity of DOCUMENTS produced in this ACTION from YOUR Global
28  Security department files.

18. . YOUR policies and practices concerning interviews and investigations of employees who leave MATTEL to work for competitors, including but not limited to MGA, and YOUR knowledge of the reason(s) why each of your employees, including but not limited to the following former employees or contractors ceased working for MATTEL or a MATTEL subsidiary to work for MGA or an MGA subsidiary as employees or contractors, including what YOU learned through exit interviews: BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Eve Bennett; Kami Gilmour; Sarah Halpern; Margaret Leahy; Veronica Marlowe; Maureen Mullen; Amy Myer; Anna Rhee; TREANTAFELLES; Odette Vandenburg; Mercedeh Ward; Daniel Cooney; Janet Han; Steve Chang; Lui Domingo; Pui Pootipong; Ellen Komatsu; Shirin Salemnia; Joe Feldman; Ricardo Abundis; Ian Bate; Nanette Black; John E. Bloodworth III; Kevin Bloomfield; Jorge Castilla; Suzy Chang; Steve Cheng; Gerry Cody Jr.; Nick Contreras; Maria De La Cruz; Karen Dixon; Greg Paul Dominguez; Craig Forrest; Mia Garcia; Eduardo Gonzalez; Tracy Hall; Melody Hansen; Todd Hansen; Jill Hatch; Michael Hinh; Janet Hsu; Alice Kao; Ken Kaufman; Pamela Keller; Alejandro Gabriel Keossian; Joyce Kim (Lee); Young Ran Kim; Kristen Kirst; Jill Larson; Adrian (Chi Shing) Law; Bo Lumabao; Dorothy Marks; Raymond John Martin; Aye Aye Min; Yumi Nakamura; Marvin Natareno; Christine Nigoghossian; Amelia Ivy Arafiles Palijo; Danny Pestonji; Denise Phelan; Michael Pickard; Ronald Rae; Leland Ratleff; Desiree Elisabeth Ronquillo; Micaela Ruiz; Natasha Sasic-Koetsier; Maria Elena Salazar; Harvey Scott; Steffen J. Smith; Jier Su; Dennis Soai; Marla Thompson; Chau Ngoc Tran; Esteban Umana; Gail Upshaw; Chang-Chin Wang; Lance Ward; Dawn Whittaker; Jenny Wong; Troy Augborne; Carter Bryant; Reyna Zetino; Daryoush Aryapour; Janet Blaser; Mari Joanne Bower Violette; Lilia Brown; Gabriella Burlando; Fabienne Chonavel; Christine Dailey; Steve Feicht; Christopher Hardouin; Martin Hitch; Jeff Ho; James Huntley; Randi Kagan; Andreas Koch; Lyn Carol Mayer; Susan McBride; Frank Mils; Xuanlan Nguyen;

1   Gary Thomas O'Brien; Jose Otero; Dan Owen; Nicolletta Parasole; Ana Mancia

2   Parkinson; Roger Rambeau; Wendy Reed; Scot Anthony Reyes; Lon Ross; Dena

3   Schwartz; Brandi Shaver; Holly Stinnett; Lisa Tawil; Gord Terry; Joseph Whitaker;

4   Patrick Williams; Tong Wong; Cherrise Wright; Dave Zbojniewicz; Lourdes

5   Aguilar; Juan Carlos Virrueta Camacho; Alejandro Gurza Romay; Lidia Ivete

6   Montero Leyva; Laura Ochoa; Andrea Ramirez.

7        19.    BRYANT's relationship or contacts with TREANTAFELLES during

8   the time they were both employed at MATTEL, including, but not limited to: (a)

9   YOUR knowledge of whether BRYANT's workspace was next to or near

10  TREANTAFELLES' workspace, and, if so, exactly when and for how long; (b)

11  YOUR knowledge of whether BRYANT and TREANTAFELLES worked together

12  on any projects for MATTEL and, if so, during what time period(s) and specific

13  projects; (c) YOUR knowledge of whether BRYANT and TREANTAFELLES

14  were social acquaintances and, if so, during what time period(s); and (d) any

15  evidence that supports YOUR contention that BRYANT and TREANTAFELLES

16  knew each other during the time they were both employed at MATTEL (including,

17  but not limited to, that they had workspaces near or next to each other, worked on

18  projects together, and/or were social acquaintances), including, but not limited to,

19  any documentary evidence and potential witnesses.

20       20.    The floor plan and seating chart for MATTEL's offices in El Segundo,

21  California in 1999 and 2000, specifically the Design Center and the work spaces of

22  BRYANT, including the origin, source, authenticity, meaning and use of

23  DOCUMENTS produced by MATTEL as M13361-M13368, including M13365A,

24  and the physical proximity of the work spaces of BRYANT and other MATTEL

25  current or former employees, contract workers or PERSONS working for or at

26  MATTEL, including without limitation TREANTAFELLES, Rene Pasko, Lily

27  Martinez, Kislap Ongchangko, Joni Pratt, Barbara Miller, Maureen Mullen and any

28  other PERSON MATTEL claims had confidential information accessed by Bryant

1   or MGA (including any current or former employees who were employees, contract

2   workers or vendors of MATTEL at the relevant time).

3       21.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

4   YOUR behalf with Anna Rhee that refer or relate to BRATZ, MGA, BRYANT or

5   Elise Cloonan, including the COMMUNICATIONS with Anna Rhee's counsel and

6   YOUR contacts with Anna Rhee, including but not limited to when she began

7   working for or with MATTEL, what projects she worked on for MATTEL and the

8   dates of such work, and payments made by MATTEL to her.

9       22.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

10  YOUR behalf with Steve Linker that refer or relate to BRATZ, MGA, BRYANT,

11  this ACTION or the asserted or potential allegations or defenses therein, any

12  witnesses in this ACTION, and DOCUMENTS that refer or pertain to any of the

13  above subjects, and YOUR contacts with Steve Linker, including but not limited to

14  when he began working for or with MATTEL, the projects on which he worked for

15  MATTEL and the dates of such work, and payments made by MATTEL to him,

16  and DOCUMENTS that refer or pertain to any of the above subjects.

17      23.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

18  YOUR behalf with Matt Bousquette, Elise Cloonan, David Dees, Sara Halpern,

19  Margaret Hatch aka Margaret Leahy, Rachel Harris, Liz Hogan, Andreas Koch,

20  Steve Linker, Kris Lynch, Veronica Marlowe, Len Mazzocco, Maureen Mullen

21  Chianese, Billy Ragsdale, Wendy Ragsdale, Brian Schmidt, Cassidy Park, Pam

22  Peretz, Jesse Ramirez and Ivy Ross, or any current or former MGA employee or

23  person you know or believe to be a current or former MGA freelancer, where the

24  COMMUNICATIONS refer or relate to BRATZ, MGA, BRYANT, this ACTION

25  or the asserted or potential allegations or defenses therein, any witnesses in this

26  ACTION, and DOCUMENTS that refer or pertain to any of the above subjects.

27

28

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1    24.   The process(es) by which MATTEL evaluates and approves ideas for
2 new fashion dolls, including, but not limited to, any changes to such process(es)
3 after BRATZ dolls were released in 2001.

4    25.   MATTEL'S hiring and recruiting practices, including its practices of
5 recruiting and hiring PERSONS who have been employed by MATTEL
6 competitors, including, but not limited to, MGA, Hasbro, Leap Frog, Jakks Pacific,
7 Maui Toys, Malibu Toys, Galoob Toys, the number of such people MATTEL has
8 hired since 1998, and YOUR efforts to ensure that new employees did not bring
9 confidential information from their former employers.

10    26.   For each and every agreement requested by MATTEL concerning
11 confidentiality, ownership of intellectual property, and/or any post-employment
12 restrictions or obligations to MATTEL, the number, percentage, and identity of
13 MATTEL employees who have refused to sign such agreement(s) since 1998.

14    27.   The circumstances under which BRYANT testified in September 2003
15 in the lawsuit brought by Gunther Wahl against MATTEL, including when and
16 what any individual, including MATTEL'S in-house and outside counsel with
17 direct or supervisory responsibility for this litigation, knew of BRYANT'S
18 anticipated appearance and testimony and the role that appearance and testimony
19 played in the timing of MATTEL'S lawsuit against BRYANT.

20    28.   The identity of, and the sales, revenues, and profits of, any MATTEL
21 product(s) MATTEL contends have been impacted by BRATZ, including, but not
22 limited to, BARBIE, DIVA STARZ, FLAVAS and MY SCENE, and any
23 accessories, and licensed products, from 1990 to the present.

24    29.   The impact BRATZ has had, if any, on the sales and sales revenues of
25 any Mattel product(s), including but not limited to BARBIE, DIVA STARZ,
26 FLAVAS, any accessories and licensed products, and any product not listed herein
27 that Mattel claims have been impacted by BRATZ.

28

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

30.   The net worth or value of MATTEL'S "BARBIE" brand, including, but not limited to, its "My Scene" "Barbie" line of products, from 1990 to the present.

31.   The INITIAL DISCLOSURE WITNESSES, including, but not limited to: (a) the specific knowledge or information relevant to YOUR allegations and defenses that YOU believe each INITIAL DISCLOSURE WITNESS possesses; (b) YOUR COMMUNICATIONS with each INITIAL DISCLOSURE WITNESS about the subject matters YOU identified in YOUR Consolidated Initial Disclosures; (c) YOUR COMMUNICATIONS with any PERSON concerning each INITIAL DISCLOSURE WITNESS' knowledge of the subject matters YOU identified in YOUR Consolidated Initial Disclosures; and (d) any DOCUMENTS pertaining to information known by each INITIAL DISCLOSURE WITNESS about the subject matters YOU identified in YOUR Consolidated Initial Disclosures.

32.   YOUR awareness of and response to "BRATZ," including, but not limited to: (a) YOUR reaction to "BRATZ" fashion dolls when they were first released in 2001; (b) when and why YOU first began to consider "BRATZ" a competitive threat to YOUR business; (c) YOUR strategies and efforts to compete with "BRATZ" since its release in 2001, including, but not limited to, (i) the creation, development, and release of "FLAVAS"; (ii) the redesign of "DIVA STARZ"; (iii) the creation, development, and release of "MY SCENE"; (iv) the origin, source, meaning and authenticity of the "Bratz Brief" produced in this ACTION at M 0079765-71; (v) the origin, source, meaning and authenticity of the Wal-Mart Hotline Report produced at M0080622-23; and (vi) the origin, source, meaning and authenticity of the "WWBD: What Would Brawer Do?" document produced at M0047508; (vii) the origin, source, meaning and authenticity of notes produced at PMH 2273, 2379-83, 1303-07, 2122-27, 2242-59, 2147-49 and any meeting(s) at which these notes were taken; and (viii) the origin, source, meaning

Exhibit  1  ,
P. 24

1   and authenticity of Board of Directors Update, dated September 2005, produced at

2   M0093291-93314; and (d) the extent to which "BRATZ" products are present at

3   YOUR offices, including, but not limited to, (i) the current and former MATTEL

4   employees who have or have had "BRATZ" products in their offices or

5   workspaces; and (ii) whether or not YOU have a room or area in YOUR offices

6   dedicated to "BRATZ" products.

7         33.   "MY SCENE," including, but not limited to: (a) the origins or sources

8   of inspiration of the "MY SCENE" female fashion dolls and packaging, including,

9   without limitation, (i) the purpose for which "MY SCENE" fashion dolls and

10  packaging were created; and (ii) the extent to which "BRATZ" fashion dolls and

11  packaging were an inspiration or factor in the development of "MY SCENE"

12  fashion dolls and packaging; (b) any changes to the appearance of the "MY

13  SCENE" female fashion dolls and packaging (including, but not limited to, any

14  changes to the head sculpts, facial features, or face painting) since their initial

15  release; (c) "MyScene Platypus" and the origin, source, meaning and authenticity of

16  the document produced at M0086367-M0086428; (d) the origins or sources of

17  inspiration for the MY SCENE THEMES and the extent to which any "BRATZ"

18  themes were an inspiration or factor in their development; (e) the origins or sources

19  of inspiration for the "MY SCENE" styling heads and the extent to which any

20  "BRATZ" "Funky Fashion Makeover Heads" were an inspiration or factor in their

21  development; (f) the origins or sources of inspiration for the "MY SCENE" plush

22  pets and packaging and the extent to which any "BRATZ PETZ" and packaging

23  was an inspiration or factor in their development; (g) marketing strategies and

24  consumer demographics for "MY SCENE"; and (h) the selection, approval process,

25  design and development of "MY SCENE" products and themes (including timing

26  and release dates).

