QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
JOHN B. QUINN (State Bar No. 090378)
MICHAEL T. ZELLER (State Bar No. 196417)
JON D. COREY (State Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000; Facsimile: (213) 443-3100

STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG (State Bar No. 048158)
MICHAEL J. NIBORSKI (State Bar No. 192111)
2029 Century Park East, Suite 1600
Los Angeles, California 90067-3086
(lacalendar@stroock.com)
Telephone: (310) 556-5800; Facsimile: (310) 556-5959

Attorneys for MATTEL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>      Plaintiff,<br><br>  vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>      Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>DISCOVERY MATTER<br><br>[To Be Heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of Dec. 6, 2006]<br><br>MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ...................................................................... 1

II. ARGUMENT ................................................................................................... 2

    A. The Federal Privilege Should Yield Here .............................................. 2

        1. Palmeri Is the Only Available Source of Admissible Evidence of Larian's Statements ................................................ 3

        2. Larian's Statements To BusinessWeek Are Not Cumulative .................................................................................. 4

        3. Larian's Statements Are Clearly Relevant to Important Issues In The Case ..................................................................... 5

    B. California's State Constitutional Shield Law Does Not Apply ............. 7

        1. The State Shield Law Does Not Apply Here Because Federal and State Claims Are At Issue .......................................... 7

        2. The State Shield Law Does Not Apply Here Because the Matters About Which Palmeri Must Testify Were Published ..................................................................................... 8

III. CONCLUSION ................................................................................................ 9

i

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

## TABLE OF AUTHORITIES

**Page**

### Cases

Agster v. Maricopa County,
   422 F.3d 836 (9th Cir. 2005) .............................................................................. 7, 8

Crowe v. County of San Diego,
   242 F. Supp. 2d 740 (S.D. Cal. 2003) ...................................................................... 8

Dillon v. City and County of San Francisco,
   748 F. Supp. 722 (N.D. Cal. 1990) ....................................................................... 6, 7

In re Jack Howard,
   136 Cal. App. 2d 816 (1955) ................................................................................ 8, 9

In re Maykuth,
   2006 WL 724241 (E.D. Pa. 2006) ............................................................................ 2

NLRB v. Mortenson,
   701 F. Supp. 244 (D.D.C. 1988) .............................................................................. 3

SEC v. Seahawk Deep Ocean Tech., Inc.,
   166 F.R.D. 268 (D. Conn. 1996) ........................................................................... 3, 5

Shoen v. Shoen,
   48 F.3d 1289 (9th Cir. 1993) ................................................................................. 3, 6

U.S. ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc.,
   600 F. Supp. 667 (S.D.N.Y. 1985) ........................................................................ 5, 6

In re Vmark Software,
   1998 WL 42252 (E.D. Pa. 1998) ........................................................................ 3, 5, 6

### Statutes

Cal. Code of Civ. Proc. § 1881(6) ................................................................................... 9

Fed. R. Evid. 501 ............................................................................................................ 8

ii

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

The very limited testimony sought, the importance of that evidence, and Mattel's unsuccessful efforts to obtain that information elsewhere justify Christopher Palmeri's deposition. Mattel has done its level best to obtain admissible evidence of Isaac Larian's published statements to BusinessWeek – which go to the very heart of this case. Mr. Palmeri's refusal to provide testimony about those statements allows defendants to hide behind the journalist's privilege while depriving Mattel of vital evidence of Larian's knowledge and concealment of Mattel's ownership of Bratz.

It is now beyond dispute that Mr. Palmeri is the only person who can authenticate Larian's statements. Larian, MGA's spokesman, and MGA's Rule 30(b)(6) witness have all declined to confirm what Larian told Mr. Palmeri. A non-denial is not equivalent to unambiguous, objective testimony from a neutral eyewitness that Larian proclaimed to the world in the summer of 2003 that he was inspired to invent Bratz from watching his children.

