# EXHIBIT A

# TABLE OF CONTENTS

**Page**

| Number | Title | Source | Page |
|---|---|---|---|
| 1.2 | CLAIMS AND DEFENSES | 9th Cir. Civ. Jury Instr. 1.2 (2007). | 1 |
| MSJI No. — | EVIDENCE OF SPOLIATION | *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993); *Akonia v. United States*, 938 F.2d 158, 161 (9th Cir.1991), cert. denied, 503 U.S. 962 (1992); *Housing Rights Center v. Sterling*, 2005 WL 3320739, *8 (C.D. Cal. 2005); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 110 (2d Cir.2002); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 232 33 (6th Cir. 2002). | 3 |
| MSJI No. — | ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION | *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997). | 4 |
| CACI 300 | BREACH OF CONTRACT— INTRODUCTION | Judicial Council of California Civil Jury Instructions (2007) ("CACI"), No. 300. | 5 |
| CACI 303 | BREACH OF CONTRACT— ESSENTIAL FACTUAL ELEMENTS | CACI No. 303. | 7 |
| MSJI No. — | BREACH OF CONTRACT— PREVIOUS FINDINGS OF THE COURT | April 25, 2008 Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment ("April 25, 2008 Order"). | 8 |
| CACI 2201 | INTENTIONAL INTERFERENCE WITH CONTRACTUAL | CACI No. 2201. | 9 |

| Number | Title | Source | Page |
|---|---|---|---|
| | RELATIONS | | |
| MSJI No. — | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— PREVIOUS FINDINGS OF THE COURT | April 25, 2008 Order. | 10 |
| MSJI No. — | INTENT OR KNOWLEDGE | CACI 2203; *Silicon Image, Inc. v. Analogix Semiconductor Inc.*, 2007 WL 1455903, *4 (N.D. Cal. May 16, 2007); *Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282 83 (1966); *cf. Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999). | 11 |
| MSJI No. — | WILLFUL BLINDNESS | *Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999). | 12 |
| MSJI No. — | BREACH OF FIDUCIARY DUTY | CACI No. 4100; *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000); *Stevens v. Marco*, 147 Cal. App. 2d 357, 372 (1956); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1994); *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002). | 13 |
| MSJI No. — | BREACH OF FIDUCIARY DUTY— PREVIOUS FINDINGS OF THE COURT | April 25, 2008 Order. | 14 |
| MSJI No. — | BREACH OF THE DUTY OF LOYALTY | CACI No. 4102; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); Cal. Labor Code §§ 2856, 2860, 2863; | 15 |

| Number | Title | Source | Page |
|--------|-------|--------|------|
| | | *cf. Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1161 (9th Cir. 1987). | |
| MSJI No. ___ | BREACH OF THE DUTY OF LOYALTY— PREVIOUS FINDINGS OF THE COURT | April 25, 2008 Order. | 16 |
| MSJI No. ___ | AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY | *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118, 1127 28 (C.D. Cal. 2003); *In re First Alliance Mortgage Co.*, 471 F.3d 977, 994 95 (9th Cir. 2006). | 17 |
| MSJI No. ___ | AIDING AND ABETTING BREACH OF DUTY— PREVIOUS FINDINGS OF THE COURT | April 25, 2008 Order. | 18 |
| CACI 2100 | CONVERSION— ESSENTIAL FACTUAL ELEMENTS | CACI No. 2100. | 19 |
| MSJI No. ___ | ADVERSE INFERENCE FROM SPOLIATION | *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991); *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, * 6 (N.D. Cal. 2004); Glover, 6 F.3d at 1330; *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001); *Housing Rights Center v. Sterling*, 2005 WL 3320739, *3 (C.D. Cal. 2005); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 234 (6th Cir. 2002); *One Beacon Ins. Co. v. Broadcast Development Group, Inc.*, 2005 WL 2077499, *5 (6th Cir. 2005). | 20 |
| MSJI No. ___ | ADVERSE DEFENSE—STATUTE | CACI 4120 (modified); CACI 455 (modified); 17 U.S.C. § 507(b); Cal. | 22 |

85273.4

MATTEL'S PROPOSED JURY INSTRUCTIONS

| Number | Title | Source | Page |
|---|---|---|---|
| | OF LIMITATIONS | Code Civ. Pro. § 339(1); Cal. Code Civ. Pro. § 338(c); *Rambus Inc. v. Samsung Electronics Co.*, 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003). | |
| MSJI No. ___ | FRAUDULENT CONCEALMENT | *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007); *Grisham v. Philip Morris U.S.A., Inc.*, Cal.4th, 54 Cal. Rptr. 3d 735, 744 (2007); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983). | 24 |
| MSJI No. ___ | STATUTE OF LIMITATIONS— TOLLING AS A RESULT OF STAY OF PROCEEDINGS | *Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118, *1 (N.D. Cal. 2007); *Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) | 25 |
| MSJI No. ___ | STATUTE OF LIMITATIONS— RELATION BACK | *Fed. R. Civ. P.* 15(c)(1)(B); *Martel Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir. 1989); Court's January 12, 2007 Order, at 14, 15. | 26 |
| 17.0 | PRELIMINARY INSTRUCTION— COPYRIGHT | 9th Cir. Civ. Jury Instr. 17.0 (2007). | 27 |
| 17.1 | COPYRIGHT— | 9th Cir. Civ. Jury Instr. 17.1 (2007). | 30 |

MATTEL'S PROPOSED JURY INSTRUCTIONS

| Number | Title | Source | Page |
|---|---|---|---|
| | DEFINED (17 U.S.C. § 106) | | |
| 17.4 | COPYRIGHT INFRINGEMENT— OWNERSHIP AND COPYING  (17 U.S.C. § 501A–(b)) | 9th Cir. Civ. Jury Instr. 17.4 (2007) (modified). | 31 |
| 17.15 | COPYING—ACCESS AND SUBSTANTIAL SIMILARITY | 9th Cir. Civ. Jury Instr. 17.15 (2007). | 32 |
| 17.10 | COPYRIGHT INTERESTS— ASSIGNEE (17 U.S.C. § 201(d)(1)) | 9th Cir. Civ. Jury Instr. 17.10 (2007). | 33 |
| MSJI No. — | COPYRIGHT INFRINGEMENT— SUBSTANTIAL SIMILARITY | *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1398 (9th Cir. 1997); *Shaw v. Lindheim,* 919 F.2d 1353, 1356 57 (9th Cir. 1990); *Jada Toys, Inc. v. Mattel, Inc.,* 1008 WL 450891, *6 (9th Cir. Feb. 21, 2008); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *Newton v. Diamond,* 204 F. Supp. 1244, 1253 (C.D. Cal. 2002); *Stillman v. Leo Burnett Co., Inc.,* 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989); *Coston v. Product Movers,* 1990 WL 56516 at *3 (E.D. Pa., 1990); *Webloyalty.com, Inc. v. Consumer Innovations, LLC,* 2005 WL 468496 at *2 (D. Del. 2005); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,* 932 F. Supp. 220, 225 (N.D. Ill 1996); *ADA v. Delta Dental Plans Ass'n,* 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996); *Stillman v. Leo Burnett Co., Inc.,* 720 F. Supp. 1353, 1360-61 | 34 |

