# EXHIBIT B

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  MARINA V. BOGOROD (Bar No. 217524)
   (mbogorad@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
5  Los Angeles, CA  90071
   Tel.: (213) 687-5000/Fax: (213) 687-5600
6
   RAOUL D. KENNEDY (Bar No. 40892)
7  (rkennedy@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
8  4 Embarcadero Center, Suite 3800
   San Francisco, CA  94111-5974
9  Tel.: (415) 984-2698 / Fax: (415) 984-2626

10 Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

11                    UNITED STATED DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13                         EASTERN DIVISION

14

15 | CARTER BRYANT, an individual, | ) | CASE NO.  CV  04-9049  SGL |
   |                               | ) | (RNBx) |
16 |             Plaintiff,        | ) |  |
   |                               | ) | Consolidated with Case No. 04- |
17 |       v.                      | ) | 9059 and Case No. 05-2727 |
   |                               | ) |  |
18 | MATTEL,   INC.,   a   Delaware | ) | Honorable Stephen G. Larson |
   | corporation,                  | ) |  |
19 |             Defendant.        | ) | MGA PARTIES' AND BRYANT'S |
   |                               | ) | [PROPOSED] DISPUTED JURY |
20 |                               | ) | INSTRUCTIONS |
   | AND CONSOLIDATED ACTIONS.     | ) |  |
21 |                               | ) |  |

22

23

24

25

26

27

28

                                    i

## PRELIMINARY INSTRUCTIONS

| No. | Description | Source | Page |
|---|---|---|---|
| CACI 107 | DISCREPANCIES IN TESTIMONY | CACI No. 107 (2008). | 1 |
| FJPI 104.53 | EXTRAJUDICIAL ADMISSIONS- CAUTIONARY INSTRUCTIONS | Fed. R. Evid. 801(d)(2); 3 Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, Fed. Jury Prac. & Instr. § 104.53 (5th ed.); BAJI No. 2.25 (2008). | 2 |
| 9th Cir. 1.15 | QUESTIONS TO WITNESSES BY JURORS | Ninth Circuit Manual of Model Jury Instructions, Civil, 1.15 (2007). | 3 |

## PHASE 1A CLAIMS INSTRUCTIONS

| No. | Description | Source | Page |
|---|---|---|---|
| Special Inst. __ | BREACH OF CONTRACT— INTRODUCTION | --- | 4 |
| CACI 303 (1) | BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS | CACI No. 303 (2008). | 5 |
| CACI 303 (2) | CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT | CACI No. 303 (2008); Hitzeman v. Rutter, 243 F.3d 1345, 1356 (Fed Cir. 2001) (quoting Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994)). | 6 |
| CACI 314 (1) | INTERPRETATION OF PARTICULAR TERMS | CACI No. 314 (2008); Hitzeman v. Rutter, 243 F.3d 1345, 1356 (Fed Cir. 2001) (quoting Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994)). | 8 |
| CACI 314 (2) | INTERPRETATION— DISPUTED TERM | CACI No. 314 (2008). | 9 |
| CACI 315 | INTERPRETATION— MEANING OF ORDINARY WORDS | CACI No. 315 (2008). | 10 |
| CACI 316 | INTERPRETATION— MEANING OF TECHNICAL WORDS | CACI No. 316 (2008). | 11 |
| CACI | INTERPRETATION— | CACI No. 317 (2008). | 12 |

i

| No. | Description | Source | Page |
|---|---|---|---|
| 317 | CONSTRUCTION OF CONTRACT AS A WHOLE | | |
| CACI 318 | INTERPRETATION—CONSTRUCTION BY CONDUCT | CACI No. 318 (2008); <u>Warner Bros., Inc. v. Curtis Mgmt. Group, Inc.</u>, No. CV 91-4016-WMB, 1995 WL 420043 (C.D. Cal. Mar. 31, 1993); <u>Heston v. Farmers Ins. Group</u>, 160 Cal. App. 3d 402 (1984); <u>Montrose Chem. Corp. v. Admiral Ins. Co.</u>, 10 Cal. 4th 645, 670 (1995). | 13 |
| CACI 320 | INTERPRETATION—CONSTRUCTION AGAINST DRAFTER | CACI No. 320 (2008); <u>Powerline Oil Co. v. Superior Court</u>, 37 Cal. 4th 377, 391 (2005); <u>Graham v. Scissor-Tail, Inc.</u>, 28 Cal. 3d 807, 819-20 n.16 (1981); <u>see also</u> Cal. Civ. Code § 1654; <u>Badie v. Bank of America</u>, 67 Cal. App. 4th 779 (1998); <u>Mayhew v. Benninghoff</u>, 53 Cal. App. 4th 1365 (1997); <u>Neal v. State Farm Ins. Cos.</u>, 188 Cal. App. 2d 690, 694 (1961). | 14 |
| Special Inst. __ | INTERPRETATION—ADHESION CONTRACTS | Directions for Use, CACI No. 320 (2008); <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal. 4th 83 (2000); <u>Badie v. Bank of America</u>, 67 Cal. App. 4th 779 (1998); <u>Mayhew v. Benninghoff</u>, 53 Cal. App. 4th 1365 (1997); <u>Neal v. State Farm Ins. Co.</u>, 188 Cal. App. 2d 690, 694 (1961); <u>Geoffroy v. Washington Mut. Bank</u>, 484 F. Supp. 2d 1115, 1122 (S.D. Cal. 2007); <u>Discover Bank v. Superior Court</u>, 36 Cal. 4th 148, 160 (2005); <u>Graham v. Scissor-Tail, Inc.</u>, 28 Cal. 3d 807, 820 n.18 (1981); <u>Gray v. Zurich Ins. Co.</u>, 65 Cal. 2d 263, 271 (1966); <u>Steven v. Fid. & Cas. Co.</u>, 58 Cal. 2d 862, 878 (1962); <u>Cubic Corp. v. Marty</u>, 185 Cal. App. 3d 438, 450 (1986). | 15 |
| CACI 320 (3) | INTERPRETATION—UNCONSCIONABILITY | <u>Armendariz v. Found. Health Psychcare Servs. Inc.</u>, 24 Cal. 4th 83 (2000); | 16 |

ii

| No. | Description | Source | Page |
|---|---|---|---|
| | | Badie v. Bank of America, 67 Cal. App. 4th 779 (1998); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997); Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961); Geoffroy v. Washington Mut. Bank, 484 F. Supp. 2d 1115, 1122 (S.D. Cal. 2007); Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 820 n.18 (1981); Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 271 (1966); Steven v. Fid. & Cas. Co., 58 Cal. 2d 862, 878 (1962); Cubic Corp. v. Marty, 185 Cal. App. 3d 438, 450 (1986). | |
| Special Inst. __ | INTERPRETATION – INTENT NEVER EXTENDED | Cal. Civ. Code § 1648. | 18 |
| Special Inst. __ | INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR INEQUITABLE INTERPRETATION | Cal. Civ. Code § 1638; Strong v. Theis, 187 Cal. App. 3d 913 (1986); County of Marin v. Assessment Appeals Bd., 64 Cal. App. 3d 319 (1976). | 19 |
| CACI 305 | MODIFICATION | CACI Nos. 305, 313 (2008). | 20 |
| Special Inst. __ | PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR CODE § 2870) | Cal. Labor Code §§ 2870-2872; Cubic Corp. v. Marty, 185 Cal. App. 3d 438 (1986); Applera Corp.-Applied Biosystems Group v. Illumina, Inc., 2008 WL 170597, at **4-5 (N.D. Cal. Jan. 17. 2008); Voith Hydro Inc. v. Hydro West Group, Inc., 1997 WL 15440, at **6-8 (N.D. Cal. 1997); Banner Metals Inc. v. Lockwood, 178 Cal. App. 2d 643, 649-50, 656-58, 662 (1960); Aero Bolt & Screw Co. v. Iaia, 180 Cal. App. 2d 728, 737-39 (1960). | 21 |
| Special Inst. __ | CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT | Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2003); GAB Bus. Servs., | 23 |

| No. | Description | Source | Page |
|-----|-------------|--------|------|
| | | Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. Am. Broadcasting Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Mercer Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c. | |
| Special Inst. __ | CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT | Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-46 & n.10 (1966); Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2003); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. 4th 409, 424-25 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. American Broadcasting Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Mercer Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d | 26 |

| No. | Description | Source | Page |
|---|---|---|---|
| | | Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c. | |
| CACI 300 | CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE | CACI Nos. 300, 303 (2008). | 27 |
| CACI 302 | CONTRACT FORMATION— ESSENTIAL FACTUAL ELEMENTS | CACI No. 302 (2008); CACI No. 302 (2008) (Sources and Authority); Cal. Civil Code §§ 1550, 1565, 1580. | 28 |
| Special Inst. __ | CONTRACT FORMATION— DOCUMENT MUST OBVIOUSLY BE A CONTRACT | <u>Metters v. Ralphs Grocery Co.</u>, __ Cal. Rptr. __, No. G038380, 2008 WL 542838 (Cal. Ct. App. Feb. 29, 2008) (ordered published on Apr. 1, 2008). | 29 |
| Special Inst. __ | CONSIDERATION | 1 B.E. Witkin, <u>Summary of Law: Contracts</u>, §§ 202-203, 205 (10th ed. 2005); BAJI No. 10.61 (2008). | 30 |
| Special Inst. __ | DECLARATORY RELIEF | --- | 31 |
| Special Inst. __ | EVIDENCE OF GOOD FAITH | <u>People v. Webb</u>, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, <u>Cal. Proc.: Pleadings</u> § 1008 (4th ed. 1997). | 33 |
| Special Inst. __ | COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988 | 17 U.S.C. § 204(a); <u>Konigsberg, Int'l, Inc. v. Rice</u>, 16 F.3d 355, 357 (9th Cir. 1994); <u>Effects Assocs., Inc. v. Cohen</u>, 908 F.2d 555, 557 (9th Cir. 1990); <u>Foraste v. Brown Univ.</u>, 290 F. Supp. 2d 234, 240-41 (D.R.I. 2003); <u>Bieg v. Hovnonian Enters., Inc.</u>, 157 F. Supp. 2d 475, 480 (E.D. Pa. 2001); <u>Pamfiloff v. Giant Records, Inc.</u>, 794 F. Supp. 933, 936 (N.D. Cal. 1992); Cal. Civ. Code § 988(c); 13 B.E. Witkin, <u>Summary of California Law: Personal Property</u> § 47 (10th ed. 2005); <u>Chamberlain v. Cocola Assocs.</u>, 958 F.2d 282, 283-84 (9th Cir. 1992). | 34 |
| Special | CALIFORNIA CIVIL | Cal. Civ. Code § 988(c); 13 B.E. | 36 |

| No. | Description | Source | Page |
|---|---|---|---|
| Inst. ___ | CODE § 988 | Witkin, Summary of California Law: Personal Property § 47 (10th ed. 2005); Chamberlain v. Cocola Assocs., 958 F.2d 282, 283-84 (9th Cir. 1992). | |
| CACI 2201 (1) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—ELEMENT | CACI Nos. 2201, 2202 & 2203 (2008). | 37 |
| CACI 2201 (2) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INTENT | CACI Nos. 2201, 2202 & 2203 (2008); Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003); 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568 (2003). | 39 |
| Special Inst. ___ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— INDUCEMENT | Restatement (Second) of Torts § 766, cmt. n (2007); DeVoto v. Pac. Fid. Life Ins.Co., 618 F.2d 1340, 1348 (9th Cir. 1980); Bauer v. Interpublic Group of Cos., 255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003); Dryden v. Tri-Valley Growers, 65 Cal. App. 3d 990, 996 (1977). | 40 |
| Special Inst. ___ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—HIRING OF AT WILL EMPLOYEES OF COMPETITORS | Reeves v. Hanlon, 33 Cal. 4th 1140, 1151 (2004); Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal. App. 4th 853, 859 (1994); Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 255 (1968); Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1337 (9th Cir. 1980); Interloc Solutions, Inc. v. Tech. Assoc. Int'l. Corp., No. CV071534 LEWGGHX, 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007); Posdata Co. Ltd. v. Kim, No. C-07-02054 RMW, 2007 WL 1848661, *7 (N.D. Cal. June 27, 2007); Continental Car-Na-Var Corp. v. Moseley, 24 Cal. 2d 104, 110 (1944); VL Sys., Inc. v. Unisen, Inc., 152 Cal. App. 4th 708, 713, 715 (2007). | 41 |

