**<u>Affirmative Defense – Consent</u>**

If you find that Mattel consented to its employees moonlighting and developing their own artistic work, you must find for Carter Bryant, Isaac Larian, MGA, and MGA (HK) with respect to claims arising out of Bryant's alleged violations of his Employment Agreement.

Consent is the actual or apparent willingness for conduct of another to occur.

Actual consent may be expressed in words or acts, silence or inaction, when the circumstances or other evidence establish that the silence or inaction is intended to give consent; actual consent need not be communicated to the person taking the alleged wrongful act.

Apparent consent exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate consent, and in fact so understood by the person doing the alleged wrongful act.

**Authority:** Cal. Civ. Code § 3515; CACI No. 1302 (2008) (as modified).

## Estoppel—Definition

Whenever a party has, by his own statement or conduct, deliberately led another to believe a particular thing to be true and to act upon such belief, he is not permitted to contradict it.

To create an estoppel, Bryant, Larian, MGA, and/or MGA (HK) must prove by a preponderance of the evidence each of the following elements:

1. The party to be estopped must be apprised of the facts;

2. The party to be estopped must intend that its conduct shall be acted upon, or must act so that the other party had a right to believe it was so intended;

3. The other party was ignorant of the true state of facts, and

4. The other party relied on the conduct to its injury.

**Authority:** Cal. Evid. Code § 623; 11 B.E. Witkin, Summary of California Law, Equity § 177; Lear v. Bd. of Retirement, 79 Cal. App. 4th 427, 437 (2000); Spray, Gould & Bowers v. Associated Int'l Ins. Co., 71 Cal. App. 4th 1260, 1268 (1999); Ortega v. Pajaro Valley Unified Sch. Dist., 64 Cal. App. 4th 1023, 1044 (1998); Lemat Corp. v. Am. Basketball Ass'n, 51 Cal. App. 3d 267, 276 (1975).

## Defense: Estoppel of Copyright Claims

Carter Bryant, Larian, MGA, and MGA (HK) claim as a defense that Mattel is barred from asserting copyright claims because of its prolonged silence regarding alleged infringement and its prior conclusion that the BRATZ do not infringe on its intellectual property.

To establish this defense, Carter Bryant, Larian, MGA, and/or MGA (HK) must prove all of the following:

1.   That Mattel made a representation of fact by conduct intending that Defendant should rely on it.  Conduct is used "in its broadest meaning as including ... silence or negative omission to do anything.";

2.   That Mattel had knowledge that BRATZ potentially infringed on its intellectual property and that Carter Bryant worked for MGA;

3.   That Carter Bryant, MGA, MGA (HK), and/or Larian were ignorant of Mattel's claims of ownership of Bryant's BRATZ sketches; and

4.   That Carter Bryant, MGA, MGA (HK), and/or Larian reasonably relied on Mattel's silence to their detriment.  MGA Parties' reliance and/or Carter Bryant's reliance must be reasonable in the sense that under the circumstances, a reasonable person would have acted as defendants did.

**Authority:** HGI Associates, Inc. v. Wetmore Printing Co., 427 F.3d 867, 875 (11th Cir. 2005); Stambler v. Diebold, Inc., 1988 WL 95479, at **6, 11 U.S.P.Q. 2d 1709, 1715 (E.D.N.Y. 1988), aff'd, 878 F.2d 1445 (Fed. Cir. 1989); City of Long Beach v. Mansell, 3 Cal. 3d 462, 488 n.22 (1970).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**Defense: Estoppel of Employment Claims**

Carter Bryant, Larian, MGA, and MGA (HK) further claim as a defense that Mattel is barred from asserting claims arising out of Carter Bryant's employment agreement because Mattel allowed its employees both to moonlight and develop their own artistic works without complaint and it unreasonably delayed bringing this complaint long after it knew of the alleged infringement.

To establish this defense, Carter Bryant, Larian, MGA, and/or MGA (HK) must prove all of the following:

1.    That Mattel made a representation of fact by conduct intending that Defendant should rely on it. Conduct is used "in its broadest meaning as including ... silence or negative omission to do anything."

2.    That Mattel had knowledge that its employees were moonlighting or creating their own artistic work;

3.    That Carter Bryant was ignorant of the fact that Mattel allowing moonlighting or independent artistic work was not intended as a policy; and

4.    That Carter Bryant, MGA, MGA (HK), and/or Larian reasonably relied on Mattel's silence to their detriment. MGA Parties' reliance and/or Carter Bryant's reliance must be reasonable in the sense that under the circumstances, a reasonable person would have acted as defendants did.

**Authority:** Bender, Matthew, Cal. Forms Jury Inst., Ch. 3F, 300F.27; City of Long Beach v. Mansell, 3 Cal. 3d 462, 488 n.22 (1970).

**Defense: Acquiescence**

If you find that Mattel acquiesced to the development and marketing of Bratz, you must find for Carter Bryant, Isaac Larian, MGA and MGA (HK) with respect to claims for Bryant's alleged violations of his employment agreement. If you find that Mattel acquiesced to its employees moonlighting and development of their own artistic work, you must find for Carter Bryant, Isaac Larian, MGA and MGA (HK) with respect to claims arising out of Bryant's alleged violations of his employment agreement.

Acquiescence in error takes away the right of objecting to it.

Acquiescence exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate that the conduct is allowed, and in fact is so understood by the person doing the alleged wrongful act.

**Authority:** Cal. Civ. Code § 3516; Security Pac. Nat'l Bank v. Wozab, 51 Cal. 3d 991, 1005 (1990).

**Defense:  Abandonment (Copyright Infringement)**

Carter Bryant, Larian, MGA, and MGA (HK) contend that a Mattel cannot bring an action for copyright infringement because Mattel abandoned it claims by conducting an internal investigation and concluding that BRATZ did not infringe on its intellectual property. Mattel cannot claim ownership of a copyright if it was abandoned.   In order to show abandonment, Carter Bryant, Isaac Larian, MGA and/or MGA (HK) have the burden of proving each of the following by a preponderance of the evidence:

1.     Mattel intended to surrender ownership rights in the work; and

2.     Conduct by Mattel which was "consistent with an intent to abandon" or which "implies an abandonment".

Inaction alone does not constitute abandonment of the copyright; however, it may be a factor for you to consider in determining whether Mattel has abandoned its claims.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.19 (2007); Lopez v. Elec. Rebuilders, Inc., 416 F. Supp. 1133, 1135 (C.D. Cal. 1976); Read v. Turner, 239 Cal. App. 2d 504 (1966).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**Defense: 205(d) (Bona Fide Purchaser for Value)**

You may find that the MGA agreement with Bryant dated October 4, 2000 has priority over the Mattel agreement with Bryant dated January 4, 1999 if you find that the MGA-Bryant agreement was:

1.    Recorded with the Copyright Office first in such a manner as to give Mattel constructive notice of the transfer; and

2.    Executed in good faith; and

3.    For valuable consideration; and

4.    Without notice of an earlier transfer.

For purposes of this instruction, recordation with the Copyright Office means either (1) the filing of the transfer agreement itself, or (2) registration with the Copyright Office listing ownership by assignment.

