1  Larry McFarland (Bar No. 129668)
   Christian Dowell (Bar No. 241973)
2  KEATS, McFARLAND & WILSON LLP
   9720 Wilshire Blvd.
3  Penthouse Suite
   Beverly Hills, CA 90212
4  Telephone:   (310) 248-3830
   Facsimile:    (310) 860-0363
5  Email:   lmcfarland@kmwlaw.com
            cdowell@kmwlaw.com
6

7  Attorneys for Margaret Hatch-Leahy
   and Veronica Marlow
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No.: CV 04 – 09049 SGL (RNBx)<br>Consolidated with Case Nos.<br>CV 04-9059 and CV 05-2727<br><u>Hon. Stephen G. Larson</u> |
| Plaintiff,<br>v. | |
| MATTEL, INC., a Delaware corporation; | MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW |
| Defendant. | |
| AND RELATED ACTIONS. | |
| | Hearing Date:   June 16, 2008<br>Time:              10:00 a.m.<br>Place:             Courtroom |

26

27

28

1

# **TABLE OF CONTENTS**

2

3  I.      INTRODUCTION ................................................................................1

4  II.     STATEMENT OF FACTS....................................................................2

5          A.    Margaret Leahy ........................................................................4

6          B.    Veronica Marlow ......................................................................9

7  III.    ARGUMENT......................................................................................12

8          A.    The Discovery Master's Ruling Denying An Additional Review of

9                Margaret Leahy's Computer Was Proper. ...............................13

10               1.    Margaret Leahy Has Fully Complied with Her Discovery

11                     Obligations and There is No Basis for An Additional Review. ....13

12         B.    The Discovery Master's Ruling Denying An Additional Review of

13               Veronica Marlow's Computer Was Proper...............................17

14               1.    Veronica Marlow Has Fully Complied with Her Discovery

15                     Obligations and There is No Basis for An Additional Review. ....18

16         C.    The Privacy Interests of the Non-Parties are Relevant and Outweigh

17               Mattel's Interest in Further Review. .......................................20

18 IV.     CONCLUSION ..................................................................................23

19

20

21

22

23

24

25

26

27

28

i

1

# <u>**TABLE OF AUTHORITIES**</u>

2

3

**Cases**

4

<u>Caylon v. Mizuho Sec. USA Inc.</u>,

5

    No. 07CIV02241RODF, 2007 WL 1468889, at *3 (S.D.N.Y. May, 28, 2007)........ 19

6

<u>Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.</u>,

7

    649 F.2d 649 (9th Cir. 1980) ...................................................................... 23

8

<u>Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.</u>,

9

    2007 WL 1726558, at *9 (D. Nev. 2007) ...................................................... 19

10

<u>Floeter v. City of Orlando</u>,

11

    No. 6:05-cv-400-Orl-22KRS, 2006 WL 1000306, at *3

12

    (M.D. Fla. Apr. 16, 2006) ........................................................................ 20

13

<u>Kelly v. City of San Jose</u>,

14

    114 F.R.D. 653 (N.D. Cal. 1987).................................................................. 22

15

<u>McPeek v. Ashcroft</u>,

16

    202 F.R.D. 31 (D.D.C. 2001) ..................................................................... 20

17

<u>Moon v. SCP Pool Corp.</u>,

18

    232 F.R.D. 633 (C.D. Cal. 2005).................................................................. 23

19

<u>Peskoff v. Faber</u>,

20

    240 F.R.D. 26, 31 (D.D.C. 2007) ................................................................. 20

21

<u>Powers v. Thomas M. Cooley Law School</u>,

22

    2006 WL 2711512, *5 (W.D. Mich. 2006) ................................................... 20

23

<u>Rivera v. NIBCO, Inc.</u>,

24

    364 F.3d 1057(9th Cir. 2004) ..................................................................... 12

25

<u>Superior Consultant Co. v. Bailey</u>,

26

    2000 WL 1279161, at *13 (E.D. Mich. August 22, 2000) .................................5, 7

27

28

1

## TABLE OF AUTHORITIES CONTINUED

2

3    Valley Bank of Nevada v. Superior Court,

4        15 Cal.3d 652 (1975) ................................................................ 22

5    **Other Authorities**

6    Cal. Const., Art. I, §1 ................................................................ 22

7    Moore's Federal Practice § 37A.44[3][b] (3d ed. 2007) ............................................. 21

8    **Rules**

9    Fed. R. Civ. P. 26(b)(2). ................................................................ 22

10   Fed. R. Civ. P. 34 ................................................................ 5, 19

11   Fed. R. Civ. P. 34(a)(1) ................................................................ 18

12   Fed. R. Civ. P. 34 and 45 ................................................................ 5

13   Fed.R.Civ.P. 72(a) ................................................................ 12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Non-parties Margaret Hatch-Leahy and Veronica Marlow (collectively, the "Non-Party Witnesses") hereby respectfully submit this Opposition ("Opposition") to Mattel, Inc.'s Motion Objecting to Portions of The Discovery Master's April 11, 2008, Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow ("Motion").  The Non-Party Witnesses respectfully request that the Court deny Mattel's Motion.

