1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 1**

**EXHIBIT TO**: DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

AO88 (Rev. 12/06) Subpoena in a Civil

Issued by the

# UNITED STATES DISTRICT COURT

__Western__ DISTRICT OF __Washington__

CARTER BRYANT, an Individual

## SUBPOENA IN A CIVIL CASE

v.

MATTEL, INC., a Delaware Corporation

Case Number:[1] Misc. Case #.

(C.D. Cal.)CV 04-09049 SGL (RNBx)

TO:  Washington Mutual Bank
     Washington Mutual Subpoena Intake Group,
     1201 Third Avenue, Seattle, WA 98101 - Mail Stop WMT 2107

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa Street, 10th Floor Los Angeles, CA 90017 | January 28, 2008 9:00 a.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff, Mattel, Inc. | January 15, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND TELEPHONE NUMBER
Melissa Grant, Quinn Emanuel Urquhart Oliver & Hedges, LLP,
865 So. Figueroa Street, 10th Floor, Los Angeles, CA  90017    (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT __1__

PAGE __3__

AO88  (Rev.  12/06) Subpoena in a Civil Case

| PROOF OF SERVICE | |
| --- | --- |
| DATE | PLACE |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
| --- | --- |

| SERVED BY (PRINT NAME) | TITLE |
| --- | --- |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
| --- | --- |
| | ADDRESS OF SERVER |

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT 1

PAGE 4

## ATTACHMENT A

### Documents To Be Produced

1.   **DEFINITIONS.**

  i.  "YOU" or "YOUR" means Washington Mutual, Inc. and all of YOUR parents, subsidiaries, divisions, affiliates or affiliated entities, past or present employees, agents, representatives, consultants, independent contractors, any predecessors or successors in interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

  ii.  "MARIA VERONICA MARLOW" means the individual named Maria Veronica Marlow, Maria Marlow and/or Veronica Marlow, Social Security No. 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, date of birth 03/02/1966, the entities named Veronica Marlow, Inc., Marlow Techno-Logic, Inc., and Doll Bag, Inc., and any of MARIA VERONICA MARLOW's current or former agents or representatives, including her husband PETER A. MARLOW, any trustees acting for her benefit or on her behalf, and any other PERSON acting on her behalf, pursuant to her authority or subject to her control. Without limiting the foregoing, "MARIA VERONICA MARLOW" shall include any partnerships, corporations, joint ventures, and any kind of business, legal, or public entity or organization owned or operated by or otherwise affiliated with Maria Veronica Marlow, Maria Marlow and/or Veronica Marlow, or Peter Marlow, as well as their agents, representatives, employees, officers and directors and any one else acting on their behalf, pursuant to their authority, or subject to their control.

  iii.  "VALERIE STOLWORTHY" means the individual named Valerie Stolworthy, Valerie Marlow Stolworthy and/or Valerie Marlow, any of VALERIE STOLWORTHY's current or former agents or representatives, including without limitation KIRK STOLWORTHY, any trustees acting for her benefit or on her behalf, and any other PERSON acting on her behalf, pursuant to her authority, or subject to her control. Without limiting the foregoing, "VALERIE STOLWORTHY" shall include any partnerships, corporations, joint ventures, and any kind of business, legal, or public entity or organization owned or operated by or otherwise affiliated with Valerie Stolworthy and/or Kirk Stolworthy, as well as their agents, representatives, employees, officers and directors and any one else

B720902353762.1

EXHIBIT   1

PAGE   5

acting on their behalf, pursuant to their authority, or subject to their control.

iv.      "ACCOUNT" or "ACCOUNTS" means any account of any type, including but not limited to any checking account, savings account, deposit account, credit card account, line of credit account, charge account, and any other account of any other type.

v.      "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and anyone else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

vi.      "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Civil Procedure 34 and/or Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

vii.      "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

viii.      "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

ix.      Wherever used herein, the singular shall include the plural and the plural shall include the singular.

EXHIBIT ___1___

PAGE ___6___

2.    INSTRUCTIONS.

      a.    YOU are to produce all DOCUMENTS requested hereby that
are in YOUR possession, custody and control.

      b.    If YOU contend that YOU are not required to produce certain
DOCUMENTS called for by these requests on the grounds of a privilege or
protection that YOU are not prepared to waive, in lieu of producing such
DOCUMENTS identify each DOCUMENT and provide the following
information:

            (1)    The privilege or protection that you claim precludes
disclosure;

            (2)    The subject matter of the DOCUMENT (without
revealing the content as to which the privilege or protection is claimed);

            (3)    The date, author(s), addressee(s); and

            (4)    Any additional facts on which YOU would base YOUR
claim of privilege or protection.

      c.    YOU are required to identify any and all DOCUMENTS sought
by this document request that have been destroyed.

      d.    YOU are required to identify the source of all DOCUMENTS
produced, and the person for whom, or department, division or office for which,
such DOCUMENTS are maintained.

      e.    Each DOCUMENT shall be produced in its original file folder,
or in lieu thereof, any writing on the file folder from which each such
DOCUMENT is taken shall be copied and appended to such DOCUMENT.

3.    DOCUMENTS TO BE PRODUCED.

      (1)    All DOCUMENTS REFERRING OR RELATING TO MARIA
VERONICA MARLOW or VALERIE STOLWORTHY from January 1, 1999 to
the present, inclusive.

07209/2353762.1

EXHIBIT _____
PAGE _____

(2)   All DOCUMENTS REFERRING OR RELATING TO any ACCOUNTS maintained by YOU that is in the name of, for the benefit of or concerns MARIA VERONICA MARLOW or VALERIE STOLWORTHY, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS, created between January 1, 1999 and the present, inclusive.

(3)   DOCUMENTS sufficient to show the account number of all ACCOUNTS maintained by YOU in the name of, for the benefit of or concerning MARIA VERONICA MARLOW or VALERIE STOLWORTHY between January 1, 1999 and the present, inclusive.

(4)   All DOCUMENTS showing or relating to any account(s) held by MARIA VERONICA MARLOW or VALERIE STOLWORTHY, or any account(s) on which MARIA VERONICA MARLOW or VALERIE STOLWORTHY has signatory authority at any other financial institution.

