QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>———————————————<br><br>AND CONSOLIDATED ACTIONS<br>——————————————— | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>MATTEL, INC.'S OPPOSITION TO ANAELISE CLOONAN'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S COMPUTER AND ZIP DISK; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>[Declaration of Christopher Tayback and Proposed Order filed concurrently herewith]<br>[Federal Rule of Civil Procedure 72(a); Local Rule 72-2.1]<br>Hearing Date:   May 19, 2008<br>Time:             10:00<br>Place:            Courtroom 1<br><br>**Phase 1:**<br>Discovery Cut-Off:   January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:             May 27, 2008 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 3

     A.    Elise Cloonan ................................................................................... 3

     B.    Cloonan's Document Subpoena ...................................................... 4

     C.    The Document "Protocol" For Searching and Producing Responsive Electronic Documents ........................................... 4

     D.    Cloonan's Deposition ...................................................................... 6

     E.    Efforts To Reach Agreement on a Revised Protocol .................... 7

     F.    Mattel's Motion and the April 11, 2008 Order ............................ 7

     G.    Cloonan Refuses to Turn Over The Electronic Media ................ 8

ARGUMENT ............................................................................................................. 9

I.     STANDARD OF REVIEW ........................................................................... 9

II.    THE DISCOVERY MASTER DID NOT ERR IN FINDING THAT THE "STRONG LIKELIHOOD" THAT CLOONAN'S ELECTRONIC MEDIA CONTAINS RELEVANT EVIDENCE WARRANTS INTRUSION INTO CLOONAN'S PRIVACY INTEREST, IF ANY ...................................................................................... 10

     A.    There is a Strong Likelihood That Relevant Information is Contained on the Cloonan Computer and the "Bratz" Zip Disk .......... 10

     B.    The Evidence Supports the Discovery Master's Conclusion that Mattel's Need for the Discovery Outweighs Cloonan's Unproven and Unspecified Privacy Interests ........................................ 12

     C.    Cloonan's Claim That the Order Does Not Allow Mattel To Inspect the Computer Forensically Is Baseless ..................................... 16

     D.    Cloonan's Alternative Requests for Relief Are Without Merit ........... 17

CONCLUSION ......................................................................................................... 18

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4
5
Bkan v. Hospitals, Inc.,
   929 F.2d, 1404, 1414 (9th Cir. 1991) ............................................................... 17

6
7
Caylon v. Mizuho Sec. USA Inc.,
   2007 WL 1468889 (SDNY May 28, 2007) ....................................................... 13

8
Dang v. Cross,
   2002 WL 432197 (C.D. Cal. 2002) ................................................................... 9

9
In re Ford Motor Co.,
   345 F.3d 1315 (11th Cir. 2003) ........................................................................ 13

10
11
Gohler v. Wood,
   162 F.R.D. 691 (D. Ut. 1995) ........................................................................... 12

12
Grimes v. City and County of San Francisco,
   951 F.2d 236 (9th Cir. 1991) ............................................................................ 9

13
14
Humphreys v. Regents of Univ. of Cal.,
   2006 WL 335275 (N.D. Cal. 2006) ................................................................... 11

15
Keith H. v. Long Beach Unified School District,
   228 F.R.D. 652 (C.D. Cal. 2005) .................................................................. 14, 15

16
17
Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,
   2003 WL. 21230605 (N.D. Ill. 2003) ............................................................... 14

18
Oakes v. Halvorsen Marine Ltd.,
   179 F.R.D. 281 (C.D. Cal. 1998) ...................................................................... 14

19
20
Paramount Pictures Corp. v. Replay TV,
   2002 WL 32151632 (C.D.Cal. May 30, 2002) ................................................. 17

21
Paddington Partners v. Bouchard,
   34 F.3d 1132 (2nd Cir. 1994) ........................................................................... 17

22
23
Playboy Enterprises, Inc. v. Welles,
   60 F. Supp. 2d 1050 (S.D. Cal. 1999) .......................................................... 13, 14

24
Reyes v. Red Gold, Inc.,
   2006 WL 2729412 (S.D. Tex. 2006) ................................................................ 14

25
26
Rosa v. Commonwealth of Virginia
   638 S.E.2d 92 (Ct. App. Va. 2006) .................................................................. 10

27
Simon Property Group L.P. v. mySimon, Inc.,
   194 F.R.D. 639 (S.D. Ind. 2000) ................................................................. 12, 13

28

<u>Superior Consultant Co. v. Bailey,</u>
   2000 WL 1279161 (E.D. Mich. 2000) ................................................ 12

<u>United States v. Triumph Capital Group, Inc.</u>
   211 F.R.D. 31 (D. Conn. 2002) .................................................. 10, 11

<u>Wolpin v. Philip Morris Inc.,</u>
   189 F.R.D. 418 (C.D. Cal. 1999) .................................................... 9

<u>Yent v. Baca,</u>
   2002 WL 32810316 (C.D. Cal. 2002) ................................................ 9

