1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
3  Los Angeles, CA  90071
   Tel.: (213) 687-5000/Fax: (213) 687-5600
4
   RAOUL D. KENNEDY (Bar No. 40892)
5  (rkennedy@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, CA 94111-5974
7  Tel.: (415) 984-6400/ Fax: (415) 984-2698

8  Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian
9

10

11                  UNITED STATES DISTRICT COURT

12                CENTRAL DISTRICT OF CALIFORNIA

13 CARTER BRYANT, an individual,      ) CASE NO. CV 04-9049 SGL (RNBx)
                                      )
14                      Plaintiff,    ) Consolidated with Case No. CV 04-
                                      ) 09039 and Case No. CV 05-02727
15             v.                     )
                                      ) REPLY IN SUPPORT OF MGA'S
16 MATTEL, INC., a Delaware           ) MOTION OBJECTING TO
   corporation,                       ) DISCOVERY MASTER'S APRIL 22,
17                                     ) 2008 ORDER GRANTING MATTHEW
                        Defendant.    ) BOUSQUETTE'S MOTION TO
18                                     ) QUASH SUBPOENA
                                      )
19                                     )
                                      )
20                                     )
                                      )
21 _____     ) Date:   May 12, 2008
                                      ) Time:   10:00 a.m.
22 AND CONSOLIDATED ACTIONS           ) Judge:  Honorable Stephen G. Larson
                                      ) Place:  Courtroom 1
23                                     )
                                      ) **Phase 1**
24                                     )
                                      ) Discovery Cutoff:    January 28, 2008
25                                     ) Pretrial Conference: May 19, 2008
                                      ) Trial Date:          May 27, 2008
26
27
28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   ARGUMENT ............................................................................................ 3

      A.   The Discovery Master Committed Clear Error By Applying the
           Incorrect Legal Standard. ............................................................. 3

      B.   Regardless of the Standard, Mr. Bousquette Is Subject to
           Deposition in Palm Springs Because That Is His Principal Place
           of Residence and Where He Regularly Transacts Business................ 5

      C.   Mr. Bousquette and Mattel Have Delayed His Deposition Since
           November 2006. ............................................................................. 9

III.  CONCLUSION ......................................................................................... 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Arley v. United Pacific Insurance Co.,*
  379 F.2d 183 (9th Cir. 1967)................................................................. 3

*Asselstine v. Boyne USA, Inc.,*
  No. 1:07MC33, 2007 WL 3124619 (W.D.N.C. Oct. 24, 2007) ........................... 4, 5

*Bostian v. Suhor Industries, Inc.,*
  No. 07-CV-151-GFK-FHM, 2007 WL 3005177 (N.D. Okla. Oct. 12, 2007)......... 8

*Halliburton Energy Services., Inc. v. M-I, LLC,*
  No. H06MC00053, 2006 WL 2663948 (S.D. Tex. Sept. 15, 2006) ................... 6, 7

*In re Application for Order Quashing Deposition Subpoenas,*
  No. M8-85, 2002 WL 1870084 (S.D.N.Y. Aug. 14, 2002)................................. 8

*Lew v. Moss,*
  797 F.2d 747 (9th Cir. 1986)............................................................ 4, 8

*Lewis v. United States,*
  No. C 04-1834 PJH, 2004 WL 2757931 (N.D. Cal. Dec. 2, 2004) ................ 3, 4, 5

*M'Baye v. New Jersey Sports Production, Inc.,*
  246 F.R.D. 205 (S.D.N.Y. 2007).......................................................... 8

*Regents of the University of California v. Kohne,*
  166 F.R.D. 463 (S.D. Cal. 1996)......................................................... 7, 8

# REPLY MEMORANDUM

## I.    PRELIMINARY STATEMENT

Mr. Bousquette's Opposition confirms that the Discovery Master committed clear error in quashing the subpoena served on Mr. Bousquette just a mile from his home in Palm Springs, California.  MGA's Motion demonstrated that the Discovery Master erred by:  (1) applying a "domicile" standard, rather than the controlling "residence" standard adopted by the Ninth Circuit; and (2) accepting Mr. Bousquette's conclusory declaration in the face of overwhelming evidence establishing that Mr. Bousquette resides in Palm Springs and regularly conducts business in Palm Springs.

