1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2       johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3       (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4       (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5       (timalger@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
      Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12                       EASTERN DIVISION

| 13 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 14 | Plaintiff, | Consolidated with |
| 15 | vs. | Case No. CV 04-09039 Case No. CV 05-02727 |
| 16 | MATTEL, INC., a Delaware corporation, | [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION AND |
| 17 | Defendant. | APPEAL OF DISCOVERY MASTER'S APRIL 22, 2008 ORDER |
| 18 | | DENYING MOTION TO COMPEL ADDITIONAL DEPOSITION |
| 19 | AND CONSOLIDATED ACTIONS | TESTIMONY OF VERONICA MARLOW; AND |
| 20 | | |
| 21 | | MEMORANDUM OF POINTS AND AUTHORITIES |
| 22 | | |
| 23 | | [Declarations of Cyrus Naim and James Webster filed concurrently] |
| 24 | | |
| 25 | | Hearing Date: June 23, 2008 Time: 10:00 a.m. Place: Courtroom 1 |
| 26 | | |
| 27 | | **Phase 1** Pre-trial Conference: May 19, 2008 Trial Date: May 27, 2008 |
| 28 | | |

MATTEL'S MOTION FOR RECONSIDERATION AND APPEAL OF APRIL 22, 2008 ORDER

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 | PLEASE TAKE NOTICE that on June 23, 2008, at 10:00 a.m., or as
3 | soon as counsel may otherwise be heard, in the courtroom of the Honorable Stephen
4 | G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and
5 | counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to
6 | Reconsider and/or Overrule the Discovery Master's April 22, 2008 Order Denying
7 | Mattel's Motion to Compel Additional Deposition Testimony of Veronica Marlow
8 | ("Order").

9 | This Motion is made pursuant to <u>Local Rule</u> 7-18(a) on the grounds
10 | that since the Discovery Master's Order, Veronica Marlow and her businesses have
11 | produced over 18,000 pages of additional documents on which Mattel has not had
12 | an opportunity to depose Ms. Marlow.  Furthermore, Veronica Marlow's husband
13 | and bookkeeper has since the Order asserted an alleged Fifth Amendment right
14 | against self-incrimination regarding many aspects of Veronica Marlow's businesses
15 | in relation to the newly produced documents, thus warranting further deposition
16 | testimony from Veronica Marlow.  These are facts that could not have been known
17 | or presented to the Court prior to its ruling, because they did not exist yet.  <u>See</u>
18 | <u>Local Rule</u> 7-18(a) (reconsideration is an appropriate remedy where there is "a
19 | material difference in fact or law from that presented to the Court before such
20 | decision that in the exercise of reasonable diligence could not have been known to
21 | the party moving for reconsideration at the time of such decision.").

22 | This Motion is also made pursuant to <u>Federal Rule of Civil Procedure</u>
23 | 72(a) on the grounds, separate and apart from the foregoing, that the Discovery
24 | Master's Order was clearly erroneous and contrary to law in ruling that Mattel was
25 | not entitled to additional time for the deposition.  Ms. Marlow is a key witness
26 | whose knowledge covers a large number of issues—including hundreds of Bratz
27 | products squarely at issue in this case—over a time period of several years.

28 |

1    This Motion is based on this Notice of Motion and Motion, the
2 accompanying Memorandum of Points and Authorities, the Declaration of Cyrus
3 Naim and exhibits filed concurrently, the Declaration of James Webster filed
4 concurrently, the records and files of this Court, and all other matters of which the
5 Court may take judicial notice.

6                          **Statement of Rule 7-3 Compliance**

7    Counsel for the Mattel and third-party Veronica Marlow met and
8 conferred regarding the issues presented by this Motion on January 4, 2008, and
9 April 30, 2008. Counsel for the MGA Defendants and defendant Carter Bryant
10 declined to meet and confer on May 5, 2008.

11

12 DATED:  May 6, 2008               QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
13

14
                                      By /s/ James J. Webster
15                                       James J. Webster
                                         Attorneys for Mattel, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2496684.1
MATTEL'S MOTION FOR RECONSIDERATION AND APPEAL OF APRIL 22, 2008 ORDER

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL BACKGROUND ...................................................................................... 3

A.   Marlow Is A Key Witness..................................................................... 3

B.   Marlow Testified That Additional Mattel Employees Worked On
     The Bratz Product Line. ....................................................................... 4

C.   Marlow Produced Key Documents On The Day Of The
     Deposition. ............................................................................................ 5

D.   Mattel is Unable to Depose Marlow on Important Topics .................. 5

E.   Discovery Master's April 22, 2008 Order............................................ 6

F.   Marlow Produces Over 18,000 Pages of Documents on April 24
     and 25, 2008 ......................................................................................... 6

G.   Peter Marlow is Deposed on May 2, 2008, and Repeatedly
     Invokes Fifth Amendment Rights Against Self-Incrimination.............. 8

H.   The Court's Order of May 6, 2008....................................................... 9

ARGUMENT............................................................................................................. 9

I.   MATTEL REQUIRES ADDITIONAL TIME TO FAIRLY EXAMINE
     MARLOW ...................................................................................................... 10

     A.   It is Undisputed That Ms. Marlow Has Key Personal Knowledge
          Regarding the Origins of Bratz............................................................. 11

