1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9  UNITED STATES DISTRICT COURT

10  CENTRAL DISTRICT OF CALIFORNIA

11  EASTERN DIVISION

12  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)
                                       Consolidated with
13           Plaintiff,                Case No. CV 04-09059
                                       Case No. CV 05-02727
14      vs.

15  MATTEL, INC., a Delaware          Hon. Stephen G. Larson
    corporation,
16                                     MATTEL, INC.'S NOTICE OF
             Defendant.                LODGING IN SUPPORT OF ITS
17                                     OPPOSITION TO ANAELISE
                                       CLOONAN'S MOTION OBJECTING
18  AND CONSOLIDATED ACTIONS           TO PORTIONS OF DISCOVERY
                                       MASTER'S APRIL 11, 2008 ORDER
19                                     REGARDING A FURTHER
                                       EXAMINATION OF MS.
20                                     CLOONAN'S COMPUTER AND ZIP
                                       DISK
21
22                                     Hearing Date: May 19, 2008
                                       Time:         10:00
23                                     Place:        Courtroom 1

24                                     **Phase 1:**
                                       Discovery Cut-Off:   January 28, 2008
25                                     Pre-Trial Conference: May 5, 2008
                                       Trial Date:          May 27, 2008
26
27
28

07209/2495314.1

MATTEL, INC.'S NOTICE OF LODGING

ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT
MAY - 6 2008
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that Mattel hereby lodges the following true and
3  correct copies of all parties' and third-parties' briefing submitted in support of or in
4  opposition to Mattel's previously filed  Ex Parte Application To (1) Compel
5  Production of Electronic Media From Third-Parties Elise Cloonan, Margaret Hatch-
6  Leahy, And Veronica Marlow Or (2) In The Alternative, Modify the Scheduling
7  Order on January 23, 2008, and supporting declarations.  The lodged documents are:

8      1.    Docket No. 1583: Mattel's Ex Parte Application to (1) Compel
9  Production of Electronic Media From Third-Parties Elise Cloonan, Margaret Hatch-
10  Leahy, and Veronica Marlow or (2) in the Alternative, Modify the Scheduling
11  Order; and Memorandum of Points and Authorities in Support Thereof;

12     2.    Docket No. 1583-2: Declaration of Christopher Tayback in Support of
13  Mattel's Ex Parte Application (without exhibits thereto).

14     3.    Docket No. 1621: Notice of Mattel's Failure to Serve the Manually
15  Filed Portion of the Ex Parte Application on Counsel for Ms. Cloonan, Ms. Leahy
16  and Ms. Marlow.

17     4.    Docket No. 1634: Notice of Service of Complete Ex Parte Application
18  Counsel for Ms. Cloonan, Ms. Leahy and Ms. Marlow.

19     5.    Docket No. 1656:  AnaElise Cloonan's, Margaret Hatch-Leahy's, and
20  Veronica Marlow's Opposition to Mattel's Ex Parte Application.

21     6.    Docket No. 1656-2:  Declaration of Larry McFarland in Support of Ana
22  Elise Cloonan's, Margaret Hatch-Leahy's, and Veronica Marlow's Opposition to
23  Mattel's Ex Parte Application (without exhibits thereto).

24     7.    Docket No. 1719: MGA's Joinder in AnaElise Cloonan's, Margaret
25  Hatch-Leahy's, and Veronica Marlow's Opposition to Mattel's Ex Parte
26  Application.

27

28

-1-

8.     Docket No. 1719-2: Declaration of Carl A. Roth in Support of MGA's Joinder in AnaElise Cloonan's, Margaret Hatch-Leahy's, and Veronica Marlow's Opposition to Mattel's Ex Parte Application (without exhibits thereto).

9.     Docket No. 1887: Mattel Inc.'s Reply in Support of its Ex Parte Application.

10.     Docket No. 1887-2: Supplemental Declaration of Christopher Tayback in Support of Mattel Inc.'s Reply in Support of its Ex Parte Application (without exhibit thereto).

DATED:  May 5, 2008                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By  /s/
         Christopher Tayback
         Attorneys for Mattel, Inc.

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 |                    UNITED STATES DISTRICT COURT

9 |                   CENTRAL DISTRICT OF CALIFORNIA

10 |                          EASTERN DIVISION

| | |
|---|---|
| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12 | Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 13 | vs. | Hon. Stephen G. Larson |
| 14 | MATTEL, INC., a Delaware<br>corporation, | MATTEL, INC.'S *EX PARTE*<br>APPLICATION TO (1) COMPEL |
| 15 | | PRODUCTION OF ELECTRONIC |
| 16 | Defendant. | MEDIA FROM THIRD-PARTIES<br>ELISE CLOONAN, MARGARET |
| 17 | AND CONSOLIDATED ACTIONS | HATCH-LEAHY, AND VERONICA<br>MARLOW OR (2) IN THE |
| 18 | | ALTERNATIVE, MODIFY THE<br>SCHEDULING ORDER; AND |
| 19 | | |
| 20 | | MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT<br>THEREOF |
| 21 | | |
| 22 | | [Declaration of Christopher Tayback,<br>Application to File Under Seal and |
| 23 | | [Proposed] Order filed concurrently<br>herewith] |
| 24 | | Hearing Date:   Not Applicable<br>Time:             Not Applicable |
| 25 | | |
| 26 | | **Phase 1:**<br>Discovery Cut-Off:   January 28, 2008 |
| 27 | | Pre-Trial Conference: May 5, 2008<br>Trial Date:             May 27, 2008 |
| 28 | | |

20147/2362326.1

1    Mattel, Inc. ("Mattel") will, and hereby does, respectfully apply

2  *ex parte*, pursuant to <u>Local Rule</u> 7-19 and <u>Fed. R. Civ. P.</u> 45, for an order

3  (1) compelling the production of certain electronic media in the possession, custody

4  and control of key third-party witnesses Elise Cloonan, Margaret Hatch-Leahy and

5  Veronica Marlow for expert examination by January 30, 2008; or (2) in the

6  alternative, modifying the Court's Scheduling Order to extend Mattel's time to

7  produce expert reports until 30 days after production of such electronic media upon

8  resolution of this matter as a regularly noticed motion to compel.

9    Mattel makes this *ex parte* application on the grounds that these

10  witnesses -- who this Court previously has recognized as being key witnesses, who

11  are affiliated with MGA and who are represented by counsel retained by MGA --

12  have in their possession, custody and control electronic media that contains evidence

13  about the origins of Bratz and the timing of its creation and development, including

14  during the time periods when defendant Carter Bryant was working for Mattel.

15  These electronic media include a "Zip disk" labeled "Bratz" and the witnesses'

16  computer hard drives.  Recent discovery shows these electronic media contain

17  evidence which has not been produced and which counsel for these key witnesses

18  has refused to make available for Mattel's expert examination.  Efforts at reaching

19  an agreement with counsel to produce such electronic media have failed.

20    If the evidence is not produced sufficiently in advance of the date that

21  expert reports are due (February 11, 2008), Mattel will be prejudiced by its inability

22  to obtain such discovery in time to have it analyzed by a computer expert.

23  Accordingly, Mattel would be irreparably prejudiced if this application were heard

24  according to regularly noticed motion procedures because Mattel would not be able

25  to complete discovery to which it is indisputably entitled prior to the currently

26  scheduled discovery deadlines.

27    This application is based on this Application, the accompanying

28  Memorandum of Points and Authorities, the concurrently filed Declaration of

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 6 of 57   Page ID
#:60234
Case 2:04-cv-09049-SGL-RNB   Document 1583   Filed 01/23/2008   Page 3 of 17

1   Christopher Tayback, the accompanying application to file certain exhibits to that

2   declaration under seal, the [Proposed] Order and all pleadings and papers on file

3   with the Court in this action.

4          Pursuant to <u>Local Rule</u> 7-19.1, counsel for Mattel gave notice of this

5   application to counsel for all other parties and the witnesses on January 17 and 23,

6   2008.[1]

7          Counsel for Elise Cloonan, Margaret Hatch-Leahy and Veronica

8   Marlow is Larry McFarland of Keats McFarland & Wilson LLP (telephone: 310-

9   248-3830; address: 9720 Wilshire Blvd., Beverly Hills, CA 90212).  Mr. McFarland

10  has stated that his clients will oppose this application.[2]  Counsel for Carter Bryant is

11  Michael Page of Keker & Van Nest, LLP (telephone: 415-391-5400; address: 710

12  Sansome Street, San Francisco, CA 94111). Counsel for MGA Entertainment, Inc.,

13  MGA Entertainment (HK) Ltd., MGAE de Mexico and Isaac Larian is Thomas J.

14  Nolan of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 213-687-5000;

15  address: 300 S. Grand Ave., Los Angeles, CA 90071).  Counsel for Gustavo

16  Machado Gomez is Alexander Cote of Overland Borenstein Scheper & Kim, LLP

17  (telephone: 213-613-4655; address: 300 South Grand Avenue, Suite 2750,

18  Los Angeles, CA 90071).  Counsel for MGA, Bryant and Machado have not

19  informed counsel for Mattel whether they intend to oppose this application.[3]

20

21  DATED:  January 23, 2008          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
22

23

24                                     By /s/ B. Dylan Proctor
                                         B. Dylan Proctor
25                                       Attorneys for Mattel, Inc.

     [1]   Declaration of Christopher Tayback, filed concurrently herewith ("Tayback
26  Dec."), ¶¶ 2-3.
     [2]   Tayback Dec. ¶ 2.
27   [3]   Tayback Dec. ¶ 3.

28

1

# TABLE OF CONTENTS

2

**Page**

3

4 PRELIMINARY STATEMENT ............................................................................... 1

5 STATEMENT OF FACTS ...................................................................................... 4

6 ARGUMENT ........................................................................................................... 8

7 I.    MATTEL IS ENTITLED TO WITNESS' HARD DRIVES AND THE
ZIP DISK LABELED "BRATZ" ..................................................................... 8

8
9 II.   NO PRIVACY INTEREST EXISTS TO PREVENT PRODUCTION
OF RELEVANT DOCUMENTS .................................................................... 9

10 III.  MATTEL WILL BE SEVERELY PREJUDICED IF DEPRIVED OF
THE OPPORTUNITY TO HAVE THESE ELECTRONIC MEDIA
11       EXAMINED BY A FORENSIC COMPUTER EXPERT ............................. 11

12 CONCLUSION ..................................................................................................... 12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2
**Page**

3

### **Cases**

4

5

*Gohler v. Wood,*
  162 F.R.D. 691 (D. Ut. 1995) ......................................................................... 11

6

7

*Humphreys v. Regents of Univ. of Cal.,*
  2006 WL. 335275 (N.D. Cal. 2006) ................................................................. 9

8

*Keith H. v. Long Beach Unified School District,*
  228 F.R.D. 652 (C.D. Cal. 2005) ................................................................... 10

9

*Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,*
  2003 WL. 21230605 (N.D. Ill. 2003) ............................................................... 9

10

11

*Oakes v. Halvorsen Marine Ltd.,*
  179 F.R.D. 281 (C.D. Cal. 1998) ................................................................... 10

12

*Playboy Enterprises, Inc. v. Welles,*
  60 F. Supp. 2d 1050 (S.D. Cal. 1999) ............................................................. 8

13

14

*Reyes v. Red Gold, Inc.,*
  2006 WL. 2729412 (S.D. Tex. 2006) ............................................................. 10

15

*Simon Property Group L.P. v. mySimon, Inc.,*
  194 F.R.D. 639 (S.D. Ind. 2000) ................................................................ 8, 9

16

17

*Superior Consultant Co. v. Bailey,*
  2000 WL. 1279161 (E.D. Mich. 2000) ............................................................. 9

18

### **Statutes**

19

Fed. R. Civ. P. 34 ............................................................................................. 8

20

Fed. R. Civ. P. 45 ............................................................................................. 8

21

Federal Rule of Evidence 501 .......................................................................... 9

22

Local Rule 7-19 .......................................................................................... 1, 2
23

24

25

26

27

28

20147/2362326.1

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 9 of 57   Page ID
#:60237
Case 2:04-cv-09049-SGL-RNB   Document 1583   Filed 01/23/2008   Page 6 of 17

1          ## MEMORANDUM OF POINTS AND AUTHORITIES

2                    ### Preliminary Statement

3          Veronica Marlow, Margaret Hatch-Leahy and Elise Cloonan first

4   refused to appear for deposition; only after Mattel brought a motion to compel did

5   they agree to appear.  Now they refuse to turn over electronic evidence of the

6   creation and development of Bratz, including a Zip disk clearly labeled "Bratz."

7   Mattel again seeks an order to compel.

8          Ms. Marlow, Ms. Hatch-Leahy and Ms. Cloonan are each crucial

9   witnesses who are affiliated with Bryant and MGA, who worked with Bryant to

10  create and develop Bratz, and who are represented by counsel retained by MGA.  As

11  this Court has already recognized, each of them has unique knowledge that goes to

12  the heart of this case, including the origins and design of Bratz:

13         •      Veronica Marlow allegedly introduced Carter Bryant and MGA

14                to one another and worked on Bratz fashions from the beginning

15                through at least 2005.  Bryant has paid her millions of dollars as an

16                ostensible "finder's fee" to bring him and MGA together, and for its

17                part MGA paid Marlow a substantial amount of money in connection

18                with Bratz.  At her deposition on December 28, 2007, Marlow testified

19                that at least three more Mattel employees -- Maria Salazar, Ana Isabela

20                Cabrera and Beatriz Morales -- worked on Bratz while they were

21                employed by Mattel, and did so for years.  Neither Bryant nor MGA

22                had revealed this, despite prior Mattel discovery requests directed to

23                that very issue.  To the contrary, they both gave responses that were

24                clearly misleading as to the three Mattel employees in question.

