Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 1 of 45   Page ID
#:60336
Case 2:04-cv-09049-SGL-RNB   Document 1719-5   Filed 01/28/2008   Page 1 of 22

# EXHIBIT 3

Case 2:04-cv-09049-SGL-RNB    Document 1627    Filed 01/24/2008    Page 1 of 21

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Plaintiff and Counter-Defendant
     Mattel, Inc.

8

9                 UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                     EASTERN DIVISION

12  |                                  | Case No. CV 04-09049 (RNBx)
     CARTER BRYANT, an individual      |
13                                     | Hon. Stephen G. Larson
            Plaintiff,                 |
14                                     | MATTEL INC.'S MEMORANDUM
        v.                             | OF POINTS AND AUTHORITIES IN
15                                     | SUPPORT OF ITS OBJECTION TO
     MATTEL, INC., a Delaware          | THE DISCOVERY MASTER'S
16  Corporation,                       | JANUARY 11, 2008 ORDER
                                       | GRANTING MGA'S AND
17            Defendant.               | BRYANT'S MOTION TO COMPEL
                                       | RE: MATTEL'S ALLEGED
18                                     | BANDYING OF 30(B)(6)
                                       | WITNESSES
19

20                                     | Hearing Date:    March 3, 2008
                                       | Time:            10:00 a.m.
21                                     | Courtroom:       1

22                                     | **Phase 1**
                                       | Discovery Cut-off:    Jan, 28, 2008
23                                     | Pre-trial Conference:  May 5, 2008
                                       | Trial Date:           May 27, 2008

24

25

26

27                         **Exhibit 3 -  39**

28

1

## TABLE OF CONTENTS

2                                                                    **Page**

3

I.      INTRODUCTION ............................................................................ 1

4

5   II.     BACKGROUND ............................................................................. 3

6       A.    The Parties' Stipulation Regarding Rule 30(b)(6)
              Depositions and Magistrate Judge Block's May 2005
7             Order .............................................................................. 3

8       B.    MGA's Recent Motion Regarding Rule 30(b)(6)
9             Depositions ...................................................................... 6

10      C.    The Parties' Discussions Regarding the Scope of the
11            Discovery Master's Order .................................................. 6

12  III.    ARGUMENT ................................................................................. 8

13      A.    The Discovery Master's Order Compelling Mattel to
14            Produce One Witness per Topic to Testify to Its Full
              "Knowledge" Cannot Require Mattel to Violate This
15            Court's Protective Order.................................................... 8

16      B.    The Discovery Master's Order Improperly Compels
17            Mattel to Produce a Single Witness per Topic to Testify
              as to Contention Topics in Contravention of Magistrate
18            Judge Block's Order. .................................................... 12

19      C.    The Discovery Master's Order Must Be Limited to
20            Information That Is Relevant to Any Claim or Defense........... 14

21      D.    The Discovery Master's Order Imposes an Impossible
22            Burden on Mattel in Contravention of Federal Rule
23            30(b)(6). ....................................................................... 15

24  IV.     CONCLUSION ............................................................................. 17

25

26

27

28                                    Exhibit 3 - 40

                                        MATTEL'S MEM. ISO OBJECTIONS TO JAN. 11, 2008 ORDER

## TABLE OF AUTHORITIES

**Page**

### Cases

*In re Independent Service Orgs. Antitrust Litig.*,
168 F.R.D. 651 (D. Kan. 1996) .................................................. 12

*McCormick-Morgan, Inc. v. Teledyne Indus.*,
134 F.R.D. 275 (N.D. Cal.), rev'd in part on other grounds, 765 F. Supp.
611 (N.D. Cal. 1991) .......................................................... 13, 16

*Palmer v. U.S.*,
794 F.2d 534 (9th Cir. 1986) ..................................................... 5, 12

*SmithKline Beecham Corp. v. Apotex Corp.*,
2000 WL. 116082 (N.D. Ill. 2000) .............................................. 12

### Statutes

Fed. R. Civ. P. 26(b)(1) ............................................................ 13

Fed. R. Civ. P. 30(b)(6) ......................................................... passim

**Exhibit 3 - 41**

MATTEL'S MEM. ISO OBJECTIONS TO JAN. 11, 2008 ORDER

07209/2366548.1

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 5 of 45   Page ID
#:60340
Case 2:04-cv-09049-SGL-RNB   Document 1719-5   Filed 01/28/2008   Page 5 of 22

1      Mattel, Inc. submits this memorandum of points and authorities in
2 support of its Objection to the Discovery Master's January 11, 2008 Order Granting
3 in Part MGA Entertainment, Inc's and Carter Bryant's Joint Motion to Compel
4 regarding Mattel's alleged "bandying" of Rule 30(b)(6) witnesses (hereinafter the
5 "Order"). Mattel appeals from and requests review of the Order on four legal
6 grounds.

## I.   INTRODUCTION

10      The Order puts Mattel in an impossible position:[1]

11    •   First, by this Objection, Mattel asks the Court to clarify that
12 the Discovery Master did not force Mattel to make an impossible
13 choice: either violate the Protective Order by educating its Rule
14 30(b)(6) witnesses with confidential MGA/Bryant documents, or violate
15 the Discovery Master's Order by failing to produce Rule 30(b)(6)
16 witnesses educated with "Mattel's knowledge," as MGA/Bryant construe
17 that term. The Order compels Mattel to produce a single witness per
18 topic to provide "Mattel's knowledge." MGA and Bryant have suggested
19 that "Mattel's knowledge" includes MGA/Bryant confidential information
20 that *Mattel* has never known, but that *Mattel's counsel* learned only
21 through from discovery. MGA and Bryant contend that Mattel
22 must educate its witnesses regarding this confidential, discovery-only
23 information, or be precluded from offering key information (such as
24 MGA's covert payments to Bryant while still at Mattel) at trial. This
25 Court's Protective Order, however, prohibits Mattel from showing its

---

[1] Corey Decl. Ex. 14.

**Exhibit 3 - 42**

1  designees MGA/Bryant confidential information -- virtually
2  everything they have produced.  Mattel should not have to chose between
3  risking preclusion and violating the Protective Order.

4          •      Second, the Order should be clarified to confirm that it does
5  not purport to overrule a prior Order in which Magistrate Judge Block
6  narrowed the very same Rule 30(b)(6) deposition topics.  The topics at
7  issue -- which include such overbroad subjects as all Mattel proprietary
8  and confidential information Bryant saw during his years at Mattel or the
9  development of DIVA STARZ, a completely distinct doll line -- were
10  sensibly narrowed by the parties' agreement in 2005 and so-ordered by
11  Magistrate Judge Block.  The Discovery Master lacked authority to
12  override the May 4, 2005 Order, particularly in that the Discovery Master
13  made no finding that Mattel had violated that or any other prior order.
14  The January 11, 2008 Order should make clear that it incorporates
15  Magistrate Judge Block's Order as to these same topics, including the
16  provision that Mattel need not produce a witness to testify to its legal
17  contentions, just to facts.

18          •      Third, the Order is contrary to law because it does not limit
19  Mattel's obligation to prepare witnesses to the claims and defenses in
20  these consolidated actions.  The Order needs to make clear that it does
21  not purport to exceed the bounds of permissible discovery under Rule 26.

22          •      Fourth, the Order purports to override Mattel's right under
23  Rule 30(b)(6) to designate one or more witnesses to testify on its behalf.
24  The Order purports to compel Mattel to produce a single witness on each
25  of a number of impossibly broad topics, a restriction not permitted by
26  Rule 30(b)(6), Rule 37, or any other Federal Rule.

27  The Court should modify the Discovery Master's Order to correct the above legal
28  defects.                                  **Exhibit 3 - 43**

07209/2366548.1

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 7 of 45   Page ID
#:60342
Case 2:04-cv-09049-SGL-RNB     Document 1719-5     Filed 01/28/2008     Page 7 of 22

1

2

3   **II.    BACKGROUND**

4

5        **A.    The Parties' Stipulation Regarding Rule 30(b)(6)**

6               **Depositions and Magistrate Judge Block's May 2005 Order**

7

8        The proper scope of Rule 30(b)(6) depositions is not a new topic in

9   this case.  On March 15, 2005, the parties held an extensive meeting of counsel to

10  address, among other subjects, proper parameters for Rule 30(b)(6) depositions.

11  The meeting of counsel, which was transcribed, included discussion of the same

12  eleven broad Rule 30(b)(6) topics that at issue in this Objection.[2]

13  ――――――――――

14         [2]   The topics, from a notice served years ago by Bryant, are as follows:

15      Topic 2:  All contractual and non-contractual duties and obligations
               Bryant owed or performed for Mattel during his employment
               with Mattel, and thereafter.

16

17      Topic 3:  All of Bryant's acts or omissions which breached any
               contractual or non-contractual duty or obligation Bryant owed
               to Mattel.

18

19      Topic 4:  All of Bryant's acts or omissions which breached any duties
               or obligations imposed by the Conflict of Interest Questionnaire
               and/or the Employee Confidential information and Inventions

20               Agreement.

21      Topic 5:  All Mattel proprietary or confidential information Bryant
               had access to during his employment with Mattel.

22

23      Topic 6:  All of Bryant's acts or omissions pursuant to which he aided,
               assisted and worked for a competitor of Mattel while employed
               by Mattel from 1995 to the present.

24

25      Topic 7:  The services and property belonging to Mattel that Bryant
               provided to any third party, including MGA, from 1995 to the
               present.

