Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MGA PARTIES' MOTION TO QUASH SUBPOENAS; GRANTING IN PART AND DENYING IN PART MATTEL'S COUNTER MOTION TO COMPEL** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

I. INTRODUCTION

On December 21, 2007, MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA Parties") submitted their motion for an order quashing subpoenas issued by Mattel, Inc. ("Mattel") to non-parties ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells Fargo, or in the alternative, a protective order limiting the scope of those subpoenas. On December 27, 2007, the MGA Parties submitted a supplemental brief to add to their motion to quash three more subpoenas Mattel served on the Isaac E. Larian Qualified Annuity Trust 2004, the Isaac and Angela Larian Family Trust, and the Isaac and Angela Larian Trust. On January 18, 2008, Mattel submitted an opposition and counter motion to compel production of documents responsive to the subpoenas and a privilege log. On February 7, 2008, the MGA Parties submitted a reply, and on February 15, 2008, Mattel submitted a reply in support of its counter motion. The parties were directed to meet and confer further regarding the motions, which has been completed. See Joint Report dated March 28, 2008. Despite the additional meet and confer sessions, the parties were unable to resolve or narrow their disputes regarding the instant motions. Pursuant to Paragraph 5 of the Stipulation and Order for Appointment of a Discovery Master, the Discovery Master finds it appropriate to take the motions under submission for decision without oral argument.

## II. BACKGROUND

Ernst & Young and Deloitte & Touche are MGA's auditors. Mattel's subpoenas to MGA's auditors seek production of documents: (1) relating to MGA's annual audits and the identity of other auditors; (2) indicating or calculating MGA's net worth and the value of MGA's goodwill and intellectual property; (3) relating to Bratz; and (4) relating to the legal dispute between Isaac and Farhad Larian.

Wachovia lent money to MGA to fund the creation and/or development of Bratz and to acquire Little Tikes. Mattel's subpoena to Wachovia seeks documents related to: (1) the loans Wachovia extended to MGA; (2) the legal dispute between Isaac and Farhad Larian; (3) MGA's net worth, goodwill, and intellectual property; (4) Bratz; and (5) this action.

ConsumerQuest is a marketing research firm that performed market research and analysis for MGA products, including Bratz. Mattel's subpoena to ConsumerQuest seeks documents

related to: (1) Bratz and other products involved in this action; (2) consumer research and marketing work done regarding other MGA products underlying the parties' claims; and (3) communications with MGA, Isaac Larian, and other parties relevant to this action, such as Carter Bryant or other former Mattel employees and vendors.

Wells Fargo is and has been MGA's bank during periods relevant to this action. Mattel's subpoena to Wells Fargo contains five requests, seeking MGA's banking and financial documents, including account information, cancelled checks, monthly and daily transactional history, and bank statements.

Moss Adams is and has been Isaac Larian's accountant during the relevant period. The subpoena to Moss Adams seeks: (1) accounting records, tax records, and schedules for MGA, Isaac Larian, Isaac Larian's trusts and Farhad Larian; (2) documents indicating or calculating MGA's and Isaac Larian's net worth; (3) documents relating to the value of MGA's intellectual property and goodwill; (4) documents relating to Bratz and this action; (5) evidence of payments from MGA or Isaac Larian to Bryant and other Mattel employees; and (6) Isaac Larian's involvement with other trust or institutions in which he has an interest.

Mattel also served subpoenas on several of Isaac Larian's trusts. Mattel's subpoenas to Isaac Larian's trusts seek: (1) documents related to the trusts' organization, including the identities of its trustees and beneficiaries; (2) the trusts' tax records; (3) documents indicating the trusts' assets; and (4) information related to other trusts in which Larian has an interest.

All of the non-parties objected to Mattel's subpoenas on the grounds that, *inter alia*, they are overly broad, unduly burdensome and seek irrelevant and/or duplicative information. Park Decl., Exs. 15-26.

