QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED CASE | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**[PUBLIC REDACTED VERSION]**<br><br>MATTEL'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE NO. 8 TO EXCLUDE EVIDENCE RELATING TO WHETHER MATTEL WOULD HAVE MARKETED BRATZ<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

07209/2498490.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 2

I.    EVIDENCE PERTAINING TO MATTEL'S ABILITY OR INCLINATION TO MARKET BRATZ IS NOT RELEVANT TO *ANY* PHASE 1 CLAIM ............................................................................. 2

II.   DEFENDANTS' ARGUMENT ABOUT WHAT MATTEL WOULD HAVE DONE HAD MGA NOT MISAPPROPRIATED BRATZ IS NOT RELEVANT TO DAMAGES ........................................................... 6

III.  DEFENDANTS' ARGUMENT ABOUT WHAT MATTEL WOULD HAVE DONE HAD MGA NOT MISAPPROPRIATED BRATZ IS SPECULATIVE AND UNFAIRLY PREJUDICIAL ................................. 7

CONCLUSION .......................................................................................................... 8

# TABLE OF AUTHORITIES

Page

### Cases

Athridge v. Aetna Cas. & Sur. Co.,
 475 F. Supp. 2d 102 (D.D.C. 2007) ................................................................. 3

Casey v. U.S. Bank Nat'l Ass'n
 127 Cal. App. 4th 1138 (2005) ....................................................................... 5

Condon v. Solomon,
 2007 WL 4348082 (Cal. Ct. App. Dec. 13, 2007) .......................................... 4

Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp.,
 461 F. Supp. 2d 1188 (C.D. Cal. 2006) ........................................................... 3

Farmers Ins. Exchange v. State of California,
 175 Cal. App. 3d 494 (1985) .......................................................................... 2

Mendelsohn v. Capital Underwriters, Inc.,
 409 F. Supp. 1069 (N.D. Cal. 1979) ............................................................... 4

Pac. Gas & Elec. Co. v. Bear Sterns Co.,
 50 Cal. 3d 1118 (1990) ............................................................................... 2, 3

Ramona Manor Convalescent Hospital v. Care Enterprises,
 177 Cal. App. 3d 1120 (1986) ........................................................................ 2

Seaman's Direct Buying Service, Inc. v. Standard Oil Buying Co.,
 36 Cal. 3d 752 (1984) ..................................................................................... 2

U.S. ex rel. Maxwell v. Kerr-McGee Chemical Worldwide, LLC,
 2007 WL 47320871 (D. Colo Jan. 16, 2007) .................................................. 3

# MEMORANDUM OF POINT AND AUTHORITIES

## Preliminary Statement

Defendants make clear that they hope to argue to the jury that Mattel would not have effectively produced and marketed the Bratz dolls *if* Carter Bryant had honored his contract and duties and presented his Bratz designs to Mattel. Defendants contend that this theory negates the causation element of Mattel's tortious interference and fiduciary duty claims. They theorize that Bryant "would have breached the contract" even without their encouragement, Opp. at 1, and hypothesize that, in the fictional world where MGA decided not to misappropriate Bratz, Bryant eventually would have eventually found some other company to do so because of Mattel's alleged lack of interest. And so, they conclude, MGA did not "cause" Bryant to breach his contract fiduciary duties to Mattel because somebody else inevitably would have assisted in Bryant's torts.

Defendants' "inevitable breach" theory is contrary to law and cannot support introduction of the speculative arguments they wish to present. The relevant inquiry is whether *MGA's* actions caused or helped Bryant to breach his contract and duties, not what Bryant might have done with some other hypothetical company. Only MGA's actions are relevant to the claims on which MGA bases its argument. What Mattel might have done with Bryant's designs had they been properly disclosed to Mattel or what someone else might have done have no bearing on MGA's actions. For this and the other reasons set forth in Mattel's motion, Defendants' arguments about what Mattel would have done or not done with Bratz should be excluded.

