QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION *IN LIMINE* NO. 4 TO PRECLUDE INTRODUCTION TO JURY OF EVIDENCE AND TESTIMONY RELATING TO EQUITABLE DEFENSES TO BE TRIED BY COURT<br><br>[Notice of Lodging and Supplemental Declarations of Jon Corey and B. Dylan Proctor filed concurrently herewith]<br><br>Hearing Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1:**<br>Pre-trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

# TABLE OF CONTENTS

**Page**


REPLY MEMORANDUM OF POINT AND AUTHORITIES ..... 1

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 1

I. AS RECOGNIZED IN MGA'S CASES AND THE COURT'S SUMMARY JUDGMENT RULING, NO JURY RIGHT ATTACHES TO EQUITABLE DEFENSES ..... 1

II. MGA'S EQUITABLE DEFENSES DO NOT OVERLAP WITH THE LEGAL ISSUES THE JURY WILL TRY ..... 3

III. A SEPARATE EVIDENTIARY HEARING IS PROPER AND WILL PROMOTE EFFICIENT RESOLUTION OF THE ISSUES ..... 7

IV. MATTEL'S EVIDENTIARY OBJECTIONS ARE SOUND ..... 9

V. DEFERRING ABANDONMENT UNTIL AFTER PHASE 1(A) WILL FOSTER EFFICIENCY ..... 11

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

Ard v. County of Contra Costa, 93 Cal. App. 4th 339 (2001) .......... 2

Bickel v. City of Piedmont, 16 Cal. 4th 1040 (1997) .......... 2, 3

Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016 (9th Cir. 2003) .......... 2

Conan Props., v. Inc. v. Conans Pizza, Inc., 752 F.2d 145 (5th Cir. 1995) .......... 3

Danjaq LLC v. Sony Corp., 263 F.3d 942 (2001) .......... 2, 4

Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165 (9th Cir. 1989) .......... 3

Elmore v. Oak Valley Hosp. Dist., 204 Cal. App. 3d 716 (1988) .......... 2

Fibreboard Paper Products, Corp. v. East Bay Union Machinists, 227 Cal. App. 2d 675 (1964) .......... 6

Granite State Ins. Co. v. Smart Modular Technologies, Inc., 76 F.3d 1023 (9th Cir. 1996) .......... 1, 2, 7

Hampton v. Paramount Pictures Corp., 279 F.2d 100 (9th Cir. 1960), cert. denied, 364 U.S. 882 (1960) .......... 5

Humetrix v. Gemplus S.C.A., 268 F.3d 910 (9th Cir. 2001) .......... 2

Kling v. Hallmark Cards, Inc., 225 F.3d 1030 (9th Cir. 2000) .......... 2, 4

Kramer v. Thomas, 2006 WL. 4729242 (C.D. Cal. 2006) .......... 2

McDermott v. Superior Court, 6 Cal. 3d 693 (1972) .......... 5

Mihara v. Dean Witter & Co., 619 F.2d 814 (9th Cir. 1980) .......... 3

Muraoka v. Budget Rent-a-Car, 160 Cal. App. 3d 107 (1984) .......... 2

Novell Inv. v. Weird Stuff, Inc., 0094 WL 16458729 (N.D. Cal. 1993) ........ 6

Old Chief v. United States, 519 U.S. 172 (1997) ........ 11

San Francisco BART v. Spencer, 2007 U.S. Dist. LEXIS 40075 (N.D. Cal. 2007) ........ 3

United States Fid. & Guar. Co. v. Lee Invs. LLC, 2008 U.S. Dist. LEXIS 21180 (E.D. Cal. 2008) ........ 3

United States v. Layton, 767 F.2d 549 (9th Cir. 1985) ........ 11

Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, 106 F.3d 894 (9th Cir. 1997) ........ 3

