QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | REPLY IN SUPPORT OF MATTEL, INC.'S MOTION IN LIMINE NO. 10 TO EXCLUDE TESTIMONY BY GLENN V. VILPPU |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Date: May 21, 2008 Time: 1:00 p.m. Place: Courtroom 1 |
| | **Phase 1** Pre-Trial Conference: May 19, 2008 Trial Date: May 27, 2008 |

07209/2493817.4

1

# **TABLE OF CONTENTS**

2
**Page**

3

4  PRELIMINARY STATEMENT ................................................................................. 1

5  ARGUMENT .......................................................................................................... 1

6  I.    VILPPU'S FOCUS ON PURPORTED DISSIMILARITIES IS NOT
       HELPFUL IN ANALYZING SUBSTANTIAL SIMILARITY ....................... 1

7
   II.   THE COURT SHOULD NOT ALLOW VILPPU TO OFFER
8        "EXPERT" OPINIONS ON TOPICS CONCERNING WHICH HE
         LACKS FOUNDATION ...................................................................... 6

9
         A.   Vilppu Lacks Foundation to Testify Regarding Bryant's
10              Purported Artistic Inspirations .................................................. 6

11        B.   Vilppu Lacks Foundation To Offer Expert Opinion Regarding
               "Industry Practices" in the Toy Design Industry ......................... 7
12
          C.   Rule 403 Bars Admission of Vilppu's Testimony ....................... 8
13
     CONCLUSION ...................................................................................................... 9
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

Atari Games Corp. v. Nintendo of Am., Inc.,
1993 WL. 207548 (N.D. Cal. 1993).................................................................. 2

Baxter v. MCA, Inc.,
812 F.2d 421 (9th Cir. 1987)......................................................................... 9

Berkla v. Corel Corp.,
66 F. Supp. 2d 1129 (E.D.Cal. 1999) ............................................................. 4

Coston v. Product Movers,
1990 WL. 56516 (E.D. Pa., 1990)................................................................. 5

Curtis v. General Dynamics Corp.,
1990 WL. 302725 (W.D. Wash. 1990) ........................................................... 2

Durham Indus., Inc. v. Tomy Corp.,
630 F.2d 905 (2d Cir. 1980)......................................................................... 4

Elsayed Mukhtar v. California State University, Hayward,
299 F.3d 1053 (9th Cir. 2002)...................................................................... 8

General Elec. Co. v. Joiner,
522 U.S. 136 (1997)................................................................................... 6

Jason v. Fonda,
526 F. Supp. 774 (C.D.Cal. 1981).................................................................. 4

Mattel, Inc. v. Goldberger Doll Mfg. Co.,
365 F.3d 133 (2d Cir. 2004)......................................................................... 6

Merc. Transaction Sys., Inc. v. Nelcela, Inc.,
2007 WL. 2422052 (D. Ariz. 2007)............................................................... 5

Morgan Creek Prods., Inc. v. Capital Cities/ABC, Inc.,
1991 WL. 352619 (C.D.Cal. October 28, 1991)................................................ 4

Newton v. Diamond,
204 F. Supp. 1244 (C.D. Cal. 2002)............................................................... 5

Newton v. Diamond,
388 F.3d 1189 (9th Cir. 2004)...................................................................... 2

Olson v. Nat'l Broad. Co.,
855 F.2d 1446 (9th Cir. 1988)...................................................................... 4

Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,
932 F. Supp. 220 (N.D. Ill 1996)................................................................... 5

Sanford v. CBS, Inc.,
   594 F. Supp.713 (N.D. Ill. 1984)................................................................. 4

Shaw v. Lindheim,
   919 F.2d 1353 (9th Cir. 1990) ......................................................... 1, 2, 5

Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,
   562 F.2d 1157 (9th Cir. 1977)................................................................. 4

Stillman v. Leo Burnett Co., Inc.,
   720 F. Supp. 1353 (N.D. Ill. 1989)........................................................ 5

Webloyalty.com, Inc. v. Consumer Innovations, LLC,
   2005 WL. 468496 (D. Del. 2005) ......................................................... 5

Weygand v. CBS, Inc.,
   43 U.S.P.Q. 2d 1120 (C.D.Cal. 1997)................................................... 4

**Statutes**

Fed. R. Evid. 401-403.............................................................................. 8

Fed. R. Evid. 702 ............................................................................... 6, 7, 8

**Other Authorities**

3 W. Patry, Patry on Copyright, § 9.75 ..................................................... 3

4 D. Nimmer, Nimmer on Copyright,
   § 13.03[B][1][a] at 13-67 ....................................................................... 3

07209/2493817.4

REPLY IN SUPPORT OF MATTEL'S MOTION IN LIMINE NO. 10

1        **Preliminary Statement**

2                Whether intentionally or not, MGA's opposition concedes most of

3   Mattel's arguments.  MGA does not contest that Glenn V. Vilppu's report focuses

4   predominantly on the purported differences between Carter Bryant's drawings and

5   the Bratz dolls -- not on their similarities, which is the relevant legal test.  MGA also

6   concedes that Vilppu's opinion that Bryant was "inspired" by other materials is

7   based neither on personal knowledge nor a review of relevant discovery materials.

