QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059 and<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION IN LIMINE NO. 13 TO EXCLUDE EXPERT TESTIMONY OF MARY BERGSTEIN, ROBERT TONNER, AND DEBORA MIDDLETON<br><br>[Supplemental Declarations of Dylan Proctor and Jon D. Corey and Notice of Lodging filed concurrently]<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

07209/2498633.1

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL'S MOTION IN LIMINE NO. 13

# TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 1 |
| I. TONNER'S TESTIMONY REGARDING THE CREDIBILITY OF BRYANT'S STORY SHOULD BE EXCLUDED | 1 |
| II. BERGSTEIN'S CONCLUSION THAT THE DIRECTION OF BRATZ CHANGED BECAUSE OF A MEETING SHE DID NOT ATTEND IS NOT PROPER EXPERT TESTIMONY | 3 |
| III. TONNER'S UNSUPPORTED SPECULATION ABOUT OTHER WITNESSES' MOTIVES AND INTENT IS INADMISSIBLE | 3 |
| IV. TONNER'S OPINION REGARDING THE PERCENTAGES OF BRATZ ATTRIBUTABLE TO BRYANT AND MGA IS NOT RELIABLE | 4 |
| V. TONNER'S CHARITY WORK IS IRRELEVANT | 5 |
| VI. MIDDLETON'S COMPARISON OF BRYANT'S 1998 DRAWINGS TO MGA'S JULY 2003 CHARACTER ART IS NOT HELPFUL TO THE JURY | 6 |
| VII. TESTIMONY ABOUT THE "PUBLIC DOMAIN" AND "PRIOR ART" CONSTITUTES IMPROPER LEGAL ARGUMENT | 9 |
| VIII. MIDDLETON'S TESTIMONY THAT MGA DID NOT COPY BRYANT'S DRAWINGS IS AN IMPROPER LEGAL CONCLUSION | 10 |
| IX. TONNER'S AND BERGSTEIN'S OPINIONS REGARDING THE TIMING OF BRATZ' CREATION ARE UNRELIABLE | 11 |
| CONCLUSION | 11 |

## TABLE OF AUTHORITIES

## TABLE OF AUTHORITIES

Page

**Cases**

Aetna Life Ins. Co. v. Ward,
  140 U.S. 77 (1891) .................................................................................. 2

Daubert v. Merrell Dow Pharms., Inc.,
  509 U.S. 579 (1993) ................................................................................. 5

Hangarter v. Provident Life & Accident Ins. Co.,
  373 F.3d 998 (9th Cir. 2004) .................................................................... 7

Newton v. Diamond,
  204 F. Supp. 1244 (C.D. Cal. 2002) ......................................................... 8

Nimely v. City of New York,
  414 F.3d 381 (2d Cir. 2005) ..................................................................... 3

Robertson v. Norton Co.,
  148 F.3d 905 (8th Cir. 1998) .................................................................... 7

Rondor Music Inetern. Inc. v. TVT Records LLC,
  2006 WL. 5105272 (C.D. Cal. Aug. 21, 2006) ........................................ 5

Rottlund Co. v. Pinnacle Corp.,
  452 F.3d 726 (8th Cir. 2006) .................................................................... 7

Salem v. U.S. Lines Co.,
  370 U.S. 31 (1962) ............................................................................... 2, 3

United Artists Corp. v. Ford Motor Co.,
  483 F. Supp. 89 (D.C.N.Y. 1980) ............................................................. 9

United States v. Goodwin,
  496 F.3d 636 (7th Cir. 2007) ................................................................ 8, 9

United States v. Mansoori,
  304 F.3d 635 (7th Cir. 2002) .................................................................... 8

United States v. Morales,
  108 F.3d 1031 (9th Cir. 1997) .................................................................. 6

United States v. Scop,
  846 F.2d 135 (2d Cir. 1998) ..................................................................... 2

**Statutes**

17 U.S.C. § 102(a) ............................................................................................ 8

Fed. R. Evid. 702 ......................................................................................... 4, 7

## Other Authorities

Black's Law Dictionary 1229 (6th ed. 1990)................................................................. 9

Merriam-Webster's Online Dictionary, 10th Edition. ................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Although MGA complains that Mattel has mischaracterized the testimony of its experts, it does not identify any way in which Mattel has misstated either their deposition testimony or opinions. Instead MGA tries to excuse the experts' improper opinions by spending a page and a half extolling their purported qualifications, excusing their improper opinions as containing "▮▮▮▮▮▮▮▮▮▮" and suggesting that some lower evidentiary standard applies to first-time experts, who are not "▮▮▮▮▮▮" Opp. at 2-3. On examination of the actual opinions at issue, the identified testimony of purported experts Bergstein, Tonner, and Middleton should be excluded.

