KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**CARTER BRYANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 13 TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION**<br><br>Date:      May 21, 2008<br>Time:     1:00 p.m.<br>Dept:     Courtroom 1<br>Judge:    Hon. Stephen G. Larson<br><br>Date Comp. Filed:  April 13, 2005<br><br>Discovery Cut-Off:  Jan. 28, 2008<br>Pre-Trial Conference:  May 19, 2008<br>Trial Date:  May 27, 2008 |

416853.01

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................1

II.   ARGUMENT.............................................................................................2

      A.    Before evidence and argument of alleged spoliation may be presented to the Jury, the Court must first determine that the sanction of an adverse inference instruction is warranted. ...................2

      B.    Mattel has not satisfied, and cannot, its burden of demonstrating spoliation and resulting prejudice to the Court.....................................................................................................9

      C.    Mattel's proposed adverse inference instruction is inappropriate and unworkable.............................................................11

III.  CONCLUSION ......................................................................................12

i

416853.01

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A. Farber and Partners, Inc. v. Garber,*
234 F.R.D. 186 (C.D. Cal. 2006) ..................................................................3, 9

*Consolidated Aluminum Corp. v. Alcoa, Inc.,*
244 F.R.D. 335 (M.D. La. 2006) ...............................................................8, 10, 11

*DirecTV, Inc. v. Borow,*
No. 03 C 2581, 2005 WL 43261 (N.D. Ill. Jan. 6, 2005) ...................................5

*Gates Rubber Co. v. Bando Chemical Industries, Ltd.,*
167 F.R.D. 90 (D. Colo. 1996) .............................................................................4

*Green v. Baca,*
226 F.R.D. 624 (C.D. Cal. 2003) .........................................................................6

*Harkins Amusement Enterprises, Inc. v. General Cinema Corp.,*
132 F.R.D. 523 (D. Ariz. 1990) .........................................................................12

*In re Hawaiian Airlines, Inc.,*
Nos. 03-00817, 06-90026, 2007 WL 3172642 (Bkrtcy. D. Haw. Oct. 30, 2007) ..............5

*Housing Rights Ctr. v. Sterling,*
No. CV-03-859 DSF, 2005 WL 3320739 (C.D. Cal. March 2, 2005) .....................3

*Ingham v. U.S.,*
167 F.3d 1240 (9th Cir. 1999) .............................................................................9

*Insolia v. Philip Morris, Inc.,*
186 F.R.D. 547 (W.D. Wis. 1999) ......................................................................12

*Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,*
No. 02 C 1403, 2003 WL 21230605 (N.D. Ill. May 27, 2003) .............................5

*Leon v. IDX Systems, Corp.,*
464 F.3d 951 (9th Cir. 2006) ...............................................................................5

*Livingston v. Isuzu Motors, Ltd.,*
910 F. Supp. 1473 (D. Mont. 1995) ...................................................................3, 4

*Medical Laboratories Management Consultants v. America Broad. Cos., Inc.,*
306 F.3d 806 (9th Cir. 2002) .............................................................................10

*Morris v. Union Pacific R.R.,*
373 F.3d 896 (8th Cir. 2004) ............................................................................5, 6

*Nejo v. Tamaroff Buick Honda Isuzu Nissan,*
88 Fed. Appx. 881 (6th Cir. 2004) ......................................................................7

*One Beacon Insurance Company v. Broadcast Development Group, Inc.,*
147 Fed. Appx. 553 (6th Cir. 2005) ....................................................................7

ii

416853.01

1

<b>TABLE OF AUTHORITIES (cont'd)</b>

2

*Pace v. National Railroad Passenger Corporation,*
291 F. Supp. 2d 93 (D. Conn. 2003)...............................................6, 7

3

*Padgett v. City of Monte Sereno,*
No. C 04-03946 JW, 2007 WL 878575 (N.D. Cal. Mar. 20, 2007).........10

4

5

*Parkinson v. Guidant Corp.,*
315 F. Supp. 2d 760 (W.D. Pa. 2004)..........................................6

6

*In re Parmalat Security Litigation.,*
472 F. Supp. 2d 582 (S.D.N.Y. 2007) ........................................3

7

*Regents Insurance Co. v. Candle Corp. of America,*
No. Civ. 04-2593 RHK/AJB, 2004 WL 2713251 (D. Minn. Nov. 24, 2004)..........8

8

9

*Residential Funding Corp. v. DeGeorge Financial Corp.,*
306 F.3d 99 (2d Cir. 2002) ................................................2, 3, 4

10

*Ritchey v. Dement,*
35 Fed. Appx. 647, 2002 WL 1060050 (9th Cir. 2002) ........................4

11

12

*Rogers v. T.J. Samson Community Hospital,*
276 F.3d 228 (6th Cir. 2002) ................................................7

13

*Toste v. Lewis Controls, Inc.,*
No. C-95-01366-MHP, 1996 WL 101189 (N.D. Cal. Feb. 27, 1996)...............11

14

15

*U.S. v. Sumitomo Marine & Fire Insurance Co., Ltd.,*
617 F.2d 1365 (9th Cir. 1980) ..............................................11

16

*U.S. v. Van Metre,*
150 F.3d 339 (4th Cir. 1998) ................................................3, 4

17

18

*Zubulake v. UBS Warburg, LLC,*
220 F.R.D. 212 (S.D.N.Y. 2003) ............................................5, 8

19

20

<b>STATE CASES</b>

21

*Cedars-Sinai Medical Ctr. v. Sup. Ct.,*
18 Cal. 4th 1 (1998) ........................................................4

22

23

24

25

26

27

28

iii

416853.01

# I.   PRELIMINARY STATEMENT

Mattel's Opposition is devoted entirely to arguing that spoliation evidence is relevant and admissible as a matter of course, and therefore, that the Court need not evaluate the evidence supporting Mattel's spoliation claims before agreeing to issue an adverse inference instruction and to permit Mattel to argue spoliation to the Jury. That Mattel is asserting this position is not surprising. The "evidence" supporting its spoliation claim is flimsy and highly speculative, and many of the conclusions that Mattel attempts to draw from that evidence are demonstrably false. Mattel knows that its only chance to get its spoliation allegations before the Jury is to circumvent any meaningful vetting of those claims by the Court. Furthermore, as the Court already has held, Mattel needlessly delayed in filing a motion for an adverse inference sanction based upon Mr. Bryant's purported spoliation until it was too late for the Court to consider the motion before trial, so arguing that such a motion is not necessary is now the only avenue open to Mattel.

But Mattel's argument that no threshold evidentiary determination is required is simply wrong. There is no authority for the proposition that spoliation evidence may be introduced at trial without the Court first determining that relevant evidence has been destroyed and that an adverse inference instruction is warranted. The few cases that Mattel cites in its Opposition do not in any way support Mattel's position. Indeed, in most of them it was either undisputed that critical evidence had been destroyed, or the court in fact conducted an in depth evidentiary hearing in response to a sanctions motion of the kind that Mattel failed timely to file. And the overwhelming body of federal law establishes that Mattel must first demonstrate to the Court that its spoliation claims have merit under the multi-part test set forth in Mr. Bryant's Opening Brief. *See* Opening Br., at 5-7.

At this late stage, Mattel's spoliation claim is nothing more than a tactical gambit to divert the Jury's attention from the merits and to gain an unfair advance at trial. The Court should put a stop to this gambit before it causes serious

1

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13
TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

1    prejudice both to Mr. Bryant and to the MGA parties, whom Mattel attempts to

2    sweep into its proposed adverse inference instruction without any showing

3    whatsoever.  Mattel has not made the requisite showing to justify the severe

4    sanction of an adverse inference instruction, and it could not even if there were

5    time for an evidentiary hearing on these collateral issues.  As discussed in Mr.

6    Bryant's Opening Brief and the prior pleadings incorporated therein by reference,

7    there is no evidence that Mr. Bryant knowingly destroyed any relevant files or data

8    when he was under an obligation to preserve evidence.  In fact, there is no

9    evidence that Mr. Bryant destroyed any relevant evidence at any point in time.  Mr.

10   Bryant's Motion *In Limine* No. 13 therefore should be granted in its entirety.

## II.    ARGUMENT

11

12   **A.    Before evidence and argument of alleged spoliation may be presented to
the Jury, the Court must first determine that the sanction of an adverse
13   inference instruction is warranted.**

14           At the very end of its Opposition, Mattel admits that Mr. Bryant's Opening

15   Brief accurately states the evidentiary requirements that must be met before an

16   adverse inference instruction may be given.  Specifically, Mattel acknowledges

17   that *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir.

18   2002), cited by Mr. Bryant and relied upon by numerous California district courts,

19   "set[s] forth standards applied in this Circuit for the issuance of an adverse

20   inference instruction based upon spoliation of evidence."  Mattel's Opp., at 13; *see*

21   *also* Bryant's Opening Br., at 5-6.  This admission should be the beginning, if not

22   the end, of the Court's inquiry regarding what Mattel must prove in order to be

23   entitled to present its spoliation allegations to the jury.  The law is clear that an

24   adverse inference instruction, no matter how it is worded, is a severe sanction that

25   may only be imposed after the party claiming spoliation has demonstrated to the

26   Court that relevant evidence has been destroyed, that the party destroying the

27   evidence did so with a culpable state of mind in violation of a duty to preserve that

28   evidence, and that the party claiming spoliation has been prejudiced as a result.

2

416853.01

1  *See Housing Rights Ctr. v. Sterling*, No. CV-03-859 DSF, 2005 WL 3320739, at *

2  7 (C.D. Cal. Mar. 2, 2005) (quoting *Residential Funding*, 306 F.3d at 105); *A.*

3  *Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 193-94 (C.D. Cal. 2006).

4        Yet despite admitting the existence of these requirements, Mattel

5  nonetheless asserts that "[n]o prior hearing or sanctions finding is needed for the

6  Court to issue" the specific form of adverse inference instruction Mattel is

7  requesting.  Mattel's Opp., at 2, 13.  Mattel's basis for this assertion is that its

8  proposed adverse inference instruction is not really a sanction because the Court

9  would not be instructing the Jury that evidence has been destroyed.  Rather,

10  Mattel's instruction leaves it to the Jury to determine both whether evidence has

11  been destroyed *and* whether it was destroyed with a culpable state of mind.  *Id.* at

12  13.  Mattel also asserts that spoliation evidence is generally relevant and

13  admissible under the Federal Rules of Evidence, and consequently, Mattel is

14  entitled to present such evidence along with an adverse inference instruction from

15  the Court "advising the jury of the significance of [Mattel's spoliation] evidence

16  and how it may impact the relevant legal determinations."  Mattel's Opp., at 11.

