THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, 38th Floor
San Francisco, CA 94111
Tel.: (415) 984-6400/Fax: (415) 984-2698

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

UNITED STATED DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>MGA PARTIES' OPPOSITION TO MATTEL, INC.'S APPEAL OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER DENYING MATTEL'S APPLICATION TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS<br><br>Date: May 12, 2008<br>Time: 10:00 a.m.<br>Judge: Hon. Stephen G. Larson |

## I. PRELIMINARY STATEMENT

On February 4, 2008, the Court heard and decided *in full* Mattel's Application to Enforce Court Orders Compelling Production of Tangible Items (the "Application"). Dissatisfied that the Court only granted its Application in part, Mattel re-noticed the Application with the Discovery Master. On April 11, 2008, the Discovery Master denied the Application because the transcript of the Court's February 4, 2008 hearing and the Court's February 4, 2008 Order plainly established that this Court had already decided the Application in its entirety and had not referred any portion of the Application to the Discovery Master for resolution. (Hutnyan Decl. (Docket No. 3233-4), Ex. 6 (4/11/08 Order) at 2.)

Mattel's appeal of the Discovery Master's April 11, 2008 Order is without merit and finds no support in the record. Indeed, Mattel's appeal essentially asks this Court to ignore what the Court said and ordered with respect to Mattel's Application and instead follow the Court's rulings on other unrelated applications. The Discovery Master rejected this absurd request, and the Court should as well.

The Court expressly and unequivocally decided Mattel's Application in its entirety. There is no ambiguity as to how the Court ruled on Mattel's Application—the Court granted the Application in part and did not refer any portion of the Application to the Discovery Master. (Hutnyan Decl., Ex. 3 (2/4/08 Order) at 4.) The Discovery Master did not find, and Mattel has not identified, any statement by the Court directing that portions of Mattel's Application be referred to the Discovery Master. That the Court specifically referred other pending applications to the Discovery Master for resolution does not evidence any intent to refer the Application at issue here. Indeed, as the Discovery Master held, the fact that the Court expressly referred other matters but not the Application shows that the Court *did not* intend to refer the Application to the Discovery Master. (Hutnyan Decl., Ex. 6 (4/11/08 Order) at 2 ("If the court had intended to refer certain issues raised in the Application to the Discovery Master for determination, the court would have done so expressly, as it

did with Mattel's *Ex Parte* Application re Motion to Compel Production of Electronic Media from Third Parties.").)

Mattel's appeal also must be rejected because MGA has complied with its obligations regarding the production of tangible items. As MGA explained to the Court at the February 4, 2008 hearing and in its opposition to the Application, MGA conducted reasonable, diligent and good faith searches for tangible items responsive to Mattel's many requests for production and made available for inspection all responsive items that it found in those searches. (Declaration of Allen Lanstra ("Lanstra Decl."), Ex. 1 (2/4/08 Hrg. Tr.) at 68:11-69:8; MGA's Opp. to Mattel's App. (Docket No. 1654) at 3-8.) Mattel failed to show otherwise.

Accordingly, the Court should deny Mattel's appeal of the Discovery Master's April 11, 2008 Order.

## II. SUMMARY OF FACTS

On January 24, 2008, Mattel filed the Application, which sought an order compelling the production of various tangible items, shifting the cost of producing some of those items to MGA, and extending the fact and expert discovery cut-off dates. (Hutnyan Decl., Ex. 17 (Mattel's App.) at 14-18.) In its Application, Mattel argued that MGA had withheld from its production molds and other items that were purportedly relevant to the design and development of Bratz. (*Id.*)

On January 25, 2008, MGA filed its opposition to the Application. (*See* MGA's Opp. to Mattel's App. (Docket No. 1654).) MGA explained that it had complied with its discovery obligations regarding the production of tangible items and summarized the reasonable, diligent and good faith efforts MGA had made to search for and produce tangible items responsive to Mattel's many requests for production. (*Id.* at 3-8.) In addition, although the parties' counsel had disputed whether molds were encompassed by Mattel's requests during the meet-and-confer process, MGA made clear that "in conducting its searches for tangible items, MGA has not deliberately excluded molds or other types of tangible items.... Nor has

MGA excluded tangible items relating to the origin, creation, design, development or manufacture of Bratz." (*Id.* at 7.)

