THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, 38th Floor
San Francisco, CA 94111
Tel.: (415) 984-6400/Fax: (415) 984-2698

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

UNITED STATED DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>DECLARATION OF ALLEN LANSTRA IN SUPPORT OF MGA PARTIES' OPPOSITION TO MATTEL, INC.'S APPEAL OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER DENYING MATTEL'S APPLICATION TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS<br><br>Date: May 12, 2008<br>Time: 10:00 a.m.<br>Judge: Hon. Stephen G. Larson |

1    I, Allen Lanstra, declare:

2        1.    I am an attorney duly licensed to practice law in the State of California

3    and am an associate in the law firm of Skadden, Arps, Slate, Meagher & Flom LLP,

4    counsel of record for MGA Entertainment Inc., MGA Entertainment (HK) Limited,

5    MGAE De Mexico, S.R.L. De C.V. and Isaac Larian in this action.  Except where

6    otherwise noted, I have personal knowledge of the facts set forth below and could

7    competently testify thereto.

8        2.    Attached hereto as Exhibit 1 is a true and complete copy of excerpts

9    from the Court's February 4, 2008 hearing.

10    I declare under penalty of perjury under the laws of the United States of

11    America that the foregoing is true and correct.  Executed this 8th day of May, 2008,

12    in Los Angeles, California.

13

14                                        _____

15                                              Allen Lanstra

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

Page 1

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                         EASTERN DIVISION

4                            - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                            - - -

7  CARTER BRYANT, ET. AL.,            )
                                      )
8                     PLAINTIFFS,     )
                                      )
9            VS.                      )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10 MATTEL, INC., ET. AL.,             )
                                      )
11                    DEFENDANTS.     )   EX-PARTE APPLICATIONS
   _____)   RE:  DISCOVERY
12 AND CONSOLIDATED ACTIONS,          )
                                      )
13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  RIVERSIDE, CALIFORNIA

17                MONDAY, FEBRUARY 4, 2008

18                     10:15 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
          FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA  92501
25               951-274-0844
             CSR11457@SBCGLOBAL.NET

Exhibit  1  ,
P. ___2___

```
 1    APPEARANCES:
 2    ON BEHALF OF CARTER BRYANT:
 3                          KEKER & VAN NEST
                           BY:  MICHAEL PAGE
 4                         710 SANSOME STREET
                           SAN FRANCISCO, CALIFORNIA   94111-1704
 5                         415-391-5400
 6
      ON BEHALF OF MATTEL:
 7
                           QUINN EMANUEL
 8                         BY:  JOHN QUINN
                           BY:  JON COREY
 9                         865 S. FIGUEROA STREET,
                           10TH FLOOR
10                         LOS ANGELES, CALIFORNIA   90017
                           213-624-7707
11
12    ON BEHALF OF MGA ENTERTAINMENT:
13                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                           BY:  THOMAS J. NOLAN
14                         BY:  CARL ALAN ROTH
                           BY:  ROBERT JAMES HERRINGTON
15                         300 SOUTH GRAND AVENUE
                           LOS ANGELES, CALIFORNIA   90071-3144
16                         213-687-5000
17
      ON BEHALF OF GUSTAVO MACHADO:
18
                           OVERLAND BORENSTEIN SCHEPER & KIM LLP
19                         BY:  ALEXANDER H. COTE
                           300 SOUTH GRAND AVENUE
20                         SUITE 2750
                           LOS ANGELES, CALIFORNIA   90071
21                         213-613-4660
22
      ON BEHALF OF CLOONAN, MARLOW & LEAHY:
23
                           KEATS MCFARLAND & WILSON LLP
24                         BY:  LARRY W. MCFARLAND
                           9720 WILSHIRE BOULEVARD
25                         BEVERLY HILLS, CA  90212
                           310-777-3750
```

Page 3

```
 1    APPEARANCES CONTINUED:
 2
      ON BEHALF OF NON-PARTY CHRISTENSEN GLASER:
 3
                        CHRISTENSEN, GLASER, FINK, JACOBS,
 4                        WEIL & SHAPIRO, LLP
                        BY:  SCOTT E. GIZER
 5                       10250 CONSTELLATION BOULEVARD
                        LOS ANGELES, CA  90067
 6                       310-553-3000
 7
      ON BEHALF OF THIRD PARTIES ANA CABRERA & BEATRIZ MORALES:
 8
                        ALLRED, MAROKO & GOLDBERG
 9                       BY:  RAMIT MIZRAHI
                        6300 WILSHIRE BOULEVARD,
10                       SUITE 1500
                        LOS ANGELES, CA  90048
11                       323-653-6530
12
      ON BEHALF OF THIRD PARTY WITNESS GENTLE GIANT STUDIOS:
13
                        BAUTE & TIDUS LLP
14                       BY:  HENRY H. GONZALEZ
                        777 S. FIGUEROA STREET,
15                       SUITE 4900
                        LOS ANGELES, CA  90017
16                       213-630-5000
17
      ON BEHALF OF WACHOVIA:
18
                        DAVIS POLK & WARDWELL
19                       BY:  NEAL A. POTISCHMAN
                        1600 EL CAMINO REAL
20                       MENLO PARK, CA  94025
                        650-752-2000
21
22    ON BEHALF OF KAMI GILMOR:
23                       BUCHALTER NEMER
                        BY:  JOHN PATRICK PETRULLO
24                       1000 WILSHIRE BOULEVARD,
                        SUITE 1500
25                       LOS ANGELES, CA  90017-2457
                        213-891-0700
```

