```
 1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
 2   (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
 3   (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
 4   (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
 5  Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
 6  Facsimile: (213) 443-3100
 7  Attorneys for Mattel, Inc.
```

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12         Plaintiff, | Consolidated with<br>Case No. CV 04-09059 and |
| 13         vs. | Case No. CV 05-02727 |
| 14  MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 15         Defendant. | [Public Redacted] MATTEL, INC.'S REPLY BRIEF IN SUPPORT OF |
| 16 | MOTION IN LIMINE NO. 11 TO PRECLUDE DEFENDANTS FROM |
| 17  AND CONSOLIDATED ACTIONS | OFFERING IMPROPERLY DISCLOSED EVIDENCE |
| 18 | [Notice of Lodging and Supplemental |
| 19 | Declarations of Jon D. Corey and B. Dylan Proctor filed concurrently] |
| 20 | Date: May 21, 2008 |
| 21 | Time: 1:00 p.m.<br>Place: Courtroom 1 |
| 22 | **Phase 1** |
| 23 | Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

07209/2498667.1

MATTEL'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 11

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 3

ARGUMENT .............................................................................................................. 4

I. DEFENDANTS' REBUTTAL REPORTS SHOULD BE EXCLUDED ........... 4

   A. Rebuttal Reports Must Be Intended Solely to Contradict or Rebut Evidence Disclosed By Another Party in Its Initial Disclosures .............. 4

   B. Defendants Were Not Entitled to Delay Disclosure of Their Apportionment Opinions ........................................................................... 5

   C. Defendants' Expert Reports Should Be Excluded Because They Do Not Rebut Anything in Mattel's Initial Expert Disclosures ................ 7

      1. Rebuttal Report of Paul Meyer. ...................................................... 7

      2. Rebuttal Report of Douglas Kidder. ............................................... 7

      3. Rebuttal Report of Thomas S. Gruca. ............................................ 8

      4. Rebuttal Report of Robert Tonner. ............................................... 10

   D. Defendants Should Not Be Permitted to Use the Reports at Trial .......... 11

II. MGA SHOULD BE PRECLUDED FROM USING EVIDENCE THAT IT FAILED TO DISCLOSE IN RESPONSE TO INTERROGATORIES ....... 11

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

Page

### Cases

Crowley v. Chait,
   322 F. Supp. 2d 530 (D.N.J. 2004) ................................................................. 4, 5

Data General Corp. v. Grumman Systems Support Corp.,
   36 F.3d 1147 (1st Cir. 1994) ................................................................................ 3

International Business Machines Corp. v. Fasco Industries, Inc.,
   1995 WL. 115421 (N.D. Cal. 1995) .................................................................... 4

Johnson v. Grays Harbor Community Hospital,
   2007 WL. 4510313 (W.D. Wash. 2007) .............................................................. 4

Mabrey v. United States,
   2006 WL. 1891127 (D. Nev. 2006) ..................................................................... 6

Pierce v. Novastar Mortg., Inc.,
   2007 WL. 636029 (W.D. Wash. 2007) ................................................................ 4

Straus v. DVC Worldwide, Inc.,
   484 F. Supp. 2d 620 (S.D. Tex. 2007) .............................................................. 5, 6

Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,
   259 F.3d 1101 (9th Cir. 2001) ............................................................................ 11

### Statutes

17 U.S.C. § 504(b) ................................................................................................. 1, 4, 6

Federal Rule of Civil Procedure 26(a)(2)(B) ............................................................... 5

Federal Rule of Civil Procedure 26(a)(2)(C) ............................................................... 4

Federal Rule of Civil Procedure 33(d) ....................................................................... 12

Federal Rule of Civil Procedure 37(c)(1) ............................................................. 10, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Defendants have attempted to sandbag Mattel with their expert reports. They try to defend their late disclosure of the reports based on their professed ignorance that Mattel was seeking an award of their profits and because they labeled the reports as rebuttal even though they do not rebut anything in Mattel's experts' reports. But, of course, they knew that Mattel was seeking profits and that their own records evidenced the amount of profits. Moreover, of the experts in issue, one admits that he does not disagree with the expert he purports to rebut; two have written reports that have nothing to do with the expert opinions they purport to rebut; and another merely supplements his initial disclosure using, in large part, the improper rebuttal opinions of his co-experts. These expert reports simply are not admissible as rebuttal reports.

