QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>      Plaintiff,<br><br>   vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>      Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>[PUBLIC REDACTED] MATTEL, INC.'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 7 TO PRECLUDE THE MGA DEFENDANTS FROM ASSERTING OR RELYING ON AN ADVICE OF COUNSEL DEFENSE<br><br>[Supplemental Declarations of B. Dylan Proctor and Jon D. Corey filed concurrently herewith]<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

09/2499024.1

MATTEL, INC'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 7 .

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ...............................................................................................................3

I.  MGA WANTS THE BENEFIT OF THE ADVICE OF COUNSEL WITHOUT THE BURDEN OF PROVIDING <u>DISCOVERY</u> ..................................3

    A.  MGA Concedes It Intends to Inform the Jury that It Was Advised by Lawyers that Mattel Had No Rights ..................................................................3

    B.  Inferences and Indirect Evidence of Advice of Counsel Waives the Attorney-Client Privilege ..................................................................................4

    C.  MGA's "Limited Waiver" Is So Limited that It Is No Waiver at All ..............6

    D.  MGA's Limited Waiver is an Effort to Mislead the Jury and the Court .........9

II.  JUDICIAL ESTOPPEL DOES NOT APPLY HERE ..............................................10

CONCLUSION ..........................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

## Cases

Akeva LLC v. Mizuno Corp.,
   243 F. Supp. 2d 418 (M.D.N.C. 2003) .................................................................. 8

Alberts v. Wickes Lumber Co.,
   No. 93 C 4397, 1995 WL 31577 (N.D. Ill. Jan. 26, 1995) ..................................... 5

Aspex Eyewear, Inc. v. E'lite Optik, Inc.,
   276 F. Supp. 2d 1084 (D. Nev. 2003) .................................................................... 6

In Re Broadcom Corp. Sec. Litig.,
   2005 WL 1403516 (C.D. Cal. Feb. 10, 2005) ........................................................ 5

In re Buspirone Patent Litig.,
   210 F.R.D. 43 (S.D.N.Y. 2002) .............................................................................. 8

Chiron Corp. v. Genentech, Inc.,
   179 F. Supp. 2d 1182 (E.D. Cal. 2001) .............................................................. 6, 8

Coleco Indus., Inc. v. Universal City Studios, Inc.,
   110 F.R.D. 688 (S.D.N.Y. 1986) ............................................................................ 8

Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,
   259 F.3d 1186 (9th Cir. 2001) ................................................................................ 5

Dunhall Pharm, Inc. v. Discus Dental,
   994 F. Supp. 1202 (C.D. Cal. 1998) ....................................................................... 7

Electro Scientific Indus. v. Gen. Scanning, Inc.,
   175 F.R.D. 539 (N.D. Cal. 1997) ............................................................................ 6

Fultz v. Fed. Sign,
   No. 94 C 1931, 1995 WL 76874 (N.D. Ill. Feb. 17, 1995) .................................... 5

Handgards, Inc. v. Johnson & Johnson,
   413 F. Supp. 926 (N.D. Cal. 1976) ......................................................................... 6

Johnson v. Rauland-Borg Corp.,
   961 F. Supp. 208 (N.D. Ill. 1997) ........................................................................... 5

K.W. Muth, Co. v. Bing-Lear Mfg. Group, LLP,
   219 F.R.D. 554 (E.D. Mich. 2003) ......................................................................... 7

Laguna Beach County Water Dist. v. Superior Court,
   124 Cal. App. 4th 1453 (2004) ............................................................................... 8

Micron Separations v. Pall Corp.,
   159 F.R.D. 361 (D. Mass. 1995) ............................................................................. 8

New Hampshire v. Maine,
   532 U.S. 742 (2001) .............................................................................................. 11

Saint-Gobain/Norton Indus. Ceramics Corp. v. Gen. Elec. Co.,
  884 F. Supp. 31 (D. Mass. 1995) .................................................................................6

Verizon Cal Inc. v. Ronald A. Katz Tech. Licensing, LP,
  266 F. Supp. 2d 1144 (C.D. Cal. 2003) ..........................................................................7

# PRELIMINARY STATEMENT

MGA does not dispute the rule of law that reliance on the advice of counsel waives the attorney-client privilege. Instead, MGA contends it is not relying on an "advice of counsel defense." But substance controls: MGA calls its defense "good faith" but to *prove* that defense relies on implications about the advice of counsel it received. It cannot do so without producing its withheld communications on the subject matter. Either MGA must be precluded from relying on any advice of counsel (whether directly or indirectly), or Mattel must be permitted to review all attorney-client communications bearing on MGA's claimed good faith and innocent intent vis-à-vis Mattel -- not just the few MGA is offering the jury through its selective manipulation of the privilege.

MGA claims it will not introduce its lawyers' advice directly. Instead, it will prove its good faith with "non-privileged" information. But based on the "non-privileged" information MGA sets forth in its opposition, it is apparent what MGA means is that it will present circumstantial evidence from which a jury would logically infer the lawyers' advice. Specifically, MGA intends to show that it was concerned about Mattel's rights and, before taking any action that might infringe those rights, it directed an employee to consult lawyers to "                                      ."[1] MGA will explain that it proceeded only after consulting lawyers, relying on information its attorney David Rosenbaum gathered about whether or not Carter Bryant could assign the rights to Bratz.[2] The specific inference MGA is inviting the jury to draw, thus, is that its lawyers approved MGA's actions. As authority cited by MGA itself states, advice of counsel can be presented indirectly through inference. That is precisely what MGA is doing and, in doing so, it is waiving the privilege just as it would by expressly presenting the substance of the communications.

---

[1] MGA Parties Mem. of P. & A. in Opp. to Mattel, Inc's Motion *in Limine* No. 7 to Prevent MGA from Asserting or Relying on an Advice of Counsel Defense ("Opp.") at 4:9-12.

MGA argues that Mattel is "judicially estopped" from raising this issue now because Mattel did not pursue a motion to compel when MGA had previously blocked discovery by invoking the attorney-client privilege. MGA misstates both what happened and its significance. Mattel previously moved for a finding of implied waiver through MGA's assertion of a defense of good faith, arguing that access to MGA's privileged communications was necessary to rebut that defense. Mattel then withdrew that motion because, in light of the feebleness of MGA's actual evidence, Mattel determined the privileged communications withheld by MGA were not vital to Mattel's rebuttal of that defense. But that by no means entitles MGA to <u>actually</u> rely on advice of counsel, directly or indirectly, with impunity. During pre-trial discovery, it was up to MGA either to permit discovery of privileged information or forgo the advice of counsel defense. Because MGA elected not to waive the privilege, it cannot now rely on the advice of its attorneys.

Tacitly recognizing that its intended testimony has effected a waiver, MGA argues that a limited "transactional" waiver would be sufficient. By "limited" MGA means "self-selected." That is, MGA is proffering a few (17 to be exact) documents that it says it will disclose if it is found to have waived the privilege. That is not how discovery works, and certainly not how it works when it comes to proving, or challenging, an advice of counsel defense. No party would ever voluntarily choose to turn over documents that might undercut the advice it purports to have received from counsel. That is why, when a party relies on advice of counsel, it must produce <u>all</u> its privileged communication on the same subject matter: here, all communications bearing on MGA's claimed good faith or innocent intent vis-à-vis Mattel, and claimed lack of knowledge of Bryant's obligations to Mattel. Communications showing MGA's lack of good faith undoubtedly exist. MGA cannot be permitted to shield such documents through a selective waiver. Nor can it be permitted to mislead the jury with implications about lawyers sanctioning its unlawful

---

[2] Opp. at 4-5.

conduct.

When MGA chose during discovery to object on the grounds of attorney-client privilege, it was choosing not to present to the jury, either directly or indirectly, the advice of counsel. Mattel respectfully requests that the Court either hold MGA to the choice it made, or order the disclosure of all evidence on the subject matter.

## Argument

### I. MGA WANTS THE BENEFIT OF THE ADVICE OF COUNSEL WITHOUT THE BURDEN OF PROVIDING DISCOVERY

#### A. MGA Concedes It Intends to Inform the Jury that It Was Advised by Lawyers that Mattel Had No Rights

MGA states, "                                                                                          " Opp. at 2; *see also* Opp. at 3 ("there is no reliance on the advice of counsel"). Yet, when MGA recites the evidence it will use to prove its good faith, it plainly shows that it will invite the jury to infer conclusions as to the advice its lawyers gave. For example, MGA cites to the following excerpt from the deposition testimony of Isaac Larian:

Opp. at 4:3-12. MGA also confirms that it intends to introduce evidence of conversations between Bryant's attorney, Anne Wang, and MGA's outside counsel, David Rosenbaum, pursuant to Rosenbaum's "                              ." See Opp. at 4:15-5:13.

There is simply no reason for MGA to refer to its communications with its lawyers, except to imply that it obtained and followed their advice. Information communicated to MGA's attorney is of no greater significance than information communicated to a janitor -- unless, of course, the attorney subsequently communicated with MGA's decision-maker, Isaac Larian. The sequence of events, as recounted by MGA in its opposition, is plainly intended to lead to the conclusion that MGA acted with the advice of counsel. Before going forward with the deal with Bryant and before producing Bratz, MGA sought the advice of its counsel ("            " -- meaning Mattel's rights, and "            "); MGA's outside counsel performed a "doll ownership inquiry"; MGA received "assurances" from counsel; and only then, after consulting with lawyers, did MGA contract with Bryant and produce and market Bratz.

Juries are routinely instructed that circumstantial evidence is equal in value to direct evidence. MGA has proposed such instructions in this case. <u>See</u> MGA's Proposed Preliminary Jury Instructions at 10. The inference MGA wants the jury to draw from the "non-privileged" information it relies on is unmistakable: given MGA's claim that it wanted to act lawfully and its retention of counsel to investigate, MGA proceeded to contract with Bryant and produce and market Bratz as its own only after MGA was advised by its counsel that it was not infringing Mattel's rights. MGA would hardly go to such lengths to prove that it had consulted, for example, with file clerks or astrologers. MGA wants the benefit of consulting with lawyers without the burden of producing their actual advice.[3]

**B.   Inferences and Indirect Evidence of Advice of Counsel Waives the Attorney-Client Privilege**

MGA argues that it will prove its good faith with non-privileged information. Its

---

[3] MGA characterizes Mattel's "            " as that the "            Opp. at 10:26-27. That is wrong. Mattel's motion has nothing to do with MGA's good faith generally. It is directed to one type of evidence that MGA will proffer to support its good faith defense -- evidence of the advice of counsel.

references to its lawyers, according to MGA, are not privileged.  That misses the point.  As explained in the moving papers, it is unfair for a party to obtain the benefit of suggesting to a jury that lawyers approved the conduct without permitting discovery of exactly what the lawyers said.  That is why the Ninth Circuit has held that a party cannot rely on the advice of counsel after refusing to answer questions about the advice.  Mot. at 10, citing Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186 (9th Cir. 2001).  This is a proposition that MGA does not dispute, but the import of which MGA fails to recognize.

MGA points out that its proffered testimony "                                                                    ."  Opp. at 12:1-4.  But even "indirect" evidence of the advice of counsel waives the privilege.  Indeed, MGA's own authority, a prior decision by this Court, confirms that a waiver can "arise from more indirect evidence where a party affirmatively raises an inference of reliance on counsel for the parties' benefit."  In Re Broadcom Corp. Sec. Litig., 2005 WL 1403516, at *1 (C.D. Cal. Feb. 10, 2005), cited by Opp. at 14:12-15.

Courts have repeatedly enforced the rule that indirect reliance on advice of counsel waives the attorney-client privilege.  For example, in Johnson v. Rauland-Borg Corp., the court held that an employer waived the privilege by asserting that it acted reasonably in investigating a Title VII claim, and referring to an outside attorney.  961 F. Supp. 208, 211 (N.D. Ill. 1997).  The employer argued that the hiring of an attorney was intended only to show that the employer had responded promptly and reasonably.  Id. at 209.  But because the employer had placed the fact of the investigation at issue, it was required to reveal the legal advice received.  Id. at 211.  Other courts hold the same view.  See, e.g. Fultz v. Fed. Sign, No. 94 C 1931, 1995 WL 76874, at *3 (N.D. Ill. Feb. 17, 1995) ("In view of the fact that counsel for the defense is not willing to stipulate that it will not use this investigation, the conversations adduced during the investigation, or the results of the investigation as part of its defense, the privilege objection is overruled"); Alberts v. Wickes Lumber Co., No. 93 C 4397, 1995 WL 31577, at *1 (N.D. Ill. Jan. 26, 1995)

1  (ordering production of advice of counsel where defendant placed that advice at issue by
2  stating that its conduct was reasonable because it conducted an investigation); <u>Electro</u>
3  <u>Scientific Indus. v. Gen. Scanning, Inc.</u>, 175 F.R.D. 539 (N.D.Cal. 1997) (holding that a
4  "news release" issued by the defendant saying it had been advised by counsel that
5  plaintiff's patents were invalid was sufficient to waive the privilege).

6       Accordingly, there are only two options. Either MGA cannot rely of the advice of
7  counsel, directly or indirectly, to show its claimed good faith, or it must turn over all
8  advice that bears on that claimed good faith.

9      **C.    MGA's "Limited Waiver" Is So Limited that It Is No Waiver at All**

10       Recognizing this fact, MGA suggests that it should be given the opportunity to
11  belatedly provide discovery to Mattel if required. However, according to MGA, "
12                      ." Opp. at 15:14-15. That is not for MGA to say. As
13  one court put it:

> [A] party should not be permitted to define selectively . . . the scope of waiver of the attorney-client privilege and therefore the scope of discovery. To do so would undermine the very purpose behind the exception to the attorney-client privilege and therefore the scope of discovery . . .

17  <u>Aspex Eyewear, Inc. v. E'lite Optik, Inc.</u>, 276 F. Supp. 2d 1084, 1094 (D. Nev. 2003); <u>see</u>
18  <u>also</u> <u>Saint-Gobain/Norton Indus. Ceramics Corp. v. Gen. Elec. Co.</u>, 884 F. Supp. 31, 33
19  (D. Mass. 1995) ("[c]ourts have recognized that it would be fundamentally unfair to allow
20  a party to disclose opinions which support its position and to simultaneously conceal those
21  that are unfavorable or adverse to its position"); <u>Handgards, Inc. v. Johnson & Johnson</u>,
22  413 F. Supp. 926, 929 (N.D. Cal. 1976) (a party "may not selectively disclose privileged
23  communications that it considers helpful while claiming privilege on damaging
24  communications relating to the same subject"), <u>cited approvingly by</u> <u>Chiron Corp. v.</u>
25  <u>Genentech, Inc.</u>, 179 F. Supp. 2d 1182, 1186 (E.D. Cal. 2001).

26       Its precisely because of this potential for unfairness that a reliance on advice of
27  counsel waiver, where there is one, extends to all communications on the subject matter.
28  Without such a subject matter waiver, a defendant will utilize only favorable advice and

1  "allow[] unfavorable evidence to languish in their attorney's files under the protection of
2  the work-product doctrine." Dunhall Pharm, Inc. v. Discus Dental, 994 F. Supp. 1202,
3  1204-05 (C.D. Cal. 1998) (rejecting a waiver proposal similar to MGA's because "the
4  waiver of work product protection does not involve such 'gatekeeping' by defense
5  counsel").

6      MGA argues that its waiver should be a "transactional" one, limited to
7  communications in September and October 2000, prior to contracting with Bryant. Opp.
8  at 17:13-17. But, just as MGA's good faith at the time of contracting is at issue, so too is
9  its good faith later. MGA claims that its supposed "          " existed not only "at the
10 time it entered into its agreement with Bryant," but also "                    ."[4] MGA
11 claims that it acted in good faith and with innocent intent not only in entering into the
12 agreement with Bryant, but also in defense of Mattel's claims of civil and willful
13 copyright infringement and for aiding and abetting Bryant's breach of fiduciary duty, all
14 of which involve continuing conduct (the infringement is ongoing, and Bryant's fiduciary
15 duties as to Mattel's confidential information certainly did not cease to exist when he left
16 Mattel's employ).

17     Therefore, MGA's "transactional waiver" proposal cannot be supported. Where
18 there is continuing activity, such as copyright infringement, the waiver "opens to
19 inspection the advice received during the <u>entire course</u> of the alleged infringement."
20 Verizon Cal Inc. v. Ronald A. Katz Tech. Licensing, LP, 266 F. Supp. 2d 1144, 1148
21 (C.D.Cal. 2003) (emphasis added) ("Because infringement is a continuing activity, the
22 requirement to exercise due care and seek and receive advice is a <u>continuing duty</u>")
23 (emphasis added).[5] Hence, waiver is determined by the subject-matter of the

---

[4] MGA Entm't, Inc.'s Supp. Resp. to Mattel, Inc's Fifth Set of Req. for Admis., dated Aug. 21, 2007, at 4, 5, 6, and 8.

[5] MGA states that "                    ," Opp. at 16:27-28, and that the central copyright claim in the case is "infringement." Opp. at 17:2-3. That is nonsense. One of MGA's primary defenses in this case is that the Bratz dolls are not substantially similar to Bryant's drawings. Mattel's claim is for copyright <u>infringement</u>, not just ownership.

communication, not by its date.  See K.W. Muth, Co. v. Bing-Lear Mfg. Group, LLP, 219 F.R.D. 554, 565 (E.D. Mich. 2003) (holding that when a party chooses to assert advice of counsel, "there is no disagreement that the scope of this waiver goes not only to the specific advice of counsel, but also to all other attorney-client communications related to the same subject matter"); Akeva LLC v. Mizuno Corp., 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003) (holding that "all knowledge gained by the infringer relating to the advice subject matter must be revealed"); Chiron, 179 F. Supp. 2d at 1186 (finding that "the scope of waiver must of necessity be somewhat broad"); Micron Separations v. Pall Corp., 159 F.R.D. 361, 363 (D. Mass. 1995) (holding that "the scope [of the waiver] must of necessity be somewhat broad and is, in fact, a 'subject matter' waiver -- i.e. , a waiver of all communications on the same subject matter"); Coleco Indus., Inc. v. Universal City Studios, Inc., 110 F.R.D. 688, 690 (S.D.N.Y. 1986) (holding that assertion of advice of counsel "constitutes an implied waiver of all work product relevant to the same issue").  In fact, the Southern District recently rejected precisely the argument now urged by MGA. See In re Buspirone Patent Litig., 210 F.R.D. 43, 53 (S.D.N.Y. 2002) ("it is also clear that BMS cannot in fairness try to tailor an advice-of-counsel defense in an unfairly prejudicial way, so as to provide all the documents relating to the advice of counsel up until a certain arbitrary date, which may tend to support BMS's positions in this litigation, while categorically excluding any such documents thereafter").  So too, MGA cannot arbitrarily limit its waiver to a brief period either.[6]

Thus, MGA is required to reveal all communications related to the subject matter of its advice of counsel defense.  Even a cursory examination of defendants' privilege logs makes clear that MGA sought and received legal advice on the subject of its potential infringement of Mattel's rights in 2001 as well as 2000, and presumably at other times.

---

[6] The case that MGA relies upon, Laguna Beach County Water Dist. v. Superior Court, 124 Cal. App. 4th 1453, 1458 (2004), did not involve a claim of continuing good faith, it involved knowledge of defects.  In that case, the plaintiffs sought to obtain communications regarding a post-construction investigation, which the court found to be irrelevant to the relevant issue in that case, pre-construction knowledge.

See, e.g., Larian Privilege Log, Entry No. 89 (6/30/01) (e-mail message from Isaac Larian to Patty Glaser seeking "                                                            "), Supp. Proctor Decl. at ¶ 4, Exh. 3; Entry No. 90 (6/20/01) (e-mail message from Larian to Glaser and Greg Fishbach seeking "                                                   "), Id.; 1/23/2008 MGA Privilege Log (revised), Entry No. 549 (6/29/01) (e-mail message from Larian to Glaser seeking "                                              "), Id. at ¶ 6, Exh. 5; Entry No. 550 (7/02/01) (e-mail message from Larian to Glaser seeking "                     "), Id.  MGA undoubtedly had numerous communications with lawyers bearing on its claimed good faith vis-à-vis Mattel.  If it has waived privilege as to any, MGA has waived as to all on the subject matter.[7]

**D.    MGA's Limited Waiver is an Effort to Mislead the Jury and the Court**

Beyond merely unwarranted under the law, MGA's selective and self-serving use of the attorney-client privilege appears to be a deliberate attempt to mislead the Court and jury.  On January 31, 2008, on the same date that MGA offered to produce some (but not

---

[7] MGA itself has tacitly acknowledged this.  In its Opposition to the Motion of Plaintiff Mattel, Inc. for Order Finding Waiver and to Compel Production of Documents withheld as Privileged, MGA offered to produce 17 e-mail messages, including entry numbers 89-90 on Isaac Larian's January 15, 2008 privilege log.  See MGA Parties' Opposition to the Motion of Plaintiff Mattel, Inc. for Order Finding Waiver and to Compel Production of Documents withheld as Privileged at ("Opposition to Motion for Waiver") at p. 10 n. 7, Supp. Proctor Decl., ¶ 11, Exh. 10; Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document Production, Supp. Proctor Decl. at ¶ 7, Exh. 6; Larian Privilege Log, dated January 15, 2008, Id. at ¶ 4, Exh. 3 (asterisks denote the e-mails MGA offered to disclose).  Simultaneously, MGA offered to produce entry numbers 655-57, and 660, dating from 2001, from its August 14, 2007 Supplemental Privilege Log only for *in camera* review.  Opposition to Motion for Waiver at p. 10, n. 8, Supp. Proctor Decl. at ¶ 11, Exh. 10;  MGA Supplemental Privilege Log, dated August 14, 2007, Supp. Proctor Decl. at ¶ 5, Exh. 4 (offers for in camera production highlighted in yellow).  However, entries numbers 656-57 appear to be identical to entry numbers 89-90 on Larian's privilege log; these messages, although dating from 2001, were understandably placed by MGA in the same category as the 15 messages from 2000 because, regardless of the date sent, they too dealt with "Mattel Litigation" and the question of whether MGA had the legal right to produce Bratz as a result of Bryant's assignment.  The fact that MGA itself placed the 2001 messages and the 2000 messages in the same category, offering to disclose them -- and repeats in the current opposition that "17 privileged documents are relevant," two of which are from 2001 -- underscores the arbitrariness of its effort to impose a September-October 2000 limit on disclosure of the advice it received from counsel.

all) of its privileged communications in response to Mattel's motion for implied waiver,[8] counsel for Larian produced an e-mail message from Isaac Larian to Patricia Glaser, dated June 30, 2001.[9] In it, Larian reports information that wholly undercuts MGA's claimed good faith.

. It is this that MGA now attempts to shield with its legally unfounded "transactional waiver" assertions.

## II.  JUDICIAL ESTOPPEL DOES NOT APPLY HERE

As a last ditch effort to have its cake and eat it too, MGA asserts Mattel is estopped from contesting MGA's claimed right to rely on advice of counsel without waiving the privilege. This argument is frivolous.

First, the record merits clarification. On January 23, 2008, Mattel filed a motion for an Order Finding Waiver and to Compel Production of Documents Withheld as Privileged. In this motion, Mattel argued that MGA had impliedly waived the privilege

---

[8] MGA Opposition to Motion for Waiver dated January 31, 2008, at p. 10 n. 7, Supp. Proctor Decl., ¶ 11, Exh. 10.
[9] This appears to be one of the e-mail messages that MGA offered to disclose in its Opposition to Mattel's motion seeking a waiver of the privilege, see note 7, supra, although it purported to claw it back months later.
[10] Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment, dated April 25, 2008, at 5. Cf. Cal. Labor Code § 2870.

by pleading good faith -- to rebut that defense, Mattel argued it was entitled to access MGA's privileged communications.[11]

After Mattel filed the motion, however, MGA produced for deposition Mr. Rosenbaum and Ms. Wang, both attorneys who worked on the MGA/Bryant contract. Based on their testimony of January 25 and 28, 2008, MGA's good faith defense proved feeble as a factual matter. Therefore, on reply, Mattel withdrew its motion without prejudice, because an element of implied waiver by claim assertion (unlike waiver where advice of counsel is actually relied on) is that the privileged information requested must be "vital" to rebutting the claim or defense. Mattel wrote:

.[12]

MGA thus bases its "judicial estoppel" argument on a discovery motion that was withdrawn. MGA's own authority states the *sine qua non* for "judicial estoppel" is that a party cannot adopt a new argument after prevailing on a conflicting one: a party "<u>prevailing</u> in one phase of a case on an argument" is prohibited from "relying on a contradictory argument to prevail in another" phase. Opp. at 9 (<u>citing New Hampshire v. Maine,</u> 532 U.S. 742, 749 (2001)). Nowhere in its brief does MGA explain how there could be a prevailing party on a motion that was never decided. Nor does MGA even acknowledge that Mattel's argument now is different than before, based on changed circumstances. Mattel does not contend that MGA has waived merely by pleading good faith -- MGA has waived because it intends to <u>actually</u> <u>rely</u> on the advice of its counsel. The situations are different.

---

[11] Notice of Motion and Motion of Plaintiff Mattel, Inc. for Order Finding Waiver and to Compel Production of Documents Withheld as Privileged, dated Jan. 23, 2008 at 5.
[12] In the interim, MGA filed its response in which it agreed to produce the 17 emails discussed above. MGA Opposition to Motion for Waiver, Supp. Proctor Decl., ¶ 11, Exh. 10.

Finally, MGA argues that the withdrawal of Mattel's motion to compel somehow disadvantaged MGA because, it asserts, if the ruling had been in Mattel's favor and if MGA had filed a different motion on a different discovery dispute, it would have used that ruling to support its motion, and, if the Discovery Master had ruled in MGA's favor, then MGA would be in a different position today. Opp. at 11:4-15. MGA's speculations are irrelevant. Mattel is not relying on the advice of counsel. Mattel's withdrawn motion regarding advice of counsel did not result in any ruling at all. MGA could not have been prejudiced by no ruling at all. There obviously can be no estoppel here.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant this motion in its entirety and (1) either preclude MGA and Isaac Larian from asserting, relying on, or introducing any evidence in support of, or making any argument or any reference to, an advice of counsel defense, assurances received from counsel or consultations with counsel concerning the legal propriety of MGA's contracting with Bryant regarding Bratz, MGA's subsequent copying, development, production and sales of Bratz, and /or MGA's or Bryant's obligations to Mattel, or (2) find that MGA has waived the privilege by relying on an advice of counsel defense.

DATED: May 8, 2008              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc.