QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**[PUBLIC REDACTED]** MATTEL, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 12 TO EXCLUDE THE TESTIMONY OF PETER S. MENELL<br><br>[Notice of Lodging and Supplemental Declarations of Jon D. Corey and B. Dylan Proctor filed concurrently herewith]<br><br>Hearing Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>Pre-trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

07209/2494234.4

MATTEL'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 12

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 2

I. MGA HAS NOT SHOWN THAT MENELL'S TESTIMONY WOULD DO ANYTHING OTHER THAN INSTRUCT THE JURY ON THE LAW ............................................................................................................. 2

II. MGA HAS NOT REBUTTED MATTEL'S SHOWING THAT MENELL INTENDS TO INSTRUCT THE JURY ON THE *WRONG* LAW ............................................................................................................. 4

    A. Menell's Abstraction-Filtration-Comparison Analysis Is Contrary to Ninth Circuit Law and Professor Lind's Opinion ................................. 4

    B. The Cases Offered by MGA to Support Menell's Filtration Test Are Not Applicable to Non-Linear Works ............................................ 6

    C. MGA Has Failed to Rebut Professor Lind's Showing that the Originality, Merger, Functionality, and *Scenes-A-Faire* Doctrines Relied upon by Menell Are Inapplicable ........................................... 7

    D. MGA Has Failed to Rebut Professor Lind's Showing that the "Inverse Ratio" Rule Lowers the Standard of Proof for Substantial Similarity ......................................................................................... 8

    E. MGA Has No Answer to Professor Lind's Showing that Menell Misstated the Scope of Protection Afforded to Bryant's Drawings .......... 9

III. MGA HAS NO ANSWER TO MATTEL'S SHOWING THAT, UNDER *DAUBERT*, AN EXPERT CANNOT IGNORE CRITICAL FACTS ................ 9

IV. MGA HAS NOT SHOWN THAT MENELL HAS THE EXPERTISE TO OFFER NON-LEGAL OPINIONS ........................................................ 10

V. MGA CONCEDES THAT MENELL'S TESTIMONY REGARDING THE INVENTIONS AGREEMENT MUST ALSO BE EXCLUDED ............ 11

VI. MGA CANNOT MOOT THE COURT'S "GATEKEEPER" ROLE ............... 12

CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aguilar v. Int'l Longshoremen's Union,
 966 F.2d 443 (9th Cir. 1992) ............................................................................. 3

Apple Computer, Inc. v. Microsoft Corp.,
 35 F.3d 1435 (9th Cir. 1994) .............................................................................. 6

Atari Games Corp. v. Nintendo of Am., Inc., No. C 88-4805 FMS,
 1993 WL 207548 (N.D. Cal. May 18, 1993) ..................................................... 7

Balbirer v. Austin,
 790 F.2d 1524 (11th Cir. 1986) .......................................................................... 7

BensBargains.net, LLC v. xpbargains.com,
 No. 06cv1445 BTM, 2007 WL 2385092 (S.D. Cal. Aug. 16, 2007) ................. 8

Berkla v. Corel Corp.,
 66 F. Supp. 2d 1129 (E.D. Cal. 1999) ................................................................ 8

In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.,
 524 F. Supp. 2d 1166 (N.D. Cal. 2007) ........................................................... 10

Estate of Bojcic v. City of San Jose,
 No. C05 3877 RS, 2007 WL 3314008 (N.D. Cal. Nov. 6, 2007) ...................... 3

Cavalier v. Random House, Inc.,
 297 F.3d 815 (9th Cir. 2002) .............................................................................. 6

Daubert v. Merrell Dow Pharms., Inc.,
 509 U.S. 579 (1993) ............................................................................ 1, 7, 11, 12

Ets-Hokin v. Skyy Spirits, Inc.,
 225 F.3d 1068 (9th Cir. 2000) ............................................................................ 7

Idema v. Dreamworks, Inc.,
 162 F. Supp. 2d 1129 (C.D. Cal. 2001) .............................................................. 6

Jackson v. United States,
 56 F.2d 340 (9th Cir. 1932) ................................................................................ 7

Jada Toys, Inc. v. Mattel, Inc.,
 No. 05-55627, 2008 WL 450891 (9th Cir. Feb. 21, 2008) ......................... 4, 5, 6

Kim v. Gen. Motors Corp., No. CV02-2404L,
 2004 WL 5499006 (W.D. Wash. Dec. 15, 2004) ............................................... 2

Kouf v. Walt Disney Pictures & Television,
 16 F.3d 1042 (9th Cir. 1994) .............................................................................. 4

Martini v. Hendricks,
 188 F. Supp. 2d 505 (D.N.J. 2002) .................................................................... 2

Mattel, Inc. v. Goldberger Doll Mfg. Co.,
    365 F.3d 133 (2d Cir. 2004) ............................................................................ 5

McCulloch v. Albert E. Price, Inc.,
    823 F.2d 316 (9th Cir. 1987) .......................................................................... 9

Mukhtar v. Cal. State Univ., Hayward,
    299 F.3d 1053 (9th Cir. 2002) ........................................................................ 3

New Hampshire v. Maine,
    532 U.S. 742 (2001) ........................................................................................ 9

Original Appalachian Artworks, Inc. v. Blue Box Factory (USA) Ltd.,
    577 F. Supp. 625 (S.D.N.Y. 1983) ................................................................. 6

Reeves v. Commonwealth Edison Co.,
    No. 06 C 5540, 2008 WL 239030 (N.D. Ill. Jan. 28, 2008) ......................... 10

Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp.,
    562 F.2d 1157 (9th Cir. 1977) ........................................................................ 9

Smith v. Jackson,
    84 F.3d 1213 (9th Cir. 1996) .......................................................................... 4

Three Boys Music Corp. v. Bolton,
    212 F.3d 477 (9th Cir. 2000) .......................................................................... 8

United States v. Libby,
    461 F. Supp. 2d 3 (D.D.C. 2006) ................................................................. 12

United States v. Scholl,
    166 F.3d 964 (9th Cir. 1999) ........................................................................ 12

United States v. Purham,
    725 F.2d 450 (8th Cir. 1984) ........................................................................ 12

Universal City Studios, Inc. v. J.A.R. Sales, Inc.,
    No. 82-4892-AAH (Bx), 1982 WL 1279 (C.D. Cal. Oct. 20, 1982) ............. 6

Zella v. E.W. Scripps Co.,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) .......................................................... 8

**Statutes**

Federal Rules of Evidence

    Rule 26(a)(2) ..................................................................................................... 2

    Rule 702 ..................................................................................................... 1, 11

    Rule 403 ................................................................................................... 11, 12

## Preliminary Statement

MGA argues incongruously that Menell does not intend to instruct the jury on the law, while offering his opinions on the applicable copyright infringement test, "protected elements" under copyright law, the "substantial similarity" standard, and the scope of protection afforded to Carter Bryant's drawings, as well as such ultimate issues as whether the BRATZ dolls are "substantially similar" to or "infringe copyright" in Bryant's drawings. Such testimony clearly usurps the roles of both the Court and the jury and is not proper.

That is especially so because Menell not only intends to instruct the jury on the law, but intends to instruct them on the *wrong* law. For example, Menell's filtration analysis cannot be used in the Ninth Circuit because it is *reversible error* to fail to compare ideas (which Menell argues must be filtered out) as part of the extrinsic test. The Court should not permit MGA's expert to instruct the jury on erroneous legal principles. MGA's attempt to show that Menell applied the correct copyright law because his views are consistent with Professor Lind's analysis (which MGA appears to admit is correct) also fails. Quite simply, their analyses are not consistent. Rather, MGA's assertions are misleadingly based on selective quotations of Professor Lind taken out of context. It is precisely because their views are inconsistent -- with Lind's being correct -- that MGA inconsistently argues that Menell's testimony is proper because it would "assist the jury . . . in properly applying . . . copyright principles," while simultaneously seeking to exclude Professor Lind's accurate testimony on the same subject.

MGA also has no answer to Mattel's showing that Menell's opinions must be stricken under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and Rule 702 because he ignored such key facts as (i) evidence of "intermediate copying" by MGA, (ii) evidence of "direct copying" by MGA, and (iii) MGA's admission that the BRATZ dolls are "derivative" of Bryant's drawings. Further, MGA has no answer to Mattel's showing that (i) MGA is estopped from applying the originality, merger,

functionality and *scenes-a-faire* doctrines, (ii) Menell misstates the scope of protection afforded to Bryant's drawings, and (iii) Menell failed to account for Bratz' intended audience -- children -- which should lower the standard of "substantial similarity" under Ninth Circuit infringement analysis. MGA also does not contest that (i) there is no need for expert testimony on popular culture, (ii) Menell is not qualified to testify on jury deliberations, and (iii) Menell's comparison of the BRATZ dolls with Bryant's drawings would not aid the jury. These are all grounds for exclusion and they are undisputed. Menell should be excluded.[1]

### Argument

### I. MGA HAS NOT SHOWN THAT MENELL'S TESTIMONY WOULD DO ANYTHING OTHER THAN INSTRUCT THE JURY ON THE LAW

MGA's Opposition Memorandum notes that Menell is accustomed to instructing judges on copyright law.[2] His report reflects an effort to eliminate the middleman by instructing the jury directly. MGA's current contention that Menell will not do so flatly ignores the opinions offered in his report, which is required to set forth the trial testimony he will give. See, e.g., Kim v. Gen. Motors Corp., No. CV02-2404L, 2004 WL 5499006, at *2 (W.D. Wash. Dec. 15. 2004) ("expert's written report is intended to set forth the substance of the direct examination, it should be written in a manner that reflects the testimony to be given by the witness"); Martini v. Hendricks, 188 F. Supp. 2d 505, 531 (D.N.J. 2002) ("the reports reflect the experts' anticipated testimony"); Fed. R. Civ. Proc. 26(a)(2) (same). In fact, Menell himself admits that the opinions in his report, as well as his rebuttal reports, "embrace all of the opinions that [he] intends on giving at the trial."[3]

---

[1] MGA concedes that, in light of this Court's April 15, 2008 Order, Professor Menell's opinions regarding Carter Bryant's employment agreement with Mattel must be excluded.

[2] MGA Parties' Memorandum of Points and Authorities in Opposition to Mattel, Inc.'s Motion *In Limine* No. 12 ("Opp. Mem.") at 9:6-7.

[3] Transcript of Deposition of Peter S. Menell taken April 1, 2008 ("Menell Tr."), at 88:6-11, attached as Exhibit 10 to the concurrently filed Supplemental Declaration (footnote continued)

-2-
MATTEL'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 12

1     Menell opines on issues that are explicitly addressed by case law, such as the
2 proper copyright infringement test, "protected elements" under copyright law, the
3 "substantial similarity" standard, and the "scope of protection" afforded to Bryant's
4 drawings.[4] Menell admits that there are portions of his report written "very much in a
5 manner that a judge might do if he was writing up an opinion."[5] This is all improper.
6 See, e.g., Aguilar v. Int'l Longshoremen's Union, 966 F.2d 443, 447 (9th Cir. 1992)
7 (holding that matters of law are "inappropriate subjects for expert testimony").
8     Menell also opines on ultimate legal issues, offering conclusions such as:
9
10
11
12     Menell testified that he would
13 offer these conclusions at trial.[8] Such testimony improperly usurps the jury's role.
14 See, e.g., Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1066, n. 10 (9th Cir.
15 2002) ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an
16 opinion on an ultimate issue of law"); Estate of Bojcic v. City of San Jose, No. C05
17 3877 RS, 2007 WL 3314008, at *2 (N.D. Cal. Nov. 6, 2007) (holding that "[w]hen an
18 expert undertakes to tell the jury what result to reach, this does not aid the jury in

---

of Jon D. Corey in support of Mattel's Motions In Limine Nos. 1-14 ("Supp. Corey Dec.").
[4] See, e.g., Report of Peter S. Menell, dated February 11, 2008 ("Menell Report"), ¶ 22 (titled "Infringement Analysis"); ¶ 24 (titled "Copyright Protected Material"); ¶ 35 (titled "Comparison: "Substantial Similarity"); and ¶ 36 (titled "Compilations of Unprotected Elements: Virtual Identity"), attached as Exhibit 69 to the Declaration of B. Dylan Proctor in support of Mattel's Motions In Limine 1-13, dated April 14, 2008 ("Proctor Dec.").
[5] Menell Tr., at 272:25-273:5, Supp. Corey Dec. Exh. 10.
[6] Menell Report ¶ 65, Proctor Dec. Exh. 69.
[7] Menell Report ¶ 66, Proctor Dec. Exh. 69; see also Menell Tr. at 96:13-20, Supp. Corey Dec. Exh. 10.
[8] Menell Tr. at 96:24-97:2, Supp. Corey Dec. Exh. 10.

making a decision, but rather attempts to substitute the expert's judgment for the jury's.") (citation omitted).

## II. MGA HAS NOT REBUTTED MATTEL'S SHOWING THAT MENELL INTENDS TO INSTRUCT THE JURY ON THE *WRONG* LAW

### A. Menell's Abstraction-Filtration-Comparison Analysis Is Contrary to Ninth Circuit Law and Professor Lind's Opinion

Menell's testimony is especially improper because he intends to instruct the jury on the *wrong* law. Menell simply objects to the Ninth Circuit analysis and believes that the Second Circuit presents

Tacitly admitting that Professor Lind is correct, MGA attempts to harmonize Menell's testimony with Ninth Circuit law by showing that it is purportedly consistent with Professor Lind's testimony.[10] Not so. Professor Lind merely testified that it was "fair" of Menell to "argue what standard of infringement should be used," <u>not</u> that Menell's analysis itself was "fair."[11] Professor Lind disagrees with the basic premise of Menell's analysis -- filtration -- because in the Ninth Circuit, although unprotected elements are identified during the extrinsic test, they are *not* filtered out.[12] Instead, the jury must be "able to take into account unprotected elements in context."[13] As Professor Lind explained, "it's *reversible error*" for a court to fail to compare the ideas in the works at issue.[14] See Jada Toys, Inc. v. Mattel, Inc., No. 05-55627, 2008

---

[9] Menell Tr. at 243:6-11; see also, Menell Tr. at 237:19-21 ("[T]here are some opinions in the Ninth Circuit that are, I think, somewhat less careful than I would like."), Supp. Corey Dec. Exh. 10.
[10] Opp. Mem. at 4-8.
[11] Transcript of Deposition of Professor Robert Lind taken April 25, 2008 ("Lind Tr."), at 179:4-17, Supp. Corey Dec. Exh. 9.
[12] Lind Tr. at 66:25-67:10, Supp. Corey Dec. Exh. 9.
[13] Lind Tr. at 88:10-12, Supp. Corey Dec. Exh. 9. See Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of the extrinsic test, one must "consider[] whether two works share a similarity of *ideas* and expression") (emphasis added), and Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994) (same).
[14] Lind Tr. at 39:4-10 (emphasis added)., Supp. Corey Dec. Exh. 9. In fact, MGA itself has previously acknowledged that the extrinsic test requires a comparison
(footnote continued)

-4-

WL 450891, at *6 (9th Cir. Feb. 21, 2008) (reversing grant of summary judgment because the trial court failed to compare the ideas in the plaintiff's and the defendant's works).

Similarly, Professor Lind testified that *scenes-a-faire*, merger, originality, and public domain materials are "general categories" of "limiting factors," but disagreed with Menell's use of these doctrines to filter out elements of Bryant's drawings.[15] Professor Lind also disagreed with Menell that individual elements of Bryant's drawings, such as "the eyes," "the nose," the "face," and the "shape of the head," can not be protected by copyright:

> A. I made an analysis by looking at other expert witnesses and looking at the photographs, et cetera; that *such things as the eyes, the nose, the face,* they seemed to me to be something that a jury *could* find to be protected.[16]
>
> A... [I]t certainly seems that a jury could find that the specifics here in terms of *shape of head*, the size in comparison to others, what the face looks like, that is something the jury *could* find protectable.[17]

Professor Lind is, of course, correct. Even if the idea of a "big head" or "big eyes" were not protectable, an original *expression* of such an "idea" is. See, e.g., Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004) ("One artist's version of a doll face with upturned nose, bow lips, and widely spaced eyes will be irresistible to an eight-year-old collector.... We can surmise that in the highly competitive, billion-dollar doll industry, getting the doll's face and expression exactly right is crucial to success.").

---

of ideas present in the two works. See MGA Opposition to Mattel's Motion for Partial Summary Judgment, at 5:17-18, Proctor Dec. Exh. 68.
[15] Lind Tr. at 66:25-67:10, Supp. Corey Dec. Exh. 9. Professor Lind also explained that functionality "does not come into play with two-dimensional works," such as Bryant's drawings, because they are not useful articles. Lind Tr. at 99:25-100:6, Supp. Corey Dec. Exh. 9.
[16] Lind Tr. at 78:10-17, Supp. Corey Dec. Exh. 9.
[17] Lind Tr. at 106:2-6, Supp. Corey Dec. Exh. 9.

### B. The Cases Offered by MGA to Support Menell's Filtration Test Are Not Applicable to Non-Linear Works

The cases offered by MGA in purported support for Menell's "filtration" test are inapposite. They address linear works (*e.g.*, computer programs or films) in which the viewer perceives the work in a linear sequence. For example, Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir. 1994), which MGA describes as "[t]he seminal decision on this issue," addressed computer graphic interfaces that appeared to the viewer as a sequential series of menus and drop-down windows. Apple specifically analogized the graphic user interfaces at issue to other linear works, such as "videogames."[18] Id. at 1445. Similarly, in Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129 (C.D. Cal. 2001), the challenged work was a "film" (*i.e.*, a linear work).[19]

In contrast, the BRATZ drawings and dolls are non-linear works intended to be perceived *all at once*, not in sequence as are the computer programs and film addressed in the cases cited by MGA. See, e.g., Original Appalachian Artworks, Inc. v. Blue Box Factory (USA) Ltd., 577 F. Supp. 625, 628 (S.D.N.Y. 1983) (holding that unlike linear works, "a three-dimensional work is created to be perceived as an entirety" and "[t]he differences and similarities are not to be assessed separately, but rather the dolls should be evaluated in total concept and feel"); Universal City Studios, Inc. v. J.A.R. Sales, Inc., No. 82-4892-AAH (Bx), 1982 WL 1279, at *3 (C.D. Cal. Oct. 20, 1982) (comparing "total concept and feel" of the dolls at issue). Thus, as explained by Professor Lind, "the analysis in Apple . . . doesn't apply here."[20] Further, each case relied on by MGA was decided prior to the Ninth

---

[18] Apple is also distinguishable because the plaintiff had licensed 90 percent of the challenged product to the defendant. The court was looking at 10 percent of the allegedly infringed product, as opposed to 100 percent here. Id. at 144.

[19] Cavalier v. Random House, Inc., 297 F.3d 815 (9th Cir. 2002), is also inapposite because the defendants claimed the works were independently created, which is not the case here. Further, Cavalier held that ideas must be compared as part of the extrinsic test (id. at 822) and that "consideration of the *total concept and feel*" of the works was appropriate (id. at 826) (emphasis added), which is not consistent with Menell's analysis.

[20] Lind Tr. at 84:17-19, Supp. Corey Dec. Exh. 9.

Circuit's February 21, 2008 decision in Jada Toys, which held it to be *reversible error* to fail to compare ideas as part of the extrinsic test. Clearly Jada Toys governs. See Balbirer v. Austin, 790 F.2d 1524, 1528 (11th Cir. 1986) ("It is the general rule that when two judgments conflict, the subsequent judgment controls"); Jackson v. United States, 56 F.2d 340, 342 (9th Cir. 1932) ("later decisions [] are regarded by us as controlling authority").

### C. MGA Has Failed to Rebut Professor Lind's Showing that the Originality, Merger, Functionality, and *Scenes-A-Faire* Doctrines Relied upon by Menell Are Inapplicable

Menell's opinions are also unreliable under Daubert because he filters out elements from Bryant's drawings using the merger, *scenes-a-faire*, and functionality doctrines (Opp. Mem. at 4), even though the Ninth Circuit typically applies those doctrines only as part of the "independent creation" defense. See, e.g., Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000); Atari Games Corp. v. Nintendo of Am., Inc., No. C 88-4805 FMS, 1993 WL 207548, at *9 (N.D. Cal. May 18, 1993). Because MGA has admitted that the BRATZ dolls are "derivative" of Bryant's drawings, it is estopped from asserting that defense, which is inapplicable in any case.[21] Further, as Professor Lind explained, originality, merger, functionality and *scenes-a-faire* limiting doctrines are not applicable to non-linear pictorial works, such as Bryant's drawings, which must be viewed as a whole.[22]

Menell also ignored that even though Bryant's drawings use well-known features, such as big heads and big eyes, they are nonetheless original.[23] As Professor Lind testified, that Bryant claims the Seventeen Magazine ads were his "inspiration" does not mean that he "copied" them.[24] No law holds that a work is not protectable merely because its author was "inspired" by prior works or popular culture.

Menell's argument that works are protectable only if created in "a clean

---

[21] See Motion at 15, 21-22.
[22] Lind Tr. at 84:5-11, Supp. Corey Dec. Exh. 9.
[23] Menell Report at ¶¶ 46, 65-66, Proctor Dec. Exh. 69.
[24] Lind Tr. at 101:1-9, Supp. Corey Dec. Exh. 9.

room"[25] is further undermined by MGA's own complaint. For example, Menell contends that the concept of big head-big feet-big eyes was not original because oversized heads and feet had appeared in the Steve Madden ads, and oversized heads and eyes had appeared in Japanese anime art.[26] Yet, according to MGA, it was the expression of these elements *in the same visual image* that was creative and unprecedented. See MGA Complaint ¶ 25 (Bratz dolls "looked like no other" because they had "disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet . . . , and up-to-date fashions");[27] see also Bryant Complaint at p. 14 ("Bryant's ideas, concepts, drawings and designs for, and contributions to Bratz were and are independent and original works").[28]

### D. MGA Has Failed to Rebut Professor Lind's Showing that the "Inverse Ratio" Rule Lowers the Standard of Proof for Substantial Similarity

MGA attempts to sidestep the Ninth Circuit's holding that "we require a lower standard of proof of substantial similarity when a high degree of access is shown" (Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000) (explaining the "inverse ratio" rule)), by arguing that access is relevant only to factual copying, not legally actionable copying.[29] But MGA's only support comes from an unpublished lower court decision, BensBargains.net, LLC v. xpbargains.com, No. 06cv1445 BTM, 2007 WL 2385092 (S.D. Cal. Aug. 16, 2007), which failed to acknowledge that "substantial similarity" is the *sine qua non* of legally actionable copying.

The remainder of MGA's citations are unavailing because they say only that access does not *obviate* the need to show substantial similarity.[30] They do not hold that the burden to prove substantial similarity is unaffected by proof of access, which

---

[25] Menell Report ¶¶ 45-52, Proctor Dec. Exh 69.
[26] Menell Report at ¶¶ 46, 65-66, Proctor Dec. Exh. 69.
[27] Proctor Dec., Exh. 15.
[28] Supplemental Declaration of B. Dylan Proctor in support of Mattel's Motions *In Limine* Nos. 1-14 ("Supp. Proctor Dec."), Exh. 9.
[29] Opp. Mem. at 14-15, n. 5.
[30] See Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007); Berkla v. Corel Corp., 66 F. Supp. 2d 1129, 1131 (E.D. Cal. 1999).

is what the inverse ratio rule addresses.

### E. MGA Has No Answer to Professor Lind's Showing that Menell Misstated the Scope of Protection Afforded to Bryant's Drawings

MGA does not contest that Menell misstates the scope of protection afforded to Bryant's drawings or fails to account for the BRATZ "intended audience," who are children, which lowers the standard of infringement under Ninth Circuit law.[31] See, e.g., McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 321 (9th Cir. 1987) ("Works that are not factual receive much broader protection under the copyright laws because of the endless variations of expression available to the artist."); Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp., 562 F.2d 1157, 1166 (9th Cir. 1977) (children "certainly are not bent upon detecting disparities or even readily observing upon inspection such fine details as the point at which the necks are molded.") (citations omitted).[32]

### III. MGA HAS NO ANSWER TO MATTEL'S SHOWING THAT, UNDER DAUBERT, AN EXPERT CANNOT IGNORE CRITICAL FACTS

MGA does not contest that, as Professor Lind's report and Mattel's moving papers point out, Menell ignored key evidence. This includes, among else:

- intermediate copying by MGA: (i) MGA used Bryant's drawings to market the BRATZ dolls to retailers; (ii) Bryant's drawings were used at the New York and the Hong Kong toy fairs; and (iii) Bryant's drawings were submitted as part of MGA's copyright applications;[33]

- direct copying by MGA: MGA registered the same BRATZ drawings as Mattel with the U.S. Copyright Office;[34]

---

[31] See Motion at 22.
[32] MGA also does not dispute the legal principle that positions successfully taken in prior litigation estop a party from asserting the contrary in subsequent litigation. Nor does MGA dispute that it prevailed as a plaintiff in a suit in Hong Kong *for infringement of Bryant's drawings* on the theory that the drawings were fully protected, not thinly protected, by copyright law. Accordingly, Menell should be barred from testifying to the jury that Bryant's drawings are not entirely original and entitled to only a "thin" scope of protection. See, e.g., New Hampshire v. Maine, 532 U.S. 742, 750-751 (2001) (estopping plaintiff from taking position contrary to that successfully taken in prior litigation).
[33] See Motion at 14.
[34] See Motion at 15.

- MGA's filings with the U.S. Copyright Office admitting that the BRATZ dolls are "derivative" of Bryant's drawings;[35]

- Carter Bryant's admission that his drawings were "original works of authorship;"[36]

- Isaac Larian's sworn affidavit that a competitor's dolls "infringed [Bryant's] 2 dimensional drawings in which copyright subsists;"[37]

- MGA's successful litigation in Hong Kong *for infringement of Bryant's drawings* on the theory that the drawings were fully protected, not thinly protected by copyright law;[38]

- MGA's allegation that Bratz dolls "look[] like no other" (*i.e.*, are original) precisely because they had "disproportionately large heads," "big dramatic eyes and lips" and "oversized feet" -- all elements filtered out as unoriginal expression by Menell;[39] and

- Carter Bryant's allegation that his "ideas, concepts, drawings and designs for, and contributions to Bratz were and are independent and *original* works" and "that Bratz dolls were derived from Bryant's original idea, concept and work;"[40]

Menell's failure to consider key evidence requires the exclusion of Menell's testimony. See, e.g., Reeves v. Commonwealth Edison Co., No. 06 C 5540, 2008 WL 239030, at *5 (N.D. Ill. Jan. 28, 2008) (precluding expert's opinions because he ignored key facts); In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig., 524 F. Supp. 2d 1166, 1181 (N.D. Cal. 2007) (finding an expert opinion unreliable and inadmissible because the expert ignored evidence contradicting her conclusions).

### IV. MGA HAS NOT SHOWN THAT MENELL HAS THE EXPERTISE TO OFFER NON-LEGAL OPINIONS

MGA does not contest that Menell: (1) has no special expertise in popular culture other than as a "contemporary father" and "copyright law professor;"[41] (2) is not qualified to opine on what juries may or may not conclude upon being presented with copyright issues because he has never tried a case to a jury or even appeared in

---

[35] See Motion at 16.
[36] See Motion at 21, n. 31.
[37] See Motion at 21, n. 33.
[38] See Motion at 21, n. 33.
[39] See MGA Compl. ¶ 25, Proctor Dec. Exh. 15.
[40] See Bryant Compl. ¶ 64 & p. 14 (emphasis added), Supp. Proctor Dec. Exh. 9.
[41] Menell Tr. at 62:24-65:2, Supp. Corey Dec. Exh. 10.

court as a lawyer;[42] and (3) has compared the body elements and facial features of the BRATZ dolls with the BRATZ drawings based purely on things that are "pretty self evident" and "that don't require artistic training."[43] Accordingly, Menell must be precluded from testifying regarding these topics as his opinions are not based on "specialized" knowledge and would not assist the jury. MGA cannot submit Menell's testimony regarding doll design or art and fashion history on the grounds of Menell's purported "in depth knowledge and understanding of applicable copyright principles"[44] because these categories of testimony are not related. Daubert, 509 U.S. 579; Fed. R. Evid. 702.

MGA also cannot offer Menell's testimony purely "based on the evidence offered in the case by other subject matter experts."[45] If Menell's art history, fashion history and doll design testimony is based solely on the opinions of other experts (as Menell admitted when he testified that he "would certainly defer to trained subject matter experts" on issues that require artistic training),[46] then his testimony on these subjects would be cumulative and not helpful to the jury. See Fed. R. Evid. 702, 403.

## V. MGA CONCEDES THAT MENELL'S TESTIMONY REGARDING THE INVENTIONS AGREEMENT MUST ALSO BE EXCLUDED

On April 25, 2008, this Court held that Bryant's Employee Confidential Information and Inventions Agreement with Mattel (the "Inventions Agreement") is clear and unambiguous, that it explicitly conveyed to Mattel any copyrights or designs conceived by Bryant while a Mattel employee, and that whether or not Bryant worked on the Bratz designs on his own time, rather than during working hours at Mattel, is irrelevant.[47] In light of that Order, MGA concedes that Menell's testimony

---

[42] Menell Tr., at 59:2-11, Supp. Corey Dec. Exh. 10.
[43] Menell Tr., at 163:5-8, 68:11-16, Supp. Corey Dec. Exh. 10.
[44] Opp. Mem. at 9:2-3.
[45] Opp. Mem. at 9:8-10.
[46] Menell Tr. at 68:11-19, Supp. Corey Dec. Exh. 10.
[47] See Order regarding the Parties' Motions for Partial Summary Judgment, dated April 25, 2008, at 4-5, attached as Exhibit 78 to the concurrently lodged Declaration of Tamar Buchakjian in support of Mattel's Motions In Limine Nos. 1-13.

regarding the Inventions Agreement must be excluded.[48]

## VI. MGA CANNOT MOOT THE COURT'S "GATEKEEPER" ROLE

Last, MGA's argument that Menell's testimony would not be a "waste of time" because it would fit within the time allotted MGA to present its case (Opp. Mem. at 14) misses the point. The standard for whether expert testimony would cause "undue delay" is not whether it would exceed the time allotted to the party for trial, but whether it would "assist the jury" or prove "cumulative." U.S. v. Scholl, 166 F.3d 964, 973-74 (9th Cir. 1999); U.S. v. Libby, 461 F. Supp. 2d 3, 18 (D.D.C. 2006).

MGA's further argument that Menell's testimony would not violate Rule 403 because the jury "will follow his opinions" (Opp. Mem. at 14:16-19) is simply bizarre. Courts subject expert testimony to stricter scrutiny precisely because juries may follow expert opinions, thus relinquishing their own role as triers of fact. See, e.g., United States v. Purham, 725 F.2d 450, 454 (8th Cir. 1984) (precluding expert testimony because of "the unfair prejudice which might have resulted because of the aura of reliability and trustworthiness that surrounds [expert] evidence"). This is particularly true here. MGA evidently intends to tell the jury that "Menell is unquestionably one of the top copyright law experts in the United States" and that he instructs federal judges on copyright law.[49] Permitting the jury to be influenced by Menell's biased, prejudicial and unhelpful opinions would be improper under Rule 403 even if they met Daubert standards, which they do not.

### Conclusion

For the foregoing reasons, the Court should grant Mattel's motion in its entirety.

DATED: May 8, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By John Quinn O.S.
John B. Quinn
Attorneys for Mattel, Inc.

---

[48] Opp. Mem. at 1, n. 1.
[49] Opp. Mem. at 9:6-7.

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On May 8, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 12 TO EXCLUDE THE TESTIMONY OF PETER S. MENELL** on the parties in this action as follows:

| | |
|---|---|
| Thomas J. Nolan<br>**Skadden, Arps, Slate, Meageher & Flom LLP**<br>300 South Grand Ave., Ste. 3400<br>Los Angeles, CA 90071 | Mark E. Overland<br>David C. Scheper<br>Alexander H. Cote<br>**Overland Borenstein Scheper & Kim LLP**<br>601 West Fifth Street, 12th Floor<br>Los Angeles, CA 90017 |

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 8, 2008, at Los Angeles, California.

*/s/ Dave Quintana*
NOW LEGAL -- Dave Quintana