QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>  Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>NOTICE OF LODGING IN SUPPORT OF MATTEL, INC.'S MOTIONS *IN LIMINE* NO. 2<br><br>Date: May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that Mattel, Inc. hereby lodges the following treatise section in support of its Reply to Mattel's Motion in Limine No. 2:

1. Paul Goldstein, <u>Goldstein on Copyright</u> § 11.3 (3d ed. 1997).

DATED: May 8, 2008   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By_____
Juan Pablo Albán
Attorneys for Mattel, Inc.

Case 2:04-cv-09049-DOC-RNB   Document 3535-2   Filed 05/08/08   Page 3 of 8   Page ID #:60897

ASPEN PUBLISHERS

# Goldstein on Copyright

## Third Edition

**Paul Goldstein**
Lillick Professor of Law
Stanford University

Volume II


Wolters Kluwer
Law & Business

AUSTIN   BOSTON   CHICAGO   NEW YORK   THE NETHERLANDS

2007 Supplement

Case 2:04-cv-09049-DOC-RNB Document 3535-2 Filed 05/08/08 Page 4 of 8 Page ID #:60898

### §11.3 ABANDONMENT

Courts will hold that a copyright has been abandoned, and that an infringer has a complete defense, any time the copyright owner commits "some overt act indicative of an intent to surrender rights in the copyrighted work and to allow the public to copy it."[1] The requirement of an overt act distinguishes copyright abandonment from the abandonment of personal property and the abandonment of nonpossessory interests in real property, for which less salient acts—nonuse by the owner or uncontrolled use by others—can support a finding of abandonment.[2] The reason for the distinction between copyright and tangible personal and real property is that tangibles have a physical dimension that enables their owner readily to perceive trespasses, thus justifying abandonment as a penalty against the owner who fails to police these trespasses. Because the subject matter of copyright lacks a physical dimension, no copyright owner can possibly scout out every single infringement that may occur in every corner of the country. Courts recognize the unfairness and inefficiency of a rule that would require universal vigilance, and constant litigation, as the price for preserving a copyright, and consequently require proof that the copyright owner overtly demonstrated an intent to abandon before they will find that the copyright owner has abandoned its rights.

A copyright owner will sometimes declare its intent to abandon unequivocally, through a statement appearing on the work that the work is free to be reproduced, performed or displayed by anyone who wishes to make these uses.[3] Courts will also find

---

§11.3  [1] Rohauer v. Killiam Shows, Inc., 379 F. Supp. 723, 730, 183 U.S.P.Q. 592 (S.D.N.Y. 1974), rev'd on other grounds, 551 F.2d 484 (2d Cir.), cert. denied, 431 U.S. 949, 194 U.S.P.Q. 304 (1977). See also Dam Things from Denmark v. Russ Berrie & Co., 290 F.3d 548, 560, 63 U.S.P.Q.2d 1001 (3d Cir. 2002) ("While there is a split of authority as to whether an overt act is necessary to establish abandonment, it is undisputed there must be either an act, or a failure to act, from which we can readily infer an intent to abandon the right.").

[2] See 2 American Law of Property §§8.96, 9.37 (A. James Casner ed., 1952); Ray Brown, The Law of Personal Property §1.6 (Walter Raushenbush ed., 3d ed., 1975).

[3] See, e.g., Hadady Corp. v. Dean Witter Reynolds, Inc., 739 F. Supp. 1392, 1398-1399, 16 U.S.P.Q.2d 1149 (C.D. Cal. 1990) (legend on newsletter stating

**Legal and Equitable Defenses** §11.3

abandonment in less direct but nonetheless overt acts, such as the copyright owner's destruction of the only copy of the copyrighted work,[4] or his statement that he has left a "gift" to the world when taken together with his distribution of reproductions of the work without claim of copyright.[5] One court has suggested that rights may be partially abandoned, as where the copyright owner of a computer game encouraged players to make and freely distribute new levels of play based on the game, but never overtly abandoned the exclusive right to profit commercially from the new levels of play.[6] But acts of omission, such as failure to prosecute copyright infringements,[7] to affirmatively claim copyright in

---

"The information contained in this letter is protected by U.S. Copyright laws through noon EST on the 2d day after its release" was conclusive evidence of abandonment of copyright after two-day period).

[4] Pacific & S. Co. v. Duncan, 572 F. Supp. 1186, 1196 (N.D. Ga. 1983) ("Where a copyright holder evidences an intention to abandon his copyright by an overt act of abandonment, protection ceases. [Plaintiff] WXIA's destruction of its broadcast videotapes is certainly such an overt act."), *aff'd in part, rev'd in part*, 744 F.2d 1490, 1500, 224 U.S.P.Q. 131 (11th Cir. 1984) (deferring to trial court's factfinding of intent to abandon; "Certainly the erasure shows that WXIA did not desire to distribute post-broadcast copies of parts of the program. Failure to distribute a work does not mean, however, that an owner intends to allow others to use the work and it is questionable whether WXIA had such an intent. . . . Still, we do not say that destruction of the only copy of a work can never establish intent to abandon."), *cert. denied*, 471 U.S. 1004 (1985).

[5] Bell v. Combined Registry Co., 397 F. Supp. 1241, 1249, 188 U.S.P.Q. 707 (N.D. Ill. 1975) ("A limited distribution, even if not widespread enough to effect a forfeiture, can, coupled with the requisite intent, cause an abandonment."), *aff'd on other grounds*, 536 F.2d 164, 191 U.S.P.Q. 493 (7th Cir.), *cert. denied*, 429 U.S. 1001, 192 U.S.P.Q. 121 (1976).

[6] Micro Star v. Formgen, 154 F.3d 1107, 1114, 48 U.S.P.Q.2d 1026 (9th Cir. 1998).

[7] *See, e.g.*, Hampton v. Paramount Pictures Corp., 279 F.2d 100, 104, 125 U.S.P.Q. 623 (9th Cir.) ("Evidence of such an overt act is here totally lacking. There was at most lack of action."), *cert. denied*, 364 U.S. 882, 127 U.S.P.Q. 555 (1960); W.H. Anderson Co. v. Baldwin Law Publg. Co., 27 F.2d 82, 89 (6th Cir. 1928); Encyclopaedia Britannica Educ. Corp. v. Crooks, 542 F. Supp. 1156, 1180, 214 U.S.P.Q. 697 (W.D.N.Y. 1982); Metro-Goldwyn-Mayer v. Showcase Atlanta Coop. Prods., Inc., 479 F. Supp. 351, 362, 203 U.S.P.Q. 822 (N.D. Ga. 1979); Lottie Joplin Thomas Trust v. Crown Publishers, 456 F. Supp. 531, 535, 195 U.S.P.Q. 49 (S.D.N.Y. 1977), *aff'd per curiam*, 592 F.2d 651, 199 U.S.P.Q. 449 (2d Cir. 1978); Rohauer v. Killiam Shows, Inc., 379 F. Supp. 723, 730-731, 183

§11.3                                                                    Defenses

material orally communicated to others,[8] to renew the copyright in motion pictures derived from the copyrighted work[9] or to promote the copyrighted work[10] will not constitute evidence of the intent required for abandonment.

The form of overt conduct that has generated the most frequent claims of abandonment has been the copyright owner's dissemination of its work without the copyright notice that the Copyright Act required before the effective date of the Berne Implementation Amendments, March 1, 1989.[11] Courts have found abandonment in cases where the copyright owner's omission of copyright notice was insufficient to forfeit copyright under the statutory notice provisions, but nonetheless indicated an intention to relinquish all rights in the work.[12] However, courts

---

U.S.P.Q. 592 (S.D.N.Y. 1974) (failure for nineteen years to restrict motion picture's unlicensed exhibition did not constitute abandonment), *rev'd on other grounds*, 551 F.2d 484, 192 U.S.P.Q. 545 (2d Cir.), *cert. denied*, 431 U.S. 949, 194 U.S.P.Q. 304 (1977); Southwestern Bell Tel. Co. v. Nationwide Indep. Directory Serv., Inc., 371 F. Supp. 900, 905-906, 182 U.S.P.Q. 193 (W.D. Ark. 1974); L&L White Metal Casting Corp. v. Cornell Metal Specialties Corp., 353 F. Supp. 1170, 1174, 175 U.S.P.Q. 464 (E.D.N.Y. 1972), *aff'd per curiam*, 177 U.S.P.Q. 673 (2d Cir. 1973).

*See also* Schatt v. Curtis Mgmt. Group, Inc., 764 F. Supp. 902, 907-908, 19 U.S.P.Q.2d 1038 (S.D.N.Y. 1991) (where defendant had proved widespread, unpoliced reproduction of photographs, evidence of plaintiff's efforts to stop unauthorized use of his photographs was sufficient to avoid summary judgment).

*But cf.* Sinkler v. Goldsmith, 623 F. Supp. 727, 732 (D. Ariz. 1985) (copyright owner's acquiescence in publication of letters constituted abandonment).

[8] Marvin Worth Prods. v. Superior Film Corp., 319 F. Supp. 1269, 1272-1273, 168 U.S.P.Q. 693 (S.D.N.Y. 1970).

[9] Filmvideo Releasing Corp. v. Hastings, 426 F. Supp. 690, 695, 193 U.S.P.Q. 305 (S.D.N.Y. 1976).

[10] Dodd, Mead & Co. v. Lilienthal, 514 F. Supp. 105, 108, 213 U.S.P.Q. 46 (S.D.N.Y. 1981) (in less than one year, plaintiff printed 14,500 copies of the copyrighted work and spent more than $66,500 on manufacturing and marketing; "absolutely no evidence to suggest [plaintiff] intended to give up its exclusive rights in the book").

[11] *See* §3.4, above.

[12] *See, e.g.*, Bell v. Combined Registry Co., 397 F. Supp. 1241, 1249, 188 U.S.P.Q. 707 (N.D. Ill. 1975) ("A limited distribution, even if not widespread enough to effect a forfeiture, can, coupled with the requisite intent, cause an abandonment."), *aff'd on other grounds*, 536 F.2d 164, 191 U.S.P.Q. 493 (7th Cir.), *cert. denied*, 429 U.S. 1001, 192 U.S.P.Q. 121 (1976).

**Legal and Equitable Defenses** §11.3

will not find abandonment where, even though the owner forfeited copyright in parts of its work by publication without notice, it revealed no intention to abandon rights in the work overall.[13]

Cases dealing with omission of copyright notice have generally upheld the requirement that an affirmative intention to abandon be shown before abandonment will be found. Courts have found abandonment where the copyright owner allowed subcontractors to use and display its copyrighted architectural plans without giving anyone notice of his claim to copyright;[14] where the copyright owner consented to industrial use of copyrighted code numbers without notice;[15] and where, in addition to not pursuing infringers, the copyright owner had authorized or acquiesced in the widespread circulation of his work without copyright notice.[16] But courts have found no abandonment where, as a gesture of goodwill, the copyright owner permitted its customers to borrow freely from its copyrighted advertising materials, conditioning permission on the requirement that they append proper copyright

---

[13] *See, e.g.,* National Comics Publns., Inc. v. Fawcett Publns., Inc., 191 F.2d 594, 598, 90 U.S.P.Q. 274 (2d Cir. 1951) (copyright in comic strips not abandoned; "[I]ndeed, although [plaintiff licensee's] negligent omissions may have invalidated many of the copyrights in suit, the very fact that it continuously attempted to publish 'strips' with some sort of copyright notice affixed, however imperfect that may have been, is conclusive evidence that it wished to claim a copyright upon them; and indeed it would have had no conceivable purpose in allowing its rights to lapse."), *modified,* 198 F.2d 929, 94 U.S.P.Q. 289 (2d Cir. 1952).

[14] DeSilva Constr. Corp. v. Herrald, 213 F. Supp. 184, 196, 137 U.S.P.Q. 96 (M.D. Fla. 1962) (although plaintiff's construction of building did not forfeit copyright in the underlying architectural plans, plaintiff's "general conduct . . . clearly indicated a voluntary abandonment of any copyright in said plans . . .").

[15] Lopez v. Electrical Rebuilders, Inc., 416 F. Supp. 1133, 1135, 195 U.S.P.Q. 398 (C.D. Cal. 1976) (abandonment found; "[T]he plaintiff's knowledge of the widespread industry use of the code numbers, combined with the fact that she herself printed price lists for customers using the code numbers without any copyright notice are more than merely consistent with an intent to abandon. . . . Whether or not the plaintiff intended to lose her copyright by this action, she clearly intended to allow public use of the code system without copyright notice.").

[16] Stuff v. E.C. Publns., Inc., 342 F.2d 143, 144 U.S.P.Q. 560 (2d Cir.), *cert. denied,* 382 U.S. 822, 147 U.S.P.Q. 541 (1965). *See. also* Klasmer v. Baltimore Football, Inc., 200 F. Supp. 255, 132 U.S.P.Q. 36 (D. Md. 1961). *But cf.* Rexnord, Inc. v. Modern Handling Sys., Inc., 379 F. Supp. 1190 (D. Del. 1974).

§11.3 Defenses

notice;[17] and where, as part of an effort to limit further infringing sales by two manufacturers, the copyright owner agreed to sales without copyright notice of products upon which manufacture had already begun.[18]

Courts usually keep the rules on copyright abandonment and those governing statutory forfeiture distinct. Courts measure forfeiture arising from the failure to affix copyright notice objectively, without regard to the copyright owner's intentions; forfeiture can result from acts of omission as well as commission occurring before the Berne Implementation Amendments. Abandonment, by contrast, is strictly subjective and turns on the copyright owner's actual intention to surrender its rights; for a court to find abandonment, the copyright owner must have clearly manifested that intention through some affirmative act. This suggests that courts should not find abandonment in cases where the copyright owner has done no more than rely on safeguards provided by the Copyright Act. For example, if a copyright owner sought to bring itself within the safe harbor of section 405(a)(3) by obtaining a written agreement that its licensees would affix copyright notice to all copies of the work that they produced,[19] it should not—at least initially—be held to have abandoned its copyright for failure to police its licensees. If, however, the licensees continually violated the written agreement by distributing copies of the work without notice, the owner's failure to object might begin to look like authorization, and an intent to abandon might properly be inferred.[20]

---

[17] National Council of Young Israel, Inc. v. Feit Co., 347 F. Supp. 1293, 183 U.S.P.Q. 413 (S.D.N.Y. 1972).

[18] H.M. Kolbe Co. v. Armgus Textile Co., 315 F.2d 70, 75, 137 U.S.P.Q. 8 (2d Cir. 1963) (copyright owner's intent was clearly to curb the infringement, not to abandon the copyright). *See also* Imperial Homes Corp. v. Lamont, 458 F.2d 895, 898, 173 U.S.P.Q. 519 (5th Cir. 1972); Baldwin Cooke Co. v. Keith Clark, Inc., 383 F. Supp. 650, 658-659, 183 U.S.P.Q. 209 (N.D. Ill.), *aff'd per curiam*, 505 F.2d 1250, 183 U.S.P.Q. 769 (7th Cir. 1974); Herman Frankel Org. v. Tegman, 367 F. Supp. 1051, 181 U.S.P.Q. 317 (E.D. Mich. 1973); L&L White Metal Casting Corp. v. Cornell Metal Specialties Corp., 353 F. Supp. 1170, 175 U.S.P.Q. 464 (E.D.N.Y. 1972), *aff'd per curiam*, 177 U.S.P.Q. 673 (2d Cir. 1973).

[19] *See* §3.7.1.3, above.

[20] *Cf.* National Council of Young Israel, Inc. v. Feit Co., 347 F. Supp. 1293, 1297, 175 U.S.P.Q. 351 (S.D.N.Y. 1972).