1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11 | CARTER BRYANT, an individual,         | CASE NO. CV 04-9049 SGL (RNBx)
12 |        Plaintiff,                     | Consolidated with
   |                                       | Case No. CV 04-09059
13 |   vs.                                 | Case No. CV 05-02727
14 | MATTEL, INC., a Delaware              | The Honorable Stephen G. Larson
   | corporation,                          |
15 |                                       | **[PUBLIC REDACTED]**
   |        Defendant.                     |
16 |                                       | **REPLY IN SUPPORT OF MATTEL, INC.'S MOTION *IN LIMINE* NO. 15 FOR A PRECLUSION ORDER REGARDING MGA'S DISQUALIFIED EXPERT CHRISTINA TOMIYAMA**
17 | AND CONSOLIDATED ACTIONS              |
18

19

20                                          Hearing Date:   May 21, 2008
21                                          Time:           10:00 a.m.
                                            Place:          Courtroom 1
22
                                            **Phase 1:**
23                                          Pre-Trial Conference: May 19, 2008
                                            Trial Date:     May 27, 2008
24

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

I. DEFENDANTS ADMIT THIS MOTION MUST BE GRANTED IN PART ......................................................................................................... 1

II. DEFENDANTS OFFER NO JUSTIFICATION WHY THEY SHOULD NOT BE PRECLUDED FROM OFFERING TOMIYAMA'S ARGUMENTS ................................................................... 2

    A. Defendants Should Be Precluded From Continuing To Advance Ms. Tomiyama's Argument That ███████████████████████████ ........................... 2

        1. Tomiyama is the source of this defense ........................................ 2

        2. The only relief available to expunge the taint resulting from Skadden's consultation with Ms. Tomiyama is to bar her arguments ................................................................................. 3

        3. Mattel does not have to show inevitable disclosure of privileged information before preclusion is appropriate ............... 4

    B. Defendants Should Be Precluded From Advancing Any Argument Regarding Mattel's Investigation Of Bryant ......................... 6

III. MATTEL DOES NOT HAVE TO DEMONSTRATE DEFENDANTS' "BAD FAITH" ........................................................................................... 7

CONCLUSION ..................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

In re Diamond Ben. Life Ins. Co.,
  2006 WL 616625 (D. Ariz. Mar. 10, 2006) ........................................................ 7

Klund v. High Tech Solutions, Inc.,
  2006 WL 549385 (S.D. Cal. Feb. 27, 2006) ...................................................... 7

MacSteel, Inc. v. Eramnet N. Am.,
  2006 WL 3334011 (E.D. Mich. Nov. 16, 2006) ................................................ 8

Qualcomm Inc. v. Broadcom Corp.,
  2007 WL 935617 (S.D. Cal. Mar. 13, 2007) ...................................................... 7

Shadow Traffic Network v. Superior Court,
  24 Cal. App. 4th 1067 (1994) ............................................................................ 6

United States v. Sumimoto Marine Fire Ins.,
  617 F.2d 1365 (9th Cir. 1980) ........................................................................... 7

**Statutes**

Federal Rule of Civil Procedure, Rule 37 ................................................................. 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Defendants concede that a preclusion order is appropriate, but argue that they should still be permitted to █████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████ Their arguments are based on the erroneous premise that the only purpose of the requested order is to prevent further disclosure of privileged information or to punish misconduct. The purpose of the requested order is also to expunge the taint that Skadden's access to Mattel's privileged information from Ms. Tomiyama has cast over this proceeding. In order to eliminate that taint, MGA should not be permitted to advance, through other witnesses, the particular arguments made by Ms. Tomiyama in her expert report after she has been disqualified.

### Argument

### I.    DEFENDANTS ADMIT THIS MOTION MUST BE GRANTED IN PART

Defendants concede that MGA's counsels' conduct warrants the preclusion of any evidence regarding Mattel's positions in prior litigations, as well as any evidence relating to Mattel's method for evaluating potential infringements. (Opp. at 2-3.) Further, defendants agree that they should not be permitted to argue that █████████████████████████████████████ (Opp. at 3.) MGA concedes that Mattel is entitled to an instruction that ████ █████████████████████, but complains that Mattel's instruction omits "the significance of the extrinsic and intrinsic tests." (Opp. at 4.) That other instructions proposed by the parties may also be appropriate is not a basis for rejecting the simple (and correct) instruction proposed by Mattel that a ██████████████ ████████████████.

## II. DEFENDANTS OFFER NO JUSTIFICATION WHY THEY SHOULD NOT BE PRECLUDED FROM OFFERING TOMIYAMA'S ARGUMENTS

### A. Defendants Should Be Precluded From Continuing To Advance Ms. Tomiyama's Argument That The ▮▮▮▮▮▮▮▮

#### 1. Tomiyama is the source of this defense

The evidence strongly suggests (and MGA offers no contrary evidence) that the argument that ▮▮▮▮▮▮▮▮ MGA asserts that Mattel cannot demonstrate that Ms. Tomiyama was the "sole" or "original source" of the argument. Mattel is not required to do so and MGA cites no authority to support this claim. Nor could this be the law, because a party in Mattel's position will rarely be able to make such a showing. Nevertheless, Mattel has come close. MGA cannot point to any occasion on which it advanced this argument, either in discovery or briefing, before its contacts with Tomiyama.

To the contrary, it has been MGA's longstanding practice to contend that ▮▮▮▮▮▮▮▮ The position MGA now advances, after having consulted with Ms. Tomiyama, directly contradicts MGA's prior representations to various tribunals that ▮▮▮▮▮▮▮▮.[1] This new, contrary

---

[1] See, e.g., Affidavit of Isaac Larian, dated July 2, 2002, filed in ABC International Traders, Inc. (d/b/a/ MGA Entertainment) v. Toys & Trends (Hong Kong) Limited, et al., High Court of the Hong Kong Special Administrative Region, Court of First Instance, Civ. Action No. 2152 (2002), at ¶ 12, attached as Exhibit 87 to the Declaration of B. Dylan Proctor in Support of Mattel's Motions in Limine Nos. 1-14; Complaint in MGA Entm't, Inc. v. Multitoy, Inc., at ¶ 5, 17, attached as
(footnote continued)

argument presumably originated with a new source unaffiliated with MGA—Ms. Tomiyama. MGA relies on its other exerts' opinions as "independent sources." But MGA has steadfastly refused to clarify when Ms. Tomiyama first was contacted by MGA or its representatives. And it is undisputed that the contact—and her formal retention as an expert—predates all the sources MGA points to in its opposition.[2]

### 2. The only relief available to expunge the taint resulting from Skadden's consultation with Ms. Tomiyama is to bar her arguments

Not only did the argument that ██████████████████████████████████████████████████████████████ come from Ms. Tomiyama, but MGA unquestionably received the benefit of Mattel's privileged information in crafting its argument. As the Court found, "MGA had the benefit of consulting with a long-term Mattel employee, whose expertise in applying her analysis to legal claims and defenses was developed under the direction of Mattel's attorneys."[3] As long as defendants are still able to make Ms. Tomiyama's argument—that ████████████████████████████████

---

Exhibit 104 to the Declaration of Tamar Buchakjian in Support of Mattel's Motions *in Limine* Nos. 1-14.

[2] Ms. Tomiyama testified that she first spoke to MGA representatives as early as June or July 2007. (Motion at 8.) The earliest "source" MGA points to as the basis of its purportedly independent articulation of Ms. Tomiyama's arguments, Mr. Khare's deposition, is late September 2007. (Id.) MGA's experts, which it points to in its Opposition, are not an independent source of this argument, as they raised it after Ms. Tomiyama had substantial contact with MGA and its lawyers—indeed, in the case of Mr. Vilppu after Mattel raised its concerns regarding MGA and its counsel's contact with Ms. Tomiyama. (Opp. at 11).

[3] Transcript of April 7, 2008 Hearing ("Hearing Tr.") at 16:17-20, attached as Exhibit 1 to the Declaration of Jon D. Corey ("Corey Dec.") filed concurrently with Mattel's Motion *in Limine* No. 15.

1  ███████████████████—the playing field is not level. While Ms. Tomiyama's
2  report has been excluded, her key argument still appears in MGA's papers.

  MGA cites decisions that purportedly show that the comparison of two and three dimensional objects is a common issue in copyright cases and therefore did not have its genesis with Ms. Tomiyama. (Opp. at 10-11.) There is a vast difference between cases showing that "there are factual issues that arise" when analyzing infringement claims involving two and three-dimensional objects (Opp. at 11), and the specific arguments raised in Ms. Tomiyama's report (and now recycled in MGA's pleadings and other expert witnesses). One is a general proposition of law; the other is an analysis generated by Ms. Tomiyama about the drawings and dolls at issue in this case, developed with the benefit of Mattel's privileged information, that is directly contrary to the position that MGA has taken in every prior copyright case of which Mattel is aware. It would be fundamentally unfair to allow MGA to make arguments that it developed under the guidance of Ms. Tomiyama and which are indelibly informed by Mattel's privileged information. They must be excluded to remedy the taint.

  **3. Mattel does not have to show inevitable disclosure of privileged information before preclusion is appropriate**

  MGA misunderstands the basis of Mattel's motion. Citing no authority, it argues that Mattel can only prevail by showing that "the legal and factual arguments it seeks to preclude, if permitted, would somehow disclose the contents of the protected communications." (Opp. at 5) While the court invited a motion on that basis, avoiding further disclosure of privileged information is not only the purpose of the requested relief. Mattel is also entitled to try to ameliorate, to the extent possible given Skadden's continuing participation in this action, the effects of Skadden's eight months of access to Ms. Tomiyama, whose views were undeniably informed by Mattel's privileged information.

1    MGA argues that no further remedy is necessary beyond the April 8,
2 2008 Order disqualifying Ms. Tomiyama. Indeed, MGA claims that Mattel
3 misconstrues the Court's statements at the April 7, 2008 hearing indicating that
4 "something need[ed] to be done," and that additional relief beyond the
5 disqualification of Ms. Tomiyama might be warranted. (Opp. at 7.) The Court was
6 not speaking of a remedy only as to Ms. Tomiyama. The Court had already made a
7 tentative finding that Ms. Tomiyama should be disqualified,[4] and was discussing the
8 appropriate remedy as regards MGA's counsel's receipt of privileged information
9 and whether disqualification of MGA's counsel was necessary.[5]

10    That is presumably why the Court invited Mattel to bring its motion *in
11 limine*: having determined that the "relative burdens and costs" did not warrant
12 disqualification, the Court stated that *"in addition to the steps taken in the injunction
13 set forth above* [*i.e.*, disqualifying Ms. Tomiyama and precluding the use of her
14 report]," it would consider a motion *in limine*.[6] Thus, MGA's claim that the Court
15 "already determined" that Mattel could not be further prejudiced "once Ms.

---

[4] Hearing Tr. at 17:14-18:3 ("[Ms. Tomiyama] carries with her a taint. And based on everything that I have set forth, it is the Court's tentative decision on this motion to disqualify her as an expert. That is my tentative decision as to that part.").

[5] After determining that Ms. Tomiyama should be disqualified, the Court went on to discuss MGA's counsel, stating:

> I have not reached even a tentative conclusion regarding the motion to disqualify counsel. There are several levels to this. There is the possibility of cabining off those counsel who have worked directly with Ms. Tomiyama; that would be Mr. Plevan and Ms. Campagna back in New York. The costs to the Court, the costs to MGA, the costs to this whole process of disqualifying the entire firm of Skadden Arps are enormous. The burden that places on the entire system would be dramatic. And its not at all clear to the Court that such a drastic remedy, as being urged by Plaintiff's counsel, is necessary. But clearly, something needs to be done.

Hearing Tr. at 22:6-17.

[6] April 8, 2008 Order Granting Motion to Disqualify Expert and Denying Motion to Disqualify Counsel ("Order") at 2, Corey Dec., Ex. 2 (emphasis added).

Tomiyama was disqualified and access to her report quarantined" is without foundation. (Opp. at 14.) The passage MGA cites for this proposition belies its argument since the Court made clear that the exclusion of Ms. Tomiyama's report (alone) would only be adequate "provided it could not be used in any way."[7] Yet now MGA seeks to do exactly this by arguing that it should be permitting to put forth the same arguments that Ms. Tomiyama advanced in her report.

**B.  Defendants Should Be Precluded From Advancing Any Argument Regarding Mattel's Investigation Of Bryant**

MGA does not dispute that it received Mattel's privileged information when Ms. Tomiyama disclosed the circumstances of her work for Mattel's Law Department. Thus, MGA agrees (as it must) that it will not ██████████ ██████████████████████████████████████████████ ██████████████████████████████████████ (Opp. at 2.) Yet, in a footnote, MGA seeks to carve out from its concession the core factual matters at issue in this litigation—specifically, ██████████████ ██████████████████████████████████████████████ ████████████████████████████████████████ ████████████ (Opp. at 2 n.2.)

To justify its carve-out, MGA claims that it never received Mattel's privileged material on these matters. But the Court found that "Ms. Tomiyama was deeply involved in Mattel's investigations of Carter Bryant's activities and was privy to counsel's analysis, thoughts, and impressions about issues directly related to Phase One of this trial."[8] As the Shadow Traffic court recognized, this kind of access to attorney work product surely influenced Ms. Tomiyama's consultations with Skadden. Shadow Traffic Network v. Superior Court, 24 Cal. App. 4th 1067, 1086 (1994).

---

[7] Hearing Tr. at 90:12-25.
[8] Hearing Tr. at 13:11-14.

1  Thus, defendants must be precluded from making any factual argument
2  related to Mattel's investigations regarding Bryant's infringement.

### III. MATTEL DOES NOT HAVE TO DEMONSTRATE DEFENDANTS' "BAD FAITH"

MGA claims that the relief Mattel seeks may not be granted "absent a showing of bad faith," relying exclusively on Rule 37 discovery abuse cases.[9] But the conduct at issue here is not an "abuse of discovery" governed by Rule 37. No case MGA cites discusses the remedy for when a party comes into possession of an adversary's privileged information.[10] In that context, the Court has broad authority to limit or exclude evidence in order to maintain a level playing field between the parties and remove any doubt about the fairness of the proceedings. MGA does not cite (much less distinguish) Mattel's authorities showing that exclusion of evidence is an appropriate remedy where a party has gained access to an adversary's privileged information, but the Court determines that the balance of hardships otherwise weighs against disqualification of counsel. None of those cases imposes a bad faith requirement.

---

[9] See United States v. Sumimoto Marine Fire Ins., 617 F.2d 1365 (9th Cir. 1980) (affirming the imposition of a preclusion sanction under Rule 37 for counsels' repeated violations of the trial court's discovery orders); Qualcomm Inc. v. Broadcom Corp., 2007 WL 935617, at *2 (S.D. Cal. Mar. 13, 2007) (denying sanctions under Rule 37 for failure to adequately produce discovery); In re Diamond Ben. Life Ins. Co., 2006 WL 616625, at *6 (D. Ariz. Mar. 10, 2006) (denying sanctions under Rule 37 for belated production of discovery); Klund v. High Tech Solutions, Inc., 2006 WL 549385, at *6 (S.D. Cal. Feb. 27, 2006) (denying sanctions under Rule 37 for failure to provide timely interrogatory responses).

[10] In the context of discovery abuse, it is a rare situation that cannot be remedied through means other than the exclusion of evidence (e.g., by compelling further discovery, awarding costs or monetary sanctions). By contrast, the disclosure of privileged material cannot be so easily remedied by palliative measures.

    Like disqualification, exclusion is not punitive but remedial.[11] Thus, just as bad faith is not a prerequisite to the disqualification of counsel arising from the disclosure of an adversary's privileged information, it is likewise not a prerequisite to the exclusion of evidence to remedy such disclosures.

    Bryant repeats MGA's arguments, relying on the same set of discovery abuse cases. (Bryant's Opp. at 2-3.) Because bad faith is not a requirement, Bryant's argument that preclusion cannot be applied against him because he was not involved in the actions leading to the disclosure is similarly unpersuasive. Courts may be hesitant to "punish" a party for a co-party's misdeeds, however, no such hesitation is warranted when the purpose of the exclusion is to remedy an unfair advantage caused by the disclosure of privileged information. And, unlike the cases Bryant cites, he is hardly a wholly independent party who has been unwittingly ensnared in the misdeeds of a third party. See, e.g., MacSteel, Inc. v. Eramnet N. Am., 2006 WL 3334011, at *1 (E.D. Mich. Nov. 16, 2006) (court declined to impose sanctions based on the destruction of evidence by a former employee).[12] Rather, Bryant and MGA are close allies who are jointly defending this case with

---

[11] MGA claims that the "record before the Court was <u>indisputed</u> that Skadden Arps specifically admonished Ms. Tomiyama not to disclose privileged information. (Opp. at 13 (emphasis in original)). But Tomiyama's testimony directly contradicted the declarations of Skadden's lawyers. See, e.g., Mattel's Motion to Disqualify at 12 (quoting Tomiyama Tr. at 222:4-11 (█████████████████████████████████████████████████████████████).

[12] Bryant's authorities provide little guidance as they relate a factual situation—spoliation of evidence—that is entirely inapposite. In such situations the sanction is punitive, not remedial, so their is no reason to impose a sanction against any party that was not involved in the spoliation; by contrast, the disclosure and continued use of an adversary's privileged information requires a remedy that limits its use by all parties.

extensive strategic coordination.[13] That coordination has included relying on each others' expert reports and designations, and conducting a joint meeting of experts in which Ms. Tomiyama participated.[14]

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant its motion in its entirety and enter an order precluding defendants from offering any argument or evidence on the topics set forth in its motion.

DATED: May 8, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc.

---

[13] Indeed the parties presently are subject to a joint-defense agreement. Moreover, although the evidence at issue here comes from MGA's experts, Bryant joined in those reports as his own.

[14] See, e.g., Tomiyama Tr. at 129:9-16; Deposition Transcript of Robert Tonner, March 21, 2008, at 93:9-94:4, Corey Dec., Ex. 5.