QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>             Plaintiff,<br><br>       vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>             Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>REPLY IN SUPPORT OF MOTION IN LIMINE NO. 5 OF MATTEL, INC., TO EXCLUDE EVIDENCE OF OR ARGUMENT CONCERNING OTHER LAWSUITS AND OTHER PURPORTED BAD ACTS AND DISMISSED DEFENSES<br><br>[Supplemental Declarations of Jon Corey and B. Dylan Proctor filed concurrently herewith]<br><br>Date:    May 21, 2008<br>Time:   1:00 p.m.<br>Place:   Courtroom 1<br><br>**Phase 1**<br>Pre-trial Conference: May 19, 2008<br>Trial Date:                   May 27, 2008 |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 1

I. NO EVIDENCE OF SECURITIES FRAUD ALLEGATIONS OR LEAD PAINT RECALLS SHOULD BE ADMITTED ................................... 1

II. PHASE 1 IS NOT A REFERENDUM ON WHETHER MATTEL IS A GOOD OR BAD COMPANY, BUT WHETHER MATTEL OWNS BRATZ .................................................................................................................. 2

    A. Whether Mattel Had a "Plan" or "Scheme" to Sue Competitors Who Have Harmed It is Not Relevant to This Case ............................... 2

    B. Evidence of Prior Lawsuits and Other Alleged Bad Acts is Not Relevant to Show MGA's "Cautious Approach" ..................................... 5

    C. Attempts to Show Mattel Conducted a Thorough Investigation Through Introduction of Prior Lawsuits is Inappropriate Character Evidence ............................................................................. 6

III. EVEN IF RELEVANT, EVIDENCE OF PRIOR LAWSUITS WOULD BE UNFAIRLY PREJUDICIAL ....................................................... 8

IV. MGA'S TRUE PURPOSE IS TO BRING MATTEL TO MGA'S LEVEL AND TO TEMPER ITS OWN MISCONDUCT FOR THE JURY ................................................................................................................ 10

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

### Cases

Bryce v. Trace, Inc.,
    2008 WL. 906142 (W.D. Okla. 2008) ............................................................. 4, 8

Caldwell v. Wal-Mart Stores, Inc.,
    229 F.3d 1162 (10th Cir. 2000) ........................................................................ 3

Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.,
    418 F.3d 820 (8th Cir. 2005) .......................................................................... 11

Fuller v. City Nat. Bank of Huron,
    52 F.2d 865 (D.C.S.D. 1930) ........................................................................... 3

Gastineau v. Fleet Mortgage Corp.,
    137 F.3d 490 (7th Cir. 1998) ............................................................................ 4

Harpring v. Continental Oil Co.,
    628 F.2d 406 (5th Cir. 1980) .......................................................................... 11

Haskell v. Kaman Corp.,
    743 F.2d 113 (2d Cir. 1984) ........................................................................... 11

Jackson v. Firestone Tire & Rubber Co.,
    788 F.2d 1070 (5th Cir. 1986) .......................................................................... 9

Lataille v. Ponte,
    754 F.2d 33 (1st Cir. 1985) .............................................................................. 7

Mardel Securities, Inc. v. Alexandria Gazette Corporation,
    183 F. Supp. 7 (D.C. Va. 1960) ....................................................................... 3

Mathis v. Phillips Chevrolet, Inc.,
    269 F.3d 771 (7th Cir. 2001) ........................................................................ 4, 8

McKenzie v. Carroll Intern. Corp.,
    610 S.E.2d 341 (W. Va. 2004) ....................................................................... 10

Moorhouse v. Boeing Co.,
    501 F. Supp. 390 (E.D. Pa. 1980) .................................................................. 10

Outley v. City of New York,
    837 F.2d 587 (2d Cir. 1988) ......................................................................... 3, 8

Raysor v. Port Authority,
    768 F.2d 34 (2d Cir. 1985) .................................................................................. 4, 8

Southern Music Publishing Co., Inc. v. Seeco Records, Inc.,
    704 F. Supp. 704 (S.D.N.Y. 1960) .......................................................................... 3

Wyvill v. United Cos. Life Ins. Co.,
    212 F.3d 296 (5th Cir. 2000) ................................................................................... 7

In Re Yarbrough,
    18 F. Supp. 359 (D.C. Ga. 1937) ............................................................................. 3

Young v. Calhoun,
    1995 WL. 169020 (S.D.N.Y. 1995) ........................................................................ 4

## **Statutes**

Fed. R. Evid Rule 404 ..................................................................................................... 2

Fed. R. Evid. Rule 404(b) ............................................................................................... 6

**Preliminary Statement**

MGA's Opposition merely confirms the points Mattel made in its Motion. Recognizing that it cannot address the actual issues relevant to trial—such as the timing of Bryant's work on Bratz, defendants' knowledge of those facts, and Mattel's ownership of the Bratz copyrights—MGA seeks to broaden the dispute, to bring in facts regarding a host of irrelevant and unrelated suits, and other allegations of bad acts, to tarnish Mattel's character, and to win the jury's sympathies.

If MGA were to succeed, Mattel would be forced to defend itself against each and every one of these claims, essentially re-litigating suits that have already concluded. This is particularly inappropriate because MGA has not provided any evidence that the suits Mattel brought before lacked merit. Further, one of the duties of a business dealing with intellectual property is to litigate its rights to avoid laches defenses of the very kind that have been raised here. MGA is attempting to smear Mattel for taking perfectly appropriate and lawful actions.

Such attempts by MGA should be rejected. This case is already complex, and this Court chose to bifurcate trial to limit the claims and defenses at issue. MGA should not be allowed to force Mattel to defend itself against irrelevant and prejudicial attacks merely because it cannot refute the evidence Mattel has uncovered thus far regarding the merits of its claims.

**Argument**

**I. NO EVIDENCE OF SECURITIES FRAUD ALLEGATIONS OR LEAD PAINT RECALLS SHOULD BE ADMITTED**

MGA concedes that evidence relating to its gratuitous securities fraud allegations or to lead paint recalls or lawsuits are irrelevant to this action and that MGA will not seek to admit them. (Opp. at 6, 8 n.4.) As there is no debate on these issues, Mattel will provide no further argument, but instead asks this Court to order that neither evidence nor argument on these topics shall be permitted at trial.

## II. PHASE 1 IS NOT A REFERENDUM ON WHETHER MATTEL IS A GOOD OR BAD COMPANY, BUT WHETHER MATTEL OWNS BRATZ

The jury will resolve in Phase 1 whether Bryant violated his duties and agreements with Mattel, whether MGA and Larian aided and abetted these actions, and whether Mattel owns Bratz. To distract the jury, MGA seeks to introduce evidence of Mattel's *reasons* for bringing the suit and Mattel's alleged misconduct. MGA raises three justifications for introducing evidence of prior Mattel lawsuits or bad acts. First, it argues that prior lawsuits can establish that Mattel has a "plan" or "scheme" of suing competitors. (Opp. at 1, 3, 6-7, 11-12.) Second, it argues that Mattel's bad acts will show that MGA was cautious when dealing with Bryant because it was scared of a Mattel lawsuit. (Opp. at 1, 3, 7.) Third, it argues that Mattel's prior lawsuits relate to laches and statute of limitations defenses because they show that Mattel would have investigated thoroughly in the current case and learned of Bryant's involvement with Bratz because it did pre-filing investigations in other cases. (Opp. at 2, 3, 7-8, 11.) Each of these justifications of relevance directly contradicts both common sense and applicable law.

### A. Whether Mattel Had a "Plan" or "Scheme" to Sue Competitors Who Have Harmed It is Not Relevant to This Case

MGA admits that evidence of prior lawsuits is generally not admissible. Nevertheless, MGA argues that prior lawsuits Mattel has brought should be admitted in this case to show that it has a "scheme" to sue its competitors, and that the "scheme" shows that the current suit is without a good faith basis in fact. That justification for admitting the evidence of prior lawsuits is plainly barred by Rule 404.

What Mattel did in prior suits says nothing of the merits of this one. MGA and Bryant have challenged the merits of Mattel's claims. The result is a trial to a jury on May 27. The facts of this case speak for themselves. Either Bryant did

1  or did not violate his agreements with Mattel.  Either MGA did or did not aid and
2  abet him in his wrongdoing.  The jury will decide those questions.  Mattel's motive
3  is irrelevant.  See, e.g., Southern Music Publishing Co., Inc. v. Seeco Records, Inc.,
4  704 F. Supp. 704 (S.D.N.Y. 1960) ("The short answer to this defense is that if
5  plaintiff has a valid cause of action, what its purpose is in pursuing it is of no
6  moment in this proceeding."); Caldwell v. Wal-Mart Stores, Inc., 229 F.3d 1162
7  (10th Cir. 2000) (district court properly granted motion in limine to exclude
8  testimony regarding plaintiff's motive in bringing suit because, absent fraud,
9  "evidence of [plaintiff's] financial motivation to bring the suit was not relevant to
10 any of the issues in this case"); Mardel Securities, Inc. v. Alexandria Gazette
11 Corporation, 183 F.Supp. 7 (D.C. Va. 1960) (defendant asserted unclean hands
12 defense, claiming that plaintiff acquired stock "for the vexatious purpose of
13 litigation with the end in view of compelling Carlin to purchase [plaintiff's] stock at
14 an exorbitant price;" but the court rejected this defense, explaining that "we do not
15 believe that [plaintiff's] motives are of any consequence in this derivative action");
16 Fuller v. City Nat. Bank of Huron, 52 F.2d 865, 869 (D.C.S.D. 1930) (court rejected
17 defendants' claim that plaintiff lacked good faith in filing the action, as "[t]he
18 question of good faith in no manner enters into the rights of this plaintiff to recover
19 upon the claim set forth in this action"); In Re Yarbrough, 18 F. Supp. 359, 361
20 (D.C. Ga. 1937) ("[I]f the law confers jurisdiction of a case upon a court, it not a
21 fraud upon the court for a party to invoke that jurisdiction; and the court will not
22 inquire into his motive, because it is immaterial.").
23         Indeed, this effort by MGA to insert other lawsuits and demand letters
24 in this case is exactly the kind of irrelevant and unfairly prejudicial attack Mattel
25 argued in its Motion that MGA would try to make.  MGA argues that Mattel has
26 brought too many lawsuits, from which they would like to ask the jury to infer that
27 no Mattel suit has merit.  Courts thoroughly reject this type of inference evidence.
28 See, e.g., Outley v. City of New York, 837 F.2d 587, 591-95 (2d Cir. 1988)

(reversing judgment for defendants where trial court erroneously admitted evidence showing that plaintiff brought prior suits and permitted defendants' argument that plaintiff was "a perpetual litigant"); <u>Mathis v. Phillips Chevrolet, Inc.</u>, 269 F.3d 771, 776 (7th Cir. 2001) (excluding evidence of prior lawsuits because they "could also have given rise to the impermissible inference that, because [plaintiff] was given to filing frivolous lawsuits, the jury should not credit his claims in this suit"); <u>Raysor v. Port Authority</u>, 768 F.2d 34, 40 (2d Cir. 1985) (excluding questions about past lawsuits because plaintiff's "litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant"); <u>Bryce v. Trace, Inc.</u>, 2008 WL 906142, *1 (W.D. Okla. 2008) (excluding evidence of prior lawsuit by plaintiff as irrelevant and prejudicial).

The sole case MGA relies on for its argument that such a "scheme" is relevant to this case is <u>Gastineau v. Fleet Mortgage Corp.</u>, 137 F.3d 490 (7th Cir. 1998). <u>Gastineau</u>, unlike this case, involved a pattern by the plaintiff of *fraudulent* litigation practices, namely forging documents used on the eve of trial so that they appeared, on their face, to be damaging to the plaintiff's former employers. <u>Id</u>. at 496. The Seventh Circuit has explicitly held that the element of fraud was an important consideration in <u>Gastineau</u>. See <u>Mathis</u>, 269 F.3d at 776 ("<u>Gastineau</u> recognized that the danger of unfair prejudice from a charge of litigiousness might be minimized if the defendant could show that the plaintiff had a history not merely of filing numerous lawsuits, *but of filing fraudulent ones*.") (emphasis added); <u>see also</u> <u>Young v. Calhoun</u>, 1995 WL 169020, *6 (S.D.N.Y. 1995) (excluding evidence of litigiousness, unless defense could show that prior lawsuits were fraudulent). MGA has not alleged, much less made a showing, that any prior Mattel lawsuit was fraudulent. Where there is no showing of fraud, the Seventh Circuit has excluded such evidence. See <u>Mathis</u>, 269 F.3d at 776. MGA has alleged no fraud on Mattel's part in connection with prior lawsuits, so <u>Gastineau</u> has no application here.

### B. Evidence of Prior Lawsuits and Other Alleged Bad Acts is Not Relevant to Show MGA's "Cautious Approach"

MGA next argues that evidence of Mattel's prior lawsuits and other bad acts will show that MGA was so afraid of Mattel because of its alleged litigiousness that it acted cautiously in dealing with Bryant and its pursuit of Bratz. In other words, MGA argues that in order to establish the appropriateness of *MGA's* conduct in this case, it is necessary to introduce *Mattel's* conduct in wholly unrelated cases. This is a curious argument, and an incorrect one. Either the steps MGA allegedly took to ensure that it was not infringing on Mattel's rights were sufficient or they were not. What motivated MGA to take those steps—whether it was fear, a desire to do good, or something else—is not relevant. Indeed, if the jury determines that MGA did not take sufficient steps to avoid infringing on Mattel's ownership interest in Bratz, the fact that MGA was afraid of being sued by Mattel will not in anyway change that result.

Moreover, many of the lawsuits and other bad acts MGA claims are relevant to show why it acted the way it did actually *post-date* its actions with respect to Bryant. For example, Mattel only learned in December of 2007 that two of its current employees had worked on Bratz through 2005.[1] Mattel questioned them regarding their conduct in January 2008.[2] There is therefore no way that

---

[1] Prior to this, defendants had denied that any other employees worked on Bratz or for MGA while employed by Mattel. See, e.g., MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, dated January 7, 2008, at 107-114 (not mentioning Ana Cabrera or Beatriz Morales as working for MGA while under contract with Mattel, and having Maria Salazar's start date in 2003, well after she stopped working for Mattel), Proctor Dec., Exh. 44.

[2] Transcript of the Interview of Ana Cabrera, dated January 2, 2008, at 1-3, 186, attached as Exhibit 1 to the Supplemental Declaration of Jon Corey, filed (footnote continued)

1  MGA's knowledge of Mattel's questioning of those witnesses could have had any
2  effect on its decision-making in 2001.   Similarly, the only allegations MGA has
3  raised regarding "surveillance" of Larian's family was in conjunction with a Mattel
4  investigation regarding MGA's knowledge of the "Flavas" doll line, which is not at
5  issue here.  Even by MGA's version of events, this investigation occurred in 2003.[3]
6  There is thus no reason that any alleged surveillance regarding an unrelated doll line
7  proves or disproves any defense by MGA or any other defendant.

        **C.**      **Attempts to Show Mattel Conducted a Thorough Investigation Through Introduction of Prior Lawsuits is Inappropriate Character Evidence**

Finally, MGA argues that it should be permitted to introduce evidence of prior lawsuits and other bad acts because they are relevant to its statute of limitations and laches defenses.  According to MGA, these facts will show that Mattel vigorously investigates potential infringement of its intellectual property, and so it conducted a vigorous investigation in this case in 2000, which would have put it on notice of its claims against MGA and the other defendants.  This argument seeks to introduce classic character evidence of the kind prohibited by Fed. R. Evid. Rule 404(b).  That rule specifically provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action *in conformity therewith*." (emphasis added).  Here, MGA impermissibly attempts to introduce prior acts (other lawsuits and alleged bad acts like

---

concurrently ("Supp. Corey Dec."); transcript of the Interview of Beatriz Morales, dated January 14, 2008, at 1-3, 148, Supp. Corey Dec., Exh. 2.

[3] See Motion in Limine No. 5 at 5; MGA's Amended Answer, at 20:27-28, Proctor Dec., Exh. 29; Larian's Amended Answer, at 17:21-22, Proctor Dec., Exh. 27; MGA's Response to Interrogatory Regarding Affirmative Defenses, at 21:2-3, Proctor Dec., Exh. 25; Bryant's Response to Interrogatory Regarding Affirmative Defenses, at 28:8-9, Proctor Dec., Exh. 26.

surveillance) to show that Mattel acted in conformity with those acts in 2000 (by investigating MGA and Bryant).   See also Lataille v. Ponte, 754 F.2d 33, 35, 37 (1st Cir. 1985) (prior bad acts may not be admitted to prove that a person acted in similar fashion in the case at hand); Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304, 306 (5th Cir. 2000) (vacating judgment and finding error in lower court's ruling allowing anecdotal evidence of unrelated age claims).  Whether Mattel conducted a thorough investigation in other cases provides no insight into whether or the extent to which it conducted such an investigation here.

      MGA also argues that Mattel's questioning of its employees, and alleged surveillance of MGA, demonstrate that Mattel had knowledge and notice of its claims.  (Opp. at 11.)  Yet all such allegations post-date the filing of this suit.  Thus, as discussed above, Mattel only questioned its employees regarding their work on Bratz in January 2008.[4]  There is therefore no way that such questioning could help demonstrate that Mattel had notice of Bryant's work on Bratz in *2001*.  Similarly, evidence regarding the routine sending of letters to former employees regarding their obligations to Mattel cannot show that Mattel had any special knowledge about *Bryant's* violations of *his* obligations.

      The facts of Mattel's investigation in *this* case speak for themselves.  Mattel did not know Bryant created Bratz while employed by Mattel until shortly before it brought suit.  Any prior lawsuits, or other alleged bad acts, have no bearing on these facts.  MGA's attempts to introduce them on these grounds should be rejected as the improper character evidence that they are.

---

[4]   Transcript of the Interview of Ana Cabrera, dated January 2, 2008, at 1-3, 186, Supp. Corey Dec., Exh. 1; transcript of the Interview of Beatriz Morales, dated January 14, 2008, at 1-3, 148, Supp. Corey Dec., Exh. 2.

## III. EVEN IF RELEVANT, EVIDENCE OF PRIOR LAWSUITS WOULD BE UNFAIRLY PREJUDICIAL

As discussed above, Mattel's prior lawsuits, and allegations of other purported bad acts, are completely irrelevant to the claims and defenses in this case. Even if they were relevant, however, that relevance would be far outweighed by the unfair prejudice it would cause to Mattel. Indeed, MGA admits that evidence of prior lawsuits is prejudicial and should generally be excluded from a case. (Opp. at 2 ("Mattel rightly states that, as a general rule, parties should not be permitted to present evidence regarding unrelated lawsuits with no bearing on the matters at issue in the current case, not only because the existence and subject matter of those lawsuits is irrelevant but because discussion of such lawsuits could be prejudicial and waste the court's and jury's time.")); see also Outley, 837 F.2d at 591-595 (reversing judgment for defendants where trial court erroneously admitted evidence showing that plaintiff brought prior suits and permitted defendants' argument that plaintiff was "a perpetual litigant"); Mathis, 269 F.3d at 776 (excluding evidence of prior lawsuits because they "could also have given rise to the impermissible inference that, because [plaintiff] was given to filing frivolous lawsuits, the jury should not credit his claims in this suit"); Raysor, 768 F.2d at 40 (excluding questions about past lawsuits because plaintiff's "litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant"); Bryce, 2008 WL 906142 at *1 (excluding evidence of prior lawsuit by plaintiff as irrelevant and prejudicial).

MGA also concedes that the evidence it seeks to introduce in *this* case would cause prejudice to Mattel. (Opp. at 8-10.) Instead, MGA argues that prejudice alone is not sufficient reason to exclude evidence, and that the prejudice must be *unfair*. MGA states that prejudice is unfair if "it prompts, for example, an emotional response unrelated to the issues of the case." (Opp. at 9.) On this, Mattel and MGA have no dispute.

What MGA has completely failed to do, and cannot do, is show that the evidence at issue *here* would result in *fair* prejudice. As Mattel argued in its motion, evidence of prior lawsuits and other bad acts would cause the jury to judge Mattel on its litigiousness, not on the merits of this case. Indeed, as discussed above, many cases have found that exactly this kind of inference by the jury would be unfairly prejudicial. MGA makes no showing as to how the facts of Mattel's purported litigiousness would result in anything other than "an emotional response unrelated to the issues of the case."

For example, MGA argues that "'righteous indignation' in the face of corporate malfeasance is <u>not</u> one of the emotions that federal courts seek to quell," and cites <u>Jackson v. Firestone Tire & Rubber Co.</u> in support of this assertion. (Opp. at 9.) In <u>Firestone</u>, the issue in the case was the failure of defendant's tire rims, and the memorandum in question specifically involved the safety of those rims. <u>Jackson v. Firestone Tire & Rubber Co.</u>, 788 F.2d 1070, 1086 (5th Cir. 1986). Of course such evidence could not be excluded. Defendants' acknowledgment of safety problems in a product are directly relevant to product liability and negligence claims. Here, however, MGA wishes to introduce evidence relating to *other* litigation, or to Mattel's conduct after the commencement of this suit. In neither case can these facts relate to the facts of this case. While Mattel might quarrel with a claim that its purported bad acts and other litigation might create such a response in the jury, the point is that such indignation would be as a result of facts that are not relevant, or only marginally relevant, to this suit.

For these reasons, MGA's argument must be rejected. Any evidence regarding Mattel's other litigation, or other alleged bad acts, must be excluded as unfairly prejudicial.

## IV. MGA'S TRUE PURPOSE IS TO BRING MATTEL TO MGA'S LEVEL AND TO TEMPER ITS OWN MISCONDUCT FOR THE JURY

MGA's true purpose in attempting to introduce this evidence is to misdirect the jury, and to focus attention away from its own misconduct in an attempt to paint Mattel as the "bad guy." If MGA were to succeed, Mattel would be required to address each and every one of these smears and disprove them. In other words, rather than focusing on the issues in the case, Mattel would be required to go through each and every prior lawsuit MGA points to and show that, yes, Mattel had a good reason for bringing it, and no, it was not part of some overarching "scheme" to sue those that cause it harm.

Indeed, MGA implicitly acknowledges that its intention is to focus on these collateral issues when it affirms that Mattel will be forced to respond to them. It states that "even if the details of other actions by or against Mattel need to be discussed, this alone does not necessitate excluding otherwise meaningful and probative evidence." (Opp. at 5.) MGA surely would like nothing more than to delve into the details of other actions—rather than focusing on its own misconduct—but that is not appropriate for the trial here. The issues in this case are already complicated, and it would be needlessly confusing, time consuming, and wasteful to expand them to include other lawsuits that have already concluded.

Though MGA attempts to distinguish one case cited by Mattel to show that it is inappropriate to force parties to conduct mini-trials on collateral issues,[5]

---

[5] MGA distinguishes Moorhouse v. Boeing Co., 501 F. Supp. 390, 393 (E.D. Pa. 1980) through a citation to a state court opinion, McKenzie v. Carroll Intern. Corp., 610 S.E.2d 341, 345-346 (W. Va. 2004). That opinion explicitly limits its disagreement by noting that there are special issues in employment discrimination cases that do not apply elsewhere. Id. at 346 (noting "inherent difficulty of proving state of mind" in employment discrimination cases). Obviously, such concerns do not apply here.

1  others come to the same conclusion.  See, e.g., Diesel Machinery, Inc. v. B.R. Lee
2  Industries, Inc., 418 F.3d 820, 834 (8th Cir. 2005) (affirming exclusion of evidence
3  of prior lawsuit which would have "resulted in a trial within a trial that would not
4  have been that helpful to the jury"); Harpring v. Continental Oil Co., 628 F.2d 406,
5  410 (5th Cir. 1980) (testimony of former employee excluded to avoid "trying
6  another lawsuit within the existing lawsuit"); Haskell v. Kaman Corp.,
7  743 F.2d 113, 121 (2d Cir. 1984) (court should avoid trial of "unnecessary collateral
8  issues").

The issues in this case are already complex, and the Court already bifurcated trial between Phase 1 and Phase 2 in an attempt to narrow the issues for trial.  MGA should not be permitted to bring in claims for unrelated cases that have already concluded, or on irrelevant allegations of bad acts, and misdirect the focus of this trial.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that its Motion In Limine No. 5 be granted.

DATED:  May 8, 2008            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
    John B. Quinn
    Attorneys for Mattel, Inc.

07209/2493268.3

-11-