QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09039
Case No. CV 05-02727

MATTEL, INC.'S REPLY MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY AND VERONICA MARLOW

[Declaration of Stephen Q. Wood filed concurrently]

Hearing Date: May 19, 2008
Time: 10:00 a.m.
Place: Courtroom

**Phase 1**
Discovery Cut-Off: January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

**I.** THE EVIDENCE CITED IN THE OPPOSITION DEMONSTRATES THAT THE DISCOVERY MASTER'S ORDER DENYING MATTEL DISCOVERY AS TO MS. MARLOW'S COMPUTER HARD DRIVE IS CLEARLY ERRONEOUS ..... 2

**II.** THE EVIDENCE CITED IN THE OPPOSITION DEMONSTRATES THAT THE DISCOVERY MASTER'S ORDER DENYING MATTEL DISCOVERY AS TO MS. LEAHY'S COMPUTER HARD DRIVE IS CLEARLY ERRONEOUS ..... 7

**III.** THE OPPOSITION FAILS TO SUPPORT THE POSITION THAT MS. MARLOW AND MS. LEAHY HAVE A LEGITIMATE PRIVACY INTEREST IN THEIR COMPUTER HARD DRIVES THAT OUTWEIGHS MATTEL'S RIGHT TO RELEVANT DISCOVERY ..... 11

**IV.** THE OPPOSITION'S DISTINCTION BETWEEN ELECTRONICALLY STORED INFORMATION AND ELECTRONIC DEVICES IS MERITLESS ..... 12

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page**

### Cases

Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122 (9th Cir. 2003) .......... 12

Keith H. v. Long Beach Unified School District, 228 F.R.D. 652 (C.D. Cal. 2005) .......... 12

Rosa v. Commonwealth of Virginia, 638 S.E.2d 92 (Ct. App. Va. 2006) .......... 10

Superior Consultant Co. v. Bailey, 2000 WL. 1279161 (E.D. Mich. Aug. 22, 2000) .......... 12

United States v. Triumph Capital Group, Inc., 211 F.R.D. 31 (D. Conn. 2002) .......... 10

### Statutes

Fed. R. Civ. P. 34 .......... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Margaret Hatch-Leahy and Veronica Marlow's ("the Witnesses'") Opposition makes allegations about how Mattel's motion seeking discovery of their computer hard drives is unwarranted, a "fishing expedition" and a "do-over." But it notably fails to respond to the critical issue: whether the Discovery Master's Order is clearly erroneous. Indeed, rather than addressing the clear errors identified by Mattel, the Opposition points to evidence that was never presented to the Discovery Master, such as the deposition of Peter Marlow (which occurred less than a week ago), and argues over irrelevant facts, such as whether Ms. Leahy sculpted in clay, or whether Mattel is seeking an electronic "device" or "information."

The undisputed facts show that the Discovery Master clearly erred in his determination that the Witnesses have met their discovery obligations:

- There has *never* been even a complete *search* for all relevant documents on the computers.
- Ms. Marlow's computer was never subject to a search for deleted or graphical files and was not even the subject of the independent expert's key word search at all.
- The only search that was done by the independent expert on Ms. Leahy's computer was by key word. Contrary to the Discovery Master's suggestion, a key word search did *not* include graphical files -- files such as those which Ms. Leahy herself described would typically be used for digital images of doll sculpts--or deleted files.

Perhaps most telling is that, not before the Discovery Master and not even now, has Ms. Marlow, Ms. Leahy or their counsel, Larry McFarland--who also represents MGA and is paid by them--stated under oath that they searched for and produced *all documents responsive to Mattel's document subpoenas*. Mattel is

entitled to responsive documents relating to Bratz, and the Discovery Master erred by not enforcing Mattel's right to such.

Mattel respectfully requests that this Court overrule the clearly erroneous portions of the Discovery Master's April 11, 2008 Order and allow Mattel the opportunity to conduct meaningful discovery of the witnesses' computer hard drives.

## Argument

### I. THE EVIDENCE CITED IN THE OPPOSITION DEMONSTRATES THAT THE DISCOVERY MASTER'S ORDER DENYING MATTEL DISCOVERY AS TO MS. MARLOW'S COMPUTER HARD DRIVE IS CLEARLY ERRONEOUS

In its Motion, Mattel identified specific aspects of the Discovery Master's order that were clearly erroneous. This included the fact that Veronica Marlow never stated that she searched her *computers* for all Bratz-related documents,[1] and that her self-serving, entirely conclusory pronouncement at deposition that she "produced everything" and had "not destroyed anything" was woefully inadequate and beside the point.[2] The Opposition virtually ignores this and instead argues that *Peter* Marlow's deposition testimony is the basis on which the Discovery Master's Order should be affirmed.[3] This is unavailing for at least three reasons.

---

[1] Motion at 15.
[2] Motion at 15-16.
[3] Opp. at 11, 17.

First, Peter Marlow's deposition was never presented to the Discovery Master. In fact, Peter Marlow's deposition did not even occur until May 2, 2008--three weeks after the Discovery Master issued his April 11 Order.[4]

Second, Veronica Marlow's reliance on Peter Marlow's deposition testimony is tantamount to an admission that, as Mattel has argued, she never searched her *computer* for all responsive documents.[5] Why else would she now rely entirely on Peter Marlow's testimony that *he* searched through some computers to produce responsive documents--documents produced long after Mattel's motion to compel the production of Veronica Marlow's computer? [6]

Third, if considered at this stage, Peter Marlow's testimony supports Mattel's position that only an actual inspection of Veronica Marlow's hard drive will ensure that Mattel receives all of the responsive documents to which it is entitled. It is undisputed that Ms. Marlow's computers were never subject to even the basic protocol keyword search.[7] The Opposition attempts to distract from this by alleging that Peter Marlow "testified fully regarding this issue" at his deposition and that "he is technically proficient to review information on computers and that he searched all of the Marlow's computers for all Bratz-related information and produced it."[8] However, Mr. Marlow's deposition testimony indicates that he did *not* conduct a full search for all relevant computer documents.[9] Nor does his testimony indicate that he searched for graphical files, deleted files or files relating to Ms. Marlow's fraudulent concealment of three Mattel employees who work on Bratz while still

---

4 Deposition of Peter Marlow, dated May 2, 2008. [Wood Dec. Exh. 1].
5 Motion at 15-16.
6 Peter Marlow Depo., at 27:21-28:4, [Wood Dec. Exh. 1].
7 See Motion at 15-16.
8 Opp. at 17.
9 Peter Marlow Depo., at 27:21-28:4, [Wood Dec. Dec. Exh. 1].

employed by Mattel.[10] Rather, Peter Marlow only testified that he did an "email" search.[11] Such a limited search simply cannot form the basis for finding that Veronica Marlow has fulfilled her discovery obligations.

Indeed, at deposition, Peter Marlow testified that graphical files--among other things--would likely exist on their computers. He testified:

> I would assist with graphic design. For example, when my wife would create clothes for the dolls, she would need some kind of design for a t-shirt, and she would give me a -- either some artwork that she received from Carter Bryant sketching more or less what he wants, or she would receive -- or she would give me a tear-out from a magazine and say, 'I want something that looks like this,' or a -- an actual article of clothing. and then I would take -- and I would take this artwork, I would scan it, and then use graphical editing tools to enhance it, to change it, to repair it, to complete it, and then scale it down, print it out on a -- it's a very small size, and then give it to Veronica Marlow, Inc., for use to attach to the samples. [12]

Because there has never been a search for these documents, there is no evidence that any of these graphical files have ever been produced.[13]

Further still, although not mentioned in the Opposition, Peter Marlow's testimony confirms that no computer search was made for documents related to Veronica Marlow's fraudulent scheme of using phony names and social security

---

[10] Id.
[11] Id.
[12] Id. at 34:16-35:9.
[13] Id. at 27:21-28:4, 34:16-35:9.

numbers to pay Mattel employees to work on Bratz. It is undisputed that Ms. Marlow was an active participant in a fraudulent scheme where three Mattel employees secretly worked on Bratz for *years* and were paid for their work while employed by Mattel.[14] It is undisputed that Marlow concealed the use of these employees by paying them in false names and by using fake social security numbers, and that Marlow did not disclose her fraudulent payment scheme at her deposition.[15] Furthermore, it is undisputed that Marlow did *not* produce any computer documents regarding her fraudulent payments to Pedro Salazar, Maria Salazar, Ana Isabela Cabrera, and Beatriz Morales.[16] Nothing about Peter Marlow's testimony about merely searching for "emails" suggests that Veronica Marlow or her counsel have adequately searched for all responsive computer documents.

---

[14] Marlow Depo. Tr. at 306:14-308:1, 363:15-365:21, [Tayback Dec., Exh. 1].

[15] Cabrera Tr. Vol. I at 118:3-119:23, [Tayback Dec., Exh. 6]; Morales Tr. at 115:2-20, [Tayback Dec., Exh. 7].

[16] The Opposition disingenuously claims that Marlow disclosed the identities of Pedro Salazar, Maria Salazar, Ana Isabela Cabrera, and Beatriz Morales shortly before her deposition. Opp. at. 11. However, this assertion fails to recognize that no one--not Bryant, not MGA, not Marlow (prior to her deposition)--identified these employees' relationship to the case *until* Marlow's deposition, despite being asked quite specific questions seeking the identity of all persons with knowledge of the development of Bratz. To the contrary, until Marlow's deposition, defendants had constantly sworn under oath that Bryant was the only one who worked on Bratz while still a Mattel employee and concealed the identity of the other employees by providing false, blanket denials under oath in response to specific discovery questions seeking identification of Mattel employees who worked on Bratz or for MGA. See Bryant Depo. Tr. at 286:25-287:5, [Tayback Dec., Exh. 3]; Transcript of the Deposition of Lisa Tonnu dated September 24, 2008 ("Tonnu Depo.") at 301:2-17, [Tayback Dec., Exh. 4]; MGA's Supplemental Responses to Mattel's Revised Third Set of Interrogatories, dated November 30, 2007, at 64-70, [Tayback Dec., Exh. 5]. Marlow's suggestion is particularly absurd given that, as is now known but was not revealed by Marlow at deposition, she and the employees took affirmative steps to conceal their work for MGA through the use of false names and false social security numbers. Marlow's argument is tantamount to a request that she be rewarded for successfully concealing her misconduct.

Combined with their complete failure--and the failure of their counsel--to ever make such a clear representation to the Court, the implication of their silence is clear: they have not in fact fully searched for relevant documents, let alone produced them.

Finally, Peter Marlow's testimony also confirms that the Marlow computer is a likely source of deleted documents. Peter Marlow took the Fifth Amendment at his deposition over *140* times--in response to questions as directly relevant as "What were those people working on on Bratz in 2000?" and "Did Beatriz Morales work on Bratz?" and "Do these records reflect any work that was done on Bratz for MGA?"[17]

The Opposition's reliance on the notion that "Courts generally require that a requesting party prove improper conduct before compelling the production of a computer hard drive,"[18] ignores the ample evidence of improper conduct in this case. Ms. Marlow is a key witness who is closely affiliated with MGA and Bryant. Ms. Marlow has received millions of dollars from Bryant and MGA as an alleged finder's fee.[19] She is an interested witness with powerful incentives to withhold the facts, lest a verdict in Mattel's favor disrupt her ability to receive future royalties from Bratz. All of this is compounded by Ms. Marlow's repeated efforts to evade deposition,[20] her direct involvement with a fraudulent scheme to pay Mattel employees to assist her and Bryant, and her concealment even at deposition of the full scope of that scheme. Peter Marlow's deposition testimony only reinforces the

---

[17] Peter Marlow Depo., at 121:7-8, 250: 13-16, 253:1-5, [Wood Dec. Exh. 1].
[18] Opp. at 20.
[19] Marlow Depo. at 113:10-114:3, 115:10-122:3, [Tayback Dec., Exh. 1] Transcript of the Deposition of Carter Bryant dated November 4, 2004 ("Bryant Depo.") at 157:18-158:3, [Tayback Dec., Exh. 3].
[20] See Mattel, Inc.'s Ex Parte Application To (1) Compel Depositions Of Elise Cloonan, Margaret Hatch-Leahy, And Veronica Marlow Or (2) In The Alternative, Modify The Scheduling Order; And Memorandum Of Points And Authorities In Support Thereof, dated November 15, 2007, [Wood Dec. Dec. Exh. 3]

obvious: evidence is located on Ms. Marlow's computer that has never been searched for.[21]

Under these circumstances, the Discovery Master clearly erred in relying on Veronica Marlow's self-serving, conclusory, statements at deposition suggesting that she produced all documents -- a statement that mentioned nothing about *any* search of her computers.

## II. THE EVIDENCE CITED IN THE OPPOSITION DEMONSTRATES THAT THE DISCOVERY MASTER'S ORDER DENYING MATTEL DISCOVERY AS TO MS. LEAHY'S COMPUTER HARD DRIVE IS CLEARLY ERRONEOUS

Mattel's motion identified two specific grounds on which the Discovery Master erred in denying Mattel's request to inspect Ms. Leahy's computer hard drive: (i) the protocol providing for an initial search of Ms. Leahy's computer was not exclusive and did not relieve Ms. Leahy (or her counsel) of their obligation to search for and produce responsive documents;[22] and (ii) there was admittedly no search for any graphical or deleted computer files, which by their very nature could

---

[21] As Mattel has observed previously, this case is replete with evidence of spoliation by both defendants and witnesses affiliated with them. For example, Carter Bryant installed a software program called "Evidence Eliminator" on his computers in 2002, and used the program to permanently destroy data so as to make it unrecoverable by even the most rigorous forensic examination. He used this program, causing the overwriting of over 9400 file and folder names and whatever remnants of the data they once contained, three months after this lawsuit was filed, and just two days before his computer was imaged by his attorneys in July 2004. See Summary of Findings of Forensic Analysis Report 1 of Mark J. Menz, dated February 10, 2008, at 1, [Tayback Dec., Exh. 8]. Of course, if Mattel had been denied the ability to inspect Bryant's hard drive, this "Evidence Eliminator" program would have never come to light.

[22] Motion at 12-13.

not have been captured by the key word protocol and which were the sort of responsive files most likely to exist of Leahy's computer.[23] The Opposition offers little response--largely regurgitating verbatim the lengthy, self-serving meet and confer letters Ms. Leahy's counsel sent to Mattel's counsel.[24] The Discovery Master simply erred on these issues, and for that reason Mattel's motion should be granted.

As an initial matter, just like Ms. Marlow, neither Ms. Leahy nor her counsel have proffered any declaration that they have ever searched for and produced all responsive documents relating to Bratz. The only conclusion to be drawn from that omission is that they have not done so.

The Opposition argues--as it must to support the Discovery Master's Order--that the protocol was Mattel's one and only shot at discovery of Ms. Leahy's computer.[25] However, by its explicit terms, the protocol *specifically allowed* Mattel the opportunity to seek original data and drives for analysis.[26] Furthermore, the protocol search did not discharge Ms. Leahy's own obligations to make a complete, good faith search of her computer hard drive for all relevant documents. Indeed, with respect to a separate witness--Elise Cloonan--the Discovery Master recognized that the protocol was not Mattel's exclusive right to seek electronic discovery.[27]

With respect to Mattel's argument that graphical files were never searched for and could not have been located under the protocol, the Opposition takes a schizophrenic position. On the one hand, the Opposition argues that there is

---

[23] Motion at 13-14.
[24] Opp. at 5-7.
[25] Opp at 4, 8, 13, 16.
[26] Signed protocol letter to Larry McFarland, dated September 13, 2000 [Tayback Dec., Exh. 14 ].
[27] See Discovery Master's Order at 6; (Finding that "[o]n balance, the potential relevance of the information on Ms. Cloonan's computer and Zip disk outweigh the burden and expense of another examination of these items by Mattel.").

no evidence "establishing that Ms. Leahy would have Bratz related graphical files on her computer" and that "Ms. Leahy sculpted the Bratz dolls with her hands and tools, and a computer was not part of her sculpting process."[28] Yet, in the very same paragraph, the Opposition touts the fact that Ms. Leahy has already "produced hundreds of pages in discovery, many of which are graphical in nature, including drawings and magazine pictures."[29] More importantly, Ms. Leahy's deposition testimony established that she, in fact, uses a computer, including 3D digital files, to aid her in her sculpting process.[30] Ms. Leahy testified:

> Digital scans for the sculptor are a really beneficial tool. Say I sculpted a snow white head, and it's the wrong size. Instead of going back and resculpting it all over again, you can scan it and enlarge it.[31]

Contrary to the what the Opposition claims,[32] Ms. Leahy specifically testified at her deposition that she in fact had a digital scan of a Bratz head made at least as early as October 2000 -- a head sculpt that Bryant worked on with Ms. Leahy even before he left Mattel.[33] Not only has Ms. Leahy (and MGA) failed to produce this digital scan file for the Bratz sculpt, but the testimony about the sculpt process[34] makes clear that graphical files exist on Ms. Leahy's computer.

---

[28] Opp. at 14-15.

[29] Opp. at 14.

[30] Leahy Depo. Tr. at 29:3-30:5, [Wood Dec., Exh. 2].

[31] Id. at 29:22-30:5.

[32] Opp at 3.

[33] Leahy Depo. Tr. at 191:21-193:13, 197:3-199:12 [Wood Dec., Exh. 2].

[34] Leahy Depo. Tr. at 29:3-30:5, [Wood. Dec., Exh. 2]; Bryant Depo. at 70:24-71:13. [Tayback Dec. Exh. 3]; Garcia Depo., at 255:1-17; 629:6-18, [Tayback Dec., Exh. 2].

It is undisputed, as well, that no search for graphical files has been conducted.[35] The Opposition does not dispute that keyword searches, like those used in the protocol, *cannot* capture graphical files or graphical files using file names that do not contain the keywords. United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 46 n. 11 (D. Conn. 2002) ("An image file is not susceptible to a keyword search"); see also id. at 50 ("Keyword searches are also limited because they cannot be conducted on all files, such as image files that contain scanned documents or faxes."); Rosa v. Commonwealth of Virginia, 638 S.E.2d 92, 96 (Ct. App. Va. 2006) ("any text saved in a picture file would not be found simply by using a word search"). Nor do keyword searches reliably uncover deleted files. Triumph Capital, 211 F.R.D. at 50 ("Searching deleted files and free and slack space using keywords can be particularly problematic because when a file is deleted, its name is altered by the FAT thereby rendering it unresponsive to a keyword search. In addition, a keyword search may locate a portion of a deleted file, but not other portions of the file unless they also contain keywords.").

This alone renders the Discovery Master's Order -- which mistakenly relied on the keyword searches as sufficient to ensure the production of graphical and deleted files -- clearly erroneous.

---

35 See, e.g., Email correspondence between counsel dated January 9,2008 and January 17, 2008 [Tayback Dec. Exhibits 20, 21].

## III. THE OPPOSITION FAILS TO SUPPORT THE POSITION THAT MS. MARLOW AND MS. LEAHY HAVE A LEGITIMATE PRIVACY INTEREST IN THEIR COMPUTER HARD DRIVES THAT OUTWEIGHS MATTEL'S RIGHT TO RELEVANT DISCOVERY

In its motion, Mattel provided a detailed analysis of how the Discovery Master erroneously concluded that the Witnesses' unspecified privacy interests outweigh Mattel's discovery rights.[36] In response, aside from conclusory statements and citations to previous, unrelated Discovery Master Orders,[37] the Opposition provides no basis to support the Discovery Master's balancing of interests in this case.

Foremost, the Opposition fails to identify any specific private information that will be unfairly disclosed through the requested inspection process of the computers. Even if Ms. Marlow and Ms. Leahy do have legitimate privacy interests in their computer hard drives, these interests can be safeguarded by the Protective Order in this case.

The Opposition argues otherwise,[38] but neither the record nor Ninth Circuit law supports its position. For example, as Mattel has noted--and the Opposition ignores--Ms. Leahy *previously* produced ostensibly "private" information from her computer (which had been identified by keyword search) and her interests were adequately protected by the existing Protective Order.[39] Moreover, this Court consistently allows discovery over non-party privacy objections where there is a protective order and a need for the discovery. In the context of protective orders, the Ninth Circuit has held that a party must show "for

---

36 Motion at 16-18.
37 Opp. at 20-22.
38 Opp. at 22.
39 Letter to Michael Zeller, dated October 26, 2007 [Tayback Dec., Exh. 24].

each particular document" that "specific prejudice or harm will result if no protective order is granted." See Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003) (internal cites omitted). And, even then, where third-party parties show *specific* privacy interests -- which the witnesses here have not done -- this Court still balances the privacy interest with the moving parties' need for discovery. Accordingly, even where "indisputably ... significant privacy rights" of non-party minors are implicated, relevant discovery should be ordered. Keith H. v. Long Beach Unified School District, 228 F.R.D. 652, 657-8 (C.D. Cal. 2005) (internal cites omitted).

## IV. THE OPPOSITION'S DISTINCTION BETWEEN "ELECTRONICALLY STORED" INFORMATION AND "ELECTRONIC DEVICES" IS MERITLESS

Lastly, the Opposition argues that there is a distinction to be made between discovery of electronically stored information and electronic devices.[40] First, this is irrelevant because such a distinction was not the basis of the Discovery Master's Order.[41] Second, the Opposition's reliance on such a difference is misplaced because Mattel is not seeking any computer as a "physical device," but rather a mirror of the computer's hard drive for examination and so that all relevant evidence may be obtained. The Opposition does not, and cannot, dispute that parties may obtain computer hard drives for testing pursuant to a Rule 34 request. See, e.g., Superior Consultant Co. v. Bailey, 2000 WL 1279161, at *13 (E.D. Mich. Aug. 22, 2000) (ordering defendants to "create and produce to defense counsel a backup file

[40] Opp. at 18-19.

[41] See Order at 4-7.

of defendant Bailey's laptop computer, and a backup file of any personal computer hard-drive to which defendant Bailey has had access at any time").

**Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court overrule the portions of the Discovery Master's April 11, 2008 Order Denying in Part Mattel's Motion to Compel Production of Electronic Media from Third Parties insofar as that Order pertains to Margaret Leahy and Veronica Marlow and further requests that the hard drives of Leahy and Marlow be ordered to be produced for inspection and imaging without further delay.

DATED: May 9, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/
Michael Zeller
Attorneys for Mattel, Inc.