QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-9059 & CV 05-2727<br><br>MATTEL, INC.'S OPPOSITION TO MGA'S MOTION OBJECTING TO DISCOVERY MASTER'S APRIL 25, 2008 ORDER DENYING MGA'S MOTION TO COMPEL DISCOVERY AS TO ISSUES AS TO WHICH MATTEL HAS PURPORTEDLY WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BY CLAIM ASSERTION<br><br>[Declaration of Harry A. Olivar, Jr. filed concurrently]<br><br>Date:   May 12, 2008<br>Time:   10:00 a.m.<br>Judge:  Honorable Stephen G. Larson<br>Place:  Courtroom 1 |

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PRELIMINARY STATEMENT ..................................................................... 1

SUMMARY OF RELEVANT FACTS .............................................................. 2

STANDARD OF REVIEW ........................................................................... 6

ARGUMENT ........................................................................................... 7

I.   THE DISCOVERY MASTER'S ORDER CONFORMS WITH NINTH CIRCUIT PRECEDENT AND CERTAINLY IS NOT CONTRARY TO LAW ....................................................................................... 7

   A.   The Discovery Master Properly Applied the *Hearn* Test ...................... 7

   B.   MGA's Theory--That Every Litigant Who Pleads Fraudulent Concealment Automatically Waives Privilege--Has Never Been Accepted by the Ninth Circuit .............................................................. 8

II.  THE DISCOVERY MASTER'S FINDING THAT TWO OF THE THREE *HEARN*-TEST PRONGS WERE NOT SATISFIED WAS NOT CLEARLY ERRONEOUS .................................................... 10

   A.   The Discovery Master Properly Considered Mattel's Lack of Reliance on Privileged Information ......................................................... 10

   B.   The Discovery Master's Finding that MGA Has Not Been Denied Access to Information Vital to Its Defense Is Entitled to Deference ................................................................................... 12

      1.   The Discovery Master Analyzed the "Other Means of Proof" Available to MGA .......................................................... 13

         (a)   Mattel's Production of Documents .................................. 13

         (b)   Deposition of Richard De Anda .................................... 15

         (c)   Mattel's Interrogatory Responses .................................. 16

         (d)   Testimony of Mattel's Recent 30(b)(6) Witness .............. 16

      2.   The Discovery Master Did Not Ignore Evidence in Deciding There Was No Implied Waiver .................................... 18

CONCLUSION ....................................................................................... 19

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

<u>1st Sec. Bank of Wash. v. Eriksen, No. CV 06-1004 RSL,</u>
5    2007 WL 188881 (W.D. Wash. Jan. 22, 2007) ................................. 12

6    <u>Bittaker v. Woodford,</u>
     331 F.3d 715 (9th Cir. 2003) ...................................................... 7
7
     <u>Chamberlain Group v. Interlogix, Inc.,</u>
8    No. 01 C 6157, 2002 WL 467153 (N.D. Ill. Mar. 27, 2002) ............... 9

9    <u>Chevron Corp. v. Pennzoil Co.,</u>
     974 F.2d 1156 (9th Cir. 1992) ............................................... 8, 11
10
     <u>Frontier Ref. Inc. v. Gorman-Rupp Co., Inc.,</u>
11   136 F.3d 695 (10th Cir. 1998) .................................................. 12

12   <u>In re Geothermal Res. Int'l, Inc.,</u>
     93 F.3d 648 (9th Cir. 1996) ..................................................... 12
13
     <u>Grimes v. City and County of San Francisco,</u>
14   951 F.2d 236 (9th Cir. 1991) ..................................................... 6

15   <u>Hearn v. Rhay,</u>
     68 F.R.D. 574 (E.D. Wash. 1975).......................................*Passim*
16
     <u>Holmgren v. State Farm Mut. Auto. Ins. Co.,</u>
17   976 F.2d 573 (9th Cir. 1992) ................................................ 8, 10

18   <u>Home Indem. Co. v. Lane Powell Moss & Miller,</u>
     43 F.3d 1322 (9th Cir. 1995) ................................................ 9, 10
19
     <u>In re Imperial Corp. of Am.,</u>
20   179 F.R.D. 286 (S.D. Cal. 1998).............................................. 11

21   <u>People v. Superior Court,</u>
     25 Cal. 4th 703 (2001) ............................................................ 7
22
     <u>Rambus Inc. v. Samsung Elec. Co., Ltd.,</u>
23   Nos. C-02298 RMW, C-05-00334, 2007 WL 3444376
     (N.D. Cal. Nov. 13, 2007) ...................................................... 10
24
     <u>Reavis v. Metro. Prop. & Liab. Ins. Co.,</u>
25   117 F.R.D. 160 (S.D. Cal. 1987)................................................ 8

26   <u>Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.,</u>
     32 F.3d 851 (3d Cir. 1994) .................................................... 10
27
     <u>Upjohn Co. v. United States,</u>
28   449 U.S. 383 (1981) .............................................................. 7

United States v. Amlani,
    169 F.3d 1189 (9th Cir. 1999) ...................................................... 7, 8, 9, 10, 12

Wolpin v. Philip Morris Inc.,
    189 F.R.D. 418 (C.D. Cal. 1999) ........................................................ 6

Yent v. Baca,
    No. CV-01-10672 PA (VBKX), 2002 WL 32810316
    (C.D. Cal. Dec. 16, 2002) ........................................................ 6

## **Statutes**

Fed. R. Civ. P. 72 ........................................................ 6

C.D. Cal. Local Rule 72 ........................................................ 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

There can be no reasoned argument that the Discovery Master's Order declining to find privilege waiver is contrary to law or clearly erroneous, and MGA's Objections do not present one.  At best, MGA argues based on the incomplete record it submits[1] that it views the Discovery Master's Order as "unfair" or that it thinks it deserved additional discovery responses or testimony, none of which meets the legal standard for reversing the Discovery Master's ruling.

With respect to the law, the Discovery Master properly applied the Hearn v. Rhay test adopted by the Ninth Circuit, finding that two of the three prongs necessary for any finding of privilege waiver had not been satisfied.  MGA's Objections seek to change the law -- arguing for an automatic rule that "when a party pleads fraudulent concealment . . . the protections of the attorney-client privilege are waived."  See MGA's Motion Objecting to Discovery Master's Privilege Waiver Order ("Objections") at 1.  This is not, and never has been, the law in the Ninth Circuit, and MGA's arguments challenging the legal basis for the Discovery Master's Order thus must be rejected.

Similarly, MGA's motion fails to show that any of the Discovery Master's extensive fact findings were clearly erroneous.  The Discovery Master properly found that "MGA has not been denied factual evidence related to how and when Mattel first learned that Bryant was working for MGA while he was employed by Mattel."  April 25, 2008 Order Denying MGA's Motion to Compel Discovery as to Issues To which Mattel Has Purportedly Waived the Attorney-Client and Work

---

[1]  Tellingly, MGA submits with its Objections only half the record before the Discovery Master -- its own papers -- omitting Mattel's submissions, and even omitting the Discovery Master's Order at issue.  See Declaration of Marcus R. Mumford in Support of MGA's Motion Objecting to Discovery Master's April 25, 2008 Order, executed April 29, 2008 ("Third Mumford Decl.").

Product Privileges by Claim Assertions ("Order") at 10.[2]  The Discovery Master recounted the substantial information Mattel has produced in discovery -- including responses to interrogatories, documents and testimony that disclosed when Mattel learned of any facts relevant to MGA's laches and limitations defenses.  See Order at 8-9.  Having reviewed the recent testimony of Mattel's 30(b)(6) witness, the Discovery Master found that the witness "provided substantial testimony relevant to MGA's defense."  Order at 9.  The Discovery Master also found that, given Mattel's consistent disclosure of when it learned of the relevant facts, privileged discussions within Mattel regarding those facts could not be "vital" information.  Order at 10.  None of these findings were clearly erroneous, and MGA's purported complaints about particular depositions or discovery responses needed to be raised with the Discovery Master, not on this motion.

        MGA's Motion Objecting to the Discovery Master's Order should be denied.

## Summary of Relevant Facts

        As the Discovery Master found, MGA and Bryant sought and obtained extensive discovery regarding their statute of limitations and laches defenses to Mattel's counterclaims, including discovery relating to Mattel's assertion that it did not obtain a copy of Bryant's contract with MGA until November 2003.[3]  See Order at 8-10.  For example, MGA and Bryant obtained interrogatory responses, hundreds of pages of documents, responses to requests for admissions, and deposition testimony disclosing when Mattel first became aware of the various facts regarding

---

[2]  Ex. 1 to the concurrently filed Declaration of Harry A. Olivar, Jr. ("Olivar Decl.").

[3]  Although not relied on by the Discovery Master in his Order, Mattel maintains and does not waive its position that, in any event, its counterclaims relate back to its original complaint filed on April 27, 2004 and/or its May 13, 2005 Answer in the 05-2727 action, a position that, if accepted, would render many of MGA's arguments on its defenses irrelevant.

Bryant's involvement in Bratz, his breach of contract, his work for MGA, and his contract with MGA.  See id.

In response to MGA's interrogatories, Mattel provided the following information as to when and how Mattel first learned that Bryant performed Bratz-related work for MGA while at Mattel:

> To Mattel's knowledge, Bryant was first confirmed as the Bratz designer in the July 18, 2003 *Wall Street Journal* article, in which Isaac Larian also indicated that Bryant had been involved in some manner with MGA in or about "late 1999." Subsequently, in November 2003, Mattel obtained a copy of a contract between defendant Carter Bryant and defendant MGA . . . Through this agreement Mattel concluded that Brant . . . worked as a designer for a Mattel competitor, MGA.

First Mumford Decl. Ex. 17.  Mattel supplemented this response to state that "[a]fter Bryant left Mattel, but prior to the July 18, 2003 [*Wall Street Journal*] article, there was rumor and innuendo that Bryant may be working with MGA on Bratz."  Id. Ex. 3.  Mattel's supplemental interrogatory responses included the additional information that Bryant used other Mattel employees to work on the Bratz dolls, and that the Bratz dolls "had been designed and were far along in development during the time the Bryant was employed by Mattel."  Id. Ex. 4.

Mattel's interrogatory responses also explained in detail its investigations of Bryant and MGA, including how and when it learned in those investigations of Bryant's wrongful conduct that forms the basis for Mattel's claims. In response to MGA's interrogatory asking that Mattel "[s]tate, with particularity, when and how MATTEL first learned that BRYANT performed work for MGA," Mattel described in detail when and how it first learned that Bryant worked on Bratz for MGA while still employed at Mattel:

1  Mattel conducted an investigation in Spring 2002 based on

2  allegations that Bryant may have plagiarized 'Toon Teens'

3  and created Bratz dolls for MGA, and later in August 2002

4  based on an anonymous letter sent to Mattel.  The letter's

5  author (whoever it was) offered no evidence for his or her

6  allegations.  The potential claims investigated in 2002

7  have not been asserted in this case.  In March 2002, Mattel

8  investigated allegations of possible copyright infringement

9  of "Toon Teens" designs, not whether Mr. Bryant created

10  Bratz or worked with MGA during his Mattel

11  employment.  The potential claims investigated in 2002

12  did not give Mattel any knowledge, or even reason to

13  believe, that Bryant worked for MGA and/or conceived of

14  Bratz while a Mattel employee.

15  Subsequently, on November 24, 2003, Mattel obtained a

16  copy of a contract between defendant Carter Bryant and

17  defendant MGA.  That contract -- which Bryant and MGA

18  had entered into while Bryant was employed by Mattel --

19  required Bryant to provide design services to MGA on a

20  "top priority" basis, in conflict with his then-existing

21  obligations to Mattel.  It also purported to grant MGA

22  ownership of works produced by Bryant both before and

23  after the agreement's effective date, in further

24  contravention of his obligations to Mattel.  Through this

25  agreement, Mattel first determined that it was likely that

26  Bryant worked as a designer for a Mattel competitor,

27

28

MATTEL'S OPPOSITION TO MGA'S MOTION OBJECTING TO DISCOVERY MASTER'S APRIL 25, 2008 ORDER

1   MGA, while being employed and paid by Mattel for his

2   exclusive services as a designer.[4]

3       Most recently, MGA was able to depose Mattel's 30(b)(6) designee on

4   topics relating to MGA's defenses, including all acts, omissions, circumstances,

5   and/or evidence tending to show (1) when Mattel first became aware of wrongful

6   conduct of Bryant, (2) the manner and mode by which Mattel first became aware of

7   wrongful conduct of Bryant, (3) when Mattel first became aware Bryant was

8   involved in the conception, creation, design and/or reduction to practice of Bratz,

9   (4) how Mattel first became aware Bryant was involved in the conception, creation,

10  design and/or reduction to practice of Bratz, and (5) all actions taken by Mattel,

11  including but not limited to all circumstances surrounding any investigations Mattel

12  has undertaken, relating to Bratz after Mattel learned Bryant was involved in the

13  conception, creation, design and/or reduction to practice of Bratz.  See Order at 9.

14      The Discovery Master reviewed the transcript of that deposition[5] and

15  found that, "over the course of a ten hour day, she [Mattel's designee] gave over

16  three hundred pages of testimony and freely answered all but a handful of questions

17  posed to her on this subject."  Order at 10.  The Discovery Master found the witness

18  to be "knowledgeable about the scope of the investigations conducted by" Mattel's

19  Legal Department and Security Department.  Because Mattel informed MGA in

20  discovery when and how it became aware of the relevant facts, there is no basis for

21  MGA to contend the Discovery Master erred in rejecting MGA's request for a

22  privilege waiver.

23

24

25  _____

    [4]   Mattel's Supplemental Responses to MGA's First Set of Interrogatories, Third
26  Mumford Decl. Ex. B, at 113.

    [5]   See Transcript of the Deposition of Kathleen Simpson-Taylor ("Simpson-
27  Taylor Tr."), Ex. D to the April 11, 2008 Declaration of B. Dylan Proctor, Olivar
28  Decl. Ex. 5.

1

## **Standard of Review**

2          The Order appointing the Discovery Master provides that his rulings

3  are to be treated as rulings by a Magistrate Judge, subject to Federal Rule of Civil

4  Procedure 72 and Local Rule 72 on any review.  <u>See</u> Order re Appointment of

5  Discovery Master, dated December 6, 2006, ¶ 6 ("The Discovery Master's orders

6  resolving discovery disputes, reports, and recommendations pursuant to Rule 53(e)

7  or (f) shall be treated as rulings made by a Magistrate Judge of the United States

8  District Court.").

9          Accordingly, the Court should modify or set aside the Discovery

10 Master's orders only to the extent they are "found to be clearly erroneous or contrary

11 to law."  <u>Fed. R. Civ. P.</u> 72(a); <u>see</u> <u>Grimes v. City and County of San Francisco</u>,

12 951 F.2d 236, 240 (9th Cir. 1991) ("The district court shall defer to the magistrate's

13 orders unless they are clearly erroneous or contrary to law.") (internal citations

14 omitted); Standing Order, dated April 14, 2006, at 2:5-13 (same).

15         Under this deferential standard, "a magistrate's order is 'clearly

16 erroneous' if, after considering all of the evidence, the district court is left with the

17 definite and firm conviction that a mistake has been committed, and the order is

18 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or

19 rules of procedure."  <u>Yent v. Baca</u>, No. CV-01-10672 PA (VBKX), 2002 WL

20 32810316 at *2 (C.D. Cal. Dec. 16, 2002); <u>Wolpin v. Philip Morris Inc.</u>, 189 F.R.D.

21 418, 422 (C.D. Cal. 1999) (holding that "to conclude that a magistrate judge's

22 decision is clearly erroneous, the District Court must arrive at a 'definite and firm

23 conviction that a mistake has been committed.'") (internal citations omitted).

24

25

26

27

28

**Argument**

I.    **THE DISCOVERY MASTER'S ORDER CONFORMS WITH NINTH CIRCUIT PRECEDENT AND CERTAINLY IS NOT CONTRARY TO LAW**

       The Ninth Circuit has recognized the great respect that California affords the attorney-client privilege:  "The California Supreme Court has recently described the privilege as 'fundamental to [its] legal system' and a 'hallmark of [its] jurisprudence.'"  Bittaker v. Woodford, 331 F.3d 715, 721 (9th Cir. 2003) (quoting People v. Superior Court, 25 Cal. 4th 703, 715 (2001)).  This also applies to the work product privilege, "a complementary rule that protects many of the same interests."  Id. at 722 n.6 (citing Upjohn Co. v. United States, 449 U.S. 383, 400 (1981)).  The Discovery Master properly applied Ninth Circuit law in concluding that no privilege waiver was warranted in this case.

     A.    **The Discovery Master Properly Applied the *Hearn* Test**

       In analyzing requests seeking privilege waiver such as MGA's, the Ninth Circuit applies the "Hearn test," set forth in Hearn v. Rhay, 68 F.R.D. 574, 576-77 (E.D. Wash. 1975).  See, e.g., United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999).  The test requires that the party seeking waiver make a showing that satisfies three factors:

          (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;

          (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and

          (3) application of the privilege would have denied the opposing party access to information vital to his defense."

Hearn, 68 F.R.D. at 576-77.

1    In evaluating arguments of implied waiver by claim assertion, the Ninth

2  Circuit has found waiver in only two situations: (1) when a party *relies on privileged*

3  *communications* or work product in support of its claims or defenses, see, e.g.,

4  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1163 (9th Cir. 1992) (finding

5  implied waiver where defendant asserted an advice of counsel defense); and

6  (2) when the *only* evidence available to assess a party's claim or defense consists of

7  attorney-client communications or work product.  See, e.g., Amlani,

8  169 F.3d at 1191 (finding implied waiver where the only evidence of an essential

9  element of plaintiff's attorney disparagement claim -- the reason the plaintiff fired

10 his attorney -- was privileged communications); Holmgren v. State Farm Mut. Auto.

11 Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992) (finding implied waiver of attorney work

12 product regarding an insurer's counsel's handling of a claim in a cause of action for

13 bad faith claim settlement practices because "[i]n a bad faith insurance claim

14 settlement case, the 'strategy, mental impressions and opinion of [the insurer's]

15 agents concerning the handling of the claim are directly at issue'") (quoting

16 Reavis v. Metro. Prop. & Liab. Ins. Co., 117 F.R.D. 160, 164 (S.D. Cal. 1987)).

17    The Discovery Master applied the Hearn test, as required by Ninth

18 Circuit law.  He found, supported by reasoned analysis, that two of the three Hearn

19 factors were not satisfied.  There is nothing "contrary to law" in the Discovery

20 Master's decision to apply the Hearn test, or his finding that the test does not support

21 a privilege waiver in this case.

22    **B.    MGA's Theory--That Every Litigant Who Pleads Fraudulent**

23    **Concealment Automatically Waives Privilege--Has Never Been**

24    **Accepted by the Ninth Circuit**

25    MGA spends much of its motion arguing (as it must to prevail) that

26 some law other than the Hearn test should apply.  MGA's view is that the law is or

27 should be that any litigant who invokes a fraudulent concealment exception to

28 statute of limitations automatically has waived privilege.  The very first page of

-8-

1  MGA's objections proclaims, "when a party pleads fraudulent concealment as a

2  basis for avoiding the statute of limitations and laches . . . the protections of the

3  attorney-client privilege are waived."  Objections at 1; see also Objections at 19

4  ("[P]arties that invoke the fraudulent concealment doctrine to fend off a statute of

5  limitations or laches defense place their . . . attorney-client communications . . .

6  directly 'at issue.'").

7          The absurd automatic-waiver test advocated by MGA has never been

8  the law in the Ninth Circuit.  The Ninth Circuit has adopted the three-pronged Hearn

9  test for all implied waiver inquiries.  See Amlani at 1195; Home Indem. Co. v. Lane

10 Powell Moss & Miller, 43 F.3d 1322, 1326 (9th Cir. 1995) (citing Hearn, 68 F.R.D.

11 at 581).  Under Hearn, the facts of each case are to be evaluated under the test's

12 three prongs; there are no per se exceptions to application of the test, as MGA

13 claims.

14          In pursuit of its automatic waiver theory, MGA speculated that, because

15 attorney-client communications within Mattel might be relevant to MGA's statute of

16 limitations and laches defenses, upholding Mattel's privileges would be contrary to

17 "the tenets of fundamental fairness."  Objections at 14-15; see also Objections at 19

18 (arguing that waiver applies whenever "the party opposing the waiver put its

19 privileged information 'at issue' by making it relevant").  MGA's "relevance" test is

20 contrary to Ninth Circuit precedent.  But, because privileged information sought by a

21 litigant is inevitably "relevant" to the issues in some respect, "relevance" is hardly a

22 basis for overcoming privilege.  For this reason, the Ninth Circuit has recognized

23 explicitly that "[p]rivileged communications do not become discoverable simply

24 because they are related to issues raised in the litigation."  Amlani, 169 F.3d at 1195;

25 see also Chamberlain Group v. Interlogix, Inc., No. 01 C 6157, 2002 WL 467153 at

26 *2 (N.D. Ill. Mar. 27, 2002) (finding no waiver where defendant asserted a statute of

27 limitations defense despite fact that communications with attorney were "relevant").

28

MGA's only support for its "relevance equals waiver" test is the unpublished opinion in Rambus Inc. v. Samsung Elec. Co., Ltd., Nos. C-02298 RMW, C-05-00334, 2007 WL 3444376 (N.D. Cal. Nov. 13, 2007).  The Discovery Master appropriately noted that Rambus marks a departure from established Ninth Circuit law.  See Order at 7 n.1.  The Discovery Master's determination to follow Amlani and other Ninth Circuit cases, and not to follow the unpublished opinion in Rambus, certainly cannot be described as "contrary to law."  See Holmgren, 976 F.2d at 577 (holding that attorney work product privilege is waived only when "mental impressions are *at issue* in a case and the need for the material is compelling"); Home Indem., 43 F.3d at 1326 ("Even if the plaintiffs affirmatively put into issue privileged information concerning their state of mind and motivations . . . we are not convinced that the information was sufficiently vital to [defendant's] defense to fulfill the third prong of the test."); see also Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994) (holding that the mere fact that a party's state of mind is at issue in a litigation should not effect a broad waiver of the attorney-client privilege).

## II.   THE DISCOVERY MASTER'S FINDING THAT TWO OF THE THREE *HEARN*-TEST PRONGS WERE NOT SATISFIED WAS NOT CLEARLY ERRONEOUS

### A.   The Discovery Master Properly Considered Mattel's Lack of Reliance on Privileged Information

The Discovery Master's Order plainly sets forth his findings that Mattel disclosed when and how it became aware of the facts relevant to MGA's statute of limitations and laches defenses, and that Mattel did not rely on privileged information.  None of this was clearly erroneous.  Applying the second prong of the Hearn test, the Discovery Master specifically found that "Mattel has not affirmatively put at issue privileged information in support of its claim or defense." Order at 7.  The Discovery Master explained that:

1         Mattel's complaint does not refer directly or indirectly to any

2         attorney investigation or attorney involvement in Mattel's

3         alleged discovery of the basis of its claims.  Nor has Mattel

4         alleged that it learned of the basis of its claims by means of

5         privileged attorney-client communications or work product.

6         Mattel's discovery responses also make clear that Mattel is not

7         relying on any privileged information to support its allegations

8         of fraudulent concealment.  Instead, Mattel has disclosed that it

9         first learned of the basis of its claims when it received a copy of

10         Bryant's agreement with MGA in unrelated litigation.

11  Order at 7.

12         The Discovery Master specifically and correctly found that "Mattel is not

13  relying on any privileged information," one of the two circumstances in which the

14  Ninth Circuit has found implied waiver.  See Chevron, 974 F.2d at 1163 (finding

15  implied waiver where defendant asserted an advice of counsel defense); see also In re

16  Imperial Corp. of Am., 179 F.R.D. 286, 288-89 (S.D. Cal. 1998) (when plaintiff

17  "relied on his attorneys' advice and investigation [to] . . . overcom[e] [defendant's]

18  statute of limitations defense," he "plac[ed] in issue his own knowledge, and that of

19  his attorneys'").[6]  The Discovery Master properly considered Mattel's disclosure of the

20  factual information it received and its lack of reliance on privileged communications

21  and work product.

22         MGA argues that the Discovery Master improperly read a "heightened

23  reliance standard" into Ninth Circuit cases.  In reality, the Discovery Master faithfully

24  applied the law, avoiding the meaningless "relevance" standard for privilege waiver

25  advocated by MGA, but found nowhere in Ninth Circuit cases.  As the Discovery

26  _____

27      [6]  MGA's claim that Chevron Corp. and other Ninth Circuit authority should be ignored is unpersuasive in light of the fact that the *only* case it can cite with a

28  seemingly lower threshold is the unpublished Rambus decision.

1  Master noted, <u>Hearn</u> itself found it critical that the defendants there were asserting

2  "good faith" based on facts including advice of counsel, where "the content of

3  defendant's communications with their attorney is inextricably merged with the

4  elements of plaintiff's case and defendants' affirmative defense." <u>Hearn</u>, 68 F.R.D. at

5  582.

6  　　　　The Discovery Master's findings that Mattel did not rely on privileged

7  communications and work product and did not put privileged information "at issue"

8  were not clearly erroneous.

9  　　**B.**　　**<u>The Discovery Master's Finding that MGA Has Not Been Denied</u>**

10  　　　　**<u>Access to Information Vital to Its Defense Is Entitled to Deference</u>**

11  　　　　<u>Hearn</u>'s third prong requires that MGA show that "application of the

12  privilege would have denied the opposing party access to information vital to his

13  defense." <u>Hearn</u>, 68 F.R.D. at 578.  Ninth Circuit law is clear that where substantial

14  non-privileged evidence bearing on a defense has been produced, there is no waiver

15  of privilege.  See <u>Amlani</u>, 169 F.3d at 1195 ("When the sought-after evidence is 'only

16  'one of several forms of indirect evidence' about an issue,' the privilege has not been

17  waived.") (citing <u>In re Geothermal Res. Int'l, Inc.</u>, 93 F.3d 648, 653 (9th Cir. 1996)).

18  Courts applying <u>Amlani</u> have recognized that "[u]nder <u>Hearn</u>, the information sought

19  must be 'vital' to defendants' case, meaning that the information is available from no

20  other source." See <u>1st Sec. Bank of Wash. v. Eriksen</u>, No. CV 06-1004 RSL, 2007

21  WL 188881 at *3 (W.D. Wash. Jan. 22, 2007) (citing <u>Amlani</u>, 169 F.3d at 1195 and

22  <u>Frontier Ref. Inc. v. Gorman-Rupp Co., Inc.</u>, 136 F.3d 695, 701-02 (10th Cir. 1998)).

23  And in <u>Hearn</u>, the court expressly noted that "[i]n an ordinary case" the privilege is

24  not waived, even when privileged information is relevant, because "other means of

25  proof are normally available." <u>Hearn</u>, 68 F.R.D. at 582.  The Discovery Master's

26  analysis of all the non-privileged information available to MGA demonstrates that

27  his finding that privileged information was not "vital" was not clearly erroneous, and

28  was, indeed, entirely correct.

1.   **The Discovery Master Analyzed the "Other Means of Proof" Available to MGA**

The Discovery Master correctly found that "there are many other means of proof available to MGA to support its statute of limitations and laches defenses." Order at 8.  Having reviewed the record, the Discovery Master found: (i) Mattel has produced hundreds of pages of non-privileged documents regarding its investigations relating to Bryant and/or MGA; (ii) Richard De Anda, Mattel's head of security, testified as to how and when Mattel first investigated Bryant and MGA; (iii) Mattel has provided interrogatory responses explaining how and when it learned of Bryant's allegedly wrongful conduct; and (iv) Mattel's 30(b)(6) designee testified on topics relevant to MGA's laches and statute of limitations defenses and "provided substantial testimony relevant to MGA's defense."  Order at 8-9.

MGA's argument that the Discovery Master somehow committed "clear error" with respect to these findings is baseless.  As detailed below, each of MGA's claimed "errors" merely amounts to a circular complaint that because Mattel did not disclose privileged communications, MGA needs to obtain privileged communications.  MGA is entitled to know and does know when Mattel learned of the *facts* about Bryant's involvement with MGA.  What Mattel's lawyers may have thought about or advised about the facts is privileged, and certainly not "vital."  Not only are the Discovery Master's conclusions not clearly erroneous, they are well-supported by the record.

(a)   Mattel's Production of Documents

The Discovery Master found that "Mattel has produced hundreds of pages of non-privileged documents regarding its investigations relating to Bryant and/or MGA, including the 2002 investigations regarding the 'anonymous letter' and potential copyright infringement of Mattel's Toon Teens."  Order at 8.  MGA claims that "[t]he Discovery Master failed to acknowledge that no one has seen Mattel's Legal Department files and that there were several pages in the Security Department

files that were produced only in completely redacted form to keep them from MGA."  MGA cannot demonstrate that privileged information is "vital" just by arguing that the privileged information was withheld.  MGA's circular complaint is not a basis for disregarding the Discovery Master's findings regarding the relevant non-privileged documents that Mattel produced.

MGA's argument is also without factual merit.  On a prior motion that MGA brought -- and lost -- to compel production of these documents in unredacted form, the Discovery Master reviewed the investigative file documents *in camera*. He found that the redactions had been properly made based on privilege.  Thus, it is not correct to say "no one" has seen the documents at issue.  The Discovery Master has seen the documents and has rejected MGA's arguments.  See July 10, 2007 Order Re: In Camera Review of Global Security Files at 4, Olivar Decl. Ex. 6.

Further, MGA devotes several pages of its motion to identification of evidence Mattel has *produced* that it claims rebuts Mattel's assertion that it did not become aware until November 2003 that Bryant created Bratz and made a deal with MGA while a Mattel employee.[7]  This proves the Discovery Master's point.  For example, MGA argues that "In March 2002, Mattel's security department identified Bryant as 'an illustrator/former employee who may have plagiarized [a Mattel design] and created 'Bratz' dolls for MGA."  Objections at 4.  It cites to a non-privileged document produced by Mattel for support.  See id. at n.8.  It describes investigations Mattel conducted in 2002 based on an anonymous letter "that linked Bryant to Bratz '[w]hile he was working with Mattel.'"  Objections at 5.  It supports this statement by citing to another non-privileged document produced by Mattel. See id. at n.9.  As the Discovery Master found, Mattel has "conducted a reasonable search . . . and has produced all documents related to the March 2002 investigation

---

[7]   MGA's Objections at 4-5.

1  that are responsive to MGA and Bryant's document requests."[8]  Beyond circular

2  arguments, MGA can make no showing that privileged documents are "vital."

3  (b)   Deposition of Richard De Anda

4  The Discovery Master also found that "MGA took the deposition of

5  Richard De Anda, Mattel's head of security, who testified regarding how and when

6  Mattel first investigated Bryant and/or MGA."  Order at 8.  MGA claims that this

7  finding "misstates the record" and complains that "Mr. De Anda professed to having

8  only limited knowledge concerning the investigations," "[o]ther witnesses named in

9  the investigation did not remember the significant details of their purported

10 involvement," and that "[w]hen asked to disclose the substance of his

11 communications with the legal department regarding the investigations,

12 Mr. De Anda was instructed not to answer on privilege grounds."  Objections at 23.

13 Again, each of these complaints is circular, misdirected in the context of this

14 motion, or both.

15 Mr. De Anda's testimony concerning how the investigations were

16 conducted is irrelevant in light of his *extensive* testimony concerning the *facts* that

17 became known to Mattel.[9]  The second basis for MGA's complaint -- what other

18 witnesses may have remembered -- was not relied on by the Discovery Master and is

19 irrelevant in light of Mr. De Anda's testimony.[10]  And the last basis for MGA's

20 

21 [8]   Order Granting MGA and Bryant's Motion to Compel Production of Certain
   Documents Withheld Under Claims of Privilege for In Camera Review, and
22 Denying Motion to Attest to the Completeness of February 2007 Production, dated
   May 15, 2007, at 6, Declaration of B. Dylan Proctor in support of Mattel's
23 Opposition to the MGA's Motion to Compel Regarding Mattel's Privilege Waiver by
   Claim assertion, dated December 27, 2007 ("December 27, 2007 Proctor Decl."),
24 Ex. 2, Olivar Decl. Ex. 4.

25 [9]   See, e.g., De Anda Tr. at 166:5-177:4, 224:18-227:8, 237:11-258:22,
26 December 27, 2007 Proctor Decl. Ex. 7, Olivar Decl. Ex. 4.

27 [10]   MGA's complaints about alleged deficiencies in *two* of the scores of
   individual Mattel employee depositions is hardly grounds for "clear error" and does
28 not qualify as a showing that privileged information is "vital" to its defense.  Even if
   (footnote continued)

-15-

1  complaint -- that Mr. De Anda was prevented from revealing privileged

2  communications -- is again circular and beside the point.  Given that MGA has the

3  *facts* know to Mattel in the course of its investigations, Mattel's privileged

4  communications and counsel's work product are not "vital" to MGA's defense.

5  MGA cannot complain of Mattel's refusal to waive privilege is a basis for privilege

6  waiver.

7              (c)     Mattel's Interrogatory Responses

8          The Discovery Master also found Mattel has provided interrogatory

9  responses detailing "its investigations of Bryant and MGA, and how and when it

10  first learned of Bryant's allegedly wrongful conduct that forms the basis for Mattel's

11  claims."  Order at 8.  MGA complains that this finding was clear error based on its

12  view that the interrogatories "reveal few, if any, facts about the state of the

13  company's knowledge prior to 2003."  Objections at 24.  But the mere fact that the

14  responses do not reveal MGA's wished-for facts (i.e., that Mattel knew of Bryant's

15  contract with MGA before 2003) does not render the Discovery Master's conclusion

16  erroneous.  Mattel's response evaluated by the Discovery Master was fully

17  responsive to the interrogatory propounded by MGA, which asked Mattel to "[s]tate,

18  with particularity, when and how MATTEL first learned that BRYANT performed

19  work for MGA."[11]  The Discovery Master's finding that Mattel's interrogatory

20  responses provided MGA with information relevant to its statute of limitations and

21  laches defenses is also well-supported by the record and not clearly erroneous.

22              (d)     Testimony of Mattel's Recent 30(b)(6) Witness

23          Finally, the Discovery Master found that MGA's deposition of Mattel's

24  30(b)(6) designee on topics relevant to MGA's laches and statute of limitations

25

26  (contrary to fact), they had any basis, the recourse for such a complaint would be
   through a motion to compel, not through a motion to find a waiver of privilege.

27      [11]  Mattel's Supplemental Responses to MGA's First Set of Interrogatories, Third

28  Mumford Decl. Ex. B, at 113.

1   defenses, produced "substantial testimony relevant to MGA's defense."  Order at 9.

2   MGA complains that this finding is erroneous based on its contention that Mattel

3   blocked "the MGA Parties' access to information concerning the company's early

4   investigations by not equipping the deponent with that information during her

5   preparation."  Objections at 24.  What MGA is really complaining about, as the

6   Discovery Master noted, is that "the witness was not given access to Mattel's Legal

7   Department's file or redacted portions of Mattel's Security Department's files, or

8   spoke to anyone about those files, to ascertain what underlying facts had been

9   disclosed or uncovered by Mattel in any of its pre-November 2003 investigations."

10  Order at 9.  Again, this is just a circular complaint that privilege should be waived

11  because Mattel declined to waive privilege.  And, of course, had Mattel educated the

12  witness as to the contents of privileged communications -- rather than facts -- MGA

13  would have undoubtedly argued that doing so was itself a waiver of privilege.

14           As the Discovery Master properly found:

15           A review of the deposition transcript . . . reveals that Mattel's

16           30(b)(6) witness provided substantial testimony relevant to

17           MGA's defense.  Over the course of a ten hour day, Mattel's

18           corporate designee gave over three hundred pages of testimony

19           and freely answered all but a handful of questions posed to her

20           on this subject.  The transcript shows that the witness fully

21           cooperated and gave responses to the best of her ability.

22           Mattel's counsel did not obstruct MGA's questioning of the

23           witness.  Nor did Mattel's counsel object to any questions based

24           upon the attorney-client privilege.  *The witness provided*

25           *significant factual evidence related to how and when Mattel*

26           *first learned that Bryant was working for MGA while he was*

27           *employed by Mattel.*

28

Order at 9-10 (emphasis added).  Further, the Discovery Master noted, "the witness was knowledgeable about the scope of investigations conducted by both [the Law and Security] departments."  Order at 10.

The Discovery Master's conclusion based on his detailed review of the transcript that the 30(b)(6) testimony provided significant means of proof concerning MGA's statute of limitations and laches defenses was not clearly erroneous.

## 2.   The Discovery Master Did Not Ignore Evidence in Deciding There Was No Implied Waiver

MGA finally argues that the Discovery Master's order was "clearly erroneous" because it purportedly ignored "evidence" (allegedly, Mattel's summary judgment briefing) concerning Mattel's counsel's involvement in discovering the alleged bases for the company's claims.  See Objections at 11-12; 18.  This argument fails for three reasons:  First, in the summary judgment declaration referred to, counsel testifies only to the date Mattel received a document -- a fact not subject to any privilege.  See First Mumford Decl. Ex. 14.  Second, as the Discovery Master noted, none of Mattel's summary judgment submissions alter the conclusion that privileged communications are not "vital" to MGA's defense.  See Order at 10.  Third, with respect to Mattel's moving for summary judgment on MGA's defenses, MGA does not and cannot cite any authority that supports its suggestion that a request for summary judgment on issues that are ripe for adjudication somehow changes the analysis for determining implied waiver.  Privileged information does not become "vital" just because non-privileged evidence fails to support a litigant's claim or defense.  If that were so, every litigant pursuing a position lacking evidentiary merit would be able to obtain a privilege waiver.

## __Conclusion__

The Discovery Master correctly applied Ninth Circuit law and his findings of fact were not clearly erroneous.  Mattel respectfully requests that the Court deny MGA's motion and affirm the Discovery Master's Order.

DATED: May 9, 2008                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                      By_____/s/_____
                                          Harry A. Olivar, Jr.
                                          Attorneys for Mattel, Inc.