QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MATTEL, INC., a Delaware<br>corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>[PUBLIC REDACTED]<br>DECLARATION OF HARRY A.<br>OLIVAR, JR. IN SUPPORT OF<br>MATTEL, INC.'S OPPOSITION TO<br>MGA'S MOTION OBJECTING TO<br>DISCOVERY MASTER'S APRIL 25,<br>2008 ORDER DENYING MGA'S<br>MOTION TO COMPEL DISCOVERY<br>ON ISSUES AS TO WHICH MATTEL<br>HAS PURPORTEDLY WAIVED THE<br>ATTORNEY-CLIENT AND WORK<br>PRODUCT PRIVILEGES BY CLAIM<br>ASSERTION<br><br>Hearing Date:  May 12, 2008<br>Time:            10:00 a.m.<br>Place:           Courtroom 1<br>Judge:          Hon. Stephen G. Larson<br><br>**Phase 1**<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:            May 27, 2008 |

<u>DECLARATION OF HARRY A. OLIVAR, JR.</u>

I, Harry A. Olivar, Jr., declare as follows:

1.      I am a member of the bar of the State of California, admitted to practice in the Central District of California and elsewhere, and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). Except where otherwise indicated, I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached as **Exhibit 1** hereto is a true and correct copy of the Discovery Master's April 25, 2008 Order Denying MGA's Motion to Compel Discovery as to Issues to Which Mattel Has Purportedly Waived the Privilege.

3.      Attached as **Exhibit 2** hereto is a true and correct copy of Mattel, Inc.'s Opposition to MGA's Motion to Compel Discovery as to Issues as to Which Mattel Has Purportedly Waived the Attorney-Client and Work Product Privileges by Claim Assertion, dated January 31, 2008.

4.      Attached as **Exhibit 3** hereto is a true and correct copy of the January 31, 2008 Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Opposition to MGA's Motion to Compel Discovery as to Issues as to Which Mattel Has Purportedly Waived the Attorney-Client and Work Product Privileges by Claim Assertion.

5.      Attached **as Exhibit 4** hereto is a true and correct copy of the December 27, 2007 Declaration of B. Dylan Proctor in Support of Mattel, Inc.'s Opposition to MGA's Motion to Compel Regarding Mattel's Privilege Waiver by Claim Assertion, which was lodged with the Discovery Master on January 31, 2008.

6.      Attached as **Exhibit 5** hereto is a true and correct copy of the April 11, 2008 Declaration of B. Dylan Proctor in Opposition to Motion to Compel Discovery on Issues as to Which Mattel Has Waived Attorney-Client and Work Product Privileges by Claims Assertion.

1        7.      Attached as **Exhibit 6** hereto is a true and correct copy of the

2   Discovery Master's July 10, 2007 Order Re In Camera Review of Global Security

3   Documents.

4        I declare under penalty of perjury under the laws of the United States of

5   America that the foregoing is true and correct, and that this Declaration was

6   executed on May 9, 2008 at Los Angeles, California.

7

8                                        _____/s/_____

9                                        Harry A. Olivar, Jr.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF HARRY A. OLIVAR, JR.

# Exhibit 1

1 | Hon. Edward A. Infante (Ret.)
2 | JAMS
   | Two Embarcadero Center
   | Suite 1500
3 | San Francisco, California 94111
   | Telephone:   (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530 |
| Plaintiff, | |
| v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | **ORDER DENYING MGA'S MOTION TO COMPEL DISCOVERY AS TO ISSUES AS TO WHICH MATTEL HAS PURPORTEDLY WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BY CLAIM ASSERTION** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On January 18, 2008, MGA Entertainment, Inc., ("MGA") submitted a "Motion to Compel Discovery as to Issues as to Which Mattel has Waived the Attorney-Client and Work Product Privileges by Claims Assertion." At issue is whether, under the standards set forth in

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1   Hearn v. Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), Mattel has impliedly waived the

2   attorney-client privilege and work product doctrine concerning what it knew or had reason to

3   suspect, prior to November 2003, regarding (a) Carter Bryant's involvement in Bratz, (b) his

4   alleged breach of contract, (c) his work for MGA, and/or (d) Mattel's alleged ownership of Bratz.

5   On January 31, 2008, Mattel, Inc. ("Mattel") submitted an opposition, and on February 5, 2008,

6   Mattel submitted a reply.  On April 7, 2008, MGA submitted a twenty-one page supplemental

7   memorandum of points and authorities, the declaration of Lance Etcheverry and the second

8   supplemental declaration of Marcus Mumford.  On April 11, 2008, Mattel submitted the

9   declaration of Dylan Proctor.  The matter was heard on April 11, 2008.

## II. BACKGROUND

In July of 2007, Mattel filed counterclaims alleging, inter alia, that it was the "true owner

of Bratz" pursuant to agreements it had with Carter Bryant ("Bryant"), and that Bryant

"conceived, created or reduced to practice" Bratz designs and worked for MGA while employed

at Mattel.  Mumford Decl., Ex. 1, Second Amended Counterclaim, ¶¶23-27, 29, 34.  Mattel

alleged that "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel

to suspect or to know that it was the true owner of Bratz . . . .  includ[ing] . . . the fact that Bryant

conceived, created, designed and developed Bratz while employed by Mattel, . . . the fact that

Bryant worked with and assisted MGA during the time Bryant was employed by Mattel, . . . [and]

concealing Bryant's role in Bratz."  Id. at ¶35.  Further, Mattel alleged that:

> [b]ecause of Bryant's and MGA's acts of concealment. . . Mattel had no reason to
> suspect that Bryant had worked with MGA, or assisted MGA, while he [sic] still
> employed by Mattel until approximately November 24, 2003, when Mattel
> received, through an unrelated legal action, a copy of Bryant's agreement with
> MGA, which showed that the date of Bryant's agreement with MGA predated
> Bryant's departure from Mattel.  It was then, as a result, that Mattel learned for the
> first time that Bryant had secretly aided, assisted and worked for and with MGA .
> . . in violation of his Mattel Employment Agreement.

Id. at ¶¶35-36.  Based on the above, Mattel asserted numerous claims against MGA and Bryant,

including, inter alia, copyright infringement, civil RICO violations, conspiracy to violate RICO,

breach of contract, intentional interference with contract, breach of fiduciary duty, aiding and

abetting breach of fiduciary duty, breach of duty of loyalty, aiding and abetting breach of duty of

loyalty, conversion, unfair competition, and declaratory relief.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

Case 2:04-cv-09049-DOC-RNB   Document 3559   Filed 05/09/08   Page 7 of 57   Page ID
#:61938
Case 2:04-cv-09049-SGL-RNB      Document 3284      Filed 04/25/2008      Page 3 of 12

1       MGA and Bryant denied the allegations in Mattel's counterclaims and pleaded several

2   affirmative defenses, including statute of limitations and laches. MGA and Bryant sought and

3   received discovery relating to these two defenses. More specifically, MGA and Bryant obtained

4   interrogatory responses, documents, admissions, and deposition testimony directed to when, in

5   fact, Mattel first had reason to suspect Bryant's involvement in Bratz, his alleged breach of

6   contract, his work for MGA, and Mattel's alleged true ownership of Bratz.

7       In response to an interrogatory, Mattel provided the following information relating to

8   when and how Mattel first learned that Bryant performed work for MGA:

9           To Mattel's knowledge, Bryant was first confirmed as the Bratz designer in the
    July 18, 2003 *Wall Street Journal* article, in which Isaac Larian also indicated that

10          Bryant had been involved in some manner with MGA in or about "late 1999."

11          Subsequently, in November 2003, Mattel obtained a copy of a contract between
    defendant Carter Bryant and defendant MGA . . . . Through this agreement,

12          Mattel concluded that Bryant . . . worked as a designer for a Mattel competitor,
    MGA.

13

14  Mumford Decl., Ex. 17. Mattel later supplemented its response to state: "[a]fter Bryant left

15  Mattel, but prior to the July 18, 2003 [*Wall Street Journal*] article, there was rumor and innuendo

16  that Bryant may be working with MGA on Bratz." Id., Ex. 3. Mattel's supplemental interrogatory

17  response also includes an assertion that Bryant used several Mattel employees to work on the

18  Bratz dolls so that the Bratz dolls "had been designed and were far along in development during

    the time that Bryant was employed by Mattel." Id., Ex. 4.

19      In the instant motion, MGA contends that Mattel has impliedly waived the attorney-client

20  and work product privileges concerning what Mattel knew or had reason to suspect, prior to

21  November 2003, regarding (a) Bryant's involvement in Bratz, (b) his alleged breach of contract,

22  (c) his work for MGA, and/or (d) Mattel's alleged true ownership of Bratz. MGA reasons that in

23  order to avoid the statute of limitations and laches doctrine, Mattel affirmatively injected into this

24  litigation the issue of what it knew or had reason to suspect prior to November 2003 regarding

25  these subjects, and that Mattel has denied MGA access to information vital to its defenses by

26  asserting the attorney-client privilege and work product doctrine. MGA contends that fairness

27  dictates that MGA be given access to all evidence that might show what Mattel knew or had

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                               3

Case 2:04-cv-09049-DOC-RNB   Document 3559   Filed 05/09/08   Page 8 of 57   Page ID
#:61939
Case 2:04-cv-09049-SGL-RNB      Document 3284      Filed 04/25/2008      Page 4 of 12

1  reason to suspect concerning these subjects, including attorney-client communications and work

2  product. MGA further contends that, based upon the discovery it has received to date, there is

3  good reason to believe that at least as early as the summer of 2001, when Bratz was first released,

4  Mattel suspected or had reason to suspect that Bryant was involved in Bratz and that he also

5  worked for MGA while a Mattel employee. See MGA's Motion at pp. 2-5. MGA seeks an order

6  (1) finding that Mattel has waived the attorney-client privilege and work product doctrine

7  concerning what Mattel knew or had reason to suspect prior to November 2003 regarding Bryant's

8  involvement in Bratz, his alleged breach of contract, his work for MGA, and/or Mattel's alleged

9  true ownership of Bratz, and (2) compelling Mattel to supplement its pertinent discovery

10  responses and document productions accordingly.

11        Mattel contends that there is no basis for finding a waiver because Mattel has not

12  affirmatively placed its privileged communications at issue. Mattel draws a clear distinction

13  between pleading fraudulent concealment and relying on privileged information to support that

14  pleading. Mattel contends that under Ninth Circuit precedent, merely pleading fraudulent

15  concealment does not place privileged information at issue, and therefore cannot support a finding

16  of waiver. Mattel reasons that if this were the rule, the privilege would be waived any time a

17  party asserts fraudulent concealment simply because privileged information may be probative of

   what a party knew.

18        In Mattel's view, the Ninth Circuit has only found that a party affirmatively put privileged

19  information at issue in two situations: (1) where a party relies on privileged information to

20  support a claim or defense, and (2) where the only evidence available to assess the truthfulness of

21  a party's claim or defense consists of privileged information. Mattel contends neither situation is

22  present here. Mattel contends that it has not relied upon any privileged information to support its

23  fraudulent concealment allegation, and that the evidence related to its fraudulent concealment

24  allegations is not solely privileged. Mattel also denies shielding any of the facts of when and how

25  it learned that Bryant allegedly worked for MGA while he was employed by Mattel.

26  Furthermore, Mattel contends that in view of the substantial non-privileged information that exists

27  and has been produced, MGA cannot show that Mattel's claims of privilege have denied MGA

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

        4

Case 2:04-cv-09049-DOC-RNB   Document 3559   Filed 05/09/08   Page 9 of 57   Page ID
#:61902
Case 2:04-cv-09049-SGL-RNB      Document 3284      Filed 04/25/2008      Page 5 of 12

1  information critical to its defenses.

2  III. DISCUSSION

3      In <u>Hearn v. Rhay</u>, 68 F.R.D. 574 (E.D. Wash. 1975), the court established a three-part test

4  for determining whether a party has impliedly waived the attorney-client privilege and work

5  product privileges as to subject matter the party has placed at issue.  The <u>Hearn</u> test for finding an

6  implied waiver requires that:

7      (1) assertion of the privilege was a result of some affirmative act, such as filing
       suit, by the asserting party; (2) through this affirmative act, the asserting party put
       the protected information at issue by making it relevant to the case; and (3)
8      application of the privilege would have denied the opposing party access to
       information vital to his defense.

9
10  <u>Hearn</u>, 68 F.R.D. at 581, <u>see also</u> <u>Home Indem. Co v. Lane Powell Moss and Miller</u>, 43 F.3d

11  1322, 1326 (9th Cir. 1995) (adopting the <u>Hearn</u> test in the Ninth Circuit); <u>United States v. Amlani</u>,

12  169 F.3d 1189, 1195 (9th Cir. 1999).  In the instant case, the second and third element of the

13  <u>Hearn</u> test are not satisfied, and therefore a finding of implied waiver is unwarranted.

14      Because the parties dispute the meaning of the second element of the <u>Hearn</u> test, the facts

15  in <u>Hearn</u> require careful scrutiny.  In <u>Hearn</u>, an inmate brought a civil rights action against prison

16  officials complaining of his confinement at a state penitentiary and sought discovery of

17  information to negate the defense that the prison officials acted in good faith and were therefore

18  immune from suit for damages.  The <u>Hearn</u> court found that defendants had impliedly waived the

19  attorney-client privilege.  With respect to the second element, the court reasoned that defendants

20  had placed privileged information at issue, "for the legal advice they received is germane to the

21  qualified immunity defense they raised."  <u>Hearn</u>, 68 F.R.D. at 851.  Despite the court's use of the

22  term "germane," it is apparent later in the decision that the court's holding was based upon a

23  finding that the privileged information was more than merely "germane" to the defense raised.

24  The court stated that defendants' communications with their attorney were "inextricably merged

25  with the elements of plaintiff's case and defendants' affirmative defense."  <u>Id</u>. at 582.  The court

26  also emphasized that "[t]hese communications are not incidental to the case; they inhere in the

27  controversy itself, and to deny access to them would preclude the court from a fair and just

28  determination of the issues."  <u>Id</u>.

Case 2:04-cv-09049-SGL-RNB      Document 3284      Filed 04/25/2008      Page 6 of 12

1       Other cases applying <u>Hearn</u> make clear that it is not enough that the privileged

2   information be merely germane or relevant to an issue asserted in the case in order to satisfy the

3   second element of the <u>Hearn</u> test.  See <u>U.S. v. Amlani</u>, 169 F.3d 1189, 1195 (9th Cir. 1999)

4   ("[p]rivileged communications do not become discoverable simply because they are related to

5   issues raised in the litigation").  Rather, courts have found that a party affirmatively puts at issue

6   privileged information when that party relies on privileged communications or work product in

7   support of its claims or defenses.  See <u>e.g.</u> <u>Chevron Corp. v. Pennzoil Co.</u>, 974 F.2d 1156 (9th Cir.

8   1992) (finding implied waiver where defendant asserted advice of counsel defense).

9   Alternatively, courts have found that a party affirmatively puts at issue privileged information

10  when the only evidence available to assess a party's claim or defenses consists of privileged

11  information.  See <u>e.g.</u> <u>U.S. v. Amlani</u>, 169 F.3d 1189, 1195 (9th Cir. 1999) (finding implied

12  waiver where the only evidence of an essential element of plaintiff's attorney disparagement claim

13  was privileged communications); <u>Holmgren v. Sate Farm Mutual Automobile Ins. Co.</u>, 976 F.2d

14  573, 577 (9th Cir. 1992) (in an action for bad faith claim settlement practices, finding implied

15  waiver of work product regarding insurer's counsel's handling of a claim).

16      Indeed, two of the cases cited by MGA in support of waiver were predicated upon a party

17  putting at issue privileged information by relying on such information to defeat a statute of

18  limitations defense.  For example, in <u>In re Imperial Corp. of Amer.</u>, 179 F.R.D. 286 (S.D. Cal.

19  1998), the court found implied waiver where the plaintiff contended that it learned it had a claim

20  for legal malpractice by means of counsel's investigation.  The plaintiff in that case testified "that

21  he relied on his attorney's advice and investigation regarding overcoming [defendant's] statute of

22  limitations defense."  <u>Id.</u> at 288.  Similarly, in <u>Titan Corp. v. M/A-Com, Inc.</u>, 1994 WL

23  16001739, at *1 (S.D. Cal. 1994), the plaintiff indicated in discovery and elsewhere that it had no

24  actual knowledge of any alleged fraud by defendant until an investigation was conducted by its

25  counsel.  The <u>Titan</u> court held that the "plaintiff put the alleged protected information in issue by

26  relying on its counsel's investigation in order to overcome the statute of limitations bar."  <u>Id.</u> at *2.

27      A third case relied upon by MGA, <u>Aloe Vera of America, Inc. v. United States</u>, No. CV

28  99-1794 PHX JAT, 2003 WL 22429082 (D. Ariz. 2003), did not involve direct reliance on

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

Case 2:04-cv-09049-DOC-RNB   Document 3559   Filed 05/09/08   Page 11 of 57   Page ID
#:61942
Case 2:04-cv-09049-SGL-RNB      Document 3284      Filed 04/25/2008      Page 7 of 12

1    privileged information.  In <u>Aloe Vera</u>, the plaintiffs brought suit against the Internal Revenue

2    Service for an allegedly unauthorized disclosure of information to Japan's National Tax Authority

3    ("NTA").  Plaintiffs alleged that they first became aware of the basis of its claim when the

4    government provided information in response to its Freedom of Information Act ("FOIA")

5    complaint demanding release of documents.  Plaintiffs attempted to avoid discovery of privileged

6    documents relating to the "date of discovery" issue by arguing that their Second Amended

7    Complaint made no affirmative reference to their attorneys' investigations as to the accrual of a

8    cause of action.  The court rejected plaintiffs' argument because the evidence in the record

9    demonstrated, among other things, that plaintiffs' retained counsel filed the FOIA request,

10   received a partial response to their FOIA request, and wrote a letter to the IRS stating that IRS

11   conclusions were erroneous and that these conclusions were communicated to the NTA.  The

12   court also noted that plaintiffs claimed in their Second Amended Complaint that several years

13   before suit was filed, their "representatives" (whom the court suspected were plaintiffs' attorneys)

14   were threatened by an NTA official with a press leak to coerce Plaintiffs into accepting their audit

15   proposal.  Therefore, the court concluded that plaintiffs' attorneys' involvement in plaintiffs'

     alleged date of discovery had been placed "at issue" in the case.[1]

16          In the instant case, Mattel has not affirmatively put at issue privileged information in

17   support of its claim or defense.  Mattel's complaint does not refer directly or indirectly to any

18   attorney investigation or attorney involvement in Mattel's alleged discovery of the basis of its

19   claims.  Nor has Mattel alleged that it learned the basis of its claims by means of privileged

20   attorney-client communications or work product.  Mattel's discovery responses also make clear

21   that Mattel is not relying on any privileged information to support its allegations of fraudulent

22   concealment.  Instead, Mattel has disclosed that it first learned of the basis of its claims when it

23   received a copy of Bryant's agreement with MGA in unrelated litigation.  Therefore, the second

24   element of the <u>Hearn</u> test has not been satisfied.

25

26

27        [1] This court declines to follow <u>Rambus Inc. v. Samsung Electronics Co., Ltd.,</u> 2007 WL 344376 (N.D. Cal.
     Nov. 3, 2007), as it appears to be inconsistent with the cases discussed immediately above.

28

1    Furthermore, the third element of the Hearn test is clearly dispositive in this case because

2    MGA cannot show that application of the privilege would deny it access to information "vital" to

3    its defense. Courts applying Hearn in the Ninth Circuit and elsewhere have construed "vital" to

4    mean that the information sought is not available from other sources. See Amlani, 169 F.3d at

5    1195 ("When the sought-after evidence is "only 'one of several forms of indirect evidence' about

6    an issue," the privilege has not been waived.") (citing Hamilton v. Lumsden (In re Geothermal

7    Resources Int'l, Inc.), 93 F.3d 648, 653 (9th Cir. 1996); see also 1st Sec. Bank of Wash. v. Eriksen,

8    2007 WL 188881, at *3 (W.D. Wash 2007) ("[u]nder Hearn, the information sought must be

9    'vital' to defendants' case, meaning that the information is available from no other source").

10       In the instant case, there are many other means of proof available to MGA to support its

11   statute of limitations and laches defenses. Mattel has produced hundreds of pages of non-

12   privileged documents regarding its investigations relating to Bryant and/or MGA, including the

13   2002 investigations regarding the "anonymous letter" and potential copyright infringement of

14   Mattel's Toon Teens. In addition, MGA took the deposition of Richard De Anda, Mattel's head of

15   security, who testified regarding how and when Mattel first investigated Bryant and MGA. Mr.

16   De Anda confirmed that he had not even heard of MGA, Bryant or Bratz before March 2002.

17   Mattel has also provided interrogatory responses explaining its investigations of Bryant and

18   MGA, and how and when it first learned of Bryant's allegedly wrongful conduct that forms the

19   basis for Mattel's claims. Significantly, Mattel provided the following information:

20          Mattel conducted an investigation in Spring 2002 based on allegations that
            Bryant may have plagiarized "Toon Teens" and created Bratz dolls for MGA, and
21          later in August 2002 based on an anonymous letter sent to Mattel. The letter's
            author (whoever it was) offered no evidence for his or her allegations. The
22          potential claims investigated in 2002 have not been asserted in this case. In
            March 2002, Mattel investigated allegations of possible copyright infringement of
23          "Toon Teens" designs, not whether Mr. Bryant created Bratz or worked with
            MGA during his Mattel employment. The potential claims investigated in 2002
24          did not give Mattel any knowledge, or even reason to believe, that Bryant worked
            for MGA and/or conceived of Bratz while a Mattel employee.

25          Subsequently, on November 24, 2003, Mattel obtained a copy of a
26          contract between defendant Carter Bryant and defendant MGA. That contract –
            which Bryant and MGA had entered into while Bryant was employed by Mattel –
27          required Bryant to provide design services to MGA on a "top priority" basis, in
            conflict with his then-existing obligations to Mattel. It also purported to grant
28          MGA ownership of works produced by Bryant both before and after the
            agreement's effective date, in further contravention of his obligations to Mattel.

1        Through this agreement, Mattel first determined that it was likely that Bryant
2        worked as a designer for a Mattel competitor, MGA, while being employed and
         paid by Mattel for his exclusive services as a designer.

3    Supp. Responses to MGA's First Set of Interrogatories at p. 13, attached as Ex. 3 to Mumford

4    Decl. MGA has also had the opportunity to question Mattel's in-house lawyer, Michael Moore,

5    during an evidentiary hearing conducted by the district court.

6        In addition, MGA recently took the deposition of Mattel's 30(b)(6) designee on several

7    topics relevant to MGA's defenses, including all acts, omissions, circumstances and/or evidence

8    showing, or tending to show (1) when Mattel first became aware of any alleged wrongful conduct

9    of Bryant, (2) the manner and mode by which Mattel first became aware of any alleged wrongful

10   conduct of Bryant, (3) when Mattel first became aware that Bryant was involved in the

11   conception, creation, design and/or reduction to practice of Bratz, (4) how Mattel first became

12   aware that Bryant was involved in the conception, creation, design and/or reduction to practice of

13   Bratz, and (5) all actions taken by Mattel, including but not limited to all circumstances

14   surrounding any investigations Mattel has undertaken, relating to Bratz after Mattel learned that

     Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

15       MGA contends, however, that Mattel "deliberately under-prepared the 30(b)(6) witness on

16   statute of limitations and laches topics so that she would testify that nothing Mattel's Legal

17   Department or Security Department investigated prior to November 2003 could possibly have put

18   the company on notice of the facts underlying its claims in this litigation." MGA's Supplemental

19   Submission at p.1. MGA contends further that "[b]ecause the witness was shielded during her

20   preparation from critical facts that might show otherwise, it was tantamount to Mattel making a

21   privilege assertion before-the-fact rather than at the deposition itself." Id. at pp. 1-2. In

22   particular, MGA contends that the witness was not given access to Mattel's Legal Department's

23   file or redacted portions of Mattel's Security Department's files, or spoke to anyone about those

24   files, to ascertain what underlying facts had been disclosed or uncovered by Mattel in any of its

25   pre-November 2003 investigations. Id. at p.2.

26       A review of the deposition transcript, however, reveals that Mattel's 30(b)(6) witness

27   provided substantial testimony relevant to MGA's defense. Over the course of a ten hour day,

28

1  Mattel's corporate designee gave over three hundred pages of testimony and freely answered all
2  but a handful of questions posed to her on this subject. The transcript shows that the witness fully
3  cooperated and gave responses to the best of her ability. Mattel's counsel did not obstruct MGA's
4  questioning of the witness. Nor did Mattel's counsel object to any questions based upon the
5  attorney-client privilege. The witness provided significant factual evidence related to how and
6  when Mattel first learned that Bryant was working for MGA while he was employed by Mattel.
7  Indeed, MGA has not pointed to any significant deficiencies in the witness' preparedness, other
8  than the witness' lack of knowledge concerning the contents of Mattel's Legal Department files
9  and Security Department investigation files. It is unclear, however, whether the witness' failure to
10 review the contents of Mattel's Legal Department and Security Department files materially
11 affected MGA's ability to obtain full and complete testimony because the witness was
12 knowledgeable about the scope of investigations conducted by both departments. In any event,
13 MGA's remedy lies in resumption of the deposition, and not the expansive subject matter waiver
   of privileged information MGA now seeks.
14       MGA next contends that the privileged information it seeks is vital because Mattel, in an
15 effort to defeat MGA's summary judgment motion, submitted the declaration of its in-house
16 counsel, Michael Moore, attesting that "Mattel knew nothing that could remotely put it on notice
17 of the facts underlying this lawsuit until November 24, 2003." MGA's Supp. Submission at p.2,
18 Second Supp. Mumford Decl., Ex. 2. Although Mattel's recent submission might arguably affect
19 the analysis under the second element of the Hearn test, it does not change the analysis under the
20 third prong. As previously discussed, Mattel has already produced substantial evidence related to
21 MGA's statute of limitations and laches defenses. MGA has not been denied factual evidence
22 related to how and when Mattel first learned that Bryant was working for MGA while he was
23 employed by Mattel. Therefore, the confidential information MGA now seeks is not "vital" to its
24 defense.

### IV. CONCLUSION

25       For the reasons set forth above, MGA's motion to compel discovery of information
26 protected by the attorney-client privilege and work product immunity based on waiver by claim

Case 2:04-cv-09049-DOC-RNB   Document 3559   Filed 05/09/08   Page 15 of 57   Page ID
#:61946
Case 2:04-cv-09049-SGL-RNB   Document 3284   Filed 04/25/2008   Page 11 of 12

1   assertion is DENIED.

2        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3   Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5   Dated: April 25, 2008                         /s/
                                    _____
6                                   HON. EDWARD A. INFANTE (Ret.)
                                         Discovery Master
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                           11

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 25, 2008, I served the attached ORDER DENYING MGA'S MOTION TO COMPEL DISCOVERY AS TO ISSUES AS TO WHICH MATTEL HAS PURPORTEDLY WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BY CLAIM ASSERTION in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tImalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 25, 2008, at San Francisco, California.

_____
Sandra Chan

# Exhibit 2

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
     Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)
   |                               | Consolidated with
12 |         Plaintiff,            | Case Nos. CV 04-09059 & CV 05-2727
13 |    vs.                        | **DISCOVERY MATTER**
14 | MATTEL, INC., a Delaware      | **[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]**
15 | corporation,                  |
16 |         Defendant.            | MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL DISCOVERY AS TO ISSUES AS TO
17 |                               | WHICH MATTEL HAS PURPORTEDLY WAIVED THE ATTORNEY-CLIENT
18 | AND CONSOLIDATED ACTIONS      | AND WORK PRODUCT PRIVILEGES BY CLAIM ASSERTION
19 |                               |
20 |                               | [Notice of Lodging and Declaration of Michael T. Zeller filed concurrently]
21 |                               |
22 |                               | Date:    February 11, 2008
   |                               | Time:    8:30 a.m.
23 |                               | Place:  Telephonic

24                                  **Phase 1**
                                    Discovery Cut-Off:        January 28, 2008
25                                  Pre-Trial Conference:  May 5, 2008
                                    Trial Date:                  May 27, 2008

26

27

28

07209/2373650.1

1-31

# **TABLE OF CONTENTS**

                                                                               **Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT.......................................................................................................... 2

I.     MATTEL HAS NOT IMPLIEDLY WAIVED THE ATTORNEY-
        CLIENT PRIVILEGE ................................................................................... 2

     A.    Mattel Has Not Affirmatively Put Privileged Communications At
            Issue ................................................................................................. 3

     B.    Application of the Privilege Would Not Deny MGA Access to
            Information Vital to Its Defense ................................................... 8

II.    IF THERE WERE AN IMPLIED WAIVER, THE SCOPE MUST BE
       LIMITED................................................................................................... 14

III.   MGA IS NOT ENTITLED TO ADDITIONAL RESPONSES TO THE
       DISCOVERY IT HAS IDENTIFIED ....................................................... 16

IV.   THE DISCOVERY MASTER HAS ALREADY RULED THAT
       WITHHELD DOCUMENTS RELATED TO MATTEL'S 2002
       INVESTIGATIONS ARE PRIVILEGED ....................................... 21

CONCLUSION.................................................................................................... 24

07209/2373650.1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

1st Sec. Bank of Wash. v. Eriksen,
  2007 WL 188881 (W.D. Wash. 2007) ................................................................ 9

Beverly Health & Rehabilitation Services, Inc.,
  2006 WL 3593472 (E.D. Cal. 2006) ............................................................... 24

Bittaker v. Woodford,
  331 F.3d 715 (9th Cir. 2003) ................................................................. 4, 14

Bordallo v. Reyes,
  763 F.2d 1098 (9th Cir. 1985) .................................................................. 23

Chamberlain Group v. Interlogix, Inc.,
  2002 WL 467153 (N.D. Ill. 2002) ................................................................ 3

Chevron Corp. v. Pennzoil Co.,
  974 F.2d 1156 (9th Cir. 1992) ................................................................... 4

Frontier Refining Inc. v. Gorman-Rupp Co., Inc.,
  136 F.3d 695 (10th Cir.1998) ................................................................... 9

Garamendi v. SDI Vendome S.A.,
  276 F. Supp. 2d 1030 (C.D. Cal. 2003) ........................................................ 15

In re Geothermal Resources Int'l, Inc.,
  93 F.3d 648 (9th Cir.1996) ...................................................................... 8

Hearn v. Rhay,
  68 F.R.D. 574 (E.D. Wash. 1975) ............................................... 2, 3, 4, 6, 7, 8, 9

Hobson v. Wilson,
  737 F.2d 1 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084 (1985) ......................... 15

Holmgren v. State Farm Mutual Automobile Ins. Co.,
  976 F.2d 573 (9th Cir. 1992) ..................................................................... 4

Home Indemnity Co. v. Lane Powell Moss and Miller,
  43 F.3d 1322 (9th Cir. 1995) ..................................................................... 4

In re Imperial Corp. of Am.,
  179 F.R.D. 286 (S.D. Cal. 1998) ................................................................. 6

In re Intuit Privacy Litigation,
  138 F. Supp. 2d 1272 (C.D. Cal. 2001) ......................................................... 24

Moreno v. Harrison,
  2006 WL 2411421 (N.D. Cal. 2006) ............................................................... 6

-ii-

Motorola, Inc. v. J.B. Rodgers Mechanical Contractors,
  215 F.R.D. 581 (D. Ariz. 2003)..................................................................23

Novell, Inc. v. Unicom Sales, Inc.,
  2004 WL 1839117 (N.D. Cal. 2004)..........................................................14

Public Services Co. of N.M. v. Lyons,
  129 N.M. 487, 10 P.3d 166 (N.M. Ct. App. 2000) ....................................7

Rambus Inc. v. Samsung Electronics Co., Ltd.,
  2007 WL 3444376 (N.D. Cal. Nov. 13, 2007)............................................6

Reavis v. Metropolitan Property & Liability Ins. Co.,
  117 F.R.D. 160 (S.D. Cal. 1987)................................................................4

Remington Arms Co. v. Liberty Mutual Ins. Co.,
  142 F.R.D. 408 (D. Del. 1992)..................................................................7

Roley v. New World Pictures, Ltd.,
  19 F.3d 479 (9th Cir. 1994) ......................................................................14

Titan Corp. v. M/A-Com, Inc.,
  1994 WL 16001739 (S.D. Cal. 1994) ........................................................6

U.S. v. Amlani,
  169 F.3d 1189 (9th Cir. 1999)............................................2, 3, 4, 5, 8, 9

Watanabe v. Home Depot USA, Inc.,
  2003 WL 24272634 (C.D. Cal. 2003) ......................................................23

Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.,
  106 F.3d 894 (9th Cir. 1997)....................................................................14

Wood v. Midland Credit Management, Inc.,
  2005 WL 3159637 (C.D. Cal. 2005) ........................................................23

**Statutes**

Rule 30(b)(6) ...........................................................................................12, 17

Local Rule 7-18 ...........................................................................................23

**Other Authorities**

Epstein, The Attorney Client Privilege and the Work Product Doctrine
  (5th ed. 2007)..............................................................................................5

MATTEL'S OPPOSITION TO MGA'S MOTION TO COMPEL RE PRIVILEGE WAIVER BY CLAIM ASSERTION

07209/2373650.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

More than a month ago MGA filed a motion seeking a finding that Mattel has impliedly waived the protections of the attorney-client privilege and work product doctrine. As Mattel detailed in its opposition to that motion, MGA's arguments were contrary to the facts and controlling law. In an effort to correct the fatal flaws in its argument, MGA has submitted a new, revised motion seeking a finding of waiver of the privilege. But MGA's second verse is just like the first.

Mattel has not waived the privilege. Under Ninth Circuit law, waiver requires that a party affirmatively place its privileged communications at issue. The Ninth Circuit has found implied waiver *only* where a party (1) relies on privileged information in support of its claims or defenses, or (2) asserts a claim or defense for which the *only* possible evidence available to assess the truthfulness of the claim or defense is privileged information. Neither is true here. Mattel does not rely on privileged information in support of its fraudulent concealment allegations, and substantial non-privileged information exists -- and has been produced -- to assess those allegations. Even now, with attempt number two, MGA is unable to cite to any Ninth Circuit or other Court of Appeals decision that has ever held the privilege to be waived in such circumstances.

The one unpublished district court opinion MGA principally relies on is inconsistent with Ninth Circuit law. Under MGA's overbroad interpretation of implied waiver, the privilege is waived any time a party asserts fraudulent concealment simply because privileged information may be probative of what a party knew. That is not the law in the Ninth Circuit. That privileged communications may be relevant -- the most MGA attempts to show here -- is insufficient to support a waiver.

Further, MGA cannot show that application of the privilege would deny it information critical to its defenses as is required for a finding of implied waiver.

1  In fact, Mattel has produced substantial information -- including responses to
2  interrogatories, documents and testimony -- related to MGA's laches and statute of
3  limitations defenses.  Mattel has not shielded the facts of when and how it learned
4  that Bryant worked for MGA while he was employed by Mattel.

5         Last, to the extent MGA's motion seeks production of privileged
6  documents related to certain investigations undertaken by Mattel in 2002, it is a
7  repeat of a motion that MGA made on April 10, 2007.  At that time, the Discovery
8  Master ruled the documents were privileged and that the privilege had not been
9  waived.  MGA did not move to reconsider that ruling and here fails to make any of
10 the requisite showings to justify reconsideration.  Indeed, despite the fact that Mattel
11 raised the issue in its opposition to MGA's first motion, MGA still simply ignores
12 the Discovery Master's prior ruling all together.

13        MGA's motion should be denied.

14                            **Argument**

15 **I.   MATTEL HAS NOT IMPLIEDLY WAIVED THE ATTORNEY-**
16 **      CLIENT PRIVILEGE**

17        As MGA acknowledges, the Ninth Circuit has adopted the three-
18 pronged test for implied waiver that was first outlined in Hearn v. Rhay, 68 F.R.D.
19 574, 581 (E.D. Wash. 1975): "First, the court considers whether the party is
20 asserting the privilege as the result of some affirmative act, such as filing suit.
21 Second, the court examines whether 'through this affirmative act, the asserting party
22 puts the privileged information at issue.  Finally, the court evaluates whether
23 allowing the privilege would deny the opposing party access to information vital to
24 its defense." U.S. v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (citations and
25 internal quotation marks omitted).

26        Contrary to MGA's suggestions, however, these factors do not aid its
27 case here because the second and third prongs are not satisfied.  The only
28 affirmative act MGA claims satisfies the first prong of the test is Mattel's pleading

-2-

MATTEL'S OPPOSITION TO MGA'S MOTION TO COMPEL RE PRIVILEGE WAIVER BY CLAIM ASSERTION

1   fraudulent concealment to toll the statute of limitations.[1]  But pleading fraudulent
2   concealment does not place privileged information at issue.  Moreover, application
3   of the privilege does not deny MGA access to information vital to its defense
4   because Mattel has already produced the underlying evidence related to MGA's
5   defenses.

6       **A.    <u>Mattel Has Not Affirmatively Put Privileged Communications At</u>**
7             **<u>Issue</u>**
8             In its original motion, MGA argued that attorney-client
9   communications regarding what Mattel "knew or had reason to suspect prior to
10  November 2003" are "*relevant* to the determination of . . . MGA's statute of
11  limitations and laches defense."[2]  Therefore, MGA concluded, "fairness requires that
12  [MGA] be given access to those communications to dispute Mattel's allegations."[3]
13  As Mattel noted in its opposition, Ninth Circuit law is clear that *relevance* is not the
14  standard for waiver of the attorney client privilege.  See <u>Amlani</u>, 169 F.3d at 1195
15  ("[p]rivileged communications do not become discoverable simply because they are
16  related to issues raised in the litigation"); <u>see also</u> <u>Chamberlain Group v. Interlogix,</u>
17  <u>Inc.</u>, 2002 WL 467153, at *2 (N.D. Ill. 2002) (finding no waiver where defendant
18  asserted statute of limitations defense despite fact that communications with
19  attorney were "relevant" to defense).

20            Apparently in recognition that relevance alone cannot satisfy the
21  second prong of the <u>Hearn</u> test, MGA now studiously avoids arguing that it is
22  entitled to privilege communications because they may be relevant to Mattel's
23  fraudulent concealment allegations.  Instead, MGA makes the even more incredible
24  assertion that simply pleading fraudulent concealment automatically satisfies both
25
26  _____
27  [1]  MGA's Motion, at p. 16.
    [2]  MGA's Original Motion, at p. 1 (emphasis added).
28  [3]  <u>Id.</u>

1   the first and second prongs of the Hearn test.[4]  Yet MGA provides no explanation

2   why that is so beyond the potential relevance of privileged information to an

3   allegation of fraudulent concealment.

4         Contrary to MGA's assertions, waiver requires that a party *affirmatively*

5   *put at issue* privileged information in support of its claim or defense.  The Ninth

6   Circuit has only found that a party affirmatively put at issue privileged information

7   in two situations: (1) when a party *relies on privileged communications* or work

8   product in support of its claims or defenses, see, e.g., Chevron Corp. v. Pennzoil

9   Co., 974 F.2d 1156 (9th Cir. 1992) (finding implied waiver where defendant

10  asserted an advice of counsel defense); and (2) when the *only* evidence available to

11  assess a party's claim or defense consists of attorney-client communications or work

12  product.  See, e.g., Amlani, 169 F.3d at 1191 (finding implied waiver where the only

13  evidence of an essential element of plaintiff's attorney disparagement claim -- the

14  reason the plaintiff fired his attorney -- was privileged communications); Holmgren

15  v. State Farm Mutual Automobile Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992)

16  (finding implied waiver of attorney work product regarding an insurer's counsel's

17  handling of a claim in a cause of action for bad faith claim settlement practices

18  because "[i]n a bad faith insurance claim settlement case, the 'strategy, mental

19  impressions and opinion of [the insurer's] agents concerning the handling of the

20  claim are directly at issue.'") (quoting Reavis v. Metropolitan Property & Liability

21  Ins. Co., 117 F.R.D. 160, 164 (S.D. Cal. 1987)).[5]

22

23

---

24  [4]  MGA's Motion, at p. 18.

25  [5]  In the other Ninth Circuit implied waiver cases cited by MGA, the Ninth
    Circuit *declined* to find implied waiver.  See, e.g., Bittaker v. Woodford, 331 F.3d

26  715 (9th Cir. 2003) (discussing, but declining to find, implied waiver in the context
    of a claim of ineffective assistance of counsel); Home Indemnity Co. v. Lane Powell

27  Moss and Miller, 43 F.3d 1322 (9th Cir. 1995) (discussing, but declining to find,

28  implied waiver in the context of a claim of legal malpractice).

MATTEL'S OPPOSITION TO MGA'S MOTION TO COMPEL RE PRIVILEGE WAIVER BY CLAIM ASSERTION

Neither situation is present here. MGA does not and cannot point to any privileged information that Mattel relies on in support of its allegations of fraudulent concealment. Mattel has not relied on privileged information. And the evidence related to Mattel's fraudulent concealment allegations is not solely privileged information. To the contrary, substantial non-privileged evidence bearing on these allegations exists and has been produced to MGA. That stands in contrast to the situation presented in Amlani. In Amlani, the Court only found waiver after concluding that non-privileged sources of evidence related to plaintiff's attorney disparagement claim "would be of little, if any, value." Amlani, 169 F.3d at 1196 (finding that the only evidence available to establish why plaintiff terminated his attorney -- a fact essential to plaintiff's attorney disparagement claim -- was plaintiff's communications with his attorneys).

Instead of showing reliance on privileged communications or that the only evidence is privileged, as the law requires, MGA argues that simply alleging fraudulent concealment necessarily waives the privilege because any time a party alleges fraudulent concealment, what its attorneys knew and when they knew it is relevant.[6] Such a rule is contrary to Ninth Circuit law regarding implied waiver. If MGA's position were accepted, the privilege would be waived whenever privileged information is relevant to a claim or defense.

As one of the treatises on which MGA relies itself notes, "[t]he better reasoned cases eschew any broad reading of waiver based on merely raising the defense of laches or equitable estoppel. *Actual reliance on the opinion of counsel* to prove the defense should be required." Epstein, The Attorney Client Privilege and the Work Product Doctrine (5th ed. 2007), at 545 (emphasis added). Here, MGA has not shown that Mattel is relying on the opinion of its counsel in support of its assertion of fraudulent concealment. That is because Mattel is not.

---

[6]  MGA's Motion, at pp. 18, 22.

1    As it did in its original motion, MGA principally relies on an

2   unpublished district court decision, Rambus Inc. v. Samsung Electronics Co., Ltd.,

3   2007 WL 3444376 (N.D. Cal. Nov. 13, 2007).[7] The Rambus court failed to properly

4   apply the second prong of Hearn.  It concluded that the second prong was satisfied

5   simply because attorney-client communications might be relevant to Samsung's

6   claim of fraudulent concealment.  Id. at *4.  MGA's conclusory assertion that

7   "Rambus does not hold that the second prong of Hearn is satisfied by mere

8   relevance of the information sought"[8] is directly at odds with the plain language of

9   the Rambus opinion: "Because Samsung's subjective knowledge regarding

10   Steinberg's work for Rambus is relevant to both its discovery rule and equitable

11   tolling defenses to the statute of limitations, *the protected information is relevant to*

12   *this case and satisfies the second prong of the Hearn test*." Rambus Inc., 2007 WL

13   3444376, at *4.  As shown above, any conclusion that relevance alone is sufficient

14   to find implied waiver is not supported by Ninth Circuit law.  See generally Moreno

15   v. Harrison, 2006 WL 2411421, at *3 n.4 (N.D. Cal. 2006) (district court has no

16   authority to disregard Ninth Circuit precedent).

17    In the other district court cases cited by MGA, the courts likewise

18   required that privileged information not merely be *relevant to* the claim of

19   fraudulent concealment, but that it actually be *relied on* by the party asserting the

20   claim.  For example, in In re Imperial Corp. of Am., 179 F.R.D. 286 (S.D. Cal.

21   1998), the court found implied waiver where the plaintiff contended that it learned it

22   had a claim for legal malpractice by means of counsel's investigation.  MGA claims

23   that the plaintiff in Imperial did not make direct use of privileged material.  Not so.

24   The plaintiff in that case testified "that he *relied on* his attorneys' advice and

25   investigation regarding . . . overcoming [defendant's] statute of limitations defense."

26   Id. at 288 (emphasis added).  Similarly, in Titan Corp. v. M/A-Com, Inc., 1994 WL

27

28
_____
[7]    Id. at pp. 1, 18-20.

1  16001739, at *2 (S.D. Cal. 1994) (emphasis added), the court held that the "plaintiff

2  put the allegedly protected information in issue by *relying on* its counsel's

3  investigation in order to overcome the statute of limitations bar."

4      MGA trumpets the analysis of a New Mexico state appellate court to

5  support its argument that <u>Hearn</u> does not require a party to affirmatively rely on

6  privileged communications to put at issue the privilege.[9]  The New Mexico state

7  court's analysis is simply wrong.  In fact, federal courts have been critical of the

8  expansive application of the <u>Hearn</u> test by some district courts.  <u>See, e.g.,</u>

9  <u>Remington Arms Co. v. Liberty Mutual Ins. Co.</u>, 142 F.R.D. 408, 413-415 (D. Del.

10  1992) (analyzing <u>Hearn</u> and subsequent cases and noting that some courts have

11  improperly understood <u>Hearn</u> to "mean that the important protected information is

12  'at issue' and 'vital' whenever it contains information relevant to the case").

13      Mattel has never claimed that it learned the basis of its claims by means

14  of privileged attorney-client communications or work product.  Mattel has disclosed

15  that it first learned of the wrongful conduct that is the basis of Mattel's claims when

16  it received a copy of Bryant's agreement with MGA in unrelated litigation.[10]  That

17

18

19

20

_____

21  [8]  <u>Id.</u> at p. 20.
   [9]  <u>Id.</u> at pp. 17-18 (discussing <u>Public Services Co. of N.M. v. Lyons</u>, 129 N.M.

22  487, 10 P.3d 166 (N.M. Ct. App. 2000)).
   [10]  <u>See</u> Order Denying Motion for Terminating Sanctions, dated August 27,

23  2007, at p. 3 ("Mattel received in discovery in an unrelated action a copy of a

24  contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed

25  by Bryant and Mattel, thus giving rise to one of the current consolidated actions."), Declaration of B. Dylan Proctor in Support of Mattel's Opposition to MGA's Motion

26  to Compel Regarding Mattel's Privilege Waiver by Claim Assertion, dated

27  December 27, 2007 ("Proctor Dec."), Exh. 6, attached as Exhibit 1 to the concurrently filed Notice of Lodging.

28

1   agreement was not transmitted to Mattel by means of an attorney-client

2   communication or attorney work product.[11]

3   **B.   Application of the Privilege Would Not Deny MGA Access to**

4   **Information Vital to Its Defense**

5        MGA's motion should also be denied because MGA cannot meet the

6   third prong of the Hearn test: it cannot show that application of the privilege would

7   deny it access to information vital to its defense.  MGA makes the conclusory

8   assertion that the third prong of the Hearn test is met because "MGA cannot develop

9   its statute of limitations and laches defenses without information regarding when

10  Mattel first knew or should have known of its purported claims against MGA."[12]

11  Yet Mattel has already produced substantial evidence related to those defenses.

12  MGA has not been denied the factual evidence related to how and when Mattel

13  learned that Bryant was working for MGA while he was employed by Mattel.

14  Mattel's privileged communications are not vital to any defense.

15       Ninth Circuit law is clear that where substantial non-privileged

16  evidence bearing on a defense has been produced there is no waiver of the privilege.

17  See Amlani, 169 F.3d at 1195 ("When the sought-after evidence is 'only 'one of

18  several forms of indirect evidence' about an issue,' the privilege has not been

19  waived.") (citing In re Geothermal Resources Int'l, Inc., 93 F.3d 648, 653 (9th

20  Cir.1996)).  Courts properly applying Amlani recognize that "[u]nder Hearn, the

21

22  [11]   And, to the extent that MGA is seeking to invade privilege with respect to

23  Mattel security investigations, it is not only an improper motion for reconsideration
    as discussed below but goes even further astray on this prong of the Hearn test.

24  Claiming that it is entitled to privileged communications or work product in

25  investigations that *failed* to turn up facts revealing that Bryant worked on Bratz
    while employed by Mattel or that he had aided MGA while employed by Mattel

26  would turn the reliance requirement on its head.  Indeed, there would be no logical

27  stopping point for such an argument, and it would eviscerate the core, beneficial
    purposes of privilege.

28  [12]   MGA's Motion, at p. 22.

1 | information sought must be 'vital' to defendants' case, *meaning that the information*
2 | *is available from no other source.*" See 1st Sec. Bank of Wash. v. Eriksen, 2007
3 | WL 188881, at *3 (W.D. Wash. 2007) (emphasis added) (citing Amlani, 169 F.3d at
4 | 1195 and Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 701-02
5 | (10th Cir.1998)). Despite this unequivocal rule, MGA argues that it is not the test,
6 | stating that it is "contrary to Hearn."[13] MGA is simply wrong. Even in Hearn, the
7 | court expressly noted that "[i]n an ordinary case" the privilege is not waived, even
8 | when privileged information is relevant, because "other means of proof are normally
9 | available." Hearn, 68 F.R.D. at 582.
10 |       Here, "other means of proof" are clearly available to MGA.  Indeed,
11 | MGA devotes pages of its motion to identifying evidence Mattel has *already*
12 | *produced* that it claims rebuts Mattel's allegations that it did not become aware that
13 | Bryant created Bratz while a Mattel employee or worked with MGA while he was a
14 | Mattel employee until November 2003.[14] For example, MGA makes much of
15 | Mattel's 2002 investigation into "'rumor and innuendo that Bryant may be working
16 | with MGA on Bratz,' including whether 'Bryant . . . plagiarized [Mattel product]
17 | 'Toon Teens' and created Bratz dolls for MGA'"[15] and Mattel's August 2002
18 | anonymous letter investigation.[16] Yet MGA *already has* the underlying evidence
19 | bearing on those investigations.  Mattel has produced hundreds of pages of non-
20 | privileged documents regarding its investigations relating to Bryant and/or MGA,
21 |
22 |
23 | [13]   MGA's Motion, at p. 23. MGA also asserts that "[i]n its opposition to
24 | [MGA's first motion], Mattel incorrectly claimed that the test is whether the defense
is 'case dispositive.'" Id.  That is wrong.  It was MGA that argued that it needed
25 | privileged information because its statute of limitations and laches defenses were
potentially case dispositive.  Mattel noted that "the test here is *not* whether a defense
26 | is 'case dispositive.'" Mattel's Original Opposition, at p. 12.
27 | [14]   MGA's Motion, at pp. 2-3, 8-10.
   [15]   Id. at p. 2.
28 | [16]   Id. at p. 3.

-9-

1  including 2002 investigations discussed in MGA's motion.[17]  As the Discovery

2  Master previously found, Mattel has "conducted a reasonable search . . . and has

3  produced all documents related to the March 2002 investigation that are responsive

4  to MGA and Bryant's document requests."[18]

5         To the extent MGA argues that there may be other unproduced

6  information relating to earlier investigations of Bryant or MGA that are pertinent

7  here, MGA's speculation is unfounded.  MGA took the deposition of Richard De

8  Anda, Mattel's head of security.  Mr. De Anda confirmed that he had not even heard

9  of MGA, Bryant or Bratz before March 2002.[19]  Mr. De Anda also testified at length

10 regarding how and when Mattel first investigated Bryant and MGA.[20]  Given that

11 MGA has the *facts* relating to Mattel's investigations, obtaining Mattel's privileged

12 communications and any of counsel's work product is far from "vital" to MGA's

13 defense.

14        Mattel has also provided interrogatory responses explaining in further

15 detail its investigations of Bryant and MGA, and how and when it first learned of

16 Bryant's wrongful conduct that forms the basis for Mattel's claims.  For example,

17 MGA propounded an interrogatory asking Mattel to "[s]tate, with particularity,

18 when and how MATTEL first learned that BRYANT performed work for MGA."

19 Mattel responded by describing in detail when and how it first learned that Bryant

20 worked on Bratz for MGA while he was still employed by Mattel:

21

22

23  [17]  Proctor Dec., ¶ 13, Notice of Lodging, Exh. 1.
    [18]  Order Granting MGA and Bryant's Motion to Compel Production of Certain
24  Documents Withheld Under Claims of Privilege for In Camera Review, and
    Denying Motion to Attest to the Completeness of February 2007 Production, dated
25  May 15, 2007, at p. 6, Proctor Dec., Exh. 2, Notice of Lodging, Exh. 1.
26  [19]  De Anda Depo. Tr. at 166:5-167:9, Proctor Dec., Exh. 7, Notice of Lodging,
    Exh. 1.
27  [20]  See, e.g., De Anda Depo. Tr. at 166:5-177:4, 224:18-227:8, 237:11-258:22,
28  Proctor Dec., Exh. 7, Notice of Lodging, Exh. 1.

Mattel conducted an investigation in Spring 2002 based on allegations that Bryant may have plagiarized 'Toon Teens' and created Bratz dolls for MGA, and later in August 2002 based on an anonymous letter sent to Mattel. The letter's author (whoever it was) offered no evidence for his or her allegations. The potential claims investigated in 2002 have not been asserted in this case. In March 2002, Mattel investigated allegations of possible copyright infringement of "Toon Teens" designs, not whether Mr. Bryant created Bratz or worked with MGA during his Mattel employment. The potential claims investigated in 2002 did not give Mattel any knowledge, or even reason to believe, that Bryant worked for MGA and/or conceived of Bratz while a Mattel employee.

Subsequently, on November 24, 2003, Mattel obtained a copy of a contract between defendant Carter Bryant and defendant MGA. That contract -- which Bryant and MGA had entered into while Bryant was employed by Mattel -- required Bryant to provide design services to MGA on a "top priority" basis, in conflict with his then-existing obligations to Mattel. It also purported to grant MGA ownership of works produced by Bryant both before and after the agreement's effective date, in further contravention of his obligations to Mattel. Through this agreement, Mattel first determined that it was likely that Bryant worked as a designer for a Mattel competitor,

1      MGA, while being employed and paid by Mattel for his

2      exclusive services as a designer.[21]

3           In addition, as agreed by the parties, once a pending motion is resolved,

4   MGA will be obtaining non-privileged testimony on several <u>Rule</u> 30(b)(6)

5   deposition topics related to when Mattel first learned of Bryant's wrongful conduct,

6   including for example:

7           •    All acts, omissions, circumstances and/or evidence showing, or
                 tending to show, when Mattel first became aware of any alleged
8                wrongful conduct of Bryant.[22]

9           •    All acts, omissions, circumstances and/or evidence showing, or
                 tending to show, the manner and mode by which Mattel first
10               became aware of any alleged wrongful conduct of Bryant.[23]

11          •    All acts, omissions, circumstances and/or evidence showing, or
                 tending to show, when You first became aware that Bryant was
12               involved in the conception, creation, design and/or reduction to
                 practice of Bratz.[24]
13
            •    All acts, omissions, circumstances and/or evidence showing, or
14               tending to show, how You first became aware that Bryant was

15

16   _____

17   [21]    Supplemental Responses to MGA's First Set of Interrogatories to Mattel, Inc.,
     at p. 113, attached as Exhibit 3 to the declaration of Marcus R. Mumford ("Mumford
18   Dec.").

19   [22]    <u>See</u> Order Regarding MGA and Carter Bryant's Joint Motion to Overrule
     Mattel's Relevance Objections and Compel Discovery Relevant to Statute of
20   Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of
     Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.
21   15, Mumford Dec., Exh. 12.

22   [23]    <u>See</u> Order Regarding MGA and Carter Bryant's Joint Motion to Overrule
     Mattel's Relevance Objections and Compel Discovery Relevant to Statute of
23   Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of
24   Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.
     16, Mumford Dec., Exh. 12.
25   [24]    <u>See</u> Order Regarding MGA and Carter Bryant's Joint Motion to Overrule
26   Mattel's Relevance Objections and Compel Discovery Relevant to Statute of
     Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of
27   Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.
28   17, Mumford Dec., Exh. 12.

1     involved in the conception, creation, design and/or reduction to practice of Bratz.[25]

2

3     • All acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by You, including but not limited to all circumstances surrounding any investigations you have undertaken, relating to Bratz after You learned that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.[26]

4

5

6     MGA has also had the opportunity to cross-examine Mattel's in-house

7 lawyer, Michael Moore, regarding when Mattel first became aware of the conduct

8 that forms that basis of its claims.  MGA's counsel questioned Mr. Moore at an

9 evidentiary hearing before Judge Larson on MGA's unsuccessful motion for

10 terminating sanctions.  One of the facts at issue was when Mattel first learned of the

11 conduct that forms that basis of its claims, and Mr. Moore provided substantial

12 testimony at the hearing on that subject.[27]  At no time did MGA complain to Judge

13 Larson that the non-privileged information disclosed by him interfered with MGA's

14 ability to get to any facts, let alone vital ones.

15     In short, defendants have already obtained sufficient relevant

16 information to determine when and how Mattel first learned that Bryant was

17 working on Bratz while still employed at Mattel and was aiding MGA while still

18 employed by Mattel.  That the information does not support their laches or statute of

19

20

21 [25]  See Order Regarding MGA and Carter Bryant's Joint Motion to Overrule Mattel's Relevance Objections and Compel Discovery Relevant to Statute of

22 Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.

23 18, Mumford Dec., Exh. 12.

24 [26]  See Order Regarding MGA and Carter Bryant's Joint Motion to Overrule Mattel's Relevance Objections and Compel Discovery Relevant to Statute of

25 Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.

26 19, Mumford Dec., Exh. 12.

27 [27]  Transcript of August 27, 2007 Hearing, at pp. 83-99, Proctor Dec., Exh. 10,

28 Notice of Lodging, Exh. 1.

1  limitations defenses does not mean that MGA is entitled to privileged information as
2  well.

3  **II.   IF THERE WERE AN IMPLIED WAIVER, THE SCOPE MUST BE**
4  **LIMITED**

5          Should the Court find implied waiver here -- and it should not -- the
6  scope of any waiver must be narrowly tailored.  "[T]he court must impose a waiver
7  no broader than needed to ensure the fairness of the proceedings before it." Bittaker
8  v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003).  The implied waiver doctrine
9  requires "closely tailor[ing] the scope of the waiver to the needs of the opposing
10 party." Id.

11         MGA's requested relief flouts these principles.  MGA demands an
12 overbroad Order concluding that "Mattel has waived the attorney-client and work
13 product concerning what it knew or had reason to suspect prior to November 2003,
14 regarding (a) *Carter Bryant's involvement in Bratz*, (b) his alleged breach of
15 contract, (c) *his work for MGA*, and/or (d) Mattel's alleged 'true owner[ship] of
16 Bratz.'"[28]  That far exceeds the proper scope of any implied waiver.  Information
17 regarding "Bryant's involvement in Bratz" and "his work for MGA," for example, is
18 far broader than what could possibly be necessary for any purported laches or statute
19 of limitations defenses.

20         For a copyright infringement claim, "the statute of limitations begins
21 running upon the plaintiff's actual or constructive knowledge of the wrong." Novell,
22 Inc. v. Unicom Sales, Inc., 2004 WL 1839117, at *4 (N.D. Cal. 2004) (citing Roley
23 v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)).  The party asserting
24 the time bar must prove that the opposing party knew of facts giving it *notice of the*
25 *specific cause of action at issue*, not just any cause of action. Westinghouse Elec.
26 Corp. v. General Circuit Breaker & Elec. Supply, Inc., 106 F.3d 894, 899 (9th Cir.

27

28  [28]  MGA's Motion, at p. 25.

07209/2373650.1

-14-

1  1997) (citing Hobson v. Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984), cert. denied, 470

2  U.S. 1084 (1985)).  The notice required for any cause of action to begin to accrue

3  "refer[s] to an awareness of sufficient facts *to identify a particular cause of action*,

4  be it a tort, a constitutional violation or a claim of fraud.  [It does] not mean the kind

5  of notice--based on hints, suspicions, hunches or rumors--that requires a plaintiff to

6  make inquiries in the exercise of due diligence, but not to file suit."  Garamendi v.

7  SDI Vendome S.A., 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (quoting

8  Hobson, 737 F.2d at 35).

9        Here, Mattel's claims are based on the fact that Bryant "conceived,

10  created and developed" Bratz concepts and works "*while he was employed by Mattel

11  as a doll designer*" and worked with MGA while he was employed by Mattel.[29]

12  Quite simply, Mattel's causes of action could not possibly have accrued before

13  Mattel learned that Bryant worked on Bratz, or for MGA, *while he was employed by

14  Mattel*.  The relevant question is therefore when Mattel had knowledge that Bryant

15  created Bratz *while a Mattel employee* and worked for MGA *while a Mattel

16  employee*.  Information related to Mattel's knowledge that Bryant worked for MGA

17  or was involved with Bratz *after he left Mattel* is not even pertinent to laches or the

18  statute of limitations, and certainly not "vital."

19        Moreover, the time period MGA espouses -- "before November 2003"

20  -- is overbroad and lacking in principled support.  Judge Larson has ruled that

21  Mattel's claims relate back to its initial complaint in April 2004.[30]  Even according

22  to MGA the earliest possible statute of limitations applicable to any of Mattel's

23  claims is two years.[31]  Thus, the only possibly relevant information to MGA's laches

24  and statute of limitations defenses would be evidence that Mattel was purportedly

25  _____

26  [29]  Mattel, Inc.'s Second Amended Answer and Counterclaims, ¶ 2 (emphasis added), Mumford Dec., Exh. 1.

27  [30]  Order Regarding Mattel's Motion for Leave to Amend, dated January 11,
2007, pp. 13-15, Proctor Dec., Exh. 8, Notice of Lodging, Exh. 1.

28

1  aware of the wrongful conduct that forms the basis of its claims prior to April 2002,
2  not November 2003.

3        Thus, even assuming for argument's sake that there has been an implied
4  waiver of the privilege here, it should be limited to information sufficient to show
5  when Mattel obtained knowledge of Bryant's creation, design and development of
6  Bratz *while he was a Mattel employee* and work for MGA *while he was a Mattel*
7  *employee*, dated prior to April 2002, if any such information exists. As to the
8  remainder of MGA's request, the drastic relief it seeks is not even arguably justified.

9  **III.   MGA IS NOT ENTITLED TO ADDITIONAL RESPONSES TO THE**
10       **DISCOVERY IT HAS IDENTIFIED**

11       Attempting to correct a fatal flaw in its initial motion, MGA now
12  identifies certain interrogatories, requests for admission, deposition topics and
13  document requests in response to which it seeks an Order compelling Mattel to
14  produced privileged information. Yet MGA still fails to identify any documents
15  identified on privilege logs or instructions not to answer at deposition on privilege
16  grounds for which it believes Mattel has waived the privilege. Moreover, the
17  specific discovery MGA identifies itself shows there is no basis for MGA's assertion
18  that Mattel has waived the privilege as to any discovery.[32]

19       First, MGA identifies four interrogatories (Interrogatory Nos. 5, 9-11)
20  and six requests for admissions (Request Nos. 241-245) for which it seeks an Order
21  compelling Mattel to provide additional responses that include "information

22  ────────────
[31]  Id. at p. 14.
23  [32]  Even if the Court were to find that Mattel has impliedly waived the privilege
24  as to any of the specific discovery requests identified by MGA, for many of the
   requests, Mattel has relevance, burden or other outstanding objections that still
25  apply. See, e.g., Mattel's Opposition to MGA's Motion to Overrule Mattel's
26  Relevance Objection and Compel Discovery Relevant to Statute of Limitations and
   Laches Defenses (RFP, RFA & Interrogatories), dated January 31, 2008 (addressing
27  each of the interrogatories, requests for admission and document requests identified
28  by MGA in its motion here).

1 protected by the attorney-client and work product privileges."[33]  As an initial matter,
2 Mattel has asserted a number of non-privilege objections to those discovery
3 requests, including a relevance objection that is the subject of a pending motion.[34]
4 Moreover, where Mattel has provided responses, Mattel has *not* withheld *any*
5 responsive information on privilege grounds.[35]  There is thus no basis for an Order
6 compelling Mattel to provide additional responses.

7          Second, MGA has identified eight <u>Rule</u> 30(b)(6) Topics on which it
8 seeks Mattel's knowledge, "including knowledge protected by the attorney-client
9 and work product privileges."[36]  Pursuant to the Discovery Master's January 9, 2008
10 Order, Mattel will be producing a deponent on Topic Nos. 15-21.[37]  Mattel has not
11 and will not take the position that its underlying knowledge, or any underlying facts,
12 are privileged.  MGA will thus obtain testimony regarding Mattel's knowledge on
13 the subjects of those Topics.  Topic No. 26, on the other hand, seeks entirely
14 privileged information: "Communications, discussion, meetings, analyses and the
15 decision-making process regarding measures taken or contemplated by Mattel
16 including, without limitation, any legal action brought or threatened to be brought
17 (including demand letters or other notices) against Bryant including, without
18 limitation, the filing of the Complaint."[38]  MGA will obtain more than sufficient
19 information regarding Mattel's relevant knowledge through testimony on Topic Nos.
20

21 [33]  MGA's Motion, at p. 25.
   [34]  <u>See</u> Mattel's Opposition to MGA's Motion to Overrule Mattel's Relevance
22 Objection and Compel Discovery Relevant to Statute of Limitations and Laches
   Defenses (RFP, RFA & Interrogatories), dated January 31, 2008.
23 [35]  <u>See</u> Declaration of Michael T. Zeller ("Zeller Dec."), dated January 31, 2008,
24 ¶¶ 3-4, concurrently filed herewith.
   [36]  MGA's Motion, at p. 25.
25 [37]  Order Regarding MGA and Carter Bryant's Joint Motion to Overrule Mattel's
26 Relevance Objections and Compel Discovery Relevant to Statute of Limitations and
   Laches Defenses, dated January 9, 2008, Mumford Dec., Exh. 13.
27 [38]  <u>See</u> Notice of Deposition of Plaintiff and Counter-Defendant Mattel, Inc.,
28 dated December 21, 2004, Topic No. 26, Mumford Dec., Exh. 12.

15-21. MGA cannot show that the privileged information that is responsive to Topic No. 26 specifically is "vital" to its defense.

Third, MGA has identified ten document requests (Request Nos. 186-195) for which it seeks an Order compelling Mattel to produce "documents protected by the attorney-client privilege and work privileges [sic]."[39]  Those requests seek information (1) that is far beyond the scope of any purportedly proper waiver, (2) for which Mattel has already produced substantial non-privileged information, and/or (3) that is entirely unrelated to MGA's claimed need.

Request Nos. 186-188 and 190-195 seek the following:

- All DOCUMENTS evidencing, mentioning, referring to, or relating to BRYANT's involvement with, work on, or connection to the conception, design, creation or development of BRATZ or BRATZ INTELLECTUAL PROPERTY.[40]

- All DOCUMENTS evidencing, mentioning, referring to, or relating to BRYANT's involvement with, contract with, and with or for MGA.[41]

- All DOCUMENTS mentioning, referring to, or relating to YOUR decision to sue BRYANT including, without limitation, COMMUNICATIONS mentioning, discussing, describing, referring to, or relating to the reasons and factors that influenced the decision, the timing of the decision, and the date and manner in which YOU made the decision.[42]

- All DOCUMENTS mentioning, referring to, or relating to any decision not to sue BRYANT including, without limitation, COMMUNICATIONS mentioning, discussing, describing, referring to, or relating to the reasons and factors that influenced the decision, the timing of the decision, and the date and manner in which YOU made the decision.[43]

---

[39]   MGA's Motion, at p. 25.
[40]   MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 186, Jan. 31 Proctor Dec., Exh. 1.
[41]   MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 187, Jan. 31 Proctor Dec., Exh. 1.
[42]   MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 188, Jan. 31 Proctor Dec., Exh. 1.
[43]   MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 190, Jan. 31 Proctor Dec., Exh. 1.

1

2

3
- All DOCUMENTS evidencing, mentioning, referring to, or relating to the date and manner in which YOU first learned of BRYANT's involvement with, work on, and connection to the conception, design, creation or development of BRATZ or BRATZ INTELLECTUAL PROPERTY.[44]

4

5

6
- All DOCUMENTS evidencing, mentioning, referring to, or relating to the date and manner in which YOU first learned of BRYANT's involvement with, contract with, and work with or for MGA.[45]

7

8

9
- All DOCUMENTS evidencing, supporting, documenting or relating to the reasons why YOU did not file a lawsuit against BRYANT sooner than the date of YOUR original complaint including, without limitation, DOCUMENTS evidencing or reflecting YOUR efforts to investigate BRYANT's involvement with, contract with, and with or for MGA.[46]

10

11

12

13
- All DOCUMENTS evidencing, supporting, documenting or relating to the reasons why YOU did not file a lawsuit against BRYANT sooner than the date of YOUR original complaint including, without limitation, DOCUMENTS evidencing or reflecting YOUR efforts to investigate the nature and scope of BRYANT's involvement with, work on, or connection to the conception, design, creation or development of BRATZ.[47]

14

15

16

17
- All DOCUMENTS evidencing, supporting, documenting, or relating to the reasons why YOU did not file a lawsuit against BRYANT sooner than the date of YOUR original complaint including, without limitation, all non-privileged DOCUMENTS evidencing or reflecting YOUR efforts to investigate the nature and scope of BRYANT's involvement with, work on, or connection to the conception, design, creation or development of BRATZ INTELLECTUAL PROPERTY.[48]

18

19

20
As with the interrogatories and requests for admission identified by MGA, Mattel has outstanding non-privilege objections to these document requests,

21

22

23
[44] MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 191, Jan. 31 Proctor Dec., Exh. 1.

24
[45] MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 192, Jan. 31 Proctor Dec., Exh. 1.

25
[46] MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 193, Jan. 31 Proctor Dec., Exh. 1.

26
[47] MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 194, Jan. 31 Proctor Dec., Exh. 1.

27

28
[48] MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 195, Jan. 31 Proctor Dec., Exh. 1.

1   including a relevance objection that is the subject of a pending motion.[49]  In

2   addition, these requests are all far broader than what is relevant here -- when Mattel

3   had knowledge that Bryant created Bratz *while a Mattel employee* and worked for

4   MGA *while a Mattel employee.*  For example, MGA seeks all privileged information

5   that "evidences, mentions or refers to" Bryant's involvement in Bratz or work for

6   MGA.  Information related to Mattel's knowledge that Bryant worked for MGA or

7   was involved with Bratz *after he left Mattel* is not relevant to laches or the statute of

8   limitations, and certainly not "vital."

9         Moreover, to the extent the requests do seek relevant information,

10   Mattel has already produced substantial responsive non-privileged information as

11   discussed in Section I.B above.  MGA admits as much, claiming that "the discovery

12   that has been taken in this case has established that there is good reason to believe

13   that at least as early as summer 2001, when Bratz was first released, that Mattel

14   suspected, or had reason to suspect, that Bryant was involved in Bratz and that he

15   also worked for MGA while a Mattel employee."[50]  Thus MGA acknowledges that it

16   believes it has information sufficient to support its statute of limitations and laches

17   defenses.  The privileged documents MGA seeks are not "vital" to its defenses.

18         Request No. 189 seeks "[a]ll DOCUMENTS mentioning, referring to,

19   or relating to any consideration given by Mattel to acquiring MGA."[51]  Such

20   documents are entirely unrelated to the Mattel's fraudulent concealment allegation

21   or MGA's statute of limitations or laches defenses.  MGA provides no explanation

22

23

24

25   [49]   See Mattel's Opposition to MGA's Motion to Overrule Mattel's Relevance
        Objection and Compel Discovery Relevant to Statute of Limitations and Laches
26   Defenses (RFP, RFA & Interrogatories), dated January 31, 2008.
        [50]   MGA's Motion, at p. 2 (emphasis omitted).
27   [51]   MGA's First Set of Requests for the Production of Documents and Things on
28   Mattel, dated January 31, 2005, Request No. 189, Jan. 31 Proctor Dec., Exh. 1.

1   for its request for an Order compelling the production of documents in response to
2   that request.[52]

3   **IV.   THE DISCOVERY MASTER HAS ALREADY RULED THAT**
4   **WITHHELD DOCUMENTS RELATED TO MATTEL'S 2002**
5   **INVESTIGATIONS ARE PRIVILEGED**

6           The Discovery Master has already held that Mattel has properly
7   withheld documents related to its 2002 investigations as privileged.  MGA's claim
8   that Mattel has waived the privilege as to those documents is contrary to that
9   decision, and it is not entitled to another bite at the apple. ·

10          On April 10, 2007, MGA and Bryant filed a motion to compel
11  documents from Mattel's global security files that Mattel withheld on privilege
12  grounds.[53]  In particular, MGA sought an Order compelling the production of
13  documents related to the same Mattel inquiries (the Spring 2002 investigation
14  regarding potential copyright infringement of "Toon Teens" and the August 2002
15  investigation regarding the anonymous letter) that MGA references in the present
16  motion.[54]  As here, MGA and Bryant had argued on the motion to compel that
17  Mattel should be compelled to produce such documents, claiming Mattel had failed
18  to produce documents reflecting "any findings by any Mattel employee or agent as
19  to when Mattel first learned or what Mattel first knew concerning Mr. Bryant's
20  involvement with MGA or the Bratz line of dolls."[55]  MGA and Bryant also argued,

21

---

22  [52]  Further, Request No. 195 is expressly limited to "non-privileged documents."
23  A finding of privilege waiver would thus necessary not warrant an Order compelling
    Mattel to produce additional documents in response to the request.
24  [53]  MGA and Bryant's Joint Motion to (1) Compel Production of Certain
25  Documents Withheld Under Claim of Privilege, (2) Attest to the Completeness of Its
    February 2007 Production of March 2002 Investigation Documents, and (3) De-
26  Designate Attorney's Eyes Only Documents, dated April 10, 2007, Proctor Dec.,
    Exh. 1, Notice of Lodging, Exh. 1.
27  [54]  Id. at p. 1.
28  [55]  Id. at p. 2.

                                        -21-

1 as they do here again, that this information was "highly relevant and strongly
2 support[s] [their] defenses based on laches and the statute of limitations."[56]

3        On May 15, 2007, the Discovery Master entered an Order denying
4 MGA's and Bryant's request that Mattel "certify that it has produced 'all responsive
5 documents concerning its investigations of Carter Bryant, MGA and/or the origins
6 of Bratz."[57]  On July 10, 2007, after an *in camera* review of the Mattel documents at
7 issue, the Discovery Master upheld Mattel's privilege claims as to nearly all the
8 documents withheld.[58]  In so holding, the Discovery Master noted that a necessary
9 element of the attorney-client privilege is that the privilege not have been waived.[59]
10 The Discovery Master therefore necessarily decided that Mattel has not waived the
11 privilege as to the documents at issue.

12        MGA seeks to alter the Discovery Master's July 10, 2007 Order by now
13 moving, yet again, to compel the production of the same documents (including those
14 relating to "Toon Teens" and the anonymous letter) that were the subject of that
15 Order and that the Discovery Master found were privileged.  The present motion is
16 thus, in reality, a motion for reconsideration because it seeks to alter the Discovery
17 Master's prior Order.  Whatever name a movant puts on a motion, "nomenclature is
18 not controlling . . . .  A court must construe whether a motion, however styled, is
19

20    [56]  Id. at pp 1-2.
   [57]  Order Granting MGA and Bryant's Motion to Compel Production of Certain
21 Documents Withheld Under Claims of Privilege for In Camera Review, and
22 Denying Motion to Attest to the Completeness of February 2007 Production, dated
May 15, 2007, Proctor Dec., Exh. 2, Notice of Lodging, Exh. 1.
23    [58]  Order Re In Camera Review of Global Security Files, dated July 10, 2007,
24 Proctor Dec., Exh. 3, Notice of Lodging, Exh. 1.
   [59]  The Discovery Master cited the elements of the privilege as follows: "(1)
25 When legal advice of any kind is sought (2) from a professional legal adviser in his
26 or her capacity as such, (3) the communications related to that purpose, (4) made in
confidence (5) by the client, (6) are, at the client's instance, permanently protected
27 (7) from disclosure by the client or by the legal adviser (8) *unless the protection be*
28 *waived.*" Id. at p. 2 (emphasis added).

07209/2373650.1

-22-

1  appropriate for the relief requested." Bordallo v. Reyes, 763 F.2d 1098, 1101-02

2  (9th Cir. 1985) (finding that "motion for clarification" actually was such a motion

3  because it only invited interpretation of the judgment, and did not seek to alter or

4  amend the judgment). Here, by seeking to compel production of the same

5  documents allegedly not protected by privilege that the Discovery Master already

6  declined to order produced because they are privileged, MGA's motion seeks

7  reconsideration.

8          MGA also provides no basis for that decision to be reconsidered. There

9  does not exist, nor does MGA contend that there exists, "any material difference in

10  fact or law from that presented" to the Discovery Master "that in the exercise of

11  reasonable diligence could not have been known to [MGA] at the time of [the

12  Order]." See Local Rule 7-18(a). There also has not been, nor does MGA contend

13  there has been, an "emergence of new material facts or change of law occurring after

14  the time" the Order was entered. See Local Rule 7-18(b). Finally, MGA has not

15  demonstrated "a manifest showing of a failure to consider material facts" presented

16  to the Discovery Master before his decision, nor even suggested there was such a

17  failure. See Local Rule 7-18(c). To the contrary, far from making any of these

18  necessary showings, MGA omits any reference to the Discovery Master's decision.

19  MGA's failure to raise its purported implied waiver arguments in its prior motion

20  and its present failure to identify new facts or law bars its motion as to the

21  investigation files.[60] MGA's motion should be denied for that reason alone.[61]

22  _____

23  [60]  See, e.g., Wood v. Midland Credit Management, Inc., 2005 WL 3159637, at
   *1 (C.D. Cal. 2005) (denying motion to reconsider under Local Rule 7-18 because it

24  "is not based no new facts, new law, or a failure of the Court to consider material

25  facts"); Watanabe v. Home Depot USA, Inc., 2003 WL 24272634, at *2 (C.D. Cal.
   2003) (same, where "Defendant does not raise any new evidence or show that this

26  Court failed to consider evidence presented to it in Plaintiff's original Motion");
   Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, 215 F.R.D. 581, 586 (D.

27  Ariz. 2003) (denying motion to reconsider under Central District standards (Local

28  Rule 7-18) because "Plaintiffs have not shown material differences in fact or law
   (footnote continued)

1

<u>Conclusion</u>

2          For the foregoing reasons, Mattel respectfully requests that the Court

3    deny MGA's motion to compel.

4    DATED: January 31, 2008               QUINN EMANUEL URQUHART OLIVER &
                                           HEDGES, LLP
5

6

7                                          By _Dylan Proctor / BLS_____
                                              B. Dylan Proctor
8                                             Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

_____

18   that were not and could not have been presented to the Court prior to its decision.
     Nor do Plaintiffs allege new facts, an intervening change in the law, or that the
19   Court failed to consider facts that were before it.").

20   [61]  Having failed in its moving papers to make any argument or factual showing
     on this issue, despite the fact that Mattel raised the issue in opposition to MGA's
21   first motion, it would be improper for MGA to attempt to do so in its reply. <u>See,</u>
22   <u>e.g.</u>, <u>Beverly Health & Rehabilitation Services, Inc.</u>, 2006 WL 3593472, at *7 (E.D.
     Cal. 2006) ("It is well established in this circuit that courts typically do not consider
23   arguments raised for the first time in a reply brief, as doing so may unfairly deprive
24   [the other party] of its opportunity to make a meaningful response."). Indeed, Judge
     Larson previously noted its impropriety when one of the MGA defendants had
25   engaged in such a tactic before him.  Order re Motions Heard on June 11, 2007, at
26   31, n. 7 (citing and quoting <u>In re Intuit Privacy Litigation</u>, 138 F. Supp. 2d 1272,
     1275 n.3 (C.D. Cal. 2001) ("this court does not consider arguments raised anew for
27   the first time in a reply brief as to do so would unfairly deny the non-moving party
28   an opportunity to respond."), Proctor Dec., Exh. 9, Notice of Lodging, Exh. 1.

# Exhibit 3

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# Exhibit 4

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# Exhibit 5

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# Exhibit 6

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:     (415) 774-2611
Facsimile:     (415) 982-5287

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
RIVERSIDE
2007 JUL 20 PM 3: 57
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. | CASE NO. C 04-09049 SGL (RNBx) <br> JAMS Reference No. 1100049530 <br><br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-2727 <br><br> **ORDER RE IN CAMERA REVIEW OF GLOBAL SECURITY FILES** |
| CONSOLIDATED WITH <br> MATTEL, INC. v. BRYANT and <br> MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On May 15, 2007, Mattel, Inc. ("Mattel") submitted for *in camera* review fourteen

documents from Mattel's Global Security files that were redacted or withheld from production on

the grounds of the attorney-client privilege and the work product doctrine.  Mattel also submitted

a privilege log and the declaration of Richard De Anda in support of its claims of privilege.

Having reviewed the documents, privilege log and declaration of Mr. De Anda, Mattel's claims of

1  privilege are sustained as to privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, 67, 68, and 69,

2  and overruled as to privilege log entries 32 and 50..

3  ## II. DISCUSSION

4  ### A. Claims Based Upon Work Product Doctrine

5       Although Mattel withheld the disputed documents based upon both the attorney-client

6  privilege and work product doctrine, Mr. De Anda's declaration addresses only the elements of

7  the attorney-client privilege.  He does not assert that any of the fourteen documents in dispute

8  were prepared in anticipation of litigation. Decl. of Mr. De Anda at ¶7.  Therefore the claims of

9  privilege based upon the work product doctrine are overruled as to all of the fourteen documents

10  in dispute.

11  ### B. Claims Based Upon Attorney-Client Privilege

12       Mattel claims that each of the fourteen documents at issue is protected by the attorney-

13  client privilege.  The attorney-client privilege protects an attorney's communication of legal

14  advice to his client, as well as the client's communication of information to the attorney "to

15  enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390

16  (1981).  The protection extends only to communications; however, it does not extend to the facts

17  underlying privileged communications.  Id. at 395-96.  The Ninth Circuit has described the

18  elements of the attorney-client privilege as follows: "(1) When legal advice of any kind is sought

19  (2) from a professional legal adviser in his or her capacity as such, (3) the communications

20  relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance,

21  permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the

22  protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir.2002).  The party

23  asserting the privilege has the burden of establishing that the privilege applies to a particular

24  document or set of documents.  In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir.

25  1992).

26       When a party withholds information otherwise discoverable under the Federal Rules of

27  Civil Procedure by claiming that it is privileged or subject to protection as trial preparation

28  material, "the party shall make the claim expressly and shall describe the nature of the documents,

Bryant v. Mattel, inc.,
CV-04-09049 SGL (RNBx)

2

1  communications, or things not produced or disclosed in a manner that, without revealing

2  information itself privileged or protected, will enable other parties to assess the applicability of

3  the privilege or protection." Fed.R.Civ.P. 26(b)(5).

4       Mr. De Anda states in his declaration that privilege log entries 29, 33, 35, 50, 51, 57, 63,

5  64, 65, 66, and 67 "constituted or recorded confidential communications between me and either

6  in-house counsel for Mattel or outside counsel for Mattel in which counsel conveyed to me legal

7  advice." Decl. of Mr. De Anda at ¶7. A review of the documents confirms Mr. De Anda's

8  representations as to all of these privilege log entries, except entry 50. Privilege log entry 50 is an

9  "investigative log," which Mattel produced in redacted form. The portion that has been redacted

10  consists of a one line entry which indicates that Mr. De Anda may have had a meeting with

11  certain individuals at Mattel, including Mattel's in-house counsel. The one line entry does not

12  contain the substance of any communication whatsoever, much less the substance of a

13  confidential attorney-client privileged communication. Accordingly, Mattel's claims of attorney-

14  client privilege are sustained as to privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, and 67,

and overruled as to privilege log entry 50.

15       Mr. De Anda states in his declaration that the e-mail identified as privilege log entry 32

16  "was a confidential communication between Mr. Cassidy Park, a Mattel employee, and in-house

17  counsel for Mattel." Decl. of Mr. De Anda at ¶7. Mattel produced privilege log entry 32 in

18  redacted form. The redacted portion consists of a single line, "FYI, attached is Mercedeh's

19  resume." Mattel has failed to establish that this single line of text is a confidential attorney-client

20  communication for the purpose of giving or receiving legal advice. Therefore, Mattel's claim of

21  privilege is overruled as to privilege log entry 32.

22       The last two documents in dispute are privilege log entries 68 and 69. Mr. De Anda states

23  in his declaration that entries 68 and 69 "are communications from a private investigator to

24  outside counsel for Mattel relating to work that investigator performed at counsel's request."

25  Decl. of Mr. De Anda at ¶7. There are circumstances under which communications between a

26  client's attorney and a third party who assists the attorney in rendering legal advice are protected

27  by the attorney-client privilege. See e.g. U.S. v. Kovel, 296 F.2d 918 (2nd Cir. 1961). It appears

28  

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

1 | these transmittal letters were communications made for the purpose of giving legal advice.

2 | Therefore, Mattel's claims of privilege are sustained as to privilege log entries 68 and 69.

3 | IV. CONCLUSION

4 | For the reasons set forth above, Mattel's claims of work product are overruled as to all of

5 | the fourteen documents in dispute. Mattel's claims of attorney-client privilege are sustained as to

6 | privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, 67, 68, and 69, and overruled as to

7 | privilege log entries 32 and 50. Mattel shall produce privilege log entries 32 and 50 without

8 | redactions within ten 10 days.

9 | Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10 | Master, Mattel shall file this Order with the Clerk of Court forthwith.

11 | Dated: July 10, 2007

12 | HON. EDWARD A. INFANTE (Ret.)
   Discovery Master

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on July 11, 2007,
I served the attached ORDER RE IN CAMERA REVIEW OF GLOBAL SECURITY FILES
in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the United States of America that
the above is true and correct.

Executed on July 11, 2007, at San Francisco, California.

Sandra Chan