Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:   (415) 774-2611
Facsimile:   (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER DENYING MGA'S AND CARTER BRYANT'S JOINT MOTION TO COMPEL AN UNREDACTED VERSION OF M0074400, MATTEL'S INVESTIGATIVE FILE 02-299 AND THE FURTHER DEPOSITION OF RICHARD DE ANDA** |

I. INTRODUCTION

On January 4, 2008, MGA Entertainment, Inc. ("MGA") and Carter Bryant ("Bryant") submitted a "Joint Motion to Compel an Unredacted Version of M0074400, Mattel's Investigative File 02-299 and the Further Deposition of Richard De Anda." On January 14, 2008, Mattel, Inc.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1  ("Mattel") submitted an opposition, and on January 18, 2008, MGA and Bryant submitted a reply.
2  The parties were directed to meet and confer further regarding the motion, which has now been
3  completed. See Joint Report dated March 28, 2008. Pursuant to Paragraph 5 of the Stipulation
4  and Order for Appointment of a Discovery Master, the Discovery Master finds it appropriate to
5  take the motion under submission for decision without oral argument.

## II. BACKGROUND

7  Richard De Anda ("De Anda") is Mattel's Vice President of Global Security. MGA
8  deposed De Anda on December 19, 2007 from about 9:00 a.m. to after 7:00 p.m., including
9  breaks. Mumford Decl., Ex. 7. Bryant's counsel was present at the deposition, but did not
10 question De Anda.

11  MGA and Bryant contend that during his deposition, De Anda voluntarily disclosed the
12 content of several conversations with in-house counsel, Michele McShane ("McShane"), from
13 March 2002 to August 2002 and beyond, and admitted that the content of those conversations was
14 reflected in the redacted portions of an email bearing bates number M0074400. MGA and Bryant
15 move to compel Mattel to produce an unredacted version of this email on the grounds that any
16 attorney-client privilege was waived by De Anda's voluntary disclosure of his conversations with
17 McShane.

18  In response, Mattel contends that De Anda's testimony did not reveal the substance of any
19 privileged communication. Rather, Mattel contends that De Anda's testimony was limited to the
20 factual circumstances surrounding his conversations with McShane or matters relating to
21 scheduling and coordination of investigations. Mattel has submitted an unredacted copy of
22 M0074400 for *in camera* review.

23  Next, MGA and Bryant contend that during his deposition, De Anda testified that there
24 was an additional file (Investigative File 02-299) "related" to the one De Anda's department
25 opened in March 2002 to investigate whether MGA and Isaac Larian were hiring Mattel
26 employees and manufacturing products based on designs that belonged to Mattel. MGA and

1  Bryant move to compel production of Investigative File 02-299 based upon De Anda's purported
2  admission that the File is relevant. In response, Mattel contends that Investigative File 02-299 is
3  not relevant to this litigation, and that even if it were relevant, the File is protected by the
4  attorney-client privilege. Mattel has submitted Investigate File 02-299 for *in camera* review,
5  together with the declaration of Mattel's Vice President and Assistant General Counsel attesting to
6  the contents of the File.

7  MGA and Bryant also seek an additional day to depose De Anda on the grounds that (1)
8  he is a key witness and (2) counsel did not have sufficient time to cover all aspects of the
9  investigations conducted by De Anda's department, including approximately 1200 pages of
10 investigative files that Mattel produced a day and a half before the deposition. MGA and Bryant
11 also request additional time to allow Bryant's counsel an opportunity to question De Anda. In
12 response, Mattel contends that MGA and Bryant had ample opportunity to depose De Anda.
13 Further, Mattel contends that MGA's counsel wasted much of the allotted time on collateral
14 issues, and should not now complain that there was insufficient time.

### III. DISCUSSION

#### A. De Anda Did Not Waive the Attorney-Client Privilege as to M0074400

The essential elements of the attorney-client privilege are: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002). The burden is on the party asserting the privilege to establish all the elements of the privilege. United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000).

"Voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981); see also Chevron Corp. v. Pennzoil Co.,

974 F.2d 1156, 1162 (9th Cir. 1992) (voluntary disclosure of privileged communication constitutes waiver of privilege). The rationale for the waiver is to prevent a party from disclosing communications that support its position while simultaneously concealing communications that do not. <u>Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc.</u>, 237 F.R.D. 618, 625 (N.D. Cal. 2006). "However, '[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.'" <u>Id.</u>, quoting <u>Fort James Corp. v. Solo Cup Co.</u>, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005) (holding that a party cannot selectively choose to disclose information that supports its position, while withholding information that might damage its case).

MGA and Bryant cite to ten different excerpts of De Anda's deposition to establish that De Anda waived the attorney-client privilege. As explained more fully below, in nine of the ten excerpts, De Anda did not disclose the content of a confidential attorney-client communication made for the purpose of giving or receiving legal advice, and therefore Mattel did not waive the attorney-client privilege.

On pages 184:20-188:23, De Anda did not disclose the content of a privileged attorney-client communication made for the purpose of giving or receiving legal advice. Instead, when asked about his conversation with McShane, De Anda testified very generally regarding his impressions of the conversation as follows: "My take-away was that we were talking about one or two of the same individuals that had contacted me had contacted her or it could have been the other of the one who contacted me." De Anda Tr. 186:24-187:3, Mumford Decl., Ex. 1.

On pages 192:2-193:17, De Anda testified regarding how Mattel's investigation was going to be managed. Specifically, De Anda testified as follows:

> My take-away as I recall today from that conversation is – was more of – of having the same information and how it was going to be managed and who was going to manage it, either she was or I was, because there was no need to run a parallel effort in managing this. And I think that was the – that was the take-away from me. It wasn't – we did not have a dialogue because I think there was – there

> was not enough information at the time or very, very little information at the time and I don't know where the information – how the information – what was the basis of the information.

De Anda Tr. 192:6-192:18. De Anda also explained that the essence of the conversation was "to understand the issue" and to understand who would be taking responsibility for the investigation into a potential claim for copyright infringement. De Anda Tr. 192:23-193:17, Mumford Decl., Ex. 1. De Anda did not disclose the content of a confidential attorney-client communication made for the purpose of giving or receiving legal advice.

On pages 197:11-22, De Anda gave generalized testimony regarding how an investigation should be conducted. Counsel asked, "Did you do any investigative background on MGA to prepare yourself better for this meeting?" De Anda Tr. 197:10, Mumford Decl., Ex. 1. De Anda responded as follows:

> No, that wasn't the – that wasn't the subject matter of the meeting at the time as I had said previously because it was a – and let me back up a second, too. This may help you understand. You don't necessarily shotgun an investigation and go a thousand directions in one place because actually what that nets is just busy work that has very little value to it. You have to do this methodically. So the first – the first process in this is to understand who is going to take responsibility for this matter and that was basically trying to gain an understanding of what was being communicated to us and what was the basis of this communication.

De Anda Tr. 197:11-22, Mumford Decl., Ex. 1. Nowhere in the passage cited above does De Anda reveal the substance of a confidential attorney-client conversation made for the purpose of giving or receiving legal advice.

On pages 205:22-207:17, De Anda testified generally about a meeting with McShane and others:

> As I recall this meeting, it was held within the Design Center in a meeting room somewhere in the center of the Design Center and it was – the meeting room – outside the meeting room were cubicles that designers and employees worked at and that, like I said before, I believe to my recollection Cassidy Parks, Ivy Ross, Michele McShane, Bob Simoneau, myself and possibly one or two other people but those one or two other people could have may have walked in and walked out during the meeting and that's why I'm having difficulty recalling these individuals.

1          The subject matter of the meeting was to try to understand – have a better
idea of – of what they were communicating to us with regards to Carter Bryant
utilizing or copying Luis Martinez's [Toon] Teens while at MGA to create Bratz. .
. . And the take-away from that meeting was that Michele McShane would –
would take the next step which was the responsibility to determine if, in fact, the
[Toon] Teens – Louis Martinez's [Toon] Teens were, in fact, a copyright
infringement violation that was utilized to create the Bratz doll.  That was the
take-away from there.  So the ball was transferred at that time into her court.

Tr. 206:3-207:17, Mumford Decl., Ex. 1.  Once again, De Anda did not reveal the content of a privileged communication.  Rather, De Anda's limited testimony disclosed the fact of the meeting, who was in attendance, the purpose of the meeting, and the general subject matter of the meeting, without disclosing the substance of any confidential communication made for the purpose of giving or receiving legal advice.

      On pages 227:1-17, De Anda testified that he contacted McShane to determine the results of her analysis of Toon Teens and was "frustrated" when he found out that she had not completed the analysis at that time.  Tr. 227:1-17, Mumford Decl., Ex. 1.  De Anda did not, however, reveal the content of any confidential attorney-client communication made for the purpose of giving or receiving legal advice.

      On pages 240:10-241:23, De Anda similarly testified that he called McShane to determine the status of her analysis of Toon Teens and that based upon that conversation, his understanding was that she had not completed her analysis as of that time.  Tr. 240:10-241:23, Mumford Decl., Ex. 1.  Again, De Anda did not reveal the content of any attorney-client communication made for the purpose of giving or receiving legal advice.

      On pages 258:23-259:15, De Anda testified he contacted McShane approximately twice a month to inquire as to the status of her investigation.  Tr. 258:23-259:15, Mumford Decl., Ex. 1.  De Anda limited his testimony to the frequency of his contact with McShane and did not disclose the content of any attorney-client communication made for the purpose of giving or receiving legal advice.

On pages 281:1-282:3, De Anda testified regarding the email bearing bates number M0074400 that is the subject of the instant motion. Counsel asked De Anda whether he had read the unredacted version of the email a month ago, and De Anda responded that yes, he had. Counsel next asked whether De Anda had told his lawyers he had reviewed the unredacted email, to which De Anda responded, "I don't recall if I did or didn't as I think I've restated." Tr. 282:1-3, Mumford Decl., Ex. 1. De Anda did not reveal the substance of any confidential attorney-client communication.

On pages 283:1-22, De Anda testified that McShane was the source of the information that had been redacted from the email. Tr. 283:1-22, Mumford Decl., Ex. 1. De Anda also testified that the redacted information was the same information that De Anda had received from McShane in the various phone calls during the period of March 2002 through August 2002 regarding the status of McShane's copyright infringement analysis. Once again, De Anda did not reveal the substance of a privileged communication.

In the last of the deposition excerpts at issue, however, De Anda arguably disclosed the content of an attorney-client privileged communication. On pages 221:17-224:16, De Anda testified as follows:

> Q: And was there – after that meeting was an issue – was it determined that there was an issue?
>
> MR. COREY: Objection: vague.
>
> THE WITNESS: With regards to the copyright of [Toon] Teens? Is that what you're asking?
>
> Q: The accusation that had been placed that Carter Bryant working for MGA had used proprietary information of some nature in – in making the Bratz doll.
>
> MR. COREY: Objection: vague and ambiguous.
>
> THE WITNESS: Had – there was a conclusion with regards to Luis Martinez's [Toon] Teens being copyrighted to create Bratz.
>
> Q: And what was that conclusion.
>
> A: That it was not.

1  Q: And how do you -- how was that conclusion communicated to you?

2  A: Through Michele McShane.

3  Q: And when did that occur?

4  A: It took some time and it was either -- it was either at the end of 2002 or beginning of 2003 or thereafter, but to tell you an exact time I can't but I know that it was late.

6  Q: How did McShane communicate that conclusion to you?

7  A: I think it was a phone call because -- in fact, I'm certain it was a phone call because I was calling her every so often to find out if she had an understanding if this was, in fact, a copyright infringement or not.

9  Q: Did she communicate to you this conclusion -- did you take notes in this phone call?

10 A: I don't believe I did.

11 Q: Did McShane tell you what she did to determine if there was, in fact, a copyright infringement?

13 MR. COREY: You can answer that "yes" or "no."

14 THE WITNESS: Well, but I would prefer not. There was a --

15 MR. COREY: Well --

16 THE WITNESS: Okay. She may have, however, the take-away from the conversation was that it was outside counsel of some sort that came to the conclusion and that was my understanding. I don't know the exact words but that was my take-away from it.

19 Q: Now, this conversation that you had with McShane where she gave you the conclusion that there wasn't a copyright violation of [Toon] Teens, did that conclusion get communicated to you before you received a copy of the anonymous letter that had been sent to Bob Eckert, the Chairman of Mattel -- the CEO of Mattel?

22 A: No, it was after because the conclusion had . . .

Tr. 222:18-224:25. When De Anda testified that McShane told him a determination had been made that there wasn't a copyright violation of Toon Teens, De Anda disclosed the substance of a an attorney-client communication, which appears to have been made in confidence for the purpose of giving or receiving legal advice. Nevertheless, even if De Anda disclosed the

8

substance of an attorney-client privileged communication in the excerpt quoted above, this disclosure was inconsequential. An *in camera* review of the email at issue bearing Bates number M0074400 confirms that the redacted portions of the email do not pertain to the determination that there wasn't a copyright violation of Toon Teens, and thus, are not within the subject matter of the disclosed communication. Furthermore, there is no suggestion that Mattel was selectively asserting the attorney-client privilege for use as a sword and shield. Rather, the transcript indicates that De Anda cooperated during his deposition and attempted to provide very general testimony regarding his communications with McShane. Therefore, as a matter of fairness, there is no justification for finding a waiver based upon De Anda's limited disclosure of the substance of his communication with McShane.

MGA and Bryant next contend that any attorney-client privilege as to the email was waived because De Anda reviewed the unredacted version of the email to prepare for his deposition and presumably refreshed his recollection. De Anda's testimony, however, was not so definitive. At one point De Anda testified that he may have seen an unredacted version of the email a month ago (Tr. 271:8-12), and at another point, De Anda testified that he had read the email in unredacted form (Tr. 281:18-20). Furthermore, he did not testify that his review of the email refreshed his recollection. Rather, when asked whether reading the email helped him remember events occurring between March and August of 2002, De Anda testified, "[w]hen I read this the – the complete copy back a month or so ago, it may have but I don't recall." Tr. 282:15-17.

B. Investigative File 02-299 is Not Relevant to the Claims and Defenses in the Case

MGA and Bryant seek an order compelling Mattel to produce Investigative File 02-299, contending that De Anda admitted at his deposition that File 02-299 was "related" to the file opened in March 2002 to investigate whether MGA and Isaac Larian were hiring Mattel employees and manufacturing products based on designs that belonged to Mattel.

MGA's and Bryant's description of De Anda's testimony is inaccurate. De Anda testified that a "notation" on one file that it is "related" to another file "could mean a variety of things," such as being "related either by location, subject matter, type of issue" to the matters raised by the March 2002 investigation. De Anda Tr. 294:4-9, Mumford Decl., Ex.1. In any event, the notation on File 02-299 that it is "related" to the March 2002 investigation does not necessarily mean it is relevant and discoverable within the meaning of Rule 26, Fed.R.Civ.P.

Moreover, an *in camera* review of Investigative File 02-299 confirms Mattel's representation that the File is not relevant to the claims and defenses in this case. Investigative File 02-299 contains information regarding an MGA French licensing agent who had provided Bratz-related licensing information to an employee of Mattel's French affiliate. An *in camera* review confirms that the circumstances of that investigation had nothing to do with the March 2002 investigation, the "anonymous letter" or any other claim or defense at issue in this litigation. Furthermore, the declaration of Brian O'Connor, Mattel's Vice President and Assistant General Counsel, establishes that the documents in the file are protected by the attorney-client privilege.

C. There is No Good Cause for Additional Time to Depose De Anda re Phase 1 Issues

Rule 30(d)(1), Fed.R.Civ.P., provides that "a court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." In this case, MGA and Bryant have failed to establish the requisite good cause to justify additional deposition time on Phase 1 issues. De Anda is an important witness in the case. However, MGA's counsel deposed De Anda for over seven hours. A review of the excerpts of the deposition transcript submitted by the parties reveals that MGA was able to question De Anda regarding his investigations and other subjects that are relevant to Phase 1, without any impediments or delays. Indeed, MGA and Bryant acknowledge that they questioned De Anda regarding Mattel's March 2002 investigation of MGA and Isaac Larian for allegedly hiring Mattel employees and manufacturing products based on designs that allegedly belonged to Mattel; the August 2002 investigation conducted after Mattel

received the "anonymous letter"; Mattel's policy on secondary employment; and De Anda's security consulting firm, Richard N. De Anda & Associates. MGA and Carter Bryant have not established good cause to allow additional time to depose DeAnda, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

Finally, although Mattel produced many documents a day and a half before De Anda's deposition, the belated production does not justify additional deposition time regarding Phase 1 issues. MGA and Bryant have reviewed the documents and determined that the documents include, *inter alia*, Mattel's investigative files regarding former Mattel employees Carlos Gustavo Machado Gomez ("Machado"), Mariana Trueba Almada ("Trueba") and Pablo Vargas San Jose ("Vargas"). MGA's and Bryant's Opposition at p. 10. According to MGA and Bryant, these documents "relate directly to Mattel's assertions and claims in this litigation that Machado, Trueba and Vargas stole trade secrets from Mattel." Id. Thus, based upon MGA's and Bryant's own description of the documents, the documents are relevant, if at all, to Phase 2 claims and defenses, and not to Phase 1. At present, Phase 2 discovery is stayed.

## IV. CONCLUSION

For the reasons set forth above, MGA and Bryant's joint motion is denied. Nothing in this Order is intended to authorize or preclude MGA or Bryant from seeking additional deposition time with De Anda during Phase 2 discovery, if appropriate.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: May 9, 2008

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 9, 2008, I served the attached: ORDER DENYING MGA'S AND CARTER BRYANT'S JOINT MOTION TO COMPEL AN UNREDACTED VERSION OF M0074400, MATTEL'S INVESTIGATIVE FILE 02-299 AND THE FURTHER DEPOSITION OF RICHARD DEANDA in the within action by email addressed as follows:

| Name | Firm | Email |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Larry W. McFarland, Esq. | Keats, McFarland & Wilson | lmcfarland@kmwlaw.com |
| Christian Dowell, Esq. | Keats, McFarland & Wilson | cdowell@kmwlaw.com |
| Robyn Aronson, Esq. | Davis Wright Tremaine | robynaronson@dwt.com |
| Alonzo Wickers, Esq. | Davis Wright Tremaine | alonzowickers@dwt.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 9, 2008, at San Francisco, California.

_____
Anthony Sales