1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    JOHN B. QUINN (State Bar No. 090378)
2   MICHAEL T. ZELLER (State Bar No. 196417)
    JON D. COREY (State Bar No. 185066)
3   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
4   Telephone: (213) 443-3000; Facsimile: (213) 443-3100

5   STROOCK & STROOCK & LAVAN LLP
    BARRY B. LANGBERG (State Bar No. 048158)
6   MICHAEL J. NIBORSKI (State Bar No. 192111)
    2029 Century Park East, Suite 1600
7   Los Angeles, California 90067-3086
    (lacalendar@stroock.com)
8   Telephone: (310) 556-5800; Facsimile: (310) 556-5959

9   Attorneys for MATTEL, INC.

10

11                  UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13                          EASTERN DIVISION

14  CARTER BRYANT, an individual,      ) Case No. CV 04-9049 SGL (RNBx)
                                       ) Consolidated with
15              Plaintiff,             ) Case No. CV 04-09059
                                       ) Case No. CV 05-02727
16        vs.                          )
                                       ) [PUBLIC REDACTED] MATTEL,
17  MATTEL, INC., a Delaware           ) INC.'S NOTICE OF MOTION AND
    corporation,                       ) MOTION OBJECTING TO
18                                     ) DISCOVERY MASTER'S MAY 8,
                                       ) 2008 ORDER DENYING MATTEL'S
19              Defendant.             ) MOTION FOR RECONSIDERATION
    _____) OF FEBRUARY 26, 2008 ORDER
20                                     ) DENYING MOTION TO COMPEL
    AND CONSOLIDATED ACTIONS           ) DEPOSITION OF CHRISTOPHER
21                                     ) PALMERI; AND RENEWED
    _____) MOTION OBJECTING TO
22                                     ) FEBRUARY 26, 2008 ORDER

23                                     [Notice of Lodging and Declaration of
                                       Michael J. Niborski filed concurrently]
24
                                       Hearing Date:    May 21, 2008
25                                     Time:            10:00 a.m.
                                       Place:           Courtroom 1
26
                                       **Phase 1**
27                                     Discovery Cut-off:    January 28, 2008
                                       Pre-trial Conference: May 19, 2008
28                                     Trial Date:           May 27, 2008

07209/2502542.1

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on May 21, 2008, at 10:00 a.m., or at such
3 other time established by the Court, in the Courtroom of the Honorable Stephen G.
4 Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and
5 counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to
6 overrule the Discovery Master's May 8, 2008 Order Denying Mattel's Motion for
7 Reconsideration of February 26, 2008 Order Denying Motion to Compel Deposition
8 of Christopher Palmeri.

9       Further, Mattel respectfully renews its previous Motion Objecting to the
10 Discovery Master's February 26, 2008 Order Denying Motion to Compel Deposition
11 of Christopher Palmeri.

12       Mattel objects to both the May 8, 2008 and February 26, 2008 Orders
13 pursuant to Federal Rules of Civil Procedure 72(a) on the grounds that the
14 Discovery Master's Orders were clearly erroneous and contrary to law. Specifically,
15 the Discovery Master erred in concluding (1) the information sought by Mattel fell
16 within the scope of the qualified journalist's privilege, and (2) Mattel had failed to
17 establish that the deposition should proceed notwithstanding the claim of privilege.

18       This Motion is based on this Notice of Motion and Motion, the accompanying
19 Memorandum of Points and Authorities, the Declaration of Michael J. Niborski filed
20 concurrently herewith, the Notice of Lodging filed concurrently herewith, and all
21 other matters of which the Court may take judicial notice.

22

23

24

25

26

27

28

07209/2502542.1

1

### Statement of Rule 7-3 Compliance

2      The parties met and conferred regarding issues raised by this Motion on [add

3   dates for earliest meet and confer on prior motions] May 8 and 9, 2008.

4   Dated:  May 12, 2008          STROOCK & STROOCK & LAVAN LLP

5                                 BARRY B. LANGBERG
                                  MICHAEL J. NIBORSKI
6

7

8                                 By:     /s/ Michael J. Niborski
                                          Michael J. Niborski
9                                         Attorneys for MATTEL, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2

**Page**

3   I.      PRELIMINARY STATEMENT....................................................................1

4   II.     BACKGROUND............................................................................................4

5   III.    ARGUMENT ..................................................................................................7

6
7        A.    In Applying the Reporter's Privilege to the Verification of Published Statements, the Discovery Master's Order Is Clearly
8             Erroneous or Contrary to Law ..................................................................7

9        B.    Even If the Reporter's Privilege Does Apply, the Discovery Master's Application of the Privilege Is Clearly Erroneous or
10             Contrary to Law .......................................................................................9

11             1.    The Discovery Master's Finding that the Information
12                    Sought Is Available From Another Source Is Clearly
13                    Erroneous and Contrary to Law ..................................................10

14             2.    The Discovery Master's Finding that the Information
15                    Sought Is Not Clearly Relevant to an Important Issue Is
                 Clearly Erroneous or Contrary to Law ........................................13

16
17             3.    The Discovery Master's Finding that the Information
                 Sought Is Cumulative Is Clearly Erroneous or Contrary to
18                    Law ..............................................................................................17

19        C.    California's State Constitutional Shield Law Does Not Apply .............18

20             1.    The State Shield Law Does Not Apply Here Because
21                    Federal and State Claims Are At Issue.........................................18

22             2.    The State Shield Law Does Not Apply Here Because the
                 Matters About Which Mr. Palmeri Must Testify Were
23                    Published......................................................................................19

24   IV.    CONCLUSION .............................................................................................20

25

26

27

28

# TABLE OF AUTHORITIES

Page

## Cases

Agster v. Maricopa County,
   422 F.3d 836 (9th Cir. 2005) ............................................................................ 18, 19

Branzburg v. Hayes,
   408 U.S. 665 (1972) .......................................................................................... 8

Brinston v. Dunn,
   919 F. Supp. 240 (S.D. Miss. 1996) ................................................................. 15

De La Paz v. Henry's Diner,
   946 F. Supp. 484 (N.D. Tex. 1996) .................................................................. 15

Dillon v. City and County of San Francisco,
   748 F. Supp. 722 (N.D. Cal. 1990) ........................................................ 8, 14, 19

In re Jack Howard,
   136 Cal. App. 2d 816 (1955) ............................................................................ 20

In re Maykuth,
   2006 WL 724241 (E.D. Pa. 2006) .................................................................... 9

McKevitt v. Pallasch,
   339 F.3d 530 (7th Cir. 2003) ............................................................................ 15

Miami Herald Pub. Co. v. Morejon,
   561 So. 2d 577 (Fla. 1990) ............................................................................... 8

NLRB v. Mortenson,
   701 F. Supp. 244 (D.D.C. 1988) ..................................................................... 9

Prince George's County v. Hartley,
   822 A.2d 537 (Md.  App. 2003) ....................................................................... 14

SEC v. Seahawk Deep Ocean Tech., Inc.,
   166 F.R.D. 268 (D. Conn. 1996) .............................................................. 9, 12, 17

Shoen v. Shoen,
   5 F.3d 1289 (9th Cir. 1993) ........................................................ 7, 8, 10, 12, 13

Shoen v. Shoen,
   48 F.3d 412 (9th Cir. 1995) .............................................................................. 7

State of Minnesota v. Knutson,
   523 N.W.2d 909 (Minn. App. 1995) ................................................................. 14

U.S. ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc.,
   600 F. Supp. 667 (S.D.N.Y. 1985) .................................................................. 12

United States v. LaRouche Campaign,
    841 F.2d 1176 (1st Cir. 1988) ................................................................. 7

In re Vmark Software,
    1998 WL. 42252 (E.D. Pa. 1998) ................................................. 9, 12, 14

In re Ziegler,
    550 F. Supp. 530 (W.D.N.Y. 1982) ...................................................... 14

## Statutes

Cal. Const. Art. I, § 2(b) ......................................................................... 19

Cal. Code of Civ. Proc. § 1881(6) ........................................................... 20

Cal. Evid. Code § 1070 ............................................................................ 19

Fed. R. Civ. Proc. 72(a) ............................................................................. 7

Fed. R. Evid. 501 ..................................................................................... 19

Rule 30(b)(6) ................................................................................... 11, 16

[PUBLIC REDACTED] MATTEL'S MOTION OBJECTING TO DISCOVERY MASTER'S MAY 8 2008 ORDER

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    PRELIMINARY STATEMENT**

3      Mattel returns to the Court a second time to obtain an order compelling

4  Christopher Palmeri to sit for a very brief deposition to confirm under oath the

5  accuracy of statements by Isaac Larian that were published in BusinessWeek

6  magazine.  On April 14, 2008, the Court declined to decide the merits of Mattel's

7  motion objecting to the Discovery Master's denial of a motion to compel and

8  directed Mattel to seek reconsideration with the Discovery Master first.  Mattel has

9  done that, without success, and now respectfully asks the Court to decide the merits

10  of Mattel's objections.

11      It cannot be emphasized enough that Mattel is not seeking unpublished

12  information, or information about confidential sources, or research material.  The

13  only public interest at stake is that of fair judicial process.  There is no fishing

14  expedition here.  There is no actual or threatened interference with newsgathering.

15  And there is no burden on the journalist other than what is expected of every person

16  with evidence – including the President of the United States.  Mr. Palmeri need only

17  to sit for a 20- or 30-minute deposition and confirm the accuracy of a single critical

18  paragraph in an article that was disseminated throughout the world.

19      The Court already is familiar with the issue presented in this motion.  Mattel

20  needs to depose Mr. Palmeri to obtain admissible evidence that Larian claimed to

21  BusinessWeek (and the world) in July 2003 that he supposedly "got the idea for

22  Bratz after seeing his own kids run around in navel-baring tops and hip-huggers."

23  This claim was false, and was designed to hide Carter Bryant's invention of – and

24  Mattel's ownership of – Bratz.  As the Court knows, those are central issues in this

25  litigation.

26      As discussed below, the qualified journalist's privilege does not even apply in

27  this situation.  The public policies that have provided the basis for a journalist's

28  privilege do not extend to avoidance of testimony about published statements.  The

-1-

1   federal courts developed the privilege in recognition of the need to protect
2   journalists from having to disclose unpublished information – such as the research
3   materials in the Shoen case – and confidential sources.  The rationale for such
4   protection is to allow journalists to perform their "watchdog" role.  Mattel seeks
5   nothing from Mr. Palmeri that is unpublished, and no confidential sources.
6   Moreover, the deposition sought here does not impose an undue burden.  Mr.
7   Palmeri's testimony will certainly be presented to the jury at trial.  This is not a
8   broad or unfocused inquiry.  Mr. Palmeri need only say whether the article
9   accurately conveyed Larian's statements to Mr. Palmeri.  That's it.

10   Even if the qualified privilege applied here (and it does not), it must yield.
11   Mattel has now deposed three witnesses regarding the statements published in
12   BusinessWeek – Larian himself, David Malacrida (MGA's spokesman), and a Rule
13   30(b)(6) witness designated by MGA to testify about the statements.  Larian
14   testified that he did not recall making the statements, but could not confirm or deny
15   actually making the statements.  A non-denial is not equivalent to unambiguous,
16   objective testimony from a neutral, percipient witness that Larian proclaimed to the
17   world in the summer of 2003 that he was inspired to invent Bratz from watching his
18   children.  Malacrida and MGA's Rule 30(b)(6) witness had no information, and they
19   confirmed that the only participants in the interview were Larian and Palmeri.

20   Also, Mr. Palmeri's testimony would not be cumulative.  Mr. Palmeri argues
21   that Mattel has already obtained testimony regarding Larian's conflicting stories
22   about the origins of Bratz.  But Mattel has not obtained the necessary and important
23   evidence that Larian announced to the world – through BusinessWeek – that he
24   (rather than Mattel employee Carter Bryant) was the inventor of Bratz even as the
25   Wall Street Journal was disclosing for the first time that Bratz came to MGA
26   through a "sort-of" fashion doll design contest in 1999 – a time period when Bryant
27   was employed by Mattel.  Larian's contrary claim to BusinessWeek is unique in that
28   it was made with knowledge that it would be spread at that particular time to nearly

-2-

1   a million magazine readers (and many more online readers) – and shows a
2   continuing scheme to hide and observe the truth about Bratz's creation (and
3   ownership) even as the Wall Street Journal story was being published.

4       Further, the testimony Mattel seeks goes to the very heart of the claims and
5   defenses in this action. Mattel has alleged that MGA deliberately and intentionally
6   concealed facts that Mattel was the true owner of Bratz. Larian's statements to Mr.
7   Palmeri that Larian came up with the idea for Bratz was part of a deliberate,
8   continuing course of conduct designed to conceal Bryant's invention of Bratz during
9   his employment by Mattel. Such statements by Larian show guilty knowledge of
10  the theft of Bratz from Mattel. They show absence of mistake; they rebut MGA's
11  likely claim that reporters "got it wrong," "misunderstood," or "missed something"
12  when they heard Larian claim to be the inventor or Bratz. The statements also go
13  directly to MGA's fraudulent concealment as they relate to defendants' statute of
14  limitations and laches defenses to Mattel's copyright and other claims – regarding
15  which the Discovery Master and this Court permitted broad discovery by MGA and
16  Bryant.

17      The very limited testimony sought, the importance of that evidence, and
18  Mattel's repeated but unsuccessful efforts to obtain that information elsewhere
19  justify Mr. Palmeri's deposition. Mattel has done its level best to obtain admissible
20  evidence of Isaac Larian's published statements to BusinessWeek. Mr. Palmeri's
21  refusal to provide testimony about those statements allows defendants to hide
22  behind the journalist's privilege while depriving Mattel of vital evidence of Larian's
23  knowledge and concealment of Mattel's ownership of Bratz.

24      Finally, any argument by Mr. Palmeri that California's shield law relieves him
25  from testifying must be rejected. The testimony sought involves published, not
26  unpublished, information, and the state shield law does not reach published
27  statements. Further, Ninth Circuit law is clear that where, as here, federal and state
28

1   law claims are at issue, the court must apply the qualified federal privilege, not the
2   absolute state privilege.

3      The Discovery Master denied Mattel critical trial evidence.  In so ruling, the
4   Discovery Master's orders are contrary to law and clearly erroneous.  Accordingly,
5   Mattel respectfully requests that the Court overrule the Discovery Master's orders
6   and compel Mr. Palmeri to sit for a brief deposition.

7

8   **II.    BACKGROUND**

9      Christopher Palmeri is a reporter for BusinessWeek.  In July 2003, he
10  authored an article entitled "To Really Be A Player, Mattel Needs Hotter Toys" (the
11  "Article").  The Article contains the following:

12          Mattel won't live or die on every new toy it develops.  But
13          it can't just rely on Barbies, either.  "Like they say in
14          business school – no risk, no reward," says Isaac Larian,
15          CEO of privately held MGA.  He should know:  He got
16          the idea for Bratz after seeing his own kids run around in
17          navel-baring tops and hip-huggers.[1]

18      Mattel served Mr. Palmeri with a deposition subpoena on July 25, 2007, in
19  order to obtain testimony about Larian's statements in the Article.[2]

20      Beginning even before service of the subpoena, counsel for Mattel and Mr.
21  Palmeri and BusinessWeek met and conferred about the need for, and scope of, Mr.
22  Palmeri's deposition.  Mattel made clear that it seeks testimony relating to published
23  statements.[3]  Mattel offered to conduct the deposition at a time and place of Mr.

24

---

25      [1] Declaration of Michael J. Niborski, dated May 12, 2008 ("Niborski Dec."), ¶ 2, Ex. 1
26  (Article).

27      [2] Niborski Dec., Ex. 2 (Subpoena in a Civil Case, dated July 25, 2007).

28      [3] Niborski Dec., ¶¶ 6-8, 16; Ex. 6 (Email from Wickers to Alger dated August 16,
    2007); Ex. 5 (Letter from Alger to Wickers, dated August 17, 2007); Ex. 7 (Letter from

Palmeri's choosing, and offered to agree to a limited period of time for questioning. In addition, Mattel offered to discuss the exact scope of the prospective questions with counsel for Mr. Palmeri in advance of the deposition.[4]

On January 7, 2008, the Court granted Mattel's Motion for Leave to Take Additional Discovery in this action. In its moving papers, Mattel identified Mr. Palmeri as one of the individuals it sought to depose, informed the Court that Mr. Palmeri is a reporter for BusinessWeek, and provided the Court with a description of the relevance of Mr. Palmeri's anticipated testimony during oral argument.[5] The Court found that Mattel was entitled to conduct additional depositions, including Mr. Palmeri's.[6]

Nevertheless, on January 14, 2008, Mr. Palmeri's counsel informed counsel for Mattel that Mr. Palmeri would not appear for deposition.[7] Mattel filed a motion to compel Mr. Palmeri's deposition with the Discovery Master on January 21, 2008.[8] In his opposition, Mr. Palmeri claimed that Mattel was precluded from obtaining its requested testimony by both the federal reporter's privilege and California's state

---

Niborski to Wickers, dated September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).

[4] Niborski Dec., ¶¶ 6-8, 14-16; Ex. 7 (Letter from Niborski to Wickers, dated September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).

[5] Niborski Dec., ¶¶ 11-12; Ex. 10 (Motion of Mattel for Leave to Take Additional Discovery, at 8, 11); Ex. 11 (Transcript of January 7, 2008 hearing).

[6] Niborski Dec., ¶ 13, Ex. 12 (Order Granting In Part And Denying In Part Mattel's Motion For Leave To Take Additional Discovery, dated January 7, 2008; Order Amending Court's Minute Order of January 7, 2008).

[7] Niborski Dec., ¶¶ 1-16; Ex. 13 (Letter from Niborski to Wickers dated January 14, 2008).

[8] Mattel, Inc.'s Notice of Motion and Motion to Compel the Deposition of Christopher Palmeri, dated January 21, 2008, attached as Exhibit 1 to the concurrently filed Notice of Lodging.

1  shield law.[9]

2      On February 26, 2008, the Discovery Master entered an order denying

3  Mattel's motion to compel.[10]  Mattel filed a motion objecting to the Discovery

4  Master's Order on March 11, 2008.  While that motion was pending, the Discovery

5  Master ordered Isaac Larian to sit for deposition and Mattel asked Larian about the

6  statements in the Article.  Mattel submitted to the Court that deposition testimony,

7  as well as that of MGA's 30(b)(6) witness regarding the Article, and MGA's

8  spokesperson.[11]  On April 14, 2008, the Court entered an order denying the motion

9  and requiring Mattel to return to the Discovery Master for reconsideration.[12]

10     On April 22, 2008, Mattel moved for reconsideration of the Discovery

11 Master's Order Denying Mattel's Motion to Compel.[13]  The Discovery Master denied

12 the motion for reconsideration on May 8, 2008.[14]

13

14

15

16    [9]  Opposition to Mattel's Motion to Compel the Deposition of Christopher Palmeri,
17 dated January 29, 2008 ("Palmeri's Opposition"), attached as Exhibit 2 to the concurrently
   filed Notice of Lodging.
18
      [10]  Niborski Dec., Ex. 16 (Order Denying Mattel's Motion to Compel Deposition of
19 Christopher Palmeri, dated February 26, 2008 ("February 26 Order")).

20    [11]  Niborski Dec., Exs. 14, 25, 26 (Excerpts from Depositions of Larian, Malacrida, and
21 Khare).

22    [12]  Niborski Dec., Ex. 17 (Court's April 14, 2008 Order).  Although the Court made
   reference in its April 14, 2008 Order to new theories presented by Mattel, Mattel had, in
23 actuality, presented the arguments made to the District Court to Judge Infante in the original
   motion to compel.

24    [13]  Niborski Dec., Ex. 18 (Mattel's Motion for Reconsideration of February 26, 2008
25 Order Denying Motion to Compel Deposition of Christopher Palmeri, dated April 22, 2008).

26    [14]  Niborski Dec., Ex. 19 (Discovery Master's May 8, 2008 Order Denying Mattel's
   Motion for Reconsideration of February 26, 2008 Order Denying Motion to Compel
27 Deposition of Christopher Palmeri) ("May 8, 2008 Order").  The Discovery Master did not
   hear oral argument on either occasion that he considered Mattel's motion to compel Mr.
28 Palmeri's deposition.

## III. ARGUMENT

By Stipulation and Court Order appointing the Discovery Master, the Discovery Master's rulings are treated like those of a magistrate judge. Such rulings should be overruled if they are "clearly erroneous or [] contrary to law." <u>Fed. R. Civ. Proc.</u> 72(a). The Discovery Master's determination that Mr. Palmeri can avoid deposition in this litigation is clearly erroneous and contrary to law.

### A. In Applying the Reporter's Privilege to the Verification of Published Statements, the Discovery Master's Order Is Clearly Erroneous or Contrary to Law

The Discovery Master erred in denying Mattel's motion to compel the deposition of Mr. Palmeri by incorrectly finding that Mr. Palmeri is entitled to assert the journalist's privilege under <u>Shoen v. Shoen</u>, 5 F.3d 1289 (9th Cir. 1993) ("<u>Shoen I</u>"), and <u>Shoen v. Shoen</u>, 48 F.3d 412 (9th Cir. 1995) ("<u>Shoen II</u>"). Neither decision supports this assumption. The <u>Shoen</u> decisions do not require the Court to apply the test of the qualified privilege where a litigant seeks evidence about <u>published statements</u>. The Ninth Circuit did not even address whether a journalist can assert privilege regarding published information. <u>See Shoen I</u>, 5 F.3d at 1290-91, 1295 (discussing disclosure of "resource materials" for an unpublished book); <u>Shoen II</u>, 48 F.3d at 416 (discussing "research materials" and quoting <u>United States v. LaRouche Campaign</u>, 841 F.2d 1176, 1182 (1st Cir. 1988), which recognized the threat posed by demands for "outtakes, notes, and other unused information").

The plain language of the Article and the context of the words used by BusinessWeek make clear that <u>Larian</u> told Mr. Palmeri that he (Larian) "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers." This statement follows immediately from a direct quote of Larian. Mr. Palmeri and BusinessWeek intended to convey that the information about the "idea for Bratz" and its inspiration came directly from Larian. In all of the briefing on this

-7-

1  dispute, Mr. Palmeri has never disputed that the passage was intended to convey to
2  readers what Larian actually told Mr. Palmeri.

3      A limited deposition to authenticate a published statement does not undermine
4  the integrity of the newsgathering process or inhibit the free flow of information to
5  the public.  While a reporter might be hampered in his or her ability to gather
6  information if forced to reveal the identity of confidential sources or research
7  materials, that is not what Mattel seeks here.  Mattel simply seeks Palmeri's
8  confirmation under oath of an important statement by Larian that was published to
9  the world.  In this situation, where no privileged information is being sought by
10  Mattel, Palmeri's testimony falls within the "broad right of discovery . . . based on
11  the general principle that litigants have a right to 'every man's evidence.'" Shoen I, 5
12  F.3d at 1292 (quoting United States v. Bryan, 339 U.S. 323, 331 (1950)).[15]

13      The Discovery Master therefore erred in concluding that the journalist's
14  privilege was available to Mr. Palmeri as to the statements about which Mattel seeks
15  confirmation under oath.  See Dillon v. City and County of San Francisco, 748 F.
16  Supp 722, 726 (N.D. Cal. 1990) (holding that the privilege did not apply to the
17  personal observations of a reporter who "has not been asked to reveal any
18  confidential sources or information, nor has been requested to produce or discuss
19  any resource materials"); Miami Herald Pub. Co. v. Morejon, 561 So. 2d 577, 581
20  (Fla. 1990) (rejecting privilege for eyewitness observations (citing numerous
21  cases)).

22

23      [15]  The divided Supreme Court decision that has provided the tenuous basis for the
24  qualified privilege, Branzburg v. Hayes, 408 U.S. 665 (1972), involved grand jury inquiries
25  that sought disclosure by journalists of confidential, unpublished information. Justice Powell,
   who provided the swing vote that rejected the privilege in the context of a grand jury criminal
26  investigation, wrote that a claim of privilege "should be judged on its facts by the striking of a
   proper balance between freedom of the press and the obligation of all citizens to give relevant
27  testimony with respect to criminal conduct. . . . In short, the courts will be available to
   newsmen under circumstances where legitimate First Amendment interests require
28  protection." Id. at 710 (Powell, J., concurring).

1    The Discovery Master's threshold decision to apply the reporter's privilege
2    was erroneous.  On that basis alone, the Order denying Mattel's motion should be
3    overruled, and Mr. Palmeri should be ordered to appear for deposition.

4

5    **B.     Even If the Reporter's Privilege Does Apply, the Discovery**
6    **Master's Application of the Privilege Is Clearly Erroneous or**
7    **Contrary to Law**

8    Courts have frequently found that the journalist's privilege must yield where
9    testimony is sought for the limited purpose of verifying statements that already have
10   been published to the world.  See, e.g., In re Maykuth, 2006 WL 724241, at *2 (E.D.
11   Pa. 2006) (requiring reporter to testify about published statements); In re Vmark
12   Software, 1998 WL 42252, at *2 (E.D. Pa. 1998) (reporter ordered to confirm
13   published statements alleged to be false and misleading in securities lawsuit); SEC
14   v. Seahawk Deep Ocean Tech., Inc., 166 F.R.D. 268, 271-72 (D. Conn. 1996)
15   (refusing to quash subpoena for deposition seeking verification of published
16   statements); NLRB v. Mortenson, 701 F. Supp. 244, 250 (D.D.C. 1988) (requiring
17   reporters to testify about published statements).

18   Even assuming *arguendo* that reporter's privilege did apply here, Mattel has
19   overcome the privilege and is entitled to the limited deposition it seeks.  The
20   privilege yields where "the requested evidence is: '(1) unavailable despite the
21   exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly
22   relevant to an important issue in the case.'"[16]  The Discovery Master's finding that
23   Mattel has not satisfied this test is clearly erroneous and contrary to law.

24

25

26

27

28   [16]   Niborski Dec., Ex. 19 (May 8, 2008 Order, at 2 (quoting Schoen II, 48 F.3d at 416)).

1
2
3

> 1. **The Discovery Master's Finding that the Information Sought Is Available From Another Source Is Clearly Erroneous and Contrary to Law**

4   There is no dispute that Larian did not confirm under oath that he made the

5   statements published in BusinessWeek to Mr. Palmeri. Although Larian did not

6   deny the statement, he declined to testify that he made it. Thus, Mr. Palmeri is the

7   only person who can confirm under oath that Larian actually made the statements

8   published in BusinessWeek. That is the key fact for the purposes of satisfying

9   <u>Shoen</u>'s exhaustion requirement. That other people might testify that Larian made

10  <u>other</u> statements relating to the origins of Bratz, at <u>different</u> times, to <u>different</u>

11  people, that <u>may or may not</u> have been published, has no bearing as to whether

12  Mattel has exhausted all possible sources of information for <u>this</u> statement. The

13  undisputable truth is that the only person who heard and could affirmatively tell the

14  jury without equivocation or ambiguity that Larian told BusinessWeek in the

15  summer of 2003 that he "got the idea for Bratz after seeing his own kids run around

16  in navel-baring tops and hip-huggers" is Mr. Palmeri.

17  Mattel has deposed everyone who has first-hand knowledge of what Larian

18  said to Mr. Palmeri in the interview for the Article – except Mr. Palmeri. No other

19  witness has confirmed that Larian made the statements attributed to him in the

20  Article. And no witness has provided the particular story of the origins of Bratz that

21  is reflected in the Article. Mattel specifically questioned Larian on statements he

22  had made to reporters regarding the origins of Bratz. Larian responded by stating,

23  "

24  ."[17]  Mattel also questioned Larian about the specific

25  statements in the BusinessWeek Article. Far from confirming that he made the

26
27

---

[17]  Niborski Dec., Ex. 14 (Larian Depo. Tr., July 18, 2006, at 62:24 - 63:1).

28

1   statements, Larian said he could not recall whether he had or not, did not deny
2   making the statements, and said that the published facts were partially true.[18]
3        MGA designated and Mattel deposed a <u>Rule</u> 30(b)(6) witness on the Larian
4   statements in the Article.  MGA's designee testified that he did not know who
5   provided the information to Mr. Palmeri, but that "
6
7                                                    "[19]  According to MGA's <u>Rule</u> 30(b)(6)
8   designee, Malacrida was not present when statements were made to Mr. Palmeri.[20]
9   Malacrida confirmed this at his deposition, and testified that he spoke with Mr.
10  Palmeri only to arrange the interview of Larian.[21]  Given that Larian does not
11  remember his statements to Mr. Palmeri, and MGA cannot confirm them, the only
12  witness who can verify Larian's statements to BusinessWeek is Mr. Palmeri.
13       The Discovery Master misappropriated the subject of the testimony Mattel
14  seeks, stating that "there are other reasonable alternative sources of information
15  regarding Larian's public statements about the origins of Bratz."[22]  Larian's varying
16  (and false) statements about Bratz are not fungible, however.  His claims to Mr.
17  Palmeri were aimed at the world at a time that MGA is now asserting on summary
18  judgment (and is expected to argue at trial) Bryant's involvement was no secret, and
19  the Wall Street Journal reported it.  At the very time the Wall Street Journal was
20  revealing Bryant's involvement and his submission of Bratz to MGA in <u>1999</u> (while
21  he was still a Mattel employee and a year before he left Mattel) – MGA and Larian
22  were still engaged in a scheme to conceal and obscure the fact that Bryant created
23
24  ───────────────────
25  [18]  Niborski Dec., Ex. 14 (Larian Depo. Tr., March 26, 2008, at 268:4-269:10).
26  [19]  Niborski Dec., Ex. 24 (Khare Depo. Tr. at 718:24-719:20).
27  [20]  <u>Id.</u> at 719:8-719:20.
28  [21]  Niborski Dec., Ex. 25 (Malacrida Depo. Tr. at 194:20-196:24).
    [22]  Niborski Dec., Ex. 19 (May 8, 2008 Order at 3).

-11-

1   Bratz, and telling Mr. Palmeri a story at odds with the Wall Street Journal.[23]  See

2   SEC v. Seahawk Deep Ocean Technology, Inc., 166 F.R.D. 268, 272 (D. Conn.

3   1996) (reporter ordered to verify published statement by defendants accused of

4   stock manipulation; "[t]here is nothing in the record to indicate other evidence in

5   support of the accuracy of [the] article and, therefore, the testimony sought does not

6   appear to be unduly cumulative"); accord In re Vmark Software, 1998 WL 42252,

7   *2 (E.D. Pa. 1998) (reporter ordered to confirm published statements alleged to be

8   false and misleading in securities lawsuit).[24]

9        Only Mr. Palmeri can provide the objective testimony that Mattel needs

10  regarding Larian's statements in July 2003. A deposition of Mr. Palmeri will

11  consume perhaps a half-hour. To require Mattel to depose any number of other

12  people about the possibility of other Larian statements defies common sense and

13  Mattel's right to "relevant facts" in the "search for truth." Shoen I, 5 F.3d at 1292.

14  Imposing such a requirement is not a "balance," id. at 1292-93, but the creation of

15  the very privilege that the federal courts have consistently rejected.[25]  The Discovery

16  Master's failure to recognize that Mr. Palmeri's testimony was unique and vital to

17  Mattel's case in chief was clearly erroneous and contrary to law.

---

18
19      [23]   Niborski Dec., Ex. 26 (Tkacik Depo. Tr. at 8:13-10:14) (Larian's claim to the Wall
        Street Journal that Bryant submitted the idea for Bratz in a fashion doll contest in late 1999).

20      [24]   Mr. Palmeri has relied on U.S. ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc., 600 F.
21      Supp. 667 (S.D.N.Y. 1985), to support its argument that the testimony of Mr. Palmeri would
        be cumulative. The Vuitton case has no application here. There, a convicted defendant sought
22      production of unbroadcast "outtakes" of a 60 Minutes interview that was aired several months
        after trial. The court found that defendant had the opportunity to cross-examine the subject of
23      the interview at trial, that the witness's testimony at trial was consistent with the portions of
        the interview that were broadcast, and there was no reason to believe the outtakes contained
24      anything more interesting than what was broadcast. Thus, the demand for outtakes was
        merely a "fishing expedition." Id. at 668. Here, Mattel seeks confirmation of published
25      statements for use at a trial where Larian will testify (as he did at deposition) that he does not
26      recall making the statements. Moreover, this is no "fishing expedition:" there is no mystery
        about what is being sought from Mr. Palmeri, and its importance to the case.
27

28      [25]   Shoen I, 5 F.3d at 1292-93 (discussing the qualified – not absolute – nature of the
        First Amendment-based privilege).

-12-

1

2.   **The Discovery Master's Finding that the Information Sought**

2

**Is Not Clearly Relevant to an Important Issue Is Clearly**

3

**Erroneous or Contrary to Law**

4      In his May 8, 2008 Order, the Discovery Master concluded, without

5   explanation, that "Mattel cannot show that the information it seeks from Mr. Palmeri

6   is clearly relevant to an important issue."[26]  Larian's statements to BusinessWeek

7   bear directly on Mattel's claims that defendants concealed Bryant's disloyalty and

8   theft, as well as MGA and Bryant's statute of limitations and laches defenses –

9   issues that are central to this case and were heavily briefed in the parties' recently

10   filed motions for summary judgment.  Mattel alleges that "Bryant and MGA

11   deliberately and intentionally concealed facts sufficient for Mattel to suspect or to

12   know that it was the true owner of Bratz," including by "concealing Bryant's role in

13   Bratz by falsely claiming that Larian and others were the creators of Bratz."[27]  To

14   demonstrate MGA's intent and to show Larian's guilty knowledge of the theft of

15   Bratz from Mattel, Mattel must obtain admissible evidence (*i.e.,* not hearsay) that

16   Larian did in fact make the statements Mr. Palmeri included in his article.  MGA

17   undoubtedly will argue that Mattel cannot simply introduce the BusinessWeek

18   article at trial to establish the truth of its contents – i.e., that Larian told Mr. Palmeri

19   that he (Larian) got the "idea for Bratz" based on the inspiration of his children's

20   clothing.

21      Mr. Palmeri contends that because his testimony would not be relevant to the

22   question of whether Bryant created Bratz while he was employed by Mattel, it is not

23   relevant to any important issue in the case.  Mr. Palmeri is mistaken.  There is also

24   no quota under Shoen on the number of "important issues" in a particular case.

25   Larian's behavior – including his statements to Mr. Palmeri – could prove to be

26

27      [26]   Niborski Dec., Ex. 19 (May 8, 2008 Order at 3).

28      [27]   Niborski Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶ 35) (emphasis added).

1   dispositive: Larian's deliberate and continuing attempts to hide Bryant's
2   involvement in Bratz bears directly on Mattel's ownership of Bratz.  Larian behaved
3   in a manner consistent with knowledge that Mattel owned Bratz and that disclosing
4   Bryant would permit Mattel and others to "connect the dots" and figure out the
5   truth.

6        Mr. Palmeri's claim that the mere existence of the article is sufficient evidence
7   in support of Mattel's claim that it did not discover Bryant's involvement in Bratz
8   until November 2003 is also wrong.  MGA undoubtedly will argue – and indeed that
9   the article is inadmissible hearsay.[28]  The jury's consideration of Larian's behavior
10  requires Mr. Palmeri to testify about Mr. Larian's statements.  The situation here is
11  no different than the eyewitness testimony required of the journalist in Dillon v. City
12  and County of San Francisco, 748 F. Supp. 722 (N.D. Cal. 1990).  Mattel's claim is
13  not simply that it first discovered Bryant's role in the creation of Bratz in November
14  2003, but that MGA "deliberately and intentionally concealed facts sufficient for
15  Mattel" to learn the truth of Bryant's involvement.[29]   MGA will not agree that
16  Mattel can simply introduce the BusinessWeek article at trial to establish the truth of
17  its contents, and Mr. Palmeri does not argue that it can either.  See State of
18  Minnesota v. Knutson, 523 N.W.2d 909, 913 (Minn. App. 1995) ("[T]he
19  'Constitution does not immunize a reporter from testifying merely because he makes
20  the observation as a news reporter.'" (quoting In re Ziegler, 550 F. Supp. 530, 532
21  (W.D.N.Y. 1982)); Prince George's County v. Hartley, 822 A.2d 537, 548 (Md.

22

23      [28]   The BusinessWeek article is Trial Exhibit 631 (M 0074054-M 0074056).  MGA has
24  made the following objections to this exhibit: "Hearsay (FRE 801,802); Prejudicial/Confusing
    (FRE 403); Authenticity/Foundation (FRE 901)."  Niborski Dec., Ex. 20 (MGA Defendants
25  and Carter Bryant's Notice of Service of Objections to Mattel's Corrected Revised Exhibit
    List, dated May 1, 2008; Excerpt from Defendants' Objections, dated May 2, 2008).  Bryant
26  also objects to it based on "Hearsay (FRE 801,802)."  Id.  See, e.g., Vmark, 1998 WL 42252,
    *1, 3 (discussing inadmissibility of article or reporter's affidavit under hearsay rule).
27
    [29]   Niborski Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727
28  and Counterclaims, ¶¶ 35-36).

1   App. 2003) (requiring reporters to confirm offensive statements made by police
2   officers in a disciplinary hearing; "[The reporters] are not protecting the confidential
3   source of any information . . . The testimony sought goes to the heart of the matter:
4   whether [the officer] made the statements in question."); Brinston v. Dunn, 919 F.
5   Supp. 240, 244 (S.D. Miss. 1996) (holding that where the defendant failed to
6   overcome the journalist's privilege to obtain "unpublished" information, it was still
7   proper to compel the deposition of the author on the limited issue of the accuracy of
8   the article's assertions, including whether statements attributed to the plaintiff were
9   in fact made by the plaintiff).[30]

10      The contents of the BusinessWeek Article, which appeared in the July 28,
11  2003 edition, is particularly important because Larian's statements call into question
12  MGA's assertion in this litigation that the Wall Street Journal article of July 18,
13  2003 established Mattel's knowledge of a claim based on Bryant's invention of
14  Bratz while he was employed by Mattel. (The BusinessWeek article appeared at
15  approximately the same time as the Journal article, given that weekly magazines are
16  distributed at least one week before their cover date.)

17      Throughout this litigation, MGA has claimed that the Wall Street Journal
18  article is important evidence demonstrating that Mattel had knowledge of its claims
19  at least as early as July 2003. For example, in opposition to Mattel's motion to
20  remand, MGA argued that the article proved that by July 2003 Mattel believed

21

22      [30]   In Brinston, the court drew a distinction between "unpublished" materials, such as
23  "sources" and "resource materials," which may be the subject of privilege, and simply
    questioning the author of an article about its accuracy, which does not "impermissibly infringe
24  on the First Amendment right to freedom of the press." Id. at 243-44. See also De La Paz v.
    Henry's Diner, 946 F. Supp. 484, 485 (N.D. Tex. 1996) (holding that plaintiff's subpoena
25  duces tecum, seeking to compel a reporter's deposition, as well as tape-recorded interviews
    with the defendant, did not implicate the journalist's privilege as it sought only non-
26  confidential material); McKevitt v. Pallasch, 339 F. 3d 530, 532 (7th Cir. 2003) (holding that
    journalist had "no conceivable interest" in preventing disclosure of tape recordings of
27  interviews with key prosecution witness for use by defendant in a criminal trial because the
28  source of the information was non-confidential).

1  Carter Bryant had copied a Mattel product in creating Bratz.[31]  In a May 17, 2006
2  letter sent to Mattel's counsel, MGA again stressed the purported importance of the
3  Wall Street Journal article in "foreshadowing Mattel's belief with regard to its core
4  contention in this case."[32]  And in a motion to compel filed in September 2007,
5  MGA claimed that Mattel's knowledge regarding the Wall Street Journal article "is
6  vital to Defendants' laches defense."[33]  Indeed, the Journal article is so important to
7  MGA and Bryant that they insisted that Mattel provide a witness about the article
8  under Rule 30(b)(6).[34]

9       At trial, defendants are certain to argue that Bryant's involvement in Bratz
10  was common knowledge.  But Larian's false statements to Mr. Palmeri (and the
11  public) in the summer of 2003 about the invention of Bratz establish the opposite –
12  that Bryant's invention of Bratz was a secret, and Larian was even trying to stuff the
13  toothpaste back into the tube as the Wall Street Journal was revealing Bryant's
14  involvement with the dolls and MGA.  That is evidence of guilty knowledge and
15  refutes MGA's point (also made on summary judgment and elsewhere) that neither
16  Larian nor MGA had attempted to mislead anyone.

17
18
19
20
21
22

---

[31]  Niborski Dec., Ex. 21 (Defendant Carter Bryant's Opposition to Plaintiff Mattel,
23  Inc.'s Motion to Remand, dated December 22, 2004, at pp. 3-5); Niborski Dec., Ex. 22
24  (Defendant in Intervention MGA Entertainment, Inc.'s Joinder in Defendant Carter Bryant's
Opposition to Plaintiff Mattel, Inc.'s Motion to Remand, dated December 22, 2004).

25  [32]  Niborski Dec., Ex. 23 (Letter from Ambrosini to Zeller, dated May 17, 2006, at p. 4).

26  [33]  Niborski Dec., Ex. 27 (MGA Entertainment, Inc.'s and Carter Bryant's Joint Notice
27  of Motion to Compel Re: Mattel's Bandying of 30(b)(6) Witnesses, dated September 6, 2007,
at p. 12).

28  [34]  Id.

1

2

### 3. The Discovery Master's Finding that the Information Sought Is Cumulative Is Clearly Erroneous or Contrary to Law

3  In his May 8, 2008 Order, the Discovery Master concluded, without

4 explanation, that "Mattel cannot show that the information it seeks from Mr. Palmeri

5 is . . . non-cumulative."[35]

6  Mattel is not seeking cumulative impeachment evidence.  As described above,

7 the information Mattel seeks is relevant to Mattel's allegations that MGA

8 deliberately and intentionally concealed "Bryant's role in Bratz by falsely claiming

9 that Larian and others were the creators of Bratz."[36]  Larian's statement that "[h]e

10 got the idea for Bratz after seeing his own kids run around in navel-baring tops and

11 hip-huggers" is vital to Mattel's allegation that Larian affirmatively covered up

12 Bryant's involvement by telling a reporter for the nation's most popular business

13 magazine in July 2003 – when the Wall Street Journal was reporting something

14 completely different – that he (Larian) invented Bratz.[37]  Mattel cannot obtain

15 admissible evidence of Larian's particular assertion to BusinessWeek from any

16 source other than Mr. Palmeri.  See SEC v. Seahawk Deep Ocean Technology, Inc.,

17 166 F.R.D. 268, 272 (D. Conn. 1996) (reporter ordered to verify published statement

18 by defendants accused of stock manipulation; "[t]here is nothing in the record to

19 indicate other evidence in support of the accuracy of [the] article and, therefore, the

20 testimony sought does not appear to be unduly cumulative").

21  And Larian's assertion to Mr. Palmeri that he invented Bratz is far different

22 than the claims made to other reporters, such as Denise O'Neal of the Chicago Sun-

23 Times, who reported in March 2004 about Larian's shift of MGA's product focus

24

25

26  [35] Niborski Dec., Ex. 19 (May 8, 2008 Order at 3).

27  [36] Niborski Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶¶ 34-36).

28  [37] See Niborski Dec., Ex. 28 (Wall Street Journal Article, dated July 18, 2003).

1  and the source of the "Bratz" name.[38]  To Jeff Weiss, a reporter for the San
2  Fernando Valley Business Journal, Larian claimed in March 2007 that his son
3  invented Bratz.[39]  Indeed, Mr. Palmeri points to no other published claim by Larian
4  that Bratz was inspired by seeing "his own kids run around in navel-baring tops and
5  hip-huggers" – let alone such a statement in July 2003.  Accounts of Larian's other
6  statements about the origins of Bratz are simply not equivalent of Mr. Palmeri's
7  testimony.  That very limited testimony about <u>published</u> statements by a <u>known</u>
8  source to one of the globe's most widely ready magazines is different, unique, and
9  not duplicative of any other evidence in this case.

10  Mr. Palmeri's requested testimony is not cumulative.  The Discovery Master's
11  finding otherwise is clearly erroneous and contrary to law.

12

13  **C.   California's State Constitutional Shield Law Does Not Apply**

14  Mr. Palmeri is likely to argue again that California's shield law provides him
15  with absolute immunity from testifying.  California's shield law does not apply in
16  this action because Mattel has asserted both federal and state law claims.  Moreover,
17  California's shield law only applies to unpublished information, whereas the
18  information Mattel intends to ask Mr. Palmeri about was published.

19           **1.   The State Shield Law Does Not Apply Here Because Federal**
20                   **and State Claims Are At Issue**

21  "Where there are federal question claims and pendent state law claims
22  present, the federal law of privilege law applies." <u>Agster v. Maricopa County</u>, 422
23  F.3d 836, 839 (9th Cir. 2005).  Here, Mattel has asserted both federal and state law
24  claims.[40]  Thus, federal privilege law governs and California's shield law is

25  _____
26  [38]  Niborski Dec., Ex. 9 (O'Neal Depo. Tr. at 9:16-14:4).

27  [39]  Niborski Dec., Ex. 29 (Weiss Depo Tr. at 12:14-14:23).

28  [40]  Niborski Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727
and Counterclaims, dated July 12, 2007).

1  inapplicable.  See, e.g., Dillon, 748 F. Supp. at 724-45 (rejecting application of
2  California's shield law).

3      In an effort to get around this clear rule, Mr. Palmeri has argued that
4  California's shield law should apply because the information sought applies only to
5  Mattel's state law claims.  Even if Mr. Palmeri is right about the law (he is not), he is
6  still wrong when it is applied here.  Larian's behavior – his knowing, continuing and
7  very public effort to conceal Bryant's true involvement – is evidence of Mattel's
8  ownership of the Bratz copyrights.  Larian was aware that Mattel, not MGA, owned
9  Bratz, and he acted (and spoke with Mr. Palmeri) accordingly.  Because Larian's
10  statements are thus relevant to Mattel's federal copyright claim, California's shield
11  law does not apply.[41]  Agster, 422 F.3d at 839.

12      **2.    The State Shield Law Does Not Apply Here Because the**
13      **Matters About Which Mr. Palmeri Must Testify Were**
14      **Published**

15      California's shield law does not apply for an additional, independent reason –
16  the shield law protects only "unpublished information."  Cal. Const. Art. I, § 2(b);
17  Cal. Evid. Code § 1070.  Here, the statements about which Mattel needs testimony
18  were published.  Mr. Palmeri has argued that courts have interpreted "unpublished
19  information" so broadly as to include the identity of an individual who is directly
20  quoted in a news article.  But the only case Mr. Palmeri has cited for that

21

22

23      [41]   Mr. Palmeri's argument that California's shield law should apply notwithstanding the
   fact that the testimony sought is relevant to Mattel's federal law claims is without merit.  In
24  support of his position, Mr. Palmeri has cited three district court cases that purport to hold that
   state law privileges are to be applied where both federal and state law claims are at issue.
25  Those cases, however, are contrary to subsequent Ninth Circuit law.  In each of the cases Mr.
   Palmeri cites, the court interpreted Fed. R. Evid. 501 as requiring both federal and state
26  privilege law to apply where both federal and state law claims were at issue.  In 2005, the
   Ninth Circuit rejected that interpretation, holding that, pursuant to Fed. R. Evid. 501, "[w]here
27  there are federal question claims and pendent state law claims present, the federal law of
   privilege law applies."  Agster, 422 F.3d at 839.
28

1 | proposition, <u>In re Jack Howard</u>, 136 Cal. App. 2d 816 (1955), did not analyze the

2 | definition of "unpublished information" under California's shield law at all.

3 |      <u>In re Jack Howard</u> involved former <u>Cal. Code of Civ. Proc.</u> § 1881(6), which

4 | has since been repealed.  That statute provided that journalists could not be held in

5 | contempt for refusing to disclose <u>sources</u> to a court.  It was not until 1974, after the

6 | shield law was transferred to the <u>Evidence Code</u>, that the Legislature added

7 | "unpublished information" to the shield law, and <u>In re Howard</u> had no occasion to

8 | address whether the nonconfidential source of a published statement is "unpublished

9 | information."  Moreover, we know the source of these statements – Larian.  Mr.

10 | Palmeri has never disputed that the statement was made by Larian.  <u>In re Jack</u>

11 | <u>Howard</u> therefore provides no support for Mr. Palmeri's position.

12 |

13 | **IV.  CONCLUSION**

14 |      Even where it applies – and it does not here – a journalist's claim of privilege

15 | must be evaluated in light of the surrounding facts.  A proper balancing of the scales

16 | here requires Mr. Palmeri to submit to the very limited deposition sought by Mattel.

17 | Mattel has established that it has exhausted alternative sources, the information is

18 | material to Mattel's claims, and Mr. Palmeri's testimony will not be cumulative.

19 | Mattel's need for admissible evidence of Larian's statements far outweighs any

20 | slight burden imposed by a half-hour deposition, the accuracy of published

21 | statements by Larian about the origins of Bratz.

22 |
23 |
24 |
25 |
26 |
27 |
28 |

1    For the foregoing reasons, Mattel respectfully requests that the Discovery

2  Master's May 8, 2008 Order be overruled and that Christopher Palmeri be compelled

3  to appear for a deposition.

4  Dated:  May 12, 2008                    STROOCK & STROOCK & LAVAN LLP

5

6                                          By:     /s/ Michael J. Niborski

7                                                  Michael J. Niborski
                                                   Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PUBLIC REDACTED] MATTEL'S MOTION OBJECTING TO DISCOVERY MASTER'S MAY 8 2008 ORDER