# EXHIBIT 11

```
                            080107 hearing.txt
1                   UNITED STATES DISTRICT COURT
2                   CENTRAL DISTRICT OF CALIFORNIA
3                          EASTERN DIVISION
4                              - - -
5            HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING
6                              - - -
7    CARTER BRYANT, ET. AL.,          )
                                      )
8                      PLAINTIFFS,    )
                                      )
9            VS.                      ). NO. ED CV 04-09049
                                      )  (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,           )
                                      )
11                     DEFENDANTS.    )  MOTIONS
     _____)
12   AND CONSOLIDATED ACTIONS,        )
                                      )
13
14
15              REPORTER'S TRANSCRIPT OF PROCEEDINGS
16                      RIVERSIDE, CALIFORNIA
17                    MONDAY, JANUARY 7, 2008
18                          10:11 A.M.
19
20
21
22
23              THERESA A. LANZA, RPR, CSR
                FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
                RIVERSIDE, CALIFORNIA  92501
25                   951-274-0844
                CSR11457@SBCGLOBAL.NET
@ 1  APPEARANCES:
2    ON BEHALF OF CARTER BRYANT:
3                    KEKER & VAN NEST
                     BY:  CHRISTA M. ANDERSON
4                    710 SANSOME STREET
                     SAN FRANCISCO, CALIFORNIA  94111-1704
5                    415-391-5400
6
     ON BEHALF OF MATTEL:
7
                     QUINN EMANUEL
8                    BY:  JOHN QUINN
                     BY:  MICHAEL T. ZELLER
9                    865 S. FIGUEROA STREET,
                     10TH FLOOR
10                   LOS ANGELES, CALIFORNIA  90017
                     213-624-7707
11
12   ON BEHALF OF MGA ENTERTAINMENT:
13                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                     BY:  THOMAS J. NOLAN
14                   BY:  CARL ALAN ROTH
                     BY:  AMY S. PARK
15                   300 SOUTH GRAND AVENUE
                     LOS ANGELES, CALIFORNIA  90071-3144
16                   213-687-5000
17
     ON BEHALF OF GUSTAVO MACHADO:
18
                          Page 1
```

EXHIBIT  11  PAGE 76

```
                        080107 hearing.txt
                    OVERLAND BORENSTEIN COTE & KIM LLP
19                  BY:  MARK E. OVERLAND
                    300 SOUTH GRAND AVENUE
20                  SUITE 2750
                    LOS ANGELES, CALIFORNIA  90071
21                  213-613-4660
22
23
24  / / /
25  / / /
8  1   APPEARANCES (CONT'D):
   2
   3   ON BEHALF OF NON-PARTY KAYE SCHOLER:
   4                   KAYE SCHOLER LLP
                       BY:   BRYANT S. DELGADILLO
   5                   1999 AVENUE OF THE STARS
                       SUITE 1600
   6                   LOS ANGELES, CALIFORNIA  90067-6048
                       310-788-1341
   7
   8   ON BEHALF OF NON-PARTY STERN & GOLDBERG:
   9                   STERN & GOLDBERG:
                       BY:  KIEN C. TIET
10                   6345 BALBOA BOULEVARD,
                       SUITE 200
11                   ENCINO, CALIFORNIA  91316
                       818-758-3940
12
13   ON BEHALF OF NON-PARTY FARHAD LARIAN:
14                   CHRISTENSEN, GLASER, FINK,
                       JACOBS, WEIL & SHAPIRO, LLP
15                   BY:  ALISA MORGENTHALER LEVER
                       10250 CONSTELLATION BOULEVARD
16                   LOS ANGELES, CALIFORNIA  90067
                       310-553-3000
17
18   ON BEHALF OF DEFENDANTS CLOONAN, MARLOW,
     HALPERN, LEAHY, AND ARONT:
19
20                   KEATS MCFARLAND & WILSON, LLP
                       BY:  LARRY W. MCFARLAND
21                   9720 WILSHIRE BOULEVARD
                       BEVERLY HILLS, CALIFORNIA  90212
                       310-777-3750
22
23
24
25
0  1                      I N D E X
   2                                          PAGE
   3   MOTIONS.....................................   5
   4
   5
   6
   7
   8
   9
10
11
12
13
14
15
```

Page 2

EXHIBIT M   PAGE 77

080107 hearing.txt

```
16
17
18
19
20
21
22
23
24
25
P 1        RIVERSIDE, CALIFORNIA; MONDAY, JANUARY 7, 2008; 10:11 A.M.
  2                              -oOo-
  3              THE CLERK:  CALLING CALENDAR ITEM NUMBER FOUR,
  4   CARTER BRYANT, PLAINTIFF, VERSUS MATTEL, CASE NUMBER CV-04-9059
  5   AND THE CONSOLIDATED DOCKET NUMBERS CV-04-9049 AND 05-2727.
  6              MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES FOR
  7   THE RECORD.
  8              MR. NOLAN:  TOM NOLAN, CARL ROTH, AND AMY PARK ON
  9   BEHALF OF MGA.
 10              MS. ANDERSON:  CHRISTA ANDERSON ON BEHALF OF
 11   CARTER BRYANT.
 12              MR. OVERLAND:  MARK OVERLAND ON BEHALF OF
 13   MR. MACHADO.
 14              MR. MCFARLAND:  LARRY MCFARLAND ON BEHALF OF
 15   MS. CLOONAN, MS. LEAHY, MS. MARLOW, MS. ARONT, AND MS. HALPERN.
 16              MS. MORGENTHALER:  ALISA MORGENTHALER, OF CHRISTENSEN
 17   GLASER, ON BEHALF OF NONPARTY FARHAD LARIAN.
 18              MR. TIET:  KIEN TIET ON BEHALF OF NONPARTY STERN
 19   & GOLDBERG.
 20              MR. DELGADILLO:  BRYANT DELGADILLO ON BEHALF OF
 21   NONPARTY KAYE SCHOLER, LLP.
 22              MR. QUINN:  JOHN QUINN AND MIKE ZELLER ON BEHALF OF
 23   MATTEL.
 24              THE COURT:  THE COURT HAS SEVERAL MATTERS BEFORE IT
 25   ON THIS MATTER.  I HAVE THE MOST RECENTLY FILED MGA'S AND
D 1   CARTER BRYANT'S EX-PARTE APPLICATION TO COMPEL NOTICE
  2   DEPOSITIONS; THAT WAS SET BY THE PARTIES, AT LEAST BY THE
  3   MOVING PARTY, FOR HEARING FOR THIS MORNING.  I DID RECEIVE THE
  4   OPPOSITION, AND I HAVE THAT.  I THEN HAVE THREE MOTIONS BROUGHT
  5   BY MATTEL; THE MOTION REGARDING THE SEPTEMBER 28, 2000 [SIC]
  6   DISCOVERY MASTER'S ORDER; THE SECOND MOTION IS A MOTION
  7   REGARDING THE AUGUST 27, 2007 COURT ORDER; AND THEN FINALLY, WE
  8   HAVE THE MOTION BROUGHT BY MATTEL, BASICALLY A CLARIFICATION
  9   ORDER, OR REQUEST FOR A CLARIFICATION ORDER, IN TERMS OF WHAT
 10   THE DISCOVERY MASTER HEARS AND DOESN'T HEAR REGARDING THE THIRD
 11   PARTIES.
 12              I HAVE DOWN HERE IN MY NOTES THAT 'JUDGE INFANTE
 13   HEARS ALL DISCOVERY MOTIONS.'
 14              IN ANY EVENT, THAT'S WHAT'S BEFORE ME AT PRESENT.
 15              FIRST OF ALL, IS THERE ANYTHING ELSE THAT IS BEFORE
 16   THIS COURT THAT I'M NOT AWARE OF?
 17              MR. QUINN:  NOT THAT WE KNOW OF, YOUR HONOR.
 18              MR. NOLAN:  NOT THAT WE'RE AWARE OF.
 19              THE COURT:  VERY WELL.
 20              SO THOSE ARE THE FOUR MATTERS THAT I WANT TO TAKE UP.
 21              LET ME TAKE UP THE MOTIONS FIRST, AND THEN I'LL TAKE
 22   CARE OF THE EX-PARTE, JUST TO DEAL WITH THEM IN THE
 23   CHRONOLOGICAL ORDER THAT I'VE RECEIVED OR REVIEWED THEM.
 24              THE FIRST MOTION THAT I'LL TAKE UP -- IT'S DOCKET
 25   ENTRY NUMBER 1134; IT'S THE MOTION REGARDING THE SEPTEMBER 28,
D 1   2007 DISCOVERY MASTER ORDER.  I BASICALLY DIVIDED THIS INTO TWO
  2   PARTS.  WHAT I'M GOING TO DO IS GIVE YOU MY TENTATIVE THOUGHTS
  3   ON IT, AND THEN I'LL CERTAINLY ENTERTAIN WHATEVER ORAL ARGUMENT
```

Page 3

EXHIBIT 11  PAGE 78

080107 hearing.txt

```
 4   COUNSEL WISHES TO MAKE AFTER I'VE GIVEN MY THOUGHTS.
 5             THE FIRST PART OF THIS ORDER THAT I'VE CONSIDERED IS
 6   THE REQUEST TO EXTEND OR PROVIDE ADDITIONAL TIME FOR MATTEL TO
 7   DEPOSE CARTER BRYANT.  THE COURT IS MINDFUL OF THE STANDARD OF
 8   REVIEW OF THE DISCOVERY MASTER'S ORDERS, AND IN LIGHT OF THE
 9   STANDARD OF REVIEW, THE COURT IS DISINCLINED TO EXTEND THIS
10   TIME ANY FURTHER.
11             THAT IS NOT TO SAY THAT IF I WAS OPERATING WITH A
12   CLEAN SLATE THAT I WOULD NOT BE PERSUADED BY MATTEL'S ARGUMENT
13   THAT THE AMOUNT OF TIME TO DEPOSE CARTER BRYANT SHOULD NOT HAVE
14   BEEN LONGER TO BEGIN WITH, BUT THE STANDARD HERE IS WHETHER OR
15   NOT THE LEGAL FINDINGS BY THE DISCOVERY MASTER, BY
16   JUDGE INFANTE, WERE CLEARLY ERRONEOUS OR WHETHER THERE WAS ANY
17   CLEAR FACTUAL ERRORS.
18             THERE'S NO DISPUTE, I DON'T THINK, IN TERMS OF ANY
19   FACTUAL FINDINGS THAT THE DISCOVERY MASTER MADE, AND THERE'S
20   NOTHING CLEARLY ERRONEOUS ABOUT HIS LEGAL CONCLUSION; SO IN THE
21   ABSENCE OF THAT, MY TENTATIVE IS NOT TO DISTURB THAT FINDING.
22             WITH RESPECT TO THE OTHER DISCOVERY REQUESTS, I GUESS
23   I'M MORE INCLINED TO GRANT SOME LEAVE TO MATTEL TO OBTAIN SOME
24   ADDITIONAL DISCOVERY.  I FEEL THAT A COMBINATION OF EITHER THE
25   STAYS THAT WE IMPLEMENTED IN THE LATTER PART OF LAST YEAR,
 1   COUPLED WITH DELAYS -- AND I'M NOT TRYING TO SUGGEST THAT
 2   ANYONE DID ANYTHING WRONG HERE; I'M SIMPLY SUGGESTING THAT
 3   THERE APPEAR TO HAVE BEEN DELAYS IN THE PRODUCTION OF SOME
 4   DISCOVERY AND THE TIMING OF THE DISCLOSURES, AND THE TIMING OF
 5   THE PROVIDING OF THE DISCOVERY -- THAT MAY, IN FACT, WARRANT
 6   THE LEAVE THAT MATTEL IS SEEKING WITH RESPECT TO THAT
 7   ADDITIONAL DISCOVERY.
 8             AFTER WADING THROUGH THE MATERIALS SUBMITTED TO THE
 9   COURT, THAT'S MY INITIAL SENSE OF THIS FIRST MOTION.
10             SO LET ME HEAR FROM WHOMEVER WOULD LIKE TO SPEAK AT
11   THIS POINT.
12             MR. QUINN, IT'S YOUR MOTION.  YOU MAY PROCEED FIRST.
13             MR. QUINN:  THANK YOU, YOUR HONOR.
14             IF I COULD, PERHAPS, YOUR HONOR, BEGIN WITH THE
15   REQUEST FOR ADDITIONAL DISCOVERY OTHER THAN THE ADDITIONAL TIME
16   FOR THE BRYANT DEPOSITION WHERE THE COURT HAS INDICATED SOME
17   WILLINGNESS TO GIVE FAVORABLE CONSIDERATION TO THAT REQUEST.
18             WHEN YOU START ANY CIVIL LITIGATION, INCLUDING WHAT
19   WAS OBVIOUSLY FROM THE BEGINNING A BUSINESS LITIGATION CASE
20   WHICH WAS HOTLY CONTESTED, WHERE SUBSTANTIAL AMOUNTS WERE AT
21   ISSUE, IT'S UNDERSTANDABLE THAT STILL ONE WOULD TRY TO SET
22   LIMITS ON WHAT THE SCOPE OF DISCOVERY WOULD BE FROM THE OUTSET.
23   IT'S IN THE PARTIES' INTEREST, AND IT'S OBVIOUSLY IN THE
24   COURT'S INTEREST, AND I THINK UNDER THE FEDERAL RULES, THE
25   COURT OBVIOUSLY HAS A DUTY TO TRY TO DO THAT.  AND THE COURT
 1   INITIALLY DID THAT AND SET A LIMIT OF 24 DEPOSITIONS PER SIDE.
 2             AT THE TIME, WE RAISED AN ISSUE THAT WE DIDN'T THINK
 3   THAT WAS GOING TO BE ENOUGH, BUT, WELL ENOUGH, THE COURT SAID,
 4   LET'S SEE WHAT YOU CAN DO; I DON'T WANT TO SAY THOSE ARE SOFT
 5   NUMBERS, BUT LET'S SEE WHAT CAN BE DONE.
 6             IF WE STAND BACK AND LOOK AT WHAT THIS CASE IS NOW
 7   AND WHAT IT'S BECOME, THERE ARE THREE SORT OF MAJOR PARTS TO
 8   IT.  THE FIRST PART, THE PHASE ONE, WHAT HAS NOW BEEN SET UP
 9   FOR THE PHASE ONE TRIAL; RELATES TO THE ORIGIN OF BRATZ AND
10   CLAIMS FOR DAMAGES OR RESTITUTION OR DISGORGEMENT ARISING OUT
11   OF THAT, WHICH, IT'S ALLEGED, RUN IN THE BILLIONS OF DOLLARS.
12   THAT'S SORT OF THE FIRST THIRD.
13             THE SECOND THIRD, WE HAVE MGA'S COUNTERCLAIM, WHICH
14   REALLY ADDRESSES A WHOLE HOST OF DIFFERENT KINDS OF ISSUES IN
15   CONDUCT, ADVERTISING, COMMUNICATIONS WITH LICENSING BODIES,
16   WHICH PUTS IN ISSUE, BY MGA'S ACCOUNT, SOME 200 DIFFERENT
```

Page 4

EXHIBIT  11  PAGE 79

080107 hearing.txt
17   PRODUCTS AND CLAIMS WHICH MGA SAYS AMOUNT TO BILLIONS OF
18   DOLLARS WORTH OF CLAIMS; SO THAT'S SORT OF THE SECOND THIRD.
19             THE FINAL THIRD IS THE CLAIM THAT -- WHEN WE --
20   MATTEL AMENDED ITS COUNTERCLAIM BASED ON EVENTS THAT HAD
21   HAPPENED OR HAD COME TO LIGHT SINCE THE CASE WAS ORIGINALLY
22   FILED, THE TRADE THEFT CLAIMS, THE TRADE THEFT CLAIMS RELATING
23   TO EVENTS IN MEXICO, WHERE, IN FACT, THERE HAD BEEN ARRESTS AND
24   CRIMINAL PROCEEDINGS SIMILARLY IN CANADA, AND WE ALLEGED
25   SIMILAR CONDUCT IN THE UNITED STATES, WHICH RAISED A WHOLE HOST
 1   OF OTHER ISSUES, MOST OF WHICH ARE, PERHAPS, UNRELATED TO BRATZ
 2   ITSELF BUT ARE TRADE SECRET THEFT ISSUES.
 3             EACH OF THOSE THREE PARTS OF THIS CASE, YOUR HONOR,
 4   THEMSELVES, ARE VERY, VERY SUBSTANTIAL CASES WHERE VERY, VERY
 5   SUBSTANTIAL AMOUNTS OF MONEY ARE ALLEGED TO BE AT ISSUE; SO WE
 6   STARTED OUT WITH SORT OF A HORSEBACK ASSUMPTION:  LET'S SEE IF
 7   WE CAN GET IT DONE IN 24 DEPOSITIONS A SIDE.
 8             IN THIS CASE, WHAT THAT BOILS DOWN TO, THEN, IS, FOR
 9   EACH OF THOSE THREE MAJOR PARTS OF THIS CASE, THAT'S EIGHT
10   DEPOSITIONS PER CASE.  AND I SUBMIT, YOUR HONOR, THAT
11   CONSCIENTIOUS LAWYERS, TRYING TO DO A GOOD JOB AND USING THE
12   TOOLS AVAILABLE UNDER MODERN FEDERAL DISCOVERY, SIMPLY COULD
13   NOT ADEQUATELY PREPARE ANY OF THOSE CASES WITH SIMPLY EIGHT
14   DEPOSITIONS.
15             IF THE COURT SAID, REALLY, I'M NOT INCLINED TO BUDGE
16   FROM THAT, WE'D HAVE A VERY, VERY DIFFERENT KIND OF TRIAL, I
17   SUGGEST, THAN WHAT WE USUALLY HAVE IN FEDERAL COURT TODAY.  IT
18   REALLY WOULD BE WITHOUT THE BENEFIT OF THE FULL EXPLORATION OF
19   THE ISSUES UNDER MODERN DISCOVERY RULES; SO I THINK IT'S PRETTY
20   CLEAR THAT THERE DOES NEED TO BE SOME RELIEF FROM THOSE LIMITS.
21             AND WHEN WE LOOK AT MGA'S EX-PARTE APPLICATION, I
22   THINK WE'RE GOING TO SEE -- ALTHOUGH IT DOES RAISE SOME
23   SLIGHTLY DIFFERENT ISSUES, I THINK MGA IS ALSO FEELING THE
24   PRESSURE HERE OF TRYING TO GET DONE EVERYTHING THAT THEY
25   BELIEVE NEEDS TO BE DONE IN ORDER TO PROPERLY PREPARE THIS
A 1   CASE.
 2             THE COURT:  BUT DISCUSS FOR A MOMENT, IF YOU WOULD,
 3   THE IMPACT YOU SEE THIS HAVING ON THE COURT'S CALENDAR IN THIS
 4   MATTER IN TERMS OF SCHEDULING OF THE TRIAL.  BECAUSE WE WENT
 5   DOWN THIS ROAD A LITTLE BIT AT THE END OF LAST YEAR, AND IT WAS
 6   REALLY APPARENT THAT IF I BUDGE FROM THE TRIAL DATES, I OPEN UP
 7   A PANDORA'S BOX IN TERMS OF SCHEDULING ISSUES.  I MEAN, A
 8   NUMBER OF PEOPLE ARE INVOLVED IN THIS THING.  THE IDEA OF
 9   TRYING TO COME BACK TOGETHER ON A DATE THAT WORKS IS GOING TO
10   BE HARD.
11             MR. QUINN:  RIGHT.  AND WE ARE NOT ASKING THE COURT
12   TO CHANGE ANY OF THE SCHEDULE IN ANY RESPECT.
13             THE COURT:  BUT I DON'T WANT TO BE UNREALISTIC
14   EITHER.  I MEAN, IF I DO WHAT YOU'RE ASKING IN TERMS OF
15   DISCOVERY AND IF I DO WHAT THE DEFENSE IS ASKING IN TERMS OF
16   THEIR EX-PARTE APPLICATION, I HAVE REAL CONCERNS ABOUT THE
17   CONSEQUENCES THAT WILL HAVE FOR THE DISCOVERY CUTOFF DATE WHICH
18   IS LATER THIS MONTH.
19             MR. QUINN:  LAWYERS WOULD BE WORKING VERY HARD.  MOST
20   OF THE DEPOSITIONS THAT WE'VE IDENTIFIED, THAT WE'RE ASKING
21   FOR, YOUR HONOR, RELATE TO PHASE TWO; SO THAT DISCOVERY CUTOFF
22   DATE RELATES ONLY TO PHASE ONE.  FEET TO THE FIRE, GUN TO THE
23   HEAD, IT'S CONCEIVABLE THERE WOULD BE DOUBLE -- TRIPLE-TRACK
24   DEPOSITIONS.
25             BUT IF WE NEED TO STICK WITH THE CURRENT DATES -- AND
P 1   WE'RE MINDFUL OF WHAT THE COURT HAS SAID BEFORE ABOUT DATES,
 2   ALTHOUGH I WILL POINT OUT THAT WHEN WE HAD THE STAY, WE DID
 3   LOSE A WEEK.  THE COURT STAYED MATTERS FOR -- I THINK IT WAS A
 4   HARD STAY OF TWO WEEKS AND A SOFT STAY OF A WEEK, WHATEVER IT
                           Page 5

EXHIBIT  11  PAGE 80

080107 hearing.txt

5   WAS; AND THEN THE COURT WENT BACK AND SLIPPED THE DISCOVERY
6   DEADLINE TWO WEEKS, AND WE LOST ONE WEEK THERE.  SO MAYBE THE
7   FACT THAT I'M EVEN BRINGING THAT UP SUGGESTS THAT THERE'S
8   SOMETHING TO WHAT THE COURT SAYS.
9             AND I DON'T MEAN TO SUGGEST THAT IT WOULDN'T BE A
10  DAUNTING SCHEDULE, BUT MY EXPERIENCE IS, LAWYERS, WHEN GIVEN
11  DEADLINES -- AND THERE'S A CERTAIN AMOUNT OF WORK THAT NEEDS TO
12  BE DONE, YOU WORK TOWARD THOSE DEADLINES, AND TO BE SURE, WE'D
13  HAVE TO WORK VERY HARD, BUT I THINK IT COULD BE DONE.
14            MOST OF THE DEPOSITIONS RELATE TO PHASE TWO MATTERS.
15  SEVERAL OF THEM, YOUR HONOR, ARE PURELY HOUSEKEEPING ISSUES.
16  FOR EXAMPLE, CARTER BRYANT SAYS HIS INSPIRATION FOR THE BRATZ
17  DOLLS WAS HE WALKED BY KICKAPOO HIGH SCHOOL IN A SMALL TOWN IN
18  MISSOURI ONE DAY, ON THE WAY HOME FROM WORK, OR DROVE BY IT,
19  AND HE SAW THE KIDS AND THEY HAD THIS SORT OF ETHNIC KIND OF
20  BRATTY ATTIRE AND BEHAVIOR THAT HE SAYS WAS THE INSPIRATION FOR
21  HIS DOLL.
22            WELL, WE'VE GOTTEN THE YEARBOOK FROM KICKAPOO HIGH
23  SCHOOL THAT YEAR, SO WE CAN SEE HOW THE KIDS DRESS, WE CAN SEE
24  WHAT THEY LOOK LIKE, AND WE CAN SEE HOW URBAN THEY WERE.  SO WE
25  ASKED MGA, WILL YOU STIPULATE THAT THIS IS AN AUTHENTIC COPY OF
P 1  THE YEARBOOK?  WE MADE THIS REQUEST A MONTH AGO.  WE HAVEN'T
2   HEARD AN ANSWER ON THAT.  MAYBE THEY ULTIMATELY WILL; MAYBE
3   THEY WON'T.  BUT ONE DEPOSITION ON OUR LIST IS THE DEPOSITION
4   OF A DOCUMENT CUSTODIAN OF KICKAPOO HIGH SCHOOL, THE SOLE
5   PURPOSE OF WHICH, YOUR HONOR, IS TO ESTABLISH THAT THIS IS AN
6   AUTHENTIC COPY OF THE YEARBOOK.
7             AND I DON'T WANT TO SUGGEST THAT THIS KIND OF THING
8   ONLY GOES ONE WAY, YOUR HONOR.  THIS IS A CASE WHERE EVERY
9   FACT, IT SEEMS, IS DISPUTED.  THEY CHIDE US IN THEIR PAPERS FOR
10  TAKING THE DEPOSITIONS OF REPORTERS WHO QUOTE MR. LARIAN, THE
11  FOUNDER AND CEO OF MGA, GIVING AN ACCOUNT OF THE ORIGIN OF THE
12  BRATZ DOLL WHERE HE SAYS, 'I HAD A CONTEST, AN IDEA CONTEST,
13  AMONG MY EMPLOYEES, AND THIS WAS THE WINNING SUBMISSION.'
14            WE TOOK MR. LARIAN'S DEPOSITION AND SAID, 'IS THAT
15  TRUE?'  COULDN'T GET A STRAIGHT ANSWER.  ASKED FOR A
16  STIPULATION.  COULDN'T GET A STRAIGHT ANSWER.  SO WE TOOK THE
17  DEPOSITION OF THE REPORTER.  THE SOLE PURPOSE OF THAT
18  DEPOSITION WAS, 'IS THIS WHAT MR. LARIAN TOLD YOU?'  WE HAD TO
19  DO THAT, OBVIOUSLY, IF WE'RE GOING TO HAVE THE EVIDENCE AT
20  TRIAL.  AND ACTUALLY, THEY THEN CROSS-EXAMINED THE REPORTER FOR
21  MUCH LONGER -- I MEAN, I THINK OUR EXAMINATION WAS A HALF HOUR.
22  THEY THEN CROSS-EXAMINED THE REPORTER FOR MUCH LONGER.
23            SIMILARLY, THERE WAS ANOTHER REPORTER -- THERE'S BEEN
24  VARIOUS ACCOUNTS IN THE PRESS WHERE MR. LARIAN HAS BEEN QUOTED
25  ABOUT THE ORIGIN OF BRATZ -- THERE WAS A SIMILAR DEPOSITION
P 1  WITH ANOTHER REPORTER.  THE COURT WILL SEE ON THIS LIST TWO
2   OTHER REPORTERS WHO WE'D LIKE TO DEPOSE.
3             THERE AREN'T REPORTER SHIELD PROBLEMS.  IT'S JUST,
4   'MADAM REPORTER, IS THIS WHAT MR. LARIAN TOLD YOU,' OR 'IS THIS
5   WHAT THE MGA REPRESENTATIVE TOLD YOU.'
6             THE COURT:  WHY DON'T YOU ADDRESS THE ISSUE THAT I'M
7   DISINCLINED TO GRANT, AND THAT'S THE CARTER BRYANT DEPOSITION.
8             MR. QUINN:  OKAY.
9             A FOOTNOTE, YOUR HONOR, ON THE INTERROGATORIES --
10            THE COURT:  YES.
11            MR. QUINN:  -- WE'RE LIMITED TO 50.  THESE RELATE TO
12  CONTENTION INTERROGATORIES SERVED LAST MARCH; SO IT'S GARDEN
13  VARIETY, STATE ALL FACTS, IDENTIFY ALL WITNESSES.
14            THE COURT:  I'M AWARE OF THAT.
15            MR. QUINN:  NOW, MR. BRYANT, AGAIN, HE'S
16  IDENTIFIED -- IF WE GO BACK TO THE TRI-PART DIVISION OF THE
17  CASE --

EXHIBIT 11 PAGE 81

080107 hearing.txt

18          THE COURT:  AGAIN, DON'T FOCUS ON THE NEED, BECAUSE
19   I'M PROBABLY WITH YOU ON THE NEED TO DO SO.
20          MR. QUINN:  YOUR HONOR, WITH RESPECT TO
21   JUDGE INFANTE, I THINK HIS RULING THAT NINE ADDITIONAL HOURS
22   ARE ADEQUATE TO PROPERLY EXPLORE MR. BRYANT'S KNOWLEDGE WITH
23   RESPECT TO THE OTHER TWO-THIRDS OF THE CASE IS SIMPLY -- I
24   BELIEVE THAT IS ERRONEOUS, YOUR HONOR.
25          THE COURT:  AS A MATTER OF LAW?
0 1          MR. QUINN:  I WOULD SAY SO.
 2          THE COURT:  HOW?
 3          MR. QUINN:  THERE ARE SOME -- I MEAN, WHAT ARE THE
 4   FACTS THAT WE KNOW?
 5          THERE ARE SOME 200 PRODUCTS, BRATZ PRODUCTS, AT
 6   ISSUE, MGA SAYS.  THEY SAY THAT HE'S ONE OF TWO PEOPLE WHO HAS
 7   UNIQUE KNOWLEDGE AS TO ALL OF THOSE PRODUCTS.  JUST ON THE FACE
 8   OF IT, YOUR HONOR, NO REASONABLE LAWYER, I SUBMIT, COULD
 9   REASONABLY CONCLUDE THAT THAT'S ADEQUATE TIME IN WHICH TO
10   EXAMINE HIM ON THAT SCOPE OF MATERIAL.
11          THE COURT:  I UNDERSTAND YOU DISAGREE THAT THAT'S NOT
12   ENOUGH TIME.
13          MR. QUINN:  RIGHT.
14          THE COURT:  BUT AS A MATTER OF LAW, WHEN
15   JUDGE INFANTE LOOKED AT THIS, HE HEARD, PRESUMABLY, ALL OF
16   THESE ARGUMENTS, AND HE CONCLUDED THAT IT WAS.
17          I DON'T KNOW HOW I, AS A REVIEWING COURT, AT LEAST
18   WITH RESPECT TO THIS ISSUE, CAN SAY THAT AS A MATTER OF LAW,
19   THAT THAT WAS AN INCORRECT OR LEGALLY UNSOUND FINDING.
20          MR. QUINN:  IT WOULD BE MY UNDERSTANDING, YOUR HONOR,
21   THAT AT SOME POINT, IF A --
22          THE COURT:  CERTAINLY, AT SOME POINT.
23          MR. QUINN:  I WOULD REFER THE COURT BACK TO THE
24   HEARING WE HAD LAST SUMMER WHERE JUDGE INFANTE HAD ENTERED AN
25   ORDER, BEFORE THE SKADDEN ARPS FIRM WAS INVOLVED AND THE
0 1   O'MELVENY FIRM WAS INVOLVED, REQUIRING MGA TO PRODUCE DOCUMENTS
 2   BY A CERTAIN DATE.  I THINK IT WAS THE END OF JUNE OR THE FIRST
 3   OF JULY, AND THEY WERE IN HERE SEEKING RELIEF FROM THAT, SAYING
 4   THAT 'WE CAN'T DO IT.'
 5          AT THAT TIME, THIS COURT LOOKED AT THAT AND SAID,
 6   'WELL, I THINK SOME ADDITIONAL TIME IS APPROPRIATE,' AND I
 7   BELIEVE GAVE THEM AN ADDITIONAL TWO WEEKS OR 30 DAYS.  I
 8   FRANKLY DON'T RECALL WHAT IT WAS.  WE DIDN'T TRIP OVER THE
 9   ISSUE ABOUT WHETHER THE THEN-DEADLINE OF JUNE 30TH OR JULY 1ST
10   WAS A CLEARLY ERRONEOUS DEADLINE OR NOT.  IT SEEMED LIKE THE
11   APPROPRIATE THING TO DO TO THE COURT, AND THE COURT GRANTED
12   SOME ADDITIONAL TIME.
13          I MEAN, I THINK THIS IS AT LEAST A COMPELLING CASE,
14   GIVEN THE CENTRALITY OF THIS WITNESS TO ALL OF THOSE ISSUES ON
15   THE OTHER TWO-THIRDS OF THE CASE, YOUR HONOR.
16          I GUESS THAT'S THE BEST I CAN RESPOND ON THAT.
17          THE COURT:  VERY WELL.  THANK YOU, MR. QUINN.
18          MR. NOLAN?
19          MR. NOLAN:  YOUR HONOR, WOULD YOU PREFER TO HEAR FROM
20   CARTER BRYANT COUNSEL WITH RESPECT TO THAT FIRST ISSUE?
21          THE COURT:  I WILL LEAVE THAT UP TO YOU.
22          MR. NOLAN:  WHY DON'T WE DO THAT, AND THEN I'LL
23   ADDRESS THE SECOND PART.
24          THE COURT:  VERY WELL.
25          MS. ANDERSON:  THANK YOU, YOUR HONOR.  JUST BRIEFLY.
P 1          WE FULLY AGREE WITH THE COURT.  AND THE REASON THAT
 2   MATTEL'S OPENING MOTION, IN WHICH IT SOUGHT ADDITIONAL TIME
 3   WITH MR. BRYANT, DIDN'T ADDRESS THE GOVERNING STANDARD THAT'S
 4   BEFORE YOUR HONOR IN TERMS OF REVIEWING JUDGE INFANTE'S RULINGS
 5   IS BECAUSE THEY COULDN'T.

Page 7

EXHIBIT 1    PAGE 82

080107 hearing.txt

6      THE COURT:  ADDRESS THIS LAST POINT THAT MR. QUINN
7    MAKES, THAT THIS KIND OF ALMOST INTERNAL CONSISTENCY IF THE
8    COURT DID GRANT A FEW EXTRA WEEKS BACK LAST SUMMER.  I
9    CERTAINLY DON'T HAVE THAT BEFORE ME RIGHT NOW.  BUT I'M
10   STRUGGLING TO COME UP WITH A LEGAL JUSTIFICATION FOR DOING SO
11   IN LIGHT OF THIS STANDARD.
12      MS. ANDERSON:  YOUR HONOR, FIRST OF ALL, I DON'T HAVE
13   ANY PAPERS BEFORE ME ABOUT WHATEVER THIS PRIOR RULING WAS, AND
14   I THINK, EVEN IF THE COURT DID GO SOMEHOW BEYOND ITS AMBIT IN A
15   PRIOR RULING, WHICH I DO NOT KNOW EVER HAPPENED, THAT DOESN'T
16   JUSTIFY THEN COMPOUNDING THE PROBLEM AND DOING IT HERE.
17      THE COURT:  TWO WRONGS DON'T MAKE A RIGHT.
18      MS. ANDERSON:  INDEED.
19      AND I SUBMIT, YOUR HONOR, I KNOW THAT MATTEL HAS
20   PLENTY OF ARGUMENTS WHY THEY BELIEVE MR. BRYANT SHOULD SIT FOR
21   THREE ADDITIONAL DAYS OF DEPOSITION AFTER HAVING ALREADY SAT
22   FOR THREE.  BUT I SUBMIT, THE FINDINGS THAT JUDGE INFANTE MADE,
23   INCLUDING THE FACTUAL FINDING ABOUT HIS ASSESSMENT OF WHAT THEY
24   WERE GOING TO DELVE INTO IN THIS DEPO, THIS IS ALL REHASHING OF
25   STUFF THEY'VE HAD AMPLE OPPORTUNITY TO COVER.  NINE HOURS IS A
0 1   LONG TIME THAT THEY WILL HAVE WITH MY CLIENT, YOUR HONOR.
2      THE COURT:  THANK YOU, COUNSEL.
3      MS. ANDERSON:  THANK YOU.
4      THE COURT:  MR. NOLAN?
5      MR. NOLAN:  THANK YOU.
6      YOUR HONOR, I WOULD BE REMISS IF I DID NOT START OUT
7    BY SAYING THAT LAST EVENING, ONE OF THE LAST THINGS I READ IN
8    PREPARING FOR THE HEARING THIS MORNING WAS THE OCTOBER 31ST
9    TRANSCRIPT.  WHEN I WAS HERE, I WAS JUST KIND OF NEW TO THE
10   CASE AND SAYING WE NEEDED JUST A BRIEF STAY UNTIL JANUARY 15TH
11   FOR THE DEPOSITIONS.  AND MR. QUINN PROPERLY POINTED OUT THAT
12   WE'RE A BIG FIRM; ALL FIRMS KIND OF PARACHUTE IN; BASICALLY,
13   SUCK IT UP AND GET READY.
14      I HAVE TO TELL YOU, YOUR HONOR, THAT WE HAVE DONE
15   THAT, AND THE NOTION THAT THERE'S BEEN ANY DELAY, I THINK, IS
16   JUST BELIED BY THE ACTUAL FACTS.  IF I COULD JUST TELL YOU A
17   LITTLE BIT ABOUT WHAT WE'VE BEEN DOING TO GET THIS CASE READY,
18   AND THEN COME UP WITH A PROPOSAL FOR YOU WITH RESPECT TO THE
19   DISCOVERY REQUEST.
20      FROM THE BEGINNING OF TIME IN THIS CASE -- AND QUINN
21   HAS BEEN THERE FOREVER -- THERE'S BEEN 4,600 REQUESTS FOR
22   ADMISSIONS; 2,865 REQUESTS FOR PRODUCTION; 131 30(B)(6) TOPICS;
23   50-PLUS THIRD-PARTY SUBPOENAS; 63 INTERROGATORIES.  WE'VE
24   PRODUCED, MGA HAS PRODUCED, YOUR HONOR, ABOUT 3.8 MILLION.
25      INTERESTINGLY, QUINN EMANUEL, WHO'S BEEN IN THIS CASE
P 1   FOR FOUR YEARS, JUST RECENTLY, ON JANUARY 2ND AND JANUARY 4TH,
2    DOUBLED THEIR PRODUCTION, DROPPED ON US ABOUT A HALF MILLION
3    PAGES OF DOCUMENTS, WITHOUT ANY EXPLANATION AS TO WHY THESE
4    DOCUMENTS WERE NOT PRODUCED.  WE'RE STILL GOING THROUGH THEM.
5      SINCE WE'VE COME INTO THE CASE, SINCE SKADDEN CAME
6    INTO THE CASE AND MR. QUINN DID NOT WANT TO GIVE THE RELIEF
7    THAT WE REQUESTED, WE WENT TO THE MAT, AS DID MGA, AT ENORMOUS
8    EXPENSE.  WE BROUGHT IN ALMOST 50 LAWYERS TO DEAL WITH
9    OUTSTANDING ISSUES.  WE'VE ANSWERED 2,584 REQUESTS FOR
10   ADMISSIONS; WE'VE ANSWERED 101 INTERROGATORIES; WE'VE PRODUCED
11   1.6 MILLION PAGES IN DOCUMENTS.  WE HAD TO FILE 17 OPPOSITION
12   BRIEFS TO MATTEL.
13      IF THERE'S ANY NOTION HERE, YOUR HONOR, THAT WE
14   DISAGREE WITH POSITIONS IN DISCOVERY, WITH ALL DUE RESPECT,
15   MATTEL HAS WRITTEN THE BOOK ON THIS.
16      THE COURT:  THAT'S WHY, MR. NOLAN, I WAS VERY CAREFUL
17   IN MY INITIAL REMARKS THAT I AM NOT SUGGESTING ANY FAULT
18   WHATSOEVER IN YOUR PRODUCTION PATTERN SINCE COMING INTO THE

Page 8

EXHIBIT   11   PAGE   83

080107 hearing.txt

19  CASE.  I'VE READ WHAT YOU'VE PRODUCED, AND I HAVE A SENSE THAT
20  YOU AND YOUR FIRM HAVE WORKED AS HARD AS HUMANLY POSSIBLE TO DO
21  WHAT YOU CAN.
22          I GUESS MY TENTATIVE STEMS MORE FROM WHAT I PERCEIVE
23  AS THE GOOD CAUSE SHOWN FOR SOME ADDITIONAL DISCOVERY IN LIGHT
24  OF WHAT IS BEING PRODUCED, AND THE DELAY IN THE SENSE THAT IT'S
25  BEING PRODUCED NOW AS OPPOSED TO EARLIER.  AND I'M NOT
0 1  SUGGESTING THAT IT NECESSARILY SHOULD HAVE BEEN PRODUCED
2  EARLIER OR THAT YOU COULD HAVE PRODUCED IT EARLIER.  IT'S JUST
3  A SIMPLE FACT THAT THERE ARE MATERIAL THINGS COMING TO LIGHT
4  NOW THAT SEEM TO THE COURT TO PERHAPS JUSTIFY SOME ADDITIONAL
5  DISCOVERY; SOME ADDITIONAL DEPOSITIONS, SOME ADDITIONAL
6  INTERROGATORIES, ET CETERA.
7          SO YOU DON'T NEED TO CONVINCE THE COURT, BECAUSE YOU
8  HAVE ALREADY CONVINCED THE COURT THAT YOU'VE BEEN WORKING
9  EXTRAORDINARILY HARD AND YOU'VE BEEN DOING ALL THAT YOU CAN.
10  THE DISCOVERY IN THIS CASE IS ON A SCALE THAT I PERSONALLY HAVE
11  NEVER SEEN IN MY CAREER; SO THAT'S ESTABLISHED.
12          MR. NOLAN:  OKAY.  THANK YOU VERY MUCH, YOUR HONOR.
13          I JUST NEEDED TO SAY THAT FOR THE PEOPLE WHO HAVE
14  BEEN WORKING AROUND THE CLOCK.  I PROMISED THEM I WOULD PUT
15  THAT PITCH IN.
16          THE COURT:  OKAY.  FAIR ENOUGH.
17          MR. NOLAN:  HERE'S THE POINT, THOUGH, YOUR HONOR.  IF
18  YOU READ THEIR PAPERS CAREFULLY, I WOULD RESPECTFULLY DISAGREE.
19  I DON'T BELIEVE THAT THEY HAVE MADE A GOOD FAITH SHOWING THAT
20  ADDITIONAL DISCOVERY IS WARRANTED OR THAT THEY'RE SURPRISED BY
21  THIS OR THAT THEY WERE PREJUDICED IN ANY WAY BY ANY STAY OR
22  SOFT STAY OR CONTINUANCE FOR A BRIEF PERIOD OF TIME.
23          I THINK THE FACTS ARE QUITE CLEAR AND QUITE DRAMATIC,
24  AND THAT IS, AT A TIME -- TO TAKE YOU BACK TO A TIME WHEN WE
25  WERE NOT HERE; SO THE WORLD WAS AHEAD OF YOU ALL WHEN YOU SET
P 1  THE SCHEDULES.  MATTEL CAME IN ON THEIR DISCLOSURES IN JANUARY
2  OF 2007 AND IDENTIFIED SOME 155 FACTUAL WITNESSES, 70 OF WHICH
3  THEY WANTED TO TAKE A PARTICULAR INTEREST IN.  THEY PROPOSED AT
4  THAT TIME, WITH FULL KNOWLEDGE OF ALL OF THE ISSUES IN THIS
5  CASE, AND HAVING BOTH DISCLOSURES IN FRONT OF THEM, A TOTAL OF
6  50 DEPOSITIONS.
7          NOW, I READ THE TRANSCRIPT, YOUR HONOR, AND WITH ALL
8  DUE RESPECT, I DON'T THINK YOU AND YOUR CLERK -- BECAUSE THE
9  TRANSCRIPT REFLECTS THAT YOU CONSULTED WITH YOUR CLERK WITH
10  RESPECT TO THIS, AND YOU CAME OUT WITH A NUMBER OF 24.  YOU
11  NEVER SAID THAT WAS JUST A HORSEBACK KIND OF ANALYSIS.  YOU
12  SAID THAT THEIR NUMBERS WERE DISCONCERTING TO YOU.  AND I
13  BELIEVE THE REASON WHY YOU SAID THAT IS BECAUSE, YOUR HONOR,
14  THAT ALTHOUGH THIS IS A LARGE CASE, THIS ISN'T THE LARGEST CASE
15  AROUND.
16          I MEAN, MY GOSH, THIS CASE AND THE POSITIONS THAT ARE
17  NOW BEING TAKEN BY MATTEL, WHERE THEY NEED 50 MORE ON TOP OF
18  THE 22 DEPOSITIONS THAT THEY'VE TAKEN, WHICH, WHEN YOU THINK
19  ABOUT IT, JUDGE, IS 22 MORE THAN THEY ASKED YOU FOR AT THE TIME
20  OF THE DISCLOSURE, WITHOUT A LOT OF NEW INFORMATION AVAILABLE.
21  I THINK, OF THE 50 WITNESSES THAT THEY'RE ASKING PERMISSION TO
22  TAKE, ONLY SIX NAMES ARE NEW.  YOU DO THE MATH.  THE OTHERS
23  WERE ALL IN THE DISCLOSURES.
24          THE COURT:  WHAT ABOUT THOSE SIX NEW WITNESSES?
25          MR. NOLAN:  IF THOSE SIX NEW ADDITIONAL WITNESSES,
P 1  YOUR HONOR, RELATE TO PHASE ONE, I'M WILLING TO WORK SOMETHING
2  OUT WITH THEM IN THAT REGARD.  I'M NOT TRYING TO CUT THEM OFF
3  AT THE KNEES AND SAY, 'LISTEN, TOUGH LUCK, YOU BLEW 24.'  HE'S
4  TALKING ABOUT HE HAD TO TAKE THE DEPOSITION OF A REPORTER TO
5  JUSTIFY SOMETHING.  I WASN'T INVOLVED IN THAT.  I GUESS THE
6  SOFT ISSUE HE DIDN'T WANT TO GO TO IS, WHY DID THEY TAKE

Page 9

EXHIBIT  11  PAGE  84

080107 hearing.txt

7   CARTER BRYANT'S NIECE TO TALK ABOUT THE COMPUTER THAT WAS GIVEN
8   TO HER AS A GIFT?  BUT THAT'S ALL IN THE BACK.
9           WHAT I'M INTERESTED IN, YOUR HONOR, IS TRYING THIS
10  CASE ON A SCHEDULE THAT YOU TOLD US TO GET READY FOR.
11          THE COURT:  I AM AS WELL.
12          MR. NOLAN:  MAY I JUST MAKE A -- BECAUSE I THINK,
13  FRANKLY, THINKING ABOUT ALL OF THIS LAST NIGHT, I HAVE A
14  PROPOSAL THAT, I THINK, ALLOWS THIS TO MAKES SENSE.
15          THE COURT:  LET ME HEAR IT.
16          MR. NOLAN:  AND THIS IS NOT BEHIND CURTAIN ONE OR
17  CURTAIN TWO OR CURTAIN THREE.
18          HERE'S WHAT I THINK MAKES ABSOLUTE SENSE, HAVING DONE
19  THIS A LITTLE BIT MYSELF IN BIG CASES BEFORE:
20          MOST OF WHAT THEY'RE ASKING FOR IS PHASE TWO STUFF.
21  RIGHT NOW, IN FRONT OF US, WE'RE STARING AT A HARD CUTOFF OF
22  JANUARY 28TH.  AND WE'LL LIVE WITH IT, JUDGE.  WE CAN LIVE WITH
23  IT, IF WE GET COOPERATION FROM MATTEL.  AND I'LL DEAL WITH THE
24  EX-PARTE APPLICATIONS IN JUST A MINUTE, BUT HERE'S MY PROPOSAL,
25  YOUR HONOR:
P 1         THAT THE PARTIES FOCUS ON PHASE ONE DISCOVERY.  IF
2   JOHN QUINN OR MIKE ZELLER COMES TO ME AND SAYS, 'WE NEED THREE
3   MORE WITNESSES FOR DEPOSITION FOR PHASE ONE ISSUES,' I'M FINE.
4   WE MADE THAT PROPOSAL.  BUT IT'S ALWAYS 50 OR NOTHING.
5           LET'S FOCUS AND NARROW THE ISSUES TO BRING THIS CASE
6   HOME FOR YOU, YOUR HONOR, ON THE SCHEDULE THAT YOU HAVE SET AND
7   EVERYBODY HAS BEEN LIVING UP TO.
8           LET'S TALK ABOUT TODAY SAYING TO THE PARTIES,
9   'COMPLETE DEPOSITIONS BY JANUARY 28TH.  IF YOU HAVE, HOWEVER,
10  SCHEDULING ISSUES' -- BECAUSE ONE, FOR INSTANCE, MATT
11  (UNINTELLIGIBLE) IS OUT OF TOWN.  THEY WANT ISAAC LARIAN ONCE
12  MORE, BUT ISAAC HAS TO GO TO THE HONG KONG TOY FAIR IN NEW
13  YORK; SO THERE'S A SCHEDULING ISSUE WITH RESPECT TO HIM THAT WE
14  MIGHT NOT BE ABLE TO GET HIM IN BEFORE JANUARY 28TH.  LET'S
15  WORK TOGETHER TO IDENTIFY --
16          THE COURT:  SLOW DOWN.
17          MR. NOLAN:  THERE CAN BE A LITTLE BIT OF WIGGLE ROOM
18  ON THE 28TH, BUT WE TRY TO GET EVERYTHING IN BY THE 28TH.
19  WE'LL DOUBLE TRACK; WE'LL TRIPLE TRACK.  I MEAN, EVERYBODY HAS
20  TOO MANY LAWYERS ON THIS CASE.  WE CAN DO THAT.
21          THE COURT:  SO ARE YOU SAYING THAT YOU WOULD BE
22  WILLING TO WAIVE ANY OBJECTIONS OR YOU'D STIPULATE TO AN
23  INCREASE IN THE NUMBER OF DEPOSITIONS?
24          MR. NOLAN:  FOR A VERY LIMITED NUMBER.
25          THE COURT:  FOR PHASE ONE.
0 1         MR. NOLAN:  IF THEY'RE RELATED TO PHASE ONE.
2           WHY SHOULD WE, RIGHT NOW, JUDGE, WITH JUDGE INFANTE
3   BURIED, WITH YOUR HONOR -- I MEAN, THE ELECTRONIC FILING
4   SYSTEM -- I'M AFRAID WE'RE GOING TO BURN THE SYSTEM WITH THE
5   NUMBER OF DOCUMENTS THAT ARE BEING FILED IN THIS CASE.
6           THE COURT:  SOMEONE BROKE THE PLASTIC COURTESY BOX
7   THAT WE HAD IN THE BACK.
8           MR. NOLAN:  THAT WAS QUINN EMANUEL.
9           THE COURT:  YOU'RE SURE IT WAS?
10          MR. NOLAN:  I'M POSITIVE; THEY FILED MORE PAPERS THAN
11  ANYBODY ELSE.
12          THE COURT:  SOMEBODY BROKE IT.
13          MR. NOLAN:  BUT TO BE SERIOUS, YOUR HONOR -- LET'S
14  COME BACK TO MY OTHER PROPOSAL THAT WE FOCUS ON PHASE ONE.
15          THERE ARE HEARINGS THAT ARE CURRENTLY SCHEDULED FOR
16  JUDGE INFANTE ON FEBRUARY 8TH.  THEY'RE ALL, EXCEPT FOR ONE,
17  COMPLETELY BRIEFED.  THEY'RE ALL READY TO GO.  JUDGE INFANTE
18  HAS BEEN DOING THE LORD'S WORK.  IT IS UNBELIEVABLE THE AMOUNT
19  OF WORK THAT HE HAS BEEN DOING IN THIS CASE, ON TOP OF ALL OF
                              Page 10

EXHIBIT 11 PAGE 85

080107 hearing.txt
20    HIS OTHER CLIENTS THAT HE HAS COMMITTED.   AND EVEN KNOWING THAT
21    WE HAVE JANUARY 28TH COMING UP, HE CAN'T HEAR SOME VERY
22    SIGNIFICANT MOTIONS UNTIL FEBRUARY 8TH.
23            THE EXPERT REPORTS IN THIS CASE ARE DUE
24    FEBRUARY 11TH.  MANY OF THE ISSUES ON THE FEBRUARY 8TH CALENDAR
25    ARE ISSUES THAT DIRECTLY RELATE TO GETTING DOCUMENTS NECESSARY
D 1    FOR OUR EXPERT PREPARATION.
 2            HERE'S THE WORST PART OF MY PROPOSAL:  I'M WONDERING
 3    WHETHER OR NOT, WITH RESPECT TO THE MATTERS THAT HAVE BEEN
 4    BRIEFED AND ARE READY TO GO -- AND THERE'S ONE THAT THEIR
 5    OPPOSITION IS DUE A LITTLE BIT LATER THIS WEEK, AND I WAS GOING
 6    TO TWEAK THAT A LITTLE BIT -- I WAS WONDERING WHETHER OR NOT
 7    THOSE MATTERS -- AND THERE'S MAYBE FOUR MATTERS -- POSSIBLY
 8    COULD BE HEARD BY MAGISTRATE BLOCK AS EARLY AS NEXT WEEK.
 9    THEY'RE ALL BRIEFED.
10            ALL OF THE PARTIES COULD GIVE TO THE MAGISTRATE, OR
11    WHICHEVER MAGISTRATE THE COURT MIGHT ASK -- WE COULD GET ALL OF
12    THE BRIEFS TO THEM BY THE CLOSE OF BUSINESS TOMORROW.  WE COULD
13    DO IT BY THE END OF TODAY; THEY'VE ALL BEEN PREPARED.   I THINK
14    YOU HAVE ALL OF THEM THAT HAVE BEEN FILED IN FRONT OF
15    JUDGE INFANTE.  BUT WE COULD PACKAGE THEM ALL TOGETHER, HAVE
16    THOSE MATTERS HEARD NEXT WEEK BY A MAGISTRATE, GET THE RULINGS.
17    IF THE DISCOVERY IS ORDERED, PARTIES MOVE QUICKLY TO GET THE
18    DISCOVERY READY AND GET GOING.
19            THE COURT:   THE CONCERN THAT I WOULD HAVE IS -- YOU
20    KNOW, JUDGE INFANTE HAS DEVELOPED, I'M SURE, A CERTAIN DEGREE
21    OF INSTITUTIONAL MEMORY ASSOCIATED WITH THIS CASE, AND TO
22    SADDLE JUDGE BLOCK OR ANY OTHER JUDGE IN THIS COURT WITH THOSE
23    TYPES OF MOTIONS OUT OF NOWHERE, WITH NO BACKGROUND, I THINK
24    THAT WOULD PROBABLY BE A PRETTY ONEROUS IMPOSITION.
25            MR. NOLAN:  JUDGE BLOCK WAS INVOLVED IN THIS CASE
D 1    EARLY ON, YOUR HONOR.  HE DID RULE ON SEVERAL MATTERS.  I CAN'T
 2    GIVE YOU THE FULL COUNT.
 3            I CAN SAY THAT MANY OF THESE ARE STRAIGHT-UP MOTIONS
 4    THAT PRESENT ISSUES OF FACT THAT ARE NOT NECESSARILY TIED TO
 5    HAVING PARTICIPATED IN THE FIRST THREE QUARTERS OF THE GAME.
 6    IT'S NOT THAT WE'RE BRINGING IN SOMEBODY FROM A NEW TEAM.
 7            I THINK THAT IT'S POSSIBLE.
 8            OTHERWISE, YOUR HONOR, WE'RE LOOKING AT A SCHEDULE IN
 9    FRONT OF JUDGE INFANTE ON FEBRUARY 8TH FOR HEARINGS THAT,
10    DESPITE HIS BEST EFFORTS, HE COULDN'T HANDLE ON JANUARY 3RD.
11    HE'S GOT A TELEPHONIC CONFERENCE TOMORROW ON SOME THIRD-PARTY
12    ISSUES; JANUARY 10TH, HE HAS THAT HEARING.
13            BUT IN ORDER FOR THIS IDEA TO WORK, YOUR HONOR -- I
14    DON'T KNOW WHETHER OR NOT YOU REALLY NEED THE HISTORY.
15            THE GOOD NEWS ABOUT THE LAWYERS IN THIS CASE, THEY
16    REPEAT EVERYTHING IN THE PAPERS; SO FRANKLY, SOMEONE PICKING
17    UP -- I THINK IT'S POSSIBLE, YOUR HONOR.
18            THERE'S ONE OTHER ISSUE THAT WOULD HAVE TO BE
19    CHANGED, AND THAT IS THAT THERE'S AN OPPOSITION THAT MATTEL HAS
20    TO FILE ON THE 11TH.  THEY HAD ASKED FOR -- I THINK THEY GOT
21    SOMETHING, LIKE, A 20-DAY EXTENSION OF TIME TO FILE IT BECAUSE
22    OF THE HOLIDAYS.  IF THEY FILED IT ON THURSDAY RATHER THAN
23    FRIDAY, I COULD COMMIT TO FILING OUR PAPERS ON SUNDAY EVENING
24    SO THAT THOSE COULD ALL BE HEARD NEXT WEEK IN FRONT OF THE
25    MAGISTRATE.
P 1            THEN I WOULD SAY, YOUR HONOR, THAT WE COULD HAVE OUR
 2    HEARING ON JANUARY 17TH, WHICH WOULD BE THE HEARING ON THESE
 3    OUTSTANDING MOTIONS THAT RELATE TO PHASE ONE ISSUES.  WE COULD
 4    GET THE RULING.  IF IT'S GRANTED, WE TAKE THE DISCOVERY RIGHT
 5    AWAY, AND WE HAVE THAT DISCOVERY AVAILABLE FOR THE EXPERTS ON
 6    FEBRUARY 11TH.
 7            NOW, IF JOHN OR MIKE COME TO ME AND SAY WE NEED THREE
                            Page 11

EXHIBIT 11  PAGE 86

080107 hearing.txt
8    MORE DEPOSITIONS, I'M WILLING TO WORK THAT OUT, YOUR HONOR.
9    I'M NOT HOLDING IT TO 22 OR 24.  I WANT TO SET ASIDE THIS
10   NONSENSE ABOUT HOW YOU COUNT DEPOSITIONS.  WE THINK THAT WHEN
11   WE GET TO THE EX-PARTE ARGUMENT, I'LL TELL YOU THAT THAT IS A
12   LITTLE BIT LATE IN THE GAME.  WE THINK IT'S A LITTLE BIT
13   DISINGENUOUS AT THIS POINT IN TIME.  BUT IT CANNOT BE, YOUR
14   HONOR, IT CANNOT BE, THAT WHEN YOU THINK OF THE HARD SCHEDULE
15   THAT YOU PUT IN, WHAT YOU ASKED MGA AND US TO STEP UP TO
16   PROPERLY, NOTHING WRONG WITH THAT.  WE DID IT.  WE DID IT.  TO
17   NOW SOFTEN IT BECAUSE OF ALLEGED PRODUCTION ISSUES, WHERE,
18   FRANKLY, YOUR HONOR, MOST OF THE PRODUCTION HAD ALREADY TAKEN
19   PLACE BEFORE THAT DISCOVERY.
20           THE PROPOSAL THAT I HAVE COME UP WITH, YOUR HONOR,
21   ALLOWS US TO GET PHASE ONE DONE.  IT DOES REQUIRE PHASE TWO TO
22   BE PUT ON THE BACK BURNER.
23           WHEN I SUGGESTED THAT EARLIER, IT WAS A DIFFERENT
24   TIME AND A DIFFERENT PLACE.  YOUR CONCERN, RIGHTFULLY SO, WAS,
25   'GEE, WE'RE GOING TO HAVE MORE BATTLES, NOLAN, BECAUSE WHO CAN
0 1   TELL WHETHER OR NOT IT'S PHASE ONE OR PHASE TWO?'
2            THAT ISSUE IS REMOVED BECAUSE OF THE HARD DISCOVERY
3    STAY ON JANUARY 28TH.  IF WE FOCUS ALL ON PHASE ONE --
4            THE COURT:  LET ME HEAR MR. QUINN'S RESPONSE TO YOUR
5    PROPOSAL.  AND I DON'T MEAN TO MOVE YOU ALONG HERE, BUT WE HAVE
6    TO MOVE YOU ALONG.
7            MR. QUINN, WHAT'S YOUR THOUGHT ON --
8            MR. QUINN:  YOUR HONOR, BECAUSE I'M NOT INTIMATELY
9    FAMILIAR WITH THE MATTERS THAT ARE TEED UP BEFORE JUDGE INFANTE
10   ON THAT PORTION AND THE IDEA THAT BE DEFERRED TO MAGISTRATE
11   BLOCK, I'D LIKE TO DEFER THAT TO MR. ZELLER.
12           BUT BEFORE I DO THAT, IF I COULD RESPOND TO THE
13   PROPOSAL.
14           THE COURT:  PLEASE.
15           MR. QUINN:  WHAT I'M HEARING IS THAT MR. NOLAN IS
16   PREPARED, IF WE REALLY NEED IT, TO GIVE US THREE MORE
17   DEPOSITIONS ON PHASE ONE TOPICS.
18           THE COURT:  I DON'T THINK HE'S LOCKED INTO THREE.  I
19   THINK HE WAS USING THREE AS AN EXAMPLE.  BUT I THINK WHAT HE'S
20   RELUCTANT TO DO IS GIVE YOU A BLANK CHECK.
21           WHAT I'M HEARING IS THAT IF YOU CAN IDENTIFY THOSE
22   PARTICULAR DEPOSITIONS OR THAT PARTICULAR DISCOVERY THAT YOU
23   NEED TO COMPLETE THE PHASE ONE DISCOVERY -- AND I DO ACCEPT THE
24   NOTION THAT WE'RE AT A DIFFERENT POINT NOW THAN WE WERE SEVERAL
25   MONTHS AGO IN TERMS OF BEING ABLE TO IDENTIFY WHAT IS PHASE ONE
0 1   AND PHASE TWO.  I MEAN, WE SHOULD BE NEARING THE END.  YOU
2    SHOULD HAVE A PRETTY CLEAR SENSE OF WHAT YOU NEED TO TRY YOUR
3    CASE AND WHAT THEY NEED TO TRY THEIR CASE.
4            MR. QUINN:  RIGHT.
5            THE COURT:  I THINK WE SHOULD BE AT A POINT WHERE
6    PEOPLE OF THE CALIBER THAT ARE GATHERED HERE SHOULD BE ABLE TO
7    SAY, 'THIS IS WHAT WE NEED TO PIN DOWN BEFORE WE CAN GO TO
8    TRIAL.'  AND YOU NEED SOME MORE; THEY NEED SOME MORE; LET'S GET
9    THAT DONE.
10           THAT SUGGESTION IS SOMETHING THAT RESONATES WITH THE
11   COURT QUITE WELL.  IT REQUIRES THE LEVEL OF MATURITY THAT IS
12   NOT ALWAYS PRESENT IN LITIGATION, BUT I TRUST IS PRESENT IN
13   THIS COURTROOM.
14           MR. QUINN:  YOUR HONOR, I THINK THERE IS SOME WISDOM
15   THERE.  THE DEVIL IS IN THE DETAILS.
16           THE COURT:  AS ALWAYS.
17           MR. QUINN:  LET ME SAY THAT JUST, FOR EXAMPLE, THE
18   WEEK BEFORE LAST, WE TOOK -- AND THIS IS SOMETHING THAT
19   HAPPENED SINCE THIS MOTION WAS FILED -- WE TOOK THE DEPOSITION
20   OF A PERSON NAMED VERONICA MARLOW, WHO IS THEIR VENDOR FOR
                              Page 12

EXHIBIT 11   PAGE 87

080107 hearing.txt
```
21   FASHION DESIGN FOR BRATZ, AND LEARNED IN THE COURSE OF THAT
22   DEPOSITION THAT THREE MATTEL EMPLOYEES OTHER THAN CARTER BRYANT
23   HAVE BEEN WORKING ON BRATZ FOR YEARS.  THAT WAS THE TESTIMONY.
24              THIS WAS NEWS TO US.
25              MOREOVER, SHE TESTIFIED THAT SHE HAD A CONVERSATION
P 1   WITH AN MGA EXECUTIVE ABOUT THIS, WHERE SHE REFUSED TO ANSWER
 2   POINTED QUESTIONS ABOUT WHETHER THERE WAS SOMEBODY ELSE AT
 3   MATTEL WORKING ON THIS.
 4              I SUBMIT, YOUR HONOR, THAT IS BLOCKBUSTER TESTIMONY,
 5   IN OUR VIEW.  WE THOUGHT THIS WAS JUST CARTER BRYANT; SO
 6   THERE'S THREE EMPLOYEES, TWO OF WHICH ARE FORMER EMPLOYEES NOW,
 7   AND THIS EXECUTIVE, MEL WOODS -- HIS NAME ISN'T EVEN IN THIS
 8   LIST THAT WE'VE SUBMITTED -- THAT I THINK WE NEED TO TAKE THEIR
 9   DEPOSITIONS.
10              NOW, MR. NOLAN BANDIED ABOUT THE NUMBER OF 50.  THE
11   NUMBER ISN'T 50.  WE'VE LISTED THE DEPOSITIONS IN OUR PROPOSED
12   FORM OF ORDER THAT WE SUBMITTED TO THE COURT.  I DO THINK WE
13   COULD SIT DOWN AND SAY THIS GROUP -- AND MOST OF THEM ARE -- IS
14   TRULY JUST PHASE TWO.  THERE'S GOING TO BE A SIGNIFICANT
15   CATEGORY THAT ARE BOTH PHASE ONE AND PHASE TWO, AND THEN THERE
16   WILL BE SOME SMALLER NUMBER WHICH ARE PHASE ONE ALONE.
17              THE COURT:  THIS IS HELPFUL IN TERMS OF THE COURT
18   FASHIONING AN ORDER FOR THIS MOTION.
19              MR. QUINN:  IN TERMS OF MR. BRYANT, YOUR HONOR, AND
20   WHAT HAPPENED LAST FALL -- AND COUNSEL FOR MR. BRYANT SAID SHE
21   DIDN'T HAVE ANYTHING BEFORE HER ABOUT THE ORDER THAT THE COURT
22   ENTERED.  WE RAISED THIS IN OUR MOVING PAPERS.  WE CALLED THE
23   COURT'S ATTENTION -- REMEMBER WHEN THEY WERE HERE BEFORE,
24   ASKING TO CUT SOME SLACK FROM THE MAGISTRATE'S ORDER.  IN THE
25   MOVING ORDERS, PAGE 24, WE DISCUSSED THAT, AND AGAIN IN OUR
0 1   REPLY PAPERS ON PAGE 11; SO I SUBMIT, WE DID TEE UP THAT ISSUE.
 2   THIS IS AT LEAST AS COMPELLING A SITUATION TO TAKE ANOTHER LOOK
 3   AT WHAT JUDGE INFANTE RULED.
 4              WITH RESPECT TO THE NIECE, THE NIECE HAD HIS
 5   COMPUTER.  WE WENT THROUGH A RUNAROUND TO GET HIS COMPUTER.  WE
 6   FOUND THIS 'EVIDENCE ELIMINATOR' -- THAT'S THE NAME OF A
 7   PROGRAM; IT'S NOT A GREAT NAME -- ON THE COMPUTER, AND JUST TO
 8   GET ASSURANCE THAT SOMEBODY WASN'T GOING TO SAY -- NOW, TELL ME
 9   I'M BEING TOO DEVIOUS AND OVER THINKING THIS HERE -- THAT
10   SOMEBODY MIGHT SAY THE NIECE PUT 'EVIDENCE ELIMINATOR' ON THE
11   COMPUTER.  WE TOOK HER DEPOSITION FOR ONE HOUR AND 15 MINUTES;
12   THAT WAS IT.
13              SO IF THE PROPOSITION IS THAT --
14              THE COURT:  A LONG TIME TO ASK A QUESTION.
15              MR. QUINN:  YEAH.
16              THE COURT:  ALL RIGHT.
17              MR. QUINN:  IF THE PROPOSITION IS THAT MR. NOLAN AND
18   I SHOULD SIT DOWN AND FIGURE OUT WHICH ARE TRULY PHASE ONE AND
19   WHICH ARE SORT OF A MIX AND WHICH ARE PHASE TWO AND WE CAN
20   FORGET ABOUT FOR NOW, I'M SURE WE CAN DO THAT.  BUT, AGAIN, I
21   UNDERSCORE THE IDEA, IT'S NOT GOING TO BE THREE, AND IT'S NOT
22   GOING TO BE TEN; IT'S GOING TO BE MORE THAN THAT THAT WE NEED
23   FOR PHASE ONE.
24              THE COURT:  I'LL TRY TO PROVIDE AS MUCH GUIDANCE AS I
25   CAN IN THE COURT'S ORDER.
P 1              MR. ZELLER:  I'D JUST LIKE TO ADD, YOUR HONOR -- AND
 2   I'M NOT TRYING TO FAULT MR. NOLAN -- I WAS THE ONE WHO
 3   DISCUSSED WITH HIS COLLEAGUES THE VERY PROPOSAL THAT HE'S
 4   MAKING HERE NOW, IN WHICH I ASKED WHETHER OR NOT THERE WERE AT
 5   LEAST SOME PEOPLE ON OUR LIST, WHICH WE GAVE TO THEM IN ADVANCE
 6   OF ALL OF THIS, THAT THEY WOULD AGREE TO.  WE GOT AN ANSWER OF,
 7   NO, THAT THEY WOULDN'T AGREE TO ANY OF THEM.
 8              THE COURT:  WELL, HOPEFULLY, THE COURT'S ORDER WILL
```
Page 13

EXHIBIT  17  PAGE  88

080107 hearing.txt

9    PROPEL AND MR. NOLAN'S STATEMENTS TODAY WILL RESOLVE THAT.
10            I'M GOING TO MAKE YOUR JOB A LITTLE EASIER HERE,
11   BECAUSE THE COURT DOESN'T TAKE THE SUGGESTION WELL IN TERMS OF
12   SENDING THIS TO A MAGISTRATE JUDGE AT THIS POINT.  I JUST DON'T
13   THINK THAT WOULD WORK FOR A NUMBER OF REASONS, SOME THAT HAVE
14   NOTHING TO DO WITH -- THAT ARE INTERNAL TO THE COURT'S
15   OPERATIONS.
16            MR. ZELLER:  YOU'RE REFERRING TO THE REFERENCE OF
17   SOME OF THOSE MOTIONS TO JUDGE BLOCK?
18            THE COURT:  OR TO SOME OTHER MAGISTRATE JUDGE, YES.
19            MR. ZELLER:  AND NOT TO BELABOR THE POINT, I BELIEVE
20   THE COURT HAS REACHED A DETERMINATION ON THAT, BUT SOME OF
21   THOSE MOTIONS THAT ARE UP IN FRONT OF JUDGE INFANTE ACTUALLY
22   HEAVILY INVOLVE HIS PRIOR RULINGS AS WELL; SO THAT WOULD BE
23   PARTICULAR INEFFICIENCY, I THINK, ON TRYING TO MOVE THOSE OVER
24   TO JUDGE BLOCK.  THEY ARE NOT DISCRETE ISSUES, AS HAS BEEN
25   SUGGESTED.
0 1            THE COURT:  VERY WELL.
2             I'M GOING TO MOVE ON TO THE MOTION REGARDING THE
3    AUGUST 27, 2007 ORDER.
4             THIS RELATES TO WHETHER OR NOT ALL PARTIES ARE
5    REQUIRED TO SUBMIT THE AFFIDAVIT SUGGESTING OR SETTING FORTH
6    SPECIFICALLY THEIR EVIDENCE RETENTION AND OTHER PRACTICES
7    RELATED TO DOCUMENT RETENTION IN THIS CASE.
8             THE COURT REMEMBERS THE HEARING WELL, AND WHILE IT IS
9    TRUE THAT IN THE COURSE OF DISCUSSING THE MOTION FOR
10   TERMINATING SANCTIONS WHICH WAS BROUGHT BY MGA THAT THE COURT
11   REFERRED DURING THE HEARING TO MATTEL AND TO MGA, I DON'T THINK
12   THE COURT COULD HAVE BEEN MORE EXPLICIT IN ITS ORDER THAT THE
13   ORDER APPLIED TO ALL PARTIES.
14            I DON'T KNOW WHAT LANGUAGE I COULD HAVE USED TO BE
15   CLEARER IN TERMS OF THE SCOPE OF THE ORDER; THAT'S MY TENTATIVE
16   THOUGHTS.  I'LL CERTAINLY GIVE ANYONE WHO WANTS TO ADDRESS IT
17   AN OPPORTUNITY TO DO SO, BUT MY SENSE IS THAT THIS APPLIES TO
18   EVERYBODY.  AND I GUESS I NEED TO HEAR SPECIFICALLY FROM
19   COUNSEL FOR MACHADO GOMEZ, BECAUSE I ALSO TEND TO AGREE THAT
20   THE DECLARATION SUBMITTED BY HIM -- WHICH IT'S NOT CLEAR TO THE
21   COURT WAS EVER FILED, ALTHOUGH I'VE NOW SEEN IT AS IT'S BEEN
22   SUBMITTED IN PAPERS -- IS ANYTHING BUT ADEQUATE TO COMPLY WITH
23   THE COURT'S ORDER REGARDING THE NEED FOR A FILED AFFIDAVIT.
24            COUNSEL?
25            MS. ANDERSON:  THANK YOU, YOUR HONOR.  THIS IS
W 1  CHRISTA ANDERSON FOR CARTER BRYANT.
2             YOUR HONOR, I CERTAINLY CONSIDER MYSELF AND MY FIRM
3    TO BE VERY RESPONSIBLE LAWYERS, AND WE DID NOT UNDERSTAND
4    YOUR HONOR'S ORDER TO REALLY MEAN ALL PARTIES BECAUSE WE READ
5    THE LANGUAGE OF THE ORDER AS INCORPORATING AS ORDERED BY THE
6    COURT DURING THE HEARING.
7             WE DID READ YOUR HONOR'S WORDS VERY CAREFULLY TO TRY
8    TO ASCERTAIN WHETHER WE DID OR DID NOT HAVE TO DO IT.  WE
9    APOLOGIZE IF WE MISREAD THIS ORDER, YOUR HONOR.
10            THE COURT:  THERE'S NO NEED TO APOLOGIZE, BUT PART OF
11   WHAT I REMEMBER OF THE HEARING IS THAT THE ATTORNEY THAT YOU
12   HAD REPRESENTING CARTER BRYANT HAD TO LEAVE FOR A SPEAKING
13   ENGAGEMENT IN THE MIDDLE OF THE HEARING.  I'VE HAD ATTORNEYS
14   NOT SHOW UP FOR HEARINGS; BUT IT LITERALLY WAS THE FIRST TIME
15   THAT I'VE BEEN ON THE BENCH THAT I'VE ACTUALLY HAD AN ATTORNEY
16   WALK OUT IN THE MIDDLE OF A HEARING.
17            SO FOR CARTER BRYANT NOW TO BE SUGGESTING THAT THEY
18   DID NOT UNDERSTAND THE COURT'S ORDER OR DIDN'T HAVE AN
19   OPPORTUNITY TO CHALLENGE THE COURT'S ORDER, IT WOULD BE A GOOD
20   THING NEXT TIME FOR HIM TO STAY FOR THE WHOLE HEARING.
21            MS. ANDERSON:  ABSOLUTELY, YOUR HONOR.
Page 14

EXHIBIT  11  PAGE  89

080107 hearing.txt

22      JUST TO DEFEND OUR POSITION A BIT, IF YOUR HONOR
23  WOULD TOLERATE IT FOR ONE MOMENT, BECAUSE WE WERE NOT THERE,
24  WHEN WE SAW THAT YOUR HONOR HAD INCORPORATED REFERENCE TO --
25      THE COURT:  AGAIN, YOU LEFT.  YOU WERE THERE AT THE
0 1  BEGINNING OF THE HEARING, AND YOU LEFT.
 2      MS. ANDERSON:  INDEED.
 3      WE GOT THE TRANSCRIPT, AND WE EXAMINED IT, AND WE HAD
 4  CONCLUDED THAT BECAUSE THE AFFIDAVIT SEEMED TO BE INTENDED TO
 5  ADDRESS WHO WAS INSTRUCTED TO PRESERVE DOCUMENTS AND WHICH
 6  CATEGORIES OF DOCUMENTS THEY WERE INSTRUCTED TO PRESERVE, AND
 7  BECAUSE THE COURT HAD SAID, AT LEAST DURING THE HEARING, IT
 8  REQUIRED TWO SINGULAR AFFIDAVITS, ONE FROM MGA, ONE FROM
 9  MATTEL; TO US, THAT SUGGESTED THAT THIS WHOLE AFFIDAVIT
10  PROCEDURE DIDN'T SEEM TO BE DIRECTED AT OUR CLIENT.
11      AGAIN, WE DO APOLOGIZE.
12      THE COURT:  IT'S CLEAR NOW.
13      MS. ANDERSON:  YES.  WE WILL TAKE CARE OF THAT,
14  YOUR HONOR.
15      THE COURT:  VERY GOOD.
16      MS. ANDERSON:  ALSO, YOUR HONOR, THERE IS A REQUEST
17  IN HERE.  IT SEEMS TO BE TYPICAL FOR THESE MOTIONS FILED BY
18  MATTEL FOR SANCTIONS.  WE WOULD REQUEST THAT OUR CLIENT NOT BE
19  SANCTIONED, GIVEN THE AMBIGUITY OF THIS SITUATION.
20      THE COURT:  IF IT WAS AMBIGUOUS TO YOU, WHY DIDN'T
21  YOU SEEK CLARIFICATION IN THE INTERVENING MONTHS?
22      MS. ANDERSON:  I SUBMIT, YOUR HONOR, THAT MATTEL
23  EQUALLY SHOULD HAVE SOUGHT CLARIFICATION, BECAUSE WHEN WE READ
24  THE ORDER -- AND WE POINTED THIS OUT TO MATTEL'S COUNSEL -- IT
25  SEEMED TO INCORPORATE BY REFERENCE THE GUIDANCE THE COURT HAD
P 1  GIVEN DURING THE HEARING ABOUT WHO WAS SUPPOSED TO DO IT AND
 2  WHAT WAS SUPPOSED TO BE IN IT.
 3      WE WERE NOT TRYING TO BE DIFFICULT.
 4      YOUR HONOR, FRANKLY, IN THIS LITIGATION, WHICH IS
 5  SCORCHED EARTH LITIGATION IF I'VE EVER SEEN IT, WE'VE SPENT, MY
 6  CLIENT AND MYSELF AND MY FIRM, A LOT OF TIME DEFENDING
 7  OURSELVES AGAINST WHAT WE VIEW TO BE INCESSANT ACTIVITIES BY
 8  MATTEL TO SORT OF MAKE WORK, FILE BRIEFS, DO THINGS FOR
 9  SITUATIONS WHERE WE DO NOT BELIEVE IT IS APPROPRIATE, AND WE
10  THINK IT IS HARASSING.  AND THIS APPEARED TO US TO BE YET
11  ANOTHER SITUATION WHERE WE WERE BEING DRIVEN TO DO THE SAME
12  THING OVER AND OVER AGAIN.
13      THAT IS SORT OF THE CONTEXT OF THE SITUATION WE'VE
14  BEEN DEALING WITH, YOUR HONOR.
15      THE COURT:  THANK YOU, COUNSEL.
16      MR. OVERLAND, DO YOU WISH TO SPEAK ON BEHALF OF
17  MR. MACHADO GOMEZ?
18      MR. OVERLAND:  YES, YOUR HONOR.
19      DOES THE COURT WISH ME TO JUST ADDRESS THE CONTENTS
20  OF THE DECLARATION?
21      THE COURT:  YOU MAY ADDRESS THE COURT'S TENTATIVE ON
22  THIS, AND THAT'S TO MAKE IT CLEAR TO THE PARTIES THAT ALL
23  PARTIES NEED TO SUBMIT THE AFFIDAVIT.  BUT PARTICULARLY WITH
24  RESPECT TO THE DECLARATION THAT HAS BEEN SUBMITTED ON BEHALF OF
25  YOUR CLIENT, I DON'T THINK IT FULLY CAPTURES WHAT THE COURT HAS
P 1  SET FORTH IN THE ORDER.  AND PERHAPS THAT MIGHT BE BECAUSE YOU
 2  DIDN'T HAVE THE SENSE, AS CARTER BRYANT DIDN'T HAVE THE SENSE,
 3  THAT IT FULLY APPLIED.
 4      I HOPE, AFTER TODAY'S ORDER, I'LL MAKE IT AS CRYSTAL
 5  CLEAR AS POSSIBLE THAT IT DOES APPLY TO ALL PARTIES AND THAT AN
 6  ACTUAL AFFIDAVIT NEEDS TO BE FILED WITH THE COURT, SETTING
 7  FORTH EVERYTHING AS REQUESTED IN THE ORDER.
 8      MR. OVERLAND:  AS I UNDERSTAND THE ORDER, IT WAS THAT
 9  ALL PARTIES SET FORTH, IN AFFIDAVIT FORM, THEIR PRESERVATION

Page 15

EXHIBIT 11 PAGE 90

080107 hearing.txt

```
10   EFFORTS AND POLICIES.
11            THE COURT:  ALL YOUR CLIENT STATED IN THE DECLARATION
12   IS THAT HE HAS NOT KNOWINGLY DESTROYED ANY EVIDENCE.
13            THAT'S NOT A DESCRIPTION IN DETAIL OF THE RETENTION
14   POLICIES.
15            MR. OVERLAND:  WELL, HE DOESN'T HAVE A POLICY.  HE'S
16   AN INDIVIDUAL.  IT'S LIKE YOU ASKING ME WHAT MY RETENTION
17   POLICY IS.
18            THE COURT:  I SUSPECT YOU, LIKE I, PROBABLY HAVE
19   PERSONAL FILES AND WE KEEP THINGS OR WE DON'T KEEP THINGS OR WE
20   THROW THINGS OUT AFTER SO MANY YEARS.  WE ALL HAVE OUR OWN
21   POLICIES.  I UNDERSTAND THEY'RE NOT POLICIES IN THE CORPORATE
22   SENSE, BUT WE ALL HAVE OUR CUSTOMS, PRACTICES, HOWEVER YOU WANT
23   TO PHRASE IT.
24            HE'S A SOPHISTICATED BUSINESSMAN, LIKE THE OTHER
25   PARTIES IN THIS CASE, AND I SUSPECT HE HAS SOME -- I WANT TO
P 1  KNOW WHAT HE DOES WITH HIS DOCUMENTS.  AND TO SIMPLY SAY THAT
 2   HE HASN'T KNOWINGLY DESTROYED IS REALLY NOT SUFFICIENT.
 3            MR. OVERLAND:  I UNDERSTAND.  AND WE'D BE WILLING TO
 4   SUBMIT A DIFFERENT DECLARATION.
 5            IF THE COURT COULD BE CLEAR ON EXACTLY WHAT IT IS
 6   THAT MR. MACHADO SHOULD SAY.  IN OTHER WORDS, DOES HE HAVE TO
 7   SAY, 'FROM X DAY, HERE'S WHAT I DID WITH RESPECT TO DOCUMENTS,'
 8   OR 'THIS IS MY NORMAL HABIT OR CUSTOM'?
 9            THE COURT:  I'LL TRY TO BE CLEAR IN THE ORDER THAT I
10   ISSUE TODAY.
11            MR. OVERLAND:  OKAY.  VERY WELL.
12            THE COURT:  THE LAST MOTION BEFORE THE COURT IS THE
13   MOTION CONCERNING DISCOVERY BEFORE JUDGE INFANTE.
14            AGAIN, THE ORDER SEEMS QUITE CLEAR.  IT RESTS ON
15   FEDERAL RULES OF CIVIL PROCEDURE 53.  OF COURSE, THERE'S
16   MULTIPLE PROVISIONS IN RULE 53 WHICH PERMIT THE APPOINTMENT OF
17   A DISCOVERY MASTER.  ONE PROVISION IS PURSUANT TO A STIPULATION
18   OF THE PARTIES, BUT THE THIRD PROVISION IS PURSUANT TO THE
19   COURT'S ORDER THAT THIS IS AN APPROPRIATE CASE FOR THE
20   APPOINTMENT OF A DISCOVERY MASTER.
21            I'M CERTAINLY SYMPATHETIC TO THE ARGUMENT BEING MADE
22   THAT IT'S AN EXCEPTIONAL AND RARE PROCEDURE FOR THE COURT TO
23   INVOKE.  BUT I THINK JUST THIS RECORD ALONE, MR. NOLAN'S
24   RECITATION OF THE DISCOVERY PRODUCED IN THIS CASE, CLEARLY
25   SUGGESTS THAT THIS IS A PRETTY UNIQUE CASE.  AND THIS IS A CASE
P 1  WHICH, AFTER CONSULTATION WITH JUDGE BLOCK, THE COURT MADE THE
 2   DECISION, FOR THE FIRST TIME IN MY CAREER AS A JUDICIAL OFFICER
 3   THAT, YEAH, THIS IS A CASE THAT A DISCOVERY MASTER NEEDS TO BE
 4   APPOINTED.
 5            ALL DISCOVERY WAS REFERRED TO THE DISCOVERY MASTER.
 6            I DON'T KNOW WHAT REALLY NEEDS TO BE CLARIFIED OR
 7   WHAT THE CONFUSION ON THAT IS.
 8            I DON'T SEE THE DUE PROCESS ARGUMENT THAT'S BEING
 9   MADE OR URGED BY THE DEFENSE IN THIS CASE.  CERTAINLY, ANY
10   DECISION BY THE DISCOVERY MASTER IS REVIEWABLE BY THIS COURT.
11   THE RULE ITSELF AND THE COMMENTARY MADE CLEAR, I THINK, THAT
12   THIRD PARTIES, EVEN NONCONSENTING THIRD PARTIES, ARE SUBJECT TO
13   THE PROVISIONS, EVEN TO THE CONTEMPT PROVISIONS.
14            SO I GUESS I DON'T REALLY SEE MUCH OF AN ISSUE ON
15   THIS MOTION, BUT I'LL HEAR FROM ANYBODY WHO WISHES TO SPEAK
16   FURTHER.
17            MR. OVERLAND:  WITH RESPECT TO MR. MACHADO, I THINK
18   THE BASIC PROBLEM WE HAVE IS THAT THE ORDER WAS MADE PURSUANT
19   TO RULE 53, AND RULE 53 REQUIRES PRIOR NOTICE.
20            WE NEVER RECEIVED PRIOR NOTICE.
21            IF YOU LOOK AT 53(B)(1), THAT REQUIRES PRIOR NOTICE
22   TO THE PARTY, AN OPPORTUNITY TO BE HEARD, AN OPPORTUNITY TO
```

Page 16

EXHIBIT 11 PAGE 91

080107 hearing.txt

23    OBJECT.
24         THE COURT:  YOU HAVE AN OPPORTUNITY TO BE HEARD, NOT
25    ON THE APPOINTMENT OF THE DISCOVERY MASTER, BUT ON THE RULINGS
P 1    OF THE COURT.  WITH THE DISCOVERY MASTER, YOU CAN CERTAINLY --
2         MR. OVERLAND:  NO.  WE DO HAVE AN OPPORTUNITY TO BE
3    HEARD ON THE APPOINTMENT.
4         IF THE COURT -- UNLESS IT'S BY CONSENT --
5         THE COURT:  CITE ME TO A CASE, ONE CASE, COUNSEL,
6    THAT SAYS THAT.
7         MR. OVERLAND:  LOOK AT THE LANGUAGE OF 53(B)(1).
8         THE COURT:  THAT'S NOT HOW -- I DON'T BELIEVE I
9    APPOINTED HIM PURSUANT TO.
10        LET ME TAKE A LOOK HERE.
11        53(B)(1) TALKS ABOUT 'THE COURT MUST GIVE THE PARTIES
12   NOTICE AND AN OPPORTUNITY TO BE HEARD.'
13        MR. OVERLAND:  THAT'S RIGHT.
14        THE COURT:  YOU'RE NOT A PARTY.
15        MR. OVERLAND:  WELL, IF THE PARTIES ARE ENTITLED TO
16   NOTICE, THEN CERTAINLY --
17        I AM A PARTY.  MR. MACHADO IS A PARTY.
18        THE COURT:  VERY WELL.
19        AND YOU DID NOT RECEIVE NOTICE?
20        MR. OVERLAND:  NEVER RECEIVED NOTICE OF THAT.
21        THE COURT:  YOU CAME IN THE CASE AFTERWARDS.
22        MR. OVERLAND:  CORRECT.
23        AND MR. MACHADO, THEREFORE, STANDS IN A DIFFERENT
24   POSITION, BECAUSE AS A PARTY, HE'S ENTITLED TO NOTICE BEFORE
25   THE APPOINTMENT OF A SPECIAL MASTER.
D 1        THE COURT:  ANY CASE AT ALL?
2         MR. OVERLAND:  I THINK WE CITED IN OUR PAPERS, YOUR
3    HONOR.
4         THE COURT:  YOU CITE 53 ON PAGE 3 OF YOUR OPPOSITION,
5    COUNSEL, AND YOU CITE TO 53(B)(1), BUT YOU DIDN'T CITE A CASE.
6         MR. OVERLAND:  MAYBE IT'S SELF-EVIDENT.  MAYBE THERE
7    IS NO CASE BECAUSE IT'S SELF-EVIDENT.
8         THE COURT:  CLEARLY, THE RULE ENVISIONS NONPARTIES
9    BEING SUBJECT TO CONTEMPT PROCEEDINGS FOR NOT FOLLOWING THE
10   ORDERS OF THE DISCOVERY MASTER, AND A NONPARTY WOULD NEVER HAVE
11   ANY NOTICE, SO IF A NONPARTY HAD NO NOTICE AND YET THEY'RE
12   SUBJECT TO THE RULE, WHY WOULD NOT A SUBSEQUENTLY-SERVED PARTY
13   BE SUBJECT TO THE RULE?  THAT DOESN'T MAKE ANY SENSE.
14        MR. OVERLAND:  WELL, IT DOESN'T MAKE SENSE BECAUSE
15   PARTIES ARE TREATED DIFFERENTLY.  PARTIES ARE ENTITLED TO
16   NOTICE, ACCORDING TO THE RULE.
17        THE COURT:  WHEN YOU COME INTO AN EXISTING CASE WITH
18   A DISCOVERY MASTER ALREADY PROPERLY APPOINTED, YOU COULD
19   CERTAINLY, I CAN SEE, HAVE GROUNDS TO OBJECT TO THE DISCOVERY
20   MASTER.  AND YOU'VE NEVER DONE THAT SINCE BEING BROUGHT INTO
21   THIS CASE.
22        MR. OVERLAND:  WE ARE DOING IT.
23        THE COURT:  YOU'RE DOING IT NOW.  I UNDERSTAND THAT.
24        MR. OVERLAND:  WE ARE DOING IT, THE FIRST OPPORTUNITY
25   WHEN A MOTION WAS BROUGHT WITH RESPECT TO DISCOVERY IN FRONT OF
@ 1    THE MASTER.
2         THE COURT:  ALL RIGHT.  I'LL RECONSIDER MY POSITION
3    IN LIGHT OF THAT ARGUMENT, COUNSEL.
4         MR. OVERLAND:  THE OTHER THING, YOUR HONOR, IS WITH
5    RESPECT TO MR. MACHADO -- AND I UNDERSTAND THE PROBLEM WITH
6    RESPECT TO THE DISCOVERY ISSUES BETWEEN MATTEL AND MGA, BUT
7    WITH RESPECT TO MR. MACHADO, THERE'S GOING TO BE A DISCRETE
8    DISCOVERY DISPUTE, AND THAT INVOLVES THE FIFTH AMENDMENT CLAIM
9    WITH RESPECT TO SPECIFIC QUESTIONS.
10        WHAT CONCERNS ME IS WHAT I HEARD BEFORE FROM THIS
                               Page 17

EXHIBIT  11  PAGE  92

080107 hearing.txt
```
11   COURT THAT THERE'S A STANDARD OF DEFERENCE TO THE RULING OF THE
12   MASTER.
13              THE COURT:  IT'S THE STANDARD THAT'S SET FORTH IN THE
14   ORDER GOVERNING THE DISCOVERY MASTER.
15              MR. OVERLAND:  I UNDERSTAND.  AND WHAT CONCERNS ME IS
16   THAT THESE RULINGS WITH RESPECT TO MR. MACHADO'S FIFTH
17   AMENDMENT PRIVILEGE ARE GOING TO BIND THE COURT.  THEY ARE VERY
18   IMPORTANT ISSUES WITH RESPECT TO MR. MACHADO.
19              THE COURT:  THEY ARE.  I UNDERSTAND THAT.
20              THANK YOU, COUNSEL.
21              ANYONE ELSE WISH TO BE HEARD ON THIS?
22              AND YOU ARE REPRESENTING THE NONPARTIES?
23              MR. MCFARLAND:  SOME OF THEM.
24              LARRY MCFARLAND ON BEHALF OF MS. CLOONAN, MS. LEAHY,
25   MS. MARLOW, MS. HALPERN, AND MS. ROCK.
 D 1            YOUR HONOR, ONE OF THE THINGS I WOULD LIKE TO ADDRESS
 2   IS, MY UNDERSTANDING, THERE IS A DEARTH OF CASE LAW, I WILL
 3   ACKNOWLEDGE.  WE'VE CITED CASE; THEY'VE CITED CASES.  I DON'T
 4   THINK ANY OF THEM ARE ALL THAT ILLUMINATING, REALLY.  THEY JUST
 5   KIND OF SAY IT.
 6              THE COURT:  RIGHT.
 7              MR. MCFARLAND:  WE UNDERSTOOD WHEN WE READ THAT IT
 8   WAS DONE UNDER SECTION A, WHICH WAS, OF COURSE, BY STIPULATION.
 9   SECTION C, OF COURSE, HAS A FINDING THAT IT CANNOT BE
10   EFFECTIVELY AND TIMELY ADDRESSED BY AN AVAILABLE DISTRICT COURT
11   JUDGE OR MAGISTRATE JUDGE OF THE DISTRICT.  AND CERTAINLY, AS
12   TO MGA AND MATTEL, NO ONE WOULD DISPUTE THAT THERE'S A LOT
13   GOING ON AND A LOT OF ACTIVITY, AND NO ONE IS TALKING ABOUT
14   THAT, THAT ALL OF THOSE MASSIVE, HARD-FOUGHT BATTLES ARE BEING
15   HANDLED BY JUDGE INFANTE.
16              TO MY KNOWLEDGE, THUS FAR, JUDGE INFANTE HASN'T
17   ISSUED ANY BINDING RULINGS WITH RESPECT TO THIRD PARTIES.  IT'S
18   ALL KIND OF COMING UP LATE IN THE GAME.
19              I DON'T KNOW EVERYTHING THAT'S DONE, BUT THAT'S MY
20   UNDERSTANDING.
21              NOW, CERTAINLY, HE'S NOT ISSUED ANY WITH RESPECT TO
22   MY CLIENTS, NOR ARE ANY MOTIONS PENDING IN FRONT OF JUDGE
23   INFANTE WITH RESPECT TO MY CLIENTS.  SO WHAT I'D LIKE TO
24   ADDRESS WITH SOME OF MY TIME IS THIS ISSUE OF UNIFORMITY, WHICH
25   SEEMS TO BE, I THINK, THE MOST POWERFUL ARGUMENT THEY HAVE,
 D 1   THAT THERE NEEDS TO BE SOME HISTORY AND SOME HISTORICAL
 2   KNOWLEDGE.
 3              AND WHAT I WOULD ARGUE, YOUR HONOR, IS THAT CONGRESS
 4   ADDRESSED THAT ISSUE WHEN THEY SET UP THE SYSTEM OF HOW YOU
 5   ISSUE A RULE 45 SUBPOENA.  PRESUMABLY, IF CONGRESS HAD WANTED
 6   EVERY RULE 45 SUBPOENA TO ISSUE OUT OF THIS COURT, REGARDLESS
 7   OF WHERE THE DEPONENT RESIDED, IF THE DEPONENT RESIDED IN TEXAS
 8   OR MAINE OR MINNESOTA, CONSISTENT WITH DUE PROCESS, PRESUMABLY,
 9   CONGRESS COULD HAVE DONE THAT.  BUT CONGRESS DIDN'T.  AND WE
10   HAVE A SYSTEM IN THIS COUNTRY WHERE IF YOU WANT TO ISSUE A RULE
11   45 SUBPOENA FOR A PERSON RESIDING IN TEXAS, IT HAS TO BE ISSUED
12   BY THE DISTRICT COURT IN TEXAS.
13              SO IN THAT CASE, I DON'T THINK I UNDERSTAND, OR MAYBE
14   I'M WRONG, IF YOU BELIEVE THAT THIS ORDER WOULD REQUIRE THE
15   DISTRICT COURT MAGISTRATE OR JUDGE IN TEXAS TO BE DIVESTED OF
16   JURISDICTION AND FOR THIS MATTER TO BE HEARD IN FRONT OF
17   JUDGE INFANTE IN SAN FRANCISCO.
18              IF THAT'S NOT THE CASE --
19              THE COURT:  THAT ISSUE IS REALLY NOT BEFORE THE COURT
20   RIGHT NOW.
21              MR. MCFARLAND:  WELL, I THINK IT IS BEFORE THE COURT,
22   BECAUSE THE ONLY REASON THAT THERE'S THIS UNIFORMITY ISSUE IS
23   BECAUSE MY CLIENT HAPPENS TO RESIDE IN LOS ANGELES.  I DON'T
```
                              Page 18

EXHIBIT __11__ PAGE 9 3

080107 hearing.txt

24 THINK THAT'S A DISTINCTION WITHOUT A DIFFERENCE.  IF UNIFORMITY
25 IS A GOVERNMENT PRINCIPLE, THEN I THINK IT WOULD HAVE TO APPLY
X 1  TO ALL RULE 45 SUBPOENAS.  AND IT CANNOT APPLY.
 2          THE COURT:  BUT THE COURT WOULD CERTAINLY RECONSIDER
 3 THE EFFECT OR THE BREADTH OR REACH OF ITS ORDER IF IT WAS
 4 OPERATING TO DIVEST A DISTRICT JUDGE ON A RULE 45 CHALLENGE IN
 5 TEXAS, FOR EXAMPLE.  THAT'S NOT BEFORE THE COURT RIGHT NOW.
 6          MR. MCFARLAND:  THE OTHER THING, TOO, IS, I THINK IT
 7 ALSO SHOWS HOW THIS IS NOT REALLY BEING ENFORCED BY EVEN MATTEL
 8 IS THAT WHEN YOU GET A RULE 45 SUBPOENA, THERE IS LANGUAGE ON
 9 IT THAT TELLS YOU WHAT TO DO AS THE RECIPIENT.  AGAIN, YOU GO
10 INTO COURT -- YOU KNOW, YOU HAVE THESE RIGHTS UNDER RULE 45;
11 IT'S ALL THERE ON PAGE 2 OF THE STANDARD FORM.
12          THIS ORDER, TO THE EXTENT IT DIVESTS THE THIRD-PARTY
13 DEPONENT OF THOSE RIGHTS -- NO NOTICE WAS EVER GIVEN TO ANY
14 THIRD-PARTY DEPONENT, TO MY KNOWLEDGE, THAT RATHER THAN FOLLOW
15 THE FEDERAL RULES, WHETHER THAT BE WHERE YOU FILE YOUR PAPERS,
16 THE TIMING, ALL OF THOSE OTHER ISSUES, YOU INSTEAD NEED TO
17 FOLLOW THIS ORDER.
18          THE COURT:  LIKE I SAY, THAT'S NOT AN ISSUE THAT --
19 IF THAT ISSUE WERE TO COME UP, COUNSEL, I CAN SEE THAT BEING
20 SOMETHING WHICH THE COURT WOULD NEED TO ADDRESS.
21          MR. MCFARLAND:  AND THE LAST THING, THEN, YOUR HONOR,
22 IS THAT I DO THINK, ESPECIALLY WITH TWO OF MY CLIENTS,
23 MS. MARLOW AND MS. LEAHY, SUBPOENAS HAD ALREADY BEEN SERVED AND
24 OBJECTIONS HAD ALREADY BEEN SERVED, ACTUALLY BEFORE THE FIRST
25 STAY PERIOD BACK IN 2005; SO MATTEL WAS WELL AWARE IN THAT LATE
P 1  2006 TIME FRAME, WHEN THIS STIPULATION AND ORDER WAS PRESENTED
 2 TO THE COURT, THAT THERE WERE DISPUTES, VIS-À-VIS AT LEAST
 3 THOSE TWO OF MY WITNESSES, AND YET NO NOTICE WAS GIVEN TO THEM,
 4 NO OPPORTUNITY TO BE HEARD AT THAT TIME.  AND IF THEY HAD BEEN
 5 HEARD AT THAT TIME, THIS UNIFORMITY KNOWLEDGE THAT NOW EXISTS A
 6 YEAR LATER WOULDN'T BE USED.  IN OTHER WORDS, THEY COULD HAVE
 7 SPOKEN UP AT THAT TIME AND SAID THAT THEY FELT THAT IT WAS
 8 IMPORTANT TO HAVE ACCESS TO A FEDERAL JUDGE.
 9          THE COURT:  SPEAKING OF DEPOSITIONS, I ASSUME THOSE
10 DEPOSITIONS THAT WE LAST DISCUSSED WENT FORWARD IN DECEMBER?
11          MR. MCFARLAND:  I'M PROUD TO SAY, YOUR HONOR, THAT
12 ALL THREE OF MY WITNESSES APPEARED ON THE DATES THAT I
13 REPRESENTED TO THIS COURT THAT THEY WOULD BE THERE.
14          THE COURT:  EXCELLENT.  I'M VERY PLEASED TO HEAR
15 THAT, COUNSEL.  THANK YOU VERY MUCH.
16          YOU MAY, COUNSEL.
17          MR. DELGADILLO:  BRYANT DELGADILLO FOR NONPARTY
18 KAYE SCHOLER.
19          TWO QUICK POINTS.
20          THE FIRST, AS YOU MENTIONED, THE RULES OR TIMING HAD
21 NOT BEEN RAISED.  A POINT OF CLARIFICATION, IT HAS, AT LEAST
22 WITH RESPECT TO KAYE SCHOLER.  WE RESPONDED TO THE OPPOSITION
23 TO THEIR MOTION PURSUANT TO THE FEDERAL RULES ON THE ORDER THAT
24 THEY PROVIDED AS A FIVE-DAY NOTICE PERIOD, FIVE-DAY RESPONSE
25 PERIOD.  WE DIDN'T BELIEVE WE WERE BOUND BY THAT ORDER, AS WE
D 1  ARGUED HERE.  WE RESPONDED IN ACCORDANCE WITH THE FEDERAL RULES
 2 OF CIVIL PROCEDURE.  AND MATTEL'S COUNSEL HAS NOW TAKEN THE
 3 POSITION BEFORE THIS COURT, AS WELL AS BEFORE JUDGE INFANTE,
 4 THAT OUR OPPOSITION IS TIME-BARRED AND SHOULD BE STRICKEN.  SO
 5 IT HAS BEEN RAISED.  WE'VE TAKEN THAT POSITION, THAT WE
 6 COMPLIED WITH THE FEDERAL RULES, WHICH UNDER THE SUBPOENA, THE
 7 RULE 45 SUBPOENA, AS COUNSEL POINTED OUT, THERE WAS NO NOTICE
 8 GIVEN UNDER THE SUBPOENA THAT WE RECEIVED THAT THE OBJECTION
 9 PERIOD, ANY RESPONSE TO A MOTION TO COMPEL, WAS OTHERWISE
10 CHANGED.
11          THEY DID PROVIDE US WITH THE DISCOVERY ORDER IN THE
                              Page 19

EXHIBIT 11 PAGE 94

080107 hearing.txt

12  COURSE OF OUR MEET AND CONFERS, WHEN IT BECAME CLEAR THERE WAS
13  GOING TO BE SOME OBJECTIONS TO THE SUBPOENA AND THAT WE WOULD
14  HAVE TO WORK OUT.  AND MOTION PRACTICE ULTIMATELY RESULTED.
15  THEY DID PROVIDE US WITH THE DISCOVERY ORDER, BUT NOT IN
16  CONNECTION WITH THE ACTUAL SUBPOENA THAT OUR FIRM RECEIVED.
17           ANOTHER POINT IS, JUST TO CLARIFY AS WELL, THE
18  DISCOVERY ORDER SAYS THAT THE PARTIES ARE RESPONSIBLE FOR
19  PAYING FOR THE DISCOVERY REFEREE.  I JUST WANT TO MAKE CLEAR
20  THAT NONPARTIES ARE NOT GOING TO BE REQUIRED TO PAY.
21           THE COURT:  THAT IS CORRECT.
22           MR. DELGADILLO:  THANK YOU, YOUR HONOR.
23           THE COURT:  THAT IS CORRECT.
24           MR. TIET:  KIEN TIET FOR NONPARTY STERN & GOLDBERG.
25       WE'RE IN THE SAME BOAT WITH KAYE & SCHOLER, AND WE'LL
0 1  JUST JOIN IN THEIR ARGUMENT.
 2           THE COURT:  VERY WELL.  THANK YOU.
 3           ANYBODY ELSE?
 4           MS. MORGENTHALER:  ALISA MORGENTHALER FOR NONPARTY
 5  FARHAD LARIAN.
 6           AS MR. NOLAN MENTIONED, THERE HAVE BEEN OVER 50
 7  THIRD-PARTY SUBPOENAS IN THIS CASE.  YET, THIS IS THE VERY
 8  FIRST TIME THAT JUDGE INFANTE IS BEING ASKED TO CONSIDER A
 9  THIRD-PARTY SUBPOENA OR DISCOVERY MATTER THAT WOULD BIND A
10  THIRD PARTY THAT DID NOT CONSENT TO THE DISCOVERY REFERENCE; SO
11  I DON'T THINK SOME OF THE EFFICIENCY ISSUES THAT HAVE BEEN
12  DISCUSSED AND THE COURTS CONCERN WITH INSTITUTIONAL MEMORY
13  APPLY HERE.
14           I THINK THAT THESE ARE ISSUES THAT CAN BE EFFECTIVELY
15  ADDRESSED BY A MAGISTRATE JUDGE, SUCH THAT THE BALANCE WEIGHS
16  IN FAVOR OF CONSIDERING THE DUE PROCESS CONCERNS TO THE
17  NONPARTIES VERSUS THE EFFICIENCY ARGUMENT TO THE PARTIES.
18           THE COURT:  LET ME ASK YOU THE SAME QUESTION.
19           ARE YOU AWARE OF ANY AUTHORITY WHICH PREVENTS THE
20  ASSIGNMENT OF THE THIRD PARTY TO THE DISCOVERY MASTER UNDER
21  53(C).
22           MS. MORGENTHALER:  I'M NOT AWARE OF ANY CASE THAT
23  SAYS THAT SPECIFICALLY.  I'M ALSO NOT AWARE OF ANY CASE MATTEL
24  CITED ON WHERE A NONPARTY HAS BEEN BOUND BY DISCOVERY REFERENCE
25  THAT WAS DONE PURSUANT TO THE STIPULATION OF THE PARTIES, WHICH
L 1  IS THE CASE HERE.
 2           THE COURT:  VERY WELL.
 3           MS. MORGENTHALER:  I THINK ONE OF THE OTHER COUNSEL
 4  MENTIONED THAT THE CASES JUST HAVE NOT BEEN PARTICULARLY CLEAR
 5  ON THIS POINT.
 6           ALSO, JUST ONE FINAL POINT, I THINK THE PREJUDICE TO
 7  THE NONPARTIES THAT IS TAKING PLACE HERE IS ILLUSTRATED BY THE
 8  FACT THAT SOME OF THE EVIDENCE THAT MATTEL IS RELYING ON IN
 9  SUPPORT OF THIS MOTION, THE DECLARATION OF BRIDGET HAULER, THE
10  THIRD PARTIES HAVE NEVER SEEN, BECAUSE THAT DECLARATION IS
11  FILED UNDER SEAL; IT'S DESIGNATED AEO UNDER THEIR PROTECTIVE
12  ORDER.  SO SINCE WE'RE NOT ATTORNEYS IN THE CASE, WE CAN'T SEE
13  IT.  I'VE NEVER SEEN IT.  WE CAN'T GET IT OFF PACER.
14           AND OTHER PARTICULAR LOGISTICAL PROBLEMS, WE NEVER
15  RECEIVED HARD COPIES OF THE REPLIES WE HAD TO GET, BECAUSE
16  INITIALLY, THE THIRD PARTIES WERE NOT ON PACER AND --
17           THE COURT:  THAT'S A PROBLEM WITH THE PROTECTIVE
18  ORDER, THOUGH.  THAT'S NOT A PROBLEM WITH THE DISCOVERY MASTER
19  PROCEDURE.
20           MS. MORGENTHALER:  RIGHT.  BUT I'VE SEEN SOME OF THE
21  EVIDENCE THAT THEY'RE RELYING ON HERE.
22           THE COURT:  I AGREE, THAT SOUNDS LIKE A PROBLEM AND
23  THAT NEEDS TO BE ADDRESSED, BUT THAT'S NOT BEFORE THE COURT
24  RIGHT NOW.  AND PERHAPS IT SHOULD BE.  I INVITE THE THIRD

EXHIBIT  11  PAGE 95

080107 hearing.txt

```
25   PARTIES TO TAKE THAT UP AS APPROPRIATE, AND I WOULD TRUST THAT
D 1   MATTEL WOULD BE ABLE TO ADDRESS THAT ISSUE IN A MEET AND
 2   CONFER.  BUT THAT'S CERTAINLY SOMETHING THAT NEEDS TO BE
 3   ADDRESSED.  EVERYONE WHO HAS BEEN AFFECTED BY AN UNDER-SEAL
 4   DOCUMENT IN LITIGATION -- NOT TO ISSUE AN ADVISORY OPINION, BUT
 5   I'LL GIVE YOU THE ADVICE THAT THEY SHOULD SEE IT; THAT SEEMS
 6   PRETTY SELF-EVIDENT.
 7           I CERTAINLY AGREE WITH YOU, COUNSEL.
 8           MS. MORGENTHALER:  THANK YOU, YOUR HONOR.
 9           THE COURT:  THANK YOU.
10           MR. NOLAN, DO YOU HAVE ANYTHING ON THIS?
11           MR. NOLAN:  THE ONLY THING IS, I WANTED TO MAKE SURE
12   I COME BACK TO THE EX-PARTE APPLICATION THAT WE HAVE.
13           THE COURT:  I HAVEN'T FORGOTTEN ABOUT IT.
14           MR. NOLAN:  OKAY.  THEN I'LL WAIT.
15           THE COURT:  LET'S GIVE MATTEL A CHANCE TO RESPOND TO
16   THIS THIRD AND FINAL MOTION THAT'S BEEN BROUGHT.
17           COUNSEL, REALLY, MY TENTATIVE IS IN YOUR FAVOR, BUT I
18   WOULD LIKE YOU TO ADDRESS THIS RULE 45 ISSUE THAT'S BEEN RAISED
19   BY MR. OVERLAND AND SOME OF THE OTHER COUNSEL.
20           MR. ZELLER:  I THINK, NUMBER ONE, THAT IT IS NOT
21   BEFORE THE COURT AT THIS JUNCTURE.  IF PEOPLE HAVE
22   PARTICULAR COMPLAINTS --
23           THE COURT:  IT IS AND IT ISN'T, THOUGH, BECAUSE IT'S
24   BEFORE -- AND I UNDERSTAND THAT IT'S NOW BEFORE JUDGE INFANTE,
25   AND THE ORDER IS BEING USED BY YOU AS A RESPONSE BEFORE
P 1   JUDGE INFANTE, AND WE'RE GETTING PRETTY CLOSE TO THE END OF
 2   DISCOVERY HERE.  SO IF THIS IS A PROBLEM -- IT APPARENTLY
 3   APPEARS TO BE SOMETHING THAT WE DIDN'T FULLY ADDRESS OR THINK
 4   THROUGH, PERHAPS, WHEN WE WERE DOING THE DISCOVERY MASTER
 5   MOTIONS.
 6           MR. ZELLER:  SURE.
 7           ON THAT NOTE, I'LL BE HAPPY TO ADDRESS IT AS TO THE
 8   SUBSTANCE.
 9           THE COURT:  PLEASE.
10           MR. ZELLER:  NUMBER ONE, THE MOTION THAT WE HAVE
11   BROUGHT ONLY ASKED FOR CONFIRMATION OF THE DISCOVERY MASTER'S
12   AUTHORITY AS TO THIRD PARTIES WHO ARE WITHIN THE PERSONAL
13   JURISDICTION OF THE COURT.  THAT IS CONSISTENT WITH RULE 45.
14   THAT IS ALL THAT WE'VE ASKED THE COURT TO DO.  NONE OF THE
15   PARTIES HERE TODAY DISPUTE IN ANY WAY THAT THEY ARE CALIFORNIA
16   RESIDENTS WHO ARE SUBJECT TO THAT AUTHORITY.
17           THE COURT:  FAIR ENOUGH.
18           AS FAR AS THAT'S CONCERNED, I THINK I'M WITH YOU,
19   ALTHOUGH I DO WANT TO LOOK AT THIS ONE ISSUE RAISED BY
20   MR. OVERLAND.  BUT ADDRESS THIS RULE 45 PROBLEM.
21           MR. ZELLER:  I THINK THAT IT MAY NOT BE -- THERE'S A
22   UNITARY ANSWER TO THE SECOND PART OF THE RULE 45 ISSUE THAT WAS
23   RAISED.  LET ME START OFF WITH THE PARTIES WHO ARE INVOLVED
24   HERE.
25           WHO ARE WE TALKING ABOUT?
D 1           NUMBER ONE, KAYE SCHOLER, WHO ARE ISAAC LARIAN'S
 2   ATTORNEYS.  THERE IS NO QUESTION THAT THEY HAVE HAD NOTICE.
 3   WHEN WE ENGAGED THEM, AS KAYE SCHOLER ADMITS, WE PROVIDED THEM
 4   WITH A COPY OF THE DISCOVERY MASTER ORDER, AND WE ADVISED THEM
 5   AS TO, CERTAINLY, WHAT OUR VIEWPOINT WAS, AS TO WHO WAS GOING
 6   TO BE DECIDING THESE DISPUTES.
 7           I DON'T SEE THAT AS BEING ANY DIFFERENT THAN,
 8   NECESSARILY, TELLING SOMEONE WHO IS NOT A PARTY IN THE CASE, UP
 9   UNTIL THAT POINT, 'WELL, HERE'S THE NAME OF THE JUDGE WHO IS
10   HANDLING IT.'
11           THE COURT:  SO IS IT YOUR POSITION THAT WITH RESPECT
12   TO EACH OF THESE THIRD PARTIES, YOU HAVE PROVIDED NOTICE?
```

Page 21

EXHIBIT 11   PAGE 96

080107 hearing.txt

```
13              MR. ZELLER:  THAT'S CORRECT.
14         THE COURT:  THEN I'LL LET THE DISCOVERY MASTER TAKE
15  THAT UP, AND I'LL REVIEW THAT IF NECESSARY.
16              MR. ZELLER:  WE DON'T NECESSARILY DISAGREE,
17  YOUR HONOR, THAT OBVIOUSLY, IN A PARTICULAR CASE, PERHAPS THERE
18  WOULD BE SOME ISSUE, PRESUMABLY, THE PARTIES WILL DO EVERYTHING
19  THEY CAN TO RESOLVE IT.  CERTAINLY, WE WOULD GIVE PEOPLE
20  NOTICE.
21              BUT ALL THEY WERE COMPLAINING ABOUT, YOU WILL NOTICE,
22  WAS THAT THE FACE OF THE SUBPOENA DOESN'T MENTION
23  JUDGE INFANTE.  I'M NOT REALLY SURE THAT THAT'S A MEANINGFUL
24  CONSIDERATION AT THIS JUNCTURE.
25              IT CERTAINLY WOULD NOT HAVE ANY MEANING TO A PARTY
P 1  WHO IS OUTSIDE THE COURT'S PERSONAL JURISDICTION, BECAUSE I
2  DON'T THINK WE NECESSARILY DISAGREE THAT IF IT'S AN
3  OUT-OF-STATE PARTY, THEN THAT SUBPOENA IS GOING TO HAVE TO BE
4  DEALT WITH BY A DISTRICT COURT WHO HAS PERSONAL JURISDICTION IN
5  ACCORDANCE WITH THE NORMAL RULES.
6              THE COURT:  RIGHT.
7              MR. ZELLER:  I MEAN, ALL WE'RE TALKING ABOUT HERE ARE
8  PARTIES, NONPARTIES, WHO ARE CLEARLY WITHIN THE JURISDICTION OF
9  THE COURT; SO WE'RE NOT PUSHING THE ENVELOPE ON THAT BY ANY
10  STRETCH OF THE IMAGINATION, YOUR HONOR.
11              THE COURT:  VERY WELL.
12              WHILE YOU'RE AT THE LECTERN, LET'S SHIFT GEARS TO THE
13  EX-PARTE APPLICATION THAT'S BEEN BROUGHT BY MGA AND
14  CARTER BRYANT.
15              MR. QUINN:  I'D BE HAPPY TO ADDRESS IT, YOUR HONOR.
16              THE COURT:  ALL RIGHT.  SOMEBODY.
17              BECAUSE I TEND TO AGREE WITH MGA AND CARTER BRYANT ON
18  THIS ONE.  I DON'T THINK, BASED ON MY READING OF THE LAW -- AND
19  I KNOW THERE'S NOTHING CLEARLY ON POINT, AND YOU BOTH CITE TO A
20  VARIETY OF CASES IN THE COMMENTARY AND IN THE RULE ITSELF, BUT
21  MY SENSE IS THAT THE 30(B)(6) DEPOSITIONS DO NOT COUNT TOWARDS
22  THE NUMBER OF ALLOTTED DEPOSITIONS.  I THINK THAT'S PROBABLY
23  THE SAFEST WAY TO INTERPRET THE STATUTE, THE RULE, AND THE
24  CASES THAT HAVE ATTEMPTED TO GRAPPLE WITH THAT RULE.
25              I UNDERSTAND THAT THEY, FROM YOUR PERSPECTIVE, WENT
P 1  AFIELD OF THE 30(B)(6) TOPICS, BUT THAT'S PERMITTED.  AND IN
2  TERMS OF THE ACTUAL COUNTING, I DON'T THINK THAT IT DOES US ANY
3  GOOD HERE AT THIS POINT TO TRY TO FIGURE OUT HOW FAR AFIELD
4  THEY WENT AND WHETHER THAT COUNTS.
5              MY TENTATIVE WOULD BE TO ONLY COUNT THOSE AS 30(B)(6)
6  DEPOSITIONS -- THOSE WOULD ALL COUNT TOWARDS ONE OF THE MATTEL.
7              MR. QUINN:  I UNDERSTAND, YOUR HONOR.
8              MY FIRST RESPONSE IS, WE'RE DEALING WITH THIS ON AN
9  EX-PARTE BASIS.
10              THE COURT:  I UNDERSTAND THE CONCERN HERE.
11              MR. QUINN:  LET'S SET THAT ASIDE.
12              THE COURT:  IF WE WEREN'T THREE WEEKS AWAY FROM THIS,
13  I'D PROBABLY TELL YOU ALL TO GO TO THE DISCOVERY MASTER.
14              MR. QUINN:  INDEED.  AND THAT WAS GOING TO BE MY
15  SECOND POINT, YOUR HONOR.  I THINK THIS IS AN INFANTE ISSUE.
16              THE COURT:  IT PROBABLY IS, COUNSEL.
17              MR. QUINN:  SO THIRD, I AGREE WITH THE GENERAL
18  PRINCIPAL THAT THAT'S JUST A 30(B)(6) DEPOSITION.  BUT IF YOU
19  TAKE A 30(B)(6) DEPOSITION AND YOU ESSENTIALLY ABANDON -- I'LL
20  GIVE YOU A HYPOTHETICAL NOW -- YOU ABANDON THE TOPIC, YOU
21  ADDRESS THE TOPIC AND THEN YOU GO FAR OFF THE RESERVATIONS, AND
22  YOU'RE REALLY DEPOSING THAT WITNESS AS AN INDIVIDUAL FACT
23  WITNESS, THEN IT'S CONVERTED INTO AN INDIVIDUAL DEPOSITION.
24              THE COURT:  AND I GUESS I UNDERSTAND THAT.
25              MR. QUINN:  THERE'S CASE LAW THAT SAYS THAT.
```

Page 22

EXHIBIT 11  PAGE 97

080107 hearing.txt

```
 1              THE COURT:  I UNDERSTAND THAT ARGUMENT.  BUT YOU
 2  CHOOSE WHO YOU BRING AS YOUR 30(B)(6) WITNESSES, AND THEY
 3  DON'T.  I JUST THINK IT GOES DOWN A DIFFICULT ROAD.
 4              I'M NOT SAYING THIS IS A PERFECT DECISION ON THIS.  I
 5  THINK WE NEED TO COME UP WITH A GROUND RULE, AND I THINK THE
 6  GROUND RULE I'M LEANING TOWARDS IS, LET'S NOT COUNT THE
 7  30(B)(6) WITNESSES TOWARDS THE DEPOSITION TOTAL.
 8              MR. QUINN:  I WOULD POINT OUT, YOUR HONOR, THAT IT
 9  CREATES A POTENTIAL LOOPHOLE THAT TRUCKS CAN DRIVE THROUGH.
10              THE COURT:  I UNDERSTAND IT DOES.  AND THE ONLY THING
11  THAT STOPS THE LOOPHOLE IS THAT YOU GET TO CONTROL THAT; YOU
12  GET TO CONTROL YOUR 30(B)(6) DEPOSITIONS WITNESSES TO A CERTAIN
13  EXTENT AND THEY GET TO CONTROL THEIRS.
14              MR. QUINN:  THE PROBLEM IS, WE DON'T GET TO CONTROL
15  WHAT THEY ASK.
16              THE COURT:  NO.
17              MR. QUINN:  ONCE THE PERSON IS IN THE CHAIR, THEY CAN
18  BE ASKED THINGS OUTSIDE THE SCOPE.
19              THE COURT:  SO PICK WHO YOU PUT IN THE CHAIR
20  CAREFULLY.
21              MR. QUINN:  THE RULE GIVES US, REALLY, SOME
22  REQUIREMENTS THERE.  WE'RE SUPPOSED TO PUT SOMEBODY WHO'S MOST
23  KNOWLEDGEABLE AND NOT TRY TO BE DEFENSIVE AND GIVE THEM
24  SOMEBODY WHO WOULDN'T NECESSARILY HAVE THE BEST KNOWLEDGE ON
25  THE DESIGNATED SUBJECT BUT DOESN'T KNOW ANYTHING ELSE.
P 1              THE COURT:  AND THAT LEADS TO THE OPENNESS AND THE
 2  TRANSPARENCY OF THE WHOLE PROCESS.
 3              MR. QUINN:  THERE YOU GO.
 4              THE COURT:  SO THE EX-PARTE APPLICATION IS GRANTED,
 5  UNLESS MR. NOLAN WANTS TO CONVINCE ME OTHERWISE.
 6              MR. NOLAN:  NO.  I LIKE WINNING.
 7              I THINK IT'S ALSO NICE BECAUSE IT DOESN'T MAKE ME
 8  HAVE TO SAY THAT, GEE, IT'S CURIOUS THAT WHEN WE WERE BACK HERE
 9  ON OCTOBER 15TH --
10              THE COURT:  I UNDERSTAND.  THAT CERTAINLY COLORS THE
11  COURT'S RULING ON THIS AS WELL.
12              MR. QUINN:  BUT, YOUR HONOR, JUST SO WE'RE ALL CLEAR
13  WHAT THE RESULTS OF THE EX-PARTE IS.
14              THE COURT:  I'LL TRY TO WRITE A REAL CLEAR ORDER THIS
15  TIME.
16              MR. QUINN:  THERE'S TEN INDIVIDUALS -- IN ADDITION TO
17  THE 30(B)(6) SUBJECTS, THERE ARE TEN INDIVIDUALS NOW THAT
18  THEY'RE ASKING US TO PRODUCE BY THE 28TH OF JANUARY.
19              THE COURT:  AS YOU SAID EARLIER, MR. QUINN, YOU HAVE
20  A LOT OF WORK TO DO.
21              MR. QUINN:  THANK YOU, YOUR HONOR.
22              THE COURT:  THANK YOU, COUNSEL.
23              GOOD DAY.
24              MR. QUINN:  YOUR HONOR, I ASSUME THEY STILL HAVE TO
25  BE SERVED WITH SUBPOENAS IF THEY'RE NONPARTIES.
 1              THE COURT:  I THINK THAT'S PART OF THE RULES.
 2              MR. NOLAN:  OKAY.  YOUR HONOR, THESE LAST-MINUTE
 3  'HAIL MARY' PASSES CAUSE A LOT OF CONFUSION.  I'VE JUST GOT TO
 4  ADDRESS THIS.
 5              UP UNTIL NOW, MATTEL HAS ALWAYS INDICATED -- FIRST OF
 6  ALL, THEY NEVER OBJECTED TO THE FACT THAT WE DIDN'T ISSUE
 7  SUBPOENAS.  BUT WE'LL ISSUE SUBPOENAS.
 8              BUT MATTEL HAS TO BE AUTHORIZED TO ACCEPT SUBPOENAS,
 9  BECAUSE THEY HAVE OBJECTED IN THE PAST WHEN I'VE TRIED TO SERVE
10  SUBPOENAS OR SOMEBODY HAS SERVED SUBPOENAS ON THEM.
11              WILL THEY ACCEPT SUBPOENAS FOR THESE EMPLOYEES?
12              THE COURT:  MR. QUINN, WILL YOU ACCEPT SUBPOENAS FOR
13  YOUR MATTEL EMPLOYEES?
```

Page 23

EXHIBIT 11   PAGE 98

080107 hearing.txt

14      MR. QUINN: NOT EX-EMPLOYEES. MOST OF THESE ARE
15  EX-EMPLOYEES.
16      AND I'VE GOT TO DEFER TO MR. ZELLER ABOUT THE
17  COMMITMENTS THAT WE'VE MADE BEFORE, WHICH WE STAND BY.
18      MR. ZELLER: WE ABSOLUTELY STAND BY IT. BUT THAT IS
19  NOT A CORRECT STATEMENT OF WHAT'S GOING ON HERE.
20      NUMBER ONE, TWO OF THE PEOPLE WHO ARE IDENTIFIED
21  HERE, MILT ZABLOW AND ROB SIMONEAU, ARE EX-EMPLOYEES. THEY ARE
22  NOT EVEN CURRENT MATTEL EMPLOYEES. THEY'VE NEVER BEEN SERVED
23  WITH A SUBPOENA. WE'VE NEVER BEEN ASKED TO ACCEPT SERVICE OF
24  SUBPOENA FOR THEM. SO THEY ARE EX-EMPLOYEES. THE OTHER
25  PEOPLE, A NUMBER OF THEM, EXCEPT FOR THREE, ARE LOW-LEVEL
@ 1  EMPLOYEES WHO ARE NOT SUBJECT TO RULE 30.
2      NOW, WHAT WE HAVE SAID IN TERMS OF OUR
3  REPRESENTATIONS TO ACCEPT SERVICE IS VERY SPECIFIC. IT IS
4  MATTEL'S CURRENT DIRECTORS AND OFFICERS. IT DOES NOT EXTEND TO
5  PEOPLE WHO ARE FORMER. WE HAVE SAID, CERTAINLY, IF THERE ARE
6  FORMER PEOPLE THAT THEY WANT TO ASK US ABOUT --
7      THE COURT: I'M GOING TO STOP YOU HERE FOR A SECOND.
8      THIS IS BEYOND THE SCOPE OF THE EX-PARTE APPLICATION.
9      ALL I'M DOING IS, I'M GRANTING THE EX-PARTE
10  APPLICATION IN TERMS OF THE COUNTING OF THE WITNESSES. I'M NOT
11  GOING TO WADE INTO -- I NEED TO RETRACT MY STATEMENT IN TERMS
12  OF WHAT -- I'M NOT OFFERING ANY RULING RIGHT NOW WITH RESPECT
13  TO THE SERVICE OF SUBPOENAS.
14      MR. NOLAN: FINE, YOUR HONOR.
15      COULD YOU JUST ORDER MATTEL TO ADVISE US BY CLOSE OF
16  BUSINESS TODAY OF THE TEN WHO THEY REPRESENT AND WHO THEY
17  DON'T. I THINK THAT'S REASONABLE, ISN'T IT?
18      MR. QUINN: THAT'S NO PROBLEM.
19      THE COURT: VERY GOOD. THAT'S NOT A PROBLEM.
20      THANK YOU, COUNSEL.
21
22
23
24  / / /
25  / / /
□ 1                          CERTIFICATE
2
3  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
   STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
   ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
   THE UNITED STATES.
6
7  _____          _____
                                              DATE
8  THERESA A. LANZA, CSR, RPR
   FEDERAL OFFICIAL COURT REPORTER
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Page 24

EXHIBIT 11    PAGE 99

080107 hearing.txt

23
24
25
7

EXHIBIT 11 PAGE 100

# EXHIBIT 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                     Date: January 7, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=========================================================================
=
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                              Theresa Lanza
        Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  **Christa Martine Anderson**     **John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:              ATTORNEY PRESENT FOR CARLOS
**Thomas J. Nolan**                         GUSTAVO MACHADO GOMEZ:
**Carl A. Roth**                            **Mark E. Overland**
**Anna Park**
                                        ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-               STERN & GOLDBERG: **Kien C. Tiet**
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND                ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: **Larry W.**               KAYE SCHOLER, LLP: **Bryant S. Delgadillo**
**McFarland**

PROCEEDINGS:   **ORDER GRANTING IN PART AND DENYING IN PART
               MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL
               DISCOVERY (DOCKET #1134)**

               **ORDER GRANTING MOTION TO ENFORCE THE COURT'S
               ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR
               SANCTIONS (DOCKET #1143)**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                      1                Time: 1/30

EXHIBIT _1·2_ PAGE _101_

### ORDER GRANTING MATTEL'S MOTION CLARIFYING
### COURT'S ORDER APPOINTING DISCOVERY MASTER
### (DOCKET #1244)

### ORDER GRANTING CARTER BRYANT AND MGA
### DEFENDANTS' EX PARTE APPLICATION TO COMPEL
### DEPOSITIONS (DOCKET #1462)

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

### MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY
### (DOCKET #1134)

This motion is **GRANTED IN PART.** Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT 12 PAGE 102

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel. Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13). Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes. Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant. The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**. The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language. Machado must file an affidavit that complies with the

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT 12  PAGE 103

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation. The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

### MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**. The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty. Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him. See Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard prior to the appointment of a special master). Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case. Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

### DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _12_ PAGE _104_

forth in their moving papers. The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl). To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008. However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT 12 PAGE 105

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: January 9, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=====================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          N/A
           Courtroom Deputy Clerk              Court Reporter

PROCEEDINGS:    ORDER AMENDING COURT'S MINUTE ORDER OF JANUARY 7, 2008
                (In Chambers)

       The Court's Minute Order dated January 7, 2008, incorrectly noted on page 4 that Mattel's motion seeking clarification regarding the Court's Order appointing the Discovery Master (docket #1244) was **DENIED**. That motion, as correctly noted in the caption of the January 7, 2008, Order, was **GRANTED**. Accordingly, the Court **AMENDS** the Court's January 7, 2008, Order as follows:

       Page four:  The sentence "This motion is **DENIED**." is stricken, and the following sentence is substituted in its place: "This motion is **GRANTED**."

       IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                              1                    Initials of Deputy Clerk: jh

EXHIBIT  12  PAGE  100

## Laura Kinsey

| | |
|---|---|
| **From:** | Dylan Proctor |
| **Sent:** | Thursday, January 10, 2008 11:54 AM |
| **To:** | MGA / Bryant Team; Stephen Hauss; Laura Kinsey |
| **Subject:** | FW: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Amended Document (Non-Motion) |

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: dylanproctor@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** cacd_ecfmail@cacd.uscourts.gov [mailto:cacd_ecfmail@cacd.uscourts.gov]
**Sent:** Thursday, January 10, 2008 11:52 AM
**To:** ecfnef@cacd.uscourts.gov
**Subject:** Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Amended Document (Non-Motion)

This is an automatic e-mail message generated by the CM/ECF system. Please **DO NOT RESPOND** to this e-mail because the mail box is unattended. Direct all inquiries to ecf-helpdesk@cacd.uscourts.gov.
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

#### Notice of Electronic Filing

The following transaction was entered on 1/10/2008 at 11:51 AM PST and filed on 1/10/2008
Case Name:        Carter Bryant v. Mattel Inc
Case Number:      2:04-cv-9049
Filer:
Document Number: 1508

EXHIBIT 12 PAGE 107

1/10/2008

**Docket Text:**
AMENDED DOCUMENT: ORDER AMENDING COURTS MINUTE ORDER OF JANUARY 7, 2008(In Chambers) [1504]. The Courts Minute Order dated January 7, 2008, incorrectly noted on page 4 that Mattels motion seeking clarification regarding the Courts Order appointing the Discovery Master (docket#1244) was DENIED. That motion, as correctly noted in the caption of the January 7, 2008, Order, was GRANTED. Accordingly, the Court AMENDS the Courts January 7, 2008, Order as follows: Page four: The sentence This motion is DENIED. is stricken, and the following sentence is substituted in its place: This motion is GRANTED. (am)

**2:04-cv-9049 Notice has been electronically mailed to:**

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Alan Neil Goldberg    agoldberg@sgattys.com

Emil W Herich    eherich@kmwlaw.com

John W Keker    jkeker@kvn.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Kien C Tiet    ktiet@sgattys.com

EXHIBIT __12__ PAGE __108__

1/10/2008

John Elliot Trinidad   jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock   awaltonhadlock@kvn.com

Matthew M Werdegar   mmw@kvn.com

Michael T Zeller   michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**M:\Civil\LA04CV09049SGL_MO.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/10/2008] [FileNumber=5179472-0]
[230a8b36cde3f8be77e83fe0b99e33a5a91b1ae6f7a130f41652e701ff3f308a0668
904496aee958d0e65f3dcd8817ec96712fafaece7ff70d988d709e81d5a0]]

EXHIBIT 12 PAGE 109

# EXHIBIT 13

# STROOCK

**By Email and U.S. Mail**

January 14, 2008

Michael J. Niborski
Direct Dial  310-556-5873
Direct Fax  310-556-5959
MNiborski@stroock.com

Alonzo Wickers, IV, Esq.
Davis Wright Tremaine LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, California  90017-2566

Re:    *Carter Bryant v. Mattel, Inc. and Consolidated Cases*, United States District Court,
Central District of California, Case No. CV 04-9049 (SGL) (RNBx),
Consolidated with Case Nos. CV 04-9059 and CV 05-2727

Dear Al:

This letter confirms our conversation of today in which you informed me that Christopher Palmeri will not appear for deposition pursuant to the subpoena dated July 25, 2007 ("Deposition Subpoena"). We also agreed in our conversation today that the original Deposition Subpoena served on Mr. Palmeri, and the Non-Party Reporter Christopher Palmieri's Objections To Plaintiff's Subpoena, dated August 8, 2007, are still valid and Mattel need not serve a new Deposition Subpoena on Mr. Palmeri. To comply with the discovery cutoff, Mattel is serving the parties with an amended deposition notice today, setting Mr. Palmeri's deposition for January 28, 2008, at 2:00 p.m. However, as stated above, you have informed us that Mr. Palmeri will not appear for deposition on that date.

We believe that our prior discussions and correspondence relating to the Deposition Subpoena, as well as those previously conducted between you and Tim Alger of Quinn Emanuel, fulfill the obligations of the parties to meet-and-confer prior to the filing of a motion before the discovery master. We remain willing, however, to discuss any limitations on the scope, time allotted, and location of Mr. Palmeri's deposition. Mattel remains committed to obtaining Mr. Palmeri's testimony without imposing any undue burden on Mr. Palmeri or *Business Week*.

EXHIBIT 13 PAGE 10

LA 51019035

STROOCK & STROOCK & LAVAN LLP · LOS ANGELES · NEW YORK · MIAMI
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

Alonzo Wickers, IV, Esq.
January 14, 2008
Page 2


Please do not hesitate to contact me if you would like to discuss this matter further.

Best regards,

Michael J. Niborski

LA 51019035

STROOCK & STROOCK & LAVAN LLP · LOS ANGELES · NEW YORK · MIAMI
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

EXHIBIT 13 PAGE 141

# EXHIBIT 14

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**