QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S NOTICE OF LODGING IN SUPPORT OF MOTION OBJECTING TO DISCOVERY MASTER'S MAY 8, 2008 ORDER DENYING MATTEL'S MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI; AND RENEWED MOTION OBJECTING TO FEBRUARY 26, 2008 ORDER<br><br>Date:   May 21, 2008<br>Time:   10:00 a.m.<br>Place:  Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference:   May 19, 2008<br>Trial Date:                  May 27, 2008 |

PLEASE TAKE NOTICE that plaintiff Mattel, Inc. ("Mattel") hereby lodges the following documents filed before the Discovery Master in support of MOTION OBJECTING TO DISCOVERY MASTER'S MAY 8, 2008 ORDER DENYING MATTEL'S MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI; AND RENEWED MOTION OBJECTING TO FEBRUARY 26, 2008 ORDER:

    A.    Mattel, Inc.'s Notice of Motion and Motion to Compel the Deposition of Christopher Palmeri, dated January 21, 2008; and,

    B.    Opposition to Mattel's Motion to Compel the Deposition of Christopher Palmeri, dated January 29, 2008 .

DATED:  April 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _Timothy Alger_

Timothy L. Alger
Attorneys for Mattel, Inc.

# EXHIBIT A

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2  JOHN B. QUINN (State Bar No. 090378)
   MICHAEL T. ZELLER (State Bar No. 196417)
3  JON D. COREY (State Bar No. 185066)
4  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
5  Telephone: (213) 443-3000; Facsimile: (213) 443-3100

6
   STROOCK & STROOCK & LAVAN LLP
7  BARRY B. LANGBERG (State Bar No. 048158)
8  MICHAEL J. NIBORSKI (State Bar No. 192111)
   2029 Century Park East, Suite 1600
9  Los Angeles, California 90067-3086
10 (lacalendar@stroock.com)
   Telephone: (310) 556-5800; Facsimile: (310) 556-5959
11
12 Attorneys for MATTEL, INC.

13                  UNITED STATES DISTRICT COURT
14                 CENTRAL DISTRICT OF CALIFORNIA
15                        EASTERN DIVISION
16
   CARTER BRYANT, an individual,      )  Case No. CV 04-9049 SGL (RNBx)
17                                     )  Consolidated with
           Plaintiff,                  )  Case No. CV 04-09059
18                                     )  Case No. CV 05-02727
19         vs.                         )
                                       )  DISCOVERY MATTER
20 MATTEL, INC., a Delaware            )
   corporation,                        )  [To Be Heard by Discovery Master Hon.
21                                     )  Edward Infante (Ret.) Pursuant To The
           Defendant.                  )  Court's Order Of Dec. 6, 2006]
22                                     )
                                       )  MATTEL, INC.'S NOTICE OF
23                                     )  MOTION AND MOTION TO
                                       )  COMPEL THE DEPOSITION OF
24 ─────────────────────────────────  )  CHRISTOPHER PALMERI
25 AND CONSOLIDATED ACTIONS           )
                                       )  Date:    February 8, 2008
26                                     )  Time:    9:30 a.m.
                                       )  Place:   TBA
27
28                                        EXHIBIT _A_

                                          PAGE _2_

                      1-22

            MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.    PRELIMINARY STATEMENT ....................................................... 1

II.   STATEMENT OF FACTS ............................................................. 3

III.  ARGUMENT ................................................................................ 5

    A.   Mr. Palmeri's Prospective Testimony Is Not Privileged And He Must Therefore Submit To Deposition ................................ 5

        1.   Mr. Palmeri's prospective testimony concerns information that is non-confidential and has already been published. ...................................................................... 6

        2.   Even if Mr. Larian's identity as the source of the "He should know" statement is viewed as "unpublished," the journalist's privilege still does not apply......................... 8

    B.   Even If The Journalist's Privilege Applies, It Must Yield Here............ 10

        1.   The testimony Mattel seeks from Mr. Palmeri is available from no other source. ................................... 11

        2.   The information Mattel seeks is non-cumulative. ....................... 12

        3.   The information Mattel seeks is critical to Mattel's claims regarding the ownership of Bratz..................... 13

        4.   The information Mattel requests is not confidential.................... 14

IV.   CONCLUSION ............................................................................. 15

EXHIBIT __A__

PAGE __3__

- 1 -

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

# TABLE OF AUTHORITIES

## Cases

Agster v. Maricopa County,
   422 F.3d 836 (9th Cir. 2005) ............................................................... 10

Brinston v. Dunn,
   919 F. Supp. 240 (S.D. Miss. 1996) ................................................... 7, 8

Crowe v. County of San Diego,
   242 F. Supp. 2d 740 (S.D. Cal. 2003) .................................................. 10

De La Paz v. Henry's Diner,
   946  F. Supp. 484 (N.D. Tex. 1996) ..................................................... 6, 9

Dillon v. City and County of San Francisco,
   748 F. Supp. 722 (N.D. Cal. 1990)............................... 6, 9, 10, 11, 14

Don King Prod. v. Douglas,
   131 F.R.D. 421 (S.D.N.Y. 1990) ..................................................... 12, 13

Farr v. Pitchess,
   522 F.2d 464 (9th Cir. 1975) ............................................................... 10

In re Maykuth,
   2006 WL 724241 (E.D. Pa. 2006) ........................................................ 6

McKevitt v. Pallasch,
   339 F.3d 530 (7th Cir. 2003) ..................................................... 7, 8, 9, 14

Miami Herald Pub. Co. v. Morejon,
   561 So. 2d 577 (Fla. 1990) .................................................................... 6

Prince George's County v. Hartley,
   822 A.2d 537 (Md. App. 2003) ............................................................ 10

Shoen v. Shoen,
   5 F.3d 1289 (9th Cir. 1993) ....................................................... 5, 10, 14

Shoen v. Shoen,
   48 F.3d 412 (9th Cir. 1995) ................................................................. 11

Solaia Technology, LLC v. Rockwell Automation, Inc.,
   2003 WL 22597611 (N.D. Ill. 2003).................................................... 9

State of Minnesota v. Knutson,
    523 N.W.2d 909 (Minn. App. 1995) .................................................. 10

In re Vmark Software, Inc.,
   1998 WL 42252 (E.D. Pa. 1998) ............................................... 6, 11, 12

In re Ziegler,
   550 F. Supp. 530 (W.D.N.Y. 1982)..................................................... 10

**EXHIBIT  A**

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

**PAGE ___4___**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a hearing before Discovery Master Hon. Edward Infante (Ret.), that will occur at 9:30 a.m. on February 8, 2008 or at such other time set by Judge Infante, Mattel, Inc. ("Mattel") will, and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 37, to compel the deposition of Christopher Palmeri.

This Motion is made on the grounds that Mr. Palmeri has refused without justification to appear for deposition and provide testimony that is material – indeed, vital – to Mattel's claims.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Michael J. Niborski (and its exhibits) filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

<u>Statement Of Rule 37-1 Compliance</u>

The parties met and conferred regarding Mattel's prospective deposition of Christopher Palmeri. <u>See</u> Declaration of Michael J. Niborski ("Niborski Dec."), filed concurrently herewith, at ¶¶ 4, 6-8, 14-16.

Dated: January 21, 2008  STROOCK & STROOCK & LAVAN LLP
          BARRY B. LANGBERG
          MICHAEL J. NIBORSKI


By: _____
   Michael J. Niborski

   Attorneys for MATTEL, INC.

- 1 -

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

EXHIBIT _A_

PAGE _5_

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Mattel seeks nothing more from reporter Christopher Palmeri than confirmation under oath of information he has already provided to the general public. Rather than provide testimony on a matter that goes to the heart of this litigation, Mr. Palmeri has refused outright to comply with a subpoena and appear for deposition. Mr. Palmeri remains steadfast in his refusal to obey the subpoena despite Mattel's willingness to limit the scope and duration of the deposition and to hold the deposition at the location of Mr. Palmeri's choice.

In July 2003, an article authored by Mr. Palmeri entitled "To Really Be A Player, Mattel Needs Hotter Toys" was published in Business Week (the "Article"). The Article contains several statements clearly attributable to Isaac Larian, one of which is as follows:

> Mattel won't live or die on every new toy it develops.  But
> it can't just rely on Barbies, either.  "Like they say in
> business school – no risk, no reward," says Isaac Larian,
> CEO of privately held MGA.  He should know:  He got the
> idea for Bratz after seeing his own kids run around in
> navel-baring tops and hip-huggers.[1]

Mattel seeks limited deposition testimony from Mr. Palmeri that will confirm that Mr. Larian made these statements.  The Article conveys through clear language and context that Mr. Larian told Mr. Palmeri that the Bratz dolls were his idea and the source of that idea was Mr. Larian's observation of "his own kids run[ning]

---

[1]  Declaration of Michael J. Niborski filed concurrently herewith ("Niborski Dec."), ¶ 2, Ex. 1 (Article).

**EXHIBIT _A_**

**PAGE _6_**

- 1 -

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

1   around in navel-baring tops and hip huggers." Mattel merely asks that Mr. Palmeri

2   confirm Mr. Larian's published statements about the origins of Bratz.

3         This information is material to Mattel's claims and is not available from any

4   other source. The information sought also is not confidential; BusinessWeek's

5   publication of Mr. Larian's statements about the origins of Bratz establishes that the

6   information obtained by Mr. Palmeri was not provided under any promise of

7   confidentiality. <u>Simply put, Mr. Palmeri is a witness to statements and conduct by</u>

8   <u>Mr. Larian – the public cover-up of Carter Bryant's development of Bratz while he</u>

9   <u>was a Mattel employee – that is central to this lawsuit.</u>

10        Despite the limited scope of Mattel's intended inquiry, Mr. Palmeri has

11   categorically refused to appear for deposition. Mr. Palmeri's counsel contends that

12   Mattel seeks unpublished information and that the testimony requested by Mattel is

13   shielded by the journalist's privilege. Mr. Palmeri has taken the untenable position –

14   unsupported by law – that he can completely avoid testifying simply because he

15   anticipates he will be asked a question that entitles him to assert the journalist's

16   privilege.

17        Clearly, Mattel is not seeking any unpublished information. It is hornbook law

18   that information that has already been revealed to the public at large may not be the

19   subject of a valid privilege. Moreover, even if the journalist's privilege were found

20   to apply here, it is qualified and yields when the litigant's need for the information

21   sought outweighs any public interest in non-disclosure. There is simply no public

22   policy rationale for a reporter's refusal to confirm under oath statements published in

23   a national news magazine. In contrast, Mr. Palmeri's prospective testimony is

24   crucial to Mattel's ability to prove its claim that Bryant and Larian, among others at

25   MGA, made inconsistent statements concerning the origins of Bratz and engaged in a

26   scheme to conceal the product's true origins. These statements offer direct proof that

27   Mr. Larian – who has since acknowledged under oath that Bryant brought him the

28

**EXHIBIT _A_**

- 2 -

**PAGE __7__**

1   Bratz idea – falsely claimed that he (Larian) was the creator of Bratz. That false
2   claim was part of a scheme to conceal the truth from the public and Mattel.

3       The scheme of concealment is central to this case in at least two respects.
4   First, it shows guilty knowledge by Larian and MGA that Bryant developed Bratz
5   while an employee of Mattel, in violation of his employment agreement with Mattel,
6   and an awareness by Larian and MGA that Bryant's inventions during his
7   employment at Mattel belong to Mattel. Second, Larian's concealment, through
8   false statements to Mr. Palmeri in the summer of 2003, bears directly on MGA's
9   contention that Mattel had notice of Bryant's disloyalty prior to November 24, 2003,
10   when Mattel obtained a copy of Bryant's MGA agreement relating to Bratz. Mr.
11   Larian obviously did his best to hide the existence of the claims against Bryant and
12   MGA by lying to the press.

13       Mattel has endeavored to depose Mr. Palmeri in the least burdensome manner
14   possible, offering not only to limit the time for questioning and conduct the
15   deposition at a time and place of Mr. Palmeri's choosing, but also to discuss the
16   prospective line of questioning in advance of the deposition with Mr. Palmeri's
17   counsel. Simply put, Mattel has reasonably sought to procure testimony to which it
18   is entitled under the law. In response, Mr. Palmeri has refused to appear. Mattel
19   therefore seeks relief from the Court.

20

21   **II.   STATEMENT OF FACTS**

22       Mattel served Mr. Palmeri with a deposition subpoena on July 25, 2007. The
23   parties do not dispute that service of the subpoena was proper.[2] Mr. Palmeri served
24   objections to the deposition subpoena on August 8, 2007.[3] While Mattel initially
25   requested documents in connection with the subpoena to ensure that Mr. Palmeri was

---

26   [2] Niborski Dec., ¶¶ 2, 16; Ex. 3 (Subpoena to Christopher Palmeri, dated July 25,
27   2007); Ex. 13 (Letter from M. Niborski to A. Wickers dated January 14, 2008).

28   [3] Niborski Dec., ¶ 5; Ex. 4 (Non-Party Reporter Christopher Palmeri's Objections
To Plaintiff's Subpoena, dated August 8, 2007).

- 3 -

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

EXHIBIT __A__

PAGE __8__

able to provide the most accurate testimony possible regarding Larian's published statements, BusinessWeek has represented that no such documents exist. As a result, only Mr. Palmeri's appearance for deposition remains at issue.[4]

Following service of the subpoena, counsel for Mattel and Palmeri engaged in and extended meet-and-confer process. Mattel consistently represented that it seeks testimony relating to published statements. In emails sent prior to serving Mr. Palmeri with the subpoena, as well as in the discussions that followed, Mattel has reiterated this fact.[5] Mattel also offered to conduct the deposition at a time and place of Mr. Palmeri's choosing, and offered to agree to a limited period of time for questioning. In addition, Mattel offered to discuss the exact scope of the prospective questions with counsel for Mr. Palmeri in advance of the deposition.[6]

Contemporaneous with the service of the subpoena on Mr. Palmeri, Mattel served deposition subpoenas on Maureen Tkacik, a reporter for the Wall Street Journal, and Denise O'Neal, a reporter for the Chicago Sun-Times. Like Mr. Palmeri, Ms. Tkacik and Ms. O'Neal wrote articles for their respective publications that contained statements attributed to Larian regarding the origins of Bratz which were inconsistent with Larian's, MGA's and Bryant's subsequent claims in this case. Following meet and confer efforts with counsel for the Wall Street Journal and Chicago Sun-Times, the two reporters were deposed on the same terms proposed by

---

[4] Niborski Dec., ¶¶ 4, 6-7; Ex. 3 (Email exchange between Alger and Farley), Ex. 6 (Email from Wickers to Alger dated August 16, 2007); Ex. 5 (Letter from Alger to Wickers, dated August 17, 2007).

[5] Niborski Dec., ¶¶ 6-8, 16; Ex. 6 (Email from Wickers to Alger dated August 16, 2007); Ex. 5 (Letter from Alger to Wickers, dated August 17, 2007); Ex. 7 (Letter from Niborski to Wickers, dated September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).

[6] Niborski Dec., ¶¶ 6-8, 14-16; Ex. 7 (Letter from Niborski to Wickers, dated September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).

- 4 -

1   Mattel here, with counsel for Mattel questioning the witnesses for less than 30

2   minutes each.[7]

3        On January 7, 2008, the Court granted Mattel's Motion for Leave to Take

4   Additional Discovery in this action.  In the Court's Order, Judge Larson found that

5   Mattel is entitled to conduct additional depositions.[8]  Importantly, Judge Larson was

6   informed of the reasons for and specifically granted Mattel permission to take the

7   deposition of Mr. Palmeri.  In its moving papers, Mattel identified Mr. Palmeri as

8   one of the prospective deponents, informed the Court that Mr. Palmeri is a reporter

9   for BusinessWeek, and provided the Court with a description of the relevance of Mr.

10  Palmeri's anticipated testimony during oral argument.[9]

11       Despite this, on January 14, 2008, Mr. Palmeri's counsel informed counsel for

12  Mattel that it would not agree to produce Mr. Palmeri for deposition in response to

13  the deposition subpoena.[10]

14

15  **III.   ARGUMENT**

16       A.   <u>**Mr. Palmeri's Prospective Testimony Is Not Privileged And He**</u>

17            <u>**Must Therefore Submit To Deposition**</u>

18       Because no privilege applies to Mr. Palmeri's prospective testimony, and that

19  testimony is indisputably relevant to this action, he should be ordered to provide the

20  requested testimony at deposition.  See <u>Shoen v. Shoen</u>, 5 F.3d 1289, 1292 (9th Cir.

21  1993) (holding that in the absence of an applicable privilege, a non-party can be

22

---

23  [7] Niborski Dec., ¶¶ 9-10; Ex. 8 (Transcript of deposition of Maureen Tkacik, dated September 28, 2007); Ex. 9 (Transcript of deposition of Denise O'Neal, dated
24  October 3, 2007).

25  [8] Niborski Dec., ¶ 13, Ex. 12 (Order Granting In Part And Denying In Part Mattel's Motion For Leave To Take Additional Discovery, dated January 7, 2008; Order
26  Amending Court's Minute Order of January 7, 2008).

27  [9] Niborski Dec., ¶¶ 11-12; Ex. 10 (Motion of Mattel for Leave to Take Additional Discovery, at 8, 11); Ex. 11 (Transcript of January 7, 2008 hearing).

28  [10] Niborski Dec., ¶¶ 1-16; Ex. 13 (Letter from Niborski to Wickers dated January 14, 2008).

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

**EXHIBIT __A__**

**PAGE___10___**

1  compelled to produce evidence regarding any matter "reasonably calculated to lead
2  to the discovery of admissible evidence") (citing Fed. R. Civ. P. 26(b)(1)).  See also
3  In re Maykuth, 2006 WL 724241 at *3 (E.D. Pa. 2006) (granting defendant's motion
4  to compel the deposition of a reporter for the purposes of verifying whether or not
5  the plaintiffs actually made the comments attributed to them in the reporter's article);
6  see also In re Vmark Software, 1998 WL 42253 at *2 (E.D. Pa. 1998) (holding that
7  reporter's deposition was necessary to verify the statements of a party contained in a
8  published article).  Simply put, without the testimony that Mattel requests, the Article
9  is useless to Mattel because it does not constitute evidence admissible to prove a key
10 issue in the case – whether in fact Larian lied about the origins of Bratz.

11      **1.      Mr. Palmeri's prospective testimony concerns information**
12                **that is non-confidential and has already been published.**

13 Mattel seeks nothing from Mr. Palmeri that is confidential or has not already
14 been published.  Mattel does not seek to reveal the identity of one of Mr. Palmeri's
15 sources, confidential or otherwise.  To the contrary, Mattel merely seeks to have
16 Mr. Palmeri testify to what anyone who read the Article would naturally conclude –
17 that the statements he attributes to Larian were actually made by Larian.  As a result,
18 the reporter's privilege is inapplicable to the information Mattel seeks from
19 Mr. Palmeri.  See Dillon v. City and County of San Francisco, 748 F. Supp 722, 726
20 (N.D. Cal. 1990) (holding that the privilege did not apply to the personal
21 observations of a reporter who "has not been asked to reveal any confidential sources
22 or information, nor has been requested to produce or discuss any resource
23 materials"); Miami Herald Pub. Co. v. Morejon, 561 So.2d 577, 581 (Fla. 1990)
24 (rejecting privilege for eyewitness observations (citing numerous cases)).

25 Federal courts – which apply federal common law privilege to non-diversity
26 cases[11] – have held that the journalist's privilege is inapplicable to all non-

27 _____
28 [11]  Dillon, 748 F. Supp. at 724-25.

EXHIBIT **A**

PAGE **11**

- 6 -

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

1    confidential information, even if unpublished.  See De La Paz v. Henry's Diner, 946

2    F. Supp. 484, 485 (N.D. Tex. 1996) (holding that plaintiff's subpoena *duces tecum*,

3    seeking to compel a reporter's deposition, as well as tape-recorded interviews with

4    the defendant, did not implicate the journalist's privilege as it sought only non-

5    confidential material); see also McKevitt v. Pallasch, 339 F. 3d 530, 532 (7th Cir.

6    2003) (holding that journalist had "no conceivable interest" in preventing disclosure

7    of tape recordings of interviews with key prosecution witness for use by defendant in

8    a criminal trial because the source of the information was non-confidential).

9         This verification testimony is not only non-confidential, but also constitutes

10   "published" material to which the journalist's privilege does not apply.  Brinston v.

11   Dunn, 919 F. Supp. 240, 244 (S.D. Miss. 1996) (holding that where the defendant

12   failed to overcome the journalist's privilege to obtain "unpublished" information, it

13   was still proper to compel the deposition of the author on the limited issue of the

14   accuracy of the article's assertions, including whether statements attributed to the

15   plaintiff were in fact made by the plaintiff).  In Brinston, the Court drew a distinction

16   between "unpublished" materials, such as "sources" and "resource materials," which

17   may be the subject of privilege, and simply questioning the author of an article about

18   its accuracy, which does not "impermissibly infringe on the First Amendment right

19   to freedom of the press."  Id. at 243-44.

20        Mr. Palmeri is likely to contend that his testimony regarding statements in the

21   Article made by Larian involve unpublished information.[12]  This argument is based

22   solely on the fact that Mr. Palmeri did not include the exact words "Larian said" in

23   the following portion of the passage:  "He should know:  He got the idea for Bratz

24   after seeing his own kids run around in navel-baring tops and hip-huggers."  In other

25   words, Mr. Palmeri attempts to avoid a deposition based on editorial technique and a

26   news magazine's natural aversion to plodding prose that includes repetitious, express

27   ────────────────
     [12]  Niborski Dec., ¶ 4; Ex. 3 (Email exchange between from Farley to Alger, dated
28   June 26, 2007).

- 7 -

EXHIBIT __A__

PAGE __12__

1  attribution.  The contents of the "He should know" passage, which immediately
2  follows express attribution of a direct quote to Larian, conveys to any reasonable
3  reader of BusinessWeek that Mr. Larian told Mr. Palmeri that he (Larian) had the
4  idea for Bratz, and it was inspired by watching his children.

5       The attribution distinction also is a hollow one, because questioning
6  Mr. Palmeri about statements implicitly attributed to a source would subject
7  Mr. Palmeri to no different imposition than questions about direct quotes.  There
8  would be no greater burden on Mr. Palmeri or interference with his work.  And the
9  policy considerations that limit the journalist's privilege to unpublished information
10  apply equally whether the non-confidential source is expressly identified with "he
11  said" or the non-confidential source is identified by the content and context of the
12  published statement.

13       Drawing a distinction would make certain determinations of discoverability
14  turn on the stylistic choice of a reporter or his or her editors, and Mattel is aware of
15  no case that stretches the journalist's privilege that far.  Mattel seeks nothing more
16  than the defendant in <u>Brinston</u> — testimony verifying what was relayed to readers in
17  the Article.

18      **2.**    **Even if Mr. Larian's identity as the source of the "He should**
19                   **know" statement is viewed as "unpublished," the journalist's**
20                   **privilege still does not apply.**

21       As discussed above, Mr. Palmeri unconvincingly contended during the meet-
22  and-confer process that Mattel seeks unpublished, and therefore privileged,
23  information.  However, assuming, *arguendo*, that Larian's identity as the source of
24  the "He should know" statement can be characterized as unpublished research
25  material, it is still not protected by the journalist's privilege.  <u>See</u> <u>McKevitt v.</u>
26  <u>Pallasch</u>, 339 F. 3d 530, 532 (7th Cir. 2003) (holding that journalist had "no
27  conceivable interest" in preventing disclosure of tape recordings of interviews with
28  key prosecution witness for use by defendant in a criminal trial because the source of

- 8 -

EXHIBIT __A__

PAGE __13__

1    the information was non-confidential).  Here, Mr. Palmeri is being asked to verify
2    statements made to him by Larian, who is identified and quoted as a source in the
3    Article.  Id. at 533 ("[W]hen the information in the reporter's possession does not
4    come from a confidential source, it is difficult to see what possible bearing the First
5    Amendment could have on the question of compelled disclosure."); see also De La
6    Paz, 946 F. Supp. at 485 (holding that plaintiff was entitled to compel production of
7    tape-recorded interviews conducted with defendants if doing so did not require the
8    revelation of any confidential sources); Solaia Technology, LLC v. Rockwell
9    Automation, Inc., 2003 WL 22597611 at 2-3 (N.D. Ill. 2003) (holding that "there can
10   be no dispute" that tapes of communications between defendant and journalist, which
11   were used as background for a published article, are not confidential because "the
12   sources of any information would be known").

13        Here, Mattel seeks far less than the equivalent of a recording of the interview
14   between Mr. Palmeri and Mr. Larian.  Rather, Mattel requests that Mr. Palmeri verify
15   the accuracy of the portions of the interview that were disclosed to more than
16   900,000 readers of BusinessWeek.[13]  The result here must be the same as that
17   reached in Dillon.  There, Judge Patel held that a qualified privilege did not apply
18   because the journalist was being asked about things that he observed without any
19   promise of confidentiality.

20        Mr. McEowen [a television news cameraman] has not been
21        asked to reveal any confidential sources or information, nor
22        has he been requested to produce or discuss any resource
23        materials.  Instead, Mr. McEowen has been subpoenaed to
24        testify regarding his personal observations as an eyewitness
25        to the alleged beating of a citizen by two police officers.

26

27   [13]  See Imitating the Web, for the Busy Reader (New York Times, Oct. 12, 2007,
28   available at www.nytimes.com/2007/10/12/business/media/12adco.html) (circulation
     figures for BusinessWeek magazine).

-9-

1    This court knows of know authority to support the

2    proposition that such personal observations are privileged

3    simply because the eyewitness is a journalist. . . .

4   Dillon, 748 F. Supp. at 726; accord State of Minnesota v. Knutson, 523 N.W.2d 909,

5   913 (Minn. App. 1995) ("[T]he 'Constitution does not immunize a reporter from

6   testifying merely because he makes the observation as a news reporter.'" (quoting In

7   re Ziegler, 550 F. Supp. 530, 532 (W.D.N.Y. 1982)); Prince George's County v.

8   Hartley, 822 A.2d 537, 548 (Md. App. 2003) (requiring reporters to confirm

9   offensive statements made by police officers in a disciplinary hearing; "[The

10  reporters] are not protecting the confidential source of any information . . . The

11  testimony sought goes to the heart of the matter: whether [the officer] made the

12  statements in question.").

13      Mattel is simply asking that Mr. Palmeri confirm statements by Mr. Larian that

14  are not confidential and which have been published in a national news magazine.  No

15  privilege is implicated here.

16

17      **B.    Even If The Journalist's Privilege Applies, It Must Yield Here**

18      Assuming (contrary to law) that any journalist's privilege is available to Mr.

19  Palmeri, it is a qualified one, which Mattel may overcome.[14]  See Shoen v. Shoen, 5

20  F.3d at 1292-93 ("[T]he privilege is a qualified one, not absolute . . . the process of

21  deciding whether the privilege is overcome requires that the claimed First

22  Amendment privilege and the opposing need for disclosure be judicially weighed in

23  light of the surrounding facts, and a balance struck to determine where lies the

24  paramount interest."); see also Farr v. Pitchess, 522 F.2d 464, 467-68 (9th Cir. 1975)

25  _____

26  [14] See Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege law applies."); see also Crowe v. County of San Diego, 242 F. Supp. 2d

27  740, 749 (S.D. Cal. 2003) (holding that where a court has jurisdiction over a federal claim, as well as pendent state law claims, federal privilege law applies to both);

28  Dillon, 748 F. Supp. at 724-25 (rejecting application of the California shield law).

- 10 -

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

EXHIBIT __A__

PAGE __15__

1   (the federal privilege is a "limited" one that protects only "the right of the newsmen

2   to keep secret a source of information"); In re Vmark Software, Inc., 1998 WL

3   42252, *1 (E.D. Pa. 1998) ("this privilege is not absolute and must be weighed

4   against the strong interest of litigants in the full and complete disclosure of relevant

5   evidence"); Dillon, 748 F. Supp. at 726 (rejecting application of the privilege, but

6   proceeding to a balancing test in which the court found the federal privilege would

7   yield because the information sought was not confidential and went to the heart of

8   plaintiff's claim).

9       Because this privilege is qualified, a civil litigant may overcome a valid

10   assertion of the journalist's privilege by a non-party. See Shoen v. Shoen, 48 F.3d

11   412, 416 (9th Cir. 1995). Therefore, even if we assume that a privilege applies, to

12   overcome that privilege Mattel need only demonstrate that the requested evidence is:

13   "(1) unavailable despite the exhaustion of all reasonable alternative sources; (2) non-

14   cumulative; and (3) clearly relevant to an important issue in the case." Id. That test

15   is clearly met here.

16       **1.**   **The testimony Mattel seeks from Mr. Palmeri is available**

17             **from no other source.**

18       There are only two conceivable sources that can verify first-hand what Larian

19   said to Mr. Palmeri during their interview – Messrs. Palmeri and Larian. Where one

20   of the sources is a self-interested party to the litigation – as here – the lack of other

21   witnesses permits the court to conclude that Mr. Palmeri is the only available source.

22   See In re Vmark Software, Inc., 1998 WL 42252 at *2 (E.D. Pa. 1998) (where

23   plaintiff sought deposition testimony and documents from a reporter regarding a

24   published interview with the defendant, the reporter was "the only access to this

25   information"). In Vmark, like the case at hand, the plaintiff sought verification of

26   statements attributed to the defendant in a published interview. The Vmark court

27   reasoned that the reporter was the "only other person, apart from [the defendant],

28   who can verify the statements attributed to [the defendant]," as only the reporter was

- 11 -

1  "qualified to testify as to his reportorial practices with respect to the statements of

2  others." Id. Of the two people who witnessed the conversation, it is only Mr.

3  Palmeri – a trained listener – who can provide the jury with unbiased testimony

4  about Mr. Larian's statements.

5      Moreover, Mr. Larian already has testified about the origins of Bratz, and told

6  an entirely different story from that which he told to Mr. Palmeri. He has effectively

7  denied the accuracy of the Article. Larian stated under oath that it was a Mattel

8  employee, Carter Bryant, who came up with Bratz, and who brought the concept to

9  him at his office in September 2000.[15] Mr. Larian cannot be considered an

10  alternative source of the information Mattel needs – testimony about the various

11  conflicting and  false statements Mr. Larian made about Bratz. See Don King

12  Prod. v. Douglas, 131 F.R.D. 421, 426 (S.D.N.Y. 1990) (finding that tape-recording

13  of statements by plaintiffs was the only "obtainable" source of the statements, as

14  plaintiffs were asked questions at deposition "which would have required

15  communicating, in sum and substance, the information set forth on the tape" to

16  which the plaintiffs provided answers different from that contained in the tape).

17              **2.      The information Mattel seeks is non-cumulative.**

18      As evidenced by the contradiction between his press interviews and his

19  testimony under oath in this case, Larian has changed his story about the origin of

20  Bratz. Evidently, Larian no longer agrees with the statement he made to Mr. Palmeri

21  in 2003, namely, that he came up with the idea for Bratz.[16] Therefore, deposing

22  Mr. Palmeri is Mattel's only method by which Mattel can establish with admissible

23  evidence that Larian made the statements attributed to him in the Article.

24      The fact that Mattel has obtained testimony from two other reporters (Ms.

25  Tkacik and Ms. O'Neal) which clearly establishes that Larian has contradicted his

26  

27  [15]  Niborski Dec., ¶ 17, Ex. 14 (Transcript of deposition of Isaac Larian at 55:23-78:10, 96:22-102:23).

28  [16]  Id.

- 12 -

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

**EXHIBIT 4**

**PAGE 17**

1 sworn testimony on other occasions is of no moment.  Regardless of whether Mattel
2 has access to evidence of occasions on which Larian made other inconsistent claims,
3 only Mr. Palmeri can prove Larian made these particular statements.  Larian told
4 different stories about the origins of Bratz to Ms. Tkacik and Ms. O'Neal.[17]
5 Moreover, because of the nature of Mattel's claims – that, *inter alia*, MGA and
6 Bryant engaged in a scheme to conceal the origins of Bratz and a conspiracy to steal
7 Mattel's trade secrets[18] – proof of one instance of a false statement does nothing to
8 lessen the importance of evidence of a separate misrepresentation that furthers the
9 same conspiracy.  See Don King Prod., 131 F.R.D. at 426 (finding that tape-
10 recording of statements by plaintiff that evidenced a breach of duty of good faith and
11 fair dealing to defendant was non-cumulative of other, similar statements, made at a
12 different time, that also evidenced the same breach).  Since Mr. Palmeri's requested
13 testimony is the only admissible evidence of particular statements made by Mr.
14 Larian, it can hardly be considered cumulative.

15            **3.      The information Mattel seeks is critical to Mattel's claims**
16                     **regarding the ownership of Bratz.**

17            The limited testimony Mattel requests from Mr. Palmeri is not only directly
18 relevant to Mattel's claims, but goes to the very heart of this case – the origins of
19 Bratz.[19]  And, proving that Larian made a false statement regarding the origins of
20 Bratz is directly relevant to Mattel's claim that "Bryant and MGA deliberately and
21 intentionally concealed facts sufficient for Mattel to suspect or know that it was the
22 true owner of Bratz," by, among other things, "concealing Bryant's role in Bratz by
23 falsely claiming that Larian and others were the creators of Bratz."[20]

---

24 [17] Niborski Dec., ¶¶ 9-10, Ex. 8 (Tkacik deposition transcript at 8:13-10:5), Ex. 9
25 (O'Neal deposition transcript at 8:13-11:22).
   [18] See Niborski Dec., ¶ 18; Ex. 15 (Mattel's Second Amended Answer and
26 Counterclaims, ¶¶ 35-36, 90, 102).
27 [19] See Niborski Dec., ¶ 18; Ex. 15 (Mattel's Second Amended Answer and
   Counterclaims, ¶ 35).
28 [20] Id.

**EXHIBIT   A**

**PAGE   18**

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

1    Moreover, MGA contends in this litigation that the statute of limitations bars
2    Mattel's claims.  Larian and MGA made public statements that Larian invented Bratz
3    – rather than Mattel employee Carter Bryant.  Mr. Palmeri's testimony therefore
4    bears directly on whether Mattel was on notice of Bryant's disloyalty prior to
5    November 2003, when it first obtained a copy of Bryant's contract with MGA
6    (which was executed while Bryant was employed by Mattel).

7    Mr. Palmeri is thus a witness with knowledge of facts that are relevant,
8    material, and are central to the determination of this litigation.

9           **4.      The information Mattel requests is not confidential.**

10    Finally, it is important that Mattel is <u>not</u> seeking to obtain any confidential
11    information from Mr. Palmeri.  Mattel's limited inquiry into non-confidential matters
12    "may be considered in the balance of competing interests as a factor that diminishes
13    the journalist's, and the public's, interest in non-disclosure."  <u>See</u> <u>Shoen</u>, 5 F. 3d at
14    1295; <u>see also</u> <u>McKevitt</u>, 339 F.3d at 533 ("When the information in the reporter's
15    possession does not come from a confidential source, it is difficult to see what
16    possible bearing the first amendment could have on the question of compelled
17    disclosure."); <u>Dillon</u>, 748 F. Supp. at 726 ("[T]he lack of a confidential source may
18    be an important element in balancing the [] need for the material sought against the
19    interest of the journalist in preventing production in a particular case.").

20    Mattel is not attempting to uncover confidential sources or obtain access to
21    Mr. Palmeri's unpublished research.  Instead, Mattel seeks to confirm -- for
22    legitimate use in court proceedings where they are highly material -- statements
23    made by Mr. Larian to Mr. Palmeri that were shared with the public in
24    BusinessWeek.  This further tips the balance in favor of a finding that Mr. Palmeri be
25    required to sit for deposition in this matter.

26    In sum, the testimony sought here involves non-confidential, published
27    statements.  The qualified federal journalist's privilege does not apply here, and,
28    even if it did, the privilege must yield in these particular circumstances.

EXHIBIT _A_

PAGE 19

- 14 -

IV.   CONCLUSION

    Based on the foregoing, Mattel respectfully requests that the Court order Mr. Palmeri to appear for his deposition.

Dated:  January 21, 2008

STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG
MICHAEL J. NIBORSKI

By:   _____
      Michael J. Niborski

      Attorneys for MATTEL, INC.

- 15 -

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

EXHIBIT A

PAGE 20

1    **PROOF OF SERVICE**

2    I am employed in the County of Los Angeles, State of California. I am over

3    the age of eighteen years and not a party to the within action; my business address is

4    NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles,

5    California 90026.

6    On January 22, 2008, I served true copies of the following documents

7    described as:

8    **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI**

9

10    on the parties in this action as follows:

| | |
|---|---|
| Davis Wright Tremaine LLP<br>    Alonzo Wickers IV, Esq.<br>865 South Figueroa Street, Suite 2400<br>Los Angeles, California 90017-2566<br>Telephone: 213.633.6800<br>Facsimile: 213.633.6899 | **Attorneys for Non-Party**<br>***Christopher Palmeri*** |
| Skadden, Arps, Slate, Meagher &<br>Flom LLP<br>    Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>Telephone: 213.687.5000<br>Facsimile: 213.687.5600 | **Attorneys for *MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Isaac Larian and MGAE de Mexico, S.R.L. de C.V.*** |

11
12
13
14
15
16
17
18

19    [ √ ]    **[PERSONAL]** by personally delivering the document listed above to

20    the person(s) at the address(es) set forth above.

21

22    I declare that I am employed in the office of a member of the bar of this court

23    at whose direction the service was made

24    Executed on January 22 2008, at Los Angeles, California.

25

26

27    _____
       David Quintana

28

07209/2362666.1

**EXHIBIT __A__**

**PAGE __21__**

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On January 22, 2008, I served true copies of the following documents described as:

**MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI**

on the parties in this action as follows:

| | |
|---|---|
| Keker & Van Nest, LLP<br>  John W. Keker, Esq.<br>  Michael H. Page, Esq.<br>  Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111<br>Telephone: 415.391.5400<br>Facsimile: 415.397.7188 | **Attorneys for *Carter Bryant*** |
| Overland Borenstein Scheper & Kim, LLP<br>  Mark E. Overland, Esq.<br>  David C. Scheper, Esq.<br>  Alexander H. Cote, Esq.<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071<br>Telephone: 213.613.4655<br>Facsimile: 213.613.4656 | **Attorneys for *Carlos Gustavo Machado Gomez*** |

[√]    **[MAIL]** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on January 22, 2008, at Los Angeles, California.

Albert V. Villamil

EXHIBIT _A_

PAGE _22_

07209/2362666.1

-2-

# EXHIBIT B

CALENDARED

RECEIVED

JAN 3 0 2008

1  **DAVIS WRIGHT TREMAINE LLP**
2        865 S. FIGUEROA ST.
          SUITE 2400
3  LOS ANGELES, CALIFORNIA 90017-2566
      TELEPHONE (213) 633-6800
4        FAX (213) 633-6899

5  ALONZO WICKERS IV (State Bar No. 169454)
      alonzowickers@dwt.com
6  ROBYN ARONSON (State Bar No. 228613)
      robynaronson@dwt.com

7  Attorneys for Non-Party Journalist
8  CHRIS PALMERI

9

10                    UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12                         EASTERN DIVISION

13

14  CARTER BRYANT, an individual,        )  Case No. **CV 04-9049 SGL (RNBx)**
                                          )
15               Plaintiff,               )  Consolidated with
                                          )  Case No. CV 04-09059
16        vs.                             )  Case No. CV 05-02727
                                          )
17  MATTEL, INC., a Delaware              )  **OPPOSITION TO MATTEL'S**
    corporation,                          )  **MOTION TO COMPEL THE**
18                                        )  **DEPOSITION OF CHRISTOPHER**
                                          )  **PALMERI; DECLARATION OF**
19               Defendant.               )  **CHRIS PALMERI WITH EXHIBITS**
                                          )  **A-B; DECLARATION OF ALONZO**
20  ─────────────────────────            )  **WICKERS**
    AND CONSOLIDATED ACTIONS.            )
21                                        )  Date:    February 8, 2008
                                          )  Time:    9:30 a.m.
22                                        )
                                          )
23                                        )

24        Non-party journalist Chris Palmeri, a reporter for *BusinessWeek*, respectfully

25  submits the following opposition to Mattel's motion to compel.

26

27

28

1-29

EXHIBIT B

PAGE 23

# TABLE OF CONTENTS

Page

1. SUMMARY OF ARGUMENT ................................................................. 1

2. MATTEL CANNOT OVERCOME MR. PALMERI'S FEDERAL CONSTITUTIONAL REPORTER'S PRIVILEGE. ................................. 4

    A. The Ninth Circuit Recognizes A Broad First Amendment Reporter's Privilege. ........................................................................ 4

    B. Because Mattel Cannot Satisfy Any, Let Alone All, Of The *Shoen II* Factors, The Court Should Deny The Motion To Compel. ............... 8

        1. Mr. Palmeri's Testimony Is Not Clearly Relevant To An Important Issue. ........................................................... 8

        2. The Information That Mattel Seeks Would Be Cumulative. ............................................................................ 10

        3. Mattel Has Not Exhausted Alternative Sources......................... 11

3. MATTEL CANNOT OVERCOME MR. PALMERI'S INDEPENDENT – AND ABSOLUTE – IMMUNITY UNDER THE CALIFORNIA STATE CONSTITUTIONAL SHIELD LAW. ........................................... 13

    A. The State Shield Law Applies In This Action. ................................. 13

    B. The Shield Law Broadly Protects Non-Party Reporters Like Mr. Palmeri. .......................................................................................... 16

    C. The Shield Law Absolutely Protects Non-Party Reporters From Being Compelled To Testify About Unpublished Information In Civil Cases. ....................................................................................... 17

    D. Mattel Cannot Overcome Mr. Palmeri's Shield Law Protections...... 20

4. CONCLUSION ...................................................................................... 21

EXHIBIT B

PAGE 24

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

## Cases

*Agster v. Maricopa County,*
   422 F.3d 836 (9th Cir. 2005) ...................................................................15

*Baker v. F & F Investment,*
   470 F.2d 778 (2d Cir. 1972) ...................................................................12

*Branzburg v. Hayes,*
   408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972) ........................4

*Brinston v. Dunn,*
   919 F. Supp. 240 (S.D. Miss. 1996) .........................................................4

*Carushka, Inc. v. Premiere Products, Inc.,*
   1989 WL 253565 (C.D. Cal. Sept. 1, 1989) .....................................11, 15

*Concerned Citizens of Belle Haven v. The Belle Haven Club,*
   2004 WL 3246719 (D. Conn. March 22, 2004) ......................................9

*Crowe v. County of San Diego,*
   242 F. Supp. 2d 740 (S.D. Cal. 2003).....................................................15

*De La Paz v. Henry's Diner, Inc.,*
   946 F. Supp. 484 (N.D. Tex. 1996) ......................................................4, 5

*Dillon v. City and County of San Francisco,*
   748 F. Supp. 722 (N.D. Cal. 1990)...........................................................7

*Farr v. Pitchess,*
   522 F.2d 464 (9th Cir. 1975) ....................................................................7

*In re Application of Nat'l Broadcasting Co.,*
   79 F.3d 346 (2d Cir. 1996) ......................................................................13

*In re Behar,*
   779 F. Supp. 273 (C.D. Cal.& S.D.N.Y. 1991) .............................7, 10, 11

*In re Howard,*
   136 Cal. App. 2d 816, 289 P. 2d 537 (1955)...........................3, 19, 20, 21

*In re Maykuth,*
   2006 WL 724241 (E.D. Pa. 2006) .......................................................1, 5

*In re Stratosphere Corp. Securities Litigation,*
   183 F.R.D. 684 (D. Nev. 1999) ..............................................................15

*In re Vmark Software,*
   1998 EL 42252 (E.D. Pa. 1998) ..........................................................1, 5

*Los Angeles Mem. Coliseum Comm'n v. Nat'l Football League,*
   89 F.R.D. 489 (C.D. Cal. 1981)....................................................3, 7, 14, 17

*McCarty v. Bankers Ins.,*
   195 F.R.D. 39 (N.D. Fla. 1998) ................................................................2

*McGarry v. Univ. of San Diego,*
   154 Cal. App. 4th 97, 64 Cal. Rptr. 3d 467 (2007) ...............................17

*McKevitt v. Pallasch,*
   339 F.3d 530 (7th Cir. 2003) .......................................................1, 4, 5, 6

ii

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

EXHIBIT B

PAGE 25

*Miller v. Superior Court,*
  21 Cal. 4th 883, 986 P. 2d 170 (1999)................................................16, 18, 20

*Mitchell v. Superior Court,*
  37 Cal. 3d 268, 690 P. 2d 625 (1984)...........................................................18

*New York Times Co. v. Superior Court,*
  51 Cal. 3d 453, 796 P. 2d 811 (1990).................................................3, 17, 18

*Parsons v. Watson,*
  778 F. Supp. 214 (D. Del. 1991)......................................................................8

*People v. Cooper,*
  53 Cal. 3d 771, 281 Cal. Rptr. 90 (1991) ......................................................17

*Playboy Enterprises, Inc. v. Superior Court,*
  154 Cal. App. 3d 14, 201 Cal. Rptr. 207 (1984) ......................................passim

*Prince George's County v. Hartley,*
  150 Md. App. 581, 822 A. 2d 537 (Md. App. 2003)........................................5

*RE/MAX Int'l, Inc. v. Century 21 Real Estate Corp.,*
  846 F. Supp. 910 (D. Colo. 1994)...........................................................7, 9, 11

*Shaklee Corp. v. Gunnell,*
  110 F.R.D. 190 (N.D. Cal. 1986)..............................................................3, 13

*Shoen v. Shoen* ("Shoen I"),
  5 F.3d 1289 (9th Cir. 1993) .........................................................................passim

*Shoen v. Shoen* ("Shoen II"),
  48 F.3d 412 (9th Cir. 1995) ........................................................................passim

*Silkwood v. Kerr-McGee Corp.,*
  563 F.2d 433 (10th Cir. 1977) ........................................................................8

*State v. Knutson,*
  523 N.W. 909, 23 Media L. Rep. 1056 (Minn. App. 1994) ............................5

*Steaks Unlimited, Inc. v. Deaner,*
  623 F.2d 264 (3d Cir. 1980) .........................................................................13

*U.S. v. Burke,*
  700 F.2d 70 (2d Cir. 1983) .............................................................................9

*U.S. v. Schneider,*
  2003 U.S. Dist. LEXIS 27324 (N.D. Cal. Nov. 18, 2003) ..........................10

*United States v. Blanton,*
  534 F. Supp. 295 (S.D. Fla. 1982) .............................................................7, 8

*Zerilli v. Smith,*
  656 F.2d 705 (D.C. Cir. 1981) ......................................................................12

**Statutes**

California Evidence Code § 1070 ...................................................................16

**Other Authorities**

Murphy, K., "Appealing for a Privilege," *The News Media and the Law*, vol.
  27, no. 4, p. 15 (Fall 2003)..............................................................................4

iii

EXHIBIT B

PAGE 26

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1

**Constitutional Provisions**

California Constitution, Article I, § 2(b).........................................................17, 18, 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

EXHIBIT B

PAGE 27

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. SUMMARY OF ARGUMENT

Mattel's motion to compel suffers from several conspicuous flaws. *First,* Mattel relies extensively on decisions from circuits that are inconsistent with the Ninth Circuit's jurisprudence. For example, Mattel repeatedly cites *McKevitt v. Pallasch,* 339 F.3d 530 (7th Cir. 2003) (*see* Motion at 7-9, 14), but fails to disclose that the Ninth Circuit's view of the First Amendment reporter's privilege is diametrically opposed to that of the Seventh Circuit. Mattel also relies heavily on district-court decisions from the Fifth Circuit, which also diverges from the Ninth Circuit on the reporter's privilege. *See* Motion at 6-9. *Such authorities simply have no relevance to this dispute,* which involves the expansive federal constitutional reporter's privilege recognized by the Ninth Circuit in *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993) ("*Shoen I*"), and *Shoen v. Shoen,* 48 F.3d 412 (9th Cir. 1995) ("*Shoen II*").

*Second,* Mattel mistakenly insists that the court need not even go through the reporter's-privilege analysis because the information that it seeks from Mr. Palmeri is "published." *See* Motion at 5-6. As a threshold matter, the information at issue – specifically the source of the information conveyed in the sentence "[Larian] should know: He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" – is *not* published. Ex. A. Nothing within the four corners of the article reveals whether Mr. Palmeri obtained this information about the origins of the Bratz dolls from Mr. Larian, from others at MGA, from toy-industry analysts, from earlier articles about the dolls, or from some other source. *Id.*

But even assuming, solely for the sake of argument, that the information were published, the federal constitutional reporter's privilege still would apply, as even cases cited by Mattel confirm. *See, e.g., In re Maykuth,* 2006 WL 724241 (E.D. Pa. 2006) (undertaking reporter's-privilege analysis where litigant sought to verify published statements); *In re Vmark Software,* 1998 EL 42252 (E.D. Pa. 1998) (same).

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

1

EXHIBIT B
PAGE 28

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   In fact, federal courts have "overwhelmingly recognized a qualified privilege for
2   journalists which allows them to resist compelled disclosure of their professional
3   news gathering efforts and results, *whether published or not*." *McCarty v. Bankers*
4   *Ins.*, 195 F.R.D. 39, 44 (N.D. Fla. 1998) (emphasis added).

5         *Third*, Mattel cannot satisfy any – much less all three – of the elements of the
6   controlling Ninth Circuit reporter's-privilege test; it cannot show that the testimony
7   sought is "clearly relevant to an important issue in the case," that it is "non-
8   cumulative," *and* that it is "unavailable despite exhaustion of all reasonable
9   alternative sources." *Shoen II*, 48 F.3d at 416.  That defect may explain why Mattel
10  does not even set forth this controlling test until the eleventh page of a fifteen-page
11  brief. *See* Motion at 11.

12        On the relevance prong, the central issue in this lawsuit is not what Mr. Larian
13  did or did not tell Mr. Palmeri, but whether Carter Bryant created the Bratz dolls
14  while employed by Mattel.  The article does not illuminate this issue in any way.
15  Upon closer examination, Mattel's primary motive for demanding to depose Mr.
16  Palmeri appears to be to determine whether Mr. Larian "made inconsistent
17  statements concerning the origins of Bratz" (*id.* at 2) – in other words, for mere
18  impeachment.  Such a purpose does not meet the standard of materiality necessary to
19  overcome the reporter's privilege.

20        Mattel's motion also demonstrates that the information sought from Mr.
21  Palmeri would be cumulative.  Specifically, Mattel admits that a former *Wall Street*
22  *Journal* reporter and a *Chicago Sun-Times* reporter voluntarily have testified about
23  "statements attributed to Larian regarding the origins of Bratz which were
24  inconsistent with Larian's, MGA's and Bryant's subsequent claims in this case."
25  Motion at 4; *see* Exs. 8, 9.  Because any testimony from Mr. Palmeri on this subject
26  would be cumulative, the privilege must prevail here.

27        Nor has Mattel established that it has exhausted reasonable alternative sources
28  for similar information.  Most strikingly, Mattel concedes that it has not asked Mr.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 | Larian about any communications that he may have had with Mr. Palmeri. *See*
2 | Motion at 11-12. Under *Shoen I*, this fact alone is enough to defeat Mattel's motion.
3 | 5 F.3d at 1297. And even if Mattel remedied that defect, it would have to
4 | demonstrate that it has sought evidence from other witnesses with whom Mr. Larian
5 | may have discussed the origins of Bratz dolls, such as co-workers, publicists, or
6 | industry analysts. Mattel's failure to do so also is fatal to its motion.

7 |      *Fourth*, Mattel ignores Mr. Palmeri's rights under California's state
8 | constitutional shield law, even though Mr. Palmeri's counsel repeatedly raised this
9 | issue during the meet-and-confer process. Wickers Decl. at ¶ 2. Because the
10 | testimony that Mattel seeks relates to its state-law breach-of-contract, breach-of-
11 | fiduciary-duty, and breach-of-duty-of-loyalty claims, the Court must look to the state
12 | constitutional shield law, as well as to the federal constitutional reporter's privilege.
13 | *See, e.g., Shaklee Corp. v. Gunnell*, 110 F.R.D. 190, 192 (N.D. Cal. 1986); *Los*
14 | *Angeles Mem. Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 489, 492 (C.D.
15 | Cal. 1981). Mattel's failure to address the California shield law is not surprising; this
16 | immunity provides absolute protection for non-party reporters, like Mr. Palmeri, who
17 | are subpoenaed to testify about unpublished information that they acquire in the
18 | course of newsgathering. *See, e.g., New York Times Co. v. Superior Court*, 51 Cal.
19 | 3d 453, 461, 796 P. 2d 811 (1990). As set forth in Section 3, the shield law's broad
20 | definition of "unpublished information" covers the information that Mattel seeks
21 | from Mr. Palmeri. *See Playboy Enterprises, Inc. v. Superior Court*, 154 Cal. App. 3d
22 | 14, 27, 201 Cal. Rptr. 207 (1984); *In re Howard*, 136 Cal. App. 2d 816, 818-819, 289
23 | P. 2d 537 (1955). Accordingly, the state constitutional shield law provides an
24 | independent basis for denying Mattel's motion to compel.

25 |
26 |
27 |
28 |

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

3

EXHIBIT B

PAGE 30

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## 2.   MATTEL CANNOT OVERCOME MR. PALMERI'S FEDERAL CONSTITUTIONAL REPORTER'S PRIVILEGE.

**A.     The Ninth Circuit Recognizes A Broad First Amendment Reporter's Privilege.**

Under controlling Ninth Circuit law, the First Amendment protects non-party journalists against being compelled to disclose information that they acquire in the course of their newsgathering. *Shoen I*, 5 F.3d at 1293; *Shoen II*, 48 F.3d at 416. The United States Supreme Court laid the foundation for this federal constitutional reporter's privilege in *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972), when it noted that "[w]ithout some protection for seeking out the news, freedom of the press could be eviscerated." In *Shoen I*, the Ninth Circuit joined eight other circuits in recognizing a federal constitutional reporter's privilege. *Shoen I*, 5 F.3d at 1293.

Conspicuously, Mattel's brief relies heavily on decisions from the Seventh Circuit and from district courts within the Fifth Circuit. Those decisions are inapposite. Although Mattel discusses the Seventh Circuit's decision in *McKevitt v. Pallasch* at great length (*see* Motion at 7-9, 14), Mattel fails to reveal that *McKevitt* expressly rejected the existence of *any* federal constitutional reporter's privilege, 339 F.3d at 531-532 – which one commentator described as "perhaps the most radical view of a constitutionally based reporter's privilege by any federal circuit in the country"[1] – and is directly contrary to controlling Ninth Circuit authority.

Equally unavailing is Mattel's reliance of district-court decisions from Texas and Mississippi, *De La Paz v. Henry's Diner, Inc.*, 946 F. Supp. 484 (N.D. Tex. 1996), and *Brinston v. Dunn*, 919 F. Supp. 240 (S.D. Miss. 1996). *See* Motion at 6-9. Those district courts are within the Fifth Circuit, which – as the court made clear in

---

[1] K. Murphy, "Appealing for a Privilege," *The News Media and the Law*, vol. 27, no. 4, p. 15 (Fall 2003).

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

4

EXHIBIT B

PAGE 31

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*De La Paz* – recognizes only a narrow privilege that shields the identities of confidential informants, unlike the broad reporter's privilege recognized by the Ninth Circuit. 946 F. Supp. at 485 ("the Fifth Circuit has never extended the qualified journalist privilege beyond compelled disclosure of the confidential informant's identity"). For that reason, these decisions also are irrelevant.

Mattel fares no better with its citations to other non-Ninth Circuit authorities. For example, the courts in *State v. Knutson*, 523 N.W. 909, 23 Media L. Rep. 1056 (Minn. App. 1994), and *Prince George's County v. Hartley*, 150 Md. App. 581, 822 A. 2d 537 (Md. App. 2003), interpreted Minnesota's and Maryland's state shield laws, which obviously do not apply here. And two other unpublished decisions that Mattel cites – *In re Vmark Software*, 1998 WL 42252 (E.D. Pa. 1998), and *In re Maykuth*, 2006 WL 724241 (E.D. Pa. 2006) – refute Mattel's argument that the reporter's privilege does not apply when a litigant seeks to depose a reporter for the purpose of authenticating published information. *In re Vmark Software*, 1998 WL 42252, *2; *In re Maykuth*, 2006 WL 724241, *2.

Despite its efforts to obscure the controlling legal standard by focusing on decisions like *McKevitt*, Mattel cannot evade the broad federal constitutional reporter's privilege that applies in the Ninth Circuit when a civil litigant seeks to depose a non-party reporter. This privilege serves a substantial purpose. As the Ninth Circuit explained in *Shoen II*, an expansive privilege is necessary because "routine court-compelled disclosure of research materials poses a serious threat to the vitality of the newsgathering process." 48 F.3d at 416. In *Shoen I*, the court emphasized that this danger is fourfold; it stems from "[t]he threat of administrative and judicial intrusion into the newsgathering and editorial process; the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party; the disincentive to compile and

EXHIBIT **B**

PAGE **32**

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

preserve [unpublished] material; and the burden on journalists' time and resources in responding to subpoenas." 5 F.3d at 1295.[2]

To guard against these threats, the Ninth Circuit has imposed an onerous burden on any civil litigant who seeks to compel the disclosure of information that a non-party reporter has acquired in the newsgathering process. To overcome the reporter's federal constitutional privilege, the litigant first must "show[] that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) non-cumulative; *and* (3) clearly relevant to an important issue in the case." *Shoen II*, 48 F.3d at 416 (emphasis added). The Ninth Circuit declared that this standard must be rigorous to "ensure that compelled disclosure is the exception, not the rule." *Id.* As the Court observed, "if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished." *Id.* (citations omitted).

Mattel attempts to dilute the strength of the reporter's privilege in the Ninth Circuit by grafting a fourth factor – whether or not the reporter acquired the information at issue in confidence – onto the three-part *Shoen II* test. *See* Motion at 14. To support this argument, Mattel cites *Shoen I* (and, yet again, *McKevitt*). *Id.* In *Shoen I*, the court considered whether the journalist subpoenaed in that action should be barred from invoking the qualified privilege against disclosure, as the information sought had not been provided in confidence. 5 F.3d at 1294-1295. After reviewing decisions from the First, Second, and Third Circuits, all of which found that the constitutional privilege applied to non-confidential information, the Ninth Circuit held that "the journalist's privilege applies to a journalist's resource materials even in the absence of the element of confidentiality." *Id.* at 1295. While the Ninth Circuit commented in dicta in *Shoen I* that non-confidentiality "may be considered in the

---

[2] The burden on reporters like Mr. Palmeri is significant. The same week that Mattel served its subpoena, another civil litigant subpoenaed Mr. Palmeri to testify about an article that he wrote about another corporation. Wickers Decl. at ¶ 3.

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

6

EXHIBIT **B**

PAGE **33**

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 | balance of competing interests" (*id.*), the court pointedly declined to make
2 | confidentiality an element of the three-part test that it later created in *Shoen II*, even
3 | though the subpoenaing party focused on the non-confidential nature of the
4 | information that he sought from the author. 48 F.3d at 416. Confidentiality thus is
5 | not an element of the controlling Ninth Circuit test. *See also In re Behar*, 779 F.
6 | Supp. 273, 275-276 (C.D. Cal.& S.D.N.Y. 1991) ("[t]he qualified reporter's
7 | privilege, accorded under the United States Constitution, ... protects non-confidential
8 | as well as confidential information); *United States v. Blanton*, 534 F. Supp. 295, 297
9 | (S.D. Fla. 1982) ("[a]lthough no confidential source or information" was implicated
10 | by the subpoena at issue, "this distinction is irrelevant to the chilling effect
11 | enforcement of the subpoena would have on the flow of information to the press and
12 | public").[3]

13 |     Contrary to Mattel's argument, the reporter's privilege also applies to *all*
14 | information generated during the newsgathering process, even when a litigant insists
15 | that he seeks only to authenticate or to verify the contents of a journalist's published
16 | work. *See, e.g., Shoen II*, 48 F.3d at 416 (finding qualified privilege protected
17 | against disclosure of information regarding conversations between book author and
18 | libel defendant). In *RE/MAX Int'l, Inc. v. Century 21 Real Estate Corp.*, 846 F.
19 | Supp. 910 (D. Colo. 1994), for example, the plaintiff subpoenaed a newspaper
20 | reporter regarding a series of articles that were based on an interview that the reporter
21 | conducted with the president of the defendant company. The plaintiff stated that it
22 | sought the reporter's testimony "solely to authenticate [the president's] statements set
23 | forth in the articles." *Id.* at 912. Applying the Tenth Circuit's formulation of the

24 |

25 |     [3] Two cases cited by Mattel, *Farr v. Pitchess*, 522 F.2d 464 (9th Cir. 1975), and *Dillon v. City and County of San Francisco*, 748 F. Supp. 722 (N.D. Cal. 1990),
26 | accord some weight to the fact that the subpoenas in those cases did not implicate confidential-source information. But those decisions predate the Ninth Circuit's
27 | opinions in *Shoen I* and *Shoen II*. Moreover, *Farr* concerned criminal grand jury proceedings; the federal constitutional reporter's privilege is comparatively stronger
28 | in civil cases. *See, e.g., Los Angeles Mem. Coliseum Comm'n*, 89 F.R.D. at 493.

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

7

EXHIBIT B

PAGE 34

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

reporter's privilege, which is similar to the Ninth Circuit's (*see Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 437 (10th Cir. 1977)), the district court quashed the subpoena. 846 F. Supp. at 912. Similarly, in *Parsons v. Watson*, 778 F. Supp. 214 (D. Del. 1991), the plaintiff subpoenaed a journalist who attributed certain remarks to the plaintiff in a newspaper article. Claiming that he had been misquoted, the plaintiff sought testimony from the reporter to determine whether "the contents of certain statements quote[d] in the article, or the identity of the speakers, is reflected accurately in the article." *Id.* at 215. The court found that the qualified privilege applied, and quashed the subpoena. *See also United States v. Blanton*, 534 F. Supp. 295, 297 (S.D. Fla. 1982) (quashing subpoena on the basis of qualified privilege where the reporter was asked to verify statements attributed in article to criminal defendant).

**B.   Because Mattel Cannot Satisfy Any, Let Alone All, Of The *Shoen II* Factors, The Court Should Deny The Motion To Compel.**

    **1.   Mr. Palmeri's Testimony Is Not Clearly Relevant To An Important Issue.**

In analyzing this prong of the reporter's-privilege test, the Ninth Circuit has recognized that the information sought from the reporter must "go[] to the heart" of the lawsuit. *Shoen II*, 48 F.3d at 416. Mattel has not come close to meeting this standard. A review of the operative counterclaims demonstrates that Mattel's causes of action against Mr. Bryant turn on whether he created Bratz dolls while he still was employed by Mattel. Ex. 15. Whether or not Mr. Larian made any statement to Mr. Palmeri about Mr. Larian's children "run[ning] around in navel-baring tops and hip-huggers" simply is not relevant to that central issue.

Nor can Mattel meet this "clearly relevant to an important issue" standard by pointing to an apparent dispute about the date when Mattel was put on notice of Mr. Larian's statements about the origin of the Bratz dolls. Motion at 14. As to this issue, Mr. Palmeri's testimony would be superfluous. Regardless of whether Mr.

EXHIBIT _B_

PAGE __35__

Larian made the statement about the Bratz dolls that is contained in Mr. Palmeri's article, the article itself is self-authenticating. And the very fact of the article's existence means that, as of July 2003, this public account of the dolls' origin did not mention Mr. Bryant at all. Ex. A. The circumstances surrounding the creation of the article therefore are completely irrelevant for statute-of-limitations purposes; the only possibly relevant fact is the publication of the article in July 2003. That fact is not in dispute, however, and does not require Mr. Palmeri's testimony.

Ultimately, Mattel's real purpose for attempting to compel Mr. Palmeri's testimony is to show that Mr. Larian "made inconsistent statements concerning the origins of Bratz." Motion at 2:25. In other words, Mattel wishes to use Mr. Palmeri to impeach Mr. Larian's anticipated testimony and to undermine Mr. Larian's credibility. But Mattel's desire for additional ammunition for impeachment does not meet the high standard of relevance necessary to overcome the reporter's privilege.

*Shoen II* is on point. There, the Ninth Circuit considered whether a civil litigant could overcome a journalist's privilege where verification of the journalist's published statements "might provide valuable impeachment material." 48 F.3d at 413. The court concluded that "to the extent the requested materials would demonstrate that [a party] was less than candid during his deposition, they do not relate to an important issue in this case." 48 F.3d at 412. *See also RE/MAX Int'l*, 846 F. Supp. at 912 (quashing subpoena where its primary purpose was to impeach a party's testimony); *Concerned Citizens of Belle Haven v. The Belle Haven Club*, 2004 WL 3246719, *2 (D. Conn. March 22, 2004) (quashing subpoena where its primary purpose was to impeach witness' testimony). This rule even has been applied to defeat a criminal defendant's subpoena to a reporter, even though the reporter's notes "may have been material and relevant inasmuch as they might have contradicted [a prosecution witness'] trial testimony." *U.S. v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983).

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

EXHIBIT __B__

PAGE __36__

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    Neither Mattel's statute-of-limitations argument nor its impeachment argument
2  are sufficient to satisfy the first prong of the *Shoen II* test. Put simply, the central
3  issue in this lawsuit is not what Mr. Larian may or may not have told Mr. Palmeri,
4  and none of the claims turn on any communications that may have taken place
5  between Mr. Larian and Mr. Palmeri. Mattel, therefore, cannot meet the relevance
6  standard and cannot overcome Mr. Palmeri's federal constitutional privilege.

7    **2.    The Information That Mattel Seeks Would Be Cumulative.**

8    "When testimony sought from a reporter would be cumulative of other
9  evidence, it cannot be 'necessary or critical' to an action so as to override the First
10 Amendment privilege." *In re Behar*, 779 F. Supp. at 275-276. *See also U.S. v.*
11 *Schneider*, 2003 U.S. Dist. LEXIS 27324 at *18-*20 (N.D. Cal. Nov. 18, 2003)
12 (quashing subpoena where reporters' testimony would be cumulative of other
13 sources).

14    In its motion, Mattel misapprehends the meaning of cumulativeness for
15 purposes of the reporter's privilege. Mattel insists that Mr. Palmeri's testimony
16 would not be cumulative because no one else has testified about any communications
17 between Mr. Palmeri and Mr. Larian. Motion at 12-13. The issue is not whether
18 other witnesses have testified about those communications, however, but whether
19 any other witnesses have testified about the subject on which Mattel demands that
20 Mr. Palmeri testify. The court underscored that point in *Schneider*, where it rejected
21 the government's attempt to subpoena unaired video outtakes from television news
22 reporters because similar information was available from other witnesses who had
23 interacted with the defendant. 2003 U.S. Dist. LEXIS 27324 at *18-*20.

24    In its motion, Mattel admits that other witnesses already have testified on the
25 single issue about which Mattel seeks to examine Mr. Palmeri, specifically, Mr.
26 Larian's supposedly conflicting public accounts of the origins of the Bratz dolls.
27 Motion at 12-13; Exs. 8, 9. Despite Mattel's protestation to the contrary, "[t]he fact
28 that Mattel has obtained testimony from two other reporters ... which *clearly*

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

10

EXHIBIT **B**

PAGE **37**

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  *establishes that Larian has contradicted his sworn testimony on other occasions*" is

2  indeed significant. Motion at 12-13 (emphasis added). Any testimony that Mr.

3  Palmeri might provide on this same subject plainly would be cumulative. *See*

4  *RE/MAX Int'l*, 846 F. Supp. at 910-912 (refusing to compel newspaper reporter to

5  testify in civil lawsuit, where subpoenaing party sought only impeachment evidence

6  and "admit[ted] having some impeachment evidence already in its possession"). The

7  subpoena thus cannot be enforced.

8      **3.  Mattel Has Not Exhausted Alternative Sources.**

9      "Before a reporter's resources can be tapped by subpoena, the party seeking

10  the information must demonstrate that other available sources of the information

11  have been exhausted." *In re Behar*, 779 F. Supp. at 275. As a preliminary matter,

12  the Ninth Circuit has made clear that a litigant cannot compel a non-party reporter to

13  testify about his communications with an opposing party unless and until the litigant

14  deposes the opposing party and specifically questions him about those

15  communications. *Shoen I*, 5 F.3d at 1295. In fact, the Ninth Circuit refused to

16  compel the book author in *Shoen I* to testify precisely because the plaintiffs had not

17  deposed the defendant about statements that he allegedly made to the author. *Id.*

18  The court described the defendant as "an obvious alternative source for discovering

19  what he said to [the author] in their conversations." *Id.* at 1296. Even though the

20  plaintiffs had served interrogatories asking the defendant about his communications

21  with the author – and even though the defendant responded that he "c[ould] not recall

22  the specific content of [his] various meetings or conversations" with the author – the

23  court found that the plaintiffs could not even remotely claim to have exhausted

24  alternative sources until they "plumb[ed] the depths" of the defendant's recollection

25  in deposition. *Id.* at 1297. The fact that the defendant was a "hostile" witness was

26  immaterial. *Id. See also Carushka, Inc. v. Premiere Products, Inc.*, 1989 WL

27  253565, *2 (C.D. Cal. Sept. 1, 1989) (quashing defendant's subpoena relating to

28

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

11

EXHIBIT __B__

PAGE __38__

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  reporter's interview with plaintiff, where defendant had not sought information from

2  plaintiff herself).

3      In this case, Mattel has not deposed Mr. Larian about any communications that

4  he may have had with Mr. Palmeri.[4]  While Mattel asserts that "Mr. Larian cannot be

5  considered an alternative source of the information Mattel needs" (Motion at 12), its

6  argument defies the Ninth Circuit's holding in *Shoen I*.  For this reason alone,

7  Mattel's motion should be denied.

8      But even if Mattel deposed Mr. Larian on this topic, it still could not satisfy

9  this third prong of the *Shoen II* test.  In a passage that the Ninth Circuit cited with

10 approval in *Shoen I*, the D.C. Circuit stressed that the subpoenaing parties "cannot

11 escape their obligation to exhaust alternative sources simply because they fear[] that

12 deposing [numerous] employees would be time-consuming, costly, and

13 unproductive." *Zerilli v. Smith*, 656 F.2d 705, 715 (D.C. Cir. 1981), *cited with*

14 *approval in Shoen I*, 5 F.3d at 1297.  Similarly, in *Baker v. F & F Investment*, 470

15 F.2d 778, 784 (2d Cir. 1972), the Second Circuit suggested that it would be

16 reasonable to require the subpoenaing party to depose as many as 60 persons before

17 permitting that party to compel testimony from a non-party journalist.  As the Ninth

18 Circuit has emphasized, "[c]ompelled disclosure from a journalist must be a *last*

19 *resort after pursuit of other opportunities has failed*." *Shoen I*, 5 F.3d at 1297

20 (emphasis added).

21     Here, too, information about Mr. Larian's statements regarding the origins of

22 the Bratz dolls may be available from other witnesses, including his co-workers,

23 investors, publicists, and industry analysts.  Yet Mattel does not claim to have

24

25

26 _____
   [4] Mr. Palmeri's counsel is unaware of the content of the portions of Mr.
27 Larian's deposition transcript that Mattel has submitted with its motion because that
   exhibit has been filed under seal.  From Mattel's motion, however, it appears that
28 Mattel did not examine Mr. Larian about this subject.  *See* Motion at 12.

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

12

EXHIBIT  B

PAGE  39

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  deposed those witnesses about any such statements. Having failed to do so, they

2  cannot turn to Mr. Palmeri.

3       In sum, Mattel cannot carry its burden on any of the *Shoen II* factors, let alone

4  on all three. The information sought does not go to the "heart" of the case; it would

5  be cumulative of other witnesses' testimony; and Mattel has not exhausted other

6  possible sources, including Mr. Larian himself. For each of these reasons, Mattel

7  cannot overcome Mr. Palmeri's federal constitutional reporter's privilege, and

8  Mattel's motion should be denied.[5]

9  ### 3.  MATTEL CANNOT OVERCOME MR. PALMERI'S INDEPENDENT

10  – AND ABSOLUTE – IMMUNITY UNDER THE CALIFORNIA STATE

11  CONSTITUTIONAL SHIELD LAW.

12  **A.  The State Shield Law Applies In This Action.**

13       Although the shield law is found in the California Constitution, its application

14  is not limited to litigation in state courts. Where a subpoena seeks evidence affecting

15  only the state-law claims in a federal-court action, the state law of privilege applies.

16  *See, e.g., Shaklee*, 110 F.R.D. at 192. Several other circuits also have recognized that

17  state shield laws control state-law claims in federal court. For example, in *In re*

18  *Application of Nat'l Broadcasting Co.*, 79 F.3d 346, 351 (2d Cir. 1996), which

19  concerned a subpoena issued to a news organization in a case involving state-law

20  claims, the Second Circuit analyzed the privilege issue under New York's state shield

21  law alone. Similarly, in *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 279 (3d Cir.

22  1980), where the Third Circuit upheld the denial of a motion to compel a television

23  station to produce outtakes, the court held that the state shield law applied to the

24  action, and provided protection against disclosure.

25

26     [5] There is no basis to Mattel's suggestion that Judge Larson's order permitting

27  further discovery in any way addresses, much less overrules, Mr. Palmeri's claim of privilege. Motion at 5. Nowhere in the transcript of the hearing or in the Court's

28  minute order is the question of the reporter's privilege discussed or ruled upon. Exs. 10-12.

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

13

EXHIBIT B

PAGE 40

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1      Here, Mattel claims that the information sought from Mr. Palmeri "shows

2 guilty knowledge by Larian and MGA that Bryant developed Bratz while an

3 employee of Mattel, in violation of his employment agreement with Mattel," and that

4 the information "bears directly on MGA's contention that Mattel had notice of

5 Bryant's disloyalty prior to November 24, 2003." Motion at 3. In other words, this

6 evidence relates to Mattel's claims of breach of contract, breach of fiduciary duty,

7 and breach of duty of loyalty – all of which arise under state law.

8      Mattel's own Motion for Additional Interrogatories and Depositions confirms

9 that Mr. Palmeri's anticipated testimony would relate to those state-law claims.

10 There, Mattel groups Mr. Palmeri's testimony into a category of evidence separate

11 from the category of evidence that supposedly would be relevant to Mattel's federal

12 RICO claims. *See* Niborski Decl. at ¶ 11, Ex. 10. This distinction between RICO

13 evidence and other evidence is reflected in the Court's Minute Order, as well. *Id.* at

14 ¶ 12, Ex. 11. Since, based on Mattel's representations and the Court's order, Mr.

15 Palmeri's testimony relates solely to state-law issues, he clearly benefits from the

16 protections of the state constitutional shield law.

17      However, even if Mattel were to argue that the evidence it seeks from Mr.

18 Palmeri would affect claims arising under federal law in this action (such as the

19 RICO claims), the state shield law still would be relevant. Courts in this district

20 consistently have recognized that where state and federal causes of action are mixed,

21 the court "should evaluate claims of privilege under *both* state and federal law." *Los*

22 *Angeles Mem. Coliseum Comm'n*, 89 F.R.D. at 492 (emphasis added). In fact, "even

23 in cases in which all claims are based *exclusively* on federal law, federal courts…

24 have traditionally sought guidance from existing state law." *Id.* (emphasis added).

25 Courts in the Ninth Circuit thus will consider the state shield law and the qualified

26 First Amendment privilege when a reporter is subpoenaed in federal court and the

27

28

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

14

EXHIBIT __B__

PAGE __41__

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  information requested relates to both federal and state claims.[6] *Id.* at 494-495;

2  *accord Carushka*, 1989 WL 253565 at *2.

3      *In re Stratosphere Corp. Securities Litigation*, 183 F.R.D. 684 (D. Nev. 1999),

4  is instructive. That lawsuit arose from alleged violations of both federal securities

5  law and state racketeering laws, based in part on the defendants' purportedly false

6  and misleading statements to the media about the Stratosphere Hotel's financial

7  condition. *Id.* at 685. At one point, a journalist wrote an article that included a

8  sentence predicting the Stratosphere's gross revenues in the coming quarter. *Id.*

9  After the defendants denied making any revenue projections to the public, the

10  plaintiffs subpoenaed the journalist to determine the source of his information. *Id.*

11  The court determined that both state and federal privilege laws applied to the action,

12  as the evidence requested related to both state and federal claims. *Id.* at 686. The

13  court noted, however, that it would have looked to state law for guidance even if only

14  federal claims were involved, holding that a federal court should not ignore state

15  policy. *Id.* As the court found that Nevada's shield law provided absolute protection

16  for the journalist's unpublished information, the plaintiffs' motion to compel was

17  denied. *Id.* at 687.

18      Here, Mattel alleges that Mr. Palmeri's testimony is relevant to the issues of

19  whether and when Mr. Bryant allegedly breached his employment contract and duty

20  of loyalty. Even accepting as true the contention that Mr. Palmeri's testimony is

21  relevant at all – which Mr. Palmeri vigorously disputes (*see* Section 2(B)(1), *supra*) –

22  the evidence sought by Mattel relates principally to state-law claims. Consequently,

23  California's shield law applies, and provides Mr. Palmeri with an absolute immunity,

24  as described in Sections 3(B)-3(D), *infra*.

25

---

26  [6] *Agster v. Maricopa County*, 422 F.3d 836 (9th Cir. 2005), and *Crowe v. County of San Diego*, 242 F. Supp. 2d 740 (S.D. Cal. 2003) are distinguishable.
27  *Agster* relates to the question of privilege in relation to a hospital's peer review, not a reporter's privilege against disclosure. *Crowe* involved evidence that was key to a
28  federal-question claim arising under Section 1983.

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

15    EXHIBIT B

PAGE 42

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.      The Shield Law Broadly Protects Non-Party Reporters Like Mr. Palmeri.**

California's shield law effectively protects journalists who want to avoid taking sides as witnesses in the courtroom – because allowing litigants to compel testimony impairs reporters' ability to investigate and to disseminate information to the public.  The California Supreme Court has explained that:

> A comprehensive reporter's immunity … has the effect of safeguarding 'the autonomy of the press.'  [¶]  The threat to press autonomy [from subpoenas] is particularly clear in light of the press' unique role in society.  As the institution that gathers and disseminates information, journalists often serve as the eyes and ears of the public.  Because journalists not only gather a great deal of information, but publicly identify themselves as possessing it, they are especially prone to be called upon by litigants seeking to minimize the costs of obtaining needed information.

*Miller v. Superior Court,* 21 Cal. 4th 883, 898, 986 P. 2d 170 (1999).

To protect against these dangers, the California Legislature enacted a series of statutory reporter's shield laws, including current Evidence Code § 1070.  In 1980, this statutory protection was enshrined in the state Constitution by an overwhelming majority of California voters.  In *Playboy Enterprises*, 154 Cal. App. 3d at 27, the California Court of Appeal observed that "the elevation to constitutional status must be viewed as an intention to favor the interest of the press in confidentiality over the general and fundamental interest of the state in having civil actions determined upon a full development of material facts."  The court concluded that "[i]t has long been acknowledged that our state Constitution is the highest expression of the will of the people acting in their sovereign capacity as to matters of state law.  When the Constitution speaks plainly on a particular matter, it must be given effect as the paramount law of the state." *Id.* at 27-28.

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

16

EXHIBIT **B**

PAGE **43**

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   The shield law, which is now Article I, § 2(b) of the state Constitution,

2 provides that:

3    A publisher, editor, reporter, or other person connected with or

4    employed upon a newspaper, [or] magazine ... shall not be adjudged in

5    contempt ... for refusing to disclose the source of any information

6    procured while so connected or employed for publication in a

7    newspaper, ... or for refusing to disclose any unpublished information

8    obtained or prepared in gathering, receiving or processing of

9    information for communication to the public ...

10   As used in this subdivision, "unpublished information" includes

11    information not disseminated to the public by the person from whom

12    disclosure is sought, whether or not related information has been

13    disseminated, and includes, but is not limited to, all notes, outtakes,

14    photographs, tapes, or other data of whatever sort not itself disseminated

15    to the public through a medium of communication, whether or not

16    published information based upon or related to such materials has been

17    disseminated.

18 Cal. Const. Art. I, § 2(b). This constitutional provision prevents Mattel from

19 compelling Mr. Palmeri to testify here.[7]

20 **C.** **The Shield Law Absolutely Protects Non-Party Reporters From Being**

21   **Compelled To Testify About Unpublished Information In Civil Cases.**

22   The California Supreme Court has made clear that the shield law guarantees

23 non-party reporters an "absolute" protection against being compelled to testify about

24

25   [7] Although the shield law creates an immunity against contempt, it effectively prevents litigants from compelling non-party reporters to testify. *New York Times,*

26 51 Cal. 3d at 461. Consequently, courts regularly grant reporters' motions to quash subpoenas and deny litigants' motions to compel reporters' testimony. *See, e.g.,*

27 *People v. Cooper,* 53 Cal. 3d 771, 819, 821, 281 Cal. Rptr. 90 (1991); *Los Angeles Mem. Coliseum Comm'n,* 89 F.R.D. at 491; *McGarry v. Univ. of San Diego,* 154 Cal.

28 App. 4th 97, 117-121, 64 Cal. Rptr. 3d 467 (2007).

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

17

EXHIBIT B

PAGE 44

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  unpublished information that they acquire in the course of their newsgathering,
2  regardless of whether the information is confidential. *New York Times*, 51 Cal. 3d at
3  461; *see also Miller,* 21 Cal. 4th at 890.  Importantly, as discussed above, the state
4  Constitution broadly defines "unpublished information" to include "data of whatever
5  sort not itself disseminated to the public through a medium of communication,
6  whether or not published information based upon or related to such materials has
7  been disseminated." Cal. Const, Art. I, § 2(b).

8       Civil litigants routinely misapprehend the scope of the shield law's protections
9  for non-party reporters. *First,* they fail to heed the California Supreme Court's
10  unequivocal holding that the Shield Law provides "absolute protection to nonparty
11  journalists in civil litigation from being compelled to disclose unpublished
12  information." *New York Times,* 51 Cal. 3d at 457.  *See also Mitchell v. Superior*
13  *Court,* 37 Cal. 3d 268, 274, 690 P. 2d 625 (1984) ("[s]ince contempt is generally the
14  only effective remedy against a non-party witness, the California [shield law]
15  grant[s] such witnesses virtually absolute protection" in civil cases).  The reason for
16  this absolute protection is clear:  "[c]ivil litigants do not have a constitutional right to
17  unrestricted discovery of relevant information," and thus have no constitutional right
18  that can be balanced against a reporter's state constitutional shield law rights.
19  *Playboy,* 154 Cal. App. 3d at 25.

20       *Second,* many civil litigants mistakenly believe that the shield law protects
21  only information that a reporter obtains in confidence.  But the California Supreme
22  Court has flatly rejected this argument, holding that the Shield Law applies to all
23  information, regardless of whether it was obtained in confidence. *See, e.g., New York*
24  *Times,* 51 Cal. 3d at 461-462 (unpublished photographs of automobile accident on
25  public highway are protected); *Miller,* 21 Cal. 4th at 897 ("the shield law applies to
26  unpublished information whether confidential or not").

27       *Third,* litigants frequently fail to recognize how expansively courts – and
28  California voters – have defined "unpublished information."  But the case law

EXHIBIT B

PAGE 45

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   demonstrates the breadth of this protection.  In *Playboy*, for example, civil litigants

2   sought audio and videotapes, notes, and other documents relating to an interview

3   conducted by a reporter for *Playboy* magazine, portions of which the magazine had

4   published verbatim.  154 Cal. App. 3d at 21.  Rejecting the litigants' argument that

5   the tape of the interview became published information within the meaning of the

6   shield law when the magazine published the interview transcript, the court

7   emphasized that Article I, § 2(b) defines "unpublished information" to include any

8   information "not disseminated to the public by the person from whom disclosure is

9   sought, whether or not related information has been disseminated[.]"  *Id.*  The court

10  explained that "[a]gainst the construction we have adopted, defendants contend that

11  [Playboy] has waived whatever protection it might have under article 1, section 2, by

12  having published information that is either an exact transcription of the … source

13  materials or so closely derived therefrom that disclosure of the source materials

14  would essentially be a repeat disclosure of the already published statements." *Id.* at

15  23.  While "[i]t is evident that the published material … in the article is either based

16  upon or related to the underlying records of the interview," the court nonetheless

17  concluded that the tape "falls squarely within the ambit of article I, section 2

18  protection." *Id.* at 24.

19       *In re Howard*, which underscores how broadly courts have defined

20  unpublished information, is on point.  There, the Court of Appeal held that even

21  though a newspaper published under a reporter's byline an article that contained

22  *direct quotations* attributed to a labor organizer, the reporter maintained his right to

23  refuse to testify about whether he ever had a conversation with that individual. 136

24  Cal. App. 2d at 818-819.  "[I]n the absence of any showing other than the published

25  news story," the court reasoned that the reporter had not disclosed the source of the

26  published information.  The court declared:

27       [i]t cannot be assumed from the use of quotation marks that the

28       statement attributed to [the source] was made directly to the [reporter].

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

19

EXHIBIT   B

PAGE   46

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1     As [the reporter] notes, his information could have been secured in

2     many ways; that is, ... he might have learned of [the labor organizer's

3     statements] from another person; he might have received his information

4     from a printed press release; he might have listened to a recording of the

5     speech; or the story might have been telephoned to his newspaper and

6     rewritten by someone else under his by-line.

7 *Id.* at 819. In short, because the article did not disclose anything other than the

8 quoted statement that appeared within the four corners of the article, the reporter

9 could not be compelled to answer questions about the context of that statement,

10 including how the statement came to be published in the newspaper in an article

11 under the reporter's byline. *Id.*

12 **D.**   **Mattel Cannot Overcome Mr. Palmeri's Shield Law Protections.**

13     Mattel cannot circumvent the holdings in *Miller*, *Playboy*, and *In re Howard*.

14 As the California Supreme Court made clear in *Miller*, the shield law applies

15 regardless of whether Mr. Palmeri obtained the information at issue in confidence.

16 As *Playboy* instructs, the shield law applies regardless of whether Mr. Palmeri

17 published closely related information. And, as *In re Howard* illustrates, the shield

18 law protects Mr. Palmeri from having to answer questions about whether and how he

19 obtained the statement in the article about the origins of the Bratz dolls.

20     Mr. Palmeri's shield-law argument is even stronger than the reporter's

21 argument in *In re Howard* because the *BusinessWeek* article does not even attribute

22 the statement at issue – "[Larian] should know: He got the idea for Bratz after seeing

23 his own kids run around in navel-baring tops and hip-huggers" – to Mr. Larian.

24 Mattel admittedly wants to ask Mr. Palmeri how he obtained that information. But

25 the article does not reveal the source of the information, which thus is not

26 "published" within the meaning of the shield law. *In re Howard*, 136 Cal. App. 2d at

27 818-819. In fact, Mattel seeks Mr. Palmeri's testimony precisely *because* the source

28 of the information regarding the Bratz dolls' origin is not published, and Mattel

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

20   EXHIBIT **B**

PAGE **47**

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  wants to "confirm" who or what the source of the information was.  The information
2  could have come from any number of sources:  a press release, another magazine or
3  newspaper account, a company spokesperson, a publicist, Mr. Larian, or someone
4  else.  Because the answers to these and similar questions are not specifically set forth
5  within the four corners of the article, the shield law absolutely prevents Mattel from
6  compelling Mr. Palmeri to testify about this information, just as the reporter in *In re*
7  *Howard* did not have to testify about how the newspaper obtained the quote that was
8  published in that case.  136 Cal. App. 3d at 818-819.  *See also Playboy*, 154 Cal.
9  App. 3d at 23-24.  For this independent reason, the Court should deny Mattel's
10  Motion.

11  ### 4.   CONCLUSION

12          Given that Mattel's motion is predicated on a single unattributed statement
13  about the origin of Bratz dolls, it is not surprising that Mattel cannot overcome Mr.
14  Palmeri's federal or state constitutional protections.  *First*, the testimony that Mattel
15  seeks is not clearly relevant to an important issue in this case, as it must be under
16  *Shoen II*.  *Second*, the testimony would be cumulative of testimony by other
17  witnesses, who have confirmed that Mr. Larian made different statements to them
18  about the dolls' origins.  *Third*, Mattel has not exhausted all reasonable alternative
19  sources of the information; indeed, despite seemingly limitless discovery, Mattel
20  apparently never asked Mr. Larian about any communications that he may have had
21  with Mr. Palmeri.  Each of these defects dooms Mattel's motion.  *Finally*, the
22  ///
23  ///
24  ///
25
26
27
28

OPPOSITION TO MOTION TO COMPEL
LAX 568590v2 3930059-000040

21

EXHIBIT B
PAGE 48

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  California shield law provides a separate basis for denying Mattel's motion, which

2  seeks to compel Mr. Palmeri to disclose unpublished information.  Consequently,

3  Mr. Palmeri respectfully requests that the Court deny Mattel's motion to compel.

4  DATED: January 29, 2008               DAVIS WRIGHT TREMAINE LLP
                                          ALONZO WICKERS IV
5                                         ROBYN ARONSON

6

7                                         By: _Alonzo Wickers IV_____

8                                              Alonzo Wickers IV

9                                         Attorneys for Non-Party Journalist
                                          CHRIS PALMERI
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B

PAGE 49

22

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**DECLARATION OF CHRIS PALMERI**

EXHIBIT B

PAGE 50

## DECLARATION OF CHRIS PALMERI

I, Chris Palmeri, declare:

1.     I am a reporter for *BusinessWeek*, and am not a party to this lawsuit.  I have been employed as a reporter for *BusinessWeek* since 2000, and have been employed in that capacity at all times relevant to the matters set forth in this declaration.  The matters stated here are true of my own personal knowledge, and, if called to testify, I could and would competently testify to these matters.

2.     In 2003, I worked on an article about toy manufacturer Mattel.  On July 28, 2003, the article was published in *BusinessWeek* under my byline.  The article was entitled "The Corporation:  To Really Be a Player, Mattel Needs Hotter Toys."  A true and correct copy of that article is attached to this declaration as Exhibit A.  Any information that I may possess regarding Mattel was obtained in the course of gathering information for publication in *BusinessWeek*.

3.     On or around July 25, 2007, I received a subpoena from Mattel's attorneys.  A true and correct copy of the subpoena is attached to this declaration as Exhibit B.

This declaration was executed this 29th day of January, 2008, at _Los Angeles_, California.  I declare under penalty of perjury under the laws of the United States of American and of the State of California that the foregoing is true and correct.

Chris Palmeri

EXHIBIT __B__

PAGE __51__

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT A

EXHIBIT __B__

PAGE __52__

JULY 28, 2003

THE CORPORATION

By Christopher Palmeri

Commentary: To Really Be a Player, Mattel Needs Hotter Toys

The Bratz pack has invaded the Gabriele house. The line of trendy dolls burst on the scene two years ago, offering girls a hipper alternative to that old standby, Barbie: Think Jennifer Lopez to Barbie's Reese Witherspoon. Joan Gabriele, a Hollywood (Fla.) mother of two, now has eight Bratz dolls in her home. Her daughters, ages 6 and 8, rarely touch their Barbies. "Barbie is pretty much a thing of the past," she says. "They like Bratz better."

That's bad news for Barbie's maker, Mattel (MAT ) Inc. -- and for the three-year-old turnaround efforts of CEO Robert A. Eckert, the ex-president of Kraft Foods (KFT ) Inc. who replaced the embattled Jill E. Barad. The El Segundo (Calif.) toy giant counts on Barbie for about one-third of its revenues and more of its profits. But Mattel says U.S. Barbie sales declined 2% last year and 14% in this year's first quarter. The overall doll category, says market researcher NPD Group Inc., dropped only 3% in the quarter.

Give Eckert, 48, his due: He pulled Mattel out of its tailspin after its disastrous $3.8 billion acquisition of Learning Co. He got rid of the money-losing computer-game maker and slashed costs. His goal: to bring the stability of a consumer-products company to the hit-driven toymaker. And using such practices as computer-aided design to speed up product development and just-in-time inventory management, he succeeded.

But now it looks like Eckert is learning a valuable lesson: Mattel is selling toys, not soap or cornflakes. Good brand management goes only so far in a business that caters to children's whims. Like it or not, the key to success is launching innovative products and promoting the heck out of them. If you don't do it, your competitors will.

Eckert's strategy has been great for Mattel's bottom line. Profits last year, before special charges, were a healthy $455 million, and the stock has nearly doubled, to $20, since Eckert arrived in May, 2000. But top-line growth has sputtered. U.S. revenues, $3.4 billion in 2002, have declined marginally in the past few years. Total 2002 sales of $4.9 billion crept up from $4.6 billion in 2000 -- thanks to overseas expansion.

While Eckert continues to build on the massive Barbie franchise that Barad constructed, he now knows that he needs hot new toys. Recycling old characters like Sesame Street's Elmo just won't be enough. "We need to do a better job on the top line," he says. "The good news is, it's only spring training, and we have a long season ahead of us."

To that end, Eckert has begun an ambitious push. Between now and Christmas, he hopes to launch 250 new toys, including dozens of Hot Wheels models and Flavas, a Bratz-like hip-hop posse with baggy jeans and serious bling-bling. Originally, half of these toys weren't scheduled until 2004.

That should help boost sales. But it's even more important that Mattel prove it can respond to nimble upstarts as well as traditional big rivals like Hasbro (HAS ) Inc. After all, it took the company more than a year to launch a competitor to MGA Entertainment's Bratz. My Scene Barbie didn't hit stores until last October and has yet to make a dent in Bratz's success. At its Santa Monica (Calif.) store recently, Toy 'R' Us devoted just a sliver of the shelf space to My Scene that it did to Bratz. And My Scene dolls were being offered at 2 for 1. "It's not really catching ground," says Sean P. McGowan, toy industry analyst at Harris Nesbitt Gerard Inc. Mattel will start   -- tossing in a cell phone with 300 free minutes if you buy four of the $13.99 dolls. It also plans to add accessories and boy versions -- Hudson, River, and Bryant.

Barbie isn't the only Mattel stalwart under attack. Its Fisher-Price unit, long the king of preschool, is losing sales to newcomer LeapFrog Enterprises Inc., whose electronic interactive books have captured 19% of the $2.9 billion preschool toy and electronic learning aid markets. Eckert is counting on a successful launch in August for PowerTouch, Mattel's version of LeapFrog's popular interactive book. PowerTouch is operated by pointing a

EXHIBIT _B_

PAGE _53_

finger at an image or a word, instead of the stylus used in LeapFrog's original products. That's key for younger kids. "It's much easier for her to use," says Christopher Coye, a Los Angeles-area parent whose 4-year-old tested a PowerTouch. Still, LeapFrog releases a finger-operated system in August, too.

Over the long term, Eckert puts at risk one of the strongest toy companies around if he can't instill innovation and rapid reaction in his much-tightened organization. To his credit, he is making it crystal clear that he doesn't want ideas to linger in the pipeline. When Matchbox brand managers mentioned this year that they had designed a toy firehouse that could be shipped with no assembly required, Eckert told them to get it out by fall. "Why wait?" he says. "If you've got it, sell it." And not a moment too soon: Sales of Mattel's Hot Wheels and Matchbox cars fell 6% in the first quarter, thanks to competition for boys' attention from action figures like Hasbro's resurgent G.I. Joe and Transformers.

The question is how much Eckert needs to tweak his model. He probably cut back too much, for instance, on marketing. In 1998, Mattel's advertising and promotional spending totaled $631 million, or 13.8% of sales. By last year, it had fallen to $552 million, or 11.2% of sales. Aggressive television marketing boosted sales of Hot Wheels cars in Spain last year, and a strong new campaign could help Mattel toys here.

Mattel won't live or die on every new toy it develops. But it can't just rely on Barbies, either. "Like they say in business school — no risk, no reward," says Isaac Larian, CEO of privately held MGA. He should know: He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers. As Eckert is finding out, sometimes the best ideas are right in front of you.

Palmeri covers toys from Los Angeles.

EXHIBIT B

PAGE 54

# EXHIBIT B

EXHIBIT __B__

PAGE __55__

JUL-25-2007 16:15    P.02/05
07-25-2007 03:03pm From-QUINN EMANUEL    2134433100    T-974 P.002/010 F-337

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

__Central__ DISTRICT OF __California__

MATTEL, INC., a Delaware Corporation

               v.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] CV 04-9059 NM (RNBx)
Consolidated with cases
CV 04-9049 and CV 05-2727

TO: Christopher Palmeri c/o Business Week
3333 Wilshire Blvd., Suite 500
Los Angeles, CA 90010

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. Testimony will be recorded stenographically and by videographer.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | September 4, 2007 9:30 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | August 28, 2007 9:30 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff, Mattel, Inc. | July 25, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND TELEPHONE NUMBER
Timothy L. Alger, QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017    (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT **B**

PAGE **56**

JUL-25-2007  16:15
07-25-2007  03:03pm  From-QUINN EMANUEL                    2134433100          T-874  P.003/010  F-937

P.03/05

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(c) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT   B

PAGE   57

JUL-25-2007  16:16
07-25-2007  03:04pm  From-QUINN EMANUEL                    613443310U                                P.04/05

# ATTACHMENT A

## Documents To Be Produced

I.   **DEFINITIONS**

   1.   "YOU" or "YOUR" means Christopher Palmeri, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

   2.   "LARIAN" means Isaac Larian and his representatives and agents.

   3.   "ARTICLE" means the article bearing YOUR byline published in the Business Week edition dated July 28, 2003, bearing the headline, "To Really Be A Player, Mattel Needs Hotter Toys."

   4.   "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Civil Procedure 34 or Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, optical storage disk, other electronic media, and all other writings and recordings of any kind.

   5.   "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing, constituting, or indicating in any way.

   6.   Wherever used herein, the singular shall include the plural and the plural shall include the singular.

II.   **INSTRUCTIONS**

   A.   YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

   B.   If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such

ATTACHMENT A

EXHIBIT __B__

PAGE __58__

JUL-25-2007  16:16
07-25-2007  03:04pm  From-QUINN EMANUEL                    2134431700        T-... .-..... .    P.05/05

DOCUMENTS identify each DOCUMENT and provide the following information:

      1.    The privilege or protection that you claim precludes disclosure;

      2.    The subject matter of the DOCUMENT;

      3.    The date, author(s), addressee(s); and

      4.    Any additional facts on which YOU would base YOUR claim of privilege or protection.

    C.    YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

    D.    YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

    E.    Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

## III.  DOCUMENTS TO BE PRODUCED.

    All DOCUMENTS REFERRING OR RELATING TO statements made to YOU by LARIAN during YOUR research for the ARTICLE.

EXHIBIT __B__

ATTACHMENT A          PAGE __59__

**DECLARATION OF ALONZO WICKERS IV**

EXHIBIT $\underline{B}$

PAGE $\underline{60}$

# DECLARATION OF ALONZO WICKERS IV

I, Alonzo Wickers IV, declare:

1.      I am an attorney licensed to practice law before all the courts of the State of California and before this Court. I am a partner in the law firm of Davis Wright Tremaine LLP, counsel of record for non-party journalist Chris Palmeri. The matters stated below are true of my own personal knowledge.

2.      After receiving a copy of the subpoena served by Mattel, Inc. on Mr. Palmeri, I engaged in meet-and-confer discussions with Mattel's counsel – first with Tim Alger at Quinn Emmanuel Urquhart Oliver & Hedges, then with Michael Niborski at Stroock & Stroock & Lavan. During these discussions I informed Mattel's counsel that Mr. Palmeri would not comply with the subpoena, since Mr. Palmeri was protected by the absolute privilege of California's shield law, as well as the First Amendment qualified privilege.

3.      The same week that Mattel served its subpoena on Mr. Palmeri, another civil litigant subpoenaed Mr. Palmeri to testify about an article that he had written about another corporation.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on January 29, 2008, at Los Angeles, California.

_Alonzo Wickers IV_
Alonzo Wickers IV.

WICKERS DECLARATION

EXHIBIT B

PAGE 61

## PROOF OF SERVICE BY FEDERAL EXPRESS

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566. I am familiar with the practice at my place of business for collection and processing of correspondence for overnight delivery by Federal Express. Such correspondence will be deposited with a facility regularly maintained by Federal Express for receipt on the next business day.

On January 29, 2008, I served the following document(s): **OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI; DECLARATION OF CHRIS PALMERI WITH EXHIBITS A-B; DECLARATION OF ALONZO WICKERS** by placing a **true copy or original** in a separate envelope for each addressee named below, with the name and address of the person served shown on the envelope as follows:

See attached service list.

and by sealing the envelope and placing it for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices.

Executed on January 29, 2008, at Los Angeles, California.

☐    State    I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☑    Federal    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

| Frank M. Romero | |
| --- | --- |
| Print Name | Signature |

EXHIBIT B

PAGE 62

**SERVICE LIST**
**USDC-CASE NO. CV 04-9049**

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Anthony Algers, Esq.
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Barry B. Langberg, Esq.
Michael J. Niborski, Esq.
STROOCK & STROOCK & LAVAN LLP
2049 Century Park East, Suite 1600
Los Angeles, CA 90067

Thomas J. Nolan, Esq.
Michael H. Page, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Ave., Suite 3400
Los Angeles, CA 90071

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
OVERLAND BORENSTEIN SCHEPER & KIM, LLP
300 South Grand Ave., Suite 2750
Los Angeles, CA 90071

EXHIBIT __B__

PAGE __63__

1

**PROOF OF SERVICE**

2

     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,

3

1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4

     On May 12, 2008, I served true copies of the following document(s) described as

5

**MATTEL, INC.'S NOTICE OF LODGING IN SUPPORT OF MOTION OBJECTING TO DISCOVERY MASTER'S MAY 8, 2008 ORDER DENYING MATTEL'S MOTION FOR**

6

**RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI; AND RENEWED MOTION**

7

**OBJECTING TO FEBRUARY 26, 2008 ORDER** on the parties in this action as follows:

8

Thomas J. Nolan  
**Skadden, Arps, Slate, Meageher & Flom LLP**

9

300 South Grand Ave., Ste. 3400  
Los Angeles, CA 90071

Mark E. Overland  
David C. Scheper  
Alexander H. Cote  
**Overland Borenstein Scheper & Kim LLP**  
601 West Fifth Street, 12th Floor  
Los Angeles, CA 90017

10

11

12

John W. Keker, Esq.  
Michael H. Page, Esq.

13

Christina M. Anderson, Esq.  
**Keker & Van Nest, LLP**

14

710 Sansome Street  
San Francisco, CA 94111

15

16

**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

17

     I declare that I am employed in the office of a member of the bar of this Court at whose

18

direction the service was made.

19

     Executed on May 12, 2008, at Los Angeles, California.

20

21

NOW LEGAL -- Dave Quintana

22

23

24

25

26

27

28

07209/2442344.1