1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | MARINA V. BOGOROD (Bar No. 217524)
(mbogorad@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
5 | Los Angeles, CA  90071
Tel.: (213) 687-5000/Fax: (213) 687-5600
6 |
7 | RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
8 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, Suite 3800
9 | San Francisco, CA  94111-5974
Tel.: (415) 984-2698 / Fax: (415) 984-2626

10 | Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian

11 |

UNITED STATED DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | ) | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | ) | |
| v. | ) | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| MATTEL, INC., a Delaware corporation, | ) | Honorable Stephen G. Larson |
| Defendant. | ) | MATTEL, INC.'S OBJECTIONS AND MGA PARTIES' AND BRYANT'S RESPONSES REGARDING MGA PARTIES' AND BRYANT'S DISPUTED [PROPOSED] JURY INSTRUCTIONS |
| AND CONSOLIDATED ACTIONS. | ) | |

## PRELIMINARY INSTRUCTIONS

| No. | Description | Page |
|---|---|---|
| 9th Cir. 1.2 | CLAIMS AND DEFENSES – PHASE 1A | 8 |
| CACI 107 | DISCREPANCIES IN TESTIMONY | 14 |
| FJPI 104.53 | EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS | 17 |
| 9th Cir. 1.15 | QUESTIONS TO WITNESSES BY JURORS | 22 |

## PHASE 1A CLAIMS INSTRUCTIONS

| No. | Description | Page |
|---|---|---|
| Special Inst. __ | BREACH OF CONTRACT—INTRODUCTION | 25 |
| CACI 303 (1) | BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS | 28 |
| CACI 303 (2) | CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT | 32 |
| CACI 314 (1) | INTERPRETATION OF PARTICULAR TERMS | 38 |
| CACI 314 (2) | INTERPRETATION—DISPUTED TERM | 44 |
| CACI 315 | INTERPRETATION—MEANING OF ORDINARY WORDS | 49 |
| CACI 316 | INTERPRETATION—MEANING OF TECHNICAL WORDS | 53 |
| CACI 317 | INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE | 59 |
| CACI 318 | INTERPRETATION—CONSTRUCTION BY CONDUCT | 63 |
| CACI 320 | INTERPRETATION—CONSTRUCTION AGAINST DRAFTER | 68 |
| Special Inst. __ | INTERPRETATION—ADHESION CONTRACTS | 72 |
| CACI 320 (3) | INTERPRETATION—UNCONSCIONABILITY | 78 |
| Special Inst. __ | INTERPRETATION – INTENT NEVER EXTENDED | 83 |
| Special Inst. __ | INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR INEQUITABLE INTERPRETATION | 87 |
| CACI 305 | MODIFICATION | 92 |
| Special Inst. __ | PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR CODE § 2870) | 96 |
| Special Inst. __ | CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT | 102 |
| Special Inst. __ | CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT | 110 |

i

| No. | Description | Page |
|---|---|---|
| CACI 300 | CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE | 113 |
| CACI 302 | CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS | 116 |
| Special Inst. __ | CONTRACT FORMATION—DOCUMENT MUST OBVIOUSLY BE A CONTRACT | 119 |
| Special Inst. __ | CONSIDERATION | 122 |
| Special Inst. __ | DECLARATORY RELIEF | 125 |
| Special Inst. __ | EVIDENCE OF GOOD FAITH | 129 |
| Special Inst. __ | COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988 | 132 |
| CACI 2201 (1) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—ELEMENT | 138 |
| CACI 2201 (2) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INTENT | 145 |
| Special Inst. __ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INDUCEMENT | 152 |
| Special Inst. __ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—HIRING OF AT WILL EMPLOYEES OF COMPETITORS | 155 |
| Special Inst. __ | "BUT FOR" CAUSATION | 159 |
| CACI 4101 | FIDUCIARY DUTY—ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY DUTY | 162 |
| CACI 4100 | FIDUCIARY DUTY—DEFINED | 168 |
| Special Inst. __ | FIDUCIARY DUTY—EXISTENCE OF DUTY | 173 |
| Special Inst. __ | FIDUCIARY DUTY—BURDEN OF PROVING BREACH | 181 |
| Special Inst. __ | BREACH – RIGHT TO PREPARE TO COMPETE | 186 |
| CACI 4102 (1) | HARM CAUSED BY BREACH OF FIDUCIARY DUTY | 193 |
| Special Inst. __ | AIDING AND ABETTING BREACH OF FIDUCIARY DUTY | 198 |
| CACI 4102 (2) | BREACH OF THE DUTY OF LOYALTY–ESSENTIAL FACTUAL ELEMENTS | 207 |
| Special Inst. __ | DUTY OF LOYALTY DEFINED | 214 |
| Special Inst. __ | BREACH OF THE DUTY OF LOYALTY | 218 |
| CACI 4102 (3) | CONSENT TO EMPLOYEE'S ACTIONS | 225 |
| CACI 4102 (4) | HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY | 230 |
| Special Inst. __ | AIDING AND ABETTING BREACH OF DUTY OF LOYALTY | 234 |
| CACI 2100 | CONVERSION—ELEMENTS | 243 |

1
2

# PHASE 1 – Affirmative Defenses

| No. | Description | Page |
|---|---|---|
| Special Inst. __ | Affirmative Defenses—General | 249 |
| CACI 4120 | Statute of Limitations—Explanation | 252 |
| Special Inst. __ | Mattel's Date of Filing Of Its Claims | 260 |
| Special Inst. __ | Defense: Statute of Limitations (Breach of Duty of Loyalty) | 263 |
| Special Inst. __ | Defense: Statute of Limitations (Intentional Interference with Contract) | 271 |
| Special Inst. __ | Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty) | 275 |
| Special Inst. __ | Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty) | 281 |
| Special Inst. __ | Defense: Statute of Limitations (Copyright Infringement) | 287 |
| Special Inst. __ | Defense: Statute of Limitations (Conversion) | 291 |
| Special Inst. __ | Defense: Statute of Limitations (Statutory Unfair Competition) | 295 |
| Special Inst. __ | Laches: Introduction | 300 |
| Special Inst. __ | Defense: Laches | 307 |
| CACI 336 | Affirmative Defense – Waiver | 313 |
| CACI 1302 | Affirmative Defense – Consent | 321 |
| Special Inst. __ | Estoppel—Definition | 328 |
| Special Inst. __ | Defense: Estoppel of Copyright Claims | 334 |
| Special Inst. __ | Defense: Estoppel of Employment Claims | 340 |
| Special Inst. __ | Defense: Acquiescence | 346 |
| 9th Cir. 17.19 | Defense:  Abandonment (Copyright Infringement) | 352 |
| Special Inst. __ | Defense: 205(d) (Bona Fide Purchaser for Value) | 358 |
| Special Inst. __ | Defense: Good Faith | 362 |
| Special Inst. __ | Defense:  De Minimis Use | 365 |
| Special Inst. __ | Defense:  Unclean Hands | 371 |

# PHASE 1(b) – Damages

| No. | Description | Page |
|---|---|---|
| 9th Cir. 5.1 | Damages—Introduction | 376 |
| CACI 350 (1) | Introduction to Contract Damages | 379 |
| CACI 350 (2) | Measure of Damages—Breach of the "Inventions" Provision of the Employee Agreement | 383 |
| CACI 350 (3) | Measure of Damages—Breach of the "Moonlighting" Provision of the Employee Agreement | 390 |

iii

| CACI 350 (4) | Measure of Damages—Breach of the Conflict Questionnaire | 394 |
|---|---|---|
| Special Inst. __ | Measure of Damages for Intentional Interference with Contract | 398 |
| CACI 2102 | Measure of Damages for Conversion | 402 |
| Special Inst. __ | Measure of Damages for Breach of Fiduciary Duty | 406 |
| Special Inst. __ | Measure of Damages for Breach of Duty of Loyalty | 412 |
| Special Inst. __ | Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty | 418 |
| Special Inst. __ | Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty | 424 |
| 9th Cir. 17.22 | COPYRIGHT—DAMAGES (17 U.S.C. § 504) | 430 |
| 9th Cir. 17.24 | COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b)) | 435 |
| Special Inst. __ | Choice of Alternative Methods of Determining Plaintiff's Damages | 442 |
| 9th Cir. 5.3 | Damages—Duty to Mitigate | 445 |
| 9th Cir. 5.6 | Nominal Damages | 451 |
| CACI 361 | Plaintiff May Not Recover Duplicate Damages | 454 |

**COPYRIGHT JURY INSTRUCTIONS
PHASE I-B
(ONLY AFTER PHASE I-A VERDICT)**

| No. | Description | Page |
|---|---|---|
| 9th Cir. 17.0 | COPYRIGHT – PRELIMINARY INSTRUCTION | 459 |
| | ALTERNATE: | 476 |
| 9th Cir. 17.1 | COPYRIGHT – DEFINED | 479 |
| 9th Cir. 17.3 | COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION | 486 |
| 9th Cir. 17.6 | COPYRIGHT INTERESTS – AUTHORSHIP | 497 |
| Special Inst. 5C | COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION | 500 |
| Special Inst. 6C | COPYRIGHT INFRINGEMENT – COPYING | 505 |
| Special Inst. 7C | COPYRIGHT INFRINGEMENT – FACTUAL COPYING | 509 |
| Special Inst. 8C | COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY | 514 |
| Special Inst. 9C | COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST | 518 |
| Special Inst. 10C | COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK | 537 |

iv

| No. | Description | Page |
|---|---|---|
| Special Inst. 11C | COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION | 540 |
| Special Inst. 12C | COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS MATTEL HAS BASED ITS COP | 546 |
| 9th Cir. 17.20 | DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT | 550 |
| 9th Cir. 17.21 | DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT | 553 |
| Special Inst. 15C | DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT | 556 |

# MATTEL'S GENERAL OBJECTIONS

Each of the following General Objections is hereby incorporated in full into the objections to specific jury instructions set forth below:

1.  Mattel objects generally to defendants' proposed instructions, in that they represent nearly 170 pages of argumentative and defense-slanted instructions that materially deviate, with no good cause, from the standard instructions governing the claims and defenses at issue.  Defendants will be afforded an opportunity at the close of the evidence to present argument as to any issues properly presented to the jury.  There is no reason for defendants to attempt to re-argue the issues by slanting their proposed instructions in a way that consistently benefits defendants.

2.  Mattel objects to defendants' proposed jury instructions to the extent they instruct the jury as to issues the Court has already adjudicated in connection with the parties' cross-motions for partial summary judgment and are contrary to the Court's findings.  *See* April 25, 2008 Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment ("April 25, 2008 Order").

For example, with respect to the Inventions Agreement, the Court has already found as a matter of law that (1) the Inventions Agreement is not ambiguous, (2) "the original Bratz drawings clearly fall within the scope of the Inventions Agreement," (3) that Bryant cannot rely on California *Labor Code* § 2870 because the Bratz works relate to Mattel's business, and (4) that the Inventions Agreement is enforceable.  *See* April 25, 2008 Order, at 4-5.  The Court also found that Bryant cannot defend his actions as "lawful preparations to compete" because he "directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel." *Id.* at 5.

The Court also found as a matter of law that Bryant owed a fiduciary duty and duty of loyalty to Mattel and that he breached those duties when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of

1  fashion dolls to be marketed in direct competition with Mattel's products." April 25, 2008
2  Order, at 5-6.

3       The Court also ruled that Mattel has satisfied several elements of its claim against
4  MGA and Larian for intentional interference with contractual relations. April 25, 2008
5  Order, at 6 (finding that "the first [valid contract], third [intentional acts designed to induce
6  a breach or disruption of the contractual relationship], and fifth [resulting damage]
7  elements are met.").

8       Finally, the Court found that almost all of defendants' affirmative defenses are
9  equitable in nature, and indicated that the Court (and not the jury) will rule on those
10 affirmative defenses—including abandonment, acquiescence, consent, estoppel, failure to
11 mitigate, laches, unclean hands and waiver—after trial. April 25, 2008 Order, at 7.

12      3.   Mattel objects to defendants' proposed jury instructions to the extent they
13 include several instructions regarding contract interpretation issues when the Court has
14 ruled that the Inventions Agreement is not ambiguous, and that Bryant's proposed
15 interpretation is "not reasonable." *See* April 25, 2008 Order, at 4.

16      4.   Mattel objects to defendants' proposed jury instructions on the ground that
17 they deviate substantially from the model instructions found in the Ninth Circuit Manual
18 of Model Jury Instructions and CACI, the Court's preferred sources of jury instructions.
19 *See* Court's Standing Scheduling Order at 9.

20      5.   Mattel further objects to defendants' proposed jury instructions on the ground
21 that they incorporate erroneous statements of law. If these erroneous statements of law are
22 included in the final jury instructions, any resulting verdict would be subject to reversal on
23 appeal.

24      6.   Mattel further objects to defendants' proposed jury instructions on the ground
25 that they are inconsistent with applicable legal standards, as set forth in the briefing on
26 Mattel's motion for partial summary judgment, Mattel's motions in limine and Mattel's
27 proposed jury instructions, which are all hereby incorporated herein by reference.
28 Wherever Mattel has submitted proposed jury instructions in any way overlapping with

2

1  defendants' proposed jury instructions, Mattel requests that the Court adopt Mattel's
2  proposed jury instructions.

3       7.     Mattel further objects to defendants' proposed jury instructions on the ground
4  that they are excessively fact-specific and argumentative, which makes them hopelessly
5  confusing and prejudicial.  Many of the "facts" assumed by defendants in their proposed
6  instructions are argumentative, biased and inaccurate.

7       8.     Mattel further objects to defendants' proposed jury instructions on the ground
8  that they are materially biased toward defendants.

9       9.     Mattel further objects to defendants' proposed jury instructions insofar as they
10 use the derogatory term "sketches" when referring to Carter Bryant's drawings and designs.

11      10.    Mattel reserves the right to assert additional General and Specific Objections
12 to defendants' proposed jury instructions.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

## MGA PARTIES' AND BRYANT'S RESPONSE

1.     Mattel's complaint that the MGA Parties and Bryant have modified certain form instructions and given them a "defense-slant[]" is baseless.   The proposed instructions that follow do deviate from the models on which they are based, but those modifications do not "slant" the instructions in the MGA Parties' and Bryant's favor.  The MGA Parties and Bryant have altered the models in order 1) to make them more comprehensible in the context of this particular trial, 2) to focus the jury on the specific claims and defenses offered by both sides, and 3) to make them more accurate in light of the case law.  Model instructions are not sacrosanct.  They are intended to be modified in order to meet the needs of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) ("The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.   Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").   Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent").

2.     To begin with, Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.   For example, Mattel's reliance on the Court's statement that Bryant "secretly entered into a contract with a Mattel competitor" is premature in light of Bryant's pending Motion for Reconsideration, which specifically challenges this finding in light of the disputed evidence submitted regarding this issue. Mattel's reliance on the Court's ruling on its fiduciary duty claim is likewise problematic.

4

1    Indeed, in light of the California Supreme Court's recent decision in <u>City of Hope Nat'l</u>
2    <u>Med. Ctr. v. Genentech, Inc.</u>, ___ Cal. 4th ___, 2008 WL 1820916, at **6-11 (Apr. 24,
3    2008), it appears that Mattel seeks to invite reversible error in relying on this portion of the
4    Court's order.  (Bryant's pending Motion for Reconsideration explains the impact of <u>City</u>
5    <u>of Hope</u> in more detail, which Bryant will not repeat here.)

6        Moreover, Mattel repeatedly mischaracterizes the Court's holding and its effect.
7    For example, Mattel's partial quote of the Court's Order ("the original Bratz drawings
8    clearly fall within the scope of the Inventions Agreement") does not accurately convey the
9    Court's holding:  the Court specifically held that issues of timing are unresolved (April 25,
10    2008 Order at 4).  The jury will still need to be instructed that Mattel must prove that the
11    BRATZ sketches were "conceived or reduced to practice…during [Bryant's] employment
12    by [Mattel]."  Similarly, the Court made no finding of breach with respect to Mattel's
13    claim for breach of contract based on an alleged failure to communicate his inventions to
14    Mattel – nor could it, given that the issue of whether Bryant was required to communicate
15    those sketches to Mattel could not be resolved without resolution of the timing issues and
16    applicability of Labor Code Section 2870, among other issues.

17        Mattel also mischaracterizes the Court's rulings on its intentional interference claim.
18    Mattel had not moved for summary judgment on its claim for intentional interference with
19    contract.  The Court continued hearing on the MGA Parties' motion for partial summary
20    judgment as to this claim, among others, and is currently scheduled to hear arguments on
21    May 19, 2008.  It is then that the MGA Parties expect to clarify the Court's findings, if any,
22    on this claim.

23        Finally, Mattel mischaracterizes the import of the Court's decision to defer ruling on
24    certain affirmative defenses.  While the Court may ultimately rule on the effect of these
25    defenses, it is apparent from the Court's Order that it expects the jury to make the factual
26    determinations underlying its decision.  Indeed, in its Order, the Court noted that factual
27    issues concerning the bona fide purchaser defense such as good faith and notice would be
28    resolved at trial, such that the Court would be left only with legal issues. (<u>See</u> April 25,

1  2008 Order at 8.)  The factual determinations supporting each of the other affirmative
2  defenses should likewise be placed before the jury.  See, e.g., Bickel v. City of Piedmont,
3  16 Cal. 4th 1040, 1052 (1997) ("Whether there has been a waiver is a question of fact."),
4  abrogated on other grounds, DeBerard Props., Ltd. v. Lim, 20 Cal. 4th 659, 668 (1999);
5  Posey v. Leavitt, 229 Cal. App. 3d 1236, 1244 n.4 (1991) ("[F]actual issues raised by the
6  consent defense would be properly triable by the jury…."); Elmore v. Oak Valley Hosp.
7  Dist., 204 Cal. App. 3d 716, 724 (1988) ("The existence of estoppel is a question of fact
8  for the trial court."); Muraoka v. Budget Rent-a-Car, 160 Cal. App. 3d 107, 117 (1984)
9  (holding trial court erred in granting defendant's demurrer stating, "[the estoppel question]
10  is one of fact which should be left for resolution by a jury and not determined upon general
11  demurrer"); see also Posner v. Grunwald-Marx, Inc., 56 Cal. 2d 169, 189 (1961)
12  ("Whether there has been a waiver is usually regarded as a question of fact to be
13  determined by the jury, or by the trial court if there is no jury.") (internal quotations and
14  citations omitted).

15       3.     Mattel's objection based upon the Court's April 25, 2008 Order is premature,
16  given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be
17  heard on May 19, 2008.  Moreover, even under the Court's April 25, 2008 Order, only one
18  term – "inventions" – was interpreted.  The proposed instructions appropriately set forth
19  the general canon of contract interpretation for any remaining terms in Sections 2(a) or
20  3(a) of the Inventions Agreement and the Questionnaire.

21       4.     As discussed in response to General Objection 1, the MGA Parties' and
22  Bryant's deviation from model instructions is entirely appropriate.

23       5.     Mattel does not identify any erroneous statements of law in this General
24  Objection.  The MGA Parties and Bryant have responded to the specific objections below.

25       6.     Mattel does not identify any erroneous statements of law in this General
26  Objection.  The MGA Parties and Bryant have responded to the specific objections below.

27       7.     The MGA Parties' and Bryant's instructions are not "excessively" fact-
28  specific.  The instructions include sufficient facts to provide the jury with context in

6

1  understanding the instructions.  Given the excessive number of claims that Mattel has
2  brought against the defendants, Mattel cannot now complain that the jury will need some
3  guidance in wading through those claims.  The MGA Parties and Bryant have responded to
4  the specific objections below.

5      8.    Mattel does not identify any specific instances of material bias in this General
6  Objection.  The MGA Parties and Bryant have responded to the specific objections below.

7      9.    The term "sketch" is not derogatory and Mattel has not cited anything to
8  support its contention that the term is "derogatory."  Mattel's own expert used the term
9  repeatedly in reference to Bryant's works at issue here.  (See, e.g., Loetz Report, at 2
10  ("When a designer has an idea, he sketches it out."); id. at 4 ("In Carter Bryant's sketches,
11  the Bratz figures are posed …."); id. at 6 ("The Bratz sketches were drawn …."); id. at 9
12  ("It is the industry standard when creating a new toy … to have the original artist draw
13  sketches"); Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any
14  distinct meaning to you?  A.  Not really …. I don't think there's any real distinction and I
15  think they're used interchangeably.").)

16
17
18
19
20
21
22
23
24
25
26
27
28

## PRELIMINARY INSTRUCTIONS

## CLAIMS AND DEFENSES – PHASE 1A

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

In this trial, the plaintiff is Mattel and the defendants are Carter Bryant, MGA Entertainment, Inc., MGA Entertainment (HK) Limited and Isaac Larian.

Mattel has asserted the following claims against Carter Bryant: (1) Declaratory Relief; (2) Breach of Contract; (3) Breach of Fiduciary Duty; (4) Breach of the Duty of Loyalty; (5) Conversion; and (6) Unfair Competition.

Mattel has asserted the following claims against MGA Entertainment, Inc.: (1) Declaratory Relief; (2) Intentional Interference with Contract; (3) Aiding and Abetting Breach of Fiduciary Duty; and (4) Aiding and Abetting Breach of the Duty of Loyalty.

Mattel has asserted the following claims against Isaac Larian: (1) Declaratory Relief; (2) Conversion; (3) Intentional Interference with Contract; (4) Aiding and Abetting Breach of Fiduciary Duty; (5) Aiding and Abetting Breach of the Duty of Loyalty; and (6) Unfair Competition.

Mattel has asserted the following claims against MGA Entertainment (HK) Limited: (1) Declaratory Relief; (2) Conversion; and (3) Unfair Competition.

Mattel has the burden of proving these claims.

8

1   The defendants deny Mattel's claims. MGA, Carter Bryant, MGA (HK) and Isaac

2   Larian also contend that Mattel's claims are barred by certain affirmative defenses:

3   (1) the statute of limitations; (2) laches; (3) estoppel; (4) waiver; (5) consent; (6)

4   acquiescence; (7) abandonment; (8) bona fide purchaser for value; and (9) unclean

5   hands.  Mattel denies defendants' affirmative defenses.  Defendants have the burden

6   of proof on these affirmative defenses.

7

8   **Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 1.2 (2007).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

# CLAIMS AND DEFENSES – PHASE 1A

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Claims and Defenses on the following grounds:

1.      The model jury instruction contemplates a narrative description of the claims at issue in this trial.  *See* 9th Cir. Civ. Jury Instr. 1.2 (2007) ("To help you follow the evidence, I will give you a brief summary of the positions of the parties . . ..").  Defendants' proposed instruction, which merely sets forth a numbered list of the claims and defenses, identified by title (e.g., "Breach of Contract," "Waiver," etc.), is not helpful to the jury and does not provide a "brief summary of the positions of the parties."

2.      Mattel requests that the Court adopt its proposed instruction, which provides a narrative description of the claims to assist the jury in following the evidence.  *See* Mattel's Proposed Jury Instructions, at 1-2.

3.      Moreover, the list of claims and defenses in defendants' proposed instruction is not accurate or complete.  Mattel's claim for declaratory relief is an equitable claim that should be adjudicated by the Court, not the jury.  Similarly, as the Court concluded in its April 25, 2008 Order on the parties' Motions for Partial Summary Judgment, almost all of defendants' affirmative defenses are equitable, and the Court will rule on them *after* trial.  *See* Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment, dated April 25, 2008 ("April 25, 2008 Order"), at 7-8.  This includes defendants' defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, waiver and good faith transfer pursuant to 17 U.S.C. 205(d).  *See id.*  It is therefore unnecessary and confusing to refer to any of these claims or affirmative defenses in this jury instruction.

4.      Defendants' reference to the affirmative defense of bona fide purchaser for value is also unnecessary and confusing because that defense relates only to Mattel's copyright infringements claims, which are not being litigated in Phase 1A.

5.      Defendants have failed to include Mattel's claim for conversion against MGA Entertainment, Inc.  *See* Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims ("Mattel's Counterclaims"), at 72 (conversion claim "Against All Counter-defendants").

11

## CLAIMS AND DEFENSES – PHASE 1A

## MGA Parties' and Bryant's Response

Mattel ironically complains that the MGA Parties' and Bryant's instruction is insufficiently fact-specific, while complaining that the remainder of the proposed instructions are excessively specific.  The MGA Parties and Bryant suggest that, given the excessive number of claims Mattel has brought, and given the various defenses to those claims, it is preferable to give the jury a basic roadmap and then explain each claim and defense with some context, rather than giving the jury a broad overview followed by specific instructions that are stripped of any explanation or context.

There are number of problems with Mattel's proposed instruction 1.2, as identified in the MGA Parties' and Bryant's Objection thereto, which is incorporated by reference in its entitety.

Mattel's blanket assertion that all declaratory relief claims are equitable in nature runs directly counter to long-established case law.  "Insofar as the right to a jury trial is concerned, it is erroneous to say that all declaratory relief actions are equitable; an action for declaratory relief has been characterized as 'sui generis.'  Where an action for declaratory relief is in effect used as a substitute for an action at law for breach of contract, a party is entitled to a jury trial as a matter of right."  Patterson v. Ins. Co. of N. Am., 6 Cal. App. 3d 310, 315 (1970) (internal citations omitted); see also B.E. Witkin, Cal. Proc.: Trial § 95, p. 115 (4th ed. 1997) ("Unlike other equitable actions, declaratory relief is for some purposes treated as if it were a coercive proceeding, and the courts will not permit it to be used as a device to circumvent the right to a jury trial.")  This is precisely the case here.

1  Mattel also mischaracterizes the import of the Court's decision to defer ruling on certain
2  affirmative defenses.  While the Court may ultimately rule on the effect of these defenses,
3  it is apparent from the Court's Order that it expects the jury to make the factual
4  determinations underlying its decision.  Indeed, in its Order, the Court noted that factual
5  issues concerning the bona fide purchaser defense such as good faith and notice would be
6  resolved at trial, such that the Court would be left only with legal issues.  See April 25,
7  2008 Order at 8.  The factual determinations supporting each other affirmative defense
8  should likewise be placed before the jury.  See, e.g., Bickel v. City of Piedmont, 16 Cal.
9  4th 1040, 1052 (1997) ("Whether there has been a waiver is a question of fact."),
10  abrogated on other grounds, DeBerard Props., Ltd. v. Lim, 20 Cal. 4th 659, 668 (1999);
11  Posey v. Leavitt, 229 Cal. App. 3d 1236, 1244 n.4 (1991) ("[F]actual issues raised by the
12  consent defense would be properly triable by the jury…."); Elmore v. Oak Valley Hosp.
13  Dist., 204 Cal. App. 3d 716, 724 (1988) ( "The existence of estoppel is a question of fact
14  for the trial court."); Muraoka v. Budget Rent-a-Car, 160 Cal. App. 3d 107, 117 (1984)
15  (holding trial court erred in granting defendant's demurrer stating, "[the estoppel question]
16  is one of fact which should be left for resolution by a jury and not determined upon general
17  demurrer"); see also Posner v. Grunwald-Marx, Inc., 56 Cal. 2d 169, 189 (1961)
18  ("Whether there has been a waiver is usually regarded as a question of fact to be
19  determined by the jury, or by the trial court if there is no jury.") (internal quotations and
20  citations omitted).

21

22  Finally, although Mattel's complaint asserts a conversion claim against all defendants, in
23  its Motion for Summary Judgment, Mattel does not list this claim as one of the claims
24  asserted against MGA in Phase One.   (Mattel MSJ at 50:18-20.)   Because Mattel
25  apparently dropped MGA from the claim for Phase One purposes, and MGA relied upon
26  that assertion during the summary judgment process, Mattel should be estopped from now
27  resurrecting the claim against MGA.

28

**DISCREPANCIES IN TESTIMONY (as modified)**

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony. You should consider whether a discrepancy pertains to an important matter or only to something trivial.

**Authority:**  CACI No. 107 (2008) (as modified).

**DISCREPANCIES IN TESTIMONY (as modified)**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Discrepancies in Testimony on the following grounds:

1.      This proposed instruction is unnecessary and potentially confusing.  Notably, there is no such instruction in the Ninth Circuit's Model Jury Instructions, which is the Court's preferred source of jury instructions.  *See* Court's Standing Scheduling Order, at 9. Defendants cite CACI as the source of this proposed instruction, but issues regarding the weight of the evidence are not issues of California law.  CACI is therefore inapplicable.

2.      In any event, the relevant point is adequately addressed in Ninth Circuit Model Instruction 1.11—Credibility of Witnesses, which is included in the parties' joint proposed jury instructions.  *See* Joint Proposed Jury Instructions, at 15.  That instruction advises the jury that it will have to decide which testimony to believe and which testimony not to believe, and that the jury may take into account, in considering a witness's testimony, "whether other evidence contradicted the witness's testimony."  *See id.* (incorporating 9th Cir. Civ. Jury Instr. 1.11 (2007)).

3.      The CACI instruction cited by defendants is duplicative of Ninth Circuit Model Instruction 1.11 (*compare* CACI No. 107 ("In deciding whether to believe a witness's testimony, you may consider . . . the following") *with* 9th Cir. Civ. Jur. Instr. 1.11 ("In considering the testimony of any witness, you may take into account"), and the CACI instruction's additional language is unnecessary.

1

**DISCREPANCIES IN TESTIMONY (as modified)**

2

3

**MGA Parties' and Bryant's Response**

4

5   Without conceding any of the preceding arguments set forth by Mattel, the MGA Parties

6   and Bryant note that the instruction proposed by Mattel entitled "Instruction 1.11—

7   Credibility of Witnesses" has been included in the joint submission of undisputed

8   instructions by the parties. To the extent the Discrepancy in Testimony instruction

9   proposed by the MGA Parties and Bryant is duplicative of Instruction 1.11, the MGA

10   Parties and Bryant do not object that the jury should be instructed on the subject only once.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS**

2

3  A statement made by a party before trial that has a tendency to prove or disprove any

4  material fact in this action and which is against that party's interest is an admission.

5  Evidence of an oral admission not made under oath should be viewed with caution.

6

7  **Authority:**   <u>See</u> Fed. R. Evid. 801(d)(2); 3 Kevin F. O'Malley, Jay E. Grenig, & Hon.

8  William C. Lee, <u>Fed. Jury Prac. & Instr.</u> § 104.53 (5th ed.); BAJI § 2.25 (2008).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Extrajudicial Admission—Cautionary Instruction on the following grounds:

1.     This proposed instruction is erroneous as a matter of law.  Any statement made or adopted by a party is an admission.  *See Fed. R. Evid.* 801(d)(2).  Contrary to defendants' proposed instruction, a *party's* own statement need not (a) have a tendency to prove or disprove any material fact or (b) be against the party's interest to constitute an admission.

2.     Moreover, party admissions relate to the rules of evidence, which the Court (and not the jury) will apply.  A party's statement is simply evidence to the jury, to be weighed along with all the other evidence admitted at trial.  Accordingly, it is misleading and prejudicial to inform the jury that all extrajudicial admissions "should be viewed with caution."

3.     The authority cited by defendants does not support their request for the proposed instruction.  The citation to *Federal Jury Practice and Instructions* is misleading at best since defendants selectively incorporate only one part of the statement made in that source (that extrajudicial admissions should "be considered with caution"), and fail to incorporate the complete statement that when extrajudicial admissions are proved by reliable evidence, they should "be treated as trustworthy and should be considered along with all other evidence in the case."  *See* 3 *Fed. Jury Prac. & Instr.* § 104.53 (5th ed.).  BAJI is inapplicable because issues regarding the weight of the evidence are not issues of California law.  In addition, BAJI is no longer identified by the Court as a source for jury instructions, *see id.*, and BAJI is not officially approved by California state court rules.  *See Cal. Rule of Court* 2.1050 (stating that CACI, and not BAJI, "are the official instructions for use in the state of California.").

18

1    4.    This proposed instruction is also unnecessary.  Notably, there is no

2    comparable instruction in the Ninth Circuit Model Jury Instructions, which is the Court's

3    preferred source of jury instructions.  *See* Court's Standing Scheduling Order, at 9.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS**

2

3 **MGA Parties' and Bryant's Response**

4

5 Mattel's objection to the portion of the instruction referring to the "tendency to prove or

6 disprove a material fact" is without merit.  This is simply a reference to relevancy (see Fed.

7 R. Evid. 201) and will not mislead the jury.

8

9 Mattel's further objections to the portion of the instruction indicating that certain

10 admissions should be viewed with caution is nonsensical.  Mattel complains that this

11 portion is misleading because the Court, not the jury, will make evidentiary rulings, and

12 yet complains in the next paragraph that this is the only part of the instruction that is taken

13 directly from the approved model.  In fact, the jury, not the Court, will determine what

14 weight and credibility should be given to the evidence, and this instruction provides proper

15 guidance in that determination.

16

17 In addition, in proposing jury instructions, the parties are not limited to the subject matter

18 covered by the Ninth Circuit Model Instructions.  See, e.g., Jones v. Hollenback, 2007 WL

19 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury Instruction No. 7 is not a

20 Ninth Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22,

21 is irrelevant.  The instruction correctly and clearly states the law.  There is nothing

22 confusing about the purpose and intent of this instruction.").

23

24 Moreover, contrary to Mattel's assertion, the BAJI instructions continue to be relied upon

25 as a source of model jury instructions in both federal and California courts.  See, e.g.,

26 Jones, 2007 WL 3335012, at *11 ("The fact that Jury Instruction No. 7 is not a Ninth

27 Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22, is

28 irrelevant.  The instruction correctly and clearly states the law.  There is nothing confusing

1   about the purpose and intent of this instruction."); <u>Buell-Wilson v. Ford Motor Co.</u>, 160
2   Cal. App. 4th 1107, 1167 (2008) (asserting that, regarding punitive damages, "[a]n
3   appropriate jury instruction would have been one similar to BAJI No. 14.72.2"); <u>Mayes v.</u>
4   <u>Bryan</u>, 139 Cal. App. 4th 1075, 1091-92 (2006) (approving an instruction given at trial that
5   was a mixture of CACI and BAJI models; noting that using definition of term from BAJI
6   instruction made CACI instruction intelligible).  Thus, the MGA Parties' and Bryant's use
7   of some of the BAJI language is not inappropriate.

8

9   Finally, the preceding instruction is supported by federal law. <u>See</u> <u>Kelly v. Am. Standard,</u>
10  <u>Inc.</u>, 640 F.2d 974, 985 (9th Cir. 1981) (instruction stating that "a party's testimony on
11  alleged out of court admissions should be 'considered with caution and weighed with great
12  care'" may be appropriate).  As Mattel's instructions does not contain an instruction
13  providing for this principle, the proposed instruction is proper.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## QUESTIONS TO WITNESSES BY JURORS

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness.  You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness.  If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court.  Do not sign the question.  I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror.  This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case.  If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons.  Do not give undue weight to questions you or other jurors propose.  You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so.  It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 1.15 (2007).

1

## QUESTIONS TO WITNESSES BY JURORS

2

3

## Mattel's Objection

4

Mattel objects to defendants' proposed instruction regarding Questions to Witnesses

5

by Jurors on the following grounds:

6

1.      This proposed instruction is unnecessary and confusing unless the Court

7

indicates that it intends to allow jurors to propose questions to be asked of witnesses in this

8

case.  If the Court allows jurors to propose questions, Mattel does not object to the

9

inclusion of Ninth Circuit Model Instruction 1.15 in the jury instructions.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **QUESTIONS TO WITNESSES BY JURORS**

2

3 | **MGA Parties' and Bryant's Response**

4 | Based on Mattel's response, Mattel, Bryant and the MGA Parties agree that this instruction

5 | should be given if the Court allows jurors to propose questions to be asked of witnesses.

6 | See United States v. Feinberg, 89 F.3d 333, 337 (7th Cir. 1996) ("Whether to permit jurors

7 | to ask questions is a decision best left to the discretion of the district judge."); accord

8 | United States v. Huebner, 48 F.3d 376, 382 (9th Cir. 1994) (procedure allowing jurors to

9 | ask questions was not in error).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PHASE 1A CLAIMS INSTRUCTIONS

## BREACH OF CONTRACT CLAIMS

Mattel has asserted claims for breach of contract against Carter Bryant.

I will now instruct you regarding the law as to these claims.

## BREACH OF CONTRACT—INTRODUCTION

Mattel claims that it and Carter Bryant entered into two contracts in the form of (1) Mattel's Employee Confidential Information and Inventions Agreement, and (2) Mattel's Conflict of Interest Questionnaire.

I will refer to Mattel's Employee Confidential Information and Inventions Agreement as the "Inventions Agreement." Carter Bryant's Inventions Agreement has been admitted into evidence as Exhibit _____.

I will refer to Mattel's Conflict of Interest Questionnaire as the "Questionnaire." The Conflict of Interest Questionnaire has been admitted into evidence as Exhibit _____.

# BREACH OF CONTRACT—INTRODUCTION

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Breach of Contract—Introduction on the following grounds:

1.      The model jury instruction contemplates a narrative description of the contracts and breaches of contract at issue in this trial.  *See* CACI No. 300 ("*insert brief summary of alleged contract*"; "*briefly state the alleged breach*").  Defendants' proposed instruction, which merely lists the contracts by name and nothing more is not helpful to the jury and does not provide a "brief summary" to introduce the jury to issues relating to the breach of contract claims.

2.      Mattel requests that the Court adopt Mattel's proposed jury instruction, which conforms to CACI No. 300 and provides a brief narrative description of the issues to assist the jury.  *See* Mattel's Proposed Jury Instructions, at 5-6.

26

**BREACH OF CONTRACT—INTRODUCTION**

**MGA Parties' and Bryant's Response**

The "narrative description of the contracts and breaches of contract" that Mattel contends is missing has been set forth in the MGA Parties' and Bryant's instructions pertaining to each of the alleged breaches.  One of the reasons for the Court's Phasing Order in this case was to allow the jury to clearly consider the distinct breach of contract claims, without unduly confusing the jury with other issues. The MGA Parties' and Bryant's proposed breach of contract instructions therefore discuss each alleged breach of contract separately, so that the jury will not be confused as to what conduct is alleged to have breached each of the two provisions of the Inventions Agreement, and the Questionnaire. This is particularly necessary because Bryant's defenses to the different breach of contract claims are different and distinct. Therefore, it would confuse the jury to have a lengthy summary here, rather than a shorter summary pertaining to each claim.

In turn, Mattel's proposed instruction on this subject is deficient in several respects, as shown in the MGA Parties' and Bryant's Objections thereto, and actually violates CACI No. 300 by failing to include any of the affirmative defenses asserted in this case. Moreover, Mattel's inclusion of reference to the Court's April 25, 2008 Order in that instruction is both erroneous and unduly prejudicial for all of the reasons set forth in MGA Parties and Bryant's Objections to that instruction.

## BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

To recover damages from Carter Bryant for breach of contract, Mattel must prove all of the following:

1. That Mattel and Carter Bryant entered into a valid contract;

2. That Mattel did all, or substantially all, of the significant things that the contract required it to do;

3. That all the conditions by the contract for Carter Bryant's performance had occurred;

4. That Carter Bryant did something that the contract prohibited him from doing or failed to do something he was obligated to do; and

5. That Mattel was harmed by that conduct.

**Authority:** CACI No. 303 (2008) (as modified).

# BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Breach of Contract—Essential Factual Elements on the following grounds:

1.      This proposed instruction deviates from the model instruction found in CACI. *See* CACI No. 303.  Defendants have changed the term "contract" to "valid contract," which is unnecessary and argumentative.

2.      Mattel requests that the Court adopt Mattel's proposed jury instruction, which conforms to the model instruction.  *See* Mattel's Proposed Jury Instructions, at 7.

**BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS**

**MGA Parties' and Bryant's Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").   Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

The specification that a valid and enforceable contract is required is actually an element of Mattel's claim. See Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1092 (9th Cir. 2005) (plaintiff "must prove, as an element of the breach of contract claim, that a valid contract existed"). Moreover, one of Bryant's defenses in this case is that one of the contracts at issue – namely, the Questionnaire – is not a valid contract, making the modification of the model instruction as proposed by the MGA Parties and Bryant necessary here.

In turn, Mattel's proposed instruction on this subject is deficient in several respects and

should not be given for the reasons stated in the MGA Parties' and Bryant's Objections.

## CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT

Mattel claims that Carter Bryant breached Sections 2(a) of his Inventions Agreement.

Section 2(a) provides: "I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents, and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings."

The Inventions Agreement defines the term "inventions" as follows: "the term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."

Mattel's claim relates to the BRATZ sketches prepared by Carter Bryant, which have been admitted into evidence as Exhibits _____. Mattel claims that the term "inventions" in the Inventions Agreement includes all creative works and applies to the BRATZ sketches. Mattel also contends that Carter Bryant "conceived or reduced to practice" the BRATZ sketches during his employment at Mattel. Mattel claims that Carter Bryant breached Section 2(a) of the Inventions Agreement by failing to communicate those "inventions" to Mattel.

Carter Bryant claims that the term "inventions" is limited to technical, scientific discoveries and does not apply copyrightable material, such as the BRATZ sketches. Carter Bryant also contends that he neither conceived of the BRATZ sketches nor reduced them to practice during his employment at Mattel.

In order to prevail on its claim, Mattel bears the burden of proving by a preponderance of the evidence:

    1.    That the term "inventions" in the Inventions Agreement applies to the BRATZ sketches;

    2.    That Carter Bryant conceived or reduced to practice the invention during his employment at Mattel;

    3.    That Carter Bryant failed to communicate to Mattel the invention as promptly and fully as practicable; and

    4.    That Mattel was harmed by that failure.

**Authority:**  CACI No. 303 (2008) (as modified); Hitzeman v. Rutter, 243 F.3d 1345, 1356 (Fed Cir. 2001) (quoting Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (1994)).

## CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Contract Claim—Section 2(A) of Inventions Agreement on the following grounds:

1.     This proposed instruction deviates from the model instruction found in CACI. *See* CACI No. 303.  Defendants add unnecessary and confusing language regarding the parties' arguments and misstate the elements for a breach of contract claim set forth in CACI No. 303.  The proposed instruction erroneously suggests that Mattel must prove additional elements, beyond those set forth in CACI No. 303, to recover on its breach of contract claims.

2.     This proposed instruction fails to properly inform the jury that the Court has already ruled that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement," April 25, 2008 Order, at 4, and that Bryant failed to communicate his inventions to Mattel.  *Id.* at 6.  It is misleading and prejudicial for defendants to inform the jury of Bryant's arguments to the contrary, when those arguments have been explicitly rejected by the Court.

3.     This proposed instruction is also argumentative and misstates Mattel's claims in this case.  The "instruction" emphasizes defendants' contentions and theories, rather than instructing the jury on the law.

4.     Defendants' reliance on *Hitzeman v. Rutter*, 243 F.3d 1345, 1356 (Fed. Cir. 2001), a patent interference case, to inform the meaning of "conceive" in the Inventions Agreement is improper absent a showing that both Mattel and Carter Bryant intended "conceive" to have only the technical meaning that it has under patent law.

34

**CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT**

**MGA Parties' and Bryant's Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").   Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").  As shown below, the modifications in question are warranted by the issues before the Court.

Further, Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are unresolved (April 25, 2008 Order at 4).  Thus, the jury will still need to be instructed that Mattel must prove that the BRATZ sketches were "conceived or reduced to

35

1  practice…during [Bryant's] employment by [Mattel]."    Similarly, the Court made no

2  finding of breach with respect to Mattel's claim for breach of contract based on an alleged

3  failure to communicate his inventions to Mattel – nor could it, given that the issue of

4  whether Bryant was required to communicate those sketches to Mattel could not be

5  resolved without resolution of the timing issues and applicability of Labor Code Section

6  2870, among other issues.

7

8  Moreover, the CACI instructions for use of CACI 303 direct the parties to omit elements

9  that are not contested. Accordingly, with respect to the Inventions Agreement, the MGA

10 Parties and Bryant omitted the element pertaining to entering into a contract in reliance on

11 the Court's prior ruling establishing that there is no dispute as to the fact that Bryant and

12 Mattel entered into a contract.  As proposed, the preceding instruction thus correctly states

13 the remaining elements that Mattel is still required to prove.  More importantly, the

14 instruction breaks down the element of breach of Section 2(a) of the Inventions Agreement

15 into the proposed subparts based upon the specific contractual language that Mattel is

16 alleging Bryant breached. This issue of the timing of the conception of BRATZ, the timing

17 of its reduction to practice, and whether either was done during Bryant's employment are

18 critical to the resolution of the Mattel's breach of contract claim.  This is precisely the

19 reason why each alleged breach must be dealt with in a separate instruction, as proposed

20 by the MGA Parties and Bryant. Indeed, the Court's own Phasing Order has been

21 expressly designed to allow for clear and specific presentation to the jury of the breaches at

22 issue. Thus, the "additional" elements that Mattel complains it should not be required to

23 prove are actually the very contractual provisions that Mattel alleges Bryant breached.

24

25 Mattel's complaint that the instruction is argumentative and allegedly emphasizes the

26 defenses asserted misses the mark.  The instruction quotes the language of the contract at

27 issue, unlike Mattel's own proposed instruction on this subject, which blatantly

28 mischaracterizes the contract and the Court's April 25, 2008 Order.    Further, as

appropriate under CACI No. 300, the instruction sets forth both Mattel's and Bryant's contentions concerning Mattel's claim for breach of Section 2(a) of the Inventions Agreement.   Finally, Mattel's quarrel with the MGA Parties' and Bryant's reliance on Hitzeman v. Rutter Group, 243 F.3d 1345, 1356 (Fed. Cir. 2001), to inform the meaning of "conceive" in the Inventions Agreement is unavailing, as there is no evidence that the parties intended any other meaning of the terms "conceived and reduced to practice" than its technical meaning under the established law; therefore, it would be inappropriate to submit the interpretation of the terms in question to the jury without the instruction proposed by the MGA Parties and Bryant. Indeed, Mattel does not dispute that the meaning of the term as set forth in the MGA Parties' and Bryant's proposed instruction accurately reflects the technical meaning of the term in question.

1  **INTERPRETATION OF PARTICULAR TERMS**

2

3  I am going to instruct you as to the meaning of certain terms in the Inventions Agreement.

4  "Conceived" refers to the mental part of an invention.  The test for conception is whether

5  the inventor had an idea that was definite and permanent enough that one skilled in the art

6  could understand the invention.  An idea is definite and permanent when the inventor has a

7  specific, settled idea, a particular solution to the problem at hand, not just a general goal or

8  research plan.

9

10  "Reduced to practice" refers to creating the physical embodiment of an invention that

11  achieves its purported purpose.  In order for an invention to be reduced to practice, the

12  invention does not need to be in a final or perfect form, but the inventor's efforts must

13  have passed beyond crude and imperfect experiments.

14

15  I have found that the following terms are ambiguous.  You must determine whether Mattel

16  has met its burden to prove the meaning of the term "inventions" and the term "during my

17  employment by the Company."   The following instructions may help you interpret the

18  meaning of those terms in the contract.

19

20  **Authority:**  CACI No. 314 (2008) (as modified); <u>Hitzeman v. Rutter</u>, 243 F.3d 1345, 1356

21  (Fed Cir. 2001) (quoting <u>Burroughs Wellcome Co. v. Barr Labs., Inc.</u>, 40 F.3d 1223, 1228

22  (Fed. Cir. 1994)).

23

24

25

26

27

28

# INTERPRETATION OF PARTICULAR TERMS

## Mattel's Objection

Mattel objects to Defendants' proposed instruction regarding Interpretation of Particular Terms on the following grounds:

1.      Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights."  *Id*.  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id*.  Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id*.  Accordingly, this proposed instruction, which purports to tell the jury that the Court has found "the following terms are ambiguous" is improper and misleading.

2.      In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because the interpretation of written contracts is for the Court, not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

3.      Because there is no genuine dispute as to the interpretation of the Inventions Agreement (per the Court's April 25, 2008 Order), there is no basis to give this proposed instruction.  Although defendants cite CACI No. 314, this proposed instruction bears no resemblance to that model instruction.

4.      Defendants' reliance on *Hitzeman v. Rutter*, 243 F.3d 1345, 1356 (Fed. Cir. 2001), a patent interference case, to inform the meaning of "conceive" in the Inventions Agreement is improper absent a showing that both Mattel and Carter Bryant intended "conceive" to have only the technical meaning that it has under patent law.

5.     This proposed instruction is improper absent a prior finding that Mattel and Carter Bryant intended, at the time of contracting, that "reduced to practice" would only have the technical meaning ascribed by patent law.  The Court explicitly rejected this argument in its April 25, 2008 Order.

1 **INTERPRETATION OF PARTICULAR TERMS**

2

3 **MGA Parties' and Bryant's Response**

4

5 Mattel's objection based upon the Court's April 25, 2008 Order is premature, given

6 Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard

7 on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original

8 Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt

9 to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are

10 unresolved (April 25, 2008 Order at 4).  Thus, the jury will still need to be instructed that

11 Mattel must prove that the BRATZ sketches were "conceived or reduced to

12 practice…during [Bryant's] employment by [Mattel]."  Similarly, the Court made no

13 finding of breach with respect to Mattel's claim for breach of contract based on an alleged

14 failure to communicate his inventions to Mattel—nor could it, given that the issue of

15 whether Bryant was required to communicate those sketches to Mattel could not be

16 resolved without resolution of the timing issues and applicability of Labor Code Section

17 2870, among other issues.

18

19 Further, as set forth in Bryant's Motion For Reconsideration, the jury must interpret

20 particular contractual terms to the extent conflicting extrinsic evidence supports more than

21 one reading of the particular terms.  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,

22 __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24, 2008) (affirming submission of

23 contract interpretation issue to the jury where disputed factual evidence potentially

24 supports more than one reading of a contract term); Dell'Oca v. Bank of New York Trust

25 Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of a contract

26 is essentially a judicial function, it is the jury's responsibility, as the trier of fact, to resolve

27 any conflicts in the extrinsic evidence properly admitted to interpret the language of a

28 contract.") (internal citations omitted); Morey v. Vannucci, 64 Cal. App. 4th 904, 912-13

1 (1998) ("Where the interpretation of contractual language turns on a question of the
2 credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not solely a
3 judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the
4 extrinsic evidence properly admitted to interpret the language of a contract.") (internal
5 citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>, 2006 WL
6 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve
7 any conflict in the extrinsic evidence properly admitted to interpret the language of a
8 contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>, 1998
9 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the
10 parol evidence is in conflict, the resolution of that conflict is a question of fact for the
11 jury").

12

13 Mattel's quarrel with the MGA Parties' and Bryant's reliance on <u>Hitzeman v. Rutter</u>
14 <u>Group</u>, 243 F.3d 1345, 1356 (Fed. Cir. 2001), to inform the meaning of "conceive" in the
15 Inventions Agreement is unavailing, as there is no evidence that the parties intended any
16 other meaning of the terms "conceived and reduced to practice" than its technical meaning
17 under the established law; therefore, it would be inappropriate to submit the interpretation
18 of the terms in question to the jury without the instruction proposed by the MGA Parties
19 and Bryant. Indeed, Mattel does not dispute that the meaning of the term as set forth in the
20 MGA Parties' and Bryant's proposed instruction accurately reflects the technical meaning
21 of the term in question.

22

23 <u>Lastly</u>, Mattel objects that this instruction does not contain all of the language in CACI No.
24 314. The omitted language Mattel complains of is included in the following proposed
25 instruction entitled "Interpretation –Disputed Term."  This was done for clarity's sake.
26 While it is also proper to combine the two instructions, the MGA Parties and Bryant
27 submit that the issues would be more streamlined and easily understood by the jury if these
28 issues were presented in two separate instructions, as proposed by the MGA Parties and

1   Bryant.

## **INTERPRETATION—DISPUTED TERM**

In deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

**Authority:** CACI No. 314 (2008) (as modified).

# INTERPRETATION—DISPUTED TERM

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Interpretation—Disputed Term on the following grounds:

1.      Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights."  *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id.*  Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id.*  Accordingly, this proposed instruction, which purports to tell the jury what to do "[i]n deciding what the terms of a contract mean" is improper and misleading.

2.      In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because the interpretation of written contracts is for the Court, not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

3.      This proposed instruction deviates from the model instruction found in CACI and is misleading.  Defendants include only one paragraph from CACI No. 314, and omit two others.  CACI No. 314 also states that the parties' respective positions regarding interpretation issues should be inserted in the instruction, which defendants fail to do.

1  **INTERPRETATION—DISPUTED TERM**

2

3  **MGA Parties' and Bryant's Response**

4

5  Mattel's objection based upon the Court's April 25, 2008 Order is premature, given

6  Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard

7  on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original

8  Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt

9  to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are

10  unresolved (April 25, 2008 Order at 4).  Thus, the jury will still need to be instructed that

11  Mattel must prove that the BRATZ sketches were "conceived or reduced to practice …

12  during [Bryant's] employment by [Mattel]."  Moreover, even under the Court's April 25,

13  2008 Order, only one term – "inventions" – was interpreted.  This instruction appropriately

14  sets forth the general canon of contract interpretation for any remaining disputed terms in

15  Sections 2(a) or 3(a) of the Inventions Agreement and the Questionnaire.

16

17  Further, as set forth in Bryant's Motion For Reconsideration, the jury must interpret

18  particular contractual terms to the extent conflicting extrinsic evidence supports more than

19  one reading of the particular terms.  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,

20  __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24, 2008) (affirming submission of

21  contract interpretation issue to the jury where disputed factual evidence potentially

22  supports more than one reading of a contract term); Dell'Oca v. Bank of New York Trust

23  Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of a contract

24  is essentially a judicial function, it is the jury's responsibility, as the trier of fact, to resolve

25  any conflicts in the extrinsic evidence properly admitted to interpret the language of a

26  contract.") (internal citations omitted); Morey v. Vannucci, 64 Cal. App. 4th 904, 912-13

27  (1998) ("Where the interpretation of contractual language turns on a question of the

28  credibility of conflicting extrinsic evidence, interpretation of the language is not solely a

46

1  judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the
2  extrinsic evidence properly admitted to interpret the language of a contract.") (internal
3  citations omitted); see also First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust, 2006 WL
4  2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve
5  any conflict in the extrinsic evidence properly admitted to interpret the language of a
6  contract," quoting Morey v. Vannucci); Fletcher Capital Mkts., Inc. v. Calgene, Inc., 1998
7  WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the
8  parol evidence is in conflict, the resolution of that conflict is a question of fact for the
9  jury").

10

11  Lastly, Mattel's complaint that this instruction deviates from the model is no basis for
12  rejecting it.   In proposing jury instructions, the parties are permitted to modify the
13  language of any model instruction to make it less confusing or more appropriate in the
14  context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir.
15  1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions:
16  "The texts of 'standard' jury instructions are not debated and hammered out by legislators,
17  but by ad hoc committees of lawyers and judges.   Jury instructions do not come down
18  from any mountain or rise up from any sea.   Their precise wording, although extremely
19  useful, is not blessed with any special precedential or binding authority.   This description
20  does not denigrate their value, it simply places them in the niche where they belong.").
21  Indeed, modification is sometimes necessary to make an instruction accurate and complete.
22  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving
23  modification of Ninth Circuit model instruction to include additional elements, noting that
24  "[h]ad the district court merely read the model jury instruction, it would have committed
25  plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

26

27  Here, the omitted language Mattel complains of was actually included in the previous
28  proposed instruction entitled "Interpretation of Particular Terms."   This was done for

1  clarity's sake.  While it is also proper to combine the two instructions, the MGA Parties
2  and Bryant submit that the issues would be more streamlined and easily understood by the
3  jury if these issues were presented in two separate instructions, as proposed by the MGA
4  Parties and Bryant.

48

1  **INTERPRETATION—MEANING OF ORDINARY WORDS**

2

3  You should assume that the parties intended the words in their contract to have their usual

4  and ordinary meaning unless you decide that the parties intended the words to have a

5  special meaning.

6

7  **Authority:** CACI No. 315 (2008).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTERPRETATION—MEANING OF ORDINARY WORDS

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Interpretation—Meaning of Ordinary Words on the following grounds:

1.      Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights."  *Id*.  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id*. Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id*.  Accordingly, this proposed instruction, which purports to tell the jury how to interpret the meaning of words in the contract is improper and misleading.

2.      In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because, as a matter of law, the interpretation of written contracts is for the Court, not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

3.      Although the instruction tracks CACI No. 315, Mattel objects to its use without a proper instruction under CACI No. 314.

## INTERPRETATION—MEANING OF ORDINARY WORDS

### MGA Parties' and Bryant's Response

Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008. Moreover, Mattel's partial quote of the Court's Order ("'the original Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt to blatantly mischaracterize the Order: the Court specifically held that issues of timing are unresolved (April 25, 2008 Order at 4). Thus, the jury will still need to be instructed that Mattel must prove that the BRATZ sketches were "conceived or reduced to practice … during [Bryant's] employment by [Mattel]." Moreover, even under the Court's April 25, 2008 Order, only one term – "inventions" – was interpreted. This instruction appropriately sets forth the general canon of contract interpretation for any remaining disputed terms in Sections 2(a) or 3(a) of the Inventions Agreement and the Questionnaire.

Further, as set forth in Bryant's Motion For Reconsideration, the jury must interpret particular contractual terms to the extent conflicting extrinsic evidence supports more than one reading of the particular terms. See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24, 2008) (affirming submission of contract interpretation issue to the jury where disputed factual evidence potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact, to resolve any conflicts in the extrinsic evidence properly admitted to interpret the language of a contract") (internal citations omitted); Morey v. Vannucci, 64 Cal. App. 4th 904, 913 (1998) ("Where the interpretation of contractual language turns on a question of the credibility of conflicting extrinsic evidence, interpretation of the language is not solely a

judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract.") (internal citations omitted); see also First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust, 2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract," quoting Morey v. Vannucci); Fletcher Capital Mkts., Inc. v. Calgene, Inc., 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the parol evidence is in conflict, the resolution of that conflict is a question of fact for the jury").

Furthermore, Mattel's suggestion that the preceding instruction, which is based on CACI No. 315, should be used in conjunction with an instruction under CACI No. 314 concedes that an instruction under CACI No. 315 is proper. At the same time, the CACI No. 314 instruction was actually included in another instruction proposed by the MGA Parties and Bryant entitled "Interpretation of Particular Terms." This was done for clarity's sake.

## INTERPRETATION—MEANING OF TECHNICAL WORDS

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

In this case, Carter Bryant contends that "inventions," "conceived" and "reduced to practice" are terms of art generally associated with patent law and relate to "inventions" that are potentially patentable. Carter Bryant further contends that the word "invention" is not ordinarily used in connection with copyright law, which instead provides protection for "original works of authorship." Mattel denies those contentions.

**Authority:** CACI No. 316 (2008) (modified).

1    **INTERPRETATION—MEANING OF TECHNICAL WORDS**

2

3    **Mattel's Objection**

4

5        Mattel objects to defendants' proposed instruction regarding Interpretation—

6    Meaning of Technical Words on the following grounds:

7        1.      Defendants' proposed instruction is contrary to the Court's April 25, 2008

8    Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous

9    on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at

10   4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an

11   employee's interests in any copyright or copyrights."  *Id*.  Finally, the Court held that "the

12   original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id*.

13   Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions

14   Agreement is "not reasonable."  *Id*.  Accordingly, this proposed instruction, which informs

15   the jury of Bryant's interpretation (which the Court found unreasonable) and how to

16   interpret the meaning of technical words, is improper and misleading.

17       2.      In any event, it would be erroneous as a matter of law to give the jury

18   instructions regarding the interpretation of terms in the contracts between Mattel and

19   Bryant because the interpretation of written contracts is for the Court, not the jury.  *See*

20   *Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

21       3.      This proposed instruction deviates from the model instruction found in CACI.

22   Only the first paragraph conforms to CACI No. 316.  The remainder is argument inserted

23   by defendants, and slanted in their favor, explaining for more than five lines the

24   contentions of MGA and Bryant but relegating Mattel's contention to a few words:

25   "Mattel denies the contentions."

26       4.      This instruction should not be used at all without a proper instruction under

27   CACI No. 314.

28

1        5.      An instruction such as the proposed instruction should not be given absent a

2 prior finding that Mattel and Mr. Bryant intended that any technical words would have

3 technical meanings.  Nor should defendants' proposed instruction be given.  Its use of the

4 term "invention" as a technical word with a technical meaning contradicts the plain

5 language of the Inventions Agreement, which defines "invention" broadly and in the

6 ordinary sense.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INTERPRETATION—MEANING OF TECHNICAL WORDS**

**MGA Parties' and Bryant's Response**

Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are unresolved (April 25, 2008 Order at 4).  Thus, the jury will still need to be instructed that Mattel must prove that the BRATZ sketches were "conceived or reduced to practice … during [Bryant's] employment by [Mattel]."  Moreover, even under the Court's April 25, 2008 Order, only one term – "inventions" – was interpreted.  This instruction appropriately sets forth the general canon of contract interpretation for any remaining terms in Sections 2(a) or 3(a) of the Inventions Agreement and the Questionnaire.

Further, as set forth in Bryant's Motion For Reconsideration, where the proper interpretation of a contract turns on conflicting extrinsic evidence, it is the jurors, as triers of fact, who must resolve the conflict.  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24, 2008) (affirming submission of contract interpretation issue to the jury where disputed factual evidence potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact, to resolve any conflicts in the extrinsic evidence properly admitted to interpret the language of a contract") (internal citations omitted); Morey v. Vannucci, 64 Cal. App. 4th 904, 913 (1998) ("Where the interpretation of contractual language turns on a question of the credibility of conflicting extrinsic evidence, interpretation of the language is not solely a

1   judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the
2   extrinsic evidence properly admitted to interpret the language of a contract.") (internal
3   citations omitted); see also First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust, 2006 WL
4   2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve
5   any conflict in the extrinsic evidence properly admitted to interpret the language of a
6   contract," quoting Morey v. Vannucci); Fletcher Capital Mkts., Inc. v. Calgene, Inc., 1998
7   WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the
8   parol evidence is in conflict, the resolution of that conflict is a question of fact for the
9   jury").

10

11  Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.
12  In proposing jury instructions, the parties are permitted to modify the language of any
13  model instruction to make it less confusing or more appropriate in the context of a
14  particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)
15  (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The
16  texts of 'standard' jury instructions are not debated and hammered out by legislators, but
17  by ad hoc committees of lawyers and judges.  Jury instructions do not come down from
18  any mountain or rise up from any sea.  Their precise wording, although extremely useful,
19  is not blessed with any special precedential or binding authority.  This description does not
20  denigrate their value, it simply places them in the niche where they belong.").  Indeed,
21  modification is sometimes necessary to make an instruction accurate and complete.  See,
22  e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification
23  of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the
24  district court merely read the model jury instruction, it would have committed plain error,
25  since that instruction makes no reference whatsoever to knowledge or intent.").

26

27  Furthermore, Mattel's suggestion that the preceding instruction, which is based on CACI
28  No. 316, should be used in conjunction with an instruction under CACI No. 314 concedes

that an instruction under CACI No. 316 is proper. At the same time, the CACI No. 314 instruction was actually included in another instruction proposed by the MGA Parties and Bryant entitled "Interpretation of Particular Terms." This was done for clarity's sake.

In objecting to the proposed instruction, Mattel argues that Bryant's Inventions Agreement "defines 'invention' broadly and in the ordinary sense."  But the scope of "invention" is an ultimate issue in this case, and an objection on this basis is nothing more than argument. This instruction assumes that the jury will have to determine what the meaning of the term "inventions" is and appropriately informs the jury that Bryant contends that the meaning is a technical one, and that Mattel denies such contention.  Moreover, there is no evidentiary basis for Mattel's argument that the parties intended any other meaning of "invention" but its technical meaning under the established law.

## INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts.  You should use each part to help you interpret the others, so that all the parts make sense when taken together.

**Authority:** CACI No. 317 (2008).

**INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Interpretation—Construction of Contract as a Whole on the following grounds:

1.      Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights."  *Id*.  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id*.  Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id*.  Accordingly, this proposed instruction, which purports to tell the jury how to "decid[e] what the words of a contract meant," is improper and misleading.

2.      In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because the interpretation of written contracts is for the Court, not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

3.      Although the instruction tracks CACI No. 317, it makes no sense to use this instruction without a proper instruction under CACI No. 314.

60

1 **INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE**

2

3 **MGA Parties' and Bryant's Response**

4

5 Mattel's objection based upon the Court's April 25, 2008 Order is premature, given

6 Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard

7 on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original

8 Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt

9 to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are

10 unresolved (April 25, 2008 Order at 4).  Thus, the jury will still need to be instructed that

11 Mattel must prove that the BRATZ sketches were "conceived or reduced to practice …

12 during [Bryant's] employment by [Mattel]."  Moreover, even under the Court's April 25,

13 2008 Order, only one term – "inventions" – was interpreted.  This instruction appropriately

14 sets forth the general canon of contract interpretation for any remaining terms in Sections

15 2(a) or 3(a) of the Inventions Agreement and the Questionnaire.

16

17 Further, as set forth in Bryant's Motion For Reconsideration, where the proper

18 interpretation of a contract turns on conflicting extrinsic evidence, it is the jurors, as triers

19 of fact, who must resolve the conflict.  <u>See</u> <u>City of Hope Nat'l Med. Ctr. v. Genentech,</u>

20 <u>Inc.</u>, __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24, 2008) (affirming submission of

21 contract interpretation issue to the jury where disputed factual evidence potentially

22 supports more than one reading of a contract term); <u>Dell'Oca v. Bank of New York Trust</u>

23 <u>Co., N.A.</u>, 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of a contract

24 is essentially a judicial function, it is the jury's responsibility, as the trier of fact, to resolve

25 any conflicts in the extrinsic evidence properly admitted to interpret the language of a

26 contract") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th 904, 913

27 (1998) ("Where the interpretation of contractual language turns on a question of the

28 credibility of conflicting extrinsic evidence, interpretation of the language is not solely a

1  judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the
2  extrinsic evidence properly admitted to interpret the language of a contract.") (internal
3  citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>, 2006 WL
4  2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve
5  any conflict in the extrinsic evidence properly admitted to interpret the language of a
6  contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>, 1998
7  WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the
8  parol evidence is in conflict, the resolution of that conflict is a question of fact for the
9  jury").

10

11  Furthermore, Mattel's suggestion that the preceding instruction, which is based on CACI
12  No. 317, should be used in conjunction with an instruction under CACI No. 314 concedes
13  that an instruction under CACI No. 317 is proper. At the same time, the CACI No. 314
14  instruction was actually included in another instruction proposed by the MGA Parties and
15  Bryant entitled "Interpretation of Particular Terms." This was done for clarity's sake.

16
17
18
19
20
21
22
23
24
25
26
27
28

# INTERPRETATION—CONSTRUCTION BY CONDUCT

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.  You may also consider evidence of Mattel's practical interpretation of the contract terms in dealing with other Mattel employees.  You may also consider Mattel's efforts to enforce the rights it claims in dealing with other employees, including the use of different contractual terms.

**Authority:** CACI No. 318 (2008) (modified); Warner Bros., Inc. v. Curtis Mgmt. Group, Inc., No. CV 91-4016-WMB, 1995 WL 420043 (C.D. Cal. Mar. 31, 1993); Heston v. Farmers Ins. Group, 160 Cal. App. 3d 402 (1984); see also Montrose Chem. Corp. v. Admiral Ins. Co., 10 Cal. 4th 645, 670 (1995) (drafting history of standardized form policy was relevant to interpreting meaning of contract).

**INTERPRETATION—CONSTRUCTION BY CONDUCT**

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Interpretation—Construction by Conduct on the following grounds:

1.      Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights."  *Id*.  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id*.  Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id*.  Accordingly, this proposed instruction, which purports to tell the jury how to "decid[e] what the words of a contract meant," is improper and misleading.

2.      In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because, as a matter of law, the interpretation of written contracts is for the Court, not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

3.      Only the first sentence is an accurate quotation of CACI No. 318.  The rest is argument, devoted to emphasizing the theories of MGA and Bryant.  Even the first sentence ought not be used without a proper instruction under CACI No. 314.

4.      The second and third sentences in this proposed instruction are contrary to law.  A Court or jury may only consider the post-contracting, pre-dispute conduct of the parties to the contract at issue, i.e., Mattel and Mr. Bryant, to ascribe meaning to a given contract.  Neither the Court nor the jury should consider, nor can they legally consider, conduct vis-à-vis third parties to import a contractual term between the parties.

64

**INTERPRETATION—CONSTRUCTION BY CONDUCT**

**MGA Parties' and Bryant's Response**

Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are unresolved (April 25, 2008 Order at 4).  Thus, the jury will still need to be instructed that Mattel must prove that the BRATZ sketches were "conceived or reduced to practice…during [Bryant's] employment by [Mattel]."  Moreover, even under the Court's April 25, 2008 Order, only one term – "inventions" – was interpreted.  This instruction appropriately sets forth the general canon of contract interpretation for any remaining terms in Sections 2(a) or 3(a) of the Inventions Agreement and the Questionnaire.

Further, as set forth in Bryant's Motion For Reconsideration, where the proper interpretation of a contract turns on conflicting extrinsic evidence, it is the jurors, as triers of fact, who must resolve the conflict.  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24, 2008) (affirming submission of contract interpretation issue to the jury where disputed factual evidence potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact, to resolve any conflicts in the extrinsic evidence properly admitted to interpret the language of a contract") (internal citations omitted); Morey v. Vannucci, 64 Cal. App. 4th 904, 913 (1998) ("Where the interpretation of contractual language turns on a question of the credibility of conflicting extrinsic evidence, interpretation of the language is not solely a

1  judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the
2  extrinsic evidence properly admitted to interpret the language of a contract.") (internal
3  citations omitted); see also First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust, 2006 WL
4  2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve
5  any conflict in the extrinsic evidence properly admitted to interpret the language of a
6  contract," quoting Morey v. Vannucci); Fletcher Capital Mkts., Inc. v. Calgene, Inc., 1998
7  WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the
8  parol evidence is in conflict, the resolution of that conflict is a question of fact for the
9  jury").

10

11  Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.
12  In proposing jury instructions, the parties are permitted to modify the language of any
13  model instruction to make it less confusing or more appropriate in the context of a
14  particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)
15  (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The
16  texts of 'standard' jury instructions are not debated and hammered out by legislators, but
17  by ad hoc committees of lawyers and judges.  Jury instructions do not come down from
18  any mountain or rise up from any sea.  Their precise wording, although extremely useful,
19  is not blessed with any special precedential or binding authority.  This description does not
20  denigrate their value, it simply places them in the niche where they belong.").   Indeed,
21  modification is sometimes necessary to make an instruction accurate and complete.  See,
22  e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification
23  of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the
24  district court merely read the model jury instruction, it would have committed plain error,
25  since that instruction makes no reference whatsoever to knowledge or intent.").  The
26  deviation from the proposed language provides a context to the jury that will aid in
27  determining which factual conduct is at issue with respect to the agreement.

28

1 Furthermore, Mattel's suggestion that the preceding instruction, which is based on CACI
2 No. 318, should be used in conjunction with an instruction under CACI No. 314 concedes
3 that an instruction under CACI No. 318 is proper. At the same time, the CACI No. 314
4 instruction was actually included in another instruction proposed by the MGA Parties and
5 Bryant entitled "Interpretation of Particular Terms." This was done for clarity's sake.

6

7 Finally, Mattel offers no authority for its proposition that the second and third sentences
8 are contrary to law.  In fact, the cases cited in support of this proposed instruction establish
9 that the sentences at issue are accurate and proper statements of the law.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## INTERPRETATION—CONSTRUCTION AGAINST DRAFTER

In determining the meaning of a term of the contract, you must first consider all of the other instructions that I have given you.  If, after considering these instructions, you still cannot agree on the meaning of the term, then you should interpret the contract term against the party that drafted the term.

**Authority:** CACI No. 320 (2008); Powerline Oil Co. v. Superior Court, 37 Cal. 4th 377, 391 (2005); Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 819-20 n.16 (1981); see also Cal. Civ. Code § 1654 ("[T]he language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."); Badie v. Bank of America, 67 Cal. App. 4th 779 (1998) (adhesion); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997) (one party's attorney); Neal v. State Farm Ins. Cos., 188 Cal. App. 2d 690, 694 (1961) (adhesion).

**INTERPRETATION—CONSTRUCTION AGAINST DRAFTER**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Interpretation—Construction Against Drafter on the following grounds:

1.      Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights."  *Id*.  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id*. Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id*.  Accordingly, this proposed instruction, which purports to tell the jury how to "determin[e] the meaning of a term of the contract," is improper and misleading.

2.      In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because, as a matter of law, the interpretation of written contracts is for the Court, not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

3.      The "Directions for Use" for CACI No. 320 provide that it should only be given to a deadlocked jury.  Mattel objects to the use of this instruction unless and until the jury notifies the Court that it is deadlocked as to the meaning of a term.

69

**INTERPRETATION—CONSTRUCTION AGAINST DRAFTER**

**MGA Parties' and Bryant's Response**

Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are unresolved (April 25, 2008 Order at 4).  Thus, the jury will still need to be instructed that Mattel must prove that the BRATZ sketches were "conceived or reduced to practice…during [Bryant's] employment by [Mattel]."  Moreover, even under the Court's April 25, 2008 Order, only one term – "inventions" – was interpreted.  This instruction appropriately sets forth the general canon of contract interpretation for any remaining terms in Sections 2(a) or 3(a) of the Inventions Agreement and the Questionnaire.

Further, as set forth in Bryant's Motion For Reconsideration, where the proper interpretation of a contract turns on conflicting extrinsic evidence, it is the jurors, as triers of fact, who must resolve the conflict.  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24, 2008) (affirming submission of contract interpretation issue to the jury where disputed factual evidence potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact, to resolve any conflicts in the extrinsic evidence properly admitted to interpret the language of a contract") (internal citations omitted); Morey v. Vannucci, 64 Cal. App. 4th 904, 913 (1998) ("Where the interpretation of contractual language turns on a question of the credibility of conflicting extrinsic evidence, interpretation of the language is not solely a

1   judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the
2   extrinsic evidence properly admitted to interpret the language of a contract.") (internal
3   citations omitted); see also First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust, 2006 WL
4   2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve
5   any conflict in the extrinsic evidence properly admitted to interpret the language of a
6   contract," quoting Morey v. Vannucci); Fletcher Capital Mkts., Inc. v. Calgene, Inc., 1998
7   WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the
8   parol evidence is in conflict, the resolution of that conflict is a question of fact for the
9   jury").

10

11  Mattel does not otherwise object to the MGA Parties' and Bryant's use of CACI No. 320,
12  except to point out that such an instruction is to be given only where the jury is deadlocked.
13  In general, the purpose of withholding such an instruction from the jury is to "avoid giving
14  them this tool to resolve the case before they have truly exhausted the other avenues of
15  approach."   However, the instruction itself directs the jury to do this.   Moreover, it may
16  well come into play here for three reasons.   First, California Civil Code Section 1654
17  prescribes that  "[i]n cases of uncertainty not removed by the preceding rules, the language
18  of a contract should be interpreted most strongly against the party who caused the
19  uncertainty to exist."   Such uncertainty is likely to result in these proceedings.   Second, the
20  defendants claim that the contract at issue was a contract of adhesion, and construction
21  against the drafter applies more strongly in such cases.   See Badie v. Bank of America, 67
22  Cal. App. 4th 779 (1998).   Third, the California Supreme Court in City of Hope Nat'l Med.
23  Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at *15 (Apr. 24, 2008), recently
24  affirmed giving this instruction to the jury even where the contract at issue was not one of
25  adhesion.

26

27

28

71

# INTERPRETATION—ADHESION CONTRACTS

Defendants contend that Bryant's contract is a contract of adhesion. Thus, you must also consider whether the contract is adhesive.  An adhesive contract is a contract in which:

    1.      The agreement is drafted by the party of superior bargaining power;

    2.      The agreement is a standardized contract; and

    3.      The agreement is presented on a take it or leave it basis.

In the case of adhesion contracts, the rule of construction against the drafter applies more strongly.

**Authority:** Directions for Use, CACI No. 320 (2008); Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83 (2000); Badie v. Bank of America, 67 Cal. App. 4th 779 (1998) (adhesion); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997) (one party's attorney); Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961) (adhesion); see also Geoffroy v. Washington Mut. Bank, 484 F. Supp. 2d 1115, 1122 (S.D. Cal. 2007); Discover Bank v. Superior Court, 36 Cal. 4th 148, 160 (2005); Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 820 n.18 (1981); Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 271 (1966); Steven v. Fid. & Cas. Co., 58 Cal. 2d 862, 878 (1962); Cubic Corp. v. Marty, 185 Cal. App. 3d 438, 450 (1986).

## INTERPRETATION—ADHESION CONTRACTS

### Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Interpretation—Adhesion Contracts on the following grounds:

1.      Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights."  *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id.*  Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id.*  Accordingly, this proposed instruction regarding a purported "rule of construction" is improper and misleading.

2.      In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because, as a matter of law, the interpretation of written contracts is for the Court, not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

3.      This proposed instruction deviates from the model instruction found in CACI.  Defendants cite CACI No. 320 as authority for this proposed instruction, but it bears no resemblance to CACI No. 320.  It is, instead a grossly incomplete summary of the law of contracts of adhesion.

4.      There is no reason to instruct the jury on contracts of adhesion.  Describing a contract as one of adhesion does not affect its enforceability.  *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, 129 Cal. Rptr. 2d 659 (2003); *see also* 1 B. Witkin, Summary of California Law, "Contracts," § 323 ("it is clear that characterizing a contract as one of adhesion does not, by itself, mean that it is invalid.")  That is only the first step.

1   The next step is whether the contract is unconscionable.  *See, e.g.*, *Armendariz v. Found.*
2   *Health Psychcare Serv.*,. 24 Cal. 4th 83 (2000).  Unconscionability of a contract is a
3   question of law.  *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 5 Cal. Rptr. 3d 835
4   (2003), *Pardee Constr. Co. v. Superior Court*, 100 Cal. App. 4th 1081, 123 Cal.
5   Rptr. 2d 288 (2002); *see also Civil Code* § 1670.5 ("*If the court as a matter of law* finds
6   the contract or any clause of the contract to have been unconscionable. . .").  The Court has
7   already ruled that the Inventions Agreement is not substantively unconscionable (July 17,
8   2006 Order at 13-14), or outside the scope of the parties' expectations.  April 25, 2008
9   Order, at 5.  Moreover, defendants have withdrawn the unconscionability defense.  *See*
10  Stipulation and Order Regarding Carter Bryant's Amended Reply to Mattel's
11  Counterclaims, dated October 5, 2007, at 1:18-22.  Accordingly, even if the contract were
12  one of adhesion, there is no issue for the jury to decide.
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INTERPRETATION—ADHESION CONTRACTS**

**MGA Parties' and Bryant's Response**

Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are unresolved (April 25, 2008 Order at 4).  Thus, the jury will still need to be instructed that Mattel must prove that the BRATZ sketches were "conceived or reduced to practice … during [Bryant's] employment by [Mattel]." Moreover, even under the Court's April 25, 2008 Order, only one term – "inventions" – was interpreted.  This instruction appropriately sets forth the general test to determine whether the Inventions Agreement or the Questionnaire are contracts of adhesion, which affects interpretation of remaining terms in both alleged contracts.

Further, where the proper interpretation of a contract turns on conflicting extrinsic evidence, it is the jurors, as triers of fact, who must resolve the conflict.  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24, 2008) (affirming submission of contract interpretation issue to the jury where disputed factual evidence potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact, to resolve any conflicts in the extrinsic evidence properly admitted to interpret the language of a contract") (internal citations omitted); Morey v. Vannucci, 64 Cal. App. 4th 904, 913 (1998) ("Where the interpretation of contractual language turns on a question of the credibility of conflicting extrinsic evidence, interpretation of the language

1  is not solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any
2  conflict in the extrinsic evidence properly admitted to interpret the language of a
3  contract.") (internal citations omitted); see also First Nat'l. Mortg. Co. v. Federal Realty
4  Inv. Trust, 2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's
5  responsibility to resolve any conflict in the extrinsic evidence properly admitted to
6  interpret the language of a contract," quoting Morey v. Vannucci); Fletcher Capital Mkts.,
7  Inc. v. Calgene, Inc., 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California
8  law, noting that "[i]f the parol evidence is in conflict, the resolution of that conflict is a
9  question of fact for the jury").

10

11  Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.
12  This is especially so because the authority supporting the proposed instruction is not CACI
13  320, as Mattel asserts, but rather the "Directions for Use" following the model instruction.
14  See Directions for Use, CACI 320 (2008) (explaining that the construction against the
15  drafter rule "is applied more strongly in the case of adhesion contracts"). Moreover, in
16  proposing jury instructions, the parties are permitted to modify the language of any model
17  instruction to make it less confusing or more appropriate in the context of a particular case.
18  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI
19  and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury
20  instructions are not debated and hammered out by legislators, but by ad hoc committees of
21  lawyers and judges.  Jury instructions do not come down from any mountain or rise up
22  from any sea.  Their precise wording, although extremely useful, is not blessed with any
23  special precedential or binding authority.  This description does not denigrate their value,
24  it simply places them in the niche where they belong.").  Indeed, modification is
25  sometimes necessary to make an instruction accurate and complete.  See, e.g., United
26  States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth
27  Circuit model instruction to include additional elements, noting that "[h]ad the district
28

1  court merely read the model jury instruction, it would have committed plain error, since
2  that instruction makes no reference whatsoever to knowledge or intent.").

3

4  Although a contract of adhesion must be either unconscionable or against the reasonable
5  expectations of the adhered party to be unenforceable, the MGA Parties and Bryant
6  separate the contract of adhesion instruction and the unconscionability instruction to make
7  this distinction clear.  The above instruction accurately states the test for a contract of
8  adhesion as enunciated by the California Supreme Court.  See Armendariz v. Found.
9  Health Psychcare Servs., Inc., 24 Cal. 4th 83 (2000).

10

11  Contrary to Mattel's assertion, defendants have not abandoned the entire doctrine of
12  unconscionability, but rather only particular uses of that doctrine.  The use proposed here
13  is not an attempt to revive Bryant's affirmative unconscionability defense and prevent
14  enforcement of the contract, but rather is focused on interpretation of the contract –
15  specifically, an interpretation that prevents Mattel's adhesive contract from meaning what
16  Mattel claims it means.  Bryant does not contend that the Agreement is unenforceable
17  because that result would be unconscionable (an affirmative defense that Bryant has
18  withdrawn); rather, Bryant contends that the Agreement does not mean what Mattel claims
19  it means because that interpretation would be unconscionable and violate California's
20  principles of interpretation for contracts of adhesion.  (See Bryant MSJ at 33-34; Bryant
21  Opp'n at 14-15; Bryant Reply at 14-15.)  In other words, because construction against the
22  drafter applies more strongly in cases involving contracts of adhesion, Badie v. Bank of
23  America, 67 Cal. App. 4th 779 (1998), and because the defendants claim that the contract
24  at issue was a contract of adhesion, this instruction is appropriate.

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## INTERPRETATION—UNCONSCIONABILITY

There are two limitations on the enforcement of adhesion contracts or provisions thereof:

1.     Such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him.

2.     A principle of equity applicable to all contracts generally is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.'

The standard for determining the reasonable expectations of the adhering party is an objective one.  You should determine the meaning of contract terms by considering the terms in light of what a "hypothetical reasonable" person in the weaker party's position or circumstances would glean from the wording of the contract.  Also, you should deny enforcement of terms unless you find the adhering party had plain and clear notification of the meaning of the terms and an understanding consent.  Any counter-intuitive terms and definitions must be "conspicuous, clear, and plain," not buried in fine print.

A contract is unconscionable where, for example, the contract did not fall within an employee's reasonable expectations, the contract contained oppressive or unconscionable terms, or was not a commonplace agreement in industry.  Furthermore, a contract will be considered unconscionable if the employee failed to understand key terms or made objections to certain key terms that were disregarded by his or her employer, or if enforcement of the contract would be overly harsh or against public policy.

**Authority:** Armendariz v. Found. Health Psychcare Servs. Inc., 24 Cal. 4th 83 (2000); Badie v. Bank of America, 67 Cal. App. 4th 779 (1998) (adhesion); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997) (one party's attorney); Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961) (adhesion); see also Geoffroy v. Washington Mut. Bank, 484 F. Supp. 2d 1115, 1122 (S.D. Cal. 2007); Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 820 n.18 (1981); Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 271 (1966); Steven v. Fid. & Cas. Co., 58 Cal. 2d 862, 878 (1962); Cubic Corp. v. Marty, 185 Cal. App. 3d 438, 450 (1986).

1

## INTERPRETATION—UNCONSCIONABILITY

2

3

## Mattel's Objection

4

5   Mattel objects to defendants' proposed instruction regarding Interpretation—
6   Unconscionability on the following grounds:

7   1.   Defendants' proposed instruction is contrary to the Court's July 17, 2006 and
8   April 25, 2008 Orders.  The Court has expressly held that the Inventions Agreement is not
9   substantively unconscionable or outside the scope of the parties' expectations.  *See* July 17,
10   2006 Order, at 13-14; April 25, 2008 Order, at 5.  And Bryant has withdrawn the
11   unconscionability defense.  *See* Stipulation and Order Regarding Carter Bryant's Amended
12   Reply to Mattel's Counterclaims, dated October 5, 2007, at 1:18-22.  Accordingly, this
13   proposed instruction, which purports to inform the jury of standards for determining
14   unconscionability, is improper and misleading.

15   2.   It would be erroneous as a matter of law to give the jury instructions
16   regarding the interpretation of terms in the contracts between Mattel and Carter Bryant
17   because, as a matter of law, the interpretation of written contracts is for the Court, not the
18   jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).  Moreover,
19   unconscionability is a question of law.  *See Jones v. Wells Fargo Bank*, 112 Cal. App. 4th
20   1527, 5 Cal. Rptr. 3d 835 (2003); *Pardee Construction Co. v. Superior Court*, 100 Cal.
21   App. 4th 1081, 123 Cal. Rptr. 2d 288 (2002); *see also* Civil Code § 1670.5 ("*If the court as*
22   *a matter of law* finds the contract or any clause of the contract to have been
23   unconscionable. . .").

24   3.   In any event, this proposed instruction is a grossly incomplete summary of the
25   law of contracts of unconscionability.

26

27

28

**INTERPRETATION—UNCONSCIONABILITY**

**MGA Parties' and Bryant's Response**

Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.  Moreover, even under the Court's April 25, 2008 Order, only one term – "inventions" – was interpreted.  This instruction appropriately sets forth the general principles of unconscionability and reasonable expectations of the party for the interpretation of any of remaining terms in the Inventions Agreement and/or Questionnaire.

Further, where the proper interpretation of a contract turns on conflicting extrinsic evidence, it is the jurors, as triers of fact, who must resolve the conflict.  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24, 2008) (affirming submission of contract interpretation issue to the jury where disputed factual evidence potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact, to resolve any conflicts in the extrinsic evidence properly admitted to interpret the language of a contract") (internal citations omitted); Morey v. Vannucci, 64 Cal. App. 4th 904, 913 (1998) ("Where the interpretation of contractual language turns on a question of the credibility of conflicting extrinsic evidence, interpretation of the language is not solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract.") (internal citations omitted); see also First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust, 2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract," quoting Morey v. Vannucci); Fletcher Capital Mkts.,

1    Inc. v. Calgene, Inc., 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California
2    law, noting that "[i]f the parol evidence is in conflict, the resolution of that conflict is a
3    question of fact for the jury").

4

5    Although a contract of adhesion must be either unconscionable or against the reasonable
6    expectations of the adhered party to be unenforceable, the MGA Parties and Bryant
7    separate the contract of adhesion instruction and the unconscionability instruction to make
8    this distinction clear.   The above instruction accurately states the test for a contract of
9    adhesion as enunciated by the California Supreme Court.   See Armendariz v. Found.
10   Health Psychcare Servs., Inc., 24 Cal. 4th 83 (2000).

11

12   Contrary to Mattel's assertion, defendants have not abandoned the entire doctrine of
13   unconscionability, but rather only particular uses of that doctrine.   The use proposed here
14   is not an attempt to revive Bryant's affirmative unconscionability defense and prevent
15   enforcement of the contract, but rather is focused on interpretation of the contract –
16   specifically, an interpretation that prevents Mattel's adhesive contract from meaning what
17   Mattel claims it means.   Bryant does not contend that the Agreement is unenforceable
18   because that result would be unconscionable (an affirmative defense that Bryant has
19   withdrawn); rather, Bryant contends that the Agreement does not mean what Mattel claims
20   it means because that interpretation would be unconscionable and violate California's
21   principles of interpretation for contracts of adhesion.   (See Bryant MSJ at 33-34; Bryant
22   Opp'n at 14-15; Bryant Reply at 14-15.)   In other words, because construction against the
23   drafter applies more strongly in cases involving contracts of adhesion, Badie v. Bank of
24   America, 67 Cal. App. 4th 779 (1998), and because the defendants claim that the contract
25   at issue was a contract of adhesion, this instruction is appropriate.

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## INTERPRETATION – INTENT NEVER EXTENDED

However broad the terms of a contract may be, the contract extends only to those things concerning that which it appears that the parties actually intended to contract.

**Authority:**  Cal. Civ. Code § 1648.

## INTERPRETATION – INTENT NEVER EXTENDED

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Interpretation—Intent Never Extended on the following grounds:

1.      Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights."  *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id.*  Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id.*  Accordingly, this proposed instruction regarding a purported "rule of construction" is improper and misleading.

2.      In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because, as a matter of law, the interpretation of written contracts is for the Court, not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

3.      Even if interpretation instructions were appropriate, this special instruction is unnecessary.  The intent of the parties is to be derived from the written contracts.  The standard instructions in CACI explain the essential elements of a breach of contract claim.  *See* CACI No. 303.  This proposed instruction adds nothing, but rather is slanted toward defendants' theories.

1 **INTERPRETATION – INTENT NEVER EXTENDED**

2

3 **MGA Parties' and Bryant's Response**

4

5 Mattel's objection based upon the Court's April 25, 2008 Order is premature, given

6 Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard

7 on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original

8 Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt

9 to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are

10 unresolved (April 25, 2008 Order at 4).  Thus, the jury will still need to be instructed that

11 Mattel must prove that the BRATZ sketches were "conceived or reduced to practice …

12 during [Bryant's] employment by [Mattel]."  Moreover, even under the Court's April 25,

13 2008 Order, only one term – "inventions" – was interpreted.  This instruction appropriately

14 sets forth the general canon of contract interpretation that affects interpretation of

15 remaining terms in both alleged contracts.

16

17 Further, where the proper interpretation of a contract turns on conflicting extrinsic

18 evidence, it is the jurors, as triers of fact, who must resolve the conflict.  See <u>City of Hope</u>

19 <u>Nat'l Med. Ctr. v. Genentech, Inc.</u>, __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24,

20 2008) (affirming submission of contract interpretation issue to the jury where disputed

21 factual evidence potentially supports more than one reading of a contract term); <u>Dell'Oca</u>

22 <u>v. Bank of New York Trust Co., N.A.</u>, 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although

23 interpretation of a contract is essentially a judicial function, it is the jury's responsibility, as

24 the trier of fact, to resolve any conflicts in the extrinsic evidence properly admitted to

25 interpret the language of a contract") (internal citations omitted); <u>Morey v. Vannucci</u>, 64

26 Cal. App. 4th 904, 913 (1998) ("Where the interpretation of contractual language turns on

27 a question of the credibility of conflicting extrinsic evidence, interpretation of the language

28 is not solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any

conflict in the extrinsic evidence properly admitted to interpret the language of a contract.") (internal citations omitted); see also First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust, 2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract," quoting Morey v. Vannucci); Fletcher Capital Mkts., Inc. v. Calgene, Inc., 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the parol evidence is in conflict, the resolution of that conflict is a question of fact for the jury").

Furthermore, CACI No. 303 says nothing about the issue of intent of the parties, but simply lists the factual elements of breach of contract.  Given Mattel's reliance on its purported intent to include all creative works of any kind within the term "inventions" in the contract at issue and Bryant's denial of that claim, this instruction is appropriate.

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR INEQUITABLE INTERPRETATION:**

In deciding what the words of a contract meant to the parties, you must avoid an interpretation which will make the contract extraordinary, harsh, unjust, inequitable or which would result in an absurdity.

**Authority:** Cal. Civ. Code § 1638; <u>Strong v. Theis</u>, 187 Cal. App. 3d 913 (1986); <u>County of Marin v. Assessment Appeals Bd.</u>, 64 Cal. App. 3d 319 (1976).

1  **INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR**
2  **INEQUITABLE INTERPRETATION:**

3

4  **Mattel's Objection**

5

6      Mattel objects defendants' proposed instruction regarding Interpretation—Avoiding
7  Extraordinary, Harsh, Unjust or Inequitable Interpretation on the following grounds:

8      1.    Defendants' proposed instruction is contrary to the Court's April 25, 2008
9  Order.  The Court already explicitly held that the "Inventions Agreement is not ambiguous
10 on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at
11 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an
12 employee's interests in any copyright or copyrights."  *Id*.  Finally, the Court held that "the
13 original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id*.
14 Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions
15 Agreement is "not reasonable."  *Id*.  Accordingly, this proposed instruction, which purports
16 to inform the jury how to "decid[e] what the words of a contract meant to the parties," is
17 improper and misleading.

18     2.    In any event, it would be erroneous as a matter of law to give the jury
19 instructions regarding the interpretation of terms in the contracts between Mattel and
20 Bryant because, as a matter of law, the interpretation of written contracts is for the Court,
21 not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

22     3.    Even if interpretation instructions were appropriate, this special instruction is
23 unnecessary.  The intent of the parties is to be derived from the written contracts.  The
24 standard instructions in CACI explain the essential elements of a breach of contract claim.
25 *See* CACI No. 303.  This proposed instruction adds nothing, but rather is slanted toward
26 defendants' theories.

27     4.    Neither *Cal. Civ. Code* § 1638, which provides that the "language of a
28 contract is to govern its interpretation, if the language is clear and explicit and does not

1  involve an absurdity," nor the cases that defendants cite, suggest that this instruction is

2  necessary.  In *Strong v. Theis*, 187 Cal. App. 3d 913, 920-21 (1986), the court rejected a

3  strained interpretation of a contract that would allow some successors to inherit, and others

4  not, when that was not the parties' intent.  In *County of Marin v. Assessment Appeals Bd.*,

5  64 Cal. App. 3d 319, 328 (1976), the court, in dicta, rejected an interpretation that would

6  impose contractual restrictions on taxpayers, but deprived them of the tax benefit, which

7  was the bargained-for consideration for those restrictions.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1 **INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR**
2 **INEQUITABLE INTERPRETATION:**

3

4 **MGA Parties' and Bryant's Response**

5

6 Mattel's objection based upon the Court's April 25, 2008 Order is premature, given
7 Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard
8 on May 19, 2008. Moreover, Mattel's partial quote of the Court's Order ("the original
9 Bratz drawings clearly fall within the scope of the Inventions Agreement,") is an attempt
10 to blatantly mischaracterize the Order: the Court specifically held that issues of timing are
11 unresolved (April 25, 2008 Order at 4). Thus, the jury will still need to be instructed that
12 Mattel must prove that the BRATZ sketches were "conceived or reduced to practice …
13 during [Bryant's] employment by [Mattel]." Even under the Court's April 25, 2008 Order,
14 only one term – "inventions" – was interpreted. This instruction appropriately sets forth
15 the general canon of contract interpretation that affects interpretation of remaining terms in
16 both alleged contracts.

17

18 Further, where the proper interpretation of a contract turns on conflicting extrinsic
19 evidence, it is the jurors, as triers of fact, who must resolve the conflict. See City of Hope
20 Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at *13 (Apr. 24,
21 2008) (affirming submission of contract interpretation issue to the jury where disputed
22 factual evidence potentially supports more than one reading of a contract term); Dell'Oca v.
23 Bank of New York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although
24 interpretation of a contract is essentially a judicial function, it is the jury's responsibility, as
25 the trier of fact, to resolve any conflicts in the extrinsic evidence properly admitted to
26 interpret the language of a contract") (internal citations omitted); Morey v. Vannucci, 64
27 Cal. App. 4th 904, 913 (1998) ("Where the interpretation of contractual language turns on
28 a question of the credibility of conflicting extrinsic evidence, interpretation of the language

1  is not solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any

2  conflict in the extrinsic evidence properly admitted to interpret the language of a contract.")

3  (internal citations omitted); see also First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust,

4  2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to

5  resolve any conflict in the extrinsic evidence properly admitted to interpret the language of

6  a contract," quoting Morey v. Vannucci); Fletcher Capital Mkts., Inc. v. Calgene, Inc.,

7  1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f

8  the parol evidence is in conflict, the resolution of that conflict is a question of fact for the

9  jury").

10

11  The MGA Parties' and Bryant's authority for this instruction merely recites the

12  uncontroversial point that where the language of a contract is not clear, the terms must not

13  be interpreted in an untenable or unjust manner.  See Cal. Civ. Code § 1638; Strong v.

14  Theis, 187 Cal. App. 3d 913 (1986); County of Marin v. Assessment Appeals Bd., 64 Cal.

15  App. 3d 319 (1976).  Thus, because extrinsic evidence will be used in interpreting the

16  ambiguous language in Bryant's agreement, this instruction is necessary.

17

18  Furthermore, CACI No. 303 says nothing about extraordinary, harsh, unjust or inequitable

19  conduct, but simply lists the factual elements of breach of contract.  Given Mattel's

20  contention that its enforcement of its contracts would not lead to unjust results, this

21  instruction is necessary.

22

23

24

25

26

27

28

## MODIFICATION

Carter Bryant claims that the Inventions Agreement and was modified or changed.  Mattel denies that the contract was modified.

The parties to a contract may agree to modify its terms.  You must decide whether a reasonable person would conclude from the words and conduct of Mattel and Bryant that they agreed to modify the contract.  You cannot consider the parties' hidden intentions.

A contract in writing may be modified by an oral agreement to the extent the oral agreement is carried out by the parties.

Further, a modification to a contract can be created by the conduct of the parties, without spoken or written words.  Contracts created by conduct are just as valid as contracts formed with words.

Conduct will create a modification if the conduct of both parties is intentional and each knows, or has reason to know, that the other party will interpret the conduct as an agreement to modify the contract.

**Authority:**  CACI Nos. 305, 313 (2008) (as modified).

# MODIFICATION

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Modification on the following grounds:

1.      There is no factual basis for defendants to seek a jury instruction on contract modification.

2.      This proposed instruction is confusing and misleading in that it does not even inform the jury what the purported modifications would be.

3.      In any event, this proposed instruction deviates from the model instruction found in CACI.  The last two paragraphs of the proposed instruction are not found in CACI No. 313.

4.      In addition, the proposed instruction misstates the law.  *Civil Code* § 1698 sets forth the conditions for modifying a written contract.  That statute does not include the provisions in the last two paragraphs of this proposed instruction.

93

1  **MODIFICATION**

2

3  **MGA Parties' and Bryant's Response**

4

5  Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

6  In proposing jury instructions, the parties are permitted to modify the language of any

7  model instruction to make it less confusing or more appropriate in the context of a

8  particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)

9  (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

10 texts of 'standard' jury instructions are not debated and hammered out by legislators, but

11 by ad hoc committees of lawyers and judges.  Jury instructions do not come down from

12 any mountain or rise up from any sea.  Their precise wording, although extremely useful,

13 is not blessed with any special precedential or binding authority.  This description does not

14 denigrate their value, it simply places them in the niche where they belong.").   Indeed,

15 modification is sometimes necessary to make an instruction accurate and complete.  See,

16 e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

17 of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

18 district court merely read the model jury instruction, it would have committed plain error,

19 since that instruction makes no reference whatsoever to knowledge or intent.").

20

21 In this case, Bryant contends that (even if the jury rejects Bryant's contention that the

22 contract should be interpreted narrowly in the first instance, so as not to encompass

23 employee's independent artistic work) the contract was modified by the parties' course of

24 conduct to permit moonlighting and independent artistic work.  Such a contention, and the

25 factual support for such a position, is sufficient to require an instruction regarding

26 modification by conduct, as proposed by the MGA Parties and Bryant.

27

28

Moreover, Mattel's objection that the provisions in the last two paragraphs of the proposed instruction are contrary to law is wrong.  The bare text of the Civil Code is not the only source of authority on this issue.  The last two paragraphs are entirely consistent with case law.  <u>See</u> <u>Conley v. Matthes</u>, 56 Cal. App. 4th 1453, 1466 (1997) (party's conduct "amount[ed] to an executed oral modification of the writings between the parties"); <u>Wagner v. Glendale Adventist Med. Ctr.</u>, 216 Cal. App. 3d 1379, 1388 (1989) (conduct antithetical to a term of a written contract which induces the other party to rely on the conduct can amount to a modification of the contract); <u>see also</u> <u>In re Aller's Petition</u>, 47 Cal. 2d 189 (1956) (mutual rescission of arbitration provision in contract may be implied from parties' acts).

## PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR CODE § 2870)

If you find that the BRATZ sketches were an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, you must then decide whether Mr. Bryant still owns the invention because the invention falls within the provisions of Labor Code § 2870.   If you find that the BRATZ sketches were not an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, then you need not consider this instruction.

I will now explain Labor Code § 2870.   In California, an employer cannot force an employee to give the employer rights to certain protected employee inventions, even if the employee signs an agreement which claims to give those inventions to the employer. If this happens, even if the agreement is otherwise valid, the employer cannot enforce the agreement to claim the protected inventions.  The law protects any type of invention that an employer might try to claim from an employee.

Under Labor Code § 2870, an employer is not allowed to claim any invention that an employee developed entirely on his or her own time, without using the employer's equipment, supplies, facilities, or trade secret information.  However, an employer may claim an invention that either (1) resulted from any work performed by the employee for the employer, or (2) at the time the employee conceived the invention or reduced it to practice, related to the employer's business or to research or development that the employer can show it was planning.

The use of an insubstantial amount of an employer's equipment, supplies, facilities or an insubstantial amount of employee time will not defeat an employee's claim that he or she owns an invention pursuant to Labor Code § 2870.

1

2   Mr. Bryant claims that, even if his sketches are an invention as defined by the Inventions

3   Agreement, he owns the BRATZ sketches under Labor Code § 2870.  Mattel disputes this

4   claim.  Mr. Bryant bears the burden of proving that an invention falls within the protection

5   of Labor Code § 2870.

6

7   **Authority:**  Cal. Labor Code §§ 2870-2872; <u>Cubic Corp. v. Marty</u>, 185 Cal. App. 3d 438

8   (1986); <u>Applera Corp.-Applied Biosystems Group v. Illumina, Inc.</u>, 2008 WL 170597, at

9   **4-5 (N.D. Cal. Jan. 17. 2008) (jury could find that minimal company resources used

10  were not part of "developing" employee invention under § 2870); <u>Voith Hydro Inc. v.</u>

11  <u>Hydro West Group, Inc.</u>, 1997 WL 15440, at **6-8 (N.D. Cal. 1997) (where invention was

12  conceived before employment and reduced to practice afterward, the employee's use of

13  "some time and resources" to work on one component of the invention was insufficient to

14  give rise to any ownership rights in the employer); <u>Banner Metals Inc. v. Lockwood</u>, 178

15  Cal. App. 2d 643, 649-50, 656-58, 662 (1960) (use of some wire and employer's welding

16  machine after hours was "negligible and unimportant and in no substantial way produced

17  or contributed to the development of a receptacles of a commercially acceptable form");

18  <u>Aero Bolt & Screw Co. v. Iaia</u>, 180 Cal. App. 2d 728, 737-39 (1960) (use of employer's

19  paper pads, bolts for early models and prototypes, typists and copier in connection with

20  drawings submitted to manufacturers, and employer's shop on weekends to make samples

21  did not give rise to ownership rights in the employer because employee did not use a

22  "substantial amount" of the employer's resources).

23

24

25

26

27

28

1 **PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR**
2 **CODE § 2870)**

3

4 **Mattel's Objection**

5

6       Mattel objects to defendants' proposed instruction regarding Protection of
7 Employees' Rights to Their Inventions (Labor Code § 2870) on the following grounds:

8       1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The
9 Court ruled that the Inventions Agreement "incorporates, and therefore does not violate,
10 Cal. Labor Code § 2870."  April 25, 2008 Order, at 4-5.  The Court also found that Bryant
11 cannot attempt to invoice § 2870 because the Bratz works created by Bryant "relate to
12 Mattel's business of marketing fashion dolls."  *Id.* at 5. Accordingly, this instruction is
13 erroneous as a matter of law and misleading.

14       2.      In any event, the proposed instruction is incomplete and argumentative.  The
15 legal effect of *Labor Code* § 2870 is not a question for the jury.  The "instruction" is
16 nothing more than argument from defendants as to the effect of the statute and argument as
17 to their interpretation.  The "explanation" they want the Court to give is more convoluted,
18 and less comprehensible, than the statute itself.  The jury has no interest in or need to
19 know the policy of the California Legislature in enacting § 2870, as set forth in the second
20 paragraph.

21       3.      Moreover, the final sentence – "Bryant bears the burden of proving that an
22 invention falls within the protection of *Labor Code* § 2870" – does not rectify the
23 misimpression created in the third paragraph that Mattel, not Bryant carries the burden.
24 Defendants refer to what "an employer may claim."  That phrase suggests that the
25 employer has the burden on those issues.  A tag line at the end is not sufficient to clarify
26 this ambiguity.

27       4.      The proposed instruction is confusing in that defendants never explain what
28 facts the jury must determine.

98

1      5.      The proposed instruction on "insubstantiality" is legally wrong as written.  If

2 the works at issue relate to the employees actual or potential business, it is not a defense

3 that Mr. Bryant used a *de minimis* amount of Mattel equipment, supplies, facilities or trade

4 secret information.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR CODE § 2870)**

**MGA Parties' and Bryant's Response**

Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.

Further, Mattel ignores federal and California case law requiring the jury to interpret factual questions implicated in the court's analysis of a statute's effect.  See Panther Oil & Grease Mfg. Co. v. Segerstrom, 224 F.2d 216, 218 (9th Cir. 1955) ("The question whether the product contained substances mentioned in the statute was largely one of fact; and the testimony pro and con on this point was not without conflict. We think submission to the jury of the matter of the applicability of the statute was not error."); John Norton Farms, Inc. v. Todagco, 124 Cal. App. 3d 149, 169-70 (1981) (while ultimate question of liability under statute regarding off-label uses of poison was technically a question of law, all of the findings that would dictate that decision – whether label was accurate and sufficient, whether product was used appropriately, whether misuse was cause of damage – were questions of fact for the jury); see also Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 290 F.3d 1058, 1068-69 (9th Cir. 2002) (jury to consider whether statement was genuine "threat" because issues presenting "widely varying fact patterns [] should be left to the trier of fact").  It is also important for the jury to be versed on the California Legislature's policy in enacting Section 2870, which states that an employee (Bryant) owns "inventions" unless he agreed otherwise.

Moreover, language indicating what "an employer may claim" has absolutely nothing to do with burdens of proof at trial, but rather deals with inventions that fall outside the

purview of Section 2870.   In addition, language indicating that an employee spent an "insubstantial amount" of the employer's time or resources in developing his or her invention will aid the jury in determining whether the alleged invention was "developed on his or her own time without using the employer's equipment …."   This language is supported by the cases cited above as authority for this instruction.

Mattel's objection to the placement of the sentence "Bryant bears the burden of proving that an invention falls within the protection of Labor Code § 2870" is irrelevant.   The sentence can easily be moved to the beginning of the instruction.

**1** <u>**CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT**</u>

**2**

**3** Mattel claims that Carter Bryant breached Sections 3(a) of his Inventions Agreement.

**4**

**5** Section 3(a) provides:  "My employment with the Company requires my undivided

**6** attention and effort.  Therefore, during my employment with the Company, I will fully

**7** comply with the Company's Conflict of Interest Policy, as it may be amended from time to

**8** time.  I shall not, without the Company's express written consent, engage in any

**9** employment or business other than for the Company, or invest in or assist [in any manner]

**10** any business competitive with the business of future business plans of the Company."

**11**

**12** Mattel claims that Carter Bryant breached Section 3(a) by secretly aiding, assisting, and

**13** working for a Mattel competitor during his employment with Mattel without the express

**14** written consent of Mattel.

**15**

**16** Carter Bryant claims that he fully complied with his obligations to Mattel while he was

**17** employed.  In California, an employee is entitled to prepare to compete with his or her

**18** current employer provided that he or she does not directly compete until after leaving his

**19** or her employment.  Permissible preparations to compete include, for example, (1)

**20** undertaking efforts to establish a competing business and to immediately compete after

**21** termination of employment; (2) use of small amounts of an employer's resources, such as

**22** phones, faxes, computers, and employee time; (3) discussion of a competing venture with

**23** other employees; (4) asking customers whether work might be available for a possible

**24** competing venture; (5) use of some time during work hours to prepare to compete,

**25** provided the employee continues to perform his or her job responsibilities; and (6) use of

**26** marketing plans, customer lists or other information learned during his or her employment

**27** provided the information is not a trade secret or confidential information.  An employee is

**28** not required to disclose any preparations to compete with his or her employer.

In order to prevail on its claim, Mattel bears the burden of proving by a preponderance of the evidence:

 1.   That the Inventions Agreement is a valid contract;

 2.   That Mattel did all or substantially all, of the significant things that the contract required it to do;

 3.   That all the conditions by the contract for Carter Bryant's performance had occurred;

 4.   That Carter Bryant did something that Section 3(a)  prohibited him from doing or failed to do something he was obligated to do; and

 5.   That Mattel was harmed by that failure.

You may consider Mr. Bryant's intention and the surrounding circumstances in determining whether Mr. Bryant's actions were preparations to compete or were in breach of section 3(a) of his Inventions Agreement.

You should consider Instructions __ -__ in determining whether Mattel has met its burden on this claim.

**Authority:** Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2003);; GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp.

1  v. Ferguson, 74 Cal. Rptr. 86, 92-93 (1968); see also Material Supply Int'l, Inc. v.

2  Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. Am.

3  Broadcasting Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Mercer Mgmt. Consulting,

4  Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc.,

5  782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp.

6  551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump

7  Co., 428 F. Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT

### Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Contract Claim-Section 3(A) of Inventions Agreement on the following grounds:

1.     This proposed instruction deviates from the model instruction found in CACI. *See* CACI No. 303.  The instruction is argumentative and emphasizes defendants' contentions.

2.     This proposed instruction does not properly inform the jury that the Court has already held that the Inventions Agreement is a valid and enforceable contract.  *See* April 25, 2008 Order, at 5.

3.     This proposed instruction is also contrary to the Court's April 25, 2008 Order to the extent it purports to inform the jury that Bryant is entitled to prepare to compete. The Court found that Bryant cannot defend his actions as "lawful preparations to compete" because he "directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel." April 25, 2008 Order, at 5.  The Court's finding is well supported by law.  *See Daniel Orifice Fitting Co.*, 198 Cal. App. 2d 791, 800-01 (1962) (employee liable where he did not make "full disclosure of acts undertaken in preparation for entering competition"); *Sequoia Vacuum Sys. v. Stransky,* 229 Cal App. 2d 281, 287 (1964) ("the protection of the principals' interest requires a full disclosure of acts undertaken in preparation of entering into competition"). Accordingly, any proposed instruction referencing some right to "prepare to compete" is improper and misleading.

4.     The proposed instruction misstates and unduly limits Mattel's claim.

5.     The proposed instruction is misleading in that it inserts references to law that are not essential elements of a breach of contract claim.

6.      According to the "Directions for Use" for CACI No. 303 (from which defendants appear to have taken the elements for breach of contract), this instruction should be read in conjunction with CACI No. 300.  Defendants have not submitted an instruction that provides the information called for by CACI No. 300 (e.g. a "brief summary of the alleged contract.")  (Mattel did submit a proposed instruction based on CACI No. 300.)  Mattel requests that the Court adopt Mattel's proposed jury instructions, which conform to both CACI Nos. 300 and 303.  *See* Mattel's Proposed Jury Instructions, at 5-7.

## CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT

### MGA Parties' and Bryant's Response

Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.  To the extent the Court does not reconsider its Order, this instruction can be modified appropriately at that time—for example removing the reference to the first element (validity and enforceability of the Inventions Agreement).  However, even under the Court's Order, the jury still needs to be instructed with regard to the remaining elements of Mattel's breach of section 3(a) claim, including the preparation to compete doctrine for the reasons set forth below.

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

1

2  Here, it is critical for the instructions on Mattel's claim that Bryant breached section 3(a)

3  of Inventions Agreement to refer to his privilege to seek new employment and to prepare

4  to compete – legal principles that are fully supported by the cases cited in support of this

5  instruction.  Otherwise, the jury will be unable to determine whether Bryant's conduct

6  breached Section 3(a) or was permissible.  Even under the Court's April 25, 2008 Order,

7  the Court did not decide any issues with respect to Mattel's claim for breach of section

8  3(a), thus the jury must be instructed as to what conduct can be considered and what

9  conduct cannot for this claim.

10

11 The Court ordered phasing so that the jury could focus on the breach of contract claims.

12 Mattel lumped all claims together in a heavily slanted instruction under CACI No. 300.

13 Unlike Mattel's instruction, the preceding proposed instruction, following CACI Nos. 300

14 and 303, sets forth an explanation of Mattel's breach of Section 3(a) claim and Bryant's

15 position (which Mattel did not include at all).  Further, it sets forth the elements that Mattel

16 will have to prove under CACI No. 303, and omits the elements that are not disputed, as

17 directed in the directions for use.  Moreover, Mattel's assertion that defendants did not

18 submit an instruction under CACI No. 300 is simply incorrect; they submitted that

19 instruction and summarized the contractual elements in their proposed instructions.

20

21 Mattel also fails to explain or support its contention that the proposed instruction

22 "misstates and unduly limits" Mattel's claim under this portion of the contract.  To the

23 contrary, this instruction properly instructs the jury to focus on Mattel's specific

24 allegations that could be tied to this portion of the contract.

25

26 Further, in Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327 (1966), the California Supreme

27 Court specifically rejected Mattel's interpretation of Daniel Orifice and Sequoia Vacuum.

28 The Court held that, even for an officer (which Bryant was not) with fiduciary duties

108

1  (which Bryant lacked), "[t]here is no requirement that an officer disclose his preparations

2  to compete with the corporation in every case, and failure to disclose such acts will render

3  the officer liable for breach of his fiduciary duties only where particular circumstances

4  render nondisclosure harmful to the corporation." Id. at 345; see also Rest. 3d Agency §

5  8.04 cmt. c ("An employee or other agent who plans to compete with the principal does

6  not have a duty to disclose this fact to the principal. To be sure, the fact that an agent has

7  such a plan is information that a principal would find useful, but the agent's fiduciary duty

8  to the principal does not oblige the agent to make such disclosure. Nor does an agent's

9  duty to provide facts to the principal … require disclosure to the principal of an agent's

10  competitive plans. In this respect, the social benefits of furthering competition outweigh

11  the principal's interest in full disclosure by its agents."). Were an at-will employee, like

12  Bryant, required to disclose preparations to compete, the employee's right to prepare to

13  compete would be rendered meaningless.

14

15  Given that Bryant has pointed out Mattel's error several times, it appears that Mattel seeks

16  to mislead the Court into a reversible error by continuing to assert that disclosure is

17  required under these cases. As that is the only basis for the objection to the preparation to

18  compete instruction, it should be included.

19

20  Mattel also improperly asks the Court to adopt Mattel's view of factual disputes that the

21  jury must decide at trial, in shaping the jury instructions: Mattel's objections here rely in

22  part on Mattel's hotly disputed allegations that Bryant "never disclosed" and "in fact,

23  denied" that he was preparing to compete with Mattel.

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT

Further, an at will employee such as Carter Bryant is entitled to seek new employment and not disclose to his or her employer efforts to obtain new employment.  An employee is entitled to inform his employer once he or she has made a final decision to leave his or her current job.

**Authority:**  Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-46 & n.10 (1966); accord Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2003); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp. v. Ferguson, 74 Cal. Rptr. 86, 92-93 (1968); see also Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. American Broadcasting Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Mercer Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c.

## CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Contract Claim—Right to Obtain New Employment on the following grounds:

1.     This instruction is argumentative, having nothing to do with the contract issues in this case.  The Court has already held that the Inventions Agreement is a valid and enforceable contract.  *See* April 25, 2008 Order, at 5.  Accordingly, Bryant was bound to live up to his obligations pursuant to the Inventions Agreement.  It is irrelevant what rights an "at will employee" might have.  By this instruction, defendants seek to use the Court to make counsel's argument.

## CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT

## MGA Parties' and Bryant's Response

If the jury concludes Bryant was only seeking new employment—which he is entitled to do without informing his employer—then he did not breach Section 3(a) of his Inventions Agreement, which requires that he "engage in employment or business other than for the company." This instruction will also assist the jury in interpreting the scope of this language, since California's law protecting employees' right of mobility is part of the surrounding circumstances of any California employment contract; the jury is entitled to know and consider the fact that a broad interpretation of Section 3(a) that would interfere with this employee right would be legally dubious, as it would conflict with California's express policies. Moreover, Mattel does not offer any meaningful objections to this instruction or dispute that it accurately states the law – nor could it, as the instruction merely recites the well-established law in California respecting an at-will employee's right to seek new employment. See Cal. Bus. & Prof. Code § 16600.

# CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE

Mattel claims that Carter Bryant breached the Questionnaire.

Carter Bryant denies that the Questionnaire is a valid contract.  Carter Bryant also denies that he breached any terms of the questionnaire.

In order to prevail on its claim, Mattel bears the burden of proving by a preponderance of the evidence:

    1.    That the Questionnaire is a valid contract;

    2.    That Mattel did all or substantially all, of the significant things that the contract required it to do;

    3.  That all the conditions by the contract for Carter Bryant's performance had occurred;

    4.  That Carter Bryant did something that the contract prohibited him from doing or failed to do something he was obligated to do; and

    5.  That Mattel was harmed by that failure.

You should consider Instructions __ - __ in determining whether Mattel has met its burden on this claim.

**Authority:** CACI Nos. 300, 303 (2008) (as modified).

# CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Contract Claim—Conflict of Interest Questionnaire on the following grounds:

1.      Defendants are melding two CACI instructions together, and botching both. They do not supply any meaningful "summary" nor "briefly state the alleged breach" as required by CACI No. 300.

2.      They add superfluous and argumentative phrases not found in CACI No. 303.

3.      The proposed instruction is misleading in that it tells the jury to consider certain other, unidentified instructions.  That sentence calls undue attention to particular instructions.  A jury must consider all instructions.

**CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE**

**MGA Parties' and Bryant's Response**

Under the Court's Phasing Order, the Court ordered phasing so that the jury could focus on the breach of contract claims.  Mattel lumped all claims together in a heavily slanted instruction under CACI No. 300.  Unlike Mattel's instruction, the preceding instruction proposed by the MGA Parties and Bryant, which follows CACI Nos. 300 and 303, sets for the Questionnaire claim separately, to be clearer for the jury, and sets forth an explanation of Mattel's breach of the Questionnaire claim and Bryant's position (which Mattel did not include at all).  Further it sets forth the elements that Mattel will have to prove under CACI No. 303, and omits the elements that are not disputed, as directed in the directions for use.

Mattel fails to point out which modifications it believes are argumentative or superfluous, and quarrels with the fact that the MGA Parties and Bryant have yet to identify the instructions of which the jury should take note in connection with this instruction.  These instructions will be identified by the Court at the appropriate time, after the Court has resolved the parties' disputes over what related instructions are appropriate.  Also, Mattel has tellingly not raised this same, unmeritorious objection as to similar instructions that also point out related, as-yet-unnumbered, instructions (see above, instruction addressing Mattel's Section 3(a) contract claim).

# CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS

The parties disagree as to whether the Questionnaire constitutes a valid contract.

Mattel claims that the Questionnaire constitutes a valid contract.  Carter Bryant claims that it does not.  To prove that a contract was created, Mattel must prove all of the following:

1.    That the terms of the document were clear enough that the parties could understand what each was required to do;

2.    That the parties agreed to give each other something of value, commonly referred to as "consideration"; and

3.    That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement.  You may not consider the parties' hidden, unexpressed intentions.

Mutual consent is an essential contract element.  Consent is not mutual, unless the parties all agree upon the same thing in the same sense.

**Authority:**   CACI No. 302 (2008) (as modified); CACI No. 302 (Sources and Authority); Cal. Civil Code §§ 1550, 1565, 1580.

**CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Contract Formation—Essential Factual Elements on the following grounds:

1.      This proposed instruction deviates from the model instruction found in CACI. Defendants' modifications are not necessary or useful.  *See* CACI No. 302.  They are redundant, confusing and argumentative.

**CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS**

**MGA Parties' and Bryant's Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").   Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

Mattel fails to point out which modifications it believes are "not necessary or useful," rendering a meaningful response to this objection impossible.  To the extent modifications have been made to the form instruction, such modifications will aid the jury in construing the factual elements of contract formation.

## CONTRACT FORMATION—DOCUMENT MUST OBVIOUSLY BE A CONTRACT

A party cannot be found to have agreed to a contract where the document he signed does not look like a contract and the contractual provisions are inconspicuous or are not clearly disclosed.

**Authority:**   Metters v. Ralphs Grocery Co., __ Cal. Rptr. __, No. G038380, 2008 WL 542838 (Cal. Ct. App. Feb. 29, 2008) (ordered published on Apr. 1, 2008).

# CONTRACT FORMATION—DOCUMENT MUST OBVIOUSLY BE A CONTRACT

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Contract Formation—Document Must Obviously Be a Contract on the following grounds:

1.  This special instruction repeats a subject covered by CACI No. 302 (e.g. "the contract terms were clear enough"). The instruction unfairly emphasizes the arguments and theories of defendants.

2.  This instruction is not supported by *Metters v. Ralphs Grocery Co.*, 2008 WL 542838 (Cal. Ct. App. Feb. 29, 2008). In that case, including an arbitration provision, the trial court found no meeting of the minds. The employee had a discrimination complaint, and human resource manager instructed him to fill out and submit a "Dispute Form." In doing so, the company claimed the employee had agreed to arbitration. But the employee submitted a declaration that he believed he was using the only procedure available for his grievance and did not realize he was agreeing to arbitration. On those facts the appellate court held that the "context of this form *did not alert him he was agreeing to anything*, let alone arbitration." Moreover, the employee "had no real choice." If he wanted his complaint investigated, he had to sign the Dispute Form with its arbitration provision. That violated an employer's obligation to investigate. Accordingly there was no valid agreement.

# CONTRACT FORMATION—DOCUMENT MUST OBVIOUSLY BE A CONTRACT

## MGA Parties' and Bryant's Response

Mattel's attempt to distinguish <u>Metters v. Ralphs Grocery Co.</u>, 74 Cal. Rptr. 3d 210 (Ct. App. Feb. 29, 2008), is unintelligible.  Like the Questionnaire here, <u>Metters</u> involved a document which was not clearly a contract on its face, whose terms were not clear, which contained additional terms not contained in the employment agreement, and which the context did not indicate was a contract.  As a result, the form in <u>Metters</u> was unenforceable. To the extent Mattel seems to rely on purported (and false) factual differences between <u>Metters</u> and this case to support its objection, Mattel again inappropriately asks the Court to accept Mattel's account of facts in determining how to instruct the jury.  (And in fact, as explained in Bryant's summary judgment briefing, the undisputed evidence favors Bryant's account of the circumstances surrounding the Questionnaire, not Mattel's account.)  This instruction is not duplicative of CACI No. 302, but rather clarifies for the jury that all documents containing what could appear to be contract terms (in another context) are not necessarily contracts.

**CONSIDERATION**

Except in certain situations as to which you will be instructed, a promise without sufficient consideration cannot be enforced.

Consideration may be either a benefit conferred or agreed to be conferred upon the person making the promise or a detriment suffered or agreed to be suffered by the person to whom the promise is made.  Consideration must be bargained for and given in exchange for the promise.  In determining whether there was a bargained-for exchange between Mattel and Carter Bryant with respect to the Questionnaire, you must consider only the outward expression of the intention of the parties.

To be sufficient, the consideration must have some value.  Something that is completely worthless cannot constitute sufficient consideration.  Consideration also cannot comprise something that already has been given or earned for past services or work.

**Authority:**  1 B.E. Witkin, Summary of Law: Contracts, §§ 202-203, 205 (10th ed. 2005); BAJI § 10.61 (2007) (as modified).

1  **CONSIDERATION**

2

3  **Mattel's Objection**

4

5      Mattel objects to defendants' proposed instruction regarding Consideration on the

6  following grounds:

7      1.      This instruction is unnecessary and confusing.  Defendants cite BAJI as the

8  source for this proposed instruction.  BAJI is no longer identified by the Court as a source

9  for jury instructions, *see* Court's Standing Scheduling Order, at 9, and BAJI is not

10  officially approved by California state court rules.  *See Cal. Rule of Court* 2.1050 (stating

11  that CACI, and not BAJI, "are the official instructions for use in the state of California.").

12      2.      The model instructions found in CACI do not use the legalese

13  "consideration."  CACI No. 302 refers to "something of value."  Defendants, however,

14  unnecessarily modified other instructions to use the term "consideration," which

15  apparently required them to resort to BAJI to define "consideration."  To the extent the

16  court gives any instructions on contract formation, it should use the CACI model

17  instructions, e.g., CACI No. 302.  Defendants are just making the instructions longer, more

18  complex and less comprehensible.

19

20

21

22

23

24

25

26

27

28

**CONSIDERATION**

**MGA Parties' and Bryant's Response**

Contrary to Mattel's assertion, the BAJI continue to be relied upon as a source of model jury instructions in both federal and California courts.  See, e.g., Jones v. Hollenback, 2007 WL 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury Instruction No. 7 is not a Ninth Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22, is irrelevant.  The instruction correctly and clearly states the law.  There is nothing confusing about the purpose and intent of this instruction."); Buell-Wilson v. Ford Motor Co., 160 Cal. App. 4th 1107, 1167 (2008) (asserting that, regarding punitive damages, "[a]n appropriate jury instruction would have been one similar to BAJI No. 14.72.2"); Mayes v. Bryan, 139 Cal. App. 4th 1075, 1091-92 (2006) (approving an instruction given at trial that was a mixture of CACI and BAJI models; noting that using definition of term from BAJI instruction made CACI instruction intelligible).  Mattel does not say, nor could it, that the instruction is incorrect and its objections all stem from the fact that this instruction is not favorable to Mattel, which is not a basis to decline to give a valid instruction on a legal issue in dispute between the parties.

The MGA Parties and Bryant believe that an instruction on consideration is necessary given that Bryant's Proprietary Information Checkout Form and the Conflict of Interest Questionnaire are alleged to have been supported by insufficient consideration.  "[A]n additional agreement by which new and onerous terms are imposed upon one of the parties without any compensating advantage requires a consideration to support it."  Selby v. Battley, 149 Cal. App. 2d 659, 664 (1957).  Although Mattel has now conceded that the Proprietary Information Checkout Form is not a contract by failing to oppose Bryant's Motion for Partial Summary Judgment on this issue, the Court has not yet ruled on Bryant's Motion with respect to the Questionnaire.

**1** ## DECLARATORY RELIEF

**2**

**3** Mattel has asserted a claim for declaratory relief.

**4**

**5** I will now instruct you regarding the law as to this claim.

**6**

**7** ## DECLARATORY RELIEF:  THE PARTIES' CLAIMS

**8**

**9** The parties dispute their rights and obligations with respect to certain BRATZ sketches
**10** prepared by Carter Bryant.  Mattel seeks a declaration that MGA, Larian and MGA (HK)
**11** have no valid ownership rights in the BRATZ sketches, that Mattel is the true owner of the
**12** BRATZ sketches, and any agreements between Bryant and MGA assigning the rights to
**13** the BRATZ sketches is void. Carter Bryant, Isaac Larian, MGA and MGA (HK) dispute
**14** Mattel's claims.

**15**

**16**     1.     If you found that Carter Bryant did not breach Section 2(a) of the Inventions
**17** Agreement, you must also find that Mattel has not met its burden in proving its declaratory
**18** relief claim.

**19**

**20**     2.     If you found that Carter Bryant did breach Section 2(a) of the Inventions
**21** Agreement, you must then determine whether MGA purchased the rights in good faith.  If
**22** you find MGA purchased its rights in good faith, you must find for MGA, MGA (HK),
**23** Isaac Larian and Carter Bryant on this claim.

**24**

**25**     3.     Similarly, if you found that Carter Bryant did breach Section 2(a) of the
**26** Inventions Agreement, and if you do not find that MGA purchased its rights in good faith,
**27** then you also must determine whether, under section 204(a) of the Copyright Act and
**28** Section 988 of the California Civil Code, the Inventions Agreement transferred any

copyright ownership in the BRATZ sketches to Mattel.  If you find that the Inventions Agreement does not satisfy section 204(a), you must find for MGA, Isaac Larian and Carter Bryant on this claim.

Finally, if you find for Mattel on this claim, you must identify in which BRATZ sketches MGA, Larian and MGA (HK) do not have a valid ownership interest.

# DECLARATORY RELIEF:  THE PARTIES' CLAIMS

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Declaratory Relief on the following grounds:

1.      A declaratory relief claims is equitable and should be adjudicated by the Court, not the jury.  Accordingly, there is no basis to give this instruction to the jury.

2.      In any event, this proposed instruction is confusing.  It has no fewer than seven contingencies.  (E.g. "If you found . . . , and if you do not find . . . then you must determine whether . . .")  It is extraordinarily difficult to ascertain exactly what defendants are asking the jury to do.

1 **DECLARATORY RELIEF:  THE PARTIES' CLAIMS**

2

3 **MGA Parties' and Bryant's Response**

4

5 Mattel's blanket assertion that all declaratory relief claims are equitable in nature runs

6 directly counter to long-established case law.  "Insofar as the right to a jury trial is

7 concerned, it is erroneous to say that all declaratory relief actions are equitable; an action

8 for declaratory relief has been characterized as 'sui generis.'  Where an action for

9 declaratory relief is in effect used as a substitute for an action at law for breach of contract,

10 a party is entitled to a jury trial as a matter of right."  Patterson v. Ins. Co. of N. Am., 6 Cal.

11 App. 3d 310, 315 (1970) (internal citations omitted); see also B.E. Witkin, Cal. Proc.: Trial

12 § 95, p. 115 (4th ed. 1997) ("Unlike other equitable actions, declaratory relief is for some

13 purposes treated as if it were a coercive proceeding, and the courts will not permit it to be

14 used as a device to circumvent the right to a jury trial.")  This is precisely the case here.

15

16 Mattel's suggestion that this instruction is "too" complex is also misplaced, as the

17 instruction is only as complex as the issue of ownership itself.  Declaratory relief only

18 comes into play if (1) Section 2(a) of the Inventions Agreement encompasses *any* of

19 Bryant's sketches, (2) Section 2870 of the Labor Code does not apply to those sketches, (3)

20 Section 988 of the Civil Code and 17 U.S.C. Section 204(a) do not defeat the assignment,

21 and (4) MGA is not a good faith purchaser.  Mattel attempts to oversimplify the

22 requirements of declaratory relief and thereby prejudice the defendants.

23

24

25

26

27

28

# EVIDENCE OF GOOD FAITH

In determining whether Mattel is entitled to relief, the good faith of Carter Bryant, Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Carter Bryant, Larian, MGA, and MGA (HK) acted in bad faith or with bad intent.  To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:**  People v. Webb, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, Cal. Proc.: Pleadings § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

**EVIDENCE OF GOOD FAITH**


**Mattel's Objection**


Mattel objects to defendants' proposed instruction regarding Declaratory Relief: the Parties' Claims Evidence of Good Faith on the following grounds:

      1.     A declaratory relief claim is equitable and should be adjudicated by the Court, not the jury.  Accordingly, there is no basis to give this instruction to the jury.

      2.     In any event, this proposed instruction misstates the law.  Mattel's right to relief is not dependent on any "factor" of good faith.  This instruction is unsupported by law.

## EVIDENCE OF GOOD FAITH

## MGA Parties' and Bryant's Response

Mattel's objection is nonsensical.  Defendants did not limit the good faith question to the Declaratory Relief claim, and there is no basis to so limit the issue.  Regardless, Mattel is simply wrong.  A legal action with a declaratory relief label may still be tried to the jury. See Patterson v. Ins. Co. of N. Am., 6 Cal. App. 3d 310, 315 (1970) ("Insofar as the right to a jury trial is concerned, it is erroneous to say that all declaratory relief actions are equitable; an action for declaratory relief has been characterized as 'sui generis.'  Where an action for declaratory relief is in effect used as a substitute for an action at law for breach of contract, a party is entitled to a jury trial as a matter of right.") (internal citations omitted); see also B.E. Witkin, Cal. Proc.: Trial § 95, p. 115 (4th ed. 1997) ("Unlike other equitable actions, declaratory relief is for some purposes treated as if it were a coercive proceeding, and the courts will not permit it to be used as a device to circumvent the right to a jury trial.").

Mattel's objection is unsupported by law (as evidenced by Mattel's failure to cite any authority for its contention) and ignores that, to the extent each of Mattel's claims implicate defendants' intent or mental state, good faith is a factor on which Mattel bears the burden of proof.  As the MGA Parties detailed at length in opposing Mattel's motion for summary judgment, good faith is plainly an issue that is relevant for the jury's consideration on any claim where the MGA Parties' intent or scienter is an element – which is to say on virtually every claim.

**COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988**

If you find that the BRATZ sketches were an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, you must also determine whether the Inventions Agreement satisfies the requirements of Section 204(a) of the Copyright Act and California Civil Code § 988.  If you find that the BRATZ sketches were not an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel or that the invention falls with Labor Code § 2870, then you need not consider this instruction.

I will now explain Copyright Act § 204(a) and California Civil Code §988.  Under Section 204(a) of the Copyright Act, any transfer of copyright ownership must be clear and in writing to be valid.  Specifically, the written transfer instrument must (1) reasonably identify the subject matter of the agreement; (2) be sufficient to indicate that the parties have come to an agreement; and (3) state with reasonable certainty the essential terms of the contract. Similarly, under California Civil Code Section 988, in a written agreement transferring any of a copyright owner's rights, any ambiguity about the nature or scope of the rights conveyed must be resolved to preserve the rights of the original owner.

These requirements prevent the inadvertent transfer of ownership rights by forcing a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price.  Any ambiguity in a purported transfer should be resolved in favor of the original copyright holder or creator keeping the rights to the copyrighted work.

If you find that the Inventions Agreement does not satisfy the above requirements of § 204(a) of the Copyright Act or California Civil Code Section 988, then you must find for defendants on Mattel's declaratory relief claim.

1

2   **Authority:**   17 U.S.C. § 204(a); <u>Konigsberg, Int'l, Inc. v. Rice</u>, 16 F.3d 355, 357 (9th Cir.

3   1994) (requiring written transfer instrument to "be a product of the parties' negotiations");

4   <u>Effects Assocs., Inc. v. Cohen</u>, 908 F.2d 555, 557 (9th Cir. 1990); <u>Foraste v. Brown Univ.</u>,

5   290 F. Supp. 2d 234, 240-41 (D.R.I. 2003) (collecting cases holding that 204(a) requires

6   the  drafter  of  a  transfer  document  to  be  "explicit,"  "precis[e]," "clear," and

7   "unequivocal"); <u>Bieg v. Hovnonian Enters., Inc.</u>, 157 F. Supp. 2d 475, 480 (E.D. Pa.

8   2001); <u>Pamfiloff v. Giant Records, Inc.</u>, 794 F. Supp. 933, 936 (N.D. Cal. 1992); Cal. Civ.

9   Code § 988(c); 13 B.E. Witkin, <u>Summary of California Law: Personal Property</u> § 47 (10th

10  ed. 2005); <u>Chamberlain v. Cocola Assocs.</u>, 958 F.2d 282, 283-84 (9th Cir. 1992)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

133

**COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Copyright Act § 204(A), California Civil Code § 988 on the following grounds:

1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already held that the Inventions Agreement is a valid and enforceable contract and that it is not ambiguous on the issue of its scope with respect to copyrightable materials." April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights." *Id*. Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement." *Id*.  Accordingly, this proposed instruction, which purports to tell the jury circumstances under which a transfer of ownership might not be valid, is improper and misleading.

2.      In any event, the effect of statutes are for the Court, not the jury.

3.      This proposed instruction is an incomplete statement of the law.  (As just one example, the statutes simply do not say "any ambiguity in transfer" should be resolved in favor of the copyright owner.)

4.      The proposed instruction is confusing and compound since defendants have lumped two separate statutes into one instruction, and it is replete with legalese.

5.      The instruction is argumentative and does not inform the jury as to the factual issue(s) it must resolve.

6.      The instruction makes no reference as to who has the burden of proof on the issues raised.

7.      The instruction is an incomplete and misleading statement of the law.  Neither statute requires the transfer document to be "clear."  Indeed, under Section 204, the writing requirement is not "unduly burdensome" but instead is "really quite simple: If the

134

1  copyright holder agrees to transfer ownership to another party, that party must get the

2  copyright holder to sign a piece of paper saying so.  It doesn't have to be the Magna Carta;

3  a one-line pro forma statement will do." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th

4  Cir. 1990).  Further, neither statute states that "any ambiguity in transfer" should be

5  resolved in favor of the work's creator.  Additionally, the instruction is also improperly

6  framed in terms of works that already existed at the time of the Inventions Agreement's

7  execution.  Under Section 204, Bryant could validly transfer rights to as-yet uncreated

8  copyrightable works.  *See Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Scharle*, 356 F.

9  Supp. 2d 515, 523-24 (E.D. Pa. 2005) (upholding transfer under document stating that

10 "Scharle would be paid for his [future] work [on a project], and the Mint would retain the

11 copyrights"); *Iconix Inc. v. Tokuda*, 457 F. Supp. 2d 969 (N.D. Cal. 2006) (similar, under

12 pre-inventions assignment agreement); *Bull Publ'g Co., v. Sandoz Nutrition Corp.*, 1989

13 WL 201080, *2, 4-5 (N.D. Cal. 1989) (upholding transfer under publishing agreement that

14 granted plaintiffs all copyrights in works to be created in the future, including derivative

15 works). Finally, the instruction is argumentative because neither statute discusses

16 "preserv[ing] the rights of the original owner."  Rather, the statutes merely address validity

17 requirements for transfers of copyright.

18

19

20

21

22

23

24

25

26

27

28

**COPYRIGHT ACT § 204(A), CALIFORNIA CIVIL CODE § 988**

**MGA Parties' and Bryant's Response**

First, Mattel's objection based upon the Court's April 25, 2008 Order is premature, given Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard on May 19, 2008.  Moreover, Mattel's partial quote of the Court's Order ("'the original Bratz drawings clearly fall within the scope of the Inventions Agreement'") is an attempt to blatantly mischaracterize the Order:  the Court specifically held that issues of timing are unresolved (April 25, 2008 Order at 4).  As discussed above, the jury will still need to be instructed that Mattel must prove that the BRATZ sketches were "conceived or reduced to practice…during [Bryant's] employment by [Mattel]."  Moreover, even under the Court's April 25, 2008 Order, the term "inventions" was interpreted, but the Court did not consider or rule on whether the assignment provisions satisfy Copyright Act Section 204(a) or California Code Section 988.

In addition, Mattel's objection recites language from a case where there was no written assignment, not an insufficient written assignment.  In cases dealing with an insufficient written assignment, such as at issue here, courts have been clear that Section 204(a) requires the drafter of a transfer document to be "explicit," "precis[e]," "clear," and "unequivocal."  Foraste v. Brown Univ., 290 F. Supp. 2d 234, 240-41 (D.R.I. 2003) (collecting cases).  Here, the sufficiency of the purported assignment is in dispute.  Thus, the transfer must be clear and unequivocal to pass muster under Section 204(a).

Furthermore, to the extent Mattel suggests that instructions based on statutes are not questions for the jury, Mattel has ignored federal and California case law requiring the jury to interpret factual questions implicated in analysis of  the statute's effect. See Panther Oil & Grease Mfg. Co. v. Segerstrom, 224 F.2d 216, 218 (9th Cir. 1955) ("The question whether the product contained substances mentioned in the statute was largely one of fact; and the testimony pro and con on this point was not without conflict. We think submission

136

to the jury of the matter of the applicability of the statute was not error."); <u>John Norton Farms, Inc. v. Todagco</u>, 124 Cal. App. 3d 149, 169-70 (1981) (while ultimate question of liability under statute regarding off-label uses of poison was technically a question of law, all of the findings that would dictate that decision – whether label was accurate and sufficient, whether product was used appropriately, whether misuse was cause of damage – were questions of fact for the jury); <u>see also</u> <u>Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists</u>, 290 F.3d 1058, 1068-69 (9th Cir. 2002) (jury to consider whether statement was genuine "threat" because issues presenting "widely varying fact patterns [] should be left to the trier of fact").

Finally, Mattel has called the MGA Parties' and Bryant's instruction "argumentative," "replete with legalese," and "confusing" without pointing to specific passages.  Such a general objection renders a meaningful response impossible.  As Mattel offers no specific language, nor proposes a counter instruction of its own, Mattel's objection should be overruled.

## INTENTIONAL INTERFERENCE WITH CONTRACT CLAIM

Mattel has asserted a claim for intentional interference with contract against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— ELEMENTS

Mattel claims that defendants Isaac Larian and MGA Entertainment Inc. intentionally interfered with the contract between Mattel and Carter Bryant.  To establish this claim, Mattel must prove all of the following:

1.  That there was a valid and enforceable contract between Mattel and Carter Bryant;

2.  That Larian and MGA knew of the contract and its terms;

3.  That Larian and MGA intended to disrupt the performance of Bryant's contract with Mattel;

4.  That Larian and MGA engaged in wrongful conduct independent of "interfering" with Bryant's contracts with Mattel through (1) aiding and abetting Bryant in a breach of the duties he owed Mattel; or (2) infringing Mattel's BRATZ-related copyrights.

5.  That Larian and MGA's conduct prevented performance of the contracts;

6.  That Mattel was harmed; and

1

2      7.  That Larian and MGA's conduct was a substantial factor in causing Mattel's harm.

3

4   **Authority:**  CACI Nos. 2201, 2202 & 2203 (2008) (as modified).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— ELEMENTS

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Intentional Interference with Contractual Relations—Elements on the following grounds:

1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already has found that a valid contract existed between Bryant and Matttel; that the MGA defendants intended to induce a breach or disruption of the contract; and that Mattel was harmed.  *See* April 25, 2008 Order, at 6.  All that is left for the jury to resolve is whether MGA or Mr. Larian knew about the contract or contracts and, subject to further rulings of the Court, whether their conduct prevented performance or made performance more difficult.

2.      Moreover, this proposed instruction purports to add an additional erroneous element to a claim for intentional interference with contractual relations—"wrongful conduct independent of 'interfering'"—which, as recognized by the Court, is not an element of such a claim.  *See* April 25, 2008 Order, at 6; CACI No. 2201.  (This additional element is required only for a claim of intentional interference with prospective economic relations, which is not Mattel's claim here.  *See* CACI No. 2202.)  Accordingly, this proposed instruction is misleading and improper.

3.      Defendants' proposed instruction deviates from the model instruction found in CACI and misstates the law as to these remaining points.  Under California law, Mattel does not need to prove that MGA and/or Isaac Larian "knew of the contract and its terms," as defendants state in this proposed instruction— only that defendants "knew of the contract."  *See* CACI No. 2201; *Sebastian Int'l Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203 - 04 (C.D. Cal. 2001) (knowledge of specific terms not required; not even knowledge of the identity of the contracting parties is required).  Defendants cite CACI No. 2202 as

1   authority for this proposed instruction, but that model instruction relates only to intentional

2   interference with prospective economic relations, a claim not being asserted here.

3        4.     Mr. Larian's and MGA's conduct need not have "prevented performance of

4   the contracts," as defendants' proposed instruction states.  As set forth in Mattel's proposed

5   jury instruction (which incorporates CACI No. 2201), this element is satisfied if

6   defendants' conduct "made performance more expensive or difficult."  *See* CACI No.

7   2201; Mattel's Proposed Jury Instructions, at 9.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— ELEMENTS

## MGA Parties' and Bryant's Response

First, although the preceding objection relies on the Court's summary judgment findings, the objection misinterprets the Court's ruling, as Mattel had not moved for summary judgment on its claim for intentional interference with contract. Indeed, the Court continued hearing on the MGA Parties' motion for partial summary judgment as to this claim, among others, and is currently scheduled to hear arguments on May 19, 2008. It is then that the MGA Parties expect to clarify the Court's findings, if any, on this claim.

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case. <u>See</u> <u>McDowell v. Calderon</u>, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges. Jury instructions do not come down from any mountain or rise up from any sea. Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority. This description does not denigrate their value, it simply places them in the niche where they belong."). Indeed, modification is sometimes necessary to make an instruction accurate and complete. <u>See, e.g.</u>, <u>United States v. Hegwood,</u> 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

1   The MGA Parties and Bryant modified the language of CACI No. 2201 to assist the jury in
2   understanding that a defendant need not know only of the contract, but of the effect of the
3   contract.  Mattel's authority, <u>Sebastian Int'l Inc. v. Russolillo</u>, 162 F. Supp. 2d 1198, 1203-
4   04 (C.D. Cal. 2001), involved a pleading standard on a motion to dismiss, which required
5   that defendants "ha[ve] <u>knowledge of the class of contractual relations</u> potentially
6   disrupted by their actions." <u>Id.</u> at 1204 (emphasis added).

7

8   Mattel's objection ignores that a claim for intentional interference with an <u>at-will</u> contract,
9   such as the contract at issue here, requires Mattel to prove that Larian and MGA engaged
10  in wrongful conduct <u>independent</u> of "interfering" with Bryant's contracts with Mattel. <u>See</u>
11  <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1152-53 (2004) ("[T]o recover for a defendant's
12  interference with an at-will employment relation, a plaintiff must plead and prove that the
13  defendant engaged in an independently wrongful act – i.e., an act 'proscribed by some
14  constitutional, statutory, regulatory, common law, or other determinable legal standard' --
15  that induced an at-will employee to leave the plaintiff.") (citations omitted).

16

17  Mattel's objection that CACI No. 2202 does not apply because it deals with intentional
18  interference with prospective economic relations is also incorrect. The court in <u>Reeves v.</u>
19  <u>Hanlon</u> <u>expressly</u> incorporated the "wrongful conduct" element from the claim of
20  intentional interference with economic relation in claims for intentional interference with
21  <u>at-will employment agreements</u>. <u>See</u> 33 Cal. 4th at 1151-52 ("[T]he economic relationship
22  between parties to contracts that are terminable at will is distinguishable from the
23  relationship between parties to other legally binding contracts … an interference with an
24  at-will contract properly is viewed as an interference with a prospective economic
25  advantage, a tort that similarly compensates for the loss of an advantageous economic
26  relationship but does not require the existence of a legally binding contract."); <u>see also</u>
27  <u>Kasparian v. County of Los Angeles</u>, 38 Cal. App. 4th 242, 260 (1995) (interference with
28  contract has been referred to as a species of the broader tort of interference with

143

1    prospective economic relations); <u>accord</u> <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>,

2    11 Cal. 4th 376, 381-91 (1995).

3

4    While Mattel cites its own proposed instruction on the subject, Mattel's proposed

5    instruction is improper for several reasons – namely, it ignores that Mattel is required to

6    prove that the underlying contract was a valid and enforceable one, <u>see</u> <u>PMC, Inc. v. Saban</u>

7    <u>Entm't, Inc.</u>, 45 Cal. App. 4th 579, 601 (1996), and that the court must advise the jury that

8    there is no "inducement" and thus no liability where the breaching party initiates contact

9    with the defendant, <u>see, e.g.</u>, <u>Bauer v. Interpublic Group of Cos., Inc.</u>, 255 F. Supp. 2d

10    1086, 1093, 1095 (N.D. Cal. 2003).  It further ignores that the court must advise the jury

11    that solicitation and contracting with an at-will employee of a competitor such as Bryant

12    are not wrongful.  <u>See</u> <u>Reeves</u>, 33 Cal. 4th at 1154 (noting the importance of "shield[ing]

13    those employers who hire a competitor's at-will employees without engaging in unlawful

14    conduct").

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—**
2  **INTENT**

3

4  To prove that MGA and Larian intended to interfere with Bryant's contract with Mattel,

5  Mattel must show that MGA and Larian knew that a breach of Bryant's contract was

6  certain or substantially certain to occur as a result of their actions.  There is no intent to

7  interfere where the defendant knows or believes its agreement with a third party will not

8  infringe the rights of the plaintiff.

9

10  **Authority:**   CACI Nos. 2201, 2202 & 2203 (2008); Tuchscher Dev. Enters., Inc. v. San

11  Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (intent); 1-800 Contacts,

12  Inc. v. Steinberg, 107 Cal. App. 4th 568 (2003) (intent).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INTENT

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Intentional Interference with Contractual Relations—Intent on the grounds that:

1. The Court already has adjudicated this issue in favor of Mattel in its April 25, 2008 Order, ruling that the "third element" of Mattel's claim for intentional interference with contractual relations has been met. *See* April 25, 2008 Order (describing the third element as "intentional acts designed to induce a breach or disruption of the contractual relationship" and finding that the third element is met).

2. In any event, this proposed instruction deviates from the model instruction found in CACI. The model instruction simply informs the jury what it may consider in determining whether defendants acted intentionally. Defendants' version is argumentative and biased, framed in terms of what Mattel must "prove" and "show."

3. Defendants' proposed instruction ignores the established rule that knowledge or intent can be established by inference as well as by direct proof. Mattel's proposed instruction accurately states the law in this regard. *See* Mattel's Proposed Jury Instructions, at 11.

4. This proposed instruction also invents an exception not supported by any of the authorities cited, erroneously indicating that there is no intent where a defendant knows or believes – presumably, even unreasonably, e.g., as a result of willful blindness – that its agreement will not infringe the rights of another. There is no reason to give the jury such an instruction.

5. This proposed instruction neglects to inform the jury that in deciding whether defendants acted knowingly or intentionally, it may consider that a party's willful blindness can be equivalent to knowledge. *See* Mattel's Proposed Jury Instructions, at 12.

1

2   **Authority:**   CACI No. 2203; S*eaman's Direct Buying Serv., Inc. v. Standard Oil Co*, 36

3   Cal. 3d 752, 767 (1984), overruled on other grounds, *Freeman & Mills, Inc. v. Belcher Oil*

4   *Co*., 11 Cal. 4th 85, 98 (1995) ("Intent, of course, may be established by inference as well

5   as by direct proof.   Thus, the trial court could properly have instructed the jury that it

6   might infer culpable intent from conduct 'substantially certain' to interfere with the

7   contract."); *Sony Computer Entm't Am. Inc v. Gamemasters*, 87 F. Supp. 976, 985 (N.D.

8   Cal. 1999) (willful blindness is no defense to a charge of knowing and intentional

9   wrongdoing); *see also Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966)

10  (knowledge of a third party's contractual obligations can be inferred from circumstantial

11  evidence, including intent to conceal or avoid actual knowledge of agreement).   *Tuscher*

12  *Dev. Eng'rs. Inc. v. San Diego Unified Port Dist*, 106 Cal. App. 4th 1219, 1239 (2003),

13  cited by defendants for the proposition "intent," establishes no different rule.   At the

14  relevant page, the Court says the following:   "The elements of a cause of action for

15  intentional interference with contract are:  (1) a valid contract between plaintiff and a third

16  party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed

17  to induce a breach or disruption of the contractual relationship; (4) actual breach or

18  disruption of the contractual relationship; and (5) resulting damage.  ( *Quelimane Co. v.*

19  *Stewart Title Guar. Co*. (1998) 19 Cal. 4th 26, 55; *Applied Equip. Corp. v. Litton Saudi*

20  *Arabia Ltd*. (1994) 7 Cal. 4th 503, 514, fn. 5; *Limandri v. Judkins*, 52 Cal. App. 4th 326,

21  339 (1997).   The required intent is shown if the defendant "knows that the interference is

22  certain or substantially certain to occur as a result of his action.   The rule applies, in other

23  words, to an interference that is incidental to the actor's independent purpose and desire

24  but known to him to be a necessary consequence of his action." *Quelimane*, 19 Cal. 4th at

25  56.   Whether the interference was justified as merely incidental to the defendant's

26  legitimate pursuit of his own interests is a question of fact.  *Id.*   Contrary to respondents'

27  argument, "[w]rongfulness independent of the inducement to breach the contract is not an

28  element of the tort of intentional interference with existing contractual relations . . . ." ( *Id.*

1   at 55, italics omitted.)."  Nor does *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568

2   (2003), the only other authority cited by defendants, establish an exception to the intent

3   rule as properly stated in Mattel's proposed instruction.   In that case, involving

4   constitutional rights of association and assembly, the court's discussion of "intent" was

5   limited to the following:   "Plaintiff argues that the trial court improperly required a

6   showing of "specific intent" by Steinberg to induce Conder to breach.   Rather, plaintiff

7   avers, the necessary intent comprised knowledge that a breach was substantially likely to

8   occur as a result of Steinberg's actions.   Although this restatement of the intent element is

9   generally accurate, it does not dictate a different result…"

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INTENT**

**MGA Parties' and Bryant's Response**

First, although the preceding objection relies on the Court's summary judgment findings, the objection misinterprets the Court's ruling, as Mattel had not moved for summary judgment on its claim for intentional interference with contract. Indeed, the Court continued hearing on the MGA Parties' motion for partial summary judgment as to this claim, among others, and is currently scheduled to hear arguments on May 19, 2008. It is then that the MGA Parties expect to clarify the Court's findings, if any, on this claim.

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

1   Mattel's objection that "Defendants' version is argumentative and biased, framed in terms
2   of what Mattel must 'prove' and 'show'" is not well taken.  The reason the instruction is
3   framed this way is because Mattel has the burden of proof on intent and the burden of
4   disproving the good faith of the MGA Parties in contracting with Bryant.

5

6   Mattel's objection ignores that there can be no intent to interfere where the defendant
7   knows or believes its agreement with a third party will not infringe the rights of the
8   plaintiff.  See 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568, 586 (2003).  Indeed,
9   the very quotation Mattel cites supports the instruction:  "The required intent is shown if
10  the defendant knows that the interference is certain or substantially certain to occur as a
11  result of his action."  Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal.
12  App. 4th 1219, 1239 (2003) (emphasis added, internal quotations and citations omitted).
13  The court does not say "knows or should have known."  Notably, Mattel's reliance on
14  Sony Computer Entm't Am., Inc. v. Gamemasters, 87 F. Supp. 2d 976, 985 (N.D. Cal.
15  1999), is irrelevant here, given that Sony Computer dealt with the intent element required
16  to prove a claim for trademark counterfeiting under federal law, which has nothing to do
17  with a claim for intentional interference with contract asserted under California law.

18

19  Similarly, Mattel's authority regarding "willful blindness" is not supported by California
20  law.  Mattel's only authority deals with the intent element required to prove a claim for
21  trademark counterfeiting under federal law, which has nothing to do with a claim for
22  intentional interference with contract asserted under California law.  See Sony Computer
23  Entm't Am., Inc., 87 F. Supp. 2d at 985.

24

25  Finally, the preceding objection is improper to the extent that it implies that evidence of
26  awareness of the contract or even the identity of the contracting parties could give rise to
27  inference of the required element of knowledge or intent, as such evidence "does not
28  establish a genuine issue of material fact as to whether [defendant] caused [employee] to

1  terminate its relationship with [plaintiff] or intended to bring about that result." Family

2  Home & Fin. Ctr., Inc. v. Federal Home Loan Mortg. Corp., 461 F. Supp. 2d 1188, 1194-

3  95 (C.D. Cal. 2006) (granting summary judgment).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— INDUCEMENT

A defendant is not liable for intentional interference with contract where the breaching party is the one who initiates contact with the defendant, even if the defendant knows the breaching party has a contract with someone else and even if the defendant suspects that entering a contract with the breaching party may cause the breaching party to breach his or her obligation to another.  Here's an example. Bill is under contract to sell certain goods to Chad.  Bill offers to sell the same goods to Adam, who knows Bill has a contract with Chad.  Even if Adam accepts Bill's offer and buys the goods, Adam has not induced Bill's breach and is not liable for intentional interference with the contract between Bill and Chad.

**Authority:** Restatement (Second) of Torts § 766, cmt. n (2007) (inducement); DeVoto v. Pac. Fid. Life Ins.Co., 618 F.2d 1340, 1348 (9th Cir. 1980) (inducement); Bauer v. Interpublic Group of Cos., 255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003) (inducement); Dryden v. Tri-Valley Growers, 65 Cal. App. 3d 990, 996 (1977) (inducement).

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— INDUCEMENT

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Intentional Interference With Contractual Relations—Inducement on the grounds that:

1.     This Court already has found as a matter of law that MGA and Larian intended to disrupt the performance of this contract, resolving any issue of inducement. *See* April 25, 2008 Order.  Accordingly, this proposed instruction is improper and unnecessary.

2.     This proposed instruction also misstates the law and is misleading.  Notably, there is no such instruction found in CACI.  Defendants' instruction states that it is a complete defense to a claim for intentional interference with contractual relations if the breaching party is "the one who initiates contact with the defendant."  That statement is erroneous.  There is no authority for the proposition that mere initiation, without more, is a defense to intentional interference.  As set forth in the model instruction regarding the elements of such a claim (as Mattel has proposed), the issue is whether defendants, once contact has been initiated by either party, intend to disrupt the performance of the contract with the plaintiff.  *See* CACI No. 2201; Mattel's Proposed Jury Instructions, at 9.

**1** **INTENTIONAL   INTERFERENCE   WITH   CONTRACTUAL   RELATIONS—**
**2** **INDUCEMENT**

**3**

**4** **MGA Parties' and Bryant's Response**

**5**

**6** First, although the preceding objection relies on the Court's summary judgment findings,
**7** the objection misinterprets the Court's ruling, as Mattel had not moved for summary
**8** judgment on its claim for intentional interference with contract. Indeed, the Court
**9** continued hearing on the MGA Parties' motion for partial summary judgment as to this
**10** claim, among others, and is currently scheduled to hear arguments on May 19, 2008. It is
**11** then that the MGA Parties expect to clarify the Court's findings, if any, on this claim.

**12**

**13** In proposing jury instructions, the parties are not limited to the subject matter covered by
**14** the Ninth Circuit Model Instructions or any other set of models.  See, e.g., Jones v.
**15** Hollenback, 2007 WL 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury
**16** Instruction No. 7 is not a Ninth Circuit Model Jury Instruction, but rather California
**17** pattern instruction, BAJI 2.22, is irrelevant.  The instruction correctly and clearly states the
**18** law.  There is nothing confusing about the purpose and intent of this instruction.").

**19**

**20** Mattel objects to this instruction because it is unfavorable, not because it misstates the law.
**21** Indeed, the Restatement (Second) of Torts § 766, comment n, states that "[o]ne does not
**22** induce another to commit a breach of contract with a third person under the rule stated in
**23** this Section when he merely enters into an agreement with the other with knowledge that
**24** the other cannot perform both it and his contract with the third person."  Furthermore, the
**25** MGA Parties and Bryant have not couched "lack of inducement" as an affirmative defense,
**26** as Mattel states; rather, "inducement" is a necessary element of the claim, for which Mattel
**27** bears the burden.

**28**

1  **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—**
2  **HIRING OF AT WILL EMPLOYEES OF COMPETITORS**
3
4  Bryant worked **"at will"** for Mattel, meaning that he could leave Mattel at any time, and he
5  could be let go by Mattel for any reason or no reason.  Thus, Bryant was entitled to look
6  for another job while still employed at Mattel, to prepare to compete with Mattel, and to
7  leave his employment with Mattel to work with a competitor or to compete himself against
8  Mattel.
9
10  It is not wrongful for a company to solicit or hire the at-will employee of its competitor,
11  because California law protects employees and their pursuit of any employment or
12  enterprise of their choice as more important than the competitive business interests of the
13  employers.  Likewise, competitor employers have the right to offer more pay or better
14  terms to another's employee, so long as the employee is free to leave.
15
16  **Authority:**  See also Reeves v. Hanlon, 33 Cal. 4th 1140, 1151 (2004) (California **"public**
17  policy generally supports a competitor's right to offer more pay or better terms to
18  another's employee, so long as the employee is free to leave. … [I]f the law were to the
19  contrary, the result 'would be intolerable, both to such employers as could use the
20  employe[e] more effectively and to such employe[e]s as might receive added pay. It would
21  put an end to any kind of competition.'") (citation omitted); Metro Traffic Control, Inc. v.
22  Shadow Traffic Network, 22 Cal. App. 4th 853, 859 (1994) (**"California courts have**
23  consistently declared  … an expression of public policy to ensure that every citizen shall
24  retain the right to pursue any lawful employment and enterprise of their choice"); Diodes,
25  Inc. v. Franzen, 260 Cal. App. 2d 244, 255 (1968) (California public policy recognizes
26  **"[t]he interests of the employee in his own mobility and betterment are deemed paramount**
27  to the competitive business interests of the employers"); see also Hollingsworth Solderless
28  Terminal Co. v. Turley,  622 F.2d 1324, 1337 (9th Cir. 1980) (**"[m]ere solicitation of an**

1   employee, under no contract of employment, to leave and associate with a competing firm

2   is not illegal"); <u>Interloc Solutions, Inc. v. Tech. Assoc. Int'l. Corp.</u>, No. CV071534

3   LEWGGHX, 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007) (citing <u>Reeves</u> for the

4   proposition that "employees are not precluded from seeking new employment on their own

5   initiative"); <u>Posdata Co. Ltd. v. Kim</u>, No. C-07-02054 RMW, 2007 WL 1848661, *7 (N.D.

6   Cal. June 27, 2007); <u>Continental Car-Na-Var Corp. v. Moseley</u>, 24 Cal. 2d 104, 110 (1944)

7   ("[a] former employee has the right to engage in a competitive business for himself and to

8   enter into competition with his former employer, even for the business of ... his former

9   employer, provided such competition is fairly and legally conducted."); <u>VL Sys., Inc. v.</u>

10  <u>Unisen, Inc.</u>, 152 Cal. App. 4th 708, 713, 715 (2007) (quoting <u>Diodes</u> and finding no

11  unlawful solicitation of employee where the employee initiated the new agreement with

12  the defendant and "chose to seek the job with" the defendant).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— HIRING OF AT WILL EMPLOYEES OF COMPETITORS

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Intentional Interference With Contractual Relations—Hiring of At Will Employees of Competitors on the following grounds:

1.   This proposed instruction is irrelevant to the issues in this case.  Mattel's claim for intentional interference with contractual relations is based on defendants' interference with Carter Bryant's performance of obligations under the Inventions Agreement and the Conflict of Interest Questionnaire.  Mattel is not claiming that defendants interfered with Mr. Bryant's "at will" employment agreement with Mattel. Accordingly, this proposed instruction is unnecessary and confusing.

2.   The Court has already held that the Inventions Agreement is a valid and enforceable contract.  *See* April 25, 2008 Order, at 5.  Accordingly, Bryant was bound to live up to his obligations pursuant to the Inventions Agreement.  It is irrelevant what rights an "at will employee" might have.

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—HIRING OF AT WILL EMPLOYEES OF COMPETITORS**

**MGA Parties' and Bryant's Response**

Mattel's objection seeks to avoid the more stringent test for intentional interference with at-will employment contracts. As discussed above, claims for intentional interference with an <u>at-will</u> contract, such as the contract at issue here, require Mattel to prove that Larian and MGA engaged in wrongful conduct <u>independent</u> of "interfering" with Bryant's contracts with Mattel. <u>See</u> <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1152-53 (2004) ("[T]o recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act -- i.e., an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard' – that induced an at-will employee to leave the plaintiff.") (citations omitted). Further, the jury must be instructed that Bryant was entitled under California law to seek new employment, and MGA was entitled to hire him so that there is no risk that jury base any finding on that lawful conduct.

As noted above, Mattel's objection based on the Court's April 25, 2008 Order is premature given that Bryant's Motion for Reconsideration is pending and the Court has ordered it shall be heard on May 19, 2008.

**"BUT FOR" CAUSATION**

If the alleged loss or harm that Mattel suffered would have occurred even in the absence of the alleged wrongdoing by the defendants, then the defendants' conduct cannot be considered a substantial factor in bringing about Mattel's alleged loss or harm and you must find for the defendants.

If you determine that Mattel has suffered injury or harm, you may only compensate Mattel for the harm, if any, which was caused by the unlawful acts of the defendants.  To the extent that you find that Mattel would have suffered harm or injury even without any action from the defendants, due to Mattel's own business decisions, you may not award any damages that resulted from those business decisions.

**Authority:**  Matthew Bender, <u>Cal. Forms Jury Inst.</u>, Ch. 1-3E § 300E.04 (as modified).

1 **"BUT FOR" CAUSATION**

2

3 **Mattel's Objection**

4

5       Mattel objects to defendants' proposed instruction regarding "But For" Causation on

6 the following grounds:

7       1.       This proposed instruction is unnecessary and confusing.  The instruction

8 states that in order for a factor to be a "substantial cause," the jury must find that the

9 plaintiffs would not have suffered harm in the absence of the alleged wrongdoing.  This

10 adds nothing to the definition of causation set forth in the previous proposed instruction

11 regarding the Substantial Factor Test.

12       2.       The second paragraph of the proposed instruction confuses the appropriate

13 measure of *damages* with the question of causation.  Defendants ask the Court to instruct

14 the jury that "to the extent that you find that Mattel would have suffered harm or injury

15 even without any action from defendants, due to Mattel's own business decisions, you may

16 not award any damages that resulted from those business decisions."  As an initial matter,

17 this statement contradicts the law as set forth in the proposed instruction regarding the

18 Substantial Factor Test.  It is also unnecessary and confusing because Phase 1A of this trial

19 relates to liability only, and not the calculation of damages.

20

21

22

23

24

25

26

27

28

1  **"BUT FOR" CAUSATION**

2

3  **MGA Parties' and Bryant's Response**

4

5  Mattel's claim that this instruction adds nothing to the Substantial Factor Test instruction

6  is incorrect.   While the Substantial Factor Test instruction describes substantial factor

7  causation adequately, it does not include language to subsume the "but for" test.   Compare

8  Proposed Substantial Factor Test Instruction ("The law defines cause in its own particular

9  way.   A cause of injury, damage, loss or harm is something that is a substantial factor in

10  bringing about an injury, damage, loss or harm.   A 'substantial factor' is something which

11  is more than a slight, trivial, negligible, or theoretical factor in producing a particular

12  result."), with CACI No. 430 ("A substantial factor in causing harm is a factor that a

13  reasonable person would consider to have contributed to the harm.   It must be more than a

14  remote or trivial factor.   It does not have to be the only cause of the harm.   [Conduct is not

15  a substantial factor in causing harm if the same harm would have occurred without that

16  conduct.]").   According to the Directions for Use, the first sentence of CACI No. 430, and

17  the optional last sentence, are intended to refer to the "but for" causation test.   The

18  Proposed Substantial Factor Test Instruction, while adequate as far as it goes, fails to

19  include the "but for" concept.   Thus, an additional "but for" instruction is appropriate.

20

21  Failure to adequately instruct the jury on "but for" causation can be prejudicial error.   See,

22  e.g., Viner v. Sweet, 117 Cal. App. 4th 1218, 1224-25 (2004) (in case of legal malpractice

23  involving negligent negotiation of a deal, finding that trial court's use of substantial factor

24  instruction, instead of but for instruction, was not harmless error, and reversing jury

25  verdict on five of seven counts accordingly).

26

27

28

1  **BREACH OF FIDUCIARY DUTY CLAIM**

2

3  Mattel has asserted a claim for breach of fiduciary duty against Carter Bryant.

4

5  I will now instruct you regarding the law as to this claim.

6

7  **FIDUCIARY DUTY—ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY**

8  **DUTY**

9

10  To recover on its claim for breach of fiduciary duty, Mattel has the burden of proving by a

11  preponderance of the evidence all the facts necessary to establish:

12

13      1.    That Bryant was a fiduciary of Mattel at the time of the acts

14          complained of by Mattel;

15

16      2.    That while in that capacity, Bryant acted against Mattel's interests by directly

17          competing with Mattel prior to terminating his employment;

18

19      3.    That Mattel was harmed; and

20

21      4.    That Bryant's conduct was a substantial factor in causing Mattel's harm.

22

23  **Authority:**  CACI Nos. 4101, 4102 (2008) (as modified); Bancroft-Whitney Co. v. Glen,

24  64 Cal. 2d 327 (1966); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83

25  Cal. App. 4th 409 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th

26  1140 (2004); City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal.

27  App. 4th 445, 483 (1998); Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101-02 (1991)

28  (superseded by statute on other grounds).

1  **FIDUCIARY DUTY—ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY**
2  **DUTY**

3

4  **Mattel's Objection**

5

6         Mattel objects to defendants' proposed instruction regarding the elements of a
7  fiduciary duty claim on the following grounds:

8         1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The
9  Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel,
10  and that Bryant breached that duty when he "secretly entered into a contract with Mattel's
11  competitor, while still employed by Mattel, to produce a line of fashion dolls to be
12  marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 5-6.
13  None of defendants' proposed instructions on this claim properly inform the jury of the
14  Court's ruling.

15         2.      In any event, this proposed instruction deviates from the model instruction
16  and misstates the elements of a claim for breach of fiduciary duty.  Defendants' proposed
17  instruction seems to require Mattel to prove that "Bryant acted against Mattel's interests by
18  directly competing with Mattel prior to terminating his employment," which unjustifiably
19  limits the universe of conduct that can constitute a breach of fiduciary duty.  A fiduciary is
20  not merely obligated to refrain from "directly competing" with his employer during the
21  term of his employment.  The law is clear that a fiduciary must place his employer's best
22  interests ahead of his own.  Not only must a fiduciary refrain from engaging in direct
23  competition, but he is also under an obligation to disclose any acts undertaken in
24  preparation to compete after his fiduciary relationship will have ended.

25

26         **Authority:** CACI Nos. 4101, 4102; *Wolf v. Superior Court*, 107 Cal. App. 4th 25,
27  30 (2003) ("Inherent in each of these relationships is the duty of undivided loyalty the
28  fiduciary owes to its beneficiary, imposing on the fiduciary obligations far more stringent

163

1   than those required of ordinary contractors. As Justice Cardozo observed, 'Many forms of
2   conduct permissible in a workaday world for those acting at arm's length, are forbidden to
3   those bound by fiduciary ties. A trustee is held to something stricter than the morals of the
4   market place. Not honesty alone, but the punctilio of an honor the most sensitive is then
5   the standard of behavior.'") (internal citation omitted); *Sequoia Vacuum Sys. v. Stransky*,
6   229 Cal. App. 2d 281, 287 (1964) ("In the absence of an agreement to the contrary, an
7   agent is free to engage in competition with his principal after termination of his
8   employment but he may plan and develop his competitive enterprise during the course of
9   his agency only where the particular activity engaged in is not against the best interests of
10  his principal. . . . the protection of the principal's interest requires a full disclosure of acts
11  undertaken in preparation of entering into competition.")

1 **FIDUCIARY DUTY—ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY**

2 **DUTY**

3

4 **MGA Parties' and Bryant's Response**

5

6 Mattel's objection based on the Court's April 25, 2008 Order is premature given that

7 Bryant's Motion for Reconsideration is pending, and the Court has ordered it shall be

8 heard on May 19, 2008.  Indeed, in light of the California Supreme Court's recent decision

9 City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at

10 **6-11 (Apr. 24, 2008), it appears that Mattel seeks to invite reversible error in relying on

11 this portion of the Court's order.  (Bryant's pending Motion for Reconsideration explains

12 the impact of City of Hope in more detail, which Bryant will not repeat here.)

13

14 Moreover, in any event, Mattel's complaint that this instruction deviates from the model is

15 no basis for rejecting it.  In proposing jury instructions, the parties are permitted to modify

16 the language of any model instruction to make it less confusing or more appropriate in the

17 context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir.

18 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions:

19 "The texts of 'standard' jury instructions are not debated and hammered out by legislators,

20 but by ad hoc committees of lawyers and judges.  Jury instructions do not come down

21 from any mountain or rise up from any sea.  Their precise wording, although extremely

22 useful, is not blessed with any special precedential or binding authority.  This description

23 does not denigrate their value, it simply places them in the niche where they belong.").

24 Indeed, modification is sometimes necessary to make an instruction accurate and complete.

25 See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving

26 modification of Ninth Circuit model instruction to include additional elements, noting that

27 "[h]ad the district court merely read the model jury instruction, it would have committed

28 plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

1

2  Here, it is appropriate to modify the form instruction because the actions Mattel claims are

3  against its interests are actions that courts have found to be preparations to compete—and

4  thus not a breach of fiduciary duty. <u>See</u> <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal. 2d 327,

5  345-46 & n.10 (1966); <u>accord</u> <u>Eckard Brandes, Inc. v. Riley</u>, 338 F.3d 1082, 1086 (9th Cir.

6  2003); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th

7  409, 424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140

8  (2004); <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968)

9  (unpublished); <u>see also</u> <u>Material Supply Int'l, Inc. v. Sunmatch Indus. Co.</u>, 146 F.3d 983,

10  993 (D.C. Cir. 1998); <u>Franklin Music Co. v. American Broadcasting Cos.</u>, 616 F.2d 528,

11  532-33, 537 (3d Cir. 1979); <u>Mercer Mgmt. Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219,

12  233 (D. D.C. 1996); <u>T.A. Pelsue Co. v. Grand Enters., Inc.</u>, 782 F. Supp. 1476, 1486 (D.

13  Colo. 1991); <u>Abraham Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984),

14  <u>aff'd</u>, 761 F.2d 93 (2d Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161, 167 (S.D.

15  Tex. 1977); Restatement (Third) of Agency § 8.04 cmt. c.

16

17  Furthermore, Mattel seeks to mislead the jury by setting forth general principles, rather

18  than the specific legal standards applied to cases in which a fiduciary prepares to compete

19  with an employer prior to leaving his employment.

20

21  Indeed, Mattel continues to mislead the Court, and seeks to mislead the jury, by making

22  assertions that are contrary to the California Supreme Court authority, which holds that a

23  fiduciary is not obligated to disclose preparations to compete.  In <u>Bancroft-Whitney Co. v.</u>

24  <u>Glen</u>, 64 Cal. 2d 327 (1966), the California Supreme Court specifically rejected Mattel's

25  interpretation of <u>Daniel Orifice</u> and <u>Sequoia Vacuum</u>.  The Court held that, even for an

26  officer (which Bryant was not) with fiduciary duties (which Bryant lacked), "[t]here is no

27  requirement that an officer disclose his preparations to compete with the corporation in

28  every case, and failure to disclose such acts will render the officer liable for breach of his

fiduciary duties only where particular circumstances render nondisclosure harmful to the corporation."  Id. at 345 (emphasis added); see also Rest. 3d Agency § 8.04 cmt. c ("[A]n employee or other agent who plans to compete with the principal does not have a duty to disclose this fact to the principal.  To be sure, the fact that an agent has such a plan is information that a principal would find useful, but the agent's fiduciary duty to the principal does not oblige the agent to make such disclosure.   Nor does an agent's duty to provide facts to the principal … require disclosure to the principal of an agent's competitive plans.  In this respect, the social benefits of furthering competition outweigh the principal's interest in full disclosure by its agents.").  Were an at-will employee, like Bryant, required to disclose preparations to compete, the employee's right to prepare to compete would be rendered meaningless.

Given that Bryant has pointed out Mattel's error several times, it appears that Mattel seeks to mislead the Court into a reversible error by continuing to assert that disclosure is required under these cases.

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## FIDUCIARY DUTY—DEFINED

Once a party expressly agrees to assume a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interests of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest.

**Authority:** CACI Nos. 4100, 4102 (2008) (as modified); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc</u>., 83 Cal. App. 4th 409, 417-18 (2000), <u>overruled on other grounds by</u> <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc</u>., 68 Cal. App. 4th 445, 483-84 (1998).

# FIDUCIARY DUTY—DEFINED

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Fiduciary Duty—Defined on the following grounds:

1.     This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel, and that Bryant breached that duty when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 5-6.  None of defendants' proposed instructions on this claim properly inform the jury of the Court's ruling.

2.     This proposed instruction also erroneously suggests that the only way a party can become a fiduciary is if he "expressly agrees to assume a fiduciary duty."  That is not correct.  Fiduciary duties may be created by agreement, as well as by law, but the agreement need not include the "express" assumption of "a fiduciary duty."  If a party agrees to accept a position of trust, "where a confidence is reposed by one person in the integrity of another…. if he voluntarily accepts or assumes to accept the confidence," he is bound to act as a fiduciary.  Thus, contrary to defendants' proposed instruction, the law is clear that fiduciary relationships may be created by agreement and/or by confidential relationship, not solely by law or by express assumptions of a "fiduciary duty" in a contract.

3.     While the breach of a fiduciary duty is a question of fact, the existence of the legal duty in the first instance and its scope are questions of law.  It is for this reason that Mattel has proposed Special Jury Instructions to reflect the court's prior finding of a fiduciary duty, and limited the role of the jury to determining the full scope of liability for breach.  *See* Mattel's Proposed Jury Instructions, at 14.

169

1

2    **Authority:**   CACI No. 4101; *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29

3    (2003) ("A fiduciary relationship is 'any relation existing between parties to a transaction

4    wherein one of the parties is in duty bound to act with the utmost good faith for the benefit

5    of the other party. Such a relation ordinarily arises where a confidence is reposed by one

6    person in the integrity of another, and in such a relation the party in whom the confidence

7    is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no

8    advantage from his acts relating to the interest of the other party without the latter's

9    knowledge or consent. ...'"); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1991)

10   (fiduciary relationships arise "whenever trust and confidence is reposed by one person in

11   the integrity of another"); *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (at common

12   law, "even in the absence of a written contract, an employee has a fiduciary obligation to

13   protect confidential information obtained during the course of his employment).  *GAB Bus.*

14   *Servs., Inc., v. Lindsey & Newsom Claims Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000),

15   relied upon by defendants, is not to the contrary; in that case, the court, while addressing

16   fiduciary relationships created by status in the corporate hierarchy, explicitly recognized

17   that:  "A fiduciary duty is undertaken by agreement when one person enters into a

18   confidential relationship with another....a confidential relationship arises 'where a

19   confidence is reposed by one person in the integrity of another, and...the party in whom

20   the confidence is reposed, ...voluntarily accepts or assumes to accept the confidence.'"

21   *See also Kirschner Brothers Oil, Inc. v. Natomas Co.*, 185 Cal. App. 3d 784, 790 (1986)

22   ("While breach of a fiduciary duty is a question of fact, the existence of legal duty in the

23   first instance and its scope are questions of law.").

24

25

26

27

28

**FIDUCIARY DUTY—DEFINED**

**MGA Parties' and Bryant's Response**

First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that Bryant's Motion for Reconsideration is pending and the Court has ordered it shall be heard on May 19, 2008.  Indeed, in light of the California Supreme Court's recent decision <u>City of Hope Nat'l Med. Ctr. v. Genentech, Inc.</u>, __ Cal. 4th __, 2008 WL 1820916, at **6-11 (Apr. 24, 2008), it appears that Mattel seeks to invite reversible error in relying on this portion of the Court's order.  (Bryant's pending Motion for Reconsideration explains the impact of <u>City of Hope</u> in more detail, which Bryant will not repeat here.)

Second, Mattel persists in its attempt to blur the distinction between the two types of fiduciary relationships—those imposed by law and those created by agreement, also referred to as a fiduciary duty arising out of a confidential relationship. Even where the existence of a fiduciary duty is a pure question of law, Mattel has conceded that Bryant's employment position at Mattel does not meet the criteria set forth in <u>GAB Business</u> for establishing a fiduciary duty imposed by law.  (<u>See</u> Mattel Opp'n to Bryant's Motion for Partial Summary Judgment at 53 (conceding inapplicability of <u>GAB Business</u>).)  Thus, Mattel's objection that a determination of the existence of a fiduciary duty based on a confidential relationship (i.e., an agreed upon fiduciary relationship) is to be determined by a court is unsupported by the law and ignores case law holding otherwise. <u>See, e.g.</u>, <u>City of Hope</u>, 2008 WL 1820916, at *11 (confirming that the existence of an agreed upon fiduciary relationship is a question of fact based upon numerous factors and reversing based on erroneous instruction); <u>Maglica v. Maglica</u>, 66 Cal. App. 4th 442, 447 (1998) (existence of an agreed upon fiduciary relationship is question for jury).

1  Further, Mattel must now show that a fiduciary relationship was created as a factual

2  matter— and this requires a showing that Bryant "voluntarily" or "expressly" assumed a

3  fiduciary duty.  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008

4  WL 1820916, at *6 (Apr. 24, 2008) (confirming that there must be a factual showing from

5  which a jury could find that a party knowingly undertook the obligations of a fiduciary,

6  that is to act primarily for the benefit of the other party); see also City Solutions, Inc. v.

7  Clear Channel Commc'n., Inc., 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002); Kremen v.

8  Cohen, 99 F. Supp. 2d 1168, 1175 (N.D. Cal. 2000); Comm. on Children's Tel., Inc. v.

9  Gen. Foods Corp., 35 Cal. 3d 197, 222 (1983) (superseded by statute on other grounds);

10  Vai v. Bank of America, 56 Cal. 2d 329, 338 (1961); Oakland Raiders v. Nat'l Football

11  League, 131 Cal. App. 4th 621, 632-33 (2005); GAB Bus. Servs., Inc. v. Lindsey &

12  Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 417 (2000), overruled on other grounds

13  by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Maglica v. Maglica, 66 Cal. App. 4th 442,

14  448 (1998); Lynch v. Cruttenden & Co., 18 Cal. App. 4th 802, 809 (1993); Worldvision

15  Enters., Inc. v. Am. Broad. Cos., 142 Cal. App. 3d 589, 595 (1983). As set forth in

16  Bryant's Motion for Partial Summary Judgment, Mattel has made no such factual

17  showing; this instruction is submitted only because the parties have not yet obtained a

18  ruling on their pending summary judgment submissions and Bryant's Motion for

19  Reconsideration.

20

21  Moreover, this instruction merely defines fiduciary duty—not the creation of the duty.

22  "Expressly" simply refers to the requirements set forth in the instruction on existence of a

23  fiduciary duty.

24

25  Finally, it is notable that Mattel fails to address the requirements set forth in City of Hope

26  or even to mention this controlling authority.

27

28

# FIDUCIARY DUTY—EXISTENCE OF DUTY

The parties dispute whether Carter Bryant owed a fiduciary duty to Mattel.  The fact that Carter Bryant was an employee of Mattel does not by itself give rise to a fiduciary relationship.

In order to establish that Carter Bryant owed Mattel a fiduciary duty, Mattel must prove by a preponderance of the evidence the following:  (1) that Bryant voluntarily and knowingly expressly agreed to act as a fiduciary for Mattel, to act on its behalf, and to hold Mattel's interests paramount over his own interests;  (2) that Mattel entrusted its property or affairs to Bryant; (3) that Mattel gave Bryant a broad grant of discretion; (4) that Mattel had little ability to monitor Bryant and therefore had to rely upon the truth of his representations;  (5) that Mattel was vulnerable and dependent upon Bryant and that vulnerability was so substantial as to give rise to equitable concerns and create a relationship similar to other legally recognized fiduciary relationships such as that of an attorney/client, trustee/beneficiary, a corporate officer/corporation; and (6) that the employment contract did not preclude the existence of a fiduciary relationship.

Even if these elements are met, the employee does not necessarily become a fiduciary. Further, the reposing of trust and confidence in a party with whom one has a contractual relationship is not sufficient to create a fiduciary relationship.

**Authority:**  City of Hope Nat'l Med. Ctr. v. Genentech, Inc., No. S129463, ___ Cal. Rptr. 3d ___, 2008 WL 1820916 at * 6-11 (Cal. April 24, 2008); City Solutions v. Clear Channel Commc'n., 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002); Kremen v. Cohen, 99 F. Supp. 2d 1168, 1175 (N.D. Cal. 2000); Comm. on Children's Tel., Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 222 (1983) (superseded by statute on other grounds); Vai v. Bank of America, 56 Cal. 2d 329, 338 (1961); Oakland Raiders v. Nat'l Football League, 131 Cal.

App. 4th 621, 632-33 (2005); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 417 (2000), <u>overruled on other grounds by</u> <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>Maglica v. Maglica</u>, 66 Cal. App. 4th 442, 488 (1998); <u>Lynch v. Cruttenden & Co.</u>, 18 Cal. App. 4th 802, 809 (1993); <u>Worldvision Enters., Inc. v. Am. Broad. Cos.</u>, 142 Cal. App. 3d 589 (1983).

# FIDUCIARY DUTY—EXISTENCE OF DUTY

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Fiduciary Duty—Existence of Duty on the following grounds:

1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel. April 25, 2008 Order, at 5-6.  Accordingly, defendants' proposed instruction, which erroneously indicates that this is a disputed issue in this case and suggests that the jury could find otherwise, is improper and misleading.

2.      In any event, the proposed instruction misstates the law as to what is necessary to create a fiduciary duty, suggesting, contrary to the authority cited *supra*, that the employee must have "expressly agreed to act as a fiduciary for the employer," and that "[t]he employer must also prove that the employee was placed in a position of control over the employer's property or affairs."  According to defendants, the "employer also must show that the relationship created was similar to a legally recognized fiduciary relationship, such as trustee, a corporate officer, or a partner."  But as the cases cited with respect to the preceding instructions make clear, the law of fiduciary relationships turns on issues of trust and confidence, as well as access to confidential information, and not "control" or status in the corporate hierarchy, as defendants claim.  While control and status may support a finding of a fiduciary relationship, they are not essential to the establishment of such a relationship.  Defendants' own authority establishes that:  "A fiduciary duty is undertaken by agreement when one person enters into a confidential relationship with another….a confidential relationship arises 'where a confidence is reposed by one person in the integrity of another, and…the party in whom the confidence is reposed, …voluntarily accepts or assumes to accept the confidence.'"  *GAB Bus. Servs. Inc. v. Lindsey & Newsom Claims Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000).  There is

175

1  no authority in the model instructions for the restrictive definition of fiduciary

2  relationships offered by defendants here, or for treating the issues of law involved as

3  questions of fact for the jury.

4

5  **Authority:** CACI No. 4102; *Kirschner Brothers Oil, Inc. v. Natomas Co*, 185 Cal.

6  App. 3d 784, 790 (1986) ("While breach of a fiduciary duty is a question of fact, the

7  existence of legal duty in the first instance and its scope are questions of law."); *Wolf v.*

8  *Superior Court*, 107 Cal. App. 4th 25, 29 (2003) ('A fiduciary relationship is ' " 'any

9  relation existing between parties to a transaction wherein one of the parties is in duty

10 bound to act with the utmost good faith for the benefit of the other party. Such a relation

11 ordinarily arises where a confidence is reposed by one person in the integrity of another,

12 and in such a relation the party in whom the confidence is reposed, if he voluntarily

13 accepts or assumes to accept the confidence, can take no advantage from his acts relating

14 to the interest of the other party without the latter's knowledge or consent. ...' "); *Michelson*

15 *v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1991) (fiduciary relationships arise "whenever

16 trust and confidence is reposed by one person in the integrity of another").

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**FIDUCIARY DUTY—EXISTENCE OF DUTY**

**MGA Parties' and Bryant's Response**

First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that Bryant's Motion for Reconsideration is pending, and the Court has ordered it shall be heard on May 19, 2008.  Indeed, in light of the California Supreme Court's recent decision City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at **6-11 (Apr. 24, 2008), it appears that Mattel seeks to invite reversible error in relying on this portion of the Court's order.  Notably, Mattel fails to address or even cite City of Hope, and instead states objections to the elements set forth in that case, on lesser authority. (Bryant's pending Motion for Reconsideration explains the impact of City of Hope in more detail, which Bryant will not repeat here.)

Second, Mattel's objection that a determination of the existence of a fiduciary duty based on a confidential relationship (as Mattel alleges here) is to be determined by a court is unsupported by the law and ignores case law holding otherwise. See, e.g., City of Hope, 2008 WL 1820916, at *11 (confirming that the existence of an agreed upon fiduciary relationship is a question of fact based upon numerous factors and reversing based on erroneous instruction); Maglica v. Maglica, 66 Cal. App. 4th 442, 447 (1998) (existence of fiduciary relationship is question for jury). Even where existence of a fiduciary duty is a pure question of law, Mattel has conceded that Bryant's position with Mattel does not meet the criteria set forth in GAB Business for establishing a fiduciary duty imposed by law.  (See Mattel Opp'n at 53 (conceding inapplicability of GAB Business).)

Given its concession, Mattel must now show that a fiduciary relationship was created as a factual matter—this requires a showing that Bryant "voluntarily" or "expressly" assumed a fiduciary duty.  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008

177

1  WL 1820916, at *6 (Apr. 24, 2008) (confirming that there must be a factual showing from

2  which a jury could find that a party knowingly undertook the obligations of a fiduciary,

3  that is to act primarily for the benefit of the other party); see also City Solutions, Inc. v.

4  Clear Channel Commc'n., Inc., 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002); Kremen v.

5  Cohen, 99 F. Supp. 2d 1168, 1174-75 (N.D. Cal. 2000); Comm. on Children's Television,

6  Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 222 (1983) (superseded by statute on other

7  grounds); Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n, 56 Cal. 2d 329, 338 (1961);

8  Oakland Raiders v. Nat'l Football League, 131 Cal. App. 4th 621, 632-33 (2005); GAB

9  Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 417

10  (2000), overruled on other grounds by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004);

11  Maglica, 66 Cal. App. 4th at 448; Lynch v. Cruttenden & Co., 18 Cal. App. 4th 802, 809

12  (1993); Worldvision Enters., Inc. v. Am. Broad. Cos., 142 Cal. App. 3d 589, 595 (1983).

13  As set forth in Bryant's Motion for Partial Summary Judgment, Mattel has made no such

14  factual showing; this instruction is submitted only because the parties have not yet

15  obtained a ruling on their pending summary judgment submissions and Bryant's Motion

16  for Reconsideration.

17

18  Further, Mattel's complaint that it need not show that Bryant was in a superior position to

19  Mattel is also without merit. City of Hope confirmed that such a showing is required—

20  although mere vulnerability of one party, and the superior position of the other, cannot

21  alone "necessarily warrant recognition of a fiduciary duty."  City of Hope, 2008 WL

22  1820916, at *9.  City of Hope explained that "[i]t is not at all unusual for a party to enter

23  into a contract for the very purpose of obtaining the superior knowledge of expertise of the

24  other party," but that "[s]tanding alone, that circumstance would not necessarily create

25  fiduciary obligations."  Id.  Instead, fiduciary obligations exist "when one party's

26  vulnerability is so substantial as to give rise to equitable concerns underlying the

27  protection afforded by the law governing fiduciaries."  Id. (citations omitted).  City of

28  Hope makes clear that no fiduciary obligations arise in ordinary contractual relationships

178

1   merely because one party can articulate some narrow area of vulnerability or dependence

2   on the other: to impose the stringent duties of a fiduciary, the law requires some

3   vulnerability that is deeper and more equitably troubling than just depending on a contract

4   party to fulfill his obligations.  Id. at *8 (explaining absence of fiduciary duties in

5   numerous situations where one party depends on the other and becomes "vulnerable" by

6   doing so).

7

8   Mattel relies on only one of the legal principles for establishing an agreed upon fiduciary

9   relationship.  The MGA Parties' and Bryant's authority establishes that the reposing of

10  confidence is alone not sufficient—there must be other elements as well, otherwise every

11  contractual and/or employment relationship would create an agreed upon fiduciary

12  relationship.  Further, as set forth in the Supreme Court's recent decision in City of Hope,

13  a fiduciary relationship does not necessarily arise even when "(1) one party entrusts its

14  affairs, interest or property to another;  (2) there is a grant of broad discretion to another,

15  generally because of a disparity in expertise or knowledge;  (3) the two parties have an

16  'asymmetrical access to information,' meaning one party has little ability to monitor the

17  other and must rely on the truth of the other party's representations; and (4) one party is

18  vulnerable and dependent upon the other."  2008 WL 1820916, at **7-8. (See also Bryant

19  MSJ Opp'n at 19-20, 23; Bryant's MSJ at 13-17.) These characteristics "are common in

20  many a contractual arrangement" that does not create any fiduciary obligations.  City of

21  Hope, 2008 WL 1820916, at *8 (providing examples).  Thus, MGA Parties' and Bryant's

22  instruction must be modified to reflect the Supreme Court's clarification on this issue.

23

24  Finally, there is no CACI instruction setting forth requirements for the creation of a

25  fiduciary relationship—presumably because fiduciary relationships typically are imposed

26  by law.  (See Bryant MSJ at 10-13.)  Here, Mattel plainly asserts in its opposition to the

27  MGA Parties' and Bryant's motions for partial summary judgment that it does not meet

28  those requirements (Mattel MSJ Opp'n at 51-57) and that it asserts a fiduciary relationship

179

undertaken by agreement only.  However, there is no factual basis for such a claim.  In addition, in light of <u>City of Hope</u>, and Bryant's Motion for Reconsideration, defendants will submit a revised instruction to reflect the California Supreme Court's additional guidance on the requirements for establishing a confidential relationship giving rise to fiduciary obligations after Bryant's motion is resolved.

# FIDUCIARY DUTY—BURDEN OF PROVING BREACH

If Carter Bryant expressly and voluntarily agreed to act as a fiduciary on behalf of Mattel, you must determine the scope of that agreement and whether Mattel has met its burden of proving by a preponderance of evidence that Bryant breached his fiduciary duties to Mattel.

**Authority:**  Restatement (Third) of Agency § 8.04; Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327 (1966); Gonsalves v. Hodgson, 38 Cal. 2d 91, 99 (1951); LeMat Corp. v. Am. Basketball Ass'n, 51 Cal. App. 3d 267, 275 (1975); see also Gateway Techs, Inc. v. MCI Telecomm. Corp., 64 F.3d 993, 1000-01 (5th Cir. 1995).

# FIDUCIARY DUTY—BURDEN OF PROVING BREACH

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Fiduciary Duty—Burden of Proving Breach on the following grounds:

1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel, and that Bryant breached that duty when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 5-6.  Accordingly, defendants' proposed instruction, which erroneously indicates that the jury could find that Bryant was not a fiduciary or did not breach his fiduciary duty, is improper and misleading.

2.      This proposed instruction misstates the prerequisites to finding a fiduciary relationship and confuses the role of judge and jury, and law and fact, in defining the scope of the breach.

3.      The proposed instruction, without any support from CACI, limits a finding of breach to cases where the jury finds that Carter Bryant "expressly…agreed to act as a fiduciary," suggesting a required formulaic recitation where none is in fact necessary.

4.      Defendants' proposed instruction asks the jury to determine "the scope of that agreement," which is contrary to the authority cited above, which confirms that the scope of the fiduciary relationship is a question of law for the Court.

**Authority:**  *Kirschner Brothers Oil, Inc. v. Natomas Co*, 185 Cal. App. 3d 784, 790 (1986) ("While breach of a fiduciary duty is a question of fact, the existence of legal duty in the first instance and its scope are questions of law.");  *Sequoia Vacuum Systems v. Stransky*, 229 Cal. App. 2d 281, 288 (1964) ("The determination of the particular factual

182

1   circumstances and the application of the ethical standards of fairness and good faith

2   required of a fiduciary in a given situation are for the trier of facts" ); *Wolf v. Superior*

3   *Court*, 107 Cal. App. 4th 25, 29 (2003) ("A fiduciary relationship is 'any relation existing

4   between parties to a transaction wherein one of the parties is in duty bound to act with the

5   utmost good faith for the benefit of the other party. Such a relation ordinarily arises where

6   a confidence is reposed by one person in the integrity of another, and in such a relation the

7   party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the

8   confidence, can take no advantage from his acts relating to the interest of the other party

9   without the latter's knowledge or consent. ...'").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**FIDUCIARY DUTY—BURDEN OF PROVING BREACH**

**MGA Parties' and Bryant's Response**

First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that Bryant's Motion for Reconsideration is pending and the Court has ordered it shall be heard on May 19, 2008. Indeed, in light of the California Supreme Court's recent decision City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal 4th __, 2008 WL 1820916, at **6-11 (Apr. 24, 2008), it appears that Mattel seeks to invite reversible error in relying on this portion of the Court's order. (Bryant's pending Motion for Reconsideration explains the impact of City of Hope in more detail, which Bryant will not repeat here.)

Moreover, although in its objection to the proposed instruction entitled "Fiduciary Duty-Defined" Mattel conceded that "the breach of a fiduciary duty is a question of fact," the preceding objection appears to back-track from that concession. However, the law is clear that "[w]hether the defendant breached that duty towards the plaintiff is a question of fact." Amtower v. Photon Dynamics, Inc., 158 Cal. App. 4th 1582, 1599 (2008). To the extent Mattel's objection is that a determination of the existence of a fiduciary duty based on a confidential relationship (as Mattel alleges here) is to be determined by a court, it is also unsupported by the law and ignores case law holding otherwise. See, e.g., City of Hope, 2008 WL 1820916, at *11 (confirming that the existence of an agreed upon fiduciary relationship is a question of fact based upon numerous factors and reversing based on erroneous instruction); Maglica v. Maglica, 66 Cal. App. 4th 442, 447 (1998) (existence of fiduciary relationship is question for jury).

Even where the assumption of a fiduciary duty is a pure question of law, Mattel has conceded that Bryant's position with Mattel does not meet the criteria set forth in GAB Business for establishing a fiduciary duty imposed by law. (See Mattel MSJ Opp'n at 53

184

1   (conceding inapplicability of <u>GAB Business</u>).)  Given its concession, Mattel must now

2   show that a fiduciary relationship was created as a factual matter—this requires a showing

3   that Bryant "voluntarily" or "expressly" assumed a fiduciary duty.  <u>See</u> <u>City of Hope Nat'l</u>

4   <u>Med. Ctr. v. Genentech, Inc.</u>, __ Cal. 4th __, 2008 WL 1820916, at *6 (Apr. 24, 2008)

5   (confirming that there must be a factual showing from which a jury could find that a party

6   knowingly undertook the obligations of a fiduciary, that is to act primarily for the benefit

7   of the other party); <u>see also</u> <u>City Solutions v. Clear Channel Commc'n.</u>, 201 F. Supp. 2d

8   1048, 1050 (N.D. Cal. 2002); <u>Kremen v. Cohen</u>, 99 F. Supp. 2d 1168, 1175 (N.D. Cal.

9   2000); <u>Comm. on Children's Tel., Inc. v. Gen. Foods Corp.</u>, 35 Cal. 3d 197, 222 (1983)

10  (superseded by statute on other grounds); <u>Vai v. Bank of America</u>, 56 Cal. 2d 329, 338

11  (1961); <u>Oakland Raiders v. Nat'l Football League</u>, 131 Cal. App. 4th 621, 632-33 (2005);

12  <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409,

13  417 (2000), <u>overruled on other grounds by</u> <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004);

14  <u>Maglica v. Maglica</u>, 66 Cal. App. 4th 442, 488 (1998); <u>Lynch v. Cruttenden & Co.</u>, 18 Cal.

15  App. 4th 802, 809 (1993); <u>Worldvision Enters., Inc. v. Am. Broad. Cos.</u>, 142 Cal. App. 3d

16  589 (1983).  As set forth in Bryant's Motion for Partial Summary Judgment, Mattel has

17  made no such factual showing.

18

19  Mattel relies on only one of the legal principles for establishing an agreed upon fiduciary

20  relationship.  The MGA Parties' and Bryant's authority establishes that the reposing of

21  confidence is alone not sufficient—there must be other elements as well, otherwise every

22  contractual and/or employment relationship would create an agreed upon fiduciary

23  relationship. <u>See</u> <u>supra</u>, MGA Parties' and Bryant's Response to Mattel's Objection to the

24  Proposed Instruction entitled "Fiduciary Duty – Existence of Duty".

25

26

27

28

## BREACH – RIGHT TO PREPARE TO COMPETE

To the extent Mattel bases its breach allegations on Carter Bryant's activities relating to BRATZ, Mattel must show that Bryant undertook actions prior to leaving his employment with Mattel that were in direct competition with Mattel and not merely preparations to compete with Mattel after his employment ended.

Acts of direct competition include, for example, (1) the formation of a competing company that competes against the employer while the employee is still employed by that employer, (2) the selling of competing products while still employed, (3) the diversion of sales away from an employer while still an employee; (4) the use of confidential information (such as employee salaries) to recruit employees to a competitor; (5) the misappropriation of trade secrets, (6) the solicitation of an employer's customers before terminating employment, and (7) the conspiracy to cause 'mass resignation' of key employees.

Permissible preparations to compete include, for example, (1) undertaking efforts to establish a competing business and to immediately compete after termination of employment; (2) use of small amounts of an employer's resources, such as phones, faxes, computers, and employee time; (3) discussion of a competing venture with other employees; (4) asking customers whether work might be available for a possible competing venture; (5) use of some time during work hours to prepare to compete, provided the employee continues to perform his or her job responsibilities; and (6) use of marketing plans, customer lists or other information learned during his or her employment provided the information is not a trade secret or confidential information.

In addition, Bryant was not required to disclose his preparations to compete with Mattel or his efforts to obtain different employment.   An employee is entitled to seek new

1  employment and inform his employer once he or she has made a final decision to leave his
2  or her current job.

3

4  You may consider Bryant's intention and the surrounding circumstances in determining
5  whether Bryant breached his duty to Mattel.

6

7  **Authority:** Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord
8  Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2002); GAB Bus. Servs., Inc.
9  v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled
10 on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp.
11 v. Ferguson, 74 Cal. Rptr. 86, 92-93 (1968); see also Material Supply Int'l, Inc. v.
12 Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. Am.
13 Broad. Cos.,  616 F.2d 528, 532-33, 537 (3d Cir. 1979); Merger Mgmt. Consulting, Inc. v.
14 Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F.
15 Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-
16 71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F.
17 Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c.

18
19
20
21
22
23
24
25
26
27
28

# BREACH – RIGHT TO PREPARE TO COMPETE

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Breach—Right to Prepare to Compete on the grounds that:

1.     This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already ruled that Bryant cannot defend his actions as "lawful preparations to compete" because he "directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel."  April 25, 2008 Order, at 5.  Accordingly, defendants' proposed instruction, which erroneously indicates that the jury could find otherwise, is improper and misleading.

2.     Moreover, defendants' slanted examples are irrelevant to the undisputed facts of this case, representing instead in the first instance (examples of acts of direct competition) a list of straw men facts unrelated to the facts in this case and in the second (examples of permissible preparations to compete) a transparent effort to recast undisputed facts of contracting, accepting payment, provision of services, conveying drawings and models, and soliciting vendors as mere *de minimus* efforts to prepare for future projects rather than to commence those efforts while still employed.  Stating examples in this way wrongly and improperly suggests that these are indeed the facts of this case, when they are not, and implies that the Court has categorized these "non-facts" and reached conclusions as to their significance which are the jury's alone to draw.

3.     This proposed instruction fails to inform the jury that lawful "preparations to compete" do not include situations where an employee has concealed those preparations or transferred his loyalty to a competitor.  Indeed, the Court already ruled that this is precisely what Bryant did.  April 25, 2008 Order, at 5.

4.     The proposed instruction misstates the disclosure requirement imposed by California law with respect to the right to prepare to compete, sliding the requirement that

188

1  an employee is required to disclose honestly his future competition to his employer once

2  he leaves his employment into an afterthought to the instruction ("once he or she has made

3  a final decision to leave his or her current job") and ignoring the requirement that  failure

4  to disclose acts of preparation prior to departure is actionable where the nondisclosure was

5  harmful to the previous employer.

6

7      **Authority:**  *Huong Que Inc. v. Liu*, 150 Cal. App. 4th 400, 414 (2007) ("while

8  California law does permit an employee to seek other employment and even to make some

9  'preparations to compete' before resigning, California law does not authorize and employee

10  to transfer his loyalty to a competitor....an employee, while employed, owes undivided

11  loyalty to his employer"); *Daniel Orifice Fitting Co.*, 198 Cal. App. 2d 791, 800-01 (1962)

12  (employee liable where he did not make "full disclosure of acts undertaken in preparation

13  for entering competition"); *Sequoia Vacuum Sys. v. Stransky,* 229 Cal App. 2d 281, 287

14  (1964) ("the protection of the principals' interest requires a full disclosure of acts

15  undertaken in preparation of entering into competition"); *Bancroft Whitney Co. v. Glen,* 64

16  Cal. 2d 327, 347 (1966) (failure to disclose acts of preparation actionable where the

17  nondisclosure was harmful to the corporation).

18

19

20

21

22

23

24

25

26

27

28

**BREACH – RIGHT TO PREPARE TO COMPETE**

**MGA Parties' and Bryant's Response**

First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that Bryant's Motion for Reconsideration is pending and the Court has ordered it shall be heard on May 19, 2008. Indeed, in light of the California Supreme Court's recent decision <u>City of Hope Nat'l Med. Ctr. v. Genentech, Inc.</u>, __ Cal. 4th __, 2008 WL 1820916, at **6-11 (Apr. 24, 2008), it appears that Mattel seeks to invite reversible error in relying on this portion of the Court's order. (Bryant's pending Motion for Reconsideration explains the impact of <u>City of Hope</u> in more detail, which Bryant will not repeat here.)

The MGA Parties and Bryant provided examples in their instruction to aid the jury in determining what facts, as asserted in the present case, represent a preparation to compete and what facts do not. The jury must be given examples of conduct that does not constitute a breach because it falls within permissible preparations to compete in order to assess the conduct at issue here. See <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 345-46 & n.10 (1966). Notably, Mattel does not argue that providing such examples would be improper, nor does it challenge the cases cited support those examples. Also, notably, Mattel proposed no instruction whatsoever on preparations to compete—presumably because it seeks to mislead the jury and have the jury believe that it can rely on conduct that is legally insufficient to establish a breach. Without providing the proposed examples to the jury, there is an enormous risk that the jury will not be able to distinguish between acts of direct competition that are in breach and permissible preparations to compete.

Here, also, it is appropriate to modify the form instruction because the actions Mattel claims are against its interests are the same actions that courts have found to be preparations to compete—and thus not a breach of fiduciary duty. See <u>Bancroft Whitney</u>

190

1 | Co. v. Glen, 64 Cal. 2d 327, 345-46 & n.10 (1966); accord Eckard Brandes, Inc. v. Riley,
2 | 338 F.3d 1082, 1086 (9th Cir. 2003); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim
3 | Servs., Inc., 83 Cal. App. 4th 409, 424-25 (2000), overruled on other grounds by, Reeves v.
4 | Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp. v. Ferguson, 74 Cal. Rptr. 86,
5 | 92-93 (1968) (unpublished); see also Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,
6 | 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. American Broadcasting Cos.,
7 | 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Mercer Mgmt. Consulting, Inc. v. Wilde, 920 F.
8 | Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486
9 | (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y.
10 | 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161
11 | (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c.

12 |

13 | To the extent Mattel suggests Bryant fraudulently concealed facts about his departure, it
14 | misrepresents the law.  Employees are permitted to search for new employment and only
15 | inform their current employer once a decision to depart has been made.  In Bancroft
16 | Whitney Co. v. Glen, 64 Cal. 2d 327 (1966), the California Supreme Court specifically
17 | rejected Mattel's interpretation of Daniel Orifice and Sequoia Vacuum.  The Court held
18 | that, even for an officer (which Bryant was not) with fiduciary duties (which Bryant
19 | lacked), "[t]here is no requirement that an officer disclose his preparations to compete with
20 | the corporation in every case, and failure to disclose such acts will render the officer liable
21 | for breach of his fiduciary duties only where particular circumstances render nondisclosure
22 | harmful to the corporation."  Id. at 345 (emphasis added); see also Rest. 3d Agency § 8.04
23 | cmt. c ("An employee or other agent who plans to compete with the principal does not
24 | have a duty to disclose this fact to the principal.  To be sure, the fact that an agent has such
25 | a plan is information that a principal would find useful, but the agent's fiduciary duty to
26 | the principal does not oblige the agent to make such disclosure.  Nor does an agent's duty
27 | to provide facts to the principal … require disclosure to the principal of an agent's
28 | competitive plans.  In this respect, the social benefits of furthering competition outweigh

1  the principal's interest in full disclosure by its agents."). Were an at-will employee, like
2  Bryant, required to disclose preparations to compete, the employee's right to prepare to
3  compete would be rendered meaningless.

4

5  Lastly, even under the Court's April 25, 2008 Order the jury would be required to
6  determine the full scope of any alleged breach and therefore would have to be instructed
7  that lawful preparations to compete cannot form a basis for any finding of breach or for
8  any damages.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

# HARM CAUSED BY BREACH OF FIDUCIARY DUTY

Mattel must also prove by a preponderance of the evidence all facts necessary to show that Mr. Bryant's breach of fiduciary duty was a substantial factor in causing Mattel harm during the term of Mr. Bryant's employment.  It is not sufficient to show that Mattel was harmed by Mr. Bryant's competition with Mattel after Mr. Bryant no longer was employed at Mattel.

**Authority:** CACI No. 4102 (2008) (as modified); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966); <u>Charles T. Powner Co. v. Smith</u>, 91 Cal. App. 101 (1928); <u>Sumner v. Nevin</u>, 4 Cal. App. 347, 350-51 (1906); <u>see also</u> <u>Sequoia Vacuum Sys., v. Stransky</u>, 229 Cal. App. 2d 281, 286 (1964) (citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800 (1962)).

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

# HARM CAUSED BY BREACH OF FIDUCIARY DUTY

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Harm Caused by Breach of Fiduciary Duty on the following grounds:

1. This proposed instruction is contrary to the Court's April 25, 2008 Order. The Court has found that Bryant is liable to Mattel for breach of fiduciary duty. *See* April 25, 2008 Order, at 5-6. Accordingly, this proposed instruction, which suggests that Mattel still has to prove it was harmed by Bryant's breach of fiduciary duty, is improper and misleading. The only issues left for the jury to determine are the full scope of Bryant's breaches and Mattel's damages.

2. This proposed instruction deviates from the model instruction cited by defendants. The proposed instruction confuses the issues of the existence and scope of the breach of fiduciary duty with the measure of the harm suffered as a result. Defendants are correct that the breach itself must occur during the term of Mr. Bryant's employment. But for purposes of measuring the harm suffered by Mattel, a breach committed during the term of Mr. Bryant's employment may (as here) cause harm to Mattel after the employment was terminated, and such harm is appropriately taken into account in the separate determination of the appropriate measure of damages. By confusing these two distinct issues, defendants unfairly and inaccurately seek to minimize the impact of the breach by imposing an artificial and unjustified time constraint on its assessment. CACI No. 4102, cited by defendants, makes no reference to such a temporal limit in measuring the "harm" or impact of the breach.

**Authority:** CACI No. 4102; *Huong Que Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41-42 (1987).

194

## HARM CAUSED BY BREACH OF FIDUCIARY DUTY

## MGA Parties' and Bryant's Response

First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that Bryant's Motion for Reconsideration is pending and the Court has ordered it shall be heard on May 19, 2008.  Indeed, in light of the California Supreme Court's recent decision City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008 WL 1820916, at **6-11 (Apr. 24, 2008), it appears that Mattel seeks to invite reversible error in relying on this portion of the Court's order.  Notably, the Court has not found Bryant "liable" for breach of fiduciary duty—in particular the Court made no findings whatsoever with respect to the element of harm, which is the element set forth in this instruction.

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

195

1  Mattel's objection is also without legal support and argumentative.  Moreover, Mattel

2  seeks to turn a claim for breach of fiduciary duty into one of a "rolling" nature, which

3  would permit a plaintiff to collect damages emanating from a breach *ad infinitum*.

4

5  Mattel must be harmed by the breach during the term of Bryant's employment and not by

6  Bryant's conduct after he left employment. See Bancroft-Whitney Co. v. Glen, 64 Cal. 2d

7  327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs

8  incurred to replace personnel recruited by president and competitor using confidential

9  information in breach of president's fiduciary duty); GAB Bus. Servs., Inc. v. Lindsey &

10  Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach of

11  fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc.

12  v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales

13  resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347,

14  350 (1906) (damages were commissions received while still employed); see also Design

15  Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary

16  earned during time employee was disloyal, and not the profits from a contract that

17  evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F.

18  Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including

19  employee time used to develop competing products).  Courts consistently distinguish

20  between harm incurred while employee still employed and harm from later competition.

21  See e.g., GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th

22  409, 426 (2000) (damages for breach of fiduciary duty were expenses incurred to recruit

23  new employees).  Moreover, "[p]roof of serious employee misconduct causing injury to

24  the employer must also be shown before relief will generally be granted." Sci. Accessories

25  Corp. v. Summagraphics Corp., 425 A. 2d 957, 965 (Del. 1980).  Even an officer (which

26  Bryant indisputably was not), who has a far greater duty to a company, may engage in a

27  competing business while he remains an officer provided that he does not cripple or injure

28  the business.  See Sequoia Vacuum Systems v. Stransky, 229 Cal. App. 2d 281, 286 (1964)

(citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800 (1962) ("a party may not enter into a competing enterprise which cripples or injures a business or corporation <u>of which he remains an officer or director</u>") (emphasis added)).

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM**

Mattel has asserted a claim for aiding and abetting breach of fiduciary duty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

To recover on its claim for aiding and abetting, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

    1.    Bryant owed a fiduciary duty to Mattel;

    2.    Bryant breached a fiduciary duty he owed to Mattel;

    3.    MGA and Larian substantially assisted or encouraged Bryant in accomplishing the breach <u>and</u>

    4.    that MGA and Larian had actual knowledge of the specific wrong they substantially assisted.

As I described before, an employee does not breach a duty of loyalty by **"preparing to compete"** with its employer, and is under no duty to disclose to his current employer those preparations or negotiations with a competitor employer. The employee can be paid by his new employer and continue to receive salary and benefits and use office resources while performing outside work without breaching duties to his current employer. And without a

198

1   breach of duty by Bryant, MGA and Larian cannot be held liable for aiding and abetting
2   that breach.

3

4   To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA
5   and Larian not only knew of Bryant's breach but also that MGA and Larian made a
6   conscious decision to participate in wrongful activity designed to assist Bryant in his
7   breaches.

8

9   Mattel also has to show a substantial causal connection between MGA and Larian's
10  conduct and the harm to Mattel.  The "substantial assistance" requirement is inversely
11  related to the knowledge factor, which means that if Mattel has only offered a small
12  amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach, Mattel
13  has to show that MGA and Larian rendered a high degree of substantial assistance in
14  Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting
15  Bryant's breach.

16

17  **Authority:** MJT Sec., LLC v. Toronto-Dominion Bank, No. C03-3815 CW, 2007 WL
18  1725421, at **7-8  (N.D.Cal. June 14, 2007) (elements); Neilson v. Union Bank, N.A.,
19  290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); Resolution Trust Corp. v. Rowe,
20  No. C90-20114 BAC, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse
21  relationship between demonstration of knowledge and substantial assistance); Mendelsohn
22  v. Capital Underwriters, Inc.,  490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation);
23  Sarkes Tarzian, Inc. v. Audio Devices, Inc., 166 F. Supp. 250 (S.D. Cal. 1958) (competitor
24  employer did not conspire to breach duty to former employer where competitor paid at-
25  will employee an advance and employee did not disclose intention to work for competitor),
26  aff'd, 283 F.2d 695 (9th Cir. 1960); Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988)
27  (intent); see also Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005);
28  Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005); Fiol v. Doellstedt,

199

50 Cal. App. 4th 1318, 1325-26 (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832, 846 (1994); Restatement (Second) of Torts § 876.

# AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Aiding and Abetting Breach of Fiduciary Duty on the following grounds:

1. This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel, and that Bryant breached that duty when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 5-6. Accordingly, this proposed instruction, which tells the jury that Mattel bears the burden of proving those issues, is improper and misleading.

2. This proposed instruction is also contrary to the Court's April 25, 2008 Order to the extent it purports to inform the jury that preparations to compete are not a breach of duty.  The Court has already ruled that Bryant cannot defend his actions as "lawful preparations to compete" because he "directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel."  April 25, 2008 Order, at 5.  Accordingly, defendants' proposed instruction, which erroneously indicates that the jury could find otherwise, is improper and misleading.

3. This proposed instruction misstates the law both for aiding and abetting and for preparations to compete, and fails to mention the role of financial gain and self-interested profit in determining knowledge and substantial assistance.

4. Defendants' proposed instruction adds an element which is not an element of the cause of action for aiding and abetting breach of fiduciary duty under California law. As Mattel's proposed instruction properly states, there are three elements necessary to establish such a claim:  that Carter Bryant's conduct constituted a breach of fiduciary duty; that MGA and/or Isaac Larian knew that Bryant's conduct constituted a breach of fiduciary

1  duty; and that MGA and/or Mr. Larian gave substantial assistance or encouragement to
2  Mr. Bryant to breach his fiduciary duty.  *See* Mattel's Proposed Jury Instructions, at 17.
3  Defendants' proposed instruction, which conflates MGA and Mr. Larian, wrongly suggests
4  that both must be found to have the requisite knowledge and have provided the requisite
5  assistance; even more seriously, it wrongly states that MGA and Larian must have "had
6  actual knowledge of the specific wrong they substantially assisted," and goes on to explain
7  that this means that MGA and Larian must have "made a conscious decision to participate
8  in wrongful activity designed to assist Bryant in his breaches."  That is incorrect.  Aiding
9  and abetting does not require a defendant to agree to join the wrongful conduct in the way
10  one joins a conspiracy.  Nor does it require "actual knowledge of the specific wrong they
11  substantially assisted."  It is enough that there is knowledge of the acts giving rise to the
12  breach.

13      5.      Contrary to this proposed instruction, it is not necessary that the activity done
14  by MGA and/or Mr. Larian be "wrongful activity" in order to constitute "substantial
15  assistance"; California courts have held that even "ordinary business transactions" can
16  satisfy the substantial assistance element.

17      6.      This proposed instruction again misstates the "preparation to compete"
18  doctrine, omitting the requirement that a fiduciary cannot put a competitor's interests ahead
19  of his own employer's, neglecting to include the disclosure requires for preparations to
20  compete, and suggesting, wrongly, an unlimited right to be paid by a new employer (as
21  opposed to the right, in limited circumstances, to be paid an advance) and continue to
22  receive salary and benefits and use office resources from his prior employer, even though
23  in most instances, such activity would constitute commercial bribery and would, in any
24  event, be subject to required disclosure.

25      7.      Defendants' proposed instruction fails to include the well-established
26  principle of California law that "financial gain and self-interested profit corroborate the
27  elements of aiding and abetting."  *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101,

28

202

1   1127-28 (C.D. Cal. 2003).  If defendants reap the benefit of participating in a breach of

2   fiduciary duty, they cannot disclaim the burden of liability.

3         8.    Defendants' suggestions that the "substantial assistance" requirement is

4   inversely related to the knowledge factor is unsupported by fact and law, and inconsistent

5   with the above-stated rule.  No such instruction is appropriate or necessary on the facts of

6   this case.  The only authority cited by defendants for such an "inverse relationship" rule

7   (*Resolution Trust Corp. v. Rowe*, 1993 WL 183512 at *6 (N.D. Cal. Feb. 8, 1993)) relates

8   to the constitutional requirements of standing.

9

10      **Authority:** *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal.

11   2003) (enough if there is knowledge of acts giving rise to breach); *Berg & Berg Enter.*

12   *LLC v. Sherwood Partners, Inc,* 131 Cal. App. 4th 802, 823 n. 10 (2005) (aiding and

13   abetting does not require that a defendant agree to join the wrongful conduct); *Heckman v.*

14   *Ahmanson*, 168 Cal. App. 3d 119, 127 (1985) (if defendant reaps the benefits of breach of

15   fiduciary duty he cannot disclaim the burden of liability); *Casey v. U.S. Bank Nat'l Assn.*,

16   127 Cal. App. 4th 1138, 1145 (2005) (ordinary business transactions by bank sufficient to

17   constitute substantial assistance); *Daniel Orifice Fitting Co.*, 198 Cal. App. 2d 791, 800 -

18   01 (1962) (full disclosure required of acts taken in preparation for competition); *Sequoia*

19   *Vacuum Sys. v. Stransky,* 229 Cal App. 2d 281, 287 ((1964) (same).  Compare *Resolution*

20   *Trust Corp. v. Rowe*, 1993 WL 183512, at *6 (N.D. Cal. 1993) (dealing with payment of

21   "advance" to secure future employment of at-will employee).

22

23

24

25

26

27

28

203

1 <u>**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**</u>

2

3 <u>**MGA Parties' and Bryant's Response**</u>

4

5 First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that

6 Bryant's Motion for Reconsideration is pending and the Court has ordered it shall be heard

7 on May 19, 2008.  Indeed, in light of the California Supreme Court's recent decision <u>City</u>

8 <u>of Hope Nat'l Med. Ctr. v. Genentech, Inc.</u>, __ Cal. 4th __, 2008 WL 1820916, at **6-11

9 (Apr. 24, 2008), it appears that Mattel seeks to invite reversible error in relying on this

10 portion of the Court's order.  Moreover, even under the Court's April 25, 2008 Order, the

11 jury must be instructed that preparations to compete that are lawful cannot be the basis for

12 a finding of breach or damages, because as Mattel has admitted in its own instructions and

13 verdict form, the jury must still consider the scope of any alleged breach.

14

15 Mattel's objection is unsupported by law to the extent it implies that <u>actual</u> knowledge on

16 behalf of MGA and Larian of the specific wrong they substantially assisted is not required

17 to find them liable for aiding and abetting.  <u>See</u> <u>Neilson v. Union Bank of Cal., N.A.</u>, 290

18 F. Supp. 2d 1101, 1118-20 (C.D. Cal. 2003). Mattel's objection also glosses over the intent

19 element by seeking to distinguish its aiding and abetting claim from one for conspiracy,

20 but its own case, <u>Berg & Berg Enters., LLC v. Sherwood Partners, Inc.</u>, notes that while

21 "aiding and abetting may not require a defendant to agree to join the wrongful conduct, <u>it</u>

22 <u>necessarily requires a defendant to reach a conscious decision to participate in tortious</u>

23 <u>activity for the purpose of assisting another in performing a wrongful act.</u>"  131 Cal. App.

24 4th 802, 823 n.10 (2005) (emphasis added). <u>See also</u> <u>Gerard v. Ross</u>, 204 Cal. App. 3d

25 968, 983 (1988) ("an aider and abettor is called a cotortfeasor…. A defendant can be held

26 liable as a cotortfeasor on the basis of acting in concert <u>only if he or she knew that a tort</u>

27 <u>had been, or was to be, committed, and acted with the intent of facilitating the commission</u>

28 <u>of that tort.</u>") (emphasis added).

1

2  Mattel's objection also ignores that Bryant's preparations to compete cannot give rise to a

3  breach of any duty and, therefore, cannot serve as a basis for Mattel's aiding and abetting

4  claims against MGA and Larian. See Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 346-

5  47 (1966).   Finally, Mattel fails to recognize that a substantial causal connection between

6  MGA and Larian's conduct and the harm to Mattel is required and that the "substantial

7  assistance" requirement is inversely related to the knowledge factor. See Resolution Trust

8  Corp. v. Rowe,  1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship

9  between demonstration of knowledge and substantial assistance); Mendelsohn v. Capital

10  Underwriters, Inc.,   490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (substantial causal

11  connection).

12

13  Employees are permitted to search for new employment and only inform their current

14  employer once a decision to depart has been made.   In Bancroft Whitney Co. v. Glen, 64

15  Cal. 2d 327 (1966), the California Supreme Court specifically rejected Mattel's

16  interpretation of Daniel Orifice and Sequoia Vacuum.   The Court held that, even for an

17  officer (which Bryant was not) with fiduciary duties (which Bryant lacked), "[t]here is no

18  requirement that an officer disclose his preparations to compete with the corporation in

19  every case, and failure to disclose such acts will render the officer liable for breach of his

20  fiduciary duties only where particular circumstances render nondisclosure harmful to the

21  corporation." Id. at 345 (emphasis added); see also Rest. 3d Agency § 8.04 cmt. c ("An

22  employee or other agent who plans to compete with the principal does not have a duty to

23  disclose this fact to the principal.   To be sure, the fact that an agent has such a plan is

24  information that a principal would find useful, but the agent's fiduciary duty to the

25  principal does not oblige the agent to make such disclosure.   Nor does an agent's duty to

26  provide facts to the principal … require disclosure to the principal of an agent's

27  competitive plans.   In this respect, the social benefits of furthering competition outweigh

28  the principal's interest in full disclosure by its agents."). Were an at-will employee, like

205

1  Bryant, required to disclose preparations to compete, the employee's right to prepare to
2  compete would be rendered meaningless.

3

4  Mattel's final objection to the preceding instruction is confusing and misleading – because
5  (1) it starts talking about duty of loyalty and beach thereof in the context of the instruction
6  dealing with aiding and abetting a breach of fiduciary duty, and (2) it incorrectly suggests
7  that the existence of a fiduciary duty based upon a confidential relationship (which Mattel
8  asserts here) and whether Bryant owed the duty in question is not a jury question.  See
9  Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005); Maglica v.
10 Maglica, 66 Cal. App. 4th 442, 447 (1998) (existence of fiduciary relationship is question
11 for jury).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**DUTY OF LOYALTY CLAIM**

Mattel has asserted a claim for breach of the duty of loyalty against Carter Bryant.

I will now instruct you regarding the law as to this claim.

**BREACH OF THE DUTY OF LOYALTY–ESSENTIAL FACTUAL ELEMENTS**

Mattel claims that it was harmed by Carter Bryant's breach of the duty of loyalty. An employee owes his or her employer a duty of undivided loyalty. To establish this claim, Mattel must prove by a preponderance of the evidence all of the facts necessary to establish all of the following:

    1. That Bryant was Mattel's employee and thus owed Mattel a duty of loyalty;

    2. That Bryant breached his duty of loyalty by directly competing with Mattel during the term of his employment with Mattel in connection with his development of the BRATZ sketches.

    3. That Mattel did not give informed consent to Bryant's conduct or otherwise ratify Bryant's conduct;

    4. That Mattel was harmed during the term of Bryant's employment; and

    5. That Bryant's conduct was a substantial factor in causing Mattel's harm.

**Authority:** CACI No. 4102 (2008) (as modified); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 345-346 & n.10 (1966); <u>accord</u> <u>Eckard Brandes, Inc. v. Riley</u>, 338 F. 3d 1082,

1086 (9th Cir. 2002); <u>Western Med. Consultants, Inc. v. Johnson</u>, 80 F.3d 1331, 1336-38 (9th Cir. 1996); <u>Franklin Music Co. v. Am. Broad. Cos.</u>,  616 F. 2d 528, 532-33, 537 (3d Cir. 1979); <u>Merger Mgmt. Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219 (D. D.C. 1996); <u>Abraham Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), <u>aff'd</u>, 761 F. 2d 93 (2d Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161 (S.D. Texas 1977); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968); Restatement (Third) of Agency Sect. 8.04 cmt. c.

# BREACH OF THE DUTY OF LOYALTY–ESSENTIAL FACTUAL ELEMENTS

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Breach of the Duty of Loyalty—Essential Factual Elements on the following grounds:

1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a duty of loyalty to Mattel, and that Bryant breached that duty when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 6.  None of defendants' proposed instructions on this claim properly inform the jury of the Court's ruling.

2.      This proposed instruction deviates from the model instruction found in CACI and repeatedly misstates the law, adding elements not included in the model instructions and not supported by California law.

3.      Defendants' proposed instruction fails to consistently inform the jury that the duty of loyalty owed under California law is a duty of "undivided loyalty," and not merely a duty of some loyalty, e.g., element 1 provides that Bryant owed only "a duty of loyalty" and not, as CACI No. 4102 and Mattel's proposed instructions correctly state, a duty of "undivided loyalty."

4.      As set forth in CACI No. 4102 and Mattel's proposed jury instruction, the duty of loyalty is breached if Bryant "acted against Mattel's interest" while employed by Mattel.  *See* Mattel's Proposed Jury Instructions, at 15.  It is not necessary, as defendants' proposed instruction wrongly suggests, that he "directly compet[ed] with Mattel ....in connection with his development of the Bratz sketches."  Mattel's claim of breach of duty is not so limited, nor is California law.

5.      As set forth in CACI No. 4102 and Mattel's proposed instruction, the correct statement of the law is that "Mattel did not give informed consent to Mr. Bryant's conduct;"  defendants' proposed addition of the phrase "or otherwise ratify Bryant's conduct," is not included in the model instruction, and wrongly and confusingly suggests that something less than informed consent might in fact constitute informed consent.

6.      As set forth in CACI No. 4102 and Mattel's proposed instruction, the correct statement of the law is that "Mattel was harmed" by the breach of duty.  Defendants' additional requirement that Mattel must have been "harmed during the term of Bryant's employment" wrongly suggests that a breach of the duty of loyalty during the term of the employment the impact of which was not fully realized until after the employment ended would somehow excuse liability, which it would not.

**Authority:** CACI 4102; *Huong Que Inc v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs. Inc.*, 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863.

**BREACH OF THE DUTY OF LOYALTY–ESSENTIAL FACTUAL ELEMENTS**

**MGA Parties' and Bryant's Response**

First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that Bryant's Motion for Reconsideration is pending and the Court has ordered it shall be heard on May 19, 2008.   Further, even if the Court does not alter its ruling, this instruction could be modified to eliminate the reference to elements the Court has found as a matter of law (such as the existence of a duty of loyalty).   Notably, Mattel's proposed instruction on this issue instead lists the elements required in one instruction (and omits elements) and then informs the jury in a second instruction of "Previous Findings of the Court."   In this manner, Mattel both misrepresents those findings (for example, by claiming that the Court found liability), and prejudices defendants by unnecessarily informing the jury that the Court has ruled in Mattel's favor, rather than simply eliminating reference to certain elements.

In addition, Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.   In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.   Jury instructions do not come down from any mountain or rise up from any sea.   Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.   This description does not denigrate their value, it simply places them in the niche where they belong.").   Indeed, modification is sometimes necessary to make an instruction accurate and complete. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving

1   modification of Ninth Circuit model instruction to include additional elements, noting that

2   "[h]ad the district court merely read the model jury instruction, it would have committed

3   plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

4   The MGA Parties and Bryant deviate from CACI No. 4102 to clarify the circumstances

5   concerning a breach of duty of loyalty from California jurisprudence.

6

7   Moreover, Mattel's objection ignores that the jury is required to determine the scope of the

8   duty of loyalty at issue in order to establish that such a duty was breached. <u>See</u> 19

9   <u>Williston on Contracts</u> § 54:26 (4th ed. 2007); <u>Huong Que, Inc. v. Luu</u>, 150 Cal. App. 4th

10  400, 410-11 (2007); <u>Stokes v. Dole Nut Co.</u>, 41 Cal App. 4th 285 (1995).

11

12  Mattel's objection also ignores that Bryant's preparations to compete are insufficient to

13  give rise to a claim for breach of duty of loyalty. <u>See</u> <u>Bancroft-Whitney Co. v. Glen</u>, 64

14  Cal. 2d 327, 346 (1966); <u>accord</u> <u>Eckard Brandes, Inc. v. Riley</u>, 338 F.3d 1082, 1086 (9th

15  Cir. 2003); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.</u>, Inc., 83 Cal. App.

16  4th 409,  424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th

17  1140 (2004); <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968)

18  (unpublished); <u>see also</u> <u>Material Supply Int'l, Inc. v. Sunmatch Indus. Co.</u>, 146 F.3d 983,

19  993 (D.C. Cir. 1998); <u>Franklin Music Co. v. Am. Broad. Cos.</u>,  616 F.2d 528, 532-33, 537

20  (3d Cir. 1979); <u>Mercer Mgmt. Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219, 233-35 (D.

21  D.C. 1996); <u>T.A. Pelsue Co. v. Grand Enters., Inc.</u>, 782 F. Supp. 1476, 1486 (D. Colo.

22  1991); <u>Abraham Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), <u>aff'd</u>,

23  761 F.2d 93 (2d Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161, 167 (S.D. Tex.

24  1977); Restatement (Third) of Agency § 8.04 cmt. c.   Bryant's efforts to seek new

25  employment cannot be a basis for finding a breach.  Even under the Court's April 25, 2008

26  Order, the jury must be instructed as to what conduct constitutes lawful preparations to

27  compete, because the jury cannot rely on such conduct when considering the scope of any

28  alleged breach, or any alleged harm.

1

2   Furthermore, the MGA Parties and Bryant include the language at issue because, under

3   settled law, an employer may not recover damages for breach of a duty based on contract

4   either where the employer consents to or ratifies such conduct.   See 19 Williston On

5   Contracts, Section 54:26 (4th ed.) ("the employer may lose its right to recover for damages

6   suffered, if the employer ratifies the employee's conduct").

7

8   Finally, Mattel must be harmed by the breach during the term of Bryant's employment and

9   not by Bryant's conduct after he left employment.   Bancroft-Whitney Co. v. Glen, 64 Cal.

10  2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the

11  costs incurred to replace personnel recruited by president and competitor using

12  confidential information in breach of president's fiduciary duty); GAB Bus. Servs., Inc. v.

13  Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for

14  breach of fiduciary duty were expenses incurred to recruit new employees); Charles T.

15  Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly

16  competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4

17  Cal. App. 347, 350 (1906) (damages were commissions received while still employed); see

18  also Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount

19  of salary earned during time employee was disloyal, and not the profits from a contract

20  that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris,

21  46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including

22  employee time used to develop competing products).   Courts consistently distinguish

23  between harm incurred while employee still employed and harm from later competition.

24  See, e.g., GAB Bus. Servs., 83 Cal. App. 4th at 426 (damages for breach of fiduciary duty

25  were expenses incurred to recruit new employees).

26

27

28

# **DUTY OF LOYALTY DEFINED**

An employee owes his or her employer a duty of loyalty.  The scope of the employee's duty varies with the nature of the employee's relationship with his or her employer.  Thus, an employee who occupies a position with a high level of trust and confidence owes a higher duty of loyalty to his or her employer than an employee who occupies a low-level position.  Mattel has the burden of proving by a preponderance of the evidence all facts necessary to show the scope of Bryant's duty of loyalty to Mattel.

**Authority:**  19 Williston on Contracts § 54:26 (4th ed.); Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 411 (2007); Stokes v. Dole Nut Co., 41 Cal App. 4th 285 (1995).

# DUTY OF LOYALTY DEFINED

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Duty of Loyalty Defined on the following grounds:

1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a duty of loyalty to Mattel, and that Bryant breached that duty when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 6.  None of defendants' proposed instructions on this claim properly inform the jury of the Court's ruling.

2.      The proposed instruction is also misleading in that it suggests that, depending on the employee's level within the company, he may owe less than the "undivided loyalty" that California law imposes. *Williston on Contracts*, relied upon by defendants, does not provide support for the rule proposed by defendants; rather, it notes, without citation to any California authority, that there is division of authority among other jurisdictions as to whether a fiduciary relationship is necessary in order to create a duty of loyalty.  The only citation to any California authority in the applicable section of Williston is for the proposition that "an employee may not seek to acquire indirect advantage from third persons for performing the duty owed to his or her employer."  California law, unlike some jurisdictions cited by Williston, clearly requires "undivided loyalty" from all employees, independent of the additional responsibilities imposed on fiduciaries.

1    Authority: CACI 4102; *Huong Que Inc v. Luu*, 150 Cal. App. 4th 400, 414 (2007);

2 *Fowler v. Varian Assocs. Inc.*, 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*,

3 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863.

**1**  **DUTY OF LOYALTY DEFINED**

**2**

**3**  **MGA Parties' and Bryant's Response**

**4**

**5**  Mattel's objection creates an issue where there is none.  The proposed instruction does not

**6**  imply that an employee's loyalty should not be "undivided," as Mattel claims, but rather

**7**  addresses the scope of that loyalty.  Williston supports the position that employees of

**8**  varying levels have different level of duty, <u>i.e.</u>, an officer's duty is different than low level

**9**  non-managerial employee. The scope of Bryant's duty would be limited to the nature/level

**10**  of his employment, and would not be comparable to the duty of loyalty owed by, for

**11**  example, a Chief Executive Officer.

**12**

**13**  Further, Mattel's objection based on the Court's April 25, 2008 Order is premature given

**14**  that Bryant's Motion for Reconsideration is pending, and the Court has ordered it shall be

**15**  heard on May 19, 2008.  Even if the Court does not alter its ruling, this instruction is

**16**  necessary because the trier of fact must consider the scope on any duty, in order to

**17**  consider the scope of any alleged breach or harm. Notably, Mattel's proposed instruction

**18**  on this issue, instead lists the elements required in one instruction (and omits elements)

**19**  and then informs the jury in a second instruction of "Previous Findings of the Court."  In

**20**  this manner, Mattel both misrepresents those findings (for example, by claiming that the

**21**  Court found liability), and prejudices defendants by unnecessarily informing the jury that

**22**  the Court has ruled in Mattel's favor, rather than simply eliminating reference to certain

**23**  elements.

**24**

**25**

**26**

**27**

**28**

1 | **BREACH OF THE DUTY OF LOYALTY**

2

3 Mattel must also prove by a preponderance of the evidence all facts necessary to show that
4 Carter Bryant breached his duty of loyalty to Mattel.  To do so, Mattel must show that
5 Bryant undertook actions prior to leaving his employment with Mattel that were in direct
6 competition with Mattel and not merely preparations to compete with Mattel after his
7 employment ended.

8

9 Acts of direct competition include, for example, (1) the formation of a competing company
10 that competes against the employer while the employee is still employed by that employer,
11 (2) the selling of competing products while still employed, (3) the diversion of sales away
12 from an employer while still an employee; (4) the use of confidential information (such as
13 employee salaries) to recruit employees to a competitor; (5) the misappropriation of trade
14 secrets, (6) the solicitation of an employer's customers before terminating employment,
15 and (7) the conspiracy to cause 'mass resignation' of key employees.

16

17 Permissible preparations to compete include, for example, (1) undertaking efforts to
18 establish a competing business and to immediately compete after termination of
19 employment; (2) use of small amounts of an employer's resources, such as phones, faxes,
20 computers, and employee time; (3) discussion of a competing venture with other
21 employees; (4) asking customers whether work might be available for a possible
22 competing venture; (5) use of some time during work hours to prepare to compete,
23 provided the employee continues to perform his or her job responsibilities; and (6) use of
24 marketing plans, customer lists or other information learned during his or her employment
25 provided the information is not a trade secret or confidential information.

26

27 In addition, Bryant was not required to disclose his preparations to compete with Mattel or
28 his efforts to obtain different employment.  An employee is entitled to seek new

employment and inform his employer once he or she has made a final decision to leave his or her current job.

You may consider Bryant's intention and the surrounding circumstances in determining whether Bryant was permissibly preparing to compete or whether he breached his duty of loyalty to Mattel.

**Authority:** <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 345-346 & n.10 (1966); <u>accord Eckard Brandes, Inc. v. Riley</u>, 338 F. 3d 1082, 1086 (9th Cir. 2002); <u>Western Med. Consultants, Inc. v. Johnson</u>, 80 F.3d 1331, 1336 -38 (9th Cir. 1996); <u>Franklin Music Co. v. Am. Broad. Cos.</u>, 616 F.2d 528, 532-33, 537 (3d Cir. 1979); <u>Material Supply Int'l, Inc. v. Sunmatch Indus. Co.</u>, 146 F. 3d 983, 993 (D.C. Cir. 1998); <u>Merger Mgmt. Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219 (D. D.C. 1996); <u>T.A. Pelsue Co. v. Grand Enters., Inc.</u>, 782 F. Supp. 1476, 1486 (D. Colo. 1991); <u>Abraham Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), <u>aff'd</u>, 761 F. 2d 93 (2d Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161 (S.D. Texas 1977); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409,  424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968); Restatement (Third) of Agency Sect. 8.04 cmt. c.

# BREACH OF THE DUTY OF LOYALTY

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Breach of the Duty of Loyalty on the following grounds:

1.     This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a duty of loyalty to Mattel, and that Bryant breached that duty when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 6.  Accordingly, defendants' proposed instruction, which erroneously indicates that the jury could find that Bryant did not breach his duty of loyalty to Mattel, is improper and misleading.

2.     This proposed instruction is also contrary to the Court's April 25, 2008 Order to the extent it purports to inform the jury that preparations to compete are not a breach of duty.  The Court has already ruled that Bryant cannot defend his actions as "lawful preparations to compete" because he "directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel."  April 25, 2008 Order, at 5.  Accordingly, defendants' proposed instruction, which erroneously indicates that the jury could find otherwise, is improper and misleading.

3.     This proposed instruction is also misleading in purporting to define a breach of the duty of loyalty as being limited to "actions that were in direct competition with Mattel and not merely preparations to compete with Mattel after his employment ended." Actions which are not in "direct competition" as defined in the proposed instruction may nonetheless conflict with an employee's duty of undivided loyalty to his employer.  An employee is not entitled to provide assistance to a competitor even if that assistance does

1  not constitute direct competition, nor is he permitted to represent that competitor in

2  dealings with others.

3      4.     The examples given in the proposed instruction of direct competition are

4  irrelevant to the facts of this case, representing little more than a list of straw men the

5  absence of which does not establish undivided loyalty.  For example, the fact that an

6  employee may not have solicited an employer's customers does not excuse him from

7  soliciting his employer's vendors; the fact that he did not engage in a "conspiracy to cause

8  mass resignations of key employees" does not immunize his solicitation of other

9  employees to perform work for a competitor.  The fact that he did not sell competing

10 products while still an employee does not mean he is allowed to develop those products

11 and contract for their sale once his employment is ended.  The implication that the list is

12 either illustrative of the threshold of loyalty required or exclusive as to the acts prohibited

13 is both false and misleading.

14     5.     The list of what constitutes "preparations to compete" seems specifically

15 designed to exclude undisputed acts committed by Bryant which Mattel claims went well

16 beyond the permissible bounds of preparation to compete.  Any list of what does constitute

17 preparation to compete, in order to be fair, should also include examples of what does not,

18 e.g., entering into a contract with a new employer pledging to provide services on an

19 expedited basis while still employed; soliciting vendors; working as much as four hours

20 per day for a competing employer; using the employer's resources to design and develop a

21 competing product.  Defendants would surely object to any such list, and in fact, Mattel

22 has not proposed one.  But if defendants are entitled to a list, so is Mattel.

23     6.     The proposed instruction entirely misstates the disclosure requirement

24 imposed by California law with respect to the right to prepare to compete, sliding the

25 requirement that an employee is required to disclose honestly his future competition to his

26 employer once he leaves his employment into an afterthought to the instruction ("once he

27 or she has made a final decision to leave his or her current job") and ignoring the

28

1   requirement that  failure to disclose acts of preparation prior to departure is actionable

2   where the nondisclosure was harmful to the previous employer.

3

4        **Authority:**   CACI No. 4102; *Huong Que Inc. v. Liu*, 150 Cal. App. 4th 400, 414

5   (2007) ("while California law does permit an employee to seek other employment and

6   even to make some 'preparations to compete' before resigning, California law does not

7   authorize and employee to transfer his loyalty to a competitor....an employee, while

8   employed, owes undivided loyalty to his employer"); *Daniel Orifice Fitting Co.*, 198 Cal.

9   App. 2d 791, 800-01 (1962) (employee liable where he did not make "full disclosure of

10  acts undertaken in preparation for entering competition"); *Sequoia Vacuum Sys. v.*

11  *Stransky,* 229 Cal App. 2d 281, 287 (1964) ("the protection of the principals' interest

12  requres a full disclosure of acts undertaken in preparation of entering into competition");

13  *Bancroft Whitney Co. v. Glen,* 64 Cal. 2d 327, 347 (1966) (failure to disclose acts of

14  preparation actionable where the nondisclosure was harmful to the corporation);

15  *Restatement (Third) of Agency*, § 804.

16

17

18

19

20

21

22

23

24

25

26

27

28

**BREACH OF THE DUTY OF LOYALTY**

**MGA Parties' and Bryant's Response**

First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that Bryant's Motion for Reconsideration is pending, and the Court has ordered it shall be heard on May 19, 2008.  Further, even if the Court does not alter its ruling, this instruction could be modified to account for the Court's Order in a manner that is not unduly prejudicial.  Notably, Mattel's proposed instruction on this issue instead lists the elements required in one instruction (and omits elements) and then informs the jury in a second instruction of "Previous Findings of the Court."  In this manner, Mattel both misrepresents those findings (by claiming for example that the Court found liability), and prejudices defendants by unnecessarily informing the jury that the Court has ruled in Mattel's favor, rather than simply eliminating reference to certain elements or explaining that certain elements are established.

In any event, regardless of whether the Court alters its ruling the jury must be informed of the what conduct is lawful preparations to compete and thus cannot provide the basis for a finding of breach.  The MGA Parties and Bryant provided examples in their instruction to aid the jury in determining what facts, in the present case, represent a preparation to compete and what facts do not.  The jury must be given examples of conduct that do not constitute a breach because it falls within permissible preparations to compete in order to assess the conduct at issue here. See Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-46 & n.10 (1966).  Notably, Mattel does not suggest that such examples should not be given, nor does it challenge that the cases cited support those examples. Instead, Mattel suggests that it should include examples that are based exclusively on the facts of this case—which would obviously be inappropriate.  Nor does Mattel cite any case supporting its suggested "examples".  Also, Mattel proposed no instruction whatsoever on preparations to

1   compete—presumably because it seeks to mislead the jury and have the jury believe that it
2   can rely on conduct that is legally insufficient to establish a breach.   Without providing
3   the proposed examples to the jury, there is an enormous risk that the jury will not be able
4   to distinguish between acts of direct competition that are in breach and permissible
5   preparations to compete.  Even under the Court's April 25, 2008 Order, the jury must still
6   consider the scope of any breach and any alleged harm, and so must know what conduct
7   can form a basis for those findings.

8

9   Mattel's objection also ignores that Bryant's preparations to compete are insufficient to
10  give rise to a claim for breach of duty of loyalty. See Bancroft-Whitney Co. v. Glen, 64
11  Cal. 2d 327, 346 (1966); accord Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th
12  Cir. 2003); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App.
13  4th 409,  424-25 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th
14  1140 (2004); Computer Sciences Corp. v. Ferguson, 74 Cal. Rptr. 86, 92-93 (1968)
15  (unpublished); see also Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983,
16  993 (D.C. Cir. 1998); Franklin Music Co. v. Am. Broad. Cos.,  616 F.2d 528, 532-33, 537
17  (3d Cir. 1979); Mercer Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219, 233-35 (D.
18  D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo.
19  1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd,
20  761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161, 167 (S.D. Tex.
21  1977); Restatement (Third) of Agency § 8.04 cmt. c.   Bryant's efforts to seek new
22  employment cannot be a basis for finding a breach.

23

24  Lastly, Mattel yet again misstates the California standard regarding disclosure of
25  preparations to compete.  As set forth above and fully incorporated herein, there is no
26  requirement that an at will employee such as Bryant disclose preparations to compete or
27  efforts to seek new employment to his employer.

28

1 | **CONSENT TO EMPLOYEE'S ACTIONS**

2

3 | Mattel must also show by a preponderance of the evidence that it did not consent to

4 | Bryant's conduct.   Such consent need not be explicit, but can be shown by implied

5 | understandings and known customs.

6

7 | **Authority:** CACI No. 4102 (2008); Restatement (Third) of Agency § 8.04 cmt. b.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1  **CONSENT TO EMPLOYEE'S ACTIONS**

2

3  **Mattel's Objection**

4

5      Mattel objects to defendants' proposed instruction regarding Consent to Employee's

6  Actions on the grounds that:

7      1.    This proposed instruction is contrary to the Court's April 25, 2008 Order.  The

8  Court has already found as a matter of law that Bryant is liable for breach of the duty of

9  loyalty because he "secretly entered into a contract with Mattel's competitor, while still

10 employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition

11 with Mattel's products."  April 25, 2008 Order, at 6.  Accordingly, defendants' proposed

12 instruction, which erroneously indicates that the jury could find that Mattel consented to

13 such conduct is improper and misleading.

14     2.    In any event, CACI No. 4102 provides the accurate instruction, as Mattel has

15 proposed: that Mattel did not give "informed consent" to Mr. Bryant's conduct.

16 Defendants' proposal eliminates the requirement that consent must be "informed," and

17 wrongly implies that it need not be explicit.  While it is true that consent can be established

18 by either direct or circumstantial evidence, that evidentiary rule does not support

19 defendants' proposed equation with "implied understandings and known customs."

20 Informed consent is required.

21

22     **Authority:**  CACI No. 4102.  *Restatement (Third) of Agency*, § 804, the only

23 authority cited by defendants for a weakened standard of implied rather than informed

24 consent, provides:  "Throughout the duration of an agency relationship, an agent has a duty

25 to refrain from competing with the principal and from taking action on behalf of or

26 otherwise assisting the principal's competitors.  During that time, an agent may take action,

27 not otherwise wrongful, to prepare for competition following termination of the agency

28 relationship."  *See also id.* at § 806 ("(1) Conduct by an agent that would otherwise

226

constitute a breach of duty as stated in 8.01, 8.02, 8.03, 8.04, and 8.05 does not constitute a breach of duty if the principal consents to the conduct, provided that

(a) in obtaining the principal's consent, the agent

(i) acts in good faith,

(ii) *discloses all material facts that the agent knows, has reason to know, or should know would reasonably affect the principal's judgment unless the principal has manifested that such facts are already known by the principal or that the principal does not wish to know them, and*

(iii) otherwise deals fairly with the principal; and

(b) the principal's consent concerns either a specific act or transaction, or acts or transactions of a specified type that could reasonably be expected to occur in the ordinary course of the agency relationship.") (emphasis added).

1  **CONSENT TO EMPLOYEE'S ACTIONS**

2

3  **MGA Parties' and Bryant's Response**

4

5  First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that

6  Bryant's Motion for Reconsideration is pending, and the Court has ordered it shall be

7  heard on May 19, 2008.  Further, even if the Court does not alter its ruling, this instruction

8  must be given as it pertains to an entirely separate element—consent—that was not the

9  subject of Mattel's motion for summary judgment nor the subject of the Court's Order.

10  Yet again, Mattel seeks to bootstrap the findings of the Court's Order on existence of a

11  duty and breach into a finding of liability, again inviting the Court to commit reversible

12  error.

13

14  The MGA Parties and Bryant have not eliminated the "informed" element of the consent

15  instruction, but have split the instruction into two sentences, using the terms "implied

16  understandings" and "known customs" instead.  These terms are clearer and will aid the

17  jury in determining whether there has been consent, including a determination whether

18  Mattel's course of conduct allowing employees to moonlight and/or independently work

19  on the artistic portfolios constituted informed consent to Bryant's conduct.  Restatement

20  (Third) of Agency § 8.04 cmt. b.

21

22  The parties are permitted to modify the language of any model instruction to make it less

23  confusing or more appropriate in the context of a particular case.  See McDowell v.

24  Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth

25  Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are

26  not debated and hammered out by legislators, but by ad hoc committees of lawyers and

27  judges.  Jury instructions do not come down from any mountain or rise up from any sea.

28  Their precise wording, although extremely useful, is not blessed with any special

1  precedential or binding authority.  This description does not denigrate their value, it simply

2  places them in the niche where they belong.").

3

4  Further, Mattel yet again seeks to mislead the Court as to the disclosure requirements in

5  this context.  Employees are permitted to search for new employment and only inform

6  their current employer once a decision to depart has been made.   In Bancroft Whitney Co.

7  v. Glen, 64 Cal. 2d 327 (1966), the California Supreme Court specifically rejected Mattel's

8  interpretation of Daniel Orifice and Sequoia Vacuum.  The Court held that, even for an

9  officer (which Bryant was not) with fiduciary duties (which Bryant lacked), "[t]here is no

10 requirement that an officer disclose his preparations to compete with the corporation in

11 every case, and failure to disclose such acts will render the officer liable for breach of his

12 fiduciary duties only where particular circumstances render nondisclosure harmful to the

13 corporation."  Id. at 345 (emphasis added); see also Rest. 3d Agency § 8.04 cmt. c ("An

14 employee or other agent who plans to compete with the principal does not have a duty to

15 disclose this fact to the principal.  To be sure, the fact that an agent has such a plan is

16 information that a principal would find useful, but the agent's fiduciary duty to the

17 principal does not oblige the agent to make such disclosure.  Nor does an agent's duty to

18 provide facts to the principal … require disclosure to the principal of an agent's

19 competitive plans.  In this respect, the social benefits of furthering competition outweigh

20 the principal's interest in full disclosure by its agents.").  Were an at-will employee, like

21 Bryant, required to disclose preparations to compete, the employee's right to prepare to

22 compete would be rendered meaningless.

23

24

25

26

27

28

1 | **HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY**

2

3 | Mattel must also prove by a preponderance of the evidence all facts necessary to show that

4 | Bryant's breach of the duty of loyalty was a substantial factor in causing Mattel harm

5 | during the term of Bryant's employment.  It is not sufficient to show that Mattel was

6 | harmed by Bryant's competition with Mattel after Bryant no longer was employed at

7 | Mattel.

8

9 | **Authority:** CACI No. 4102 (2008); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57

10 | (1966); <u>Charles T. Powner v. Smith</u>, 91 Cal. App. 101 (1928); <u>Sumner v. Nevin</u>, 4 Cal.

11 | App. 347, 350-51 (1906); <u>see also</u> <u>Sequoia Vacuum Sys., v. Stansky</u>, 229 Cal. App. 2d 281,

12 | 286 (1964) (citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800

13 | (1962)).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY

## Mattel's Objection

Mattel objects to defendants' proposed jury instruction regarding Harm Caused by Breach of the Duty of Loyalty on the following grounds:

1.     This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has found that Bryant is liable to Mattel for breach of the duty of loyalty.  *See* April 25, 2008 Order, at 6.  Accordingly, this proposed instruction, which suggests that Mattel still has to prove it was harmed by Bryant's breach of the duty of loyalty, is improper and misleading.  The only issues left for the jury to determine are the full scope of Bryant's breaches and Mattel's damages.

2.     This proposed instruction complicates and confuses the proof of harm required to establish breach of the duty of loyalty, as set forth in the model instruction, with the appropriate assessment of the damages caused by that breach.  CACI No. 4102, like the Mattel proposed instruction, provides only that the jury be instructed that plaintiff must prove: "that Mattel was harmed; and that Mr. Bryant's conduct was a substantial factor in causing Mattel's harm."  *See* Mattel's Proposed Jury Instructions, at 15. Defendants' proposal, by contrast, grafts an exception to suggest that if the harm resulted in damages to Mattel that actually accrued after Bryant was no longer employed at Mattel (as when Bratz were actually produced), than the breach of duty is somehow for that reason not actionable.  That is neither an accurate statement of the law, nor the appropriate issue for the jury's determination of liability.

**Authority:**  CACI No. 4102.

231

1 | **HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY**

2

3 | **MGA Parties' and Bryant's Response**

4

5 | First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that
6 | Bryant's Motion for Reconsideration is pending, and the Court has ordered it shall be
7 | heard on May 19, 2008.  Further, even if the Court does not alter its ruling, this instruction
8 | must be given as it pertains to an entirely separate element—harm—that was not the
9 | subject of Mattel's motion for summary judgment nor the subject of the Court's Order.
10 | Yet again, Mattel seeks to bootstrap the findings of the Court's Order on existence of a
11 | duty and breach into a finding of liability, again inviting the Court to commit reversible
12 | error.

13

14 | Mattel's objection ignores that Mattel must be harmed by the breach during the term of
15 | Bryant's employment and not by Bryant's conduct after he left employment.  See
16 | Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess
17 | damage to plaintiff book publisher for the costs incurred to replace personnel recruited by
18 | president and competitor using confidential information in breach of president's fiduciary
19 | duty); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th
20 | 409, 426 (2000) (damages for breach of fiduciary duty were expenses incurred to recruit
21 | new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages
22 | were profits on directly competitive sales resulting from use of employer's time and
23 | facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions
24 | received while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649
25 | (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was
26 | disloyal, and not the profits from a contract that evidence showed employer would not
27 | have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999)
28 | (awarding damages for value of resources including employee time used to develop

competing products). Courts consistently distinguish between harm incurred while employee still employed and harm from later competition. <u>See e.g.</u>, <u>GAB Bus. Servs., Inc.</u>, 83 Cal. App. 4th at 426 (damages for breach of fiduciary duty were expenses incurred to recruit new employees). Moreover, "[p]roof of serious employee misconduct causing injury to the employer must also be shown before relief will generally be granted." <u>Sci. Accessories Corp. v. Summagraphics Corp.</u>, 425 A. 2d 957, 965 (Del. 1980). Even an officer (which Bryant indisputably was not), who has a far greater duty to a company, may engage in a competing business while he remains an officer provided that he does not cripple or injure the business. <u>See</u> <u>Sequoia Vacuum Systems v. Stransky</u>, 229 Cal. App. 2d 281, 286 (1964) (citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800 (1962) ("a party may not enter into a competing enterprise which cripples or injures a business or corporation <u>of which he remains an officer or director</u>") (emphasis added)).

## AIDING AND ABETTING BREACH OF DUTY OF LOYALTY CLAIM

Mattel has asserted a claim for aiding and abetting breach of the duty of loyalty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

## AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

To recover on its claim for aiding and abetting, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

1.  Bryant owed a duty of loyalty to Mattel;

2.  Bryant breached any duty of loyalty he owed to Mattel;

3.  MGA and Larian substantially assisted or encouraged Bryant in accomplishing the breach; and

4.  MGA and Larian had actual knowledge of the specific wrong they substantially assisted.

As I described before, an employee does not breach a duty of loyalty by "preparing to compete" with its employer, and is under no duty to disclose to his current employer those preparations or negotiations with a competitor employer. The employee can be paid by his new employer and continue to receive salary and benefits and use office resources while performing outside work without breaching duties to his current employer. And without a

234

1 breach of duty by Bryant, MGA and Larian cannot be held liable for aiding and abetting
2 that breach.

3

4 To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA
5 and Larian not only knew of Bryant's breach but also that MGA and Larian made a
6 conscious decision to participate in wrongful activity designed to assist Bryant in his
7 breaches.

8

9 Mattel also has to show a substantial causal connection between MGA and Larian's
10 conduct and the harm to Mattel. The "substantial assistance" requirement is inversely
11 related to the knowledge factor, which means that if Mattel has only offered a small
12 amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach of duty,
13 Mattel has to show that MGA and Larian rendered a high degree of substantial assistance
14 in Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting
15 Bryant's breach of duty.

16

17 **Authority:** MJT Securities, LLC v. Toronto-Dominion Bank, 2007 WL 1725421, at **7-8
18 (N.D. Cal. June 14, 2007) (elements); Neilson v. Union Bank of California, N.A., 290 F.
19 Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); Resolution Trust Corp. v. Rowe, 1993
20 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between demonstration of
21 knowledge and substantial assistance); Mendelsohn v. Capital Underwriters, Inc., 490 F.
22 Supp. 1069, 1084 (N.D. Cal. 1979) (causation); Sarkes Tarzian, Inc. v. Audio Devices,
23 Inc., 166 F. Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach
24 duty to former employer where competitor paid at-will employee an advance and
25 employee did not disclose intention to work for competitor), aff'd, 283 F.2d 695 (9th Cir.
26 1960); Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988) (intent); see also Richard B.
27 LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005); Casey v. U.S. Bank Nt'l Ass'n,
28 127 Cal. App. 4th 1138, 1144 (2005); Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325-26

235

1   (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832, 846 (1994); Restatement
2   (Second) of Torts § 876.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1 **AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

2

3 **Mattel's Objection**

4

5      Mattel objects to defendants' proposed instruction regarding Aiding and Abetting

6 Breach of Duty of Loyalty on the following grounds:

7      1.     This proposed instruction is contrary to the Court's April 25, 2008 Order.  The

8 Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel,

9 and that Bryant breached that duty when he "secretly entered into a contract with Mattel's

10 competitor, while still employed by Mattel, to produce a line of fashion dolls to be

11 marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 5-6.

12 Accordingly, this proposed instruction, which tells the jury that Mattel bears the burden of

13 proving those issues, is improper and misleading.

14      2.     This proposed instruction is also contrary to the Court's April 25, 2008 Order

15 to the extent it purports to inform the jury that preparations to compete are not a breach of

16 duty.  The Court has already ruled that Bryant cannot defend his actions as "lawful

17 preparations to compete" because he "directly competed with Mattel by entering into a

18 contract with its competitor to produce a competing product while still employed by

19 Mattel."  April 25, 2008 Order, at 5.  Accordingly, defendants' proposed instruction, which

20 erroneously indicates that the jury could find otherwise, is improper and misleading.

21      3.     Defendants' proposed instruction for aiding and abetting breach of duty of

22 loyalty, like its fiduciary duty corollary, again misstates the law of aiding and abetting and

23 of preparation to compete, adding requirements of specific knowledge not provided in the

24 Model instruction or by California law, and omits to mention the role of financial gain and

25 self-interested profit in determining knowledge and substantial assistance.

26      4.     The proposed instruction adds an element (#4) which is not an element of the

27 cause of action for aiding and abetting breach of fiduciary duty under California law.  As

28 Mattel's proposed instruction properly states, there are three elements to such a claim: that

1  Bryant's conduct constituted a breach of the duty of loyalty; that MGA and/or Larian knew

2  that Bryant's conduct constituted a breach of the duty of loyalty; and that MGA and/or

3  Larian gave substantial assistance or encouragement to Mr. Bryant to breach that duty.

4  *See* Mattel's Proposed Jury Instructions, at 17.  Defendants' proposed instruction, which

5  conflates both MGA and Larian, wrongly suggests that both must be found to have the

6  requisite knowledge and have provided the requisite assistance; even more seriously, it

7  wrongly states that MGA and Larian must have "had actual knowledge of the specific

8  wrong they substantially assisted," and goes on to explain that this means that MGA and

9  Larian must have "made a conscious decision to participate in wrongful activity designed

10 to assist Bryant in his breaches."  That is incorrect.  Aiding and abetting does not require a

11 defendant to agree to join the wrongful conduct in the way one joins a conspiracy.  Nor

12 does it require "actual knowledge of the specific wrong they substantially assisted."  It is

13 enough that there is knowledge of the acts giving rise to the breach.  Moreover, it is not

14 necessary that the activity done by MGA and/or Larian be "wrongful activity" in order to

15 qualify as "substantial assistance"; California courts have held that even "ordinary business

16 transactions" that a bank performs for a customer can satisfy the substantial assistance

17 element.

18        5.        Defendants' proposed instruction repeats, again incorrectly, the scope of the

19 "preparation to compete" doctrine, omitting the requirement that a fiduciary cannot put a

20 competitor's interest ahead of his own employer's, neglecting to include the requirements

21 of disclosure of preparation to compete, and suggesting, wrongly, an unlimited right to be

22 paid by a new employer (as opposed to the right, in limited circumstances, to be paid an

23 advance) and continue to receive salary and benefits and use office resources from his

24 prior employer, even though in most instances, such activity would constitute commercial

25 bribery and would, in any event, be subject to required disclosure.

26        6.        Defendants' proposed instruction fails to include the well-established

27 principle of California law that "financial gain and self-interested profit corroborate the

28 elements of aiding and abetting."  *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101,

1  1127-28 (C.D. Cal. 2003).  If the defendant reaps the benefit of participating in a breach of
2  duty, he cannot disclaim the burden of liability.

3         7.     Defendants' suggestion that the "substantial assistance" requirement is
4  inversely related to the knowledge factor is unsupported by fact and law, and inconsistent
5  with the above-stated rule.  No such instruction is appropriate or necessary on the facts of
6  this case.  The authority cited by defendants is utterly inapposite.  Indeed, since every
7  California employee owes his employer a duty of loyalty, and since it is undisputed that
8  MGA and Larian both knew that Bryant was a Mattel employee, it would be appropriate,
9  on defendants' reasoning, to instruct the jury that any assistance could be deemed
10  substantial in the face of such unequivocal knowledge.

11        **Authority:**  *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal.
12  2003) (enough if there is knowledge of acts giving rise to breach); *Berg & Berg Enter.*
13  *LLC v. Sherwood Partners, Inc,* 131 Cal. App. 4th 802, 823 n. 10 (2005) (aiding and
14  abetting does not require that a defendant agree to join the wrongful conduct); *Heckman v.*
15  *Ahmanson*, 168 Cal. App. 3d 119, 127 (1985) (if defendant reaps the benefits of breach of
16  fiduciary duty he cannot disclaim the burden of liability); *Casey v. U.S. Bank Nat'l Assn.*,
17  127 Cal. App. 4th 1138, 1145 (2005) (ordinary business transactions by bank sufficient to
18  constitute substantial assistance); *Daniel Orifice Fitting Co.*, 198 Cal. App. 2d 791, 800 -
19  01 (1962) (full disclosure required of acts taken in preparation for competition); *Sequoia*
20  *Vacuum Sys. v. Stransky,* 229 Cal App. 2d 281, 287 ((1964) (same).  Compare *Resolution*
21  *Trust Corp. v. Rowe*, 1993 WL 183512, at *6 (N.D. Cal. 1993) (no standing, no
22  knowledge).

23
24
25
26
27
28

**1** <u>AIDING AND ABETTING BREACH OF DUTY OF LOYALTY</u>

**2**

**3** <u>MGA Parties' and Bryant's Response</u>

**4**

**5** First, Mattel's objection based on the Court's April 25, 2008 Order is premature given that

**6** Bryant's Motion for Reconsideration is pending, and the Court has ordered it shall be

**7** heard on May 19, 2008.  Further, even if the Court does not alter its ruling, the jury must

**8** be instructed that conduct constituting lawful preparations to compete cannot be the basis

**9** for a finding of breach.  Otherwise the jury could, for example, improperly find knowledge

**10** based upon MGA or Larian's knowledge of lawful conduct Bryant undertook to prepare to

**11** compete with Mattel.

**12**

**13** To the extent that Mattel's objection suggests that the existence of a duty of loyalty and

**14** whether Bryant owed the duty in question is not a jury question, it is manifestly incorrect.

**15** <u>See</u> <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574 (2005). Mattel's

**16** objection that a determination of the existence of a duty of loyalty is to be determined by a

**17** court is unsupported by the law and ignores case law holding otherwise. <u>See, e.g.</u>, <u>Maglica</u>

**18** <u>v. Maglica</u>, 66 Cal. App. 4th 442, 447 (1998) (existence of fiduciary relationship is

**19** question for jury).

**20**

**21** Mattel's objection is unsupported by law to the extent it implies that <u>actual</u> knowledge on

**22** behalf of MGA and Larian of the specific wrong they substantially assisted is not required

**23** to find them liable for aiding and abetting.  <u>See</u> <u>Neilson v. Union Bank of Cal., N.A.</u>, 290

**24** F. Supp. 2d 1101, 1118-20 (C.D. Cal. 2003). Mattel's objection also glosses over the intent

**25** element by seeking to distinguish its aiding and abetting claim from one for conspiracy,

**26** but its own case, <u>Berg & Berg Enters., LLC v. Sherwood Partners, Inc.</u>, notes that while

**27** "aiding and abetting may not require a defendant to agree to join the wrongful conduct, <u>it</u>

**28** <u>necessarily requires a defendant to reach a conscious decision to participate in tortious</u>

1  activity for the purpose of assisting another in performing a wrongful act." 131 Cal. App.

2  4th 802, 823 n.10 (2005) (emphasis added). See also Gerard v. Ross, 204 Cal. App. 3d

3  968, 983 (1988) ("an aider and abettor is called a cotortfeasor…. A defendant can be held

4  liable as a cotortfeasor on the basis of acting in concert only if he or she knew that a tort

5  had been, or was to be, committed, and acted with the intent of facilitating the commission

6  of that tort.") (emphasis added).

7

8  Mattel's objection also ignores that Bryant's preparations to compete cannot give rise to a

9  breach of any duty and, therefore, cannot serve as a basis for Mattel's aiding and abetting

10  claims against MGA and Larian. See Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 346-

11  47 (1966).  Finally, Mattel fails to recognize that a substantial causal connection between

12  MGA and Larian's conduct and the harm to Mattel is required and that the "substantial

13  assistance" requirement is inversely related to the knowledge factor. See Resolution Trust

14  Corp. v. Rowe,  1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship

15  between demonstration of knowledge and substantial assistance); Mendelsohn v. Capital

16  Underwriters, Inc.,  490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (substantial causal

17  connection).

18

19  Employees are permitted to search for new employment and only inform their current

20  employer once a decision to depart has been made.   In Bancroft Whitney Co. v. Glen, 64

21  Cal. 2d 327 (1966), the California Supreme Court specifically rejected Mattel's

22  interpretation of Daniel Orifice and Sequoia Vacuum.  The Court held that, even for an

23  officer (which Bryant was not) with fiduciary duties (which Bryant lacked), "[t]here is no

24  requirement that an officer disclose his preparations to compete with the corporation in

25  every case, and failure to disclose such acts will render the officer liable for breach of his

26  fiduciary duties only where particular circumstances render nondisclosure harmful to the

27  corporation."  Id. at 345 (emphasis added); see also Rest. 3d Agency § 8.04 cmt. c ("An

28  employee or other agent who plans to compete with the principal does not have a duty to

disclose this fact to the principal.  To be sure, the fact that an agent has such a plan is information that a principal would find useful, but the agent's fiduciary duty to the principal does not oblige the agent to make such disclosure.   Nor does an agent's duty to provide facts to the principal … require disclosure to the principal of an agent's competitive plans.  In this respect, the social benefits of furthering competition outweigh the principal's interest in full disclosure by its agents.").  Were an at-will employee, like Bryant, required to disclose preparations to compete, the employee's right to prepare to compete would be rendered meaningless.

## CONVERSION CLAIM

Mattel has asserted a claim for conversion against Carter Bryant, Isaac Larian, and MGA (HK).

I will now instruct you regarding the law as to this claim.

## CONVERSION—ELEMENTS

Mattel claims that Carter Bryant, Isaac Larian, and MGA (HK) wrongfully exercised control over Bryant's BRATZ sketches, which Mattel claims it owns under Section 2(a) of the Inventions Agreement.   In addition, Mattel claims that Carter Bryant wrongfully exercised control over a Mattel doll head and Mattel's telephones and fax machines.   To establish this claim, Mattel must prove all of the following:

1. That Mattel owned the BRATZ sketches under Section 2(a) of the Inventions Agreement and the rights to a Mattel doll head and Mattel's telephones and fax machines.;

2. That Bryant, Larian, and MGA (HK) intentionally prevented Mattel from having access to the above-mentioned items for a significant period of time, or destroyed Mattel's personal property;

3. That Mattel did not consent;

4. That Mattel was harmed; and

1

2

    5. That Bryant, Larian, and MGA (HK)**'s** conduct was a substantial factor in causing

Mattel**'s** harm.

3

4

A conversion claim must relate to tangible physical property.  A conversion claim cannot

5

be based upon property that a party has discarded.

6

7

**Authority:** CACI No. 2100 (2008); <u>Ananda Church of Self-Realization v. Mass. Bay Ins.</u>

<u>Co.</u>, 95 Cal. App. 4th 1273, 1282 (2002); <u>see also</u> <u>Melchior v. New Line Prods., Inc.</u>, 106

8

9

Cal. App. 4th 779, 793 (2003) (conversion does not apply to ideas).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CONVERSION—ELEMENTS

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Conversion—Elements on the following grounds:

1.     This proposed instruction deviates from the model instruction found in CACI.

2.     This proposed instruction is inaccurate and incomplete because it is limited to MGA (HK), but Mattel is asserting conversion claims against MGA and MGA (HK), as well as Carter Bryant and Isaac Larian.

3.     Defendants' proposed instruction is limited to Bryant's BRATZ drawings, but Mattel's conversion claim encompasses Bryant's Bratz drawings as well as other tangible items.

4.     This proposed instruction is misleading and confusing in that it requires the jury to find that all of defendants (Bryant, Larian, and MGA (HK)) intentionally prevented Mattel from having access to the items in question or destroyed Mattel's personal property; under the model instruction, as in Mattel's proposed version, it is sufficient that any of defendants either took possession of the objects or prevented access or destroyed them.

5.     While defendants' proposed instruction requires that all three defendants' conduct was a substantial factor in causing one of Mattel's harms, it is sufficient, as in Mattel's proposed instruction, that any of defendants' conduct was a substantial factor in causing Mattel's harm.

6.     Mattel objects to defendants' claim that a conversion claim "cannot be based upon property that a party has discarded."  With respect to the argument that Mattel internally discarded items Bryant allegedly used in assembling the early Bratz sculpts, that argument, even if true, is irrelevant to defendants' removal and possession of Mattel's property.  Even Mattel's discarded doll parts belong to Mattel.

245

1  **Authority:** CACI No. 2100.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**CONVERSION—ELEMENTS**

**MGA Parties' and Bryant's Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.   Jury instructions do not come down from any mountain or rise up from any sea.   Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.   This description does not denigrate their value, it simply places them in the niche where they belong.").   Indeed, modification is sometimes necessary to make an instruction accurate and complete.   See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

Per the Court's ruling on the MGA Parties' and Bryant's Motion for Partial Summary Judgment, Mattel's conversion claim is limited to tangible property, and may not be applied to ideas or concepts.  (See April 25, 2008 Order at 3.)

Mattel's conversion claim must relate to tangible physical property and cannot be based upon discarded property. See Ananda Church of Self-Realization v. Mass. Bay Ins. Co., 95 Cal. App. 4th 1273, 1282 (2002); see also Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003) (conversion does not apply to ideas).  Moreover, Mattel's

1  objection that the conversion claim "encompasses Bryant's Bratz drawings as well as other

2  tangible items" fails to specify what other tangible items Mattel claims were converted,

3  aside from those already listed in the instruction.  Further, Mattel fails to cite any authority

4  supporting its mistaken assertion that it can base a claim for conversion on removal of

5  discarded property, or refuting MGA Parties' and Bryant's contrary authority.

6

7  Finally, although Mattel's complaint asserts a conversion claim against all defendants, in

8  its Motion for Summary Judgment, Mattel does not list this claim as one of the claims

9  asserted against MGA in Phase One.   (Mattel MSJ at 50:18-20.)   Because Mattel

10  apparently dropped MGA from the claim for Phase One purposes, and MGA relied upon

11  that assertion during the summary judgment process, Mattel should be estopped from now

12  resurrecting the claim against MGA.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**PHASE 1 – Affirmative Defenses**

**<u>Affirmative Defenses—General</u>**

I will now instruct you on the affirmative defenses raised by Carter Bryant, MGA, Isaac Larian, and MGA (HK).   These affirmative defenses will only be considered if Mattel prevails on its claims.

1  **Affirmative Defenses—General**

2

3  **Mattel's Objection**

4

5      Mattel objects on the grounds that the last sentence is unnecessary and improperly

6  suggests that the jury may ease its burden by deciding against Mattel.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1    **<u>Affirmative Defenses—General</u>**

2

3    **<u>MGA Parties' and Bryant's Response</u>**

4

5    While Mattel objects to the last sentence because it is unfavorable to it, Mattel does not

6    and cannot contend that the statement is incorrect as a matter of law. It cannot be disputed

7    dispute that affirmative defenses come into play only if Mattel prevails on its claims, as it

8    would be unnecessary to reach them if Mattel loses on liability.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statute of Limitations—Explanation**

The law requires that a plaintiff file its claims within a defined period of time known as a statute of limitations or else the plaintiff may not recover any damages.  Carter Bryant, Isaac Larian, MGA, and MGA (HK) contend that Mattel's claims were not filed within the time set by law.  To succeed on this defense, <u>first</u> defendants must show when Mattel's claims **"accrued"** – that is when the statute of limitations began to run on those claims.  When a claim **"accrues"** depends on both the claim and the identity of the defendant.  As to some claims, the relevant date that the claim **"accrued"** is when the wrongful act occurred.  As to other claims, the relevant date that the claim **"accrued"** is when Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place.  As to each claim, I will explain the relevant date and what each defendant must prove.  <u>Second</u>, defendants must show that plaintiff did not file its claims in court within the prescribed period of time after its claims **"accrued."**

**Authority:**  CACI No. 4120 (2008); <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 807 (2005); <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal. 3d 1103, 1111 (1988).

**Statute of Limitations—Explanation**

**Mattel's Objection**

 Mattel objects to this proposed instruction on the following grounds:

 1. The instruction improperly suggests that there is an absolute statute of limitations as to all claims, and after it expires the plaintiff may not recover any damages. That instruction is in error.  In practice, the statute of limitations as to Mattel's claims of copyright infringement is "rolling," i.e., Mattel may recover for all acts of infringement that occurred within three years of filing suit.  *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).

 2. The instruction improperly states that some claims accrued upon the occurrence of the wrongful act.  In fact, as explained in Mattel's objections to claim-specific instructions *infra*, all of Mattel's claims are governed by the discovery rule.

 3. The instruction misstates the law with respect to accrual of a claim. Defendants contend that a claim accrues when "Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place."  In fact, the proper standard – as set out by the California Supreme Court – is that a claim does not accrue that a claim does not accrue if the plaintiff merely suspects an injury, if "a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 805 (2005).  Thus, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim."  *Id.* at 813.  Accordingly, defendants' instruction is misleading and improper in that it states that suspicion of *any* wrongdoing by defendants, even wrongdoing not alleged in this action, was sufficient to commence the running of the statute of limitations.

1    4.    The instruction is improper as it is well settled that mere suspicion of

2  wrongdoing will not commence the running of the statute of limitations.  *Intermedics, Inc.*

3  *v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of

4  limitations in a way that pressures litigants to file suits based merely on suspicions and

5  fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to

6  file an action with no other basis would offend norms articulated in rules like Federal Rule

7  of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043

8  (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "`an awareness of sufficient

9  facts to identify a particular cause of action… [It does] not mean the kind of notice --

10  based on hints, suspicions, hunches or rumors -- that requires a plaintiff to make inquiries

11  in the exercise of due diligence, but not to file suit.'" ) (citation omitted).  In any event,

12  even if suspicion were the standard, the instruction does not explain that the suspicion

13  must relate to the specific cause of action sued upon.  *Fox*, 35 Cal. 4th at 806, 808 (quoting

14  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999)).

15    5.    The proposed instruction improperly fails to recognize that the statute of

16  limitations is tolled where the defendant fraudulently conceals the evidence of his

17  wrongdoing.  *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal.

18  2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2,

19  2007) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of

20  wrongdoing, coupled with a knowledge of the harm and its cause"); *Grisham v. Philip*

21  *Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637 (2007) ("[a] defendant's fraud in concealing a

22  cause of action against him will toll the statute of limitations."); *Bernson v. Browning-*

23  *Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (reversing summary judgment on statute of

24  limitations grounds where "defendant's fraud in concealing a cause of action against him

25  tolls the applicable statute of limitations"); *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d

26  805, 831-32 (1983).  Mattel will prove at trial that defendants concealed their wrongdoing

27  by, inter alia, making false public statements concerning the origin of the Bratz dolls.  This

28  Court found as a matter of law that Bryant "breached his fiduciary duty to communicate

his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor . . .."  April 25, 2008 Order, at 6.  Accordingly, "near-actual" notice, rather than "inquiry notice," is the governing standard.  *Garamendi*, 276 F. Supp. 2d at 1042-3; *Hynix Semiconductor*, 2007 WL 3284060, at *3 (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, ***coupled with a knowledge*** of the harm and its cause") (emphasis added).

**Statute of Limitations—Explanation**

**MGA Parties' and Bryant's Response**

The MGA Parties' and Bryant's proposed instruction does not suggest that a single statute of limitations applies to all claims, but rather provides an introductory instruction meant to assist the jury in understanding what is a statute of limitations and how it works.

As the MGA Parties showed, because Mattel's copyright infringement claim is essentially a claim for ownership, the statute of limitations for that claim began to run upon MGA's plain and express repudiation of Mattel's ownership claim in the property at issue. See Welles v. Turner Entm't Co., 503 F.3d 728, 734 (9th Cir. 2007); Minder Music Ltd. v. Mellow Smoke Music Co., 1999 WL 820575, 52 U.S.P.Q. 2d 1700, 1701 (S.D.N.Y. 1999); see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389-90 (6th Cir. 2007). See MGA Parties' and Bryant's Response to Mattel's Objections to "Statute of Limitations – Copyright Infringement," infra.

Mattel improperly asserts that all of its claims are governed by the discovery rule; however, as shown below, Mattel's claims for intentional interference with contract, conversion, and statutory unfair competition accrue upon the occurrence of the wrongful act at issue.

Mattel's objections are self-contradictory. Mattel first cites California law demonstrating that a suspicion of a wrongdoing triggers the discovery rule, and then cites cases allegedly contradicting that very rule. In any event, Mattel misstates the "discovery rule" standard under California law. In California, inquiry notice is triggered by a mere suspicion or any reason to suspect that wrongdoing has taken place. See Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1111 (1988) ("[o]nce the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights") (emphasis

1  added); <u>see also</u> <u>Fox v. Ethicon Endo-Surgery</u>, 35 Cal. 4th 797, 803 (2005) ("a cause of

2  action accrues and the statute of limitations begins to run when the plaintiff has <u>reason to</u>

3  <u>suspect</u> an injury and some wrongful cause, unless the plaintiff pleads and proves that a

4  reasonable investigation at that time would not have revealed a factual basis for that

5  particular cause of action") (emphasis added). Contrary to Mattel's claims, the suspicion

6  need not be of the specific claim eventually sued upon: "under California law, a plaintiff

7  'need not be aware of the specific facts necessary to establish the claim' in order for a

8  cause of action to accrue. Nor need he be aware of the particular legal theory that will

9  support it. His claim accrues 'when, simply put, he at least suspects ... that someone has

10  done something wrong to him.'" <u>Soliman v. Philip Morris Inc.</u>, 311 F.3d 966, 971-72 (9th

11  Cir. 2002) (internal citations omitted), citing <u>Norgart v. Upjohn Co.</u>, 21 Cal. 4th 383, 397

12  (1999), and <u>Jolly</u>, 44 Cal. 3d at 1110-11; <u>id.</u> at 1110 n.7 (the "wrong" that plaintiff is to be

13  aware of for purposes of the statute of limitations need not be in any technical sense, but

14  rather in accordance with its "lay understanding"); <u>see also</u> <u>Butler v. San Diego Dist.</u>

15  <u>Attorneys Office</u>, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California, "the

16  statute of limitations begins to run when the plaintiff suspects or should suspect that

17  someone has done something wrong to him").

18

19  Mattel's reliance on <u>Intermedics, Inc. v. Ventritex, Inc.</u>, 775 F. Supp. 1258, 1266 (N.D.

20  Cal. 1991), in support of its proposition that "that mere suspicion of wrongdoing will not

21  commence the running of the statute of limitations" has been already rejected. <u>See</u>

22  <u>Chasteen v. UNISIA JECS Corp.</u>, 216 F.3d 1212, 1218 (10th Cir. 2000) (rejecting

23  plaintiff's theory, based in part on the <u>Intermedics</u> opinion cited by Mattel here, that the

24  statute does not begin to run until plaintiff has its "smoking gun" evidence), citing, <u>inter</u>

25  <u>alia</u>, <u>Intermedics, Inc. v. Ventritex, Inc.</u>, 822 F. Supp.  634, 641 (N.D. Cal. 1993) (a

26  follow-up opinion to that relied upon by Mattel, rejecting the very position advocated by

27  Mattel here). Similarly, Mattel's reliance on <u>Garamendi v. SDI Vendome S.A.</u>, 276 F.

28  Supp. 2d 1030, 1043 (C.D. Cal. 2003), for the proposition that notice based on "hints,

1  suspicions, hunches or rumors" is insufficient to trigger the limitations period, is

2  unavailing, as Garamendi dealt with tolling of statute of limitations based on fraudulent

3  concealment, not with the general standard for inquiry notice. Moreover, contrary to

4  Garamendi, under California law, "a suspicion of wrongdoing, coupled with a knowledge

5  of the harm and its cause" is sufficient to end tolling based on fraudulent concealment.

6  Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App.

7  4th 884, 890-91 (2002); Hynix Semiconductor Inc. v. Rambus Inc., 2007 WL 3284060, at

8  *3 (N.D. Cal. Nov. 2, 2007) ("fraudulent concealment doctrine does not toll the statute of

9  limitations, no matter what the defendant has done to conceal his wrongs, if a plaintiff has

10  a suspicion of wrongdoing and knowledge of the harm and its cause"); cf. Garamendi, 276

11  F. Supp. 2d at 1043 (relying on a decision by the D.C. Circuit, noting that "[n]o California

12  court appears explicitly to have adopted this formulation" of the rule).

13

14  Mattel faults the MGA Parties and Bryant for not including Mattel's claim that the MGA

15  Parties and Bryant fraudulently concealed the relevant facts. However, to the extent there

16  is any evidentiary basis for inclusion of an instruction dealing with fraudulent concealment

17  in this case (and there is not), Mattel's proposed language is objectionable in that it asserts

18  that tolling based on fraudulent concealment ends only once Mattel has "near-actual"

19  knowledge of the wrongdoing at issue. However, under California law, "a suspicion of

20  wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to end

21  tolling based on fraudulent concealment. Snapp & Assocs. Ins. Servs., Inc. v. Malcolm

22  Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002); see also Platt Elec.

23  Supply, Inc. v. EOFF Elec., Inc., __ F.3d __, 2008 WL 1722882, at *5 (9th Cir. Apr. 15,

24  2008) (inquiry notice ends tolling based on fraudulent concealment); Soliman v. Philip

25  Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need not be aware of the

26  specific 'facts' necessary to establish the claim" for him to be on inquiry notice,  nor need

27  he be aware of the particular legal theory that will support it; his claim accrues "when,

28  simply put, he at least 'suspects ... that someone has done something wrong' to him").

258

1 Mattel's theory of fraudulent concealment is also improper to the extent it suggests that
2 fraudulent concealment by one defendant would necessarily toll the statute as to another
3 defendant not found culpable in the alleged concealment. See Sanchez v. South Hoover
4 Hospital, 18 Cal. 3d 93, 100 ("The rationale for the foregoing rule [of fraudulent
5 concealment] is that the culpable defendant should be estopped from profiting by his own
6 wrong [t]o the extent that it hindered an 'otherwise diligent' plaintiff in discovering his
7 cause of action.") (emphasis added).

8

9 Lastly, Mattel's reliance on the Court's statement that Bryant "secretly entered into a
10 contract with a Mattel competitor" is premature in light of Bryant's pending Motion for
11 Reconsideration, which specifically challenges this finding in light of the disputed
12 evidence submitted regarding this issue.  In any event, even under the Court's Order, the
13 Court's statement in no way constituted any finding related to statutes of limitations issues
14 raised on summary judgment.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Mattel's Date of Filing Of Its Claims**

For purposes of the statute of limitations herein, Mattel filed its claims against MGA, MGA (HK) and Larian on November 20, 2006.  [If the Court does not accept MGA's "relation-back" arguments, then the claims against MGA would be deemed to have been filed on December 7, 2004, when MGA intervened.]  Mattel filed its non-copyright claims against Carter Bryant on April 27, 2004, and filed its copyright claim against Carter Bryant on November 20, 2006.

**Authority**:  Stipulation and Order dated December 7, 2004, at 1:10-15; <u>United States v. Randall & Blake</u>, 817 F.2d 1188, 1192 (5th Cir. 1987) (for statute of limitations, the date of intervention is the operative date).

**Mattel's Date of Filing Of Its Claims**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction on the following grounds:

1.     Defendants' relation back arguments are without merit, and were rejected by the Court in its Order granting Mattel's motion to amend.  Specifically, the Court held that Mattel's claims against the MGA defendants relate back to Mattel's original complaint against Bryant.  Defendants do not present a reason for the Court to depart from its prior ruling.  In any event, defendants misstate the date to which Mattel's claims against them relate back.  Because MGA shares an interest with Bryant in a finding that Mattel lacks an ownership interest in the Bratz works, Mattel's claims against the MGA defendants relate back to the date of its complaint against Bryant, not the date of these defendants' intervention or the date when Mattel moved to amend its complaint.  *Cummings v. U.S.*, 704 F.2d 437, 439-40 (9th Cir. 1983) (claimant's insurer's complaint in intervention seeking to enforce its right of subrogation related back to filing of claimant's original complaint); *DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d 826, 831-32 (9th Cir. 1963) (intervention of a party plaintiff that shared interests with the original plaintiff related back for statute of limitations purposes).  Defendants' sole case is distinguishable.  In *U.S. v. Randall & Blake*, 817 F.2d 1188, 1192 (5th Cir. 1987), the court held merely that the additional plaintiff's filing of a motion for intervention is equivalent to commencing an action for statute of limitation purposes.  Here, however, MGA intervened as a *defendant*, answering the complaint that Mattel filed in April 2004 against Bryant.  The claims against it, therefore, relate back to the date of that complaint.

**Mattel's Date of Filing Of Its Claims**

**MGA Parties' and Bryant's Response**

As the MGA Parties showed in their summary judgment papers, Mattel failed to satisfy the requirements for "relation-back" for claims against new parties – that issue has not been addressed by the Court in its prior rulings, especially considering that the evidence currently before the Court could only be brought up via a summary judgment procedure. This is why this issue is currently under submission before the Court. Mattel also failed to satisfy the relation-back requirements for any new claims asserted against Bryant.

Mattel's assertion that Bryant and the MGA Parties share a commonality of interest is unsupported. In fact, the MGA Parties' and Bryant's interests are not necessarily aligned here, as the MGA Parties' allegations in support of their defense against aiding and abetting claims abundantly demonstrate. As such, to the extent MGA's intervention is not found to be "procedural only", as provided in the parties' stipulation, and the status of "new party" for relation-back purposes is denied to MGA (which would be improper, see Davis v Outdoor Equip. Co., 551 S.W.2d 72, 73 (Tex. Ct. App. 1977) (partnership, which had never been named or served, was entitled to directed verdict where partnership made voluntary appearance after statute of limitations had run, as date of original filing against corporate defendant did not toll statute to new and different defendant)), it is the date of intervention that would be the operative date for the filing of Mattel's claims against MGA. See U.S. v. Randall & Blake, 817 F.2d 1188, 1192 (5th Cir. 1987) (for statute of limitations, the date of intervention is the operative date).

**Defense: Statute of Limitations (Breach of Duty of Loyalty)**

Bryant contends that Mattel's breach of duty of loyalty claim was not filed within the time set by law.  To succeed on this defense, Bryant must prove that Mattel did not file its claims against him within two years of the date when Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place, in this case when Bryant allegedly breached a duty of loyalty to Mattel.

**Authority:**  Cal. Civ. Proc. Code § 339.

**Defense: Statute of Limitations (Breach of Duty of Loyalty)**

**Mattel's Objection**

Mattel objects to this proposed instruction on the following grounds:

1.     This proposed instruction is erroneous as a matter of law because defendants misstate the applicable statute of limitations period.  The statute of limitations for a claim of breach of duty is four years.  *See*, *e.g.*, *Hatch v. Collins*, 225 Cal. App.3d 1104, 1111 (1990) (statute of limitations for a breach of fiduciary duty not amounting to actual fraud is four years); *David Welch Co. v. Erskine & Tulley*, 203 Cal. App. 3d 884, 893 (1988) ("where a cause of action is based on a defendant's breach of its fiduciary duties, the four-year catchall statute set forth in Code of Civil Procedure section 343 applies") (citations omitted).

2.     The instruction misstates the law with respect to accrual of a claim. Defendants contend that a claim accrues when "Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place."  In fact, the proper standard -- as set out by the California Supreme Court -- is that a claim does not accrue that a claim does not accrue if the plaintiff merely suspects an injury, if "a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 805 (2005).  Thus, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim."  *Id.*  Accordingly, defendants' instruction is misleading and improper in that it states that suspicion of *any* wrongdoing by defendants, even wrongdoing not alleged in this action, was sufficient to commence the running of the statute of limitations.

3.      The instruction is improper as it is well settled that mere suspicion of wrongdoing will not commence the running of the statute of limitations. *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "`an awareness of sufficient facts to identify a particular cause of action… [It does] not mean the kind of notice -- based on hints, suspicions, hunches or rumors -- that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit.'" ) (citation omitted).  In any event, even if suspicion was the standard, the instruction does not explain that the suspicion must relate to the specific cause of action sued upon. *Fox*, 35 Cal. 4th at 806, 808 (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999)).

4.      The proposed instruction improperly fails to recognize that the statute of limitations is tolled where the defendant fraudulently conceals the evidence of his wrongdoing. *Garamendi* , 276 F. Supp. 2d at 1042-3; *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637 (2007) ("[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (reversing summary judgment on statute of limitations grounds where "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations"); *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 831-32 (1983).  Mattel will prove at trial that defendants concealed their wrongdoing by, *inter alia*, making false public statements concerning the origin of the Bratz dolls.  This Court found as a matter of law that Bryant "breached his fiduciary duty to communicate his inventions to Mattel when, rather than

265

1  doing so, he secretly entered into a contract with Mattel's competitor . . .."  April 25, 2008

2  Order, at 6.  Accordingly, "near-actual" notice, rather than "inquiry notice," is the

3  governing standard.  *Garamendi*, 276 F. Supp. 2d at 1042-3; *Hynix Semiconductor*, 2007

4  WL 3284060, at *3 (tolling based on fraudulent concealment ends when the plaintiff has

5  "a suspicion of wrongdoing, ***coupled with a knowledge*** of the harm and its cause")

6  (emphasis added).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defense: Statute of Limitations (Breach of Duty of Loyalty)**

**MGA Parties' and Bryant's Response**

First, this instruction properly states that the statute of limitations for breach of duty of loyalty is two years, under California Code of Civil Procedure § 339, which governs actions "upon a contract, obligation or liability not founded upon an instrument of writing." Cal. Code Civ. P. § 339(1). An employee's duty of loyalty like the one at issue here is a common-law obligation not founded upon an instrument in writing, and thus subject to § 339, which applies to a wide range of non-contractual, non-statutory obligations and liabilities. See, e.g., Jang v. State Farm Fire & Cas. Co., 80 Cal. App. 4th 1291, 1296 (2000) (describing § 339 as "the two-year statute of limitations for torts"; applying instead an express limitations provision in the insurance contract at issue). (Similarly, as Mattel itself has agreed, this same statute would have governed Mattel's invalid claims of common-law unfair competition). Mattel has pointed to no authority specifically addressing the statute of limitations for a duty of loyalty claim like that presented here, offering only authority related to its separate claim for breach of fiduciary duty. (Because that authority does not address an employee's duty of loyalty, Bryant does not address its merits here.)

Also, Bryant notes that even if Mattel's claim for breach of the duty of loyalty implicates any statutory codification of common-law duties of loyalty, that would not make any liability "created by statute" within the meaning of California's three-year statute of limitations for such liabilities. See Briano v. Rubio, 46 Cal. App. 4th 1167, 1175 (1996) ("A cause of action is based upon a liability created by law only if it exists by virtue of an express statute or constitutional provision, *and did not exist at common law*." (emphasis in original)). Because an employees' duty of loyalty existed at common law, it remains in essence a non-statutory claim even if codified.

1

2   Further, Mattel misstates the "discovery rule" standard under California law. In California,

3   inquiry notice is triggered by a mere suspicion or any reason to suspect that wrongdoing

4   has taken place.  See Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1111 (1988) ("[o]nce the

5   plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide

6   whether to file suit or sit on her rights") (emphasis added); see also Fox v. Ethicon Endo-

7   Surgery, 35 Cal. 4th 797, 803 (2005) ("a cause of action accrues and the statute of

8   limitations begins to run when the plaintiff has reason to suspect an injury and some

9   wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at

10  that time would not have revealed a factual basis for that particular cause of action")

11  (emphasis added). Contrary to Mattel's claims, the suspicion need not be of the specific

12  claim eventually sued upon: "under California law, a plaintiff 'need not be aware of the

13  specific facts necessary to establish the claim' in order for a cause of action to accrue. Nor

14  need he be aware of the particular legal theory that will support it. His claim accrues 'when,

15  simply put, he at least suspects ... that someone has done something wrong to him.'"

16  Soliman v. Philip Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (internal citations

17  omitted), citing Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999), and Jolly, 44 Cal. 3d

18  at 1110-11; id. at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of the

19  statute of limitations need not be in any technical sense, but rather in accordance with its

20  "lay understanding"); see also Butler v. San Diego Dist. Attorneys Office, 2007 WL

21  935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California, "the statute of limitations begins to

22  run when the plaintiff suspects or should suspect that someone has done something wrong

23  to him").

24

25  Mattel's reliance on Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1258, 1266 (N.D.

26  Cal. 1991), in support of its proposition that "that mere suspicion of wrongdoing will not

27  commence the running of the statute of limitations" has been already rejected. See

28  Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1218 (10th Cir. 2000) (rejecting

268

1  plaintiff's theory, based in part on the <u>Intermedics</u> opinion cited by Mattel here, that the
2  statute does not begin to run until plaintiff has its "smoking gun" evidence), citing, <u>inter</u>
3  <u>alia</u>, <u>Intermedics, Inc. v. Ventritex, Inc.</u>, 822 F. Supp. 634, 641 (N.D. Cal. 1993) (a
4  follow-up opinion to that relied upon by Mattel, rejecting the very position advocated by
5  Mattel here). Similarly, Mattel's reliance on <u>Garamendi v. SDI Vendome S.A.</u>, 276 F.
6  Supp. 2d 1030, 1043 (C.D. Cal. 2003), for the proposition that notice based on "hints,
7  suspicions, hunches or rumors" is insufficient to trigger the limitations period, is
8  unavailing, as <u>Garamendi</u> dealt with tolling of statute of limitations based on fraudulent
9  concealment, not with the general standard for inquiry notice. Moreover, contrary to
10 <u>Garamendi</u>, under California law, "a suspicion of wrongdoing, coupled with a knowledge
11 of the harm and its cause" is sufficient to end tolling based on fraudulent concealment.
12 <u>Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson,</u> 96 Cal. App.
13 4th 884, 890-91 (2002); <u>Hynix Semiconductor Inc. v. Rambus Inc.</u>, 2007 WL 3284060, at
14 *3 (N.D. Cal. Nov. 2, 2007) ("fraudulent concealment doctrine does not toll the statute of
15 limitations, no matter what the defendant has done to conceal his wrongs, if a plaintiff has
16 a suspicion of wrongdoing and knowledge of the harm and its cause"); <u>cf.</u> <u>Garamendi</u>, 276
17 F. Supp. 2d at 1043 (relying on a decision by the D.C. Circuit, noting that "[n]o California
18 court appears explicitly to have adopted this formulation" of the rule).
19
20 Mattel faults the MGA Parties and Bryant for not including Mattel's claim that the MGA
21 Parties and Bryant fraudulently concealed the relevant facts. However, to the extent there
22 is any evidentiary basis for inclusion of an instruction dealing with fraudulent concealment
23 in this case (and there is not), Mattel's proposed language is objectionable in that it asserts
24 that tolling based on fraudulent concealment ends only once Mattel has "near-actual"
25 knowledge of the wrongdoing at issue. However, under California law, "a suspicion of
26 wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to end
27 tolling based on fraudulent concealment. <u>Snapp & Assocs. Ins. Servs., Inc. v. Malcolm</u>
28 <u>Bruce Burlingame Robertson</u>, 96 Cal. App. 4th 884, 890-91 (2002); <u>see also</u> <u>Platt Elec.</u>

Supply, Inc. v. EOFF Elec., Inc., __ F.3d __, 2008 WL 1722882, at *5 (9th Cir. Apr. 15, 2008) (inquiry notice ends tolling based on fraudulent concealment); Soliman v. Philip Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need not be aware of the specific 'facts' necessary to establish the claim" for him to be on inquiry notice, nor need he be aware of the particular legal theory that will support it; his claim accrues "when, simply put, he at least 'suspects ... that someone has done something wrong' to him"). Mattel's theory of fraudulent concealment is also improper to the extent it suggests that fraudulent concealment by one defendant would necessarily toll the statute as to another defendant not found culpable in the alleged concealment. See Sanchez v. South Hoover Hospital, 18 Cal. 3d 93, 100 ("The rationale for the foregoing rule [of fraudulent concealment] is that the culpable defendant should be estopped from profiting by his own wrong [t]o the extent that it hindered an 'otherwise diligent' plaintiff in discovering his cause of action.") (emphasis added).

**Defense: Statute of Limitations (Intentional Interference with Contract)**

Isaac Larian and MGA contend that Mattel's intentional interference with contract claim was not filed within the time set by law.  To succeed on this defense, Isaac Larian and/or MGA must prove that Mattel did not file its claims against them within two years of the occurrence of the acts that Mattel contends were wrongful, in this case the alleged breach of Carter Bryant's contracts with Mattel.  The claim "accrues" whether or not Mattel actually knew of the acts at the time.

**Authority:**  See Cal. Civ. Proc. Code § 339(1); Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); Charles Lowe Co. v. Xomox Corp., No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, Cal. Procedure: Actions, § 575, at 728 (4th ed. 1996).

**Defense: Statute of Limitations (Intentional Interference with Contract)**

**Mattel's Objection**

Mattel objects to this proposed instruction on the following grounds:

1.     The instruction misstates the law.  The discovery rule applies to contract claims, including claims for intentional interference with contract.  *See Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5-6 (2003) (discovery rule applied to contract claim brought four years after defendant secretly conveyed certain real property). Application of the discovery rule is especially appropriate because, as set forth in Mattel's summary judgment papers, Bryant was Mattel's fiduciary, entrusted with highly sensitive confidential information.  "Delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust such as that involving a fiduciary, confidential or privileged relationship."  *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1424 (2003). Accordingly, the Court should apply the discovery rule. Defendants' authority is easily distinguishable.  None of their cases involve a fiduciary relationship, or fraudulent concealment of wrongdoing.

**Defense: Statute of Limitations (Intentional Interference with Contract)**

**MGA Parties' and Bryant's Response**

Mattel incorrectly applies the discovery rule to this claim, as a cause of action for intentional interference with a contract accrues no later than the date of the contract's breach.  See Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991), and 3 B.E. Witkin, Cal. Procedure: Actions, § 575, at 728 (4th ed. 1996). Mattel's reliance on Moreno v. Sanchez, 106 Cal. App. 4th 1415, 1424 (2003), is unavailing, given that Bryant did not owe any fiduciary duty to Mattel, as demonstrated in Bryant's summary judgment papers and his Motion for Reconsideration.  See American Top English v. Lexicon Marketing (USA), Inc., 2004 WL 2271838, at *7 (N.D. Ill. Oct. 4, 2004) (rejecting application of Moreno because plaintiff failed to establish that fiduciary duty was owed by the defendant). Indeed, Mattel's contention that delayed accrual is appropriate in cases involving fiduciaries presumes the existence of such a relationship.  As shown above, Mattel has conceded that Bryant's position with Mattel does not meet the criteria set forth in GAB Business for establishing a fiduciary duty imposed by law.  (See Mattel MSJ Opp'n at 53 (conceding inapplicability of GAB Business).)

Given its concession, Mattel must then show a fiduciary relationship was created as a factual matter – this requires a showing that Bryant "voluntarily" or "expressly" assumed a fiduciary duty.  See City Solutions v. Clear Channel Commc'n., 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002); Kremen v. Cohen, 99 F. Supp. 2d 1168, 1175 (N.D. Cal. 2000); Comm. on Children's Tel., Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 222 (1983) (superseded by statute on other grounds); Vai v. Bank of America, 56 Cal. 2d 329, 338 (1961); Oakland Raiders v. Nat'l Football League, 131 Cal. App. 4th 621, 632-33 (2005);

273

1  GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409,

2  417 (2000), overruled on other grounds by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004);

3  Maglica v. Maglica, 66 Cal. App. 4th 442, 488 (1998); Lynch v. Cruttenden & Co., 18 Cal.

4  App. 4th 802, 809 (1993); Worldvision Enters., Inc. v. Am. Broad. Cos., 142 Cal. App. 3d

5  589 (1983).  As set forth in Bryant's Motion for Partial Summary Judgment and Bryant's

6  Motion for Reconsideration, Mattel has made no such factual showing.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty)**

Isaac Larian and MGA contend that Mattel's aiding and abetting breach of fiduciary duty claim was not filed within the time set by law.  To succeed on this defense, Isaac Larian and/or MGA must prove that Mattel did not file its claims against them within two years of the date when Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place, in this case when Bryant allegedly breached a fiduciary duty to Mattel.

**Authority:**   Rambus Inc. v. Samsung Elecs. Co., Ltd., C-05-02298 RMW, C-05-0334 RMW, 2007 WL 39374, at *3 n.4 (N.D. Cal. Jan. 4, 2007) ("The statute of limitations applicable to the claim[] of aiding and abetting breach of fiduciary duty…is two years."), citing Cal. Civ. Proc. Code § 339.

**<u>Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty)</u>**

**<u>Mattel's Objection</u>**

Mattel objects to this proposed instruction on the following grounds:

1.     The instruction misstates the law with respect to accrual of a claim. Defendants contend that a claim accrues when "Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place."  In fact, the proper standard -- as set out by the California Supreme Court -- is that a claim does not accrue that a claim does not accrue if the plaintiff merely suspects an injury, if "a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 805 (2005).  Thus, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim."  *Id.*  Accordingly, defendants' instruction is misleading and improper in that it states that suspicion of *any* wrongdoing by defendants, even wrongdoing not alleged in this action, was sufficient to commence the running of the statute of limitations.

2.     The instruction is improper as it is well settled that mere suspicion of wrongdoing will not commence the running of the statute of limitations.  *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "`an awareness of sufficient facts to identify a particular cause of action… [It does] not mean the kind of notice --

1   based on hints, suspicions, hunches or rumors -- that requires a plaintiff to make inquiries

2   in the exercise of due diligence, but not to file suit.'" ) (citation omitted).  In any event,

3   even if suspicion was the standard, the instruction does not explain that the suspicion must

4   relate to the specific cause of action sued upon.  *Fox*, 35 Cal. 4th at 806, 808 (quoting

5   *Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999)).

6           3.      The proposed instruction improperly fails to recognize that the statute of

7   limitations is tolled where the defendant fraudulently conceals the evidence of his

8   wrongdoing.  *Garamendi* , 276 F. Supp. 2d at 1042-3; *Hynix Semiconductor v. Rambus,*

9   *Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) (tolling based on fraudulent

10  concealment ends when the plaintiff has "a suspicion of wrongdoing, coupled with a

11  knowledge of the harm and its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th

12  623, 637 (2007) ("[a] defendant's fraud in concealing a cause of action against him will toll

13  the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994)

14  (reversing summary judgment on statute of limitations grounds where "defendant's fraud in

15  concealing a cause of action against him tolls the applicable statute of limitations"); *April*

16  *Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 831-32 (1983).  Mattel will prove at trial that

17  defendants concealed their wrongdoing by, *inter alia*, making false public statements

18  concerning the origin of the Bratz dolls.  This Court found as a matter of law that Bryant

19  "breached his fiduciary duty to communicate his inventions to Mattel when, rather than

20  doing so, he secretly entered into a contract with Mattel's competitor . . .."  April 25, 2008

21  Order, at 6.  Accordingly, "near-actual" notice, rather than "inquiry notice," is the

22  governing standard.  *Garamendi*, 276 F. Supp. 2d at 1042-3; *Hynix Semiconductor*, 2007

23  WL 3284060, at *3 (tolling based on fraudulent concealment ends when the plaintiff has

24  "a suspicion of wrongdoing, ***coupled with a knowledge*** of the harm and its cause")

25  (emphasis added).

26

27

28

**<u>Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty)</u>**

**<u>MGA Parties' and Bryant's Response</u>**

Mattel's objections are self-contradictory. Mattel first cites California law demonstrating that a suspicion of a wrongdoing triggers the discovery rule, and then cites cases allegedly contradicting that very rule. In any event, Mattel misstates the "discovery rule" standard under California law. In California, inquiry notice is triggered by a mere suspicion or any reason to suspect that wrongdoing has taken place. See <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal. 3d 1103, 1111 (1988) ("[O]nce the plaintiff has a <u>suspicion</u> of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.") (emphasis added); see also <u>Fox v. Ethicon Endo-Surgery</u>, 35 Cal. 4th 797, 803 (2005) ("[A] cause of action accrues and the statute of limitations begins to run when the plaintiff has <u>reason to suspect</u> an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.") (emphasis added). Contrary to Mattel's claims, the suspicion need not be of the specific claim eventually sued upon: "under California law, a plaintiff 'need not be aware of the specific facts necessary to establish the claim' in order for a cause of action to accrue. Nor need he be aware of the particular legal theory that will support it. His claim accrues 'when, simply put, he at least suspects that someone has done something wrong to him.'" <u>Soliman v. Philip Morris Inc.</u>, 311 F.3d 966, 971-72 (9th Cir. 2002) (internal citations omitted), citing <u>Norgart v. Upjohn Co.</u>, 21 Cal. 4th 383, 397 (1999), and <u>Jolly</u>, 44 Cal. 3d at 1110-11; <u>id.</u> at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of the statute of limitations need not be in any technical sense, but rather in accordance with its "lay understanding"); see also <u>Butler v. San Diego Dist. Attorneys Office</u>, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California, "the statute of limitations begins to run when the plaintiff suspects or should suspect that someone has done something wrong to him").

278

1

2  Mattel's reliance on Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1258, 1266 (N.D.

3  Cal. 1991), in support of its proposition that "that mere suspicion of wrongdoing will not

4  commence the running of the statute of limitations" has been already rejected. See

5  Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1218 (10th Cir. 2000) (rejecting

6  plaintiff's theory, based in part on the Intermedics opinion cited by Mattel here, that the

7  statute does not begin to run until plaintiff has its "smoking gun" evidence), citing, inter

8  alia, Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp.  634, 641 (N.D. Cal. 1993) (a

9  follow-up opinion to that relied upon by Mattel, rejecting the very position advocated by

10  Mattel here). Similarly, Mattel's reliance on Garamendi v. SDI Vendome S.A., 276 F.

11  Supp. 2d 1030, 1043 (C.D. Cal. 2003), for the proposition that notice based on "hints,

12  suspicions, hunches or rumors" is insufficient to trigger the limitations period, is

13  unavailing, as Garamendi dealt with tolling of statute of limitations based on fraudulent

14  concealment, not with the general standard for inquiry notice. Moreover, contrary to

15  Garamendi, under California law, "a suspicion of wrongdoing, coupled with a knowledge

16  of the harm and its cause" is sufficient to end tolling based on fraudulent concealment.

17  Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App.

18  4th 884, 890-91 (2002); Hynix Semiconductor Inc. v. Rambus Inc., 2007 WL 3284060, at

19  *3 (N.D. Cal. Nov. 2, 2007) ("fraudulent concealment doctrine does not toll the statute of

20  limitations, no matter what the defendant has done to conceal his wrongs, if a plaintiff has

21  a suspicion of wrongdoing and knowledge of the harm and its cause"); cf. Garamendi, 276

22  F. Supp. 2d at 1043 (relying on a decision by the D.C. Circuit, noting that "[n]o California

23  court appears explicitly to have adopted this formulation" of the rule).

24

25  Mattel faults the MGA Parties and Bryant for not including Mattel's claim that the MGA

26  Parties and Bryant fraudulently concealed the relevant facts. However, to the extent there

27  is any evidentiary basis for inclusion of an instruction dealing with fraudulent concealment

28  in this case (and there is not), Mattel's proposed language is objectionable in that it asserts

1  that tolling based on fraudulent concealment ends only once Mattel has "near-actual"

2  knowledge of the wrongdoing at issue. However, under California law, "a suspicion of

3  wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to end

4  tolling based on fraudulent concealment. Snapp & Assocs. Ins. Servs., Inc. v. Malcolm

5  Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002); see also Platt Elec.

6  Supply, Inc. v. EOFF Elec., Inc., __ F.3d __, 2008 WL 1722882, at *5 (9th Cir. Apr. 15,

7  2008) (inquiry notice ends tolling based on fraudulent concealment); Soliman v. Philip

8  Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need not be aware of the

9  specific 'facts' necessary to establish the claim" for him to be on inquiry notice,  nor need

10 he be aware of the particular legal theory that will support it; his claim accrues "when,

11 simply put, he at least 'suspects ... that someone has done something wrong' to him").

12 Mattel's theory of fraudulent concealment is also improper to the extent it suggests that

13 fraudulent concealment by one defendant would necessarily toll the statute as to another

14 defendant not found culpable in the alleged concealment. See Sanchez v. South Hoover

15 Hospital, 18 Cal. 3d 93, 100 ("The rationale for the foregoing rule [of fraudulent

16 concealment] is that the culpable defendant should be estopped from profiting by his own

17 wrong [t]o the extent that it hindered an 'otherwise diligent' plaintiff in discovering his

18 cause of action.") (emphasis added).

19

20 Lastly, Mattel's reliance on the Court's statement that Bryant "secretly entered into a

21 contract with a Mattel competitor" is premature in light of Bryant's pending Motion for

22 Reconsideration, which specifically challenges this finding in light of the disputed

23 evidence submitted regarding this issue.  In any event, even under the Court's Order, the

24 Court's statement in no way constituted any finding related to statutes of limitations issues

25 raised on summary judgment.

26

27

28

**<u>Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty)</u>**

Isaac Larian and MGA contend that Mattel's aiding and abetting breach of duty of loyalty claim was not filed within the time set by law.  To succeed on this defense, Isaac Larian and/or MGA must prove that Mattel did not file its claims against them within two years of the date when Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place, in this case when Bryant allegedly breached his duty of loyalty to Mattel.

**Authority:**  Cal. Civ. Proc. Code § 339(1).

**<u>Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty)</u>**

**<u>Mattel's Objection</u>**

Mattel objects to this proposed instruction on the following grounds:

1.      The instruction misstates the law with respect to accrual of a claim. Defendants contend that a claim accrues when "Mattel knew or when a reasonable person would have had any reason to suspect that wrongdoing had taken place."  In fact, the proper standard -- as set out by the California Supreme Court -- is that a claim does not accrue that a claim does not accrue if the plaintiff merely suspects an injury, if "a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 805 (2005).  Thus, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim."  *Id.*  Accordingly, defendants' instruction is misleading and improper in that it states that suspicion of *any* wrongdoing by defendants, even wrongdoing not alleged in this action, was sufficient to commence the running of the statute of limitations.

2.      The instruction is improper as it is well settled that mere suspicion of wrongdoing will not commence the running of the statute of limitations.  *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11.");  *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "'an awareness of sufficient facts to identify a particular cause of action… [It does] not mean the kind of notice --

1  based on hints, suspicions, hunches or rumors -- that requires a plaintiff to make inquiries
2  in the exercise of due diligence, but not to file suit.'" ) (citation omitted).  In any event,
3  even if suspicion was the standard, the instruction does not explain that the suspicion must
4  relate to the specific cause of action sued upon.  *Fox*, 35 Cal. 4th at 806, 808 (quoting
5  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999)).

6        3.        The proposed instruction improperly fails to recognize that the statute of
7  limitations is tolled where the defendant fraudulently conceals the evidence of his
8  wrongdoing.  *Garamendi*, 276 F. Supp. 2d at 1042-3; *Hynix Semiconductor v. Rambus,*
9  *Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) (tolling based on fraudulent
10  concealment ends when the plaintiff has "a suspicion of wrongdoing, coupled with a
11  knowledge of the harm and its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th
12  623, 637 (2007) ("[a] defendant's fraud in concealing a cause of action against him will toll
13  the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994)
14  (reversing summary judgment on statute of limitations grounds where "defendant's fraud in
15  concealing a cause of action against him tolls the applicable statute of limitations"); *April*
16  *Enters., Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983).  Mattel will prove at trial that
17  defendants concealed their wrongdoing by, inter alia, making false public statements
18  concerning the origin of the Bratz dolls.  This Court found as a matter of law that Bryant
19  "breached his fiduciary duty to communicate his inventions to Mattel when, rather than
20  doing so, he secretly entered into a contract with Mattel's competitor . . .."  April 25, 2008
21  Order, at 6.  Accordingly, "near-actual" notice, rather than "inquiry notice," is the
22  governing standard.  *Garamendi*, 276 F. Supp. 2d at 1042-3; *Hynix Semiconductor*, 2007
23  WL 3284060, at *3 (tolling based on fraudulent concealment ends when the plaintiff has
24  "a suspicion of wrongdoing, ***coupled with a knowledge*** of the harm and its cause")
25  (emphasis added).

26

27

28

**<u>Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty)</u>**

**<u>MGA Parties' and Bryant's Response</u>**

To begin with, Mattel's reliance on the Court's findings with respect to Bryant's breach of fiduciary duty in its April 25, 2008 Order are premature.  The Court has agreed to hear Bryant's Motion for Reconsideration on May 19. 2008.  Moreover, the Court's Order made no findings whatsoever with respect to notice, fraudulent concealment or any other statute of limitations issue.

In any event, Mattel's objections are self-contradictory. Mattel first cites California law demonstrating that a suspicion of a wrongdoing triggers the discovery rule, and then cites cases allegedly contradicting that very rule.  In any event, Mattel misstates the "discovery rule" standard under California law.  In California, inquiry notice is triggered by a mere suspicion or any reason to suspect that wrongdoing has taken place.  See <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal. 3d 1103, 1111 (1988) ("[O]nce the plaintiff has a <u>suspicion</u> of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.") (emphasis added); <u>see also</u> <u>Fox v. Ethicon Endo-Surgery</u>, 35 Cal. 4th 797, 803 (2005) ("[A] cause of action accrues and the statute of limitations begins to run when the plaintiff has <u>reason to suspect</u> an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.") (emphasis added).  Contrary to Mattel's claims, the suspicion need not be of the specific claim eventually sued upon: "under California law, a plaintiff 'need not be aware of the specific facts necessary to establish the claim' in order for a cause of action to accrue.  Nor need he be aware of the particular legal theory that will support it.  His claim accrues 'when, simply put, he at least suspects ... that someone has done something wrong to him.'" <u>Soliman v. Philip Morris Inc.</u>, 311 F.3d 966, 971-72 (9th Cir. 2002) (internal citations omitted), citing <u>Norgart v. Upjohn Co.</u>, 21 Cal. 4th 383, 397

1   (1999) (quoing Jolly, 44 Cal. 3d at 1110); see also Jolly, 44 Cal. 3d at 1110 n.7 (the

2   "wrong" that plaintiff is to be aware of for purposes of the statute of limitations need not

3   be in any technical sense, but rather in accordance with its "lay understanding"); accord

4   Butler v. San Diego Dist. Attorneys Office, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27,

5   2007) (in California, "the statute of limitations begins to run when the plaintiff suspects or

6   should suspect that someone has done something wrong to him").

7

8   Mattel's reliance on Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1258, 1266 (N.D.

9   Cal. 1991), in support of its proposition that "that mere suspicion of wrongdoing will not

10  commence the running of the statute of limitations" has been already rejected.    See

11  Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1218 (10th Cir. 2000) (rejecting

12  plaintiff's theory, based in part on the Intermedics opinion cited by Mattel here, that the

13  statute does not begin to run until plaintiff has its "smoking gun" evidence), citing, inter

14  alia, Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634, 641 (N.D. Cal. 1993) (a follow-

15  up opinion to that relied upon by Mattel, rejecting the very position advocated by Mattel

16  here).  Similarly, Mattel's reliance on Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d

17  1030, 1043 (C.D. Cal. 2003), for the proposition that notice based on "hints, suspicions,

18  hunches or rumors" is insufficient to trigger the limitations period, is unavailing, as

19  Garamendi dealt with tolling of statute of limitations based on fraudulent concealment, not

20  with the general standard for inquiry notice.  Moreover, contrary to Garamendi, under

21  California law, "a suspicion of wrongdoing, coupled with a knowledge of the harm and its

22  cause" is sufficient to end tolling based on fraudulent concealment. Snapp & Assocs. Ins.

23  Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002);

24  see also Hynix Semiconductor Inc. v. Rambus Inc., 2007 WL 3284060, at *3 (N.D. Cal.

25  Nov. 2, 2007) ("[T]he fraudulent concealment doctrine does not toll the statute of

26  limitations, no matter what the defendant has done to conceal his wrongs, if a plaintiff has

27  a suspicion of wrongdoing and knowledge of the harm and its cause."); cf. Garamendi, 276

28

1   F. Supp. 2d at 1043 (relying on a decision by the D.C. Circuit, noting that "[n]o California

2   court appears explicitly to have adopted this formulation" of the rule).

3

4   Mattel faults the MGA Parties and Bryant for not including Mattel's claim that the MGA

5   Parties and Bryant fraudulently concealed the relevant facts.  However, to the extent there

6   is any evidentiary basis for inclusion of an instruction dealing with fraudulent concealment

7   in this case (and there is not), Mattel's proposed language is objectionable in that it asserts

8   that tolling based on fraudulent concealment ends only once Mattel has "near-actual"

9   knowledge of the wrongdoing at issue.  However, under California law, "a suspicion of

10  wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to end

11  tolling based on fraudulent concealment.  Snapp & Assocs. Ins. Servs., 96 Cal. App. 4th at

12  890-91 (2002); see also Platt Elec. Supply, Inc. v. EOFF Elec., Inc., __ F.3d __, 2008 WL

13  1722882, at *5 (9th Cir. Apr. 15, 2008) (inquiry notice ends tolling based on fraudulent

14  concealment); Soliman, 311 F.3d at 971-72 (9th Cir. 2002) (plaintiff "need not be aware of

15  the specific 'facts' necessary to establish the claim" for him to be on inquiry notice,  nor

16  need he be aware of the particular legal theory that will support it; his claim accrues

17  "when, simply put, he at least 'suspects … that someone has done something wrong' to

18  him.") (citations omitted).  Mattel's theory of fraudulent concealment is also improper to

19  the extent it suggests that fraudulent concealment by one defendant would necessarily toll

20  the statute as to another defendant not found culpable in the alleged concealment.  See

21  Sanchez v. S. Hoover Hosp., 18 Cal. 3d 93, 100 ("The rationale for the foregoing rule [of

22  fraudulent concealment] is that the culpable defendant should be estopped from profiting

23  by his own wrong to the extent that it hindered an 'otherwise diligent' plaintiff in

24  discovering his cause of action.") (first emphasis added) (citations omitted).

25

26

27

28

**Defense: Statute of Limitations (Copyright Infringement)**

Carter Bryant, Isaac Larian, MGA, and MGA (HK) contend that Mattel's copyright infringement claim was not filed within the time set by law.

To succeed on this defense, Carter Bryant, Isaac Larian, MGA, and MGA (HK) must prove that Mattel did not file its claims within three years of when Mattel discovered or reasonably could have discovered that MGA was asserting ownership over property to which Mattel had a copyright interest.

**Authority:** 17 U.S.C. § 507(b); <u>Polar Bear Prods., Inc. v. Timex Corp.</u>, 384 F.3d 700, 706 (9th Cir. 2004) (the statute of limitations is triggered when a "[plaintiff] [] discover[s], [or] reasonably could … have discovered, the infringement"); <u>Roley v. New World Pictures, Ltd.</u>, 19 F.3d 479, 481 (9th Cir. 1994) (copyright infringement claims accrue "when one has knowledge of a violation or is chargeable with such knowledge").

**Defense: Statute of Limitations (Copyright Infringement)**

**Mattel's Objection**

Mattel objects to this proposed instruction on the following grounds:

1.     Mattel objects to this instruction to the extent that it suggests that defendants' fraudulent concealment of the infringement does not toll the applicable statute of limitations.  *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983) ("A fraudulent concealment defense requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action.") (citation omitted).

2.     The instruction is also improper because it does not account for the "rolling" statute of limitations on copyright claims.  Controlling authority dictates that Mattel may recover for all acts of infringement that occurred within three years of filing suit, regardless of the date that the infringement commenced.  *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).

3.     This proposed instruction improperly assumes that ownership is sufficient to who infringement.  Rather, an infringement claim cannot accrue until Mattel had notice that defendants were infringing its copyrighted works, which required that Mattel had the ability to perform a substantial similarity analysis.

1 **Defense: Statute of Limitations (Copyright Infringement)**

2

3 **MGA Parties' and Bryant's Response**

4

5 As the MGA Parties showed, because Mattel's copyright infringement claim is essentially
6 a claim for ownership, the statute of limitations for that claim began to run upon MGA's
7 plain and express repudiation of Mattel's ownership claim in the property at issue.  See
8 Welles v. Turner Entm't Co., 503 F.3d 728, 734 (9th Cir. 2007); Minder Music Ltd. v.
9 Mellow Smoke Music Co., 1999 WL 820575, 52 U.S.P.Q. 2d 1700, 1701 (S.D.N.Y. 1999);
10 see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389-90 (6th
11 Cir. 2007).

12

13 As for Mattel's theory of fraudulent concealment, and to the extent there is any evidentiary
14 basis for inclusion of an instruction dealing with fraudulent concealment in this case (and
15 there is not), Mattel's theory fails to acknowledge that tolling based on fraudulent
16 concealment ends as soon as Mattel was on inquiry notice of the alleged infringement. See
17 Hynix Semiconductor Inc. v. Rambus Inc., 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2,
18 2007) ("[T]he fraudulent concealment doctrine does not toll the statute of limitations, no
19 matter what the defendant has done to conceal his wrongs, if a plaintiff has a suspicion of
20 wrongdoing and knowledge of the harm and its cause."); accord Eichman v. Fotomat Corp.,
21 880 F.2d 149, 157 (9th Cir. 1989) (applying similar rule to claims arising under federal
22 law).

23

24 Finally, Mattel's theory that an infringement claim cannot accrue until Mattel had notice
25 that defendants were infringing its copyrighted works, which required that Mattel had the
26 ability to perform a substantial similarity analysis, has no application here, as Mattel
27 concedes it had notice of infringement on its intellectual property similar to that at issue
28 here. See Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1521 (9th

1  Cir. 1983) (where plaintiff had "suspicion that at least one of his photographs had been
2  infringed … [, t]hat suspicion placed upon … [him] a duty to investigate further into
3  possible infringements of his copyrights [as to the other photographs]. Although …
4  [plaintiff] may not actually have conducted this further investigation, equity will impute to
5  a litigant knowledge of facts that would have been revealed by reasonably required further
6  investigation."). (Cf. Mattel's Statement of Genuine Issues Regarding MGA Parties'
7  [Proposed] Statement of Uncontroverted Facts and Conclusions of Law, at ¶ 47 (conceding
8  that several of Mattel's executives were on notice of potential infringement on Diva Starz).)
9  Moreover, as shown in the MGA Parties' summary judgment submissions, Mattel was on
10 notice that it may have had an ownership interest in BRATZ as soon as the prototypes
11 were exhibited at various toy fairs in January-March 2001, based on its constructive
12 knowledge that Bryant went to work for MGA, the timing of Bryant's departure, and
13 Mattel's general understanding that it takes more than three months to develop a new line
14 of dolls.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Defense: Statute of Limitations (Conversion)**

Carter Bryant, Isaac Larian, and MGA (HK) contend that Mattel's conversion claim was not filed within the time set by law.

To succeed on this defense, Isaac Larian, MGA (HK), and/or Carter Bryant must prove that Mattel did not file its claims within three years of the act of wrongfully taking the property that Mattel contends was converted.  The claim "accrues" whether or not Mattel actually knew of the acts at the time.

**Authority:** Cal. Civ. Proc. Code § 338(c); AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal. App. 4th 631, 639 (2006); Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 916 (1996).

**Defense: Statute of Limitations (Conversion)**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction on the following grounds:

1.      The proposed instruction improperly does not incorporate the discovery rule. "[W]hen the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff," the discovery rule applies. *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 639 (2006); *see also Orkin v. Taylor*, 487 F.3d 734, 741-42 (9th Cir. 2007) (holding that the discovery rule applies to conversion claims where the defendant conceals relevant facts, but affirming dismissal of claim where the plaintiff was on notice for more than 40 years before filing suit).

**Defense: Statute of Limitations (Conversion)**

**MGA Parties' and Bryant's Response**

Mattel's objection that this instruction does not incorporate the discovery rule is inapt. The discovery rule does not apply to conversion claims. Rather, "[u]nder California law, the general rule is well established: '[T]he statute of limitations for conversion is triggered by the act of wrongfully taking property.'" <u>AmerUS Life Ins. Co. v. Bank of America, N.A.</u>, 143 Cal. App. 4th 631, 639 (2006) (collecting cases). In fact, Mattel actually conceded that this is the appropriate measure. (<u>See</u> Mattel MSJ at 47 (conceding that the statute of limitations on a claim for conversion starts running "upon act of wrongfully taking property", citing <u>Bono v. Clark</u>, 103 Cal. App. 4th 1409, 1433 (2003).) Mattel conflates application of the discovery rule with the issue of fraudulent concealment, an equitable tolling doctrine, which is inappropriate. <u>See</u> <u>AmerUS Life Ins. Co.</u>, 143 Cal. App. 4th at 639 (noting that tolling is limited to fraudulent concealment). To apply the discovery rule via the theory of fraudulent concealment, Mattel first must establish that fraudulent concealment is supported by evidence and then request a separate instruction on its theory of tolling based on such fraudulent concealment.

Even if the inclusion of this tolling theory were appropriate here (and it is not), Mattel's theory on fraudulent concealment is contradictory. As is apparent from its previous objections, Mattel's view of fraudulent concealment is that it does not incorporate the discovery rule, but rather requires "near actual" knowledge. (<u>See, e.g.</u>, <u>supra</u>, Mattel's Objection to proposed instruction entitled "Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty).") However, in the preceding objection, Mattel appears to argue that application of fraudulent concealment would result in application of the discovery rule. <u>Cf.</u> <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal. 3d 1103, 1111 (1988) (stating the discovery rule as follows: "[o]nce the plaintiff has a <u>suspicion</u> of wrongdoing, and

therefore an incentive to sue, she must decide whether to file suit or sit on her rights") (emphasis added); see also Fox v. Ethicon Endo-Surgery, 35 Cal. 4th 797, 803 (2005) ("[A] cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.") (emphasis added).  Because Mattel cannot make up its mind on which theory of fraudulent concealment it wants to proceed under, that is yet another reason to deny inclusion of this theory in a straightforward instruction advising the jury that, as Mattel itself concedes, the statute of limitations for a claim on conversion generally starts running upon the occurrence of the underlying wrong.

**1**   **Defense: Statute of Limitations (Statutory Unfair Competition)**

**2**

**3**   Isaac Larian and MGA (HK) contend that Mattel's statutory unfair competition claim was

**4**   not filed within the time set by law.

**5**

**6**   To succeed on this defense, Isaac Larian and/or MGA (HK) must prove that Mattel did not

**7**   file its claims within four years of when the acts that Mattel contends constitute unfair

**8**   competition occurred. The claim "accrues" whether or not Mattel actually knew of the acts

**9**   at the time.

**10**

**11**   **Authority:** Cal. Bus. & Prof. Code § 17208; In re Conseco Ins. Co. Annuity Marketing &

**12**   Sales Practices Litig., Nos. C-05-04726 RMW, C-06-00537 RMW, 2007 WL 486367, at

**13**   *6 (N.D. Cal. Feb. 12, 2007) ("The 'discovery rule,' which delays accrual of certain

**14**   causes of action until the plaintiff has actual or constructive knowledge of facts giving rise

**15**   to the claim, does not apply to unfair competition actions."), citing Snapp & Assocs. Ins.

**16**   Servs., Inc. v. Robertson, 96 Cal. App. 4th 884, 891 (2002) (discovery rule does not apply

**17**   to unfair competition claims); Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd., 909 F.

**18**   Supp. 1353, 1363 (C.D. Cal. 1995) ("[T]he 'discovery rule' ... is inapplicable on this count

**19**   [for statutory unfair competition]; thus, the statute begins to run when cause of action

**20**   accrues, irrespective of whether plaintiff knew of its accrual"), aff'd, 113 F.3d 1258 (Fed.

**21**   Cir. 1997); see also Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178-79

**22**   (2000).

**23**

**24**

**25**

**26**

**27**

**28**

**Defense: Statute of Limitations (Statutory Unfair Competition)**

**Mattel's Objection**

Mattel objects to this proposed instruction on the following grounds:

1.      This proposed instruction is improper and misleading because statutory unfair competition is an equitable claim that is tried to the Court, not the jury.  *Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284-85 (2006); *see also Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1392 (1991) (holding there is no right to a jury trial in §17200 action seeking affirmative relief from credit card overlimit and late charges); *Okura & Co. (America), Inc. v. Careau Group*, 783 F. Supp. 482, 490 (C.D. Cal, 1991) (holding that there is no right to a jury trial in UCL claim brought in federal court).  The Court, therefore, and not the jury should resolve any challenge to the timeliness of the claim.

2.      The instruction misstates the law concerning accrual of statutory unfair competition actions.  California courts disagree whether the discovery rule applies to claims for statutory unfair competition.  *Compare Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002) (citations omitted) (statute "will probably run from the time a reasonable person would have discovered the basis for a claim.") *with Snapp & Assocs. Ins. Servs., Inc. v. Robertson*, 96 Cal App. 4th 884 (2002) (discovery rule does not apply); *see also Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 634 n.7 (2007) (assuming but not deciding that the discovery rule applies, and noting that the appellate courts are in conflict over the issue).  The Court should apply the discovery rule because this action involves a breach of duty by a fiduciary.  *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1424 (2003) ("Delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust such as that involving a fiduciary, confidential or privileged relationship.").

3.      The instruction also states improperly that only Larian and MGA (HK) need to prove that the statute of limitations had elapsed.  While this is likely a typographical

1  error, the instruction should be changed to state that all defendants that assert a defense to

2  Mattel's statutory unfair competition claim must establish facts at trial sufficient for a

3  finding that the claim is time-barred.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1**  **Defense: Statute of Limitations (Statutory Unfair Competition)**

**2**

**3**  **MGA Parties' and Bryant's Response**

**4**

**5**  While the MGA Parties and Bryant had proposed the preceding instruction out of

**6**  abundance of caution, now that Mattel agrees that the question is for this Court to resolve,

**7**  there are all the more reasons to have it resolved based on the parties' pending submissions

**8**  in support of their respective summary judgment motions.

**9**

**10**  At the same time, while Mattel acknowledges that there is a split of authority as to whether

**11**  the discovery rule applies to the statute of limitations governing its claim for statutory

**12**  unfair competition, Mattel fails, however, to acknowledge that the weight of authority is

**13**  against application of the discovery rule to claims for statutory unfair competition; indeed,

**14**  Mattel's sole authority to the contrary only states that the discovery rule "probably"

**15**  applies, Mass. Mutual Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1295 (2002);

**16**  but see In re Conseco Ins. Co. Annuity Marketing & Sales Practices Litig., 2007 WL

**17**  486367, at *6 (N.D. Cal. Feb. 12, 2007) ("The 'discovery rule,' which delays accrual of

**18**  certain causes of action until the plaintiff has actual or constructive knowledge of facts

**19**  giving rise to the claim, does not apply to unfair competition actions.") (citing Snapp &

**20**  Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884,

**21**  891 (2002)); Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd., 909 F. Supp. 1353, 1363

**22**  (C.D. Cal. 1995) ("[T]he 'discovery rule' ... is inapplicable on this count [for statutory

**23**  unfair competition]; thus, the statute begins to run when cause of action accrues,

**24**  irrespective of whether plaintiff knew of its accrual...."), aff'd, 113 F.3d 1258 (Fed. Cir.

**25**  1997).  Mattel's reliance on Moreno v. Sanchez, 106 Cal. App. 4th 1415, 1424 (2003), is

**26**  unavailing – or at least premature – given that Bryant did not owe any fiduciary duty to

**27**  Mattel, as demonstrated in Bryant's summary judgment papers and as urged in Bryant's

**28**  pending Motion for Reconsideration.  See Am. Top English v. Lexicon Mktg. (USA), Inc.,

1  2004 WL 2271838, at *7 (N.D. Ill. Oct. 4, 2004) (rejecting application of <u>Moreno</u> because
2  plaintiff failed to establish that fiduciary duty was owed by the defendant).  Indeed, courts
3  have refused to apply the discovery rule to claims for statutory unfair competition even
4  where plaintiffs, such as Mattel here, allege that the defendant owed a fiduciary duty to
5  them. <u>See, e.g.</u>, <u>In re Conseco Ins. Co.</u>, 2007 WL 486367, at *6 (refusing to apply delayed
6  discovery rule to statutory unfair competition claim, even though plaintiffs also alleged a
7  claim for breach of fiduciary duty).

8

9  Finally, the non-inclusion of MGA in the preceding instruction is not a typographical error,
10 as Mattel's summary judgment papers confirm that its claim for statutory unfair
11 competition is not asserted against MGA in Phase One. (<u>See</u> Mattel MSJ at 50:18-20.)
12 Further, pursuant to the Court's April 25, 2008 Order, it appears there is no remaining
13 statutory unfair competition asserted against Bryant.  However, as noted in the submitted
14 instructions, to the extent the Court disagrees, Bryant joins in this instruction.

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**<u>Laches: Introduction</u>**

Isaac Larian, Carter Bryant, MGA, and MGA (HK) contend that Mattel's claims are barred because Mattel delayed unreasonably in filing suit such that the defendants were prejudiced.   The legal term for the doctrine of unreasonable delay is "laches."   This doctrine is based on the rule that "equity aids the vigilant."   Accordingly, those who neglect their rights may be precluded from obtaining relief.

**Authority:** 11 B.E. Witkin, <u>Summary of California Law: Equity</u> § 14 (4th ed. 2006).

**Laches: Introduction**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Laches on the following grounds:

1.      Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, laches is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial. *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law.  *See, e.g.*, *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("a litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989) (equitable issues may be tried separately from legal issues without infringing the right to jury trial under the Seventh Amendment); *Danjac LLC v. Sony Corp.*, 263 F.3d 942, 962-63 (9th Cir. 2001) (holding that there is no right to jury on equitable defense of laches in copyright arena); *see also Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 899 (noting in part that laches is equitable); 11 B.E. Witkin, SUMMARY OF CALIFORNIA LAW, EQUITY § 14 (a)(2) (9th ed. 1987).

2.      Moreover, laches is a defense only to equitable, not legal, actions.  As California courts have recognized, "[t]he equitable doctrine of laches has a legal equivalent in the statute of limitations. To allow a laches defense in a legal action would be to override a time limit mandated by the Legislature." *Unilogic v. Burroughs Corp.*, 10 Cal. App. 4th 612, 619 (1992).  This proposed instruction is thus inappropriate.  At most, the only state-law equitable claims involved in this dispute are for unfair competition and declaratory relief, and even these claims are arguably legal because the underlying claim is to establish that all profits from Bratz should be placed in a constructive trust – an action

1  that clearly resembles an action at law for money damages.  *See, e.g.*, *Wells Fargo Bank v.*
2  *Bank of America*, 32 Cal. App. 4th 424, 439 (1995) ("whether laches is available in a
3  declaratory relief proceeding depends upon the nature of the underlying claim.").

4      3.      Additionally, defendants' proposed instruction ignores that, where a plaintiff
5  files suit within the limitations period, "the strong presumption is that laches is
6  inapplicable."  *Jarrow v. Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835-36 (9th
7  Cir. 2002).  *See also Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041, n.8 (9th Cir.
8  2000) ("When a limitation on the period for bringing suit has been set by statute, laches
9  will generally not be invoked to shorten the statutory period.").

10      4.      *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order
11  and Mattel's objections, that a laches instruction should be given to a jury, it should be as
12  follows:

13              Mattel's declaratory relief claim against Bryant, MGA, MGA
14              (HK) and/or Larian is barred by the doctrine of laches if you find that
15              defendants have proven that:

16                  1.      Mattel delayed in filing its lawsuit; and

17                  2.      That delay was unreasonable because Mattel actually
18              know of its claims long before it sued defendants; and

19                  3.      Mattel's delay in filing suit was prejudicial to Bryant,
20              MGA, MGA (HK) and Larian because they took actions or suffered
21              consequences that they would not have, had Mattel brought suit much
22              sooner, which have been detrimental or damaging to defendants.

23                  4.      I instruct you that if Mattel filed its claims within the
24              applicable statute of limitations period, there is a strong presumption
25              that laches does not apply.

26

27  **Authority**:  *Granite State Ins. Co. v. Smart Modular Techns., Inc.*, 76 F.3d 1023,
28  1027 (9th Cir. 1996); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th

1  Cir. 1989); *Jarrow v. Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835-36 (9th Cir.

2  2002); *Kling v. Hallmark Cards Inc*., 225 F.3d 1030, 1041, n.8 (9th Cir. 2000); 11 B.E.

3  WITKIN, SUMMARY OF CALIFORNIA LAW, EQUITY § 14 (a)(2) (9th ed. 1987).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1  **Laches: Introduction**

2

3  **MGA Parties' and Bryant's Response**

4

5  First, any objection based on the Court's April 25, 2008 Order is premature because that

6  Order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant

7  understand it, the Court simply stated that certain defenses are equitable and did not

8  resolve the issue of whether those defenses should still be tried to the jury, but deferred

9  that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4.

10  Any objection based on the Court's April 25, 2008 Order is also premature in light of

11  Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard

12  May 19, 2008.

13

14  Second, contrary to Mattel's objection, laches is a defense that should be submitted to the

15  jury. At a minimum, whether delay is unreasonable and whether a party has been

16  prejudiced by such delay are fact questions for the jury. See Westinghouse Elec. Corp. v.

17  General Circuit Breaker & Elec. Supply, 106 F.3d 894, 899 (9th Cir. 1997) (upholding

18  district court's ruling where jury decided questions central to defenses of laches, equitable

19  estoppel, acquiescence, and unclean hands); see also U.S. Fidelity & Guar. Co. v. Lee Invs.

20  LLC, 2008 WL 746541, at *13 (E.D. Cal. Mar. 18, 2008) (laches, estoppel, waiver and

21  unclean hands submitted to jury); San Francisco Bay Area Rapid Transit Dist. v. Spencer,

22  2007 WL 1450350, at *10 (N.D. Cal. May 14, 2007) (laches submitted to jury).  Even if

23  the Court chooses to make the ultimate decision as to whether this defense will bar

24  Mattel's claims (although courts routinely submit the entire defense to the jury), the jury

25  must still make the factual determinations that underlie the Court's decision.  Because the

26  facts underlying this defense are inextricably intertwined with the facts underlying

27  Mattel's claims, taking those factual determinations away from the jury would violate

28  defendants' Seventh Amendment jury rights, as explained in detail in the opposition to

1  Mattel's Motion in Limine No. 4.   Accordingly, the jury should be given a proper
2  framework for making those factual determinations.

3

4  As to Mattel's assertion that laches only applies to certain "equitable" state law claims,
5  Mattel's "counter-instruction", along with its objections, ignores that laches is also a
6  defense to copyright actions.   Indeed, courts have stated quite emphatically:   "[i]t is
7  inequitable for the [alleged] owner of a copyright, with full notice of an intended
8  infringement, to stand inactive while the proposed infringer spends large sums of money in
9  its exploitation, and to intervene only when his speculation has proved a success.   Delay
10 under such circumstances allows the owner to speculate without risk with the other's
11 money; he cannot possibly lose, and he may win."   Haas v. Leo Feist, Inc., 234 F. 105, 108
12 (S.D.N.Y. 1916); see also Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001);
13 Watermark Publishers v. High Tech. Sys., Inc., 1997 WL 717677, 44 U.S.P.Q.2d 1578,
14 1583-84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in
15 suing).   In addition to being inappropriate, Mattel's objection is disingenuous: Mattel
16 concedes that this defense is applicable to copyright in its motion for partial summary
17 judgment.   (See Mattel MSJ at n.138.)

18

19 Mattel's proposed counter-instruction is patently inadequate.   It does not explain the
20 concept of laches, nor the types or prejudice that would justify application of the doctrine.
21 Mattel seeks to present the defense as so vague and obtuse that the jury will simply ignore
22 it.   In addition, Mattel's attempt to have this Court tell the jury that there is a presumption
23 that laches does not apply because the suit was filed within the limitations period is
24 baseless.   It is undisputed that Mattel's claims were not filed within the limitations period
25 and may survive if (and only if) the Court permits tolling under the relation back or some
26 other equitable doctrine.   Thus, the cases holding "[i]f plaintiff filed suit within the
27 analogous limitations period, the strong presumption is that laches is inapplicable" are
28 irrelevant as Mattel's claims are facially time-barred and Mattel relies on relation-back and

tolling theories to revive them. Where, as here, a plaintiff files suit <u>after</u> the limitations period, the presumption is reversed. <u>Jarrow Formulas v. Nutrition Now</u>, 304 F.3d 829, 838 (9th Cir. 2002).  Accordingly, if Mattel's instruction is to be given, Paragraph 4 should be re-written to read, "I instruct you that unless Mattel proves that it filed its claims within the applicable statute of limitations period, there is a strong presumption that the laches defense applies."

**<u>Defense: Laches</u>**

Mattel's suit against Bryant, MGA, MGA (HK), and/or Larian is barred by the doctrine of laches if you find that:

1.   Mattel's delay in filing suit was unreasonable in light of Mattel's knowledge of its claims against Bryant, MGA, MGA (HK), and/or Larian; and

2.   Mattel's delay was prejudicial to Bryant MGA, MGA (HK), and/or Larian in light of investments of time and money that MGA and/or Larian made; *or*

3.   Mattel's delay was prejudicial to Bryant, MGA, MGA (HK), and/or Larian in that substantial evidence has been lost and memories faded in the years since Mattel was first on notice of its claims.

**Authority:**   <u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942, 954 (9th Cir. 2001) ("delay is impermissible when its purpose is to capitalize on the value of the alleged infringer's labor, by determining whether the infringing conduct will be profitable"); <u>see also</u> <u>Watermark Publrs. v. High Tech. Sys., Inc.</u>, No. 95-3839-IEG (CGA), 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in suing).

**Defense: Laches**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Laches on the following grounds:

1.     Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, laches is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial. *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law.  *See* Mattel's Objection to Defendants' Proposed Jury Instruction re Laches: Introduction.

2.     In any event, defendants' instruction is inaccurate because it does not inform the jury that the laches defenses only applies, if at all, to Mattel's declaratory relief claim, to the extent it is equitable in nature.

3.     The proposed instruction fails to notify the jury that if they determine that Mattel's declaratory relief claim was filed within the applicable statute of limitations period, there is a strong presumption that a laches defense is unavailable.

4.     This proposed instruction also misstates the law in paragraphs two and three, which are unsupportable.  The standard is not merely whether defendants made investments, or whether memories have faded.

5.     *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that a laches instruction should be given to a jury, it should give Mattel's proposed counter-instruction set forth in Mattel's Objection to Defendants' Proposed Jury Instruction re Laches: Introduction.

**Authority**:  *Granite State Ins. Co. v. Smart Modular Techns., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989); *Jarrow v. Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835-36 (9th Cir.

1  2002); *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041, n.8 (9th Cir. 2000); *Russell v.*
2  *Price*, 612 F.2d 1123, 1125-26 (9th Cir. 1979); *Danjaq, LLC v. Sony Corp.*, 263 F.3d 942,
3  955 (9th Cir. 2001); 11 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW, EQUITY §
4  14 (a)(2) (9th ed. 1987).

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Defense: Laches**

**MGA Parties' and Bryant's Response**

First, any objection based on the Court's April 25, 2008 Order is premature because that order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant understand it, the Court simply stated that certain defenses are equitable and did not resolve the issue of whether those defenses should still be tried to the jury, but deferred that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4. Any objection based on the Court's April 25, 2008 Order is also premature in light of Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard May 19, 2008.

Second, contrary to Mattel's objection, laches is a defense that should be submitted to the jury.  At a minimum, whether delay is unreasonable and whether a party has been prejudiced by such delay are fact questions for the jury  Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, 106 F.3d 894, 899 (9th Cir. 1997) (upholding district court's ruling where jury decided questions central to defenses of laches, equitable estoppel, acquiescence, and unclean hands); see also U.S. Fidelity & Guar. Co. v. Lee Invs. LLC, 2008 WL 746541, at *13 (E.D. Cal. Mar. 18, 2008) (laches, estoppel, waiver and unclean hands submitted to jury); San Francisco Bay Area Rapid Transit Dist. v. Spencer, 2007 WL 1450350, at *10 (N.D. Cal. May 14, 2007) (laches submitted to jury).  Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to

1    Mattel's Motion in Limine No. 4.   Accordingly, the jury should be given a proper

2    framework for making those factual determinations.

3

4    As to Mattel's assertion that laches only applies to certain "equitable" state law claims,

5    Mattel's "counter-instruction", along with its objections, ignores that laches is also a

6    defense to copyright actions.   Indeed, courts have stated quite emphatically:   "[i]t is

7    inequitable for the [alleged] owner of a copyright, with full notice of an intended

8    infringement, to stand inactive while the proposed infringer spends large sums of money in

9    its exploitation, and to intervene only when his speculation has proved a success.   Delay

10   under such circumstances allows the owner to speculate without risk with the other's

11   money; he cannot possibly lose, and he may win." Haas v. Leo Feist, Inc., 234 F. 105, 108

12   (S.D.N.Y. 1916); see also Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001);

13   Watermark Publishers v. High Tech. Sys., Inc., 1997 WL 717677, 44 U.S.P.Q.2d 1578,

14   1583-84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in

15   suing).   In addition to being inappropriate, Mattel's objection is disingenuous: Mattel

16   concedes that this defense is applicable to copyright in its motion for partial summary

17   judgment.   (See Mattel MSJ at n.138.)

18

19   Mattel's suggestion that "where a plaintiff files suit within the limitations period, 'the

20   strong presumption is that laches is inapplicable'" is uncontroversial, but ignores that

21   Mattel has failed to file its claims within any applicable statutes of limitations.   (See MGA

22   MSJ at 15-34.) Where, as here, a plaintiff files suit after the limitations period, the

23   presumption is reversed and there is a strong presumption that the laches defense does

24   apply.   See, e.g., Jarrow Formulas v. Nutrition Now, 304 F.3d 829, 838 (9th Cir. 2002).

25   Furthermore, delay of four years is enough to bar a copyright claim by the doctrine of

26   laches. See Watermark Publishers, 1997 WL 717677, 44 U.S.P.Q.2d at 1583-84 (barring

27   plaintiff's claims on laches grounds after 4 year delay in suing).   Thus, if Mattel's

28

1    instruction were to be given, it should be re-written to reflect the comments of defendants
2    provided in response to the preceding instruction.

3

4    Mattel's objection that the test for "prejudice" is misstated is completely unsupported, as
5    Mattel cites no contrary law. Courts recognize two chief forms of prejudice: evidentiary
6    prejudice and expectations-based prejudice. Danjaq, 263 F.3d at 955.    Evidentiary
7    prejudice involves "lost, stale, or degraded evidence, or witnesses whose memories have
8    faded or who have died." Id.   Expectations-based prejudice involves a "showing [by
9    defendant] that it took actions or suffered consequences that it would not have, had the
10   plaintiff brought suit promptly." Id.   Either form, standing alone, meets the prejudice
11   prong. Id.

12

13   Further, MGA Parties and Bryant incorporate their response to Mattel's proposed counter-
14   instruction set forth above here.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Affirmative Defense – Waiver**

Bryant, Larian, MGA and MGA (HK) contend that Bryant was not bound by his Employment Agreement because Mattel gave up its right to enforce its provisions including sections 2 and 3.  Bryant, Larian, MGA, and MGA (HK) also contend that Bryant was not bound by the Questionnaire because Mattel gave up its right to enforce any on-going obligations in the Questionnaire.  Mattel denies both contentions and believes that it did not relinquish such rights.

You may find that Mattel waived any right to seek damages for Carter Bryant's alleged breaches arising out of his Employment Agreement or the Questionnaire if you find that Mattel acted inconsistently with an intent to enforce its employment agreements and that a reasonable person would have believed that Mattel did not intend to enforce its employment agreements.

A waiver may be express, based on the words of the waiving party, or implied, based on conduct so inconsistent with the intent to enforce a right as to induce a reasonable belief that such right has been relinquished.  Waiver does not require any act or conduct by the other party.

To show a waiver, Bryant, MGA, MGA (HK), and/or Larian must prove that:

1.   Mattel was aware of its employees' alleged breaches of their employment agreements; and

2.   Mattel indicated, by its words, actions or silence that it did not intend to enforce its employment agreements.

313

**Authority:**  CACI No. 336; <u>Waller v. Truck Ins. Exch.</u>, 11 Cal. 4th 1, 31 (1995); <u>see also</u> <u>Veeck v. S. Bldg. Code Congress Int'l Inc.</u>, 241 F.3d 398, 409 (5th Cir. 2001) ("A right such as copyright may be waived by inaction."); <u>Davis v. Blue Cross of N. Cal.</u>, 25 Cal. 3d 418 (1979) (carrier's inaction amounted to a waiver of its right to demand arbitration).

**Affirmative Defense – Waiver**

**Mattel's Objection**

Mattel objects to Defendants' proposed instruction regarding Waiver for the
following reasons:

1.     Defendants' proposed jury instruction is contrary to the Court's April
25, 2008 Order.  As recognized by the Court, waiver is an equitable defense to be tried to
the Court, not the jury, and the Court has deferred ruling on this affirmative defense until
after trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case
law.  *See, e.g., McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004) (waiver
is an equitable defense); *Granite State Ins. Co. v. Smart Modular Techns.*, 76 F.3d 1023,
1027 (9th Cir. 1996) ("a litigant is not entitled to have a jury resolve a disputed affirmative
defense if the defense is equitable in nature.").  That defendants' equitable defenses lack
issues common to the legal questions to be decided by the jury in Phase 1 (*i.e.*, Mattel's
claims for breach of contract, breach of fiduciary duty, breach of the duty of loyalty,
conversion, intentional interference with contract, aiding and abetting, and unfair
competition) further compels the result that the defense should be heard by the Court.  *See*
Mattel, Inc.'s Motion *in Limine* No. 4 to Preclude Introduction to Jury of Evidence and
Testimony Relating to Equitable Defenses to be Tried by Court, at 4.

2.     Although defendants cite CACI No. 336 as authority for their proposed
instruction, it deviates from the model instruction.  Defendants omit the "clear and
convincing" evidentiary standard set forth in the model instruction.  In addition, defendants
fail to set forth accurately the standard for waiver, which requires "the intentional
relinquishment of a known right with knowledge of its existence and the intent to
relinquish it."  *U.S. v. King Features Entm't Inc*., 843 F.2d 394, 399 (9th Cir. 1988)
(citations omitted).  Defendants require only that "Mattel acted inconsistently with an
intent to enforce its employment agreements" and impose a "reasonable person" standard –

1  not clear and convincing – to determine whether Mattel intended to enforce its
2  employment agreements.  This is clearly in error.

3       3.    Defendants attempt to extend the waiver standard to include Mattel's
4  awareness of "its employees alleged breaches of their employment agreements," rather
5  than limiting it to Bryant's conduct, as required by waiver law.  Equally as problematic,
6  defendants claim that jurors may find waiver by Mattel's "silence" regarding Bryant's
7  employment agreement – a clear departure from the requirement that Mattel must freely
8  and knowingly have given up its right to have Bryant perform his obligations. Defendants'
9  standard has been clearly repudiated by the case law. *See Novell Inv. v. Weird Stuff*, No.
10  C92-20467 JW/EAL, 1994 WL 16458729 (N.D. Cal. 1993) ("a failure to act, without
11  more, is insufficient evidence" to support a waiver claim).

12      4.    *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order
13  and Mattel's objections, that a waiver instruction should be given to a jury, it should be as
14  follows:

15        Carter Bryant claims that he did not have to perform his obligations under the
16   Inventions Agreement and/or the Conflict of Interest Questionnaire because Mattel
17   gave up its right to enforce those obligations.  This is called a "waiver."

18      To succeed, Mr. Bryant must prove both of the following by clear and
19  convincing evidence:

20      1.    That Mattel knew what Mr. Bryant was obligated to do under the
21  Inventions Agreement and/or the Conflict of Interest Questionnaire; and

22      2.    That Mattel freely and knowingly gave up its right to have Mr. Bryant
23  perform those obligations.

24      A waiver may be oral or written or may arise from conduct that shows that
25  Mattel gave up this right.

26      If Mr. Bryant proves that Mattel gave up its right to Mr. Bryant's performance
27  of his obligations under the Inventions Agreement and/or the Conflict of Interest
28  Questionnaire, then Mr. Bryant was not required to perform those obligations.

1

2    **Authority:**  CACI No. 336.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Affirmative Defense – Waiver**

**MGA Parties' and Bryant's Response**

First, any objection based on the Court's April 25, 2008 Order is premature because that order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant understand it, the Court simply stated that certain defenses are equitable and did not resolve the issue of whether those defenses should still be tried to the jury, but deferred that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4. Any objection based on the Court's April 25, 2008 Order is also premature in light of Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard May 19, 2008.

Second, Mattel's objection that the affirmative defense of waiver should not be placed before the jury ignores long-established precedent to the contrary.  "Whether there has been a waiver is usually regarded as a question of fact to be determined by the jury, or by the trial court if there is no jury."  Posner v. Grunwald-Marx, Inc., 56 Cal. 2d 169, 189 (1961) (internal quotations and citations omitted); see also Bickel v. City of Piedmont, 16 Cal. 4th 1040, 1052 (1997) ("Whether there has been a waiver is a question of fact."), abrogated on other grounds, DeBerard Properties, Ltd. v. Lim, 20 Cal. 4th 659, 668 (1999). Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

1

2

3   Mattel's objection, and its counter-instruction, ignores that Mattel's waiver here may be

4   proven by establishing that: (1) Mattel was aware of its employees' alleged breaches of

5   their employment agreements, i.e., their moonlighting and creation of independent artistic

6   works; and (2) Mattel indicated, by its words, actions or silence that it did not intend to

7   enforce its employment agreements. The defendants' modification of the model instruction

8   to reflect that is entirely appropriate. In proposing jury instructions, the parties are

9   permitted to modify the language of any model instruction to make it less confusing or

10  more appropriate in the context of a particular case.  See McDowell v. Calderon, 130 F.3d

11  833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model

12  Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered

13  out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do

14  not come down from any mountain or rise up from any sea.  Their precise wording,

15  although extremely useful, is not blessed with any special precedential or binding authority.

16  This description does not denigrate their value, it simply places them in the niche where

17  they belong.").   Indeed, modification is sometimes necessary to make an instruction

18  accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir.

19  1992) (approving modification of Ninth Circuit model instruction to include additional

20  elements, noting that "[h]ad the district court merely read the model jury instruction, it

21  would have committed plain error, since that instruction makes no reference whatsoever to

22  knowledge or intent.").

23

24  Mattel objection also ignores that waiver may be express, based on the words of the

25  waiving party, or implied, based on conduct so inconsistent with the intent to enforce a

26  right as to induce a reasonable belief that such right has been relinquished; moreover,

27  waiver does not require any act or conduct by the other party. See Waller v. Truck Ins.

28  Exch., 11 Cal. 4th 1, 31 (1995).

1

2  Further, Mattel misstates the law when it asserts that waiver cannot be effected by inaction,

3  including waiver of a copyright. See Veeck v. S. Bldg. Code Congress Int'l Inc., 241 F.3d

4  398, 409 (5th Cir. 2001) ("A right such as copyright may be waived by inaction."); see

5  also Davis v. Blue Cross of N. Cal., 25 Cal. 3d 418 (1979) (carrier's inaction amounted to

6  a waiver of its right to demand arbitration). Mattel's reliance on Novell Inc. v. Weird Stuff,

7  Inc., 0094 WL 16458729 (N.D. Cal. Aug. 2, 1993) (which Mattel consistently and

8  incorrectly cites as found at "1994 WL 16458729"), is unavailing, as the court there found

9  that there were no disputed facts supporting a waiver defense when Novell had taken the

10  affirmative steps of disposing of its products and verbally informing defendants that it had

11  no intention of waiving copyright.  Mattel has taken no such steps.

12

13  In addition, Mattel's proposed counter instruction fails to inform the jury 1) that waiver

14  may be established if Mattel acted inconsistently with an intent to enforce its employment

15  agreements and that a reasonable person would have believed that Mattel did not intend to

16  enforce its employment agreements; 2) that waiver may be implied based on conduct so

17  inconsistent with the intent to enforce a right as to induce a reasonable belief that such

18  right has been relinquished; and 3) that waiver does not require any act or conduct by the

19  other party; and 4) that waiver can be effected by silence.

20

21

22

23

24

25

26

27

28

**Affirmative Defense – Consent**

If you find that Mattel consented to its employees moonlighting and developing their own artistic work, you must find for Carter Bryant, Isaac Larian, MGA, and MGA (HK) with respect to claims arising out of Bryant's alleged violations of his Employment Agreement.

Consent is the actual or apparent willingness for conduct of another to occur.

Actual consent may be expressed in words or acts, silence or inaction, when the circumstances or other evidence establish that the silence or inaction is intended to give consent; actual consent need not be communicated to the person taking the alleged wrongful act.

Apparent consent exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate consent, and in fact so understood by the person doing the alleged wrongful act.

**Authority:** Cal. Civ. Code § 3515; CACI No. 1302 (2008) (as modified).

**Affirmative Defense – Consent**

**Mattel's Objection**

Mattel objects to Defendants' proposed instruction regarding Consent on the following grounds:

1.      Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, consent is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law.  *See, e.g.*, *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 279 (9th Cir. 1976) (*in pari delicto* and the closely related defenses of consent and unclean hands are equitable in nature); *Granite State Ins. Co. v. Smart Modular Techns.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("a litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

2.      Defendants' proposed instruction also erroneously states that the jury may find in favor of Carter Bryant on this defense if "Mattel consented to its employees moonlighting and developing their own artistic work."  This is contrary to law.  The Ninth Circuit has stated that a litigant need not choose between pursuing all offenders or none at all.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (9th Cir. 2007).  While this holding arose in the waiver of copyright context, it applies with equal force to consent, particularly since defendants' consent theory is predicated on the same facts as its waiver argument.  (*See* Carter Bryant's Responses to Mattel, Inc's Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses ("Bryant's Responses") Section E at 50 (construing consent claim as based on "the equitable doctrine of waiver.").  (*Compare* Bryant's Responses, Section B at 32-37 *with* Section E at 50-55 (copying and pasting virtually identical pages)).  Moreover, defendants ignore the requirement embodied in California law that "the consent given must have been

322

1  to the *very act or circumstance* that caused the harm giving rise to the action."  2

2  SCHWING, CALIFORNIA AFFIRMATIVE DEFENSES § 32:3 at 197 (2007) (citation

3  omitted) (emphasis added).  The conduct of other Mattel employees has no bearing on the

4  "very act or circumstance" of Bryant's alleged breach of his legal obligations.

5          3.      The proposed instruction is erroneous and unintelligible to the extent it

6  purports to inform the jury that "consent need not be communicated to the person taking

7  the alleged wrongful act."  Neither of the authorities cited by defendants support this

8  erroneous statement of the law.

9          4.      This proposed instruction is misleading and prejudicial to Mattel because

10  defendants purport to inform the jury that "silence or inaction" may be sufficient to

11  establish consent but fail to explain that is not the case when the "apparent consent" was

12  "obtained through . . . fraud [or] mistake."  *Greenawalt v. Rogers*, 151 Cal. 630, 635

13  (1907).  Mere silence or inaction due to a defendant's fraudulent omissions or through

14  mistake of fact may not support a consent defense, and it is misleading for defendants to

15  suggest to the jury otherwise.

16          5.      The model instruction cited by defendants is inapplicable because it relates to

17  the element of a claim for battery that requires a plaintiff to prove a lack of consent.  *See*

18  CACI No. 1302.

19          6.      *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order

20  and Mattel's objections, that a consent instruction should be given to a jury, it should be as

21  follows:

22              The defendants claim that Mattel consented to the wrongful conduct at

23              issue in Mattel's claims against the defendants in this case.  To prevail on

24              this affirmative defense, the defendants must prove that Mattel knew of the

25              defendants' wrongful conduct and consented to such conduct, with such

26              consent obtained absent any fraud or mistake.

27

28

1     **Authority:**  2 Schwing, *California Affirmative Defenses*, § 32:3, at 197 (2007)  ("To

2  be a defense, the consent given must have been to the very act or circumstances that

3  caused the harm giving rise to the action.") (citation omitted); *Greenawalt v. Rogers*, 151

4  Cal. 630, 635 (1907 ("An apparent consent is not real or free when obtained through . . .

5  fraud [or] mistake.").

**Affirmative Defense – Consent**

**MGA Parties' and Bryant's Response**

First, any objection based on the Court's April 25, 2008 Order is premature because that order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant understand it, the Court simply stated that certain defenses are equitable and did not resolve the issue of whether those defenses should still be tried to the jury, but deferred that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4. Any objection based on the Court's April 25, 2008 Order is also premature in light of Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard May 19, 2008.

Second, MGA Parties' and Bryant's affirmative defense of consent is a question of fact that should be tried to the jury. See Posey v. Leavitt, 229 Cal. App. 3d 1236, 1244 n.4 (1991) ("[F]actual issues raised by the consent defense would be properly triable by the jury…").  Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims, the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

Mattel's reliance on Metro-Goldwyn-Mayer Studios v. Grokster, Ltd., 518 F. Supp. 2d 1197 (9th Cir. 2007), is unavailing. There, the Ninth Circuit rejected the notion that to seek an injunction, MGM had to first show that it pursued every copyright infringer on the internet. Here, Mattel failed to raise any objections to large numbers of its employees

moonlighting despite its knowledge of this activity, and did not conduct a single investigation into this conduct.  Mattel easily could have controlled its employees.  This is not a matter of a company failing to pursue every possible claim again an almost infinite number of violations on the internet.  Mattel was not selectively enforcing its employment contracts – it was not enforcing the contracts at all.  By affirmatively declining to enforce its employment contracts, Mattel has taken action inconsistent with the intent to enforce its rights.

There is no evidence that the conduct in question was procured by any fraud or mistake and Mattel has never stated that it has a basis to argue such to the jury; thus, it amounted to apparent consent and there is no basis to instruct the jury on fraud or mistake. As Mattel's denial that consent could be based on silence or inaction is merely based on its assertion that such a consent would be invalid if procured by fraud or mistake, it is entirely appropriate to instruct the jury that consent could be based on silence or inaction. Cf. Restatement (Second) of Torts § 892(2) (1979) ("If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact.").

Moreover, the conduct in question was unquestionably relevant to whether Bryant was reasonable in believing that Mattel consented to his conduct, which was the exact same conduct as the other moonlighting employees' in question. This explains why Mattel's assertion that consent must have been given to "the very act or circumstance that caused the harm giving rise to the action" has no relevance here, as there is no evidence that Bryant should have expected "special treatment" and therefore somehow suspect that his conduct would be treated any differently than the same conduct undertaken by similarly situated employees.

1   Indeed, there is no legal support for Mattel's position that the only relevant conduct is
2   Mattel's conduct towards Bryant. The relevant question here is whether the Mattel's
3   conduct was such that Bryant was reasonable in believing that Mattel consented to
4   independently creating artistic works and/or moonlighting. The fact that Mattel allowed
5   its employees, who signed the same agreement as Bryant, to independently create artistic
6   works and moonlight without ever taking any action is clearly relevant to whether it was
7   reasonable for Bryant to conclude that Mattel consented to him engaging in the same
8   conduct.

9
10  Mattel's objection to the model instruction used is likewise unavailing. While the CACI
11  No. 1302 is found in the context of assault and battery, the sources and authority include
12  more widely applicable tort defenses, such as California Civil Code section 3515, which
13  provides: "He who consents to an act is not wronged by it." The sources also include the
14  Restatement (Second) of Torts, Section 892 – found in Division 12 "Defenses Applicable
15  To All Tort Claims." This section provides, <u>inter alia</u>, that "(1) Consent is willingness in
16  fact for conduct to occur. It may be manifested by action or inaction and <u>need not be</u>
17  <u>communicated to the actor</u>." Rest. 2d Torts § 892 (1979) (emphasis added).

18
19  Mattel's counter-instruction is wholly insufficient as it does not provide any explanation of
20  what consent is or how it may be manifested. In particular, it does not convey to the jury
21  that consent need not be express, does not explain apparent consent, and does not explain
22  that the consent need not be communicated to the actor.

23
24
25
26
27
28

**Estoppel—Definition**

Whenever a party has, by his own statement or conduct, deliberately led another to believe a particular thing to be true and to act upon such belief, he is not permitted to contradict it.

To create an estoppel, Bryant, Larian, MGA, and/or MGA (HK) must prove by a preponderance of the evidence each of the following elements:

      1.     The party to be estopped must be apprised of the facts;

      2.     The party to be estopped must intend that its conduct shall be acted upon, or must act so that the other party had a right to believe it was so intended;

      3.     The other party was ignorant of the true state of facts, and

      4.     The other party relied on the conduct to its injury.

**Authority:**  Cal. Evid. Code § 623; 11 B.E. Witkin, Summary of California Law, Equity § 177; Lear v. Bd. of Retirement, 79 Cal. App. 4th 427, 437 (2000); Spray, Gould & Bowers v. Associated Int'l Ins. Co., 71 Cal. App. 4th 1260, 1268 (1999); Ortega v. Pajaro Valley Unified Sch. Dist., 64 Cal. App. 4th 1023, 1044 (1998); Lemat Corp. v. Am. Basketball Ass'n, 51 Cal. App. 3d 267, 276 (1975).

**Estoppel—Definition**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding estoppel on the following grounds:

1.     Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, estoppel is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law. *See, e.g.*, *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc*., 106 F.3d 894, 899 (9th Cir. 1997) (estoppel, laches, and acquiescence are equitable defenses); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

2.     In any event, defendants' introductory paragraph confuses the standard for estoppel and implies facts not in evidence.

3.     The language of any proposed instruction regarding estoppel should be clearer.  Rather than stating "[t]he party to be estopped," or "the other party," which could be confusing to the jury, the instruction should make clear for each element which party the requirement applies to.

4.     *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that an estoppel instruction should be given to a jury, it should be as follows:

> Defendants Carter Bryant, Larian, MGA and MGA (HK)
> claim that Mattel is barred from asserting claims against
> Defendants under the equitable defense of estoppel. To create
> an estoppel, Bryant, Larian, MGA and MGA (HK) must prove
> each of the following elements:

329

1.  Mattel was apprised of the true facts surrounding the creation of Bratz and Bryant's involvement with MGA, MGA (HK) and/or Larian;

2.  Mattel must intend that its conduct shall be acted upon, or must act so that defendants had a right to believe it was so intended;

3.  Defendants must be ignorant of the true facts in the dispute;

4.  Defendants relied on Mattel's conduct to their injury. If the jury finds that Defendants' detrimental reliance was based on Mattel's silence or inaction, estoppel may be found only if Mattel had a duty to speak, and an opportunity to speak, and decided not to do so, and defendants relied on that decision to their detriment

5.  Where any one of these elements of estoppel is absent, the claim must fail.

**Authority**:  *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996); *Sorensen v. Black and Decker Corp.*, 2007 WL 1976610 * 1 (S.D. Cal. 2007); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (9th Cir. 2007); *Feduniak v. Cal. Coastal Com'n*, 148 Cal. App. 4th 1346 (Cal. App. 2007); *Elliano v. Assurance Co. of America*, 3 Cal. App. 3d 446, 451 (1970); *Skulnick v. Roberts Express, Inc.*, 2 Cal. App. 4th 884, 891 (1992).

**Estoppel—Definition**

**MGA Parties' and Bryant's Response**

First, any objection based on the Court's April 25, 2008 Order is premature because that order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant understand it, the Court simply stated that certain defenses are equitable and did not resolve the issue of whether those defenses should still be tried to the jury, but deferred that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4.  Any objection based on the Court's April 25, 2008 Order is also premature in light of Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard May 19, 2008.

Second, the MGA Parties' and Bryant's affirmative defense of estoppel is a question of fact that should be tried to the jury.  "The existence of estoppel is a question of fact for the trial court."  Elmore v. Oak Valley Hosp. Dist., 204 Cal. App. 3d 716, 724 (1988) (overruling the trial court which sustained a demurrer on plaintiff's estoppel claim); see also Muraoka v. Budget Rent-a-Car, 160 Cal. App. 3d 107, 117 (1984) (holding trial court erred in granting defendant's demurrer stating, "[the estoppel question] is one of fact which should be left for resolution by a jury and not determined upon general demurrer").  Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

1

2   Further, Mattel offers no support for its statement that "defendants' introductory paragraph

3   should be eliminated because it confuses the standard for estoppel and implies facts not in

4   evidence" – nor could it, as the introductory paragraph in question, which states that

5   "[w]henever a party has, by his own statement or conduct, deliberately led another to

6   believe a particular thing to be true and to act upon such belief, he is not permitted to

7   contradict it", is (with limited non-substantive modifications) a direct quote from the

8   California Evidence Code. See Cal. Evid. Code § 623 ("Whenever a party has, by his own

9   statement or conduct, intentionally and deliberately led another to believe a particular

10   thing true and to act upon such belief, he is not, in any litigation arising out of such

11   statement or conduct, permitted to contradict it."). It is difficult to believe that California

12   Evidence Code could confuse the standard for estoppel or even imply facts not in evidence,

13   as Mattel asserts.

14

15   Finally, Mattel's "Counter-Instruction" is improper, as it suggests that estoppel cannot

16   arise from the silence of the party to be estopped, unless that party has some legal duty to

17   speak.  "The doctrine of estoppel by conduct is embodied in Evidence Code section 623,

18   which states: 'Whenever a party has, by his own statement or conduct, intentionally and

19   deliberately led another to believe a particular thing true and to act upon such belief, he is

20   not, in any litigation arising out of such statement or conduct, permitted to contradict it.'"

21   Hill v. Kaiser Aetna, 130 Cal. App. 3d 188, 195 (1982).  Conduct is given the broadest

22   possible meaning.  "Equitable estoppel in the modern sense arises from the conduct of a

23   party, using that word in its broadest meaning as including his spoken or written words, his

24   positive acts, and his silence or negative omission to do anything." City of Long Beach v.

25   Mansell, 3 Cal. 3d 462, 488 n.22 (1970) (holding city was estopped from enforcing

26   constitutional prohibition) (emphasis added, citation omitted).  Mattel's contention that

27   there is a duty to speak requirement has no bearing on the instruction.  The case Mattel

28   cites for this principle,  Feduniak v. California Coastal Com'n, 148 Cal. App. 4th 1346,

1   1362 (2007), states that "[i]t is not necessary that the duty to speak should arise out of any

2   agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply

3   in such cases the principles of natural justice, and whenever these require disclosure they

4   raise the duty and bind the conscience and base upon the omission an equitable forfeiture

5   to the extent necessary to the protection of the innocent party." (Citations omitted.)  The

6   "duty" is thus simply a determination that under the circumstances, a party wishing to

7   assert its right must speak.  Mattel certainly had such a duty in this case given that it knew

8   of the alleged violations of its rights and remained silent.

9

10   Moreover, the "Counter-Instruction" is also improper as it suggests that the only relevant

11   facts that Mattel had to be appraised of were the facts surrounding the BRATZ' creation.

12   This omits the relevant facts concerning moonlighting by other employees at Mattel.

13   Mattel is estopped from asserting claims arising out of Bryant's employment as a result of

14   its longstanding pattern of allowing employees to moonlight or to work independently on

15   their own artistic projects.  As the record shows, Mattel knew its employees were

16   moonlighting for its competitors or independently creating artistic works.  Despite this

17   knowledge, Mattel took no steps to prevent its employees from moonlighting or

18   independently creating artistic works.  As Mattel allowed all of its other employees to

19   engage in such conduct without consequences, it is estopped from bringing claims against

20   Bryant based on violations of his employment agreement.

21

22

23

24

25

26

27

28

**<u>Defense: Estoppel of Copyright Claims</u>**

Carter Bryant, Larian, MGA, and MGA (HK) claim as a defense that Mattel is barred from asserting copyright claims because of its prolonged silence regarding alleged infringement and its prior conclusion that the BRATZ do not infringe on its intellectual property.

To establish this defense, Carter Bryant, Larian, MGA, and/or MGA (HK) must prove all of the following:

1.   That Mattel made a representation of fact by conduct intending that Defendant should rely on it.  Conduct is used **"**in its broadest meaning as including … silence or negative omission to do anything.**"**;

2.   That Mattel had knowledge that BRATZ potentially infringed on its intellectual property and that Carter Bryant worked for MGA;

3.   That Carter Bryant, MGA, MGA (HK), and/or Larian were ignorant of Mattel**'**s claims of ownership of Bryant**'**s BRATZ sketches; and

4.   That Carter Bryant, MGA, MGA (HK), and/or Larian reasonably relied on Mattel**'**s silence to their detriment.  MGA Parties**'** reliance and/or Carter Bryant**'**s reliance must be reasonable in the sense that under the circumstances, a reasonable person would have acted as defendants did.

**Authority:** <u>HGI Associates, Inc. v. Wetmore Printing Co.</u>, 427 F.3d 867, 875 (11th Cir. 2005); <u>Stambler v. Diebold, Inc.</u>, 1988 WL 95479, at **6, 11 U.S.P.Q. 2d 1709, 1715 (E.D.N.Y. 1988), <u>aff'd</u>, 878 F.2d 1445 (Fed. Cir. 1989); <u>City of Long Beach v. Mansell</u>, 3 Cal. 3d 462, 488 n.22 (1970).

334

**Defense: Estoppel of Copyright Claims**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding estoppel on the following grounds:

1.      Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, estoppel is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law. *See, e.g.*, *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 899 (9th Cir. 1997) (estoppel, laches, and acquiescence are equitable defenses); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

2.      In any event, defendants did not plead an "estoppel of copyright" defense in this case and cannot raise it for the first time now.  Moreover, there is no such thing as "estoppel of copyright" in the Ninth Circuit.  The only case defendants cite that even refers to "estoppel of copyright" is an out-of-circuit decision that is not controlling or persuasive here.  *See HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867 (11th Cir. 2005).  The other cases cited by defendants (*Stambler v. Diebold, Inc.*, 1988 WL 95479, at *6 (E.D.N.Y. 1988) and *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 488 n.22 (1970)) say nothing about any "estoppel of copyright" defense.  Accordingly, the proposed instruction is erroneous and improper.

3.      With respect to copyright claims, the applicable defense would be abandonment of copyright.  *See Bell Atlantic Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, 1995 WL 836331 * 11 (1995) (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 103 (9th Cir.), *cert. denied*, 364 U.S. 882 (1960)).  Defendants apparently seek to conjure a new defense in an effort to shift the jury's focus to Mattel's purported "silence or negative omission to do anything," because the law is clear that abandonment "must be

335

1  manifested by some *overt act* indicative of a purpose to surrender the rights and allow the

2  public to copy." *Hampton*, 279 F.2d at 104 (emphasis added).  *See also* Melville B.

3  Nimmer & David Nimmer, Nimmer on Copyright § 13.06, at 13-279 ("mere inaction …

4  would not constitute a manifestation of an intent to abandon….").

5       4.   The case law is clear regarding the four-pronged test for determining whether

6  estoppel is proven.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.

7  Supp. 2d 1197, 1225 (9th Cir. 2007) (outlining standard).  Any estoppel instruction should

8  adhere to this blackletter law.  The first requirement is that the plaintiff must know the true

9  facts surrounding the alleged misconduct.  But instead of beginning with this element,

10  which could be dispositive, as stated above, Defendants begin with Mattel's purported

11  "silence or negative omission," which has no bearing on the knowledge element.

12  Defendants' "silence or negative omission" standard also is an incorrect recitation of the

13  intent element, which is ordinarily listed as the second factor of the four-pronged estoppel

14  test.

15       5.   Since there is no "estoppel of copyright" defense in the Ninth Circuit,

16  defendants' statement that estoppel requires a showing that "Mattel had knowledge that

17  Bratz potentially infringed on its intellectual property" is incorrect.  Instead, the instruction

18  should be framed more generally that "Mattel had knowledge of the circumstances

19  surrounding the creation of Bratz and Carter Bryant's involvement with MGA, Larian

20  and/or MGA (HK)."

21       6.   The third element is also framed imprecisely as involving defendants'

22  ignorance of "Mattel's claims of ownership of Bryant's BRATZ sketches," when it should

23  be tailored to address defendants' knowledge of the true facts involved in the dispute.

24       7.   The fourth element seeks to import a reliance on "silence" standard when the

25  case law requires proof that the defendant relied on the plaintiff's "conduct to his injury."

26  *Metro-Goldwyn-Mayer*, 518 F. Supp. 2d at 1225.   While defendants rely on a statement

27  referenced in a footnote in *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 488 n.22 (1970),

28  quoting a 1941 treatise that conduct may include "silence or negative omission," modern

336

1   law makes clear that "passive holding out can rarely be established in statutory

2   infringement actions."  4 Nimmer On Copyright § 13.07.

3        8.      Moreover, in *Feduniak v. Cal. Coastal Comm'n*, 148 Cal. App. 4th 1346

4   (2007), the court made clear that the law "is settled that when the party to be estopped does

5   not say or do anything, its silence and inaction may support estoppel only if it had a duty

6   to speak or act under the particular circumstances."  *Id.* at 1362.  *See also Elliano v.*

7   *Assurance Co. of America*, 3 Cal. App. 3d 446, 451 (1970) (estoppel from silence may

8   arise "only where there is a duty to speak, and where the party on whom such duty rests

9   has an opportunity to speak, and knowing that the circumstances require him to speak,

10  remains silent.'") (citations omitted); *see also Spray, Gould & Bowers v. Assoc. Int'l Ins.*

11  *Co.* , 71 Cal. App. 4th 1260, 1268-1269 (1999) (insurance company estopped from arguing

12  that a claim was time barred because the company had a legal duty under the Fair Claims

13  Practice Settlement Regulations to advise the claimant of the applicable time limits and

14  had not done so); *Skulnick v. Roberts Express, Inc.*, 2 Cal. App. 4th 884, 891 (1992)

15  (defendant represented to plaintiffs that he would  agree to a settlement only if it resolved

16  all claims; since plaintiffs did not object or otherwise response to that precondition and

17  later remained silent when the settlement was put on the record, they were estopped from

18  filing suit).  Thus, at a minimum, the instruction would need to be modified to state that

19  estoppel by silence or inaction may be found only if the jury also finds that Mattel had a

20  legal duty to speak and an opportunity to speak and chose not to, and that defendants relied

21  on this decision to their detriment.

22       9.      *Counter-Instruction*:  "Estoppel of copyright" does not exist in the Ninth

23  Circuit; accordingly, any proposed instruction regarding "estoppel of copyright" is

24  improper.  If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections,

25  that an estoppel instruction should be given to a jury, Mattel requests that the Court give

26  its proposed counter-instruction regarding estoppel.  *See* Mattel's Objections to

27  Defendants' Proposed Jury Instruction re: Estoppel—Definition.

28

**Defense: Estoppel of Copyright Claims**

**MGA Parties' and Bryant's Response**

First, any objection based on the Court's April 25, 2008 Order is premature because that order did not resolve the issues presented here.   Rather, as MGA Parties and Bryant understand it, the Court simply stated that certain defenses are equitable and did not resolve the issue of whether those defenses should still be tried to the jury, but deferred that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4. Any objection based on the Court's April 25, 2008 Order is also premature in light of Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard May 19, 2008.

Second, the MGA Parties' and Bryant's affirmative defense of estoppel is a question of fact that should be tried to the jury.  "The existence of estoppel is a question of fact for the trial court."  Elmore v. Oak Valley Hosp. Dist., 204 Cal. App. 3d 716, 724 (1988) (overruling the trial court which sustained a demurrer on plaintiff's estoppel claim); see also Muraoka v. Budget Rent-a-Car, 160 Cal. App. 3d 107, 117 (1984) (holding trial court erred in granting defendant's demurrer stating, "[the estoppel question] is one of fact which should be left for resolution by a jury and not determined upon general demurrer"). Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.   Accordingly, the jury should be given a proper framework for making those factual determinations.

1

2   Mattel confuses a defense of abandonment with estoppel. Indeed, there is a separate

3   estoppel defense to a claim for copyright infringement. See 4 Nimmer, on Copyright §

4   13.07 (2008) (noting that equitable estoppel applies in copyright infringement actions, and

5   may deprive a plaintiff of an otherwise meritorious copyright infringement claim); see also

6   Hampton v. Paramount Pictures Corp., 279 F.2d 100, 104 (9th Cir. 1960). Mattel's own

7   authority, Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197,

8   1225 (9th Cir. 2007), confirms this and cites the elements set forth for this very defense in

9   Hampton. Moreover, Mattel's squabble over the instruction's "silence or inaction" element

10  is unavailing, as "[a] copyright owner can be estopped not only by words and actions but

11  also by silence and inaction." HGI Associates, Inc. v. Wetmore Printing Co., 427 F.3d 867,

12  875 (11th Cir. 2005). In this connection, the "duty to speak" requirement is simply a

13  determination that under the circumstances, a party wishing to assert its right must speak.

14  Mattel certainly had such a duty in this case given that it knew of the alleged infringement

15  and remained silent. See, e.g., Stambler v. Diebold, Inc., 1988 WL 95479, at **6, 11

16  U.S.P.Q. 2d 1709, 1715 (E.D.N.Y. 1988) (finding that patent owner had a duty to speak

17  and its silence was intentionally misleading where it had long known of the alleged

18  infringement and permitted the conduct to continue), aff'd, 878 F.2d 1445 (Fed. Cir. 1989).

19

20  Finally, as Mattel proposes the same "Counter-Instruction" here as with respect to the

21  previous proposed instruction, this "Counter-Instruction" should be rejected for the same

22  reasons as stated in the previous response.

23

24

25

26

27

28

**Defense: Estoppel of Employment Claims**

Carter Bryant, Larian, MGA, and MGA (HK) further claim as a defense that Mattel is barred from asserting claims arising out of Carter Bryant's employment agreement because Mattel allowed its employees both to moonlight and develop their own artistic works without complaint and it unreasonably delayed bringing this complaint long after it knew of the alleged infringement.

To establish this defense, Carter Bryant, Larian, MGA, and/or MGA (HK) must prove all of the following:

    1.    That Mattel made a representation of fact by conduct intending that Defendant should rely on it.  Conduct is used **"in its broadest meaning as including … silence or negative omission to do anything."**

    2.    That Mattel had knowledge that its employees were moonlighting or creating their own artistic work;

    3.    That Carter Bryant was ignorant of the fact that Mattel allowing moonlighting or independent artistic work was not intended as a policy; and

    4.    That Carter Bryant, MGA, MGA (HK), and/or Larian reasonably relied on Mattel's silence to their detriment.  MGA Parties' reliance and/or Carter Bryant's reliance must be reasonable in the sense that under the circumstances, a reasonable person would have acted as defendants did.

**Authority:**  Bender, Matthew,  <u>Cal. Forms Jury Inst.</u>, Ch. 3F, 300F.27; <u>City of Long Beach v. Mansell</u>, 3 Cal. 3d 462, 488 n.22 (1970).

**Defense: Estoppel of Employment Claims**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding estoppel for the following reasons:

1.      Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, estoppel is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law. *See, e.g.*, *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc*., 106 F.3d 894, 899 (9th Cir. 1997) (estoppel, laches, and acquiescence are equitable defenses); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

2.      In any event, defendants did not plead an "estoppel of employment claims" defense in this case and cannot raise it for the first time now.  Moreover, there is no such thing as "estoppel of employment claims."  Any proposed instruction should pertain to the affirmative defense of estoppel generally, and not some made-up version of estoppel.

3.      Additionally, defendants focus improperly on alleged moonlighting or artistic works of other employees when Mattel's knowledge of the conduct at issue must pertain to *Bryant's* alleged violations of his legal duties, not what other employees were or were not doing.  Accordingly, the first paragraph of this proposed instruction, and any references to Mattel's knowledge regarding "its employees" should be stricken.

4.      For the reasons set forth in Mattel's previous objection, defendants fail to adhere to the four-pronged test for establishing estoppel.  (*See* Mattel's Objections, *supra*, at 97-98).  Additionally, defendants' statement in paragraph two that "Mattel had knowledge that its employees were moonlighting" is erroneous for the reasons stated above, namely that the conduct of others has no bearing on whether Mattel had the

341

1  requisite knowledge of the "true facts" surrounding Bryant's alleged breaches of his legal

2  duties.

3         5.      For similar reasons, defendants' characterization of element three is incorrect

4  and loaded.  Defendants assert that Carter Bryant must prove that he "was ignorant of the

5  fact that Mattel allowing moonlighting was not intended as a policy."  This

6  characterization requires the jury either to *assume* that Mattel allowed moonlighting,

7  which is irrelevant to whether Mattel had knowledge of Mr. Bryant's breaches of his legal

8  duties, or to *find* that Mattel allowed moonlighting by others, which skews the jury's

9  inquiry away from the crucial elements of estoppel established in the case law.  *See, e.g.*,

10 *Metro-Goldwyn-Meyer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (9th

11 Cir. 2007).

12        6.      Defendants claim that they can establish estoppel by proving that they

13 "reasonably relied on Mattel's silence to their detriment."  For the reasons stated in Mattel's

14 previous objections, this is a clear misstatement of the law. Thus, at a minimum, any

15 instruction would need to be modified to state that estoppel by silence or inaction may

16 only be found if the jurors also find that Mattel had a legal duty to speak and an

17 opportunity to speak and chose not to do so, and that defendants' relied on this decision to

18 their detriment.

19        7.      *Counter-Instruction*:  "Estoppel of employment claims" does not exist;

20 accordingly, any proposed instruction regarding "estoppel of copyright" is improper.  If the

21 Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that an estoppel

22 instruction should be given to a jury, Mattel requests that the Court give its proposed

23 counter-instruction regarding estoppel.  *See* Mattel's Objections to Defendants' Proposed

24 Jury Instruction re: Estoppel—Definition.

25

26

27

28

1 **Defense: Estoppel of Employment Claims**

2

3 **MGA Parties' and Bryant's Response**

4

5 First, any objection based on the Court's April 25, 2008 Order is premature because that
6 order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant
7 understand it, the Court simply stated that certain defenses are equitable and did not
8 resolve the issue of whether those defenses should still be tried to the jury, but deferred
9 that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4.
10 Any objection based on the Court's April 25, 2008 Order is also premature in light of
11 Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard
12 May 19, 2008.

13

14 Second, the MGA Parties' and Bryant's affirmative defense of estoppel is a question of
15 fact that should be tried to the jury.  "The existence of estoppel is a question of fact for the
16 trial court."  <u>Elmore v. Oak Valley Hosp. Dist.</u>, 204 Cal. App. 3d 716, 724 (1988)
17 (overruling the trial court which sustained a demurrer on plaintiff's estoppel claim); <u>see</u>
18 <u>also</u> <u>Muraoka v. Budget Rent-a-Car</u>, 160 Cal. App. 3d 107, 117 (1984) (holding trial court
19 erred in granting defendant's demurrer stating, "[the estoppel question] is one of fact
20 which should be left for resolution by a jury and not determined upon general demurrer").
21 Even if the Court chooses to make the ultimate decision as to whether this defense will bar
22 Mattel's claims (although courts routinely submit the entire defense to the jury), the jury
23 must still make the factual determinations that underlie the Court's decision.  Because the
24 facts underlying this defense are inextricably intertwined with the facts underlying
25 Mattel's claims, taking those factual determinations away from the jury would violate
26 defendants' Seventh Amendment jury rights, as explained in detail in the opposition to
27 Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper
28 framework for making those factual determinations.

1

2  Mattel's objection ignores that "[t]he doctrine of estoppel by conduct is embodied in

3  Evidence Code section 623, which states: 'Whenever a party has, by his own statement or

4  conduct, intentionally and deliberately led another to believe a particular thing true and to

5  act upon such belief, he is not, in any litigation arising out of such statement or conduct,

6  permitted to contradict it.'" Hill v. Kaiser Aetna, 130 Cal. App. 3d 188, 195 (1982).

7  Conduct giving rise to estoppel includes "silence or negative omission to do anything."

8  City of Long Beach v. Mansell, 3 Cal. 3d 462, 488 n.22 (1970).  Mattel's contention that

9  there is a duty to speak requirement has no bearing on the instruction.  The case Mattel

10 cites for this principle, Feduniak v. California Coastal Com'n, 148 Cal. App. 4th 1346,

11 1362 (2007) (states that "[i]t is not necessary that the duty to speak should arise out of any

12 agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply

13 in such cases the principles of natural justice, and whenever these require disclosure they

14 raise the duty and bind the conscience and base upon the omission an equitable forfeiture

15 to the extent necessary to the protection of the innocent party.") (citations omitted).  The

16 "duty" is thus simply a determination that under the circumstances, a party wishing to

17 assert its right must speak.  Mattel certainly had such a duty in this case given that it knew

18 of the alleged infringement and remained silent.

19

20 Finally, Mattel misses the mark in claiming that there is no "estoppel of employment

21 claims" defense. This is what the estoppel defense asserts in this case: that Mattel is

22 estopped from bringing its employment claims (which includes breach of duty claims

23 based upon alleged violations of its employment agreements and alleged related duties).

24 The MGA Parties and Bryant believe that the jury's understanding on the issue would

25 benefit from receiving a specific instruction as to estoppel concerning Mattel's

26 employment claims in addition to the general instruction on estoppel. Additionally,

27 Mattel's claim that the MGA Parties' and Bryant's proposed instruction focuses

28 improperly on other employee's moonlighting ignores the basis of this defense as asserted

in this case, namely that Mattel allowed its employees both to moonlight and develop their own artistic works without complaint. Mattel knew its employees were moonlighting for its competitors and/or developing their own artistic work.  Despite this knowledge, Mattel took no steps to prevent its employees from moonlighting or working on their own artistic projects.    As Mattel allowed all of its other employees to moonlight or develop independent artistic work without consequences, it is estopped from bringing claims against Bryant for violations of his employment agreement or arising out of those alleged violations.  This application of estoppel is hardly "made up."

Finally, as Mattel proposes the same "Counter-Instruction" here as with respect to the previous proposed instruction, this "Counter-Instruction" should be rejected for the same reasons as stated in the previous response.

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Defense: Acquiescence**

If you find that Mattel acquiesced to the development and marketing of Bratz, you must find for Carter Bryant, Isaac Larian, MGA and MGA (HK) with respect to claims for Bryant's alleged violations of his employment agreement.  If you find that Mattel acquiesced to its employees moonlighting and development of their own artistic work, you must find for Carter Bryant, Isaac Larian, MGA and MGA (HK) with respect to claims arising out of  Bryant's alleged violations of his employment agreement.

Acquiescence in error takes away the right of objecting to it.

Acquiescence exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate that the conduct is allowed, and in fact is so understood by the person doing the alleged wrongful act.

**Authority:** Cal. Civ. Code § 3516; <u>Security Pac. Nat'l Bank v. Wozab</u>, 51 Cal. 3d 991, 1005 (1990).

**Defense: Acquiescence**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Acquiescence for the following reasons:

1. Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order. As recognized by the Court, acquiescence is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial. *See* April 25, 2008 Order, at 7. The Court's finding is well supported by case law. *See, e.g., Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 899 (9th Cir. 1997) (estoppel, laches, and acquiescence are equitable defenses); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

2. If the Court decides, over Mattel's objections, to permit the jury to decide acquiescence, it should not give defendants' proposed instruction because it is incorrect as a matter of law, confusing and creates the risk of error. Defendants' proposed instruction permits the jury to find acquiescence if "Mattel acquiesced in the development and marketing of Bratz." The instruction utterly fails to tie the acquiescence defense to Mattel's knowledge of Bryant's alleged violations of his legal duties, which is required under the law. "Acquiescence constitutes a ground for denial of relief only upon a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert …" his rights against the defendant. *See Novell Inv. v. Weird Stuff*, No. C92-20467 JW/EAL, 1994 WL 16458729 * 13 (N.D. Cal. 1993). Hence, Mattel must have had knowledge of Bryant's breaches of his legal duties *and* acquiesced to them.

3. Defendants' claim that acquiescence may be found if "Mattel acquiesced to its employees moonlighting and development of their own artistic work" is simply erroneous.

1  Mattel's conduct with respect to other employees has no bearing on whether it knowingly
2  acquiesced to Bryant's breaches of his legal duties.

3       4.     Defendants' instruction that "[a]cquiescence in error takes away the right of
4  objecting to it" is unclear, and thus, confusing.  Indeed, the authority defendants cite for
5  this statement involved a case in which the plaintiffs in a credit foreclosure action had full
6  knowledge of the legal choices they were making, and chose a particular course of action.
7  That has no bearing on this case where Mattel alleges that it had no knowledge of
8  defendants' alleged breaches at the time they were occurring.  A clearer statement of the
9  legal standard on this issue would be that: "If the jury finds that Mattel acquiesced but did
10 so without knowledge of the true facts surrounding the creation of Bratz or Bryant's
11 involvement with MGA, Larian and/or MGA (HK), no defense of acquiescence may be
12 found."

13      5.     As with Defendants' other affirmative defenses, they mistakenly attempt to
14 permit the jury to find acquiescence based on Mattel's purported "silence or inaction"  *See*
15 *Cal. Western Sch. of Law v. Cal. Western Univ.*, 125 Cal. App. 3d 1002, 1007 (1981)
16 ("Acquiescence by silence does not normally amount to a defense…").  Defendants offer
17 no support for this erroneous position.

18      6.     *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order
19 and Mattel's objections, that an acquiescence instruction should be given to a jury, it
20 should be as follows:

21            The defendants claim that Mattel acquiesced to the wrongful conduct
22            at issue in Mattel's claims against the defendants in this case.  To prevail on
23            this affirmative defense, the defendants must prove that Mattel knew of the
24            defendants' wrongful conduct and assured the defendants, expressly or
25            impliedly, that Mattel would not assert its rights against the defendants.

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1     **Authority**: *Novell Inv. v. Weird Stuff*, No. C92-20467 JW/EAL, 1994 WL

2    16458729 * 13 (N.D. Cal. 1993); *Cal. Western Sch. of Law v. Cal. Western Univ.*, 125 Cal.

3    App. 3d 1002, 1007 (1981).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Defense: Acquiescence**

**MGA Parties' and Bryant's Response**

First, any objection based on the Court's April 25, 2008 Order is premature because that order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant understand it, the Court simply stated that certain defenses are equitable and did not resolve the issue of whether those defenses should still be tried to the jury, but deferred that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4. Any objection based on the Court's April 25, 2008 Order is also premature in light of Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard May 19, 2008.

Second, the MGA Parties' and Bryant's affirmative defense of acquiescence is a question of fact that should be tried to the jury.  _Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply_, 106 F.3d 894, 899 (9th Cir. 1997) (upholding district court's ruling where jury decided questions of laches, equitable estoppel, acquiescence, and unclean hands). Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

Mattel's objection, and counter-instruction, also erroneously rely on _Novell Inc. v. Weird Stuff, Inc._, 0094 WL 16458729 (N.D. Cal. Aug. 2, 1993) (which Mattel consistently and

1    incorrectly cites as found at "1994 WL 16458729"), for the proposition that defendants are

2    required to tie the acquiescence defense to Mattel's knowledge of Bryant's alleged

3    violations of his legal duties.  This reliance is unavailing, as Novell offers no support for

4    such a statement.  Moreover, in Novell, the court found that there were no disputed facts

5    supporting a waiver defense when Novell had taken the affirmative steps of disposing of

6    its products and verbally informing defendants that it had no intention of waiving

7    copyright.  Mattel has taken no such steps.

8

9    Although Mattel proposes its own instruction on this issue instead of the one proposed by

10   the MGA Parties and Bryant, Mattel's proposed instruction, just like its objections, ignores

11   the basis for acquiescence in this case – namely, that if the jury finds that Mattel

12   acquiesced to either the development and marketing of BRATZ or its employees

13   moonlighting or development of their own artistic work, the jury must find for Carter

14   Bryant and the MGA Parties with respect to claims for Bryant's alleged violations of his

15   Inventions Agreement or other alleged duties of Mattel. Mattel's proposed instruction, just

16   like its objections, also ignores that the acquiescence exists when a person's acts or words,

17   silence or inaction, would be understood by a reasonable person as intended to indicate

18   that the conduct is allowed, and in fact is so understood by the person doing the alleged

19   wrongful act. See Sec. Pac. Nat'l Bank v. Wozab, 51 Cal. 3d 991, 1005 (1990). Indeed, as

20   the doctrine of acquiescence is a close cousin of the estoppel doctrine, the authorities

21   indicating that silence or inaction could provide a basis for estoppel apply with full force

22   here. See John H. Spohn Co. v. Bender, 18 Cal. App. 2d 447, 451 (1937) ("The

23   principle … known as the doctrine of acquiescence …  [is] often referred to as quasi

24   estoppel."); see also City of Long Beach v. Mansell, 3 Cal. 3d 462, 488 n.22 (1970)

25   (conduct giving rise to estoppel includes "silence or negative omission to do anything").

26   To the extent California Western School of Law v. California Western Univ., 125 Cal.

27   App. 3d 1002, 1007 (1981), is inconsistent with the California Supreme Court's decision

28   in City of Long Beach, it should not be followed.

**<u>Defense:  Abandonment (Copyright Infringement)</u>**

Carter Bryant, Larian, MGA, and MGA (HK) contend that a Mattel cannot bring an action for copyright infringement because Mattel abandoned it claims by conducting an internal investigation and concluding that BRATZ did not infringe on its intellectual property. Mattel cannot claim ownership of a copyright if it was abandoned.  In order to show abandonment, Carter Bryant, Isaac Larian, MGA and/or MGA (HK) have the burden of proving each of the following by a preponderance of the evidence:

> 1.    Mattel intended to surrender ownership rights in the work; and

> 2.    Conduct by Mattel which was **"consistent with an intent to abandon"** or which **"implies an abandonment"**.

Inaction alone does not constitute abandonment of the copyright; however, it may be a factor for you to consider in determining whether Mattel has abandoned its claims.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.19 (2007); <u>Lopez v. Elec. Rebuilders, Inc.</u>, 416 F. Supp. 1133, 1135 (C.D. Cal. 1976); <u>Read v. Turner</u>, 239 Cal. App. 2d 504 (1966).

**Defense:  Abandonment (Copyright Infringement)**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Defense: Abandonment (Copyright Infringement) on the following grounds:

1.     Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, the defense of abandonment is essentially equitable in nature, and the Court deferred ruling on this affirmative defense until after trial.  *See* April 25, 2008 Order, at 7.

2.     In any event, this proposed instruction deviates from the Ninth Circuit Model Instruction.  Contrary to Model Instruction 17.19, defendants' second paragraph suggests that Mattel's conduct need only be "consistent with an intent to abandon" or "implies an abandonment."  The model instruction states that defendants must show "an act by the plaintiff evidencing that intent."

3.     The prefatory statement in defendants' proposed instruction could confuse the jury since Mattel does not agree that the internal investigation it conducted "conclude[ed] that BRATZ did not infringe on its intellectual property."  Accordingly, this statement, while put in the mouths of defendants, should be eliminated to avoid jury confusion.

4.     While Defendants emphasize the portion of the model instruction regarding "inaction" as one factor that may be considered in determining whether Mattel has abandoned its claims, they ignore the Comments to the Model Instruction, which make clear that "[a]bandonment of a right must be manifested by an overt act."  *See* 9th Cir. Civ. Jur. Instr. 17.19, cmt. (citing *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998)).  This qualification should be included in the instruction so as to avoid confusion as to the proper standard.

5.      *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that an acquiescence instruction should be given to a jury, it should conform to the Ninth Circuit Model Instruction, as follows:

The defendants contend that Mattel does not own the copyrights at issue in this case because Mattel abandoned the copyrights.  Mattel cannot claim ownership of the copyrights if they were abandoned.  In order to show abandonment, the defendants have the burden of proving each of the following by a preponderance of the evidence:

1.      Mattel intended to surrender rights in the works; and

2.      An act by Mattel evidencing that intent.

Mere inaction does not constitute abandonment of the copyright; however, this may be a factor for you to consider in determining whether Mattel has abandoned the copyright.

If you find that Mattel has proved its claims for copyright infringement against the defendants, your verdict should be for Mattel, unless you find that the defendants have proved each of the elements of this affirmative defense, in which case your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.19 (2007).

**Defense:  Abandonment (Copyright Infringement)**

**MGA Parties' and Bryant's Response**

First, any objection based on the Court's April 25, 2008 Order is premature because that order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant understand it, the Court simply stated that certain defenses are equitable and did not resolve the issue of whether those defenses should still be tried to the jury, but deferred that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4.  Any objection based on the Court's April 25, 2008 Order is also premature in light of Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard May 19, 2008.

Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims, the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997).  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

1  district court merely read the model jury instruction, it would have committed plain error,

2  since that instruction makes no reference whatsoever to knowledge or intent").  That was

3  the case here, and that is why Mattel's unmodified counter-instruction is inappropriate.

4

5  Here, it was appropriate to substitute the element in the Ninth Circuit Model Jury

6  Instructions, Civil, 17.19 (2007) requiring "an act by the plaintiff evidencing [the] intent"

7  to abandon with the element requiring "[c]onduct by Mattel which was 'consistent with an

8  intent to abandon' or which 'implies an abandonment.'"  Lopez v. Elec. Rebuilders, Inc.,

9  416 F. Supp. 1133, 1136 (C.D. Cal. 1976).  Such element closer resembles the allegations

10  by the defendants; moreover, it is entirely consistent with caselaw.  See Read v. Turner,

11  239 Cal. App. 2d 504, 511 (1966).

12

13  Mattel's complaints that defendants (1) "emphasize the portion of the model instruction

14  regarding 'inaction' as one factor that may be considered in determining whether Mattel

15  has abandoned its claims" and (2) "ignore the Comments to the Model Instruction, which

16  make clear" that abandonment requires an overt act, are better addressed to the drafters of

17  the Model Instruction, which has been followed by the MGA Parties and Bryant without

18  modification in this regard. Indeed, it is the Model Instruction itself that directs the Court

19  to advise the jury that inaction may be considered as a factor in the abandonment defense,

20  and it is also the instruction that omits the explanation concerning the overt act

21  requirement – and for a good reason, as it would be merely duplication of the Model

22  Instruction's acknowledgment that mere inaction is insufficient to establish abandonment.

23

24  Finally, Mattel's assertion that it does not agree that the internal investigation it conducted

25  "conclude[ed] that BRATZ did not infringe on its intellectual property" should not be

26  given any credit, as Mattel actually precluded the defendants from testing the veracity of

27  that statement by refusing to disclose most of the evidence concerning the investigation on

28  the grounds of privilege. Moreover, the little evidence that it did disclose warrants the very

conclusion Mattel now complains about – indeed, if Mattel concluded that its property had been in fact infringed, it is hard to believe that Mattel would have set on its rights for as long as it did, especially given Mattel's aggressive track record of defending its intellectual property. (See Declaration of Jason D. Russell In Support of MGA Parties' Motion for Partial Summary Judgment dated March 7, 2008, Ex. 70.)

Further, for the reasons set forth above, Mattel's proposed alternative instruction does not adequately instruct the jury on this defense.

**Defense: 205(d) (Bona Fide Purchaser for Value)**

You may find that the MGA agreement with Bryant dated October 4, 2000 has priority over the Mattel agreement with Bryant dated January 4, 1999 if you find that the MGA-Bryant agreement was:

1.   Recorded with the Copyright Office first in such a manner as to give Mattel constructive notice of the transfer; and

2.   Executed in good faith; and

3.   For valuable consideration; and

4.   Without notice of an earlier transfer.

For purposes of this instruction, recordation with the Copyright Office means either (1) the filing of the transfer agreement itself, or (2) registration with the Copyright Office listing ownership by assignment.

**Authority:** 17 U.S.C. § 205(d); 2 Nimmer on Copyright § 7.16 (2007) ("[A]lthough an instrument of transfer to a first purchaser [Mattel] may be recorded prior to the time that the copyright owner purports to sell the same copyright interest to a bona fide subsequent purchaser [MGA], the latter does not have constructive notice of the first purchase if the work has not been registered at the time the subsequent purchaser acquired his interest.").

**Defense: 205(d) (Bona Fide Purchaser for Value)**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction as follows:

1.     This proposed instruction is contrary to the Court's April 25, 2008 Order, wherein the Court deferred ruling on this defense until after trial.  *See* April 25, 2008 Order, at 8.

2.     Defendants have no basis to claim that they are bona fide purchasers for value pursuant to 17 U.S.C. § 205(d).  That provision provides that where there are competing transfers of copyright, a prior transferee (in this case, Mattel, by virtue of the Inventions Agreement), prevails unless the later purported transferee (here, MGA) took in good faith without notice of the earlier transfer and recorded first.  *See* 17. U.S.C. § 205(d) ("[T]he later transfer prevails if recorded first … and if taken in good faith … and without notice of the earlier transfer.").  Here, MGA has admitted that it did not record its copyright assignment.  The defense fails for that reason alone, and this proposed instruction should not be given to the jury.

3.     Defendants' proposed instruction is erroneous since it ignores the statutory rule that the transferee who first registers and records prevails over any later recording transferee. *See* 17 U.S.C. § 205(d) ("later transfer prevails if recorded in such manner" (i.e., "in the manner required to give constructive notice under subsection (c)" (emphasis added); *id.* § 205(c) (for a recordation to give constructive notice, it must be "(1) [a] document … [that] specifically identifies the [transferred] work"); *see also Peer Int'l Corp. v. Latin Am. Music Corp*., 161 F. Supp. 2d 38, 48 (D.P.R. 2001)).  Defendants simply ignore this language.

4.     Mattel respectfully requests that the Court adopt Mattel's proposed instruction, which adheres to the statute.  *See* Mattel's Proposed Jury Instructions, at 53-54.

**Authority**:  17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Am. Music Corp.*, 161 F. Supp. 2d 38, 48 (D.P.R. 2001).

**Defense: 205(d) (Bona Fide Purchaser for Value)**

**MGA Parties' and Bryant's Response**

Even if the Court makes the ultimate decision as to whether this defense will bar Mattel's claims, the jury must still make the factual determinations that underlie the Court's decision. Indeed, in its Order, the Court noted that factual issues such as good faith and notice would be resolved at trial, such that the Court would be left only with legal issues. See April 25, 2008 Order at 8. Moreover, to the extent the factual issues that the Court noted are intertwined with issues underlying the claims to be tried to the jury, those issues must be decided by the jury to protect defendants' Seventh Amendment rights. Accordingly, the jury should be given a proper framework for making those factual determinations.

Although Mattel asserts that it is undisputed that Mr. Bryant's assignment to MGA of BRATZ works has not been recorded, Mattel's objection ignores that MGA's registrations each specifically note that MGA's ownership in the work at issue is by "assignment" of Carter Bryant, which is all that is required by 17 U.S.C. § 205(d). Mattel's objection also fails to note that there is no dispute that MGA's registrations of the works at issue were recorded with the Copyright Office long before Mattel's purported registrations. As for Mattel's proposed instruction on this issue, it should not be adopted for an additional reason that it utilizes an improper term "Bratz works."

**<u>Defense: Good Faith</u>**

The good faith of Carter Bryant, Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Carter Bryant, Larian, MGA, and/or MGA (HK) acted in bad faith or with bad intent.  To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:**  <u>People v. Webb</u>, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, <u>Cal. Proc.:</u> <u>Pleadings</u> § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

**Defense: Good Faith**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction on the following grounds:

1.     This proposed instruction is misleading and argumentative because it is worded so as to presume good faith: "The good faith of Carter Bryant, Larian, MGA and MGA (HK) is a factor that should be considered...."  This will be confusing and potentially cause the jury to presume that Defendants acted in good faith.  The instruction should state clearly that "*whether*" defendants acted in good faith is a factor to be considered.

2.     Because the good faith defense is inapplicable to Mattel's copyright infringement claim; *see Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978), Mattel's strict liability claims for unfair competition and conversion (*see Community Assisting Recovery, Inc. v. Aegis Ins. Co.*, 92 Cal. App. 4th 886, 891 (2001); *Virtanen v. O'Connell*, 140 Cal. App. 4th 688, 707 (2006)), and Mattel's intentional tort claims (*see Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)), the instruction should make clear that the defense is only available where defendants' intent or mental state is an element of the offense.  Defendants' instruction does not specify with sufficient clarity the limited relevance of any defense of good faith.

**Defense: Good Faith**

**MGA Parties' and Bryant's Response**

Mattel's objection that good faith is not relevant as to copyright infringement, unfair competition, conversion, or intentional interference with contract claims ignores that each such claim is pled as including an element of scienter that will require the jury to determine "whether," as Mattel states, the MGA Parties and Bryant acted with good faith. Good faith is relevant to any claim where intent is required <u>or</u> pled as an element.  <u>See, e.g.,</u> <u>State Farm Mut. Auto. Ins. Co. v. Superior Court,</u> 228 Cal. App. 3d 721, 727 (1991) (holding that, where purported affirmative defense was relevant to negate alleged intent, it was not properly considered an affirmative defense but rather a denial of plaintiff's allegations, which could be proven as such at trial).

1  **Defense:  *De Minimis* Use**

2

3  Carter Bryant, Larian, MGA, and MGA (HK) contend that even if Mattel can establish that

4  it has a copyright interest in Carter Bryant's drawings, it cannot recover damages in its

5  claim for copyright infringement because any similarities between the protectable elements

6  of the drawings and the protectable elements of the BRATZ dolls are *de minimis*.

7

8  Even where there has been some copying, that fact alone is not conclusive of infringement.

9  Some copying is permitted.  In addition to copying, it must be shown that this has been

10  done to an unfair extent.  This principle reflects the legal maxim *de minimis non curat lex*

11  (the law does not concern itself with trifles).  *De minimis* copying is not actionable.

12

13  If the similarities between the copyrighted work and the copied work consist only of

14  unprotectable elements and elements in the public domain, then the copying is *de minimis*

15  and no recovery is available.

16

17  When the range of protectable and unauthorized expression is narrow, the appropriate

18  standard for illicit copying is virtual identity.

19

20  **Authority:**    Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004); Apple

21  Computer v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994).

22

23

24

25

26

27

28

**Defense:  *De Minimis* Use**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction for the following reasons:

1.    The instruction emphasizes that "[s]ome copying is permitted," without making clear that "a taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation."  *Fisher v. Dees*, 794 F.2d 432, 434 (9th Cir. 1986).

2.    Defendants' proposed instruction does not make sufficiently clear that the *de minimis* use defense requires a determination of "whether there is a high enough degree of similarity between the works to establish copying, and whether that copying is substantial enough to constitute infringement." *Newton v. Diamond*, 388 F.3d 1189, 1194-1195 (9th Cir. 2004).

3.    To avoid jury confusion, the instruction should make clear that "[s]ubstantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to" Bryant's drawings as a whole.  *Id.* at 1195  (citing *Worth v. Selchow & Righter Co*., 827 F.2d 569, 570 n.1 (9th Cir. 1987) ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the *plaintiff*'s work was appropriated – not whether a substantial portion of *defendant*'s work was derived from plaintiff's work.") (emphasis supplied).  Applying this standard to the facts of this case, the jury should be instructed that "substantiality is measured by considering the qualitative and quantitative significance of Bryant's original drawings in relation to the Bratz dolls as a whole."  Defendants' selectively quote from *Newton* in ways that will lead to jury confusion.

4.    *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, to give an instruction regarding *de minumus* use, it should be as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants claim that even if Mattel can establish that it has a copyright interest in Carter Bryant's drawings, it cannot recover damages on the ground that any similarities between the drawings and the Bratz dolls are *de minimis*.  The *de minimis* use defense may only be found if the copying between Bryant's drawings and the Bratz dolls is so meager and fragmentary that the average person would not recognize the appropriation.  On the other hand, if you find that there is a high enough degree of similarity between the works as to establish copying, and that copying is substantial enough to constitute an infringement of Mattel's copyright, then no *de minimis* use defense may be found.  Substantiality is measured by considering the qualitative and quantitative significance of Bryant's original drawings in relation to the Bratz dolls as a whole.

**Defense:  *De Minimis* Use**

**MGA Parties' and Bryant's Response**

Mattel's objections, and its proposed counter-instruction, merely represent an attempt to bias the instruction in its favor.   The proposed instruction echoes clear and concise language of the case law on point:  "For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement.  This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial.  The principle that trivial copying does not constitute actionable infringement has long been a part of copyright law. Indeed, as Judge Learned Hand observed over 80 years ago: 'Even where there is some copying, that fact is not conclusive of infringement. Some copying is permitted. In addition to copying, it must be shown that this has been done to an unfair extent.'  This principle reflects the legal maxim, de minimis non curatlex (often rendered as, 'the law does not concern itself with trifles')."  Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004) (internal citations omitted).

As the Supreme Court held in Feist Publ'ns, Inc. v. Rural Telegraph Serv. Co., 499 U.S. 340, 349-50 (1991), "The primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts.'" Art. I, § 8, cl. 8. Accord Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975).  To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.   Harper & Row Publishers v. Nation Enters., 431 U.S. 531, 556-557 (1985).  This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship."

Furthermore, Mattel's proposed counter-instruction ignores the distinction between protectable and unprotectable material, and would have the jury include in its

consideration copying of unprotectable material.  The Supreme Court held in <u>Feist Publ'ns, Inc.</u> that "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected.  Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." <u>Id.</u> at 348 (emphasis added).   In other words, it is only copying of copyrightable elements of a work that is answerable under the federal Copyright Act.

Consistent with <u>Feist</u>, applicable Ninth Circuit precedent holds that, because only those elements of a work that are protectible can be compared when it comes to the question of copyright infringement, the unprotectible elements of the work need to be filtered out and disregarded.  As summarized in <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815 (9th Cir. 2002):

> A court "must take care to inquire only whether 'the protectible elements, standing alone, are substantially similar.'" <u>Williams v. Crichton</u>, 84 F.3d 581, 588 (2d Cir. 1996) (emphasis in original) (citation omitted); <u>accord</u> <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442-43 (9th Cir. 1994). Therefore, when applying the extrinsic test, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination.  <u>See</u> <u>Shaw [v. Lindheim]</u>, 919 F.2d [1353, 1361 (9th Cir. 1990)] (applying the extrinsic test to determine "whether there is substantial similarity between the protected expression of ideas in two literary works") (emphasis added); <u>Berkic v. Crichton</u>, 761 F.2d 1289, 1293-94 (9th Cir. 1985) (rejecting consideration of general ideas as well as scenes-a-faire in determining substantial similarity under the extrinsic test).

297 F.3d at 822-23.  <u>See also</u> <u>Apple Computer Inc.</u>, 35 F.3d at 1439 ("When the range of <u>protectable</u> and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.").  The MGA Parties' and Bryant's proposed instruction

369

1  properly focuses the jury on the <u>protectable</u> elements of Mattel's work, rather than every
2  element.

3

4  Moreover, Mattel's counter-instruction ignores its own discussion of the <u>Newton</u> that
5  "[s]ubstantiality is measured by considering the qualitative and quantitative significance of
6  <u>the copied portion</u> in relation to" Bryant's drawings as a whole" (emphasis added), and
7  inaccurately argues that "the jury should be instructed that 'substantiality is measured by
8  considering the qualitative and quantitative significance of Bryant's original drawings in
9  relation to the Bratz dolls as a whole,'" which is a clear misstatement of the applicable
10  legal principles.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Defense:  Unclean Hands**

Carter Bryant contends that Mattel's unfair conduct bars Mattel from receiving any relief against him in this case, under the doctrine of "unclean hands."  This doctrine prevents parties who have acted unfairly or in bad faith in matters related to their claims – parties who have "unclean hands" – from using the courts to benefit from their unfair actions, even if other parties have also acted improperly.

Under the rule of "unclean hands," you should deny Mattel relief on its claims against Carter Bryant if you find that Mattel has acted unfairly or inequitably in matters related to those claims, so that it would be unfair for Mattel to prevail.

In making that decision, you can consider any type of inequitable conduct by Mattel related to its claims against Bryant, including Mattel's conduct both before and during this litigation, and its conduct towards other parties and witnesses related to its claims against Bryant.  Misconduct does not need to be criminal or illegal for you to consider it.  You can consider any type of unfair conduct that violates conscience, good faith, or other equitable standards of conduct.

**Authority:**  Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal. App. 4th 970, 979 (1999) ("[T]he misconduct need not be a crime or an actionable tort.  Any conduct that violates conscience, good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine."); Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists, 227 Cal. App. 2d 675, 728-729 (1964).

**Defense:  Unclean Hands**

**Mattel's Objection**

Mattel objects to Carter Bryant's proposed instruction regarding Unclean Hands as follows:

1.    Bryant's proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, unclean hands is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law. *See, e.g.*, *Piscioneri v. City of Ontario*, 95 Cal.App.4th 1037, 1053 (Cal. App. 2002) ("Unclean hands, like laches, is an equitable defense."); *Javelin Corp., v. Uniroyal, Inc.*, 546 F.2d 276, 279 (9th Cir. 1976) (*in pari delicto* and the closely related defenses of consent and unclean hands are equitable in nature).

2.    In any event, Bryant's proposed instruction is overbroad and erroneous. Notably, MGA withdrew its unclear hands defense entirely.  Bryant's instruction improperly seeks to deny Mattel relief based on "any type of inequitable conduct by Mattel … including Mattel's conduct both before and during this litigation, and its conduct towards other parties and witnesses related to its claims against Bryant."  Moreover, Bryant's instruction permits the jury to "consider any type of unfair conduct that violates conscience, good faith, or other equitable standards of conduct."   This free-wheeling inquiry into Mattel's conduct is expressly prohibited by the case law.  *See Kendall-Jackson Winery Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 978 (1999) ("The determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties."); *Dollar Sys., Inv. v. Avcar Leasing Sys., Inc*., 890 F.2d 165, 173 (9th Cir. 1989) (It is fundamental to the operation of the doctrine that the alleged misconduct by the plaintiff related directly to the transactions concerning which the complaint is made") (quoting *Arthur v. David*, 126 Cal. App. 3d 684, 693-694 (1981)); *Magnesystems, Inc. v.*

372

1  *Nikken, Inc.*, 933 F. Supp. 944, 953 (C.D. Cal. 1996) (rejecting unclean hands defense

2  because "[p]laintiff's alleged misconduct ha[d] no direct relationship to the [patent-in-suit]

3  or [p]laintiff's conduct in obtaining the patent-in-suit."). Accordingly, because Bryant's

4  unclean hands instruction is completely open-ended and is not directly tied to the

5  allegations involved in this dispute, it should be rejected.

6        3.    *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order

7  and Mattel's objections, that an unclean hands instruction should be given to the jury, it

8  should be as follows:

9              Carter Bryant contends that Mattel should be denied relief

10             based on the doctrine of "unclean hands."  This doctrine demands that

11             a plaintiff act fairly in the matter for which he seeks a remedy.  The

12             determination of the unclean hands defense, however, cannot be an

13             open-ended inquiry into the general morals of the parties.  You may

14             only find that Bryant is entitled to an unclean hands defense if you

15             find that Mattel engaged in misconduct, and that misconduct relates

16             directly to the transactions between Bryant and MGA regarding the

17             creation of Bratz on which Mattel's claims are based.  Misconduct by

18             Mattel in other areas or towards other parties other than Bryant, MGA

19             and Larian, have no bearing on the unclean hands defense.

20

21   **Authority**:  *Kendall-Jackson Winery Ltd. v. Superior Court*, 76 Cal. App. 4th 970,

22  978 (1999); *Dollar Sys., Inv. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989)

23  (quoting *Arthur v. David*, 126 Cal. App. 3d 684, 693-694 (1981)); *Magnesystems, Inc. v.

24  Nikken, Inc.*, 933 F. Supp. 944, 953 (C.D. Cal. 1996).

25

26

27

28

**Defense:  Unclean Hands**

**Bryant's Response**

First, any objection based on the Court's April 25, 2008 Order is premature because that order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant understand it, the Court simply stated that certain defenses are equitable and did not resolve the issue of whether those defenses should still be tried to the jury, but deferred that issue pending full briefing and consideration of Mattel's Motion In Limine No. 4. Any objection based on the Court's April 25, 2008 Order is also premature in light of Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard May 19, 2008.

Second, Bryant's affirmative defense of unclean hands is a question of fact that should be (and is routinely) tried to the jury in its entirety.  Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, 106 F.3d 894, 899 (9th Cir. 1997) (upholding district court's ruling where jury decided questions of laches, equitable estoppel, acquiescence, and unclean hands).  Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision. Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

Mattel's complaint that this instruction is overbroad is inaccurate, and its suggested counter instruction would inappropriately limit the scope of conduct that the jury may

374

1  consider.  In fact, Bryant's proposed instruction properly and expressly directs  the jury to

2  consider appropriate types of misconduct that relate to Mattel's claims against Bryant, and

3  is not overbroad.    In fact, the language in Bryant's instruction defining types of

4  misconduct the jury can consider directly tracks the language of <u>Kendall-Jackson Winery</u>,

5  a leading case on this issue (as quoted in the authority section originally submitted in

6  support of Bryant's proposed instruction).    Mattel, on the other hand, while

7  overemphasizing the limits already clear from Bryant's instruction, fails to mention that

8  the conduct does not need to be illegal or criminal, and that it may occur either before or

9  during the litigation.  <u>Kendall-Jackson Winery, Ltd. v. Superior Court</u>, 76 Cal. App. 4th

10 970, 979 (1999) ("[T]he misconduct need not be a crime or an actionable tort.    Any

11 conduct that violates conscience, good faith, or other equitable standards of conduct is

12 sufficient cause to invoke the doctrine.").    Thus, Bryant's instruction, not Mattel's,

13 presents the more accurate and even-handed direction for the jury.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PHASE 1(b) – Damages**

**<u>Damages—Introduction</u>**

You have found in favor of Mattel as to the following claims: _____.  I will now instruct you as to the measure of damages for each of those claims.  Damages means the amount of money that will reasonably and fairly compensate Mattel for any injury you find was caused by the Defendants.

It is for you to determine what damages, if any, have been proved.   Mattel has the burden of proving damages by a preponderance of the evidence.  However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority:**    Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007) (as modified).

## Damages—Introduction

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Damages—Introduction on the following grounds:

1.     This proposed instruction is duplicative given that the CACI Model Instructions regarding damages to be awarded on Mattel's state law claims against defendants include general introductory information regarding the purpose of damages and the like.  *E.g.*, CACI Nos. 350, 3901.

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Damages—Introduction**

**MGA Parties' and Bryant's Response**

The MGA Parties and Bryant propose this instruction, which is more inclusive and more general than the CACI instructions cited by Mattel, to give the jury a general introduction to the concept of damages before delving into the various means of calculating damages for different claims.  While the instructions relating to each means of calculating damages may also have introductory language, the MGA Parties and Bryant suggest that a separate, general introduction will ensure that the jury understands that these principles apply universally.

## Introduction to Contract Damages

The purpose of contract damages is to put the plaintiff in as good a position as it would have been if the defendant had performed as promised.

To recover damages for any harm, Mattel must prove:

1.      That the harm was likely to arise in the ordinary course of events from the breach of the contract; *or*

2.      That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

The damages awarded should, insofar as possible, place the injured party in the same position it would have held had the contract properly been performed, but such benefit may not exceed the benefit which it would have received had the promisor performed.

Mattel must also prove the amount of its damages according to the following instructions. Although Mattel does not have to prove the exact amount of damages, you must not speculate or guess in awarding damages.

**Authority:**  CACI No. 350 (2008) (as modified); <u>Brandon & Tibbs v. George Kevorkian Accountancy Corp.</u>, 226 Cal. App. 3d 442, 468 (1990).

**<u>Introduction to Contract Damages</u>**

**<u>Mattel's Objection</u>**

Mattel objects to defendants' proposed instruction regarding Introduction to Contract Damages on the following grounds:

1.    Defendants' proposed instruction deviates from the model instruction found in CACI.  Defendants have added unnecessary and confusing phrases, changing "The purpose of such damages is to put Mattel in as good a position as it would have been if Mr. Bryant had performed as promised," to "The damages awarded should, ***insofar as possible***, place the injured party in the same position it would have held had the contract properly been performed, ***but such benefit may not exceed the benefit which it would have received had the promisor performed***."  Mattel's proposed instruction regarding Introduction to Contract Damages conforms to the model instruction as written.  *See* Mattel's Proposed Jury Instructions, at 61.

**Introduction to Contract Damages**

**MGA Parties' and Bryant's Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.   Jury instructions do not come down from any mountain or rise up from any sea.   Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.   This description does not denigrate their value, it simply places them in the niche where they belong.").   Indeed, modification is sometimes necessary to make an instruction accurate and complete.   See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

The MGA Parties and Bryant have modified the CACI instruction to accurately include the principle that damages cannot exceed the benefit which Mattel would have received had the contract been performed, as stated in Brandon & Tibbs v. George Kevorkian Accountancy Corp., 226 Cal. App. 3d 442, 468 (1990) (cited in support of the instruction). Here, where Mattel claims Mr. Bryant's earnings for all of the work he has done for the past eight years for MGA as damages, it would be highly prejudicial not to instruct the jury on this issue.

1  Although Mattel suggests using its proposed instruction on the subject here, Mattel's
2  proposed instruction is inappropriate for several reasons. For example, Mattel claims
3  disgorgement of profits, which is not an available remedy for breach of contract.  See
4  Allied Equi. Corp. v. Litton Saudi Arabia, Ltd., 7 Cal. 4th 503, 515 (1994) (contract
5  damages are limited to damages sufficient to make a party whole, that is place the party in
6  the same position it would have been if the breach had not occurred);  Cal. Civ. Code §
7  3300.   Moreover, profits earned by Mr. Bryant were not foreseeable nor within the
8  expectations of the parties. Id.  Further, damages claimed must be proximately caused by
9  the breach whereas the majority of Bryant's profits were earned as payment for his
10  consulting services.  See Postal Instant Press, Inc. v. Sealy, 43 Cal. App. 4th 1704, 1710
11  (1996).  Mattel's proposed instruction also fails to advise the jury that the benefit of the
12  damages awarded may not exceed the benefit which Mattel would have received had
13  Bryant performed as promised. See Brandon & Tibbs, 226 Cal. App. 3d at 468.  Finally,
14  Mattel's instruction fails to distinguish between the different claims of breach of contract
15  alleged by Mattel—breach of Section 2(a) of the Inventions Agreement, breach of Section
16  3(a) of the Inventions Agreement and breach of the Questionnaire, thus risking jury
17  confusion.
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## Measure of Damages—Breach of the "Inventions" Provision of the Employee Agreement

If you have concluded that Carter Bryant breached Section 2(a) of the Employee Agreement, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach. The purpose of such damages is to put Mattel in as good a position as it would have been if Carter Bryant had performed as promised.

To recover damages for any harm, Mattel must prove:

1.     That the harm was likely to arise in the ordinary course of events from the breach of the contract; or

2.     That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

The damages awarded should, insofar as possible, place the injured party in the same position it would have held had the contract properly been performed, but such benefit may not exceed the benefit which it would have received had the promisor performed.

For example, if you find Carter Bryant breached section 2(a) of the Employee Agreement by failing to give Mattel three BRATZ sketches, you must award damages to compensate Mattel for the harm caused by that breach or to place Mattel in the same position it would have been if Carter Bryant had turned over those sketches to Mattel. In other words, you should award Mattel damages equal to the value of those three sketches at the time of the breach.

1  **Authority:**  CACI No. 350 (2008) (as modified); <u>Brandon & Tibbs v. George Kevorkian</u>

2  <u>Accountancy Corp.</u>, 226 Cal. App. 3d 442, 468 (1990).

**Measure of Damages—Breach of the "Inventions" Provision of the Employee Agreement**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Measure of Damages— Breach of the "Inventions" Provision of the Employee Agreement on the following grounds:

1. Defendants' proposed instruction deviates from the model instruction found in CACI. For example, defendants have added unnecessary and confusing phrases, such as changing "The purpose of such damages is to put Mattel in as good a position as it would have been if Mr. Bryant had performed as promised," to "The damages awarded should, *insofar as possible*, place the injured party in the same position it would have held had the contract properly been performed, *but such benefit may not exceed the benefit which it would have received had the promisor performed*." Mattel's proposed instruction conforms to the model instruction as written. *See* Mattel's Proposed Jury Instructions, at 61.

2. Defendants have also added an argumentative and misleading "example" to this proposed instruction regarding damages for one potential breach of contract – Mr. Bryant's failure to disclose three unidentified "BRATZ sketches" to Mattel. Defendants' proposed instruction attempts to interfere with the jury's role in this case. It is for the jury to determine the specific damages caused by Mr. Bryant's contractual breaches based on the evidence presented during the trial and the law given to the jury by the Court. Defendants' proposed instruction tells the jury that it should award a specific measure of damages, "the value of those three sketches at the time of the breach." This articulation of the measure of damages is not supported by the law, and they cite no authority that would support this argumentative instruction. Mattel's proposed instruction provides the jury

1    with the applicable law as set forth in the model instruction.  *See* Mattel's Proposed Jury

2    Instructions, at 61.

3            3.        The proposed instruction is confusing in that it states:  "If you have concluded

4    that Carter Bryant breached Section 2(a) of the Employee Agreement, then you must now

5    decide how much money will reasonably compensate Mattel for the harm caused by the

6    breach."  Damages will be determined by the jury in Phase 1B and will obviously only be

7    determined as to claims for which the jury found defendants liable in Phase 1A.

8    Accordingly, defendants' proposed instructions regarding damages should clarify, if

9    adopted, that liability has already been determined.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**1** **Measure of Damages—Breach of the "Inventions" Provision of the Employee**

**2** **Agreement**

**3**

**4** **MGA Parties' and Bryant's Response**

**5**

**6** Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

**7** In proposing jury instructions, the parties are permitted to modify the language of any

**8** model instruction to make it less confusing or more appropriate in the context of a

**9** particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)

**10** (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

**11** texts of 'standard' jury instructions are not debated and hammered out by legislators, but

**12** by ad hoc committees of lawyers and judges.   Jury instructions do not come down from

**13** any mountain or rise up from any sea.   Their precise wording, although extremely useful,

**14** is not blessed with any special precedential or binding authority.   This description does not

**15** denigrate their value, it simply places them in the niche where they belong.").   Indeed,

**16** modification is sometimes necessary to make an instruction accurate and complete.   See,

**17** e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

**18** of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

**19** district court merely read the model jury instruction, it would have committed plain error,

**20** since that instruction makes no reference whatsoever to knowledge or intent.").

**21**

**22** MGA Parties and Bryant have modified the CACI instruction to accurately include the

**23** principle that damages cannot exceed the benefit which Mattel would have received had

**24** the contract been performed, as stated in Brandon & Tibbs (cited in support of the

**25** instruction).   Here, where Mattel claims Mr. Bryant's earnings for all of the work he has

**26** done for the past eight years for MGA as damages, it would be highly prejudicial not to

**27** instruct the jury on this issue.

**28**

1   The MGA Parties and Bryant provided a practical example in their instruction to aid the
2   jury in conceptualizing what benefit of the bargain damages are, as the model instruction
3   only describes compensatory damages.  This example can be modified to reflect whatever
4   liability determination is made (if any) in 1A at that time.  Indeed, the fact that Mattel's
5   proposed instruction claims disgorgement of profits—a remedy to which it is not entitled
6   for breach of contract—highlights the need for providing the jury with a concrete example
7   as to the type of damages permissible for this claim.

9   Although Mattel suggests using its proposed instruction on the subject here, Mattel's
10  proposed instruction is inappropriate, as, for example, it fails to distinguish among the
11  various provisions (notably, Sections 2(a) and 3(a) of Bryant's Inventions Agreement and
12  the Questionnaire), which Bryant is alleged to have breached.  Also, Mattel's proposed
13  instruction does not explain benefit of the bargain damages and seeks "disgorgement of
14  profits"—which it is not even entitled to for breach of contract.

16  Furthermore, the model instruction provides an instruction for breach of contract damages
17  for the "harm caused by the breach."  Mattel, however, has throughout this case sought not
18  compensatory damages for the "harm caused" but rather benefit of the bargain damages—
19  the benefit Mattel would have received had Mr. Bryant performed, as its proposed
20  instruction on breach of contract makes clear. The MGA Parties and Bryant have therefore
21  appropriately modified the model instruction to account for the type of damages Mattel
22  seeks (benefit of the bargain) and the corresponding limiting principle – i.e., that  the jury
23  cannot award damages that exceed the benefit Mattel would have received.

25  Mattel also complains that the proposed instruction is confusing in that it states:  "If you
26  have concluded that Carter Bryant breached Section 2(a) of the Employee Agreement, then
27  you must now decide how much money will reasonably compensate Mattel for the harm
28  caused by the breach." The quoted sentence, however, is from the Model Instruction; it is

1  entirely appropriate to modify that sentence to reflect whatever liability determination (if
2  any) is made in Phase 1A at that time.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Measure of Damages—Breach of the "Moonlighting" Provision of the Employee Agreement**

If you have concluded that Carter Bryant breached Section 3(a) of the Employee Agreement, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach. The purpose of such damages is to put Mattel in as good a position as it would have been if Carter Bryant had performed as promised.

To recover damages for any harm, Mattel must prove:

1.   That the harm was likely to arise in the ordinary course of events from the breach of the contract; *or*

2.   That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

For example, if you find Carter Bryant breached Section 3(a) of the Employee Agreement by moonlighting for MGA or creating original artistic work for MGA, you must award damages to Mattel to compensate Mattel for the loss of Mr. Bryant's exclusive services as an employee, i.e., the amount Mattel paid Mr. Bryant during the time he also worked for MGA.

**Authority:**  CACI No. 350 (2008) (as modified).

**Measure of Damages—Breach of the "Moonlighting" Provision of the Employee Agreement**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Measure of Damages—Breach of the "Moonlighting" Provision of the Employee Agreement on the following grounds:

1.      Defendants' proposed instruction deviates from the model instruction found in CACI.  Defendants have added an argumentative and misleading "example" to this proposed instruction regarding damages for one potential breach of contract – Mr. Bryant's "moonlighting for MGA."  Defendants' proposed instruction attempts to interfere with the jury's role in this case.  It is for the jury to determine the specific damages caused by Mr. Bryant's contractual breaches based on the evidence presented during the trial and the law given to the jury by the Court.  Defendants' proposed instruction tells the jury that it should award a specific measure of damages, "the amount Mattel paid Mr. Bryant during the time he also worked for MGA."  This articulation of the measure of damages is not supported by the law, and defendants cite no authority that would support this argumentative instruction.  Mattel's proposed instruction provides the jury with the applicable law as set forth in the model instruction.  *See* Mattel's Proposed Jury Instructions, at 61.

2.      The proposed instruction is also confusing in that it states:  "If you have concluded that Carter Bryant breached Section 3(a) of the Employee Agreement, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach."  Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the jury found defendants liable in Phase 1A.  Accordingly, defendants' proposed instructions regarding damages should clarify, if adopted, that liability has already been determined.

391

**Measure of Damages—Breach of the "Moonlighting" Provision of the Employee Agreement**

**MGA Parties' and Bryant's Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case. See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

The MGA Parties and Bryant provided an example in their instruction to aid the jury in conceptualizing what damages are available for breach of section 3(a).  Moreover, Mattel's own instruction, suggested by Mattel for use here, fails to distinguish among the various provisions (notably, Section 2(a) and 3(a) of Bryant's Invention Agreement and the Questionnaire) which Bryant is alleged to have breached.  By failing to differentiate between the different alleged breaches of contract and to base damages only on the specific breaches found to have occurred,  Mattel's instruction seeks to confuse the jury by

improperly suggesting that the jury need not consider the specific nature of the breach in determining damages.  Mattel's instruction would thus severely prejudice defendants by improperly inviting the jury to award the full scope of damages that Mattel seeks for *all* of the various alleged breaches, even if the jury has found only a more limited breach.

Unlike Mattel, the MGA Parties and Bryant have provided separate instructions to assist the jury in separately considering the harm and/or the benefit of the bargain for each alleged breach.  The fact that Mattel claims "disgorgement of profits" in its proposed instruction—a measure of damages not permitted for breach of contract—highlights the need both for separate instructions and for an illustration that assists the jury in considering the damages for each alleged breach.

Mattel also complains that the proposed instruction is confusing in that it states:  "If you have concluded that Carter Bryant breached Section 3(a) of the Employee Agreement, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach." The quoted sentence, however, is from the Model Instruction; it is entirely appropriate to modify that sentence to reflect whatever liability determination (if any) is made in Phase 1A at that time.

**Measure of Damages—Breach of the Conflict Questionnaire**

If you have concluded that Carter Bryant breached the Conflict Questionnaire, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach.  The purpose of such damages is to put Mattel in as good a position as it would have been if Carter Bryant had performed as promised.

To recover damages for any harm, Mattel must prove:

  1.  That the harm was likely to arise in the ordinary course of events from the breach of the contract; *or*

  2.  That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

For example, if you find Carter Bryant breached the Questionnaire by failing to notify Mattel that he had a conflict of interest, you must award damages for the harm caused by that breach, such as an amount equal to the salary paid to Mr. Bryant after the conflict of interest arose.

**Authority:**  CACI No. 350 (2008) (modified).

**Measure of Damages—Breach of the Conflict Questionnaire**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Measure of Damages—Breach of the Conflict Questionnaire on the following grounds:

1.      Defendants' proposed instruction deviates from the model instruction found in CACI.  Defendants have added an argumentative and misleading "example" to this proposed instruction regarding damages for one potential breach of contract – Mr. Bryant's failure to notify Mattel of a conflict of interest.  Defendants' proposed instruction attempts to interfere with the jury's role in this case.  It is for the jury to determine the specific damages caused by Mr. Bryant's contractual breaches based on the evidence presented during the trial and the law given to the jury by the Court.  Defendants' proposed instruction tells the jury that it should award a specific measure of damages, "the salary paid to Mr. Bryant after the conflict of interest arose."  This articulation of the measure of damages is not supported by the law, and defendants cite no authority that would support this argumentative instruction.  Mattel's proposed instruction, in contrast, provides the jury with the correct applicable law as set forth in the model instruction.  *See* Mattel's Proposed Jury Instructions, at 61.

2.      The proposed instruction is also confusing in that it states:  "If you have concluded that Carter Bryant breached the Conflict Questionnaire, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach."  Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the jury found defendants liable in Phase 1A.  Accordingly, defendants' proposed instructions regarding damages should clarify, if adopted, that liability has already been determined.

**Measure of Damages—Breach of the Conflict Questionnaire**

**MGA Parties' and Bryant's Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case. See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges. Jury instructions do not come down from any mountain or rise up from any sea. Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority. This description does not denigrate their value, it simply places them in the niche where they belong."). Indeed, modification is sometimes necessary to make an instruction accurate and complete. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent."). As shown below, this is exactly what the MGA Parties and Bryant did here. The MGA Parties and Bryant provided an example in their instruction to aid the jury in conceptualizing how to measure damages emanating for a contract breach.

The practical example proposed in the MGA Parties' and Bryant's instruction is simply an illustration to assist the jury in a complex case to determine what damages are available for breach of the Questionnaire, as opposed to breach of sections 2(a) or 3(a) of the Inventions Agreement. This example can be modified to reflect whatever liability determination is made (if any) in 1A at that time. Indeed, Mattel's own proposed instruction suggested for

use here is inappropriate, as it does not explain benefit of the bargain damages and seeks "disgorgement of profits"—which it is not even entitled to for breach of contract. Further, Mattel's failure to provide separate instructions as to each of the alleged breaches of contract highlights the need to provide the examples such as those set forth in MGA Parties and Bryant's proposed instructions. As with the preceding instruction, Mattel seeks to mislead the jury by giving one instruction, and claiming one sum as damages, even though the alleged breaches are based on distinct alleged conduct and give rise to distinct damages.

Mattel also complains that the proposed instruction is confusing in that it states: "If you have concluded that Carter Bryant breached the Conflict Questionnaire, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach." The quoted sentence, however, is from the Model Instruction; it is entirely appropriate to modify that sentence to reflect whatever liability determination (if any) is made in Phase 1A at that time.

## **Measure of Damages for Intentional Interference with Contract**

If you have concluded that Isaac Larian, MGA and MGA (HK) intentionally interfered with _____, then you must now decide how much money will reasonably compensate Mattel for the harm caused by that interference.

To recover damages for any harm, Mattel must prove:

     1.     The financial loss resulting from the loss of the benefits of the contractual relationship; and

     2.     Consequential losses caused by the interference.

**Authority:** Restatement (Second) of Torts § 774A (1979); Di Loreto v. Shumake, 38 Cal. App. 4th 35, 38 (1995); BAJI No. 7.89 (2008) (as modified).

**Measure of Damages for Intentional Interference with Contract**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Measure of Damages for Intentional Interference With Contract on the following grounds:

1. Defendants fail to cite the model instruction found in CACI, the Court's preferred source for jury instructions on California law. Instead, their proposed instruction comes from an inapposite case and BAJI, which is no longer identified by the Court as a source for jury instructions, *see* Scheduling Order at 9, and is not officially approved by California state court rules. *See Cal. Rule of Court* 2.1050 (stating that CACI "are the official instructions for use in the state of California."). The case defendants cite deals with the availability of emotional distress damages (which are not at issue here) and relies on the same BAJI instruction defendants do. *See Di Loreto v. Shumake*, 38 Cal. App. 4th 35, 38-39 (1995). Intentional interference with contractual relations is a tort, and CACI No. 3901, Introduction to Tort Damages, sets forth the applicable law. Mattel's proposed instruction conforms to CACI No. 3901. *See* Mattel's Proposed Jury Instructions, at 62.

2. This proposed instruction also fails to inform the jury that Mattel is seeking punitive damages against defendants in connection with its claims for intentional interference with contractual relations. *See* Mattel's Proposed Jury Instructions, at 88; Mattel, Inc.'s Second Amended Answer and Counterclaims, at ¶ 128.

3. Finally, the proposed instruction is also confusing in that it states: "If you have concluded that Isaac Larian, MGA and MGA (HK) intentionally interfered with _____, then you must now decide how much money will reasonably compensate Mattel for the harm caused by that interference." Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the jury found defendants liable in Phase 1A. Accordingly, the proposed instructions regarding damages should clarify, if adopted, that liability has been determined.

**Measure of Damages for Intentional Interference with Contract**

**MGA Parties' and Bryant's Response**

Mattel's complaint regarding the defendants' reliance on Di Loreto v. Shumake, 38 Cal. App. 4th 35 (1995), and BAJI § 7.89 (2008), which was discussed in the Di Loreto case, is misplaced.   Di Loreto states that damages for tortious interference are the "'economic harm to the plaintiff proximately caused by the acts of the defendant.'" 38 Cal. App. 4th at 39 (internal quotations and citations omitted).   The fact that it goes on to discuss the impropriety of emotional distress damages does not change this.   The proposed instruction accurately reflects this measure, using some language borrowed from the BAJI.   While no longer the official model, the BAJI continue to be relied upon as a source of jury instruction language in both federal and California courts.   See, e.g., Jones v. Hollenback, 2007 WL 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury Instruction No. 7 is not a Ninth Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22, is irrelevant.   The instruction correctly and clearly states the law.   There is nothing confusing about the purpose and intent of this instruction."); Buell-Wilson v. Ford Motor Co., 160 Cal. App. 4th 1107, 1167 (2008) (asserting that, regarding punitive damages, "[a]n appropriate jury instruction would have been one similar to BAJI No. 14.72.2"); Mayes v. Bryan, 139 Cal. App. 4th 1075, 1091-92 (2006) (approving an instruction given at trial that was a mixture of CACI and BAJI models; noting that using definition of term from BAJI instruction made CACI instruction intelligible).

As for Mattel's complaint that the instruction does not contain Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an instruction is unnecessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

1   2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is

2   supported by law and has foundation in the evidence").

3

4   Mattel also complains that the proposed instruction is confusing in that it states: "If you

5   have concluded that Isaac Larian, MGA and MGA (HK) intentionally interfered with

6   _____, then you must now decide how much money will reasonably compensate Mattel

7   for the harm caused by that interference." The quoted sentence, however, is from the

8   Model Instruction; it is entirely appropriate to modify that sentence to reflect whatever

9   liability determination (if any) is made in Phase 1A at that time.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Measure of Damages for Conversion</u>**

If you have concluded that Mattel proved its claim of conversion against _____, then you must now decide Mattel's damages.

Mattel's damages are based on the fair market value of the tangible physical property at the time defendant(s) wrongfully exercised control over it.  Fair market value is the highest price that a willing buyer would have paid to a willing seller, assuming:

      1.      That there is no pressure on either one to buy or sell; and

      2.      That the buyer and seller know all the uses and purposes for which the tangible physical property is reasonably capable of being used.

**Authority:**  CACI No. 2102 (2008) (as modified).

**Measure of Damages for Conversion**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Measure of Damages for Conversion on the following grounds:

1.     Defendants' proposed instruction deviates from the model instruction found in CACI.  The proposed instruction is misleading and incomplete, in that it fails to inform the jury that Mattel is also entitled to recover damages constituting reasonable compensation for the time and money spent by Mattel in attempting to recover its converted property. *See* CACI No. 2102; Mattel's Proposed Jury Instructions, at 66.

2.     This proposed instruction also fails to inform the jury that Mattel is seeking punitive damages against defendants in connection with its conversion claims.  *See* Mattel's Proposed Jury Instructions, at 66; Mattel, Inc.'s Second Amended Answer and Counterclaims, at ¶ 161.

3.     This proposed instruction also fails to recognize that Mattel may be entitled to seek damages based on the fair market value of the property at the time the conversion was discovered, rather than at the time the property was converted, when an award based on the value at the time of the conversion would be manifestly unjust.  *See Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

4.     The proposed instruction is confusing in that it states:  "If you have concluded that Mattel provides it claim of conversion against ____, then you must now decide Mattel's damages."  Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the jury found defendants liable in Phase 1A.  Accordingly, the proposed instructions regarding damages should clarify, if adopted, that liability has been determined.

1   **Measure of Damages for Conversion**

2

3   **MGA Parties' and Bryant's Response**

4

5   Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

6   In proposing jury instructions, the parties are permitted to modify the language of any

7   model instruction to make it less confusing or more appropriate in the context of a

8   particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)

9   (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

10  texts of 'standard' jury instructions are not debated and hammered out by legislators, but

11  by ad hoc committees of lawyers and judges.  Jury instructions do not come down from

12  any mountain or rise up from any sea.  Their precise wording, although extremely useful,

13  is not blessed with any special precedential or binding authority.  This description does not

14  denigrate their value, it simply places them in the niche where they belong.").   Indeed,

15  modification is sometimes necessary to make an instruction accurate and complete.  See,

16  e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

17  of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

18  district court merely read the model jury instruction, it would have committed plain error,

19  since that instruction makes no reference whatsoever to knowledge or intent.").

20

21  However, Mattel's first objection is legitimate and the omission of the element was in

22  error. The MGA Parties and Bryant propose adding a sentence at the close of the

23  instruction stating that "Mattel may also recover for a reasonable compensation for the

24  time and money it spent attempting to recover its converted property.   However, this

25  compensation may not include any time or money expended in pursuit of litigation."  See

26  Haines v. Parra, 193 Cal. App. 3d 1553, 1559 (1987); CACI No. 2102 Sources and

27  Authority.

28

1   As for Mattel's complaint that the instruction does not contain Mattel's claim for punitive
2   damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an
3   instruction is unnecessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial
4   court properly refused to instruct jury on punitive damages, as there was not clear and
5   convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir.
6   2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is
7   supported by law and has foundation in the evidence").

8

9   Further, Mattel's assertion that the instruction should advise the jury that may be entitled
10  to seek damages based on the fair market value of the property at the time the conversion
11  was discovered, rather than at the time the property was converted, has no evidentiary
12  basis because Mattel failed to demonstrate that an award based on the value at the time of
13  the conversion would be manifestly unjust here. See In re Guillory, 285 B.R. 307, 315
14  (Bankr. C.D. Cal. 2002) ("The measure of damages for conversion is the fair market value
15  of the property at the time of the conversion, plus interest from that date."), citing Cal. Civ.
16  C. § 3336 (West 2000); cf. Betzer v. Olney, 14 Cal. App. 2d 53, 61 (1936) (cited by Mattel)
17  (requiring "special circumstances" for a different measure of damages to apply).  This is
18  particularly true given that the Court has confirmed that Mattel's conversion claim cannot
19  be based on any claim to the Bratz copyrights or other intangible property, but only to the
20  tangible property itself.

21

22  Mattel also complains that the proposed instruction is confusing in that it states:  "If you
23  have concluded that Mattel provides it claim of conversion against ____, then you must
24  now decide Mattel's damages." The quoted sentence, however, is from the Model
25  Instruction; it is entirely appropriate to modify that sentence to reflect whatever liability
26  determination (if any) is made in Phase 1A at that time.

27

28

**Measure of Damages for Breach of Fiduciary Duty**

If you have concluded that Carter Bryant breached his fiduciary duty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach.  The purpose of such damages is to award Mattel damages sufficient to return it to the position it was in prior to the alleged breach.

You should award damages to compensate Mattel for the harm caused by the conduct you found to be a breach of fiduciary duty and not for harm caused by any conduct not in breach of Bryant's fiduciary duties.

For example, if you found that Bryant used Mattel resources in breach of his fiduciary duty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  If you found that Bryant breached his fiduciary duty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  If you found that Bryant breached his fiduciary duty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  If you found Bryant breached his fiduciary duty by presenting the BRATZ sketches  owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:**  Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v.

Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products).

**Measure of Damages for Breach of Fiduciary Duty**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Measure of Damages for Breach of Fiduciary Duty on the following grounds:

1.      Defendants fail to cite the model instruction found in CACI, the Court's preferred source for jury instructions on California law.  Instead, defendants cite various inapposite cases as the source for this proposed instruction.  There is a CACI instruction on point.  A breach of fiduciary duty is a tort.  Accordingly, CACI No. 3901 regarding Introduction to Tort Damages sets forth the applicable law.  *See* 6 Witkin, *Summary of Cal. Law*, Torts, § 1717 (2005) (general tort measure of damages under *Cal. Civ. Code* § 3333 is the appropriate measure of damages for breach of duty).  Mattel's proposed instruction conforms to CACI No. 3901.  *See* Mattel's Proposed Jury Instructions, at 63.  Mattel's proposed instruction also makes clear that Mattel is entitled to seek disgorgement of profits earned by Mr. Bryant as a result of his breach of fiduciary duty.  *See Adams v. Herman*, 106 Cal. App. 2d 92, 99 (1951).

2.      Defendants' proposed instruction is argumentative and misleading, and impermissibly attempts to interfere with the jury's role in this case.  It is for the jury to determine the specific damages caused by Carter Bryant's wrongful conduct based on the evidence presented during the trial and the law given to the jury by the Court.  Defendants' examples of specific damages the jury "should award" under various fact-specific scenarios impermissibly interferes with that function and could potentially mislead the jury to believe that these examples limit the measure of damages to which Mattel is entitled.  Their articulation of the damages suffered by Mattel as a result of the breach referenced is not supported by the law.  Mattel is entitled to recover damages for all the harm caused by Mr. Bryant's wrongful conduct, even if such harm could not have been anticipated.  *See* CACI No. 3901.

3.     This proposed instruction also fails to inform the jury that Mattel is seeking punitive damages against Mr. Bryant in connection with this claim.  *See* Mattel's Proposed Jury Instructions, at 63; Mattel, Inc.'s Second Amended Answer and Counterclaims, at ¶ 134.

4.     The proposed instruction is also confusing in that it states:  "If you have concluded that Carter Bryant breached his fiduciary duty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach."  Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the Court found or the jury found defendants liable in Phase 1A.  Accordingly, the proposed instructions regarding damages should clarify, if adopted, that liability has been determined.

**Measure of Damages for Breach of Fiduciary Duty**

**MGA Parties' and Bryant's Response**

In its objections, Mattel once again seeks to present the jury with the most generic and abstract version of an instruction it can identify, and urges use of CACI No. 3901 - Introduction to Tort Damages.  The instruction proposed by the MGA Parties and Bryant focuses the jury's attention on the particular breach at issue and directs them to find damages using specific, rather than generic, language.  In doing so, the MGA Parties' and Bryant's proposed instruction avoids the problems inherent in Mattel's proposed instruciotn, which are described in the MGA Parties' and Bryant's Objection thereto.  This Objection is incorporated by reference in its entirety.

Although Mattel proposes its own instruction on the subject, Mattel's proposed instruction is inappropriate because it does not tell the jury that it may only compensate Mattel for the harm caused by the breach. This omission is not harmless, given the complexity of the case and the fact that Mattel cannot recover for harm caused by legitimate competition after Bryant left Mattel's employment. While Mattel takes issue with the practical example set forth in the MGA Parties' and Bryant's proposed instruction, this example is needed to assist jury in distinguishing between harm caused by breach, and harm caused by post employment competition, for which Mattel can get no damages. The cases cited in support of the instruction proposed by the MGA Parties and Bryant support the example given in the instruction.

As for Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an instruction is not necessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297

410

1  F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory

2  of the case if it is supported by law and has foundation in the evidence").

3

4  Mattel also complains that the proposed instruction is confusing in that it states:  "If you

5  have concluded that Carter Bryant breached his fiduciary duty to Mattel, then you must

6  now decide how much money will reasonably compensate Mattel for the harm caused by

7  the breach." The quoted sentence, however, is from the Model Instruction; it is entirely

8  appropriate to modify that sentence to reflect whatever liability determination (if any) is

9  made in Phase 1A at that time.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## Measure of Damages for Breach of Duty of Loyalty

If you have concluded that Carter Bryant breached his duty of loyalty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach.  The purpose of such damages is to award Mattel damages sufficient to return it to the position it was in prior to the alleged breach.

You must compensate Mattel for the harm caused by the conduct you found to be a breach of his duty of loyalty to Mattel, and not for harm caused by any conduct not in breach of Mr. Bryant's duty of loyalty.

For example, if you found that Bryant used Mattel resources in breach of his fiduciary duty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  If you found that Bryant breached his fiduciary duty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  If you found that Bryant breached his fiduciary duty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  If you found Bryant breached his fiduciary duty by presenting the BRATZ sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:** Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v.

Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products).

**Measure of Damages for Breach of Duty of Loyalty**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Measure of Damages for Breach of Duty of Loyalty on the following grounds:

1.     Defendants fail to cite the model instruction found in CACI, the Court's preferred source for jury instructions on California law.  Instead, defendants cite various inapposite cases as the source for this proposed instruction.  There is a CACI instruction on point.  A breach of the duty of loyalty is a tort.  Accordingly, CACI No. 3901 regarding Introduction to Tort Damages sets forth the applicable law.  *See* 6 Witkin, *Summary of Cal. Law*, Torts, § 1717 (2005) (general tort measure of damages under *Cal. Civ. Code* § 3333 is the appropriate measure of damages for breach of duty).  Mattel's proposed instruction conforms to CACI No. 3901.  *See* Mattel's Proposed Jury Instructions, at 63.  Mattel's proposed instruction also makes clear that Mattel is entitled to seek disgorgement of profits earned by Mr. Bryant as a result of his breach of the duty of loyalty.  *See Adams v. Herman*, 106 Cal. App. 2d 92, 99 (1951).

2.     Defendants' proposed instruction is argumentative and misleading, and impermissibly attempts to interfere with the jury's role in this case.  It is for the jury to determine the specific damages caused by Carter Bryant's wrongful conduct based on the evidence presented during the trial and the law given to the jury by the Court.  Defendants' examples of specific damages the jury "should award" under various fact-specific scenarios impermissibly interferes with that function and could potentially mislead the jury to believe that these examples limit the measure of damages to which Mattel is entitled.  Their articulation of the damages suffered by Mattel as a result of the breach referenced is not supported by the law.  Mattel is entitled to recover damages for all the harm caused by Mr. Bryant's wrongful conduct, even if such harm could not have been anticipated.  *See* CACI No. 3901.

3.     This proposed instruction also fails to inform the jury that Mattel is seeking punitive damages against Mr. Bryant in connection with this claim.  *See* Mattel's Proposed Jury Instructions, at 63; Mattel, Inc.'s Second Amended Answer and Counterclaims, at ¶ 146.

4.     The proposed instruction is also confusing in that it states:  "If you have concluded that Carter Bryant breached his duty of loyalty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by the breach."  Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the jury found defendants liable in Phase 1A. Accordingly, the proposed instructions regarding damages should clarify, if adopted, that liability has been determined.

415

1 **Measure of Damages for Breach of Duty of Loyalty**

2

3 **MGA Parties' and Bryant's Response**

4

5 In its objections, Mattel once again seeks to present the jury with the most generic and

6 abstract version of an instruction it can identify, and urges use of CACI No. 3901 -

7 Introduction to Tort Damages.  The instruction proposed by the MGA Parties and Bryant

8 focuses the jury's attention on the particular breach at issue and directs them to find

9 damages using specific, rather than generic, language.  In doing so, the MGA Parties' and

10 Bryant's proposed instruction avoids the problems inherent in Mattel's proposed

11 instruction, which are described in the MGA Parties' and Bryant's Objection thereto.  This

12 Objection is incorporated by reference in its entirety.

13

14 Although Mattel proposes its own instruction on the subject, Mattel's proposed instruction

15 is inappropriate because it does not tell the jury that it may only compensate Mattel for the

16 harm caused by the breach. This omission is not harmless, given the complexity of the

17 case and the fact that Mattel cannot recover for harm caused by legitimate competition

18 after Bryant left Mattel's employment. While Mattel takes issue with the practical example

19 set forth in the MGA Parties' and Bryant's proposed instruction, this example is needed to

20 assist jury in distinguishing between harm caused by breach, and harm caused by post

21 employment competition, for which Mattel can get no damages. The cases cited in support

22 of the instruction proposed by the MGA Parties and Bryant support the example given in

23 the instruction.

24

25 As for Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek

26 punitive damages, so such an instruction is not necessary. See Barry v. Raskov, 232 Cal.

27 App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages,

28 as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297

1 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory
2 of the case if it is supported by law and has foundation in the evidence").

3

4 Mattel also complains that the proposed instruction is confusing in that it states: "If you
5 have concluded that Carter Bryant breached his duty of loyalty to Mattel, then you must
6 now decide how much money will reasonably compensate Mattel for the harm caused by
7 the breach." The quoted sentence, however, is from the Model Instruction; it is entirely
8 appropriate to modify that sentence to reflect whatever liability determination (if any) is
9 made in Phase 1A at that time.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty**

If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his fiduciary duty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct.

You must compensate Mattel for the harm caused by MGA's aiding and abetting of Bryant's breach of his duty of loyalty to Mattel, and not for harm caused by any conduct not in breach of Bryant's duty of loyalty.

For example, if you found that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his fiduciary duty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  If you found that MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  If you found that MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  If you found MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by presenting the BRATZ sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:** Restatement (Second) of Torts § 876 (1979); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); <u>GAB Business Services,</u>

1  Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled
2  on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of
3  fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc.
4  v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales
5  resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347,
6  350 (1906) (damages were commissions received while still employed); see also Design
7  Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary
8  earned during time employee was disloyal, and not the profits from a contract that
9  evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F.
10 Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including
11 employee time used to develop competing products).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty on the following grounds:

1.    Defendants fail to cite the model instruction found in CACI, the Court's preferred source for jury instructions on California law.  Instead, defendants cite various inapposite cases as the source for this proposed instruction.  There is a CACI instruction on point.  Aiding and abetting a breach of fiduciary duty is a tort.  Accordingly, CACI No. 3901 regarding Introduction to Tort Damages sets forth the applicable law.  Mattel's proposed instruction conforms to CACI No. 3901.  *See* Mattel's Proposed Jury Instructions, at 65.

2.    In addition, defendants' proposed instruction is argumentative and misleading, and impermissibly attempts to interfere with the jury's role in this case.  It is for the jury to determine the specific damages caused by defendants' wrongful conduct based on the evidence presented during the trial and the law given to the jury by the Court.  Defendants' examples of specific damages the jury "should award" under various fact-specific scenarios impermissibly interferes with that function and could potentially mislead the jury to believe that these examples limit the measure of damages to which Mattel is entitled.  Their articulation of the damages suffered by Mattel as a result of defendants' aiding and abetting breach of fiduciary duty is not supported by the law.  None of the cases cited by defendants addresses the measure of damages for aiding and abetting breach of fiduciary duty.  Mattel is entitled to recover damages for all the harm caused by defendants' wrongful conduct, even if such harm could not have been anticipated.  *See* CACI No. 3901.

3.    This proposed instruction also fails to inform the jury that Mattel is seeking punitive damages against defendants in connection with this claim.  *See* Mattel's Proposed

Jury Instructions, at 65; Mattel, Inc.'s Second Amended Answer and Counterclaims, at ¶ 141.

4.      Finally, the proposed instruction is also confusing in that it states: "If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his fiduciary duty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct."  Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the jury found defendants liable in Phase 1A.  Accordingly, the proposed instructions regarding damages should clarify, if adopted, that liability has been determined.

**Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty**

**MGA Parties' and Bryant's Response**

In its objections, Mattel once again seeks to present the jury with the most generic and abstract version of an instruction it can identify, and urges use of CACI No. 3901 - Introduction to Tort Damages.  The instruction proposed by the MGA Parties and Bryant focuses the jury's attention on the particular breach at issue and directs them to find damages using specific, rather than generic, language.  In doing so, the MGA Parties' and Bryant's proposed instruction avoids the problems inherent in Mattel's proposed instruction, which are described in the MGA Parties' and Bryant's Objection thereto.  This Objection is incorporated by reference in its entirety.

Although Mattel proposes its own instruction on the subject, Mattel's proposed instruction is inappropriate because it seeks disgorgement of profits, regardless of when such profits were earned.  Profits for breach of fiduciary duty and breach of the duty of loyalty are limited to those profits earned by the defendant while defendant owed such a duty. Further, Mattel's instruction does not require Mattel to prove that it suffered any financial loss resulting from the conduct found to be aiding and abetting a breach of duty.  It also fails to caution the jury that it should award damages only for the conduct found to constitute aiding and abetting the breaches at issue. Thus, if the jury finds that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his duties, the jury should be told that it must award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  Similarly, if the jury found that MGA and Larian aided and abetted Bryant's breach of his duties by accepting additional work from MGA, the jury should be told that it must award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  In the same vein, if the jury finds that Bryant breached his

1  duties by directly competing with Mattel while still employed at Mattel, it must award
2  damages to compensate Mattel for the harm caused by that competition during the term of
3  his employment.   Finally, if the jury finds Bryant breached his duties by presenting the
4  BRATZ sketches owned by Mattel to MGA, it must compensate Mattel for the harm
5  caused by that breach, that is the value of the sketches at the time of the breach. The cases
6  cited in support of the MGA Parties' and Bryant's proposed instruction support the
7  examples given.

8

9  As for Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek
10  punitive damages, so such an instruction is not necessary. See Barry v. Raskov, 232 Cal.
11  App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages,
12  as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297
13  F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory
14  of the case if it is supported by law and has foundation in the evidence").

15

16  Mattel also complains that the proposed instruction is confusing in that it states:  "If you
17  have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of
18  his fiduciary duty to Mattel, then you must now decide how much money will reasonably
19  compensate Mattel for the harm caused by their wrongful conduct." The quoted sentence,
20  however, is from the Model Instruction; it is entirely appropriate to modify that sentence to
21  reflect whatever liability determination (if any) is made in Phase 1A at that time.

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty**

If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his duty of loyalty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct.

You must compensate Mattel for the harm caused by the MGA's and Larian's aiding and abetting of Bryant's breach of his duty of loyalty to Mattel, and not for harm caused by any conduct not in breach of Mr. Bryant's duty of loyalty.

For example, if you found that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his duty of loyalty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  If you found that MGA and Larian aided and abetted Bryant's breach of his duty of loyalty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  If you found that MGA and Larian aided and abetted Bryant's breach of his duty of loyalty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  If you found MGA and Larian aided and abetted Bryant's breach of his duty of loyalty by presenting the BRATZ sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:**  Restatement (Second) of Torts § 876 (1979); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); <u>GAB Business Services,</u>

1  Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled
2  on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of
3  fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc.
4  v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales
5  resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347,
6  350 (1906) (damages were commissions received while still employed); see also Design
7  Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary
8  earned during time employee was disloyal, and not the profits from a contract that
9  evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F.
10  Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including
11  employee time used to develop competing products).

**Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty on the following grounds:

1.      Defendants fail to cite the model instruction found in CACI, the Court's preferred source for jury instructions on California law.  Instead, defendants cite various inapposite cases as the source for this proposed instruction.  There is a model instruction on point in CACI.  Aiding and abetting a breach of the duty of loyalty is a tort.  Accordingly, CACI No. 3901 regarding Introduction to Tort Damages sets forth the applicable law.  Mattel's proposed instruction conforms to CACI No. 3901.  *See* Mattel's Proposed Jury Instructions, at 65.

2.      Defendants' proposed instruction is argumentative and misleading, and impermissibly attempts to interfere with the jury's role in this case.  It is for the jury to determine the specific damages caused by defendants' wrongful conduct based on the evidence presented during the trial and the law given to the jury by the Court.  Defendants' examples of specific damages the jury "should award" under various fact-specific scenarios impermissibly interferes with that function and could potentially mislead the jury to believe that these examples limit the measure of damages to which Mattel is entitled.  This articulation of the measure of damages is not supported by the law.  None of the cases cited by defendants even addresses the measure of damages for aiding and abetting breach of the duty of loyalty.  Mattel is entitled to recover damages for all the harm caused by defendants' wrongful conduct, even if such harm could not have been anticipated.  *See* CACI No. 3901.

3.      This proposed instruction also fails to inform the jury that Mattel is seeking punitive damages against defendants in connection with this claim.  *See* Mattel's Proposed

Jury Instructions, at 65; Mattel, Inc.'s Second Amended Answer and Counterclaims, at ¶ 154.

4.     Finally, the proposed instruction is also confusing in that it states: "If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his duty of loyalty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct." Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the jury found defendants liable in Phase 1A. Accordingly, the proposed instructions regarding damages should clarify, if adopted, that liability has been determined.

**Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty**

**MGA Parties' and Bryant's Response**

In its objections, Mattel once again seeks to present the jury with the most generic and abstract version of an instruction it can identify, and urges use of CACI No. 3901 - Introduction to Tort Damages. The instruction proposed by the MGA Parties and Bryant focuses the jury's attention on the particular breach at issue and directs them to find damages using specific, rather than generic, language. In doing so, the MGA Parties' and Bryant's proposed instruction avoids the problems inherent in Mattel's proposed instruction, which are described in the MGA Parties' and Bryant's Objection thereto. This Objection is incorporated by reference in its entirety.

Although Mattel proposes its own instruction on the subject, Mattel's proposed instruction is inappropriate because it seeks disgorgement of profits, regardless of when such profits were earned. Profits for breach of fiduciary duty and breach of the duty of loyalty are limited to those profits earned by the defendant while defendant owed such a duty. Further, Mattel's instruction does not require Mattel to prove that it suffered any financial loss resulting from the conduct found to be aiding and abetting a breach of duty. It also fails to caution the jury that it should award damages only for the conduct found to constitute aiding and abetting the breaches at issue. Thus, if the jury finds that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his duties, the jury should be told that it must award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used. Similarly, if the jury found that MGA and Larian aided and abetted Bryant's breach of his duties by accepting additional work from MGA, the jury should be told that it must award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA. In the same vein, if the jury finds that Bryant breached his

1  duties by directly competing with Mattel while still employed at Mattel, it must award
2  damages to compensate Mattel for the harm caused by that competition during the term of
3  his employment.   Finally, if the jury finds Bryant breached his duties by presenting the
4  BRATZ sketches owned by Mattel to MGA, it must compensate Mattel for the harm
5  caused by that breach, that is the value of the sketches at the time of the breach. The cases
6  cited in support of the MGA Parties' and Bryant's proposed instruction support the
7  examples given.

8

9  As for Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek
10 punitive damages, so such an instruction is not necessary. See Barry v. Raskov, 232 Cal.
11 App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages,
12 as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297
13 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory
14 of the case if it is supported by law and has foundation in the evidence").

15

16 Mattel also complains that the proposed instruction is confusing in that it states:  "If you
17 have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of
18 his duty of loyalty to Mattel, then you must now decide how much money will reasonably
19 compensate Mattel for the harm caused by their wrongful conduct." The quoted sentence,
20 however, is from the Model Instruction; it is entirely appropriate to modify that sentence to
21 reflect whatever liability determination (if any) is made in Phase 1A at that time.

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## COPYRIGHT—DAMAGES (17 U.S.C. § 504)

If you find for Mattel on its copyright infringement claim, you must determine Mattel's damages. Mattel is entitled to recover any profits of the Defendants attributable to the infringement, subject to certain exceptions I will reference in later instructions. Mattel must prove damages by a preponderance of the evidence.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 17.22 (2007) (as modified).

# COPYRIGHT—DAMAGES (17 U.S.C. § 504)

## Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Copyright—Damages (17 U.S.C. § 504) on the following grounds:

1. Defendants' proposed instruction deviates from the Ninth Circuit Model Instruction. Defendants have added superfluous and argumentative language, such as changing "Mattel is entitled to recover any profits of defendants attributable to the infringement," to "Mattel is entitled to recover any profits of defendants, *subject to certain exceptions I will reference in later instructions*." This modification is unnecessary and potentially misleading. Ninth Circuit Model Instructions 17.23 and 17.24 set forth the applicable law regarding the damages Mattel is entitled to recover for copyright infringement. Mattel's proposed jury instructions conform to the model instructions. *See* Mattel's Proposed Jury Instructions, at 55-56. Contrary to defendants' suggestion, Ninth Circuit Model Instruction 17.24 regarding "Defendants' Profits (17 U.S.C. § 504(b))" does not describe any "exceptions." Rather than following the model instruction, defendants appear to be referencing their own improper and unjustified proposed modifications to 17.24. *See* Mattel's Objections to Defendants' Proposed Instruction Regarding Copyright—Damages—Defendants' Profits.

**COPYRIGHT—DAMAGES (17 U.S.C. § 504)**

**MGA Parties' and Bryant's Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case. See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges. Jury instructions do not come down from any mountain or rise up from any sea. Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority. This description does not denigrate their value, it simply places them in the niche where they belong."). Indeed, modification is sometimes necessary to make an instruction accurate and complete. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

Mattel further objects to MGA's use of the language "subject to certain limitations I will reference in later instructions." But Mattel's claim for MGA's profits is indisputably subject to important limitations and restrictions.

First, before Mattel may claim any of MGA's profits, Mattel must first prove a causal nexus between the alleged infringement and MGA's revenues. See Polar Bear Prods. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004) ("[A] copyright owner is required to do more than toss up an undifferentiated gross revenue number; the revenue must bear a

1  legally significant relationship to the infringement."); Mackie v. Rieser, 296 F.3d 909, 915

2  (9th Cir. 2002) ("[C]ourt must conduct a threshold inquiry into whether there is a legally

3  sufficient causal link between the infringement and subsequent indirect profits."); 14

4  Nimmer, on Copyright § 14.03 [B][2] ("The Ninth Circuit has emphasized the need to

5  inquire into the causal relationship between infringements and profits before even reaching

6  the question of apportionment"); Ninth Circuit Civil Jury Instructions, 17.24.  Thus, unless

7  and until Mattel meets its initial causal burden, it is not entitled to recover any portion of

8  MGA's profits. See Vane v. The Fair, Inc., 676 F. Supp. 133 (E.D. Tex. 1987) (denying

9  award of infringer's profits where copyright owner failed to present sufficient proof of

10 infringer's gross revenue attributable to the infringement).

11

12 Second, in assessing MGA's "profits attributable to the infringement," the jury must

13 consider the extent to which those profits resulted from MGA's use of nonprotectable

14 elements of the copyrighted work.  See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d

15 1435, 1443 (9th Cir. 1994) (A "party claiming infringement may place 'no reliance upon

16 any similarity in expression resulting from unprotectable elements.") (quoting Aliotti v. R.

17 Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987)); Cavalier v. Random House, Inc., 297

18 F.3d 815, 822 (9th Cir. 2002) (the court "must take care to inquire only whether the

19 protectable elements, standing alone, are substantially similar.") (emphasis in original).

20 Thus, in Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 51 (2d Cir. 1939), the

21 Court reduced an award of the infringer's profits because, inter alia, the "general skeleton"

22 of the infringing story was "already in the public demesne."

23

24 Third, the jury must consider the elements of MGA's profits attributable to factors other

25 than the copyright work.  See 17 U.S.C. 504(b). ("[T]he infringer is required to prove …

26 the elements of profit attributable to factors other than the copyrighted work.")  As one

27 court observed, "sales are a function of many variables which are interrelated in complex

28 and often unknown ways." Sid & Marty Krofft Television Prods. Inc v. McDonalds Corp.,

1983 WL 1142, at *2 (C.D. Cal. Jan. 12, 1983).  The jury must therefore consider evidence that MGA's profits were attributable to other variables and factors beyond the alleged use of Mattel's copyright material.  Those factors include but are not limited to the BRATZ doll fashions, accessories, packaging, themes, characters.

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))**

The copyright owner is entitled to any profits of the defendant attributable to the infringement of the protected portion of plaintiff's copyrighted work.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the profits generated indirectly from the infringement.

The defendant's profit is determined by subtracting all expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the sale of a product associated with the infringement. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the protected portion of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than copying the protected portion of the copyrighted work. Such factors include: (1) the design of the doll, (2) development of the characters associated with the doll line, (3) development of themes associated with the dolls, (4) development of fashions sold with

the dolls, (5) development of accessories sold with the dolls, (6) packaging in which the dolls are sold, and (7) branding, marketing, and advertising efforts.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 17.24 (2007) (as modified).

## COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))

### Mattel's Objection

Mattel objects to defendants' proposed instruction regarding Copyright—Damages—Defendants' Profits (17 U.S.C. § 504(b)) on the following grounds:

1.      Defendants' proposed instruction deviates from the Ninth Circuit Model Instruction.  Defendants have added the following superfluous and argumentative phrases:

- Defendants have changed "[T]he copyright owner is entitled to any profits of the defendant attributable to the infringement," to "[T]he copyright owner is entitled to any profits of the defendant attributable to the infringement *of the protected portion of plaintiff's copyrighted work*."

- Defendants have changed "Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work," to "Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of *the protected portion of* the copyrighted work."

- Defendants have changed "The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work," to "The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than copying *the protected portion of* the copyrighted work."

There is no basis for defendants to insert these misleading and argumentative phrases into the model instruction, which provides an accurate statement of the law on this issue.  This is an improper attempt to engraft into this instruction the filtration analysis which, in the Ninth Circuit, does not apply to visual works.  Mattel's proposed instruction

1  conforms to the model instruction as written.  *See* Mattel's Proposed Jury Instructions, at

2  56.

3        2.     Defendants have added to the proposed jury instruction a list of "factors other

4  than copying the copyrighted work."  This list is nothing more than a biased and

5  argumentative recitation of arguments defendants will make in answer to Mattel's

6  copyright infringement claims, as set forth in defendants' expert reports.  Defendants do

7  not even pretend that this list is an accurate statement of the law, because they cite no

8  authority in support of these "factors."  Indeed, this appears to be the list of factors one of

9  defendants' experts, Paul Meyer, conjured to prepare his report, which is not a proper basis

10  for a jury instruction.  This proposed instruction also improperly attempts to interfere with

11  the jury's determination of Mattel's copyright infringement claims.  For example, to the

12  extent the jury determines that the first generation of Bratz dolls infringe the Bratz

13  drawings owned by Mattel, defendants certainly have no basis to instruct the jury that the

14  "design" of those Bratz dolls is a factor not attributable to the infringement.

15        3.     Defendants' proposed instruction incorporates the narrowest terms offered in

16  the model instruction when the broader terms are more applicable to the facts of this case.

17  Mattel's copyright infringement claims incorporate more than mere copying of Mattel's

18  works and sale of products – they cover all of defendants' infringement of Mattel's works,

19  including their use of those works in derivative works.

20

21

22

23

24

25

26

27

28

## COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))

## MGA Parties' and Bryant's Response

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

Mattel objects to use of the phrase "protected portion of the copyrighted work" because, as it claims, the "filtration analysis" does not apply to visual works in the Ninth Circuit. Mattel misapprehends the law.  In the Ninth Circuit, visual works are subject to the same general standards of analytic dissection and filtering as are other copyrighted works. (See MGA Parties' and Bryant's Response to Mattel's Objection to Instruction 1C, at ¶ 7.)

Mattel objects to the inclusion of a list of factors that the jury may consider in determining "the elements of profit attributable to factors other than the copyrighted work."  See 17

1  U.S.C. 504(b).  But the inclusion of specific apportionment factors simply modifies the
2  language of the model instruction to comport with the specific facts of this case.  As such,
3  the instruction is proper.  See U.S. v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992).

4

5  Moreover, juries may properly consider a wide variety of factors in apportioning profits
6  not attributable to the alleged infringement.  See, e.g., Sheldon v. Metro-Goldwyn Pictures
7  Corp., 309 U.S. 390, 407-08 (1940) (approving apportionment where profits of defendant's
8  film were largely attributable to the "drawing power" of the star performers and the
9  "expert supervision and direction"); Abend v. MCA, Inc., 863 F.2d 1465, 1480 (9th Cir.
10  1988) (remanding for apportionment where factors other than the underlying story-
11  particularly the talent and popularity of Alfred Hitchcock, Jimmy Stewart, and Grace
12  Kelly-"clearly contributed" to the success of the film "Rear Window"); Burns v. Imagine
13  Films Entm't, Inc., 2001 U.S. Dist. LEXIS 24653 (W.D.N.Y. Aug. 23, 2001) (apportioning
14  profits based on the "director, cast, set and costume design, cinematography, special
15  effects and other factors" contributing to success of the film "Backdraft").

16

17  Mattel specifically objects to the "design of the doll" as an apportionment factor because,
18  as it claims,  "defendants certainly have no basis to instruct the jury that the 'design' of
19  those BRATZ dolls is a factor not attributable to the infringement."  Mattel is incorrect.
20  At trial, MGA will introduce evidence that substantial portions of the BRATZ doll design
21  originated not from Carter Bryant's sketches, but from the contributions of various
22  sculptors, engineers, designers and other creative persons employed by MGA.
23  Additionally, MGA will present evidence that a significant portion of Mr. Bryant's
24  contributions to the design of BRATZ dolls occurred after October 2000.  The jury is
25  entitled to consider this evidence in assessing "the elements of profit attributable to the
26  copyrighted work."  See John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.,
27  322 F.3d 26 (1st Cir. 2003) (considering defendant's subsequent changes to the
28  copyrighted architectural design as a factor relevant to apportioning profits).

1

2  Finally, Mattel suggests that MGA's use of word "copying" in the proposed jury

3  instruction is too narrow to encompass Mattel's allegations of derivative-use infringement.

4  Mattel's objection is semantical.  As the Ninth Circuit in <u>Litchfield v. Spielberg</u> explained:

5  "A work is not derivative unless it has been <u>substantially</u> <u>copied</u> from another work." 736

6  F.2d 1352, 1357 (9th Cir. 1984) (emphasis added).  Whether Mattel alleges that MGA

7  copied its intellectual property or that MGA used it to prepare derivative works, the jury

8  will be asked to apply the same "substantial similarity" test. <u>See</u> 2-8 <u>Nimmer, on</u>

9  <u>Copyright</u> § 8.09 ("Countless works are 'inspired by' or 'based on' copyrighted works,

10  and in that lay sense constitute ''derivative works.' But unless the product is substantially

11  similar to its forbear, it remains nonactionable.").

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Choice of Alternative Methods of Determining Plaintiff's Damages**

If you determine that an award of damages is warranted by the facts and these instructions, you must select a method of damages for determining the amount of damages. Select the method that you find produces the most accurate and certain result. However, if you find that find that either of two methods produces a result that is certain and accurate and will fully compensate plaintiff, you should use the method that produces the lowest amount of damages.

**Authority:** <u>A. A. Baxter Corp. v. Colt Indus., Inc.</u>, 10 Cal. App. 3d 144, 160 (1970).

**Choice of Alternative Methods of Determining Plaintiff's Damages**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Choice of Alternative Methods of Determining Plaintiff's Damages on the following grounds:

1.       This proposed instruction is biased, misleading and confusing.  The instruction tells the jury to select the most "accurate" method of calculating Mattel's damages, but that if either of two methods is accurate, the jury should use the method producing the lowest amount of damages.  There is no legal basis to give the jury such an instruction.  The only source cited by defendants is an inapposite case dealing with damages caused by delay in the performance of a construction contract wherein the Court was articulating alternative measures of damages for the trial court to consider on remand.  *See A.A. Baxter Corp. v. Colt Indus., Inc.*, 10 Cal. App. 3d 144 (1970).  That case does not support defendants' requested jury instruction.  Notably, there is no comparable jury instruction found in CACI, or in the Ninth Circuit Model Instructions.

2.       Defendants' proposed instruction is unintelligible and confusing given that there is no explanation as to what "method of damages for determining the amount of damages" this proposed instruction refers, or to what claims, if any, such an instruction would apply.

**Choice of Alternative Methods of Determining Plaintiff's Damages**

**MGA Parties' and Bryant's Response**

In proposing jury instructions, the parties are not limited to the subject matter covered by the Ninth Circuit Model Instructions or any other set of models.  See, e.g., Jones v. Hollenback, 2007 WL 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury Instruction No. 7 is not a Ninth Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22, is irrelevant.  The instruction correctly and clearly states the law.  There is nothing confusing about the purpose and intent of this instruction.").  Mattel's objection is not appropriate as it suggests that the jury simply should not be instructed as to how it should handle the differences among the various methods of calculating damages.

Moreover, the proposed instruction is an entirely accurate statement of the law:

> "Where there is more than one method of ascertaining damages, that method which is most definite and certain should be adopted. No one method is exclusive, where several exist, but that one should be chosen which best achieves the fundamental purpose of compensation to the injured person for his loss; and if the facts show that either of two measures of damages will fully compensate plaintiff for his loss, that measure must be adopted which is less expensive to defendant."

A. A. Baxter Corp. v. Colt Indus., Inc., 10 Cal. App. 3d 144, 160 (1970) (emphasis added).  How Mattel can argue this language is "inapposite" is hard to understand.  As Mattel notes, the court in A.A. Baxter was providing guidance to the lower court in calculating damages appropriately on remand.  Id.  The court addressed the problem encountered when there are multiple possible means to calculate damages – an issue that may arise here as well.  Thus, the instruction is appropriate.

444

**<u>Damages—Duty to Mitigate</u>**

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

      1.     that the plaintiff failed to use reasonable efforts to mitigate damages; and

      2.     the amount by which damages would have been mitigated.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); <u>see also</u> CACI No. 3931 (2008).

**Damages—Duty to Mitigate**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Damages—Duty to Mitigate on the following grounds:

1. This proposed instruction is contrary to the Court's April 25, 2008 Order. The Court deferred any ruling on any alleged failure to mitigate until after trial. *See* April 25, 2008 Order, at 7. Also, this an affirmative defense and should be presented as such to the jury so it is clear that defendants are raising this as a potential defense regarding the amount of damages and that they bear the burden of proof on this issue.

2. Defendants cite the Ninth Circuit Model Instruction regarding Damages—Mitigation, and the proposed instruction tracks the language of Model Instruction 5.3 verbatim. However, with respect to all of Mattel's state law claims against defendants, issues relating to the mitigation of damages are issues of California law. CACI is the official source of instructions regarding California law. *See* Court's Standing Scheduling Order, at 9; *Cal. Rule of Court* 2.1050. Although defendants now cite CACI No. 3931, this proposed instruction bears no resemblance to CACI No. 3931. Moreover,

3. *Counter-Instruction*: *Counter-Instruction*: If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that an instruction on mitigation should be given to the jury, it should be as follows:

The defendants claim that Mattel failed to mitigate damages allegedly caused by the defendants' wrongful conduct. The doctrine of mitigation of damages holds that a plaintiff who suffers damages as a result of a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and may not recover for damages avoidable through ordinary care

and reasonable exertion.  The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable.

The burden of proving that losses could have been avoided by plaintiff by reasonable effort and expense is always on the party who breached the contract or harmed the plaintiff.

**Authority:**  CACI No. 358, comments; *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).

**Damages—Duty to Mitigate**

**MGA Parties' and Bryant's Response**

Mattel's objections are self-contradictory, as the preceding objection suggests that because failure to mitigate is an affirmative defense, it should be presented as such to the jury, which contradicts Mattel's earlier blanket assertions that affirmative defenses should not be presented to the jury at all.   (See supra, Mattel's Objections to Laches, Estoppel, Waiver, Abandonment, Consent, and Acquiescence.)

First, failure to mitigate is not strictly viewed as an affirmative defense.  As noted in the comments to CACI No. 3931:

> "The frequent statement of the principle in the terms of a 'duty' imposed on the injured party has been criticized on the theory that a breach of the 'duty' does not give rise to a correlative right of action.  It is perhaps more accurate to say that the wrongdoer is not required to compensate the injured party for damages which are avoidable by reasonable effort on the latter's part."

Green v. Smith, 261 Cal. App. 2d 392, 396 (1968) (internal citations omitted).   Thus, the trier of fact considering the amount of damages must also consider whether the defendant has failed to mitigate, such that defendants are not required to compensate plaintiff for that any such damages.

Second, failure to mitigate is a jury question, as the existence of state and federal jury instructions makes clear.  Any objection based on the Court's April 25, 2008 Order is also premature because that Order did not resolve the issues presented here.  Rather, as MGA Parties and Bryant understand it, the Court simply stated that certain defenses are equitable and did not resolve the issue of whether those defenses should still be tried to the jury, but

1  deferred that issue pending full briefing and consideration of Mattel's Motion In Limine

2  No. 4.  Any objection based on the Court's April 25, 2008 Order is also premature given

3  Bryant's pending Motion For Reconsideration, which the Court has ordered shall be heard

4  May 19, 2008.  Even if the Court makes the ultimate decision as to whether this defense

5  will limit Mattel's claims, the jury must still make the factual determinations that underlie

6  the Court's decision, as it must do for all affirmative defenses with factual underpinnings

7  that overlap with the claims to be tried to the jury.  Because the defense of mitigation of

8  damages involves the same factual questions as Mattel's proof of its damages claim, the

9  Seventh Amendment requires that those facts be tried to the jury.  Accordingly, the jury

10  should be given a proper framework for making those factual determinations.

11

12  Finally, Mattel's complaint that this instruction deviates from the model is no basis for

13  rejecting it.  In proposing jury instructions, the parties are permitted to modify the

14  language of any model instruction to make it less confusing or more appropriate in the

15  context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir.

16  1997). Indeed, modification is sometimes necessary to make an instruction accurate and

17  complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992).  The

18  proposed instruction does more closely resemble the Ninth Circuit model than the CACI.

19  CACI No. 3931 is rather long and verbose as compared to the Ninth Circuit instruction,

20  although it relays the same ideas.  See CACI No. 3931 ("If you decide [name of defendant]

21  is responsible for the original harm, [name of plaintiff] is not entitled to recover damages

22  for harm to [his/her] property that [name of defendant] proves [name of plaintiff] could

23  have avoided with reasonable efforts or expenditures.  You should consider the

24  reasonableness of [name of plaintiff]'s efforts in light of the circumstances facing [him/her]

25  at the time, including [his/her] ability to make the efforts or expenditures without undue

26  risk or hardship.  If [name of plaintiff] made reasonable efforts to avoid harm, then your

27  award should include reasonable amounts that [he/she] spent for this purpose.")

28

1  Notably, in its counter-instruction, Mattel has not adopted the appropriate CACI either, but
2  rather relies on the comments to an instruction regarding contract damages.  The MGA
3  Parties and Bryant suggest that the version of the Ninth Circuit instruction that they
4  propose is simpler and less confusing for the jury, and thus should be used here.

450

**Nominal Damages**

The law which applies to this case authorizes an award of nominal damages.  If you find for Mattel but you find that Mattel has failed to prove damages as defined in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 5.6 (2007).

**Nominal Damages**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Nominal Damages on the following grounds:

1.      This proposed instruction is unintelligible, confusing and misleading.  The instruction states:  "The law which applies to this case authorizes an award of nominal damages."  But defendants provide the jury with no explanation as to which of Mattel's claims, if any, authorizes an award of nominal damages.  Defendants also cite no authority that would support giving an instruction to the jury regarding nominal damages.

**Nominal Damages**

**MGA Parties' and Bryant's Response**

Mattel's objection is argumentative and cites no authority for the proposition stated.  The MGA Parties and Bryant contend that nominal damages apply to every claim in this case. See, e.g., Midland Pacific Building Corp. v. King, 157 Cal. App. 4th 264, 275 (2007) (nominal damages are available in actions upon a contract).

**Plaintiff May Not Recover Duplicate Damages**

Mattel may seek damages for each of its claims.  Mattel may not, however, through its pursuit of these claims, seek damages in an amount greater than that which would compensate it for all the detriment or loss allegedly caused by wrongful conduct of the defendants.  Thus, if you determine that Mattel is entitled to recover on more than one claim, but the damages are the same on each claim, you shall award damages only on one claim.

**Authority:**   CACI No. 361 (2008); Cal. Civil Code § 3358 ("no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides"); Kurinij v. Hanna & Morton, 55 Cal. App. 4th 853, 866 (1997) (affirming jury instructions proscribing double recovery on claims arising out of the same facts).

**Plaintiff May Not Recover Duplicate Damages**

**Mattel's Objection**

Mattel objects to defendants' proposed instruction regarding Plaintiffs May Not Recover Duplicate Damages on the following grounds:

1.     Defendants' proposed instruction deviates from the model instruction and is confusing and misleading.  The model instruction provides a straightforward statement of the law:

> Mattel has made claims against Carter Bryant for breach of contract and conversion, breach of fiduciary duty, breach of duty of loyalty, misappropriation of trade secrets, unfair competition and copyright infringement.  If you decide that Mattel has proved all of these claims, the same damages that resulted from these claims can be awarded only once.

*See* CACI No. 361.

2.     Defendants' proposed instruction is confusing because it focuses on claims, instead of damages, suggesting to the jury that damages available to Mattel on various claims against defendants are identical (*e.g.*, "if you determine that Mattel is entitled to recover on more than one claim, but the damages are the same on each claim, you shall award damages only on one claim.").

3.     *Counter-Instruction*:  To the extent the Court decides to give any instruction on this issue, it should give the model instruction found in CACI as set forth above.

1    **Plaintiff May Not Recover Duplicate Damages**

2

3    **MGA Parties' and Bryant's Response**

4

5    Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

6    In proposing jury instructions, the parties are permitted to modify the language of any

7    model instruction to make it less confusing or more appropriate in the context of a

8    particular case.    See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)

9    (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

10   texts of 'standard' jury instructions are not debated and hammered out by legislators, but

11   by ad hoc committees of lawyers and judges.    Jury instructions do not come down from

12   any mountain or rise up from any sea.    Their precise wording, although extremely useful,

13   is not blessed with any special precedential or binding authority.    This description does not

14   denigrate their value, it simply places them in the niche where they belong.").    Indeed,

15   modification is sometimes necessary to make an instruction accurate and complete.    See,

16   e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

17   of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

18   district court merely read the model jury instruction, it would have committed plain error,

19   since that instruction makes no reference whatsoever to knowledge or intent.").

20

21   Mattel's counter-instruction is objectionable for the reasons stated in the MGA Parties'

22   and Bryant's Objection to that instruction, which is fully incorporated herein.

23

24   Mattel's objection that the instruction "is confusing because it focuses on claims, instead

25   of damages, suggesting to the jury that damages available to Mattel on various claims

26   against defendants are identical" makes no sense.    The proposed instruction specifically

27   references the possibility that the damages will not be the same and is limited to situations

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1  where they are: "if you determine that Mattel is entitled to recover on more than one claim,
2  but the damages are the same on each claim, you shall award damages only on one claim."
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**COPYRIGHT JURY INSTRUCTIONS**

**PHASE I-B**

**(ONLY AFTER PHASE I-A VERDICT)**

**INSTRUCTION NO. 1C**

**COPYRIGHT – PRELIMINARY INSTRUCTION**

As you know, Mattel seeks damages against the defendants, MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA Hong Kong"), Isaac Larian, and Carter Bryant for copyright infringement. The defendants deny that Mattel's copyrights were infringed.

Mattel's 16 copyrights are in certain sketches authored by Carter Bryant prior to his meeting with MGA on September 1, 2000. There have been references to other Carter Bryant sketches, but for purposes of your copyright analyses you may only consider the Bryant sketches covered by a Mattel copyright registration. The copyright law does not permit legal claims made on a work not covered by a copyright registration.

The alleged infringing works are the BRATZ dolls and character art of the BRATZ dolls appearing on the packaging for the BRATZ dolls and on BRATZ licensed products. Mattel asserts that the "first generation" of four BRATZ dolls (Jade, Sasha, Cloe, and Yasmin), introduced by MGA into the market in the summer of 2001, infringe Mattel's copyrights in the 16 Bryant sketches. Mattel further asserts that by virtue of showing infringement in the "first generation" BRATZ dolls it has shown copyright infringement by all subsequent BRATZ dolls.

The defendants deny that there has been any copyright infringement. They assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls. Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and

other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and artists who developed the first generation BRATZ dolls used their significant experience and talents to independently create their own original, different and more marketable 3-dimensional doll.

The defendants also assert that the Mattel copyrights are very limited in scope because the 16 Bryant sketches portray dolls that are based in large part on non-original elements such as standard features of human anatomy and non-copyrightable elements such as conventional hairstyles, face make-up, shoes and clothing. They assert that because the 16 Bryant sketches are only entitled to limited copyright protection, the "first generation" BRATZ dolls were not "substantially similar" to the "protectible elements" in Bryant sketches owned by Mattel, and do not infringe any limited copyrights in those sketches.

The defendants further assert that subsequent BRATZ dolls had the same and additional dissimilarities, and were even further removed from any "protected expression" in the Bryant sketches, and accordingly also did not infringe copyrights in those sketches. They similarly deny that the BRATZ character art infringes the Bryant sketches.

I just referred to a number of legal terms such as "copying," "substantial similarity," and "protected expression." I will now explain these and other legal terms to you.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.0 (2007).

**INSTRUCTION NO.  1C**

**COPYRIGHT – PRELIMINARY INSTRUCTION**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 1C on the following grounds:

1.     This proposed instruction deviates from the Ninth Circuit Model Instruction, and defendants misleadingly fail to indicate that they have modified the model jury instruction.

2.     Defendants incorrectly state that the jury must disregard Bratz drawings owned by Mattel if they have not been registered.  That is not the law.  Moreover, defendants' proposed instruction improperly states that Mattel has copyrights in only 16 "sketches," when the number is larger than that.

3.     Mattel objects to the use of the derogatory term "sketches" when referring to Mr. Bryant's drawings and designs.

4.     Defendants' proposed instruction refers to "the uncopyrightable *concept* of the BRATZ dolls" (emphasis added), a loaded phrase that does not exist in copyright law.

5.     Defendants' proposed instruction misstates the law in suggesting that "2-dimensional sketches" are not protectable or are subject only to thin protection where they "lac[k] the detail and other considerations necessary to develop a 3-dimensional doll." Numerous courts have found 3-dimensional dolls to infringe 2-dimensional drawings that are similarly lacking in detail.  *See, e.g.*, *Fleisher Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934); *King Features Syndicate v. Fleisher*, 299 F. 533 (2d Cir. 1924).  As one district court recently explained in a similar context, architectural "plans or designs not sufficiently detailed to allow for construction still may be protected."  *Shine v. Childs*, 382 F. Supp. 2d 602, 608 (S.D.N.Y. 2005).  Defendants have pleaded and prevailed on claims that dolls less similar to Mr. Bryant's drawings than Bratz dolls are substantially similar to and infringe the copyrighted drawings.

461

1       6.     Relatedly, defendants' proposed instruction omits any reference to the well-

2  settled principle that a derivative work (here, the 3-dimensional dolls) that adds features or

3  detail to an original work (here, the 2-dimensional drawings) can be deemed infringing.

4  As set forth in Mattel's Proposed Instruction No. 17.1, 17 U.S.C. § 106 makes clear that a

5  copyright owner has the exclusive right to prepare derivative works based on the

6  copyrighted work.  *See* Mattel's Proposed Jury Instructions, at 30.

7       7.     Defendants' proposed instruction improperly describes the Bryant drawings as

8  "based in large part on non-original elements."

9       First, it is for the Court, not the jury, to determine whether a work is original.  *See,*

10  *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of

11  elements in a copyrighted work is a question of law."); *Merc. Transaction Sys., Inc. v.*

12  *Nelcela, Inc.*, 2007 WL 2422052 (D. Ariz. 2007) ("The issue of whether the software is

13  subject to copyright protection must be addressed by the Court.").

14       Second, defendants are estopped from asserting that the drawings are not original or

15  are subject only to thin copyright protection because defendants successfully contended

16  just the opposite in suing for infringement of the drawings in the courts of Hong Kong and

17  in the United States.  *See* Mattel Reply Mem. ISO Summary Judgment at 11.  Mattel is

18  aware of two instances in which MGA has done this.  In *MGA Entm't., Inc. v. Multitoy,*

19  *Inc. et al.,* Case No. CV04-2524 CBM (CWx), MGA Entertainment, Inc. ("MGA")

20  brought claims of copyright and trademark infringement, among other claims, against

21  defendants for producing and selling dolls that infringed of the copyrights in Carter

22  Bryant's two dimensional BRATZ drawings.  *See e.g.*, Complaint ¶ 7 and M0078574-90.

23  *See generally* ¶¶ 2-20, 31-37.  Significantly, Mr. Bryant admitted in responses to Requests

24  for Admission that his drawings are original works.

25       Third, even if defendants were not estopped from making that argument, they are

26  incorrect as a matter of law that a work of visual art (as distinguished from a literary work

27  or a computer program) may be broken down into original and non-original components.

28  *See, e.g.*, *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) ("The precise

factors evaluated for literary works do not readily apply to art works.  Rather, a court looks to the similarity of the objective details in appearance."); Hon. Jon O. Newman, *New Lyrics for an Old Melody: The Idea/Expression Dichotomy in the Computer Age*, 17 Cardozo Arts & Ent. L. J. 691, 698 (1999) (Filtration analysis should not be applied in cases of visual works because "one cannot divide a visual work into neat layers of abstraction in precisely the same manner one could with a text."); *id.* at 697, nn.36-37 (criticizing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir. 1999), which applied filtration in a doll case).  Moreover, defendants ignore that creative expression is original even if "inspired by" other works, and that elements are protectable so long as they are not slavishly copied.  *See, e.g.*, *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136 (2d Cir. 2004)  ("One artist's version of a doll face with upturned nose, bow lips, and widely spaced eyes will be irresistible to an eight-year old collector. … We can surmise that in the highly competitive, billion-dollar doll industry, getting the doll's face and expression exactly right is crucial to success.").  And defendants ignore that creative *compilations* of non-original components are subject to full protection under copyright law.  *See Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp. 1105, 1114-15 (E.D.N.Y. 1978).

8.      Defendants' proposed instruction improperly asserts that, if the jury finds "dissimilarities" between the drawings and the dolls, it cannot find infringement.  It is well settled that it is similarities, not dissimilarities, which are relevant in determining infringement.  *See, e.g.*, *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936) (L. Hand, J.) ("[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate"); Mattel Reply Mem. ISO Summary Judgment at 18, n.40 (collecting other authorities).

9.      Mattel requests that the Court adopt Mattel's proposed instruction, which conforms to the Ninth Circuit Model Instruction and does not contain erroneous statements of law and argument.  *See* Mattel's Proposed Jury Instructions, at 27-29.

**INSTRUCTION NO. 1C**

**COPYRIGHT – PRELIMINARY INSTRUCTION**

**MGA Parties' and Bryant's Response**

The MGA Parties and Bryant (collectively for this response, "MGA") acknowledge that their reference to Ninth Circuit Model Jury Instructions ("Model Instructions") is for support of its position, and does not indicate that the Model Instruction was copied verbatim. However, Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case. See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges. Jury instructions do not come down from any mountain or rise up from any sea. Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority. This description does not denigrate their value, it simply places them in the niche where they belong."). Indeed, modification is sometimes necessary to make an instruction accurate and complete. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

On the issue of Mattel relying on Bryant sketches that were not registered by Mattel, MGA disagrees with Mattel's position and notes that this issue is the subject of a pending motion *in limine*. Registration of a work is a prerequisite to a suit for of copyright infringement. See 17 U.S.C. § 411(a); Leicester v. Warner Bros., 232 F.3d 1212, 1235 (9th Cir. 2000)

("[t]he Copyright Act requires registration of all 'United States work[s]' as a prerequisite for a copyright infringement action"); <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d 1209, 1211 (9th Cir. 1998) (copyright registration "is a prerequisite to a suit based on a copyright"); <u>Zito v. Steeplechase Films, Inc.</u>, 267 F. Supp. 2d 1022, 1025 (N.D. Cal. 2003) ("Registration of a copyrighted work with the Copyright Office is a prerequisite to filing suit under copyright law.  Registration is a jurisdictional requirement.") (citations omitted).

The term "sketches" is not derogatory and Mattel has not cited anything to support its position that it is.  Mattel's own expert used the term repeatedly in reference to Carter Bryant's works at issue here.  <u>See, e.g.</u>, Loetz Report, at 2 ("When a designer has an idea, he sketches it out."); <u>id.</u> at 4 ("In Carter Bryant's sketches, the Bratz figures are posed …."); <u>id.</u> at 6 ("The Bratz sketches were drawn …."); <u>id.</u> at 9 ("It is the industry standard when creating a new toy … to have the original artist draw sketches");  Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any distinct meaning to you?  A.  Not really …. I don't think there's any real distinction and I think they're used interchangeably.").

Contrary to Mattel's contentions regarding "concepts," the Copyright statute specifically states that "ideas" and "concepts" cannot be protected by copyright:

> In no case does copyright protection for an original work of authorship extend to any idea … concept … regardless of the form in which it is described, explained, illustrated or embodied in such work.  (17 U.S.C. § 102(b).)

In fact, as the statute states, it is not only that "ideas" and "concepts" cannot be copyrighted, but also that the ideas and concepts <u>illustrated</u> or <u>embodied</u> in a copyrighted work (such as the Bryant sketches) are not protected – which is why Ninth Circuit law requires that they be filtered out.  <u>See, e.g.</u>, <u>Swirsky v. Carey</u>, 376 F.3d 841, 845 (9th Cir. 2004); <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442-43 (9th Cir. 1994); <u>Idema v. Dreamworks, Inc.</u>, 163 F. Supp. 2d 1129, 1176-77 (C.D. Cal. 2001).  Yet, it is the

465

1  ideas and concepts underlined illustrated by and underlined embodied in Bryant's sketches that may give the
2  illusion of similarity between the dolls and the sketches.

3

4  With respect to the two-dimensional/three-dimensional ("2-D/3-D") cases cited by Mattel,
5  Mattel completely mischaracterizes MGA's proposed instruction, which addresses a key
6  factual issue in dispute in this case. None of the 2-D/3-D cases cited by Mattel are on
7  point here, as all were decided based on the specific facts in those cases. Shine v. Childs,
8  382 F. Supp. 2d 602, 608 (S.D.N.Y. 2005), is especially inapt because that case addressed
9  whether architectural design drawings were sufficiently detailed to be protectable under
10  the Architectural Works Copyright Protection Act (AWCPA) — an issue completely
11  irrelevant here. Here again, Mattel is attempting to conflate the standard of
12  copyrightability (which does not pertain to any disputed issue in this case) with the scope
13  of copyright protection in an infringement analysis in order to distract the jury's attention
14  from the analytic dissection and filtration of unprotectible elements required by the Ninth
15  Circuit.

16

17  Any derivative works instruction would be highly prejudicial here, because, by
18  characterizing BRATZ dolls as "derivative works," it would falsely suggest to the jury that
19  Mattel has a lower standard of proof to meet in order to show infringement. In fact, as
20  Professor Nimmer explains, "a new work constitutes a derivative work based on an
21  underlying work only if the new work is 'substantially similar' to the underlying work".
22  Nimmer, on Copyright § 19D.08. Put another way, "a work will be considered a
23  derivative work only if it would be considered an infringing work if the material which it
24  has derived from a prior work had been taken without the consent of a copyright proprietor
25  of such prior work. To prove infringement, one must show substantial similarity.
26  Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984) (emphasis in original)
27  (citations omitted). As the Supreme Court held in Feist Publications, Inc. v. Rural
28  Telegraph Service Co., 499 U.S. 340, 349-50 (1991), "The primary objective of copyright

466

1  is not to reward the labor of authors, but 'to promote the Progress of Science and useful

2  Arts.'" Art. I, § 8, cl. 8.  <u>Accord</u> <u>Twentieth Century Music Corp. v. Aiken</u>, 422 U.S. 151,

3  156 (1975). To this end, copyright assures authors the right to their original  expression,

4  but encourages others to build freely upon the ideas and information conveyed by a work.

5  <u>Harper & Row Publishers v. Nation Enters.</u>, 431 U.S. 531, 556-557 (1985).  This principle,

6  known as the idea/expression or fact/expression dichotomy, applies to all works of

7  authorship."

8

9  Mattel's citations to <u>Newton v. Diamond</u>, 204 F. Supp. 2d 1244 (C.D. Cal. 2002), and

10  similar cases are not relevant here.  <u>Newton</u>, for example, dealt with the issue of whether a

11  3-note musical sequence, which was a segment of a registered musical composition, had

12  sufficient originality to qualify for copyright protection – the court was <u>not</u> engaging in

13  analytic dissection/filtering of a registered work to eliminate unprotected elements.  Even

14  though the issue of copyrightability of all of the Bryant drawings save one is conceded,

15  Mattel repeatedly refers to that issue in an effort to confuse the standards and avoid

16  analytic dissection/filtering.  While Mattel asserts that MGA "contended just the opposite"

17  of the proposition that the Bryant sketches are "subject only to thin copyright protection,"

18  Mattel has not and cannot support its assertion with <u>facts</u>.  Although Mattel argues that:

19  "Significantly, Mr. Bryant admitted in responses to Requests for Admission that his

20  drawings are original works," this is <u>not significant</u> given that, except with regard to one

21  non-registered drawing, it is not disputed that Bryant' sketches contained sufficient

22  originality to be copyrightable.

23

24  Mattel has not pointed to a single fact that would support an estoppel argument on the

25  issue of thin versus broad protection.  In its motion for summary judgment, Mattel argued

26  that MGA was barred by the doctrine of judicial estoppel from arguing that the Bryant

27  sketches had sufficient originality to be protectible.  With one exception (a sketch not

28  covered by a Mattel copyright), MGA conceded that MGA was <u>not</u> contesting that the

467

1 Bryant sketches were protectible by copyright.  Mattel now is trying to change its estoppel

2 argument entirely from protectibility vel non to degree of protectibility after analytic

3 dissection/filtering.  Mattel has failed to cite to a single fact that would support Mattel's

4 new position that MGA is estopped, by judicial estoppel or otherwise, from contending

5 that Mattel cannot meet its burden of showing that the Bryant sketches are entitled to

6 broad protection, after proper analytic dissection and filtering.

7

8 Moreover, Mattel's argument that MGA is "incorrect as a matter of law" that a work of

9 visual art may be broken down into original and non-original components is simply wrong.

10 Visual works are subject to the same general standards of analytic dissection and filtering

11 as are other copyrighted works.  The Supreme Court held in Feist Publications, Inc. v.

12 Rural Telegraph Service Co., 499 U.S. 340 (1991), that "[t]he mere fact that a work is

13 copyrighted does not mean that every element of the work may be protected.  Originality

14 remains the sine qua non of copyright; accordingly, copyright protection may extend only

15 to those components of a work that are original to the author." Id. at 348 (emphasis added).

16 In other words, it is only copying of copyrightable elements of a work that is answerable

17 under the federal Copyright Act.

18

19 Consistent with Feist, applicable Ninth Circuit precedent holds that, because only those

20 elements of a work that are protectible can be compared when it comes to the question of

21 copyright infringement, the unprotectible elements of the work need to be filtered out and

22 disregarded.  As summarized in Cavalier v. Random House, Inc., 297 F.3d 815 (9th Cir.

23 2002):

24 　　　A court "must take care to inquire only whether 'the protectible elements,

25 　　　standing alone, are substantially similar.'" Williams v. Crichton, 84 F.3d

26 　　　581, 588 (2d Cir. 1996) (emphasis in original) (citation omitted); accord

27 　　　Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442-43 (9th Cir.

28 　　　1994).  Therefore, when applying the extrinsic test, a court must filter out

468

and disregard the non-protectible elements in making its substantial

similarity determination.  See Shaw [v. Lindheim], 919 F.2d [1353, 1361

(9th Cir. 1990)] (applying the extrinsic test to determine "whether there is

substantial similarity between the protected expression of ideas in two

literary works") (emphasis added); Berkic v. Crichton, 761 F.2d 1289,

1293-94 (9th Cir. 1985) (rejecting consideration of general ideas as well as

scenes-a-faire in determining substantial similarity under the extrinsic test).

297 F.3d at 822-23.  See also Apple Computer Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.").  The MGA Parties and Bryant's proposed instruction properly focuses the jury on the protectable elements of Mattel's work, rather than every element.

In Cavalier, the Ninth Circuit expressly held that "[t]he basic mode of analysis for comparison of the literary elements applies to comparison of the art work.  As with literary works, unprotectible elements should not be considered when applying  the extrinsic test to art work."  297 F.3d at 825-26.

Similarly, Apple Computer involved a claim that the "artistic look" of Microsoft's user interface was "substantially similar" to Apple's copyrighted user interface.  The Ninth Circuit affirmed the district court's decision to "analytically dissect" Apple's user interface to "eliminate" unprotectible elements, holding that: "The district court's approach was on target."  35 F.3d at 1439. The court further stated:

> [T]he extrinsic test now objectively considers whether there are substantial
> similarities in both ideas and expression, whereas the intrinsic test
> continues to measure expression subjectively.  Because only those elements
> of a work that are protectable and used without the author's permission can

469

be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection before works are considered "as a whole."

Id. at 1442-43; see also id. at 1446 ("the party claiming infringement may place 'no reliance upon any similarity in expression resulting from' unprotectable elements. Otherwise, there would be no point to the extrinsic test, or to distinguishing ideas from expression. … [T]he unprotectable elements have to be identified, or filtered, before the works can be considered as a whole.").

This framework has been applied in a variety of cases involving graphic or artistic works, like Satava v. Lowry, 323 F.3d 805 (9th Cir. 2003) the "jellyfish in glass" case, which unquestionably filtered out elements of the art at issue.  There, the Ninth Circuit held that "ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them."  Id. at 812.  The Ninth Circuit's overriding concern in Satava was to prevent copyright protection from "cheat[ing] the public domain" by expanding to the point of providing a monopoly on the "use of ideas that properly belong to us all."  Id.  See also Dyer v. Napier, 2006 U.S. Dist. LEXIS 68990 (D. Ariz. 2006) (filtering when comparing photo of mountain lion with cub to allegedly infringing sculpture); see also Reece v. Island Treasures Art Gallery, Inc., 468 F. Supp. 2d 1197 (D. Haw. 2006) (applying filtering in action involving "stained glass artwork").[1]

The Apple Computer court set forth the following three part test to be used in connection with copyright infringement cases involving all forms of copyrighted work, including visual works like the Bryant sketches:

---

[1]    In fact, albeit in an unpublished opinion, the Ninth Circuit affirmed sanctions awarded by the district court against a plaintiff based on its opposition to use of analytic dissection under the extrinsic test in connection with a visual work.  Domingo Cambeiro Prof'l Corp. v. Advent, 2000 U.S. App. LEXIS 3658, at *9 (9th Cir. Mar. 7, 2000) ("It was also objectively unreasonable for Cambeiro to oppose the use of analytic dissection under the extrinsic test.").

(1) The plaintiff must identify the source(s) of the alleged similarity between his work and the defendant's work.

(2) Using analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright…. [U]nprotectable ideas must be separated from potentially protectable expression; to that expression, the court must then apply the relevant limiting doctrines in the context of the particular medium involved, through the eyes of the ordinary consumer of that product.

(3) Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright - that is, decide whether the work is entitled to "broad" or "thin" protection.  Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying.

35 F.3d at 1443.

The Ninth Circuit's application of "analytical dissection" and "filtering" to visual works is also confirmed by the law review article referenced by Mattel in connection with its partial summary judgment motion, Michael D. Murray, Copyright, Originality, and the End of the Scenes a Faire and Merger Doctrines for Visual Works, 58 Baylor L. Rev. 779 (2006).  (See Mattel MSJ Reply at 13.)  Although the author (like Mattel) clearly disagrees with and is hostile to the Ninth Circuit approach, he confirms that the Ninth Circuit requires that visual works, like other copyrighted works, must be filtered of unprotectible elements:

Apple drove a stake through the heart of evaluation of visual works: There would be a two stage test with analytical dissection at each stage and rejection of parts that were supposedly subject to the merger and scenes a

1    faire doctrines.   There would be no subjective evaluation of the total

2    concept and feel of any visual work that allegedly merged with its

3    underlying ideas (there being a drastically limited number of ways of

4    depicting the idea visually) or allegedly embodied stock images that must

5    be copied in order to depict the idea.

6        In <u>Cavalier v. Random House, Inc.</u>, Apple's holding was interpreted to

7    mean that in visual art cases, the court is to filter out unprotectable

8    elements in both the extrinsic and intrinsic similarity tests.

9    58 Baylor L. Rev. at 810-11.

10

11   It is also noteworthy that Mattel argued for this very same approach in connection with the

12   district court proceedings in the <u>Goldberger</u> case referenced repeatedly by Mattel in its

13   opposition to MGA's proposed instruction, in its briefs in this case, and by Mattel's

14   copyright law expert, Professor Robert Lind, in his report.   Thus, in connection with the

15   plaintiffs summary judgment motion, Mattel argued:

16       To determine whether Radio City misappropriated protected expression, or

17       illegally copied, the Court should (i) isolate the elements of Mattel's Barbie

18       Copyrights that are protectible from those that are unprotectible, and (ii)

19       determine whether there is a "substantial similarity" between the Radio

20       City Head and the protectible elements of the Barbie Copyrights....

21       "**<u>Where, as here, we compare products that have both protectible and</u>**

22       **<u>unprotectible elements, we must exclude comparison of the</u>**

23       **<u>unprotectible elements from our application of the ordinary observer</u>**

24       **<u>test</u>**."

25   (Memorandum of Plaintiff Mattel, Inc. in Opposition to Defendant' Motion For Summary

26   Judgment at 6, in <u>Mattel Inc., v. Radio City Entertainment</u> (S.D.N.Y. No. 00 Civ. 6272

27   (JSR)), filed April 16, 2001)) (citations omitted, emphasis added).)

28

472

1  Thus, contrary to Mattel's argument, a "filtering" analysis is not only consistent with
2  Ninth Circuit law, it is <u>required</u> by it.

3

4  Mattel's reliance on "creative compilations" is misplaced for two reasons.  First, Mattel is
5  required to identify the elements of the alleged "compilation" that make the sketches
6  protectible.  To date, Mattel has failed to do so.  <u>See</u> <u>Bethea v. Burnett</u>, 2005 WL 1720631,
7  at * 10 (C.D. Cal. June 28, 2005); <u>Todd v. Montana Silversmiths, Inc.</u>, 379 F. Supp. 2d
8  1110 (D. Colo. 2005)**.**  Second, such compilations or combinations are only entitled to
9  "thin" copyright protection.  <u>See</u> <u>Feist Publ'ns, Inc. v. Rural Tel. Co.</u>, 499 U.S. 340, 349
10  (1991); <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442 (9th Cir. 1994)
11  (holding that only "thin protection, "against virtually identical copying, is appropriate");
12  <u>see also</u> <u>Satava v. Lowry</u>, 323 F.3d 805, 812 (9th Cir. 2003) (holding that plaintiff
13  possessed only a " thin" copyright which "protects against only virtually identical
14  copying"; <u>Allen v. The Ghoulish Gallery</u>, 2007 U.S. Dist. LEXIS 86224 (S.D. Cal. Nov.
15  20, 2007).  It is unclear what Mattel means when it refers to "full" copyright protection, as
16  "full" is not a recognized concept or term of art under copyright law.  To the extent that it
17  is meant to suggest that filtering analysis does not apply, or that the scope of protection in
18  such a compilation is not thin, Mattel's use of the term is improper.

19

20  In addressing Mattel's assertion that differences between works are irrelevant, and Judge
21  Learned Hand's "pithy statement" upon which Mattel relies, the Second Circuit has
22  specifically noted, in a case that Mattel cites in its brief, that "numerous differences tend to
23  undercut substantial similarity." <u>Warner Bros. v. AM Broadcasting</u>, 720 F.2d 231, 241 (2d
24  Cir. 1983).  "If the points of dissimilarity not only exceed the points of similarity, but
25  indicate that the remaining points are, within the context of plaintiff's work, of minimal
26  importance, either quantitatively or qualitatively, then no infringement results." <u>Weygand</u>
27  <u>v. CBS, Inc.</u>, 1997 U.S. Dist. LEXIS 10613, at *29 n.22 (C.D. Cal. May 20, 1997), <u>quoting</u>
28  <u>Nimmer, on Copyright</u> § 13.03[B][1][a].  Moreover, "a defendant may legitimately avoid

1  infringement by intentionally making sufficient changes in a work that would otherwise be

2  regarded as substantially similar to plaintiff's."  Id.  In contrast to literary works (the

3  context giving rise to Judge Learned Hand's statement), "[a] graphic or three-dimensional

4  work is created to be perceived as an entirety.  Significant dissimilarities between two

5  works of this sort inevitably lessen the similarity that would otherwise exist between the

6  total perceptions of the two works."  Warner Bros., 720 F.2d at 241.

7

8  Accordingly, courts in the Ninth Circuit have routinely considered differences on the

9  substantial similarity issue.  See, e.g., Funky Films, Inc. v. Time Warner Entm't, 462 F.3d

10  1072, 1078 (9th Cir. 2006) (Although "[a]t first blush, these apparent similarities appear

11  significant[,] … an actual reading of the two works reveals greater, more significant

12  differences and few real similarities at the levels of plot, characters, themes, mood, pace,

13  dialogue or sequence of events"); Olson v. Nat'l Broad. Co., 855 F.2d 1446, 1450 (9th Cir.

14  1988) (noting that the district court had given little weight to an expert chart and film

15  montage comparing the similarities of the two works in part because the expert had

16  "deemphasized any dissimilarities between plaintiff's and defendants' works" and

17  affirming j.n.o.v. for the defendant); Berkla v. Corel Corp., 66 F. Supp. 2d 1129, 1144

18  (E.D. Cal. 1999) ("[A]s it does in same-media cases, the court when adjudicating a cross-

19  media copyright infringement case will simply have to parse, to the best of its ability, the

20  protected expression from the unprotected essential idea (and what 'expression'

21  necessarily flows from that idea), and make its best judgment concerning whether the

22  potential infringing expression has sufficient dissimilarities."); Morgan Creek Prods., Inc.

23  v. Capital Cities/ABC, Inc., 1991 U.S. Dist. LEXIS 20564, at *38 (C.D. Cal. Oct. 25, 1991)

24  ("Upon viewing [plaintiff's work] and [defendant's work] one is perhaps struck as much

25  by the dissimilarities between the two works as by their similarities …. The list could go

26  on."); Jason v. Fonda, 526 F. Supp. 774, 777 (C.D. Cal. 1981) (focusing on the

27  "substantial differences between the works" in reaching its conclusion that "when analyzed

28

as an entire work, the [defendant's motion picture] is, as a matter of law, substantially dissimilar to plaintiff's book").

While Mattel purports to advocate the use herein of the Model Instruction, Mattel significantly has made no reference to Ninth Circuit Model Jury Instruction 17.3 (2007) (Ideas and Expression).   Using the Model Instruction Mattel advocates would be prejudicial and misleading without the use of Model Instruction 17.3, which explains key concepts necessary for the jury to properly apply the law.

**<u>ALTERNATE:     INSTRUCTION NO. 1C</u>**

[Defendants reserve the right to modify all of their proposed instructions relating to copyright issues to conform to the jury's findings in Trial 1A if the jury finds that fewer than 16 of the Bryant sketches are owned by Mattel.  The following is an example.]

In the Phase 1A trial Mattel asserted that it owned copyrights in a total of 16 of Carter Bryant's sketches prepared by Bryant prior to September 1, 2000.  In Phase 1A, you determined that Mattel owned a total of [XX] of these Bryant sketches, and that Mattel did not own [YY] of the sketches.  The [YY] sketches not owned by Mattel were assigned by Bryant to MGA, and thus are owned by MGA.

In assessing Mattel's claims of copyright infringement of the [XX] sketches that you determined it owns, you must also consider the sketches owned by MGA.  MGA has every right to use the Bryant sketches it owns, and the expression in those sketches.  Thus, if Mattel relies on original expressive elements of one of the Bryant sketches that Mattel owns, but those same elements are also found in one of the sketches owned by MGA, then you must disregard those elements, because they cannot support Mattel's claims of copyright infringement.

The Bryant sketches owned by MGA were created earlier than the Bryant sketches you determined that Mattel owns.  Accordingly, as between the two, MGA has superior rights.  For this reason, if any Bryant sketch owned by Mattel is substantially similar (I will explain what this means in a few minutes) to a sketch owned by MGA, then Mattel cannot rely on that sketch in connection with its copyright infringement claims against MGA.  Mattel thus bears the burden of proving by a preponderance of the evidence that the Bryant sketches it relies on are not substantially similar to the Bryant sketches owned by MGA.  [Include other aspects of 1C above as appropriate based on the Phase 1A verdict.]

**ALTERNATE:     INSTRUCTION NO. 1C**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 1C, Alternate on the following grounds:

1.     Mattel incorporates its objections to defendants' Proposed Instruction No. 1C, *supra*.

2.     Even if defendants establish they own the copyright in an earlier Carter Bryant drawing, they incorrectly suggest in this proposed instruction that a subsequent drawing (in which Mattel owns the copyright) that adds new elements is not protectable by copyright law to the extent of those new elements.

3.     Moreover, defendants' proposed instruction is not appropriate unless MGA establishes that (a) it owns the copyright in certain of the Bryant drawings; and (b) such drawings predate those which are owned by Mattel.  If Mattel owns prior works, any similar later works that MGA purports to own are themselves infringing.

4.     The statement in the proposed instruction that "MGA has every right to use the Bryant sketches it owns, and the expression in those sketches" is incorrect because it does not recognize Mattel's rights to works that are derivative of the drawings that Mattel owns.  To the extent that any works owned by MGA (if any) feature original expression contained in prior drawings owned by Mattel, then Mattel owns such expression.

5.     Defendants' proposed instruction purports to make factual findings as to the sequence of creation, which is improper.

**ALTERNATE:    INSTRUCTION NO. 1C**

**MGA Parties' and Bryant's Response**

The MGA Parties and Bryant (collectively for this response, "MGA") incorporate their responses to Mattel's  objections to defendants' Proposed Instruction No. 1C, <u>supra</u>.

Mattel's statements in paragraphs 2-4 of its Objections are not supported by a fair reading of MGA's proposed instruction.  In addition, note that Mattel now appears to be claiming a right to base its copyright claims on derivative works.  None of its copyrights, however, were registered as derivative works.  Thus, Mattel should be estopped, this late in the legal proceedings, from changing its position and adding a new legal theory.

Mattel's objection that MGA's statement regarding the expression in sketches it owns is "incorrect" assumes as a matter of fact that Mattel would be able to demonstrate that drawings it might own are derivative of the sketches owned by MGA.  Mattel cannot make such a showing, because no original expression was added to the Bryant sketches prepared while Bryant was employed by Mattel.

Mattel's statement in its paragraph 5 is incorrect, and not a fair reading of MGA's proposed instruction.  The jury will decide which BRATZ sketches, if any, were assigned to Mattel, and in making that determination will also hear and consider the evidence as to sequence of creation.

**INSTRUCTION NO.  2C**

**COPYRIGHT – DEFINED**

Copyright is the exclusive right to copy. This right to copy includes the exclusive right to:

      1.    Authorize or make additional copies, or otherwise reproduce the copyrighted work;

      2.    Recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

      3.    Distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

      4.    Display publicly a copyrighted pictorial work or graphic work.

It is the owner of a copyright who may exercise these exclusive rights.  [Here, in the Phase I-A trial, it was determined that Mattel is the "owner" of the Bryant sketches as a result of the transfer provisions of Bryant's employment agreement.]

In general, copyright law protects against reproduction, adaptation, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in a lawsuit for copyright infringement.

Mere possession of a copyrighted work does not constitute infringement.  That Carter Bryant and MGA had possession of Mr. Bryant's physical sketches, and made reference to them, is not copyright infringement, just like a person who possesses a book has not

1  infringed the copyright of the book's publisher or author.  [Lapham v. Porach, 2007 U.S.

2  Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).]

3

4  Further, a defendant's contribution of non-infringing fashions, accessories, or other

5  materials to a BRATZ doll does not constitute copyright infringement even if you find that

6  the BRATZ doll itself infringes Mattel's copyright.  You must consider each defendant's

7  acts separately to determine whether that defendant has engaged in an act that is an

8  infringement of Mattel's copyrights.

9

10  **Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106;

11  2-8 Nimmer on Copyright §§ 8.01–8.20; 3 Patry on Copyright §§ 8:1, 9:2; 12-76 Nimmer

12  on Copyright § 12.04[A][1].

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO.  2C**

**COPYRIGHT – DEFINED**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 2C on the following grounds:

1.     This proposed instruction deviates from the Ninth Circuit Model Instruction. The last two paragraphs are not found in the model instruction and constitute inappropriate argument in what is supposed to be an introductory instruction to the jury regarding the definition of a copyright.  Defendants' arguments about what does or does not constitute infringement is not appropriately included in this definition instruction.

2.     Moreover, the examples given by defendants in the proposed instruction are erroneous as a matter of law and prejudicial to Mattel.  The person in their example of non-infringement obviously purchased those books from someone authorized to sell them. That is not what occurred here.  And defendants' statement that the contribution of non-infringing fashions or accessories to the infringing Bratz dolls does not constitute infringement is confusing and misleading absent some showing that this could conceivably relate to one of the defendants in this case (which it could not since they were all indisputably involved in the development and sales of the infringing Bratz dolls).

3.     The last paragraph in the proposed instruction is also confusing and misleading because the contribution of non-infringing material to an infringing work does not excuse the unlawful copying itself.  Indeed, it is well settled that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate."  *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990); *see also Atari Games Corp. v. Nintendo of Am., Inc.*. 1993 WL 207548, *4 (N.D. Cal. 1993) ("Atari argues that there are many lock-specific features which it did not include in the Rabbit program. Atari may not avoid summary judgment by pointing to what it did not copy."); *Curtis v. General Dynamics Corp.*, 1990 WL 302725, *9 (W.D. Wash. 1990) ("Defendants argue that their poster could not infringe

481

plaintiff's copyright because only a small proportion of its design could possibly be considered similar. This argument is both factually and legally without merit.").

    4.    The proposed instruction does not properly inform the jury that defendants may be liable for vicarious or contributory copyright infringement even if they did not engage in direct copyright infringement.

    5.    Mattel requests that the Court adopt Mattel's proposed instruction, which conforms to the Ninth Circuit Model Instruction and provides the jury with an objective statement of the law.  *See* Mattel's Proposed Jury Instructions, at 30.

1  <u>**INSTRUCTION NO. 2C**</u>

2  <u>**COPYRIGHT – DEFINED**</u>

3

4  <u>**MGA Parties' and Bryant's Response**</u>

5

6  Mattel's complaint that this instruction deviates from the model is no basis for rejecting it,

7  and the MGA Parties and Bryant (collectively for this response, "MGA") maintain that

8  their proposed instruction is necessary and proper in light of the claims and facts presented

9  in this case.   In proposing jury instructions, the parties are permitted to modify the

10  language of any model instruction to make it less confusing or more appropriate in the

11  context of a particular case.  <u>See</u> <u>McDowell v. Calderon</u>, 130 F.3d 833, 840-41 (9th Cir.

12  1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions:

13  "The texts of 'standard' jury instructions are not debated and hammered out by legislators,

14  but by ad hoc committees of lawyers and judges.   Jury instructions do not come down

15  from any mountain or rise up from any sea.   Their precise wording, although extremely

16  useful, is not blessed with any special precedential or binding authority.  This description

17  does not denigrate their value, it simply places them in the niche where they belong.").

18  Indeed, modification is sometimes necessary to make an instruction accurate and complete.

19  <u>See, e.g.</u>, <u>United States v. Hegwood,</u> 977 F.2d 492, 496 (9th Cir. 1992) (approving

20  modification of Ninth Circuit model instruction to include additional elements, noting that

21  "[h]ad the district court merely read the model jury instruction, it would have committed

22  plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

23  In addition, Mattel mischaracterizes the proposed instruction as improper argument, rather

24  than what it clearly is: necessary explanation of the fundamental elements of copyright

25  protection.

26

27  MGA continues to maintain that, even though it is not in the Model Instruction, an

28  instruction on "mere possession" is not only appropriate, but necessary under the facts of

1  this case, and further that MGA's example is a proper one.  Mattel's objection to the

2  example given is beside the point: regardless of the source from which a person receives a

3  copyrighted work, mere possession of that work would not constitute copyright

4  infringement, because possession is not one of the exclusive rights conveyed by the

5  Copyright Act.  See 17 U.S.C. § 106(a).   MGA also notes that Mattel objects to all

6  illustrative examples provided by MGA, but then offers none itself, as it is apparently

7  trying to ensure that the jury does not know how to apply the proper standards.

8

9  Mattel has again mischaracterized the proposed instruction.  The instruction does not

10 purport to say that contribution of non-infringing material to an infringing work "excuses"

11 unlawful copying, but rather that it does not "constitute" infringement.  Thus Mattel's case

12 citations are completely irrelevant.   This instruction properly informs the jury that

13 separately identifiable, non-infringing contributions to a project that also includes

14 infringing elements do not themselves constitute infringement.  This instruction is also

15 necessary and appropriate on the facts presented here to avoid prejudice to Bryant, given

16 that Mattel seeks to recover damages based not only on Bryant's initial contributions to

17 BRATZ (alleged to belong to Mattel), but based on his nearly eight years of continuous

18 consulting work with MGA after leaving Mattel.  The instruction properly advises the jury

19 that Mattel cannot claim infringement based on Bryant's contributions to new fashions,

20 accessories and themes for second-and-later generation dolls

21

22 Mattel's suggestion that the proposed instruction on the meaning of copyright protection is

23 improper because it does not also address "vicarious or contributory copyright

24 infringement" is nonsensical.  This jury instruction is not the proper context for instruction

25 on direct infringement liability, let alone derivative liability.  There is no apparent reason

26 whatsoever (and Mattel offers none) to combine and conflate multiple theories of liability,

27 each of which has its own standards, in a single jury instruction.  Both vicarious and

28

1  contributory copyright infringement are properly and comprehensively addressed in other

2  proposed instructions.  (See MGA's Proposed Jury Instructions 13C, 14C, [15].)

3

4  Lastly, Mattel's objection that the Court should give the model instruction rather than

5  defendants' proposed instruction should be rejected for the reasons set forth above that

6  demonstrate the need to include the proposed modifications.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INSTRUCTION NO.  3C**

**COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION**

Copyright law allows the author of an original work to prevent others from copying the tangible expression the author used to express the ideas in the author's work.  Only the particular original expression of an idea can be copyrighted, and the right to exclude others applies only to this original expression.  An author cannot prevent others from copying or using aspects of his work which were derived from other sources, such as the work of other artists.

Copyright law protection does not extend to any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.  Particularly relevant here is the limitation that an author cannot prevent others from copying or using ideas or concepts contained or reflected in the work or that inspired the work; to do so would inhibit full and free exchange of information and hinder, rather than promote the creation of new works of authorship, which is the goal of the copyright system.

The right to exclude others from copying also extends only to the particular way the author expressed the ideas in the copyrighted work.

Common or standard treatments of the subject matter are also not protected by copyright. Even though they are forms of expression, they lack sufficient originality to be protected. These are often referred to in copyright law as "scenes a faire," taken loosely from the French for "things which must be done."  In other words, basic ideas or treatments "remain forever the common property of artistic mankind."  [Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th Cir. 1985).]

1  Let me give you an example from the world of T.V. screen-plays.  A television show about
2  a police station in a high crime area will inevitably have standard stock features, such as a
3  precinct house, various levels of police employees from a captain down to the beat officers,
4  criminal suspects who are apprehended, defense lawyers, prosecutors, etc.  Such standard
5  plot lines and features may be thought of as creative expression, but no one can claim
6  ownership or exclusive rights to them, and no one T.V. show can accuse another of
7  violating a copyright by allegedly copying and using such standard features in a second
8  show.  [Walker v. Time Life. Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986).]

9

10 As another example, in the world of theatre, devices that are standard plot lines, and are
11 therefore not protectible, include the controlling mother-in-law, the lipstick stained
12 handkerchief, and the butler bent on murder.  All authors can use these common plot
13 devices.

14

15 Also unprotected is expression in the copyrighted work that reflects expression already in
16 the public domain, and therefore free for all to use.

17

18 To give one illustration in the context of a doll, "[a]n upturned nose, bow lips, and wide
19 eyes are the 'idea' of a certain type of doll face," and this idea does not belong to any one
20 company but rather is in the public domain.   [Mattel, Inc. v. Goldberger Doll
21 Manufacturing Co., 365 F.3d 133, 136 (2d Cir. 2004).]

22

23 For another illustration, a 5 ½ inch Warlord doll does not infringe upon a 5 ½ inch Masters
24 of the Universe doll because, though the dolls look remarkably similar, the similarities are
25 all attributable to the unprotectible idea of a superhuman muscleman crouching in a
26 traditional fighting pose.  [Mattel, Inc. v. Azrak-Hamway Int'l Inc., 724 F.2d 357, 360 (2d
27 Cir. 1983).]

28

These unprotected elements of a work, ideas and concepts, scenes a faire, and unoriginal material, often overlap and are not always easy to separate into categories. Nevertheless, they are not protected by copyright, and must be disregarded when comparisons between the Bryant sketches and the BRATZ dolls are made.

To state it another way, your analysis must be limited to expressive elements in the 16 sketches covered by Mattel's copyrights that were originally contributed solely by Carter Bryant.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); 4-13 <u>Nimmer on Copyright</u> § 13.03[B]; <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435 (9th Cir. 1994); <u>Data East USA, Inc. v. Epyx, Inc.</u>, 862 F.2d 204 (9th Cir. 1988); <u>see also</u> <u>Mattel v. Goldberger Doll Mfg. Co.</u>, 365 F.3d 133, 136 (2d Cir. 2004); <u>Idema v. Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129 (C.D. Cal. 2001).

**INSTRUCTION NO.  3C**

**COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 3C on the following grounds:

1. This proposed instruction deviates from the Ninth Circuit Model Instruction and is erroneous and highly prejudicial.

2. Defendants' proposed instruction incorrectly states that an artist "cannot prevent others from copying or using aspects of his work which were derived from other sources, such as the work of other artists."  Courts have recognized, to the contrary, that every artist is influenced by works created by others, and that the artist's work is not for that reason subject to reduced copyright protection.  *See, e.g.*, *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003) ("all creative works draw on the wellspring that is the public domain").  Bryant has admitted that he did *not* slavishly copy pre-existing works, but rather was creatively inspired by them.  *See, e.g.*, Bryant Decl. submitted in connection with Cross-Motions for Partial Summary Judgment, ¶ 4 ("I regularly reviewed fashion magazines … to look for inspirations for further creative ideas.")

3. Defendants' proposed instruction, in purporting to describe the *scenes a faire* doctrine, ignores that creative compilations of stock features in a visual work are subject to full copyright protection.  *See, e.g.*, *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136 (2d Cir. 2004).

4. The examples proposed by defendants are misleading and inaccurate.  The "stock features" referred to in defendants' TV show and play examples, neither of which is a visual work of art, bear no resemblance to the *creative variations* on features—such as almond-shaped eyes with three eyelashes and heavy eye makeup—that Bryant's drawings employed.  Moreover, defendants again ignore that creative compilations of stock features

489

1 are subject to full copyright protection.  Similarly, the "superhuman muscleman" and
2 "crouching in a traditional fighting pose" features in defendants' doll example are features
3 that are much more generic than those present in the Bryant drawings and designs.  Nor is
4 there any reason why "examples" such as those proposed by defendants should be given at
5 all.

6      5.    Relatedly, defendants mischaracterize the *Mattel v. Goldberger Doll* case in
7 quoting only the portion of the opinion that states that "[a]n upturned nose, bow lips, and
8 wide eyes are the 'idea' of a certain type of doll face" and hence are not protectable as an
9 idea.  Defendants fail to report that the *Mattel v. Goldberger Doll* opinion goes on to say
10 that the variations on this doll face are immensely important commercially and fully
11 protectable legally.  *See* 365 F.3d at 136 ("We can surmise that in the highly competitive,
12 billion-dollar doll industry, getting the doll's face and expression exactly right is crucial to
13 success.").

14      6.    As set forth in Mattel's objection to Instruction No. 1C, the proposed
15 instruction is improper because it applies the filtering principles pertaining to written and
16 dramatic works to visual art.

17      7.    The next to last paragraph of the instruction is superfluous and argumentative.
18 The Court need not instruct the jury on the purported difficulty of the filtering analysis
19 because it is inapplicable in the case of visual works of art.

20      8.    Finally, this instruction is improper because the determination of elements of
21 a work which are protectable is a question of law for the Court, not for the jury.  *See, e.g.,*
22 *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of
23 elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*,
24 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve
25 findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus,
26 before a court may send a copyright case to the jury, it must satisfy itself that, even
27 assuming copying of an idea and its expression, at least some of what the defendant copied
28 falls into the area of protectible expression.");  *Coston v. Product Movers*, 1990 WL 56516

1  at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible

2  expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v.*

3  *Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a

4  finding of copyright infringement may involve questions of fact, the protectability of

5  copyrighted material is a question of law); *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc.,

6  932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a

7  question of law," and the "jury has nothing to do with this subject."); *ADA v. Delta Dental*

8  *Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although

9  copyrightability analysis necessarily requires a court to consider some facts surrounding

10  the works at issue, the inquiry "is far more heavily loaded with policy implications than

11  most other standards," making it appropriate for determination by a court instead of a

12  jury); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The

13  extrinsic and intrinsic tests both involve findings of fact, but the issue of

14  protectibility/nonprotectibility is an issue of law. Thus, before a court may send a

15  copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and

16  its expression, at least some of what the defendant copied falls into the area of protectible

17  expression.").

18      9.    To the extent any instruction regarding the subject matter of copyright is

19  given, Mattel requests that the Court adopt the Ninth Circuit Model Instruction.  *See* 9th

20  Cir. Civ. Jury Instr. 17.3 (2007).

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 3C**

**COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION**

**MGA Parties' and Bryant's Response**

The MGA Parties and Bryant (collectively for this response, "MGA") acknowledge that its reference to Ninth Circuit Model Jury Instructions ("Model Instructions") is for support of their position, and does not indicate that the Model Instruction was copied verbatim. However, Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.   In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.   Jury instructions do not come down from any mountain or rise up from any sea.   Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.   This description does not denigrate their value, it simply places them in the niche where they belong."). Indeed, modification is sometimes necessary to make an instruction accurate and complete. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

It is revealing that Mattel cites no cases decided by or in the Ninth Circuit on the issue of filtering.   MGA's position is well supported by the Ninth Circuit's filtering standards.   The "substantial similarity" analysis involved in the extrinsic test is limited to protected elements of copyrighted work and the court "must take care to inquire only whether the

492

1   *protectable elements, standing alone*, are substantially similar." <u>Funky Films Inc. v. Time</u>
2   <u>Warner Entm't Co.</u>, 462 F.3d 1072, 1077 (9th Cir. 2006), <u>quoting</u> <u>Cavalier v. Random</u>
3   <u>House, Inc.</u>, 297 F.3d 815, 822 (9th Cir. 2002) (emphasis in original).   As such, the "party
4   claiming infringement may place '**no** reliance upon any similarity in expression resulting
5   from unprotectable elements.'" <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435,
6   1446 (9th Cir. 1994), <u>quoting</u> (and adding emphasis to) <u>Aliotti v. R. Dakin & Co.</u>, 831
7   F.2d 898, 901 (9th Cir. 1987).

8

9   As the Supreme Court held in <u>Feist Publications, Inc. v. Rural Telegraph Serv. Co.</u>, 499
10   U.S. 340, 349-50 (1991), "The primary objective of copyright is not to reward the labor of
11   authors, but 'to promote the Progress of Science and useful Arts.'" Art. I, § 8, cl. 8.
12   <u>Accord</u> <u>Twentieth Century Music Corp. v. Aiken</u>, 422 U.S. 151, 156 (1975). To this end,
13   copyright assures authors the right to their original  expression, but encourages others to
14   build freely upon the ideas and information conveyed by a work.   <u>Harper & Row</u>
15   <u>Publishers v. Nation Enters.</u>, 431 U.S. 531, 556-557 (1985).  This principle, known as the
16   idea/expression or fact/expression dichotomy, applies to all works of authorship."  "The
17   mere fact that a work is copyrighted does not mean that every element of the work may be
18   protected.   Originality remains the sine qua non of copyright; <u>accordingly, copyright</u>
19   <u>protection may extend only to those components of a work that are original to the author</u>."
20   <u>Feist</u>, 499 U.S. at 348 (emphasis added).   In other words, it is only copying of
21   copyrightable elements of a work that is answerable under the federal Copyright Act.

22

23   "Unprotectable elements" which must be filtered out of a comparison of a copyrighted
24   work and an allegedly infringing work include: "ideas"; "facts … or other information over
25   which no individual is entitled to claim a monopoly"; "<u>elements borrowed from another</u>
26   <u>author or from the public domain</u>"; instances in which expression "merges with the idea
27   being expressed"; and instances in which the form of the expression "is so standard in the
28   treatment of a given idea that it constitutes a 'scenes a faire'". <u>Idema v. Dreamworks, Inc.</u>,

1   162 F. Supp. 2d 1129, 1176-77 (C.D. Cal. 2001) (emphasis added).   As the Court

2   recognized in its April 25, 2008 Order:  "Both sides acknowledge, as this Court certainly

3   agrees, that one cannot copyright an idea."  (April 25, 2008 Order at 3.)

4

5   Such filtration is necessary because "nearly any two (or more) works" will show a certain

6   similarity "at a sufficient level of abstraction.  What is required is not just 'similarity,' but

7   'substantial similarity,' and it must be measured at the level of the concrete 'elements' of

8   each work ...."  Idema, 162 F. Supp. 2d at 1178-79, citing Berkic v. Crichton, 761 F.2d

9   1289, 1293 (9th Cir. 1985).

10

11   Regarding Mattel's reliance on "creative compilations of stock features", see MGA

12   Parties' and Bryant's Response to Mattel's Objection to Instruction 1C,  at ¶ 7.

13

14   The Court should give examples of how analytic dissection/filtration works to ensure that

15   the jury understands the Court's instructions.  It is not for Mattel to determine if the

16   "superhuman muscleman" involves features that are "much more generic than those

17   present in the Bryant drawings".  Mattel provides no basis for its assertions that "almond-

18   shaped eyes" or "heavy eye-makeup" constitute "creative variations" unique to Bryant's

19   sketches and not stock elements.  Indeed, MGA will introduce evidence of prior cultural

20   influences that demonstrate that these very features are commonplace. As respects Mattel's

21   responses to "full" copyright protection, see paragraph 3 above.

22

23   Mattel again relies on the Second Circuit's statement in the Goldberger case regarding

24   getting the expression "exactly right."  This language simply shows  that the changes made

25   by MGA in developing the BRATZ dolls disprove substantial similarity:  a small change

26   in the doll's face and expression can represent a meaningful difference.  Although the

27   Goldberger court stated that Mattel submitted sufficient evidence "to justify copyright

28

protection for the central expressive features of Barbie's face," the Court also expressly held that:.

> **The protection that flows from such a copyright is, of course, quite limited**. The copyright does not protect ideas; it protects only the author's particularized expression of the idea. **Thus, Mattel's copyright in a doll visage with an upturned nose, bow lips, and widely spaced eyes will not prevent a competitor from making dolls with upturned noses, bow lips, and widely spaced eyes, even if the competitor has taken the idea from Mattel's example, so long as the competitor has not copied Mattel's particularized expression**. An upturned nose, bow lips, and wide eyes are the "idea" of a certain type of doll face. **That idea belongs not to Mattel but to the public domain**.

365 F.3d at 135-36 (emphasis added).

Mattel, moreover, never acknowledges that on remand, the District Court ruled against Mattel at the trial, finding no substantial similarity.  See Mattel, Inc. v. Goldberger Doll Mfg. Co., 60 Civ. 6272 (JSR) (S.D.N.Y. Nov. 20, 2004), vacated, No. 00 Civ. 6272 (S.D.N.Y. Nov. 20, 2006).  Perhaps with this case in mind, Mattel settled that case on appeal, and obtained an order having the District Court's decision vacated.  MGA submits that the District Court's decision still can be considered by this Court for its persuasive effect.

Regarding paragraphs 6-7 (Analytic dissection/filtering of visual works), see MGA Parties' and Bryant's Response to Mattel's Objection to Instruction 1C, at ¶ 7.

In paragraph 8, Mattel has in this statement finally conceded that analytic dissection/filtering is required.  Mattel's citations are largely if not wholly irrelevant, given

495

1  that MGA has not disputed that all of the Bryant sketches except for one are copyrightable.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO.  4C**

**COPYRIGHT INTERESTS – AUTHORSHIP**

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.  In this case, Carter Bryant is the author of the 16 sketches, [and Mattel is the owner of the copyright in those sketches by assignment, as was decided in the Phase I-A trial.]

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.6 (2007).

**INSTRUCTION NO.  4C**

**COPYRIGHT INTERESTS – AUTHORSHIP**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 3C on the following grounds:

1.     Mattel objects to the use of the derogatory term "sketches" when referring to Mr. Bryant's drawings and designs.

2.     This proposed instruction is also misleading and inaccurate in that it purports to limit Mattel's copyright claims in this case to "16 sketches."  Mattel's claims are based on all works which the jury finds Mattel owns pursuant to the Inventions Agreement that have been registered at the time of trial.

**INSTRUCTION NO.  4C**

**COPYRIGHT INTERESTS – AUTHORSHIP**

**MGA Parties' and Bryant's Response**

The term "sketches" is not derogatory and Mattel has not cited anything to support its position that it is.  Mattel's own expert used the term repeatedly in reference to Carter Bryant's works at issue here.  <u>See, e.g.</u>, Loetz Report, at 2 ("When a designer has an idea, he sketches it out."); <u>id.</u> at 4 ("In Carter Bryant's sketches, the Bratz figures are posed …."); <u>id.</u> at 6 ("The Bratz sketches were drawn …."); <u>id.</u> at 9 ("It is the industry standard when creating a new toy … to have the original artist draw sketches.");  Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any distinct meaning to you?  A. Not really …. I don't think there's any real distinction and I think they're used interchangeably").

Mattel's objection asserts that its claims are "based on all works which the jury finds Mattel owns pursuant to the Inventions Agreement that have been registered at the time of trial," but fails to identify a single additional work other than the 16 sketches.  Mattel's attempt to assert some abstract claim that it cannot identify mere weeks before the trial, is contrary to the spirit and the letter of the federal rules requiring parties to a litigation to articulate their positions in a timely fashion.  Mattel should not be permitted to play this evasive game right up until the opening statements.

**INSTRUCTION NO. 5C**

**COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION**

In this lawsuit, it is not disputed that portions of the 16 Bryant sketches contain sufficient original elements to be protected by copyright.  However, I must caution you that the amount of creative expression that is required for copyright protection is extremely low.

In addition, the Copyright Office does not investigate the originality or uniqueness of a work and it does not determine the validity of the claim to copyright protection in issuing a Certificate of Registration for a work.  Accordingly, the mere fact that the Bryant sketches were accepted by the Copyright Office for registration does not determine the degree, scope, or amount of original, protected expression in the sketches.  In addition, the protection afforded by the registration is limited to the specific protectible expression included in the material deposited with the Copyright Office, in this case the Bryant sketches.

Finally, a Certificate of Registration obtained more than 5 years after the first publication of the work covered by that registration is not entitled to a presumption either of copyright protection or that the registration is valid.

**Authority**:  Feist Publications, Inc. v. Rural Telephone Services, Inc., 499 U.S. 340, 346 (1991) ("a modicum of creativity"); see also Expert Report of Ralph Oman, dated Feb. 25, 2005, in Team Play, Inc. v. Boyer, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); Ninth Circuit Manual of Model Jury Instructions 17.5 (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii).

1 <u>**INSTRUCTION NO. 5C**</u>

2 <u>**COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION**</u>

3

4 <u>**Mattel's Objection**</u>

5

6     Mattel objects to defendants' proposed jury instruction 5C on the following grounds:

7     1.    Defendants are estopped by their prior statements and conduct from asserting

8 that the Bryant drawings are subject only to thin copyright protection. *See* Objection to

9 Instruction No. 1C.

10     2.    It is well settled that visual works of art that creatively compile features

11 and/or are inspired by prior works are subject to full copyright protection. *See* Mattel's

12 Objections to Instruction Nos. 1C, 3C.

13     3.    The proposed instruction should state that a copyright registration creates a

14 presumption of originality. *See, e.g.*, 17 U.S.C. § 410(c); *see also Transgo, Inc. v. Ajac*

15 *Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by the

16 Copyright Office is prima facie evidence of copyrightability. This presumption shifts the

17 burden of proof to the challenging party to demonstrate why the item in question is not

18 copyrightable."); NIMMER ON COPYRIGHT §12.11[B][1] at 12-201 (same). It is especially

19 appropriate for the Court to instruct the jury regarding this presumption because without

20 such an instruction defendants' reference to certain works not being entitled to a

21 presumption is confusing.

22     4.    Defendants misstate Ralph Oman's report. While the Copyright Office does

23 not perform a search of prior art before issuing a copyright registration, it does not issue

24 registrations blindly. For instance, an application to register the text of the Declaration of

25 Independence would certainly be rejected.

26     5.    It is not correct as a matter of law that a registration obtained more than five

27 years after first publication is not entitled to a presumption of originality.

28

6.    The language of this proposed instruction is biased and leading and is improper.

7.    Mattel requests that the Court adopt Mattel's proposed instructions regarding originality.  *See* Mattel's Proposed Jury Instructions, at 39-42.

1 <u>**INSTRUCTION NO.  5C**</u>

2 <u>**COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION**</u>

3

4 <u>**MGA Parties' and Bryant's Response**</u>

5

6 Regarding Mattel's estoppel argument, <u>see</u> MGA Parties' and Bryant's Response to

7 Mattel's Objection to Instruction 1C,  at ¶ 7.

8

9 Regarding Mattel's statement in paragraph 2, <u>see</u> MGA Parties' and Bryant's Response to

10 Mattel's Objection to Instruction 1C,   at  ¶ 7.   Contrary to Mattel's objection, the

11 instruction proposed by MGA Parties and Bryant (collectively for this response, "MGA")

12 appropriately distinguishes between mere copyrightability and the degree of creative

13 expression protected by such copyright.

14

15 Mattel's assertions in paragraph 3 are incorrect because the issue as to whether the Bryant

16 sketches (except one which was not registered) have minimum originality is not an issue

17 herein.  Mattel's proposed instruction on a presumption of originality would accordingly

18 confuse the jury.

19

20 With respect to Ralph Oman, Mattel does not explain how MGA "misstate[s]" his report.

21 Mr. Oman, in his expert report in the prior copyright case cited by MGA as authority for

22 the jury instruction, quoted the Copyright Office General Counsel as stating:  "If you blow

23 on a registration certificate, it falls over."   (Oman Deposition, 3/31/08, at 53-54.)   Mr.

24 Oman also stated in that report that the copyright "law is very tolerant of similarities."  (<u>Id.</u>

25 at 56.)

26

27 Mattel's argument that MGA is "incorrect as a matter of law that a registration obtained

28 more than five years after first publication is not entitled to a presumption of originality"

503

does not square with the statute.  Section 410(c) of the Copyright Act's argument  states: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."  17 U.S.C. § 410.  Mattel cites no authority for its argument.

Mattel's allegation that the jury instruction is "biased and leading" or "improper" is not supported by a fair and reasonable reading of the instruction.

For these reasons, and for those set forth in MGA Parties' and Bryant's Objections to Mattel's proposed instructions, defendants' proposed instruction on originality should be given, rather than Mattel's proposed instruction.

## INSTRUCTION NO. 6C
## COPYRIGHT INFRINGEMENT – COPYING

In order to prevail on its claim of copyright infringement, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.      "Factual copying" — that in creating the BRATZ dolls, MGA actually copied the Bryant drawings in the BRATZ dolls.

2.      "Legal copying" — that even if copied, the amount of protected expression taken from the Bryant drawings and found in the BRATZ dolls satisfies the legal standards necessary to show copyright infringement.  This requires proof by Mattel of what is called "substantial similarity" to the level of "virtual identity."

3.      If you find that Mattel has proven both of these elements, your verdict should be for Mattel on the issue of copyright infringement.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants on the issue of copyright infringement.

**Authority**:  BensBargains.net LLC v. XPBargains.com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007); 4-13 Nimmer on Copyright §§ 13.03[A] & [D] (2008).

# INSTRUCTION NO. 6C
# COPYRIGHT INFRINGEMENT – COPYING

## Mattel's Objection

Mattel objects to defendants' proposed jury instruction 6C on the following grounds:

1.      Defendants' proposed instruction incorporates the wrong test for infringement. The correct test is the "substantial similarity" test incorporated in Mattel's proposed jury instruction. *See* Mattel's Proposed Jury Instructions, at 32, 34-35.  Defendants' reference to "virtual identity" (rather than "substantial similarity") test rests on the false premise that the drawings are minimally original and subject only to thin copyright protection.

2.      Defendants are estopped by their prior statements and conduct from asserting that the Bryant drawings are subject only to thin copyright protection.

3.      It is well settled that visual works of art that creatively compile stock features and/or are inspired by prior works are subject to full copyright protection.

4.      Defendants misstate settled law when they contend that Mattel must establish factual copying.  To establish infringement, Mattel only needs to show, by a preponderance of evidence, (1) access to the copyrighted work and (2) substantial similarity.  *See, e.g.*, *Brown Bag Software Corp. v. Symantec*, 960 F.2d 1465,1472 (9th Cir. 1992).  Indeed, the proposed instruction fails to recognize that defendants' undisputed access lowers Mattel's quantum of proof with respect to substantial similarity.  *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we require a lower standard of proof of substantial similarity when a high degree of access is shown.") (quotation marks and citation omitted).

5.      Mattel requests that the Court adopt Mattel's proposed instructions regarding copying, which conforms to the Ninth Circuit Model Instruction.  *See* Mattel's Proposed Jury Instructions, at 31-32.

1 <u>INSTRUCTION NO. 6C</u>

2 <u>COPYRIGHT INFRINGEMENT – COPYING</u>

3

4 <u>MGA Parties' and Bryant's Response</u>

5

6 Mattel's argument regarding broad versus thin protection is based on a factual assumption.

7 If Mattel fails to convince the jury that the Bryant sketches are entitled to broad protection,

8 the jury must apply the virtual identity test for works that are entitled to only thin

9 protection. <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442 (9th Cir. 1994);

10 <u>Satava v. Lowry</u>, 323 F.3d 805, 812 (9th Cir. 2003); <u>Allen v. The Ghoulish Gallery</u>, 2007

11 U.S. Dist. LEXIS 86224 (S.D. Cal. Nov. 20, 2007).

12

13 Regarding Mattel's estoppel argument, <u>see</u> MGA Parties' and Bryant's Response to

14 Mattel's Objection to Instruction 1C, at ¶ 7.

15

16 Mattel's statement in paragraph 3 is meaningless and misleading. (<u>See</u> MGA Parties' and

17 Bryant's Response to Mattel's Objection to Instruction 1C, at ¶ 7.)

18

19 In respects to the issue of factual copying, the MGA Parties and Bryant stand on their legal

20 authorities cited in support of their position. <u>See</u> <u>BensBargains.Net v. XPBargains.Com</u>,

21 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007); 4-13 <u>Nimmer, on</u>

22 <u>Copyright</u> §§ 13.03[A] & [D] (2008). Mattel's reference to the "inverse ratio rule" is

23 misleading at best. Neither "access" or actual copying is relevant to whether a defendant's

24 work is "substantially similar" to protected expression in a plaintiff's work. As the

25 Supreme Court held in <u>Feist Publications, Inc. v. Rural Telegraph Service Co.</u>, 499 U.S.

26 340 (1991), "[t]he primary objective of copyright is not to reward the labor of authors, but

27 'to promote the Progress of Science and useful Arts.'" Art. I, § 8, cl. 8. <u>Accord</u> <u>Twentieth</u>

28 <u>Century Music Corp. v. Aiken</u>, 422 U.S. 151, 156 (1975). **To this end, copyright** assures

authors the right to their original expression, but **encourages others to build freely upon the ideas and information conveyed by a work.** Harper & Row Publishers v. Nation Enters., 431 U.S. 531, 556-557 (1985). This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship." 499 U.S. at 349-50 (emphasis added). Logically, more "access" cannot make works more similar or transform ideas, abstractions, unoriginal material, scenes-a-faire material etc into protected expression.

For these reasons and those set forth in MGA Parties and Bryant's Objections to Mattel's proposed instructions, their proposed instruction should be given, and not Mattel's.

**INSTRUCTION NO. 7C**

**COPYRIGHT INFRINGEMENT – FACTUAL COPYING**

"Factual copying" means that the defendant did not independently create the challenged work.

Where as here the defendants assert independent creation, the plaintiff can establish factual copying:

- through direct evidence of copying; or

- by showing that the defendant had access to the plaintiff's work and that the works have a high degree of similarity, referred to as "probative similarity."

Here, MGA does not dispute that it had access to the Bryant sketches when it began to develop the BRATZ dolls.  However, defendants do dispute that there was copying, and they dispute that there is sufficient "probative similarity" to establish factual copying.

Mattel asserts that there is evidence that MGA directly and intentionally copied the Bryant sketches.

Defendants deny this and they assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls.  Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and artists who developed the first

generation BRATZ dolls used their significant experience and talents to independently create their own original, different and more marketable 3-dimensional doll.   The defendants further assert that the designs of the subsequent BRATZ dolls were also independently created and were even further removed from any "protected expression" in the Bryant sketches.

In determining factual copying, you should weigh all the evidence keeping in mind that Mattel bears the burden of proving that MGA copied the Carter Bryant sketches in the BRATZ dolls.

**Authority**:   BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. Lexis 60544 at **8– 10 (S.D. Cal. Aug. 16, 2007); Sobhani v. @radical.media, Inc., 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003); Miller v. Miramax Film Corp., 2001 U.S. Dist. LEXIS 25967, at **31–32 (C.D. Cal. Sept. 26, 2001); 4-13 Nimmer on Copyright § 13.03[D] (2008).

**INSTRUCTION NO. 7C**

**COPYRIGHT INFRINGEMENT – FACTUAL COPYING**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 7C on the following grounds:

1. Defendants' proposed instruction misstates the law in suggesting that "2-dimensional sketches" are not protectable or are subject only to thin protection where they "lac[k] the detail and other considerations necessary to develop a 3-dimensional doll." *See* Mattel's Objection to Instruction No. 1C. This is nothing more than argument.

2. Defendants misstate settled law when they contend that Mattel must establish factual copying. To establish infringement, Mattel only needs to show, by a preponderance of evidence, (1) access to the copyrighted work and (2) substantial similarity. *See, e.g., Brown Bag Software Corp. v. Symantec*, 960 F.2d 1465, 1472 (9th Cir. 1992). Indeed, the proposed instruction fails to recognize that defendants' undisputed access lowers Mattel's quantum of proof with respect to substantial similarity. *See, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access. In what is known as the 'inverse ratio rule,' we require a lower standard of proof of substantial similarity when a high degree of access is shown.") (quotation marks and citation omitted). Moreover, defendants' proposed requirement that Mattel show a "high degree of similarity," as opposed to substantial similarity, is not authorized under the law.

3. Defendants' reference to "professionally trained MGA sculptors and artists [who] used their significant and experience and talents to independently create their own original, different and more marketable 3-dimensional doll" is gratuitous, biased and argumentative, as is the balance of the language in this proposed instruction.

1       4.     Mattel requests that the Court adopt Mattel's proposed instruction regarding

2  copying, which conforms to the Ninth Circuit Model Instruction.  *See* Mattel's Proposed

3  Jury Instructions, at 31-32.

Objections & Responses Re MGA Parties' & Bryant's Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1   <u>**INSTRUCTION NO. 7C**</u>

2   <u>**COPYRIGHT INFRINGEMENT – FACTUAL COPYING**</u>

3

4   <u>**MGA Parties' and Bryant's Response**</u>

5

6   Mattel mischaracterizes the instruction proposed by the MGA Parties and Bryant

7   (collectively for this response, "MGA").   MGA's point, which is clearly set forth, is not

8   that a two-dimensional sketch is <u>per se</u> unprotectable or <u>per se</u> subject to thin protection.

9   Rather, the fact that the Bryant sketches at issue lacked sufficient detail to guide the

10  creation of a three-dimensional doll without the independent creative input of other artists

11  helps explain why there was independent creation here.

12

13  Regarding factual copying, <u>see</u> MGA Parties' and Bryant's Response to Mattel's

14  Objection to Instruction 6C, at ¶ 4.   Once there is credible evidence of independent

15  creation, the burden of proof falls upon Mattel to prove copying, notwithstanding

16  circumstantial rules relating to the element of copying in the absence of direct evidence of

17  independent creation.

18

19  MGA's statements regarding its own sculptors and artists is a straightforward summary of

20  its position with respect to the specific issue of factual copying, which must be found by a

21  preponderance of the evidence in order for there to be a finding of infringement.

22

23  For the reasons set forth above, and for those reasons set forth in MGA Parties' and

24  Bryant's Objections to Mattel's Proposed Instructions, defendants' proposed instruction

25  should be given on this issue, instead of Mattel's.

26

27

28

**INSTRUCTION NO. 8C**

**COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY**

If you conclude that Mattel did not meet its burden of proving factual copying, you must find for defendants on the issue of copyright infringement. If you conclude that Mattel has met its burden of proving factual copying, then you must move on to the next element of copyright infringement, "legal copying."

Mattel must prove that MGA copied sufficient original and protectible elements from Bryant's sketches to establish "legal copying." As I will explain shortly, using what are known as the "extrinsic" and "intrinsic" tests, you must determine what, if any, protectible expression is present in each of the Bryant sketches and compare the protected expression in a particular sketch to the BRATZ dolls. Unless a sufficient amount of protected expression from a sketch was copied in the BRATZ dolls, Mattel's claim of copyright infringement fails.

In other words, legal copying is an essential element of copyright infringement independent of factual copying. To go back the T.V. screenplay example, the creators of "Law and Order" could have intended to copy certain features of "Hill Street Blues," "N.Y.P.D. Blue," or "Perry Mason," and certainly their access to these earlier shows would be easy to establish. But, unless a sufficient amount of protected expression was copied (i.e., expression that is original to one of these shows, and is not ideas, concepts, scenes a faire or public domain expression), there would be no copyright infringement.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.15 (2007); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Bensbargains.Net v.

XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).

**INSTRUCTION NO.  8C**

**COPYRIGHT   INFRINGEMENT  –  LEGAL   COPYING  –  SUBSTANTIAL SIMILARITY**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 8C on the following grounds:

1.     It is for the Court, not the jury, to determine whether a work is original and/or which components of a work are original.  *See* Mattel's Objection to Instruction No. 1C.

2.     The filtration analysis proposed by Defendants is inapplicable in the case of visual works of art.  *See id.*

3.     Defendants' TV show example is misleading.  *See* Mattel's Objection to Instruction No. 3C.

4.     Mattel requests that the Court adopt Mattel's proposed instruction regarding copying, which conforms to the Ninth Circuit Model Instruction.  *See* Mattel's Proposed Jury Instructions, at 32.

**INSTRUCTION NO. 8C**

**COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY**

**MGA Parties' and Bryant's Response**

Regarding Mattel's objection that the originality of a work is a matter of law for the Court and not the jury, see MGA Parties' and Bryant's Response to Mattel's Objection to Instruction 1C, at ¶ 7.

Mattel is wrong to argue that the filtration analysis does not apply to visual works of art. (See MGA Parties' and Bryant's Response to Mattel's Objection to Instruction 1C, at ¶ 7.)

The MGA Parties and Bryant note that Mattel objects to all illustrative examples provided by the MGA Parties and Bryant, but offers none itself, as it is trying to ensure that the jury does not know how to apply the proper standards.

For the reasons set forth above, and for those set forth in MGA Parties' and Bryant's Objections to Mattel's Proposed Instructions, defendants' proposed instruction, and not Mattel's, should be given on this issue.

**INSTRUCTION NO. 9C**

**COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST**

To determine whether the BRATZ dolls infringe Mattel's copyrights in the Bryant sketches, you must engage in a two-step analysis. The first step is called the "extrinsic" test. If necessary, this is followed by the second step of the analysis, which is called the "intrinsic" test. [Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001).]

Stated generally, the "extrinsic" test considers whether two works share substantial similarity of ideas and expression as measured by external, objective criteria, while the "intrinsic" test considers whether a reasonable person (or in this case, a discerning 8-12 year old girl) would perceive a substantial similarity in the "total concept and feel" of each work, bearing in mind that ideas and concepts and general stylistic features are not protectible under copyright law. [Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (N.D. Cal. 2007) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442–43 (9th Cir. 1994)).]

You should keep in mind that what is required to find infringement is not simply general "similarity" of the works but "substantial similarity" of protected elements of those works. [Id.; Berkic v Crichton, 761 F.2d 1289, 1293–94 (9th Cir 1985).]

I will explain each of these tests in turn.

EXTRINSIC TEST

The "extrinsic" test removes from the analysis of infringement those elements of the copyrighted work that are not entitled to copyright protection. The party claiming

518

infringement cannot rely on any similarity in expression resulting from unprotectible elements.  [Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).]

As I have already explained, the following elements of an original copyrighted work are not entitled to protection under copyright law:

- Ideas and concepts.

- Common features that are standard or essential to the expression of a given idea, called "scenes a faire."

- Expression that is not original to the author (in this case Mr. Bryant), such as pre-existing expression that influenced the author consciously or even subconsciously.

This is a general list of the common unprotected categories.

The process of applying the extrinsic test is referred to as "analytic dissection" because you need to isolate the elements of the copyrighted work and analyze each one separately, excluding the other elements present in the work and the combination of elements.  [See, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997); Lanard Toys, 511 F. Supp. 2d at 1037–38.] It is also referred to as "filtering" because you need to filter out all of the unprotected elements.  [See, e.g., Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007); Brookhaven Typesetting Servs. v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at *22 (N.D. Cal. Aug. 24, 2007).]

You should apply the extrinsic test as follows:

1   *First*, identify those elements in the Bryant sketches that Mattel claims are the expression
2   copied by MGA in the BRATZ dolls.  Mattel has the burden of identifying which specific
3   elements of its works have been copied.

4

5   *Second*, you should determine which of those elements are entitled to copyright protection
6   and which are not.  In other words, you must filter out from each of the 16 Bryant sketches
7   all ideas, all scenes a faire, and all public domain expression that was not original to Mr.
8   Bryant.  Mattel has the burden of proving which elements in each of the Bryant sketches
9   are entitled to protection.

10

11  I will give you a few examples to illustrate the process of filtering.

12

13  It goes without saying that common physical features of a teenage girl are not protectible,
14  as they are the features found in real-life teenage girls and depictions thereof.  Such
15  features could be considered an idea, or even a fact, and therefore they must be filtered out.
16  This would apply to things found in nature such as the presence of heads, 2 ears, lips, hair,
17  2 arms, legs, standard body proportions, etc. in the sketches.  While the particular
18  expression and unique arrangement of all of these features can be protected by copyright,
19  the mere presence of those features as found in nature cannot.

20

21  That the figures in the sketches display fashions, shoes and accessories, by itself, is not
22  protected because the use of fashions, shoes and accessories are "scenes a faire," or
23  standard or common features, in the genre of fashion dolls.  Also, the "style" or general
24  "look" of fashion dolls are not copyrightable.  Nor are conventional cosmetic techniques
25  and looks.  Moreover, the design of particular clothing as used on fashion dolls is not
26  protectible by copyright.

27

28

1  This is another similarity that cannot be counted, so the BRATZ dolls have to be compared
2  to the Bryant sketches without considering the dolls' clothes.  Similarly, hair, hair styles
3  and hairdos cannot be protected because on these fashion dolls the hair is meant to be
4  played with and changed by the target consumers.

5

6  MGA asserts that Carter Bryant's sketches show a group of four contemporary "sassy" or
7  "bratty" teenage friends of diverse ethnic backgrounds and a "funky urban hip" attitude
8  and style as the basis for a line of fashion dolls.  MGA asserts that all of this is a concept
9  or idea, and is thus not protected by copyright.  If you agree with MGA's position, then the
10  idea and concept of such a line of fashion dolls must be filtered out of any subsequent
11  analysis of claimed similarities.

12

13  MGA also asserts that the oversized heads, eyes, feet and lips in the sketches are not forms
14  of expression original to Carter Bryant's sketches, but rather simply reflected common
15  expression that can be found in other dolls, fashion advertisements, and artwork.  If you
16  agree with that contention, then you must "filter out" these elements in connection with
17  your subsequent analysis regarding substantial similarity, because the use of oversized
18  heads, eyes, feet and lips in the sketches was not original to Mr. Bryant.

19

20  The parties and their witnesses and experts will point to many other such issues, asserting
21  that features or elements should, or should not, be filtered out.  You are to determine
22  which, if any, of these features and elements should properly be filtered out in connection
23  with your subsequent analysis regarding substantial similarity.

24

25  Once you have dissected and filtered the Bryant sketches, you are ready to compare the
26  individual elements remaining in a particular sketch that you determine to be protectible
27  with the corresponding elements in the BRATZ dolls.  As the parties disagree with what

28

1  are, and what are not, the similarities between the two, you must next determine what
2  those similarities are.

3

4  The burden is on Mattel to show by a preponderance of evidence the similarity of each
5  element in the sketches you determine to be protectible.  In considering the extrinsic test,
6  you may take into account the testimony of experts called by each party.

7

8  Now comparing the items in the BRATZ dolls that you find to be similar to the protected
9  elements of expression in a particular Bryant sketch owned by Mattel, you should
10 determine whether Mattel has shown by a preponderance of the evidence that the two
11 works are substantially similar.  If you do not so find, then you must find for MGA and
12 Bryant on the claim of copyright infringement.

13

14 If you do find substantial similarity under the extrinsic test, then you turn to the next step
15 of the analysis, the "intrinsic" test.

16

17 BROAD OR THIN PROTECTION

18

19 Before proceeding to apply the "intrinsic" test, you must make an important preliminary
20 determination:  the correct standard to apply.  The appropriate standard for the intrinsic
21 test depends on the scope of copyright protection in a work.  In this case, you must
22 determine the scope of copyright protection in each of Mr. Bryant's sketches asserted by
23 Mattel against MGA.

24

25 The analytic dissection and filtration you previously performed in connection with the
26 extrinsic test also allows you to determine whether the sketches are entitled to "broad" or
27 "thin" copyright protection.  The sketches will be entitled to "broad" protection if you find
28 that they are highly original and reflect a high degree of artistic judgment in a medium

1  offering a broad range of creative choice. The threshold for infringement in such works is
2  substantial similarity of original protected expression.

3

4  On the other hand, if you find that the sketches include only a few protectible elements, or
5  are in a medium in which the effective range of creative expression is limited, then the
6  sketches are only entitled to "thin" protection.  In that case, you can find infringement only
7  if the dolls are virtually identical to original protected expression in any protected sketch
8  examined as a whole.  [Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Cosmos
9  Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1084 (C.D. Cal. 2006) (citing
10  Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994)).]

11

12  The burden of proving that the Bryant sketches are entitled to broad protection is on Mattel.

13

14  INTRINSIC TEST

15

16  The second step of the infringement analysis, the "intrinsic" test, involves a subjective
17  comparison of the protectible aspects of the "works as a whole."  [Apple Computer, Inc. v.
18  Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994).]

19

20  In this evaluation, you should not consider the unprotectible elements that you filtered out
21  as part of the extrinsic test analysis.  [Cavalier v. Random House, Inc., 297 F.3d 815, 822
22  (9th Cir. 2002); Robert C. Lind, Copyright Law (3d ed. 2006) at 173.]

23

24  The intrinsic test is determined from the perspective of an ordinary, reasonable observer.
25  [Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).]  Because girls of the age 8-12 are
26  the core intended market for the BRATZ dolls, you should consider such consumers as the
27  ordinary, reasonable observers.  [Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir.
28

1   1987).]   In other words, you should perform the intrinsic test through the eyes of a

2   discerning 8-12 year old girl who would be a likely user of BRATZ dolls.

3

4   The testimony of experts is not to be considered in your evaluation of the intrinsic test.

5

6   The appropriate standard for the intrinsic test depends on the scope of copyright protection

7   in a work.  If you determine that the Bryant sketches are highly original and are entitled to

8   "broad" copyright protection, infringement under the "intrinsic" test may be found if the

9   ordinary, reasonable person (the 8-12 year old girl) would find the "total concept and feel"

10  of the two separate works to be substantially similar, bearing in mind that ideas, concepts,

11  and style are not protectible.   However, if you determine that the Bryant sketches are

12  entitled only to "thin" copyright protection because a large amount of expression has been

13  filtered out as a result of the application of the extrinsic test, MGA may only be found

14  liable for infringement if you determine that the sketches and dolls are "virtually identical"

15  to original protected expression of any protected sketch viewed as a whole.   [Satava v.

16  Lowry, 323 F.3d 805, 812 (9th Cir. 2003).]

17

18  Mattel bears the burden of proving by a preponderance of the evidence that the Bryant

19  sketches are entitled to broad protection under the intrinsic test.  If Mattel should fail to

20  meet that burden, you must apply the "virtual identity" test for "thinly protected" works.

21  The "virtual identity" test means just what it says:  the BRATZ dolls must be virtually

22  identical with respect to any elements that you find to be protectible in a particular Bryant

23  sketch for there to be infringement under the intrinsic test.

24

25  Then, applying one of these two tests – substantial similarity for broad works, or virtual

26  identity for thin works – you will determine if Mattel has met its burden of proving

27  infringement under the "intrinsic" test.  If Mattel has not met its burden under the intrinsic

28  test, then you must find for the defendants on the copyright infringement claims.

1

2  **Authority**:  Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Apple Computer, Inc. v.

3  Microsoft Corporation, 35 F.3d 1435, 1447  (9th Cir. 1994); Frybarger v. Int'l Bus.

4  Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008

5  U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Idema v. Dreamworks, Inc., 162 F.

6  Supp. 2d 1129, 1176 (C.D. Cal. 2001).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTION NO. 9C

# COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST

## Mattel's Objection

Mattel objects to defendants' proposed jury instruction 9C on the following grounds:

1. Defendants' proposed instruction, which is five pages in length, is far too long to be useful to the jury. Instead, it is designed to be highly prejudicial argument. This instruction should be rejected in its entirety.

2. Defendants' proposed filtration analysis is improper in the case, as here, of visual works of art. *See* Mattel's Objection to Instruction No. 1C. Moreover, the protectability of Carter Bryant's works is a question of law for the Court, not the jury. *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law."); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus, before a court may send a copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and its expression, at least some of what the defendant copied falls into the area of protectible expression."); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law); *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc., 932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a question of law," and the "jury has nothing to do with this subject.");*ADA v. Delta Dental Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although copyrightability analysis necessarily requires a court to consider some facts surrounding

1   the works at issue, the inquiry "is far more heavily loaded with policy implications than

2   most other standards," making it appropriate for determination by a court instead of a

3   jury); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The

4   extrinsic and intrinsic tests both involve findings of fact, but the issue of

5   protectibility/nonprotectibility is an issue of law. Thus, before a court may send a

6   copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and

7   its expression, at least some of what the defendant copied falls into the area of protectible

8   expression.").

9       3.    Defendants erroneously rely on cases such as *Idema v. Dreamworks, Inc.*, 162

10  F. Supp. 2d 1129 (C.D. Cal. 2001), which involve factual—not creative—works. *See id.* at

11  1144, n.31 ("[s]even of the eight works upon which Plaintiffs base their claims are

12  primarily or purportedly factual in nature"). As the Ninth Circuit has emphasized, "works

13  that are not factual receive much broader protection under the copyright laws because of

14  the endless variations of expression available to the artist." *McCulloch v. Albert E. Price,*

15  *Inc.*, 823 F.2d 316, 321 (9th Cir. 1987), *disapproved on other grounds*, *Fogerty v. Fantasy,*

16  *Inc.*, 510 U.S. 517 (1993).

17      4.    Defendants are estopped by their prior statements and conduct from asserting

18  that the Bryant drawings are subject only to thin copyright protection. *See* Mattel's

19  Objection to Instruction No. 1C, *supra*, at 113-16.

20      5.    Moreover, defendants' demand that the jury determine whether Bryant's

21  drawings are entitled to broad or thin protection under copyright law is improper on

22  several grounds. First, as explained above, the degree of protectability is an issue of law

23  for the Court, not for the jury. Second, as also explained above, the notion of thin

24  protection does not apply to visual works. Indeed, under defendants' proposed "virtual

25  identity" approach, no representational painting could be safe from infringement as long as

26  the infringer changes a few insignificant details. Plaintiffs cite no authority for such a

27  radical rule. Third, defendants' instruction suggests that a reasonable jury could find that

28  drawing is "a medium in which the effective range of creative expression is limited." The

1   millenia-long history of visual art shows that the range of creative expression in visual

2   works is not limited, as it may be in the case of computer software or factual works.  *See*

3   *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction

4   about his or her theory of the case if it is supported by law and has foundation in the

5   evidence").  Defendants add insult to injury by proposing that Mattel bears the burden of

6   proving that Bryant's drawings are entitled to broad protection, but do not state that they

7   would bear the burden of proving the contrary (assuming that the instruction is even

8   appropriate, which it is not).

9       6.      Defendants incorrectly state that "the design of particular clothing as used on

10   fashion dolls is not protectible by copyright" and thus that "the BRATZ dolls have to be

11   compared to the Bryant sketches without considering the dolls' clothes."  Clothing is a

12   non-protectible "useful article" only to the extent designed for people, not dolls or toys,

13   which are unquestionably *not* useful articles under the case law.  *See, e.g.*, *Masquerade*

14   *Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 670 (3d Cir. 1990) (masks portraying

15   animals); *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970, 973 (6th Cir. 1983) (toy

16   airplanes).

17       7.      "Defendants' contention that the jury should disregard the dolls' clothing in

18   performing its substantial similarity analysis is incorrect.  Because dolls' clothing is not

19   functional, it is deemed to be an expressive element that may be infringed.  For instance, in

20   *Fisher-Price Toys v. My-Toy Co.*, 385 F Supp 218, 220-21 (S.D.N.Y. 1974), the court

21   considered actionable similarities in the dolls' clothing: "They are both representations of

22   blond-haired little girls appearing to be the same age, dressed in removable red and white

23   checked gingham dresses with puffed sleeves.  White aprons cover the front of each dress.

24   Under each dress is a body suit or pajama outfit made of the same material as the dress,

25   with white lace extending from the pants' leg.  Both dolls also have simple vinyl hands,

26   booty-like feet, and white fabric legs."  *See also* Robert C. Osterberg and Eric C.

27   Osterberg, SUBSTANTIAL SIMILARITY IN COPYRIGHT LAW, § 10:6. ("Some of the particular

28   characteristics courts consider when comparing dolls [for purposes of infringement

528

1  analysis] are facial features, facial expression, size, body and limb type, stance or pose,

2  *hair, clothing and accessories*, age, and gaze.") (emphasis added).

3      8.    None of defendants' cited cases supports the illogical proposition that "hair

4  styles and hairdos cannot be protected because on these fashion dolls the hair is meant to

5  be played with and changed by the target consumers."

6      9.    Defendants' contention that a style or a look of a fashion doll is not

7  copyrightable is contrary to law.  For instance, in *Pivot Point Int'l, Inc. v. Charlene Prods.,*

8  *Inc.*, 372 F.3d 913 (7th Cir. 2004), a creator of *haute couture* mannequin heads sought

9  protection for his expression of the "hungry look" of runway models.  The Seventh Circuit

10  held "one is not only able to conceive of a different face than that portrayed on the Mara

11  mannequin, but one easily can conceive of another visage that portrays the "hungry look"

12  on a high-fashion runway model. . . .[Accordingly, the plaintiff] is entitled to have his

13  expression of the 'hungry look' protected from copying." *Id.* at 931.  So here.  Because the

14  expression of a "funky" attitude in Bryant's drawings is copyrightable, copying of that

15  expression by the Bratz dolls is actionable infringement."

16      10.    It is well settled that visual works of art that creatively compile stock features

17  and/or are inspired by prior works are subject to full copyright protection.  *See id.*

18      11.    The proposed instruction misstates the law with respect to the intrinsic test.

19  In the Ninth Circuit, ideas are not "filtered out" as part of the intrinsic test.  *See, e.g.*, *Data*

20  *East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir.1988) ("[a]nalytic dissection ... is

21  not appropriate under [the intrinsic] test because it distracts a reasonable observer from a

22  comparison of the total concept and feel of the works"); *Olson v. Nat'l Broad. Co.*, 855

23  F.2d 1446, 1449 (9th Cir.1988) ("Although analytic dissection and expert testimony are

24  appropriate under the extrinsic test, they are not appropriate under the intrinsic test.").

25      12.    Defendants' proposed instruction misstates the law in suggesting that Mattel

26  must "show the similarity of each element in the sketches you determine to be protectible."

27      13.    Defendants' contention that expert evidence is not admissible with respect to

28  the intrinsic test is contrary to law.  It is well-settled that an expert can testify with respect

529

1   to the intrinsic test if the infringing work is directed at a specialized audience, here,

2   "tween" girls.  *See, e.g.*, *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003) ("in cases where

3   the audience for the work possesses specialized expertise that is relevant to the purchasing

4   decision and lacking in the lay observer, the trier of fact should make the substantial

5   similarity determination from the perspective of the intended audience. Expert testimony

6   will usually be necessary to educate the trier of fact in those elements for which the

7   specialist will look"); *Dawson v. Hinshaw Music,* Inc. 905 F.2d 731, 736 (4th Cir. 1990)

8   (same); *cf. Lyons P'ship v. Morris Costumes, Inc*., 243 F.3d 789, 803 (4th Cir. 2001) ("by

9   considering the perspectives of young children in the substantial-similarity analysis, the

10   potential liability for infringement might tend to broaden, given the reduced ability of

11   young children to distinguish between objectively different items and concepts."); *Aliotti v.*

12   *R. Dakin & Co*., 831 F.2d  898, 902 (9th Cir.1987) ("[because] children are the intended

13   market for the dolls, we must filter the intrinsic inquiry through the perception of

14   children.").  To state the obvious, no member of the jury will be a "tween"

15   girl.  Accordingly, Mattel may – and intends to – introduce expert evidence concerning

16   "tween" girls' perception of the overall similarity of the works at issue."

**INSTRUCTION NO. 9C**

**COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST**

**MGA Parties' and Bryant's Response**

Mattel's objection that the instruction proposed by the MGA Parties and Bryant (collectively for this response, "MGA") on the multiple steps of the copyright infringement analysis is too lengthy is consistent with its general approach to the jury instructions: Mattel would like the jury to learn as little as possible about copyright law, in the hopes that the jury will be unable to understand and properly apply the relevant legal principles.  The process for evaluating a claim of copyright infringement under Ninth Circuit law is complex in that it requires multiple stages of analysis, each stage requiring the examination of various elements and factors.  See, e.g., Smith v. Jackson, 84 F.3d 1213, 1221 n.9 (9th Cir. 1996) (describing many copyright infringement cases as "legally and technically complicated … in which the jury may be tempted to seize upon the first opportunity to dispose of a case in order to avoid dealing with a case's other, perhaps more difficult, aspects").  Mattel's objection on the ground that MGA's proposed instruction is unduly long is a transparent attempt to obscure the real issues in the case from the jury.

Contrary to Mattel's contentions, visual works are subject to the same general standards of analytic dissection and filtering as are other copyrighted works.  (See MGA Parties' and Bryant's Response to Mattel's Objection to Instruction 1C, at ¶ 7.)  Mattel's argument regarding the protectability of Carter Bryant's works is addressed in MGA Parties' and Bryant's Response to Mattel's Objection to Instruction 1C, at ¶ 7, and MGA Parties' and Bryant's Response to Mattel's Objection to Instruction 3C, at ¶ 7.

Mattel here again attempts to avoid the application of analytic dissection and filtration to the Carter Bryant sketches by distinguishing them from factual works.  It is clear, however,

1  that under Ninth Circuit law, analytic dissection is required in infringement analyses
2  involving creative and artistic works. (See MGA Parties' and Bryant's Response to
3  Mattel's Objection to Instruction 1C, at ¶ 7.)

4

5  Regarding Mattel's estoppel argument, see MGA Parties' and Bryant's Response to
6  Mattel's Objection to Instruction 1C, at ¶ 7.

7

8  Mattel's argument that the scope of protection in the drawings is for the court and not the
9  jury to decide is addressed above. (See also MGA Parties' and Bryant's Response to
10  Mattel's Objection to Instruction 1C, at ¶ 7 & 3C, at ¶ 7.)  Mattel's argument that the
11  concept of thin copyright protection does not apply to visual works is baseless (and indeed,
12  Mattel cites no authority for it).  The Ninth Circuit has made it clear that visual works are
13  treated in the same general manner as other works in the context of analytic dissection and
14  the resulting scope of copyright protection afforded to the work once unprotectable
15  elements have been filtered out.  (See MGA Parties' and Bryant's Response to Mattel's
16  Objection to Instruction 1C, at ¶ 7.) See also Cavalier v. Random House, Inc., 297 F.3d
17  815, 822 (9th Cir. 2002).  Further, Mattel's assertion that the "millennia-long history of
18  visual art shows that the range of creative expression in visual works is not limited" is a
19  generalization which is not relevant here and which would mislead the jury.

20

21  In paragraphs 6-8 of Mattel's objection, Mattel cites case law establishing that toys—
22  specifically animal costume masks and toy airplanes—are not useful articles.  See
23  Masquerade Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 671 (3d Cir. 1990)
24  (holding that plaintiff's animal masks were not useful articles and noting that "[o]n
25  remand, it will be Masquerade's burden to show that Unique's nose masks incorporate
26  copies, in the copyright law sense, of Masquerade's sculptures, rather than sculptures that
27  derive their similarity to Masquerade's sculptures merely from the commonality of the
28  animal subjects both represent"); Gay Toys, Inc. v. Buddy L. Corp., 703 F.2d 970 (6th Cir.

1  1983) (holding that a toy airplane is not a utilitarian object).  MGA has not asserted herein

2  that dolls are not copyrightable, and neither of these cases has any bearing on whether doll

3  clothing is copyrightable.  Fisher-Price Toys v. My-Toy Co., 385 F. Supp. 218, 220-21

4  (S.D.N.Y. 1974), similarly has no bearing on this issue because the court there was not

5  applying the filtration test mandated by Ninth Circuit law, and made no mention of an

6  extrinsic versus intrinsic analysis or filtering of unprotected elements.  More importantly,

7  the opinion is entirely focused on the issue of "factual copying" rather than "legal copying",

8  and thus the court was only noting various similarities in elements, including clothing, to

9  address the defendant's claim that they did not *actually* copy the dolls at issue.  The court

10  there found that there was "striking similarity" between the dolls and that any differences

11  between the dolls were "minor and appear to be the result of a calculated but thin attempt

12  to disguise deliberate copying of plaintiffs' dolls."  Id. at 220-21.

13

14  That doll hair and doll clothing do not fall within the scope of copyright subject matter is

15  the position taken by the Copyright Office.  (See Deposition Ex. 625 (April 8, 2005

16  Copyright Office Letter) at 1-2.)  Mattel's expert in Copyright Office procedures, Ralph

17  Oman, the former Register of the Copyright Office,  testified, consistent with the

18  Copyright Office Letter, that doll "hair that could be changed and modified" by the doll's

19  owner "would not be within the subject of copyright."  (Oman Dep. at 38:24-39:3.)  Oman

20  also testified that doll clothes that are "just the miniaturization of a normal dress" are not

21  copyrightable.  Id. at 34:17-20.  Mattel's expert Lee Loetz acknowledged that the "funky

22  urban" fashions used with the Bratz dolls are miniature versions of fashions that are found

23  "almost anywhere because they're popular." (Loetz Dep. at 45:11-47:2.)   Mattel

24  characterizes the instruction as "illogical" yet cites no support for its objection.

25

26  With respect to Mattel's paragraph 9, the general style of a fashion doll is not protected by

27  copyright law, because a mere "style" is not in itself particularized expression.  Even the

28  case cited by Mattel illustrates this very point.  The issue in Pivot Point Int'l, Inc. v.

533

1    Charlene Prods., Inc., 372 F.3d 913 (7th Cir. 2004), was whether plaintiff's mannequin,

2    designed with a particular facial expression meant to evoke a "hungry look" was

3    copyrightable at all.  In holding that plaintiff's expression of this look was protected from

4    copying, see id. at 931, the court cited Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d

5    133 (2d Cir. 2004), as having "rejected the idea that a particular expression of features on a

6    doll's face was not subject to copyright protection."  372 F.3d at 931.  Thus, it was not that

7    the portrayal of a "hungry look" on a mannequin was copyrightable (Mattel's contention

8    herein), but rather that the *specific* facial features and expression of this mannequin were

9    protected from copying.  See id. at 931 ("[O]ne easily can conceive of another visage that

10   portrays the 'hungry look' on a high-fashion runway model.").  See also Galiano v.

11   Harrah's Operating Co., 426 F.3d 411, 422 (5th Cir. 2005) (questioning the significance of

12   Pivot Point, in the context of denying copyrightability in the design of uniforms for casino

13   employees). (Cf. Dep. Ex. 625 (April 8, 2005 Copyright Office Letter) at 2 (noting that

14   "the styling or general 'look' of each doll with its various outfits" are not within copyright

15   subject matter).)

16

17   With regard to Mattel's argument that "works of art that creatively compile stock features

18   and/or are inspired by prior works are subject to full copyright protection," see MGA

19   Parties' and Bryant's Response to Mattel's Objection to Instruction 1C,  at ¶ 7.

20

21   In Paragraph 11, it appears that Mattel is mischaracterizing MGA's proposed instruction.

22   Mattel argues that MGA's proposed instruction misstates the law with respect to the

23   intrinsic test because in the Ninth Circuit, ideas are not "filtered out" as part of the intrinsic

24   test.  MGA's proposed instruction 9C does not state that ideas are to be filtered out as part

25   of the intrinsic test; rather, MGA's instruction instructs the jury to conduct analytic

26   dissection and filtering as part of the extrinsic test, which then determines the "appropriate

27   standard for the intrinsic test."  Thereafter, MGA notes that ideas and concepts are not

28   protectible under either test, which is an uncontroversial proposition stated by the clear

534

1   language of the Copyright Act.  17 U.S.C. §102(b).  (See MGA Proposed Jury Instruction
2   9C.)

3

4   With respect to Mattel's paragraph 12, MGA notes that Mattel does not cite to any legal
5   authority to support its position.  Once unprotected elements of the work are filtered out,
6   only the protectable elements are analyzed for infringement.  See Idema v. Dreamworks,
7   Inc., 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001) ("This part of the [intrinsic] test
8   measures whether there is a sufficient level of 'similarity' between the copyrightable
9   'elements' of a plaintiff's work, and the equivalent 'elements' in an allegedly infringing
10  work.").

11

12  With respect to the arguments in Mattel's paragraph 13, in which it takes the
13  unprecedented position that "an expert can testify with respect to the intrinsic test if the
14  infringing work is directed at a specialized audience", there are a number of defects.  First,
15  according to Mattel this principle is "well-settled," yet Mattel is unable to provide a single
16  citation to any Ninth Circuit authority for it.  Second, none of the cases Mattel cites are
17  relevant here because the courts in those cases were not bound by the clear Ninth Circuit
18  rule that expert testimony is not permitted with regard to the intrinsic test.  See, e.g., Apple
19  Computer Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994); Olson v. Nat'l
20  Broad. Co., 855 F.2d 1446, 1449 (9th Cir. 1988).  Third, those cases are also factually
21  distinguishable because the audience for the fashion dolls at issue here (8-12 year old girls)
22  is not an audience of "specialized expertise."  Cf. Kohus v. Mariol, 328 F.3d 848, 858 (6th
23  Cir. 2003) (a "rare" case in which the intended audience was not the lay public); Dawson v.
24  Hinshaw Music, Inc., 905 F.2d 731, 737 (4th Cir. 1990) (refining the ordinary observer
25  test in the context of choral directors who possess specialized expertise relevant to the
26  selection of musical arrangements).   There are numerous reported decisions in copyright
27  infringement cases involving dolls and other toys, many of which have been litigated by
28

535

Mattel.  Yet Mattel has not cited to a single one in support of its position that expert testimony is permitted to inform the intrinsic analysis.

While Mattel's argument regarding the need for expert testimony on the subjective analysis is wrong, there is nothing objectionable about the introduction of expert or lay testimony regarding the perceptions, tastes and preferences of 8-12 year old girls.

**INSTRUCTION NO. 10C**

**COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK**

The Bryant sketches are 2-dimensional works, while the BRATZ dolls are 3-dimensional works. While those facts may complicate your analysis under the extrinsic and intrinsic tests, the copyright in a 2-dimensional work can be infringed by a 3-dimensional work. However, the copyright in a 2-dimensional work only covers what is shown on the face of the work. For example, if a Bryant sketch only shows the front view of a figure, the copyright does not cover the rear or side view of that figure, or anything else that is not specifically visible in that particular sketch. Whether in this case the BRATZ dolls (3-dimensional works) infringe the Bryant sketches (2-dimensional works), is for you to decide, using the two-part analyses already described.

**Authority**: 1-2 Nimmer on Copyright § 2.08(C)(2).

**INSTRUCTION NO. 10C**

**COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 10C on the following grounds:

1. This proposed instruction is argumentative and unnecessarily complicated. The statement in this instruction that the 2-D to 3-D issue "may complicate your analysis under the extrinsic and intrinsic tests" is unnecessary and argumentative. Mattel also objects to inclusion of any of the language beyond the first two sentences of the proposed instruction.

2. Mattel requests that the Court adopt Mattel's proposed instruction, which provides the jury with a concise and objective statement of the law and is not argumentative. *See* Mattel's Proposed Jury Instructions, at 37.

**INSTRUCTION NO. 10C**

**COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK**

**MGA Parties' and Bryant's Response**

Mattel's objection here that the statement regarding two-dimensional versus three-dimensional works is "argumentative and unnecessarily complicated" is, again, consistent with Mattel's preference that the jury be given as little information as possible, likely in the hopes that the jury will have difficulty understanding and engaging in the analysis that is required under copyright law. Comparing works in different media for copyright infringement is complicated both conceptually and in application, a non-controversial proposition which is recognized by the courts. See Ideal Toy Corp. v. Kenner Prods. Div. of Gen. Mills Fun Group, Inc., 443 F. Supp. 291, 301 (S.D.N.Y. 1977) (noting that the infringement question is "made even more difficult than normal" where the allegedly infringing item is "in a different medium and of a different nature from the copyrighted item, as in this case where the Court is asked to determine whether a three-dimensional toy infringes the copyright in a two-dimensional movie"). Mattel also objects to "any of the language beyond the first sentences" of the instruction, but states no specific grounds for that objection. Mattel cannot explain how something that is not visible could possibly be infringed. For these reasons, and for those set forth in MGA Parties' and Bryant's Objections to Mattel's Proposed Instructions, defendants' proposed instruction, and not Mattel's, should be given on this issue.

**INSTRUCTIONS NO. 11C**

**COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**

Even if Mattel proves that MGA had access to the 16 Bryant sketches and that particular Bratz dolls are substantially similar to certain of these sketches, this only creates a presumption of illegal copying.  MGA may rebut that presumption with evidence that the Bratz dolls are the product of independent creation, and were not copied from the 16 Bryant sketches.  If MGA presents evidence of independent creation, then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches.

**Authority**:   Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311 (E.D. Pa. 2000).

**INSTRUCTIONS NO. 11C**

**COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 11C on the following grounds:

1.     This proposed instruction is improper since defendants did not assert the affirmative defense of independent creation in their answers and have therefore waived such defense.  *See, e.g.*, *Bethea v. Burnett*, 2005 WL 1720631(C.D.Cal. 2005) (noting that independent creation is an affirmative defense); *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984) (unasserted affirmative defenses are waived).

2.     Defendants contend improperly that "[i]f MGA presents evidence of independent creation then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches."  Independent creation is an affirmative defense that, if pleaded, could only be addressed once Mattel establishes copyright infringement.  *Eden Toys v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir. 1982) ("Evidence of independent creation may be introduced by a defendant to rebut a plaintiff's prima facie case of infringement.").  However, since defendants did not plead this defense, it cannot be considered at all.

3.     Defendants' reliance on the independent creation defense is misplaced.  The independent creation defense applies where the accused infringer shows that he created the work prior to or wholly independently of the infringed work (i.e., where two different people happen to create similar works).  For instance, an author accused of copying another writer's novel can establish independent creation by showing drafts of his work that pre-date his access to the allegedly infringed novel.  *See, e.g.*, *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y 2000) (finding for the defendant singer and composer where the singer produced extensive notes and demo recordings demonstrating independent

541

1 development of the allegedly infringing hit song).  This, however, is a case where the
2 author of the infringed work (Bryant) also worked and continues to work on a series of
3 infringing works.  In this context, any reference to "independent creation" is not only
4 meritless as a matter of law and unsupported by the evidence, but would also confuse the
5 jury.

6       4.    Defendants' proposed instruction is biased and self-serving.

7       5.    *Counter-Instruction*:  To the extent the Court decides, over Mattel's objections,
8 to give any instruction on this defense, Mattel requests that the Court adopt the following
9 instruction:

10         If you find access and substantial similarity, you must find that
11         defendants infringed Mattel's copyrights.  Defendants contend that the
12         Bratz dolls were created independently, i.e., that defendants did not
13         actually copy or prepare derivative works from Bryant's drawings
14         when they created the Bratz dolls notwithstanding their admitted
15         access to these drawings. The independent creation defense applies
16         where the defendant can prove that he created the allegedly infringed
17         work without copying the original to which he had access.   For
18         instance, an author accused of copying another writer's novel can
19         establish independent creation by showing drafts of his work that pre-
20         date his access to the allegedly infringed novel.   Defendants bear the
21         burden of proof on this defense.  If you find that defendants have not
22         established this defense by a preponderance of the evidence, then you
23         must find for Mattel on its claim of copyright infringement.

24
25
26
27
28

542

1 <u>**INSTRUCTIONS NO. 11C**</u>

2 <u>**COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**</u>

3

4 <u>**MGA Parties' and Bryant's Response**</u>

5

6 Mattel's assertion in paragraphs 1-2 that the MGA Parties and Bryant (collectively for this

7 response, "MGA") have "waived" the "defense" of independent creation is wrong.

8 Evidence of independent creation is not a defense that is "waived" if not asserted in the

9 pleadings, but rather, as Mattel's own cited authority recognizes, it is evidence that can be

10 used to <u>rebut</u> a prima facie case of infringement—i.e. an inference of copying—established

11 by evidence of access and substantial similarity.  <u>See</u> <u>Eden Toys Inc. v. Marshall Field &</u>

12 <u>Co.</u>, 675 F.2d 498, 501 (2d Cir. 1982) ("Evidence of independent creation may be

13 introduced by a defendant to rebut a plaintiff's prima facie case of infringement."); <u>see</u>

14 <u>also</u> <u>Granite Music Corp. v. United Artists Corp.</u>, 532 F.2d 718, 721 (9th Cir. 1976);

15 <u>Sobhani v. @radical.media, Inc.</u>, 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003); <u>accord</u>

16 <u>Keeler Brass Co. v. Continental Brass Co.</u>, 862 F.2d 1063, 1066 (4th Cir. 1988)

17 ("'[I]ndependent creation' is not an affirmative defense.  The defendants, therefore, do not

18 have the burden of persuasion for independent creation.   Keeler's prima facie case

19 advanced the proposition that the defendants copied the design.  Evidence of independent

20 creation simply tends to prove the reverse of that proposition, i.e., that the design was not

21 copied."); <u>see generally</u> Charles A. Wright and Arthur R. Miller, <u>Federal Practice and</u>

22 <u>Procedure</u> § 1270 (3d ed. 2004) ("Federal Rule 8(c) … deals with affirmative defenses …

23 distinguished from … Rule 8(b), which deals with denials or negative defenses that

24 directly contradict elements of the plaintiff's claim for relief.").

25

26 Mattel cites only one case, <u>Bethea v. Burnett</u>, 2005 WL 1720631 (C.D. Cal. June 28, 2005),

27 for its affirmative defense argument.  (<u>Harbeson v. Parke Davis, Inc.</u>, 746 F.2d 517, 520

28 (9th Cir. 1984), offers merely a general statement of the law of pleading affirmative

1  defenses and does not even relate to copyright law.)  Although the court in <u>Bethea</u> did use
2  the phrase "affirmative defense" in a lengthy analysis of substantial similarity, it is
3  apparent that the court was not using it in a technical sense, because in the same paragraph
4  the court explains that it is only once a copyright plaintiff establishes reasonable access
5  and substantial similarity that the burden shifts to the defendant to rebut that presumption.
6  <u>Id.</u> at * 15 (citing <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 486 (9th Cir. 2000)).

7

8  Evidence of independent creation is to be considered along with the plaintiff's evidence in
9  evaluating whether infringement has occurred.  <u>See</u> 3 <u>Nimmer, on Copyright</u> § 12.11[D]
10 ("[T]he trier [of fact] may entirely believe both that the defendant had access to the
11 plaintiff's work and that the two works are substantially similar, but nevertheless,
12 reasonably conclude that the defendant independently created, rather than copied.  <u>Jury
13 instructions should so reflect.</u>") (emphasis added); <u>id.</u> at § 12.10[B][2][b] ("[T]he law has
14 devised proof of access plus probative similarity as surrogates to prove copying as a
15 factual matter. To the extent that defendant denies that copying and maintains independent
16 creation, a factual issue arises … for trial to resolve.").

17

18 In support of its assertion that an instruction on independent creation is "misplaced,"
19 Mattel cites one case—<u>Dimmie v. Carey</u>, 88 F. Supp. 2d 142 (S.D.N.Y. 2000)—but offers
20 no authority or explanation to suggest that evidence of independent creation is only
21 admissible in cases with the same fact pattern as <u>Dimmie</u> (and indeed, the various Ninth
22 Circuit cases in which evidence of independent creation is considered refutes such a
23 notion).

24

25 Because it is not an affirmative defense, MGA was not required to assert "independent
26 creation" in its answer.  MGA and Carter Bryant <u>have</u> asserted, in the proper context of
27 interrogatory responses, that the first generation and all subsequent BRATZ dolls were
28 independently created by a team of professional artists who were inspired by Carter

544

Bryant's concept drawings, but who developed the finished BRATZ dolls using their own creativity and originality. (See MGA's Second Supplemental Responses to Mattel's Revised Third Set of Interrogatories, dated January 7, 2008, at 18, 29-30, 48.)

As the preceding paragraphs demonstrate, MGA's proposed instruction is neither biased nor self-serving.

Mattel's proposed counter-instruction is improper because it incorrectly states the law regarding independent creation.  As explained above, independent creation is not an affirmative defense which MGA must prove by a preponderance of the evidence, but rather is rebuttal evidence to counter a prima facie case of copying established by evidence of access and substantial similarity.  The example offered is also misleading in that it suggests that evidence of independent creation must demonstrate work that pre-dates access to the copyrighted work.

**INSTRUCTION NO. 12C**

**COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS**

Mattel has based its copyright claims on 16 separate copyright registrations, each one registering a different Carter Bryant sketch. Each of these sketches is only entitled to copyright protection for the original expression contained in the particular sketch. Mattel cannot extend or enhance its rights by treating two or more of the sketches as a compilation or as a unified work. In other words, Mattel cannot pick and choose characteristics from more than one of these sketches to search for alleged similarities with a single BRATZ doll. Each individual sketch must be judged based on its own protectible content in a comparison with a particular one of the allegedly infringing BRATZ dolls.

This means that in determining whether Mattel has met its burden of proving infringement, you must separately analyze each of the 16 sketches covered by a Mattel copyright under both the extrinsic and intrinsic tests. As an example, you may not combine the design of facial features from one Bryant sketch with the body proportions from another Bryant sketch, and then evaluate whether the BRATZ dolls are substantially similar to this combination.

**Authority**: Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); see also Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995) ("Plaintiff cannot pick and choose characteristics from any number of characters in his work to search for alleged similarities with a single character in defendants' work."); 9 Patry on Copyright § 9:66 (2008).

**INSTRUCTION NO.  12C**

**COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 12C on the following grounds:

1.      This proposed instruction is not based on any Ninth Circuit Model Instruction and is unnecessary and argumentative.  Defendants cite a footnote in a published decision, one unpublished decision and a treatise.  These cases are factually distinguishable and do not support this instruction.

2.      Defendants take the absurd position that a single work cannot infringe elements of several works.  In other words, defendants contend that a Bratz doll would not infringe if it copies the head from one drawing but copies the doll's body from another drawing.  That is not the law.  This case, therefore, is no different from *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld," because even though the amount of expression copied from each episode was relatively small.  *See id.* at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.")  Here, as in *Castle Rock*, Bryant's drawings are a single series of depictions of the same four characters (i.e., Bratz), developed for a specific purpose, (i.e., creating Bratz dolls).  Accordingly, it would be wholly artificial for the jury to be instructed to consider each Bratz drawing separately.  Indeed, defendants do not cite any authority to support their instruction.  For instance, in *Idema v. Dreamworks, Inc.*, 162 F. Supp.2d 1129, 1144

n. 31 (C.D.Cal. 2001), the plaintiff claimed that the defendant's film infringed elements of eight separate texts, but did not claim a copyright in the combination of the works.  Here, however, Mattel claims that defendants infringed Bryant's drawings both individually and in combination.

**INSTRUCTION NO. 12C**

**COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS**

**MGA Parties' and Bryant's Response**

Mattel's objection that this instruction is unnecessary and argumentative is yet another example of Mattel's effort to deny the jury any guidance on how to apply complex copyright principles to the factual issues in this case. In addition, Mattel's objection that the MGA Parties and Bryant (collectively for this response, "MGA") contend a single work cannot infringe elements of multiple works appears to rely on a misreading of MGA's proposed instruction, which states no such absolute rule.

Moreover, Mattel's attempt to distinguish the cases cited by MGA is not persuasive in that Mattel claims that defendants "infringed Bryant's drawings both individually and in combination" but fails to explain what that might mean—or how that is any different from the plaintiff's claim of infringement based on eight works that collectively comprised "Idema's story" in <u>Idema v. Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129, 1144 (C.D. Cal. 2001). Contrary to Mattel's assertion, this case is in fact quite different from <u>Castle Rock Entm't v. Carol Publ'g Group, Inc.</u>, 150 F.3d 132 (2d Cir. 1998), which involved a television series, over the course of which characters uniformly played by the same actors were developed in a unified sequence. Here, Carter Bryant's initial concept sketches were exploratory and preliminary in nature, and they are far from uniform in their expression. As MGA's experts have pointed out, for example, there are a number of significant differences among Carter Bryant's drawings, such that they cannot reasonably be considered as a unified work. (<u>See</u> Expert Report of Glenn Vilppu (dated March 14, 2008) at ¶ 15; Expert Report of Tonner (dated February 11, 2008) at 11.) Mattel is apparently trying to avoid having to identify any specific comparison for the jury, as a means of enforcing its position on substantial similarity.

**INSTRUCTION NO. 13C**

**DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT**

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant sketches, you may consider Mattel's claims that Isaac Larian vicariously infringed those copyrights. Mattel has the burden of proving each of the following by a preponderance of the evidence:

        1.    That Mr. Larian profited directly from the infringing activity of MGA or MGA Hong Kong;

        2.    That Mr. Larian had the right and ability to supervise the infringing activities of MGA and MGA Hong Kong; and

        3.    That Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel as to the individual defendant if you also find that MGA or MGA Hong Kong infringed Mattel's copyright. If, on the other hand, Mattel has failed to prove any of these elements with respect to Isaac Larian, your verdict should be for Mr. Larian.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.20 (2007).

**INSTRUCTION NO.  13C**

**DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT**


**Mattel's Objection**


Mattel objects to defendants' proposed jury instruction 13C on the following grounds:

1.      This proposed instruction is confusing and unnecessary since the parties submitted a joint proposed instruction regarding Mattel's claim for vicarious infringement. *See* Joint Proposed Jury Instructions, at 36.

2.      In any event, Mattel objects to the use of the derogatory term "sketches" when referring to Mr. Bryant's drawings and designs.

3.      The proposed instruction is confusing and potentially misleading to the jury in that it states that Mattel must prove the elements of vicarious infringement as to "*each* of them," i.e., Larian and Bryant, which suggests that the jury would need to find that Mattel proved this claim against both Larian and Bryant in order to find either of them liable, which is incorrect.

**INSTRUCTION NO.  13C**

**DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT**


**MGA Parties' and Bryant's Response**


With regard to Mattel's objection to the use of the term "sketches", <u>see</u> MGA Parties' and Bryant's Response to Mattel's Objection to Instruction 1C, at ¶ 3.


Mattel's third objection to this instruction refers to a previous iteration of this instruction. No fair reading of the current proposed instruction would suggest that it is confusing or potentially misleading in the way Mattel suggests, or in any other way.  In particular, this instruction does not refer to Bryant or use the words "each of them", as Mattel is no longer asserting a vicarious liability theory against Bryant.   (<u>See</u> Mattel's Proposed Jury Instructions on Vicarious Liability.)


Further, this proposed instruction is necessary to present the claims at issue clearly for the jury and to avoid confusion that would prejudice defendants.

**INSTRUCTION NO.  14C**

**DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT**

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induces that infringing activity.

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant sketches, you may proceed to consider Mattel's claims that Isaac Larian and Carter Bryant contributorily infringed those copyrights.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence with respect to each of them:

      1.    That Mr. Larian or Mr. Bryant knew or had reason to know of the infringing activity of MGA or MGA Hong Kong; and

      2.    That Mr. Larian or Mr. Bryant intentionally induced MGA or MGA Hong Kong's infringing activity

If you find that MGA or MGA Hong Kong infringed Mattel's copyright, and you also find that Mattel has proved both of these elements as to the individual defendant, your verdict should be for the Mattel.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for Mr. Larian or Mr. Bryant, or both of them.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.21 (2007).

**INSTRUCTION NO.  14C**

**DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT**

**Mattel's Objection**

Mattel objects to defendants' proposed jury instruction 14C on the following grounds:

1.     Mattel objects to the use of the derogatory term "sketches" when referring to Mr. Bryant's drawings and designs.

2.     The proposed instruction is confusing and potentially misleading to the jury in that it states that Mattel must prove the elements of contributory infringement as to "*each* of them,*" i.e., Larian and Bryant, which suggests that the jury would need to find that Mattel proved this claim against both Larian and Bryant in order to find either of them liable, which is incorrect.

3.     Defendants' proposed instruction states that Mattel must prove that Larian or Bryant "intentionally induced" MGA's copyright infringement, when the model instruction makes clear that it is sufficient for Mattel to show that Larian or Bryant "materially contributed" to the infringement.  *See* 9th Cir. Civ. Jury Instr. 17.21 (2007).

4.     The proposed instruction is misleading and erroneous in that it fails to inform the jury that Mattel also claims that MGA Hong Kong is liable for contributory infringement.

5.     Mattel requests that the Court adopt Mattel's proposed instruction, which conforms to the Ninth Circuit Model Instruction.  *See* Mattel's Proposed Jury Instructions, at 46.

**INSTRUCTION NO. 14C**

**DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT**

**MGA Parties' and Bryant's Response**

With regard to Mattel's objection to the use of the term "sketches", see MGA Parties' and Bryant's Response to Mattel's Objection to Instruction 1C, at ¶ 3.

No fair reading of the proposed instruction would suggest that it is confusing or potentially misleading in the way Mattel suggests, or in any other way.

Mattel's objection misstates the Ninth Circuit Model Jury Instruction 17.20. Contrary to Mattel's assertion, the model jury instruction makes clear that no contributory infringement may be found unless the jury finds that the defendant acted "intentionally." See 9th Cir. Civ. Jury Instr. 17.21 (2007). This proposed instruction clarifies this requirement for the jury. As set forth repeatedly above regarding previous instructions, modifications of model jury instructions are proper when helpful or necessary to present the applicable law accurately to the jury.

In paragraph 4, Mattel has simply retooled a previous faulty argument regarding MGA Parties and Bryant into a new faulty argument about MGA Hong Kong. Mere weeks before trial Mattel cannot make up its mind about who it wants to blame for what, and is now attempting to claim both direct and contributory infringement against MGA Hong Kong, an inconsistent position that would if permitted only serve to confuse the jury.

For the reasons set forth above, and for those set forth in MGA Parties' and Bryant's Objections to Mattel's Proposed Instructions, defendants' proposed instruction, and not Mattel's, should be given on this issue.

1 **INSTRUCTION NO. 15**

2 **DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT**

3

4 To determine whether or not Mr. Bryant or Mr. Larian contributorily infringed Mattel's

5 copyrights (according to the preceding instruction), you must consider whether Mr. Bryant

6 or Mr. Larian intended to induce MGA and MGA Hong Kong's infringing activities.  Mr.

7 Bryant or Mr. Larian cannot be liable for another'' infringement if he did not act with the

8 desire or purpose of intentionally inducing that infringement.  Mere awareness that

9 potential infringing activity might result is not enough.

10

11 **Authority:**  Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931-33

12 (2005); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **INSTRUCTION NO.  15**

2  **DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT**

3

4  **Mattel's Objection**

5

6       Mattel objects to defendants' proposed jury instruction 15 regarding Derivative

7  Liability: Intentional Inducement on the following grounds:

8       1.     This proposed instruction is unnecessary and confusing.  Ninth Circuit Model

9  Instruction 17.21 sets forth the law governing Mattel's claim for contributory infringement.

10 This proposed instruction adds nothing to the model instruction (which both sides have

11 proposed, although defendants' version is inaccurate), but instead just emphasizes

12 defendants' arguments and misstates the law.

13      2.     The cited authorities do not support defendants' erroneous assertions that

14 defendants are not liable if they "did not act with the desire or purpose of intentionally

15 inducing that infringement" and that "awareness that potential infringing activity might

16 result is not enough."  Indeed, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, the Ninth Circuit

17 confirmed that the relevant inquiry is simply whether defendant "***materially contributed*** to

18 the infringing activity."  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir.

19 1996) (emphasis added) (agreeing that "providing the site and facilities for known

20 infringing activity is sufficient to establish contributory liability").  The Supreme Court's

21 statement in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)

22 that "mere knowledge of infringing potential" might not be enough for liability has no

23 application here.  That case announced the circumstances under which a party that merely

24 distributes a device (e.g., a distributor of file-sharing computer networking software) can

25 be liable for the infringing activities of third parties.  None of the defendants can claim to

26 be such a "distributor" here.

27      3.     Defendants' proposed instruction purports to inform the jury that Mattel must

28 prove that defendants "intended to induce" MGA's copyright infringement, when the

model instruction makes clear that it is sufficient for Mattel to show that defendants "materially contributed" to the infringement. *See* 9th Cir. Civ. Jury Instr. 17.21 (2007); *see also Fonovisa, Inc.*, 76 F.3d at 264.

      4.     The proposed instruction is misleading and erroneous in that it fails to inform the jury that Mattel also claims that MGA Hong Kong is liable for contributory infringement.

**NSTRUCTION NO. 15**

**DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT**

**MGA Parties' and Bryant's Response**

This instruction is necessary to clarify the applicable law for the jury, and is proper based on the authorities defendants cited in support of the instruction and cases discussed therein. The intentional inducement requirement set forth here is also consistent with the Model Instruction on contributory infringement, but provides more explanation to help the jury apply the appropriate law. Mattel's objections rely on unduly narrow and fact-dependent interpretations of that authority, which in fact support the approach set forth in this instruction.