QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | **MATTEL, INC.'S DISPUTED PROPOSED JURY INSTRUCTIONS** |
| AND CONSOLIDATED ACTIONS | **Phase 1:** |
| | Pre-Trial Conference:   May 19, 2008<br>Trial Date:   May 27, 2008 |

1    Mattel, Inc. ("Mattel") hereby submits the following disputed jury

2  instructions for Phases 1A and 1B of the trial in this matter.  Mattel requests and

3  reserves the right to amend, modify, withdraw and/or supplement the following

4  instructions before or during the trial in this matter.  Mattel intends to submit

5  further proposed jury instructions depending upon and based upon rulings issued in

6  connection with the cross-motions for partial summary judgment, Carter Bryant's

7  motion for reconsideration, any motions *in limine* or other pre-trial or trial motions,

8  and the evidence and theories proffered by the parties during the course of the trial.

9  *See Fed. R. Civ. P.* 51A.

10

11 DATED:  May 12, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

12

13                              By  /s/ Jon D. Corey
                                    Jon D. Corey
14                                  Attorneys for Mattel, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1.2 | CLAIMS AND DEFENSES | 9th Cir. Civ. Jury Instr. 1.2 (2007) | 5 |
| MSJI No. — | EVIDENCE OF SPOLIATION | *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993); *Akonia v. United States*, 938 F.2d 158, 161 (9th Cir.1991), cert. denied, 503 U.S. 962 (1992); *Housing Rights Center v. Sterling*, 2005 WL 3320739, *8 (C.D. Cal. 2005); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 110 (2d Cir.2002); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 232-33 (6th Cir.2002) | 12 |
| MSJI No. — | ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION | *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) | 21 |
| CACI 300 | BREACH OF CONTRACT—INTRODUCTION | Judicial Council of California Civil Jury Instructions (2007) ("CACI"), No. 300 | 29 |
| CACI 303 | BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS | CACI No. 303 | 35 |
| MSJI No. — | BREACH OF CONTRACT—PREVIOUS FINDINGS OF THE COURT | | 38 |
| CACI 2201 | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS | CACI No. 2201 | 44 |
| MSJI No. — | INTENTIONAL INTERFERENCE | | 49 |

i

| Number | Title | Source | Page |
|--------|-------|--------|------|
| | WITH CONTRACTUAL RELATIONS— PREVIOUS FINDINGS OF THE COURT | | |
| MSJI No. __ | INTENT OR KNOWLEDGE | CACI 2203; *Silicon Image, Inc. v. Analogix Semiconductor Inc.*, 2007 WL 1455903, *4 (N.D. Cal. May 16, 2007); *Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966); *cf. Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999) | 52 |
| MSJI No. __ | WILLFUL BLINDNESS | *Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999). | 55 |
| MSJI No. __ | BREACH OF FIDUCIARY DUTY | CACI No. 4100; *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000) (overruled on other grounds); *Cf. Stevens v. Marco*, 147 Cal. App. 2d 357, 372 (1956); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1994) (same); *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002) | 58 |
| MSJI No. __ | BREACH OF FIDUCIARY DUTY— PREVIOUS FINDINGS OF THE COURT | | 66 |
| MSJI No. __ | BREACH OF THE DUTY OF LOYALTY | CACI No. 4102; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); Cal. Labor Code §§ 2856, 2860, 2863; *cf. Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1161 (9th Cir. 1987) | 71 |
| MSJI No. __ | BREACH OF THE DUTY OF LOYALTY— PREVIOUS | | 76 |

| Number | Title | Source | Page |
|---|---|---|---|
| | FINDINGS OF THE COURT | | |
| MSJI No. — | AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY | *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118, 1127 28 (C.D. Cal. 2003); *In re First Alliance Mortgage Co.*, 471 F.3d 977, 994 95 (9th Cir. 2006) | 81 |
| MSJI No. — | AIDING AND ABETTING BREACH OF DUTY— PREVIOUS FINDINGS OF THE COURT | | 88 |
| CACI 2100 | CONVERSION— ESSENTIAL FACTUAL ELEMENTS | CACI No. 2100 | 92 |
| MSJI No. — | ADVERSE INFERENCE FROM SPOLIATION | *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991); *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, * 6 (N.D. Cal. 2004); *Glover*, 6 F.3d at 1330; *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001); *Housing Rights Center v. Sterling*, 2005 WL 3320739, *3 (C.D. Cal. 2005); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 234 (6th Cir. 2002); *One Beacon Ins. Co. v. Broadcast Development Group, Inc.*, 2005 WL 2077499, *5 (6th Cir. 2005) | 95 |
| MSJI No. — | AFFIRMATIVE DEFENSE— STATUTE OF LIMITATIONS | CACI 4120 (modified); CACI 455 (modified); 17 U.S.C. § 507(b); Cal. Code Civ. Pro. § 339(1); Cal. Code Civ. Pro. § 338(c); *Rambus Inc. v. Samsung Electronics Co.*, 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 | 106 |

| Number | Title | Source | Page |
|---|---|---|---|
| | | (C.D. Cal. 2003) | |
| MSJI No. __ | FRAUDULENT CONCEALMENT | *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007); *Grisham v. Philip Morris U.S.A., Inc.*, Cal.4th, 54 Cal. Rptr. 3d 735, 744 (2007); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983). | 113 |
| MSJI No. __ | STATUTE OF LIMITATIONS— TOLLING AS A RESULT OF STAY OF PROCEEDINGS | *Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118, *1 (N.D. Cal. 2007); *Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) | 117 |
| MSJI No. __ | STATUTE OF LIMITATIONS— RELATION BACK | *Fed. R. Civ. P.* 15(c)(1)(B); *Martel v. Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir. 1989); Court's January 12, 2007 Order, at 14, 15 | 121 |
| 17.0 | PRELIMINARY INSTRUCTION— COPYRIGHT | 9th Cir. Civ. Jury Instr. 17.0 (2007) | 130 |
| 17.1 | COPYRIGHT— DEFINED (17 U.S.C. § 106) | 9th Cir. Civ. Jury Instr. 17.1 (2007) | 136 |
| 17.4 | COPYRIGHT INFRINGEMENT— OWNERSHIP AND COPYING (17 U.S.C. § 501A–(b)) | 9th Cir. Civ. Jury Instr. 17.4 (2007) | 140 |
| 17.15 | COPYING—ACCESS AND SUBSTANTIAL SIMILARITY | 9th Cir. Civ. Jury Instr. 17.15 (2007) | 144 |
| 17.10 | COPYRIGHT INTERESTS— ASSIGNEE (17 U.S.C. § 201(d)(1)) | 9th Cir. Civ. Jury Instr. 17.10 (2007) | 148 |
| MSJI No. | COPYRIGHT INFRINGEMENT— | *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, | 151 |

| Number | Title | Source | Page |
|--------|-------|--------|------|
| — | SUBSTANTIAL SIMILARITY | 1398 (9th Cir. 1997); *Shaw v. Lindheim,* 919 F.2d 1353, 1356 57 (9th Cir. 1990); *Jada Toys, Inc. v. Mattel, Inc.,* 1008 WL 450891, *6 (9th Cir. Feb. 21, 2008); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *Newton v. Diamond,* 204 F. Supp. 1244, 1253 (C.D. Cal. 2002); *Stillman v. Leo Burnett Co., Inc.,* 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989); *Coston v. Product Movers,* 1990 WL 56516 at *3 (E.D. Pa., 1990); *Webloyalty.com, Inc. v. Consumer Innovations, LLC,* 2005 WL 468496 at *2 (D. Del. 2005); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,* 932 F. Supp. 220, 225 (N.D. Ill 1996); *ADA v. Delta Dental Plans Ass'n,* 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) | |
| MSJI No. — | SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE" | *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000); *Shaw v. Lindheim,* 919 F.2d 1353, 1361 62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1172 (9th Cir. 1977); *Smith v. Jackson,* 84 F.3d 1213, 1220-21 (9th Cir. 1996) | 160 |
| MSJI No. — | COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS | *King Features Syndicate v. Fleischer,* 299 F. 533, 534, 538 (2d Cir. 1924); *Fleischer Studios v. Ralph A. Freundlich, Inc.,* 73 F.2d 276, 278 (2d Cir. 1934) | 164 |
| MSJI No. — | COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS | *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1518 19 (9th Cir. 1993); *Walker v. Univ. Books, Inc.,* 602 F.2d 859, 864 (9th Cir. 1979); *Walt Disney Prods. v. Filmation Assocs.,* 628 F. Supp. 871, 875 76 (C.D. Cal. 1986) | 168 |
| MSJI No. — | COPYRIGHT INFRINGEMENT—ORIGINALITY | 9th Cir. Civ. Jury Instr. 17.12 (2007); *CDN, Inc. v. Kapes,* 197 F.3d 1256, 1259 60 (9th Cir. 1999); *Sid & Marty* | 172 |

| Number | Title | Source | Page |
|---|---|---|---|
| | | *Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 n.5 (9th Cir. 1977) | |
| MSJI No. — | ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS | *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004); *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp. 1105, 1114 15 (E.D.N.Y. 1978); *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218, 219 20 (S.D.N.Y. 1974); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004) | 178 |
| MSJI No. — | PRESUMPTION OF COPYRIGHTABILITY | 17 U.S.C. § 410(c); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985); *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) | 185 |
| MSJI No. — | COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY | *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997) | 188 |
| 17.13 | COPYRIGHT INTERESTS—DERIVATIVE WORKS (17 U.S.C. §§ 101, 106(2)) | 9th Cir. Civ. Jury Instr. 17.13 (2007) | 191 |
| 17.21 | DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.21 (2007) | 194 |
| MSJI No. — | AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS | CACI 4120 (modified); CACI 455 (modified); 17 U.S.C. § 507(b); Cal. Code Civ. Pro. § 339(1); Cal. Code Civ. Pro. § 338(c); *Rambus Inc. v. Samsung Electronics Co.*, 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 | 198 |

| Number | Title | Source | Page |
|---|---|---|---|
| | | (C.D. Cal. 2003) | |
| MSJI No. — | FRAUDULENT CONCEALMENT | *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007); *Grisham v. Philip Morris U.S.A., Inc.*, Cal.4th, 54 Cal. Rptr. 3d 735, 744 (2007); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983). | 205 |
| MSJI No. — | STATUTE OF LIMITATIONS— TOLLING AS A RESULT OF STAY OF PROCEEDINGS | *Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118, *1 (N.D. Cal. 2007); *Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) | 209 |
| MSJI No. — | STATUTE OF LIMITATIONS— COPYRIGHT INFRINGEMENT | *Roley v. New World Pictures, Ltd.*, 19. F.3d 479 (9th Cir. 1994) | 213 |
| MSJI No. — | STATUTE OF LIMITATIONS— RELATION BACK | *Fed. R. Civ. P.* 15(c)(1)(B); *Martel v. Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir. 1989); Court's January 12, 2007 Order, at 13 | 216 |
| MSJI No. — | COPYRIGHT— AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER | 17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001) | 226 |
| 17.22 | COPYRIGHT— DAMAGES (17 U.S.C. § 504) | 9th Cir. Civ. Jury Instr. 17.22 (2007) | 231 |
| 17.24 | COPYRIGHT— DAMAGES— DEFENDANTS' PROFITS (17 U.S.C. § 504(b)) | 9th Cir. Civ. Jury Instr. 17.24 (2007) (modified) | 234 |
| MSJI No. — | COPYRIGHT— DAMAGES— APPORTIONMENT OF PROFITS | 9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) | 237 |

vii

| Number | Title | Source | Page |
|---|---|---|---|
| MSJI No. — | COPYRIGHT—DAMAGES—INDIRECT PROFITS | 9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 710 11, 714 n.10 (9th Cir. 2004) | 241 |
| MSJI No. — | COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 487 (9th Cir. 2000); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.,* 752 F.2d 1326, 1331-32 (9th Cir. 1982); *Sheldon v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 45, 53 (2d Cir. 1939); *Saxon v. Blann,* 968 F.2d 676, 681 (8th Cir. 1992); *Jarvis v. A & M Records,* 827 F. Supp. 282, 294 (1993); *Liu v. Price Waterhouse LLP,* 2000 WL 1644585, *6 (N.D. Ill. 2000) | 244 |
| CACI 350 | INTRODUCTION TO CONTRACT DAMAGES | CACI No. 350 | 249 |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS | CACI No. 3901 | 252 |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR BREACH OF FIDUCIARY DUTY AND THE DUTY OF LOYALTY | CACI No. 3901; *Xum Speegle, Inc. v. Fields,* 216 Cal. App. 2d 546 (1963); Restatement (2d) of Agency, § 403; *Eckard Brandes, Inc. v. Riley,* 338 F.3d 1082, 1086 (9th Cir. 2003) | 255 |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY | CACI No. 3901 | 261 |

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

| Number | Title | Source | Page |
|---|---|---|---|
| CACI 2102 | PRESUMED MEASURE OF DAMAGES FOR CONVERSION | CACI No. 2102 (modified); *Betzer v. Olney,* 14 Cal. App. 2d 53, 61 (1937) | 266 |
| CACI 3947 | PUNITIVE DAMAGES— INDIVIDUAL AND ENTITY DEFENDANTS | CACI No. 3947 | 270 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' GENERAL OBJECTIONS TO MATTEL'S PROPOSED JURY INSTRUCTIONS

The MGA Parties and Bryant respectfully submit their objections to Mattel's Proposed Jury Instructions as set forth below. The MGA Parties and Bryant also object to Mattel's Proposed Jury Instructions in general for omitting any of the jury instructions proposed by the MGA Parties and Bryant, including, without limitation, instructions concerning contract interpretation, contracts of adhesion, and rights of employees to prepare to compete and/or seek new employment.  In addition, the MGA Parties and Bryant object to any of the foregoing instructions that fail to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.  The MGA Parties and Bryant also object to the instructions below to the extent that they fail to include language necessary to assist the jury's understanding of this case and submit that their Proposed Instructions on the matters covered below are the appropriate instructions to provide the jury.

The MGA Parties and Bryant also object to Mattel's submission of certain instructions based on the Court's Order dated April 25, 2008.  The Court has not yet ruled on Bryant's Motion For Reconsideration Or Certification filed May 2, 2008, but the Court has made clear in ordering that the motion be heard on May 19, 2008 that it intends to carefully reconsider its earlier ruling in light of the authority submitted in Bryant's motion so it is premature to craft instructions based on that order.  Further, MGA Parties and Bryant object that, even in the event the Court denies Bryant's pending motion, Mattel's instructions purportedly based on that ruling incorrectly interpret the issues remaining to be tried, the ruling itself,

1   and are unduly prejudicial.[1]  The MGA parties and Bryant reserve the right to

2   supplement or revise their Proposed Jury Instructions and Proposed Special

3   Verdict Form, their Objections to Mattel's Proposed Jury Instructions and

4   Proposed Verdict Form, and their Responses to Mattel's Objections, in response to

5   the Court's ruling on the parties' pending summary judgment motions, Bryant's

6   pending Motion For Reconsideration, and any other rulings of the Court.

7       The MGA Parties and Bryant further object to Mattel's instructions

8   concerning copyright infringement, as Mattel's instructions give no real guidance

9   to the jury, fail to provide the jury with any real understanding of how an

10  infringement analysis is to be performed, and do not address a number of essential

11  issues (in addition to those referred to below), including appropriate explanations

12  of the following: unprotectible elements (see MGA Parties' Proposed Jury

13  Instructions at No. 3C), authorship (id. at No. 4C), originality and registration (id.

14  at No. 5C), factual copying (id. at Nos. 6C & 7C), the standard of "virtual identity"

15  for works only entitled to "thin" protection (id. 9C at 16), independent creation (id.

16  Nos. 7C & 11C), and multiple copyright registrations (id. No. 12C).   Additionally,

17  Mattel's instructions do not provide any demonstrative examples to guide the

18  jury's thought process concerning complicated issues involving intellectual

19  property. Indeed, Mattel's jury instructions concerning copyright issues provide yet

20  another example of Mattel's consistent attempts to oversimplify copyright analysis

21  required here. The MGA Parties and Bryant believe that their proposed instructions

22  more accurately instruct the jury on these and the other copyright issues in the

23  case, and that the MGA Parties' proposed instructions should be used by the Court

24  to instruct the jury.

25

26  _____

27  [1]   MGA Parties and Bryant preserve all their rights with respect to the April 25, 2008 Order, including their rights to appeal.

28

# MATTEL'S GENERAL STATEMENT IN SUPPORT OF ITS PROPOSED JURY INSTRUCTIONS

The MGA Parties and Bryant have raised a variety of objections to Mattel's Proposed Jury Instructions.  They are not well taken.  The thrust of defendants' objections is that the Court is somehow required to provide the jury with an absurdly large number of defense-slanted instructions such as those defendants have proposed – but this is obviously not required or appropriate.

Instead, for the reasons stated in Mattel's objections to defendants' proposed jury instructions, the Court should provide Mattel's proposed jury instructions to the jury.  Mattel's proposed instructions accurately set forth the applicable law, whereas defendants do not.  Mattel's proposed instructions are fair to all parties; defendants' instructions are hopelessly slanted toward the defense.  Mattel's proposed instructions preserve the jury's role as fact-finder; defendants' proposed instructions consistently prompt the jury to accept, or ask the jury to assume, defendants' version of the facts.  Mattel's instructions are clear, easily understood and an appropriate length; defendants' proposed instructions, which are absurdly long and convoluted, are calculated to suggest to the jury that they must spend weeks in deliberations if they are to find for Mattel.

Many of defendants' objections to Mattel's proposed instructions are contrary to the Court's April 25, 2008 Order regarding the parties' cross-motions for partial summary judgment and should be overruled on that basis alone. Defendants continue to raise the very arguments rejected by the Court in that Order.  Defendants also misread the Court's April 25, 2008 Order.  Mattel's proposed instructions conform to the Court's rulings in that Order, which is easily confirmed by review of the Order.

Finally, any objection by defendants that Mattel's proposed jury instructions "do[] not account for [] Bryant's pending motion for reconsideration" is not well

1   taken.  Defendants do not even attempt to articulate how the proposed jury

2   instruction should "account for" Bryant's motion for reconsideration.  There is

3   obviously no reason to inform the jury of a motion for reconsideration.  If the

4   Court modifies its April 25, 2008 Order, Mattel will modify its proposed jury

5   instructions.  But the instructions are proper as is based on the Court's rulings to

6   date.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PHASE 1A JURY INSTRUCTIONS

### Instructions to Be Read When Trial Begins

### 1.2

### CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Mattel is the plaintiff in this case. Mattel claims that it is the rightful owner of the ideas, designs and works related to the Bratz dolls created by the defendant, Carter Bryant, while he was employed by Mattel, including drawings of Bratz. Mattel claims that Mr. Bryant breached his contractual obligations and other legal duties to Mattel when he concealed from Mattel the conception, design and development of Bratz and purported to assign them to the defendant MGA Entertainment, Inc. ("MGA"). Mattel also claims that Mr. Bryant converted Mattel's property, including tangible items, and infringed Mattel's copyrights in Bratz works. Mattel has the burden of proving these claims.

Mr. Bryant denies these claims. Prior to trial, the Court ruled as a matter of law that Mr. Bryant breached his fiduciary duty and duty of loyalty to Mattel when he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. However, the full scope of Mr. Bryant's breaches of duty is for you to decide. Prior to trial, the Court also ruled that Mr. Bryant assigned to Mattel any Bratz-related inventions, including any designs, improvements, ideas, concepts, and copyrightable subject matter, that he created during the period of his employment with Mattel. It is for you to decide which Bratz-related works, if any, Mr. Bryant created during that time.

1    Mattel claims that the defendants MGA and MGA's CEO Isaac Larian

2 intentionally interfered with Bryant's contracts with Mattel and aided and abetted

3 Mr. Bryant's breaches of fiduciary duty and the duty of loyalty to Mattel.  Mattel

4 also claims that MGA, Mr. Larian and MGA Entertainment (HK) Limited ("MGA

5 Hong Kong") converted Mattel's property, including tangible items, and infringed

6 Mattel's copyrights in the Bratz works.  Mattel has the burden of proving these

7 claims.

8    MGA, Mr. Larian and MGA HK deny these claims.

9

10    **Authority:**  9th Cir. Civ. Jury Instr. 1.2 (2007).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

**DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED**

**INSTRUCTION RE CLAIMS AND DEFENSES**

The preceding instruction is objectionable to the extent Mattel asserts a claim for conversion in Phase One against MGA. According to Mattel's Motion for Summary Judgment ("Mattel MSJ"), there is no conversion claim asserted against MGA in Phase One. (See Mattel MSJ at 50:18-20.)

The instruction is also objectionable because it purports to be a summary of Phase 1(a) claims, but it refers to claims of copyright infringement against Bryant and the MGA Parties that will be tried in Phase 1(b). (See Phasing Order.)  The preceding instruction is also objectionable to the extent that it does not advise the jury of the affirmative defenses asserted by the defendants or their bases for denial of Mattel's claims and so is one-sided and prejudicial.  For example, the instruction fails to explain that Bryant claims that he conceived of BRATZ prior to his employment with Mattel; fails to explain that the term "inventions" does not encompass artwork, non-technological matter, or copyrightable material; fails to explain that he did not owe any fiduciary duty to Mattel; and fails to state any of the remaining bases for Bryant's denial of Mattel's claims.  Similarly, the instruction fails to address the MGA Parties' contentions that they had no actual knowledge that Bryant owed or breached any duties purportedly owed to Mattel, given his contrary written representations, that the MGA Parties' conduct in interviewing and hiring Bryant (an at-will employee) did not constitute substantial assistance in the alleged breaches of duties by Brant, or any other bases for the MGA Parties' denial of Mattel's claims.

In addition, the preceding instruction is premature in that it does not account for Carter Bryant's pending motion for reconsideration of the Court's summary judgment findings concerning the Inventions Agreement or the duties owed by Bryant and the alleged breach thereof. Further, even if the Court fails to grant

-7-

1    Bryant's pending motion, this instruction mischaracterizes the effect of the Court's

2    Order and fails to accurately inform the jury the remaining issues it must decide on

3    each of Mattel's claims.  For example, it fails to state that Mattel still must prove

4    that the invention at issue must be conceived or reduced to practice during Bryant's

5    employment with Mattel—not simply "which Bratz works were created, if any

6    during that time."  Similarly, it fails to inform the jury that Mattel must still prove

7    harm, must demonstrate that the assignment provision satisfies both California

8    Civil Code Section 988 and Section 204(a) of the Copyright Act, and the jury must

9    consider whether the invention is protected by Labor Code Section 2870 and

10   whether MGA was a good faith purchaser of the copyrights in BRATZ.  It also

11   fails to inform the jury that Bryant asserts affirmative defenses to the breach of

12   section 2(a) claim, and what those defenses are.

13          Similarly, this instruction summarizes the Court's April 25, 2008 MSJ Order

14   with respect to the duty claims in a highly prejudicial and erroneous manner.  It

15   fails to state that Mattel still must prove additional elements, such as Mattel's lack

16   of consent to Bryant's conduct and harm during the term of Bryant's employment.

17   It also fails to inform the jury of any affirmative defenses whatsoever that Bryant

18   asserts to these claim.

19          The MGA Parties and Bryant note that any mention in this introductory

20   summary of the court's findings is highly prejudicial and unnecessary.  This

21   summary should be a general summary of the claims and defenses.  In the event

22   the Court denies Bryant's pending Motion for Reconsideration, and instructs the

23   jury in accord with its April 25, 2008 MSJ Order, MGA Parties and Bryant submit

24   that the appropriate way to do so is in the instructions pertaining to each claim—so

25   as not to risk juror confusion with regard to which elements are affected by the

26   Court's April 25, 2008 MSJ Order or to prejudice to the MGA Parties and Bryant

27   by repeated references to the Court's having made particular rulings in favor of

28   Mattel.  MGA Parties and Bryant further submit that it is unnecessary and highly

prejudicial to refer to pretrial rulings of the Court at all, rather than simply instructing the jury that Mattel has established certain elements of a particular claim or omitting any reference to that particular element.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Mattel's proposed instruction conforms to the model instruction found in

4    CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.

5    MGA Entertainment, Inc., MGA Entertainment (HK) Limited, Isaac Larian and

6    Carter Bryant's (collectively, "defendants'") objections to the proposed instruction

7    should be overruled.

8        The claims described in Mattel's proposed instruction are accurate.  As set

9    forth in the operative pleading, Mattel is asserting a claim for conversion against

10   MGA.  *See* Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and

11   Counterclaims ("Mattel's Counterclaims"), at 72 (conversion claim "Against All

12   Counter-defendants").

13       Mattel's passing reference to its claims of copyright infringement is

14   appropriate for purposes of a preliminary instruction regarding the nature of the

15   case and will provide context for the jury for Phase 1.  Mattel is not suggesting that

16   the jury be instructed on the law of copyright infringement or asked to make

17   findings on Mattel's copyright infringement claims in Phase 1A.

18       Although defendants object that the proposed instruction does not

19   sufficiently advise the jury of defendants' defenses and positions, they fail to offer

20   any proposed insert or counter-instruction.  To the extent defendants wish to

21   expand the instruction as to their positions, they should do so.  Mattel requests that

22   its proposed instruction be adopted, and the parties can further confer regarding the

23   exact language.  Mattel believes, however, that it would be confusing and

24   unnecessary to inform the jury of defendants' affirmative defenses in light of the

25   Court's ruling that almost all of these defenses are equitable in nature and that the

26   Court will rule on them *after* trial.  *See* April 25, 2008 Order, at 7-8.

27       Many of defendants' objections to the proposed instruction are contrary to

28   the Court's April 25, 2008 Order.  For example, defendants object that the

1  instruction should explain that "the term 'inventions' does not encompass . . .

2  copyrightable material" and that "[Bryant] did not owe any fiduciary duty to

3  Mattel."  These very arguments were rejected by the Court in its Order on the

4  parties' cross-motions for partial summary judgment.  The Court ruled that the

5  Inventions Agreement applies to "any Bratz-related 'inventions' (including any

6  designs, improvements, ideas, concepts, and copyrightable subject matter) that he

7  is found to have created during the period of his employment with Mattel."  April

8  25, 2008 Order, at 5.  The Court also found as a matter of law that Bryant "owed a

9  fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the

10  Inventions Agreement."  *Id.*

11      Finally, defendants' objection that the proposed jury instruction "does not

12  account for [] Bryant's pending motion for reconsideration" is not well taken.

13  Defendants do not even attempt to articulate how the proposed jury instruction

14  should "account for" Bryant's motion for reconsideration.  There is obviously no

15  reason to inform the jury of a motion for reconsideration.  If the Court modifies its

16  April 25, 2008 Order, Mattel will modify its proposed jury instructions.  But the

17  instruction is proper as is based on the Court's rulings to date.

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## EVIDENCE OF SPOLIATION

During the trial, the plaintiff, Mattel, intends to introduce evidence that the defendants, including Carter Bryant, MGA, MGA's CEO Isaac Larian and/or MGA Hong Kong, did not preserve evidence relevant to this case.  In certain circumstances, you may assume that such evidence is or would have been favorable to Mattel and adverse to the defendants.  At the end of the trial, I will instruct you on the law in this regard.

**Authority:**  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993); *Akonia v. United States*, 938 F.2d 158, 161 (9th Cir.1991), cert. denied, 503 U.S. 962 (1992); *Housing Rights Center v. Sterling*, 2005 WL 3320739, *8 (C.D. Cal. 2005); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 110 (2d Cir.2002); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 232-33 (6th Cir.2002).  This instruction will appropriately explain to the jury, at the start of trial, why evidence will be presented regarding the defendants' spoliation of evidence.  Without any foundational instruction, the jury may be confused by the presentation of spoliation evidence.  This instruction lays an appropriate foundation for the presentation of such evidence.

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED
## INSTRUCTION RE EVIDENCE OF SPOLIATION

To the extent this instruction has any evidentiary basis, if at all, it should not be limited to the alleged spoliation by the defendants only. The instruction should be party-neutral, including any adverse inferences to be drawn from any such spoliation evidence introduced at trial – i.e., it should advise the jury that if any party introduces such spoliation evidence, the jury may assume that the evidence is or would have been favorable to the opposing party and adverse to the alleged spoliator. Furthermore, the Court recently denied Mattel's ex parte motion seeking to be heard on admitting evidence in support of its spoliation allegations and postponed the issue pending the Court's resolution of Bryant's Motion *in limine* No. 13.  See May 6, 2008 Minute Order.

Moreover, the giving of an "adverse inference" instruction – and the presentation of related spoliation evidence and argument – to the jury at trial is an "extreme" sanction that may be imposed by the Court only under certain limited circumstances.  Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (adverse inference instruction is an "extreme" sanction that should "not be given lightly"); Thompson v. U.S. Dep't of Hous. & Urban Dev., 219 F.R.D. 93, 101 (D. Md. 2003) (describing sanction as "extreme"). Indeed, because the prejudicial impact of such an instruction is so pronounced, numerous courts have cautioned against the use of such instructions in all but the most egregious cases. For example, in Morris v. Union Pacific R.R., 373 F.3d 896, 903 (8th Cir. 2004), the Eight Circuit explained:

> An adverse inference instruction is a powerful tool in a jury trial. When giving such an instruction, a federal judge brands one party as a bad actor, guilty of destroying evidence that it should have retained for use by the jury.  It necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in

1    the unknown contents of a [missing document]. … One
2    distinguished court years ago cautioned against use of an
     adverse inference instruction like the one given in this
3    case (there, involving an absent witness rather than
     missing evidence), because "[t]he jury should not be
4    encouraged to base its verdict on what it speculates the
     absent witness would have testified to, in the absence of
5    some direct evidence."

6    373 F.3d at 900-901 (citing Felice v. Long Island R.R. Co., 426 F.2d 192, 195 n.2

7    (2nd Cir. 1970) (Friendly, J.) (reversing jury verdict and remanding case for new

8    trial because adverse inference instruction "should not have been given" and

9    defendant Union Pacific was prejudiced by plaintiff counsel's argument of

10   spoliation to the jury)).  Similarly, in Zubulake the district court noted that "[i]n

11   practice, an adverse inference instruction often ends litigation—it is too difficult a

12   hurdle for the spoliator to overcome.  The in terrorem effect of an adverse

13   inference is obvious." 220 F.R.D. at 219.

14        Because of the serious danger of prejudice posed by adverse inference

15   instructions, a party claiming spoliation must first demonstrate to the Court: "(1)

16   the party with control over the evidence had an obligation to preserve it at the time

17   it was destroyed; (2) the party that destroyed the evidence had a sufficiently

18   culpable state of mind; and (3) some evidence suggests that a document or

19   documents relevant to substantiating the claim of the party seeking sanctions

20   would have been included among the destroyed files."  Housing Rights Ctr. v.

21   Sterling, 2005 WL 3320739, at * 7 (C.D. Cal. Mar. 2, 2005) (quoting Residential

22   Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 105 (2d Cir. 2002)); see also

23   World Courier v. Barone, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007)

24   (noting that federal courts "in California have adopted the Second Circuit's 3-part

25   test" and holding same); AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc., 2006

26   WL 2308442, at *5 n.6. (E.D. Cal. Aug. 9, 2006) (same).

27        Additionally, even if spoliation is demonstrated to the Court, "a sanction for

28   destruction of evidence is appropriate only if the destruction prejudiced the

1  opposing party." A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 193-94

2  (C.D. Cal. 2006); see also Ingham v. U.S., 167 F.3d 1240, 1246 (9th Cir. 1999);

3  Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993) ("Before a

4  sanction for destruction of the evidence is appropriate, however, there must also be

5  a finding that the destruction prejudiced the opposing party.").  And even then the

6  Court must determine what type of sanction is appropriate, based upon:  "(1) the

7  degree of fault of the party who altered or destroyed the evidence; (2) the degree of

8  prejudice suffered by the opposing party; and (3) whether there is a lesser sanction

9  that will avoid substantial unfairness to the opposing party and, where the

10  offending party is seriously at fault, will serve to deter such conduct by others in

11  the future." Hamilton v. Signature Flight Support Corp., 2005 WL 3481423, at *3

12  (N.D. Cal. Dec. 20, 2005) (quoting Schmid v. Milwaukee Elec. Tool Corp., 13

13  F.3d 76, 79 (3d Cir. 1994)); see also Consolidated Aluminum Corp. v. Alcoa, Inc.,

14  244 F.R.D. 335, 340 (M.D. La. 2006) (adverse inference instruction is "considered

15  drastic" and "courts generally try to avoid imposing them when lesser sanctions are

16  available").

17         Until and unless a party satisfies its burden of demonstrating spoliation to

18  the Court, and the Court concludes that some sanction is warranted, the Court

19  should not give an adverse inference instruction based on alleged spoliation to the

20  jury.  See, e.g., Morris, 373 F.3d at 903 (holding that counsel's arguments of

21  spoliation to jury were prejudicial and required a new trial where required

22  predicates for imposition of spoliation sanction were not satisfied); Parkinson v.

23  Guidant Corp., 315 F. Supp. 2d 760, 764 (W.D. Pa. 2004) (granting defendant's

24  motion in limine to exclude spoliation evidence because plaintiff had not

25  sufficiently demonstrated to the court that spoliation had occurred); accord Green

26  v. Baca, 226 F.R.D. 624, 642-43 (C.D. Cal. 2005) (excluding evidence of alleged

27  spoliation under Federal Rule of Evidence 403 because "[t]he court present has no

28

1   evidence before it that … defendant destroyed documents that were responsive to

2   plaintiff's document requests").

3        "[W]hether the destruction of evidence warrants sanctions is based on

4   factual findings made by the court" following an evidentiary hearing or similar

5   proceeding.  Regent Ins. Co. v. Candle Corp. of Am., 2004 WL 2713251, at *2 n.4

6   (D. Minn. Nov. 24, 2004) (collecting cases); see also Hamilton, 2005 WL

7   3481423, at *3 ("Courts determinate the proper sanction for destruction of relevant

8   evidence on a case-by-case basis.") (citing Unigard Sec. Ins. Co. v. Lakewood

9   Eng. & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992)). It is not a decision that is

10  made by courts on the fly, without a full evidentiary record and careful

11  consideration.  Indeed, there are no cases, within or outside the Ninth Circuit,

12  where the court elected to give an adverse inference instruction without a threshold

13  evidentiary finding by the Court that the party's spoliation allegations had merit

14  and was an appropriate issue for the jury to consider.  Cf. Regent Ins., 2004 WL

15  2713251, at *2 n.4 (whether to impose sanctions for spoliation usually determined

16  through a pre-trial evidentiary hearing); see also Morris, 373 F.3d at 901, 903

17  (noting that district court conducted four days of "sanctions hearings" concerning

18  the defendant's alleged destruction of documents); Stevenson v. Union Pacific

19  R.R. Co., 354 F.3d 739, 743 (8th Cir. 2004) (noting that the district court granted

20  plaintiff's motion for sanctions after a three-day evidentiary hearing).

21       Here, Mattel has made no effort, much less a successful effort, to justify any

22  evidentiary sanction against Bryant or the MGA Parties based upon alleged

23  spoliation, much less the extreme sanction of an adverse inference instruction.

24  Indeed, until it proffered this instruction, Mattel had never even sought to have

25  such evidentiary sanctions awarded even though (as the Court noted during the

26  hearing on May 7, 2008 denying Mattel's *ex parte* application) Mattel has plainly

27  known of such alleged spoliation for years.  Having failed to so, Mattel is not now

28  entitled to such an instruction.  Mattel's proposed special jury instruction on

1  "evidence of spoliation" is improper, without appropriate factual or legal support,

2  and if given, would be highly prejudicial.  The Court should reject this proposed

3  special instruction.  <u>See, e.g.</u>, <u>Morris</u>, 373 F.3d at 903 (reversing jury verdict and

4  remanding for new trial because trial court's adverse inference instruction was not

5  warranted); <u>Parkinson</u>, 315 F. Supp. 2d at 764 (denying request for adverse

6  inference because plaintiff had not sufficiently demonstrated to the court that

7  spoliation had occurred); <u>Green</u>, 226 F.R.D. at 642-43; <u>Zubulake</u>, 220 F.R.D. at

8  221.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction is an appropriate introductory instruction to the jury regarding spoliation. It simply informs the jury that evidence of spoliation will be presented and that the Court will instruct the jury as to the law on spoliation at the close of the evidence. Mattel intends to introduce evidence at trial of defendants' spoliation of relevant evidence. Defendants' objection that any instruction regarding spoliation should be "party-neutral" is unwarranted unless defendants have a basis to introduce evidence of spoliation. They fail to articulate one in their lengthy objection, and do not have one—defendants' only spoliation contentions were long ago rejected by the Court.

Defendants' lengthy objections to the merits of Mattel's spoliation instruction are premature. These issues will be fully addressed in briefing on Bryant's *Motion in Limine* No. 13 to exclude evidence of spoliation.

The Court's May 6, 2008 Minute Order on Mattel's *ex parte* motion does not impact Mattel's ability to present evidence of spoliation to the jury. It is beyond question that spoliation evidence may properly be introduced to a jury. That Bryant may wish to present his own countervailing arguments on this point only highlights that the evidence is relevant and that the jury should be permitted to make its own inferences about spoliation issues. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1332 (9th Cir. 1993) ("The district court properly submitted all the evidence to the jury concerning the alleged spoliation of evidence."); *see also One Beacon Ins. Co. v. Broadcast Development Group, Inc.*, 2005 WL 2077499, at *5 (6th Cir. 2005) ("When a genuine question exists as to whether a party's loss or destruction of evidence was negligent (or worse), it is appropriate to defer that question to the jury.").

Evidence of spoliation of relevant evidence tends to prove both intent and willfulness, which are elements of a number of Mattel's claims. *See, e.g.*, *In re*

1   *Parmalat Sec. Litig.*, 472 F. Supp. 2d 582, 584 -85 (S.D.N.Y. 2007) ("The
2   destruction of evidence by the Parmalat insiders is evidence of consciousness of
3   guilt, which is relevant to . . . liability. . . ."); *Livingston v. Isuzu Motors, Ltd.*,  910
4   F. Supp. 1473, 1494 (D. Mont. 1995) (holding evidence of destruction of test data
5   was "properly admitted" at trial because the destruction was relevant and
6   "defendants knew or should have known of the importance of preserving the
7   [evidence]"); *U.S. v. Van Metre*, 150 F. 3d 339, 352 (4th Cir. 1998) ("spoliation
8   evidence is generally admissible to show the defendant's consciousness of guilt. . .
9   .").

10      It is well established that "[a] federal trial court has the inherent
11   discretionary power to make appropriate evidentiary rulings in response to the
12   destruction or spoliation of relevant evidence." *Glover*, 6 F. 3d at 1329.  Such
13   power allows a trial court to exclude evidence of tampered-with evidence, admit
14   the introduction of the circumstances of the destruction of evidence, or permit the
15   jury to draw an adverse inference from the destruction of evidence. *Id.*  No hearing
16   or prior sanctions finding is needed for the Court to issue such a permissive
17   inference instruction. *See Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228,
18   234 (6th Cir. 2002) (adverse inference jury instruction should be given where
19   "[s]ufficient evidence exists to permit a jury to determine the factual predicate"
20   underlying a claim of spoliation); *One Beacon Ins. Co.*, 2005 WL 2077499 at *5-
21   *6 (affirming, without evidentiary hearing, permissive spoliation jury instruction
22   that "simply ensured that *if* the jury believed that the fault for destroying the
23   evidence lay at the door [of One Beacon], it was permitted, if it chose, to infer that
24   the missing [evidence supported defendant's case]").

25      Mattel's proposed instruction is appropriate in that it merely informs the jury
26   that it *may* draw an adverse inference based on spoliation. *See Pace v. Nat'l*
27   *Railroad Passenger Corp.*, 291 F. Supp. 2d 93, 99 (D. Conn. 2003) (denying
28   motion for new trial where "instruction given by this court . . . merely allowed the

1  jury to draw an adverse inference."); *One Beacon Ins. Co.*, 2005 WL 2077499, at

2  *5 (where genuine question exists to whether destruction of evidence was

3  negligent or worse, "it is appropriate to defer that question to the jury, by

4  instructing jurors that *if they find* that the spoliation of evidence was at least

5  negligent, *they may infer* that the missing evidence would favor the non-spoliating

6  party") (emphasis added); *Nejo v. Tamaroff Buick Honda Isuzu Nissan*, 2004 WL

7  346036, at *8 (6th Cir. Feb. 23, 2004) (instruction that "jury 'may' infer that the

8  missing evidence would have been adverse to the plaintiff 'if' it believes that

9  plaintiff has provided 'no reasonable excuse' for the absence" properly

10  "recognize[s] the existence of a fact issue, and did not foreclose the jury from

11  considering [defendant's] excuse").

12       Mattel will obviously modify its proposed instructions regarding spoliation if

13  necessary to conform to any rulings by the Court on these issues.  But Mattel's

14  proposed introductory instruction regarding spoliation is appropriate and

15  necessary.

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Instructions on the Trial Process</u>**

**<u>(Court Reads and Provides Written Instructions at End of Case)</u>**

**<u>MATTEL'S SPECIAL JURY INSTRUCTION NO.    </u>**

**<u>ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE</u>**

**<u>AGAINST SELF-INCRIMINATION</u>**

You have heard certain witnesses decline to answer questions on the grounds of their Fifth Amendment privilege against self-incrimination.

The Fifth Amendment of the United States Constitution affords every person the right to decline to answer any questions if he or she believes that the answers may tend to incriminate them.  However, in civil cases, you are permitted, but not required, to draw the inference that the information withheld by these witnesses would have been unfavorable to them and/or favorable to Mattel.

Any inference you may draw should be based upon all the facts and circumstances in this case as you may find them.

**Authority:**  *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998)  ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976));  *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify.").

**DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION**

To the extent this instruction has any evidentiary basis, if at all, it should not be limited to an adverse inference in Mattel's favor.  The instruction should be party-neutral, including any adverse inferences to be drawn from any such evidence introduced at trial – i.e., it should advise the jury that if any party asserts this privilege, the jury may assume that the evidence is or would have been favorable to the opposing party and adverse to the party refusing to answer.

More importantly, Mattel's proposed instruction ignores a fundamental limitation on drawing adverse inferences in civil cases: the inference is only permissible where independent corroborating evidence supports it.

> The [Baxter v. Palmigiano, 425 U.S. 308 (1976)] holding is not a blanket rule that allows adverse inferences to be drawn from invocations of the privilege against self-incrimination under all circumstances in the civil context. Rather, lower courts interpreting Baxter have been uniform in suggesting that the key to the Baxter holding is that such adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.  Thus, an adverse inference can be drawn when silence is countered by independent evidence of the fact being questioned, but that same inference cannot be drawn when, for example, silence is the answer to an allegation contained in a complaint.  In such instances, when there is no corroborating evidence to support the fact under inquiry, the proponent of the

-22-

1  fact must come forward with evidence to support the

2  allegation, otherwise no negative inference will be

3  permitted.

4  Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1264 (9th Cir. 2000) (internal

5  citations omitted).

6  　　　To date, no party witness has invoked the Fifth Amendment, it has been

7  invoked only by a non-party witness.  However, as applied to non-party witnesses,

8  Mattel's instruction is even more problematic.  The silence of a non-party witness

9  does not automatically support an inference for or against a party, but rather only

10  supports an inference that the answer would be adverse to the witness him or

11  herself.  See Aptix Corp. v. Quickturn Design Sys., Inc., 269 F.3d 1369, 1374

12  (Fed. Cir. 2001) ("Moreover, after Dr. Mohsen invoked his Fifth Amendment

13  privilege and refused to testify about the forgery, disappearance, and reappearance

14  of the notebooks, the trial court was free to make adverse inferences against him."

15  (emphasis added)).  While the Ninth Circuit has not addressed the issue at length,

16  other Circuits require an analysis of the relationship between the witness and the

17  party against whom an inference is sought before an inference is permitted.  See,

18  e.g., Banks v. Yokemick, 144 F. Supp. 2d 272, 289 (S.D.N.Y. 2001) (collecting

19  cases, noting that "[t]he courts in these cases have declined to enunciate a blanket

20  rule governing the drawing of adverse inferences from a non-party witness'

21  invocation of the privilege against self-incrimination, preferring instead a case-by-

22  case approach," but that the Second Circuit suggested "several non-exclusive

23  factors: (1) the nature of the relevant relationships, identified by the court as

24  invariably ... the most significant circumstance; (2) the degree of control of the

25  party over the non-party witness; (3) the compatibility of the interests of the party

26  and non-party witness in the outcome of the limitation; and (4) the role of the non-

27  party witness in the litigation.") (internal quotations and citations omitted).  None

28  of these conditions are described in Mattel's instruction – instead, they are simply

-23-

1  ignored.  Indeed, Mattel's Ninth Circuit cases do not even address the issue, as

2  they involved parties' refusal to testify.  See S.E.C. v. Colello, 139 F.3d 674, 677

3  (9th Cir. 1998) (individual asserting privilege was a nominal defendant from whom

4  disgorgement of funds was sought); United States v. Solano-Godines, 120 F.3d

5  957, 962 (9th Cir. 1997) (individual asserting privilege was a defendant in a

6  deportation proceeding).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction is an appropriate instruction regarding the assertion of the privilege against self-incrimination in the civil context.  It simply informs the jury that it *may* draw an inference that the information withheld would have been unfavorable to them and/or favorable to Mattel.  Such an instruction comports with the law.  *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976));  *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify.").

There is no basis for defendants' request that the proposed instruction be party-neutral – the only individuals who asserted the Fifth Amendment privilege against self-incrimination in this case are individuals who were paid millions by MGA for work on Bratz and the independent contractors who were sample-makers making Bratz fashions while employed by Mattel.

Defendants ask the Court not to give Mattel's proposed instruction because an instruction regarding the adverse inference is permissible only when the instruction is supported by "independent corroborating evidence," relying on *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).  *Glanzer* has no application here.  In *Glanzer*, the claimant asked for an adverse inference—based on a single question about whether the defendant took a particular test—that the defendant took the test, took and failed other tests, and  assaulted a child.  The court concluded that one question, absent corroborating evidence, does not support that tenuous inference.

In contrast to *Glazner*, Mattel has reams of evidence corroborating the conduct of those who have invoked the Fifth Amendment in this case.  For example, Mattel has specific evidence that Ms. Cabrera and Ms. Morales (two witnesses who have invoked their Fifth Amendment rights) used false names and social security numbers for their work on Bratz, and that they did so to hide from Mattel their work on Bratz while Mattel employees.  After Veronica Marlow disclosed on December 28, 2007 that Cabrera and Morales were working on Bratz, Mattel interviewed each of these employees.  The interviews were taped, and the tape later used to make a transcript.  At the interview of Cabrera, she stated that she had learned she was working on Bratz in 2003.  When she learned that, she at first told Marlow she did not want to work for her anymore, and then she decided to continue to work on Bratz but asked to be paid in cash, and in the name and social security number of her sister-in-law so she would not lose her job.[2] Similarly, when Morales was interviewed, she acknowledged using the name and social security number of her husband, and acknowledged that she began doing so soon after she discovered she was working on Bratz.[3]

At Morales' deposition, she admitted that Veronica Marlow had been attempting to hide her and Cabrera's names from Mattel.  "She was trying to hide [our names] so Mattel wouldn't realize that we were from Mattel and we were helping her."[4]

On April 24 and 25, 2008, Veronica Marlow produced the documents establishing this conduct.  These documents showed work done and payment

---

[2]   Transcript of the Interview of Ana Cabrera dated January 2, 2008 at 118:3-119:23.

[3]   Transcript of the Interview of Beatriz Morales dated January 14, 2008 at 115:2-20.

[4]   Transcript of the Deposition of Beatriz Morales, dated April 28, 2008, at 44:18-20.

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

1   received by Rosalba Cabrera (Ms. Cabrera's sister-in-law), and Gonzalo Morales
2   (Beatriz Morales' husband), even though neither had ever done any work for
3   Marlow.  They include false tax forms, such as W-9 and 1099 forms,[5] handwritten
4   time sheets purporting to have been filled in by these individuals,[6] and payment
5   receipts signed by Cabrera and Morales under these false names and social security
6   numbers.[7]

7        In addition, Peter Marlow, Veronica Marlow's business manager, repeatedly
8   invoked the Fifth Amendment when asked about such documents and statements
9   by Morales or Cabrera or efforts to conceal from Mattel their work on Bratz while
10  Mattel employees.  This corroborating evidence – which Mattel need not prove
11  before it is entitled to an instruction on this point – is more than sufficient to
12  support the proposed instruction regarding the adverse inference.  Accordingly,
13  with respect to issues on which these witnesses asserted their Fifth Amendment
14  rights (including concealment of information from Mattel and work done for
15  defendants and/or on Bratz), there is enough independent evidence to support an
16  adverse inference—including defendants' concealment of the true origins of Bratz
17  and what the Court recognized as Bryant's failure to communicate Bratz to Mattel
18  and that he "secretly entered into a contract with Mattel's competitor . . . to produce
19  a line of fashion dolls to be marketed in direct competition with Mattel's products
20  (April 25, 2008 Order, at 6).

21       Finally, the cases cited by defendants in support of their contention that the
22  proposed instruction should require an analysis of the relationship between the

23

24  _____
       [5]   E.g., documents produced at Bates numbers KMW-M 009458, KMW-M
25  008689, and KMW-M 009462.
       [6]   E.g., documents produced at Bates numbers KMW-M 009714 and KMW-M
26  009715.
       [7]   E.g., documents produced at Bates numbers KMW-M 009836 and KMW-M
27  009837.

28

witness and the party are not binding or persuasive.  In any event, as set forth
above, the witnesses at issue in this case are all affiliated with defendants—
accordingly, it is appropriate even under defendants' cases to draw inferences in
favor of Mattel based on party-affiliated assertions of Fifth Amendment privilege.

**Instructions on the Law**

**CACI 300**

**BREACH OF CONTRACT—INTRODUCTION**

Mattel, the plaintiff in this case, and the defendant, Carter Bryant, entered into a contract called the Employee Confidential Information and Inventions Agreement.  I will refer to this as the "Inventions Agreement."  Pursuant to the Inventions Agreement, Mr. Bryant assigned to Mattel all right, title and interest in any "inventions" relating to Bratz, including without limitation designs, ideas, improvements and other works, that he created, made or conceived while employed by Mattel.  Mr. Bryant also agreed that he would not engage in any employment or business, without Mattel's express consent, other than for Mattel or assist in any manner any business competitive with the business of Mattel while employed by Mattel.

Mattel also claims that Mattel and Mr. Bryant entered into a contract called the Conflict of Interest Questionnaire, wherein Mr. Bryant agreed to notify Mattel immediately if he became engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest.

Mattel claims that Mr. Bryant breached these contracts by concealing his conception, creation and development of Bratz works while he was employed by Mattel.  Mattel claims that Mr. Bryant further breached these contracts by purporting to assign Bratz works to MGA, a Mattel competitor, while Mr. Bryant was employed by Mattel, by secretly assisting and working for MGA while he was employed by Mattel and by disclosing Mattel's trade secret information to MGA.

Mattel claims that Mr. Bryant's breaches of contract caused harm to Mattel for which Mr. Bryant should pay damages.

Mr. Bryant denies that he breached his contractual obligations to Mattel.

1   **Authority:**   Judicial Council of California Civil Jury Instructions (2007)

2   ("CACI"), No. 300.

## OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE BREACH OF CONTRACT—INTRODUCTION

The preceding instruction assumes facts that are yet to be proven by Mattel – namely, that Bryant "assigned to Mattel all right, title and interest in any 'inventions,' including without limitation designs, improvements and other works, that he created, made, conceived or reduced to practice during his employment with Mattel." The instruction improperly characterizes Sections 2(a) and 3(a) of the Inventions Agreement and the purported obligations of the Questionnaire, rather than simply quoting the provisions and stating what each party contends those provisions mean. The instruction should either specify that the contention in question is just that – Mattel's contention, or, alternatively, let the alleged contracts speak for themselves. The instruction is further objectionable to the extent that it does not advise the jury of (1) the contract's definition of the term "inventions"; (2) Bryant's contentions as to what the term "inventions" actually means; (3) Bryant's contention that he neither conceived of the BRATZ nor reduced them to practice during his employment at Mattel, (4) the meaning of the terms "conceived" and "reduced to practice"; (5) Bryant's affirmative defenses, (6) Bryant's contention that any activities undertaken during his employment were mere preparations to compete,  and (7) Bryant's contention that the Questionnaire is not a contract at all.  Cf. CACI No. 300 (providing for inclusion of affirmative defenses). Mattel's failure to include any of the above demonstrates that the instruction is entirely one-sided and prejudicial.

Further, this instruction is highly confusing, because it fails to separate the three alleged breaches of contract—breach of section 2(a), breach of section 3(a) and breach of the Questionnaire—creating a risk of juror confusion. Moreover, MGA Parties and Bryant object to Mattel's inclusion of any contention that Bryant

-31-

1  disclosed Proprietary Information, as Bryant moved for summary adjudication with

2  regard to this issue, and Mattel failed to oppose that portion of Bryant's motion.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the model instruction found in CACI.  The model jury instruction contemplates a narrative description of the contracts and breaches of contract at issue in the trial.  See CACI No. 300 ("*insert brief summary of alleged contract*"; "*briefly state the alleged breach*").  Defendants' objections to this introductory instruction should be overruled.

As an initial matter, defendants' objections to Mattel's inclusion in the proposed instruction of language from the Inventions Agreement is not well taken.  There is no reason to specify, as defendants suggest, that the contractual language is "Mattel's contention" – the language comes from the contract itself.

The proposed instruction also does not "assume facts" – the Court explicitly ruled that Bryant "assigned his 'inventions' to Mattel" and "assigned to Mattel 'all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]."  April 25, 2008 Order, at 4.  Mattel does not object to the inclusion of the definition of "inventions" contained in the Inventions Agreement ¶ 2(b), namely that "the term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, designs, know-how, data, computer programs and formulae, whether patentable or unpatentable."

Several of defendants' remaining objections are contrary to the Court's April 25, 2008 Order and should be overruled on that basis alone.  There is no basis to instruct the jury that Bryant contends that "any activities undertaken during his employment were mere preparations to compete" because, as a matter of law, that is not a defense to a breach of contract claim and because the Court ruled that Bryant cannot defend his actions as "preparations to compete."  April 25, 2008 Order, at 5.  (Defendants fail to cite any authority suggesting that Bryant was entitled to breach his contractual obligations in "preparing to compete.")  There is also no basis to inform the jury of Bryant's affirmative defenses since the Court

1   recognized that they are equitable in nature and expressly deferred ruling on them

2   until after trial.  *Id.* at 7-8.

3        Defendants' objection that the instruction is confusing because it does not

4   separate out the alleged breaches of the contracts at issue (e.g., breaches of

5   Sections 2(a) and 3(a) of the Inventions Agreement) should be overruled.  The

6   proposed instruction describes the contracts at issue and informs the jury of the

7   basis for Mattel's claims that Bryant breached those contracts.  Further detail is not

8   appropriate or necessary in an introductory instruction.

9        Finally, defendants' objection to Mattel's reference to Bryant's disclosure of

10  Mattel proprietary information is unintelligible.  Nothing in the Court's ruling on

11  the parties' cross-motions for partial summary judgment addressed defendants'

12  assertion here.

# CACI 303

## BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

To recover damages from Mr. Bryant for breach of contract, Mattel must prove all of the following:

That Mattel and Mr. Bryant entered into a contract or contracts;

That Mattel did all, or substantially all, of the significant things that the contract required Mattel to do;

That Mr. Bryant failed to do something that the contract required him to do; and

That Mattel was harmed by that failure.

**Authority:**  CACI No. 303.

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

This instruction is objectionable first because it does not distinguish between the two contracts at issue, the Inventions Agreement and the Questionnaire, or between the two sections of the Inventions Agreement Mattel alleges Bryant breached.  This is prejudicial particularly where, as here, the obligations of the provisions of the two alleged contracts are distinct, the conduct alleged to be a breach is distinct, and the alleged breaches give rise to distinct damages.  Further, the application of the preceding instruction to the case at hand is objectionable to the extent it does not advise the jury of the additional elements that Mattel has to prove in order to succeed on its claim for breach of Section 2(a) of the Inventions Agreement; namely, that (1) the term "inventions" in the Inventions Agreement applies to the BRATZ sketches; and (2) Bryant conceived or reduced to practice the invention during his employment at Mattel.

With respect to Mattel's claim that Bryant breached section 3(a) of the Inventions Agreement, this instruction fails to advise the jury that preparations to compete are not a breach of that provision or that Mattel must have been harmed during the term of Bryant's employment.  Lastly, the instruction is objectionable as applied here because it fails to advise the jury that Bryant contends that the Questionnaire is not a contract at all. Cf. Dang v. Cross, 422 F.3d 800, 805 (9th Cir. 2005) ("[u]se of a model jury instruction does not preclude a finding of error"), citing United States v. Warren, 984 F.2d 325, 328 (9th Cir. 1993).

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the model instruction set forth in CACI No. 303.  Accordingly, defendants have no basis to object to the instruction. While defendants contend the proposed instruction is objectionable because it does not distinguish between the Inventions Agreement and the Conflict of Interest Questionnaire, the instruction adequately informs the jury that the first element it must find is that "Mattel and Mr. Bryant entered into a *contract or contracts*" (emphasis added).  Mattel's prior instruction (CACI No. 300 – Introduction to Breach of Contract) introduced the jury to the particular agreements at issue here. The proposed instruction permits the jury to find a breach of contract on either of those agreements and any number of grounds within those agreements.

Defendants' objection that the instruction does not inform the jury of "additional elements that Mattel has to prove to succeed on its claim for breach of Section 2(a) of the Inventions Agreement" is erroneous and contrary to the Court's April 25, 2008 Order.  The proposed instruction sets forth the legal elements of Mattel's breach of contract claims.  The Court already ruled that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  April 25, 2008 Order, at 4.

Finally, as with defendants' prior objection, the instruction sets forth Mattel's claims in accordance with CACI No. 303 and need not enumerate Bryant's responses, such as his claim that the Questionnaire is not a contract.  That is merely argument regarding the first element.  As set forth in the proposed instruction, the jury must find is that Mattel and Bryant entered into a contract or contracts.  If the jury were to accept Bryant's claim that the Questionnaire is not a contract, it would not find that he entered into a contract with Mattel with respect to the Questionnaire.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## BREACH OF CONTRACT—PREVIOUS FINDINGS OF THE COURT

The Court has already found as a matter of law that the Inventions Agreement is a valid and enforceable contract.  This means that the first two elements of Mattel's breach of contract claim have been established as a matter of law.

The Court has also found as a matter of law that the term "inventions" used in the Inventions Agreement includes any designs, improvements, ideas, concepts, and copyrightable subject matter, and that, to the extent they were created by Mr. Bryant while he was employed by Mattel, the Bratz drawings created by Mr. Bryant fall within the scope of the Inventions Agreement.

If you find that Mr. Bryant created any ideas, concepts, drawings, designs, tangible items and/or works related to Bratz while he was employed by Mattel, including any of the Bratz drawings, then Mattel owns all right, title and interest in those ideas, concepts, drawings, designs and/or works pursuant to the Inventions Agreement as a matter of law.

The Court has also found as a matter of law that Mr. Bryant directly competed with Mattel by entering into a contract with MGA, Mattel's competitor, to produce a competing product while he was still employed by Mattel.  However, the full scope of Mr. Bryant's breaches of contract is for you to decide.

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**BREACH OF CONTRACT—PREVIOUS FINDINGS OF THE COURT**

The preceding instruction is premature in that it does not account for Carter Bryant's pending motion for reconsideration of the Court's summary judgment findings concerning the interpretation of the term "inventions", the duties owed by Bryant and the breach thereof.

Further, even if the Court does not reconsider its April 25, 2008 MSJ Order, this instruction mischaracterizes the effect of such a holding.  <u>First</u>, MGA Parties and Bryant object to Mattel's failure to provide separate instructions with respect to the different alleged breaches of contract at issue.  This is highly prejudicial when Mattel then purports to claim that certain elements of the breach of contract claims have been satisfied, when the Court has made no rulings whatsoever with respect to one of the contracts at issue (the Questionnaire) and one of the contract provisions at issue (section 3(a)) of the Inventions Agreement).

<u>Second</u>, it is unnecessary and highly prejudicial to have a separate instruction entitled "Previous Findings of the Court."  Instead, the jury should simply be instructed that certain elements of a claim have been established or where appropriate, the requirement that Mattel prove a particular element should simply be eliminated.

<u>Third</u>, the instruction erroneously states that the first two elements of the breach of contract claim have been established as a matter of law.  The April 25, 2008 MSJ Order only establishes that the Inventions Agreement is a valid and enforceable contract, and says nothing whatsoever about the Questionnaire.  Nor does the Order anywhere address the second element of Mattel's breach of contract claims—that Mattel did all or substantially all of the significant things the Inventions Agreement and the Questionnaire required it to do.  For this reason,

1  again, Mattel's failure to have separate instructions for each breach of contract

2  claim is highly prejudicial and results in serious error.

3      <u>Fourth</u>, paragraphs 2 and 3 misinterpret the effect of the Court's Order and

4  fail to accurately inform the jury the remaining issues it must decide with respect

5  to Mattel's claim for breach of section 2(a).  For example, the instruction fails to

6  acknowledge that Mattel still must prove that the invention at issue must be

7  conceived or reduced to practice during Bryant's employment with Mattel—not

8  simply "which Bratz works were created, if any during that time."  Similarly, it

9  fails to inform the jury that Mattel must still prove harm, must demonstrate that the

10 assignment provision satisfies both California Civil Code Section 988 and Section

11 204(a) of the Copyright Act, and the jury must consider whether the invention is

12 protected by Labor Code Section 2870 and whether MGA was a good faith

13 purchaser of the copyrights in BRATZ.

14     <u>Fifth</u>, this instruction incorrectly states "the Court has also found as a matter

15 of law that Mr. Bryant directly competed with Mattel by entering into a contract

16 with MGA, Mattel's competitor, to produce a competing product while he was still

17 employed by Mattel.  However, the full scope of Mr. Bryant's breaches of contract

18 is for you to decide."  The Court did not make any finding that Mr. Bryant

19 breached his contracts with Mattel.

20     In the event the Court denies Bryant's pending Motion for Reconsideration,

21 and instructs the jury in accord with its April 25, 2008 MSJ Order over MGA

22 Parties and Bryant's objections, MGA Parties and Bryant submit that the

23 appropriate way to do so is in the instructions pertaining to each claim—so as not

24 to risk juror confusion with regard to which elements are affected by the Court's

25 April 25, 2008 MSJ Order or to prejudice to the MGA Parties and Bryant by

26 repeated references to the Court's findings.  The MGA Parties and Bryant further

27 submit that it is unnecessary and highly prejudicial to refer to pretrial rulings of the

28 Court, rather than simply instructing the jury that Mattel has established certain

1  elements of a particular claim or removal of any reference to the need to prove a

2  certain element.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3          Contrary to defendants' purported objections that it is "unnecessary and

4   highly prejudicial" to have separate instructions regarding the Court's previous

5   findings, it is both necessary and appropriate to inform the jury of the Court's

6   findings in the context of the claims the jury is to consider in Phase 1A of this trial.

7   Mattel's proposed instruction conforms to the Court's April 25, 2008 Order, which

8   is easily confirmed by review of the Order.  Mattel's proposed instructions are

9   clearer and less confusing than defendants' because they inform the jury of the

10  elements of Mattel's claims in conformance with the appropriate model

11  instructions, and then inform the jury of the findings previously made by the Court

12  that are relevant to those elements.

13         Defendants' objection that the proposed jury instruction "does not account

14  for [] Bryant's pending motion for reconsideration" is not well taken.  Defendants

15  do not even attempt to articulate how the proposed jury instruction should "account

16  for" Bryant's motion for reconsideration.  There is obviously no reason to inform

17  the jury of a motion for reconsideration.  If the Court modifies its April 25, 2008

18  Order, Mattel will modify its proposed jury instructions.  But the instruction is

19  proper as is based on the Court's rulings to date.

20         Defendants' objection to Mattel's instruction regarding the enforceability of

21  the Inventions Agreement should be overruled.  The instruction merely reiterates

22  the Court's findings with respect to Bryant's prior challenges to the enforceability

23  of the Inventions Agreement.  *See* Court's Order Granting Motions to Dismiss,

24  dated July 17, 2006, at 10-14.  After the Court issued its Order, Bryant withdrew

25  by stipulation all of his affirmative defenses challenging the enforceability or

26  lawfulness of the Inventions Agreement.  *See* Stipulation and Order Regarding

27  Carter Bryant's Amended Reply to Mattel's Counterclaims, dated October 5, 2007,

28

-42-

1  at 1:18-22.  Bryant cannot attempt to reopen such challenges now, and Mattel's

2  instruction informing the jury of the Court's previous findings is proper.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CACI 2201

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Mattel claims that MGA and Isaac Larian intentionally interfered with the contracts between Mattel and Carter Bryant.  To establish this claim, Mattel must prove all of the following:

1.      That there was a contract or contracts between Mattel and Carter Bryant;

2.      That MGA and/or Mr. Larian knew of the contract;

3.      That MGA and/or Mr. Larian intended to disrupt the performance of this contract;

4.      That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5.      That Mattel was harmed; and

6.      That the conduct of MGA and/or Mr. Larian was a substantial factor in causing Mattel's harm.

**Authority:**  CACI No. 2201.

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

The preceding instruction is objectionable to the extent that it omits a required element of a claim for intentional interference with an <u>at-will</u> contract, such as the contract at issue here. That element requires Mattel to prove that Larian and MGA engaged in wrongful conduct <u>independent</u> of "interfering" with Bryant's contracts with Mattel. See <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1152-53 (2004) ("[T]o recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act -- i.e., an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard' -- that induced an at-will employee to leave the plaintiff.") (citations omitted); <u>see also</u> <u>American Mortg. Network v. LoanCity.com</u>, 2006 WL 3199291, at *15 (Cal. Ct. App. Nov. 7, 2006) (holding that jury instruction that "[a]n employee is subject to liability for the tort of inducing breach of contract/unfair competition if, before or after leaving the employment, the employee uses unlawful or <u>unfair</u> means to cause fellow employees to break their contracts with the employer" was incorrect because "liability for unfair competition/ inducing breach of contract can be based only on <u>unlawful</u> conduct") (emphasis in original) (citations omitted). The preceding instruction is also objectionable to the extent it includes Mattel's claim for interference with contract based on Mattel's purported rights to the BRATZ, as the Court has already found that it is preempted by the Copyright Act. (See April 25, 2008 MSJ Order.)

The preceding instruction is also objectionable to the extent it does not (1) require Mattel to prove that the underlying contract was a valid and enforceable one, <u>see</u> <u>PMC, Inc. v. Saban Entm't, Inc.</u>, 45 Cal. App. 4th 579, 601 (1996); (2) advise the jury that there is no "inducement" and thus no liability where the

1  breaching party initiates contact with the defendant, <u>see, e.g.,</u> <u>Bauer v. Interpublic</u>

2  <u>Group of Cos. Inc.,</u>  255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003); and (3)

3  advise the jury that solicitation and contracting with an at-will employee of a

4  competitor such as Bryant are not wrongful, <u>see, e.g.,</u> <u>Troystar Invs., Inc. v. Sabat,</u>

5  2008 WL 316218, at *4  (Cal. Ct. App. Feb. 6, 2008). Finally, the preceding

6  instruction is objectionable to the extent it suggests that proving all the elements as

7  against <u>either</u> MGA <u>or</u> Larian establishes the liability of both.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.  Accordingly, defendants' objections to the form of the proposed instruction should be dismissed.  The element defendants claim is missing from the proposed instruction – an independent wrongful conduct – is, by MGA's own admission, required only when the claim is for intentional interference *with an at-will contract*.  Mattel has made no claim that any defendant interfered with Bryant's "at-will" agreement with Mattel.  The Inventions Agreement and Conflict of Interest Questionnaire, with which defendants did interfere, are not "at-will" employment contracts – they are just contracts.  To require an additional element beyond CACI No. 2201 on the basis of a claim that Mattel has not made would be prejudicial and misleading.

Defendants' additional objections should also be overruled.  The proposed instruction explicitly informs the jury that Mattel must prove there was a contract or contracts.  There is no need to add the terms "valid and enforceable" to the model instruction.  Moreover, it is contrary to law to suggest that liability turns on who made the initial contact as among the wrongdoers, rather than on, as set forth in the model instruction, whether defendants intended to disrupt the performance of the contract and prevented performance or made it more difficult.  *See Plessinger v. Castleman and Haskell*, 838 F. Supp 448, 452 (N.D. Cal. 1993) ("[I]ntent can be met by an allegation that the defendant engaged in an intentional act designed to 'disrupt' the plantiff's contractual relationship.... and that disruption includes acts which make the plaintiff's performance under the contract more difficult or burdensome"); *Pacific Gas & Electric Co. v . Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

1    In addition, although Mattel believes that MGA and Larian acted jointly, the

2 proposed instruction properly advises the jury to consider each element for each

3 defendant.

4    Finally, defendants' objection that the proposed instruction is objectionable

5 "to the extent it includes Mattel's claim for interference with contract based on

6 Mattel's purported rights to the BRATZ" is unintelligible.  Mattel's proposed

7 instruction conforms to the model instruction found in CACI, as required by the

8 Court, and makes no reference to rights to Bratz or any other rights subject to

9 federal copyright law.  Accordingly, defendants have no basis to suggest that the

10 Court deviate from the model instructions.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S SPECIAL JURY INSTRUCTION NO. ___**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL**

**RELATIONS—PREVIOUS FINDINGS OF THE COURT**

     The Court has already found as a matter of law that the first, third and fifth elements of Mattel's claim against MGA and Isaac Larian for intentional interference with contractual relations have been met.  Accordingly, if you find that MGA or Mr. Larian knew about the contract or contracts between Mattel and Mr. Bryant and that MGA's or Mr. Larian's conduct prevented performance or made performance more difficult, then you should find MGA and/or Mr. Larian liable for intentional interference with contractual relations.

1
2
3
4

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—PREVIOUS FINDINGS OF THE COURT

5   Although the preceding instruction relies on the Court's summary judgment
6   findings, the instruction misinterprets the Court's ruling, as Mattel had not moved
7   for summary judgment on its claim for intentional interference with contract.
8   Moreover, no party even briefed the law or facts as to certain elements, such as the
9   fifth element (harm to Mattel) and, accordingly, the MGA Parties and Bryant
10  believe that the Court's Order was made in error, which they intend to correct
11  when the Court hears the remainder of the parties' motions for summary judgment.
12  Indeed, the Court continued hearing on the MGA Parties' motion for partial
13  summary judgment as to this claim, among others, and is currently scheduled to
14  hear arguments on May 19, 2008.  It is then that the MGA Parties expect to clarify
15  the Court's findings, if any, on this claim.

16
17
18
19
20
21
22
23
24
25
26
27
28

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        This proposed instruction informs the jury that the Court already ruled that a

4   valid contract existed between Bryant and Mattel; that the MGA defendants

5   intended to induce the breach or disruption of that contract; and that Mattel was

6   harmed.  *See* April 25, 2008 Order, at 6.  All that is left for the jury to resolve is

7   whether MGA or Mr. Larian knew about the contract or contracts at issue and,

8   subject to further rulings of the Court, whether their conduct prevented

9   performance or made performance more difficult.  It is both necessary and

10  appropriate to inform the jury of the Court's previous findings in the context of the

11  claims the jury is to consider in Phase 1A of this trial.  Mattel's proposed

12  instruction conforms to the Court's April 25, 2008 Order, which is easily confirmed

13  by review of the Order.

14       Defendants' objection that the proposed jury instruction "does not account

15  for [] Bryant's pending motion for reconsideration" is not well taken.  Defendants

16  do not even attempt to articulate how the proposed jury instruction should "account

17  for" Bryant's motion for reconsideration.  There is obviously no reason to inform

18  the jury of a motion for reconsideration.  If the Court modifies its April 25, 2008

19  Order, Mattel will modify its proposed jury instructions.  But the instruction is

20  proper as is based on the Court's rulings.

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## <u>INTENT OR KNOWLEDGE</u>

In deciding whether MGA or Isaac Larian acted knowingly or intentionally, you may consider whether they knew that a breach was substantially certain to result from their conduct.  Knowledge of a third party's contractual obligations can be inferred from circumstantial evidence, including an intent to conceal or to avoid actual knowledge of the agreement.

**Authority:**  CACI 2203; *Silicon Image, Inc. v. Analogix Semiconductor Inc.*, 2007 WL 1455903, *4 (N.D. Cal. May 16, 2007) (holding that use of licensing agreements which are "common in the industry" created a reasonable inference that defendant, a competitor to plaintiff, "knew that sale of its product to Silicon Image customers violated the Software License Agreement"); *Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966) (reversing grant of summary judgment on interference claim on the ground that circumstantial evidence supported an inference of knowledge of a contractual relationship); *cf. Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999) ("'[W]illful blindness' is no defense to a charge of knowing and intentional counterfeiting.  It is *enough* that a [defendant] 'failed to inquire further because he was afraid of what the inquiry would yield.").

## OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTENT OR KNOWLEDGE

The preceding instruction is objectionable to the extent it does not advise the jury that there is no intent to interfere where the defendant knows or believes its agreement with a third party will not infringe the rights of the plaintiff.  See <u>1-800 Contacts, Inc. v. Steinberg</u>, 107 Cal. App. 4th 568, 586 (2003). Notably, Mattel's reliance on <u>Sony Computer Entm't Am., Inc. v. Gamemasters</u>, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999), is irrelevant here, given that <u>Sony Computer</u> dealt with the intent element required to prove a claim for trademark counterfeiting under federal law, which has nothing to do with a claim for intentional interference with contract asserted under California law.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3          Defendants' objections are nothing more than an attempt to argue a

4    purported defense of good faith under the guise of adding an element of the

5    offense.  If defendants wish to present evidence of good faith in an effort to

6    disprove intent, they are free to do so.  But the model instruction makes clear that

7    "substantial certainty" is sufficient to establish intent as a matter of law.  *See* CACI

8    No. 2203 ("In deciding whether [name of defendant] acted intentionally, you many

9    consider whether [he/she/it] knew that a [breach/disruption] was substantially

10   certain to result from [his/her/its] conduct.").

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## WILLFUL BLINDNESS

In deciding whether MGA or Isaac Larian acted knowingly or intentionally, you may consider that a party's willful blindness can be equivalent to knowledge.

**Authority:** *Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999) ("'[W]illful blindness' is no defense to a charge of knowing and *intentional* counterfeiting.  It is enough that a [defendant] 'failed to inquire further because he was afraid of what the inquiry would yield.").

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE WILLFUL BLINDNESS**

The preceding instruction is not supported by California law, as Mattel's only authority deals with the intent element required to prove a claim for trademark counterfeiting under federal law, which has nothing to do with a claim for intentional interference with contract asserted under California law.  Knowledge, not willful blindness, is required to establish intentional interference with contract. In addition to showing "the defendant's *knowledge* of th[e] contract" between the plaintiff and a third party, the plaintiff "must show the defendant's *knowledge* that the interference was certain or substantially certain to occur as a result of his or her action."  Reeves v. Hanlon  33 Cal. 4th 1140, 1148 (2004) (citing Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal. 4th 26, 56 (1998); see also Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (plaintiff must show defendant "knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action."); accord Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (citing Cope v. Price Waterhouse, 990 F.2d 1256, 1993 WL 102598, at *6 (9th Cir. Apr. 7, 1993) (Unpub. Disp.) (in regards to aiding and abetting liability, "the term 'knows' does not include both actual knowledge and recklessness. When the drafters of the Restatement meant to include recklessness as an element of liability, they did so explicitly")).

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction properly informs the jury that willful blindness can be equivalent to knowledge.  The recognition that intent may be established by circumstantial evidence, and that willful blindness may be considered by the jury in inferring intent, is not, as defendants suggest, a principle limited to federal or common law.  *See Sony Computer Entertainment Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999); *Hulsey v. Elsinore Parachute Center*, 168 Cal. App. 3d 333, 339 (1985) ("It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it."); *Thomas v. Gordon*, 85 Cal. App. 4th 113, 121 (2000) ("We see no reason to encourage willful blindness to the content of documents signed under penalty of perjury by allowing a party to use the excuse of failure to read as a basis for rejecting application of the doctrine of judicial estoppel."); *Decker v. Yorkton Securities, Inc.*, 106 Cal. App. 4th 1315 (2003) (adopting willful blindness test as establishing intent); *see also Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 785 (1979); *Louis Vuitton SA v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __

## BREACH OF FIDUCIARY DUTY

Mattel claims that it was harmed by Carter Bryant's breach of fiduciary duty. Carter Bryant owed what is known as a fiduciary duty to Mattel. A fiduciary duty imposes on an individual a duty to act with the utmost good faith in the best interests of another. To establish this claim, Mattel must prove all of the following:

    1.    That Mr. Bryant owed a fiduciary duty to Mattel;

    2.    That Mr. Bryant failed to act in the best interests of Mattel while he was employed by Mattel;

    3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

    4.    That Mattel was harmed; and

    5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

**Authority:** CACI No. 4100; *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000) (overruled on other grounds); *Cf. Stevens v. Marco*, 147 Cal. App. 2d 357, 372 (1956) ("Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another."); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1994) (same); *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002) (noting that a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . .").

## OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE
## BREACH OF FIDUCIARY DUTY

The preceding instruction is premature in that it does not account for Carter
Bryant's pending motion for reconsideration of the Court's summary judgment
findings concerning the duties owed by Bryant and the alleged breach thereof,
which the Court has ordered shall be heard on May 19, 2008. The preceding
instruction is objectionable because it misstates the applicable law. First, its
statement that Carter Bryant owed a fiduciary duty to Mattel is flatly wrong under
the cases cited and, in particular, under the California Supreme Court's recent
decision in City of Hope Nat'l Med. Ctr. v. Genentech, Inc., __ Cal. 4th __, 2008
WL 1820916 (Apr. 24, 2008), and for the reasons set forth in Bryant's Motion for
Reconsideration. Second, the instruction omits the complete requirements for an
"agreed upon" fiduciary duty to arise as set forth in MGA Parties and Bryant's
submitted instruction on "Existence of Fiduciary Duty:" (1) that Bryant voluntarily
and knowingly expressly agreed to act as a fiduciary for Mattel, to act on its behalf,
and to hold Mattel's interests paramount over his own interests;  (2) that Mattel
entrusted its property or affairs to Bryant; (3) that Mattel gave Bryant a broad grant
of discretion; (4) that Mattel had little ability to monitor Bryant and therefore had
to rely upon the truth of his representations;  (5) that Mattel was vulnerable and
dependent upon Bryant and that vulnerability was so substantial as to give rise to
equitable concerns and create a relationship similar to other legally recognized
fiduciary relationships such as that of an attorney/client, trustee/beneficiary, a
corporate officer/corporation; and (6) that the employment contract did not
preclude the existence of a fiduciary relationship.  See id. at **7-8; see also City
Solutions, Inc. v. Clear Channel Commc'ns, Inc., 201 F. Supp. 2d 1048, 1050
(N.D. Cal. 2002); Kremen v. Cohen, 99 F. Supp. 2d 1168, 1175 (N.D. Cal. 2000);
Comm. on Children's Tel., Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 222 (1983)

1    (superseded by statute on other grounds); <u>Vai v. Bank of Am.</u>, 56 Cal. 2d 329, 338

2    (1961); <u>Oakland Raiders v. Nat'l Football League</u>, 131 Cal. App. 4th 621, 632-33

3    (2005); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal.

4    App. 4th 409, 417 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33

5    Cal. 4th 1140 (2004); <u>Maglica v. Maglica</u>, 66 Cal. App. 4th 442, 448 (1998);

6    <u>Lynch v. Cruttenden & Co.</u>, 18 Cal. App. 4th 802, 809 (1993); <u>Worldvision</u>

7    <u>Enters., Inc. v. Am. Broad. Cos.</u>, 142 Cal. App. 3d 589, 595 (1983).

8         The preceding instruction is further objectionable in that it does not advise

9    the jury that it is required to determine the scope of the agreement to act as a

10   fiduciary in order to establish that the fiduciary duty was breached. <u>See</u>

11   Restatement (Third) of Agency § 8.04 (2006); <u>Bancroft-Whitney Co. v. Glen</u>, 64

12   Cal. 2d 327, 346-47 (1966); <u>Gonsalves v. Hodgson</u>, 38 Cal. 2d 91, 99 (1951);

13   <u>LeMat Corp. v. Am. Basketball Ass'n</u>, 51 Cal. App. 3d 267, 275 (1975). Finally,

14   the instruction is incomplete because it fails to advise the jury that Mattel must

15   show that Bryant engaged in acts of direct competition during the term of his

16   employment, nor does it advise the jury that preparations to compete are

17   insufficient to give rise to a claim for breach of fiduciary duty. <u>See</u> <u>Bancroft-</u>

18   <u>Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 346 (1966); <u>accord</u> <u>Eckard Brandes, Inc. v.</u>

19   <u>Riley</u>, 338 F.3d 1082, 1086 (9th Cir. 2003); <u>Am. Home Shield, Inc. v. Fidelity</u>

20   <u>Nat'l Home Warranty Co.</u>, 2003 WL 21085278, at *12 (Cal. Ct. App. May 14,

21   2003); <u>Edenbaum v. Dalton</u>, No. D037255, 2002 WL 31474450, at ** 7-8 (Cal. Ct.

22   App. Nov. 6, 2002); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.</u>,

23   Inc., 83 Cal. App. 4th 409,  424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves</u>

24   <u>v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal.

25   Rptr. 86, 92-93 (1968) (unpublished); <u>see also</u> <u>Material Supply Int'l, Inc. v.</u>

26   <u>Sunmatch Indus. Co.</u>, 146 F.3d 983, 993 (D.C. Cir. 1998); <u>Franklin Music Co. v.</u>

27   <u>Am. Broad. Cos.</u>,  616 F.2d 528, 532-33, 537 (3d Cir. 1979); <u>Merger Mgmt.</u>

28   <u>Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219, 233-35 (D. D.C. 1996); <u>T.A. Pelsue</u>

1   Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham

2   Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F.2d

3   93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161, 167 (S.D. Tex.

4   1977); Restatement (Third) of Agency § 8.04 cmt. c.

5        In addition, the instruction is improper because it does not inform the jury

6   that Mattel must prove it was harmed during Bryant's employment and not later by

7   Bryant's competition with Mattel.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the model instructions regarding fiduciary duty found in CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.  The proposed instruction correctly states California law, which provides that a fiduciary relationship can be created by the substance of an agreement "where a confidence is reposed by one person in the integrity of another….if he voluntarily accepts or assumes to accept the confidence." *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1991) (fiduciary relationships arise "whenever trust and confidence is reposed by one person in the integrity of another"); *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (at common law, "even in the absence of a written contract, an employee has a fiduciary obligation to protect confidential information obtained during the course of his employment").

The Court's April 25, 2008 Order confirms that Mattel's proposed instruction properly states the law governing fiduciary duty.  Defendants' strained efforts to avoid application of that law are as unpersuasive here as they were in opposition to Mattel's motion for partial summary judgment on this issue.

Moreover, as set forth more fully in Mattel's Opposition to Bryant's Motion for Reconsideration, the California Supreme Court's opinion in *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, __ Cal. 4th __, 2008 WL 1820916 (Apr. 24, 2008) does not undermine the Court's prior ruling.  In *City of Hope*, the Court merely applied well-settled principles governing fiduciary duty and contract interpretation.  A fiduciary relationship is created by contract when a party explicitly agrees to act in a fiduciary capacity, regardless of whether the actual words "fiduciary" are used; it is the substance of the relationship, not the words, that govern.  *GAB Bus. Servs., Inc., v. Lindsey & Newsom Claims Servs., Inc.*, 83  Cal. App. 4th 409,  417 (2000), relied upon by defendants, is not to the contrary; in that case, the court, while addressing fiduciary relationships created by status in the corporate hierarchy,

1  explicitly recognized that "[a] fiduciary duty is undertaken by agreement when one

2  person enters into a confidential relationship with another….a confidential

3  relationship arises 'where a confidence is reposed by one person in the integrity of

4  another, and…the party in whom the confidence is reposed, …voluntarily accepts

5  or assumes to accept the confidence.'"

6      Defendants' objection that the proposed jury instruction "does not account

7  for [] Bryant's pending motion for reconsideration" is not well taken.  Defendants

8  do not even attempt to articulate how the proposed jury instruction should "account

9  for" Bryant's motion for reconsideration.  There is obviously no reason to inform

10  the jury of a motion for reconsideration.  If the Court modifies its April 25, 2008

11  Order, Mattel will modify its proposed jury instructions.  But the instruction is

12  proper as is based on the Court's rulings to date.

13      As for defendants' further objection that Mattel's instruction does not inform

14  the jury that it is required to determine the scope of Bryant's agreement to act as a

15  fiduciary, that is a question of law for the Court – not the jury.  *See Kirschner*

16  *Brothers Oil, Inc. v. Natomas Co.*, 185 Cal. App. 3d 784, 790 (1986) ("While

17  breach of a fiduciary duty is a question of fact, the existence of legal duty in the

18  first instance and its scope are questions of law.").  Indeed, the Court already ruled

19  that Bryant owed a fiduciary duty to Mattel.  *See* April 25, 2008 Order, at 5

20  ("Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in

21  ¶ 1(a) of the Inventions Agreement.").

22      There is no basis for defendants' request that the jury be informed that only

23  acts of "direct competition during the term of employment" constitute a breach of

24  fiduciary duty.  The law is clear that a fiduciary is required to place his employer's

25  best interests ahead of his own.  Not only is he prohibited from engaging in any

26  acts against his employer's best interests, but he is under an obligation to disclose

27  any acts undertaken in  preparation to compete after his fiduciary relationship has

28  ended.  *See* CACI Nos. 4101, 4102; *Wolf v. Superior Court*, 107 Cal. App. 4th 25,

1   30 (2003) ("Inherent in each of these relationships is the duty of undivided loyalty
2   the fiduciary owes to its beneficiary, imposing on the fiduciary obligations far
3   more stringent than those required of ordinary contractors.  As Justice Cardozo
4   observed, 'Many forms of conduct permissible in a workaday world for those
5   acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is
6   held to something stricter than the morals of the market place. Not honesty alone,
7   but the punctilio of an honor the most sensitive is then the standard of behavior.'")
8   (internal citation omitted); *Sequoia Vacuum Systems v. Stransky*, 229 Cal. App. 2d
9   281, 287 (1964) ("In the absence of an agreement to the contrary, an agent is free
10  to engage in competition with his principal after termination of his employment but
11  he may plan and develop his competitive enterprise during the course of his agency
12  only where the particular activity engaged in is not against the best interests of his
13  principal. . . . the protection of the principal's interest requires a full disclosure of
14  acts undertaken in preparation of entering into competition.").

15      In any event, the Court expressly found that Bryant "directly competed with
16  Mattel by entering into a contract with its competitor to produce a competing
17  produce while still employed by Mattel."  April 25, 2008 Order, at 5.  Defendants
18  have no basis to ask the Court to "advise the jury that preparations to compete are
19  insufficient to give rise to a claim for breach of fiduciary duty."  The Court ruled
20  that Bryant cannot defend his actions as "preparations to compete."  *Id.*

21      Finally, defendants' objection that the instruction should "inform the jury
22  that Mattel must prove it was harmed during Bryant's employment" is erroneous
23  and should be overruled.  Defendants confuse the issues of breach of fiduciary duty
24  and harm suffered as a result.  Although the breach of duty must occur during the
25  term of Bryant's employment, Mattel is entitled to recover for all harm caused by
26  such breach, even if the harm was caused after Bryant left Mattel.  Defendants fail
27  to cite any authority to justify their effort to unfairly and erroneously limit Mattel's
28

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

1   claim and available damages.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S SPECIAL JURY INSTRUCTION NO.**

**BREACH OF FIDUCIARY DUTY—PREVIOUS FINDINGS**

**OF THE COURT**

The Court has already found as a matter of law that Carter Bryant owed a fiduciary duty to Mattel while he was employed by Mattel, and that Mr. Bryant breached his fiduciary duty when he secretly entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.  Accordingly, Mattel's claim against Mr. Bryant for breach of fiduciary duty has been established as a matter of law.  However, the full scope of Mr. Bryant's liability for breach of fiduciary duty is for you to decide.

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE BREACH OF FIDUCIARY DUTY—PREVIOUS FINDINGS OF THE COURT

The preceding instruction is premature in that it does not account for Carter Bryant's pending motion for reconsideration of the Court's summary judgment findings concerning the duties owed by Bryant and the alleged breach thereof, which the Court has ordered shall be heard on May 19, 2008.  Further, even if the Court fails to grant Bryant's pending motion, this instruction is erroneous and highly prejudicial for the following reasons.

First, it is unnecessary and highly prejudicial to have a separate instruction entitled "Previous Findings of the Court."  Instead, the jury should simply be instructed that certain elements of a claim have been established or where appropriate, the requirement that Mattel prove a particular element should simply be eliminated.

Second, the instruction incorrectly states that "[a]ccordingly, Mattel's claim against Mr. Bryant for breach of fiduciary duty has been established as a matter of law."  This is flatly wrong—as the previous submitted instruction shows, Mattel still must show the remaining elements of its claim:  (1) that Mattel did not give informed consent to Mr. Bryant's conduct or otherwise ratify his conduct; (2) that Mattel was harmed during the term of Mr.  Bryant's employment; and (3) that Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

Third, compounding this error, this instruction erroneously concludes that the jury must determine the full scope of Bryant's liability.   However, the jury still must *determine* liability based upon a finding of all the elements for a breach of fiduciary duty claim. The Court's April 25, 2008 MSJ Order made no findings with respect to liability.

-67-

1     In the event the Court denies Bryant's pending Motion for Reconsideration,

2  and instructs the jury in accord with its April 25, 2008 MSJ Order over MGA

3  Parties and Bryant's objections, MGA Parties and Bryant submit that the

4  appropriate way to do so is in the instructions pertaining to each claim—so as not

5  to risk juror confusion with regard to which elements are affected by the Court's

6  April 25, 2008 MSJ Order or to prejudice to the MGA Parties and Bryant by

7  repeated references to the Court's findings.  MGA Parties and Bryant further

8  submit that it is unnecessary and highly prejudicial to refer to pretrial rulings of the

9  Court, rather than simply instructing the jury that Mattel has established certain

10  elements of a particular claim or removal of any reference to the need to prove a

11  certain element.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Contrary to defendants' purported objections that it is "unnecessary and highly prejudicial" to have separate instructions regarding the Court's previous findings, it is both necessary and appropriate to inform the jury of the Court's previous findings in the context of the claims the jury is to consider in Phase 1A of this trial.  Mattel's proposed instructions are clearer and less confusing than defendants' because they inform the jury of the elements of Mattel's claims, in conformance with the appropriate model instructions, and then inform the jury of the relevant findings previously made by the Court.

The jury should be informed that the Court already found that Bryant owed a fiduciary duty to Mattel, and that Bryant breached that duty when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 5-6.

Defendants' objection that the proposed jury instruction "does not account for [] Bryant's pending motion for reconsideration" is not well taken.  Defendants do not even attempt to articulate how the proposed jury instruction should "account for" Bryant's motion for reconsideration.  There is obviously no reason to inform the jury of a motion for reconsideration.  If the Court modifies its April 25, 2008 Order, Mattel will modify its proposed jury instructions.  But the instruction is proper as is based on the Court's rulings to date.

Defendants objections should also be overruled because they misstate the law.  As set forth in CACI No. 4102 and Mattel's proposed instructions, the correct statement of the law is that "Mattel did not give informed consent to Mr. Bryant's conduct;"  defendants' proposed addition of the phrase "or otherwise ratify Bryant's conduct," is not included in the model instruction, and wrongly and confusingly suggests that something less than informed consent might in fact constitute

1  informed consent.  There is also no basis for defendants' statement that Mattel must

2  prove it was harmed during Bryant's employment.  Defendants confuse the issues

3  of breach of fiduciary duty and harm suffered as a result.  Although the breach of

4  duty must occur during the term of Bryant's employment, Mattel is entitled to

5  recover for all harm caused by such breach, even if the harm was caused after

6  Bryant left Mattel.  Defendants fail to cite any authority to justify their effort to

7  unfairly and erroneously limit Mattel's claim and available damages.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

## MATTEL'S SPECIAL JURY INSTRUCTION NO. \_\_\_

## BREACH OF THE DUTY OF LOYALTY

Mattel also claims that it was harmed by Carter Bryant's breach of the duty of loyalty.  Mr. Bryant owed a duty of undivided loyalty to Mattel while he was employed by Mattel and was not permitted to take any action that was adverse to his employer.  To establish this claim, Mattel must prove all of the following:

1.  That Mr. Bryant was Mattel's employee;

2.  That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

3.  That Mattel did not give informed consent to Mr. Bryant's conduct;

4.  That Mattel was harmed; and

5.  That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

**Authority:**  CACI No. 4102; *Cal. Labor Code* § 2863; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs.*, Inc., 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863; *cf. Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1161 (9th Cir. 1987).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE

## BREACH OF THE DUTY OF LOYALTY

The preceding instruction is objectionable in that it does not advise the jury that it is required to determine the scope of the duty of loyalty at issue in order to establish that such a duty was breached. See 19 Williston on Contracts § 54:26 (4th ed. 2007); Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 410-11 (2007); Stokes v. Dole Nut Co., 41 Cal App. 4th 285 (1995). The instruction is also incorrect because  it does not explain that  Bryant's preparations to compete are insufficient to give rise to a claim for breach of duty of loyalty. See Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 346 (1966); accord Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2003); Am. Home Shield of Cal., Inc. v. Fidelity Nat'l Home Warranty Co., 2003 WL 21085278, at *12 (Cal. Ct. App. May 14, 2003); Edenbaum v. Dalton, 2002 WL 31474450 at **7-8 (Cal. Ct. App. Nov. 6, 2002); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409,  424-25 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp. v. Ferguson, 74 Cal. Rptr. 86, 92-93 (1968) (unpublished); see also Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983, 993 (D.C. Cir. 1998); Franklin Music Co. v. Am. Broad. Cos.,  616 F.2d 528, 532-33, 537 (3d Cir. 1979); Mercer Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219, 233-35 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161, 167 (S.D. Tex. 1977); Restatement (Third) of Agency § 8.04 cmt. c. Further, the instruction fails to state that Bryant's efforts to seek new employment cannot be a basis for finding a breach.

Finally, the instruction is objectionable as it does not specify that to establish the breach in question, Mattel must prove that Bryant directly competed with

1   Mattel during the term of his employment with Mattel in connection with his

2   development of the BRATZ sketches.  Further, the instruction fails to explain that

3   Mattel must show it was harmed during Bryant's employment by such direct

4   competition.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court. *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objections to the form of the proposed instruction should be overruled. Defendants' objections reflect an effort to impose limitations and restrictions on the duty of loyalty not supported by California law.

First, defendants wrongly claim that the jury is required to determine the scope of the duty of loyalty prior to determining whether that duty was breached. There is no such requirement. The duty of loyalty is required as a matter of law of all employees. Indeed, the Court already ruled as a matter of law that Bryant owed a duty of loyalty to Mattel, and that Bryant breached that duty when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products." April 25, 2008 Order, at 6. As for the scope of the duty of loyalty, CACI No. 4102 and California law require "undivided loyalty"; it is not up to the jury to decide how much loyalty is required.

Defendants again wrongly claim that the jury should be informed that there is an exception to the duty of loyalty for any preparations to compete or seek new employment. California law is to the contrary. The "preparation to compete" defense is not available to Bryant here because it is undisputed that he concealed from Mattel and did not disclose his preparations to compete and acts competitive to Mattel. *Huong Que Inc. v. Liu*, 150 Cal. App. 4th 400, 414 (2007) ("while California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning, California law does not authorize and employeeto transfer his loyalty to a competitor....an employee, while employed, owes undivided loyalty to his employer"); *Daniel Orifice Fitting Co.*, 198 Cal. App. 2d 791, 800-01 (1962) (employee liable where he did not make "full

disclosure of acts undertaken in preparation for entering competition"); *Sequoia Vacuum Sys. v. Stransky*, 229 Cal. App. 2d 281, 287 (1964) ("the protection of the principals' interest requres a full disclosure of acts undertaken in preparation of entering into competition"); *Bancroft Whitney Co.v. Glen*, 64 Cal. 2d 327, 347 (1966) (failure to disclose acts of preparation actionable where the nondisclosure was harmful to the corporation).  The Court confirmed that Bryant cannot defend his actions as lawful preparations to compete.  *See* April 25, 2008 Order, at 5.

Finally, defendants' objections should be overruled because they misstate the law.  As set forth in CACI No. 4102 and Mattel's proposed instruction, the duty of loyalty is breached if Bryant "acted against Mattel's interest" while employed by Mattel; it is not necessary, as defendants wrongly suggest, that he "directly compet[ed] with Mattel."  Also, the requisite element is that "Mattel did not give informed consent to Mr. Bryant's conduct"; defendants' proposed addition of the phrase "or otherwise ratify his conduct," is not included in the model instruction, and wrongly and confusingly suggests that something less than informed consent might in fact constitute informed consent.  There is also no basis for defendants' statement that Mattel must prove it was harmed during Bryant's employment. Defendants confuse the issues of breach of fiduciary duty and harm suffered as a result.  Although the breach of duty must occur during the term of Bryant's employment, Mattel is entitled to recover for all harm caused by such breach, even if the harm was caused after Bryant left Mattel.  Defendants fail to cite any authority to justify their effort to unfairly and erroneously limit Mattel's claim and available damages.

**Authority:** CACI 4102; *Huong Que Inc v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs. Inc.*, 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863.

**MATTEL'S SPECIAL JURY INSTRUCTION NO. __**

**BREACH OF THE DUTY OF LOYALTY—PREVIOUS FINDINGS**

**OF THE COURT**

The Court has already found as a matter of law that Carter Bryant owed a duty of loyalty to Mattel while he was employed by Mattel, and that Mr. Bryant breached his duty of loyalty when he secretly entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.  Accordingly, Mattel's claim against Mr. Bryant for breach of the duty of loyalty has been established as a matter of law.  However, the full scope of Mr. Bryant's liability for breach of the duty of loyalty is for you to decide.

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE BREACH OF THE DUTY OF LOYALTY—PREVIOUS FINDINGS OF THE COURT

Mattel's preceding instruction is premature in that it does not account for Carter Bryant's pending motion for reconsideration of the Court's summary judgment findings concerning the duties owed by Bryant and the alleged breach thereof, which the Court has ordered shall be heard on May 19. 2008.  Further, even if the Court fails to grant Bryant's pending motion, this instruction is erroneous and highly prejudicial for the following reasons.

First, it is unnecessary and highly prejudicial to have a separate instruction entitled "Previous Findings of the Court."  Instead, the jury should simply be instructed that certain elements of a claim have been established or where appropriate, the requirement that Mattel prove a particular element should simply be eliminated.

Second, the instruction incorrectly states that "[a]ccordingly, Mattel's claim against Mr. Bryant for breach of the duty of loyalty has been established as a matter of law."  This is flatly wrong—as the previous submitted instruction shows, Mattel even acknowledges it still must show the remaining elements of its claim for breach of the duty of loyalty, which include (1) that Mattel did not give informed consent to Mr. Bryant's conduct or otherwise ratify his conduct; (2) that Mattel was harmed during the term of Mr. Bryant's employment; and (3) that Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

Third, compounding this error, this instruction erroneously concludes that the jury must determine the full scope of Bryant's liability.   However, the jury still must *determine* liability based upon a finding of all the elements for a breach of duty of loyalty claim. The Court's April 25, 2008 MSJ Order made no findings with respect to liability.

In the event the Court denies Bryant's pending Motion for Reconsideration, and instructs the jury in accord with its April 25, 2008 MSJ Order over MGA Parties and Bryant's objections, MGA Parties and Bryant submit that the appropriate way to do so is in the instructions pertaining to each claim—so as not to risk juror confusion with regard to which elements are affected by the Court's April 25, 2008 MSJ Order or to prejudice to the MGA Parties and Bryant by repeated references to the Court's findings.  MGA Parties and Bryant further submit that it is unnecessary and highly prejudicial to refer to pretrial rulings of the Court, rather than simply instructing the jury that Mattel has established certain elements of a particular claim or removal of any reference to the need to prove a certain element.

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3       Contrary to defendants' purported objections that it is "unnecessary and

4   highly prejudicial" to have separate instructions regarding the Court's previous

5   findings, it is both necessary and appropriate to inform the jury of the Court's

6   findings in the context of the claims the jury is to consider in Phase 1A of this trial.

7   Mattel's proposed instructions are clearer and less confusing than defendants'

8   because they inform the jury of the elements of Mattel's claims, in conformance

9   with the appropriate model instructions, and then inform the jury of the relevant

10  findings previously made by the Court.

11      The jury should be informed that the Court already ruled as a matter of law

12  that Bryant owed a duty of loyalty to Mattel, and that Bryant breached that duty

13  when he "secretly entered into a contract with Mattel's competitor, while still

14  employed by Mattel, to produce a line of fashion dolls to be marketed in direct

15  competition with Mattel's products."  April 25, 2008 Order, at 5-6.

16      Defendants' objection that the proposed jury instruction "does not account

17  for [] Bryant's pending motion for reconsideration" is not well taken.  Defendants

18  do not even attempt to articulate how the proposed jury instruction should "account

19  for" Bryant's motion for reconsideration.  There is obviously no reason to inform

20  the jury of a motion for reconsideration.  If the Court modifies its April 25, 2008

21  Order, Mattel will modify its proposed jury instructions.  But the instruction is

22  proper as is based on the Court's rulings to date.

23      Finally, defendants' objections should be overruled because they misstate the

24  law.  As set forth in CACI No. 4102 and Mattel's proposed instruction, the

25  requisite element is that "Mattel did not give informed consent to Mr. Bryant's

26  conduct"; defendants' proposed addition of the phrase "or otherwise ratify his

27  conduct," is not included in the model instruction, and wrongly and confusingly

28  suggests that something less than informed consent might in fact constitute

1    informed consent.  There is also no basis for defendants' statement that Mattel must

2    prove it was harmed during Bryant's employment.  Defendants confuse the issues

3    of breach of duty and harm suffered as a result.  Although the breach of duty must

4    occur during the term of Bryant's employment, Mattel is entitled to recover for all

5    harm caused by such breach, even if the harm was caused after Bryant left Mattel.

6    Defendants fail to cite any authority to justify their effort to unfairly and

7    erroneously limit Mattel's claim and available damages.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
## AND DUTY OF LOYALTY

The plaintiff, Mattel, claims that MGA and MGA's CEO Isaac Larian aided and abetted Carter Bryant's breaches of fiduciary duty and breaches of the duty of loyalty. To establish that MGA and/or Mr. Larian are liable for aiding and abetting breach of fiduciary duty or breach of the duty of loyalty, Mattel must prove that:

1.     Mr. Bryant's conduct constituted a breach of duty or duties;

2.     MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties; and

3.     MGA and/or Mr. Larian gave substantial assistance or encouragement to Mr. Bryant to breach his duty or duties.

Financial gain and self-interested profit on the part of MGA or Mr. Larian can corroborate the knowledge and substantial assistance elements of aiding and abetting Mr. Bryant's breach or breaches of any duty owed to Mattel.

**Authority:** *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118, 1127-28 (C.D. Cal. 2003); *In re First Alliance Mortgage Co.*, 471 F.3d 977, 994-95 (9th Cir. 2006).

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY

The preceding instruction is objectionable to the extent it suggests that proving all the elements as against <u>either</u> MGA <u>or</u> Larian establishes the liability of both. The instruction is also premature in that it does not account for Carter Bryant's pending motion for reconsideration of the Court's summary judgment findings concerning the duties owed by Bryant and the alleged breach thereof, which the Court has ordered shall be heard on May 19, 2008. Therefore, the instruction is further objectionable as it does not require the jury to determine whether Bryant owed the duties in question, <u>see</u> <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574 (2005), and fails to advise the jury that Bryant's preparations to compete cannot give rise to a breach of any duty and, therefore, cannot serve as a basis for Mattel's aiding and abetting claims against MGA and Larian.  <u>See</u> <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 346-47 (1966).

The instruction is also incomplete, as it fails to specify that <u>actual</u> knowledge on behalf of MGA and Larian of the specific wrong they substantially assisted is required to find them liable for aiding and abetting; moreover, it omits the definition of actual knowledge.  To prevail on an aiding and abetting claim under California law,  the plaintiff must show "***actual knowledge*** of the primary violation." <u>Neilson v. Union Bank of California, N.A.</u>,  290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (citing, <u>inter alia</u>, <u>Cope v. Price Waterhouse</u>, 990 F.2d 1256, 1993 WL 102598, at *6 (9th Cir. Apr. 7, 1993) (Unpub. Disp.) ("The Second Restatement of Torts also supports a finding that actual knowledge is the proper standard for a claim of aiding and abetting fraud. … the term 'knows' does not include both actual knowledge and recklessness. When the drafters of the

1  Restatement meant to include recklessness as an element of liability, they did so

2  explicitly"), and Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988) ("A defendant

3  can be held liable as a cotortfeasor on the basis of acting in concert only if he or

4  she *knew* that a tort had been, or was to be, committed, and acted with the intent of

5  facilitating the commission of that tort")).  See also Resolution Trust Corp. v.

6  Rowe, 1993 WL 183512, at *5 (N.D. Cal. Feb. 8, 1993) ("Under California law,

7  actual knowledge and intent are required to impose aiding and abetting

8  liability."),citing Hashimoto v. Clark, 264 B.R. 585, 598 (D. Ariz. 2001) (under

9  California law, "[t]he requisite degree of knowledge for an aiding and abetting

10  claim is actual knowledge. This means Trustee must come forward with evidence

11  to show that Safrabank knew Clark was breaching a duty owed Sheffield."), and

12  Gerard, 204 Cal. App. 3d at 983.

13       The instruction also fails to specify that a substantial causal connection

14  between MGA and Larian's conduct and the harm to Mattel is required and that the

15  "substantial assistance" requirement is inversely related to the knowledge factor.

16  See Resolution Trust Corp. v. Rowe, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8,

17  1993) (inverse relationship between demonstration of knowledge and substantial

18  assistance); Mendelsohn v. Capital Underwriters, Inc., 490 F. Supp. 1069, 1084

19  (N.D. Cal. 1979) (substantial causal connection).

20       The instruction also is erroneous in its inclusion of language that "[f]inancial

21  gain and self-interested profit on the part of MGA or Mr. Larian can corroborate

22  the knowledge and substantial assistance elements of aiding and abetting", which

23  suggests that this is an additional element of the claim.  In fact, the Neilson court

24  rejected a contention that plaintiffs were required to show that "personal financial

25  gain is an element of aiding and abetting a breach of fiduciary duty" and held that

26  "financial gain … should not be viewed as an element of the tort."  Neilson, 290

27  F. Supp. 2d at 1128-29.  Specifically, the Neilson court rejected the exact analysis

28  relied on by Mattel here in citing Heckmann v. Ahmanson, 168 Cal. App. 3d 119,

127 (1985), because "[h]aving reviewed <u>Heckmann</u> carefully, the court concludes that it stands for the unremarkable proposition that one who knows of a fiduciary's breach of duty and substantially assists it is liable as an aider and abettor. The court's reference to 'reaping the benefit,' offhand as it is, cannot be seen as adding an element to the tort." <u>Neilson</u>, 290 F. Supp. 2d at 1128.  Thus, the <u>Neilson</u> court denied defendants' motion to dismiss based on failure to allege financial gain and instead suggested that financial gain "should not be viewed as an element of the tort, but as evidence of knowledge, substantial assistance, or both." <u>Id.</u>  In dicta, the <u>Neilson</u> court mused about the potential relevance of evidence of profit and financial gain, but because the court was resolving a motion to dismiss, any such loose language is plainly dicta and not a binding statement of California law. Moreover, no California court has ever held that financial gain and self-interested profit corroborate knowledge and substantial assistance and, to the extent <u>Neilson</u> can be so read, it should not be followed as it does not reflect current California law.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction accurately sets forth the requirements for aiding and abetting under California law.  Contrary to defendants' suggestion, this instruction does not suggest that the jury may find both MGA and Larian liable if Mattel proves its claim against either.  Mattel asserts liability as to both MGA and MGA's CEO, and this proposed instructions appropriately asks the jury to consider each of their actions.

Defendants' objections to this proposed instruction should be overruled to the extent they are contrary to the Court's April 25, 2008 Order.  The Court already ruled that Bryant owed a fiduciary duty and duty of loyalty to Mattel, and that Bryant breached those duties when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 5-6.  Moreover, defendants have no basis to ask the Court to "advise the jury that Bryant's preparations to compete cannot give rise to a breach of any duty" because the Court already found that Bryant cannot defend his actions as "lawful preparations to compete" because he "directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel." *Id.* at 5.

Defendants' objections also should be overruled because they misstate the law for aiding and abetting and preparations to compete, and fail to properly account for the role of financial gain and self-interested profit in determining knowledge and substantial assistance.  As Mattel's proposed instruction properly states, there are three elements necessary to establish a claim for aiding and abetting breach of fiduciary duty:  that Carter Bryant's conduct constituted a breach of fiduciary duty; that MGA and/or Isaac Larian knew that Bryant's conduct constituted a breach of fiduciary duty; and that MGA and/or Mr. Larian gave

substantial assistance or encouragement to Mr. Bryant to breach his fiduciary duty. *See* Mattel's Proposed Jury Instructions, at 17.  Defendants' objection, which conflates MGA and Mr. Larian, wrongly suggests that both must be found to have the requisite knowledge and have provided the requisite assistance.  Defendants also erroneously assert that MGA and Larian must have "had actual knowledge of the specific wrong they substantially assisted."  That is incorrect.  California courts have held that even "ordinary business transactions" can satisfy the substantial assistance element.  *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145 (2005) (ordinary business transactions by bank sufficient to constitute substantial assistance).  Aiding and abetting does not require a defendant to agree to join the wrongful conduct in the way one joins a conspiracy.  Nor does it require "actual knowledge of the specific wrong they substantially assisted."  It is enough that there is knowledge of the acts giving rise to the breach.

Defendants also misstate the "preparation to compete" doctrine, omitting the requirement that a fiduciary cannot put a competitor's interests ahead of his own employer's, neglecting to include the disclosure requires for preparations to compete, and suggesting, wrongly, an unlimited right to be paid by a new employer.

Finally, defendants' proposed instruction fails to include the well-established principle of California law that "financial gain and self-interested profit corroborate the elements of aiding and abetting."  *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1127-28 (C.D. Cal. 2003).  If defendants reap the benefit of participating in a breach of fiduciary duty, they cannot disclaim the burden of liability.  Contrary to Defendants' objections, Mattel's proposed instruction does not make financial gain and self interested profit an element of aiding and abetting. It merely informs the jury that they can "corroborate" the elements of this claim. Defendants' suggestions that the "substantial assistance" requirement is inversely related to the knowledge factor is unsupported by fact and law, and inconsistent

1   with the above-stated rule.  No such instruction is appropriate or necessary on the

2   facts of this case.  The only authority cited by defendants for such an "inverse

3   relationship" rule – *Resolution Trust Corp. v. Rowe*, 1993 WL 183512 at *6 (N.D.

4   Cal. Feb. 8, 1993) – relates to the constitutional requirements of standing.

5

6       **Authority:**  *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1119

7   (C.D. Cal. 2003) (enough if there is knowledge of acts giving rise to breach); *Berg*

8   *& Berg Enter. LLC v. Sherwood Partners, Inc,* 131 Cal. App. 4th 802, 823 n. 10

9   (2005) (aiding and abetting does not require that a defendant agree to join the

10  wrongful conduct); *Heckman v. Ahmanson*, 168 Cal. App. 3d 119, 127 (1985) (if

11  defendant reaps the benefits of breach of fiduciary duty he cannot disclaim the

12  burden of liability); *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145

13  (2005) (ordinary business transactions by bank sufficient to constitute substantial

14  assistance); *Daniel Orifice Fitting Co*., 198 Cal. App. 2d 791, 800 -01 (1962) (full

15  disclosure required of acts taken in preparation for competition); *Sequoia Vacuum*

16  *Sys. v. Stransky,* 229 Cal App. 2d 281, 287 ((1964) (same).  Compare *Resolution*

17  *Trust Corp. v. Rowe*, 1993 WL 183512, at *6 (N.D. Cal. 1993) (dealing with

18  payment of "advance" to secure future employment of at-will employee).

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ____

## AIDING AND ABETTING BREACH OF DUTY—

## PREVIOUS FINDINGS OF THE COURT

The Court has already found as a matter of law that Carter Bryant breached his fiduciary duty and duty of loyalty to Mattel when he secretly entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. Accordingly, if you find that MGA or Isaac Larian knew that Mr. Bryant's conduct constituted a breach of these duties and gave substantial assistance or encouragement to Mr. Bryant to so act, you should find MGA and/or Mr. Larian liable for aiding and abetting Mr. Bryant's breaches of duty.

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**AIDING AND ABETTING BREACH OF DUTY—PREVIOUS**

**FINDINGS OF THE COURT**

The preceding instruction is premature in that it does not account for Carter Bryant's pending motion for reconsideration of the Court's summary judgment findings concerning the duties owed by Bryant and the alleged breach thereof, which the Court has been ordered shall be heard on May 19, 2008. The instruction is also incomplete, as it fails to specify that <u>actual</u> knowledge on behalf of MGA and Larian of the specific wrong they substantially assisted is required to find them liable for aiding and abetting; moreover, it omits the definition of actual knowledge. See <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1118-20 (C.D. Cal. 2003). The preceding instruction is also objectionable to the extent it suggests that proving all the elements as against <u>either</u> MGA <u>or</u> Larian establishes the liability of both. Finally, the instruction fails to specify that a substantial causal connection between MGA and Larian's conduct and the harm to Mattel is required and that the "substantial assistance" requirement is inversely related to the knowledge factor. See <u>Resolution Trust Corp. v. Rowe</u>, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between demonstration of knowledge and substantial assistance); <u>Mendelsohn v. Capital Underwriters, Inc.</u>, 490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (substantial causal connection). Further, even if the Court fails to grant Bryant's pending motion, this instruction is erroneous and highly prejudicial for the following reasons.

In addition, it is unnecessary and highly prejudicial to have a separate instruction entitled "Previous Findings of the Court." Instead, the jury should simply be instructed that certain elements of a claim have been established or where appropriate, the requirement that Mattel prove a particular element should simply be eliminated.

In the event the Court denies Bryant's pending Motion for Reconsideration, and instructs the jury in accord with its April 25, 2008 MSJ Order over MGA Parties and Bryant's objections, MGA Parties and Bryant submit that the appropriate way to do so is in the instructions pertaining to each claim—so as not to risk juror confusion with regard to which elements are affected by the Court's April 25, 2008 MSJ Order or to prejudice to the MGA Parties and Bryant by repeated references to the Court's findings.  MGA Parties and Bryant further submit that it is unnecessary and highly prejudicial to refer to pretrial rulings of the Court, rather than simply instructing the jury that Mattel has established certain elements of a particular claim or removal of any reference to the need to prove a certain element.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Contrary to defendants' purported objections that it is "unnecessary and highly prejudicial" to have separate instructions regarding the Court's previous findings, it is both necessary and appropriate to inform the jury of the Court's findings in the context of the claims the jury is to consider in Phase 1A of this trial. Mattel's proposed instructions are clearer and less confusing than defendants' because they inform the jury of the elements of Mattel's claims, in conformance with the appropriate model instructions, and then inform the jury of the relevant findings previously made by the Court.

Defendants' objection that the proposed jury instruction "does not account for [] Bryant's pending motion for reconsideration" is not well taken. Defendants do not even attempt to articulate how the proposed jury instruction should "account for" Bryant's motion for reconsideration. There is obviously no reason to inform the jury of a motion for reconsideration. If the Court modifies its April 25, 2008 Order, Mattel will modify its proposed jury instructions. But the instruction is proper as is based on the Court's rulings.

Defendants also object that the proposed instruction "fails to specify" that Mattel must demonstrate a causal connection between defendants' conduct and the harm to Mattel. Such an addition is improper and unnecessary in an instruction informing the jury of the Court's prior findings.

Finally, defendants' objections should be overruled because they misstate the law for aiding and abetting and preparations to compete, as set forth in Mattel's statement in support of its proposed jury instruction regarding Aiding and Abetting Breach of Fiduciary Duty and Duty of Loyalty.

1

## **CACI 2100**

2

## **CONVERSION—ESSENTIAL FACTUAL ELEMENTS**

3

4      Mattel claims that the defendants, Carter Bryant, MGA, MGA's CEO Isaac

5  Larian and MGA Hong Kong, wrongfully exercised control over Mattel's property,

6  including tangible Bratz works such as Mr. Bryant's drawings.  To establish this

7  claim, Mattel must prove all of the following:

8      1.    That Mattel was the rightful owner of the property at issue;

9      2.    That any of the defendants intentionally took possession of such

10  property for a significant period of time;

11      3.    That Mattel did not consent;

12      4.    That Mattel was harmed; and

13      5.    That any one of the defendants' conduct was a substantial factor in

14  causing Mattel's harm.

15

16      **Authority:**  CACI No. 2100.

17

18

19

20

21

22

23

24

25

26

27

28

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE CONVERSION—ESSENTIAL FACTUAL ELEMENTS

The preceding instruction is objectionable to the extent Mattel asserts a claim for conversion in Phase One against MGA. According to Mattel MSJ, there is no conversion claim asserted against MGA in Phase One. (See Mattel MSJ at 50:18-20.) The instruction is further objectionable to the extent it does not advise the jury that a conversion claim cannot be based upon discarded property. See Ananda Church of Self-Realization v. Mass. Bay Ins. Co., 95 Cal. App. 4th 1273, 1282 (2002). Finally, the instruction is objectionable because it does not specify all the property Mattel is claiming the defendants converted.  This is particularly objectionable because Mattel cannot assert any claim to intangible property pursuant to the Court's April 25, 2008 MSJ Order.  To avoid juror confusion or error on this issue, Mattel must list precisely what property is at issue in its claim.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court.  Accordingly, defendants' objection to the form of the proposed instruction should be overruled.  It is not necessary for Mattel to "list precisely what property is at issue"—the proposed instruction appropriately informs the jury regarding the law they should apply to the evidence of conversion presented at trial.

As set forth in the operative pleading, Mattel is asserting a claim for conversion against MGA.  *See* Mattel's Counterclaims, at 72.  And, according to the Court's Bifurcation Order, as clarified, Mattel's claims for conversion of Bratz-related materials is to be determined in Phase 1.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ____

## ADVERSE INFERENCE FROM SPOLIATION

The plaintiff, Mattel, contends that the defendants, including Carter Bryant, MGA, Isaac Larian and/or MGA Hong Kong, did not take appropriate steps to preserve relevant evidence and destroyed such evidence. The defendants deny that contention.

If you find that relevant evidence that was within the defendants' control is missing or has been destroyed and that the evidence is missing because of the defendants' bad faith or negligent, unjustified or careless actions or inaction, you may infer that such evidence, if available now, would have been favorable to Mattel and adverse to the defendants.

Defendants' destruction of evidence was negligent, unjustified or careless if they had notice that the evidence might be relevant to this litigation when they destroyed the evidence or made the evidence unavailable. A person is under a duty to preserve evidence that he or she knows, or reasonably should know, could be relevant to a case.

**Authority:** *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)("[A] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior."); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) ("Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case."); *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, * 6 (N.D. Cal. 2004) ("In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that

1   destroyed it.") (citations omitted).  Importantly, "a finding of 'bad faith' is *not* a

2   prerequisite to this corrective procedure.  *See, e.g.*, *Glover*, 6 F.3d at 1330; *see*

3   *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001)

4   (culpable state of mind for an imposition of an adverse inference includes

5   negligence).  A litigant has a freestanding duty "to preserve what it knows, or

6   reasonably should know, is relevant in the action, is reasonably calculated to lead

7   to the discovery of admissible evidence, is reasonably likely to be requested during

8   discovery and/or is the subject of a pending discovery request."  *Housing Rights*

9   *Center v. Sterling*, 2005 WL 3320739, *3 (C.D. Cal. 2005).

10          An adverse inference jury instruction should be given where "[s]ufficient

11   evidence exists to permit a jury to determine the factual predicate" underlying a

12   claim of spoliation.  *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228,

13   234 (6th Cir. 2002).  "When a genuine question exists as to whether a party's loss

14   or destruction of evidence was negligent (or worse), it is appropriate to defer that

15   question to the jury, by instructing jurors that if they find that the spoliation of

16   evidence was at least negligent, they may infer that the missing evidence would

17   favor the non-spoliating party."  *One Beacon Ins. Co. v. Broadcast Development*

18   *Group, Inc.*, 2005 WL 2077499, *5 (6th Cir. 2005).

19

20

21

22

23

24

25

26

27

28

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE ADVERSE INFERENCE FROM SPOLIATION

The preceding instruction is objectionable to the extent it is duplicative of the instruction entitled Evidence of Spoliation. Furthermore, to the extent this instruction has any evidentiary basis, if at all, it should not be limited to the alleged spoliation by the defendants only. The instruction should be party-neutral, including any adverse inferences to be drawn from any such spoliation evidence introduced at trial – i.e., it should advise the jury that if any party introduces such spoliation evidence, the jury may assume that the evidence is or would have been favorable to the opposing party and adverse to the alleged spoliator. The preceding instruction is also objectionable to the extent it suggests that proving spoliation by either of the defendants establishes spoliation by all.  Furthermore, the Court recently denied Mattel's ex parte motion seeking to be heard on admitting evidence in support of its spoliation allegations and postponed the issue pending the Court's resolution of Bryant's Motion *in limine* No. 13.  See May 6, 2008 Minute Order.

Moreover, the giving of an "adverse inference" instruction—and the presentation of related spoliation evidence and argument—to the jury at trial is an "extreme" sanction that may be imposed by the Court only under certain limited circumstances.  Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 219-20 (S.D.N.Y. 2003) (adverse inference instruction is an "extreme" sanction that should "not be given lightly"); Thompson v. U.S. Dep't of Hous. & Urban Dev., 219 F.R.D. 93, 100 (D. Md. 2003) (describing sanction as "extreme"). Indeed, because the prejudicial impact of such an instruction is so pronounced, numerous courts have cautioned against the use of such instructions in all but the most egregious cases.  For example, in Morris v. Union Pac. R.R., 373 F.3d 896, 903 (8th Cir. 2004), the Eight Circuit explained:

1    An adverse inference instruction is a powerful tool in a jury trial.

2    When giving such an instruction, a federal judge brands one party as a

3    bad actor, guilty of destroying evidence that it should have retained

4    for use by the jury.  It necessarily opens the door to a certain degree of

5    speculation by the jury, which is admonished that it may infer the

6    presence of damaging information in the unknown contents of a

7    [missing document]. …  One distinguished court years ago cautioned

8    against use of an adverse inference instruction like the one given in

9    this case (there, involving an absent witness rather than missing

10   evidence), because "[t]he jury should not be encouraged to base its

11   verdict on what it speculates the absent witness would have testified

12   to, in the absence of some direct evidence."

13   373 F.3d at 900-01 (reversing jury verdict and remanding case for new trial

14   because adverse inference instruction "should not have been given" and defendant

15   Union Pacific was prejudiced by plaintiff counsel's argument of spoliation to the

16   jury) (citing Felice v. Long Island R.R. Co., 426 F.2d 192, 195 n.2 (2nd Cir. 1970)

17   (Friendly, J.)).  Similarly, in Zubulake the district court noted that  "[i]n practice,

18   an adverse inference instruction often ends litigation—it is too difficult a hurdle for

19   the spoliator to overcome.  The *in terrorem* effect of an adverse inference is

20   obvious." 220 F.R.D. at 219-20.

21        Because of the serious danger of prejudice posed by adverse inference

22   instructions, a party claiming spoliation must first demonstrate to the Court:  "'"(1)

23   the party with control over the evidence had an obligation to preserve it at the time

24   it was destroyed; (2) the party that destroyed the evidence had a sufficiently

25   culpable state of mind; and (3) some evidence suggests that a document or

26   documents relevant to substantiating the claim of the party seeking sanctions

27   would have been included among the destroyed files.'"  Housing Rights Ctr. v.

28   Sterling, No. CV. 03-859 DSF, 2005 WL 3320739, at *7 (C.D. Cal. Mar. 2, 2005)

1  (quoting <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 105 (2d

2  Cir. 2002)); <u>see also</u> <u>World Courier v. Barone</u>, 2007 WL 1119196, at *1 (N.D. Cal.

3  Apr. 16, 2007) (noting that federal courts "in California have adopted the Second

4  Circuit's 3-part test" and holding same); <u>AmeriPride Servs., Inc. v. Valley Indus.</u>

5  <u>Serv., Inc.</u>, 2006 WL 2308442, at *5 n.6. (E.D. Cal. Aug. 9, 2006) (same).

6         Additionally, even if spoliation is demonstrated to the Court, "a sanction for

7  destruction of evidence is appropriate only if the destruction prejudiced the

8  opposing party." <u>A. Farber & Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 193-94

9  (C.D. Cal. 2006); <u>see also</u> <u>Ingham v. U.S.</u>, 167 F.3d 1240, 1246 (9th Cir. 1999);

10 <u>Dillon v. Nissan Motor Co., Ltd.</u>, 986 F.2d 263, 267 (8th Cir. 1993) ("Before a

11 sanction for destruction of the evidence is appropriate, however, there must also be

12 a finding that the destruction prejudiced the opposing party.").  And even then the

13 Court must determine what type of sanction is appropriate, based upon:  "'(1) the

14 degree of fault of the party who altered or destroyed the evidence; (2) the degree of

15 prejudice suffered by the opposing party; and (3) whether there is a lesser sanction

16 that will avoid substantial unfairness to the opposing party and, where the

17 offending party is seriously at fault, will serve to deter such conduct by others in

18 the future.'" <u>Hamilton v. Signature Flight Support Corp.</u>, 2005 WL 3481423, at *3

19 (N.D. Cal. Dec. 20, 2005) (quoting <u>Schmid v. Milwaukee Elec. Tool Corp.</u>, 13

20 F.3d 76, 79 (3d Cir. 1994)); <u>see also</u> <u>Consolidated Aluminum Corp. v. Alcoa, Inc.</u>,

21 244 F.R.D. 335, 340 (M.D. La. 2006) (adverse inference instruction is "considered

22 drastic" and "courts generally try to avoid imposing them when lesser sanctions are

23 available.").

24        Until and unless a party satisfies its burden of demonstrating spoliation to

25 the Court, and the Court concludes that some sanction is warranted, the Court

26 should not give an adverse inference instruction based on alleged spoliation to the

27 jury.  <u>See, e.g.</u>, <u>Morris</u>, 373 F.3d at 903 (holding that counsel's arguments of

28 spoliation to jury were prejudicial and required a new trial where required

predicates for imposition of spoliation sanction were not satisfied); <u>Parkinson v. Guidant Corp.</u>, 315 F. Supp. 2d 760, 764 (W.D. Pa. 2004) (granting defendant's motion in limine to exclude spoliation evidence because plaintiff had not sufficiently demonstrated to the court that spoliation had occurred); <u>accord</u> <u>Green v. Baca</u>, 226 F.R.D. 624, 642-43 (C.D. Cal. 2005) (excluding evidence of alleged spoliation under Federal Rule of Evidence 403 because "[t]he court presently has no evidence before it that … defendant destroyed documents that were responsive to plaintiff's document requests").

"[W]hether the destruction of evidence warrants sanctions is based on factual findings made by the court" following an evidentiary hearing or similar proceeding. <u>Regent Ins. Co. v. Candle Corp. of Am.</u>, 2004 WL 2713251, at *2 n.4 (D. Minn. Nov. 24, 2004) (collecting cases); <u>see also</u> <u>Hamilton</u>, 2005 WL 3481423, at *3 ("Courts determinate the proper sanction for destruction of relevant evidence on a case-by-case basis.") (citing <u>Unigard Sec. Ins. Co. v. Lakewood Eng'g. & Mfg. Corp.</u>, 982 F.2d 363, 368 (9th Cir. 1992)). It is not a decision that is made by courts on the fly, without a full evidentiary record and careful consideration. Indeed, there are no cases, within or outside the Ninth Circuit, where the court elected to give an adverse inference instruction without a threshold evidentiary finding by the Court that the party's spoliation allegations had merit and was an appropriate issue for the jury to consider. <u>Cf.</u> <u>Regent Ins.</u>, 2004 WL 2713251, at *2 n.4 (whether to impose sanctions for spoliation usually determined through a pre-trial evidentiary hearing); <u>see also</u> <u>Morris</u>, 373 F.3d at 901, 903 (noting that district court conducted four days of "sanctions hearings" concerning the defendant's alleged destruction of documents); <u>Stevenson v. Union Pac. R.R. Co.</u>, 354 F.3d 739, 743 (8th Cir. 2004) (noting that the district court granted plaintiff's motion for sanctions after a three-day evidentiary hearing).

Here, Mattel has made no effort, much less a successful effort, to justify any evidentiary sanction against Bryant or the MGA Parties based upon alleged

1   spoliation, much less the extreme sanction of an adverse inference instruction.  As

2   the Court noted on May 7, 2008 in deny Mattel's *ex parte* application, Mattel has

3   known about such alleged spoliation for years and has never sought to have an

4   evidentiary sanction awarded to it.  Having failed to so, Mattel is not now entitled

5   to such an instruction.  Mattel's proposed special jury instruction on "evidence of

6   spoliation" is improper, without appropriate factual or legal support, and if given,

7   would be highly prejudicial.  The Court should reject this proposed special

8   instruction.  See, e.g., Morris, 373 F.3d at 903 (reversing jury verdict and

9   remanding for new trial because trial court's adverse inference instruction was not

10  warranted); Parkinson, 315 F. Supp. 2d at 764 (denying request for adverse

11  inference because plaintiff had not sufficiently demonstrated to the court that

12  spoliation had occurred); Green, 226 F.R.D. at 642-43; Zubulake, 220 F.R.D. at

13  219-20.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction is an appropriate instruction regarding spoliation.  It simply informs the jury that it *may* infer that spoliated evidence would have been favorable to Mattel and adverse to the defendants.  Mattel intends to introduce evidence at trial of defendants' spoliation of relevant evidence.  Defendants' objection that any instruction regarding spoliation should be "party-neutral" is unwarranted unless defendants have a basis to introduce evidence of spoliation.  They fail to articulate one in their lengthy objection (and the Court has found they have no such basis).

Defendants' lengthy objections to the merits of Mattel's spoliation instruction are misguided and premature.  These issues will be fully addressed in briefing on Bryant's *Motion in Limine* No. 13 to exclude evidence of spoliation.  The Court's May 6, 2008 Minute Order on Mattel's *ex parte* motion does not impact Mattel's ability to present evidence of spoliation to the jury.  It is beyond question that spoliation evidence may properly be introduced to a jury.  That Bryant may wish to present his own countervailing arguments on this point only highlights that the evidence is relevant and that the jury should be permitted to make its own inferences about spoliation issues.  *See Glover v. BIC Corp.*, 6 F.3d 1318, 1332 (9th Cir. 1993) ("The district court properly submitted all the evidence to the jury concerning the alleged spoliation of evidence."); *see also One Beacon Ins. Co. v. Broadcast Development Group, Inc.*, 2005 WL 2077499, at *5 (6th Cir. 2005) ("When a genuine question exists as to whether a party's loss or destruction of evidence was negligent (or worse), it is appropriate to defer that question to the jury.").

It is well established that "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover*, 6 F. 3d at 1329.  Such

1   power allows a trial court to exclude evidence of tampered-with evidence, admit

2   the introduction of the circumstances of the destruction of evidence, or permit the

3   jury to draw an adverse inference from the destruction of evidence.  *Id.*  No hearing

4   or prior sanctions finding is needed for the Court to issue such a permissive

5   inference instruction.  *See Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228,

6   234 (6th Cir. 2002) (adverse inference jury instruction should be given where

7   "[s]ufficient evidence exists to permit a jury to determine the factual predicate"

8   underlying a claim of spoliation); *One Beacon Ins. Co.*, 2005 WL 2077499 at *5-

9   *6 (affirming, without evidentiary hearing, permissive spoliation jury instruction

10  that "simply ensured that *if* the jury believed that the fault for destroying the

11  evidence lay at the door [of One Beacon], it was permitted, if it chose, to infer that

12  the missing [evidence supported defendant's case]").

13          Mattel's proposed instruction is appropriate in that it merely informs the jury

14  that it *may* draw an adverse inference based on spoliation.  *See Pace v. Nat'l

15  Railroad Passenger Corp.*, 291 F. Supp. 2d 93, 99 (D. Conn. 2003) (denying

16  motion for new trial where "instruction given by this court . . . merely allowed the

17  jury to draw an adverse inference."); *One Beacon Ins. Co.*, 2005 WL 2077499, at

18  *5 (where genuine question exists to whether destruction of evidence was

19  negligent or worse, "it is appropriate to defer that question to the jury, by

20  instructing jurors that *if they find* that the spoliation of evidence was at least

21  negligent, *they may infer* that the missing evidence would favor the non-spoliating

22  party") (emphasis added); *Nejo v. Tamaroff Buick Honda Isuzu Nissan*, 2004 WL

23  346036, at *8 (6th Cir. Feb. 23, 2004) (instruction that "jury 'may' infer that the

24  missing evidence would have been adverse to the plaintiff 'if' it believes that

25  plaintiff has provided 'no reasonable excuse' for the absence" properly

26  "recognize[s] the existence of a fact issue, and did not foreclose the jury from

27  considering [defendant's] excuse").

28

1    Evidence of spoliation of relevant evidence tends to prove both intent and

2    willfulness, which are elements of a number of Mattel's claims.  evidence of

3    Bryant's destruction of such information is relevant, and compelling, evidence of

4    Bryant's consciousness of guilt.  *See, e.g.*, *In re Parmalat Sec. Litig.*, 472 F. Supp.

5    2d 582, 584 -85 (S.D.N.Y. 2007) ("The destruction of evidence by the Parmalat

6    insiders is evidence of consciousness of guilt, which is relevant to . . . liability. . .

7    ."); *Livingston v. Isuzu Motors*, *Ltd.*,  910 F. Supp. 1473, 1494 (D. Mont. 1995)

8    (holding evidence of destruction of test data was "properly admitted" at trial

9    because the destruction was relevant and "defendants knew or should have known

10   of the importance of preserving the [evidence]"); *U.S. v. Van Metre*, 150 F. 3d 339,

11   352 (4th Cir. 1998) ("spoliation evidence is generally admissible to show the

12   defendant's consciousness of guilt. . . .").

13   This case is similar to *One Beacon Ins. Co. v. Broadcast Development

14   Group, Inc.*, 2005 WL 2077499, *5 (6th Cir. 2005), in which the Sixth Circuit

15   affirmed the district court's decision to admit spoliation evidence and to provide a

16   corresponding jury instruction.  In *One Beacon*, the court's decision to let the jury

17   decide whether to make an adverse inference as a result of destroyed evidence

18   arose not from a motion for sanctions, but rather, simply from the defendant

19   proposing the instruction.  In rejecting the plaintiff's argument that it was entitled

20   to a new trial, the Sixth Circuit stated the instruction was appropriate because it

21   "simply ensured that *if* the jury believed that the fault for destroying the evidence

22   lay at the door [of One Beacon], it was permitted, if it chose, to infer that the

23   missing [evidence supported defendant's case]." *Id.* at *6 (emphasis added).  That

24   is exactly what Mattel proposes here.  All the parties will have the opportunity to

25   present evidence on these issues.  Mattel's proposed instruction, which permits the

26   jury to make an adverse inference if it believes one is warranted, is appropriate and

27   supported by the law. *See One Beacon*, 2005 WL 2077499, at *5 ("When a

28   genuine question exists as to whether a party's loss or destruction of evidence was

negligent (or worse), it is appropriate to defer that question to the jury, by instructing jurors that if they find that the spoliation of evidence was at least negligent, they may infer that the missing evidence would favor the non-spoliating party."); *Rogers*, 276 F.3d at 234 (adverse inference jury instruction should be given where "[s]ufficient evidence exists to permit a jury to determine the factual predicate" underlying a claim of spoliation); *Pace*, 291 F. Supp. 2d at 97 (approving permissive inference spoliation instruction without any prior hearing); *Kelley v. United Airlines, Inc.*, 176 F.R.D. 422, 428 (D. Mass. 1997) (declining to enter judgment against defendant based on spoliation, and instead determining "at trial [to] permit the plaintiffs to lay the foundation which will entitle them to an instruction on a permissive adverse inference against United without respect to the destruction of the documents."); *Mayes v. Black & Decker (U.S.), Inc.*, 931 F. Supp. 80, 84-85 (D.N.H. 1996) (declining to impose dismissal sanction based on spoliation and postponing decision to give instruction:  "whether the lesser sanction of a 'spoliation inference' will be imposed awaits the development of further testimony during the course of the trial" and noting "the adverse inference is permissive, not mandatory. If, for example, the factfinder believes that the [evidence was] destroyed accidentally or for an innocent reason, then the factfinder is free to reject the inference.").

Mattel will obviously modify its proposed instructions regarding spoliation if necessary to conform to any rulings by the Court on these issues.  But Mattel's proposed introductory instruction regarding spoliation is appropriate and necessary.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS

The defendants contend that Mattel's lawsuit was not filed within the time set by law.  This time is called the "statute of limitations."

The statutes of limitations for Mattel's claims are different.  For Mattel's claims of aiding and abetting breach of fiduciary duty and breach of duty of loyalty, and interference with contract, the statutes of limitations are two years.  For Mattel's claim of conversion, the statute of limitations is three years.  For Mattel's claims of breach of contract, breach of fiduciary duty and breach of duty of loyalty, the statutes of limitations are four years.

To succeed on their statute of limitations defense, the defendants must prove that Mattel's claimed harm occurred more than two, three or four years prior to April 27, 2004 (the time period depends on the claim) unless Mattel proves that two, three or four years prior to April 27, 2004 (the time period depends on the claim), it did not discover, and did not know of facts that would have caused a reasonable person to suspect the generic elements of its causes of action – specifically, that Carter Bryant created the Bratz works at issue while employed by Mattel and that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel.

With respect to the claims that Mattel asserts against the MGA defendants (as opposed to its claims against Bryant individually), the time for Mattel to file an action did not start running until Mattel additionally discovered, or knew of facts that would have caused a reasonable person to suspect, that MGA and Isaac Larian knew that Mr. Bryant was a Mattel employee at the time that Mr. Bryant presented MGA with the Bratz pitch materials.

Mattel was not required to bring a lawsuit based on suspicions alone.  Each respective statute of limitations began to run only when Mattel had or should have had an awareness of facts sufficient to identify the particular claim.

**Authority:**  CACI 4120 (modified); CACI 455 (modified); 17 U.S.C. § 507(b); Cal. Code Civ. Pro. § 339(1);  Cal. Code Civ. Pro. § 338(c); *Rambus Inc. v. Samsung Electronics Co.*, 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis added); *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (a copyright infringement claim accrues when the plaintiff knows of the infringement or is chargeable with such knowledge); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "'an awareness of sufficient facts to identify a particular cause of action… [It does] not mean the kind of notice -- based on hints, suspicions, hunches or rumors -- that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit.'" ) (citation omitted).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS**

The preceding instruction is objectionable to the extent it assumes that Mattel's claims relate-back to its April 2004 complaint. As the MGA Parties showed in their summary judgment papers, Mattel failed to satisfy the requirements for "relation-back" for claims against new parties; this issue is currently under submission before the Court. Mattel also failed to satisfy the relation-back requirements for any new claims asserted against Bryant.  The instruction is also objectionable to the extent it applies "discovery rule" to all of Mattel's claims. However, "discovery rule" does not apply to Mattel's claims for intentional interference with contract and conversion.  See Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000) (interference with contract); Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991) (interference with contract); AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal. App. 4th 631, 639 (2006) (conversion).

Furthermore, the instruction is objectionable to the extent it misstates the "discovery rule" standard under California law. In California, inquiry notice is triggered by a ***mere suspicion*** or any reason to ***suspect*** that wrongdoing has taken place.  See Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1111 (1988) ("[o]nce the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights") (emphasis added); see also Fox v. Ethicon Endo-Surgery, 35 Cal. 4th 797, 803 (2005) ("a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action") (emphasis added). The suspicion need not be of the specific claim eventually sued upon: under California law, plaintiff "need not be

1    aware of the specific 'facts' necessary to establish the claim" in order for a cause

2    of action to accrue. Nor need he be aware of the particular legal theory that will

3    support it. His claim accrues "when, simply put, he at least 'suspects ... that

4    someone has done something wrong' to him." Soliman v. Philip Morris Inc., 311

5    F.3d 966, 971-72 (9th Cir. 2002), citing Norgart v. Upjohn Co., 21 Cal. 4th 383,

6    397 (1999), and Jolly, 44 Cal. 3d at 1110-11; id. at 1110 n.7 (the "wrong" that

7    plaintiff is to be aware of for purposes of the statute of limitations need not be in

8    any technical sense, but rather in accordance with its "lay understanding"); Butler

9    v. San Diego Dist. Attorneys Office, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27,

10   2007) (in California, "the statute of limitations begins to run when the plaintiff

11   suspects or should suspect that someone has done something wrong to him").

12       Mattel's reliance on Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1258,

13   1266 (N.D. Cal. 1991), in support of its proposition that it was insufficient for

14   Mattel to "only suspect[], but ha[ve] no evidence of, wrongdoing by any

15   defendant" to trigger the statute of limitations, has been already rejected. See

16   Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1218 (10th Cir. 2000), citing,

17   inter alia, Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634, 641 (N.D. Cal.

18   1993) (a follow-up opinion to that relied upon by Mattel, rejecting the very

19   position advocated by Mattel here). Similarly, Mattel's reliance on Garamendi v.

20   SDI Vendome S.A., 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003), for the

21   proposition that notice based on "hints, suspicions, hunches or rumors" is

22   insufficient to trigger the limitations period, is unavailing, as Garamendi dealt with

23   tolling of statute of limitations based on fraudulent concealment, not with the

24   general standard for inquiry notice. Moreover, contrary to Garamendi, under

25   California law, "a suspicion of wrongdoing, coupled with a knowledge of the harm

26   and its cause" is sufficient to end tolling based on fraudulent concealment. Snapp

27   & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App.

28   4th 884, 890-91 (2002); Hynix Semiconductor Inc. v. Rambus Inc., 2007 WL

3284060, at *3 (N.D. Cal. Nov. 2, 2007) ("fraudulent concealment doctrine does not toll the statute of limitations, no matter what the defendant has done to conceal his wrongs, if a plaintiff has a suspicion of wrongdoing and knowledge of the harm and its cause"); cf. Garamendi, 276 F. Supp. 2d at 1043 (relying on a decision by the D.C. Circuit, noting that "[n]o California court appears explicitly to have adopted this formulation" of the rule).

Finally, Bryant objects to this instruction as it misstates the statute of limitations for breach of the duty of loyalty, which is two years.  Cal. Code Civ. Pro. § 339.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

As explained in Mattel's motion for partial summary judgment and its opposition to defendants' motions for partial summary judgment, Mattel's claims against the MGA defendants relate back and are otherwise timely.

Contrary to defendants' assertion, the discovery rule applies to Mattel's conversion and interference with contract and statutory unfair competition. *See AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 639 (2006) (conversion); *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5-6 (2003) (interference with contract); *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002) (statutory unfair competition).

Defendants' contention that mere suspicion of *any* wrongdoing commences the running of limitation has no basis in law.  In fact, the proper standard – as set out by the California Supreme Court – is that a claim does not accrue that a claim does not accrue if the plaintiff merely suspects an injury, if "a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 805 (2005).  Thus, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim."  *Id.* at 813.  Mere suspicion that *something* may have harmed plaintiff is not enough.  *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "an awareness of

1  sufficient facts to identify a particular cause of action… [It does] not mean the kind

2  of notice -- based on hints, suspicions, hunches or rumors -- that requires a plaintiff

3  to make inquiries in the exercise of due diligence, but not to file suit." ) (citation

4  omitted).

5      Defendants mischaracterize *Garamendi* as suggesting that California courts

6  do not follow this "near-actual" notice formulation (originally announced in

7  *Hobson v. Wilson*, 737 F.2d 1, 25 (D.C. Cir. 1984)).  Defendants ignore that

8  *Garamendi*, just after noting that "[n]o California court appears *explicitly* to have

9  adopted this formulation," explained that "the California Court of Appeal has cited

10  *Hobson* approvingly … and the *Hobson* standard is consistent with language in

11  both state and federal cases applying California's fraudulent concealment doctrine."

12  *Garamendi*, 276 F. Supp. 2d at 1043 (emphasis added).

13      Defendants' attempt to distinguish *Garamendi* on the ground that it involved

14  allegations of fraudulent concealment fails because the case also discussed

15  standards for inquiry notice.  276 F. Supp. 2d at 1042-43.

16      Defendants' objection that the statute of limitations for breach of the duty of

17  loyalty is two years misstates the law.  This claim is analogous to a claim for

18  breach of fiduciary duty, which are indisputably governed by a four-year statute of

19  limitations period.  *See Hatch v. Collins*, 225 Cal. App.3d 1104, 1111 (1990)

20  (statute of limitations for a breach of fiduciary duty not amounting to actual fraud

21  is four years); *David Welch Co. v. Erskine & Tulley*, 203 Cal.App.3d 884, 893

22  (1988) ("where a cause of action is based on a defendant's breach of its fiduciary

23  duties, the four-year catchall statute set forth in Code of Civil Procedure section

24  343 applies") (citations omitted).  By analogy, the same statute of limitations

25  applies to Mattel's claim for breach of fiduciary duty.  Defendants fail to cite any

26  authority in support of their erroneous assertion that a breach of the duty of loyalty

27  (as opposed to fiduciary duty) is two years.

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## FRAUDULENT CONCEALMENT

If you find that the defendants concealed the facts that could have led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel, the statute of limitations period for Mattel to file its claims did not start to run until Mattel did not merely suspect, but actively had knowledge of, the specific wrongdoing above.

**Authority:** *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, _ Cal.4th _, 54 Cal. Rptr. 3d 735, 744 (2007) ("[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (reversing summary judgment on statute of limitations grounds where "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations"); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983).

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE

# FRAUDULENT CONCEALMENT

To the extent there is any evidentiary basis for the preceding instruction, it is objectionable in that it asserts that tolling based on fraudulent concealment ends only once Mattel "kn[ows] of the specific wrongdoing" at issue. Under California law, "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to end tolling based on fraudulent concealment. Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002); see also Soliman v. Philip Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need not be aware of the specific 'facts' necessary to establish the claim" in order for a cause of action to accrue. Nor need he be aware of the particular legal theory that will support it. His claim accrues "when, simply put, he at least 'suspects ... that someone has done something wrong' to him."), citing Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999), and Jolly, 44 Cal. 3d at 1110-11; id. at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of the statute of limitations need not be in any technical sense, but rather in accordance with its "lay understanding"); Butler v. San Diego Dist. Attorneys Office, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California, "the statute of limitations begins to run when the plaintiff suspects or should suspect that someone has done something wrong to him"). The instruction is also objectionable to the extent it suggests that fraudulent concealment by one defendant would necessarily toll the statute as to another defendant not found culpable in the alleged concealment. See Sanchez v. South Hoover Hospital, 18 Cal. 3d 93, 100 ("The rationale for the foregoing rule [of fraudulent concealment] is that the culpable defendant should be estopped from profiting by his own wrong[t]o the extent that it hindered an 'otherwise diligent' plaintiff in discovering his cause of action.") (emphasis added).

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Defendants' contention that mere suspicion of *any* wrongdoing commences the running of limitation has no basis in law.  In fact, the proper standard – as set out by the California Supreme Court – is that a claim does not accrue if the plaintiff merely suspects an injury, if "a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 805 (2005).  Thus, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim."  *Id.* at 813.  Even for inquiry notice, mere suspicion that *something* may have harmed plaintiff is not enough.  *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "an awareness of sufficient facts to identify a particular cause of action… [It does] not mean the kind of notice -- based on hints, suspicions, hunches or rumors -- that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit." ) (citation omitted).

In any event, defendants' objections ignore that their own authority holds that the statute of limitations begins to run when a plaintiff has knowledge of both the harm and its cause.  *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 890-91 (2002); *Hynix Semiconductor Inc. v. Rambus Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007).

1      Finally, defendants fail to offer any authority for the proposition that

2  fraudulent concealment operates to toll the statute of limitations against only the

3  defendant who caused the concealment. *Sanchez* stands for the uncontroversial

4  proposition that a defendant implicated in concealment cannot benefit by his

5  wrong.  Here, Mattel has alleged—and will prove—that all defendants participated

6  in a scheme to conceal the true origins of Bratz.  Indeed, the Court already ruled

7  that Bryant failed to communicate his inventions to Mattel and "secretly entered

8  into a contract with Mattel's competitor . . . to produce a line of fashion dolls to be

9  marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 6.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___ STATUTE OF LIMITATIONS—TOLLING AS A RESULT OF STAY OF PROCEEDINGS

When calculating the statute of limitations period for any claim, you must add to any limitations period the time during which proceedings in the case were stayed. The proceedings in the case were stayed from May 20, 2005 until May 20, 2006 (a total of 362 days).

**Authority:** *Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118, *1 (N.D. Cal. 2007) (holding that "statute of limitations should be equitably tolled for all putative class members … from March 2, 2007 [when action was stayed] until the stay is lifted.") ; *Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations…"); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) (permitting leave to add a RICO claim against new defendants and finding that the claim was timely because the "[t]he statute of limitations was equitably tolled during the stay of discovery").

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE STATUTE OF LIMITATIONS—TOLLING AS A RESULT OF STAY OF PROCEEDINGS**

The preceding instruction fails to advise the jury that Mattel cannot apply tolling based on the stay to the claims/parties that were not part of the case at the time the stay in question was entered. See Korody-Colyer Corp. v. Gen. Motors Corp., 828 F.2d 1572, 1575 (Fed. Cir. Cal. 1987); Lipman v. Rice, 213 Cal. App. 2d 474, 480 (1963); see also Friedman v. Estate of Presser, 929 F.2d 1151, 1156-57 (6th Cir. 1991) (stay cannot effect right of non-parties). This instruction is also inappropriate here because tolling only applies if a stay precludes filing of pleadings, which was not the case here.  In fact, Mattel in this case actually filed its First Amended Answer on September 20, 2005, while the stay was pending. See Korody-Colyer Corp., 828 F.2d at 1575 (denying tolling based on stay of proceedings, observing that plaintiff "points to absolutely no evidence indicating … that [he] was precluded from adding its … [new] claim to its pleadings"; adding that plaintiff "cannot now seize upon the stay as basis for excusing its slumber and its failure to amend its pleadings for more than four years").  Finally, this instruction fails to clarify for the jury that the tolling does not apply if the claims were already time-barred as of May 20, 2005.

1  **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Mattel's proposed jury instruction is well supported by the authorities cited,

4  which defendants fail to distinguish.  *See Castle v. Wells Fargo Financial, Inc.*,

5  2007 WL 1105118, *1 (N.D. Cal. 2007) (holding that "statute of limitations should

6  be equitably tolled for all putative class members … from March 2, 2007 [when

7  action was stayed] until the stay is lifted."); *Selph v. Nelson, Reabe & Synder, Inc.*,

8  966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations…");

9  *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) (permitting

10  leave to add a RICO claim against new defendants and finding that the claim was

11  timely because the "[t]he statute of limitations was equitably tolled during the stay

12  of discovery").

13        The cases defendants cite, however, are easily distinguishable.  In *Korody-*

14  *Colyer*, the plaintiff conceded at oral argument that the stay did not prevent it from

15  moving to amend the complaint.  That is not the case here.  Here, the stay clearly

16  applied to *all* proceedings and operated to prevent Mattel from moving for leave to

17  amend its Complaint.  Defendants' reference to Mattel's filing of an amended

18  answer in 2006 is unavailing.  Mattel moved to strike portions of MGA's complaint

19  before the Ninth Circuit granted Mattel's petition for an interlocutory appeal of the

20  district court's jurisdictional ruling.  The district court granted Mattel's motion in

21  part <u>after</u> the Ninth Circuit granted the petition and, notwithstanding the stay,

22  ordered Mattel to file an amended answer by September 19, 2006.  Mattel should

23  not be penalized for complying with the district court's order.

24        The *Lipman* case is not applicable because it was decided under California

25  procedural law, and specifically, the now-repealed California Code of Civil

26  Procedure Section 946, which is by definition a procedural, not substantive, rule

27  for the purposes of Erie Railroad.  Here, federal law governs.  The cases cited by

28  Mattel demonstrate that a stay tolls the statute of limitations in federal court.

1    Moreover, a more recent case indicates that even under California law, a stay

2    pending appeal tolls the applicable statute of limitations.  *See Korody-Colyer Corp.*

3    *v. Gen. Motors Corp.*, 208 Cal. App. 3d 1148, 1150-51 (1989) (noting that "[i]f the

4    underlying action is appealed, the statute is tolled during the pendency of the

5    appeal").  In any event, no California court appears to have followed *Lipman*.

6         Finally, as explained in Mattel's summary judgment briefing, all of its claims

7    are timely.  Therefore, it would be inappropriate and confusing to instruct the jury

8    that tolling does not apply to time-barred claims.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## STATUTE OF LIMITATIONS—RELATION BACK

4
5
6
7
8
9
10

You have heard evidence that Mattel filed certain of its claims on April 27, 2004, when it filed its complaint against Carter Bryant, and filed other claims on November 20, 2006, when it sought leave to amend its complaint.  (The Court granted Mattel leave to amend its complaint on January 12, 2007.)  Regardless of when any of these claims were actually filed, for purposes of determining whether Mattel's claims against the defendants were filed within the applicable statute of limitations period, all of Mattel's claims are deemed filed as of April 27, 2004.

11

12
13
14
15
16
17
18
19

**Authority:**  *Fed. R. Civ. P.* 15(c)(1)(B) (claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"); *Martel v. Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir. 1989) (new claim related back because it arose from the same transaction and occurrence as original claim); Court's January 12, 2007 Order, at 14, 15 (concluding that "through Rule 15(c) Mattel's intentional interference claim would relate back to when it filed its original complaint in April 2004, well before the statute of limitations expired").

20
21
22
23
24
25
26
27
28

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE STATUTE OF LIMITATIONS—RELATION BACK**

The preceding instruction is misleading, as it does not distinguish between new parties and existing parties at the time of the complaint's amendment. Neither MGA (HK) nor Larian were named as defendants in the '04 Complaint; therefore, they were new parties for purposes of Mattel's claims asserted in November 2006. See Union Pacific R.R. Co. v. Nev. Power Co., 950 F.2d 1429, 1432 (9th Cir. 1991) (for purposes of the "relation-back" doctrine, "[w]e differentiate between pleadings attempting to amend *claims* from those seeking to amend *parties*"). Thus, the "relation-back" rules that apply to MGA (HK) and Larian are different from those recited in the preceding instruction.

Under California law,[8] "relation-back" of claims against new parties is governed by the "Doe" defendant substitution procedure. McGee St. Prods. v. Workers' Comp. Appeals Bd., 108 Cal. App. 4th 717, 724-25 (2003) ("[T]he amendment here involves new party defendants. … [W]e refer to the familiar rule that under the Code of Civil Procedure, a complaint may not be amended to add a new defendant after the statute of limitations has run. The only exception to this rule is when the original complaint states a cause of action against a Doe defendant and the plaintiff is unaware of the true identity of that party at the inception of the suit.") (emphasis added). The necessity of utilizing the "Doe" defendant procedure under California law is further underscored by the fact that ***California generally does not allow "relation-back" of claims against new defendants***. See Barrington

---

[8]   It is unclear why Mattel relies on federal law in support of its instruction here, as there are no federal law claims that are to be presented to the jury in Phase 1A. The claims at issue in Phase 1A are governed by California law; therefore, it is California law that governs "relation-back" of Mattel's claims here, unlike its copyright claim, which is (footnote continued)

1  v. A.H. Robins Co., 39 Cal. 3d 146, 150 (1985) (under California law, for an

2  amended complaint to "relate back" to the original complaint, it must, inter alia,

3  "[s]eek recovery against the same defendants"), receded from on other grounds by,

4  Norgart v. Upjohn Co., 21 Cal. 4th 383 (1999).

5        The "Doe" substitution procedure precludes substitution where plaintiff was

6  aware of the proposed "Doe" defendant identity and was on notice of the facts

7  underlying his alleged liability at the time the original pleading was filed. See

8  Scherer v. Mark, 64 Cal. App. 3d 834, 840-841 (1976) (when it appears that

9  plaintiff knew both the person's identity and the facts giving rise to liability when

10 the complaint was filed, but did not name him, that person cannot be served as a

11 "Doe" defendant after the statute of limitations has run); see also McGee St.

12 Prods., 108 Cal. App. 4th at 725-26; cf. Dover v. Sadowinski, 147 Cal. App. 3d

13 113 (1983) (no "relation-back" where plaintiff knew all along that the defendant in

14 question was involved in the underlying controversy, albeit he did not know "how

15 deeply" the defendant was involved). Here, there was no mistake in identity of

16 either MGA (HK) or Larian at the time Mattel filed its '04 Complaint ***nor was***

17 ***there lack of notice as to their involvement in the development of the BRATZ***,

18 starting with their retention of Bryant in October 2000. Indeed, Mattel freely

19 admits that it had specific knowledge of Bryant's October 2000 agreement and

20 BRATZ drawings ***half a year*** before it filed the '04 Complaint and thus was well

21 aware of the key facts underlying its current claims. (SAA ¶ 36 (admitting that as

22 of November 24, 2003, Mattel had in its possession "a copy of Bryant's agreement

23 with MGA which showed that the date of Bryant's agreement with MGA predated

24 Bryant's departure from Mattel"); see also Mattel MSJ Opp'n at 25 (effectively

25 conceding that Mattel was on notice of both the MGA Parties' identities and the

26

27 reserved for Phase 1B. See Fed. R. Civ. P. 15(c)(3), advisory committee notes (1991
   Amendments).

28

1    alleged facts underlying Mattel's claims against them as of November 24, 2003,

2    when Mattel received a copy of Bryant's contract with MGA, as well as Bryant's

3    drawings).) The Court did not address this concession in its January 12, 2007

4    Order, nor did it have other evidence of Mattel's knowledge, as presented to the

5    Court via the MGA Parties' summary judgment submissions.

6        Finally, the above rules as to "relation-back" against new parties also apply

7    to MGA, despite MGA's intervention in the case in December 2004. This is

8    because the intervention was allowed pursuant to a stipulation between the parties,

9    and Mattel agreed to MGA's intervention "as a procedural matter" only. (See

10    December 7, 2004 Stipulation.) Moreover, the Ninth Circuit, in its decision on

11    jurisdiction, Mattel, Inc. v. Bryant, 446 F.3d 1011, 1013 (9th Cir. 2006),

12    underscored that "Mattel seeks no relief from MGA", which shows Mattel was on

13    notice that MGA did not consider itself a party via intervention. Indeed, the Ninth

14    Circuit said so despite Mattel's argument on appeal that MGA's intervention meant

15    that "this action now involves claims by Mattel against MGA". (Mattel's appellate

16    brief in Mattel, Inc. v. Bryant, found at 2005 WL 3134630, at *18.) Moreover,  in

17    her decision below, Judge Manella was also skeptical of Mattel's argument that

18    MGA took upon Mattel's claims via intervention. See Mattel, Inc. v. Bryant, 441

19    F. Supp. 2d 1081, 1098 n.15 (C.D. Cal. 2005) (distinguishing Mattel's sole

20    authority on the issue as involving intervenor that intervened only to avoid default

21    because the original defendant never appeared in the action). Judge Manella

22    eventually found it unnecessary to decide this issue. Indeed, Mattel cited no

23    authority allowing relation back of claims against an intervenor-***defendant***; and the

24    few authorities that deal with this precise issue hold ***against*** such relation back.

25    See, e.g., Davis v. Outdoor Equip. Co., 551 S.W.2d 72, 73 (Tex. Civ. App. 1977).

26    This is especially so where the interests for the intervenor and the original

27    defendant are not necessarily aligned, which is the case with Bryant's and MGA

28    Parties' interests here. See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th

1    Cir. 1996) (no relation back where interests of original party and intervenor were

2    adverse).

3         Even assuming, for argument's sake, that MGA's intervention permitted

4    relation back, and it does not, for purposes of the statute of limitations, MGA

5    would be deemed to have become a party as of the date it intervened, and <u>not when</u>

6    <u>the complaint was filed.</u>  <u>See</u> U.S. v. Randall & Blake, 817 F.2d 1188, 1192 (5th

7    Cir. 1987) (for statute of limitations, the date of intervention is the operative date).

8    Here, MGA did not intervene until December 7, 2004 and thus, even if the

9    intervention mattered, that would be the date for any "relation back" for purposes

10   of the statutes of limitations.

11        Because Mattel's preceding instruction is completely unsupported by law,

12   the MGA Parties propose a counter-instruction on this subject, as follows:

13        ***Counter-instruction***. You have heard evidence that Mattel filed its claims

14   against Carter Bryant on April 27, 2004, and filed its claims against MGA, MGA

15   (HK) and Larian on November 20, 2006.  If you find that Mattel knew of MGA,

16   MGA (HK) and Larian and their involvement in the wrongs alleged here prior to

17   filing of the complaint against Bryant, for purposes of determining whether

18   Mattel's claims asserted under California law were filed within the applicable

19   statute of limitations period, you must assume that November 20, 2006 was the

20   first time Mattel asserted its claims against MGA, MGA (HK) and Larian.

21

22

23

24

25

26

27

28

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Under California's relation back doctrine, the claims against the Doe defendants relate back to the date of the original complaint as long as (1) they are based on the same general set of facts as the original claims, and (2) Mattel's failure to name the Doe defendant by name was the result of Mattel's ignorance as to the basis for the defendants' liability at the time the lawsuit was originally filed. *See, e.g.*, *Smeltzley v. Nicholson Mfg. Co.*, 18 Cal. 3d 932, 939-40 (1977); *Austin v. Mass. Bonding and Ins. Co.*, 56 Cal. 2d 596, 600 (1961).

Here, the Court held that Mattel's counterclaims against MGA Hong Kong and Larian arise from the same general set of facts as the claims against Bryant. The original complaint alleged that Doe defendants assisted Bryant in violating his contractual, common law, and fiduciary obligations to Mattel by working for a Mattel competitor while remaining a Mattel employee, and misappropriating Mattel's property.  (Complaint ¶¶ 3, 4, 12).  The amended claims allege additional facts showing that the MGA defendants were complicit in that misconduct.  The amended and supplemental Phase One claims are based on the same general set of facts as the original claims.

Defendants assert that relation back is nonetheless improper because there was no mistake in identity of either MGA or Larian at the time Mattel filed its '04 Complaint nor was there lack of notice as to their involvement in the development of Bratz.  This is the same argument that MGA made in its opposition to Mattel's motion to amend.  (*See* MGA Opp., 20:17-22:17) (arguing leave to amend should be denied because "Mattel [cannot] credibly claim that it was unaware of the

1   alleged wrongdoing of which it accuses MGA and Mr. Larian now").  The Court

2   already considered and rejected this argument.[9]

3           Further, mere knowledge of any of the MGA parties' involvement in the

4   development of Bratz is wholly irrelevant.  As recognized in *General Motors*

5   *Corp. v. Superior Court*, 48 Cal. App. 4th  80, 593-94 (1996), even where the

6   plaintiff knows the existence and identity of the defendant, "the plaintiff is

7   'ignorant' within the meaning of the statute if he lacks knowledge of that person's

8   connection with the case or with his injuries."  *See also Fuller v. Tucker*, 84 Cal.

9   App. 4th 1163, 1170 (2000) ("The [Doe statute's] phrase 'ignorant of the name of a

10  defendant' is broadly interpreted to mean not only ignorant of the defendant's

11  identity, but also ignorant of the facts giving rise to a cause of action against that

12  defendant.").  Where, as here, "a lawsuit is initiated within the applicable period of

13  limitations . . . and the plaintiff has complied with section 474 by alleging the

14  existence of unknown additional defendants, the relevant inquiry is *what facts the*

15  *plaintiff actually knew* at the time the original complaint was filed."  *General*

16  *Motors*, 48 Cal. App. at 588 (emphasis in original).

17

---

18           [9] As the Court held:

19           MGA also argues that Mattel's effort to substitute MGA and its CEO,
             Isaac Larian, for the "Doe" defendants listed in its original complaint
20           is improper because Mattel knew of their identity when it filed the
             original complain.  The argument is misplaced.  As made clear by
21           Mattel, California law allows to substitute in a defendant for a "Doe"
             if the plaintiff was ignorant of that defendant's . . . basis for liability at
22           the time the complaint was filed. [citation] . . . MGA notes that the
             original complaint spoke of Bryant working for one of Mattel's
23           competitors and of that employee's theft of Mattel's intellectual
             property before leaving to work for that competitor.  At most, all this
24           shows is that Mattel knew that Bryant went to work for MGA, not that
             MGA or Mr. Larian encouraged Bryant's alleged unlawful behavior
25           recited in the original complaint.

26

27  Order 15-16.  Nothing has changed now.

28

1       With respect to relation back of claims against MGA, MGA's argument is

2   specious.  It is well-settled that, once a party intervenes under *Fed. R. Civ. P.*

3   24(a)(2), it takes on the status of a full party to the action.  *See U. S. v. Oregon*, 657

4   F.2d 1009, 1014 (9th Cir. 1981) (intervenors under *Fed. R. Civ. P.* 24(a)(2), enter

5   the suit with the status of original parties and are fully bound by all court orders);

6   *see also Northeast Clackamas Co. Elec. Coop., Inc. v Continental Gas Co.*, 221

7   F2d 329, 332-33 (9th Cir. 1955) (intervenor has the right to conduct discovery,

8   assert counterclaims against the original parties, participate at trial, and appeal);

9   *Brown v. Demco Inc.*, 792 F.2d 478, 480 (5th Cir. 1986) (if a motion to intervene is

10  granted, the intervenor is treated as if it were an original party and has equal

11  standing with the original parties).  With rights come responsibilities.  By

12  successfully intervening, MGA has made itself subject to complete adjudication of

13  all issues in the litigation between itself and Mattel.  *Id.*  Mattel's Phase One claims

14  against MGA, like its claims against Bryant himself, therefore relate back to the

15  April 2004 complaint.  Because all the claims against MGA arise out of the same

16  underlying misconduct (Bryant's work on Bratz during his Mattel tenure) as do

17  Mattel's original claims against Bryant, they fully satisfy the "transactional"

18  requirements of both federal and state law governing relation back.

19      Further, MGA's contention that its interests in this case do not align with

20  Bryant's is not credible.  Both the MGA parties and Bryant contend that Mattel

21  does not have any rights in Bratz.  Indeed, the MGA parties and Bryant's joined in

22  each others' motions for summary judgment.  Under these circumstances, Mattel's

23  claims against MGA relate back to the date of Mattel's complaint against Bryant.

24  *Cummings v. U.S.*, 704 F.2d 437 (9th Cir. 1983) (claimant's insurer's complaint in

25  intervention seeking to enforce its right of subrogation related back to filing of

26  claimant's original complaint); *DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d

27  826, 831-32 (9th Cir. 1963) (intervention of a party plaintiff that shared interests

28  with the original plaintiff related back for statute of limitations purposes).

1  Defendants' authority is distinguishable. In *U.S. v. Randall & Blake*, 817 F.2d

2  1188, 1192 (5th Cir. 1987), the court held merely that the additional plaintiff's

3  filing of a motion for intervention is equivalent to commencing an action for

4  statute of limitation purposes.  Here, however, MGA intervened as a *defendant*,

5  answering the complaint that Mattel filed in April 2004 against Bryant.  The claims

6  against it, therefore, relate back to the date of that complaint.

7          In any event, it is irrelevant whether Mattel's claims against MGA relate

8  back to the date of Mattel's complaint against Bryant or the date of MGA's

9  intervention.  The shortest statute of limitations is two years, and, even under

10  defendants' version of the events, Mattel did not have the requisite knowledge of

11  MGA's wrongdoing within two years before MGA intervened.

# PHASE 1B JURY INSTRUCTIONS

## Instructions to Be Read When Phase 1B Begins
## 17.0
## PRELIMINARY INSTRUCTION—COPYRIGHT

Mattel, the plaintiff, claims ownership of copyrights and seeks damages against the defendants, including Carter Bryant, MGA, MGA's CEO Isaac Larian and MGA Entertainment (HK) Limited ("MGA Hong Kong"), for copyright infringement. The defendants deny infringing the copyrights. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

### Definition of Copyright

The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

## Copyright Interests

The copyright owner may transfer to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, preparing a derivative work from, distributing, performing, or displaying, the copyrighted work.  To be valid, the transfer must be in writing.  The person to whom a right is transferred is called an assignee.

## How Copyright Is Obtained

Copyright automatically exists in a work the moment it is fixed in any tangible medium of expression.  The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work.  After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

## Plaintiff's Burden of Proof

In this case, Mattel, the plaintiff, contends that the defendants, including Carter Bryant, MGA, MGA's CEO Isaac Larian and MGA Hong Kong, have infringed Mattel's copyrights.  Mattel has the burden of proving by a preponderance of the evidence that it is the owner of the copyrights and that the defendants copied original elements of the copyrighted work.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

## Proof of Copying

To prove that the defendants copied Mattel's work, Mattel may show that the defendants had access to Mattel's copyrighted work and that there are substantial similarities between the defendants' work and Mattel's copyrighted work.

**Liability for Infringement**

One who reproduces, prepares derivative works from or distributes a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.  Copyright may also be infringed by vicariously infringing and contributorily infringing.

**Vicarious Infringement**

A person or company is liable for copyright infringement by another if the person or company has profited directly from the infringing activity and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.

**Contributory Infringement**

A person or company is liable for copyright infringement by another if the person or company knows or should have known of the infringing activity and induces, causes or materially contributes to the activity.

**Authority:**  9th Cir. Civ. Jury Instr. 17.0 (2007).

## OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE

## PRELIMINARY INSTRUCTION—COPYRIGHT

The MGA Parties and Bryant object to this instruction, which tracks 9th Circuit Civil Model Jury Instruction 17.0, to the extent that it uses the term "substantial similarities" rather than the correct term, "substantial similarity." The use of the term "substantial similarities" is inconsistent with applicable case law and appears to be used in this and other model instructions in error. Cf. Dang v. Cross, 422 F.3d 800, 805 (9th Cir. 2005) ("[u]se of a model jury instruction does not preclude a finding of error").

The MGA Parties and Bryant also object to this instruction to the extent that it states that, among other things, "ideas" and "concepts … cannot themselves be copyrighted." The copyright statute goes much further and states: "In no case does copyright protection for an original work of authorship extend to any idea … concept … regardless of the form in which it is described, explained, illustrated or embodied in such work." 17 U.S.C. § 102(b). Thus, it is not just that any of Carter Bryant's "ideas" and "concepts" could not be separately copyrighted, but that the ideas and concepts found or reflected in Bryant's sketches are not protectible, notwithstanding the issuance of a copyright, and must be filtered out as part of the process of analytic dissection. See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994); Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (N.D. Cal. 2007); Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007); Brookhaven Typesetting Servs. v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at *22 (N.D. Cal. Aug. 24, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176-97 (C.D. Cal. 2001). At a minimum, 9th Circuit Civil Model Jury Instruction 17.3, "COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION," must be given to explain this point to the jury. Mattel's proposed copyright jury instructions do not include this instruction.

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3       As required by the Court, the proposed instruction conforms to the Ninth

4   Circuit Model Instruction.  Defendants do not present any legitimate reason for the

5   Court to deviate from the Model Instruction.

6       Defendants fail to cite a single case holding that the term "substantial

7   similarities," which the Model Instruction uses, is improper.  Nor is there any

8   material difference between terms "substantial similarity" and "substantial

9   similarities," as they both describe the same legal concept.

10      As for defendants' second objection, the proposed instruction, which

11  conforms to the Ninth Circuit Model Instruction, sufficiently explains that ideas

12  and concepts are not copyrightable.  Defendants' "filtration" assertions—that ideas

13  "found in" Bryant's "sketches" must be filtered out notwithstanding their original

14  expression—not only contradict the Model Instruction but also are simply wrong.

15  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) ("The precise

16  factors evaluated for literary works do not readily apply to art works.  Rather, a

17  court looks to the similarity of the objective details in appearance."); Hon. Jon O.

18  Newman, *New Lyrics for an Old Melody:  The Idea/Expression Dichotomy in the*

19  *Computer Age*, 17 Cardozo Arts & Ent. L. J. 691, 698 (1999) (Filtration analysis

20  should not be applied in cases of visual works because "one cannot divide a visual

21  work into neat layers of abstraction in precisely the same manner one could with a

22  text."); *id.* at 697, nn.36-37 (criticizing *Country Kids 'N City Slicks, Inc. v. Sheen*,

23  77 F.3d 1280 (10th Cir. 1999), which applied filtration in a doll case).  Further, in

24  the Ninth Circuit, it is proper to consider ideas as part of the extrinsic test.  *See,*

25  *e.g., Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of

26  the extrinsic test, one must "consider[] whether two works share a similarity of

27  *ideas* and expression") (emphasis added); *Kouf v. Walt Disney Pictures &*

28  *Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (same).  In any event, Mattel's

1 proposed instruction on substantial similarity further explains to the jury that

2 uncopyrightable ideas may not be infringed under extrinsic test.  (As explained

3 elsewhere, consideration of ideas is proper under the intrinsic test.)  No further

4 explanation is necessary.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**17.1**

**COPYRIGHT—DEFINED**

**(17 U.S.C. § 106)**

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

(1)    Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)    Prepare derivative works based upon the copyrighted work;

(3)    Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)    Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes an assignee.  In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.1 (2007).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—DEFINED**

The preceding instruction is objectionable to the extent that it does not include a reference to the principle that mere possession of a copyrighted work does not constitute infringement. See Lapham v. Porach, 2007 U.S. Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007). The MGA Parties and Bryant also object to this instruction because it does not specify that a defendant's contribution of non-infringing fashions, accessories, or other materials to a BRATZ doll does not constitute copyright infringement even if the BRATZ doll itself infringes Mattel's copyright.  The MGA Parties and Bryant also object on the ground that the instruction improperly fails to explain that the jury must consider each defendant's acts separately to determine whether that defendant has engaged in an act that is an infringement of Mattel's copyrights.

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3       As required by the Court, the proposed instruction conforms to the Ninth

4   Circuit Model Instruction.  Defendants do not present any reason for the Court to

5   deviate from its standing order requiring the use of Model Instructions whenever

6   possible, nor do they contend that the Model Instruction is incorrect.

7       Defendants' contention that the proposed instruction, which is identical to

8   the model instruction, should inform the jury that the mere possession of

9   copyrighted work is not infringement is baseless.  Mattel does not contend that

10  defendants' mere possession of Bryant's drawings constitutes copyright

11  infringement.  Therefore, it would be confusing and misleading to alter the Model

12  Instruction to reflect defendants' irrelevant comment.

13      The proposed instruction also does not improperly fail to differentiate

14  among defendants.  Rather, the proposed instruction merely explains the legal

15  principles underlying a claim of copyright infringement.  Subsequent instructions

16  that pertain directly to factors that the jury must determine to hold defendants

17  liable for copyright infringement make clear that each defendant's liability must be

18  determined separately.

19      Defendants' contention that doll fashions or accessories are not

20  copyrightable lacks legal support.  Clothing is a non-protectable "useful article"

21  only if designed for people, not for dolls or toys; clothing for dolls and toys is

22  unquestionably *not* a useful article under the case law.  *See, e.g.*, *Boyds Collection,*

23  *Ltd. v. Bearington Collection, Inc.,* 360 F. Supp. 2d 655 (M.D. Pa. 2005) ("The

24  clothing on a teddy bear obviously has no utilitarian function. It is not intended to

25  cover embarrassing anatomical aspects or to protect the bear from exterior

26  elements. . . . Clothing on a bear replicates the form but not the function of

27  clothing on a person. It does not constitute a 'useful article' excluded from

28  copyright protection."); *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d

663, 670 (3d Cir. 1990) (masks portraying animals); *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970, 973 (6th Cir. 1983) (toy airplanes).  Because dolls' clothing is not functional, it is deemed to constitute an expressive element that may be infringed.  For instance, in *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp 218, 220-21 (S.D.N.Y. 1974), the court considered actionable similarities in the dolls' clothing:  "They are both representations of blond-haired little girls appearing to be the same age, dressed in removable red and white checked gingham dresses with puffed sleeves.  White aprons cover the front of each dress.  Under each dress is a body suit or pajama outfit made of the same material as the dress, with white lace extending from the pants' leg.  Both dolls also have simple vinyl hands, booty-like feet, and white fabric legs."  *See also* Robert C. Osterberg and Eric C. Osterberg, SUBSTANTIAL SIMILARITY IN COPYRIGHT LAW, § 10:6. ("Some of the particular characteristics courts consider when comparing dolls [for purposes of infringement analysis] are facial features, facial expression, size, body and limb type, stance or pose, *hair, clothing and accessories*, age, and gaze.") (emphasis added).

Moreover, defendants cite no authority whatsoever in support of their erroneous proposition that drawings of clothing – which are some of the copyrighted works at issue here – are not copyrightable, or cannot be infringed by substantially similar doll clothing.  They clearly are, and can be.

In any case, defendants offer no reason why this issue should be addressed in this introductory instruction.

**17.4**

**COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING**

**(17 U.S.C. § 501A–(b))**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

Mattel claims that the defendants have infringed copyrights for Bratz works. On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.      Mattel is the owner of a valid copyright; and

2.      The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.4 (2007).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING**

The MGA Parties and Bryant object to the inclusion of the following sentence in this instruction:  "Mattel claims that the defendants have infringed copyrights for Bratz works."  This sentence is not part of the cited model instruction, and the term "Bratz works" is improper, in that it implies to the jury that the Bryant drawings and the BRATZ dolls were substantially similar, rather than having the jury resolve this factual dispute.

The MGA Parties and Bryant also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties and Bryant further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3       Use of the term "Bratz works" for the works Mattel claims it owns is

4    appropriate.  This is a clear and accurate shorthand for the works that Bryant

5    created and that Mattel claims it owns.  According to defendants, Bryant called his

6    drawings of characters "Bratz" when he pitched them to MGA.  His pitch materials

7    list on the cover, "Bratz © 2000."  Defendants have themselves used the term

8    "Bratz property" to describe materials created by Bryant (*see* 2004 Modification of

9    2000 Agreement at § 3.2 (MGA000429-434).  Accordingly, defendants' current

10   objection to calling these drawings "Bratz works" is simply inexplicable.  The

11   sentence that "Mattel claims that the defendants have infringed copyrights for

12   Bratz works" is descriptive and necessary to provide context for Mattel's claim.

13      Moreover, Mattel expects to prevail on its claims in Phase 1A.  If it does,

14   then the term "Bratz works" will be understandable to the jury that previously

15   determined Mattel's ownership of these specific works.  If the jury determines that

16   Mattel owns some copyrights at issue, but not others, the jury instruction may be

17   modified at that point.

18      The proposed instruction does not improperly fail to differentiate among

19   defendants.  Rather, the proposed instruction merely explains the legal principles

20   underlying a claim of copyright infringement.  Subsequent instructions that pertain

21   directly to factors that the jury must determine to hold defendants liable for

22   copyright infringement make clear that each defendant's liability must be

23   determined separately.

24      Moreover, defendants' objection that the jury must consider each "infringing

25   act" and "product" separately misstates the law.  Essentially, defendants contend

26   that a Bratz doll would not infringe if defendants copied the head from one of

27   Bryant's drawings and the doll's body from another drawing.  That is not the law.

28   This case is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*,

1    150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled

2    "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes

3    of "Seinfeld," even though the amount of expression copied from each episode was

4    relatively small.  *See id*. at 138 ("it would elevate form over substance to conclude

5    that *The SAT* 's copying of 643 fragments from 84 individually copyrighted

6    *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia

7    quiz book poses a few questions from each of 84 unrelated television programs,

8    books, movies, or any combination of creative works that do not constitute a

9    discrete series of works.").

10        Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

11   depictions of the same four characters (i.e., the original Bratz characters),

12   developed for a specific purpose (creating, pitching and developing Bratz dolls).

13   Accordingly, it would be prejudicial and wholly artificial for the Court to instruct

14   the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite

15   any authority to support their objection.  In any case, the proposed damages

16   instructions, which are also based upon the Ninth Circuit Model Instructions, make

17   clear the proper standards for damages determination.

18

19

20

21

22

23

24

25

26

27

28

**<u>17.15</u>**

**<u>COPYING—ACCESS AND SUBSTANTIAL SIMILARITY</u>**

I just instructed you that Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted work.  Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' works and original elements of Mattel's works.

**Authority:**  9th Cir. Civ. Jury Instr. 17.15 (2007).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYING—ACCESS AND SUBSTANTIAL SIMILARITY**

The MGA Parties and Bryant object to this instruction, which tracks 9th Circuit Civil Model Jury Instruction 17.15, as being out of order and also to the extent that it uses the term "substantial similarities" rather than the correct term, "substantial similarity."  The use of the term "substantial similarities" is inconsistent with applicable case law and appears to be used in this and other model instructions in error. Cf. Dang v. Cross, 422 F.3d 800, 805 (9th Cir. 2005) ("[u]se of a model jury instruction does not preclude a finding of error"). The MGA Parties and Bryant also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.  The MGA Parties and Bryant further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

As required by the Court, the proposed instruction mirrors the language of the Ninth Circuit Model Instruction.  Defendants do not offer any reason for the Court to deviate from its standing order requiring the use of Model Instructions whenever possible.  Further, defendants fail to cite a single case holding that the term "substantial similarities," which the Model Instruction uses, is improper.  Nor is there any material difference between terms "substantial similarity" and "substantial similarities," as they both describe the same legal concept.

The proposed instruction does not improperly combine defendants for the purposes of liability.  The only other alternative would be to give a separate identical instruction for each defendant, which would be impractical and confusing.

The proposed instruction will not mislead the jury, as defendants suggest, with respect to damages awardable based upon the scope of infringement.  The instruction appropriately explains the concepts of access and substantial similarity in simple, clear terms, consistent with the Model Instruction.  Moreover, defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law.  Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing.  That is not the law.  This case is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld," even though the amount of expression copied from each episode was relatively small.  *See id*. at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia

quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.")

Here, as in *Castle Rock*, most of Bryant's drawings are a single series of depictions of the same four characters (i.e., the original Bratz characters), developed for a specific purpose (creating, pitching and developing Bratz dolls). Accordingly, it would be prejudicial and wholly artificial for the Court to instruct the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite any authority to support their objection.  In any case, the proposed damages instructions, which are also based upon the Ninth Circuit Model Instructions, make clear the proper standards for damages determination.

**17.10**

**COPYRIGHT INTERESTS—ASSIGNEE**

**(17 U.S.C. § 201(d)(1))**

In this case, the plaintiff, Mattel, does not claim to be the creator of the copyright at issue. Instead, Mattel claims it received the copyright by virtue of assignment from the work's creator, Carter Bryant, in the Inventions Agreement, so that Mattel is now the owner of the copyright.

A copyright owner may convey to another person or entity all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work. The person to whom the copyright is conveyed becomes the owner of the copyright in the work.  Mattel may enforce the right to exclude others in an action for copyright infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.10 (2007).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**COPYRIGHT INTERESTS—ASSIGNEE**

The MGA Parties and Bryant object to the preceding instruction to the extent that it is unnecessary, duplicative of Mattel's proposed instruction 17.4, and will only serve to confuse the jury.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants' objection is baseless and should be overruled.  Mattel is entitled to an instruction explaining to the jury that its copyright rights are based upon a valid transfer of ownership from Carter Bryant, especially because Ninth Circuit Model Instruction 17.4 does not explain this concept.

1
2

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
# COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY

3

4      You are to make a determination regarding substantial similarity according
5  to a two-step process, which includes application of the "extrinsic test" and the
6  "intrinsic test."  To prevail on its claims for copyright infringement, Mattel must
7  satisfy both of these tests.

8      Under the extrinsic test, Mattel must establish that specific expressive
9  elements of the Bratz products that Mattel claims are infringing and the works
10 Mattel owns are substantially similar.  I have already found as a matter of law that
11 each of the elements in Carter Bryant's Bratz drawings, and the combination of
12 those elements, are original and protectable.  Accordingly, you should take all of
13 the elements of the drawings into account in analyzing whether they are
14 substantially similar to the defendants' works.

15     The intrinsic test looks at the overall similarity of ideas and expression in the
16 works from the perspective of an ordinary observer.  You should ask yourself
17 whether the ordinary, reasonable audience, in this case girls between the ages of 6
18 and 12, would recognize the defendants' products as a "picturization" of the Bratz
19 works that Mattel owns.

20

21     **Authority:** *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d
22 1394, 1398 (9th Cir. 1997); *Shaw v. Lindheim*, 919 F.2d 1353, 1356-57 (9th Cir.
23 1990); *Jada Toys, Inc. v. Mattel, Inc.*, 1008 WL 450891, *6 (9th Cir. Feb. 21,
24 2008); *see also Sid & Marty Krofft Television Productions, Inc. v. McDonald's
25 Corp.*, 562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *See, e.g.*, *Newton v. Diamond*,
26 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a
27 copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F.
28 Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both

involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus, before a court may send a copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and its expression, at least some of what the defendant copied falls into the area of protectible expression."); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law); *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc., 932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a question of law," and the "jury has nothing to do with this subject.");*ADA v. Delta Dental Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although copyrightability analysis necessarily requires a court to consider some facts surrounding the works at issue, the inquiry "is far more heavily loaded with policy implications than most other standards," making it appropriate for determination by a court instead of a jury).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY**

This instruction is Mattel's latest attempt to avoid acknowledging the filtration analysis required under Ninth Circuit copyright principles.  Instead of identifying the elements in the Carter Bryant sketches that it claims are protectable, Mattel disingenuously asserts that <u>all</u> of the elements in the sketches are protectable.  This is not a good faith position – Mattel cannot seriously contend that not a single element in the sketches needs to be filtered out as an idea or concept.  MGA submits that, for example, basing a line of fashion dolls on four teenage friends who display an edgy attitude and wear trendy clothes popular with teens is an idea or concept that is not within the scope of copyright subject matter and must be filtered out before attempting a comparison between the Bryant sketches and the BRATZ dolls.

Assuming that the Court decides to conduct the extrinsic test analytic dissection and filtering itself, and then advise the jurors of the results of the Court's analysis, it would be improper for the Court to advise the jury that it has made a determination "as a matter of law."

If the jury is to be instructed on the extrinsic test, the MGA Parties and Bryant object to this instruction on the grounds that, unlike the MGA Parties' proposed instructions on this issue, Mattel's proposed instruction does not tell the jury the analytical steps it must take in applying the legal test to determine infringement. Mattel's proposed instruction also does not explain that the "extrinsic" test requires that the jury remove from infringement analysis those elements of the copyrighted work that are not entitled to copyright protection, or that the party claiming infringement (Mattel) cannot rely on any similarity in expression resulting from unprotectible elements for copyright infringement. (Although Mattel's instruction states that the jury must consider "specific

1    expressive elements of the BRATZ products that Mattel claims are infringing,"

2    Mattel has still never identified the specific elements.)  Mattel's proposed

3    instruction does not explain "analytic dissection" (wherein the jury must isolate the

4    elements of the copyrighted work and analyze each one separately, excluding the

5    other elements present in the work and the combination of elements) or "filtering"

6    (wherein the jury must filter out all of the unprotected elements) aspects of the

7    "extrinsic" test.  Mattel's proposed instruction also does not provide the jury with

8    any guidance as to when the jury can consider and rely on expert testimony in

9    connection with the "extrinsic" test and the "intrinsic" test, and it does not instruct

10   the jury concerning the ranges of protection available or the potential for "thin"

11   copyright protection for the works at issue in this case. Thus, Mattel's proposed

12   instruction does not explain that the jury must determine what, if any, protectible

13   expression is present in each of the Bryant sketches, compare the protected

14   expression in a particular sketch to the BRATZ dolls and, unless a sufficient

15   amount of protected expression from a sketch was copied in the BRATZ dolls,

16   Mattel's claim of copyright infringement must fail.  Compare Mattel's proposed

17   instruction with MGA Parties' Proposed Jury Instruction No. 9C.

18        The MGA Parties and Bryant also object to the preceding instruction on the

19   grounds that it improperly uses the concept of "picturization." The MGA Parties

20   and Bryant object to any reference to the term or concept "picturization" as

21   referring to an outdated concept used almost exclusively historically to refer to the

22   process of comparing an alleged infringing audio visual work such as a film with a

23   literary work.  See, e.g., Berkic v. Crichton, 761 F.2d 1289, 1292 (9th Cir. 1985);

24   Cain v. Universal Pictures Co., 47 F. Supp. 1013, 1016 (C.D. Cal. 1942); see also

25   Anderson v. Stallone, 1989 U.S. Dist. LEXIS 11109, at *35 11 U.S.P.Q. 2d 1161

26   (C.D. Cal. Apr. 26, 1989).  Accord 4-13 David Nimmer, Nimmer, on Copyrights §

27   13.03 (2008) (questioning the validity of the related "audience" test.)  Any

28   references to "picturization" will only confuse the jury with respect to the "total

1   concept and feel" standard actually applied under the intrinsic test.  See Lanard

2   Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (C.D. Cal. 2007)

3   (citing Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984)).

4        Mattel's proposed instruction also does not instruct the jury that it should not

5   consider the unprotectible elements filtered out as part of the extrinsic test analysis

6   in connection with its determination under the "intrinsic" test, and it improperly

7   describes the "ordinary, reasonable audience" as girls between the ages of 6 and

8   12, when the target audience for Bratz dolls is girls between the ages of 8 and 12.

9        Finally, the MGA Parties and Bryant object to this instruction (and Mattel's

10  other copyright instructions) because it does not properly explain that the jury must

11  consider separately each alleged infringing act and/or product.  Thus, the

12  instruction would mislead the jury by improperly suggesting that if any

13  infringement at all is found, of any of the copyrights at issue, Mattel should prevail

14  as to the full scope of all alleged infringements.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

It would be erroneous as a matter of law and unnecessary to modify Mattel's proposed instruction as suggested by defendants to state that the extrinsic test requires filtering out of unprotectable ideas.  The proposed instruction states that the extrinsic test is limited to "specific expressive elements."  Further, other proposed instructions state that the Copyright Act does not protect ideas.

Defendants' contention that ideas should be filtered out as part of the intrinsic test is contrary to settled law.  The Ninth Circuit has consistently held that "[a]nalytic dissection ... is not appropriate under [the intrinsic] test because it distracts a reasonable observer from a comparison of the total concept and feel of the works."  *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988). *See also Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1449 (9th Cir. 1988) ("Although analytic dissection and expert testimony are appropriate under the extrinsic test, they are not appropriate under the intrinsic test.").

In any event, defendants are incorrect as a matter of law that a work of visual art (as distinguished from a literary work or a computer program) may be broken down into original and non-original components.  *See, e.g.*, *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) ("The precise factors evaluated for literary works do not readily apply to art works.  Rather, a court looks to the similarity of the objective details in appearance."); Hon. Jon O. Newman, *New Lyrics for an Old Melody:  The Idea/Expression Dichotomy in the Computer Age*, 17 Cardozo Arts & Ent. L. J. 691, 698 (1999) (filtration analysis should not be applied in cases of visual works because "one cannot divide a visual work into neat layers of abstraction in precisely the same manner one could with a text."); *id.* at 697, nn.36-37 (criticizing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir. 1999), which applied filtration in a doll case).  Further, in the Ninth Circuit, it is proper to consider ideas as part of the extrinsic test.  See,

-156-

1   e.g., <u>Smith v. Jackson</u>, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of

2   the extrinsic test, one must "consider[] whether two works share a similarity of

3   *ideas* and expression") (emphasis added); <u>Kouf v. Walt Disney Pictures &</u>

4   <u>Television</u>, 16 F.3d 1042, 1045 (9th Cir. 1994) (same).

5       Defendants' objection to the term "picturization" is baseless.  Even though

6   defendants claim that the term is "outdated," they do not cite any case overruling

7   the authorities that use the term.  Indeed, the term is consistent with the "total

8   concept and feel" test for infringement.  <u>Lanard Toys, Ltd. v. Novelty, Inc.</u>, 511 F.

9   Supp. 2d 1020, 1037–38 (C.D. Cal. 2007).  Nor do defendants cite any authority

10  for the proposition that the use of the term is improper in the context of visual art,

11  as opposed to literary or audiovisual works.

12      There is no need to instruct the jury about "thin" copyright protection.

13  Defendants are estopped from asserting that the drawings are subject only to thin

14  copyright protection because defendants successfully contended just the opposite

15  in suing for infringement of the drawings in the courts of Hong Kong and in the

16  United States.  *See* Mattel Reply Mem. ISO Summary Judgment at 11.  Mattel is

17  aware of at least two instances in which MGA has done this.  In *MGA Entm't., Inc.*

18  *v. Multitoy, Inc. et al.,* Case No. CV04-2524 CBM (CWx), MGA Entertainment,

19  Inc. ("MGA") brought claims of copyright and trademark infringement, among

20  other claims, against defendants for producing and selling dolls that infringed of

21  the copyrights in Carter Bryant's two dimensional BRATZ drawings.  *See e.g.*,

22  Complaint ¶ 7 and M0078574-90.  *See generally* ¶¶ 2-20, 31-37.  MGA made

23  similar claims in the *Cityworld* matter that MGA filed in Hong Kong, wherein

24  Isaac Larian signed a sworn affidavit that MGA claimed that defendants' dolls

25  infringed the copyrights in Bryant's Bratz drawings.

26      More generally, defendants' contention that the jury should be instructed on

27  the process of analytical dissection or filatration is incorrect.  The determination of

28  elements of a work which are protectable is a question of law for the Court, not for

1  the jury.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002)

2  ("The protectability of elements in a copyrighted work is a question of law.");

3  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989)

4  ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of

5  protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990

6  WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs'

7  work are protectible expression as opposed to unprotectible idea is an issue of

8  law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at

9  *2 (D. Del. 2005) (holding that while a finding of copyright infringement may

10 involve questions of fact, the protectability of copyrighted material is a question of

11 law); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 225 (N.D.

12 Ill 1996) (the issue of whether a work is "copyrightable is a question of law," and

13 the "jury has nothing to do with this subject."); *ADA v. Delta Dental Plans Ass'n*,

14 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although

15 copyrightability analysis necessarily requires a court to consider some facts

16 surrounding the works at issue, the inquiry "is far more heavily loaded with policy

17 implications than most other standards," making it appropriate for determination by

18 a court instead of a jury).

19      Mattel's proposed instruction will not mislead the jury, as defendants

20 suggest, with respect to damages awardable based upon the scope of infringement.

21 The instruction appropriately explains the concept of substantial similarity in

22 simple, clear terms.  Moreover, defendants' objection that the jury must consider

23 each "infringing act" and "product" separately misstates the law.  Essentially,

24 defendants contend that a Bratz doll would not infringe if defendants copied the

25 head from one of Bryant's drawings and the doll's body from another drawing.

26 That is not the law.  This case is comparable to *Castle Rock Entm't v. Carol*

27 *Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second Circuit

28 held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's

-158-

1  copyrights in numerous episodes of "Seinfeld," even though the amount of

2  expression copied from each episode was relatively small.  *See id.* at 138 ("it

3  would elevate form over substance to conclude that *The SAT* 's copying of 643

4  fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable

5  from a case in which a 634-question trivia quiz book poses a few questions from

6  each of 84 unrelated television programs, books, movies, or any combination of

7  creative works that do not constitute a discrete series of works.")

8      Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

9  depictions of the same four characters (i.e., the original Bratz characters),

10  developed for a specific purpose (creating, pitching and developing Bratz dolls).

11  Accordingly, it would be prejudicial and wholly artificial for the Court to instruct

12  the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite

13  any authority to support their objection.  In any case, the proposed damages

14  instructions, which are also based upon the Ninth Circuit Model Instructions, make

15  clear the proper standards for damages determination.

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
# SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE"

If Mattel shows that the defendants had a high degree of access to the Bratz drawings that Mattel owns, you should view Mattel's burden of proving substantial similarity under the extrinsic test as lowered.

**Authority:** *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we 'require a lower standard of proof of substantial similarity when a high degree of access is shown.'"); *Shaw v. Lindheim*, 919 F.2d 1353, 1361-62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) (high "degree of access justifies a lower standard of proof to show substantial similarity"); *Smith v. Jackson*, 84 F.3d 1213, 1220-21 (9th Cir. 1996).

1    **OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

2    **SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE"**

3

4         The MGA Parties and Bryant object to Mattel's proposed instruction

5    because it incorrectly states that the "inverse ratio" rule lowers Mattel's burden in

6    connection with jury's determination of "legal" copying.  The "inverse ratio" rule,

7    as correctly applied, only relates to the "factual" copying issue.  See, e.g.,

8    BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544, at **8–10

9    (S.D. Cal. Aug. 16, 2007); 4-13 David Nimmer, Nimmer, on Copyright §§

10   13.03[A] & [D] (2008). The MGA Parties and Bryant also object to this instruction

11   because it fails to ensure that the jury distinguishes among the defendants and

12   makes appropriate findings with respect to each defendant. The MGA Parties and

13   Bryant further object to this instruction (and Mattel's other copyright instructions)

14   because it does not properly explain that the jury must consider separately each

15   alleged infringing act and/or product.  Thus, the instruction would mislead the jury

16   by suggesting that if any infringement at all is found, of any of the copyrights at

17   issue, Mattel should prevail as to the full scope of all alleged infringement.

18

19

20

21

22

23

24

25

26

27

28

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3         Defendants misstate settled law when they contend that Mattel must

4    establish factual copying.  To establish infringement, Mattel only needs to show,

5    by a preponderance of evidence, (1) access to the copyrighted work and (2)

6    substantial similarity.  *See, e.g.*, *Brown Bag Software Corp. v. Symantec*, 960 F.2d

7    1465,1472 (9th Cir. 1992).  Defendants' insistence that Mattel establish factual and

8    legal copying creates an additional hurdle to liability for copyright infringement

9    that is not supported by any cited authority.  *BensBargains* merely holds that

10   admitted access does not excuse plaintiff from having to establish copying of

11   protected expression, as opposed to unprotectable ideas.  That is immaterial.

12   Defendants cannot and do not dispute that the inverse ratio rule is controlling law

13   in the Ninth Circuit and that the jury should be instructed on this rule.  *See, e.g.*,

14   *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our

15   case law, substantial similarity is inextricably linked to the issue of access.  In what

16   is known as the 'inverse ratio rule,' we require a lower standard of proof of

17   substantial similarity when a high degree of access is shown.") (quotation marks

18   and citation omitted).

19        The proposed instruction will not mislead the jury, as defendants suggest,

20   with respect to damages awardable based upon the scope of infringement.  The

21   instruction appropriately explains the concepts of access and substantial similarity

22   in simple, clear terms, consistent with the Model Instruction.  Moreover,

23   defendants' objection that the jury must consider each "infringing act" and

24   "product" separate misstates the law.  Essentially, defendants contend that a Bratz

25   doll would not infringe if defendants copied the head from one of Bryant's

26   drawings and the doll's body from another drawing.  That is not the law.  This case

27   is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132

28   (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld

-162-

1   Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of

2   "Seinfeld," because even though the amount of expression copied from each

3   episode was relatively small.  *See id.* at 138 ("it would elevate form over substance

4   to conclude that *The SAT* 's copying of 643 fragments from 84 individually

5   copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-

6   question trivia quiz book poses a few questions from each of 84 unrelated

7   television programs, books, movies, or any combination of creative works that do

8   not constitute a discrete series of works.")

9        Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

10   depictions of the same four characters (i.e., the original Bratz characters),

11   developed for a specific purpose (creating, pitching and developing Bratz dolls).

12   Accordingly, it would be prejudicial and wholly artificial for the Court to instruct

13   the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite

14   any authority to support their objection.  In any case, the proposed damages

15   instructions, which are also based upon the Ninth Circuit Model Instructions, make

16   clear the proper standards for damages determination.

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll, when the works are substantially similar in their appearance.

**Authority:** *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll: "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing").

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS

The MGA Parties and Bryant object to Mattel's proposed instruction since, among other things, it does not advise the jurors that in comparing an allegedly infringing 3-dimensional work with a registered 2-dimensional work the "extrinsic/intrinsic" tests still apply. (See MGA Parties' Proposed Jury Instruction No. 10C.) The MGA Parties and Bryant also object because Mattel's proposed instruction does not add the cautionary instruction (necessary under the facts of this case) that the copyright in a two-dimensional work only covers what is shown on the face of the work (i.e., does not include anything that could arguably be implied by the 2-dimensional work). (See id.) The MGA Parties and Bryant further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

The proposed instruction does not suggest that the extrinsic/intrinsic test does not apply to three-dimensional works that infringe two-dimensional works. Indeed, Mattel has proposed an instruction that describes the extrinsic/intrinsic test. It would be improperly duplicative, misleading and unnecessary to add yet another reference to this proposed instruction.

The proposed instruction will not mislead the jury, as defendants suggest, with respect to damages awardable based upon the scope of infringement. Defendants' objection that the jury must consider each "infringing act" and "product" separate misstates the law. Defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law. Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing. That is not the law. This case is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc*., 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld," because even though the amount of expression copied from each episode was relatively small. *See id*. at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.")

Here, as in *Castle Rock*, most of Bryant's drawings are a single series of depictions of the same four characters (i.e., the original Bratz characters), developed for a specific purpose (creating, pitching and developing Bratz dolls). Accordingly, it would be prejudicial and wholly artificial for the Court to instruct

the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite any authority to support their objection.  In any case, the proposed damages instructions, which are also based upon the Ninth Circuit Model Instructions, make clear the proper standards for damages determination.

Finally, contrary to defendants' unintelligible objection, Mattel's proposed instruction does not suggest that elements that could be implied by, but are not seen in, a two-dimensional work may be infringed.  It would be confusing and misleading to modify the instruction to address this imagined statement of law.

1  **MATTEL'S SPECIAL JURY INSTRUCTION NO.** ___
2  **COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS**
3
4  A copyright can be infringed by intermediate or preparatory works,
5  including works prepared in the product development or marketing stage, that are
6  substantially similar to a copyrighted work, regardless of whether the end product
7  of the copying also infringes the copyright.
8
9  **Authority:** *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518-19
10  (9th Cir. 1993); *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979);
11  *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 875-76 (C.D. Cal.
12  1986).
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS

The MGA Parties and Bryant object to the inclusion of any instruction relating to alleged "intermediate works."  First, Mattel did not assert this theory in response to MGA's discovery requests directed to Mattel's theories of copyright liability and it would be unduly prejudicial to allow Mattel to raise this theory now after discovery is closed.  In addition, the "intermediate works" doctrine is inapplicable to this case since it is a doctrine directed to the context of "reverse engineering" in the context of computers and computer software.  See, e.g., Sega Enters. Ltd. v. Accolade, Inc., 977 F.2d 1510 (9th Cir. 1992); see also Sony Computer Entm't v. Connectix Corp., 203 F.3d 596 (9th Cir. 2000); Adobe Sys. Inc. v. Southern Software Inc., 1998 U.S. Dist. LEXIS 1941 (N.D. Cal. Feb. 2, 1998); Atari Games Corp. v. Nintendo, Inc., 1993 U.S. Dist. LEXIS 6786 (N.D. Cal. May 18, 1993). The MGA Parties and Bryant further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3         Defendants' contention that the intermediate works doctrine is limited to

4    cases of reverse engineering of software is without merit.  Indeed, two of the cases

5    cited in support of the proposed instruction concern not software, but copyrightable

6    artistic works.  *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979) (set

7    of I-Ching cards); *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871,

8    875-76 (C.D. Cal. 1986) (animated film).

9         Defendants' argument that they are surprised that Mattel contends that the

10   Bratz intermediate works infringe is disingenuous.  The process by which the Bratz

11   dolls were created has been a subject of extensive discovery, including expert

12   discovery.  Accordingly, defendants cannot articulate any prejudice from the

13   presentation of this instruction to the jury.  Nor do defendants show that this

14   "theory" was somehow un-disclosed, and the facts clearly were disclosed.

15        The proposed instruction will not mislead the jury, as defendants suggest,

16   with respect to damages awardable based upon the scope of infringement.

17   Defendants' objection that the jury must consider each "infringing act" and

18   "product" separate misstates the law.  Defendants' objection that the jury must

19   consider each "infringing act" and "product" separately misstates the law.

20   Essentially, defendants contend that a Bratz doll would not infringe if defendants

21   copied the head from one of Bryant's drawings and the doll's body from another

22   drawing.  That is not the law.  This case is comparable to *Castle Rock Entm't v.*

23   *Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second

24   Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's

25   copyrights in numerous episodes of "Seinfeld," even though the amount of

26   expression copied from each episode was relatively small.  *See id.* at 138 ("it

27   would elevate form over substance to conclude that *The SAT* 's copying of 643

28   fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable

1  from a case in which a 634-question trivia quiz book poses a few questions from

2  each of 84 unrelated television programs, books, movies, or any combination of

3  creative works that do not constitute a discrete series of works.")

4      Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

5  depictions of the same four characters (i.e., the original Bratz characters),

6  developed for a specific purpose (creating, pitching and developing Bratz dolls).

7  Accordingly, it would be prejudicial and wholly artificial for the Court to instruct

8  the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite

9  any authority to support their objection.  In any case, the proposed damages

10  instructions, which are also based upon the Ninth Circuit Model Instructions, make

11  clear the proper standards for damages determination.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ____

## COPYRIGHT INFRINGEMENT—ORIGINALITY[10]

Your first task in assessing substantial similarity is to decide which parts of Carter Bryant's works are original.  An original work may include or incorporate elements inspired by prior works.  The original parts of the work so inspired are the parts created:

1.     Independently by the work's creator; and

2.     By use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel. Originality means "little more than a prohibition of actual copying."  The required level of originality is "minimal."

Carter Bryant and MGA have admitted that, as a whole, the Bratz drawings are original.

---

[10]   Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law).  If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

1    **Authority:**  9th Cir. Civ. Jury Instr. 17.12 (2007); *CDN, Inc. v. Kapes*,

2    197 F.3d 1256, 1259-60 (9th Cir. 1999); *Sid & Marty Krofft Television*

3    *Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 n.5 (9th Cir. 1977).

-173-

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**COPYRIGHT INFRINGEMENT—ORIGINALITY**

The MGA Parties and Bryant object to this proposed instruction because it is an incomplete and inaccurate statement of 9th Circuit Civil Model Jury Instruction 17.12, and it includes additional inaccurate statements that are not part of the model instruction.  Moreover, this instruction is simply another attempt by Mattel to obscure the "extrinsic" and "intrinsic" tests and to confuse the jury as to the proper meaning and application of these test.  In advising the jurors that their "first task" related to substantial similarity is "to decide which parts of Carter Bryant's works are original," there is no explanation analytic dissection and filtering, and this will mislead and confuse the jury.  This instruction is also unnecessary and will only serve to confuse the jury since the MGA Parties do not dispute that Bryant's sketches satisfy the low "originality" threshold necessary to copyrightability. In addition to being unnecessary, Mattel's phasing – that the MGA Parties and Bryant have admitted originality "as a whole" – is confusing and meaningless.  The MGA Parties and Bryant further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

This proposed instruction should not be necessary.  The question of protectability is a question for the Court.  Defendants' contention that the jury should be instructed on the process of analytical dissection or filtration is incorrect. The determination of elements of a work which are protectable is a question of law for the Court, not for the jury.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law); *Pivot Point Int'l, Inc. v. Charlene Prods.*, *Inc.*, 932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a question of law," and the "jury has nothing to do with this subject."); *ADA v. Delta Dental Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although copyrightability analysis necessarily requires a court to consider some facts surrounding the works at issue, the inquiry "is far more heavily loaded with policy implications than most other standards," making it appropriate for determination by a court instead of a jury).

However, if the Court instructs the jury on this issue, Mattel is entitled to a jury instruction on originality because defendants have raised the issue by contending that Bryant based his Bratz drawings on prior art.  As required by the Court, Mattel's proposed instruction mirrors the language of the Ninth Circuit

1  Model Instruction.  Defendants do not present any legitimate reason for the Court
2  to deviate from the Model Instruction.

3  　　　Defendants complain that this proposed instruction is "unnecessary" because
4  they do not challenge the "originality" of Bryant's drawings, but the instruction
5  provides far more.  It also makes clear that any *parts* of the drawings not *copied*
6  from a prior work are original and protectable.  This correct statement of law must
7  be given.

8  　　　The proposed instruction will not mislead the jury, as defendants suggest,
9  with respect to damages awardable based upon the scope of infringement.
10  Defendants' objection that the jury must consider each "infringing act" and
11  "product" separately misstates the law.  Essentially, defendants contend that a
12  Bratz doll would not infringe if defendants copied the head from one of Bryant's
13  drawings and the doll's body from another drawing.  That is not the law.  This case
14  is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc*., 150 F.3d 132
15  (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld
16  Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of
17  "Seinfeld," because even though the amount of expression copied from each
18  episode was relatively small. *See id*. at 138 ("it would elevate form over substance
19  to conclude that *The SAT* 's copying of 643 fragments from 84 individually
20  copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-
21  question trivia quiz book poses a few questions from each of 84 unrelated
22  television programs, books, movies, or any combination of creative works that do
23  not constitute a discrete series of works.")

24  　　　Here, as in *Castle Rock*, most of Bryant's drawings are a single series of
25  depictions of the same four characters (i.e., the original Bratz characters),
26  developed for a specific purpose (creating, pitching and developing Bratz dolls).
27  Accordingly, it would be prejudicial and wholly artificial for the Court to instruct
28  the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite

1  any authority to support their objection.  In any case, the proposed damages

2  instructions, which are also based upon the Ninth Circuit Model Instructions, make

3  clear the proper standards for damages determination.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MATTEL'S SPECIAL JURY INSTRUCTION NO. __</u>

## <u>ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS</u>[11]

If you find that any elements of Mr. Bryant's drawings are not protectable, you must decide whether the combination of such elements is protectable.  A combination of individual elements not eligible for copyright protection is eligible for copyright protection if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

The fact that the Bratz dolls may have features similar to other dolls or other preexisting works does not mean that they do not infringe on the works in which Mattel claims ownership.  If you find that the combination of features in the drawings in which Mattel claims ownership amounts to original expression, you may find the dolls to be infringing if their combination of features is substantially similar to the drawings.

---

[11]   Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law).  If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

1       **Authority:**  *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135

2   (2d Cir. 2004) ("Even if the record had shown that many dolls possess upturned

3   noses, bow lips, and wide-spread eyes, it would not follow that each such doll –

4   assuming it was independently created and not copied from others – would not

5   enjoy protection from copying."); *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg.*

6   *Co.*, 479 F. Supp. 1105, 1114-15 (E.D.N.Y. 1978) ("[T]hat plaintiff's toys

7   contained features separately found on other dolls does not render their copyrights

8   invalid.  Rather, the original combination of these features into new dolls makes

9   the dolls copyrightable."); *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218,

10  219-20 (S.D.N.Y. 1974) (same); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir.

11  2004).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS**

The MGA Parties and Bryant object to this proposed instruction on the grounds that, in order to invoke this doctrine, Mattel must identify the specific unprotectible elements on which it bases this assertion.  See Todd v. Montana Silversmiths, Inc., 379 F. Supp. 2d 1110, 1112-13 (D. Col. 2005); see also George S. Chen Corp. v. Cadona Int'l, Inc., 2008 WL 152651, at *1 (9th Cir. Jan. 17, 2008) (plaintiff points to "no elements that, considered together, have a sufficient quantum of originality for copyright protection").  Discovery is closed.  Mattel has not identified in response to MGA's contention interrogatories, or otherwise, any combination of individual elements not eligible for copyright protection that it contends warrant copyright protection, and it would therefore be improper and prejudicial to allow Mattel to proceed under this theory of copyright infringement. Mattel's failure to identify unprotectible elements it believes warrants protection is not inadvertent; rather, it was an intentional strategy designed to avoid the need for Mattel to concede that many of the elements in the Bryant drawings are unprotectible and must be disregarded under the proper analytic dissection and filtering test.  This instruction also improperly suggests that the jury could find infringement by combining different elements of different works.

Mattel's first sentence is misleading and not supported by any case law.  It is not the responsibility of the jury to decide that the combination doctrine is applicable.  Rather, it is Mattel's responsibility to raise the issue and identify what it claims is the protectible selection and arrangement.

The MGA Parties and Bryant also object to this instruction on the grounds that it fails to instruct the jury that a claim of copyright infringement based on a combination of unprotectible elements must meet a very high standard to be protectible.  See, e.g. Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003) ("we

1  hold today that a combination of unprotectable elements is eligible for copyright

2  protection only if those elements are numerous enough and their selection and

3  arrangement original enough that their combination constitutes an original work of

4  authorship").  This proposed instruction is also defective since it fails to instruct

5  the jury that protection for a combination of unprotectible elements is only entitled

6  to "thin" protection.  See, e.g., Mattel v. Goldberger, 365 F.3d 133, 135-6 (2d Cir.

7  2004); Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Apple Computer, Inc.

8  v. Microsoft Corp., 35 F.3d 1435, 1446-47 (9th Cir. 1994); Harper House, Inc. v.

9  Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989); Cosmos Jewelry Ltd. v.

10  Po Sun Hon Co., 470 F. Supp. 2d 1072, 1082-84 (C.D. Cal. 2006); Idema v.

11  Dreamworks, Inc., 162 F. Supp. 2d 1129, 1178 (C.D. Cal. 2001).

12      The MGA Parties and Bryant further object to this instruction (and Mattel's

13  other copyright instructions) because it does not properly explain that the jury must

14  consider separately each alleged infringing act and/or product.  Thus, the

15  instruction would mislead the jury by suggesting that if any infringement at all is

16  found, of any of the copyrights at issue, Mattel should prevail as to the full scope

17  of all alleged infringement.

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

This instruction is necessary in case the Court or the jury finds that any of the elements of the Bratz drawings are unprotectable.  Mattel's position, however, has been consistent: each element of the Bratz drawings is original, expressive and protectable.  Defendants offer no evidence to support their unfounded assertion that Mattel has sandbagged them in any way.

Defendants are incorrect as a matter of law that a work of visual art (as distinguished from a literary work or a computer program) may be broken down into original and non-original components, so that the combination of the non-original elements would be entitled only to thin protection.  *See, e.g., Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) ("The precise factors evaluated for literary works do not readily apply to art works.  Rather, a court looks to the similarity of the objective details in appearance."); Hon. Jon O. Newman, *New Lyrics for an Old Melody:  The Idea/Expression Dichotomy in the Computer Age*, 17 Cardozo Arts & Ent. L. J. 691, 698 (1999) (filtration analysis should not be applied in cases of visual works because "one cannot divide a visual work into neat layers of abstraction in precisely the same manner one could with a text."); *id.* at 697, nn.36-37 (criticizing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir. 1999), which applied filtration in a doll case).  Further, in the Ninth Circuit, it is proper to consider ideas as part of the extrinsic test.  *See, e.g., Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of the extrinsic test, one must "consider[] whether two works share a similarity of *ideas* and expression") (emphasis added); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (same).

Moreover, defendants ignore that creative expression is original even if "inspired by" other works, and that elements are protectable so long as they are not slavishly copied.  *See, e.g., Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133,

1   136 (2d Cir. 2004)  ("One artist's version of a doll face with upturned nose, bow

2   lips, and widely spaced eyes will be irresistible to an eight-year old collector. …

3   We can surmise that in the highly competitive, billion-dollar doll industry, getting

4   the doll's face and expression exactly right is crucial to success.").

5         And defendants ignore that creative *compilations* of non-original

6   components are subject to full protection under copyright law.  *See Dollcraft*

7   *Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp. 1105, 1114-15 (E.D.N.Y.

8   1978).  Defendants' argument that such compilations are entitled to "thin"

9   copyright protection is without merit because their authorities address not creative

10  works such as dolls or drawings, but rather utilitarian objects such as jewelry or

11  computer interfaces where the range of expression is limited.  The millenia-long

12  history of visual art shows that the range of creative expression in visual works is

13  not limited, as it may be in the case of computer software, factual works or

14  jewelry.  Defendants' citation of *Mattel v. Goldberger Doll Mfg. Co*. is puzzling as

15  that case does not discuss protectability of original compilations of

16  uncopyrightable elements.

17        Defendants' objection that the jury must consider each "infringing act" and

18  "product" separately misstates the law.  Essentially, defendants contend that a

19  Bratz doll would not infringe if defendants copied the head from one of Bryant's

20  drawings and the doll's body from another drawing.  That is not the law.  This case

21  is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc*., 150 F.3d 132

22  (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld

23  Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of

24  "Seinfeld," because even though the amount of expression copied from each

25  episode was relatively small.  *See id*. at 138 ("it would elevate form over substance

26  to conclude that *The SAT* 's copying of 643 fragments from 84 individually

27  copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-

28  question trivia quiz book poses a few questions from each of 84 unrelated

television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.")

Here, as in *Castle Rock*, most of Bryant's drawings are a single series of depictions of the same four characters (i.e., the original Bratz characters), developed for a specific purpose (creating, pitching and developing Bratz dolls). Accordingly, it would be prejudicial and wholly artificial for the Court to instruct the jury to consider each Bratz drawing separately. Indeed, defendants do not cite any authority to support their objection. In any case, the proposed damages instructions, which are also based upon the Ninth Circuit Model Instructions, make clear the proper standards for damages determination.

1

## MATTEL'S SPECIAL JURY INSTRUCTION NO.
2

## PRESUMPTION OF COPYRIGHTABILITY
3

4      A copyright registration obtained within five years of the work's publication

5 creates a presumption of the validity of the copyright and originality of the work.

6 This presumption shifts the burden of proof to the defendants to demonstrate why

7 the works at issue are not copyrightable.  In this case, it is undisputed that both

8 Mattel and MGA have obtained copyright registrations of certain of Carter Bryant's

9 Bratz drawings.

10

11      **Authority:**  17 U.S.C. § 410(c); *Transgo, Inc. v. Ajac Transmission Parts*

12 *Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by the Copyright

13 Office is prima facie evidence of copyrightability.  This presumption shifts the

14 burden of proof to the challenging party to demonstrate why the item in question is

15 not copyrightable.") (citations omitted); *Johnson Controls, Inc. v. Phoenix Control*

16 *Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) ("The district court was entitled

17 to rely on the copyright registration as prima facie evidence of originality.").

18

19

20

21

22

23

24

25

26

27

28

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE PRESUMPTION OF COPYRIGHTABILITY**

The MGA Parties and Bryant object to the instruction on the grounds that they are not disputing that the Bryant sketches contain sufficient originality to meet the low threshold of copyrightability. The MGA Parties and Bryant also object to this instruction because it is unnecessary and can only confuse the jury.  Finally, the MGA Parties and Bryant also object to this instruction to the extent that it improperly and inaccurately deviates from 9th Circuit Civil Model Jury Instruction 17.12.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel is entitled to a jury instruction on originality because defendants have raised the issue by contending that Bryant based his Bratz drawings on prior art.  In any event, this brief instruction merely sets out the law on the presumption of copyrightability and originality, which cannot possibly confuse the jury.  Notably, defendants do not dispute this law.  To the extent the Court permits the jury to consider questions of originality and protectability, this instruction should be given.

**MATTEL'S SPECIAL JURY INSTRUCTION NO. __**

**COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT**

**NECESSARY FOR LIABILITY**

Direct copyright infringement does not require intent or any particular state of mind.  A defendant may be held liable for copyright infringement even if he believes in good faith that he is not infringing a copyright.

**Authority:** *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven when the defendant believes in good faith that he is not infringing a copyright, he may be found liable."); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require intent or any particular state of mind.").

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY**

The MGA Parties and Bryant object to this instruction in that it fails to advise the jury that this instruction does not in any way undercut the defendants' position that the BRATZ dolls were a product of independent creation.  (See MGA Parties' Proposed Jury Instruction Nos. 7C, 11C.)

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

This proposed instruction is an instruction regarding intent.  It has nothing to do with "independent creation."  Defendants' objection is wholly misplaced.  Moreover, defendants' objection is improper because defendants did not assert the affirmative defense of independent creation in their answers and have therefore waived such defense.  *See Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984) (unasserted affirmative defenses are waived); *Bethea v. Burnett*, 2005 WL 1720631(C.D. Cal. 2005) (noting that independent creation is an affirmative defense).  Nor did they disclose this purported defense in discovery.  *See* MGA Parties' Response to Mattel Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2008.

Further, defendants' reliance on the independent creation defense is misplaced.  The independent creation defense applies where the accused infringer shows that he created the work prior to or wholly independently of the infringed work (*i.e.*, where two different people happen to create similar works).  For instance, an author accused of copying another writer's novel can establish independent creation by showing drafts of his work that pre-date his access to the allegedly-infringed novel.  *See, e.g.*, *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y 2000) (finding for the defendant singer and composer where the singer produced extensive notes and demo recordings demonstrating independent development of the allegedly infringing hit song).  In this case, however, the author of the infringed work (Bryant) also worked and continues to work on a series of infringing works, with access to the infringed work before, during and after the infringing work was created.  In this context, any reference to "independent creation" is not only meritless as a matter of law and unsupported by the evidence, but would also confuse the jury.  Had such a "defense" been pleaded, it would have been appropriate for summary adjudication.

**17.13**

**COPYRIGHT INTERESTS—DERIVATIVE WORKS**

**(17 U.S.C. §§ 101, 106(2))**

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work.  The term derivative work refers to a work based on one or more pre-existing works, such as drawings or dolls.  Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

**Authority:**  9th Cir. Civ. Jury Instr. 17.13 (2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE
## COPYRIGHT INTERESTS—DERIVATIVE WORKS

The MGA Parties object and Bryant to this instruction on the grounds that this instruction is an improper effort to confuse the jury concerning the proper test to be applied in determining whether any of the BRATZ dolls infringe valid copyrights in any of the Bryant sketches, that the jury determines to be owned by Mattel in connection with the Phase 1(a) trial.  Regardless of whether an alleged infringing work could arguably be classified as a "derivative work," the standard of infringement is the same, requiring the full application of and analysis under the extrinsic and intrinsic tests.

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

As required by the Court, the proposed instruction mirrors the language of the Model Instruction.  Defendants do not present any reason for the Court to deviate from its standing order requiring the use of Model Instructions whenever possible, nor do they contend that the Model Instruction is incorrect.

Defendants are also incorrect that there is no "derivative works' issue" in this case.  Generations of the Bratz dolls that followed the first set of models are classic derivative works, and thus infringe Mattel's copyrights.

Defendants' demand that the model instruction be modified to address the standard for finding infringement is without merit.  This standard is addressed by several other instructions, and need not be repeated here.

**17.21**

**DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT**

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally materially contributes to that infringing activity.

If you find that MGA infringed Mattel's copyright in Bratz works, you may proceed to consider Mattel's claim that Carter Bryant, MGA's CEO Isaac Larian and/or MGA Hong Kong contributorily infringed that copyright.  To prove copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.     Mr. Bryant, Mr. Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.     Mr. Bryant, Mr. Larian and/or MGA Hong Kong intentionally materially contributed to MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove either or both of these elements, your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.21 (2007).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT**

The MGA Parties and Bryant object to this instruction because (1) it fails to clarify for the jury the requirements of showing intentional inducement (see Errata to Jury Instructions submitted by Bryant on April 15, 2008); and (2) it improperly clusters all defendants together in such a way that it suggests to the jury that a finding of contributory liability against one defendant would be sufficient to enter a finding against all defendants. The MGA Parties and Bryant further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

As required by the Court, the proposed instruction mirrors the language of the Model Instruction.  Defendants do not present any legitimate reason for the Court to deviate from the Model Instruction.

The proposed instruction does not "improperly cluster[] all defendants together."  Rather, by employing the "and/or" conjunction, the proposed instruction properly instructs the jury that they should judge each defendant's conduct individually.  The only other alternative would be to give a separate identical instruction for each defendant, which would be impractical and confusing.

The proposed instruction will not mislead the jury, as defendants suggest, with respect to damages awardable based upon the scope of infringement. Defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law.  Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing.  That is not the law.  This case is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld," even though the amount of expression copied from each episode was relatively small.  *See id.* at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.")

Here, as in *Castle Rock*, most of Bryant's drawings are a single series of depictions of the same four characters (i.e., the original Bratz characters),

1   developed for a specific purpose (creating, pitching and developing Bratz dolls).

2   Accordingly, it would be prejudicial and wholly artificial for the Court to instruct

3   the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite

4   any authority to support their objection.  In any case, the proposed damages

5   instructions, which are also based upon the Ninth Circuit Model Instructions, make

6   clear the proper standards for damages determination.

1   **MATTEL'S SPECIAL JURY INSTRUCTION NO. ___**

2   **AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS**

3

4   The defendants contend that Mattel's lawsuit was not filed within the time

5   set by law.  This time is called the "statute of limitations."

6   For Mattel's claim of copyright infringement, the statute of limitations is

7   three years.

8   To succeed on their statute of limitations defense, the defendants must prove

9   that Mattel's claimed harm occurred more than three years prior to April 27, 2004

10   unless Mattel proves that three years prior to April 27, 2004, it did not discover,

11   and did not know of facts that would have caused a reasonable person to suspect

12   the generic elements of its causes of action – specifically, that Mattel owned Bratz

13   works because they were created by Carter Bryant while he was employed by

14   Mattel, and that defendants infringed the copyrights in those Bratz works by

15   creating substantially similar works.

16   Mattel was not required to bring a lawsuit based on suspicions alone.  The

17   statute of limitations began to run only when Mattel had or should have had an

18   awareness of facts sufficient to identify the copyright infringement.

19

20   **Authority:**  CACI 4120 (modified); CACI 455 (modified); 17 U.S.C.

21   § 507(b); Cal. Code Civ. Pro. § 339(1);  Cal. Code Civ. Pro. § 338(c); *Rambus*

22   *Inc. v. Samsung Electronics Co.*, 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007); *Fox*

23   *v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis added);

24   *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (a

25   copyright infringement claim accrues when the plaintiff knows of the infringement

26   or is chargeable with such knowledge); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F.

27   Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a

28   way that pressures litigants to file suits based merely on suspicions and fears.

-198-

1   …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to
2   file an action with no other basis would offend norms articulated in rules like
3   Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F.
4   Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has
5   "`an awareness of sufficient facts to identify a particular cause of action… [It does]
6   not mean the kind of notice -- based on hints, suspicions, hunches or rumors -- that
7   requires a plaintiff to make inquiries in the exercise of due diligence, but not to file
8   suit.'" ) (citation omitted).

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS

The preceding instruction is objectionable to the extent it assumes that Mattel's claims relate-back to its April 2004 complaint. As the MGA Parties showed in their summary judgment papers, and in their objections to Mattel's instructions on "relation-back" herein, Mattel failed to satisfy the requirements for "relation-back" for claims against new parties; this issue is currently under submission before the Court. Mattel also failed to satisfy the relation-back requirements for any new claims asserted against Bryant.  F.R.C.P. 15(c).

In fact, Mattel has ***already conceded*** that there is no "relation-back" of its copyright claim asserted against MGA (HK) and Larian. (See Mattel MSJ Opp'n at 46-47 (addressing relation back under Rule 15(c) only for its copyright infringement claim against Bryant and MGA, the latter considered by Mattel as having been made a party to the action via intervention; ignoring altogether "relation-back" of its copyright infringement claims against MGA (HK) and Larian); cf. MGA MSJ at 29-32 (setting forth the "mistake" requirement for relation back of Mattel's copyright infringement claim under Rule 15 (c).) By failing to address the MGA Parties' argument on summary judgment, Mattel conceded it. See, e.g., So. Nev. Shell Dealers Ass'n v. Shell Oil Co., 725 F. Supp. 1104, 1109 (D. Nev. 1989) (finding party opposing summary judgment implicitly conceded issue by failing to respond to movant's argument). Indeed, Mattel could not argue otherwise, as it is pretty much undisputed that Mattel knew of MGA (HK)'s and Larian's identities before it filed its complaint against Bryant in April 2004, and ***it is the mistake in defendant's identity*** – and not lack of knowledge as to its liability – that is required for "relation back" of claims against new parties under Rule 15(c).

1    The instruction is further improper because Mattel's copyright claim cannot

2    relate back to the original complaint as a matter of law – and that applies to all the

3    defendants involved. This is because at the time Mattel filed its original complaint

4    in April 2004, it did not have a copyright registration for the copyrights at issue

5    here. A copyright registration is a jurisdictional prerequisite for Mattel to maintain

6    its copyright claims, and "relation-back" rules cannot supplant jurisdictional

7    standing. See Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1285 (11th

8    Cir. 2000) (plaintiff cannot relate back its copyright claims where plaintiff failed to

9    register its copyrights prior to filing of the original complaint, and the statute of

10   limitation expired before the registration); Country Road Music, Inc. v. MP3.com,

11   Inc., 279 F. Supp. 2d 325, 332-33 (S.D.N.Y. 2003) (copyright infringement claim

12   does not relate back to original complaint where plaintiff failed to register

13   copyright within the limitations period); see also Miguel v. Country Funding

14   Corp., 309 F.3d 1161, 1165 (9th Cir. 2002) (rules governing "relation-back" of

15   claims "may not be used to extend federal jurisdiction").

16   The instruction is also objectionable to the extent it applies "discovery rule"

17   to Mattel's copyright claims.  As the MGA Parties have shown in their summary

18   judgment papers, because Mattel's copyright infringement claim is essentially a

19   claim for ownership, the statute of limitations for that claim began to run upon

20   MGA's plain and express repudiation of Mattel's ownership claim in the property

21   at issue.  See Welles v. Turner Entm't Co., 503 F.3d 728, 734 (9th Cir. 2007);

22   Minder Music Ltd. v. Mellow Smoke Music Co., 1999 WL 820575, 52 U.S.P.Q.

23   2d 1700, 1701 (S.D.N.Y. 1999); see also Roger Miller Music, Inc. v. Sony/ATV

24   Publ'g, LLC, 477 F.3d 383, 389-90 (6th Cir. 2007).  The appropriate dates are set

25   forth in the MGA Parties' and Bryant's proposed jury instructions and those are the

26   ones that should be read to the jury.

27

28

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

MGA's contention that the copyright claim against MGA (HK) and Larian does not relate back is irrelevant because the statute of limitations for copyright infringement is rolling, *i.e.*, it makes actionable all acts of infringement that occurred within three years of commencing the action. *Roley v. New World Pictures, Ltd.*, 19. F.3d 479 (9th Cir. 1994); *see also* Mattel's Proposed Jury Instruction re: Statute of Limitations—Copyright Infringement (describing the rolling statute of limitations for infringement claims). Therefore, Mattel's copyright claim against these defendants is timely regardless of whether the state or federal relation back standard applies. In any event, as set forth in Mattel's summary judgment papers, Mattel learned of the infringement on November 23, 2003, and moved to amend its complaint on November 20, 2006. Accordingly, Mattel's copyright claim against MGA (HK) and Larian is timely notwithstanding relation back issues.

Defendants contention that Mattel's claim for copyright infringement may not relate back to any pleading filed prior to October 30, 2006, when Mattel obtained registrations of its copyright in Bratz is contrary to settled law. "[C]ourts have allowed the plaintiff's subsequent compliance with the registration . . . requirements to relate back to the date the lawsuit was filed, thus preserving claims that might otherwise have been barred by the statute of limitations." PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT, § 15.2 at p. 15:11 (citations omitted); *see also Co-Opportunities Inc. v. National Broad. Co.*, 510 F. Supp. 43, 49 (N.D. Cal. 1981) ("the subsequent recordation [of the copyright assignment] will be allowed to relate back so that the assignee acquires a right to sue as of the date of filing the action"); *Ruskin v. Sunrise Mgmt., Inc.*, 506 F. Supp. 1284, 1289 (D. Colo. 1981) ("Upon amendment [to allege recordation of copyright transfer], the copyright claim would relate back, for statute of limitation purposes, to the original filing

1   date of the complaint."*); Villeroy & Boch, S.a.r.l. v. THC Sys., Inc.*, 1989 WL

2   8936, at * 2 (S.D.N.Y. Jan. 30 1989) (denying defendant's motion for summary

3   judgment that argued the Court lacked subject matter jurisdiction because the

4   plaintiff did not record his copyright transfer, and granting leave to amend

5   complaint so that "supplemental complaint relates back to the filing date of the

6   initial complaint for statute of limitations purposes.").  Indeed, defendants'

7   authority recognized "there is authority supporting plaintiffs' request for leave to

8   file a Third Amended Complaint that would relate back to the commencement of

9   the action."  *Country Road Music, Inc. v. MP3.com, Inc.,* 279 F. Supp. 2d 325,

10  332-33 (S.D.N.Y. 2003) (denying leave to amend where the plaintiff sought to

11  amend its complaint to allege previously unpleaded and otherwise time-barred

12  infringements, and where the amendment "plaintiffs have offered no reason for

13  their undue delay in waiting until after defendant moved for summary judgment to

14  seek leave to amend, thereby prejudicing defendant in preparation for the

15  upcoming trial.")

16      Finally, defendants' attempt to paint Mattel's claims as solely for ownership

17  fails because Mattel asserted a cause of action for infringement that is separate and

18  distinct from its ownership claim.  Specifically, Mattel alleges that it owns certain

19  copyright registrations.  (Counterclaims, ¶ 83).  Mattel further alleges that

20  "[c]ounter-defendants have reproduced, created derivative works from and

21  otherwise infringed upon the exclusive rights of Mattel in its protected works

22  without Mattel's authorization."  (Id., ¶ 84).  This is a copyright infringement

23  claim, pure and simple, even though Mattel's complaint additionally includes

24  allegations of ownership of Bratz.  Indeed, defendants strongly dispute that the

25

26

27

28

1  Bratz dolls are substantially similar to Bryant's drawings,[12] and both parties have

2  retained experts on this issue.

3      MGA's authorities are also inapposite because they involve situations where

4  the copyright owner was aware of his rights.  Since Mattel was not aware that

5  Bryant had created Bratz drawings at Mattel or that it owned copyrights in Bryant's

6  drawings prior to 2003 at the earliest, these cases are inapplicable.  Further, as

7  explained above, ownership of Bratz is only one element of Mattel's infringement

8  claim.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27      [12]   Defendants' Responses to Mattel's Revised Fourth Set of Interrogatories at

28  No. 42.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## FRAUDULENT CONCEALMENT

If you find that the defendants concealed the facts that could have led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel, that Mattel was rightful owner of Bratz works and that defendants were infringing Mattel's copyrights, the statute of limitations period for Mattel to file its claims did not start to run until Mattel did not merely suspect, but actively had knowledge of, the specific wrongdoing above.

**Authority:** *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, _ Cal.4th _, 54 Cal. Rptr. 3d 735, 744 (2007) ("[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (reversing summary judgment on statute of limitations grounds where "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations"); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983).

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE

# FRAUDULENT CONCEALMENT

To the extent there is any evidentiary basis for the preceding instruction (which there is not), it is objectionable in that it asserts that tolling based on fraudulent concealment ends only once Mattel "kn[ows] of the specific wrongdoing" at issue. However, "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to end tolling based on fraudulent concealment. Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002); see also Eichman v. Fotomat Corp., 880 F.2d 149, 157 (9th Cir. 1989) (applying similar rule for claims asserted under federal law). The instruction is also objectionable to the extent it suggests that fraudulent concealment by one defendant would necessarily toll the statute as to another defendant not found culpable in the alleged concealment. See Sanchez v. South Hoover Hospital, 18 Cal. 3d 93, 100 ("The rationale for the foregoing rule [of fraudulent concealment] is that the culpable defendant should be estopped from profiting by his own wrong [t]o the extent that it hindered an 'otherwise diligent' plaintiff in discovering his cause of action.") (emphasis added).

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Defendants' contention that mere suspicion of *any* wrongdoing commences the running of limitation has no basis in law.  In fact, the proper standard – as set out by the California Supreme Court – is that a claim does not accrue if the plaintiff merely suspects an injury, if "a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 805 (2005).  Thus, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim."  *Id.* at 813.  Even for inquiry notice, mere suspicion that *something* may have harmed plaintiff is not enough.  *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11.");  *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "an awareness of sufficient facts to identify a particular cause of action… [It does] not mean the kind of notice -- based on hints, suspicions, hunches or rumors -- that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit." ) (citation omitted).

In any event, defendants' objections ignore that their own authority holds that the statute of limitations begins to run when a plaintiff has knowledge of both the harm and its cause.  *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 890-91 (2002); *Hynix Semiconductor Inc. v. Rambus Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007).

Finally, defendants fail to offer any authority for the proposition that fraudulent concealment operates to toll the statute of limitations against only the defendant who caused the concealment.  *Sanchez* stands for the uncontroversial proposition that a defendant implicated in concealment cannot benefit by his wrong.  Here, Mattel has alleged—and will prove—that all defendants participated in a scheme to conceal the true origins of Bratz.  Indeed, the Court already ruled that Bryant failed to communicate his inventions to Mattel and "secretly entered into a contract with Mattel's competitor . . . to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 6.

<u>**MATTEL'S SPECIAL JURY INSTRUCTION NO.**</u>

<u>**STATUTE OF LIMITATIONS—TOLLING AS A RESULT OF STAY OF**</u>

<u>**PROCEEDINGS**</u>

When calculating the statute of limitations period for any claim, you must add to any limitations period the time during which proceedings in the case were stayed. The proceedings in the case were stayed from May 20, 2005 until May 20, 2006 (a total of 362 days).

**Authority:** *Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118, *1 (N.D. Cal. 2007) (holding that "statute of limitations should be equitably tolled for all putative class members … from March 2, 2007 [when action was stayed] until the stay is lifted.") ; *Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations…"); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) (permitting leave to add a RICO claim against new defendants and finding that the claim was timely because the "[t]he statute of limitations was equitably tolled during the stay of discovery").

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE STATUTE OF LIMITATIONS—TOLLING AS A RESULT OF STAY OF PROCEEDINGS**

The preceding instruction fails to advise the jury that Mattel cannot apply tolling based on the stay to the claims/parties that were not part of the case at the time the stay in question was entered. See Korody-Colyer Corp. v. Gen. Motors Corp., 828 F.2d 1572, 1575 (Fed. Cir. Cal. 1987); Lipman v. Rice, 213 Cal. App. 2d 474, 480 (1963); see also Friedman v. Estate of Presser, 929 F.2d 1151, 1156-57 (6th Cir. 1991) (stay cannot effect right of non-parties). The instruction further fails to advise the jury that the stay in question must have precluded filing of pleadings in order for tolling to apply and note that Mattel in this case actually filed its First Amended Answer on September 20, 2005, while the stay was pending. See Korody-Colyer Corp., 828 F.2d at 1575 (denying tolling based on stay of proceedings, observing that plaintiff "points to absolutely no evidence indicating … that [he] was precluded from adding its … [new] claim to its pleadings"; adding that plaintiff "cannot now seize upon the stay as basis for excusing its slumber and its failure to amend its pleadings for more than four years").  Finally, this instruction fails to clarify for the jury that the tolling does not apply if the claims were already time-barred as of May 20, 2005.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed jury instruction is well supported by the authorities cited, which defendants fail to distinguish. *See Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118, *1 (N.D. Cal. 2007) (holding that "statute of limitations should be equitably tolled for all putative class members … from March 2, 2007 [when action was stayed] until the stay is lifted."); *Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations…"); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) (permitting leave to add a RICO claim against new defendants and finding that the claim was timely because the "[t]he statute of limitations was equitably tolled during the stay of discovery").

The cases defendants cite, however, are easily distinguishable.  In *Korody-Colyer*, the plaintiff conceded at oral argument that the stay did not prevent it from moving to amend the complaint.  That is not the case here.  Here, the stay clearly applied to *all* proceedings and operated to prevent Mattel from moving for leave to amend its Complaint.  Defendants' reference to Mattel's filing of an amended answer in 2006 is unavailing.  Mattel moved to strike portions of MGA's complaint before the Ninth Circuit granted Mattel's petition for an interlocutory appeal of the district court's jurisdictional ruling.  The district court granted Mattel's motion in part <u>after</u> the Ninth Circuit granted the petition and, notwithstanding the stay, ordered Mattel to file an amended answer by September 19, 2006.  Mattel should not be penalized for complying with the district court's order.

The *Lipman* case is not applicable because it was decided under California procedural law, and specifically, the now-repealed California Code of Civil Procedure Section 946, which is by definition a procedural, not substantive, rule for the purposes of Erie Railroad.  Here, federal law governs.  The cases cited by Mattel demonstrate that a stay tolls the statute of limitations in federal court.

1    Moreover, a more recent case indicates that even under California law, a stay

2    pending appeal tolls the applicable statute of limitations.  *See Korody-Colyer Corp.*

3    *v. Gen. Motors Corp.*, 208 Cal. App. 3d 1148, 1150-51 (1989) (noting that "[i]f the

4    underlying action is appealed, the statute is tolled during the pendency of the

5    appeal").  In any event, no California court appears to have followed *Lipman*.

6         Finally, as explained in Mattel's summary judgment briefing, all of its claims

7    are timely.  Therefore, it would be inappropriate and confusing to instruct the jury

8    that tolling does not apply to time-barred claims.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## STATUTE OF LIMITATIONS—COPYRIGHT INFRINGEMENT

Even if you find that Mattel filed its copyright infringement claim more than three years after it discovered infringement of its copyrights in Bryant's drawings, Mattel can still recover for all infringing acts that took place within three years of the filing of its complaint.

**Authority:**  *Roley v. New World Pictures, Ltd.*, 19. F.3d 479 (9th Cir. 1994) ("Section 507(b) is clear on its face.  It does not provide for a waiver of infringing acts within the limitation period if earlier infringements were discovered and not sued upon, nor does it provide for any reach back if an act of infringement occurs within the statutory period. . . . In a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of the suit.") (citations and quotation marks omitted).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**STATUTE OF LIMITATIONS—COPYRIGHT INFRINGEMENT**

Because Mattel's copyright infringement claim is essentially a claim for ownership, the statute of limitations for that claim began to run upon MGA's plain and express repudiation of Mattel's ownership claim in the property at issue, which makes the "rolling" statute of limitations theory set forth in the preceding instruction inapplicable here.  See Welles v. Turner Entm't Co., 503 F.3d 728, 734 (9th Cir. 2007); Minder Music Ltd. v. Mellow Smoke Music Co., 1999 WL 820575, 52 U.S.P.Q. 2d 1700, 1701 (S.D.N.Y. 1999); see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389-90 (6th Cir. 2007) (where plaintiff asserts claims based on both infringement and ownership, the claim is for ownership for purposes of statute of limitations).

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants' attempt to paint Mattel's claims as solely for ownership fails because Mattel asserted a cause of action for infringement that is separate and distinct from its ownership claim. Specifically, Mattel alleges that it owns certain copyright registrations. (Counterclaims, ¶ 83). Mattel further alleges that "[c]ounter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization." (Id., ¶ 84). This is a copyright infringement claim, pure and simple, even though Mattel's complaint <u>additionally</u> includes allegations of ownership of Bratz. Indeed, defendants strongly dispute that the Bratz dolls are substantially similar to Bryant's drawings,[13] and both parties have retained experts on this issue.

Defendants' authorities are inapposite because they involve situations where the copyright owner was aware of his rights. Because Mattel was not aware prior to 2003 at the earliest that Bryant had created Bratz drawings while employed by Mattel or that Mattel owned copyrights in Bryant's drawings, these cases are inapplicable. Further, as explained above, ownership of Bratz is only one element of Mattel's infringement claim.

---

[13]   Defendants' Responses to Mattel's Revised Fourth Set of Interrogatories at No. 42.

## <u>MATTEL'S SPECIAL JURY INSTRUCTION NO.</u>
## <u>STATUTE OF LIMITATIONS—RELATION BACK</u>

You have heard evidence that Mattel filed certain of its claims on April 27, 2004, when it filed its complaint against Carter Bryant, and filed other claims on November 20, 2006, when it sought leave to amend its complaint.  (The Court granted Mattel leave to amend its complaint on January 12, 2007.)  Regardless of when these claims were actually filed, for purposes of determining whether Mattel's copyright infringement claims were filed within the applicable statute of limitations period, Mattel's claims against Carter Bryant and MGA are deemed filed as of April 27, 2004.

**Authority:**  *Fed. R. Civ. P.* 15(c)(1)(B) (claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"); *Martel v. Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir. 1989) (new claim related back because it arose from the same transaction and occurrence as original claim); Court's January 12, 2007 Order, at 13 (finding the copyright claim relates back to "the same conduct or transaction contained in the original complaint, filed in April 2004").

## OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE

## STATUTE OF LIMITATIONS—RELATION BACK

The preceding instruction is misleading, as it does not distinguish between new parties and existing parties at the time of the complaint's amendment. Neither MGA (HK) nor Larian were named as defendants in the '04 Complaint; therefore, they were new parties for purposes of Mattel's copyright claim asserted in November 2006. See Union Pacific R.R. Co. v. Nev. Power Co., 950 F.2d 1429, 1432 (9th Cir. 1991) (for purposes of the "relation-back" doctrine, "[w]e differentiate between pleadings attempting to amend *claims* from those seeking to amend *parties*"). Thus, the "relation-back" rules that apply to MGA (HK) and Larian are different from those recited in the preceding instruction.

Under Rule 15(c) of the Federal Rules of Civil Procedure, there is an additional requirement for "relation-back" of claims against new parties – it is not enough, as Mattel contends, for the claim to arise out of the same facts as in the original complaint; rather, an amendment adding claims against a new defendant may not relate back unless that defendant "should have known that, but for a mistake concerning identity, the action would have been brought against it." In re Syntex Corp. Sec. Litig., 855 F. Supp. 1086, 1099 (N.D. Cal. 1994) ("[s]ince Plaintiffs do not contend that they made a mistake concerning [defendants]'s identity, they are not entitled to take advantage of Rule 15(c)"), citing Louisiana-Pacific Corp. v. ASARCO, Inc., 5 F.3d 431, 434 (9th Cir. 1993) (denial of "relation-back" was proper where plaintiff "knew perfectly well" the identity of the potential defendant and "[t]here was no mistake of identity, but rather a conscious choice of whom to sue"). The relevant inquiry focuses on when the plaintiff first had notice of defendant's correct identity, not on when the plaintiff first had notice of the defendant's culpability. See Syntex Corp., 855 F. Supp. at 1099; see also In re Network Assocs., Inc. II Sec. Litig., 2003 WL 24051280, at *8 (N.D. Cal. Mar.

1  25, 2003) ("Relation back is only allowed for a mistake in identity, not liability."),

2  citing Louisiana-Pacific Corp., 5 F.3d at 434. Furthermore, plaintiff's "lack of

3  knowledge regarding the identity of a proper party does not constitute mistake" for

4  purposes of "relation-back" under Rule 15(c). Butler v. Robar Enters., Inc., 208

5  F.R.D. 621, 623 (C.D. Cal. 2002) (collecting authority). Mattel's citation to the

6  Court's January 12, 2007 Order is misplaced, as the Court never reached the above

7  requirements for "relation-back" of claims against *new* parties.

8       Consequently, where a plaintiff is aware of the potential defendant's identity

9  at the time the original complaint is filed but is uncertain whether the potential

10  defendant may be found liable, the relation back as to that defendant – i.e., the

11  defendant that plaintiff had known of from the outset – is never allowed. See

12  Gilmore v. Cal., 1995 WL 492625, at *2 (N.D. Cal. Aug. 10, 1995); see also Brink

13  v. First Credit Res., 57 F. Supp. 2d 848, 856 (D. Ariz. 1999); cf. Pembroke, By &

14  Through Pembroke v. City of San Rafael, 1994 WL 443683, at *3 (N.D. Cal. Aug.

15  2, 1994) (no "relation-back" of claims asserted against new defendants where the

16  defendants' identities were publicly available before plaintiff filed her original

17  complaint).

18       Similarly, where plaintiff is unaware of a potential defendant or its identity

19  at the time the complaint is filed, learns of the potential defendant within the time

20  established in the statute of limitations, but seeks to add that defendant only after

21  the statute of limitations has expired, relation back also fails. See Kilkenny v. Arco

22  Marine Inc., 800 F.2d 853, 857 (9th Cir. 1986) (plaintiff was not allowed to amend

23  after the statute of limitations had run when she was notified of potential

24  defendants in the named defendant's answer to the complaint and the answer was

25  filed within the limitations period). As the Ninth Circuit explains, Rule 15(c) is not

26  served by allowing plaintiff to relate back its claims in these situations, explaining:

27       Rule 15(c) was intended to protect a plaintiff who mistakenly names a

28       party and then discovers, after the relevant statute of limitations has

-218-

1  run, the identity of the proper party. Rule 15(c) was <u>never intended</u> to

2  assist a plaintiff who <u>ignores or fails to respond in a reasonable</u>

3  <u>fashion to notice of a potential party</u>, nor was it intended to permit a

4  plaintiff to engage in piecemeal litigation.

5  <u>Id.</u> at 857-8 (emphasis added). In other words, Rule 15(c) gives no relief to a

6  plaintiff who tactically decides to omit a party from the original pleading – the

7  same party that plaintiff later added by amendment. <u>See</u> <u>Brink</u>, 57 F. Supp. 2d at

8  856.

9      In fact, Mattel has ***already conceded*** that there is no "relation-back" of its

10  copyright claim asserted against MGA (HK) and Larian. (<u>See</u> Mattel MSJ Opp'n at

11  46-47 (addressing relation back under Rule 15(c) only for its copyright

12  infringement claim against Bryant and MGA, the latter considered by Mattel as

13  having been made a party to the action via intervention; ignoring altogether

14  "relation-back" of its copyright infringement claims against MGA (HK) and

15  Larian); <u>cf.</u> MGA MSJ at 29-32 (setting forth the "mistake" requirement for

16  relation back of Mattel's copyright infringement claim under Rule 15 (c).) By

17  failing to address the MGA Parties' argument on summary judgment, Mattel

18  conceded it. <u>See, e.g.</u>, <u>So. Nev. Shell Dealers Ass'n v. Shell Oil Co.</u>, 725 F. Supp.

19  1104, 1109 (D. Nev. 1989) (finding party opposing summary judgment implicitly

20  conceded issue by failing to respond to movant's argument). Indeed, Mattel could

21  not argue otherwise, as it is pretty much undisputed that Mattel knew of MGA

22  (HK)'s and Larian's identities before it filed its complaint against Bryant in April

23  2004, and ***it is the mistake in defendant's identity*** – and not lack of knowledge as

24  to its liability – that is required for "relation back" of claims against new parties

25  under Rule 15(c).

26      The instruction is further improper because Mattel's copyright claim cannot

27  relate back to the original complaint as a matter of law – and that applies to all the

28  defendants involved. This is because at the time Mattel filed its original complaint

1   in April 2004, it did not have a copyright registration for the copyrights at issue

2   here. A copyright registration is a jurisdictional prerequisite for Mattel to maintain

3   its copyright claims, and "relation-back" rules cannot supplant jurisdictional

4   standing. See Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1285 (11th

5   Cir. 2000) (plaintiff cannot relate back its copyright claims where plaintiff failed to

6   register its copyrights prior to filing of the original complaint, and the statute of

7   limitation expired before the registration); Country Road Music, Inc. v. MP3.com,

8   Inc., 279 F. Supp. 2d 325, 332-33 (S.D.N.Y. 2003) (copyright infringement claim

9   does not relate back to original complaint where plaintiff failed to register

10  copyright within the limitations period); see also Miguel v. Country Funding

11  Corp., 309 F.3d 1161, 1165 (9th Cir. 2002) (rules governing "relation-back" of

12  claims "may not be used to extend federal jurisdiction").

13          Finally, the above rules as to "relation-back" against new parties also apply

14  to MGA, despite MGA's intervention in the case in December 2004. This is

15  because the intervention was allowed pursuant to a stipulation between the parties,

16  and Mattel agreed to MGA's intervention "as a procedural matter" only. (See

17  December 7, 2004 Stipulation.) Moreover, the Ninth Circuit, in its decision on

18  jurisdiction, Mattel, Inc. v. Bryant, 446 F.3d 1011, 1013 (9th Cir. 2006),

19  underscored that "Mattel seeks no relief from MGA", which shows Mattel was on

20  notice that MGA did not consider itself a party via intervention. Indeed, the Ninth

21  Circuit said so despite Mattel's argument on appeal that MGA's intervention meant

22  that "this action now involves claims by Mattel against MGA". (Mattel's appellate

23  brief in Mattel, Inc. v. Bryant, found at 2005 WL 3134630, at *18.) Moreover,  in

24  her decision below, Judge Manella was also skeptical of Mattel's argument that

25  MGA took upon Mattel's claims via intervention. See Mattel, Inc. v. Bryant, 441

26  F. Supp. 2d 1081, 1098 n.15 (C.D. Cal. 2005) (distinguishing Mattel's sole

27  authority on the issue as involving intervenor that intervened only to avoid default

28  because the original defendant never appeared in the action). Judge Manella

eventually found it unnecessary to decide this issue. Indeed, Mattel cited no authority allowing relation back of claims against an intervenor-***defendant***; and the few authorities that deal with this precise issue hold ***against*** such relation back. See, e.g., Davis v. Outdoor Equip. Co., 551 S.W.2d 72, 73 (Tex. Civ. App. 1977). This is especially so where the interests for the intervenor and the original defendant are not necessarily aligned, which is the case with Bryant's and MGA Parties' interests here. See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th Cir. 1996) (no relation back where interests of original party and intervenor were adverse).

Even assuming, for argument's sake, that Mattel's failure to register did not preclude relation back and that MGA's intervention permitted relation back, and it does not, for purposes of the statute of limitations, then MGA would be deemed to have become a party as of the date it intervened, not when the complaint was filed. See U.S. v. Randall & Blake, 817 F.2d 1188, 1192 (5th Cir. 1987) (for statute of limitations, the date of intervention is the operative date).  Here, MGA did not intervene until December 7, 2004 and so, even if the intervention mattered, that would be the date for any "relation back" for purposes of the statutes of limitations.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3         MGA's contention that the copyright claim against MGA (HK) and Larian

4    does not relate back is irrelevant because the statute of limitations for copyright

5    infringement is rolling, *i.e.*, it makes actionable all acts of infringement that

6    occurred within three years of commencing the action.  *Roley v. New World*

7    *Pictures, Ltd.*, 19. F.3d 479 (9th Cir. 1994).  Therefore, Mattel's copyright claim

8    against these defendants is timely regardless of whether the state or federal relation

9    back standard applies.  In any event, as set forth in Mattel's summary judgment

10   papers, Mattel learned of the infringement on November 23, 2003, and moved to

11   amend its complaint on November 20, 2006.  Accordingly, Mattel's copyright

12   claim against MGA (HK) and Larian is timely notwithstanding relation back

13   issues.

14         Defendants contention that Mattel's claim for copyright infringement may

15   not relate back to any pleading filed prior to October 30, 2006, when Mattel

16   obtained registrations of its copyright in Bratz is contrary to settled law.  "[C]ourts

17   have allowed the plaintiff's subsequent compliance with the registration . . .

18   requirements to relate back to the date the lawsuit was filed, thus preserving claims

19   that might otherwise have been barred by the statute of limitations."  PAUL

20   GOLDSTEIN, GOLDSTEIN ON COPYRIGHT, § 15.2 at p. 15:11 (citations omitted); *see*

21   *also Co-Opportunities Inc. v. National Broad. Co.*, 510 F. Supp. 43, 49 (N.D. Cal.

22   1981) ("the subsequent recordation [of the copyright assignment] will be allowed

23   to relate back so that the assignee acquires a right to sue as of the date of filing the

24   action"); *Ruskin v. Sunrise Mgmt., Inc.*, 506 F. Supp. 1284, 1289 (D. Colo. 1981)

25   ("Upon amendment [to allege recordation of copyright transfer], the copyright

26   claim would relate back, for statute of limitation purposes, to the original filing

27   date of the complaint.")*; Villeroy & Boch, S.a.r.l. v. THC Sys., Inc.*, 1989 WL

28   8936, at * 2 (S.D.N.Y. Jan. 30 1989) (denying defendant's motion for summary

judgment that argued the Court lacked subject matter jurisdiction because the plaintiff did not record his copyright transfer, and granting leave to amend complaint so that "supplemental complaint relates back to the filing date of the initial complaint for statute of limitations purposes.").  Indeed, defendants' authority recognized "there is authority supporting plaintiffs' request for leave to file a Third Amended Complaint that would relate back to the commencement of the action."  *Country Road Music, Inc. v. MP3.com, Inc.,* 279 F. Supp. 2d 325, 332-33 (S.D.N.Y. 2003) (denying leave to amend where the plaintiff sought to amend its complaint to allege previously unpleaded and otherwise time-barred infringements, and where the amendment "plaintiffs have offered no reason for their undue delay in waiting until after defendant moved for summary judgment to seek leave to amend, thereby prejudicing defendant in preparation for the upcoming trial.")

Further, defendants' attempt to paint Mattel's claims as solely for ownership fails because Mattel asserted a cause of action for infringement that is separate and distinct from its ownership claim.  Specifically, Mattel alleges that it owns certain copyright registrations.  (Counterclaims, ¶ 83).  Mattel further alleges that "[c]ounter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization."  (Id., ¶ 84).  This is a copyright infringement claim, pure and simple, even though Mattel's complaint *additionally* includes allegations of ownership of Bratz.  Indeed, defendants strongly dispute that the Bratz dolls are substantially similar to Bryant's drawings,[14] and both parties have retained experts on this issue.

_____

[14]  Defendants' Responses to Mattel's Revised Fourth Set of Interrogatories at No. 42.

1   MGA's authorities are also inapposite because they involve situations where

2   the copyright owner was aware of his rights.  Since Mattel was not aware that

3   Bryant had created Bratz drawings at Mattel or that it owned copyrights in Bryant's

4   drawings prior to 2003 at the earliest, these cases are inapplicable.  Further, as

5   explained above, ownership of Bratz is only one element of Mattel's infringement

6   claim.

7        With respect to relation back of claims against MGA, MGA's argument is

8   specious.  It is well-settled that, once a party intervenes under *Fed. R. Civ. P.*

9   *24(a)(2)*, it takes on the status of a full party to the action.  *See U. S. v. Oregon*, 657

10  F.2d 1009, 1014 (9th Cir. 1981) (intervenors under *Fed. R. Civ. P.* 24(a)(2), enter

11  the suit with the status of original parties and are fully bound by all court orders);

12  *see also Northeast Clackamas Co. Elec. Coop., Inc. v Continental Gas Co.*, 221

13  F2d 329, 332-33 (9th Cir. 1955) (intervenor has the right to conduct discovery,

14  assert counterclaims against the original parties, participate at trial, and appeal);

15  *Brown v. Demco Inc.*, 792 F.2d 478, 480 (5th Cir. 1986) (if a motion to intervene is

16  granted, the intervenor is treated as if it were an original party and has equal

17  standing with the original parties).  With rights come responsibilities.  By

18  successfully intervening, MGA has made itself subject to complete adjudication of

19  all issues in the litigation between itself and Mattel. Id.  Mattel's Phase One claims

20  against MGA, like its claims against Bryant himself, therefore relate back to the

21  April 2004 complaint.  Because all the claims against MGA arise out of the same

22  underlying misconduct (Bryant's work on Bratz during his Mattel tenure) as do

23  Mattel's original claims against Bryant, they fully satisfy the "transactional"

24  requirements of both federal and state law governing relation back.

25       Further, MGA's contention that its interests in this case do not align with

26  Bryant's is not credible.  Both the MGA parties and Bryant contend that Mattel

27  does not have any rights in Bratz.  Indeed, the MGA parties and Bryant's joined in

28  each others' motions for summary judgment.  Under these circumstances, Mattel's

1  claims against MGA relate back to the date of Mattel's complaint against Bryant.

2  *Cummings v. U.S.*, 704 F.2d 437 (9th Cir. 1983) (claimant's insurer's complaint in

3  intervention seeking to enforce its right of subrogation related back to filing of

4  claimant's original complaint); *DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d

5  826, 831-32 (9th Cir. 1963) (intervention of a party plaintiff that shared interests

6  with the original plaintiff related back for statute of limitations purposes).

7  Defendants' authority is distinguishable. In *U.S. v. Randall & Blake*, 817 F.2d

8  1188, 1192 (5th Cir. 1987), the court held merely that the additional plaintiff's

9  filing of a motion for intervention is equivalent to commencing an action for

10  statute of limitation purposes.  Here, however, MGA intervened as a *defendant*,

11  answering the complaint that Mattel filed in April 2004 against Bryant.  The claims

12  against it, therefore, relate back to the date of that complaint.

13      In any event, it is irrelevant whether Mattel's claims against MGA relate

14  back to the date of Mattel's complaint against Bryant or the date of MGA's

15  intervention.  The shortest statute of limitations is two years, and – even under

16  defendants' version of the events – Mattel did not have requisite knowledge of

17  MGA's wrongdoing two years before MGA intervened.

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

## <u>MATTEL'S SPECIAL JURY INSTRUCTION NO.    </u>
## <u>COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER</u>

The defendants claim that their rights in the Bratz works created by Carter Bryant should prevail over Mattel's rights in those works because Mr. Bryant transferred the rights to MGA after he transferred them to Mattel and MGA obtained the rights in good faith.  In order to establish that MGA's later-acquired rights in the Bratz works should prevail, the defendants have the burden of proving by a preponderance of the evidence that MGA:

    1.    Received the transfer of rights in Bratz works in good faith and without notice of Mr. Bryant's earlier transfer to Mattel;

    2.    Paid valuable consideration;

    3.    Registered each of the copyrights in Bratz works with the Copyright Office; and

    4.     Duly recorded the transfer of the rights to MGA, i.e., the MGA/Bryant assignment agreement, before Mattel recorded its transfer.

To duly record the transfer, as required for the fourth element, MGA must have submitted to the Copyright Office the MGA/Bryant assignment agreement such that the recorded document, or material attached to it, specifically identifies the copyrighted works to which the assignment pertains.  A registration of a copyright is not a substitute for recordation.

It is undisputed in this case that Mr. Bryant's assignment to MGA of Bratz works has not been recorded.

1    **Authority:**  17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music

2    Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office

3    Practices*, Chapters 1602.2, 1604.02.

## OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER

The MGA Parties and Bryant object to this proposed instruction to the extent that the term "Bratz works" is improper. The MGA Parties and Bryant also object to the following sentence: "It is undisputed in this case that Mr. Bryant's assignment to MGA of Bratz works has not been recorded." Among other things, MGA's registrations each specifically note that MGA's ownership in the work at issue is by "assignment," which is all that is required by 17 U.S.C. § 205(d). This instruction also fails to note that there is no dispute that MGA's registrations of the works at issue were recorded with the Copyright Office long before Mattel's purported registrations. In addition, as the MGA Parties argued in opposing Mattel's motion for partial summary judgment, where, as here, a plaintiff has *actual* knowledge of the assignment, the recordation element should not be strictly construed and the jury should be permitted to consider whether plaintiff's actual knowledge suffices to establish the recordation element of the section 205(d) defense. (See MGA MSJ Opp'n at 30-31, citing 2 Nimmer on Copyright § 7.16 (2007).)

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

This proposed instruction conforms to the requirements of the statute. Although defendants object to the term Mattel "Bratz works," they fail to offer any alternative term that would encompass the materials in dispute.  Accordingly, their objection to that term should be overruled.

Defendants' objection to the language that "[i]t is undisputed in this case that Mr. Bryant's assignment to MGA of Bratz works has not been recorded" is without merit because defendants admitted that they never recorded the assignment document itself.  *See* MGA's Responses to Mattel's Third Set of Requests for Admission Nos. 241-44, 249-52.

Defendants' objection that MGA's registrations noted that MGA's ownership in the work at issue is by "assignment" is of no moment because the statute requires recordation.  Section 205(d) by its own terms pertains to transfers, not registrations.  *See* 17 U.S.C. § 205(d).  Under the statute, the transferee who first registers *and records* prevails over any later recording transferee.  *See id.* ("later transfer prevails if recorded in such manner" (i.e., the manner required to give constructive notice under subsection (c)); *see also id.* § 205(c) (for recordation to give constructive notice, it must be "(1) [a] document … [that] specifically identifies the [transferred] work …; and (2) registration must be made for the work").  *See also Peer Int'l Corp. v. Latin American Music Corp.*, 161 F. Supp. 2d 38, 48 (D.P.R. 2001)).

Finally, because Section 205(d) expressly requires recordation of the transfer document itself, defendants' contention that the instruction should inform the jury that defendants registered *copyrights* in Bryant's drawings is erroneous, and would be confusing to the jury.  Defendants are also wrong in suggesting that recordation is optional, or that the jury should not "strictly construe" the recordation requirement if Mattel had actual knowledge of the assignment.  Defendants cite no

1   case law to support this erroneous assertion, and the language of the statute and

2   information from the Copyright Office is unambiguous.  Recordation of the

3   transfer instrument itself is required.  *See* 17 U.S.C. § 205(d); *Peer Int'l Corp. v.*

4   *Latin Amer. Music Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium

5   II, *Copyright Office Practices*, Chapters 1602.2, 1604.02.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**17.22**

**COPYRIGHT—DAMAGES**

**(17 U.S.C. § 504)**

If you find for the plaintiff, Mattel, on any of its copyright infringement claims against the defendants, you must determine Mattel's damages.  Mattel is entitled to recover the actual damages suffered as a result of the infringement.  In addition, Mattel is also entitled to recover any profits of the defendants attributable to the infringement.  Mattel must prove damages by a preponderance of the evidence.

**Authority:**  9th Cir. Civ. Jury Instr. 17.22 (2007).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**COPYRIGHT—DAMAGES**

The MGA Parties and Bryant object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.  Further, the MGA Parties and Bryant object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the Ninth Circuit Model Instruction, as required by the Court.  *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objections to the form of the proposed instruction should be overruled.  There is no basis for defendants to object that the model instruction does not adequately explain the measure of damages to the jury, nor do they cite any authority in support of their contention that additional specificity is necessary. Defendants are simply trying to overcomplicate the instruction and confuse the jury.

**17.24**

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS**

**(17 U.S.C. § 504(b))**

Mattel is entitled to any profits of the defendants attributable to the infringement.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendant's gross revenue.

The defendant's profit is determined by deducting expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from sale of a product containing or using the copyrighted work or associated with the infringement.  Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue.  The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.  The defendants have the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007) (modified).

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS**

Contrary to Mattel's reference, this instruction is not part of 9th Circuit Civil Model Jury Instruction 17.24 and it does not accurately state the law. The MGA Parties and Bryant further object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties and Bryant further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.  Finally, the MGA Parties and Bryant object to this instruction because it fails to advise the jurors that they may not include in an award of profits any amount that they took into account in determining actual damages.

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the Ninth Circuit Model Instruction, as required by the Court.  *See* Court's Standing Scheduling Order, at 9. Mattel is therefore perplexed by defendants' objection that the proposed instruction "is not part of . . . 17.24 and it does not accurately state the law."  In any event, because Model Instruction 17.24 reflects the most recent articulation of the law, defendants' objections to the form of the proposed instruction should be overruled. There is no basis for defendants to object that the model instruction does not adequately explain the measure of damages to the jury, nor do they cite any authority in support of their contention that additional specificity is necessary.  The instruction makes clear that the jury should only award profits if Mattel "showed a causal relationship between the infringement and the defendant's gross revenue." Defendants are simply trying to overcomplicate the instruction and confuse the jury.  Defendants' objection that the instruction fails to inform the jury that they should not include in an award of profits "any amount that they took into account in determining actual damages" should be overruled because the proposed instructions and special verdict forms ask the jury to calculate damages as profits only.  Accordingly, this statement is confusing and unnecessary.

**MATTEL'S SPECIAL JURY INSTRUCTION NO. ___**

**COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS**

In determining what portion of the defendants' profits are attributable to copyright infringement, the benefit of the doubt should be given to Mattel, and not defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In performing the apportionment, the benefit of the doubt must always be given to the plaintiff, not the defendant . . . .").

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS

The MGA Parties and Bryant object to the instruction insofar as it suggests that MGA must prove the apportionment of its profits with precision. All that the law requires is a "reasonable and just apportionment." Abend v. MCA, Inc., 863 F.2d 1465, 1480 (9th Cir. 1988) ("[C]ourts cannot be expected to determine with 'mathematical exactness' an apportionment of profits."); see also Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 51 (2d Cir. 1939) (explaining that courts will make "the best estimate [they] can, even though it is really no more than a guess."); Caffey v. Cook, 409 F. Supp. 2d 484, 506 (S.D.N.Y. 2006) ("Apportionment is 'not an area susceptible to precise measurement' … particularly where the analysis does not rest on quantifiable factors such as minutes, pages or lines incorporating the infringed work, but rather on the incorporation of the infringed work into a new presentation."); accord Sygma Photo News, Inc. v. High Soc'y Magazine, Inc., 778 F.2d 89, 95 (2d Cir. 1985) (finding that the trial court "correctly held that want of precision is not a ground for denying apportionment altogether."); Multitherm Corp. v. Fuhr, 1991 U.S. Dist. LEXIS 10475, at *47 (D. Pa. July 24, 1991) (recognizing "that this measure of damages is imprecise" but that all that was required was a "reasonable and just apportionment."); cf. Walker v. Forbes, Inc., 28 F.3d 409, 414 (4th Cir. 1994) (upholding trial court's jury instruction stating that "[i]t is not required that [the defendant] prove these elements to a mathematical exactness. They must only prove them to a reasonable approximation…."). For this reason, the Fourth Circuit in Walker upheld the trial court's rejection of the very instruction Mattel proposes here. Id. (upholding rejection of plaintiff's proposed instruction that "Any error or doubt in your mind about the apportionment must be resolved in favor of the Plaintiff").

1    The MGA Parties and Bryant further object to the proposed jury instruction

2  insofar as it suggests that when infringing and non-infringing elements "cannot

3  readily be separated," all of the infringer's indirect profits should be awarded to the

4  copyright owner.  That is not the law.  See Cream Records, Inc., v. Jos. Schlitz

5  Brewing Co., 754 F.2d 826, 828 (9th Cir. 1985) ("Although the statute imposes

6  upon the infringer the burden of showing "the elements of profit attributable to

7  factors other than the copyrighted work," 17 U.S.C. § 504(b), nonetheless where it

8  is clear ... that not all of the profits are attributable to the infringing material, the

9  copyright owner is not entitled to recover all of those profits merely because the

10  infringer fails to establish with certainty the portion attributable to the non-

11  infringing elements.").

12    Moreover, the MGA Parties and Bryant object to this instruction because it

13  fails to ensure that the jury distinguishes among the defendants and makes

14  appropriate findings with respect to each defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3       Defendants' objections to this proposed instruction should be overruled.

4   Nothing in this instruction "suggests" that defendants must prove apportionment

5   with "mathematical exactness" or that all of defendants' profits should be awarded

6   to Mattel if apportionment is difficult.  Mattel's proposed instruction simply

7   informs the jury that, in apportioning profits as between infringing and non-

8   infringing activities, the benefit of the doubt is to be given to Mattel.  This is

9   supported by the law.  *See* 9th Cir. Civ. Jury Instr. 17.24, comments (2007)

10  (nothing that the law in the Ninth Circuit is that "the benefit of the doubt in

11  apportioning profits is given to the plaintiff."); *Frank Music Corp. v. Metro-*

12  *Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In performing the

13  apportionment, the benefit of the doubt must always be given to the plaintiff, not

14  the defendant . . . .").

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## COPYRIGHT—DAMAGES—INDIRECT PROFITS

Indirect profits are the defendant's profits with a less direct connection or link to the infringement. A plaintiff such as Mattel may be entitled to indirect profits in addition to direct profits. To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.

In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.

**Authority:** 9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710-11, 714 n.10 (9th Cir. 2004).

## OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE

## COPYRIGHT—DAMAGES—INDIRECT PROFITS

Contrary to Mattel's reference, this instruction is not part of 9th Circuit Civil Model Jury Instruction 17.24 and misstates the law. Specifically, the MGA Parties and Bryant object insofar as Mattel's proposed jury instruction mischaracterizes Mattel's burden of proof. To recover indirect profits, Mattel "must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." Mackie v. Rieser, 296 F.3d 909, 915-16 (9th Cir. 2002). The MGA Parties and Bryant also object to the proposed instruction insofar as it confuses the defendant's obligation to apportion elements of indirect profit attributable to factors other than the infringement with the plaintiff's initial burden to prove a causal relationship between the infringement and the indirect profits at issue. Mackie, 296 F.3d at 915 ("[T]here must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment."). Moreover, the MGA Parties and Bryant object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.

The MGA Parties and Bryant also object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product. Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement. Finally, the MGA Parties and Bryant also object to this instruction because it is unnecessary and improper and can only confuse and mislead the jury.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction explains to the jury that Mattel seeks indirect profits as well as direct profits generated as a result of defendants' copyright infringement.  This is supported by the Ninth Circuit Model Instruction.  *See* 9th Cir. Civ. Jury Instr. 17.24 (2007) ("You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the [profits generated indirectly from the infringement] [defendant's gross revenue].").  A brief additional instruction regarding indirect profits is appropriate because Mattel conformed the model instruction to relate to defendants' gross revenue, and separate instructions are less confusing to the jury.

There is no basis for defendants to object that the proposed instruction does not adequately explain the measure of damages to the jury.  The instruction makes clear that Mattel bears the burden of establishing "a causal relationship between the infringement and the profits generated indirectly from such infringement."  Nothing more is necessary.  None of the additional "explanations" requested by defendants are reflected in any of the Ninth Circuit Model Instructions regarding copyright damages.  Defendants are simply trying to overcomplicate the instructions and confuse the jury.

## <u>MATTEL'S SPECIAL JURY INSTRUCTION NO.</u>
## <u>COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT</u>

Mattel also claims that defendants engaged in willful infringement of Mattel's copyrights.  An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.     The defendant engaged in acts that infringed the copyright; and

2.     The defendant knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses or taxes from his/its gross revenue when the copyright infringement is willful.  You may deduct defendants' production costs only if defendants can demonstrate that the costs actually assisted in the production, distribution or sale of the infringing product(s).

**Authority:**  9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (noting that willful infringers are not permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1331-32 (9th Cir. 1982) ("[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate.") (emphasis added); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income taxes); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct overhead expenses); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful, overhead may not be deducted"); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585, *6  (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if the jury were to find willful infringement); 5 Melville B. Nimmer &

1  David Nimmer, *Nimmer on Copyright*, § 14.03[C][2] (2006) (it is "settled law" that

2  infringers are not entitled to income tax deductions).

# OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT

The MGA Parties and Bryant object to this proposed instruction because Mattel previously conceded that it is not contending a willful infringement by the MGA Parties and Bryant.  If it were, then Mattel's instruction that good faith is not a relevant inquiry on copyright infringement should be withdrawn.  Moreover, the MGA Parties and Bryant object to this proposed instruction to the extent that it appears to seek "statutory" damages as described in 17 U.S.C. § 504(c), and Mattel is not seeking statutory damages in this case, which is presumably why Mattel has not included in its proposed instructions 9th Circuit Civil Model Jury Instruction 17.25.  As Mattel stated in connection with its summary judgment motion in response to the MGA Parties' "good faith" affirmative defense:

> MGA suggests that Mattel has subjected itself to such a defense by "indicating that Mattel intends to seek enhanced statutory damages under 17 U.S.C. 504(c)," which does impose a scienter requirement. (MGA Opp. 32.) But MGA's prognostication is off-base: Mattel does ***not*** intend to seek enhanced statutory damages. And Mattel's inclusion in its complaint of words like "knowingly" and "deliberately" do not change the legal elements of ordinary copyright infringement."

(Mattel Inc.'s Reply Memorandum Of Points And Authorities In Further Support Of It's Motion For Partial Summary Judgment at 33 (emphasis in original).)

The MGA Parties and Bryant also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties and Bryant further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged

1  infringing act and/or product.  Thus, the instruction would mislead the jury by

2  suggesting that if any infringement at all is found, of any of the copyrights at issue,

3  Mattel should recover damages based on all of the alleged infringement.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants are correct that 17 U.S.C. § 504(c) relates to statutory damages. Mattel does not seek statutory damages pursuant to § 504(c)(1) in this case. Willful infringement is also relevant to the determination of Mattel's damages relating to defendants' profits.  A defendant cannot deduct certain expenses, such as taxes and overhead costs, from its gross revenue when the copyright infringement is willful.  *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (holding that willful infringer not permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1331-32 (9th Cir. 1982) (noting that "[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, *at least where the infringement was not willful, conscious, or deliberate*.") (emphasis added); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income taxes); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct overhead expenses); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful, overhead may not be deducted"); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585, *6  (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if the jury were to find willful infringement); 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 14.03[C][2] (2006) (it is "settled law" that infringers are not entitled to income tax deductions).  Accordingly, the proposed instruction is appropriate even though Mattel is not seeking statutory damages.

There is no basis for defendants to object that the instruction does not adequately explain the measure of damages to the jury, nor do they cite any authority in support of their contention that additional specificity is necessary. Defendants are simply trying to overcomplicate the instruction and confuse the jury.

**Damages Related to Phase 1A Claims**

**CACI 350**

**INTRODUCTION TO CONTRACT DAMAGES**

In Phase 1A of this trial, you found that Mattel had proved its claim against Carter Bryant for breach of contract.  Now you must decide how much money will reasonably compensate Mattel for the harm caused by Mr. Bryant's breaches.  This compensation is called "damages."  The purpose of such damages is to put Mattel in as good a position as it would have been if Mr. Bryant had performed as promised.

To recover damages for any harm, Mattel must prove:

1.      That the harm was likely to arise in the ordinary course of events from the breach of contract; or

2.      That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

Mattel also must prove the amount of its damages according to the following instructions.  Mattel does not have to prove the exact amount of damages.  You must not speculate or guess in awarding damages.

Mattel claims damages for:

(1)      Compensatory and general damages, including disgorgement of profits earned by Mr. Bryant as a result of his breaches;

(2)      Prejudgment interest at the maximum rate.

**Authority:**  CACI No. 350.

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTRODUCTION TO CONTRACT DAMAGES

Bryant objects to this instruction because Mattel claims disgorgement of profits, which is not an available remedy for breach of contract.  <u>Allied Equipment Corp. v. Litton Saudi Arabia, ltd.</u>, 7 Cal. 4th 503, 515 (1994) (contract damages are limited to damages sufficient to make a party whole, that is place the party in the same position it would have been if the breach had not occurred);  Cal. Civ. C. § 3300.  Moreover, profits earned by Mr. Bryant were not foreseeable nor within the expectations of the parties. <u>Id.</u>  Further, damages claimed must be proximately caused by the breach whereas the majority of Mr. Bryant's profits were earned as payment for his consulting services.  <u>Postal Instant Press, inc. v. Sealy</u>, 43 Cal. App. 4th 1704, 1710 (1996).  Further, Bryant objects to this instruction because it fails to advise the jury that the damages awarded may not exceed the benefit which Mattel would have received had Bryant performed as promised. <u>See Brandon & Tibbs v. George Kevorkian Accountancy Corp.</u>, 226 Cal. App. 3d 442, 468 (1990).  Bryant also objects to this instruction because it does not distinguish between the different claims of breach of contract alleged by Mattel—breach of Section 2(a) of the Inventions Agreement, breach of Section 3(a) of the Inventions Agreement and breach of the Questionnaire, thus risking jury confusion.

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9. Accordingly, Bryant's objection to the form of the proposed instruction should be overruled.

There is no need to alter the model instruction as Bryant suggests because the instruction expressly informs the jury that the purposes of contract damages "is to put Mattel in *as good a position as it would have been in* if Mr. Bryant had performed as promised."  The case Bryant cites – *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442 (1990) – adds nothing to the model instruction and would be potentially misleading to the jury and prejudicial to Mattel.

It is also not necessary to separate out the individual contract provisions at issue (e.g., Section 2(a) and Section 3(a)) for purposes of instructing the jury on the appropriate measure of damages for breach of contract.  Bryant is trying to overcomplicate the issues for the jury.

Finally, Mattel's request for disgorgement damages is appropriate even on its breach of contract claim.  Disgorgement is appropriate when the breach of contract is by a fiduciary, *see Snepp v. U.S.*, 444 U.S. 507, 514-16 (1980), and where the defendant wrongfully competed with plaintiff in breach of an agreement such as a non-compete agreement.  *See, e.g.*, *Automatic Laundry Serv., Inc. v. Demas*, 141 A.2d 497 (Md. 1958).  Here, one of the purposes of the Inventions Agreement and Conflict of Interest Questionnaire was to ensure that Bryant did not work for a competitor or develop competitive products while employed by Mattel. Accordingly, profits earned by Bryant for breaching those obligations were within the expectations of the parties, and disgorgement of such profits is an available remedy.

# <u>CACI 3901</u>

## <u>INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED</u>
## <u>FOR INTENTIONAL INTERFERENCE WITH</u>
## <u>CONTRACTUAL RELATIONS</u>

In Phase 1A, you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian.  You must now decide how much money will reasonably compensate Mattel for this harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    Compensatory and general damages;

(2)    Prejudgment interest at the maximum rate;

(3)    Punitive damages.

**Authority:**  CACI No. 3901.

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

The preceding instruction is objectionable to the extent that it does not require Mattel to prove that it suffered any financial loss resulting from the loss of the benefits of the contractual relationship in question and consequential losses, if any, caused by the alleged interference. See BAJI § 7.89. The instruction is also objectionable because Mattel lacks any evidentiary basis to seek punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objection to the form of the proposed instruction should be overruled.

Defendants' objection that the instruction should inform the jury that Mattel must prove financial loss has no merit.  If the jury finds defendants liable for intentional interference with contractual relations in Phase 1A, it will have already found that Mattel proved it was harmed by defendants' wrongful conduct.  *See* Mattel's Disputed Jury Instructions, *supra*, at 33 (CACI 2201) (informing the jury that to recover for intentional interference, Mattel must prove "[T]hat Mattel was harmed; and that the conduct of MGA and/or Mr. Larian was a substantial factor in causing Mattel's harm.").  Once liability is established, it would be legally incorrect and prejudicial to Mattel to inform the jury that Mattel must once again prove that it was harmed as a result of the wrongful conduct.

Finally, defendants have no basis to object to the reference to punitive damages.  Mattel is pursuing punitive damages against the defendants based on its allegation in this case that defendants acted "with malice, fraud and oppression" and "in conscious disregard of Mattel's rights."  *See* Mattel's Counterclaims, at ¶ 128.  Defendants have not moved for summary adjudication of Mattel's claims for punitive damages.  It is well settled that "[w]hether or not punitive damages should be awarded and the amount to be awarded are within the discretion of the jury . . . ."  *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981). Mattel's proposed instructions appropriately inform the jury as to the elements of a claim for punitive damages, and that it must be proved by clear and convincing evidence.  *See* Mattel's Proposed Jury Instruction re: Punitive Damages— Individual and Entity Defendants.

**<u>CACI 3901</u>**

**<u>INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED</u>**
**<u>FOR BREACH OF FIDUCIARY DUTY AND THE DUTY OF LOYALTY</u>**

The Court found as a matter of law that Carter Bryant breached his fiduciary duty and duty of loyalty to Mattel by entering into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. In Phase 1A, you determined that Mattel had proved its claims against Carter Bryant for additional breaches of fiduciary duty and breaches of the duty of loyalty. You must now decide how much money will reasonably compensate Mattel for this harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Mr. Bryant's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    Compensatory and general damages, including disgorgement of profits earned by Mr. Bryant as a result of his wrongful conduct;

(2)    Prejudgment interest at the maximum rate;

(3)    Punitive damages.

**Authority:**   CACI No. 3901; *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963) (granting plaintiff an accounting of commissions wrongfully diverted to defendant); *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003) ("Although there are few reported cases addressing the appropriate

remedy, those we have found also required employees to turn over profits received as a result of breaching their duty of loyalty.") (citations omitted); Restatement (2d) of Agency, § 403 (an agent is subject to disgorgement of benefits he receives "*as a result of* his violation of a duty of loyalty to the principal," whenever that payment was made) (emphasis added).

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR BREACH OF FIDUCIARY DUTY AND THE DUTY OF LOYALTY**

Bryant objects to this instruction because it seeks disgorgement of profits, regardless of when such profits were earned.  Profits for breach of fiduciary duty and breach of the duty of loyalty are limited to those profits earned by the defendant while defendant owed such a duty as set forth in the authority cited below.  Further, the preceding instruction is objectionable to the extent that it does not require Mattel to prove that it suffered any financial loss resulting from the conduct found to be a breach of duty. It also fails to caution the jury that it should award damages only for the conduct found to constitute a breach. As the Court's rulings on Bryant's duties and alleged breaches thereof is currently subject to a motion for reconsideration, it is still up to the jury to choose what conduct constituted a breach here. Thus, if the jury finds that Bryant used Mattel resources in breach of his duties, the jury should be told that it must award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.

Similarly, if the jury found that Bryant breached his duties by accepting additional work from MGA, the jury should be told that it must award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  In the same vein, if the jury finds that Bryant breached his duties by directly competing with Mattel while still employed at Mattel, it must award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  Moreover, if the jury finds Bryant breached his duties by presenting the BRATZ sketches owned by Mattel to MGA, it must compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.   Further, whether or not the Court denies

1  Bryant's motion for reconsideration, any reference to the Court's findings is

2  entirely inappropriate here.  The Court did not determine liability in its April 25,

3  2008 MSJ Order and therefore the relevant issue is whether the jury found liability

4  on either claim.

5      See Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966)

6  (remanding to assess damage to plaintiff book publisher for the costs incurred to

7  replace personnel recruited by president and competitor using confidential

8  information in breach of president's fiduciary duty); GAB Bus. Servs., Inc. v.

9  Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages

10 for breach of fiduciary duty were expenses incurred to recruit new employees);

11 Charles T. Powner, Co. v. Smith, 91 Cal. App. 101 (1928) (damages were profits

12 on directly competitive sales resulting from use of employer's time and facilities);

13 Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions

14 received while still employed); see also Design Strategies Inc. v. Davis, 384 F.

15 Supp. 2d 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time

16 employee was disloyal, and not the profits from a contract that evidence showed

17 employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d

18 1144 (D. Kan. 1999) (awarding damages for value of resources including

19 employee time used to develop competing products).

20     Finally, the instruction is objectionable because Mattel lacks any evidentiary

21 basis to seek punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457

22 (1991) (trial court properly refused to instruct jury on punitive damages, as there

23 was not clear and convincing evidence of fraud); see also Jones v. Williams, 297

24 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or

25 her theory of the case if it is supported by law and has foundation in the

26 evidence").

27

28

1  **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3          Mattel's proposed instruction conforms to the model instruction found in

4  CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.

5  Accordingly, Bryant's objection to the form of the proposed instruction should be

6  overruled.

7          Bryant recognizes that Mattel is entitled to seek disgorgement of profits but

8  claims Mattel is limited to only "profits earned by the defendant while defendant

9  owed such a duty."  Bryant's position is erroneous and prejudicial to Mattel.

10  Mattel is entitled to recover all profits obtained as a result of the breach of duty.

11  *See Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003); *Xum*

12  *Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963); Restatement (2d) of Agency,

13  § 403 (an agent is subject to disgorgement of benefits he receives "*as a result of* his

14  violation of a duty of loyalty to the principal," whenever that payment was made)

15  (emphasis added).  Mattel's proposed instruction informs the jury that Mattel seeks

16  only those profits "earned by Mr. Bryant as a result of his wrongful conduct."

17  Bryant cites no authority for his erroneous position.

18          Bryant's other proposed limitations on damages available to Mattel are

19  contrary to law and prejudicial to Mattel.  None of the authorities cited by Bryant

20  support the limitations he proposes.  Pursuant to CACI No. 3901 (which embodies

21  *Cal. Civ. Code* § 3333), Mattel is entitled to recover damages for all harm "caused

22  by Mr. Bryant's wrongful conduct, even if the particular harm could not have been

23  anticipated."  *See Cal. Civ. Code* § 3333 ("For the breach of an obligation not

24  arising from contract, the measure of damages . . . is the amount which will

25  compensate *for all the detriment proximately caused thereby, whether it could*

26  *have been anticipated or not*.").

27          Defendants' objection that the instruction should inform the jury that Mattel

28  must prove financial loss is also without merit.  If the jury finds Bryant liable for

1   breach of fiduciary duty and/or breach of duty of loyalty in Phase 1A, it will have

2   already found that Mattel proved it was harmed by Bryant's wrongful conduct. *See*

3   Mattel's Disputed Jury Instructions, *supra*, at 43 and 51 (informing the jury that to

4   recover for breach of fiduciary duty/duty of loyalty, Mattel must prove "[T]hat

5   Mattel was harmed; and that Mr. Bryant's conduct was a substantial factor in

6   causing Mattel's harm.").  Once liability is established, it would be prejudicial to

7   Mattel and misleading to inform the jury that Mattel must once again prove it

8   suffered loss as a result of the wrongful conduct.

9          Bryant has no basis to object to the reference to punitive damages.  Mattel is

10   pursuing punitive damages against Bryant based on its allegation in this case that

11   he breached his fiduciary duty and duty of loyalty to Mattel "with malice, fraud

12   and oppression" and "in conscious disregard of Mattel's rights." *See* Mattel's

13   Counterclaims, at ¶¶ 134, 148.  Bryant did not move for summary adjudication of

14   Mattel's claims for punitive damages.  It is well settled that "[w]hether or not

15   punitive damages should be awarded and the amount to be awarded are within the

16   discretion of the jury . . . ." *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415,

17   431 (1981).  Mattel's proposed instructions appropriately inform the jury as to the

18   elements of a claim for punitive damages, and that it must be proved by clear and

19   convincing evidence. *See* Mattel's Proposed Jury Instruction re: Punitive

20   Damages—Individual and Entity Defendants.

21          Finally, it is both necessary and appropriate for this proposed instruction to

22   inform the jury of the Court's previous findings that Bryant breached his fiduciary

23   duty and duty of loyalty because the jury must determine the damages to be

24   awarded to Mattel for those breaches, along with damages for additional breaches

25   of duty found by the jury.

26

27

28

1
2
3
4
5

## CACI 3901

## INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY

6   In Phase 1A, you determined that Mattel had proved its claims against the
7 defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of
8 fiduciary duty and breach of the duty of loyalty.  You must now decide how much
9 money will reasonably compensate Mattel for this harm.  This compensation is
10 called "damages."

11   The amount of damages must include an award for each item of harm that
12 was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular
13 harm could not have been anticipated.

14   Mattel does not have to prove the exact amount of damages that will provide
15 reasonable compensation for the harm.  However, you must not speculate or guess
16 in awarding damages.

17   The following are the specific items of damages claimed by Mattel:

18   (1)   Compensatory and general damages, including disgorgement of
19         profits earned by MGA and Mr. Larian as a result of their wrongful
20         conduct;

21   (2)   Prejudgment interest at the maximum rate;

22   (3)   Punitive damages.

23
24   **Authority:**  CACI No. 3901.

25
26
27
28

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY**

The preceding instruction is objectionable to the extent it seeks disgorgement of profits, regardless of when such profits were earned.  Profits for breach of fiduciary duty and breach of the duty of loyalty are limited to those profits earned by the defendant while defendant owed such a duty. Further, the preceding instruction is objectionable to the extent that it does not require Mattel to prove that it suffered any financial loss resulting from the conduct found to be aiding and abetting a breach of duty. It also fails to caution the jury that it should award damages only for the conduct found to constitute aiding and abetting the breaches at issue. Thus, if the jury finds that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his duties, the jury should be told that it must award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  Similarly, if the jury found that MGA and Larian aided and abetted Bryant's breach of his duties by accepting additional work from MGA, the jury should be told that it must award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.

In the same vein, if the jury finds that Bryant breached his duties by directly competing with Mattel while still employed at Mattel, it must award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  Finally, if the jury finds Bryant breached his duties by presenting the BRATZ sketches owned by Mattel to MGA, it must compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

1   <u>See</u> Restatement (Second) of Torts § 876 (1979); BAJI § 12.57 (2008) (as

2   modified); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966)

3   (remanding to assess damage to plaintiff book publisher for the costs incurred to

4   replace personnel recruited by president and competitor using confidential

5   information in breach of president's fiduciary duty); <u>GAB Bus. Servs., Inc. v.</u>

6   <u>Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 426 (2000) (damages

7   for breach of fiduciary duty were expenses incurred to recruit new employees);

8   <u>Charles T. Powner, Co. v. Smith</u>, 91 Cal. App. 101 (1928) (damages were profits

9   on directly competitive sales resulting from use of employer's time and facilities);

10  <u>Sumner v. Nevin</u>, 4 Cal. App. 347, 350 (1906) (damages were commissions

11  received while still employed); <u>see also</u> <u>Design Strategies Inc. v. Davis</u>, 384 F.

12  Supp. 2d 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time

13  employee was disloyal, and not the profits from a contract that evidence showed

14  employer would not have been awarded); <u>Frye-Tech, Inc. v. Harris</u>, 46 F. Supp. 2d

15  1144 (D. Kan. 1999) (awarding damages for value of resources including

16  employee time used to develop competing products).

17      Finally, the instruction is objectionable because Mattel lacks any evidentiary

18  basis to seek punitive damages. <u>See</u> <u>Barry v. Raskov</u>, 232 Cal. App. 3d 447, 457

19  (1991) (trial court properly refused to instruct jury on punitive damages, as there

20  was not clear and convincing evidence of fraud); <u>see also</u> <u>Jones v. Williams</u>, 297

21  F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or

22  her theory of the case if it is supported by law and has foundation in the

23  evidence").

24

25

26

27

28

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3          Mattel's proposed instruction conforms to the model instruction found in

4   CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.

5   Accordingly, defendants' objection to the form of the proposed instruction should

6   be overruled.

7          Defendants recognize that Mattel is entitled to seek disgorgement of profits

8   obtained by defendants as a result of their wrongful conduct, but claims that Mattel

9   is limited to only "profits earned by the defendant while defendant owed such a

10  duty."  Defendants' position is erroneous as a matter of law.  Mattel is entitled to

11  recover all profits obtained by defendants as a result of their wrongful conduct in

12  aiding and abetting Bryant's breaches of duty.  Mattel's proposed instruction

13  informs the jury that Mattel seeks only those profits "earned by MGA and Mr.

14  Larian as a result of their wrongful conduct."  Defendants' proposed limitation is

15  contrary to law and prejudicial to Mattel.  Pursuant to CACI No. 3901 (which

16  embodies *Cal. Civ. Code* § 3333), Mattel is entitled to recover damages for all

17  harm "caused by MGA's and Mr. Larian's wrongful conduct, even if the particular

18  harm could not have been anticipated."  *See Cal. Civ. Code* § 3333 ("For the

19  breach of an obligation not arising from contract, the measure of damages . . . is

20  the amount which will compensate *for all the detriment proximately caused*

21  *thereby, whether it could have been anticipated or not*.").

22         Defendants' objection that the instruction should inform the jury that Mattel

23  must prove financial loss is also without merit.  If the jury finds Bryant liable for

24  breach of fiduciary duty/duty of loyalty and defendants liable for aiding and

25  abetting those breaches in Phase 1A, it will have already found that Mattel proved

26  it was harmed by their wrongful conduct.  Once liability is established, it would be

27  prejudicial to Mattel and misleading to inform the jury that Mattel must once again

28  prove it suffered loss as a result of the wrongful conduct.

Finally, defendants have no basis to object to the reference to punitive damages.  Mattel is pursuing punitive damages against defendants based on its allegation in this case that they aided and abetted Bryant's breaches of his fiduciary duty and duty of loyalty "with malice, fraud and oppression" and "in conscious disregard of Mattel's rights."  *See* Mattel's Counterclaims, at ¶¶ 141, 154.  Defendants have not moved for summary adjudication of Mattel's claims for punitive damages.  It is well settled that "[w]hether or not punitive damages should be awarded and the amount to be awarded are within the discretion of the jury . . . ."  *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981).  Mattel's proposed instructions appropriately inform the jury as to the elements of a claim for punitive damages, and that it must be proved by clear and convincing evidence.  *See* Mattel's Proposed Jury Instruction re: Punitive Damages—Individual and Entity Defendants.

# CACI 2102

## PRESUMED MEASURE OF DAMAGES FOR CONVERSION

In Phase 1A of this trial, you found that Mattel had proved its claims for conversion against Carter Bryant, MGA, Isaac Larian and MGA Hong Kong.  You must now decide how much money will reasonably compensate Mattel for the harm.  This compensation is called "damages."

Mattel must prove the amount of its damages.  However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)    Prejudgment interest at the maximum rate;

(3)    Reasonable compensation for the time and money spent by Mattel in attempting to recover this property;

(4)    Punitive damages.

**Authority:**  CACI No. 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

1  **OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE**

2  **PRESUMED MEASURE OF DAMAGES FOR CONVERSION**

3

4      The preceding instruction is objectionable to the extent Mattel asserts a

5  claim for conversion in Phase One against MGA. According to Mattel's MSJ, there

6  is no conversion claim asserted against MGA in Phase One. (See Mattel MSJ at

7  50:18-20.) The instruction is further objectionable because it does not define the

8  concept of fair market value and does not explain when to measure it, failing to

9  explain that fair market value is the highest price that a willing buyer would have

10 paid to a willing seller, assuming: (1) That there is no pressure on either one to buy

11 or sell; and (2) That the buyer and seller know all the uses and purposes for which

12 the tangible physical property is reasonably capable of being used. See CACI §

13 2102. Here, the fair value market value should be measured as of the time that the

14 property allegedly was converted, not now.  See Cal. Civ. Code, § 3336; Virtanen

15 v. O'Connell, 140 Cal. App. 4th 688, 708 (2006); Spates v. Dameron Hospital

16 Assn., 114 Cal. App. 4th 208, 221(2003); Lueter v. Cal., 94 Cal. App. 4th 1285,

17 1302 (2002).  The instruction is also potentially misleading in that it should explain

18 to the jury that they may not award to Mattel the ancillary value of the works

19 created by Bryant while at Mattel, in other words, that they cannot award any sort

20 of damages that would be analogous to those permissible under the Copyright Act

21 because the Court has held Mattel's claim to be pre-empted for damages beyond an

22 award for the value, if any, of the drawings at the time that they were created.  See

23 April 25, 2008 MSJ Order.

24      Finally, the instruction is objectionable because Mattel lacks any evidentiary

25 basis to seek punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457

26 (1991) (trial court properly refused to instruct jury on punitive damages, as there

27 was not clear and convincing evidence of fraud); see also Jones v. Williams, 297

28 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or

1  her theory of the case if it is supported by law and has foundation in the

2  evidence"). The MGA Parties and Bryant also object because this instruction fails

3  to distinguish among the defendants and advise the jury that it must make separate

4  findings with respect to each defendant.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court. *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objection to the form of the proposed instruction should be overruled.

As set forth in the operative pleading, Mattel is asserting a claim for conversion against MGA. *See* Mattel's Counterclaims, at 72.

Mattel does not object to defendants' additional language regarding "fair market value" from CACI No. 2102.

Finally, defendants have no basis to object to the reference to punitive damages. Mattel is pursuing punitive damages against defendants based on its allegation in this case that they converted Mattel's property "with malice, fraud and oppression" and "in conscious disregard of Mattel's rights." *See* Mattel's Counterclaims, at ¶ 161. Defendants have not moved for summary adjudication of Mattel's claims for punitive damages. It is well settled that "[w]hether or not punitive damages should be awarded and the amount to be awarded are within the discretion of the jury . . . ." *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981). Mattel's proposed instructions appropriately inform the jury as to the elements of a claim for punitive damages, and that it must be proved by clear and convincing evidence. *See* Mattel's Disputed Jury Instructions, *infra*, at 207 (CACI 3947 re Punitive Damages).

**CACI 3947**

**PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS**

If you decide that Carter Bryant's, Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Mr. Bryant or Mr. Larian only if Mattel proves by clear and convincing evidence that Mr. Bryant or Mr. Larian engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud.  To do this, Mattel must prove by clear and convincing evidence that the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A defendant acts with knowing disregard when the defendant is aware of the problem dangerous consequences of his or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Mattel.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages.  If you decide to award punitive damages, you should consider all of the following separately for each defendant in determining the amount:

(a)     How reprehensible was that defendant's conduct?  In deciding how reprehensible a defendant's conduct was, you may consider, among other factors:

(b)     Is there a reasonable relationship between the amount of punitive damages and Mattel's harm?

(c)     In view of that defendant's financial condition, what amount is necessary to punish him or it and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources.

**Authority:**  CACI No. 3947.

**OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS**

Mattel lacks any evidentiary basis to request an instruction concerning punitive damages. <u>See</u> <u>Barry v. Raskov</u>, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); <u>see also</u> <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence"). Moreover, this instruction is improper because it does not distinguish among the defendants and advise the jury that it must make separate findings with respect to each defendant.

MATTEL'S DISPUTED PROPOSED JURY INSTRUCTIONS

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.  Accordingly, defendants' objection to the form of the proposed instruction should be overruled.  Defendants have no basis to object to an instruction regarding punitive damages.  Mattel seeks punitive damages against the defendants based on its allegations in this case that defendants acted "with malice, fraud and oppression" and "in conscious disregard of Mattel's rights."  *See* Mattel's Counterclaims, at ¶ 128.  Defendants have not moved for summary adjudication of Mattel's claims for punitive damages.  It is well settled that "[w]hether or not punitive damages should be awarded and the amount to be awarded are within the discretion of the jury . . . ."  *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981).  Mattel's proposed instructions appropriately inform the jury as to the elements of a claim for punitive damages, and that it must be proved by clear and convincing evidence.