QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>             Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>             Defendant.<br><br>CONSOLIDATED WITH<br><br>MATTEL, INC. v. BRYANT, and<br><br>MGA ENTERTAINMENT, INC. v. MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>MATTEL INC'S OPPOSITION TO CARTER BRYANT'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) OR FOR RECONSIDERATION;<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date:  May 19, 2008<br>Time:  10:00 a.m.<br>Place: Courtroom 1<br><br>**Phase 1:**<br>Discovery Cut-Off:  January 28, 2008<br>Pre-Trial Conference:  May 19, 2008<br>Trial Date:      May 27, 2008 |

1

# **<u>TABLE OF CONTENTS</u>**

2

**<u>Page</u>**

3

4   PRELIMINARY STATEMENT ................................................................ 1

5   FACTUAL AND PROCEDURAL BACKGROUND .................................. 1

6   ARGUMENT ........................................................................................... 3

7   I.     CITY OF HOPE DOES NOT PROVIDE ANY BASIS TO
        RECONSIDER THE COURT'S  ORDER. ...................................... 3

8
    II.    BRYANT'S REMAINING CLAIMS DO NOT WARRANT
9         RECONSIDERATION. ................................................................ 11

10          A.    Bryant's Claims Do Not Satisfy the Standards of Local Rule 7-
                18. ................................................................................... 11
11
            B.    Bryant's Arguments Involving "Direct Competition" Do Not
12               Justify Reconsideration Of The Court's Order. ................... 14

13          C.    City of Hope's Contract Interpretation Rulings Are Not A Basis
                To Reconsider The Court's Order .......................................... 18
14
            D.    Bryant's Erroneous And Hypothetical Claims Regarding
15               California Labor Code § 2870 Are Invalid. ........................... 22

16   CONCLUSION ...................................................................................... 24

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

### Cases

4

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ................................................................. 18

Bancroft-Whitney Co. v. Glen,
64 Cal. 2d 327 (1966) ............................................................ 15

City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,
No. S129463, 2008 WL 1820916 (Cal. 2008) ........................... passim

City Solutions, Inc. v. Clear Channel Communications, Inc.,
201 F. Supp. 2d 1048 (N.D. Cal. 2002) ..................................... 7

David Sams Industries Inc. v. Verisign, Inc.,
2006 WL 5105218 (C.D. Cal. 2006) ......................... 3, 11, 14

Eckard Brandes, Inc. v. Riley,
338 F.3d 1082 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004) ......... 16

GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.,
83 Cal. App. 4th 409 (2000) ......................................................... 5

Hudson v. Moore Bus. Forms, Inc.,
836 F.2d 1156 (9th Cir. 1987) .................................................. 15

Huong Que, Inc. v. Luu,
150 Cal. App. 4th 400 (2007) ............................................. 15, 16

Iconix, Inc. v. Tokuda,
457 F. Supp. 2d 969 (N.D. Cal. 2006) ............................. 9, 16, 23

In re Marriage of Varner,
55 Cal. App. 4th 128 (1997) ...................................................... 16

Novell, Inv. v. Weird Stuff, Inc.,
0094 WL 16458729 (N.D. Cal. 1993) ....................................... 18

Otsuka v. Polo Ralph Lauren Corp.,
2007 WL 3342721 (N.D. Cal. 2007) ................................. 15, 16

Reeves v. Hanlon,
33 Cal.4th 1140 (2004) ................................................................. 5

Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.,
5 F.3d 1255 (9th Cir. 1993) ........................................................ 12

Stevens v. Marco,
147 Cal. App. 2d 357 (1956) ............................................. 4, 6, 10

Stokes v. Dole Nut Co.,
    41 Cal. App. 4th 285 (1995) ................................................................ 15

Trustees of Aftra Health & Ret. Funds v. KTVU, Inc.,
    1997 WL. 703782 (N.D. Cal. 1997) .................................................... 12

United States v. James,
    915 F. Supp. 1092 (S.D. Cal. 1995) .................................................... 12

Winet v. Price,
    4 Cal. App. 4th 1159 (1992) ........................................................ 19, 20

Wolf v. Walt Disney Pictures & Television
    No. B192656 (Cal. App. May 9, 2008) ........................................ 18, 20

## Statutes

Cal. Lab. Code § 2859 ................................................................................ 8

Cal. Lab. Code § 2863 ...................................................................... 8, 9, 11

Cal. Lab. Code § 2870 .......................................................... 14, 22, 23, 24

Cal. Lab. Code § 2872 .............................................................................. 23

Copyright Act § 204(a) ............................................................................ 22

Local Rule 7-18 .................................................................... 3, 11, 14, 24

## Other Authorities

3 Witkin, Summary of California Law § 97 at 143 (10th ed. 2005) ......... 17

3 Witkin, Summary of California Law § 104 at 150 (10th ed. 2005) ....... 17

Rafael Chodos, The Law of Fiduciary Duties § 1:13 at 29 (2000) ............ 8

Restatement (Third) of Agency § 8.01 ..................................................... 17

Restatement (Third) of Agency § 8.01 cmt. b ......................................... 17

Restatement (Third) of Agency § 8.01 cmt. c ......................................... 17

**Preliminary Statement**

Carter Bryant's motion for reconsideration is an attempt to re-litigate the summary judgment motion all over again.  The motion does not meet the standards for reconsideration and should be denied.

First, Bryant mistakenly construes the California Supreme Court's recent decision in <u>City of Hope Nat'l Med. Ctr. v. Genentech, Inc</u>., No. S129463, 2008 WL 1820916 (Cal. 2008), as establishing new law when it merely applies well-settled fiduciary duty and contract interpretation principles. Bryant's reliance on this decision contravenes <u>Local Rule</u> 7-18, and lacks substantive merit.  <u>City of Hope</u> does not draw into question the Court's carefully rendered April 25, 2008 Order (the "Order").  Moreover, because <u>City of Hope</u> does not address the duty of loyalty, Bryant cannot challenge the Court's loyalty holding based on that decision.

Second, Bryant's remaining arguments are not only meritless but barred by <u>Local Rule</u> 7-18 because they merely repeat contentions made in his prior submissions or, in the case of <u>Labor Code</u> § 2870, invoke new theories that were available to Bryant before.  Permitting him to repeat or revise these arguments would impair judicial efficiency, unfairly disadvantage Mattel, and contravene the standards for reconsideration set forth in <u>Local Rule</u> 7-18.  Despite his litany of protestations against the Court's Order, Bryant offers no basis to disturb it – no new material facts, no new *meaningful* case law, and no manifest failure by the Court to consider material facts.  Bryant's disagreement with the Court's holdings, however strongly felt, does not justify reconsideration or reversal.

**Factual and Procedural Background**

On March 7, 2008, Mattel filed its Motion for Partial Summary Judgment ("MPSJ") on several claims, as well as on affirmative defenses raised by defendants Carter Bryant, MGA, Isaac Larian and MGA Hong Kong ("defendants"). Defendants concurrently filed cross Motions for Partial Summary Judgment.  On

1

MATTEL'S OPPOSITION TO MOTION FOR RECONSIDERATION

March 24, 2008, both parties filed their opposition briefs, and on April 1, 2008, the parties filed their reply briefs.  The Court held a hearing on April 22, 2008.

On April 25, 2008, the Court issued the Order, which held, among other things, that: (1) the Inventions Agreement is not ambiguous, (2) "the original Bratz drawings clearly fall within the scope of the Inventions Agreement," and any Bratz-related inventions, including concepts, ideas, designs, and improvements, that were created, made, conceived or reduced to practice by Bryant while employed by Mattel are owned by Mattel; (3) Bryant cannot rely on <u>Labor Code</u> § 2870 because the Bratz works relate to Mattel's lines of business and (4) the Inventions Agreement is enforceable.  <u>See</u> Order at 4-5.  The Court also found that Bryant cannot defend his actions as "lawful preparations to compete" because he "directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel."  <u>Id.</u> at 5.  In addition, the Court held that Bryant owed fiduciary and loyalty duties to Mattel and that he breached those duties when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  <u>Id.</u> at 5-6.

On May 2, 2008, Bryant filed his Motion and Motion for Certification of Interlocutory Appeal Under 28 U.S.C. § 1292(B) or For Reconsideration ("Bryant Mem.").  Bryant sought certification of an interlocutory appeal and/or reconsideration of the Court's rulings related to fiduciary duty and duty of loyalty in light of the California Supreme Court's decision in <u>City of Hope Nat'l Med. Ctr. v. Genentech, Inc.</u>, No. S129463, 2008 WL 1820916 (Cal. 2008).  Bryant Mem. at 5-8.  In addition, Bryant claimed that the Court erroneously interpreted other California law governing duty of loyalty and fiduciary duty, improperly applied California contract principles governing construction of the Inventions Agreement, and potentially erred in construing <u>Labor Code</u> § 2870.  <u>See id.</u> at 8-20.

1   The motion for reconsideration is Bryant's third attempt to reargue many of
2   the same issues.  In its summary judgment Order, the Court recognized that it had
3   "addressed many issues of the enforceability of the [Inventions Agreement] in its
4   July 17, 2006, Order.  The Court finds no good reason to revisit or revise that
5   Order."  Order at 4.  Thus, as the Court recognized, Bryant argued that the
6   Inventions Agreement was an impermissibly overbroad and unconscionable contract
7   of adhesion, and violated <u>Labor Code</u> § 2870, when he opposed Mattel's motion to
8   dismiss his counterclaims.  <u>See</u> Bryant's Opposition to Mattel Inc.'s Motion to
9   Dismiss His Cross-Complaint, dated December 10, 2004, at 1, 6-7, 9-11.  The Court
10  rejected these arguments and granted Mattel's motion to dismiss.  Bryant elected not
11  to amend.  Now through a motion for reconsideration, he raises these issues for the
12  third time.

13  On May 6, 2008, during a telephonic hearing, the Court denied Bryant's
14  requested certification of an interlocutory appeal but stated it would consider
15  Bryant's motion for reconsideration as to fiduciary duty in light of <u>City of Hope</u>.
16  The Court did not rule on the appropriateness of Bryant's other claims for
17  reconsideration.  The Court confirmed its decision in a written Order on May 6,
18  2008.

19  **ARGUMENT**

20  **I.    CITY OF HOPE DOES NOT PROVIDE ANY BASIS TO**
21  **      RECONSIDER THE COURT'S ORDER.**

22  Bryant's attempts to characterize <u>City of Hope</u> as establishing new law are
23  unavailing.[1]  <u>City of Hope</u> applied well-established legal principles to a relationship
24  in which a fiduciary duty was not created by agreement or by operation of law.  The

---

[1]  While <u>City of Hope</u> is a new case, it does not, as required by <u>Local Rule</u> 7-18, constitute a "*change in law*" occurring after the Court has rendered its decision." <u>David Sams Industries Inc. v. Verisign, Inc.</u>, 2006 WL 5105218 at *1 (C.D. Cal. 2006) (emphasis added).  Since the Court has agreed to hear Bryant's motion, Mattel will not belabor this point but believes the absence of new law provides an independent basis to deny Bryant's claims.

Supreme Court's limitation of <u>Stevens v. Marco</u>, 147 Cal. App. 2d 357 (1956), is irrelevant because this Court did not base its decision on that precedent.  Moreover, <u>City of Hope</u> does not address the duty of loyalty at all, and thus Bryant cannot rely on that decision to attack the Court's loyalty holding.    Bryant's motion for reconsideration based on <u>City of Hope</u> should therefore be denied.

      1.     Bryant claims that the Court inappropriately ruled that the language set forth in ¶ 1(a) of the Inventions Agreement created a fiduciary duty.  Bryant Mem. at 5 (citing Order at 5, relying on language stating that "the value of [Mattel's] Proprietary Information depends on it remaining confidential.    The company depends on me to maintain that confidentiality, and I accept that position of trust."). According to Bryant, "<u>City of Hope</u> expressly rejected imposition of a fiduciary duty based on the fact that a contract reposed 'trust and confidence' in the purported fiduciary; because 'trust and confidence' are simply an ordinary part of any contract, their presence cannot support the loftier burdens of a fiduciary relationship." <u>Id.</u> at 6.  That misreads the case.

      <u>City of Hope</u> was a lawsuit brought by a medical research center, against Genentech, a biotechnology company, alleging breach of contract and breach of fiduciary duty in connection with a royalty agreement concerning patents for genetic processes invented at the center.  As the case law has always made clear, and the Supreme Court confirmed, "[b]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."   <u>City of Hope</u>, 2008 WL 1820916 at *6 (quotes and citation omitted).    At trial, City of Hope did not argue, and the jury was not asked to decide, whether Genentech "'knowingly' undertook the obligations of a fiduciary." <u>Id</u>. (citation omitted).    In the face of that law, however, City of Hope argued, and the trial court instructed, that a fiduciary relationship arises <u>as a matter of law</u> "when a person entrusts a secret idea or device to another under an arrangement whereby the

other party agrees to develop, patent and commercially exploit the idea in return for royalties." Id. at * 7.

Thus, as Bryant acknowledged, City of Hope examined whether a duty was created through operation of law.  The Court considered whether "an agreement to develop, patent, and commercially exploit a secret scientific discovery in exchange for the payment of royalties is the type of relationship 'which imposes that undertaking [fiduciary obligation to act on behalf of and for the benefit of another] as a matter of law,'" as the trial court had instructed the jury.  City of Hope, 2008 WL 1820916 at *6 (citation omitted).  The California Supreme Court noted that examples of fiduciary relationships created by operation of law include a joint venture, partnership or agency, and that no such relationship was present.  City of Hope, 2008 WL 1820916. at *6.

None of this is pertinent here.  City of Hope's holding that no fiduciary duty was created by operation of law has no bearing on a case, like this one, where the fiduciary duty emanated from agreement and a confidential relationship.  In this case, the Court's finding that Bryant was a fiduciary emanated from his agreement with Mattel, his access to confidential information, and his knowing undertaking to act for the benefit of Mattel with respect to that information.  Order at 4-5.  As Mattel pointed out in its Reply Brief, the case law recognizes that "[t]here are two kinds of fiduciary duties – those imposed by law and those undertaken by agreement."  Mattel, Inc.'s Reply in Further Support of its Motion for Partial Summary Judgment ("Rep. Br."), dated April 22, 2008, at 21 (quoting GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 416 (2000), overruled on other grounds by Reeves v. Hanlon, 33 Cal.4th 1140 (2004)).[2] City of Hope addressed one; the Court at bar relied on the other.

---

[2] Notably, Bryant relied heavily on GAB Business in his opposition to Mattel's MPSJ.  See Bryant's Memorandum Of Points And Authorities In Opposition To Mattel's Motion for Partial Summary Judgment at 11-13.

Indeed, Bryant's own arguments show this. Bryant argues that <u>City of Hope</u> held, in contravention to <u>Stevens</u>, that "the entrusting of secret or confidential information to another 'does not compel the imposition of fiduciary duties *by operation of law . . . .*" Bryant Mem. at 5-6 (quoting <u>City of Hope</u>, 2008 WL 1820916 at *11) (emphasis added). This ruling has no applicability – and certainly no controlling precedential value – in a case involving a duty created not by operation of law, but by agreement and confidential relationship.

2.  Bryant relies on the Court's rejection of City of Hope's claim that it had reposed trust and confidence in Genentech since "[e]very contract requires one party to repose an element of trust and confidence in the other *to perform*." Bryant Mem. at 6 (citing <u>City of Hope</u>, 2008 WL 1820916 at *9) (emphasis added). But the mere fact that all parties to all contracts "trust" the other to perform is irrelevant to the question whether, under the Inventions Agreement, Bryant knowingly undertook fiduciary obligations. Mattel has never suggested that the mere existence of any kind of contract imposes a fiduciary duty. The point is that the Inventions Agreement does so.

The contract at issue in <u>City of Hope</u> is nothing like the one here. There, the contract indicated a "mutually beneficial arrangement" in which Genentech was not required "to subordinate its interests to those of City of Hope…" <u>City of Hope</u>, 2008 WL 1820916 at *6. Genentech wanted to sell "certain polypeptides," and required a particular type of synthetic DNA to do so. <u>Id.</u> at * 2. City of Hope had facilities and personnel qualified to synthesize that DNA. So, Genentech agreed to fund City of Hope's synthesis of the DNA, and pay a 2% royalty. *Genentech* – the defendant – was to retain ownership of any patents or "proprietary property" emerging from the work performed by City of Hope. <u>Id.</u> The contract expressly provided, "Nothing herein contained shall be deemed to create an agency, joint venture or partnership relation between the parties hereto. It is agreed that the

relationship between the parties is such that CITY OF HOPE in its performance of this Agreement is an independent contractor." Id. at * 3.

In light of these fact-specific circumstances, the Court rejected City of Hope's position that the mere existence of a contractual relationship between independent contractors *ipso facto* creates enough of a relationship of trust and good faith to make one the fiduciary of the other.  See id. ("a fiduciary relationship is not necessarily created simply when one party, in exchange for royalty payments, entrusts a secret invention to another party to develop, patent and market the eventual product.").  That is clearly not what courts envisioned when they held that fiduciary relationships could be created by agreement.[3]   All contracts, wisely entered into, are presumably mutually beneficial or the parties would have no incentive to undertake them.  As City of Hope concluded, a fiduciary relationship requires something more – contractual language creating a fiduciary relationship of trust and confidence.

Here, the Court found contractual support for a fiduciary relationship in Bryant's Inventions Agreement, which was absent in City of Hope.[4]   As demonstrated in Mattel's summary judgment papers, see MPSJ at 34; Rep. Br. at 22, the Inventions Agreement established a confidential relationship of trust and required Bryant to elevate Mattel's interests above his own.  Paragraph ¶ 1(a) of the

---

[3] City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F. Supp. 2d 1048 (N.D. Cal. 2002), is consistent with this analysis, further showing that City of Hope's analysis is not new.  Recognizing the "well-settled principle that parties to a contract do not by necessary implication become fiduciaries," and that fiduciary obligations are not imposed "simply because the parties to a contract reposed trust and confidence in each other," the court examined whether the parties' agreement created a fiduciary relationship.  Id. at 1049. The court held that the agreement stated "in no uncertain terms … that it did not give rise to a relationship that would connote such duties." Id. at 1050.  In contrast, "an otherwise similar confidentiality agreement" in another agreement did create such a duty. Id.   The Inventions Agreement in this case likewise created such a duty.

[4] Bryant's confidential relationship with Mattel provides a second basis for creation of a fiduciary relationship.  See MPSJ at 34-35; Rep. Br. at 23-24.  This issue did not arise in City of Hope, and thus, this independent basis for finding a fiduciary duty is undisturbed.

Agreement stated that "the value of [Mattel's] Proprietary Information depends on it remaining confidential. The company depends on me to maintain that confidentiality, and I accept that position of trust."  Order at 5.  In addition, the Agreement imposed several further obligations on Bryant, including not to engage in conflicts of interest, to maintain the confidentiality of the Company's trade secrets, to "use those trade secrets for the exclusive benefit of the Company,"[5] and to return any "tangible, written, graphical, machine readable and other materials (including all copies) … containing or disclosing Proprietary Information."[6]  Above the signature line, the Agreement cautioned Bryant:   "THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST . . . ."   The Inventions Agreement is simply unlike the contract at issue in <u>City of Hope</u>, which expressly disclaimed anything more than a relationship of independent contractors.

And, unlike Genentech, which was an independent contractor free to pursue its own interests, <u>see</u> <u>City of Hope</u>, 2008 WL 1820916 at *8, Bryant was an employee contractually bound to safeguard Mattel's proprietary information and maintain its confidentiality and trust.  An arms-length commercial contract, as in <u>City of Hope</u>, is qualitatively different from an employment contract through which the employee is entrusted with the employer's business interests and trade secrets.  Indeed, unlike in commercial relationships, employees owe a statutory and common law duty of loyalty, which imposes a broad array of obligations on employees, including a prohibition against self-dealing.[7]

---

[5] Rep. Br. at 22 & n. 49 (quoting Inventions Agreement).

[6] <u>Id</u>. at ¶ 1 (d), Zeller Dec., Exh. 31.

[7] "[T]he employee, like the agent, owes a fiduciary duty toward his employer with respect to the subject matter of the employment."  <u>See</u> Rafael Chodos, <u>The Law of Fiduciary Duties</u> § 1:13, at 29 (2000).  <u>See also</u> <u>Cal. Labor Code</u> § 2859 ("[a]n employee is always bound to use such skill as he possess, so far as the same is required, for the services specified" by the terms of his employment);  Chodos, <u>supra</u>, § 1:13, at 29 ("the employee's fiduciary duty is codified in Labor Code Sec. 2863, which articulates the fiduciary duty of preference owed by the employee to his employer – which is quite the same duty the agent owes to his principle.");  <u>Cal.</u>

In short, given these significant factual distinctions, <u>City of Hope</u> cannot be construed as disturbing this Court's Order interpreting an entirely different kind of agreement in which Bryant "knowingly undert[ook] to act on behalf and for the benefit of another." <u>Id.</u> at *6.   Bryant's reliance on <u>City of Hope</u>'s fact-specific holding is misplaced.

3.   Bryant contends that <u>City of Hope</u> "confirms that the Court erred in finding that Bryant was a fiduciary by virtue of a 'superior position' to Mattel simply 'because he was in the best position, arguably the only one in a position, to know or and police his actions.'"   Bryant Mem. at   6   (quoting Order at 6). According to Bryant, <u>City of Hope</u> "confirmed that mere vulnerability of one party, and the superior position of the other, cannot alone 'necessarily warrant recognition of a fiduciary duty.'"   <u>Id.</u> at 6-7 (quoting <u>City of Hope</u>, 2008 WL 1820916 at *9).

But Bryant glosses over the critical word "alone."   Mattel has never claimed, and this Court did not hold, that "the mere vulnerability of one party, and the superior position of the other" *alone* created a fiduciary duty.   To the contrary, this Court, in mentioning Bryant's superior position, was merely responding to defendants' assertion that the required element "that the party with the duty be in a superior position to the party to whom the duty is owed − was missing."   Order at 6. The Court explained that the "'superior position' to which California courts refer in this context is not superior bargaining power … but rather … a superior position vis-à-vis the duty imposed."   <u>Id.</u>   Because Bryant was in position to "police his own actions by maintaining Mattel's confidentiality and communicating his own `inventions,' to Mattel," the Court aptly concluded that Bryant was in the superior position.   <u>Id.</u>   Nowhere did the Court suggest that this factor was the "*only*" basis for

_____

<u>Labor Code</u> § 2863 ("An employee who has any business to transact on his own account, similar to that intrusted [sic] to him by his employer, shall always give the preference to the business of the employer."). These provisions have been found violated where employees engaged in self-dealing to the detriment of their employer.  <u>See</u> <u>Iconix, Inc. v. Tokuda</u>, 457 F. Supp. 2d 969 (N.D. Cal. 2006).

finding a duty.  Moreover, <u>City of Hope</u> does not hold – and Bryant does not argue – that a party's superior position is *irrelevant* to determining the existence of a duty. The Court's consideration of this factor was thus entirely proper.

4.     Bryant argues that <u>City of Hope</u> rejected the view established in <u>Stevens</u> that a fiduciary obligation arises as a matter of law whenever "(1) one party entrusts its affairs, interest or property to another; (2) there is a grant of broad discretion to another, generally because of a disparity in expertise or knowledge; (3) the two parties have an 'asymmetrical access to information,' meaning one party has little ability to monitor the other and must rely on the truth of the other party's representations; and (4) one party is vulnerable and dependent upon the other." Bryant Mem. at 7-8.  This contention provides no challenge to the Court's Order.

<u>City of Hope</u> narrowed the broad language in <u>Stevens</u> that a fiduciary relationship is *necessarily* created when the four factors cited in <u>Stevens</u> are present. To underscore this point, the Court noted that such factors could potentially be present when a car owner turns over his car to a garage operator for repairs or when a manufacturer entrusts its product to a retailer on consignment.  <u>City of Hope</u>, 2008 WL 1820916 at *8.  In neither circumstance, the Court noted, would a fiduciary relationship be created.[8]  <u>See id.</u>  But <u>City of Hope</u>'s limitation of <u>Stevens</u> is irrelevant to this dispute since this Court rested its fiduciary duty holding on the Inventions Agreement, not the factors cited in <u>Stevens</u>.  Indeed, since the Court does not even mention <u>Stevens</u>, it strains logic to argue that a decision interpreting it has any relevance.

5.     Finally, Bryant inexplicably claims that there was no "factual showing from which a jury could find that a party knowingly undertook the obligations of a fiduciary, that is to act primarily for the benefit of the other party."  Bryant Mem. at 8 (citing <u>City of Hope</u>, 2008 WL 1820915 at *6).  But this Court clearly found that

---

[8]  Notably, the Supreme Court did not rule that the <u>Stevens</u> factors may *never* create a fiduciary duty – only that they *do not always* do so.

Bryant was under a general obligation embodied in California law to protect the best interests of his company, see Order at 5 (citing Cal. Labor Code § 2863), as well as under a fiduciary obligation created by the Inventions Agreement.  See id. at 5-6.  By voluntarily undertaking this Agreement, which the Court found created a fiduciary obligation, Bryant necessarily "undertook the obligations of a fiduciary." Bryant Mem. at 8.

Moreover, the Court held that the "undisputed facts indisputably showed that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  Order at 6.  In light of these holdings, it is difficult to imagine a clearer breach of duty by an employee such as Bryant.[9]

In sum, City of Hope neither creates new law governing fiduciary duty nor disturbs this Court's reasoning.  Moreover, it does not even address the duty of loyalty.  Accordingly, Bryant's motion for reconsideration based on City of Hope should be denied.

## II.   BRYANT'S REMAINING CLAIMS DO NOT WARRANT RECONSIDERATION.

### A.   Bryant's Claims Do Not Satisfy the Standards of Local Rule 7-18.

As this Court recently pointed out in a decision denying a motion for reconsideration, Local Rule 7-18 "limits the grounds upon which a party may seek reconsideration of the court's decision on a given motion." David Sams Industries

_____

[9]  Bryant also claims that even if the Court found a "narrow fiduciary duty to protect Mattel's confidential information, Bryant could not have breached such a duty merely by entering into a contract with a competitor." Bryant Mem. at 6 n.4. This misreads the Court's holding. The Court did not hold that Bryant's obligation was merely to protect Mattel's confidential information. Rather, the Court held that his fiduciary duty arose from the existence of a confidential relationship created by the Inventions Agreement.  In any case, Bryant obviously disclosed Mattel's confidential information to MGA pursuant to his contract with it, thereby breaching even this "narrow duty."

Inc. v. Verisign, Inc., 2006 WL 5105218 at *1 (C.D. Cal. 2006). Under this rule, "a motion for reconsideration is proper only where the moving party demonstrates:

> [T]here is a material difference in fact or law from that previously presented to the Court that in the exercise of reasonable diligence could not have been known to the party at the time of such decision; (2) the emergence of new material facts or a change in law occurring after the Court has rendered its decision; or (3) a manifest showing of a failure to consider material facts presented to the Court.

Id. In addition, "[n]o motion for reconsideration shall *in any manner repeat* any oral or written argument made in support or in opposition to the original motion." Id. (emphasis added). See Bryant Mem. at 22 (acknowledging ban on repetition).

Motions for reconsideration are rarely granted,[10] and this one, too, should be no different because it merely repeats arguments made in Bryant's Opposition To Mattel's Motion for Partial Summary Judgment ("Bryant Opp."), dated March 24, 2008, and in Bryant's Motion For Partial Summary Judgment ("Bryant MPSJ"), dated March 7, 2008.

1.    Bryant challenges the Court's holding that Bryant "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products." Bryant Mem. at 9 (quoting Order at 5-6). As Bryant concedes, this argument is a complete repetition of his opposition to Mattel's MPSJ. See id. (citing Bryant Opp. at 23-33). Additionally, Bryant argues that "[t]he Court's acknowledgement that the

---

[10] See Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (affirming district court even though its "refusal to reconsider its earlier ruling" in light of 21,000 pages of previously unsubmitted materials "may have been harsh"); United States v. James, 915 F. Supp. 1092, 1102 (S.D. Cal. 1995) (no reconsideration despite purported "newly discovered information"); see also Trustees of Aftra Health & Ret. Funds v. KTVU, Inc., 1997 WL 703782, at *2-3 (N.D. Cal. 1997) ("Motions for reconsideration are disfavored . . . [and] are not merely a device to get another try").

1   fashion dolls were only 'to be marketed' in the future confirms that Mattel has

2   shown no direct competition while Bryant was still employed − such as sales of a

3   competing product, bidding for the same contracts, or use of an employer's

4   trademark."  Bryant Opp. at 10 (quoting Order at 5; Bryant Opp. at 27-28).  Again,

5   Bryant cites his previous arguments and repeats his claim that his MGA contract

6   constitutes a lawful preparation to compete.  Id. (citing Bryant Opp. at 28-30).

7          Bryant's contention that the Court improperly relied upon the "secrecy" of his

8   contract is also repetitive.  Compare Bryant Mem. at 10 (arguing that he gave notice

9   to Mattel when he signed his MGA contract and advised that he was "leaving to

10  seek to develop his own line of dolls") with Bryant Opp. at 29 (same).  The same is

11  true for his claim that an employee "is not legally required to disclose his

12  preparations to compete ...."  Bryant Mem. at 10 (citing Bryant Opp. at 28-30).  See

13  also Bryant Opp. at 24.  Other repetitive examples abound.  Compare Bryant Mem.

14  at 11 (the question of breach is fact-specific) with Bryant Opp. at 24 (same);

15  Compare Bryant Mem. at 11 (Bryant was an ordinary employee with no authority)

16  with Bryant Opp. at 25 & n.23 (same).

17         2.      Bryant's arguments regarding the Court's holding that the Inventions

18  Agreement applies to Bryant's Bratz-related inventions follows the same repetitive

19  pattern.  Indeed, as shown above, this is his third attempt to revisit these issues.  See

20  Factual and Procedural Background, supra, at 3. While he tries to bootstrap City of

21  Hope, he essentially repeats his argument that California courts "must first consider

22  all extrinsic evidence offered to show an ambiguity, before determining whether or

23  not a contract term is ambiguous."  Bryant Mem. at 12-13 (citing Bryant MPSJ at

24  18).  Compare Bryant Mem. at 13 ("[t]his rule applies even if a contract on its face

25  appears to be unambiguous") with Bryant MPSJ at 18 ("Even if contractual

26  language is unambiguous," the Court must review all credible evidence of intent).

27  He also attempts to revive (1) his contorted construction of the Inventions

28  Agreement including his misguided reliance on patent law, compare Bryant Mem. at

13-14 <u>with</u> Bryant MPSJ at 22-25; (2) his claim that the Agreement is an adhesion contract subject to the rule of *contra preferentem*, <u>compare</u> Bryant Mem. at 16 <u>with</u> Bryant MPSJ at 20-21; and (3) his contention that the Agreement cannot apply to "ideas." <u>Compare</u> Bryant Mem. at 15-16 <u>with</u> Bryant MPSJ at 27-28.  The Court's July 17, 2006 Order makes clear that the Court already had resolved many of these issues against defendants long ago, and "finds no good reason to revisit or revise that Order."  Order at 4.  That conclusion is even more compelling the third time around.

3.    Bryant's claims regarding <u>Labor Code</u> § 2870 also contravene <u>Local Rule</u> 7-18.  In opposing Mattel's MPSJ, Bryant previously argued that Mattel, in relying on  § 2870, should be bound by the statute's purported patent focus in its legislative history.   Bryant Opp. at 9.   Additionally, he argued, the Inventions Agreement "follows Section 2870 in using the language of patent law – not of copyright law." <u>Id.</u>   <u>See</u> Bryant Opp. at 8-13.  Because the Court rejected those contentions, <u>see</u> Order at 4-5, Bryant conjured up a new theory: that the Court's holding is erroneous to the extent that it ruled "that a contract which incorporates § 2870 automatically assigns all inventions to the full extent permitted by that law, regardless of the contract's specific language."  Bryant Mem. at 17.  Bryant has had three opportunities to make his case on § 2870, and he should not be given a fourth, especially since there is no "material difference in fact or law from that previously presented to the Court that in the exercise of *reasonable diligence* could not have been known" to him.  <u>Verisign</u>, 2006 WL 5105218 at *1 (emphasis added).

## B.    <u>Bryant's Arguments Involving "Direct Competition" Do Not Justify Reconsideration Of The Court's Order.</u>

Bryant disputes the Court's holding that he breached his fiduciary duty and duty of loyalty by entering into a contract with MGA to produce fashion dolls while still employed by Mattel.  <u>See</u> Bryant Mem. at 8-9 (citing Order at 5-6).  This again merely rehashes Bryant's fatally flawed arguments.

1.     As demonstrated in Mattel's prior submissions, Bryant's argument that he did not breach his duties because he purportedly did not engage in "direct competition" is unpersuasive.  As this Court recognized, an employee's duties to his employer are much broader than a duty to refrain from direct competition; they prohibit an employee from acting in contravention to the best interests of his employer.  See Order at 5 (quoting Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach 'may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.'")) (internal quotation marks and citation omitted). Notably, Bryant does not even mention Huong Que, much less attempt to distinguish it.

As with the duty of loyalty, the Court also rejected Bryant's overly narrow conception of fiduciary duty.  See Order at 6 (citing Bryant's "secret" contract with a competitor while in Mattel's employ to produce a competing product).  Bryant offers no basis to disturb these straightforward applications of well-settled law.

2.     Bryant erroneously claims that "California law, the Restatement, and out of state authority all recognize that employees are legally permitted to engage in preparations to compete that go far beyond entering into a contract to compete in the future."  Bryant Mem. at 9 (citing Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327 (1966); Bryant Opp. at 23-33).  In so arguing, Bryant ignores numerous precedents establishing that the duty of loyalty may be breached whenever "the employee takes action which is inimical to the best interests of the employer."  Stokes v. Dole Nut Co., 41 Cal. App. 4th 285, 295 (1995).  This duty may be violated in a variety of ways unrelated to direct competition.[11]

---

[11]     See Hudson v. Moore Bus. Forms, Inc., 836 F.2d 1156 (9th Cir. 1987) (employee's accumulation of manufactured evidence to support a false claim of wrongful discharge could establish breach of loyalty); Otsuka v. Polo Ralph Lauren Corp., 2007 WL 3342721 (N.D. Cal. 2007) (employee's violation of company policy prohibiting use of employee discounts for non-employees and assistance in misuse of merchandise credits presented colorable claim of breach of loyalty).

Fiduciary duty, an even heavier obligation, requires an employee to act in the best interests of his employer and avoid self-dealing to the detriment of his employer.  See Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969 (N.D. Cal. 2006).  As the court stated in In re Marriage of Varner, 55 Cal.App.4th 128, 141 (1997), "[a] fiduciary relationship has been defined as any relation existing between parties to a transaction wherein one of the parties is…duty bound to act with the utmost good faith for the benefit of the other party." (internal quotation marks and citations omitted).

Bryant again improperly relies on Bancroft-Whitney Co. v. Glen, 64 Cal.2d 327 (1966), a fiduciary duty case that makes clear that "it is the nature of [an employee's] preparations which are significant."  Rep. Br. at 26 (quoting Bancroft-Whitney, 64 Cal.2d at 346) (emphasis added).  The Court's examples of wrongful preparatory acts included use of confidential information, solicitation of customers during employment, other "similar acts," and the harmful failure to disclose preparatory acts.  Bancroft-Whitney, 64 Cal. 2d at 346 (citing Restatement (Second) of Agency § 393 cmt. e).  As this Court held in the Order, Bryant indisputably committed such actionable conduct here.

Bryant also purports to rely on the Restatement but offers no specific citations.  Perhaps that is because the Restatement, which has been embraced by the Ninth Circuit,[12] confirms that the duty of loyalty may be breached in a wide variety of circumstances unrelated to direct competition.  These agency principles apply to employees "even if they are employed in a wholly non-representative capacity." Huong Que, 150 Cal. App. 4th at 414 (citing Restatement (Third) of Agency § 1.01 cmt. c).  See also Restatement (Third) of Agency § 8.01 cmt. c ("[T]he fiduciary

---

[12]  See Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1086 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004) (embracing Restatement (Second) of Agency (the predecessor to the Restatement (Third) of Agency) under Hawaii law); Otsuka v. Polo Ralph Lauren Corp., 2007 WL 3342721 at *3 (N.D. Cal. 2007) (upholding under California law, the Restatement (Third) of Agency's understanding that "all employees are agents," and that "[a]s agents, all employees owe a duty of loyalty to their employers.") (citing Restatement (Third) of Agency § 1.01).

1   principle is applicable . . . to employees as well as to nonemployee professionals,

2   intermediaries, and others who act as agents.").[13]

3       3.      Bryant also challenges the Court's reliance on the "alleged 'secrecy'"

4   of his MGA contract.  Bryant Mem. at 10.  But the Court's rejection of Bryant's

5   factually unsupported assertions that he notified Mattel that "he was leaving to seek

6   to develop his own line of dolls," id. at 10, does not mean that the Court failed to

7   consider those facts "in the light most favorable to Bryant."  Id.  Moreover, even if

8   credited, nothing in that statement disclosed to Mattel that Bryant had already

9   entered into an agreement purporting to sell Bratz inventions to a competitor, let

10  alone an agreement that (a) had already sold to a competitor inventions which

11  Bryant had failed to disclose to Mattel or (b) had required him to provide his design

12  services to MGA on a "top priority" basis while still a Mattel employee.  MPSJ at

13  32.  To the contrary, the plain and indisputable import of Bryant's claimed statement

14  − consisting of a prospective, contingent suggestion that he was "leaving to seek to

15  develop his own line of dolls" − is that he had not at that point been working on any

16  dolls or entered into such an agreement.  That was false on its face since Bryant had

17  in fact entered into the Bryant-MGA agreement purporting to sell Bratz.  And,

18  undisputed admissions from Bryant and evidence from other witnesses confirmed

19  that Bryant had not disclosed to Mattel that agreement, his work with MGA or his

20  then-existing Bratz inventions.  Bryant's attempt to rehash his alleged statement is

21  neither a proper ground for reconsideration nor availing.

22      Although Bryant again asserts that he was not "legally required to disclose his

23  preparations to compete," Bryant Mem. at 10 (citing Bryant Opp. at 28-30), this

24  _____

25  [13] "An agent is a fiduciary, whose obligation of diligent and faithful service is the
    same as that of a trustee." 3 Witkin, Summary of California Law § 97 at 143 (10th

26  ed. 2005) (citations omitted).  See also Restatement (Third) of Agency § 8.01 ("An
    agent has a fiduciary duty to act loyally for the principal's benefit in all matters

27  connected with the agency relationship."); id. at § 8.01 cmt. b ("An agent assents to
    act subject to the principal's control and on the principal's behalf."); Witkin, supra,

28  § 104, at p. 150 ("[a]n agent has no right to obtain an interest adverse to the
    principal.") (citations omitted).

assertion is not supported by the record.  As the Court stated: "[t]he undisputed facts, however, tell a different story…."  Order at 5.  The same may be said for Bryant's claim that the Court should have considered, or permitted the jury to consider, the purportedly "disputed facts" showing that Bryant engaged in lawful preparations to compete.  The Court reasonably concluded that they did not raise a triable issue of fact.  As the Supreme Court recognized in <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986), "[i]f the evidence is merely colorable, or is not significantly probative summary judgment may be granted." (internal citations omitted).  <u>See</u> <u>Novell, Inv. v. Weird Stuff, Inc.</u>, 0094 WL 16458729 at *7 (N.D. Cal. 1993) ("[t]he mere existence of a scintilla of evidence is insufficient to defeat the motion for summary judgment.").

**C.**     <u>**City of Hope's Contract Interpretation Rulings Are Not A Basis To Reconsider The Court's Order.**</u>

Bryant's claim that <u>City of Hope</u> justifies reversal of the Court's contract interpretation rulings is incorrect.

1.     Bryant argues that "where disputed factual evidence potentially supports more than one reading of a contract term, contract interpretation is properly an issue for the jury."  Bryant Mem. at 12-13 (citing <u>City of Hope</u>, 2008 WL 1820916 at *13).  Bryant misreads the case law.  A contract does not go to the jury where, as here, the contractual terms are unambiguous. In the first application of <u>City of Hope</u> by a California court of appeals, <u>Wolf v Walt Disney Pictures & Television</u>, No. B192656 (Cal. App. May 9, 2008), http://www.courtinfo.ca.gov/opinions/documents/B192656.PDF, the court reiterated that "[t]he interpretation of a contract is a judicial function."  <u>See</u> <u>id.</u> at 19. "The court generally may not consider extrinsic evidence … to vary or contradict the clear and unambiguous terms of a written, integrated contract."  <u>Id.</u> at 20.  In this case, the Court correctly ruled that the terms in the Inventions Agreement were not ambiguous.  The Court stated that "[i]n order to conclude that the Inventions

1   Agreement is ambiguous on the issue of whether it would include any copyrightable
2   drawings or doll designs developed by an employee, the Court would have to read
3   out of the agreement explicit terms assigning to the employer the rights to `designs,'
4   `copyrights,' and `copyright applications.'"  Order at 4.  The Court held that Bryant's
5   interpretation is not reasonable since the Court would have to "ignore[e] an explicit
6   assignment by the employee to the employer of copyrights."  Id.  Accordingly, "the
7   original Bratz drawings clearly fall within the scope of the Inventions Agreement."
8   Id.  This conclusion is consistent with traditional canons of interpretation, as well as
9   case law.  The Court's rejection of Bryant's contorted interpretation based on patent
10  law also was justified.  See Order at 4-5.

11      2.      Moreover, while Bryant complains that the Court "disregarded all of
12  [his] substantial extrinsic evidence demonstrating that the term `inventions'" was
13  ambiguous, Bryant Mem. at 13, the issue of extrinsic evidence never even arises
14  where, as here, a court finds that the contract terms are unambiguous.  Contrary to
15  Bryant's assertions, City of Hope did not hold that a judge *must* submit contract
16  interpretation to the jury; it held only that it was *not improper* for the court to choose
17  to do so where, unlike here, the contractual terms were *ambiguous* and the intent of
18  the parties depended upon the credibility of extrinsic evidence.  2008 WL 1820916
19  at *13.[14]

20      3.      In any event, Bryant's arguments regarding extrinsic evidence do not
21  hold water.[15]  "The decision whether to admit parol evidence involves a two-step

22

---

23  [14]  Genentech argued that "the trial court should have asked the jury to make special findings on pertinent questions of fact, after which the court, taking into account the jury's special findings, should have undertaken the task of interpreting the contract."
24  Id.  The Supreme Court disagreed, concluding that "[j]uries are *not prohibited* from interpreting contracts."  Id. (emphasis added).  That permissive holding hardly
25  supports Bryant's claim that "[w]here extrinsic evidence presents disputed factual questions, particularly questions of credibility, the fact-finder -- the jury -- *must*
26  evaluate those disputes."  Bryant Mem. at 13 (emphasis added).
    [15]  The Court's reference to Bryant's role as a "fashion designer," Bryant Mem. at
27  14, is irrelevant.  Even if Bryant's job title could somehow be seen as "evidence," the Agreement was not "reasonably susceptible to the interpretation urged" by
28  Bryant.  Winet, 4 Cal. App. 4th 1159, 1165 (1992).

process.  First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party." Winet v. Price, 4 Cal. App. 4th 1159, 1165 (1992) (citation omitted).  "If in light of the extrinsic evidence, the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step−interpreting the contract." Id. (citation omitted).  City of Hope does not alter this standard, and Bryant fails to show otherwise.

Consistent with Winet and Wolf, this Court provisionally considered all the proffered extrinsic evidence, but found that the contract was not "reasonably susceptible" to Bryant's interpretation in light of that evidence.  See also Wolf, No. B192656 at 20-22 ("Where there is no *material* conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law," and holding that the plaintiff's extrinsic evidence did not raise a material conflict regarding the meaning of the words "make, publish and vend.") (emphasis added) (citing City of Hope, 2008 WL 1820916 at *13).

In short, under both case law and traditional canons of interpretation, the Court's Order holding that the Inventions Agreement unambiguously applied to Bryant's Bratz-related works was clearly proper.  Bryant offers no legitimate reason to revisit this ruling.[16]

4.    Bryant's fall-back position that the Court misinterpreted his argument is an exercise in revisionist history.  He claims that the Court "entirely failed to address [his] actual proposed meaning and ambiguities in the term 'inventions' and related contract provisions, and instead rejected a far more restricted meaning that

---

[16]  Bryant also challenges the Court's "breathtaking" conclusion that the Inventions Agreement applies to "ideas."  Bryant Mem. at 15-16 (citing Order at 5).  On its face, the Agreement applies to "designs," "know-how," "improvements," "developments" and other "inventions," which are "created" or "conceived or reduced to practice" while Bryant was employed by Mattel.  A "conception" is by definition an "idea."  That is the bargain that Bryant made; he cannot undo it now.

Bryant never asserted." Bryant Mem. at 14. Bryant construes the Order as stating "that Bryant contended that the agreement was ambiguous on 'the issue of whether it covered anything other than "inventions" as that term is used in patent law.'" Id. (quoting Order at 4). Instead, Bryant asserts, he argued that "'inventions' is ambiguous because it is reasonably susceptible to more than one interpretation, and not all of the possible reasonable interpretations would encompass an idea or a sketch of a doll character." Id. This argument is pure fiction.

In his summary judgment motion, Bryant declared definitively that while Mattel sought to "stretch the term [inventions] to include any and all creative effort or ideas, its ordinary meaning – and the meaning that *must* prevail even if the term can be considered ambiguous – is limited to technical, scientific discoveries and devices." Bryant MPSJ at 22 (emphasis added). Bryant also argued that the common meaning of inventions was a "useful device, method or process, resulting from scientific or technical experimentation and discovery." Id. The Agreement "defines 'inventions' in a way that reinforces this common meaning and is also consistent with the term's meaning under United States patent law." Id. Bryant further asserted that "[t]he *only* term of the agreement that *conceivably* could invoke a scope of 'inventions' beyond its commonplace meaning is 'designs' but, in the context of this contract (which is the context by which it must be judged…), even 'designs' must refer *only* to technical plans or designs, or to design patents (equally inapplicable to Bryant's Bratz idea and sketches)." Id. at 22-23 (emphases added). In light of these definitive statements, it is difficult to see how the Court missed Bryant's "subtle" point that the Agreement could theoretically be subject to other interpretations.

Moreover, even if other interpretations were theoretically possible, that would not require the Court to submit contract interpretation to a jury. The Court correctly concluded that Mattel's interpretation that the contract covered Bryant's Bratz-

1   related works was the only reasonable construction, and thus appropriate for

2   summary judgment.

3       5.    Bryant's effort to obtain a narrow reading of "inventions" on the

4   ground that the Agreement is a contract of adhesion is equally misguided.   The

5   Court "previously determined that the Inventions Agreement was not substantively

6   unconscionable, and now determines that it is not outside the scope of the parties'

7   expectations." Order at 5.  Bryant offers no basis to challenge this holding.

8       6.    Finally, Bryant cites a litany of issues the Court purportedly failed to

9   consider or handled inappropriately, including certain extrinsic evidence, the contra

10   preferentem rule for adhesion contracts; Section 204(a) of the Copyright Act; Labor

11   Code § 2870, and disputed extrinsic evidence, which he claims should have been

12   sent to the jury.  Bryant Mem. at 16.  All of these issues were fully briefed by

13   defendants, and the Court's considered rejection of Bryant's positions does not

14   justify reconsideration.[17]

15       **D.**    **Bryant's Erroneous And Hypothetical Claims Regarding**

16       **California Labor Code § 2870 Are Invalid.**

17       Bryant claims that the Court's Order regarding Labor Code § 2870 is unclear,

18   and "to the extent that the Court intended to hold that a contract which incorporates

19   § 2870 automatically assigns all inventions to the full extent permitted by that law,

20   regardless of the contract's specific language, that holding is also independent,

21   reversible error . . . ." Bryant Mem. at 17.  This argument is a strawman.

22       The Court correctly held that the Inventions Agreement "incorporates, and

23   therefore does not violate, Labor Code § 2870." Order at 4-5.  The Court rejected as

24   unreasonable Bryant's attempt "to read out of the agreement explicit terms assigning

25   to the employer the rights to 'designs,' 'copyrights,' and 'copyright applications,'"

---

[17] Bryant argues that to the extent the Court's interpretation of the Agreement was dependent on its view that Bryant did not engage in lawful preparations to compete, the Court's Order should be reconsidered.  See Bryant Mem. at 9 n. 5.  However, the Court's interpretation of the contract was independent of that argument, and, in any event, the Court properly rejected Bryant's argument.  See Order at 4-5.

1  and noted that the "subject matter at issue [is] the Bratz dolls." <u>Id</u>.  Therefore,

2  Bryant's interpretation of the Order as making a general pronouncement about what

3  an employee may or may not assign to an employer pursuant to § 2870 finds no

4  support in the Order.  Indeed, there was no reason for the Court to broadly

5  pronounce that *any* contract "automatically assigns all inventions," Bryant Mem. at

6  17, irrespective of the plain language in the contract.[18]  The Court considered a

7  specific contract (the Inventions Agreement), interpreted its express and plain terms,

8  and applied them to the subject matter at issue (Bryant's Bratz-related creations).[19]

9      Moreover, Bryant's argument is illogical.  Absent § 2870, an employee is free

10  to assign any intellectual property that he may create.  The statutory provision

11  provides basic limitations on such assignments.  It is thus hardly reversible error to

12  read the Inventions Agreement exactly as it is written – as an agreement that

13  assigned to Mattel "all" of Bryant's inventions except as limited by § 2870.  Rep.

14  Br. at 4 & n.8.  Since this provision is the only legislative limitation, and it is

15  expressly carved out in the Agreement, the Agreement does not run afoul of § 2870

16  or general principles of contract interpretation.  Indeed, Bryant bears the burden of

17  establishing that § 2870 applies to his Bratz work, <u>see</u> <u>Labor Code</u> § 2872, a burden

18  the Court correctly concluded he had not met.[20]

19      Bryant next makes the unfounded contention that "the history and purpose of

20  § 2870 conflict fundamentally with any finding that § 2870 is a pro-employer

21  provision under which all California workplace invention agreements incorporating

22  ────────────────

[18] Bryant also mistakenly argues that "the broad . . . result" in <u>Iconix v. Tokuda</u>, 457 F. Supp. 2d 969 (N.D. Cal. 2006), "should [not] apply as a general rule to any contract incorporating Section 2870." Bryant Mem. at 19.  This contention also fails because the Court's narrow Order did not establish a "general rule."  Just as in <u>Iconix</u> and other cases applying § 2870, the Court considered the specific terms of the contract at issue and applied its terms in accordance with § 2870.

[19] Because the Bratz dolls related to Mattel's lines of business, the Court appropriately held that "the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant." Order at 5.

[20] Bryant's claim that the fact that the Inventions Agreement references § 2870 "only shows compliance with § 2872, not the intended scope of the assignment provision," Bryant Mem. at 18, clearly fails to satisfy his affirmative duty to prove that his Bratz-related creations fall under the purview of § 2870.

1 § 2870 (regardless of their actual language) automatically claim all employee
2 inventions to the full extent permissible under the law." Bryant Mem. at 18. The
3 Court's Order cannot be so interpreted. Accordingly, Bryant's concern that "such a
4 rule would entirely eliminate employers' ability to draft more nuanced, generous
5 contracts (by claiming less than the legal maximum scope of employee inventions)"
6 Bryant Mem. at 19, is hyperbole that is both nonsensical and irrelevant.

7     In short, Bryant's opposition to the Court's § 2870 ruling not only violates
8 <u>Local Rule</u> 7-18, but distorts the Court's Order.

9                              <u>**CONCLUSION**</u>

10    For the foregoing reasons, Bryant's motion for reconsideration should be
11 denied in its entirety.

12 DATED:  May 12, 2008              QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
13

14                                   By   /s/
15                                        John B. Quinn
                                          Attorneys for Mattel, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28