Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER DENYING MATTEL'S EX PARTE APPLICATION TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

I. INTRODUCTION

On April 7, 2008, Mattel, Inc. ("Mattel") submitted an "*Ex Parte* Application to Compel Access to Certain Bryant Originals for Non-Destructive Expert Examination and Imaging." On April 8, 2008, Carter Bryant ("Bryant") and MGA Entertainment, Inc. ("MGA") submitted a joint "preliminary" opposition. On April 9, 2008, Mattel submitted a reply. On April 17, 2008,

Bryant and MGA submitted another opposition, and on April 22, 2008, Mattel submitted another reply. On May 8, 2008, Mattel's counsel, Diane Hutnyan, submitted a Second Supplemental Declaration in Support of Mattel's Reply. On May 9, 2008, MGA submitted a response to the Second Supplemental Declaration of Diane Hutnyan. The Court finds it appropriate to decide the motion without oral argument. Having considered all papers filed to date, Mattel's *ex parte* application is denied.

## II. BACKGROUND

Mattel began inspecting Bryant's original documents in February of 2007. In May of 2007, Mattel requested that Bryant make additional documents available for inspection. On May 31, and June 1, 2007, and again on June 20, 2007, Mattel examined and photographed Bryant's original documents. In July 2007, Mattel moved to compel Bryant to make over 2,000 original documents available for expert examination and testing.

By Order dated August 30, 2007, Mattel was granted 35 days for the expert examination and testing of Bryant's original documents. The Order tracked Mattel's proposed order in almost every respect, except that the Order granted Mattel 35 days in which to conduct testing instead of the 60 days Mattel had requested. Nevertheless, the Order provided that the 35-day period may be extended upon a showing of good cause.

Pursuant to the August 30, 2007 Order, eight boxes of Bryant's original documents were sent by overnight mail to each of Mattel's four experts in their four different labs around the country. The first of Mattel's experts, Lloyd Cunningham, was allotted eight days to examine and test the documents but apparently kept the documents longer. Mr. Cunningham obtained the documents on September 12, 2007 and maintained possession of the documents until September 28, 2007. During those sixteen days, Mr. Cunningham spent over 80 hours examining Bryant's documents. Cunningham used several different methods of examination, including oblique lighting, magnification, reflected infrared luminescence, UV lighting, as well as the examination of indented writing with the indentation materializer device.

Mattel's second expert, William Flynn, received the documents from Mr. Cunningham on September 29, 2007, and had approximately three days to conduct his examination and testing.

1. Mr. Flynn spent approximately 35 hours examining Bryant's documents.

Messrs. Flynn and Cunningham both drew conclusions as to whether certain tracing paper drawings and certain multimedia poster board drawings were sketches or tracings, and/or tracings of each other. They both determined that there were obscured pencil lines underneath the ink and colorant of these documents that could not be viewed without reflected infrared or infrared luminescence, but they did not believe the pencil lines were significant to their analysis at the time.

Mattel's paper expert, Walter Rantanen, and ink chemist, Valery Aginsky, also reviewed Bryant's original document. After all four experts completed their examinations, Mattel returned the documents to Bryant on October 17, 2007.

In December 2007, Mattel asked for permission to have Mr. Rantanen perform destructive testing on Bryant's documents. Pursuant to stipulation, Bryant sent the documents back to Rantanen for an additional four days so that he could take small punches out of paper samples from a select group of Bryant's documents. In total, Mattel's experts had possession of Bryant's documents for approximately 40 days.

MGA retained two forensic examiners to examine Bryant's documents, to review the Cunningham and Flynn reports, and to provide expert rebuttal reports: Robert Kullman and Dr. Albert Lyter. Mr. Kullman received Bryant's documents on or about January 26, 2008. On or about February 11, 2008, Mattel served Messrs. Cunningham and Flynn's expert reports. Mr. Kullman had approximately three weeks thereafter to compare his results with the results of Messrs. Cunningham and Flynn.

On March 6, 2008, Mr. Kullman sent Bryant's documents to Dr. Lyter, who spent approximately 10 days examining the documents and preparing his report. Mr. Kullman and Dr. Lyter finalized their reports on March 17, 2008. Both of MGA's experts "found evidence of faint or partially obscured lines in the colored poster board drawings which superimposed with the ink lines on the outline drawings on the tracing paper." MGA's and Bryant's Opposition dated April 17, 2008, at p.9. Based on these observations, both of MGA's experts concluded that, in most instances, the poster board drawings were traced from the outline drawings on the tracing paper.

On March 27, 2008, MGA deposed Mr. Flynn. Flynn admitted seeing the faint pencil lines in the poster board drawings. Flynn also testified that he tried to see whether the pencil lines matched up with the lines on the tracing paper, and found that there was never an exact match.

On March 30, 2008, MGA deposed Mr. Cunningham, who also admitted seeing many areas of faint or partially obscured pencil lines on the poster board drawings. He also testified that he used infrared and infrared luminescence on the poster board drawings.

On March 31, 2008, expert discovery closed. Two days later, on April 2, 2008, Mattel sent a letter to MGA and Bryant demanding that Bryant agree to provide Messrs. Cunningham and Flynn an additional one week each to perform further testing and examination of Bryant's documents. Prior to April 2, 2008, Mattel never indicated that Cunningham or Flynn needed additional time to perform their examination of Bryant's documents.

### III. DISCUSSION

Rule 16, Fed.R.Civ.P., provides that the pretrial schedule may be modified only for good cause shown. Fed.R.Civ.P. 16(b)(4). This "good cause" standard primarily focuses on the diligence of the party seeking relief from the pretrial schedule. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). In this case, Mattel has failed to make the requisite showing of good cause to warrant relief from the March 31, 2008 expert discovery cut-off.

Mattel was not diligent in three respects. First, Mattel was not diligent in asking the Court for more time for its experts to perform their initial testing in the fall of 2007. The August 30, 2007 Order provided that the 35-day time limit "may be extended upon a showing by Mattel of good cause." Lanstra Decl., Ex. 11, August 30, 2007 Order. Despite the inclusion of this provision, Mattel did not seek additional time for testing in the fall of 2007. Instead, at the end of the initial testing period, Mattel returned Bryant's original documents without objection.

Second, Mattel was not diligent in seeking additional time to conduct testing during March 2008, before the March 31, 2008 expert discovery cut-off. Mattel contends that its need for further expert examination was created by the testing performed by Mr. Kullman and Dr. Lyter. Mattel, however, received Mr. Kullman's and Dr. Lyter's reports on March 17, 2008, and

waited for more than three weeks, until April 7, 2008 to seek any relief.

Third, Mattel was not diligent in requesting an extension of time to conduct expert discovery. In general, requests for an extension of time should be brought before the prescribed time has expired. See Fed.R.Civ.P. 6(b)(1); Jackson v. Laureate, Inc., 186 F.R.D. 605, 607-08 (E.D. Cal. 1999) (a party should make a prompt request for modification once it becomes apparent that compliance is not possible). In fact, the District Court's "Standing Order" specifically requires that applications to extend scheduling deadlines "must be filed in advance of the date due" and set forth, among other things, "specific, concrete reasons supporting good cause for granting the extension." Lanstra Decl., Ex. 25. Mattel did not seek any relief until April 7, 2008, more than a week after the March 31, 2008 expert discovery cut-off. Accordingly, Mattel's *ex parte* application is untimely.

Furthermore, neither MGA's nor Bryant's actions provide good cause for Mattel's requested relief or excuse Mattel's lack of diligence. Neither MGA nor Bryant limited Mattel's experts' access to Bryant's original documents. Rather, the Court imposed a 35-day initial access period and specified that the period could be extended upon good cause shown. As discussed previously above, Mattel failed to seek additional time to perform testing in a timely manner.

Moreover, Mattel's belated assertion that its experts did not have sufficient time to conduct testing is dubious. Mattel elected to use the allotted 35-days to have four experts in four different labs across the country review Bryant's documents. Mattel allotted eight days to Mr. Cunningham and approximately three days to Mr. Flynn. Mattel admits that despite the purported time constraints, Messrs. Cunningham and Flynn felt that the examinations they did were sufficient to draw the conclusions and develop the opinions that they had in their reports. Mattel's Application at p.5. Mattel also admits that when Messrs. Cunningham and Flynn conducted their examinations in the fall of 2007, they saw the faint or partially obscured pencil lines in Carter Bryant's multi-colored poster board drawings, but did not believe them significant to their analysis. Id. Furthermore, Mattel acknowledges that Mr. Cunningham used infrared light and infrared luminescence on the poster board drawings to look at certain portions of pencil lines and for chemical erasure that he thought might be significant. Id.

Mattel's assertion that MGA's rebuttal reports are improper is without merit. Mattel claims that MGA's experts, Mr. Kullman and Dr. Lyter, "develop[ed] a rebuttal theory not based on the evidence presented in Messrs. Flynn's and Cunningham's reports." Mattel's Application at p.12. The record, however, clearly shows that MGA's experts examined the exact same set of Bryant's original documents that Mattel's experts examined with the exact same instruments and methods available to, and indeed in most cases, employed by Mattel's experts. Mattel has not shown that the reports prepared by MGA's experts are in any respect inconsistent with the requirements of Rule 26(a)(2)(C)(ii), Fed.R.Civ.P. Mattel is not entitled to re-test Bryant's original documents merely because Messrs. Flynn and Cunningham elected not to perform the same tests or focus on the same lines as MGA's experts.

In addition, Mattel's assertion that it is entitled, and indeed obligated, to supplemental its experts' reports pursuant to Rule 26(e), Fed.R.Civ.P., does not justify Mattel's requested relief. "Rule 26 provides no safe harbor for [a party's] lack of diligence and failure to show 'good cause.' [The] obligation to supplement expert reports does not give [a party] the right to ignore the Court's deadlines, reopen discovery, find 'new facts,' [and] generate new expert reports . . . ." DAG Enters., Inc. v. Exxon Mobil Corp., 226 F.R.D. 95, 110 (D. D.C. 2005).

Finally, the prejudice to MGA and Bryant weighs against granting Mattel's requested relief. If expert discovery were re-opened to allow Mattel to conduct additional testing and to supplement its expert reports based on the additional testing, there would be no time left in the pretrial schedule to permit MGA and Bryant to conduct counter-discovery, including re-deposing Messrs. Flynn and Cunningham about their new reports.

## IV. CONCLUSION

For the reasons set forth above, as well as all of the additional reasons set forth in MGA's and Bryant's briefing, Mattel's *ex parte* application is denied. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: May 13, 2008

_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on May 13, 2008, I served the attached ORDER DENYING MATTEL'S EX PARTE APPLICATION TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING in the within action by email addressed as follows:

| Name | Firm | Email |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 13, 2008, at San Francisco, California.

*/s/ Sandra Chan*
Sandra Chan