27        34.   "WEE 3 FRIENDS," including, but not limited to (a) the origins or

28  sources of inspiration of "WEE 3 FRIENDS" and the extent to which "4-EVER

1  BEST FRIENDS" was an inspiration or factor in the development; and

2  (b) marketing strategies and consumer demographics for "WEE 3 FRIENDS"; and

3  (c) the selection, approval process, design and development of "WEE 3 FRIENDS"

4  (including timing and release dates).

5      35.    "LITTLE MOMMY," including but not limited to (a) the origins or

6  sources of inspiration of "LITTLE MOMMY" and the extent to which

7  "MOMMY'S LITTLE..." was an inspiration or factor in the development of

8  "LITTLE MOMMY"; (b) marketing strategies and consumer demographics for

9  "LITTLE MOMMY"; and (c) the selection, approval process, design and

10  development of "LITTLE MOMMY" (including timing and release dates).

11      36.    "ACCELERACERS," including, but not limited to (a) the origins or

12  sources of inspiration of "ACCELERACERS" and whether "ALIEN RACERS"

13  was a source of inspiration for or factor in the development of ACCELERACERS;

14  (b) YOUR decision re-brand one of YOUR "Hot Wheels" toy lines

15  "ACCELERACERS"; (c) marketing strategies and consumer demographics for

16  "ACCELERACERS"; and (d) the selection, approval process, design and

17  development of "ACCELERACERS" (including timing and release dates).

18      37.    "DIVA STARZ," including, but not limited to (a) the origins or

19  sources of inspiration of YOUR tag line "Do you have a passion for fashion?" and

20  the extent to which MGA's tag line "The Girls with a Passion for Fashion" was an

21  inspiration or factor; (b) the origins or sources of inspiration of the redesign of

22  "DIVA STARZ" fashion dolls including, without limitation, (i) the purpose for

23  which the redesigned "DIVA STARZ" products were created; and (ii) the extent to

24  which "BRATZ" was an inspiration or factor in the development of the redesigned

25  "DIVA STARZ"; (c) marketing strategies and consumer demographics for "DIVA

26  STARZ"; and (d) the selection, approval process, design and development of

27  "DIVA STARZ" (including timing and release dates).

28      38.    "FLAVAS," including, but not limited to (a) the origins or sources of

1    inspiration of "FLAVAS" and the extent to which "BRATZ" was an inspiration or

2    factor in the development of "FLAVAS"; (b) marketing strategies and consumer

3    demographics for "FLAVAS"; and (c) the selection, approval process, design and

4    development of "FLAVAS" (including timing and release dates).

5         39.    To the extent not covered by any of the topics above, the identity of

6    any product, project or concept that YOU contend MGA copied or infringed or

7    about which YOU contend that MGA misappropriated MATTEL's trade secrets or

8    other confidential information, and, for each such product, project or concept, (a)

9    all facts concerning its origin, creation, design and development; and (b) any facts

10   underlying YOUR claim or contention that MGA copied or infringed such product,

11   project or concept; and (c) MGA's use of MATTEL'S intellectual property,

12   confidential information or trade secret information in connection therewith.

13        40.    MATTEL's advertising, promotion, and licensing of MY SCENE,

14   BARBIE and DIVA STARZ, including but not limited to any direction or

15   information provided by or from any MATTEL employee to any MATTEL

16   advertising firm, public relations or publicity firm, or licensee concerning any

17   MGA products or advertising.

18        41.    The names, locations, job descriptions and length of employment of

19   current and former MATTEL employees and independent contractors responsible

20   for, who contributed to or who were involved in any aspect of the creation,

21   marketing, sales, design, and development of "MY SCENE," "WEE 3 FRIENDS,"

22   "LITTLE MOMMY," "ACCELERACERS," "DIVA STARZ," and "FLAVAS."

23        42.    Legal actions and claims regarding "MY SCENE" and/or "DIVA

24   STARZ," including, without limitation, any lawsuits, claims, or cease and desist

25   letters that (a) YOU have asserted against any PERSON regarding such PERSON's

26   alleged infringement of "MY SCENE" or "DIVA STARZ" or (b) any PERSON has

27   asserted against YOU that "MY SCENE" or "DIVA STARZ" infringes such

28   PERSON's intellectual property rights.

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

43.   YOUR claimed intellectual property rights in "MY SCENE" and "DIVA STARZ," including, without limitation, (a) any applications for registration and registration for copyright, patent, trademark, or any other right sought or obtained by YOU, and any COMMUNICATIONS pertaining thereto; and (b) any trademark searches performed in connection with the selection of the "MY SCENE" or "DIVA STARZ" names.

44.   Any evidence of confusion among consumers, retailers, licensees, suppliers, wholesalers, members of the press, or any other PERSONS between any MATTEL product or packaging on the one hand, and any MGA product or packaging, including, but not limited, to "MY SCENE" and "BRATZ" on the other, and the origin, source, meaning and authenticity the document produced at M0079817-39.

45.   Any statements or comments by any PERSON that a MATTEL product, packaging or ADVERTISEMENT is a copy or "knock off" of an MGA product, packaging or ADVERTISEMENT, including, but not limited, to such comments reflected in YOUR Wal-Mart Fall 2004 Toy Fair Recap (M0080055-65).

46.   Efforts by MATTEL to copy and imitate MGA's ADVERTISEMENTS, including, without limitation, the extent to which ADVERTISEMENTS for "BRATZ" or "ALIEN RACERS" were an inspiration or factor in the development of ADVERTISEMENTS for "MY SCENE" or "ACCELERACERS."

47.   Other than those previously filed and served in this ACTION or in which MGA's counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER or RELATE TO DIVA STARZ, MY SCENE, FLAVAS, and BARBIE that REFER OR RELATE TO the RELEVANT TIME PERIOD (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

48.    All COMMUNICATIONS between MATTEL on the one hand and present or former employees or contractors of MGA on the other.

49.    The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO DIVA STARZ, MY SCENE, FLAVAS, BARBIE, ACCELERACERS, LITTLE MOMMY, WEE 3 FRIENDS and POLLY POCKET, or their designs RELATING thereto, sought, made or obtained by, for or on behalf of YOU, including without limitation COMMUNICATIONS pertaining thereto.

50.    MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with distributors and retailers (including, but not limited to, Wal-Mart, Target, Toys 'R Us, Zellers, Bandai, Jumbo, and Woolworth U.K.), including, but not limited to (a) pressuring or influencing distributors or retailers not buy, sell or distribute "BRATZ" or other MGA products, to reduce shelf and display space for "BRATZ" or other MGA products, or to place "BRATZ" or other MGA products in unfavorable locations at retail outlets; and (b) COMMUNICATIONS with retailers or distributors RELATING TO whether MGA is providing below-market pricing or discontinuing a product line.

51.    MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere, modify, tamper with or alter MGA's retail product displays, including, but not limited to, COMMUNICATIONS between YOU (including, but not limited to, Erika Ashbrook and Connie Hibbert) and any current or former employee or representative of Wal-Mart (including, but not limited to, Heather Hocut and Barb Lubestine) regarding interfering, modifying, tampering with or altering MGA's retail product displays at Wal-Mart.

52.    MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with a licensee or licensing agent (including, but not limited to, Smith & Brooks, Zeon, Gemma International,

A-24

Exhibit ____,

P. 29

1   MV Sports, Hart Concepts, Random House, Egmont, Euromic, Character Licensing

2   and Marketing, JNH Israel, SuperRTL, Candide, and Rose Art Industries) and/or to

3   decline to renew a licensing agreement based in whole or in part on that licensee's

4   or licensing agent's relationship (or proposed relationship) with MGA.

5       53.   MATTEL's efforts, or knowledge of any efforts by any PERSON,

6   worldwide to interfere with or inhibit MGA's business with suppliers, factories, or

7   manufacturing facilities, including, but not limited to, Asahi Kasei Life & Living

8   Corporation, L.A.M.P. S.p.A. (a.k.a. Filo), Jetta Company Ltd., Early Light

9   Industrial Co. Ltd., Kaneka Corp., and Universal Commerce Corporation Limited.

10      54.   MATTEL's efforts, or knowledge of any efforts by any PERSON,

11  worldwide to interfere with or inhibit MGA's business, including, without

12  limitation (a) any threats or attempts to reduce advertising spending if a publication

13  reported on MGA, "BRATZ" or other MGA products; (b) any threats, directions or

14  instructions to market research firms (including, but not limited to,

15  ConsumerQuest) not to work with MGA; (c) any efforts to prevent or influence

16  former MATTEL employees or independent contractors (including, but not limited

17  to, Charlotte Broussard, Margo Eldridge, and Andrew Gallerani) from or against

18  working for, with, or on behalf of MGA; (d) COMMUNICATIONS with

19  Nickelodeon regarding MGA's proposed sponsorship of the "Kids' Choice

20  Awards" and MGA's ability to advertise on Nickelodeon; (e) YOUR efforts to

21  pressure or influence 4Kids Entertainment to cancel or discontinue "Bratz"

22  programming; (f) YOUR efforts to interfere with MGA's investment in or

23  acquisition of Zapf Creation AG; and (g) YOUR plans, attempts, efforts or intent to

24  interfere with business dealings or contractual relations between MGA and Smoby

25  Group, including, but not limited to, YOUR plans to acquire the "Majorette" brand.

26      55.   YOUR COMMUNICATIONS with any PERSON, including, but not

27  limited to, any supplier, factory manufacturer, distributor, retailer, licensee,

28  licensing agent, market research firm, and independent contractor, REFERRING

1  OR RELATING TO such PERSON'S business with MGA, including, but not
2  limited to, any efforts by MATTEL to persuade that PERSON (a) to cease doing
3  business with MGA; (b) to limit or reduce its business with MGA; or (c) increase
4  such PERSON'S business with MATTEL at the expense of that PERSON'S
5  business with MGA.

6      56.    YOUR knowledge of MGA's non-public information (regardless of
7  the source) and YOUR efforts worldwide to monitor, "spy on" or gain knowledge
8  of MGA's activities, unreleased products, and product creation, design and
9  development, including, but not limited to (a) contacts with MGA's current or
10  former employees about MGA or its business; (b) use or attempt to use confidential
11  informants, spies, or moles within MGA; (c) knowledge of any MGA product
12  before its release to the public; (d) the origin, source, meaning and authenticity of
13  the document produced at M0065557-58; (e) instances of obtaining access to MGA
14  showrooms, including obtaining access on false pretenses; (f) access to MGA's
15  products or showroom at any Toy Fair; (g) access to retailer's Plan-o-Grams or
16  merchandising display plans or display areas; and (h) access to MGA's confidential
17  product and pricing information through "competitive management agreements" or
18  "category management agreements" with retailers.

19      57.    MATTEL's efforts, or knowledge of any efforts by any PERSON,
20  worldwide to unfairly compete with MGA by eroding or damaging its goodwill,
21  including, but not limited to (a) efforts to generate negative publicity or consumer
22  comments about MGA, LARIAN, "BRATZ" or other MGA products;
23  (b) COMMUNICATIONS with any PERSON concerning whether "BRATZ" are
24  too sexy or otherwise inappropriate for girls; (c) any publicly-released studies or
25  market research about "BRATZ" or MGA products commissioned by or funded by
26  MATTEL; and (d) efforts to provide negative information about MGA to financial
27  or investment analysts (including, but not limited, to J.P. Morgan) regarding MGA
28  or MGA products.

A-26

Exhibit _/_ ,
P. _3/_

58.    YOUR COMMUNICATIONS with former MATTEL employees who now work (or subsequently worked) for MGA, including but not limited to letters sent to former MATTEL employees warning them not to disclose information about MATTEL.

59.    YOUR hiring of, or consideration of hiring, former MGA employees, including, without limitation, any procedures YOU have adopted to ensure that MGA's confidential proprietary information is protected.

60.    The magnitude and scope of layoffs of MATTEL employees during the RELEVANT PERIOD.

61.    NPD, including, but not limited to, (a) YOUR payments to NPD, (b) COMMUNICATIONS with NPD regarding MGA's alleged misuse of NPD data; (c) YOUR involvement with and knowledge of NPD's decision to terminate MGA's subscription; (d) YOUR use and misuse of NPD data since 2001; and (e) YOUR efforts to pressure, convince, or request that NPD change product classifications categories involving "BRATZ" or other MGA products and whether such efforts were successful.

62.    CARU, including, but not limited to (a) COMMUNICATIONS with CARU regarding MGA's ADVERTISEMENTS, amendments to MGA ADVERTISEMENTS, or MGA's website, including, but not limited to, restrictions placed or suggested to be placed on the foregoing; (b) any formal or informal complaints to CARU regarding MGA's ADVERTISEMENTS or MGA's website; and (c) subsidies given to CARU by MATTEL.

63.    TIA, including, but not limited to (a) MATTEL's role in planning, its participation in, or involvement with TIA's Toy-of-the-Year Awards since 2001; and (b) the change in the voting procedures of "Toy of the Year" award from a "people's choice" award to an award based on votes from retailers, the media, and based on NPD data.

A-27

Exhibit ___1___,
P. _32_

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1    64.   The facts supporting each of the Affirmative Defenses in YOUR

2  Second Amended Answer in Case No. 05-2727, dated July 12, 2007.

3    65.   The facts REFERRING OR RELATING to MGA's Third Affirmative

4  Defense of Unclean Hands in MGA's Answer and Affirmative Defenses dated

5  August 13, 2007, including, but not limited to (a) MATTEL'S efforts to undermine

6  MGA's business and to "kill" Bratz at any cost, including but not limited to

7  Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products,

8  packaging, themes, and advertising (including for Mattel products MY SCENE,

9  DIVA STARZ, WEE 3 FRIENDS, ACCELERACERS, and POLLY POCKET) and

10  engage in other acts of unfair competition against MGA as alleged in MGA's

11  complaint against MATTEL; (b) MATTEL'S efforts to create negative publicity or

12  press about MGA, MGA products, BRYANT, LARIAN, or MGA employees; (c)

13  MATTEL'S efforts to fund or commission market research or studies that portray

14  BRATZ or MGA products negatively; (d) MATTEL'S efforts to interfere with

15  MGA's acquisition of or investment in Zapf Creation AG; (e) MATTEL'S efforts

16  to include negative references to MGA or BRATZ on MATTEL's "We Believe in

17  Girls" website; (f) MATTEL'S efforts or intent to interfere with business dealings

18  or contractual relations between MGA and Smoby Group; (g) influencing

19  Nickelodeon to reject MGA advertisements or to limit time slots for

20  advertisements; (h) assisting parties in lawsuits against MGA; (i) monitoring,

21  "spying on" or gaining knowledge of MGA's trade secrets, non-public information,

22  non-public activities, unreleased products, and/or product development; (j) gaining

23  access, or attempts to gain access, to MGA showrooms, Plan-o-Grams,

24  merchandising displays, Toy Fair displays on false pretenses; (k) wrongfully

25  obtaining MGA's costs and sales information through Mattel-employed category

26  managers at retailers; (l) inducing non-party customers to breach confidentiality

27  agreements with MGA and divulge non-public information about MGA's

28  unreleased products; (m) covertly investigating MGA, its officers and employees,

1    and their family members; (n) contacting persons under false pretense in order to
2    interrogate them about BRATZ and this litigation; (o) coercing MATTEL
3    employees to accept restrictive covenants (right before massive layoffs) and non-
4    compete clauses and other efforts to prevent prospective MGA employees from
5    accepting offers of employment; (p) MATTEL'S delay in suing BRYANT because,
6    *inter alia*, MATTEL wanted BRYANT to testify in an unrelated MATTEL case;
7    (q) falsely inflating its BARBIE sales figures in an effort to mislead the public and
8    retailers; and (r) taking all measures to conceal its bad acts, including the willful
9    non-retention and destruction of documents.

10       66.    The name, address and telephone number of each PERSON or entity
11   with whom MATTEL has communicated regarding this ACTION or the facts and
12   circumstances giving rise to this ACTION; the facts and circumstances surrounding
13   each such COMMUNICATION, including, without limitation, the date, nature and
14   substance of each such COMMUNICATION; and the name, address and telephone
15   number of each PERSON or entity that may have discoverable knowledge,
16   information or DOCUMENTS.

17       67.    All efforts made by MATTEL, directly or indirectly, to contact or
18   communicate with BRYANT since the commencement of the ACTION regarding
19   any subject, whether or not related to or involving the ACTION, and MATTEL's
20   knowledge of any efforts by third-parties or its counsel to contact or communicate
21   with BRYANT since the commencement of the ACTION.

22       68.    The existence, nature and extent of any third-party funding or
23   reimbursement of fees and costs incurred by MATTEL in prosecuting or defending
24   this ACTION, the sharing with any third-party in the financial outcome of this
25   litigation, and the nature and extent of any insurance, indemnification, or similar
26   agreement or arrangement to fund, pay for or reimburse MATTEL for any potential
27   liability it may incur in connection with this ACTION, and the fee arrangement
28   between MATTEL and Quinn Emanuel Urquhart Oliver & Hedges LLP.

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

69.     The relationship between Farhad (Fred) Larian and MATTEL, including, but not limited to (a) COMMUNICATIONS between Farhad (Fred) Larian and MATTEL's counsel; (b) the identity of any DOCUMENTS that Farhad (Fred) Larian has provided to or made available for inspection by MATTEL (including MATTEL's counsel); (c) the identity of any DOCUMENTS that MATTEL (including its counsel) has provided to or made available for inspection by Farhad (Fred) Larian; and (d) MATTEL's efforts to hire Farhad (Fred) Larian as a consultant or expert.

70.     MATTEL's COMMUNICATIONS internally or to third-parties, or assistance to third parties, concerning claims or potential claims against MGA, or relating to MGA products, either directly or indirectly, including COMMUNICATIONS with Art Attacks Ink, LLC; Hasbro; Toys & Trends (Hong Kong) Limited; Cityworld Limited; Jurg Willi Kesselring; UbiSoft Entertainment, S.A. ; and Dyscom Corp. dba FilmBratz Productions and Hans Dys.

71.     YOUR policies, practices and procedures, written or otherwise, regarding management, preservation and/or destruction of ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

72.     The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS relevant to the design, development, sales and marketing of YOUR accused products, as identified in the COMPLAINT.

73.     The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS created or stored by BRYANT; TREANTAFELLES; BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Richard de Anda and any person working with him in Mattel's Global Security department involved in any way in investigating BRYANT, Cassidy Park, Ann Driskill, MGA, LARIAN or any current or former MGA employee; Tim Kilpin; Matthew Bousquette; Robert Eckert; Chuck Scothon; Kislip Ongchanko; Jill Nordquist; Rob Hudnut; Ivy Ross; Alan Kaye; Rene Pasko; Adrienne Fontanella; Tina Patel; Julia Jensen; Julia

1   Marine; Fred Kawashima; Evelyn Viohl; Anna Rhee; and any other person who
2   currently works or previously worked for MATTEL who MATTEL knows or has
3   reason to believe has knowledge or information concerning the claims or defenses
4   in this litigation or the facts underlying them.

5       74.    YOUR policies, practices and procedures, written or otherwise,
6   regarding employee use of company computers and ELECTRONIC RECORDS
7   during the RELEVANT TIME PERIOD, including but not limited to (a) Desktop
8   computers; (b) Laptop computers; (c) Home-based computers used for company
9   business or communication purposes; (d) Removable media (e.g., USB drives); and
10   (e) PDAs (Personal Digital Assistants).

11       75.    Computers currently in use and computers no longer in use by YOU
12   during the RELEVANT TIME PERIOD, including (a) Number, types and
13   locations; (b) Operating systems with versions and dates of use; and (c) Application
14   software with versions and dates of use.

15       76.    YOUR policies, practices and procedures, written or otherwise,
16   regarding the processing of YOUR computers after an employee leaves YOUR
17   employ.

18       77.    YOUR network architecture during the RELEVANT TIME PERIOD,
19   including (a) Network topology; (b) File-naming conventions; (c) Access
20   authorization; and (d) Remote access.

21       78.    Document management systems used by YOU during the
22   RELEVANT TIME PERIOD.

23       79.    Email systems used by YOU during the RELEVANT TIME PERIOD.

24       80.    Instant messaging systems used by YOU during the RELEVANT
25   TIME PERIOD.

26       81.    YOUR intranets deployed during the RELEVANT TIME PERIOD.

27       82.    YOUR archival systems and procedures, including to/from disk, tape,
28   or other media during the RELEVANT TIME PERIOD.

Exhibit _1_,
P. _26_

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

83.   YOUR backup procedures, inventories and schedules, including tape reuse cycles for ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

84.   YOUR efforts to identify and preserve potentially physical and ELECTRONIC RECORDS potentially relevant to the claims and defenses in this ACTION, the dates and circumstances of each and every such efforts, the circumstances surrounding such efforts, and whether such efforts were in anticipation of litigation involving YOU, BRYANT, and/or MGA.

85.   YOUR policies, practices and procedures, written or otherwise, regarding monitoring or reviewing of employee-created ELECTRONIC RECORDS by any technical means or by or at the direction of any department at MATTEL, including but not limited to Information Technology, Human Resources and/or "Global Security" or "Worldwide Security" during the RELEVANT TIME PERIOD.

86.   YOUR COMMUNICATIONS with American Greetings regarding BRATZ and competing with BRATZ, including by using research and dolls such as Holly Hobby.

1697009

A-32

Exhibit 1 ,
P. 37

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**PROOF OF PERSONAL SERVICE**

1

2       I am a citizen of the United States and employed in the County of Los

3   Angeles, State of California, by Nationwide Legal, whose address is 316 W. 2nd

4   Street, Suite 705, Los Angeles, CA 90071, and which has been employed by a

5   member of the bar of this Court at whose direction the service was made.  I am over

6   the age of eighteen years and not a party to the within action.  On September 5,

7   2007, I personally served the following:

8

9           **MGA Entertainment, Inc.'s Notice of Deposition of**
            **Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6)**

10          **Notice of Deposition of Tina Patel**

11

12  by delivering a copy thereof to the office of the following, and either handing the

13  copy to or leaving it with ____*George Lee/ Clerk*____ of the office

    thereof:

14

15          Michael T. Zeller
            Timothy Alger

16          Quinn Emanuel Urquhart Oliver & Hedges, LLP
            865 South Figueroa Street, 10th Floor

17          Los Angeles, CA 90017

18          I declare under penalty of perjury under the laws of the United States that the

19  above is true and correct.  Executed on September 5, 2007, at Los Angeles,

20  California.

21

22

23

24          _____
            SIGNATURE

25

26          *Eduardo Castillo*
            PRINT NAME

27

28

Exhibit _1_ ,
P. _38_

1   DALE M. CENDALI (admitted *pro hac vice*)
    dcendali@omm.com
2   DIANA M. TORRES (S.B. #162284)
    dtorres@omm.com
3   STEVEN J. OLSON (S.B. #182240)
    solson@omm.com
4   O'MELVENY & MYERS LLP
    400 South Hope Street
5   Los Angeles, California 90071-2899
    Telephone:  (213) 430-6000
6   Facsimile:   (213) 430-6407

7   PATRICIA GLASER (S.B. #55668)
    pglaser@chrisglase.com
8   CHRISTENSEN, GLASER, FINK,
    JACOBS, WEIL & SHAPIRO, LLP
9   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
10  Telephone:  (310) 553-3000
    Facsimile:   (310) 557-9815
11
    Attorneys for Counter-defendants MGA
12  Entertainment, Inc., Isaac Larian, MGA
    Entertainment (HK) Limited, and MGAE de
13  Mexico S.R.L. de C.V.

14

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17                   EASTERN DIVISION

18

19  CARTER BRYANT, an individual          Case No.  CV 04-09049 SGL (RNBx)
                                          (consolidated with CV 04-9059 &
20                 Plaintiff,             CV 05-2727)

21           v.                           **PROOF OF SERVICE**

22  MATTEL, INC., a Delaware
    Corporation,
23
                   Defendant.            Judge:        Hon. Stephen G. Larson
24  CONSOLIDATED WITH                    Courtroom:    1

25  MATTEL, INC. v. BRYANT and
26  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
27

28
                              Exhibit __1__,
    LA2:833516.2                P. __39__                    PROOF OF SERVICE

1

## PROOF OF SERVICE

2          I, Cecelia A. Rolland, declare:

3          I am a resident of the State of California and over the age of eighteen
years, and not a party to the within action; my business address is 400 South Hope
4   Street, Los Angeles, California 90071-2899.  On September 5, 2007, I served the
within documents:

5

### MGA Entertainment, Inc.'s Notice of Deposition of
6   ### Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6)

7          **Notice of Deposition of Tina Patel**

8   ☒   by placing the document(s) on the attached list in a sealed envelope with
postage thereon fully prepaid, in the United States mail at Los Angeles,
9        California addressed as set forth below.  I am readily familiar with the firm's
practice of collecting and processing correspondence for mailing.  Under that
10      practice it would be deposited with the U.S. Postal Service on that same day
with postage thereon fully prepaid in the ordinary course of business.  I am
11      aware that on motion of the party served, service is presumed invalid if the
postal cancellation date or postage meter date is more than one day after date
12      of deposit for mailing in affidavit.

13         Michael T. Zeller
           Timothy Alger
14         Quinn Emanuel Urquhart Oliver & Hedges, LLP
           865 South Figueroa Street, 10th Floor
15         Los Angeles, CA 90017
           talger@quinnemanuel.com
16

17         Patricia Glaser
           Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
18         10250 Constellation Boulevard, 19th Floor
           Los Angeles, CA 90067
19         pglaser@chrisglase.com

20

21         Michael H. Page
           Keker & Van Nest LLP
22         710 Sansome Street
           San Francisco, CA 94111
23         mpage@kvn.com

24         James W. Spertus, Esq.
           Law Offices of James W. Spertus
25         12100 Wilshire Blvd., Suite 620
           Los Angeles, CA 90025
26         jim@spertuslaw.com

27

28

LA2:833516.2                                    1                        PROOF OF SERVICE

Exhibit _1_,
P. _40_

1

2  ☒  by causing to be personally served the document(s) listed above on the person(s) listed below.

3

4      Michael T. Zeller
       Timothy Alger
5      Quinn Emanuel Urquhart Oliver & Hedges, LLP
       865 South Figueroa Street, 10th Floor
6      Los Angeles, CA 90017
       talger@quinnemanuel.com

7

8  ☐  by sending by electronic mail the documents(s) on the attached list to the person(s) listed below.

9

10

11      I declare under penalty of perjury under the laws of the United States that the above is true and correct.

12      Executed on September 5, 2007, at Los Angeles, California.

13

14                                    _Cecelia A. Rolland_____
15                                       Cecelia A. Rolland

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:833516.2                           2                        PROOF OF SERVICE

Exhibit  1 ,
P.  41

# Exhibit 2

1  ROBERT F. MILLMAN, Bar No. CA 062152
   DOUGLAS A. WICKHAM, Bar No. CA 127268
2  KEITH A. JACOBY, Bar No. 150233
   LITTLER MENDELSON
3  A Professional Corporation
   2049 Century Park East, 5th Floor
4  Los Angeles, CA  90067.3107
   Telephone:   310.553.0308
5  Facsimile:   310.553.5583

6  Attorneys for Defendant and Counter-Claimant
   CARTER BRYANT

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware                Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                          HON. NORA M. MANELLA
                   Plaintiff,
13                                          NOTICE OF DEPOSITION OF
         v.                                 PLAINTIFF AND COUNTER-
14                                          DEFENDANT MATTEL, INC.
    CARTER BRYANT, an individual;
15  and DOES 1 through 10, inclusive,       [F.R.C.P. 30(b)(6)]

16                 Defendant.               Date:      January 11, 2005
                                            Time:      9:30 a.m.
17                                          Place:     Littler Mendelson, PC
                                                       2049 Century Park East
18                                                     Suite 500, Los Angeles
                                                       California 90067
19  CARTER BRYANT, on behalf of
    himself, all present and former
20  employees of Mattel, Inc., and the
    general public,
21
                   Counter-Claimant,
22
         v.
23
    MATTEL, INC., a Delaware
24  Corporation,

25                 Counter-Defendant.

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Exhibit  2  ,
P.  42

**TO  PLAINTIFF MATTEL INC. AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant and Counter-Claimant Carter Bryant ("Bryant") in the above-captioned matter shall take the deposition of the Person(s) Most Knowledgeable from Plaintiff and Counter-Defendant Mattel, Inc. ("Plaintiff" or "Mattel") at the offices of Littler Mendelson, 2049 Century Park East, Fifth Floor, Los Angeles, California 90067, beginning at 9:30 a.m. on  January 11, 2005.  The deposition shall continue from day to day excluding Saturdays, Sundays and holidays, until completed.  The deposition will be taken before an officer or other person duly authorized to administer oaths and shall be recorded by stenographic, sound and visual (videotape), and real-time transcription means.

Pursuant to Rule 30(b)(6), the deponent is directed to designate one or more officers, directors, managing agents or other individuals able to fully and completely testify on its behalf concerning the matters listed in Exhibit "A" attached hereto.

Dated: December 21, 2004

Respectfully submitted,

ROBERT F. MILLMAN
DOUGLAS A. WICKHAM
KEITH A. JACOBY

DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
and Counter-Claimant
CARTER BRYANT

Exhibit 2,
P. 43

## EXHIBIT A

### Definitions

1.  "You," "Your" and "Mattel" refer to Plaintiff Mattel, Inc. and its officers, directors, agents, employees and all individuals acting under its direction or control or on its behalf.

2.  "Complaint" means the complaint filed by Mattel against Bryant in the Superior Court of the State of California for the County of Los Angeles dated April 27, 2004.

3.  "Communication" means any oral or written transmittal or receipt of words or information, by whatever manner or means, and regardless of how or by whom the communication was initiated and shall include any contact between two or more persons, including but not limited to written contact by such means as letter, memorandum, telegram, telex, email, facsimile or any Document, and oral contact by such means as face-to-face meeting or telephone.

4.  "Concerning" means relating to, referring to, describing, discussing, mentioning, evidencing, or constituting.

5.  "Contract" and/or "Agreement" mean the contract or agreement itself, and any drafts thereof, together with all schedules, exhibits, attachments or addenda thereto and any amendments of the foregoing.

6.  "Document(s)" means all "WRITINGS" and "RECORDINGS," including, but not limited to, writings and records of every type and description including, but not limited to, notes (including notes made contemporaneously with meetings or conversations or thereafter), books, records, letters, telegrams, memoranda, electronic mail messages (including electronic mail messages stored on network or individual servers, hard drives, back up tapes or other storage media, collectively referred to as "e-mail"), reports, studies, speeches, calendars or diary entries, tabulations, data compilations, drawings, designs, sketches, paintings, artwork, graphs, charts, photographs, computer disks, backup tapes and diskettes and

2.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1   other data compilations from which information can be obtained or tabulated through

2   detection devices into reasonably usable forms.  "Document" also includes

3   reproductions or film impressions of any of the aforementioned documents, tape

4   recordings and copies of documents, which are not identical duplicates of the originals

5   and copies of all documents of which the originals are not in the possession, custody

6   or control of Mattel.

7        7.    "Relate To" and "Relating To" mean in any way directly or

8   indirectly, concerning, referring to, pertaining to, mentioning, discussing, describing,

9   disclosing, confirming, supporting, evidencing, representing, or being connected with

10  a stated subject matter or any aspect thereof.

11       8.    "And" and "Or" mean either the conjunctive or the disjunctive as context

12  may require so that the meaning of the term is inclusive rather than exclusive.

13       9.    "Person" or "Persons" means any or all entities including, without

14  limitation, any or all individuals, single proprietorships, associations, companies,

15  firms, partnerships, joint ventures, corporations, employees or former employees, or

16  any other business, governmental or labor entity, and any division, departments or

17  other units thereof.

18       10.   "MGA" means and refers to MGA Entertainment, Inc., formerly known

19  as ABC International Traders, Inc. dba MGA Entertainment and Micro Games of

20  America, Inc., and each of its officers, directors, agents, and employees or any other

21  person acting on its behalf.

22       11.   "Bryant" means and refers to Defendant Carter Bryant and each of his

23  agents, employees or any other person acting on his behalf.

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

3.

Exhibit   2  ,
P.   45

## DESIGNATED SUBJECTS OF TESTIMONY AT PERSONS MOST KNOWLEDGEABLE DEPOSITION

1.    All Contracts, and the terms thereof, that You contend You had with Bryant.

2.    All contractual and non-contractual duties and obligations Bryant owed or performed for Mattel during his employment with Mattel, and thereafter.

3.    All of Bryant's acts or omissions which breached any contractual or non-contractual duty or obligation Bryant owed to Mattel.

4.    All of Bryant's acts or omissions which breached any duties or obligations imposed by the Conflict of Interest Questionnaire and/or the Employee Confidential Information and Inventions Agreement.

5.    All Mattel proprietary or confidential information Bryant had access to during his employment with Mattel.

6.    All of Bryant's acts or omissions pursuant to which he aided, assisted and worked for a competitor of Mattel while employed by Mattel from 1995 to the present.

7.    The services and property belonging to Mattel that Bryant provided to any third party, including MGA, from 1995 to the present.

8.    All acts, omissions, circumstances and/or evidence showing, or tending to show, that any and all products of MGA, including but not limited to, any and all products sold under the trade name "Bratz," originated from, were derived from, are based upon, are copied or incorporated from, or are substantially or confusingly similar to, any design, research and developmental work, work in progress, or product owned at any time by Mattel or created by any Mattel employee, including but not limited to Bryant, or by any independent contractor during the time that such Person was working for Mattel.

9.    All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Toon Teens."

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

4.

Exhibit _2_ ,
P. _46_

1        10.    All facts and circumstances showing the conception, origination,

2    creation, development and/or reduction to practice of "My Scene Barbie" and each of

3    the other "My Scene" characters or dolls.

4        11.    All facts and circumstances showing the conception, origination,

5    creation, development and/or reduction to practice of "Diva Starz."

6        12.    All facts and circumstances showing the conception, origination,

7    creation, development and/or reduction to practice of "Mini Diva Starz."

8        13.    All acts, omissions, circumstances and/or evidence showing, or tending

9    to show, that any product sold at any time by MGA under the trade name "Bratz"

10    originated from, is derived from, is based on, copies, incorporates, or is substantially

11    or confusingly similar to any design or work product owned at any time by Mattel or

12    created by Bryant during the time Bryant was working for Mattel.

13        14.    All acts, omissions, circumstances and/or evidence showing, or tending

14    to show, that Mattel has been damaged or suffered any financial or other loss by any

15    act or omission of Bryant.

16        15.    All acts, omissions, circumstances and/or evidence showing, or tending

17    to show, when Mattel first became aware of any alleged wrongful conduct of Bryant.

18        16.    All acts, omissions, circumstances and/or evidence showing, or tending

19    to show, the manner and mode by which Mattel first became aware of any alleged

20    wrongful conduct of Bryant.

21        17.    All acts, omissions, circumstances and/or evidence showing, or tending

22    to show, when You first became aware that Bryant was involved in the conception,

23    creation, design and/or reduction to practice of Bratz.

24        18.    All acts, omissions, circumstances and/or evidence showing, or tending

25    to show, how You first became aware that Bryant was involved in the conception,

26    creation, design and/or reduction to practice of Bratz.

27        19.    All acts, omissions, circumstances and/or evidence showing, or tending

28    to show, all actions taken by You, including but not limited to all circumstances

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

· 5.

1   surrounding any investigations you have undertaken, relating to Bratz after You

2   learned that Bryant was involved in the conception, creation, design and/or reduction

3   to practice of Bratz.

4       20.   All acts, omissions, circumstances and/or evidence showing, or tending

5   to show, all actions taken by You, including but not limited to all circumstances

6   surrounding any investigations You have undertaken, relating to Bryant and any act or

7   omission of Bryant that breached any contractual or non-contractual duty or obligation

8   Bryant owed to Mattel.

9       21.   All Communications regarding Bryant's involvement in the conception,

10  creation, design and/or reduction to practice of Bratz from 1998 until the date of the

11  filing of the Complaint.

12      22.   All acts, omissions, circumstances and/or evidence showing, or tending

13  to show, that Bryant misappropriated Mattel property, including without limitation

14  intellectual property, at any time.

15      23.   All acts, omissions, circumstances and/or evidence showing, or tending

16  to show, that Bryant owed fiduciary duties to, or occupied a fiduciary relationship

17  with, Mattel.

18      24.   All acts, omissions, circumstances and/or evidence showing, or tending

19  to show, that prior to October 21, 2000, Mattel had any toy concept or project which

20  had not yet been offered for sale to the public, including without limitation, any toy

21  concept or project in the pre-production or development phase, that Bryant improperly

22  copied, replicated, borrowed or otherwise used in whole, or in any part, during or after

23  Bryant's employment with Mattel.

24      25.   All measures taken by Mattel including, without limitation, any legal

25  action brought or threatened to be brought (including in demand letters or other

26  notices), from 1998 to the present to achieve, or attempt to achieve, compliance with

27  or adherence to any or all of the terms and conditions of Mattel's "Employee

28  Confidential Information and Inventions Agreement" (including all forms or versions

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

Exhibit  2  ,
P.  48

1  of that agreement) from 1998 to the present, and/or Mattel's "Conflict of Interest

2  Questionnaire" (including all forms or versions of that agreement) from 1998 to the

3  present.

4       26.    Communications, discussion, meetings, analyses and the decision-

5  making process regarding measures taken or contemplated by Mattel including,

6  without limitation, any legal action brought or threatened to be brought (including

7  demand letters or other notices) against Bryant including, without limitation, the filing

8  of the Complaint.

9       27.    Mattel's electronic mail system's ability to retrieve electronic mail

10  messages from any Mattel server, Mattel electronic mail archive tape, or hard drive

11  networked to the Mattel computer network, as that network existed from January 1998

12  to the present.

13       28.    Mattel's policies or procedures or practice in effect or use, from January

14  1998 to the present, regarding Document retention or destruction (including with

15  respect to e-mails), including without limitation, e-mail backup procedures and

16  policies; location of saved or backed-up e-mails, procedures for accessing saved or

17  backed-up e-mails; policies regarding deletion of e-mails; and Mattel's document

18  retention or destruction policies (including with respect to emails) when Mattel had

19  notice of a potential claim or lawsuit in each of the years 1998, 1999, 2000, 2001,

20  2002, 2003 and 2004.

21       29.    Mattel's policies, procedures and practices in effect or use, at any time

22  from January 1, 1998 to the present, regarding Document retention, deletion and

23  destruction (including with respect to electronic documents and e-mail), including

24  without limitation, e-mail backup policies, procedures and practices in effect or use;

25  location of saved or backed-up e-mails, procedures for accessing saved or backed-up

26  e-mails; policies, procedures and practices in effect or use regarding deletion of e-

27  mails; and policies, procedures and practices in effect or use regarding retention of e-

28  mails.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

7.

Exhibit  2  ,
P.  99

30.     All hardware and software used by Mattel at any time from January 1, 1998 to the present for Mattel's e-mail systems including, without limitation, all on-site and off-site back-up computer systems and files, exchange servers and computer storage space.

31.     The ability of Mattel to retrieve e-mail messages from any server, disk, drive, archive disk, tape, server or drive, storage disk, tape server or drive, individual computer hard drive, or any hard drive or server networked to any Mattel computer network, at any time from January 1, 1998 to the present.

32.     Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) when Mattel is aware of a potential claim or lawsuit in which it may be involved.

33.     Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began considering or analyzing any potential claim or lawsuit against MGA or Bryant regarding "Bratz" or other claim of any nature.

34.     Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began investigating facts pertaining to Bryant's involvement with MGA or "Bratz" or any claim of any nature, actual or potential, against Bryant.

35.     Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction  including with respect to e-mails and other electronic documents) after Mattel began investigating facts pertaining to the relationship, if any, between Bryant's involvement with MGA or "Bratz" and work or projects that Bryant may have seen during his employment with Mattel.

8.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Exhibit  2  ,
P. 50

1    36.   Files (including human resources and legal files and files kept or
2    maintained at business locations and personal residences), locations, offices,
3    computers (including business, lap top and residence computers), warehouses, records
4    centers, file rooms, archives, servers, storage facilities, back up or storage tapes, and
5    any and other method and/or location for maintaining or storing Documents that were
6    searched or reviewed by Mattel when searching for Documents responsive to Bryant's
7    Request for Identification and Production of Documents and Tangible Things (Set
8    One) including, without limitation, all efforts made and steps undertaken when
9    searching for and producing Documents in a tangible, electronic, magnetic or any
10   other form.

11   37.   The facts and circumstances surrounding the filing of the copyright
12   registration for "Toon Teens, produced by Mattel as Document Control Nos.
13   M0012564-65.

14   38.   The development of "Toon Teens," including Your decision to not offer
15   "Toon Teens" for sale to the public.

16   39.   What actions, if any, You took with respect to the "Toon Teens" project
17   after You decided not to offer this project for sale to the public.

18   40.   The current status of the "Toon Teens" project.

19   41.   All statements of Mattel or ex-Mattel employees in the July 2003 Wall
20   Street Journal article (produced by Mattel to Bryant in the present case), including,
21   without limitation, "Inside Mattel, some are convinced the Bratz borrow liberally from
22   a Mattel project that was scrapped at the testing stage in 1998"; "But the Bratz'
23   oversized heads -- with their pursed lips and cartoonist eyes -- are 'virtually identical'
24   to the heads of the dolls her team created"; "Anyone who passed by [Lily Martinez's]
25   cubicle would see the picture up on the wall"; and "The big heads, the big eyes, the
26   big feet -- they were all the same [as the Bratz]."

27   42.   Documents produced by Mattel as Document Control Nos. M0012567-
28   71.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

9.

Exhibit  2  ,
P.  51

1       43.    Documents produced by Mattel as Document Control Nos. M0012572-
2   78.

3       44.    Documents produced by Mattel as Document Control Nos. M0012579-
4   86.

5       45.    Documents produced by Mattel as Document Control Nos. M0012587.

6       46.    Documents produced by Mattel as Document Control Nos. M0012594-
7   617 and Nos. M0001558-81.

8       47.    Mattel's phone log system, and the maintenance, storage and ability to
9   retrieve phone logs from an individual extension, such as the log produced by Mattel
10   as Document Control Nos. M0001808-24, including Bryant's phone logs for
11   extension 6099 for October 2000.

12       48.    All board of director's meeting minutes that evidence, relate or refer to
13   Bryant from January 1998 to the present.

14       49.    All versions of the "Employee Confidential Information and Inventions
15   Agreement" used by Mattel since January 1, 1995 including, without limitation, the
16   "Employee Confidential Information and Inventions Agreement" produced by Mattel
17   as Document Control Nos. M0001638-39 and the "Employee Confidential
18   Information and Inventions Agreement" attached to the Complaint as Exhibit "A."

19       50.    All versions of the "Conflict of Interest Agreement" used by Mattel since
20   January 1, 1995 including, without limitation, the "Conflict of Interest Agreement"
21   produced by Mattel as Document Control Nos. M0001636-37 and the "Conflict of
22   Interest Agreement" attached to the Complaint as Exhibit "B."

23       51.    The "Proprietary Information Checkout" form produced by Mattel as
24   Document Control No. M0001597.

25       52.    All forms or other documents which Mattel has requested prospective
26   and actual employees to sign since January 1, 1995.

27       53.    All recording and tracking of the time spent by Bryant while working on
28   various Mattel projects.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

10.

Exhibit 2 ,
P. 52

1      54.   Bryant's "Job Summary" report, produced by Mattel as Document

2 Control Nos. M001667-68.

3      55.   All acts, omissions, circumstances and/or evidence showing, or tending

4 to show, that Bryant made affirmative misrepresentations to any and all Mattel

5 employees upon his departure from Mattel.

6      56.   Bryant's "Exit Interview Report" dated October 19, 2000, produced by

7 Mattel as Document Control No. M0001654.

8

9

10

11

12

13   Los_Angeles:388196.2 028307.1010

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

11.

Exhibit 2 ,
P. 53

# PROOF OF SERVICE BY MESSENGER

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Allstar Messenger Service, 345 South Figueroa Street, Suite 305, Los Angeles, California 90071. On December 21, 2004, I personally served:

**NOTICE OF DEPOSITION OF PLAINTIFF AND COUNTER DEFENDANT MATTEL, INC.**

by delivering copies thereof to:

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Diana M. Torres, Esq.
O'Melveny & Myers LLP
400 S. Hope Street, 10th Floor
Los Angeles, CA 90071

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 21, 2004, at Los Angeles, California.

_Marcus Robinson_
MARCUS ROBINSON

Los_Angeles:388357.1 028307.1010

PROOF OF SERVICE

Exhibit 2 , P. 54

**Exhibit 3**



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
  Shane H. McKenzie (Bar No. 228978)
  865 South Figueroa Street, 10th Floor
  Los Angeles, California  90017-2543
  Tel.: (213) 443-3000
  Fax:  (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware corporation,

                    Plaintiff,

          v.

CARTER BRYANT, an individual, and DOES 1 through 10, inclusive,

                    Defendants.

CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,

                    Cross-Complainant,

          v.

MATTEL, INC., a Delaware corporation,

                    Cross-Defendant.

Case No. CV 04-09059 NM (RNBx)

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)

Date:      March 1, 2005
Time:      9:30 a.m.
Location:  865 S. Figueroa Street
           10th Floor
           Los Angeles, CA 90017

07209/637198.1

NOTICE OF DEPOSITION OF MGA

Exhibit  3  ,
P.  55

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 1, 2005, beginning at 9:30 a.m., plaintiff and counter-defendant Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment Inc. the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.

DATED: February 16, 2005       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
Michael T. Zeller
Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

07209/637198.1

-2-

NOTICE OF DEPOSITION OF MGA

Exhibit 3 ,
P. 56

# EXHIBIT A

## Definitions

1.    "YOU" or "YOUR" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    The "MGA PROJECTS" refers to those projects, sometimes called "Angel Faces" and/or "Prayer Angels," that are the subject of MGA000706-08, MGA000710-12,  MGA000714-16,  MGA000718-20,  MGA000724-28  and MGA000734.

3.    The "SUBJECT DOCUMENTS" means each of the following: MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-26, MGA000724-28 and MGA000734.

4.    "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

5.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,

1   discs, printouts and records of all types, studies, instruction manuals, policy manuals
2   and statements, books, pamphlets, invoices, canceled checks and every other device
3   or medium by which or through which information of any type is transmitted,
4   recorded or preserved.   Without any limitation on the foregoing, the term
5   "DOCUMENT" shall include all copies that differ in any respect from the original or
6   other versions of the DOCUMENT, including, but not limited to, all drafts and all
7   copies of such drafts or originals containing initials, comments, notations, insertions,
8   corrections, marginal notes, amendments or any other variation of any kind.

9         6.   "PERSON" or "PERSONS" means all natural persons,
10  partnerships, corporations, joint ventures and any kind of business, legal or public
11  entity or organization, as well as its, his or her agents, representatives, employees,
12  officers and directors and any one else acting on its, his or her behalf, pursuant to its,
13  his or her authority or subject to its, his or her control.

14        7.   The singular form of a noun or pronoun includes within its
15  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of
16  the masculine form of a pronoun also includes within its meaning the feminine form
17  of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also
18  within its meaning all other tenses of the verb so used, whenever such construction
19  results in a broader request for information; and "and" includes "or" and *vice versa*,
20  whenever such construction results in a broader disclosure of documents or
21  information.

22

23                    **Topics for Testimony**

24

25        1.   The identity of each PERSON involved in the MGA PROJECTS,
26  and the nature and time period(s) of each such PERSON's involvement therein.
27        2.   The conception, design and development of the MGA PROJECTS,
28  including without limitation the chronology thereof.

07209/637198.1                           -4-
                                                      NOTICE OF DEPOSITION OF MGA

Exhibit _3_,
P. _58_

1    3.    The identity of, and the design, development and first sale of, any
2 products resulting from the MGA PROJECTS.

3    4.    The source, meaning and authenticity of the SUBJECT
4 DOCUMENTS, including of YOUR handwritten notations thereon.

5    5.    The identity of any computer or computer system by or from
6 which the SUBJECT DOCUMENTS were created or generated or in which they have
7 been maintained, and the identity of the computer programming or software used in
8 connection therewith.

9    6.    The identity of DOCUMENTS and tangible items that REFER OR
10 RELATE TO the MGA PROJECTS.

11    7.    The identity, source and current location of each head that was
12 provided by, for or on behalf of YOU to Anna Rhee for painting prior to October 21,
13 2000.

14    8.    The identity of each PERSON involved in the conception, design,
15 development, production, sculpting, rotocasting, molding, modeling or prototyping
16 of each head that was provided by, for or on behalf of YOU to Anna Rhee for
17 painting prior to October 21, 2000.

18
19
20
21
22
23
24
25
26
27
28

07209/637198.1

-5-

NOTICE OF DEPOSITION OF MGA

Exhibit 3 ,
P. 59

## PROOF OF SERVICE
1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On February 16, 2005, I served the foregoing document described as **NOTICE OF DEPOSITION OF MGA ENTERTAINMENT INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on all interested parties in this action.

**Diana M. Torres**
**O'Melveny & Myers LLP**
*400 South Hope Street*
*Los Angeles, California 90071-2899*
TEL: 213-430-6000
FAX: 213-430-6403

[ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by <u>Federal Express</u>.

[X]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ X ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on February 16, 2005, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

<u>Maria Albert</u>
Print Name                                    Signature

Exhibit 3
P. 60

# PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

   I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

   On February 16, 2005, I served the foregoing document described as **NOTICE OF DEPOSITION OF MGA ENTERTAINMENT INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on  all interested parties in this action.

> **Robert F. Millman, Esq.**
> **Douglas A. Wickham, Esq.**
> **Keith A. Jacoby, Esq.**
> **Littler Mendelson**
> **A Professional Corporation**
> 2049 Century Park East, 5th Floor
> Los Angeles, California 90067-3107
> Phone: 310-553-0308
> **Fax: 310-553-5583**

[ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on February 16, 2005, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Maria Albert
Print Name                                    Signature

Exhibit 3 ,
P. 61

# Exhibit 4

COURTESY COPY

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 | John B. Quinn (Bar No. 090378)
  | (johnquinn@quinnemanuel.com)
3 | Michael T. Zeller (Bar No. 196417)
  | (michaelzeller@quinnemanuel.com)
4 | Jon D. Corey (Bar No. 185066)
  | (joncorey@quinnemanuel.com)
5 | 865 South Figueroa Street, 10th Floor
  | Los Angeles, California  90017-2543
6 | Telephone:  (213) 443-3000
  | Facsimile:   (213) 443-3100

7 | Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)<br><br>Discovery Cut-off:  None Set<br>Pre-trial Conference:  None Set<br>Trial Date:  None Set |

Exhibit _4_,
P. _62_

7209/2048031.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 15, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.

DATED:  February 1, 2007          QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP


                                  By_____
                                     Michael T. Zeller
                                     Attorneys for Mattel, Inc.

Exhibit  4  ,
P. 63

-1-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

7209/2048031.

# *EXHIBIT A*

Exhibit 4,
P. 64

1

## **EXHIBIT A**

2

3   1.  "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any

4 of its current or former employees, officers, directors, agents, representatives, attorneys,

5 parents, subsidiaries, divisions, affiliates, predecessors-in-interest and

6 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

7 authority or subject to its control.

8   2.  "BRYANT" means Carter Bryant, any of his current or former

9 agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-

10 interest and successors-in-interest, and any other PERSON acting on his behalf,

11 pursuant to his authority or subject to his control.

12   3.  "BRATZ" means any project ever known by that name (whether in

13 whole or in part and regardless of what such project is or has been also, previously or

14 subsequently called) and any product or doll or any portion thereof that is now or has

15 ever been known as, or sold or marketed under, the name or term "Bratz" (whether in

16 whole or in part and regardless of what such product or doll or portion thereof is or has

17 been also, previously or subsequently called) or that is now or has ever been sold or

18 marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any

19 portion thereof.  As used herein, "product or doll or any portion thereof" also includes

20 without limitation any names, fashions, accessories, artwork, packaging or any other

21 works, materials, matters or items included or associated therewith.

22   4.  "DESIGN" or "DESIGNS" means any and all works, designs,

23 artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

24 schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions

25 to practice, developments, know-how, ideas, concepts, inventions and/or

26 improvements, as well as all other items, things and DOCUMENTS in which any of the

27

28

7209/2048031.

Exhibit _4_ ,
P. _65_

-2-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

1   foregoing are or have been expressed, embodied, contained, fixed or reflected in any

2   manner, whether in whole or in part.

3          5.     "EMBODIMENT" means any representation, whether two-

4   dimensional or three-dimensional, and whether in tangible, digital, electronic or other

5   form, including but not limited to all works, designs, artwork, sketches, drawings,

6   illustrations, representations, depictions, blueprints, schematics, diagrams, images,

7   sculptures, prototypes, models, samples, reductions to practice, developments,

8   inventions and/or improvements, as well as all other items, things and DOCUMENTS

9   in which any of the foregoing are or have been expressed, embodied, contained, fixed

10  or reflected in any manner, whether in whole or in part.

11         6.     The DRAWINGS means those documents produced as Bates Nos.

12  MGA000053-57,    MGA000392-395,    MGA000435-439,    MGA000455-481

13  MGA004606,  MGA004608,  MGA004640,  MGA005065,  MGA006423-6426,

14  MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

15         7.     "BASED ON" means copied or reproduced from, substantially

16  similar to, based on or derived from in any manner, whether in whole or in part.

17         8.     "CREATED" means produced, prepared, created, authored,

18  conceived of or reduced to practice, whether in whole or in part and whether alone or

19  jointly with others.

20         9.     "IDENTIFY" or "IDENTITY" means the following:

21         (a)    With reference to an individual, means such individual's

22  name, current or last known business title, current or last known business affiliation,

23  current or last known relationship to YOU, current or last known residential and

24  business address, and current or last known telephone number.

25         (b)    With reference to an entity or governmental organization,

26  means such entity's or organization's name, present or last-known address, and present

27

28

Exhibit _4_,
P. _C6_

-3-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)     With reference to an EMBODIMENT, means the IDENTITY of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other individual who contributed in any manner to the EMBODIMENT; the form, material and medium of the EMBODIMENT (*e.g.*, preliminary three-dimensional resin sculpture, final three-dimensional wax sculpture, digitized file of final three-dimensional wax sculpture, two-dimensional design drawing on paper); each title or name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's creation or preparation; and the current location of the EMBODIMENT.

10.     "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

11.     "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

12.     "DIGITAL INFORMATION" shall mean any information created or stored digitally, including but not limited to electronically, magnetically or optically.

13.     "SYSTEM" or "SYSTEMS" shall mean any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The

use of the term "SYSTEM" or "SYSTEMS" shall also include the brand, model number, technical specifications, and capacities of the computers who are part of each such SYSTEM.

14.    "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

15.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

16.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and

7209/2048031.

Exhibit 4 ,
P. 68

-5-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

17.     The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

## Topics of Examination

1.     The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

2.     The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

3.     The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

4.     To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

5.     The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

Exhibit 4 ,
P. 69

-6-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

6.    The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

7.    The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

8.    Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

9.    The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereon.

10.    The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

11.    The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

12.    The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without

7209/2048031.

Exhibit 4,
P. 70

-7-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

1  limitation the timing thereof and the IDENTITY of each manufacturer and potential

2  manufacturer used, proposed or considered.

3      13.   COMMUNICATIONS prior to June 30, 2001 between YOU and

4  any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or

5  potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE

6  TO BRATZ or any BRATZ DESIGN.

7      14.   When and where BRATZ was first manufactured, shipped,

8  distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9      15.   The licensing, including without limitation the proposed or

10  requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,

11  including without limitation the timing thereof, the IDENTITY of each such licensee or

12  proposed or requested licensee and the product(s) or proposed product(s) involved.

13      16.   COMMUNICATIONS between YOU and BRYANT prior to

14  January 1, 2001, including without limitation the content, means and timing of such

15  COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and

16  the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17      17.   COMMUNICATIONS that BRYANT made for YOU or on YOUR

18  behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior

19  to June 30, 2001.

20      18.   YOUR agreements and contracts with BRYANT, including without

21  limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that

22  REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23      19.   Each agreement or contract between YOU and any PERSON other

24  than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that

25  REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of

26  when such agreement or contract was negotiated or executed), including without

27  limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that

28  REFER OR RELATE thereto, and any actual or proposed amendments thereto.

20.   YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts and agreements with, and his obligations to, MATTEL.

21.   YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ project information and DESIGNS prior to June 30, 2001.

22.   The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made), (b) for DESIGNS CREATED by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including without limitation the timing, manner and amount(s) thereof and the reasons therefor.

23.   The payment of royalties to, for or on behalf of BRYANT made by or for YOU or on YOUR behalf, including the timing, manner and amounts of such payments and the reasons therefor.

24.   Any indemnification and fee arrangement that YOU and/or BRYANT has sought, proposed, requested or obtained in connection with this ACTION.

25.   YOUR revenues and profits from BRATZ, including without limitation YOUR gross and net profits, and YOUR costs associated therewith.

26.   YOUR net worth.

27.   The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefor.

28.   COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

29.   COMMUNICATIONS made by, for or on behalf of YOU, whether directly or indirectly, with Anna Rhee, including without limitation since February 2005 (but not including any such COMMUNICATIONS with her legal counsel).

30.   COMMUNICATIONS between YOU and Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

31.   The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services and the amount(s) paid by YOU to each such PERSON.

32.   COMMUNICATIONS between YOU and BRYANT that REFER OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was prepared, authored or created by MATTEL that BRYANT has ever provided to, shown, described to, communicated to or disclosed in any manner to YOU.

33.   The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT, including without limitation COMMUNICATIONS pertaining thereto.

34.   Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

35.   COMMUNICATIONS between YOU and Universal Commerce Corp., Ltd. prior to June 30, 2001.

7209/2048031.

Exhibit __4__,
P. __73__

-10-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

36. The source, meaning and authenticity of SL00013-14, including without limitation the timing of its creation and the handwriting thereon.

37. YOUR corporate structure since January 1, 1999, including without limitation the relationship between MGA Entertainment, Inc. and any of its predecessors, affiliates and subsidiaries.

38. The retention or destruction policies, procedures and practices for YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO BRATZ since January 1, 1999, including without limitation the retention or destruction of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced, modified or upgraded and (b) when PERSONS leave YOUR employ.

39. The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

40. The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan or information) that YOU received in any manner from any PERSON who was at the time an employee of MATTEL or who had previously been an employee of MATTEL.

41. The testing of or sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation such testing or sampling in connection with any ink, paper or chemical analysis performed or attempted to be performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results and reports relating thereto.

42. YOUR DIGITAL INFORMATION data backup policies, practices and procedures from January 1, 1999 to the present, including without limitation the location and specifications of any media used to preserve YOUR DIGITAL

1 INFORMATION and the software, if any, used to preserve YOUR DIGITAL
2 INFORMATION.

3     43.    The DIGITAL INFORMATION SYSTEMS and the application
4 software that YOU have used since January 1, 1999 that REFER OR RELATE TO
5 design, development, planning, inventory, manufacturing, sales, shipping and
6 accounting, including without limitation the common or shared storage for such
7 DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
8 INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
9 DIGITAL INFORMATION SYSTEMS or application software.

10     44.    The IDENTITY of PERSONS, including without limitation
11 vendors, who since January 1, 1999 have been responsible for or supported YOUR
12 DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
13 such PERSON who serviced or provided hardware for YOUR DIGITAL
14 INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL
15 INFORMATION, including but not limited to internet service providers, and provided
16 analytical, training or implementation services with respect to YOUR DIGITAL
17 INFORMATION SYSTEMS.

18     45.    The electronic messaging SYSTEMS used by YOUR employees
19 within the scope of their employment between January 1, 1999 and the present,
20 including but not limited to electronic mail, instant messenger, telephone or voice-mail,
21 and the routing of such electronic messages to, from or within MGA.

22     46.    YOUR policies, practices and procedures regarding the use of
23 transportable media that contain or are capable of containing DIGITAL
24 INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB
25 drives, portable hard drives, digital cameras and personal digital assistants.

26
27
28

1

### PROOF OF SERVICE

2     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa
3 Street, 10th Floor, Los Angeles, California 90017-2543.

4     On February 1, 2007, I served true copies of the following document(s) described as **SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT**
5 **TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) on** the parties in this action as follows:
6
**BY MAIL TO:**
7
Keith A. Jacoby, Esq.
8 Littler Mendelson
2049 Century Park East, 5th Floor
9 Los Angeles, CA  90067-3107
Telephone: (310) 553-0308
10 Facsimile: (310) 553-5583

11 I enclosed the foregoing as well as a **COURTESY COPY** into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The
12 envelope was mailed with postage thereon fully prepaid.  (Courtesy copy

13 **BY PERSONAL SERVICE ON:**

14 Diana M. Torres, Esq.
O'Melveny & Meyers
15 400 So. Hope Street
Los Angeles, CA  90071
16 Telephone: (213) 430-6000
**Facsimile: (213) 430-6407**
17
I delivered such envelope(s) **(COURTESY COPY INCLUDED)** by hand to the office of the
18 person(s) being served.

19

20    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.
21
22    Executed on February 1, 2007, at Los Angeles, California.

23

24    _____
      Mia Albert
25

26    _____
      Dave Quintana
27

28

Exhibit 4 ,
P. 76

# Exhibit 5

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  | John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
  | Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
  | Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
  | 865 South Figueroa Street, 10th Floor
5 | Los Angeles, California  90017-2543
  | Telephone:   (213) 443-3000
6 | Facsimile:   (213) 443-3100

7 | Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | THIRD NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | Discovery Cut-Off:  October 22, 2007 Pre-Trial Conference:  January 14, 2008 Trial Date: February 12, 2008 |
| AND CONSOLIDATED ACTIONS | |

Exhibit 5 ,
P. 72

THIRD NOTICE OF DEPOSITION OF MGA

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped. Mattel also reserves the right to use Livenote or other technology for real-time transcription of the testimony.

DATED:  June 5, 2007            QUINN EMANUEL URQUHART OLIVER &
                                HEDGES, LLP


                                By_____
                                    Michael T. Zeller
                                    Attorneys for Mattel, Inc.

Exhibit  5  ,
P.  78                     -1-

THIRD NOTICE OF DEPOSITION OF MGA

# EXHIBIT A

1.      "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.      "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

209/2048031.

Exhibit _5_ ,        -2-

P. _77_

THIRD NOTICE OF DEPOSITION OF MGA

4.     "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.     "ANGEL" refers to those projects, products, dolls or DESIGNS, sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has claimed are the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734.  Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "ANGEL" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

6.     "IDENTIFY" or "IDENTITY" means the following:

(a)     With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)     With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)     With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account

Exhibit 5,
P. 80     -3-

THIRD NOTICE OF DEPOSITION OF MGA

number(s) for or otherwise associated with such account and the name of each holder, including without limitation each beneficial holder, of each such account.

(d)    With reference to a STORAGE DEVICE, means the manufacturer name, brand, model name and number, serial number and all other manufacturer identifiers, and the technical specifications and capacities of such STORAGE DEVICE.

7.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

8.    "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

9.    "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store or maintain DIGITAL INFORMATION.

10.    "EMPLOYEE AGREEMENT" or "EMPLOYEE AGREEMENTS" means any agreement or contract between YOU and any of YOUR employees that purports to assign to, convey to or vest in YOU in any manner, whether in whole or in part, and whether expressly or by implication or in effect, any right, title or interest in any such employee's inventions, works, work product, ideas, concepts, discoveries, improvements, processes, developments, DESIGNS, know-how, data and/or formulae.

11.    "FAMILY MEMBER" means any PERSON who at any time is, was or has been a parent, spouse, or child of another PERSON.

12.    "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing,

mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

13.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

14.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

15.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning

all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1. The IDENTITY, current or last known location, and disposition of each STORAGE DEVICE that each of the following PERSONS has used to create, generate, prepare, draft, send and/or receive any DOCUMENT or DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL at any time since January 1, 1999, including without limitation the date of acquisition and the date of disposition of each such STORAGE DEVICE:

Isaac Larian

Farhad Larian

Paula Garcia

BRYANT

Kami Gillmour

Veronica Marlow

Mercedeh Ward

Margaret Hatch-Leahy

Jennifer Maurus

Judy Rich

Ninette Pembleton

Kerri Brode

Victoria O'Connor

Aileen Storer

Charles O'Connor

Helene Bartels

Colleen O'Higgins

1    Vivian Matt

2    Maureen Mullen

3    Rachel Harris

4    Barbara Malcolm

5    David Dees

6    Ben Ton

7    Dave Malacrida

8         2.     The IDENTITY, current or last known location, and disposition of

9    each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this

10   Notice, including without limitation the date of creation and the date of disposition of

11   each such backup or copy.

12        3.     YOUR search for and production of DOCUMENTS and DIGITAL

13   INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

14        4.     Each of YOUR EMPLOYEE AGREEMENTS since January 1,

15   1995, including without limitation the meaning, validity and enforcement of such

16   EMPLOYEE AGREEMENTS.

17        5.     Any requirement or practice by YOU, at any time since January 1,

18   1995, that YOUR employees sign or execute EMPLOYEE AGREEMENTS.

19        6.     YOUR statements to Christopher Palmeri in connection with the

20   *Business Week* article entitled "To Really Be A Player, Mattel Needs Hotter Toys,"

21   published on or about July 28, 2003, including without limitation in connection with the

22   statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around

23   in navel-bearing tops and hip-huggers."

24        7.     YOUR statements to Denise I. O'Neal in connection with the

25   *Chicago Sun-Times* article entitled "Bratz Packers Are What's Cool in Doll World,"

26   published on or about March 5, 2004, including without limitation in connection with

27   the statements that MGA's "creative team decided the name should be catchy and not

28

Exhibit 5 ,   -7-
P. 83                          THIRD NOTICE OF DEPOSITION OF MGA

09/2048031.

1  have more than six letters. Keeping with today's trend of making names more 'cool' by
2  changing the spelling, MGA executives decided to replace the 's' with a 'z.'"

3        8.    YOUR statements to Jeff Weiss in connection with the *San*
4  *Fernando Valley Business Journal* article entitled "Immigrant's Creative Company
5  Shakes Up Toy Industry," published on or about March 29, 2004, including without
6  limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

7        9.    The IDENTITY of each PERSON who YOU had perform, or who
8  YOU requested, asked or solicited to perform, any "test project" in advance of or in
9  consideration of employment by YOU since January 1, 1995, including without
10 limitation the IDENTITY of each such PERSON who was a MATTEL employee at the
11 time.

12       10.    YOUR relationship with Stephen Lee since April 1, 2004, including
13 without limitation any agreements or contracts between YOU and Stephen Lee.

14       11.    Payments of money or any other item of value that YOU have made
15 to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac Larian since
16 January 1, 1999, including without limitation (a) the amounts of such payment and the
17 equivalent dollar value of each of item of value, (b) the dates of such payment, (c) the
18 IDENTITY of each recipient of such payment, (d) the IDENTITY of each bank or
19 financial institution account to which such payment was made and (e) the reasons for
20 each such payment.

21       12.    Payments of money or any other item of value that YOU have made
22 to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad Larian since
23 January 1, 1999, including without limitation (a) the amounts of each such payment and
24 the equivalent dollar value of each of item of value, (b) the timing of each such
25 payment, (c) the IDENTITY of each recipient of each such payment, (d) the
26 IDENTITY of each bank or financial institution account to which such payment was
27 made and (e) the reasons for each such payment.

28

209/2048031.

Exhibit ⎰ ,    -8-
P. 84
THIRD NOTICE OF DEPOSITION OF MGA

1         13.    Payments of money or any other item of value that YOU have made

2  to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad Zarabi since

3  January 1, 1999, including without limitation (a) the amounts of each such payment and

4  the equivalent dollar value of each of item of value, (b) the timing of each such

5  payment, (c) the IDENTITY of each recipient of each such payment, (d) the

6  IDENTITY of each bank or financial institution account to which such payment was

7  made and (e) the reasons for each such payment.

8         14.    The nature, extent and timing of work and services that Veronica

9  Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees provided to, or

10  were requested, solicited or proposed by, YOU at any time from January 1, 1999

11  through December 31, 2001, inclusive.

12         15.    Payments of money or any other item of value that YOU have made

13  to Veronica Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees

14  since January 1, 1999, including without limitation (a) the amounts of each such

15  payment and the equivalent dollar value of each of item of value, (b) the timing of each

16  such payment, (c) the IDENTITY of each recipient of each such payment, (d) the

17  IDENTITY of each bank or financial institution account to which such payment was

18  made and (e) the reasons for each such payment.

19         16.    The IDENTITY of each PERSON who is not, as of June 5, 2007, an

20  MGA employee and for whom or on behalf of whom YOU are paying, have paid or

21  have offered, promised or agreed to pay fees or costs in connection with this ACTION,

22  any contracts, agreements or other DOCUMENTS between YOU and such PERSON

23  pertaining thereto, the amounts YOU have so paid or agreed to pay to such PERSON

24  and the dates on which such payments were made.

25

26

27

28

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
   Duane R. Lyons (Bar No. 125091)
5   (duanelyons@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Plaintiff and Counter-
   Defendant Mattel, Inc.

9

10           UNITED STATES DISTRICT COURT

11         CENTRAL DISTRICT OF CALIFORNIA

12            EASTERN DIVISION

| | |
|---|---|
| 13   CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 14        Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| 15     vs. | Hon. Stephen G. Larson |
| 16   MATTEL, INC., a Delaware corporation, | |
| 17      Defendant. | PROOF OF SERVICE |
| 18   AND CONSOLIDATED ACTIONS. | |
| 19 | |

20

21

22

23

24

25

26

27

28

209/2027422.1

PROOF OF SERVICE

Exhibit 5,
P. 86

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is Now Legal Service,
3   1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4   On June 5, 2007 served true copies of the following document(s) described **as:**

5   on the parties in this action as follows:

6

**BY MAIL:**  I am "readily familiar" with the practices of Quinn Emanuel Urquhart Oliver &
7   Hedges for collecting and processing correspondence for mailing with the United States Postal
Service.  Under that practice, it would be deposited with the United States Postal Service that
8   same day in the ordinary course of business.  I enclosed the foregoing in sealed envelope(s)
addressed as shown above, and such envelope(s) were placed for collection and mailing with
9   postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary
business practices.

10
       MICHAEL H. PAGE, ESQ.
11     *KEKER & VAN NEST, LLP*
       710 SANSOME STREET
12     San Francisco, CA  94111-1704

13     JAMES W. SPERTUS, ESQ.
       **LAW OFFICES OF JAMES W. SPERTUS**
14     12100 Wilshire Blvd., Suite 620
       Los Angeles, CA 90025

15
       I declare that I am employed in the office of a member of the bar of this Court at whose
16   direction the service was made.

17

18     Executed on June 5, 2007, at Los Angeles, California.

19

20                                                    Mia Albert

21

22

23

24

25

26

27

28

Exhibit 5,
P. 87

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

DIANA M. TORRES, ESQ.
**O'MELVENY & MYERS, LLP**
400 S. Hope Street
Los Angeles, CA 90071

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 5, 2007, at Los Angeles, California.

_____
NOW LEGAL -- Dave Quintana

Exhibit 5 ,
P. 88

# Exhibit 6

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12  CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

          Plaintiff,

13
                                         NOTICE OF DEPOSITION OF MGA
14        vs.                            ENTERTAINMENT (HK) LIMITED
                                         PURSUANT TO FEDERAL RULE OF
15                                       CIVIL PROCEDURE 30(B)(6)

16  MATTEL, INC., a Delaware             Discovery Cut-Off: October 22, 2007
     corporation,                        Pre-Trial Conference: January 14, 2008
17        Defendant.                     Trial Date: February 12, 2008

18
    ─────────────────────────────
19  AND CONSOLIDATED ACTIONS

20

21

22

23

24

25

26

27

28
                         Exhibit _6_,
                         P. _89_
209/2048031.1

          NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

SERVED ON US BY MAIL
6-4-07

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on June 21, 2007 beginning on 9:30 a.m.

3   Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4   MGA Entertainment (HK) Limited at the offices of Quinn Emanuel Urquhart Oliver &

5   Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to

6   Fed. R. Civ. P. 30(b)(6), MGA Entertainment (HK) Limited shall designate one or

7   more officers, directors, managing agents or other persons who consent to testify on its

8   behalf concerning each of the topics set forth in Exhibit A hereto.

9          PLEASE TAKE FURTHER NOTICE that the deposition will take place

10   before a duly authorized notary public or other officer authorized to administer oaths at

11   depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12   excepted, until completed.

13          PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14   P. 30(b)(2), the deposition will be videotaped.

15   DATED:  June 4, 2007                QUINN EMANUEL URQUHART OLIVER &

16                                       HEDGES, LLP

17

18                                       By _____

19                                          Michael T. Zeller
                                            Attorneys for Mattel, Inc.
20

21

22

23

24

25

26

27

28
                                    Exhibit 6 ,
                                    P. 90

209/2048031.

# **EXHIBIT A**

1.      "YOU," "YOUR" or "MGA" means MGA Entertainment (HK) Limited, any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.      "BRATZ" means any project, product or doll ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product or doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product or doll or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any portion thereof.  As used herein, "product or doll or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "BRATZ" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

Exhibit _6_ ,
P. _91_

:09/2048031.

4.     "DESIGN" or "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.     "EMBODIMENT" means any representation, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6.     The DRAWINGS means those documents produced as Bates Nos. MGA000053-57,    MGA000392-395,    MGA000435-439,    MGA000455-481 MGA004606,   MGA004608,   MGA004640,   MGA005065,   MGA006423-6426, MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

7.     "ANGEL" refers to those projects, products or dolls, sometimes called "Angel Faces" and/or "Prayer Angels," that are the subject of MGA000706-08, MGA000710-12,   MGA000714-16,   MGA000718-20,   MGA000724-28   and MGA000734. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "ANGEL" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

Exhibit _6_,
P. _9/4_

-3-

!09/2048031.

8.   The "ANGEL DOCUMENTS" means each of the following: MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-26, MGA000724-28 and MGA000734.

9.   "BASED ON" means copied or reproduced from, substantially similar to, based on or derived from in any manner, whether in whole or in part.

10.   "CREATED" means produced, prepared, created, authored, conceived of or reduced to practice, whether in whole or in part and whether alone or jointly with others.

11.   "IDENTIFY" or "IDENTITY" means the following:

(a)   With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)   With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)   With reference to an EMBODIMENT, means the IDENTITY of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other individual who contributed in any manner to the EMBODIMENT; the form, material and medium of the EMBODIMENT (*e.g.*, preliminary three-dimensional resin sculpture, final three-dimensional wax sculpture, digitized file of final three-dimensional wax sculpture, two-dimensional design drawing on paper); each title or name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's creation or preparation; and the current location of the EMBODIMENT.

12.   "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more

Exhibit 6,
P. 92

!09/2048031.

-4-

PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

13.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

14.    "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

15.    "SYSTEM" or "SYSTEMS" means any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The use of the term "SYSTEM" or "SYSTEMS" also includes the brand, model number, technical specifications, and capacities of the computers who are part of each such SYSTEM.

16.    "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

17.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind,

Exhibit 6 ,
P. 93

-5-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

!09/2048031.

statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

18.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

19.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1.    The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof. the IDENTITY

Exhibit  6  ,
P.  94

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

09/2048031.

1  of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved
2  therein, and the nature, extent and time period(s) of each such PERSON's involvement.

3      2.    The circumstances under which BRATZ or any BRATZ DESIGN
4  first came to YOUR attention, including without limitation the timing, method and
5  manner thereof and the IDENTITY of each PERSON with knowledge thereof.

6      3.    The identity of each doll, product, work or item produced,
7  developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR
8  behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

9      4.    To the extent not covered by Topic 3, each EMBODIMENT of any
10 doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

11     5.    The work, activities and/or services that BRYANT performed for or
12 with YOU or on YOUR behalf prior to June 30, 2001.

13     6.    The origin, conception and creation of DESIGNS that BRYANT
14 CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever
15 claimed to have, any right, title or interest (whether in whole or in part).

16     7.    The identity of, and the design, development, sculpting,
17 development, engineering, rotocasting, modeling, prototyping and first sale of, any doll,
18 product, work or item that has been produced, developed, manufactured, licensed, sold
19 or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN
20 referenced in Topic 6.

21     8.    Each EMBODIMENT of BRATZ that was CREATED prior to June
22 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was
23 CREATED prior to June 30, 2001.

24     9.    The DRAWINGS, including without limitation the authorship,
25 creation, dissemination and use thereof and the source, meaning, authenticity and
26 timing of any dates thereon.

27     10.    The email produced by MGA in this ACTION as MGA
28 MGA000422, including without limitation the IDENTITY, current and last known

1   location, disposition and use of the DOCUMENTS and tangible items that are
2   referenced in such email.

3        11.    The email and attachment produced by MGA in this ACTION as
4   MGA000007-MGA000009, including without limitation the IDENTITY, current and
5   last known location, disposition and use of each sculpt referenced in and depicted by
6   such email and attachment.

7        12.    The showing of BRATZ at Hong Kong Toy Fair in January 2001,
8   including without limitation the IDENTITY and whereabouts of DOCUMENTS
9   (including photographs and videotapes) and tangible items that REFER OR RELATE
10  TO such toy fair.

11       13.    The showing of BRATZ at Tokyo Toy Fair in February 2001,
12  including without limitation the IDENTITY and whereabouts of DOCUMENTS
13  (including photographs and videotapes) and tangible items that REFER OR RELATE
14  TO such toy fair.

15       14.    The IDENTITY of each vendor or third party who performed or
16  contributed, or who was considered, solicited, requested, proposed or contemplated by
17  YOU or BRYANT to perform or contribute, any activities, work or services in
18  connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR
19  COMMUNICATIONS therewith, and the nature, extent and timing of such activities,
20  work or services.

21       15.    The exhibition, or proposed, offered, contemplated or requested
22  exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30,
23  2001, including without limitation each instance in which BRATZ or any BRATZ
24  DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise
25  discussed with or communicated to, any retailer, wholesaler or distributor and the
26  DOCUMENTS that REFER OR RELATE thereto.

27       16.    The actual, proposed, requested or contemplated manufacture,
28  fabrication or tooling (including the production of molds) of BRATZ, including without

:09/2048031.

Exhibit 6 ,
P. 9c

-8-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

1 │ limitation the timing thereof and the IDENTITY of each manufacturer and potential

2 │ manufacturer used, proposed or considered.

3 │       17.    COMMUNICATIONS prior to June 30, 2001 between YOU and

4 │ any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or

5 │ potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE

6 │ TO BRATZ or any BRATZ DESIGN.

7 │       18.    When and where BRATZ was first manufactured, shipped,

8 │ distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9 │       19.    The licensing, including without limitation the proposed or

10 │ requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,

11 │ including without limitation the timing thereof, the IDENTITY of each such licensee or

12 │ proposed or requested licensee and the product(s) or proposed product(s) involved.

13 │       20.    COMMUNICATIONS between YOU and BRYANT prior to

14 │ January 1, 2001, including without limitation the content, means and timing of such

15 │ COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and

16 │ the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17 │       21.    COMMUNICATIONS that BRYANT made for YOU or on YOUR

18 │ behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior

19 │ to June 30, 2001.

20 │       22.    YOUR agreements and contracts with BRYANT, including without

21 │ limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that

22 │ REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23 │       23.    Each agreement or contract between YOU and any PERSON other

24 │ than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that

25 │ REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of

26 │ when such agreement or contract was negotiated or executed), including without

27 │ limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that

28 │ REFER OR RELATE thereto, and any actual or proposed amendments thereto.

1    24.    YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts

2  and agreements with, and his obligations to, MATTEL.

3    25.    YOUR knowledge of, and access to, non-public MATTEL DIVA

4  STARZ project information and DESIGNS prior to June 30, 2001.

5    26.    The payment of money or anything of value by or for YOU or on

6  YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work,

7  services or activities performed by BRYANT prior to January 1, 2001 (regardless of

8  when such payment was actually made), (b) for DESIGNS CREATED by BRYANT

9  prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in

10  connection with BRATZ or any BRATZ DESIGN at any time, including without

11  limitation the timing, manner and amount(s) thereof and the reasons therefor.

12    27.    Any indemnification and fee arrangement that YOU and/or

13  BRYANT has sought, proposed, requested or obtained in connection with this

14  ACTION.

15    28.    YOUR revenues and profits from BRATZ, including without

16  limitation YOUR gross and net profits, and YOUR costs associated therewith.

17    29.    YOUR net worth.

18    30.    The payment of money or anything of value that YOU have made or

19  offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought

20  or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s)

21  and reasons therefor.

22    31.    COMMUNICATIONS between YOU and Elise Cloonan that

23  REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including

24  without limitation the IDENTITY of DOCUMENTS that REFER OR RELATE TO

25  such COMMUNICATIONS.

26    32.    COMMUNICATIONS made by, for or on behalf of YOU, whether

27  directly or indirectly, with Anna Rhee, including without limitation since February

28  2005 (but not including any such COMMUNICATIONS with her legal counsel).

Exhibit 6,
P. 98

:09/2048031.

1    33.   COMMUNICATIONS between YOU and Veronica Marlow,
2  Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah
3  Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO
4  BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all
5  DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

6    34.   The IDENTITY of each PERSON who, at any time since January 1,
7  1998, has performed any work or services for, by or on behalf of YOU while such
8  PERSON was employed by MATTEL, the nature and timing of each such PERSON's
9  work or services and the amount(s) paid by YOU to each such PERSON.

10    35.   COMMUNICATIONS between YOU and BRYANT that REFER
11  OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was
12  prepared, authored or created by MATTEL that BRYANT has ever provided to, shown,
13  described to, communicated to or disclosed in any manner to YOU.

14    36.   The applications for registration and the registrations for copyright,
15  patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ
16  DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT,
17  including without limitation COMMUNICATIONS pertaining thereto.

18    37.   Other than those previously filed and served in this ACTION or in
19  which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,
20  transcripts, declarations, affidavits and other sworn written statements of any other type
21  by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ
22  THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of
23  when such testimony or sworn statement was taken, given, signed, made or filed).

24    38.   COMMUNICATIONS between YOU and Universal Commerce
25  Corp., Ltd. prior to June 30, 2001.

26    39.   The source, meaning and authenticity of SL00013-14, including
27  without limitation the timing of its creation and the handwriting thereon.

28

Exhibit _6_,
P. _79_

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

!09/2048031.

1      40.    YOUR corporate structure since January 1, 1999, including without

2  limitation YOUR relationship with MGA Entertainment, Inc., and the IDENTITY of

3  YOUR officers, directors, shareholders and employees since January 1, 1999.

4      41.    The retention or destruction policies, procedures and practices for

5  YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO

6  BRATZ since January 1, 1999, including without limitation the retention or destruction

7  of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,

8  modified or upgraded and (b) when PERSONS leave YOUR employ.

9      42.    The preservation, collection, destruction, removal, transfer, loss or

10  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection

11  with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

12      43.    The preservation, collection, destruction, removal, transfer, loss or

13  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,

14  1999 that REFER OR RELATE TO MATTEL (including without limitation to any

15  MATTEL product, plan or information) that YOU received in any manner from any

16  PERSON who was at the time an employee of MATTEL or who had previously been

17  an employee of MATTEL.

18      44.    The testing of or sampling from DOCUMENTS that REFER OR

19  RELATE TO BRATZ or BRYANT, including without limitation such testing or

20  sampling in connection with any ink, paper or chemical analysis performed or

21  attempted to be performed to date, any DOCUMENTS that REFER OR RELATE

22  thereto and all results and reports relating thereto.

23      45.    YOUR DIGITAL INFORMATION data backup policies, practices

24  and procedures from January 1, 1999 to the present, including without limitation the

25  location and specifications of any media used to preserve YOUR DIGITAL

26  INFORMATION and the software, if any, used to preserve YOUR DIGITAL

27  INFORMATION.

28                                      Exhibit  6  ,
                                         P. 100

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

!09/2048031.

46.   The DIGITAL INFORMATION SYSTEMS and the application software that YOU have used since January 1, 1999 that REFER OR RELATE TO design, development, planning, inventory, manufacturing, sales, shipping and accounting, including without limitation the common or shared storage for such DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL INFORMATION SYSTEMS, and any changes, modifications or upgrades to such DIGITAL INFORMATION SYSTEMS or application software.

47.   The IDENTITY of PERSONS, including without limitation vendors, who since January 1, 1999 have been responsible for or supported YOUR DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of such PERSON who serviced or provided hardware for YOUR DIGITAL INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL INFORMATION, including but not limited to internet service providers, and provided analytical, training or implementation services with respect to YOUR DIGITAL INFORMATION SYSTEMS.

48.   The electronic messaging SYSTEMS used by YOUR employees within the scope of their employment between January 1, 1999 and the present, including but not limited to electronic mail, instant messenger, telephone or voice-mail, and the routing of such electronic messages to, from or within MGA.

49.   YOUR policies, practices and procedures regarding the use of transportable media that contain or are capable of containing DIGITAL INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB drives, portable hard drives, digital cameras and personal digital assistants.

50.   The identity of each PERSON involved in ANGEL, and the nature and time period(s) of each such PERSON's involvement therein.

51.   The conception, design, development, production, sculpting, rotocasting, molding, modeling or prototyping of ANGEL, including without limitation the chronology thereof.

Exhibit  6  ,
P. 101

-13-

1    52.   The identity of, and the design, development and first sale of, any
2 products resulting from ANGEL.

3    53.   The source, meaning and authenticity of the ANGEL
4 DOCUMENTS, including of the handwritten notations thereon.

5    54.   The identity of any computer or computer system by or from which
6 the ANGEL DOCUMENTS were created or generated or in which they have been
7 maintained, and the identity of the computer programming or software used in
8 connection therewith.

9    55.   The identity of DOCUMENTS and tangible items that REFER OR
10 RELATE TO ANGEL.

11    56.   YOUR COMMUNICATIONS that REFER OR RELATE TO
12 ANGEL, including without limitation with MGA Entertainment, Inc., prior to
13 December 31, 2001.

14    57.   The identity, source and current location of each head that was
15 provided by, for or on behalf of YOU to Anna Rhee for painting prior to October 21,
16 2000.

17    58.   The identity of each PERSON involved in the conception, design,
18 development, production, sculpting, rotocasting, molding, modeling or prototyping of
19 each head that was provided by, for or on behalf of YOU to Anna Rhee for painting
20 prior to October 21, 2000.

21    59.   To the extent not covered by any other Topic, the roles, involvement
22 and activities of Stephen Lee, Cecelia Kwok, Franki Tsang, Victor Lee, Victor
23 Raymond Fung, CY Ho, Eric Yip, Jimmy Cheng and Samuel Wong in connection with
24 BRATZ and/or ANGEL prior to December 31, 2001, including without limitation the
25 timing of such roles, involvement and activities.

26    60.   To the extent not covered by any other Topic, the IDENTITY,
27 current and last known location, and disposition of DOCUMENTS that REFER OR
28 RELATE TO BRATZ and/or ANGEL that were, prior to December 31, 2001, created,

1   generated, sent and/or received by YOU, including without limitation by Stephen Lee,

2   Cecelia Kwok, Franki Tsang, Victor Lee, Eric Yip, Victor Raymond Fung, CY Ho,

3   Jimmy Cheng and/or Samuel Wong.

4         61.   YOUR relationship with Stephen Lee since April 1, 2004, including

5   without limitation any agreements or contracts between YOU and/or MGA

6   Entertainment, Inc., on the one hand, and Stephen Lee, on the other hand.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 6,
P. 103

209/2048031.