Also, Mr. Palmeri's testimony would not be cumulative. Mr. Palmeri argues that Mattel has already obtained testimony regarding Larian's conflicting stories about the origins of Bratz. But Mattel has not obtained the necessary and important evidence that Larian announced to the world – through BusinessWeek – that he (rather than Mattel employee Carter Bryant) was the inventor of Bratz even as the Wall Street Journal was disclosing for the first time that Bratz came to MGA through a "sort-of" fashion doll design contest in 1999 – the year before Bryant resigned from Mattel. Larian's contrary claim to BusinessWeek is unique in that it was made with knowledge that it would be spread at that particular time to nearly a million magazine readers (and many more online readers) – and shows a continuing scheme to hide or at least blur the truth from the world and from Mattel even as the Wall Street Journal story was being published.

1

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

Moreover, the testimony Mattel seeks goes to the heart of the claims and defenses in this action. Mattel has alleged that MGA deliberately and intentionally concealed facts that Mattel was the true owner of Bratz. Larian's statements to Mr. Palmeri that Larian came up with the idea for Bratz was part of a deliberate, continuing course of conduct designed to conceal Bryant's invention of Bratz during his employment by Mattel. Such statements by Larian shows guilty knowledge of the theft of Bratz from Mattel. It shows absence of mistake; it rebuts MGA's likely claim that reporters "got it wrong," "misunderstood," or "missed something" when they heard Larian claim to be the inventor or Bratz. It also goes directly to MGA's fraudulent concealment as it relates to defendants' statute of limitations and laches defenses to Mattel's copyright and other claims – regarding which the Discovery Master has permitted broad discovery by MGA and Bryant.

Finally, Mr. Palmeri continues to argue that California's shield law protects him from testifying. This fails because the testimony sought involves published, not unpublished, information, and the state shield law does not reach published statements. Further, Ninth Circuit law is clear that where, as here, federal and state law claims are at issue, the court must apply the qualified federal privilege, not the absolute state privilege.

Accordingly, Mattel respectfully requests that the Discovery Master reconsider his ruling denying Mattel's motion to compel the deposition of Mr. Palmeri and compel him to sit for a brief deposition.

## II. ARGUMENT

### A. The Federal Privilege Should Yield Here

Courts have consistently found that the journalist's privilege must yield where testimony is sought for the limited purpose of verifying statements that already have been disclosed to the world. See, e.g., In re Maykuth, 2006 WL 724241, at *2 (E.D.

2

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

Pa. 2006) (requiring reporter to testify about published statements); In re Vmark Software, 1998 WL 42252, at *2 (E.D. Pa. 1998); SEC v. Seahawk Deep Ocean Tech., Inc., 166 F.R.D. 268, 271-72 (D. Conn. 1996) (refusing to quash subpoena for deposition seeking verification of published statements); NLRB v. Mortenson, 701 F. Supp. 244, 250 (D.D.C. 1988) (requiring reporters to testify about published statements).

Similarly here, where Mattel has attempted without success to obtain admissible evidence of Larian's statements in BusinessWeek elsewhere, Mr. Palmeri should be compelled to provide very limited testimony that confirms the accuracy of those statements. Mattel's request to depose Mr. Palmeri meets all three prongs of the Shoen v. Shoen, 48 F.3d 1289 (9th Cir. 1993) ("Shoen II") test.[1]

### 1. Palmeri Is the Only Available Source of Admissible Evidence of Larian's Statements

Mr. Palmeri does not dispute that he is the only person who can confirm under oath that Larian actually made the statements published in BusinessWeek. Instead, he argues that (1) Larian did not deny that he made the statement; he merely could not confirm it; and (2) other people may be able to confirm that Larian made other statements relating to the origins of Bratz, at different times, to different people, that may or may not have been published. Neither argument avoids the plain fact that the only person who heard and could affirmatively tell the jury without equivocation or ambiguity that Larian told BusinessWeek in the summer of 2003 that he "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" is Mr. Palmeri.

---

[1] The testimony sought by Mattel does not involve unpublished information, and therefore no privilege applies. Shoen II involved unpublished research materials. The Discovery Master did not expressly address Mattel's argument on this threshold question, but implicitly ruled against Mattel in ruling on the motion to compel. While Mattel disagrees with this holding, it seeks reconsideration here of the Discovery Master's application of the Shoen test and his finding that Mattel had not met the factors set forth in Shoen II.

3

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

Larian has denied any recollection of the statements made to Mr. Palmeri, and MGA's spokesman and Rule 30(b)(6) witness have not confirmed them either. MGA's obvious strategy is to cast into doubt the accuracy of Mr. Palmeri's report. As discussed below, what Mr. Palmeri reported is not equivalent to other statements Larian might have made to other people – even if Larian used the same words.[2] It is the particular circumstances of these statements that makes Mr. Palmeri's testimony crucial evidence. Mattel must be permitted to present to the jury admissible evidence that Larian asserted to Mr. Palmeri that he (Larian) invented Bratz. Only Mr. Palmeri can provide that evidence.

### 2. Larian's Statements To BusinessWeek Are Not Cumulative

Palmeri argues that he should not be compelled to testify because it would be cumulative evidence. Mr. Palmeri notes that Mattel has obtained testimony from other witnesses on "Larian's statements to the press about the origins of the Bratz dolls" and that "[t]here may be other witnesses with whom Larian may have discussed the origins of Bratz dolls." (Opp. at 2, 5.) However, that is not the equivalent to showing that Mr. Larian made these statements to BusinessWeek. Larian's statements to Mr. Palmeri are unique evidence because they were aimed at the world at a time that MGA is now asserting on summary judgment (and is expected to argue at trial) Bryant's involvement was no secret, and the Wall Street Journal reported it. At the very time the Wall Street Journal was revealing Bryant's involvement and his submission of Bratz to MGA in 1999 (a year before he left Mattel) – MGA and Larian were still engaged in a scheme to obscure or conceal from the public the fact that Bryant created Bratz, and telling Mr. Palmeri a story at odds with the Wall Street Journal.[3] Mattel cannot obtain admissible evidence of

---

[2] Neither Mr. Palmeri nor defendants have identified any such similar statements.

[3] Declaration of Michael J. Niborski, dated April 21, 2008, filed in support of this Motion ("Niborski Dec."), Ex. 20 (Tkacik Depo. Tr. at 8:13-10:14) (Larian's claim to the Wall Street Journal that Bryant submitted the idea for Bratz in a fashion doll contest in late 1999).

4

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING
MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

Larian's particular assertion to BusinessWeek from any source other than Mr. Palmeri.  See SEC v. Seahawk Deep Ocean Technology, Inc., 166 F.R.D. 268, 272 (D. Conn. 1996) (reporter ordered to verify published statement by defendants accused of stock manipulation; "[t]here is nothing in the record to indicate other evidence in support of the accuracy of [the] article and, therefore, the testimony sought does not appear to be unduly cumulative"); accord In re Vmark Software, 1998 WL 42252 (E.D. Pa. 1998) (reporter ordered to confirm published statements alleged to be false and misleading in securities lawsuit).

Mr. Palmeri does not deny that no one else has testified about Larian's claim to BusinessWeek that Bratz was inspired by seeing "his own kids run around in navel-baring tops and hip-huggers."  Other people's accounts of Larian's other statements about the origins of Bratz are simply not equivalent of Mr. Palmeri's testimony.  That very limited testimony about published statements by a known source to one of the globe's most widely ready magazines is different, unique, and not duplicative of any other evidence in this case.[4]

### 3. Larian's Statements Are Clearly Relevant to Important Issues In The Case

Mr. Palmeri contends that because his testimony would not be relevant to the question of whether Bryant created Bratz while he was employed by Mattel, it is not relevant to any important issue in the case.  (Opp. at 6.)  Mr. Palmeri is mistaken.

---

[4] Mr. Palmeri points to U.S. ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc., 600 F. Supp. 667 (S.D.N.Y. 1985), to support its argument that the testimony of Mr. Palmeri would be cumulative.  The Vuitton case has no application here.  There, a convicted defendant sought production of unbroadcast "outtakes" of a 60 Minutes interview that was aired several months after trial.  The court found that defendant had the opportunity to cross-examine the subject of the interview at trial, that the witness's testimony at trial was consistent with the portions of the interview that were broadcast, and there was no reason to believe the outtakes contained anything more interesting than what was broadcast.  Thus, the demand for outtakes was merely a "fishing expedition."  Id. at 668.  Here, Mattel seeks confirmation of published statements for use at a trial where Larian will testify (as he did at deposition) that he does not recall making the statements.  Moreover, this is no "fishing expedition:" there is no mystery about what is being sought from Mr. Palmeri, and its importance to the case.

5

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

There is also no quota under <u>Shoen II</u> on the number of "important issues" in a particular case. Larian's behavior – including his statements to Mr. Palmeri – could prove to be dispositive: Larian's deliberate and continuing attempts to hide Bryant's involvement in Bratz bears directly on Mattel's ownership of Bratz. Larian behaved in a manner consistent with knowledge that Mattel owned Bratz and that disclosing Bryant would permit Mattel and others to "connect the dots" and figure out the truth.

Mr. Palmeri's claim that the mere existence of the article is sufficient evidence in support of Mattel's claim that it did not discover Bryant's involvement in Bratz until November 2003 is wrong. MGA undoubtedly will argue that the article is inadmissible hearsay.[5] The jury's consideration of Larian's behavior requires Mr. Palmeri to testify about Mr. Larian's statements. The situation here is no different than the eyewitness testimony required of the journalist in <u>Dillon v. City and County of San Francisco</u>, 748 F. Supp. 722 (N.D. Cal. 1990). Mattel's claim is not simply that it first discovered Bryant's role in the creation of Bratz in November 2003, but that MGA "<u>deliberately and intentionally</u> concealed facts sufficient for Mattel" to learn the truth of Bryant's involvement.[6] MGA will not agree that Mattel can simply introduce the BusinessWeek article at trial to establish the truth of its contents, and Mr. Palmeri does not argue that it can either.

---

[5] The BusinessWeek article is Trial Exhibit 631 (M 0074054-M 0074056). MGA has made the following objections to this exhibit: "Hearsay (FRE 801,802); Prejudicial/Confusing (FRE 403); Authenticity/Foundation (FRE 901)." Supplemental Declaration of Michael J. Niborski, dated May 5, 2008, Ex. A (MGA Defendants and Carter Bryant's Notice of Service of Objections to Mattel's Corrected Revised Exhibit List, dated May 1, 2008; Excerpt from Defendants' Objections, dated May 2, 2008). Bryant also objects to it based on "Hearsay (FRE 801,802)." <u>Id.</u> <u>See</u>, e.g., <u>Vmark</u>, 1998 WL 42252, *1, 3 (discussing inadmissibility of article or reporter's affidavit under hearsay rule).

[6] Niborski Dec., Ex. 8 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, ¶¶ 35-36).

6

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

### B. California's State Constitutional Shield Law Does Not Apply

Mr. Palmeri again argues that California's shield law provides him with absolute immunity from testifying. California's shield law does not apply in this action because Mattel has asserted both federal and state law claims. Moreover, California's shield law only applies to unpublished information, whereas the information Mattel intends to ask Mr. Palmeri about was published.

#### 1. The State Shield Law Does Not Apply Here Because Federal and State Claims Are At Issue

"Where there are federal question claims and pendent state law claims present, the federal law of privilege law applies." Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005). Here, Mattel has asserted both federal and state law claims.[7] Thus, federal privilege law governs and California's shield law is inapplicable. See, e.g., Dillon, 748 F. Supp. At 724-45 (rejecting application of California's shield law).

In an effort to get around this clear rule, Mr. Palmeri argues that California's shield law should apply because the information sought applies only to Mattel's state law claims. (Opp. at 11-12.) Even if Mr. Palmeri is right about the law (he is not), he is still wrong when it is applied here. Mr. Palmeri argues: it is only "[w]here a subpoena seeks evidence affecting only the state-law claims in a federal-court action, . . . that the state law of privilege applies." (Opp. at 11 (emphasis added).) But that's not the situation here. Larian's behavior – his knowing, continuing and very public effort to conceal Bryant's true involvement – is evidence of Mattel's ownership of the Bratz copyrights. Larian was aware that Mattel, not MGA, owned Bratz, and he acted (and spoke with Mr. Palmeri) accordingly. Because Larian's statements are

---

[7] Niborski Dec., Ex. 8 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007).

7

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

thus relevant to Mattel's federal copyright claim, California's shield law does not apply.[8]  <u>Agster</u>, 422 F.3d at 839.

Mr. Palmeri's effort to distinguish <u>Agster</u> in a footnote fails.  Mr. Palmeri claims that <u>Agster</u> is not controlling because it involved privilege in relation to a hospital's peer review rather than the reporter's privilege.  But <u>Fed. R. Evid.</u> 501 applies to all privileges, and <u>Agster</u> sets forth the Ninth Circuit's interpretation of that provision.  Mr. Palmeri provides no basis to claim that the analysis should be different for the reporter's privilege.  Indeed, in <u>Crowe v. County of San Diego</u>, 242 F. Supp. 2d 740, 749-750 (S.D. Cal. 2003), the court held that where both state and federal claims are at issue, the federal reporter's privilege, not the California shield law, applies.

### 2. The State Shield Law Does Not Apply Here Because the Matters About Which Mr. Palmeri Must Testify Were Published

California's shield law does not apply for an additional, independent reason – the shield law protects only "unpublished information."  Here, the statements about which Mattel needs testimony were published.  Mr. Palmeri claims that courts have interpreted "unpublished information" so broadly as to include the identity of an individual who is directly quoted in a news article.  But the only case Mr. Palmeri cites for that proposition – <u>In re Jack Howard</u>, 136 Cal. App. 2d 816 (1955) – did not

---

[8]  Mr. Palmeri's argument that California's shield law should apply notwithstanding the fact that the testimony sought is relevant to Mattel's federal law claims is without merit.  In support of his position, Mr. Palmeri cites three district court cases that purport to hold that state law privileges are to be applied where both federal and state law claims are at issue.  Those cases, however, are contrary to subsequent Ninth Circuit law.  In each of the cases Mr. Palmeri cites, the court interpreted <u>Fed. R. Evid.</u> 501 as requiring both federal and state privilege law to apply where both federal and state law claims were at issue.  In 2005, the Ninth Circuit rejected that interpretation, holding that, pursuant to <u>Fed. R. Evid.</u> 501, "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege law applies."  <u>Agster</u>, 422 F.3d at 839.

8

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

analyze the definition of "unpublished information" under California's shield law at all.

In re Jack Howard involved former Cal. Code of Civ. Proc. § 1881(6), which has since been repealed. That statute provided that journalists could not be held in contempt for refusing to disclose sources to a court. It was not until 1974, after the shield law was transferred to the Evidence Code, that the Legislature added "unpublished information" to the shield law, and In re Howard had no occasion to address whether the nonconfidential source of a published statement is "unpublished information." Moreover, we know the source of these statements – Larian. Mr. Palmeri has never disputed that the statement was made by Larian. In re Jack Howard therefore provides no support for Mr. Palmeri's position.

## III. CONCLUSION

Mattel respectfully requests that the Discovery Master reconsider his Order of February 26, 2008 and order Mr. Palmeri to appear for deposition.

Dated: May 5, 2008

STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG
MICHAEL J. NIBORSKI

By: /s/ Michael J. Niborski
Michael J. Niborski
Attorneys for MATTEL, INC.

9

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On May 5, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI** on the parties in this action as follows:

Thomas J. Nolan
**Skadden, Arps, Slate, Meageher & Flom LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071

Mark E. Overland
David C. Scheper
Alexander H. Cote
**Overland Borenstein Scheper & Kim LLP**
601 West Fifth Street, 12th Floor
Los Angeles, CA 90017

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

☐ **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in sealed envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) being served.

☒ **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 5, 2008, at Los Angeles, California.

Gus Vargas