| Number | Title | Source | Page |
|---|---|---|---|
| | | (N.D. Ill. 1989) | |
| MSJI No. __ | SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE" | *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000); *Shaw v. Lindheim,* 919 F.2d 1353, 1361 62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1172 (9th Cir. 1977); *Smith v. Jackson,* 84 F.3d 1213, 1220-21 (9th Cir. 1996). | 36 |
| MSJI No. __ | COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS | *King Features Syndicate v. Fleischer,* 299 F. 533, 534, 538 (2d Cir. 1924); *Fleischer Studios v. Ralph A. Freundlich, Inc.,* 73 F.2d 276, 278 (2d Cir. 1934) | 37 |
| MSJI No. __ | COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS | *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1518 19 (9th Cir. 1993); *Walker v. Univ. Books, Inc.,* 602 F.2d 859, 864 (9th Cir. 1979); *Walt Disney Prods. v. Filmation Assocs.,* 628 F. Supp. 871, 875 76 (C.D. Cal. 1986). | 38 |
| MSJI No. __ | COPYRIGHT INFRINGEMENT—ORIGINALITY | 9th Cir. Civ. Jury Instr. 17.12 (2007); *CDN, Inc. v. Kapes,* 197 F.3d 1256, 1259 60 (9th Cir. 1999); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1163 n.5 (9th Cir. 1977). | 39 |
| MSJI No. __ | ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS | *Mattel, Inc. v. Goldberger Doll Mfg. Co.,* 365 F.3d 133, 135 (2d Cir. 2004); *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.,* 479 F. Supp. 1105, 1114 15 (E.D.N.Y. 1978); *Fisher-Price Toys v. My-Toy Co.,* 385 F. Supp. 218, 219 20 (S.D.N.Y. 1974); *cf. Swirsky v. Carey,* 376 | 41 |

85273.4

Case No. CASE NO. CV 04-9049 SGL (RNBx)
MATTEL'S PROPOSED JURY INSTRUCTIONS

| Number | Title | Source | Page |
|---|---|---|---|
| | | F.3d 841, 848 (9th Cir. 2004). | |
| MSJI No. ___ | PRESUMPTION OF COPYRIGHTABILITY | 17 U.S.C. § 410(c); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985); *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) | 43 |
| MSJI No. ___ | COPYRIGHT INFRINGEMENT— INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY | *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997) | 44 |
| 17.13 | COPYRIGHT INTERESTS— DERIVATIVE WORKS (17 U.S.C. §§ 101, 106(2)) | 9th Cir. Civ. Jury Instr. 17.13 (2007) | 45 |
| 17.21 | DERIVATIVE LIABILITY— CONTRIBUTORY INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.21 (2007). | 46 |
| MSJI No. ___ | AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS | CACI 4120 (modified); CACI 455 (modified); 17 U.S.C. § 507(b); Cal. Code Civ. Pro. § 339(1); Cal. Code Civ. Pro. § 338(c); *Rambus Inc. v. Samsung Electronics Co.*, 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003). | 47 |
| MSJI No. ___ | FRAUDULENT CONCEALMENT | *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at | 49 |

| Number | Title | Source | Page |
|---|---|---|---|
| | | *3 (N.D. Cal. Nov. 2, 2007); *Grisham v. Philip Morris U.S.A., Inc.*, Cal.4th, 54 Cal. Rptr. 3d 735, 744 (2007); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983). | |
| MSJI No. — | STATUTE OF LIMITATIONS—TOLLING AS A RESULT OF STAY OF PROCEEDINGS | *Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118, *1 (N.D. Cal. 2007); *Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) | 50 |
| MSJI No. — | STATUTE OF LIMITATIONS—COPYRIGHT INFRINGEMENT | *Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994). | 51 |
| MSJI No. — | STATUTE OF LIMITATIONS—RELATION BACK | Fed. R. Civ. P. 15(c)(1)(B); *Martel Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir. 1989); Court's January 12, 2007 Order, at 14, 15. | 52 |
| MSJI No. — | COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER | 17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office Practices*, Chapters 1602.2, 1604.02. | 53 |
| 17.22 | COPYRIGHT—DAMAGES (17 U.S.C. § 504) | 9th Cir. Civ. Jury Instr. 17.22 (2007). | 55 |
| 17.24 | COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b)) | 9th Cir. Civ. Jury Instr. 17.24 (2007). | 56 |
| MSJI No. — | COPYRIGHT—DAMAGES—APPORTIONMENT OF | 9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music Corp. v. Metro-Goldwyn-Mayer,* | 57 |

| Number | Title | Source | Page |
|---|---|---|---|
| | PROFITS | *Inc.,* 886 F.2d 1545, 1549 (9th Cir. 1989) | |
| MSJI No. __ | COPYRIGHT— DAMAGES— INDIRECT PROFITS | 9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 710 11, 714 n.10 (9th Cir. 2004). | 58 |
| MSJI No. __ | COPYRIGHT— DAMAGES— WILLFUL INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 487 (9th Cir. 2000); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.,* 752 F.2d 1326, 1331-32 (9th Cir. 1982); *Sheldon v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 45, 53 (2d Cir. 1939); *Saxon v. Blann,* 968 F.2d 676, 681 (8th Cir. 1992); *Jarvis v. A & M Records,* 827 F. Supp. 282, 294 (1993); *Liu v. Price Waterhouse LLP,* 2000 WL 1644585, *6 (N.D. Ill. 2000); 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,* § 14.03[C][2] (2006). | 59 |
| CACI 350 | INTRODUCTION TO CONTRACT DAMAGES | CACI No. 350. | 61 |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES— LIABILITY ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS | CACI No. 3901. | 62 |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES— LIABILITY ESTABLISHED FOR BREACH OF FIDUCIARY DUTY | CACI No. 3901; *Eckard Brandes, Inc. v. Riley,* 338 F.3d 1082, 1086 (9th Cir. 2003); *Xum Speegle, Inc. v. Fields,* 216 Cal. App. 2d 546 (1963); Restatement (2d) of Agency, § 403. | 63 |

85273.4

| Number | Title | Source | Page |
|---|---|---|---|
| | AND THE DUTY OF LOYALTY | | |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES— LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY | CACI No. 3901. | 65 |
| CACI 2102 | PRESUMED MEASURE OF DAMAGES FOR CONVERSION | CACI No. 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937). | 66 |
| CACI 3947 | PUNITIVE DAMAGES— INDIVIDUAL AND ENTITY DEFENDANTS | CACI No. 3947. | 67 |

# PHASE 1A JURY INSTRUCTIONS

## Instructions to Be Read When Trial Begins

### 1.2

## CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Mattel is the plaintiff in this case.  Mattel claims that it is the rightful owner of the ideas, designs and works related to the Bratz dolls created by the defendant, Carter Bryant, while he was employed by Mattel, including drawings of Bratz. Mattel claims that Mr. Bryant breached his contractual obligations and other legal duties to Mattel when he concealed from Mattel the conception, design and development of Bratz and purported to assign them to the defendant MGA Entertainment, Inc. ("MGA").  Mattel also claims that Mr. Bryant converted Mattel's property, including tangible items, and infringed Mattel's copyrights in Bratz works.  Mattel has the burden of proving these claims.

Mr. Bryant denies these claims.  Prior to trial, the Court ruled as a matter of law that Mr. Bryant breached his fiduciary duty and duty of loyalty to Mattel when he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.  However, the full scope of Mr. Bryant's breaches of duty is for you to decide.  Prior to trial, the Court also ruled that Mr. Bryant assigned to Mattel any Bratz-related inventions, including any designs, improvements, ideas, concepts, and copyrightable subject matter, that he created during the period of his employment with Mattel.  It is for you to decide which Bratz-related works, if any, Mr. Bryant created during that time.

1   Mattel claims that the defendants MGA and MGA's CEO Isaac Larian
2  intentionally interfered with Bryant's contracts with Mattel and aided and abetted
3  Mr. Bryant's breaches of fiduciary duty and the duty of loyalty to Mattel.  Mattel
4  also claims that MGA, Mr. Larian and MGA Entertainment (HK) Limited ("MGA
5  Hong Kong") converted Mattel's property, including tangible items, and infringed
6  Mattel's copyrights in the Bratz works.  Mattel has the burden of proving these
7  claims.
8   MGA, Mr. Larian and MGA HK deny these claims.
9
10   **Authority:**  9th Cir. Civ. Jury Instr. 1.2 (2007).
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

85273.4

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## EVIDENCE OF SPOLIATION

During the trial, the plaintiff, Mattel, intends to introduce evidence that the defendants, including Carter Bryant, MGA, MGA's CEO Isaac Larian and/or MGA Hong Kong, did not preserve evidence relevant to this case.  In certain circumstances, you may assume that such evidence is or would have been favorable to Mattel and adverse to the defendants.  At the end of the trial, I will instruct you on the law in this regard.

**Authority:**  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993); *Akonia v. United States*, 938 F.2d 158, 161 (9th Cir.1991), cert. denied, 503 U.S. 962 (1992); *Housing Rights Center v. Sterling*, 2005 WL 3320739, *8 (C.D. Cal. 2005); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 110 (2d Cir.2002); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 232-33 (6th Cir.2002).  This instruction will appropriately explain to the jury, at the start of trial, why evidence will be presented regarding the defendants' spoliation of evidence.  Without any foundational instruction, the jury may be confused by the presentation of spoliation evidence.  This instruction lays an appropriate foundation for the presentation of such evidence.

**<u>Instructions on the Trial Process</u>**

**<u>(Court Reads and Provides Written Instructions at End of Case)</u>**

**<u>MATTEL'S SPECIAL JURY INSTRUCTION NO.    </u>**
**<u>ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE</u>**
**<u>AGAINST SELF-INCRIMINATION</u>**

You have heard certain witnesses decline to answer questions on the grounds of their Fifth Amendment privilege against self-incrimination.

The Fifth Amendment of the United States Constitution affords every person the right to decline to answer any questions if he or she believes that the answers may tend to incriminate them. However, in civil cases, you are permitted, but not required, to draw the inference that the information withheld by these witnesses would have been unfavorable to them and/or favorable to Mattel.

Any inference you may draw should be based upon all the facts and circumstances in this case as you may find them.

**Authority:** *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify.").

## Instructions on the Law

## CACI 300

## BREACH OF CONTRACT—INTRODUCTION

Mattel, the plaintiff in this case, and the defendant, Carter Bryant, entered into a contract called the Employee Confidential Information and Inventions Agreement.  I will refer to this as the "Inventions Agreement."  Pursuant to the Inventions Agreement, Mr. Bryant assigned to Mattel all right, title and interest in any "inventions" relating to Bratz, including without limitation designs, ideas, improvements and other works, that he created, made or conceived while employed by Mattel.  Mr. Bryant also agreed that he would not engage in any employment or business, without Mattel's express consent, other than for Mattel or assist in any manner any business competitive with the business of Mattel while employed by Mattel.

Mattel also claims that Mattel and Mr. Bryant entered into a contract called the Conflict of Interest Questionnaire, wherein Mr. Bryant agreed to notify Mattel immediately if he became engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest.

Mattel claims that Mr. Bryant breached these contracts by concealing his conception, creation and development of Bratz works while he was employed by Mattel.  Mattel claims that Mr. Bryant further breached these contracts by purporting to assign Bratz works to MGA, a Mattel competitor, while Mr. Bryant was employed by Mattel, by secretly assisting and working for MGA while he was employed by Mattel and by disclosing Mattel's proprietary information to MGA.

Mattel claims that Mr. Bryant's breaches of contract caused harm to Mattel for which Mr. Bryant should pay damages.

Mr. Bryant denies that he breached his contractual obligations to Mattel.

1        **Authority:**  Judicial Council of California Civil Jury Instructions (2007)

2 ("CACI"), No. 300.

# CACI 303

## BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

To recover damages from Mr. Bryant for breach of contract, Mattel must prove all of the following:

That Mattel and Mr. Bryant entered into a contract or contracts;

That Mattel did all, or substantially all, of the significant things that the contract required Mattel to do;

That Mr. Bryant failed to do something that the contract required him to do; and

That Mattel was harmed by that failure.

**Authority:**  CACI No. 303.

Case No. CASE NO. CV 04-9049 SGL (RNBx)
MATTEL'S PROPOSED JURY INSTRUCTIONS

85273.4

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## BREACH OF CONTRACT—PREVIOUS FINDINGS OF THE COURT

The Court has already found as a matter of law that the Inventions Agreement is a valid and enforceable contract. This means that the first two elements of Mattel's breach of contract claim have been established as a matter of law.

The Court has also found as a matter of law that the term "inventions" used in the Inventions Agreement includes any designs, improvements, ideas, concepts, and copyrightable subject matter, and that, to the extent they were created by Mr. Bryant while he was employed by Mattel, the Bratz drawings created by Mr. Bryant fall within the scope of the Inventions Agreement.

If you find that Mr. Bryant created any ideas, concepts, drawings, designs, tangible items and/or works related to Bratz while he was employed by Mattel, including any of the Bratz drawings, then Mattel owns all right, title and interest in those ideas, concepts, drawings, designs and/or works pursuant to the Inventions Agreement as a matter of law.

The Court has also found as a matter of law that Mr. Bryant directly competed with Mattel by entering into a contract with MGA, Mattel's competitor, to produce a competing product while he was still employed by Mattel. However, the full scope of Mr. Bryant's breaches of contract is for you to decide.

# **CACI 2201**

## **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

Mattel claims that MGA and Isaac Larian intentionally interfered with the contracts between Mattel and Carter Bryant. To establish this claim, Mattel must prove all of the following:

1.     That there was a contract or contracts between Mattel and Carter Bryant;

2.     That MGA and/or Mr. Larian knew of the contract;

3.     That MGA and/or Mr. Larian intended to disrupt the performance of this contract;

4.     That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5.     That Mattel was harmed; and

6.     That the conduct of MGA and/or Mr. Larian was a substantial factor in causing Mattel's harm.

**Authority:**  CACI No. 2201.

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ____
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL
## RELATIONS—PREVIOUS FINDINGS OF THE COURT

The Court has already found as a matter of law that the first, third and fifth elements of Mattel's claim against MGA and Isaac Larian for intentional interference with contractual relations have been met.  Accordingly, if you find that MGA or Mr. Larian knew about the contract or contracts between Mattel and Mr. Bryant and that MGA's or Mr. Larian's conduct prevented performance or made performance more difficult, then you should find MGA and/or Mr. Larian liable for intentional interference with contractual relations.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## <u>INTENT OR KNOWLEDGE</u>

In deciding whether MGA or Isaac Larian acted knowingly or intentionally, you may consider whether they knew that a breach was substantially certain to result from their conduct.  Knowledge of a third party's contractual obligations can be inferred from circumstantial evidence, including an intent to conceal or to avoid actual knowledge of the agreement.

**Authority:**  CACI 2203; *Silicon Image, Inc. v. Analogix Semiconductor Inc.*, 2007 WL 1455903, *4 (N.D. Cal. May 16, 2007) (holding that use of licensing agreements which are "common in the industry" created a reasonable inference that defendant, a competitor to plaintiff, "knew that sale of its product to Silicon Image customers violated the Software License Agreement"); *Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966) (reversing grant of summary judgment on interference claim on the ground that circumstantial evidence supported an inference of knowledge of a contractual relationship); *cf. Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999) ("'[W]illful blindness' is no defense to a charge of knowing and intentional counterfeiting.  It is enough that a [defendant] 'failed to inquire further because he was afraid of what the inquiry would yield.").

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## WILLFUL BLINDNESS

In deciding whether MGA or Isaac Larian acted knowingly or intentionally, you may consider that a party's willful blindness can be equivalent to knowledge.

**Authority:** *Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999) ("'[W]illful blindness' is no defense to a charge of knowing and intentional counterfeiting.  It is enough that a [defendant] 'failed to inquire further because he was afraid of what the inquiry would yield.'").

## MATTEL'S SPECIAL JURY INSTRUCTION NO. \_\_\_\_\_
## BREACH OF FIDUCIARY DUTY

Mattel claims that it was harmed by Carter Bryant's breach of fiduciary duty. Carter Bryant owed what is known as a fiduciary duty to Mattel.  A fiduciary duty imposes on an individual a duty to act with the utmost good faith in the best interests of another.  To establish this claim, Mattel must prove all of the following:

1.  That Mr. Bryant owed a fiduciary duty to Mattel;

2.  That Mr. Bryant failed to act in the best interests of Mattel while he was employed by Mattel;

3.  That Mattel did not give informed consent to Mr. Bryant's conduct;

4.  That Mattel was harmed; and

5.  That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

**Authority:**  CACI No. 4100; *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000) (overruled on other grounds); *Cf. Stevens v. Marco*, 147 Cal. App. 2d 357, 372 (1956) ("Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another."); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1994) (same); *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002) (noting that a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . .").

1
2
3
4

**MATTEL'S SPECIAL JURY INSTRUCTION NO.**
**BREACH OF FIDUCIARY DUTY—PREVIOUS FINDINGS**
**OF THE COURT**

5      The Court has already found as a matter of law that Carter Bryant owed a
6   fiduciary duty to Mattel while he was employed by Mattel, and that Mr. Bryant
7   breached his fiduciary duty when he secretly entered into a contract with MGA,
8   Mattel's competitor, while still employed by Mattel, to produce a line of fashion
9   dolls to be marketed in direct competition with Mattel's products.  Accordingly,
10  Mattel's claim against Mr. Bryant for breach of fiduciary duty has been established
11  as a matter of law.  However, the full scope of Mr. Bryant's liability for breach of
12  fiduciary duty is for you to decide.
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MATTEL'S SPECIAL JURY INSTRUCTION NO. ____**

**BREACH OF THE DUTY OF LOYALTY**


Mattel also claims that it was harmed by Carter Bryant's breach of the duty of loyalty. Mr. Bryant owed a duty of undivided loyalty to Mattel while he was employed by Mattel and was not permitted to take any action that was adverse to his employer. To establish this claim, Mattel must prove all of the following:

1.   That Mr. Bryant was Mattel's employee;

2.   That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

3.   That Mattel did not give informed consent to Mr. Bryant's conduct;

4.   That Mattel was harmed; and

5.   That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.


**Authority:** CACI No. 4102; *Cal. Labor Code* § 2863; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs.*, Inc., 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860; *cf. Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1161 (9th Cir. 1987).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ____
## BREACH OF THE DUTY OF LOYALTY—PREVIOUS FINDINGS
## OF THE COURT

The Court has already found as a matter of law that Carter Bryant owed a duty of loyalty to Mattel while he was employed by Mattel, and that Mr. Bryant breached his duty of loyalty when he secretly entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.  Accordingly, Mattel's claim against Mr. Bryant for breach of the duty of loyalty has been established as a matter of law.  However, the full scope of Mr. Bryant's liability for breach of the duty of loyalty is for you to decide.

85273.4

## **MATTEL'S SPECIAL JURY INSTRUCTION NO. __**
## **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
## **AND DUTY OF LOYALTY**

The plaintiff, Mattel, claims that MGA and MGA's CEO Isaac Larian aided and abetted Carter Bryant's breaches of fiduciary duty and breaches of the duty of loyalty. To establish that MGA and/or Mr. Larian are liable for aiding and abetting breach of fiduciary duty or breach of the duty of loyalty, Mattel must prove that:

1.      Mr. Bryant's conduct constituted a breach of duty or duties;

2.      MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties; and

3.      MGA and/or Mr. Larian gave substantial assistance or encouragement to Mr. Bryant to breach his duty or duties.

Financial gain and self-interested profit on the part of MGA or Mr. Larian can corroborate the knowledge and substantial assistance elements of aiding and abetting Mr. Bryant's breach or breaches of any duty owed to Mattel.

**Authority:** *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118, 1127-28 (C.D. Cal. 2003); *In re First Alliance Mortgage Co.*, 471 F.3d 977, 994-95 (9th Cir. 2006).

# MATTEL'S SPECIAL JURY INSTRUCTION NO. _____

## AIDING AND ABETTING BREACH OF DUTY—

## PREVIOUS FINDINGS OF THE COURT

The Court has already found as a matter of law that Carter Bryant breached his fiduciary duty and duty of loyalty to Mattel when he secretly entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.  Accordingly, if you find that MGA or Isaac Larian knew that Mr. Bryant's conduct constituted a breach of these duties and gave substantial assistance or encouragement to Mr. Bryant to so act, you should find MGA and/or Mr. Larian liable for aiding and abetting Mr. Bryant's breaches of duty.

# CACI 2100

## CONVERSION—ESSENTIAL FACTUAL ELEMENTS

Mattel claims that the defendants, Carter Bryant, MGA, MGA's CEO Isaac Larian and MGA Hong Kong, wrongfully exercised control over Mattel's property, including tangible Bratz works such as Mr. Bryant's drawings.  To establish this claim, Mattel must prove all of the following:

1.　　That Mattel was the rightful owner of the property at issue;

2.　　That any of the defendants intentionally took possession of such property for a significant period of time;

3.　　That Mattel did not consent;

4.　　That Mattel was harmed; and

5.　　That any one of the defendants' conduct was a substantial factor in causing Mattel's harm.

**Authority:**  CACI No. 2100.

85273.4

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## ADVERSE INFERENCE FROM SPOLIATION

The plaintiff, Mattel, contends that the defendants, including Carter Bryant, MGA, Isaac Larian and/or MGA Hong Kong, did not take appropriate steps to preserve relevant evidence and destroyed such evidence.  The defendants deny that contention.

If you find that relevant evidence that was within the defendants' control is missing or has been destroyed and that the evidence is missing because of the defendants' bad faith or negligent, unjustified or careless actions or inaction, you may infer that such evidence, if available now, would have been favorable to Mattel and adverse to the defendants.

Defendants' destruction of evidence was negligent, unjustified or careless if they had notice that the evidence might be relevant to this litigation when they destroyed the evidence or made the evidence unavailable.  A person is under a duty to preserve evidence that he or she knows, or reasonably should know, could be relevant to a case.

**Authority:**  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)("[A] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior."); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) ("Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case."); *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, * 6 (N.D. Cal. 2004) ("In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that

1   destroyed it.") (citations omitted).  Importantly, "a finding of 'bad faith' is *not* a

2   prerequisite to this corrective procedure.  *See, e.g., Glover*, 6 F.3d at 1330; *see*

3   *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001)

4   (culpable state of mind for an imposition of an adverse inference includes

5   negligence).  A litigant has a freestanding duty "to preserve what it knows, or

6   reasonably should know, is relevant in the action, is reasonably calculated to lead

7   to the discovery of admissible evidence, is reasonably likely to be requested during

8   discovery and/or is the subject of a pending discovery request." *Housing Rights*

9   *Center v. Sterling*, 2005 WL 3320739, *3 (C.D. Cal. 2005).

10         An adverse inference jury instruction should be given where "[s]ufficient

11   evidence exists to permit a jury to determine the factual predicate" underlying a

12   claim of spoliation.  *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228,

13   234 (6th Cir. 2002).  "When a genuine question exists as to whether a party's loss

14   or destruction of evidence was negligent (or worse), it is appropriate to defer that

15   question to the jury, by instructing jurors that if they find that the spoliation of

16   evidence was at least negligent, they may infer that the missing evidence would

17   favor the non-spoliating party." *One Beacon Ins. Co. v. Broadcast Development*

18   *Group, Inc.*, 2005 WL 2077499, *5 (6th Cir. 2005).

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS

The defendants contend that Mattel's lawsuit was not filed within the time set by law. This time is called the "statute of limitations."

The statutes of limitations for Mattel's claims are different. For Mattel's claims of aiding and abetting breach of fiduciary duty and breach of duty of loyalty, and interference with contract, the statutes of limitations are two years. For Mattel's claim of conversion, the statute of limitations is three years. For Mattel's claims of breach of contract, breach of fiduciary duty and breach of duty of loyalty, the statutes of limitations are four years.

To succeed on their statute of limitations defense, the defendants must prove that Mattel's claimed harm occurred more than two, three or four years prior to April 27, 2004 (the time period depends on the claim) unless Mattel proves that two, three or four years prior to April 27, 2004 (the time period depends on the claim), it did not discover, and did not know of facts that would have caused a reasonable person to suspect the generic elements of its causes of action – specifically, that Carter Bryant created the Bratz works at issue while employed by Mattel and that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel.

With respect to the claims that Mattel asserts against the MGA defendants (as opposed to its claims against Bryant individually), the time for Mattel to file an action did not start running until Mattel additionally discovered, or knew of facts that would have caused a reasonable person to suspect, that MGA and Isaac Larian knew that Mr. Bryant was a Mattel employee at the time that Mr. Bryant presented MGA with the Bratz pitch materials.

1    Mattel was not required to bring a lawsuit based on suspicions alone.  Each
2    respective statute of limitations began to run only when Mattel had or should have
3    had an awareness of facts sufficient to identify the particular claim.

4
5    **Authority:**  CACI 4120 (modified); CACI 455 (modified); 17 U.S.C.
6    § 507(b); Cal. Code Civ. Pro. § 339(1);  Cal. Code Civ. Pro. § 338(c); *Rambus*
7    *Inc. v. Samsung Electronics Co.*, 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007); *Fox*
8    *v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis added);
9    *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (a
10   copyright infringement claim accrues when the plaintiff knows of the infringement
11   or is chargeable with such knowledge); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F.
12   Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a
13   way that pressures litigants to file suits based merely on suspicions and fears.
14   …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to
15   file an action with no other basis would offend norms articulated in rules like
16   Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F.
17   Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has
18   "'an awareness of sufficient facts to identify a particular cause of action… [It does]
19   not mean the kind of notice -- based on hints, suspicions, hunches or rumors -- that
20   requires a plaintiff to make inquiries in the exercise of due diligence, but not to file
21   suit.'" ) (citation omitted).

22
23
24
25
26
27
28

85273.4

## MATTEL'S SPECIAL JURY INSTRUCTION NO. \_\_\_\_
## FRAUDULENT CONCEALMENT

If you find that the defendants concealed the facts that could have led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel, the statute of limitations period for Mattel to file its claims did not start to run until Mattel did not merely suspect, but actively had knowledge of, the specific wrongdoing above.

**Authority:** *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, \_ Cal.4th \_, 54 Cal. Rptr. 3d 735, 744 (2007) ("[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (reversing summary judgment on statute of limitations grounds where "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations"); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983).

1
2
3
4

## MATTEL'S SPECIAL JURY INSTRUCTION NO. \_\_\_\_\_
## STATUTE OF LIMITATIONS—TOLLING AS A RESULT OF STAY OF
## PROCEEDINGS

5
6
7
8
9

When calculating the statute of limitations period for any claim, you must add to any limitations period the time during which proceedings in the case were stayed. The proceedings in the case were stayed from May 20, 2005 until May 20, 2006 (a total of 362 days).

10
11
12
13
14
15
16
17

**Authority:** *Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118, *1 (N.D. Cal. 2007) (holding that "statute of limitations should be equitably tolled for all putative class members … from March 2, 2007 [when action was stayed] until the stay is lifted.") ; *Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations…"); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) (permitting leave to add a RICO claim against new defendants and finding that the claim was timely because the "[t]he statute of limitations was equitably tolled during the stay of discovery").

18
19
20
21
22
23
24
25
26
27
28

1

2

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ____
## STATUTE OF LIMITATIONS—RELATION BACK

3

4      You have heard evidence that Mattel filed certain of its claims on April 27,

5  2004, when it filed its complaint against Carter Bryant, and filed other claims on

6  November 20, 2006, when it sought leave to amend its complaint. (The Court

7  granted Mattel leave to amend its complaint on January 12, 2007.) Regardless of

8  when any of these claims were actually filed, for purposes of determining whether

9  Mattel's claims against the defendants were filed within the applicable statute of

10  limitations period, all of Mattel's claims are deemed filed as of April 27, 2004.

11

12      **Authority:** *Fed. R. Civ. P.* 15(c)(1)(B) (claim relates back if it "arose out of

13  the conduct, transaction, or occurrence set out—or attempted to be set out—in the

14  original pleading"); *Martel v. Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir. 1989) (new

15  claim related back because it arose from the same transaction and occurrence as

16  original claim); Court's January 12, 2007 Order, at 14, 15 (concluding that

17  "through Rule 15(c) Mattel's intentional interference claim would relate back to

18  when it filed its original complaint in April 2004, well before the statute of

19  limitations expired").

20

21

22

23

24

25

26

27

28

# PHASE 1B JURY INSTRUCTIONS

## Instructions to Be Read When Phase 1B Begins

## 17.0

## PRELIMINARY INSTRUCTION—COPYRIGHT

Mattel, the plaintiff, claims ownership of copyrights and seeks damages against the defendants, including Carter Bryant, MGA, MGA's CEO Isaac Larian and MGA Entertainment (HK) Limited ("MGA Hong Kong"), for copyright infringement. The defendants deny infringing the copyrights. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

### Definition of Copyright

The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

## Copyright Interests

The copyright owner may transfer to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, preparing a derivative work from, distributing, performing, or displaying, the copyrighted work. To be valid, the transfer must be in writing. The person to whom a right is transferred is called an assignee.

## How Copyright Is Obtained

Copyright automatically exists in a work the moment it is fixed in any tangible medium of expression. The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work. After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

## Plaintiff's Burden of Proof

In this case, Mattel, the plaintiff, contends that the defendants, including Carter Bryant, MGA, MGA's CEO Isaac Larian and MGA Hong Kong, have infringed Mattel's copyrights. Mattel has the burden of proving by a preponderance of the evidence that it is the owner of the copyrights and that the defendants copied original elements of the copyrighted work. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

## Proof of Copying

To prove that the defendants copied Mattel's work, Mattel may show that the defendants had access to Mattel's copyrighted work and that there are substantial similarities between the defendants' work and Mattel's copyrighted work.

## Liability for Infringement

One who reproduces, prepares derivative works from or distributes a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.  Copyright may also be infringed by vicariously infringing and contributorily infringing.

## Vicarious Infringement

A person or company is liable for copyright infringement by another if the person or company has profited directly from the infringing activity and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.

## Contributory Infringement

A person or company is liable for copyright infringement by another if the person or company knows or should have known of the infringing activity and induces, causes or materially contributes to the activity.

**Authority:**  9th Cir. Civ. Jury Instr. 17.0 (2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 17.1

## COPYRIGHT—DEFINED

## (17 U.S.C. § 106)

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

(1)     Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)     Prepare derivative works based upon the copyrighted work;

(3)     Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)     Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes an assignee.  In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.1 (2007).

## **17.4**

## **COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING**

## **(17 U.S.C. § 501A–(b))**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

Mattel claims that the defendants have infringed copyrights for Bratz works. On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.    Mattel is the owner of a valid copyright; and

2.    The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.4 (2007).

## 17.15

## COPYING—ACCESS AND SUBSTANTIAL SIMILARITY

I just instructed you that Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted work. Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' works and original elements of Mattel's works.

**Authority:** 9th Cir. Civ. Jury Instr. 17.15 (2007).

## 17.10

## COPYRIGHT INTERESTS—ASSIGNEE

## (17 U.S.C. § 201(d)(1))

In this case, the plaintiff, Mattel, does not claim to be the creator of the copyright at issue. Instead, Mattel claims it received the copyright by virtue of assignment from the work's creator, Carter Bryant, in the Inventions Agreement, so that Mattel is now the owner of the copyright.

A copyright owner may convey to another person or entity all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work. The person to whom the copyright is conveyed becomes the owner of the copyright in the work.  Mattel may enforce the right to exclude others in an action for copyright infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.10 (2007).

Case No. CASE NO. CV 04-9049 SGL (RNBx)
MATTEL'S PROPOSED JURY INSTRUCTIONS

85273.4

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY

You are to make a determination regarding substantial similarity according to a two-step process, which includes application of the "extrinsic test" and the "intrinsic test."  To prevail on its claims for copyright infringement, Mattel must satisfy both of these tests.

Under the extrinsic test, Mattel must establish that specific expressive elements of the Bratz products that Mattel claims are infringing and the works Mattel owns are substantially similar.  I have already found as a matter of law that each of the elements in Carter Bryant's Bratz drawings, and the combination of those elements, are original and protectable.  Accordingly, you should take all of the elements of the drawings into account in analyzing whether they are substantially similar to the defendants' works.

The intrinsic test looks at the overall similarity of ideas and expression in the works from the perspective of an ordinary observer.  You should ask yourself whether the ordinary, reasonable audience, in this case girls between the ages of 6 and 12, would recognize the defendants' products as a "picturization" of the Bratz works that Mattel owns.

**Authority:**  *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997); *Shaw v. Lindheim*, 919 F.2d 1353, 1356-57 (9th Cir. 1990); *Jada Toys, Inc. v. Mattel, Inc.*, 1008 WL 450891, *6 (9th Cir. Feb. 21, 2008); *see also Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *See, e.g., Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law."); *Stillman v. Leo Burnett Co., Inc.*, 720 F.

Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus, before a court may send a copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and its expression, at least some of what the defendant copied falls into the area of protectible expression."); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law); *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc., 932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a question of law," and the "jury has nothing to do with this subject.");*ADA v. Delta Dental Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although copyrightability analysis necessarily requires a court to consider some facts surrounding the works at issue, the inquiry "is far more heavily loaded with policy implications than most other standards," making it appropriate for determination by a court instead of a jury).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ____

## SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE"

If Mattel shows that the defendants had a high degree of access to the Bratz drawings that Mattel owns, you should view Mattel's burden of proving substantial similarity under the extrinsic test as lowered.

**Authority:** *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we 'require a lower standard of proof of substantial similarity when a high degree of access is shown.'"); *Shaw v. Lindheim*, 919 F.2d 1353, 1361-62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) (high "degree of access justifies a lower standard of proof to show substantial similarity"); *Smith v. Jackson*, 84 F.3d 1213, 1220-21 (9th Cir. 1996).

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

# COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll, when the works are substantially similar in their appearance.

**Authority:** *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll: "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing").

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS

A copyright can be infringed by intermediate or preparatory works, including works prepared in the product development or marketing stage, that are substantially similar to a copyrighted work, regardless of whether the end product of the copying also infringes the copyright.

**Authority:** *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518-19 (9th Cir. 1993); *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979); *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 875-76 (C.D. Cal. 1986).

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## COPYRIGHT INFRINGEMENT—ORIGINALITY[1]

Your first task in assessing substantial similarity is to decide which parts of Carter Bryant's works are original. An original work may include or incorporate elements inspired by prior works. The original parts of the work so inspired are the parts created:

1.     Independently by the work's creator; and

2.     By use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel. Originality means "little more than a prohibition of actual copying." The required level of originality is "minimal."

Carter Bryant and MGA have admitted that, as a whole, the Bratz drawings are original.

---

[1]   Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original. *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law."); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law). If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

1    **Authority:**  9th Cir. Civ. Jury Instr. 17.12 (2007); *CDN, Inc. v. Kapes*,

2    197 F.3d 1256, 1259-60 (9th Cir. 1999); *Sid & Marty Krofft Television*

3    *Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 n.5 (9th Cir. 1977).

**MATTEL'S SPECIAL JURY INSTRUCTION NO. __**

**ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS[2]**


If you find that any elements of Mr. Bryant's drawings are not protectable, you must decide whether the combination of such elements is protectable. A combination of individual elements not eligible for copyright protection is eligible for copyright protection if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

The fact that the Bratz dolls may have features similar to other dolls or other preexisting works does not mean that they do not infringe on the works in which Mattel claims ownership. If you find that the combination of features in the drawings in which Mattel claims ownership amounts to original expression, you may find the dolls to be infringing if their combination of features is substantially similar to the drawings.

---

[2]   Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original. *See, e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law."); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law). If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

85273.4

1

2          **Authority:** *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135

3   (2d Cir. 2004) ("Even if the record had shown that many dolls possess upturned

4   noses, bow lips, and wide-spread eyes, it would not follow that each such doll –

5   assuming it was independently created and not copied from others – would not

6   enjoy protection from copying."); *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg.*

7   *Co.*, 479 F. Supp. 1105, 1114-15 (E.D.N.Y. 1978) ("[T]hat plaintiff's toys

8   contained features separately found on other dolls does not render their copyrights

9   invalid.  Rather, the original combination of these features into new dolls makes

10  the dolls copyrightable."); *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218,

11  219-20 (S.D.N.Y. 1974) (same); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir.

12  2004).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## PRESUMPTION OF COPYRIGHTABILITY

A copyright registration obtained within five years of the work's publication creates a presumption of the validity of the copyright and originality of the work. This presumption shifts the burden of proof to the defendants to demonstrate why the works at issue are not copyrightable.  In this case, it is undisputed that both Mattel and MGA have obtained copyright registrations of certain of Carter Bryant's Bratz drawings.

**Authority:**  17 U.S.C. § 410(c); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by the Copyright Office is prima facie evidence of copyrightability.  This presumption shifts the burden of proof to the challenging party to demonstrate why the item in question is not copyrightable.") (citations omitted); *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) ("The district court was entitled to rely on the copyright registration as prima facie evidence of originality.").

# MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## <u>COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY</u>

Direct copyright infringement does not require intent or any particular state of mind. A defendant may be held liable for copyright infringement even if he believes in good faith that he is not infringing a copyright.

**Authority:** *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven when the defendant believes in good faith that he is not infringing a copyright, he may be found liable."); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require intent or any particular state of mind.").

## 17.13

## COPYRIGHT INTERESTS—DERIVATIVE WORKS
## (17 U.S.C. §§ 101, 106(2))

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work. The term derivative work refers to a work based on one or more pre-existing works, such as drawings or dolls. Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

**Authority:** 9th Cir. Civ. Jury Instr. 17.13 (2007).

85273.4

## 17.21

## DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally materially contributes to that infringing activity.

If you find that MGA infringed Mattel's copyright in Bratz works, you may proceed to consider Mattel's claim that Carter Bryant, MGA's CEO Isaac Larian and/or MGA Hong Kong contributorily infringed that copyright. To prove copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.   Mr. Bryant, Mr. Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.   Mr. Bryant, Mr. Larian and/or MGA Hong Kong intentionally materially contributed to MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel. If, on the other hand, Mattel has failed to prove either or both of these elements, your verdict should be for the defendants.

**Authority:**   9th Cir. Civ. Jury Instr. 17.21 (2007).

1

## MATTEL'S SPECIAL JURY INSTRUCTION NO.

## AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS

The defendants contend that Mattel's lawsuit was not filed within the time set by law. This time is called the "statute of limitations."

For Mattel's claim of copyright infringement, the statute of limitations is three years.

To succeed on their statute of limitations defense, the defendants must prove that Mattel's claimed harm occurred more than three years prior to April 27, 2004 unless Mattel proves that three years prior to April 27, 2004, it did not discover, and did not know of facts that would have caused a reasonable person to suspect the generic elements of its causes of action – specifically, that Mattel owned Bratz works because they were created by Carter Bryant while he was employed by Mattel, and that defendants infringed the copyrights in those Bratz works by creating substantially similar works.

Mattel was not required to bring a lawsuit based on suspicions alone. The statute of limitations began to run only when Mattel had or should have had an awareness of facts sufficient to identify the copyright infringement.

**Authority:** CACI 4120 (modified); CACI 455 (modified); 17 U.S.C. § 507(b); Cal. Code Civ. Pro. § 339(1); Cal. Code Civ. Pro. § 338(c); *Rambus Inc. v. Samsung Electronics Co.*, 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis added); *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (a copyright infringement claim accrues when the plaintiff knows of the infringement or is chargeable with such knowledge); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a

1 | way that pressures litigants to file suits based merely on suspicions and fears.

2 | …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to

3 | file an action with no other basis would offend norms articulated in rules like

4 | Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F.

5 | Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has

6 | "`an awareness of sufficient facts to identify a particular cause of action… [It does]

7 | not mean the kind of notice -- based on hints, suspicions, hunches or rumors -- that

8 | requires a plaintiff to make inquiries in the exercise of due diligence, but not to file

9 | suit.'" ) (citation omitted).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __

## FRAUDULENT CONCEALMENT

If you find that the defendants concealed the facts that could have led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel, that Mattel was rightful owner of Bratz works and that defendants were infringing Mattel's copyrights, the statute of limitations period for Mattel to file its claims did not start to run until Mattel did not merely suspect, but actively had knowledge of, the specific wrongdoing above.

**Authority:** *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, _ Cal.4th _, 54 Cal. Rptr. 3d 735, 744 (2007) ("[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (reversing summary judgment on statute of limitations grounds where "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations"); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __

## STATUTE OF LIMITATIONS—TOLLING AS A RESULT OF STAY OF PROCEEDINGS

When calculating the statute of limitations period for any claim, you must add to any limitations period the time during which proceedings in the case were stayed.  The proceedings in the case were stayed from May 20, 2005 until May 20, 2006 (a total of 362 days).

**Authority:**  *Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118, *1 (N.D. Cal. 2007) (holding that "statute of limitations should be equitably tolled for all putative class members … from March 2, 2007 [when action was stayed] until the stay is lifted.") ; *Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations…"); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) (permitting leave to add a RICO claim against new defendants and finding that the claim was timely because the "[t]he statute of limitations was equitably tolled during the stay of discovery").

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __

## STATUTE OF LIMITATIONS—COPYRIGHT INFRINGEMENT

Even if you find that Mattel filed its copyright infringement claim more than three years after it discovered infringement of its copyrights in Bryant's drawings, Mattel can still recover for all infringing acts that took place within three years of the filing of its complaint.

**Authority:** *Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994) ("Section 507(b) is clear on its face. It does not provide for a waiver of infringing acts within the limitation period if earlier infringements were discovered and not sued upon, nor does it provide for any reach back if an act of infringement occurs within the statutory period. . . . In a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of the suit.") (citations and quotation marks omitted).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## STATUTE OF LIMITATIONS—RELATION BACK

You have heard evidence that Mattel filed certain of its claims on April 27, 2004, when it filed its complaint against Carter Bryant, and filed other claims on November 20, 2006, when it sought leave to amend its complaint. (The Court granted Mattel leave to amend its complaint on January 12, 2007.) Regardless of when these claims were actually filed, for purposes of determining whether Mattel's copyright infringement claims were filed within the applicable statute of limitations period, Mattel's claims against Carter Bryant and MGA are deemed filed as of April 27, 2004.

**Authority:** *Fed. R. Civ. P.* 15(c)(1)(B) (claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"); *Martel v. Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir. 1989) (new claim related back because it arose from the same transaction and occurrence as original claim); Court's January 12, 2007 Order, at 13 (finding the copyright claim relates back to "the same conduct or transaction contained in the original complaint, filed in April 2004").

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER

The defendants claim that their rights in the Bratz works created by Carter Bryant should prevail over Mattel's rights in those works because Mr. Bryant transferred the rights to MGA after he transferred them to Mattel and MGA obtained the rights in good faith. In order to establish that MGA's later-acquired rights in the Bratz works should prevail, the defendants have the burden of proving by a preponderance of the evidence that MGA:

1.    Received the transfer of rights in Bratz works in good faith and without notice of Mr. Bryant's earlier transfer to Mattel;

2.    Paid valuable consideration;

3.    Registered each of the copyrights in Bratz works with the Copyright Office; and

4.    Duly recorded the transfer of the rights to MGA, i.e., the MGA/Bryant assignment agreement, before Mattel recorded its transfer.

To duly record the transfer, as required for the fourth element, MGA must have submitted to the Copyright Office the MGA/Bryant assignment agreement such that the recorded document, or material attached to it, specifically identifies the copyrighted works to which the assignment pertains. A registration of a copyright is not a substitute for recordation.

It is undisputed in this case that Mr. Bryant's assignment to MGA of Bratz works has not been recorded.

1     **Authority:**  17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music*
2  *Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office*
3  *Practices*, Chapters 1602.2, 1604.02.

## 17.22

## COPYRIGHT—DAMAGES

## (17 U.S.C. § 504)


If you find for the plaintiff, Mattel, on any of its copyright infringement claims against the defendants, you must determine Mattel's damages.  Mattel is entitled to recover the actual damages suffered as a result of the infringement.  In addition, Mattel is also entitled to recover any profits of the defendants attributable to the infringement.  Mattel must prove damages by a preponderance of the evidence.


**Authority:**  9th Cir. Civ. Jury Instr. 17.22 (2007).

## 17.24

## COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS

## (17 U.S.C. § 504(b))

In addition to actual damages, Mattel is entitled to any profits of the defendants attributable to the infringement.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendant's gross revenue.

The defendant's profit is determined by deducting expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from sale of a product containing or using the copyrighted work or associated with the infringement. Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue. The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendants have the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

**Authority:** 9th Cir. Civ. Jury Instr. 17.24 (2007) (modified).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS

In determining what portion of the defendants' profits are attributable to copyright infringement, the benefit of the doubt should be given to Mattel, and not defendants.

**Authority:** 9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In performing the apportionment, the benefit of the doubt must always be given to the plaintiff, not the defendant . . . .").

1

2

3

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## COPYRIGHT—DAMAGES—INDIRECT PROFITS

4

5

6

7

8

Indirect profits are the defendant's profits with a less direct connection or link to the infringement.  A plaintiff such as Mattel may be entitled to indirect profits in addition to direct profits.  To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.

9

10

11

In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.

12

13

14

**Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710-11, 714 n.10 (9th Cir. 2004).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

85273.4

## MATTEL'S SPECIAL JURY INSTRUCTION NO.
## COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT

Mattel also claims that defendants engaged in willful infringement of Mattel's copyrights. An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.     The defendant engaged in acts that infringed the copyright; and

2.     The defendant knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses or taxes from his/its gross revenue when the copyright infringement is willful. You may deduct defendants' production costs only if defendants can demonstrate that the costs actually assisted in the production, distribution or sale of the infringing product(s).

**Authority:** 9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (noting that willful infringers are not permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1331-32 (9th Cir. 1982) ("[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate.") (emphasis added); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income taxes); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct overhead expenses); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful, overhead may not be deducted"); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585, *6 (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if the jury were to find willful infringement); 5 Melville B. Nimmer &

1  David Nimmer, *Nimmer on Copyright*, § 14.03[C][2] (2006) (it is "settled law" that

2  infringers are not entitled to income tax deductions).

**Damages Related to Phase 1A Claims**

## CACI 350
## INTRODUCTION TO CONTRACT DAMAGES

In Phase 1A of this trial, you found that Mattel had proved its claim against Carter Bryant for breach of contract. Now you must decide how much money will reasonably compensate Mattel for the harm caused by Mr. Bryant's breaches. This compensation is called "damages." The purpose of such damages is to put Mattel in as good a position as it would have been if Mr. Bryant had performed as promised.

To recover damages for any harm, Mattel must prove:

1.     That the harm was likely to arise in the ordinary course of events from the breach of contract; or

2.     That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

Mattel also must prove the amount of its damages according to the following instructions. Mattel does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Mattel claims damages for:

(1)     Compensatory and general damages, including disgorgement of profits earned by Mr. Bryant as a result of his breaches;

(2)     Prejudgment interest at the maximum rate.

**Authority:** CACI No. 350.

# CACI 3901

## INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

In Phase 1A, you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian. You must now decide how much money will reasonably compensate Mattel for this harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages;

(2)     Prejudgment interest at the maximum rate;

(3)     Punitive damages.


**Authority:** CACI No. 3901.

## CACI 3901

## INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR BREACH OF FIDUCIARY DUTY AND THE DUTY OF LOYALTY

The Court found as a matter of law that Carter Bryant breached his fiduciary duty and duty of loyalty to Mattel by entering into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. [In Phase 1A, you determined that Mattel had proved its claims against Carter Bryant for additional breaches of fiduciary duty and breaches of the duty of loyalty.] You must now decide how much money will reasonably compensate Mattel for this harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Mr. Bryant's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    Compensatory and general damages, including disgorgement of profits earned by Mr. Bryant as a result of his wrongful conduct;

(2)    Prejudgment interest at the maximum rate;

(3)    Punitive damages.

**Authority:**  CACI No. 3901; *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963) (granting plaintiff an accounting of commissions wrongfully diverted to defendant); *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th

1   Cir. 2003) ("Although there are few reported cases addressing the appropriate

2   remedy, those we have found also required employees to turn over profits received

3   as a result of breaching their duty of loyalty.") (citations omitted); Restatement

4   (2d) of Agency, § 403 (an agent is subject to disgorgement of benefits he receives

5   "*as a result of* his violation of a duty of loyalty to the principal," whenever that

6   payment was made) (emphasis added).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

85273.4

## CACI 3901

## INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY

In Phase 1A, you determined that Mattel had proved its claims against the defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of fiduciary duty and breach of the duty of loyalty. You must now decide how much money will reasonably compensate Mattel for this harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct;

(2)     Prejudgment interest at the maximum rate;

(3)     Punitive damages.

**Authority:**  CACI No. 3901.

## CACI 2102

## PRESUMED MEASURE OF DAMAGES FOR CONVERSION

In Phase 1A of this trial, you found that Mattel had proved its claims for conversion against Carter Bryant, MGA, Isaac Larian and MGA Hong Kong.  You must now decide how much money will reasonably compensate Mattel for the harm.  This compensation is called "damages."

Mattel must prove the amount of its damages.  However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)   The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)   Prejudgment interest at the maximum rate;

(3)   Reasonable compensation for the time and money spent by Mattel in attempting to recover this property;

(4)   Punitive damages.

**Authority:**  CACI No. 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

## CACI 3947

## PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS

If you decide that Carter Bryant's, Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Mr. Bryant or Mr. Larian only if Mattel proves by clear and convincing evidence that Mr. Bryant or Mr. Larian engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud. To do this, Mattel must prove by clear and convincing evidence that the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the problem dangerous consequences of his or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

1   "Fraud" means that a defendant intentionally misrepresented or concealed a

2   material fact and did so intending to harm Mattel.

3   An employee is a "managing agent" if he or she exercises substantial

4   independent authority and judgment in his or her corporate decision making such

5   that his or her decisions ultimately determine corporate policy.

6   There is no fixed formula for determining the amount of punitive damages,

7   and you are not required to award any punitive damages.  If you decide to award

8   punitive damages, you should consider all of the following separately for each

9   defendant in determining the amount:

10   (a)   How reprehensible was that defendant's conduct?  In deciding how

11   reprehensible a defendant's conduct was, you may consider, among other factors:

12   (b)   Is there a reasonable relationship between the amount of punitive

13   damages and Mattel's harm?

14   (c)   In view of that defendant's financial condition, what amount is

15   necessary to punish him or it and discourage future wrongful conduct?  You may

16   not increase the punitive award above an amount that is otherwise appropriate

17   merely because a defendant has substantial financial resources.

18

19   **Authority:**   CACI No. 3947.

20

21

22

23

24

25

26

27

28

85273.4