vi

| No. | Description | Source | Page |
|---|---|---|---|
| Special Inst. | "BUT FOR" CAUSATION | Matthew Bender, Cal. Forms Jury Inst., Ch. 1-3E § 300E.04. | 43 |
| CACI 4101 | FIDUCIARY DUTY— ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY DUTY | CACI Nos. 4101, 4102 (2008); Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327 (1966); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445, 483 (1998); Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101-02 (1991) (superseded by statute on other grounds). | 44 |
| CACI 4100 | FIDUCIARY DUTY— DEFINED | CACI Nos. 4100, 4102 (2008); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 417-18 (2000), overruled on other grounds by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445, 483-84 (1998). | 45 |
| Special Inst. __ | FIDUCIARY DUTY— EXISTENCE OF DUTY | City Solutions v. Clear Channel Commc'n., 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002); Kremen v. Cohen, 99 F. Supp. 2d 1168, 1175 (N.D. Cal. 2000); Comm. on Children's Tel., Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 222 (1983) (superseded by statute on other grounds); Vai v. Bank of America, 56 Cal. 2d 329, 338 (1961); Oakland Raiders v. Nat'l Football League, 131 Cal. App. 4th 621, 632-33 (2005); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 417 (2000), overruled on other grounds by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); | 46 |

| No. | Description | Source | Page |
|---|---|---|---|
| | | Maglica v. Maglica, 66 Cal. App. 4th 442, 488 (1998); Lynch v. Cruttenden & Co., 18 Cal. App. 4th 802, 809 (1993); Worldvision Enters., Inc. v. Am. Broad. Cos., 142 Cal. App. 3d 589 (1983). | |
| Special Inst. __ | FIDUCIARY DUTY— BURDEN OF PROVING BREACH | Restatement (Third) of Agency § 8.04; Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327 (1966); Gonsalves v. Hodgson, 38 Cal. 2d 91, 99 (1951); LeMat Corp. v. Am. Basketball Ass'n, 51 Cal. App. 3d 267, 275 (1975); see also Gateway Techs, Inc. v. MCI Telecomm. Corp., 64 F.3d 993, 1000-01 (5th Cir. 1995). | 48 |
| Special Inst. __ | BREACH – RIGHT TO PREPARE TO COMPETE | Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2002); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. Am. Broad. Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Merger Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c. | 49 |
| CACI 4102 (1) | HARM CAUSED BY BREACH OF FIDUCIARY DUTY | CACI No. 4102 (2008); Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966); Charles T. Powner Co. | 51 |

| No. | Description | Source | Page |
|---|---|---|---|
| | | v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal. App. 347, 350-51 (1906); see also Sequoia Vacuum Sys., v. Stransky, 229 Cal. App. 2d 281, 286 (1964) (citing Daniel Orifice Fitting Co. v. Whalen, 198 Cal. App. 2d 791, 800 (1962)). | |
| Special Inst. __ | AIDING AND ABETTING BREACH OF FIDUCIARY DUTY | MJT Sec., LLC v. Toronto-Dominion Bank, No. C03-3815 CW, 2007 WL 1725421, at **7-8  (N.D.Cal. June 14, 2007); Neilson v. Union Bank, N.A., 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003); Resolution Trust Corp. v. Rowe, No. C90-20114 BAC, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993); Mendelsohn v. Capital Underwriters, Inc., 490 F. Supp. 1069, 1084 (N.D. Cal. 1979); Sarkes Tarzian, Inc. v. Audio Devices, Inc., 166 F. Supp. 250 (S.D. Cal. 1958), aff'd, 283 F.2d 695 (9th Cir. 1960); Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988); see also Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005); Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005); Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325-26 (1996); Saunders v. Superior Court 27 Cal. App. 4th 832, 846 (1994); Restatement (Second) of Torts § 876. | 52 |
| CACI 4102 (2) | BREACH OF THE DUTY OF LOYALTY– ESSENTIAL FACTUAL ELEMENTS | CACI No. 4102 (2008); Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); Eckard Brandes, Inc. v. Riley, 338 F. 3d 1082, 1086 (9th Cir. 2002); Western Med. Consultants, Inc. v. Johnson, 80 F.3d 1331, 1336-38 (9th Cir. 1996); Franklin Music Co. v. Am. Broad. Cos., 616 F. 2d 528, 532-33, 537 (3d Cir. 1979); Merger Mgmt. Consulting, Inc. v. | 55 |

ix

| No. | Description | Source | Page |
|---|---|---|---|
| | | Wilde, 920 F. Supp. 219 (D. D.C. 1996); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F. 2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161 (S.D. Texas 1977); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Restatement (Third) of Agency Sect. 8.04 cmt. c. | |
| Special Inst. __ | DUTY OF LOYALTY DEFINED | 19 Williston on Contracts § 54:26 (4th ed.); Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 411 (2007); Stokes v. Dole Nut Co., 41 Cal App. 4th 285 (1995). | 57 |
| Special Inst. __ | BREACH OF THE DUTY OF LOYALTY | Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord Eckard Brandes, Inc. v. Riley, 338 F. 3d 1082, 1086 (9th Cir. 2002); Western Med. Consultants, Inc. v. Johnson, 80 F.3d 1331, 1336 -38 (9th Cir. 1996); Franklin Music Co. v. Am. Broad. Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F. 3d 983, 993 (D.C. Cir. 1998); Merger Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F. 2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161 (S.D. Texas 1977); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled on other grounds by, Reeves | 58 |

x

| No. | Description | Source | Page |
|---|---|---|---|
| | | v. Hanlon, 33 Cal. 4th 1140 (2004); Restatement (Third) of Agency Sect. 8.04 cmt. c. | |
| CACI 4102 (3) | CONSENT TO EMPLOYEE'S ACTIONS | CACI No. 4102 (2008); Restatement (Third) of Agency § 8.04 cmt. b. | 60 |
| CACI 4102 (4) | HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY | CACI No. 4102 (2008); Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966); Charles T. Powner v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal. App. 347, 350-51 (1906); see also Sequoia Vacuum Sys., v. Stansky, 229 Cal. App. 2d 281, 286 (1964) (citing Daniel Orifice Fitting Co. v. Whalen, 198 Cal. App. 2d 791, 800 (1962)). | 61 |
| Special Inst. __ | AIDING AND ABETTING BREACH OF DUTY OF LOYALTY | MJT Securities, LLC v. Toronto-Dominion Bank, 2007 WL 1725421, at **7-8  (N.D.Cal. June 14, 2007); Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003); Resolution Trust Corp. v. Rowe,  1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993); Mendelsohn v. Capital Underwriters, Inc., 490 F. Supp. 1069, 1084 (N.D. Cal. 1979); Sarkes Tarzian, Inc. v. Audio Devices, Inc., 166 F. Supp. 250 (S.D. Cal. 1958), aff'd, 283 F.2d 695 (9th Cir. 1960); Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988); see also Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005); Casey v. U.S. Bank Nt'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005); Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325-26 (1996); Saunders v. Superior Court 27 Cal. App. 4th 832, 846 (1994); Restatement (Second) of Torts § 876. | 62 |
| CACI 2100 | CONVERSION— ELEMENTS | CACI No. 2100 (2008); Ananda Church of Self-Realization v. Mass. Bay Ins. | 65 |

| No. | Description | Source | Page |
|-----|-------------|--------|------|
| | | Co., 95 Cal. App. 4th 1273, 1282 (2002); Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003); April 25, MSJ Order. | |

### PHASE 1 – Affirmative Defenses

| No. | Description | Source | Page |
|-----|-------------|--------|------|
| Special Inst. ___ | Affirmative Defenses—General | --- | 67 |
| CACI 4120 | Statute of Limitations—Explanation | CACI No. 4120 (2008); Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005); Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1111 (1988). | 68 |
| Special Inst. ___ | Mattel's Date of Filing Of Its Claims | Stipulation and Order dated December 7, 2004, at 1:10-15; United States v. Randall & Blake, 817 F.2d 1188, 1192 (5th Cir. 1987). | 69 |
| Special Inst. ___ | Defense: Statute of Limitations (Breach of Duty of Loyalty) | Cal. Civ. Proc. Code § 339. | 70 |
| Special Inst. ___ | Defense: Statute of Limitations (Intentional Interference with Contract) | Cal. Civ. Proc. Code § 339(1); Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); Charles Lowe Co. v. Xomox Corp., No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, Cal. Procedure: Actions, § 575, at 728 (4th ed. 1996). | 71 |
| Special Inst. ___ | Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty) | Rambus Inc. v. Samsung Elecs. Co., Ltd., C-05-02298 RMW, C-05-0334 RMW, 2007 WL 39374, at *3 n.4 (N.D. Cal. Jan. 4, 2007); citing Cal. Civ. Proc. Code § 339. | 72 |
| Special Inst. ___ | Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty) | Cal. Civ. Proc. Code § 339(1). | 73 |
| Special | Defense: Statute of | 17 U.S.C. § 507(b); Polar Bear Prods., | 74 |

| No. | Description | Source | Page |
|---|---|---|---|
| Inst. ___ | Limitations (Copyright Infringement) | Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004); Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994). | |
| Special Inst. ___ | Defense: Statute of Limitations (Conversion) | Cal. Civ. Proc. Code § 338(c); AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal. App. 4th 631, 639 (2006); Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 916 (1996). | 75 |
| Special Inst. ___ | Laches: Introduction | 11 B.E. Witkin, Summary of California Law: Equity § 14 (4th ed. 2006). | 76 |
| Special Inst. ___ | Defense: Laches | Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001); Watermark Publrs. v. High Tech. Sys., Inc., No. 95-3839-IEG (CGA), 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal. 1997). | 77 |
| CACI 336 | Affirmative Defense – Waiver | CACI No. 336 (2008); Waller v. Truck Ins. Exch., 11 Cal. 4th 1, 31 (1995); Veeck v. S. Bldg. Code Congress Int'l Inc., 241 F.3d 398, 409 (5th Cir. 2001); Davis v. Blue Cross of N. Cal., 25 Cal. 3d 418 (1979). | 78 |
| CACI 1302 | Affirmative Defense – Consent | Cal. Civ. Code § 3515; CACI No. 1302 (2008). | 80 |
| Special Inst. ___ | Estoppel—Definition | Cal. Evid. Code § 623; 11 B.E. Witkin, Summary of California Law, Equity § 177; Lear v. Bd. of Retirement, 79 Cal. App. 4th 427, 437 (2000); Spray, Gould & Bowers v. Associated Int'l Ins. Co., 71 Cal. App. 4th 1260, 1268 (1999); Ortega v. Pajaro Valley Unified Sch. Dist., 64 Cal. App. 4th 1023, 1044 (1998); Lemat Corp. v. Am. Basketball Ass'n, 51 Cal. App. 3d 267, 276 (1975). | 81 |
| Special Inst. ___ | Defense: Estoppel of Copyright Claims | HGI Associates, Inc. v. Wetmore Printing Co., 427 F.3d 867, 875 (11th Cir. 2005); Stambler v. Diebold, Inc., 1988 WL 95479, at **6, 11 U.S.P.Q. 2d 1709, 1715 (E.D.N.Y. 1988), aff'd, 878 | 82 |

xiii

| No. | Description | Source | Page |
|-----|-------------|--------|------|
| | | F.2d 1445 (Fed. Cir. 1989); <u>City of Long Beach v. Mansell</u>, 3 Cal. 3d 462, 488 n.22 (1970). | |
| Special Inst. __ | Defense: Estoppel of Employment Claims | Matthew Bender, <u>Cal. Forms Jury Inst.</u>, Ch. 3F, 300F.27; <u>City of Long Beach v. Mansell</u>, 3 Cal. 3d 462, 488 n.22 (1970). | 83 |
| Special Inst. __ | Defense: Acquiescence | Cal. Civ. Code § 3516; <u>Security Pac. Nat'l Bank v. Wozab</u>, 51 Cal. 3d 991, 1005 (1990). | 84 |
| 9th Cir. 17.19 | Defense: Abandonment (Copyright Infringement) | Ninth Circuit Manual of Model Jury Instructions 17.19 (2007); <u>Lopez v. Elec. Rebuilders, Inc.</u>, 416 F. Supp. 1133, 1135 (C.D. Cal. 1976); <u>Read v. Turner</u>, 239 Cal. App. 2d 504 (1966). | 85 |
| Special Inst. __ | Defense: 205(d) (Bona Fide Purchaser for Value) | 17 U.S.C. § 205(d); 2 <u>Nimmer on Copyright</u> § 7.16 (2007). | 86 |
| Special Inst. __ | Defense: Good Faith | <u>People v. Webb</u>, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, <u>Cal. Proc.: Pleadings</u> § 1008 (4th ed. 1997). | 87 |
| Special Inst. __ | Defense: <u>De Minimis</u> Use | <u>Newton v. Diamond</u>, 388 F.3d 1189, 1192-93 (9th Cir. 2004); <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1439 (9th Cir. 1994). | 88 |
| Special Inst. __ | Defense: Unclean Hands | <u>Kendall-Jackson Winery, Ltd. v. Superior Court</u>, 76 Cal. App. 4th 970, 979 (1999); <u>Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists</u>, 227 Cal. App. 2d 675, 728-729 (1964). | 89 |

**PHASE 1(b) – Damages**

| No. | Description | Source | Page |
|-----|-------------|--------|------|
| 9th Cir. 5.1 | Damages—Introduction | Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007). | 90 |
| CACI 350 (1) | Introduction to Contract Damages | CACI No. 350 (2008) ; <u>Brandon & Tibbs v. George Kevorkian Accountancy Corp.</u>, 226 Cal. App. 3d 442, 468 (1990). | 91 |
| CACI | Measure of Damages— | CACI No. 350 (2008) ; <u>Brandon &</u> | 92 |

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

| | | | |
|---|---|---|---|
| 350 (2) | Breach of the "Inventions" Provision of the Employee Agreement | Tibbs v. George Kevorkian Accountancy Corp., 226 Cal. App. 3d 442, 468 (1990). | |
| CACI 350 (3) | Measure of Damages— Breach of the "Moonlighting" Provision of the Employee Agreement | CACI No. 350 (2008) . | 94 |
| CACI 350 (4) | Measure of Damages— Breach of the Conflict Questionnaire | CACI No. 350 (2008). | 95 |
| Special Inst. ___ | Measure of Damages for Intentional Interference with Contract | Restatement (Second) of Torts § 774A (1979); Di Loreto v. Shumake, 38 Cal. App. 4th 35, 38 (1995); BAJI No. 7.89 (2008). | 96. |
| CACI 2102 | Measure of Damages for Conversion | CACI No. 2102 (2008). | 97 |
| Special Inst. ___ | Measure of Damages for Breach of Fiduciary Duty | Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906); Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999). | 98 |
| Special Inst. ___ | Measure of Damages for Breach of Duty of Loyalty | Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906); Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d | 100 |

xv

| | | 1144 (D. Kan. 1999). | |
|---|---|---|---|
| Special Inst. __ | Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty | Restatement (Second) of Torts § 876 (1979); Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906); Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999). | 102 |
| Special Inst. __ | Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty | Restatement (Second) of Torts § 876 (1979); Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906); Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999). | 104 |
| 9th Cir. 17.22 | COPYRIGHT—DAMAGES (17 U.S.C. § 504) | Ninth Circuit Manual of Model Jury Instructions, Civil, 17.22 (2007). | 106 |
| 9th Cir. 17.24 | COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b)) | Ninth Circuit Manual of Model Jury Instructions, Civil, 17.24 (2007). | 107 |
| Special Inst. __ | Choice of Alternative Methods of Determining Plaintiff's Damages | A. A. Baxter Corp. v. Colt Indus., Inc., 10 Cal. App. 3d 144, 160 (1970). | 109 |
| 9th Cir. 5.3 | Damages—Duty to Mitigate | Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); CACI No. 3931 (2008). | 110 |

| | | | |
|---|---|---|---|
| 9th Cir. 5.6 | Nominal Damages | Ninth Circuit Manual of Model Jury Instructions, Civil, 5.6 (2007). | 111 |
| CACI 361 | Plaintiff May Not Recover Duplicate Damages | CACI No. 361 (2008); Cal. Civil Code § 3358; Kurinij v. Hanna & Morton, 55 Cal. App. 4th 853, 866 (1997). | 112 |

**COPYRIGHT JURY INSTRUCTIONS**
**PHASE I-B**
**(ONLY AFTER PHASE I-A VERDICT)**

| **No.** | **Description** | **Source** | **Page** |
|---|---|---|---|
| 9th Cir. 17.0 | COPYRIGHT – PRELIMINARY INSTRUCTION | Ninth Circuit Manual of Model Jury Instructions 17.0 (2007). | 114 |
| | ALTERNATE: | --- | 116 |
| 9th Cir. 17.1 | COPYRIGHT – DEFINED | Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106; 2-8 Nimmer on Copyright §§ 8.01–8.20; 3 Patry on Copyright §§ 8:1, 9:2; 12-76 Nimmer on Copyright § 2.04[A][1]. | 118 |
| 9th Cir. 17.3 | COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION | Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); 4-13 Nimmer on Copyright § 13.03[B]; Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir. 1994); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988); see also Mattel v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129 (C.D. Cal. 2001). | 120 |
| 9th Cir. 17.6 | COPYRIGHT INTERESTS – AUTHORSHIP | Ninth Circuit Manual of Model Jury Instructions 17.6 (2007). | 123 |
| Special Inst. 5C | COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION | Feist Publications, Inc. v. Rural Telephone Services, Inc., 499 U.S. 340, 346 (1991); Expert Report of Ralph Oman, dated Feb. 25, 2005, in Team Play, Inc. v. Boyer, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); Ninth Circuit Manual of Model Jury | 124 |

| No. | Description | Source | Page |
|---|---|---|---|
| | | Instructions 17.5 (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii). | |
| Special Inst. 6C | COPYRIGHT INFRINGEMENT – COPYING | BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007); 4-13 Nimmer on Copyright §§ 13.03[A] & [D] (2008). | 125 |
| Special Inst. 7C | COPYRIGHT INFRINGEMENT – FACTUAL COPYING | BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. Lexis 60544 at **8–10 (S.D. Cal. Aug. 16, 2007); Sobhani v. @radical.media, Inc., 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003); Miller v. Miramax Film Corp., 2001 U.S. Dist. LEXIS 25967, at **31–32 (C.D. Cal. Sept. 26, 2001); 4-13 Nimmer on Copyright § 13.03[D] (2008). | 126 |
| Special Inst. 8C | COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY | Ninth Circuit Manual of Model Jury Instructions 17.15 (2007); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Bensbargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001). | 128 |
| Special Inst. 9C | COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST | Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1447 (9th Cir. 1994); Frybarger v. Int'l Bus. Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001). | 130 |
| Special Inst. 10C | COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK | 1-2 Nimmer on Copyright § 2.08(C)(2). | 138 |

| No. | Description | Source | Page |
|---|---|---|---|
| | WITH A THREE DIMENSIONAL WORK | | |
| Special Inst. 11C | COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION | Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311 (E.D. Pa. 2000). | 139 |
| Special Inst. 12C | COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS MATTEL HAS BASED ITS COP | Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995); 9 Patry on Copyright § 9:66 (2008). | 140 |
| 9th Cir. 17.20 | DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT | Ninth Circuit Manual of Model Jury Instructions 17.20 (2007). | 141 |
| 9th Cir. 17.21 | DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT | Ninth Circuit Manual of Model Jury Instructions 17.21 (2007). | 142 |
| Special Inst. 15C | DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT | Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931-33 (2005); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996). | 143 |

# PRELIMINARY INSTRUCTIONS

## DISCREPANCIES IN TESTIMONY

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony. You should consider whether a discrepancy pertains to an important matter or only to something trivial.

**Authority:**  CACI No. 107 (2008) (as modified).

# EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS

A statement made by a party before trial that has a tendency to prove or disprove any material fact in this action and which is against that party's interest is an admission. Evidence of an oral admission not made under oath should be viewed with caution.

**Authority:**   See Fed. R. Evid. 801(d)(2); 3 Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, Fed. Jury Prac. & Instr. § 104.53 (5th ed.); BAJI § 2.25 (2008).

## QUESTIONS TO WITNESSES BY JURORS

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 1.15 (2007).

3

1 | **PHASE 1A CLAIMS INSTRUCTIONS**

2

3 | **BREACH OF CONTRACT CLAIMS**

4

5 | Mattel has asserted claims for breach of contract against Carter Bryant.

6

7 | I will now instruct you regarding the law as to these claims.

8

9 | **BREACH OF CONTRACT—INTRODUCTION**

10

11 | Mattel claims that it and Carter Bryant entered into two contracts in the form of (1)

12 | Mattel's Employee Confidential Information and Inventions Agreement, and (2) Mattel's

13 | Conflict of Interest Questionnaire.

14

15 | I will refer to Mattel's Employee Confidential Information and Inventions Agreement as

16 | the "Inventions Agreement." Carter Bryant's Inventions Agreement has been admitted

17 | into evidence as Exhibit ____.

18

19 | I will refer to Mattel's Conflict of Interest Questionnaire as the "Questionnaire." The

20 | Conflict of Interest Questionnaire has been admitted into evidence as Exhibit ____.

21

22

23

24

25

26

27

28

## BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

To recover damages from Carter Bryant for breach of contract, Mattel must prove all of the following:

1. That Mattel and Carter Bryant entered into a valid contract;

2. That Mattel did all, or substantially all, of the significant things that the contract required it to do;

3. That all the conditions by the contract for Carter Bryant's performance had occurred;

4. That Carter Bryant did something that the contract prohibited him from doing or failed to do something he was obligated to do; and

5. That Mattel was harmed by that conduct.

**Authority:** CACI No. 303 (2008) (as modified).

## CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT

Mattel claims that Carter Bryant breached Sections 2(a) of his Inventions Agreement.

Section 2(a) provides: "I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents, and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings."

The Inventions Agreement defines the term "inventions" as follows: "the term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."

Mattel's claim relates to the BRATZ sketches prepared by Carter Bryant, which have been admitted into evidence as Exhibits _____. Mattel claims that the term "inventions" in the Inventions Agreement includes all creative works and applies to the BRATZ sketches. Mattel also contends that Carter Bryant "conceived or reduced to practice" the BRATZ sketches during his employment at Mattel. Mattel claims that Carter Bryant breached Section 2(a) of the Inventions Agreement by failing to communicate those "inventions" to Mattel.

Carter Bryant claims that the term "inventions" is limited to technical, scientific discoveries and does not apply copyrightable material, such as the BRATZ sketches. Carter Bryant also contends that he neither conceived of the BRATZ sketches nor reduced them to practice during his employment at Mattel.

In order to prevail on its claim, Mattel bears the burden of proving by a preponderance of the evidence:

1.    That the term "inventions" in the Inventions Agreement applies to the BRATZ sketches;

2.    That Carter Bryant conceived or reduced to practice the invention during his employment at Mattel;

3.    That Carter Bryant failed to communicate to Mattel the invention as promptly and fully as practicable; and

4.    That Mattel was harmed by that failure.

**Authority:**  CACI No. 303 (2008) (as modified); <u>Hitzeman v. Rutter</u>, 243 F.3d 1345, 1356 (Fed Cir. 2001) (quoting <u>Burroughs Wellcome Co. v. Barr Labs., Inc.</u>, 40 F.3d 1223, 1228 (1994)).

7

**INTERPRETATION OF PARTICULAR TERMS**

I am going to instruct you as to the meaning of certain terms in the Inventions Agreement. "Conceived" refers to the mental part of an invention.  The test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention.  An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan.

"Reduced to practice" refers to creating the physical embodiment of an invention that achieves its purported purpose.  In order for an invention to be reduced to practice, the invention does not need to be in a final or perfect form, but the inventor's efforts must have passed beyond crude and imperfect experiments.

I have found that the following terms are ambiguous.  You must determine whether Mattel has met its burden to prove the meaning of the term "inventions" and the term "during my employment by the Company."  The following instructions may help you interpret the meaning of those terms in the contract.

**Authority:**  CACI No.  314 (2008) (as modified); Hitzeman v. Rutter, 243 F.3d 1345, 1356 (Fed Cir. 2001) (quoting Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (1994)).

## INTERPRETATION—DISPUTED TERM

In deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

**Authority:** CACI No. 314 (2008) (as modified).

1 | ## INTERPRETATION—MEANING OF ORDINARY WORDS

2

3 | You should assume that the parties intended the words in their contract to have their usual
4 | and ordinary meaning unless you decide that the parties intended the words to have a
5 | special meaning.

6

7 | **Authority:** CACI No. 315 (2008).

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTERPRETATION—MEANING OF TECHNICAL WORDS

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

In this case, Carter Bryant contends that "inventions," "conceived" and "reduced to practice" are terms of art generally associated with patent law and relate to "inventions" that are potentially patentable. Carter Bryant further contends that the word "invention" is not ordinarily used in connection with copyright law, which instead provides protection for "original works of authorship." Mattel denies those contentions.

**Authority:** CACI No. 316 (2008) (modified).

---

1   ## INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE

2

3   In deciding what the words of a contract meant to the parties, you should consider the

4   whole contract, not just isolated parts.  You should use each part to help you interpret the

5   others, so that all the parts make sense when taken together.

6

7   **Authority:** CACI No. 317 (2008).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **INTERPRETATION—CONSTRUCTION BY CONDUCT**

2

3 In deciding what the words in a contract meant to the parties, you may consider how the
4 parties acted after the contract was created but before any disagreement between the
5 parties arose.  You may also consider evidence of Mattel's practical interpretation of the
6 contract terms in dealing with other Mattel employees.  You may also consider Mattel's
7 efforts to enforce the rights it claims in dealing with other employees, including the use of
8 different contractual terms.

9

10 **Authority:** CACI No. 318 (2008) (modified); <u>Warner Bros., Inc. v. Curtis Mgmt. Group,</u>
11 <u>Inc.</u>, No. CV 91-4016-WMB, 1995 WL 420043 (C.D. Cal. Mar. 31, 1993); <u>Heston v.</u>
12 <u>Farmers Ins. Group</u>, 160 Cal. App. 3d 402 (1984); <u>see also</u> <u>Montrose Chem. Corp. v.</u>
13 <u>Admiral Ins. Co.</u>, 10 Cal. 4th 645, 670 (1995) (drafting history of standardized form policy
14 was relevant to interpreting meaning of contract).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

# INTERPRETATION—CONSTRUCTION AGAINST DRAFTER

In determining the meaning of a term of the contract, you must first consider all of the other instructions that I have given you.  If, after considering these instructions, you still cannot agree on the meaning of the term, then you should interpret the contract term against the party that drafted the term.

**Authority:** CACI No. 320 (2008); Powerline Oil Co. v. Superior Court, 37 Cal. 4th 377, 391 (2005); Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 819-20 n.16 (1981); see also Cal. Civ. Code § 1654 ("[T]he language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."); Badie v. Bank of America, 67 Cal. App. 4th 779 (1998) (adhesion); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997) (one party's attorney); Neal v. State Farm Ins. Cos., 188 Cal. App. 2d 690, 694 (1961) (adhesion).

## INTERPRETATION—ADHESION CONTRACTS

Defendants contend that Bryant's contract is a contract of adhesion. Thus, you must also consider whether the contract is adhesive. An adhesive contract is a contract in which:

1.    The agreement is drafted by the party of superior bargaining power;

2.    The agreement is a standardized contract; and

3.    The agreement is presented on a take it or leave it basis.

In the case of adhesion contracts, the rule of construction against the drafter applies more strongly.

**Authority:** Directions for Use, CACI No. 320 (2008); Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83 (2000); Badie v. Bank of America, 67 Cal. App. 4th 779 (1998) (adhesion); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997) (one party's attorney); Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961) (adhesion); see also Geoffroy v. Washington Mut. Bank, 484 F. Supp. 2d 1115, 1122 (S.D. Cal. 2007); Discover Bank v. Superior Court, 36 Cal. 4th 148, 160 (2005); Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 820 n.18 (1981); Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 271 (1966); Steven v. Fid. & Cas. Co., 58 Cal. 2d 862, 878 (1962); Cubic Corp. v. Marty, 185 Cal. App. 3d 438, 450 (1986).

## INTERPRETATION—UNCONSCIONABILITY

There are two limitations on the enforcement of adhesion contracts or provisions thereof:

1.     Such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him.

2.     A principle of equity applicable to all contracts generally is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.'

The standard for determining the reasonable expectations of the adhering party is an objective one.  You should determine the meaning of contract terms by considering the terms in light of what a "hypothetical reasonable" person in the weaker party's position or circumstances would glean from the wording of the contract.  Also, you should deny enforcement of terms unless you find the adhering party had plain and clear notification of the meaning of the terms and an understanding consent.  Any counter-intuitive terms and definitions must be "conspicuous, clear, and plain," not buried in fine print.

A contract is unconscionable where, for example, the contract did not fall within an employee's reasonable expectations, the contract contained oppressive or unconscionable terms, or was not a commonplace agreement in industry.  Furthermore, a contract will be considered unconscionable if the employee failed to understand key terms or made objections to certain key terms that were disregarded by his or her employer, or if enforcement of the contract would be overly harsh or against public policy.

**Authority:** <u>Armendariz v. Found. Health Psychcare Servs. Inc.</u>, 24 Cal. 4th 83 (2000); <u>Badie v. Bank of America</u>, 67 Cal. App. 4th 779 (1998) (adhesion); <u>Mayhew v. Benninghoff</u>, 53 Cal. App. 4th 1365 (1997) (one party's attorney); <u>Neal v. State Farm Ins. Co.</u>, 188 Cal. App. 2d 690, 694 (1961) (adhesion); <u>see also</u> <u>Geoffroy v. Washington Mut. Bank</u>, 484 F. Supp. 2d 1115, 1122 (S.D. Cal. 2007); <u>Graham v. Scissor-Tail, Inc.</u>, 28 Cal. 3d 807, 820 n.18 (1981); <u>Gray v. Zurich Ins. Co.</u>, 65 Cal. 2d 263, 271 (1966); <u>Steven v. Fid. & Cas. Co.</u>, 58 Cal. 2d 862, 878 (1962); <u>Cubic Corp. v. Marty</u>, 185 Cal. App. 3d 438, 450 (1986).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**INTERPRETATION – INTENT NEVER EXTENDED**

However broad the terms of a contract may be, the contract extends only to those things concerning that which it appears that the parties actually intended to contract.

**Authority:**  Cal. Civ. Code § 1648.

**INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR INEQUITABLE INTERPRETATION:**

In deciding what the words of a contract meant to the parties, you must avoid an interpretation which will make the contract extraordinary, harsh, unjust, inequitable or which would result in an absurdity.

**Authority:** Cal. Civ. Code § 1638; <u>Strong v. Theis</u>, 187 Cal. App. 3d 913 (1986); <u>County of Marin v. Assessment Appeals Bd.</u>, 64 Cal. App. 3d 319 (1976).

1 **MODIFICATION**

2

3 Carter Bryant claims that the Inventions Agreement and was modified or changed.  Mattel

4 denies that the contract was modified.

5

6 The parties to a contract may agree to modify its terms.  You must decide whether a

7 reasonable person would conclude from the words and conduct of Mattel and Bryant that

8 they agreed to modify the contract.  You cannot consider the parties' hidden intentions.

9

10 A contract in writing may be modified by an oral agreement to the extent the oral

11 agreement is carried out by the parties.

12

13 Further, a modification to a contract can be created by the conduct of the parties, without

14 spoken or written words.  Contracts created by conduct are just as valid as contracts

15 formed with words.

16

17 Conduct will create a modification if the conduct of both parties is intentional and each

18 knows, or has reason to know, that the other party will interpret the conduct as an

19 agreement to modify the contract.

20

21 **Authority:**  CACI Nos. 305, 313 (2008) (as modified).

22

23

24

25

26

27

28

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

## **PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR CODE § 2870)**

If you find that the BRATZ sketches were an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, you must then decide whether Mr. Bryant still owns the invention because the invention falls within the provisions of Labor Code § 2870.   If you find that the BRATZ sketches were not an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, then you need not consider this instruction.

I will now explain Labor Code § 2870.   In California, an employer cannot force an employee to give the employer rights to certain protected employee inventions, even if the employee signs an agreement which claims to give those inventions to the employer. If this happens, even if the agreement is otherwise valid, the employer cannot enforce the agreement to claim the protected inventions.   The law protects any type of invention that an employer might try to claim from an employee.

Under Labor Code § 2870, an employer is not allowed to claim any invention that an employee developed entirely on his or her own time, without using the employer's equipment, supplies, facilities, or trade secret information.   However, an employer may claim an invention that either (1) resulted from any work performed by the employee for the employer, or (2) at the time the employee conceived the invention or reduced it to practice, related to the employer's business or to research or development that the employer can show it was planning.

The use of an insubstantial amount of an employer's equipment, supplies, facilities or an insubstantial amount of employee time will not defeat an employee's claim that he or she owns an invention pursuant to Labor Code § 2870.

1

2  Mr. Bryant claims that, even if his sketches are an invention as defined by the Inventions

3  Agreement, he owns the BRATZ sketches under Labor Code § 2870. Mattel disputes this

4  claim. Mr. Bryant bears the burden of proving that an invention falls within the protection

5  of Labor Code § 2870.

6

7  **Authority:**  Cal. Labor Code §§ 2870-2872; <u>Cubic Corp. v. Marty</u>, 185 Cal. App. 3d 438

8  (1986); <u>Applera Corp.-Applied Biosystems Group v. Illumina, Inc.</u>, 2008 WL 170597, at

9  **4-5 (N.D. Cal. Jan. 17. 2008) (jury could find that minimal company resources used

10  were not part of "developing" employee invention under § 2870); <u>Voith Hydro Inc. v.</u>

11  <u>Hydro West Group, Inc.</u>, 1997 WL 15440, at **6-8 (N.D. Cal. 1997) (where invention was

12  conceived before employment and reduced to practice afterward, the employee's use of

13  "some time and resources" to work on one component of the invention was insufficient to

14  give rise to any ownership rights in the employer); <u>Banner Metals Inc. v. Lockwood</u>, 178

15  Cal. App. 2d 643, 649-50, 656-58, 662 (1960) (use of some wire and employer's welding

16  machine after hours was "negligible and unimportant and in no substantial way produced

17  or contributed to the development of a receptacles of a commercially acceptable form");

18  <u>Aero Bolt & Screw Co. v. Iaia</u>, 180 Cal. App. 2d 728, 737-39 (1960) (use of employer's

19  paper pads, bolts for early models and prototypes, typists and copier in connection with

20  drawings submitted to manufacturers, and employer's shop on weekends to make samples

21  did not give rise to ownership rights in the employer because employee did not use a

22  "substantial amount" of the employer's resources).

23

24

25

26

27

28

MGA Parties' [Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT**

Mattel claims that Carter Bryant breached Sections 3(a) of his Inventions Agreement.

Section 3(a) provides: "My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist [in any manner] any business competitive with the business of future business plans of the Company."

Mattel claims that Carter Bryant breached Section 3(a) by secretly aiding, assisting, and working for a Mattel competitor during his employment with Mattel without the express written consent of Mattel.

Carter Bryant claims that he fully complied with his obligations to Mattel while he was employed. In California, an employee is entitled to prepare to compete with his or her current employer provided that he or she does not directly compete until after leaving his or her employment. Permissible preparations to compete include, for example, (1) undertaking efforts to establish a competing business and to immediately compete after termination of employment; (2) use of small amounts of an employer's resources, such as phones, faxes, computers, and employee time; (3) discussion of a competing venture with other employees; (4) asking customers whether work might be available for a possible competing venture; (5) use of some time during work hours to prepare to compete, provided the employee continues to perform his or her job responsibilities; and (6) use of marketing plans, customer lists or other information learned during his or her employment provided the information is not a trade secret or confidential information. An employee is not required to disclose any preparations to compete with his or her employer.

23

1
2  In order to prevail on its claim, Mattel bears the burden of proving by a preponderance of
3  the evidence:

4
5      1.   That the Inventions Agreement is a valid contract;
6
7      2.   That Mattel did all or substantially all, of the significant things that the
8           contract required it to do;
9
10     3.   That all the conditions by the contract for Carter Bryant's performance had
11          occurred;
12
13     4.   That Carter Bryant did something that Section 3(a)  prohibited him from
14          doing or failed to do something he was obligated to do; and
15
16     5.   That Mattel was harmed by that failure.
17
18 You may consider Mr. Bryant's intention and the surrounding circumstances in
19 determining whether Mr. Bryant's actions were preparations to compete or were in breach
20 of section 3(a) of his Inventions Agreement.

21
22 You should consider Instructions __ -__ in determining whether Mattel has met its burden
23 on this claim.

24
25
26 **Authority:** Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord
27 Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2003);; GAB Bus. Servs., Inc.
28 v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled

1  on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp.

2  v. Ferguson, 74 Cal. Rptr. 86, 92-93 (1968); see also Material Supply Int'l, Inc. v.

3  Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. Am.

4  Broadcasting Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Mercer Mgmt. Consulting,

5  Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc.,

6  782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp.

7  551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump

8  Co., 428 F. Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' [Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

## CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT

Further, an at will employee such as Carter Bryant is entitled to seek new employment and not disclose to his or her employer efforts to obtain new employment.  An employee is entitled to inform his employer once he or she has made a final decision to leave his or her current job.

**Authority:**  Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-46 & n.10 (1966); accord Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2003); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp. v. Ferguson, 74 Cal. Rptr. 86, 92-93 (1968); see also Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. American Broadcasting Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Mercer Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c.

## CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE

Mattel claims that Carter Bryant breached the Questionnaire.

Carter Bryant denies that the Questionnaire is a valid contract.  Carter Bryant also denies that he breached any terms of the questionnaire.

In order to prevail on its claim, Mattel bears the burden of proving by a preponderance of the evidence:

　　　1.　　That the Questionnaire is a valid contract;

　　　2.　　That Mattel did all or substantially all, of the significant things that the contract required it to do;

　　　3.　　That all the conditions by the contract for Carter Bryant's performance had occurred;

　　　4.　That Carter Bryant did something that the contract prohibited him from doing or failed to do something he was obligated to do; and

　　　5.　That Mattel was harmed by that failure.

You should consider Instructions ___ - ___ in determining whether Mattel has met its burden on this claim.

**Authority:** CACI Nos. 300, 303 (2008) (as modified).

## CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS

The parties disagree as to whether the Questionnaire constitutes a valid contract.

Mattel claims that the Questionnaire constitutes a valid contract. Carter Bryant claims that it does not. To prove that a contract was created, Mattel must prove all of the following:

1.  That the terms of the document were clear enough that the parties could understand what each was required to do;

2.  That the parties agreed to give each other something of value, commonly referred to as "consideration"; and

3.  That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden, unexpressed intentions.

Mutual consent is an essential contract element. Consent is not mutual, unless the parties all agree upon the same thing in the same sense.

**Authority:**   CACI No. 302 (2008) (as modified); CACI No. 302 (Sources and Authority); Cal. Civil Code §§ 1550, 1565, 1580.

**1**  **CONTRACT FORMATION—DOCUMENT MUST OBVIOUSLY BE A**
**2**  **CONTRACT**
**3**
**4**  A party cannot be found to have agreed to a contract where the document he signed does
**5**  not look like a contract and the contractual provisions are inconspicuous or are not clearly
**6**  disclosed.
**7**
**8**  **Authority:**   Metters v. Ralphs Grocery Co., __ Cal. Rptr. __, No. G038380, 2008 WL
**9**  542838 (Cal. Ct. App. Feb. 29, 2008) (ordered published on Apr. 1, 2008).
**10**
**11**
**12**
**13**
**14**
**15**
**16**
**17**
**18**
**19**
**20**
**21**
**22**
**23**
**24**
**25**
**26**
**27**
**28**

**CONSIDERATION**

Except in certain situations as to which you will be instructed, a promise without sufficient consideration cannot be enforced.

Consideration may be either a benefit conferred or agreed to be conferred upon the person making the promise or a detriment suffered or agreed to be suffered by the person to whom the promise is made. Consideration must be bargained for and given in exchange for the promise. In determining whether there was a bargained-for exchange between Mattel and Carter Bryant with respect to the Questionnaire, you must consider only the outward expression of the intention of the parties.

To be sufficient, the consideration must have some value. Something that is completely worthless cannot constitute sufficient consideration. Consideration also cannot comprise something that already has been given or earned for past services or work.

**Authority:** 1 B.E. Witkin, <u>Summary of Law: Contracts</u>, §§ 202-203, 205 (10th ed. 2005); BAJI § 10.61 (2007) (as modified).

**DECLARATORY RELIEF**

Mattel has asserted a claim for declaratory relief.

I will now instruct you regarding the law as to this claim.

**DECLARATORY RELIEF:  THE PARTIES' CLAIMS**

The parties dispute their rights and obligations with respect to certain BRATZ sketches prepared by Carter Bryant.  Mattel seeks a declaration that MGA, Larian and MGA (HK) have no valid ownership rights in the BRATZ sketches, that Mattel is the true owner of the BRATZ sketches, and any agreements between Bryant and MGA assigning the rights to the BRATZ sketches is void. Carter Bryant, Isaac Larian, MGA and MGA (HK) dispute Mattel's claims.

    1.    If you found that Carter Bryant did not breach Section 2(a) of the Inventions Agreement, you must also find that Mattel has not met its burden in proving its declaratory relief claim.

    2.    If you found that Carter Bryant did breach Section 2(a) of the Inventions Agreement, you must then determine whether MGA purchased the rights in good faith.  If you find MGA purchased its rights in good faith, you must find for MGA, MGA (HK), Isaac Larian and Carter Bryant on this claim.

    3.    Similarly, if you found that Carter Bryant did breach Section 2(a) of the Inventions Agreement, and if you do not find that MGA purchased its rights in good faith, then you also must determine whether, under section 204(a) of the Copyright Act and Section 988 of the California Civil Code, the Inventions Agreement transferred any

31

1  copyright ownership in the BRATZ sketches to Mattel.  If you find that the Inventions
2  Agreement does not satisfy section 204(a), you must find for MGA, Isaac Larian and
3  Carter Bryant on this claim.
4
5  Finally, if you find for Mattel on this claim, you must identify in which BRATZ sketches
6  MGA, Larian and MGA (HK) do not have a valid ownership interest.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**EVIDENCE OF GOOD FAITH**

In determining whether Mattel is entitled to relief, the good faith of Carter Bryant, Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Carter Bryant, Larian, MGA, and MGA (HK) acted in bad faith or with bad intent.   To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:**  People v. Webb, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, Cal. Proc.: Pleadings § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

**COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988**

If you find that the BRATZ sketches were an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, you must also determine whether the Inventions Agreement satisfies the requirements of Section 204(a) of the Copyright Act and California Civil Code § 988. If you find that the BRATZ sketches were not an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel or that the invention falls with Labor Code § 2870, then you need not consider this instruction.

I will now explain Copyright Act § 204(a) and California Civil Code §988. Under Section 204(a) of the Copyright Act, any transfer of copyright ownership must be clear and in writing to be valid. Specifically, the written transfer instrument must (1) reasonably identify the subject matter of the agreement; (2) be sufficient to indicate that the parties have come to an agreement; and (3) state with reasonable certainty the essential terms of the contract. Similarly, under California Civil Code Section 988, in a written agreement transferring any of a copyright owner's rights, any ambiguity about the nature or scope of the rights conveyed must be resolved to preserve the rights of the original owner.

These requirements prevent the inadvertent transfer of ownership rights by forcing a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price. Any ambiguity in a purported transfer should be resolved in favor of the original copyright holder or creator keeping the rights to the copyrighted work.

If you find that the Inventions Agreement does not satisfy the above requirements of § 204(a) of the Copyright Act or California Civil Code Section 988, then you must find for defendants on Mattel's declaratory relief claim.

1

2 **Authority:**   17 U.S.C. § 204(a); <u>Konigsberg, Int'l, Inc. v. Rice</u>, 16 F.3d 355, 357 (9th Cir.

3 1994) (requiring written transfer instrument to "be a product of the parties' negotiations");

4 <u>Effects Assocs., Inc. v. Cohen</u>, 908 F.2d 555, 557 (9th Cir. 1990); <u>Foraste v. Brown Univ.</u>,

5 290 F. Supp. 2d 234, 240-41 (D.R.I. 2003) (collecting cases holding that 204(a) requires

6 the drafter of a transfer document to be "explicit," "precis[e]," "clear," and

7 "unequivocal"); <u>Bieg v. Hovnonian Enters., Inc.</u>, 157 F. Supp. 2d 475, 480 (E.D. Pa.

8 2001); <u>Pamfiloff v. Giant Records, Inc.</u>, 794 F. Supp. 933, 936 (N.D. Cal. 1992); Cal. Civ.

9 Code § 988(c); 13 B.E. Witkin, <u>Summary of California Law: Personal Property</u> § 47 (10th

10 ed. 2005); <u>Chamberlain v. Cocola Assocs.</u>, 958 F.2d 282, 283-84 (9th Cir. 1992)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' [Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**CALIFORNIA CIVIL CODE § 988**

If you find that the BRATZ sketches were an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, you must also determine whether the Inventions Agreement satisfies the requirements of Section 988 of the California Civil Code. If you find that the BRATZ sketches were not an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel or that the invention falls with Labor Code § 2870, then you need not consider this instruction.

I will now explain California Civil Code § 988. Under Section 988 of the California Civil Code, any transfer of ownership in a "work of art," such as a "print, drawing, sculpture, or craft," must be clear and in writing to be valid. Specifically, the written transfer instrument must (1) reasonably identify the subject matter of the agreement; (2) be sufficient to indicate that the parties have come to an agreement; and (3) state with reasonable certainty the essential terms of the contract. These requirements prevent the inadvertent transfer of ownership rights by forcing a party who wants to use the "work of art" to negotiate with the creator to determine precisely what rights are being transferred and at what price. Any ambiguity with respect to the nature or extent of rights conveyed shall be resolved in favor of the reservation of rights by the artist or owner, unless in any given case, the federal copyright law provides to the contrary.

Thus, if you find that there is any ambiguity in the rights that Mattel contends were transferred from Carter Bryant to Mattel by the Inventions Agreement, then you must find that Carter Bryant retained the ownership over his works of art.

**Authority:** Cal. Civ. Code § 988(c); 13 B.E. Witkin, Summary of California Law: Personal Property § 47 (10th ed. 2005); Chamberlain v. Cocola Assocs., 958 F.2d 282, 283-84 (9th Cir. 1992).

## INTENTIONAL INTERFERENCE WITH CONTRACT CLAIM

Mattel has asserted a claim for intentional interference with contract against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— ELEMENTS

Mattel claims that defendants Isaac Larian and MGA Entertainment Inc. intentionally interfered with the contract between Mattel and Carter Bryant. To establish this claim, Mattel must prove all of the following:

1. That there was a valid and enforceable contract between Mattel and Carter Bryant;

2. That Larian and MGA knew of the contract and its terms;

3. That Larian and MGA intended to disrupt the performance of Bryant's contract with Mattel;

4. That Larian and MGA engaged in wrongful conduct independent of "interfering" with Bryant's contracts with Mattel through (1) aiding and abetting Bryant in a breach of the duties he owed Mattel; or (2) infringing Mattel's BRATZ-related copyrights.

5. That Larian and MGA's conduct prevented performance of the contracts;

6. That Mattel was harmed; and

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

7. That Larian and MGA's conduct was a substantial factor in causing Mattel's harm.

**Authority:** CACI Nos. 2201, 2202 & 2203 (2008) (as modified).

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— INTENT

To prove that MGA and Larian intended to interfere with Bryant's contract with Mattel, Mattel must show that MGA and Larian knew that a breach of Bryant's contract was certain or substantially certain to occur as a result of their actions.  There is no intent to interfere where the defendant knows or believes its agreement with a third party will not infringe the rights of the plaintiff.

**Authority:**  CACI Nos. 2201, 2202 & 2203 (2008); <u>Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.</u>, 106 Cal. App. 4th 1219, 1239 (2003) (intent); <u>1-800 Contacts, Inc. v. Steinberg</u>, 107 Cal. App. 4th 568 (2003) (intent)

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— INDUCEMENT

A defendant is not liable for intentional interference with contract where the breaching party is the one who initiates contact with the defendant, even if the defendant knows the breaching party has a contract with someone else and even if the defendant suspects that entering a contract with the breaching party may cause the breaching party to breach his or her obligation to another.  Here's an example. Bill is under contract to sell certain goods to Chad.  Bill offers to sell the same goods to Adam, who knows Bill has a contract with Chad.  Even if Adam accepts Bill's offer and buys the goods, Adam has not induced Bill's breach and is not liable for intentional interference with the contract between Bill and Chad.

**Authority:** Restatement (Second) of Torts § 766, cmt. n (2007) (inducement); DeVoto v. Pac. Fid. Life Ins.Co., 618 F.2d 1340, 1348 (9th Cir. 1980) (inducement); Bauer v. Interpublic Group of Cos., 255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003) (inducement); Dryden v. Tri-Valley Growers, 65 Cal. App. 3d 990, 996 (1977) (inducement).

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— HIRING OF AT WILL EMPLOYEES OF COMPETITORS

Bryant worked "at will" for Mattel, meaning that he could leave Mattel at any time, and he could be let go by Mattel for any reason or no reason. Thus, Bryant was entitled to look for another job while still employed at Mattel, to prepare to compete with Mattel, and to leave his employment with Mattel to work with a competitor or to compete himself against Mattel.

It is not wrongful for a company to solicit or hire the at-will employee of its competitor, because California law protects employees and their pursuit of any employment or enterprise of their choice as more important than the competitive business interests of the employers. Likewise, competitor employers have the right to offer more pay or better terms to another's employee, so long as the employee is free to leave.

**Authority:** See also Reeves v. Hanlon, 33 Cal. 4th 1140, 1151 (2004) (California "public policy generally supports a competitor's right to offer more pay or better terms to another's employee, so long as the employee is free to leave. ... [I]f the law were to the contrary, the result 'would be intolerable, both to such employers as could use the employe[e] more effectively and to such employe[e]s as might receive added pay. It would put an end to any kind of competition.'") (citation omitted); Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal. App. 4th 853, 859 (1994) ("California courts have consistently declared ... an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice"); Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 255 (1968) (California public policy recognizes "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers"); see also Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1337 (9th Cir. 1980) ("[m]ere solicitation of an

41

1   employee, under no contract of employment, to leave and associate with a competing firm
2   is not illegal"); <u>Interloc Solutions, Inc. v. Tech. Assoc. Int'l. Corp.</u>, No. CV071534
3   LEWGGHX, 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007) (citing <u>Reeves</u> for the
4   proposition that "employees are not precluded from seeking new employment on their own
5   initiative"); <u>Posdata Co. Ltd. v. Kim</u>, No. C-07-02054 RMW, 2007 WL 1848661, *7 (N.D.
6   Cal. June 27, 2007); <u>Continental Car-Na-Var Corp. v. Moseley</u>, 24 Cal. 2d 104, 110 (1944)
7   ("[a] former employee has the right to engage in a competitive business for himself and to
8   enter into competition with his former employer, even for the business of ... his former
9   employer, provided such competition is fairly and legally conducted."); <u>VL Sys., Inc. v.</u>
10  <u>Unisen, Inc.</u>, 152 Cal. App. 4th 708, 713, 715 (2007) (quoting <u>Diodes</u> and finding no
11  unlawful solicitation of employee where the employee initiated the new agreement with
12  the defendant and "chose to seek the job with" the defendant).

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**"BUT FOR" CAUSATION**

If the alleged loss or harm that Mattel suffered would have occurred even in the absence of the alleged wrongdoing by the defendants, then the defendants' conduct cannot be considered a substantial factor in bringing about Mattel's alleged loss or harm and you must find for the defendants.

If you determine that Mattel has suffered injury or harm, you may only compensate Mattel for the harm, if any, which was caused by the unlawful acts of the defendants. To the extent that you find that Mattel would have suffered harm or injury even without any action from the defendants, due to Mattel's own business decisions, you may not award any damages that resulted from those business decisions.

**Authority:** Matthew Bender, <u>Cal. Forms Jury Inst.</u>, Ch. 1-3E § 300E.04 (as modified).

**1** | **BREACH OF FIDUCIARY DUTY CLAIM**

**3** | Mattel has asserted a claim for breach of fiduciary duty against Carter Bryant.

**5** | I will now instruct you regarding the law as to this claim.

**7** | **FIDUCIARY DUTY—ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY**
**8** | **DUTY**

**10** | To recover on its claim for breach of fiduciary duty, Mattel has the burden of proving by a
**11** | preponderance of the evidence all the facts necessary to establish:

**13** |     1.     That Bryant was a fiduciary of Mattel at the time of the acts
**14** |          complained of by Mattel;

**16** |     2.     That while in that capacity, Bryant acted against Mattel's interests by directly
**17** |          competing with Mattel prior to terminating his employment;

**19** |     3.     That Mattel was harmed; and

**21** |     4.     That Bryant's conduct was a substantial factor in causing Mattel's harm.

**23** | **Authority:**  CACI Nos. 4101, 4102 (2008) (as modified); <u>Bancroft-Whitney Co. v. Glen</u>,
**24** | 64 Cal. 2d 327 (1966); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83
**25** | Cal. App. 4th 409 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th
**26** | 1140 (2004); <u>City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 68 Cal.
**27** | App. 4th 445, 483 (1998); <u>Pierce v. Lyman</u>, 1 Cal. App. 4th 1093, 1101-02 (1991)
**28** | (superseded by statute on other grounds).

**FIDUCIARY DUTY—DEFINED**

Once a party expressly agrees to assume a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interests of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest.

**Authority:** CACI Nos. 4100, 4102 (2008) (as modified); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 417-18 (2000), overruled on other grounds by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445, 483-84 (1998).

1  **FIDUCIARY DUTY—EXISTENCE OF DUTY**

2

3  The parties dispute whether Carter Bryant owed a fiduciary duty to Mattel. The fact that
4  Carter Bryant was an employee of Mattel does not by itself give rise to a fiduciary
5  relationship.

6

7  In order to establish that Carter Bryant owed Mattel a fiduciary duty, Mattel must prove by
8  a preponderance of the evidence the following: (1) that Bryant voluntarily and knowingly
9  expressly agreed to act as a fiduciary for Mattel, to act on its behalf, and to hold Mattel's
10  interests paramount over his own interests; (2) that Mattel entrusted its property or affairs
11  to Bryant;   (3) that Mattel gave Bryant a broad grant of discretion; (4) that Mattel had
12  little ability to monitor Bryant and therefore had to rely upon the truth of his
13  representations;   (5) that Mattel was vulnerable and dependent upon Bryant and that
14  vulnerability was so substantial as to give rise to equitable concerns and create a
15  relationship similar to other legally recognized fiduciary relationships such as that of an
16  attorney/client, trustee/beneficiary, a corporate officer/corporation; and (6) that the
17  employment contract did not preclude the existence of a fiduciary relationship.

18

19  Even if these elements are met, the employee does not necessarily become a fiduciary.
20  Further, the reposing of trust and confidence in a party with whom one has a contractual
21  relationship is not sufficient to create a fiduciary relationship.

22

23  **Authority:** City of Hope Nat'l Med. Ctr. v. Genentech, Inc., No. S129463, ___ Cal. Rptr.
24  3d ___, 2008 WL 1820916 at * 6-11 (Cal. April 24, 2008); City Solutions v. Clear
25  Channel Commc'n., 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002); Kremen v. Cohen, 99 F.
26  Supp. 2d 1168, 1175 (N.D. Cal. 2000); Comm. on Children's Tel., Inc. v. Gen. Foods
27  Corp., 35 Cal. 3d 197, 222 (1983) (superseded by statute on other grounds); Vai v. Bank of
28  America, 56 Cal. 2d 329, 338 (1961); Oakland Raiders v. Nat'l Football League, 131 Cal.

1 App. 4th 621, 632-33 (2005); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.,</u>

2 <u>Inc.,</u> 83 Cal. App. 4th 409, 417 (2000), <u>overruled on other grounds by</u> <u>Reeves v. Hanlon,</u>

3 33 Cal. 4th 1140 (2004); <u>Maglica v. Maglica,</u> 66 Cal. App. 4th 442, 488 (1998); <u>Lynch v.</u>

4 <u>Cruttenden & Co.</u>, 18 Cal. App. 4th 802, 809 (1993); <u>Worldvision Enters., Inc. v. Am.</u>

5 <u>Broad. Cos.,</u> 142 Cal. App. 3d 589 (1983).

**FIDUCIARY DUTY—BURDEN OF PROVING BREACH**

If Carter Bryant expressly and voluntarily agreed to act as a fiduciary on behalf of Mattel, you must determine the scope of that agreement and whether Mattel has met its burden of proving by a preponderance of evidence that Bryant breached his fiduciary duties to Mattel.

**Authority:** Restatement (Third) of Agency § 8.04; Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327 (1966); Gonsalves v. Hodgson, 38 Cal. 2d 91, 99 (1951); LeMat Corp. v. Am. Basketball Ass'n, 51 Cal. App. 3d 267, 275 (1975); see also Gateway Techs, Inc. v. MCI Telecomm. Corp., 64 F.3d 993, 1000-01 (5th Cir. 1995).

1 **BREACH – RIGHT TO PREPARE TO COMPETE**

2

3 To the extent Mattel bases its breach allegations on Carter Bryant's activities relating to

4 BRATZ, Mattel must show that Bryant undertook actions prior to leaving his employment

5 with Mattel that were in direct competition with Mattel and not merely preparations to

6 compete with Mattel after his employment ended.

7

8 Acts of direct competition include, for example, (1) the formation of a competing company

9 that competes against the employer while the employee is still employed by that employer,

10 (2) the selling of competing products while still employed, (3) the diversion of sales away

11 from an employer while still an employee; (4) the use of confidential information (such as

12 employee salaries) to recruit employees to a competitor; (5) the misappropriation of trade

13 secrets, (6) the solicitation of an employer's customers before terminating employment,

14 and (7) the conspiracy to cause 'mass resignation' of key employees.

15

16 Permissible preparations to compete include, for example, (1) undertaking efforts to

17 establish a competing business and to immediately compete after termination of

18 employment; (2) use of small amounts of an employer's resources, such as phones, faxes,

19 computers, and employee time; (3) discussion of a competing venture with other

20 employees; (4) asking customers whether work might be available for a possible

21 competing venture; (5) use of some time during work hours to prepare to compete,

22 provided the employee continues to perform his or her job responsibilities; and (6) use of

23 marketing plans, customer lists or other information learned during his or her employment

24 provided the information is not a trade secret or confidential information.

25

26 In addition, Bryant was not required to disclose his preparations to compete with Mattel or

27 his efforts to obtain different employment.   An employee is entitled to seek new

28

1    employment and inform his employer once he or she has made a final decision to leave his

2    or her current job.

3

4    You may consider Bryant's intention and the surrounding circumstances in determining

5    whether Bryant breached his duty to Mattel.

6

7    **Authority:** Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord

8    Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2002); GAB Bus. Servs., Inc.

9    v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled

10   on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp.

11   v. Ferguson, 74 Cal. Rptr. 86, 92-93 (1968); see also Material Supply Int'l, Inc. v.

12   Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. Am.

13   Broad. Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Merger Mgmt. Consulting, Inc. v.

14   Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F.

15   Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-

16   71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F.

17   Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c.

18

19

20

21

22

23

24

25

26

27

28

## HARM CAUSED BY BREACH OF FIDUCIARY DUTY

Mattel must also prove by a preponderance of the evidence all facts necessary to show that Mr. Bryant's breach of fiduciary duty was a substantial factor in causing Mattel harm during the term of Mr. Bryant's employment. It is not sufficient to show that Mattel was harmed by Mr. Bryant's competition with Mattel after Mr. Bryant no longer was employed at Mattel.

**Authority:** CACI No. 4102 (2008) (as modified); Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966); Charles T. Powner Co. v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal. App. 347, 350-51 (1906); see also Sequoia Vacuum Sys., v. Stransky, 229 Cal. App. 2d 281, 286 (1964) (citing Daniel Orifice Fitting Co. v. Whalen, 198 Cal. App. 2d 791, 800 (1962)).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM

Mattel has asserted a claim for aiding and abetting breach of fiduciary duty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

To recover on its claim for aiding and abetting, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

1.  Bryant owed a fiduciary duty to Mattel;

2.  Bryant breached a fiduciary duty he owed to Mattel;

3.  MGA and Larian substantially assisted or encouraged Bryant in accomplishing the breach <u>and</u>

4.  that MGA and Larian had actual knowledge of the specific wrong they substantially assisted.

As I described before, an employee does not breach a duty of loyalty by "preparing to compete" with its employer, and is under no duty to disclose to his current employer those preparations or negotiations with a competitor employer. The employee can be paid by his new employer and continue to receive salary and benefits and use office resources while performing outside work without breaching duties to his current employer. And without a

1 | breach of duty by Bryant, MGA and Larian cannot be held liable for aiding and abetting
2 | that breach.

3

4 | To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA
5 | and Larian not only knew of Bryant's breach but also that MGA and Larian made a
6 | conscious decision to participate in wrongful activity designed to assist Bryant in his
7 | breaches.

8

9 | Mattel also has to show a substantial causal connection between MGA and Larian's
10 | conduct and the harm to Mattel.  The "substantial assistance" requirement is inversely
11 | related to the knowledge factor, which means that if Mattel has only offered a small
12 | amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach, Mattel
13 | has to show that MGA and Larian rendered a high degree of substantial assistance in
14 | Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting
15 | Bryant's breach.

16

17 | **Authority:** MJT Sec., LLC v. Toronto-Dominion Bank, No. C03-3815 CW, 2007 WL
18 | 1725421, at **7-8  (N.D.Cal. June 14, 2007) (elements); Neilson v. Union Bank, N.A.,
19 | 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); Resolution Trust Corp. v. Rowe,
20 | No. C90-20114 BAC, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse
21 | relationship between demonstration of knowledge and substantial assistance); Mendelsohn
22 | v. Capital Underwriters, Inc.,  490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation);
23 | Sarkes Tarzian, Inc. v. Audio Devices, Inc., 166 F. Supp. 250 (S.D. Cal. 1958) (competitor
24 | employer did not conspire to breach duty to former employer where competitor paid at-
25 | will employee an advance and employee did not disclose intention to work for competitor),
26 | aff'd, 283 F.2d 695 (9th Cir. 1960); Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988)
27 | (intent); see also Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005);
28 | Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005); Fiol v. Doellstedt,

53

1  50 Cal. App. 4th 1318, 1325-26 (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832,

2  846 (1994); Restatement (Second) of Torts § 876.

1 **DUTY OF LOYALTY CLAIM**

2

3 Mattel has asserted a claim for breach of the duty of loyalty against Carter Bryant.

4

5 I will now instruct you regarding the law as to this claim.

6

7 **BREACH OF THE DUTY OF LOYALTY–ESSENTIAL FACTUAL ELEMENTS**

8

9 Mattel claims that it was harmed by Carter Bryant's breach of the duty of loyalty.   An
10 employee owes his or her employer a duty of undivided loyalty. To establish this claim,
11 Mattel must prove by a preponderance of the evidence all of the facts necessary to
12 establish all of the following:

13

14        1. That Bryant was Mattel's employee and thus owed Mattel a duty of loyalty;

15

16       2.  That Bryant breached his duty of loyalty by directly competing with Mattel
17           during the term of his employment with Mattel in connection with his
18           development of the BRATZ sketches.

19

20       3.  That Mattel did not give informed consent to Bryant's conduct or otherwise
21           ratify Bryant's conduct;

22

23       4. That Mattel was harmed during the term of Bryant's employment; and

24

25       5. That Bryant's conduct was a substantial factor in causing Mattel's harm.

26

27 **Authority:** CACI No. 4102 (2008) (as modified); Bancroft Whitney Co. v. Glen, 64 Cal.
28 2d 327, 345-346 & n.10 (1966); accord Eckard Brandes, Inc. v. Riley, 338 F. 3d 1082,

1 | 1086 (9th Cir. 2002); <u>Western Med. Consultants, Inc. v. Johnson</u>, 80 F.3d 1331, 1336-38

2 | (9th Cir. 1996); <u>Franklin Music Co. v. Am. Broad. Cos.</u>,  616 F. 2d 528, 532-33, 537 (3d

3 | Cir. 1979); <u>Merger Mgmt. Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219 (D. D.C. 1996);

4 | <u>Abraham Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), <u>aff'd</u>, 761 F.

5 | 2d 93 (2d Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161 (S.D. Texas 1977);

6 | <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409,

7 | 424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004);

8 | <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968); Restatement (Third)

9 | of Agency Sect. 8.04 cmt. c.

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

1  **DUTY OF LOYALTY DEFINED**

2

3  An employee owes his or her employer a duty of loyalty.  The scope of the employee's
4  duty varies with the nature of the employee's relationship with his or her employer.  Thus,
5  an employee who occupies a position with a high level of trust and confidence owes a
6  higher duty of loyalty to his or her employer than an employee who occupies a low-level
7  position.  Mattel has the burden of proving by a preponderance of the evidence all facts
8  necessary to show the scope of Bryant's duty of loyalty to Mattel.

9

10  **Authority:**  19 <u>Williston on Contracts</u> § 54:26 (4th ed.); <u>Huong Que, Inc. v. Luu</u>, 150 Cal.
11  App. 4th 400, 411 (2007); <u>Stokes v. Dole Nut Co.</u>, 41 Cal App. 4th 285 (1995).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

1 **BREACH OF THE DUTY OF LOYALTY**

2

3 Mattel must also prove by a preponderance of the evidence all facts necessary to show that
4 Carter Bryant breached his duty of loyalty to Mattel.  To do so, Mattel must show that
5 Bryant undertook actions prior to leaving his employment with Mattel that were in direct
6 competition with Mattel and not merely preparations to compete with Mattel after his
7 employment ended.

8

9 Acts of direct competition include, for example, (1) the formation of a competing company
10 that competes against the employer while the employee is still employed by that employer,
11 (2) the selling of competing products while still employed, (3) the diversion of sales away
12 from an employer while still an employee; (4) the use of confidential information (such as
13 employee salaries) to recruit employees to a competitor; (5) the misappropriation of trade
14 secrets, (6) the solicitation of an employer's customers before terminating employment,
15 and (7) the conspiracy to cause 'mass resignation' of key employees.

16

17 Permissible preparations to compete include, for example, (1) undertaking efforts to
18 establish a competing business and to immediately compete after termination of
19 employment; (2) use of small amounts of an employer's resources, such as phones, faxes,
20 computers, and employee time; (3) discussion of a competing venture with other
21 employees; (4) asking customers whether work might be available for a possible
22 competing venture; (5) use of some time during work hours to prepare to compete,
23 provided the employee continues to perform his or her job responsibilities; and (6) use of
24 marketing plans, customer lists or other information learned during his or her employment
25 provided the information is not a trade secret or confidential information.

26

27 In addition, Bryant was not required to disclose his preparations to compete with Mattel or
28 his efforts to obtain different employment.    An employee is entitled to seek new

1 | employment and inform his employer once he or she has made a final decision to leave his
2 | or her current job.

3 |

4 | You may consider Bryant's intention and the surrounding circumstances in determining
5 | whether Bryant was permissibly preparing to compete or whether he breached his duty of
6 | loyalty to Mattel.

7 |

8 | **Authority:** Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord
9 | Eckard Brandes, Inc. v. Riley, 338 F. 3d 1082, 1086 (9th Cir. 2002); Western Med.
10 | Consultants, Inc. v. Johnson, 80 F.3d 1331, 1336 -38 (9th Cir. 1996); Franklin Music Co. v.
11 | Am. Broad. Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Material Supply Int'l, Inc. v.
12 | Sunmatch Indus. Co., 146 F. 3d 983, 993 (D.C. Cir. 1998); Merger Mgmt. Consulting, Inc.
13 | v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F.
14 | Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-
15 | 71 (S.D.N.Y. 1984), aff'd, 761 F. 2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F.
16 | Supp. 161 (S.D. Texas 1977); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.,
17 | Inc., 83 Cal. App. 4th 409,  424-25 (2000), overruled on other grounds by, Reeves v.
18 | Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp. v. Ferguson, 74 Cal. Rptr. 86,
19 | 92-93 (1968); Restatement (Third) of Agency Sect. 8.04 cmt. c.

20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

1  **CONSENT TO EMPLOYEE'S ACTIONS**

2

3  Mattel must also show by a preponderance of the evidence that it did not consent to

4  Bryant's conduct.   Such consent need not be explicit, but can be shown by implied

5  understandings and known customs.

6

7  **Authority:** CACI No. 4102 (2008); Restatement (Third) of Agency § 8.04 cmt. b.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY**

2

3 | Mattel must also prove by a preponderance of the evidence all facts necessary to show that

4 | Bryant's breach of the duty of loyalty was a substantial factor in causing Mattel harm

5 | during the term of Bryant's employment.   It is not sufficient to show that Mattel was

6 | harmed by Bryant's competition with Mattel after Bryant no longer was employed at

7 | Mattel.

8

9 | **Authority:** CACI No. 4102 (2008); Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57

10 | (1966); Charles T. Powner v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal.

11 | App. 347, 350-51 (1906); see also Sequoia Vacuum Sys., v. Stansky, 229 Cal. App. 2d 281,

12 | 286 (1964) (citing Daniel Orifice Fitting Co. v. Whalen, 198 Cal. App. 2d 791, 800

13 | (1962)).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**AIDING AND ABETTING BREACH OF DUTY OF LOYALTY CLAIM**

Mattel has asserted a claim for aiding and abetting breach of the duty of loyalty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

**AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

To recover on its claim for aiding and abetting, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

1. Bryant owed a duty of loyalty to Mattel;

2. Bryant breached any duty of loyalty he owed to Mattel;

3. MGA and Larian substantially assisted or encouraged Bryant in accomplishing the breach; and

4. MGA and Larian had actual knowledge of the specific wrong they substantially assisted.

As I described before, an employee does not breach a duty of loyalty by "preparing to compete" with its employer, and is under no duty to disclose to his current employer those preparations or negotiations with a competitor employer. The employee can be paid by his new employer and continue to receive salary and benefits and use office resources while performing outside work without breaching duties to his current employer. And without a

62

1 breach of duty by Bryant, MGA and Larian cannot be held liable for aiding and abetting
2 that breach.

3

4 To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA
5 and Larian not only knew of Bryant's breach but also that MGA and Larian made a
6 conscious decision to participate in wrongful activity designed to assist Bryant in his
7 breaches.

8

9 Mattel also has to show a substantial causal connection between MGA and Larian's
10 conduct and the harm to Mattel.  The "substantial assistance" requirement is inversely
11 related to the knowledge factor, which means that if Mattel has only offered a small
12 amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach of duty,
13 Mattel has to show that MGA and Larian rendered a high degree of substantial assistance
14 in Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting
15 Bryant's breach of duty.

16

17 **Authority:** <u>MJT Securities, LLC v. Toronto-Dominion Bank</u>, 2007 WL 1725421, at **7-8
18 (N.D.Cal. June 14, 2007) (elements); <u>Neilson v. Union Bank of California, N.A.</u>, 290 F.
19 Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); <u>Resolution Trust Corp. v. Rowe</u>,  1993
20 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between demonstration of
21 knowledge and substantial assistance); <u>Mendelsohn v. Capital Underwriters, Inc.</u>,  490 F.
22 Supp. 1069, 1084 (N.D. Cal. 1979) (causation); <u>Sarkes Tarzian, Inc. v. Audio Devices,</u>
23 <u>Inc.</u>, 166 F. Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach
24 duty to former employer where competitor paid at-will employee an advance and
25 employee did not disclose intention to work for competitor), <u>aff'd</u>, 283 F.2d 695 (9th Cir.
26 1960); <u>Gerard v. Ross</u>, 204 Cal. App. 3d 968, 983 (1988) (intent); <u>see also</u> <u>Richard B.</u>
27 <u>LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574 (2005); <u>Casey v. U.S. Bank Nt'l Ass'n</u>,
28 127 Cal. App. 4th 1138, 1144 (2005); <u>Fiol v. Doellstedt</u>, 50 Cal. App. 4th 1318, 1325-26

1  (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832, 846 (1994); Restatement

2  (Second) of Torts § 876.

## CONVERSION CLAIM

Mattel has asserted a claim for conversion against Carter Bryant, Isaac Larian, and MGA (HK).

I will now instruct you regarding the law as to this claim.

## CONVERSION—ELEMENTS

Mattel claims that Carter Bryant, Isaac Larian, and MGA (HK) wrongfully exercised control over Bryant's BRATZ sketches, which Mattel claims it owns under Section 2(a) of the Inventions Agreement.   In addition, Mattel claims that Carter Bryant wrongfully exercised control over a Mattel doll head and Mattel's telephones and fax machines.   To establish this claim, Mattel must prove all of the following:

1. That Mattel owned the BRATZ sketches under Section 2(a) of the Inventions Agreement and the rights to a Mattel doll head and Mattel's telephones and fax machines.;

2. That Bryant, Larian, and MGA (HK) intentionally prevented Mattel from having access to the above-mentioned items for a significant period of time, or destroyed Mattel's personal property;

3. That Mattel did not consent;

4. That Mattel was harmed; and

MGA Parties' [Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

5. That Bryant, Larian, and MGA (HK)'s conduct was a substantial factor in causing Mattel's harm.

A conversion claim must relate to tangible physical property. A conversion claim cannot be based upon property that a party has discarded.

**Authority:** CACI No. 2100 (2008); <u>Ananda Church of Self-Realization v. Mass. Bay Ins. Co.</u>, 95 Cal. App. 4th 1273, 1282 (2002); <u>see also</u> <u>Melchior v. New Line Prods., Inc.</u>, 106 Cal. App. 4th 779, 793 (2003) (conversion does not apply to ideas).

**PHASE 1 – Affirmative Defenses**

<u>**Affirmative Defenses—General**</u>

I will now instruct you on the affirmative defenses raised by Carter Bryant, MGA, Isaac Larian, and MGA (HK).  These affirmative defenses will only be considered if Mattel prevails on its claims.

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**Statute of Limitations—Explanation**

The law requires that a plaintiff file its claims within a defined period of time known as a statute of limitations or else the plaintiff may not recover any damages. Carter Bryant, Isaac Larian, MGA, and MGA (HK) contend that Mattel's claims were not filed within the time set by law. To succeed on this defense, <u>first</u> defendants must show when Mattel's claims "accrued" – that is when the statute of limitations began to run on those claims. When a claim "accrues" depends on both the claim and the identity of the defendant. As to some claims, the relevant date that the claim "accrued" is when the wrongful act occurred. As to other claims, the relevant date that the claim "accrued" is when Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place. As to each claim, I will explain the relevant date and what each defendant must prove. <u>Second</u>, defendants must show that plaintiff did not file its claims in court within the prescribed period of time after its claims "accrued."

**Authority:** CACI No. 4120 (2008); <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 807 (2005); <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal. 3d 1103, 1111 (1988).

**Mattel's Date of Filing Of Its Claims**

For purposes of the statute of limitations herein, Mattel filed its claims against MGA, MGA (HK) and Larian on November 20, 2006.  [If the Court does not accept MGA's "relation-back" arguments, then the claims against MGA would be deemed to have been filed on December 7, 2004, when MGA intervened.]  Mattel filed its non-copyright claims against Carter Bryant on April 27, 2004, and filed its copyright claim against Carter Bryant on November 20, 2006.

**Authority**:  Stipulation and Order dated December 7, 2004, at 1:10-15; United States v. Randall & Blake, 817 F.2d 1188, 1192 (5th Cir. 1987) (for statute of limitations, the date of intervention is the operative date).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

1  **Defense: Statute of Limitations (Breach of Duty of Loyalty)**

2

3  Bryant contends that Mattel's breach of duty of loyalty claim was not filed within the time

4  set by law.  To succeed on this defense, Bryant must prove that Mattel did not file its

5  claims against him within two years of the date when Mattel knew or when a reasonable

6  person would have had any reason to suspect that wrongdoing had taken place, in this case

7  when Bryant allegedly breached a duty of loyalty to Mattel.

8

9  **Authority:**  Cal. Civ. Proc. Code § 339.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defense: Statute of Limitations (Intentional Interference with Contract)**

Isaac Larian and MGA contend that Mattel's intentional interference with contract claim was not filed within the time set by law.  To succeed on this defense, Isaac Larian and/or MGA must prove that Mattel did not file its claims against them within two years of the occurrence of the acts that Mattel contends were wrongful, in this case the alleged breach of Carter Bryant's contracts with Mattel.  The claim "accrues" whether or not Mattel actually knew of the acts at the time.

**Authority:**  See Cal. Civ. Proc. Code § 339(1); Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); Charles Lowe Co. v. Xomox Corp., No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, Cal. Procedure: Actions, § 575, at 728 (4th ed. 1996).

**Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty)**

Isaac Larian and MGA contend that Mattel's aiding and abetting breach of fiduciary duty claim was not filed within the time set by law.  To succeed on this defense, Isaac Larian and/or MGA must prove that Mattel did not file its claims against them within two years of the date when Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place, in this case when Bryant allegedly breached a fiduciary duty to Mattel.

**Authority:**   Rambus Inc. v. Samsung Elecs. Co., Ltd., C-05-02298 RMW, C-05-0334 RMW, 2007 WL 39374, at *3 n.4 (N.D. Cal. Jan. 4, 2007) ("The statute of limitations applicable to the claim[] of aiding and abetting breach of fiduciary duty...is two years."), citing Cal. Civ. Proc. Code § 339.

**<u>Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty)</u>**

Isaac Larian and MGA contend that Mattel's aiding and abetting breach of duty of loyalty claim was not filed within the time set by law.  To succeed on this defense, Isaac Larian and/or MGA must prove that Mattel did not file its claims against them within two years of the date when Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place, in this case when Bryant allegedly breached his duty of loyalty to Mattel.

**Authority:**  Cal. Civ. Proc. Code § 339(1).

**Defense: Statute of Limitations (Conversion)**

Carter Bryant, Isaac Larian, and MGA (HK) contend that Mattel's conversion claim was not filed within the time set by law.

To succeed on this defense, Isaac Larian, MGA (HK), and/or Carter Bryant must prove that Mattel did not file its claims within three years of the act of wrongfully taking the property that Mattel contends was converted. The claim "accrues" whether or not Mattel actually knew of the acts at the time.

**Authority:** Cal. Civ. Proc. Code § 338(c); <u>AmerUS Life Ins. Co. v. Bank of Am., N.A.,</u> 143 Cal. App. 4th 631, 639 (2006); <u>Strasberg v. Odyssey Group, Inc.,</u> 51 Cal. App. 4th 906, 916 (1996).

**Defense: Statute of Limitations (Statutory Unfair Competition)**

Isaac Larian and MGA (HK) contend that Mattel's statutory unfair competition claim was not filed within the time set by law.

To succeed on this defense, Isaac Larian and/or MGA (HK) must prove that Mattel did not file its claims within four years of when the acts that Mattel contends constitute unfair competition occurred. The claim "accrues" whether or not Mattel actually knew of the acts at the time.

**Authority:** Cal. Bus. & Prof. Code § 17208; In re Conseco Ins. Co. Annuity Marketing & Sales Practices Litig., Nos. C-05-04726 RMW, C-06-00537 RMW, 2007 WL 486367, at *6 (N.D. Cal. Feb. 12, 2007) ("The 'discovery rule,' which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to unfair competition actions."), citing Snapp & Assocs. Ins. Servs., Inc. v. Robertson, 96 Cal. App. 4th 884, 891 (2002) (discovery rule does not apply to unfair competition claims); Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd., 909 F. Supp. 1353, 1363 (C.D. Cal. 1995) ("[T]he 'discovery rule' ... is inapplicable on this count [for statutory unfair competition]; thus, the statute begins to run when cause of action accrues, irrespective of whether plaintiff knew of its accrual"), aff'd, 113 F.3d 1258 (Fed. Cir. 1997); see also Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178-79 (2000).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**Laches: Introduction**

Isaac Larian, Carter Bryant, MGA, and MGA (HK) contend that Mattel's claims are barred because Mattel delayed unreasonably in filing suit such that the defendants were prejudiced. The legal term for the doctrine of unreasonable delay is "laches." This doctrine is based on the rule that "equity aids the vigilant." Accordingly, those who neglect their rights may be precluded from obtaining relief.

**Authority:** 11 B.E. Witkin, <u>Summary of California Law: Equity</u> § 14 (4th ed. 2006).

**Defense: Laches**

Mattel's suit against Bryant, MGA, MGA (HK), and/or Larian is barred by the doctrine of laches if you find that:

1.  Mattel's delay in filing suit was unreasonable in light of Mattel's knowledge of its claims against Bryant, MGA, MGA (HK), and/or Larian; and

2.  Mattel's delay was prejudicial to Bryant MGA, MGA (HK), and/or Larian in light of investments of time and money that MGA and/or Larian made; *or*

3.  Mattel's delay was prejudicial to Bryant, MGA, MGA (HK), and/or Larian in that substantial evidence has been lost and memories faded in the years since Mattel was first on notice of its claims.

**Authority:**   Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001) ("delay is impermissible when its purpose is to capitalize on the value of the alleged infringer's labor, by determining whether the infringing conduct will be profitable"); see also Watermark Publrs. v. High Tech. Sys., Inc., No. 95-3839-IEG (CGA), 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in suing).

**<u>Affirmative Defense – Waiver</u>**

Bryant, Larian, MGA and MGA (HK) contend that Bryant was not bound by his Employment Agreement because Mattel gave up its right to enforce its provisions including sections 2 and 3.  Bryant, Larian, MGA, and MGA (HK) also contend that Bryant was not bound by the Questionnaire because Mattel gave up its right to enforce any on-going obligations in the Questionnaire.  Mattel denies both contentions and believes that it did not relinquish such rights.

You may find that Mattel waived any right to seek damages for Carter Bryant's alleged breaches arising out of his Employment Agreement or the Questionnaire if you find that Mattel acted inconsistently with an intent to enforce its employment agreements and that a reasonable person would have believed that Mattel did not intend to enforce its employment agreements.

A waiver may be express, based on the words of the waiving party, or implied, based on conduct so inconsistent with the intent to enforce a right as to induce a reasonable belief that such right has been relinquished.  Waiver does not require any act or conduct by the other party.

To show a waiver, Bryant, MGA, MGA (HK), and/or Larian must prove that:

    1.    Mattel was aware of its employees' alleged breaches of their employment agreements; and

    2.    Mattel indicated, by its words, actions or silence that it did not intend to enforce its employment agreements.

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

1 | **Authority:**  CACI No. 336; <u>Waller v. Truck Ins. Exch.</u>, 11 Cal. 4th 1, 31 (1995); <u>see also</u>
2 | <u>Veeck v. S. Bldg. Code Congress Int'l Inc.</u>, 241 F.3d 398, 409 (5th Cir. 2001) ("A right
3 | such as copyright may be waived by inaction."); <u>Davis v. Blue Cross of N. Cal.</u>, 25 Cal. 3d
4 | 418 (1979) (carrier's inaction amounted to a waiver of its right to demand arbitration).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)