**Authority:** 17 U.S.C. § 205(d); 2 Nimmer on Copyright § 7.16 (2007) ("[A]lthough an instrument of transfer to a first purchaser [Mattel] may be recorded prior to the time that the copyright owner purports to sell the same copyright interest to a bona fide subsequent purchaser [MGA], the latter does not have constructive notice of the first purchase if the work has not been registered at the time the subsequent purchaser acquired his interest.").

MGA Parties' [Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**Defense: Good Faith**

The good faith of Carter Bryant, Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Carter Bryant, Larian, MGA, and/or MGA (HK) acted in bad faith or with bad intent.  To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:** People v. Webb, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, Cal. Proc.: Pleadings § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**Defense:  De Minimis Use**

Carter Bryant, Larian, MGA, and MGA (HK) contend that even if Mattel can establish that it has a copyright interest in Carter Bryant's drawings, it cannot recover damages in its claim for copyright infringement because any similarities between the protectable elements of the drawings and the protectable elements of the BRATZ dolls are *de minimis*.

Even where there has been some copying, that fact alone is not conclusive of infringement. Some copying is permitted.  In addition to copying, it must be shown that this has been done to an unfair extent.  This principle reflects the legal maxim *de minimis non curat lex* (the law does not concern itself with trifles).  De minimis copying is not actionable.

If the similarities between the copyrighted work and the copied work consist only of unprotectable elements and elements in the public domain, then the copying is *de minimis* and no recovery is available.

When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.

**Authority:**    Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004); Apple Computer v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994).

**Defense:  Unclean Hands**

Carter Bryant contends that Mattel's unfair conduct bars Mattel from receiving any relief against him in this case, under the doctrine of "unclean hands."  This doctrine prevents parties who have acted unfairly or in bad faith in matters related to their claims – parties who have "unclean hands" – from using the courts to benefit from their unfair actions, even if other parties have also acted improperly.

Under the rule of "unclean hands," you should deny Mattel relief on its claims against Carter Bryant if you find that Mattel has acted unfairly or inequitably in matters related to those claims, so that it would be unfair for Mattel to prevail.

In making that decision, you can consider any type of inequitable conduct by Mattel related to its claims against Bryant, including Mattel's conduct both before and during this litigation, and its conduct towards other parties and witnesses related to its claims against Bryant.  Misconduct does not need to be criminal or illegal for you to consider it.  You can consider any type of unfair conduct that violates conscience, good faith, or other equitable standards of conduct.

**Authority:**  Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal. App. 4th 970, 979 (1999) ("[T]he misconduct need not be a crime or an actionable tort.  Any conduct that violates conscience, good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine."); Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists, 227 Cal. App. 2d 675, 728-729 (1964).

**PHASE 1(b) – Damages**

**Damages—Introduction**

You have found in favor of Mattel as to the following claims: _____. I will now instruct you as to the measure of damages for each of those claims. Damages means the amount of money that will reasonably and fairly compensate Mattel for any injury you find was caused by the Defendants.

It is for you to determine what damages, if any, have been proved. Mattel has the burden of proving damages by a preponderance of the evidence. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority:** Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007) (as modified).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

## Introduction to Contract Damages

The purpose of contract damages is to put the plaintiff in as good a position as it would have been if the defendant had performed as promised.

To recover damages for any harm, Mattel must prove:

1.    That the harm was likely to arise in the ordinary course of events from the breach of the contract; *or*

2.    That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

The damages awarded should, insofar as possible, place the injured party in the same position it would have held had the contract properly been performed, but such benefit may not exceed the benefit which it would have received had the promisor performed.

Mattel must also prove the amount of its damages according to the following instructions. Although Mattel does not have to prove the exact amount of damages, you must not speculate or guess in awarding damages.

**Authority:**   CACI No. 350 (2008) (as modified); <u>Brandon & Tibbs v. George Kevorkian Accountancy Corp.</u>, 226 Cal. App. 3d 442, 468 (1990).

**Measure of Damages—Breach of the "Inventions" Provision of the Employee Agreement**

If you have concluded that Carter Bryant breached Section 2(a) of the Employee Agreement, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach. The purpose of such damages is to put Mattel in as good a position as it would have been if Carter Bryant had performed as promised.

To recover damages for any harm, Mattel must prove:

    1.    That the harm was likely to arise in the ordinary course of events from the breach of the contract; or

    2.    That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

The damages awarded should, insofar as possible, place the injured party in the same position it would have held had the contract properly been performed, but such benefit may not exceed the benefit which it would have received had the promisor performed.

For example, if you find Carter Bryant breached section 2(a) of the Employee Agreement by failing to give Mattel three BRATZ sketches, you must award damages to compensate Mattel for the harm caused by that breach or to place Mattel in the same position it would have been if Carter Bryant had turned over those sketches to Mattel. In other words, you should award Mattel damages equal to the value of those three sketches at the time of the breach.

1  **Authority:**   CACI No. 350 (2008) (as modified); <u>Brandon & Tibbs v. George Kevorkian</u>
2  <u>Accountancy Corp.</u>, 226 Cal. App. 3d 442, 468 (1990).

1 | **Measure of Damages—Breach of the "Moonlighting" Provision of the Employee**
2 | **Agreement**
3 |
4 | If you have concluded that Carter Bryant breached Section 3(a) of the Employee
5 | Agreement, then you must now decide how much money will reasonably compensate
6 | Mattel for the harm caused by the breach.  The purpose of such damages is to put Mattel in
7 | as good a position as it would have been if Carter Bryant had performed as promised.
8 |
9 | To recover damages for any harm, Mattel must prove:
10 |
11 |     1.    That the harm was likely to arise in the ordinary course of events from
12 |     the breach of the contract; *or*
13 |
14 |     2.    That when the contract was made, both parties could have reasonably
15 |     foreseen the harm as the probable result of the breach.
16 |
17 | For example, if you find Carter Bryant breached Section 3(a) of the Employee Agreement
18 | by moonlighting for MGA or creating original artistic work for MGA, you must award
19 | damages to Mattel to compensate Mattel for the loss of Mr. Bryant's exclusive services as
20 | an employee, i.e., the amount Mattel paid Mr. Bryant during the time he also worked for
21 | MGA.
22 |
23 | **Authority:**  CACI No. 350 (2008) (as modified).
24 |
25 |
26 |
27 |
28 |

**Measure of Damages—Breach of the Conflict Questionnaire**

If you have concluded that Carter Bryant breached the Conflict Questionnaire, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach.  The purpose of such damages is to put Mattel in as good a position as it would have been if Carter Bryant had performed as promised.

To recover damages for any harm, Mattel must prove:

1.      That the harm was likely to arise in the ordinary course of events from the breach of the contract; *or*

2.      That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

For example, if you find Carter Bryant breached the Questionnaire by failing to notify Mattel that he had a conflict of interest, you must award damages for the harm caused by that breach, such as an amount equal to the salary paid to Mr. Bryant after the conflict of interest arose.

**Authority:**  CACI No. 350 (2008) (modified).

## Measure of Damages for Intentional Interference with Contract

If you have concluded that Isaac Larian, MGA and MGA (HK) intentionally interfered with _____, then you must now decide how much money will reasonably compensate Mattel for the harm caused by that interference.

To recover damages for any harm, Mattel must prove:

     1.     The financial loss resulting from the loss of the benefits of the contractual relationship; and

     2.     Consequential losses caused by the interference.

**Authority:** Restatement (Second) of Torts § 774A (1979); Di Loreto v. Shumake, 38 Cal. App. 4th 35, 38 (1995); BAJI § 7.89 (2008) (as modified).

## **Measure of Damages for Conversion**

If you have concluded that Mattel proved its claim of conversion against _____, then you must now decide Mattel's damages.

Mattel's damages are based on the fair market value of the tangible physical property at the time defendant(s) wrongfully exercised control over it.  Fair market value is the highest price that a willing buyer would have paid to a willing seller, assuming:

1.    That there is no pressure on either one to buy or sell; and

2.    That the buyer and seller know all the uses and purposes for which the tangible physical property is reasonably capable of being used.

**Authority:**   CACI No. 2102 (2008) (as modified).

97

**Measure of Damages for Breach of Fiduciary Duty**

If you have concluded that Carter Bryant breached his fiduciary duty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach. The purpose of such damages is to award Mattel damages sufficient to return it to the position it was in prior to the alleged breach.

You should award damages to compensate Mattel for the harm caused by the conduct you found to be a breach of fiduciary duty and not for harm caused by any conduct not in breach of Bryant's fiduciary duties.

For example, if you found that Bryant used Mattel resources in breach of his fiduciary duty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used. If you found that Bryant breached his fiduciary duty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA. If you found that Bryant breached his fiduciary duty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment. If you found Bryant breached his fiduciary duty by presenting the BRATZ sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:** Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v.

98

1 | Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of fiduciary duty were expenses
2 | incurred to recruit new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101
3 | (1928) (damages were profits on directly competitive sales resulting from use of
4 | employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages
5 | were commissions received while still employed); see also Design Strategies v. Davis, 384
6 | F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time
7 | employee was disloyal, and not the profits from a contract that evidence showed employer
8 | would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan.
9 | 1999) (awarding damages for value of resources including employee time used to develop
10 | competing products).

1 **Measure of Damages for Breach of Duty of Loyalty**

2

3 If you have concluded that Carter Bryant breached his duty of loyalty to Mattel, then you
4 must now decide how much money will reasonably compensate Mattel for the harm
5 caused by the breach. The purpose of such damages is to award Mattel damages sufficient
6 to return it to the position it was in prior to the alleged breach.

7

8 You must compensate Mattel for the harm caused by the conduct you found to be a breach
9 of his duty of loyalty to Mattel, and not for harm caused by any conduct not in breach of
10 Mr. Bryant's duty of loyalty.

11

12 For example, if you found that Bryant used Mattel resources in breach of his fiduciary duty,
13 you should award damages for the harm caused by the loss of those resources, that is the
14 value of those lost resources at the time they were used. If you found that Bryant breached
15 his fiduciary duty by accepting additional work from MGA, you should award damages to
16 compensate Mattel in an amount equal to the harm caused by Bryant accepting such
17 additional work from MGA. If you found that Bryant breached his fiduciary duty by
18 directly competing with Mattel while still employed at Mattel, you should award damages
19 to compensate Mattel for the harm caused by that competition during the term of his
20 employment. If you found Bryant breached his fiduciary duty by presenting the BRATZ
21 sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by
22 that breach, that is the value of the sketches at the time of the breach.

23

24 **Authority:** Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to
25 assess damage to plaintiff book publisher for the costs incurred to replace personnel
26 recruited by president and competitor using confidential information in breach of
27 president's fiduciary duty); GAB Business Services, Inc. v. Lindsey & Newsom Claim
28 Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v.

1  Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of fiduciary duty were expenses
2  incurred to recruit new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101
3  (1928) (damages were profits on directly competitive sales resulting from use of
4  employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages
5  were commissions received while still employed); see also Design Strategies v. Davis, 384
6  F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time
7  employee was disloyal, and not the profits from a contract that evidence showed employer
8  would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan.
9  1999) (awarding damages for value of resources including employee time used to develop
10 competing products).

MGA Parties' [Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty**

If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his fiduciary duty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct.

You must compensate Mattel for the harm caused by MGA's aiding and abetting of Bryant's breach of his duty of loyalty to Mattel, and not for harm caused by any conduct not in breach of Bryant's duty of loyalty.

For example, if you found that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his fiduciary duty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.   If you found that MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.   If you found that MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment.   If you found MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by presenting the BRATZ sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:** Restatement (Second) of Torts § 876 (1979); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); <u>GAB Business Services,</u>

1  Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), <u>overruled</u>
2  <u>on other grounds by</u>, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of
3  fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc.
4  v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales
5  resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347,
6  350 (1906) (damages were commissions received while still employed); <u>see also</u> Design
7  Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary
8  earned during time employee was disloyal, and not the profits from a contract that
9  evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F.
10  Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including
11  employee time used to develop competing products).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty**

2

3 | If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's
4 | breach of his duty of loyalty to Mattel, then you must now decide how much money will
5 | reasonably compensate Mattel for the harm caused by their wrongful conduct.

6

7 | You must compensate Mattel for the harm caused by the MGA's and Larian's aiding and
8 | abetting of Bryant's breach of his duty of loyalty to Mattel, and not for harm caused by
9 | any conduct not in breach of Mr. Bryant's duty of loyalty.

10

11 | For example, if you found that MGA and Larian aided and abetted Bryant's use of Mattel
12 | resources in breach of his duty of loyalty, you should award damages for the harm caused
13 | by the loss of those resources, that is the value of those lost resources at the time they were
14 | used.  If you found that MGA and Larian aided and abetted Bryant's breach of his duty of
15 | loyalty by accepting additional work from MGA, you should award damages to
16 | compensate Mattel in an amount equal to the harm caused by Bryant accepting such
17 | additional work from MGA.   If you found that MGA and Larian aided and abetted
18 | Bryant's breach of his duty of loyalty by directly competing with Mattel while still
19 | employed at Mattel, you should award damages to compensate Mattel for the harm caused
20 | by that competition during the term of his employment.  If you found MGA and Larian
21 | aided and abetted Bryant's breach of his duty of loyalty by presenting the BRATZ
22 | sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by
23 | that breach, that is the value of the sketches at the time of the breach.

24

25 | **Authority:**  Restatement (Second) of Torts § 876 (1979); Bancroft-Whitney Co. v. Glen,
26 | 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for
27 | the costs incurred to replace personnel recruited by president and competitor using
28 | confidential information in breach of president's fiduciary duty); GAB Business Services,

Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products).

**COPYRIGHT—DAMAGES (17 U.S.C. § 504)**

If you find for Mattel on its copyright infringement claim, you must determine Mattel's damages. Mattel is entitled to recover any profits of the Defendants attributable to the infringement, subject to certain exceptions I will reference in later instructions. Mattel must prove damages by a preponderance of the evidence.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 17.22 (2007) (as modified).

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))**

The copyright owner is entitled to any profits of the defendant attributable to the infringement of the protected portion of plaintiff's copyrighted work.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the profits generated indirectly from the infringement.

The defendant's profit is determined by subtracting all expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the sale of a product associated with the infringement. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the protected portion of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than copying the protected portion of the copyrighted work. Such factors include: (1) the design of the doll, (2) development of the characters associated with the doll line, (3) development of themes associated with the dolls, (4) development of fashions sold with

1  the dolls, (5) development of accessories sold with the dolls, (6) packaging in which the
2  dolls are sold, and (7) branding, marketing, and advertising efforts.

3

4  **Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 17.24 (2007) (as
5  modified).

**Choice of Alternative Methods of Determining Plaintiff's Damages**

If you determine that an award of damages is warranted by the facts and these instructions, you must select a method of damages for determining the amount of damages. Select the method that you find produces the most accurate and certain result. However, if you find that find that either of two methods produces a result that is certain and accurate and will fully compensate plaintiff, you should use the method that produces the lowest amount of damages.

**Authority:** A. A. Baxter Corp. v. Colt Indus., Inc., 10 Cal. App. 3d 144, 160 (1970).

1 **Damages—Duty to Mitigate**

2

3 The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means
4 to avoid or reduce damages.

5

6 The defendant has the burden of proving by a preponderance of the evidence:

7

8    1.    that the plaintiff failed to use reasonable efforts to mitigate damages;
9          and

10

11   2.    the amount by which damages would have been mitigated.

12

13 **Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); see also
14 CACI No. 3931 (2008).

**Nominal Damages**

The law which applies to this case authorizes an award of nominal damages. If you find for Mattel but you find that Mattel has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

**Authority:** Ninth Circuit Manual of Model Jury Instructions, Civil, 5.6 (2007).

**Plaintiff May Not Recover Duplicate Damages**

Mattel may seek damages for each of its claims.  Mattel may not, however, through its pursuit of these claims, seek damages in an amount greater than that which would compensate it for all the detriment or loss allegedly caused by wrongful conduct of the defendants.  Thus, if you determine that Mattel is entitled to recover on more than one claim, but the damages are the same on each claim, you shall award damages only on one claim.

**Authority:**   CACI No. 361 (2008); Cal. Civil Code § 3358 ("no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides"); Kurinij v. Hanna & Morton, 55 Cal. App. 4th 853, 866 (1997) (affirming jury instructions proscribing double recovery on claims arising out of the same facts).

1   **COPYRIGHT JURY INSTRUCTIONS**

2   **PHASE I-B**

3   **(ONLY AFTER PHASE I-A VERDICT)**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 1C**

**COPYRIGHT – PRELIMINARY INSTRUCTION**

As you know, Mattel seeks damages against the defendants, MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA Hong Kong"), Isaac Larian, and Carter Bryant for copyright infringement. The defendants deny that Mattel's copyrights were infringed.

Mattel's 16 copyrights are in certain sketches authored by Carter Bryant prior to his meeting with MGA on September 1, 2000. There have been references to other Carter Bryant sketches, but for purposes of your copyright analyses you may only consider the Bryant sketches covered by a Mattel copyright registration. The copyright law does not permit legal claims made on a work not covered by a copyright registration.

The alleged infringing works are the BRATZ dolls and character art of the BRATZ dolls appearing on the packaging for the BRATZ dolls and on BRATZ licensed products. Mattel asserts that the "first generation" of four BRATZ dolls (Jade, Sasha, Cloe, and Yasmin), introduced by MGA into the market in the summer of 2001, infringe Mattel's copyrights in the 16 Bryant sketches. Mattel further asserts that by virtue of showing infringement in the "first generation" BRATZ dolls it has shown copyright infringement by all subsequent BRATZ dolls.

The defendants deny that there has been any copyright infringement. They assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls. Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and

114

1  other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and

2  artists who developed the first generation BRATZ dolls used their significant experience

3  and talents to independently create their own original, different and more marketable 3-

4  dimensional doll.

5

6  The defendants also assert that the Mattel copyrights are very limited in scope because the

7  16 Bryant sketches portray dolls that are based in large part on non-original elements such

8  as standard features of human anatomy and non-copyrightable elements such as

9  conventional hairstyles, face make-up, shoes and clothing.  They assert that because the 16

10 Bryant sketches are only entitled to limited copyright protection, the "first generation"

11 BRATZ dolls were not "substantially similar" to the "protectible elements" in Bryant

12 sketches owned by Mattel, and do not infringe any limited copyrights in those sketches.

13

14 The defendants further assert that subsequent BRATZ dolls had the same and additional

15 dissimilarities, and were even further removed from any "protected expression" in the

16 Bryant sketches, and accordingly also did not infringe copyrights in those sketches.  They

17 similarly deny that the BRATZ character art infringes the Bryant sketches.

18

19 I just referred to a number of legal terms such as "copying," "substantial similarity," and

20 "protected expression."  I will now explain these and other legal terms to you.

21

22 **Authority**: Ninth Circuit Manual of Model Jury Instructions 17.0 (2007).

23

24

25

26

27

28

1 **ALTERNATE:    INSTRUCTION NO. 1C**

2

3 [Defendants reserve the right to modify all of their proposed instructions relating to
4 copyright issues to conform to the jury's findings in Trial 1A if the jury finds that fewer
5 than 16 of the Bryant sketches are owned by Mattel. The following is an example.]

6

7 In the Phase 1A trial Mattel asserted that it owned copyrights in a total of 16 of Carter
8 Bryant's sketches prepared by Bryant prior to September 1, 2000.  In Phase 1A, you
9 determined that Mattel owned a total of [XX] of these Bryant sketches, and that Mattel did
10 not own [YY] of the sketches.  The [YY] sketches not owned by Mattel were assigned by
11 Bryant to MGA, and thus are owned by MGA.

12

13 In assessing Mattel's claims of copyright infringement of the [XX] sketches that you
14 determined it owns, you must also consider the sketches owned by MGA.  MGA has every
15 right to use the Bryant sketches it owns, and the expression in those sketches.  Thus, if
16 Mattel relies on original expressive elements of one of the Bryant sketches that Mattel
17 owns, but those same elements are also found in one of the sketches owned by MGA, then
18 you must disregard those elements, because they cannot support Mattel's claims of
19 copyright infringement.

20

21 The Bryant sketches owned by MGA were created earlier than the Bryant sketches you
22 determined that Mattel owns.  Accordingly, as between the two, MGA has superior rights.
23 For this reason, if any Bryant sketch owned by Mattel is substantially similar (I will
24 explain what this means in a few minutes) to a sketch owned by MGA, then Mattel cannot
25 rely on that sketch in connection with its copyright infringement claims against MGA.
26 Mattel thus bears the burden of proving by a preponderance of the evidence that the Bryant
27 sketches it relies on are not substantially similar to the Bryant sketches owned by MGA.

28

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

[Include other aspects of 1C above as appropriate based on the Phase 1A verdict.]

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**INSTRUCTION NO.  2C**

**COPYRIGHT – DEFINED**

Copyright is the exclusive right to copy. This right to copy includes the exclusive right to:

1.   Authorize or make additional copies, or otherwise reproduce the copyrighted work;

2.   Recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

3.   Distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

4.   Display publicly a copyrighted pictorial work or graphic work.

It is the owner of a copyright who may exercise these exclusive rights.  [Here, in the Phase I-A trial, it was determined that Mattel is the "owner" of the Bryant sketches as a result of the transfer provisions of Bryant's employment agreement.]

In general, copyright law protects against reproduction, adaptation, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in a lawsuit for copyright infringement.

Mere possession of a copyrighted work does not constitute infringement.  That Carter Bryant and MGA had possession of Mr. Bryant's physical sketches, and made reference to them, is not copyright infringement, just like a person who possesses a book has not

118

1  infringed the copyright of the book's publisher or author.  [Lapham v. Porach, 2007 U.S.
2  Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).]

3

4  Further, a defendant's contribution of non-infringing fashions, accessories, or other
5  materials to a BRATZ doll does not constitute copyright infringement even if you find that
6  the BRATZ doll itself infringes Mattel's copyright.  You must consider each defendant's
7  acts separately to determine whether that defendant has engaged in an act that is an
8  infringement of Mattel's copyrights.

9

10  **Authority**: Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106;
11  2-8 Nimmer on Copyright §§ 8.01–8.20; 3 Patry on Copyright §§ 8:1, 9:2; 12-76 Nimmer
12  on Copyright § 12.04[A][1].

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 **INSTRUCTION NO.  3C**

2 **COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION**

3

4 Copyright law allows the author of an original work to prevent others from copying the
5 tangible expression the author used to express the ideas in the author's work.  Only the
6 particular original expression of an idea can be copyrighted, and the right to exclude others
7 applies only to this original expression.  An author cannot prevent others from copying or
8 using aspects of his work which were derived from other sources, such as the work of
9 other artists.

10

11 Copyright law protection does not extend to any idea, procedure, process, system, method
12 of operation, concept, principle or discovery, regardless of the form in which it is
13 described, explained, illustrated, or embodied.  Particularly relevant here is the limitation
14 that an author cannot prevent others from copying or using ideas or concepts contained or
15 reflected in the work or that inspired the work; to do so would inhibit full and free
16 exchange of information and hinder, rather than promote the creation of new works of
17 authorship, which is the goal of the copyright system.

18

19 The right to exclude others from copying also extends only to the particular way the author
20 expressed the ideas in the copyrighted work.

21

22 Common or standard treatments of the subject matter are also not protected by copyright.
23 Even though they are forms of expression, they lack sufficient originality to be protected.
24 These are often referred to in copyright law as "scenes a faire," taken loosely from the
25 French for "things which must be done."  In other words, basic ideas or treatments "remain
26 forever the common property of artistic mankind."  [Berkic v. Crichton, 761 F.2d 1289,
27 1293-94 (9th Cir. 1985).]

28

1  Let me give you an example from the world of T.V. screen-plays.  A television show about
2  a police station in a high crime area will inevitably have standard stock features, such as a
3  precinct house, various levels of police employees from a captain down to the beat officers,
4  criminal suspects who are apprehended, defense lawyers, prosecutors, etc.  Such standard
5  plot lines and features may be thought of as creative expression, but no one can claim
6  ownership or exclusive rights to them, and no one T.V. show can accuse another of
7  violating a copyright by allegedly copying and using such standard features in a second
8  show.  [Walker v. Time Life. Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986).]

9

10  As another example, in the world of theatre, devices that are standard plot lines, and are
11  therefore not protectible, include the controlling mother-in-law, the lipstick stained
12  handkerchief, and the butler bent on murder.  All authors can use these common plot
13  devices.

14

15  Also unprotected is expression in the copyrighted work that reflects expression already in
16  the public domain, and therefore free for all to use.

17

18  To give one illustration in the context of a doll, "[a]n upturned nose, bow lips, and wide
19  eyes are the 'idea' of a certain type of doll face," and this idea does not belong to any one
20  company but rather is in the public domain.   [Mattel, Inc. v. Goldberger Doll
21  Manufacturing Co., 365 F.3d 133, 136 (2d Cir. 2004).]

22

23  For another illustration, a 5 ½ inch Warlord doll does not infringe upon a 5 ½ inch Masters
24  of the Universe doll because, though the dolls look remarkably similar, the similarities are
25  all attributable to the unprotectible idea of a superhuman muscleman crouching in a
26  traditional fighting pose.  [Mattel, Inc. v. Azrak-Hamway Int'l Inc., 724 F.2d 357, 360 (2d
27  Cir. 1983).]

28

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

1    These unprotected elements of a work, ideas and concepts, scenes a faire, and unoriginal
2    material, often overlap and are not always easy to separate into categories.  Nevertheless,
3    they are not protected by copyright, and must be disregarded when comparisons between
4    the Bryant sketches and the BRATZ dolls are made.
5
6    To state it another way, your analysis must be limited to expressive elements in the 16
7    sketches covered by Mattel's copyrights that were originally contributed solely by Carter
8    Bryant.
9
10   **Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); 4-13 Nimmer
11   on Copyright § 13.03[B]; Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir.
12   1994); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988); see also Mattel v.
13   Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004); Idema v. Dreamworks, Inc.,
14   162 F. Supp. 2d 1129 (C.D. Cal. 2001).
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

## INSTRUCTION NO.  4C

## COPYRIGHT INTERESTS – AUTHORSHIP

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.  In this case, Carter Bryant is the author of the 16 sketches, [and Mattel is the owner of the copyright in those sketches by assignment, as was decided in the Phase I-A trial.]

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.6 (2007).

**INSTRUCTION NO. 5C**

**COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION**

In this lawsuit, it is not disputed that portions of the 16 Bryant sketches contain sufficient original elements to be protected by copyright. However, I must caution you that the amount of creative expression that is required for copyright protection is extremely low.

In addition, the Copyright Office does not investigate the originality or uniqueness of a work and it does not determine the validity of the claim to copyright protection in issuing a Certificate of Registration for a work. Accordingly, the mere fact that the Bryant sketches were accepted by the Copyright Office for registration does not determine the degree, scope, or amount of original, protected expression in the sketches. In addition, the protection afforded by the registration is limited to the specific protectible expression included in the material deposited with the Copyright Office, in this case the Bryant sketches.

Finally, a Certificate of Registration obtained more than 5 years after the first publication of the work covered by that registration is not entitled to a presumption either of copyright protection or that the registration is valid.

**Authority**: Feist Publications, Inc. v. Rural Telephone Services, Inc., 499 U.S. 340, 346 (1991) ("a modicum of creativity"); see also Expert Report of Ralph Oman, dated Feb. 25, 2005, in Team Play, Inc. v. Boyer, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); Ninth Circuit Manual of Model Jury Instructions 17.5 (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii).

**INSTRUCTION NO. 6C**

**COPYRIGHT INFRINGEMENT – COPYING**

In order to prevail on its claim of copyright infringement, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.     "Factual copying" — that in creating the BRATZ dolls, MGA actually copied the Bryant drawings in the BRATZ dolls.

2.     "Legal copying" — that even if copied, the amount of protected expression taken from the Bryant drawings and found in the BRATZ dolls satisfies the legal standards necessary to show copyright infringement. This requires proof by Mattel of what is called "substantial similarity" to the level of "virtual identity."

3.     If you find that Mattel has proven both of these elements, your verdict should be for Mattel on the issue of copyright infringement.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants on the issue of copyright infringement.

**Authority**:   BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007); 4-13 Nimmer on Copyright §§ 13.03[A] & [D] (2008).

**INSTRUCTION NO. 7C**

**COPYRIGHT INFRINGEMENT – FACTUAL COPYING**

"Factual copying" means that the defendant did not independently create the challenged work.

Where as here the defendants assert independent creation, the plaintiff can establish factual copying:

- through direct evidence of copying; or

- by showing that the defendant had access to the plaintiff's work and that the works have a high degree of similarity, referred to as "probative similarity."

Here, MGA does not dispute that it had access to the Bryant sketches when it began to develop the BRATZ dolls. However, defendants do dispute that there was copying, and they dispute that there is sufficient "probative similarity" to establish factual copying.

Mattel asserts that there is evidence that MGA directly and intentionally copied the Bryant sketches.

Defendants deny this and they assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls. Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and artists who developed the first

generation BRATZ dolls used their significant experience and talents to independently create their own original, different and more marketable 3-dimensional doll. The defendants further assert that the designs of the subsequent BRATZ dolls were also independently created and were even further removed from any "protected expression" in the Bryant sketches.

In determining factual copying, you should weigh all the evidence keeping in mind that Mattel bears the burden of proving that MGA copied the Carter Bryant sketches in the BRATZ dolls.

**Authority:**  BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. Lexis 60544 at **8–10 (S.D. Cal. Aug. 16, 2007); Sobhani v. @radical.media, Inc., 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003); Miller v. Miramax Film Corp., 2001 U.S. Dist. LEXIS 25967, at **31–32 (C.D. Cal. Sept. 26, 2001); 4-13 Nimmer on Copyright § 13.03[D] (2008).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**INSTRUCTION NO. 8C**

**COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY**

If you conclude that Mattel did not meet its burden of proving factual copying, you must find for defendants on the issue of copyright infringement.  If you conclude that Mattel has met its burden of proving factual copying, then you must move on to the next element of copyright infringement, "legal copying."

Mattel must prove that MGA copied sufficient original and protectible elements from Bryant's sketches to establish "legal copying."  As I will explain shortly, using what are known as the "extrinsic" and "intrinsic" tests, you must determine what, if any, protectible expression is present in each of the Bryant sketches and compare the protected expression in a particular sketch to the BRATZ dolls.   Unless a sufficient amount of protected expression from a sketch was copied in the BRATZ dolls, Mattel's claim of copyright infringement fails.

In other words, legal copying is an essential element of copyright infringement independent of factual copying.  To go back the T.V. screenplay example, the creators of "Law and Order" could have intended to copy certain features of "Hill Street Blues," "N.Y.P.D. Blue," or "Perry Mason," and certainly their access to these earlier shows would be easy to establish.  But, unless a sufficient amount of protected expression was copied (i.e., expression that is original to one of these shows, and is not ideas, concepts, scenes a faire or public domain expression), there would be no copyright infringement.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.15 (2007); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Bensbargains.Net v.

XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).

MGA Parties'[Proposed] Disputed Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

**INSTRUCTION NO. 9C**

**COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST**

To determine whether the BRATZ dolls infringe Mattel's copyrights in the Bryant sketches, you must engage in a two-step analysis. The first step is called the "extrinsic" test. If necessary, this is followed by the second step of the analysis, which is called the "intrinsic" test. [Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001).]

Stated generally, the "extrinsic" test considers whether two works share substantial similarity of ideas and expression as measured by external, objective criteria, while the "intrinsic" test considers whether a reasonable person (or in this case, a discerning 8-12 year old girl) would perceive a substantial similarity in the "total concept and feel" of each work, bearing in mind that ideas and concepts and general stylistic features are not protectible under copyright law. [Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (N.D. Cal. 2007) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442–43 (9th Cir. 1994)).]

You should keep in mind that what is required to find infringement is not simply general "similarity" of the works but "substantial similarity" of protected elements of those works. [Id.; Berkic v Crichton, 761 F.2d 1289, 1293–94 (9th Cir 1985).]

I will explain each of these tests in turn.

EXTRINSIC TEST

The "extrinsic" test removes from the analysis of infringement those elements of the copyrighted work that are not entitled to copyright protection. The party claiming

130

1  infringement cannot rely on any similarity in expression resulting from unprotectible
2  elements. [Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).]
3
4  As I have already explained, the following elements of an original copyrighted work are
5  not entitled to protection under copyright law:
6
7  • Ideas and concepts.
8
9
10  • Common features that are standard or essential to the expression of a given idea,
11    called "scenes a faire."
12
13  • Expression that is not original to the author (in this case Mr. Bryant), such as pre-
14    existing expression that influenced the author consciously or even subconsciously.
15
16  This is a general list of the common unprotected categories.
17
18  The process of applying the extrinsic test is referred to as "analytic dissection" because
19  you need to isolate the elements of the copyrighted work and analyze each one separately,
20  excluding the other elements present in the work and the combination of elements. [See,
21  e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir.
22  1997); Lanard Toys, 511 F. Supp. 2d at 1037–38.] It is also referred to as "filtering"
23  because you need to filter out all of the unprotected elements. [See, e.g., Zella v. E.W.
24  Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007); Brookhaven Typesetting Servs.
25  v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at *22 (N.D. Cal. Aug. 24, 2007).]
26
27  You should apply the extrinsic test as follows:
28

1   *First*, identify those elements in the Bryant sketches that Mattel claims are the expression
2   copied by MGA in the BRATZ dolls.  Mattel has the burden of identifying which specific
3   elements of its works have been copied.

4

5   *Second*, you should determine which of those elements are entitled to copyright protection
6   and which are not.  In other words, you must filter out from each of the 16 Bryant sketches
7   all ideas, all scenes a faire, and all public domain expression that was not original to Mr.
8   Bryant.  Mattel has the burden of proving which elements in each of the Bryant sketches
9   are entitled to protection.

10

11   I will give you a few examples to illustrate the process of filtering.

12

13   It goes without saying that common physical features of a teenage girl are not protectible,
14   as they are the features found in real-life teenage girls and depictions thereof.  Such
15   features could be considered an idea, or even a fact, and therefore they must be filtered out.
16   This would apply to things found in nature such as the presence of heads, 2 ears, lips, hair,
17   2 arms, legs, standard body proportions, etc. in the sketches.  While the particular
18   expression and unique arrangement of all of these features can be protected by copyright,
19   the mere presence of those features as found in nature cannot.

20

21   That the figures in the sketches display fashions, shoes and accessories, by itself, is not
22   protected because the use of fashions, shoes and accessories are "scenes a faire," or
23   standard or common features, in the genre of fashion dolls.  Also, the "style" or general
24   "look" of fashion dolls are not copyrightable.  Nor are conventional cosmetic techniques
25   and looks.  Moreover, the design of particular clothing as used on fashion dolls is not
26   protectible by copyright.

27

28

1  This is another similarity that cannot be counted, so the BRATZ dolls have to be compared
2  to the Bryant sketches without considering the dolls' clothes.  Similarly, hair, hair styles
3  and hairdos cannot be protected because on these fashion dolls the hair is meant to be
4  played with and changed by the target consumers.

5

6  MGA asserts that Carter Bryant's sketches show a group of four contemporary "sassy" or
7  "bratty" teenage friends of diverse ethnic backgrounds and a "funky urban hip" attitude
8  and style as the basis for a line of fashion dolls.  MGA asserts that all of this is a concept
9  or idea, and is thus not protected by copyright.  If you agree with MGA's position, then the
10  idea and concept of such a line of fashion dolls must be filtered out of any subsequent
11  analysis of claimed similarities.

12

13  MGA also asserts that the oversized heads, eyes, feet and lips in the sketches are not forms
14  of expression original to Carter Bryant's sketches, but rather simply reflected common
15  expression that can be found in other dolls, fashion advertisements, and artwork.  If you
16  agree with that contention, then you must "filter out" these elements in connection with
17  your subsequent analysis regarding substantial similarity, because the use of oversized
18  heads, eyes, feet and lips in the sketches was not original to Mr. Bryant.

19

20  The parties and their witnesses and experts will point to many other such issues, asserting
21  that features or elements should, or should not, be filtered out.  You are to determine
22  which, if any, of these features and elements should properly be filtered out in connection
23  with your subsequent analysis regarding substantial similarity.

24

25  Once you have dissected and filtered the Bryant sketches, you are ready to compare the
26  individual elements remaining in a particular sketch that you determine to be protectible
27  with the corresponding elements in the BRATZ dolls.  As the parties disagree with what
28

1 are, and what are not, the similarities between the two, you must next determine what
2 those similarities are.

3

4 The burden is on Mattel to show by a preponderance of evidence the similarity of each
5 element in the sketches you determine to be protectible. In considering the extrinsic test,
6 you may take into account the testimony of experts called by each party.

7

8 Now comparing the items in the BRATZ dolls that you find to be similar to the protected
9 elements of expression in a particular Bryant sketch owned by Mattel, you should
10 determine whether Mattel has shown by a preponderance of the evidence that the two
11 works are substantially similar. If you do not so find, then you must find for MGA and
12 Bryant on the claim of copyright infringement.

13

14 If you do find substantial similarity under the extrinsic test, then you turn to the next step
15 of the analysis, the "intrinsic" test.

16

17 <u>BROAD OR THIN PROTECTION</u>

18

19 Before proceeding to apply the "intrinsic" test, you must make an important preliminary
20 determination: the correct standard to apply. The appropriate standard for the intrinsic
21 test depends on the scope of copyright protection in a work. In this case, you must
22 determine the scope of copyright protection in each of Mr. Bryant's sketches asserted by
23 Mattel against MGA.

24

25 The analytic dissection and filtration you previously performed in connection with the
26 extrinsic test also allows you to determine whether the sketches are entitled to "broad" or
27 "thin" copyright protection. The sketches will be entitled to "broad" protection if you find
28 that they are highly original and reflect a high degree of artistic judgment in a medium

1  offering a broad range of creative choice. The threshold for infringement in such works is
2  substantial similarity of original protected expression.

3

4  On the other hand, if you find that the sketches include only a few protectible elements, or
5  are in a medium in which the effective range of creative expression is limited, then the
6  sketches are only entitled to "thin" protection.  In that case, you can find infringement only
7  if the dolls are virtually identical to original protected expression in any protected sketch
8  examined as a whole.   [Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Cosmos
9  Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1084 (C.D. Cal. 2006) (citing
10 Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994)).]

11

12 The burden of proving that the Bryant sketches are entitled to broad protection is on Mattel.

13

14 INTRINSIC TEST

15

16 The second step of the infringement analysis, the "intrinsic" test, involves a subjective
17 comparison of the protectible aspects of the "works as a whole."  [Apple Computer, Inc. v.
18 Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994).]

19

20 In this evaluation, you should not consider the unprotectible elements that you filtered out
21 as part of the extrinsic test analysis.  [Cavalier v. Random House, Inc., 297 F.3d 815, 822
22 (9th Cir. 2002); Robert C. Lind, Copyright Law (3d ed. 2006) at 173.]

23

24 The intrinsic test is determined from the perspective of an ordinary, reasonable observer.
25 [Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).]  Because girls of the age 8-12 are
26 the core intended market for the BRATZ dolls, you should consider such consumers as the
27 ordinary, reasonable observers.  [Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir.
28

1  1987).]   In other words, you should perform the intrinsic test through the eyes of a
2  discerning 8-12 year old girl who would be a likely user of BRATZ dolls.

3

4  The testimony of experts is not to be considered in your evaluation of the intrinsic test.

5

6  The appropriate standard for the intrinsic test depends on the scope of copyright protection
7  in a work.  If you determine that the Bryant sketches are highly original and are entitled to
8  "broad" copyright protection, infringement under the "intrinsic" test may be found if the
9  ordinary, reasonable person (the 8-12 year old girl) would find the "total concept and feel"
10  of the two separate works to be substantially similar, bearing in mind that ideas, concepts,
11  and style are not protectible.   However, if you determine that the Bryant sketches are
12  entitled only to "thin" copyright protection because a large amount of expression has been
13  filtered out as a result of the application of the extrinsic test, MGA may only be found
14  liable for infringement if you determine that the sketches and dolls are "virtually identical"
15  to original protected expression of any protected sketch viewed as a whole.   [Satava v.
16  Lowry, 323 F.3d 805, 812 (9th Cir. 2003).]

17

18  Mattel bears the burden of proving by a preponderance of the evidence that the Bryant
19  sketches are entitled to broad protection under the intrinsic test.  If Mattel should fail to
20  meet that burden, you must apply the "virtual identity" test for "thinly protected" works.
21  The "virtual identity" test means just what it says:  the BRATZ dolls must be virtually
22  identical with respect to any elements that you find to be protectible in a particular Bryant
23  sketch for there to be infringement under the intrinsic test.

24

25  Then, applying one of these two tests – substantial similarity for broad works, or virtual
26  identity for thin works – you will determine if Mattel has met its burden of proving
27  infringement under the "intrinsic" test.  If Mattel has not met its burden under the intrinsic
28  test, then you must find for the defendants on the copyright infringement claims.

1

2  **Authority**:  Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Apple Computer, Inc. v.

3  Microsoft Corporation, 35 F.3d 1435, 1447   (9th Cir. 1994); Frybarger v. Int'l Bus.

4  Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008

5  U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Idema v. Dreamworks, Inc., 162 F.

6  Supp. 2d 1129, 1176 (C.D. Cal. 2001).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO.  10C**

**COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK**

The Bryant sketches are 2-dimensional works, while the BRATZ dolls are 3-dimensional works.  While those facts may complicate your analysis under the extrinsic and intrinsic tests, the copyright in a 2-dimensional work can be infringed by a 3-dimensional work. However, the copyright in a 2-dimensional work only covers what is shown on the face of the work.  For example, if a Bryant sketch only shows the front view of a figure, the copyright does not cover the rear or side view of that figure, or anything else that is not specifically visible in that particular sketch.  Whether in this case the BRATZ dolls (3-dimensional works) infringe the Bryant sketches (2-dimensional works), is for you to decide, using the two-part analyses already described.

**Authority**: 1-2 Nimmer on Copyright § 2.08(C)(2).

**INSTRUCTIONS NO. 11C**

**COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**

Even if Mattel proves that MGA had access to the 16 Bryant sketches and that particular Bratz dolls are substantially similar to certain of these sketches, this only creates a presumption of illegal copying. MGA may rebut that presumption with evidence that the Bratz dolls are the product of independent creation, and were not copied from the 16 Bryant sketches. If MGA presents evidence of independent creation, then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches.

**Authority**:  Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311 (E.D. Pa. 2000).

**INSTRUCTION NO.  12C**

**COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS**

Mattel has based its copyright claims on 16 separate copyright registrations, each one registering a different Carter Bryant sketch.  Each of these sketches is only entitled to copyright protection for the original expression contained in the particular sketch.  Mattel cannot extend or enhance its rights by treating two or more of the sketches as a compilation or as a unified work.   In other words, Mattel cannot pick and choose characteristics from more than one of these sketches to search for alleged similarities with a single BRATZ doll.  Each individual sketch must be judged based on its own protectible content in a comparison with a particular one of the allegedly infringing BRATZ dolls.

This means that in determining whether Mattel has met its burden of proving infringement, you must separately analyze each of the 16 sketches covered by a Mattel copyright under both the extrinsic and intrinsic tests.  As an example, you may not combine the design of facial features from one Bryant sketch with the body proportions from another Bryant sketch, and then evaluate whether the BRATZ dolls are substantially similar to this combination.

**Authority**: Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); see also Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995) ("Plaintiff cannot pick and choose characteristics from any number of characters in his work to search for alleged similarities with a single character in defendants' work."); 9 Patry on Copyright § 9:66 (2008).

**INSTRUCTION NO. 13C**

**DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT**

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant sketches, you may consider Mattel's claims that Isaac Larian vicariously infringed those copyrights. Mattel has the burden of proving each of the following by a preponderance of the evidence with respect to each of them:

      1.    That Mr. Larian profited directly from the infringing activity of MGA or MGA Hong Kong;

      2.    That Mr. Larian had the right and ability to supervise the infringing activities of MGA and MGA Hong Kong; and

      3.    That Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel as to the individual defendant if you also find that MGA or MGA Hong Kong infringed Mattel's copyright. If, on the other hand, Mattel has failed to prove any of these elements with respect to Isaac Larian, your verdict should be for Mr. Larian.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.20 (2007).

**1** **INSTRUCTION NO. 14C**

**2** **DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT**

**3**

**4** A defendant may be liable for copyright infringement engaged in by another if he knew or
**5** had reason to know of the infringing activity and intentionally induces that infringing
**6** activity.

**7**

**8** If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant
**9** sketches, you may proceed to consider Mattel's claims that Isaac Larian and Carter Bryant
**10** contributorily infringed those copyrights.  To prove contributory copyright infringement,
**11** Mattel must prove both of the following elements by a preponderance of the evidence with
**12** respect to each of them:

**13**

**14**          1.     That Mr. Larian or Mr. Bryant knew or had reason to know of the
**15** infringing activity of MGA or MGA Hong Kong; and

**16**

**17**          2.     That Mr. Larian or Mr. Bryant intentionally induced MGA or MGA
**18** Hong Kong's infringing activity

**19**

**20** If you find that MGA or MGA Hong Kong infringed Mattel's copyright, and you also find
**21** that Mattel has proved both of these elements as to the individual defendant, your verdict
**22** should be for the Mattel.  If, on the other hand, Mattel has failed to prove either of these
**23** elements, your verdict should be for Mr. Larian or Mr. Bryant, or both of them.

**24**

**25** **Authority**: Ninth Circuit Manual of Model Jury Instructions 17.21 (2007).

**26**

**27**

**28**

**INSTRUCTION NO.  15**

**DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT**

To determine whether or not Mr. Bryant or Mr. Larian contributorily infringed Mattel's copyrights (according to the preceding instruction), you must consider whether Mr. Bryant or Mr. Larian intended to induce MGA and MGA Hong Kong's infringing activities.  Mr. Bryant or Mr. Larian cannot be liable for another'' infringement if he did not act with the desire or purpose of intentionally inducing that infringement.  Mere awareness that potential infringing activity might result is not enough.

**Authority:**  Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931-33 (2005); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996).