I.    **INTRODUCTION**

The parties have briefed the subject of Mattel's Motion previously in papers dealing with Mattel's Ex Parte Application to (1) Compel Production of Electronic Media from Third-Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow or (2) in the Alternative, Modify the Scheduling Order ("Ex Parte Application").  The Ex Parte Application was filed by Mattel with this Court and was in turn, denied. Following the Court's denial, Mattel filed the Ex Parte Application as a regularly noticed motion before Judge Infante, who also denied Mattel's request with respect to Margaret Hatch- Leahy and Veronica Marlow.  Now, Mattel is bringing this issue to the Court's attention yet again, making the same arguments that were previously found to be unpersuasive.  Indeed, the only change in the facts since Judge Infante's denial weighs further in favor of the Discovery Master's decision to deny Mattel's request for an additional review of the computer materials belonging to Ms. Leahy and Ms. Marlow.  Since then, in response to multiple new and increasingly overly broad subpoenas, tens of thousands of additional documents have been produced by the Marlows and by third parties, such as financial institutions and accountants, touching

1   nearly every aspect of the Marlows' lives, even including the bank accounts of their

2   children.[1]  In addition, Veronica Marlow's husband, Peter, has appeared for deposition

3   and testified that he thoroughly reviewed all of the Marlows' computers for relevant

4   documents.[2]  It is now clear that Mattel will accept nothing short of a virtual key to the

5   Marlow's home to inspect and review every aspect of their lives as it sees fit.  As to Ms.

6   Leahy, Mattel offers no new grounds for a further review of her hard disk drives, which

7   have already been reviewed pursuant to the agreed protocol.  Ms. Leahy and Ms.

8   Marlow respectfully request that this Court draw a line and put an end to Mattel's

9   fishing expedition into the private lives of these non-party witnesses.

10  **II.    STATEMENT OF FACTS**

11          Once again, Mattel's Motion is replete with factual misstatements and

12  omissions.[3]  Mattel misrepresents the very detailed and broad discovery which has been

13  conducted to date.  Mattel states that a "keyword search did not include the names of []

14  additional employees" and that "there is no evidence that Marlow's hard drives were

_____

[1] Declaration of Larry McFarland in Support of Opposition ("McFarland Decl."), Exhibit ("Exh.") 1.

[2] McFarland Decl., Exh. 2 at 13-14.

[3] Mattel's claim that Veronica Marlow evaded deposition for months and its implication that she and Ms. Leahy appeared for deposition only pursuant to a motion to compel is simply untrue. See Non-parties Margaret Hatch-Leahy, Elise Cloonan and Veronica Marlow's Opposition to Mattel's Ex Parte Application to (1) Compel Production of Electronic Media from Third-Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow or (2) in the Alternative, Modify the Scheduling Order, dated January 27, 2008, at 2.  Furthermore, Ms. Marlow did not identify the Seamstresses for the *first* time at her deposition.  Rather, as Judge Infante pointed out, the Seamstresses were identified *prior* to Ms. Marlow's deposition in her discovery production.  Order at 6.

OPPOSITION TO
MATTEL'S MOTION OBJECTING TO PORTIONS OF
DISCOVERY MASTER'S APRIL 11, 2008 ORDER

ever searched at all, by keywords or otherwise."[4]  This statement is not supported by the record.  Prior to Ms. Marlow's deposition on December 28, 2007, over eight thousand pages of documents, including emails and spreadsheets, were produced by Ms. Marlow, including documents that related to Beatriz Morales, Ana Cabrera, and Maria Salazar (the "Seamstresses").  In addition, at Peter Marlow's deposition, he testified that he had thoroughly searched the Marlows' computers.[5]  Further, Mattel fails to point out that the Marlows have produced hundreds of pages detailing the Seamstresses' activities.[6]  With respect to Ms. Leahy, Mattel claims that her hard disk drives were not searched for the Seamstresses.  However, as was pointed out by Judge Infante, Ms. Leahy never worked with the Seamstresses, so there would be no reason her computer should be searched for records relating to them.[7]

Mattel's other justification in its Motion is that "computer hard drives…have **never** been searched for **graphical** files relating to Bratz."[8]  This statement is also inaccurate.  The Marlows have produced hundreds of graphical files and graphical attachments to emails.[9]  As for Ms. Leahy, the undisputed evidence establishes that she physically sculpted the Bratz doll using clay, not computer programs.[10]  Ms. Leahy has

---

[4] Motion at 2.

[5] McFarland Decl., Exh. 2 at 13-14.

[6] As Judge Infante pointed out, the Seamstresses were identified by documents produced by the Marlows prior to Ms. Marlow's deposition.  See Order at 6.

[7] Order at 5.

[8] Motion at 1.

[9] McFarland Decl., Exh. 3.

[10] McFarland Decl., Exh. 4 at 19-20.  Mattel contends that there may be a possible third party digital scan of the doll, but there is no evidence this was in the possession of Ms. Leahy.

produced all of the drawings and images relating to Bratz that she possessed.  As a consequence, Mattel's conclusion as to the "facial incompleteness of the review of these important hard drives" is inaccurate.[11]

### A.    Margaret Leahy

Setting aside the misstatements in Mattel's Motion, the simple truth is that Ms. Leahy's computer has already been searched by experts of Mattel's own choosing and pursuant to a protocol Mattel proposed.[12]  Now that Mattel is not happy with the results of the search by an expert it selected, it seeks permission to engage in a fishing expedition even after Ms. Leahy has sat for deposition and produced hundreds of pages of documents and tangible items for inspection.[13]  Judge Infante correctly found that Mattel had failed to meet its burden and denied Mattel's request.[14]

The truth is that Mattel proposed and agreed to a computer review protocol over seven months ago, and now, three weeks from trial, Mattel wants a "do-over."  This is too little, too late.  During the summer of 2007 Mattel's counsel, Susan Wines, first informed Mr. McFarland that she believed "Mattel is entitled to inspect and image" computers belonging to third-party witnesses.[15]  As counsel for the Non-Party Witnesses pointed out in their opposition to Mattel's Ex Parte Application, the grounds for Mattel's request to review the computers were tenuous at best, but in an attempt to move discovery forward, counsel agreed to the protocol proposed by Ms. Wines.  In

_____

[11] Motion at 1.
[12] McFarland Decl., Exh. 5.
[13] McFarland Decl., Exh. 6.
[14] Order at 5-6.
[15] McFarland Decl., Exh. 7 at 25-27.  Counsel later agreed to add Ms. Leahy's computers to the review protocol.  Id. at 28.

1  Mattel's attempt to justify the inspection, she argued that Federal Rule of Civil
2  Procedure 34 allows discovery of electronic storage media in some instances.  In
3  support, Mattel's counsel cited the Advisory Committee Notes to Rules 34 and 45, and
4  four federal cases: <u>Playboy Enterprises, Inc. v. Welles</u>, 60 F. Supp. 2d 1050, 1053 (S.D.
5  Cal. 1999); <u>Simon Property Group L.P. v. mySimon, Inc.</u>, 194 F.R.D. 639, 640-41
6  (S.D. Ind. 2000); <u>Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.</u>, 2003 WL 2123065, at
7  *4, fn. 5 (N.D. Ill. 2003); and <u>Superior Consultant Co. v. Bailey</u>, 2000 WL 1279161, at
8  *13 (E.D. Mich. August 22, 2000).  Counsel for the Non-Party Witnesses distinguished
9  the cases cited by Mattel's counsel as follows:

10      while we, of course, agree that the term "documents" includes documents
11      stored in electronic form, the significance of <u>Playboy Enterprises, Inc. v.</u>
12      <u>Welles</u>, 60 F.Supp.2d 1050 (S.D. Cal. 1999) is that this case establishes a
13      strict protocol to be followed when discoverable information is sought
14      from an opposing party's computer hard drives.  The <u>Playboy</u> court set
15      forth a protocol which would allow the party requesting discovery to
16      recover discoverable information while at the same time protecting the
17      privacy and privilege concerns of the responding party.  The protocol
18      called for an independent third-party expert, agreed upon by both parties
19      or appointed by the court, to conduct the inspection and create a "mirror
20      image" copy of the defendant's computer hard drive.  Following the
21      inspection, the "mirror image" copy would be given to the defendant's
22      counsel, who would then print and review any recovered documents and
23      produce to the plaintiff those communications that are responsive and
24      relevant.  Finally, the court noted that the defendant's counsel would be
25      the sole custodian of the "mirror image" copies throughout the litigation.

26
27
28

1    Your letter also cites <u>Simon Property Group L.P. v. mySimon, Inc.,</u>
2    194 F.R.D. 639 (S.D. Ind. 2000) as support for the proposition that
3    deleted records are discoverable and that courts routinely permit
4    inspection of home computers.  As in <u>Playboy</u>, <u>Simon Property</u> also
5    involved a plaintiff seeking access to defendant's computers for the
6    purpose of attempting to recover discoverable information, including
7    deleted files.  The court ordered a protocol requiring the inspection and
8    "mirror image" copying to be conducted by a third-party expert.  In doing
9    so, the court referred to <u>Playboy's</u> protocol as offering the best approach,
10   and fashioned a protocol which was nearly identical to the one in <u>Playboy</u>.
11   The court stated that plaintiff and defendant should attempt to agree on an
12   expert to inspect and create a "mirror image" of the hard drives, and if
13   they failed to do so, the court would appoint one.  The expert would then
14   make the "mirror image" copy, and provide the copy to defendant's
15   counsel.  However, the copying would be limited to "the types of files
16   reasonably likely to contain material potentially relevant" to the case.
17   Thereafter, defendant's counsel would review the records for privilege
18   and responsiveness to plaintiff's discovery requests, and supplement
19   defendant's responses to discovery requests, as appropriate.  Finally, the
20   court ordered that the expert would sign the protective order and retain
21   until the end of the litigation the "mirror image" copies of the hard drives,
22   without "disclos[ing] the contents of any files or documents to plaintiff or
23   its counsel or other persons."

24   The third case that you cite, <u>Superior Consultant Co. v. Bailey</u>,
25   2000 WL 1279161 (E.D. Mich. 2000), further supports the protocol
26   applied in <u>Playboy</u> and <u>Simon Property</u>.  Finally, <u>Kucala Enterprises, Ltd.</u>

27

28

6

1  v. Auto Wax Co., Inc., 2003 WL21230605 (N.D. Ill. 2003) is not

2  applicable to our case.  That case concerned the plaintiff's acts of

3  spoliation and destruction of evidence, which is not present with

4  Ms. Cloonan or Ms. Halpern.[16]

5      Of further significance is the fact that each of the four cases cited in

6  your letter concerns discovery as between *parties* to an action.  However,

7  both of our clients are non-party *witnesses* in this case.  Since courts

8  already protect the privacy and privilege interests of parties in these

9  inspection cases, there will likely be a much greater level of protection for

10  non-parties.  Thus, in order to inspect our clients' computer hard drives,

11  the Court may force Mattel to meet a much higher burden than when

12  dealing with a party.[17]

13  After a series of discussions spanning almost three months, Ms. Wines

14  backed down from her demand that the hard drives be produced to Mattel and

15  finally agreed to a more reasonable approach for identifying and producing

16  responsive, non-privileged documents.  On September 13, 2007, Ms. Wines sent

17  a letter to Mr. McFarland proposing a protocol (the "Protocol") to manage the

18  electronic discovery of Ms. Cloonan's, Ms. Halpern's, and later Ms. Leahy's

19  computer materials.[18]  The Protocol allowed Mattel to receive the relevant

20  information located on the hard drives while necessarily protecting the privacy

21  and confidentiality interests of Ms. Leahy.  The Protocol called for an

---

[16] And also is not present with regard to Ms. Leahy.
[17] McFarland Decl., Exh. 8.
[18] McFarland Decl., Exh. 7.

7

independent expert recommended by Mattel, Rick Albee of DataChasers, Inc. ("DataChasers"), to review the hard drives for responsive documents based upon search terms provided by Ms. Wines.  Counsel agreed to all of the search terms requested by Ms. Wines, which included Bratz, MGA, Carter Bryant, Isaac Larian, Prayer Angels and many others.  Mr. Albee would then deliver the recovered documents to Mr. McFarland, who would have ten court days to review the documents for privileged information.  Mr. Albee would then provide Mattel's counsel with all of the non-privileged documents.[19]

The Protocol was signed by both counsel and became effective on September 27, 2007, and as stated later that day, Mr. McFarland and Ms. Wines agreed to add Ms. Leahy's external hard disk drives to the Protocol.[20]  Mr. Albee picked up the computer materials from Mr. McFarland's office to conduct the review pursuant to the Protocol and on October 26, 2007, counsel for the Non-Party Witnesses authorized DataChasers to produce to Mattel all of the documents recovered pursuant to the Protocol.[21]  No documents were withheld by counsel for Ms. Leahy, but were produced directly from DataChasers to Mattel's counsel.[22]  The review of Ms. Leahy's hard disk drives was completed in late October 2007, and Ms. Leahy was deposed on December 12, 2007.  Mattel has not satisfied its burden to establish that any further review of Ms. Leahy's hard disk drives is required.

---

[19] Id.
[20] Id.
[21] McFarland Decl., Exh. 5.
[22] Id.

1    **B.    Veronica Marlow**

2        Although Mattel knew that Ms. Marlow used computers in her work on Bratz,

3    Mattel did not request that Ms. Marlow's computer be reviewed at the time that the

4    Protocol was agreed to on September 27, 2007.[23]  In response to the first subpoena, Ms.

5    Marlow produced prior to her deposition, over eight thousand pages of documents,

6    including payment logs, spreadsheets, and emails.[24]  While Ms. Marlow was deposed

7    on December 28, 2007, it was not until January 7, 2008, that Mattel first demanded that

8    it be allowed to review Ms. Marlow's computers.  The parties met and conferred on

9    this issue but could not reach agreement.  However, discovery and document

10   production continued and Mattel served additional subpoenas on the following entities:

11

12

13

14

15

16

17

18

19   _____

20

21   [23] Mattel's claim that it recently learned of the Marlow's use of computers is similarly
     baseless.  Counsel for Ms. Marlow stated in a letter in January 2008, that "You have
22   known for quite some time that Ms. Marlow sent and received e-mails because we
     produced such relevant e-mails well prior to her deposition and I believe that MGA has
23   also produced e-mails which were sent to Ms. Marlow."  McFarland Decl., Exh. 9 at
     36.
24   [24] McFarland Decl., Exh. 10.

25

26

27

28                                          9

1.   Bank of America;

2.   Capital Bank & Trust;

3.   Charles Schwab & Company;

4.   ING Direct;

5.   International Rectifier Credit Union;

6.   Mattel Federal Credit Union;

7.   Union Bank of California;

8.   Washington Mutual Bank;

9.   Wells Fargo Bank;

10.  Mitch Bhatia;

11.  Kenneth Baily;

12. Veronica Marlow, Inc.;

13.  Doll Bag, Inc.; and

14.  Marlow Techno-Logic, Inc.

These subpoenas were extremely broad. For example, one of the subpoenas to Marlow Techno-Logic, Inc., requested "DOCUMENTS sufficient to show all business expenses incurred by VERONICA MARLOW RELATED TO MGA, BRYANT, BRATZ, ISAAC LARIAN, or MATTEL since January 1, 1999, including without limitation receipts, invoices, correspondence, e-mails, credit card statements, cancelled checks, and wire transfers." This request alone required the production of years of back credit card statements. As a result of these numerous additional subpoenas,

1    approximately eighteen thousand more documents were produced.[25]  Following all of

2    this additional production, Peter Marlow, Ms. Marlow's husband, appeared for a full

3    day of deposition.  During that deposition, he confirmed that he was technically

4    proficient to review computers in response to the subpoenas and that he had conducted

5    a full review of the Marlows' computers and had produced all responsive documents.[26]

6    Accordingly, counsel's request to re-review the Marlows' computers is duplicative and

7    overly burdensome.

8        Mattel's allegation that Veronica Marlow has not fully and completely complied

9    with her discovery obligations under the Federal Rules is unsupported by the record.

10   As further grounds for demanding an imaging of Ms. Marlow's computers, Mattel

11   falsely claims that the identities of the Seamstresses were kept from Mattel until the

12   deposition of Ms. Marlow.[27]  The truth is that Ms. Marlow turned over documents

13   referring to the Seamstresses no later than November 21, 2007, which identified all of

14   these individuals and which was well prior to her deposition.[28]  Now, on the eve of

15   trial, even though it is undisputed that the Marlows have thoroughly reviewed all of

16   their computers, Mattel is asking that the Marlows' computers be copied and reviewed

17   by an independent expert.  However, Mattel provides no credible justification for this

18   demand, which is why Judge Infante denied Mattel's request.

19   _____

20

21   [25] McFarland Decl., Exh. 11.  This number does not even include the thousands of
     documents produced by the financial institutions.
22   [26] McFarland Decl., Exh. 2 at 13-14.

23   [27] Mattel accuses Ms. Marlow of engaging in a "fraudulent scheme" to pay Mattel
     employees to assist her, but provides not factual evidence in support of this bold
24   accusation.  Motion at 16.

25   [28]  Order at 6.

26

27

28                                                    11

## III.   ARGUMENT

Judge Infante's order denying Mattel's request as to Ms. Leahy and Ms. Marlow was proper and well founded in the law.  This Court may modify or set aside any part of the Discovery Master's order if it is clearly erroneous or contrary to law.  Fed.R.Civ.P. 72(a).  Judge Infante reviewed the complete factual record and appropriately found that although parties may obtain discovery, pursuant to Fed.R.Civ.P. 26(b)(1), "fishing expeditions to discover new claims, however, are not permitted."[29]  Judge Infante further pointed out that:

> '[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(c).'
> Fed.R.Civ.P. 26(b)(1).  Pursuant to Rule 26(b)(2)(c), Fed.R.Civ.P., the
> court must limit the frequency or extent of use of discovery otherwise
> allowed by the Federal Rules of Civil Procedure or by the local rule if the
> court determines that: '(i) the discovery sought is unreasonably cumulative
> or duplicative, or can be obtained from some other source that is more
> convenient, less burdensome, or less expensive; (ii) the party seeking
> discovery has had ample opportunity to obtain the information by discovery
> in the action; or (iii) the burden or expense of the proposed discovery
> outweighs its likely benefit, considering the needs of the case, the amount
> in controversy, the parties' resources, the importance of the issues at
> stake in the action, and the importance of the discovery in resolving the

---

[29] Order at 4, citing Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'")

OPPOSITION TO
MATTEL'S MOTION OBJECTING TO PORTIONS OF
DISCOVERY MASTER'S APRIL 11, 2008 ORDER

1    issues.  Fed.R.Civ.P. 26(b)(2)(c).[30]

2    **A.     The Discovery Master's Ruling Denying An Additional Review**

3    **of Margaret Leahy's Computer Was Proper.**

4         Judge Infante's ruling that Ms. Leahy's hard disk drives should not be reviewed

5    yet again is based upon the complete factual record and well founded in the law.  Mattel

6    proffers that "[t]he obligation to search for and produce discovery in litigation extends

7    to an affirmative search of available electronic systems for relevant information."[31]

8    Well, this is exactly what has already been done, as Judge Infante recognized.  Counsel

9    agreed to the Protocol proposed by Mattel to review Ms. Leahy's hard disk drives and

10   the review was completed, with no documents being withheld.[32]

11        **1.  Margaret Leahy Has Fully Complied with Her Discovery**

12             **Obligations and There is No Basis for An Additional Review.**

13        Judge Infante properly found that "Ms. Hatch-Leahy's computer was subject to

14   the parties' negotiated protocol, and none of Mattel's proffered justifications for

15   another search has merit."[33]  Long after discovery has closed, Mattel is asking to review

16   Ms. Leahy's computer again. [34]   Mattel's only justification is that the hard disk drives

17   _____

18

19   [30] Order at 5.

20   [31] Motion at 11.

21   [32] Order at 4, 5.

     [33] Order at 5.

22   [34]  Mattel states that Ms. Leahy "admitted that sculpting Bratz dolls was her primary

23   task, it became apparent that additional discovery would have to be conducted to

     ascertain what relevant documents existed on Ms. Hatch-Leahy's computer."  Motion at

24   8.  Apparently, Mattel is trying to argue that it discovered during the deposition that

     Ms. Leahy sculpted Bratz, and that this new fact justifies its request to review again Ms.

25   Leahy's hard disk drives.  The problem is that it is not true that Mattel did not discover

26

27

28
                                           13

1  were never searched for graphical files and never searched for the names of the

2  Seamstresses.[35]

3         Ms. Leahy has produced hundreds of pages in discovery, many of which are

4  graphical in nature, including drawings and magazine pictures.  Ms. Leahy sculpted the

5  dolls out of clay and wax and has produced all of her tangible items for Mattel's

6  inspection, including sculpts and molds.[36]  She testified as to her creative process and to

7  her physical sculpting process during her deposition taken on December 12, 2007.[37]

8  Although Mattel presents case law purporting to support the idea that the agreed upon

9  Protocol may not discover graphical files on the computer, it never provides any

10  evidence establishing that Ms. Leahy would have Bratz related graphical files on her

11  computer in the first place.  The reason is simple.  Ms. Leahy sculpted the Bratz dolls

12  with her hands and tools, and a computer was not part of her sculpting process.[38]  Judge

---

15  until the deposition that Ms. Leahy sculpted Bratz.  It has been well known since at

16  least 2001 that Ms. Leahy was the sculptor of Bratz.

17  [35] Mattel throws out an accusation that Ms. Leahy's day planner was improperly redacted, but, of course, this is untrue and not supported by the record.  Rather, as

18  Judge Infante points out in his order denying Mattel's motion to further depose Ms. Leahy, "Leahy produced her original planner at her deposition, and Mattel was able to

19  question Leahy regarding specific entries in her planner."   Order Denying Mattel's

20  Motion to Compel Further Deposition of Margaret Hatch-Leahy; Denying Request for Sanctions, dated April 28, 2008.

21  [36] McFarland Decl., Exh. 6.

22  [37] McFarland Decl., Exh. 4 at 19-20.

23  [38] Id.  In Mattel's Ex Parte Application counsel asserts that Ms. Leahy made a statement regarding the existence of a digital head scan, but fails to cite to any part of the record

24  in support of this.  Counsel for Ms. Leahy pointed out in its previous opposition

25  Mattel's failure to provide any support for this statement.  And, Judge Infante also noted in general the absence of any evidence of digital graphical files when he stated,

Infante clearly understood this and ruled that "there is no evidence to suggest that Ms. Hatch-Leahy's electronic media contained graphic files."[39]  Mattel's presentation of case law regarding the viability of searching for graphical files with key word searches is simply a red herring, which ignores the fact that it has no evidence that Ms. Leahy would even possess graphical files on her computer.  Simply put, Ms. Leahy did not use her computer to ***digitally*** sculpt the Bratz dolls.  There is no evidence suggesting that her computer would even contain graphical files relating to Bratz and this does not amount to justification for yet another search of her hard disk drives.

Mattel also argues that Ms. Leahy's hard disk drives should be reviewed again because they were never searched with regard to the names of the Seamstresses.[40]  This justification is also without merit.  There is no evidence that Ms. Leahy ever had any contact with the Seamstresses, or even knows that they exist.  Mattel is attempting merge Ms. Marlow's work on Bratz with Ms. Leahy's work.  As Judge Infante explained, "[the Seamstresses]…assisted ***Ms. Marlow*** with sewing Bratz fashions…Ms. Hatch-Leahy sculpted Bratz dolls; she did not work on Bratz fashions."[41]

---

"Mattel also attempts to justify another search because 'the key word searches do not capture the evidence that arises from the absence of documents on the computer hard drives, specifically the absence of documents that these witnesses testified at the deposition should have been located on their respective hard drives but which were not, for some reason, produced.'  Mattel's Ex Parte App. At p.3.  Mattel, however, has not provided any citation to Ms. Hatch-Leahy's deposition transcript to support this assertion, and moreover, Ms. Hatch-Leahy denies making such a statement.  <u>See</u> Opposition at p. 21."  Order at 5.

[39] Order at 5.

[40] Motion at 12.

[41] Order at 5.  (emphasis added)

Finally, with respect to Mattel's argument regarding the alleged absence or deletion of documents, in his recent Order, Judge Infante stated that the Protocol already addressed the issue of destruction of files as follows:

> The expert will follow the same procedures as set forth above with respect to any documents or data relating to any alteration of the hard drives or data on the hard drives by, for example, providing a listing of all application programs and when they were installed, detailing whether there is any evidence of the presence or use of a data destruction program on the computer, evidence regarding the transfer of relevant documents to or from the computer via media or e-mail, and/or use account information present on the system.[42]

Any further review of Ms. Leahy's hard disk drives would be duplicative and cumulative and the burden would outweigh any likely benefit.  Judge Infante's order was well founded and not clearly erroneous.  There is no cause for this Court to overturn his ruling.[43]

---

[42] Order at 5.  For an unknown reason, Mattel is purporting to extend Carter Bryant's alleged use of a data destruction program as support to re-review computers belonging to Ms. Leahy.  Mr. Bryant's alleged actions do not provide adequate grounds to re-review Ms. Leahy's hard disk drives.

[43] Mattel points out in its Motion that the Protocol specifically allowed Mattel to seek further discovery.  Motion at 8.  While that may be true, it is irrelevant, because it provides no support for the assertion that Judge Infante's Order was clearly erroneous.

**B.**     **The Discovery Master's Ruling Denying An Additional Review of Veronica Marlow's Computers Was Proper.**

Judge Infante reviewed the evidence and properly determined that Ms. Marlow had fully complied with her discovery obligations, thereby alleviating the need for a further review of her computers.  The fact that Ms. Marlow's computers were never subject to the Protocol does not mean that her computers were not thoroughly searched for responsive documents.  Mattel's justification for a further review by its experts is that "she *never* said in her testimony that she in fact looked for documents *on any of her computers*."[44]  However, Peter Marlow has testified fully regarding this issue. Since the time of the filing of Mattel's motion, Mr. Marlow was deposed and he has now testified that he is technically proficient to review information on computers and that he searched all of the Marlows' computers for all Bratz-related information and produced it.[45]  Indeed, his testimony is supported by the fact that the Marlows have themselves produced over twenty five thousand pages of documents, including innumerable computer generated documents such as emails, spreadsheets, word documents, and PDFs.  Accordingly, the evidence supports Judge Infante's decision not to allow further review of the Marlow's computers.

---

[44] Motion at 15.
[45] McFarland Decl., Exh. 2 at 13-14.

17

1

### 1. Veronica Marlow Has Fully Complied with Her Discovery
2
### Obligations and There is No Basis for An Additional
3
### Review.

4      Judge Infante correctly determined that the record indicates that "Ms. Marlow

5   has substantially complied with her discovery obligations and there is no evidence to

6   the contrary."[46]  Now, long after discovery has closed and all responsive documents

7   have been produced, Mattel is continuing its unfounded demands on this non-party

8   witness.  As pointed out above, Mattel has known about the Marlows' computers since

9   at least last summer and the Marlows have made no attempt to conceal the fact that

10  they have them.  Moreover, the undisputed evidence establishes that Peter Marlow

11  thoroughly searched all of the Marlow's computers and produced all relevant

12  documents.

13      Although Rule 34 allows discovery of electronic storage media in some

14  instances, it focuses on "documents or electronically stored *information*," Fed. R. Civ.

15  P. 34(a)(1) (emphasis added), and not electronic storage *devices*.  Moreover,

16  "electronically stored *__information is not meant to create a routine right of direct__*

17  *__access to a party's electronic information system__*."  Id.  The Committee also noted

18  that, "although such access might be justified in some circumstances," "*Courts should*

19  *guard against undue intrusiveness resulting from inspection or testing such*

20  *systems*."  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes (emphasis added).  Thus,

21  Rule 34(a) does not entitle a party to "a routine right of direct access to a party's

22  electronic information system…."  Id.  "Even in cases where courts have found

23  _____

24

25  [46] Order at 6.

26

27
28

computer imaging and inspection to be warranted, the courts have nonetheless adopted procedures to protect privilege and privacy concerns." <u>Caylon v. Mizuho Sec. USA Inc.</u>, No. 07CIV02241RODF, 2007 WL 1468889, at *3 (S.D.N.Y. May, 28, 2007); <u>see In re Ford Motor Co.</u>, 345 F. 3d 1315, 1317 (11th Cir. 2003) (observing that "the district court must 'protect respondent with respect to preservation of his records, confidentiality of nondiscoverable matters, and costs.'"), <u>quoting</u> Fed. R. Civ. P. 34, 1970 Adv. Comm. Notes.

In summary, there is no requirement that the Marlows turn over their computers to counsel for Mattel in order to respond to discovery requests. When a party is obligated to produce electronically stored documents in response to discovery requests, it is the responding party's obligation to conduct the search and review of its own documents. <u>In re Ford Motor Co.</u>, 345 F. 3d at 1317 ("Like the other discovery rules, Rule 34(a) allows the responding party to search his records to produce the required, relevant data. Rule 34(a) does not give the requesting party the right to conduct the actual search."); <u>Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558, at *9 (D. Nev. 2007) ("It is [the responding party's] obligation to review its records and produce relevant, non-privileged documents and information."); <u>Peskoff v. Faber</u>, 240 F.R.D. 26, 31 (D.D.C. 2007) ("[T]he producing party has the obligation to search available electronic systems for the information demanded."), <u>quoting McPeek v. Ashcroft</u>, 202 F.R.D. 31, 32 (D.D.C. 2001)); <u>Powers v. Thomas M. Cooley Law School</u>, 2006 WL 2711512, *5 (W.D. Mich. 2006) ("The discovery process is designed to be extrajudicial, and relies upon the responding party to search his records to produce the requested data. In the absence of a strong showing that the responding party has somehow defaulted in this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance."); <u>Floeter v. City of Orlando</u>, No. 6:05-cv-400-Orl-22KRS, 2006 WL 1000306, at *3 (M.D. Fla. Apr. 16,

2006), quoting In re Ford Motor Co., 345 F.3d at 1317.  Ms. Marlow testified during her deposition "that she turned over all of her Bratz-related documents to her counsel, and that she has never thrown away, shredded or destroyed any documents related to Bratz."[47]  Peter Marlow similarly testified that he had thoroughly searched the computers and provided all responsive documents.[48]  There is no showing that the Marlows defaulted in their obligations.

Courts generally require that a requesting party prove improper conduct before compelling the production of a computer hard drive because hard drives "often contain information that is not relevant to the claims and defenses pleaded in a complaint, or that is subject to a claim of privilege, such as attorney-client, work product, trademark or copyright privileges."  Moore's Federal Practice § 37A.44[3][b] (3d ed. 2007).  Rather than putting forth evidence, Mattel merely speculates that "there is no substitute for an examination of what documents related to Bratz have been deleted from these hard drives."[49]

Finally, Mattel's claim that the computers were never searched for information relating to the Seamstresses is not based in reality.  The documents produced by the Marlows, including those produced prior to Ms. Marlow's deposition establish otherwise.

### C.    The Privacy Interests of the Non-Parties are Relevant and Outweigh Mattel's Interest in Further Review.

Judge Infante found in his Order that the burden, expense, and intrusion into the

---

[47] Order at 5.
[48] McFarland Decl., Exh. 2 at 13-14.
[49] Ex Parte Application at 10.

OPPOSITION TO
MATTEL'S MOTION OBJECTING TO PORTIONS OF
DISCOVERY MASTER'S APRIL 11, 2008 ORDER

1    privacy interests of Ms. Leahy and Ms. Marlow involved in the re-review of the

2    computers is unjustified.[50]  And previously, in his January 25, 2008, order, Judge

3    Infante stated that:

4        Personal financial information is afforded protection by the California

5        Constitution that is also recognized by federal courts.  Cal. Const., Art. I, §1;

6        Valley Bank of Nevada v. Superior Court, 15 Cal.3d 652, 656 (1975); Kelly

7        v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

8        should give "some weight" to privacy rights that are protected by state

9        constitutions); Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal.

10       1995) (right to privacy in financial information has been recognized by

11       federal courts).  When a privacy right is asserted as an objection to discovery,

12       the court must balance the need for the information versus the privacy right

13       asserted.  Soto, 162 F.R.D. at 616.[51]

14       Moreover, Judge Infante has stated that non-parties are afforded greater

15   protection than parties.  In his January 25, 2008, order, Judge Infante stated:

16       Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to restrict or prevent

17       discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

18       obtainable from some other source that is more convenient, less burdensome,

19       or less expensive; (ii) the party seeking discovery has had ample opportunity

20       by discovery in the action to obtain the information sought; or (iii) the burden

21       or expense of the proposed discovery outweighs its likely benefit, taking into

22

23

24   [50] Order at 6-7.

25   [51]  Order Re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldbert to Produce Documents ("January 25 Order")) at 11.

26

27

28                                              21

account the needs of the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the litigation, and the
importance of the proposed discovery in resolving the issues.  These
restrictions are particularly important to consider where the discovery
requests are directed at a non-party.  See Moon v. SCP Pool Corp., 232
F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood
Chem. Co., Inc., 649 F.2d 649 (9th Cir. 1980) (discovery should be "more
limited to protect third parties from harassment, inconvenience, or disclosure
of confidential information.").[52]

Mattel's argument that the protective order in the case would protect Ms. Leahy
and Ms. Marlow from any invasion of privacy is without merit.  These non-parties have
protectable privacy interests as Judge Infante has recognized and the review that Mattel
is proposing would disclose all of the private documents and images on the non-parties'
personal computers directly to Mattel's counsel without any review for non-responsive,
private, or privileged documents.  There is absolutely no justification for Mattel's
counsel to have access to private images on Ms. Leahy's and Ms. Marlow's computers.
The balance of the interests in this case weighs in favor of Ms. Leahy and Ms. Marlow,
as Judge Infante found.

///

///

///

_____

[52] Id. at 11.

OPPOSITION TO
MATTEL'S MOTION OBJECTING TO PORTIONS OF
DISCOVERY MASTER'S APRIL 11, 2008 ORDER

1    **IV.    CONCLUSION**

2           For the foregoing reasons, Ms. Leahy and Ms. Marlow respectfully request that

3    the Court deny Mattel's Motion.

4

5    Dated:  May 5, 2008                      KEATS MCFARLAND & WILSON LLP

6

7                                             /s/ _____

8                                             Christian C. Dowell, Esq.
                                              Attorneys for Non-Parties Margaret Hatch-
9                                             Leahy, and Veronica Marlow

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO
MATTEL'S MOTION OBJECTING TO PORTIONS OF
DISCOVERY MASTER'S APRIL 11, 2008 ORDER