07209/2353762.1

EXHIBIT 1
PAGE 2

### AFFIDAVIT OF STAN SPERLING

I, Stan Sperling, declare that if called upon as a witness in this action, I could and would competently testify under oath of my personal knowledge of the events described herein.

(1) I am a paralegal for Now Legal Service, registered in the State of California by the County Clerk of Los Angeles, our registration number being 5426. My business address is 1301 West 2nd Street, Suite 206, Los Angeles, CA 90026.

(2) On January 17, 2008, we received an assignment from our client, QUINN EMANUEL URQUHART OLIVER & HEDGES, an assignment to serve Washington Mutual Bank with a Federal Subpena. The provided address was 1201 Third Avenue Seattle, WA 98101.

(3) Since the assignment was a hot rush, we immediately faxed the document to our agent, Northwest Legal Support. A manager, Jim at Northwest, later reported the subpena was served on Jamie Buhl, Administrative Assistant, on January 17 at 3:35 p.m. However, we do not yet have the signed proof of service for this assignment and will forward same to our client immediately upon receipt.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the 28th day of January, 2008, at Los Angeles, California.

_Stan Sperling_

Stan Sperling

-1-

EXHIBIT

PAGE _____ 3

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
<u>Hon. Stephen G. Larson</u>

# **EXHIBIT 2**

<u>**EXHIBIT TO**</u>:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

## **[FILED UNDER SEAL]**

Pages 10-14

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
<u>Hon. Stephen G. Larson</u>

# **<u>EXHIBIT 3</u>**

**<u>EXHIBIT TO</u>**:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

September 24, 2007

VIA MESSENGER

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   Mattel v. Bryant

Dear Susan:

As I mentioned in my letter dated September 21, 2007, we have located additional documents responsive to your subpoena.  Accordingly, I am sending this box which contains electronic mail from Ms. Marlow.  Please note that the enclosed documents have been identified as CONFIDENTIAL – ATTORNEYS' EYES ONLY.

Our efforts to review Ms. Marlow's records for responsive documents continue, and as I previously stated, we anticipate that all documents should be reviewed and produced to you by October 16, 2007.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

EXHIBIT 3
PAGE 15

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# EXHIBIT 4

**EXHIBIT TO**:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

# [FILED UNDER SEAL]

Pages 16-20

1

2

3

4

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
<u>Hon. Stephen G. Larson</u>

5

6

7

# **EXHIBIT 5**

8

**<u>EXHIBIT TO</u>:**   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750
WRITER'S EMAIL
lmcfarland@kmwlaw.com

October 26, 2007

<u>VIA FACSIMILE, E-MAIL, AND U.S. MAIL</u>

Michael Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   <u>Mattel v. Bryant</u>

Dear Michael,

Pursuant to our agreed upon protocol for inspection of the computer hard drives of Margaret Leahy, Elise Cloonan, and Sarah Halpern, we have reviewed the Bates stamped documents received from Data Chasers, Inc. for privilege.

Our review did not reveal any documents which should be withheld for privilege. However, due to the manner in which the search terms were applied to each hard drive, many non-responsive documents were pulled by Data Chasers, Inc. For example, it appears as though each hard drive was searched using the particular owner's name, which inadvertently pulled many non-responsive documents containing personal emails that are not relevant to this case. For example, Ms. Cloonan's computer was searched for documents that contained her name. The result is that none of the documents located by the expert on Ms. Cloonan's computer relate in any way to the case.

Pursuant to the protocol, Data Chasers, Inc. will be providing you with all the documents and data, including the native files. I believe that after your review, you will agree that many of the documents are non-responsive and should be removed from the production accordingly. Please contact me to discuss this matter as soon as you have had a chance to review the documents. Please note though that all of these documents should be classified as **CONFIDENTIAL – ATTORNEYS' EYES ONLY.**

Very truly yours,

Larry W. McFarland
KEATS McFARLAND & WILSON LLP

LWM/ccd
cc:  Rick Albee

EXHIBIT 5

PAGE 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 6**

**EXHIBIT TO**:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

December 11, 2007

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

**VIA MESSENGER**

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

    Re:   <u>Mattel v. Bryant</u>

Dear Dylan:

    I am enclosing documents having Bates numbers KMW-L 000429 through KMW-L 000603 and KMW-M 007873 through KMW-M 008025, which include photos of the three-dimensional objects that have been produced to you.

                  Very truly yours,

                  Larry W. McFarland
                  Keats McFarland & Wilson LLP

LWM/ccd

cc:  Thomas J. Nolan
      Michael Page

Enclosures

EXHIBIT   6

PAGE   22

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 7**

**EXHIBIT TO**:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

June 21, 2007

**VIA FACSIMILE AND U.S. MAIL**

Larry McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, California  90212

Re:     Mattel, Inc. v. Bryant et al.

Dear Mr. McFarland:

I write to follow up on our phone conversation of today regarding Sarah Halpern and Elise Cloonan's obligation to make their computer hard drives available for inspection by Mattel.

Mattel is entitled to inspect and image Ms. Halpern's and Ms. Cloonan's hard drives to ensure that evidence is not lost and to permit Mattel to ascertain whether any relevant materials have been deleted.  As noted in the 2006 Committee Notes to Federal Rule of Civil Procedure 45, "Rule 45(a)(1)(C) is amended to recognize that electronically stored information, as defined in Rule 34(a), can also be sought by subpoena."  Under Federal Rule of Civil Procedure 34(a), the term "documents" includes documents stored in electronic form.  See Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); Fed. R. Civ. P. 34, adv. comm. note. Mattel's subpoenas to Halpern and Cloonan also defined "documents" to include electronic data and documents.  Even if the relevant materials on their computers have been deleted, the hard drives must be produced because deleted records are discoverable.  See Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639, 640-41 (S.D. Ind. 2000) (holding that plaintiff was entitled to attempt to recover deleted computer files from computers used by employees of the defendant to develop evidence supporting its claims); Playboy Enterprises, 60 F. Supp. 2d at 1054-55 (ordering a computer expert to make a mirror image of defendant's hard drive to search for emails deleted by defendant); Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2150439.1

EXHIBIT 7

PAGE 23

21230605, at *4, fn. 5 (N.D. Ill. 2003) ("Emails and other electronic documents are discoverable, as are deleted documents still located in a computer's hard drive.") .

Further, Mattel is entitled to inspect these hard drives to determine whether the computers contain additional responsive documents. The evidence suggests that they do. Carter Bryant admitted in his deposition that he used Ms. Cloonan's computer when they were roommates from approximately late 1998 to 2000, which is a critical time period in the case. Carter Bryant also acknowledged working with Ms. Halpern on Bratz in late 2000. As Ms. Halpern was a freelancer, she likely did much of her work on her personal computer.

The fact that these computers are the personal computers of Ms. Halpern and Ms. Cloonan does not make them immune from production. Courts routinely permit inspection of home computers. See Simon Property Group L.P., 194 F.R.D. at 640-41 (holding that plaintiff in trademark case was entitled to attempt to recover deleted computer files from computers used by employees of the defendant - whether such computers were at home or at work - to develop evidence supporting its claims); Superior Consultant Co. v. Bailey, 2000 WL 1279161, at *13 (E.D. Mich. 2000) (ordering defendants to "create and produce to defense counsel a backup file of defendant Bailey's laptop computer, and a backup file of any personal computer hard-drive to which defendant Bailey has had access at any time."). Such an inspection is particularly appropriate where, as here, both computers were used for business as well as personal purposes.

While Mattel is clearly entitled to these computer hard drives, it is also anxious to avoid subjecting Ms. Halpern or Ms. Cloonan to any undue burden. That is why we suggested only taking a mirror image of their hard drives. Creating a mirror image not only is forensically sound, but it takes very little time and causes no disruption to the computer's functionality. Mattel, of course, is willing to pay the costs involved in imaging the computer hard drives and is prepared to do so immediately. I hope we will be able to resolve this issue without burdening the court with a motion to compel.

I look forward to speaking with you early next week regarding this issue.

Very truly yours,

Susan Wines

SLW
07209/2150439.1

2

EXHIBIT 7
PAGE 24

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

September 13, 2007

**VIA FACSIMILE AND U.S. MAIL**

Larry McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, California 90212

Re:   Mattel, Inc. v. Bryant et al.

Dear Mr. McFarland:

I follow-up on our telephone conversation today regarding the protocol for the inspection of computer hard drives and laptop computers. We propose the following:

- The expert will be from the following firm: DataChasers, Inc., Richard L. Albee, CEO, P.O. Box 2861, Riverside, California 92516, phone (877) 328-2392. DataChasers has not, to our knowledge, done any work for Mattel.

- Mattel will bear the costs of the expert.

- The computers shall be made available to the expert for imaging at your offices, but neither your lawyers nor your clients may be present for the imaging. No verbal directions may be given to the expert while he or she is working at your offices.

- The search terms to be used by the expert are attached on Attachment A. The expert will perform the search for responsive documents, including the computer's unallocated and file-slack space. The expert shall provide file- and system-level metadata for all such documents. The expert shall sign the protective order and

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2194359.1

2134433100                    PAGE.02

EXHIBIT   1

PAGE   25

agree to be bound by its confidentiality requirements. Access by the expert to information protected by the attorney-client privilege or work product doctrine shall not constitute a waiver of the privilege.

Once the expert has made the mirror image of the hard drive, he or she will print out all documents and data collected in response to the search terms and Bates stamp the documents. Those documents will be provided to your office to pull for privilege. You will provide us with a privilege log sufficient to show the basis for withholding any documents. Within eleven (11) court days of the time that your office receives the documents and data that he or she has printed out, the expert will provide us with all such documents and data, including native files, except for any such documents or data for which privilege is asserted. You will serve upon us and the expert the privilege log identifying the documents or data, if any, to be withheld on privilege grounds within ten (10) court days of your receipt of the documents and data from the expert.

The expert also will follow the same procedures as set forth above with respect to any documents or data relating to any alteration of the hard drives or data on the hard drives by, for example, providing a listing of all application programs and when they were installed, detailing whether there is any evidence of the presence or use of a data destruction program on the computer, evidence regarding the transfer of relevant documents to or from the computer via media or e-mail, and/or user account information present on the system.

If there is any issue or question regarding the authenticity, correctness, integrity or completeness of any matter, including without limitation any document or data from the computers, this protocol does not foreclose Mattel from seeking production and inspection of any matter, including without limitation the original data, drives or documents.

Please sign below on behalf of your clients, Elise Cloonan and Sarah Halpern, if this is agreeable.

Very truly yours,

Susan Wines

SLW:wp
07209/2194393.1

Larry W. McFarland
Dated: September 28 2007

07209/2194393.1

2

2:34433100    PAGE.03

EXHIBIT 1
PAGE 26

## ATTACHMENT A - PROPOSED SEARCH TERMS

MGA Entertainment, Inc.
ABC International Traders, Inc.
MGA Entertainment (HK) Limited
Bandai
Hasbro
Tomy

Carter Bryant and/or family members
Richard Irmen and/or family members
Isaac Larian and/or family members
Farhad Larian and/or family members
Morad Zarabi and/or family members

Ana Elise Cloonan
Paula (Treantafalles) Garcia
Sarah Halpern
Rachel Harris
Rebecca (Becky) Harris
Margaret Hatch-Leahy
Daniel Leahy
Kerri Legg Brode
Barbara Malcolm
Veronica Marlowe
Victoria O'Connor
Maureen Mullen Chianese
Amy Myers
Anna Rhee
Mercedeh Ward

Bratz
Prayer Angels or Angel

EXHIBIT ___7___

PAGE ___27___

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

September 27, 2007

<u>VIA FACSIMILE</u>

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:     Mattel v. Bryant

Dear Susan:

This letter serves to confirm that the review of the external hard drive from Margaret Leahy will be pursuant to the same procedures set forth in your letter dated September 13, 2007, which I signed and faxed to you today.

Please call me should you have any questions.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

EXHIBIT 7
PAGE 28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 8**

**EXHIBIT TO**:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

June 28, 2007

WRITER'S DIRECT DIAL

(310) 777-3730
WRITER'S EMAIL

lmcfarland@kmwlaw.com

<u>VIA FACSIMILE</u>

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   <u>Mattel v. Bryant</u>

Dear Ms. Wines:

I am writing in response to your letter dated June 25, 2007, and to follow up on our meet and confer which we held yesterday morning at 10:00 a.m. I will address the points in the order set forth in your June 25 letter.

A.   <u>Margaret Hatch-Leahy and Veronica Marlow</u>

I.   <u>Unjustified Redaction of Documents</u>

With respect to the review of Ms. Leahy's day planner and Ms. Marlow's faxes, I have requested these documents. I will let you know as soon as I have them.

II.   <u>Ms. Marlow's Wells Fargo Account</u>

I will confirm the information with Ms. Marlow when I meet with her. As you know, she has been in Brazil.

B.   <u>Elise Cloonan</u>

As set forth in my letter dated June 26, 2007, we do not agree that there has been any waiver of Ms. Cloonan's objections, and with that letter we provided you with Ms. Cloonan's written responses. I have also asked Ms. Cloonan to provide us with a doctor's note.

C.   <u>Sarah Halpern</u>

There are no differences intended by the language in the responses to Request No. 2 and Request No. 3. For clarity, we hereby modify the response to Request No. 3 to read as follows: "no responsive documents are in the possession, custody or control of Halpern."

EXHIBIT ___8___
PAGE ___29___

Susan Wines, Esq.
June 28, 2007
Page 2

D.     Computers

I will ask all four of our clients about computers, including laptops, that they may have used during the relevant time frame.

With respect to the authorities set forth in your June 21, 2007, letter alleging that Mattel is "entitled to inspect and image" the personal computers belonging to Elise Cloonan and Sarah Halpern, the cases that you cite fail to support your position.

For instance, while we, of course, agree that the term "documents" includes documents stored in electronic form, the significance of Playboy Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050 (S.D. Cal. 1999) is that this case establishes a strict protocol to be followed when discoverable information is sought from an opposing party's computer hard drives. The Playboy court set forth a protocol which would allow the party requesting discovery to recover discoverable information while at the same time protecting the privacy and privilege concerns of the responding party. The protocol called for an independent third-party expert, agreed upon by both parties or appointed by the court, to conduct the inspection and create a "mirror image" copy of the defendant's computer hard drive. Following the inspection, the "mirror image" copy would be given to the defendant's counsel, who would then print and review any recovered documents and produce to the plaintiff those communications that are responsive and relevant. Finally, the court noted that the defendant's counsel would be the sole custodian of the "mirror image" copies throughout the litigation.

Your letter also cites Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639 (S.D. Ind. 2000) as support for the proposition that deleted records are discoverable and that courts routinely permit inspection of home computers. As in Playboy, Simon Property also involved a plaintiff seeking access to defendant's computers for the purpose of attempting to recover discoverable information, including deleted files. The court ordered a protocol requiring the inspection and "mirror image" copying to be conducted by a third-party expert. In doing so, the court referred to Playboy's protocol as offering the best approach, and fashioned a protocol which was nearly identical to the one in Playboy. The court stated that plaintiff and defendant should attempt to agree on an expert to inspect and create a "mirror image" of the hard drives, and if they failed to do so, the court would appoint one. The expert would then make the "mirror image" copy, and provide the copy to defendant's counsel. However, the copying would be limited to "the types of files reasonably likely to contain material potentially relevant" to the case.[1]  Thereafter, defendant's counsel would review the records for privilege and responsiveness to plaintiff's discovery requests, and supplement defendant's responses to discovery requests, as appropriate.[2]  Finally, the court ordered that the expert would sign the protective order and retain

---

[1]     Id. at 641; citing Adobe Systems, Inc. v. South Sun Products, Inc., 187 F.R.D. 636, 642-43 (S.D. Cal. 1999) (noting that Microsoft Office 97 occupies more than 200 megabytes on hard drive of a personal computer).
[2]     Id. at 641-42.

EXHIBIT   3
PAGE   30

Susan Wines, Esq.
June 28, 2007
Page 3

until the end of the litigation the "mirror image" copies of the hard drives, without "disclos[ing]
the contents of any files or documents to plaintiff or its counsel or other persons."[3]

   The third case that you cite, Superior Consultant Co. v. Bailey, 2000 WL 1279161 (E.D.
Mich. 2000), further supports the protocol applied in Playboy and Simon Property. Finally,
Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL21230605 (N.D. Ill. 2003) is not
applicable to our case. That case concerned the plaintiff's acts of spoliation and destruction of
evidence, which is not present with Ms. Cloonan or Ms. Halpern.

   Of further significance is the fact that each of the four cases cited in your letter concerns
discovery as between *parties* to an action. However, both of our clients are non-party *witnesses*
in this case. Since courts already protect the privacy and privilege interests of parties in these
inspection cases, there will likely be a much greater level of protection for non-parties. Thus, in
order to inspect our clients' computer hard drives, the Court may force Mattel to meet a much
higher burden than when dealing with a party.

   Once again, the central dispute at issue is not, as your letter maintains, whether Mattel has
a right to discover information contained in our clients' computer hard drives. In fact, we agree
that such information is discoverable and, if relevant and non-privileged, should be produced.
However, our clients' computers contain substantial non-relevant and confidential information
that would infringe their rights of privacy if produced. Therefore, based on the foregoing
authorities, we propose to use the protocol set forth in Playboy as follows:

• Your firm and ours mutually agree on an independent third-party, who is an
  expert in the field of computer forensics, to conduct the necessary inspection
  and "mirror image" copying of our clients' computer hard drives. The
  inspection shall include searches for relevant deleted documents and metadata.
  If no expert can be jointly agreed upon, the Court shall select an expert.
  Regardless of the method of selection, the chosen expert shall sign the
  protective order to maintain confidentiality of the documents copied. To the
  extent that the computer expert has direct or indirect access to information
  protected by the attorney-client privilege, such "disclosure" shall not result in
  a waiver of the attorney-client privilege. Mattel shall pay all costs for this
  computer expert;

• Once the expert has been chosen, the expert shall make the "mirror image"
  copies of Ms. Cloonan's and Ms. Halpern's computer hard drives and shall
  search for relevant deleted documents and metadata. Only us and Ms.
  Cloonan and/or Ms. Halpern may be present when the computer is inspected
  and the mirror images made. Thereafter, the expert shall deliver the "mirror

[3] Id. at 642.

EXHIBIT 2
PAGE 31

Susan Wines, Esq.
June 28, 2007
Page 4

image" copies to us, as counsel for Ms. Cloonan and Ms. Halpern, for our
review;

- We will print and review any recovered documents and produce to you all
  non-privileged documents that are responsive to the subpoenas served on
  Ms. Cloonan and/or Ms. Halpern, as the case may be. We will set forth all
  documents that are withheld on a claim of privilege in a privilege log.
  Depending on the volume of data recovered from the computers, the parties
  may need to meet and confer regarding relevant search terms so as to make
  the task of searching the hard drives manageable; and

- We shall be the sole custodian of the "mirror image" copies throughout the
  litigation.

This protocol will allow Mattel to recover the relevant documents, if any, while
maintaining our clients' rights of privacy and confidentiality.

E.      Fee Agreements

I will review the order from Judge Infante and relevant case law regarding third party
retainer agreements and get back to you.

F.      Deposition Dates

I will ask our four clients about possible deposition dates.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

EXHIBIT    8
PAGE    32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
<u>Hon. Stephen G. Larson</u>

# <u>**EXHIBIT 9**</u>

<u>**EXHIBIT TO**</u>:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

January 16, 2008

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

<u>VIA FACSIMILE and E-MAIL</u>

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    <u>Mattel v. Bryant</u>

Dear Dylan:

I am writing with regard to several outstanding issues discussed during our meetings of counsel held on January 9 and January 11, 2008, and with respect to the correspondence noted below.

### <u>Lucy Arant</u>

Responding to your letter dated January 10, 2008, in which you asked me to confirm that Ms. Arant is not withholding any non-logged documents, as we discussed during our meeting of counsel on January 9, 2007, I provided you with amended responses and objections to Mattel's document request that day. I also provided you with an amended privilege log.

With regard to documents responsive to Request No. 28 of Mattel's subpoena for the production of documents, I can confirm that our position is set out in the response to the same in Arant's amended objections and responses dated January 8, 2008. I reiterate that the filed intent-to-use trademark applications and any related statements of use fully satisfy Mattel's request that Arant produce:

DOCUMENTS sufficient to show each instance in which YOU have filed or caused to be filed an intent-to-use application for a name, mark, designation or source identifier, or any contemplated, proposed, considered, putative or formative name, mark, designation or

EXHIBIT 2
PAGE 33

B. Dylan Procter, Esq.
January 16, 2008
Page 2

source identifier, that had been used or was in use prior to the time such application was filed or caused to be filed.

In addition, these documents are as readily available to Mattel as they are to Arant, including without limitation by accessing the public records hosted on the Trademark Office web site at www.uspto.gov. Moreover, as you know, Ms. Arant filed a revised declaration which did not contain the statement regarding filing intent-to-use applications which you refer to in your Request No. 28.

Additionally, we do not believe that any privileged documents have been withheld, other than as set forth on the privilege log. However, we are reviewing the documents again to confirm that everything is included in the privilege log. If we locate any additional relevant documents that are being withheld for privilege, we will provide you with an amended privilege log by Friday, January 18, 2008.

### Photographs and Videos Used During Depositions

I write in response to your last letter of January 11, 2008. As I set forth fully in my letter of December 18, 2008, you have waived the work product protection with respect to the photographs and videotapes of the three-dimensional objects which we produced for inspection, by using some of these photographs at Ms. Leahy's deposition. In furtherance of my follow-up letters of January 2, 2008, and January 11, 2008, I again request that these documents be produced in their entirety. It is clear under the relevant authority that your use of the photographs during a deposition has resulted in a waiver of the work product protection which you have claimed in those items. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 512-13 (S.D. Cal. 2003). In my letter of January 11, 2008, I presented further legal authority in support of my position. You have failed to provide any relevant legal authority contrary to this position. Indeed, the citations in your January 11, 2008, letter do not support your conclusion that the photographs constitute opinion work product rather than factual work product, but instead simply reiterate the general rule that opinion work product is treated differently than fact work product with respect to waiver. This may be true, but it is not relevant here because the photos and video do not constitute opinion work product. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4 (8th Cir. 1998) ("Ordinary work product includes such items as photographs and raw information.").

However, I see that you have agreed in your letter dated January 11, 2008, to provide us copies of all of the photographs and videos taken of the three-dimensional items if I agree to do the same. I would point your attention to my letter of December 18, 2007, in which I clearly stated that we had provided you with copies of all of our photos on December 11, 2007. I also reminded you of this during our telephonic meeting of counsel on January 9, 2008.

EXHIBIT____9____

PAGE____34____

B. Dylan Procter, Esq.
January 16, 2008
Page 3

Unfortunately, you have made MGA's agreement a condition of Mattel's agreement to produce these photographs and videotapes. That is an issue that you need to raise with MGA's attorneys. I request that you reconsider your position and agree to provide us with all of the photographs and videos that you have taken of the three-dimensional objects produced by my clients and remind you again that my clients have already done the same.

### Computers

With regard to your request that I agree to a new protocol as set forth in Mr. Tayback's email dated January 9, 2008, for the review of the computers, hard disk drives, and zip disk (the "Computers") belonging to Ms. Leahy and Ms. Cloonan, as you know, these Computers have already been reviewed pursuant to the protocol that your partner, Susan Wines, and I agreed to several months ago. Moreover, all of the documents located by the expert's search pursuant to the agreed to protocol have already been produced and both Ms. Leahy and Ms. Cloonan have already been deposed. We are, therefore, not willing at this late date to agree to a new protocol.

As you know, Ms. Wines and I spent a considerable amount of time meeting and conferring with respect to a protocol for the review of the Computers. The result of these discussions was the protocol set forth in Ms. Wines' letter dated September 13, 2007. Both Mattel and I agreed to be bound by this protocol. In addition, as I have repeatedly stated, one of the most important issues for me was that this protocol be agreed to and all documents located pursuant to the protocol be produced prior to the depositions of my witnesses. As you know, this was accomplished. Now that the depositions of Ms. Leahy and Ms. Cloonan have been taken, you are attempting to re-review the Computers pursuant to a new protocol. This is not acceptable and you have presented no basis to justify your attempt to change the protocol. In the email dated January 9, 2008, from Mr. Tayback, he stated that "the testimony of the witnesses makes clear that there are graphical (and perhaps other) files on the Cloonan and Leahy hard drives that are relevant, responsive, non-privileged documents but which were either not produced by you or not identified by the prior search protocol." However, the fact that there could be graphical files on the Computers is not new information. As you know, Mr. Bryant testified during his deposition that he and/or Ms. Cloonan may have utilized the computer belonging to Ms. Cloonan to create graphics for Bratz. Unfortunately, it appears as though this effort to alter the protocol previously agreed upon is simply part of a larger strategy to never commit to an agreement and/or conclude a deposition.

With regard to the computers belonging to Ms. Marlow, as I stated during our conference on January 9, 2008, in response to the subpoena, we produced all relevant and responsive documents in Ms. Marlow's possession, custody or control, which included emails residing on her computers. Accordingly, Ms. Marlow has fully complied with her discovery obligations. It is both unreasonable and beyond the scope of Mattel's discovery rights to require Ms. Marlow to

EXHIBIT ___9___
PAGE ___35___

B. Dylan Procter, Esq.
January 16, 2008
Page 4

produce her actual computer hard drives to Mattel. Ms. Marlow has fully complied with her discovery obligations by searching her hard drives and producing all relevant documents in response to Mattel's requests. As you know, when a party is obligated to produce electronically-stored documents in response to discovery requests, it is the responding party's obligation to conduct the search and review its own documents. *See Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007) ("[T]he producing party has the obligation to search available electronic systems for the information demanded."), *quoting McPeek v. Ashcroft*, 202 F.R.D. 31, 32 (D.D.C. 2001)). The mere fact that a requesting party is skeptical that a responding party has produced copies of all relevant and non-privileged documents does not warrant compelling production of the responding party's computer hard drives. *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001). *See also Ameriwood Indus., Inc. v. Liberman*, No. 4-06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests."). Ms. Marlow is not required to go above and beyond the requirements placed on a party and produce her computer hard drives to Mattel.

Finally, your claim that you just now learned during her deposition that Ms. Marlow occasionally used computers is inaccurate. You have known for quite some time that Ms. Marlow sent and received email because we produced such relevant emails well prior to her deposition and I believe that MGA has also produced emails which were sent to Ms. Marlow. With respect to your allegation that I had "previously represented to Mattel that Ms. Marlow does not have any hard drives which she used for work relating to Bratz," I am unaware of making any such representation. Because you insist that I have, please advise as to when and where I made the alleged representation.

### Bank Records

I write further in response to your latest letter on this subject dated January 11, 2008. With regard to the Wells Fargo documents belonging to Ms. Marlow that were produced directly to you in violation of our agreed upon protocol, you stated in your letter dated January 10, 2008, that you would consider my request that you purge yourself of those documents and return them to me so that they may be reviewed pursuant to the protocol. In your letter of January 11, 2008, you proposed supplementing the review protocol for all bank records produced and to be produced by adding documents referring to the following:

 (1) Isabel Ana Cabrera

 (2) Beatriz Morales

 (3) Maria Elena Salazar

 (4) Payments made to, or work or services performed by, any other Mattel employee

EXHIBIT _____2_____

PAGE _____36_____

B. Dylan Procter, Esq.
January 16, 2008
Page 5

    (5)      Payments made by, or any services performed for, any competitors of Mattel, including any company involved in the sale of dolls or toys, while your clients were employed at Mattel

    (6)      The dates on which any entities with which your clients are affiliated were established, including but not limited to payments to the Franchise Tax Board or other tax entities.

With regard to items (1), (2), (3), and (6), I agree to amend the protocol for review of the bank records. However, item (4) is too vague and should be qualified to read "while such person was an employee of Mattel." Item (5) is also too vague and should be amended to read that competitors of Mattel are defined as any company involved in the sale of dolls or toys, not simply "including any company involved in the sale of dolls or toys," as you have drafted it. If you are amenable to these changes, please advise us accordingly.

### Retainer Letters

With regard to your request that I produce any retainer letters signed by my clients, you have taken the position that various orders entered by Judge Infante with respect to Mr. Bryant are controlling as to my non-party clients. As you know, I was not involved with the motions ruled on by Judge Infante, but your firm obviously was. As I pointed out in my letter dated December 18, 2007:

> Regarding the fee agreements, I am at a loss to understand how you can contend that "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here." The point is simple. Mattel is taking the position with respect to my clients that Judge Infante's orders require the production of retainer letters, while at the same time, Mattel has continued to object to the production of retainer letters after the entry of Judge Infante's order. Your silence with respect to my request in my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden or any third party, please provide me with a copy of that document," says everything. You have not provided me with any such retainer letters and, therefore, I can only assume that you have continued to refuse to produce them.

As I told you during our meet and confer on Friday, January 11, 2008, if Mattel agrees that the orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer letters for my third party clients. With respect to your statement during our call on January 11, 2008, that the two situations were like "apples and oranges," I request that you reconsider your

EXHIBIT __2__

PAGE __37__

B. Dylan Procter, Esq.
January 16, 2008
Page 6

position. The issue is simple – what is Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties.

As far as whether I will be providing a privilege log as you propose in your letter of January 10, 2008, I reiterate my previous statement that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. Rule 26 lays out the purpose of providing a privilege log as being to "expressly make the claim" of privilege and to "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." F.R.C.P. 26(b)(5). In this case, the purpose of the privilege log has been fully satisfied – I have told you that I am not producing the retainer letters between my clients and their attorneys. (Nor am I producing the correspondence between my clients and their attorneys.) You are aware of the claim of privilege and what is not being produced. I can also confirm that these retainer letters were not copied or addressed to other parties or third parties.

### Additional Deposition Dates

With respect to your request that my clients be made available for additional deposition dates, as I have repeatedly stated, this request is unreasonable. I have made my clients available for the full seven hours (and beyond in some instances) as required by the federal rules and believe that demanding additional time of these non-party witnesses is not warranted. In particular, I write in response to the issues raised in the letter from Mr. Zeller dated January 4, 2008, and his mischaracterization of why he believes he did not have enough time to question Ms. Marlow. As a preliminary matter, with regard to Mr. Zeller's belief that he did not have time to question Ms. Marlow regarding other Mattel employees she has worked with, documents identifying the other Mattel employees Ms. Marlow worked with were produced well prior to the deposition and Mr. Zeller had plenty of time to review these documents prior to the deposition and did in fact question her extensively about these individuals during the deposition.

In addition, the assertions by Mr. Zeller in the third and fourth paragraphs of his letter that Mattel lacked sufficient time to depose Ms. Marlow regarding Mr. Bryant's drawings and the Prayer Angels project are simply untrue. All of these topics were covered in great detail during the deposition. With regard to the several pages of additional documents produced on the day before the deposition, I have difficulty understanding how those might have adversely affected Mr. Zeller's ability to question Ms. Marlow regarding them. Mr. Zeller stated at the deposition that all these documents except one had been previously produced by MGA or Bryant. With respect to the one new document, Mr. Zeller had seven hours to question Ms. Marlow regarding this document, but he chose not to do so.

EXHIBIT 2
PAGE 38

B. Dylan Procter, Esq.
January 16, 2008
Page 7

Finally, with regard to the specific instructions Mr. Zeller has taken issue with, he claims that at Marlow Depo. Tr 174:4 – 177:3, my objections were "suggestive" and "obstructionist." I reject this assertion, and believe that my objections and those of counsel for Bryant and MGA were well within the federal rules. Furthermore, I will point out again that his line of questioning was an attempt to put words in Ms. Marlow's mouth to support your purported legal conclusion that the drawings at issue were "substantially similar" to the final Bratz product, when in fact Ms. Marlow repeatedly disagreed with your conclusion, stating that:

> Q:    Are they – are they more different or are they more similar?
>
> A:    They're more different.

Not satisfied with Ms. Marlow's answer, Mr. Zeller repeatedly asked the same question over and over in different formats in a failed attempt to get Ms. Marlow to answer the question to his pleasing. If Mr. Zeller had instead asked direct questions and not wasted time forcing Ms. Marlow to repeat herself multiple times, he would have had more than enough time available to him to ask all of the questions that he believes he needed to.

Mr. Zeller also complains about Ms. Marlow's testimony at 87:8 – 13, as follows:

> Q:    Did you have some legal questions in your mind at that time prior to the time that you talked to Mr. Contopolous?

This question was part of an improper line of questioning regarding Ms. Marlow's communications with her attorney, Mr. Contopolous. Prior to this question, Ms. Marlow had testified that she was seeking legal representation from Mr. Contopolous regarding this litigation. See *United States v. Chen,* 99 F.3d 1495, 1501 (9th Cir.1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

In addition, Ms. Marlow fully answered Mr. Zeller's questions with respect to what questions were in her mind prior to the time that she spoke to Mr. Contopolous as follows:

> Mr. McFarland:    Why don't we read it back.
>
> (The record was read by the court reporter as follows:
>
> "Q:    Did you have some questions in your mind at that time prior to the time that you talked to Mr. Contopolous?")

EXHIBIT___9___

PAGE___40___

B. Dylan Procter, Esq.
January 16, 2008
Page 8

Mr. McFarland:       Objection, she's asked and answered your questions or mine regarding this litigation.  She talked to Mr. Contopolous.

By Mr. Zeller:

Q:      You can go ahead and answer.

A:      I don't have anything to say about that.

Q:      You're refusing to answer the question?

Mr. McFarland:       No, she's already answered your question.

By Mr. Zeller:

Q:      What was it specifically about – tell me everything it was about the litigation between Carter Bryant and Mattel that you had on your mind prior to the time that you spoke with Mr. Contopolous?

Mr. McFarland:       She's asked and answered the question.

Did you have anything else in your mind other than what you've said?

The Witness:       No.

By Mr. Zeller:

Q:      So it was just that there was litigation and nothing else?

A:      Yes.

Q:      There was nothing in particular?

Mr. McFarland:       She's --

The Witness:   No.

Mr. McFarland:       -- answered the question.  You have answered the question.

The Witness:   I answered the question.

By Mr. Zeller:

Q:      There was nothing in particular; right?

A:      Right.


## Marital Privilege Instructions


With respect to the marital privilege issue, I am both surprised and confused by your continued attempts to limit the marital privilege to criminal cases.  As explained in my January 2, 2008, letter to you:

Federal common law recognizes two distinct forms of marital privilege.  The first is the privilege against adverse spousal testimony, which invests in the testifying witness the

EXHIBIT 2
PAGE 41

B. Dylan Procter, Esq.
January 16, 2008
Page 9

> privilege of not being compelled to testify against one's spouse. Trammel v. United States, 445 U.S. 40 (1980). The second is the confidential marital communications privilege, which provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged," and which may be asserted by either spouse to bar the testimony of the other regarding marital communications made in confidence. Wolfe v. United States, 291 U.S. 7, 14 (1934)....

As I further provided, courts have held that the confidential marital communications privilege "may be asserted by either spouse in both civil and criminal proceedings, while the testimonial privilege ... is recognized only in criminal proceedings." 281 Syosset Woodbury, 862 F. Supp. 847, 852 (E.D.N.Y. 1994); see also Englemann v. Nat'l Broad. Co., Inc., No. 94 Civ, 5616(MBM)(AJP), 1995 WL 214500, at *2 *(S.D.N.Y. Apr. 10, 1995) ("The second of the two federal marital privileges, the spousal confidential communications privilege ... applies in both criminal and civil cases.").

Nevertheless, you continue to allege that I "have not offered any authority supporting the proposition that the marital privilege applies in civil cases." To the contrary, I believe that is exactly what I did and that it is you that have failed to offer any authority supporting the proposition that confidential marital communications, the one form of the privilege that is relevant here, applies only in criminal cases. Instead, you merely re-assert your claim that marital privilege does not apply here and cite to cases which address only the first form of marital privilege, the privilege against adverse spousal testimony. Specifically, your most recent reference to Ryan v. Commissioner of Internal Revenue, 568 F.2d 531, 542 (7th Cir. 1977) demonstrates my point exactly. In your January 11, 2008, letter, you cite Ryan to argue that marital privilege is "only applicable in criminal cases." However, like 281 Syosset Woodbury, Ryan actually supports my position that only the privilege against adverse spousal testimony is limited to criminal cases. In Ryan, the Seventh Circuit affirmed the Tax Court's rejection of "the Ryans' claim of marital privilege because the privilege against *adverse spousal testimony* is only applicable in criminal proceedings." Id. at 537(emphasis added), 542 ("The Tax Court held that the privilege against *adverse spousal testimony* was only available in criminal cases and therefore was not applicable in civil tax proceedings.") (emphasis added).

Moreover, your claim that the three Supreme Court and Ninth Circuit cases cited in my January 2, 2008, letter "each addressed marital privilege within the context of criminal matters, not civil litigation," is misleading. Indeed, while these cases involved criminal proceedings, two of the three addressed the privilege against adverse spousal testimony. Although the third, Wolfe v. United States, 291 U.S. 7, 14 (1934), addressed the confidential marital communications privilege, the Court actually acknowledged that the two forms of marital privilege are in fact distinct. Id. ("Hence it is that the privilege with respect to communications extends to the testimony of husband or wife even though the different privilege, excluding the testimony of one against the other, is not involved."). Thus, you have once again failed to show that the confidential marital communications privilege is limited to criminal cases.

EXHIBIT 2
PAGE 42

B. Dylan Procter, Esq.
January 16, 2008
Page 10

My responses to the testimony set forth in your letter of January 11, 2008, are set forth below:

Ms. Cloonan's testimony at 38:6-17:

Q:    Other than Mr. McFarland here, have you discussed the lawsuit with anybody?

A.:   Not much more than to tell people that I was involved in it; my father, my stepmother, my family, my husband.

This question was answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 06:23 – 108:9; see 108:2:

Q:    What did you and he discuss on that subject?

A:    I don't recall.

This question was also answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 108:11 – 14:

Q:    Have you discussed this lawsuit with your husband?

A:    I'm not going to answer that.

Q:    You can't tell me one way or the other?

A:    Do I have to?  If I have to, I will.

Mr. McFarland:  Well, first of all, it's asked and answered.  She's already told you she mentioned to her husband and other people.

As I stated on the record, I reiterate that this question was answered previously in the deposition as set forth above, regardless of any instruction.

Ms. Cloonan's testimony at 109: 1 – 8; see 109:15 – 18:

Q:    Prior to Christmas of last year, did you discuss this lawsuit with your husband, Mr. Sandham, your current husband?

EXHIBIT   2
PAGE   43

B. Dylan Procter, Esq.
January 16, 2008
Page 11

A:      I don't know.

Even assuming that the confidential marriage communications privilege does not apply to domestic partners who subsequently marry, you have failed to meet your burden to establish that this conversation occurred prior to marriage and that it, therefore, may not be protected by the marriage privilege. "When encountering a privilege objection at deposition, examining counsel should insist on making a record that will permit meaningful judicial evaluation of the privilege claim." 7 *Moore's Federal Practice* § 30.43[2] (Matthew Bender 3d ed.). Ms. Cloonan answered that she did not know whether this conversation occurred before or after she was married to her husband. It was Mr. Zeller's responsibility to make the showing that the instruction was improper, and he failed to do so.

### Attorney-Client Privilege Instructions

In your letter dated January 11, 2008, you also claim that Ms. Cloonan was improperly instructed regarding facts disclosed during her conversations with counsel. I am unaware of any ruling by Judge Infante so limiting the attorney client communication privilege. Please provide me with the order you are referring to.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc:  Thomas J. Nolan
     Michael Page

EXHIBIT  2
PAGE  44

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 10**

**EXHIBIT TO**:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S
OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO
PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008
ORDER GRANTING IN PART AND DENYING IN PART
MATTEL'S MOTION TO COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY AND VERONICA
MARLOW

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

December 10, 2007

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

VIA MESSENGER

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

  Re:  Mattel v. Bryant

Dear Dylan:

  Please find enclosed copies of items with Bates numbers KMW-M 007644 through KMW-M 007872 that Ms. Lewis pulled from the Veronica Marlow production she viewed last week. She requested that we copy and Bates number these documents and items for her.

       Very truly yours,

       Larry W. McFarland
       Keats McFarland & Wilson LLP

LWM/ccd

cc: Thomas J. Nolan
  Michael Page

Enclosures

EXHIBIT 10
PAGE 45

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 11**

**EXHIBIT TO**:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
MARGARET HATCH-LEAHY'S AND VERONICA MARLOW'S
OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO
PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008
ORDER GRANTING IN PART AND DENYING IN PART
MATTEL'S MOTION TO COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY AND VERONICA
MARLOW

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3749

WRITER'S EMAIL
cdowell@kmwlaw.com

April 25, 2008

**VIA MESSENGER**

Melissa Grant
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   <u>Mattel v. Bryant</u>

Dear Melissa,

Please find enclosed documents having the following Bates numbers, which will complete the production in response to the subpoenas directed to Veronica Marlow, Inc., Doll Bag, Inc., and Marlow Techno-Logic, Inc.:

1.   KMW – M 011644 – 021614
2.   KMW – MAR 000001 – 001457
3.   KMW – MARLOW 000001 – 003351

To date, we still have not received any documents produced in response to Mattel's subpoenas directed to the accountants. Please let us know when we can expect to receive the accountants' documents so that we can prepare for the deposition.

Very truly yours,

Christian C. Dowell
Keats McFarland & Wilson LLP

CCD/jd
Enclosures

EXHIBIT 11
PAGE 46