### <u>Statutes</u>

<u>Fed. R. Civ. P.</u> 34 ................................................................. 13

<u>Fed. R. Civ. P.</u> 34(a)   ........................................................ 13, 15

<u>Fed. R. Civ. P.</u> 72(a) .......................................................... 9, 13

<u>Federal Rule of Evidence</u> 501 ...................................................... 11

### <u>Other Authorities</u>

2006 Committee Notes to <u>Federal Rule of Civil Procedure</u> 45 ................................. 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Elise Cloonan is a critical witness who is closely affiliated with Bryant and MGA and is represented by MGA's counsel.  She seeks to reverse an April 11, 2008 Order by the Discovery Master that compels her to produce a plainly relevant "Zip disk" labeled "Bratz" and a computer hard drive for imaging and forensic examination.  Cloonan's motion—consisting primarily of lengthy excerpts from her counsel's self-serving letters to Mattel—argues that (i) Mattel did not "meet its burden" of establishing that there is a strong likelihood of there being relevant information on the computer and disk (Motion at 19-21); (ii) that the Discovery Master's Order does not actually allow Mattel to obtain an image of either item (Motion at 21-22); and (iii) to the extent the Discovery Master's Order is enforced, it should be limited to allow only that certain documents from the computer and disk be produced pursuant to an unspecified protocol such as the one used with respect to the production of Isaac Larian's computer drive.  (Motion at 22-24).  All of these arguments should be rejected.

The Discovery Master was not clearly erroneous in concluding that Elise Cloonan is a crucial witness, and that evidence regarding what is—*and what is not* —on her computer hard drive and the Zip disk labeled "Bratz" are properly discoverable by Mattel.  Indeed, the facts show the Discovery Master was wholly correct.  Cloonan worked with Carter Bryant at Mattel and was his roommate in 1999-2000--the time when Bryant invented Bratz (and when he likely abandoned the "Bratz" Zip disk that is now in Cloonan's possession).  Bryant testified that he used Cloonan's home computer (rather than his computer at Mattel, where he was working at the time) to create Bratz materials used to pitch Bratz to MGA, and that Cloonan created a Bratz logo on her computer as well.  Cloonan testified that she may have used her computer to prepare graphics for Bryant in 1999 and 2000 but generally denied remembering doing Bratz work for Bryant on her computer.

-1-

Cloonan disclosed for the first time at her December 14, 2007 deposition that she had found a Zip disk labeled "Bratz" in *April 2005*, though the disk was not identified to Mattel until her deposition.  She testified that did not recognize the disk and did not know what it contained.

In contrast to these facts, Cloonan has made no showing that either the Zip disk labeled "Bratz" or the hard drive contain any private or privileged information.  She has never testified—by deposition or declaration—that any such documents are likely to be found in either location.  Indeed, she has stated plainly that she didn't even recognize the "Bratz" Zip disk as belonging to her.  Moreover, although Cloonan's computer and the disk were purportedly searched by her own computer expert using certain key words identified by Mattel in an initial search protocol, those key word searches necessarily do not capture graphical files or related files and did not include key names of co-conspirators who defendants had concealed until after the searches were conducted.  In fact, Cloonan's counsel—who holds himself out as representing MGA and is being paid by MGA—only produced *a single document* (which was unrelated to Bratz) from the "Bratz" Zip disk and only 26 pages from the computer identified through the key word search protocol. The limitations of the protocol were precisely why Mattel expressly reserved its rights to seek further review of any such electronic media.  The Discovery Master's Order makes clear that, under the circumstances, Mattel's need for the evidence outweighs any alleged "intrusion into Ms. Cloonan's privacy interests" and Mattel is entitled to search Cloonan's "electronic devices."  (April 11 Order at 6).

Nor is there any basis for a review of Cloonan's computer and Zip disk pursuant to a new protocol that Cloonan never proposed to the Discovery Master (or to Mattel).  (Motion at 16-17, 23-24).  Cloonan's analogy of the instant dispute to that regarding Isaac Larian's computer is inapposite.  Larian is a primary party to this case and an inspection of his computer would potentially risk disclosing privileged information with respect to this case (as well as implicate his privacy

-2-

1   interests).  Unlike Larian, neither Cloonan nor her counsel has ever made a showing

2   that any privileged documents exist on either the Zip disk, which likely is not even

3   hers, or the computer, which she described at deposition as "almost a public

4   computer" because it was used by so many people.[1]  There is simply no basis to

5   modify the Discovery Master's Order to protect a claim of privilege that has never

6   been made, let alone proven.  And, with respect to whatever general privacy interest

7   Cloonan may have, the Discovery Master specifically determined that it was

8   outweighed by Mattel's compelling need for the evidence that can only be obtained

9   by forensic examination.  (April 11 Order at 6).

10          "Cloonan's other arguments are frivolous.  Mattel's motion plainly

11  sought to inspect the computer and disk for all relevant information, including

12  "graphic files [] and to determine whether any data has been deleted," which is what

13  the Discovery Master ordered.  That the un-signed proposed order did not make that

14  point clear is irrelevant.  (Motion at 9:22-10:17).  The only sensible reading of the

15  April 11 Order is that Mattel is entitled to conduct its own forensic examination of

16  the electronic devices at issue.

17          Accordingly, Mattel respectfully requests Cloonan's motion be denied,

18  the Discovery Master's Order affirmed, and an order that the requested devices be

19  produced without further delay.

20                      **Factual Background**

21     **A.**   **Elise Cloonan**

22          In 1999 to 2000, Elise Cloonan was Bryant's roommate and worked

23  with him at Mattel.[2]  She also worked on the Mattel "Toon Teens" project in 1999

24

25          [1]   Deposition Tr. of Elise Cloonan, dated December 14, 2007 ("Cloonan Tr."), at

26  128:2-130:7, Tayback Dec. Exh. 3.

27          [2]   Deposition Tr. of Anna Rhee, dated February 3, 2005, at 50:10-51:2, 78:24-

28  79:12, 81:16-19, Declaration of Christopher Tayback ("Tayback Dec.") Exh. 2;
    (footnote continued)

1   that Bryant borrowed from to create Bratz and that shows Bryant created Bratz

2   while he was a Mattel employee, and not in 1998 as he claims.[3]  Bryant testified that

3   Cloonan prepared portions of the Bratz pitch materials, including a logo, that Bryant

4   presented to MGA while both she and Bryant were Mattel employees.  Bryant also

5   testified that he used Cloonan's home computer—rather than his work computer at

6   Mattel—to create Bratz materials used to pitch Bratz to MGA.[4]   Although Cloonan

7   acknowledged at deposition that Bryant sometimes used her home computer, she did

8   not produce any documents from her computer that would corroborate Bryant's

9   testimony.[5]

10      **B.   Cloonan's Document Subpoena**

11          Mattel served Cloonan with a subpoena for deposition and documents

12   May 13, 2005—nearly three years ago.[6]  After literally years of delay by MGA and

13   Cloonan—including motions to compel—Cloonan produced 26 pages of documents

14   to Mattel in late 2007, shortly before her deposition, which was finally taken in

15   December 2007.[7]

16      **C.   The Document "Protocol" For Searching and Producing**

17          **Responsive Electronic Documents**

18          Prior to Cloonan's deposition, Mattel entered into a computer

19   document review "protocol" for the search of her (and another witness') computer

20   hard drives.  The protocol was an agreement by Mattel that "initial" searches of the

21

22   Deposition Tr. of Richard Irmen, dated September 28, 2007, at 9:17-12:8, Tayback Dec. Exh. 18.

23   [3]   Deposition Tr. of Carter Bryant ("Bryant Depo."), Vol. I, at 254:17-257:15,

24   dated November 4, 2004, Tayback Dec. Exh. 1.

25   [4]   Id.
     [5]   Cloonan Tr. at 128:2-129:13, Tayback Dec. Exh. 3.

26   [6]   Document Subpoena served on Elise Cloonan, Tayback Dec. Exh. 4.

27   [7]   Id.; Correspondence reflecting production dated December 17, 2007, Tayback Dec. Exh. 5.

28

1  computer hard drives could be done by "key word searches."  The protocol,

2  however, *specifically allowed* Mattel to seek further discovery into the original data

3  and drives for analysis.  It expressly provided: "If there is any issue or question

4  regarding the authenticity, correctness, integrity or completeness of any matter,

5  including without limitation to any document or date from the computers, this

6  protocol does not foreclose Mattel from seeking production and inspection of any

7  matter, including without limitation the original data, drives or documents."[8]

8        The search of Cloonan's disks resulted in the production of 26 pages of

9  documents from her computer and only a single page (unrelated to Bratz) from the

10  "Bratz" Zip disk shortly before her deposition.[9]  The search revealed <u>no</u> privileged

11  documents, no graphical files and no documents relating to Cloonan's work on

12  Bratz pitch materials or Bryant's work on Bratz.[10]  The key word searches also did

13  not and could not establish the absence of documents on the computer hard drives

14  that witnesses testified at deposition should have been located on the drives but

15  which were not produced.  For example, documents deleted may often be recovered

16  by forensic examination unless (as is the case with Bryant himself) a data

17  destruction program was used.[11]  Only a forensic computer examination of the hard

---

18   

19  [8]  Protocol letter signed by Larry McFarland, dated September 13, 2000, Tayback Dec. Exh. 6.

20  [9]  Tayback Dec. Exh. 16 (Single page document recovered from "Bratz" Zip

21  disk);  Declaration of Larry McFarland in Support of Motion Objecting to Portions of Discovery Master's Order Re Cloonan's Computer and Zip Disk ("McFarland

22  Dec."), Exh. 11 (Letter from Larry McFarland to Christopher Tayback, dated

23  January 2, 2008, confirming, <u>inter alia</u>, that one document was recovered from Zip disk).

24  [10]  <u>Id.</u>

25  [11]  As this Court is aware, the history of this case is replete with evidence of spoliation by both defendants and witnesses affiliated with them.  For example,

26  Carter Bryant installed a software program called "Evidence Eliminator" on his

27  computers in 2002, and used the program to permanently destroy data so as to make it unrecoverable by even the most rigorous forensic examination.  He used this

28  (footnote continued)

MATTEL'S OPPOSITION TO CLOONAN'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S
APRIL 11, 2008 ORDER RE HARD DRIVE

1  drives can determine whether such documents are present or were deleted and can

2  be recovered.

### D.   Cloonan's Deposition

4          Cloonan testified at deposition on December 14, 2007, and admitted

5  then that she may have used the computer she had when she lived with Carter

6  Bryant to prepare graphics for Bryant.[12]  She also testified that Bryant himself

7  (among many other people) used her computer, stating "It was like—it was almost a

8  public computer. . . everybody that—everybody and their mother that came through

9  that house got on that computer."[13]  She ultimately gave that computer to her lawyer

10  and it now is in the possession of an independent expert, but Cloonan admits it has

11  *never* been searched for responsive graphical files.[14]  Although Bryant testified at

12  deposition that he used her computer to create Bratz rather than his computer at

13  Mattel, no documents from Cloonan's computer have been produced to support that

14  claim;[15] only a forensic examination can determine the issue with precision by

15  seeking to recover previously deleted files or establishing that, contrary to Bryant's

16  testimony, no Bratz pitch materials were created in that computer.

---

program, causing the overwriting of over 9400 file and folder names and whatever
remnants of the data they once contained, three months after this lawsuit was filed,
and just two days before his computer was imaged by his attorneys in July 2004.
See Summary of Findings of Forensic Analysis Report 1 of Mark J. Menz, dated
February 10, 2008, at 1 (Tayback Dec. Exh. 19).  As another example, Isaac Larian
ordered an MGA executive to white out Mattel fax headers from Carter Bryant's
contract with MGA. Deposition Tr. of Victoria O'Connor. dated December 6, 2004,
at 18:13-18 (Tayback Dec. Exh. 20).

[12]   Cloonan Depo., at 128:2-12.  (Tayback Dec. Exh. 3).

[13]   Id. at 129:11-12.

[14]   Id. at 128:16-129:3.

[15]   Tayback Dec., Exh. 16 (Single page document recovered from "unallocated
clusters" on "Mattel Zip Disk");  McFarland Dec., Exh. 11 (Letter from Larry
McFarland to Christopher Tayback, dated January 2, 2008, confirming, inter alia,
that one document was recovered from Zip disk).

Further, Cloonan identified a "Zip disk" in her possession that is labeled "Bratz," and she claims to have no knowledge of its contents.[16]  Notably, although Cloonan testified that she gave this disk in 2005 to Larry McFarland, an attorney she shares with MGA, in response to Mattel's subpoena for documents, it was not until her deposition in December 2007—over two years later—that Mattel learned that the disk is itself labeled "Bratz."[17]  In plain violation of his obligations, however, Cloonan's counsel did not even produce a copy of the "Bratz" label or otherwise reveal that it was so labeled.  Instead, over two years later, he turned it over to an independent expert without any mention to Mattel or the expert of this highly salient fact.[18]

### E.   Efforts To Reach Agreement on a Revised Protocol

Given the clear deficiencies of Cloonan's production of relevant documents from her computer and the "Bratz" Zip disk, Mattel sought to meet and confer with Cloonan's counsel about alternative ways to ensure that relevant evidence was made available to Mattel.  But Cloonan's counsel rejected all alternatives proposed by Mattel.[19]  Counsel's sole basis for refusing to turn over graphical files or allow Mattel's experts to image or inspect the disk—repeated again in this appeal—is that it supposedly would violate Cloonan's privacy rights.

### F.   Mattel's Motion and the April 11, 2008 Order

On January 23, 2008, Mattel moved *ex parte* to this Court to extend the expert witness discovery deadline and to compel the production of Cloonan's, and other crucial witnesses', computer hard drives and the "Bratz" Zip disk for forensic examination by an expert.  In particular, Mattel sought the right to examine the electronic media for documents related to the newly identified co-conspirators of

---

[16]  Cloonan Depo. at 246:24-249:9 (Tayback Dec. Exh. 3).
[17]  Id. at 263:6-15.
[18]  Id.

Bryant, graphical files not locatable by keyword searches, and data that may have been deleted manually (with or without the use of an electronic data destruction software program, such as the one used by Bryant).  The Court converted the *ex parte* application into a motion to compel, and referred the matter to the Discovery Master.

In Opposition, Cloonan claimed the motion was procedurally improper in a number of respects and, ultimately, that she should not have to produce relevant documents because Mattel had not shown improper conduct sufficient to justify production and that production would impinge her alleged privacy interests.

In light of Cloonan's and Bryant's testimony, the Discovery Master found that there was a "strong likelihood" that Cloonan's computer and the "Bratz" Zip disk may contain relevant information "that is not available from any other source," including graphical files that had not been located by the prior key word protocol review, warranting intrusion into Cloonan's asserted privacy interests. (April 11 Order at 6.)  He also found that "[o]n balance, the potential relevance of the information on Cloonan's computer and the Zip disk outweigh the burden and expense of another examination of these items by Mattel."  (April 11 Order at 6.)  Thus, by Order dated April 11, 2008, the Discovery Master granted Mattel's motion with respect to Cloonan's computer and the Zip disk labeled "Bratz."  (April 11 Order at 3 and 6)

### G.    Cloonan Refuses to Turn Over The Electronic Media

Flouting the Discovery Master's Order, Cloonan refused to produce her computer and the "Bratz" Zip disk for forensic examination and imaging by Mattel. Cloonan's counsel claimed that the Discovery Master's Order does not require Cloonan to produce the Zip drive or the hard drives to Mattel, but permits her to pre-screen and exclude files and data on the drives that she unilaterally deems personal

---

[19]   Tayback Dec. ¶15, Exh. 9 (email to Larry McFarland dated January 9, 2007).

1  and non-responsive from production to protect her unspecified privacy interests.

2  (Motion at 11-12).  Mattel's counsel stated that Mattel had no objection to Cloonan

3  being present during the examination and imaging of the drives and that Mattel

4  would not to use at trial files from her computer that are wholly personal (and which

5  would likely be irrelevant in any event) unless otherwise allowed by order of the

6  Court.[20]  But the Order is clear:  the Discovery Master "granted Mattel's motion as

7  to Cloonan's computer and the Zip disk," and thus ordered her to produce those

8  "electronic devices" to Mattel to search for relevant information and to determine

9  whether any data was deleted.  (April 11 Order at 3, 6-7).  In granting Mattel the

10 right to review the Cloonan's "electronic devices," the Discovery Master expressly

11 ruled that the relevance of the information outweighed Cloonan's merged privacy

12 interests and implicitly acknowledged that the initial key word search protocol was

13 insufficient.

### Argument

### I.  STANDARD OF REVIEW

18         The Discovery Master's rulings are to be treated as if rulings by a

19 magistrate judge and thus may be overruled only if found by the District Court to be

20 "*clearly erroneous or contrary to law*."  Fed. R. Civ. P. 72(a) (emphasis added); see

21 Grimes v. City and County of San Francisco, 951 F.2d 236, 240 (9th Cir. 1991)

22 ("The district court shall defer to the magistrate's orders unless they are clearly

23 erroneous or contrary to law."); Dang v. Cross, 2002 WL 432197, *1 (C.D. Cal.

24 2002) ("Discovery orders . . . are non-dispositive orders subject to [the clearly

25 erroneous or contrary to law] standard of review").

---

[20]  McFarland Dec., Exh. 19

1    Under this deferential standard of review, the Discovery Master's order

2  "is 'clearly erroneous' if, after considering all of the evidence, the district court is

3  left with the definite and firm conviction that a mistake has been committed, and the

4  order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case

5  law or rules of procedure."  <u>Yent v. Baca</u>, 2002 WL 32810316, *2 (C.D. Cal. 2002);

6  <u>Wolpin v. Philip Morris Inc.</u>, 189 F.R.D. 418, 422 (C.D. Cal. 1999) (same).

**II.**    **THE DISCOVERY MASTER DID NOT ERR IN FINDING THAT THE "STRONG LIKELIHOOD" THAT CLOONAN'S ELECTRONIC MEDIA CONTAINS RELEVANT EVIDENCE WARRANTS INTRUSION INTO CLOONAN'S PRIVACY INTEREST, IF ANY**

    **A.**    **There is a Strong Likelihood That Relevant Information is Contained on the Cloonan Computer and the "Bratz" Zip Disk**

    The evidence amply supports the Discovery Master's conclusion that Cloonan's computer and the "Bratz" Zip disk likely contain relevant information. Cloonan only tepidly argues otherwise, suggesting that Mattel's contention that there is a strong likelihood of relevant evidence to be found is "speculation." (Motion at 20:1-6 and 21:2-6).  Cloonan ignores the undisputed evidence showing otherwise.  The Zip disk is itself labeled "Bratz"—although counsel for Cloonan concealed that fact from Mattel for two years until it was finally disclosed by Cloonan at her deposition.

    Independently, Bryant testified at deposition that that he and Cloonan used her computer to work on Bratz in 1999-2000.[21]  Mattel needs access to Cloonan's computer to assess Bryant's veracity and show that he used further Mattel resources to work on Bratz.  Bryant has testified that he used Cloonan's computer

---

[21] Bryant Depo Tr., Vol. 1, at 250:13-21; Bryant Depo Tr., Vol. 2, at 292:18-293:3; 294:11-295:17, Tayback Dec. Exh. 2.

(and not a Mattel computer) to create his Bratz pitch, but Cloonan did not produce any evidence of such work when her computer was searched under the protocol. The *only* evidence that can resolve that issue is from an examination of what is and is not on Cloonan's computer.  Either way, the evidence it will yield will be crucial. If it has files related to the Bratz pitch, it will provide potential evidence as to when the Bratz pitch was created and thus bear directly on the timing of its creation.  If the examination finds no such files, it will show Bryant's testimony is false and give rise to an inference that he used Mattel computers to create his Bratz pitch.

Further, Cloonan does not dispute that there has been no search whatsoever aimed at recovering either graphical files or deleted files because the keyword search protocol cannot recover such files.  Courts have recognized this self-evident proposition:  "An image file is not susceptible to a keyword search". United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 46 n. 11 (D. Conn. 2002); see also id. at 50 ("Keyword searches are also limited because they cannot be conducted on all files, such as image files that contain scanned documents or faxes."); Rosa v. Commonwealth of Virginia, 638 S.E.2d 92, 96 (Ct. App. Va. 2006) ("any text saved in a picture file would not be found simply by using a word search").   Nor do keyword searches reliably uncover deleted files.  "Searching deleted files and free and slack space using keywords can be particularly problematic because when a file is deleted, its name is altered by the FAT thereby rendering it unresponsive to a keyword search.  In addition, a keyword search may locate a portion of a deleted file, but not other portions of the file unless they also contain keywords." Triumph Capital, 211 F.R.D. at 50.  Thus, for example, a file containing a drawing, photograph or scanned image of Bratz, made using a graphical drawing or image program, would not have any searchable text associated with the file aside from the file name.  Likewise, the keyword searches were not sufficient to reliably locate relevant deleted files.  As a result, whether additional relevant evidence is still located on or has been removed from the witnesses' hard

-11-

1  drives cannot be determined without obtaining the hard drives and searching for the

2  graphical files.

3       These facts all support the Discovery Master's conclusion.[22]

4

5  **B.    The Evidence Supports the Discovery Master's Conclusion that**

6  **Mattel's Need for the Discovery Outweighs Cloonan's Unproven**

7  **and Unspecified Privacy Interests**

8       The real thrust of Cloonan's argument is that the Discovery Master

9  clearly erred in determining that Mattel's need for the evidence justifies intrusion

10  into Cloonan's purported privacy interest.  (Motion at 19-21).  Here, too, however,

11  the Discovery Master correctly found her objection unavailing.  First, at no time has

12  Cloonan or her counsel ever articulated what sort of private information purportedly

13  exists on either device—even though her counsel has been in possession of them

14  since 2005.  This sort of vague privacy interest should receive little or no weight.

15  See Humphreys v. Regents of Univ. of Cal., 2006 WL 335275, *1 (N.D. Cal. 2006)

16  (under Federal Rule of Evidence 501, "federal law determines the evidentiary

17  privileges that apply," and "there is no federal analog to the California privacy rights

18  that [defendant] seeks to invoke").

19       Second, Cloonan testified that she did not create the Zip disk labeled

20  "Bratz", did not recognize it, and had no knowledge of its contents.  Thus, the

21  suggestion that the "Zip disk" is likely to contain personal information or files is

22  especially baseless.  In addition, Bryant testified that he used Cloonan's computer

23  when they were roommates in 1999 to 2000 to create Bratz materials.  Cloonan

24  appears to have had little expectation of privacy in the contents of that computer—

25

26  [22] Cloonan's long list of case citations are beside the point.  (Motion at 20:9-21:2).  They all stand for the unremarkable proposition that plaintiff must provide a

27  (footnote continued)

28

1   referring to it as being virtually a "public computer" because so many other people

2   used it.  The mere fact that Cloonan's computer was her personal home computer

3   also does not immunize it from production.  Courts routinely permit inspection of

4   home computers.  See Simon Property Group L.P., 194 F.R.D. at 640-41 (holding

5   that plaintiff in trademark case was entitled to attempt to recover deleted computer

6   files from computers used by employees of the defendant - whether such computers

7   were at home or at work - to develop evidence supporting its claims); Superior

8   Consultant Co. v. Bailey, 2000 WL 1279161, at *13 (E.D. Mich. 2000) (ordering

9   defendants to "create and produce to defense counsel a backup file of defendant

10   Bailey's laptop computer, and a backup file of any personal computer hard-drive to

11   which defendant Bailey has had access at any time.").

12          Third, any privacy interest Cloonan has is amply protected by the

13   Protective Order in this case.  She can designate her documents confidential

14   pursuant to the Protective Order (pursuant to which documents already have been

15   produced by others—including allegedly "private" documents).[23]  Such a

16   designation obviates any privacy concerns.  See, e.g., Gohler v. Wood, 162 F.R.D.

17   691, 697 (D. Ut. 1995) ("Because the protective order limits disclosure of

18   confidential material to those who are necessarily involved in the case, and these

19   parties may use this information only for purposes of litigating this case, excluding

20   any business purpose, the court concludes Deloitte's confidentiality concerns have

21   been addressed adequately.").

22

23

24   factual basis for compelling a document production or physical inspection.  For the
     reasons set forth herein, Mattel has amply done so here.

25   [23]   Tayback Dec. Exh. 8 (October 26, 2007 letter from counsel for Ms. Cloonan

26   stating that he was producing certain non-privileged, personal, non-responsive
     documents that had been identified by the "key word" search, but acknowledging

27   that such documents were protected by the existing protective order).

28

-13-

1    Fourth, even assuming Cloonan had some legitimate privacy objection

2 to the requested inspections (which she does not), the circumstances here support

3 the Discovery Master's Order.  The simple fact that Cloonan produced only *one*

4 *single document* (not even related to Bratz) from the "Bratz" Zip disk and only 26

5 pages from her computer is itself reason to doubt the integrity of Cloonan's

6 production to date.  That too is a basis to allow the requested inspection--as the

7 authorities cited by Cloonan herself show.  <u>Caylon v. Mizuho Sec. USA Inc.</u>, 2007

8 WL 1468889, at *5 (SDNY May 28, 2007) (denying without prejudice request to

9 produce computer for imaging because "the Court is *not yet* faced with any failure

10 by the defendants to conduct a thorough search . . ." (emphasis added)); <u>In re Ford</u>

11 <u>Motor Co.</u>, 345 F. 3d 1315, 1317 (11th Cir. 2003) (courts may allow inspection of

12 computer hard drives, regardless of the other circumstances, where there is evidence

13 of "improper conduct on the part of the responding party" such as "non-compliance

14 with discovery rules").  In addition, although Cloonan found the "Bratz" Zip disk

15 and turned it over to her counsel in April 2005, that fact was concealed from Mattel

16 for over two years until the *day of her deposition*.

17    Ultimately, the Discovery Master properly recognized that Cloonan's

18 vague, unsubstantiated privacy assertions are outweighed by Mattel's need for the

19 evidence even though it is stored on electronic devices that may contain other,

20 unrelated information.  The 2006 Committee Notes to <u>Federal Rule of Civil</u>

21 <u>Procedure</u> 45, recognize that "electronically stored information, as defined in Rule

22 34(a), can also be sought by subpoena."  Under <u>Federal Rule of Civil Procedure</u>

23 34(a) the term "documents" includes documents stored in electronic form.  <u>See</u>

24 <u>Playboy Enterprises, Inc. v. Welles</u>, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999);

25 <u>Fed. R. Civ. P.</u> 34, adv. comm. note.  Mattel's subpoena to Cloonan also defined

26

27

28

1   "documents" to include electronic data and documents.[24]  Even if relevant materials

2   on her drive was deleted, the hard drives must be produced because *deleted records*

3   are discoverable.  See Simon Property Group L.P., 194 F.R.D. at 640-41 (holding

4   that plaintiff was entitled to attempt to recover deleted computer files from

5   computers used by employees of the defendant to develop evidence supporting its

6   claims); Playboy Enterprises, 60 F. Supp. 2d at 1054-55 (ordering a computer expert

7   to make a mirror image of defendant's hard drive to search for emails deleted by

8   defendant); Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL 21230605, at

9   *4, fn. 5 (N.D. Ill. 2003) ("Emails and other electronic documents are discoverable,

10  as are deleted documents still located in a computer's hard drive.").  Thus the

11  Discovery Master correctly ruled that Mattel is entitled to inspect these drives to

12  determine whether they contain additional responsive documents, and to determine

13  whether files have been deleted, as the evidence suggests they do.

14          The Discovery Master's consideration—and rejection—of Cloonan's

15  privacy objection is well supported by law.  While courts can consider privacy

16  concerns, "courts have frequently found that a party's need for information may

17  outweigh whatever privacy rights, if any, another party may have."  Oakes v.

18  Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998); see Reyes v. Red

19  Gold, Inc. 2006 WL 2729412, at *3 (S.D. Tex. 2006) (identity of third parties is not

20  "sufficiently private" to obstruct discovery).  At a minimum, "[r]esolution of a

21  privacy objection . . . requires a balancing of the need for the information sought

22  against the privacy right asserted."   Keith H. v. Long Beach Unified School

23  District, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (granting motion to compel even

24  where "plaintiff's document requests indisputably implicate significant privacy

25  rights of minors who are not parties to this litigation  . . . [because] the information

26  sought *could* help support plaintiff's claim . . . [and] '[p]laintiff's need for the

27  ───────────────────
        [24]   Tayback Dec. Exh. 4.

28

1    requested [information] is great [since it] is unlikely to be available from any other

2    source than [d]efendant's files'") (quotations omitted, emphasis added).

3           Here, the Discovery Master correctly found that relevant information

4    on Cloonan's drives "is not available for from any other source," rendering Mattel's

5    need for access to the drive and "Bratz" Zip disk particularly compelling.  There is

6    no evidence that the information contained in the "Bratz" Zip disk has been

7    disclosed -- ever -- by anyone in any form.  Indeed, only by forensically examining

8    the drives can Mattel determine what Bratz-related data and graphical files exist on

9    those drives, what was never on them and what may have been deleted.  Thus, the

10   Discovery Master correctly ruled that the drives must be produced.

11   **C.    Cloonan's Claim That the Order Does Not Allow Mattel To Inspect**

12   **the Computer Forensically Is Baseless**

13          Cloonan claims that the Discovery Master's Order somehow does not

14   actually provide Mattel the right to image and inspect Cloonan's computer hard

15   drive and the Zip disk.  (Motion at 22-23).  That argument is non-sensical.  Mattel

16   unequivocally asked the Discovery Master to order Cloonan to produce the drive

17   and the disk so that Mattel could search it for graphical files and "determine whether

18   any data has been deleted."  (April 11 Order at 3).  That task can only be

19   accomplished by forensic examination.  Indeed, the Discovery Master *ordered* that

20   although Rule 34 "does not routinely authorize routine *production of electronic*

21   *devices*, . . . [here it is] warranted because of the strong likelihood that there may be

22   relevant information *on the electronic devices*. . . . "  It could not be more clear that

23   the Discovery Master ordered that the devices themselves—the computer drive and

24   the "Bratz" Zip disk—be produced, rather than simply relevant documents that

25   Cloonan's counsel may located therein.[25]  (April 11 Order at 3 and 6).

26   _____

27   [25]  Although not mentioned in her argument, Cloonan suggests that the proposed
     order submitted by Mattel is inconsistent with the Discovery Master's Order

28   (footnote continued)

07209/2495191.2

1    **D.    Cloonan's Alternative Requests for Relief Are Without Merit**

2            Cloonan alternatively requests that this Court create a new protocol for

3    the inspection of her computer and the "Bratz" Zip disk—one that she analogizes to

4    the motion regarding production of Isaac Larian's computer.  (Motion at 22-24).

5    This request should likewise be rejected for at least two reasons.

6            As an initial matter, Cloonan's request that this Court create a new

7    protocol is "too little, too late"—no such proposal was before the Discovery Master.

8    As such, it exceeds the scope of the instant appeal and is not a proper basis for

9    altering the Order.  Under Rule 72, a district court "is to decide whether the

10   [Discovery Master], based on the evidence and information before him, rendered a

11   decision that was clearly erroneous or contrary to law."  Paramount Pictures Corp. v.

12   Replay TV, 2002 WL 32151632, *1 (C.D.Cal. May 30, 2002) (citing Bkan v.

13   Hospitals, Inc., 929 F.2d, 1404, 1414 (9th Cir. 1991).  "Parties objecting to a

14   magistrate judge's order may not present new evidence not presented below."  See

15   also id. (citing Paddington Partners v. Bouchard, 34 F.3d 1132, 1137-38 (2nd Cir.

16   1994)).

17           Moreover, the situation with Isaac Larian's computer is significantly

18   different.  There, Larian's computer contained privileged information, including

19   regarding the instant case.[26]  Here, in contrast, neither Cloonan nor her counsel have

20   *ever* made such an assertion, let alone proved it.  And even though Cloonan's

21   counsel has had possession of the computer and the Zip disk since 2005, they have

22   produced no indicia of privileged communications through, for example, a privilege

23   _____

24   because it used the word "responsive" (Motion at 9:22-10:1).  Putting aside whether
     the language is at all ambiguous, Cloonan's argument is irrelevant.  The Discovery

25   Master never signed the proposed order, and clearly understood what relief Mattel
     was seeking (as did Cloonan--who opposed Mattel's motion on the grounds that

26   producing the electronic media itself would invade her privacy interests), and issued

27   a separate Order, which is the subject of this motion.

28

log.  Indeed, as detailed above, the circumstances of Cloonan's use of the computer, Bryant's use of the computer, and Cloonan's possession of the Zip disk simply belie any claim that privileged or even private information is contained therein.

## **Conclusion**

For the foregoing reasons, Mattel respectfully request that the Court affirm the Discovery Master's April 11, 2008 Order Granting in Part Mattel's Motion to Compel Production of Electronic Media From Elise Cloonan and further requests that the Court issue an order the Discovery Master's Order of April 11, 2008 regarding the inspection of the computer drive of Elise Cloonan and the Zip disk labeled "Bratz" is affirmed.  Ms. Cloonan should also be ordered to make both items available for Mattel to inspect and image without further delay.

DATED:  May 5, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/

Michael T, Zeller
Attorneys for Mattel, Inc.

---

[26]   Hearing Tr., February 28, 2008, at 8:22-9:25, Tayback Dec., Exh. 21.

07209/2495191.2

-18-
MATTEL'S OPPOSITION TO CLOONAN'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER RE HARD DRIVE