In his Opposition, Mr. Bousquette does not contest that:  (i) he owns several homes in Palm Springs, (ii) he owns and operates a real estate investment business in Palm Springs, (iii) he is registered to vote in Riverside County, (iv) he owns several vehicles registered in California, and (v) he recently renewed his driver's license in California.  Mr. Bousquette also does not contest that he claims a homeowners' exemption in California for at least one of his Palm Springs properties.  Claiming this exemption means that **Mr. Bousquette has affirmatively represented to the State of California that the home is his *"principal place of residence."*** [1]  Based on this representation, only two conclusions are possible:  either Mr. Bousquette resides in Palm Springs, or he has committed tax fraud.

These uncontested facts establish that Mr. Bousquette resides in Palm Springs, regularly conducts business in Palm Springs, and is subject to being deposed in Palm Springs.

---

[1]    Herrington Decl., Ex. 20: Declaration of Wayne Sherman, ¶ 2 (Bousquette claims homeowners' exemption on Palm Springs residence); Herrington Decl., Ex. 22: Internet printout from Board of Equalization website regarding California's Homeowners' Exemption, explaining requirements for claiming such an exemption.

1    Mr. Bousquette responds by making two basic arguments, neither of which

2 has any merit.  First, Mr. Bousquette asserts that the Discovery Master did not apply

3 the incorrect "domicile" standard because the Order does not expressly mention the

4 word "domicile."  This argument fails because, as explained below, the Discovery

5 Master's Order relies heavily on Mr. Bousquette's supposed "intent" to become and

6 "indefinitely remain" a citizen of Illinois – language that is the hallmark of a

7 "domicile" analysis.  This argument also fails because, regardless of the standard

8 applied, the objective evidence establishes that Mr. Bousquette resides and regularly

9 transacts business in Palm Springs.  Indeed, Mr. Bousquette's Opposition essentially

10 concedes the issue, stating that he "travels extensively in the course of his business"

11 and "visits California regularly." (Opp. at 7:26, 10:11-12.)

12    Second, Mr. Bousquette asserts that it was appropriate for the Discovery

13 Master to rely almost exclusively on Mr. Bousquette's conclusory and self-serving

14 declaration, notwithstanding the overwhelming evidence that Mr. Bousquette resides

15 and regularly transacts business in Palm Springs.  This assertion is contrary to law.

16 As explained below, Mr. Bousquette bore the burden of proof in seeking to quash the

17 subpoena served on him just a mile from his home in Palm Springs.  The Ninth

18 Circuit has made clear that the Court should not accept conclusory and self-serving

19 statements like Mr. Bousquette's when, as here, the objective evidence establishes

20 residence within the district.  The Discovery Master committed clear error by simply

21 accepting Mr. Bousquette's conclusory declaration.

22    MGA has been seeking Mr. Bousquette's deposition since November 2006.

23 Mattel and Mr. Bousquette have done anything and everything possible to delay the

24 deposition, including unilateral cancellations of scheduled deposition dates, and

25 outright deception as to who represented Mr. Bousquette.  Indeed, just this year,

26 Mattel's counsel agreed to produce Mr. Bousquette for deposition and set a date for

27 February 15 in Chicago.  Just days before the deposition, Mattel unilaterally

28

1  cancelled without any good faith excuse or justification. That act led MGA to seek
2  relief before this Court. And since this Court referred the parties to the Discovery
3  Master, the gamesmanship has only continued.

4       MGA respectfully asks the Court to put an end to Mattel and Mr. Bousquette's
5  abuse of the discovery process. Trial is less than three weeks away. Mattel has
6  listed Mr. Bousquette as a Phase 1 witness, and MGA needs his deposition to
7  establish, among other things, facts critical to the damages analysis in this case. Mr.
8  Bousquette was properly served with a subpoena in Palm Spings, a location where he
9  owns numerous properties and operates a real estate investment business. The
10 subpoena was proper under any interpretation of Rule 45. The Court should overrule
11 the Discovery Master's decision and order Mr. Bousquette's deposition immediately.

12 **II.    ARGUMENT**

13       **A.    The Discovery Master Committed Clear Error By Applying the Incorrect Legal Standard.**
14

15       MGA's Motion established that the Discovery Master committed clear error
16 by applying the wrong legal standard. In his Order, the Discovery Master applied a
17 "domicile" standard, which focuses on a person's intent, rather than the "residence"
18 standard adopted in the Ninth Circuit. *See Lewis v. United States*, No. C 04-1834
19 PJH, 2004 WL 2757931, at *2 (N.D. Cal. Dec. 2, 2004) ("the Ninth Circuit has ruled
20 that the term 'residence' does not connote 'domicile' for the purpose of the general
21 venue statute.") (citing *Arley v. United Pac. Ins. Co.*, 379 F.2d 183, 185 (9th Cir.
22 1967)). The term "residence" and its derivatives refer to a person's physical
23 presence. *See Arley*, 379 F.2d at 185 n.1 (term "residence" included individual's
24 second home in Oregon). Federal Rule of Civil Procedure 45 uses the term
25 "resides," not "domicile," and the Discovery Master erred by interpreting Rule 45 as
26 if it contained a "domicile" standard.

27
28

1    In his Opposition, Mr. Bousquette argues that the Discovery Master did not

2    apply a domicile standard because the word "domicile" does not appear in the Order.

3    (Opp. at 11.)  This argument fails because, on its face, the Order makes clear that the

4    domicile standard was applied.  The "domicile standard," unlike the "residence

5    standard," focuses primarily on an individual's "intentions."  *See Lew v. Moss*, 797

6    F.2d 747, 749-50 (9th Cir. 1986) ("[A] person is 'domiciled' in a location where he

7    or she has established a 'fixed habitation or abode in a particular place, and **[intends]**

8    to remain there permanently or **indefinitely**.'") (citations omitted) (emphases added).

9    The Discovery Master expressly relied on Mr. Bousquette's assertions that he

10   "**intends** to file his 2007 federal and state tax returns as a resident of Illinois," and

11   "has no **intention** of changing his residence and expects to remain a resident of

12   Illinois **indefinitely**."[2]  The Discovery Master's focus on Mr. Bousquette's intentions

13   demonstrates he was applying the "domicile standard" rather than the "residence

14   standard" adopted by the Ninth Circuit.

15   As a back-up position, Mr. Bousquette argues that it was appropriate to apply

16   a "domicile" standard, notwithstanding Rule 45's use of the term "resides" and the

17   case law holding that the Ninth Circuit has embraced the "residence standard."  *See*

18   *Lewis*, 2004 WL 2757931, at *2.  In making this argument, Mr. Bousquette relies on

19   a single, unpublished decision from the Western District of North Carolina, and he

20   misrepresents what that case says.  Mr. Bousquette asserts that the *Asselstine* court

21   quashed the subpoena because it "concluded that the recipient of the subpoena

22   'reside[d] principally in Florida and [was] employed there.'" (Opp. at 12, discussing

23   *Asselstine v. Boyne USA, Inc.*, No. 1:07MC33, 2007 WL 3124619 (W.D.N.C. Oct.

24   24, 2007)).  This assertion is false.  As the opinion makes clear, the portion of the

---

[2]    Herrington Decl., Ex. 30: Discovery Master's April 22, 2008 Order Granting
Third-Party Matthew Bousquette's Motion To Quash Subpoena at 3.

decision cited by Mattel is a discussion of what was asserted *in the motion*. If Mr. Bousquette had read the rest of the opinion, he would have seen that the court quashed the subpoena because the motion was unopposed and the court had questions over whether the subpoena had been properly served. *Asselstine*, 2007 WL 3124619, at *1.

Mr. Bousquette also attempts to distinguish the case cited by MGA, *Lewis v. United States*, 2004 WL 2757931, at *2, by arguing that the case did not involve Rule 45. Mr. Bousquette is missing the point. In *Lewis*, the court was interpreting a statute that, like Rule 45, used the term "residence." The court explained: "not only does the clear language of the statute state that only 'residence' is required, the Ninth Circuit has ruled that the term 'residence' does not connote 'domicile' for purposes of the general venue statute." *Id.* (citations omitted). The court concluded that this holding by the Ninth Circuit applied to the statute at issue because both used the term "residence." *Id.* Like the statute at issue in *Lewis*, Rule 45 only requires residence— which, again, the Ninth Circuit has held is not the same as "domicile."

The Discovery Master committed clear error by applying the wrong legal standard, and the Court should overturn his decision quashing the subpoena to Mr. Bousquette.

**B.    Regardless of the Standard, Mr. Bousquette Is Subject to Deposition in Palm Springs Because That Is His Principal Place of Residence and Where He Regularly Transacts Business.**

The following facts, which Mr. Bousquette's Opposition does not challenge, establish that he resides and regularly conducts business in Palm Springs, California:

(1)    Mr. Bousquette was physically present in California and personally served less than a mile from his home in Palm Springs;[3]

---

[3]    Herrington Decl., Ex. 20, ¶ 8.

(2)  since 1984, Mr. Bousquette has owned a large residence in Palm Springs,[4] on which he claims a homeowners' exemption in the State of California;[5]

(3)  he is a registered voter in Riverside County;[6]

(4)  he owns numerous vehicles registered in 2007 in California;[7]

(5)  he recently renewed his California drivers license;[8] and

(6)  he owns and operates a real estate investment business in Palm Springs called "MCP Properties LLC," which itself owns numerous residential and commercial properties in Palm Springs and Los Angeles.[9]

Mr. Bousquette's failure to contest these facts, and specifically his failure to contest that he claims a homeowners' exemption on his Palm Springs residence, is dispositive.  Claiming a homeowners' exemption means that Mr. Bousquette has affirmatively represented to the State of California that the home is his "principal place of residence."[10]  No more is required to establish that the subpoena was proper.

In *Halliburton Energy Servs., Inc. v. M-I, LLC*, No. H06MC00053, 2006 WL 2663948, at *2 (S.D. Tex. Sept. 15, 2006), the court refused to quash a subpoena where the individual traveled to the jurisdiction only four times each year.  The court explained that: "[t]he party moving to quash or modify a subpoena 'must meet the

---

[4]  *Id.* ¶ 2.
[5]  Herrington Decl., Ex. 22: Internet printout from Board of Equalization website regarding California's Homeowners' Exemption.
[6]  Herrington Decl., Ex. 23, ¶ 3.
[7]  Herrington Decl., Ex. 20, ¶ 6.
[8]  Herrington Decl., Ex. 24: Supplemental Declaration of Wayne Sherman, ¶¶ 2-3.
[9]  Herrington Decl., Ex. 20, ¶¶ 2-3.
[10]  Herrington Decl., Ex. 22: Internet printout from Board of Equalization website regarding California's Homeowners' Exemption.

1  heavy burden of establishing that compliance with the subpoena would be
2  unreasonable and oppressive.'" *Id.* (citation omitted).  If four visits per year was
3  sufficient in *Halliburton*, then *a fortiori* Mr. Bousquette's extensive contacts with
4  California are sufficient.  Indeed, Mr. Bousquette's Opposition essentially concedes
5  the issue, stating that he "travels extensively in the course of his business" and "visits
6  California regularly." (Opp. at 7:26, 10:11-12.)
7       Mr. Bousquette also cites *Regents of the Univ. of Cal. v. Kohne*, 166 F.R.D.
8  463, 465 (S.D. Cal. 1996), and argues that this case allowed the Discovery Master to
9  accept the "conclusory" assertions in his declaration.  This case, however, actually
10 illustrates MGA's point.  In *Regents*, the court held that a "conclusory affidavit by
11 [the third-party] providing **factual information** from which to make this
12 determination would suffice . . . .  For example, if [the third party] . . . submitted an
13 affidavit **stating the number of times** . . . that he had conducted business within 100
14 miles of [the] courthouse and a timeframe . . . the Magistrate would have had ample
15 evidence from which to make its determination." *Id.* at 465 (emphases added).
16 Because the movant failed to provide any information regarding the number of times
17 he had visited the forum, the court <u>vacated</u> the Magistrate's order, which had granted
18 the movant's motion to quash the deposition subpoena. *Id.* (noting that movant
19 provided no affidavit stating the number of times he had conducted business within
20 100 miles of the courthouse, therefore, the Magistrate's finding that movant did not
21 regularly conduct business "had no factual support and was therefore clearly
22 erroneous").
23       Here, as in *Kohne*, Mr. Bousquette's declaration provides <u>no factual</u>
24 <u>information</u>.  He gives no evidence and provides no estimate as to how many times
25 he visits Palm Springs.  Rather, the declaration simply parrots the language of Rule
26 45, stating in general, conclusory terms that he does "not reside or regularly transact
27
28

1  business in person within 100 miles of Palm Springs, California."[11]  Under

2  established authority, Mr. Bousquette's declaration is entitled to little, if any,

3  weight—particularly here, where the objective facts overwhelmingly establish that

4  he resides and regularly transacts business in Palm Springs. *See Lew*, 797 F.2d at

5  750 ("domicile is evaluated in terms of 'objective facts,' and that statements of intent

6  are entitled to little weight when in conflict with facts.").[12]

7        Because Mr. Bousquette provided no evidence supporting the Discovery

8  Master's conclusions, and because the objective facts submitted by MGA establish

9  that Mr. Bousquette resides in Palm Springs and regularly transacts business in Palm

10  Springs, the Discovery Master committed clear error in quashing the subpoena to Mr.

11  Bousquette.

---

[11]     Herrington Decl., Ex. 23: Matthew Bousquette's Declaration In Support Of Motion To Quash The Subpoena Seeking Deposition Of Matthew Bousquette, Or In The Alternative Motion For A Protective Order, ¶ 7.

[12]     The cases cited by Mr. Bousquette involved far fewer contacts with the forum district and thus provide no support for his position. *See M'Baye v. New Jersey Sports Production, Inc.*, 246 F.R.D. 205, 208 (S.D.N.Y. 2007) ("[T]raveling to an area within 100-mile radius for ***fourteen to eighteen days in two years*** is insufficient to render a person amenable to a subpoena.") (emphasis added); *Bostian v. Suhor Indus., Inc.*, No. 07-CV-151-GFK-FHM, 2007 WL 3005177, at *1 (N.D. Okla. Oct. 12, 2007) ("***twice yearly visits*** to Oklahoma to conduct business . . . do not qualify as regularly transacting business") (emphasis added); *In re Application for Order Quashing Deposition Subpoenas*, No. M8-85, 2002 WL 1870084, at *3 (S.D.N.Y. Aug. 14, 2002) (a person who comes to New York for business ***four times within five years*** "does not 'regularly transact [] business in person' in New York to the extent contemplated by Rule 45(c)(3)(A)(ii)") (emphasis added); *Kohne*, 166 F.R.D. at 465 ("regularly does not mean ***ten times in seven years***") (emphasis added).  In contrast, Mr. Bousquette has admitted that he "travels extensively in the course of his business" and "visits California regularly." (Opp. at 7:26, 10:11-12.)

**C.     Mr. Bousquette and Mattel Have Delayed His Deposition Since November 2006.**

In a last ditch effort to avoid his deposition, Mr. Bousquette attempts to argue that MGA is somehow responsible for the current situation.  This argument is nonsensical.  MGA has been seeking Mr. Bousquette's deposition since November 2006.  Both Mattel and Mr. Bousquette responded to the deposition subpoena served in November 2006 with "Objections and Responses."[13]  Mattel's counsel, Quinn Emanuel, represented Mr. Bousquette and served responses on his behalf.

In these responses, neither Mattel nor Mr. Bousquette raised any objection regarding service.  Mr. Bousquette never once informed MGA that Quinn Emanuel was apparently not his counsel, despite having knowledge that MGA was seeking to depose him.  Mr. Bousquette then spent more than a year negotiating his deposition through counsel at Quinn Emanuel, who he now claims was not authorized to represent him, all in an effort to avoid or at least delay being deposed.[14]

Mr. Bousquette's argument that MGA supposedly did not work to accommodate his schedule and his request to be deposed in Chicago is similarly without merit. Just this year, Mattel agreed to produce Mr. Bousquette in Chicago for a February deposition, and MGA agreed to take his deposition in Chicago as an accommodation to Mr. Bousquette.[15]  Mattel then unilaterally cancelled that

---

[13]     Herrington Decl., Ex. 2: Mattel's and Matthew Bousquette's Objections and Responses To MGA Entertainment, Inc.'s Notice of Deposition and Subpoena for Production of Documents To Matthew Bousquette, dated December 6, 2006.
[14]     Herrington Decl., Ex. 3: Letter from Timothy Alger to James Jenal, dated January 9, 2007; Herrington Decl., Ex. 7: Letter from Jon Corey to Marcus Mumford, dated December 11, 2007; Herrington Decl., Ex. 8: Letter from Jon Corey to Thomas J. Nolan and Michael Page, dated January 2, 2008; Herrington Decl., Ex. 15: February 25, 2008 Hr. Tr. at 32:1-4.
[15]     Herrington Decl., Ex. 9: Letter from Marcus Mumford to Jon Corey, dated January 9, 2008.

1  deposition without any justification, thus necessitating the current motions and
2  briefing.  It is time for this game playing to stop.

3  **III.    CONCLUSION**

4        For the foregoing reasons, MGA respectfully requests that the Court grant its
5  motion objecting to the Discovery Master's April 22, 2008 Order.  MGA further
6  requests that the Court order Mr. Bousquette to appear for deposition in Palm
7  Springs within five days of the Court's Order.

8

9  DATED:  May 6, 2008

10                                     Respectfully submitted,

11                                     SKADDEN, ARPS, SLATE, MEAGHER &
12                                     FLOM, LLP

13                                     By: _____
14                                          Thomas J. Nolan
                                            Attorneys for MGA Entertainment, Inc.,
15                                          Isaac Larian, MGA Entertainment (HK)
                                            Limited, and MGAE de Mexico S.R.L. de
16                                          C.V.

17

18

19

20

21

22

23

24

25

26

27

28