     B.   Mattel Spent a Portion of Its Seven Hours Deposing Marlow
          Regarding Cabrera, Morales, and Salazar ........................................... 13

     C.   Marlow Is A Key Witness On MGA's Counterclaims ......................... 16

II.  MARLOW IMPEDED HER DEPOSITION .................................................. 17

     A.   Marlow Produced Documents on the Day of Deposition Without
          Justification ........................................................................................... 17

     B.   Marlow Did Not Produce 18,000 Pages of Documents Until
          After the Discovery Master's Order Was Issued................................... 17

III. SINCE THE DEPOSITION, PETER MARLOW HAS INVOKED HIS
     FIFTH AMENDMENT RIGHTS AGAINST SELF
     INCRIMINATION, FURTHER IMPEDING MATTEL'S
     DISCOVERY ................................................................................................. 18

CONCLUSION........................................................................................................ 20

-i-

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases(s)**

Arista Records LLC v. Lime Group LLC,
    2008 WL. 1752254 (S.D.N.Y. 2008) ................................................................. 16

Boston Scientific Corp. v. Cordis Corp.,
    2004 WL. 1945643 (N.D. Cal. 2004) ................................................................ 18

Glover v. BIC Corp.,
    6 F.3d 1318 (9th Cir. 1993) ............................................................................... 15

Greenly v. Lee,
    2007 WL. 2221444 (E.D. Cal. 2007) ................................................................ 18

Kucala Enterprises, Ltd.,
    2003 WL. 21230605 ........................................................................................... 15

Leon v. IDX Systems Corp.,
    464 F.3d 951 (9th Cir. 2006) ............................................................................. 15

McBride v. Medicalodges, Inc.,
    2008 WL. 1774674 (D. Kan. 2008) ................................................................... 16

Smith v. Massachusetts,
    543 U.S. 462 (2005) ............................................................................................. 9

Tatum v. Schwartz,
    2008 WL. 298824 (E.D. Cal. 2008) ................................................................... 16

## **Statutes**

Fed. R. Civ. P. 30 .......................................................................................... 16, 18

Fed. R. Civ. P. 30(d)(1) ................................................................................. 10, 17

Fed. R. Civ. P. 54(b) ............................................................................................. 9

Fed. R. Civ. P. 72(a) .................................................................................. 9, 16, 18

Local Rule 7-18(a) ................................................................................................. 9

Rule 30(b)(6) ........................................................................................................ 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Veronica Marlow is a key witness, as was recognized by this Court on Mattel's *ex parte* application to set a date for her deposition.  According to defendants, Marlow introduced Bryant to MGA, was present at his first pitch to MGA, and has since received millions of dollars from MGA as a finder's fee. Marlow is one of the few people to whom Mr. Bryant claims he showed his Bratz works prior to presenting them to MGA.  Marlow was also involved with the development of Bratz from its inception through at least 2005.

On December 28, 2007, Mattel conducted 7 hours and 34 minutes of examination of Veronica Marlow.  In that time, Marlow made a stunning revelation. Until then, MGA and Bryant had disclosed Bryant as the only Mattel employee who secretly worked on Bratz and received payments from MGA while employed by Mattel.  Marlow revealed at her deposition that three more Mattel employees had secretly worked on Bratz—and that they did so for five years.  Not only had defendants failed to disclose these obviously relevant facts, but payments to these Mattel employees were made under false names and social security numbers to conceal them.

As other MGA and MGA-affiliated witnesses have routinely done, Marlow also withheld documents until the day of the deposition (and indeed until after her deposition), despite the fact that she was served with the subpoena requiring production in 2005.  At the deposition itself she produced, among other documents, a low quality and virtually unreadable photograph of a never before disclosed contract between Marlow and MGA.

Consequently, Mattel moved for additional time to depose Ms. Marlow. That motion was denied by the Discovery Master.  Then, after that ruling, Marlow and her businesses produced over 18,000 pages of additional documents, which the

1  Discovery Master could not consider.  Some of these documents help establish the
2  timing of the development of the first Bratz dolls.  Mattel has had no opportunity to
3  question Ms. Marlow as to their accuracy and authenticity.  Moreover, many of the
4  documents help establish spoliation and concealment by MGA and its agents.

5          On May 2, 2008, Peter Marlow, who is Ms. Marlow's husband and
6  bookkeeper—and according to Ms. Marlow is a person knowledgeable about her
7  business affairs—was deposed.  Mr. Marlow repeatedly refused to answer questions
8  about Ms. Marlow's use of Mattel employees to work on Bratz, and refused to even
9  answer whether evidence has been concealed in this lawsuit on the grounds that it
10  may incriminate him.  For the most part, Mr. Marlow refused even to authenticate
11  the business records belatedly produced by Marlow on the same Fifth Amendment
12  grounds.

13          In sum, reconsideration of the Order based on the new facts set forth
14  herein is warranted, and Mattel respectfully submits that it be granted additional
15  time to depose Ms. Marlow on these important topics.  The Discovery Master's
16  Order should in any event be overruled as clearly erroneous and contrary to law.[1]

17
18
19
20
21
22
23
24
25

26  [1]  At a telephonic hearing earlier today, May 6, 2008, this Court directed that the
27  parties file no further motions with Judge Infante.  Accordingly, Mattel is seeking
    reconsideration of the Order based on new facts in this Court (rather than before
28  Judge Infante) as well as review of the original order under Rule 72.

## Factual Background

### A.   Marlow Is A Key Witness

Marlow worked for Mattel from January 1996 to approximately 2000,[2] and had worked with Bryant while he was still employed by Mattel.  She is also one of a handful of people to whom defendant Carter Bryant says he showed his Bratz illustrations prior to presenting them to MGA.[3]  Marlow worked on Bratz for MGA from 2000 through 2005.[4]  Marlow therefore has specific knowledge of MGA's product line.

Further, she is allegedly the individual who introduced Bryant to MGA and was involved with Bratz at MGA from its inception.[5]  Ms. Marlow's own invoices reflect that she performed 169 hours of work on Bratz for MGA prior to the time Bryant left Mattel in October 2000, and worked with Bryant when he designed the fashions and hairstyles for the first wave of the Bratz dolls.[6]  She was also one of the few people who worked on samples of the Bratz dolls used at the Hong Kong Toy Fair just two and a half months after Bryant left Mattel.[7]  In addition, she was one of two designers in June 2000 who worked on an allegedly separate MGA doll project called "Angel"[8]—which another witness testified actually referred to Bratz.[9]

---

[2]  Transcript of the Deposition of Veronica Marlow dated December 28, 2007 ("Marlow Depo. Tr.") at 21:25-22:4; 28:17-29:3, attached as Exhibit 1 to the concurrently filed declaration of Cyrus S. Naim ("Naim Dec.").
[3]  Transcript of the Deposition of Carter Bryant dated November 4, 2004 ("Bryant Depo. Tr.") at 46:22-47:8, Naim Dec., Exh. 2.
[4]  Marlow Depo. Tr. at 37:14-18, 106:11-14, 107:22-108:4, Naim Dec., Exh. 1.
[5]  Id. at 106:11-14, 115:10-122:3.
[6]  Naim Dec., Exh. 3.
[7]  Marlow Depo. Tr. at 361:19-23, Naim Dec., Exh. 1.
[8]  Marlow Depo. Tr. at 383:24-384:2, Naim Dec., Exh. 1.
[9]  E.g., Transcript of the Deposition of Anna Rhee dated February 3, 2005 ("Rhee Depo. Tr.") at 107:16-108:12, 132:22-134:18, Naim Dec., Exh. 4.

1  Marlow also worked on multiple Bratz products through 2005, including with the
2  newly revealed Mattel employees.[10]  Many of these products are relevant to MGA's
3  claims as well as Mattel's claims.

4

5  **B.   Marlow Testified That Additional Mattel Employees Worked On**
6  **The Bratz Product Line.**

7  At deposition, Marlow revealed that beginning in 2000 and continuing
8  for five years, three additional Mattel employees—Ana Isabel Cabrera, Beatriz
9  Morales, and Maria Salazar—worked on Bratz while employed by Mattel.[11]  Like
10  Bryant, Cabrera, Morales, and Salazar all signed agreements assigning Mattel all
11  rights to intellectual property they created while employed by Mattel.[12]

12  Following the deposition, Mattel uncovered additional information
13  about the use of Mattel employees on Bratz which it never had an opportunity to
14  depose Marlow on.  First, Mattel learned that Marlow secretly paid the Mattel
15  employees in cash, under false names and fake social security numbers, in order to
16  conceal their work on Bratz from Mattel.[13]  Second, Mattel learned that Marlow was
17  in possession of torn up Bratz design drawings—which apparently were created by
18  Carter Bryant—that she had left in the possession of Ana Cabrera.[14]  Mattel's
19  investigation also showed that the employees may have worked on over *70* Bratz
20  products while employed by Mattel.[15]  Mattel could not question Ms. Marlow as to

21

22  ───────────
23  [10]  Marlow Depo. Tr. at 307:8-308:1, Naim Dec., Exh. 1.
   [11]  Marlow Depo. Tr. at 306:14-308:1, 363:15-365:17, Naim Dec., Exh. 1.
24  [12]  Naim Dec., Exhs. 5-7.
25  [13]  Transcript of the Interview of Ana Cabrera dated January 2, 2008 ("Cabrera
   Tr.") at 46:3-22, 118:3-19:23, Naim Dec., Exh. 8; Transcript of the Interview of
26  Beatriz Morales dated January 14, 2008 ("Morales Tr.") at 24:14-25:14, 27:11-17,
27  115:2-20, Naim Dec., Exh. 9.
   [14]  Cabrera Tr. at 109:16-110:25, Naim Dec., Exh. 8.
28  [15]  Naim Dec., ¶ 11.

07209/2496684.1
MATTEL'S MOTION FOR RECONSIDERATION AND APPEAL OF APRIL 22, 2008 ORDER

1  this information at her deposition for the simple reason that it did not learn these

2  facts until after the deposition was already taken, she did not reveal them at

3  deposition, and Mattel was allowed only seven-and-a-half hours to depose her on

4  the numerous issues in the case.

5

6      **C.      Marlow Produced Key Documents On The Day Of The Deposition.**

7          Further frustrating a fair deposition examination of her, Marlow

8  produced some documents on the day of the deposition that consisted primarily of

9  very dark photographs of paper documents. These pages could not be copied, and

10  thus could not be used as exhibits.[16] Included among them was a confidentiality

11  agreement between Marlow and MGA that had not been previously produced.[17]

12  (The pages of the contract were faxed to Mattel the day before the deposition, but

13  because they were dark photographic images, they were entirely black when

14  faxed.[18]) Mattel asked counsel for a legible copy of the document at the deposition,

15  but did not receive one.[19]

16

17      **D.      Mattel is Unable to Depose Marlow on Important Topics**

18          Due to the sheer number of important topics on which Mattel needed to

19  depose Marlow, the time Mattel had to spend deposing Marlow on Cabrera,

20  Morales, and Salazar, and to the document issues noted above, Mattel was not able

21  to question Marlow on important deposition topics within the time it had allotted,

22  including important details regarding the origins of Bratz. No testimony was

23  elicited, for example, regarding details as to the various fashions that are the subject

24

25  _____

26  [16]  Naim Dec., ¶ 9, Exh. 10.

27  [17]  Naim Dec., ¶ 9.

28  [18]  Id.

[19]  Id.

1  of both MGA's and Mattel's claims.[20]  Similarly, Mattel was not able to question

2  Marlow regarding the development of the Bratz packaging (on which MGA has

3  based claims) beyond initial brainstorming,[21] or how the doll itself was finalized.[22]

4  Nor was Mattel able to specifically question Ms. Marlow's alleged contributions to

5  Bratz throughout the *four years* that she worked on it.

6

7        **E.    Discovery Master's April 22, 2008 Order**

8               Based on these and other issues, Mattel moved to compel additional

9  deposition testimony from Ms. Marlow on January 28, 2008.  On April 22, 2008, the

10  Discovery Master issued his ruling denying Mattel's motion to compel.[23]  He found

11  that, though Mattel had set forth several reasons for additional deposition time, they

12  were not sufficient to require Ms. Marlow to appear for additional deposition time.[24]

13

14        **F.    Marlow Produces Over 18,000 Pages of Documents on April 24 and**

15              **25, 2008**

16               While the motion was pending, Mattel and counsel for Ms. Marlow met

17  and conferred regarding several subpoenas *duces tecum* Mattel had issued to

18  businesses owned by Ms. Marlow, including Doll Bag, Inc., Veronica Marlow, Inc.,

19  and Marlow Techno-logic, Inc.  Mattel made multiple attempts to serve these

20  subpoenas prior to the expiration of the discovery cut-off, but Ms. Marlow and

21  several other witnesses represented by the same counsel (Larry McFarland, who also

22

---

23    [20]   Marlow Depo. Tr. at 338:23-340:3, Naim Dec., Exh. 1.

24    [21]   Marlow Depo. Tr. at 334:12-335:20 (discussing brainstorming sessions
      regarding packaging, but not the results of those sessions), Naim Dec., Exh. 1.

25    [22]   Marlow Depo. Tr. at 236:12-238:7 (discussing early prototype of Bratz doll,

26    but not how it was finalized), Naim Dec., Exh. 1.

27    [23]   Order Denying Mattel's Motion to Compel Additional Deposition Testimony
      of Veronica Marlow, dated April 22, 2008, Naim Dec., Exh. 11.

28    [24]   Id. at 2.

1    represents MGA) evaded service for over a month.  Consequently, the Court issued

2    an Order to Show Cause to Ms. Marlow's counsel.[25]  At the hearing on the Order to

3    Show Cause, Judge Larson stated to Mr. McFarland: "There's no need to order.  I'm

4    simply going to direct that you will receive service on your own behalf and your

5    three clients."[26]  After this Court's Order, the parties met and conferred, Ms. Marlow

6    agreed to accept service of the subpoenas, and Mattel agreed to narrow them in

7    certain respects.[27]

8            On April 24 and 25, 2008, Mattel received the documents it had asked

9    for pursuant to the subpoenas.  Ultimately, Marlow produced over 18,000 pages of

10   responsive documents.[28]  Among these documents were emails and other records

11   relevant to the timing of Bratz's development.  Thus, for example, Marlow produced

12   an email dated August 27, 2000 to Anna Rhee and Carter Bryant to regarding

13   invoices for "Angel,"[29] which Ms. Rhee has testified was a code name for Bratz.[30]

14   Other spreadsheets, invoices, and other financial documents show that Marlow

15   worked on Bratz by name in September 2000.[31]

16           The production also included damning evidence in the form of time

17   sheets and payment records of Mattel employees who worked on Bratz under false

18   names and social security numbers after this lawsuit was filed.   In particular, these

19

20   _____

21   [25]  Civil Minutes Order, dated February 4, 2008, at 2, Naim Dec., Exh. 12.
     [26]  Hearing Transcript dated February 25, 2008, at 24:15-19, Naim Dec., Exh.

22   13.
     [27]  Stipulation and [Proposed] Order Regarding Financial Records Related to

23   Veronica Marlow and Document Subpoenas Issued to Doll Bag, Inc., Veronica

24   Marlow, Inc., and Marlow Techno-Logic, Inc., dated April 8 and April 10, 2008,
     Naim Dec., Exh. 14.

25   [28]  Naim Dec., ¶ 16.
     [29]  See Naim Dec., Exh. 26.

26   [30]  Rhee Depo. Tr. at 107:16-108:12, 121:25-122:11, 132:22-134:18, 228:22-

27   229:4, Naim Dec., Exh. 4.
     [31]  Naim Dec., Exhs. 27, 28, 29.

28

1  included payment receipts for these employees in false names and social security

2  numbers[32] and handwritten time sheets showing exactly when these Mattel

3  employees worked on Bratz.[33]  Prior to this production, Ms. Marlow had produced a

4  mere handful of such documents, including only 20 in total for all three Mattel

5  employees.[34]  None of those earlier produced documents included any information

6  regarding the use of false names and false social security numbers.[35]

7

8      **G.    Peter Marlow is Deposed on May 2, 2008, and Repeatedly Invokes**

9         **Fifth Amendment Rights Against Self-Incrimination**

10            After the production of documents by Veronica Marlow, Mattel took

11  the deposition of her husband, Peter Marlow, on May 2, 2008.[36]  Mr. Marlow, who

12  is also represented by MGA's long-time counsel Larry McFarland, was in charge of

13  all bookkeeping for Veronica Marlow, and oversaw the business they conducted.[37]

14  Mattel attempted to question Mr. Marlow about the documents produced on April

15  24 and 25, and on other aspects of the case that it never had an opportunity to

16  question Ms. Marlow about.  Mr. Marlow invoked the Fifth Amendment and refused

17  to answer questions regarding these documents, or his and Ms. Marlow's conduct,

18  on dozens of occasions.[38]  He refused to answer, for example, any questions

19  regarding the Mattel employees who secretly worked on Bratz, whether he or his

20  wife had attempted to conceal this or other facts through the falsification of

21

22

23

---

24  [32]  E.g., Naim Dec., Exh. 15.

25  [33]  E.g., Naim Dec., Exh. 17.

    [34]  Naim Dec., ¶ 16.

26  [35]  Id.

27  [36]  Declaration of James J. Webster, filed concurrently ("Webster Dec.") at ¶ 2.

    [37]  Id. at ¶ 3.

28  [38]  Id.

1  documents, or to authenticate banking records reflecting payments to Mattel's
2  employees.[39]

3

4      **H.     The Court's Order of May 6, 2008**

5              As a result of Ms. Marlow's document productions, and Mr. Marlow's
6  deposition, Mattel intended to petition the Discovery Master for leave to file a
7  motion for reconsideration of his ruling.[40]  That motion was due to be filed May 6,
8  2008.  Earlier that same day, however, the Court stated at a telephonic conference
9  that no further discovery briefing shall be filed with the Discovery Master.[41]  Mattel
10  therefore brings the instant appeal and motion for reconsideration before this
11  Court.[42]

12

13                              **Argument**

14              By Stipulation and Court Order appointing the Discovery Master, the
15  Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings
16  should be overruled if they are "clearly erroneous or [] contrary to law." <u>Fed. R. Civ.</u>
17  <u>Proc.</u> 72(a).

18              This Court may also reconsider or modify the April 22, 2008 Order.
19  <u>See</u> <u>Smith v. Massachusetts</u>, 543 U.S. 462, 475 (2005) ("'[A] district court has the
20  inherent power to reconsider and modify its interlocutory orders prior to the entry of
21  judgment.'") (quotations omitted); <u>see also</u> <u>Fed. R. Civ. P.</u> 54(b) ("any order or
22  other form of decision . . . is subject to revision at any time before the entry of
23  judgment adjudicating all the claims and the rights and liabilities of all parties");
24  <u>Local Rule</u> 7-18(a) (reconsideration is an appropriate remedy where there is "a

25  _____

26  [39]  <u>Id.</u>
     [40]  <u>Id.</u> at ¶ 5.
27  [41]  <u>Id.</u>
     [42]  <u>Id.</u>
28

1  material difference in fact or law from that presented to the Court before such
2  decision that in the exercise of reasonable diligence could not have been known to
3  the party moving for reconsideration at the time of such decision.").

4  **I.     MATTEL REQUIRES ADDITIONAL TIME TO FAIRLY EXAMINE**
5  **MARLOW**

6          Mattel has made the requisite showing to obtain additional time to
7  examine Ms. Marlow at deposition. See Fed. R. Civ. P. 30(d)(1) ("The court must
8  allow additional time . . . if needed to fairly examine the deponent or if the
9  deponent, another person, or any other circumstance impedes or delays the
10  examination.").

11          In total, Mattel has been allowed only some 7 hours and 34 minutes to
12  depose Ms. Marlow.[43] This was clearly not enough time to cover Marlow's
13  extensive personal knowledge on multiple issues in this case, including the origins
14  of Bratz, her work on dozens of Bratz products, the use of Mattel employees on
15  Bratz, their work on dozens of Bratz products, her work on the "Prayer Angels"
16  project, and MGA's counterclaims. The Discovery Master's Order was therefore
17  clearly erroneous and contrary to law in finding that these reasons were not
18  sufficient to show that additional time was necessary to fairly examine Ms. Marlow.
19  This error is only compounded by the withholding of thousands of pages of relevant
20  documents which Mattel now has, and in relation to which Ms. Marlow's husband
21  has refused to testify on Fifth Amendment grounds. Reconsideration is appropriate
22  based on these new documents and facts.

23
24
25
26
27

28  [43]   Naim Dec., ¶ 17.

1    **A.    It is Undisputed That Ms. Marlow Has Key Personal Knowledge**
2            **Regarding the Origins of Bratz**

3            Ms. Marlow is one of the most important witnesses in the case.  She
4    was one of the first people to whom Bryant claims he showed his Bratz drawings,
5    was involved in the earliest meetings at MGA regarding their development, and
6    continued to work on Bratz until 2005.  Indeed, it is undisputed that Ms. Marlow has
7    key personal knowledge regarding the origins of Bratz.  In her Opposition, Ms.
8    Marlow conceded that she was a "[k]ey [w]itness," and stated, "[t]hat Ms. Marlow is
9    a witness with discoverable information in the litigation has never been disputed by
10   her or her counsel."[44]

11           To take just one example, Marlow can provide evidence that Bryant
12   was working on Bratz as early as June 2000.  Anna Rhee, the face painter of Bratz,
13   testified that the she first painted faces for MGA in June 2000.[45]  Rhee testified that
14   her work was on Bratz and done at Bryant's direction, but that she was directed to
15   write the project code-name "Angel" on the invoice she submitted to MGA for the
16   work she performed.[46]

17           MGA and Bryant have contended that Anna Rhee is mistaken, and that
18   she was instead working on the supposedly separate "Prayer Angels" project in
19   June 2000.  So far, in purported corroboration of MGA's position, three witnesses
20   have given three different accounts of who delivered what to Rhee for painting.
21   MGA employee Kerri Brode claims that she personally had Prayer Angels heads
22
23   _____

24   [44]  Non-Party Veronica Marlow's Opposition to Mattel's Motion to Compel
25   Additional Deposition Testimony and Production of Documents, dated February 12,
     2008, at 4, Naim Dec., Exh. 18.
26   [45]  Rhee Depo. Tr. at 107:16-108:12, 121:25-122:11, 132:22-134:18, 228:22-
     229:4, Naim Dec., Exh. 4.
27   [46]  Rhee Depo. Tr. at 107:16-108:12, 121:25-122:11, 132:22-134:18, 228:22-
28   229:4, Naim Dec., Exh. 4.

1 messengered or fedexed to Rhee's house.[47]  Paula Garcia acknowledged that the
2 Prayer Angels head did not even exist in June of 2000, but stated that either she or
3 Mercedeh Ward personally delivered a "Cabbage Patch Kid" head (a Mattel
4 product) to Rhee's house, so Rhee could paint that face as a place-holder.[48]  Finally,
5 Marlow testified that she was the one who personally hand-delivered a Prayer Angel
6 head to Rhee's house for her to paint.[49]  Mattel did not have an opportunity to
7 examine Marlow on these conflicting accounts relating to a crucial factual issue in
8 this case, or on her other knowledge of this "Prayer Angel" project that MGA itself
9 interjected into the litigation.

10         Moreover, since the Discovery Master issued his Order, Marlow has
11 produced thousands of pages of financial documents that may further shed light on
12 the origins of Bratz.  Thus, Marlow produced an email to Carter Bryant and Anna
13 Rhee regarding work done on "Angel" in August of 2000.[50]  An invoice shows
14 Marlow worked on Bratz by name in September of 2000.[51]  Other spreadsheets and
15 quotations also show work done by Marlow on Bratz in those time periods.[52]  The
16 Discovery Master could not consider this fact in his Order because the documents
17 had been withheld.  Unless it is overruled, Mattel will never have a chance to
18 question her on them.

19         Given the important issues relating to the origins of Bratz on which
20 Marlow has knowledge, Mattel would have required more than seven hours of
21
22

---

23   [47]  Transcript of Deposition of Kerri Brode dated August 15, 2007 ("Brode
24 Depo. Tr.") at 27:2-30:1, Naim Dec., Exh. 19.
     [48]  Transcript of Deposition of Paula Garcia dated May 25, 2007, at 376:15-23,
25 Naim Dec., Exh. 20.
26   [49]  Marlow Depo. Tr. at 384:6-10, Naim Dec., Exh. 1.
     [50]  Naim Dec., Exh. 26.
27   [51]  Naim Dec., Exh. 27.
28   [52]  Naim Dec., Exhs. 28, 29.

1  deposition time if this were the only basis for the request, and certainly requires
2  them now that so many more documents have been produced on the topic.

3

4  **B.    Mattel Spent a Portion of Its Seven Hours Deposing Marlow**
5  **Regarding Cabrera, Morales, and Salazar**

6          Mattel has additional reasons for seeking further testimony. As Ms.
7  Marlow revealed for the first time in her deposition, she has unique knowledge
8  relating to the additional Mattel employees who worked on, and were paid for, Bratz
9  while still employed by Mattel. Mattel is entitled to discovery regarding the details
10 of the Bratz products that these Mattel employees worked on while employed by
11 Mattel. It appears that there were more than 70 such products.[53]

12         Because Mattel was not able to prepare to question Ms. Marlow on
13 these facts prior to the deposition, it was forced to sacrifice time it had already
14 allocated to other important issues. The fact that Mattel employees were so used for
15 MGA's benefit was concealed until Mattel was able to learn of these facts at the first
16 session of Marlow's deposition. Indeed, defendants made false, blanket denials
17 under oath in response to specific discovery questions seeking identification of
18 Mattel employees who worked on Bratz or for MGA.[54] Carter Bryant denied being
19 aware of any other Mattel employee working for MGA while that employee was
20 also employed by Mattel.[55] MGA's Rule 30(b)(6) designee on this topic, Lisa
21 Tonnu, identified no one as having performed work or services for MGA while also

22

23

24      ───────────
        [53]  Naim Dec., ¶ 8.
25      [54]  See e.g., Bryant Depo. Tr. at 286:25-287:5, Naim Dec., Exh. 2; Tonnu Depo.
26  Tr. at 301:2-17, Naim Dec., Exh. 21; MGA's Supplemental Responses to Mattel's
    Revised Third Set of Interrogatories, dated November 30, 2007, at 64-70, Naim
27  Dec., Exh. 22.
        [55]  Bryant Depo. Tr. at 286:25-287:5, Naim Dec., Exh. 2.
28

1  employed by Mattel at any time since 1998.[56]  MGA's interrogatory responses failed
2  to name either Ms. Cabrera or Ms. Morales as ever having worked on Bratz, and
3  claimed that Ms. Salazar, who subsequently became an MGA employee, did not
4  work on Bratz until more than two years after she left Mattel.[57]

5        Mattel was thus unprepared to thoroughly question Ms. Marlow on her
6  revelation.  Since the deposition, Mattel has learned important information regarding
7  these employees.  Documents produced by Marlow as recently as April 24 and 25,
8  2008 show the times these employees worked on Bratz, the specific products they
9  worked on, and the amount they were paid for their work.  Mattel has obviously not
10  been able to question Ms. Marlow regarding their meaning, accuracy or authenticity.
11  Such information is highly relevant not only to the issue of the ownership of Bratz,
12  but also to Bryant's and MGA's knowledge and intent and Mattel's commercial
13  bribery claims.

14        Since the deposition, Mattel also learned that Ms. Marlow helped these
15  employees conceal their activities from Mattel by paying them through false names
16  and social security numbers.  Many of the documents produce in April corroborate
17  this fact, as they show payments made to Ms. Cabrera's sister-in-law, and Ms.
18  Morales' husband, when neither did work on Bratz.  Similarly, Mattel learned that
19  Ms. Marlow had provided torn-up Bratz design drawings—likley created by Carter
20  Bryant—to one of these employees, rather than producing them to Mattel.

21        Such facts are highly relevant to show defendants' knowledge of their
22  wrongdoing.  Such knowledge is relevant to Mattel's claims for intentional
23  interference with contract, and aiding and abetting breach of the fiduciary duty and
24  duty of loyalty, each of which requires that defendants have knowledge of the
25
26
27  [56]  Tonnu Depo. Tr. at 301:2-17, Naim Dec., Exh. 21.
   [57]  MGA's Supplemental Responses to Mattel's Revised Third Set of
28  Interrogatories at 64-70, Naim Dec., Exh. 22.

1   obligations they are helping to violate.  This knowledge also directly contradicts
2   defendants' "good faith" defense.

3          Finally, the torn documents and falsification of work records for these
4   employees relate to issues of spoliation, which is highly important to Mattel's case.
5   It is evidence of guilty knowledge pertinent to Mattel's claims against Bryant and
6   MGA.  As MGA argued in its motion for terminating sanctions, one possible result
7   of spoliation also could be a directed verdict in Mattel's favor.  See, e.g., Leon v.
8   IDX Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006) (affirming dismissal of
9   action for deletion of files from computer hard drive); Kucala Enterprises, Ltd.,
10  2003 WL 21230605 at *6 (dismissing action for use of Evidence Eliminator
11  software to delete computer files).  But at the least, such spoliation would entitle
12  Mattel to an adverse inference instruction at trial.[58]  See, e.g., Glover v. BIC Corp., 6
13  F.3d 1318, 1329 (9th Cir. 1993).  Spoliation is alleged as a predicate act to Mattel's
14  RICO claims.  There can thus be no dispute that spoliation is an important subject of
15  testimony.

16         In sum, the use of these Mattel employees on Bratz, and Marlow's
17  concealment of this fact, is an important topic of testimony on which Mattel requires
18  additional time.  The Discovery Master's Order was clearly erroneous and contrary
19  to law in failing to permit more time for this examination.  In any even, the
20  Discovery Master could not have considered the full extent of this wrongdoing, and
21  his Order should also be reconsidered:  many of the documents establishing the
22  concealment at issue here were only produced less than two weeks ago, i.e., after the
23  Order which Mattel now appeals was issued.

24

25

26

27

28  [58]   See Mattel's Proposed Jury Instructions at 3, 20, Naim Dec., Exh. 23.

07209/2496684.1

-15-

1   **C.   Marlow Is A Key Witness On MGA's Counterclaims**

2          Marlow's testimony is also essential to Mattel's defenses to MGA's

3   counterclaims.  Marlow has revealed that yet more Mattel employees worked on

4   Bratz products until at least 2005.  Mattel's written agreements with those

5   employees assign the rights in such works to Mattel, which would defeat MGA's

6   claims to own the products on which MGA has sued Mattel.  Establishing the facts

7   necessary for this defense requires a product by product review, and an

8   understanding of contributions which Mattel employees made to the creation of each

9   product at issue.  Mattel did not conduct such a review of every single Bratz product

10  at issue (which number over 350)[59] for the simple reason that it lacked adequate

11  time.

12         Ms. Marlow is an admitted key witness, with knowledge on a broad

13  range of issues spanning over five years of information about Bratz.  The Discovery

14  Master's Order was clearly erroneous and contrary to law in rejecting this as a basis

15  to grant additional time for her deposition, and should be reconsidered as a result of

16  the new information uncovered after his Order.  See Fed. R. Civ. Proc. 30 advisory

17  committee's note ("If the examination will cover events occurring over a long period

18  of time, that may justify allowing additional time."); Tatum v. Schwartz, 2008 WL

19  298824, *2 (E.D. Cal. 2008) (granting additional time based on the breadth of topics

20  and documents party needed to cover); McBride v. Medicalodges, Inc., 2008 WL

21  1774674, *2 (D. Kan. 2008) (granting additional time where witness was a "key

22  player"); Arista Records LLC v. Lime Group LLC, 2008 WL 1752254, *2

23  (S.D.N.Y. 2008) (granting additional time where deponent was a "significant

24  witness").

25

26  _____

27  [59]   MGA Entertainment, Inc.'s Supplemental Response to Interrogatory No. 2 of
    Mattel, Inc.'s First Set of Interrogatories Re Claims of Unfair Competition, dated
28  June 21, 2007, Naim Dec., Exh. 24.

1    II.    **MARLOW IMPEDED HER DEPOSITION**

2            For all the reasons noted above, Mattel is entitled to additional time to

3    depose Marlow in order to "fairly examine" her on the information she possesses.

4    Fed. R. Civ. P. 30(d)(1).  Mattel should also be permitted to depose Marlow for the

5    additional reason that she has "impede[d] or delay[ed] the examination." Id.

6

7            A.    **Marlow Produced Documents on the Day of Deposition Without**

8                  **Justification**

9            As set forth above, not only did she withhold documents until after the

10   deposition, Marlow withheld some plainly relevant documents until the day of the

11   deposition.  Mattel had insufficient time to conduct a thorough review of them and

12   question her on them.  Among them was a contract between Marlow and MGA that

13   had never been produced in this action.  An illegible photograph of the contract was

14   produced, preventing Mattel from copying it and thus using it as an exhibit at the

15   deposition.[60]  Although MGA faxed the contract to Mattel the night before the

16   deposition, the fax was also illegible.[61]  Mattel requested a proper copy of this

17   contract and other produced documents, but did not receive one before the

18   deposition. Mattel is entitled to question Marlow on them at her continued

19   deposition.  The Discovery Master's Order was clearly erroneous and contrary to

20   law in rejecting this as a basis for further deposition testimony.

21

22           B.    **Marlow Did Not Produce 18,000 Pages of Documents Until After**

23                 **the Discovery Master's Order Was Issued**

24           Further impeding discovery, Ms. Marlow produced over 18,000 pages

25   of documents less than two weeks ago, after the Discovery Master had issued his

26   _____

27   [60]  Naim Dec., ¶ 11, Exh. 10.

28   [61]  Naim Dec., ¶ 11.

                                              -17-

1   Order, and well after her deposition. As a result of her delay in producing these

2   documents, Mattel has not had an opportunity to question her as to their contents.

3   As discussed above, however, such documents are highly relevant to showing the

4   timing of Bratz, the use of Mattel employees in the creation and development of

5   Bratz, and concealment and spoliation of documents regarding these facts.

6   Marlow's evasion of service, and failure to timely produce these documents,

7   impeded discovery. The Discovery Master could not have considered this fact in his

8   ruling, and it should therefore be reconsidered. Mattel should be permitted

9   additional time to depose Marlow, so that it may question her as to these documents.

10   See Fed. R. Civ. Proc. 30 advisory committee's note ("If the examination reveals

11   that documents have been requested but not produced, that may justify further

12   examination once production has occurred."); Boston Scientific Corp. v. Cordis

13   Corp., 2004 WL 1945643, *3 (N.D. Cal. 2004) (granting additional time to depose

14   witness on documents produced shortly before and after deposition); Greenly v. Lee,

15   2007 WL 2221444, *2 (E.D. Cal. 2007) (granting additional time as a result of

16   documents produced after deposition).

17   **III.   SINCE THE DEPOSITION, PETER MARLOW HAS INVOKED HIS**

18   **FIFTH AMENDMENT RIGHTS AGAINST SELF INCRIMINATION,**

19   **FURTHER IMPEDING MATTEL'S DISCOVERY**

20   Mattel also has been hindered in obtaining the information it seeks

21   from Ms. Marlow from any other source. Peter Marlow's refusal to answer

22   questions at deposition by assertion of his alleged Fifth Amendment rights against

23   self-incrimination has prevented Mattel from adducing evidence regarding the use of

24   Mattel employees on Bratz, or from establishing actions taken to attempt to conceal

25   evidence in this action. Indeed, Mr. Marlow refused to even authenticate business

26   records for Ms. Marlow or her companies. Nor would Mr. Marlow answer whether

27   evidence had been falsified after this suit had commenced:

28

07209/2496684.1

MATTEL'S MOTION FOR RECONSIDERATION AND APPEAL OF APRIL 22, 2008 ORDER

[redacted][62]

Mattel therefore needs further time to depose Ms. Marlow, not only to gather further information regarding her business dealings with Mattel employees, but to determine whether evidence in this lawsuit continues to be concealed.  Because of Mr. Marlow's refusal to answer questions, Mattel has no other source available for this information.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that its Motion be granted in its entirety.

DATED:  May 6, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ James J. Webster
James J. Webster
Attorneys for Mattel, Inc.

---

[62]   Webster Dec., ¶ 4.

-20-