25         •      Elise Cloonan was Bryant's roommate while both worked at

26                Mattel in 1999 and 2000.  Cloonan testified she searched for documents

27                related to this case, located a Zip disk with the word "Bratz" written on

28                it.  She gave it to her lawyer -- who also represents MGA -- *in 2005*.

1    Cloonan did not create the Zip disk and does not know what is on it.

2    Bryant testified that Cloonan's home computer was used to create the

3    Bratz materials Bryant used to pitch Bratz to MGA in September 2000,

4    while he was employed by Mattel.  Cloonan testified that she had

5    located the hard drive for that computer.

6    •    Margaret Hatch-Leahy sculpted Bratz.  She also was a Mattel

7    employee until September 5, 2000.  Leahy too has at least one

8    computer hard drive that is likely to contain documents, including a

9    digital Bratz sculpture file, that has not been produced in this case.

10    Counsel for these witnesses flatly refuses to produce plainly relevant

11    electronic data.  He refuses to: (1) produce for Mattel's inspection the plainly

12    relevant "Bratz" Zip disk; (2) produce or even search for graphical files on the

13    "Bratz" Zip disk or on any of the witnesses' hard drives; (3) allow any inspection of

14    or conduct any search of Marlow's hard drives; or (4) allow any inspection of

15    Cloonan's hard drive that would shed light on whether, as Bryant testified, it was

16    used to create his alleged "Bratz" pitch.

17    To the extent that he has articulated any basis at all, counsel for these

18    witnesses justifies his stonewalling because the computer data in the possession of

19    Ms. Cloonan and Ms. Hatch-Leahy was given to a third-party expert who has run

20    only certain "key word" searches on their contents.  In September 2007 -- prior to

21    the depositions of these witnesses -- to accommodate the stated concerns of these

22    parties' lawyer, Mattel agreed that *initial* searches of those computer hard drives

23    could be done by keyword searches and thereafter responsive documents produced.

24    The protocol, however (which never applied to Ms. Marlow's computer hard drive),

25    *specifically allowed* Mattel to seek the order it seeks here:  to obtain original data

26    and drives for analysis.  The witnesses' testimony revealed that such key word

27    searches fail to identify relevant responsive evidence.  For example, key word

28    searches do not capture "graphical" files, which are likely contained on each media.

20147/2362326.1

-2-

1   Similarly, the key word search terms themselves do not take into account the new

2   names of Bryant's co-conspirators, only discovered by Mattel on December 28,

3   2007, including Pedro Salazar, Maria Salazar, Ana Isabela Cabrera, and Beatriz

4   Morales.  Further, the keyword searches do not capture the evidence that arises from

5   the *absence* of documents on the computer hard drives, specifically the absence of

6   documents that these same witnesses testified at deposition should have been

7   located on their respective hard drives but which were not, for some reason,

8   produced.  Only a forensic computer examination can determine whether these

9   witnesses were testifying truthfully or not, whether such documents were present

10   and were deleted, and if so, when.

11          Even more troubling, Mattel recently learned that, among the electronic

12   media being held by the independent expert, Ms. Cloonan had given her counsel *in*

13   *2005* a "Zip disk" labeled "Bratz."  Ms. Cloonan -- Bryant's roommate during the

14   relevant time period -- testified that the disk was not hers and she has no knowledge

15   of its contents.  In plain violation of his obligations, however, counsel for the

16   witnesses did not even produce a copy of the "Bratz" label or otherwise reveal that it

17   was so labeled.  Instead, over two years later, he turned it over to an independent

18   expert without any mention to Mattel or the expert of this highly salient fact.  As far

19   as Mattel can tell, counsel's sole basis for refusing to turn over graphical files or

20   allow Mattel's experts to image or inspect the disk is that it supposedly would

21   violate Ms. Cloonan's privacy rights.  That argument is frivolous.  Given that she

22   testified she did not create the disk and has no knowledge of it, Ms. Cloonan can

23   have no privacy interest in it whatsoever.  Furthermore, federal law is well settled

24   that privacy is not a legitimate ground for refusal to produce relevant discovery,

25   especially where, as here, there is a protective order in place ensuring its

26   confidentiality.

27          Mattel should not be prejudiced as a result of the actions of MGA and

28   its affiliated witnesses.  Mattel needs to receive relevant, responsive electronic data

1   from these key witnesses with adequate time to allow a forensic computer expert to

2   examine them and prepare a report.  Absent prompt relief from the Court, Mattel

3   will be denied its right to do so.  The Court should order these witnesses to produce

4   images of their hard drives and the Zip disk labeled "Bratz" no later than January 30,

5   2008.  In the alternative, if this matter must proceed on regular notice, Mattel

6   requests that the Court modify the Scheduling Order to extend Mattel's time to

7   conduct expert examination of such items and produce a report from its expert

8   regarding that analysis to 30 days after the receipt of such items.

9

10                          **Statement of Facts**

11          <u>Marlow.</u>  Veronica Marlow met Carter Bryant in or about 1996 while

12   they both worked at Mattel.[4]  She later left Mattel to became a freelance designer

13   and began performing freelance work for MGA in or about April of May of 2000.[5]

14   Both Ms. Marlow and Paula Garcia, MGA's Bratz project manager, have testified

15   that it was Veronica Marlow who first brought Bryant to MGA's attention and that

16   Ms. Marlow was present at Bryant's pitch meeting for Bratz with MGA,[6] which

17   even by defendants' account occurred when he was employed by Mattel.  Testimony

18   and documents have revealed that Bryant and MGA have paid Ms. Marlow millions

19   of dollars as a supposed "finder's fee."[7]

20

21

22   _____

23   [4]   Deposition Tr. of Veronica Marlow, dated December 28, 2007 ("Marlow
     Depo."), at 18:1-10. [Tayback Dec. Exh 1]

24   [5]   <u>Id.</u> at 37:14-18.

25   [6]   <u>Id.</u> at 115:10-122:3; Deposition Tr. of Paula Garcia, Vol. 1 ("Garcia Depo."),
     dated May 24, 2007, at 186:19-187:16; 242:19-243:17; 264:21-266:20; 270:22-

26   271:1. [Tayback Dec. Exh. 2]

27   [7]   Deposition Tr. of Richard Irmen, dated September 28, 2007 ("Irmen Depo."),
     at 270:20-271:7 [Tayback Dec. Exh 3].

28

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 13 of 57   Page ID
#:60241
Case 2:04-cv-09049-SGL-RNB   Document 1663   Filed 01/23/2008   Page 10 of 17

1    <u>Leahy</u>.  Margaret Hatch-Leahy was a Mattel employee until September
2  2000.[8]  Bryant solicited Ms. Hatch-Leahy to sculpt the Bratz dolls and introduced
3  her to MGA while he was still employed by Mattel.[9]  Leahy created the first Bratz
4  sculpt and, according to Ms. Garcia, was the sole person to work on the first Bratz
5  sculptures in the key time-period of 2000.[10]  She also worked on the first Bratz
6  samples exhibited at the Hong Kong Toy Fair in January 2001 and the New York
7  Toy Fair in February 2001.[11]  In addition, Ms. Leahy admitted for the first time at
8  her deposition last month that she worked for Mattel competitors while working for
9  Mattel in knowing violation of her employment agreements.[12]

10    <u>Cloonan</u>.  Elise Cloonan was Bryant's roommate in 1999-2000 and
11  worked with him at Mattel.[13]  She also worked on the Mattel "Toon Teens" project
12  in 1999 that Bryant borrowed from to create Bratz.[14]  Bryant testified that Ms.
13  Cloonan prepared portions of the written Bratz pitch materials that Bryant presented
14  to MGA while both she and Bryant were Mattel employees.[15]

15    <u>Document Subpoenas to Each of the Witnesses.</u>  Mattel served
16  subpoenas for deposition and documents on each of these witnesses in April 2005--
17  nearly three years ago.  After literally years of delay--including motions to compel--
18
19

---

20  [8]   Tayback Dec. Exh. 5 [Leahy's Application for Employment]
21  [9]   Deposition Tr. of Carter Bryant, Vol. I, dated ("Bryant Depo."), dated
      November 4, 2004 at 70:24-71:13. [Tayback Dec. Exh. 6]
22  [10]   Garcia Depo., at 255:1-17; 629:5-18.
23  [11]   Id. at 481:20-482:1; 489:5-11.
      [12]   Deposition Tr. of Margaret Hatch-Leahy ("Hatch-Leahy Depo."), dated
24  December 12, 2007, at 180:1-181:18. [Tayback Dec. Exh. 7]
25  [13]   Deposition Tr. of Anna Rhee, dated February 3, 2005 ("Rhee Depo."), at
      50:10-51:2, 78:24-79:12, 81:16-19 [Tayback Dec. Exh. 8]; Irmen Depo. at 9:17-
26  12:8.
27  [14]   Bryant Depo. at 254:17-257:15.
      [15]   Bryant Depo, Vol. II, 289:22-292:25.  [Tayback Dec. Exh. 6]
28

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 14 of 57   Page ID
#:60242
Case 2:04-cv-09049-SGL-RNB    Document 1583    Filed 01/23/2008    Page 11 of 17

1   these witnesses produced electronic documents to Mattel in the late 2007, shortly

2   before their depositions, which were finally taken in December 2007.[16]

3             The Document "Protocol" For Searching and Producing Responsive

4   Electronic Documents.   Part of the delay was Mattel's effort to address in good faith

5   the objection of the witness' counsel to Mattel examining these computers in their

6   entirety.   In the Fall of 2007, the parties agreed on a protocol for an independent

7   expert to run certain "key word" search terms on the computer data in the possession

8   of Ms. Cloonan and Ms. Hatch-Leahy, produce identified documents to the witness'

9   counsel, who would in turn review them for privilege and produce non-privileged,

10  identified documents.[17]   To the extent that counsel produced documents, they were

11  largely produced shortly before the witnesses' depositions.   No documents were

12  withheld as privileged, yet no graphical computer files and no documents relating to

13  the work done by the newly identified co-conspirators were produced.   Notably, the

14  protocol to which the parties agreed specifically stated that it did not "foreclose

15  Mattel from seeking production and inspection of any matter, including without

16  limitation the original date, drives or documents."[18]

17            The Witnesses' Depositions and Other Recent Discovery.   On

18  December 28, 2007, in the deposition of Veronica Marlow, Mattel learned the

19

20  [16]   Tayback Dec. Exhs.10-12 [subpoenas to Marlow, Hatch-Leahy and Cloonan
21  ]; Tayback Dec. Exh. 13 [correspondence reflecting production dated December 17,
    2007].
22  [17]   Tayback Dec. Exh. 14 [September 13-27, 2007 letter agreement between
23  Susan Wines and Larry McFarland re computers belonging to Ms. Cloonan] and
    Exh. 15 [October 4, 2007 letter from Larry McFarland to Michael Zeller re
24  extension of September protocol to computers belonging to Margaret Hatch-Leahy].
25          This protocol was never applied to Ms. Marlow's computer.   Thus, Ms.
    Marlow's computer has never been "key word" searched and presently is, to Mattel's
26  knowledge, in Ms. Marlow's physical possession rather than in the possession of an
    independent expert.
27  [18]   Tayback Dec., Exh. 14.

28

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 15 of 57   Page ID
#:60243
Case 2:04-cv-09049-SGL-RNB   Document 1583   Filed 01/23/2008   Page 12 of 17

1   identity of several additional co-conspirators of Bryant in his development of Bratz.
2   These included Pedro Salazar, Maria Salazar, Ana Isabela Cabrera, and Beatriz
3   Morales.[19]  Although Mattel had propounded discovery to MGA and Bryant aimed
4   at precisely this issue, they had not identified these people as assisting in the
5   creation of Bratz.[20]  Obviously, the identity of these participants--discovered well
6   after the "key word" searches of the computer data at issue--were not searched for.

7          Ms. Cloonan testified at deposition on December 14, 2007, and
8   admitted then that she could have used the computer she had when she lived with
9   Carter Bryant to prepare graphics for Bryant.[21]  She also testified that Bryant
10  himself used her computer[22] -- the same computer that she ultimately gave to her
11  lawyers and which is now with the independent expert, but which has never been
12  searched for responsive graphical files.[23]  Further, she identified a "Zip disk" in her
13  possession which is labeled "Bratz," and which she claims to have no knowledge of
14  what it contains.[24]  Notably, although Ms. Cloonan testified that she gave this disk
15  to her attorney in 2005, in response to Mattel's subpoena for documents, it was not
16  until her deposition in December 2007--over two years later--that Mattel learned
17  that the disk is itself labeled "Bratz."[25]

18          Efforts To Reach Agreement on a Revised Protocol.  Given the clear
19  deficiencies of these witnesses' production of relevant documents from these
20  electronic media, Mattel sought to meet and confer with their counsel about

21  ———————————————
    [19]   Marlow Depo. at 286:1-290:13, 302:5-303:8, and 306:14-308:1.
22  [20]   Tayback Dec. Exh. 16 [Mattel's Interrogatory No. 5 to MGA and Responses
23  and Supplemental Responses of MGA thereto] and Exh. 17 [Mattel's Interrogatory
    No. 4 to Bryant and Responses and Supplemental Responses of Bryant thereto].
24  [21]   Deposition Tr. of Elise Cloonan ("Cloonan Depo.") dated December 14, 2007
25  at 128:2-12. [Tayback Dec. Exh. 9]
    [22]   Id. at 129:11-12.
26  [23]   Id. at 128:16-129:3.
27  [24]   Id. at 246:24-249:9.

28

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 16 of 57   Page ID
#:60244
Case 2:04-cv-09049-SGL-RNB   Document 1583   Filed 01/23/2008   Page 13 of 17

1  alternative ways to ensure that relevant evidence was made available to Mattel.

2  Counsel for the witnesses' rejected all alternatives proposed by Mattel.[26]

3  <center>**Argument**</center>

4  **I.    MATTEL IS ENTITLED TO WITNESS' HARD DRIVES AND THE**

5  **ZIP DISK LABELED "BRATZ"**

6       Ms. Cloonan, Ms. Hatch-Leahy and Ms. Marlow are key witnesses.

7  MGA identified each as "possess[ing] information relevant to the conception,

8  creation, design and development of 'Bratz.'"[27]  Each has computer data, or a Zip

9  disk, that contains evidence relevant to the origin, creation and development of

10  Bratz.  Just as important, however, is what evidence is *no longer* on those drives.

11       The 2006 Committee Notes to Federal Rule of Civil Procedure 45,

12  recognize that "electronically stored information, as defined in Rule 34(a), can also

13  be sought by subpoena."  Indeed, under Federal Rule of Civil Procedure 34(a), the

14  term "documents" includes documents stored in electronic form.  See Playboy

15  Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); Fed. R. Civ.

16  P. 34, adv. comm. note.  Mattel's subpoenas to Marlow, Hatch-Leahy and Cloonan

17  also defined "documents" to include electronic data and documents.[28]  Even if the

18  relevant materials on their computers have been deleted, the hard drives must be

19  produced because *deleted records* are discoverable.  See Simon Property Group L.P.

20  v. mySimon, Inc., 194 F.R.D. 639, 640-41 (S.D. Ind. 2000) (holding that plaintiff

21  was entitled to attempt to recover deleted computer files from computers used by

22  employees of the defendant to develop evidence supporting its claims); Playboy

23  Enterprises, 60 F. Supp. 2d at 1054-55 (ordering a computer expert to make a mirror

24

25  [25]   Cloonan Depo at 263:6-15.

26  [26]   Tayback Dec. ¶ 21, Exh. 19 [email to Larry McFarland dated January 9,
    2007].

27  [27]   MGA's Rule 26(a) Disclosures ¶¶ 4-6.  [Tayback Dec. Exh. 20]
    [28]   Tayback Dec. Exhs. 10, 11, 12.

28

20147/2362326.1

<center>-8-</center>

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 17 of 57   Page ID
#:60245
Case 2:04-cv-09049-SGL-RNB    Document 1583    Filed 01/23/2008    Page 14 of 17

1  image of defendant's hard drive to search for emails deleted by defendant); <u>Kucala</u>

2  <u>Enterprises, Ltd. v. Auto Wax Co., Inc.</u>, 2003 WL 21230605, at *4, fn. 5 (N.D. Ill.

3  2003) ("Emails and other electronic documents are discoverable, as are deleted

4  documents still located in a computer's hard drive."). Mattel is entitled to inspect

5  these hard drives to determine whether the computers contain additional responsive

6  documents, as the evidence suggests they do. The fact that these computers are the

7  witnesses' personal computers does not make them immune from production.

8  Courts routinely permit inspection of home computers. <u>See Simon Property Group</u>

9  <u>L.P.</u>, 194 F.R.D. at 640-41 (holding that plaintiff in trademark case was entitled to

10  attempt to recover deleted computer files from computers used by employees of the

11  defendant - whether such computers were at home or at work - to develop evidence

12  supporting its claims); <u>Superior Consultant Co. v. Bailey</u>, 2000 WL 1279161, at *13

13  (E.D. Mich. 2000) (ordering defendants to "create and produce to defense counsel a

14  backup file of defendant Bailey's laptop computer, and a backup file of any personal

15  computer hard-drive to which defendant Bailey has had access at any time."). Such

16  an inspection is particularly appropriate where, as here, the computers were used for

17  business as well as personal purposes. Indeed, with respect the Zip disk labeled

18  "Bratz", there is no argument whatsoever that it should not be produced to Mattel--

19  Cloonan testified at deposition that it is likely not even hers and she claimed to have

20  no knowledge of what is even on it.

21  **II.   NO PRIVACY INTEREST EXISTS TO PREVENT PRODUCTION OF**

22  **RELEVANT DOCUMENTS**

23          To the extent counsel for these witnesses claims that a review of their

24  hard drives and Zip disk would invade their privacy rights, such an objection is

25  misplaced. In general, federal law does not recognize a right to privacy that entitles

26  a party to withhold documents. <u>See Humphreys v. Regents of Univ. of Cal.</u>, 2006

27  WL 335275, *1 (N.D. Cal. 2006) (under <u>Federal Rule of Evidence</u> 501, "federal law

28  determines the evidentiary privileges that apply," and "there is no federal analog to

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 18 of 57   Page ID
#:60246
Case 2:04-cv-09049-SGL-RNB    Document 1583    Filed 01/23/2008    Page 15 of 17

1   the California privacy rights that [defendant] seeks to invoke").  While courts can

2   consider privacy concerns, "courts have frequently found that a party's need for

3   information may outweigh whatever privacy rights, if any, another party may have."

4   Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998); see Reyes

5   v. Red Gold, Inc. 2006 WL 2729412, at *3 (S.D. Tex. 2006) (identity of third parties

6   is not "sufficiently private" to obstruct discovery).  At a minimum, "[r]esolution of a

7   privacy objection . . . requires a balancing of the need for the information sought

8   against the privacy right asserted."    Keith H. v. Long Beach Unified School

9   District, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (granting motion to compel even

10  where "plaintiff's document requests indisputably implicate significant privacy

11  rights of minors who are not parties to this litigation  . . . [because] the information

12  sought *could* help support plaintiff's claim . . . [and] '[p]laintiff's need for the

13  requested [information] is great [since it] is unlikely to be available from any other

14  source than [d]efendant's files'") (quotations omitted, emphasis added).

15        Here, Mattel's need for the information is compelling.  Mattel simply

16  cannot obtain the work that was performed regarding Bratz on Marlow's computer,

17  or the materials contained on the Zip disk labeled "Bratz" in Cloonan's possession,

18  for example.  Similarly, there is no substitute for an examination of what documents

19  related to Bratz have been deleted from these hard drives.  And Ms. Cloonan has

20  made clear that she has no interest in the contents of the Zip disk labeled "Bratz.  A

21  vague assertion of "privacy" rights does not outweigh Mattel's need for the

22  information.  Thus, the documents must be produced.  Keith, 228 F.R.D. at 656-57.

23        Further, and as numerous courts have held, these witnesses can

24  designate their documents confidential pursuant to the Protective Order which exists

25  in this case (and which documents already produced--including allegedly "private"

26

27

28

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 19 of 57   Page ID
#:60247
Case 2:04-cv-09049-SGL-RNB   Document 1583   Filed 01/23/2008   Page 16 of 17

1  documents--have been safely designated by these witnesses already).[29]  Such a

2  designation obviates any privacy concerns.  See, e.g., Gohler v. Wood, 162 F.R.D.

3  691, 697 (D. Ut. 1995) ("Because the protective order limits disclosure of

4  confidential material to those who are necessarily involved in the case, and these

5  parties may use this information only for purposes of litigating this case, excluding

6  any business purpose, the court concludes Deloitte's confidentiality concerns have

7  been addressed adequately.").

8  **III.   MATTEL WILL BE SEVERELY PREJUDICED IF DEPRIVED OF**

9  **THE OPPORTUNITY TO HAVE THESE ELECTRONIC MEDIA**

10  **EXAMINED BY A FORENSIC COMPUTER EXPERT**

11  The current deadline for the disclosure of expert reports is February 11,

12  2008.  To have any consultant meaningfully review and analyze the computer hard

13  drives and the Zip disk and to produce a timely report, the witnesses' media must be

14  provided to Mattel immediately.  Just as important, however, is the sheer fact that

15  Mattel is entitled to relevant, responsive evidence about the creation, origin and

16  development of Bratz.  These witnesses are clearly, and improperly, withholding

17  such evidence.

18  Given this delay in producing these items to begin with -- nearly three

19  years from the issuance of the subpoena -- an order compelling the production of the

20  requested electronic data is warranted.  In the alternative, the Court should modify

21  the Scheduling Order to extend Mattel's time to conduct a forensic computer review

22  of the requested items and prepare a proper expert report regarding such analysis--an

23  amount of time likely to be 30 days from the date of Mattel's receipt of the items.

24

25  [29]   Tayback Dec. Exh. 18 [October 26, 2007 letter from counsel for Ms. Cloonan
26  stating that he was producing certain non-privileged, personal, non-responsive
27  documents that had been identified by the "key word" search, but acknowledging
    that such documents were protected by the existing protective order].
28

1  **Conclusion**

2  Mattel respectfully requests that the Court grant its *ex parte* application.

3

4  DATED:  January 23, 2008        QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP
5

6                                  By /s/ B. Dylan Proctor
7                                     B. Dylan Proctor
                                      Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20147/2362326.1

-12-
MATTEL'S *EX PARTE* APPLICATION

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

| | |
|---|---|
| 11 | |
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12 | Consolidated with |
| Plaintiff, | Case Nos. CV 04-09059 & CV 05-2727 |
| 13 | |
| vs. | **DISCOVERY MATTER** |
| 14 | |
| MATTEL, INC., a Delaware | Hon. Stephen G. Larson |
| 15 corporation, | |
| | [PUBLIC REDACTED] |
| 16 Defendant. | DECLARATION OF CHRISTOPHER |
| | TAYBACK IN SUPPORT OF |
| 17 | MATTEL, INC.'S *EX PARTE* |
| AND CONSOLIDATED ACTIONS | APPLICATION TO (1) COMPEL |
| 18 | PRODUCTION OF ELECTRONIC |
| | MEDIA FROM THIRD-PARTIES |
| 19 | ELISE CLOONAN, MARGARET |
| | HATCH-LEAHY, AND VERONICA |
| 20 | MARLOW OR (2) IN THE |
| | ALTERNATIVE, MODIFY THE |
| 21 | SCHEDULING ORDER |
| 22 | Hearing Date:    Not Applicable |
| | Time:              Not Applicable |
| 23 | |
| 24 | **Phase 1** |
| | Discovery Cut-Off:   January 28, 2008 |
| 25 | Pre-Trial Conference: May 5, 2008 |
| | Trial Date:           May 27, 2008 |
| 26 | |
| 27 | |
| 28 | |

## DECLARATION OF CHRISTOPHER TAYBACK

I, Christopher Tayback, declare as follows:

1. I am a member of the bar of the State of California, admitted to practice in the Central District of California and elsewhere, and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). Except where otherwise indicated, I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. Beginning on December 20, 2007 and continuing through to January 11, 2008, I met and conferred with Larry McFarland, counsel to parties Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow, in connection with the relief Mattel seeks herein. On January 11, 2008, Mr. McFarland refused to provide Mattel any of the relief it requests herein.

3. I provided notice to Mr. McFarland of this ex parte application on January 17, 2008. On January 18, 2008, he indicated he would oppose it. On January 23, 2008, I also provided notice to counsel for defendants MGA, Isaac Larian, Carter Bryant and Gustavo Machado Gomez. At the time of filing, I do not know their position regarding it.

4. Attached hereto as Exhibit 1 are true and correct copies of excerpts of the deposition of Veronica Marlow, taken on December 28, 2007.

5. Attached hereto as Exhibit 2 are true and correct copies of excerpts of the deposition of Paula Garcia, taken May 24, 2007.

6. Attached hereto as Exhibit 3 are true and correct copies of excerpts of the deposition of Richard Irmen, taken September 28, 2007.

7. Exhibit 4 hereto is intentionally left blank.

8. Attached hereto as Exhibit 5 is a true and correct copy of Margaret Hatch-Leahy's application for employment with Mattel.

20147/2362359.1

DECLARATION OF CHRISTOPHER TAYBACK

1      9.   Attached hereto as Exhibit 6 are true and correct copies of
2   excerpts of the deposition of Carter Bryant taken November 4 and 5, 2004.

3      10.   Attached hereto as Exhibit 7 are true and correct copies of
4   excerpts of the deposition of Margaret Hatch-Leahy, taken December 12, 2007.

5      11.   Attached hereto as Exhibit 8 are true and correct copies of
6   excerpts of the deposition of Anna Rhee, taken February 3, 2005.

7      12.   Attached hereto as Exhibit 9 are true and correct copies of
8   excerpts of the deposition of Elise Cloonan, taken December 14, 2007.

9      13.   Attached hereto as Exhibit 10 is the subpoena for documents
10   served on Veronica Marlow.

11     14.   Attached hereto as Exhibit 11 is the subpoena for documents
12   served on Margaret Hatch-Leahy.

13     15.   Attached hereto as Exhibit 12 is the subpoena for documents
14   served on Elise Cloonan.

15     16.   Attached hereto as Exhibit 13 is a true and correct copy of
16   correspondence between counsel for Ms. Hatch-Leahy and Ms. Cloonan and counsel
17   for Matter dated December 17, 2007.

18     17.   Attached hereto as Exhibit 14 is a true and correct copy of
19   correspondence between counsel for Mattel and counsel for Ms. Cloonan reflecting
20   the computer document protocol for searching Ms. Cloonan's computer documents
21   initially.

22     18.   Attached hereto as Exhibit 15 is a true and correct copy of
23   correspondence from counsel for Ms. Hatch-Leahy agreeing to apply the protocol
24   her computer documents.

25     19.   Attached hereto as Exhibit 16 is a true and correct copy of
26   Mattel's Special Interrogatory No. 5 to MGA, MGA's responses and MGA's first,
27   second and third supplemental responses.

28

DECLARATION OF CHRISTOPHER TAYBACK

1       20.    Attached hereto as Exhibit 17 is a true and correct copy of

2  Mattel's Special Interrogatory No. 4 to Carter Bryant and Bryant's responses.

3       21.    Attached hereto as Exhibit 18 is a true and correct copy of a

4  letter from Larry McFarland to Michael Zeller dated October 26, 2007.

5       22.    Attached hereto as Exhibit 19 is a true and correct copy of an

6  email I sent to Larry McFarland on January 9, 2008 regarding our meet and confer

7  on the issues raised by this application.  Thereafter, I was notified that Mr.

8  McFarland rejected all of the proposals I made in our meet and confer.

9       23.    Attached hereto as Exhibit 20 is a true and correct copy of

10  MGA's Initial Disclosures, paragraphs 4-6.

11       I declare under penalty of perjury under the laws of the United States of

12  America that the foregoing is true and correct.

13       Executed on January 23, 2008 at Boston, Massachusetts.

14

15

16                    Christopher Tayback

17

18

19

20

21

22

23

24

25

26

27

28

0147/2362359.1

-3-

DECLARATION OF CHRISTOPHER TAYBACK

1  Larry McFarland (Bar No. 129668)
   Christian Dowell (Bar No. 241973)
2  KEATS, McFARLAND & WILSON LLP
   9720 Wilshire Blvd.
3  Penthouse Suite
   Beverly Hills, CA 90212
4  Telephone:  (310) 248-3830
   Facsimile:  (310) 860-0363
5  Email:  lmcfarland@kmwlaw.com
           cdowell@kmwlaw.com
6
7  Attorneys for Ana Elise Cloonan,
   Margaret Hatch-Leahy, and Veronica Marlow
8

9            UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11               EASTERN DIVISION

12

13  CARTER BRYANT, an individual,      Case No.: CV 04 – 09049 SGL (RNBx)
                                        Consolidated with Case Nos.
14            Plaintiff,                CV 04-9059 and CV 05-2727
                                        Hon. Stephen G. Larson
15       v.
                                        NOTICE OF MATTEL'S FAILURE TO
16  MATTEL, INC., a Delaware            SERVE THE MANUALLY FILED
    corporation;                        PORTION OF THE EX PARTE
17                                      APPLICATION ON COUNSEL FOR MS.
18            Defendant.                CLOONAN, MS. LEAHY AND MS.
                                        MARLOW
19

20  AND RELATED ACTIONS.

21                                      Hearing Date:  N/A
22                                      Time:          N/A
                                        Place:         N/A
23

24

25

26

27

28

Case 2:04-cv-09049-DOC-RNB  Document 3495  Filed 05/06/08  Page 26 of 57  Page ID
#:60254
Case 2:04-cv-09049-SGL-RNB  Document 1621  Filed 01/24/2008  Page 2 of 2

1    As of the time of this filing, counsel for Mattel has not served the manually

2  filed portion of Mattel, Inc.'s *Ex Parte* Application to (1) Compel Production of

3  Electronic Media from Third-Parties Elise Cloonan, Margaret Hatch-Leahy, and

4  Veronica Marlow or (2) in the Alternative, Modify the Scheduling Order; and

5  Memorandum of Points and Authorities in Support Thereof (the "Ex Parte

6  Application") on counsel for non-party witnesses Ms. Leahy, Ms. Marlow and

7  Ms. Cloonan.  United States District Court for the Central District of California,

8  General Order No. 07-08, states that "Documents traditionally filed in paper (refer to

9  Section VII), must be served by ECF attorneys using traditional means of service in

10  the manner prescribed for such service in the Federal Rules of Civil Procedure and

11  Federal Rules of Criminal Procedure."  Section III.C.  Pursuant to Section VII of the

12  Order, Mattel electronically filed a Notice of Manual Filing for the sealed portions of

13  the Tayback Declaration in support of the Ex Parte Application, but counsel for the

14  non-party witnesses has not yet been served with the unredacted declaration.  Counsel

15  for the non-party witnesses noted that there were problems with respect to service on

16  counsel for the non-parties at the hearing before the Court held on January 7, 2008.

17    Counsel for non-parties Cloonan, Leahy and Marlow, intends to oppose the Ex

18  Parte Application, and will draft and file their opposition to the Ex Parte Application

19  within 24 hours of service of the manually filed portion of the Ex Parte Application as

20  set forth in the Court's Standing Order, unless the Court orders otherwise.

21

22  Dated:  January 24, 2008        KEATS MCFARLAND & WILSON LLP

23

24                  /s/_____

25                  Larry W. McFarland, Esq.
Attorneys for Non-Parties Ana Elise Cloonan,

26                  Margaret Hatch-Leahy, and Veronica Marlow

27

28

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 27 of 57   Page ID
#:60255
Case 2:04-cv-09049-SGL-RNB   Document 1634   Filed 01/25/2008   Page 1 of 2

1 │ Larry McFarland (Bar No. 129668)
  │ Christian Dowell (Bar No. 241973)
2 │ KEATS, McFARLAND & WILSON LLP
  │ 9720 Wilshire Blvd.
3 │ Penthouse Suite
  │ Beverly Hills, CA 90212
4 │ Telephone:  (310) 248-3830
  │ Facsimile:  (310) 860-0363
5 │ Email:  lmcfarland@kmwlaw.com
  │          cdowell@kmwlaw.com
6 │
7 │ Attorneys for Ana Elise Cloonan,
  │ Margaret Hatch-Leahy, and Veronica Marlow
8 │
9 │                  UNITED STATES DISTRICT COURT
10 │               CENTRAL DISTRICT OF CALIFORNIA
11 │                         EASTERN DIVISION
12 │
13 │ CARTER BRYANT, an individual,      Case No.: CV 04 – 09049 SGL (RNBx)
  │                                     Consolidated with Case Nos.
14 │                   Plaintiff,        CV 04-9059 and CV 05-2727
15 │        v.                          Hon. Stephen G. Larson
16 │ MATTEL, INC., a Delaware           NOTICE OF SERVICE OF COMPLETE
  │ corporation;                        EX PARTE APPLICATION ON
17 │                                    COUNSEL FOR MS. CLOONAN,
18 │                   Defendant.       MS. LEAHY AND MS. MARLOW
19 │
20 │ AND RELATED ACTIONS.               Hearing Date:   N/A
  │                                     Time:           N/A
21 │                                    Place:          N/A
22 │
23 │
24 │
25 │
26 │
27 │
28 │

1      Counsel for non-party witnesses Ms. Leahy, Ms. Marlow and Ms. Cloonan

2   were served with Mattel, Inc.'s *Ex Parte* Application to (1) Compel Production of

3   Electronic Media from Third-Parties Elise Cloonan, Margaret Hatch-Leahy, and

4   Veronica Marlow or (2) in the Alternative, Modify the Scheduling Order; and

5   Memorandum of Points and Authorities in Support Thereof (the "Ex Parte

6   Application") in its complete and unredacted form at approximately 9:30 a.m., today,

7   Friday, January 25, 2008.[1]  United States District Court for the Central District of

8   California, General Order No. 07-08, states that "Documents traditionally filed in

9   paper (refer to Section VII), must be served by ECF attorneys using traditional means

10  of service in the manner prescribed for such service in the Federal Rules of Civil

11  Procedure and Federal Rules of Criminal Procedure." Section III.C.  Counsel for non-

12  parties Cloonan, Leahy, and Marlow will therefore file their opposition to the Ex Parte

13  Application within 24 hours of service on or before 9:30 a.m., Monday, January 28,

14  2008, as set forth in the Court's Standing Order, unless the Court orders otherwise.

15

16

17  Dated:  January 25, 2008                    KEATS MCFARLAND & WILSON LLP

18

19                                              /s/
                                                _____
                                                Christian C. Dowell, Esq.

20                                              Attorneys for Non-Parties Ana Elise Cloonan,
                                                Margaret Hatch-Leahy, and Veronica Marlow
21

22

23

24

25

26  _____

27  [1] Counsel for non-parties Ms. Cloonan, Ms. Leahy, and Ms. Marlow also note that Mattel emailed an
    electronic version of the document after the close of business on January 24, 2008 at approximately
28  7:00 p.m.

1   Larry McFarland (Bar No. 129668)
    Christian Dowell (Bar No. 241973)
2   KEATS, McFARLAND & WILSON LLP
    9720 Wilshire Blvd.
3   Penthouse Suite
    Beverly Hills, CA 90212
4   Telephone:  (310) 248-3830
    Facsimile:  (310) 860-0363
5   Email:  lmcfarland@kmwlaw.com
           cdowell@kmwlaw.com
6
7   Attorneys for Ana Elise Cloonan,
    Margaret Hatch-Leahy, and Veronica Marlow
8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11                  EASTERN DIVISION
12

13  | CARTER BRYANT, an individual, | Case No.: CV 04 – 09049 SGL (RNBx) |
    Consolidated with Case Nos.
14  |          Plaintiff, | CV 04-9059 and CV 05-2727 |
    Hon. Stephen G. Larson
15  |     v. |
16  | MATTEL, INC., a Delaware | ANA ELISE CLOONAN'S, MARGARET |
    corporation;                     HATCH-LEAHY'S, AND VERONICA
17                                    MARLOW'S OPPOSITION TO MATTEL'S
18  |          Defendant. | EX PARTE APPLICATION TO (1) COMPEL |
                                      PRODUCTION OF ELECTRONIC MEDIA
19                                    FROM THIRD-PARTIES ELISE CLOONAN,
20  | AND RELATED ACTIONS. | MARGARET HATCH-LEAHY, AND |
                                      VERONICA MARLOW OR (2) IN THE
21                                    ALTERNATIVE, MODIFY THE
22                                    SCHEDULING ORDER

23                                    Hearing Date:    N/A
24                                    Time:            N/A
                                      Place:           N/A
25
26
27
28

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 30 of 57   Page ID
#:60258
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 2 of 29

1
2

<div align="center">

**TABLE OF CONTENTS**

</div>

3  I.    INTRODUCTION ............................................................................1

4  II.   SUMMARY OF FACTS ..................................................................4

5  II.   ARGUMENT...................................................................................12

6        A.   Mattel's Ex Parte Application Should Be Denied Because Mattel

7             Has Not Satisfied The Standards For Ex Parte Relief. ...........12

8             1.   Mattel Will Not Be Prejudiced if the Court Does Not Compel

9                  the Non-Party Witnesses to Produce Additional Discovery..........13

10            2.   Mattel's Own Actions Contributed to this Alleged Crisis.............14

11       B.   Mattel's Ex Parte Application Should Be Denied Because

12            Ms. Marlow Has Fully Complied With Her Discovery Obligations. .......15

13       C.   Mattel Has No Basis For Seeking A New Computer Protocol...............20

14  III.  CONCLUSION ...............................................................................25

15
16
17
18
19
20
21
22
23
24
25
26
27
28

<div align="center">

i

</div>

1

## <u>TABLE OF AUTHORITIES</u>

2

3 **Cases**

4 <u>Ameriwood Indus., Inc. v. Liberman</u>, 2006 WL 3825291, at *4

5    (E.D. Mo. Dec. 27, 2006) ................................................................................. 18

6 <u>Balfour Beatty Rail, Inc. v. Vaccarello</u>, 2007 WL 169628, at *2-3

7    (M.D. Fla. Jan. 18, 2007)........................................................................... 18, 19

8 <u>Bethea v. Comcast</u>, 218 F.R.D. 328 (D.D.C. 2003) ..................................... 17

9 <u>Caylon v. Mizuho Sec. USA Inc.</u>, 2007 WL 1468889, at *3

10    (S.D.N.Y. May, 28, 2007) ............................................................................ 16

11 <u>Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.</u>, 649 F.2d 649

12    (9th Cir. 1980)............................................................................................... 22

13 <u>Doe v. Attorney General</u>, 941 F.2d 780 (9th Cir.1991)................................ 24

14 <u>Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558,

15    at *9 (D. Nev. 2007) ..................................................................................... 17

16 <u>Floeter v. City of Orlando</u>, 2006 WL 1000306, at *3 (M.D. Fla. Apr. 16, 2006)......... 17

17 <u>In re Crawford</u>, 194 F.3d 954 (9th Cir. 1999) ............................................. 24

18 <u>In re Ford Motor Co.</u>, 345 F. 3d 1315 (11th Cir. 2003) ................................... 16, 17, 19

19 <u>In re Intermagnetics America, Inc.</u>, 101 B.R. 191 (C.D. Cal. 1989)....................... 12, 14

20 <u>Kelly v. City of San Jose</u>, 114 F.R.D. 653 (N.D. Cal. 1987) ......................................... 23

21 <u>Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.</u>, 2003 WL 2123065, at *4,

22    fn. 5 (N.D. Ill. 2003) ............................................................................... 5, 7

23 <u>McCurdy Group, LLC v. Am. Biomedical Group, Inc.</u>, 9 Fed. Appx. 822

24    (10th Cir. 2001)............................................................................................ 18

25 <u>McPeek v. Ashcroft</u>, 202 F.R.D. 31 (D.D.C. 2001) ..................................... 17

26 <u>Mission Power Engineering Co. v. Continental Cas. Co.</u>, 883 F. Supp. 488

27    (C.D. Cal. 1995)............................................................................. 12, 13, 14

28 <u>Moon v. SCP Pool Corp.</u>, 232 F.R.D. 633 (C.D. Cal. 2005)........................ 22

OPPOSITION TO
EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 32 of 57   Page ID
#:60260
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 4 of 29

1   Peskoff v. Faber, 240 F.R.D. 26 (D.D.C. 2007) ............................................................. 17

2   Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050 (S.D. Cal. 1999)........... 5, 6, 7

3   Powers v. Thomas M. Cooley Law School, 2006 WL 2711512, *5

4     (W.D. Mich. 2006)........................................................................................................ 17

5   Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639

6     (S.D. Ind. 2000) .................................................................................................. 5, 6, 7, 19

7   Soto v. City of Concord, 162 F.R.D. 603 (N.D. Cal. 1995).......................................... 23

8   Superior Consultant Co. v. Bailey, 2000 WL 1279161, at *13

9     (E.D. Mich. August 22, 2000) ................................................................................... 5, 7

10  Valley Bank of Nevada v. Superior Court, 15 Cal.3d 652 (1975) ................................ 23

11  Williams v. Mass. Mut. Life Ins. Co., 226 F.R.D. 144 (D. Mass. 2005) ................ 19, 20

12  **Other Authorities**

13  Cal. Const., Art. I, §1 ................................................................................................... 23

14  Moore's Federal Practice § 37A.44[3][b] (3d ed. 2007) ............................................... 17

15  **Rules**

16  Fed. R. Civ. P. 34(a)(1).............................................................................................. 15, 16

17  Rule 26(b)(2), Fed.R.Civ.P. ........................................................................................... 22

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO
EX PARTE APPLICATION

1    Non-parties Margaret Hatch-Leahy, Elise Cloonan and Veronica Marlow

2    (collectively, the "Non-Party Witnesses") hereby respectfully submit this Opposition

3    ("Opposition") to Mattel's Ex Parte Application to (1) Compel Production of

4    Electronic Media from Third-Parties Elise Cloonan, Margaret Hatch-Leahy, and

5    Veronica Marlow or (2) in the Alternative, Modify the Scheduling Order ("Ex Parte

6    Application").

7    **I.    INTRODUCTION**

8    You have to hand it to Mattel. When they want something, they do not let

9    anything stand in their way – not even an order from the Court and certainly not the

10   truth. Not three weeks ago, this Court granted Mattel's Motion for Order Confirming

11   that the Discovery Master Hears and Resolves All Discovery Disputes, Including Those

12   With Third Parties, and entered an order stating that "[a]lthough the parties stipulated

13   to the Discovery Master, that stipulation was entered as the Court's order, and as such,

14   all parties are subject to that order unless relieved from it upon proper motion."[1]

15   Notwithstanding this unambiguous order from the Court, Mattel has chosen to file its

16   Ex Parte Application with the Court rather than with Judge Infante. For this reason

17   alone, the Court should deny this Ex Parte Application. In addition, Mattel's purported

18   pretext for filing this application in this Court – its request that the Court move the

19   expert report deadline – is a ruse. In a recent Order Granting in Part and Denying in

20   Part Mattel's Motion to Compel Production of Documents By Isaac Larian; Denying

21   Request for Sanctions (the "December 31 Order"), Judge Infante denied Mattel's

22   motion to compel Mr. Larian to produce his computer hard drives and stated that "Rule

23   34 was not intended to authorize the routine production of a party's electronic

24   devices."[2] In light of Mattel's failure to convince Judge Infante to order a party to

25

26   ───────────────────────────

27   [1]  Declaration of Larry McFarland in support of Opposition ("McFarland Decl."),
     Exhibit ("Exh.") 1 at 4.

28   [2]  McFarland Decl., Exh. 2 at 17.

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 34 of 57   Page ID
#:60262
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 6 of 29

1    produce his hard drives, Mattel was obviously concerned about its chances with respect

2    to non-parties, so it decided to go forum shopping.[3]   The Non-Party Witnesses

3    respectfully request that this Court deny Mattel's Ex Parte Application on this further

4    ground.

5            Unfortunately, Mattel's bad acts do not stop there.   At times, it seems as though

6    Mattel is simply disconnected from the truth.   For example, Mattel states in the first

7    sentence of its Ex Parte Application that "Veronica Marlow, Margaret-Hatch Leahy

8    and Elise Cloonan first refused to appear for deposition; only after Mattel brought a

9    motion to compel did they agree to appear."[4]   Mattel knows that this statement is not

10   true.[5]   Mattel further states in its Ex Parte Application that "[n]ow they refuse to turn

11   over electronic evidence of the creation and development of Bratz, including a zip disk

12

---

13   [3]   In addition, there are numerous discovery motions pending before Judge Infante that
14   if granted could result in depositions on the production of documents after the
     discovery cut-off date.   Mattel makes no effort to explain why this issue with respect to
15   Non-Party Witnesses requires the intervention of this Court or why this issue uniquely
16   impacts the expert witness disclosure date.
     [4]   Ex Parte Application at 1.
17   [5]   It is a matter of public record that all three of the Non-Party Witnesses not only
18   agreed to appear for their depositions before the filing of Mattel's Ex Parte Application
     to (1) Compel Depositions of Elise Cloonan, Margaret Hatch-Leahy, and Veronica
19   Marlow or (2) in the Alternative, Modify the Scheduling Order ("Ex Parte Application
20   re Deposition Dates") but in fact provided Mattel with the following deposition dates:
     December 12, 2007 for Ms. Leahy, December 14, 2007 for Ms. Cloonan and January 9,
21   2008 for Ms. Marlow.   McFarland Decl., Exh. 3.   Not satisfied with these dates, Mattel
22   filed its Ex Parte Application re Deposition Dates, requesting the depositions of the
     Non-Party Witnesses be taken on or before December 7, 2007.   McFarland Decl., Exh.
23   4.   At the hearing, Mattel's counsel essentially backed away from its request that the
24   deposition dates be moved up for Ms. Leahy and Ms. Marlow.   The Court requested
     that counsel for Ms. Marlow determine if she was available for deposition on December
25   28, 2007, which after conferring with his client, counsel confirmed.   The Court
26   accepted counsel's representation that the witnesses would appear on the agreed to
     dates, and as counsel informed the Court at the hearing held on January 7, 2008, all
27   three Non-Party Witnesses did in fact appear for their depositions on the agreed to
28   dates.   McFarland Decl., Exh. 5.

OPPOSITION TO
EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 35 of 57   Page ID
#:60263
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 7 of 29

1   clearly labeled 'Bratz.' Mattel again seeks an order to compel."[6] This statement is also
2   false. As Mattel knows, and as set forth in detail below, counsel for Mattel and counsel
3   for the Non-Party Witnesses reached agreement on a protocol for the review of the
4   computer materials from Ms. Leahy and Ms. Cloonan. Ms. Cloonan's computer and
5   zip disk as well as Ms. Leahy's external hard disk drives were reviewed by an expert
6   selected by Mattel pursuant to the agreed to protocol and all recovered documents were
7   produced to Mattel prior to the depositions of these witnesses.[7] What is happening now
8   is that Mattel has decided that it wants to change the protocol and to review the
9   computer, zip disk and external hard disk drives again. Their only stated justification
10  for this new protocol is that they speculate that there could be graphical files on the
11  computer, zip disk or external hard disk drives that were not recovered pursuant to the
12  expert's review based on the protocol.[8] This type of rank speculation is the same type
13  of fishing expedition that Judge Infante found to be improper with respect to Mattel's
14  motion to inspect Mr. Larian's hard drives.[9] In addition, the possibility that there might
15  be graphical files on these computer materials has been known to Mattel since at least
16  2004 when Mr. Bryant testified that Ms. Cloonan's computer was used with respect to
17  a Bratz logo.[10] Regarding Ms. Marlow, she has fully complied with Mattel's subpoena
18  and produced all responsive documents.[11] Mattel's Ex Parte Application should be
19  denied because counsel for the Non-Party Witnesses and Mattel agreed to a computer
20  review Protocol; the computer, zip disk and external hard drives were reviewed
21  pursuant to the Protocol; all documents located by the expert were produced, and the
22  depositions of the Non-Party Witnesses were taken.

---

[6] Ex Parte Application at 1.
[7] McFarland Decl., Exh. 6.
[8] See Ex Parte Application.
[9] See McFarland Decl., Exh. 2.
[10] McFarland Decl., Exh. 7 at v.1 245:17-23, v.2 29:12-14, 30.
[11] McFarland Decl., Exh. 8 at 94:22-25, 95-96, 97:1-21, 104:1-25, 105:1-16.

OPPOSITION TO
EX PARTE APPLICATION

1   In addition to violating this Court's order by not filing its Ex Parte Application

2   with Judge Infante and misrepresenting the facts, Mattel has also violated this Court's

3   Standing Order, in which the Court reminds counsel "that ex parte applications are

4   solely for extraordinary relief."[12]  In order to bring a motion ex parte, Mattel is required

5   to establish that it is without fault in creating the alleged crisis.  Mattel has utterly

6   failed to carry this burden.  The protocol for the review of the computers, zip disk and

7   external hard disk drives was agreed to on September 27, 2007, and all of the

8   documents recovered by the expert recommended by Mattel were delivered to Mattel

9   by December 4, 2007.[13]  If Mattel was not satisfied with the documents recovered and

10   produced pursuant to the protocol, it could have filed a regularly noticed motion back

11   in early December 2007.  It chose not to do so, but instead filed this Ex Parte

12   Application two court days before discovery cut-off.  This application fails to satisfy

13   the standards for ex parte relief and should be denied on this ground as well.

14   Mattel's Ex Parte Application is entirely without merit and a waste of the Court's

15   valuable time and resources.  Accordingly, the Non-Party Witnesses respectfully

16   request that the Court deny Mattel's Ex Parte Application.

17   **SUMMARY OF FACTS** [14]

18   On June 21, 2007, Mattel's counsel, Susan Wines, sent a letter to counsel for the

19

20   _____

[12]  Court's Standing Order at 5.

21   [13]  See Tayback Declaration in support of Ex Parte Application, Exh. 18; McFarland

22   Decl., Exh. 9.

[14]  Mattel's Ex Parte Application is replete with factual misstatements, many of which

23   notably do not contain any citation to the record.  For example, Mattel states that

24   Ms. Marlow, Ms. Leahy and Ms. Cloonan are represented by "counsel retained by

MGA."  Ex Parte Application at 1.  There is no citation to support this statement

25   because there is no evidence in the record to support it.  Consistent with the page limits

26   for this Opposition, the Non-Party Witnesses have addressed Mattel's misstatements

that are relevant to the Ex Parte Application, but the Non-Party Witnesses do not want

27   their silence as to other statements to be taken as agreement to the truth of those

28   statements.

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 37 of 57   Page ID
#:60265
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 9 of 29

1  Non-Party Witnesses, stating that "Mattel is entitled to inspect and image

2  Ms. Halpern's[15] and Ms. Cloonan's hard drives," and demanding that Mattel be

3  provided with "a mirror image of their hard drives" to review for relevant

4  information.[16] However, Ms. Wines did not provide any justification for the

5  inspection. Instead, Ms. Wines focused her attention on attempting to argue that

6  Federal Rule of Civil Procedure 34 allows discovery of electronic storage media in

7  some instances. In support, Ms. Wines cited the Advisory Committee Notes to Rules

8  34 and 45, and four federal cases: <u>Playboy Enterprises, Inc. v. Welles</u>, 60 F. Supp. 2d

9  1050, 1053 (S.D. Cal. 1999); <u>Simon Property Group L.P. v. mySimon, Inc.</u>, 194 F.R.D.

10  639, 640-41 (S.D. Ind. 2000); <u>Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.</u>, 2003

11  WL 2123065, at *4, fn. 5 (N.D. Ill. 2003); and <u>Superior Consultant Co. v. Bailey</u>, 2000

12  WL 1279161, at *13 (E.D. Mich. August 22, 2000).[17]

13       On June 28, 2007, Mr. McFarland responded in a letter to Ms. Wines rejecting

14  Mattel's request that Ms. Halpern and Ms. Cloonan make their hard drives available to

15

16  ─────────────

17  [15] The original negotiations with Mattel also involved an old computer owned by
Ms. Halpern which is not the subject of Mattel's Ex Parte Application.

18  [16] <u>See</u> McFarland Decl., Exh. 6. In addition, Mattel tries to make an issue of the fact
that Ms. Cloonan gave the zip disk to counsel in approximately April 2005. <u>See</u> Ex

19  Parte Application at 1, 3 and 7. Mattel knows full well that the inference that

20  Ms. Cloonan's counsel did anything improper is completely groundless. In a letter
dated June 1, 2007, Susan Wines, a partner at Quinn Emanuel, states "Mattel previously

21  served a subpoena on your client, Elise Cloonan, on May 13, 2005. Mattel's subpoena

22  called for the production of documents on May 27, 2006. As you know, before the
return date, the District Court stayed all proceedings in this action." McFarland Decl.,

23  Exh. 10. Moreover, as part of the meet-and-confer, Mr. McFarland confirmed these

24  facts to Mattel's counsel in a letter dated January 2, 2008. McFarland Decl., Exh. 11.
The truth is that after the stay was lifted, and as set forth in detail in this Opposition,

25  counsel for Mattel and the Non-Party Witnesses met-and-conferred and agreed on a

26  Protocol for the review of the computer materials, and all such computer materials were
reviewed pursuant to the Protocol. <u>See</u> McFarland Decl., Exh. 6.

27  [17] <u>See</u> McFarland Decl., Exh. 6. Mattel cites the exact same authorities in its Ex Parte

28  Application.

OPPOSITION TO
                                                                                EX PARTE APPLICATION

1  Mattel.[18]  Mr. McFarland distinguished the cases cited by Ms. Wines as follows:

2        With respect to the authorities set forth in your June 21, 2007, letter

3        alleging that Mattel is "entitled to inspect and image" the personal

4        computers belonging to Elise Cloonan and Sarah Halpern, the cases that

5        you cite fail to support your position.

6            For instance, while we, of course, agree that the term "documents"

7        includes documents stored in electronic form, the significance of <u>Playboy</u>

8        <u>Enterprises, Inc. v. Welles</u>, 60 F.Supp.2d 1050 (S.D. Cal. 1999) is that

9        this case establishes a strict protocol to be followed when discoverable

10        information is sought from an opposing party's computer hard drives.

11        The <u>Playboy</u> court set forth a protocol which would allow the party

12        requesting discovery to recover discoverable information while at the

13        same time protecting the privacy and privilege concerns of the responding

14        party.  The protocol called for an independent third-party expert, agreed

15        upon by both parties or appointed by the court, to conduct the inspection

16        and create a "mirror image" copy of the defendant's computer hard drive.

17        Following the inspection, the "mirror image" copy would be given to the

18        defendant's counsel, who would then print and review any recovered

19        documents and produce to the plaintiff those communications that are

20        responsive and relevant.  Finally, the court noted that the defendant's

21        counsel would be the sole custodian of the "mirror image" copies

22        throughout the litigation.

23            Your letter also cites <u>Simon Property Group L.P. v. mySimon, Inc.</u>,

24        194 F.R.D. 639 (S.D. Ind. 2000) as support for the proposition that

25        deleted records are discoverable and that courts routinely permit

26        inspection of home computers.  As in <u>Playboy</u>, <u>Simon Property</u> also

27

28  [18]  McFarland Decl., Exh. 12.

-6-

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 39 of 57   Page ID
#:60267
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 11 of 29

1    involved a plaintiff seeking access to defendant's computers for the

2    purpose of attempting to recover discoverable information, including

3    deleted files.  The court ordered a protocol requiring the inspection and

4    "mirror image" copying to be conducted by a third-party expert.  In doing

5    so, the court referred to Playboy's protocol as offering the best approach,

6    and fashioned a protocol which was nearly identical to the one in Playboy.

7    The court stated that plaintiff and defendant should attempt to agree on an

8    expert to inspect and create a "mirror image" of the hard drives, and if

9    they failed to do so, the court would appoint one.  The expert would then

10   make the "mirror image" copy, and provide the copy to defendant's

11   counsel.  However, the copying would be limited to "the types of files

12   reasonably likely to contain material potentially relevant" to the case.

13   Thereafter, defendant's counsel would review the records for privilege

14   and responsiveness to plaintiff's discovery requests, and supplement

15   defendant's responses to discovery requests, as appropriate.  Finally, the

16   court ordered that the expert would sign the protective order and retain

17   until the end of the litigation the "mirror image" copies of the hard drives,

18   without "disclos[ing] the contents of any files or documents to plaintiff or

19   its counsel or other persons."

20        The third case that you cite, Superior Consultant Co. v. Bailey,

21   2000 WL 1279161 (E.D. Mich. 2000), further supports the protocol

22   applied in Playboy and Simon Property.  Finally, Kucala Enterprises, Ltd.

23   v. Auto Wax Co., Inc., 2003 WL21230605 (N.D. Ill. 2003) is not

24   applicable to our case.  That case concerned the plaintiff's acts of

25   spoliation and destruction of evidence, which is not present with

26   Ms. Cloonan or Ms. Halpern.

27        Of further significance is the fact that each of the four cases cited in

28   your letter concerns discovery as between *parties* to an action.  However,

Case 2:04-cv-09049-DOC-RNB  Document 3495  Filed 05/06/08  Page 40 of 57  Page ID
#:60268
Case 2:04-cv-09049-SGL-RNB  Document 1656  Filed 01/27/2008  Page 12 of 29

1    both of our clients are non-party *witnesses* in this case.  Since courts

2    already protect the privacy and privilege interests of parties in these

3    inspection cases, there will likely be a much greater level of protection for

4    non-parties.  Thus, in order to inspect our clients' computer hard drives,

5    the Court may force Mattel to meet a much higher burden than when

6    dealing with a party.[19]

7    Notwithstanding the fact that Mattel had failed to meet its burden of establishing

8    that it had the right to inspect Ms. Cloonan's and Ms. Halpern's hard drives, counsel for

9    Ms. Cloonan and Ms. Halpern met-and-conferred with counsel for Mattel in an effort to

10   move discovery forward.  As part of this effort, counsel for Ms. Cloonan and

11   Ms. Halpern agreed that with respect to these particular witnesses, he would allow their

12   old computers to be reviewed on the condition that the computer review protocol

13   provided adequate protections to prevent unnecessary intrusion into their private affairs.

14   Mr. McFarland also emphasized numerous times that all of the documents needed to be

15   produced and the computers reviewed prior to the depositions of the Non-Party

16   Witnesses because he did not want Mattel to use the fact that not all of the documents

17   had been produced as an excuse to depose these witnesses a second time.[20]

18   After a series of discussions spanning almost three months, Ms. Wines backed

19   down from her demand that the hard drives be produced to Mattel and finally agreed to

20   a more reasonable approach for identifying and producing responsive, non-privileged

21   documents from Ms. Cloonan's and Ms. Halpern's computer materials.  On September

22   13, 2007, Ms. Wines sent a letter to Mr. McFarland proposing a protocol (the

23   "Protocol") to manage the electronic discovery of Ms. Cloonan's and Ms. Halpern's

24   computer materials.[21]  The Protocol allowed Mattel to receive the relevant information

25

26   _____

27   [19] See McFarland Decl., Exh. 12 (footnotes omitted).
     [20] McFarland Decl., Exh. 13.

28   [21] See McFarland Decl., Exh. 6.

OPPOSITION TO
EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 41 of 57   Page ID
#:60269
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 13 of 29

1  located on the hard drives while necessarily protecting the privacy and confidentiality

2  interests of Ms. Cloonan and Ms. Halpern.  The Protocol called for an independent

3  expert recommended by Mattel, Rick Albee of DataChasers, Inc. ("DataChasers"), to

4  review the hard drives for responsive documents based upon search terms provided by

5  Ms. Wines.  Counsel for Ms. Cloonan and Ms. Halpern agreed to all of the search terms

6  requested by Ms. Wines, which included Bratz, MGA, Carter Bryant, Isaac Larian,

7  Prayer Angels and many others.  Mr. Albee would then deliver the recovered

8  documents to Mr. McFarland, who would have ten court days to review the documents

9  for privileged information.  Mr. Albee would then provide Mattel's counsel with all of

10  the non-privileged documents.[22]

11      The Protocol was signed by both counsel and became effective on September 27,

12  2007.  Later that day, Mr. McFarland and Ms. Wines agreed to add Ms. Leahy's

13  external hard disk drives to the Protocol.[23]

14      Mr. Albee picked up the computer materials from Mr. McFarland's office to

15  conduct the review pursuant to the Protocol and on October 26, 2007, counsel for the

16  Non-Party Witnesses authorized DataChasers to produce to Mattel all of the documents

17  recovered pursuant to the Protocol.[24]  No documents were withheld by counsel for the

18  Non-Party Witnesses.[25]  On November 21, 2007, counsel for Ms. Cloonan notified

19  Mattel's counsel that DataChasers had not picked up Ms. Cloonan's zip disk and

20  offered to deliver the zip disk to DataChasers.[26]  To speed up the process, counsel for

21  Ms. Cloonan further offered to review anything found by DataChasers on the disk

22  within five court days rather than the ten court days allowed under the Protocol.[27]  On

23

24  _____

25  [22]  Id.
     [23]  McFarland Decl., Exh. 14.

26  [24]  McFarland Decl., Exh. 15.
     [25]  McFarland Decl., Exh. 30.

27  [26]  McFarland Decl., Exh. 16.

28  [27]  Id.

OPPOSITION TO
EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB    Document 3495    Filed 05/06/08    Page 42 of 57    Page ID
#:60270
Case 2:04-cv-09049-SGL-RNB    Document 1656    Filed 01/27/2008    Page 14 of 29

1    November 28, 2007, Mattel's counsel, Dylan Proctor, approved DataChasers' review of

2    the zip disk, agreeing "to follow the protocol outlined in [its] September 13, 2007

3    letter" with respect to that zip disk.[28]  On November 30, 2007, DataChasers provided

4    counsel for Ms. Cloonan with a copy of the only document that was recovered from

5    Ms. Cloonan's zip disk.[29]  Two court days later, on December 4, 2007, a copy of the

6    document was hand-delivered to Mattel's counsel.[30]  Accordingly, by December 4,

7    2007, Mattel's counsel had received all documents from the Non-Party Witnesses'

8    computer materials that were identified and recovered pursuant to the Protocol.  Mattel

9    took the depositions of Ms. Leahy on December 12, 2007,[31] and of Ms. Cloonan on

10    December 14, 2007.[32]

11          On December 17, 2007, after the depositions of Ms. Leahy and

12    Ms. Cloonan, Mr. McFarland called Mr. Albee and during that conversation, Mr. Albee

13    told Mr. McFarland that Mattel's counsel had called and told him that Mattel wanted to

14    change the Protocol.  Prior to that time, Mattel's counsel had not informed

15    Mr. McFarland of its attempt to change the Protocol with Mr. Albee.  Shortly

16    thereafter, Mr. McFarland sent a letter to Mr. Albee confirming the telephone

17    conversation and placing Mr. Albee "on written notice that you are not authorized to

18    conduct any further examination of my clients' Property or to access, analyze or review

19    my clients' Property in any manner."[33]  The next day, Mr. McFarland sent a second

20    letter to Mr. Albee repeating the instructions of the December 17 letter.[34]  Both of these

21

22

23

24    [28]  McFarland Decl., Exh. 17.
25    [29]  McFarland Decl., Exh. 18.
      [30]  See McFarland Decl., Exh. 9.
26    [31]  McFarland Decl., Exh. 19.
      [32]  McFarland Decl., Exh. 20.
27    [33]  McFarland Decl., Exh. 21.
28    [34]  McFarland Decl., Exh. 22.

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 43 of 57   Page ID
#:60271
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 15 of 29

1  letters were copied to Mattel's counsel.

2  On December 28, 2007, Mattel took the deposition of Ms. Marlow.[35]

3  On January 2, 2008, Mattel's counsel sent a letter to Mr. McFarland alleging that

4  it had only recently learned of Ms. Marlow's computers and demanding that the

5  computers "be immediately provided to Mattel for imaging and analysis."[36]  Prior to

6  this time, Mattel had not requested to review or obtain copies of Ms. Marlow's hard

7  drives.[37]  Counsel for Ms. Marlow responded that "Ms. Marlow has fully complied

8  with her discovery obligations by searching her hard drives and producing all relevant

9  documents in response to Mattel's requests."[38]  Counsel for Ms. Marlow also disputed

10  Mattel's claim that it has just learned that Ms. Marlow used computers: "You have

11  known for quite some time that Ms. Marlow sent and received e-mails because we

12  produced such relevant e-mails well prior to her deposition and I believe that MGA has

13  also produced e-mails which were sent to Ms. Marlow."[39]  In an e-mail dated January

14  9, 2008, Mattel's counsel demanded additional review of each of the Non-Party

15  Witnesses' hard drives and additional deposition time for each of the Non-Party

16  Witness.[40]  Counsel for the Non-Party Witnesses responded that the "computers have

17  already been reviewed pursuant to the protocol that your partner, Susan Wines, and I

18  agreed to several months ago.  Moreover, all of the documents located by the expert's

19  search pursuant to the agreed to protocol have already been produced and both

20  Ms. Leahy and Ms. Cloonan have been deposed.  We are, therefore, not willing at this

21  late date to agree to a new protocol."[41]

22

23

24  [35] See McFarland Decl., Exh. 8.
   [36] McFarland Decl., Exh. 23.
25  [37] Id.
   [38] McFarland Decl., Exh. 24.
26  [39] Id.
27  [40] McFarland Decl., Exh. 25.
28  [41] See McFarland Decl., Exh. 24.

OPPOSITION TO
EX PARTE APPLICATION

1   On January 17, 2008, Mattel's counsel stated in an e-mail to Mr. McFarland that

2   it "will be filing an ex parte application next week to compel the production of the

3   imaged hard drives mentioned above and the zip disk, as we previously discussed, or in

4   the alternative to modify the scheduling order to allow sufficient time for expert

5   examination of such items and disclosure of an expert report in the event the Court

6   requires us to proceed by noticed motion."[42]  The next day, on January 18, 2008,

7   Mr. McFarland responded in a letter objecting to the ex parte nature of the application

8   and opposing the merits of Mattel's claims.[43]

9   Mattel filed its Ex Parte Application at approximately 9:25 p.m. on January 23,

10   2008, but did not serve the un-redacted Tayback Declaration on counsel for the Non-

11   Party Witnesses until approximately 9:30 a.m. on Friday, January 25, 2008.[44]

12   **II.   ARGUMENT**

13   **A.   Mattel's Ex Parte Application Should Be Denied Because**

14   **Mattel Has Not Satisfied The Standards For Ex Parte Relief.**

15   As this Court has observed, "[e]x parte applications have reached epidemic

16   proportions in the Central District." In re Intermagnetics America, Inc., 101 B.R. 191,

17   192 (C.D. Cal. 1989).  Since that statement was made, "the abusive use of ex parte

18   motions has worsened."  Mission Power Engineering Co. v. Continental Cas. Co., 883

19   F. Supp. 488, 489 (C.D. Cal. 1995). "This abuse is detrimental to the administration of

20   justice and, unless moderated, will increasingly erode the quality of litigation and

21   present ever-increasing problems...."  Id.  Consequently, "[e]x parte motions are rarely

22   justified," id. at 490, and "are nearly always improper." In re Intermagnetics, 101 B.R.

23   at 192.  Indeed, as the Court's Standing Order makes clear, "ex parte applications are

24   solely for extraordinary relief."[45]

25

26   [42]  McFarland Decl., Exh. 26.

27   [43]  McFarland Decl., Exh. 27.
    [44]  McFarland Decl., Exh. 28.

28   [45]  Court's Standing Order at 5, citing Mission Power, 883 F. Supp. 488.

- 12 -

1    Because of the urgency that attends ex parte applications, courts hold such

2  requests and those who file them to greater scrutiny than in the case of regularly filed

3  motions. See Mission Power, 883 F. Supp. at 492 ("Lawyers must understand that

4  filing an ex parte motion … is the forensic equivalent of standing in a crowded theater

5  and shouting, 'Fire!'  There had better be a fire."). Therefore, ex parte relief is only

6  warranted where the movant establishes that (1) the movant will suffer irreparable

7  prejudice absent the requested relief, and (2) "the moving party is without fault in

8  creating the crisis that requires ex parte relief, or that the crisis occurred as a result of

9  excusable neglect." Id.

10    To show that the moving party is without fault, or guilty only

11    of excusable neglect, requires more than a showing that the

12    other party is the sole wrongdoer. …  For example, merely

13    showing that trial is fast approaching and that the opposing

14    party still has not answered crucial interrogatories is

15    insufficient to justify ex parte relief.  The moving party must

16    also show that it used the entire discovery period efficiently

17    and could not have, with due diligence, sought to obtain the

18    discovery earlier in the discovery period.

19  Id. at 493.

20    As is shown below, Mattel has not satisfied either prong of the two-part test set

21  forth in Mission Power.

22    **1.    Mattel Will Not Be Prejudiced if the Court Does Not Compel**

23    **the Non-Party Witnesses to Produce Additional Discovery.**

24    Contrary to its assertions, Mattel will not suffer prejudice if the Court denies its

25  Ex Parte Application.  Mattel will simply not receive the strategic advantage that it

26

27

28

- 13 -

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 46 of 57   Page ID
#:60274
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 18 of 29

1    sought by filing its application ex parte.[46]

2         Mattel argues that it will be prejudiced because "[t]he current deadline for the

3    disclosure of expert reports is February 11, 2008.  To have any consultant meaningfully

4    review and analyze the computer hard drives and the Zip disk and to produce a timely

5    report, the witnesses' media must be provided to Mattel immediately."[47]  Mattel has

6    failed to meet its burden because "merely showing that trial is fast approaching and that

7    the opposing party still has not answered crucial interrogatories is insufficient to justify

8    ex parte relief."  Mission Power, 883 F. Supp. at 493.  All of the documents recovered

9    pursuant to the Protocol were delivered to Mattel by December 4, 2007.  "Ex parte

10   applications are not intended to save the day for parties who have failed to present

11   requests when they should have," as is clearly the case here.  In re Intermagnetics, 101

12   B.R. at 193.

13            **2.**    **Mattel's Own Actions Contributed to this Alleged Crisis.**

14        Mattel also fails to satisfy the second prong of Mission Power—that is, Mattel

15   has not shown that it is "without fault in creating the crisis that requires ex parte relief,

16   or that the crisis occurred as a result of excusable neglect."  Mission Power, 883 F.

17   Supp. at 492.  "The moving party must also show that it used the entire discovery

18   period efficiently and could not have, with due diligence, sought to obtain the

19   discovery earlier in the discovery period."  Id. at 493.  Mattel proposed the Protocol

20

21     [46]  See, e.g., Mission Power, 883 F. Supp. at 490-91 (recognizing that in filing ex parte

22   applications, "[t]he goal often appears to be to surprise opposing counsel or at least
     force him or her to drop all other work to respond on short notice.... All of this detracts

23   from a fundamental purpose of the adversary system, namely, to give the court the best
     possible presentation of the merits and demerits of the case on each side.  The opposing

24   party can rarely make its best presentation on such short notice."); In re Intermagnetics

25   America, Inc., 101 B.R. 191, 193 (C.D. Cal 1989) ("Ex parte applications throw the

26   system out of whack.  They impose an unnecessary administrative burden on the court
     and an unnecessary adversarial burden on opposing counsel who are required to make a

27   hurried response under pressure, usually for no good reason.").

28   [47]  Ex Parte Application at 11.

OPPOSITION TO
EX PARTE APPLICATION

1   that the Non-Party Witnesses agreed to in September 2007, and all documents that the

2   expert recovered pursuant to that Protocol were produced to Mattel by December 4,

3   2007.  With respect to Ms. Marlow, Mattel did not even request to inspect and copy her

4   hard drives until January 2, 2008.  In light of these facts, Mattel decided to wait until

5   January 23, 2008, to file this Ex Parte Application.  Mattel not only contributed to, but

6   in fact caused, this alleged crisis.

7       **B.**   **Mattel's <u>Ex Parte</u> Application Should Be Denied Because**

8            **Ms. Marlow Has Fully Complied With Her Discovery**

9            **Obligations.**

10       In response to Mattel's subpoena, Ms. Marlow produced over eight thousand

11   pages of documents.[48]  Ms. Marlow further testified in her deposition that all of her files

12   were thoroughly reviewed and that she produced all responsive documents prior to her

13   deposition.[49]  Ms. Marlow further testified that she has never thrown away, shredded or

14   destroyed any documents related to Bratz and that the documents that she turned over to

15   her counsel represented every single document that she ever had relating to Bratz.[50]

16   Mattel has submitted no evidence to the contrary and, in fact, makes no effort to

17   establish why it should be allowed to obtain Ms. Marlow's hard drives.[51]

18       Instead, Mattel focuses its energies attempting to argue that Rule 34 allows

19   discovery of electronic storage media in some instances.  Rule 34, however, focuses

20   on "documents or electronically stored *information*," Fed. R. Civ. P. 34(a)(1)

21   (emphasis added), and not electronic storage *devices*.  The language of the Committee

22   Note Mattel cited merely confirms that the amendment to Rule 34(a)(1) "may be

23

24   ───────────────

[48]  McFarland Decl., Exh. 29.

25  [49]  <u>See</u> McFarland Decl., Exh. 8 at 94:22-25, 95-96, 97:1-21, 104:17-25, 105:1-16.

26  [50]  <u>Id.</u> at 104:17-25, 105:1-16.

[51]  In addition, Ms. Marlow testified that she does not "know about computers" and that

27   she never used computers for her work on Bratz other than for some e-mails.  <u>Id.</u> at 15,

28   16 and 323.

OPPOSITION TO
EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 48 of 57   Page ID
#:60276
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 20 of 29

1  important for ... electronically stored *information*....” Fed. R. Civ. P. 34(a)(1), 2006

2  Adv. Comm. Notes (emphasis added).  The interesting part of the Committee Note,

3  however, is the portion that Mattel omitted, which notes the amendment of Rule 34

4  relating to “electronically stored ***information is not meant to create a routine right of***

5  ***direct access to a party’s electronic information system***.”  Id.  The Committee also

6  noted that, “although such access might be justified in some circumstances,” “***Courts***

7  ***should guard against undue intrusiveness resulting from inspection or testing such***

8  ***systems***.”  Id. (emphasis added).

9       As such, “[c]ourts should guard against undue intrusiveness resulting from

10  inspecting or testing such systems.”  Id.  Thus, Rule 34(a) does not entitle a party to “a

11  routine right of direct access to a party’s electronic information system....”  Id.  “Even

12  in cases where courts have found computer imaging and inspection to be warranted, the

13  courts have nonetheless adopted procedures to protect privilege and privacy

14  concerns.”[52]  Caylon v. Mizuho Sec. USA Inc., No. 07CIV02241RODF, 2007 WL

15  1468889, at *3 (S.D.N.Y. May, 28, 2007); see In re Ford Motor Co., 345 F. 3d 1315,

16  1317 (11th Cir. 2003) (observing that “the district court must ‘protect respondent with

17  respect to preservation of his records, confidentiality of nondiscoverable matters, and

18  costs.’”), quoting Fed. R. Civ. P. 34, 1970 Adv. Comm. Notes.

19       When a party is obligated to produce electronically-stored documents in

20  response to discovery requests, it is the responding party’s obligation to conduct the

21  search and review of its own documents.  In re Ford Motor Co., 345 F. 3d at 1317

22  (“Like the other discovery rules, Rule 34(a) allows the responding party to search his

23  records to produce the required, relevant data.  Rule 34(a) does not give the requesting

24  party the right to conduct the actual search.”); Fifty-Six Hope Road Music, Ltd. v.

25

26  ───────────────
[52] Ms. Marlow objected to Mattel’s subpoena “to the extent that it violates her United

27  States and California constitutional, statutory and common law rights of privacy in her

28  financial and confidential information.”  McFarland Decl., Exh. 33.

OPPOSITION TO
EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 49 of 57   Page ID
#:60277
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 21 of 29

1   Mayah Collections, Inc., 2007 WL 1726558, at *9 (D. Nev. 2007) ("It is [the

2   responding party's] obligation to review its records and produce relevant, non-

3   privileged documents and information."); Peskoff v. Faber, 240 F.R.D. 26, 31 (D.D.C.

4   2007) ("[T]he producing party has the obligation to search available electronic systems

5   for the information demanded."), quoting McPeek v. Ashcroft, 202 F.R.D. 31, 32

6   (D.D.C. 2001)); Powers v. Thomas M. Cooley Law School, 2006 WL 2711512, *5

7   (W.D. Mich. 2006) ("The discovery process is designed to be extrajudicial, and relies

8   upon the responding party to search his records to produce the requested data.  In the

9   absence of a strong showing that the responding party has somehow defaulted in this

10  obligation, the court should not resort to extreme, expensive, or extraordinary means to

11  guarantee compliance."); Floeter v. City of Orlando, No. 6:05-cv-400-Orl-22KRS,

12  2006 WL 1000306, at *3 (M.D. Fla. Apr. 16, 2006), quoting In re Ford Motor Co., 345

13  F.3d at 1317.

14      Courts generally require that a requesting party prove improper conduct before

15  compelling the production of a computer hard drive because hard drives "often contain

16  information that is not relevant to the claims and defenses pleaded in a complaint, or

17  that is subject to a claim of privilege, such as attorney-client, work product, trademark

18  or copyright privileges."  Moore's Federal Practice § 37A.44[3][b] (3d ed. 2007).

19  Rather than putting forth evidence, Mattel merely speculates that "there is no substitute

20  for an examination of what documents related to Bratz have been deleted from these

21  hard drives."[53]

22      However, courts will not compel the inspection of a responding party's computer

23  hard drive for a purely speculative inquiry, or in the absence of a showing by the

24  requesting party that the documents it seeks actually exist or that the responding party

25  has unlawfully failed to produce them.  Bethea v. Comcast, 218 F.R.D. 328, 330

26  (D.D.C. 2003); Floeter, 2006 WL 1000306, at *3 (plaintiff "has not made any showing

27  

28  [53]  Ex Parte Application at 10.

- 17 -

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 50 of 57   Page ID
#:60278
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 22 of 29

1   that he has requested information contained on these computer hard drives that the

2   [defendant] has failed to produce"); Balfour Beatty Rail, Inc. v. Vaccarello, No. 3:06-

3   cv-551-J-20MCR, 2007 WL 169628, at *2-3 (M.D. Fla. Jan. 18, 2007) (court denied

4   motion to compel because "Plaintiff's requests simply seek computer hard drives.

5   Plaintiff does not provide any information regarding what it seeks to discover from the

6   hard drives nor does it make any contention that Defendants have failed to provide

7   requested information contained on these hard drives."). In addition, as courts have

8   held, the mere fact that a requesting party is skeptical that a responding party has

9   produced copies of all relevant and non-privileged documents does not warrant

10  compelling production of the responding party's hard drives. See McCurdy Group,

11  LLC v. Am. Biomedical Group, Inc., 9 Fed. Appx. 822, 831 (10th Cir. 2001) (court

12  denied motion to compel because plaintiff "has never explained, either in the district

13  court or on appeal, why it should be allowed to conduct a physical inspection of

14  [defendant]'s computer hard drive(s)."); Ameriwood Indus., Inc. v. Liberman, No. 4-

15  06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not

16  inspect the physical hard drives of a computer merely because the party wants to search

17  for additional documents responsive to the party's document requests.").

18      In his December 31 Order, Judge Infante stated that Mattel "contends that Rule

19  34 permits a party to obtain and test computer hard drives and other storage devices."[54]

20  Judge Infante denied Mattel's request stating that "Larian correctly notes that Rule 34

21  was not intended to authorize the routine production of a party's electronic drives."[55]

22  Mattel fails to demonstrate that Ms. Marlow's document production was inadequate.

23  Moreover, Mattel has not shown that the information it seeks even exists. Instead,

24  Mattel simply claims that because the Protocol was never applied to Ms. Marlow, her

25  "computer has never been 'key word' searched and presently is, to Mattel's

26

27  [54] See McFarland Decl., Exh. 2 at 16.

28  [55] Id. at 17.

- 18 -

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 51 of 57   Page ID
#:60279
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 23 of 29

1   knowledge, in Ms. Marlow's physical possession rather than in the possession of an

2   independent expert."[56] However, the fact that Ms. Marlow's hard drives were not

3   "key word" searched or that they are still in her possession in no way suggests that her

4   document production was insufficient.  Courts are clear that in order to compel

5   production of the hard drives, especially after responsive documents have been

6   produced, Mattel must either show that Ms. Marlow's discovery obligations have not

7   been fully complied with or that there are serious concerns over discrepancies or

8   inconsistencies in the discovery responses.  See In re Ford Motor Co., 345 F.3d at

9   1317 (acknowledging that "improper conduct on the part of the responding party,"

10  such as "a factual finding of some non-compliance with discovery rules," may allow

11  the requesting party itself to check the computer hard drives); Balfour Beatty Rail,

12  Inc., 2007 WL 169628 at 3 ("[A]llowing a party direct access to another party's

13  databases may be warranted in certain situations, such as a showing of non-

14  compliance with discovery rules."); Williams v. Mass. Mut. Life Ins. Co., 226 F.R.D.

15  144, 146 (D. Mass. 2005) (plaintiff's request for forensic review of defendants' hard

16  drives denied where plaintiff "provided no reliable or competent information to show

17  that Defendants' representations … are misleading or substantively inaccurate.");

18  Simon Prop. Group L.P. v. mySimon, Inc., 194 F.R.D. 639, 641 (S.D. Ind. 2000)

19  (allowing plaintiff to mirror image defendant's computers where there were "troubling

20  discrepancies with respect to defendant's document production").  Mattel's argument

21  with respect to the third-party witnesses Pedro Salazar, Maria Salazar, Ana Isabela

22  Cabrera and Beatriz Morales also fails to satisfy Mattel's burden to establish that there

23  was any improper conduct on the part of Ms. Marlow with respect to her discovery

24  obligations.  In fact, the opposite is true.  While Mattel claims that it did not

25  "discover" these alleged "co-conspirators" until Ms. Marlow's deposition on

26  December 28, 2007, the record shows otherwise.  It is undisputed that Ms. Marlow

27

28  [56]  Ex Parte Application at 6 n.17.

OPPOSITION TO
EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 52 of 57   Page ID
#:60280
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 24 of 29

1   produced numerous documents no later than November 21, 2007, which identified all

2   of these individuals.[57]

3        Mattel has failed to establish that Ms. Marlow's discovery obligations have not

4   been fully satisfied and has failed to establish that the documents it seeks actually exist.

5   Instead, Mattel relies on highly speculative conjecture, which Judge Infante as well as

6   numerous courts have held is insufficient to warrant Mattel's requested relief.[58]

7        **C.    Mattel Has No Basis For Seeking A New Computer Protocol.**

8        Mattel now refers to the Protocol that counsel for Ms. Cloonan and Ms. Leahy

9   and counsel for Mattel spent months negotiating as merely "*initial* searches of those

10  computer hard drives...."[59] Nothing could be further from the truth. As the

11  correspondence establishes, counsel for Ms. Cloonan and Ms. Leahy repeatedly

12  stressed the importance of insuring that all documents were produced before the

13  depositions so that these third-party witnesses would not be burdened with a second

14  deposition beyond the seven-hour limit set forth in the federal rules.[60] As part of this

15  effort, counsel for Ms. Cloonan and Ms. Leahy negotiated the Protocol with

16  Ms. Wines, and the September 13, 2007, letter from Ms. Wines unambiguously states

17  as follows: "I follow up on our telephone conversation today regarding the protocol for

18  the inspection of computer hard drives and laptop computers."[61] This was not an

19  "initial" review; this was the agreed-to Protocol.

20       Faced with this fact, Mattel tries to argue that there is some new evidence that

21  establishes that there is an "issue or question regarding the authenticity, correctness,

22

23

---

24  [57] See McFarland Decl., Exh. 30.
    [58] See e.g., Williams, 226 F.R.D. at 146 (absent any credible evidence that responding
25  party failed to produce requested e-mail, court declined to order inspection of computer
26  hard drive).
    [59] Ex Parte Application at 2.
27  [60] See McFarland Decl., Exh. 13.
28  [61] See McFarland Decl., Exh. 6.

OPPOSITION TO
EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 53 of 57   Page ID
#:60281
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 25 of 29

1   integrity or completeness...." of the computer review.[62] However, rather than putting

2   forward evidence,[63] Mattel merely speculates that there might be some graphical files

3   on the computers, zip disk or storage devices.[64] For example, Mattel states in its Ex

4   Parte Application that "the keyword searches do not capture the evidence that arises

5   from the *absence* of documents on the computer hard drives, specifically the absence of

6   documents that these witnesses testified at the deposition should have been located on

7   their respective hard drives but which were not, for some reason, produced."[65]

8   Conspicuously absent from this statement is any citation to the record; the reason being

9   that neither Ms. Cloonan nor Ms. Leahy ever made any such statement.

10

11

12   _____

[62]   Id.

[63]   Mattel's attempt to justify a new protocol based on the identification of Pedro
Salazar, Maria Salazar, Ana Isabela Cabrera and Beatriz Morales is without merit. As
an initial matter, these four people assisted Ms. Marlow with the sewing of the Bratz
fashions and nothing more. See McFarland Decl. at Exh. 8 at 282:22-25, 283-314,
315:1-13. The evidence is undisputed that Ms. Cloonan did no work on and had no
involvement with the fashions for Bratz. See McFarland Decl., Exh. 21 at 117-131,
132:1-13, 147:6-23, 289:4-6. Similarly, Ms. Leahy did not work on the fashions for
Bratz. McFarland Decl., Exh. 20 at 101:14-23, 130:6-25, 131:1, 149:6-18, 206:2-14.
Further, the Protocol already included the terms Veronica Marlow, Bratz, MGA and
others, which covers the type of work that these four individuals did. See McFarland
Decl., Exh. 6. Finally, these four witnesses were disclosed in documents produced by
Ms. Marlow no later than November 21, 2007. McFarland Decl., Exh. 30. If Mattel
wanted to add these names to the Protocol they could have done so prior to the
depositions, which were not taken until December 12 and 14, 2007.

[64]   Ex Parte Application at 2, 3. In fact, this involves two levels of speculation. The
first is that such graphical files exist and the second is that, if they exist, they would not
have been located by key word searches that included words such as Bratz, MGA and
Carter Bryant. In addition, it is undisputed that Mattel has known since 2004 that there
could possibly be graphical files on Ms. Cloonan's computer because Mr. Bryant
testified that he used her computer to work on his Bratz presentations. See McFarland
Decl., Exh. 7 at v.1 245:17-23, v.2 29:12-14, 30. This knowledge predates by almost
three years the date that Ms. Wines proposed the Protocol.

[65]   Ex Parte Application at 3.

OPPOSITION TO
EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 54 of 57   Page ID
#:60282
Case 2:04-cv-09049-SGL-RNB   Document 1656   Filed 01/27/2008   Page 26 of 29

1    As an initial matter, Judge Infante has already found in similar circumstances that

2    such speculation regarding allegedly missing or deleted files does not support obtaining

3    copies of hard drives:

4        However, Mattel fails to explain how these alleged instances of evidence

5        destruction justify Request 222, other than to assert that it has a right to

6        inspect Larian's storage devices to ensure that relevant information has not

7        been deleted or permanently destroyed. Mattel's stated purpose suggests that

8        instead Mattel is launching a fishing expedition in pursuit of new claims,

9        which is not permitted under the Federal Rules of Civil Procedure. See e.g.

10       Rivera v. NIBCO, Inc., supra.[66]

11   Moreover, it is important to note that Mr. Larian is a party where Ms. Cloonan

12   and Ms. Leahy are not. Judge Infante recently emphasized the importance of this

13   distinction as follows:

14       Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to restrict or prevent

15       discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

16       obtainable from some other source that is more convenient, less burdensome,

17       or less expensive; (ii) the party seeking discovery has had ample opportunity

18       by discovery in the action to obtain the information sought; or (iii) the burden

19       or expense of the proposed discovery outweighs its likely benefit, taking into

20       account the needs of the case, the amount in controversy, the parties'

21       resources, the importance of the issues at stake in the litigation, and the

22       importance of the proposed discovery in resolving the issues. These

23       restrictions are particularly important to consider where the discovery

24       requests are directed at a non-party. See Moon v. SCP Pool Corp., 232

25       F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood

26       Chem. Co., Inc., 649 F.2d 649 (9th Cir. 1980) (discovery should be "more

27

28   [66] See McFarland Decl., Exh. 2 at 17.

- 22 -

1    limited to protect third parties from harassment, inconvenience, or disclosure

2    of confidential information.").[67]

3        Given the complete lack of evidence to establish any basis for a new Protocol,

4    and the fact that Ms. Leahy and Ms. Cloonan are non-parties, the rulings by Judge

5    Infante should be dispositive.

6        Mattel also asserts that "[i]n general, federal law does not recognize a right to

7    privacy that entitles a party to withhold documents."[68]  In the January 25 Order, Judge

8    Infante rejects this argument, stating that:

9        Personal financial information is afforded protection by the California

10       Constitution that is also recognized by federal courts. Cal. Const., Art. I, §1;

11       Valley Bank of Nevada v. Superior Court, 15 Cal.3d 652, 656 (1975); Kelly

12       v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

13       should give "some weight" to privacy rights that are protected by state

14       constitutions); Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal.

15       1995) (right to privacy in financial information has been recognized by

16       federal courts).  When a privacy right is asserted as an objection to discovery,

17       the court must balance the need for the information versus the privacy right

18       asserted. Soto, 162 F.R.D. at 616.[69]

19       Apparently realizing that it is wrong with respect to its argument that federal law

20   does not recognize privacy rights, Mattel distorts the record in a failed attempt to show

21   that Ms. Cloonan does not have a privacy interest in the zip disk.  Mattel claims that

22   Ms. Cloonan testified that "it is not likely even hers," and, "Ms. Cloonan testified that

23   the disk was not hers...."[70]  In fact, Ms. Cloonan testified that she had the zip disk in

24

25   [67]  McFarland Decl., Exh. 31 (Order Re Mattel's Motions to Compel Farhad Larian,

26   Kaye Scholer and Stern & Goldbert to Produce Documents ("January 25 Order")) at 11.
     [68]  Ex Parte Application at 9.

27   [69]  See McFarland Decl., Exh. 31 at 12.
     [70]  Ex Parte Application at 3, 9.

28

- 23 -

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 56 of 57   Page ID
#:60284
Case 2:04-cv-09049-SGL-RNB     Document 1656     Filed 01/27/2008     Page 28 of 29

1    her home, and that she "dug through files – *my* old files, old paperwork, old disks...

2    and everything I found I gave to Larry."[71]  In addition, in order to make sure that the

3    record is clear on this point, Ms. Cloonan has declared that "[t]he zip disk that had the

4    word "Bratz" hand written on the label, which I produced in this litigation, is my

5    property and was used with my personal computer in my home."[72]  Furthermore,

6    Ms. Cloonan has declared that "[i]t is my practice generally to re-use and recycle zip

7    disks. Therefore, zip disks may contain various types of files and documents, including

8    files and documents that are likely to contain personal matters."[73]  Any possession,

9    including the zip disk, which Ms. Cloonan keeps at her home, clearly falls within her

10   "zone of privacy" which is meant to protect personal matters. See In re Crawford, 194

11   F.3d 954, 958 (9th Cir. 1999) (recognizing the United States Supreme Court's

12   acknowledgement of the existence of an individual's "zone of privacy"), citing Doe v.

13   Attorney General, 941 F.2d 780, 795 (9th Cir.1991) (recognizing the constitutionally-

14   protected privacy interest in avoiding disclosure of personal matters).[74]

15         The undisputed evidence establishes that Ms. Cloonan has protectable privacy

16   rights in the zip disk as well as her in personal computer, and that Ms. Leahy similarly

17

18   ───────────────
     [71] See McFarland Decl., Exh. 20 at 247:24-25, 248:1-2.
19   [72] McFarland Decl., Exh. 32.
20   [73] Id. Ms. Cloonan testified at her deposition with respect to zip disks in general that
     they were "recyclable and people would take them – they were like pens." See
21   McFarland Decl., Exh. 20 at 297:19-20.
22   [74] With regard to the zip disk, Mattel also alleges that "[i]n plain violation of his
     obligations, ... counsel for the witnesses did not even produce a copy of the 'Bratz'
23   label or otherwise reveal that it was so labeled." Ex Parte Application at 3. Once
     again, this is untrue. Counsel for Ms. Cloonan provided the original zip disk to the
24   expert selected by Mattel and, as set forth above, Ms. Cloonan's counsel instructed
     Mattel's expert on December 18, to "make a color photocopy of the front and the back
25   of the zip disk and email the photocopies to me, with a copy to Mr. Tayback, so that I
     can put Bates numbers on the two pages." See McFarland Decl., Exh 22. It is therefore
26   inconceivable that Mattel contends that a copy of the zip disk label was not produced or
27   otherwise revealed.

28

                                          - 24 -                    OPPOSITION TO
                                                                   EX PARTE APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495   Filed 05/06/08   Page 57 of 57   Page ID
#:60285
Case 2:04-cv-09049-SGL-RNB    Document 1656    Filed 01/27/2008    Page 29 of 29

1  has protectable privacy rights in her external hard disk drives.[75] The Protocol was

2  designed to protect these legitimate interests while at the same time allowing Mattel the

3  opportunity to review these old computer materials. Mattel's current request to be

4  provided with the hard drives and the zip disk is a blatant violation of Ms. Cloonan's

5  and Ms. Leahy's privacy interests and conflicts with the recent rulings of Judge Infante.

6  The Protocol was agreed to; the computer, zip disk and external hard disk drives were

7  reviewed pursuant to the Protocol; all documents located by the expert were produced,

8  and the depositions were taken. That should be the end of it.

9  **III.    CONCLUSION**

10         For the foregoing reasons, the Non-Party Witnesses respectfully request that the

11 Court deny Mattel's Ex Parte Application.

12

13 Dated: January 27, 2008                    KEATS MCFARLAND & WILSON LLP

14

15                                           /s/_____

16                                           Christian C. Dowell, Esq.
                                             Attorneys for Non-Parties Ana Elise Cloonan,
17                                           Margaret Hatch-Leahy, and Veronica Marlow

18

19

20

21

22

23

24

25

26

27  _____

28  [75] See McFarland Decl., Exh. 33.