26

27      Topic 8:  All acts, omissions, circumstances and/or evidence showing,
               or tending to show, that any and all products of MGA, including
               but not limited to, any and all products sold under the trade

28  (footnote continued)

                                              **Exhibit 3 - 44**

1    At the meeting of counsel, the parties agreed that

2  • Rule 30(b)(6) depositions do not require a party to teach a

3 witness everything it has learned from other parties or third parties in

4 discovery[3];

5

6

7

    name "Bratz," originated from, were derived from, are based
8    upon, are copied or incorporated from, or are substantially or
    confusingly similar to, any design, research and developmental
9    work, work in progress, or product owned at any time by Mattel
    or created by any Mattel employee, including but not limited to
10    Bryant, or by any independent contractor during the time that
    such Person was working for Mattel.

11

12 Topic 11:  All facts and circumstances showing the conception,
    origination, creation, development and/or reduction to practice
13    of "DIVA STARZ."

14 Topic 12:  All facts and circumstances showing the conception,
    origination, creation, development and/or reduction to practice
15    of "Mini DIVA STARZ."

16 Topic 13:  All acts, omissions, circumstances and/or evidence
    showing, or tending to show, that any and all products of MGA,
17    including but not limited to, any and all products sold under the
    trade name "Bratz," originated from, were derived from, are
18    based upon, copies, incorporates, or is substantially or
    confusingly similar to any design or work product owned at any
19    time by Mattel or created by Bryant during the time Bryant was
    working for Mattel.

20 Topic 24:  All acts, omissions, circumstances and/or evidence
    showing, or tending to show, that prior to October 21, 2000,
21    Mattel had any toy concept or project which had not yet been
    offered for sale to the public, including without limitation, any
22    toy concept or project in the pre-production or development
    phase, that Bryant improperly copied, replicated, borrowed or
23    otherwise used in whole, or in any part, during or after Bryant's
    employment with Mattel.

24

25 Bryant Rule 30(b)(6) Notice, served December 21, 2005 (Corey Supp. Decl.
 Ex. 1).

26  [3] 3/15/05 Tr. (Corey Decl. Ex. 2) at 191:10-14 ("I don't think it's in the
27 scope of a 30(b)(6) deposition for Mattel to teach a witness everything that
 it's discovered . . . .") (Bryant's counsel, Mr. Jacoby).

28               **Exhibit 3 - 45**

1  •  Rule 30(b)(6) depositions properly involve only "factual
2  underpinnings" and parties need not produce witnesses to testify as to
3  their contentions or legal conclusions[4];

4  •  The parties could reserve objections to matters outside the scope
5  of the lawsuit[5]; and

6  •  Mattel had a right to produce more than one witness on a topic
7  if the scope of the topic was so broad as to require more than one
8  witness.[6]

9  See generally Transcript of March 15, 2005 Rule 37 Conference (incorporated in
10  May 4, 2005 Order) (Corey Decl. Ex. 2).

11  On May 4, 2005, the parties' agreed limitations were formally made
12  applicable to all depositions on these topics by way of a Stipulation and Order
13  signed by Magistrate Judge Block. The May 4, 2005 Order, among other things,
14  expressly stated that Mattel would designate Rule 30(b)(6) witnesses "as agreed to
15  by Bryant and Mattel in the March 15, 2005 meeting of counsel and as reflected in
16  the transcript of that meeting." See May 4, 2005 Order ¶1(a).

17

18  [4]  3/15/05 Tr. (Corey Decl. Ex. 2) at 156:11-159:23, 169:4-24 ("I agree
19  with you in principle that we're entitled to facts, not legal conclusions.") (
    Bryant's counsel, Mr. Jacoby), 173:4-9 (question seeking basis for
20  contention "would probably not be a proper question") (Mr. Jacoby), 178:5-
21  179:8 (witnesses are "to testify to the factual underpinnings of . . .
    contentions") (Mr. Jacoby), 191:10-21 ("I mean we're seeking to conduct
22  depositions to determine the factual underpinnings based on Mattel's
    personal knowledge . . . .") (Bryant's counsel, Mr. Wickham).
23  [5]  3/15/05 Tr. (Corey Decl. Ex. 2) at 179:4-7 (objection that "it's outside
24  the scope of the lawsuit" is one "every party has made before and certainly
    we can reserve here") (Bryant's counsel, Mr. Jacoby).
25  [6]  3/15/05 Tr. (Corey Decl. Ex. 2) at 178:21-24 ("Mattel will reserve the
26  right to produce one or more witnesses on a single category . . . .") (Bryant's
    counsel, Mr. Jacoby); see also Corey Decl. Exs. 5 & 6 (confirming letters
27  indentifying multiple witnesses).
28  **Exhibit 3 - 46**

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 10 of 45   Page ID
#:60345
Case 2:04-cv-09049-SGL-RNB   Document 1719-5   Filed 01/28/2008   Page 10 of 22

Case 2:04-cv-09049-SGL-RNB   Document 1627   Filed 01/24/2008   Page 9 of 21

1     Neither MGA nor Bryant appealed from Magistrate Judge Block's

2  Order and it thus remains binding upon the parties.  See Local Rule 72-2.2;

3  *Palmer v. U.S.*, 794 F.2d 534, 540 (9th Cir. 1986) (rejecting appellant's claim that

4  he needed additional documents because he failed to appeal from magistrate

5  judge's discovery order).

6

7     **B.     MGA's Recent Motion Regarding Rule 30(b)(6) Depositions**

8

9     After Mattel produced six witnesses on these topics who testified over

10  eight days, on September 7, 2007 MGA and Bryant ("MGA/Bryant") filed a "Joint

11  Motion to Compel re: Mattel's Bandying of 30(b)(6) Witnesses."  The motion

12  complained about the preparation and performance of Mattel's Rule 30(b)(6)

13  witnesses and asked the Discovery Master to issue an Order compelling Mattel to

14  produce witnesses to testify competently on various topics, including the eleven

15  topics listed in footnote 1 above, that had been the subject of the March 15, 2005

16  meeting of counsel and the May 4, 2005 Order by Magistrate Judge Block.

17     At a hearing on January 3, 2008, the Discovery Master stated that he

18  would grant the motion in part, ordering Mattel to produce "one competent

19  witness" per topic to testify, at the risk of preclusion at trial, "as to Mattel's

20  knowledge" as to those eleven topics.  See 3/15/05 Tr. (Corey Decl. Ex. 2) at

21  84:15-20.

22

23     **C.     The Parties' Discussions Regarding the Scope of the**

24          **Discovery Master's Order**

25

26     Following the January 3, 2008 hearing, the parties conferred regarding

27  the scope and provisions of the Discovery Master's Order.  Mattel asked that the

28  proposed order circulated by MGA/Bryant be amended to make clear that

1   •   Mattel need not produce witnesses to testify about

2   information produced by MGA/Bryant or other parties in the

3   discovery process (which information is largely designated

4   "CONFIDENTIAL-ATTORNEYS EYES ONLY" under the

5   Court's Protective Order);

6   •   Mattel need not produce witnesses to testify about

7   information not relevant to any claim or defense; and

8   •   Mattel need not re-produce any witnesses unless the

9   witnesses had knowledge beyond their prior testimony.

10   See January 10, 2008 E-mail from Jon Corey to John Trinidad, Corey Decl. Exs.

11   12 & 13 (attaching amended proposed order).[7]

12   MGA/Bryant rejected each of these clarifications, submitting their

13   proposed order to the Discovery Master less than three hours after receiving

14   Mattel's e-mail. The Discovery Master entered the Order as proposed by

15   MGA/Bryant the next day, January 11, 2008, without any of the clarifying

16   language offered by Mattel. Because the Order's ambiguity puts Mattel in an

17   untenable position, Mattel has timely filed its objections with this Court.

18

19

20

21

22

23

24

25

26   [7]   These provisions paralleled those suggested by Bryant's counsel (also

27   acting on behalf of MGA) during efforts to resolve the motion by agreement
     before the hearing. See Corey Decl. Ex. 7.

28                                            **Exhibit 3 - 48**

1  III.   **ARGUMENT**

2

3         A.    **The Discovery Master's Order Compelling Mattel to**

4               **Produce One Witness per Topic to Testify to Its Full**

5               **"Knowledge" Cannot Require Mattel to Violate This**

6               **Court's Protective Order.**

7

8               The Discovery Master's Order needs to make clear that it does not

9  compel Mattel to choose between violating the Order and the Court's January 4,

10 2005 Protective Order and risking preclusion.  Corey Decl. Ex. 4.  Mattel raised

11 this issue at the January 3, 2008 hearing:

12               MR. COREY:  But by this order, the Court is not

13               compelling Mattel to provide information subject to the

14               protective order to its witnesses to prepare them?

15               JUDGE INFANTE:  I'm not speaking to that.

16               You have my order.

17 1/03/08 Hearing Tr. (Corey Decl. Ex. 11) at 84:4-9.

18               Inexplicably, MGA/Bryant rebuffed Mattel's attempt to insert a

19 provision in the Order making clear that the Discovery Master was not compelling

20 Mattel to violate the Protective Order.  Mattel asked that the Order make clear that

21               Mattel shall not be required to:

22               . . . .

23               (b)     produce a witness or witnesses to testify about

24               information that Mattel knows solely as a result of discovery

25               taken in this case.

26 See January 10, 2008 E-mail from Jon Corey to John Trinidad, Corey Supp. Decl.

27 Ex. 12.  Although MGA/Bryant conceded during the 2005 meeting of counsel that

28 regurgitating discovery information is *not* within the proper scope of a Rule

Case 2:04-cv-09049-SGL-RNB   Document 1627   Filed 01/24/2008   Page 12 of 21

1   30(b)(6) deposition,[8] and this was so-ordered by Magistrate Judge Block,

2   MGA/Bryant refused to make clear that discovery information was excluded from

3   the proposed order's scope. The Discovery Master signed the proposed order as

4   submitted by MGA/Bryant.

5       MGA/Bryant have thus created ambiguity as to whether the

6   Discovery Master's Order conflicts with the Court's Protective Order.  The

7   Discovery Master's Order, by its terms, requires Mattel to produce one witness per

8   topic to testify to "Mattel's knowledge" with respect to such broad topics as

9       •   "All of Bryant's acts or omissions which breached any

10          contractual or non-contractual duty or obligation Bryant owed

11          to Mattel" (Topic 3);

12      •   "All of Bryant's acts or omissions which breached any

13          duties or obligations imposed by the Conflict of Interest

14          Questionnaire and/or the Employee Confidential information

15          and Inventions Agreement" (Topic 4);

16      •   "All of Bryant's acts or omissions pursuant to which he

17          aided, assisted and worked for a competitor of Mattel while

18          employed by Mattel from 1995 to the present" (Topic 6);

19      •   "The services and property belonging to Mattel that

20          Bryant provided to any third party, including MGA, from 1995

21          to the present" (Topic 7);

22      •   "All acts, omissions, circumstances and/or evidence

23          showing, or tending to show, that any and all products of MGA

24          . . . , originated from, were derived from, are based upon, are

25

26  _____
    [8] See 3/15/05 Tr. (Corey Decl. Ex. 2) at 191:10-14 ("I don't think it's the
27  scope of a 30(b)(6) deposition for Mattel to teach a witness everything that
    it's discovered . . . .") (Bryant's counsel, Mr. Jacoby).
28                                                      **Exhibit 3 - 50**

Case 2:04-cv-09049-SGL-RNB      Document 1627      Filed 01/24/2008      Page 13 of 21

1        copied or incorporated from, or are substantially or confusingly

2        similar to, any design, research and developmental work, work

3        in progress, or product owned at any time by Mattel . . . ."

4        (Topic 8); and

5        •    "All acts, omissions, circumstances and/or evidence

6        showing, or tending to show, that prior to October 21, 2000,

7        Mattel had any toy concept or project which had not yet been

8        offered for sale to the public, including without limitation, any

9        toy concept or project in the pre-production or development

10      phase, that Bryant improperly copied, replicated, borrowed or

11      otherwise used in whole, or in any part, during or after Bryant's

12      employment with Mattel" (Topic 24).

13  Obviously, "Mattel's knowledge" as to what Bryant did to breach his duties and to

14  assist competitors, what Mattel property Bryant sent to third parties, Bryant's

15  copying, and other instances of Bryant's misconduct is *primarily, if not exclusively,*

16  derived from information Mattel has obtained in discovery from MGA/Bryant and

17  from third parties. This makes sense, given the great lengths to which Bryant and

18  MGA went to conceal Bryant's disloyalty from Mattel (and to the extent that

19  Mattel knew about it or had facts related to his disloyalty in connection with the

20  claims asserted, Mattel produced designees on the topics. Even if it were possible

21  for Mattel to educate its corporate witnesses as to the full content of the thousands

22  and thousands of documents and volumes of testimony Mattel's counsel have

23  obtained in discovery in this case, the Stipulated Protective Order entered by the

24  Court on January 4, 2005 prevents Mattel from giving this information to a

25  witness.[9]

26

27     [9]   Ironically, one MGA employee-defendant recently invoked the
Protective Order as license to refuse to provide "any substantive response" at

28  (footnote continued)

**Exhibit 3 - 51**

1    The Protective Order permits discovery information to be designated

2  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." "CONFIDENTIAL --

3  ATTORNEYS' EYES ONLY" information may be revealed to Mattel's outside

4  attorneys only; Mattel's officers and employees are prohibited from seeing it. *See*

5  January 4, 2005 Protective Order ¶ 6. Because MGA/Bryant have designated

6  almost everything they have produced in discovery "CONFIDENTIAL --

7  ATTORNEYS' EYES ONLY," it would be impossible for anyone to testify to

8  "Mattel's knowledge" on the topics listed above, or others, without access to that

9  information. The same applies to discovery obtained from third parties, much of

10  which is also designated "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

11    Mattel cannot be forced into a position where it must choose between

12  violating the Court's January 4, 2005 Protective Order and violating the Discovery

13  Master's January 11, 2008 Discovery Order, yet that is exactly what MGA/Bryant's

14  interpretation of the Order, as written, is. The Order should be clarified to confirm

15  that Mattel is not required to parrot back to MGA/Bryant information that they

16  themselves or third parties have produced in discovery, including information

17  designated "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."[10]

18

19

20

21

22

23

24

---

25  all to discovery served by Mattel. See January 17, 2008 Letter from
Alexander Cote to Jon Corey and Dylan Procter, Corey Decl. Ex. 15.

26  [10]  Mattel believes that MGA/Bryant have abused the designation process
and Mattel has asked MGA/Bryant to de-designate certain materials. See

27  Corey Decl. Ex. 8.  MGA/Bryant have refused or did not respond.

28

**Exhibit 3 - 52**

1

2

3

4

**B.    The Discovery Master's Order Improperly Compels Mattel to Produce a Single Witness per Topic to Testify as to Contention Topics in Contravention of Magistrate Judge Block's Order.**

5    As set forth above, the eleven Rule 30(b)(6) topics that are the subject
6    of the Discovery Master's Order were previously limited by the parties in their
7    meeting of counsel, as so-ordered in Magistrate Judge Block's May 4, 2005 Order.
8    Among other things, Magistrate Judge Block's order adopted the parties' agreement
9    that Mattel need only provide "factual underpinnings," not its contentions or legal
10   conclusions, in Rule 30(b)(6) testimony.  See supra page 4 & note 3.  The
11   Discovery Master's order should be amended to make clear that it incorporates
12   Magistrate Judge Block's Order as to those same topics, including the so-ordered
13   limitations on these topics.

14   As an initial matter, the Discovery Master had no authority to override
15   the limitations set forth in Magistrate Judge Block's Order.  Magistrate Judge
16   Block's Order was never appealed, and remains binding on the parties. *See* Local
17   Rule 72-2.2; *Palmer v. U.S.*, 794 F.2d 534, 540 (9th Cir. 1986) (rejecting
18   appellant's discovery claim because he failed to appeal from magistrate judge's
19   order).  The Discovery Master made no finding that Mattel had ever violated
20   Magistrate Judge Block's Order, or any other Order.  There is no basis for the
21   Discovery Master to purport to alter the Order under which Rule 30(b)(6)
22   discovery has been proceeding for nearly three years in this case.

23   Further, the Discovery Master's Order cannot sensibly be read to require
24   Mattel to produce a single witness per topic to testify on Bryant's overbroad topics
25   without the previously agreed limitations ordered by Magistrate Judge Block.  This
26   is shown perhaps nowhere more clearly than in MGA's *own* 125-page objections to
27   *Mattel's* Rule 30(b)(6) Notice, served only last week.  Although this Court itself
28   ordered MGA to produce Rule 30(b)(6) witnesses on Mattel's topics, MGA itself

**Exhibit 3 - 53**     12
MATTEL'S MEM. ISO OBJECTIONS TO JAN. 11, 2008 ORDER

1   objected 52 times that Rule 30(b)(6) deposition topics that purport to seek a party's

2   contentions are legally improper, one of the limitations previously ordered by

3   Magistrate Judge Block:

4               MGA further objects to this Topic on the grounds that it

5               seeks . . . contentions and Rule 30(b)(6) deposition

6               topics should not be used in the place of contention

7               interrogatories to obtain the factual support for a party's

8               claims and defenses. See, e.g., SmithKline Beecham

9               Corp. v. Apotex Corp., 2000 WL 116082, at *9 (N.D.

10              Ill. 2000); In re Independent Service Orgs. Antitrust

11              Litig., 168 F.R.D. 651, 654 (D. Kan. 1996);

12              McCormick-Morgan, Inc. v. Teledyne Indus., 134

13              F.R.D. 275, 286-87 (N.D. Cal.), rev'd in part on other

14              grounds, 765 F. Supp. 611 (N.D. Cal. 1991).

15  MGA's January 17, 2008 Objections to Fourth Notice of Rule 30(b)(6) Deposition

16  at 19-20, 21, 24-25, 33, and *passim.*[11]

17              The Discovery Master's Order must be read or amended to make clear

18  that Mattel's obligation to produce witnesses is limited to Mattel's factual

19  knowledge regarding "the subjects listed . . . as agreed to by Bryant and Mattel in

20  the March 15, 2005 meeting of counsel," as Magistrate Judge Block ordered.  It

21  would be legally improper for the Discovery Master's Order to fail to incorporate

22  the prior agreed limitations embodied in Magistrate Judge Block's May 4, 2005

23  Order.

24

25

26

27  [11]   Mattel does not concede that any of the Topics in its Fourth Notice of
    Deposition are objectionable in this, or any other regard.

28                                                          **Exhibit 3 - 54**

07209/2366548.1

**C.    The Discovery Master's Order Must Be Limited to Information That Is Relevant to Any Claim or Defense.**

The Discovery Master's Order cannot exceed the scope of permissible discovery, as set forth in Federal Rule 26. See Fed. R. Civ. P. 26(b)(1) (restricting permissible discovery to that "relevant to the claim or defense" of a party). Mattel's proposed amendment to the Discovery Master's order sought to make clear that

> Mattel shall not be required to:
>
> . . . .
>
> (c) produce a witness to testify about information that is responsive to the Topics but which is not relevant to any claim or defense asserted by the parties in this litigation (so, by way of a non-limiting example, Mattel is not obligated to produce . . . a witness to testify about aspects of the DIVA STARZ products that Mattel does not contend is evidence of copying or timing of Bratz, such as electrical or mobility engineering).

See January 10, 2008 E-mail from Jon Corey to John Trinidad, Corey Decl. Ex. 12. MGA/Bryant rejected this relevance limitation and the Discovery Master did not include it in his Order. See Corey Decl. Exs. 12 - 14.

Any failure to include a relevance limitation would cause the Order to exceed the legal bounds of discovery permissible under Rule 26. It would further increase the impossible burden placed on Mattel by the Order's "one witness" limitation (discussed below). MGA/Bryant might argue, for example, that the requirement that Mattel educate one witness about "[a]ll facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of 'DIVA STARZ'" (Topic 11), extends to "facts and circumstances" that

1   have no bearing on these cases. To the extent MGA/Bryant contend that this topic

2   calls for education on such subjects as circuit board design and mobility

3   engineering for the electronic "DIVA STARZ" doll, neither of which have any

4   bearing on any issues, the Order exceeds the bounds of permissible discovery. As

5   another example, Topic 5, regarding "all" confidential information to which Bryant

6   had access, could be read literally and absurdly to require Mattel to educate a

7   witness about every single confidential project Mattel worked on in 1999 and

8   2000, including a host of other projects not in any way at issue, given Bryant's

9   work at Mattel's Design Center in those years. Because there is no legal basis for

10  putting Mattel to the burden and expense of preparing witnesses on these and other

11  issues unrelated to any claim or defense, the Order should make clear that it

12  embodies Rule 26's relevance limitation.

13

14          **D.      The Discovery Master's Order Imposes an Impossible Burden on**

15                  **Mattel in Contravention of Federal Rule 30(b)(6).**

16

17          The Federal Rules are clear -- as a matter of law, Mattel has the right

18  to designate one *or more* witnesses to testify to its knowledge. See Fed. R. Civ. P.

19  30(b)(6) ("[T]he organization so named shall designate one or more officers,

20  directors, or managing agents, or other persons who consent to testify on its behalf

21  . . . ."). Bryant and MGA expressly acknowledged this right during the March 15,

22  2005 meeting of counsel, and again when they stipulated that Magistrate Judge

23  Block should incorporate that agreement into his May 4, 2005 Order, which he did.

24          Mattel's right to designate more than one witness per topic is

25  particularly critical given that many of MGA's Rule 30(b)(6) topics are so broad as

26  to make it impossible for Mattel to educate one individual sufficiently to speak to

27  all aspects of the information sought. See, e.g., MGA Topic 8 ("All acts,

28  omissions, circumstances and/or evidence showing, or tending to show, that any

Case 2:04-cv-09049-SGL-RNB   Document 1627   Filed 01/24/2008   Page 19 of 21

1   and all products of MGA . . . originated from, were derived from, are based upon,

2   are copied or incorporated from, or are substantially or confusingly similar to, any

3   design, research and developmental work, work in progress, or product owned at

4   any time by Mattel or created by any Mattel employee . . . or by any independent

5   contractor during the time that such Person was working for Mattel."); MGA Topic

6   12 ("All facts and circumstances showing the conception, origination, creation,

7   development and/or reduction to practice of 'MINI DIVA STARZ.'").

8          As MGA itself conceded in its recent Objections to Mattel's Rule

9   30(b)(6) topics, it is not possible to educate a single witness on certain topics:

10          Mattel's [topics] . . . are unsuited to a Rule 30(b)(6)

11          depositions . . . . To the extent it would be possible to

12          obtain the information and prepare a witness or witnesses

13          to memorize those details, if possible, such an exercise

14          would be a waste of time and money. See, e.g.,

15          McCormick-Morgan, Inc. v. Teledyne Indus., 134 F.R.D.

16          275, 287 (N.D. Cal.) ("[N]o one human being can be

17          expected to set forth, especially orally in deposition, a

18          fully reliable and sufficiently complex account of[] all

19          the bases for the contentions made and the positions

20          taken . . . ."), rev'd in part on other grounds, 765 F. Supp.

21          611 (N.D. Cal. 1991).

22   MGA's January 17, 2008 Objections to Fourth Notice of Rule 30(b)(6) Deposition

23   at 19, 21, 22, 23, and passim.

24          Further, on this very motion, MGA/Bryant effectively withdrew any

25   request that Mattel produce one witness per topic. After Mattel raised its well-

26   founded legal objections to such a request in its opposition, see Corey Decl. Ex. 9

27   at 26-27, MGA/Bryant's reply conceded that "[m]ore than one witness can be

28   designated on a topic, provided the witnesses are adequately prepared to testify on

1  the topic and collectively the witnesses designated produce the sum total of
2  Mattel's knowledge on the topic." MGA/Bryant Reply (Corey Decl. Ex. 10) at 2
3  n.4 (emphasis omitted). Nor did MGA/Bryant pursue a request for one witness per
4  topic at the hearing. See Corey Decl. Ex. 11.

5       It was legal error for the Discovery Master to impose a requirement
6  inconsistent with the Federal Rules. The Federal Rules contain no provision that
7  would provide the Discovery Master with discretion to put Mattel to the impossible
8  task of educating one witness as to, for example, the "conception, origination,
9  creation, development or reduction to practice of" DIVA STARZ and MINI DIVA
10  STARZ, a project on which hundreds of employees worked. Both the Federal
11  Rules and Magistrate Judge Block's prior order make clear that Mattel has a right
12  to produce more than one witness on such a broad topic. The "one witness"
13  limitation imposed by the Discovery Master creates an impossible burden for
14  Mattel, as even MGA/Bryant acknowledged. It was legal error for the Discovery
15  Master to read the "or more" clause out of Rule 30(b)(6).

16

17  **IV.   CONCLUSION**

18

19       The Court should modify the Discovery Master's January 11, 2008
20  order to make clear that it

21       (i)    does not require testimony as to material produced
22       in discovery by MGA/Bryant or third parties, including material
23       designated "CONFIDENTIAL-ATTORNEYS EYES ONLY"
24       under the Court's Protective Order;

25       (ii)   incorporates Magistrate Judge Block's May 4,
26       2005 Order, including its limitation that Mattel is required to
27       provide testimony only as to facts, not legal contentions;

28

**Exhibit 3 - 58**

Case 2:04-cv-09049-SGL-RNB     Document 1627     Filed 01/24/2008     Page 21 of 21

1          (iii)   does not require testimony not relevant to any

2   claim or defense; and

3          (iv)   affords Mattel the right to produce one or more

4   witnesses per topic as set forth in Federal Rule 30(b)(6).

5

6   DATED:  January 24, 2008        QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

7

8                             By____/s/ Jon D. Corey_____

9                               Jon D. Corey
                               Attorneys for Plaintiff and Counter-

10                              Defendant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                         **Exhibit 3 - 59**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 12      Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 13      vs. | |
| | Hon. Stephen G. Larson |
| 14  MATTEL, INC., a Delaware<br>corporation, | MATTEL, INC.'S REPLY IN |
| 15      Defendant. | SUPPORT OF ITS *EX PARTE*<br>APPLICATION TO (1) COMPEL |
| 16 | PRODUCTION OF ELECTRONIC<br>MEDIA FROM THIRD-PARTIES |
| 17  AND CONSOLIDATED ACTIONS | ELISE CLOONAN, MARGARET<br>HATCH-LEAHY, AND VERONICA |
| 18 | MARLOW OR (2) IN THE<br>ALTERNATIVE, MODIFY THE |
| 19 | SCHEDULING ORDER |
| 20 | [Supplemental Declaration of<br>Christopher Tayback and Exhibits; |
| 21 | Application to File Under Seal filed<br>concurrently herewith] |
| 22 | |
| 23 | Hearing Date:  February 4, 2008<br>Time:  10:00 a.m. |
| 24 | **Phase 1:** |
| 25 | Discovery Cut-Off:  January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:  May 27, 2008 |
| 26 | |
| 27 | |
| 28 | |

07975/2374882.2

MATTEL'S REPLY ISO ITS *EX PARTE* APPLICATION

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 24 of 45   Page ID
#:60359
Case 2:04-cv-09049-SGL-RNB   Document 1887   Filed 02/01/2008   Page 2 of 16

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 3

I.    THIS APPLICATION IS PROPERLY BEFORE THIS COURT .................... 3

II.   MATTEL HAS NOT DELAYED ...................................................................... 4

III.  MATTEL HAS NOT WAIVED ITS RIGHTS .................................................. 6

IV.   MATTEL IS ENTITLED TO OBTAIN RELEVANT EVIDENCE
      FROM THESE WITNESSES EVEN IF THEY ARE NOT PARTIES ........... 7

      A.    Non-Parties Are Still Required to Comply With Proper
            Discovery Requests, Even Over Privacy Objections ............................. 7

      B.    Mattel Has a Compelling Need for the Documents ................................ 9

      C.    There is Reason to Doubt the Integrity of the Existing Production ...... 11

CONCLUSION ...................................................................................................... 13

Case 2:04-cv-09049-DOC-RNB  Document 3495-3  Filed 05/06/08  Page 25 of 45  Page ID
#:60360
Case 2:04-cv-09049-SGL-RNB  Document 1887  Filed 02/01/2008  Page 3 of 16

1

## TABLE OF AUTHORITIES

2

**Page**

3

### Cases

4

Foltz v. State Farm Mut. Auto. Ins. Co.,
 331 F.3d 1122 (9th Cir. 2003) ................................................................. 9

In re Ford Motor Co.,
 345 F.3d 1315 (11th Cir. 2003) ............................................................. 11

Keith H. v. Long Beach Unified School District,
 228 F.R.D. 652 (C.D. Cal. 2005) ...................................................... 7, 8, 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2374882.2

-ii-

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 26 of 45   Page ID
#:60363
Case 2:04-cv-09049-SGL-RNB   Document 1887   Filed 02/01/2008   Page 4 of 16

**Preliminary Statement**

Margaret Hatch-Leahy, Elise Cloonan and Veronica Marlow's ("the witnesses")
25-page opposition to Mattel's *ex parte* application makes four basic arguments: (i) the
application should be heard by the Discovery Master rather than the Court; (ii) it is not
necessary to proceed *ex parte*; (iii) because two of the witnesses conducted an initial
"key word" search of electronic documents for production, Mattel has somehow
"waived" the right to obtain otherwise responsive, relevant evidence, including to
graphics files pertaining to the origins and development of Bratz; and (iv) as "non-
parties," the witnesses' assertion of a vague privacy interest in unspecified computer
data means that Mattel is not entitled to otherwise relevant evidence. Stripped of its
vitriolic name-calling, the Opposition offers no reason not to grant Mattel's application.

Perhaps most tellingly, nowhere do these witnesses attest that they have in fact
produced *all* relevant evidence or even all documents that would be responsive to the
outstanding requests. Nor do these witnesses deny with proof that additional relevant
evidence is contained on the computers and "zip disk" -- which is labeled "Bratz" -- that
Mattel seeks to inspect. Instead, they take the position that they need not produce
computer evidence bearing directly on primary issues in the case -- when, where and
how Carter Bryant created "Bratz" and who assisted him -- because they are "non-
parties." That is far from dispositive. Even if they were simply disinterested third
parties, the witnesses' relevant information bearing on core Bratz ownership issues is
obviously discoverable. And, they are not disinterested -- Marlow, for example, has
been involved in commercial bribery of Mattel employees by paying them to work on
Bratz for years[1] and has herself received millions of dollars for her

---

[1]   See Deposition Transcript of Veronica Marlow ("Marlow Depo. Tr."), dated
December 28, 2007, at 288:8-289:21, 306:8-25, 307:8-308:1, 363:15-21, Tayback
Supplemental Declaration ("Tayback Supp. Dec."), Exh. M.

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 27 of 45   Page ID
#:60362
Case 2:04-cv-09049-SGL-RNB   Document 1887   Filed 02/01/2008   Page 5 of 16

1 | work on Bratz from both Bryant and MGA.[2]

2 | Nor do any of the witnesses' other objections hold water. They state that Mattel
3 | agreed to a "protocol" for initially searching the witnesses' electronic data. However,
4 | that "protocol" was, by its *express* terms, without prejudice to Mattel seeking the relief
5 | it seeks here (and was never applied to Ms. Marlow's computers in any event because
6 | her counsel had previously denied she even had relevant computers).[3] The "protocol"
7 | does not define the parameters of Mattel's rights to obtain relevant information -- the
8 | Federal Rules do that.

9 | The witnesses next claim that Mattel's *ex parte* is purportedly "replete with
10 | factual misstatements," citing Mattel's purported "misstatement" that the witnesses are
11 | "represented by 'counsel retained by MGA.'"[4] However, *MGA itself* has testified that it
12 | is paying the fees for Ms. Hatch-Leahy and Ms. Marlow, among others.[5]   The
13 | witnesses' lawyer is also listed as a recipient on MGA emails to litigation counsel in
14 | this case,[6] and MGA previously stated on the record that the witnesses' counsel was
15 | acting for MGA in order to assert privilege.[7] Indeed, the witnesses' counsel even lists
16 | MGA as one of his clients on his website.[8] That this is the ostensible "misstatement"
17 | the witnesses choose to highlight is itself telling.

18 | The point is simply this: Mattel has not waived its rights, and it is entitled to
19 | relevant evidence, including (1) the contents of the "zip disk" labeled "Bratz" (which
20 | Cloonan has in her possession, but which was likely left at her home by Carter Bryant

21 |
22 | [2] Deposition Transcript of Richard Irmen ("Irmen Depo. Tr."), dated September 28, 2007, at 270:20-271:7, Tayback Dec. Exh. 3; Marlow Depo Tr. at 113:10-12, Tayback Supp. Dec., Exh. M.
23 | [3] See Opposition Brief ("Opp.") at 11:2-9.
24 | [4] Opp. at 4 fn. 14.
   | [5] Deposition Transcript of Lisa Tonnu ("Tonnu Depo. Tr."), Vol. 5, dated January
25 | 24, 2008, at 1182:3-6 and 1183:23-1184:3, Tayback Supp. Dec., Exh. A.
   | [6] Tayback Supp. Dec., Exh. B (email from MGA showing Larry McFarland, Ms.
26 | Cloonan's counsel, as a recipient).
   | [7] Deposition Transcript of Margaret Hatch-Leahy ("Leahy Depo. Tr."), dated
27 | December 12, 2007, at 260:3 - 264:4, Tayback Supp. Dec., Exh. P.
28 |

-2-

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 28 of 45   Page ID
#:60368
Case 2:04-cv-09049-SGL-RNB   Document 1687   Filed 02/01/2008   Page 6 of 16

1   when they were roommates in 2000), (2) information on Marlow's computers, which

2   have not been searched even under the protocol, (3) any graphical files or other non-key

3   word searchable data related to "Bratz," which the witnesses concede were not searched

4   for under the protocol, (4) information relating to the Mattel employee co-conspirators

5   who were involved in the creation of Bratz, of whom Mattel first learned one month

6   ago, and (5) any data that reflects the deletion of documents related to "Bratz," which

7   can likely only be illuminated by forensic examination of the hard drives.  Mattel also

8   needs access to Cloonan's hard drive to show that Bryant's testimony that her computer

9   was used for his Bratz work done while employed by Mattel is false -- impeaching his

10  testimony and leading to an inference that, in truth, he used Mattel's computers for that

11  work.  Mattel's application should be granted.

12                                          **Argument**

13  **I.      THIS APPLICATION IS PROPERLY BEFORE THIS COURT**

14          In search of a pithy way to attack Mattel but avoid the merits (which the

15  witnesses ignore until the 15th page of their Opposition), the witnesses claim that

16  Mattel should have brought the instant motion to the Discovery Master because he is

17  the proper arbiter of discovery disputes involving third parties.[9]

18          But Mattel does not merely seek further production of electronic data; it also

19  seeks to amend the expert disclosure deadline, which *only* this Court can do.  The

20  witnesses call that request "a ruse" because, they argue, there are other discovery

21  disputes pending for which Mattel has not sought relief from the expert disclosure

22  deadline.  This only proves Mattel's point.  The discovery sought here is *not like* much

23  other fact discovery because it requires analysis by a forensic computer expert.  Only an

24  expert will be able to determine if certain relevant files were deleted from any of these

25

26

27  [8]  See http://www.kmwlaw.com, Tayback Supp. Dec., Exh. N.
    [9]  Opp. at 1:17-2:2.

28

                                          -3-

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 29 of 45   Page ID
#:60364
Case 2:04-cv-09049-SGL-RNB   Document 1887   Filed 02/01/2008   Page 7 of 16

1  computers (or the disk), and when.[10]  Only expert analysis can locate the graphical files
2  not captured by prior searches or indeed that were concealed by, for instance, using
3  coded file names like the "Angel" code name used by Bryant for Bratz, or other such
4  names.   That is why, here, but not as to some other evidence defendants have
5  suppressed, Mattel now seeks modification of the Scheduling Order.  The Discovery
6  Master cannot provide such relief.

7  ## II.    MATTEL HAS NOT DELAYED

8        Although these witnesses were subpoenaed for depositions and document
9  production in 2005, Mattel was not able to take these depositions until mid-to-late
10  December 2007 because of MGA's and the witnesses' delays.[11]  Numerous new facts
11  were disclosed during these depositions that clarified the need to inspect or more fully
12  inspect these witnesses' computers.

13        First, the witnesses do not dispute that Mattel discovered for the first time at Ms.
14  Cloonan's deposition on December 14 that a "zip disk" in Ms. Cloonan's possession was
15  labeled "Bratz."  This disk had been provided to her lawyer in April 2005 but was never
16  previously disclosed to Mattel.   Although the witnesses' counsel disavows any
17  impropriety in failing to disclose to Mattel the highly relevant label on the disk between
18  April 2005 and the deposition in December 2007, he does not dispute that the
19  deposition was Mattel's first notice of it.[12]

20        Second, the witnesses do not dispute that Mattel learned for the first time at Ms.
21  Marlow's deposition on December 28, 2007 that yet more Mattel employees were
22  secretly paid to work on Bratz while they were Mattel employees.[13]  The witnesses

23
24  [10]   It is expected there will be expert testimony in this case about the use of software
called "Evidence Eliminator" by Carter Bryant to purge files from his computers.
25  Deposition Transcript of Carter Bryant ("Bryant Depo. Tr."), Vol. 4, dated January 23,
2008, at 742:6-743:4, Tayback Supp. Dec., Exh. E.
26  [11]   Mattel took the deposition of Ms. Hatch-Leahy on December 12; Ms. Cloonan
on December 14; and Ms. Marlow on December 28, 2007.
27  [12]   Opp. at 5, fn. 16 and 24, fn. 74.
[13]   Opp. at 19:20-20:2 and 21, fn. 63.
28

07975/2374882.2

-4-

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 30 of 45   Page ID
#:60368
Case 2:04-cv-09049-SGL-RNB   Document 1887   Filed 02/01/2008   Page 8 of 16

1   suggest that Mattel knew of these witnesses' *names* in late November 2007[14] -- but that
2   disclosure was both seriously belated itself and a far cry from knowing they had any
3   *role* in "Bratz." Whatever "key word" terms were searched, these individuals' names --
4   discovered only after the "key word" searches were performed -- were not among them.
5   Thus, the witnesses have, without a doubt, withheld critical evidence relating to these
6   Mattel employees' work on Bratz. Mattel learned this only a month ago.[15]

7        After Mattel learned this new information, far from delaying, Mattel began the
8   process of trying to get an agreement regarding searching the computers and zip disk
9   from counsel for the witnesses. Starting on December 20, 2007, right after the Cloonan
10   deposition where it was first revealed, Mattel asked that the "zip disk" labeled "Bratz"
11   be produced in its entirety.[16] Although he now claims that no further search is
12   warranted, at that time, the witnesses' counsel stated he invited a dialogue regarding a
13   revised search protocol.[17] Then, after the December 28, 2007 discovery of the
14   additional participants in the development of Bratz, Mattel asked for additional "key
15   word" searches to account for the new discoveries and to allow closer inspection of any
16   non-key-word-searchable images (which Mattel had previously understood and
17   expected would be turned over if they relate to Bratz, a reasonable assumption that
18   Mattel now has reason to question in light of the witnesses' and MGA's failure to
19   produce documents relating to Cabrera, Morales and Salazar, among other things).[18]

20

---

[14]   Id.

[15]   The Opposition attempts to characterize the role of these individuals as merely "assist[ing] Ms. Marlow with the sewing of the Bratz fashions and nothing more." (Id. at 21 fn. 63.) That MGA will make this contention itself only serves to highlight that Mattel *needs* to examine computer evidence to see what was and was not done, and by whom --especially with respect to "graphical" files intended to depict the appearance of the dolls, which are incapable of text-based "key word" searches.

[16]   Tayback Supp. Dec., Exh. F (letter from Mattel counsel to Ms. Cloonan's counsel requesting production of zip disk).

[17]   McFarland Dec., Exh. 11 ("If you have a proposal for a revised [search] protocol please provide it to me.").

[18]   See Tayback Dec. Exh. 19. For example, although subpoenaed in 2005, Cloonan did not respond until 2007, and at that time claimed not to have responsive documents-- even though we now know that she did, including the "Bratz" zip disk. See Ana Elise (footnote continued)

Case 2:04-cv-09049-DOC-RNB    Document 3495-3    Filed 05/06/08    Page 31 of 45    Page ID
#:60368
Case 2:04-cv-09049-SGL-RNB    Document 1887    Filed 02/01/2008    Page 9 of 16

1    Counsel for the witnesses then stated he was unavailable over the holidays,
2  repeating several times that he would respond when he returned.[19] As a result, Mattel
3  could not proceed with a meet and confer until January 9, at which time counsel
4  claimed that he was "considering" Mattel's proposal.[20] It was not until a week later, on
5  January 16, that he notified Mattel that he was rejecting all of its proposals. Mattel then
6  filed this application. Mattel has proceeded diligently.

7  **III.    MATTEL HAS NOT WAIVED ITS RIGHTS**

8    The Opposition details the back and forth that led to the initial review "protocol"
9  in the Fall of 2007. But it ignores the seminal point: Mattel specifically reserved its
10  right to seek full discovery of relevant, responsive evidence -- especially if, as here, it
11  became apparent that relevant evidence was not being produced pursuant to it. The
12  agreement states that it did <u>not</u> "foreclose Mattel from seeking production and
13  inspection of any matter, including without limitation the original data, drives or
14  documents."[21] For the reasons set forth in Mattel's original application and above, it
15  has only recently become apparent that relevant electronic evidence information is in
16  the witnesses' possession, on their drives, and has not been produced. The witnesses'
17  responses to Mattel's subpoenas -- served in 2005 -- indicated that all responsive
18  documents would be produced (or that there were none).[22] They have not been. Mattel
19  has not waived its rights to seek them now.

20

21

22  _____
    Cloonan's Responses and Objections to Mattel's Subpoena for Production of
23  Documents, dated June 26, 2007 (all found at McFarland Dec., Exh. 33).
    [19]  Tayback Supp. Dec., para. 8, and Exhs. G and H (communications between
24  Mattel's counsel and Ms. Cloonan's counsel regarding scheduling).
    [20]  Tayback Supp. Dec., para. 9.
25  [21]  Tayback Dec., Exh. 14 (agreement).
    [22]  Marlow's Amended Objections and Responses to Subpoena, dated May 12,
26  2005; Hatch-Leahy's Amended Objections and Responses to Subpoena, dated May 12,
27  2005; and Cloonan's Responses and Objections to Mattel's Subpoena for Production of
    Documents, dated June 26, 2007, McFarland Dec., Exh. 33.
28

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 32 of 45   Page ID
#:60367
Case 2:04-cv-09049-SGL-RNB   Document 1887   Filed 02/01/2008   Page 10 of 16

## IV.   MATTEL IS ENTITLED TO OBTAIN RELEVANT EVIDENCE FROM THESE WITNESSES EVEN IF THEY ARE NOT PARTIES

### A.   Non-Parties Are Still Required to Comply With Proper Discovery Requests, Even Over Privacy Objections

The Opposition touts the witnesses' status as "non-parties" who have vaguely described "privacy interests" in the items Mattel seeks to search.[23] Yet these witnesses are unquestionably "interested" ones. Ms. Marlow received millions of dollars from MGA and Bryant as a "finder's fee" for placing Bryant with MGA;[24] Marlow worked with Bryant and other Mattel employees on Bratz, and indeed made payments to those other Mattel employees for years.[25] Hatch-Leahy worked on sculpts for the first Bratz dolls.[26] And, according to Bryant, Cloonan prepared portions of the written Bratz pitch materials that Bryant presented to MGA while both Bryant and Cloonan were employed by Mattel, on her computer, and Ms. Cloonan's computer was used to create various aspects of Bratz.[27] Discovery of relevant information is proper even from truly disinterested non-parties, notwithstanding generalized privacy objections. Here, with witnesses (and counsel) so closely tied to Bryant and MGA, Mattel is undoubtedly entitled to obtain relevant electronic evidence.

As Mattel noted in its application--and the Opposition ignores--this Court consistently allows discovery over non-party privacy objections where there is a protective order and a need for the discovery. As the Court has explained, "[r]esolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted." Keith H. v. Long Beach Unified School District, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (granting motion to compel even where

---

[23]   Opp. at 16-20.
[24]   Ex Parte Application at 1:15-18; Marlow Depo Tr. at 113:10-114:18, Tayback Supp. Dec., Exh. M.
[25]   Ex Parte Application at 1:18-24.
[26]   Ex Parte Application at 5:1-9.
[27]   Ex Parte Application at 5:10-14.

1  "plaintiff's document requests indisputably implicate significant privacy rights of

2  minors who are not parties to this litigation . . . [because] the information sought *could*

3  help support plaintiff's claim . . . [and] '[p]laintiff's need for the requested [information]

4  is great [since it] is unlikely to be available from any other source than [d]efendant's

5  files'") (quotations omitted, emphasis added). The witnesses' status as non-parties does

6  not relieve them of their obligation to produce relevant, responsive information even

7  where some privacy interest is implicated where, as here, there is a strong protective

8  order in place. <u>Keith</u>, 228 F.R.D. at 657 ("'[A] carefully drafted protective order [can]

9  minimize the impact of this disclosure.'") (quotations omitted). In fact, the witnesses

10 have *previously* produced ostensibly "private" non-responsive information from their

11 computers (which was identified by key word search) because their interests were

12 adequately protected by the existing protective order.[28]

13      In any case, the witnesses' assertions of a privacy interest in the electronic data

14 Mattel seeks are dubious at best. Ms. Cloonan has failed to identify *whether* any

15 specific private, non-responsive information is contained on the zip disk labeled

16 "Bratz," let alone what specific private information is implicated. Although Ms.

17 Cloonan now submits a declaration claiming that the "zip disk" is her property,[29] she

18 testified at deposition that she did not know what was on the disk.[30] Even now, her

19 declaration does not assert that any *particular* private information is on that disk, only

20 that it is "likely" (in her uninformed opinion) to be private in some unspecified way.

21 Yet if no one is willing or able to say what is on the disk, how can she fairly assert a

22 privacy interest in its contents? And, practically speaking, the disk itself is labeled

23 "Bratz." The most likely scenario, of course, is that it was left there by her former

24

25  [28]  Tayback Dec., Exh. 18 (October 26, 2007 letter from counsel for Ms. Cloonan stating that he was producing certain non-privileged, personal, non-responsive documents that had been identified by the "key word" search pursuant to the protective

26  order).

    [29]  Opp. at 23:21-24:5 and McFarland Dec., Exh. 32.

27

28

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 34 of 45   Page ID
#:60369
Case 2:04-cv-09049-SGL-RNB   Document 1887   Filed 02/01/2008   Page 12 of 16

1   roommate, Bryant, and either contains or once contained evidence of Bryant's Bratz

2   work. Similarly, neither Cloonan, Marlow, nor Hatch-Leahy has identified any specific

3   private information that will be unfairly disclosed through the requested inspection

4   process of their computers.[31]

5       In an analogous setting--the enforcement of protective orders--courts require that

6   the party seeking to shield information must show the privacy interest implicated with

7   particularity. Thus, in the context of protective orders, the Ninth Circuit has held that a

8   party must show "for each particular document" that "specific prejudice or harm will

9   result if no protective order is granted." See Foltz v. State Farm Mut. Auto. Ins. Co.,

10  331 F.3d 1122, 1130 (9th Cir. 2003) (internal cites omitted). And even then, where

11  third-party parties show *specific* privacy interests (which the witnesses here have not

12  done), this Court still balances the privacy interest with the moving parties' need for

13  discovery. Accordingly, as this Court has held, even where "indisputably ... significant

14  privacy rights" of non-party minors are implicated, relevant discovery can be ordered.

15  Keith, 228 F.R.D. at 657-8 (internal cites omitted).

16      **B.    Mattel Has a Compelling Need for the Documents**

17      The Opposition cites to cases which hold that the moving party failed to establish

18  the need for inspection of computer data,[32] but that is a truism. It also glosses over the

19  important point: there *is* substantial evidence that warrants inspection of the computers

20

21

22  [30]   Deposition Transcript of Ana Elise Cloonan ("Cloonan Depo. Tr."), dated
    December 14, 2007, at 246:24-249:9, Tayback Dec., Exh. 9.

23  [31]   Nor have they even suggested that the inspection requested by Mattel will disrupt
    their systems. The Opposition suggests that courts generally avoid allowing opposing

24  parties to intrude into the integrity of a witnesses' document maintenance system.
    (Opp. at 15:18-18:17.) But Mattel seeks nothing that would render any "system"

25  inaccessible by the witnesses or otherwise interfere with its operation. The computers
    of Ms. Cloonan and Hatch-Leahy have *already* been imaged, and are being held by a

26  third-party, as is the zip disk labeled "Bratz," and the witnesses retain the original.
    Marlow's computers likewise can be imaged. Thus, nothing about Mattel's request

27  impacts the viability of the witnesses' access to their computers.
    [32]   See Opp. at 17:22-18:17.

28

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 35 of 45   Page ID
#:60370
Case 2:04-cv-09049-SGL-RNB     Document 1887     Filed 02/01/2008     Page 13 of 16

1 | and zip disk at issue here. In such instances courts allow the moving party to inspect
2 | the computer data itself.[33]

3 | First, Marlow's testimony revealed new participants--whose role MGA and
4 | Bryant had evaded disclosing for the last four years, despite discovery requests aimed at
5 | exactly that issue--which have never been the subject of any search for responsive
6 | computer documents.[34] Moreover, Mattel has subsequently learned that Marlow
7 | secretly paid these witnesses in cash through false names and false social security
8 | numbers in order to conceal their activities[35] -- information also not disclosed to Mattel
9 | even at her deposition.

10 | Second, the Opposition presents no evidence to show that any of the witnesses'
11 | computers were ever searched for graphical files, even though such documents would
12 | be responsive to the subpoenas. Indeed, Ms. Marlow's computer was never subject to
13 | any search protocol, and no such graphical files--even those presumably sent by Bryant
14 | for Marlow's newly identified "assistants" to work from--were produced. Thus, even
15 | though Marlow admittedly worked with the newly disclosed Mattel employees on
16 | Bratz, she produced no computer documents related in any way to the work they
17 | admittedly performed.[36] Similarly, even though Ms. Hatch-Leahy admittedly was in
18 | possession of a "digital Bratz head sculpt" during the 2000 Bratz development process,
19 | no such computer document was produced.[37]

20 | Third, Mattel needs access to Cloonan's computer to assess the veracity of Bryant
21 | and show that he used further Mattel resources to work on Bratz. Bryant has testified
22 | that he did not use Mattel's resources to create Bratz, but likely used Cloonan's

23 |

---

24 | [33] See, e.g., cases cited in Opp. at 19:8-20.
   | [34] See Ex Parte Application at 7:2-6.
25 | [35] Transcript of the interview of Ana Cabrera, dated January 2, 2008, at 118:3-25,
26 | Tayback Supp. Dec. Exh. Q; Transcript of the Interview of Beatriz Morales, dated
   | January 14, 2008, at 115:2-20, Tayback Supp. Dec., Exh. R.
27 | [36] Tayback Supp. Dec., para. 15.
   | [37] Tayback Supp. Dec., para. 16.
28 |

Case 2:04-cv-09049-DOC-RNB    Document 3495-3    Filed 05/06/08    Page 36 of 45    Page ID
#:60373
Case 2:04-cv-09049-SGL-RNB    Document 1887    Filed 02/01/2008    Page 14 of 16

1    computer to do so.[38]  However, Cloonan did not produce evidence of such work when
2    her computer was searched under the protocol.  Examination of the Cloonan hard drive
3    is required to expose Bryant's testimony as untruthful, and prove that Bryant actually
4    used Mattel resources for his work, not Cloonan's computer.  What is <u>not</u> on it is as
5    important as what is.

6         Fourth, there can be no doubt that the present or former contents of the "zip" disk
7    labeled "Bratz" are likely to lead to discoverable, even critical, evidence.  Yet only one
8    document was produced from the "key word" search of that disk.[39]

9         Lastly, what has been *deleted* from the computers is also extremely important
10   evidence, only available by forensic inspection.  At his deposition last week, Carter
11   Bryant admitted to using a program called "Evidence Eliminator" to delete computer
12   files;[40] thus, there is discoverable evidence which can only be obtained by seeing what
13   is NOT on the computers for this reason as well.

14         **C.    <u>There is Reason to Doubt the Integrity of the Existing Production</u>**

15         The witnesses cite cases which even they acknowledge stand for the proposition
16   that where there is evidence of "improper conduct on the part of the responding party,"
17   such as "non-compliance with discovery rules," courts may allow inspection of
18   computer hard drives, regardless of the other circumstances.[41]  <u>See</u> In re Ford Motor
19   <u>Co.</u>, 345 F. 3d 1315, 1317 (11th Cir. 2003).  Even assuming these witnesses had some
20   legitimate privacy objection to the requested inspections (which they do not), there is
21   ample reason to doubt the integrity of these witnesses' document production.

22         First, although Marlow received a subpoena for documents in April 2005 and
23   purported to produce all relevant documents prior to her December 28, 2007, deposition,

24

25   _____
     [38]   Bryant Depo. Tr., Vol. 1, at 250:13-21; Bryant Depo. Tr., Vol. 2, at 292:18-
     293:3; 294:3-4; 294:11-295:17 Tayback Supp. Dec. Exh. E.
26   [39]   Tayback Supp. Dec., para. 12 and Exh. L (copy of document Cloonan produced).
     [40]   Bryant Depo. Tr., Vol. 4, at 742:6-743:4, Tayback Supp. Dec., Exh. E.
27   [41]   Opp. at 19:5-20.
28

1   she produced highly relevant documents exceeding late.  In late November 2007,
2   Marlow produced, for the first time, documents reflecting the names of the newly
3   revealed Mattel employees (though not explaining their role).  At her deposition itself,
4   her counsel produced 40 more pages of documents, including a low-quality copy of a
5   *contract* between Marlow and MGA--a document of obvious relevance which should
6   not have been previously withheld.[42]  Ms. Marlow's counsel also produced heavily
7   reacted documents and now refuses to produce un-redacted versions notwithstanding a
8   prior representation by her counsel that she would produce all documents in unredacted
9   form.[43]

10      These redactions are particularly suspicious also because Ms. Hatch-Leahy had
11   originally produced heavily redacted day planners from the critical 2000 time period.[44]
12   Later, mid-way through her deposition, counsel finally produced a lesser-redacted
13   version that showed highly relevant information related to Mattel and Bratz had been
14   redacted.  For example, previously redacted were references to Ms. Hatch-Leahy's
15   conversations with Mattel employees at the time she was secretly working on Bratz, as
16   well as references to "Angel" from mid-2000, Bryant's and MGA's code name for
17   Bratz, among other things.[45]

18      And the "zip disk" in Ms. Cloonan's possession was turned over to her counsel in
19   April 2005.  Yet, it was not until the *day of her deposition*, over two years later, that
20   Mattel learned (by asking the right questions) that it was labeled "Bratz," and only a
21   single document produced from it (not related to Bratz).[46]  Mattel needs access to the
22   hard drives to see what else has been concealed by the witnesses' and their counsel's
23   gamesmanship.

24

---

25   [42]   Tayback Supp. Dec., para.17.
26   [43]   Tayback Supp. Dec., Exh. O (examples of redacted documents produced).
     [44]   Tayback Supp. Dec., Exh. C (redacted planner produced by Hatch-Leahy).
27   [45]   Tayback Supp. Dec., Exh. D (second redacted planner).
28   [46]   See Ex Parte Application at 7:7-17.

-12-

Case 2:04-cv-09049-DOC-RNB    Document 3495-3    Filed 05/06/08    Page 38 of 45    Page ID
#:60373
Case 2:04-cv-09049-SGL-RNB    Document 1887    Filed 02/01/2008    Page 16 of 16

1

## Conclusion

2          Mattel respectfully requests that the Court grant its *ex parte* application.

3    DATED: February 1, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
4

5                                     By /s/ Christopher Tayback
6                                        Christopher Tayback
                                         Attorneys for Mattel, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2374882.2

**-13-**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                           Consolidated with
    Plaintiff,                             Case Nos. CV 04-09059 & CV 05-2727

13
    vs.                                    **DISCOVERY MATTER**

14
   MATTEL, INC., a Delaware                Hon. Stephen G. Larson
15  corporation,
                                           [PUBLIC REDACTED]
16  Defendant.                             SUPPLEMENTAL DECLARATION
                                           OF CHRISTOPHER TAYBACK IN
17                                         SUPPORT OF MATTEL, INC.'S
   AND CONSOLIDATED ACTIONS                REPLY BRIEF IN SUPPORT OF ITS
18                                         *EX PARTE* APPLICATION TO (1)
                                           COMPEL PRODUCTION OF
19                                         ELECTRONIC MEDIA FROM
                                           THIRD-PARTIES ELISE CLOONAN,
20                                         MARGARET HATCH-LEAHY, AND
                                           VERONICA MARLOW OR (2) IN
21                                         THE ALTERNATIVE, MODIFY THE
                                           SCHEDULING ORDER
22
                                           Hearing Date:    February 4, 2008
23                                         Time:            10:00 a.m.

24
                                           **Phase 1**
25                                         Discovery Cut-Off:    January 28, 2008
                                           Pre-Trial Conference: May 5, 2008
26                                         Trial Date:           May 27, 2008

27

28

07975/2374881.2

                                    DECLARATION OF CHRISTOPHER TAYBACK

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 40 of 45   Page ID
#:60375
Case 2:04-cv-09049-SGL-RNB   Document 1887-2   Filed 02/01/2008   Page 2 of 5

1  DECLARATION OF CHRISTOPHER TAYBACK

2

3  I, Christopher Tayback, declare as follows:

4  1.  I am a member of the bar of the State of California, admitted to

5  practice in the Central District of California and elsewhere, and a partner at Quinn

6  Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").

7  Except where otherwise indicated, I make this declaration of personal, firsthand

8  knowledge, and if called and sworn as a witness, I could and would testify

9  competently thereto.

10  2.  Attached hereto as Exhibit A are true and correct copies of

11  excerpts from the deposition of Lisa Tonnu, dated January 24, 2008.

12  3.  Attached hereto as Exhibit B is a true and correct copy of an

13  email produced by MGA in this matter, bearing bates stamp MGA 3765567,

14  showing Larry McFarland as a recipient of an email from MGA, dated July 11,

15  2007, related to this litigation.

16  4.  Attached hereto as Exhibit C is a true and correct copy of pages

17  from the redacted day planner produced by Ms. Hatch-Leahy.

18  5.  Attached hereto as Exhibit D is a true and correct copy of pages

19  from the second redacted day planner produced by Ms. Hatch-Leahy.  This day

20  planner shows some relevant entries that were redacted from the planner that was

21  previously produced.

22  6.  Attached hereto as Exhibit E are true and correct copies of

23  excerpts of the deposition of Carter Bryant, dated November 4 and 5, 2004 and

24  January 23, 2008.

25  7.  Shortly after I became aware of the discovery of the label "Bratz"

26  on a zip disk in Ms. Cloonan's possession (which was disclosed to Mattel at her

27  deposition on December 14, 2007), I contacted counsel for Ms. Cloonan by

28  telephone to demand a copy of the label on the disk and to discuss the circumstances

07975/2374881.207975/2
74881.2

-2-

1   regarding it.  Further, I requested at that time that we discuss Mattel's request to

2   examine the full contents of the disk.  He asked that I follow up with a letter, which

3   I did, on December 20, 2007.  Attached hereto as Exhibit F is a letter I wrote to Mr.

4   McFarland addressing these issues.

5            8.     I subsequently spoke to Mr. McFarland, and he advised me that

6   he was largely un-reachable over the holidays and we would not be able to

7   meaningfully discuss these issues until after January 1, 2008.  He reiterated that

8   position in a letter to me dated December 26, 2007, a copy of which is attached as

9   Exhibit G, and a letter dated January 2, 2008, attached hereto as Exhibit H.

10           9.     On January 4, 2008, I called Mr. McFarland, left a voicemail,

11  and also sent an email to him seeking a date and time to meet and confer on the

12  various issues raised by this ex parte application.  Attached hereto as Exhibit I is a

13  true and correct copy of my email to him dated January 4, 2008.  He responded on

14  January 7, 2008, and advised that he would be available to meet and confer between

15  5 and 6 p.m. on January 9, 2008.  I accepted that time.  Attached hereto as Exhibit J

16  is a true and correct copy of Mr. McFarland's response to me dated January 7, 2008.

17           10.    On January 9, 2008, I telephonically conferred with Mr.

18  McFarland regarding these issues.  I discussed with him various alternatives for

19  ensuring that Mattel received all of the relevant responsive information to which it

20  was entitled.  At that time, he indicated that he understood my proposal, and would

21  discuss it with his clients, consider it, and let me know his decision.

22           11.    One week later, on January 16, 2008, I understand that Mr.

23  McFarland informed my colleague, Dylan Proctor, that Mr. McFarland was

24  rejecting all of our proposals on the issues addressed herein.  I subsequently sent Mr.

25  McFarland an email acknowledging that I had received his response.  Attached

26  hereto as Exhibit K is a true and correct copy of my email to Mr. McFarland, dated

27  January 17, 2008.

28

07975/2374881.207975/23
74881.2

-3-

DECLARATION OF CHRISTOPHER TAYBACK

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 42 of 45   Page ID
#:60377
Case 2:04-cv-09049-SGL-RNB   Document 1887-2   Filed 02/01/2008   Page 4 of 5

1    12. Attached hereto as Exhibit L is a true and correct copy of the

2 single page document which counsel for Ms. Cloonan produced as the only

3 responsive document obtained from the zip disk in her possession labeled "Bratz."

4    13. Attached hereto as Exhibit M are true and correct copies of

5 excerpts from the deposition of Veronica Marlow, dated December 28, 2007.

6    14. Attached hereto as Exhibit N is a true and correct copy of a print-

7 out from the webpage http://www.kmwlaw.com listing clients of Keats McFarland

8 & Wilson, LLP.

9    15. I am informed and believe that, although Ms. Marlow admittedly

10 worked with several co-conspirators on Bratz, and even ultimately produced some

11 timesheets reflecting time spent by them working on the project, she produced no

12 computer documents related in any way to the work they admittedly performed.

13    16. I am informed and believe that even though Ms. Hatch-Leahy

14 testified at deposition that she was in possession of a "digital Bratz head sculpt" at

15 some point, no such computer document was produced from her computer.

16    17. I am informed and believe that in late November 2007, Ms.

17 Marlow produced, for the first time, documents reflecting the names of the newly

18 discovered co-conspirators (though not explaining their role).  Further, on the day of

19 her deposition, her counsel produced an additional 40 pages of documents, including

20 a low quality copy of a *contract* between Marlow and MGA.

21    18. Attached hereto as Exhibit O are true and correct copies of some

22 documents that Ms. Marlow produced with redactions.

23    19. Attached hereto as Exhibit P are true and correct copies of

24 excerpts from the deposition of Margaret Hatch-Leahy, dated December 14, 2007.

25    20. Attached hereto as Exhibit Q is a true and correct copy of the

26 transcript of the interview of Ana Cabrera, dated January 2, 2008.

27

28

Case 2:04-cv-09049-DOC-RNB   Document 3495-3   Filed 05/06/08   Page 43 of 45   Page ID
#:60378
Case 2:04-cv-09049-SGL-RNB   Document 1887-2   Filed 02/01/2008   Page 5 of 5

1        21.    Attached hereto as Exhibit R is a true and correct copy of the

2  transcript of the interview of Beatriz Morales, dated January 14, 2008.

3        22.    I declare under penalty of perjury under the laws of the United

4  States of America that the foregoing is true and correct.

5        Executed on February 1, 2008 at Los Angeles, California.

6

7                          Christopher Tayback

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

1

# PROOF OF SERVICE

2   I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is

3   865 South Figueroa Street, 10th Floor, Los Angeles, California 91107.

4   On May 6, 2008, I served true copies of the following document(s) described as:

5   **MATTEL, INC.'S NOTICE OF LODGING IN SUPPORT OF ITS OPPOSITION TO ANAELISE CLOONAN'S MOTION OBJECTING TO**

6   **PORTIONS OF DISCOVERY MASTER'S APRIL 11, 2008 ORDER REGARDING A FURTHER EXAMINATION OF MS. CLOONAN'S**

7   **COMPUTER AND ZIP DISK**

8   on the parties in this action as follows:

9   **SEE ATTACHED LIST**

10

11   **[ X ] BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles,

12   California.  The envelope was mailed with postage thereon fully prepaid.

13   **[   ]   BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver

14   authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the

15   person(s) being served.

16   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17   Executed on May 6, 2008, at Los Angeles, California.

18

19   *Lucille Clavel*

20   LUCILLE CLAVEL

21

22

23

24

25

26

27

28

1

## SERVICE LIST

2

3

4

5

6

7

Thomas J. Nolan, Esq.
**Skadden, Arps, Slate, Meagher &
Flom , LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, California 90071
TEL: (213) 687-5000
FAX: (213) 687-5600
**tnolan@skadden.com**

Mark E. Overland, Esq.
David E. Scheper, Esq.
Alexander H. Cote, Esq.
**Overland Borenstein Scheper & Kim,
LLP**
601 West Fifth Street, Suite 12th Floor
Los Angeles, CA 90017
TEL: (213) 613-4655
FAX: (213) 613-4656
**moverland@obsklaw.com**

8

9

10

11

12

John W. Keker
Michael H. Page
Christa M. Anderson
**Keker & Van  Nest, LLP**
710 Sansome Street
San Francisco, CA 94111
TEL: (415) 391-5400
FAX: (415) 397-7188
**jkeker@kvn.com**
**mhp@kvn.com**

Larry W. McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard, Penthouse
Suite
Beverly Hills, California  90212
Tel: (310) 248-3830
Fax: (310) 860-0363
lmcfarland@kmwlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -
PROOF OF SERVICE