The MGA Parties contend that Mattel's subpoenas are overly broad, unduly burdensome, and cumulative and duplicative of discovery Mattel has already sought and received. More specifically, the MGA Parties raise the following objections to each of the four categories of documents Mattel seeks. First, the MGA Parties contend that Mattel's subpoenas essentially seek

unfettered access to MGA and Isaac Larian's financial histories for a nine-year period from 1999 to the present, and that there is no claim or defense at issue that could possibly justify the breadth and intrusiveness of the subpoenas. Further, the MGA parties contend that they have already produced vast amounts of relevant financial documents in response to Mattel's discovery requests. To make their point, the MGA Parties prepared a detailed chart that identifies Mattel's subpoenas requests to the non-parties and for each such request, identifies an exemplary list of duplicative document requests and/or interrogatories that Mattel served on Carter Bryant and/or the MGA Parties. See Decl. of Amy Park in Support of MGA Defendants' Motion to Quash, Ex. 28.

Second, the MGA Parties contend that Mattel's subpoenas are overbroad in that they call for production of the financial records of every person who ever did any work for MGA or Isaac Larian, and every conceivable relative of Isaac Larian. The MGA Parties contend that the private financial records of these non-parties are not relevant to the case, and that Mattel's subpoenas constitute an abuse of the non-party discovery process.

Third, the MGA Parties contend that Mattel has already sought and received documents relating to the litigation between Isaac Larian and his brother Farhad Larian from multiple sources. More specifically, the MGA Parties contend that Mattel has sought and received relevant documents from Isaac and Farhad Larian, as well as MGA and at least two law firms involved in the litigation between the Larian brothers.

Fourth, the MGA Parties object to the various requests for all documents obtained from MGA or Isaac Larian relating to Bratz, other MGA products or Carter Bryant. Although the MGA Parties acknowledge that some of the requested documents may be relevant, the MGA Parties contend that the document requests are objectionable because Mattel has already requested and received well over three million pages of relevant documents from the MGA Parties. The MGA Parties also contend that Mattel's requests are so overly broad that it is impossible to discern what specific, relevant, non-duplicative documents Mattel is requesting from the non-parties.

In contrast, Mattel contends that all of the subpoenas seek documents that are relevant to several issues in the case, including, but not limited to, the creation and development of Bratz, Mattel's damages claim (including Mattel's claims for punitive damages and disgorgement), Mattel's claim against MGA for commercial bribery, MGA's damages claims, the value of MGA's goodwill and intellectual property, and the credibility and bias of MGA and Isaac Larian, as well as other potential witnesses. Mattel contends that it should be permitted to pursue discovery from non-parties, and not have to rely upon the good faith of MGA and Isaac Larian to comply with their discovery obligations. Mattel also contends that it should be permitted to pursue discovery from the non-parties in order to guard against the possibility of spoliation of evidence and/or document tampering.

Furthermore, Mattel contends that the MGA Parties have not shown that they possess, much less have produced, all of the documents Mattel is seeking from the non-parties. More specifically, Mattel contends that the MGA Parties have failed to produce the following documents that Mattel has requested from the various non-parties: documents related to Isaac Larian's net worth and the value of MGA's intellectual property and goodwill; MGA's tax records; Wells Fargo banking records for MGA; documents related to payments to by MGA, Larian, or the Larian trusts to Bryant and other Mattel employees and vendors; documents from the Larian v. Larian litigation; documents related to the Larian trusts, including any documents showing Isaac Larian's interest in, payments received from, or transfer to those trusts; and documents regarding the 1999-2000 and 2006 loans MGA received from Wachovia, including what documents MGA and Larian gave to Wachovia to justify the loans. Furthermore, Mattel contends that MGA's descriptions of the documents it has produced are vague, inaccurate or misleading.

Mattel also contends that the MGA Parties' burden objection is unsubstantiated in that none of the subpoenaed parties has filed a declaration in opposition to the motion or offered any specific evidence that the subpoenas impose an undue burden. Rather, Mattel represents that some of the subpoenaed parties were already in the process of preparing documents for

1  production or meeting and conferring with Mattel when MGA filed the instant motion. Corey
2  Decl., ¶¶7-9. Furthermore, Mattel points out that it has offered to reimburse the non-parties for
3  copying costs and to have its own paralegal and counsel inspect documents gathered.

### III. STANDARDS

Rule 26, Fed.R.Civ.P., provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). The court shall, however, limit the frequency or extent of use of the discovery methods if the court determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C).

Rule 45, Fed.R.Civ.P., requires third parties to produce documents (and reasonably accessible electronically stored information) that are responsive to a subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d). If the subpoenaed documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing. U.S. v. American Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966).

Rule 45(c)(1), Fed.R.Civ.P., requires a party serving a subpoena to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Furthermore, "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." Id. Rule 45 also provides that the issuing court must quash or modify a subpoena under certain circumstances, including among others, when the subpoena requires the disclosure of privileged

or other protected matter or subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(iii) and (iv). A motion to quash a subpoena or for a protective order as to that subpoena may be made by a party-opponent. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C. D. Cal. 2005) (granting defendants' motion to quash subpoena).

In evaluating whether a subpoena imposes an undue burden, Rule 45(c)(3)(A), Fed.R.Civ.P., "requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party,' . . . and in particular requires the court to consider: 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" Moon, 232 F.R.D. at 637, quoting Travelers Indem. Co. v. Metropolitan Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005). Another important factor in evaluating burden is whether the subpoenaing party can more easily and inexpensively obtain the documents from another party, rather than from the nonparty. Moon, 232 F.R.D. at 638.

## IV. DISCUSSION

### A. Financial Information re MGA and Isaac Larian

Mattel has subpoenaed five different entities that perform financial services for MGA or Isaac Larian: Wells Fargo, Wachovia, Ernst & Young, Deloitte & Touche and Moss Adams. Although Mattel's requests encompass documents that are relevant to several issues in the case, the requests are unduly burdensome, exceedingly overbroad and unreasonably cumulative of other discovery Mattel has already sought and received in this case.

For example, the subpoena to Wells Fargo demands production of the following broad categories of financial documents: (1) "[a]ll DOCUMENTS REFERRING OR RELATING TO MGA from January 1, 1999 to the present, inclusive"; (2) "[a]ll DOCUMENTS REFERRING OR RELATING TO the ACCOUNT maintained by YOU numbered 9600112551, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature

1  cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created
2  between January 1, 1999 and the present, inclusive"; (3) "[a]ll DOCUMENTS REFERRING OR
3  RELATING TO" any other accounts created between January 1, 1999 and the present, inclusive;
4  (4) DOCUMENTS sufficient to show the account number for all accounts maintained in the name
5  of, for the benefit of or concerning MGA between January 1, 1999 and the present, inclusive; (5)
6  and "[a]ll DOCUMENTS showing or relating to any account(s) held by MGA or any account(s)
7  on which MGA has signatory authority at any other financial institution."

8       The breadth of the requests to Wells Fargo is compounded by the fact that "MGA" is
9  defined to include MGA Entertainment Inc., any of its current or former employees, officers,
10 directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates,
11 predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf.
12 Furthermore, the phrase "REFERRING OR RELATING TO" is defined expansively as
13 "reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing
14 or indicating in any way." Park Decl., Ex. 11.

15      The subpoena to Isaac Larian's tax accounting firm, Moss Adams, is similarly overbroad.
16 For example, Mattel seeks "[a]ll DOCUMENTS RELATING TO MGA [and] ISAAC LARIAN,
17 including without limitation, accounting records, tax returns and schedules . . . and drafts thereof,
18 W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro
19 formas, budgets, account information and account statements." Park Decl., Ex. 12. The phrase
20 "RELATING TO" in the subpoena to Moss Adams is drafted in the broadest possible manner to
21 include "referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting,
22 contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying,
23 stating, dealing with, concerning, commenting on, summarizing, responding to, relating to,
24 describing or discussing in any way." Id. As another example, Mattel's subpoena to Moss Adams
25 includes a request for all documents relating to any non-payroll payment or transfer of value from
26 MGA or Isaac Larian to any "FORMER MATTEL EMPLOYEE." Mattel does not identify any

27
28

of these "FORMER MATTEL EMPLOYEES" or otherwise limit the request to any specific time period.

The subpoenas to Deloitte & Touch and Ernst & Young are similarly unrestrained in scope, seeking the following categories of financial documents: all documents constituting or relating to MGA's annual audits, including without limitation accounting records, audit programs, audit reports and drafts thereof, tax returns, work papers, worksheets, payroll records, financial projections, pro formas and budgets, from the period beginning January 1, 1999 to the present; all documents indicating or calculating MGA's net worth; and all documents indicating the value of MGA's intellectual property or goodwill. Park Decl., Exs. 7-8.

With respect to Wachovia, Mattel seeks the following categories of financial documents: all documents relating to any loan agreement that Wachovia entered into with MGA since January 1, 1999, including drafts of any agreements; all documents that MGA or any other person provided to Wachovia for purposes of entering into any loan agreement between Wachovia and MGA; all documents that were in the "three (3) boxes of loan documents" that Wachovia referred to in a November 15, 2005 letter to Robert G. Wilson, Esq.; all documents relating to any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 2000, inclusive; all communications between Wachovia and MGA during the time period January 1, 1999 and December 31, 2000, inclusive; all documents indicating or showing a calculation of MGA's net worth or value; all documents indicating or calculating the value of MGA's intellectual property or goodwill; all documents relating to Bratz, including without limitation those obtained from MGA, since January 1, 1999; and documents sufficient to identify any other MGA lender or person who extended or was requested to extend a line of credit to MGA since January 1, 1998. Park Decl., Ex. 9. Mattel contends that the loan documents will contain information about the timing and creation of Bratz. However, all of the requests for financial documents, except for portions of Request Nos. 4 and 5, are much broader,

seeking everything relating to any loan between MGA and Wachovia from 1999 through the present.

Furthermore, to the extent any of Mattel's requests for financial information encompass relevant materials, the requests remain unreasonably duplicative and cumulative of discovery Mattel has already sought and obtained from MGA and Isaac Larian (with the exception of Request Nos. 4 and 5 in the Wachovia subpoena). MGA has produced the following: audited and unaudited quarterly and annual profit and loss statements; audited and unaudited quarterly and annual statements; annual reports; various MGA financial reports; various financial documents relating to Veronica Marlow; documents showing royalty payments to Carter Bryant; documents showing MGA's sales, returns and costs of goods sold for each month, by SKU, since 2001; documents showing MGA's promotional advertising and media expenditures, including MGA's internal allocation of those expenditures by brand and/or product; documents showing MGA's amortization and depreciation of certain capital assets and expenditures; documents showing MGA's monthly general ledger entries aggregated by account, including income and expense accounts, reserves and liabilities; and documents sufficient to explain MGA's various accounts as presently and historically maintained in MGA's books and records. Park Decl., ¶3.

The MGA Parties also represent that Isaac Larian recently produced over 50,000 pages of documents which included, among other things, documents showing his net worth; his gross income, wages, dividend income, interest income, and other income; his banks and bank accounts; and various other financial documents. Park Decl., ¶2. Thus, Mattel has received ample financial documents. Mattel has also deposed MGA, Isaac Larian, and other witnesses regarding relevant financial information. In view of the discovery Mattel has already sought and received, Mattel's over-reaching, broad subpoenas to the various non-parties seeking more financial information regarding MGA and Isaac Larian are unjustified under Rule 26(b)(2), Fed.R.Civ.P.

//

B. Financial Information re Non-Parties

Mattel's subpoenas also seek financial documents regarding numerous non-parties, including everyone who has ever worked for or represented MGA or Isaac Larian, and every relative of Isaac Larian. Once again, although the subpoenas encompass documents that are potentially relevant to Mattel's claims and defenses, the subpoenas are overly broad, sweeping in vast amounts of documents that have little to no relevance. For example, Mattel's subpoenas to Moss Adams and the various trusts include requests for all formation documents, all tax returns, any other tax-related documents from 1999 to the present, and documents relating to the operation of the trust, including every trustee and beneficiary of each trust, every disbursement by each trust, every asset owned by each trust, and every liability of each trust. Mattel has not shown that all of the requested documents are relevant to the claims and defenses in the case.

Mattel's subpoenas to the non-parties are also unreasonably duplicative and cumulative of discovery Mattel has already sought and received in this case. Furthermore, to the extent Mattel's subpoenas might include requests that are not unreasonably duplicative and/or cumulative of other discovery requests, the probative value of the information Mattel seeks is substantially outweighed by the burden of production, especially in light of the privacy interests of the many non-parties who would be affected.[1]

C. Information re Litigation Between Isaac and Farhad Larian

All of Mattel's subpoenas to the non-parties, except Wells Fargo, include a request for all documents relating to any litigation between Isaac Larian and Farhad Larian. These requests are unreasonably duplicative and cumulative of many requests Mattel previously served on Isaac Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer. Mattel has sought and received substantial discovery regarding the litigation between Isaac and Farhad Larian. See

---

[1] In its reply brief, Mattel contends that Isaac Larian is the trustee of all of the trusts that Mattel has subpoenaed, and therefore he was required, but purportedly failed, to search for and produce trust documents when responding to the discovery requests directed to him. These issues are beyond the scope of the present motion, and will not be addressed herein.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

Order Re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to Produce Documents dated January 25, 2008. Mattel has not shown that the non-parties possess any relevant, non-privileged materials beyond what Mattel has already sought and received from other sources. Furthermore, the burden and expense of complying with the non-party subpoenas substantially outweigh their likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

### D. Documents re MGA's Products or Carter Bryant

Mattel's subpoenas to the non-parties include requests for documents relating to Carter Bryant, Bratz and other MGA products or work performed for MGA. Although this category of requests encompasses documents that are potentially relevant to the claims and defenses in the case. the requests are nevertheless objectionable because they are overly broad and not tailored to exclude irrelevant, duplicative or unreasonably cumulative information. Mattel has taken vast amounts of discovery regarding Carter Bryant, Bratz, and other MGA products from several different sources. Mattel has not shown that the non-parties possess any relevant, non-privileged materials beyond what Mattel has already sought and received from other sources. Furthermore, the burden and expense of complying with the non-party subpoenas substantially outweigh their likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

### V. CONCLUSION

For the reasons set forth above, the MGA Parties' motion to quash, or in the alternative for a protective order, is granted, except with respect to the following requests:

- Wachovia subpoena, Request No. 4, limited to "all documents relating to any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 2000, inclusive"; and Request No. 5, limited to "all communications between YOU and MGA during the time period January 1, 1999 and December 31, 2000, inclusive" regarding any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 2000, inclusive.

1  Mattel's counter motion to compel is granted in part and denied in part in accordance with the
2  Court's ruling on the MGA Parties' motion to quash, or in the alternative for a protective order, as
3  set forth immediately above. Wachovia shall produce documents responsive to Request Nos. 4
4  and 5 as set forth above on or before May 16, 2008.
5       Nothing in this Order is intended to authorize or preclude Mattel from seeking documents
6  from the non-parties identified herein as part of Phase 2 discovery, if appropriate.
7       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
8  Master, the MGA Parties shall file this Order with the Clerk of Court forthwith.

10  Dated: May 7, 2008        /S/
11                    HON. EDWARD A. INFANTE (Ret.)
                        Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 7, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA PARTIES' MOTION TO QUASH SUBPOENAS; GRANTING IN PART AND DENYING IN PART MATTEL'S COUNTER MOTION TO COMPEL in the within action by email addressed as follows:

| Name | Firm | Email |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 7, 2008, at San Francisco, California.

_/s/ Anthony Sales_
Anthony Sales