## Argument

### I. EVIDENCE PERTAINING TO MATTEL'S ABILITY OR INCLINATION TO MARKET BRATZ IS NOT RELEVANT TO *ANY* PHASE 1 CLAIM

Defendants' claim that Mattel's alleged lack of inclination to market Bratz somehow negates causation is contrary to law, the Court's summary judgment ruling, and common sense. Under the law and this Court's ruling, defendants' arguments about Mattel's hypothetical conduct have no relevance to any element of any of Mattel's Phase 1 claims.

Defendants ostensibly syllogistic argument -- that (i) Mattel would not have marketed Bratz, (ii) so Bryant would inevitably have found some company to help him breach his contract and duties, (iii) so Defendants did not interfere with or assist Bryant's breach of his contract or duties because they did not "cause" him to breach them -- should be rejected for two reasons.

First, this argument misstates the elements of Mattel's tortious interference claim. The pertinent issue on this claim is whether MGA interfered with Bryant's contract with Mattel and whether MGA caused Mattel harm by the profits MGA itself derived from Bratz. See Pac. Gas & Elec. Co. v. Bear Sterns Co., 50 Cal. 3d 1118, 1127 (1990). The claim is based on MGA's "real" actions. It has nothing to do with what Mattel or some other hypothetical company might have done in the fictional world where MGA did not interfere. See Seaman's Direct Buying Service, Inc. v. Standard Oil Buying Co., 36 Cal. 3d 752 (1984) (finding that the proper inquiry is whether defendant, and not others, intended to interfere with the contract at issue) (overruled on other grounds); Farmers Ins. Exchange v. State of California, 175 Cal. App. 3d. 494 (1985); Ramona Manor Convalescent Hospital v. Care Enterprises, 177 Cal. App. 3d. 1120 (1986). MGA did in fact agree to develop and produce Bratz, causing Bryant to violate his contract with Mattel and breach his fiduciary duty to Mattel. And MGA did in fact reap enormous profits

from Bratz, in direct competition with Mattel, causing Mattel harm. The harm caused by MGA's real conduct cannot be negated by hypotheticals.

Second, the Court has already ruled that in the event that the jury finds that Bryant's contract has been breached, MGA's intentional acts *did in fact cause the resulting damages*. In its April 25, 2008 Summary Judgment Opinion, the court held that:

> The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal. 3d 1118, 1126 (1990)).
>
> The undisputed facts show that the first, *third, and fifth elements* are met . . . .

See Court's Summary Judgment Opinion, dated April 25, 2008, at 6-7.

The fifth element above, "resulting damage" from MGA's disruption of the contractual relationship, is the "causation" element of Mattel's intentional interference claim. As the Court correctly held, the undisputed facts prove causation -- if Mattel shows that MGA knew Bryant had a contract with Mattel (element 2) and that Bryant breached his contract (element 4), MGA's intentional acts in selling Bratz (element 3) caused Mattel harm (element 5). What some other company (including Mattel) would have done had it been in MGA's place is utterly irrelevant. See Athridge v. Aetna Cas. & Sur. Co., 475 F. Supp. 2d 102, 105 (D.D.C. 2007) (granting motion in limine to exclude evidence of hypothetical situation); U.S. ex

rel. Maxwell v. Kerr-McGee Chemical Worldwide, LLC, 2007 WL 47320871 at *1 (D. Colo. Jan. 16, 2007).

Third, defendants' claim (again citing their "inevitable breach" theory) that MGA did not aid and abet Bryant in violating his fiduciary duty to Mattel is equally flawed. Defendants again argue that some other company would likely have produced and marketed Bratz had MGA not done so, and that that means MGA did not provide "substantial assistance or encouragement" to Bryant in his breaches of fiduciary duties. But the actions of hypothetical non-MGA companies Bryant might have approached, or Mattel had Bryant made a hypothetical presentation of Bratz to Mattel, also have no relevance to MGA's real conduct that is the subject of Mattel's aiding and abetting claim.

Defendants cannot cite a single case where a court found significant what some company, rather than the real defendant before it, might have done had it been in the defendant's place. Indeed, defendants' assertion that California courts "have found" the substantial assistance requirement is not met when the breaching party would have engaged in his tortious act regardless, Opp. at 8, is highly misleading. The two cases defendants cite as sole authority for this proposition do not stand for, or even remotely support, it:

- In Mendelsohn v. Capital Underwriters, Inc., 490 F. Supp. 1069 (N.D. Cal. 1979), the district court did not hold that defendant accounting firm was not liable for aiding and abetting because plaintiff could have hired another accounting firm. Rather, the Court found that the defendant was not liable because *its own actions* (not the actions of some other hypothetical accounting firm plaintiff could have hired) did not amount to substantial assistance:

> [Defendant] knew of, or at least was recklessly indifferent to, DiGirolamo's fraudulent activity, and [Defendant] remained in DiGirolamo's employ and did nothing to put a halt to the fraudulent scheme. Nevertheless, [Defendant] cannot be held liable for aiding or abetting the alleged violation of Rule 10b-5 because (1) *[Defendant]'s work for CU did not substantially assist the alleged violation*, and

> (2) [Defendant] owed no duty to prospective investors to disclose any knowledge of DiGirolamo's irregular financial conduct or of the deficiencies in CU's financial records.

Mendelsohn, 409 F. Supp. at 1085 (citations omitted and emphasis added).

- In Condon v. Solomon, 2007 WL 4348082 (Cal. Ct. App. Dec. 13, 2007), the other case Defendants cite for what California courts "have found," the California Court of Appeal also focused on the actual defendant's conduct. The court held that

> "liability for aiding and abetting can only be imposed if *the person* 'knows the other's conduct constitutes a breach of duty and *gives substantial assistance or encouragement* to the other to so act. . . . ' The only 'assistance or encouragement' shown by plaintiff is that [defendant] allowed [Koehler] to engage in her practice on his property. *This is not substantial assistance or encouragement . . . .*"

Id. at *4 (citations and quotations omitted) (emphasis added).

Defendants' self serving statements aside, the issue in this case is whether MGA's actual conduct -- in developing, producing, marketing, and selling Bratz -- substantially assisted Bryant in breaching his fiduciary duty to Mattel. The evidence will show that only through the substantial assistance of MGA did Bryant violate both his contract and his fiduciary duties to Mattel. Although even "ordinary business transactions" can satisfy the substantial assistance element, see Casey v. U.S. Bank Nat'l Assoc., 127 Cal. App. 4th 1138, 1145 (2005), here MGA and Larian did much more. MGA specifically paid Bryant for his Bratz expenses,[1] and had Bryant sign an agreement with MGA to perform work for MGA on a "top

---

[1] See Mattel, Inc.'s [Corrected] Separate Statement of Uncontested Facts and Conclusions of Law in Support of Mattel, Inc.'s Motion for Partial Summary Judgment, dated March 7, 2008.. attached as Exhibit 26 to the Declaration of Tamar Buchakjian in support of Mattel's Opposition to MGA's Motions In Limine Nos. 1-14, dated April 28, 2008, at 65 (the "Buchakjian Decl.").

1  priority" basis while he was still a Mattel employee.[2] The Court properly found that
2  it is beyond dispute that these intentional acts caused Mattel's harm.[3] Whether, or to
3  what extent, Mattel or hypothetical others[4] might have marketed Bratz does not
4  affect any element of Mattel's claims. Defendants' "inevitable breach" argument
5  utterly fails in light of the law and the Court's summary judgment rulings.

## II. DEFENDANTS' ARGUMENT ABOUT WHAT MATTEL WOULD HAVE DONE IS NOT RELEVANT TO DAMAGES

In a footnote, defendants half-heartedly argue that whether Mattel would have marketed Bratz is somehow relevant to the issue of future damages. This argument ignores the fact that, as pointed out clearly in Mattel's motion papers, Mattel is pursuing the equitable remedy of disgorgement. As Mattel long ago confirmed to MGA in discovery, Mattel will not attempt to quantify its own lost sales of Bratz or other products in Phase 1.[5] Instead, Mattel seeks to recover only

---

[2] See id. at 46-7.
[3] See Court's Summary Judgment Opinion, dated April 25, 2008, attached as Exhibit 78 to the Buchakjian Decl., at 6-7.
[4] Tellingly, defendants can cite no evidence to support their speculation that Bryant would have found another company to take his Bratz concept to market and assist him in breaching his fiduciary duty. Doll concepts, like any creative idea, are not likely to be developed, marketed, and turned into a huge success. Indeed, MGA's own expert, Dr. Joachimsthaler, pooh-poohed the idea that some other company would have developed Bratz had MGA not done so: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ See Expert Report of Erich Joachimsthaler, dated February 11, 2008, attached as Exhibit 22 to the Declaration of B. Dylan Proctor in support of Mattel's Motions in Limine Nos. 1-14, dated April 14, 2008, at 16 (the "Proctor Decl."). Nor can it be simply assumed that some other company would have so brazenly aided Bryant in violating Mattel's rights, as MGA did.
[5] See Mattel Inc.'s Amended and Supplemental Responses and Objections to MGA's Second Set of Requests for Admission dated December 4, 2007, attached as Exhibit 53 to the Proctor Decl. ("Mattel states that it is seeking revenues and profits (including without limitation through disgorgement) that defendants and other parties have obtained from 'Bratz' on its claims alleged in the Mattel, Inc. v. Bryant case and that it does not intend to attempt to quantify as a measure of recoverable damages on its claims in the Mattel, Inc. v. Bryant case the amount of sales of Mattel products Mattel has marketed to date which Mattel has or may have lost because of 'Bratz.'")

1 | defendants' revenues and profits.[6] Whether Mattel would have marketed Bratz has
2 | no relevance at all to the only damage theory being tried.

### III. DEFENDANTS' ARGUMENT ABOUT WHAT MATTEL WOULD HAVE DONE HAD MGA NOT MISAPPROPRIATED BRATZ IS SPECULATIVE AND UNFAIRLY PREJUDICIAL

Defendants concede that a Mattel de Mexico representative is the only person at Mattel with whom they had discussions regarding Bratz, and that those discussions related solely to Mattel obtaining a license from MGA *after* MGA had already misappropriated Bratz. Defendants further ignore that this individual's undisputed testimony was that he "did not share the information about Bratz beyond the product name and product number with anyone at Mattel, Inc. in El Segundo."[7] In any event, because Bryant did not present the Bratz concept to Mattel at the outset, and because Mattel in fact never heard about Bratz until MGA had already substantially developed it, any argument regarding what Mattel might have done with Bratz in a world without MGA's misconduct is, by definition, speculative. After-the-fact discussions in Mexico about a possible license from MGA do not make it any less so.

Defendants also argue that excluding their theories about how Mattel hypothetically would not have marketed Bratz will be "prejudicial" to them because it will prevent them from "negating elements of Mattel's claims for intentional interference and aiding and abetting." Opp. at 11. As set forth above, this is not true, so there is no prejudice to Defendants in excluding these theories. By contrast, admission of defendants' hypotheticals and irrelevant "inevitable breach" theory

---

[6] See Expert Report of Michael Wagner, dated February 11, 2008, attached as Exhibit 56 to the Proctor Decl., at 1.
[7] See Declaration of Mateo Ramono in support of Mattel, Inc.'s Consolidated Opposition to Defendants' Motion for Partial Summary Judgment, dated March 20, 2008, attached as Exhibit 11 to the Proctor Decl. This evidence is separately inadmissible because, after being ordered to identify all facts supporting its
(footnote continued)

1 would be significantly prejudicial to Mattel -- because these arguments are wholly speculative, and would serve only confuse and distract from the real issue of MGA's actual conduct. Admitting defendants' hypothetical theories would also waste an enormous amount of time, as it would force Mattel to introduce testimony showing that Mattel does develop and has developed a wide range of doll lines and could have successfully marketed Bratz, thus further diverting the jury's attention from the actual issues: which party owns Bratz and whether defendants should be held liable for their own, real culpable conduct. Defendants' hypothetical arguments about others' potential conduct should be excluded.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant its motion and exclude any evidence, argument, or suggestion that Mattel could not or would not have been successful in producing or marketing Bratz dolls had Carter Bryant presented his original Bratz designs and concept to Mattel.

DATED: May 8, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc.

---

affirmative defenses, MGA neglected to identify this one in its responses. See Mattel's Motion in Limine No. 4.