**Statutes**

Cal. Civ. Code §§ 1565-68 ........ 5

Fed. R. Evid. 402 ........ 9

Fed. R. Evid. 403 ........ 11

**Miscellaneous**

Ann Taylor Schwing, California Affirmative Defenses § 32:1 (2008) ........ 5

# REPLY MEMORANDUM OF POINT AND AUTHORITIES

## Preliminary Statement

Defendants erroneously assert that the Court's consideration of their equitable defenses after the jury phase—which the Court has already ruled in its summary judgment Order will be the procedure—will somehow trample their Seventh Amendment rights. As a fallback, they claim the procedure adopted by the Court would be "inefficient." Neither of theses positions survives examination. Not only do the equitable defenses present separate issues from the legal issues the jury will decide, the equitable defenses will be considered after the jury trial—so there is no conceivable issue of the Court deciding "jury questions" because any "jury questions" will already have been determined. Under settled Ninth Circuit law, the procedure that the Court has stated it will follow presents no Seventh Amendment issue whatsoever. Mattel's Motion *in Limine* No. 4 should be granted.

## Argument

### I. AS RECOGNIZED IN MGA'S CASES AND THE COURT'S SUMMARY JUDGMENT RULING, NO JURY RIGHT ATTACHES TO EQUITABLE DEFENSES

As set forth in Mattel's motion papers, no jury right attaches to equitable defenses. See Granite State Ins. Co. v. Smart Modular Technologies, Inc., 76 F.3d 1023, 1027 (9th Cir. 1996). Federal courts have discretion to try legal and equitable claims provided that the jury determines legal issues, and to try the equitable issues to the Court outside the presence of the jury. Id. Consistent with these principles, the Court properly ruled in its summary judgment Order that defendants' equitable defenses would be tried to the Court after Phase 1.[1]

[1] Court's Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment ("Order"), dated April 25, 2008, at 7.

Notwithstanding the law and the Court's ruling, defendants take the untenable position that they have some sort of "Seventh Amendment right" to try equitable defenses to a jury, citing thirteen cases in their opposition as purported support. Of course, because the Court has found that it will determine the equitable defenses subsequent to the jury phase, there is no danger of the Court usurping the jury's role. And, in any event, none of the cases cited by defendants remotely supports the argument that they have a right to a jury trial of equitable issues.

The first group of cases defendants cite[2] stands for the unremarkable proposition that fact questions are reserved for the trier of fact (whoever that may be), and involve situations where courts (in denying summary judgment or otherwise) described particular equitable defenses as fact intensive. It is all well and good for defendants to argue that equitable defenses "present myriad questions of fact,"[3] "are factual at their core,"[4] "present fact questions,"[5] and the like. But this utterly begs the question as to whether defendants have a right *to have a jury* resolve the discrete factual issues that pertain to their equitable defenses; in this Circuit, they plainly do not. See Granite State, 76 F.3d at 1027-28 (defendant's equitable estoppel defense did not present issues common to plaintiff's legal claims and estoppel issues were for the court rather than the jury to decide); Danjaq LLC v. Sony Corp., 263 F.3d 942, 961-63 (2001) (upholding district court's consideration of

---

[2] These are Kling v. Hallmark Cards, Inc., 225 F.3d 1030 (9th Cir. 2000); Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016 (9th Cir. 2003); Humetrix v. Gemplus S.C.A., 268 F.3d 910 (9th Cir. 2001); Kramer v. Thomas, 2006 WL 4729242 (C.D. Cal. 2006); Elmore v. Oak Valley Hosp. Dist., 204 Cal. App. 3d 716 (1988); Ard v. County of Contra Costa, 93 Cal. App. 4th 339 (2001); Bickel v. City of Piedmont, 16 Cal. 4th 1040 (1997); and Muraoka v. Budget Rent-a-Car, 160 Cal. App. 3d 107 (1984).

[3] Opposition at 1.

[4] Id. at 2.

[5] Id. at 3.

laches defense separate from copyright infringement jury trial because the claims did not share common issues).

The remaining cases defendants cite merely involve situations where, given the particular case circumstances, equitable defenses were tried to the jury.[6] These cases contain little or no analysis explaining why in those instances the particular court decided it made sense to have a jury determine these defenses; most probably these were instances in which there was substantial overlap between the legal and equitable issues.[7] Cases where overlapping legal and equitable issues meant equitable defenses were tried to a jury do nothing to create a jury trial right for equitable defenses where—as here—there is no such overlap. See Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 170 (9th Cir. 1989) (equitable issues may be tried separately from legal issues without infringing the right to jury trial when common issues are not present).

## II. MGA'S EQUITABLE DEFENSES DO NOT OVERLAP WITH THE LEGAL ISSUES THE JURY WILL TRY

Despite defendants' protests to the contrary, MGA's equitable defenses do not raise issues that overlap with the legal issues the jury will decide. The Court already recognized this in its ruling on summary judgment, sensibly finding that it could decide the equitable defenses after the jury phase. Because there is no overlap

[6] These cases are Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, 106 F.3d 894 (9th Cir. 1997); United States Fid. & Guar. Co. v. Lee Invs. LLC, 2008 U.S. Dist. LEXIS 21180 (E.D. Cal. 2008); San Francisco BART v. Spencer, 2007 U.S. Dist. LEXIS 40075 (N.D. Cal. 2007); Mihara v. Dean Witter & Co., 619 F.2d 814 (9th Cir. 1980); and Conan Props., v. Inc. v. Conans Pizza, Inc., 752 F.2d 145 (5th Cir. 1995).

[7] One exception is Bickel v. City of Piedmont, 16 Cal. 4th 1040 (1997), which defendants mistakenly claim involved the California Supreme Court upholding a jury finding of waiver. In reality, no jury trial occurred in that case; the trial court—not a jury—found waiver. Id. at 1052-54.

between the legal and equitable issues, there is no reason to submit equitable issues to the jury.

Defendants' claim that the equitable issues overlap factually with the legal issues falls flat on any examination. The reality is that not a single fact involved in proving the equitable defenses is even relevant to the jury's determination whether Bryant prepared the original Bratz drawings while a Mattel employee, and thus whether Mattel owns Bratz, or any other legal issue the jury will decide. Defendants' attempts to find "overlap" do not withstand scrutiny:

Laches. Defendants argue that their laches defense involves "a comparable factual analysis" to their statute of limitations defense.[8] This is not true. Statute of limitations involves a purely mechanical analysis, measuring time from accrual of the claim to the filing of the action. Laches, by contrast, focuses on conduct of the plaintiff and prejudice to the defendant. See Danjaq LLC v. Sony Corp., 263 F.3d 942, 951 (9th Cir. 2001) (to successfully assert laches, a defendant must prove that a party failed to assert its rights and that this failure prejudiced the defendant).[9] The "evidence" defendants wish to present on laches -- Mattel's alleged delay in filing suit, alleged motives for delay, MGA's expenditures in marketing Bratz, and the alleged loss of evidence and loss of memory of witnesses, has nothing to do with statute of limitations, no matter how defendants try to "repackag[e]" it.[10] Defendants all but concede this by making absurd arguments equating the need for

---

[8] Opposition at 6.

[9] The passage of time at issue in two defenses does not even involve the same starting point. See Kling v. Hallmark Cards, Inc., 225 F.3d 1030, 1038 (9th Cir. 2000) ("[S]tatute of limitations is triggered only by violations . . . . [whereas the] laches period may be triggered when a plaintiff knows or has reason to know about" a violation of its rights).

[10] Opposition at 5.

witnesses' memories to prove legal claims with the need to show prejudice from loss of memories for laches.[11]

Estoppel. The defense of estoppel bars a plaintiff's recovery when the plaintiff has lulled a defendant into complacency and caused concomitant injury. See Hampton v. Paramount Pictures Corp., 279 F.2d 100, 104 (9th Cir. 1960) (estoppel requires (i) the party to be estopped knew the facts and (ii) either intended that his conduct be acted on or so acted that the party asserting estoppel had a right to believe it was so intended; (iii) the latter was ignorant of the true facts; and (iv) he or she relied on the former's conduct to his injury), cert. denied, 364 U.S. 882 (1960). Here, defendants assert that Mattel knowingly permitted them to develop and market Bratz, and that they detrimentally relied on such conduct. Like laches, this equitable defense shares no factual overlap with statute of limitations or any other issue before the jury on Mattel's legal claims.

Waiver, Consent, and Acquiescence. These defenses essentially rely on the same theory; their apparent lynchpin is defendants' assertion that Mattel permitted employees other than Bryant to "moonlight," and thereby allegedly Mattel surrendered the right to enforce its Inventions Agreement. Again, these defenses are based on alleged facts distinct from those required to prove the Phase 1 legal claims. All three defenses require as elements: (1) Mattel's knowledge of an existing right and (2) some species of intentional conduct that manifests an intent by Mattel not to enforce that right. See, e.g, McDermott v. Superior Court, 6 Cal. 3d 693, 698 n.3 (1972) ("Waiver is the intentional relinquishment of a known right with knowledge of the facts."); Ann Taylor Schwing, California Affirmative Defenses § 32:1 (2008) (citing Cal. Civ. Code §§ 1565-68 ("Consent means a capable, deliberate, and voluntary assent, agreement, or concurrence in come act or purpose, reflecting

[11] See Id. at 6-7 ("[L]oss of memory by numerous Mattel witnesses will be an issue before the jury as Mattel tries to prove . . . [its] various legal claims").

mental power and physical power and free action.")); Novell Inv. v. Weird Stuff, Inc., 0094 WL 16458729 at *13 (N.D. Cal. 1993) (acquiescence requires proof of conduct on plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert its rights against the defendant).

Unclean Hands. The defense of unclean hands bars the claim of a litigant who has "violated conscience, good faith or other equitable principles in his prior conduct." Fibreboard Paper Products, Corp. v. East Bay Union Machinists, 227 Cal. App. 2d 675, 727 (1964). In support of this defense, Bryant relies on the theory, unsupported by any evidence, that Mattel was allegedly aware at the time he left, that he was helping MGA develop a new line of fashion dolls based on designs he had created while employed by Mattel.[12] Bryant also claims that Mattel has "unclean hands" because it permitted others to "moonlight."[13] As with the other equitable defenses, these facts and arguments are not germane to the jury's determination when Bryant created the original Bratz drawings, and MGA has pointed to no evidence that would be relevant for statute of limitations purposes. Moreover, even assuming the truth of the foregoing, it would do nothing to show unclean hands, for reasons set forth more fully elsewhere.[14]

Each of the foregoing equitable defenses presupposes that Mattel did own the original Bratz drawings (and the copyright subject matter they embody). Each involves an analysis of how Mattel conducted itself in light of the rights it possessed. Such analysis does not overlap in any way with the legal issues being tried to the jury, and logically (as the Court recognized in its ruling) should follow the jury's determination whether Mattel owns Bratz in the first place.

---

[12] Carter Bryant's Responses to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses ("Bryant's Interrogatory Responses"), dated January 7, 2008, attached to the Declaration of B. Dylan Proctor ("Proctor Decl.") filed concurrently with the underlying motion at ¶ 27, Exh. 26.

[13] Id.

[14] Mattel, Inc.'s Motion for Partial Summary Judgment, dated March 7, 2008.

For the reasons discussed above and set forth in Mattel's moving papers, no jury right attaches to any of the equitable defenses. See Granite State, 76 F.3d at 1027.

## III. A SEPARATE EVIDENTIARY HEARING IS PROPER AND WILL PROMOTE EFFICIENT RESOLUTION OF THE ISSUES

In its summary judgment ruling, the Court sensibly found that equitable defenses would be deferred until after the jury trial. The Court found the defenses to be:

> . . . essentially equitable in nature, and therefore the Court DEFERS RULING on them until after trial. Specifically, the Court DEFERS RULING on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.[15]

As the Court stated at the hearing: "A number of these defenses—and they really are, to my thinking, equitable defenses—the Court will consider, as you urge, after the Court hears the trial evidence."[16]

Notwithstanding this ruling, defendants persist in claming that the equitable defenses should be tried to the jury. Defendants offer four reasons to support their position that a separate evidentiary hearing to the Court would be improper. Each is unfounded.

First, MGA argues that the Court has required "special verdict forms," and maintains this means the jury can make no determination as to liability, only as to specific facts. Mattel respectfully submits that MGA has taken language from the Court's standing order and applied it in a way that makes no sense. If the Court truly intended the jury to make *no* findings of liability and to make findings only as to discrete facts, as MGA suggests, the standing order would have no reason to

---

[15] Order at 7.

[16] Reporter's Transcript of Proceedings, Motions for Summary Judgment, Case No. CV -04-09049, dated April 22, 2008, at 115:20-22.

suggest (as it does) that the parties prepare and submit Ninth Circuit model jury instructions.[17] Obviously, the Court does intend that the jury receive instructions as to the claims in this case, which in turn means the jury is to make findings of liability on the parties' legal claims. With respect, defendants' first argument is based on their complete misreading of the Court's standing order.

Second, MGA argues that because several of the claims asserted against it are derivative of claims against Bryant, there is no need to consider the derivative claims against MGA until Bryant's defenses are determined. This ignores the fact that Bryant's equitable defenses also do not share factual issues in common with Mattel's legal claims and should be decided after the jury phase. The Court has already ruled that Bryant breached both the duty of loyalty and fiduciary duty he owed to Mattel[18]—the issues of MGA's liability and Bratz ownership are ready for determination and there is no inefficiency in trying them before the equitable defenses. Moreover, this "efficiency" argument ignores that Mattel's state law claims against both Bryant and the MGA Parties are set for trial in Phase 1(a)—no economy will be gained from submitting equitable defenses to the jury.

Third, MGA argues that a brief, separate hearing to the Court would be redundant, would waste time, and would require witnesses to return to provide testimony.[19] Again, MGA proceeds under the mistaken assumption that the equitable defenses have substantial factual overlap with the legal issues; because they do not, MGA's professed concerns about redundancy are ill-founded. The same evidence will not be presented twice, and the same witnesses (in most instances) will not be required to appear.

---

17 Court's Standing Scheduling Order [FRCP 16(b)] at ¶ 9.

18 Order at 5-6.

19 Opposition at 8.

Fourth, MGA asserts that "having a separate hearing before the Court creates the risk that the jury will make inconsistent findings of fact."[20] Again, this is untrue because of the lack of overlap. In determining the equitable defenses after the jury verdict, as it has ruled it will do, the Court will obviously accept the jury's findings on any issues the jury will have decided.

## IV. MATTEL'S EVIDENTIARY OBJECTIONS ARE SOUND

In response to Mattel's evidentiary objections, MGA urges the legitimacy of its affirmative defenses, stating that such are "well supported by prevailing Ninth Circuit and California law."[21] This is not Mattel's quarrel at this stage; rather, the point is that a substantial amount of the evidence that defendants wish to offer in support of their affirmative defenses is irrelevant to any issue the jury will try in Phase 1, and must be excluded pursuant to Fed. R. Evid. 402. Further, even assuming that such evidence has any minimal probative value, its presentment to the jury creates the substantial danger of unfair prejudice, confusion of issues, and waste of time.

As examples, defendants seek to introduce vast amounts of evidence in support of the following propositions:[22]

- Mattel's primary purpose in filing suit was not to vindicate its rights, but eliminate MGA through litigation, to "[REDACTED]," and "[REDACTED]";
- Mattel deliberately waited 5 years after it was aware its rights had been violated to file suit against defendants—allegedly, in an effort "[REDACTED]";

---

[20] Id.

[21] Id. at 11-12.

[22] See MGA Parties' Oppositions to Mattel's Motions *in Limine* Nos. 2, 5, and 6. (defendants make clear that they intend to introduce such evidence in support of their affirmative defenses of laches, estoppel, waiver, consent, acquiescence, unclean hands, and abandonment of copyright); see also Bryant's Interrogatory Responses; MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Affirmative Defenses, dated January 7, 2008, Proctor Decl. ¶ 26, Exh. 25.

- Mattel lulled MGA into investing millions of dollars and extensive effort into Bratz in an effort to inflate the damages Mattel could recover when it eventually decided to file suit;
- Mattel sought to "cash in" on the success of Bratz;
- Mattel uses litigation as a business strategy and aggressively hauls its competitors into court to preserve market share;
- Mattel conducted surveillance on Isaac Larian and MGA employees and/or otherwise harassed them;
- Mattel regularly intimidates and interrogates its employees;
- Mattel laid off scores of employee to save the Barbie brand;
- Several Mattel employees engaged in "moonlighting," including [REDACTED]—and Mattel allegedly encouraged or consented to such behavior, never taking disciplinary action; and
- Mattel consciously delayed in filing suit hoping relevant evidence would vanish.

In the Opposition, defendants make no attempt to demonstrate how facts supporting any of the foregoing propositions are relevant to any issue that the jury will decide in Phase 1—which is their burden. At most, defendants state that evidence of moonlighting is relevant to certain of their equitable defenses. For example, MGA states that such evidence is relevant to "whether Bryant was reasonable in believing that Mattel acquiesced in or consented to his conduct. . . . and [i]t is also directly relevant to Bryant's and the MGA Parties' contention that Mattel is estopped from asserting claims arising from Bryant's employment."[23] This proves Mattel's point: as the Court's Order properly provided, the equitable defenses should be tried after trial, thus sparing the jury attempted "proof" on the above irrelevant and prejudicial theories.

Defendants further accuse Mattel of not explaining why their alleged evidence of delay, layoffs, intimidation, "[REDACTED]," etc. is unfairly prejudicial

[23] Opposition at p. 11.

(or otherwise properly excluded under Fed. R. Evid. 403). Defendants cite several cases for the unremarkable proposition that virtually all evidence is prejudicial in some way. Putting aside that specific objections to that evidence have been briefed in detail in Mattel's Motions *in Limine* Nos. 2, 5, and 6, a detailed explanation of potential prejudice is not even necessary. Based on any review of the categories cited above, it should be self-evident that the evidence at issue is inflammatory, will potentially arouse the passions and punitive impulses of the jury, and will suggest decision of the ownership of Bratz on an improper basis—all of which courts have held are proper bases to exclude evidence under Fed. R. Evid. 403. See Old Chief v. United States, 519 U.S. 172, 180 (1997); United States v. Layton, 767 F.2d 549, 556 (9th Cir. 1985).

Given the Court's Order regarding trial of equitable defenses, the contested evidence does not speak to any issue that will be tried by the jury. It is irrelevant to the legal issues to be tried. Defendants fail to articulate a single reason why such evidence should legitimately be presented to the jury, and there is none. All of the objectionable evidence should be excluded from the Phase 1 trial.

## V. DEFERRING ABANDONMENT UNTIL AFTER PHASE 1(A) WILL FOSTER EFFICIENCY

Logic dictates that defendants' abandonment of copyright defense should be decided—if at all—after Phase 1(a). As set forth in the underlying motion, abandonment of copyright can only occur when it established that a party has title to that copyright in the first place. Consideration of this defense may not even be necessary depending on how Phase 1(a) turns out, i.e., if the jury finds for some reason that Mattel does not own the copyrights embodied in the original Bratz drawings, then there were no copyrights for Mattel to abandon.

MGA argues that if "Mattel is found to have abandoned its copyrights, it cannot recover for the claims arising from that copyright, including the derivative

claims it asserts against MGA Parties [*sic*] in Phase 1(a)."[24] Although that may be true as to some claims, it does not address why any abandonment issues cannot be tried after the ownership of Bratz is determined. Similarly, MGA contends that a finding of abandonment would defeat Mattel's claims for aiding and abetting Bryant's breaches of fiduciary duty and duty of loyalty. Again, because these are separate inquiries (and because a finding of abandonment would only limit damages, rather than eliminate the claim), there is no reason why abandonment cannot be decided after the copyright and other claims, as the motion suggests.

**Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court grant its Motion *in Limine* No. 4.

DATED: May 8, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature] John B. Quinn
Attorneys for Plaintiff
Mattel, Inc.

---

[24] Id. at 12.