8   MGA also does not dispute Mattel's explanation why cross-examination is

9   inadequate to remedy the unfair prejudice to Mattel from Vilppu's opinions.

10               Unable to rebut Mattel's arguments, MGA misstates the law,

11  contending, for example, that experts may properly testify regarding the differences

12  between works -- even though the authorities that MGA cites contradict its

13  argument.  Indeed, MGA does not present any authority for the proposition that the

14  Court must admit expert testimony that focuses on purported dissimilarities to the

15  virtual exclusion of analysis of the claimed similarities.  At bottom, Vilppu's report

16  must be excluded based on the well-settled rule that "no plagiarist can excuse the

17  wrong by showing how much of his work he did not pirate."  <u>Shaw v. Lindheim</u>,

18  919 F.2d 1353, 1362 (9th Cir. 1990).

19               **Argument**

20  **I.    VILPPU'S FOCUS ON PURPORTED DISSIMILARITIES IS NOT**

21        **HELPFUL IN ANALYZING SUBSTANTIAL SIMILARITY**

22               MGA concedes that Vilppu's report focuses on the differences, not

23  similarities, between Bryant's drawings and the Bratz dolls.  MGA, nevertheless,

24  contends that Vilppu's opinions are relevant to the analysis of the works' substantial

25  similarity.  That is not correct.  Quite simply, an analysis of the substantial *similarity*

26  between works must focus on the works' *similarities*, not differences.

27               MGA faults Mattel for relying on the statement made by Judge Learned

28  Hand.  However, the Ninth Circuit has adopted Judge Hand's rule that "no plagiarist

1   can excuse the wrong by showing how much of his work he did not pirate." <u>Shaw</u>,

2   919 F.2d at 1362; <u>see also</u> <u>Atari Games Corp. v. Nintendo of Am., Inc.</u>, 1993 WL

3   207548, *4 (N.D. Cal. 1993) ("Atari argues that there are many lock-specific

4   features which it did not include in the Rabbit program. Atari may not avoid

5   summary judgment by pointing to what it did not copy."); <u>Curtis v. General</u>

6   <u>Dynamics Corp.</u>, 1990 WL 302725, *9 (W.D. Wash. 1990) ("Defendants argue that

7   their poster could not infringe plaintiff's copyright because only a small proportion

8   of its design could possibly be considered similar. This argument is both factually

9   and legally without merit."); <u>cf.</u> <u>Newton v. Diamond</u>, 388 F.3d 1189 (9th Cir. 2004)

10  ("[measuring] the significance of the copied segment in the defendant's work

11  [would] allow an unscrupulous defendant to copy large or qualitatively significant

12  portions of another's work and escape liability by burying them beneath non-

13  infringing material in the defendant's own work, even where the average audience

14  might recognize the appropriation.").

15          MGA cites the Patry and Nimmer treatises' purported criticism of

16  courts' application of Judge Hand's rule.  But the Court is bound by Ninth Circuit

17  precedent, not by treatises -- and the Ninth Circuit, as noted, plainly adopted Judge

18  Hand's rule in <u>Shaw</u>.[1]  In any event, MGA's contention that these treatises "refute"

19  Mattel's argument is wrong.  For instance, Patry states:

20          The ordinary observer test asks the trier of fact whether, in

21          ignoring any dissimilarities between the two works, they

22          may nevertheless be considered substantially similar in

23          expression. If so, <u>it does not matter that there are</u>

24  _____

25  [1] MGA also contends that deposition testimony of Mattel's copyright expert
    Professor Robert Lind supports its argument.  Opp., 5:24-6:19.  But the Court is
26  required to apply Ninth Circuit precedent, not Lind's -- or any other expert's -- view
    of that precedent.  In any event, Lind's testimony stands merely for the
27  uncontroversial proposition that a defendant's expert may rebut a plaintiff's claims of
    substantial similarity.  <u>See</u> Opp., 6:16-18.  Lind did not testify that an expert may be
28  permitted to testify solely regarding the purported dissimilarities between the works.

1      <u>dissimilarities</u>. The reason we ignore dissimilarities when

2      works otherwise possess significant similarities is to

3      discourage infringers from adding extra material in an

4      effort to avoid liability.  <u>Not infrequently, defendants seek</u>

5      <u>to escape liability by emphasizing the differences between</u>

6      <u>their work and the copyrighted work</u>. Unless verbatim

7      copying of the whole occurred, there will always be some

8      differences between the parties' works. However, <u>unless a</u>

9      <u>plaintiff's work is possessed of minimal creativity,</u>

10      <u>dissimilarities alone do not by themselves relieve a</u>

11      <u>defendant of liability for an otherwise material</u>

12      <u>appropriation of expression</u>.[2]

13      Similarly, Nimmer explains:  "It is entirely immaterial that, in many

14 respects, plaintiff's and defendant's works are dissimilar, if in other respects,

15 similarity as to a substantial element of plaintiff's work can be shown."  4 D.

16 NIMMER, NIMMER ON COPYRIGHT, § 13.03[B][1][a] at 13-67.  These conclusions are

17 consistent with Ninth Circuit precedent and render Vilppu's testimony irrelevant.

18      The language MGA quotes from these treatises stands merely for the

19 proposition that the trier of fact may decline to find infringement if "the points of

20 dissimilarity not only exceed the points of similarity, but indicate that the remaining

21 points of similarity are, within the context of plaintiff's work, of minimal

22 importance."  <u>Id</u>., at 13-68 to 13-69.  But the Ninth Circuit has never endorsed this

23 approach.  Further, Vilppu neither presents a quantitative analysis of the points of

24 similarity and dissimilarity nor even compares them qualitatively.  Indeed, a

25 qualitative analysis of similarities and dissimilarities is the subject of the intrinsic

26

27

28    [2] 3 W. PATRY, PATRY ON COPYRIGHT, § 9.75 (emphasis added).

1 test, which generally does not permit expert testimony.[3]  See, e.g., Sid & Marty
2 Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th
3 Cir. 1977) (the intrinsic test involves a subjective evaluation of whether the total
4 concept and feel of the two works is substantially similar, as perceived by an
5 ordinary reasonable person, and does not permit expert testimony).

6      MGA's case citations fare no better; none of the cases holds that expert
7 testimony may be admitted to show differences between the works in determining
8 substantial similarity.  For example, in Olson v. Nat'l Broad. Co., 855 F.2d 1446 (9th
9 Cir. 1988), the court affirmed a JNOV for the defendant not because the plaintiff's
10 expert overlooked dissimilarities between the works, but because there was a "lack
11 of similarity in plot."  Id., at 1450-51.  MGA's other cases are also easily
12 distinguished.  See Berkla v. Corel Corp., 66 F. Supp. 2d 1129, 1143-44 (E.D.Cal.
13 1999) (applying a stringent "virtual identity" test, which applies to factual works,
14 rather than "substantial similarity," which applies to graphic and sculptural works);
15 Weygand v. CBS, Inc., 43 U.S.P.Q.2d 1120, 1127-28 (C.D.Cal. 1997) (finding no
16 infringement because there was no similarity of protectable expression, not because
17 there were dissimilarities between the works); Morgan Creek Prods., Inc. v. Capital
18 Cities/ABC, Inc., 1991 WL 352619, *13-14 (C.D.Cal. October 28, 1991) (denying
19 summary judgment for the defendants, even though there were considerable
20 dissimilarities between the works);  Jason v. Fonda, 526 F. Supp. 774, 777 (C.D.Cal.
21 1981) (finding lack of substantial similarity based on lack of similarities, not
22 presence of differences).[4]

23

---

24 [3] As Mattel explained elsewhere, it may present expert testimony regarding pre-teen girls' opinion of similarities between Bryant's drawings and the Bratz dolls
25 because the dolls are marketed to a highly specialized audience.  See Mattel Opposition to the MGA Parties' Motion in Limine No. 8.
26 [4] MGA's citation of cases from other circuits is similarly unavailing.  In both Durham Indus., Inc. v. Tomy Corp., 630 F. 2d 905, 913 (2d Cir. 1980), and Sanford
27 v. CBS, Inc., 594 F. Supp.713 (N.D. Ill. 1984), the courts found that extensive differences between the works may weigh against a finding of substantial similarity
28 (i.e., qualitatively significant copying).  Neither case supports permitting an expert (footnote continued)

1    Accordingly, Vilppu's mere observations of differences will not be
2    helpful to the jury.  Rather, such testimony would only confuse the jury about what
3    is at issue and what it is to assess, *i.e.*, what and how much defendants copied.
4    MGA feebly suggests, in a sentence, that Vilppu does assess similarities or show
5    why ostensible similarities are not such.  Opp., 1:3.  But a single sentence cannot
6    save Vilppu's 54-page report, which focuses on immaterial differences.  His
7    testimony will not be helpful.

8    MGA finally argues that "aspects of Mr. Vilppu's opinions relating to
9    standard features are proper in connection with the central issue of what elements in
10   the sketches deserve copyright protection."  Opp., 7:24-8:2.  But the scope of
11   copyright protection is a legal issue for the Court, not the jury.  See, e.g., Newton v.
12   Diamond, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of
13   elements in a copyrighted work is a question of law."); Merc. Transaction Sys., Inc.
14   v. Nelcela, Inc., 2007 WL 2422052, *9 (D. Ariz. 2007) ("The issue of whether the
15   software is subject to copyright protection must be addressed by the Court.").[5]  The
16   issue of the scope of protectability was briefed upon Mattel's motion for partial
17   summary judgment, and should be resolved by the Court upon that motion.
18   Accordingly, because Vilppu's testimony will not be helpful to the trier of fact at
19

20   to testify primarily concerning the purported differences, while ignoring the relevant
21   question of similarity.  Regardless, to the extent that these cases are inconsistent
     with the Ninth Circuit's mandate that "no plagiarist can excuse the wrong by
22   showing how much of his work he did not pirate," Shaw, 919 F.2d at 1362, the
     Court should follow the Ninth Circuit rule.
     [5] See also Stillman v. Leo Burnett Co., Inc., 720 F. Supp. 1353, 1360-61 (N.D.
23   Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the
     issue of protectibility/nonprotectibility is an issue of law."); Coston v. Product
24   Movers, 1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of
     plaintiffs' work are protectible expression as opposed to unprotectible idea is an
25   issue of law."); Webloyalty.com, Inc. v. Consumer Innovations, LLC, 2005 WL
     468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement
26   may involve questions of fact, the protectability of copyrighted material is a
     question of law); Pivot Point Int'l, Inc. v. Charlene Prods., Inc., 932 F. Supp. 220,
27   225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a question of
     law," and the "jury has nothing to do with this subject.").
28

07209/2493817.4

-5-

1  trial, it must be excluded.  Fed. R. Evid. 702 (expert testimony must "assist the trier

2  of fact to understand the evidence or to determine a fact in issue").[6]

3  **II.    THE COURT SHOULD NOT ALLOW VILPPU TO OFFER**

4  **"EXPERT" OPINIONS ON TOPICS CONCERNING WHICH HE**

5  **LACKS FOUNDATION**

6       **A.    Vilppu Lacks Foundation to Testify Regarding Bryant's Purported**

7       **Artistic Inspirations**

8             Mattel's motion demonstrated that Vilppu cannot offer expert testimony

9  regarding Bryant's inspirations because Vilppu lacks foundation for any opinion on

10 that topic.  MGA concedes that Vilppu has not interviewed Bryant or read his

11 deposition.

12            MGA, however, seeks to salvage Vilppu's inadmissible opinions by

13 claiming that "Vilppu's reference to the context of these advertisements, i.e., that

14 they were 'used for inspiration by Mr. Bryant," has no bearing on his expert opinion

15 that they represent common animation techniques."  Opp., 8:17-19.  This is a non-

16 sequitur.  Even assuming *arguendo* that Vilppu's opinions regarding "common

17 animation techniques" were admissible, it is an impermissible leap of logic for

18 Vilppu to offer an expert opinion that these techniques were in fact "used for

19 inspiration" by Bryant.  Cf. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)

20 ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district

21 court to admit opinion evidence that is connected to existing data only by the ipse

22 dixit of the expert.  A court may conclude that there is simply too great an analytical

23 ─────────────────────────

24 [6] Nor would Vilppu's testimony be helpful if this issue were to be addressed to
   the jury.  It is irrelevant that prior dolls or illustrations had large eyes or oversized

25 heads.  After all, Mattel does not claim that it has a monopoly on such features.
   Rather, the issue is whether the Bratz dolls wrongfully copy Bryant's protectable

26 expression of these elements.  See, e.g., Mattel, Inc. v. Goldberger Doll Mfg. Co.,
   365 F.3d 133, 135-36 (2d Cir. 2004) ("Mattel's copyright will protect its own

27 particularized expression of that idea [i.e., dolls with upturned noses, bow lips, and
   widely spaced eyes] and bar a competitor from copying Mattel's realization of the

28 Barbie features.").

1   gap between the data and the opinion proffered."). Only one person can testify

2   about Bryant's inspirations: Bryant himself. MGA does not cite any authority

3   holding that an expert may testify about a defendant's artistic inspirations.

4         MGA argues that Vilppu had no "obligation . . . to have reviewed

5   Bryant's deposition transcript or, for that matter, to have personal knowledge of

6   facts." MGA misstates the legal standard. Rules 702 and 703 permit experts to

7   testify based on their review of the documentary evidence, as opposed to personal

8   knowledge of the events at issue. See Fed. R. Evid. 702 (expert testimony must be

9   "based upon sufficient facts or data."). But Vilppu did not review any such

10   documentary evidence. Vilppu's opinions regarding Bryant's "inspiration" are pure

11   unbridled speculation, unsupported by any evidence in the case, and must be

12   excluded.

13         **B.     Vilppu Lacks Foundation To Offer Expert Opinion Regarding**

14                  **"Industry Practices" in the Toy Design Industry**

15         Vilppu's opinions on industry practice in the toy industry are

16   inadmissible for the same reason. MGA argues that animation (Vilppu's specialty)

17   and toy design and production (with which Vilppu has no experience) are "closely

18   related." Opp., 10:2. But the cited evidence does not support MGA's argument.

19   First, MGA cites Lee Loetz's statement that he, a toy designer, was trained by artists

20   and animators. But that does not mean that the practices of the two industries are

21   identical. If a journalist refines his writing style by training with novelists, that does

22   not mean that fiction-writing and news-reporting operate by the same rules.

23         Second, MGA argues that Mattel "is actively involved in both toy

24   development and animation." Opp., 10:8. But, once again, that does not mean that

25   industry practices in the animation field may be applied to toy design. Large

26   companies often operate in more than one industry. That, however, does not mean

27   that the industry practices are interchangeable. For example, the Walt Disney

28   Company owns theme parks, television networks and retail stores, among many

1  other businesses.  But an expert in the retail business obviously cannot offer expert
2  opinions regarding the "industry practices" of television script development.  So
3  here.

4          MGA also contends that Vilppu's opinions regarding toy industry
5  practices are admissible because they rebut Bruce Stein's opinions.  But to constitute
6  a proper rebuttal of Stein's opinions, Vilppu's opinions must be independently
7  admissible.  The requirements of the Federal Rules of Evidence apply to all experts,
8  whether their opinion is presented in the case in chief or as rebuttal.  See Fed. R.
9  Evid. 702.  Because Vilppu does not satisfy these threshold requirements, his
10  opinion is inadmissible as a matter of law.

11          In any event, as explained in Mattel's motion in limine no. 6, purported
12  evidence of Mattel's employees' "moonlighting" is irrelevant.  Accordingly,
13  testimony regarding "moonlighting" by employees at other companies is even more
14  irrelevant.  Vilppu's baseless speculation on this subject is therefore inadmissible.
15  Fed. R. Evid. 401-403.

16      **C.**   **Rule 403 Bars Admission of Vilppu's Testimony**

17          Finally, MGA mischaracterizes Mattel as arguing that "Vilppu's stature
18  and reputation is such that his mere presence in the courtroom will . . . be a
19  'distraction' to the jury."  Motion, 2:8-9.  Rather, Mattel contends that even if
20  Vilppu's opinions satisfy threshold standards of admissibility under Daubert, the
21  unfair prejudice they will cause to Mattel substantially outweighs their marginal
22  probative value.  Vilppu is indeed a prominent artist whose opinions the jury is
23  likely to respect.  See Elsayed Mukhtar v. California State University, Hayward, 299
24  F.3d 1053, 1063-64 (9th Cir. 2002) ("the aura of authority experts often exude . . .
25  can lead juries to give more weight to their testimony.")  But, as explained above,
26  these opinions do not address the legal or factual issues to be tried and also lack
27  foundation.  Further, Vilppu's testimony regarding purported numerous differences
28  will also distract the jury from focusing on the key issue at trial:  whether the

1  similarities between the works are qualitatively -- rather than quantitatively --

2  substantial.[7] Accordingly, any weight that the jury may accord Vilppu's opinions

3  would be entirely undeserved and unfairly prejudicial to Mattel.

## Conclusion

5          The Court should exclude Glenn Vilppu's testimony at trial and bar

6  defendants from making any reference to his conclusions or opinions.

7  DATED:  May 8, 2008               QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP

9                                    By_____

10                                      John B. Quinn
                                        Attorneys for Mattel, Inc.

---

[7] See, e.g., Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.")