It is hornbook law that experts should not be permitted to testify regarding the credibility of trial witnesses, should not comment on the meaning of the testimony of lay witnesses who will testify at trial, should not speculate about the parties' motives and intentions, should not provide opinions that have no support, and should not offer up legal conclusions. Not only do MGA's experts intend to attempt each of these, but MGA doggedly seeks to defend their right to do so. The "expert opinions" of Bergstein, Tonner, and Middleton in each of these improper areas should be excluded.

## Argument

### I. TONNER'S TESTIMONY REGARDING THE CREDIBILITY OF BRYANT'S STORY SHOULD BE EXCLUDED

MGA has now confirmed that it seeks to have Tonner testify that Bryant's story about his Bratz creation "▮▮▮▮▮▮" for him. Indeed, in an argument heading, MGA concedes that Tonner plans to offer an "▮▮▮▮▮▮" of Bryant's story.[1] Opp. at 6. MGA asserts this testimony is somehow proper because of

---

[1] "Assessment" of a witness's credibility and/or the weight of the evidence by an expert usurps the jury's function. See Cambridge Advanced Learner's Dictionary ("to (footnote continued)

something it calls "███████████" Opp. at 6, apparently arguing that credibility determinations by an expert are permissible if the witness involved happens to be an artist. Under law settled for more than a century, however, it does not matter what the witness's occupation is; credibility determinations are for the factfinder. See Aetna Life Ins. Co. v. Ward, 140 U.S. 77, 88 (1891) ("[D]etermining the weight and credibility of [a witness's] testimony . . . belongs to the jury, who are presumed to be fitted by their natural intelligence and their practical knowledge of men and the ways of men."). Expert testimony is properly excluded, as here, "if all the primary facts can be accurately and intelligibly described to the jury," and if they "are as capable of comprehending the primary facts and of drawing correct conclusions from them as are [expert] witnesses." Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962) (internal citations omitted).

There is nothing about Tonner's expertise as a doll manufacturer or creative artist that will help a jury better understand whether Bryant's story about how he conceived of Bratz is true. Bryant's story does not need an expert's imprimatur for a jury to evaluate it. Bryant says he drove past a school, saw some students, read a magazine, and then made some drawings.[2] Tonner's testimony that this is "plausible" -- meaning believable[3] -- is impermissible vouching that tells the jury how to answer the question whether Bryant should be believed. See United States v. Scop, 846 F.2d 135, 142 (2d Cir. 1998) ("The credibility of witnesses is exclusively for the determination by jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at trial.") (internal citations omitted).

---

assess" means "to judge or decide the amount, value, quality or importance of something").

[2] Declaration of Carter Bryant in Opposition to Mattel's Motion for Partial Summary Judgment, dated March 20, 2008, at ¶¶ 3-5, attached as Ex. 7 to the Supplemental Declaration of Dylan Proctor, dated May 8, 2008 ("Supp. Proctor Dec.").

[3] "Plausible," of course, means nothing other than "seeming likely to be true, or able to be believed," see Cambridge Advanced Learner's Dictionary, or "appearing worthy of belief." See Merriam-Webster's Online Dictionary, 10th Edition.

## II. BERGSTEIN'S CONCLUSION THAT THE DIRECTION OF BRATZ CHANGED BECAUSE OF A MEETING SHE DID NOT ATTEND IS NOT PROPER EXPERT TESTIMONY

Bergstein hopes to testify that the meeting between MGA and Bryant on September 1, 2000 was the "█████████████████████████████████████" Opp. at 5. Bergstein's "opinion" about the meeting is wholly unsupported. Its only possible purpose is to attribute as much of the creative development to MGA as possible for purposes of apportionment of profits. But because Bergstein did not attend and cannot know what actually occurred at the meeting, she is merely drawing conclusions about what transpired and its significance from the testimony of others. This is something the jury can do for itself, and Bergstein's view of the facts is not a proper expert opinion. See Salem, 370 U.S. at 35 (expert testimony properly excluded when the jury is "as capable of comprehending the primary facts and of drawing correct conclusions from them as are [expert] witnesses").

## III. TONNER'S UNSUPPORTED SPECULATION ABOUT OTHER WITNESSES' MOTIVES AND INTENT IS INADMISSIBLE

MGA does not dispute that Tonner cannot properly testify to the state of mind of others. See Nimely v. City of New York, 414 F.3d 381 (2d Cir. 2005). Instead, it argues that Tonner is basing his opinions on facts and assumptions that will be established by others at trial. Opp. at 3-4. However, an expert may not rely, as Tonner does, on facts that will <u>not</u> be established at trial or on invented assumptions based on his own speculation of what might be or could have been.

Here, Tonner engages in rank speculation by "████████"[4] what Mattel might have known or done, or what would have happened had different people

---

[4] See Expert Report of Robert Tonner, dated February 11, 2008 ("Tonner Report") at 11, Ex. 52 to Declaration of Dylan Proctor, dated April 14, 2008 ("Proctor Dec."). MGA of course insists that Tonner's use of "██████" is "██████." Opp. at 8.

1 worked on Bratz. Although MGA claims that Mattel "███████████
2 ███" Opp. at 7, MGA does not and cannot point to single example of Tonner's
3 speculative testimony that becomes less speculative when "████" is added.
4 Tonner's doll industry experience and review of documents in this case does not
5 entitle him to offer opinions based on what he "██████" or "██████"[5]

## IV. TONNER'S OPINION REGARDING THE PERCENTAGES OF BRATZ ATTRIBUTABLE TO BRYANT AND MGA IS NOT RELIABLE

That an expert may have years of experience in an industry does not give him carte blanche to provide opinions that are wholly unsupported. If the witness is properly relying on experience, then the witness must explain how his experience leads to the conclusion reached, why the experience is a sufficient basis for the opinion, and how the experience is reliably applied to the facts. See Fed. R. Evid. 702 Advisory Committee Note. Tonner can provide no such explanations or bases for his conclusions that 15-20% of the "████████████" of Bratz was contributed by Bryant, and 80-85% by MGA.[6]

MGA claims that Mattel cannot point to any quantitative method that should have been used to make the allocation that Tonner attempted. Of course, this is wrong. Although Mattel doubts that Tonner was capable of applying an acceptable method, Tonner's failure to weigh such factors as the amount of time spent on each element of the doll, the importance of each element to the existence of the dolls or to their sales and popularity, or the amount of money that was paid by MGA to each person who was a part of the process (as an indicator of the value of their work to MGA) shows that he did not even try to develop an appropriate methodology.[7] Moreover, MGA has hired another expert, Thomas S. Gruca, who purported to

---

[5] Tonner Report at 11, Ex. 52 to Proctor Dec.
[6] Rebuttal Expert Report of Robert Tonner, dated March 17, 2008 ("Tonner Rebuttal Report"), at ¶ 24, attached as Ex. 63 to Proctor Dec.
[7] Deposition of Robert Tonner, dated March 21, 2008 ("Tonner Depo."), at 70:8-83:1, 102:13-107:21, attached as Ex. 11 to Supplemental Declaration of Jon D. Corey, dated May 8, 2008.

quantitatively assess apportionment. Although his survey is highly flawed, this does show that this subject permits quantitative analysis. It is any expert's obligation to establish that his testimony is supported by valid "reasoning or methodology." <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 592-593 (1993). Tonner has utterly failed to justify his percentage guesstimates under this standard.

Indeed, another trial court in this District recently excluded unsupported specific-percentage opinions just like Tonner's: Magistrate Judge Jennifer T. Lum found that purported expert testimony assigning specific percentages to the portion of the copyrighted work that was copied from the infringing work and the portion of defendant's sales attributable to the infringing work was inadmissible. The court found the testimony unreliable because the expert, like Tonner, "was unable to articulate a specific process or methodology by which she reached her conclusions." <u>Rondor Music Inetern. Inc. v. TVT Records LLC</u>, 2006 WL 5105272 at *2-5 (C.D. Cal. Aug. 21, 2006).

Tonner has never even attempted to articulate -- either in his report or at deposition -- how he arrived at his conclusion that only 15-20% of "███████ ███" of Bratz was contributed by Bryant and 80-85% was created by MGA.[8] His opinion is without proper support and should be excluded as unreliable.

V.     TONNER'S CHARITY WORK IS IRRELEVANT

That Tonner's charity work may relate to dolls, Opp. at 11, does not mean that it is necessary to establish his qualifications or should be shared with the jury. In response to Mattel's showing that Tonner's charity work is irrelevant and would result in a waste of time, MGA claims that it can spend its 66 hours of testimony however it wants to. That is obviously incorrect. The court's decision that each side will have 66 hours to put on its case was not an invitation to introduce irrelevant, inflammatory or prejudicial evidence or to *waste the other side's time* by

---

[8] Tonner Rebuttal Report, ¶ 24, attached as Ex. 63 to Proctor Dec.

requiring it to meet or rebut irrelevant and prejudicial evidence. Allowing one expert to talk about charitable work would require a competing parade of Florence Nightingales on this irrelevant subject. Expert testimony should be judged on its merits, not on the expert's propensity for good works. At least according to MGA, Tonner's resume is full of accomplishments that really do relate to his qualifications and do not improperly trigger a charitable popularity contest. Tonner's charitable endeavors should be excluded.

VI.    **MIDDLETON'S COMPARISON OF BRYANT'S 1998 DRAWINGS TO MGA'S JULY 2003 CHARACTER ART IS NOT HELPFUL TO THE JURY**

Although employees may develop sufficient expertise to qualify as experts, the opinions of employee-experts, like those of all other experts must address issues beyond an average person's knowledge and must be based on sound methodology reflecting the state of the pertinent art. See United States v. Morales, 108 F.3d 1031, 1038 (9th Cir. 1997). Middleton's opinions flunk this test.

Middleton does not compare Bryant's pre-MGA drawings to any MGA Bratz character art created between 2000 and approximately July 2003, when she joined MGA. Although MGA claims that it has left the task of addressing the period between October 2000 and July 2003 to another expert, Opp. at 13, no other MGA expert compares Bryant's drawings with MGA's character art from this period. Because she does not take this period into account in any way, Middleton's testimony is misleading and should be excluded.[9]

Middleton failed to compare Bryant's early sketches against MGA's early Bratz character art in determining whether there is any link between them. She was not involved in any of the early meetings about Bratz and is not aware of what

---

[9] The gap in Middleton's analysis appears to be intentional. Middleton compares the two-dimensional character art she worked on in July 2003 with the character art on the first-generation Bratz packaging, noting differences, but does not compare Bryant's pre-MGA drawings with the first-generation Bratz packaging.

contributions were made, or by whom, at any time prior to July 2003.[10] That MGA's later artwork had evolved beyond the original sketches does not mean it did not come from the sketches; no one could render a competent opinion on this point without reviewing the full evolution of the current art. Because she made no effort to evaluate the period from 2000 to the present, there is no basis for Middleton to opine that the 2003 art is not based on the original drawings, that they are materially different, or that the 2003 art is not an appropriation of Bryant's sketches. See Rottlund Co. v. Pinnacle Corp., 452 F.3d 726, 731-732 (8th Cir. 2006) (holding that expert's comparative analysis, couched in terms of "copying," should have been excluded).

Further, her use of the terms "copy," "appropriation," and "materially different" converts Middleton's views into improper legal opinions. See Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusion."); see also Fed. R. Evid. 702 (requiring that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a *fact* in issue") (emphasis added). Regardless of whether Middleton intended to use those terms in a legal sense, in a copyright lawsuit where a jury is to decide the issue of copying, use of those terms "copy," "appropriation," and "materially different" is misleading and communicates to the jury how to decide the ultimate issue in the case. Robertson v. Norton Co., 148 F.3d 905, 908 (8th Cir. 1998) ("[C]ourts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion.") (internal citations omitted).

---

[10] With the sole exception of the packaging for MGA's 2001 first generation Bratz dolls, Middleton did not review any documentation from the period prior to her arrival at MGA nor did she review any deposition testimony of witnesses who were at MGA during that time period. Expert Report of Debora Middleton, dated February 11, 2008 ("Middleton Report"), at 2, attached as Ex. 90 to Proctor Dec.; Deposition of Debora Middleton, dated March 19, 2008, at 96:21-97:9, attached as Ex. 17 to Declaration of Jon D. Corey, dated April 14, 2008 ("Corey Dec.").

1    Middleton's opinion that Bryant's pitch book merely represents an idea,
2 not professional character artwork, is also not proper expert testimony. MGA argues
3 that it is directly relevant to the analytic dissection of filtering tests; it argues that
4 because ideas and concepts are not protected by copyright law, if Middleton testifies
5 that the drawings represent ideas and concepts, they are not protected. However, the
6 sole basis for Middleton's opinion that Bryant's pre-MGA drawings are mere ideas is
7 that they do not meet her standards for finished, sellable character art.[11] That is
8 irrelevant to "filtration" and "analytic dissection." Moreover, as explained more fully
9 elsewhere, MGA is simply wrong on the law when it comes to filtration.[12] For
10 example, Bryant's original expressions are protectable even if they are expressions of
11 something that could be considered an "idea," like a "big head" -- the concept of a big
12 head may not be protectable, but Bryant's expression of it is. <u>Mattel, Inc. v.
13 Goldberger Doll Mfg. Co.</u>, 365 F.3d 133, 135-36 (2d Cir. 2004) (holding that
14 "Mattel's copyright . . . will not prevent a competitor from making dolls with
15 upturned noses, bow lips, and widely spaced eyes, . . . [but] Mattel's copyright will
16 protect its own particularized expression of that idea"); 17 U.S.C. § 102(a) (stating
17 that copyright protection subsists in any original work of authorship fixed in a
18 tangible medium of expression, including graphic works, regardless of whether the
19 work is rudimentary or finished, sellable or unmarketable). In any case, this is an
20 issue for the court to decide, not the jury. <u>Newton v. Diamond</u>, 204 F. Supp. 1244,
21 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a
22 question of law."). Hence, there is no need for expert testimony on it to be presented
23 to the jury.
24    In response to the problems raised in Mattel's motion, MGA now states
25 that Middleton will testify as both a fact witness and an expert witness and claims this

---

[11] <u>Id.</u>, at 7, 10, attached as Ex. 90 to Proctor Dec.
[12] See Mattel's MIL 12 and Reply, Mattel's MIL 10 and Reply, and Mattel's Motion for Partial Summary Judgment and Reply.

1 is not "███████" Opp. at 14. But neither in Middleton's expert report nor
2 anywhere else has MGA given any indication that it intends to divide Middleton's
3 "fact" and "expert" testimony in different segments, with an explanatory jury
4 instruction to prevent jury confusion.[13] Assuming it can solve any problems of
5 improper notice (based on its inclusion of the purported "fact" testimony in an expert
6 report), MGA must follow this procedure if it truly intends that Middleton will wear
7 both fact and expert witness hats at trial.

## VII. TESTIMONY ABOUT THE "PUBLIC DOMAIN" AND "PRIOR ART" CONSTITUTES IMPROPER LEGAL ARGUMENT

An expert's use of the phrases "███████"[14] and "███████"[15] --
regardless of the gloss applied by the proffering party -- is testimony offering
impermissible legal conclusions that are likely to confuse the jury. MGA goes to
some lengths to suggest its experts meant something other than what they said. Opp.
at 15-16. MGA suggests that what the experts actually meant was that other creative
works were already "███████" at the time Bryant created Bratz. Opp. at 15. If
that is what the experts mean, then that is another reason Mattel's motion should be
granted -- to preclude misleading references to "█████" and "███████" when
the experts mean something else.

In any case, none of this is even remotely relevant. Through Bergstein
and Tonner, MGA asserts that Bryant may have copied cultural influences he was

---

[13] Courts have noted that there is "a greater danger of undue prejudice . . . when a witness testifies as both an expert and a fact witness." United States v. Mansoori, 304 F.3d 635, 654 (7th Cir. 2002). To minimize such prejudice, courts recommend the use of appropriate cautionary instructions and the structuring of the examination in a way that makes clear when the witness is testifying to facts based on her personal experience, and when she is offering opinions. See id. Any questioning must be structured to "prevent the two discrete subject matters of [the witness's] testimony from overlapping." United States v. Goodwin, 496 F.3d 636, 641-42 (7th Cir. 2007). MGA, of course, has not proposed any such cautionary jury instruction.
[14] "Public domain" is a term of art in copyright law referring to the "public ownership status of writings, documents, or other publications that are not protected by copyrights." Black's Law Dictionary 1229 (6th ed. 1990).
[15] "Prior art" is a term of art in patent law referring to knowledge or patents "which pertain to, but predate, [the] invention in question." Id. at 1193.

familiar with, such as Betty Boop and Ally McBeal "█████████" But the possibility that Bryant may have been exposed to influences that could have inspired Bratz does not mean that Bryant's original *expression* in his drawings should be filtered out or disregarded, as explained above and elsewhere. MGA has cited no authority supporting its suggested application of the filtering doctrine because there are none.[16] And again, none of this matters because the protectability of Bryant's drawings is an issue that <u>only</u> the Court, not the jury, can address.

### VIII. <u>MIDDLETON'S TESTIMONY THAT MGA DID NOT COPY BRYANT'S DRAWINGS IS AN IMPROPER LEGAL CONCLUSION</u>

Once again attempting to argue that its experts meant something other than what they said, MGA claims "█████████████████████████" as opposed to literally, in Bergstein's testimony. Opp. at 17. MGA then argues that, because Bergstein's conclusion that there was no copying was preceded by a detailed assessment of differences between Bryant's drawings and the Bratz dolls and packaging, her reference to "████" is merely a summary of her opinions and, therefore, admissible.

MGA's spin aside, the question whether there was "█████" is a conclusion for the jury to reach and that the jury can draw for itself. If the experts have done their job in describing the differences or the similarities between the works at issue, the jury will not need the additional help of an expert telling it whether or not there has been copying. Such testimony usurps the jury's function and does not provide any help, much less "████████" to the jury. Opp. at 17. Moreover, if Bergstein is purporting to use references to "copying" merely to summarize her prior

---

[16] Even assuming that MGA can establish Bryant "█████████" copied elements of Bambi, Sex and the City or Lisa Frank's drawings -- which would be difficult because of the lack of any real resemblance between these and Bratz -- this does not mean that elements of Bryant's drawings that arguably resemble these influences is "filtered out" of the protectable elements of Bryant's works. See <u>United Artists Corp. v. Ford Motor Co.</u>, 483 F. Supp. 89, 95 (D.C.N.Y. 1980) (concluding that the resemblances between the two figures were "not of such magnitude as to support the allegation of subconscious copying").

opinions, as MGA claims, such testimony is cumulative and should be excluded on that basis also. And, as explained fully in Mattel's Motion in Limine No. 10, expert testimony on visual "differences" between the dolls and drawings is not admissible in any case.

## IX. TONNER'S AND BERGSTEIN'S OPINIONS REGARDING THE TIMING OF BRATZ' CREATION ARE UNRELIABLE

There is no doubt that the date of Bratz creation is a central issue and that legitimate testimony that could help date Bryant's drawings would be helpful to the jury. Experts who propose, however, merely to listen to Bryant's story that he created Bratz after reviewing an August 1998 magazine and to opine that Bryant's story is true fail to meet any standard of legitimacy. In fact, Bergstein acknowledged at her deposition that a magazine published in August 1998 could have been seen at any time thereafter.[17] The experts have only Bryant's word that he actually reviewed the magazine in August 1998 and prepared his Bratz drawings that month. Because there is no way for Tonner or Bergstein to determine based on any kind of science, methodology, experience or expertise that Bryant's sketches were actually created in August 1998, any statements by them regarding the time of the creation of Bratz are no more than opinions on the credibility of Bryant's testimony. They must be excluded.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant its motion in limine No. 13 in its entirety.

DATED: May 8, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc.

---

[17] Bergstein Depo., at 128:7-130:8, attached as Ex. 10 to Corey Dec.