17        There a multiple fatal flaws in Mattel's argument.  *First and foremost*, there

18  is not a single case cited by Mattel or found by Mr. Bryant that supports the

19  proposition that evidence of alleged spoliation is relevant and admissible at trial as

20  a matter of course.  Mattel cites *In re Parmalat Security Litigation.*, 472 F. Supp.

21  2d 582, 584-85 (S.D.N.Y. 2007), as support for its position.  But *In re Parmalat*

22  simply addressed whether a *counterclaim* for spoliation was permissive or

23  compulsory for pleading purposes under the Federal Rules of Civil Procedure.  *See*

24  *id.*  It did not address whether a party generally may inject spoliation into a trial

25  absent a such a counterclaim.[1]  Here, of course, Mattel has not alleged a stand-

26

27  _____

[1] The two other cases cited by Mattel for the proposition that spoliation evidence is
generally relevant, *Livingston v. Isuzu Motors, Ltd.*, 910 F. Supp. 1473 (D. Mont. 1995)

28  and *U.S. v. Van Metre*, 150 F.3d 339 (4th Cir. 1998), are similarly unhelpful to Mattel's
cause.  *Livingston* was a product liability case involved Isuzu vehicles.  In that case,

3

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13
TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

1    alone claim for spoliation, which conceivable could make its alleged spoliation

2    evidence generally relevant.  Nor could it allege such a claim, as California does

3    not recognize an independent tort of spoliation.  *See Ritchey v. Dement*, 35 Fed.

4    Appx. 647, 648, (9th Cir. 2002); *Cedars-Sinai Med. Ctr. v. Sup. Ct.*, 18 Cal. 4th 1,

5    17 (1998).  Notably, California has rejected spoliation as a stand-alone claim

6    precisely because injecting such a claim into trial would confuse the jury, could

7    lead to inconsistent results, and because a remedy for spoliation already exists in

8    the form of the court's sanction powers.  *See Cedars-Sinai*, 18 Cal. 4th at 15-17.

9         *Second*, the law is clear that "[r]elevant," in the context of spoliation,

10   "means something more than sufficiently probative to satisfy Rule 401 of the

11   Federal Rules of Evidence.  Rather the party seeking an adverse inference

12   instruction must adduce sufficient evidence from which a reasonable trier of fact

13   could infer that the destroyed or unavailable evidence would have been of the

14   nature alleged by the party affected by its destruction." *Id.* at 108-09 (internal

15   citations and quotations omitted).[2]  In other words, "[t]he burden is on the

16   aggrieved party to establish a reasonable possibility, *based on concrete evidence*

17   *rather than a fertile imagination* that access to the lost material would have

18   produced evidence favorable to his cause. " *Gates Rubber Co. v. Bando Chemical*

19   *Industries, Ltd.*, 167 F.R.D. 90, 104 -105 (D. Colo. 1996) (internal quotations and

20   alterations omitted) (emphasis added).  Thus, before Mattel may present its

---

unlike here, it was undisputed that critical evidence—vehicle roll over test data—had been discarded.  The only question was whether it was wrongfully discarded.  The Court permitted the jury to consider this issue of intent.  *Id.* at 1494.  Also, there is no indication in *Livingston* that the court did not conduct a threshold evaluation of the plaintiff's spoliation claims; in fact, the decision suggests otherwise.  *Id.  Van Metre* was a criminal case, where there was undisputed evidence that the defendant had tried to have a key prosecution witness murdered.  The Court held that evidence of the defendant's murder plot was admissible to show the defendant's consciousness of guilt.  150 F.3d at 352-353.

[2] In its Motion for an "Adverse Inference" Jury Instruction [Docket No. 3324], filed the same day as its Opposition to Mr. Bryant's Motion *In Limine* No. 13, Mattel expressly acknowledges that the relevance standard for spoliation evidence is not the ordinary Rule 401 standard, but rather the heightened standard set forth in *Residential Funding Corporation.  See* Mattel's Mot. at 8.  That Mattel is taking an entirely different position in its Opposition is more than a little disingenuous.

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13
TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

416853.01

1  purported evidence of spoliation to the Jury, it must prove to the Court—through

2  some evidence, not speculation—that any destroyed evidence (if there were in fact

3  any) likely would have been helpful to its case.  The normal rules of admissibility

4  simply do not apply to spoliation evidence.[3]

5      *Third*, it is simply not true that evidence of alleged spoliation, together with

6  an instruction telling the jury that it may draw an adverse inference from that

7  evidence, is not unduly prejudicial under Rule 403.  Indeed, the Eighth Circuit has

8  opined exactly to the contrary:

9            An adverse inference instruction is a powerful tool in a jury trial…. It
10  necessarily opens the door to a certain degree of speculation by the
   jury, which is admonished that it may infer the presence of damaging
11  information in the unknown contents of a [missing document]. …
   One distinguished court years ago cautioned against use of an adverse
12  inference instruction like the one given in this case (there, involving
   an absent witness rather than missing evidence), because "[t]he jury
13  should not be encouraged to base its verdict on what it speculates the
   absent witness would have testified to, in the absence of some direct
14  evidence."

15  373 F.3d at 900-901 *Morris v. Union Pacific R.R.*, 373 F.3d 896, 900-901 (8th Cir.

16  2004) (reversing jury verdict and remanding case for new trial because adverse

17  inference instruction "should not have been given"); *accord Zubulake v. UBS*

18  *Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y, 2003) ("In practice, an adverse

19  inference instruction often ends litigation—it is too difficult a hurdle for the

20  _____

21  [3] Tacitly acknowledging this heightened relevance standard, Mattel makes a half-hearted
   effort to demonstrate relevance.  Mr. Bryant has already addressed Mattel's factual
22  claims in his Opening Brief and the pleadings cited therein.  And once again, none of the
   cases cited by Mattel support the imposition of an adverse inference instruction on the
23  basis of evidence as flimsy as that proffered by Mattel.  Moreover, the cases Mattel cites
   all involved instances where either it was undisputed that evidence had been destroyed or
24  the court found spoliation after conducting an evidentiary hearing on a motion for
   sanctions.  *See, e.g., Leon v. IDX Systems, Corp.*, 464 F.3d 951, 956 (9th Cir. 2006)
25  ("district court held an evidentiary hearing on September 4, 2004); *In re Hawaiian
   Airlines, Inc.*, Nos. 03-00817, 06-90026, 2007 WL 3172642, at *1 (Bkrtcy. D. Haw. Oct.
26  30, 2007) (adverse inference instruction sanction imposed after three day evidentiary
   hearing on plaintiff's motion for sanctions).  *DirecTV, Inc. v. Borow*, No. 03 C 2581,
27  2005 WL 43261, at *2  (N.D. Ill. Jan. 6, 2005) (adverse inference instruction for
   spoliation approved following motion for sanctions); *Kucala Enterprises, Ltd. v. Auto
28  Wax Co., Inc.*, No. 02 C 1403, 2003 WL 21230605, at *1 (N.D. Ill. May 27, 2003)
   ("defendant requested an evidentiary hearing on the issues of sanctions" for spoliation).

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13
TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

416853.01

spoliator to overcome.  The *in terrorem* effect of an adverse inference is obvious." (internal citations omitted)).  Moreover, as noted in Mr. Bryant's Opening Brief, courts routinely exclude spoliation evidence where the prerequisites for an adverse inference instruction were not first satisfied.  *See, e.g., Morris*, 373 F.3d at 903 (8th Cir. 2004); *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 760, 764 (W.D. Pa. 2004); *Green v. Baca*, 226 F.R.D. 624, 642-43 (C.D. Cal. 2003) (holding that unless the magistrate judge ruled that defendant had in fact failed to produce documents, evidence of defendant's alleged discovery violations "does not constitute admissible evidence" and "the unfair prejudice that defendant would suffer from the admission of the evidence would clearly outweigh its probative value").[4]

*Finally*, although Mattel cites cases that it claims hold that no hearing or prior sanctions are needed for the Court to issue "a permissive inference instruction", such as the one Mattel is proposing (Mattel's Opp., at 13), *none* of those cases actually support Mattel's position.  In *Pace v. Nat'l Railroad Passenger Corporation*, 291 F. Supp. 2d 93 (D. Conn. 2003), for example, defendant Amtrak *admitted* that certain maintenance reports relevant to the plaintiff's injury claim had been destroyed.  *Id.* at 97.  Moreover, the court specifically determined—prior to giving an adverse inference instruction—that Amtrak was aware that litigation was likely when it destroyed the reports and, therefore, was under a legal obligation to preserve them.  *Id.* at 97-98.  The court also emphasized that the adverse inference instruction "was given after extensive consideration" by the court, following briefing of the spoliation issue by the parties.  *Id.* at 99.  Thus, rather than supporting Mattel's arguments, *Pace* actually

---

[4] Mattel seeks to distinguish *Green* on grounds that the evidence of Mr. Bryant's alleged spoliation is more compelling and egregious than that at issue in *Green*.  Mattel's Opp., at 8.  That is not true.  But even if it were, the fact that Mattel is forced to make this argument proves the fallacy of its position.  In order for this Court to determine whether Mattel's spoliation claims are more compelling than those in *Green*—and thus, unlike in *Green*, should be admissible—it must necessarily engage in the very threshold evaluation

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13
TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

confirms that an adverse instruction may only be given after the type of "extensive consideration" by the Court that Mattel is seeking to avoid. And, of course, in the present case, unlike *Pace*, it is far from undisputed that Mr. Bryant has destroyed any relevant evidence. To the contrary, there is no evidence that Mr. Bryant deleted any relevant files from his computers.

Similarly, in both *One Beacon Insurance Company v. Broadcast Development Group, Inc.*, 147 Fed. Appx. 553 (6th Cir. 2005), and *Rogers v. T.J. Samson Community Hospital*, 276 F.3d 228 (6th Cir. 2002), it was undisputed that critical evidence—pieces of a collapsed tower in a case stemming from that collapse and tissue samples in a medical malpractice case, respectively—had been discarded by the defendants. *One Beacon*, 147 Fed. Appx. at 538-540; *Rogers*, 276 F.3d at 231. Applying Kentucky state law in both cases, the Sixth Circuit concluded that the trial courts appropriately gave Kentucky's "missing evidence" instruction, permitting the jury to decide whether the destruction of evidence was wrongful and, if so, to draw an adverse inference. *One Beacon*, 147 Fed. Appx. at 540-542; *Rogers*, 276 F.3d at 233-234. Putting aside the fact that Kentucky law does not apply here, these cases do not support Mattel's contention that the jury should get to decide *whether* evidence has been destroyed, and thus that Mattel should be able to argue its spoliation case to the Jury in the first instance. At most, they support proposition that the Court—*after* determining that evidence has in fact been destroyed at a time when it should have been preserved—may leave it to the Jury to determine whether that destruction was wrongful; *i.e.,* that the Jury can evaluate the intent of the spoliating party.[5] Furthermore, the facts of these cases underscore the general rule that adverse inference instructions are usually reserved

of Mattel's spoliation evidence that Mattel claims is unnecessary.

[5] The final case cited by Mattel, also from the Sixth Circuit, is distinguishable on the same grounds. *See Nejo v. Tamaroff Buick Honda Isuzu Nissan*, 88 Fed. Appx. 881, 888-889 (6th Cir. 2004) (applying Michigan state law in case where it was undisputed that relevant evidence had been discarded).

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13 TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

1   for situations, unlike here, where "the facts of the case are extreme, such as where

2   the destroyed evidence was the very automobile that was the subject of the

3   products liability action." *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244

4   F.R.D. 335, 344 (M.D. La. 2006).

5         That the handful of cases discussed above—many of which apply non-

6   California state law—are the best that Mattel is able to put forward highlights its

7   position's lack of merit. A simple search of Westlaw reveals dozens of federal

8   cases from within California addressing the imposition of adverse inference

9   instructions, including the many cases cited in Mr. Bryant's Opening Brief. Yet

10  Mattel is not able to point to a single federal case from within (or outside)

11  California holding that an open-ended instruction such as the one Mattel is

12  proposing properly may be given without any threshold evidentiary determination

13  by the Court. Indeed, Bryant has been unable to identify any case where a court

14  has approved an instruction such as Mattel's, which leaves it to the jury to decide *if*

15  any evidence has been destroyed, under any circumstances.

16        The bottom line is that adverse inference instructions, whatever their exact

17  language, are considered a serious sanction that are only given after a careful

18  examination of the evidence, usually, if not always, through an in depth evidentiary

19  hearing. *See Regents Ins. Co. v. Candle Corp. of Am.*, No. Civ. 04-2593

20  RHK/AJB, 2004 WL 2713251, at *2 n.4 (D. Minn. Nov. 24, 2004); *Zubulake*, 220

21  F.R.D. at 220 (adverse inference instruction is an "extreme" sanction that should

22  "not be given lightly"); *see also* Footnote 3, *supra*. Here, as the Court recognized

23  in denying Mattel's *ex parte* application for an expedited hearing on its Motion for

24  an "Adverse Inference" Jury Instruction, Mattel could have sought an evidentiary

25  hearing on its alleged spoliation claims months ago. *See* Order dated May 6, 2008

26  [Docket No. 3482], at 4 ("Mattel failed to establish sufficient cause to grant the ex

27  parte relief given the length of time in which they have been aware of the matter

28  for which they seek the 'Adverse Inferences' Jury Instruction"). It did not,

8

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13
TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

1   choosing instead to attempt to slip the issue past the Court in the crush of pre-trial

2   events and take it directly to the Jury.  Mattel's delay in presenting this issue to the

3   Court, and its attempt to avoid the required threshold evidentiary evaluation of its

4   spoliation claims, is improper and unfair to both Mr. Bryant and the Court.

5   **B.    Mattel has not satisfied, and cannot, its burden of demonstrating
         spoliation and resulting prejudice to the Court.**

6

7         Even if Mattel's request for an adverse inference instruction and the right to

8   argue its claims to the Jury were properly before the Court, Mattel has not

9   satisfied, and cannot, the required evidentiary burden to justify injecting this

10  collateral, highly prejudicial, issue into the trial.  Mr. Bryant already has rebutted

11  Mattel's spoliation claims and the flimsy facts supporting those claims in his

12  Opening Brief and in the many prior pleadings and declarations he has submitted

13  on this issue, which he incorporated by reference therein.  *See* Opening Br., at 8-

14  11.  Mr. Bryant particularly urges the Court to review Carter Bryant's Opposition

15  to and Surreply Re: Mattel Inc.'s Motion for an Order Enforcing Court's January

16  25, 2007 Order Compelling Bryant to Produce Computer Hard Drives and For

17  Sanctions [Docket Nos. 1980 and 2662], courtesy copies of which are attached.

18  These pleadings provide a detailed explanation of what Evidence Eliminator is,

19  and is not, how and when it operates, and why Mattel's spoliation claims are

20  inaccurate and hugely overblown.  As explained in these pleadings, there is simply

21  no evidence that Mr. Bryant ever deleted any relevant information from either his

22  desktop or his laptop computer.

23        In addition to the arguments already presented in these prior pleadings, it is

24  worth emphasizing that Mattel has not even attempted to show prejudice.  *See A.*

25  *Farber*, 234 F.R.D. at 194 ("[A] sanction for destruction of evidence is appropriate

26  only if the destruction prejudiced the opposing party."); *see also Ingham v. U.S.*,

27  167 F.3d 1240, 1246 (9th Cir. 1999).  Mr. Bryant's desktop and laptop computers

28  both post date his employment at Mattel (the laptop by more than a year).

9

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13
TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

1     Consequently, any emails and other files contained on those computers are

2     unlikely to be of great relevance or importance to Mattel's case against Mr. Bryant,

3     which is based on Mr. Bryant's alleged conduct while he was employed at Mattel.

4     Mattel has amassed mountains of discovery, including thousands of documents

5     from Bryant, and hours and hours of deposition testimony, related to this time

6     period, as well as the post-October 19, 2000 period. It has more than enough

7     evidence to present its case at trial. *Cf. Consolidated Aluminum*, 244 F.R.D. at 347

8     ("[E]even assuming that every email deleted during the time period in question had

9     some relevant to this lawsuit, it is doubtful that Consolidated will be sufficiently

10     prejudiced in its ability to put on its case to warrant an adverse inference

11     instruction, considering the overwhelming amount of documentary evidence an

12     emails already produced by Alcoa in this matter.").

13       Furthermore, "[t]he availability of secondary sources of evidence to

14     compensate for the despoiled evidence lessens any risk of prejudice at trial."

15     *Padgett v. City of Monte Sereno*, No. C 04-03946 JW, 2007 WL 878575, at *4

16     (N.D. Cal. Mar. 20, 2007); *accord Med. Lab. Mgmt. Consultants v. Am. Broad.*

17     *Cos., Inc.*, 306 F.3d 806, 825 (9th Cir. 2002). Mattel itself admits that it has

18     alternate sources for whatever relevant emails that may have been deleted.

19     Specifically, Mattel admits that it has obtained copies of many of Mr. Bryant's

20     emails from MGA and various third parties. Mattel's Opp. at 6. This makes

21     perfect sense. Any Bratz-related emails that Mr. Bryant may have sent or received

22     between October 21, 2000 and July 2004 would have been sent to or received from

23     the individuals at MGA or the third-party contractors with whom he was working

24     on developing Bratz. Mattel has obtained extensive discovery, including discovery

25     of electronic documents, from all of these individuals. Therefore, even if Mr.

26     Bryant had deleted all of his emails from 2000-2004 (which, of course, is not true;

27     Mr. Bryant has produced numerous emails in discovery), Mattel still could not

28     show that it has been prejudiced because those very same emails, to the extent

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13
TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

416853.01

1   relevant, are available from other sources. *Cf. Consolidated Aluminum*, 244 F.R.D.

2   at 347 (declining to issue adverse inference instruction because moving party

3   "should be able to obtain the great majority of information relevant to its claims

4   from emails" of witnesses whose emails were preserved).

5   **C.   Mattel's proposed adverse inference instruction is inappropriate and**
     **unworkable.**

6

7        Finally, even if the Court were to conclude that Mattel's proposed adverse

8   inference instruction does not require a threshold evidentiary determination

9   regarding the merits of Mattel's spoliation allegations (which Mattel failed to

10  timely request), the Court still should not give the instruction requested by Mattel

11  for at least two reasons. *First*, Mattel's proposed instruction sweeps in not only

12  Mr. Bryant, but also all of the MGA parties. Yet Mattel has not even attempted to

13  argue in its Opposition, or elsewhere, that any of the MGA parties spoliated

14  evidence. Absent such proof, the Court cannot impose the sanction of an adverse

15  inference instruction on these parties. *See, e.g., U.S. v. Sumitomo Marine & Fire*

16  *Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (party to be sanctioned must

17  have had control over the violations giving rise to the sanction); *Toste v. Lewis*

18  *Controls, Inc.*, No. C-95-01366-MHP, 1996 WL 101189, at *6-7 (N.D. Cal. Feb.

19  27, 1996) (evidentiary sanctions not appropriate where party to be sanctioned was

20  not at fault).

21        *Second*, even if Mattel's proposed instruction were limited to Mr. Bryant,

22  the MGA parties still would be profoundly prejudiced by that instruction and the

23  introduction of related evidence and argument. Because the Jury is likely to see

24  Mr. Bryant and the MGA parties as aligned (if for no other reason than that they

25  will be sharing the examination of witnesses and the presentation of evidence for

26  the defense), any sanction imposed against Mr. Bryant inevitably will bleed over to

27  the Jury's evaluation of the MGA parties. The Jury is unlikely to be able to

28  accurately and fairly determine what "adverse inferences" it may draw vis-à-vis

Mr. Bryant, but not MGA, and visa-versa. *See Harkins Amusement Enterprises, Inc. v. General Cinema Corp.*, 132 F.R.D. 523, 524 (D. Ariz. 1990) (declining to issue an adverse inference instruction because "any unfavorable inference imposed against [one defendant] as a sanction necessarily affect the [other] defendants"); *see also Insolia v. Philip Morris, Inc.,* 186 F.R.D. 547, 549 (W.D. Wis. 1999) ("when a jury is subjected to a welter of evidence relevant to some parties but not others" it results in prejudice, jury confusion, and a waste of judicial resources). Moreover, the MGA defendants would be obligated to cede precious hours of their 66-hour allotment to rebutting Mattel's spurious spoliation claims, diverting time from the presentation of their merits defense.

### III.   CONCLUSION

For all the foregoing reasons, and for all the reasons set forth in Mr. Bryant's Opening Brief and the pleadings and declarations incorporated by reference therein, the Court should grant Mr. Bryant's Motion *In Limine* No. 13 in its entirety.

Respectfully submitted,

Dated: May 8, 2008                                KEKER & VAN NEST, LLP


By:   /s/ Matthew M. Werdegar
      MATTHEW M. WERDEGAR
      Attorneys for Plaintiff
      CARTER BRYANT

CARTER BRYANT'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 13
TO EXCLUDE EVIDENCE OF ALLEGED SPOLIATION

416853.01

# EXHIBIT A

1 | KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
2 | jkeker@kvn.com
MICHAEL H. PAGE - #154913
3 | mpage@kvn.com
CHRISTA M. ANDERSON - #184325
4 | canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
5 | mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
6 | jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
7 | awaltonhadlock@kvn.com
710 Sansome Street
8 | San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
9 | Facsimile:  (415) 397-7188

10 | Attorneys for Plaintiff
CARTER BRYANT

11

12
UNITED STATES DISTRICT COURT

13
CENTRAL DISTRICT OF CALIFORNIA

14
EASTERN DIVISION

15

16 | CARTER BRYANT, an individual,

17 |         Plaintiff,

18 |     v.

19 | MATTEL, INC. a Delaware Corporation,

20 |         Defendant.

21

22 | CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA

23 | ENTERTAINMENT, INC. v. MATTEL, INC.

Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727

**DISCOVERY MATTER**

[To Be Heard by Discovery Master Hon. Edward Infante (Ret.)]

**CARTER BRYANT'S OPPOSITION TO MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS**

Date:    TBA
Time:    TBA

Date Comp. Filed:  April 13, 2005
Discovery Cut-Off:  Jan. 28, 2008
Trial Date:  May 27, 2008

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410889.02

1

# TABLE OF CONTENTS

<span style="float:right">**PAGE**</span>

A.   The Court's January 25 Order did not address Mr. Bryant's post-2004 Computers ................................................................. 1

B.   No Cause Exists to Compel Inspection of Mr. Bryant's Other Computers ...................................................................... 4

   1.   There is no evidence of spoliation ................................................. 4

   2.   There is no inconsistency regarding Bryant's 2004 through 2007 computers ............................................................ 8

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

410889.02

1

## TABLE OF AUTHORITIES

2
<u>PAGE</u>

3
### FEDERAL CASES

4
*Playboy Enterprises v. Welles*, 60 F. Supp. 2d 1050 (S.D. Cal. 1999)....... 10

5
### FEDERAL RULES

6

7
Fed. R. Civ. P. 34(a)(1), 2006 Adv. Comm. Notes. .................................... 10

8
### OTHER AUTHORITY

9

10
James W. Moore, et al., *Moore's Federal Practice* §37A.44[3][b] (3d. ed. 2007).............................................................................................. 10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410889.02

1      *"Rule 34 was not intended to authorize the routine production of a party's*
2  *electronic devices."*
3                                --Discovery Master December 31, 2007 Order[1]
4
5          Mattel offers no reason why it should be permitted to demand possession
6  and inspection of all of Mr. Bryant's personal computers, simply because it would
7  like to poke around looking for new claims and issues. Indeed, Mattel's motion
8  hardly mentions the computers it seeks to seize. Instead, it repeats and rehashes a
9  series of misstatements, omissions, and outright falsehoods it has already trotted
10 out *ad nauseum*, under the apparent belief that if it shouts them often and stridently
11 enough, they will magically become both true and relevant. They are, however,
12 neither.
13         Rather than present cause to seize and inspect more of Mr. Bryant's
14 computers (because there is no such cause), Mattel first attempts to convince this
15 Court that it has *already ruled* on this motion. This is nonsense. Mattel has never
16 moved to inspect these computers, and this Court has of course never granted such
17 a motion. Mattel then seeks to justify its new motion by a litany of accusations
18 concerning the two computers it has already inspected. Those accusations consist
19 almost entirely of knowing falsehoods and distortions, as we address below. More
20 to the point, however, they have nothing to do with the computers at issue in *this*
21 motion.
22 **A.**    **The Court's January 25 Order did not address Mr. Bryant's post-2004 Computers**
23         In January 2007, Mattel filed the motion to compel it purports to be seeking
24
25 to enforce here, which was a continuation of its earlier motion filed in January
26

---

27 [1] Declaration of Michael H. Page (February 7, 2008) ("Page Decl.") ¶ 2, Ex. A (Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions (Dec. 31, 2007) at 17).
28

1

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410889.02

1   2005.  That motion sought to compel the production of a laundry list of documents,

2   based on Mattel's September 14, 2004 First Request for Production.[2]  Among other

3   things, that motion sought an order that Bryant produce for forensic imaging three

4

5   specific computers, which Mattel asserted had been used by Bryant "during the

6   relevant time period."[3]  Although the motion itself is cryptic as to which computers

7   were at issue, the accompanying separate statement could not have been clearer.  It

8

9   specified three computers:[4]  A desktop computer that Bryant purchased the day

10   after he left Mattel ("The October 2000 Desktop"), a laptop Bryant purchased in

11   early 2002 ("The 2002 Laptop"),[5] and a computer his parents had owned in 1998,

12

13   but had disposed of before this litigation commenced.

14         Mattel continues to make much of its purported confusion as to what

15   computers Mr. Bryant owned "in the relevant time period," complaining of errors

16   in communications from Bryant's prior counsel which confused the 2002 Laptop

17   (which Bryant continued to own) and the 2000 Desktop (which he had given to his

18

19   niece before this litigation commenced).  That confusion may have been

20   unfortunate, and it may have been engendered by errors by Bryant's counsel, but

21   what is clear from Mattel's Separate Statement is that Mattel's still-professed

22

23   confusion had cleared more than a year ago.  Mattel's motion correctly and

24

25   [2] Page Decl. ¶ 3, Ex. B (Mattel Inc.'s Notice of Motion and Motion to Compel Production of Documents dated January 4, 2005).

26   [3] Mot. at 11.

27   [4] Separate Statement at 58.

28   [5] The exact date of purchase is unknown; it is sometime between November 2001 and February 2002.

2

410889.02

1  specifically identified all three of the computers used by Bryant in the relevant

2  time frame,[6] and those are unambiguously the computers to which this Court's

3

4  Order applied.

5        Bryant has complied with that Order entirely. In July, 2004, shortly after

6  this litigation commenced and long before the discovery requests at issue here,

7  Bryant's counsel took complete forensic images of the relevant computers.[7] The

8

9  2002 Laptop was still in Mr. Bryant's possession. The October 2000 Desktop had

10 long since been given to Mr. Bryant's niece, but Mr. Bryant borrowed it back for

11 the purpose of imaging it, and then returned it. The third computer, his parents',

12

13 had been given away long ago, and was not available.[8]

14       Thus, as of July 14, 2004, every bit of possibly relevant evidence from the

15 computers at issue had been preserved, and those complete forensic images have

16 been produced to Mattel in accordance with this Court's Order.[9] The computers

17 themselves have also been produced, inspected, and further forensic images have

18

19 been taken by Mattel in 2007.[10] The matter should end there.[11]

20

21 [6] The only available definition of that "relevant time frame" is that which is set forth in the definitions section of the document requests Mattel seeks to enforce here: from January 1, 1995 to the date of those requests, September 14, 2004. Page Decl. ¶ 4, Ex. C (Plaintiff Mattel Inc.'s First Request for Documents and Tangible Things to Defendant Carter Bryant at 4).

22

23 [7] Page Decl. ¶ 5. Ex. D (Decl. of Carter Bryant in Response to Court's Request for Information Regarding Document Preservation ¶ 11 dated January 14, 2008 ("Bryant Preservation Decl.")).

24

25 [8] Page Decl. ¶ 6, Ex. E (Deposition of Janet Bryant taken on September 25, 2007) (Tr. at 89:11-94:19); id. ¶ 7, Ex. F (Deposition of Thomas Bryant taken on September 26, 2007) (Tr. at 45:8-50:17).

26 [9] Page Decl. ¶ 8, Ex. G (Letter from Trinidad to Zeller dated January 18, 2008); see also id. ¶ 9, Ex. H (Letter from Jacoby to Zeller dated April 23, 2007).

27

28 [10] Page Decl. ¶ 10, Ex. I (Declaration of Keith A. Jacoby in Opposition to April 10, 2007 Motion of Mattel, Inc. for an Order to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive dated April 24, 2007 at ¶¶ 3-6.

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

1    But Mattel now seeks to convince this Court that its January 25, 2007 Order

2  mandates the inspection of every single computer Mr. Bryant has owned *since* the

3  relevant time period (and presumably every computer he will ever own). This is

4  absurd, and patently false, for several reasons. *First*, the discovery requests Mattel

5  claims underlie this motion are expressly limited to the time period from January 1,

6  1995 to September 14, 2004. *Second*, Mattel's January 2007 motion was expressly

7  directed to three specific computers. *Third*, most or all of the computers Mattel

8  now seeks to explore *did not even exist* at the time Mattel filed its motion to

9  compel, and could not possibly have been the subject of that motion. And *fourth*,

10  that motion expressly sought only inspection of computers used "in the relevant

11  time period." As the relevant events in this case occurred from 1998 to 2001, the

12  two computers at issue in Mattel's prior motion were arguably relevant. Mr.

13  Bryant's current work and personal computers are not (or at least only marginally

14  so).

15  **B.    No Cause Exists to Compel Inspection of Mr. Bryant's Other Computers**

16  

17      **1.    There is no evidence of spoliation**

18      As set forth above, this is not a motion to compel compliance with an earlier

19  order. It is a new motion, and it fails. Indeed, it does not even attempt to address

20  the 2004 and 2007 computers it seeks to compel, instead rehashing the history of

21  the pre-2004 computers that have already been repeatedly imaged and produced.

22  _____

23  [11] The forensic images taken in July 2004 render the machines themselves utterly irrelevant. If, immediately after taking those images, the computers had been fed into a wood chipper, not a bit (or byte) of evidence would have been lost. But Mattel has demonstrated a fanatical fascination

24  with the subsequent history of those boxes. They demanded that Bryant go back to his niece last year, take back the 2000 Desktop, and fly it to Los Angeles for further inspection. They then

25  dragged us all to Missouri to depose Mr. Bryant's niece on her ownership of the computer. They have moved to compel the deposition of Bryant's trial counsel on the subject of

26  custody of the computers AFTER they were imaged, and have continued to press for that deposition even after receiving Mr. Bryant's declaration confirming that the computers were

27  imaged in July 2004 (which Mattel already knew). Page Decl. ¶ 11, Ex. J (Mattel Inc.'s Motion to Compel the Deposition of Littler Mendelson, P.C. dated December 14, 2007).

28

4

410889.02

1   But Mattel repeats, for at least the sixth time before this Court and Judge Larson, a

2   number of truly outrageous and scurrilous allegations concerning those two

3   computers, in hopes that this Court will confuse repetition for truth. Accordingly,

4   we must respond.

5          The most dramatic element of Mattel's diatribe is its allegations of spoliation

6   by use of the "Evidence Eliminator" program.[12]  Those allegations are dramatic,

7   however, solely because Mattel omits most of the facts and distorts the rest beyond

8   recognition. The truth is that there has been no spoliation, and Mattel knows it.

9          Admittedly, the creators of Evidence Eliminator chose a strikingly

10  unfortunate name for their product. It can indeed be used to eliminate evidence of

11  deleted files from a computer. But that is not its sole, or even primary, purpose.

12  When used as designed (i.e., as it is set to function "out of the box") Evidence

13  Eliminator performs routine clean-up functions such as deleting cookies and

14  spyware, clearing internet browsing history files, and the like. Thus Evidence

15  Eliminator's advertisements list those functions first: "**Speeds-Up** your PC and

16  makes it safer to surf the Internet!" "Stops your computer spying on you!"[13]

17  Bryant has testified that this is why he installed the program in the first place; he

18  never reset its default configuration (and would have had no idea how to), instead

19  using it "out of the box."[14]  Mattel knows this perfectly well; it has the program

20  and configuration files from both computers, and Bryant has submitted them to the

21  Court in response to prior motions.[15]  Thus, in the unlikely event that Mattel's

22  experts had not looked at them before the last motion, they surely have by now.

23  And yet Mattel's motion continues to falsely assert that Bryant willfully deleted

24

[12] *See* Mot. at 10-11.

25  [13] Page Decl. ¶ 12, Ex.K  (Screenshot of Evidence Eliminator's "splash page").

26  [14] Page Decl. ¶ 13, Ex. L (Deposition of Carter Bryant Vol. 4 dated January 23, 2008) ("Bryant Depo. Vol. 4") (Tr. at 739:8-740:9, 740:23-741:4).

27  [15] Page Decl. ¶ 14, Ex. M (Opposition to Mattel Inc.'s Motion for Additional Time and/or to
28  Reopen the Deposition of Carter Bryant for All Purposes and to Overrule Additional Instructions Not to Answer at the Deposition dated August 15, 2007 at p. 12).

5

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410889.02

1   files from the 2000 Desktop and 2002 Laptop.[16]

2       More importantly—and also conspicuously absent yet again from Mattel's

3   representations to this Court—is **when** Mr. Bryant installed Evidence Eliminator.

4   Mr. Bryant installed Evidence Eliminator in **July 2002** (Desktop) and **September**

5   **2002** (Laptop).[17]  This lawsuit was not filed until nearly two years later, in **April**

6   **2004**.  As we have previously noted, at the time Mr. Bryant installed Evidence

7   Eliminator, he was under no obligation to preserve **any** evidence, and would have

8   been free to toss his own computers into the sea if he chose.  Mattel knows these

9   dates as well, both because it has possession of the installation logs and because we

10   have already submitted them to the Court in previous pleadings.[18]  And yet Mattel

11   omits those facts from its motion, instead breathlessly leading the Court along with

12   accusations of spoliation.

13       But if Mr. Bryant *didn't* use Evidence Eliminator to destroy evidence, why

14   (Mattel dramatically asks) is that data missing?  The simple answer is that there is

15   no missing data.  Mattel is, quite simply, making it up.  Mattel's brief dramatically

16   announces "Mattel's inspection also confirmed that data from the critical period of

17   2000 through 2001 was missing from both drives."[19]  What inspection?  What

18   data?  When one looks at the "evidence" cited in support of that very serious

19   accusation, one finds . . . . nothing.  More precisely, one finds only a citation to the

20   declaration of Quinn Emanuel associate Melissa Grant that "Examination of the

21   data reveals . . . . that data from the period of 2000 and 2001 appears to be

22   missing."[20]  Putting aside the creative use of the passive voice and the utter lack of

23

24   [16] Mot. at 11.

    [17] Page Decl. ¶ 15, Ex. N (Evidence Eliminator Installation Logs).  *See also, id.* ¶ 13, Ex. L

25   (Bryant Depo. Vol. 4 Tr. at 741:6-17).

    [18] Page Decl. ¶ 15, Ex. N (Evidence Eliminator Installation Logs)..

26   [19] Mot. at 10.

27   [20] Decl. of Melissa Grant in Support of Mot. for an Order Enforcing Court's Jan. 25, 2007 Order

    Compelling Bryant to Produce Computer Hard Drives and for Sanctions dated January 28, 2008

28   ("Grant Decl.") ¶ 29.

410889.02

1  foundation and competence, **what data appears to be missing**?

2      **None.** Bryant's 2000 Desktop contains Bratz-related data from 2001, and

3  that data was produced long ago.[21] Mattel offers no hint as to what data it claims

4  isn't there. And as for the laptop, how could data from 2000 and 2001 be

5  "missing" from a laptop that didn't even exist then? The 2002 laptop wasn't even

6  purchased until late 2001 or early 2002.[22] Not surprisingly, the Bratz-related

7  documents on that computer date from the time of its purchase forward.

8      Finally, the entire proposition that Mr. Bryant deliberately deleted material

9  from the 2000 Desktop in order to thwart Mattel's discovery efforts makes no

10  sense. Remember that, at the time this lawsuit was filed, Mr. Bryant had long

11  since given that computer away to his niece.[23] It was not in his possession or

12  control, and was not subject to Mattel's discovery requests. And yet **before**

13  **receiving any discovery requests** he and his counsel deliberately went and got

14  that computer back from his niece and created a complete forensic record of its

15  contents, thus preserving that evidence. Why would someone intent on hiding

16  evidence do such a thing?

17      Mattel presents no evidence that Mr. Bryant has **ever** destroyed, or failed to

18  preserve, **any** relevant evidence in this matter. Its argument rests entirely on the

19  name of a piece of software installed two years before this lawsuit was filed. This

20  Court must look past the house of rhetorical cards at the facts, and there are no

21  facts supporting a claim of spoliation.

22

23

24  [21] Page Decl. ¶ 16, Ex. O (screen image of 2000 Desktop "My Documents" folder); *id.* ¶ 17, Ex. P ("Bratz Logo4" from the "My Documents" folder). *See also* Grant Decl. ¶ 7, Ex. 6 (Oct. 21, 2000 Circuit City receipt). Mattel may question why there are fewer Bratz-related graphical files

25  from 2000-2001 than from later years, and suggest spoliation as an answer. The truth is more

26  prosaic: Until Mr. Bryant moved back to Missouri in February 2002, he had no need to scan and email his designs to MGA.

27  [22] Page Decl. ¶ 5, Ex. D (Bryant Preservation Decl. ¶ 10).

28  [23] Page Decl. ¶ 5, Ex. D (Bryant Preservation Decl. ¶ 9).

7

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410889.02

## 2.    There is no inconsistency regarding Bryant's 2004 through 2007 computers

After ten pages of fighting the last war, Mattel devotes a scant 4 paragraphs to discussing the computers that are actually at issue in this motion.[24]  In that discussion, Mattel claims that, in his most recent deposition, "Bryant's story dramatically changed yet again."[25]  But the Court will search in vain for that drama; Bryant's January 15, 2008 Preservation Affidavit and his January 23 deposition testimony are both identical and correct.  As set forth in the Preservation Declaration, there are three computers (which Mattel calls the "2004 Computers") that Bryant acquired after his original computers were imaged in July 2004.[26]  And as Mattel notes in its Motion, on May 15, 2007 this Court ordered that information related to unreleased Bratz products (including electronic information contained on those three computers) would need to be produced at the end of June, 2007.[27]  Information from the three 2004 Computers was forensically preserved in or around May 2007, and documents from those computers were produced on the schedule set by this Court.[28]

Finally, as set forth in both the Preservation Declaration and Bryant's deposition, Bryant's counsel recently searched Bryant's current computers (which Mattel has labeled the "2007 Computers"), copied relevant documents from those computers, and reviewed and produced them.[29]  The "contradiction" Mattel

---

[24] Mot. at 11-12.

[25] Id. at 11.

[26] Mot. at 12.  See also, Page Decl. ¶ 5, Ex. D (Bryant Preservation Decl. ¶ 12).

[27] Page Decl. ¶ 18, Ex. Q (Order Modifying the Protective Order dated May 15, 2005 at p. 12). The date of production was delayed, so that the products would be released before information related to them was produced.

[28] Between the collection and the production of those documents, Bryant changed counsel.  The documents were collected and reviewed by Littler Mendelson, and turned over to Keker & Van Nest, which produced them on June 28, 2007. Page Decl. ¶ 19, Ex. R (Ltr from Trinidad to Zeller dated June 28, 2007).  Keker & Van Nest then conducted its own review of the same three computers, and produced additional (largely redundant) documents on January 18, 2008.  Page Decl. ¶ 8, Ex. G (Letter from Trinidad to Zeller dated January 18, 2008).

[29] Page Decl. ¶ 5, Ex. D (Bryant Preservation Decl. ¶¶ 8, 12); id. ¶ 13, Ex. L (Bryant Depo. Vol.

8

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS CASE NO. CV 04-09049 SGL (RNBx)

410889.02

1   imagines is based entirely on Mattel's own misunderstanding, confusing Bryant's

2   deposition and Preservation Declaration testimony regarding the January 2008

3   collection of data from the "2007 Computers" with his Preservation Declaration

4   concerning the March 2007 imaging of the "2004 Computers."[30]   The former was

5   not a complete imaging, while the latter was, both exactly as Bryant testified and

6   declared.

7         This is the entirely ordinary stuff of discovery.  At the outset of discovery,

8   and again in mid-case, and yet again at the conclusion of discovery, Bryant has

9   made each of his computers available to counsel.  Counsel, in turn, has copied and

10  preserved all possibly relevant data, has reviewed that data, and has produced

11  responsive documents.  This is precisely what we are supposed to do, and far more

12  than Mattel has done.  We are puzzled at the paucity of Mattel's production in

13  many areas.  For example, recent testimony establishes that literally *scores* of

14  Mattel employees were aware of rampant moonlighting, and were aware as early as

15  2001 that Carter Bryant was one of the creators of Bratz.[31]  And yet, we have no

16  email on those subjects.  Surely someone at Mattel said something on those

17  subjects.  Does that entitle us, with only that suspicion, to demand that Mattel

18  produce to us for unfettered examination the contents of every computer and hard

19  drive at Mattel, so that we can poke around and indulge our suspicions?

20        Of course not.  But that is exactly what Mattel seeks here.  Based on

21  knowingly false and entirely unsupported innuendo, and arguing little more than

22  "inquiring minds want to know," Mattel asks this Court to presume that counsel

23

24  IV Tr. at 758:10-759:9); *see id.* ¶ 8, Ex. G (Letter from Trinidad to Zeller dated Jan. 18, 2008).

25  [30] The testimony to which Mattel cites as relating to the March 2007 images is self-evidently about the January 2008 collection of data from the 2007 computers by Keker & Van Nest attorney Audrey Walton-Hadlock.  *Compare* Grant Decl. Exh. 28 (Bryant depo: "when Audrey

26  Hadlock had come out to my home . . . ") *with*  Bryant Preservation Decl. ¶8 ("On January 2 and 3, 2008, Audrey Walton-Hadlock of Keker & Van Nest visited my home and office and

27  conducted another search for any responsive objects and documents.").

28  [31] Page Decl. ¶ 20, Ex. S (Deposition of Elise Cloonan taken on December 14, 2007) Tr. at 102:12-104:1).

9

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410889.02

1    has failed to review and produce relevant documents, and to turn that review over

2    to our opponents.

3        As this Court has already ruled once, "Rule 34 was not intended to authorize

4    the routine production of a party's electronic devices."[32] As the Committee Note

5    to Rule 34 makes clear, the right to discover "electronically stored *information* is

6    not meant tot create a routine right of direct access to a party's electronic

7    information system . . . . Courts should guard against undue intrusivness resulting

8    from inspection or testing of such systems." Fed. R. Civ. P. 34(a)(1), 2006 Adv.

9    Comm. Notes.  Thus courts require that a requesting party prove improper conduct

10   before compelling production of a computer hard drive because hard drives "often

11   contain information that is not relevant to the claims and defenses pleading in a

12   complaint, or that is subject to a claim of privilege, such as attorney-client, work

13   product, trademark or copyright privileges." James W. Moore et al., *Moore's

14   Federal Practice* §37A.44[3][b] (3d. ed. 2007); *see also Playboy Enterprises v.

15   Welles*, 60 F. Supp. 2d 1050, 1053-4 (S.D. Cal. 1999) (requiring production only

16   on proof of deletion of relevant data, and ordering review of all recovered

17   information by producing party).  Mattel has made no such showing concerning

18   these computers, and is therefore not entitle to seize and inspect them.

19       The invasion Mattel seeks would be outrageous in any circumstances.  It is

20   particularly so in this case, because Mattel seeks to seize and inspect Mr. Bryant's

21   electronic data from *years* after the relevant events, and during the pendency of

22   this action.  That data will include all of Mr. Bryant's privileged communications

23   with his litigation counsel, as well as *current* design work for Mattel's main

24   competitor and every byte of his electronic personal life.  Mattel has made no

25   showing that documents from 2004, 2005, 2006, 2007, or 2008 could possibly

26   inform the question whether Bryant created Bratz in 1998 (as it is clear he did) or

27

28   [32]*See* Note 1, *supra*.

10

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410889.02

1  in 1999 (as Mattel claims), much less a showing that Bryant's counsel failed to

2  review that data and produce any that was relevant.  Balanced against the obvious

3  privacy and privilege issues, Mattel's showing fails miserably.

4        Mattel also makes no suggestion as to how Mr. Bryant's privileges and

5  privacy rights are to be preserved while they seize all of his computers.

6  Presumably, a forensic expert would (once again) copy all of the files, which

7  Bryant's own counsel would (once again) review for privilege before turning them

8  over to Matttel.  It is far too late in the game to start that lengthy process, and

9  Mattel offers no reason why it has waited nine months before bringing this motion

10 after the close of discovery.[33]

11       Mattel makes no showing of cause for this extraordinary invasion of Mr.

12 Bryant's privacy and privilege.  This Court must deny Mattel's motion.[34]

13 Dated:  February 7, 2008                    KEKER & VAN NEST, LLP

14

15

16                              By: /s/ Michael H. Page
                                   MICHAEL H. PAGE
17                                 Attorneys for Plaintiff
                                   CARTER BRYANT
18

19

20

21

22

23

24

25 ────────────────────
   [33] Notice of Motion at 3 (parties met and conferred on April 2, 2007).
26 [34] Mattel, as always, seeks sanctions.  We oppose that request as unwarranted.

27

28

                                    11

410889.02

Case 2:04-cv-09049-DOC-RNB   Document 3517   Filed 05/08/08   Page 32 of 52   Page ID
#:60594
Case 2:04-cv-09049-SGL-RNB      Document 1980      Filed 02/07/2008      Page 15 of 19

# ATTACHMENT


# [PROPOSED] ORDER

410924.01

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   710 Sansome Street
6  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
7  Facsimile:  (415) 397-7188

8  Attorneys for Plaintiff
   CARTER BRYANT

9

10                 UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12                      EASTERN DIVISION

13

14  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-
                         Plaintiff,      2727)
15
16       v.                              **DISCOVERY MATTER**

17  MATTEL, INC. a Delaware              [To Be Heard by Discovery Master
    Corporation,                         Hon. Edward Infante (Ret.)]
18                       Defendant.
                                         **[PROPOSED] ORDER DENYING
19                                       MATTEL INC.'S MOTION FOR AN
                                         ORDER ENFORCING COURT'S
20                                       JANUARY 25, 2007 ORDER
                                         COMPELLING BRYANT TO
21                                       PRODUCE COMPUTER HARD
                                         DRIVES AND FOR SANCTIONS**
22

23                                       Date:      TBA
24  CONSOLIDATED WITH MATTEL,            Time:      TBA
    INC., v. BRYANT and MGA              Date Comp. Filed:  April 13, 2005
25  ENTERTAINMENT, INC. v.               Discovery Cut-Off:  Jan. 28, 2008
    MATTEL, INC.                         Trial Date:  May 27, 2008
26

27

28

─────────────────────────────────────────────────────────
       [PROPOSED] ORDER DENYING MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S
   JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND
                                    FOR SANCTIONS
                            CASE NO. CV 04-09049 SGL (RNBx)

410952.01

**[PROPOSED] ORDER**

1  
2          The Court has carefully considered the parties' submissions concerning  
3  Mattel's Motion for an Order Enforcing Court's January 25, 2007 Order  
4  Compelling Bryant to Produce Computer Hard Drives and for Sanctions.  Mattel  
5  has not shown cause why Bryant should be required to produce his hard drives and  
6  computer forensic images.  Accordingly, Mattel's motion is DENIED.  
7  
8          IT IS SO ORDERED.  
9  Dated:  
10  
11                                        By: _____  
12                                              HON. EDWARD A. INFANTE  
                                                 Discovery Master  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

1

[PROPOSED] ORDER DENYING MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S
JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND
FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410952.01

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On February 7, 2008, I served the following document(s):

**CARTER BRYANT'S OPPOSITION TO MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS;**

**[PUBLIC REDACTED] DECLARATION OF MICHAEL H. PAGE IN SUPPORT OF CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS;**

**[PROPOSED] ORDER DENYING MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS.**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery;

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

Case 2:04-cv-09049-DOC-RNB   Document 3517   Filed 05/08/08   Page 36 of 52   Page ID
#:60598
Case 2:04-cv-09049-SGL-RNB    Document 1980    Filed 02/07/2008    Page 19 of 19

| | |
|---|---|
| 1 | Hon. Edward A. Infante |
| 2 | JAMS |
| | Two Embarcadero Center, Suite |
| 3 | 1500 |
| | San Francisco, CA 94111 |
| 4 | Tel:   415/774-2649 |
| 5 | Fax:   415/982-5287 |
| | Email:      schan@jamsadr.com |
| 6 | |

Hon. Edward A. Infante
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Tel:   415/774-2649
Fax:   415/982-5287
Email:      schan@jamsadr.com

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges,
LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
Tel:   213/443-3000
Fax:   213/443-3100
Email:
        johnquinn@quinnemanuel.com
Email:
        michaelzeller@quinnemanuel.com

Thomas J. Nolan
Skadden Arps Slate Meagher &
Flom
300 South Grand Avenue, Suite
3400
Los Angeles, CA 90071-3144
Tel:   213/687-5000
Fax:   213/687-5600
Email: tnolan@skadden.com

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
Tel:   213/613-4660
Fax:   213/613-4656
Email :      acote@obsklaw.com

        Executed on February 7, 2008, at San Francisco, California.
I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.


KAY SHIDA

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

# EXHIBIT B

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   710 Sansome Street
6  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
7  Facsimile:  (415) 397-7188

8  Attorneys for Plaintiff
   CARTER BRYANT
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                  EASTERN DIVISION

13

14
   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
15                                       (consolidated with CV 04-9059 & 05-
                       Plaintiff,        2727
16
          v.                             **DISCOVERY MATTER**
17                                       [To Be Heard by Discovery Master
   MATTEL, INC. a Delaware               Hon. Edward Infante (Ret.)]
18 Corporation,
                                         **CARTER BRYANT'S SURREPLY**
19                     Defendant.        **RE:  MATTEL INC.'S MOTION**
                                         **FOR AN ORDER ENFORCING**
20                                       **COURT'S JANUARY 25, 2007**
   CONSOLIDATED WITH MATTEL,             **ORDER COMPELLING BRYANT**
21 INC., v. BRYANT and MGA               **TO PRODUCE COMPUTER HARD**
   ENTERTAINMENT, INC. v.                **DRIVES AND FOR SANCTIONS**
22 MATTEL, INC.
                                         Judge:     Hon. Stephen G. Larson
23
                                         Date Comp. Filed:  April 13, 2005
24
                                         Discovery Cut-Off:  Jan. 28, 2008
25                                       Pre-Trial Conference:  May 5, 2008
26                                       Trial Date:  May 27, 2008

27

28

BRYANT'S SURREPLY RE:  MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................2

    A.   How—and *when*--Evidence Eliminator works. ....................................2

    B.   Mr. Bryant's Desktop ..............................................................................4

        1.   EE was not used on the Desktop after July 29, 2002. .................4

        2.   The revised USER.DAT file is a red herring..............................5

    C.   Mr. Bryant's Laptop ................................................................................6

        1.   Evidence Eliminator was not used on July 14, 2004.................6

        2.   Evidence Eliminator did not delete any files on July
             12, 2004........................................................................................8

III. CONCLUSION ..................................................................................................10

i

BRYANT'S SURREPLY RE:  MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

## I.    INTRODUCTION

Mattel's Reply Brief repeats dramatic and wide ranging allegations of spoliation by Mr. Bryant, asserting that in July 2004 Mr. Bryant deliberately erased thousands of files from two computers he owned shortly after leaving his job at Mattel. On that basis, Mattel asserts, this court should order Mr. Bryant to turn over five *different* computers, none of which existed any time close to the relevant events in this case, for unsupervised forensic analysis.

Mattel's argument has many problems, including the lack of any argument pertaining to the computers it actually seeks to inspect. Mattel's argument is instead directed entirely to two computers it has *already* inspected. But the most fundamental problem with Mattel's argument is that its claims of spoliation are flatly and demonstrably false. As set forth below, Mattel and its expert Mark Menz have *no evidence that a single file was ever deleted by Mr. Bryant from either computer.* Their claims to the contrary are based on fundamental misunderstandings of the operation of the Evidence Eliminator ("EE") program, compounded by counsel's overstatement of those already-incorrect findings.

Long before this case began, Evidence Eliminator was installed on two of Mr. Bryant's computers: the desktop that he purchased the day after he left Mattel, and the laptop he purchased more than a year later.[1] Mattel now claims that Mr. Bryant deliberately erased data from both of those machines in July 2004. Mattel is wrong. As regards the desktop computer, we can go farther than simply saying that Mattel has no evidence of spoliation: we can *affirmatively* state, based on the forensic record available to (but misunderstood by) Mattel's expert, that *Evidence Eliminator was not used in July 2004, or at any time after July 29, 2002.*

---

[1] Mattel and its expert give short shrift to Bryant's explanation for his use of Evidence Eliminator: to eliminate spyware and make his computer run faster. They claim Evidence Eliminator is never marketed for this purpose. But it is: as Mr. Menz admits in deposition, the *first* feature listed in EE's marketing materials is "speeds up your PC!." Deposition of Mark ("Menz Depo."), Page Decl. Exh. 2, at 87:16-89:16.

1

BRYANT'S SURREPLY RE: MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

1    As regards the laptop computer, which did not even exist until more than a
2  year after Mr. Bryant left Mattel, Mattel's evidence is similarly wrong. Mattel's
3  brief claims that there is evidence that *Mr. Bryant* deleted more that 9,400 *files* on
4  *July 12 and 14, 2004.* The evidence, however, shows no such thing. Instead, it
5  shows only that a total of 9,400 files were deleted from Mr. Bryant's laptop, either
6  by a user or (as is more frequent) by the normal actions of the operating system or
7  applications, at some time between the purchase of the computer in November
8  2001 and July 2004, and that remnants of the *filenames* of those files were
9  automatically overwritten by EE on July 12, 2004. EE was not used *at all* on July
10  14, 2004.

11    The technical details of these findings are admittedly hard slogging for non-
12  technicians, and are set out in full detail in the accompanying expert report of Gary
13  Funck. But they are crucial, as they conclusively rebut a serious charge of
14  spoliation that has been flung about repeatedly and irresponsibly by Mattel in this
15  case. Mattel and its expert are simply wrong, fundamentally and repeatedly, and it
16  is important that the court understand the ways in which they are wrong, as
17  summarized below.

18
19                    **II.    ARGUMENT**
20  **A.    How—and *when*--Evidence Eliminator works.**
21    Evidence Eliminator is a publicly-available utility that performs a number of
22  functions. It can clean out the history of websites a user has visited. It can clean
23  out internet "cookies." It can clean out deleted email. It can find remnants of
24  previously-deleted files and replaces those remnants with zeroes or random data. It
25  can also be set to erase any file contained in any directory the user specifies. As
26  explained below, which of these functions it performs, and when, is determined by
27  the user's choices recorded in EE's configuration files. Expert Report of Gary
28  Funck ("Funck Rep."), at 10-12, Declaration of Michael H. Page ISO Sur-reply

2

BRYANT'S SURREPLY RE: MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

1    ("Page Decl.") Exh. 1.

2         Once EE is installed on a user's computer, it "runs," in a trivial sense, every

3    single time the computer is turned on and the user logs in. But at that time, it

4    doesn't actually do anything. Instead, it simply places an icon in the computer's

5    system tray (the area in the lower left of a Windows screen) and then waits

6    patiently for instructions. Funck Rep., at 1, 12-13; Menz Depo., at 11:25-12:9;

7    76:15-77:13.

8         EE only *does* anything if the user subsequently invokes it, by (for example)

9    clicking on the icon and selecting "Safe Shutdown." Unlike a normal Windows

10   "shutdown," EE's Safe Shutdown causes EE to perform its functions before

11   shutting down the computer. *Which* functions it performs is determined by EE's

12   config.dat file, which contains the settings the user has selected either at

13   installation or later. Mr. Funck has examined the config.dat files from both of Mr.

14   Mr. Bryant's computers. The settings in both are identical, and are unchanged

15   from EE's default settings on installation (with one exception not relevant here).[2]

16   Funck Rep., at 10-14; Menz Depo., at 21:23-23:6. Specifically, in neither

17   config.dat file is EE set to delete *any* files, as Mr. Menz confirmed in deposition.

18   Menz Depo., at 16:16-18:6.

19        If the user does not perform a Safe Shutdown or Safe Restart, but instead

20   simply shuts down the computer, EE does *nothing*. The program will have "run,"

21   in the sense that its code began executing and it placed an icon in the system tray,

22   but it will have performed no functions. Funck Rep., at 4, 5, 12-13.[3]

23

24

_____

25   [2] On installation, EE's default is to not clear "swap space," but the installation process
     recommends that the user check that option, which Mr. Bryant did on both machines.
26   Funck Report at 10-11 and Exh. B, at Fig. B-4,5. Swap space is used for virtual memory,
     and is not at issue here.

27   [3] Mr. Menz testified at deposition that he believes EE performs certain cleanup functions
     on internet files and cookies while running in background. Menz Dep., at 7:25-9:1. He is
28   mistaken.

BRYANT'S SURREPLY RE: MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

**B.     Mr. Bryant's Desktop**

      **1.     EE was not used on the Desktop after July 29, 2002.**

      Mattel claims that Mr. Bryant "used [EE] once on his Desktop resulting in an undetermined loss of data the day before the Desktop was imaged." Reply Br., at 1. ***This is flatly, incontrovertibly, and demonstrably false.*** Mr. Bryant did not use EE on his Desktop in July 2004, or at any time since *at least* July 29, 2002. As set forth in Mr. Funck's report (Funck Rep., at 24-27), we know this as follows:

      Each time a file is created, accessed, or modified, the Windows operating system records the date and time.[4] The EE config.dat file on the Desktop was both created and last modified on July 24, 2002, which means that the configuration of EE was set when it was installed and was never changed thereafter. By examining the settings in that file, we can therefore determine what functions EE would have performed each and every time it was used.

      One of those functions is to clean out the IE Cache, which is the cache of previously-visited websites Internet Explorer keeps. Each time EE cleans out that cache, it also erases Internet Explorer's index.dat file, which contains the index of the IE Cache. The next time IE is used, it creates a new index.dat. Thus, by checking the creation date of the index.dat file on the Desktop, we can establish the most recent date on which EE was used. On the Desktop, the creation date of the index.dat file is July 29, 2002, which establishes that EE was never used on that computer after that day, five days after Mr. Bryant first installed it and nearly two years before this lawsuit was filed.

      As Mr. Menz admitted in deposition, there is no contrary evidence. The sole basis for his opinion that EE was used on Mr. Bryant's Desktop is the fact that the executable file for EE was accessed on July 13, 2004. But as noted above, this happens every time the computer is turned on, and means nothing more than that

---

[4] Windows ME, which was installed on the Desktop, records only the date of last access, but both the date and time of last modification and creation.

413384.01

1  EE placed its icon in the system tray.  We know conclusively that EE was not used
2  on that date, or any time in the prior two years.[5]

3  **2.    The revised USER.DAT file is a red herring.**

4       Mattel next argues that "Bryant breached his duty to preserve Bratz-related
5  electronic evidence on or about April 28, 2004—the day after Mattel filed its
6  original complaint and the day before Bryant was served" by allegedly creating a
7  new USER.DAT directory.  Reply Br., at 9.  This is utter nonsense, for multiple
8  reasons.

9       *First*, Mattel does not explain—because it cannot—how the USER
10 configuration file of a computer could contain "Bratz-related" electronic evidence.
11 The user.dat file is an internal file of the Windows operating system that contains
12 various bits of information about the configuration of the computer.  Funck Rep.,
13 at 28-31.

14      *Second*, there is no reason to believe that *anyone* created a new USER
15 directory.  Windows ME—the version of Windows installed on the Desktop—
16 creates new USER directories automatically in response to errors.  That is likely
17 what occurred here.  *Id.*

18      *Third*, even if someone had deliberately created a new USER directory, no
19 data would have been lost, because there is a *backup* of the previous USER.DAT
20 directory from only days earlier.  *Id.* at 30-31.  Mr. Menz at deposition stated that
21 he might have looked for one, but that he failed to find one.

22      And *fourth*, Mattel's argument ignores the most important fact:  in April
23 2004, ***Mr. Bryant didn't own the Desktop!***  The uncontradicted testimony of both
24 Mr. Bryant and his niece Brooke Gilbert is that he gave the computer to her in
25 October or November 2003.  Mattel simply ignores that testimony.  But the court

26

27 _____
   [5] This further confirmed by the fact that EE did not access other configuration files on
28 that date; files it accesses each time it performs any functions.  Funck Rep., at 27; Menz Depo., at 67:6-8.

5
BRYANT'S SURREPLY RE:  MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

1   need not rely solely on that uncontroverted testimony.  It can confirm that, in April

2   2004, the Desktop was being used not by the childless Mr. Bryant, but by his niece

3   and young grandniece:  In the weeks before and after April 2004, the programs

4   being installed on that computer were "Reader Rabbit Kindergarten," "Reader

5   Rabbit Reading Age 6-9," and "Reader Rabbit Math Age 6-9."  Funck Rep., at 30.

6   **C.    Mr. Bryant's Laptop**

7          Mattel's allegations concerning Mr. Bryant's Laptop are also wrong.  Mattel

8   claims that Mr. Bryant "ran Evidence Eliminator on his Laptop two days before it

9   was imaged and again the day it was imaged, with the result that 9,400+ files

10   and/or folders were forever deleted."  Reply Br., at 1.

11          This is wrong in multiple ways.  *First*, EE was not used *at all* on July 14,

12   2004.  Mr. Menz's conclusion to the contrary is based on fundamental mistakes

13   concerning the operation of EE.  *Second*, EE did not delete any *files* on July 12.

14   Again Mattel's claim is based on fundamental misunderstandings of how EE

15   works.  Instead, the most that can be said is that EE automatically overwrote

16   *filenames* on that date, and that those filenames corresponded to unknown files that

17   could have been deleted at any time, by either a user or the operating system,

18   between the time the computer was first used in 2001 and July 2004.

19          **1.    Evidence Eliminator was not used on July 14, 2004.**

20          Mattel's assertion that EE was used by Mr. Bryant on July 14, 2004 is once

21   again simply wrong.  Mr. Menz claims both that EE was run on that date, and that

22   "[c]hanges were made to the basic configuration of the program" at that time.

23   Both conclusions are errors, based on Mr. Menz's lack of understanding of the

24   operation of EE.

25          As noted above, EE "runs" each time the user logs in, in the trivial sense that

26   it places an icon in the system tray and then performs no functions.  But Mr. Menz

27   makes the incorrect assumption that, because the modification date of the EE

28   config.dat was changed at 3:13 pm on July 14, Mr. Bryant must have used EE at

413384.01

1    that time, and made changes to EE's settings.  Mr. Menz is wrong because Mr.

2    Menz does not understand how EE works.

3         As set forth in detail in Mr. Funck's report,[6] EE writes data to its config.dat

4    file (and thus changes its modification date) ***every time any user logs in.***

5    Specifically, EE writes the current version number of the program into the

6    config.dat file each time.  Thus the fact that the config.dat file was modified

7    indicates only that the computer was turned on, not that EE was used.[7]

8         That error by Mr. Menz constitutes the ***only*** evidence on which he relies for

9    his mistaken conclusion that EE was used on July 14, 2004:

10        Q.  Other than the fact that the config.dat last written

11        date is on 7/14, do you have ***any*** evidence that Evidence
        Eliminator performed ***any*** functions on this computer on July

12        14th.

13        A.  The – ***no***.

14    Menz Depo. at 70:17-22 (emphasis added).

15         Moreover, we know who was operating the Laptop computer on July 14,

16    2004, and it was not Mr. Bryant.  As Mattel notes, the forensic image of the Laptop

17    from which all of this data comes was made by a forensic technician named Lee

18    Curtis on that date.  Specifically, he made that image at 3:30 pm that day.  And we

19    also know that the computer was booted only once on that day, at 3:12 pm.  And

20    we also know that a "dongle" for connecting the Laptop to the technician's own

21    computer was installed at 3:25.  The sequence is as follows:

22        3:12 pm      Technician starts computer.

23        3:13 pm      EE automatically updates its config.dat on startup

24        3:25 pm      Technician connects dongle

25        3:29 pm      Technician takes forensic image

26

[6] Funck Rep., at 6; 21-22.

27   [7] Mr. Menz was not aware of this, and admitted he had done nothing to determine

28   whether EE changes the modification date each time it launches.  Menz Depo., at 67:13-70:22.

BRYANT'S SURREPLY RE:  MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

1    Mr. Menz struggled mightily to avoid these facts at deposition, speculating

2    that perhaps (a) the clock on either the technician's computer or the Laptop was

3    wrong *and* (b) the technician had removed the hard drive from the Laptop and

4    imaged it without turning on the Laptop, or by booting the laptop from another

5    disk.  Menz Depo., at 73:7-75:20.  But we know this is not the case, because

6    (apparently unknown to Mr. Menz) an EnCase dongle was connected to the

7    Laptop, which was running under its own operating system and recorded that

8    connection, minutes before the image was taken.  Funck Rep., at 23.

9    In short, EE was never used by anyone on July 14, and the Laptop was not

10   even being used by Mr. Bryant when it was turned on that day.

11   **2.    Evidence Eliminator did not delete any files on July 12, 2004.**

12   Finally, Mattel claims that Mr. Bryant used EE to delete "9,400+ files and/or

13   folders" on July 24, 2004, files which Mattel describes as "clearly relevant

14   documents."  Reply Br., at 1, 2.  Once again, Mattel is wrong, based on yet another

15   fundamental misunderstanding of how EE works.

16   In its default mode (and as configured on Mr. Bryant's computers) EE

17   searches the computer's hard drive for evidence of previously-deleted files in what

18   is known as "unallocated space" (*i.e.*, space that is not currently being used).

19   When it locates remnants of such files, it goes to the computer's "Master File

20   Table" ("MFT") and replaces the name corresponding to that space with gibberish.

21   The 9,400+ filenames that Mr. Menz identifies are entries in the MFT on the

22   Laptop.  EE does not *delete* any *files*:  it merely overwrites *filenames*

23   corresponding to files that have *already* been deleted.  Funck Rep., at 16-19.

24   More importantly, EE re-overwrites *every* such filename *every time it runs*,

25   regardless whether that filename was previously overwritten once or a hundred

26   times.  Thus, suppose one runs EE on Day 1, and it overwrites 1000 filenames with

27   gibberish (and dates that gibberish as having been written on Day 1).  If one then

28   runs EE again on Day 100, without deleting any other files, all 1000 filenames

1    (which already contain gibberish) will be replaced with *new* gibberish dated on

2    Day 100. *Id.*

3         As a result, the fact that EE automatically overwrote 9,400+ filenames on

4    July 12, 2004 tells us nothing about when the files corresponding to those

5    filenames were either created or deleted: We know only that they were deleted

6    sometime during the entire life of the computer. Funck Rep., at 2-4; 17-19. When

7    pressed, Mattel's own expert conceded that he could not say when any of the files

8    were deleted. Menz Depo., at 39:23-41:25.

9         Moreover, the evidence adduced by Mattel tells us nothing about how the

10   underlying files were deleted. As Mr. Funck explains, thousands of files are

11   automatically created and deleted, without the user's knowledge or intervention,

12   during normal operation of a personal computer. Every website one visits creates

13   multiple files on one's computer (one for every separate graphic and element on

14   every page), which are later automatically deleted. Every time one edits a Word

15   file, a temporary file is created, and then deleted. Every internet "cookie," and

16   every internet "favorite," is its own file. That 9,400 files were deleted during the

17   lifetime of Mr. Bryant's Laptop is evidence, if anything, only of the fact that the

18   computer was only lightly used. Funck Rep., at 19-20; *see also* Menz Depo., at

19   44:11-45:14; 54:9-16.

20        In short, there is no evidence that Mr. Bryant *ever* deleted *a single file* from

21   his Laptop, much less that he deleted any responsive documents after the filing of

22   this lawsuit. Mr. Menz admitted this in deposition:

23            Q.  So the underlying files that correspond to the entries
             in this exhibit could have been created and deleted at any time
24           between when the computer -- when the operating system was
             loaded on the computer and the date that Evidence Eliminator
25           was run, correct?

26

27            A.  That is one possibility, yes.

28            Q.  Okay. So let's go back to my hypothetical.

                                        9

413384.01

A.  Okay.

Q.  Right?  Which is Mr. Bryant buys his computer, uses it for a while, installs Evidence Eliminator on the 10th of September 2002, runs it every once in a while.  On July 12th of 2004, he turns on his computer, which causes Evidence Eliminator to run in background.  He then reads his e-mail, he does a safe shutdown and Evidence Eliminator then proceeds to find every deleted file name in the MFT and overwrite it.  **And at no point in that string has Mr. Bryant ever dragged a single file to the trash bin.**
**Is there any evidence that you have to disprove that hypothetical?**

A.  **Not that I've seen to this point in time.**

Menz Depo. 55:5-56:04 (emphasis added).

## III.    CONCLUSION

Mattel's motion seeks unfettered access to five of Mr. Bryant's personal computers—computers that did not even exist until years after the relevant events in this case[8]—based on allegations of spoliation of data on two different computers that, although older, also postdate the relevant timeframe.  But those allegations of spoliation are baseless:  as to the Desktop (the computer used closest in time to the relevant dates), there is affirmative proof that Evidence Eliminator was *never* used.  And as to the Laptop, there is no evidence that any files—let alone responsive documents—were ever deleted by Mr. Bryant.

Based on wildly inaccurate "expert" analysis, combined with deliberate misrepresentations of that analysis, Mattel now asks this court to allow it to seize and examine every one of Mr. Bryant's other computers, even though they date

---

[8] This case, despite its Dickensian excesses, is at root simple:  Did Mr. Bryant create Bratz in 1998 or 1999, what are the terms of his 1999-2000 employment, and what were the circumstances surrounding his exit from Mattel in the fall of 2000?  The Desktop postdates that departure by a day.  The Laptop postdates it by over a year.  But the five computers at issue in *this* motion were used from 2004 to the present, postdating the events at issue by between 4 and 8 years.

10

413384.01

1  from years after any relevant events.  Mattel makes no effort to explain what

2  relevant evidence it expects to find there.  Nor can it; as set forth in Mr. Bryant's

3  Opposition Brief, each of Mr. Bryant's computers has already been reviewed for

4  responsive documents, and all responsive documents have been produced.  Strident

5  and irresponsible accusations of "spoliation" cannot justified this wholesale fishing

6  expedition.  Mattel's motion should be denied.

7  Dated:  March 17, 2008                    KEKER & VAN NEST, LLP

8

9

10                              By:  /s/ Michael H. Page
                                   MICHAEL H. PAGE
11                                 Attorneys for Plaintiff
                                   CARTER BRYANT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

413384.01

1

PROOF OF SERVICE

2

I am employed in the City and County of San Francisco, State of California

3 in the office of a member of the bar of this court at whose direction the following
service was made. I am over the age of eighteen years and not a party to the within

4 action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San

5 Francisco, California 94111.

6 On March 17, 2008, I served the following document(s):

7 **CARTER BRYANT'S SURREPLY RE: MATTEL INC.'S MOTION FOR

8 AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES

9 AND FOR SANCTIONS**

10

11 by regular **UNITED STATES MAIL** by placing a true and correct copy in a
sealed envelope addressed as shown below. I am readily familiar with the practice

12 of Keker & Van Nest, LLP for collection and processing of correspondence for

13 mailing. According to that practice, items are deposited with the United States
Postal Service at San Francisco, California on that same day with postage thereon

14 fully prepaid. I am aware that, on motion of the party served, service is presumed

15 invalid if the postal cancellation date or the postage meter date is more than one
day after the date of deposit for mailing stated in this affidavit; and

16

17 by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and
correct copy scanned into an electronic file in Adobe "pdf" format. The

18 transmission was reported as complete and without error.

19

20 Hon. Edward A. Infante  (via Fed Ex)        John B. Quinn
JAMS                                          Michael T. Zeller

21 Two Embarcadero Center, Suite 1500           Quinn Emanuel Urquhart Oliver &
San Francisco, CA 94111                        Hedges, LLP

22 Tel:   415/774-2649                          865 South Figueroa Street, 10th Floor

23 Fax:  415/982-5287                           Los Angeles, CA  90017-2543
Email:       schan@jamsadr.com                 Tel:   213/443-3000

24                                              Fax:  213/443-3100

25                                              Email:
                                                        johnquinn@quinnemanuel.com

26                                              Email:
                                                        michaelzeller@quinnemanuel.com

27

28

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

1
2
3
4
5
6
7

Thomas J. Nolan
Skadden Arps Slate Meagher &
Flom
300 South Grand Avenue, Suite
3400
Los Angeles, CA 90071-3144
Tel:   213/687-5000
Fax:   213/687-5600
Email: tnolan@skadden.com

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
Tel:   213/613-4660
Fax:   213/613-4656
Email :      acote@obsklaw.com

8
9
10

Executed on March 17, 2008, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California
that the above is true and correct.

11
12
13
14

Julie A. Selby

15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)