      The Court conducted the hearing on the Application on February 4, 2008. At the same hearing, the Court also heard five other *ex parte* applications.[1] With regard to the Application at issue here, the Court heard arguments from both parties regarding all of the issues presented in the Application. (Lanstra Decl., Ex. 1 (2/4/08 Hrg. Tr.) at 66:6-79:22.) Notably, "the only thing" that concerned the Court regarding the sufficiency of MGA's production was whether MGA had excluded molds from its searches based on the argument that such items were not covered by Mattel's requests:

> COURT: I'll tell you the one thing, **the only thing** that seems to suggest that [MGA is withholding something], are these letters and correspondence which suggests an interpretation of the request as not calling for that.
>
> MR. NOLAN: On the molds?
>
> COURT: Yes.

(*Id.* at 68:2-7.) (Emphasis added.) This issue, however, was quickly resolved to the Court's satisfaction when MGA made clear that it had not used that argument to withhold molds from production and, in fact, had agreed to produce molds for inspection by Mattel. (*Id.* at 68:11-69:8.)

      After hearing all of the parties' arguments regarding the Application, the Court stated: "I am going to grant the ex parte application in part. I am going to grant leave to Mattel to take these photographs and obtain this information and to review the

---

[1] The other applications were (1) *Ex Parte* Application to Compel Depositions of Ana Cabrera, Beatriz Morales, Maria Salazar and Mel Woods; (2) *Ex Parte* Application to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas and MGA Entertainment, Inc.; (3) *Ex Parte* Application for Relief from 1/7/2008 Order re Motion Hearing; (4) *Ex Parte* Application to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow; and (5) *Ex Parte* Application to Stay Pending Review of Discovery Master's January 11, 2008 Order Granting MGA and Bryant's Motion to Compel. (Hutnyan Decl., Ex. 3 (2/4/08 Order) at 2.)

1  molds." (*Id.* at 79:1-4.) At no time during the hearing did the Court direct or
2  suggest that any part of the Application be heard by the Discovery Master. (*Id.* at
3  66:6-79:22.)

4        On February 4, 2008, shortly after the hearing, the Court issued a Civil Minute
5  Order regarding all of the various *ex parte* applications that it had heard earlier that
6  day, including Mattel's Application. (Hutnyan Decl., Ex. 3 (2/4/08 Order).)
7  Consistent with its statement at the hearing, the Court's Order ruled that the
8  Application "is GRANTED IN PART." (*Id.* at 4.) Also, consistent with the Court's
9  conduct at the hearing, the Court's Order did not direct that any portion of Mattel's
10 Application be addressed by the Discovery Master. (*Id.*) In contrast, the Court's
11 Order did refer Mattel's application to compel production of electronic media from
12 certain third parties to the Discovery Master for resolution. (*Id.* ("This application is
13 DENIED. This matter must be addressed in the first instance by the Discovery
14 Master.").)

15       On February 19, 2008, Mattel re-noticed its Application with the Discovery
16 Master, requesting that he grant the portions of Mattel's Application that the Court
17 had not granted in its February 4, 2008 Order. (Hutnyan Decl., Ex. 4 (Mattel's Re-
18 Noticed App.) at 2-3.) MGA opposed Mattel's re-noticed Application on the ground
19 that the Court had already decided the Application in full and that, in any event,
20 MGA had complied with its obligations regarding the production of tangible items.
21 (Hutnyan Decl., Ex. 5 (MGA's Opp. to Mattel's Re-Noticed App.) at 1-4.) The
22 Discovery Master heard the matter on April 11, 2008.

23       On April 11, 2008, after reviewing the transcript of the Court's February 4,
24 2008 hearing and the Court's February 4, 2008 Order, and considering all of the
25 parties' arguments, the Discovery Master issued an order denying Mattel's
26 Application. The Discovery Master held, in pertinent part:

27         Having considered the motion papers and the comments of
28       counsel at the hearing, Mattel's Application is denied. Mattel
      previously noticed its Application for hearing before the district court in

>   the form of an *Ex Parte* Application. **The Application was heard and decided in full by Judge Larson on February 4, 2008, as evidenced by the transcript of the proceedings and the Civil Minute Order filed the same day.** Notably, during the hearing, Mattel's counsel drew the court's attention to the list of tangible items Mattel now seeks. See Transcript of February 4, 2008 hearing at p. 78 ("We've identified some things that have been in our reply on pages 1 and 2 that have been identified in the document production, that are tangible items, that have not been provided. I'd encourage the court to look at that."). Immediately thereafter, the court stated its intent to grant Mattel's Application in part. Id. at p. 79.
>
>   **Contrary to Mattel's assertion, at no time during the February 4, 2008 hearing or in its February 4, 2008 Civil Minute Order did the court state or even intimate that it was only deciding a portion of Mattel's Application. Nor did the court direct or even suggest that Mattel present any portion of its Application to the undersigned Discovery Master for determination.** If the court had intended to refer certain issues raised in the Application to the Discovery Master for determination, the court would have done so expressly, as it did with Mattel's *Ex Parte* Application re Motion to Compel Production of Electronic Media from Third Parties. See Civil Minute Order at p. 4 ("This application is DENIED. This matter must be addressed in the first instance by the Discovery Master.").

(Hutnyan Decl., Ex. 6 (4/11/08 Order) at 2.) (Emphasis added.) Thereafter, Mattel filed this appeal.

## III. MATTEL'S APPEAL HAS NO MERIT AND MUST BE REJECTED.

### A. The Discovery Master Correctly Held that this Court Already Heard and Decided Mattel's Application in Full.

To set aside or modify the Discovery Master's April 11, 2008 Order, Mattel must prove that the order "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Mattel fails to make this requisite showing.

Contrary to Mattel's assertions, the record fully supports the Discovery Master's finding that the Court heard and decided Mattel's Application in full. During the hearing, the Court heard argument on all of the issues that were the subject of Mattel's Application and did not state that it was only considering part of Mattel's Application. (Lanstra Decl., Ex. 1 (2/4/08 Hrg. Tr.) at 66:6-79:22.) In particular, the Court was clearly aware of the fact that Mattel had identified a laundry

1  list of tangible items that it was seeking from MGA because Mattel's counsel
2  concluded his argument by specifically drawing the Court's attention to that list. (*Id.*
3  at 78:21-25 ("We've identified some things that have been in our reply on pages 1
4  and 2 that have been identified in the document production, that are tangible items,
5  that have not been provided. I'd encourage the court to look at that.").) As the
6  Discovery Master observed, "[i]mmediately thereafter, the court stated its intent to
7  grant Mattel's application in part. Id. at p.79." (Hutnyan Decl., Ex. 6 (4/11/08 Order)
8  at 2.)

9         The Court unequivocally stated that it was deciding Mattel's entire
10 Application by granting partial relief. At the February 4, 2008 hearing, the Court
11 said, "I am going to grant the ex parte application in part." (Lanstra Decl., Ex. 1
12 (2/4/08 Hrg. Tr.) at 79:1-2.) The Court's Order similarly held, "This application is
13 GRANTED IN PART." (Hutnyan Decl., Ex. 3 (2/4/08 Order) at 4.) There is no
14 question that the Court was rendering a decision on Mattel's entire Application. The
15 fact that the Court's decision was to grant only partial relief does not mean that the
16 Court only decided the part of the Application that was granted. Nor did the Court's
17 Order need to state "Denied in Part" to make clear that it was deciding the entire
18 Application. Notably, the Discovery Master, who has more than twenty years of
19 experience writing orders as a federal magistrate judge, found that the Court's words
20 were more than sufficient to show that the Court had decided the Application in full.

21        There is also no support for Mattel's assertion that the Court directed that
22 portions of Mattel's Application be presented to the Discovery Master for resolution.
23 As the Discovery Master correctly held, the Court did not state or suggest at the
24 hearing or in its Order that any aspect of the Application be referred to the Discovery
25 Master. (Hutnyan Decl., Ex. 3 (2/4/08 Order) at 4; Lanstra Decl., Ex. 1 (2/4/08 Hrg.
26 Tr.) at 66:6-79:22.) Mattel does not identify any statement by Court instructing or
27 suggesting that Mattel take up parts of its Application with the Discovery Master.
28 Instead, Mattel argues that because the Court referred other unrelated applications to

1  the Discovery Master, the Court also intended to refer the Application to the
2  Discovery Master.
3        If anything, the fact that the Court specifically referred other applications to
4  the Discovery Master but not the Application at issue here demonstrates that the
5  Court ***did not*** intend to refer the Application to the Discovery Master.  As the
6  Discovery Master explained, "[i]f the court had intended to refer certain issues raised
7  in the Application to the Discovery Master for determination, the court would have
8  done so expressly, as it did with Mattel's *Ex Parte* Application re Motion to Compel
9  Production of Electronic Media from Third Parties.  See Civil Minute Order at 4
10 ('This application is DENIED.  This matter must be addressed in the first instance by
11 the Discovery Master.')."  (Hutnyan Decl., Ex. 6 (4/11/08 Order) at 2.)
12       Mattel's assertion that the Court intended to decide some parts of Mattel's
13 Application and refer other parts to the Discovery Master also fails because it
14 directly conflicts with the Court's express desire not to have the Court and Discovery
15 Master engage in piecemeal determination of issues.  (Lanstra Decl., Ex. 1 (2/4/08
16 Hrg. Tr.) at 81:3-4 ("I don't want me deciding some of these issues and Judge
17 Infante deciding other ones.").)  Mattel attempts to justify this piecemeal approach
18 by arguing that the Court only decided the portion of Mattel's Application regarding
19 modification of the scheduling order but left all discovery issues for the Discovery
20 Master to decide.  (Appeal at 1.)  To the contrary, the Court's Order expressly ruled
21 on discovery issues that could have been heard and decided by the Discovery Master.
22 (Hutnyan Decl., Ex. 3 (2/4/08 Order) at 4-5 (ordering MGA to use best efforts to
23 ship tangible items from China to Hong Kong for inspection or to otherwise
24 cooperate in arranging inspection of items in both China and Hong Kong).)
25       The record clearly demonstrates that after hearing and considering all of the
26 parties' arguments regarding all of the issues presented in Mattel's Application, the
27 Court issued a ruling on Mattel's entire Application.  Nothing in the transcript of the
28 proceedings or in the Court's Order shows otherwise.  Accordingly, the Court should

7

MGA Parties' Opp. to Mattel's Appeal of Discovery Master's April 11, 2008 Order Re Tangible Items
Case No. CV 04-9049 SGL (RNBx)

reject Mattel's appeal because Mattel has failed to establish that the Discovery Master's April 11, 2008 is clearly erroneous or contrary to law.

### B. MGA Has Complied with Its Discovery Obligations Regarding the Production of Tangible Items.

Mattel asserts that if the Court reverses the Discovery Master's April 11, 2008 Order, the Court also should grant the relief that Mattel previously requested in its Application. Mattel's argument is without merit because Mattel failed to establish in its Application that MGA violated any discovery orders or other obligations regarding the production of tangible items.

As MGA made clear in its opposition to Mattel's Application, MGA conducted reasonable, diligent and good faith searches for tangible items responsive to Mattel's many requests for production and produced all responsive items that were located in those searches. (MGA's Opp. to Mattel's App. (Docket No. 1654) at 3-8.) Most of these items were produced by October 2007, and included more than a dozen doll heads, several doll bodies, a doll head sculpture, a doll body sculpture, as well as hundreds of Bratz dolls, dolls designs and doll accessories. (*Id.* at 3.) That MGA found and promptly produced some additional items in January 2008 does not constitute a violation of MGA's discovery obligations and, in fact, is entirely consistent with a litigant's continuing duty under the discovery rules to supplement his production of responsive documents and things. *See* Fed. R. Civ. P. 26(e)(1). Moreover, Mattel can hardly be heard to complain about the timing of MGA's production given that Mattel waited until the last month of Phase 1 discovery to produce more than 70 percent of its documents and things responsive to MGA's requests for production. (MGA's Opp. to Mattel's App. (Docket No. 1654) at 4.)

In addition to the items that MGA produced, Mattel obtained many other items and documents, as well as testimony from numerous witnesses, regarding the creation and early development of Bratz. These included more than a hundred tangible items from Margaret Leahy (sculpted the Bratz doll) and Veronica Marlow

8

MGA Parties' Opp. to Mattel's Appeal of Discovery Master's April 11, 2008 Order Re Tangible Items
Case No. CV 04-9049 SGL (RNBx)

(Bratz fashion design) relating to the development of Bratz; thousands of pages of documents chronicling the development and manufacturing process; correspondence and photographic images of Bratz dolls at various stages of development; and correspondence, invoices and purchase orders with third-party vendors who worked on the development of Bratz, including Ms. Leahy, Ms. Marlow and Jesse Ramirez of South Bay Molds (cast molds for dolls). (*Id.* at 7-8.)

Contrary to Mattel's assertions, MGA did not omit or withhold any items based on its objection that molds were not covered by some of Mattel's requests for production. As MGA stated in its opposition to the Application, "in conducting its searches for tangible items, MGA has not deliberately excluded molds or other types of tangible items…. Nor has MGA excluded tangible items relating to the origin, creation, design, development or manufacture of Bratz." (*Id.* at 7.)

Indeed, MGA addressed this issue to the Court's satisfaction at the February 4, 2008 hearing. There, the Court stated that "the only thing" that concerned the Court regarding the adequacy of MGA's production of tangible items was MGA's objection regarding molds. (Lanstra Decl., Ex. 1 (2/4/08 Hrg. Tr.) at 68:2-7.) MGA, however, explained that MGA had not used those objections to withhold molds from production and, in fact, had made molds available for inspection by Mattel. (*Id.* at 69:2-8 ("MR. NOLAN: *But we're not advancing that argument.* COURT: *Fair enough.* MR. NOLAN: And we didn't argue that. Your Honor, what I'm advancing is our position, is that we did a diligent search. We went and we located this. We immediately notified Mattel. We provided them dates for them to look at this stuff.").) (Emphasis added.)

MGA has satisfied its discovery obligations regarding the production of tangible items. MGA searched for and produced hundreds of tangible items responsive to Mattel's requests, including numerous items relating to the creation, design and development of Bratz. In addition, Mattel obtained ample discovery

through other means and from other sources regarding these same issues. Enough is enough. Mattel is not entitled to further discovery on this matter.

## IV. CONCLUSION

For the foregoing reasons, the MGA Parties respectfully request that the Court deny Mattel's appeal of the Discovery Master's April 11, 2008 Order.

DATED: May 8, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: /s/ Thomas J. Nolan
Thomas J. Nolan

Attorneys for MGA Entertainment, Inc.
MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. DE C.V., and
Isaac Larian