FEBRUARY 4, 2008              ED CV 04-9059-SGL

Exhibit __1__,
P. __4__

1   AMONGST YOURSELVES.

2         I'M CERTAINLY GOING TO AGREE TO ANY STIPULATION THAT

3   YOU REACH, AS LONG AS YOU GIVE ME ONE FULL WEEKEND TO GET READY

4   FOR THE MONDAY HEARING; THAT'S ALL I'M ASKING FOR.

5         MR. PAGE:  THANK YOU, YOUR HONOR.

6         THE COURT:  THE NEXT EX PARTE IS MATTEL'S EX PARTE TO

7   ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS.

8   THESE RELATE TO THESE 12 MOLDS THAT ARE OVER IN CHINA.

9         SO, MR. NOLAN, LET ME BEGIN WITH YOU.

10        I AM A LITTLE -- THERE'S THIS REPEATED REPRESENTATION

11  THAT NO ONE DELIBERATELY DID ANYTHING, AND I GUESS I'M NOT

12  CONCERNED ABOUT WHAT PEOPLE DELIBERATELY DID OR DIDN'T DO; I'M

13  MORE CONCERNED ABOUT WHY THESE THINGS WERE NOT IDENTIFIED

14  SOONER.  AND I GUESS I DON'T HAVE A REAL CLEAR ANSWER TO THAT.

15        MR. NOLAN:  YOUR HONOR, ALL I CAN SAY --

16        THE COURT:  -- GIVEN -- LET ME SAY THIS -- GIVEN THE

17  REPRESENTATIONS THAT WERE MADE ABOUT THE DILIGENCE UPON WHICH

18  SEARCHES WERE DONE PURSUANT TO DOCUMENT REQUESTS.

19        THERE'S NO DISPUTE THAT THESE ARE COVERED BY THE

20  DOCUMENT REQUESTS.  JUDGE INFANTE HAS FOUND SUCH, ESSENTIALLY;

21  AND I -- READING THE DOCUMENT REQUESTS, I THINK MATTEL IS RIGHT

22  ON THAT THESE ARE CERTAINLY WITHIN THE AMBIT OF SEVERAL OF THE

23  DOCUMENT REQUESTS; SO THERE'S NO QUESTION THAT THEY NEED TO BE

24  PRODUCED.  THEY'VE BEEN ASKED FOR.

25        I'M SOMEWHAT CONCERNED AS TO WHY THEY WERE JUST

1   FOUND.

2           MR. NOLAN:  YOUR HONOR, I THINK IT'S PRETTY CLEAR.

3           BOTH SIDES HAVE BEEN ENGAGED IN ROLLING PRODUCTIONS

4   AS THEY HAVE FOUND NEW MATERIAL.  AND WE CERTAINLY, COMING INTO

5   THIS, HAVE DONE THAT, YOUR HONOR; AND I THINK THE RECORD IS

6   CLEAR THAT WE HAVE PRODUCED -- I THINK IT'S SOMEWHERE AROUND

7   800 TO 900 INTANGIBLE OBJECTS AS WE'VE LOCATED THEM

8   DOMESTICALLY.  WE THEN CAME UP AND IDENTIFIED, IN -- I BELIEVE

9   IT WAS EARLY DECEMBER, THE LOCATION IN CHINA AND IN HONG KONG,

10  THESE ADDITIONAL ITEMS.  ALL IN GOOD FAITH, YOUR HONOR.

11          WE'RE TRYING TO DO WHAT WE CAN.

12          MATTEL PRODUCED 73 PERCENT OF THEIR DOCUMENTS IN

13  JANUARY, IN OUR PRODUCTION, YOUR HONOR.

14          THE COURT:  I UNDERSTAND THAT ARGUMENT THAT YOU MADE.

15          MR. NOLAN:  ALL I'M SAYING IS, YOUR HONOR, WITH

16  RESPECT TO THIS, WE IMMEDIATELY NOTIFIED THEM WHEN THEY WERE

17  IDENTIFIED AS MOLDS RELATED TO BRATZ.  THERE'S A LOT OF MOLDS

18  OUT THERE, YOUR HONOR, AND SCULPTS AND PRODUCTS AND STUFF LIKE

19  THAT.  IT IS SIMPLY THAT, YOUR HONOR; WE IDENTIFIED IT, WE

20  FOUND IT, WE IMMEDIATELY TURNED IT OVER.

21          I CAN'T ADDRESS WHAT O'MELVENY --

22          THE COURT:  I'M NOT ASKING YOU TO.

23          MR. NOLAN:  NO, NO, NO.  BUT WHAT I MEANT BY THAT IS

24  THAT I CAN REPRESENT TO THE COURT THAT I HAVE SEEN NOTHING

25  WHICH WOULD SUGGEST, 'OH, DON'T PRODUCE THAT.'  THAT'S NOT THE

1    ISSUE HERE.

2            THE COURT:  I'LL TELL YOU THE ONE THING, THE ONLY

3    THING THAT SEEMS TO SUGGEST THAT, ARE THESE LETTERS AND

4    CORRESPONDENCE WHICH SUGGESTS AN INTERPRETATION OF THE REQUEST

5    AS NOT CALLING FOR THAT.

6            MR. NOLAN:  ON THE MOLDS?

7            THE COURT:  YES.

8            HOW CAN YOU BE SUGGESTING THAT ON THE ONE HAND,

9    YOU'RE IN GOOD FAITH, LOOKING FOR THESE, BUT ON THE OTHER HAND,

10   COUNSEL IS SAYING, 'NO, THIS IS NOT COVERED'?

11           MR. NOLAN:  WELL, IF I MIGHT ADDRESS THAT REAL

12   QUICKLY, YOUR HONOR.

13           DESPITE THAT CORRESPONDENCE, AT THE SAME TIME, WE ARE

14   ALSO TELLING THEM ABOUT IT AND ALSO PROVIDING DIGITAL

15   PHOTOGRAPHS OF IT SO THEY CAN START PROCESSING IT IMMEDIATELY.

16           YOUR HONOR, ALL I CAN SAY IS THAT IN THIS CASE, MORE

17   THAN ANY CASE I'VE EVER SEEN, EVERY POSSIBLE ARGUMENT IS

18   RESERVED; AND IF WE'RE GUILTY OF THAT, I OWN UP TO IT; I'M

19   RESPONSIBLE AS THE LEAD LAWYER ON THIS CASE.  BUT IT WAS NOT

20   INTENDED AT ALL TO EVER SAY, 'YOU CAN'T HAVE ACCESS TO THIS

21   MATERIAL.'

22           NOW, I COULD MAKE AN INTERESTING ARGUMENT THAT ON ONE

23   PRODUCTION, THEY DID ASK FOR MOLDS SPECIFICALLY.  ON THE ONE

24   THAT WE WERE RESPONDING TO, THAT DIDN'T RELATE TO THESE, IT

25   DIDN'T RELATE TO THAT LOCATION, BUT --

Page 69

1                    THE COURT:  I DON'T FIND THAT A CONVINCING ARGUMENT.

2                    MR. NOLAN:  BUT WE'RE NOT ADVANCING THAT ARGUMENT.

3                    THE COURT:  FAIR ENOUGH.

4                    MR. NOLAN:  AND WE DIDN'T ARGUE THAT.

5                    YOUR HONOR, WHAT I'M ADVANCING IS OUR POSITION, IS

6        THAT WE DID A DILIGENT SEARCH.  WE WENT AND WE LOCATED THIS.

7        WE IMMEDIATELY NOTIFIED MATTEL.  WE PROVIDED THEM DATES FOR

8        THEM TO LOOK AT THIS STUFF.

9                    WE CAN'T GET IT OUT OF CHINA.

10                   THE COURT:  WHAT ABOUT THAT?  I KNOW THERE'S THIS

11       UNDERTAKING.  WHAT EFFORTS HAVE BEEN MADE TO GET RELIEF FROM

12       THAT AND GET THEM OVER HERE?

13                   MR. NOLAN:  REAL QUICKLY, YOUR HONOR -- AND I WAS

14       HANDLING THIS, SO I CAN SPEAK TO THIS FIRST HAND -- I WAS

15       ADVISED AS TO THE LOCATION OF THIS MATERIAL IN HONG KONG.  I

16       WAS TOLD THAT THEY WERE SUBJECT TO AN UNDERTAKING BECAUSE

17       THERE'S LITIGATION GOING ON.  IT'S LIKE REMOVING EVIDENCE FROM

18       THE COURTROOM.

19                   WE THEN IMMEDIATELY CALLED MATTEL, ADVISED THEM OF

20       THE SITUATION, AND TOLD THEM, 'LISTEN, WE HAVE TWO CHOICES.

21       ONE IS THAT WE CAN MAKE IT AVAILABLE IN HONG KONG.  THAT'S NOT

22       AN ISSUE.  BY THE WAY, WE NOTE THAT YOU HAVE AN OFFICE RIGHT

23       ACROSS FROM OUR OFFICES IN HONG KONG' -- THIS IS MATTEL AND MGA

24       -- 'SO THAT SHOULDN'T BE AN ISSUE.  BUT WE'LL GO THE EXTRA

25       MILE, AND WE WILL TALK TO COUNSEL IN HONG KONG TO TRY TO GET A

Page 70

1  RELIEF FROM THE COURT.'

2         WE DID THAT.  SKADDEN IMMEDIATELY CALLED THE LAWYER

3  OVER IN HONG KONG, INSTRUCTED HIM TO GO TO COURT AND SEEK A

4  RELIEF SO THAT WE COULD MAKE THEM AVAILABLE.

5         THE COURT:  WHAT'S THE STATUS OF THAT?

6         MR. NOLAN:  THE FIRST COURT DENIED THE REQUEST AND

7  SAID -- AND I MAY BE WRONG ON THIS, YOUR HONOR -- IT WOULD BE

8  AKIN TO ALMOST LIKE ONE MAGISTRATE HAVING CRIMINAL DUTY AND

9  MAKING A RULING AND THEN GETTING A NEW MAGISTRATE AND THAT

10 MAGISTRATE SAYS, 'YOU KNOW, THE OTHER MAGISTRATE REVIEWED THE

11 BAIL CONDITIONS' -- THIS IS MY INTERPRETATION OF IT.  SO THE

12 FIRST JUDGE SAID, 'SOMEBODY ELSE RULES ON IT.  YOU HAVE TO GO

13 TO THE OTHER PERSON.'

14        WE WENT TO THE OTHER PERSON, AND THAT MATTER IS STILL

15 PENDING BEFORE THE COURT.  SO WE'VE MADE EVERY EFFORT, ALL OF

16 THE TIME, SAYING TO MATTEL, 'YOU HAVE OFFICES IN CHINA, AND YOU

17 HAVE OFFICES IN HONG KONG.  THESE THINGS ARE AVAILABLE.  HERE

18 ARE THE DATES THAT THEY'RE AVAILABLE.'  AND WE GAVE THEM DATES,

19 YOUR HONOR; WE GAVE THEM DATES IN ADVANCE.

20        AND I'LL REPRESENT TO THE COURT THAT WE CANNOT TAKE

21 THE MOLDS OUT OF CHINA, BECAUSE OF THE SIZE -- I MEAN, EVEN

22 THOSE THESE ARE SMALL DOLLS, THESE MOLDS ARE ENORMOUS; SO IT

23 MADE SENSE TO US TO JUST SIMPLY SAY, 'THIS ISN'T A BURDEN.

24 YOU'RE GOING TO HAVE A CAMERA TAKE PICTURES OF THIS' -- AND

25 THAT'S ALL THEY'RE GOING TO DO, IS TAKE THE DIGITAL PHOTOGRAPHS

1   OF THEM AND BRING THEM OVER HERE -- 'YOU'VE GOT STAFF OVER IN

2   CHINA AND IN HONG KONG.

3           THE COURT:  THIS ISN'T LIKE A KODAK CAMERA.  THIS

4   SOUNDS LIKE A PRETTY INTENSIVE, THREE-DIMENSIONAL

5   PHOTOGRAPHY --

6           MR. NOLAN:  YOUR HONOR, THAT'S THEIR OWN CHOOSING.

7   YOU KNOW, WE'RE MAKING THEM AVAILABLE IN THE LOCATION WHERE

8   THEY ARE KEPT --

9           THE COURT:  WHAT ABOUT THE EXPENSES SHIFTING ON THIS

10  BECAUSE OF THE INABILITY OF MGA TO GET THOSE OVER HERE?

11          MR. NOLAN:  I'M NOT AWARE OF ANY SITUATION WHERE

12  BECAUSE OF COURT RESTRICTIONS IN A JURISDICTION, WHERE WE'RE

13  BEING BOUND BY THOSE RULINGS, THAT WE SHOULD HAVE TO BEAR THE

14  BURDEN OF COSTS, WHERE THE PARTY HAS OFFICES AND A PRESENCE IN

15  BOTH HONG KONG AND IN CHINA.

16          I MEAN, YOUR HONOR, LET'S FACE IT, BOTH OF OUR

17  CLIENTS HAVE MANUFACTURING PLANTS LOCATED IN CHINA AND HONG

18  KONG.  THIS IS NOT A BURDEN TO THEM.  WE'RE NOT GETTING ANY

19  BENEFIT FROM THIS.

20          I WOULD REPRESENT TO YOU, YOUR HONOR, I THINK THAT

21  WE'VE ACTED IN COMPLETE GOOD FAITH IN THIS RESPECT.  IN TERMS

22  OF COST-SHIFTING, THE COST THAT WE'VE BORNE IN RESPONSE TO SOME

23  OF THE DISCOVERY IN THIS CASE IS JUST ASTRONOMICAL.  AND ONE OF

24  THE MOTIONS THAT YOU'RE GOING TO HEAR ABOUT SOON, YOUR HONOR,

25  IS THAT THERE'S A MOTION IN FRONT OF JUDGE INFANTE, THAT WE

Exhibit ___,
P. 10

Page 72

1   JUST LEARNED ABOUT ON THURSDAY IN THE OPPOSITION -- IF YOU'RE

2   TALKING ABOUT COST-SHIFTING -- WHERE -- AND I THINK IN ONE OF

3   OUR PAPERS HERE, WE SAID THAT WE'VE PAID -- EXCLUSIVE

4   ATTORNEY'S FEE, WE'VE PAID $4 MILLION TO MAKE PRODUCTION HERE.

5   WE LEARNED ON THURSDAY THAT DESPITE JUDGE INFANTE'S ORDERS IN

6   THIS CASE, MATTEL HAS NOT REVIEWED LIVE E-MAILS OR BACKUP TAPE

7   E-MAILS IN DOING THEIR PRODUCTION REQUESTS, BECAUSE ON THEIR

8   OWN, THEY DETERMINED THAT IT WAS TOO EXPENSIVE.

9            SO I'M JUST SAYING, YOUR HONOR, I RESPECTFULLY DO NOT

10  BELIEVE THAT IT IS APPROPRIATE FOR COST-SHIFTING HERE,

11  ESPECIALLY WHEN WE HAVE PROVIDED THEM SO MUCH DISCOVERY HERE,

12  IN TERMS OF OBJECTS, MOLDS -- THEY ALREADY HAVE OTHER MOLDS

13  THAT WERE USED, YOUR HONOR.  THEY COULD EASILY GO, WALK ACROSS

14  THE STREET, DO WHATEVER CAMERA PHOTOGRAPHS THEY NEED.  WE'VE

15  ALREADY PROVIDED DIGITAL PHOTOGRAPHS TO THEM.

16            THE COURT:  OKAY, COUNSEL.  I THINK I UNDERSTAND YOUR

17  POSITION.

18            LET ME HEAR FROM MR. COREY ON THIS.

19            AND, MR. COREY, MAYBE I SHOULD SAY THIS:  I AGREE

20  THAT YOU NEED TO HAVE ACCESS TO THESE, AND I'M PREPARED TO GIVE

21  YOU LEAVE THROUGH THE MONTH OF FEBRUARY, UNTIL MARCH 1ST, TO

22  HAVE ACCESS TO THESE, TO TAKE THE THREE-DIMENSIONAL

23  PHOTOGRAPHS.

24            MY QUESTION IS -- WHAT I'M DECIDING HERE IS BASICALLY

25  ON THE COST-SHIFTING ISSUE.

Exhibit __/__ ,
P. __/l__

Page 73

1          MR. COREY:  WITH RESPECT TO THE COST-SHIFTING ON THIS

2     PARTICULAR ISSUE, I DO THINK IT'S APPROPRIATE, AND IT'S

3     APPROPRIATE FOR THE REASON THAT THE COURT IDENTIFIED; THAT IF

4     THERE HAD BEEN SOME SHOWING OF DILIGENCE, THEN WE COULD HAVE

5     DEALT WITH THE UNDERTAKING SOONER.  IT COULD HAVE BEEN PRODUCED

6     IN THE UNITED STATES.

7          I THINK THE FACT THAT THEY'RE JUST GETTING AROUND TO

8     IDENTIFYING THE UNDERTAKING FOR US NOW, SAYING THAT THEY'RE

9     TRYING TO DEAL WITH IT IN THIS VERY COMPRESSED PERIOD OF TIME,

10    IN LIGHT OF THE FACT THAT JUDGE INFANTE HAD ORDERED THAT THESE

11    THINGS SHOULD HAVE BEEN PRODUCED OR MADE AVAILABLE TO US MONTHS

12    AGO --

13          THE COURT:  CAN I REALLY MAKE THAT FINDING, THOUGH,

14    BECAUSE I REALLY DON'T KNOW ENOUGH ABOUT THAT COURT PROCEEDING

15    OVER IN HONG KONG TO SAY WHETHER THIS CHALLENGE TO THE

16    UNDERTAKING OR REQUEST FOR RELIEF FROM THE UNDERTAKING WOULD

17    HAVE BEEN MADE IN OCTOBER, AS OPPOSED TO JANUARY, THAT THAT

18    REALLY WOULD HAVE HAD ANY DIFFERENT RESULT.

19          MR. COREY:  I THINK THE ABSENCE OF EVIDENCE ON THIS

20    IS SIGNIFICANT, BUT I DON'T THINK THAT SHOULD BEAR AGAINST

21    MATTEL.  THE ONUS IS ON THEM TO SAY, 'THIS IS THE NATURE OF THE

22    UNDERTAKING, THIS IS THE NATURE OF THE PROCEEDING.'  THEY

23    HAVEN'T EVEN IDENTIFIED THE PROCEEDING FOR US.

24          THIS ISN'T AN OBJECTION OR ANYTHING THAT THEY HAD

25    RAISED IN FRONT OF JUDGE INFANTE, WHEN THESE REQUESTS WERE IN

Exhibit  1  ,
P.  12

Page 74

1   FRONT OF HIM.  SO I DON'T THINK THAT BURDEN, PARTICULARLY IN

2   LIGHT OF THE ABSENCE OF EVIDENCE, AN ARTICULATION OF WHAT

3   EXACTLY THE NATURE OF THIS UNDERTAKING IS.  WHAT PRODUCTS OR

4   WHAT ITEMS THIS APPLIES TO SHOULD BE BORNE BY MATTEL.

5          THE COURT:  IS THERE ANYTHING ELSE YOU WANT TO SAY,

6   COUNSEL?

7          MR. COREY:  YES.  VERY BRIEFLY.

8          WHAT WE'RE REALLY CONCERNED ABOUT HERE IS BEING

9   PREJUDICED WITH RESPECT TO WHAT OUR EXPERTS CAN LOOK AT; AND

10  THAT'S THE REASON THAT THIS IS BEFORE THIS COURT AND NOT BEFORE

11  JUDGE INFANTE.

12         WE WOULD LIKE SOME RELIEF, OR AT LEAST THE ABILITY TO

13  SUPPLEMENT OUR INITIAL EXPERT REPORTS WITH INFORMATION THAT WE

14  MAY OBTAIN FROM THESE SCANS.

15         AND THE NEXT POINT IS, WE APPRECIATE THE OPPORTUNITY

16  TO DO IT BY THE END OF FEBRUARY.  WE WILL TRY TO DO THAT.  THE

17  CHINESE NEW YEAR, HOWEVER, RUNS BETWEEN, I BELIEVE,

18  FEBRUARY 2ND AND FEBRUARY 16TH, WHEN NOTHING CAN REALLY HAPPEN.

19  MY UNDERSTANDING IS THAT IT TAKES ABOUT TEN DAYS TO GET THROUGH

20  CUSTOMS WITH THIS TYPE OF SCANNING EQUIPMENT.

21         WHAT WOULD MAKE IT EXCEEDINGLY --

22         THE COURT:  THEY DON'T HAVE THAT OVER THERE?  HONG

23  KONG IS PRETTY ADVANCED.

24         MR. QUINN:  IT'S THE CONSULTANT'S SCANNING EQUIPMENT.

25  I CAN'T SPEAK INTELLIGENTLY TO EXACTLY WHAT IT IS.  IT'S HIS

Exhibit _1_,
P. _13_

1   EQUIPMENT.  IT'S SET UP THE WAY HE LIKES IT.  IF HE USES

2   SOMEBODY ELSE'S SCANNING EQUIPMENT, I GUARANTEE YOU, HE WOULD

3   BE CROSS-EXAMINED ON THE FACT THAT HE DIDN'T USE HIS OWN

4   EQUIPMENT.  THAT'S REALLY WHAT IT COMES DOWN TO.

5              THE COURT:  I SEE.

6              MR. COREY:  WE WILL TRY TO GET IT ACCOMPLISHED IN

7   MARCH.  WHAT WOULD BE EXCEEDINGLY HELPFUL IS IF ALL OF THE

8   MATERIALS CAN BE MADE AVAILABLE IN A SINGLE LOCATION.  I

9   UNDERSTAND THAT (UNINTELLIGIBLE) IS ABOUT 20 MILES FROM HONG

10  KONG.  IF ALL OF THOSE MATERIALS COULD BE MADE AVAILABLE IN THE

11  SAME LOCATION, THAT WOULD PREVENT THE CONSULTANT FROM HAVING TO

12  TAKE HIS SCANNING EQUIPMENT THROUGH CUSTOMS TWICE.

13             THE COURT:  RIGHT.  YOU JUST WANT TO GO INTO THE

14  ADMINISTRATIVE ZONE OF HONG KONG AND NOT HAVE TO GO INTO THE

15  PRC ITSELF.

16             MR. COREY:  RIGHT.  ABSOLUTELY.

17             THE COURT:  I'M NOT SUGGESTING THAT HONG KONG IS NOT

18  PART OF THE PRC.

19             MR. COREY:  ALL I'M SAYING IS, IF WE CAN GO THROUGH

20  CUSTOMS ONCE, THAT WOULD BE MUCH EASIER.

21             THE COURT:  VERY WELL.

22             COUNSEL, WHAT ABOUT THE IDEA OF BRINGING IT TOGETHER

23  IN HONG KONG?  IS THAT SOMETHING THAT CAN HAPPEN?

24             MR. NOLAN:  YOUR HONOR, WE WOULD TRY TO ACCOMMODATE,

25  FOR THE CONVENIENCE OF THE PARTY, PUTTING THEM ALL IN ONE

Page 76

1    LOCATION.  HOWEVER, I CANNOT TALK TO THE CUSTOMS PROCEDURES.  I

2    DON'T KNOW HOW EASY IT IS TO GET THE MOLDS TO HONG KONG OR GET

3    THE PRODUCT THAT'S IN HONG KONG OVER TO CHINA.  I THINK THAT

4    THERE ARE ISSUES.

5              AND I RESPECTFULLY SUBMIT, YOUR HONOR, THAT IF THIS

6    IS JUST A -- AND I'M NOT SAYING "JUST" A CONSULTANT -- BUT IF

7    THIS IS BECAUSE THEY'RE USING A PARTICULAR CONSULTANT WHO LIKES

8    A PARTICULAR CAMERA, A, I DON'T THINK THERE'S A REASON FOR THE

9    COST-SHIFTING TO ME, AS A RESULT BECAUSE THEY HAVE A PREFERENCE

10   TO USE ONE CAMERA VERSUS --

11             THE COURT:  IT'S NOT A PREFERENCE.  HE'S CONCERNED

12   ABOUT YOUR OBJECTION TO THE EXPERT RELYING ON SOMEBODY ELSE'S

13   THREE-DIMENSIONAL PHOTOGRAPHS.  THEY'RE WILLING TO STIPULATE TO

14   WHATEVER THESE PHOTOGRAPHS ARE AND NOT RAISE ANY OBJECTION.

15             MR. NOLAN:  YOUR HONOR, WE PROVIDED THEM DIGITAL

16   PHOTOGRAPHS.  THEY ASKED US TO TAKE THE DIGITAL PHOTOGRAPHS.

17   YOUR HONOR, IF THEY WANT TO COME TO US AND SHOW US PHOTOGRAPHS

18   OF THESE OBJECTS AND LET US BE THERE WHEN THEY TAKE THE

19   PHOTOGRAPHS, WE'VE GOT -- WE'RE GOING TO WIN THIS CASE IN A

20   DIFFERENT WAY THAN WORRYING ABOUT WHETHER OR NOT THE CAMERA WAS

21   AN INSTAMATIC OR A VIDEO CAMERA.

22             THE COURT:  ALL RIGHT.

23             MR. NOLAN:  BUT I DO WANT TO MAKE ONE LAST POINT ON

24   THIS, SO THE RECORD IS CLEAR, YOUR HONOR.

25             WE IDENTIFIED, IN DECEMBER, IN FACT DECEMBER 7TH,

Exhibit  1  ,
P.  15

1   THAT THERE WAS AN UNDERTAKING THAT WE HAD TO DEAL WITH; AND IT

2   WAS MATTEL THAT ASKED US FOR THE RIGHT TO INSPECT IN HONG KONG.

3   AND WE IMMEDIATELY SAID YES.

4          AT THE SAME TIME, WE DID THIS DOUBLE-TRACKING.

5          IT WASN'T UNTIL DECEMBER 26TH, FOR WHATEVER REASON --

6   WHY IT TOOK 22 DAYS, I DON'T KNOW -- FOR THEM TO ADVISE US THAT

7   THEY WERE GOING TO HAVE TROUBLE GETTING A CAMERA THROUGH

8   CUSTOMS.  IT WAS GOING TO TAKE SEVEN DAYS TO GET THROUGH

9   CUSTOMS.

10         ALL I'M SAYING IS, YOUR HONOR, I'M JUST ADDRESSING

11   THIS COST-SHIFTING ISSUE.

12         THE COURT:  VERY WELL.

13         MR. COREY:  EXTRAORDINARILY BRIEFLY.

14         JUST SO THERE'S NO CONFUSION, WE'RE NOT TALKING

15   ABOUT, LIKE, A CAMERA THAT YOU CAN GO BUY AT A STORE.  I MEAN,

16   THE EQUIPMENT COSTS ABOUT A QUARTER OF A MILLION DOLLARS; AND

17   THAT'S BEFORE IT'S CALIBRATED.  THE DEGREE OF PRECISION HERE IS

18   VERY SIGNIFICANT.  I'M NOT TALKING ABOUT SOMETHING SOMEBODY CAN

19   RUN DOWN TO BEST BUY AND BUY.  IT'S NOT A TRIVIAL UNDERTAKING.

20         THE COURT:  BUT IF THERE IS SOMEBODY WITH THAT KIND

21   OF EQUIPMENT AND THAT KIND OF EXPERTISE TO DO IT OVER IN HONG

22   KONG ALREADY, AND COUNSEL IS WILLING TO STIPULATE THAT WHATEVER

23   PICTURE THEY TAKE CAN BE USED BY THE EXPERT FOR HIS PURPOSES,

24   AND THERE'S NOT GOING TO BE ANY AUTHENTICATION OR FOUNDATION OR

25   CHALLENGE BASED ON THE PHOTOGRAPH ITSELF, THEN THAT WOULD SAVE

Page 78

1   A LOT OF MONEY AND A LOT OF TIME AND EFFORT FOR EVERYBODY;

2   CORRECT?

3           MR. COREY:  IT THEORETICALLY WOULD.  BUT IN LIGHT OF

4   THE CHINESE NEW YEAR, THAT'S NOT A PROCESS WE WOULD EVEN BE

5   ABLE TO START UNTIL THE SECOND HALF OF THIS MONTH.

6           THE COURT:  ALL RIGHT.

7           WELL, ASSUMING THE COURT GAVE YOU SUFFICIENT TIME TO

8   OBTAIN THIS...

9           MR. COREY:  THAT'S REALLY THE BASIS FOR OUR MOTION,

10  IS WE DON'T WANT TO BE PREJUDICED BY HAVING THIS STUFF GIVEN TO

11  US --

12          THE COURT:  YOU'RE NOT GOING TO BE PREJUDICED.

13          MR. NOLAN:  BY THE WAY, WE DON'T OPPOSE THE

14  SUPPLEMENTATION OF THE EXPERT REPORTS.  IN FACT, I THINK SINCE

15  THE WAY THE TIMING IS GOING TO BE WITH JUDGE INFANTE'S RULINGS

16  COMING OUT ON EITHER THE 11TH OR THE 13TH, I THINK BOTH SIDES

17  ARE GOING TO HAVE TO BE SUPPLEMENTING THEIR EXPERT REPORTS THAT

18  ARE DUE ON THE 11TH.  IT'S JUST GOING TO BE VIRTUALLY

19  IMPOSSIBLE.  SO WE HAVE NO OBJECTION, YOUR HONOR, AS THIS PLAYS

20  OUT, IF THEY HAVE TO SUPPLE ONE OF THEIR EXPERTS.

21          MR. COREY:  WE'VE IDENTIFIED SOME THINGS THAT HAVE

22  BEEN IN OUR REPLY ON PAGES 1 AND 2 THAT HAVE BEEN IDENTIFIED IN

23  THE DOCUMENT PRODUCTION, THAT ARE TANGIBLE ITEMS, THAT HAVE NOT

24  BEEN PROVIDED.

25          I'D ENCOURAGE THE COURT TO LOOK AT THAT.

Exhibit  1  ,
P.  17

Page 79

1          THE COURT:  I AM GOING TO GRANT THE EX-PARTE

2    APPLICATION IN PART.  I AM GOING TO GRANT LEAVE TO MATTEL TO

3    TAKE THESE PHOTOGRAPHS AND OBTAIN THIS INFORMATION AND TO

4    REVIEW THE MOLDS.

5          I'M DISINCLINED AT THIS POINT TO MAKE THE

6    COST-SHIFTING.  I WILL GIVE LEAVE TO SUPPLEMENT EXPERT REPORTS,

7    THOUGH, DEPENDING ON THE TIMING AND WHEN THIS INFORMATION AND

8    THESE THINGS ARE MADE AVAILABLE.  BUT I DO WANT COUNSEL TO MEET

9    AND CONFER.

10          AND THE COURT'S DENIAL OF THE COST-SHIFTING IS MADE

11   WITHOUT PREJUDICE.  IF EITHER SIDE IS UNREASONABLE IN TERMS OF

12   HOW THEY GO ABOUT MAKING THESE MOLDS AVAILABLE, THE COURT MIGHT

13   RECONSIDER IT DOWN THE ROAD.  BUT LET'S TRY TO GET THESE MOLDS

14   TOGETHER IN HONG KONG, IF WE CAN.  IF WE CAN'T, WE CAN'T.  AND

15   I'M NOT GOING TO ORDER YOU TO DO SOMETHING YOU CAN'T DO.

16          LET'S TRY TO FIND SOMEBODY OVER THERE ON THE GROUND

17   THAT CAN TAKE IT AND WORK OUT A STIPULATION IN TERMS OF ANY

18   OBJECTIONS TO THAT BEING RELIED UPON BY THE EXPERT.  AND IF

19   ANYONE IS UNREASONABLE IN TRYING TO COME UP WITH SOME

20   COST-SAVING MEASURES, THEN THE COURT MIGHT RECONSIDER IMPOSING

21   COSTS.  BUT ASSUMING THAT EVERYONE IS WORKING IN GOOD FAITH,

22   I'M GOING TO DECLINE TO DO THAT.

23          THE LAST EX-PARTE APPLICATION IS CONCERNING THE

24   COMPELLING OF PRODUCTION OF ELECTRONIC MEDIA FROM THIRD

25   PARTIES, OR, IN THE ALTERNATIVE, MODIFYING THE SCHEDULING

1   FILE A SUPPLEMENTAL EXPERT REPORT, OR WHATEVER IT MIGHT BE.

2   BUT IN THE FIRST INSTANCE, I THINK THIS ISSUE SHOULD BE DECIDED

3   BY JUDGE INFANTE.  I DON'T WANT TO HAVE ME DECIDING SOME OF

4   THESE ISSUES AND JUDGE INFANTE DECIDING OTHER ONES.

5              MR. COREY:  WE'LL PUT THIS IN FRONT OF JUDGE INFANTE,

6   YOUR HONOR.

7              THE COURT:  VERY WELL.

8              SO THIS EX-PARTE APPLICATION IS DENIED.

9              I THINK THAT TAKES CARE OF ALL OF IT.  I'M GOING TO

10  ISSUE AN ORDER THIS AFTERNOON WHICH WILL SPELL THIS OUT AS

11  CLEARLY AS I CAN.  IF THERE ARE ANY QUESTIONS ABOUT IT, COME

12  BACK EARLY AS OPPOSED TO LATER.

13             AND MR. QUINN...

14             MR. QUINN:  YOUR HONOR, JUST ONE THING THAT HAD

15  OCCURRED TO ME ABOUT PUTTING PHASE TWO DEPOSITIONS OFF.  THERE

16  IS ONE IN LONDON THIS WEEK.  OUR LAWYER IS ALREADY ON AN

17  AIRPLANE TO GET OVER THERE; THAT'S MR. BRAUR.

18             I DON'T KNOW IF THAT'S GOING TO BE A PROBLEM.

19             MR. NOLAN:  NO ISSUE.  WE'LL AGREE.

20             MR. DICANIO, WHO'S OVER IN LONDON, WILL KILL ME IF HE

21  COMES HOME WITHOUT HAVING BEEN DEPOSED.  WE MADE HIM AVAILABLE

22  ONE DAY IN LONDON AND --

23             THE COURT:  SOUNDS GOOD.

24             MR. QUINN:  THEN, YOUR HONOR, WE'RE THINKING AHEAD TO

25  SUMMARY JUDGMENT MOTIONS.  I KNOW WE ALL ARE LOOKING AT THIS

Exhibit __/__,
P. __19__

Page 84

1   AND MR. QUINN WERE ASKED TO FILE A RESPONSE OR A REPLY TO THE

2   COURT WITH RESPECT TO THE CIRCUMSTANCES.

3           THE COURT:   I THINK THEY INDICATED THAT THEY ALREADY

4   HAVE FILED A REPLY AND THAT THERE'S INFORMATION CONCERNING THAT

5   ON THIS.

6           MR. NOLAN:   I APOLOGIZE FOR NOT UNDERSTANDING.

7           THE COURT:   AM I RIGHT, MR. QUINN?

8           MR. QUINN:   THAT WAS MY UNDERSTANDING.

9           THE COURT:   THEY JUST DIDN'T KNOW ANYTHING ABOUT THE

10  REPLY; THAT WAS SOMEBODY ELSE WHO WROTE THAT; SO THEY DON'T

11  WANT TO TALK TO ME ABOUT IT RIGHT NOW.

12          THANK YOU.   GOOD AFTERNOON.

13

14

15

16

17

18                          CERTIFICATE

19

20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

23

24  _____          _____

    THERESA A. LANZA, CSR, RPR                    DATE
25  FEDERAL OFFICIAL COURT REPORTER

FEBRUARY 4, 2008          ED CV 04-9059-SGL

Exhibit  /  ,
P. 26