Defendants cannot dispute that (i) they have the burden of proof on apportionment; (ii) rebuttal reports must rebut initial reports of another party; and (iii) Mattel properly did not discuss apportionment in its initial reports since defendants bear the burden of proof on that issue. However, defendants cite the burden shifting provisions of 17 U.S.C. § 504(b) and cling to a single case from another district to support their argument that they could selectively disclose their expert opinions, disclosing some initially and delaying others. But the burden shifting cases involve the burden of proof at trial; they have nothing to do with expert disclosures. And the case on which defendants rely is a summary judgment case in which the court did not even consider whether the expert opinion in issue was true rebuttal. Defendants do not cite any authority that allows parties to delay their disclosures until the exchange of rebuttal reports if the opinions do not constitute rebuttal.

Significantly, defendants assert that their "initial expert report substantially disclosed all relevant apportionment factors and approaches." If that is true, they will suffer no substantial prejudice if this motion is granted. Mattel has not

moved to exclude that initial report because, unlike with the reports in issue, Mattel was able to have experts prepare reports rebutting the opinions disclosed. The problem with the reports in issue is that Mattel has not been able to retain additional experts or to submit further expert reports to rebut them.

Defendants do not explain why they disclosed "substantially all" of their apportionment opinions initially but waited to disclose the rest until it was too late for Mattel to respond effectively. Furthermore, defendants are unable to cite any specific part of any of Mattel's initial expert disclosures that are rebutted in their second set of reports. Therefore, not only did defendants have whatever information they needed from Mattel to disclose their apportionment opinions initially, but their second wave of disclosures is improper because they are not true rebuttal.

The other issues in this motion concern MGA's responses to interrogatories. First, MGA denied that Bryant did a "test" or "tryout" project for MGA, but argued in opposition to Mattel's motion for partial summary judgment that Bryant did perform a "tryout project." MGA now explains that its opposition papers were based on Bryant's testimony, not its own, and consequently there is no inconsistency. While that explanation is curious at the least, it appears to be undisputed that MGA may not introduce evidence of a "test" or "tryout" project and that it will not be prejudiced if this motion is granted.

Second, MGA argues that it did not have to respond to an interrogatory with all of the facts within its knowledge and that a document production substitutes for a response to an interrogatory. Those arguments are incorrect.

Thus, as demonstrated below, MGA and Bryant should not be permitted to introduce improperly disclosed evidence at trial when Mattel has not had an adequate opportunity to retain additional experts, submit true rebuttal reports, conduct full discovery and prepare for trial.

## Statement of Facts

### Defendants Knew that Mattel Seeks an Award of Profits.

Defendants justify their failure to disclose their apportionment opinions initially because they purportedly did not know whether Mattel was seeking profits and did not understand the causal relationship between its profits and the infringement. However, in Mattel's Counterclaims, dated July 12, 2007, Mattel alleges that it owns copyrights in the designs for the Bratz dolls, defendants infringed the copyrights by distributing the dolls and follow-on products and they made in excess of $500 million in gross revenues as a result. Mattel specifically claims that defendants are liable for the profits they received from the infringement.[1]

Defendants then write that, in its response to interrogatories, Mattel "refused to identify even the category of damages it sought, whether actual damages, MGA's profits, or both." They are mistaken -- Mattel responded in December 2007 that "although it had not yet computed the exact amount of its damages" because defendants had refused to produce information necessary to make the calculation, it sought "disgorgement of any profits . . . derived or obtained by [MGA] as a result of . . . infringement of Mattel's copyrights."[2]

Thus, defendants did know that Mattel was seeking an award of profits based sales of Bratz products. Furthermore, it is presumed that all of defendants' gross revenues are profits attributable to the infringement. <u>Data General Corp. v. Grumman Systems Support Corp.</u>, 36 F.3d 1147, 1173-1174 (1st Cir. 1994). And, it is obvious that the calculation of profits would be based MGA's financial records. Accordingly, Defendants did not need any additional information from Mattel to prepare their apportionment opinions. Indeed, as they assert, they were able to

---

[1] See Mattel's Counterclaims attached as Exhibit 12 to the Declaration of B. Dylan Proctor ("Proctor Decl."), ¶¶ 32 and 83-86, and prayer for relief, ¶ 7.

[2] Mattel's Supplemental Responses to MGA's First Set of Interrogatories, pages 98-99, attached as Exhibit 8 to Supplemental Declaration of B. Dylan Proctor.

disclose "substantially all" of their opinions on apportionment in their initial disclosures. That fact alone undermines their current claim that they could not disclose all of their apportionment opinions initially.

## Argument

### I.  DEFENDANTS' REBUTTAL REPORTS SHOULD BE EXCLUDED

#### A.  Rebuttal Reports Must Be Intended Solely to Contradict or Rebut Evidence Disclosed By Another Party in Its Initial Disclosures

Defendants bear the burden of proof on apportionment. 17 U.S.C. § 504(b). They concede that they did not disclose all of their expert opinions on apportionment initially but, instead, disclosed some of them in rebuttal reports. However, Rule 26(a)(2)(C) requires that rebuttal reports be "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its initial disclosures. Here, the apportionment opinions in defendants' purported rebuttal reports do not contradict or rebut any evidence in Mattel's initial expert reports. See pages 7-10, below. That is dispositive.

Indeed, defendants cannot distinguish the many authorities holding that expert rebuttal reports are limited to contradicting evidence in another party's initial disclosure. See, e.g., International Business Machines Corp. v. Fasco Industries, Inc., 1995 WL 115421, *3-4 (N.D. Cal. 1995) (rebuttal experts are "strictly limited to poking holes in the theories of [adverse party's] experts"); Johnson v. Grays Harbor Community Hospital, 2007 WL 4510313, *2 (W.D. Wash. 2007) (testimony must contradict or rebut evidence identified by opposing experts); Pierce v. Novastar Mortg., Inc., 2007 WL 636029, *3 (W.D. Wash. 2007) (expert report stricken to extent it does not rebut adverse report).

Defendants cite Crowley v. Chait, 322 F.Supp.2d 530 (D.N.J. 2004) for the proposition that rebuttal evidence may "explain," as well as "repel" or "disprove" evidence of an adverse party. But defendants cite a discussion in Crowley about

rebuttal evidence "at trial," not expert disclosures. See 322 F.Supp.2d at 550-551. With respect to experts, Crowley held that rebuttal reports are required "to repel other expert testimony." Id. at 551 (emphasis added). Besides, defendants' rebuttal reports do not "explain" Mattel's reports; they express new opinions on apportionment.

Defendants could not have expected Mattel to offer expert opinions on apportionment in its initial reports since defendants bear the burden of proof of the issue. Under Rule 26(a)(2)(B), they were required to disclose complete statements of all of their expert opinions initially. They simply did not do so.

### B. Defendants Were Not Entitled to Delay Disclosure of Their Apportionment Opinions

Defendants argue essentially that they were entitled to disclose their various opinions on apportionment at whichever time they chose to do so. They disclosed some of the opinions initially and some with the rebuttal reports, but never explain why they broke up the disclosures into two parts. Nor do they address the requirement of Rule 26(a)(2)(B) that they initially disclose complete statements of all of their expert opinions. Nevertheless, they try to justify their late disclosure of some of the opinions under Straus v. DVC Worldwide, Inc., 484 F.Supp.2d 620 (S.D. Tex. 2007) on the basis that they did not know Mattel is seeking profits and did not know of the causal relationship between their profits and the infringement.

However, defendants did know that Mattel is seeking profits and that the profits resulted from the distribution of the dolls and follow-on products which Mattel alleges to constitute infringement. Moreover, defendants knew there is a presumption that all of their gross revenues are profits and the amount of gross revenues (and the amount of profits) would be based on their own financial records. In fact, they

obviously knew that Mattel was seeking profits because their expert gave a 44 page discussion of apportionment in his initial report.³

Moreover, even if defendants truly were ignorant of the facts and claims at the time of their initial disclosures, Straus does not help their cause. Straus is a summary judgment case. Defendants moved for summary judgment as to a claim for indirect profits from copyright infringement. To recover indirect profits, there must be a causal relationship between the infringement and the indirect profits. See 484 F.Supp.2d at 645. Defendants asserted that there was no evidence of any such causal link. The court agreed and granted summary judgment as to indirect profits on that basis. Id. at 647. With respect to the expert disclosure issue, the court denied a motion to strike the testimony of defendants' rebuttal expert on apportionment, holding merely that on the facts of the case, "defendants did not have the burden to show that their revenues are attributable to factors other than the alleged infringement until Straus presented evidence of a causal link between the infringing acts and their revenues." Id. at 632. Significantly, the court did not even consider whether the report in issue was proper rebuttal.

Defendants also cite several cases for the proposition that there is burden shifting under 17 U.S.C. § 504(b) such that a defendant does not have to introduce evidence of apportionment until a plaintiff proffers evidence of a causal relationship between infringement and the defendant's indirect profits. But these cases concern the use of evidence at trial, not expert disclosures. In this sense, apportionment is analogous to an affirmative defense -- although a defendant does not have to put on evidence of an affirmative defense until the plaintiff has put on a prima facie case, it still must disclose its expert opinions supporting the defense in its initial expert disclosures. Mabrey v. United States, 2006 WL 1891127, *4-5 (D. Nev. 2006).

---

³ Thus, they did not need Mattel's expert reports before disclosing their opinions. Indeed, their rebuttal reports do not depend on anything in Mattel's initial reports.

## C. Defendants' Expert Reports Should Be Excluded Because They Do Not Rebut Anything in Mattel's Initial Expert Disclosures

### 1. Rebuttal Report of Paul Meyer.

Paul Meyer prepared an initial report in which, according to defendants, he expressed "substantially" all of defendants' opinions on apportionment (this motion does not challenge that initial report). He also prepared a rebuttal report on apportionment purportedly to rebut the opinion of Mattel's expert, Michael Wagner. However, as Mr. Meyer acknowledges, Mr. Wagner did not address apportionment. Accordingly, Mr. Meyer does not rebut any opinion by Mr. Wagner; rather, he sets forth analyses of apportionment that were not, but should have been, included in his initial report. In fact, Mr. Meyer bases much of his new analyses on the improper rebuttal reports of Thomas Gruca and Robert Tonner. See pages 8-10, below.

### 2. Rebuttal Report of Douglas Kidder.

Bryant retained Douglas Kidder to prepare a rebuttal report. However, like Mr. Meyer, Mr. Kidder purports to rebut Mr. Wagner's opinion on apportionment even though he acknowledges there is nothing to rebut. Mr. Kidder apportions Bryant's profits by quantifying the time Bryant spent working for MGA and allocating that time between Bratz and other work. But this analysis has nothing to do with Mr. Wagner's report because Mr. Wagner did not touch on that issue or any other apportionment of Bryant's profits.[4]

Mr. Kidder also purports to "complete" the apportionment analysis of his co-expert, Mr. Meyer. This portion of Mr. Kidder's report (¶¶ 30-35) is not "rebuttal" for two reasons: First, he and Mr. Meyer are both designated as Bryant's experts and Rule 26(a)(2) provides that an expert may only rebut the evidence of another party's

---

[4] Bryant argues that some of Mr. Kidder's report addresses damages for claims other than copyright infringement. However, those portions of the report contain apportionment analyses that do not rebut any of Mattel's initial reports.

expert. Second, he does not rebut Mr. Meyer's analysis; rather he supplements the analysis by using it to arrive at a new apportionment figure.

### 3. Rebuttal Report of Thomas S. Gruca.

MGA retained Thomas Gruca expressly to give an opinion regarding paragraph 12 of the initial expert report of Mattel's expert, Dr. Scott.[5] However, Mr. Gruca's report has nothing to do with paragraph 12 or any other part of Dr. Scott's report; instead, it analyzes the internet survey conducted by Brandware Research.

Dr. Scott was retained to provide opinions regarding the relationship between the success of Bratz dolls and sales and licenses of accessories and other follow-on merchandise.[6] She expressed no opinion on apportionment or on the role of the design in the success of the dolls. Paragraph 12 of her report merely summarizes and quotes <u>MGA's own statements</u> about the design. MGA repeatedly writes that Dr. Scott opined that design was a key factor in the success of the dolls, and then argues it was entitled to submit rebuttal opinions concerning the design. However, the statement in issue was made by MGA; it was not Dr. Scott's opinion: "<u>According to MGA</u>, a key factor in the tremendous success of Bratz dolls was their design and attitude."[7]

Significantly, Mr. Gruca testified at his deposition that he did not have <u>any</u> opinion about paragraph 12 of Dr. Scott's report (except that he believes MGA's word, "attitude," is ambiguous):



* * *

---

[5] Expert Report of Thomas S. Gruca, dated March 17, 2008, attached as Exhibit 62 to the Proctor Decl., ¶ 5.
[6] Expert Report of Carol A. Scott, dated February 11, 2008 ("Scott Report"), attached as Exhibit 57 to the Proctor Decl.
[7] <u>Id.</u>, ¶ 12 (emphasis added).

A. ▮[8]

Mr. Gruca also was asked about the two opinions Dr. Scott expressed in her report, <u>i.e.</u> that sales of accessories and other follow-on products are driven by sales of Bratz dolls and that they derive value from the success of the Bratz dolls.[9] Mr. Gruca responded: "▮▮▮"[10]

Finally, Mr. Gruca was asked if he disagreed with anything at all in Dr. Scott's report:



Plainly, Mr. Gruca does not rebut paragraph 12 or any other portion of Dr. Scott's report and, therefore, his rebuttal report is improper. Furthermore, Mr. Gruca's report is used by his co-expert, Mr. Meyer, in the improper apportionment

---

[8] Transcript of Deposition of Thomas Gruca ("Gruca Tr."), 118:5-119:11 and 122:1-9, attached as Exhibit 8 to Supplemental Declaration of Jon D. Corey.
[9] Scott Report, Exhibit 57, ¶¶ 6 and 7.
[10] Gruca Tr., 125:10-126:13.
[11] <u>Id.</u>, 126:14-127:4.

analysis in his rebuttal report.[12] Since Mr. Gruca's report is improper rebuttal, it should not be used by Mr. Meyer in his rebuttal report.

### 4. Rebuttal Report of Robert Tonner.

MGA retained Robert Tonner to testify regarding the report of Mattel's design expert, Mr. Loetz. Although Mr. Tonner addresses some of the matters in Mr. Loetz's report, he also expresses an opinion on apportionment that does not relate to that report. Accordingly, defendants now argue that Mr. Tonner rebuts Dr. Scott's report. In so doing, they contradict the stated purpose of Mr. Tonner's report: "I have been asked to review and comment on Lee Loetz's expert report."[13]

In the paragraph in issue here (¶ 24), Mr. Tonner purports "to assess the relative contributions" of Carter Bryant and the other MGA personnel to "the final creative product." Mr. Tonner's opinions have nothing to do with Dr. Scott's report (or Mr. Loetz's report); she did not express any opinion on the contributions of Bryant and other MGA personnel or any other opinion apportioning contributions to the design of the dolls. Not surprisingly, defendants cannot point to any portion of Dr. Scott's report that Mr. Tonner's report purportedly rebuts.

Again, MGA compounded the impropriety of Mr. Tonner's rebuttal report by using it as an additional basis for Mr. Meyer's rebuttal report.[14] In fact, Mr. Meyer even knew of Tonner's opinion before Mr. Meyer submitted his first report, but elected not to include it in the report.[15]

---

[12] Expert Report of Paul K. Meyer, dated March 17, 2008 ("Meyer Report"), attached as Exhibit 59 to the Proctor Decl., ¶¶ 106 and 111.
[13] Rebuttal Expert Report of Robert Tonner, dated March 17, 2008, attached as Exhibit 63 to the Proctor Decl., ¶ 1.
[14] Meyer Report, Exhibit 59, ¶ 116.
[15] Transcript of Deposition of Robert Tonner, 262:24-263:19, attached as Exhibit 16 to the Declaration of Jon D. Corey.

### D. **Defendants Should Not Be Permitted to Use the Reports at Trial**

If a party does not make a proper expert disclosure, it "is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless . . . ." Fed. R. Civ. P. 37(c)(1).

Defendants argue that their failure to disclose was harmless. But as the Advisory Committee Notes to the 1993 Amendments to Rule 37 explain, the "harmless" exception is narrow and intended only to avoid situations not applicable here. Moreover, defendants' decision to delay the disclosure was tactical and designed to prejudice Mattel. If defendants had disclosed the opinions initially, Mattel could have retained additional experts to prepare true rebuttal reports. Instead, Mattel is left without expert reports on the issues in defendants' reports.

Defendants argue that Mattel was able to submit rebuttal reports concerning the apportionment analysis in Mr. Meyer's initial report and to depose him. However, the point is that Mattel has not been able to submit expert reports to rebut the new apportionment analyses in defendants' rebuttal reports.

Defendants cannot sustain their burden of proving harmlessness. See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001). Therefore, under Rule 37(c)(1), they should not be permitted to introduce the opinions on apportionment expressed in their expert rebuttal reports.

## II. **MGA SHOULD BE PRECLUDED FROM USING EVIDENCE THAT IT FAILED TO DISCLOSE IN RESPONSE TO INTERROGATORIES**

With respect to Mattel's supplemental interrogatory on the issue of a "test" project, MGA now says that its response is not inconsistent with its argument in opposition to Mattel's motion for partial summary judgment because that argument was based on Bryant's testimony rather than that of its own employees. If that is true, MGA does not intend to offer evidence that Bryant did a "test" project and will not be prejudiced if this motion is granted.

MGA also should be precluded from offering other evidence it failed to disclose in discovery, particularly evidence that it did not disclose in their Court-ordered responses to Mattel's supplemental interrogatory regarding affirmative defenses. Much of the purported evidence that MGA recently cited in opposition to Mattel's motion for partial summary judgment was not disclosed in response to the interrogatory. For example, MGA contends that it offered Bratz to Mattel in early 2001, but it did not mention this fact in its response to the interrogatory.

MGA argues that the information was disclosed in documents and, under Rule 33(d), parties may respond to interrogatories by producing documents from which the answer may be derived. However, Rule 33(d) requires, among other things, that the responding party "specify[] the records" containing the information requested. MGA did not do so.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court enter its Motion in Limine No. 11.

DATED: May 8, 2008    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By  /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc.